IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC. IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB MDL No. 2570 |
| This Document Relates to All Actions | |

**ORDER ON ELECTRONICALLY STORED INFORMATION AND DOCUMENT PRODUCTION PROTOCOL – DENMARK ESI**

**I.  Introduction**

As described below, certain categories of potentially relevant ESI are held by Defendant William Cook Europe ("WCE") in Denmark. Denmark, as member of the European Union ("EU"), implemented the EU's Directive 95/46 EC ("Directive") which dictates strict rules and limitations for the processing and transfer of data of individuals within EU member nations. Denmark implemented the Directive's rules by adopting its own law titled the Act on Processing of Personal Data ("Denmark's Act").

   A.   Denmark's Act - Processing Data

Denmark's Act applies to the processing of data, including personal data.[1] "Personal Data" is defined as "any information relating to an identified or identifiable natural person" (the "Data Subject").[2] "Processing" is "any operation or set of operations which is performed upon personal data, whether or not by automatic means."[3] Data to be processed must be "relevant and not excessive in relation to the purposes for which the data are collected and the purposes for

---

[1] Title I, Ch. 1, Sec. 1.(1), (2).
[2] Title I, Ch. 2, Sec. 3.(1)1.
[3] Title I, Ch. 2, Sec. 3.(1)2.

which they are subsequently processed."[4] Personal Data may be processed only if it meets one of the delineated justifications, which includes "compliance with a legal obligation to which the [data] controller is subject."[5]

Three special categories of more sensitive Personal Data are proscribed in Denmark's Act. (Hereafter collectively, "Sensitive Data") First, Section 7(1) of the Act states "[n]o processing may take place of personal data revealing racial or ethnic origin, political opinions, religious or philosophical beliefs, trade union membership, or data concerning health or sex life."[6] An exception is provided if processing is **necessary** for the establishment, exercise or defense of legal claims.[7]  (Emphasis added)

Second, Personal Data regarding "criminal offences, serious social problems and other purely private matters than those mentioned in section 7(1)" can be processed if the conditions in Section 7 are satisfied.[8] But **disclosure** of this category of data is prohibited unless one of the following exceptions is met:

1. The data subject has given his explicit consent to such disclosure; or

2. Disclosure takes place for the purpose of pursuing private or public interests which clearly override the interests of secrecy, including the interests of the person to whom the data relate; or

3. Disclosure is necessary for the performance of the activities of an authority or required for a decision to be made by the authority; or

4. Disclosure is necessary for the performance of tasks for an official authority by a person or a company.[9]

---

[4] Title II, Ch. 4, Sec. 5.(3).
[5] Title II, Ch. 4, Sec. 6.(1) 3.
[6] Title II, Ch. 4, Sec. 7.(1).
[7] Title II, Ch. 4, Sec. 7.(2)4.
[8] Title II, Ch. 4, Sec. 8.(1), (6).
[9] Title II, Ch. 4, Sec. 8.(2).

Third, processing data concerning "identification numbers" by private individuals and bodies can only take place if specific exceptions apply.[10] The exceptions are when it is permitted by law or regulation, explicit consent is obtained, or it is carried out for solely scientific or statistical purposes.[11]

B.   Denmark's Act - Transfer of Data

Transfer of data out of Denmark to another country may take place only if the other country in question ensures an adequate level of protection.[12] And, the transfer of data must satisfy one of the specific justifications in the Act, which includes it being necessary or legally required for the establishment, exercise or defense of legal claims.[13] Denmark's Act provides for monetary and criminal penalties for failure to comply.[14]

II.   **Scope of ESI Discovery in Denmark and General Principles**

Complying with Denmark's Act makes the burden and cost on Defendants of producing ESI from Denmark higher than for U.S. data. Defendants cannot send ESI to the U.S. for initial review if the data could potentially contain Personal or Sensitive Data. Therefore, to an unknown extent, Defendants are faced with reviewing ESI in Denmark, a significant but undetermined percentage of which will be in Danish.

In order to ensure the burden upon Defendants is not unreasonable and to avoid delaying the progress of MDL 2570 as a whole due to ESI disputes, the Defendants submit the following process. The Defendants recognize their obligations under the Federal Rules of Civil Procedure, and therefore outline herein the steps to be taken to accomplish the needed discovery.

---

[10] Title II, Ch. 4, Sec. 11.(1).
[11] Title II, Ch. 4, Sec. 11.(2).
[12] Title II, Ch. 7, Sec. 27.(1).
[13] Title II, Ch. 7, Sec. 27.(3)4.
[14] Title VI, Ch. 18, Sec. 70.(1).

In order to minimize the conflict of laws and accomplish the goals stated above, the scope of discovery in Denmark is limited to that which is relevant and *necessary* to support a claim or defense.[15] That limitation, to data which is relevant and necessary, will minimize any potential impact upon the Data Subjects, show due respect for Danish law, and reduce any unreasonable burden upon Defendants that would result from having to produce unnecessary ESI from Denmark.[16]

To implement the intent of this Protocol, the following guidelines will apply:

1. ESI productions in MDL 2570 will begin with responsive data and/or documents from U.S. sources.

2. Discovery from Denmark will be completed in phases to allow responsive information not subject to privacy laws to be identified and produced first, thereby minimizing the amount of protected data that may need to be processed.

3. Discovery that calls for data, information or documents held in Denmark must be narrowly tailored to that which is relevant and necessary to Plaintiffs' claims.

4. To the extent necessary, Defendants may interpret narrowly any discovery requests from Plaintiffs to the extent such requests may implicate Personal and/or Sensitive Data.

5. In responding to any discovery that may or does call for data, information or documents held in Denmark, Defendants may substitute alternative, substantially similar documents or data available from non-protected sources located in North America. To the extent any such substitution would not be obvious, Defendants shall disclose such substitution at the time of production.

6. Personal Data relating to relevant WCE employees who possess personal knowledge regarding the facts at issue in this litigation will be produced, to the extent it is called for by a discovery request. Other Personal Data is not relevant to this litigation nor reasonably calculated to lead to the discovery of admissible evidence and will not be produced and/or will be redacted.

---

[15] This comports with discovery principles under FRCP 26(b)(1) and (2). Furthermore, under FRCP 26(b)(2)(C), discovery should be made from the source that is most convenient, least burdensome, and least expensive.

[16] The Sedona Conference, International Principles on Discovery, Disclosure & Data Protection: Best Practices, Recommendations & Principles for Addressing the Preservation Discovery of Protected Data in U.S. Litigation, 2011, Principle 3.

7. Sensitive Data is not relevant to this litigation and will not be produced and/or will be redacted.

8. The Parties will use only service providers, contractors, or outside businesses that are Safe Harbor certified by the U.S. Department of Commerce to assist them with ESI originating from WCE/Denmark.

## III. Phased Discovery

A. Phase 1 – Documents and Sources Unlikely To Contain Protected Data

In responding to discovery requests that call for ESI held in Denmark, Defendants will first produce responsive documents from categories unlikely to have protected data. Documents that fall within the following categories should not contain Personal or Sensitive Data, and therefore, to the extent such documents are responsive to a discovery request and are not otherwise subject to an objection, they will be produced during Phase One:

   a. Quality System Documents
   b. Manufacturing Specifications
   c. Design Documents
   d. Regulatory Communications
   e. Other categories of responsive documents at WCE from non-structured sources that are determined to be unlikely to contain protected data

B. Phase 2 – Documents from Targeted Custodians and Sources

1. Initial Custodians

Processing of Denmark ESI for potential production shall be initially limited to a select group of highly relevant custodians, as opposed to a larger group with only marginally relevant data. The data sources processed for these custodians will also be initially limited to those portions of their relevant user shares unlikely to contain protected data. *Sources and file folders identified by these custodians as likely to contain irrelevant and Personal or Sensitive Data will be excluded from term searching.* This will minimize the volume and breadth of data protection issues.

At this time, Defendants have identified the individuals listed below as the key Denmark custodians. Additional custodians may be added later by agreement of the Parties or by direction of the Court. The Defendants will supply an agreed upon set of search terms and search methodology to identify responsive documents. Responsive documents from the following custodians will be produced:

      a. Arne Mølgaard-Nielsen
      b. Camilla Wamberg Munkesoe
      c. Annette Lüneborg
      d. Henrik Gyllun
      e. Per Hendriksen
      f. Anna Bjerg Jessen
      g. Torben Peter Andersen
      h. Mette Neiendam Nielsen

2. Other Targeted Sources

Shared folders, relevant and responsive departmental folders and other specifically identified shared WCE sources identified by WCE as potentially having responsive information and unlikely to have protected data will be searched for responsive documents or data.

Phase 3 – Structured Data

To the extent there is structured data in Denmark that is responsive to a specific discovery request by Plaintiffs, and which is not duplicative of data/documents already produced to Plaintiffs and not available to be produced to Plaintiffs in a less burdensome format, portions of the responsive structured data will be produced subject to redaction to remove protected data.

Phase 4 – Filtering for Further Documents/Data

A. Key Denmark Custodians' Email, User Shares, Department Folders

Defendants will apply a process in Denmark, aimed at culling out protected data, to: (1) the exchange server data, and remaining portions (beyond those portions already processed in Phase 2) of the user shares, belonging to the limited group of key Denmark custodians listed above; and, (2) the remaining shared folders, relevant and responsive departmental folders and other specifically identified shared WCE sources identified by WCE as potentially having responsive information which were not already processed in Phase 2. Responsive ESI will be

produced with protected data handled in a manner consistent with Denmark's Act and the Federal Rules of Civil Procedure.

### B. Further Filtering

Searching data sources in Denmark using search terms qualifies as "processing data" under Danish law, and accordingly, searching broad portions of file servers, exchange servers housing emails, and other non-targeted sources based only upon the possibility that such sources might contain non-duplicative relevant document should be kept to a minimum as a good faith effort to comply with Danish law. Otherwise, conducting such widespread searching risks processing Personal and Sensitive Data inadvertently without legal justification.

Due to the burden of searching sources beyond those identified above due to the fact that all filtering out of protected data must occur in Denmark, and review of documents that may contain potentially protected data and redaction of same must also occur in Denmark, the following guidelines apply regarding ESI beyond the sources noted specifically herein:

1. Defendants shall notify Plaintiffs when Defendants complete Phase 3.

2. With their notice, Defendants will disclose any and all sources and categories of data or documents Defendants intend to yet produce.

3. Plaintiffs shall then have 30 days to notify Defendants in writing of the specific additional documents or data housed in Denmark which Plaintiffs believe are responsive to discovery but have not been produced.

4. The Parties will meet and confer as to disagreement as to additional ESI. Because broader discovery of sources may implicate data privacy, and impart a burden upon Defendants, Plaintiffs will provide a detailed explanation for why the additional categories of ESI are necessary to litigating their claims.

5. If the Parties cannot resolve any disputes over such discovery, they must first arrange for a telephonic conference with Magistrate Baker before filing a motion with the Court to address said disputes.

**SO ORDERED** this:

                                                        _____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana