IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCT LIABILITY LITIGATION                    Case No: 1:14-ml-2570-RLY-TAB
_____        MDL No. 2570

This Document Relates to All Actions
_____

---

**PLAINTIFFS' RESPONSE IN OPPOSION TO COOK DEFENDANTS' MOTION FOR
ENTRY OF DISCOVERY PROTOCOL FOR DENMARK ESI**

## I.     INTRODUCTION

The Defendants want this Court to enter *two* discovery protocol orders governing the
discovery of ESI in this litigation; one for "Denmark-based ESI" that they claim reduces the
burdens of a Danish data privacy act, and another for all other ESI.  Plaintiffs oppose the
Defendants' so-called Denmark-based ESI protocol because it will have a chilling effect on
discovery in this matter by replacing the controlling discovery standards set forth in the Federal
Rules of Civil Procedure (FRCP) with more restrictive standards that will impose substantial
burdens on Plaintiffs and create delays and waste due to discovery disputes and motions practice
that will inevitably follow.  All of this can be avoided by the entry of a single ESI protocol that is
consistent with the standards set forth in the FRCP.  For these reasons, and as set forth in more
detail herein, this Court should deny Defendants' motion and enter a single case management
order governing the production of all ESI regardless of where it happens to be physically stored.

## II.    ARGUMENT

This is not the first time that a medical device manufacturer has raised foreign data
privacy law as a shield to discovery in mass tort litigation.  In *In Re: American Medical Systems*

*Pelvic Repair System Products Liability Litigation* (hereinafter *In re: AMS*), the defendants argued in part that discovery should be limited due to the additional burdens and costs associated with producing documents in the possession of a foreign subsidiary subject to foreign data privacy laws. *See* Pretrial Order # 24, ECF No. 326, 2:12-md-02325 (S.D.W.V. 2012), attached hereto as Exhibit 1. The United States District Court for the Southern District of West Virginia found that AMS's arguments were not compelling and granted the plaintiffs' motion to compel and awarded attorneys' fees. The court explained that "AMS was and is willing to undertake the expense of doing business in sixty countries for the purpose of selling its products; responding to litigation is an expected part of doing that business." *Id.* at 5.

The same result should follow here, particularly as the arguments available to Defendants in this case are far less compelling than those that fell flat *In re: AMS*. For example, Plaintiffs in this case actually named the European Defendant from which it seeks discovery and that discovery is located in only one foreign country, as opposed to sixty. Moreover, each Defendant in this case, including the European Defendant, submitted to the jurisdiction of this court and admitted that this Court "has the authority to order discovery of ESI held in Denmark, regardless of the restrictions imposed by Danish data privacy laws." Defendants' Mem., ECF No. 359, at 2. There is also no dispute that the discovery process is governed by the Federal Rules of Civil Procedure.

Defendants' motion should be denied and the Danish ESI Protocol should be discarded because (1) Defendants have failed to demonstrate that this Court should impose limitations on discovery due simply to the presence of Denmark's data privacy law, and (2) Defendants' proposed limitations on discovery impermissibly deviate from the standards set forth in the

Federal Rules of Civil Procedure and impose unnecessary burdens on the Plaintiffs without sufficient justification.

> **A.  Defendants Have Failed to Demonstrate that They Are Legally Entitled to Special Limitations on Discovery Based Merely on Denmark's Act on Processing of Personal Data.**

The fact that documents are situated in a foreign country does not bar their discovery. *Cooper Indus., Inc. v. British Aerospace, Inc.*, 102 F.R.D. 918, 920 (S.D.N.Y. 1984) (citing *Marc Rich & Co. v. United States,* 707 F.2d 663, 667 (2d Cir. 1983)).  Moreover, as *Cooper* aptly explained, a "Defendant cannot be allowed to shield crucial documents from discovery by parties with whom it has dealt in the United States merely by storing them with its affiliate abroad. Nor can it shield documents by destroying its own copies and relying on customary access to copies maintained by its affiliate abroad." *Id.*  "If defendant could so easily evade discovery, every United States company would have a foreign affiliate for storing sensitive documents." *Id.*

It is also "well settled that a foreign blocking statute does not deprive an American court of the power to order a [foreign] party subject to its jurisdiction to produce evidence even though the act of production may violate the statute." *Societe Nationale Industrielle Aerospatiale v. U.S. District Court,* 482 U.S. 522, 544, n.29 (1987).   In fact, the Supreme Court has held that foreign statutes which seek to block access to information needed to fully and fairly adjudicate a matter "need not be given the same deference by courts of the United States as substantive rules of law at variance with the law of the United States."  *Id.* (quoting Restatement of Foreign Relations Law of the United States (Revised) § 437, Reporter's Note 5 (1986)); *Societe Internationale Pour Participations Industriales Et Commerciales, SA v. Rogers*, 357 U.S. 197, 205 (1958) (failure to produce records because of fear of punishment under the laws of its sovereign would undermine

congressional policies and invite efforts to place ownership of American assets in persons or firms whose sovereign assures secrecy of records)).

Numerous federal courts have required foreign litigants to produce responsive documents despite both the presence of such statutes *and* the risk that those litigants could be subject to sanctions by producing that information.  *In re Air Cargo Shipping Servs. Antitrust Litig.*, 278 F.R.D. 51, 52, 54 (E.D.N.Y. 2010) (ordering the production of Air France documents located in France, despite the presence of a French statute prohibiting the disclosure of such documents and imposing potential sanctions for violations of the statute); *AccessData Corp. v. ALSTE Technologies GmbH*, Civ. No. 2:08-cv-569, 2010 WL 318477, at *3 (D. Utah Jan. 21, 2010) (requiring that a German defendant respond to discovery pursuant to the Federal Rules of Civil Procedure over that defendant's contention that production "would be a huge breach of fundamental privacy laws in Germany.")

In so ruling, these courts also questioned whether statutes that prevent or restrain the transfer of discovery to the United States by a foreign entity were passed to be enforced against their own citizens or whether they were intended "to provide them with tactical weapons and bargaining chips in foreign courts."  *In re Air Cargo*, 278 F.R.D. at 53-54; *see also United States v. Gonzalez,* 748 F.2d 74, 78 (2d Cir. 1984).

As Defendants admit and as case law makes clear, the mere fact that Denmark has a statute restricting the processing and transfer of personal data does not alleviate the Defendants' obligation to comply with U.S. discovery rules or an order of this Court compelling discovery. And Defendants' argument that Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii) supports more restricted discovery is without merit.

First, Defendants argue that "discovery can be limited if it should be made from another source that is more convenience, less burdensome, or less expensive" is "*perhaps* particularly applicable to issues with the Denmark data."   ECF No. 359, at 5 (emphasis added).   But Defendants fail to explain why this exception should apply.   Moreover, on April 23, 2015 Cook designated a witness to testify in response to Plaintiffs' 30(b)(6) notice of taking deposition regarding regulatory matters. This deposition testimony revealed that each Cook defendant maintains their own actual documents and information locally as opposed to maintaining them in some central corporate repository.   (*See* Exhibit 2, Deposition of April Lavender, 13:11-14:17, Apr. 23, 2015.)   Accordingly, it is very unlikely that responsive documents and information located in Denmark will be available through the other defendants.   That same witness testified that the William Cook Europe defendant located in Denmark is the sole manufacturer of the IVC filters at issue in this case, making production of that Defendants' documents and information **essential** to the merits of this case.   (*Id.* at 38:19-39:15.)   For example, all investigations and follow up regarding all adverse events (a.k.a., "complaints") reported worldwide associated with Cook's IVC filter products are conducted by William Cook Europe since it is the manufacturer. (*Id.* at 178:14-178:22; 180:6-182:23). These investigations are relevant to Plaintiff's failure to warn allegations (*i.e.*, what Cook knew and when) and/or design defect claims in that raw data and information gathered by William Cook Europe may reveal that the defendants' products were unreasonably dangerous.

Defendants generally contend that a more restrictive ESI protocol should be adopted because it will "minimize conflict with Danish law, avoid delays caused by discovery disputes, and reduce unnecessary and avoidable burdens upon Cook to the extent possible."  ECF No. 359, at 2-3.   But Defendants fail to provide any supporting legal authority identifying those as

grounds permitting the Court to discard the federal discovery standards for more restrictive standards and fail to explain how the more restrictive ESI protocol they advance will, in fact, minimize these issues.  In fact, the opposite is likely true; the Defendants' proposed ESI protocol will likely *create* delays, discovery disputes, motions practice, and unnecessarily impose burdens on Plaintiffs.

Notably, although Defendants cite numerous provisions within the Danish Act regarding both the processing and transfer of personal data, they make no effort to explain either (1) the extent to which they believe responsive discovery will contain such information, and (2) the (non-)applicability of the Act in light of the various exceptions[1] made for the processing and transfer of personal data within the context of defending against legal claims.

Ultimately, Defendants are merely attempting to shift the burdens associated with the Danish privacy law onto the Plaintiffs.  But it was and is Defendants' choice to conduct its operations in Denmark, *despite its privacy laws*, while continuing to do business in the United States.  As the court in *In re: AMS* aptly explained, responding to litigation in the United States is an expected part of doing business abroad.  Exhibit 1, at 5.  Therefore, any burden created by the tension between U.S. discovery rules and Danish privacy law must be borne by the Defendants.

**B.    The Proposed Danish ESI Protocol, Which Substantially Deviates from the Discovery Standards Set Forth in the FRCP Without Sufficient Justification, Is Improper and Unworkable.**

---

[1] Title II, chapter 4, section 6 of the Act provides that "personal data may be processed only if: ". . . 3. processing is necessary for compliance with a legal obligation to which the controller is subject; . . . ."  Section 7(2) further provides that various prohibitions in the Act "shall not apply where: . . . 4. The processing is necessary for the establishment, exercise, or defence of legal claims."  Chapter 7, section 27, which addresses transfer of personal data to third countries also states: "(1) Transfer of data to a third country may take place only if the third country in question ensures an adequate level of protection, cf. however subsection (3)."  Subsection (3) provides that "In addition to the cases mentioned in subsection (1), transfer of data to a third country may take place if: ". . . 4. The transfer is necessary or legally required . . . for the establishment, exercise or defence of legal claims; . . . ."

Rule 26 of the Federal Rules of Civil Procedure establishes the broad scope of discovery in the United States federal courts. It provides, in relevant part, that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense-- including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). Importantly, "relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

Defendants' Denmark-based ESI protocol is problematic because it fundamentally alters the discovery process as governed by the FRCP in at least four ways. First, it alters the scope of discovery from information that "appears reasonably calculated to lead to the discovery of admissible evidence" to information "which is relevant and *necessary* to support a claim or defense." Proposed Danish ESI Protocol, ECF No. 358-1, at 4 (emphasis in original). The protocol further provides that Plaintiffs' discovery requests for "data, information, or documents in Denmark must be *narrowly tailored* to that which is *relevant* and *necessary* to Plaintiffs' claims. *Id.* Even without defining "narrowly tailored" and "necessary," it is clear that this is a fundamental and significant limitation on the scope of discovery. It shifts the burden of discovery to the Plaintiffs in that they will inevitable be forced to justify their "need" for withheld discovery without being able to see it first. *See* ECF No. ("Plaintiffs will provide a detailed explanation [to Defendants] for why the additional categories of ESI are necessary to litigating their claims.")

Defendants' suggestion that Plaintiffs should demonstrate that they "need" documents merely because they are located in another country was flatly rejected by the Court in *In re:*

*AMS*.   In response to a similar proposal, that Court wrote: "AMS's assertion that the plaintiffs should show that they "need" documents in other countries is similarly odd. AMS is the party whose burden it is to produce or make available for inspection and copying its documents which are responsive to discovery requests and otherwise discoverable."  Exhibit 1, at 3.  Requiring Plaintiffs to explain to Defendants why certain withheld information is necessary to their claims may also impermissibly invade the work-product privilege.

Second, the protocol also permits Defendants to "substitute alternative, substantially similar documents or data available from non-protected sources located in North America." Proposed Danish ESI Protocol, ECF No. 385-1, at 4.  "Substantially similar" is also not defined. Providing Defendants with the ability to substitute "alternative, substantially similar" information does nothing more than grant Defendants unfettered discretion as to what information and documents to provide to Plaintiffs.  This provision would also presumably permit the Defendants to withhold documents which are substantially similar but contain additional relevant and discoverable information.  This is not a theoretical argument. For example, the Danish defendant conducts its own investigations and follow-up on complaints associated with its filter products and maintains its own files. (*See* Exhibit 2, at 182:3-182:15). Summaries of those investigations may be available in Cook's Trackwise database accessible here in the United States, but the summaries contained therein are from the company's perspective. (*Id*. at, 182:3-182:18).  The proposed protocol would allow Defendants to substitute the contents of its European-based filter investigations, for example, with what summaries exists in Trackwise. This would render Plaintiffs beholden to a Cook employee's interpretation of these investigations rather than allow Plaintiffs and Plaintiffs' experts access to the actual documents and information created, collected, maintained and adjudicated by William Cook Europe with

regard to reportability, defectiveness, failure rates, manufacturing evaluations, etc., all highly relevant to Plaintiffs' claims.

Third, the suggested protocol proposes a phased approach to production whereby the Cook Defendants would produce responsive ESI based on the likelihood that it contains Sensitive Data.  Proposed Danish ESI Protocol, ECF No. 358-1, at 4.  Although Defendants contend that this process will somehow avoid conflict between their discovery obligations and Danish/EU data privacy laws, such an approach again gives the Cook Defendants virtually un-checked control over what documents they produce and when.  This could have significant implications for the rest of the discovery process, including the taking of depositions and completion of expert reports.

Fourth, Defendants prospectively exclude sources of information prior to running searching using agreed-upon search terms if their own employees determine those sources of information contain irrelevant and Personal or Sensitive Data supposedly subject to the Danish data privacy act.  Proposed Danish ESI Protocol, ECF No. 358-1, at 5; Defendants' Mem. Supp. ECF No. 359, at 7. Defendants contend that this limitation would "minimize broad, indiscriminate ESI searching beyond the relevant data sources identified in the Protocol." Defendants' Mem. Supp., ECF No. 359, at 7.  This approach would leave Defendants with the power to categorically eliminate sources of potentially responsive information before searching them, meaning that responsive documents located in these sources would never be identified or produced.

For these reasons, Defendants' protocol impermissibly imposes substantial and unjustified limitations on the scope of discovery entrenched in the FRCP, leaves Defendants with too much discretion as to what they produce and when, and shifts the burdens associated with the

Danish privacy laws onto Plaintiffs. There can also be no doubt that these limitations, individually and as a whole, will result in the non-production of a large amount of otherwise discoverable and responsive information.

**III.    CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Cook Defendant' Motion for Entry of Discovery Protocol for Denmark ESI.

Respectfully submitted,

**COHEN & MALAD, LLP**

*/s/ Irwin B. Levin*
Irwin B. Levin, IN Atty. No. 8786-49
**COHEN & MALAD, LLP**
One Indiana Square, #1400
Indianapolis, Indiana 46204
Telephone: (317) 636-6481
Facsimile: (317) 636-2593
ilevin@cohenandmalad.com

***Lead Counsel for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of May, 2015, a copy of the foregoing was served

electronically and notice of the service of this document will be sent to all parties by operation of

the Court's electronic filing system to CM/ECF participants registered to receive service in this

matter. Parties may access this filing through the Court's system. A copy of the foregoing was

also served via U.S. Mail to the following non-CM/ECF participants:

David Carl Anderson
Anderson Law
711 Van Ness Avenue
Suite 220
San Francisco, CA 94102

Justin Kyle Brackett
Tim Moore, Attorney at Law, P.A.
305 East King St.
Kings Mountain, NC 28086

David J Britton
LAW OFFICE OF DAVID J BRITTON
2209 N 30TH ST, STE 4
TACOMA, WA 98403

George Jerre Duzane
Duzane, Kooperman & Mondelli
603 Woodland Street
Nashville, TN 37206-4211

Richard A. Freese
LANGSTON SWEET & FREESE PA
The Morgan Keegan Center
2900 Highway 280 Suite 240
Birmingham, AL 35223

Jay Harris
Harris, Reny & Torzewski
3rd Floor
Two Maritime Plaza
Toledo, OH 43604

Brian James Holmes
Hurley Mckenna & Mertz, P.c.

Joseph A. Napiltonia
Law Office of Joe Napiltonia
213 3rd Avenue North
Franklin, TN 37064

Patrick M. Regan
REGAN ZAMBRI & LONG PLLC
1919 M. St. NW, Suite 350
Washington, DC 20036

Marian S. Rosen
ROSEN & SPEARS
5075 Westheimer, Suite 760
Houston, TX 77056

W. Bryan Smith
Morgan & Morgan, LLC
2600 One Commerce Square
Memphis, TN 38103

Mark A. Tate
Tate Law Group, LLC
2 East Bryan Street, Suite 600
P. O. Box 9060
Savannah, GA 31412

Anthony James Urban
LAW OFFICES OF ANTHONY URBAN,
P.C.
474 N. Centre Street, 3rd Floor
Pottsville, PA 17901

Brian J. Urban
LAW OFFICES OF ANTHONY URBAN,
P.C.

33 N. Dearborn Street, Suite 1430
Chicago, IL 60602

WILNAR JEANNE JULMISTE
ANDERSON GLENN LLP
2201 NW Corporate Blvd, STE 100
BOCA RATON, FL 33431

Cliff W. Marcek
Cliff W. Marcek, P.C.
700 S. Third St.
Las Vegas, NV 89101

474 N. Centre Street, 3rd Floor
Pottsville, PA 17901

Peter C Wetherall
Wetherall Group, Ltd.
9345 W. Sunset Road, Suite 100
Las Vegas, NV 89148

Corrie Johnson Yackulic
Corrie Yackulic Law Firm PLLC
315 5th Avenue South, Suite 1000
Seattle, WA 98104-2682

*/s/ Irwin B. Levin*