**IN THE UNITED STATE DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND          Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION           MDL No. 2570

This Document Relates to All Actions

**COOK DEFENDANTS' BRIEF IN SUPPPORT OF MOTION FOR ENTRY OF**

**DISCOVERY PROTOCOL FOR DENMARK ESI**

**I.      Introduction**

After formation of MDL 2570, Plaintiffs and Cook Incorporated, Cook Medical LLC,

*f/k/a* Cook Medical Incorporated, and William Cook Europe ApS (collectively the "Cook

Defendants") entered into negotiations for an "ESI order" to govern issues pertaining to

production of electronically stored information ("ESI") for all cases based upon the agreed order

entered in *Adams v. Cook Medical Incorporated*, 1:13-cv-00013-RLY-TAB, a copy of which is

Exhibit 1 to this Brief. Cook Defendants and Plaintiffs' counsel had long discussed a separate

order dealing with Denmark data. An unknown percentage of Defendants' ESI is held by

Defendant William Cook Europe ("WCE") in Denmark. In the interest of creating an agreed

discovery plan for Denmark ESI, Defendants sent a proposal to Plaintiffs' counsel for their

review on February 11, 2015 titled as an "Exhibit B" to the yet to be finalized ESI order (Doc.

No. 293-1, at Exhibit B, hereafter, "Denmark Protocol").[1] The expressly stated aim of the

Denmark Protocol is an agreed process for production of Danish ESI under which the Cook

Defendants fully comply with their U.S. discovery obligations, but by which any potential

---

[1] Document's full title is: Exhibit B – Agreed Order On Electronically Stored Information And Document
Production Protocol – Denmark ESI.

conflicts with Danish data privacy laws are minimized to the extent possible, discovery disputes are reduced, and unnecessary burdens upon Cook are avoided or lessened.

Despite Plaintiffs' insistence to the contrary, Cook Defendants have not, and are not, refusing to produce discoverable ESI.  Furthermore, there appears to be no dispute regarding the law applicable to the Denmark Protocol.  Defendants agree with Plaintiffs that this Court has the authority to order discovery of ESI held in Denmark, regardless of the restrictions imposed by Danish data privacy laws.  The actual dispute is that Plaintiffs refuse to even discuss what Defendants must now seek via this Brief - a discovery plan, based upon U.S. law and this Court's inherent authority, for the efficient management of Danish ESI in a manner that does not place undue burdens on the Cook Defendants, including provisions to avoid any unnecessary conflicts with Danish and European laws.  Such a plan is fully consistent with the guidelines of Fed. R. Civ. P. 26(b)(2)(C), including proportionality.

In response to this Brief, Plaintiffs will likely argue that Defendants' Denmark Protocol is unnecessary.  The Denmark Protocol was the *initial proposal* sent to Plaintiffs in what Defendants anticipated would be a negotiation to an agreed plan.  Unfortunately, Plaintiffs' counsel have stated they do not want a specific order addressing Denmark discovery, and hence the starting point proposal remains unchanged from when Defendants sent it to Plaintiffs  over two months ago.  The Denmark Proposal will not delay ESI production, instead it is intended to avoid  discovery disputes, thereby expediting production from Denmark to the extent possible. Efforts are already underway by Cook Defendants related to the production of responsive Danish ESI, but the value of the proposed protocol has not diminished.

As in any other case, this Court has the authority to put in place parameters, guidelines and/or limitations on the nature and extent of discovery.  Fed. R. Civ. P. 26(b)(2)(C)(i) –(iii).  Defendants therefore seek entry of their Denmark Protocol, or a modified version acceptable to this Court, as a supplement to the main "ESI order" to minimize conflict with Danish law, avoid

delays caused by discovery disputes, and reduce unnecessary and avoidable burdens upon Cook to the extent possible.

## II.      Danish Data Privacy

The impetus for the Denmark Protocol is that Denmark, as member of the European Union ("EU"), implemented the EU's Directive 95/46/EC ("Directive") which dictates limitations for the processing, transfer and disclosure of personal data.  Denmark's law, titled the Act on Processing of Personal Data ("Denmark's Act"), sets forth data privacy rules, and provides for civil and criminal penalties for failure to comply.[2]

Denmark's Act applies broadly to the processing of data[3], including "Personal Data" which is defined as "any information relating to an identified or identifiable natural person."[4] "Processing" is also broadly defined as "any operation or set of operations which is performed upon personal data, whether or not by automatic means."[5]  Three categories of sensitive Personal Data are proscribed in Denmark's Act for which processing, transfer or disclosure is more highly restricted (hereafter collectively, "Sensitive Data"):

- Data revealing racial or ethnic origin, political opinions, religious or philosophical beliefs, trade union membership, or data concerning health or sex life is not to be *processed*[6], with certain exceptions.[7]

- Data regarding "criminal offences, serious social problems and other purely private matters" can be *processed* if an exception for the previous category is

---

[2] Title VI, Ch. 18, Sec. 70.(1).
[3] Title I, Ch. 1, Sec. 1.(1), (2).
[4] Title I, Ch. 2, Sec. 3.(1)1.
[5] Title I, Ch. 2, Sec. 3.(1)2.
[6] Title II, Ch. 4, Sec. 7.(1).
[7] An exception is provided if processing is *necessary* for the establishment, exercise or defense of legal claims. Title II, Ch. 4, Sec. 7.(2)4.

met,[8] but *disclosure* of this category is prohibited unless one of a further list of limited exceptions is also met.[9]

- Processing data revealing "identification numbers" is prohibited unless one of the limited exceptions applies:[10] it is permitted by law or regulation, explicit consent is obtained, or it is carried out for solely scientific or statistical purposes.[11]

In addition, *transfer* of data out of Denmark to a non-EU nation may take place only if the other country ensures an adequate level of protection.[12]  And, the transfer of data must satisfy one of the specific justifications in the Act, which includes when a data transfer is **necessary** or **legally required** for the establishment, exercise or defense of legal claims.[13]  (Emphasis added)

Given Denmark's restrictions, and U.S. legal authority regarding comity and proportionality, Cook Defendants reasonably sought to establish an agreed plan as to Danish ESI.  Defendant William Cook Europe in particular has a significant interest in fashioning a plan by which it complies with both the law of its homeland and its obligations to this Court.  A process aimed at limiting the processing, disclosure and transfer of Sensitive Data to that which is *necessary*, is not inconsistent with U.S. law.   Particularly when, as here, the categories of Sensitive Data listed above are irrelevant to the issues in MDL 2570.  In fact, Plaintiffs expressed to Defendants that they would not object to redaction of  Sensitive Data because it is irrelevant.[14]

---

[8] Title II, Ch. 4, Sec. 8.(1), (6).
[9] Title II, Ch. 4, Sec. 8.(2).
[10] Title II, Ch. 4, Sec. 11.(1).
[11] Title II, Ch. 4, Sec. 11.(2).
[12] Title II, Ch. 7, Sec. 27.(1).  While the U.S. does not qualify under this standard, the U.S. Commerce Department's Safe Harbor program allows entities in the U.S. to qualify as providing "adequate protection."
[13] Title II, Ch. 7, Sec. 27.(3)4.
[14] Plaintiffs' counsel made that statement while also stating, however, that they do not believe the Denmark Protocol is necessary.

### III.   U.S. Law Calls for Proportionality and Comity

Defendants' Denmark Protocol is based upon the Sedona Conference's International Principles for ESI.[15]  The Sedona Conference, an esteemed group of judges and lawyers, based its International Principles on U.S. legal authorities.  Accordingly, Defendants' Denmark proposal is not an attempt to evade U.S. law.  To the contrary, it is based completely on U.S. legal authorities.

The Federal Rules of Civil Procedure support reasonable limitations and proportionality in discovery via the dictates of Fed. R. Civ. P. 26(b)(2)(C)(i) –(iii).  Perhaps particularly applicable to issues with the Denmark data is the rule that discovery can be limited if it should be made from another source that is more convenient, less burdensome, or less expensive.  Fed. R. Civ. P. 26(b)(2)(C)(i).

But, perhaps equally important in this case are the ideals of comity set forth by the United States Supreme Court in Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist., 482 U.S. 522 (1987).  In Aerospatiale, the plaintiff filed suit in the Southern District of Iowa against a French plane manufacturer.  In responses to written discovery, the French defendant filed a motion for protective order stating that the Hague Convention was the exclusive means to obtain the information sought and that the discovery sought could not be provided because the French penal code prohibited the same.  The U.S. Supreme Court held that the Hague Convention was not the exclusive means to obtain evidence.  (Id., at 539-540).  The Court went on to outline how the principle of comity should guide courts facing international

---

[15] The Sedona Conference, International Principles on Discovery, Disclosure & Data Protection:  Best Practices, Recommendations & Principles for Addressing the Preservation Discovery of Protected Data in U.S. Litigation, 2011.

discovery conflicts[16], and the Sedona Conference relied upon these ideals in preparing their best

practices upon which Defendants' proposal is based:

> [W]e have long recognized the demands of comity in suits involving foreign states, either as parties or as sovereigns with a coordinate interest in the litigation. (citation omitted) American courts should therefore take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state.  We do not articulate specific rules to guide this delicate task of adjudication.

(Id., at 546).

> The Court further stated:

> American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position. Judicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests.  When it is necessary to seek evidence abroad, however, the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses. For example, the additional cost of transportation of documents or witnesses to or from foreign locations may increase the danger that discovery may be sought for the improper purpose of motivating settlement, rather than finding relevant and probative evidence.   Objections to abusive discovery that foreign litigants advance should therefore receive the most careful consideration.

(Id.)

Cook Defendants' proposed Denmark Protocol seeks to follow this clear guidance from

the United States Supreme Court to forge a process that the Parties can follow that is both

consistent with the requirements of the Federal Rules of Civil Procedure and recognizes and

addresses certain challenges created by applicable Danish and European legal authorities.

---

[16] Because Cook Defendants are not attempting to withhold any discoverable Denmark data based upon Danish law, there is not an actual conflict to work through between Defendants' U.S. discovery obligations and Danish law.  If there were, however, this Court would likely utilize the balancing test found in Reinsurance Co. of America, Inc. v. Administratia Asigurarilor de Stat, 902 F.2d 1275, 1279-1282 (7th Cir. 1990).   The fact that courts in this Circuit apply a balancing test reiterates the fact that U.S. courts, due to comity, recognize and attempt to honor the conflicting laws of foreign nations to the extent possible.

For example, the Denmark Protocol:

- Calls for a phased approach to discovery whereby Danish ESI that is responsive to Plaintiffs' discovery requests is produced in a sequence determined by the extent Defendants must screen it for Sensitive Data.  Thus, documents with a low probability of containing Sensitive Data will be produced before documents that must be screened in Denmark.   This process avoids conflict between U.S. discovery obligations and Danish/EU data privacy laws.

- Seeks to minimize broad, indiscriminate ESI searching beyond the relevant data sources identified in the Protocol.  This will lessen the extent to which Defendants have to screen documents in Denmark to comply with Danish law.  That in turn reduces undue burden upon Cook Defendants of screening ESI that is unlikely to contain responsive data.

- Excludes from searching those file folders/file paths identified by the Danish custodians as containing only irrelevant Sensitive Data.  This will lessen the extent to which Defendants have to screen documents in Denmark, in turn reducing undue burden upon Cook Defendants of screening ESI unlikely to contain responsive data.

## IV.    Conclusion

Cook Defendants seek entry of their Denmark Protocol to minimize conflict with Danish law, to avoid delays caused by discovery disputes, and reduce unnecessary and avoidable burdens upon Cook Defendants to the extent possible.   These goals are both prudent and supported by U.S. law, and will expedite discovery in MDL 2570.

7

Submitted this 21st day of April, 2015.

                                           Respectfully submitted,

                                           */s/James M. Boyers*

Douglas B. King, Esq., Lead Counsel
James M. Boyers, Esq.
Christopher D. Lee, Esq.
Kip S. M. McDonald, Esq.
John C. Babione, Esq.
Sandra L. Davis, Esq.
WOODEN & McLAUGHLIN LLP
One Indiana Square, Suite 1800
Indianapolis, IN 46204-4208
Tel:     (317) 639-6151
Fax:     (317) 639-6444
dking@woodmclaw.com
jboyers@woodmclaw.com
clee@woodmclaw.com
jbabione@woodmclaw.com
sdavis@woodmclaw.com
kmcdonald@woodmclaw.com

Counsel for Cook Defendants

8

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2015, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.  All non-registered counsel of record will be served by Plaintiffs' Steering Committee.

*/s/ James M. Boyers*
James M. Boyers, Esq.