IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION | § § § § § § | Case No.1:14-ml-2570-RLY-TAB MDL No. 2570 |
| This Document Relates to All Actions | § § § | |

### PLAINTIFFS' OBJECTIONS TO MAGISTRATE'S ORDER ON ELECTRONICALLY STORED INFORMATION AND DOCUMENT PRODUCTION PROTOCOL – DENMARK ESI

Pursuant to Federal Rule of Civil Procedure 72(b), Plaintiffs object to the Magistrate Judge's "Order on Electronically Stored Information and Document Production Protocol – Denmark ESI" (hereinafter the "Denmark Protocol") filed on July 10, 2015. In support of their objections, Plaintiffs would respectfully show the Court as follows:

## I.
## INTRODUCTION

The issue before the Court is whether Plaintiffs and Defendants are *both* to be held to the same discovery standards and burdens with regard to the production of ESI within their custody and control **_or_** whether Defendants are to be granted more advantageous discovery terms (without any particularized showing that such terms are warranted) simply because the requested ESI is located overseas. The "Denmark Protocol" exhibits clear error by adopting the latter position.

On July 10, 2015, *two* separate discovery protocols were entered: (1) a general order providing for the customary broad discovery of ESI from domestic parties, (the "General ESI Protocol") and (2) a second, more restrictive, order governing Denmark-

1

based ESI (the "Denmark Protocol"). The impetus for this two-tiered discovery scheme was the Danish Act of Processing of Personal Data ("Data Processing Act") which seeks to limit the processing and disclosure of "personal data." However, the Denmark Protocol errs by bypassing reasonable accommodations of foreign privacy interests in favor of a wholesale refashioning of the scope of discovery and the burdens of discovery. In particular, the Denmark Protocol departs from well-established discovery standards in the following regards:

- The scope of discovery obtainable from Plaintiffs (or domestic sources) is governed by the broad and customary "reasonably calculated to lead to admissible evidence" standard, while discovery materials obtained from Denmark are erroneously subjected to the more restrictive standard of being "*relevant and necessary* to support a claim or defense."

- Although American courts consistently hold that "the party relying on foreign law has the burden of showing such law bars production [of documents]," the Denmark Protocol erroneously imposes the burden on Plaintiffs to demonstrate that the requested documents are "relevant," "necessary," and "narrowly tailored" to Plaintiffs' claims.

- The Denmark Protocol erroneously and unfairly extends Defendants unfettered discretion to pick and choose which documents to produce via provisions allowing Defendants to (1) unilaterally "interpret narrowly" any discovery request implicating personal data, (2) unilaterally "substitute alternative, substantially similar documents or data" in place of responsive

documents located in Denmark, (3) unilaterally choose whether or not to produce documents containing personal data.

Simply stated, the Denmark Protocol is clearly erroneous and inconsistent with applicable rules and law. As such, it should be discarded or revised because (1) Defendants have failed to demonstrate that restrictions on discovery are warranted by the mere presence of a Danish data privacy law, and (2) even if restrictions were warranted, the limitations set forth in the Denmark Protocol are inconsistent with the Federal Rules of Civil Procedure and impose unnecessary burdens on Plaintiffs without sufficient justification.

## II.
## OVERVIEW OF THE DATA PROCESSING ACT

The Danish Act of Processing of Personal Data ("Data Processing Act") codifies a data privacy regime established by the European Union.[1] Denmark's Data Processing Act, like similar acts in other European countries, limits the processing and disclosure of "personal data" which is defined as "information relating to an identified or identifiable natural person." [Data Processing Act, Ch. 2, Sec. 3-(1)]. For example, the Data Processing Act sets forth good practices for the use of persona data including (1) limiting processed data to that which is "adequate, relevant and not excessive" for the purposes [Data Processing Act, Title 2, Ch. 4, Sec. 5-(3)]; (2) collecting data only for legitimate purposes which are not incompatible with the further processing, [Data Processing Act, Title 2, Ch. 4, Sec. 5-(2)], and (3) only keeping data in a form which makes it possible to identify the

---

[1] *See* Directive 95/46/EC of the European Parliament and the Council of Europe of 24 October 1995 concerning the Protection of Individuals with Regard to Processing of Personal Data and the Free Circulation of Such Data, art 1.

data subject for the minimal period necessary to accomplish the purposes of the processing [Data Processing Act, Title 2, Ch. 4, Sec. 5-(5)].

With regard to personal data, the Data Processing Act sets forth seven circumstances where processing is permissible. Four of those exceptions are potentially applicable to a party's discovery obligations in an American court:[2]

1. the data subject has given explicit consent; or

      \*     \*     \*

3. processing is necessary for compliance with a legal obligation to which the controller is subject; or

      \*     \*     \*

6. processing is necessary for the performance of a task carried out in the exercise of official authority vested in the controller or in a third party to whom the data are disclosed, or,

      \*     \*     \*

7. processing is necessary for the purposes of the legitimate interests pursued by the controller of by the third party to whom the data are disclosed, and these interests are not overridden by the interests of the data subject.

[Data Processing Act, Title II, Ch. 4, Sec. 6-(1)]. Additionally, "sensitive data" -- which includes "data revealing racial or ethnic origin, political opinions, religious or

---

[2] The full text of the Data Processing Act provides that personal data may be processed in the following circumstances:
- the data subject has given explicit consent; or
- processing is necessary of the performance of a contract to which the data subject is party or in order to take steps at the request of the data subject prior to entering into a contract; or
- processing is necessary for compliance with a legal obligation to which the controller is subject; or
- processing is necessary in order to protect the vita interests of the data subject; or
- processing is necessary for the performance of a task carried out in the public interest; or
- processing is necessary for the performance of a task carried out in the exercise of official authority vested in the controller or in a third party to whom the data are disclosed, or,
- processing is necessary for the purposes of the legitimate interests pursued by the controller of by the third party to whom the data are disclosed, and these interests are not overridden by the interests of the data subject.

[Data Processing Act, Title II, Ch. 4, Sec. 6-(1)].

4

philosophical beliefs, trade union membership or data about health or sex life" -- may be processed under four circumstances including where "necessary for the establishment . . . of legal claims."[3] [Data Processing Act, Title II, Ch. 4, Sec. 7-(1)].

The Data Processing Act also provides for the transfer of data to a third country where the receiving country ensures an adequate level of protection *or* one of eight enumerated conditions are met. [Data Processing Act, Title II, Ch. 7, Sec. 27-(1), 27-(3)]. The adequacy of the level of protection afforded by a third country is to be assessed in light of all the circumstances surrounding the data transfer. [Data Processing Act, Title II, Ch. 7, Sec. 27-(2)]. The nature of the data, the purpose and duration of the processing operation, the country of origin and country of final destination, the rules of law in force in the receiving country, and the professional rules and security measures that exist in the receiving country are all factors in determining the adequacy of the data protection provided by a third country. [Data Processing Act, Title II, Ch. 7, Sec. 27-(2)]. Moreover, even aside from the adequacy of data protection, transfer to a third country may take place if (1) "the data subject has given his explicit consent," or (2) "the transfer is necessary or legally required. . . for the establishment, exercise or defense of legal claims." [Data Processing Act, Title II, Ch. 7, Sec. 27-(3)].

---

[3] Sensitive personal data (as detailed above) may be processed if:
- the data subject has given his explicit consent to the processing of such data;
- processing is necessary to protect the vital interests of the data subject or of another person where the person concerned is physically or legally incapable of giving his consent;
- the processing relates to data which has been made public by the data subject; or
- the processing is necessary for the establishment, exercise or defense of legal claims.

The Data Processing Act provides for fines or criminal penalties for the improper processing or transfer of data in violation of the provisions of the act. [Data Processing Act, Title II, Ch. 18, Sec. 69, 70-(1)].

## III.
## ARGUMENT

**A.   Under the Governing Legal Standard, The Denmark Protocol Should Be Modified or Set Aside.**

A district court's review of a discovery-related decision made by a magistrate judge is governed by Rule 72(a) of the Federal Rules of Civil Procedure. FED.R.CIV.P. 72(a); *see also* 28 U.S.C. § 636(b)(1). Rule 72(a) provides that "[t]he district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.' FED.R.CIV.P. 72(a). The clear error standard is met where the district court is left with a definite and firm conviction that a mistake has been made. *Weeks v. Samsung Heavy Indus.,* Ltd., 126 F.3d 926, 943 (7th Cir. 1997); *Anderson v. Hartford Life and Acc. Ins. Co.,* 6688 F.Supp.2d 1129, 1130 (S.D. Ill. 2009). In such instances, the district court shall modify or overturn the magistrate judge's ruling.

**B.   The Denmark Protocol Unreasonably Restricts Discovery in Violation of Applicable Procedural Rules and Law.**

The fact that documents are situated in a foreign country does not bar their discovery. *Cooper Indus., Inc. v. British Aerospace, Inc.,* 102 F.R.D. 918, 920 (S.D.N.Y. 1984), *citing, Marc Rich & Co. v. United States*, 707 F.2d 663, 667 (2d Cir. 1983). Rule 34 governs the production of documents and allows a party to request any designated documents, materials, or electronically stored information in the responding party's possession, custody or control. FED.R.CIV.P. 34(a). Importantly, there is nothing in Rule

6

34 that, on its face, limits its application to materials found only in the United States. FED.R.CIV.P. 34(1); 34(2); *Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.,* 242 F.R.D. 1, 12 (D.D.C. 2007)("With regard to the Federal Rules of Civil Procedure, the Court is aware of no rule which precludes discovery of ordinarily discoverable material, solely on the basis that it calls for information outside of the United States."). To the contrary, the United States Supreme Court has recognized that "it is well settled that such [foreign] statutes do not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence even though the act of production may violate that statute."[4] *Societe Nationale Industrielle Aerospatiale v. U.S. District Court,* 482 U.S. 522, 544 fn 29 (1987).

Numerous courts have ordered foreign litigants to produce responsive documents despite the presence of foreign data privacy acts or blocking statutes. *E.g., In re Air Cargo Shipping Servs. Antitrust Litig.,* 278 F.R.D. 51, 52, 54 (E.D.N.Y. 2010)(ordering the production of documents located in France despite the presence of a French statute prohibiting disclosure); *AccessData Corp. v. ALSTE Technologies GmbH,* Civ. No. 2:08-cv-569, 2010 WL 318477, *3 (D.Utah, Jan 21, 2010)(requiring German defendant to respond to discovery over argument that production would breach German privacy laws); *Devon Robotics v. DeViedma,* 2010 WL 3985877 (E.D.Pa. Oct. 8, 2010)(denying protective order sought on the basis of Italian data privacy law); *In re Activision Blizzard, Inc.,* 86 A.3d 531 (Chancery Ct. Del., Feb 11, 2014)(granting motion to compel over

---

[4] A contrary rule of non-production would undermine important interests of the United States. *See e.g., Societe Internationale,* 357 U.S. at 205 ("A general rule according foreign nationales a preferred position in pretrial proceedings in our courts would conflict with the principal of equal opportunity that governs the market they elected to enter. *Devon Robotics v. DeViedma,* 2010 WL 3985877, *5 (E.Pa. Oct. 8, 2010).

objection that the materials were protected by France's data protection act); *Enquip Technologies Group, Inc. v. Tycon Technoglass,* 2010 WL 53151 (Ct.App.Ohio, Jan. 8, 2010)(rejecting argument that foreign manufacturer was entitled to a protective order because of European Union's privacy directive); *Brightedge Technologies, Inc. v. Searchmetrics,* 2014 WL 2965062 (N.D.Cal. Aug. 12, 2014)(granting motion to compel production of materials previously withheld pursuant to European and/or German privacy laws).

Here, the Denmark Protocol is in error because it fails to hold Defendants to the same discovery standards that are imposed upon Plaintiffs by the General ESI Protocol and/or to the standards applicable under the federal rules and applicable law. Without requiring any particularized showing that: (1) Danish privacy laws are implicated by a discovery request, (2) no exception to the Danish Processing Act applies to permit the requested discovery, (3) that a balancing of the parties and government's respective needs and interests would not favor disclosure, and (4) that less restrictive measures could not be employed to address Denmark's privacy concerns, the Magistrate Judge has effectively granted Defendants a blanket objection to all requests for discovery encompassing ESI located outside of the United States unless Plaintiffs (after waiting out a multi-leveled scheme of production from other sources) can justify production of the requested ESI.  This clearly erroneous approach should be modified or set aside.

   1. **The Denmark Protocol erroneously alters the long-established standard for discoverable information from "reasonably calculated to lead to admissible evidence" to "relevant and necessary to support a claim or defense."**

The Denmark Protocol includes an unnecessary and unwarranted requirement that requested discovery must be "relevant and necessary" to support a claim or defense.

8

[Denmark Protocol, p. 4]. This requirement is neither consistent with the Federal Rules of Procedure nor required under Denmark's Data Processing Act.

For purposes of discovery, relevancy has long been construed to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *TIG Ins. Co. v. Giffin, Winning, Cohen & Bodewes*, 2001 WL 969037, *1 (N.D.Ill.2001), *quoting Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). The federal rules do not require that the requested information be necessary, or even admissible; it is enough if the discovery merely appears "reasonably calculated to lead to the discovery of admissible evidence.*" Chaves v. DaimlerChrysler Corp.*, 206 F.R.D. 615, 619 (S.D.Ind. 2002); *McNally Tunneling Corp. v. City of Evanston, Illinois*, 2001 WL 1414437, *1 (N.D.Ill.2001). Defendants receive the benefit of this permissive standard when requesting discovery from Plaintiffs.

Plaintiffs, on the other hand, are limited by the Denmark Protocol to discovery of Denmark-based ESI "which is *relevant* and *necessary* to support a claim or defense." [Denmark Protocol, p. 4]. This narrow view of permissible discovery is inconsistent with the broad scope of discovery provided by the federal rules. Moreover, there is no requirement in Denmark's Data Protection Act, that requested information be limited to that pre-determined to be relevant and necessary. Presumably, use of the term "necessary" in the Denmark Protocol arose from a misreading of the Data Processing Act's list of exceptions. That is, the Data Processing Act provides for exceptions from the prohibition on processing of personal data when the personal data is "necessary" for such purposes as complying with a legal obligation or pursuing a legitimate interest. The Denmark Data

9

Processing Act does not require, however, that processed information be "necessary" *to Plaintiffs' claims*; only that its processing be necessary for Defendants to *comply with a legal obligation*. It is a subtle but significant distinction. Defendants' legal obligation is to comply with the discovery rules of the country in which it chose to do business -- including the obligation to produce requested information that could reasonably lead to other information bearing upon an issue in the case.

> 2. **The Denmark Protocol erroneously shifts the burden to Plaintiffs to justify discovery when it is the Defendants' burden to show that a discovery request is improper.**

In determining whether documents are protected from disclosure under Danish and European Union law, American courts have consistently held that "the party relying on foreign law has the burden of showing such law bars production [of documents]." *E.g., Bright Edge Technologies,Inc. v. Searchmetrics, GmbH,* 2014 WL 3965062, *2-3 (N.D.Cal. Aug. 13, 2014)(emphasis adde); *United States v. Vetco, Inc.,* 691 F.2d 1281, 1288 (9th Cir.), *In re Air Crash at Taipei, Taiwan on Oct. 31, 2000,* 211 F.R.D. 374, 377 (C.D.Cal. 2002). Here, it is the Defendants who are seeking to use foreign law as a shield from production. Accordingly, it is Defendants who should bear the burden of demonstrating that the requested discovery (1) implicates Personal Data or Sensitive Data, (2) that there is no applicable exception allowing for production of the requested material under Danish law, and (3) that the balance of interests favors restrictions on the disclosure of the information. By imposing blanket restrictions on all Denmark-based discovery (divorced from consideration of any particular discovery request), the current Denmark Protocol improperly absolves Defendants of their burden to show that production of requested discovery is barred by Danish law.

10

Even further, the Denmark Protocol improperly shifts to Plaintiffs the burden to justify their requested discovery. As previously discussed, the Denmark Protocol restricts the scope of discovery in Denmark to that which is "narrowly tailored" to that which is "relevant and necessary" to the establishment of Plaintiff's claims. [Denmark Protocol, p. 4]. A similar argument that the plaintiffs should be required to demonstrate "need" for documents located in another country as a condition for their production was flatly rejected in *In Re: American Medical System Prods. Liab. Litig*. *See* Pretrial Order #24, ECF No. 326, 2:12-md-02325 (S.D.W.Va. 2012)(attached as Exhibit 1) ("AMS's assertion that the plaintiffs should show that they "need" documents in other countries is similarly odd. AMS is the party whose burden it is to produce or make available…documents which are responsive to discovery requests or otherwise discoverable."). The same conclusion is appropriate in the case at bar.

### 3. The Denmark Protocol erroneously extends Defendants unfettered discretion to unilaterally determine which discovery materials will and will not be produced.

The Denmark Protocol exhibits clear error by extending Defendants unprecedented freedom to unilaterally determine whether and how to comply with Plaintiffs' discovery requests. According to the Denmark Protocol, Defendants may (presumably at their own discretion) choose to respond to a discovery request that "*may* implicate Personal and/or Sensitive Data" in the following ways:

- By interpreting the discovery request narrowly,

- By substituting alternative, substantially similar documents or data from non-protected sources,

- By opting not to produce materials containing Personal Data or Sensitive Data, or

11

- By opting to redact Personal Data or Sensitive Data from materials being produced.

[Denmark Protocol, p. 4]. This level of unilateral discretion is unprecedented and likely to unfairly tilt the balance of discovery.

By allowing Defendants unfettered discretion to substitute "alternative" and "substantially similar" responsive documents (particularly where "substantially similar" has not been defined) for Denmark-based ESI, the Denmark Protocol grants Defendants a pass to avoid full disclosure of responsive information. This is not merely a theoretical argument. For example, the Danish defendant conducts its own investigations and follow-up on complaints associated with its filter products. [*See* Excerpts from the Deposition of April Lavender, 182:3-182:15 (Exhibit 20)] It also maintains its own files of those investigations. *Id.* Summaries of those investigations may be available in Defendants' Trackwise database which is accessible in the United States. Under the Denmark Protocol, Defendants might substitute the domestically-available Trackwise summaries for the actual contents of its investigatory files. Yet, the information is not the same. The Trackwise summaries are written from the company's perspective. Thus, under the Denmark Protocol's substitution provision, Plaintiffs would be beholden to a Cook employee's interpretation of the investigative materials rather than being able to access (and provide to Plaintiffs' experts) the actual documents and information created and collected as part of the investigation.

Similarly, by allowing Defendants' discretion to rewrite Plaintiff's discovery requests via a "narrow interpretation," or to simply "not produce" documents containing personal data, the Denmark Protocol makes it impossible for Plaintiffs to determine if they have received all information applicable to their claims. It would be a simple matter for

Defendants to shield adverse documents from discovery by "narrowly interpreting" the request to exclude the documents.  Likewise, a mere name on an incriminating email could theoretically justify a decision by Defendants not to produce the document because it contains Personal Data.  There are no checks and balances in the Denmark Protocol to ensure that withholdings are limited to those which further privacy without unduly prejudicing this litigation.

> **4. The Denmark Protocol erroneously imposes a phased approach to production that allows Defendant to control the timing and source of information.**

The Denmark Protocol orders production to occur in four phases:  (1) from design, manufacturing, regulatory and quality specification not likely to contain protected data; (2) from *selected* files of *selected* custodians and sources put forth by Defendants,  (3) from structured sources, and (4) from e-mails, user shares and department folders of the same selected custodians previously put forth by Defendants.  [Denmark Protocol, p. 6]. However, it is unclear whether Fourth Phase information will ever be provided.  That is because, after the first three phases are completed, the Denmark Protocol  requires Plaintiffs to identify further documents or data they believe is responsive and "provide a detailed explanation for why the additional categories of ESI are necessary to litigating their claims." [Denmark Protocol, p. 7].   The Denmark Protocol's phased approach not only suggests the near certainty of delay – but also allows Defendants power to categorically eliminate whole sources of potentially responsive information from production without even searching them.  Such an approach is error.

Aside from the inherent timing difficulties in a system that allows Defendants to condition the production of later-phase information upon completion of earlier phases of

production (without any set deadlines), the Denmark Protocol is problematic in the control it extends Defendants over the sources of information. For example, *Defendants* have unilaterally selected the eight custodians whose user shares will be (partially) searched for responsive information. [Denmark Protocol, p. 6]. There is no mechanism in the Denmark Protocol whereby Plaintiffs can add custodians from whom it seeks discovery – unless Defendants agree to the extension or an order is obtained from the Court. [Denmark Protocol, p. 6]. Similarly, the Denmark Protocol has abandoned the customary requirement of production of all relevant documents and, instead, allows Defendants to limit searches and production to the files and user shares Defendant unilaterally deems unlikely to contain protected data. [Denmark Protocol, p. 6]. Again, there is no mechanism whereby Plaintiffs can direct the sources from which they seek information. Plaintiffs only recourse for inadequate production under the Denmark Protocol is to "provide a detailed explanation" of why further discovery is necessary to their claims. [Denmark Protocol, p. 7]. Assigning Plaintiff the near-impossible task of describing "in detail" why documents they have not seen are necessary to their claims represents an erroneous shifting of burdens.

Simply stated, the Denmark Protocol's phased system of production imposes substantial and unjustified limitations on the scope of discovery, leaves Defendants with too much discretion in what they produce and when, and shifts the burdens associated with Danish privacy laws onto Plaintiffs. The inevitable result is that these limitations, individually and as a whole, will result in the non-production of substantial amounts of otherwise discoverable and responsive information.

5.   **The Denmark Protocol erroneously issued a blanket ruling on Denmark-based ESI divorced from any consideration of the actual ESI being requested.**

There is no need for a separate (and advisory) order on Denmark ESI at this juncture. Virtually every reported case dealing with foreign data privacy laws arises in connection with either a motion to compel or a motion for a protective order. *E.g. Devon Robotics v. DeViedma,* 2010 WL 3985877 (E.D.Pa. Oct. 8, 2010)(denying protective order sought on the basis of Italian data privacy law); *In re Activision Blizzard, Inc.,* 86 A.3d 531 (Chancery Ct. Del., Feb 11, 2014)(granting motion to compel over objection that the materials were protected by France's Data protection Act); *Enquip Technologies Group, Inc. v. Tycon Technoglass,* 2010 WL 53151 (Ct.App.Ohio, Jan. 8, 2010)(rejecting argument that foreign manufacturer was entitled to a protective order because of European Union's privacy directive); *Brightedge Technologies, Inc. v. Searchmetrics,* 2014 WL 2965062 (N.D.Cal. Aug. 12, 2014)(granting motion to compel production of materials previously withheld pursuant to European and/or German privacy laws).

There are several reasons why foreign data privacy law determinations are made in connection with outstanding discovery requests rather than as a prospective advisory ruling. First, prior to the issuance of actual discovery requests, it is impossible to determine if, and to what extent, foreign privacy laws are implicated by the presence of personal data. Second, until a discovery request is made, there is no way for the Court to determine how the requested data fits into a weighing of the respective interests.[5] Third, Defendants

---

[5] It is well settled that a foreign state's admitted interest in privacy, "must be balanced against the interests of the United States and the plaintiffs in obtaining the information." *Richmark Corp. v. Timber Falling Consultants,* 959 F.2d 1468, 1473 & n. 7 (9th Cir.), *cert. dismissed*, 506 U.S. 948, 113 S.Ct. 454, 121 L.Ed.2d 325 (1992). When undertaking to balance the interests of the United States and the party seeking the discovery against the foreign state's interest in secrecy, courts look to the multi-factor balancing test set forth in the Restatement (Third) of Foreign Relations Law section 442(1)(c). *Aerospatiale*, 482 U.S. at 543–44 fn 28. The relevant factors include:

15

subject to foreign data protection laws are well served by a court order mandating the discovery (*i.e.* by granting a motion to compel or denying a motion for protective order) so that the order shown to foreign data protection authorities as proof that the discovery produced was truly in compliance with a legal obligation and proportional to the needs of the case.

By adopting a foreign ESI protocol divorced from any actual discovery request(s), the Denmark Protocol short-circuited the customary procedure and erroneously entered an advisory order prospectively restricting discovery requests which have not even been made at this point in the litigation. The better approach is for this Court to set aside the Denmark Protocol allow *all* discovery to proceed forward under the provisions of the General ESI Protocol unless and until an issue arises which implicates the Data Processing Act.[6]

C. **It Is Possible To Accommodate Danish Privacy Concerns While Still Maintaining Fair Discovery Opportunities Consistent With Federal Rules and Law.**

---

(1) the importance to the ... litigation of the documents or other information requested;
(2) the degree of specificity of the request;
(3) whether the information originated in the United States;
(4) the availability of alternative means of securing the information; and
(5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.

*Id*. It is impossible for the magistrate judge (or this Court) to assess these factors without a pending discovery request. Thus, the Denmark Protcol is clearly erroneous in imposing discovery restriction without knowledge or consideration of the request and circumstances at issue.

[6] A party opposing discovery generally has the option of objecting to producing the discovery and awaiting a motion to compel or seeking a protective order. 8A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §2035 (3d ed. 2013). As such, an appropriate point for Defendants to raise the constraints of the Data Processing Act would be upon Plaintiffs' service of a request for discovery that implicated the Act.

Danish privacy concerns may be addressed without the substantial and unjustified limitations on discovery imposed by the Denmark Protocol. Relevant information and documents can be produced in U.S. litigation so long as there are adequate privacy protection safeguards in place. Thus, Plaintiffs suggest that the parties first attempt to address privacy consideration through means other than a rewriting of the discovery scope and burdens provided in the federal rules. Such protections could include one or more of the following steps:

1. **Redaction and redaction logs.**

Redaction and redaction logging is a standard method by which compliance with data privacy protection laws can be effected. Redaction is effective as a technique to "anonymize" most documents. Moreover, because documents must be reviewed in any case and redactions will be being made for privilege purposes in any case, the additional burden of simultaneously redacting for data privacy protection is relatively small.

2. **Confidentiality stipulations and/or protective orders.**

Plaintiffs are amenable to a confidentiality stipulation and/or protective order which would require "Personal Data" as defined under the Data Processing Act to be protected as confidential information. A confidentiality provision of this sort was used to address foreign privacy consideration in Actos litigation:

> **Discovery Material and Foreign Law.** Any entity organized under the laws of a country other than the United States. . . that produces information in this litigation may designate as confidential those documents in any form (including electronic or paper form) containing "Protected Data" within the meaning of the applicable data protection or privacy laws, if any.[1]

17

*In re Actos (Pioglitazone-Products Liab. Litig.),* No. 6-11-MD-2299, 2012 WL 3899669, at *2 (W.D. La. July 30, 2012). Use of a confidentiality provision would reflect respect and consideration for privacy while still allowing Plaintiffs the opportunity to review responsive documents.

### 3. Seeking consent to disclosure and processing from key custodians and sources.

Consent for the data subject is one of the permissible grounds for "processing" of personal data under the Data Processing Act. Consent can be an effective way of easing disclosure and discovery burdens in litigation. A written consent form that explains the litigation, sets forth the foreseeable uses and recipients of the documents and describes the confidentiality protection that will be available can be presented to key document custodians and sources. The data subject is then asked to grant or withhold consent to the processing and production. A record of consents can then be kept to reflect Defendants' compliance with the Data Processing Act.

IV.

## CONCLUSION AND PRAYER

For the foregoing reasons, Plaintiffs respectfully request that this Court set aside the Denmark Protocol and instruct the parties that (1) *all* discovery – regardless of where located -- shall be conducted pursuant to the agreed provisions of the General ESI Protocol, and (2) privacy considerations related to Denmark-based ESI must be raised in relation to a specific discovery request. Alternatively, if the Denmark Protocol is not set aside in its entirety, Plaintiffs pray that it be modified to reflect the proper scope and burdens for discovery set forth under the law and described herein.

Respectfully Submitted,

/s/Joseph N. Williams
Joseph N. Williams
Hammond Block Building
301 Massachusetts Avenue
Indianapolis, Indiana 46204
Telephone (317) 633-8787
Facsimile: (317) 633-8797

/s/Ben C. Martin
Ben C. Martin
State Bar No.: 13052400
The Law Offices of Ben C. Martin
3219 McKinney Avenue, Suite 100
Dallas, Texas 75204
Telephone: (214) 761-6614
Facsimile: (214) 744-7590
bmartin@bencmartin.com

Michael W. Heaviside
Heaviside Reed Zaic, A Law Corporation
910 17th Street, N.W. Suite 800
Washington, DC 20006
Telephone: (202) 223-1993
Facsimile: (202) 318-8006

David Matthews
MATTHEWS & ASSOCIATES
2905 Sackett Street
Houston, Texas 77098
(713) 581-8467 (phone)
(713) 535-7184 (fax)

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2015, I electronically efiled the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

/s/ Ben C. Martin
Ben C. Martin