IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC. IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS   LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |
| This Document Relates to All Actions | |

**COOK DEFENDANTS' MEMORANDUM IN RESPONSE TO PLAINTIFFS' OBJECTIONS TO MAGISTRATE'S ORDER ON ELECTRONICALLY STORED INFORMATION AND DOCUMENT PRODUCTION PROTOCOL – DENMARK ESI**

Cook Defendants respectfully submit this Memorandum in Response to Plaintiffs' Objections to Magistrate's Order on Electronically Stored Information and Document Production Protocol – Denmark ESI and, for the reasons set forth below, respectfully request that the Court affirm Magistrate Judge Baker's Order on Proposed ESI Order and Denmark ESI (the "Order") [Docket No. 522].

### I.     INTRODUCTION

As an initial matter, it is important to accurately frame the issue that is presently before the Court. Contrary to Plaintiffs' continued, unsupported accusations, Cook Defendants are not seeking to evade their discovery obligations under the Federal Rules of Civil Procedure or withhold discoverable ESI simply because it is located in Denmark. Rather, Cook Defendants simply sought a discovery protocol that allows Cook Defendants to fully comply with their discovery obligations, while also minimizing conflicts with Danish and European privacy laws to the extent possible, avoiding or lessening unnecessary burdens on Cook Defendants, and reducing discovery disputes. To that end, Cook Defendants made multiple attempts over a period of months to engage Plaintiffs in negotiations, so that the parties could come to an

1

agreement regarding the framework and language for such a protocol.  Unfortunately, Plaintiffs refused to engage in any meaningful discussions regarding Cook Defendants' proposed protocol or propose their own protocol.  As a result Cook Defendants moved Magistrate Judge Baker to enter their proposed protocol for Denmark ESI ("Denmark Protocol") [Docket No. 358-1].  After briefing by the Parties, Magistrate Judge Baker found that the Denmark Protocol imposes reasonable discovery limitations that comply with the Federal Rules and applicable Danish and European law and adopted it without modification.  *Order* at 3.

By granting Cook Defendants' motion and adopting the Denmark Protocol, Magistrate Judge Baker did not establish that Cook Defendants are to be held to a different discovery standard or burden than Plaintiffs.  Federal Rule of Civil Procedure 26 expressly authorizes the Court to put in place reasonable parameters, guidelines and/or limitations on the nature and extent of discovery, which is exactly what the Denmark Protocol does.  Thus, the real issue before the Court is whether the guidelines and limitations set forth in the Denmark Protocol adopted and entered by Magistrate Judge Baker are clearly erroneous or contrary to law.  *See* FED. R. CIV. P. 72(a).  As detailed below, they are neither.

## II.     RELEVANT BACKGROUND

### A.     Applicable Danish and European Privacy Laws

A substantial portion of Cook Defendants' ESI is held by defendant William Cook Europe ("WCE") in Denmark.  The impetus for the Denmark Protocol is that Denmark, as a member of the European Union ("EU"), implemented the EU's Directive 95/46 EC ("Directive") which dictates limitations for the processing, transfer, and disclosure of personal data.  Denmark's law, titled the Act on Processing of Personal Data ("Denmark's Act"), sets forth strict data privacy rules and provides for civil and criminal penalties for failure to comply.  An English

version of Denmark's Act may be accessed at http://www.datatilsynet.dk/english/ (last visited August 5, 2015).

Denmark's Act applies broadly to the processing of personal data,[1] which is defined as "any information relating to an identified or identifiable natural person" (hereinafter "Personal Data").[2] "Processing" is also broadly defined as "any operation or set of operations which is performed upon personal data, whether or not by automatic means."[3] Searching data sources in Denmark using the search terms set forth in the general ESI order qualifies as "processing data" under Denmark's Act. Personal Data may be processed only if it meets one of the delineated justifications, which includes "compliance with a legal obligation to which the [data] controller is subject."[4]

Three categories of more sensitive Personal Data are identified in Denmark's Act for which processing and/or disclosure is more highly restricted (hereafter collectively, "Sensitive Data"):

- Data revealing racial or ethnic origin, political opinions, religious or philosophical beliefs, trade union membership, or data concerning health or sex life is not to be *processed*[5], with certain exceptions.[6]

- Data regarding "criminal offences, serious social problems and other purely private matters" can be *processed* if an exception for the previous category is

---

[1] Title I, Ch. 1, Sec. 1.(1), (2).
[2] Title I, Ch. 2, Sec. 3.(1)1.
[3] Title I, Ch. 2, Sec. 3.(1)2.
[4] Title II, Ch. 4, Sec. 6.(1)(3).
[5] Title II, Ch. 4, Sec. 7.(1).
[6] An exception is provided if processing is *necessary* for the establishment, exercise or defense of legal claims. Title II, Ch. 4, Sec. 7.(2)4.

met,[7] but *disclosure* of this category is prohibited unless one of a further list of limited exceptions is also met.[8]

- Processing data revealing "identification numbers" is prohibited unless one of the following limited exceptions applies:[9] it is permitted by law or regulation, explicit consent is obtained, or it is carried out for solely scientific or statistical purposes.[10]

These three categories present the greatest risk of liability to WCE, as just *processing* the data, let alone actually producing it, can expose WCE to civil and criminal penalties if there was no legal justification under Denmark 's Act for doing so.

Transfer of Personal Data (particularly Sensitive Data) out of Denmark to a non-EU nation may take place only if the other country ensures an adequate level of protection.[11] If the other country, such as the United States, does not meet the EU standard for "adequate levels of protection," transfer of data is only permitted if one of the specific justifications in Denmark's Act applies.[12] One such justification is being *necessary* or *legally required* for the establishment, exercise, or defense of legal claims.[13]

    **B.**    **Substantial Burdens for Cook Defendants Created by the Applicable Danish and European Privacy Laws**

Compliance with Denmark's Act creates substantial burdens for Cook Defendants when it comes to conducting discovery in this litigation. In order to avoid exposing WCE to civil and criminal penalties, while also fulfilling their discovery obligations under the Federal Rules of

---

[7] Title II, Ch. 4, Sec. 8.(1), (6).
[8] Title II, Ch. 4, Sec. 8.(2).
[9] Title II, Ch. 4, Sec. 11.(1).
[10] Title II, Ch. 4, Sec. 11.(2).
[11] Title II, Ch. 7, Sec. 27.(1). While the U.S. does not qualify under this standard, the U.S. Commerce Department's Safe Harbor program allows entities in the U.S. to qualify as providing "adequate protection."
[12] Title II, Ch. 7, Sec. 27.(3).
[13] Title II, Ch. 7, Sec. 27.(3)4 (emphasis added).

Civil Procedure, Cook Defendants must comply with Denmark's Act when collecting, processing, reviewing, and producing ESI located in Denmark. Since it is nearly impossible for Cook Defendants to know whether potentially responsive ESI contains Sensitive Data until it is actually reviewed, counsel for Cook Defendants must travel to Denmark to collect, process. and review WCE ESI prior to production. For example, much of the ESI located in Denmark consists of emails between WCE employees and it is not unusual for work colleagues to mention personal information in an otherwise work-related email (e.g. a reference to an employee or relative having a health condition that is sensitive personal information). In such a scenario, Cook Defendants would need to review the email containing Sensitive Data in Denmark and redact the Sensitive Data prior to transferring it to the United States to be produced to Plaintiffs, in order to comply with Denmark's Act.

### C. The Denmark Protocol

The Denmark Protocol, as recognized and adopted by Magistrate Judge Baker, seeks to avoid exposing Cook Defendants to liability for failure to comply with Denmark's Act, as well as avoid or limit unnecessary, unfair, and unreasonable burdens on Cook Defendants associated with collecting, processing, and reviewing Denmark ESI. Some of the key ways in which the Denmark Protocol meets these goals is by:

- Excluding from searching file folders/file paths identified by the Danish ESI custodians as containing only *irrelevant* Sensitive Data. For example, a file folder containing information regarding patients/subjects in a study for a non-related medical device or a file folder housing the custodian's employment documents. Excluding such file folders/file paths will lessen the likelihood that Cook Defendants will run afoul of Denmark's Act and will also reduce Cook

5

Defendants' burden by not requiring them to spend time and resources in Denmark collecting, processing, and reviewing irrelevant ESI.

- Minimizing broad, indiscriminate ESI searching beyond the relevant data sources identified in the Denmark Protocol.  A focused approach to ESI searching will still capture the responsive data, while reducing the risk that irrelevant Personal and Sensitive Data will be inadvertently processed without legal justification. This will also reduce Cook Defendants' burden by not requiring them to spend time and resources in Denmark collecting, processing, and reviewing ESI that is highly unlikely to contain responsive data.

- Calling for a phased approach to discovery whereby Danish ESI that is responsive to Plaintiffs' discovery requests is produced in a sequence determined by the extent to which Cook Defendants must screen it for Sensitive Data.  Thus, categories of documents that should not contain Personal or Sensitive Data (e.g. Manufacturing Specifications) and, therefore, can be processed and reviewed in the United States, will be produced before documents that must be processed and reviewed in Denmark.  This approach will allow this litigation to proceed in a timely manner, while also recognizing that some Denmark ESI will be more burdensome and time-consuming to process, review, and produce.

- Allowing Cook Defendants to substitute in the place of Denmark ESI alternative, substantially similar ESI available in the United States.  For example, the exact same document may be housed by Cook Defendants in a database in the United States and in a separate database in Denmark.  Thus, the ESI is "substantially similar" in that the document is identical, but the metadata reflects the fact that

the ESI is housed in different databases. This comports with Federal Rule of Civil Procedure 26(b)(2)(C)'s guidance that discovery should be made from the source that is most convenient, least burdensome, and least expensive.

All of the reasonable discovery guidelines and restrictions contained in the Denmark Protocol are based upon the Sedona Conference's International Principles on Discovery, Disclosure & Data Protections: Best Practices, Recommendations & Principles for Addressing the Preservation Discovery of Protected Data in U.S. Litigation (2011), a copy of which is attached hereto as **Exhibit A**, for the Court's convenience. The Sedona Conference is an esteemed group of judges and lawyers who have based their recommendations for handling foreign ESI on American jurisprudence. As demonstrated below, the Denmark Protocol likewise comports with the Federal Rules of Civil Procedure and applicable case law.

### III. LEGAL STANDARD

As Magistrate Judge Baker's Order approving and entering the Denmark Protocol is non-dispositive in nature, it should be modified or set aside only if the Court finds that it is "clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a). "The clear error standard is highly differential [sic], permitting reversal only when the district court 'is left with the definite and firm conviction that a mistake has been made.'" *Nat'l Union Fire Ins. Co. v. Mead Johnson & Co.*, No. 3:11-cv-000015-RLY-WGH, 2014 U.S. Dist. LEXIS 30432, at *7 (S.D. Ind. Mar. 10, 2014) (citing *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997)). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.,* No. 1:13-cv-01316-JMS-TAB, 2015 U.S. Dist. LEXIS 94537, at *2-3 (S.D. Ind. July 21, 2015) (citing *Pain Ctr. of SE Ind., LLC v. Origin Healthcare Solutions, LLC*, No. 1:13-cv-00133-RLY-DKL, 2014 U.S. Dist. LEXIS 164550, at *6 (S.D. Ind. Nov. 25, 2014)).

## IV. ARGUMENT

### A. The Denmark Protocol Does Not Permit Cook Defendants to Withhold Discoverable Documents Simply Because They Are Located in Denmark.

To be clear, Cook Defendants are not attempting to use foreign privacy law as a shield to allow them to refuse to produce responsive ESI[14] simply because it is located in Denmark, nor does the Denmark Protocol allow them to do so.  Cook Defendants agree with Plaintiffs that this Court has the authority to order discovery of ESI held in Denmark, regardless of the restrictions imposed by Danish and Europeans privacy laws.  However, Plaintiffs ignore that the case law establishing such authority also provides that "[w]hen it is necessary to seek evidence abroad . . . the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses." *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.*, 482 U.S. 522, 546 (U.S. 1987).  Moreover, American courts "have long recognized the demands of comity in suits involving foreign states, either as parties or as sovereigns with a coordinate interest in the litigation." *Id.* (citing *Hilton v. Guyot*, 159 U.S. 113 (1895)).  The Denmark Protocol follows this clear guidance from the United States Supreme Court by creating a process that the Parties can follow that is both consistent with the requirements of the Federal Rules of Civil Procedure and recognizes and addresses certain challenges created by applicable Danish and European legal authorities.

It is the *process* for handling Denmark ESI that is truly at issue here.  Cook Defendants have already stated in the Denmark Protocol that responsive Personal Data relating to WCE employees who possess personal knowledge regarding the facts at issue in this litigation will be produced.  Denmark Protocol at 4.  Cook Defendants also believe that any other Personal Data or

---

[14] Cook Defendants do not believe that any of the Sensitive Data that might be found in the Denmark ESI will have any relevance to the issues in this litigation.  To the extent that Sensitive Data is contained in a relevant document, that information will be redacted and the document produced.

Sensitive Data in the Denmark ESI will not itself be responsive and/or relevant and can merely be redacted to the extent it is contained within a document that is responsive and/or relevant. In other words, Cook Defendants will not be withholding any responsive and/or relevant documents on the basis that they fall under the protection of Denmark's Act. Nor does the Denmark Protocol create a framework for Cook Defendants to do so. What the Denmark Protocol does do is create a process by which Cook Defendants can timely collect, process, review, and produce responsive and/or relevant Denmark ESI without violating Denmark's Act and minimize undue burden upon Cook Defendants.

### B. The Reasonable Discovery Guidelines and Restrictions Contained in the Denmark Protocol Are Supported By Law.

Plaintiffs' objections to the Order boil down to one complaint – that the Denmark Protocol is not the liberal and broad approach to discovery encompassed by the Federal Rules of Civil Procedure. Plaintiffs fail to recognize, however, that "[i]t is well-settled that district courts enjoy broad discretion in controlling discovery." *McCarthy v. Option One Mortg. Corp.*, 362 F.3d 1008, 1012 (7th Cir. 2004). While the discovery rules are *generally* interpreted liberally and broadly, Rule 26(b) specifically authorizes the Court to limit the scope of discovery. FED. R. CIV. P. 26(b)(2)(C)(i)-(iii). "In fact, Rule 26(b)(2)(C) *requires* the court to limit discovery if the court determines that the burden or expense of the discovery outweighs its likely benefit." *Madison v. City of Evansville*, No. 3:14-cv-00072-TWP-WGH, 2015 U.S. Dist. LEXIS 53296, at *2-3 (S.D. Ind. Apr. 23, 2015) (emphasis added). Accordingly, the Denmark Protocol cannot be "contrary to law" simply because it places restrictions on the broad discovery generally contemplated under the Federal Rules of Civil Procedure. Placing guidelines on discovery where necessary, as here, is fully within the authority of the Court and is indeed mandated by Rule 26(b). Moreover, Plaintiffs cannot credibly argue that the guidelines and restrictions contained

9

in the Denmark Protocol are "clearly erroneous or contrary to law" when they are endorsed by the Sedona Conference.

### 1. It Is Appropriate to Limit the Overall Scope of Denmark ESI to that which is Relevant and Necessary.

The limitations delineated by the Denmark Protocol that refer to "relevant and necessary" data are not being used, and will not be used, by Cook Defendants to determine whether any given piece of ESI is responsive to a discovery request or whether it qualifies as "relevant" to this litigation. That is, Cook Defendants will not judge whether or not to produce a document based on a "relevant and necessary" standard.

Rather, the Denmark Protocol's limitations related to "necessary" data are intended to assist Cook Defendants in complying with Danish data privacy rules by limiting, to some extent, the overall scope of ESI to be processed, searched, and reviewed to data that contains potentially responsive data.[15] As explained above, processing (by searching and/or reviewing) ESI known by WCE employees to be irrelevant would be processing ESI that is not "necessary" to any legal claim or defense in this litigation, and thus would be without legal justification. For example, a file kept by a WCE employee that contains Sensitive Personal Data unrelated to IVC filters would not be searched.

The Denmark Protocol's guidance as to "necessary" data is aimed at limiting burdensome "fishing expeditions" into ESI in a foreign country and such restrictions are wholly reasonable under Federal Rule 26(b). Therefore, Plaintiffs objection to this portion of the Denmark Protocol is without merit.

---

[15] The idea to limit the scope of discovery to "necessary" data is directly from Principle 3 of The Sedona Conference's *International Principles on Discovery*. Exhibit A at 12.

### 2. The Denmark Protocol Does Not Impose Blanket Restrictions on Discovery or Allow Cook Defendants to Unilaterally Withhold Responsive Documents.

When read as a whole, the Denmark Protocol does not impose blanket restriction on discovery or allow Cook Defendants to withhold responsive documents. Instead, the Protocol's provisions work together to place reasonable limitations such that Cook Defendants need not conduct broad, indiscriminant processing and review of ESI determined to be irrelevant. In contrast to Plaintiffs' arguments, in the Denmark Protocol, the Cook Defendants commit to producing responsive documents, even if they contain Sensitive Data, after the appropriate redactions are completed.

Rather than blocking discovery, the Denmark Protocol sets forth a framework to assist Cook Defendants' efforts to produce responsive ESI, with redactions as needed. In particular, under Phase 4 of the Denmark Protocol, Cook Defendants commit to applying a process to cull protected data from all the data sources mentioned in the prior phases, and that **"[r]esponsive ESI will be produced** with protected handled in a manner consistent with Denmark's Act and the Federal Rules of Civil Procedure." Denmark Protocol at 6-7 (emphasis added).

Similarly, some of the other provisions to which Plaintiffs object are intended to work in concert with the phased discovery, not to allow withholding of responsive documents, but to instead limit unnecessary burdens upon Cook Defendants during the process. For example, the Denmark Protocol allows Cook Defendants to interpret discovery requests narrowly to the extent needed to avoid protected data.[16] This provision will allow Cook Defendants to avoid processing irrelevant private data that could potentially be caught in Plaintiffs' extremely broad written

---

[16] Under Principle 3 of the Sedona Conference's *International Principles on Discovery*, one means to reasonably limit the scope of discovery is to limit the scope of the request to necessary data. Exhibit A at 13-14.

11

discovery set. Plaintiffs' Master Interrogatory No. 8,[17] for instance, seeks a very broad range of ESI that could implicate data regarding products and persons unrelated to IVC filters. The ability to interpret the request to cull out files or folders known by WCE to be irrelevant and containing potentially protected data will lessen unnecessary burdens upon Cook Defendants.

Cook Defendants have affirmatively committed to producing responsive ESI. As the Magistrate Judge has the authority to authorize reasonable limitations upon discovery where the burden clearly outweighs any perceived benefit, Plaintiffs' objection on this point is without merit.

### 3. Plaintiffs Misconstrue Both the Intent and Effect of Phased Discovery.

Plaintiffs' Objections misconstrue both the intent and effect of the Denmark Protocol's phased discovery. Plaintiffs assert it will cause both undue delay and the withholding of responsive data. To the contrary, the phases are designed to increase efficiency and to expedite discovery and the production of responsive ESI.[18] As addressed above, the limitations put in place by the Denmark Protocol are limited to preventing the processing and review of data known to be irrelevant, not of sources of responsive data. The phases provide a roadmap for Cook Defendants to meet their obligations under the Federal Rules of Civil Procedure, while complying with Denmark's Act to the extent possible. This is accomplished by essentially winnowing down the universe of ESI that may have a privacy concern, and then applying a

---

[17] Plaintiffs' Master Set Of Requests For Production Of Documents, No. 8, reads: For any entity, including corporations, subdivisions of corporation, limited liability companies, or third party contractors, that were involved in the design, setting of specifications, manufacture, labeling, marketing or distribution of the COOK IVC FILTERS, produce all DOCUMENTS and ESI referring to or embodying the structure of said entities Quality Control Units, which were in place from January 2000 through February 2012, including a description of all departments, division, officers, employees and/or other entities or persons.

[18] Cook Defendants' proposed phased discovery is based directly upon Principle 3 of the Sedona Conference's *International Principles on Discovery*. Exhibit A at 14-15.

process (in Phase 4) to the searching, review, and production of those documents to ensure that irrelevant, protected data is located and redacted.

Plaintiffs misinterpret the Protocol to read that Phase 4 may not ever occur with the result being the withholding of responsive ESI. To clarify, the important culling work of Phase 4 is part of Cook Defendants' fulfilling their discovery obligations and will be completed to the extent necessary to do so. The Denmark Protocol specifically anticipates and delineates a meet and confer process with Plaintiffs to address any concerns Plaintiffs have as to the data produced.

Plaintiffs cannot seriously question the Court's authority to order phased discovery, and hence Plaintiffs' objection is based upon their belief that the phases are unnecessary and the mistaken position that it allows the withholding of responsive ESI. Cook Defendants have affirmatively committed to producing responsive ESI, and because the Magistrate has the authority to authorize phased discovery, Plaintiffs' objection on this point is without merit.

**4.     The Denmark Protocol Serves to Minimize Discovery Disputes Requiring Court Intervention.**

Plaintiffs argue that the Denmark Protocol is improper or premature because there is no discovery dispute before the Court. Plaintiffs' Objection at 15. The Denmark Protocol is intended, in part, to reduce discovery disputes that must be brought before the Court. It is to the benefit of all involved to have the type of reasonable, detailed discovery plan outlined in the Denmark Protocol. Given the added burden entailed with conducting ESI discovery on two continents with differing laws, disallowing a discovery plan for Denmark ESI will cause unnecessary burden upon Cook Defendants.

C. **The Measures Proposed by Plaintiffs Are Not Adequate to Address Privacy Concerns and Avoid Unnecessary, Unfair, and Unreasonable Burdens on Cook Defendants Associated with Collecting and Reviewing Denmark ESI.**

Plaintiffs fail to propose any modifications to the Denmark Protocol that would make the production of Danish documents, which may contain Personal Data. more effective or efficient. Moreover, the stand-alone measures they do propose are not adequate to address privacy concerns and avoid unnecessary, unfair, and unreasonable burdens on Cook Defendants associated with collecting and reviewing Denmark ESI.  While a Protective Order requiring Personal Data to be protected as confidential information shows some deference to foreign law, it is not sufficient to shield WCE from liability for failing to comply with Danish and European privacy laws.  There is also no guaranty that key custodians and third parties with whom they correspond would consent to the **unnecessary** disclosure of their Sensitive Personal Data, and it would be inappropriate for WCE to ask their current employees, who may feel obligated to comply with their employer's request, to do so.  The Cook Defendants must identify and redact that information before bringing it to the United States.  And while Cook Defendants agree that redactions can and should be used when necessary, this measure does nothing to address the burden of Cook Defendants having to collect, process, and review documents in Denmark that are unlikely to contain relevant and responsive information, but are likely to contain protected data.

V.      **CONCLUSION**

For the reasons set forth above, Cook Defendants respectfully request that the Court affirm the Order adopting the Denmark Protocol.

Submitted this 10th day of August, 2015.

Respectfully submitted,

*/s/ James M. Boyers*
Douglas B. King, Esq., Lead Counsel
James M. Boyers, Esq.
Christopher D. Lee, Esq.
John C. Babione, Esq.
Sandra L. Davis, Esq.
Kip S. M. McDonald, Esq.
WOODEN MCLAUGHLIN LLP
One Indiana Square, Suite 1800
Indianapolis, IN 46204-4208
Tel:    (317) 639-6151
Fax:    (317) 639-6444
doug.king@woodenmclaughlin.com
jim.boyers@woodenmclaughlin.com
chris.lee@woodenmclaughlin.com
john.babione@woodenmclaughlin.com
sandy.jansen@woodenmclaughlin.com
kip.mcdonald@woodenmclaughlin.com

Counsel for Cook Defendants

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2015, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. All non-registered counsel of record will be served by Plaintiffs' Steering Committee.

*/s/ James M. Boyers*
James M. Boyers, Esq.

1282893-1 (10909-0412)