UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION MDL 2570, _____ This Document Relates to All Actions _____ | ) ) ) ) ) ) ) ) ) )   1:14-ml-02570-RLY-TAB |

**ENTRY ON PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S ORDER ON ELECTRONICALLY STORED INFORMATION AND DOCUMENT PRODUCTION PROTOCOL – DENMARK ESI**

On July 10, 2015, the Magistrate Judge issued an Order on Electronically Stored Information and Document Production Protocol – Denmark ESI ("Denmark Protocol"). The Order addressed three issues, only one of which is the subject of the present Objection – the Magistrate Judge's adoption of the Cook Defendants' proposed Denmark Protocol. For the reasons set forth below, the Objection is **SUSTAINED in part**, and **OVERRULED in part**.

**I.   Background**

One of the named defendants in this MDL is William Cook Europe APS ("WCE"), located in Bjaeverskov, Denmark. Denmark, as a member of the European Union ("EU"), implemented the EU's Directive 95/46 EC ("Directive"), which dictates limitations for the processing, transfer, and disclosure of personal data. Denmark's law, titled the Act on Processing of Personal Data, sets forth strict privacy rules and provides for civil and criminal penalties for failure to comply.

1

The Act applies broadly to the processing of "personal data," which is defined as "any information relating to an identified or identifiable natural person." Title I, Ch. 2, Sec. 3(1)1. "Processing" is defined as "any operation or set of operations which is performed upon personal data, whether or not by automatic means." Title I, Ch. 2, Sec. 3(1)2. Searching data sources in Denmark using the search terms set forth in the General ESI Order[1] qualifies as "processing data" under the Act. Personal data may be processed only if it meets one of the delineated justifications, which includes "compliance with a legal obligation to which the [data] controller is subject." Title II, Ch. 4, Sec. 6(1)3. A subcategory of personal data is "sensitive data," which includes information regarding one's racial or ethnic origin, political opinions, religious or philosophical beliefs, trade union membership, or data concerning health or sex life. Title II, Ch. 4, Sec. 7(1). No processing of sensitive data may take place unless it is necessary for the establishment, exercise or defense of legal claims. Title II, Ch. 4, Sec. 7(2)4.

A substantial portion of the Cook Defendants' electronically stored information ("ESI") is held by WCE; therefore, Denmark's privacy law presents unique discovery concerns to the Cook Defendants. On one hand, they must comply with Denmark's privacy law or risk exposure to civil and criminal penalties; on the other hand, they must fulfill their discovery obligations under the Federal Rules of Civil Procedure.

---

[1] On the same day the Denmark Protocol was issued, the Magistrate Judge issued an Order on Electronically Stored Information and Document Production Protocol ("General ESI Protocol"), which governs ESI discovery for domestic parties. (Filing No. 521).

2

**II.     The Denmark Protocol**

The Denmark Protocol provides certain guidelines for the production of ESI from WCE.  (*See* Filing 293-1).  First, it provides that ESI productions will begin with responsive data and/or documents from United States sources.  Next, it provides that discovery from Denmark will be conducted in a phased approach whereby Danish ESI that is responsive to Plaintiffs' discovery requests is produced in a sequence determined by the extent to which the Cook Defendants must screen it for sensitive data.  For example, Phase 1 calls for the production of documents that are unlikely to contain personal or sensitive information such as quality system documents, manufacturing specifications, and design documents.  Phase 2 calls for the production of documents from "targeted custodians," described as a "select group" who are likely to have highly relevant and responsive data.  Phase 3 calls for the production of responsive structured data, subject to redaction to remove protected data.  Phase 4 provides for the filtering of the targeted custodians' email, user shares, and department folders to cull out protected data from otherwise responsive ESI.  In responding to discovery that may call for data subject to Denmark's privacy laws, the Protocol allows the Cook Defendants to substitute in the place of Denmark ESI alternative, substantially similar ESI available in the United States.

In addition, the guidelines provide:

3.  Discovery that calls for data, information, or documents held in Denmark must be narrowly tailored to that which is relevant and necessary to Plaintiff's claims.

      4.      To the extent necessary, the Cook Defendants may interpret narrowly any discovery requests from Plaintiffs to the extent such requests may implicate personal and/or sensitive data.

      6.      Personal data relating to relevant WCE employees who possess personal knowledge regarding the facts at issue in this litigation will be produced, to the extent it is called for by a discovery request. Other personal data [that] is not relevant to this litigation nor reasonably calculated to lead to the discovery of admissible evidence and [sic] will not be produced and/or will be redacted.

      7.      Sensitive data is not relevant to this litigation and will not be produced and/or will be redacted.

### III. The Order

In the Order adopting the Denmark Protocol, the Magistrate Judge recognized the need for a separate ESI protocol for ESI located in Denmark, which "sets forth reasonable limitations that comply with the Federal Rules and Danish and European law . . . ." (Filing No. 522 at 3). These reasonable limitations are warranted, he reasoned, due to the legal requirements imposed on the Cook Defendants by Danish and EU privacy laws and the need to avoid exposing them to liability for failure to comply. The Denmark Protocol should, therefore, "avoid unnecessary, avoidable, unfair, and unreasonable burdens for Denmark ESI." (*Id.*). In so ruling, the Magistrate Judge rejected the Plaintiffs' argument that the Denmark Protocol would prevent them from obtaining relevant ESI "simply because it is in Denmark." (*Id.*).

### IV. Discussion

Plaintiffs submit that the Denmark Protocol fails to hold the Cook Defendants to the same discovery standards that are imposed upon Plaintiffs by the General ESI Protocol and/or to the standards applicable under the Federal Rules of Civil Procedure.

To level the playing field, they ask the court to set aside the Denmark Protocol and allow all discovery to proceed forward under the provisions of the General ESI Protocol unless and until Plaintiffs' discovery request implicates the Data Privacy Act. At that time, the Cook Defendants could resist discovery, and the issue could be decided by the court on a motion to compel or a motion for protective order. Plaintiffs cite case law supportive of their position. *E.g. In re Activision Blizzard, Inc.*, 86 A.3d 531 (Del. Ch. 2014) (granting motion to compel over objection that the materials were protected by France's Data Protection Act); *BrightEdge Techs., Inc. v. Searchmetrics*, *GmbH*, No. 14-cv-1009-WHO (MEJ), 2014 WL 3965062 (N.D. Cal. Aug. 13, 2014) (granting motion to compel production of materials previously withheld pursuant to European and German privacy laws); *Devon Robotics v. DeViedma*, No. 09-cv-3552, 2010 WL 3985877 (E.D. Pa. Oct. 8, 2010) (denying protective order sought on the basis of Italian data privacy law); *Enquip Techs. Grp., Inc. v. Tycon Technoglass*, Nos. 2009 CA 42, 2009 CA 47, 2010 WL 53151 (Ohio Ct. App. Jan. 8, 2010) (rejecting argument that foreign manufacturer was entitled to a protective order because of European Union's privacy directive).

      The Cook Defendants respond that conducting ESI discovery in Denmark creates "substantial burdens" for them. They submit that most of the ESI in Denmark consists of emails between WCE employees, and that if discovery were to proceed pursuant to the General ESI Order, they would need to send counsel to Denmark to read each email and redact any sensitive information that may be included within it. The Cook Defendants submit that a protective order issued by the court would not immunize them from liability under the Act. And while they agree that redactions can and should be used when

5

necessary, they argue that approach does not alleviate the burden on them to collect, process, and review documents that are unlikely to contain any relevant and responsive information.

A district court enjoys discretion in matters relating to discovery. *McCarthy v. Option One Mortg. Corp.*, 362 F.3d 1008, 1110 (7th Cir. 2004). While the discovery rules are generally interpreted broadly, Rule 26 is not without limits. A court can limit discovery if it determines, among other things, that "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C). It is this Rule of Civil Procedure that the Cook Defendants rely upon, and that the Magistrate Judge implicitly relied upon as well.

The court recognizes and appreciates the concerns of the Plaintiffs; the guidelines set forth in Section II of the Denmark Protocol – particularly paragraphs 3, 4, and 6 – appear to be in the Cook Defendants' favor. In their Response, the Cook Defendants assure the court that they: (1) "will not judge whether or not to produce a document based on a 'relevant and necessary standard'"; (2) "will not be withholding any responsive and/or relevant documents on the basis that they fall under the protection of Denmark's Act"; and (3) will produce responsive documents, even if they contain sensitive or personal information, after the appropriate redactions are completed. The court takes the Cook Defendants at their word. The Denmark Protocol is therefore modified to reflect their representations. Section II, guideline 3 shall read:

> 3. Discovery that calls for data, information or documents held in Denmark shall be produced so long as it is relevant to Plaintiffs' claims.

Guideline 4 shall read:

    4.      Requests that implicate personal and/or sensitive data shall only be produced if relevant to Plaintiffs' claims. Redactions shall be made to personal and/or sensitive information that is irrelevant to Plaintiffs' claims.

Guideline 6 shall read:

    6.      Responsive personal data relating to WCE employees who possess personal knowledge regarding the facts at issue in this litigation shall be produced, to the extent it is called for by a discovery request.

Paragraph 7 regarding sensitive information is deleted, as it is covered by paragraph 4.

### V.   Conclusion

Paragraphs 3, 4, 6, and 7 of the Denmark Protocol adopted by the Magistrate Judge are hereby modified to reflect the changes set forth in Section IV of this Entry. Accordingly, the Plaintiffs' Objection to the Magistrate Judge's Order on Denmark ESI (Filing No. 577) is **SUSTAINED in part** and **OVERRULED in part**.

**SO ORDERED** this 14th day of September 2015.

                                                RICHARD L. YOUNG, CHIEF JUDGE
                                                United States District Court
                                                Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.