IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE COOK MEDICAL, INC. IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION | Case No: 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |
| This Document Relates to All Actions | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR ENTRY OF ORDER AUTHORIZING *EX PARTE* CONTACT BETWEEN DEFENDANTS AND PLAINTIFFS' TREATING PHYSICIANS**

# Introduction

Plaintiffs respectfully request this Court deny Defendants' Motion for Entry of Order Authorizing *Ex Parte* Contact Between Defendants and Plaintiffs' Treating Physicians. Without demonstrating good cause, Defendants request nothing less than a blanket authorization to engage in *ex parte* communication with hundreds of Plaintiffs' treating physicians. Defendants' request to infringe on the confidentiality and protection afforded the care and treatment of Plaintiffs by their physicians should not be granted for four reasons:

1. The Plaintiffs in this case have not waived their physician-patient privilege with respect to conditions *unrelated* to this litigation; without a prior determination as to the presence of conditions unrelated to these lawsuits, an order allowing *ex parte* contact with Plaintiffs' treating physicians would violate that privilege;

2. Because the Plaintiffs have not waived their physician-patient privilege with respect to unrelated conditions, substantive state law controls the disposition of this Motion;

3. Even if substantive state law does not control the resolution of the immediate dispute, the facts of this case are easily distinguishable from the facts in the cases Defendants cite in support of their motion; and,

4. Under these facts and circumstances, any authorization of *ex parte* communications should, at the very least, be given on a case-by-case basis, thereby protecting Plaintiffs against the potential abuses of unfettered *ex parte* interviews by defense counsel.

## Argument

**1. The Plaintiffs in this case have not waived their physician-patient privilege with respect to conditions unrelated to this litigation.**

Pursuant to Indiana statute, a physician-patient privilege renders physicians incompetent to testify regarding matters communicated to them by their patients in the course of treatment or diagnosis. *See Cua v. Morrison*, 626 N.E.2d 581, 586 (Ind. Ct. App. 1993). While a patient waives the privilege by placing her mental or physical condition at issue in a lawsuit, it is only waived as to matters "causally and historically related to the condition put in issue and which have a direct medical relevance to the claim, counterclaim, or defense made." *Id.* Any unrelated medical retains its privileged status and is not discoverable. *Id.*

In *Cua*, the Indiana Court of Appeals declared that a trial court "must closely supervise discovery in the area of physician-patient privilege and should not lightly consider a party-patient's right to invoke the physician-patient privilege as to any unrelated matters lest the physician-patient privilege become nothing more than a legal anachronism." 626 N.E.2d at 586. It further emphasized that "[t]he limited

waiver of the privilege should not be used to allow defense counsel to conduct a 'fishing expedition' into unrelated matters." *Id.*

In their motion, Defendants incorrectly assume that all of the hundreds of MDL Plaintiffs waived their physician-patient privilege with respect to *all* treatment provided by *all* of their treating physicians even if those conditions and treatments are unrelated to the claims in this case. The Plaintiffs have not done so.

Indeed, Defendants have utterly failed to make the showings this Court has found necessary before allowing unfettered *ex parte* contact with plaintiffs' treating physicians. For example, Defendants have not shown that Plaintiffs have signed blanket releases for all medical records or failed to attempt to limit those records released to Defendant. *See Patton v. Novartis Consumer Health, Inc.*, 2005 U.S. Dist. LEXIS 15453, *4 (S.D. Ind. July 25, 2005) (holding that Plaintiff signed a broad record release; there was no information to protect). They have failed to show that Plaintiffs have no medical conditions unrelated to this case that could be revealed during unsupervised *ex parte* contact. *See id.* (noting, "there is no indication here of any medical conditions or treatments that would be irrelevant to plaintiff's claims."). *See also Shots v. CSX Transp.*, 887 F. Supp. 206, 207-08 (S.D. Ind. 1995).

This Court has recognized that, in certain fact-specific cases, a defendant has the right to conduct *ex parte* witness interviews, including interviews of physicians who have treated a plaintiff. However, "an order prohibiting ex parte conversations could be issued [where] a plaintiff objects to release of medical information . . . in

3

the possession of a particular physician which is both causally and historically unrelated to the condition at issue in the lawsuit and is potentially embarrassing or ruinous." *Shots*, 887 F. Supp. at 208. And in 2011, this Court again recognized "the need to protect against defense counsel's probing of sensitive medical information that is not relevant to the litigation." *Dukes v. Cox*, 2011 U.S. Dist. LEXIS 120197, *4 (S.D. Ind. Oct. 17, 2011).

In a case of this nature, with hundreds of Plaintiffs (all of whom have varied medical histories), and even more numerous physicians, Defendants ask this Court to issue a blanket authorization allowing the defense to be the sole and final arbiters of whether medical information is relevant and the extent to which each of the Plaintiffs' physician-patient privileges are waived. This request is inconsistent with both Indiana state law and federal procedural rules, and should be denied. *See id* (concluding that some of the medical information contained in Plaintiff's medical records is not relevant to the matters at issue in the case and, therefore, protected).

**2. Because Plaintiffs have not waived their physician-patient privilege with respect to unrelated conditions, state substantive law controls.**

Federal courts sitting in diversity cases are bound by state court decisions and state statutes when deciding questions of substantive law and by federal procedural law when deciding questions of procedure. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938). While it is true that "when the issue before the court is not what may be discovered, but how that discovery may be obtained, . . . that issue is a matter of federal procedural law," such is not the case here. *See Shots*, 887 F. Supp. at 207 ("Under the federal rules, district court judges are given wide discretion to

4

supervise the discovery process, and their decisions are subject to review only for abuse of discretion."). Here, there has been no showing that there is an absence of unrelated medical information to protect.

In *Shots*, the Court determined the rule set forth in *Cua* by the Indiana Court of Appeals did not control the *process* of discovery in a federal civil case. The reason was, however, the plaintiff in *Shots* had waived the entirety of his physician-patient privilege. Thus, the substantive issue of state law in *Shots*—namely, the extent to which the plaintiff waived his physician-patient privilege—was conclusively determined. The only remaining issue—the proper means of discovery—was a procedural issue controlled by federal law. The Court held that *Cua* only regulated procedure for discovering information that was *no longer privileged*. Here, the issue of whether the Plaintiffs have waived their physician-patient privilege has not been determined, especially given the number of Plaintiffs and their physicians and the variety of conditions for which any of these physicians may have provided treatment.

Because Defendants cannot show that all Plaintiffs in this case have waived their physician-patient privilege with respect to all physicians with whom Defendants seek *ex parte* contact, the controlling issue in this matter is not procedural (i.e., how discovery may proceed), but substantive (i.e., the extent to which Plaintiffs have waived their physician-patient privilege and whether any information held by the physicians is privileged). Accordingly, Indiana substantive law controls the present dispute.

5

### 3. Even if state substantive law does not control the resolution of this Motion, the facts of the present case are easily distinguishable from the facts in those cases cited by Defendants in support of their Motion.

Indiana federal courts have allowed *ex parte* contact between defendants and a plaintiff's treating physician in certain, fact-specific circumstances, but only where a prior determination regarding the presence of unrelated conditions has been made. For example, in *Shots,* 887 F. Supp. 206, and *Everhart v. Amtrak*, Cause No. IP01-1221-C-H/K, 2003 WL 83569, *2 (S.D. Ind. Jan. 9, 2003), this Court ordered the plaintiff to sign a consent allowing such *ex parte* communication. In both cases, however, the Court only reached this decision after determining that *ex parte* contact with the plaintiff's treating physicians was not likely to lead to the disclosure of privileged information because both plaintiffs failed to indicate the presence of a condition not related to their claims or a condition that is "potentially embarrassing or ruinous." *E.g., Shots*, 887 F. Supp at 207-208.

Likewise, this Court, in *Patton*, 2005 U.S. Dist. LEXIS 15453, noted that "there is no indication here of any medical conditions or treatments that would be irrelevant to plaintiff's claims" and the plaintiff "signed blanket releases for all medical records" and, what's more, failed to file a response in opposition to the defendant's request for *ex parte* contact. *Id*. at *4. In other words, *ex parte* communication was only authorized *after* the court determined there was no protectable medical information.

Unlike the defendants in *Shots*, *Everhart*, and *Patton*, Defendants here have not identified the doctors with whom they wish to meet. They have not identified

the information they seek, nor have they determined whether any of that information is related to the issues in this case or not. Instead, they seek unrestricted access to any physicians who have treated any of the MDL Plaintiffs. There is no opportunity for this court to make a prior, fact-based finding per individual plaintiff, as it did in *Shots*, *Everhart*, and *Patton*.[1]

The court's granting of the Defendants' motion would sweep away all physician-patient privilege held by each Plaintiff in this MDL without consideration of whether any individual plaintiff objects to the release of certain medical information or whether any physician is in possession of medical information that is unrelated to the issue in the lawsuit or potentially embarrassing or ruinous. *See Doe v. City of Chicago*, 1998 U.S. Dist. LEXIS 10302, *14 (N.D. Ill. July 6, 1998) (finding Defendant's *ex parte* contact with plaintiff's treating physician to be improper where there was "no prior finding that plaintiff did not suffer from any other unrelated condition as to which she had a right to privacy or that her condition was not such as would likely be embarrassing or ruinous and therefore require the protection of the court."). Even under the cases Defendants cite in their motion, the request should be denied.

---

[1] The plaintiff in *Patton* had been part of Multidistrict Litigation 1407 but, at the time the dispute arose over the permissibility of *ex parte* contact between the defendant and Patton's physicians, the pretrial proceedings were completed and Patton's individual case was returned to the trial court. *See Patton*, at *2 ("In managing trial preparations for this specific case, the parties reached an impasse as to whether defense counsel should be entitled to talk privately with plaintiff's treating physicians.").

7

4. **At the very least, the propriety of *ex parte* communications should be determined on a case-by-case basis.**

If the Court were inclined to grant Defendants' motion, Plaintiffs request that this Court place in its order restrictions that ensure that Plaintiffs are properly protected from disclosure of privileged information. Plaintiffs ask that any such order include the following protections:

1. Defendants must make separate and individual applications for *ex parte* contact for each Plaintiff;
2. For each application, Defendants must provide evidence indicating a lack of unrelated, embarrassing, or ruinous conditions or treatments;
3. Defendants must identify the specific physicians they seek to interview;
4. Any costs incurred for the physician's time during an interview must be paid by Defendants; and
5. It must be solely left to the physician's discretion whether he or she is willing to speak with Defendants, and physicians must be informed in writing that there is no requirement for them to speak with the defense and any such communication is entirely voluntary.

Such restrictions will protect the MDL Plaintiffs' medical information that is unrelated to their respective claims.

## Conclusion

For all of these reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion for Entry of Order Authorizing *Ex Parte* Contact Between

Defendants' and Plaintiffs' Treating Physicians. Alternatively, if *ex parte* contact by the defense is permitted, Plaintiffs ask that the protections described above be implemented before any *ex parte* contact with Plaintiffs' treating physicians is initiated.

Respectfully submitted,

RILEY WILLIAMS & PIATT, LLC

/s/ Joseph N. Williams
Joseph N. Williams, Atty. No. 25874-49
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317) 633-5270
Facsimile: (317) 426-3348
Email:     jwilliams@rwp-law.com

*Liaison Counsel to Plaintiffs Steering Committee and on behalf of Plaintiffs Steering Committee*

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2015, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's CM/ECF system.

/s/ Joseph N. Williams
Joseph N. Williams