UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION
_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND                    Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION                     MDL No. 2570
_____

This Document Relates to:

     Civil Action No.: 1:14-cv-02053-RLY-TAB
_____

## THE COOK DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS

     The Cook Defendants, by counsel, respectfully file this Reply to Plaintiff's Response in Opposition to Motion for Judgment on the Pleadings ("Reply").  For the reasons stated in the Cook Defendants' Brief in Support of Motion for Judgment on the Pleadings ("Brief") and in this Reply, the Court should grant judgment on the pleadings in favor of the Cook Defendants and against Plaintiff Grayden Kellogg ("Kellogg").

**I.**      **ARGUMENT**

     In Plaintiff's Response in Opposition to the Cook Defendant's Brief, Kellogg does not dispute the facts as the Cook Defendants presented them in support of this Pleading.  Nor does he dispute the application of Indiana statutes of limitations.  Instead, Kellogg points to the Master Complaint's references to "fraudulent concealment" and claims that this doctrine saves his claims from the bar of the limitations periods.  Kellogg's argument offers no sound reason for denying the Cook Defendants' Motion for Judgment on the Pleadings.

**A.  Under Indiana Law, Kellogg Had Information About The Celect Filter That Would Have Led A Reasonable Person To Discover His Cause Of Action[1]**

In *Miller v. A. H. Robins Co., Inc.*, 766 F.2d 1102 (7th Cir.1985), the Seventh Circuit

held:

> [f]or the doctrine of fraudulent concealment to apply, Indiana law requires, *inter alia*, a showing of reasonable care and due diligence on the part of the plaintiff. *See Morgan v. Koch*, 419 F.2d 993, 999 (7th Cir. 1969); *Tolen v. A. H. Robins Co.*, 570 F. Supp. 1146, 1152 (N.D. Ind. 1983).  When a plaintiff learns of information that would lead to the discovery of the cause of action through diligence, the statute of limitations begins to run, regardless of concealment.

*Id.* at 1106-07 (citing *Adams v. Luros*, 406 N.E.2d 1199, 1203 (Ind. 1980); *Toth v. Lenk*, 330

N.E.2d 336, 340-41 (Ind. 1975)).

The *Miller* plaintiff had learned in 1974 that the Dalkon Shield was a possible cause of

her infection.  The Seventh Circuit held that this information should have prompted her to "make

further inquiries as to whether the Dalkon Shield could have caused her pelvic infection."

*Miller*, 766 F.2d at 1107.  Because the plaintiff failed to exercise due diligence following receipt

of the information related to the Dalkon Shield, the court held that the defendant was not

equitably estopped from relying on the statute of limitations.  *Id.*

The *Miller* reasoning is applicable to the present case.  The Celect filter was implanted in

Kellogg on March 21, 2008.  (Short Form Compl. ¶ 24.)  Kellogg began experiencing

gastrointestinal bleeding shortly after the implant of the filter.  (*Id.*, ¶ 25.)  "On February 4, 2010,

Plaintiff was told that the filter [had] perforated his vena cava."  (*Id.*)  "On April 26, 2010, there

---

[1] The Cook Defendants failed in their Brief to note that Kellogg asserts a claim under the Deceptive Practices Act (the "DPA"), which under Indiana law is found at Indiana Code § 24-5-0.5 *et seq.*  A DPA claim cannot be brought more than two years after the occurrence of the deceptive act.  *A.J.'s Auto. Sales v. Freet*, 725 N.E.2d 955, 964-65 (Ind. Ct. App. 2000), abrogated on other grounds.  The discovery rule is inapplicable.  *Id.*  For the reasons stated *infra* in the text, Kellogg's DPA claim is not saved by the doctrine of fraudulent concealment.

was an attempt to remove the IVC filter but it could not be removed due to such a high risk of death during the procedure." (*Id.*)

This knowledge alone put Kellogg on notice of a cause of action. Even if this were not the case, the turn of events clearly would have been sufficient to put a reasonable person on notice that his injuries arguably were related to the Celect filter. At this point, Kellogg was obligated to exercise due diligence to discover his cause of action. As shown below, Kellogg, himself, through the Master Complaint, admits that if he had conducted an investigation he would have learned of his cause of action (even if he already was not aware of it).[2]

By September 4, 2008, O. Doody (and others) had published a study called "Assessment of Snared-Loop Technique When Standard Retrieval of Interior Vena Cava Filters Fail" in CardioVascular and Interventional Radiology medical journal. (Master Compl. ¶ 39.) According to the Master Complaint, on which Kellogg relies for his fraudulent concealment claim, that study examined all Cook Gunther Tulip Filters and Cook Celect filters retrieved between July 2006 and February 2008 and reported that 130 retrievals were attempted "but in 33 cases, the standard retrieval technique failed." (Master Compl. ¶ 39.) The authors, the Master Complaint states, concluded that "'unsuccessful retrieval was due to significant endothelialization and caval penetration'" and that "'hook endothelialization is the main factor resulting in failed retrieval and continues to be a limitation of these filters.'" (*Id.* (quoting O. Doody (and others)).)

---

[2] The Cook Defendants do not agree with the allegations in the Master Complaint or with the inferences Kellogg and the other MDL plaintiffs urge the Court to draw therefrom. Nevertheless, in reviewing a motion for judgment on the pleadings, a court "'must accept all well pled facts as true . . . .'" *Westbrook v. Keihim Aircon N. Am.*, 2014 U.S. Dist. LEXIS 169275, at *4 (S.D. Ind. Dec. 5, 2014) (quoting *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012)). Moreover, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Agnew*, 683 F.3d at 334. As the Cook Defendants demonstrate, taking as true the allegations in the Master Complaint and those in Kellogg's Short Form Complaint, Kellogg establishes that the limitations periods expired before he filed his cause of action.

According to the Master Complaint, Kellogg also would have learned through due diligence of another study conducted by O'Doody (and others) that was published in 2009 in the Journal of Medical Imaging and Radiation Oncology. (Master Compl. ¶ 40.) This second study is entitled "Initial Experience in 115 Patients with the Retrievable Cook Celect Vena Cava Filter," and retrospectively tracks 115 patients who underwent Cook Celect IVC filter insertion between December 2005 and October 2007. (*Id.*) The Master Complaint explains that the authors of the study concluded that "'[f]ailed retrieval secondary to hook endothelialization continues to be an issue with this filter.'" (*Id.* (quoting O'Doody (and others)).)

The Master Complaint also acknowledges that a review of clinical data related to 73 patients who had a Celect filter implanted between August 2007 and June 2008 revealed that the Celect filter was related to a high incidence of caval filter leg penetration. (Master Compl. ¶ 41.) The authors of this clinical study reported that immediately "after fluoroscopy-guided filter deployment in 61 patients, four filters (6.5%) showed significant tilt. (*Id.*) "Follow-up abdominal CT in 18 patients demonstrated filter related problems in 7 (39%), which included penetration of filter legs in 4 and fracture/migration of filter components in 1. (*Id.*)[3]

All of these studies were available in 2008 and 2009, long before Kellogg learned in 2010 that the Celect filter had caused him gastrointestinal bleeding, that it had perforated his vena cava, and that the filter could not be removed because the procedure to remove it posed for him a high risk of death. With knowledge of these filter-related issues, a reasonable person would have known to conduct due diligence and through that due diligence would have learned about the very studies listed in the Master Complaint and, thereby, would have learned about his cause of

---

[3] Although the Master Complaint does not state the date of publication of this clinical study, the Cook Defendants ask that, pursuant to Federal Rule of Evidence 201, the Court take judicial notice that this study was published in the September 2009 Journal of Vascular and Interventional Radiology, Vol. 20, Issue 9, pp.1188-92. The Cook Defendants are supplying the Court with a copy of this study as Exhibit 1 simultaneously with the filing of this Reply, pursuant to Rule 201(c)(2).

action even if the filter-related health issues he had experienced were themselves insufficient to put him on notice.

**B.  The Application Of Ohio Limitations Periods Does Not Save Kellogg's Claims**

Since the filing of their Brief, the Cook Defendants have conducted further research and the results of that research have led them to conclude that statutes of limitations in a case such as this, likely are a substantive matter and, therefore, that Ohio's limitations periods are those that should be applied.  Even though Kellogg did not argue against application of Indiana's statutes of limitations, the Cook Defendants will demonstrate that whether the Court applies Indiana or Ohio statutes of limitations, the result is the same.

1.  Ohio Statutes Of Limitations

Kellogg has asserted claims of strict products liability, negligence, negligence per se, breach of warranties and violations of state law against consumer fraud and unfair and deceptive trade practices.  Ohio precedent shows that the limitations period applicable to all Kellogg's claims is the two-year statute of limitations for bodily injury.

In *Summers v. Max & Erma's Rest.*, *Inc.*, 2008 Ohio App. LEXIS 3515, at *14 (Ohio Ct. App. Aug. 15, 2008), the plaintiff purchased a hamburger at the defendant's place of business and that hamburger allegedly contained a foreign object causing injuries to the plaintiff's teeth and mouth.  *Summers*, 2008 Ohio App. LEXIS 3515, at *2.  The plaintiff filed a complaint alleging breach of contract, breach of warranty, intentional or negligent infliction of emotional distress, loss of consortium, violation of Ohio's Consumer Sales Practices Act and violation of Ohio's Pure Food and Drug Act.  *Id.*

The court first relied on the reasoning of the Ohio Supreme Court:

In *Andrianos v. Community Traction Co.* (1951), 155 Ohio St. 47, 97 N.E.2d 549, the Ohio Supreme Court held "[s]ection 11224-1, General Code, providing that an

action for bodily injury shall be brought within two years after the cause thereof arose, governs all action the real purpose of which is to recover damages for injury to the person and losses incident thereto and it makes no difference whether such action is for a breach of contract or strictly in tort." *Id.* . . .  The court further held that "the form in which the action is brought is immaterial." *Id.*  The court noted "[s]urely, the General Assembly did not intend to create different periods of limitation for damages growing out of bodily injury." *Id.* at 51.

*Id.*

The *Summers* court also relied on *Duckworth v. Burger King Corp.*, 824 N.E.2d 592 (Ohio Ct. App. 2005).  In *Duckworth*, the plaintiff became ill after consuming food that was adulterated.  In the complaint, plaintiff alleged breach of warranties, loss of consortium, respondeat superior, breach of contract, violations of the Pure Food and Drug Act, breach of implied warranty of merchantability and violations of the Consumer Sales and Practices Act. *Duckworth,* 824 N.E.2d at 595.  The *Duckworth* court concluded that the two-year statute of limitations for personal injury actions in Ohio Revised Code § 2305.10 applied and barred recovery on all causes of action "because the underlying nature of the causes of action were for personal injury." *Id.* at 598-99.

After analyzing Ohio precedent, the *Summers* court concluded:  "Most importantly, the underlying nature of Summers' causes of action are for bodily injury.  Thus, the two-year statute of limitations set forth in R.C.  2305.10 is the applicable statute of limitations." *Summers*, 2008 Ohio App. LEXIS 3515, at *16; *see also Flynn v. Bd. of Trustees of Green Twshp.*, 2006 Ohio App. LEXIS 6546, at *3 (Ohio Ct. App. Dec. 15, 2006) (holding two-year limitations period applicable to product liability claims).

When appropriate claims are brought under Ohio's version of the Uniform Commercial Code (the "UCC"), they are subject to a four-year limitations period.  Ohio Revised Code § 1302.98.  A UCC breach of warranty occurs, and the cause of action accrues, when "tender of

deliver is made" regardless of the plaintiff's knowledge of the breach.  *Id.*  Claims properly brought under the Ohio Consumer Sales Practices Act ("CSPA") may not be brought more than two years after the occurrence of the violation which is the subject of suit.  *Price v. KNL Custom Homes, Inc.*, 28 N.E.3d 640, 646 (Ohio Ct. App. 2015).  The limitations period runs from the date of the occurrence of the violation, and no discovery rule, discussed below, applies to claims for damages under the CSPA.  *Id.*; Ohio Revised Code § 1345.10(C).

Under Ohio law, a "cause of action ordinarily accrues, and the limitations period begins to run, when the event giving rise to liability occurs."  *Flynn*, 2006 Ohio App. LEXIS 3515, at *3.  The discovery rule generally holds that "'when an injury does not manifest itself immediately, the cause of action does not arise until the plaintiff knows, or by the exercise of reasonable diligence should have known, that he has been injured by the conduct of the defendant.  *Id.* at *3-4.

In *Flynn*, the plaintiff injured herself on a dance floor.  Three years after she filed her complaint, she amended it to include product liability claims against a dance floor company.  The new defendant contended that the two-year limitations period barred her product liability claims.  *Id.* at *3.  Plaintiff argued that because "the defect was latent and not readily apparent to the consumer, the cause of action accrued in 2005 when her expert determined that the product was unreasonably dangerous and defective."  *Id.*  The appellate court disagreed with plaintiff.  The court held that the injury was not latent – it manifested itself immediately.  Flynn knew she was injured.  The discovery rule was therefore inapplicable, and Flynn's cause of action accrued in 2002.  *Id.* at *4.

2.   Kellogg's Claims Are Untimely Under Ohio Statutes Of Limitations

Applying Ohio's statutes of limitations does not change the outcome of the Cook Defendants' motion.  The underlying nature of Kellogg's causes of action is for bodily injury and, thus, his claims are subject to Ohio's two-year limitations period.  Even if some of his claims were governed by the UCC's four-year statute of limitations, Kellogg would fare no better.  Kellogg's physician implanted the filter in him on March 21, 2008 and shortly thereafter he began experiencing gastrointestinal bleeding.  (Short Form Compl. ¶ 25.)  Kellogg learned on February 4, 2010 that the filter had perforated his vena cava.  (*Id.*)  On April 26, 2010, Kellogg's physician attempted to remove the filter but Kellogg asserts that the filter could not be removed due to such a high risk of death during the procedure.  (*Id.*)  Kellogg clearly was aware of his injuries and their connection to the filter in April 2010 – nearly four years and eight months before he filed suit on December 16, 2014.

Just like Indiana law, Ohio law does not permit Kellogg to invoke the doctrine of fraudulent concealment to save his claims.  In *Hometown Health Plan v. Aultman Health Found.*, 2009 Ohio Misc. LEXIS 550 (Ohio Misc. April 15, 2009), the court held that a plaintiff's right to claim "'fraudulent concealment never continues beyond the time that a plaintiff, by exercising reasonable diligence, should have discovered the facts at issue." *Id.* at *21; *Zemcik v. Lapine Truck Sales & Equip. Co.,* 124 Ohio App. 3d 581, 587-88 (Ohio Ct. App. 1997); *Birkett Williams Ford, Inc. v. East Woodworking Co.*, 8 Ohio App. 3d 231, 233-34 (Ohio Ct. App. 1982).

The *Hometown Health Plan* court also held that a party's duty to inquire into a matter with diligence arises when the party has information sufficient to alert a reasonable person to the possibility of wrongdoing.  *Hometown Health Plan*, 2009 Ohio Misc. LEXIS 550, at *21.  "Due diligence requires more than sitting idly by until the facts are someday revealed to you." *Id.*

8

Under Ohio law – just like under Indiana law – Kellogg cannot rely on the fraudulent concealment doctrine to postpone accrual of his claims because, as revealed in his Short Form Complaint, he had ample information that would have alerted a reasonable person to the possibility of his cause of action.  Had Kellogg investigated after learning that the filter perforated his vena cava and that removal of the filter created grave risk of death, he would have discovered the studies, discussed *supra* at pages 3-4, on which he now relies to suggest that the Cook Defendants knew yet concealed information about the Celect filter.  Rather than practicing due diligence, Kellogg "sat idly" on the information he had.  Therefore, he cannot turn to the doctrine of fraudulent concealment to breathe life into his stale claims.

## II.        CONCLUSION

In sum, whether the Court applies Indiana or Ohio's statutes of limitations, Kellogg's claims are barred because he had notice of them by April 26, 2010, after learning that (1) he was experiencing gastrointestinal bleeding; (2) the filter had perforated his vena cava, and (3) removal of the filter posed for him a high risk of death.  Even if Kellogg claims he did not have actual knowledge of his injuries, he had experienced symptoms and had information

that would have caused a person of reasonable diligence to take action that would have led to the discovery of his cause of action.  This is precisely why Kellogg's reliance on the doctrine of fraudulent concealment to toll his limitations periods is misplaced.  Under that doctrine, a plaintiff's duty to inquire into a matter with diligence arises when he has information sufficient to alert a reasonable person to the possibility of a claim.  Because Kellogg had sufficient information but failed to act diligently, he is precluded from invoking the doctrine of fraudulent concealment.  The Court should enter judgment on the pleadings in favor of the Cook Defendants and against Kellogg.

Respectfully submitted,

/s/ Maureen E. Ward
Douglas B. King, Esq., Lead Counsel
Christopher D. Lee, Esq.
James M. Boyers, Esq.
John C. Babione, Esq.
Sandra Davis Jansen, Esq.
Kip S. M. McDonald, Esq.
Maureen E. Ward, Esq.

WOODEN McLAUGHLIN LLP
One Indiana Square, Suite 1800
Indianapolis, IN 46204-4208
Tel:     (317) 639-6151
Fax:     (317) 639-6444
doug.king@woodenmclaughlin.com
chris.lee@woodenmclaughlin.com
jim.boyers@woodenmclaughlin.com
john.babione@woodenmclaughlin.com
sandy.jansen@woodenmclaughlin.com
kip.mcdonald@woodenmclaughlin.com
maureen.ward@woodenmclaughlin.com

Counsel for Cook Defendants

10

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL, and served the counsel listed below by first class United States mail, postage prepaid.

Joseph R. Johnson, Esq.
Babbitt Johnson Osborne & LeClainche
1641 Worthington Road, Ste. 100
West Palm Beach, FL 33402-4426

Julia Reed Zaic, Esq.
Laura Smith, Esq.
Heaviside Reed Zaic
312 Broadway, Ste. 203
Laguna Beach, CA 92651

Tim Moore, Attorney at Law, P.A.
305 East King St.
Kings Mountain, NC 28086

Bard K. Brian
222 Kentucky Avenue, Suite 10
Paducah, KY 42001

David J Britton
LAW OFFICE OF DAVID J BRITTON
535 Dock Street, Suite 108
Tacoma, WA 98402

George Jerre Duzane
Duzane, Kooperman & Mondelli
603 Woodland Street
Nashville, TN 37206-4211

Lucas J. Foust
FOUST LAW OFFICE
1043 Stoneridge Drive, Suite 2
Bozeman, MT 59718

Lori Elizabeth Hammond
Frost Brown Todd LLC - Louisville
400 W. Market Street, 32nd Floor
Louisville, KY 40202-3363

Charles Rene Houssiere, III
Randal Alan Kauffman
Houssiere Durant & Houssiere, LLP
1990 Post Oak Boulevard, Suite 800
Houston, TX 77056-3812

Ramon R. Lopez
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, CA 92660

Cliff W. Marcek
Cliff W. Marcek, P.C.
700 S. Third Street
Las Vegas, NV 89101

Matthew McCarley
Fears Nachawati, PLLC
4925 Greenville Avenue, Suite 715
Dallas, TX 75206

Joseph A. Napiltonia
Law Office of Joe Napiltonia
213 3rd Avenue North
Franklin, TN 37064

W. Bryan Smith
Morgan & Morgan, LLC
2600 One Commerce Square
Memphis, TN 38103

Anthony James Urban
Brian J. Urban
Law Offices of Anthony Urban, P.C.
474 N. Centre Street, 3rd Floor
Pottsville, PA 17901

Peter C. Wetherall
Wetherall Group, Ltd.
9345 W. Sunset Road, Suite 100
Las Vegas, NV 89148

Corrie Johnson Yackulic
Corrie Yackulic Law Firm PLLC
315 5th Avenue South, Suite 1000
Seattle, WA 98104-2682

/s/ Maureen E. Ward
Maureen E. Ward, #17121-49

1353367-1 (10909-0861)