UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

This Document Relates to:

Civil Action No.: 1:15-cv-00764-RLY-TAB

### THE COOK DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

The Cook Defendants, by counsel, respectfully file their Brief in Support of Motion for Summary Judgment. Because Plaintiff Valerie Graham ("Graham") filed her Complaint long after the applicable statutes of limitations had expired and because Graham may not pursue a private cause of action under the Food, Drug and Cosmetic Act, the Court should grant the Cook Defendants' summary judgment motion.

**I.     RELEVANT FACTS**

Graham lives in Kansas. (Short Form Compl. ("Compl.") ¶ 4.) In 2004, and as a preventative measure against a pulmonary embolism resulting from a planned surgery, Graham's physician implanted in her a Cook Gunther Tulip Inferior Vena Cava ("IVC") filter. (Def.s' Ex. A, Pl. Profile Form, Affidavit of Kelli Jachimiak ("Jachimiak Aff.") ¶¶ 2-7, 9 and Ex. 4, attached thereto, at §§ III-IV; Def.s' Jachimiak Aff. ¶¶ 2-7, 13 and Ex. 8, attached thereto, at 1.) About one week following her surgery, Graham's physician removed the Gunther Tulip filter because he deemed its continued presence no longer necessary. (Def.s' Ex. A, Pl. Profile Form, Jachimiak Aff. ¶¶ 2-7, 9 and Ex 4, attached thereto, at § IV; Def.s' Ex. A,

Progress Notes of Dr. Michael Beezley, Jachimiak Aff. ¶¶ 2-7, 13 and Ex. 8, attached thereto, at 1.)

On November 18, 2009, Dr. Steven Lemons ("Dr. Lemons"), at the University of Kansas Medical Center, implanted a Bard G2 Express IVC filter in Graham.  (Def.s' Ex. A, Pl. Fact Sheet, Jachimiak Aff. ¶¶ 2-8 and Ex. 3, attached thereto, at § III; Def.s' Ex. A, Progress Notes of Dr. Michael Beezley, Jachimiak Aff. ¶¶ 2-7, 13 and Ex. 8, attached thereto, at 1.)  On November 23, 2009, Dr. Lemons removed the Bard G2 because it had migrated and tilted horizontally and was causing Graham severe abdominal pain.  (Def.s' Ex. A, Pl. Fact Sheet, Jachimiak Aff. ¶¶ 2-8 and Ex. 3, attached thereto, at § III, ¶ 3; Def.s' Ex. A, Pl. Profile Form, Jachimiak Aff. ¶ 2-7, 9 and Ex. 4, attached thereto, at § IV; Def.s' Ex. A, Provider Progress Notes from University of Kansas Cancer Center, Jachimiak Aff. ¶¶ 2-7, 10 and Ex. 5, attached thereto, at 1; Def.s' Ex. A, Progress Notes of Dr. Michael Beezley, Jachimiak Aff. ¶¶ 2-7, 13 and Ex. 8, attached thereto, at 1.)  Imaging showed "dislodgement" of the Bard G2.  (Def.s' Ex. A, Provider Progress Notes from the University of Kansas Cancer Center, Jachimiak Aff. ¶¶ 2-7, 10 and Ex. 5, attached thereto, at 1.)  On November 23, 2009, Dr. Lemons replaced the G2 with a Cook Celect filter.  (Def.s' Ex. A, Pl. Fact Sheet, Jachimiak Aff. ¶¶ 2-8 and Ex. 3, attached thereto, at § II, ¶ 2, § III, ¶ 3; Def.s' Ex. A, Pl. Profile Form, Jachimiak Aff. ¶¶ 2-7, 9 and Ex. 4, attached thereto, at § IV; Def.s' Ex. A, Progress Notes of Dr. Michael Beezley, Jachimiak Aff. ¶¶ 2-7, 13 and Ex. 8, attached thereto, at 1.)  Dr. Lemons implanted the Celect filter as a preventative measure; Graham was predisposed to pulmonary embolisms, deep vein thrombosis and transient ischemic attacks ("TIAs").  (Def.s' Ex. A, Pl. Profile Form, Jachimiak Aff. ¶¶ 2-7, 9 and Ex. 4, attached thereto, at § III; Def.s' Ex. A, Medical Notes of Dr. Michael Beezley, Jachimiak Aff. ¶¶ 2-7, 14 and Ex. 9, attached thereto, at 1.)

On August 15, 2011, Graham saw Dr. James Harbrecht ("Dr. Harbrecht") for "evaluation of recurring problems of abdominal discomfort which she attributes to her IVC filter." (Def.s' Ex. A, Progress Notes of Dr. James J. Harbrecht, Jachimiak Aff. ¶¶ 2-7, 16 and Ex. 11, attached thereto, at §1.) On September 8, 2011, Dr. Karthik Vamanan ("Dr. Vamanan") attempted to retrieve the Celect filter at the University of Kansas Medical Center because of "failure" and "migration." (Def.s' Ex. A, Pl. Profile Form, Jachimiak Aff. ¶¶ 2-7, 9 and Ex. 4, attached thereto, at § IV; Def.s' Ex. A, Medical Notes of Dr. Karthik Vamanan, Jachimiak Aff. ¶¶ 2-7, 15 and Ex. 10, attached thereto.) His effort was unsuccessful. (Def.s' Ex. A, Pl. Fact Sheet, Jachimiak Aff. ¶¶ 2-7, 8 and Ex. 3, attached thereto, at § IV.) The next day, Dr. Vamanan performed surgery through Graham's abdominal cavity to retrieve the filter. (*Id*.) Graham attests that not only had the Celect filter migrated, but also it had perforated her vena cava and an organ and that it had caused bleeding. (*Id*., § V; Def.s' Ex. A, Radiology Exam Report by Dr. Mark Clifft, Jachimiak Aff. ¶¶ 2-7, 17 and Ex. 12, attached thereto, at 1-2.) Graham has testified that she was informed prior to the 2011 removal of the Celect filter that "I would die if it wasn't removed." (Def.s' Ex. A, Pl. Fact Sheet, Jachimiak Aff. ¶¶ 2-8 and Ex. 3, attached thereto, at § II, ¶ 9(c).)

Graham's alleged bodily injuries are "extreme pain over a period of approximately two years, major operations to remove the filter, major scarring, coded during operation, major depression, and I still currently have complications." (Def.s' Ex. A, Pl. Fact Sheet, Jachimiak Aff. ¶¶ 2-8 and Ex. 3, attached thereto, at § II, ¶ 10(a).) Graham states that she began experiencing these symptoms "[d]irectly after implantation of the device." (*Id.*, § II, ¶ 10(b).)

When asked when she first attributed her injuries to the Cook Celect, she replied: "In June of 2010 Dr. [Michael] Beezley, CCV consultant, informed me that the filter had migrated

3

and 'he wouldn't touch it' that it may be the cause of the pain." (Def.s' Ex. A, Pl. Fact Sheet, Jachimiak Aff. ¶¶ 2-8, and Ex. 3, attached thereto, at § II, ¶ 10(c).)

On December 3, 2012, Graham's attorneys, Babbitt, Johnson, Osborne & Le Clainche, requested Graham's medical records from the University of Kansas Medical Center and from the University of Kansas Hospital, seeking in particular:

1. History and Physical
2. Consultation Reports
3. Operative reports
4. X-ray, MRI and imaging studies
5. **Implant sheet for IVC filters**
6. Discharge Summary

(Def.s' Ex. A, Medical Records Requests from Graham's counsel, Jachimiak Aff. ¶¶ 2-7, 11-12 and Exs. 6-7, attached thereto (boldface in original); Def.s' Ex. A, Pl. Profile Form, Jachimiak Aff. ¶¶ 2-7, 9 and Ex. 4, attached thereto, at § I.)  Within the letter sent to the Medical Center and to the Hospital, attorney Joseph Johnson states:  "Please be advised that this firm is privileged to represent Valerie Graham."  (Def.s' Ex. A, Medical Records Requests from Graham's counsel, Jachimiak Aff. ¶¶ 2-7, 11-12 and Exs. 6-7, attached thereto.)

On May 12, 2015, Graham, represented by Babbitt, Johnson, Osborne & Le Clainche, among others, filed her Short Form Complaint ("Complaint") in this litigation asserting claims in strict products liability, negligence, negligence *per se*, breach of express and implied warranties and "applicable state law prohibiting consumer fraud and unfair and deceptive trade practices." (Compl. ¶ 14.)  As the Cook Defendants demonstrate below, Kansas statutes of limitations apply in this matter, and they time-bar Graham's Complaint.  Moreover, Graham's negligence *per se*

claim is barred for a second reason. Graham bases such claim on the Food, Drug and Cosmetic Act (the "FDCA"), but only the government may sue for noncompliance with the FDCA.

## II.     CHOICE OF LAW ANALYSIS

This case is based on diversity jurisdiction. (Compl. ¶ 9.) Accordingly, federal law controls procedural issues and state law controls substantive issues. *Dixon v. Edwards*, 290 F.3d 690, 710 (4th Cir. 2002). Because the standard for summary judgment is procedural, the federal standard applies. *Gen. Accident Fire & Life Assurance Co. v. Akzona, Inc.*, 622 F.2d 90, 93 n.5 (4th Cir. 1980).

In *Hollander v. Brown*, 457 F.3d 688 (7th Cir. 2006), the Seventh Circuit, citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 82 L. Ed. 2d 1188 (1938) and *Guaranty Trust v. York*, 326 U.S. 99, 89 L. Ed. 2d 2079 (1945), held that courts sitting in diversity apply the substantive law of the state in which the federal court is located. *Hollander*, 457 F. 3d at 692. The court also held that statutes of limitations are substantive matters for purposes of the *Erie* doctrine. *Id*.

When a case based on diversity is part of an MDL and is directly filed in the MDL forum as the result of a direct filing order, courts have found that the "better approach is to treat foreign direct filed cases [i.e., cases originating outside of this Court's judicial district but filed directly into the MDL] as if they were transferred from a judicial district sitting in the state where the case originated." *In re Yasmin*, 2011 U.S. Dist. LEXIS 39820, at *15, *18 (S.D. Ill. April 11, 2011.) In *Yasmin,* plaintiffs alleged defendant's prescription drugs were defective and the court held that it "considers the originating state to be the state where the plaintiff purchased and was prescribed the subject drug." *Id.* Accordingly, the *Yasmin* court treated each plaintiff's claims "as if they were transferred to this MDL from a district court [where the plaintiff purchased and was prescribed the subject drug]." *Id.* at *18-19.

Applying this law to the present case leads to the application of Kansas law. Graham lives in Kansas, underwent her surgeries related to the Cook Celect in Kansas, and her physician prescribed the filter in Kansas. Accordingly, Kansas is the originating state and Kansas choice-of-law provisions apply. Significantly, in *Sender v. Dillow*, 2013 U.S. Dist. LEXIS 124184 (D. Kan. Aug. 30, 2013), the district court held that "'Kansas . . . generally applies its own statutes of limitations to actions before it.'" *Id.* at *7 (quoting *Garcia v. Int'l Elevator Co., Inc.*, 358 F.3d 777, 779 (10th Cir. 2004)).

### III. ARGUMENT

#### A. Summary Judgment Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, a court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although a court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in h[er] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of her position. *Anderson*, 477 U.S. at 252. Mere speculation or conjecture

6

will not defeat a summary judgment motion. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 337 (7th Cir. 1991).

### B. The Applicable Kansas Statutes Of Limitation

The Kansas Product Liability Act ('the "KPLA") defines "product liability claim" as follows:

> [A]ny claim or action brought for harms caused by the manufacture, production, making, construction, fabrication, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, storage or labeling of the relevant product. It includes, but is not limited to, any action based on, strict liability in tort, negligence, breach of express or implied warranty, breach of, or failure to, discharge a duty to warn or instruct, whether negligent or innocent, misrepresentation, concealment or nondisclosure, whether negligent or innocent, or under any other substantive legal theory.

*Id.* (quoting K.S.A. § 60-3302(c)).

The purpose of the KPLA "was to merge all legal theories of product liability into one single product liability claim." *Fennesy v. LBI Mgmt., Inc.*, 847 P.2d 1350, 1355 (Kan. Ct. App. 1993) (citing *Chamberlain v. Schmutz Mfg. Co., Inc.*, 532 F. Supp. 588, 590 (D. Kan. 1982) (citing K.S.A. § 60-3302(c)). The KPLA provides a two-year statute of limitations for a product liability claim. *Id.* A KPLA cause of action accrues "when the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party." K.S.A. § 60-513(b).

In *Gonzalez v. PepsiCo, Inc.*, 489 F. Supp. 2d 1233, 1241 (D. Kan. 2007), the district court explained that the KPLA encompasses all actions for breach of warranties to the extent plaintiff's claim is "one brought for damage to property, personal injury or emotional distress" caused by a defective product. *Id.* at 1241-42. Thus, to the extent Graham seeks damages for

7

property loss, personal injury or emotional distress through her warranty claims, her warranty claims are subject to the KPLA'S two-year statute of limitations.

To the extent Graham seeks damages based on economic harm through her warranty claims, the longest potentially applicable limitations period is the four-year statute of limitations under Kansas' version of the Uniform Commercial Code (the "UCC"). *Golden v. Den-Mat Corp.*, 276 P.3d 773, 787 (Kan. Ct. App. 2012). The cause of action accrues when the breach occurs, regardless of whether the injured party is aware of the breach. *Id.* Moreover, "a breach of a contractual warranty under the UCC 'occurs when tender of delivery is made.'" *Id.* (citing K.S.A. § 84-2-725(2)). The Kansas Supreme Court has found that the limitations period for a breach of warranty claim typically begins running when the goods are delivered or installed. *Id.* (citations omitted).

Graham's claim under the Kansas Consumer Protection Act (the "KCPA") is subject to a three-year limitations period. *Bonura v. Sifers*, 39 Kan. App. 2d 617, 634-35 (Kan. Ct. App. 2008). Significantly, the Kansas Court of Appeals consistently has refused to apply a tolling provision to KCPA claims. *Id.* (citing *Four Seasons Apts. v. AAA Glass Serv., Inc.*, 37 Kan. App. 2d 248, 250-51 (Kan. Ct. App. 2007); *Dusek-Higgins v. McComb*, No. 95,611, 2007 Kan. App. Unpub. LEXIS 155, unpublished opinion filed Aug. 24, 2007; *Johnsmeyer v. Hanover Dev. Co. II*, No. 93,158, 2005 Kan. App. Unpub. LEXIS 1, unpublished opinion filed Oct. 7, 2005)). The limitations period begins to run when Dr. Lemons implanted the Celect filter in Graham on November 23, 2009. *See Golden v. Den-Mat Corp.*, 276 P.3d 773, 789 (Kan. Ct. App. 2012) (holding that plaintiff's KCPA claim accrued when plaintiff paid for and received the object of the consumer transaction).

### C. Graham's Claims Are Barred By The Applicable Limitations Periods

Graham's strict liability claims of failure to warn and design defect, her negligence and negligence *per se* claims, and her breach of express and implied warranty claims, to the extent Graham seeks damages for personal injury or emotional distress under them, all fall under the KPLA and are subject to a two-year limitations period. Her KCPA claim is governed by a three-year limitations period. Should Graham be seeking economic damages under the UCC, such claims are subject to a four-year limitations period. Graham's admissions show that she filed her Complaint after expiration of these limitations periods.

#### 1. KPLA Claims

The two-year limitations period applicable to Graham's KPLA claims began to run when the Celect filter first caused her substantial injury, or alternatively, when the fact of her injury became reasonably ascertainable. K.S.A. § 60-513(b). On August 15, 2011, Graham reported to Dr. Harbrecht for an evaluation of abdominal discomfort that Graham attributed to her Celect filter. (Def.s' Ex. A, Progress Notes of Dr. James J. Harbrecht, Jachimiak Aff. ¶¶ 2-7, 16 and Ex. 11, attached thereto, at 1.) On September 8, 2011, Dr. Vamanan attempted to retrieve the Celect filter but his effort failed. (Def.s' Ex. A, Pl. Profile Form, Jachimiak Aff. ¶¶ 2-7, 9 and Ex. 4, attached thereto, at §§ IV-V.) On the next day, September 9, 2011, Dr. Vamanan performed surgery through Graham's abdominal cavity to retrieve the filter. *Id.* Graham has testified that the Celect filter was tilted; had migrated; had perforated her vena cava and an organ; and had caused bleeding. (*Id.*) Indeed, Graham has averred that her physician told her that she would die if the Celect filter were not removed. (Def.s' Ex. A, Pl. Fact Sheet, Jachimiak Aff. ¶¶ 2-8 and Ex. 3, attached thereto, at § II, ¶ 9(c).)

Clearly, the fact of Graham's injury was reasonably ascertainable no later September 9, 2011, at which time Dr. Vamanan performed major surgery to retrieve the Celect filter, which filter she claims had perforated her vena cava and an organ and had caused bleeding. That Graham's injury was reasonable ascertainable at that time is demonstrated by the bodily injuries for which she seeks damages in this case – extreme pain (which she explains started when the Celect migrated); major operations to remove the filter (September 8-9, 2011); major scarring; and coded during operation (September 8-9, 2011). She was aware of all these injuries immediately after the September 9, 2011 surgery. In fact, her testimony shows that she began experiencing some of her injuries (*e.g.*, extreme pain) "directly after implantation of the device" on November 23, *2009*. (Def.s' Ex. A, Pl. Fact Sheet, Jachimiak Aff. ¶¶ 2-8 and Ex. 3, attached thereto, at § II, ¶ 10(b); Def.s' Ex. A, Progress Notes of Dr. Michael Beezley, Jachimiak Aff. ¶¶ 2-7, 18 and Ex. 13, attached thereto, at 1.)

Graham cannot distance herself from her own admissions, which are supported by her medical records. The limitations period for her KPLA claims began to run no later than September 9, 2011 and expired September 10, 2013, nearly two years before she filed her Complaint. But the evidence does not stop here.

By December 3, 2012, Graham had obtained legal counsel  her attorneys – Babbitt, Johnson, Osborne & Le Clainche – were requesting Graham's medical records from the University of Kansas Medical Center, where Dr. Lemons performed the procedures on Graham related to the Celect filter. (Def.s' Ex. A, Pl. Fact Sheet, Jachimiak Aff. ¶¶ 2-8 and Ex. 3, attached thereto, at § III, ¶¶ 3-4.) Significantly, in the medical records request, counsel emphasized his request for the "**[i]mplant sheet for IVC filters**" by placing such request in boldface. (Def.s' Ex. A, Medical Records Requests from Graham's counsel, Jachimiak Aff. ¶¶

2-7, 11-12 and Exs. 6-7, attached thereto; Def.s' Ex. A, Pl. Profile Form, Jachimiak Aff. ¶¶ 2-7, 9 and Ex. 4, attached thereto, at § 1.)  Counsel informed the University of Kansas Medical Center that his firm "is privileged to represent Valerie Graham."  (*Id.*)

Even if the clock on her KPLA claims did not start to tick until December 3, 2012 – and undeniably it started ticking on September 9, 2011 – still Graham could not escape summary judgment on the basis of the limitations period.  She did not file her Complaint in this case until May 12, 2015, nearly two and one-half years after her attorneys already were seeking her medical records related to the Celect filter.

Under any scenario, Graham missed the two-year limitations period by at least five months.  The Court should enter summary judgment in favor of the Cook Defendants on Graham's KPLA claims.

### 2. KCPA Claim And UCC Claim For Economic Damages

Graham's KCPA claim is governed by a three-year limitations period, which accrued when Dr. Lemons implanted the Celect filter.  *See Golden v. Den-Mat Corp.*, 276 P.3d 773, 789 (Kan. Ct. App. 2012) (holding that plaintiff's KCPA claim accrued when plaintiff paid for and received object of consumer transaction).  Graham's (possible) claim for economic damages under the UCC is subject to a four-year statute of limitations, which began to run when the goods "[we]re delivered or installed," which in this case again means the date Dr. Lemons implanted the device.  *Golden*, 276 P.3d at 787 (citing K.S.A. § 84-2-725(2)).

Because more than five years passed between the implantation of the Celect filter on November 23, 2009 and the filing of Graham's Complaint on May 12, 2015, the KCPA's three-year limitations period bars her consumer protection claim and the UCC's four-year statute of limitations bars any potential claims Graham has asserted for economic damages.

### D. Graham's Negligence Per Se Claim Based On Federal Law Is Doomed Because Graham Is Not Authorized To Bring Such Claim

Graham's negligence *per se* claim fails for a second reason. Graham bases such claim on sections 321, 331 and 352 of the FDCA, and certain federal regulations promulgated under the FDCA. However, 21 U.S.C. § 337 stipulates that all proceedings for the enforcement of the FDCA or to restrain violations of it "shall be by and in the name of the United States." 21 U.S.C. § 337(a); *see Buckman Co. v. Plaintiffs' Legal Comm'n*, 531 U.S. 341, 349 (2001). Congress did not create a private cause of action under the FDCA. *Fenn v. Philips Elecs. N. Am. Corp.*, 2015 U.S. Dist. LEXIS 18342, *7-8 (E.D. Ky. Feb. 13, 2015).

Although a plaintiff may bring timely state law claims under traditional state tort law principles of the duty of care, she may not initiate a negligence *per se* claim based on the provisions of the FDCA. This claim is preserved for the United States government. *Eve v. Sandoz Pharmaceutical Corp.*, 2002 U.S. Dist. LEXIS 23965, *4-9 (S.D. Ind. Jan. 28, 2002). Accordingly, even if Graham's negligence *per se* claim were timely filed, she still could not pursue such claim.

### IV. CONCLUSION

In sum, Graham's claims were barred by statutes of limitations long before she filed her Complaint. Moreover, Graham may not pursue a private cause of action under the FDCA, a second situation that dooms her negligence *per se* claim. The Court should grant summary judgment in favor of the Cook Defendants and against Graham.

Respectfully submitted,

/s/ *Maureen E. Ward*
Douglas B. King, Esq., Lead Counsel
Christopher D. Lee, Esq.
James M. Boyers, Esq.
John C. Babione, Esq.

12

Sandra Davis Jansen, Esq.
Kip S. M. McDonald, Esq.
Maureen E. Ward, Esq.

WOODEN MCLAUGHLIN LLP
One Indiana Square, Suite 1800
Indianapolis, IN 46204-4208
Tel:  (317) 639-6151
Fax:  (317) 639-6444
doug.king@woodenmclaughlin.com
chris.lee@woodenmclaughlin.com
jim.boyers@woodenmclaughlin.com
john.babione@woodenmclaughlin.com
sandy.jansen@woodenmclaughlin.com
kip.mcdonald@woodenmclaughlin.com
maureen.ward@woodenmclaughlin.com

Counsel for Cook Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2016, I electronically filed the foregoing *Cook Defendants' Brief in Support of Motion for Summary Judgment* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL, and served the counsel listed below by first class United States mail, postage prepaid.

Joseph R. Johnson, Esq.
Babbitt Johnson Osborne & LeClainche
1641 Worthington Rd, Ste. 100
West Palm Beach, FL 33402-4426

Julia Reed Zaic, Esq.
Laura Smith, Esq.
Heaviside Reed Zaic
312 Broadway, Ste. 203
Laguna Beach, CA 92651

Bard K. Brian
222 Kentucky Avenue, Suite 10
Paducah, KY 42001

David J Britton
Law Office of David J. Britton
535 Dock Street, Suite 108
Tacoma, WA 98402

Lucas J. Foust
FOUST LAW OFFICE
1043 Stoneridge Drive, Suite 2
Bozeman, MT 59718

Lori Elizabeth Hammond
Frost Brown Todd LLC - Louisville
400 W. Market Street, 32nd Floor
Louisville, KY 40202-3363

Ramon R. Lopez
Lopez McHugh LLP
100 Bayview Circle, Suite 5600
Newport Beach, CA 92660

Cliff W. Marcek
Cliff W. Marcek, P.C.
700 S. Third Street
Las Vegas, NV 89101

Joseph A. Napiltonia
Law Office of Joe Napiltonia
213 3rd Avenue North
Franklin, TN 37064

W. Bryan Smith
Morgan & Morgan, LLC
2600 One Commerce Square
Memphis, TN 38103

Peter C. Wetherall
Wetherall Group, Ltd.
9345 W. Sunset Road, Suite 100
Las Vegas, NV 89148

Corrie Johnson Yackulic
Corrie Yackulic Law Firm PLLC
315 5th Avenue South, Suite 1000
Seattle, WA 98104-2682

Tim Moore
Attorney at Law, P.A.
305 East King St.
Kings Mountain, NC 28086

George Jerre Duzane
Duzane, Kooperman & Mondelli
603 Woodland Street
Nashville, TN 37206-4211

| | |
|---|---|
| Charles Rene Houssiere, III<br>Randal Alan Kauffman<br>Houssiere Durant & Houssiere, LLP<br>1990 Post Oak Boulevard, Suite 800<br>Houston, TX 77056-3812 | Matthew McCarley<br>Fears Nachawati, PLLC<br>4925 Greenville Avenue, Suite 715<br>Dallas, TX 75206 |
| Anthony James Urban<br>Brian J. Urban<br>Law Offices of Anthony Urban, P.C.<br>474 N. Centre Street, 3rd Floor<br>Pottsville, PA 17901 | |

      /s/ *Maureen E. Ward*
      Maureen E. Ward