**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

IN RE: COOK MEDICAL, INC, IVC FILTERS          MDL NO. 2570
MARKETING, SALES PRACTICES AND               Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION

This Document Relates to All Actions

**PLAINTIFFS' MEMORANDUM REGARDING**
**BELLWETHER TRIAL SELECTION PROCESS**

Plaintiffs, by Co-Lead Counsel, pursuant to this Court's order of March 10, 2016

(Doc. 170), respectfully file this Memorandum Regarding the Bellwether Trial Selection

Process.

**I.**
**INTRODUCTION**

*[I]t has been found that conducting "bellwether trials" is often an effective*
*way to manage multidistrict litigation to a successful conclusion.*[1]

There is no reason (other than delay) to deviate from the reasonable and effective

Bellwether Selection Process that  (1)  was *jointly* proposed by the parties,  (2) has been

revisited on at least three occasions without request for substantive change by the Cook

Defendants, and (3) has governed the parties' pre-trial efforts for the past 17 months. This

_____

[1] Pretrial Order #78 (Order Consolidating Above Cases for Trial on All Issues, *In re: Boston Scientific Corp. Pelvic Repair System Prods. Liab. Litig.,* MDL No. 2326 (S.D.W.Va. Feb 19, 2014), *quoting, In re:Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.,* MDL 2004, 2010 WL 797273, at *3 (M.D. Ga. Mar 3, 2010).

1

is particularly so where the current Bellwether Selection Process has succeeded in producing a pool of cases that are representative of the devices and injuries being alleged in this MDL.   Because the agreed process has succeeded in producing a pool of representative plaintiffs, Plaintiffs request that the Court reaffirm the Bellwether Selection Process as set forth by the Court in Case Management Order # 12 (Doc 875),[2] and that representative bellwether cases from the existing discovery pools be tried as expeditiously as possible.

Through use of the Bellwether Selection Process, as set forth in this Court's Case Management Order # 12 (Doc. 875), is possible for the injured bellwether trial plaintiffs to see their day in court while simultaneously generating information on claims, defenses, and valuations which may aid in moving the litigation as a whole toward a fair and expeditious resolution.

## II.
## ARGUMENT AND AUTHORITIES

## A.   DEFENDANTS REPEATEDLY AGREED TO THE CURRENT BELLWETHER SELECTION PROCESS.

On November 17, 2014, counsel for Plaintiffs and counsel for the Cook Defendants appeared before this Court at the initial case management conference.   A jointly submitted Case Management Order ("CMO") was signed by both parties and set forth procedures for selecting of a discovery pool "from which the Court will select three cases to serve as Bellwether trials."   That first CMO further provided as follows:

---

[2] CMO #12 is a revised, more detailed version of the first CMO (Doc. 51), CMO #5 (Doc. 355) and CMO #9 (Doc. 519), all of which addressed the discovery pool and bellwether selection process.

2

The parties shall make presentations to the Court in early August 2015, on a date to be established by the Court, as to which Discovery Pool cases they propose be Bellwether cases for trial. The plaintiffs shall select a total of two (2) cases to be Bellwether cases and the defendant(s) shall select a total of two (2) cases to be Bellwether cases. The parties will make proposals as to how the Bellwether selections will be handled prior to the presentations. The Court shall inform the parties as to which cases and the order of the trials will be tried within twenty-one (21) days of the presentations.

The jointly submitted CMO was signed by the Court on November 25, 2014. (Doc. 51).

Although the CMO was revisited on three separate occasions to change of the date for presentations, no change was ever made to the procedure for selection of bellwether trial plaintiffs. That is, the CMO was revised with regard to the date for the presentations on April 17, 2015 (CMO #5, Doc. 355), on July 10, 2015 (CMO #9, Doc. 519), and again on December 3, 2015 (CMO #12, Doc. 875). Counsel for both Plaintiffs and the Cook Defendants signed each of the four CMOs and agreed to the bellwether selection process described therein.

## B. CHANGING THE BELLWETHER SELECTION PROCESS NOW WOULD CAUSE UNNECESSARY DELAY WITHOUT ADDED BENEFIT.

For the past 17 months, the parties have prepared for bellwether trials with the expectation that the Bellwether Selection Process would be the one dictated by the Court in the agreed CMOs. To that end, Plaintiffs served Plaintiff Profile Forms, (including medical authorizations) and Plaintiff Fact Sheets to enable the Cook Defendants to select Discovery Pool Plaintiffs. Each side has selected five Discovery Pool Plaintiffs in accordance with the process described in the CMOs and case specific discovery has begun in those ten discovery pool cases. In fact, medical records have been produced

3

and/or obtained for all or nearly all of the Discovery Pool Plaintiffs. Likewise, all or nearly all of the Discovery Pool Plaintiffs have been deposed. Having received authorization for ex parte contact with Plaintiffs' treating physicians (Doc. 913), the Cook Defendants have commenced talking with the Discovery Pool Plaintiffs' treating physicians.   Further, Plaintiffs have undertaken an expedited review of the records produced by the Cook Defendants regarding the communications that Cook sales representative had with Plaintiffs' treating physicians.  Plaintiffs' experts have looked at the medical records and slides for the Discovery Pool Plaintiffs and are formulating expert reports regarding specific causation and damage models for each Discovery Pool Plaintiff.

All of these steps have been taken with the purpose of complying with the Bellwether Trial Selection process set forth in the CMOs.  To change the agreed process at this time would only unnecessarily delay justice and resolution for the plaintiffs with no benefit to the process or judicial resources.

## C.   THE CURRENT DISCOVERY POOL SELECTIONS ARE REPRESENTATIVE OF THE GREATER UNIVERSE OF CASES FILED IN THIS MDL.

The Bellwether Selection Process currently set forth in the agreed CMOs is more than adequate to produce a representative group of cases for trials.  According to the Court's Cook IVC MDL website, as of March 4, 2016,[3] there were 285 filed Cook IVC cases pending before this Court.  Plaintiffs' Co-Lead Counsel were able to obtain

---

[3] As of the date this memorandum was drafted, the website had not been updated to include filings after March 4, 2016.

4

sufficient information from the various plaintiffs' counsel in 186 of those cases and have undertaken an analysis of the injuries alleged in the 186 currently filed claims - essentially **65%** of the claims filed as of March 4, 2016.

### 1.    Most Plaintiffs were implanted with a Cook Celect IVC filter.

The 186 analyzed cases included 59 plaintiffs who had been implanted with Cook IVC Tulip filters and 120 who had been implanted with Cook IVC Celect filters.  In other words, of the group analyzed, 31.4% received a Tulip IVC filter, while 65.4% received a Celect IVC filter.[4]

### 2.    Most Plaintiffs suffered more than one severe injury.

Defining "injury"[5] as tilt, fracture, migration, perforation (of inferior vena cava or of organ), embedment, or as the inability to retrieve the filter, Plaintiff's analysis of the 186 cases reveals that most, approximately 85%[6], suffered more than one injury.    The injuries alleged can be further separated out as follows:

> 61    **tilt** plus other injury/injuries
>
> 61    **migration** plus other injuries
>
> 144    **perforation** plus other injury/injuries (107 IVC perforation and 37 organ perforation)
>
> 53    **fracture** plus other injury/injuries
>
> 23    **embedment** plus other injury/injuries

---

[4] Information regarding the particular model of Cook IVC filter was not provided to Plaintiffs' Co-Lead counsel for 6 of the plaintiffs in the pool of 186 that were analyzed.

[5] Injury is sometimes referred to as "failure mode."

[6] 158 of the 186 plaintiffs whose claims were analyzed had more than one of the enumerated injuries.

68     **unable to retrieve** filter plus other injury/injuries

Only 28 (approximately 15%) of the 186 plaintiffs subject to analysis suffered only one type of injury as a result of their Cook IVC filter: 7 tilt only; 2 migration only; 4 pain only; 4 clot only; 3 embedment only; and 8 whose only injury at this time is that the filter was unable to be removed.

### 3.     Current Discovery Pool Plaintiffs are representative of the overall docket.

As noted in the Manual on Complex Litigation, Fourth, section 22.315, "[t]he more representative the test cases, the more reliable the information about similar cases will be."  As is apparent from a review of the products and injuries represented by the Discovery Pool Plaintiffs, listed below, the claims of the Discovery Pool Plaintiffs are representative of the injuries asserted in this litigation.  Thus, selection of bellwether plaintiffs from the current discovery pool would yield reliable information about similar cases.

The products and injuries within the current Discovery Pool are as follows:

#### a.     Plaintiffs' Five Discovery Pool Plaintiffs:

**Brand, Tonya**
Cook product:      Celect.
Injuries alleged:      Tilt, fracture, migration, perforation, removal attempted but only strut that had perforated thigh was removed.  Two migrated fractured struts and fractured filter remain.

**Huffman, Randall**
Cook product:      Celect.
Injuries alleged:      Perforation, clot, death.

6

**Rausch, Amanda**

Cook product:        Celect.

Injuries alleged:    Tilt, fracture, perforation (left ventricle).

**Sumner, Ginger**

Cook product:        Celect.

Injuries alleged:    Perforation (periuretral area, spine, aorta and duodenum, lung), fracture, migration . Partially removed but one or two fragments remain.

**True, Tammy**

Cook product:        Celect.

Injuries alleged:    Perforation (aorta, duodenum, and vertebra).  Open removal of filter with one prong remaining in vertebra.

     **b.**  **Defendants' Five Discovery Pool Plaintiffs:**

**Avery-Montgomery, Donna**

Cook product:        Tulip.

Injury alleged:      tilt, migration, perforation, unable to retrieve.

**Bordner, Jane**

Cook product:        Celect.

Injury alleged:      Unable to retrieve.

**Campbell, Eddie**

Cook product:        Celect.

Injury alleged:      Severe chest pain.

**Metro, Daniel**

Cook product:        Tulip.

Injuries alleged:    Unsuccessful removal followed by successful removal, embedment, perforation.

**Shafer, Daniel**

Cook product:        Celect.

Injuries alleged:    Unable to remove, clots.

The current discovery pool is representative of the greater universe of claims. The Discovery Pool Plaintiffs included two plaintiffs with Tulip IVC filters and eight with Celect filters. This ratio is consistent with the 31.4% of plaintiffs from the analyzed group who received a Tulip IVC filter, and the 65.4% who received Celect IVC filters.[7] Similarly, each of the injuries or failure modes identified in the analysis of the 186 filed cases, detailed above, is represented by a plaintiff (or plaintiffs) in the Discovery Pool. Even further, the number of Discovery Pool Plaintiffs alleging multiple injuries (8 out of 10) is roughly equivalent to the percentage of multi-injury Plaintiffs in the larger group of analyzed cases (85%). Thus, the existing Discovery Pool Plaintiffs provide an appropriate group from which to select bellwether trial plaintiffs.

**D.    THE CURRENT BELLWETHER PROCESS IS SUPPORTED BY PRECEDENT IN NUMEROUS OTHER MEDICAL PRODUCT LITIGATIONS.**

The Bellwether Selection Process dictated by CMO #12 echoes the practical process successfully utilized by numerous other pharmaceutical product MDL courts,[8] for example:

**1.    Testosterone Replacement MDL.**

Recently, in the Testosterone Replacement Therapy litigation, for cases against defendant AbbVie,[9] the MDL court ordered that each side selected eight discovery pool

---

[7] Information regarding the particular model of Cook IVC filter was not provided to Plaintiffs' Co-Lead Counsel for 6 of the Plaintiffs in the pool of the 186 that were analyzed.

[8] The process dictated by CMO #12 is also suggested by the Manual for Complex Litigation, Fourth. *See* Manual for Complex Litigation, Fourth § 22.315.

candidates for each of two injury categories (thromboembolism and cardiovascular), totaling 32 cases. At the conclusion of core discovery on those thirty-two, the parties are each to submit bellwether selection suggestions. Based on those suggestions, the court is to select twelve cases for bellwether selection and set the order of the trials. Second Amended Case Management Order No. 14, *In re: Testosterone Replacement Prods. Liab. Litig.* (MDL 2545), Case No. 1:14-cv-01748 (MDL 2545) (N.D. Il., December 10, 2015) (attached hereto as Exhibit A).

### 2. **Mirena IUD MDL.**

In the Mirena IUD litigation, each side selected twelve cases for potential inclusion in the initial disposition pool. Each side was given six strikes, leaving six cases in the initial trial pool, with the order of trial to be determined later. Order No. 18 (Initial Disposition Pool), *In re: Mirena IUD Prods. Liab. Litig.* (MDL 2434), Case No. 7:13-mc-02434 (S.D.N.Y., April 9, 2014)(attached hereto as Exhibit B).

### 3. **Pradaxa Bloodthinner MDL.**

In the Pradaxa litigation, each side selected eight plaintiffs for core discovery, followed by each side proposing three as bellwether trial plaintiffs. Of those six, the court was to select four bellwether plaintiffs and set the order of trials. Amended Case Management Order No. 28 (Early Trial Scheduling), *In re: Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.* (MDL 2385), No. 3:12-md-02385 (S.D. Il., April 9, 2013)(attached hereto as Exhibit C).

---

[9] There were similar orders entered for the other defendants in the Testosterone Replacement Litigation.

### 4. Pelvic Mesh MDLs.

There are currently seven separate pelvic mesh MDLs pending before Judge Goodwin in the Southern District of West Virginia. Below is a sampling of the Bellwether Selection Process from four of the pelvic mesh MDLs pending before Judge Goodwin.

In the American Medical Systems and Ethicon Pelvic Mesh MDLs, Judge Goodwin ordered completion of Plaintiff Profile Forms for all cases filed before a certain date. From that Initial Pool, each side submitted forty cases, totaling 80 cases, for the Discovery Pool. Case specific discovery was then undertaken for the 80 Discovery Pool Cases. Thereafter, each side submitted eight cases and presentation were made to the court regarding those sixteen cases. The court then selected five cases as Bellwether trial cases. At the conclusion of discovery, dispositive motions and Daubert challenges, the remaining cases were set in an order determined by the court. Pretrial Order #37 (Docket Control Order), *In re: American Medical Systems, Inc. Pelvic Repair System Prods. Liab. Litig.* (MDL 2325), Case No. 2:12-md-02325 (S.D. W.Va. January 18, 2013)(attached hereto as Exhibit D); Pretrial Order #33 (Docket Control Order), *In re: Ethicon, Inc. Pelvic Repair System Prods. Liab. Litig.* (MDL 2327), Case No. 2:12-md-02327 (S.D. W.Va., January 18, 2013)(attached hereto as Exhibit E). A very similar selection process was followed by Judge Goodwin for the Bard Pelvic Mesh MDL. *See* Pretrial Order #25 (Selection of Proposed Cases for Individual Discovery), *In re: Avaulta Pelvic Support Systems Prods. Liab. Litig.* (MDL 2187), Case No. 2:10-md-02187 (S.D. W. Va., June 7, 2011)(attached hereto as Exhibit F).

Similarly, in the Boston Scientific pelvic mesh litigation, after completion of Plaintiff Profile Forms for cases filed before a certain date, each side selected fifteen cases for a total of thirty in the Discovery Pool. Limited case specific discovery was then conducted for those thirty Discovery Pool Plaintiffs. Thereafter, each side selected eight plaintiffs from the Discovery Pool for a total of sixteen Trial Pool cases. The parties then made presentations to the court regarding which of the sixteen cases should then be selected by the court as the five Bellwether Cases. Pretrial Order #32 (Docket Control Order), *In re: Boston Scientific Corp. Pelvic Repair System Prods. Liab. Litig.* (MDL 2326), Case No. 2:12-MD-02326 (S.D. W.Va. January 18, 2013)(attached hereto as Exhibit G).

Unfortunately, after the parties made presentations to the court for the selection of the five Boston Scientific Bellwether Cases, the court determined that the cases presented were not representative of the entirety of the docket and, after setting specific parameters, ordered resubmission of more plaintiffs for potential Bellwether selection.[10]    Pretrial Order #51 (Order re: Bellwether Case Selection), *In re: Boston Scientific Corp. Pelvic Repair System Prods. Liab. Litig.* (MDL 2326), Case No. 2:12-MD-02326 (S.D. W. Va. August 7, 2013)(attached hereto as Exhibit H).    Because the Discovery Pool Plaintiffs in this litigation are representative, as demonstrated above, the unfortunate turn of events with regard to the initial proposed bellwether plaintiffs in the Boston Scientific Mesh Litigation should not affect the process currently under way in this MDL.

---

[10] The Boston Scientific Mesh MDL Court found that the plaintiffs' selection of multi-product cases and the defendants' selection of cases with limitations issues, combined with both sides selection of plaintiffs with issues that made them "outliers" (such as Alzheimer's, etc.) made the initial proposed bellwether plaintiffs unrepresentative of the overall docket.

5.    **Yasmin & Yaz Contraceptive MDL.**

In the Yasmin/Yaz litigation, the parties were instructed to each select an equal number of cases from each of the three injury categories that had been identified. The court would then make the ultimate selection of which case should be tried first and which cases should be designated as alternates. *In re Yasmin & Yaz (Prospirenone) Marketing, Sales Practices & Prods. Liab. Litig*., 2010 WL 4024778, *2 (S.D.Il. Oct. 13, 2010)(attached as Exhibit I).

6.    **Trasylol Open Heart Surgery Medication MDL.**

In the Trasylol litigation, each side selected three plaintiffs and two very early-filed cases were specifically named by the court as the early discovery pool. The six picked by the parties and the two early-filed cases were all eligible to be set for trial, in an order to be determined by the court. Pretrial Order No. 6 Relating ot Expert Discovery Schedules, Selection of Cases for Case-Specific Expert Discovery and Trial, and Filing of Actions in the Southern District of Florida ("CMO No. 2"), *In re Trasylol Prods. Liab. Litig.* (MDL 1928), No. 1:08-MD-01928 (S.D. Fl., September 19, 2008)(attached hereto as Exhibit J).

E.    **PLAINTIFFS' PROPOSAL FOR SELECTION OF BELLWETHER TRIAL CASES.**

Because, as detailed above, the cases currently in the discovery pool are representative of the claims asserted by plaintiffs in this litigation, significant progress has been made developing the Discovery Pool cases, and the agreed protocol here is

essentially the same process that has been utilized successfully in numerous other pharmaceutical product MDLs, Plaintiffs see no reason to alter the course at this late date.

However, in the interest of judicial economy and to prevent undue burden on both Plaintiffs and the Cook defendants, Plaintiffs do propose that following the conclusion of the core case-specific fact discovery for the Discovery Pool Plaintiffs, summary judgment and expert discovery and expert challenges regarding case specific causation be conducted only on the plaintiffs selected as Bellwether Trial Plaintiffs and not the entire Discovery Pool.

Respectfully Submitted,

RILEY WILLIAMS & PIATT, LLC

/s/ Joseph Williams
Joseph N. Williams, Atty. No. 25874-49
301 Massachusetts Avenue
Indianapolis, IN 46204
317-633-5270
Fax: (317) 426-3348
jwilliams@rwp-law.com

*Plaintiffs' Liaison Counsel*

Ben C. Martin, Esq.
LAW OFFICE OF BEN C. MARTIN
3219 McKinney Ave., Suite 100
Dallas, TX 75204
(214) 761-6614 (phone)
(214)744-7590 (fax)
bmartin@benmartin.com
*Plaintiffs' Co-Lead Counsel*

Michael W. Heaviside, Esq.
HEAVISIDE REED ZAIC
910 17th Street, N.W.
Suite 800
Washington, D.C. 20006
(202) 223-1993
mehaviside@hrzlaw.com
*Plaintiffs' Co-Lead Counsel*

13

David P. Matthews, Esq.
MATTHEWS AND ASSOCIATES
2905 Sackett Street
Houston, TX 77098
(713) 581-8467 (phone)
(713) 535-7184 (fax)
dmatthews@thematthewslawfirm.com
*Plaintiffs' Co-Lead Counsel*

Teresa C. Toriseva, Esq.
TORISEVA LAW
National Road
Wheeling, WV 26003
(304) 238-0066 (phone)
(304) 238-0149 (fax)
ceo@torisevalaw.com
*Plaintiffs' Executive Committee*

Ramon Rossi Lopez, Esq.
LOPEZ MCHUGH, LLP
100 Bayview Circle
North Tower, Suite 5600
Newport Beach, CA 92660
(949) 737-1501 (phone)
(949) 737-1504 (fax)
rlopez@lopez.chugh.com
*Plaintiffs' Executive Committee*

Julie Reed Zaic, Esq.
HEAVISIDE REED ZAIC,
A LAW CORPORATION
312 Broadway Street, Suite 203
Laguna Beach, CA 92651
(949) 715-5120 (phone)
(949) 715-5123 (fax)
Julia@hrzlaw.com
*Plaintiffs' Executive Committee*

Tim K. Goss, Esq.
FREESE AND GOSS, PLLC
John P. Harloe, Ph.D., Esq.
3031 Allen St.
Suite 100
Dallas, TX 75204
(214) 761-6610 (phone)
(214) 761-6688 (fax)
Tim@freeseandgoss.com
John@freeseandgoss.com
*Plaintiffs' Executive Committee*

John A. Dalimonte, Esq.
KARON & DALIMONTE, LLP
85 Devonshire St., Ste. 1000
Boston, MA 02109
(617) 367-3311 (phone)
(617) 742-9130 (fax)
johndalimonte@kdlaw.net
*Plaintiffs' Executive Committee*

Joseph R. Johnson, Esq.
BABBIT, JOHNSON, OSBORNE,
LA CLAINCHE, P.A.
1641 Worthington Road, Suite 100
West Palm Beach, FL 33409
(561) 684-2500 (phone)
(561) 684-6308 (fax)
jjohnson@babbit-johnson.com
*Plaintiffs' Executive Committee*

Thomas William Arbon, Esq.
LAW OFFICE OF BEN C. MARTIN
3219 McKinney Ave., Suite 100
Dallas, TX 75204
(214) 761-6614 (phone)
(214)744-7590 (fax)
tarbon@benmartin.com
*Plaintiffs' Executive Committee*

14

Matthew R. McCarley
FEARS/NACHAWATI LAW FIRM
4925 Greenville Ave, Ste. 715
Dallas, TX 75206
(214) 890-0711 (phone)
(214) 890-0712 (fax)
mccarley@fnlawfirm.com
*Plaintiffs' Executive Committee*

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2016, a copy of the foregoing was served electronically, and notice of service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.

/s/ Joseph N. Williams