UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

---

| | |
|---|---|
| IN RE: COOK MEDICAL, INC. IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

---

This Document Relates to All Actions

---

## THE COOK DEFENDANTS' MEMORANDUM REGARDING BELLWETHER CASE SELECTION FOR TRIAL

Under the current Case Management Plan, the Parties are scheduled to make presentations to the Court in mid-April 2016 as to which Discovery Pool cases they propose be Bellwether cases for trial. [Docket No. 875, Section III.L]. However, as the MDL has grown and discovery has been exchanged, the Parties and Magistrate Judge Baker have discussed the inadequacy of the Discovery Pool established in February 2015 to produce acceptable Bellwether cases for trial, as well as ways in which more meaningful Bellwether cases could be selected. Accordingly, the Cook Defendants now propose that the Court expand the pool from which Bellwether cases may be selected, so that it more accurately represents the alleged failure modes and clinical consequences at issue in this MDL and allows for representative, middle of the road cases to be selected for Bellwether trials. The Cook Defendants also propose that the Court adopt a selection method whereby the Court ultimately selects the Bellwether trial cases, after allowing the Parties to identify and strike outlier cases and make recommendations regarding the remaining cases. The Cook Defendants believe that this selection process can be accomplished in a timely manner and will not result in any delay in the Parties' ability to meet the deadlines set forth in their most recent proposed Case Management Plan. [Docket No. 1188-1].

1

As discussed in detail below, the Cook Defendants strongly believe that the Parties, as well the Court, will be best served by conducting trials for **true** Bellwether trial cases. Thus, the goal for whatever selection process is ultimately adopted by the Court should be to identify a small group of cases that: (1) are representative of the MDL as a whole and (2) include key issues on which the Parties disagree and need the input of a jury (e.g. the value to place on a particular type of alleged device failure and the clinical consequences of that alleged failure mode or the strength of a particular claim or defense). If the cases chosen for Bellwether trials do not meet these two criteria, they are unlikely to serve as any use to the Parties in resolving other cases in the MDL, which is the sole purpose of the Bellwether trial process.

I. <u>IN ORDER TO PRODUCE RELIABLE AND MEANINGFUL INFORMATION, THE CASES SELECTED FOR BELLWETHER TRIALS MUST BE REPRESENTATIVE OF THE MDL.</u>

As currently used in MDL proceedings, Bellwether trials are intended "to provide meaningful information and experience to everyone involved in the litigation." Fallon, E.E., Grabill, J.T., and Wynne, R.P., Proceedings of the Tulane Law Review Symposium: The Problem of Multidistrict Litigation: Bellwether Trials in Multidistrict Litigation, 82 Tul. L. Rev. 2323, 2332 (June 2008) (hereinafter "*Bellwether Trials*"). "[A] case may take on 'bellwether' qualities . . . when it is selected for trial because it involves facts, claims, or defenses that are similar to the facts, claims, and defenses presented in a wider group of related cases. . . . [B]ellwether trials assist in the maturation of disputes by providing an opportunity for coordinating counsel to organize the products of pretrial common discovery, evaluate the strengths and weaknesses of their arguments and evidence, and understand the risks and costs associated with the litigation." *Id*. Ultimately, the goal of the Bellwether trial process is to *precipitate global settlement negotiations* by affording the Parties the opportunity to test the

2

strength of their arguments, particularly in the areas where there is the greatest dispute between them, and establish representative settlement values for categories of cases found within the MDL. *See id.* at 2325.

In order to produce reliable information that can be applied to other MDL cases, the cases selected for Bellwether trials must be representative of the range of cases found within the MDL. MANUAL FOR COMPLEX LITIGATION (FOURTH) § 22.315. Indeed, "[t]he more representative the [Bellwether] cases, the more reliable the information about similar cases will be." *Id.* The purpose of Bellwether trials is not served by simply allowing the Parties to litigate the "best" and "worst" cases contained in the universe of cases in the MDL. *See In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997).

## II. SELECTING FROM THE CURRENT CASES IN THE DISCOVERY POOL WILL NOT RESULT IN BELLWETHER TRIALS BECAUSE THE DISCOVERY POOL IS NOT REPRESENTATIVE OF THE MDL AS A WHOLE.

The original Case Management Plan for this MDL was entered by the Court on November 25, 2014, when there were approximately 33 cases in the MDL. [Docket No. 51]. At that time, it was decided that case-specific discovery would be conducted on ten MDL cases, five selected by each side out of the pool of cases filed by February 16, 2015.[1] [*Id.*, Sections III.B, E]. It was further decided that the Bellwether trials would be selected from that pool of ten cases (the "Discovery Pool"), by a process to be determined at a later date. [*Id.*, Section III.L].

This MDL has changed dramatically since November 2014 when the selection of cases for Bellwether trials was first contemplated. First, from November 2014 to the present, the MDL has grown from 33 cases to nearly 350 cases. Second, through the submission of Plaintiff Profile Forms/Fact Sheets ("PPFs/PFSs"), which have been served by approximately 172 MDL

---

[1] Ultimately, 76 cases were filed by February 16, 2016. Two of those cases, however, were not eligible for consideration for the Discovery Pool because the plaintiffs failed to submit the required discovery forms. [Docket No. 51, Section III.C].

3

Plaintiffs as of February 29, 2016, the Parties have a far better idea of the types of cases (i.e. the alleged device failures and the clinical consequences allegedly resulting therefrom) represented in the MDL.  Third, by conducting case-specific discovery, including deposing the Discovery Pool Plaintiffs and exchanging written discovery, the Parties now have a far better grasp on the alleged device failures and injuries at issue in the Discovery Pool cases.  As a result of these developments, it has become clear that the Discovery Pool is not representative of the MDL as a whole and is incapable of generating meaningful Bellwether cases.

As an initial matter, it is important to note that much of the information regarding the MDL cases is based on self-reporting by the Plaintiffs in the PPF/PFS.  Based on the medical records that the Cook Defendants have reviewed to date, the failure modes and injuries alleged by Plaintiffs in the PPF/PFS are frequently not supported, or are even contradicted, by the medical records.  Thus, the Cook Defendants believe that the incidents of the various alleged device failure modes at issue in this MDL are grossly overstated.  However, even taking the PPFs/PFSs at face value, the information submitted by Plaintiffs reveals the disparities between the MDL as a whole and the Discovery Pool.

The make-up of the MDL is as follows:

| Plaintiffs w/ PPF&PFS = 172 | | Migration | Tilt | IVC Perforation | Fracture | Unable to Retrieve | Bleeding | Organ Perforation | Other |
|---|---|---|---|---|---|---|---|---|---|
| | Totals | 92<br>53% | 75<br>44% | 100<br>58% | 54<br>31% | 83<br>48% | 36<br>21% | 57<br>33% | 69<br>40% |
| Tulip = 41<br>24% | Günther Tulip™ | 16<br>9% | 17<br>10% | 24<br>14% | 7<br>4% | 18<br>10% | 10<br>6% | 12<br>7% | 13<br>8% |
| Celect = 130<br>76% | Celect® | 75<br>44% | 57<br>33% | 75<br>44% | 47<br>27% | 64<br>37% | 25<br>15% | 44<br>26% | 56<br>33% |
| Platinum = 1<br><1% | Celect® Platinum | 1<br><1% | 1<br><1% | 1<br><1% | 0<br>0% | 1<br><1% | 1<br><1% | 1<br><1% | 0<br>0% |

4

In comparison, the make-up of the Discovery Pool is as follows:

| Discovery Pool Plaintiffs = 10 | | Migration | Tilt | IVC Perforation | Fracture | Unable to Retrieve | Bleeding | Organ Perforation | Other |
|---|---|---|---|---|---|---|---|---|---|
| | Totals | **7 70%** | **4 40%** | **7 70%** | **6 60%** | **5 50%** | **2 20%** | **3 30%** | **4 40%** |
| Tulip = 2 20% | Günther Tulip™ | 1 10% | 1 10% | 2 20% | 0 0% | 1 10% | 1 10% | 0 0% | 1 10% |
| Celect = 8 80% | Celect® | 6 60% | 3 30% | 5 50% | 6 60% | 4 40% | 1 10% | 3 30% | 3 30% |

As demonstrated by the foregoing tables, the Discovery Pool is not representative of the MDL as a whole because the alleged device failures of Migrations, IVC Perforation, and Fracture are over-emphasized. Indeed, of the five cases selected by Plaintiffs for the Discovery Pool, 5 (or 100%) allege Migration, 4 (or 80%) alleged Fracture, and 5 (or 100%) allege IVC Perforation, while only 53%, 31% and 58% of all MDL Plaintiffs allege Migration, Fracture, and IVC Perforation, respectively. As a result, the Discovery Pool is skewed to cases involving the alleged device failures that can lead to more severe injuries and does not adequately address the average MDL case.

However, the best evidence that the current Discovery Pool cases are not representative of the MDL as a whole is that the Parties have stated as much. In discussions with the Court, including at the January 8, 2016 status conference, both Plaintiffs and the Cook Defendants have conceded that they selected the 5 cases most favorable to their respective sides when choosing the Discovery Pool. In other words, the Discovery Pool is not representative of the MDL cases "in the middle," but rather consists of 5 "outlier" cases on either side of the bell curve. As pointed out by the Fifth Circuit in *In re Chevron*, trying one of the "best" cases for a side "is not a [B]ellwether trial." 109 F.3d at 1019.

The Discovery Pool cases have been useful to this MDL because they have helped the Parties to better organize discovery and evaluate their legal theories and arguments. Thus, the

5

time that has been devoted to the Discovery Pool cases has been helpful. Moreover, case-specific discovery likely needed to be conducted on these "outlier" cases before the Parties would be in a position to discuss resolution of those particular cases. However, the Cook Defendants believe that the Discovery Pool cases are no longer useful as we move from the discovery stage and toward the Bellwether trial stage of this MDL because they lack the "core element of representativeness" of this MDL as a whole. *See id.* at 1019. Trials of the current Discovery Pool cases will dispose of those individual cases, but they will not meaningfully assist in the resolution of **all** of the cases in this MDL. Accordingly, the Cook Defendants believe it is necessary to both expand the pool of cases from which Bellwether trials are chosen and eliminate the "Parties' choice" as the sole selection method in order to ensure true Bellwether trials for this MDL.

### III. THE COOK DEFENDANTS' PROPOSAL ENSURES THAT THE CASES SELECTED FOR BELLWETHER TRIALS WILL BE USEFUL IN HELPING RESOLVE ALL CASES IN THE MDL.

In order to select true Bellwether trials for this MDL, the Cook Defendants propose that the Court: (1) expand the pool of cases from which Bellwether trials are chosen and (2) utilize a selection method that incorporates some combination of selection by the Court and selection by the Parties.

#### A. The Court Should Select Bellwether Trials from the Pool of Cases that Were Originally Eligible for the Discovery Pool.

Given that the MDL is nearing 350 cases, it would be unworkable for the Parties and the Court to select Bellwether trials from the entire universe of cases in the MDL, particularly since PPFs/PFSs have not been submitted in the most recently filed cases. Thus, the Cook Defendants propose that the Court expand the pool of cases from which Bellwether trials are chosen to the 74 cases from which the Parties selected the Discovery Pool cases (the "Discovery Pool Eligible

6

cases"). All of the Plaintiffs in the Discovery Pool Eligible Cases have submitted PPFs/PFSs and the Cook Defendants have submitted their Defendant Fact Sheets. The Parties are also familiar with all of these cases because each was evaluated for potential inclusion in the Discovery Pool. Moreover, the make-up of the Discovery Pool Eligible Cases, as outlined below, is similar to the MDL as a whole:

| Discovery Pool Eligible = 74 | | Migration | Tilt | IVC Perforation | Fracture | Unable to Retrieve | Bleeding | Organ Perforation | Other |
|---|---|---|---|---|---|---|---|---|---|
| | Totals | 47<br>64% | 25<br>34% | 46<br>62% | 31<br>42% | 26<br>35% | 20<br>27% | 28<br>38% | 29<br>39% |
| Tulip = 14<br>19% | Günther Tulip™ | 6<br>8% | 4<br>5% | 10<br>14% | 3<br>4% | 5<br>7% | 4<br>5% | 4<br>5% | 3<br>4% |
| Celect = 60<br>81% | Celect® | 41<br>55% | 21<br>28% | 36<br>49% | 28<br>38% | 21<br>28% | 16<br>22% | 24<br>32% | 26<br>35% |

While the percentages are not exact, the make-up of the Discovery Pool Eligible cases is much closer to the MDL as a whole than the Discovery Pool. Thus, selecting from this pool of cases, with the selection method described below, will result in representative and meaningful Bellwether trials.

> **B.      The Court Should Utilize a Selection Method that Incorporates Some Combination of Selection by the Court and Selection by the Parties.**

As discussed in *Bellwether Trials*, there are numerous methods for selecting Bellwether trials, with the most common being random selection, selection by the Court, and selection by the parties' attorneys. *Bellwether Trials* at 2362-64. Each selection method on its own has flaws and is open to errors. A purely random selection method removes the parties' attorneys, the people most knowledgeable of the MDL cases, from the process and can result in "one or more major variables identified during discovery" not being represented during the Bellwether trials. *Id.* at 2361-62. Additionally, a purely random selection method can result in cases involving comorbidities being selected for Bellwether trials. As the Honorable Joseph R. Goodwin, U.S.

7

District Court Judge,[2] noted in his Pretrial Order # 51 (Order re: Bellwether Case Selection), entered August 7, 2013, in the In re: Boston Scientific Corp., Pelvic Repair System Product Liability Litigation (attached hereto as Exhibit A), a case where "comorbidities or other circumstances . . . make the plaintiff an outlier or otherwise not representative of the majority of plaintiffs . . . is not a true [B]ellwether case."

Selection by the Court can be burdensome for the Court, as well as for the parties, who would have to advise the Court as to the facts of each potential Bellwether case. *Id.* at 2363. As we have already seen in the selection of Discovery Pool cases, selection by the parties' attorneys can result in the worst situation; where the Bellwether trials are not representative of the MDL as a whole. *Id.* at 2364-65. After considering the advantages and disadvantages of the three selection methods, the Cook Defendants believe that a combination, or hybrid, of selection by the Court and selection by the Parties has the greatest potential to yield true Bellwether trials.[3]

The Cook Defendants believe that there are several different ways in which the Court could successfully combine the two methods suggested by them to yield true Bellwether trials and are not married to any one particular approach. Indeed, the Cook Defendants' primary concern is with the result (*i.e.* true Bellwether trials with outcomes that are useful to the Parties as they attempt to resolve *all* MDL cases), rather than the method by which the result is accomplished. However, the Cook Defendants' proposal is as follows: each side strikes 30 of the 74 Discovery Pool Eligible cases, leaving a pool of 14 cases. The six (6) Bellwether cases would then be selected by the Court from that pool of cases following submissions, or presentations, by the Parties with their recommendations as to which cases should be selected.

---

[2] The Cook Defendants understand that the Court knows Judge Goodwin from recent conferences of all MDL Judges.

[3] The Court has never made a definitive ruling as to the number of Bellwether trials it intends to hold in this matter. In light of the fact that the Parties have previously recommended that the Court hold at least 4 Bellwether trials, the Cook Defendants suggest that the Court select six Bellwether cases to allow for flexibility.

The Cook Defendants believe that since the Parties are most knowledgeable about what constitutes "an average" case in this MDL, they are in the best position to identify the "outlier" cases that cannot serve the purposes of a true Bellwether trial. Striking is a practical, easy, and fair method to eliminate outlier cases from Bellwether contention and arrive at "average" cases that do not favor either side. Moreover, the striking process will leave the Court with a manageable pool of cases from which to select the Bellwether trials. The Cook Defendants believe that the striking process should take no longer than an hour to complete if both sides are well-prepared. Indeed, the Cook Defendants believe that the entire selection process can be accomplished in sufficient time for the Parties to prepare the cases ultimately selected as Bellwethers for trial under the deadlines set forth in their most recent proposed Case Management Plan.

Once the six Bellwether cases have been selected, the Court would set the order in which they are to be tried, with input from the Parties following the Settlement Conference scheduled to take place on June 27-28, 2016. Thus, the Court could prioritize cases which highlight issues where the Parties disagree and need the input of a jury (e.g. the value to place on a particular type of alleged device failure and the clinical consequences of that alleged failure mode or the strength of a particular claim or defense). If a Bellwether case is resolved prior to trial, or if it becomes clear that the case highlights issues where the Parties are *not* in disagreement, the Cook Defendants would also urge the Court to adopt a process by which such case can be replaced as a Bellwether by another Discovery Pool Eligible Case.

### IV. CONCLUSION

For the foregoing reasons, the Cook Defendants respectfully request that the Court adopt a method for selecting cases for Bellwether trials in order to ensure that such trials will be true

9

Bellwethers that will provide the Parties with meaningful information to assist in the resolution of all cases in the MDL. The Cook Defendants do not believe that adoption of their proposed method will cause any delay in these proceedings and the Cook Defendants do not propose enlarging any of the deadlines agreed upon by the Parties in their most recent proposed Case Management Plan.

                              Respectfully submitted,

                              */s/ Douglas B. King*
Douglas B. King, Esq., Lead Counsel
Christopher D. Lee, Esq.
James M. Boyers, Esq.
John C. Babione, Esq.
Sandra Davis Jansen, Esq.
Kip S. M. McDonald, Esq.
WOODEN MCLAUGHLIN LLP
One Indiana Square, Suite 1800
Indianapolis, IN 46204-4208
Tel:    (317) 639-6151
Fax:   (317) 639-6444
doug.king@woodenmclaughlin.com
chris.lee@woodenmclaughlin.com
jim.boyers@woodenmclaughlin.com
john.babione@woodenmclaughlin.com
sandy.jansen@woodenmclaughlin.com
kip.mcdonald@woodenmclaughlin.com

Counsel for the Cook Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2016, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.

*/s/ Douglas B. King*

1385111-1 (10909-0412)