IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

## COOK'S MOTION FOR PROTECTIVE ORDER AND BRIEF

Pursuant to Fed.R.Civ.Pro. 26(c)(1)(A), Cook respectfully moves for a protective order barring discovery concerning Cook's alleged failure to report adverse events associated with its IVC Filters to the United States Food and Drug Administration ("FDA"), in accordance with 21 CFR Part 803 – Medical Device Reporting.

Whether Cook has complied with the numerous FDA regulations that require manufacturers to submit Medical Device Reports ("MDRs") to FDA is not relevant to the central liability question of whether Cook's IVC Filters were defective when those medical devices left Cook's hands.

Moreover, whether Cook complied with the more than fifty (50) separate FDA regulations in 21 CFR Part 803[1] is an issue for FDA, not for this Court, as "[t]he [Federal Food, Drug and Cosmetics Act ("FDCA")] leaves no doubt that it is the Federal Government rather than private litigants who are authorized to file suit for non-compliance with medical device provisions: 'All such proceedings for the enforcement, or to restrain violations, of this chapter shall be and in the name of the United States.' 21 U.S.C. § 337(a)." *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349, n.1 (2001). Consequently, as noted by the Court in *In re*

---

[1] Copies of the FDA regulations in 21 CFR Part 803 are Exhibit "A." A copy of the 47-page Draft FDA Guidance Document on Medical Device Reporting by Manufacturers is Exhibit "B."

1

*Incretin Mimetics Prods. Liab. Litig*, 2014 U.S. Dist. LEXIS 142227, at *1195 (S.D. Cal.), "[t]he judiciary and its litigants are neither the appropriate people nor the appropriate forum for evaluations of compliance with FDA reporting requirements."

On March 11, 2016, Plaintiffs served on Cook a Notice of Taking Rule 30(b)(6) Deposition (the "Notice"), a copy is Exhibit "C." The eight deposition subjects in the Notice show that plaintiffs seek to inquire as to Cook's submissions of MDRs to FDA, as they specifically reference "retroactive[] reporting," "underreport[ing]," and Cook's alleged failure to submit MDRs to FDA. Notice, pp. 7-8. While the Notice prompted this Motion, the Motion goes beyond that Notice to address discovery as to Cook's compliance with 21 CFR Part 803 generally.

On point is *In re Incretin Mimetics Prods. Liab. Litig.*, *supra*; a copy is Exhibit "D." There, as here, "Plaintiffs' motion to compel seeks production of the 'underlying documents for each pre- and post-marketing adverse event known to each defendant; and the adverse event databases maintained by each defendant.'" *Id.*, at *186.

Here, as in *In re Incretin Mimetics*, Cook denies any misreporting or underreporting to FDA. But, here, as there, "[p]laintiffs frequently invoke allegations of misreporting and under-reporting as a justification for additional discovery...." *Id.*, at *188.

Based upon the Supreme Court's policy in *Buckman* as quoted above, the *Incretin Mimetics* Court denied the plaintiffs' request to discover evidence of the defendant's reporting of postmarketing adverse events, reasoning as follows: "[t]o allow discovery, and by extension judicial consideration, of compliance with federal reporting requirements would erode the FDA's role in pharmaceutical regulation and neglect the policy underlying *Buckman*." *Id.*, at *197-198.

That reasoning plainly applies to these medical device cases no less than to the drug case that is *Incretin Mimetics*.

Further support for Cook's Motion can be found in *In re Trasylol Prods. Liab. Litig.*, 763 F. Supp. 2d 1312 (S.D. Fla. 2010); a copy is Exhibit "E." In *Trasylol*, the Court granted the Bayer defendants' motion *in limine* to preclude the plaintiffs from arguing or proffering evidence that the defendant failed to properly report adverse events to FDA, *id.*, at 1316, reasoning as follows, at 1317:

> [T]he only possible reason for plaintiffs to introduce such evidence would be to argue to the jury that FDA would have reached a different decision regarding warnings or labeling for [the drug] if [the defendant] had provided more timely or "better" information. But what FDA may have done, if anything, with different data and how that information may have ultimately affected [the drug's] regulatory status, if at all, is precisely the type of speculation *Buckman* and Rule 403 prohibit.

The *Trasyolol* Court held that, "evidence or testimony that the defendant failed to adequately or timely provide information to FDA [is] relevant to a fraud-on-the-FDA claim that is preempted by *Buckman*." *Id.*, at 1329-30, rejecting the plaintiffs' arguments that (1) *Buckman* applies to preclusion of a claim, not evidence; (2) evidence of violations of FDA reporting requirements is evidence of fraudulent concealment and negligence; and (3) that, as plaintiffs argue here, evidence of Bayer's failure to report adverse events to FDA would "'show that Bayer acted negligently in failing to properly disclose information to the FDA, **the medical and scientific communities**, and to the public.'" *Id.*, at 1317 (emphasis added). *See also Bouchard v. Am. Home Prods. Corp.*, 213 F. Supp. 2d 802, 811-12 (N.D. Ohio 2002); *Swank v. Zimmer*, 2004 U.S. Dist. LEXIS 30376, at *5-6 (D. Wyo.); *In re Bextra and Celebrex Mktg., Sales Practices and Prod. Liab. Litig.*, No. MDL 05-01699 CRB (N.D. Cal. 2008); *Miller v. DePuy Spine, Inc.*, 638 F. Supp. 2d 1226 (D. Nev. 2009).

The *Trasyolol* court thus rejected the plaintiffs' argument here that what Cook tells FDA is relevant to what it tells doctors. Cook does not seek to prevent discovery by Plaintiffs intended to show that Cook knew of risks associated with its IVC Filters that it failed to disclose to the physicians who implant those filters. Nor does Cook seek to preclude Plaintiffs' discovery of Cook's own post-market surveillance system, i.e., Cook's monitoring and trending of adverse events that are **reported to Cook** for purposes of Cook's assuring the quality of its IVC Filters. Cook seeks only to bar discovery of what it does or does not tell FDA.

Plaintiffs assert that Cook's reporting to FDA is discoverable because it affects FDA's MAUDE database. But, that database is **FDA's**, not Cook's. Per the Honorable Joseph R. Goodwin, District Judge, the defendant's "communication, or alleged lack thereof, with the FDA through the MAUDE database has 'no bearing on whether [the defendant] provided adequate warnings or whether its products were defective. . . .'" *Winebarger v. Boston Sci. Corp.*, 2015 U.S. Dist. LEXIS 53892, at *65-66 (S.D. W. Va.) (citation omitted); a copy is Exhibit "F."

> The MAUDE system is a "passive surveillance system" that does not account for the "potential submission of incomplete, inaccurate, untimely, unverified, or biased data. . . ." FDA warns users that the [MAUDE] data alone "cannot be interpreted or used in isolation to reach conclusions about the existence, severity, or frequency of problems associated with devices."

*Id.*, at *66-67 (citations omitted, but quoting FDA).

Plaintiffs have cited Case Management Order No. 10 in *In Re Bard IVC Products Liability Litigation*, USDC, D. Ariz., No. MDL 15-02641-PHX-DGC; a copy is Exhibit "G." What makes the *Bard* Order different is that Bard had received an "FDA warning letter" (*see* p. 3 of the Order), whereas Cook has not. There is a significant difference between discovery of evidence concerning FDA regulation violations for which FDA has taken action, in Bard's case by issuing a warning letter, and alleged FDA regulation violations for which FDA has not taken

action, as here, as the former does not require jury speculation while the latter does. That distinction is important, as the *Trasylol* Court barred Plaintiffs from presenting evidence concerning Bayer's alleged FDA **reporting** violations, but allowed Bayer's evidence that it received FDA's approval to market Trasylol, as "compliance with regulatory requirements provides some evidence that the defendant acted with due care, . . . **requires no speculation** and . . . presents no tension with *Buckman* because the jury is not asked to second-guess the FDA's actual decisions, speculate about its actions or interfere with its judgment." *Trasylol*, 763 F. Supp. 2d at 1319 (emphasis added). Moreover, as noted above, Cook does not deny that its "[a]ctual failure rates" are fair game for discovery, as are its "representations made by [it] concerning future rates" **to physicians**, which is what the Arizona District Court found discoverable in its *Bard* Order, p. 3. What is not is what fair game are the representations Cook made to FDA in its MDRs or lack thereof. *See In re Incretin Mimetics*; *In re Trasylol*; *Wineberger v. Boston Scientific*.

Based on the foregoing, discovery of Cook's reporting to FDA is not proportional to the needs of the case, considering the importance of the discovery in resolving central liability in this case of whether Cook's IVC filters are somehow defective, and the burden and expense of the proposed discovery outweighs its likely benefit. *See* Fed.R.Civ.Pro. 26(b)(1). Allowing discovery as to whether Cook has complied with 56 arcane FDA regulations explained by FDA in a 47-page Guidance would allow the sideshow to consume the circus. Cook is therefore entitled to a Protective Order under Fed.R.Civ.Pro. 26(c)(1)(A).

*s/ Douglas B. King*
Douglas B. King, Esq.
James M. Boyers, Esq.
Christopher D. Lee, Esq.
John C. Babione, Esq.
Sandra L. Davis, Esq.
Kip S. M. McDonald, Esq.
Doug.King@WoodenMcLaughlin.com
Jim.Boyers@WoodenMcLaughlin.com
Chris.Lee@WoodenMcLaughlin.com
Kip.McDonald@WoodenMcLaughlin.com
Sandy.Jansen@WoodenMcLaughlin.com

Counsel for Cook Defendants

WOODEN McLAUGHLIN LLP
One Indiana Square, Suite 1800
Indianapolis, IN 46204-4208
Tel:   (317) 639-6151
Fax:   (317) 639-6444

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2016, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.

*/s/ Douglas B. King*

1445133-1 (10909-0412)