**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

IN RE COOK MEDICAL, INC. IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION

Case No: 1:14-ml-2570-RLY-TAB
MDL No. 2570

This Document Relates to All Actions

**PLAINTIFFS' OPPOSITION TO COOK'S MOTION FOR PROTECTIVE ORDER**

Plaintiffs have discovered compelling evidence of Cook's volitional practice of withholding from public reporting and scrutiny its foreign adverse events (i.e., "complaints") related to its IVC filters. Cook now seeks, by means of a protective order, to perpetuate that practice. Known complaint data[1] related to a manufacturer's product is required to be reported to the FDA. 21 C.F.R. §803.3. That data then populates the publicly available MAUDE[2] database run by the FDA. Cook actively uses this data as a sales and marketing tool to distinguish its devices' performance from its competitors' in order to gain competitive advantage and to influence the preferences and opinions of implanting physicians. (*See*, Ex. 1, at CookMDL2570_0200623, e.g., "[REDACTED] [REDACTED]"). By withholding a significant portion of complaints it receives about deaths and serious injuries related to its devices, Cook knowingly presents false information regarding the safety profile of its filters to physicians and the public, and uses this false information as both a promotional tool, and in the labelling of its IVC products; supporting Plaintiffs' claims for failure to warn, negligence, fraud, misrepresentation, fraudulent

[1] Including deaths, serious injuries and malfunctions

[2] "Manufacturer and User Facility Device Experience – Each year, the FDA receives several hundred thousand medical device reports (MDRs) of suspected device-associated deaths, serious injuries and malfunctions…. The MAUDE database houses MDRs submitted to the FDA by mandatory reporters (manufacturers, importers and device user facilities) and voluntary reporters such as health care professionals, patients and consumers." https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfmaude/search.cfm

concealment, product defect and punitive damages. Also Cook intends to rely on the learned intermediary defense in this litigation yet it seems axiomatic that misinformation conveyed to implanting physicians defeats the ability to engage in a full and fair disclosure regarding the potential risks and benefits of the product.

Making a bare allegation of lack of relevance is an inappropriate objection in the discovery process. Rule 26 allows parties to discover any information, not privileged and relevant to claims made. F.R.C.P 26(b)(1). The definition of relevance under Rule 401 is broad, yet the standard for the breadth of discovery is broader. *Johnson v. Jung*, 242 F.R.D. 481, 482-83 (N.D.Ill.2007)(citing *Hofer v. Mack Trucks*, 981 F.2d 377 (8th Cir.1992)). A court may enter a protective order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense. But the party seeking that protection bears the burden to show good cause. F.R.C.P. 26(c)(1) ; *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir.1994). Cook makes no argument here to satisfy that burden to withhold the discovery Plaintiffs seek. Instead, it shrouds its arguments behind claims of preemption for which there are no allegations in the Master Complaint for "Fraud on the FDA". This is a discovery dispute probative of Plaintiffs' claims as it relates to the underreporting of complaints which skews the public database upon which Cook encourages reliance.

On July 12, 2011, FDA requested additional information concerning a complaint reported by Cook of a perforated vena cava, retroperitoneal bleed, and death in the presence of a Celect Filter. (*See,* Ex. 2, at CookMDL2570_0198489-491). FDA also sought all other related MDR[3] numbers and the reason for their inclusion in the trending of the complaints. (*See,* Ex. 2,

[3] Medical Device Reportable event, 21 C.F.R. §803.3, "An event that manufacturers… become aware of that reasonably suggests that one of their marketed devices; (i) May have caused or contributed to a death or serious injury, (ii) Has malfunctioned and that the device or a similar device marketed by the manufacturer or importer would be likely to cause or contribute to a death or serious injury if the malfunction were to recur."



CookMDL2570_0198489, at #2). While responding, it became apparent to a Cook employee that

).

When an internal inquiry asked whether the filters , the response was:

> " ." (*See*, Ex. 2, at CookMDL2570_0199010)(emphasis added).

Cook proceeded to create (catalogue numbers with "-1" and "-2"), and the ("-1" only). The second version was eventually sent to the FDA. (*See*, Ex. 2, at CookMDL_2570_0199011). Cook's consensus: " …" *See*, Ex. 2, at CookMDL2570_0199011).

Plaintiffs' review of complaint files produced to date reveal that even after this revelation in 2011, not only has Cook failed to report any complaint reports related to the IGTCFS-65-**2**-FEM/JUG/UNI-CELECT filters, Cook rarely, if ever, reports complaints involving its Gunther

Tulip or Celect Filters if they occur outside the U.S., regardless of the filters being the same. In fact, Cook has produced approximately 800 unique complaint numbers from its Trackwise database[4] (launched in 2008), yet through December 2015 there have only been approximately 430 complaints reported in the MAUDE database for Celect, Gunther Tulip and Platinum Celect filters. With this magnitude of discrepancy, Plaintiffs seek discovery on Cook's underreporting practices. Plaintiffs' 30(b)(6) notice includes subjects such as Cook's policy with regard to reporting foreign complaints to FDA/MAUDE, its policies/procedures for ensuring appropriate communication regarding its complaints that do not appear in MAUDE, etc. This is particularly relevant since Cook utilizes the MAUDE complaint data to promote its filters over its competitors' filters, knowing it is not the "[REDACTED]". (*See*, Ex. 2, at CookMDL2570_0199013). As early as April 2004, an email to a sales team, including those in foreign countries, [REDACTED]. (*See*, Ex. 3, at IVC00001324). The practice continued with more emails to the sales force encouraging them [REDACTED]. (*See*, Ex. 4, at CookMDL2570_0332045).

Cook seeks to prevent Plaintiffs' discovery efforts yet its reliance on *In re: Incretins Mimetics* and *In Re Trasylol* litigations is misplaced. The *Incretins* litigation was limited in discovery to preemption and general causation issues only. *In Re Incretins Mimetics*, 2014 U.S. Dist. LEXIS 142227 (S.D. Cal.). The opinion clearly states so, and a copy of the limiting order in that litigation is attached hereto as Exhibit 5. This court has not imposed such discovery limitations here and therefore Plaintiffs ability to discover facts relevant to their claims is as

[4] Cook's Trackwise database only went online in 2008, so the number of complaints produced versus the number reported publicly is likely higher since we have not accounted for the first four years the Gunther Tulip was on the market.

broad as Rule 26 allows. Cook similarly misplaces its reliance on the decision in *In re: Trasylol* which was a ruling on a motion *in limine* when discovery was closed and admissibility of discovered evidence was in dispute. *In Re Trasylol Prods. Liab. Litig*., 763 F. Supp. 2d 1312 (S.D. Fla. 2010). Similarly, *Winebarger v. Boston Scientific Sci. Corp*. was also a decided during the *Daubert* stage of litigation and criticizes MAUDE as lacking a scientific basis if used alone; not an applicable comparison here. 2015 U.S. Dist. LEXIS 53892 (S.D. W. Va.). Despite the fact that FDA runs MAUDE, Cook knowingly withholds complaint data from it then uses its own numbers in the database to sway doctors away from its competitors. Cook is welcome to make its *in limine* arguments at the appropriate time, but to bar discovery of relevant evidence before then is improper and would irreparably prejudice Plaintiffs.

Defendants similarly misplace reliance on its argument regarding *Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341 (2001).* Plaintiffs have made no fraud-on-the-FDA claims that might prompt this Court to enter orders that would conflict with the Congressional scheme of the FDCA. *Buckman* has no bearing on the scope of discovery at issue here; it is a claim preemption case focusing on fraud-on-the-FDA claims, not evidence preclusion or discovery orders. *In re Yasmin and YAZ*, 2011 WL 6302287 at *11 (S.D. Ill. Dec. 16, 2011). *See also*, *Mason v. SmithKline Beecham Corp*., 596 F.3d 387, 390 (7th Cir. 2010). In so much as the *In re Incretins* court addressed preemption, it was impossibility preemption[5] as opposed to the implied preemption Cook seems to argue as a basis for barring discovery.

Moreover, these exact issues have been addressed in a parallel IVC filter litigation where allegations of underreporting adverse events came to light. Cook's point that the underreporting

[5] Impossibility preemption has only been granted in three cases, all prescription drug cases, and where it was deemed that the label change suggested by plaintiffs would have been rejected by the FDA. *Dobbs v. Wyeth Pharms*., 797 F. Supp 2d 1264 (W.D. Okla. 2011); *Glynn v. Merck Sharp & Dohme Corp.*, 951 F. Supp 2d 695 (D.N.J. 2013), *In re: Incretin-Based Therapies Products Liability Litigation*, 2015 WL 6912689.(Nov. 9, 2015).

issue in the Bard litigation was due to a FDA warning letter is a distinction without a difference. It seems that the FDA is unaware of Cook's extreme underreporting dilemma, and regardless of FDA's knowledge, the fact is Cook seeks to bar discovery from the Plaintiffs on these matters, which, as Judge Campbell opined "The Court views discovery related to under-reporting or non-reporting of problems with retrievable filters to be clearly relevant to this case. Actual failure rates will be relevant to Plaintiffs' negligence and product defect claims. Evidence regarding representations made by Defendants concerning failure rates will be relevant to Plaintiffs' claims for fraud and misrepresentation." *In Re: Bard IVC Products Liability Litigation*, USDC, D. Ariz., No. MDL 15-02641-PHX-DGC.

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Cook's motion for a protective order barring all discovery related to its underreporting practices.

Respectfully Submitted,

RILEY WILLIAMS & PIATT, LLC

/s/ Joseph N. Williams
Joseph N. Williams, Atty. No. 25874-49
301 Massachusetts Avenue
Indianapolis, IN 46204
(317) 633-5270
Fax: (317) 426-3348
Email: jwilliams@rwp-law.com

*Plaintiff's Liaison Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of April, 2016, a copy of the foregoing was served electronically and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. A copy of the foregoing was also served via U.S. Mail to the following non-CM/ECF participants:

David Carl Anderson
ANDERSON LAW
711 Van Ness Avenue, Suite 220
San Francisco, CA 94102

Justin Kyle Brackett
TIM MOORE, ATTORNEY AT LAW, P.A.
305 East King St.
Kings Mountain, NC 28086

David J Britton
LAW OFFICE OF DAVID J BRITTON
2209 North 30th Street, Suite 4
Tacoma, WA 98403

George Jerre Duzane
DUZANE, KOOPERMAN & MONDELLI
603 Woodland Street
Nashville, TN 37206-4211

Richard A. Freese
LANGSTON SWEET & FREESE PA
The Morgan Keegan Center
2900 Highway 280 Suite 240
Birmingham, AL 35223

Jay Harris
HARRIS, RENY & TORZEWSKI
3rd Floor
Two Maritime Plaza
Toledo, OH 43604

Joseph A. Napiltonia
LAW OFFICE OF JOE NAPILTONIA
213 3rd Avenue North
Franklin, TN 37064

Patrick M. Regan
REGAN ZAMBRI & LONG PLLC
1919 M. St. NW, Suite 350
Washington, DC 20036

Marian S. Rosen
ROSEN & SPEARS
5075 Westheimer, Suite 760
Houston, TX 77056

W. Bryan Smith
MORGAN & MORGAN, LLC
2600 One Commerce Square
Memphis, TN 38103

Mark A. Tate
TATE LAW GROUP, LLC
2 East Bryan Street, Suite 600
P. O. Box 9060
Savannah, GA 31412

Anthony James Urban
LAW OFFICES OF ANTHONY URBAN, P.C.
474 N. Centre Street, 3rd Floor
Pottsville, PA 17901

Brian James Holmes
HURLEY MCKENNA & MERTZ, P.C.
33 N. Dearborn Street, Suite 1430
Chicago, IL 60602

Wilnar Jeanne Julmiste
ANDERSON GLENN LLP
2201 NW Corporate Blvd, STE 100
Boca Raton, FL 33431

Cliff W. Marcek
CLIFF W. MARCEK, P.C.
700 S. Third St.
Las Vegas, NV 89101

Brian J. Urban
LAW OFFICES OF ANTHONY URBAN, P.C.
474 N. Centre Street, 3rd Floor
Pottsville, PA 17901

Peter C Wetherall
WETHERALL GROUP, LTD.
9345 W. Sunset Road, Suite 100
Las Vegas, NV 89148

Corrie Johnson Yackulic
CORRIE YACKULIC LAW FIRM PLLC
315 5th Avenue South, Suite 1000
Seattle, WA 98104-2682

*/s/ Joseph William*
Joseph N. Williams