UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

This Document Relates to All Actions

## THE COOK DEFENDANTS' BRIEF IN SUPPORT OF MAINTAINING DOCUMENTS UNDER SEAL

On April 19, 2016, Plaintiffs filed their Response in Opposition to the Cook Defendants' Motion for a Protective Order and Brief ("Plaintiffs' Response") [Docket No. 1366], submitting documents in support designated as "Confidential" by Cook, pursuant to Case Management Order #8 (Stipulated Protective Order on Confidential Information). In accordance with Local Rule 5-11(d)(2)(A)(ii), Plaintiffs filed those Confidential documents (Plaintiffs' Exhibits 1–4), as well as the unredacted version of their Response containing references to Confidential information within the documents [Docket No. 1367], under seal. As the designating party, Cook now files this Brief in Support of Maintaining Documents under Seal.

**I.   APPLICABLE LEGAL STANDARD**

The Seventh Circuit has long provided that documents that "meet the definition of trade secret or other categories of bona-fide long-term confidentiality" may be maintained under seal. *Baxter Internat'l, Inc. v. Abbot Laboratories*, 297 F.3d 544, 546 (7th Cir. 2002). Under Indiana law, "a protectable trade secret has four characteristics: (1) information; (2) which derives independent economic value; (3) is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (4) is the

subject of efforts reasonable under the circumstances to maintain its secrecy." *Hamilton v. State Farm Mut. Auto. Ins. Co.*, 204 F.R.D. 420, 423 (S.D. Ind. 2001) (citations omitted).

## II. THE CONFIDENTIAL DOCUMENTS THAT THE COOK DEFEDANTS CONTEND SHOULD BE MAINTAINED UNDER SEAL.

**Exhibit 1** is an internal company email[1] with an attached "Competitor Grid." The Competitor Grid [CookMDL2570_0200622–629], which is utilized by Cook's sales team, details the various IVC filters manufactured by Cook's competitors, analyzes the strengths and weaknesses of each IVC filter, and offers strategies for speaking with physicians about each IVC filter in comparison to Cook's IVC filters. The Competitor Grid is stamped with the following on each page: "Company confidential. For internal training purposes only. Do not copy. Not for external distribution."

**Exhibit 2** includes an internal company email chain [CookMDL2570_0199010–014] discussing strategies for how best to respond to a request for information from the United States Food and Drug Administration ("FDA"), and two draft versions of possible responses for Cook to use to respond to FDA's request which is discussed in the email chain [not Bates-stamped, pages 10-17 of Exhibit 2]. The request from the FDA [CookMDL2570_0198489–490] and the adverse event report [CookMDL2570_0198491–492] referenced in the FDA's request are also included. On February 16, 2016, Cook advised Plaintiffs via email that it will remove the "Confidential" designation as to CookMDL2570_0198489–492, FDA's request for information [CookMDL2570_0198489–490] and the Adverse Event Report [CookMDL2570_0198491–492]. Accordingly, Cook does not object to these specific documents being unsealed, to the extent the Court believes it is necessary.

---

[1] The email [CookMDL2570_0200620–621] itself is not substantive and does not contain any trade secret information. Thus, Cook does not object to it being unsealed. However, Plaintiffs do not specifically cite to this Bates-stamped page in their Response, so the Court may find that it is unnecessary to make it publically available.

**Exhibit 3** is an internal company email [IVC00001324–325] discussing competitive information about two IVC filters manufactured by Cook's competitors and strategies for utilizing that information with the physicians with whom Cook's sales force interact in order to market the Cook's IVC filters.

**Exhibit 4** is an internal company email chain [CookMDL2570_0332044–049] discussing an FDA communication[2] regarding IVC filters and strategies for addressing same with the physicians with whom Cook's sales force interact in order to market Cook's IVC filters.

### III.   GOOD CAUSE EXISTS TO MAINTAIN THE DOCUMENTS UNDER SEAL.

Good cause exists to maintain Exhibits 1–4 under seal. The documents contained therein constitute protectable trade secrets and Cook would face economic harm if such material were to be made publically available. Redaction is not a viable option because it would not afford Cook adequate protection. As explained above, the documents at issue do not merely contain discrete pieces of trade secret material that can be redacted. Rather, the documents in their entirety constitute trade secret material.

#### A.   **Exhibits 1, 3, and 4**

The documents in Exhibits 1, 3, and 4 all discuss strategies for dealing with the physicians with whom Cook's sales force interact in order to market Cook's IVC filters. Cook plainly derives independent economic value from these strategies because they help it better market its IVC filters and, ultimately, stay in business. These strategies have been developed by Cook and are not generally known or readily ascertainable by proper means by individuals who could obtain economic value from their disclosure. Cook has taken reasonable efforts to maintain the secrecy of these documents because internal company emails such as these are not

---

[2] Cook does not contend that the FDA communication itself [CookMDL2570_0332047–049] is confidential and does not object to that portion of the email chain being unsealed. The Court may find this to be unnecessary, however, since Plaintiffs do not cite to these specific pages in their Response.

shared with outsiders and the "Competitor Grid" is clearly marked as "Company confidential." Cook would face economic harm if these documents were to fall into their hands of its competitors. Not only would Cook's competitors gain the benefit of Cook's analysis of each IVC filter available on the market, they would also be able to anticipate, and therefore better counter, the strategies Cook utilizes to "sell against" its competitors' IVC filters. The documents in Exhibits 1, 3, and 4 thus meet the definition of a protectable trade secret and should be maintained under seal to protect the Cook Defendants from economic harm. *See, e.g., In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.,* 2011 U.S. Dist. LEXIS 130610, at *14 (S.D.Ill.) ("non-public marketing plans are confidential information, properly subject to protective orders. * * *" [citations omitted]).

**B.    Exhibit 2**

The documents in Exhibit 2 are internal discussions of strategies for how best to comply with the complicated regulatory reporting requirements of the Federal Food, Drug, and Cosmetics Act (the "FDCA"), including the 56 separate regulations in 21 CFR Part 803 – Medical Device Reporting, which the FDA has tried to explain to Cook and their competitors in a 47-page Draft FDA Guidance Document on Medical Device Reporting by Manufacturers.[3] Cook derives independent economic value from these strategies because its ability to continue to be able to market the IVC filters is dependent, at least in part, on its ability to comply with the FDCA. The specifics of how Cook interprets and applies FDA regulations with respect to its IVC filters is not generally known, nor is such information readily ascertainable by proper means by individuals who could obtain economic value from the disclosure of such information. Cook has taken reasonable efforts to maintain the secrecy of these documents because internal

---

[3] Copies of 21 CFR Part 803 – Medical Device Reporting and the Draft FDA Guidance Document on Medical Device Reporting were previously provided to the Court by the Cook Defendants. [Docket Nos. 1329-1 and 1329-2].

company emails such as these are not shared with outsiders, nor are draft communications from Cook Defendants to the FDA.  Cook would face economic harm if these documents were made available to its competitors, because those competitors would then be able to utilize the strategies that Cook has developed, without having to expend the time and resources that Cook had to in order to develop those strategies.  Accordingly, the documents in Exhibit 2 meet the definition of a protectable trade secret and should be maintained under seal to protect Cook from economic harm.  *See Bayer Healthcare, LLC v. Norbrook Labs, Ltd.*, No. 08-C-0953, 2009 U.S. Dist. LEXIS 105078, at *3 (E.D. Wis. Oct. 22, 2009) (finding good cause to seal "internal proprietary emails . . . containing commercial information and strategy related to the filing of [an abbreviated new animal drug application] with the FDA").

Moreover, this Court has found that the public interest in the disclosure of confidential information is not strong where the material "is unlikely to be critical to the substantive issue of liability." *OneAmerica Fin. Partners, Inc. v. T-Sys. N. Am.*, Inc., No. 1:15-cv-01534-TWP-DKL, 2016 U.S. Dist. LEXIS 29965, at *16 (S.D. Ind. Mar. 9, 2016) (quoting *In re Google Inc. Gmail Litig.*, 2013 U.S. Dist. LEXIS 138910, at *13 (N.D. Cal. Sept. 25, 2013)).  The documents in Exhibit 2 deal solely with the Cook Defendants' reporting of adverse events associated with their IVC filters to the FDA, in accordance with 21 CFR Part 803 – Medical Device Reporting.  As explained in Cook's Motion for Protective Order and Brief [Docket No. 1329], whether Cook has complied with the numerous FDA regulations that require manufacturers to submit Medical Device Reports ("MDRs") to FDA is not relevant to the central liability question of whether Cook's IVC filters were defective when those medical devices left Cook's hands.  While Cook recognizes that the Court denied Cook's motion for a protective order yesterday, the Court did not thereby hold such alleged evidence admissible, noting that "[w]hile Cook will undoubtedly

raise . . . arguments in this case [similar to those made by the defendant Bayer in *Trasylol* that "whether Bayer provided inadequate information to the FDA" is inadmissible at trial], they are appropriately presented at a later stage in this litigation." Discovery Order (Document No. 1511), at p. 3. Instead, what the Court held is that "[t]he discovery sought by Plaintiffs is not so far afield that the Court can say with certainty at this juncture it will not be admissible at trial." *Id.*

Respectfully, while the Court said in its Discovery Order that, "Cook does not deny under-reporting information to the FDA, like the defendant in *Incretin*," Discovery Order, pp. 2-3, Cook *expressly* stated in Cook's Motion for Protective Order and Brief [Document No. 1329], that, "[h]ere, as in *In re Incretin Mimetics*, Cook **denies** any misreporting or under-reporting to FDA," (emphasis added here).

As the Court correctly predicted in its Discovery Order, Cook will file a motion *in limine* seeking to bar evidence of any ***alleged*** misreporting or under-reporting to FDA at trial, relying on *inter alia*, *In re Trasylol Prods. Liab. Litig.*, 763 F.Supp 2d 1312 (S.D. Fla. 2010) and the other authorities cited Cook's Motion for Protective Order and Brief, pp. 2-5 of 7, Page ID #4882-4885 (Document 1329). Thus, it is unlikely that the documents in Exhibit 2 will ever be critical to the substantive issues of liability in this MDL and the public, therefore, has little interest in their disclosure. This further supports Cook's contention that Exhibit 2 should be maintained under seal.

### C.     Plaintiffs' Response

In their Response, Plaintiffs paraphrase or directly quote the documents in Exhibits 1–4 on several occasions. As demonstrated above, the paraphrased or quoted material meets the definition of a protectable trade secret and should not be disclosed to the public. Cook believes

that the redactions made by Plaintiffs in the version of the Response that is currently publically available [Docket No. 1366] are appropriate and adequately protect the Cook Defendants while serving the Court's interest of open judicial proceedings. Accordingly, Cook requests that the unredacted version of Plaintiffs' Response [Docket No. 1367] be maintained under seal, while the redacted version continues to be publically available.

### IV.  CONCLUSION

For the foregoing reasons, Cook respectfully requests that the Court issue an Order directing the Clerk to maintain the documents in Docket No. 1367 (the unredacted version of Plaintiffs' Response and Plaintiffs' Exhibits 1–4) under seal. During the telephonic oral argument on Cook's motion for protection order, and in correspondence before that, Plaintiffs' Co-Lead Counsel indicated that Plaintiffs oppose Cook's request to maintain these documents under seal. *See* Local Rule 5-11(d)(e)(3).

Respectfully submitted,

*/s/Douglas B. King*
Douglas B. King, Esq., Lead Counsel
Christopher D. Lee, Esq.
James M. Boyers, Esq.
John C. Babione, Esq.
Sandra Davis Jansen, Esq.
Kip S. M. McDonald, Esq.
WOODEN MCLAUGHLIN LLP
One Indiana Square, Suite 1800
Indianapolis, IN 46204-4208
Tel: (317) 639-6151
Fax: (317) 639-6444
doug.king@woodenmclaughlin.com
chris.lee@woodenmclaughlin.com
jim.boyers@woodenmclaughlin.com
john.babione@woodenmclaughlin.com
sandy.jansen@woodenmclaughlin.com
kip.mcdonald@woodenmclaughlin.com

*Counsel for the Cook Defendants*

*Counsel for the Cook Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on May 13, 2016, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

*/s/Douglas B. King*