UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br><br>MDL No. 2570 |
| This Document Relates to All Actions | |

# Plaintiffs' Opposition to Cook's Case Management Plan Regarding Coordination with Other Litigation

COME NOW all Plaintiffs in the above-styled proceedings and file this, Plaintiffs' response in opposition to the Motion and Brief in Support of Case Management Plan Regarding Coordination with State Court Litigation that was put forth by the Cook Defendants (hereinafter "Coordination Proposal"). Plaintiffs would respectfully show the Court that Cook's Coordination Proposal should be denied for the following reasons:

## I.
## INTRODUCTION

Coordination is both an *action* and a *principle*. By Cook's own admission, the present Coordination Proposal "contemplates, at this stage, only the general directive to work toward coordination and open communication" between the federal and state courts. [Coordination Proposal, p. 3]. As such, it seeks an unnecessary order restating what Cook admits is already reflected in the Court's prior Case Management Plans and in the parties' Agreements: that some level of coordination is desirable *in principle.*

1

Where the rubber meets the road is when the *principle* of coordination must be put into *specific action*.  Cook, as a defendant in both this Court and the state forums, sees broad coordination as a means to increase convenience for itself.  Yet, there are other concerns – including respect for due process, avoidance of delay, offsetting inefficiencies caused by coordination, the problems of compromising state laws to achieve efficiencies, recognition that parallel state court actions can aid the overall litigation, and allowing each Plaintiff their day in court – which may counsel against having state court actions yield to federal litigation.

Rather than entering an overarching coordination order that is both unnecessary and subject to being misconstrued, Plaintiffs would suggest the better approach is to address specific coordination matters as they arise in the litigation. Indeed, the Court and the parties have already taken reasonable and appropriate steps toward coordination without the need for a general coordination order. For instance, there is already a Case Management Order in place addressing the use of MDL discovery products by state court litigants.  [Coordination Proposal, p. 2].   To the extent Cook intends the "coordinated discovery" to extend to a broader range of matters (e.g. joint discovery rulings), those acts of coordination should be *specifically* raised so that the parties may examine variances in applicable state laws and the Court may weigh the relative advantages and disadvantages of the particular acts of coordination within their proper context.  For the reasons stated herein, Plaintiffs urge the Court to deny Cook's non-specific request for an overbroad and unnecessary coordination order.

## II.
## ARGUMENT AND AUTHORITIES

**A.     The Federal MDL Court Lacks Authority to Order Specific Acts of Coordination By State Courts.**

The Cook IVC litigation, like many complex litigations, involves a significant number of related cases brought by plaintiffs in both state and federal courts. It is undisputed that no single forum has jurisdiction or authority over the full array of Cook IVC Filter cases. And, while federal cases may be consolidated before a single court via the MDL process, no formal mechanism exists for the federal MDL court to exercise control over related cases pending in the state courts. *See* 2 Bus. & Com. Litig. Fed. Cts. § 15.6 (3d Ed., Nov. 2015). Instead, under our federalist system, state and federal courts generally operate independently of one another. Attempts by one court to exert control over proceedings in a parallel court are impermissible because they exceed the authority of the court.

**B.     Cook's Coordination Proposal Fails to Consider the Potential Disadvantages of Coordination to the Judiciary and to Plaintiffs -- Which Outweigh the Touted Efficiencies of Coordination for Cook.**

Absent judicial authority to mandate coordination, any plan for coordination between state and federal courts must inspire voluntary cooperation from state judges and litigants by offering a vision for maximizing the efficiencies of centralization while still maintaining the benefits of local proceedings. Cook is quick to tout the convenience benefits it expects to receive through coordination. Yet, there are other concerns – including respect for due process, avoidance of delay, offsetting inefficiencies caused by coordination, the problems of compromising the fullness of

3

state laws to achieve efficiencies, recognition that parallel state court actions can aid the overall litigation, and allowing each Plaintiff their day in court -- which are equally important. In many circumstances, consideration for these factors counsel against having state court actions yield to federal litigation.

- <u>Respect for Due Process</u>: Litigants in both the state and federal court systems have a right to fair treatment and application of the laws. When state court judges alter their anticipated role as a fully independent actor because of perceived needs for judicial coordination, the plaintiffs' expectations regarding the applicable law, standards and procedural rules for their case may be thwarted.

- <u>Avoidance of Delay</u>: Cook has repeatedly cited the convenience and efficiency benefits that it perceives from coordination. Yet, the practical realities of requiring courts and litigants to consult with counterparts in multiple jurisdictions before each step of the litigation, in and of itself, introduces an offsetting layer of inefficiency. Moreover, if the unspecified degree of coordination sought by Cook were to extend beyond mere communication into seeking joint management on matters of litigation strategy or substantive legal determinations the potential for delay would increase exponentially due to the need to coordinate multiple schedules and the time necessary to reach a consensus among disparately-situated plaintiffs and their counsel.

- <u>Speed of Resolution for Individual Cases</u>: Because there are fewer mass tort cases pending in each state court, state court actions are often able to move

faster to resolve an individual case than their federal counterparts. As compared to a case filed in state court, the lengthy processes of: (1) aggregating and transferring claims to an MDL for pretrial management, (2) undertaking collective pretrial proceedings in the MDL court, (3) remanding claims to district courts for trial, and (4) obtaining a trial setting in the district court upon remand, can extend the length of time it takes to resolve an individual case in the federal MDL system. Coordination efforts that suggest fast-moving state court actions should be slowed to match (or, even worse, lag behind) federal MDL proceedings unfairly further Cook's interest in delay while depriving plaintiffs of the speedier resolution they sought through a state court forum.

- The Greater Familiarity of State Courts with Applicable State Laws: States have a strong interest in protecting their citizens and in regulating the conduct of business within their borders. Trying mass torts in state courts best insure that these state interests are protected. Additionally, to the extent that disputed issues are governed by state standards and laws (*e.g.* privilege issues, sufficiency of state law claims), it would be most efficient for the judiciary to have those matters determined by the state court which is already familiar with the governing law.

- Not Having to Compromise Between State Law and Judicial Economy: Because mass torts generally arise in multiple jurisdictions, MDL courts are often asked to resolve difficult choice of laws issues wherein a delicate balance

5

must be maintained between respecting due process and achieving judicial economy in numerous aggregated claims. State courts do not need to make the same due process concessions when trying individual tort cases under a single state's laws.

- <u>Contributions Toward Resolution of the Litigation as a Whole</u>: While efficiency is a laudable goal, there are also instances in which state court proceedings may contribute toward the overall resolution of the litigation. "Despite the trend to litigate dispersed mass torts in federal courts, ninety-eight percent of mass torts are ultimately resolved in state courts." Sheng, Albert, and Hannaford-Agor, Paula, *Mass Tort Management in State and Federal Courts: A Case Study of Phenylpropanolamine (PPA) Litigation*, at 2; *citing, Mass Torts: Lessons in Competing Strategies and Unintended Consequences,* CIVIL ACTION (National Center for State Courts, Williamsburg VA) Spring 2003, at 1.

**C.    Cook's Motion for a Non-Specific Order Affirming Coordination *as a Principle* Should Be Denied as Unnecessary and the Parties Should Be Directed to Propose Future *Acts* of Coordination With Specificity.**

In the context of state-federal court interactions, "coordination" can mean many things. At one end of the spectrum, courts and litigants commonly support an avenue of communication and the exchange of information. In the middle, reasonable coordination aimed at reducing duplicative efforts during the discovery phase may be beneficial where it does not run afoul of variances in state laws, interfere with trial strategies or cause undo delay. Decisions to allocate responsibility for legal rulings,

6

on the other hand, have been broadly recognized as problematic. Francis E. McGovern, *Rethinking Cooperation Among Judges in Mass Tort Litigation*, 44 UCLA L. Rev. 1851, 1869 (1997). A problem with Cook's Coordination Proposal is that (1) the few specific acts of coordination it describes are unnecessary or improper, and (2) its request for an indiscriminate commitment to coordination fails to allow for consideration of how a particular form of coordination will impact competing interests in a particular context. For these reasons, Cook's Coordination Proposal should be denied.

### 1. The Acts of Coordination Specified in Cook's Proposed Order Are Unnecessary.

This MDL Court has already been effective in furthering state-federal cooperation without the need for a general coordination order. For instance, this Court has already opened the first avenue of communication and information-sharing by establishing a website publicizing key events and rulings from the MDL litigation. The Court has also appointed "State/Federal Liaison Counsel." [Case Management Plan, p. 2 (Nov. 25, 2014)]. The Court has entered an Order establishing the framework by which state court litigants may obtain access to the "pre-trial matters, discovery, trial preparation, a potential settlement process, and all other work…" that was developed by the PLC in the federal litigation. [Case Management Order (Rules, Policies, Procedures, Guidelines Relating to Establishing Common Benefit Fee and Expense Fund), p. 2 (Mar. 16, 2016)]. And the Court has provided for cooperative state-federal discovery efforts by conditioning state court plaintiffs' access to PLC work product upon their joint agreement with the PLC to pursue discovery in a

manner that minimizes cost and maximizes efficiency. [Joint Prosecution and Confidentiality Agreement, p.3]. Thus, this Court has already taken numerous steps to enable cooperation between state and federal courts and litigants without the need for a vague coordination order such as Cook proposes.

The few specific directives included in Cook's proposed coordination order are unnecessary. For instance, the proposed order states that depositions noticed in the MDL can be cross-noticed in state court proceedings. [Proposed Order pp. 2-3]. The cross-noticing of depositions is routinely done in related cases without need for a coordination order. Similarly, Cook's proposed Order states that the Court will send a Cook-drafted letter to its state court counterparts. However, the Court does not need to enter an order directing itself to correspond with state court judges. These acts may be taken (or not taken) without the need for a coordination order.

> 2. **The Acts of Coordination Specified in Cook's Proposed Order Exceed This Court's Grant of Authority.**

A federal multidistrict court cannot bind the state courts in parallel proceedings. Moreover, this Court has already stated that it "recognizes the jurisdictional rights and obligations of the state courts to conduct their state court litigation as they so determine…" [Case Management Order (Rules, Policies, Procedures, Guidelines Relating to Establishing Common Benefit Fee and Expense Fund), p. 2 (Mar. 16, 2016)]. Thus, it is clear that state court judges in Illinois, Missouri, Oklahoma, Indiana, Georgia, Pennsylvania, Ohio, and California should not be ordered to enter a particular order issued by this Court. Cook implicitly acknowledges as much by phrasing its request as requiring *counsel* for both parties

to facilitate the entry of such an order in state courts. Yet, Plaintiffs counsel cannot effectuate a state court order. That can only be done by the Court. And without a specific proposal and an opportunity for research and consideration, Plaintiffs cannot indiscriminately agree that the agreements they negotiated under federal law (e.g. confidentiality protections) are uniformly appropriate in every state court jurisdiction. *E.g , Rohm & Haas Co. v. Adco Chem. Co.,* 689 F.2d 424, 428-29 (3d Cir. 1982)(trade secrets are matters of state law).

### 3. The Acts of Coordination Specified in Cook's Proposed Order Disproportionately Place the Burdens of Litigation on the MDL Plaintiffs.

At multiple points in its Coordination Proposal, Cook suggests that Plaintiffs assume all or part of litigation responsibilities that better rest with Cook. For instance, Cook proposes that it be permitted to answer state court discovery by identifying the bates numbers of responsive documents and having the PLC ordered to locate and produce the designated documents to state court litigants. This novel approach is not efficient. It requires the PLC to locate, sort and produce documents that Cook will have, presumably, already have located and sorted as part of its review process when answering discovery. Moreover, by inserting this additional step into the discovery process, Cook's Proposed Order increases the likelihood of delay.

Cook also litters its proposed order with vague requirements that the PLC stay in "continuous contact" with state court counsel, "jointly submit" status reports on state court developments, and "facilitate" the entry of certain substantive orders in state court proceedings. While innocuous on the surface, these sorts of requirements

have the potential to disadvantage Plaintiffs in application. That is because Cook (as a defendant in every state court action) will have full awareness, understanding and control over defense matters in *every* state court proceeding. The attorneys on the PLC, however, may or may not have any direct involvement in a particular state-court action. The PLC is, therefore, left to choose between trying to monitor every state court in the country (and intervene when an IVC filing is found) or letting Cook control the timing and framing of state-court-related issues that are brought before this Court.

    **C.    The Better Approach to Coordination Would Have The Parties Propose Specific Acts of Coordination That Can Be Fully Considered by the Court and the Parties In Context.**

Just as this Court has incorporated appropriate coordination elements into its orders on particular subjects, Judge Fallon used subject-specific orders incorporating coordination directives in the Vioxx litigation. For example, Judge Fallon issued a Pre-Trial Order on deposition guidelines that also included coordination instructions. *In re: Vioxx Prods. Liab. Litig., 2005* WL 928538, *2-3 (April 15, 2005).[1] By focusing on specific areas for coordination, the Court can avoid the pitfalls of ordering coordination in a vacuum; and instead thoughtfully address particular coordination acts that can be weighed in relation to the overall needs and context of the litigation.

---

[1] Incidentally, the Vioxx PTO contrasts with Cook's Coordination Proposal in that it recognized that the flow of discovery information could go both directions: that is, the Vioxx PTO provided that depositions noticed in the MDL may be cross-noticed by plaintiffs in state court actions ***and*** that depositions noticed in state court Vioxx actions may be cross-noticed by any party in the MDL. *Id.* at *3.

Plaintiffs are unclear as to why Cook is pursuing the entry of a general coordination order that would mandate little (if any) action beyond that which is already permitted by the federal rules, the existing case management orders, and the parties' agreements.  Plaintiffs suspect that Cook's end game is to secure a non-specific order from this Court that can be used to encourage state court judges to abdicate or defer rulings, and even trial dates, in the supposed interest of state-federal coordination.  This course of action – which strongly implicates concerns for due process, federalism and fairness – should not be unintentionally enabled through a general coordination order.  Instead, Parties and courts should identify and address with care the ways in which they wish to coordinate related litigation so as to reap the benefits of coordination while minimizing its dangers.

### III.
### CONCLUSION

For the foregoing reasons, Plaintiffs ask the Court to deny Cook's Motion and Brief in Support of Case Management Plan Regarding Coordination with State Court Litigation and to grant unto Plaintiffs all other and further relief to which they may be justly entitled.

Respectfully submitted,

*/s/ Joseph N. Williams*
Joseph N. Williams, Atty. No. 25874-49
RILEY WILLIAMS & PIATT, LLC
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317) 633-5270
Facsimile: (317) 426-3348

Email: jwilliams@rwp-law.com
*Liaison Counsel to Plaintiffs Steering Committee and on behalf of Plaintiffs Steering Committee*


/s/ *Michael W. Heaviside*
Michael W. Heaviside, Esq.
HEAVISIDE REED ZAIC, A LAW CORPORATION
910 17th Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 223-1993
mheaviside@hrzlaw.com


/s/ *Ben C. Martin*
Ben C. Martin, Esq.
THE LAW OFFICES OF BEN C. MARTIN
3710 Rawlins Street, Suite 1230
Dallas, TX  75219
Telephone: (214) 761-6614
Facsimile: (214) 744-7590
bmartin@bencmartin.com


/s/ *David P. Matthews*
David P. Matthews, Esq.
MATTHEWS AND ASSOCIATES
2509 Sackett St.
Houston, TX  77098
Telephone: (713) 522-5250
Facsimile: (713) 535-7184
dmatthews@thematthewslawfirm.com

*Plaintiffs' Co-Lead Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

Notice will be served on the parties listed below by first class U.S. Mail, postage prepaid:

Anthony James Urban
Brian J. Urban
LAW OFFICES OF ANTHONY URBAN, P.C.
474 N. Centre Street, 3rd Floor
Pottsville, PA 17901

Arthur F Hoge, III
MEE MEE HOGE & EPPERSON PLLP
1900 NW Expressway, Suite 1400
Oklahoma City, OK 73118

Caleb Hoff Didriksen, III
Carl A. Woods, III
DIDRIKSEN LAW FIRM, PLC
3114 Canal Street
New Orleans, LA 70119

Christina E. Unkel
MAGLIO CHRISTOPHER & TOALE, PA
1605 Main St., Suite 710
Sarasota, FL 34236

Cliff W. Marcek
CLIFF W. MARCEK, P.C.
700 S. Third St.
Las Vegas, NV 89101

Cory Holley Driggers
MORRIS CARY ANDREWS TALAMADE & DRIGGERS
P.O. Box 1649
Dothan, AL 36302

Curtis Hoke
THE MILLER FIRM LLC
The Sherman Building
108 Railroad Avenue
Orange, VA 22960

David Carl Anderson
ANDERSON LAW
711 Van Ness Avenue, Suite 220
San Francisco, CA 94102

David J Britton
LAW OFFICE OF DAVID J. BRITTON
2209 N 30th Street, Suite 4
Tacoma, WA 98403

Elizabeth Alice Mote
KITRICK, LEWIS & HARRIS, CO., L.P.A.
455 Hutchinson Avenue, Suite 100
Columbus, OH 43235-8630

George Jerre Duzane
1675 Liberty Lane
Gallatin, TN 37066

James W. Childress
CHILDRESS AND AHLHEIM, LLC
1010 Market St., Suite 500
St. Louis, MO 63101

Jay Harris
HARRIS, RENY & TORZEWSKI
Two Maritime Plaza, 3rd Floor
Toledo, OH 43604

Joseph A. Napiltonia
LAW OFFICE OF JOE NAPILTONIA
213 3rd Avenue North
Franklin, TN 37064

Justin Kyle Brackett
TIM MOORE, ATTORNEY AT LAW, P.A.
305 East King St.
Kings Mountain, NC 28086

Kimberly Lambert Adams
LEVIN PAPANTONIO THOMAS ETC. PA –
PENSACOLA FL
316 S Baylen Street, Suite 400
Pensacola, FL 32502

Mark Mathew Kitrick
KITRICK, LEWIS & HARRIS CO LPA – 2
445 Hutchinson Ave., Suite 100
Columbus, OH 43235

Paul Telhiard Boudreaux
RICHARDSON RICHARDSON BOUDREAUX
7447 South Lewis Avenue
Tulsa, OK 74136

Philip Sholtz
THE DRISCOLL FIRM, P.C.
211 N. Broadway, 40th Floor
St. Louis, MO 63102

Scott Kehlenbrink
CHILDRESS AND AHLHEIM, LLC
1010 Market St., Suite 500
St. Louis, MO 63101

John J. Driscoll
DRISCOLL FIRM, P.C.
211 N. Broadway, Suite 2440
St. Louis, IL 63102

Joseph G. Sauder
CHIMICLES & TIKELLIS LLP
361 West Lancaster Avenue
Haverford, PA 19041

Kahla R Hurley
MEE MEE HOGE & EPPERSON PLLP
1900 NW Expressway, Suite 1400
Oklahoma City, OK 73118

Marian S. Rosen
ROSEN & SPEARS
5075 Westheimer, Suite 760
Houston, TX 77056

Mark P. Bryant
BRYANT LAW CENTER, PSC
601 Washington Street
P.O. Box 1876
Paducah, KY 42001

Peter C Wetherall
WETHERALL GROUP, LTD.
9345 W. Sunset Road, Suite 100
Las Vegas, NV 89148

Richard A. Freese
LANGSTON SWEET & FREESE PA
The Morgan Keegan Center
2900 Highway 280, Suite 240
Birmingham, AL 35223

W. Bryan Smith
MORGAN & MORGAN, LLC
2600 One Commerce Square
Memphis, TN 38103

Wilnar Jeanne Julmiste
ANDERSON GLENN LLP – BOCA RATON FL
2201 NW Corporate Blvd., Suite 100
Boca Raton, FL 33431

/s/ *Joseph N. Williams*
Joseph N. Williams