UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

_____

This Document Relates to All Actions

_____

**MOTION AND BRIEF IN SUPPORT OF
CASE MANAGEMENT ORDER REGARDING
COORDINATION WITH STATE COURT LITIGATION (CMO    )**

The Cook defendants ("Cook") respectfully request that the Court to enter a case management order regarding coordination with state court litigation ("Coordination CMO") and also request that this Court send correspondence regarding coordination between state and federal courts to the judges in each of the currently pending Cook IVC Filter state court product liability actions. A proposed CMO is submitted with this motion. In addition, a draft letter for the Court's consideration is attached as Exhibit A, and a chart listing to contact information for the judges responsible for all state court litigation of which Cook is aware is attached as Exhibit B. In support of this motion, Cook states as follows.

On October 15, 2014, the JPML created this multidistrict litigation ("MDL") and transferred 13 actions to this Court for coordinated or consolidated pretrial proceedings. As of August 11, 2016, the MDL has grown to over 800 cases. *See* Declaration of Andrea R. Pierson ("Declaration") ¶ 2. There are currently 16 state cases pending in seven jurisdictions. Five of these cases involve multiple plaintiffs, and as of August 11, 2016, there are 121 total state court plaintiffs. Declaration ¶ 3.

Coordinating litigation between state and federal courts is a standard practice in large MDLs such as this one. Coordination creates efficiencies in large, distributed litigation; it helps the federal and state courts and the parties obtain the full benefits of the MDL system; and it focuses the parties' resources on the bellwether trial system the Court has established. Further, while the plaintiffs have refused to agree to the enclosed state court coordination order, the case management orders previously entered in this MDL have already contemplated coordination between state and federal courts in these matters, and in some cases, already ordered some aspects of coordination. The order proposed by Cook merely recognizes the growth of this litigation at both the federal and state level and extends the coordination groundwork laid by the Court and the parties.

## I.   Federal-State Coordination is Common and Encouraged in Mass Tort Litigation

Coordination between and among federal and state courts in multidistrict and mass tort litigation is a common and basic principle of mass tort management. As the Western District of Louisiana noted in the *In Re: Actos (Pioglitazone) Products Liability Litigation* MDL, coordination is "advised, encouraged and welcomed by both the federal and state courts." *Dunlavey v. Takeda Pharmaceuticals America, Inc.*, 2012 WL 3715456, *2 (W.D. La. Aug. 23, 2012) (providing a thorough analysis of state and federal coordination in mass tort litigation); *see also* THE MANUAL FOR COMPLEX LITIGATION (FOURTH) § 20.31 (2004) (discussing coordination strategies); Alexander B. Aikman, Managing Mass Tort Cases: A Resource Book for State Trial Court Judges § 3.4 (1995) (advising state court judges to reach out to federal court judges to establish coordination). "**Cooperation between state and federal judges is not only advised, it is advised often.**" *Dunlavey*, 2012 WL 3715456, *2 (emphasis in original). In particular, "coordination by and among both federal and the multiple state courts is common in MDL and

mass tort litigation as is evidenced by the plethora of cases where coordination has been utilized." *Id.* at *2 (omitting string citation).

There is no statutory scheme that sets the terms for state-federal court coordination, but there are many guidance documents that encourage coordination between state and federal courts and recommend procedures for implementing such coordination. These resources includes The Manual for Complex Litigation (Fourth) §20.31 (2004); Managing Multidistrict Litigation in Products Liability Cases: A Pocket Guide for Transferee Judges § 6 (2011); and Ten Steps to Better Case Management: A Guide for Multidistrict Litigation Transferee Judges (2009). Indeed, coordination between state and federal courts has been extensive in some cases. For example, federal and state courts have conducted joint *Daubert/Frye* hearings to streamline the admissibility of the experts' opinions on general causation, held joint status conferences in a single chambers with multiple judges presiding, and have worked together to establish uniform discovery protocols between state and federal courts. MANAGING MULTIDISTRICT LITIGATION IN PRODUCTS LIABILITY CASES: A POCKET GUIDE FOR TRANSFEREE JUDGES § 6 (2011), at n. 24, 32; THE MANUAL FOR COMPLEX LITIGATION (FOURTH) § 20.31 (2004).

As compared to some of the coordination efforts that have occurred in other MDLs, the proposed Coordination CMO contemplates, at this stage, only the general directive to work toward coordination and open communication between this Court and state courts. These requests are reasonable at this time given the scope and size of the litigation, the progress of discovery, and the Court's bellwether process.

Cook acknowledges that this Court has limited jurisdiction to order the state courts to take any action, and it is not requesting that the Court do so. Rather, Cook believes that this Court is in the best position to take the lead on encouraging coordination. The proposed

3

Coordination Order and the proposed letter to state court judges are drafted in the spirit of fostering mutual cooperation and working towards a system that will benefit both the MDL and the related state court cases. The proposed coordination efforts are appropriate and sensible steps for managing this litigation.

## II.     Coordination is Appropriate for this MDL in Particular

Coordination will help to reduce costs, delays, duplicative efforts, and inconsistent rulings in the Cook IVC Filter cases in particular. This MDL has been pending for almost two years. Discovery is more advanced and organized than in any state court action, and it is proceeding cooperatively and efficiently. The parties have completed significant discovery and have resolved numerous discovery disputes. If the parties were to duplicate this discovery in state court cases, it could result in significant cost and delay, as well as conflicting rulings. Specifically, the parties have already completed the following discovery:

- Document Production:  Cook has already reviewed and produced over 900,000 documents, as well as defendant fact sheets. Declaration ¶ 6. The parties also agreed to a protocol for production of documents and electronically stored information. [Docket No. 521]. Without coordination, Cook may be faced with the substantial burden of re-reviewing and re-producing documents. Further, the parties have already negotiated and agreed on a privilege protocol [Docket No. 520] and protective orders regarding protected health information and confidential information. [Docket Nos. 479, 481]. Not only would Cook be faced with another production in the state court litigation, but it may be under the guidance of a conflicting ruling regarding privileged and confidential documents.

- Depositions:  The parties agreed on a deposition protocol [Docket No. 281], and the plaintiffs have already deposed 18 present or former employees of Cook.  Declaration ¶ 4.

- Bellwether Selection Process:  Both sides argued, and this Court resolved, the bellwether selection process resulting in the three bellwether case picks.  [Docket No. 2107].  This result came after multiple modifications to the bellwether process, all in an effort to choose the cases that represent the MDL as a whole and to help "facilitate the resolution of the MDL." *Id.*  The bellwether process exists to efficiently and effectively test claims and defenses of representative cases and to help the parties and the Courts conserve resources while reaching resolution.  This purpose will be frustrated by uncoordinated, dispersed litigation. The parties may spend significant time and resources testing claims and defenses of specific state court cases that are not easily applied to the litigation as a whole while the limited resources of the parties, and as is most often important in these matters, the witnesses, are diverted from the bellwether process.

- Common Benefit and Expense Fund:  The parties negotiated and agreed to Participation and Joint Prosecution Agreements, as well as a procedure for common benefit work product and expenses. [Docket No. 1246].  This order acknowledges the extensive work that has been completed, including corporate depositions, a document depository, document productions, creation of a database of relevant documents, discovery motions, privilege claims, status conferences, and expert witness retention. [Docket No. 1246-B].

5

Given the above, coordination between state and federal courts is particularly appropriate, and this Court is in the best position to take the lead in developing that coordination.

### III. Plaintiffs Have Already Contemplated and Agreed to Coordination Between Federal and State Court Cases in this MDL

Existing case management orders in this MDL contemplate and in some circumstances agree to coordination between state and federal cases.  The Coordination CMO Cook proposes is a natural extension of the coordination contemplated by prior CMOs in this matter.

Even the first Case Management Plan contemplated state and federal court coordination when it appointed State/Federal Liaison Counsel as part of the Plaintiffs' Leadership Structure. [Docket No. 51].  The State/Federal Liaison Counsel remains as part of the most recent Case Management Plan.  [Docket No. 1749].  Further, on March 16, 2016, the Court entered an agreed upon case management order establishing the common benefit fee and expense fund.  [Docket No. 1246].  This order provided voluntary agreements between plaintiffs' attorneys with cases pending in the MDL and/or state court.  *Id.*  The Order also allowed participation by counsel with unfiled claims.  *Id.*

The Participation Agreement explained the benefit of such an order: sharing work product that would "benefit all plaintiffs alleging injury caused by the use" of Cook filters, and to "[establish] an amicable, working relationship with the Plaintiffs' Leadership Counsel for the mutual benefit of their clients."  [Docket No. 1246-A].  Within the Joint Prosecution and Confidentiality Agreement, counsel further agreed to "assist in a cooperative effort to investigate, prepare and conduct discovery in State and Federal Court litigations regarding Cook manufactured IVC Filters" for the purpose of achieving the "common interest of minimizing cost, maximizing judicial efficiency and assuring the just and speedy resolution" of claims involving Cook filters. [Docket No. 1246-B].   The proposed Coordination CMO extends this

6

coordination and makes explicit what was already implicit.  It further provides this Court the opportunity to work with state courts in the efficient administration of justice while encouraging the parties to work toward coordination whenever possible.

  This MDL is advanced, organized, and proceeding cooperatively and efficiently. Coordination orders are common in large MDLs and help achieve efficiencies and prevent duplicative efforts.  Plaintiffs in this MDL are already participating in coordinated efforts, and this Coordination CMO is a natural extension of that process.  For these reasons, Cook respectfully requests that the Court enter the proposed Coordination CMO and send the letter attached as Exhibit A to the Coordination CMO to the state courts listed in Exhibit B to encourage coordination and cooperation among all of the courts involved in the Cook IVC Filter litigation.

Respectfully submitted,

/s/ Andrea Roberts Pierson
Andrea Roberts Pierson (# 18435-49)
James Stephen Bennett (# 22869-02)
Jessica Benson Cox (# 26259-49)
Patrick H. Reilly (# 28739-49)
John T. Schlafer (# 28771-49)
Victoria R. Calhoon (# 28492-49)
Nicholas B. Alford (# 31867-49)
Anna C. Rutigliano (# 32743-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-Mail:  stephen.bennett@faegrebd.com
E-Mail:  jessica.cox@faegrebd.com
E-Mail: patrick.reilly@faegreBD.com
E-Mail: john.schlafer@faegrebd.com
E-Mail: victoria.calhoon@faegrebd.com
E-Mail: nicholas.alford@faegrebd.com
E-Mail: anna.rutigliano@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

8

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2016, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

/s/ Andrea Roberts Pierson

US.107570082.02