UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br><br>MDL No. 2570 |
| This Document Relates to All Actions | |

## Plaintiffs' Response to Defendants' Proposed Defendant Profile Form

Pursuant to the Court's order of September 12, 2016, Plaintiffs respond hereby to Cook Defendants' Brief in Support of Proposed Defendant Profile Form (Doc. 2592).

1.   Plaintiffs agree that only one disputed issue remains following the parties' negotiations—the amount of data Defendants will be required to provide regarding Cook District Managers' (i.e., sales representatives') communications with Plaintiffs' physicians. Defendants do not dispute the relevancy of the information Plaintiffs seek. Defendants claim only that it imposes a disproportionate burden in light of a "sharp uptick" in filings in May 2016.

2.   As reflected in the original 17-page Defendant Fact Sheet (an example of which is attached as Exhibit A), Defendants voluntarily agreed to produce in every case a significant amount of detail regarding their interactions with Plaintiffs' healthcare providers, including: details on consultations and non-DM contacts (including contractual relationships, payments in cash or in kind, etc.) (Section II.A.

at pp. 3-7); dates and details of DM contacts, including details on the DMs themselves (Section II.B. at pp. 7-10); and production of related documents, including all consulting agreements, records of communications, compensation records, etc.) (Section III at pp. 10-13 & VI at pp. 14-16.) Plaintiffs seek only one narrowly focused subset of DM/sales representative data under the original Section VI, as discussed below.

3. Exhibit A is the DFS for the *Hill* bellwether trial case. Contrary to Defendants' suggestion that DFSs in bellwether/discovery pool cases provide DM contact information sufficient to satisfy Plaintiffs' needs, the amount of information actually provided is scant. Almost without exception the DFSs served to date contain nothing but responses like those in Exhibit A.

4. Under Section II.A. regarding non-DM physician contacts, there are 16 questions, counting subparts. Cook responds to all 16 with some variation of: "Unknown at this time," "Discovery and investigation ongoing," "In the process of gathering documents," and so on.

5. The answers are similarly and uniformly unresponsive in Section II.B., which covers DM-physician contact information (in a bellwether case, no less). In fact, Cook responds to nearly half of the questions by stating "Cook Defendants do not track information regarding communications with healthcare providers in a systematic way," which raises the question why the Defendants agreed to produce such information in every case as *quid pro quo* for the 29-page PPF/PFS Plaintiffs were required to serve.

6.  Nevertheless, Plaintiffs agreed to the proposed Defendant Profile Form, which has been cut from 17 to 2 ½ pages and which eliminates nearly every category of information required in the original DFS, except that Plaintiffs continue to demand DM call notes and records of interactions with Plaintiffs' physicians.

7.  With regard to such data, Cook's proposal requires only "Cook IRIS physician contact data" for each doctor. As Cook admits, (Def. Brief at 3 n.4), the IRIS system was created in 2013 (i.e., after IVC litigation against Cook was underway); and DMs are not required to use it. Hence, it will generate post-litigation information and then only for the DMs who have used it from time to time over the past four years. It will generate no information for the period 2003-2012.

8.  Plaintiffs propose the following language, which is but one of the nine document production requests in the original DFS (Section VI) (slightly modified as to time period):

> Produce all call notes; detail notes; call summaries; entries made by sales representatives into any database or e-room, laptop, or other computer or handheld device; hard copy documents; emails; and/or notes or records or summaries of calls, contacts and/or communications of any kind regarding each healthcare provider for the time period covering three years before Plaintiff's implant to date.

9.  Defendants agreed to produce this information (and much more), as of April 2015 when CMO 4 was entered. They did not seek to avoid this obligation when CMO 4 was amended in August 2015. They did not raise a proportionality argument; they did not claim they do not track this information; and they did not mention the financial burden they now allege ("$10,000 per DM"). (Def. Brief at 3 n.5). Instead, they continued to receive lengthy PPF/PFS forms in what surely

amounted to hundreds of cases, while serving in return deficient DFS forms like the *Hill* form attached as Exhibit A.[1]

    10.    This is important because Defendants argue in part that DM data provided in discovery pool cases should suffice; but it is facially insufficient as Exhibit A demonstrates. Defendants advance a related argument that DM communications must not be a "high priority" given Plaintiffs' lack of inquiry on the subject at 30(b)(6) depositions. This overlooks the fact that at the time those depositions were taken, Plaintiffs anticipated receiving an original DFS in every case as this Court had ordered. Indeed, Cook's observation demonstrates the prejudice Plaintiffs will suffer in having conducted discovery with the assurance of receiving DM call notes and other such materials only to have Defendants now claim that it is unduly burdensome to produce the information. And while Defendants claim that two marketing executives' custodial files reflect "marketing and sales strategy for interactions between District Managers and physicians," (Def. Brief at 4), Plaintiffs do not seek production of records reflecting executive-level strategic planning; they seek documents reflecting what Cook's DMs actually said and did when in contact with Plaintiffs' physicians.

    11.    In a further compromise, Plaintiffs suggested that documents be produced in a random sample of 25% of the pending cases (and now suggest 20% to accommodate future filings). Cook has turned in 12 months' time from an assurance to produce the requested information and far more in every case to a claim that

---

[1] Negotiations on the DFS and PPF/PFS forms began in earnest when Plaintiffs first served a draft motion to compel following several deficiency notices.

responding to only one of the DM-related production requests is unduly burdensome in one-fourth of the cases.

12. It is a curious position. In August 2015, CMO 4 was amended, reiterating Defendants' obligation to produce all information in the original 17-page DFS. According to the case-filing chart shown to the Court by Cook at the September 8, 2016, status conference, there were 125 cases pending in the MDL at that time. In the preceding 12 months, 7.75 cases were filed each month on average, with July 2015 seeing the second highest number of case filings up to that time. While Defendants may not have foreseen the spike of filings in May-August 2016, they certainly could have predicted a final MDL inventory of 200+ cases, yet they made no mention of undue/disproportionate burden, cost, or inability to track the requested information. Plaintiffs' proposal of sampling 20% of cases is consistent with the number of cases that might foreseeably be filed in total when CMO 4 was amended without protest by Defendants.

13. It is worth reiterating that Defendants <u>do not contest relevancy</u>. Nor should they. Cook's representations to doctors are critical in each case. They may be proven as to particular doctors in a given case, but also through pattern and practice evidence more generally, which illustrates the need for this information in more than a handful of discovery pool cases. And Cook's defenses put the documents at issue, including among others the informed consent defense (Doc. 456, Def. #2), the learned intermediary defense (*Id.*, Def. # 6), and Cook's claim that the physicians themselves are to blame. (*Id.*, Def. ## 10-11.)

14. Plaintiffs do not have a burden to address all proportionality considerations. Fed. R. Civ. P. 26 (2015 Adv. Cmt. Notes). This Court has observed that "[t]he party resisting discovery bears the burden to show why a particular discovery request is improper. General assertions of hardship will not suffice. … This showing of undue burden typically requires affidavits or other evidence in support." *Lanteri v. Credit Prot. Ass'n*, 1:13-CV-01501-WTL, 2015 WL 6607494 at *3 (S.D. Ind. 2015), *objections overruled*, 2015 WL 6681049 (S.D. Ind. 2015) (internal citations and quotations omitted). This is particularly true where, as here, Defendants already agreed to produce this information, the Court enshrined that agreement in a CMO, and the Plaintiffs premised discovery on their belief the information would be produced.

15. Finally, the Rule 26(b)(1) factors favor Plaintiffs' position inasmuch as Cook's representations to physicians are indisputably important to the issues in this action; the amount(s) in controversy (individually and in the aggregate) are far greater than in the typical case; Plaintiffs have no access to call notes and related records except through such discovery; Cook is a well-resourced Defendant who claimed no undue burden when 125 cases had been filed and more were foreseeable; and the expense is proportional to the benefit given that Plaintiffs have yielded on numerous requests to which Cook had previously agreed to respond and Plaintiffs have agreed to a small sampling to address Defendants' proportionality concerns.

16. Specifically, Plaintiffs propose that Defendants provide the DM-physician contact information in all cases ending in 0 or 5, which would yield a

random selection totaling 20% of all cases filed to date and all cases going forward.

A redlined version of Plaintiffs' proposed modified DPF is attached as Exhibit B.

Respectfully submitted this 23rd day of September, 2016.

>Respectfully submitted,
>
>RILEY WILLIAMS & PIATT, LLC
>
>*/s/ Joseph N. Williams*
>Joseph N. Williams, Atty. No. 25874-49
>301 Massachusetts Avenue
>Indianapolis, IN 46204
>Telephone: (317) 633-5270
>Facsimile: (317) 426-3348
>Email:      jwilliams@rwp-law.com
>
>*Liaison Counsel to Plaintiffs Steering Committee and on behalf of Plaintiffs Steering Committee*

## CERTIFICATE OF SERVICE

I hereby certify that on September 23, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

>*/s/ Joseph N. Williams*
>Joseph N. Williams