UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

This Document Relates to All Actions

**PLAINTIFFS' RESPONSE IN OPPOSITION TO THE COOK DEFENDANTS' SUBMISSION ON PROPOSED BELLWETHER TRIAL PLAN**

COME NOW all Plaintiffs in the above-styled proceedings and file this, Plaintiffs' response in opposition to the Cook Defendants' Submission on Proposed Bellwether Trial Plan (hereinafter "Cook's Trial Plan"). Plaintiffs would respectfully show the Court that Cook's Trial Plan should be denied for the following reasons:

**I.
INTRODUCTION**

This Court stated clearly and repeatedly that if it sets aside four weeks in October of 2017 for the trial of a Cook IVC filter case, it wants to "make sure" that a case from this MDL will be available to occupy that trial spot. [Tr. 33:16-21; 33:24-34:3].[1] The staggered pre-trial plan proposed by Cook fails to meet the Court's objective. By proposing that the parties prepare *only* the Hill case for an October 2017 trial, and have trial preparations for the other two Bellwether cases lag behind by five and nine months, Cook ensures that there can be no trial of an IVC filter case in 2017 if anything unexpected should occur in the Hill case. Rolling the dice in this manner

---

[1] The transcript of the September 8, 2016 Status Conference Regarding Case Management Plan is referenced herein by the abbreviation "Tr.," followed by the page and line(s) of the relevant discussion. The full transcript is attached to Cook's Trial Plan.

1

may be acceptable to Cook (who would benefit from the resulting delay) but it leaves the Court with an undesirable month long gap in its trial schedule and leaves the hundreds of Plaintiffs whose cases are pending in this MDL waiting until mid-2018 (nearly two years from now) to see the first MDL case come to trial.

There is no reason to put all the eggs in the Hill basket alone. By using the same pre-trial deadlines for *all three* Bellwether cases, the Court can be assured that a case from this MDL will be available for trial in October of 2017. Moreover, the benefit of having all three cases trial ready does not come at a prohibitive cost; the manageable demands of a simultaneous pre-trial schedule are, at most, only marginally greater (and may actually be less) than the burdens imposed by a staggered schedule.

To the extent that Cook is concerned that Plaintiffs' desire for trial-ready back-up cases is motivated by gamesmanship: nothing could be further from the truth. Plaintiffs' counsel have stated, clearly and unequivocally, on the record, that their intent is to try the Hill case on October 2, 2017.  [Tr. 49:18-20 ("I can affirm right now [the Plaintiffs' counsel] intend to try that case [the Hill case]"); Tr. 49:25-50:3 ("Right now I can affirm that there is an intent to proceed to trial, having spoken to . . . the lead lawyers on that case."); Tr. 33:1-3 "(Now, we believe that it [the Hill case] will be tried, and we believe that at this point there is no reason to believe that it will not.")]. Having the Brand and Gage cases ready for trial in October 2017, does not mean that the Hill case is not going to be tried at that time; it simply ensures the trial setting will not be wasted and a Cook IVC filter case will get tried -- *even if* something unforeseen occurs in Hill.  Consequently, Plaintiffs urge the Court to deny Cook's Trial Plan and, instead, enter a plan ordering that the same pre-trial deadlines will apply to all three Bellwether cases.

## II.
## ARGUMENT AND AUTHORITIES

A.  **Cook's Staggered Trial Plan Is Contrary to the Court's Stated Goal of Being Certain that a Cook IVC Filter Case is Tried in October of 2017.**

Having set aside October of 2017 for the first Cook IVC filter trial, the Court has explicitly stated that it wants to be sure a case from this MDL is tried during that period:

> "THE COURT:  [I]f I set aside three or four weeks to try Hill and it, and it is resolved, I am going to want to have something to go to fill that three or four weeks.  Because, on my docket, to find you another three or four weeks, would put you probably in mid-to-late 2018." [Tr. 33:16-21].

> "THE COURT:  [C]ertainly, I would want to make sure that if we do have set aside basically October to try Hill, that if that case is not ready to go or is not going for whatever reason, I would want something in this MDL to fill that time slot."  [Tr. 33:24-34:3].

The only way to be "sure" that a Cook IVC filter case fills the Court's October 2017 trial slot, is to have more than one Cook IVC filter case trial-ready at that time. That is because, even if both parties presently intend to try the three Bellwether cases in the order and on the dates originally planned (which Plaintiffs do), there are many and varied reasons why the Hill case might not be tried in October of 2017. For instance, Cook has already pointed out that Ms. Hill could change her mind about pursuing the case. The Hill case could also settle. It could be dismissed via summary judgment.  An adverse Daubert ruling involving an essential expert could result in a subsequent dismissal or a delay. There is even the possibility that Ms. Hill or a key witness in Ms. Hill's case might become unavailable in October 2017 due to illness, injury or death. While Plaintiffs' consider these scenarios unlikely; they are not outlandish. Thus, the prudent step is to ready multiple cases so that, if any of these scenarios were to occur, the Court would not be left with a month-long gap in its schedule and the hundreds of Plaintiffs with cases pending in this

3

MDL would not be waiting until mid-2018 (nearly two years from now) to see the first case come to trial.

B.  **Preparing the Three Bellwether Cases On the Same Schedule Is More Efficient and Less Burdensome than Cook's Staggered Trial Plan.**

  1.  **It is Most Efficient to Address Like Matters at the Same Time For All Three Bellwether Cases.**

Whether under staggered deadlines or simultaneous deadlines, the reality is that counsel for both parties will be working on all three Bellwether cases simultaneously. Cook's staggered pre-trial plan would have the parties dividing their efforts among different tasks in each of the three Bellwether cases. For example, if Cook's staggered pre-trial plan were to be adopted, (1) the trial of the Hill case, (2) the deadline for completing discovery in the Brand case, and (3) the deadline for providing expert disclosures in the Gage case would all occur during the same window of time. [*See* Cook's Proposed Case Management Order #19 (Bellwether Trial Plan), pp. 1-2]. Plaintiffs do not see how juggling three different litigation tasks in three different cases is more efficient than simply applying focused attention on a single litigation task for all three cases before moving methodically to the next stage of the litigation.

In the context of discussing trial settings, the Court aptly noted that it is most convenient to address matters while they are freshly in mind:

> "THE COURT:  …I just want to avoid having too much of an interval between – because quite frankly, . . . one of the problems we have if we get too much time in between is I start forgetting about things.  And I have to go back and refresh myself and review and that type of thing as well. . . "[Tr. 61:18-25].

The same is true of pre-trial proceedings. There is no reason to think that it would be more efficient for the parties or the Court to address an issue in Hill and then wait almost half a year before reacquainting themselves with key documents, testimony and case law to resolve a similar issue

4

in Brand and another four months before taking the matter up in Gage. The better approach would be to put all three cases on the same timetable so that similar matters can be assessed and resolved at the same time.

Lastly, Cook's claim that simultaneous deadlines precludes the parties from realizing the efficiency benefits of an MDL is inaccurate. At first blush, Cook's argument that a staggered deadline would allow litigants in Brand and Gage cases to narrow the issues based on the rulings made in the Hill case, would seem to suggest an efficiency benefit. Unfortunately, that touted benefit does not hold up to greater scrutiny. That is because the parties in subsequent cases necessarily respond in one of two ways to any ruling from the Court in a prior case: (1) by conceding that the issue in the subsequent case is similar enough to be governed by the first ruling, or (2) by determining that there are legal or factual differences in the second case which require an individual determination. If the issue in both cases is similar enough that a ruling in the first filed case would inform both, then there is no reason not to have that issue resolved for both cases simultaneously. On the other hand, if the governing law differs or there is a factual distinction between the first and second case, then there is no benefit to the second case in waiting for the first to be resolved. In both instances, the most expeditious route is to present the Court with the issue – including any case-specific distinctions that might alter its application as between the Hill, Brand and Gage cases – and allow the Court to conveniently resolve the matter for all three cases during the same time frame.

### 2. The Work of Preparing Three Bellwether Cases On the Same Pre-Trial Schedule Is Not Excessive or Prohibitive.

When reading Cook's litany of anticipated hardships, one might forget that there are *only* *three* Bellwether cases currently being prepared for trial. The work required to prepare *three* Bellwether cases simultaneously is not excessive or prohibitive. Indeed, there are more than twenty

5

lawyers who hold places on the Plaintiffs' steering committee. [Tr. 38:3-13]. And Cook is represented by two different law firms with nearly 200 attorneys in their two Indianapolis offices.[2] Both parties have ample legal representation to guide three cases through the pre-trial process using the same deadlines.

This is particularly so, where the outstanding discovery demands are manageable. As Cook itself stated, the parties are "pretty close to being done" with general discovery on Cook. [Tr. 59:11-14]. Indeed, Cook's counsel represented at the last hearing that general corporate discovery was nearing its end and that case specific corporate discovery (primarily involving sales representatives and district managers) had already been provided for the discovery pool cases as well. [Tr. 52:9-21]. Cook's counsel further explained that 18 Cook employees have already provided corporate depositions and that only two of the twenty initially agreed corporate depositions remain to be taken. [Tr. 58:20-59:6]. Thus, at this point, corporate discovery is well advanced for all three cases.

The demands of case specific discovery for the three Bellwether cases are also easily manageable. Cook's staggered trial plan proposes limiting case specific fact witness depositions to (1) the Plaintiff(s), (2) the Plaintiff's treating physicians, (3) the sales representative associated with the specific product implanted, and (4) no more than two additional fact witnesses. Seven months is an adequate span of time to secure these limited depositions in all three cases.

The bulk of Cook's concern regarding simultaneous pre-trial deadlines appears to focus on expert issues. In particular, Cook perceives that it will be difficult for highly specialized physician experts to find time in their schedules to prepare three separate reports and be deposed in three

---

[2] Wooden & McLaughlin LLP lists 44 attorneys on its website. *See* http://woodenmclaughlin.com/attorney/alpha. Faegre Baker Daniels LLP makes the following representation on its website: "With more than 150 attorneys, the Indianapolis downtown office has a strong multidisciplinary and full-service skill set." *See* http://www.faegrebd.com/indianapolis-downtown.

separate cases by the Hill deadline. Plaintiffs believe that the opposite is true: it will actually be *more convenient* for experts to work on the cases simultaneously. For instance, instead of preparing multiple stand-alone reports, a case specific expert may prepare a single report setting forth his or her general opinions and then provide addendums that set forth additional opinions that are specific to the Hill, Brand and Gage plaintiffs. Similarly, rather than having to travel to multiple depositions, an expert designated in more than one Bellwether case could opt to provide their general testimony once followed by successive sessions to obtain case-specific testimony.

### 3. Cook's Allegations of Gamesmanship Are Unfounded.

Cook repeatedly suggests (without any basis) that having the Brand and Gage cases trial ready in October of 2017, will entice Plaintiffs to pull a bait-and-switch by dismissing the Hill case if they don't like how it shapes up during discovery. Cook's suspicion is entirely without reason and directly contrary to the repeated assurances of Plaintiffs' counsel that they fully intend to try the Hill case in October of 2017.  [Tr. 49:18-20; Tr. 49:25-50:3 Tr. 33:1-3].[3] This Court should not be swayed into adopting a staggered pre-trial schedule by unfounded predictions of gamesmanship. Instead, the Court should order that pre-trial proceeding in all three Bellwether cases be governed by the same deadlines.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs ask the Court to deny the Cook Defendants' Submission on Proposed Bellwether Trial Plan and instead, enter a plan ordering that the same pre-trial deadlines will apply to all three Bellwether cases. Plaintiffs additionally request that the Court grant unto them all other and further relief to which they may be justly entitled.

---

[3] In fact, if the Bellwether trial plan is to be premised on the worst and most baseless interpretations of each parties' intentions, it is equally plausible that *not* having back-up cases ready for trial will tempt *Cook* to settle the Hill case on the eve of trial - thereby insuring that no IVC filter case against it will be tried by the MDL until mid 2018.

7

Dated: September 28, 2016.

Respectfully submitted,

RILEY WILLIAMS & PIATT, LLC

*/s/ Joseph N. Williams*
Joseph N. Williams, Atty. No. 25874-49
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317) 633-5270
Facsimile: (317) 426-3348
Email: jwilliams@rwp-law.com

*Liaison Counsel to Plaintiffs Steering Committee
and on behalf of Plaintiffs Steering Committee*

## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

*/s/ Joseph N. Williams*
Joseph N. Williams