**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND              Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION                MDL No. 2570

This Document Relates to All Actions

**COOK DEFENDANTS' MEMORANDUM ON
SELECTION OF SECOND BELLWETHER TRIAL**

Pursuant to the dialogue with the Court at the September 8, 2016, status conference, the Cook Defendants submit this memorandum and respectfully request that the Court set the *Arthur Gage* matter as the second bellwether trial.

**I.   INTRODUCTION**

The bellwether system is designed to select for trial cases representative of the entire multidistrict litigation ("MDL") and whose resolution will provide information relevant to the larger litigation. *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997).  The Court ruled as such in its April 15, 2016, order setting the bellwether selection criteria for this MDL.[1] [Docket No. 1341]  Consistent with those criteria, the Court selected three cases *Hill* (Celect), *Gage* (Günther Tulip), and *Brand* (Celect).  [Docket No. 2107] for bellwether trial.  The Court also ordered that *Hill*, a representative case that does not contain outlier allegations of fracture and an open removal procedure, would be the first case tried, but it left open the decision on

---

[1] The Court's Order outlined the representative cases for trial: "The new discovery pool may include any of the seventy-four "Discovery Pool Eligible Cases," **keeping in mind that they should be as representative of the whole MDL as possible**, primarily alleging injuries from the Celect IVC filter due to migration, IVC perforation, and an inability to be removed." (Emphasis added.)

what the second and third cases would be.  Cook now requests that the Court set *Gage* as the second bellwether trial.

## II.     THE COURT SHOULD SET *GAGE* AS THE SECOND BELLWETHER TRIAL

This Court should set *Gage* as the second bellwether trial for numerous reasons, including ensuring early trials for both products at issue in the litigation, trying a second representative case in terms of injuries before an outlier case, and to deter Plaintiffs from dismissing *Hill* in order to try Plaintiff's preferred case, *Brand* as the first trial.

### A. This MDL Involves Two Separate Products And the First Two Trials Should Be One Of Each Product

More than 45% of the plaintiffs in this MDL had a Güther Tulip filter implanted. Plaintiffs with a Günther Tulip deserve an early bellwether trial for their product as much as those with Celect filter.  *Gage* is the only Günther Tulip case selected as a bellwether pick and for this reason should be tried second.  Ensuring an early trial for both products at issue in this litigation is particularly important in light of the purpose of selecting representative bellwether trials is considered.  Bellwethers should be representative so that they can best inform the parties about the merits of the claims and issues in the cases.  The Court has chosen only one Günther Tulip case: *Gage*.  And *Gage* should be tried second so that the parties may be informed about the issues and claims involving both products at issue in the MDL through the first two bellwether trials.

### B. The Court Should Not Try A Case With Outlier Injuries Second

As extensively briefed and argued before the Court in the bellwether selection process, cases like *Brand* involving filter fractures and open retrieval procedures are outliers in this MDL. Cases like *Gage*, which involve perforation and difficulty in retrieving the filter, are the predominant type of alleged injury.  Having a second trial of a more common injury type will

provide the parties more valuable information in determining their position on the cases as the MDL moves forward. Mrs. Brand's outlier injuries severely curtail the ways in which trial of that case can inform the parties about the entire body of cases in the MDL. As a more representative case, having *Gage* as the second trial would better fulfill the purpose of the bellwether process, while providing rulings and insights applicable to 45% of the cases in this MDL.

### C. The Court Should Not Pick A Case That Will Encourage Plaintiffs To Dismiss *Hill*

As discussed in Cook's Submission On Bellwether Trial Plan, Plaintiffs should not be rewarded for dismissing *Hill* in order to manipulate the bellwether process so that *Brand*, their "best case," is actually the first case tried. Setting *Gage* as the second bellwether trial would deter that behavior and decrease the risk of a hole in the Court's schedule if *Hill* is dismissed. While Plaintiffs' stated repeatedly on the record that they did not intend to dismiss *Hill,* several statement they made at the September 8 Status Conference, coupled with Plaintiffs' actions since that conference, indicate that they may be preparing for just such a dismissal.

In their own words to the Court, Plaintiffs' counsel stated at the September 8 Status Conference:

- "We don't know what is going to happen in the next year with Mr. Hill. I think it is Mr. Hill; is that – Elizabeth Hill. Okay. We don't know how, how she is either going to or not going to go forward to the end…it could go away…" Transcript at 32-33.

- "Hill is a defense pick, and it was the one that was ordered to be the first trial…It would be, I think, a travesty if we got – well, it would be a travesty if we got there and Hill was no longer the case." Transcript at 33.

- "[W]hen the Court is making its determination as to which case should go next, either after Hill or possibly in place of Hill if something happens to Hill, we believe that it should be the Plaintiffs' pick, Brand." Transcript at 36-37.

3

- "If we have worked these cases up such that they are all going to be ready in case Hill does not go or settles or dismisses his case, then there is no reason why to, we believe, to have a significant difference and a significant lag in time until the next trial." Transcript at 37.

- "Even if Hill goes, if we don't work up the other ones, we are not going to be able to try another one, you know, fairly soon thereafter." Transcript at 38.

Cook has been steadfast privately and publicly that it will not settle *Hill, Gage* or *Brand*. Transcript at 42. Thus, any mention of "something happen[ing] to Hill" can only be, as Cook's counsel made clear, *Hill* being dismissed by Plaintiffs. Transcript at 36-37, 42.

Since the September 8 Status Conference, Plaintiffs have refused to produce Ms. Hill for deposition until November while noticing multiple provider depositions for Ms. Brand and none for Ms. Hill. Plaintiffs' statements and actions suggest that they may seek to replace *Hill*, a representative case with no outlier allegations such as fracture and an open removal procedure, with *Brand*, their "best" case with precisely those allegations, as the first bellwether trial. Such chicanery is a blatant attempt to manipulate the integrity of the bellwether process, which would not only run counter to the goals of the MDL, but also would unfairly prejudice Cook (particularly if there are no limits on the timing or consequences for dismissal, as Plaintiffs' proposed schedule for bellwether trials suggests). Setting *Gage* as the second bellwether trial will eliminate Plaintiff's motivation to sacrifice *Hill* and push for *Brand*.

### III. CONCLUSION

By setting *Gage* as the second case to be tried, this Court will promote judicial economy, protect all parties (including representing the interests of the individual, potentially sacrificial plaintiffs, like *Hill)*, and ensure that a representative case is tried before an outlier. All of those objectives protect the integrity of the bellwether process and provide necessary information the

4

parties can use in evaluating and resolving other cases in this litigation. For these reasons, Cook respectfully requests that the Court set *Gage* as the second bellwether trial.

Dated: September 22, 2016    */s/Andrea Roberts Pierson*
Andrea Roberts Pierson, Co-Lead Counsel
John T. Schlafer
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:	(317) 237-0300
Facsimile:	(317) 237-1000
andrea.pierson@faegrebd.com
john.schlafer@faegrebd.com

James Stephen Bennett, Co-Lead Counsel
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana  46802
Telephone:	(260) 424-8000
Facsimile:	(260) 460-1700
stephen.bennett@faegrebd.com

Douglas B. King, Co-Lead Counsel
James M. Boyers
WOODEN MCLAUGHLIN LLP
One Indiana Square, Suite 1800
Indianapolis, IN 46204-4208
Telephone:	(317) 639-6151
Facsimile:	(317) 639-6444
doug.king@woodenmclaughlin.com
jim.boyers@woodenmclaughlin.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2016, a copy of the foregoing Cook Defendants' Memorandum On Selection Of Second Bellwether Trial was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.  Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

                                                                                                        */s/* Andrea Roberts Pierson
                                                                                                        Andrea Roberts Pierson