IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION | Case No.1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |
| This Document Relates to All Actions | |

**PLAINTIFFS' OBJECTION TO MAGISTRATE'S ORDER
REGARDING PROFILE FORMS AND DEPOSITION PROTOCOLS**

Pursuant to Federal Rule of Civil Procedure 72(b), Plaintiffs object to the Magistrate Judge's "Order Regarding Profile Forms and Deposition Protocols" filed on November 04, 2016. [Doc. 2988]. In support of their objection, Plaintiffs would respectfully show the Court as follows:

**I.
INTRODUCTION**

1.  The issue before the Court is whether the Plaintiffs' significantly limited request for information regarding Cook District Managers' (i.e. sales representatives') marketing of IVC filters to the Plaintiffs' physicians should be incorporated into the revised Defense Fact Sheet ("DFS"). In the original Case Management Order #4, signed on April 17, 2015, Defendants had agreed to a 17 page Defense Fact Sheet ("DFS") that has existed as the court ordered, mandated and agreed upon disclosure form for well over a year. The required form provided for production of information regarding the sales activities of their District Managers ("DMs").[1] Defendants determined a few months ago that they wished

---

[1] An example of an original DFS is attached as Exhibit "A".

1

to seek court approval changing significant portions of their previously agreed upon disclosures under the DFS.

2. After conferring regarding these matters Lead Counsel for the parties then negotiated an agreement that significantly trimmed the 17 page DFS (containing some 64 requests) to a 2½ page Defendant Profile Form. Lead Counsel for all parties have agreed to the trimmed down request for information in that 2 ½ page profile form save and except for one thing. That issue, concerning the amount of data Defendants must provide regarding District Managers' communications with the Plaintiffs' physicians, was presented to Magistrate Baker so that he could rule on the dispute. That dispute is outlined more precisely below.

3. On November 4, 2016, Magistrate Baker signed his Order Regarding Profile Forms and Deposition Protocols which adopted the Defendants' proposed profile form and not the Plaintiffs' proposed profile form as it regards the issue of production of communications by District Managers (sales representatives) with physicians they have contacted to sell the Cook IVC filters at issue this litigation. [Doc. 2988 at p. 3]. It appears clear from Magistrate Baker's order that he likely misinterpreted the scope of the request made by the Plaintiffs' counsel as Magistrate Baker states (incorrectly): "Plaintiffs' request for communications with physicians *in every MDL* case is unduly burdensome . . . ." [Emphasis supplied]. Plaintiffs' proposal *does not* seek information from "every MDL case", but in fact is limited to communications between District Managers and physicians in a randomly selected subset of only 20% of the cases filed in the MDL.[2] Plaintiffs' proposal strikes a very reasonable balance between the Defendants' concerns over

---

[2] A redlined version of Plaintiffs' proposed modified DPF is attached as Exhibit "B."

proportionality and Plaintiffs' need for at least some of the information that is critical to claims and defenses at issue in the litigation. If the Magistrate's ruling stands, Plaintiffs will essential be prohibited from obtaining any discovery of what Cook's sale representatives were telling doctors about the Celect and Tulip filters when they were selling the product. Plaintiffs will have no way to discover what doctors were being told by Cook and it will impossible to tell one way or another if there was any pattern or practice involved in detailing doctors. It will never be known if the information Cook was telling its sales people to tell doctors ever reached the doctors. The Magistrate's ruling will impossibly affect the way the learned intermediary doctrine and the failure to warn claims are to be properly handled in pretrial, in expected motions to dismiss, or in the trials themselves.

## ARGUMENT

### A. IT IS CLEAR FROM MAGISTRATE BAKER'S ORDER THAT HE DID NOT CONSIDER THE LIMITED NATURE OF THE PLAINTIFFS' DISCOVERY REQUEST.

4. The proposal presented to Magistrate Baker by the Plaintiffs does not require production of "communications with physicians *in every MDL* case". The Plaintiffs' request only seeks information regarding the DMs' marketing activities from a random sample of 20% of the total cases filed in the MDL. To be specific, the Plaintiffs request the revised DFS include the following:

> If the individual case number above ends in 0 or 5, produce all call notes; detail notes; call summaries; entries made by sales representatives into any database or e-room, laptop, or other computer or handheld device; hard copy documents; emails; and/or notes or records or summaries of calls, contacts and/or communications of any kind regarding each healthcare provider for the time period covering three years before Plaintiff's implant to date.

5. The Defendants do not dispute that the information sought by the Plaintiffs is relevant, Cook has simply asserted that burden of producing the information in all cases is disproportionate to the needs of an individual case. The Plaintiffs strongly believe that if Magistrate Baker had appreciated the limitations incorporated into the Plaintiffs' proposal, he would have recognized the request is reasonable as it properly addresses the Defendants' concerns with proportion and the Plaintiffs need for information critical to each case.

### B. AS DEMONSTRATED BY THE PLAINTIFFS' RESPONSE, INFORMATION REGARDING THE HOW THE IVC FILTERS WERE MARKETED AND SOLD TO PLAINTIFFS' PHYSICIANS IS CRITICAL TO PLAINTIFFS' CLAIMS AND DEFENDANTS' DEFENSES.

6. The Master Complaint in this case includes allegations such as the following:

> 55. Information provided by Cook to the medical community and to consumers concerning the safety and efficacy of its IVC Filters did not accurately reflect the serious and potentially fatal adverse events Plaintiffs could suffer. [Doc. 213 at p. 14].
>
> 57. Had adequate warnings and instructions been provided, Plaintiffs would not have been implanted with Cook IVC Filters, and would not have been at risk of the harmful injuries described herein. The Defendants failed to provide warnings of such risks and dangers to the Plaintiffs and their medical providers as described herein. Neither Plaintiffs, nor Plaintiffs' physicians knew, nor could they have learned through the exercise of reasonable care, the risks of serious injury and/or death associated with and/or caused by Cooks' IVC Filters. [Doc. 213 at p. 14].
>
> 85. Despite the aforementioned duty on the part of the Cook Defendants, they committed one or more breaches of their duty of reasonable care and were negligent in:
>
>> a. unreasonably and carelessly failing to properly warn of the dangers and risks of harm associated with the Cook IVC Filters, specifically its incidents fracture, migration, perforation and other failure; [Doc. 213 at p. 19].
>
> 95. At the time and place of sale, distribution and supply of the Cook IVC Filters to Plaintiffs (and to other consumer and the medical community), the

4

>Defendants expressly represented and warranted in their marketing materials, both written and orally, and in the IFUs, that the Cook IVC Filters were safe, well-tolerated, efficacious, and fit for their intended purpose and were of marketable quality, that they did not produce any unwarned-of dangerous side effects, and that they were adequately tested. [Doc. 213 at p. 23].

116. Defendants misrepresented the alleged benefits and characteristics of Cook's IVC Filters; suppressed, omitted, concealed, and failed to disclose material information concerning known adverse effects of Cook's IVC Filters; misrepresented the quality and efficacy of Cook's IVC Filters as compared to much lower-cost alternatives; misrepresented and advertised that Cook's IVC Filters were of a particular standard, quality, or grade that they were not; misrepresented Cook's IVC Filters in such a manner that later, on disclosure of the true facts, there was a likelihood that Plaintiffs would have opted for an alternative IVC Filter or method of preventing pulmonary emboli. . [Doc. 213 at p. 26].

7. In addition to a denial of each of the allegations stated above, the

Defendants' Answer includes the following affirmative defenses:

2. Plaintiffs assumed or incurred any risks associated with the use of any Cook Defendants' medical device or product in connection with his medical treatment by providing his informed consent prior to undergoing medical treatment. [Doc. 446 at p. 18].

6. Cook Defendants had no duty to warn Plaintiffs of any risks associated with the use of any medical device or product for which Cook Defendants are responsible, as any such medical device was supplied to a knowledgeable and sophisticated user of such product, or a learned intermediary, with adequate warnings and IFU, or because that learned intermediary had independent knowledge of any risks associated with the use of such medical device and chose to use it without regard to the adequacy of the warnings and IFU supplied with it. [Doc.456 at p. 19].

10. Plaintiffs' damages or losses, if any, were caused or contributed to by the fault of other products, persons, firms, corporations or entities over whom Cook Defendants had and have no control, or right of control, and for whom they owe no legal responsibility, including culpable non-parties who will be discovered through Cook Defendants ongoing investigation and discovery and to which the jury can allocate fault at trial. [Doc.456 at p. 19-20].

11. Plaintiffs' claims against Cook Defendants are barred for the reason that their damages, if any, were caused by an intervening or superseding proximate cause. [Doc.456 at p. 20].

8.      It is clear from the allegations and affirmative defenses refenced above that the information requested is relevant and necessary to the common claims of all parties to the MDL and the Defendants do not dispute the relevance.  As reflected in the original 17-page Defendant Fact Sheet, Defendants voluntarily agreed to produce in every case a significant amount of detail regarding their interactions with Plaintiffs' healthcare providers, including:  details on consultations and non-DM contacts (including contractual relationships, payments in cash or in kind, etc.) (Section II.A. at pp. 3-7); dates and details of DM contacts, including details on the DMs themselves (Section II.B. at pp. 7-10); and production of related documents, including all consulting agreements, records of communications, compensation records, etc.) (Section III at pp. 10-13 & VI at pp. 14-16.) The Plaintiffs seek only one narrowly focused subset of DM/sales representative data under the original Section VI, as discussed below.

### C. THE INFORMATION PROVIDED IN THE BELLWETHER/DISCOVERY POOL DFSS REGARDING DMS' SALE ACTIVITIES IS INSUFFICIENT.

9.      Exhibit A is the DFS for the *Hill* bellwether trial case. Contrary to Defendants' suggestion that DFSs in bellwether/discovery pool cases provide DM contact information sufficient to satisfy Plaintiffs' needs, the amount of information actually provided is scant. Almost without exception the DFSs served to date contain nothing but responses like those in Exhibit A.

10.     Under Section II.A. regarding non-DM physician contacts, there are 16 questions, counting subparts. Cook responds to all 16 with some variation of: "Unknown at this time," "Discovery and investigation ongoing," "In the process of gathering documents," and so on.

11. The answers are similarly and uniformly unresponsive in Section II.B., which covers DM-physician contact information (in a bellwether case, no less). In fact, Cook responds to nearly half of the questions by stating "Cook Defendants do not track information regarding communications with healthcare providers in a systematic way," which raises the question why the Defendants agreed to produce such information in every case as *quid pro quo* for the 29-page PPF/PFS Plaintiffs were required to serve.

### D. THE PLAINTIFFS' PROPOSAL SIGNIFICANTLY REDUCES THE SCOPE OF THE DISCOVERY BUT PERMITS PRODUCTION OF A REASONABLE SAMPLE OF THE INFORMATION NEEDED TO SUPPORT THE PLAINTIFFS' ALLEGATIONS.

12. Plaintiffs agreed to Cooks' revision to the Defendant Profile Form, which has been cut from 17 to 2 ½ pages and which eliminates nearly every category of information required in the original DFS, with the exception that Plaintiffs continue to demand some level of production of the DM call notes and records of interactions with Plaintiffs' physicians.

13. With regard to such data, Cook's proposal requires only "Cook IRIS physician contact data" for each doctor. As Cook admits, (Doc. 2689, Def. Brief at 3 n.4), the IRIS system was created in 2013 (i.e., after IVC litigation against Cook was underway); and DMs are not required to use it. Hence, it will generate post-litigation information and then only for the DMs who have used it from time to time over the past four years. It will generate no information for the period 2003-2012.

14. Plaintiffs' proposed language, is derived from one of the nine document production requests in the original DFS (Section VI), but it is significantly limited in time and scope. Defendants agreed to produce this information (and much more), as of April 2015 when CMO 4 was entered. They did not seek to avoid this obligation when CMO 4

7

was amended in August 2015. They did not raise a proportionality argument; they did not claim they do not track this information; and they did not mention the financial burden they now allege ("$10,000 per DM"). [Doc. 2689, Def. Brief at 3 n.5]. Instead, they continued to receive lengthy PPF/PFS forms in what surely amounted to hundreds of cases, while serving in return deficient DFS forms like the *Hill* form attached as Exhibit A.[3]

15.   This is important because Defendants argue in part that DM data provided in discovery pool cases should suffice; but it is facially insufficient as Exhibit A demonstrates. Defendants advance a related argument that DM communications must not be a "high priority" given Plaintiffs' lack of inquiry on the subject at 30(b)(6) depositions. This overlooks the fact that at the time those depositions were taken, Plaintiffs anticipated receiving an original DFS in every case as this Court had ordered. Indeed, Cook's observation demonstrates the prejudice Plaintiffs will suffer in having conducted discovery with the assurance of receiving DM call notes and other such materials only to have Defendants now claim that it is unduly burdensome to produce the information. And while Defendants claim that two marketing executives' custodial files reflect "marketing and sales strategy for interactions between District Managers and physicians," (Def. Brief at 4), Plaintiffs do not seek production of records reflecting executive-level strategic planning; they seek documents reflecting what Cook's DMs actually said and did when in contact with Plaintiffs' physicians.

16.   In a further compromise, Plaintiffs suggested that documents be produced in a random sample of 25% of the pending cases.  Ultimately, the Plaintiffs proposal presented to Magistrate Baker further reduced the sample size to 20% to accommodate

---

[3] Negotiations on the DFS and PPF/PFS forms began in earnest when Plaintiffs first served a draft motion to compel following several deficiency notices.

8

future filings. Cook has turned in 12 months' time from an assurance to produce the requested information and far more in every case to a claim that responding to only one of the DM-related production requests is unduly burdensome in one-fifth of the cases.

17. It is a curious position. In August 2015, CMO 4 was amended, reiterating Defendants' obligation to produce all information in the original 17-page DFS. According to the case-filing chart shown to the Court by Cook at the September 8, 2016, status conference, there were 125 cases pending in the MDL at that time. In the preceding 12 months, 7.75 cases were filed each month on average, with July 2015 seeing the second highest number of case filings up to that time. While Defendants may not have foreseen the spike of filings in May-August 2016, they certainly could have predicted a final MDL inventory of 200+ cases, yet they made no mention of undue/disproportionate burden, cost, or inability to track the requested information. Plaintiffs' proposal of sampling 20% of cases is consistent with the number of cases that might foreseeably be filed in total when CMO 4 was amended without protest by Defendants.

18. Again, the Defendants <u>do not contest relevancy</u>. Nor should they. Cook's representations to doctors are critical in each case. They may be proven as to particular doctors in a given case, but also through pattern and practice evidence more generally, which illustrates the need for this information in more than a handful of discovery pool cases. Cook's defenses put the documents at issue, including among others the informed consent defense (Doc. 456, Def. #2), the learned intermediary defense (*Id.*, Def. # 6), and Cook's claim that the physicians themselves are to blame. (*Id.*, Def. ## 10-11.)

    E.   **AS SHOWN IN PLAINTIFFS' RESPONSE, THE BURDEN IS ON THE DEFENDANTS TO DEMONSTRATE HOW THE PLAINTIFFS' LIMITED REQUEST IS IMPROPER AND THEY HAVE NOT MET THAT BURDEN.**

19. "[T]he party resisting discovery bears the burden to show why a particular discovery request is improper. General assertions of hardship will not suffice. … This showing of undue burden typically requires affidavits or other evidence in support." *Lanteri v. Credit Prot. Ass'n*, 1:13-CV-01501-WTL, 2015 WL 6607494 at *3 (S.D. Ind. 2015), *objections overruled*, 2015 WL 6681049 (S.D. Ind. 2015) (internal citations and quotations omitted). Plaintiffs do not have a burden to address all proportionality considerations. Fed. R. Civ. P. 26 (2015 Adv. Cmt. Notes). This is particularly true where, as here, Defendants already agreed to produce this information, the Court enshrined that agreement in a CMO, and the Plaintiffs premised discovery on their belief the information would be produced.

20. Finally, the Rule 26(b)(1) factors favor Plaintiffs' position inasmuch as Cook's representations to physicians are indisputably important to the issues in this action; the amount(s) in controversy (individually and in the aggregate) are far greater than in the typical case; Plaintiffs have no access to call notes and related records except through such discovery; Cook is a well-resourced Defendant who claimed no undue burden when 125 cases had been filed and more were foreseeable; and the expense is proportional to the benefit given that Plaintiffs have yielded on numerous requests to which Cook had previously agreed to respond and Plaintiffs have agreed to a small sampling to address Defendants' proportionality concerns.

## IV.
## CONCLUSION AND PRAYER

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their objection and adopt the Plaintiffs' proposed Defense Fact Sheet.

Respectfully submitted this 18th day of November, 2016.

                                      Respectfully submitted,

                                      RILEY WILLIAMS & PIATT, LLC

                                      /s/ Joseph N. Williams
                                      Joseph N. Williams Atty No. 25874-49
                                      301 Massachusetts Avenue
                                      Indianapolis, IN  46204
                                      Telephone: (317) 633-5270
                                      Facsimile:  (317) 426-3348
                                      Email:  jwilliams@rwp-law.com

                                      *Liaison Counsel to Plaintiffs Steering*
                                      *Committee and on behalf of Plaintiffs*
                                      *Steering Committee*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 18, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

Notice will be served on the parties listed below by first class U.S. Mail, postage prepaid:

| | |
|---|---|
| Anthony J. Urban<br>Brian J. Urban<br>LAW OFFICES OF ANTHONY URBAN, P.C.<br>474 N. Centre Street, 3rd Floor<br>Pottsville, PA 17901 | Arthur F Hoge, III<br>Kahla R Hurley<br>MEE MEE HOGE & EPPERSON PLLP<br>1900 NW Expressway, Suite 1400<br>Oklahoma City, OK 73118 |
| Caleb H. Didriksen, III<br>Carl A. Woods, III<br>DIDRIKSEN LAW FIRM, PLC<br>3114 Canal Street<br>New Orleans, LA 70119 | Christina E. Unkel<br>MAGLIO CHRISTOPHER & TOALE, PA<br>1605 Main St., Suite 710<br>Sarasota, FL 34236 |
| Cliff W. Marcek<br>CLIFF W. MARCEK, P.C.<br>700 S. Third St.<br>Las Vegas, NV 89101 | Cory H. Driggers<br>MORRIS CARY ANDREWS TALAMADE & DRIGGERS<br>P.O. Box 1649<br>Dothan, AL 36302 |
| Curtis Hoke<br>THE MILLER FIRM LLC<br>The Sherman Building<br>108 Railroad Avenue<br>Orange, VA 22960 | David C. Anderson<br>ANDERSON LAW<br>711 Van Ness Avenue, Suite 220<br>San Francisco, CA 94102 |
| David J. Britton<br>LAW OFFICE OF DAVID J. BRITTON<br>2209 N 30th Street, Suite 4<br>Tacoma, WA 98403 | Mark M. Kitrick<br>Elizabeth Alice Mote<br>KITRICK, LEWIS & HARRIS, CO., L.P.A.<br>455 Hutchinson Avenue, Suite 100<br>Columbus, OH 43235-8630 |
| George J. Duzane<br>1675 Liberty Lane<br>Gallatin, TN 37066 | James W. Childress<br>Scott Kehlenbrink<br>CHILDRESS AND AHLHEIM, LLC<br>1010 Market St., Suite 500<br>St. Louis, MO 63101 |
| | |

| | |
|---|---|
| Jay Harris<br>HARRIS, RENY & TORZEWSKI<br>Two Maritime Plaza, 3rd Floor<br>Toledo, OH 43604 | John J. Driscoll<br>Philip Sholtz<br>DRISCOLL FIRM, P.C.<br>211 N. Broadway, Suite 2440<br>St. Louis, IL 63102 |
| Joseph A. Napiltonia<br>LAW OFFICE OF JOE NAPILTONIA<br>213 3rd Avenue North<br>Franklin, TN 37064 | Joseph G. Sauder<br>CHIMICLES & TIKELLIS LLP<br>361 West Lancaster Avenue<br>Haverford, PA 19041 |
| Justin K. Brackett<br>TIM MOORE, ATTORNEY AT LAW, P.A.<br>305 East King St.<br>Kings Mountain, NC 28086 | Kimberly Lambert Adams<br>LEVIN PAPANTONIO THOMAS ETC. PA –<br>PENSACOLA FL<br>316 S Baylen Street, Suite 400<br>Pensacola, FL 32502 |
| Marian S. Rosen<br>ROSEN & SPEARS<br>5075 Westheimer, Suite 760<br>Houston, TX 77056 | Mark P. Bryant<br>BRYANT LAW CENTER, PSC<br>601 Washington Street<br>P.O. Box 1876<br>Paducah, KY 42001 |
| Paul T. Boudreaux<br>RICHARDSON RICHARDSON BOUDREAUX<br>7447 South Lewis Avenue<br>Tulsa, OK 74136 | Peter C Wetherall<br>WETHERALL GROUP, LTD.<br>9345 W. Sunset Road, Suite 100<br>Las Vegas, NV 89148 |
| Richard A. Freese<br>FREESE & GOSS, PLLC<br>Regions Harbert Plaza 1901<br>6th Avenue North, Suite 3120<br>Birmingham, AL  35203 | W. Bryan Smith<br>MORGAN & MORGAN, LLC<br>2600 One Commerce Square<br>Memphis, TN 38103 |
| Wilnar J. Julmiste<br>ANDERSON GLENN LLP –<br>BOCA RATON FL<br>2201 NW Corporate Blvd., Suite 100<br>Boca Raton, FL 33431 | Heather H. Harrison<br>FAEGRE BAKER DANIELS LLP<br>311 S. Wacker Dr., Suite 4400<br>Chicago, IL  60606 |
| Jacob A. Boyd<br>LAW OFFICES OF BEN C. MARTIN<br>329 McKinney Ave., Suite 100<br>Dallas, TX  75204 | Jennifer P. Henry<br>THOMPSON & KNIGHT LLP<br>801 Cherry St., Unit #1<br>Fort Worth, TX  76107 |

| | |
|---|---|
| Michael R. Webber<br>KOMINIAREK BRESLER HARVICK & GUDMUNSEN<br>33 N. Dearborn St., Suite 1310<br>Chicago, IL  60602 | Peter A. Miller<br>MILLER LEGAL LLC<br>175 S. Pantops Dr., 3rd Floor<br>Charlottesville, VA  22911 |
| Peter J. Flowers<br>MEYERS & FLOWERS, LLC<br>3 N. Second St., Suite 300<br>St. Charles, IL  60174 | Randall J. Gudmundson<br>KOMINIAREK, BRESLER, HARVICK & GUDMUNDSON, LLC<br>33 N. Dearborn St., Suite 700<br>Chicago, IL  60602 |

*/s/ Joseph N. Williams*

Joseph N. Williams