IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND           Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS   LIABILITY LITIGATION                MDL No. 2570

_____

This Document Relates to All Actions

_____


**COOK DEFENDANTS' MEMORANDUM IN RESPONSE TO PLAINTIFFS'
OBJECTION TO MAGISTRATE'S ORDER REGARDING PROFILE FORMS AND
DEPOSITION PROTOCOLS**

Cook Defendants submit this Memorandum in Response to Plaintiffs' Objection to Magistrate's Order Regarding Profile Forms and Deposition Protocols and respectfully request that the Court affirm Magistrate Judge Baker's Order Regarding Profile Forms and Deposition Protocols entered November 4, 2016 [Dkt. 2988] ("Magistrate's Order") because it is consistent with the facts and the law before the Court.

### I.     Introduction

MDL 2570 has been pending before the Court since October of 2014.  Since that time, the Counsel for the Parties have regularly consulted with each other and, from time to time, with Magistrate Baker on a variety of discovery and case management issues as MDL 2570 has evolved.  At the time the JPML created MDL 2570, less than 30 cases were pending against the Cook Defendants.  As of November 29, 2016, well over 1,200 cases remain pending against Cook in MDL 2570, with additional cases filed nearly every business day.

In July, the Parties engaged in discussions to modify Amended Case Management Order No. 4 [Dkt. 614] to modify the initial disclosure forms that had been used up to that point in the

litigation. Calls and a face to face meeting between counsel led to an initial teleconference with Magistrate Baker on August 5, 2016. During that call, counsel for Cook Defendants explained the burdens associated with the extremely broad scope of the Defendant Fact Sheet ("DFS") when applied to every single case in the MDL 2570 given the massive growth in the number of cases. Counsel for the Cook Defendants further explained that by informal agreement of the parties, the Cook Defendants had provided full DFSs in only the original Discovery Pool cases because of the burdens associated with doing so. Those burdens included, but are not limited to: obtaining complete manufacturing records from Denmark for each case; obtaining existing documentation regarding the sale of the filter at issue; obtaining the product Complaint file for the claim at issue; identifying, collecting, searching and reviewing the applicable District Manager ("DM") or Regional Manager ("RM") custodial file; identifying and collecting information about Cooks' communications, payments and business relationships (if any) with physicians involved in the case. To date, there have been no complaints by Plaintiffs with the Amended DFSs Discovery Pool or Bellwether cases.[1]

As the Cook Defendants explained and as Magistrate Baker recognized in that first teleconference, the need for most of this information from the Cook Defendants in non-Bellwether and non-Discovery Pool cases is minimal. In fact, through the negotiation process, counsel for the Plaintiffs recognized, as they needed to, that much of the information in the DFS in Amended CMO No. 4 is simply not needed at the preliminary stage of each case.

During that first call with Magistrate Baker, counsel for the Cook Defendants pointed out the burden with respect to identifying communications between sales representatives (District

---

[1] While the Plaintiffs do discuss the original DFS served in Hill, Hill was not part of the original Discovery Pool. Moreover, the DFS has been amended since Hill became a Bellwether case and before it was cited in Plaintiffs' Objection to Magistrate's Order Regarding Profile Forms and Deposition Protocols [Dkt. 3113] ("Plaintiffs' Objection"). Plaintiffs' discussion is therefore misleading because they ignore these two facts in their Brief and instead imply that the original Hill DFS is the only DFS provided in the Hill case. See Plaintiffs' Objection at p.6-7.

Managers) and physicians because Cook did not have a centralized system of tracking communications with physicians until the IRIS system was created and first used in 2013. Thus, attempting to provide all such communication with physicians would require collecting the hard drive *and* email of the applicable sales representative from the relevant time period in each case, and then of course such data must be processed, reviewed and produced. The sales personnel work remotely across the country with laptops that are not backed up to a network and which the representative cannot be without for long, and accordingly, data collection from these devices is costly in terms of both business interruption and vendor expense for remote data collections. Magistrate Baker specifically recognized this burden in that initial call.

Plaintiffs initially demanded custodial files from all implicated District Managers or Regional Managers in every single case be provided with the Defendant Profile Form. Prior to the Cook Defendants briefing the issue to Magistrate Baker, Plaintiffs reduced their demand to a random sample of such custodial files in 25% of the cases pending in MDL 2570. In their briefing to Magistrate Baker, Plaintiffs claimed that they only need such files in 20% of the cases. However, the burden of providing over 250 additional custodial files for cases that are not getting prepared for trial remains disproportional to the needs of those cases and of MDL 2570. Magistrate Baker was well within his discretion when he ruled that such a large number of *additional* custodial files need not be provided in the non-Bellwether cases because the burden of doing so "is not proportional to the needs of the case." Magistrate's Order at p. 2. His ruling was not erroneous or contrary to law.

II. **Legal Standard**

As the Magistrate's Order approving the new Plaintiff Profile Sheet ("PPS") and Defendant Profile Form ("DPF") is non-dispositive in nature, it should be modified or set aside

only if the Court finds that it is "clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a). "The clear error standard is highly differential [sic], permitting reversal only when the district court 'is left with the definite and firm conviction that a mistake has been made.'" *Nat'l Union Fire Ins. Co. v. Mead Johnson & Co.*, No. 3:11-cv-000015-RLY-WGH, 2014 U.S. Dist. LEXIS 30432, at *7 (S.D. Ind. Mar. 10, 2014) (citing *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997)). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.,* No. 1:13-cv-01316-JMS-TAB, 2015 U.S. Dist. LEXIS 94537, at *2-3 (S.D. Ind. July 21, 2015) (citing *Pain Ctr. of SE Ind., LLC v. Origin Healthcare Solutions, LLC*, No. 1:13-cv-00133-RLY-DKL, 2014 U.S. Dist. LEXIS 164550, at *6 (S.D. Ind. Nov. 25, 2014)). Rule 26(b)(2)(C) of the Federal Rules of Civil Procedure states: "On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by the rules or by local rule if it determines that: (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the discovery in resolving the issues."

### III. ARGUMENT

#### A. Magistrate Baker Understood the Scope of Plaintiffs' Request

Plaintiffs contend that the Magistrate's Order shows that Magistrate Baker "likely misinterpreted the scope of the request made by Plaintiffs' counsel" based upon language used in the Magistrate's Order. Specifically, they note that the Magistrate's Order states that "Plaintiffs' request for communications with physicians in every MDL case[. . .]." Plaintiffs' Objection at p.

2 (citing the Magistrate's Order at 2). A review of the Parties' submissions shows that there was no room for misunderstanding the scope of Plaintiffs' requests.

In Cook Defendants' Brief in Support of Proposed Defendant Profile Form [Dkt. 2592] ("Cook Defendants' Brief") filed September 16, 2016, the Cook Defendants noted that "Plaintiffs' counsel continue to seek to require the Cook Defendants provide the custodial file for the responsible DM in **a random sample of 25%** of the pending cases." Cook Defendants' Brief at 4 (emphasis added). Cook Defendants further pointed out that "**this random sample of DM Custodial files** would also create a burden that is not proportional to the needs of the cases given the indisputable burdens that doing so for over two hundred cases would create and given the discovery that they have already received from Cook Defendants." Id.[2] Therefore, the Cook Defendants left no ambiguity regarding what Plaintiffs' sought and clearly established the disproportional burden associated with the reduced demand.

Furthermore, Plaintiffs clearly defined what they sought in Plaintiffs' Response to Defendants' Proposed Defendant Profile Form ("Plaintiffs' Response") [Dkt. 2660] filed on September 23, 2016. Plaintiffs' stated that "Plaintiffs suggested that documents [DM Custodial Files] be produced **in a random sample of 25% of the pending cases (and now suggest 20%** to accommodate future filings)." Plaintiffs' Response at p. 4 (emphasis added). Thus, the submissions of the Parties made clear what the plaintiffs were ultimately seeking from the Court, an order requiring that custodial files for over 200 cases be collected from individuals working all over the country at substantial cost to the Cook Defendants. While the Magistrate's Order may have a typographical error regarding what Plaintiffs' ultimately requested, the decision to deny Plaintiffs' request for such a requirement cannot fairly be characterized as "clearly

---

[2] As noted in the Cook Defendants' Brief, "when considering expected costs of collection, processing, searching, reviewing, storing and producing such data, the Cook Defendants now estimate that the costs involved could easily **exceed $10,000** per DM, depending on the volume and nature of the data at issue." Id. at p. 3 n 5.

erroneous or contrary to law." After all, in an MDL where general corporate discovery has been limited to 31 individual custodians based upon proportionality, Plaintiffs' argument that requiring the Cook Defendants to now provide custodial files for over 200 *additional* individual custodians is proportional to the needs of the case strains reason beyond its breaking point.

> **B. Plaintiffs Seek Custodial Files That are Cumulative of Other Discovery Regarding How the Filters Were Marketed and Sold**

As noted in the Cook Defendants' Brief, the custodial files produced from custodians such as Darrell Talbert (Global Product Manager), Bruce Fleck (Product Manager, Regional Manager and Clinical Specialist) and Rob Lyles (Former Vice President of the Peripheral Intervention Strategic Business Unit) provide a wealth of information about how the products were sold and marketed, including significant communications with District Managers, Regional Managers and physicians regarding Cook IVC Filters. This is in addition to the volumes of marketing materials and sales training materials previously produced.

As noted in Cook Defendants' Brief, Cook has already produced the applicable custodial files for the DM or RM responsible during the relevant time period in the Discovery Pool cases. Notably, despite this production of custodial files, the Plaintiffs made no effort to depose any such representatives of Cook in those cases before the Bellwether cases were selected.

On two separate occasions, the plaintiffs deposed Darrell Talbert on Sales and Marketing issues pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure. The deposition topics included the very issue of tracking communications by Cook sales personnel with physicians. See Notices of Deposition, Topic 18, copies of which are attached hereto as Exhibit A and B. Mr. Talbert testified that there was no centralized system for tracking such communications at Cook. Not much time was spent on the pattern and practice of communications with physicians. This suggests that the priority of the issue relied upon by Plaintiffs' counsel to support imposing

6

the burden of collecting DM custodial materials in well over 200 cases on the Cook Defendants is not high.  This lack of priority demonstrates that the burden Plaintiffs' counsel seeks to impose is not proportional to the needs of the cases which are not set for Bellwether trial.

### C. Plaintiffs' Discussion of the Outdated Defendant Fact Sheet From Hill is Misleading

The Hill case was not a member of the original Discovery Pool cases selected by the parties.  The Defendant Fact Sheet presented by Plaintiffs from the Hill case was served May 15, 2015.  When the Discovery Pool was selected October 5, 2015 [Dkt. 709 and Dkt. 710], Hill was not among the cases selected.  After Hill was selected as a Bellwether case, Cook Defendants served an Amended DFS on September 23, 2016 and a Second Amended DFS on October 28, 2016 and produced custodial files for Courtney Whitelock on November 10, 2016.  Those amended DFSs include substantial additional information (including trade secrets) not included in the original DFS as the parties had previously informally agreed that additional information need only be provided in the Discovery Pool cases.  Plaintiffs have not raised any issues with the amended DFSs provided in the Hill case or in the other Bellwether cases.  Not only is citing the original DFS in Hill misleading because Amended DFSs have been provided for Hill subsequent to it becoming a Bellwether case, it is misdirected as the original DFS is not at issue in Magistrate Baker's ruling.  The issue here is whether the Cook Defendants should be required to provide custodial files for DMs or RMs in well over 200 cases that are not being worked up for trial in light of the burdens associated with doing so.  Given the indisputable burdens and the limited benefits associated with those burdens, such a requirement cannot  fairly be deemed proportional to the needs of the case.

7

## IV.    CONCLUSION

Based on the foregoing, Plaintiffs have failed to meet their burden of demonstrating that the Magistrate's Order was clearly erroneous or contrary to the law.  Instead, the record before Magistrate Baker and this Court establish that the burdens associated with collecting, processing, searching, reviewing and producing custodial files for the responsible District Manager or Regional Manager in well over 200 cases is not proportional to the needs of the individual cases or MDL 2570 when those cases are not being worked up for trial.  Therefore, the Cook Defendants respectfully request that Plaintiffs' Objection to Magistrate's Order Regarding Profile Forms and Deposition Protocols be denied.

Submitted this 5th day of December, 2016.

*/s/ James M. Boyers*
Douglas B. King, Esq., Co-Lead Counsel
James M. Boyers, Esq.
WOODEN & McLAUGHLIN LLP
One Indiana Square, Suite 1800
Indianapolis, IN  46204-4208
Tel:  (317) 639-6151
Fax:  (317) 639-6444
doug.king@woodenmclaughlin.com
jim.boyers@woodenmclaughlin.com

Andrea Roberts Pierson, Esq., Co-Lead Counsel
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, IN  46204
Tel:  (317) 237-0300
Fax:  (317) 237-1000
andrea.pierson@faegrebd.com

James Stephen Bennett, Esq., Co-Lead Counsel
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, IN  46802
Tel:  (260) 424-8000
Fax:  (260) 460-1700
stephen.bennett@faegrebd.com

Counsel for Cook Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2016, a copy of the foregoing was served by electronic mail to Plaintiffs' Co-Lead Counsel with distribution to all other plaintiff counsel of record to be made by Plaintiffs' Co-Lead Counsel:

Michael W. Heaviside
HEAVISIDE REED ZAIC
mheaviside@hrzlaw.com

Ben C. Martin
LAW OFFICE OF BEN C. MARTIN
bmartin@bencmartin.com

David P. Matthews
MATTHEWS & ASSOCIATES
dmatthews@thematthewslawfirm.com

*/s/ James M. Boyers*
James M. Boyers, Esq.