UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND           Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS   LIABILITY LITIGATION               MDL No. 2570

_____

This Document Relates to Plaintiff
MARIAN INCAVO
Civil Case No. 1:16-cv-06047

_____

**COOK DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND**

Plaintiff's claim against Loyola University Health System ("Loyola") is barred by the Illinois 4-year statute of repose for medical negligence, and Loyola is therefore fraudulently joined in this matter.  In her Motion to Remand, the plaintiff, Marian Incavo ("Plaintiff") spends a single paragraph attempting to rebut the fact that the statute of repose has run on her claims against Loyola, and she cites no authority in support of her position.  This is because, as thoroughly demonstrated below, the law is uniformly against Plaintiff.  Because there is no reasonable possibility that Plaintiff will be able to recover against Loyola, the only non-diverse defendant, Plaintiff's Motion to Remand should be denied.

**Procedural History And Factual Allegations Of The Complaint**

This case was removed by the Cook Defendants[1] from the Circuit Court of Cook County, Illinois to the United States District Court for the Northern District of Illinois and transferred to this Court by the JPML.

---

[1] The Cook Defendants in this matter are Cook Incorporated, Cook Medical LLC f/k/a Cook Medical Incorporated, Sabin Corporation d/b/a Cook Polymer Technology, and Cook Canton LLC (collectively "Cook Defendants").  Plaintiff also named William Cook Europe ApS as a defendant, but never effected service.  Nonetheless, as stated in paragraph 15 of the Notice of Removal, William Cook Europe ApS is also a diverse defendant.

1

In her Complaint, Plaintiff, a citizen of Illinois, brought a number of product liability claims against the Cook Defendants, including strict liability, negligence, negligent misrepresentation, and breach of warranty claims, relating to a Cook Celect® vena cava filter (the "Filter").  The Cook Defendants are not citizens of Illinois.

Plaintiff also brought a single count for medical negligence against Loyola, the only defendant that is a citizen of Illinois.  Plaintiff's medical negligence claim is also based on the implant of the Filter.  The Filter was implanted in Plaintiff's husband, Noel Incavo (the "Decedent"), prior to a spinal procedure at Loyola on either April 21, 2009 or September 21, 2009.  The Complaint is inconsistent as to the month.  (Comp. ¶¶ 1, 15.)  Plaintiff returned to Loyola on September 7, 2016 – approximately five years later, regardless of which implant date is correct.  (Compl. ¶ 16.)  Decedent died on September 10, 2014.  (*Id.*)  Plaintiff alleges that the Filter was the cause of Decedent's death, and makes no allegations against Loyola regarding Decedent's treatment from September 7, 2016 to September 10, 2016.  (Compl. ¶¶ 42-48.)  Plaintiff filed her Complaint on September 12, 2016, another two years later.

Plaintiff's single count of medical negligence against Loyola is for failing to "develop and implement a follow up plan to monitor, assess or remove the Cook IVC filter" and that Loyola "negligently failed to develop and implement an effective protocol for routine follow-up care, monitoring and retrieval" of the Filter.  (Compl. ¶ 46.)  According to Plaintiff, Loyola failed to develop and implement an effective protocol for follow-up care despite the fact that it "knew or should have known that the Cook IVC Filters should be retrieved when no longer indicated, and that the longer the Filter remains in the body, the higher the risk of device failure and thromboembolic events;" and it "knew or should have known that Interventional

Radiologists seldom provide follow-up care to patients implanted with Inferior Vena Cava Filters." (*Id*.)

Notably, Plaintiff did not bring a medical negligence claim against any of Decedent's surgeons, interventional radiologists, or other doctors involved in the prescribing or implant of the Filter and did not allege that any negligence occurred during Decedent's treatment at Loyola University Medical Center in September of 2014.

**Plaintiff's Claim Against Loyola
Is Barred By The Statute Of Repose**

**I.     Legal Standard**

A plaintiff "may not join a non-diverse defendant simply to destroy diversity jurisdiction." *See Schur v. L.A. Weight Loss Ctrs*., 577 F.3d 752, 764 (7th Cir. 2009). In such situations, a defendant may remove the lawsuit to federal court by establishing that the non-diverse defendant was "fraudulently joined." *See Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992). "Fraudulent joinder doesn't require a showing of bad faith on the plaintiff's part." *Millman v. Biomet Orthopedics, Inc.*, No. 3:13-CV-77 RLM-CAN, 2013 WL 6498394, at *1 (N.D. Ind. Dec. 10, 2013) (evaluating joinder with respect to Illinois law). Rather, a court must decide whether, "after resolving all issues of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the [non-diverse] defendant." *Id*. (quoting *Schur*, 577 F.3d at 764). Put another way, the court "must ask whether there is 'any reasonable possibility' that the plaintiff could prevail against the non-diverse defendant." *Id*. However, a "reasonable" possibility of recovery is distinct from "any" possibility of recovery. *See Whelchel v. Briggs & Stratton Corp.,* 850 F. Supp. 2d 926, 935 (N.D. Ill. 2012).

A court properly finds fraudulent joinder when the statute of limitations or repose for a cause of action against the non-diverse party has run, and thus there is no possibility that a

3

plaintiff could state a cause of action against it in state court. *LeBlang Motors, Ltd. v. Subaru of Am., Inc.*, 148 F.3d 680, 690 (7th Cir. 1998); *Hill v. C.R. Bard, Inc.*, 582 F. Supp. 2d 1041, 1045 (C.D. Ill. 2008) (finding non-diverse surgeons were fraudulently joined in patient's products liability suit against diverse manufacturer where statute of limitations had run as to surgeons and denying remand).

Here, there is no reasonable possibility that Plaintiff will be able to recover against the non-diverse defendant, Loyola, because her claim is barred by the statute of repose governing medical negligence. 735 ILCS 5/13-212(a). Accordingly, Plaintiff's Motion to Remand should be denied.

**B.** **Plaintiff's Claim Is Prima Facie Barred By The Statute Of Repose**

From the face of her Complaint, it is clear that Plaintiff's claim against Loyola University Health System is barred by the four-year statute of repose. *See* 735 ILCS 5/13-212(a). Plaintiff was implanted with the Filter at Loyola on either April 21, 2009 or September 21, 2009. The Complaint is inconsistent as to the month. (Compl. ¶¶ 1, 15.) Plaintiff returned to Loyola on September 7, 2016 – approximately five years later, regardless of which implant date is correct. (Compl. ¶ 16.) There is no allegation in the Complaint regarding any treatment by Loyola in the interim. Plaintiff admits as much in her Motion to Remand. She tries, however, to save her claim by arguing that some rule regarding continuing negligence extends the statute of repose to her benefit. Tellingly, she spends only a single paragraph on the issue and cites not a single authority on the issue.

What Plaintiff has attempted to do, again without citation to supporting authority, is conflate the discovery rule under the statute of limitations with the statute of repose. Neither the statute nor the case law allows for this. The statute at issue, 735 ILCS 5/13-212(a), establishes both a two-year statute of limitations and a four-year statute of repose governing any action

4

5

against a physician or hospital arising out of patient care, including claims for medical negligence.  735 ILCS 5/13-212(a); *Augutis v. U.S.*, 732 F.3d 749, 753 (7th Cir. 2013); *Orlak v. Loyola Univ. Health Sys.*, 885 N.E.2d 999, 1003 (Ill. 2007).  The two-year limitations period is triggered by the plaintiff's discovery of the injury.  In contrast, the four-year repose period is triggered by the occurrence of the act or omission that plaintiff alleges caused the injury, thereby setting an outer limit within which a cause of action must be brought.  *Augutis*, 732 F.3d at 753; *Orlak*, 885 N.E.2d at 1003.  "The statute of repose sometimes bars actions even before the plaintiff has discovered the injury.  While this may result in harsh consequences, the legislature enacted the statute of repose for the specific purpose of curtailing the 'long tail' exposure to medical malpractice claims brought about by the advent of the discovery rule." *Orlak*, 885 N.2d at 1003.

Because Plaintiff's claim against Loyola University Health System is barred, she has no reasonable possibility of success in state court.  Loyola University Health System was therefore fraudulently joined, and no finding of bad faith is necessary.  *Millman*, 2013 WL 6498394, at *1.

C.     **Plaintiff's Argument For A Continuing Duty Exception Is Baseless**

Plaintiff argues in her Motion for Remand that the date of implant is "simply not the sole date" that triggered the statute of repose, because Plaintiff "pled a continuing duty to follow-up, monitor, and when appropriate, retrieve the filter," and Loyola breached those "ongoing" duties. (Pl. Mot. for Remand at 7.)  Plaintiff cites no legal authority in support of this argument, and in fact, the law actually establishes the opposite – the statute of repose begins to run from the date of Decedent's treatment and is not extended by any alleged "ongoing" failure.  The only legal

authority cited by Plaintiff has to do with the statute of limitations, which is separate from the statute of repose.[2]

### 1.  The Complaint Does Not Plead A Continuing Duty, Nor Could It.

As an initial matter, despite what Plaintiff argues in her motion, the Complaint does not plead that Loyola University Health System had a continuing duty to actually follow-up, monitor, and retrieve the Decedent's Filter.  The Complaint alleges only that Loyola University Health System failed to develop a follow-up *plan* or *protocol* for follow-up.  (Compl. ¶ 46.) There is no allegation that Loyola University Health System negligently provided follow-up care to Decedent, that it failed to remove Decedent's Filter when indicated, or even that Decedent's specific Filter was a temporary filter that should have been removed—in fact, the Complaint alleges that the Filter could be implanted permanently or temporarily.  Instead, the Complaint alleges only two instances in which Decedent was even treated at Loyola University Medical Center – when he was implanted with the Filter before spinal surgery in April or September 2009, and when he presented for leg pain in September 2014.

But even if the Complaint had alleged that Loyola University Health System had a duty to provide Decedent with actual follow-up care, rather than a *plan* for follow-up care, no such duty exists under law, and Plaintiff has cited no authority establishing an ongoing duty for a hospital to provide care to a patient after the patient has been discharged.

Whether a duty exists is a question of law for the court to decide.  *See Dolin v. SmithKline Beecham Corp.*, 62 F. Supp. 3d 705, 713 (N.D. Ill. 2014) (citing *Simpkins v. CSX Transp., Inc.,* 965 N.E.2d 1092, 1096 (Ill. 2012)).  It is well established under Illinois law that while a hospital owes a patient a duty of protection, it is not an insurer of a patient's safety.

---

[2] Plaintiff's claim may also be barred by the two-year statute of limitations, but for the sake of this motion, only the four-year statute of repose is being addressed.

6

*Reynolds v. Mennonite Hosp.*, 522 N.E.2d 827, 829 (Ill. App. Ct. 1988). The decision to treat a patient in a particular manner is a medical question entirely within the discretion of the treating physician, not the hospital, and a hospital can be liable only for medical negligence committed *on its premises* with knowledge or notice of the performance of the wrongful acts. *Id*. at 30. It would be an unprecedented expansion of a hospital's duty to find that it had an ongoing responsibility to provide care to patients who were no longer being treated at the hospital.

Plaintiff does not allege that Loyola was negligent during Decedent's September 2014 treatment. The only remaining treatment date is in 2009, over seven years before the filing of the Complaint. Therefore, any claim that Loyola breached a duty to provide care to Decedent would also be barred by the four-year statute of repose. *See Hayes v. Wilson*, 670 N.E.2d 867, 868 (Ill. App. Ct. 1996) ("[O]nce treatment by the negligent physician is discontinued, the statute of repose begins to run, regardless of whether or not the patient is aware of the negligence at termination of treatment.").

### 2. The Statute of Repose Is Not Extended By Any "Ongoing" Duty

Even if Plaintiff could successfully allege that Loyola University Health System had a continuing duty to provide follow-up care, which she cannot, Plaintiff fails to cite any legal authority that Loyola's breach of that "ongoing" duty would delay the time that the statute of repose, not the statute of limitations, began to run. In fact, the case law establishes the opposite.

The four-year repose period is triggered by the occurrence of the act or omission that caused the injury. 735 ILCS 5/13-212(a). "The only exception to the four-year statute of repose is the fraudulent-concealment exception, contained in section 13–215 of the Code," which Plaintiff has not raised here. *Orlak*, 885 N.E.2d at 1003. "Once treatment by the negligent physician is discontinued, the statute of repose begins to run, regardless of whether or not the

patient is aware of negligence at termination of treatment." *Hayes v. Wilson*, 670 N.E.2d 867, 868 (Ill. App. Ct. 1996).

In *Orlak*, the plaintiff sued Loyola University Health System for failing to notify her in a timely manner that she may have contracted hepatitis C ("HCV") from a blood transfusion that she received during her hospitalization in 1989. *Id*. at 1001. Over twelve years after the transfusion, in August of 2000, Loyola University Health System notified the plaintiff she should be tested for HCV because her blood donor had recently tested positive for the virus. The plaintiff tested positive for HCV and sued Loyola University Health System for negligence two years later, in 2002.

At the time the plaintiff received her transfusion in 1989, no tests for HCV were available. But by 1996, the FDA had advised hospitals to notify patients who received blood transfusions prior to 1992 to be tested for HCV. The plaintiff alleged that therefore, beginning in 1996, Loyola University Health System owed plaintiff a duty of reasonable care to notify her that she had potentially contracted HCV through her blood transfusion and needed to be tested. The plaintiff alleged that for every day thereafter that the duty existed, "Loyola continued to breach its duty of care by failing to notify plaintiff of the potential for infection and the need to be tested." *Id*. at 1002.

The Supreme Court of Illinois rejected the plaintiff's argument and found that her claims were barred by the statute of repose, which began running from her blood transfusion in 1989. *Id.* at 1009. The Court held that "were we to endorse plaintiff's position, we would be opening the door to potentially open-ended liability for health-care providers anytime new medical tests were developed that might suggest the need for a notification program for present and former patients." *Id*. at 1008. The Court noted that this obligation "might even include patients with

8

whom a hospital may have had no contact for many years. Such a result would undermine the purpose behind the enactment of the medical malpractice statute of repose." *Id*. The Court explained that the "statute was part of the legislative response to a medical malpractice insurance crisis; the purpose was to reduce the cost of medical malpractice insurance and to assure its continued availability." *Id*. at 1008–09. That crisis "was thought to stem from the advent of the 'discovery rule' in the late 1960s, in which a cause of action accrued only when a person learned of an injury or reasonably should have learned of it," creating a "long tail of liability." *Id*. at 1009. The Court noted that it was "in response to this problem that the General Assembly enacted the statute of repose," and allowing plaintiff's action to go forward would be contrary to that purpose. *Id*. Therefore, it found the plaintiff's claim, despite her allegations of a continuing breach of duty, was barred by the statute of repose. *Id*.

The Illinois appellate court decisions are consistent. *See, e.g., Hanks v. Cotler*, 959 N.E.2d 728 (Ill. App. Ct. 2011); *Ferrara v. Wall*, 753 N.E. 2d 1179 (Ill. App. Ct. 2001); *Turner v. Nama*, 689 N.E.2d 303 (Ill. App. Ct. 1997).

In *Hanks v. Cotler*, the court explained that the statute of repose is distinct from a statute of limitations "in that it runs regardless of whether a patient is aware of any negligence at the termination of treatment." 959 N.E.2d at 735. In that case, the plaintiff alleged that his various doctors failed to disclose the negative results of certain liver biopsies that were performed. *Id*. at 735-36. The court applied the statute of repose from the dates the plaintiff was treated by those doctors; any ongoing failure to disclose the biopsy results did not extend the statute of repose. *Id*. at 738.

In *Turner v. Nama*, the patient's estate alleged that her physician was negligent in failing to notify the patient that her Pap smear had tested positive for carcinoma in 1990. 689 N.E.2d at

305. After the patient was diagnosed with cervical cancer by another doctor in 1993, she returned to her original physician, who informed her of the results of the 1990 test. The patient suffered a stroke and died in 1995, and her estate sued almost immediately thereafter, but five years after the Pap smear.

The estate argued that from 1990 to 1993, the physician had a continuing duty to ensure the patient was notified of her test results, and that the physician's failure to do so constituted an ongoing course of negligent treatment. *Id*. at 311. In addition, the plaintiff alleged that the defendant breached a duty to follow up with the patient when the patient neither returned for a six-month check-up nor a yearly check-up. *Id*. According to the plaintiff, the statute of repose thus did not start until the last date of the physician's negligence, in 1993. *Id*. at 310. The court rejected this argument, explaining that the defendant's failure to notify and failure to follow-up with the patient did not constitute an ongoing course of continuous negligent medical treatment that would delay the running of the statute of repose, and that the plaintiff's claims were barred. *Id*. at 312.

In *Ferrara v. Wall*, the plaintiff underwent a prostate specific antigen (PSA) test in 1993 that indicated he had an abnormally high PSA level. 753 N.E. 2d at 1180. The defendant physician failed to inform the plaintiff of the test results. *Id*. The plaintiff was tested again in 1995, revealing an abnormally high PSA level, after which the defendant told him about the first test results from 1993. *Id*. The plaintiff was diagnosed with prostate cancer in 1995 and sued the defendant in 1998, alleging that the defendant breached his duty to timely inform the plaintiff of the results of his 1993 test and failed to provide the appropriate medical care in response to those test results. *Id*. The plaintiff argued that his claim was not barred by the statute of repose because the defendant's failure to notify him of the abnormal test results constituted an ongoing

10

course of negligent medical treatment, and because the repose period did not begin to run until 1995, when the defendant finally told the plaintiff of his abnormal PA results. *Id*. at 1181. The court again rejected this argument, holding that a continuing failure to notify the patient, without affirmative medical treatment, does not constitute a continuing course of negligent medical treatment that would delay the running of the statute of repose. *Id*. at 1183.

Here, Plaintiff's claim against Loyola is extremely similar to the dismissed claim in *Orlak*. Plaintiff alleges that Loyola was negligent by failing to develop a plan for Decedent's follow-up care. Plaintiff fails to allege what such a plan would be, but presumably it would include informing Decedent, either prior to his discharge from the hospital in 2009, or via phone or some other communication at some interval after his discharge, that he should have a follow-up appointment or appointments to assess and monitor the Filter. Presumably, although also not alleged in the Complaint, Decedent was never told this and therefore never sought follow-up treatment with respect to the Filter. Therefore, Loyola's alleged negligence is an omission: a failure to notify Decedent that he should seek follow-up care. This omission occurred when Decedent was implanted with the Filter in 2009 without a follow-up plan.

Like the plaintiffs in *Orlak* and the above cases, Plaintiff here argues that Loyola had an ongoing duty that was continually breached for as long as Loyola failed to follow up with Decedent, and that therefore the four-year statute of repose thus did not begin to run in 2009, but rather at some later time. The Illinois Supreme Court and appellate courts have soundly rejected this argument, and this Court should as well. *Hanks*, 959 N.E.2d 728 (Ill. App. Ct. 2011); *Pavlik v. Komhaber*, 761 N.E.2d 175 (Ill. App. Ct. 2001); *Ferrara*, 753 N.E. 2d at 1183; *Turner*, 689 N.E.2d at 312; *Hayes v. Wilson*, 670 N.E.2d 867 (Ill. App. Ct. 1996); *Aznel v. Gasso*, 507 N.E.2d 83 (Ill. App. Ct. 1987).

11

In addition, *Orlak* forecloses Plaintiff from arguing that Loyola did not have had a duty at the time the Filter was implanted, but subsequently developed a duty to follow-up with Decedent when Loyola University Health System learned of allegedly increased risk associated with the Filter, and that such a duty could have arisen triggering the statute of repose within the four years prior to the filing of Plaintiff's Complaint.  The Illinois Supreme Court rejected essentially the same argument in *Orlak*, holding that it would *not* impose an obligation on hospitals to notify all of its present and former patients, including patients with whom a hospital may have had no contact for many years, any time new medical developments suggested a need.  885 N.E.2d at 1008.  To hold otherwise would expose Loyola to future liability for an indefinite period of time. "Such potential exposure directly contravenes the specific intent of the period of repose, *i.e.,* 'to terminate the possibility of liability after a defined period of time' and 'to curtail the 'long tail exposure to medical malpractice claims brought about by the advent of the discovery rule.'" *Hayes*, 670 N.E.2d at 868-69.

Because Plaintiff's claim against Loyola is barred by the four-year statute of repose and has no possibility of succeeding in state court, Loyola was fraudulently joined, and this Court should deny Plaintiff's Motion for Remand.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Remand should be denied.

Dated: December 9, 2016

Respectfully submitted,

/s/John T. Schlafer
Andrea Roberts Pierson, Co-Lead Counsel
John T. Schlafer
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:	(317) 237-0300
Facsimile:	(317) 237-1000
andrea.pierson@faegrebd.com
john.schlafer@faegrebd.com

James Stephen Bennett, Co-Lead Counsel
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana  46802
Telephone:	(260) 424-8000
Facsimile:	(260) 460-1700
stephen.bennett@faegrebd.com

Douglas B. King, Co-Lead Counsel
James M. Boyers
WOODEN MCLAUGHLIN LLP
One Indiana Square, Suite 1800
Indianapolis, IN 46204-4208
Telephone:	(317) 639-6151
Facsimile:	(317) 639-6444
doug.king@woodenmclaughlin.com
jim.boyers@woodenmclaughlin.com

*Attorneys for Defendants Cook Incorporated, Cook Medical LLC f/k/a Cook Medical Incorporated, Sabin Corporation d/b/a Cook Polymer Technology, and Cook Canton LLC*

US.109248545.02

## CERTIFICATE OF SERVICE

I hereby certify that on December 9th, 2016, a copy of the foregoing COOK DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

/s/ John T. Schlafer