# **EXHIBIT G**

Page 111

1       IN THE UNITED STATES DISTRICT COURT
2          SOUTHERN DISTRICT OF INDIANA
3             INDIANAPOLIS DIVISION
4

   IN RE:  COOK MEDICAL,          )
5  INC., IVC FILTERS              )
   MARKETING, SALES               )
6  PRACTICES, AND PRODUCTS        )
   LIABILITY LITIGATION           ) 1:14-ML-2570-RLY-TAB
7                                 )
   --------------------------     )
8  This document relates to:      )
                                  )
9  1:13-cv-01876-RLYTAB           )
10
11         The continued deposition of ARTHUR GAGE
12  called for examination pursuant to notice and
13  pursuant to the Federal Rules of Civil Procedure for
14  the United States District Courts pertaining to the
15  taking of depositions taken before JO ANN LOSOYA,
16  Certified Shorthand Reporter within and for the
17  County of Cook and State of Illinois at 2111
18  Butterfield Road, Downers Grove, Illinois, on
19  January 9, 2017 at the hour of 11:00 o'clock a.m.
20
21
22
23
24

Page 112

```
 1   APPEARANCES:
 2        FEARS NACHAWATI LAW FIRM
          MR. MATTHEW MCCARLEY
 3        4925 Greenville Avenue
          Suite 715
 4        Dallas,Texas 75206
          (866) 705-7584
 5        mccarley@fnlawfirm.com
              Appeared on behalf of the Plaintiff;
 6
 7        FAEGRE BAKER DANIELS
          MS. JESSICA BENSON COX
 8        MS. ANNA RUTIGLIANO
          300 North Meridian Street
 9        Suite 2700
          Indianapolis,Indiana  46204-1750
10        (317) 237-0300
          jessica.cox@faegreBD.com
11        anna.rutigliano@faegreBD.com
              Appeared on behalf of the Defendants.
12
13
     ALSO PRESENT:
14
     BEN DIXON, VIDEOGRAPHER
15
16   REPORTED BY:  JO ANN LOSOYA
     CSR LICENSE:  084-002437
17
18
19
20
21
22
23
24
```

Page 127

1     A.    About half hour.
2     Q.    And you guys didn't look at any papers?
3     A.    No.
4     Q.    Did you meet with your attorney at all
5  before this morning?
6     A.    No.
7     Q.    Have you seen him since your last
8  deposition?
9     A.    Yes.
10    Q.    How many times?
11    A.    Once.
12    Q.    And when do you think that was?
13    A.    About, what, a couple of weeks ago.
14    Q.    A couple of weeks ago?
15    A.    Hm-hmm.
16    Q.    How long did you meet with him then?
17    A.    About three hours.
18    Q.    Three hours?
19    A.    About three hours.
20    Q.    And did you talk about today's deposition
21  in that meeting?
22    A.    No.
23    Q.    I'm not asking for anything that you
24  specifically talked to him.  I just wanted to know

Page 128

1  if you looked at any documents to get ready for
2  today during that meeting.
3            When you met with your attorney for
4  those three hours a couple of weeks ago, was it you
5  and your attorney?
6       A.   No.
7       Q.   Was it your girlfriend, too?
8       A.   Yes -- no, no.  It was a medical doctor.
9       Q.   Oh, your medical doctor.  Do you remember
10 which doctor?
11      A.   I don't know.  I forgot his name.
12      Q.   Was it a doctor that has treated you for
13 a certain problem?
14      A.   No.
15      Q.   Is it a medical doctor that you have
16 visited for any reason in the past?
17      A.   Well, the IVC filter.
18      Q.   So, it's a doctor that you -- that has
19 treated you before?
20      A.   No, I never met him.
21      Q.   So this is the first time you have met
22 this doctor?
23      A.   Yes, hm-hmm.
24      Q.   Tell me what was the purpose of that

| | | |
|---|---|---|
| 1 | | meeting? |
| 2 | A. | To discuss the IVC filter, I believe. |
| 3 | Q. | Did you set this meeting up? |
| 4 | A. | No. |
| 5 | Q. | Have you ever seen this doctor since? |
| 6 | A. | No. |
| 7 | Q. | Do you plan to see this doctor again? |
| 8 | A. | No. |
| 9 | Q. | Tell me what did you talk to this doctor |
| 10 | | about for three hours? |
| 11 | A. | About removing the IVC filter. |
| 12 | Q. | Did you meet with this doctor and your |
| 13 | | attorney at a hospital? |
| 14 | A. | Yes. |
| 15 | Q. | What hospital? |
| 16 | A. | I can't recall the name of it. |
| 17 | Q. | Was it in Chicago? |
| 18 | A. | No.  It was in -- no. |
| 19 | Q. | Where did you go? |
| 20 | A. | Denver. |
| 21 | Q. | Denver.  So did you fly to go see -- |
| 22 | A. | Yes. |
| 23 | Q. | Did you go by yourself? |
| 24 | A. | Yes. |

Page 130

1    Q.    So you flew and did you meet your
2  attorney at the hospital?
3    A.    Yes, I did.
4    Q.    And it was only you and your attorney at
5  this appointment?  Was it just you and your attorney
6  at this appointment?
7    A.    Yes.
8    Q.    Tell me who scheduled the appointment.
9    A.    My attorney.
10   Q.    Did you ever hear anything about this
11 doctor or know anything about the doctor before you
12 got there?
13   A.    No.
14   Q.    So, you talked to this doctor about
15 taking your filter out?
16   A.    Yes.
17   Q.    Tell me -- tell me everything you
18 remember talking to this doctor about.
19   A.    Well, we talked about removing the IVC
20 filter.
21   Q.    And what did he say?  Was it a he or a
22 she?
23   A.    It was a he.
24   Q.    What did he say?

Page 131

1     A.    He said that it would be bad for me if I
2  did try and remove it.
3     Q.    Do you remember why he said that?
4     A.    Yes.
5     Q.    Why?
6     A.    Because it could cause problems for me.
7     Q.    If you were there for three hours, did
8  you talk about anything else?
9     A.    No.
10    Q.    Did he ask you any sorts of questions?
11    A.    Yes.
12    Q.    What kinds of questions did he ask you?
13    A.    Asked me how long the IVC filter been in
14 there and I told him.
15    Q.    What else did he ask you?
16    A.    I can't really recall.
17    Q.    Do you remember what hospital you went to
18 in Denver?
19    A.    No.
20    Q.    Did your attorney drive you?
21    A.    Yes.
22    Q.    Did you bring any medical records with
23 you?
24    A.    No.

Page 132

1      Q.    Did you bring any pictures with you or CT
2  scans or X-rays?
3      A.    No.
4      Q.    Had you -- had anyone given the doctor
5  any of your medical records before you got there?
6      A.    Yes.
7      Q.    Had your attorney given him records?
8      A.    Yes.
9      Q.    Did he talk to you about reviewing your
10 records?
11     A.    Yes.
12     Q.    What did he say he found when he looked
13 at your records?
14     A.    He found it would be, you know,
15 detrimental for me if I had the procedure to remove
16 it.
17     Q.    Did he say anything else about your
18 filter?
19     A.    No.
20     Q.    He didn't say anything about -- anything
21 specifically about your filter?
22     A.    No.
23     Q.    He didn't say anything was wrong with
24 your filter?

Page 133

1    A.    Yes.
2    Q.    He said something was wrong with your
3  filter?
4    A.    Yes.
5    Q.    Tell me what he said.
6    A.    He said the filter had tilted.
7    Q.    What else did he say?
8    A.    That it was threatening different organs
9  in my body.
10   Q.    What do you mean by "threatening"?
11   A.    Poking out.
12   Q.    What organs did he say it was poking out
13  at?
14   A.    My pancreas, my colon, my liver, and my
15  spine.
16   Q.    Okay.  Did he say it was actually
17  touching any of these?
18   A.    He believed it was touching my spine
19  because of the pain that I'm in.
20   Q.    Did he order any tests or anything for
21  you while you were there?
22   A.    No.
23   Q.    Did he say he wanted to see you back?
24   A.    I can't recall that he said that, no.

Page 134

1  Q. Do you have any plans to see him again?
2  A. I don't. No. Unless my attorney
3  recommend it.
4  Q. Do you know why you went all the way to
5  Denver to talk to this guy?
6  A. To be examined.
7  Q. Why did you go all the way to Denver?
8  A. Because my attorney recommended him.
9  Q. Why? Is there not someone in Chicago
10 that you could have gone to?
11 A. I don't know.
12     MR. MCCARLEY: Objection, form.
13 BY MS. COX:
14 Q. You don't know why your attorney
15 recommended this specific person?
16 A. No.
17 Q. Do you think -- is there anything at home
18 that would give you the name of this doctor or the
19 hospital where you went?
20 A. No.
21     MR. MCCARLEY: His name is Reza Rejabi,
22 R-E-Z-A R-E-J-A-B-I.
23     MS. COX: And so I think we should have
24 an authorization to get those records. But if we

1   don't, we will send you one to fill out so we can.
2   BY MS. COX:
3       Q.   Would a good way to figure out about what
4   you talked to this doctor about be to read the
5   medical records from the visit?
6       A.   Yes.
7       Q.   Okay.  Besides going to meet this doctor
8   in Denver with your attorney, have you had any other
9   meetings with your attorney?
10      A.   No.
11      Q.   Tell me, Mr. Gage, how do you keep all
12  your files and records at home?  Do you have a
13  planner or a diary or a desk or a file cabinet?
14  Tell me how you just keep all your records.
15      A.   I don't.
16      Q.   You don't keep anything?
17      A.   No.
18      Q.   Okay.  Does anyone else keep them for
19  you?
20      A.   No.
21      Q.   Okay.  Now, do you live with your
22  girlfriend?
23      A.   No.
24      Q.   You don't?