# EXHIBIT L

FaegreBD.com

# FAEGRE BAKER
# DANIELS

USA ▾ UK ▾ CHINA

**Andrea Roberts Pierson**
*Partner*
andrea.pierson@FaegreBD.com
Direct +1 317.237.1424

Faegre Baker Daniels LLP
300 North Meridian Street ▾ Suite 2700
Indianapolis ▾ Indiana 46204-1750
Main +1 317 237 0300
Fax +1 317 237 1000

April 7, 2017

<u>**VIA E-MAIL**</u>

Hon. Magistrate Tim A. Baker
Unites States District Court
Southern District of Indiana
Birch Bayh Federal Building & U.S. Courthouse
46 East Ohio Street
Indianapolis, IN 46204

Re:     <u>Cook Medical, Inc., IVC Filters Products Liability Litigation MDL 2570</u>

Dear Judge Baker:

I am writing on behalf of the Cook Defendants in anticipation of our upcoming discovery conference. Below I have outlined six issues that the Cook Defendants would like to address during the conference.

1. **Duration of Four Expert Witness Depositions:** On March 17, 2017, Plaintiffs served the Cook Defendants with seventeen expert reports written by thirteen different experts. In addition to issuing generic, common-issue expert reports, many experts also provided two separate, case-specific expert reports for the *Hill* case and the *Gage* case. The *Hill* and *Gage* cases involved different products (Celect in *Hill*; Tulip in *Gage*), different patients, and different alleged injuries or damages. The Cook Defendants will depose the proffered experts in the coming weeks. Of the thirteen expert witnesses disclosed, Cook anticipates that it will require two days (for a total of 14 hours) to conduct the depositions of four of the thirteen proffered expert witnesses: Dr. David Kessler; Dr. Mohammad Rajebi; Dr. Alexander Marmureanu; and Leigh Anne Levy, R.N.

   Given the considerable length and breadth of the experts' opinions, counsel for Cook has requested that Plaintiffs identify two days per witness -- for a total of 14 hours – for the four above-named witnesses only. Plaintiffs have refused, asserting that Cook is limited to seven hours per expert under Rule 30(d)(1).

   Rule 30(d)(1) "does not cap depositions categorically at seven hours. Instead, it states that the court [must] authorize more time 'for a fair examination." *Indianapolis Airport Authority v. Travelers Property Cas. Co. of America*, 2015 WL 4458903, *5 (S.D. Ind. July 21, 2015), quoting *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 521 (7th Cir.

Hon. Magistrate Tim A. Baker                    -2-                           April 7, 2017

2008))(holding "the rule broadly requires the Court to allow additional time "if needed to fairly examine the deponent…") (internal quotations omitted).

While the Cook Defendants agree that the questioning of Drs. Kessler, Rajebi, Marmureanu, and Ms. Levy should not be redundant, given the breadth of the opinions proffered, the depositions of these four expert witnesses will require more than seven hours. Specifically, Dr. David Kessler's report totals 160 pages and covers topics regarding regulatory issues, animal studies, clinical studies, filter safety and efficacy, product testing, and myriad other issues. Including schedules and appendices, Dr. Kessler's report is 458 pages. Dr. Mohammad Rajebi is an interventional radiologist who has written a 51-page generic report, as well as case-specific reports for *Hill* and *Gage*, which are 13 and 19 pages, respectively. He offers opinions regarding product instructions, testing, design, risk, post-market reporting, and regulatory issues, in addition to opinions regarding the medical history and medical causation issues related to Mrs. Hill and Mr. Gage. Dr. Alexander Marmureanu is a cardiothoracic surgeon whose generic report spans 37 pages, and whose case-specific reports span 17 pages for each *Hill* and *Gage*. Like Dr. Rajebi, Dr. Marmureanu offers opinions regarding at least six different substantive topics, as well as the medical history and medical causation issues related to Mrs. Hill and Mr. Gage. Ms. Levy is a life care planner, and she has written reports for *Hill* and *Gage* totaling 33 and 31 pages, respectively. Ms. Levy has extensive opinions regarding the long medical histories of Mrs. Hill and Mr. Gage, as well as opinions regarding their medical treatment, medical causation, medical prognosis and potential future treatments. She also interviewed Mrs. Hill five times, Mr. Gage two times, and spoke with fact witnesses and Dr. Marmureanu. The Cook Defendants are entitled to inquire about all of the bases and information upon which she relies for her opinions.

The complexity and scope of these witnesses' reports warrant a deposition of up to 14 hours for these four witnesses. One day of seven hours is simply not enough time to properly examine the witnesses given their myriad opinions and analyses of multiple cases.

2. **Proportionality and Remaining Depositions:**   This Court limited additional company discovery depositions and custodial file productions on November 15, 2016. (*See* Discovery Order, ¶¶ 1-2 (Nov. 15, 2016) [Dkt. No. 3069] (permitting Plaintiffs six additional depositions, beyond the original 20 authorized by CMO 2, for a total of 26 depositions, as well as permitting six additional custodian files).) Likewise, Judge Young ordered during the November 10, 2016, Status Conference that company discovery was closed, noting that Plaintiffs would be permitted to complete the discovery ordered by this Court in the Discovery Order and requiring Plaintiffs to submit one letter identifying any outstanding discovery issues with any previously-served written discovery upon which Plaintiffs were permitted to follow up. Plaintiffs did so, Cook responded, and those issues have been resolved. As such, the Court effectively turned the page from two years of company discovery against Cook to the case-specific fact and expert discovery required to prepare the *Hill* and *Gage* matters for trial in October 2017 under the deadlines in Judge Young's Bellwether Trial Plan.

Although this Court limited Plaintiffs to 26 common-issue, company discovery depositions, Plaintiffs have requested 28 such depositions (and have indicated that they believe they are still

Hon. Magistrate Tim A. Baker                    -3-                         April 7, 2017

entitled to three more, for a total of 31 depositions). As such, the Cook Defendants respectfully request that Plaintiffs be limited to the eight remaining common-issue, company discovery depositions permitted by the Court in its November 15, 2017, Discovery Order, rather than the 10 to 13 currently anticipated by Plaintiffs (Plaintiffs have already taken 18 depositions). (*See* Remaining Proposed Company Discovery Depositions (attached as Exhibit A).)

The parties have conferred regarding this issue, and as the Cook Defendants understand it, Plaintiffs believe that only the depositions for five current employees[1] should count toward the remaining eight depositions permitted by the Discovery Order, leaving Plaintiffs three *additional* common-issue, company discovery depositions. Plaintiffs also believe that former employees of and third-party consultants to Cook[2] do not count toward the Court's allotted depositions in the Discovery Order, and have requested depositions from five such individuals.

Cook respectfully submits that enforcing the Court's Discovery Order and limiting Plaintiffs to the eight additional depositions ordered by this Court is proportional to the needs of the case and is consistent with the parties' need to focus their efforts on the case-specific and expert discovery currently required by the Court's Bellwether Trial Plan. Fact discovery closes under the Court's Bellwether Trial Plan on May 22, 2017, and the Cook defendants must depose a dozen Plaintiffs' experts and defend presumably eight more company depositions (13, under Plaintiffs' view) in just the next few weeks. In addition, the parties will depose two treating physicians and one therapist in *Hill,* and two treating physicians in *Gage*, in the next few weeks. Cook has requested independent medical examinations of Mrs. Hill, which must take place prior to Cook's May 16, 2017, expert report deadline, and Cook's experts must prepare and disclose their Rule 26(a)(2)(B) expert reports by May 16, 2017. Plaintiffs undoubtedly will seek the depositions of Cook's experts, which also must occur prior to the anticipated July 24, 2017, close of expert discovery (currently June 22, 2017). *Daubert*, summary judgment, and motions in limine will be filed quickly thereafter.

In short, company discovery has been occurring for more than two and one half years, and the time for new or expansive company discovery has passed. Plaintiffs' ongoing requests for depositions, custodial files, requests for production and the like threaten the Court's deadlines and are not proportional to the needs of *Hill* and *Gage*. The time, expense, and effort involved in preparing for and defending the additional two, five, or more employee, former employee, or consultant depositions requested by Plaintiffs is substantial and will involve hundreds of hours of attorney time, and is a significant business interruption for all of the witnesses. Given the schedule in *Hill* and *Gage*, and the issues in those cases, put simply, many of the depositions are

---

[1] Jennifer Brown, Lars Milling, James Smith, Henrick Gyllun, and Anthony Ragheb are current employees whose depositions have been requested.
[2] Plaintiffs are also attempting to depose two former employees—Jim Carlson and Kem Hawkins— two third-party consultants to Cook—Drs. Timperman, Smouse—and Dr. Kaufman of the Dotter Institute.

Hon. Magistrate Tim A. Baker                    -4-                    April 7, 2017

inconsistent with the needs of those cases.  Cook respectfully requests that the Court adopt a proportional approach and limit Plaintiffs to the eight previously-ordered depositions.[3]

3. **Plaintiffs' New Requests For Production:**  Plaintiffs also recently served Cook with new requests for production in contravention of Judge Young's November 10, 2016, direction that company discovery is closed.  The Cook Defendants request that the Court protect it from Plaintiffs' new Requests for Production of Documents.  Specifically, Plaintiffs have issued over one hundred requests for production of documents to the Cook Defendants, purportedly under CMO 2, with the notices of deposition regarding Drs. H. Robert Smouse, Paul Timperman, and John Kaufman.[4]  However, nothing about CMO 2 obligates the Cook Defendants to produce documents in conjunction with the depositions of third parties, and the time to seek Cook documents regarding those parties has long since passed.

Moreover, the Requests are significantly overbroad and unduly burdensome. For example, the definition of "Documents" in the Requests calls for the production of every document referenced in a responsive document, regardless of whether the referenced documents are responsive themselves.  It also seeks the production of documents relating to products other than the two at issue in this action—Tulip and Celect—even though the Court has barred discovery unrelated to Tulip and Celect from this action.  With the exception of Request No. 5, the Requests also are not limited to any specific timeframe.

The Requests also seek discovery that is disproportionate to the needs of the case, particularly to the needs of *Hill* and *Gage*. The parties have engaged in extensive discovery in this action, and the Cook Defendants have already produced their relevant, non-privileged internal documents relating to Tulip and Celect.  This production totals nearly 250 gigabytes of data, comprising well over a million pages of documents. The burden and expense on the Cook Defendants to produce documents that relate to third parties and products other than Tulip and Celect, or documents that have no bearing on any issue presented in this action, far outweigh any potential benefit that Plaintiffs might receive from obtaining such documents, given that other products are not at issue in this action and the Cook Defendants already have produced significant quantities of responsive documents

CMO 2 makes clear that the Cook Defendants have no obligation to respond to requests for production accompanying deposition notices served on third parties.  *See* Case Management

---

[3] On April 4, 2017, Plaintiffs also requested the custodial file of Mr. Neal Fearnot, and continue to express a right to request at least three more custodial files under the Court's Discovery Plan. Cook is presently evaluating the proportionality of that request and the time required to collect, review, and produce his custodial file. However, the Cook Defendants respectfully submit that—given the timing—Plaintiffs should not be permitted to request additional custodial files until the conclusion of the October bellwether trial, or that any such requests should be considered on a case-by-case basis and timing for production should be ordered based on the scope of the anticipated production.  The parties have conferred and counsel for Plaintiffs report that they have no specific, additional custodial files in mind.

[4] Plaintiffs also claim Cook must produce documents in response to a subpoena directed to Dr. Frank Lynch, which includes another 27 document requests that, with subparts, totals more than 100 requests.

Hon. Magistrate Tim A. Baker                    -5-                         April 7, 2017

Order #2 (Deposition Protocol) [Dkt. No. 281] at ¶ (D)(2) ("Prior to <u>any Cook 30(b)(6) and/or custodial fact witness depositions</u>, Defendants shall separately produce to each non-duplicative request attached to the deposition notice by producing the discoverable documents . . . ") (emphasis added). Therefore, Plaintiffs' reliance on CMO 2 is misplaced, and Cook respectfully submits that it need not respond to CMO 2 requests for documents accompanying notices served on third parties.

4. **Production of Expert Reliance Materials:** Despite the Cook Defendants' request on March 17, 2017, that the parties mutually agree to produce within seven days of disclosure of the parties' Rule 26(a)(2)(B) reports all of the materials[5] upon which the experts relied—something which Plaintiffs concede Cook is entitled to receive[6]—that production has not yet been completed and threatens the Cook Defendants' ability to timely produce its experts' reports. (*See* Email from Andrea Pierson, attorney for the Cook Defendants, to Michael Heaviside, attorney for Plaintiffs (Mar. 20, 2017) (noting request for the materials was made on Friday, March 17, 2017) (attached as Exhibit C).) Plaintiffs agreed on March 29, 2017, to produce all such materials and represented they would do so by March 31, 2017. (*See* Email from Ben Martin, attorney for Plaintiffs, to Andrea Pierson et al., attorneys for the Cook Defendants (Mar. 27, 2017) (attached as Exhibit D).) However, as of the writing of this letter, key information is still missing (particularly in the *Hill* case). (*See* Email from Andrea Pierson, attorney for the Cook Defendants, to Matt Schultz, attorney for Plaintiffs (Apr. 4, 2017) (outlining missing reliance materials) (attached as Exhibit E).)

It is now three weeks since service of Plaintiffs' experts' reports, and key reliance materials are still missing. The following reliance materials still have not yet been produced but allegedly serve as the bases of the opinions of Plaintiffs' experts.

- In Dr. Rajebi's *Hill*-specific report, on pg. 7, Dr. Rajebi comments that he reviewed a Duplex IVC ultrasound that demonstrated a narrowing of Mrs. Hill's IVC—in the same location as her IVC filter—when compared to previous imaging. He also commented that *on his exam* she presented with bilateral lower extremity edema. He comments on pg. 11 that Mrs. Hill's condition is consistent with IVC stenosis that will substantially contribute to IVC syndrome and the development of IVC thrombosis. In essence, Dr. Rajebi states in his report that, based on his review of imaging and personal examinations performed on March 16, 2017, he is of the opinion that Mrs. Hill has caval stenosis and duodenal stenosis as a result of her Cook IVC filter. Plaintiffs have yet to produce a single medical record, note, patient form, or other document regarding Mrs. Hill's examinations by Dr. Rajebi or other physicians. The Cook Defendants are also missing Addendum A, Exhibit 1 to Dr. Rajebi's *Hill*-specific report. Cook's experts cannot

---

[5] Defendants excluded the production of Cook documents produced in this litigation and publically-available medical literature.

[6] *See* Email from Matt Schultz, attorney for Plaintiffs, to Andrea Pierson, attorney for the Cook Defendants (March 24, 2017) (conceding that "clearly you are entitled to receive reliance materials that are neither Cook documents or cited and publically available literature") (attached as Exhibit B).

prepare their reports and opinions without that information and adequate time to review and interpret it. [7]

- Ms. Levy references "Social Media Records - 04/16/15" and other documents relied upon in her report. The Cook Defendants requested social media records via Requests for Production dated September, 1, 2016, and October 13, 2016, and Plaintiff declined to produce those records. The Cook Defendants also served an interrogatory requesting information about Mrs. Hill's social media usage, and Plaintiff objected to it "as seeking information outside the proper scope of discovery and as intended to harass, embarrass or violate Plaintiff and Plaintiff's family and friend's privacy." (*See* Plaintiff's Answers to Interrogatories (Oct. 12, 2016).)   Cook requested that Plaintiff supplement her interrogatory answer in a letter dated October 20, 2016, and further requested screenshots of Mrs. Hill's Facebook account on November 17, 2016, and Plaintiffs refused. However, Plaintiff apparently provided these records to her own experts (and provided her counsel all social media passwords, according to her deposition) but has steadfastly refused to provide social media information to the Cook Defendants.

- Also referenced in Ms. Levy's report but not produced despite multiple requests are notes or records from four interviews with Mrs. Hill and notes or records from consultation with Dr. Marmareanu.  Ms. Levy also has failed to produce notes and records from interviews of Mr. Gage and his ex-wife, upon which she apparently relies for her opinions.

- The Cook Defendants are missing materials relied upon by Mr. La Disa: (1) CAD models created by MARVL from design drawings for use in FEA model; (2) algorithms for FEA analysis; (3) ev3. Protégé everflex™ self-expanding peripheral stent system. 2010; and (4) Amplatzer occluder and delivery system - instructions for use. 2012. Receipt of these materials is critical to the work of the Cook Defendants' engineering experts, and the computational analysis to investigate those bases for the expert's opinions takes considerable time.

- The Cook Defendants are missing certain materials cited by Mr. McMeeking, such as: (1) the Greenfield exemplar on which he relied; (2) the Vena-Tech exemplar on which he relied; and (3) exact citation or source material for footnotes 36, 37, 38, 41, and 42 (each listed over-generically as, e.g., "bostonscientific.com" or "azom.com."

- The Cook Defendants are missing materials cited by Mr. Ritchie and Mr. Litsky, such as: (1) the Sherman explanted filter; (2) native versions of all photographs contained in the report; and (3) all other explanted filter examined by Mr. Ritchie and/or Mr. Litsky.

---

[7] On April 6, 2017, the undersigned counsel received a disc of images from counsel for Mrs. Hill, which presumably contains the Duplex IVC ultrasound on which two of Plaintiffs' expert rely, which Cook repeatedly and specifically requested during the last three weeks.  Plaintiffs still have yet to produce any notes, medical records, or other documents regarding medical examinations specifically noted by Dr. Rajebi, one of their medical experts.

Hon. Magistrate Tim A. Baker                    -7-                        April 7, 2017

The Cook Defendants have repeatedly requested these materials since March 17, 2017, and respectfully request that the Court compel Plaintiffs to produce those materials within 48 hours. The failure timely to produce these materials substantially jeopardizes the Court's expert disclosure and expert deposition deadlines.

5. **IME Protocol:** Pursuant to the amended Case Management Order #19, this Court ordered the parties to "work together to establish a protocol for IMEs." On March 30, 2017, the Cook Defendants provided a draft protocol to Plaintiffs for consideration. Plaintiffs objected to the draft protocol on Monday April 3, 2017, but did not provide any specific revisions to the protocol. The parties conferred regarding the protocol yesterday and have agreed to do so again on or before April 13, 2017. However, if resolution is not quickly reached and the IMEs quickly scheduled, Cook's experts will be unable to complete the IMEs prior to their May 16, 2017, expert disclosure deadline. (Realistically, the IMEs need to be completed at least two weeks before.) We respectfully request that this issue be placed on the Court's agenda for a conference on April 14, 2017, in the event that all issues regarding the IME's are not resolved. Time is of the essence.

6. **Outstanding Discovery Requests in *Hill*:** On September 1, 2016, the Cook Defendants served Interrogatories and Requests for Production on Mrs. Hill. After Mrs. Hill submitted her unverified (and untimely) responses on October 12, 2016 (attached as Exhibit F), Cook's counsel sent a letter on October 20, 2016 (attached as Exhibit G), raising various concerns about Mrs. Hill's objections and renewing requests for supplemental answers, responses, and documents. Objections not timely raised are waived. *See Stelor Productions, Inc. v. Oogles N Googles*, 2008 WL 5062786, *1 (S.D. Ind. Nov. 21, 2008). To date, Mrs. Hill has not provided supplemental answers or documents for the following topics and we request that the Court order Plaintiff to produce the relevant documents and supplemental answers.

- Employment Records (Request No. 31) – Cook sought employment records from November 17, 2000 to the present. Plaintiff's response was "not applicable" to this Request. According to Ms. Levy's expert report, however, Mrs. Hill had a part-time job during this time period and immediately before her filter placement, which was not reflected on her Plaintiff's Fact Sheet. If Mrs. Hill has any employment records relating to this part-time job in her possession, we request that she produce them. If she does not have any records, then she at a minimum must identify this employer by name and address, and provide Cook with a signed authorization to obtain records directly from that employer. If plaintiff is not relying on any evidence relating to this subject to support her allegations or damages, then Mrs. Hill should state that as well.

- Social Media Information (PFS, Interrogatory No. 24, Request No. 37) – Cook sought information on Mrs. Hill's social media in connection with the Plaintiff's Fact Sheet, Interrogatories and Requests for Production. Specifically, the PFS requests "Screenshots of all webpages of each type of social media used by you (including, but not limited to, Facebook, Twitter, Instagram, Vine, Snapchat, Youtube, LinkedIn) showing any and all "posts" and/or "messages" from the date of implantation to the present." (Section

Hon. Magistrate Tim A. Baker                    -8-                    April 7, 2017

VIII(m)).  While Plaintiff's response notes that "documents are attached," no documents were attached.  When asked about it in her deposition, Mrs. Hill said she gave them to her attorney, and that she provided her attorney with her social media login information.  (Hill 220:8-16; 220:17-24).  Cook again requested the information from her counsel after the deposition by letter, but no information has been forthcoming.  Request 37 also asked for "text messages, e-mails, tweets, or any and all social media posts (including but not limited to Face book, Twitter, Instagram, Vine, Snapchat, YouTube, LinkedIn, and Pinterest) that relate to, refer to, or concern the Filter, vena cava filters generally, your medical conditions, your recovery, your alleged damages, or Cook."  Plaintiff belatedly objected and responded by refusing to provide the information in her written discovery responses.  However, at least one of her experts, Ms. Levy, apparently possesses Mrs. Hill's social media because she included it in her report.  Ms. Levy and Plaintiffs' other medical experts also now allege substantial damages and injuries to Mrs. Hill's physical, emotion, and financial conditions.  Plaintiff should be required to provide all social media information to Cook, including passwords, profile information, and posts, without restriction.  Ms. Levy specifically relied on it and, further, Mrs. Hill and her experts now claim wide-ranging damages to which Mrs. Hill's social media is relevant.  Counsel repeatedly has ignored and failed to provide substantive information regarding her social media, and any objections to its production were not timely made and are waived.  Moreover, given Plaintiffs' experts' sweeping allegations regarding Mrs. Hill's damages and limitations, all of her activities are now squarely at issue in the case.  Moreover, given Plaintiffs' claim that Cook should have anticipated litigation by Mrs. Hill as early as August 2013, it is equally relevant to know what information Mrs. Hill possessed and retained in anticipation of litigation (or discarded) at least as early as August 2013.  Mrs. Hill should be required to disclose all social media and passwords for the same from at least November 17, 2010, to the present date.

- Privilege Objections (Interrogatory Nos. 8, 20, Request Nos. 2, 12, 20, 27, 28, 29, 30, 37) – Plaintiff asserted multiple objections to Interrogatories and Requests on the basis of privilege without describing the nature of the documents or information.  Plaintiff should be required to supplement her answers and provide a privilege log as appropriate.

- Medical Expenses (Interrogatory No. 5, Request No. 24) – Cook sought information about the nature of all expenses, financial losses, or damages identified in Plaintiff's discovery responses as being attributable to her filter.  Plaintiff declined to provide information about what each of the expenses were for in her response.  Plaintiff should be required to supplement her answer with this information.  Also, after her deposition, we requested receipts for Mrs. Hill's out-of-pocket expenses discussed during her deposition.  Plaintiff has not produced that information to Cook and Cook renews its request for these documents, which were also part of Request No. 24, but which are Plaintiff's claimed damages.

- Insurance Policy and Subrogation Information (Interrogatory Nos. 6, 7) – Cook requested information for the policy period, policy number, policy limits, and any subrogation

Hon. Magistrate Tim A. Baker                    -9-                            April 7, 2017

claims related to Mrs. Hill's medical insurance. Mrs. Hill did not provide this information, and Cook renews its request for supplemental responses that include this information.

- Communications Between Plaintiff and Any Third Party (Request No. 8) – Plaintiff solely produced medical bills in response to this request, which is not responsive. If Plaintiff has responsive documents, she should produce them, or otherwise state that she does not have any responsive documents in her possession, custody, or control.

- Information About Evidence to Support Plaintiff's Claims (Interrogatory Nos. 11-16, Request Nos. 13-18) – Plaintiff objected to multiple interrogatories about evidence that supported Plaintiff's claims on the basis that the Interrogatories were "premature." Cook renews its request for information regarding evidence that supports Plaintiff's various claims. Given the recent completion of her experts' reports, these Interrogatories should no longer be deemed "premature," and if Plaintiff does not have evidence to support her various allegations, she should state that she has not yet identified such evidence.

- Information Requested That Was Objected to on the Basis of Requesting Documents (Interrogatory Nos. 9, 18, 19, Request No. 1) – In multiple Interrogatories, Cook sought information about multiple subjects, yet Plaintiff objected on the basis that those Interrogatories sought production of documents. Plaintiff should be required to both supplement her answers with the information, as well as provide any responsive documents pursuant to Request No. 1, which seeks any documents identified in response to the interrogatories.

- In her deposition, Cook asked Mrs. Hill when she first contacted an attorney about a lawsuit against Cook and how she came to find her attorney. Plaintiff's attorney objected multiple times and instructed her not to answer based on attorney-client privilege, despite Cook's reassurances that they were not seeking the content of the communications, just the date. (Deposition of Elizabeth Hill, attached as Exhibit H, 34:8-35:16, 36:7-10, 229:7-231:21). This information is highly relevant and crucial to the issue of when the parties began anticipating litigation, especially in light of plaintiffs' allegations that Cook should have anticipated litigation on a specific date when it is possible that Plaintiff herself was not yet anticipating litigation.

- In her deposition, Cook also learned that Plaintiff submitted handwritten responses to her Plaintiff Fact Sheet, and someone else typed the answers. Plaintiff was unsure who typed the answers but believes it was someone at her attorney's office. (Exhibit I at 40:6-42:9). Cook requested a copy of the handwritten answers but Plaintiff's counsel said he "suspect[s] we destroyed those things" but would confirm and consider Cook's request to obtain a copy. *Id.* Cook's counsel sent a follow up letter on November 17, 2016 (attached as Exhibit I), but Plaintiff did not provide those answers.

Hon. Magistrate Tim A. Baker                    -10-                    April 7, 2017

Cook requests that the Court order production of the above-described information within 7 days.  Given Cook's impending expert disclosure deadline, time is of the essence.

In addition, given the conflicting information provided by Dr. Levy's report regarding Mrs. Hill's activity, medical condition and complaints, all employment, physical limitations, and monetary damages, Cook requests that the Court given Cook leave to serve an additional 25 interrogatories on Mrs. Hill and, if necessary thereafter, reopen her deposition.

Respectfully submitted,

Andrea Roberts Pierson

ARP/eds

US.110954867.02

EXHIBIT A

## **Remaining Proposed Company Discovery Depositions**

| Potential Deponent | Relationship to Cook |
|---|---|
| Jennifer Brown | Employee |
| Henrick Gyllun | Employee |
| Lars Milling | Employee |
| Anthony Ragheb | Employee |
| James Smith | Employee |
| Kem Hawkins | Former Employee |
| Jim Carlson | Former Employee |
| John Kaufman | Third Party |
| H. Robert Smouse | Third Party |
| Paul Timperman | Third Party |

EXHIBIT B

**From:** Matt Schultz [mailto:mschultz@levinlaw.com]
**Sent:** Friday, March 24, 2017 11:12 AM
**To:** Pierson, Andrea Roberts
**Cc:** Bennett, James Stephen; Tanner, John Joseph; Campbell, Andrew L.; Webber, Chuck; Schlafer, John T.; Cox, Jessica Benson; David Matthews; Ben Martin; Michael Heaviside (mheaviside@hrzlaw.com) (mheaviside@hrzlaw.com); Joseph N. Williams (jwilliams@rwp-law.com)
**Subject:** RE: Cook Depositions Old & New

Thanks. Pls see my responses below and note that Dr. Garcia is no longer available on April 17. His June availability is listed in the updated chart beneath my responses.

**From:** Pierson, Andrea Roberts [mailto:Andrea.Pierson@FaegreBD.com]
**Sent:** Thursday, March 23, 2017 9:00 PM
**To:** Matt Schultz
**Cc:** Bennett, James Stephen; Tanner, John Joseph; Campbell, Andrew L.; Webber, Chuck; Schlafer, John T.; Cox, Jessica Benson; David Matthews; Ben Martin; Michael Heaviside (mheaviside@hrzlaw.com) (mheaviside@hrzlaw.com); Joseph N. Williams (jwilliams@rwp-law.com)
**Subject:** FW: Cook Depositions Old & New

Matt –

I'm responding to the portion of your email below about expert deposition dates.  A couple of preliminary points:

A week ago I asked Mike if the parties could agree to exchange the materials upon which their experts relied within 7 days of production of the expert reports (excluding medical records previously produced by either side; Cook company documents identified by bates number in the reports; and published medical literature).  I understand that your side is discussing the issue.  Obviously, receipt of the materials on which the expert relies will impact how quickly we are able to schedule an expert's depositions.  We won't be in a position to confirm any expert deposition dates with finality until we know how soon we will receive those materials.  **We should have an answer for you today. I don't know about all the experts, but for the ones I was involved in (Kessler, Fishbein and Betensky), the vast majority of reliance materials were Cook documents or articles and other publicly available information (not limited to medical literature---for example, Dr. Kessler cites a number of FDA guidance materials and federal regulations that are freely available). I**

1

don't see that as an impediment to agreeing on depositions dates, but clearly you are entitled to receive reliance materials that are neither Cook documents or cited and publibly available materials. I will follow up today on how soon we can get this to you. For the three I mention above I think I could get it to you by Monday.

Additionally, as I assume you anticipated, Cook objects to the duplicative and cumulative nature of the experts and their opinions.  The reports include numerous instances of 2 or more experts opining on the same topic, frequently far outside of his/her area of qualification.  Absent plaintiffs' commitment promptly to withdraw the duplicative opinions and reports, Cook will seek relief from the Court.  Please let me know Plaintiffs position by the COB tomorrow.  **We will not withdraw any portion of any report. Different experts may cover the same topic from the perspective of different disciplines (clinical vs. regulatory, as one example) or for different purposes. Not every expert will testify in every trial and an expert would not necessarily cover every topic in his or her report at each trial. We cannot foresee all the circumstances under which an expert may testify and so naturally they must report broadly to preserve their right to testify if called upon. As to qualifications, that would be a Daubert/evidentiary issue for motion practice.**

We agree that it's important to get dates on the calendar under the assumption that we will receive the experts' materials in the next few days, and that duplicative opinions are withdrawn.  Assuming those things happen, some of the dates provided work, but others do not.  We are still considering dates on a couple of experts, as noted below.   Please hold dates with the experts consistent with the chart below.  Let me know if you have questions.  **Andrea I would suggest that with all of the upcoming and overlapping defendant and nonparty depositions in both MDL-wide and bellwether cases, we select dates. The experts cannot guarantee these dates for weeks on end, as we have seen with Dr. Garcia. If we have to bump a date because Cook needs more time or for some other reason, so be it; but there is no reason not to set the depositions now so everyone can schedule around them, make travel arrangements, etc., especially for depositions that are a month or more away.**

**Here is the updated calendar reflecting Dr. Garcia's new proposed dates and my comments.**

| WITNESS | DATES PROVIDED | LOCATION | COOK RESPONSE: |
|---|---|---|---|
| Betensky, Rebecca | April 21 | Cambridge, MA | Ok to April 21.  9 am start ok? Please confirm preferred location for notice. **Will confirm location.** |
| Fishbein, Michael | April 11-14 | Los Angeles, CA | We discussed via separate email.  Let's talk about this one next week. **OK** |
| Garcia, David | ~~April 17~~ June 20-22 | Seattle ,WA | This will probably work.  I can confirm next week.  Please let us know if there is a preferred location. **No longer works for witness but will get location information for future planning.** |

| Johnson, Robert | May 9-10 or June 1 | Los Altos (Palo Alto), CA | Dates were not provided for Mills. Please provide those, and then we can evaluate and consider dates for both Johnson and Mills. **I have to check on this.** |
|---|---|---|---|
| Kessler, David | June 30-July 2 | San Francisco, CA | His dates are later than the current schedule contemplates and well after Cook's expert report deadline. We may be willing to take him after our experts' reports are disclosed and are considering.  In the interim, please hold these dates for now, and confirm that he is available for 2 days.  We will get back to you after we work through the amended trial plan with your side.   **He is available for two days in this time frame (not that we are agreeing two days are necessary). Dates are held** |
| LaDisa, John | April 10-12 | Milwaukee, WI | Still considering. |
| Levy, Leigh Anne | April 13 or May 4 | Austin, TX | We anticipate her deposition in Hill and Gage will require two days.  Please confirm her available dates with this in mind and let us know. **I will follow up on our position and, if we agree, shoot for back-to-back dates.** |
| Litsky, Alan | April 25-26 | Columbus, OH | Still considering. |

| | | | |
|---|---|---|---|
| Marmureanu, Alexander | June 26 or 28 | Los Angeles, CA | These dates will not work.  They are after Cook's expert report deadline.  We anticipate his deposition in Hill and Gage will take two days.  Please ask if he is available between May 3-6 for a two day deposition. **May 3 is stacking up with Milling between 5/3-5/5, Timperman on 5/3 and our attempt to set Smouse in the first week of May. I will check, however.** |
| McMeeking, Robert | May 3-5 | Columbus, OH | Still considering. |
| Rajebi, Reza | May 17-19 | Denver, CO | These dates will not work.  We anticipate his deposition in Hill and Gage will require two days.  Please ask if he is available April 28 and May 1.  If not, please provide his other 2-day windows of availability prior to Cook's expert report deadline. **I presume if those dates were available they would have been provided. Will check** |
| Ritchie, Robert | April 19 or 21 | Berkeley, CA | Still considering. |

EXHIBIT C

**From:** Pierson, Andrea Roberts
**Sent:** Monday, March 20, 2017 11:34 AM
**To:** Michael Heaviside (mheaviside@hrzlaw.com) (mheaviside@hrzlaw.com)
**Subject:** Call

Mike — I'm following up on one of the two points we discussed Friday:  Will plaintiffs' agree to produce everything relied upon by their experts within 7 days (excluding Cook documents and literature publically available).  Please let me know this morning, as promised.  Thanks.

Andrea Roberts Pierson
*Partner*
andrea.pierson@FaegreBD.com    Download vCard
D: +1 317 237 1424 | M: +1 317 414 0459 | F: +1 317 237 1000

**Faegre Baker Daniels LLP**
300 N. Meridian Street | Suite 2700 | Indianapolis, IN 46204, USA

# EXHIBIT D

**From:** Ben Martin [mailto:bmartin@bencmartin.com]
**Sent:** Monday, March 27, 2017 6:53 PM
**To:** Pierson, Andrea Roberts
**Cc:** Butler, Abigail M.; Tanner, John Joseph; Schlafer, John T.; David Matthews; Michael Heaviside; Joe Williams; Matt Schultz; Bennett, James Stephen; Campbell, Andrew L.; Cox, Jessica Benson
**Subject:** Re: Subpoenas of experts

We can commit to the fact that we will provide what is required under rule 26 to be provided in the next few days. Certainly if there is some exception to that Andrea I am happy to address and will give you and yours any specific issue that we would be encountering. I'm shooting for Friday and hoping for Wednesday.

Sent from my iPhone

On Mar 27, 2017, at 4:08 PM, Pierson, Andrea Roberts <Andrea.Pierson@FaegreBD.com> wrote:

> Ben – I've now talked to you, Mike and Matt (via email) about this issue.  As I understand it, Plaintiffs acknowledge that Cook is are entitled to the materials relied upon by Plaintiffs' experts, but thus far only Matt has committed to produce those materials for the 3 experts he is handling  in any reasonable amount of time.  Cook will hold off on serving the subpoenas to the remaining experts, provided we receive the materials in the next few days.  Can you commit to that?  If so, give us the date by which we will receive the materials, please, and that will resolve the issue.
>
> Let me know where you are on the other issues we discussed Friday when you are able.  Please cc the FBD lawyers listed above, as I am away this week with my family.  Thank you.
>
> Andrea
>
> **From:** Ben Martin [mailto:bmartin@bencmartin.com]
> **Sent:** Monday, March 27, 2017 3:33 PM
> **To:** Pierson, Andrea Roberts; Butler, Abigail M.; Tanner, John Joseph; Schlafer, John T.
> **Cc:** David Matthews; Michael Heaviside; Joe Williams
> **Subject:** Subpoenas of experts
>
> AbigailAndrea: The subpoenas Cook is in the process of serving on plaintiffs' experts are ill-conceived.  The law is clear that subpoenas under rule 45 are not to be served on the opposing side's expert witnesses in order to circumvent or have the effect of circumventing Rule 26 and its specific prohibition against discovery of expert work product.  Each of Cook's subpoenas do just that.

The end result of Cook's actions in this endeavor should it proceed will be the waste of dozens or possibly hundreds of hours of attorney and expert time costing tens of thousands of dollars or more in responding to these subpoenas, drafting and filing motions to quash, and in dealing with these dozen or so experts Cook either has already subpoenaed or is in the process of subpoenaing.

We have provided Cook lists of readily identifiable, obtainable and discoverable documents these experts have reviewed. If you do not believe that to be sufficient then we are willing to discuss these things with you and if we still cannot reach resolution then the issue can be presented to the court. Subpoenaing plaintiffs' experts' files in this manner is not appropriate nor is it the solution to your client's perception of a problem.

We are asking that your client immediately withdraw these subpoenas and notify us that it has done so.

Just to repeat what is likely to be the result of this endeavor if it does not cease: ***the waste of dozens if not hundreds of hours of attorney time and expert time costing tens of thousands of dollars or more.***

Thanks.

Ben

Sent from my iPhone

# EXHIBIT E

**From:** Pierson, Andrea Roberts
**Sent:** Tuesday, April 04, 2017 5:37 PM
**To:** Matt Schultz (mschultz@levinlaw.com); Bennett, James Stephen; Bennett, James Stephen; Joseph N. Williams (jwilliams@rwp-law.com); Michael Heaviside (mheaviside@hrzlaw.com) (mheaviside@hrzlaw.com); David Matthews; Campbell, Andrew L.; Tanner, John Joseph; Webber, Chuck; Cox, Jessica Benson; Garcia, Christin Eaton (christin.garcia@FaegreBD.com); Symons, Rochelle R.; Calhoon, Victoria R.; Meyer, Peter A.; Butler, Abigail M.; Schlafer, John T.; Julie Rhoades (jrhoades@thematthewslawfirm.com); Laura Baughman; John Dalimonte (johndalimonte@kdlaw.net); kj@rileyjacksonlaw.com
**Subject:** FW: Expert Depositions


Matt –

Thanks for making time to talk today.  Here's an update on the expert deposition schedule:

| WITNESS | DATE | LOCATION | NOTES | COOK RESPONSE |
|---|---|---|---|---|
| Betensky, Rebecca | April 21 | Newton MA | Confirmed. Not Noticed. Newton Marriott. | |
| Brown, Jen | April 21 | Indianapolis | Confirmed and noticed. (3/21) | |
| Carlson, Jim | | Warsaw IN | Cook checking on accepting service/representing. (3/23) | |
| Fishbein, Michael | June 13-15 | Los Angeles | Cook rejected 4/11-14 and requested 5/25-6/2. MDS not available. Available 6/13-15. (3/30) | We can do 6/15.  Location will be FBD's LA office with a 9am start. |
| Garcia, David | June 20-22 | Seattle | Awaiting Cook confirmation of date. (3/24) | We can do 6/22.  Let us know if there is a preferred location. |
| Gyllun, Henrik | May 16 | Indianapolis | Confirmed and noticed. (3/21) | |
| Hawkins, Kem | June 12 | Indianapolis | Cook accepted service 3/26. Cook to object within two weeks of that date. (3/26) | |
| Johnson, Robert | N/A | Los Altos | Cook not deposing. (3/30) | As I mentioned, we do not require dates for Johnson and Mills at this time.  Cook reserves its right to depose in the future. |
| Kaufman, John | June 19 | Portland OR | Subpoena to be served. Date subject to discussion. (3/30) | |
| Kessler, David | June 30-July 2 | San Francisco | Cook requested two consecutive days two weeks before expert discovery cutoff. These dates qualify. Awaiting Cook to choose one and move for additional time. | I asked that you check on earlier dates but understand that Kessler says he has no earlier openings.  As a result, please hold July 1 and 2. |

1

| WITNESS | DATE | LOCATION | NOTES | COOK RESPONSE |
|---|---|---|---|---|
| | | | (3/30) | |
| LaDisa, John | April 10-12 | Milwaukee | Cook rejected 4/10-12 and requested date between 5/26-6/2. Inquiring. (3/30) | Okay to May 25. |
| Levy, Leigh Anne | May 4 | Austin TX | Cook rejected 4/13 and requested 5/4-5. Confirmed 5/4 (not holding 5/5, which was never available). Cook to seek additional time. (3/30) | Please provide two consecutive dates as requested. Matt is checking on May 5. |
| Litsky, Alan | April 25-26 | Columbus OH | Cook rejected 4/25-26 and requested date between 5/26-6/2. Inquiring. (3/30) | June 1 works. |
| Marmureanu, Alexander | June 26-28 | Los Angeles | Cook requested dates between 5/3-5/6. Witness not available then. Still holding 6/26-28. Cook has not confirmed. Cook to seek additional time. (3/30) | Please provide earlier dates for Marmureau. Matt is checking. |
| McMeeking, Robert | May 3 | Columbus OH | Cook seeking 5/3-5/4. Confirmed 5/3 and holding 5/4 pending Cook motion for additional time. (3/30) | Ok to 5/3-5/4. |
| Miling, Lars | May 2 | Indianapolis | Confirmed and noticed. (3/27) | |
| Ragheb, Anthony | May 25 | Indianapolis | Confirmed and noticed. (3/30) | |
| Rajebi, Reza | May 17-19 | Denver | Cook requested 4/18 and 5/1 (neither had been offered). Inquiring whether witness is available on <u>one</u> of those dates. Holding 5/17-19. Cook to seek additional time. (3/30) | Please hold 5/18-5/19. We will take his deposition at FBD's Denver office with a 9 am start. |
| Ritchie, Robert | April 19 | Berkeley | Confirmed. Not noticed. (3/30) | Confirmed. Our preference is to take the deposition in FBD's Palo Alto office with a 9am start. Please let us know if that works for Ritchie. |
| Smith, Jim | May 9 | Indianapolis | Confirmed and noticed. (3/22) | |
| Smouse, H. Robert | May 26 | Chicago | Confirmed and noticed. (3/30) Pretzel & Stouffer is personal counsel. | |
| Timperman, Paul | May 3 | Indianapolis | Confirmed and noticed. (3/27) McNally is personal counsel. | |

Matt -- as we discussed, we still have not received the following materials upon which your experts relied in their reports:

<u>Ritchie and Litsky</u>

1.  Sherman explanted filter – they have agreed to provide but we do not yet have it;
2.  Native versions of all photographs contained in the report (we have some for a couple of the patients whose explants were studied, but not all of the photos);

3. All other explanted filters examined by Ritchie and/or Litsky

<u>La Disa</u>

1. CAD models created by MARVL from design drawings for use in FEA model
2. Code/algorithms for FEA analysis
3. Footnote 7: "ev3. Protégé everflex™ self-expanding peripheral stent system. 2010"
4. Footnote 8: "Amplatzer occluder and delivery system - instructions for use. 2012"

<u>McMeeking</u>

1. The Greenfield exemplar
2. The Vena-Tech exemplar
3. Exact citation or source material for footnotes 36, 37, 38, 41, and 42 (each listed generically as, e.g., "<u>bostonscientific.com</u>" or "<u>azom.com</u>.")

<u>Levy</u>:

Hill -  Social media records, notes or records from 4 interviews of Hill, notes or records from consultation with Dr. Marmareanu
Gage – interview notes/records from interviews of A. Gage and C. Gage

<u>Marmureanu and Rajebi</u>

All notes, medical records and images from the exams of Hill referenced in my March 31 email and their reports.

The failure timely to produce these materials may jeopardize the deposition dates and the disclosure of Cook's expert reports.  Please confirm that you will provide these materials asap.

Thank you,

Andrea

Andrea Roberts Pierson
*Partner*
andrea.pierson@FaegreBD.com   Download vCard
D: +1 317 237 1424 | M: +1 317 414 0459 | F: +1 317 237 1000

**Faegre Baker Daniels LLP**
300 N. Meridian Street | Suite 2700 | Indianapolis, IN 46204, USA

EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND                     Case No. 1:14-ml-2570-RLY-TAB
PRODUCTSLIABILITY LITIGATION                                   MDL No. 2570

This Document Relates to Plaintiff(s)

_____ELIZABETH JANE HILL_____

Civil Case #  1:15-cv-06016-RLY-TAB

## PLAINTIFF'S RESPONSE TO DEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION

COMES NOW the Plaintiff, ELIZABETH JANE HILL, by and through her undersigned

attorneys, and files this Response to First Se of Requests for Production from the COOK Defendants

as follows:

Plaintiff objects to the instructions and definitions as set forth by the defendants on the

grounds that they are vague, ambiguous, overly broad, harassing, confusing, and are beyond the

scope of permissible discovery.  In responding to the discovery, Plaintiffs will give all words their

plan meaning.

**REQUEST NO. 1:**    Any and all documents identified by you in response to any

interrogatories Cook serves upon you in this action, including without limitation the interrogatories

served concurrently with these requests.

**RESPONSE NO. 1:**

OBJECTION  :  Plaintiff hereby incorporates by reference as if set forth in full all objections asserted in response to each interrogatory served upon Plaintiff by Cook.

**REQUEST NO. 2:**    Any and all documents that relate to, refer to, or concern any of the facts, allegations, injuries, or damages referred to in the Complaint.

**RESPONSE NO. 2:**

OBJECTION  :  Plaintiff objects to this because in seeking documents that "relate to, refer to, or concern any of the facts, allegations, or injuries, or damages referred to in the Complaint," this request seeks communications between Plaintiff and counsel that are protected from discovery by the attorney-client privilege.  Further, because the request is not limited in time, it seeks documents created or containing information obtained following the time litigation was contemplated by Plaintiff's counsel and/or communications between Plaintiff's counsel and counsel for similarly situated plaintiffs in Cook IVC litigation and protected from discovery by the attorney work-product privilege.

**REQUEST NO. 3:**    Any and all documents that relate to, refer to, or concern your examination or treatment for the injuries claimed in this lawsuit, including, but not limited to, medical records, chart notes, correspondence, x-rays, bone scans, test results, operative notes and reports, referrals, medical releases and consents, procedure descriptions, office notices, and documentation of surgeries.

**RESPONSE NO. 3:**

Attached are the following medical records in our possession:

Surgical Associates West Florida

West Central Gastroenterology/Edward Kirsch, M.D.

Safety Harbor Surgery Center/U. Choudhry, M.D.

Suncoast Internal Medicine Consultants,

Suncoast Endoscopy Center Inverness

Gastroenterology Associates –/S. Chandrupatla, M.D.

 Radiology Associates of Ocala

Morton Plant Hospital DOS: 07/05/2013

Morton Plant Hospital DOS: 08/14/2013

Milton Hershey Medical Center DOS:  08/21/2013

Mease Countryside Hospital/Bay Care Health System, DOS:  12/06/2010

Mark Zuzga, D.O.

CVS pharmacy

CVS Caremark

Citrus Memorial Health System

Bridget Bellingar, D.O.

Jacome, M.D. /The Neurology Institute

Safety Harbor Surgery Center DOS:  07/22/2014

AJ Bidani, M.D.

Mease Countryside Hospital DOS:  03/23/2011

Mease Countryside Hospital DOS:  11/17/2010

**REQUEST NO. 4:**     Any and all photographs and videotapes that identify, depict, or relate to the Filter, facts, allegations, injuries, or damages referred to in the Complaint.

**RESPONSE NO. 4:**

Attached is the color laser photo from the Endoscopy DOS:  2/24/2014

**REQUEST NO. 5:**     Any and all documents that relate to, refer to, or concern the examination, evaluation, or treatment of your medical conditions, including but not limited to gastrointestinal symptoms, fatigue, anxiety, insomnia, and posttraumatic stress disorder, including but not limited to chart notes, correspondence, x-rays, bone scans, test results, operative notes and reports, referrals, medical releases and consents, procedure descriptions, office notes, and documentations of surgeries performed on you from November 17, 2000, to the present.

**RESPONSE NO. 5:**  See attachments in answer to request #3.

**REQUEST NO. 6:**     Any and all photographs, x-rays, MRI films, CT scans, or results of other imaging procedures relating to your medical conditions and the Filter.

**RESPONSE NO. 6:**    Via hard copy by mail a disc of the four radiology studies DOS: 8/12/2013 has been sent.  These are the radiological studies in our possession as of this date.

**RESPONSE NO. 7:**  Any and all documents given or shown to you by any physician, surgeon, or other healthcare provider relating to the Filter or the implantation of the Filter.

**RESPONSE NO. 7:**    None. All medical records have been provided in response #3.

**REQUEST NO. 8:**   Any communication between Plaintiff or anyone acting on her behalf
(including her attorney) to any third party, including, but not limited to, any doctor, medical staff,
employer, defendants, governmental agency relating to the Filter, this action, or the allegations in this
action.

   **RESPONSE NO. 8:**   8. Attached are the following medical bills in our possession:

   A.J. Bidani, M.D.

   Surgical Associates of West Florida

   Safety Harbor Surgery Center

   Bellingar, D.O.; Gastro Florida

   Jacome, M.D./Neurology Institute of Central Florida

   Mease Countryside Hospital, DOS: 03/23/2011

   Morton Plant Hospital, DOS: 08/12/2013

   Suncoast Endoscopy

   Dr. Hellstern and Dr. Chandrupatla

   The Milton S. Hershey Medical Center, DOS: 08/21/2013.


   **REQUEST NO. 9:**   All public statements or press releases made by Plaintiff or anyone
acting on her behalf (including her attorney) relating to the Filter, this action, or the allegations in
this action.

   **RESPONSE NO. 9:**  None.

**REQUEST NO. 10:**  A signed and executed copy of the release attached at Exhibit A for you, including releases for (a) medical records, (b) worker's compensation records, where applicable, (c)  social security and insurance records if liens exist, (d) tax and employment records, and € Medicare Beneficiary Status Form.

**RESPONSE NO. 10:** OBJECTION: Plaintiff objects to the proposed medical authorization because it authorizes discussions with Plaintiff's health care providers.  **Plaintiff will provide a medical authorization that permits disclosure of records but does not authorize oral discussions with defense counsel.**

**REQUEST NO. 11:**  Any and all documents that relate to, refer to, or concern any legal claim or proceeding, including but not limited to, lawsuit, workers' compensation proceeding or benefit, claim for disability, Social Security claim, insurance claim, or claim for personal injury, made or received by you at any time.

**RESPONSE NO. 11:**  Social Security claim information is attached.

**REQUEST NO. 12:**  Any and all notes, diaries, calendar, or other documents made by you that relate to, refer to, or concern your medical conditions or any claim you assert in this lawsuit.

**RESPONSE NO. 12:** OBJECTION: Plaintiff objects to this request for "other documents" because it can be construed to seek communications between Plaintiff and Plaintiff's counsel.

**RESPONSE NO. 13:** Any and all documents you contend support or prove your claim that the Filter was defensive (see Complaint, Count 1, ¶ 46).

**RESPONSE NO. 13:** OBJECTION: Plaintiff objects to this request as premature.

**REQUEST NO. 14:**   Any and all document you contend support or prove your claim that the Cook failed to provide warnings of risks and dangers posed by the Filter (see Complaint, Count I, ¶ 40).

**RESPONSE NO. 14:** OBJECTION: Plaintiff objects to this request as premature.

**REQUEST NO. 15:**   Any and all documents you contend support or prove your claim that Cook "committed one or more breaches of their duty of reasonable care and were negligen[t] [sic]" (see Complaint, Count II, ¶ 46).

**RESPONSE NO. 15:** OBJECTION: Plaintiff objects to this request as premature.

**REQUEST NO. 16:**   Any and all documents you contend support or prove your claim that Cook's "marketing of the COOK Filter was false and/or misleading" (see Complaint, Count III, ¶ 54).

**RESPONSE NO. 16:**         OBJECTION: Plaintiff objects to this request as premature.

**REQUEST NO. 17:**   Any and all documents you contend support or prove your claim that Cook "breached their express warranties and the implied warranties associates with the product" (see Complaint, Count III, ¶ 56).

**RESPONSE NO. 17:** OBJECTION: Plaintiff objects to this request as premature.

**REQUEST NO. 18:**   Any and all documents you contend support or prove your claim for punitive damages (see Complaint, Count V [sic]}.

**RESPONSE No. 18:** OBJECTION: Plaintiff objects to this request as premature.

**REQUEST No. 19:**   The Filter, including any packaging or product literature or other materials that may have accompanied the Filter.

**RESPONSE NO. 19.**     None in our possession.

**REQUEST NO. 20**:   Any and all documents that relate tom, refer to, or concern the Filter.

**RESPONSE NO. 20:** OBJECTION:      Plaintiff objects to this request for "Any and all documents that "relate to, refer to, or concern the Filter" as unduly broad and unlimited in scope so that it encompasses attorney-client communications, work product, communications with consulting experts, and communications between Plaintiff's counsel and counsel for similarly situated plaintiffs in IVC litigation.

**REQUEST NO. 21:**   Any and all documents that relate to, refer to, or concern the decision to use the Filter, and/or your surgeon's decision to use the Filter.

**RESPONSE NO. 21:** All medical records have been provided in response to request #3.

**REQUEST NO: 22:** All documents related to the Hospitalization of Plaintiff for any reason, including, but not limited to, medical records, chart notes, correspondence, x-rays, bone scans, test results, operative notes and reports, referrals, medical releases and consents, procedure description,

office notes, and documentation of surgeries performed on Plaintiff at any time from November 17m, 2000, to the present.

**RESPONSE NO. 22.**   All medical records have been provided in response to request #3

**REQUEST NO. 23:**   All pharmacy records relating to any prescriptions or other medications taken by Plaintiff at any time from November 17, 2000, to the present.

**RESPONSE TO 23.** All medical records have been provided in response to request #3.

**REQUEST NO. 24:**   Any and all medical bills, statements or other documents that relate to, refer to, or concern any expenses incurred by you for examination or treatment of the injuries you claim.

**RESPONSE NO. 24.**   Medical bills in our possession are attached.

**REQUEST NO: 25:**   Any and all medical bills, statements, and other documents that relate to, refer to, or concern any expenses paid on your behalf by any insurance carrier or health plan, with the name and address of the carrier or health plan.

**RESPONSE NO. 25.**   Please refer to the answer in request #24.

**REQUEST NO. 26:**   Any and all documents that relate to, refer to, or concern any claim of subrogation or lien by any third party on any expenses paid on behalf of Plaintiff.

**RESPONSE NO. 26.**   Attached is subrogation information.

**REQUEST NO. 27:** All statements (whether written or oral) of any employee, representative, or agent of Cook related to the Filter, and all documents and things that relate to, refer to, or concern any statement.

**RESPONSE No. 27.** OBJECTION: Plaintiff objects to this request for statements "related to the Filter" and documents that "relate to, refer to, or concern any statement" as unduly broad and unlimited in scope so that it encompasses attorney-client communications, work product, communications with consulting experts, and communications between Plaintiff's counsel and counsel for similarly situated plaintiffs in IVC litigation.

**REQUEST NO. 28:** All documents relating to any test, inspection, or examination of the Filter.

**RESPONSE NO. 28:** OBJECTION: Plaintiff objects to this request for all documents "related to" as unduly broad and unlimited in scope so that it encompasses attorney-client communications, work product, communications with consulting experts, and communications between Plaintiff's counsel and counsel for similarly situated plaintiffs in IVC litigation.

**REQUEST NO. 29:** Any and all documents that relate to, refer to, or concern any witness you intend to call at trial, including both fact and expert witnesses. For each witness, include all documents, including but not limited to, reports, notes, files, and other documents and things created, received, or examined by the witness.

**RESPONSE NO. 29: OBJECTION:** Plaintiff objects to this request as seeking attorney-work product regarding the identify of witness who may be called at trial and exceeding the proper scope of discovery for fact witnesses.

**REQUEST NO. 30:** Any and all documents and things that you may introduce as exhibits at trial

**RESPONSE NO. 30:** OBJECTION: Plaintiff objects to this request as premature because the deadline for exhibit lists has not been reached, as seeking work product regarding exhibits that "may" be introduce[d] and possible rebuttal exhibits.

**REQUEST NO. 31:** All employment records relating in any way to Plaintiff whether employed or self-employed, including the names and addresses of all employers, the records of the dates absent from work for any reason, the records relating to the fact and duration of unemployment, the records of workers' compensation, unemployment insurance, welfare, and applications for assistance from any governmental agency because of unemployment or ill health, and all income records from November 17, 2000, to the present.

**RESPONSE NO. 31:** Not applicable.

**REQUEST NO. 32:** All documents relating to the fact and duration of Plaintiff's unemployment, including documents submitted to or received from any entity regarding unemployment, unemployment insurance or benefits, and any document stating the reasons for separation from any employment from November 17, 2000, to the present.

**RESPONSE NO. 32:** Not applicable.

**REQUEST NO. 33:** All documents relating to the receipt by Plaintiff at any time from November 17, 2000, to the present of any public assistance or benefits, including but not limited to, food stamps, cash assistance in any form, welfare, and federal or state housing subsidies.

**RESPONSE NO. 33:** Not applicable.

**REQUEST NO. 34:**  All documents related to any application for or receipt of Social Security or disability benefits of any kind, including but not limited to, SSI, SSD, or retirement benefits and including, but not limited to, any spousal, child or survival benefits, in connection with Plaintiff.

**RESPONSE NO. 34:** 34. Social Security information has been provided in response to #11

**REQUEST NO. 35:**  All documents that refer to or relate to any agreement between Plaintiff or Plaintiff's counsel and any of Plaintiff's healthcare providers concerning the Filter.

**RESPONSE NO. 35:**  Not applicable.

**REQUEST NO. 36:**  Reports or projections of any accountants, economists, or other financial consultants concerning past or prospective economic damages, including but not limited to loss of income, cost of nursing, or attendant care, cost of future medical care and/or treatment and any other costs.

**RESPONSE NO 36:**  Plaintiff objects to this request as premature.

**REQUEST NO. 37:**  Text messages, e-mails, tweets, or any and all social media posts (including but not limited to Facebook, Twitter, Instagram, Vine, Snapchat, YouTube, LinkedIn, and Pinterest) that relate to, refer to, or concerning the Filt3er, vena cava filters generally, your medical conditions, your recovery, you alleged damages, or Cook.

**RESPONSE NO. 37.** OBJECTION: Plaintiff objects to this request as seeking email communications between Plaintiff and counsel.

**REQUEST TO PRODCE NO. 38:** Any and all documents that relate to, refer to, or concern the chain of custody of the Filter from the date of retrieval to the present, including the name, address, telephone number, and e-mail address of each person or entity that came into possession of the Filter, or any portion of the Filter.

RESPONSE NO. 38: Attached is correspondence from Penn State Health Milton S. Hershey Medical Center dated September 14, 2016.

**REQUEST NO. 39:** An updated Plaintiff Fact Sheet that includes updated information since the Plaintiff Fact Sheet dated April 16, 2015.

**RESPONSE NO:** Not applicable.

**REQUEST NO. 40.** All documents requested by the Plaintiff fact Sheet that Plaintiff has not already produced.

**RESPONSE NO. 40:** None

**REQUEST NO. 41:** All documents and things identified in or relied upon to formulate Plaintiff's answers to the Plaintiff Fact Sheet.

**RESPONSE NO: 41.** There are no additional documents relative to this question

I HEREBY CERTIFY that a copy of the foregoing has been furnished by e-service this 12th day of October, 2015, to:  Anna C. Rutigliano, Esq., Faegre Baker Daniels, LLP, Suite 2700, 300 North meridian Street, Indianapolis, IN 45204; Douglas B. King, Esq., Wooden McLaughlin, LLP, Suite 1800m, One Indiana Square, Indianapolis, IN 46204; Ben C. Martin, Esq., Law Office of Ben C. Martin, Suite 100, 3219 McKinney Avenue Dallas, TX 75204; Michael W. Heaviside, Esq., Heaviside Reed Zaic, Suite 203, 312 Broadway, Laguna Beach, CA 92651; and David P. Matthews, Esq., Matthews & Associates, 2905 Sackett Street, Houston, TX 77098.

BABBITT & JOHNSON, P.A.
Attorneys for Plaintiff
1641 Worthington Road, Suite 100
Post Office Box 4426 (33402-4426)
West Palm Beach, FL 33409
Tel: (561) 684-2500
Fax: (561) 684-6308
jjohnson@babbitt-johnson.com


By___/s/ Joseph R. Johnson_____
    JOSEPH R. JOHNSON
    Florida Bar # 372250

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND
RLY-TAB
PRODUCTSLIABILITY LITIGATION
2570

Case No. 1:14-ml-2570-

MDL No.

This Document Relates to Plaintiff(s)

ELIZABETH JANE HILL

Civil Case #  1:15-cv-06016-RLY-TAB

**PLAINTIFF, ELIZABETH JANE HILL'S, ANSWERS TO FIRST
SET OF INTERROGATORIES TO PLAINTIFF**

COMES NOW the Plaintiff, ELIZABETH JANE HILL, by and through her
undersigned counsel and hereby gives notice that she has answered the First Set of
Interrogatories propounded by the Cook Defendants.

**Preamble and General Objections**

A.      Plaintiff reserves all objections as to the competency, relevancy,
materiality and admissibility of the information or documents produced in response to
these interrogatories and/or requests.

B.      Plaintiff objects to these interrogatories and/or requests to the extent they
purport to require Plaintiff to provide information or produce documents which are
outside her possession, custody or control.

C.      Plaintiff objects to these interrogatories and/or requests to the extent they require Plaintiff to produce information or documents that are publicly available on the ground that such information and documents are just as readily obtainable by the Defendant and Plaintiff should not have to bear the burden of disclosure.

D.      Plaintiff objects to these interrogatories and/or requests to the extent they are repetitive of other interrogatories or requests or require Plaintiff to provide the same information more than once.

E.      Plaintiff objects to these interrogatories and/or requests to the extent they, individually or cumulatively, attempt to impose on the Plaintiff duties and obligations beyond those permitted by the applicable rules of civil procedure.

F.      Plaintiff objects to these interrogatories and/or requests to the extent they are overbroad, vague and ambiguous, unduly burdensome, seek information or documents not reasonably calculated to lead to the discovery of admissible evidence, fail to specify the information sought with reasonable particularity or are otherwise outside the scope of discovery permitted by the applicable rules of civil procedure.

G.      Plaintiff objects to these interrogatories and/or requests to the extent they seek documents that constitute or disclose proprietary, confidential, personal or business information.

H.      Plaintiff objects to these interrogatories and/or requests to the extent they require Plaintiff to provide information that constitutes attorney work product, is protected by the attorney-client privilege or is protected by any other applicable privilege, statute or rule of non-disclosure.

I.      Any response or objection to any or all of these interrogatories and/or requests does not mean necessarily that any information exist or is in the possession, custody or control of Plaintiff.

J.      In each and every response, or sub-part thereof, where Plaintiff interposes an objection, such objection shall be construed to preserve all of Plaintiff's rights to enter similar objections as to any future supplemental responses to such request.  A failure to object shall not constitute a waiver of any objection that Plaintiff may interpose as to any future supplemental responses.

K.      The specific responses below are based upon information now available to Plaintiff.  Plaintiff reserves the right at any time to revise, correct, add to or clarify the objections or responses.

L.      Plaintiff objects to the "Instructions" included in the written discovery as they purport to place upon Plaintiffs burdens beyond those set forth in the applicable rules of civil procedure.

M.      Plaintiff objects to the "Definitions" included in the written discovery as they purport to broaden definitions of certain words or phrases that are otherwise defined within the applicable rules of civil procedure.


**INTERROGATORY NO. 1:**      Identify   every   time   you   have   been hospitalized at any time from November 17, 2000, to the present date, including the dates of hospitalization, the name and address of each hospital, the reason   for the hospitalization, and the identity of the attending physician.

**ANSWER NO. 1:**

**Hospitalizations**

Plaintiff cannot recall every surgery, procedure and/or hospitalization in the 10 years prior to the implantation of her Cook filter. Upon Plaintiff's best knowledge and recollection she has been treated by the following providers:

| HOSPITAL/PROCEDURES/PROVIDER | SERVICE | Date of Service |
|---|---|---|
| Largo Medical Center<br>201 14th St SW, Largo, FL 33770<br>Can't recall attending physician | Blepharoplasty | 01/17/2006 |
| Bayfront Hospital/ Jobe, M.D.<br>701 6th Street<br>St. Petersburg, FL | Lumbar Laminectomy | 07/2006 |
| Bardmoor Outpatient Center/Jatin Bidani ,M.D<br>8787 Bryan Dairy Rd Ste 300, Largo, FL 33777 | EGD with biopsy<br>Gastritis/Esophagitis | 11/21/2006 |
| Bardmoor Outpatient Center/Jatin Bidani ,M.D<br>8787 Bryan Dairy Rd Ste 300, Largo, FL 33777 | Colonoscopy<br>Ileitis, Diverticulosis, Internal And External hemorrhoids | 11/22/2006 |
| Baycare Medical Center/ J. Kobe, M.D.<br>701 6th Street<br>St. Petersburg, FL | Cervical Laminectomy | 11/07/2007 |
| Claiborne County Hospital<br>1850 Old Knoxville Rd, Tazewell, TN 37879 | ER Visit: MVA | 02/04/2008 |
| Bardmoor Outpatient Center/Jatin Bidani ,M.D,<br>8787 Bryan Dairy Rd Ste 300, Largo, FL 33777 | Esophagogastroduodenoscopy with biopsies | 02/15/2009 |
| Bardmoor Outpatient Center/Jatin Bidani ,M.D<br>8787 Bryan Dairy Rd Ste 300, Largo, FL 33777 | Colonoscopy | 04/14/2009 |
| St. Luke's Surgical Ctr./James Gill, M.D.<br>43309 Us Highway 19 N, Tarpon Springs, FL 34689 | Cataracts OU | 11/2009,12/2009,<br>01/2010 |
| Bardmoor Outpatient Center/Jatin Bidani ,M.D<br>8787 Bryan Dairy Rd Ste 300, Largo, FL 33777 | Esophagogastroduodenoscopy with biopsies | 06/15/2010 |
| Mease Countryside Hospital/Mark Zuzga, M.D.<br>3231 McMullen Booth Road<br>Safety Harbor, FL 34695 | IVCF placement | 11/17/2010 |
| Mease Countryside Hospital/ A. Moreno, M.D.<br>3231 McMullen Booth Road<br>Safety Harbor, FL 34695 | Lumbar Laminectomy | 12/06/2010 |
| Mease Countryside Hospital/Mark Zuzga, M.D.<br>3231 McMullen Booth Road<br>Safety Harbor, FL 34695 | IVCF Unsuccessful Removal Attempt | 03/23/2011 |
| Belleair Surgery  Center<br>1130 Ponce de Leon Blvd, Clearwater, FL 33756 / | Esophagogastroduodenoscopy with biopsies | 09/22/2011 |

| Jatin Bidani ,M.D. | | |
|---|---|---|
| Bardmoor Outpatient Center/Jatin Bidani, M.D<br>8787 Bryan Dairy Rd Ste 300, Largo, FL 33777 | Colonoscopy | 10/18/2011 |
| Morton Plant Hospital/Kirk Erikson, M.D.<br>300 Pinellas Street<br>Clearwater, FL 33756 | Cholecystectomy | 11/2011 |
| Mease Countyside Hospital/A, Moreno, M.D.<br>3231 McMullen Booth Road<br>Safety Harbor, FL 34695 | Lumbar Laminectomy Revision | 07/06/2013 |
| Morton Plant Hospital/U. Choudhry, M.D.<br>300 Pinellas Street<br>Clearwater, FL 33756 | Endoscopy & Colonoscopy | 08/12/2013 |
| Penn State/Milton Hersey Medical Ctr/Franck Lynch, M.D.<br>500 University Drive<br>Hershey, PA 17033 | IVCF Removal | 08/21/2013 |
| Bardmoor Outpatient Center/Jatin Bidani ,M.D,<br>8787 Bryan Dairy Rd Ste 300, Largo, FL 33777 | Colonoscopy | 12/02/2013 |
| Suncoast Endoscopy Ctr./ Sreekanth Chandrupatla, M.D.<br>13644 Walsingham Rd.<br>Largo, FL 33774 | Esophagogastroduodenoscopy | 01/07/2014 |
| Citrus Memorial Health System<br>502 W Highland Blvd, Inverness, FL 34452 | Endoscopy | 02/21/2014 |
| Citrus Memorial Health System<br>502 W Highland Blvd, Inverness, FL 34452 | Endoscopic US | 02/24/2014 |
| Safety Harbor Surgery Ctr./Umesh Choudhry, M.D.<br>Address: 3280 N McMullen Booth Rd Ste 110,<br>Clearwater, FL 33761 | Endoscopy w/Dilatation of Esophagus | 07/02/2014 |

**INTERROGATORY NO. 2:**         Identify all healthcare providers with whom you have consulted or by whom you were examined or treated from November 17, 2000, to the present date, and for each consultation, examination, or treatment, including the range of date(s) it occurred, the name and address of the health care provider involved, the nature of the illness, condition, or injury at issue, and the nature of the consultation, examination, or treatment.

**ANSWER NO. 2:**

**PROVIDERS**

Plaintiff cannot recall every surgery, procedure and/or hospitalization in the 10 years prior to the implantation of her Cook filter.   Upon Plaintiff's best knowledge and recollection she has been treated by the following providers:

| PROVIDERS | SPECIALITY | DOS |
|---|---|---|
| Bridget Bellinger, D.O.<br>7101 Park Street North<br>Seminole, FL 33777 | Primary Care | 1998-present |
| James Stevenson, M.D.<br>1551 W Bay Dr, Diagnostic Clinic<br>Largo, FL 33770 | Neurology- carpal tunnel | 2002 |
| Rehab & Therapy Connections<br>Largo, FL | Physical Therapy – carpal tunnel | 07/2002 |
| James C. Neiman, M.D<br>9555 Seminole Blvd Ste 209, Seminole, FL 33772 | Cardiology | 12/04/2002 - 3/17/2004 |
| A.J. Bidani, M.D.<br>8787 Bryan Diary Road, Ste.310<br>Largo, FL 33777 | Gastroenterology | 12/03/2003-2013 |
| Two Palms Massage<br>306 E Lake Rd S, Palm Harbor, FL 34685 | Massage Therapy | 03/2004-5/2004 |
| Charles Friedman, D.O./Pain Relief Ctr- Return to Wellness/ Bardmoor Medical Arts, 8839 Bryan Diary Road<br>Largo, FL 33777 | Pain Management | 08/03/2004-2006 |
| Joseph Arivila/Moore, DC<br>8996 Seminole Blvd, Seminole, FL 33772 | Message Therapy | 2004 |
| Kirk Jobe, M.D.<br>603 7th St S Ste 540, St Petersburg, FL 33701 | Neurosurgery | 07/2006-2010 |
| TLC Rehab<br>Address: 3300 SE Lake Weir Ave, Ocala, FL 34471 | Rehabilitation Therapy | 11/2006-2012 |
| Steven Anthony, M.D.<br>1330 S Fort Harrison Ave<br>Ste 340<br>Clearwater, FL 33756 | ENT | 11/2008 |
| James Gill, M.D.<br>501 S. Fort Harrison Ave.<br>Clearwater, FL 33756 | Cataracts | 11/10/2009 |
| Neurodiagnostic/A. Khademi, M.D | Neurodiagnostic | 01/09/2009 |

| | | |
|---|---|---|
| 1840 Mease Dr Ste 407B, Safety Harbor, FL 34695 | | |
| Florida Orthopedic Institute/John Small, M.D. 13020 North Telecom Parkway Temple Terrace, FL 33637 | Spinal surgeon | 03/2010 |
| Anthony Moreno, M.D./Moreno Spine & Scoliosis 1800 Mease Dr, Safety Harbor, FL 34695 | Spinal surgeon | 04/14/2010 & 07/2013 |
| Mark Zuzga, M.D. 1840 Mease Drive, Ste.301 Safety Harbor, FL 34695 | Interventional Radiology | 10/02/2010, 11/17/2010,03/23/ 2011 |
| B. Bolhofner,, M.D. 4600 4th St N, Saint Petersburg, FL 33703 | Orthopedic Consultation | 2010 |
| Clearwater Surgical Associates/Kirk Erikson, M.D. 1106 Druid Rd S Ste 301, Clearwater, FL 33756 | General Surgery/Cholecystectomy | 11/2011 |
| Retina Vitreous Associates of FL 579 S. Duncan Ave, Clearwater, FL 33756 | Retina specialist | 06/2012 |
| Stephen A. Updegraff, M.D. 1601 -38th Ave, North St. Petersburg, FL 33713 | Retina specialist | 06/2012 |
| Gastroenterology Associates/ Sreekanth Chandrupatla, M.D./ Trupti Shinde, M.D./ Paul A. Hellstern, M.D. 6410 West Gulf to Lake Hwy Crystal River, FL 34423 | Gastroenterology | 08/2013-06/2014 |
| Yves Gabriel, M.D. 455 Pinellas St Ste 320, Clearwater, FL 33756 | Vascular Surgery | 08/2013 |
| Howard Berlet, M.D. 3001 West Dr. MLK Blvd. Tampa, FL 33607 | Radiology - Myelogram | 06/2013 |
| Suncoast Internal Medicine Consultants/S. Zito, M.D./ Edward Kirsch, D.O. 13644 Walsingham Rd, Largo, FL 33774 | Internal Medicine | 08/11/2013-present |
| Gina Raptoulis, M.D. 13644 Walsingham Road, Largo, FL 33774 | Rheumatology | 08/2013-present |
| Penn State/Milton S. Hersey Medical Ctr/Frank Lynch, M.D. 500 University Drive Hersey, PA 17033 | Vascular Surgery | 08/2013 |
| Alfred Jacome, M.D./Elizabeth Pike ARNP/ Neurology Institute of Central Florida 2121 S.W. 22nd Place, Ocala, FL 3347 | Neurology | 10/22/2013-present |
| Umesh Choudhry, M.D./ Safety Harbor Surgery Ctr920 S. Myrtle Ave, Clearwater, FL | Gastroenterology | 08/2013-present |
| Antonio DeSclafani, M.D. 1901 S.E. 18th Ave., Ocala, FL | Neurosurgery Consultation | 08/26/2014 |
| University of Florida Shands/Daniel Hoh, M.D. 1600 S.W. Archer Road, Box 100265, Gainesville, FL 32610 | Neurosurgery Consultation | 08/29/2014 |

| | | |
|---|---|---|
| Mammogram | Bardmoor Imaging Ctr | 12/2001 |
| MRI Cervical Spine/MRI Thoracic Spine | Diagnostic Imaging Ctr,/Robert Howard, M.D. | 06/18/2002 |
| Mammogram | Diagnostic Imaging Ctr,/Theresa Howard, M.D. | 12/24/2002 |
| Abdominal US | Medx Diagnostics Services | 10/29/2003 |
| Mammogram | Morton Plant Imaging Ctr./Martha Cline, M.D./Robert Kupta, M.D. | 01/15/2004 10/09/2000 |
| Bone Density Study M.D, | Diagnostic Clinic/Dmitry Grebenev, | 06/08/2004 |
| MRI Lumbar Spine | Bardmoor Imaging Ctr//William Halleran, M.D. | 10/18/2004 |
| Mammogram | Bardmoor Imaging Ctr | 02/21/2005 |
| MRI Cervical  & Lumbar Spine | Gateway Radiology Consultants/ Stephen Anderson, M.D. | 12/06/2005 |
| Mammogram | Bardmoor Imaging Ctr | 03/06/2006 |
| MRI Cervical Spine | TBI Imaging | 03/30/2007 |
| MRI Cervical Spine | Diagnostic Imaging | 07/17/2007 |
| Pelvic US | Bardmoor Imaging Ctr/Mark Benjamin, M.D. | 03/27/2009 |
| CT Myelogram | University Diagnostic | 03/11/2010 |
| CT Abdomen | Baycare OP Imaging | 06/10/2010 |
| Mammogram | Baycare OP Imaging | 07/30/2010 |
| DEXA Hip and Spine | Baycare OP Imaging | 09/19/2010 |
| Venogram | Mease Countryside Hospital/Mark Zuzga, M.D. | 11/17/2010 |
| Venogram | Mease Countryside Hospital/Mark Zuzga, M.D. | 03/23/2011 |
| Mammogram | Baycare OP Imaging/ Martha Cline, M.D. | 08/2011 |
| HIDA scan | Baycare OP Imaging | 11/2011 |
| Abdominal US | Baycare OP Imaging | 11/2011 |
| X-ray R knee | 7101 Park Street North Seminole FL | 02/13/2012 |
| Bone Density | Suncoast Internal Medicine Consultants/S. Zito, D.O. | 08/11/2013 |
| Peripheral Study | Penn State/Milton S.Hersey Medical Ctr/Franch Lynch, M.D. | 08/22/2013 |
| Venogram | Penn State/Milton S.Hersey Medical Ctr/Frank Lynch, M.D. | 08/23/2013 |
| MRI Cervical Spine | Radiology Associates of Ocala | 10/28/2013 |

| CT Abdomen | Radiology Associates of Ocala/F. Wollett, M.D. | 12/11/2013 |
|---|---|---|

**INTERROGATORY NO. 3:**        Identify and describe all legal claims ever made by or against you, including but not limited to, lawsuits, worker's compensation claims, social security claims, insurance claims, or claim for personal injury, including the date of filing or initiation, the names and addresses of the parties involved, the nature of the claim and proceeding, the tribunal or organization with which the claim was made or filed, the case number and the resolution of the claim.

**ANSWER NO. 3:** I filed a Social Security medical disability claim in March 2010 for my degenerative spinal stenosis. The claim was accepted. I cannot recall the claim number at this time.

**INTERROGATORY NO. 4:**        Describe all damages and injuries allegedly incurred by Plaintiff as a result of the Filter, including all expenses, financial losses, and economic damages, pain and suffering, or any other damages that Plaintiff sustained.

**ANSWER NO. 4:**     Upon review of my medical records, you will note the bodily injuries -  the filter migrated, perforated my vena cava and my duodenum causing extreme pain, projectile vomiting, nausea, diarrhea and a stricture of my intestines.  I have chronic GI discomfort, abdominal discomfort, cramping and bloating in area where filter perforated the  duodenum.  In January of 2014, I underwent an endoscopy which revealed a narrowing in the area of the duodenal sweep with erythema.  Pathology

revealed chronic duodenitis.  My anxiety level greatly increased, with insomnia, panic attacks and bouts of depression.

**INTERROGATORY NO. 5:**       With respect to each expense, financial loss, or damage identified, please state the nature and amount of such expense, financial loss, or damage, the date(s) thereof, and the name and address of the provider or other person to whom payment was made or is to be paid.

**ANSWER NO. 5:**

## MEDICAL BILL INDEX

| Medical Provider | Date of Service | Total Bill | Payments | Outstanding Balance |
|---|---|---|---|---|
| Milton Hershey Medical Center | 8/21/13 | $12,475.15 | $12,029.73 | $445.42 |
| Mease Countryside Hospital | 3/23/11 | $11,042.21 | $6,846.17BCBS $4,916.04Adj | -0- |
| Mease Countryside Hospital | 8/14-20/13 | $39,864.88 | $5,483.03BCBS $34,381.85ADJ | -0- |
| Penn State Hershey physician charges | 8/21/13 | $6,123.00 | $321.10Med $5,694.66Adj | -0- |
| Dr. Bidani | 9/21-12/21/11 | $2,080.00 | $495.31BCBS $1,554.69 $30.00P | -0- |
| Safety Harbor Surgery Center | 7/2/14 | $2,266.00 | $1,744.60Adj | $521.40 |
| Gastro Florida | 6/16-7/2/14 | $2,090.60 | $252.18Med $28.82BCBS | $1,809.16 |
| Dr. Hellstern | 12/4/13 – 1/15/14 | $1,389.00 | $121.75Med $47.86BCBS | $1,219.00 |
| Suncoast Endoscopy | 1/7/14 | $895.00 | $261.12Med $66.61BCBS $567.27Adj | -0- |

**INTERROGATORY NO. 6:**    If any person or entity other than you (such as any corporation, insurance company, governmental entity or fund) had paid an expense identified in response to Interrogatory No. 5 in whole or in part, or has made promises of benefit or payment to you or on your behalf, describe each and every payment or promise of payment.  Include the expense or loss for which you received compensation, reimbursement, or promises of benefit or payment; the individual, entity, or fund making the payment, or promise of payment; and any police period, policy number, and policy limits associated with the payment or promise of payment.

**ANSWER NO. 6:**    See response to #5.

**INTERROGATORY NO. 7:**    With   respect   to   any   person, insurance company, or other entity that provided medical coverage to you or paid medical bills on your behalf at any time, beginning seven (7) years before the alleged injuries through the present, please state whether each entity has a right of subrogation against you.

**ANSWER NO. 7:**

Medicare-MSPRC
Auto No Fault/Liability
PO Box 138832
Oklahoma City, OK  73113

BC/BS/The Rawlings Company
P.O. Box 2000
LaGrange, Kentucky 40031

**INTERROGATORY NO. 8:**        Describe all information, documents, or things relating  to Cook or the Filter you received from any person or entity, including the nature of the information or documents, when you obtained them, and from whom or where you obtained them.

**ANSWER NO. 8:**

OBJECTION: Plaintiff objects to this interrogatory to the extent that it seeks information protected from discovery by the attorney-client and attorney-work product and consulting expert privileges.  As worded, when the instructions provided by Defendant are considered, the interrogatory seeks all communications between Plaintiff and counsel and all information "relating to Cook or the filter" in possession of Plaintiff's counsel that was obtained at any time from any source. Further, the information sought is not limited to information in counsel's possession that is related to this Plaintiff or this Plaintiff's filter and thus, outside proper relevancy considerations and disclosure of such would violate the federal and state privacy interests of other individuals represented by Plaintiff's counsel.

**INTERRROGATORY NO. 9:**        State whether you read or saw any written, televised, or internet-based advertising or labeling material related to the Filter, other than in consultation with your attorney.  This includes, but is not limited to, advertising or information on problems, claims, or lawsuits related to

the Celect or other inferior vena cava filters.  Include the nature of the material, when you obtained it, and rom whom or where you obtained it.

**ANSWER NO. 9:**

OBJECTION: Plaintiff objects to this interrogatory as exceeding the proper scope of an interrogatory because it requests production of documents or tangible items.

**INTERROGATORY NO. 10:**    State whether you received any written or oral instructions regarding the Filter, including the nature of the instructions, when you obtained it, and from whom or where you obtained it.

**ANSWER NO. 10:**   I was not given any written or oral instructions regarding the IVC filter.  I was told by my spine surgeon, Dr. Moreno, the IVC filter was necessary prior to my spinal surgery.

**INTERROGATORY NO. 11:**    Describe each and every thing of which you are aware that supports your claim that the Filter was defective (see Complaint, Count I, ¶ 39).

**ANSWER NO. 11:**    OBJECTION:Plaintiff objects to this interrogatory as premature.

**INTERROGATORY NO. 12:**    Describe each and every thing of which you are aware that supports your claim that Cook failed to provide warnings of risks and dangers posed by the Filter (see Complaint, Count I, ¶ 40),

including all facts, documents, things, information, and individuals you believe have relevant information related to the claim.

**ANSWER NO. 12:**   OBJECTION: Plaintiff objects to this interrogatory as premature.

**INTERROGATORY NO. 13:**   Describe each and every thing of which you are aware that supports your claim that Cook "committed one or more breaches of their duty of reasonable care and were negligen[t] [sic]" (*see* Complaint, Count II, ¶ 46), including all facts, documents, things, information, and individuals you believe have relevant information related to the claim.

**ANSWER NO. 13:**   OBJECTION: Plaintiff objects to this interrogatory as premature.

**INTERROGATORY NO. 14:**   Describe each and every thing of which you are aware that s7upports your claim that Cook's "marketing of the COOK Filter was false and/or misleading (see Complaint, Count III, ¶ 54), including all facts, documents, things, information, and individuals you believe have relevant information related to the claim.

**ANSWER NO. 14:**   OBJECTION:Plaintiff objects to this interrogatory as premature.

**INTERROGATORY NO. 15:**   Describe each and every thing of which you are aware that supports your claim that Cook "breached their express warranties and the implied warranties associated with the product" (*see*

Complaint, Count III, ¶ 56), including all facts, documents, things, information, and individuals you believe have relevant information related to the claim.

**ANSWER NO. 15:**   OBJECTION: Plaintiff objects to this interrogatory as premature.

**INTERROGATORY NO.** 16:      Describe each and every thing of which you are aware that supports your claim for punitive damages (*see* Complaint, Count V [sic]), including all facts, documents, things, information, and individuals you believe have relevant information related to the claim.

**ANSWER NO. 16:**   OBJECTION: Plaintiff objects to this interrogatory as premature.

**INTERROGATORY NO.** 17:      If you alleged that you are unable or less able to engage in any activity in which you engaged prior to November 17, 2010, due to the Filter, describe in detail each activity you allege you are less able to engage in, including the frequency with which you engaged in the activity before and after November 17, 2010, the basis of the claim that the Filter (or any failure of the Filter) cause you to be unable or less able to engage in the activity, the nature and location of all documents that support the claim, and the name, address, and telephone number of each person with knowledge of the claim.

**ANSWER NO.** 17:   None at this time

**INTERROGATORY NO. 18:**      Describe all statements taken or possessed by you of any employee, representative, or agent of Cook related to the Filter or any allegation in the complaint, including the individual who provided the statement, the date the statement was given, to whom the statement was given, and the content of the statement.

**ANSWER NO. 18:**   OBJECTION: Plaintiff objects to this interrogatory as exceeding the proper scope of an interrogatory because it requests production of documents or tangible items.

**INTERROGATORY NO. 19:**      Identify and describe each person whom you believe has knowledge concerning the facts of this case, including the witness's name, address, and telephone number, the facts you believe are known or have been observed by the witness, and provide a copy of any written or recorded statements taken from the individual.

**ANSWER NO. 19:**   OBJECTION:Plaintiff objects to this interrogatory as exceeding the proper scope of an interrogatory because it requests production of documents or tangible items.

**INTERROGATORY NO. 20:**      Identify any individual who may be called as a witness at any trial, including both fact and expert witnesses, and, for each expert witness, provide a complete statement of all opinions to be expressed and the bases for each opinion, the data or other information considered by the individual in forming his or her opinions in the case, the qualifications of the

individual to provide expert testimony, including a list of all publications authored by the individual within the last ten years, the compensation to be paid to the individual, and a list of any other cases in which the individual has testified as an expert at trial or by deposition within the preceding four years.

**ANSWER NO. 20:**   OBJECTION: Plaintiff objects to this interrogatory as seeking attorney-work product regarding the identify of witness who may be called at trial and exceeding the proper scope of discovery for fact witnesses.

**INTERROGATORY NO. 21:**   State whether Plaintiff has made any claim or commenced any action against anyone other than Cook, including the physician who implanted the Filter, as a result of the injuries or losses which Plaintiff alleges in this action.  If so, describe the nature of the claim or action, the parties involved, and the status of the claim or action.

**ANSWER NO. 21:**   Not applicable.

**INTERROGATORY NO. 22:**   Identify each and every time you have been denied life insurance or medical insurance for reasons relating to any medical or physical condition in the last ten years, including the name of the entity that denied coverage, date of denial, and states reasons for denial.

**ANSWER NO. 22:**   I have never been denied life or medical insurance.

**INTERROGATORY NO. 23:**     Identify all out-of-pocket expenses that you have paid and claim are related to any condition that you alleged was caused by the Filter implanted in you, including the nature of the out-of-pocket expense and the approximate dollar amount.

**ANSWER NO. 23:**   My out of pocket expense are:

| | |
|---|---|
| Airfare to Hersey Penn for IVC Filter Removal | $900.00 |
| Hotel x 3 nights | $450.00 |
| Rental Car | $400.00 |
| Gas | $100.00 |
| Food | $200.00 |
| Russ work loss | $600.00 |

**INTERROGATORY NO. 24:**     Please state whether you use or ever have used social media websites, including but not limited to, Facebook, Twitter, Instagram, Vine, Snapchat, YouTube, LinkedIn, Pinterest, or other social media.  For each website you have used, please provide all user names, handles, login names or IDs and e-mail addresses applicable to the login or use of the website, and the approximate dates or date range of use for each website.

**ANSWER NO. 24:**   OBJECTION: Plaintiff objects to this interrogatory as seeking information outside the proper scope of discovery and as intended to harass, embarrass or violate Plaintiff and Plaintiff's family and friend's privacy.

I HEREBY CERTIFY that a copy of the foregoing has been furnished by e-service this 12th day of October, 2015, to:  Anna C. Rutigliano, Esq., Faegre Baker Daniels, LLP, Suite 2700, 300 North meridian Street, Indianapolis, IN  45204; Douglas B. King, Esq., Wooden McLaughlin, LLP, Suite 1800m, One Indiana Square, Indianapolis, IN  46204; Ben C. Martin, Esq., Law Office of Ben C. Martin, Suite 100, 3219 McKinney Avenue Dallas, TX  75204; Michael W. Heaviside, Esq., Heaviside Reed Zaic, Suite 203, 312 Broadway, Laguna Beach, CA  92651; and David P. Matthews, Esq., Matthews & Associates, 2905 Sackett Street, Houston, TX  77098..

> BABBITT & JOHNSON, P.A.
> Attorneys for Plaintiff
> 1641 Worthington Road, Suite 100
> Post Office Box 4426 (33402-4426)
> West Palm Beach, FL  33409
> Tel:  (561) 684-2500
> Fax: (561) 684-6308
> jjohnson@babbitt-johnson.com
>
>
> By    /s/ Joseph R. Johnson
>      JOSEPH R. JOHNSON
>      Florida Bar # 372250

EXHIBIT G

# FAEGRE BAKER
## DANIELS

USA ▾ UK ▾ CHINA

**Patrick H. Reilly**
*Associate*
patrick.reilly@FaegreBD.com
Direct **+1 317 237 1087**

**Faegre Baker Daniels LLP**
300 North Meridian Street ▾ Suite 2700
Indianapolis ▾ Indiana 46204-1750
Main **+1 317 237 0300**
Fax **+1 317 237 1000**

October 20, 2016

## VIA E-MAIL, ORIGINAL TO FOLLOW BY OVERNIGHT MAIL

Joseph R. Johnson
BABBIT & JOHNSON, P.A.
1641 Worthington Road, Suite 100
P.O. Box 4426
West Palm Beach, FL 33409

Re:     *In Re: Cook Medical, Inc., IVC Filters Marketing, Sales Practices and Product Liability
        Litigation,* MDL No. 2570, Case No. 1:14-cv-06016

Dear Joe:

I am writing to you about the discovery requests that Cook served on Plaintiff Elizabeth Hill on
September 1, 2016.  As referenced in the attached letter, Ms. Hill's responses were untimely and
deficient.

The deficiencies in Ms. Hill's responses to Defendants' First Set of Interrogatories
("Interrogatories") and Request for Production of Documents ("Requests") are described in
detail below.  In addition, you did not sign the objections, and Ms. Hill did not verify her
interrogatory responses, both of which are required by Fed. R. Civ. P. 33(b)(5).

Please sign the objections and have Ms. Hill submit supplemental, verified answers to the
Interrogatories and supplemental responses to the Requests as requested below on or before
October 27, 2016.  Given that Ms. Hill's deposition is scheduled for November 10, 2016, it is
imperative that supplemental responses are provided by October 27, 2016, so that we have time
to review them prior to the deposition.

-2-                                                    October 20, 2016

## DEFICIENCIES IN RESPONSES TO INTERROGATORIES

Interrogatory Nos. 8, 9, 11-16, 18-20, 24:

You objected to these Interrogatories on various grounds.  However, any ground that is "not stated in a timely objection is waived."  *See* Fed. R. Civ. P. 33(b)(4).  Because you did not serve your objections until October 12, 2016, which is well beyond the October 1, 2016, deadline, the grounds for your objections are waived.  As such, please provide complete answers as required by the rules.  *See* Fed. R. Civ. P. 33(b)(3).

Interrogatory Nos. 8, 20:

You objected to these Interrogatories as seeking information protected by the attorney-client privilege, the consulting-expert privilege, or the work product doctrine.  Pursuant to Fed. R. Civ. P. 26(b)(5)(A), if a party withholds information otherwise discoverable by claiming that the information is privileged, the party must "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Ms. Hill's answer does not comply with Rule 26(b)(5)(A).  Please supplement the answer with the necessary information as described by the rule.

Interrogatory No. 5:

This Interrogatory asked for the nature of all expenses, financial losses, or damages identified.  Ms. Hill listed an index of medical bills but did not describe the nature of each expense.  Please supplement the answer with complete information.

Interrogatory No. 6:

This Interrogatory asked for the policy period, policy number and policy limits associated with any payment or promise of payment.  Ms. Hill listed an index of payments, some by insurance companies, but did not provide the policy information.  Please supplement the answer with complete information.

Interrogatory No. 7:

This Interrogatory asked for information on any entity that provided medical coverage or paid any medical bills on behalf of Ms. Hill, and whether those entities have a right of subrogation against her.  Ms. Hill simply listed two entities, Medicare-MSPRC, and BC/BS/The Rawlings Company but did not state whether those entities have a right of subrogation against her.  Please supplement the answer with complete information.

US.108573343.01

October 20, 2016

Interrogatory No. 8:

This Interrogatory seeks all information, documents or things relating to Cook or the Filter.  You objected to the entirety of this Interrogatory as seeking information protected by attorney-client privilege, attorney-work product, and consulting expert privilege.  You also objected to it as seeking information that is "outside proper relevancy considerations" and that disclosure would "violate federal and state privacy interests of other individuals represented by Plaintiff's counsel."  First, please confirm that you do not have any non-privileged information that is responsive to this Interrogatory.  If you do, please supplement this answer with all non-privileged responsive information.  Second, please state with specificity your objection to this Interrogatory as not relevant or in violation of privacy interests.  *See* Fed. R. Civ. P. 33(b)(4).

Interrogatory Nos. 9, 18, 19:

You objected to these Interrogatories as exceeding the proper scope of an interrogatory because it requests production of documents or tangible items.  This is not a valid objection.  First, these interrogatories do not request production of documents.  Interrogatory No. 9 asks Ms. Hill to "**State** whether you read or saw . . .," Interrogatory No. 18 asks her to "**Describe** all statements . . .," and Interrogatory No. 19 asks her to "**Identify** and describe each person . . ."  To the extent that you object to these because they may be answered by examining a document, Fed. R. Civ. P. 33(d) contemplates this, giving the responding party the option to specify the records that must be reviewed, and giving the interrogating party a reasonable opportunity to examine the records.  Further, Cook's Request for Production No. 1 contemplates this as well, seeking "Any and all documents identified by you in response to any interrogatories Cook serves upon you in this action, including without limitation the interrogatories served concurrently with these requests."  Thus, in accordance with the federal rules, and in response to the Request No. 1, please supplement with complete answers to these interrogatories, or specify and/or produce any documents that are necessary to answer each Interrogatory.

Interrogatory Nos. 11-16:

You objected to these Interrogatories as premature.  Please confirm that this means that you have not yet identified any evidence that supports your claims cited in your Complaint.

Interrogatory No. 21:

This Interrogatory asks whether Ms. Hill has made any claim or commenced any action against anyone other than Cook.  Ms. Hill answered "Not applicable."  Please confirm that this means that she has not made any claim or commenced any action against anyone other than Cook for injuries or losses alleged in this action.

Interrogatory No. 24:

You objected to this Interrogatory as seeking information outside the proper scope of discovery and as intended to harass, embarrass, or violate Plaintiff and Plaintiff's family and friend's

-4-                                                          October 20, 2016

privacy.  However, this is not a valid objection because social media content is discoverable.  *See e.g., Higgins v. Koch Development Corp.*, 2013 WL 3366278, *2-3 (S.D.Ind. July 5, 2013) (granting defendant's motion to compel discovery of Facebook information); *Anderson v. City of Fort Pierce*, 2015 WL 11251963, *3 (S.D.Fla. Feb. 12, 2015).  Please supplement this answer with complete information.

## DEFICIENCIES IN RESPONSES TO REQUESTS FOR PRODUCTION

### Request Nos. 1, 41:

These Requests seeks all documents identified in or relied upon to formulate the answers to the Interrogatories and the answers to the Plaintiff Fact Sheet.  Ms. Hill provided responsive information in her answers to Interrogatories No. 1-3, 5-7, and 23.  Please confirm that Ms. Hill produced all documents that she identified or relied upon in formulating her answers to those Interrogatories and to her Plaintiff Fact Sheet.

### Request Nos 1, 2, 12-18, 20, 27-30, 36, 37.

You objected to each of these Requests for various general reasons.  Fed. R. Civ. P. 34(b)(2)(B) requires that the response must "state with specificity the grounds for objecting to the request, including the reasons."  Please provide supplemental responses that describe the reasons for each objection you are making, not just the name of the objection.

Additionally, Fed. R. Civ. P. 34(b)(2)(C) requires that an "objection must state whether any responsive materials are being withheld on the basis of that objection.  An objection to part of a request must specify the part and permit inspection of the rest."  Please provide supplemental responses that state whether responsive materials are being withheld on the basis of your objections to each of these requests.  Please also confirm that you are objecting to the entire request.  If you are only objecting to part of the request, supplement the response with responsive materials.

### Request Nos. 2, 12, 20, 27, 28, 29, 30, 37:

You objected to the production of items due to attorney-client privilege, the attorney work product doctrine, and consulting-expert privilege.  Pursuant to Case Management Order 10, entered on July 10, 2015, parties must provide a privilege log for all responsive documents withheld from production based on a claim of privilege.  Please produce a privilege log as required by Case Management Order 10.

### Request Nos 13-18:

You objected to these Requests as premature.  Please confirm that this means that you have not yet identified any documents that support your claims cited in your Complaint.

-5-                                                    October 20, 2016

Request Nos. 31-33, 35, 39:

In her responses to the Requests, Ms. Hill answered "Not applicable." Please clarify that the subject of these Requests does not apply to her allegations in this action and that she will not rely on any evidence that is responsive to these Requests in any way.

Request Nos 3, 6, 8, 19, 24, 25.

In response to Request Nos. 3, 6, 8, 19, 24, and 25, Ms. Hill stated that either she did not have any responsive documents in her possession, or that she produced responsive documents in her "possession." As you know, Ms. Hill is obligated to produce documents or things that are in her "possession, custody, or control." *See* Fed. R. Civ. P. 34(a)(1). Please confirm that Ms. Hill does not have possession, custody or control of any information or documents that are responsive to these Requests that she has not already produced. If she does have additional responsive information or documents in her possession, custody, or control, please supplement these responses accordingly.

Request No. 8:

This Request seeks all communications between Plaintiff and any third party relating to the Filter. Ms. Hill responded with the production of medical bills. This is not responsive. Please supplement this response with communications, or confirm that there are no responsive documents to this Request.

Request No. 29:

This Request seeks information relating to any fact or expert witness Ms. Hill intends to call at trial. You object to this Request as seeking attorney-work product and for exceeding the proper scope of discovery for fact witnesses. The federal rules state the standard for the proper scope of discovery, which includes "matter that is relevant to any party's claim or defense" among other considerations. Fed. R. Civ. P. 26(b). Please confirm that Ms. Hill's response indicates that there are no fact witnesses that are within the scope of discovery, that is, that are relevant to any of her claims, and that she does not intend to call any fact witness at trial. If that is incorrect, please supplement this response accordingly.

Please do not hesitate to contact me if you have any questions or concerns about the discovery Cook has served on the Ms. Hill or my requests for supplementation above.

-6-                                                          October 20, 2016

Very truly yours,

Patrick H. Reilly

ARP:acr

cc:    John T. Schlafer *(via email)*
       Andrea Roberts Pearson *(via email)*
       Douglas B. King *(via email)*
       Michael W. Heaviside *(via email)*
       David P. Matthews *(via email)*

US 108573343.01

FaegreBD.com

# FAEGRE BAKER
# DANIELS

USA ▾ UK ▾ CHINA

**Patrick H. Reilly**
*Associate*
patrick.reilly@FaegreBD.com
Direct +1 317 237 1087

Faegre Baker Daniels LLP
300 North Meridian Street ▾ Suite 2700
Indianapolis ▾ Indiana 46204-1750
Main +1 317 237 0300
Fax +1 317 237 1000

October 4, 2016

## VIA E-MAIL, ORIGINAL TO FOLLOW BY OVERNIGHT MAIL

Joseph Johnson
BABBIT, JOHNSON, OSBORNE &
LeCLAINCHE, PA
1641 Worthington Road, Suite 100
P.O. Box 4426
West Palm Beach, FL 33402

Re:    *In Re: Cook Medical, Inc., IVC Filters Marketing, Sales Practices and Product Liability Litigation,* MDL No. 2570, Case No. 1:14-cv-06016

Dear Joe:

I am writing to you regarding the attached discovery requests that certain Cook defendants served on Plaintiff Elizabeth Hill on September 1, 2016. These responses are necessary for Cook to work up the case for trial, including Ms. Hill's deposition, which has been scheduled for October 13, 2016. Ms. Hill's answers and responses were due 30 days from the date of service, which is October 1, 2016, at the latest. Ms. Hill did not serve any answers or responses by October 1, 2016, and she never contacted Cook to ask for an extension. Therefore, her answers and responses are late, and any objections to the First Set of Interrogatories are untimely and are therefore waived.

Please provide Ms. Hill's initial, verified answers and responses by October 7, 2016, so that we have time to review prior to her deposition. Please call or email me if you have any questions about this letter.

US.108352811.01

-2-                                                          October 4, 2016

Very truly yours,

Patrick H. Reilly

PHR:acr

cc:    Andrea R. Pierson *(via email)*
       John T. Schlafer *(via email)*
       Douglas B. King *(via email)*
       Ben C. Martin *(via email)*
       Michael W. Heaviside *(via email)*
       David P. Matthews *(via email)*

EXHIBIT H

Page 34

1  Q.  Did you ever see any print advertisements?
2  A.  No.
3      (Pause.)
4  Q.  Did you ever contact Cook about your filter?
5  A.  No.
6  Q.  Why not?
7  A.  Why would I?
8  Q.  When did you first contact an attorney?
9      MR. JOHNSON:  Don't answer that question.
10  A.  I...
11     MS. COX:  Are you instructing her not to
12 answer?
13     MR. JOHNSON:  I am.  That's an attorney-client
14 privilege that I'm not going to let her waive or
15 breach.
16     MS. COX:  And can you explain to me what about
17 the fact of her contacting you is attorney-client
18 privilege?
19     MR. JOHNSON:  I think the relationship when it
20 starts is protected; it's privileged.  And we're not
21 going to go there.
22     MS. COX:  I'm not asking for the content of
23 anything that you discussed.
24     MR. JOHNSON:  No -- the date, that is not going
25 to be answered.  So let's move on.

Page 35

1 BY MS. COX:
2  Q.  Had you -- why did you file a lawsuit?
3      MR. JOHNSON:  Form objection.
4  Q.  You can answer.
5  A.  Okay.  Because the filter failed.  I almost
6 died.  And that's why.
7  Q.  How did you -- how did you come to find your
8 attorney?
9      MR. JOHNSON:  Don't answer that question.
10     MS. COX:  You're instructing her not to
11 answer --
12     MR. JOHNSON:  Yes.
13     MS. COX:  -- how she came to find you?
14     MR. JOHNSON:  Yeah.  If there was a referral
15 lawyer, for example, that's privileged.  So that's a
16 hypothetical.  So we're not answering that.
17 BY MS. COX:
18  Q.  Can you tell me tell who the attorneys are that
19 are representing you in this matter?
20  A.  Joseph Johnson.
21  Q.  Have you ever talked to any other attorney?
22     MR. JOHNSON:  You can answer.
23  A.  Joshua Sheridan in Tampa.
24  Q.  And do you still talk to Joshua Sheridan in
25 Tampa?

Page 36

1  A.  About once a year.
2  Q.  How do you know Mr. Sheridan?
3  A.  He -- I -- he was a lawyer that I knew in
4 Tampa.
5  Q.  Were you -- did you ever live in Tampa?
6  A.  It's right by St. Pete.
7  Q.  Okay.  And is that how you came to find
8 Mr. Johnson?
9      MR. JOHNSON:  Don't answer that question.
10 BY MS. COX:
11  Q.  Have you -- do you recall filling out a
12 plaintiff fact sheet in this case?
13  A.  Would you show it to me?
14  Q.  Yes.
15     Do you recognize this?  Do you recognize this?
16  A.  I believe this is a form I filled out.
17  Q.  If you look at the last page.
18  A.  The very last?
19  Q.  Yes.
20     MR. JOHNSON:  Page 24.  Not the very last
21 because you've got attachments.
22     MS. COX:  Oh, sorry.  Yes.  Page 24.
23 BY MS. COX:
24  Q.  You'll see that there's a verification page,
25 and it looks like your husband signed this on 2/17/2015.

Page 37

1      Is that -- does that look correct?
2  A.  Yes, it does.  That's his signature.
3  Q.  So you had already talked to an attorney before
4 February of 2015, correct?
5  A.  Yes.  That is correct.
6  Q.  Do you know about how long before that?
7      MR. JOHNSON:  Don't answer that question.
8      MS. COX:  You're instructing her not to answer?
9      MR. JOHNSON:  Yes.  I mean, you keep trying to
10 get at when she retained me or when she retained a
11 lawyer.  We're not going to go there.
12 BY MS. COX:
13  Q.  Besides Mr. Sheridan or Mr. Johnson, have you
14 talked to any other lawyers in this case -- about your
15 case?  You can look at your answer.
16  A.  Mike.
17  Q.  Okay.  Besides Mike and Mr. Johnson, have you
18 talked to anyone else?
19  A.  Yeah.  You said Josh, Joshua Sheridan.
20     No.
21  Q.  Okay.  Have you ever been involved in any other
22 lawsuits?
23  A.  No.
24  Q.  Have you ever served on a jury?
25  A.  No.

10 (Pages 34 - 37)

Page 38

1  Q.  Have you ever been called to serve on a jury?
2  A.  I was called to serve on a jury, but it was
3 after I had had my back surgery and I can't sit that
4 long.  So I had a doctor's -- what would you call
5 it? -- excuse.
6  Q.  What year was that?
7  A.  My back surgery was 2010.  So it was probably
8 2011, 2012.
9  Q.  Let's look at Exhibit 2 here for a second.
10  A.  You're going to have to help me.
11  Q.  That's the exhibit that you have in your hand,
12 the plaintiff fact sheet.
13    Do you see it?  Okay.
14    MS. COX:  Can we go off the record for a
15 second?  Is there a screen so I can see what this --
16 no, there's no screen.
17    THE VIDEOGRAPHER:  No, you would have to be
18 looking at it yourself to know.
19    MS. COX:  You know what?  They've got a copy.
20 So let's turn this around so I can actually see.
21    THE WITNESS:  She can have this one.
22    MS. COX:  Actually, I might --
23    THE VIDEOGRAPHER:  Let me take us off the
24 record.
25    The time is 9:33 a.m.  We're going off the

Page 39

1 record.
2    (Break taken from 9:33 a.m. to 9:34 a.m.)
3    (Exhibit 2 was marked for identification.)
4    THE VIDEOGRAPHER:  The time is 9:34 a.m.  We
5 are back on the record.
6 BY MS. COX:
7  Q.  I'm looking at the first page of your plaintiff
8 fact sheet that we've marked as Exhibit 2.
9    In this first paragraph, do you see it's
10 underlined?  It says you are under oath and must answer
11 every question.
12    Do you see that?
13  A.  Yes, I do.
14  Q.  Were you aware of this when you filled this
15 form out?
16  A.  Yes.
17  Q.  Do you remember filling out this document and
18 signing it --
19  A.  Yes, I do.
20  Q.  When was the first time you reviewed this fact
21 sheet?
22  A.  I do not remember.
23  Q.  It looks like your husband signed it in
24 February of 2015.
25    So it would have been before February of 2015,

Page 40

1 correct?
2  A.  It would have been around that time, I assume.
3  Q.  But you just don't recall how -- how long
4 before February '15 or so?
5  A.  No, I do not.
6  Q.  Is this your signature on the last -- on this
7 page, 24?
8  A.  Yes.
9  Q.  And you understood that you were under the
10 obligation to tell the whole truth when you filled out
11 this document, correct?
12  A.  Yes, of course.
13  Q.  Tell me, how was this document prepared?
14  A.  I went through and filled it out.
15  Q.  Did you handwrite your answers?
16  A.  Yes.
17  Q.  Okay.  I'm looking at this document and it's
18 typed, so I'm wondering if you filled out something by
19 hand first or if you actually typed these answers.
20  A.  Filled it out by hand, sent it to (indicating)
21 Babbitt and Johnson.
22    MS. COX:  Okay.  So we're going to put a
23 request on the record for the handwritten version of
24 the plaintiff fact sheet.
25    MR. JOHNSON:  I don't know whether it exists;

Page 41

1 but if it does, we'll certainly --
2    MR. HEAVISIDE:  Consider your request.
3    MR. JOHNSON:  Consider your request.  I mean,
4 I -- I suspect that we destroyed those things, but I
5 don't know for sure at this point.
6    MS. COX:  Okay.  Well, we'll follow up after
7 the deposition that we would like you to check and
8 see if you still have --
9    MR. JOHNSON:  Sure.
10    MS. COX:  -- maintained a copy of the
11 handwritten answers to the plaintiff fact sheet.
12    MR. JOHNSON:  Okay.
13 BY MS. COX:
14  Q.  Do you know who typed the answers in here?
15  A.  No.
16  Q.  You assume it was someone at your attorney's
17 office?
18  A.  Of course.
19  Q.  Did you review the typewritten answers once
20 they were typed to make sure they were the same as your
21 handwritten answers?
22  A.  They were sent to me by e-mail to -- to review.
23  Q.  So you reviewed it by e-mail and then you sent
24 it back?
25  A.  Then I sent the e-mail back, that it looks

11 (Pages 38 - 41)

Page 42

1  correct to me.
2  Q.  And then -- and then you signed when?
3  A.  (After perusing document) What is it, Page 24?
4  Q.  Yes.
5  A.  Yeah.
6  Q.  How did you sign the copy?  Did you -- did you
7  sign it after you looked at their typewritten notes, or
8  did you fill it out by hand, sign it, and send that in?
9  A.  I honestly don't remember.
10  Q.  Okay.  Did anyone help you fill out these
11  responses?
12  A.  No.
13  Q.  Did you review any records in order to fill in
14  the information?
15  A.  No.
16  Q.  You didn't review any of your medical records
17  to fill out all this stuff?
18  A.  No.
19  Q.  So you've got a really good memory.
20  A.  Pretty good.  I've had to write it down so many
21  times, I...
22  Q.  So when you signed this, you don't know if this
23  signature was before or after you reviewed the typed
24  copy?
25  MR. JOHNSON:  Form objection.  It's been asked

Page 43

1  and answered.
2  Q.  You can answer.
3  A.  After I reviewed it.  I would not sign it
4  before.
5  Q.  Before you reviewed the -- the typed version?
6  A.  I mean -- okay.
7  I signed it that it was correct when I filled
8  it out.  I also signed afterwards.
9  Q.  You also signed after you reviewed the typed
10  copy?
11  A.  I believe I did.
12  Q.  I'm going to give you a little time.  Can you
13  flip through here?  I want to -- I want to know if
14  everything in here is still accurate.  And if you need a
15  little time to do that, I'm happy to -- to let you flip
16  through.
17  A.  I --
18  MR. JOHNSON:  Why don't we take a break.
19  (Simultaneous speakers.)
20  THE WITNESS:  You want me to go through this
21  whole thing?
22  MS. COX:  Yes.
23  THE VIDEOGRAPHER:  Do you want me to bring us
24  off the record?
25  MR. JOHNSON:  Yes.

Page 44

1  THE VIDEOGRAPHER:  Stand by.  The time is
2  9:39 a.m.  We are going off the record.
3  (Break taken.)
4  THE VIDEOGRAPHER:  The time is 10:08 a.m.  Oh,
5  sorry.
6  BY MS. COX:
7  Q.  Jane, we are back on the --
8  THE VIDEOGRAPHER:  The time is 10:08 a.m.  We
9  are back on the record.
10  BY MS. COX:
11  Q.  I think we're back on the record.  We just took
12  about a 25-minute break, where you went to talk with
13  your attorneys about your plaintiff fact sheet.
14  So before we broke, I asked you if there was
15  anything in your plaintiff fact sheet that you think
16  needed to be changed or edited.
17  And did you come up with anything during this
18  25-minute meeting?
19  A.  (After perusing document.)
20  (Pause.)
21  Q.  Did you come up with anything that you wanted
22  to change?
23  A.  I believe I might have made a mistake and
24  underlined a word.
25  MR. JOHNSON:  Which one is that?  Oh.

Page 45

1  BY MS. COX:
2  Q.  Tell me what page.
3  A.  Page 6.  No. 7.
4  Q.  Okay.  Tell me what needs to be changed.
5  A.  I was given verbal information, and that verbal
6  information was not concerning any risk of the failure
7  of the filter or it puncturing me; it was more
8  procedural failure -- not failure, but procedural
9  complications, like, I would have to lay in the bed
10  after they inserted the -- the catheter and placed the
11  filter.  And I could have a hematoma and swelling.
12  Q.  Who gave you the verbal instructions about the
13  inferior vena cava filter?
14  A.  It was, actually, the nurse at Dr. Zuzga's
15  office.  And then the post in -- post placement was the
16  nurse following the procedure at the hospital.  And I
17  don't remember either of them's names.
18  Q.  So two nurses gave you information and verbal
19  instructions about your IVC filter?
20  A.  Yes.  But different information.  One was prior
21  to going to the hospital; one was after the placement in
22  the recovery area.
23  Q.  The nurse that gave you information before the
24  placement, you don't remember her name?
25  A.  It was a him.

12 (Pages 42 - 45)

**Page 226**

1   Q.   So now that your attorney is present and we're
2   on the record, can you tell me what you were talking
3   about?
4   A.   The very last note from Dr. Moreno says that I
5   followed up in his office in September of 2013,
6   following a motor vehicle accident.  That is not me.  I
7   want that on the record.
8       MR. JOHNSON:  Okay.
9   Q.   Okay.  That's --
10  A.   That's all.
11  Q.   And is that something that you caught when you
12  were sending your records to your attorneys to review?
13  A.   Yeah, review.
14  Q.   Did you see any other inaccuracies in your
15  records?
16      MR. JOHNSON:  Form.
17  A.   There was so many of them.
18  Q.   Is that the only --
19  A.   That -- that -- that was blaring and glaring.
20  Q.   Did you see any other glaring inaccuracies when
21  you reviewed your records?
22  A.   No.
23  A.   No.
24      Now, we had discussed earlier -- and you said
25  that you had never seeked -- sought treatment from a

**Page 227**

1   psychiatrist.
2   A.   Correct.
3   Q.   In one of your notes -- in one of the notes
4   from Dr. Bellingar in August of 2012, she notes that you
5   were seeing a psychiatrist.
6   A.   I was not seeing a psychiatrist.  I was seeing
7   a friend who was a mental health counselor.
8   Q.   So who was this friend?
9   A.   Annie.
10  Q.   What's her last name?
11  A.   Santori.
12  Q.   C-e-n?
13  A.   No.  S-a -- I'll have to get my phone out to
14  tell you how to spell it.  S-a-n-t-o-r-i, Santori.
15  Q.   And is Annie a -- a social worker?
16  A.   No.  She's a -- mental health -- a spiritual
17  counselor.
18  Q.   When did you start seeing -- do I call her
19  Annie or is she a doctor or...
20  A.   No.
21  Q.   Okay.
22  A.   Annie.
23  Q.   Annie.  When did you start seeing Annie?
24  A.   I saw her the summer of 2012 for something
25  totally unrelated to this.

**Page 228**

1   Q.   Did you start seeing Annie after -- and I
2   apologize.  I know this is a sensitive subject.  But
3   your records suggest that you found out your husband had
4   been cheating on you?
5   A.   Yes.
6   Q.   Is that when you started seeing Annie?
7   A.   Yes.
8       MR. JOHNSON:  You know, we're not going to ask
9   any more questions about this.  That is so off
10  limits.  It's so irrelevant.  We're not going there.
11      MS. COX:  You had made an indication that you
12  might be amending the complaint to add her -- a loss
13  of consortium claim from her husband.
14      MR. JOHNSON:  It goes to him, not to her.  It
15  has nothing to do with her damages.
16  BY MS. COX:
17  Q.   How long have you been seeing Annie?
18  A.   I don't see Annie anymore.  She's my friend.
19  Q.   You started seeing her in 2012.
20      How long did you see her?
21  A.   I saw her individually for three months.  And
22  then she saw Russ and I another -- I'm sorry, Joe.
23      MR. JOHNSON:  Okay.
24  Q.   You're fine.
25  A.   -- another nine months.

**Page 229**

1   Q.   Have you ever seen anyone else for any sort of
2   therapy or counseling that we haven't already talked
3   about today?
4   A.   No.  Baby bonding class.
5   Q.   When you were -- when you just had your son?
6   A.   Uh-huh.
7   Q.   Earlier today you testified the first time that
8   you talked to a lawyer, you talked to a Mr. Sheridan.
9       I asked you when you first contacted
10  Mr. Sheridan, and I specifically stated I only wanted to
11  know the date that you contacted him.
12      And I was not inquiring about the substance of
13  your conversation with Mr. Sheridan.  Your attorney
14  directed you not to answer.
15      But, for the record, I'm going to ask you one
16  more time for the date on which you first contacted
17  Mr. Sheridan to talk about a potential lawsuit against
18  Cook.
19      MR. JOHNSON:  Don't answer that question.
20      MS. COX:  And are you objecting on the basis of
21  attorney-client privilege?
22      MR. JOHNSON:  I am.
23      MS. COX:  And do you have any other basis for
24  your objection?
25      MR. JOHNSON:  It's irrelevant.  It's

58 (Pages 226 - 229)

Page 230

1  immaterial. It doesn't tend to prove or disprove
2  any issue in this case. It seeks misleading -- it
3  would be confusing and misleading to the jury. It
4  has no place in this litigation.
5      MS. COX: Is your instruction to her not
6  respond -- to not respond based solely on the
7  attorney-client privilege?
8      MR. JOHNSON: It's based on the attorney-client
9  privilege. And I don't know whether there are any
10  attorney work product issues that might related to
11  him and her, but --
12     MS. COX: Right. Well, I'm not asking about
13  substance. I'm asking about a fact that she would
14  know regardless of speaking with an attorney.
15     So I'm trying to clarify for the record -- let
16  me finish -- if you are instructing her not to
17  answer based solely on attorney-client privilege.
18     MR. JOHNSON: I am basing it on privilege, yes.
19     MS. COX: Okay. I would like to hand you a
20  case called Coffey-Garcia versus South Miami
21  Hospital. You're a Florida attorney. This is a
22  Florida case that was just decided in June.
23     It basically held that a -- a person is -- the
24  attorney-client privilege does not cover the fact of
25  when a person first discusses possible legal

Page 231

1  remedies with an attorney.
2      If you look at the holding on the first page of
3  4, attorney-client privilege does not protect facts
4  known by a client independent of any communication
5  with the lawyer. So I'll ask again.
6  BY MS. COX:
7  Q.  Do you know --
8      MR. JOHNSON: Let -- let me put on the record,
9  she's not going to answer the question. I just went
10  through this issue three weeks ago in a trial.
11     There is other case law, which I believe is the
12  opposite of this case, out of probably a different
13  district.
14     So we're not -- we're not going to get into an
15  argument here. It's -- it's -- it's done. She's
16  not answering.
17     MS. COX: We're making a record and we will
18  follow up with the Court.
19     MR. JOHNSON: Okay.
20     MS. COX: Okay. I don't have any further
21  questions.
22     Do you have any questions?
23     MR. JOHNSON: I do have a few questions.
24     THE WITNESS: I'm okay.
25            CROSS-EXAMINATION

Page 232

1  BY MR. JOHNSON:
2  Q.  Okay. It's been a long day.
3  A.  Yes.
4  Q.  I'll try to be quick.
5      Earlier today you were asked about your work as
6  a psych nurse. And I think one of the things you
7  indicated was that from time to time you would actually
8  administer medications. You would not prescribe those
9  medications.
10  A.  That's correct.
11  Q.  And I believe you were asked whether you would
12  from time to time provide patients with information
13  about the side effects associated with those
14  medications.
15  A.  That's correct.
16  Q.  All right.
17  A.  The product information that was given to me to
18  provide to the patient.
19  Q.  All right. And that's my question: How is it
20  that somebody like you providing side effect information
21  gets the information that you can then pass on to the
22  patient?
23  A.  We get it from -- we would get it from the --
24  the pharmacy reps, from the product.
25  Q.  Okay. And when you say the pharmacy reps, are

Page 233

1  you referring to the representatives of the
2  manufacturers?
3  A.  Of the manufacturer of the -- Eli Lilly came
4  around. They would give us information that we shared
5  with the patients.
6  Q.  All right.
7  A.  For example.
8  Q.  So in -- in order for you to provide accurate
9  information about side effects, do you rely upon the
10  product manufacturer to give you that information?
11     MS. COX: Object to form.
12  Q.  You can answer.
13  A.  Yes, I do.
14  Q.  Okay. And so the information in that
15  circumstance that you relayed to a patient is only as
16  good as the information that the product manufacturer
17  gives you, correct?
18     MS. COX: Object to form.
19  Q.  You can answer.
20  A.  Yes.
21  Q.  With regard to your gallbladder, I think we
22  established it was removed sometime in 2011.
23  A.  Yes. Thank God.
24  Q.  All right. And -- and did you experience
25  relief from your GI symptoms when the gall- -- when your

59 (Pages 230 - 233)

EXHIBIT I

# FAEGRE BAKER DANIELS

FaegreBD.com

USA ▾ UK ▾ CHINA

Jessica Benson Cox
*Partner*
jessica.cox@FaegreBD.com
Direct **+1 317 237 1234**

**Faegre Baker Daniels LLP**
300 North Meridian Street ▾ Suite 2700
Indianapolis ▾ Indiana 46204-1750
Main **+1 317 237 0300**
Fax **+1 317 237 1000**

November 17, 2016

**VIA ELECTRONIC MAIL AND FIRST-CLASS MAIL**

Joseph Johnson
BABBIT, JOHNSON, OSBORNE &
LeCLAINCHE, PA
1641 Worthington Road, Suite 100
P.O. Box 4426
West Palm Beach, FL 33402

Michael W. Heaviside
HEAVISIDE REED ZAIC
910 17th Street, NW, Suite 800
Washington, DC 20006

Re:   *In Re: Cook Medical, Inc., IVC Filters Marketing, Sales Practices and Product Liability Litigation*, MDL No. 2570, Case No. 1:14-cv-06016

Dear Joe and Mike:

This letter is to follow up on the requests we made during Ms. Hill's deposition on November 10, 2016.  Please send a copy of the following documents: (1) a copy of Ms. Hill's handwritten answers to her Plaintiff Fact Sheet; (2) receipts for the out,of pocket expenses she claims; and (3) screenshots of Ms. Hill's Facebook account.

Thank you for your cooperation.  Please call or email me if you have any questions.

Very truly yours,

Jessica Benson Cox

JBC/jd
cc:   Andrea R. Pierson (*via email*)
      John T. Schlafer (*via email*)
      Patrick H. Reilly (*via email*)
      Douglas B. King (*via email*)

US.108983611.01