## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND                   Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION                    MDL No. 2570

_____

This Document Relates to All Actions

_____

### THE COOK DEFENDANTS' RESPONSE IN OPPOSITION
### TO PLAINTIFFS' OBJECTIONS AND APPEAL FROM
### MAGISTRATE TIM A. BAKER'S ORDER SUSTAINING DEFENDANTS'
### OBJECTION TO PRODUCTION OF NET WORTH DOCUMENTS

## I. INTRODUCTION

Defendants Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS (collectively, the "Cook Defendants") respectfully submit this Response in Opposition to Plaintiffs' Objections and Appeal from Magistrate Tim A. Baker's Order Sustaining Defendants' Objection to Production of Net Worth Documents [Dkt. No. 4230] ("Plaintiffs' Objection and Appeal").[1]

Plaintiffs once again request that the Cook Defendants produce confidential financial information of their parent company, Cook Group Inc., a family-owned, non-public company, and also cash flow statements for the Cook Defendants. Each time Plaintiffs have requested this information, the Cook Defendants objected, and each time Magistrate Baker agreed that the requested financial information was irrelevant and not proportional to the needs of the case.

---

[1] In accordance with Local Rule 5-1(b), a Separate Index of Exhibits to The Cook Defendants' Response in Opposition to Plaintiffs' Objections and Appeal from Magistrate Tim A. Baker's Order Sustaining Defendants' Objection to Production of Net Worth Documents has been filed contemporaneously with this Response. The Exhibits referenced in this Response are attached to the Separate Index.

Consequently, Magistrate Baker has consistently denied Plaintiffs' requests for Cook Group Inc.'s confidential financial information and the cash flow statements of the Cook Defendants.

Specifically, on February 21, 2017, Magistrate Baker rejected Plaintiffs' pleas, stating that the financial information already produced by the Cook Defendants "satisfy Defendants' obligation to produce requested information regarding the Cook Defendants' net worth.  As indicated, Cook has produced roughly ten years of financial data, and the request[s] that the Plaintiffs are promulgating appear to me to be cumulative, duplicative, overly broad, and not proportional to the needs of the case, . . . .  This is a privately-held entity, and this strikes me as a fishing expedition." *See* Transcript of Pretrial Conference (02/21/2017) (attached as Exhibit A to Separate Index), at 51:5-15.

Refusing to take no for an answer, Plaintiffs again requested the cash flow documents and financial information of Cook Group Inc., and again, on March 15, 2017, Magistrate Baker sustained the Cook Defendants' objections to production of the cash flow documents of the Cook Defendants and the confidential financial information of Cook Group Inc.  *See* March 15, 2017 Order on Discovery of Cook Group, Inc.'s Financial Information ("March 15, 2017 Order") [Dkt. No. 4108].  Magistrate Baker found that Plaintiffs' requests sought highly confidential information that was irrelevant and not proportional to the needs of the case, especially given the "vast amount of financial information" and "highly relevant financial data for the [Cook] Defendants in this case for a 10-year period" that the Cook Defendants had already produced to Plaintiffs.  *See id.*

On March 30, 2017, Plaintiffs filed Plaintiffs' Objection and Appeal pursuant to Rule 72(a) requesting that the Court reverse Magistrate Baker's March 15, 2017 Order.  In asserting

that Magistrate Baker was "clearly erroneous," Plaintiffs raise no new arguments, let alone valid reasons to overturn Magistrate Baker's findings and March 15, 2017 Order.

Indeed, Magistrate Baker correctly found that Plaintiffs' request for the financial information of Cook Group Inc. was irrelevant to Plaintiffs' punitive damages claim against the Cook Defendants and was not proportional to the needs of the case. Cook Group Inc. did not design, manufacture, or sell the IVC filters at issue in this products liability MDL, and Case Management Order #3 ("CMO 3") [Dkt. No. 353] does not somehow make Cook Group Inc.'s financial information relevant. Further, the requested information is not proportional to the needs of this case, especially given its highly confidential nature and the volume of other financial information for the Cook Defendants that has already been produced.

Moreover, Magistrate Baker properly denied Plaintiffs' requests for Cook Group Inc.'s financial information and the Cook Defendants' cash flow statements because Plaintiffs already have enough information from the Cook Defendants themselves to determine the Cook Defendants' net worth. Cook Group Inc.'s financial information and the cash flow statements of the Cook Defendants are not necessary to enable Plaintiffs to calculate the Cook Defendants' net worth, which can be determined by review of their income statements, balance sheets, and annual reports.

Finally, Magistrate Baker's Order is correct because the Cook Defendants' net worth is not relevant to the computation of punitive damages, especially in states that have damages caps.

## II. BACKGROUND

By January 2017, the Cook Defendants had produced to Plaintiffs in discovery what Magistrate Baker called a "vast amount of financial information" and "highly relevant financial

data for the [Cook] Defendants in this case for a 10-year period." *See* March 15, 2017 Order [Dkt. No. 4108], at 1-3.   In particular, the Cook Defendants had already produced:

- Annual Reports for William Cook Europe from 2006-2015;
- Balance Sheets for Cook Medical Inc. from 2006-2015;
- Income Statements for Cook Medical Inc. from 2006-2015;
- Balance Sheets for Cook Inc. from 2006-2015; and
- Income Statements for Cook Inc. from 2006-2015.[2]

The Cook Defendants have agreed to supplement this information for the 2016 fiscal year once the information is available. March 15, 2017 Order [Dkt. No. 4108], at 2-3.   The Cook Defendants also produced a report of sales for the Celect and the Günther Tulip filters within the United States from 2006-2014. *Id*. at 3.

Based on these productions and on meet-and-confer conferences in January, 2017, the Cook Defendants believed that the parties had resolved any outstanding issues about the discovery of the Cook Defendants' financial information as it related to Plaintiffs' punitive damages claim, and that Plaintiffs had concluded that they had more than enough information to assess the net worth of the Cook Defendants.   Nevertheless, on February 9, 2017, Plaintiffs advised the Cook Defendants that this extensive financial information was not enough and that they wanted more.   *See* February 9, 2017 e-mail from Bill Curtis to Ben Martin, *et al*., (attached as Exhibit C to Separate Index).   Plaintiffs claimed that they needed a whole new list of documents from the Cook Defendants, and that they also needed financial information from Cook Group Inc.—the Cook Defendants' parent corporation and a family-owned, non-public corporation.   *Id*.   Cook Group Inc. is not a party to this litigation and, more importantly, did not design, manufacture, or sell the IVC filters at issue in this litigation. Nevertheless, Plaintiffs requested the following additional information from the Cook Defendants and Cook Group Inc.:

---

[2]   A list of applicable documents with Bates numbers is attached as Exhibit B to the Separate Index.  Cook Inc. and Cook Medical LLC (f/k/a Cook Medical Inc.) do not have audited annual reports.

1.   Income Statements for the last five fiscal years.
2.   Balance Sheets for the last five fiscal years and the most recent completed fiscal quarter.
     a.   These should include an entry for "Cash and Cash Equivalents," as well as one for "Stockholders Equity."
3.   Cash Flow Statements for the last five fiscal years and the most recent completed fiscal quarter.
4.   Details of any transactions, loans, and payments (including dividends), between each defendant and that defendant's parent company for the last five fiscal years and the most recent completed fiscal quarter.
5.   Any and all Advertising Expenditures, Research and Development Expenditures, and Capital Expenditures for the last five fiscal years.
6.   Any Lines of credit or Credit Facilities extended or established specifically for each defendant and that defendants' parent company for the last five fiscal years and the most recent completed fiscal quarter.
7.   Any and all explanatory notes that accompany the above records (notes to financial statements, etc.)
8.   Explanations of any and all cash management policies between each defendant and that defendant's parent company.
9.   Total compensation for the president and/or chief executive officer of each defendant company for the most recently ended fiscal year.

*See id.* They also requested Cook Group Inc.'s annual reports, balance sheets, and income statements. *See id.* The Cook Defendants objected to Plaintiffs' new requests as untimely,[3] seeking irrelevant and highly confidential information, exceedingly overbroad, and not proportional to the needs of the case. *See* February 20, 2017 Letter from James M. Boyers to the Court (attached as Exhibit E to Separate Index).

At a February 21, 2017 hearing, Magistrate Baker addressed the parties' competing arguments on the discovery of additional financial information from the Cook Defendants and Cook Group Inc. Magistrate Baker sustained the Cook Defendants' objections and denied Plaintiffs' requests. *See* Order on February 21, 2017, Pretrial Conference [Dkt. No. 3777], at ¶ 3; *see* Ex. A, Transcript of Pretrial Conference (02/21/0017), at 49:12-51:24. Magistrate Baker

---

[3]   Plaintiffs' requests came after the close of common-issue, company discovery in November 2016, and were not specifically identified in Ben Martin's November 24, 2016 letter to Doug King identifying the remaining common-issue, company discovery disputes to be resolved. *See* Letter from Ben Martin, Plaintiffs' counsel, to Doug King, former counsel for the Cook Defendants, dated November 24, 2016 (attached as Exhibit D to Separate Index). Consequently, Plaintiffs' requests for this additional financial information are untimely.

found:  "Plaintiffs raised concerns regarding Defendants' production of financial information, which Plaintiffs asserted was needed for punitive damages issues.  The Court found Plaintiffs' request exceedingly overbroad and not proportional to the needs of the case, particularly in light of the financial information Defendants have produced."  *See* Order on February 21, 2017, Pretrial Conference [Dkt. No. 3777], at ¶ 3.  The Court, however, "did not foreclose the issue of whether Defendants need to produce additional financial information," but held that "any of Plaintiffs future requests, at a minimum, need to be *substantially more narrow*."  *Id.*  (emphasis added).

Weeks later, Plaintiffs renewed their requests.  Plaintiffs abandoned certain requests and limited the time periods for some of the requested confidential financial information.  For example, instead of cash flow statements for the last *five* years from the Cook Defendants, the renewed requests sought cash flow statements for the last *three* years.  *See* Email from Joe Williams to the Court, dated March 10, 2017 (attached as Exhibit F to Separate Index).[4]  In many respects, however, Plaintiffs latest requests sought as much or more information as the requests Magistrate Judge Baker had already rejected, and were *not* substantially narrowed in scope as the Court ordered.

Plaintiffs also repeated their requests for the annual reports, balance sheets, income statements, and other financial information of Cook Group Inc.  *See* Ex. F, Email from Joe Williams to the Court, dated March 10, 2017.  Again, Cook Group Inc. is ***not*** a party to this litigation and was ***not*** involved with the design, manufacture, or sale of the IVC filters at issue.

---

[4]   Plaintiffs claim they reduced the scope of this request from ten years to three years.  (*See* Exhibit F.)  But as Plaintiffs' February 9, 2017 e-mail (i.e., Exhibit C) indicates, their original request was for five years, not ten years.  However, Plaintiffs now apparently seek annual reports, balance sheets, income statements, and cash flow statements for *four* years. *See* Plaintiffs' Objection and Appeal [Dkt. 4230] at 1-2 (asking the Court to order the Cook Defendants and Cook Group, Inc. to produce additional financial information for *four* years, from 2013-2016).

*See* Declaration of Kelly Fischer (attached as Exhibit G to Separate Index), at ¶ 5.  Cook Group Inc. is a family-owned, non-public company that keeps its financial information strictly confidential, and it would suffer significant economic harm if this information were ever publicly disclosed.  *See id.* at ¶¶ 3, 7.  Cook Group Inc.'s competitors—a majority of which are publicly owned companies—would use this information to gain a competitive edge over Cook Group Inc., not just in the medical device market, but also in the other markets and industries where Cook entities compete.  *See id.* at ¶ 7.  The public disclosure of this information would also likely adversely affect Cook Group Inc.'s business relationships with its creditors, debtors, suppliers, and customers.  *See id.* at ¶ 7.  Further, the Cook Defendants—the actual parties to this litigation—make up only a small portion of entities reporting financial information to Cook Group Inc.  *See id.* at ¶ 4.  In fact, over 95% of the entities comprising Cook Group Inc. are not Cook Defendants, many of which have nothing to do with the manufacture, sale, or design of medical devices, and even less to do with the manufacture, sale, or design of IVC filters.  *See id.* at ¶ 4.

The Cook Defendants again objected to Plaintiffs' renewed requests as the Cook Defendants objected to Plaintiffs' new requests as seeking irrelevant and highly confidential information, overbroad, and not proportional to the needs of the case.  At the parties' request, the Court held a telephonic status conference on March 13, 2017, to revisit this dispute and consider these issues for a second time.  (No transcript was prepared for the March 13, 2017 telephonic conference.)

On March 15, 2017, Magistrate Baker issued his Order on Discovery of Cook Group Inc.'s Financial Information [Dkt. No. 4108] sustaining the Cook Defendants' objections to the production of financial information of Cook Group Inc.  Magistrate Baker again ruled that

Plaintiffs' requests sought highly confidential information that was irrelevant and not proportional to the needs of the case, especially given the "vast amount of financial information" and "highly relevant financial data for the [Cook] Defendants in this case for a 10-year period" already produced to Plaintiffs by the Cook Defendants.  *See* March 15, 2017 Order [Dkt. No. 4108], at 1-3.

On March 30, 2017, Plaintiffs filed their Objection and Appeal [Dkt. No. 4230] to Magistrate Baker's March 15, 2017 Order [Dkt. No. 4108].  Plaintiffs' Objection and Appeal effectively requests that the discovery issues of the production of Cook Group Inc.'s financial information and the Cook Defendants' cash flow statements be considered for yet a third time and that the Court reverse Magistrate Baker's March 15, 2017 Order.  *See* Plaintiffs' Objection and Appeal [Dkt. No. 4230], at 1.

Nothing in Plaintiffs' Objection and Appeal undermines the soundness of Magistrate Baker's reasoning in denying Plaintiffs' request for Cook Group Inc.'s financial information and the cash flow statements.  Plaintiffs have not and cannot demonstrate that Magistrate Baker's Order was "clearly erroneous" or "contrary to law" as required for relief under Federal Rule of Civil Procedure 72(a). The Cook Defendants respectfully urge the Court to reject Plaintiffs' challenges in their entirety.  There are no valid reasons to "modify or set aside" any part of Magistrate Baker's March 15, 2017 Order.  *See* Fed. R. Civ. Pro. 72(a).

### III.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 72(a), a district court may "modify or set aside" any part of a non-dispositive order referred to a magistrate judge "that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a).  "The clear error standard means the district court can overturn the magistrate judge's ruling *only if the district court is left with the definite and firm*

*conviction that a mistake has been made.*"  *Granite State Ins. Co. v. Pulliam Enters., Inc.*, 2015 WL 4946156, at *2 (N.D. Ind. Aug. 18, 2015) (citing *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997)) (emphasis added).  "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure."  *Pain Ctr. of SE Indiana, LLC v. Origin Healthcare Solutions, LLC*, 2014 WL 6674757, at *2 (S.D. Ind. Nov. 25, 2014) (internal quotations omitted).

## IV.  ARGUMENT

Magistrate Baker's Order is neither "clearly erroneous" nor "contrary to the law," and it should be affirmed.  *See* Fed. R. Civ. Pro. 72(a).  Magistrate Baker correctly decided the issue, consistent with the Federal Rules of Civil Procedure and prior Case Management Orders, and in accordance with the relevant law.

**A.     Magistrate Baker correctly found that Plaintiffs' request for the financial information of Cook Group Inc. is irrelevant to Plaintiffs' punitive damages claim against the Cook Defendants and is not proportional to the needs of the case.**

Magistrate Baker did not err in ruling (1) that Cook Group Inc.'s confidential financial information is irrelevant to Plaintiffs' punitive damages claim against the Cook Defendants, and (2) that Plaintiffs' requests for such information also are not proportional to the needs of the case.  Such confidential financial information has little or no bearing on the Cook Defendants' net worth.  Further, the burden and potential risk of economic harm that disclosure of this information would impose on the Cook Defendants and Cook Group Inc. is substantial.  Magistrate Baker correctly ruled that Plaintiffs had failed to demonstrate the need for this irrelevant and unnecessary information.

      **1.**     **Cook Group Inc.'s financial information and net worth are irrelevant to Plaintiffs' punitive damages claim against the Cook Defendants because Cook Group Inc. did not design, manufacture, or sell the IVC filters at issue.**

Plaintiffs' Objection and Appeal claims that Plaintiffs are entitled to discovery of non-party Cook Group Inc.'s confidential financial information (*i.e.,* annual reports, balance sheets, income statements, and cash flow statements) to support Plaintiffs' punitive damages claims against the Cook Defendants.  But Plaintiffs' Objection and Appeal ignores the undisputed and critical fact that Cook Group Inc. *is not one of the Cook Defendants*.  Cook Group Inc. did *not* design, manufacture, or sell the IVC filters at issue.  No claims—let alone a punitive damages claim—is pending against Cook Group Inc.

Under Indiana law, "a *person who sells, leases, or otherwise puts into the stream of commerce any product* in a defective condition unreasonably dangerous to any user or consumer," subject to certain statutory conditions, may be held liable for damages as a defendant in a products liability action.  *See* Ind. Code § 34-20-2-1 (emphasis added); *see* Ind. Code § 34-20-2-3 ("A product liability action based on the doctrine of strict liability in tort may not be commenced or maintained against a seller of a product that is alleged to contain or possess a defective condition unreasonably dangerous to the user or consumer unless the seller is a manufacturer of the product or of the part of the product alleged to be defective.").  "Punitive damages may be awarded only if there is clear and convincing evidence that *the defendant* acted with malice, fraud, gross negligence, or oppressiveness which was not the result of mutual mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human feeling, in the sum [that the jury believes] will serve to punish *the defendant* and to deter

it and others from like conduct in the future." *E.g.*, *Greco v. Ford Motor Co.*, 937 F. Supp. 810, 817 (S.D. Ind. 1996) (citations omitted) (emphasis added).[5]

Here, Cook Group Inc.'s financial information and net worth *are irrelevant* to Plaintiffs' punitive damages claim against the Cook Defendants.   Cook Group Inc. is not a party *and would not be a proper party as matter of law* because it did not design, manufacture, or sell the IVC filters at issue.   *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is *relevant* to the party's claim or defense and proportional to the needs of the case….") (emphasis added).   Rather, as Plaintiffs well know, the Cook Defendants designed, manufactured, and sold the products at issue, so the Cook Defendants are subject to products liability claims, and the Cook Defendants' financial condition may be subject to discovery with respect to Plaintiffs' punitive damages claim, consistent with the scope of discovery in Rule 26(b)(1).

Magistrate Baker also properly rejected Plaintiffs' contention that the Cook Defendants and Cook Group Inc. are precluded from objecting to discovery regarding Cook Group Inc.'s financial condition under Paragraph g. of Case Management Order # 3 ("CMO 3") [Dkt. No. 353].   *See* March 15, 2017 Order [Dkt. No. 4108], at 3-4.   Paragraph g. of CMO 3 provides, in relevant part: "The Additional Cook Entities may not object to the production of such [financial worth] information on the basis that any such entity is not a party to the lawsuit; however, any and all other objections are reserved."   Paragraph g. does *not* preclude the Cook Defendants and Cook Group Inc.'s objections to Plaintiffs' latest request because those objections are not based on Cook Group Inc. not being a party to the lawsuit (*i.e.,* they are not based on Cook Group Inc.'s status as a "non-party").   The objections at issue here rest instead on

---

[5]   The products liability law and punitive damages law of other states which also may be applicable in this MDL do not differ materially on these points.

the lack of relevance of the information requested.  Regardless of whether it is a party or not, Plaintiffs cannot and do not dispute that Cook Group Inc. did *not* design, manufacture, or sell the products at issue, and therefore cannot be liable for either compensatory or punitive damages under any theory of products liability.  The objection is not based on Cook Group Inc.'s status as a non-party, and CMO 3 expressly reserves all other objections—including *the relevance objection based on the lack of any connection between Cook Group Inc. and the products at issue*.  *See* CMO 3 ¶¶ k, o.

> **2.      Case Management Order #3 does not somehow make Cook Group Inc.'s financial information and net worth relevant to Plaintiffs' punitive damages claim against the Cook Defendants.**

Plaintiffs err in asserting that CMO 3 somehow makes Cook Group Inc.'s financial information relevant to their claim for punitive damages against the Cook Defendants.  Plaintiffs are overly selective in reading CMO 3 and misinterpret the CMO's provisions, and the Court should affirm Magistrate Baker's rejection of their arguments.

As Magistrate Baker correctly pointed out, CMO 3, which allowed for the dismissal of Cook Group Inc. and other entities, provides:

> The Additional Cook Entities [which include Cook Group Inc.] shall stand in the shoes of the Cook Defendants *solely for the purpose of making a financial payment and/or satisfying any judgment*, including, but not limited to, judgment for punitive damages, against any or all of the Cook Defendants *in the event that* … the Cook Defendants are financially unable to satisfy any final judgment, including, but not limited to, judgment for punitive damages, against them.

*See* March 15, 2017 Order [Dkt. No. 4108], at 3; *see* CMO 3 ¶ i. (emphasis added).  Plaintiffs are mistaken in claiming that Paragraph i. and other provisions of CMO 3 make non-party Cook Group Inc.'s financial information and net worth relevant to their punitive damages claim against the Cook Defendants.  *See, e.g.*, Plaintiffs' Objection and Appeal, at 4, 7-9.  Plaintiffs' claims do not withstand scrutiny.

CMO 3 establishes only that Cook Group Inc. and the other "Additional Cook Entities" "shall stand in the shoes of" the Cook Defendants *solely* for the purposes of satisfying any judgment, and be obligated to pay *only if* a judgment is entered against the Cook Defendants and *only if* the Cook Defendants are financially unable to satisfy that judgment.

Although CMO 3 provides that Cook Group Inc. "shall stand in the shoes of" for purposes of *paying* any final judgment entered against the Cook Defendants if the Cook Defendants cannot, this does *not* mean that Cook Group Inc. "stands in the shoes of" the Cook Defendants for purposes of *assessing* the Cook Defendants' liability for either compensatory or punitive damages. The Cook Defendants' liability—if any—will be determined by *their* actions in designing, manufacturing, and selling the IVC filters, not by the actions of Cook Group Inc., which Plaintiffs admit was not in any way involved with the design, manufacture, or sale of the filters. This conclusion is borne out by the later provisions of CMO 3, which Plaintiffs' submissions ignore. CMO 3 confirms that Cook Group Inc. is not a proper party and by necessary extension that its financial information is not relevant to or discoverable in this litigation:

> Nothing herein shall be construed as an admission that any of the Additional Cook Entities are a proper party to any lawsuit, that the Additional Cook Entities have ever or will ever assume[d] any of the Cook Defendants' liability, that the Additional Cook Entities stand in the shoes of the Cook Defendants' insurers, or that discovery relating to the Additional Cook Entities is appropriate, relevant, or admissible in any lawsuit.

CMO 3 ¶m.

Magistrate Baker's interpretation of CMO 3 is correct. The Cook Defendants have "broken no promise" and have violated no provision of CMO 3. The financial information of non-party Cook Group Inc. (and the other Additional Cook Entities) is not discoverable with respect to Plaintiffs' punitive damages claim against the Cook Defendants.

Finally, the Court should reject Plaintiffs' bald assertion that the jury would somehow be misled if it was not presented with non-party Cook Group Inc.'s financial information. Plaintiffs' assertion fails for the same reasons discussed above. The Cook Defendants' liability for punitive damages, if any, will be determined based on their actions and their financial condition, not based on the actions or financial condition of Cook Group Inc. Indeed, Plaintiffs' own admissions show the lack of any reason to believe that the jury would otherwise be misled. As Magistrate Baker found:

> At the February 21 status conference, Plaintiffs argued in relevant part that they needed the disputed financial information because of concerns that the Cook Defendants might be hiding assets to avoid or minimize a potential punitive damages award. However, at the March 13 status conference, *Plaintiffs acknowledged that they had no evidence to support this concern and, appropriately, abandoned this purported justification.*

*See* March 15, 2017 Order [Dkt. No. 4108], at 2 (emphasis added).

### 3.   Plaintiffs' request for Cook Group Inc.'s financial information is not proportional to the needs of this case, especially given the highly confidential nature of the information sought.

In addressing the "proportionality" prong of Federal Rule of Civil Procedure 26(b)(1), Magistrate Baker concluded that "[t]o require Cook Group Inc., a privately held company, to fling open its books for Plaintiffs' inspection simply goes too far." *See* March 15, 2017 Order [Dkt. No. 4108], at 3. He properly recognized that Cook Group Inc.—as a family-owned, nonpublic company—was entitled to a higher degree of protection with respect to its confidential financial information. *Id.*; *see Flomo v. Bridgestone Americas Holding, Inc.*, 2009 WL 1459736, at *11 (S.D. Ind. May 20, 2009) (noting that where a company is not publicly traded, special concerns are implicated regarding production of sensitive financial information.) Plaintiffs can offer no valid challenge to Magistrate Baker's finding that production of Cook Group Inc.'s confidential financial information is not proportional to the needs of this case. Application of the

factors considered in addressing proportionality under Rule 26(b)(1) confirm that Magistrate Baker was correct, and this Court should affirm his determination.

As a threshold matter, Plaintiffs requests for Cook Group Inc.'s financial information is *per se* not proportional to the needs of this case because, as discussed above, the information is irrelevant to Plaintiffs' product liability and punitive damages claims against the Cook Defendants.  Such discovery is therefore not important to "resolving the issues."  *See* Fed. R. Civ. P. 26(b)(1).

Also, as more fully demonstrated in Section B. below, Plaintiffs already have more than enough information to calculate the Cook Defendants' net worth, which they contend is relevant to their punitive damages claim.  In the language of Rule 26(b)(1), Plaintiffs already have "access to relevant information," and requiring the production of this additional irrelevant information would not be proportional to Plaintiffs' needs in this litigation.  Plaintiffs do not need Cook Group Inc.'s financial information or the Cook Defendants' cash flow statements to calculate the Cook Defendants' net worth.

Moreover, as Magistrate Baker recognized, production of Cook Group Inc.'s financial information is disproportional to the needs of this case.  For instance, the three Cook Defendants represent "*only about 5%* of the number of companies shown on Cook Group Inc.'s balance sheets and income statements."  *See* March 15, 2017 Order [Dkt. No. 4108], at 3; *see also* Ex. G, Declaration of Kelly Fischer, at ¶ 4.  Production of such confidential information thus would show little about the Cook Defendants and would be of little if any benefit to Plaintiffs.

In contrast, the burden on and risks to Cook Group Inc. from the requested production is great, and substantially outweighs any limited benefit to Plaintiffs.  *See* Fed. R. Civ. P. 26(b)(1).  Cook Group Inc. is a private company which keeps such financial information strictly

confidential, and it would suffer significant economic harm if this information were ever disclosed. *See* Ex. G, Declaration of Kelly Fischer, at ¶ 6. Cook Group Inc.'s competitors—a majority of which are publicly owned companies—would use this information to gain a competitive edge over Cook Group Inc., not just in the medical device market, but also in the other markets and industries where Cook entities compete. *See id.* at ¶ 7. The public disclosure of this information would also likely adversely affect Cook Group Inc.'s business relationships with its creditors, debtors, suppliers, and customers. *See id.* This is an extraordinary risk that this family-owned, non-public company should not be required to take. Indeed, it is unlikely that Plaintiffs could ever fully compensate Cook Group Inc. if this information were ever publically disseminated.

Plaintiffs readily acknowledge that "the information sought is highly confidential," but claim that it could be adequately protected by CMO 8. *See* Plaintiffs' Objection and Appeal [Dkt. No. 4230], at 3. But the provisions of CMO 8 are insufficient from Cook Group Inc. and the Cook Defendants' perspective and, as Magistrate Baker recognized, "Defendants are understandably uncomfortable providing this information to Plaintiffs in a multidistrict litigation that now has more than 1,500 pending cases." *See* March 15, 2017 Order [Dkt. No. 4108], at 2.

Magistrate Baker carefully and correctly weighed the parties' competing arguments and interests in determining that discovery of Cook Group Inc.'s confidential financial information was not relevant or proportional to the needs of the case. The Court should affirm Magistrate Baker's Order.

**B.** **Magistrate Baker correctly denied Plaintiffs' request for additional financial information, including information from Cook Group Inc. and the Cook Defendants' cash flow statements, because Plaintiffs already possess enough information to determine the Cook Defendants' net worth.**

Plaintiffs already have more than enough information to determine the Cook Defendants' net worth in connection with Plaintiffs' punitive damages claim. Net worth is calculated simply by subtracting the Cook Defendants' liabilities from their assets as of the time of trial. *See, e.g. Sanders v. Jackson*, 209 F.3d 998 (7th Cir. 2000) (statutory interpretation defining meaning of "net worth" in federal debt collecting statute as "balance sheet or book value net worth" understood to mean "the difference between assets and liabilities" per the definition in the edition of Black's Law Dictionary applicable in 1977 when the statute was adopted). The Cook Defendants' cash flow statements are not needed for such a calculation. All of the information necessary for a net worth calculation is contained in the balance sheets, income statements, and annual reports for the Cook Defendants, which the Cook Defendants *have already produced* to Plaintiffs.[6] Plaintiffs need nothing more.

Plaintiffs argue that they are entitled to additional financial information—including financial information from Cook Group Inc.—because their expert, Mr. Johnson, says the information already provided by the Cook Defendants is incomplete and unreliable, and because Mr. Johnson simply says that he needs more information. *See* Plaintiffs' Objection and Appeal, at 9-12. Plaintiffs point to the March 14, 2017 Expert Report of Robert W. Johnson and James Mills [Dkt. No. 4230-1] ("Johnson Report") as support. But the Johnson Report changes nothing and provides no reason for the Court to modify or set aside Magistrate Baker's Order.

As a threshold matter, the Johnson Report is not even properly before the Court for consideration. The Johnson Report is not verified, and neither Mr. Johnson nor Mr. Mills has

---

[6]   The Cook Defendants have provided such information to Plaintiffs for a ten year period (2006-2015), and will supplement it with 2016 information when available.

submitted an affidavit or declaration affirming the truth and accuracy of the representations and opinions set forth in the report.  *See* 28 U.S.C. § 1746.

Beyond this evidentiary concern, Plaintiffs' statement that Magistrate Baker did not have the Johnson Report "at his disposal" when he entered his March 15, 2017 Order is inconsequential.  *See* Plaintiffs' Objection and Appeal, at 5 n. 1.  The Court should reject Plaintiffs' statement out of hand.

First, Plaintiffs have asserted from the beginning that their expert needed this information, and Magistrate Baker took them at their word.  *See* March 15, 2017 Order on Discovery of Cook Group Inc.'s Financial Information [Dkt. No. 4108], at 1; *see* Ex. A, Transcript of Pretrial Conference (02/21/0017), at 27:23-28:1, 33:10-11.  Plaintiffs' attachment of an expert report now adds nothing new.

Second, the scope of permissible discovery is a matter within the sound discretion of the court.  *See Gile v. United Airlines, Inc.*, 95 F.3d 492, 495 (7th Cir. 1996) (citing *Searles v. Glasser*, 64 F.3d 1061, 1068 (7th Cir. 1995) ("A district court is in the best position to decide the proper scope of discovery and to settle any discovery disputes.  For that reason, we review a district court's determinations for an abuse of discretion."); *see also Odongo v. City of Indianapolis,* 2015 WL 1188769, at *2 (S.D. Ind. Mar. 13, 2015) (citing *Packman v. Chicago Tribune Co.*, 267 F.3d 628, 646 (7th Cir. 2001) ("Ultimately, this Court has 'broad discretion in discovery matters, [including with regard to a] motion to compel.").  As Magistrate Baker correctly determined, "The fact that Plaintiffs seek even more financial information, or that Plaintiffs' expert witness claims he needs more information to assess net worth, is not controlling here." *See* March 15, 2017 Order [Dkt. No. 4108], at 3.

Third, the nine additional categories of financial information requested in the March 14, 2017 Johnson Report (*see* Johnson Report [Dkt. No. 4230-1], at Page 4 of 5) *are identical* to the nine additional categories of financial information previously requested by Plaintiffs' Counsel on February 9, 2017.  *See* Ex. C, February 9, 2017 e-mail from Bill Curtis to Ben Martin, et al. After hearing argument at the February 21, 2017 Pretrial Conference, Magistrate Baker rejected Plaintiffs' requests for these same nine additional categories of financial information. *See* Ex. A, Transcript of Pretrial Conference (02/21/0017), at 27:23-42:1, 49:12-51:24.  Again, the existence of the Johnson Report makes no difference.

Finally, to the extent the financial information *already provided* to Plaintiffs might be incomplete because pages or portions of documents are inadvertently missing, the Cook Defendants will timely provide such missing information after Plaintiffs identify what information they believe is missing and the parties meet and confer to resolve the issue.  The mere claim that pages might be missing or "are blank" within the financial information *already produced* does *not* justify expanding the overall scope of discoverable financial information.  It simply means that any missing pages should be provided.

In sum, Plaintiffs offer no sound reason for the Court to modify or set aside Magistrate Baker's Order. Plaintiffs already have enough information to calculate the Cook Defendants' new worth, and their renewal of previously denied discovery requests through the unverified Johnson Report changes nothing.

**C.      Magistrate Baker's Order denying discovery of Cook Group Inc.'s financial information and the Cook Defendants' cash flow statements is otherwise in accordance with the law because the Cook Defendants' net worth is of questionable relevance to a computation of punitive damages, especially in states that cap awards of punitive damages.**

The Seventh Circuit and other courts in this District have held that a corporate defendant's net worth is generally not relevant to the assessment of punitive damages.  *See Zazu*

*Designs v. L'Oreal, S.A.*, 979 F. 2d 499, 508-509 (7th Cir. 1992) (finding a corporation's net worth irrelevant to the assessment of punitive damages against it); *Yund v. Covington Foods, Inc.*, 193 F.R.D. 582, 588-589 (S.D. Ind. 2000) (same); *Pivot Point Int'l, Inc. v. Charlene Prods., Inc.*, 932 F. Supp. 220, 223 (N.D. Ill. 1996) (excluding evidence of net worth as irrelevant, unfairly prejudicial, and an invasion of privacy).[7]

In addition, common sense dictates that a defendant's net worth is even less relevant to a punitive damages award in states that cap punitive damages. Indeed, several district courts have adopted this logic in similar circumstances. *See Nyanjom v. Hawker Beechcraft, Inc.*, 2014 WL 667885, at *3 (D. Kan. Feb. 20, 2014) (finding net worth of a defendant irrelevant "given the statutory cap on punitive damages contained in the ADA"); *E.E.O.C. v. Dillon Companies, Inc.*, 2010 WL 3239262, at *5 (D. Colo. Aug. 13, 2010) (finding net worth irrelevant "in light of the statutory cap limiting the sum of compensatory and punitive damages").

Given that the Seventh Circuit has held that a corporate defendant's net worth is generally not relevant to an assessment of punitive damages, and given that the state law most likely to govern this issue in the first bellwether case caps punitive damages,[8] the Cook Defendants' net worth should therefore be deemed irrelevant to this litigation. Again, Plaintiffs' invasive and unduly burdensome discovery requests for financial information from Cook Group Inc. and for the cash flow statements of the Cook Defendants are irrelevant and not proportional to the needs of this case, and the Court should affirm the Magistrate Baker's Order denying the Plaintiffs' requests.

---

[7] The Cook Defendants recognize that other courts have sometimes found net worth relevant to the issue of punitive damages. This circuit and this district, however, take a different view.

[8] *See* Florida – punitive damages capped at $2 million or 4 times compensatory damages, see Fla. Stat. § 768.73; *see also* Indiana – punitive damages capped at 3 times compensatory damages or $50,000, Ind. Code § 34-51-3-4.

## V.  CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court reject Plaintiffs' Rule 72(a) Objections and Appeal of Magistrate Baker's March 15, 2017 Order. Magistrate Baker's Order is neither clearly erroneous nor contrary to law.  Rather, Magistrate Baker's Order is well-reasoned, correctly decided, consistent with the Federal Rules of Civil Procedure and prior Case Management Orders, and in accordance with the law.  The Court should therefore affirm Magistrate Baker's Order.


Dated: April 13, 2017                            Respectfully submitted,


/s/ Andrea Roberts Pierson
Andrea Roberts Pierson (# 18435-49)
J. Joseph Tanner (# 11856-49)
Nicholas B. Alford (# 31867-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-Mail:  joe.tanner@faegrebd.com
E-Mail:  nicholas.alford@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 13, 2017, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.  Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.


/s/ Andrea Roberts Pierson

110953822