# EXHIBIT F

| | |
|---|---|
| **Subject:** | FW: In re Cook (Plaintifs' request for financial information) - Email from Joe Williams to Court dated March 10, 2017 |
| **Attachments:** | Schultz ltr. on Fla. punitive damages law.pdf |

**From:** Joseph N. Williams [mailto:jwilliams@rwp-law.com]
**Sent:** Friday, March 10, 2017 11:57 AM
**To:** Amy_Holtz@insd.uscourts.gov
**Cc:** Pierson, Andrea Roberts; Tanner, John Joseph; Bennett, James Stephen; Ben Martin; Michael Heaviside; David Matthews
**Subject:** In re Cook (Plaintifs' request for financial information)

Dear Amy,

During our call yesterday we did not address Plaintiffs' narrowed request for financial information. We would still like to have that issue heard as soon as is possible given our expert deadlines. I have included a response to Ms. Pierson's letter-brief on this issue for the Court's review. Please let us know whether Judge Baker has time early next week to hear this issue (again, a telephonic conference would be fine).

Sincerely,

joe

---

Dear Judge Baker,

At your suggestion during our recent pre-trial conference, we significantly narrowed our request for financial information. Instead of the laundry list of information that we initially provided, we limited our renewed request to: (1) the same financial documents for Cook Group, Inc. ("Big Cook") Defendants have provided regarding its other entities (annual reports, balance sheets, and income statements) for the relevant time; and, (2) cash flow statements for the Cook entities. After further reviewing the case law, we are willing to further limit our request to only the previous three years (instead of the previous ten years that Cook provided for the non-Big Cook entities).

In her letter, Ms. Pierson claims that "punitive damages are capped under any applicable state law in *Hill* and *Gage* (IN, IL or FL), and Plaintiffs have failed to show any relevancy, need or proportionality justifying the production of irrelevant, highly confidential information." [Pierson ltr. at 2.] Respectfully, this claim is directly refuted by Indiana, Florida, and Illinois law.

> **Indiana:** Our Court of Appeals could not have been clearer: "Evidence of the defendant's worth is relevant to the issue of punitive damages." Warren v. Wheeler, 566 N.E.2d 1096, 1100 (Ind. Ct. App. 1991). Furthermore, the "economic wealth of a defendant tends to show the financial condition of the defendant, which, in turn, tends to show the point at which an award of punitive damages becomes an amount which will deter and punish the defendant." Ramada Hotel Operating Co. v. Shaffer, 576 N.E.2d 1264, 1268 (Ind. Ct. App. 1991).
>
> **Florida**: Florida law allows the jury to consider a defendant's "financial resources" because "punitive damages should be painful enough to provide some retribution and deterrence, but should not be allowed to destroy the defendant." Wransky v. Dalfo, 801 So.2d 239, 242 (Fla. Ct. App. 2001). Relating to a plaintiff's ability to obtain discovery on a defendant's net worth, the Florida Supreme Court observed: "It is the height of naivete to suggest that a sworn statement of one's net worth must be accepted as the final word on the subject. The search for forgotten or hidden assets is of the essence

of the discovery process." Matt Schultz (member of the PSC) is a Florida lawyer who has tried six punitive damage cases in Florida over the last seven years. I have attached a letter from Mr. Schultz providing a primer on Florida punitive damages law as it relates to the discovery of a defendant's net worth.

**Illinois**: The "law in Illinois clearly allows evidence of the defendant's net worth and pecuniary position in cases in which punitive damages are proper." E.g., Fopay v. Noveroske, 334 N.E.2d 79, 93 (Ill. Ct. App. 1975).

Our expert witness has explained to us that the information we now seek is essential to his calculation of Defendants' net worth. Again, Cook is not a public company and, as such, we do not have the benefit of publicly available 10-Ks, 10-Qs, proxy statements, and all the other data required to be filed by publicly-held corporations. Big Cook's net worth is of particular importance here, given that CMO #3 (in which allowed for the dismissal of Big Cook) states: "The Additional Cook Entities shall stand in the shoes of the Cook Defendants solely for the purpose of making financial payment and/or satisfying any judgment, **including, but not limited to, judgment for punitive damages … .**" [Doc. No. 353 at 3.]

Ms. Pierson's additional suggestion that punitive damage caps render net worth irrelevant is misplaced (notwithstanding the fact that both Indiana and Florida, which have caps, hold that such evidence **is** relevant, see supra). If the jury determines that punitive damages are appropriate, the jury is more likely to award damages up to the cap against a company worth $1 billion, for example, than against a company worth $5 million. A request for damages up to the cap would appear to the jury to be (and would in fact be) more reasonable against the company with greater resources. Here, again, knowledge of financial resources would be important for both the jury in reaching a verdict and the appellate court in assessing the verdict reached.

Finally, when this Court denied Cook's motion to bifurcate both discovery and trial [Doc. No. 156], it ruled that Defendants' financial information is relevant for purposes of discovery and Plaintiffs' forthcoming responses to a motion for summary judgment. [Id. at 3.] The Court also determined that such financial information is inextricably intertwined with liability: "Defendants' continued marketing and profiting from these devices create a tangible overlap between its liability for punitive damages and its financial information." [Id. at 4.] The Court concluded: "It is apparent to the Court that Plaintiffs need Defendants' financial information to argue that Defendants are liable for punitive damages." [Id. at 5.]

Given the above, we respectfully request the Court to order Defendants to respond to our narrowed requests for financial information as set forth above. As always, thank you for your time. If you have any questions, then please do not hesitate to let me know.

Sincerely,

joe

Joseph N. Williams



Riley Williams & Piatt, LLC
Hammond Block Building
301 Massachusetts Avenue
Indianapolis, Indiana  46204
**(T)** 317.633.5270
**(F)** 317.426.3348
www.rwp-law.com

The information contained in this electronic message is confidential information intended for the use of the named recipient and may be the subject of attorney-client privilege. If the reader of this electronic message is not the named recipient, you are hereby notified that

any dissemination, distribution, copying or other use of this communication is strictly prohibited and no privilege is waived. If you have received this communication in error, please immediately notify us by telephone at 317.633.5270 or by replying to this electronic message. Thank you.