UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br><br>MDL No. 2570 |
| This Document Relates to All Actions | |

**PLAINTIFFS' REPLY IN SUPPORT OF
OBJECTION TO MAGISTRATE'S ORDER SUSTAINING
OBJECTION TO PRODUCTION OF FINANCIAL DOCUMENTS**

Plaintiffs provide this reply in support of their Objections and Appeal from Magistrate Judge Baker's order sustaining Defendants' objections to financial discovery of Cook Group, Inc. ("CGI"):

1. The discovery at issue relates to Cook Group, Inc. ("CGI"). CGI has stipulated it is responsible for satisfying any damage awards in these cases. Plaintiffs have received <u>no discovery</u> of CGI's financial condition, only documents relating to three of its subsidiaries. That production is of such poor quality that Plaintiffs' expert economist Mr. Robert Johnson could not formulate opinions regarding the subsidiaries. His declaration (attached to the original appeal), notes that the documents produced for Cook, Inc., and Cook Medical, Inc., are unaudited and "are not complete financial statements." The documents provided for William Cook Europe, "are not current" and "numerous pages … are blank, providing incomplete information."[1]

---

[1] For example, the 2013 annual report for William Cook Europe has blank pages at pages 2 ("Company Details" in the table of contents); page 6 ("Key Figures and Ratios"); pages 9-10 and 14 ("Accounting Policies"); page 17 ("Balance Sheet") and pages 22, 23, and 25

2. **Cook suggests that discovery is invasive because Cook is "a family-owned, non-public company…."** (Def. Resp. at 1, 4, 7.) This actually favors disclosure: unlike a publicly-held company, CGI is not subject to the SEC's public filing requirements, which generate 10-Ks, 8-Ks, proxy statements, and other detailed financial statements that are freely available to Plaintiffs and others. CGI's financial condition can only be learned through discovery.

3. **Cook repeatedly claims (incorrectly) "Magistrate Baker agreed that the requested financial information was irrelevant."** (Def. Resp. at 1, 2, 3, 8, 9, 17.) Magistrate Judge Baker did not say at the February 21 hearing or write in his March 15 order that the information sought is "irrelevant." He did find the requests overbroad and thus disproportional to the needs of the case, especially a request regarding CEO compensation (which would be in the publicly filed proxy statement for a publicly held corporation). (Def. Resp., Ex. A at 50:21-22 & 51:12-15.) He added, "I am not saying there is not some additional information Plaintiffs might be entitled to as it relates to Defendants' net worth and everything, but it just, I have got to deal with the dispute in front of me, and the request is just way too broad." (*Id.* at 51:19-23.) Notably, Judge Baker considered the request for CGI financials "cumulative [and] duplicative," (*Id.* at 51:10); but the requests for CGI's financials do not overlap in any way with the information received to date for its subsidiaries. Plaintiffs have received no discovery relating to CGI's finances. Financial information for

---

("Notes"). Of the 25-page report, 9 pages are missing. (CookMDL2570_1115133.) The 2012 report is missing 10 of 26 pages. (CookMDL2570_1115107.) The 2011 report is missing 15 of 26 pages. (CookMDL2570_1115081.)

2

the entity obligated to pay a punitive damage verdict clearly is relevant to the upcoming trials that will include punitive damage claims.

4. **Cook argues "Plaintiffs already have enough information from the Cook Defendants themselves to determine the Cook Defendants' net worth."** (Def. Resp. at 3, 15, 17-19.) This is not so, as Mr. Johnson explains in his declaration. But, it is beside the point of Plaintiffs' appeal. It would be misleading to put before the jury the net worth of the "Cook Defendants," when CGI, as the entity responsible for satisfying the judgment, is the entity effectively being punished and deterred by the verdict. Cook argues correctly that the jury will not assess <u>liability</u> for punitive damages based on CGI's conduct. (Def. Resp. at 10-14.) However, to the extent financial condition is an issue, it is CGI's financial condition that is relevant because it is the entity responsible for the judgment.

Additionally, as Mr. Johnson points out, having CGI's consolidated financials "will help to avoid double counting of results from the various subsidiaries." They also would help explain anomalies in the financials that have been produced, such as the fact that William Cook Europe paid no dividends from 2011-2013, but it paid dividends (presumably to CGI as its parent) in 2014—a year in which it took an 8.9% loss and, not coincidentally, the year the JPML established this MDL. All other things being equal, William Cook Europe's payment of dividends would reduce its net worth while increasing the net worth of CGI, who is responsible for any punitive damage award. A jury charged with calculating an appropriate award to punish and deter the Defendants' misconduct should calculate in light of the true worth of the company

3

footing the bill, CGI, not the smaller worth of its subsidiaries' based on how they chose to pay out dividends to CGI during the course of litigation.[2]

5. **Cook argues that public disclosure of its financial condition would be harmful.** (Def. Resp. at 14-16.) The protective order governs this production. There has been no suggestion of any violation of the protective order, nor will there be. The very purpose of the protective order is to guard against the disclosure of highly confidential information just like the financial information already provided for the Cook subsidiaries. Cook's argument is premised on the unwarranted assumption that Plaintiffs would violate this Court's order. That is not a proper basis for withholding otherwise discoverable information.

6. **Cook claims that its net worth "is of questionable relevance to a computation of punitive damages."** (Def. Resp. at 19-20.) Cook cites *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499 (7th Cir. 1992). But *Zazu Designs* did not "find[] a corporation's net worth irrelevant to the assessment of punitive damages," as Cook claims. (Def. Resp. at 20.) The court's *dictum* questioned whether great worth justifies larger awards, and it found that it did not in the case before it; but it expressly rec-

---

[2] The presumption that CGI has greater value than its subsidiaries is based upon the traditional structure of such corporations and the net worth of CGI's CEO, Mr. Carl Cook. *See, e.g.*, Bloomberg, "Cook Couple Passed $6 Billion Fortune to Son to Avoid Tax," June 8, 2014, noting transfer of stock to the current CGI CEO, Carl Cook: "'It never ends,' Carl Cook said in his father's biography, referring to the transfer of the company's shares. 'There's always some other maneuver you have to do, <u>or a ruling comes in and you have to adjust something</u>. But the bulk of what needs to be done is done.'" (emphasis added). According to Forbes, Mr. Cook's current "real time" net worth is $7.5 billion. (https://www.forbes.com/profile/carl-cook/) (4/16/17)

ognized, that "[c]ourts take account of a defendant's wealth when '[a]n amount sufficient to punish or to deter one individual may be trivial to another.'" *Id.* at 508 (quoting *Black v. Iovino,* 580 N.E.2d 139 (Ill. Ct. App. 1991). In a subsequent Seventh Circuit opinion, *Kemezy v. Peters*, 79 F.3d 33 (7th Cir. 1996), Judge Posner stated there was merely a "suggestion in *Zazu Designs* that [a corporate] defendant's net worth is irrelevant," *id.* at 36, while noting "plaintiffs who are seeking punitive damages often present evidence of the defendants wealth." *Id.*

Not cited by Cook are decisions by the Supreme Court of the United States deeming financial condition a relevant consideration in assessing punitive damages: "TXO also contends that the admission of evidence of its alleged wrongdoing in other parts of the country, *as well as the evidence of its impressive net worth*, led the jury to base its award on impermissible passion and prejudice. *Under well-settled law, however, factors such as these are typically considered in assessing punitive damages.* Indeed, the Alabama factors we approved in *Haslip* included both." *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 462 n.28 (1993) (citing *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 21 (1991) (approving factors to consider in assessing punitive damages including "the profitability to the defendant of the wrongful conduct and the desirability of removing that profit and of having the defendant also sustain a loss [and] the 'financial position' of the defendant....")) (emphasis added).

Whether damages might be capped is irrelevant to whether "financial position" is admissible at trial. Both Florida's and Indiana's statutory caps include the greater

of a fixed figure or a multiple of compensatory damages.[3] The significance of the cap is not known, nor is its relation to CGI's financial position, which has not been disclosed. Even if the disparity between financial position and the maximum award is great, a jury in deciding whether to punish and deter with an award $1 million vs. $2 million or $5 million certainly may deem a larger award more appropriate to accomplish those goals against an entity worth billions of dollars (or vice versa). Cook claims "several district courts" have found net worth irrelevant where caps exist. (Def. Resp. at 20.) It cites two unpublished decisions from Kansas and Colorado. Both involved a $300,000 cap under the ADA rather than a multimillion dollar cap limited only by its ratio to compensatory damages. *Naynjom v. Hawker Beechcraft, Inc.*, 2014 WL 667885 at *2 (D Kan. Feb. 20, 2014); *EEOC v. Dillon Cos., Inc.*, 2010 WL 3239262 at *4 (D. Colo. 2010). More instructive is *Honda Motor Co., Ltd. v. Oberg*, 512 U.S. 415 (1994), which reiterated the *Haslip* factors (which include "financial position"), *id.* at 419-20, in a case involving a $5 million cap on punitive damages in the case. *See id.* at 439 (noting the cap) (Ginsburg, J., dissenting).

8.  Based on the above, Plaintiffs respectfully request entry of an Order (a) that reverses the decision sustaining Defendants' objections to financial discovery of CGI and (b) that requires the production of all responsive documents within 20 days of entry.

---

[3] Fla. Stat. § 768.73; Ind. Code § 34-51-3-4.

Dated: April 17, 2017 Respectfully submitted,

*/s/ Joseph N. Williams*
Joseph N. Williams, Atty. No. 25874-49
RILEY WILLIAMS & PIATT, LLC
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317) 633-5270
Facsimile: (317) 426-3348
Email: jwilliams@rwp-law.com
*Liaison Counsel to Plaintiffs Steering Committee and on behalf of Plaintiffs Steering Committee*

Michael W. Heaviside, Esq.
HEAVISIDE REED ZAIC, A LAW CORPORATION
910 17th Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 223-1993
mheaviside@hrzlaw.com

Ben C. Martin, Esq.
THE LAW OFFICES OF BEN C. MARTIN
3710 Rawlins Street, Suite 1230
Dallas, TX 75219
Telephone: (214) 761-6614
Facsimile: (214) 744-7590
bmartin@bencmartin.com

David P. Matthews, Esq.
MATTHEWS AND ASSOCIATES
2509 Sackett St.
Houston, TX 77098
Telephone: (713) 522-5250
Facsimile: (713) 535-7184
dmatthews@thematthewslawfirm.com

*Plaintiffs' Co-Lead Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

Notice will be served on the parties listed below by first class U.S. Mail, postage prepaid:

ANTHONY JAMES URBAN
LAW OFFICES OF ANTHONY URBAN, P.C.
474 N. CENTRE STREET, 3RD FLOOR
POTTSVILLE, PA 17901

ARTHUR F HOGE , III
MEE MEE HOGE & EPPERSON PLLP
1900 NW EXPY STE 1400
OKLAHOMA CITY, OK 73118

BRIAN J. URBAN
LAW OFFICES OF ANTHONY URBAN, P.C.
474 N. CENTRE STREET, 3RD FLOOR
POTTSVILLE, PA 17901

CARRIE R. CAPOUELLEZ
LOPEZ MCHUGH LLP
214 FLYNN AVENUE
MOORESTOWN, NJ 08057

CALEB HOFF DIDRIKSEN , III
DIDRIKSEN LAW FIRM, PLC
3114 CANAL STREET
NEW ORLEANS, LA 70119

CARL A WOODS , III
DIDRIKSEN LAW FIRM
3114 CANAL STREET
NEW ORLEANS, LA 70119

CLIFF W. MARCEK
CLIFF W. MARCEK, P.C.
700 S. THIRD ST.
LAS VEGAS, NV 89101

CORY HOLLEY DRIGGERS
MORRIS CARY ANDREWS TALMADGE & DRIGGERS
P.O. BOX 1649
DOTHAN, AL 36302

CRAIG D. HENDERSON
THE SNAPKA LAW FIRM
P.O. BOX 23017
CORPUS CHRISTI, TX 78403

CURTIS HOKE
THE MILLER FIRM LLC
THE SHERMAN BUILDING
108 RAILROAD AVENUE
ORANGE, VA 22960

DANIEL SNYDER
ATTORNEY AT LAW
1000 S W BROADWAY SUITE 1500
PORTLAND, OR 97205

DAVID CARL ANDERSON
ANDERSON LAW
711 VAN NESS AVENUE, SUITE 220
SAN FRANCISCO, CA 94102

DAVID J BRITTON
LAW OFFICE OF DAVID J BRITTON
2209 N 30TH ST, STE 4
TACOMA, WA 98403

DAVID L. GREBEL
NIEMEYER AND GREBEL
10 S. BROADWAY, SUITE 1125
ST. LOUIS, MO 63102

ELIZABETH ALICE MOTE
KITRICK, LEWIS & HARRIS, CO., L.P.A.
455 HUTCHINSON AVENUE, SUITE 100
COLUMBUS, OH 43235-8630

EVAN M ZUCKER
BARON AND BUDD PC
15910 VENTURA BOULEVARD SUITE 1600
ENCINO, CA 91436

GEORGE JERRE DUZANE
1675 LIBERTY LANE
GALLATIN, TN 37066

HEATHER H. HARRISON
FAEGRE BAKER DANIELS LLP
311 S. WACKER DRIVE, SUITE 4400
CHICAGO, IL 60606

JOHN CORNEW
409 E MAPLE AVE
LINDENWOLD, NJ 08021

JACK EDWARD URQUHART
THE SNAPKA LAW FIRM
606 N. CARANCAHUA, SUITE 1511
CORPUS CHRISTI, TX 78401

JACOB A BOYD
LAW OFFICES OF BEN C MARTIN
3219 MCKINNEY AVENUE, SUITE 100
DALLAS, TX 75204

JAMES DAVID MARTIN
COPELAND FRANCO SCREWS & GILL PA
PO BOX 347
MONTGOMERY, AL 36101-0347

JAMES R. OLSON
OLSON, CANNON, GORMLEY, ANGULO & STOBERSKI
9950 WEST CHEYENNE AVENUE
LAS VEGAS, NV 89129-

JAMES W. CHILDRESS
CHILDRESS AND AHLHEIM, LLC
1010 MARKET ST., SUITE 500
ST. LOUIS, MO 63101

JANET WARD BLACK
WARD BLACK LAW
208 WEST WENDOVER AVENUE
GREENSBORO, NC 27401

JAY HARRIS
HARRIS, RENY & TORZEWSKI
3RD FLOOR
TWO MARITIME PLAZA
TOLEDO, OH 43604

JENNIFER P HENRY
THOMPSON & KNIGHT LLP
801 CHERRY STREET, UNIT #1
FORT WORTH, TX 76107

JOSEPH A. NAPILTONIA
LAW OFFICE OF JOE NAPILTONIA
213 3RD AVENUE NORTH
FRANKLIN, TN 37064

JOSEPH G. SAUDER
CHIMICLES & TIKELLIS LLP
361 WEST LANCASTER AVENUE
HAVERFORD, PA 19041

JUSTIN KYLE BRACKETT
TIM MOORE, ATTORNEY AT LAW, P.A.
305 EAST KING ST.
KINGS MOUNTAIN, NC 28086

KAHLA R HURLEY
MEE MEE HOGE & EPPERSON PLLP
1900 NW EXPY STE 1400
OKLAHOMA CITY, OK 73118

KIMBERLY LAMBERT ADAMS
LEVIN PAPANTONIO THOMAS ETC PA - PENSACOLA FL
316 S BAYLEN ST STE 400
PENSACOLA, FL 32502

MARIAN S. ROSEN
ROSEN & SPEARS
5075 WESTHEIMER, SUITE 760
HOUSTON, TX 77056

MARK MATHEW KITRICK
KITRICK, LEWIS & HARRIS CO LPA - 2
445 HUTCHINSON AVE., SUITE 100
COLUMBUS, OH 43235

MARK P. BRYANT
BRYANT LAW CENTER, PSC
601 WASHINGTON STREET
P.O. BOX 1876
PADUCAH, KY 42001

MARK R. NIEMEYER
NIEMEYER AND GREBEL
10 S. BROADWAY, SUITE 1125
ST. LOUIS, MO 63102

MAX E. CORRICK
OLSON, CANNON, GORMLEY & DESRUISSEAUX
9950 WEST CHEYENNE AVENUE
LAS VEGAS, NV 89129

MICHAEL G. GLASS
RAPPAPORT GLASS GREENE & LEVINE LLP
1355 MOTOR PARKWAY
HAUPPAUGE, NY 11749

NEAL LEWIS MOSKOW
URY & MOSKOW
883 BLACK ROCK TURNPIKE
FAIRFIELD, CT 06825

PAUL TELHIARD BOUDREAUX
RICHARDSON RICHARDSON BOUDREAUX
7447 S LEWIS AVE
TULSA, OK 74136

PETER ANDREW MILLER
MILLER LEGAL LLC
175 S PANTOPS DRIVE
THIRD FLOOR
CHARLOTTESVILLE, VA 22911

PETER C WETHERALL
WETHERALL GROUP, LTD.
9345 W. SUNSET ROAD SUITE 100
LAS VEGAS, NV 89148

PHILIP SHOLTZ
THE DRISCOLL FIRM, P.C.
211 N. BROADWAY 40TH FLOOR
ST. LOUIS, MO 63102

ROBERT DAVID SEGALL
COPELAND FRANCO SCREWS & GILL
PO BOX 347
MONTGOMERY, AL 36107-0347

ROLAND K TELLIS
BARON AND BUDD PC
15910 VENTURA BOULEVARD SUITE 1600
ENCINO, CA 91436

SCOTT KEHLENBRINK
CHILDRESS AND AHLHEIM, LLC
1010 MARKET ST. SUITE 500
ST. LOUIS, MO 63101

W. BRYAN SMITH
MORGAN & MORGAN, LLC
2600 ONE COMMERCE SQUARE
MEMPHIS, TN 38103

WILNAR JEANNE JULMISTE
ANDERSON GLENN LLP - BOCA RATON FL
2201 NW CORPORATE BLVD STE 100
BOCA RATON, FL 33431

*/s/ Joseph N. Williams*
Joseph N. Williams