

March 30, 2017
*Via email: amy_holtz@insd.uscourts.gov*


Magistrate Judge Tim A. Baker
c/oAmy Holtz, Courtroom Deputy
U.S.D.C. for the Southern District of Indiana
Indianapolis Division
46 East Ohio Street
Indianapolis, IN 46204

Re:   *In Re: Cook Medical, Inc.* (MDL 2510)

Dear Magistrate Judge Baker,

Per the Court's February 22nd order (Doc. 3777), we have now taken two Rule 30(b)(6) depositions regarding Cook's failure to properly preserve evidence related to this MDL. We have learned that there are years of e-mail evidence that is now gone and unrecoverable. Based upon the deposition testimony and documentary evidence, we strongly suspect that the document destruction was conducted in bad faith. But, we still need additional information. The reason: Cook's 30(b)(6) deponents were repeatedly instructed not to answer questions regarding everything from when Cook first anticipated litigation to how it determined what custodians to place on hold to the contents of any litigation hold.

"Although in general hold letters are privileged, the prevailing view, which the Court adopts, is that when spoliation occurs, the letter is discoverable." *Major Tours v. Colorel*, 2009 U.S. Dist. LEXIS 68128, ** 7-8 (D.N.J. Aug. 4, 2009). *See also Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 425 nn.15-16 (S.D.N.Y. 2004) (disclosing the details of counsel's litigation hold communication after discovery that at least one e-mail was never produced).

So that Plaintiffs may move the Court for the proper sanction, Plaintiffs need to take Cook's deposition once again – this time, however, with Cook being forced to answer questions about when it anticipated litigation, how it determined which custodians to place on hold, and what those custodians were told.



To assist the Court in making this decision, I have provided a summary of what we know so far.

1. **If a custodian is not specifically placed on litigation hold, that custodian's e-mail is deleted every day.**

During the first of Cook's two Rule 30(b)(6) depositions regarding ESI preservation we learned that e-mail in a custodian's Inbox is only retained for 60 days. [*E.g.,* Blanchard Depo. 96:12-20.][1] Once that period expires, the e-mail is moved to the "dumpster," where it resides for an additional 30 days. [Blanchard Depo. 131:2-132:13.] After 30 days in the dumpster, the e-mail is deleted from the system and is only available through system back-up tapes. [*Id.*] The tapes, however, are overwritten every 21 days. [*Id.*] In other words, if a litigation hold is not initiated, e-mail in a custodian's Inbox will be unrecoverable after approximately 111 days.[2] Indeed, without a litigation hold a custodian's e-mail is being constantly removed from Cook's system:

> Q. At least there is a potential every day for Cook employees who are not on hold that e-mail is automatically deleted from one of the four folders contained in the [Electronic Information Policy]?
>
> A. That is correct.

[Blanchard Depo. 131:10-14.]

2. **Cook's first litigation hold was "case specific" and did not include any Regional or District Managers.**

During the second of Cook's two Rule 30(b)(6) depositions regarding ESI preservation, we were provided for the first time a list of custodians and the dates each custodian was placed on hold. I have attached a copy of this list as Exhibit A.

---

[1] I have not attached the entire transcripts for the Rule 30(b)(6) depositions. If the Court would like to read the depositions, we will send the transcripts over.

[2] If a custodian manually deletes an e-mail, it only exists in the Deleted Items folder for 30 days before it is moved to the dumpster. Again, after residing in the dumpster for 30 days, the e-mail is permanently deleted from the system. At that point, the e-mail is only recoverable for approximately 21 days before the back-up tapes are overwritten.



The first litigation hold was not initiated until April 15, 2013, and did not include any Regional or District Managers (Cook employees involved in direct marketing to physicians). In fact, most of Cook's sales force was not placed on hold until **February 8, 2017** – the day after Cook's counsel informed the Court that, "*as of this writing*, currently all District Managers, Regional Managers, and Clinical Specialists in the Peripheral Intervention Strategic Business Unit, i.e., all people involved in the marketing and support of filters are on litigation hold (this is 191 employees)." [E-mail from D. King, dated February 7, 2017 (emphasis supplied).] Cook did not place most of its sales force on litigation hold until more than two years after the MDL was formed and not until Plaintiffs began pressing the document destruction issue. For the sales custodians not put on hold until this year, their e-mail continued to be deleted until the February 8, 2017, litigation hold was implemented.

As we have already demonstrated to the Court, the primary sales representative involved in the *Hill* bellwether case was not placed on litigation hold until May 6, 2016 – nearly three years after Cook first had the information necessary to know that the Celect filter had perforated Mrs. Hill's duodenum and more than a year and a half after her lawsuit was filed. The *Hill* sales representative visited the implanting physician at least 149 times. The representative then testified:

> If I had an interaction with a physician, I would usually send an e-mail just letting my boss know I met with such and such and, you know, detail what happened during the meeting.

[Whitelock Depo. 40:2-9.] We, however, only have one e-mail that would arguably even fit the representative's "usual" practice. The reason: she was not put on hold until May 6, 2016.

If this wasn't problematic enough, Cook previously represented to this Court that it was on notice of filter litigation on **February 23, 2010**. In its effort to avoid having to include certain communications on its privilege log, Cook told the Court precisely when it anticipated litigation:

> First, the Court considered whether communications between Cook and its in-house counsel that relate to this litigation and post-date February 23, 2010 (when Cook was first on notice of possible litigation involving the at-issue IVC filters) needed to be listed on a privilege log.



[Order on April 30, 2015, Status Conference, p. 1.] It is now apparent that most of Cook's sales force had their e-mail permanently deleted over the past 7 years despite—by Cook's admission—having a duty to preserve documents in early 2010.

3. **Cook's Rule 30(b)(6) witness (Jack Hunt, Assistant General Counsel) was not prepared to testify on a number of issues relevant to Cook's duty to preserve evidence.**

This Court ordered Cook to "provide deposition testimony regarding Defendants' litigation hold and document retention practices for this litigation, including when any such hold was put in place and what steps have been taken to comply with this hold." [Order, Doc. No. 3777 ¶ 1.] During a follow-up pretrial conference, the Court was clear that Plaintiffs were to have the latitude to ask questions regarding these topics. Cook's Rule 30(b)(6) witness, however, was not prepared to answer a number of questions relevant to when Cook should have initiated a litigation hold.

For example, the witness was provided a copy of the following e-mail, dated January 25, 2012:

> To: Harden, Rita[Rita.Harden@CookMedical.com]; Gildersleeve, Neva[Neva.Gildersleeve@CookGroup.com]
> From: Nielsen, Mette Neiendam
> Sent: Wed 1/25/2012 5:03:48 AM
> Importance: Normal
> Subject: WCE Product Liability Claims
> MAIL_RECEIVED: Wed 1/25/2012 5:03:52 AM
> WCE Review Product Liability Claims.xlsx
>
> Rita and/or Neva,
>
> Management team at WCE would like to have a list of all ongoing product liability claims involving WCE. I have attached a list, however I am not sure of the status (open/closed) of five cases (highlighted). Please provide me with this information by Monday next week at the latest.

[Hunt Depo. 125:23-126:5.][3] Attached to this e-mail was a list of nine "product liability claims" involving the filters involved in this MDL (two of which were settled for cash; two of which are pending in the MDL; one of which involved a

---

[3] "WCE" stands for "William Cook Europe."



Magistrate Judge Tim A. Baker
March 30, 2017
Page 5

patient death). The witness did not review the January 25, 2012, e-mail to prepare for his deposition. [Hunt Depo. 127:12-14.] In fact, prior to the deposition, the witness had never seen the document. [*Id.*] He also did not know why anyone at Cook would have requested such information in January of 2012. [Hunt Depo. 127:7-11.]

The witness's lack of knowledge/preparation was not limited to the January 25, 2012, filter "product liability claims":

- He did not recall the name of any case (other than Tonya Brand) that was placed on litigation hold on April 15, 2013 (the first date a filter hold was placed) [Hunt Depo. 99:18-25];

- He did not know which custodians were placed on hold for the Tonya Brand case on April 15, 2013 [Hunt Depo. 100:1-5];

- He did not know whether Cook maintains any document setting forth the identity of the cases for which individual custodians were placed on hold [Hunt Depo. 100:12-15];

- He did not know whether there were any filter related holds initiated in 2009 [Hunt Depo. 144:16-21];[4]

- He did not know whether there were any filter related holds initiated in 2010 [Hunt Depo. 147:15-17];

- He did not know whether there were any filter related holds initiated in 2011 [Hunt Depo. 150:12-19];[5]

- He did not know how many filter lawsuits had been filed in 2013 [Hunt Depo. 167:17-23.];[6]

- He did not know how many filter related lawsuits had been filed in 2012 [Hunt Depo. 167:25-168:11];[7]

---

[4] While addressed in my prior letter, it is worth noting that counsel objected to this question as "outside the scope."

[5] *See supra* n.2.

[6] *See supra* n.2.

[7] *See supra* n.2.



- He did not know how many filter related lawsuits had been filed in 2011 [Hunt Depo. 168:13-17];[8]

- He did not know how many filter related lawsuits had been filed in 2010 [Hunt Depo. 168:19-23].[9]

These answers are not surprising given the witness who was designated. Mr. Hunt testified that he is primarily responsible for intellectual property issues; not products liability. [Hunt Depo. 5:25-7:3.] In fact, he identified Pam Garwood as the point person for document holds within Cook's legal department. [Hunt Depo. 7:17-22.] In fact, Mr. Hunt even qualified a deposition answer with, "Well, I don't typically deal with products cases, which are different ... ." [Hunt Depo. 61:19-20.]

Each of these issues is directly relevant to the issue of when Cook reasonably anticipated litigation over its filters, which would trigger its responsibility to initiate a document hold. Answers to these questions are crucial for Plaintiffs' forthcoming motion for sanctions. As such, we respectfully request the opportunity to depose a witness that is adequately prepared.

### 4. Cook's counsel repeatedly instructed the witness not to answer relevant questions.

Once a preliminary showing of spoliation is made, the attorney-client privilege no longer protects the substance of litigation holds. *Major Tours*, 2009 U.S. Dist. LEXIS 68128, at ** 7-8. *See also Zubulake*, 229 F.R.D. at 425 nn.15-16. As was demonstrated during the February 21, 2017, hearing, Cook had in its possession a host of evidence that placed it on notice of Mrs. Hill's injury in 2013. Furthermore, her lawsuit was filed in 2014. Yet, Courtney Whitelock (the sales representative who sold filters to Mrs. Hill's implanting physician) was not placed on hold until May 6, 2016. We also know that up to and including the date she was placed on hold, Ms. Whitelock's e-mail was continually being permanently deleted pursuant to Cook's Electronic Information Policy. *See supra*, §§ 1-2. In other words, the temporally relevant e-mails of the sales representative who sold the filter implanted in Mrs. Hill are gone.

---

[8] *See supra* n.2.

[9] *See supra* n.2.



RILEY WILLIAMS & PIATT LLC

Magistrate Judge Tim A. Baker
March 30, 2017
Page 7

We also know that despite the fact that the MDL was formed in 2014, **118** Cook employees involved in filter marketing were not placed on hold until February 8, 2017. [*See* Ex. A.] Cook also represented to this Court earlier in that it was on notice of potential filter litigation as far back as February 23, 2010. [Order on April 30, 2015, Status Conference, p. 1.][10]

As we learned in the first portion of the recent Rule 30(b)(6) deposition, this means that over a significant time (7 years in the case of many sales representatives) **e-mail has been permanently deleted.** Given what we know, any privilege applicable to litigation hold communications has been lost. Despite this spoliation, Cook's counsel instructed its witness not to answer the following questions:

- What date Cook first attempted to determine custodians with information relevant to the *Hill* bellwether case. [Hunt Depo. 181:9-22];

- What steps Cook took to identify the custodians with information potentially relevant to the *Hill* bellwether case. [Hunt Depo. 180:23-181:8];

- Whether Cook used any software to assist in the identification of custodians to place on hold [Hunt Depo. 67:7-17];

- The identity of the triggering event for Cook's initiation of a "general hold" regarding filters. [Hunt Depo. 105:18-106:4];

- Why Cook chose to implement a "general hold" on February 21, 2014, regarding its filters. [Hunt Depo. 122:2-12];

- How Cook went about determining what custodians had relevant information regarding filters for purposes of a hold. [Hunt Depo. 125:11-22].

Plaintiffs have made a strong preliminary showing that relevant evidence was deleted. We were provided with a paucity of information related to Cook's sales representatives contacts with the physicians in the bellwether cases, despite

---

[10] To be clear, Plaintiffs have an abundance of evidence demonstrating that Cook should have reasonably been on notice of the filter litigation far in advance of the first litigation holds (i.e., April 15, 2013). This evidence will be presented in our forthcoming motion for sanctions. Given that we are simply asking for a continuance of the deposition at this juncture, I have not included all of that evidence here. If the Court would like to see that evidence in making a decision on the continuation of the deposition, Plaintiffs will provide that evidence.



Magistrate Judge Tim A. Baker
March 30, 2017
Page 8

being told in deposition that the sales representatives would e-mail their supervisors to memorialize their detailing visits. At this point, we need to question Cook on the contents of its litigation hold communications as well as the obtain answers to the questions counsel instructed Mr. Hunt not to answer.

Given the gravity of this situation, we understand if the Court would prefer formal briefing on this issue. Before going down that road, however, we wanted to discuss with Your Honor the best way to proceed. As always, we appreciate your consideration in this matter.

Sincerely,

RILEY WILLIAMS & PIATT, LLC

Joseph N. Williams

JNW/ema