**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br><br>MDL No. 2570 |
| This Document Relates to All Actions | |

## Plaintiffs' Brief in Support of their Motion Requesting an Additional Rule 30(b)(6) Deposition Related to Spoliation

## Introduction

To investigate Cook's troubling document destruction practices, Plaintiffs took two Rule 30(b)(6) depositions of persons with knowledge of Cook's document preservation efforts in this litigation. Those depositions were fruitful in revealing that Cook destroyed untold numbers of sales documents[1] (likely including notes from sales calls with physicians, e-mails between Cook sales employees, and marketing directives given to sales personnel), and those documents are now unrecoverable.

---

[1] Throughout this motion, Plaintiffs use the term "documents" with the intent that it should be given the broadest possible meaning and encompass all forms of discoverable materials that include without limitation: documents, electronically stored information (ESI), emails, voicemails, call notes, memos, and all files that may be created, maintained or stored on computers, microcomputers, smartphones, tablet computers, hard drives, backup systems, and network storage devices.

Yet, proof that documents were destroyed does not automatically entitle Plaintiffs to a mandatory adverse inference instruction. In the Seventh Circuit, Plaintiffs must show bad faith. Unfortunately, the Rule 30(b)(6) deponent Cook put forth to discuss its litigation hold practices was unprepared to discuss several issues bearing on the bad faith inquiry. Even further, defense counsel consistently cut off lines of deposition questioning intended to establish (1) when Cook first anticipated litigation, (2) how Cook determined which custodians to place on hold, and (3) the scope of the litigation hold notices Cook issued. These topics are critical to establishing Cook's knowledge and motivations with regard to the preservation and/or destruction of sales employee documents. Accordingly, Plaintiffs request an additional 30(b)(6) deposition wherein Cook's representative is instructed to testify on these topics.

## Argument

### 1.  Cook had a duty to preserve potentially relevant information.

It is well-settled that a party has a broad duty to preserve evidence over which it has control and which it "reasonably knows or can foresee would be material (and thus relevant) to a potential legal action." *Bryant v. Gardner,* 587 F. Supp. 2d 951, 967–68 (N.D. Ill. 2008). The duty to preserve evidence is a part of the broad scope of discovery outlined in Rule 26 as vital to the American system of justice. *See Hickman v. Taylor*, 329 U.S. 495, 507, (U.S. 1947).

As other district courts in this Circuit have recognized, the vital exchange of information through the discovery process "would be a dead letter if a party could

avoid [its duty to disclose] by the simple expedient of failing to preserve documents that it does not wish to produce." *Danis v. USN Communications, Inc.,* No. 98 C 7482, 2000 U.S. Dist. LEXIS 16900, *5 (N.D. Ill. Oct. 20 2000). "Therefore, fundamental to the duty of production of information is the threshold duty to preserve documents and other information that may be relevant in a case." *Id.*

## 2. Cook's testimony so far demonstrates it failed to preserve relevant information.

### 2.1. Every day a Cook custodian is not on legal hold, some of her e-mails are being destroyed.

E-mail for sales employees (and other custodians) not on a litigation hold are continually and methodically deleted by Cook. Cook's IT employee and Rule 30(b)(6) deponent, Scott Blanchard, explained that once an e-mail appears in a custodian's inbox it is able to be retained for 60 days. [Blanchard Depo. 96:12-20].[2] After 60 days, the e-mail is moved to the dumpster. [Blanchard Depo. 131:2-132:13]. After 30 days in the dumpster, the e-mail is removed from the system and is available only on backup tapes. [Blanchard Depo. 131:2-132:13]. After 21 days, the backup tapes are overwritten and the e-mail becomes permanently unrecoverable. [Blanchard Depo. 131:2-132:13].

Thus, absent a litigation hold, every e-mail in an employee's Inbox and Sent Mail folders is automatically placed on a 111-day conveyor belt toward permanent destruction. Without a litigation hold, a steady stream of email from sales custodians is destroyed each and every day.

---

[2] Relevant portions of Mr. Blanchard's deposition are attached as Exhibit A.

### 2.2.   Cook did not timely place sales employees on litigation holds.

The Seventh Circuit recognizes that the duty to preserve documents arises when the defendant knew or should have known that litigation was imminent. *Trask–Morton v. Motel 6 Operating L.P.,* 534 F.3d 672, 681 (7th Cir. 2008). In other words, the duty to preserve evidence attaches once a party has notice of the threat of litigation. *See Malibu Media, LLC v. Harrison*, No. 1:12-cv-1117, 2014 U.S. Dist. LEXIS 176972, *8 (S.D. Ind. Dec. 24, 2014).

Importantly, the duty to preserve documents does not depend on a court order or a discovery request. *Trask–Morton*, 534 F.3d at 681. The duty may arise "even prior to the filing of a complaint as long as it is known that litigation is likely to commence." *MacNeil Auto. Products, Ltd. v. Cannon Auto. Ltd.,* 715 F. Supp. 2d 786, 801 (N.D. Ill. 2010). But, *at the very latest,* Courts recognize that the "duty attaches when a plaintiff informs the defendant of a potential claim." *Chandler v. Buncich,* No. 2:12 CV 175, U.S. Dist. LEXIS 136239, *3 (N.D. Ind. Sept. 24, 2012).

In August of 2013, Cook received information, including multiple emails from sales representative Courtney Whitelock, indicating that Bellwether Plaintiff Elizabeth Hill had suffered an injury in the form of the Celect filter perforating her duodenum. A little over a year later, on October 14, 2014, Mrs. Hill filed her lawsuit against Cook. Yet, it wasn't until May 6, 2016, that Ms. Whitelock (the primary sales representative involved in the *Hill* case) was placed on litigation

hold. [Cook Litigation Hold List.][3] Arguably, Cook should have known of a threat of litigation upon learning of Mrs. Hill's injury; but undeniably, the *reality* of litigation was known by Cook when Mrs. Hill's complaint was filed. Thus, Plaintiffs have undeniably been deprived of communications by the sales representative in *Hill* covering a span of (at a minimum) either 30 months (from notice of injury) or 19 months (from filing of a lawsuit).

The e-mail destruction pattern displayed in the *Hill* case is part of a larger pattern of sales document destruction occurring on a litigation-wide scale. Cook represented to this Court that it was on notice of filter litigation in 2010. In an earlier proceeding to determine whether certain communications were privileged, Cook represented to the Court that it was on notice of possible IVC filter litigation on February 23, 2010:

> First, the Court considered whether communications between Cook and its in-house counsel that relate to this litigation and post-date February 23, 2010 (when Cook was first on notice of possible litigation involving the at-issue IVC filters) needed to be listed on a privilege log.

[Filing No. 396, at ECF p. 1975.] This means that Ms. Whitelock was put on hold more than six years after Cook was first on notice of the filter litigation.

If Cook's acknowledged awareness of potential litigation in 2010 was not enough, at the very least, a broad duty to preserve evidence attached by October 15, 2014, when a MDL was formed to address an expected proliferation of claims

---

[3] A list of Cook employees placed on litigation hold (including the date each hold was initiated) is attached as Exhibit B.

against Cook. [Transfer Order, p.1.][4] Yet, with few exceptions, Cook chose not to place members of its IVC sales force on hold until February 8, 2017 — nearly seven years after Cook was on notice of filter litigation and more than two years after the MDL was formed. [*See* Ex. B.]

Pursuant to Cook's company policy, untold numbers of sales custodians' e-mails were deleted over the years before Cook chose to suspend that policy on February 8, 2017, with a litigation hold.

### 2.3 Relevant sales documents were certainly destroyed during the years between when Cook knew or should have known of potential litigation and when it placed its sales personnel on hold.

Since this issue arose, Cook has consistently responded by highlighting the documents it did preserve (ignoring the documents it destroyed). The fact that Cook has a policy of permanently maintaining certain categories of documents (e.g., "core documents" related to the design, manufacture and regulatory clearance of the product) does not excuse the destruction of potentially relevant materials in other categories (e.g., e-mails from sales personnel). Indeed, while Cook represents that 320 employees have been placed on holds for filter litigation since 2013, it appears that all but five of Cook's filter sales representative were put on hold this year (and only after Plaintiffs raised the issue of spoliation).

The reality is that Plaintiffs can never know what information Cook destroyed. Based upon what we do know, though, it is reasonable to infer that

---

[4] At the time that the Cook IVC MDL was created, there were 27 pending actions ordered consolidated and 5 additional pending actions identified as candidates for tag-along consolidation.

6

considerable relevant evidence was destroyed in the period between when Cook knew or should have known litigation and when Cook implemented litigation holds. The extent of the lost information is suggested by the testimony of the sales representative in the *Hill* case, Ms. Whitelock. Ms. Whitelock called upon the office or hospital department of Mrs. Hill's implanting physician at least 149 times. Ms. Whitelock testified that it was her practice to memorialize those sales calls in an e-mail to her boss:

> If I had an interaction with a physician, I would usually send an email just letting my boss know I met with such and such and, you know, detail what happened during the meeting.

[Whitelock Depo. 40:2-9].[5]  Yet, Cook has produced only a single e-mail that could arguably be characterized as what Ms. Whitelock described as her usual practice.[6]

Cook will likely suggest that Plaintiffs bear some burden to demonstrate precisely what evidence was lost during the window of time in which litigation holds were not in place before ordering discovery due to spoliation. Courts have not applied such a burden. Instead, courts recognize that it is difficult to know what evidence lost to due to a lack of preservation. *See Major Tours, Inc. v. Colorel*, Civil No. 05-3091, 2009 U.S. Dist. LEXIS 68128, *14 (noting that "failure to issue a litigation hold prevents the Court from determining the exact number of relevant

---

[5] Relevant portions of Ms. Whitelock's deposition are attached as Exhibit C.

[6] Cook's counsel has tried to whitewash this testimony through an errata sheet. Despite the fact that Ms. Whitelock clearly testified that she would "usually" send an e-mail to her boss, Cook's counsel attempted to change the testimony to a statement that Ms. Whitelock "could" send an e-mail to her boss. The fact that Cook has attempted to now change this testimony is telling.

emails, memoranda, or documents from the key players that were not preserved")
(citation omitted).

Thus, courts have looked to the number of custodians not timely asked to
preserve evidence, and the length of the time lapse before holds were issued to
infer that some relevant information was lost. *See id*.

### 3. Further Deposition Testimony Is Necessary To Determine Whether Cook's Failures to Preserve Relevant Evidence Were Caused by Bad Faith.

Plaintiffs require an additional 30(b)(6) deposition to determine whether the
Cook's destruction of documents was in bad faith. Simply establishing a duty to
preserve evidence (or even the destruction of evidence in some instances) does not
automatically entitle a litigant to an adverse inference instruction in the Seventh
Circuit.  The plaintiff must also make a showing of bad faith:

> In this circuit, when a party intentionally destroys
> evidence in bad faith, the judge may instruct the jury to
> infer the evidence contained incriminatory content.
> When considering the propriety of such an adverse
> inference instruction, "[t]he crucial element is not that
> the evidence was destroyed but rather the reason for the
> destruction."

*Bracey v. Grondin*, 712 F.3d 1012, 1019 (7th Cir. 2013) (internal citations omitted).
Thus, a showing of bad faith is a prerequisite to the imposition of an adverse
inference sanction for the destruction of evidence. *Trask–Morton,* 534 F.3d at 681
(7th Cir. 2008).

A party destroys a document in bad faith when it does so for the purpose of
hiding adverse information. Intentional destruction and bad faith may be proved

inferentially and with circumstantial evidence. *In re: Text Messaging Antitrust Litig.,* 46 F. Supp. 3d 788, 798 (N.D. Ill. 2014). To that end, courts have looked at the following factors as evidence establishing bad faith.

- <u>Timing:</u>  The timing of the destruction of evidence can support a finding of bad faith. *Sokn v. Fieldcrest Cmty. Unit Sch. Dist. No. 8,* Case No. 10-cv-1122, 2014 U.S. Dist. LEXIS 6109, *23 (C.D. Ill. Jan. 17, 2014) ("[A court may] infer bad intent based upon when the destruction occurred in relation to the destroyer's knowledge that the evidence was relevant to potential litigation.").

- <u>The Nature of the Information Destroyed:</u>  The nature of deleted files can imply that the material was destroyed to hide adverse information.  *Malibu Media, LLC v. Tashiro*, No. 1:13-cv-00205, 2015 U.S. Dist. LEXIS 64281, **43-44 (S.D. Ind. May 18, 2015).

- <u>Alternative Explanations for Document Destruction:</u>  The absence of a benign explanation for the deletion of relevant files is one factor to be weighed when assessing bad faith.  *Malibu Media,* 2015 U.S. Dist. LEXIS, **44-45.

These are precisely the subjects Plaintiffs sought to investigate by asking Cook's 30(b)(6) deponents about when and how Cook took determined which custodians had relevant information for purposes of issuing holds and what events triggered Cook's initiation of holds. Cook's witnesses, however, were instructed not to answer

these questions under a mistaken belief that they were privileged matters.[7]

### 3.1.   Steps taken by Cook to fulfill its duty to preserve are not privileged from discovery.

Plaintiffs anticipate Cook will argue its document destruction and preservation practices are privileged. Not so. First, the mere fact that actual litigation hold *notice letters* are generally protected from discovery does not mean that the underlying information about a party's evidence preservation efforts is also off limits to discovery. Second, in cases such as this—where a preliminary showing of spoliation has been made—the prevailing view is that even litigation hold letters are discoverable.

### 3.1.1  Plaintiffs are permitted to investigate the facts underlying and surrounding a litigation hold.

Even when a litigation hold *notice* is generally regarded as privileged, underlying facts, including actions taken pursuant to a litigation hold notice, are

---

[7] Questions that defense counsel instructed Cook's 30(b)(6) witnesses not to answer include the following:

- What date Cook first attempted to determine custodians with information relevant to the Hill bellwether case?

- What steps Cook took to identify custodians with information potentially relevant to the Hill bellwether case?

- What triggering event caused Cook to implement a "general hold" regarding its filters on February 21, 2014?

- Why Cook chose to implement a "general hold" regarding its filters on February 21, 2014?
- How Cook determined which custodians had relevant information regarding filters for purposes of implementing a hold?

- Whether Cook used any software to assist in identification of custodians to be placed on hold?

discoverable. Indeed, Courts have had no trouble drawing the distinction between discoverable actions taken in relation to a litigation hold and the generally privileged litigation hold notice letters themselves. For example, in *Cannata v. Wyndham Worldwide Corp.,* the court held that, "plaintiffs seek answers concerning what has actually happened in this case, i.e., when and to whom the litigation hold letter was given, what kinds and categories of ESI were included in defendants' litigation hold letter, and what specific actions defendants' employees were instructed to take to that end. Although the letters themselves may be privileged, the basic details surrounding the litigation hold are not." *Cannata*, Case No. 2:10-cv-68, 2011 U.S. Dist. LEXIS 88977, *8  (D. Nev. Aug. 10, 2011).

Thus, information regarding the steps taken to implement a litigation hold is discoverable. Simply stated, discovery of information about evidence preservation efforts that does not require disclosure of the litigation hold notice itself, is not privileged under the attorney-client privilege or entitled to work product protection. Cook's counsel should have permitted the witness to answer the questions.

### 3.1.2 Where spoliation occurs, even litigation hold notices are discoverable.

Although litigation hold notices are generally considered privileged, when spoliation occurs (as is the case here), the prevailing view is that even hold letters become discoverable. *Major Tours, Inc. v. Colorel*, 2009 U.S. Dist. LEXIS 68128, at *7. *See also Zubulake v. UBS Warburg LLC,* 229 F.R.D. 422, 425 nn. 15–16 (S.D.N.Y. 2004) (disclosing the details of counsel's litigation hold communication

after discovering that at least one e-mail had never been produced); *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.,* 244 F.R.D. 614, 634 (D. Colo. 2007) (permitting plaintiff to take a Rule 30(b)(6) deposition to explore the procedures defendants' counsel took "to identify, preserve and produce responsive documents" after finding that defendants expunged the hard drives of several former employees after the present litigation had begun); *Magnetar Technologies Corp. v. Six Flags Theme Park Inc.,* 886 F. Supp. 2d 466, 490 (D. Del. 2012) (refusing to impose dismissal sanctions for spoliation that was deemed accidental, but finding a limited waiver of privilege for a document related to the destroyed documents).

A leading case on discoverability of litigation holds in the face of spoliation is instructive here. In *Major Tours v. Colorel,* plaintiff business owners brought claims of discrimination against New Jersey Department of Transportation (the "Department") and several individuals. 2009 U.S. Dist. LEXIS 68128, at **4-5. The following timeline occurred:

- In September 2003, the Department received a letter from an attorney alleging racial profiling and threatening legal action. *Id.*, at *11.

- A lawsuit was filed in 2005. *Id.*, at *4.

- Five months after the lawsuit was filed, defendant's counsel sent a letter to the individual defendants telling them general ways their assistance might be required in the lawsuit. *Id.*

- In 2007, defendants' counsel sent the same individuals letters specifically mentioning the preservation of documents. *Id.*

- In 2009, Plaintiffs moved for the production of the 2005 and 2007 hold letters. *Id.*, at **4-5.

Defendants opposed production on the ground that the plaintiff had not shown that "a single email germane to this litigation has been spoliated." *Id*., at *5. The district court granted plaintiffs' motion and ordered defendants to produce the litigation hold letters. The court noted that, taken with the defendants' admission that they had failed to preserve certain documents, the length of time between when defendants were on notice of potential litigation (i.e., 2003) and when they received a formal litigation hold letter (i.e., 2007) supported an inference that relevant documents had been lost. *Id*. at **10-12. Given the circumstances surrounding Ms. Whitelock alone, the same inference is appropriate here.

It should be noted that ordering the disclosure of a litigation hold letter is different from the imposition of a sanction. *Major Tours,* 2009 U.S. Dist. LEXIS 68128, at *15 n.4. The imposition of a sanction for spoliation requires a showing that evidence was destroyed in bad faith. *See Trask-Morton,* 534 F.3d at 681. Ordering disclosure of litigation hold letters and facts, require only a showing that it is reasonable to infer that Plaintiff destroyed relevant evidence, inadvertently or otherwise. *See id*. In the simplest terms, litigation hold notices themselves may be held discoverable on a showing that potentially relevant evidence was lost or destroyed (as has happened here) and that the loss occurred subsequent to the time ligation became reasonably foreseeable and the duty to preserve was triggered (as is also the case here).

# Conclusion

For the foregoing reasons, Plaintiffs request an Rule 30(b)(6) deposition on the process used, and factors considered, by Cook when determining whether or not to implement litigation holds in connection with IVC filters, including production of the litigation hold communications, and all other relief the Court deems appropriate.

Dated:    April 20, 2017                  Respectfully submitted,


*/s/ Joseph N. Williams*
Joseph N. Williams, Atty. No. 25874-49
RILEY WILLIAMS & PIATT, LLC
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317) 633-5270
Facsimile: (317) 426-3348
Email:        jwilliams@rwp-law.com
*Liaison Counsel to Plaintiffs Steering*
*Committee and on behalf of Plaintiffs*
*Steering Committee*

Michael W. Heaviside, Esq.
HEAVISIDE REED ZAIC, A LAW CORPORATION
910 17th Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 223-1993
mheaviside@hrzlaw.com

Ben C. Martin, Esq.
THE LAW OFFICES OF BEN C. MARTIN
3710 Rawlins Street, Suite 1230
Dallas, TX  75219
Telephone: (214) 761-6614
Facsimile: (214) 744-7590
bmartin@bencmartin.com

David P. Matthews, Esq.

MATTHEWS AND ASSOCIATES
2509 Sackett St.
Houston, TX  77098
Telephone: (713) 522-5250
Facsimile: (713) 535-7184
dmatthews@thematthewslawfirm.com

*Plaintiffs' Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on April 20, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

Notice will be served on the parties listed below by first class U.S. Mail, postage prepaid:

Anthony James Urban
LAW OFFICES OF ANTHONY URBAN, P.C.
474 N. Centre Street, 3rd Floor
Pottsville, PA 17901

Arthur F Hoge , III
MEE MEE HOGE & EPPERSON PLLP
1900 NW Expressway, Suite 1400
Oklahoma City, OK 73118

Brian J. Urban
LAW OFFICES OF ANTHONY URBAN, P.C.
474 N. Centre Street, 3rd Floor
Pottsville, PA 17901

Carrie R. Capouellez
LOPEZ MCHUGH LLP
214 Flynn Avenue
Moorestown, NJ 08057

Caleb Hoff Didriksen , III
DIDRIKSEN LAW FIRM, PLC
3114 Canal Street
New Orleans, LA 70119

Carl A Woods , III
DIDRIKSEN LAW FIRM
3114 Canal Street
New Orleans, LA 70119

Cliff W. Marcek
CLIFF W. MARCEK, P.C.
700 S. Third St.
Las Vegas, NV 89101

Cory Holley Driggers
MORRIS CARY ANDREWS TALMADGE & DRIGGERS
P.O. Box 1649
Dothan, AL 36302

Craig D. Henderson
THE SNAPKA LAW FIRM
P.O. Box 23017
Corpus Christi, TX 78403

Curtis Hoke
THE MILLER FIRM LLC
The Sherman Building
108 Railroad Avenue
Orange, VA 22960

Daniel Snyder
Attorney at Law
1000 S W Broadway Suite 1500
Portland, OR 97205

David Carl Anderson
ANDERSON LAW
711 Van Ness Avenue, Suite 220
San Francisco, CA 94102

David J Britton
LAW OFFICE OF DAVID J BRITTON
2209 N 30th Street, Suite 4
Tacoma, WA 98403

David L. Grebel
NIEMEYER AND GREBEL
10 S. Broadway, Suite 1125
St. Louis, MO 63102

Elizabeth Alice Mote
KITRICK, LEWIS & HARRIS, CO., L.P.A.
455 Hutchinson Avenue, Suite 100
Columbus, OH 43235-8630

Evan M Zucker
BARON AND BUDD PC
15910 Ventura Boulevard Suite 1600
Encino, CA 91436

George Jerre Duzane
1675 Liberty Lane
Gallatin, TN 37066

Heather H. Harrison
FAEGRE BAKER DANIELS LLP
311 S. Wacker Drive, Suite 4400
Chicago, IL 60606

John Cornew
409 E Maple Ave
Lindenwold, NJ 08021

Jack Edward Urquhart
THE SNAPKA LAW FIRM
606 N. Carancahua, Suite 1511
Corpus Christi, TX 78401

Jacob A Boyd
LAW OFFICES OF BEN C MARTIN
3219 McKinney Avenue, Suite 100
Dallas, TX 75204

James David Martin
COPELAND FRANCO SCREWS & GILL PA
PO Box 347
Montgomery, AL 36101-0347

James R. Olson
OLSON, CANNON, GORMLEY, ANGULO & STOBERSKI
9950 West Cheyenne Avenue
Las Vegas, NV 89129-

James W. Childress
CHILDRESS AND AHLHEIM, LLC
1010 Market St., Suite 500
St. Louis, MO 63101

Janet Ward Black
WARD BLACK LAW
208 West Wendover Avenue
Greensboro, NC 27401

Jay Harris
HARRIS, RENY & TORZEWSKI
3rd Floor
Two Maritime Plaza
Toledo, OH 43604

Jennifer P Henry
THOMPSON & KNIGHT LLP
801 Cherry Street, Unit #1
Fort Worth, TX 76107

Joseph A. Napiltonia
LAW OFFICE OF JOE NAPILTONIA
213 3rd Avenue North
Franklin, TN 37064

Joseph G. Sauder
CHIMICLES & TIKELLIS LLP
361 West Lancaster Avenue
Haverford, PA 19041

Justin Kyle Brackett
TIM MOORE, ATTORNEY AT LAW, P.A.
305 East King St.
Kings Mountain, NC 28086

Kahla R Hurley
MEE MEE HOGE & EPPERSON PLLP
1900 NW Expressway, Suite 1400
Oklahoma City, OK 73118

Kimberly Lambert Adams
LEVIN PAPANTONIO THOMAS ETC PA - PENSACOLA FL
316 S Baylen Street, Suite 400
Pensacola, FL 32502

Marian S. Rosen
ROSEN & SPEARS
5075 Westheimer, Suite 760
Houston, TX 77056

Mark Mathew Kitrick
KITRICK, LEWIS & HARRIS CO LPA
445 Hutchinson Ave., Suite 100
Columbus, OH 43235

Mark P. Bryant
BRYANT LAW CENTER, PSC
601 Washington Street
P.O. Box 1876
Paducah, KY 42001

Mark R. Niemeyer
NIEMEYER AND GREBEL
10 S. Broadway, Suite 1125
St. Louis, MO 63102

Max E. Corrick
OLSON, CANNON, GORMLEY & DESRUISSEAUX
9950 West Cheyenne Avenue
Las Vegas, NV 89129

Michael G. Glass
RAPPAPORT GLASS GREENE & LEVINE LLP
1355 Motor Parkway
Hauppauge, NY 11749

Neal Lewis Moskow
URY & MOSKOW
883 Black Rock Turnpike
Fairfield, CT 06825

Paul Telhiard Boudreaux
RICHARDSON RICHARDSON BOUDREAUX
7447 S Lewis Avenue
Tulsa, OK 74136

Peter Andrew Miller
MILLER LEGAL LLC
175 S Pantops Drive
Third Floor
Charlottesville, VA 22911

Peter C Wetherall
WETHERALL GROUP, LTD.
9345 W. Sunset Road Suite 100
Las Vegas, NV 89148

Philip Sholtz
THE DRISCOLL FIRM, P.C.
211 N. Broadway 40th Floor
St. Louis, MO 63102

Robert David Segall
COPELAND FRANCO SCREWS & GILL
PO Box 347
Montgomery, AL 36107-0347

Roland K Tellis
BARON AND BUDD PC
15910 Ventura Boulevard Suite 1600
Encino, CA 91436

Scott Kehlenbrink
CHILDRESS AND AHLHEIM, LLC
1010 Market St. Suite 500
St. Louis, MO 63101

W. Bryan Smith
MORGAN & MORGAN, LLC
2600 One Commerce Square
Memphis, TN 38103

Wilnar Jeanne Julmiste
ANDERSON GLENN LLP - BOCA RATON FL
2201 NW Corporate Blvd., Suite 100
Boca Raton, FL 33431

*/s/ Joseph N. Williams*
Joseph N. Williams