**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates to All Actions

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION
FOR PROTECTIVE ORDER BARRING
PROPOSED DEPOSITION OF KEM HAWKINS**

The defendants Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS (collectively "Cook" or Defendants) respectfully move the Court for a protective order barring Plaintiffs' proposed deposition of Kem Hawkins, the former president of Cook Group Inc. The law disfavors such "apex depositions" of high ranking executives, and Plaintiffs cannot carry their burden of showing the necessity of the deposition of Mr. Hawkins. Mr. Hawkins has no unique or superior personal knowledge about the topics Plaintiffs have identified for his deposition. Other current and former Cook executives and employees have already been deposed (or soon will be deposed) on the topics listed in the Motion of Deposition served on Mr. Hawkins and the Cook Defendants have already produced numerous documents relative to the deposition topics. All of these provide better—and less intrusive—sources for the information sought. The proposed deposition of Mr. Hawkins will serve only to harass the witness and the Defendants and waste the parties' time and resources.

US.110706104.15

## BACKGROUND

Melvin Kem Hawkins was the president of Cook Group Inc.[1] from 2001 through his retirement to Florida in 2015, and was president of Cook Incorporated from 2001 through 2013 and Cook Medical Incorporated from 2003 through 2015.  *See* Exhibit A, Declaration of Kem Hawkins ("Hawkins Decl.") ¶¶ 2-3.  Although Cook's Tulip filters and Celect filters (collectively "the Cook IVC filters") were manufactured and sold during Hawkins's time as president, he was involved only in high-level decisions concerning those filters, based on information provided by other Cook employees.  *Id.* ¶ 4.

When Plaintiffs' attorneys first sent Cook a proposed deposition notice/subpoena for the deposition of Mr. Hawkins, Cook attorney James M. Boyers conveyed to Plaintiffs Cook's objection to such a deposition based on the Apex Doctrine:

> If Plaintiffs' position is that this discovery is necessary to take Mr. Hawkins' deposition, we wish to advise you that Cook will invoke the Apex Doctrine to challenge any effort to take Mr. Hawkins' deposition in this litigation. Under the Apex Doctrine, courts may quash subpoenas for depositions of high level executives if the information being sought can be obtained from another witness or an alternative discovery method or if the deposition will result in an undue hardship.  In general, federal courts have held that a high level executive may only be deposed if there is a showing that the executive possesses knowledge of relevant facts unavailable through less intrusive methods, that those less intrusive methods of discovery have already been exhausted, and that the discovery will not be unnecessarily duplicative.  [case citations omitted]
>
> Importantly, much of the law that was developed on the issue of Apex depositions came before the modifications of Rule 26 in December of 2015. Those modifications, and the requirement of proportionality in all discovery, weigh heavily in favor of an order quashing the subpoena for documents and any subpoena for Mr. Hawkins' deposition.  We are prepared to file a motion for protective order.

Exhibit B, January 10, 2017 Letter from James M. Boyers regarding subpoena.[2]

---

[1] Cook Group Inc. is the holding company for the Cook family of companies, including Cook Incorporated and Cook Medical LLC, the primary defendants in this case.

[2] Mr. Boyers' letter also raised a number of objections to the document requests that accompanied the subpoena.

In subsequent email correspondence, Cook's attorney Andrea Roberts Pierson raised with Plaintiffs' attorneys the question of exactly what topics Plaintiffs believed justified the deposition of Mr. Hawkins. Plaintiffs' attorney counsel Matt Schultz responded:

> I neglected to mention the subject matters as you requested. As I mentioned, it's difficult to specify as we don't wish to limit ourselves on subject matters. That said, I would envision some brief questioning on the company history and organization and organizational responsibilities (enough to provide context for his testimony), and questions relating to Cook's IVC filter-related business with some focus on corporate policies and responsibilities given that he was the head of Cook Group/Cook Inc. for virtually the entire time period relevant to the cases. I would expect questions into documents (those already produced and any produced/identified in Cook's CMO 2 response). Those questions will be dictated by the content of the documents themselves. I would not off the top of my head anticipate any inquiry into financial matters beyond his compensation and perhaps sales numbers for IVC filters. I hope this helps.

Exhibit C, March 26, 2017 Email from M. Schultz to A. Pierson regarding subpoena ("Schultz Email").

That same day, March 26, 2017, Plaintiffs served on Cook a Notice of Taking Deposition of Kem Hawkins, scheduling the deposition for June 12, 2017, in Indianapolis. *See* Exhibit D, Subpoena to Testify at a Video Deposition in a Civil Action and an accompanying Notice to Take the Videotaped Oral Deposition of Melvin Kem Hawkins With CMO 2 Request For Documents (Mar. 26, 2017) ("Notice"). The Notice does not identify any specific topics about which Plaintiffs intend to question Mr. Hawkins. It does, however, request that Mr. Hawkins produce a broad array of documents, including

(1) "[a]ll documents constituting or containing written communications by or to" Mr. Hawkins "relating in whole or in part to" any animal, bench, or clinical testing of any IVC filter; any "labeling, advertising, promotion or marketing" of any IVC filter or delivery system; the design, performance, safety, or efficacy of any IVC filter; and Cook compliance with federal and international laws and regulations;

3

     (2) all Cook standards and procedures relating to advertising or marketing of IVC filters, communication with doctors about IVC filters, payments to doctors, complaint investigations of IVC filters, and quality control for IVC filters;

     (3) organizational charts, and

     (4) Mr. Hawkins' personnel file.

*See* Ex. D, Notice at Request Nos. 1-4.

## ARGUMENT

Cook urges the Court to issue a protective order barring Plaintiffs from deposing former Cook president Kem Hawkins. Mr. Hawkins has no unique or personal knowledge relevant to this litigation, Plaintiffs have ample other means of obtaining the information they seek through other witnesses and written discovery, and they have made good use of those opportunities. Plaintiffs' insistence on this deposition can only serve to harass Cook and the witness and waste the parties' time and resources.

### I. THE STANDARD FOR QUASHING APEX DEPOSITIONS

Although public policy generally favors disclosure of relevant materials, a district court may limit the scope of discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C). The burden is on the party seeking the protective order to demonstrate that good cause exists for the entry of the order by making a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981).

Although acknowledging this burden, federal courts nationwide—including both the Seventh Circuit and this Court—have imposed a substantial threshold for a plaintiff who wants

to depose the president or other high-level official of a defendant, and have not hesitated to approve protective orders barring such depositions where a plaintiff cannot meet that threshold. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002); *Meharg v. I-Flow Corp.*, 2009 U.S. Dist. LEXIS 42446, 3-4 (S.D. Ind. May 15, 2009).

Courts view such depositions with disfavor and suspicion for several reasons. First, such top executives are "[g]enerally … familiar with the big picture of the operations of a company," but "not familiar with the day-to-day operations of a business." *Chick-Fil-A, Inc. v. CFT Dev., LLC*, 2009 U.S. Dist. LEXIS 34496, at *4 (M.D. Fla. Apr. 3, 2009). Second, the deposition of high-ranking corporate executives can be "quite costly and burdensome." *Patterson*, 281 F.3d at 682. Finally, "[v]irtually every court" to address this issue has recognized that the deposition of a President or CEO "creates a tremendous potential for abuse or harassment." *Affinity Labs of TX. v. Apple, Inc.,* 2001 WL 1753982, at *15 (N.D. Cal. 2011) (quotations and citations omitted). For these reasons, courts have found that plaintiffs frequently cannot justify depositions of top corporate executives, especially in personal injury cases, where the product-specific facts in a particular case are remote from the big picture operations of a company. *See, e.g.*, *Salter*, 593 F.2d at 651-52; *Baine*, 141 F.R.D. at 335-36, *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 365-66 (D.R.I. 1985); *In re Continental Airlines, Inc.*, 305 S.W.3d 849, 858-59 (Tex. App. Ct. 2010); *Alberto v. Toyota Motor Corp.*, 796 N.W.2d 490, 496-98 (Mich. Ct. App. 2010). This is a particularly powerful point here, where the Celect and Tulip filters at issue in the MDL are just two of some 16,000 products produced under the Cook umbrella.

In considering whether to bar the deposition of a corporate executive, the court should look at "the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truthseeking

function in the particular case before the court." *Patterson*, 281 F.3d at 681.  Courts focus on two questions in particular:

- Does the executive or top-level employee have unique or superior personal knowledge on relevant subject matters?  *See Salter v. Upjohn Company*, 593 F.2d 649 (5th Cir. 1979) (requiring executive to have unique or superior personal knowledge before allowing plaintiff to depose him); *Baine v. General Motors Corp.*, 141 F.R.D. 332, 334 (M.D. Ala. 1991) (denying plaintiff's request to depose corporate vice president who lacked unique personal knowledge of the issues); *Harris v. Computer Associates Intern., Inc.*, 204 F.R.D. 44, 46-47 (E.D.N.Y., 2001) (holding that deposing high level corporate executives may be duplicative, cumulative, and burdensome where executive lacks personal knowledge of the disputed events).

- Can the information sought be obtained from lower-level employees or through less burdensome means, such as interrogatories?  *See, e.g., Patterson,* 281 F.3d at 681 (quoting Rule 26(b)(2); *Reif v. CNA*, 248 F.R.D. 448, 451 (E.D. Pa. 2008); *Roman v. Cumberland Ins. Group,* 2007 U.S. Dist. LEXIS 96775, at *1-2 (E.D. Pa. Oct. 26, 2007) (prohibiting the "deposing of corporate executives who have no direct knowledge of a plaintiffs claim when other employees with superior knowledge are available").

Here, both of these factors weigh heavily against permitting Plaintiffs to depose Mr. Hawkins.

## II.  KEM HAWKINS HAS NO UNIQUE OR SUPERIOR KNOWLEDGE ON THE TOPICS PLAINTIFFS PROPOSE.

To establish that an apex deposition is necessary, Plaintiffs must "show that executive has 'unique or superior knowledge of discoverable information.'" *Chick-Fil-A, Inc. v. CFT Dev., LLC*, 2009 U.S. Dist. LEXIS 34496, at *4 (M.D. Fla. Apr. 3, 2009) (quoting *Saltar v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979)). If they cannot make that showing, the court should grant

the motion for a protective order.  *See Baine*, 141 F.R.D. at 335-36; *See Meharg v. I-Flow Corp.*, 2009 U.S. Dist. LEXIS 42446, 3-4 (S.D. Ind. May 15, 2009) (holding plaintiffs were entitled to depose defendant's CEO about events about which they had shown CEO had personal knowledge, but not about topics beyond his personal knowledge).  Here, Mr. Hawkins lacks any unique or superior knowledge concerning any of the topics Plaintiffs propose to question him about.

As a threshold matter, Plaintiffs have created an additional hurdle for themselves by failing even to identify what topics they want to discuss with Mr. Hawkins.  Plaintiffs' Notice of Taking Deposition of Mr. Hawkins identifies no topics at all, and, although Cook has repeatedly asked Plaintiffs to identify the topics for Mr. Hawkins' proposed deposition, Plaintiffs' response has been vague, tentative, and overtly evasive.  *See* Ex. C, Schultz Email ("it's difficult to specify as we don't wish to limit ourselves on subject matters").  The few deposition topics that Plaintiffs did identify do not involve any unique or superior knowledge on the part of Mr. Hawkins.  Specifically:

1. Company history, organization, and organizational responsibilities.  *See* Ex. C, Schultz Email.  Mr. Hawkins has no unique personal knowledge about company history and structure.  *See* Ex. A, Hawkins Decl. ¶ 10.  The history and organization of the various Cook companies is well known to multiple senior and long-term Cook personnel, and Plaintiffs have not suggested what information he allegedly has that cannot be obtained elsewhere.  Indeed, inasmuch as Mr. Hawkins retired from Cook nearly nine months ago, some of his knowledge concerning the history and organization of the companies may now be incomplete or outdated.

2. "[Q]uestions relating to Cook's IVC filter-related business with some focus on corporate policies and responsibilities."  *See* Ex. C, Schultz Email.  This description is so vague

that Cook cannot realistically identify what information Plaintiffs are after. Plaintiffs do not identify what "corporate policies and responsibilities" they want to ask Mr. Hawkins about, and do not say what other aspects of the broad topic of "Cook's IVC filter-related business" they want to address with him. Like many top executives, Mr. Hawkins was involved only in high-level decisions concerning the Cook IVC filter business, and depended on information provided by other Cook employees. *See* Ex. A, Hawkins Decl. ¶ 4. Plaintiffs have offered nothing to suggest that Mr. Hawkins' knowledge of the IVC business is unique or that it is superior to—or even as good as—the knowledge of the subordinates who provided Mr. Hawkins with information.

3. "[Q]uestions into documents. (those already produced and any produced/ identified in Cook's CMO 2 response)." *See* Ex. C, Schultz Email. This topic description is likewise vague and unhelpful. Despite suggesting they will ask questions about documents "already produced," Plaintiffs do not identify what those documents are, what topics they address, who wrote and received them, or why Mr. Hawkins' knowledge of them is unique or superior to the knowledge of others who prepared or received the documents. As to their intention to question Mr. Hawkins about documents that have not yet been produced, this topic is wholly speculative; it essentially proposes a fishing expedition based on as-yet unseen documents, and Plaintiffs of course cannot offer any basis to suggest that Mr. Hawkins' knowledge of those documents is unique or superior to the knowledge of other witnesses.

4. Mr. Hawkins' compensation. *See* Ex. C, Schultz Email. Even assuming *arguendo* that the former president's compensation were relevant to these issues in this litigation, Mr. Hawkins' undoubted personal knowledge of his compensation is hardly unique; most obviously, it is known to the companies that compensated him.

8

5. "[S]ales numbers for IVC filters." *See* Ex. C, Schultz Email. Plaintiffs cannot reasonably suggest that the retired president of the company has unique or superior information concerning sales numbers for the Celect and Tulip filters—again, just two of 16,000 Cook products. Logically, other current company personnel will have more accurate and more recent information on this topic.

Mr. Hawkins also has no unique or superior knowledge on any of the issues addressed in the document request accompanying the deposition notice, including topics such as product design and development, product testing, manufacturing, product labeling, product warnings, marketing, advertising, or regulatory submissions and compliance. *See* Ex. A, Hawkins Decl. ¶¶ 5-9.

In sum, Plaintiffs have not identified any topic relevant to this litigation on which they wish to depose Mr. Hawkins about which he has unique or superior knowledge. The Court should therefore issue a protective order barring his deposition. *See, e.g., Salter v. Upjohn Co.,* 593 F.2d 649 (5th Cir. 1979) (protecting executive from deposition where requesting party could not establish the executive had unique, personal knowledge); *Lewelling v. Farmers Ins. of Columbus,* 879 F.2d 212, 218 (6th Cir. 1989) (affirming protective order where chairman and C.E.O. lacked personal knowledge); *Baine v. General Motors Corp.,* 141 F.R.D. 332, 335 (M.D. Ala. 1991) (granting protective order against deposition of vice president where plaintiff "has not demonstrated that [he] has any superior or unique personal knowledge of the restraint system or of the accident which led to the plaintiffs' decedent's death").

### III. THE INFORMATION PLAINTIFFS SAY THEY SEEK HAS ALREADY BEEN PRODUCED THROUGH OTHER WITNESSES AND DOCUMENTS.

Not only have Plaintiffs failed to identify any relevant topics on which Mr. Hawkins has unique or superior knowledge, the history of the discovery in this action establishes beyond doubt that Plaintiff can obtain the information they say they want from other sources and through less intrusive means. *See Roman v. Cumberland Ins. Group,* 2007 U.S. Dist. LEXIS 96775 (E.D. Pa. Oct. 26, 2007) (granting protective order barring deposition of corporate executives without direct knowledge where knowledgeable lower level employee was available to testify). The topics Plaintiffs have identified for their proposed Hawkins and Milling depositions can be, and often already have been, fully addressed by other witnesses and by Cook's responses to written discovery. *See Murillo v. Kohl's Corp.*, 2016 U.S. Dist. LEXIS 144053 (E.D. Wis. Oct. 18, 2016) (granting protective order where proposed executive deponent "does not appear to possess any particularized knowledge beyond that which other witnesses have testified").

### 1. Company history, organization, and organizational responsibilities.

Cook has already provided a corporate representative on the topic of corporate history, structure and organization. Early in the litigation, Plaintiffs served a 30(b)(6) deposition notice seeking testimony concerning the corporate structure and history of the various Cook companies, the relationships between and among those companies, and the companies' relationship with the Research and Development Department at the Medical Engineering and Development Institute, Inc. *See* Exhibit E, Declaration of Andrew L. Campbell ("Campbell Decl.") at Exhibit 1, First Amended Notice of Deposition at 7 (Jan. 9, 2015). In response, Cook produced Mark Breedlove, Cook's vice president and global business unit leader for peripheral intervention, who testified for a full day about these topics. Ex. E, Campbell Decl. ¶ 6.

Plaintiffs' document requests to Cook also requested charts and other documents that identified and described the Cook companies corporate structure and organization. *See* Exhibit

10

F, Plaintiffs' Master Set of Requests for Production of Documents, Request Nos. 6, 8. Cook responded to that request and produced such documents, and Plaintiffs have not claimed that that production was insufficient. Plaintiffs have already had a full and fair opportunity to obtain whatever information they need about Cook corporate history and structure, both from company documents and from a corporate witness prepared and presented to address just those topics. Plaintiffs have no need to depose Mr. Hawkins about those same topics.

### 2. "[Q]uestions relating to Cook's IVC filter-related business with some focus on corporate policies and responsibilities"

To the extent this topic differs from Plaintiffs' first topic concerning company organization and structure, Plaintiffs have already taken 30(b)(6) depositions of Cook corporate representatives who have provided more information on these topics than Mr. Hawkins could possibly offer. Specifically:

- Plaintiffs noticed the deposition of a person knowledgeable about "the corporate organization and structure of the departments or divisions at Cook responsible for the sale, marketing, advertising or promotion of IVC Filters." *See* Ex. E, Campbell Decl. at Exhibit 5, Notice to Take Deposition at 6 (Apr. 2, 2015) and Exhibit 6, Notice to Resume Deposition at 6 (Dec. 15, 2015). In response, Cook produced the Product Manager for IVC Filters, Darrell Talbert, who testified at length on those topics. *See* Ex. E, Campbell Decl. ¶ 24.

- Plaintiffs noted the deposition of a person knowledgeable about "corporate organization and structure of Cook relating to the approval, management, administration, operation and compliance… applicable to any IVC Filter." *See* Ex. E, Campbell Decl. at Exhibit 3, Notice to Take Deposition at 6 (Apr. 23, 2015) and Exhibit 4, Notice to Resume Deposition at 6 (Dec. 17, 2015). In response, Cook produced its Senior Vice President

11

of Regulatory Affairs, April Lavender, who testified at length on these topics. *See* Ex. E, Campbell Decl. ¶ 15.

- Cook also produced the following witnesses in response to Plaintiffs' additional 30(b)(6) notices, and each testified extensively about the filter business:
    - Tom Roberts, Vice President of Quality Assurance and Global Functional Leader for Quality Assurance;
    - Ted Heise, Vice President of Scientific Regulatory Affairs; and
    - Bruce Fleck, Senior Product Manager for IVC Filters.

*See* Ex. E, Campbell Decl. ¶¶ 17, 23. In light of the comprehensive testimony from these individuals, Mr. Hawkins cannot offer unique or superior testimony concerning "Cook's IVC filter-related business."

### 3. "[Q]uestions into documents."

Plaintiffs' vague desire to question Mr. Hawkins about unidentified "documents" is wholly inadequate to show that the information desired cannot be obtained from lower-ranking personnel or through other means. Absent both the identification of a particular document and an explanation of why deposing others involved with the document would be insufficient, Plaintiffs cannot justify deposing Mr. Hawkins.

### 4. Mr. Hawkins' compensation.

Again assuming for the sake of argument that information concerning Mr. Hawkins' compensation were relevant, such information would be easily obtainable through written discovery requests. Plaintiffs simply have not made the attempt. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 682 (7th Cir. 2002) (upholding district court's protective order

12

against deposition of corporate vice president based in part on plaintiff's "refusal to avail herself of other reasonably available means of discovery")

### 5. "[S]ales numbers for IVC filters."

Plaintiffs cannot reasonably suggest that information concerning sales numbers for IVC filters is not available from sources other than the retired president of the company, and in fact Cook has already provided Plaintiffs with the best-available data concerning sales.

- Cook produced sales data and financial data in response to Plaintiffs' discovery requests. These materials included sales data broken down by product and year, sales forecasts, and applicable balance sheets, income statements, annual reports, and business plans for the named Cook entities. *See* Ex. E, Campbell Decl. ¶ 24.

- Cook also produced its product managers for IVC Filters, Darrell Talbert and Bruce Fleck, as 30(b)(6) witnesses on issues of sales and marketing. *See* Ex. E, Campbell Decl. ¶¶ 23, 25.

The information that Plaintiffs say they seek concerning sales data is already in their hands from other sources, and they cannot justify deposing Mr. Hawkins to "discover" this known information.

### 6. Document request topics.

Finally, Cook has already provided reams of documents and multiple witnesses addressing all the issues addressed in the document request that accompanied the Hawkins deposition notice, including product design and development, product testing, manufacturing, product labeling, product warnings, marketing, advertising, or regulatory submissions and compliance. *See* Ex. A, Hawkins Decl. ¶¶ 5-10; Ex. D, Campbell Decl. ¶¶ 4-28.

13

In sum, the history of discovery in this litigation shows that Plaintiffs have not only had the opportunity to pursue these proposed deposition topics through written discovery and depositions of other witnesses, they have taken advantage of those opportunities and have *actually* obtained the information they now claim to seek.  Plaintiffs can cite no evidence that Mr. Hawkins has any relevant information that Plaintiffs do not have or cannot obtain through other means, and the Court should therefore bar this apex deposition.  *See, e.g., Reif*, 248 F.R.D. at 449 (denying request to depose CEO "[b]ecause the [plaintiffs] have failed to show [CEO's] statement influenced the alleged discrimination and lower level employees are more knowledgeable"); *Baine v. General Motors Corp.,* 141 F.R.D. 332, 334 (M.D. Ala. 1991) ("deposing Mr. Mertz at this time would be oppressive, inconvenient, and burdensome inasmuch as it has not been established that the information necessary cannot be had from Mr. Sinke, other of the distributees of the Mertz memorandum, interrogatories, or the corporate deposition"); *Thomas v. International Business Machines,* 48 F.3d 478, 483 (10th Cir. 1995) (same); *Reif v. CNA,* 248 F.R.D. 448, 451 (E.D. Pa. 2008) (same); *Harris v. Computer Assoc. Intern, Inc.,* 204 F.R.D. 44, 46-47 (E.D.N.Y. 2001) (same).

## IV. THE PROPOSED DEPOSITION OF MR. HAWKINS WOULD UNNECESSARILY HARASS COOK AND WASTE THE PARTIES' TIME AND RESOURCES.

Finally, the Court should issue a protective order barring the deposition of Mr. Hawkins to prevent the abuse and harassment of Mr. Hawkins and the waste of time and money by Cook and its attorneys.  "Virtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment."  *Celerity, Inc. v. Ultra Clean Holding,*

14

*Inc.*, Case No. C05-04374 MMC (JL), 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007) (collecting cases).

As the discussion in sections II and III above demonstrates, Plaintiffs' purpose in noticing the deposition of Mr. Hawkins cannot be to obtain discoverable information; Plaintiffs already have most of the information they say they seek, and if they really wanted to get more, they would depose the people more likely to have it. Plaintiffs' true purpose is to harass Mr. Hawkins, consume Defendants' time and money in contesting and defending the deposition, and perhaps (Plaintiffs hope) improperly coerce concessions on other issues. Courts have addressed this sort of harassment through protective orders, "restrict[ing] parties from deposing high-ranking officials because (by virtue of their position) they 'are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts.'" *Brown v. Branch Banking & Trust Co.*, 2014 U.S. Dist. LEXIS 7721, at *7 (M.D. Fla. Jan. 22, 2014) (quoting *In re Bridgestone/Firestone, Inc. Tires Products Liab. Litig.*, 205 F.R.D. 535, 536 (S.D. Ind. 2002)).

One additional, equally improper purpose is also clear. Plaintiffs' attorneys have all but telegraphed their intention to "parade" these apex depositions before the jury for improper purposes. Plaintiffs have stated with respect to another Cook apex witness:[3] "We think it's important for the jury to hear from the person who headed the company." Exhibit H, March 27, 2017 Email from M. Schultz to A. Pierson. But why? Why is that important? Plaintiffs cite no supporting authority, and common sense confirms a jury does not automatically gain anything

---

[3] This email exchange involved Plaintiffs' response to Cook's inquiry concerning why Plaintiffs feel they need to depose Lars Milling, the current managing director of William Cook Europe. *See* Exhibit G, Notice to Take The Videotaped Oral Deposition Of Lars Milling With CMO 2 Request for Documents. Mr. Milling's deposition is not at issue in the present motion.

15

useful from hearing from the president of a company, particularly where—as here—that person has no unique or useful knowledge relating to the individual case.

Plaintiffs' *actual* reason for arguing that "it's important" to present the head of the company to the jury is their desire to falsely imply that because Mr. Hawkins cannot answer questions about specific facts or claims, he—as some sort of implied personification of the company—was either ignorant or dishonest, was therefore culpable, and that he and the company were ultimately even oblivious to product users.  After all, Plaintiffs will suggest, if even the company's president did not know or care about Subject X or Claim Y, the company must be not only liable but heartless.

Such implications would be false and improper, particularly because they ignore a corporate structure that necessarily and appropriately directs such facts and claims to the lower-level employees who can directly address them.  No president or executive can possibly know every detail about every product or every claim against the company, and Plaintiffs know it.  Their desire to implicitly impugn defendants in this way does not justify depositing an apex deponent.  As one court noted:

> We do not believe… that this holding [barring the deposition of corporate president] will frustrate a plaintiff's ability to penetrate high levels of corporate management in a search for truth.  Specifically, we do not agree…that a high-level official's protestation of ignorance of a lawsuit is self-serving and automatically suspect.  Lower level officials, with some probable connection to a plaintiff's case, are not permitted to avoid deposition by filing conclusory affidavits of ignorance. … In the case of an official at the head of corporate operations, however, expressions of ignorance of a specific case or claim are not implausible.

*Liberty Mutual Ins. Co. v. Superior Court*, 10 Cal. App. 4th 1282, 1289-1290 (Cal. App. 1st Dist. 1992); *see also Evans v. Allstate Ins. Co.*, 216 F.R.D. 515, 519 (N.D. Okla. 2003) (barring apex depositions despite plaintiffs' claims that "the depositions are necessary to prove their theory that

16

a pervasive practice of inadequate supervision over Allstate claims adjusters exists within the corporation").

## CONCLUSION

The Court should grant Cook's motion and issue a protective order barring Plaintiffs from deposing Kem Hawkins. Mr. Hawkins has no unique or superior knowledge of any of the topics Plaintiffs have identified, and Cook has provided and will provide much better sources of information on those topics. Plaintiffs' only purposes in noticing the deposition of Mr. Hawkins is to harass the witnesses and the Defendants, waste the parties' and their attorneys' time and resources, and set up an improper presentation and argument at trial based on this witness's lack of detailed knowledge of lower-level corporate facts.

US.110706104.15

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: April 27, 2017 | /s/ *Andrea Roberts Pierson* |

                              Andrea Roberts Pierson (# 18435-49)
                              Andrew L. Campbell (# 25516-49)
                              Jessica Benson Cox (# 26259-49)
                              FAEGRE BAKER DANIELS LLP
                              300 North Meridian Street, Suite 2700
                              Indianapolis, Indiana  46204
                              Telephone:  (317) 237-0300
                              Facsimile:  (317) 237-1000
                              E-Mail:  andrea.pierson@faegrebd.com
                              E-mail:  andrew.campbell@faegrebd.com
                              E-Mail:  jessica.cox@faegrebd.com

                              James Stephen Bennett (# 22869-02)
                              FAEGRE BAKER DANIELS LLP
                              110 W. Berry Street, Suite 2400
                              Fort Wayne, Indiana  46802
                              Telephone: (260) 424-8000
                              Facsimile: (260) 460-1700
                              stephen.bennett@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

## CERTIFICATE OF SERVICE

I hereby certify that on April 27, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

/s/ *Andrea Roberts Pierson*

US.110706104.15