# EXHIBIT C

```
                                                 Page 1
         IN THE UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF INDIANA
               INDIANAPOLIS DIVISION


    --------------------------- )
    IN RE:  COOK MEDICAL, INC.  )
    IVC FILTERS MARKETING, SALES ) Case No.
    PRACTICES AND PRODUCTS      ) 1:14-ml-2570-
    LIABILITY LITIGATION        ) RLY-TAB
    --------------------------- )
    This Document Relates to:   ) MDL No. 2570
    All Actions                 )
    --------------------------- )

                  CONFIDENTIAL
         The videotaped 30(b)(6) deposition of Cook
    Medical, Incorporated, et al., as given by
    SCOTT ANDREW BLANCHARD, called by the Plaintiffs
    for examination, taken pursuant to the Federal
    Rules of Civil Procedure of the United States
    District Courts pertaining to the taking of
    depositions, taken before CORINNE T. MARUT, C.S.R.
    No. 84-1968, Registered Professional Reporter and a
    Certified Shorthand Reporter of the State of
    Illinois, at the offices of Wooden & McLaughlin
    LLP, Suite 1800, 211 North Pennsylvania Avenue,
    Indianapolis, Indiana, on January 29, 2015,
    commencing at 10:09 a.m.
```

```
                                                 Page 2
 1  APPEARANCES:
 2   ON BEHALF OF THE PLAINTIFFS:
 3     LAW OFFICES OF BEN C. MARTIN, LLP
 4     3219 McKinney Avenue, Suite 100
 5     Dallas, Texas  75204
 6     214-761-6614
 7   BY:  THOMAS WM. ARBON, ESQUIRE
 8        tarbon@bencmartin.com
 9
10   ON BEHALF OF THE DEFENDANTS:
11     WOODEN & McLAUGHLIN LLP
12     211 North Pennsylvania Avenue
13     One Indiana Square, Suite 1800
14     Indianapolis, Indiana  46204-4208
15     317-639-6151
16   BY:  JAMES M. BOYERS, ESQUIRE
17        jboyers@woodmclaw.com
18
19  ALSO PRESENT:
20     DOUGLAS FORREST, ESQUIRE
21       International Litigation Services
22
23
24  VIDEOTAPED BY:  CHARLES HODGE
25
26  REPORTED BY:  CORINNE T. MARUT, C.S.R. No. 84-1968
27
28
29
30
31
```

```
                                                 Page 3
 1                    I N D E X
 2  SCOTT ANDREW BLANCHARD             EXAMINATION
 3     BY MR. ARBON.................   6
 4     BY MR. BOYERS................ 165
 5     BY MR. ARBON................. 165
 6
 7                   E X H I B I T S
 8  BLANCHARD DEPOSITION EXHIBIT      MARKED FOR ID
 9  No. 1    Second Amended Notice of      4
10           Deposition
11
12  No. 2    MDL 2570 ESI Document         4
13           Production, January 24, 2015
14  No. 3    MDL 2570 ESI Document         4
15           Supplemental Production,
16           January 28, 2015
17  No. 4    document, Quality System     81
18           Procedure, "Regulatory
19           Reporting"; Bates Nos.
20           CookMDL2570_0004961 - 0004969
21
22  No. 5    Power Point, "Cook Group, From 110
23           Good to Great: Managing Cook's
24           Records and Electronic
25           Information"; Bates Nos.
26           CookMDL2570_0004207 - 0004223
27
28  No. 6    document, "Cook Legal        115
29           Department: Procedure for
30           Document Hold 25 April 2012";
31           Bates Nos. CookMDL2570_0006306
32           - 0006308
33
34  No. 7    document, "Cook Records      118
35           Retention Schedule-Part I";
36           Bates Nos. CookMDL2570_0006324
37           - 0006374
38
```

```
                                                 Page 4
 1           (WHEREUPON, the following
 2            proceedings were had off the video
 3            record:)
 4      MR. BOYERS:  This is attorney James Boyers on
 5  behalf of the Cook Defendants.
 6           The parties have agreed that this
 7  deposition will be given subject to the agreed
 8  protective order entered in Adams v. Cook Medical,
 9  Incorporated, et al., under Case No.
10  1:13-CV-13-RLY-TAB, which was entered on April 18,
11  2014, until a protective order is entered into MDL
12  2570, and at that time this deposition will be
13  subject to that protective order.
14      MR. ARBON:  That's agreed.
15      MR. BOYERS:  And a copy of this agreed
16  protective order will be added to the record of
17  this deposition.
18           (WHEREUPON, certain documents were
19            marked for identification as
20            Blanchard Deposition Exhibit No. 1,
21            Second Amended Notice of Deposition
22            and No. 2, MDL 2570 ESI Document
23            Production, January 24, 2015 and
24            No. 3, MDL 2570 ESI Document
```

Page 93

1  Live Link or something else?
2      MR. BOYERS: "That data" meaning the type?
3      MR. ARBON: Risk management.
4      MR. BOYERS: Risk assessment.
5      MR. ARBON: Yeah, risk matrix analysis.
6  BY THE WITNESS:
7      A.  I do not know which of those systems it
8  would be put in.
9  BY MR. ARBON:
10     Q.  How about recall data, does recall data
11 get stored in any particular system or area?
12     A.  Recall data would be stored in a system
13 or area.
14     Q.  Do you know which one?
15     A.  I do not.
16     Q.  Okay. Do you know if Live Link would
17 have access to that?
18     A.  Well, since I don't know which system
19 Live Link is a system, it could be.
20     Q.  With regard to Cook's e-mail system,
21 what's the operating system for the e-mail system?
22     A.  It runs Windows operating system.
23     Q.  And do you know what the particular
24 program or -- that is run?

Page 94

1      A.  Microsoft Exchange.
2      Q.  And how long has it been -- the e-mail
3  system been based on Microsoft Exchange?
4      A.  I don't have an exact date.
5      Q.  Let's do it again. What's your best
6  estimate of time that Microsoft Exchange has been
7  the basis for the e-mail system?
8      A.  2005.
9      Q.  Prior to that was there an e-mail system
10 in place?
11     A.  Prior to that there was an e-mail
12 system.
13     Q.  Do you know what it was?
14     A.  I believe it was Send Mail.
15     Q.  Was the data, whatever data was
16 preserved from that e-mail system, migrated over to
17 Microsoft Exchange or was it stored somewhere?
18     A.  I was not a part of that project. I
19 don't know.
20     Q.  Does your current system have limits on
21 mailbox size?
22     A.  The current system has record retention
23 policies applied to the mailboxes.
24     Q.  Do you know what that record retention

Page 95

1  system is -- yeah.
2      A.  Do I know what the record retention
3  system is or do I know what the policy specific to
4  e-mail?
5      Q.  Policy. Policy specific to e-mails.
6      A.  The in box is 60 days. Deleted folder
7  is 30 days. Sent items is I believe also 60 days.
8      Q.  Can a particular e-mail -- if somebody
9  wanted to preserve a specific e-mail longer than 30
10 to 60 days, how would they do that?
11     A.  They could move it into a folder into
12 Exchange. They could export the mail from
13 Exchange.
14     Q.  In other words, for example, could they
15 put it into -- I can't remember now -- TrackWise?
16     A.  I -- you could put an e-mail message in
17 TrackWise.
18     Q.  Would that be a common practice?
19     A.  That I don't know.
20     Q.  Okay. How about Live Link. Could you
21 use Live Link as a place to --
22     A.  You could put that.
23     Q.  Is that a fairly common practice?
24     A.  That I don't know.

Page 96

1      Q.  But you can create individual folders
2  within the Microsoft Exchange system?
3      A.  A user has the ability to create folders
4  within Exchange, that is correct.
5      Q.  If the user is creating folders within
6  Exchange, do you or does someone in administration
7  with Cook have the ability to go search those
8  individual folders?
9      A.  I believe Microsoft Exchange offers that
10 capability.
11     Q.  And is that something that at Cook if
12 Microsoft -- to me, if Microsoft offers it is one
13 thing. Does Cook have that -- ever utilize that
14 capability I guess?
15     A.  I believe we do.
16     Q.  If someone sends an e-mail or saves an
17 e-mail to Live Link, for example, they could also
18 take that same e-mail and place it into a separate
19 folder on Microsoft Exchange?
20     A.  A user would be capable of doing so,
21 yes.
22     Q.  So, it's possible that e-mails could be
23 saved in more than one location?
24     A.  Yes.

Page 113

1  Q. Okay. Can you explain to me what's
2  specific about the signature line?
3  A. To ensure that we have a consistent
4  appearance of the outgoing e-mails of our
5  employees, to not have extraneous information,
6  footers, fonts, graphics.
7  Q. There is what I was looking for, the
8  next page. Before I pass up on that.
9  Consistency of formatting e-mails. Does
10 that assist also if there is a need for querying or
11 locating e-mails?
12 A. I don't believe so.
13 Q. "Electronic Information Policy." We go
14 through and we see an automatic deletion --
15 A. Which page are you on?
16 Q. I'm sorry. Very next page. 4216 -- 15.
17 Looking at page 4215, we see the
18 automatic deletion of e-mails, which appears to be
19 in 2008 the policy was similar to what it is now.
20 Correct?
21 A. Correct.
22 Q. But then there is a reference, "E-mail
23 folders will be preserved." What does that mean?
24 A. The user has a capability of creating

Page 114

1  folders within Exchange that do not fall under this
2  retention schedule.
3  Q. And is that still the case under the
4  current e-mail policy?
5  A. That is correct.
6  Q. So, if a user creates an e-mail that
7  they feel they need to save to a folder, that's not
8  going to wind up with automatic -- any automatic
9  deletion?
10 A. As long as they moved it out of these
11 folders specified here.
12 Q. Perfect timing.
13 Page 4218 of Exhibit 5, sir, discusses
14 three parts of records management program.
15 A. Okay.
16 Q. Second one down, "Explains Document Hold
17 Notices and what to do when you receive one," is
18 that right?
19 A. That's what it does say, that's correct.
20 Q. And I guess my question is: Are there
21 different policies or procedures for instituting
22 holds? Are there different -- is there more than
23 one reason why a hold might be instituted on
24 documents?

Page 115

1  MR. BOYERS: I would object to the extent the
2  reason for holds is beyond the scope of his Notice.
3  But you can answer at best you can.
4  BY MR. ARBON:
5  Q. Let me come at it -- okay. If you're
6  going to answer.
7  A. We do have holds placed by different
8  groups originating.
9  Q. Okay.
10 A. From different groups.
11     (WHEREUPON, a certain document was
12     marked Blanchard Deposition Exhibit
13     No. 6, document, "Cook Legal
14     Department: Procedure for Document
15     Hold 25 April 2012"; Bates Nos.
16     CookMDL2570_0006306 - 0006308.)
17 BY MR. ARBON:
18 Q. By way of example, I'm going to hand you
19 what I marked as Exhibit 6. It's a document
20 produced in response to the production. And it's
21 MDL2570_0006306 and other pages, right?
22 A. Appears correct.
23 Q. And it's titled "Cook Legal Department
24 Procedure for Document Hold," correct?

Page 116

1  A. That is the title.
2  Q. What is the purpose of a legal -- a
3  document hold instituted by Cook legal department?
4  A. To preserve documents.
5  Q. Under the terms of the policy, are all
6  documents that could be relevant to the particular
7  purpose of the hold to be preserved?
8  A. Custodians are advised to preserve all
9  documents.
10 Q. Is there any -- under the policy for
11 holds placed by the legal department, is there any
12 provision for the deletion or removal of documents
13 from the document management system, are there any
14 exceptions if it's a relevant document?
15 A. I'll have to read this.
16 Q. Okay. Go right ahead.
17 MR. BOYERS: I just note for the record the
18 procedure that's set forth here speaks for itself.
19 BY THE WITNESS:
20 A. Okay.
21 BY MR. ARBON:
22 Q. My question is -- and you've now
23 reviewed the written policy. My question is if
24 there is a legal hold instituted or if there is a