# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br><br>MDL No. 2570 |

This Document Relates to All Actions

**Plaintiffs' Reply in Support of Motion for Additional Rule 30(b)(6) Deposition Related to Cook's Document Preservation & Destruction**

Plaintiffs respectfully submit this reply in support of their motion requesting an additional Rule 30(b)(6) deposition related to Cook's document preservation efforts [Filing No. 4424]:

## Introduction

This issue came to light given the dearth of evidence Plaintiffs received regarding interactions between Cook's sales force and Plaintiffs' implanting physicians. Through deposition we discovered two salient facts (neither of which are contested):

> (1) If a custodian is not on litigation hold, that custodian's e-mail is permanently deleted approximately 111 days after its creation.[1]
>
> (2) Cook did not place 50% of its sales force on litigation hold until February 8, 2017.[2]

---

[1] See Blanchard Depo. [Filing No. 4425-1, at ECF p. 10017-10019.]

[2] See List of Custodians on Hold [Filing No. 4425-2, at ECF p. 10020-10032.] Of the 77 sales custodians put on hold before February 8, 2017, 35 were placed on hold within the last 12 months. [*Id.*]

To be clear: until 90 days ago, the e-mail belonging to one-half of Cook's sales force was being systematically deleted. It took more than 30 months after an MDL petition was filed before Cook stopped. In fact, at the very time Cook was negotiating revisions to the defense fact sheets—arguing to this Court that it shouldn't have to produce call notes for its sales force—sales force e-mail was being destroyed.

The importance of this evidence cannot be understated: it is the only evidence to demonstrate what Cook did and did not communicate to Plaintiffs' implanting physicians. In her decision regarding Ethicon's destruction of call notes in MDL No. 2327, Magistrate Judge Eifert recognized the importance of the notes for a failure to warn claim:

> In a case in which a Plaintiff establishes a *prima facia* claim of failure to warn, Plaintiffs may be permitted to introduce evidence that Ethicon destroyed the call notes of the sales representative who provided information to Plaintiff's implanting physicians.

*In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. 502, 507 n.1 (S.D. W.V. 2014). Cook's statement that it "is still left wondering what relevant information Plaintiffs have in mind," rings hollow. [*See* Filing No. 4463, at ECF p. 10455.] Cook knows precisely what we need: evidence of its direct communications to physicians.

Placing aside Cook's repeated accusations that Plaintiffs have "grossly" misled the Court [*e.g.,* Filing No. 4463, at ECF p. 10456], are engaged in a "fishing expedition" [*e.g., id.* at 10455], and present nothing more than "pure speculation" [*id.*], its argument against sitting for one additional deposition can be distilled down to the following:

  (1) Cook's responsibility to preserve documents applied only to identifiable, filed cases;

  (2) Plaintiffs have not demonstrated bad faith sufficient to warrant an adverse inference instruction; and,

  (3) Even if Cook had preserved documents, they wouldn't have contained any relevant information.

While these arguments ignore prevailing law on the issue of MDL document destruction and the current posture of this issue, they fail to address a fundamental point: the additional deposition is necessary because Cook's 30(b)(6) witness was either unprepared or its counsel repeatedly refused to allow him to answer the most basic questions about document preservation.

  Plaintiffs are not currently asking this Court to enter a default judgment or strike Cook's affirmative defenses; we are not even asking for an adverse inference instruction. All we are asking for here is the opportunity to discover information relevant to Cook's preservation efforts. Given what we have uncovered so far, and given the gravity of this issue and its implications for every case in this MDL, Plaintiffs' current request is hardly unreasonable.

**Argument**

**1. Cook's claim that it had no responsibility to place custodians on hold until it could associate each custodian to a specific case ignores current law and the nature of multi-district litigation.**

  Using bellwether plaintiff Elizabeth Hill as an example, Cook contends that it had no reason to initiate an earlier litigation hold because it could not anticipate litigation until after Mrs. Hill filed her lawsuit. [*E.g.,* Filing No. 4463, at ECF p. 10463-10464.] Even after the lawsuit was filed, Cook still took more than a year to identify

3

the particular sales representative associated with Mrs. Hill's filter so that a hold could be placed. [*Id.*] Cook then claims there is no "authority that a medical device manufacturer must place its entire sales force on hold without regard to whether the individual might possess relevant information." [*Id.* at 10456.] Cook claims that given its "hundreds of sales employees," such a requirement would not be "proportional." [*Id.*] Placing aside that Cook only had 154 IVC filter sales employees (all of whom were put on hold once Plaintiffs raised the issue of document destruction), Cook ignores both current law and the nature of multi-district litigation.

*In re Pradaxa Prods. Liab. Litig.*, MDL No. 2385, 2013 U.S. Dist. LEXIS 173674 (S.D. Ill. Dec. 9, 2013), is on point. There, defendants argued it was appropriate to treat its duty to preserve narrowly, only placing certain employees tied to filed cases on hold. *Id.* In fact, defendants attempted *precisely* what Cook has attempted here:

> When the defendants first instigated a litigation hold in February 2012, they only intended to apply the hold to the specific sales representatives who detailed specific plaintiff's physicians. It takes time, however, to identify each plaintiff's prescribing physician and the corresponding sales representative(s). Rather than taking steps (such as placing all Pradaxa sales representatives on a litigation hold) to preserve the relevant material while these specific sales representatives were identified, the defendants did nothing.

*Id.* at *47. The Court pulled no punches in describing this methodology: "The litigation hold described by the defendants is wholly inadequate in light of the size and scope of this litigation." *Id.* at *48. The Court found: "there is no question that, as of

4

June 2012, both defendants knew that nationwide Pradaxa product liability litigation, involving hundreds of cases, was imminent." *Id.* at *3. Quickly dispelling any notion that defendants' hold practices were appropriate, the Court held:

> Thus, while defendants may have been able to justify a narrow litigation hold as to some employees prior to June 2012, they cannot justify failing to adopt a company-wide litigation hold as of June 2012 – when they knew that nationwide Pradaxa litigation was imminent.

*Id.* at *4. The relevant point in time is not when Cook knew that Mrs. Hill (or any other individual plaintiff) had filed a lawsuit; it's when Cook knew that nationwide litigation involving its IVC filters was imminent.[3]

The *Pradaxa* decision makes sense in the context of multi-district litigation. Imagine the following scenario:

- Elizabeth, a 60-year old woman, is implanted with Medical Device A in 2016, which catastrophically fails in early 2017.

- By 2012, the manufacturer was facing 500 lawsuits over Medical Device A, each of which involved the same catastrophic failure.

Does Cook really believe that the manufacturer could continue to destroy documents up to the date Elizabeth files her lawsuit? Does Cook truly believe that the manufacturer would be immune from a spoliation claim because it did not know *Elizabeth* was going to file a lawsuit until 2017? Of course not. Such a result would be absurd, and

---

[3] As is explained below, we tried repeatedly throughout the Rule 30(b)(6) depositions to discover the point in time when Cook should have known that nationwide litigation was imminent. At each turn, we were met with instructions to the witness not to answer.

5

demonstrates precisely why the *Pradaxa* court held that the duty to preserve company-wide arises at the moment a manufacturer knows that nationwide litigation is imminent.

Cook cannot avoid a spoliation claim by attempting to treat each individual plaintiff in this MDL as an isolated filing. This is not a one-off products liability suit; Cook is facing nearly 2,000 similar suits nationwide. When Plaintiffs ultimately move for sanctions on the spoliation issue, the trigger date for document preservation will not be a moving target, shifting for each individual plaintiff; the trigger date will be the date Cook knew or should have reasonably anticipated nationwide litigation over its IVC filters.

**2. Cook's claim that no more discovery should be had because Plaintiffs have not conclusively established "bad faith" ignores the source of this missing evidence: Cook's lack of preparation and its refusal to answer deposition questions.**

In an attempt to avoid an additional deposition, Cook contends Plaintiffs have not conclusively established that documents were destroyed in "bad faith." [*See, e.g.,* Filing No. 4463, ECF p. 10457-10460.] Absent from this contention though is the source of the evidentiary shortcoming: Cook was not prepared to answer even the most basic questions regarding evidence preservation and counsel repeatedly instructed its witness not to answer questions.[4]

---

[4] To be sure, Plaintiffs have proffered evidence of bad faith. For example, the length of time between when a party knows of potential litigation and when that party implements a document hold can establish bad faith. *See, e.g., Major Tours v. Colorel*, Civil No. 05-3091, 2009 U.S. Dist. LEXIS 68128, at **10-12 (D.N.J. Aug. 4, 2009). Here we know that half of Cook's sales force was not put on hold until this year, even though this MDL was formed in 2014 and Cook represented previously that it was on notice of IVC filter litigation in 2010. This three to seven-year delay is evidence of bad faith.

To support their forthcoming sanctions request, Plaintiffs need to first establish when Cook knew or should have known that IVC filter litigation was imminent. *E.g., Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008). Cook's witness, however, was not prepared to provide the following information:

- The date Cook first reasonably anticipated IVC filter litigation. [Hunt Depo. 89:13-19.][5]

- The *year* Cook first reasonably anticipated IVC filter litigation. [Hunt Depo. 89:21-90:1.]

- The date Cook believed it should have implemented a company-wide IVC filter hold. [Hunt Depo. 131:23-132:6.]

- Why William Cook Europe asked for a list of ongoing IVC filter product liability claims on January 25, 2012. [Hunt Depo. 134:21-135:4.]

- Whether outside counsel was retained, whether a litigation hold was implemented, or even whether a lawsuit was filed for 8 IVC filter claims William Cook Europe identified on January 25, 2012. [Hunt Depo. 142:6-160:3.][6]

- How many IVC filter lawsuits were filed in either federal or state courts in 2010, 2011, 2012, or 2012. [Hunt Depo. 181:5-182:10.]

Despite knowing that the purpose of the deposition was to explore Cook's document preservation efforts (which necessarily includes when Cook knew or should have known it was facing nationwide IVC filter litigation), the witness was unprepared to provide even the most basic information.

Lack of preparation was not the only impediment to Plaintiffs' efforts; the witness was repeatedly instructed not to answer questions bearing directly upon what Cook did to discharge its duty to preserve evidence. Remember: Cook claims that it

---

[5] Relevant portions of Mr. Hunt's deposition are attached to this brief as Exhibit A.

[6] Two of these claims were settled for cash and one involved a patient death.

7

had no way to identify individual sales representatives without information from

*plaintiffs.*

> Q. What did Cook do to identify the custodians with potentially relevant information related to Mrs. Hill's lawsuit?
>
> MS. PIERSON: Object that it calls for work product information. I instruct the witness not to answer.

[Hunt Depo. 195:12-17.]

> Q. On what date did Cook first attempt to make that determination?
>
> MS. PIERSON: Object that it calls for work product information. I'm instructing the witness not to answer.
>
> MR. WILLIAMS: Just the date? That you first – that Cook first tried to look for responsive information related to Mrs. Hill's lawsuit?
>
> MS. PIERSON: Yes.

[Hunt Depo. 195:22-196:7.] The instructions were not limited to Mrs. Hill's lawsuit, and covered even questions regarding how Cook went about identifying relevant custodians generally:

> Q. So, how would you go about determining if they had relevant information as it comes to a – as it comes to IVC or as it pertains to IVC filters?
>
> MS. PIERSON: I would object to the question. Instruct the witness not to answer in that it calls for information subject to the work product protection.

[Hunt Depo. 132:20-133:3.]

Cook can't have it both ways — say we can't get additional discovery because we don't have evidence of bad faith when the reason we don't lies with counsel's instruction not to provide it or the witness's lack of preparation. We know evidence is gone; we need to know when, why, and how.

**3. The destroyed evidence was relevant.**

Cook claims no harm, no foul: the missing evidence would not have yielded anything beneficial to Plaintiffs' cases. [*See* Filing No. 4463, at ECF p. 10456-10457.] Try as it might, Cook cannot avoid the testimony of sales representative Courtney Whitelock:

> Q. Let me ask you about call notes. You know what call notes are?
>
> A. Yes.
>
> Q. What are they?
>
> A. If I had an interaction with a physician, I would usually send an e-mail just letting my boss know I met with such and such and, you know, detail what happened during the meeting.

[Whitelock Depo. 40:2-9.][7] Ms. Whitelock then expounded:

> Q. Okay. But you do keep call notes for what you've characterized as serious things; right?
>
> A. It would be in an e-mail form.
>
> Q. All right. The reason I'm asking you is because Cook keeps telling us there are no call notes, nobody at Cook does call notes, which seems to me to be wrong. Would you agree with me?
>
> A. Again, it would be in an e-mail and all the e-mails have been provided.

---

[7] Relevant portions of Ms. Whitelock's deposition is attached to this brief as Exhibit B.

[Whitelock Depo. 42:17-43:1 (objection omitted).] Finally, Ms. Whitelock explained that she would send her call notes to her supervisor:

> Q. Okay. Now, when you say you did your call notes by e-mail, who did you send that e-mail to?
>
> A. That would have been to my boss.

[Whitelock Depo. 45:4-6.] She testified that she would "usually" describe her meetings with physicians in an e-mail to her supervisor. Ms. Whitelock simply would not have continued to testify that her call notes were memorialized in e-mails to her boss if those call notes (as Cook suggests) did not exist.

Cook points to a later portion of her deposition where Ms. Whitelock changes course and disavows that she recorded call notes by e-mail. [*See* Filing No. 4463, at ECF p. 10457.] What Cook does not mention is that this later testimony came after a one-hour lunch break with counsel. [*Compare* Whitelock Depo. 113:5-10 (one-hour lunch break) *with* Whitelock Depo. 115:2-10 (testifying she doesn't "recall" doing call notes).] This testimony does not erase what Ms. Whitelock stated under oath before consultation with her lawyer.[8]

As much as Cook attempts to erase Ms. Whitelock's call notes testimony with creative errata sheets coupled with bold, underlined, and italicized typography in its brief [*see* Filing No. 4463, at ECF p. 10457,] it cannot undo what was said. Ms. Whitelock testified that her call notes were sent by e-mail. Yet, Cook has not produced

---

[8] Casting further doubt on the credibility of Ms. Whitelock's change of heart is the fact that after her deposition, counsel used the errata sheet in an attempt to change Ms. Whitelock's testimony that she "usually" would send her call notes to her supervisor to she "could" do so. [See Whitlock errata, Ex. C.]

a single e-mail containing call notes. These notes are the only evidence that exist of Cook's on-the-ground communication with the implanting physicians, which are relevant to Plaintiffs' failure to warn claims. *See, e.g., In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, 299 F.R.D. at 507 n.1; *id.* at 526.

The *Pradaxa* court provided a trenchant explanation as to the importance of sales representative call notes:

> An example leaps to the fore, what if a sales representative has in his notes that he made some fraudulent representation about Pradaxa to a physician. Further, what if the rep said "as directed by so and so, I told Dr. X this and that" which is known by all to be patently false? Obviously, the training materials alone are not relevant and clearly the Court does not suggest that its hypothetical is accurate. However, if it were to prove true, the defendants cannot deny such material is both relevant and discoverable.

*In re Pradaxa Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 173674, *52.[9] The destroyed evidence was clearly relevant to the claims in this MDL; Cook's protestations to the contrary should be disregarded.

## Conclusion

Plaintiffs have demonstrated that crucial evidence existed, is gone, and can't be recovered. Our attempts to uncover the information necessary to seek for this missing evidence have been thwarted at every turn. At this point, we are asking for nothing more than an additional deposition; a deposition unhampered by failures to prepare and refusals to answer.

---

[9] In this order, Judge Herndon sanctioned the defendants $931,500.00. *In re Pradaxa Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 173674, **71-72.

11

Dated: May 5, 2017

Respectfully submitted,

*/s/ Joseph N. Williams*
Joseph N. Williams, Atty. No. 25874-49
RILEY WILLIAMS & PIATT, LLC
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317) 633-5270
Facsimile: (317) 426-3348
Email: jwilliams@rwp-law.com
*Liaison Counsel to Plaintiffs Steering Committee and on behalf of Plaintiffs Steering Committee*

Michael W. Heaviside, Esq.
HEAVISIDE REED ZAIC, A LAW CORPORATION
910 17th Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 223-1993
mheaviside@hrzlaw.com

Ben C. Martin, Esq.
THE LAW OFFICES OF BEN C. MARTIN
3710 Rawlins Street, Suite 1230
Dallas, TX  75219
Telephone: (214) 761-6614
Facsimile: (214) 744-7590
bmartin@bencmartin.com

David P. Matthews, Esq.
MATTHEWS AND ASSOCIATES
2509 Sackett St.
Houston, TX  77098
Telephone: (713) 522-5250
Facsimile: (713) 535-7184
dmatthews@thematthewslawfirm.com

*Plaintiffs' Co-Lead Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 5, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

Notice will be served on the parties listed below by first class U.S. Mail, postage prepaid:

> Anthony James Urban
> LAW OFFICES OF ANTHONY URBAN, P.C.
> 474 N. Centre Street, 3rd Floor
> Pottsville, PA 17901
>
> Arthur F Hoge , III
> MEE MEE HOGE & EPPERSON PLLP
> 1900 NW Expressway, Suite 1400
> Oklahoma City, OK 73118
>
> Brian J. Urban
> LAW OFFICES OF ANTHONY URBAN, P.C.
> 474 N. Centre Street, 3rd Floor
> Pottsville, PA 17901
>
> Carrie R. Capouellez
> LOPEZ MCHUGH LLP
> 214 Flynn Avenue
> Moorestown, NJ 08057
>
> Caleb Hoff Didriksen , III
> Carl A Woods , III
> DIDRIKSEN LAW FIRM
> 3114 Canal Street
> New Orleans, LA 70119
>
> Cliff W. Marcek
> CLIFF W. MARCEK, P.C.
> 700 S. Third St.
> Las Vegas, NV 89101

Cory Holley Driggers
MORRIS CARY ANDREWS TALMADGE & DRIGGERS
P.O. Box 1649
Dothan, AL 36302

Craig D. Henderson
THE SNAPKA LAW FIRM
P.O. Box 23017
Corpus Christi, TX 78403

Curtis Hoke
THE MILLER FIRM LLC
The Sherman Building
108 Railroad Avenue
Orange, VA 22960

Daniel Snyder
Attorney at Law
1000 S W Broadway Suite 1500
Portland, OR 97205

David L. Grebel
NIEMEYER AND GREBEL
10 S. Broadway, Suite 1125
St. Louis, MO 63102

Elizabeth Alice Mote
KITRICK, LEWIS & HARRIS, CO., L.P.A.
455 Hutchinson Avenue, Suite 100
Columbus, OH 43235-8630

Heather H. Harrison
FAEGRE BAKER DANIELS LLP
311 S. Wacker Drive, Suite 4400
Chicago, IL 60606

John Cornew
409 E Maple Ave
Lindenwold, NJ 08021

Jack Edward Urquhart
THE SNAPKA LAW FIRM
606 N. Carancahua, Suite 1511
Corpus Christi, TX 78401

James David Martin
COPELAND FRANCO SCREWS & GILL PA
PO Box 347
Montgomery, AL 36101-0347

James R. Olson
OLSON, CANNON, GORMLEY, ANGULO & STOBERSKI
9950 West Cheyenne Avenue
Las Vegas, NV 89129-

James W. Childress
CHILDRESS AND AHLHEIM, LLC
1010 Market St., Suite 500
St. Louis, MO 63101

Janet Ward Black
WARD BLACK LAW
208 West Wendover Avenue
Greensboro, NC 27401

Jay Harris
HARRIS, RENY & TORZEWSKI
3rd Floor
Two Maritime Plaza
Toledo, OH 43604

Jennifer P Henry
THOMPSON & KNIGHT LLP
801 Cherry Street, Unit #1
Fort Worth, TX 76107

Joseph A. Napiltonia
LAW OFFICE OF JOE NAPILTONIA
213 3rd Avenue North
Franklin, TN 37064

Joseph G. Sauder
CHIMICLES & TIKELLIS LLP
361 West Lancaster Avenue
Haverford, PA 19041

Justin Kyle Brackett
TIM MOORE, ATTORNEY AT LAW, P.A.
305 East King St.
Kings Mountain, NC 28086

Kahla R Hurley
MEE MEE HOGE & EPPERSON PLLP
1900 NW Expressway, Suite 1400
Oklahoma City, OK 73118

Kimberly Lambert Adams
LEVIN PAPANTONIO THOMAS ETC PA - PENSACOLA FL
316 S Baylen Street, Suite 400
Pensacola, FL 32502

Marian S. Rosen
ROSEN & SPEARS
5075 Westheimer, Suite 760
Houston, TX 77056

Mark Mathew Kitrick
KITRICK, LEWIS & HARRIS CO LPA
445 Hutchinson Ave., Suite 100
Columbus, OH 43235

Mark R. Niemeyer
NIEMEYER AND GREBEL
10 S. Broadway, Suite 1125
St. Louis, MO 63102

Max E. Corrick
OLSON, CANNON, GORMLEY & DESRUISSEAUX
9950 West Cheyenne Avenue
Las Vegas, NV 89129

Michael G. Glass
RAPPAPORT GLASS GREENE & LEVINE LLP
1355 Motor Parkway
Hauppauge, NY 11749

Neal Lewis Moskow
URY & MOSKOW
883 Black Rock Turnpike
Fairfield, CT 06825

Peter Andrew Miller
MILLER LEGAL LLC
175 S Pantops Drive
Third Floor
Charlottesville, VA 22911

Peter C Wetherall
WETHERALL GROUP, LTD.
9345 W. Sunset Road Suite 100
Las Vegas, NV 89148

Philip Sholtz
THE DRISCOLL FIRM, P.C.
211 N. Broadway 40th Floor
St. Louis, MO 63102

Robert David Segall
COPELAND FRANCO SCREWS & GILL
PO Box 347
Montgomery, AL 36107-0347

Scott Kehlenbrink
CHILDRESS AND AHLHEIM, LLC
1010 Market St. Suite 500
St. Louis, MO 63101


W. Bryan Smith
MORGAN & MORGAN, LLC
2600 One Commerce Square
Memphis, TN 38103


                                          */s/ Joseph N. Williams*
                                          Joseph N. Williams