**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB MDL No. 2570 |

This Document Relates to All Actions

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR PROTECTIVE ORDER
BARRING PROPOSED DEPOSITION OF KEM HAWKINS**

Plaintiffs should be permitted to depose Kem Hawkins, the former President of Cook Group Inc., because defendants Cook Incorporated, Cook Medical LLC and William Cook Europe ApS (collectively "Cook" or Defendants) have failed to meet their burden of demonstrating good cause for the entry of a protective order. The law regarding "apex depositions" is inapposite because Mr. Hawkins is retired, and, more importantly, because that doctrine has little relevance in an MDL where the claims of thousands of plaintiffs are at issue. In any event, documents produced in this litigation and deposition testimony of Cook personnel demonstrate that Mr. Hawkins has unique personal knowledge regarding multiple key topics in this litigation.  Furthermore, the timing of the deposition, to be taken near the end of the discovery period, weighs in favor of allowing it to proceed.

**FACTUAL BACKGROUND**

Kem Hawkins was the President of Defendant Cook Incorporated from 2001 to 2013,[1] a critical time period in this case, during which both the Gunther Tulip and Celect filters were

---

[1] Mr. Hawkins was also President of Cook Group Incorporated from 2001 through July 2015 and President of Cook Medical Incorporated from 2003 through November 2013.  Exhibit A to Defs.' Mem. of Law, Doc. No. 4462-1, Declaration of Kem Hawkins ("Hawkins Decl.") ¶¶ 2-3.

manufactured and sold in the United States.  Hawkins Decl. ¶¶ 2-4.  Defendants concede that Mr. Hawkins was involved in high-level decisions concerning these filters.   Hawkins Decl. ¶ 4; Defs.' Mem. of Law, Doc. No. 4462, at 2.

Cook claims that Mr. Hawkins has no unique or superior knowledge, but this is belied by deposition testimony and documents produced to date.  For example, in its memorandum of law, Cook asserts that "Mr. Hawkins has no unique personal knowledge about company history or structure," Defs.' Mem. of Law at 7, but the 30(b)(6) deponent on this topic identified Mr. Hawkins as the person who would be able to answer several questions he was unable to answer. Ex. 1, Deposition of Mark A. Breedlove (Jan. 16, 2015), at 47:21-23; 62:4-11; 90:7-15.

Cook complains that Plaintiffs have not identified what information they are after, but Plaintiffs explained that they want to ask questions regarding the documents sent to and from Mr. Hawkins regarding the IVC filters at issue in this case.   Those documents reveal that Mr. Hawkins, in his role as the leader of Cook, was intimately involved in the decision-making process and strategy regarding critical issues in this case, including decisions regarding the testing, design, marketing and production of the Gunther Tulip and Celect filters.  For example:

- Mr. Hawkins gave directives to his subordinates regarding the Celect and Gunther Tulip filter sales and marketing strategy.  *E.g.*, Ex. 2, CookMDL2570_0694848 (Mr. Hawkins wrote: ███████████████████████████████████████████ ████████████████████████████ .

- Mr. Hawkins was present at key meetings to discuss regulatory strategies and the need (or lack thereof) for clinical testing of the Celect filter for marketing clearance, and followed up with directives to his subordinates after these meetings.  *E.g.*, Ex. 3, CookMDL2570_0696036 (Mr. Hawkins directed: ██████████████ ███████████ in an email with the subject line ████████████████ ████████████████████████████ ); Ex. 4, CookMDL2570_0695962 (Mr. Hawkins wrote in a memo to his subordinates: ████████████████████████████████████████████ ███████████████████████████ ███████████████████████████████ ██████ ).  Mr. Hawkins sent these communications the day of and the day after an IVC Filter Executive Committee meeting that he attended where the discussion

included ████████████████████████████████████████████████
██████████████████████████████████████████████████████ Ex. 5,
CookMDL2570_1274449.

- Mr. Hawkins was being kept abreast of developments regarding adverse events and was involved in damage control related to Cook's filters. *E.g.*, Ex. 6, CookMDL2570_0427903 (Mr. Hawkins wrote in response to complaints from doctors regarding Celect's tendency to perforate the IVC: ██████████████
  ████████████████████████████. *See also* Ex. 7, CookMDL2570_0300302–03 (Mr. Hawkins was sent ████████████████████████████████████████████████████
  ████████████); Ex. 8, CookMDL2570_0850270–71 (Mr. Hawkins requested, was sent, and forwarded to others ██████████████████████████████████████
  ████████████████████████████████.

- Mr. Hawkins provided direction to the engineering and design team. *E.g.*, Ex. 9, CookMDL2570_0832537 (translated PowerPoint with slide stating: ████████████
  ██████") Mr. Hawkins was aware of problems with the design of the Celect and the need for a redesign for, in his words: ████████████████████████████████
  ██████████ Ex. 10, CookMDL2570_0835644.

- Mr. Hawkins directed his subordinates regarding design, marketing and sales strategies relating to the Gunther Tulip and Celect filters.  For example, he wrote to Rob Lyles: ████████████████████████████████████████████████████
  ████████████████████████████████████████████████████████████████
  ████████████████████████████████████████████████████████████████
  ████████████████████████████████████████████████████████████████
  ██████████████████████████████████████████████████████ Ex. 11,
  CookMDL2570_0433348.

While lower-level employees may be able to answer questions about what happened regarding the subjects discussed above, Mr. Hawkins, as a hands-on President of the company, is in the best position to answer questions regarding the strategic thinking behind *why* these decisions were made.

Cook argues that Plaintiffs' statement that they plan to question Mr. Hawkins about documents not yet produced is "whole speculative."  Defs.' Mem. of Law at 8.  Unfortunately, Plaintiffs are at a disadvantage here.  It appears that Mr. Hawkins communicated on a regular

basis via his person *aol.com* account.  *E.g.*, Exs. 2, 3, 6, 7, 8, 10, 11.  Plaintiffs have served a subpoena on Mr. Hawkins for production of documents in part because they suspect that this account was not searched for responsive documents.  Plaintiffs seek to depose Mr. Hawkins on documents he sent or received, or is mentioned in.  As President of the company, and based on the documents produced to date, it seems reasonable to assume that Mr. Hawkins does in fact have unique and superior knowledge regarding such documents.

## ARGUMENT

### I.    COOK HAS THE BURDEN OF DEMONSTRATING GOOD CAUSE.

Cook, as the party seeking a protective order to prevent Kem Hawkins' deposition, has the burden "to demonstrate that good cause exists for the entry of the order by making a 'particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'"  *In re Pradaxa Prod. Liab. Litig.*, No. 3:12-md-02385-DRH-SCW, 2014 WL 257566, at *1 (S.D. Ill. Jan. 23, 2014) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)).  As this court has previously held, this burden does *not* shift to Plaintiffs just because Mr. Hawkins is a former corporate executive.  *Meharg v. I-Flow Corp.*, No. 1:08-cv-0184-DFH-TAB, 2009 WL 1404603, at *1 (S.D. Ind. May 15, 2009) (noting that "I-Flow assumes because Earhart is President and Chief Executive Officer the burden automatically shifts to Plaintiffs to demonstrate that a deposition of Earhart is justified," but holding that "the burden remains on I-Flow to demonstrate that a protective order is warranted").  *See also Hunt v. Continental Cas. Co.*, No. 13-cv-05966-HSG, 2015 WL 1518067, at *1 n.1 (N.D. Ca. April 3, 2015) ("the burden remains on the party seeking a protective order when the 'apex doctrine' is asserted as a basis for limiting discovery.").

Cook invokes the "apex doctrine" in an attempt to shield Mr. Hawkins from deposition, but "[t]here is no *per se* rule prohibiting the depositions of high-ranking corporate executives."

*In re Pradaxa Prod. Liab. Litig.*, 2014 WL 257566, at *1.   Rather, "[b]efore restricting discovery, the court should consider 'the totality of the circumstances, weighing the value of the material sought against the burden of providing it,' and taking into account society's interest in furthering 'the truthseeking function' in the particular case before the court." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676 (7th Cir. 2002) (quoting *Rowlin v. Alabama Dep't of Pub. Safety*, 200 F.R.D. 459, 461 (M.D. Ala. 2001)).   The totality of the circumstances here weighs in favor of allowing Mr. Hawkins' deposition to proceed.

## II.   THE APEX DOCTRINE DOES NOT APPLY.

In considering the totality of the circumstances, this court has been unwilling to apply the apex doctrine in the context of an MDL because the very nature of MDLs "discourage numerous, repetitive, harassing or abusive depositions." *In re Bridgestone/Firestone, Inc., Tires Prod. Liab. Litig.*, 205 F.R.D. 535, 536 (S.D. Ind. 2002) (allowing plaintiffs in an MDL to depose William Clay Ford, Jr., Chairman of the Board of Ford Motor Company). "Because an MDL consolidates discovery for a large number of cases, the concerns underlying the apex doctrine are lessened in the MDL context." *In re Lipitor Marketing, Sales Practices and Prod. Liab. Litig.*, MDL No. 2:14-mn-02502-RMG, 2014 WL 12621613, at *2 (D. S.C. Nov. 13, 2014) (allowing deposition of former Chief Medical Officer, noting he "will be deposed once for use in the approximately 1,300 cases involving approximately 4,000 plaintiffs in this MDL").   *See also In re Mentor Corp. Obtape Transobturator Sling Prod. Liab. Litig.*, No. 4:08-MD-2004(CDL), 2009 WL 4730321, at *2 (M.D. Ga. Dec. 1, 2009) (allowing depositions of defendant's World Wide President and of its founder and CEO in part because the depositions "are not for purposes of a single personal injury case – they are to be used in every case pending in this MDL

proceeding.").[2]   In the instant case, Plaintiffs seek to depose Mr. Hawkins one time on behalf of

the 2,180 plaintiffs whose cases have been filed to date, a proposal that is far from repetitive,

harassing or abusive.

Independently, the apex doctrine does not apply to Mr. Hawkins because he is retired,[3]

and a deposition will therefore not interfere with any of his corporate responsibilities.  *See*

*Illinois Agric. Assoc. v. Rural Media Group, Inc.*, No. 13-1220, 2014 WL 1378074, at *2 (C.D.

Ill. April 7, 2014) (noting that status of proposed deponent as *former* President was relevant to

court's consideration of totality of circumstances and allowing deposition to proceed); *Minter v.*

*Wells Fargo Bank*, 258 F.R.D. 118, 126 (D. Md. 2009) (allowing deposition of Chairman and

CEO in part because he "asserted that he is no longer a busy corporate executive, but works a

limited schedule").

### III.   EVEN IF THE APEX DOCTRINE APPLIES, COOK HAS FAILED TO DEMONSTRATE UNDUE BURDEN OR EXPENSE.

Cook points to no *specific* undue burden or expense that a deposition of Kem Hawkins

would create. *In re Pradaxa Prod. Liab. Litig.*, 2014 WL 257566, at *1 (Cook has burden "to

demonstrate that good cause exists for the entry of the order by making a 'particular and specific

demonstration of fact, as distinguished from stereotyped and conclusory statements'") (quoting

*Gulf Oil*, 452 U.S. at 102 n.16).  Cook repeatedly asserts that Mr. Hawkins' deposition "will

---

[2] In contrast, most if not all of the cases relied upon by Cook involve an *individual* personal injury, employment or contract dispute as opposed to a consolidated or mass proceeding like an MDL.  *E.g.*, *Patterson*, 281 F.3d at 682 (individual employment case with "relatively small amount in controversy"); *Thomas v. IBM*, 48 F.3d 478 (10th Cir. 1995) (individual employment case); *Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979) (individual negligence case); *Reif v. CNA*, 248 F.R.D. 448, 451 (E.D. Pa. 2008) (individual employment case); *Roman v. Cumberland Ins. Group*, No. 07-CV-1201, 2007 WL 4893479 (E.D. Pa. Oct. 26, 2007) (individual insurance dispute); *Evans v. Allstate Ins. Co.*, 216 F.R.D. 515 (N.D. Ok. 2003) (individual insurance dispute); *Liberty Mutual Ins. Co. v. Superior Court*, 10 Cal. App. 4th 1282 (Cal. App. 1st Dist. 1992) (individual workers compensation dispute); *Baine v. General Motors*, 141 F.R.D. 332 (M.D. Ala. 1991) (individual personal injury case); *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364 (D.R.I. 1985) (individual personal injury case).
[3] Mr. Hawkins retired in July 2015.  Hawkins Decl. ¶ 3.

serve only to harass the witness and the Defendants and waste the parties' time and resources." Defs.' Mem. of Law at 1, 4, 14-15 & 17. But, as this court has noted, general allegations such as these regarding the burden of depositions of executives are insufficient to establish good cause for a protective order. *Meharg*, 2009 WL 1404603, at \*3. Rather, Cook is required to offer "evidence or explanation as to why the burden is 'unacceptable' in this situation." *Id. See also Illinois Agric. Assoc.*, 2014 WL 1378074, at \*2 (opponent of executive's deposition is required to explain *why* expense of former president's deposition is too great). Without undue burden or expense, there is no good cause for a protective order.

While there is an absence of undue burden, there is benefit to Plaintiffs in taking Mr. Hawkins' deposition because the documents produced in this litigation demonstrate that Mr. Hawkins possesses unique, personal knowledge relevant to this litigation. These documents show that Mr. Hawkins was involved in and at times directed decisions central to this litigation. In contrast, the apex doctrine is intended to prevent depositions that are noticed for the *sole* reason that the proposed deponent is the CEO or top official of the defendant. *Minter*, 258 F.R.D. at 126–27 ("the apex deposition rule is bottomed on the apex executive lacking *any* knowledge of relevant facts. The rule is aimed to prevent the high level official deposition that is sought simply because he is the CEO or agency head ...".).[4]

Furthermore, the timing of the proposed deposition of Mr. Hawkins weighs in favor of allowing the deposition to proceed. *See Kelley v. Microsoft Corp.*, No. C07-0475MJP, 2008 WL 5000278, at \*2 (W.D. Wa. Nov. 21, 2008). In contrast to the discovery status in many of the

---

[4] Several cases relied upon by Defendants are inapposite for this reason. *E.g.*, *Murillo v. Kohl's Corp.*, No. 16-CV-196-JPS, 2016 WL 6090862, at \*4 (declining to allow deposition of executive where "[h]er name is not mentioned once in any discovery response or document produced by the defendants in this case"); *Liberty Mutual Ins. Co.*, 10 Cal. App. 4th at 1286 (individual workers compensation dispute declining to allow the deposition of CEO where his *only* connection to the lawsuit was two letters sent to him by plaintiffs' counsel, which he never actually read).

cases cited by Cook,[5] Plaintiffs here have nearly completed the depositions of lower level employees and officers, and most discovery should be complete by the time of Mr. Hawkins' deposition. This will allow Plaintiffs to focus their questioning in a manner to avoid any unreasonable duplication. *Id.* (allowing deposition of Microsoft's CEO Steven Ballmer in part based on similar timing).

## CONCLUSION

In summary, the totality of the circumstances weigh in favor of allowing the deposition of Kem Hawkins to proceed. The deposition will further truth-seeking by allowing Plaintiffs to delve into Mr. Hawkins' knowledge of key issues in this case. The deposition will be efficient and create minimal burden and expense because it is being taken in an MDL, on behalf of over two thousand plaintiffs. Because Mr. Hawkins is retired, his deposition will not interfere with a busy executive's schedule or with the business of Cook. In contrast, Cook has failed to demonstrate any *specific* undue burden or expense that a deposition of Kem Hawkins would create, and, therefore, has failed to demonstrate good cause for a protective order. Plaintiffs respectfully request the Court to deny Defendants' motion for protective order.

Dated: May 11, 2017.                    Respectfully Submitted,

                                        */s/ Ben C. Martin*
                                        Ben C. Martin, Esq.
                                        The Law Office of Ben C. Martin
                                        3219 McKinney Avenue, Suite 100
                                        Dallas, TX 75204
                                        Telephone: (214) 761-6614
                                        Facsimile: (214) 744-7590 Email:
                                        bmartin@bencmartin.com
                                        *Plaintiffs' Co-Lead Counsel*

---

[5] *E.g., Brown v. Branch Banking & Trust Co., Inc.*, No. 13-81192-CIV, 2014 WL 235455, at *3 (S.D. Fla. Jan. 22, 2014 (plaintiffs had yet to take any discovery); *Reif*, 248 F.R.D. at 451 (plaintiff had not yet deposed corporate designee); *Baine*, 141 F.R.D. at 335 (depositions of corporate representative and lower level employees had not yet taken place).

*/s/ Joseph N. Williams*
Joseph N. Williams, Atty. No. 25874-49
Riley Williams & Piatt, LLC
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317) 633-5270
Facsimile: (317) 426-3348
Email: jwilliams@rwp-law.com
*Liaison Counsel to Plaintiffs Steering Committee*
*and on behalf of Plaintiffs Steering Committee*


*/s/ Michael W. Heaviside*
Michael W. Heaviside, Esq.
Heaviside Reed Zaic, A Law Corporation
910 17th Street NW, Suite 800
Washington, DC 20006
Telephone: (202) 233-1993
Email: mheaviside@hrzlaw.com
*Plaintiffs' Co-Lead Counsel*


*/s/ David P. Matthews*
David P. Matthews, Esq.
Matthew and Associates
2509 Sackett St.
Houston, TX 77098
Telephone: (713) 522-5250
Facsimile: (713) 535-7184
Email: dmatthews@thematthewslawfirm.com
*Plaintiffs' Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

Notice will be served on the parties listed below by first class U.S. Mail, postage prepaid:

Anthony J. Urban
Brian J. Urban
LAW OFFICES OF ANTHONY URBAN, P.C.
474 N. Centre Street, 3rd Floor
Pottsville, PA 17901

Carrie R. Capouellez
LOPEZ McHUGH LLP
214 Flynn Avenue
Moorestown, NJ 08057

Caleb H. Didriksen, III
Carl A Woods, III
DIDRIKSEN LAW FIRM, PLC
3114 Canal Street
New Orleans, LA 70119

Cliff W. Marcek
CLIFF W. MARCEK, P.C.
700 S. Third St.
Las Vegas, NV 89101

Cory H. Driggers
MORRIS CARY ANDREWS TALMADGE & DRIGGERS
P.O. Box 1649
Dothan, AL 36302

Craig D. Henderson
THE SNAPKA LAW FIRM
P.O. Box 23017
Corpus Christi, TX 78403

Curtis Hoke
THE MILLER FIRM LLC
The Sherman Building
108 Railroad Avenue
Orange, VA 22960

David C. Anderson
Anderson Law
711 Van Ness Avenue, Suite 220
San Francisco, CA 94102

Jack E. Urquhart
THE SNAPKA LAW FIRM
606 N. Carancahua, Suite 1511
Corpus Christi, TX 78401

Jay Harris
HARRIS, RENY & TORZEWSKI
Two Maritime Plaza, 3rd Floor
Toledo, OH 43604

Joseph A. Napiltonia
LAW OFFICE OF JOE NAPILTONIA
213 3rd Avenue North
Franklin, TN 37064

Joseph G. Sauder
CHIMICLES & TIKELLIS LLP
361 West Lancaster Avenue
Haverford, PA 19041

Kimberly L. Adams
LEVIN PAPANTONIO THOMAS ETC PA - PENSACOLA FL
316 S BAYLEN ST STE 400
PENSACOLA, FL 32502

Marian S. Rosen
ROSEN & SPEARS
5075 Westheimer, Suite 760
Houston, TX 77056

Mark R. Niemeyer
NIEMEYER AND GREBEL
10 S. Broadway, Suite 1125
St. Louis, MO 63102

Michael G. Glass
RAPPAPORT GLASS GREENE & LEVINE LLP
1355 Motor Parkway
Hauppauge, NY 11749

11

Neal L. Moskow
URY & MOSKOW
883 Black Rock Turnpike
Fairfield, CT 06825

Peter C. Wetherall
WETHERALL GROUP, LTD.
9345 W. Sunset Road
Suite 100
Las Vegas, NV 89148

Philip Sholtz
THE DRISCOLL FIRM, P.C.
211 N. Broadway
40th Floor
St. Louis, MO 63102

W. Bryan Smith
MORGAN & MORGAN, LLC
2600 One Commerce Square
Memphis, TN 38103

Wilnar J. Julmiste
ANDERSON GLENN LLP - BOCA RATON FL
2650 North Military Trial, Suite 430
Boca Raton, FL  33431

Heather H. Harrison
FAEGRE BAKER DANIELS LLP
311 S. Wacker Drive
Suite 4400
Chicago, IL 60606

Jennifer P Henry
THOMPSON & KNIGHT LLP
801 Cherry Street, Unit #1
Fort Worth, TX 76107

*/s/ Ben C. Martin*
Ben C. Martin