| | |
|---|---|
| **From:** | Douglas B. King |
| **To:** | amy_holtz@insd.uscourts.gov |
| **Cc:** | Ben Martin; Mheaviside@hrzlaw.com; David Matthews (dmatthews@thematthewslawfirm.com); Matt Schultz; jwilliams@rwp-law.com; "andrea.pierson@faegrebd.com"; John.Schlafer@faegrebd.com; CookIVCFMDL |
| **Subject:** | Cook Defendants" response to J. Williams 1/31/17 email re 2/7/17 DiscoveryConference |
| **Date:** | Monday, February 6, 2017 10:08:50 AM |
| **Importance:** | High |

Dear Amy,

Please thank Magistrate Judge Baker for giving us the opportunity to respond in writing to Joe Williams' email of 1/31/17, 3:03 PM, setting forth the plaintiffs' agenda for Tuesday's Discovery Conference.

    1.    **Histology slides for VCA 1, VCA 2, and VCA 3.**

As Judge Baker may recall from prior discussions, we responded to the Plaintiffs' Master Set of Requests for Production of Documents in an 80-page written response on April 15, 2015, and by making an initial production of 52,130 pages of documents, including such key information as Cook's submissions seeking regulatory approvals of the products at issue in the litigation, complaint statistics, marketing materials, quality assurance procedures, and other key substantive materials.

Between then and the letter from plaintiffs' lead counsel Ben Martin of November 24, 2016, referred to in Mr. Williams' email, we produced many more documents in a series of rolling productions. As of the date of Mr. Martin's letter, we had produced 187,888 documents, consisting of 1,027,448 pages of documents and 166.5 GB of data.

In paragraph 37 of Mr. Martin's letter of November 24, 2016, he requested production of the histology slides prepared for Cook's meeting with FDA on April 29, 2005, at which Cook's request for 510(k) clearance of the Celect filter was discussed, a meeting that had been discussed in depositions of Cook witnesses taken by plaintiffs in May and June of 2016. Those slides were a subset of the histology slides from VCA 1, a study using sheep to test the Celect that began in March of 2004 and was completed in November of 2005. In subsequent emails, plaintiffs expanded Mr. Martin's request of November 24 to ask for all slides from VCA1 and all slides from two sheep feasibility studies, VCA2 and VCA3. All three studies were conducted by MED Institute, Incorporated ("MED"), a subsidiary of Cook Group Incorporated that is located in West Lafayette, IN.

We can now report that the slides from VCA 1 have been located in the archives of Cook Research, Incorporated ("CRI"), which now occupies the building in West Lafayette formerly occupied by MED.

Regulatory concerns require CRI to retain those slides from VCA 1. Specifically, 21 CFR Section 58.195 requires that CRI, as successor to MED, keep the slides and similar raw data from a study like this for at least five (5) years from when Cook submitted to FDA our application for Section 510(k) clearance relying on that study. Here, we relied on that study (and many other things) in our June 1, 2012, submission to FDA for Special 510(k) Clearance to market the Celect Platinum vena cava filter. Therefore, CRI needs to keep the VCA 1 slides until at least June 1, 2017.

We are in discussions with plaintiffs' counsel over our suggestion that, since CRI must hold the VCA 1 slides, we provide them with what we understand would be acceptable substitutes for the original slides. Specifically, Cook has a "slide scanner" that can create virtual copies of slides that allow the user to zoom, pan, and focus just like an actual microscope would with the original slide. Because Cook cannot release the original slides, as noted above, Cook is willing to produce virtual microscopy slides, via use of the slide scanner, for the VCA 1 slides.

CRI continues to look for the slides from VCA 2 and VCA 3. When we learn from them of the status of those slides, we will let plaintiffs' counsel know.

    2.    **Materials from the OUS study.**

As of this writing, all imaging studies from the Cook-sponsored study outside the US ("OUS") of Celect filters placed in 95 patients between October 2005 and March of 2008 at six (6) institutions in Mexico, Australia, and the United Kingdom, and who were followed up at 30 days, 3 months, 6 months and 12 months, and which was published as Lyon SM, Riojas GE, Uberoi R, et al. Short- and Long-Term Retrievability of the Celect Vena Cava Filter: Results from a Multi-institutional Registry. *J Vasc Interv Radiol* (November) 2009; 20:1441-1448, have been produced.

All raw data that presently exists and is in possession, custody or control of the Cook defendants has now been located and will be produced, hopefully by the February 7 Discovery Conference.

   3.   **Animal studies reports (Plaintiffs' issues are shown in bold print).**

   a.   **P030118D-03A: "Migration Test** *in Vivo* **(Sheep).**

Contrary to the plaintiffs' contention, Cook did not have 2 studies with that number. Plaintiff relies on a draft protocol for **P030118D-02A** that appears to have been mislabeled on the cover page as **P030118D-03A**, but with the correct **P030118D-02A** labeling an each page thereafter. (CookMDL_0484250)

The final report for P030118D-02A "Migration Test *in Vivo* (Sheep)" has been produced at CookMDL2570_0091096, CookMDL2570_0094964, among others. Copies of this test report are included in all of the produced Device History files for each lot number of the Celect identified by plaintiffs, and have been in their possession since July of 2015.

The final report for P030118D-03A test as cited and relied upon in the Design Dossier entitled "The Final Report for the Nonclinical Feasibility Study on Vena Cava Dimensional Measurements Pre- and Post Implantation of 2nd Generation Gunther Tulip Vena Cava Filters" was produced as CookMDL2570_0204615, and carries the internal code of CI-VCDM, which was entitled "The Final Report for the Nonclinical Feasibility Study on Vena Cava Dimensional Measurements Pre- and Post Implantation of 2nd Generation Gunther Tulip Vena Cava Filters. Several copies of this document have been produced, dating back to August of 2015.

Also included in the Device History File for the each Celect is an "Overview of Test Documentation." (e.g. CookMDL_ CookMDL2570_0093831) The excerpted table below from clearly shows the organization and naming of the tests. Copies of these tables showing how the tests were named and numbered have been in Plaintiffs' possession since July 2015.

| Title of document | Reference made to additional test documents | Responsible person/department | Brief description | External No. | WCE No. | Location of original documentation |
|---|---|---|---|---|---|---|
| The Interim Report for the Nonclinical Laboratory Study on: MED Institute Animal Testing. Safety and Performance of the Cook Second Generation Vena Cava Filter (IGTF-30-P030118D) Implanted for | A Study to Test the Safety and Performance Of a Prototype Vena Cava Filter in Sheep | William J. Bourdeau, MED Inst | - | TS040008 MED Institute, Inc. | P030118D-01A | Clinical Department |

| | | | | | | |
|---|---|---|---|---|---|---|
| 60 & 90 Days in Sheep | | | | | | |
| Memorandum; Acute Animal Migration Test- Dotter Institute. Vena Cava Filter Redesign Project File (076-06-03) | | Mark Frye Cook Inc. | To determine the affects of loading the filter with blood clot, occluding the IVC in a sheep. | | P030118D-02A | Clinical Department |
| The Final Report for the Nonclincal Feasibility Study on Vena Cava Dimensional Measurements Pre- and Post Implantation of 2nd Generation Günther Tulip Vena Cava Filters | | Susan Mack MED Institute, Inc. | Protocol and Report over the dimensional changes of the vena cava prior to and following vena cava filter implantation. Assessed by IVUS and angiography in various locations within the sheep vena cava. | Study code: CI-VCDM | P030118D-03A | MED Institute, Inc. |

We have told the plaintiffs what is stated above.

**b. P030118D-04A: "Animal Comparison Test of the Cook Celect Filter and Gunther Tulip Vena Cava MReye Filter: Radial Force Needed to Disengage Filter Legs from the Vena Cava After 30 Days of Implantation" (Zaragoza Summer 2005). Protocol is for 12 sheep, 12 filters.**

While Cook drafted the protocol and assisted with study design, the scientists running the study at the University of Zaragoza, in Zaragoza, Spain, Drs. M.A. DeGregorio and his colleagues, independently published their findings. See CookMDL2570_0490396 for discussion, and CookMDL2570_0490419 for the report from the Zaragoza group, published as Garcia A, Lerga S, Pena A, Malve M, Laborda A, DeGregoria MA, et al., Evaluation of migration forces of a retrievable filter: Experimental set up and finite element study. *Med Engin & Physics* 2012; 34: 1167-1176.

All drafts of the protocol for the study and all documents we have related to it have been produced.

For example, in later draft protocols with the 04A designation, that changes to "The animals used in this test are adult sheep with a body weight of 60-100 kgs (so that an adequately sized vena cava is obtained). Each animal will be implanted with *two* filters in the inferior vena cava (see Table 2. below). Six animals will receive a Günther Tulip filter, and a Celect filter." (CookMDL2570_0606100) which would correspond to a 12 filter, 6 animal study. See also (CookMDL2570_0484789)

The University of Zaragoza in Spain is not a Cook company or an entity over which Cook has control. WCE sometimes worked with Dr. DeGregorio and his colleagues of that University on studies, or contracted with the University for Dr. DeGregorio's group to conduct studies for WCE. As near as we can tell, WCE worked with that group to develop a protocol for the study at issue, but DeGregorio's group did the study on their own and published their results without input from WCE.

**c. FS080102: 12 sheep 12 filters per 029 5478: "A summary of the study, description and analysis**

**of the results along with relevant tables, figures and photos, and a critical evaluation of the results obtained will be written." Note: Saved internally as    "MIAT 01.04 TDMI v1.doc" by "Staff." Related animal use application at 028 5477.**

We produced the final report of this study as CookMDL2570_0188598 in Sept. 2015, which we have told the plaintiffs.

Plaintiffs contend that the study they want is of 12 sheep/12 filters, whereas the final report we produced and cite above includes only 2 sheep/4 filters (it refers to itself as VCA3 but that included 3 sheep and 6 filters.

Plaintiffs are simply wrong about this. FS080102 is VCA2, not VCA3. See CookMDL2570_0188598. The report footer description and file metadata clearly designate it as such.

The protocols we've produced from that same folder (e.g. CookMDL2570_0730653) indicate that it's a 2 sheep 4 filter feasibility study.  We've produced all the materials we have on VCA2.
The *draft* protocol plaintiffs cite to is dated 04/28/2005 and appears to have been used as a template. In any event, when Plaintiffs say there is no trace of VCA2 being a 2 sheep/4 filter study, they are simply wrong. We've produced all of the draft protocols showing that 2sheep/4 filters was in the study proposal from 11/20/07 (CookMDL2570_0708628), the protocol cited above, and what was actually done in VCA2, which is the report they cite as FS080102.

There simply is no 12 sheep, 30-day, FS080102 study. The 30-day study is VCA1/TS040008 (the draft protocol plaintiffs cite is CookMDL 2570_0295478 has a footer identifying it as pertaining to TS040008 on every page) for which all materials have been produced, with the inclusion of the additional imaging that went out last week.

**"Related animal use application at 028 5477" is mis-cited. 0295477 is a an animal use for from the same location as the early draft protocols.**

If plaintiffs want FS080102/VCA2, it has been produced. If plaintiffs want TS040008, as indicated on the footer of each page of the DRAFT protocol they cite, it has been produced. FS080102 did not include 12 sheep (as stated in early draft protocol cited by Plaintiffs).

   **d. VCOB (TS090024). See 0295471 discussing results. 0467213 (draft protocol).**

This was a Platinum -specific test, which was not collected or produced pursuit to the exclusion of Platinum from discovery and subject to Cook Defendants' objection, as explained in Section 8 below.

   **e. Retrievability of the Celect and Günther Tulip Vena Cava MReye Filters After 30- and 90-Day Implantation in the Sheep Vena Cava" Protocol is 0447366. We know it happened because Mitch Asami put it on his brag sheet at the end of the year.    Find no report of it.**

This testing was done at the Dotter Institute, Oregon Health Science University, Portland, OR ("Dotter Institute"). The email chain at CookMDL2570_0773352 indicates that no data beyond the original suggested protocol was kept at Cook or any subsidiary.

Cook acknowledges that it has a longstanding relationship with the Dotter Institute, and has provided financial support for that Institute and has contracted with that third party to do studies for it from time to time. However, Cook does not own or control the Dotter Institute, any more than it owns or controls the University of Zaragoza in Spain.

As to the two animal studies performed by others at the University of Zaragoza in Spain (3.b.) and the Dotter Institute in Oregon (3.e.), we believe that Cook has produced all that it has related to those studies.

As to the plaintiffs' contention that, based on the relationships Cook has with those two third parties, Cook has "control" of the data that may still exist at Zaragoza and Dotter underlying or related to those two studies within the meaning of Fed. R. Civ. Pro. 34(a)(1), such that Cook must go to those two entities, demand what data they still have and then produce that data to the plaintiffs, Cook requests the opportunity to investigate and brief these questions.

We need to consult further with our clients to understand what arrangements, contractual or otherwise, were made as to the two specific studies at issue. We will ask our clients to communicate with their contacts at Zaragoza and Dotter to find out what data they still have. If the data still exists, we will find out whether they are willing and able to provide it to Cook. Given how much information plaintiffs already have, how important what they are still requesting really is, how much Cook has already produced, and the cost and feasibility of obtaining what data there may be on these studies from Zaragoza and Dotter, the question of proportionality under Fed.R.Civ.Pro. 26(b) may well be implicated by this inquiry.

### 4. Weekly & Monthly Complaint Summaries from William Cook Europe.

Based on emails exchanged between Matt Schultz of the plaintiffs' lawyers group and Jim Boyers of our firm last week, we understand that this agenda item has been withdrawn.

### 5. Leigh Conners' personnel file.

This file was produced on Tuesday, 1/31/17, and Ms. Conners was deposed by Mike Heaviside of the plaintiffs' lawyers group today, in part using material from that file, so we believe this is no longer an issue.

### 6. The image files that Cook overlooked.

All such imaging files have now been produced.

### 7. Cook's continued e-mail "destruction."

Pursuant to Cook's regular document retention policies, copies of which were produced to the plaintiffs in 2015, emails not intentionally preserved by the sender or recipient of those emails were routinely auto-deleted 60 days after their creation (in general) unless the custodian was placed on hold. However, as of this writing, currently all District Managers, Regional Managers, and Clinical Specialists in the Peripheral Intervention Strategic Business Unit, i.e., all people involved in the marketing and support of filters, are on litigation hold (this is 191 employees).

### 8. Cook's "boilerplate" objections.

In our 80-page Cook's Objections and Responses to Plaintiffs' Master Set of Request for Production of Documents served April 15, 2015 ("Response to Master RFPs") and in our 96-page Cook's Objections and Answers to Plaintiffs' Master Set of Interrogatories, also served April 15, 2015 ("Answers to Master Interrogatories"), we set forth numerous objections and responses that we believe are self-explanatory. We stand on those objections.
Similarly, in our Cook's Objections and Responses to Plaintiffs' Second Master Set of Requests for Production of Documents, served June 13, 2016 ("Response to Second Master RFPs"), and in our Cook's Objections and Responses to Plaintiffs' Third Request for Production of Documents, served May 31,2016 (Response to Third RFPs"), we stated objections and responses that are consistent with the Federal Rules of Civil Procedures, and we therefore stand on those objections.

As of this writing, we have produced 374,550 documents, consisting of 1,273,947 Bates-stamp numbered pages (a page count which is low, as one bates-stamp number is assigned to a multi-slide Power Point produced in native format, or a multi-page Excel spreadsheet produced in native format) and 247.95 GB of data, which we have produced in a series of rolling productions beginning in 2015 and as recently as January 31, 2017, with more to be produced on February 6, 2017.

We produced the many documents noted above, notwithstanding our objections in our Response to Master RFPs, Answers to Master Interrogatories, Response to Second Master RFPs, and Response to Third RFPs, in recognition and fulfillment of our obligations under the Federal Rules of Civil Procedure, the Local Rules of this Court, and prior rulings and orders of this Court. We have made the objections we have to protect ourselves from the overly broad, unduly burdensome, frequently repetitive, vague and otherwise objectionable discovery requests of the plaintiffs, as we have been entitled to do under applicable Rules and Orders of this Court as they existed at the time those objections were made.

In that regard, it should be noted that the objections we made in the four written responses to plaintiffs' discovery requests need to read in the context of the applicable Rules as they existed at the time the objections were made, and applicable rulings and Orders of this Court that were in existence at the time.

For example, the version of Rule 34(b)(2), which governs Responses and Objections to Rule 34 Requests for Production, which existed when we served our Response to Master RFPs on April 15,2015, is different than Rule 34(b)(2) as it exists today. The version of Rule 34 that was in effect at that time required less detail for objections to discovery requests than does the current version of that Rule.

Prior to December 1, 2015, Rule 34(b)(2)(C) did not require us to "state whether any responsive materials are being withheld on the basis of [the] objection," as Rule 34(b)(2)(C) now requires. The text of Rule 34(b)(2) that was in effect until December 1, 2015, stated as follows:

> (B) Responding to Each Item. For each item or category, the response must either state that inspection and related activities will be permitted as a requested or state an objection to the request, including the reasons.
>
> (C) Objections. An objection to part of a request must specify the part and permit inspection of the rest.

Effective December 1, 2015, Rule 34(b)(2) was amended and expanded to read as follows:

> (B) Responding to Each Item. For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons. The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection. The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response.
>
> (C) Objections. An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest. (Emphasis added)

Therefore, regarding the plaintiffs' assertions that our discovery responses in 2015 somehow violated the Federal Rules of Civil Procedure, the version of the Rules then in effect controls.
By that standard, Cook committed no violation of the Federal Rules.

Further, all of our written discovery responses should be read in the context of rulings by the Court that were in place at the time. For example, all of the written responses to plaintiffs' discovery requests, as described above, were served after Magistrate Judge Baker entered his Order on February 12, 2015 Telephonic Status Conference, filed February 20, 2015 (Dkt.244) (the "2/12/15 Order"), in which he stated that "[s]earch terms shall not exceed 20, which shall include more restrictive anchor terms, and shall be limited to 25 custodians. Bird's Nest and Celect Platinum shall not be among the search terms, given that these devices are not at issue in this litigation," ( 2/12/15 Order, p. 1;emphasis added.)

The above paragraph from Judge Baker's 2/12/15 Order is important in relation to communications between my partner Jim Boyers and a number of your colleagues on the plaintiffs' side of March 18, 2015, and March 20, 2015, including the spreadsheets of agreed search and anchor terms. You will note that Jim wrote Troy Brenes on March 20, with copies to John Dalimonte, Jeff Gibson and Takena Thompson, as those four lawyers were then taking the lead for the plaintiffs in developing the ESI protocol that was eventually adopted by the Court as part of what became Case Management Order #11 (Electronically Stored Information and Document Production Protocol), entered July 10, 2015, as Dkt. 521 ("CMO #11") and they agreed on what the search and anchor terms would be.  "Platinum" was not among those agreed

search terms, based on Judge Baker's 2/12/15 Order.

CMO #11 should also be read in the context of rulings construing it and Fed. R. Civ. Pro 34 by Magistrate Judge Baker in his Order on Proposed ESI Order in Denmark ESI, filed July 10, 2015, as Dkt. 522 (the "7/10/15 Order"), and District Judge Young's Entry on Plaintiffs' Objection to Magistrate Judge's Order on Electronically Stored Information and Document Production Protocol - Denmark ESI, filed September 14, 2015, as Dkt. 649 (the "9/14/15 Order").

Thus, Plaintiffs knew that we would not be producing documents concerning the Celect Platinum or Bird's Nest filter based on Judge Baker's 2/20/15 Order. In fact, our Response to Master RFPs made that clear when we defined the "Products at Issue" in paragraph 14 of that Response, on pp. 3-4, that, for purposes of the 52,130 pages of documents being produced therewith, we did not include documents regarding Bird's Nest or Platinum.

"Platinum" is just one example of why our objections must be read in the context of rulings of the Court in existence at the time the objections were made.

Based on our productions of documents and ESI to date, we have complied fully with our obligations under Federal Rules of Civil Procedure 26 and 34. We stand on those productions and our objections as stated in the documents as described above.

    **9.**    **Complaint files.**

To date, we have produced a total of 1,538 complaint files. We produced 494 complaint files in 2015, as advertised in our responses the plaintiffs' Master Requests for Production on April 15, 2015. In January of 2017, we produced another 1,044 complaint files in accordance with Orders of Magistrate Baker issued in December of 2016. We explained all this to the plaintiffs in our Cook Defendants' Memorandum Explaining Production of Complaint Files, to which we have received no response.

In January of 2017, we produced imaging studies referred to in five (5) specific complaint files identified in paragraph 31 of Ben Martin's letter of November 24, 2016, referred to in Joe Williams' email of January 31, 2017.

Joe Williams' email is the first time we have heard of any complaint by any of the plaintiffs that anything is missing from any of the 1,538 complaint files further produced to date that we have not already produced. If the plaintiffs will identify specifically the "approximately 30" complaint files that Mr. Williams said on Tuesday, January 31, 2017, are missing "diagnostic images," we will look into it. Until the plaintiffs do so, we cannot respond to this "issue".

Thank you for bringing this email to Magistrate Judge Baker's attention. We look forward to seeing you and the Judge on Tuesday afternoon. In the meantime, feel free to contact us with any questions or comments.

    Best regards,

    Doug King, one of the counsel for the Cook Defendants



**Douglas B. King**
Partner

211 North Pennsylvania Street

One Indiana Square, Suite 1800

Indianapolis, IN 46204

P 317.860.5306 888.639.6151

F 317.639.6444

[www.WoodenMcLaughlin.com](www.WoodenMcLaughlin.com)

**Think Green!** Please consider the environment before printing this email.

**Confidentiality Notice:**  This email and any attachments are confidential and may be protected by legal privilege.  If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of this email or any attachment is prohibited.  Any personal messages express views solely of the sender and not Wooden McLaughlin, and may not be copied or distributed without this disclaimer.  If you received this email in error, please notify us immediately by returning it to the sender and delete this copy from your system.  Thank you for your cooperation.