```
                  UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF INDIANA
                      INDIANAPOLIS DIVISION



IN RE:  COOK MEDICAL, INC.,  ) CAUSE NO. 1:14-ml-2570-RLY-TAB
IVC FILTERS MARKETING, SALES ) MDL No. 2570
PRACTICES AND PRODUCTS       ) Indianapolis, Indiana
LIABILITY LITIGATION         ) Tuesday, February 21, 2017
                             ) 11:34 o'clock a.m.


                          Before the
             HONORABLE MAGISTRATE JUDGE TIM A. BAKER


                 TRANSCRIPT OF PRETRIAL CONFERENCE

APPEARANCES:
FOR THE MDL PLAINTIFFS:   Riley Williams & Piatt, LLC
                          By:  Joseph N. Williams
                          301 Massachusetts Avenue
                          Indianapolis, Indiana  46204

                          Heaviside Reed Zaic
                          By:  Michael W. Heaviside
                          910 17th Street, NW, Suite 800
                          Washington, D.C.  20006

                          The Law Offices of Ben C. Martin
                          By:  Ben C. Martin
                          3710 Rawlins Street, Suite 1230
                          Dallas, Texas  75219

FOR THE MDL DEFENDANTS:   Wooden & McLaughlin LLP
                          By:  Douglas B. King and
                          James McGinnis Boyers
                          One Indiana Square
                          Suite 1800
                          Indianapolis, Indiana  46204-2019

                          Faegre Baker Daniels LLP
                          By:  Andrea Roberts Pierson
                          300 North Meridian Street
                          Suite 2700
                          Indianapolis, Indiana  46204
```

1  appreciate your position on that.
2      Let's talk about this fourth issue which the Plaintiffs
3  have identified as additional information uncovered related to
4  the Dotter Institute.  Now, it looks like from the Defendants'
5  response to that, that at least I read it to be that they are
6  trying to discover if there are -- if there are any other
7  documents that might be within the custody and control of
8  Dotter related to this study.  So far they haven't found any
9  documents, so I don't know really what is still in dispute.
10 Miss Pierson is up for that one.  Ms. Pierson?
11         MS. PIERSON:  If I may address it.  We have a little
12 more information even this morning, and we were able to
13 confirm that no one at Cook or Dotter Institute has discovered
14 any documents related to the study.
15         THE COURT:  Okay.  Now, you can't produce what you
16 don't have.
17         MS. PIERSON:  Right.
18         THE COURT:  In light of that representation to the
19 Court, Plaintiffs, what do you want to do?
20         MR. WILLIAMS:  Well, Your Honor, the problematic
21 thing about it is, we know that by the documents that we have
22 received that such a study exists or it occurred, and just
23 the -- just the statement that, well, we don't have it, I
24 think what, what -- kind of what we were talking about at the
25 beginning of this hearing, you will have to forgive me, it is

1  just a statement that it, it doesn't exist, doesn't satisfy
2  me.  It -- where did it go?  I mean, there was a Japanese
3  doctor that did a study, at least that is what we saw in the
4  Dotter documents.  If they say we don't have it because X, Y,
5  Z, this is where it went, this is where you might be able to
6  find it yourself, that is one thing.  But just to say, gosh,
7  gee, whiz, I don't know what happened to it.
8              THE COURT:  Well, let's find out.  Ms. Pierson, any
9  idea what would have happened?  It does appear as though there
10 was some study done, so what happened to the documents?
11             MS. PIERSON:  We had produced what
12 documents (inaudible) those are the ones that Mr. Williams
13 refers to.  There is some limited paperwork that refers to the
14 fact that the study took place.  Our understanding is that the
15 Japanese physicians wanted to conduct the study were unable to
16 secure (inaudible) in Japan to conduct the study in Japan, so
17 they came to do the study here.  And the data or images that
18 relate to the study presumably were taken back to Japan by
19 those physicians.  We don't know that, though.  We don't
20 employ the physicians.  They are not in our control.
21      What we are able to do is to check Cook's records and to
22 confer with the Dotter Institute so that they can check their
23 records, and we confirmed that neither of them has any
24 additional documents regarding the study.  If we need
25 to (inaudible) declarations so that you have something more

1 than Cook's counsel giving you that, we are happy to do that,
2 but the fact of the matter is, we have spent the time since we
3 were with you last searching for any additional information
4 regarding the study, and it does not exist.
5         THE COURT: Okay. Thank you. Just hold on one
6 moment.
7         A VOICE: Sure.
8         A VOICE: Your Honor, I think --
9         THE COURT: Go ahead.
10         A VOICE: The salient point then is, we know that a
11 study occurred. We knew that it occurred here. We knew that
12 the Dotter Institute was involved. We know that Cook was
13 involved. The salient question is, when did you have these
14 documents, and when did they leave your possession?
15    I mean, if there was a study that was performed, it,
16 again, it is strange credulity to think that Cook never saw
17 these things. And so, I am circling, coming full circle. I
18 think we need to know when they had them and when they ceased
19 to have them.
20         MS. PIERSON: To be clear, Judge Baker, we never had
21 the docs. We didn't have them. We -- we didn't have them.
22         THE COURT: I understand.
23         MS. PIERSON: We didn't have them. I don't know
24 what else to say other than that.
25         THE COURT: I don't know what else you can say. All