

| KIMBERLY LAMBERT ADAMS | MARTIN H. LEVIN | A. RENEE PRESTON | OF COUNSEL: |
|---|---|---|---|
| BRIAN H. BARR | M. JUSTIN LUSKO | ROBERT E. PRICE | LAURA S. DUNNING |
| MICHAEL C. BIXBY | ANDREW E. McGRAW | MARK J. PROCTOR | *(LICENSED ONLY IN ALABAMA)* |
| M. ROBERT BLANCHARD | NEIL E. McWILLIAMS, JR. | TROY A. RAFFERTY | BEN W. GORDON, JR |
| BRANDON L. BOGLE | CLAY MITCHELL | MATTHEW D. SCHULTZ | ROBERT M. LOEHR |
| WESLEY A. BOWDEN | PETER J. MOUGEY | W. CAMERON STEPHENSON | PAGE A. POERSCHKE |
| VIRGINIA M. BUCHANAN | DANIEL A. NIGH | LEO A. THOMAS | *(LICENSED ONLY IN ALABAMA)* |
| WILLIAM F. CASH III | TIMOTHY M. O'BRIEN | BRETT VIGODSKY | LEFFERTS L. MABIE, JR. (1925-1996) |
| JEFF GADDY | MIKE PAPANTONIO | MALLORY J. MANGOLD | D.L. MIDDLEBROOKS (1926-1997) |
| RACHAEL R. GILMER | CHRISTOPHER G. PAULOS | *(LICENSED ONLY IN ALABAMA AND MISSISSIPPI)* | DAVID H. LEVIN (1928-2002) |
| FREDRIC G. LEVIN | EMMIE J. PAULOS | | STANLEY B. LEVIN (1938-2009) |

April 7, 2017

**VIA E-MAIL**

Andrew L. Campbell (Andrew.Campbell@FaegreBD.com)
Andrea Roberts Pierson (Andrea.Pierson@FaegreBD.com)
Faegre Baker Daniels LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204-1750

Re:   MDL No. 2570; Defendants' Response to CMO 2 Requests

Dear Andrew and Andrea:

We received your April 5 response regarding our requests for documents pursuant to CMO 2 [Doc. 281] with respect to upcoming depositions, the first of which is Ms. Jennifer Brown on April 21. It appears Cook's position is as follows (I address each point separately below).

### Cook's Position

1. **Timeliness.** The requests are "untimely" because "Judge Young ordered during the November 10, 2016, status conference that company discovery was complete, with the limited exception of the discovery permitted by Judge Baker's November 15, 2016, Discovery Order."

2. **Breadth/Burden.** The requests are overbroad and unduly burdensome (a) because they seek "'any' and 'all'" documents on topics for which Cook "already produced extensive documents;" (b) because they seek production of all documents referenced within responsive documents; (c) because they seek documents relating to products other than Tulip and Celect; and (d) because they are not limited to any specific timeframe.

3. **Proportionality.** Because Cook already has produced "over a million pages of documents relating to Tulip and Celect," the burden of searching for additional documents (whether relevant or irrelevant) outweighs the potential benefit to plaintiffs, particularly with respect to "many" documents that "have no bearing on any issue presented in this action."

Page Two
Re: CMO 2
4/7/17

4. **Non-Cook Witnesses.** Cook does not have to respond to requests made in connection with depositions of non-Cook witnesses pursuant to CMO 2, ¶ D.2., which applies to "any <u>Cook</u> 30(b)(6) and/or custodial fact witness depositions." Cook therefore will not identify or produce documents in connection with the depositions of Dr. Smouse (its long-time consultant), Dr. Timperman (its long-time and current consultant), Dr. Lynch (its KOL), Mr. Hawkins (its former CEO), or Dr. Kaufman (its long-time consultant and KOL).

5. **Cook's Intended Response.** Although not obligated to respond, Cook will "for those witnesses subject to CMO 2 Section D.," (a) serve specific objections; (b) identify previously produced documents from the witnesses' custodial files; and (c) produce any unproduced documents reviewed and relied upon by the witnesses in preparation for their depositions. It will not produce any documents for any witness (Cook or non-Cook) other than the documents identified in (c).

<u>**Plaintiffs' Response**</u>

1. **Timeliness**

We disagree with Cook's characterization of Judge Young's ruling and the implication that his ruling silently nullified CMO 2; but even if Cook were correct that "company discovery" is limited that what Judge Baker permitted in the November hearing and order, the fact is the depositions currently being scheduled, and for which CMO 2 requests have issued, <u>are that discovery</u>.

First, Judge Young did not "order" at the status conference "that company discovery was complete" with the exception of the additional depositions and custodian files Judge Baker ordered. Rather, Judge Young clearly contemplated further document production and noted that company discovery would "cut off" after completion of the remaining company discovery.

By our read of the transcript and orders, Cook requested—and the Court agreed in principle—that once remaining company discovery was complete (including the additional discovery Judge Baker ordered), there would be no further requests for company discovery without some special showing. The distinction probably makes no practical difference because all of the depositions under discussion are within the compass of Judge Baker's November 15 order, as discussed below.

The transcript bears out Plaintiffs' position time and again while showing that no one, including Cook counsel, believed company discovery "was complete" as of November 10.

Mr. King at 21:4-22:5: "But what we would really be interested in, Your Honor, is some deadline that would be a close on fact discovery, particularly fact discovery on Cook.... It would assist, I think, both sides and the Court if <u>at some point</u> we have a firm deadline for when that company discovery is over. Now, obviously since Mr. Martin has said they're not

really ready to identify these eight depositions they get … obviously we can't set a firm deadline today. But what I would request the Court, if that once they're done with this round of discovery that say – you know, that be the end – that be the close of discovery on the company and that's what we would propose.

Ms. Pierson at 23:11-15: "So what would be most helpful, as Mr. King articulates, if Your Honor would enter a minute entry or order noting that the discovery that Judge Baker has ordered us to do, we will do. That that's the end of company discovery." Note that the requested minute entry was not entered; so to the extent Cook now claims it was requesting that company discovery be deemed "complete" in November, its request was not granted.

Mr. King at 24:5-9: "[W]e had a discussion with Judge Baker on Friday. The judge gave them some of what they wanted. All we're asking, Your Honor, is when they're with that [sic, "done with that"], that a minute entry or order be entered indicating that's the end of the company general discovery. That's all we're asking."

Mr. King at 29:23-25: "All we're asking for is that when they get done with the run that Judge Baker told them on Friday they can do, that that's it."

The Court at 30:2-7: "Well, I think we all understand that there's really, at the end of the day, no such thing as withholding documents. If they're relevant, they're going to be ordered to be produced at some point in time anyway. So we need to make sure that we continue on with the discovery practice that's been going on here, which, by my observation, has been very cordial and very professional so far. So we need to continue on with that."

Mr. King at 33:11-25: "Mr. Martin told us that he's thinking we're going to get some of these general corporate discovery depositions and custodian files, that that's probably not even going to happen this calendar year. That it might be into 2017. I'm not arguing with that. All I'm asking is that I would think by then – Let's say we complete all these eight discovery depositions that they want to take on general corporate witnesses and those custodian files. Let's say we complete it by the end March of 2017. I would think by then we'd have the other issues that Mr. Martin alluded to, the explant cleaning protocol, the exemplars, the complaint files. I would think we'd have all that resolved by then. So all I'm asking again is some sort of entry order from the Court when the discovery that Judge Baker allowed them on Friday is completed, that is the end of the general corporate discovery."

The Court at 38:20-39:2: "So my thought would be that once these depositions are taken and those are finished, then it would be appropriate to establish a cut-off point, with the understanding that if there's an argument for compelling additional discovery, the Court would consider that, which is always the case but -- at least in my court. So I would think that once this additional discovery is finished up, that a cut-off point would be appropriate.

Page Four
Re: CMO 2
4/7/17

The Court at 40:7-19: "All right. Well, you'll provide within 14 days, then, Cook with information regarding documents you think that have been ordered to be produced and you have not received or misplaced. But in any event, if you misplaced them and you can't find them, you need another copy, anyway. So if you can do that within 14 days. And then also we have the understanding that once the additional discovery has been taken here, that we'll have -- by agreement we'll have a cut-off point for further Cook fact discovery.... With the understanding, of course, that if something comes up that's compelling, we'll consider it."

There was no suggestion at the November 10 hearing that company discovery was complete in any respect, only that once the remaining depositions were taken and custodian files were produced, there would be a cut-off point. There was no suggestion by the Court or any party that CMO 2 was somehow nullified or would not apply to the depositions then under discussion, which are the depositions now under discussion.

The Court's orders on the November hearings say the opposite, in fact. First, Judge Baker's Discovery Order of November 15 grants six additional depositions "beyond the original 20 authorized, for a total of 26 depositions," and affords plaintiffs six additional custodian files. [Doc. 3069] Otherwise, the order addresses production of complaint files and resolution of privilege log issues. It does not state or imply that CMO 2 would not apply to the "original 20 authorized" depositions or to the six new depositions. The Court's November 15 "Order on November 10, 2016, Pretrial Conference" notes that discovery was discussed and makes no reference to company discovery being "complete" or to CMO 2. [Doc. 3070] On the same day, Judge Baker entered CMO 20 governing bellwether depositions. It supersedes Section E of CMO 2 (not applicable here) and states in footnote 1: "The remaining provisions of CMO #2 are not impacted by this order and remain in full force and effect." [Doc. 3071] Section D of CMO 2 is one of those "remaining provisions" and inarguably carries today whatever meaning and effect it carried before the November hearings.

Additionally, Doug King noted toward the end of the hearing that Cook continued to produce documents when Plaintiffs pointed out inadequate production (using the clot-trapping study as an example). Doug stated, "[T]hey found that there was data – underlying data that they hadn't received and that they wanted to go back and look and see if it was there and we did so. We didn't need a court order. We didn't need any intervention from the Court. So in that kind of situation, we're going to do it.... And we will continue to." Judge Young responded, "It's like I said earlier, eventually these documents are going to have to be produced anyway. So let's just get it done." Cook's position that its document-production obligations ended November 10 contradicts its commitment to the Court and ignores the Court's express recognition that further document production may occur.

Cook is thus mistaken in arguing that Plaintiffs' CMO 2 requests accompanying the recent deposition notices are untimely.

Page Five
Re: CMO 2
4/7/17

## 2. Breadth/Burden

Cook objects to requests for "any and all" documents on topics for which Cook "already produced extensive documents." Of course Plaintiffs could not request that Cook produce "some" responsive documents. The "any and all" formulation is standard and reasonable. Whether Cook "already produced extensive documents," is not the litmus for discovery. Cook is fond of saying it has produced more than one million pages (if one includes a staggering number of duplicates); but that figure exists in a vacuum and would be meaningless if there were two or three or five million pages of responsive documents. Defendants in the Xarelto MDL are producing <u>five million pages per month</u> for 10 months. Bard has produced approximately <u>1.6 million documents</u> (<u>more than 4 million pages</u>) in the Bard IVC filter MDL. I believe Bard's latest supplemental production alone exceeded Cook's entire production in this case. Cook's million pages over two years fail to impress given the volume we have seen in other MDLs. So the question is not how many documents Cook has produced; it is whether any given CMO 2 request encompasses responsive documents not yet produced. If so, then just as Doug King assured the Court, the documents should be produced. With respect to Cook 30(b)(6) or custodial fact witness depositions, Cook is obliged not only to "produc[e] discoverable documents," but to identify responsive documents previously produced. CMO 2 contemplated that document production already would have occurred before CMO 2 requests were propounded, so previous productions don't foreclose additional ones.

Cook's second argument is that that the CMO 2 requests seek production of all documents referenced within responsive documents. This was included specifically because of issues raised many times with Cook in which we see references to documents in email chains (patently "hot" documents) that did not make their way into the document production. Of course the standard for discoverability still applies, so that, for example, if an utterly irrelevant document were mentioned in passing within a responsive document, Cook would not be obliged to produce it and, frankly, Plaintiffs would have no interest in it. On the other hand, by way of example, if a responsive document discussed the results of a study then we would expect the study results to be produced so that we could make sense of the responsive document. I suspect this situation will seldom arise because most such attachments or referenced documents would themselves be responsive. We, of course, must rely on Cook's judgment in determining whether such documents should be produced under the circumstances, as is the case with all discovery requests; but we stand by the request as is.

Cook's third argument is that the requests seek documents relating to products other than Tulip and Celect. Cook's premise is flawed. Discovery in this litigation is not limited to Tulip and Celect. Cook has repeatedly taken the position that because Judge Baker did not require inclusion of "Platinum" in ESI search terms, that discovery is limited to Tulip and Celect. But Judge Baker recently, and over this very objection, ordered Cook to produce the VCOB sheep study results, which Cook deemed a "Platinum" document because it was testing Platinum prototypes. But putting aside this question, our CMO 2 requests are tailored specifically to this concern, which we anticipated. Namely, the requests encompass non-Tulip/non-Celect documents only "if discussion, examination, testing, or study of that [non-Tulip/non-Celect] filter was undertaken in whole or

Page Six
Re: CMO 2
4/7/17

in part for the purpose of comparing that filter's design, performance, safety, or efficacy" to a Tulip/Tulip component or Celect/Celect component. If Cook, for example, undertook an animal study that showed Celect perforated at a rate forty times higher than a Celect Platinum or Bard Recovery, that test clearly would be relevant; but Cook apparently takes the disturbing position that because such a document is one "relating to products other than the two at issue in this action," then the document is not discoverable. This position would conceal the existence of the hypothetical test document I just described despite the fact that it would be not only relevant but one of the "hottest" documents that has come to light. Plaintiffs reject Cook's position and stand by their formulation, which requires production of non-Tulip/non-Celect documents only if they relate directly to a Tulip or Celect filter.

Cook's last breadth/burden objection is that the CMO 2 requests are not limited to any specific time frame. The requests are self-limiting. If a document is responsive and otherwise discoverable then it makes no difference whether it is 12 months old or 12 years old. Responsive documents are responsive and should be produced or identified.

3. Proportionality

Here, again, Cook argues that because it has produced "over a million pages of documents," the burden of any further production outweighs any potential benefit to Plaintiffs. This contradicts Cook's position in open Court that Cook "will continue to" produce documents, such as underlying study data (the bulk of the CMO 2 requests) where it has not previously been produced. Likewise, the CMO 2 requests encompass witness-specific documents such as presentations by the witness, remuneration to witnesses, personnel files, calendars showing filter-specific business, internal policies that governed the witness's specific areas of responsibility, etc. These documents are not likely to have been captured in previous productions. As one example, I have searched high and low for early quality policies, quality instructions and quality procedures in preparing for QA Director Henrik Gyllun's deposition. Although I see references to them in emails, I do not find the documents themselves. His CMO 2 request would require their production (or identification, because he is a custodial witness). The same is likely more so for some routine items such as email for witnesses whose custodian files were not produced, such as Mr. Ragheb, or for Cook consultants like Drs. Smouse, Timperman, and Kaufman.

Ultimately, we don't really know, because Cook hasn't explained, the burden involved or the potential benefit to Plaintiffs. A conclusory assertion of disproportionality is not enough to resist a federal court order requiring production (or identification) of responsive documents. *See, e.g., Baires Blue Cross Blue Shield of Minnesota v. State Farm Mut. Auto. Ins. Co.*, 2016 WL 4591905 at *5 (E.D. Wis. Sept. 2, 2016) (Defendant "has failed to meet its burden to show why [plaintiffs] are not entitled to the requested discovery. [Defendant's] objections to the discovery requests are nothing more than boilerplate objections that provide no specific reasons as to why the requested discovery is improper. Boilerplate objections such as relevancy and 'not proportional' will not overcome this burden."). *See also* Fed. R. Civ. P. 26 – 2015 Advisory Cmte. Note ("Information is

Page Seven
Re: CMO 2
4/7/17

discoverable under revised Rule 26(b)(1) if it is relevant to any party's claim or defense and is proportional to the needs of the case…. [T]he change does not place on the party seeking discovery the burden of addressing all proportionality considerations. Nor is the change intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional.")

### 4. Non-Cook Witnesses

Cook argues it does not have to respond to requests made in connection with depositions of non-Cook witnesses and it cites CMO 2, ¶ D.2., which applies to any Cook 30(b)(6) and/or custodial fact witness depositions. Cook does not address ¶ D.1., which applies to "any notice of deposition where there is an accompanying request for the production of documents" and which requires "the responding Party" to alert lead counsel for "the noticing Party" of "any reason the requested documents cannot be produced a minimum of fourteen (14) days prior to the date of the noticed deposition." CMO 2 thus includes two operative provisions. Paragraph D.2. is limited to Cook 30(b)(6) and custodian depositions and requires not only production of responsive documents, but identification of previously produced documents, which makes sense given that witness-specific documents will have been produced for all custodians. Paragraph D.1. applies to "any" other depositions. Cook's position that it need only identify responsive documents for Cook witnesses entirely ignores ¶ D.1., as it must, because its position would render the paragraph superfluous. Cook undoubtedly possesses relevant, responsive documents such as communications, confidentiality agreements, payment records, and other similar documents for consultants like Drs. Smouse and Kaufman who have worked closely with Cook on IVC filters for many years. CMO 2 requires production of those documents.

### 5. Cook's Intended Response

For Cook witnesses, Cook agrees it will (a) serve specific objections; (b) identify previously produced documents from the witnesses' custodial files; and (c) produce any unproduced documents reviewed and relied upon by the witnesses in preparation for their depositions.

On the first point, we don't contest Cook's right to serve objections, but they are required at least 14 days before the deposition (which, for Ms. Brown, is today). If Cook will lodge recurring objections to every witness, we would prefer to resolve all immediately rather than facing the same issues time and again two weeks before each deposition. Given that CMO 2 gives a party the right to re-depose a witness if objections are later resolved in that party's favor, we both have an incentive to address these matters quickly.

Cook agrees to identify previously produced documents for 30(b)(6) and witnesses with custodian files. That is fine and is required by CMO 2, but CMO 2 also expressly requires production discoverable documents not previously produced. According to the order quoted above, this requirement remains in "full force and effect."

Page Eight
Re: CMO 2
4/7/17

Cook's last point is curious. It is difficult to imagine a document that a Cook 30(b)(6) or custodian witness would review and rely upon to prepare for deposition that would not be responsive to the CMO 2 request itself or to Plaintiffs' previous written discovery requests. ==Cook's position seems to be that it will not produce documents responsive to Plaintiffs' CMO 2 requests, but if its attorneys find particular documents useful to prepare the witness to testify, then those it will produce. Plaintiffs certainly don't object to receiving such documents, but would object if the procedure is tantamount to Cook having withheld documents until they proved useful for a witness's testimony. We will simply wait and see.== We ask that Cook identify all such documents as a discrete set for each witness so we can address the failure to produce them previously, if necessary.

### Next Steps

Given that objections for Ms. Brown's deposition are due today, and given that those may serve as "bellwether" objections for the remaining depositions, we suggest raising this at the earliest possible time that the Court is available to address it. I appreciate your time and consideration of our position.

Sincerely,

Matt

Matthew D. Schultz

/mds
cc: B. Martin
    D. Matthews
    M. Heaviside
    J. Williams