IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |
| This Document Relates to All Actions | |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION
FOR PROTECTIVE ORDER BARRING
PROPOSED DEPOSITION OF KEM HAWKINS**

The Cook Defendants[1] urge the Court to grant their motion for a protective order barring plaintiffs' proposed deposition of Kem Hawkins, the former president of Cook Group Inc. Plaintiffs' response to the motion makes no attempt to defend the broad areas of inquiry for Mr. Hawkins Plaintiffs asserted in the meet-and-confer process, instead focusing only on the presence of Mr. Hawkins' name on a handful of documents. Nothing in those documents, however, suggests that Mr. Hawkins has any knowledge of any material topic that is unique or that is superior to the knowledge of other company witnesses that Plaintiffs have already deposed. Considering both the lack of such knowledge by Mr. Hawkins and the totality of the circumstances surrounding Plaintiffs' deposition notice, the Cook Defendants have established good cause for a protective order barring Mr. Hawkins' deposition.

---

[1] The Cook Defendants in this matter are Cook Incorporated, Cook Medical LLC f/k/a Cook Medical Incorporated, and William Cook Europe APS (collectively "Cook Defendants").

## DISCUSSION

**I.     PLAINTIFFS HAVE IDENTIFIED NO UNIQUE OR SUPERIOR KNOWLEDGE OF KEM HAWKINS.**

Contrary to Plaintiffs' effort to imply otherwise, a review of Plaintiffs' submissions demonstrates that Mr. Hawkins has no knowledge that is not already available to Plaintiffs from documents or other witnesses.  Plaintiffs' "Factual Background" section presents documents out of context, mischaracterizes their contents, and exaggerates their significance.  These documents do not support Plaintiffs' argument that Mr. Hawkins has any unique or superior knowledge that Plaintiffs need to inquire into.

Plaintiffs first argue that Cook 30(b)(6) witness Mark Breedlove "identified Mr. Hawkins as the person who would be able to answer several questions [Breedlove] was unable to answer." Pl. Resp. at 1.  Plaintiffs' response never tells the Court *what* those questions are, and for good reason; they are tangential questions—some of which the Cook Defendants have already answered elsewhere—that have nothing to do with any issue relevant to the claims and defenses in the case in any event.  The questions Plaintiffs cite from the Breedlove deposition involve:

- The relationship between the Cook family and non-family members of the board of directors of the Cook Group. Dkt. 4639-1 at 3.  Cook has already identified board members for all entities in its Entity List Mary 01, 2014, *see* CookMDL2570_0000131; also marked as Ex. 9 to Mark Breedlove's 1/16/2015 deposition, and Plaintiffs questioned Breedlove about the topic.

- The organizational structure of Cook Group Incorporated prior to the December 21, 1998, organizational chart. Dkt. 4639-1 at 4.  But the organizational structure of a non-party at a time before the products at issue were available is irrelevant to the

claims and defenses here; Plaintiffs' own master discovery in these cases identifies the relevant time period as beginning in the year 2000.

- Whether the Cook Group has shareholders other than Gayle and Carl Cook. Dkt. 4639-1 at 2. Again, the existence and identity shareholders of a non-party private corporation are irrelevant to the claims and defenses in this matter.

Plaintiffs next argue that they want to question Mr. Hawkins about certain specific documents that contain his name, documents that Plaintiffs had refused to identify in their pre-motion meet-and-confer communications with Cook attorneys. All of these documents, however, reflect just the kind of high-level, non-specific involvement described in the multiple courts that have barred such apex depositions: general inquiries about the company's products and issues that have arisen with them, and non-specific communications with subordinates directing them to identify the source of the problems and fix them.

Plaintiffs' assertions that Mr. Hawkins "was involved in damage control related to Cook's filters," "provided direction to the engineering and design team," and "directed his subordinates regarding design, marketing and sales strategies," Pl. Resp. at 2-3, are not even borne out by Plaintiffs' own quotations from the Cook documents, much less by the documents themselves. Specifically, the documents Plaintiffs cite demonstrate only that:

- Exhibit 2 (Dkt. 4639-2). Mr. Hawkins asked Rob Lyles for information about Cook's efforts to take market share from competitors.

- Exhibits 3 & 4 (Dkts. 4639-3, 4639-4). Mr. Hawkins encouraged filter team members (several of whom Plaintiffs have already deposed) to work hard.

- Exhibit 5 (Dkt. 4639-5). Mr. Hawkins attended an IVC Filter Executive Committee Meeting (several of whose members Plaintiffs have already deposed), the minutes of

which merely list him as an attendee and do not link him to any issue, assignment, or decision.

- Exhibit 6 (Dkt. 4639-6).  Mr. Hawkins told Ted Heise (already deposed) that he trusts his subordinates' judgment concerning follow-up with physicians and Cook employees.

- Exhibit 7 (Dkt. 4639-7).  Mr. Hawkins was cc'ed on an email to Rita Harden (already deposed) discussing a death involving a patient with an IVC filter.

- Exhibit 8 (Dkt. 4639-8).  Mr. Hawkins forwarded to several Cook people (including the already deposed April Lavender and Tom Roberts) a PowerPoint presentation concerning IVF perforation that he had received from Diana Wu.

- Exhibit 9 (Dkt. 4639-9).  A PowerPoint slide notes that Mr. Hawkins had asked a question about a retrievable filter.

- Exhibit 10 (Dkt. 4639-10).  Mr. Hawkins asked Bill Gibbons about the status of several projects, one of which related to IVC Filters.

- Exhibit 11 (Dkt. 4639-11).  Mr. Hawkins emailed Rob Lyles regarding the introduction of the Celect Platinum.

Contrary to Plaintiffs' argument, none of these documents even remotely suggests that Mr. Hawkins had any active role in the design, development, marketing, or regulatory compliance of the Celect or the Tulip filters, or that he has any unique or superior knowledge about any of these topics.  On the contrary, these documents reinforce the conclusion that, like many top executives, Mr. Hawkins is "[g]enerally … familiar with the big picture of the operations of a company" but "not familiar with the day-to-day operations of a business." *Chick-Fil-A, Inc. v. CFT Dev., LLC*, 2009 U.S. Dist. LEXIS 34496, at *4 (M.D. Fla. Apr. 3, 2009).

Plaintiffs also try to justify the deposition and its accompanying document request by asserting that "they suspect that [Hawkins' private aol.com account] was not searched for responsive documents." Pl. Resp. at 3. Plaintiffs offer no basis for this suspicion, and do not suggest that they have ever even raised this issue with the Cook Defendants. In the course of this litigation, Plaintiffs requested Mr. Hawkins' custodial file on at least three occasions (July 2016, October 2016, and November 2016), only to reassess and abandon each of those requests. Plaintiffs did not renew their request for Mr. Hawkins' custodial file after the Court permitted them additional custodial file requests, and they have now exhausted all of their authorized requests for custodial files. *See* Dkt. 3069. In effect, Plaintiffs want to use the Hawkins deposition notice and their "CMO 2 Request for Documents to Cook Defendants" as an end-around to try to obtain an additional, unauthorized custodial file. Plaintiffs own briefing, however, reveals they have had access to the relevant communications through other custodians.

In sum, despite an apparent parsing of Cook's document disclosures for any mention of Mr. Hawkins' name, Plaintiffs have been unable to make any showing that Mr. Hawkins has unique or superior knowledge concerning any issue material to this litigation.

## II. PLAINTIFFS' LEGAL ARGUMENT DOES NOT JUSTIFY THE DEPOSITION OF MR. HAWKINS.

Plaintiffs' legal argument consists primarily of an attempt to suggest that "the Apex doctrine does not apply" here because their proposed deposition of Mr. Hawkins arises in an MDL setting rather than in an individual case. Pl. Resp. at 5-6. None of the cases that Plaintiffs cite, however, state any such rule. On the contrary, although these cases recognize that the existence of an MDL is a *factor* in evaluating the "totality of the circumstances" governing the permissibility of an apex deposition, each case emphasizes the critical issue of whether the proposed witness *actually* has any unique and personal knowledge of issues material to the

litigation. *See In re Mentor Corp. Obtape Transobturator Sling Prod. Liab. Litig.*, No. 4:08-MD-2004(CDL), 2009 WL 4730321, at *2 (M.D. Ga. Dec. 1, 2009) (noting that both *Bridgestone/Firestone* and *Minter* relied on evidence of witnesses' personal knowledge on material topics).[2]

Moreover, Plaintiffs' prominently placed quotation from this Court's *Bridgestone/Firestone* order is erroneous and misleading. Contrary to Plaintiffs' assertion, the court did **not** state that "the very nature of MDLs 'discourage numerous, repetitive, harassing or abusive depositions.'" Pl. Resp. at 5 (quoting *Bridgestone/Firestone*). The language Plaintiffs quote refers specifically to the procedures adopted by the magistrate judge in that particular litigation, not the mere status of the litigation as an MDL:

> It seems to us that **the coordinated deposition procedures outlined by Magistrate Judge Shields** will serve to discourage numerous, repetitive, harassing, or abusive depositions of Mr. Ford.

205 F.R.D. at 536 (emphasis added).

Plaintiffs also argue that Mr. Hawkins' retirement from active employment at Cook justifies the proposed apex deposition. *See* Pl. Resp. at 6. As the cases that Plaintiffs cite note, an executive's retirement is certainly a factor a court should consider in addressing the propriety

---

[2] The individual decisions bear out this conclusion. *See also Bridgestone/Firestone Inc. Tires Prods. Liab. Litig.*, 205 F.R.D. 535, 536 (S.D. Ind. 2002) ("the plaintiffs did present evidence that Mr. Ford has referred to his personal knowledge of and involvement in certain relevant matters, including the Firestone tire recall, Explorer safety issues, and Ford's response to the tire and Explorer issues"); *In re Lipitor Marketing, Sales Practices and Prod. Liab. Litig.*, MDL No. 2:14-mn-02502-RMG, 2014 WL 12621613, at *2 (D. S.C. Nov. 13, 2014) ("Plaintiffs have put forward evidence that Dr. Feczko may have personal knowledge relevant to this case"); *In re Mentor Corp. Obtape Transobturator Sling Prod. Liab. Litig.*, No. 4:08-MD-2004(CDL), 2009 WL 4730321, at *2 (M.D. Ga. Dec. 1, 2009) (allowing depositions of defendant's ("Plaintiffs point to prior testimony that [the apex witnesses] in the California state court case…, which suggests that [the witnesses] do have some direct, first-hand knowledge of Mentor's decisions regarding the marketing and sales of ObTape, as well as Mentor's actions related to the FDA's regulation and approval of ObTape").

of an apex deposition. Those same cases make clear, however, that the primary consideration is still whether the executive actually possesses unique or superior knowledge. *See Illinois Agric. Assoc. v. Rural Media Group, Inc.*, No. 13-1220, 2014 WL 1378074, at *2 (C.D. Ill. April 7, 2014) (permitting deposition based largely on documents suggesting witness's unique or superior knowledge); *Minter v. Wells Fargo Bank*, 258 F.R.D. 118, 126 (D. Md. 2009) (permitting deposition relying largely on media reports based on interviews with witness suggesting his "much more active role" in events at issue). As discussed in section I above, Plaintiffs here have made no such showing.

### III. THE PROPOSED DEPOSITION OF MR. HAWKINS WOULD UNNECESSARILY HARASS COOK AND WASTE THE PARTIES' TIME AND RESOURCES.

The Court should issue a protective order barring the deposition of Mr. Hawkins to prevent the abuse and harassment of Mr. Hawkins and the waste of time and money by Cook and its attorneys.

Plaintiffs do not deny the virtually unanimous judicial view that the deposition of a high corporate executive "creates a tremendous potential for abuse or harassment." *Celerity, Inc. v. Ultra Clean Holding, Inc.*, Case No. C05-04374 MMC (JL), 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007) (collecting cases). Plaintiffs do not offer any showing (other than a bare recitation) that any knowledge that Mr. Hawkins might have is unique or that his knowledge is superior to that of the people who were actually involved in the activity at issue. And Plaintiffs do not dispute that they intend to parade Mr. Hawkins' testimony that he has no personal knowledge of various topics before the jury just because he is the former head of the company, regardless of whether he has or had any actual reason to know the information. *See* Cook Memo. at 15-16.

Instead, Plaintiffs rely on an argument that the Cook Defendants have a burden to somehow quantify *before the deposition occurs* the specific harassment that Plaintiffs will inflict through the deposition. See. Pl. Resp. at 6-7. No such burden exists, nor could it as a matter of common sense.

Plaintiffs also complain that the Cook Defendants have not adequately quantified the burden the proposed Hawkins deposition will impose. *See id*. This complaint is ironic given Plaintiffs' own lack of transparency concerning the deposition. As detailed in the Cook Defendants' original memorandum, prior to the present motion, Plaintiffs steadfastly refused to provide the Cook Defendants with any sense of the intended scope of their proposed deposition, openly admitting that "we don't wish to limit ourselves on subject matters." *See* Cook Memo. at 3-4 (quoting Exhibit C, March 26, 2017 Email from M. Schultz to A. Pierson regarding subpoena). Plaintiffs can hardly complain about the Cook Defendants' failure to identify the specific burden the Hawkins deposition will impose when Plaintiffs themselves refused to identify the intended scope of the deposition. Even now, in their response, Plaintiffs continue to represent that they intend to question Mr. Hawkins about an unknown number of yet-to-be unidentified documents, *see* Pl. Resp. at 3, again preventing the Cook defendants from making any realistic evaluation or explanation of the burden the deposition will impose.

Nor do Plaintiffs suggest any willingness to contemplate any judicial role in defining the scope of the deposition. Several of the cases on which Plaintiffs rely limit the scope of the apex deposition and make specific provision for judicial intervention to prevent overly broad or harassing questioning of the apex witness. *See, e.g., Illinois Agric. Assoc. v. Rural Media Group, Inc.*, No. 13-1220, 2014 WL 1378074, at *2 (C.D. Ill. April 7, 2014) ("the parties may contact the Court to schedule a conference call to promptly resolve any disputes concerning the extent of

8

questions asked of Nelson during his deposition"); *Meharg v. I-Flow Corp.*, No. 1:08-cv-0184-DFHTAB, 2009 WL 1404603, at *1 (S.D. Ind. May 15, 2009) (limiting scope of deposition to witness's personal knowledge and noting that "[t]he parties may coordinate with the Court the availability of the Magistrate Judge during the time of Earhart's deposition in order that the Magistrate Judge may resolve any disputes that may arise during the deposition regarding the scope of the questions allowed by this order.")  Plaintiffs here reject the need for any such limitations at all.  As far as appears from their response, theirs is an all-or-nothing position; they assert that they are entitled to depose Mr. Hawkins at any length about any topic, with no limitations of scope or subject.

As noted in the Cook defendants original motion, Plaintiffs' purpose in noticing the deposition of Mr. Hawkins cannot be to obtain discoverable information; Plaintiffs already have most of the information they now say they seek, and they know who to ask if they really want more.  Despite Plaintiffs' protestations to the contrary, Mr. Hawkins has no unique or superior personal knowledge of the topics material to this litigation, and Plaintiffs' true purpose in seeking this deposition can only be to harass Mr. Hawkins, consume Defendants' time and money in contesting and defending the deposition, and improperly coerce concessions on other issues.  Such purposes are improper, and this Court should act to thwart them.  *See Brown v. Branch Banking & Trust Co.*, 2014 U.S. Dist. LEXIS 7721, at *7 (M.D. Fla. Jan. 22, 2014) (noting executives "'are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts'") (quoting *In re Bridgestone/Firestone, Inc. Tires Products Liab. Litig.*, 205 F.R.D. 535, 536 (S.D. Ind. 2002)).

## CONCLUSION

For the reasons set forth above and in the Cook defendants' original memorandum, the Cook defendants urge the Court to grant Cook's motion and issue a protective order barring Plaintiffs from deposing Kem Hawkins.

Respectfully submitted,

Dated: May 18, 2017

/s/ John T. Schlafer
Andrea Roberts Pierson (# 18435-49)
John T. Schlafer (# 28771-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-mail:  joe.tanner@faegrebd.com
E-Mail:  john.schlafer@faegrebd.com

James Stephen Bennett (# 22869-02)
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana  46802
Telephone: (260) 424-8000
Facsimile: (260) 460-1700
stephen.bennett@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

Case 1:14-ml-02570-RLY-TAB   Document 4730   Filed 05/18/17   Page 11 of 11 PageID #:
11256

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2017, a copy of the foregoing **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER BARRING PROPOSED DEPOSITION OF KEM HAWKINS** was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.  Lead Counsel for Defendants will serve any non-CM/ECF registered parties.

/s/ John T. Schlafer