### IN THE UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND          Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION

                                        MDL No. 2570
_____

This Document Relates to All Cases

_____

### COOK DEFENDANTS' MEMORANDUM IN OPPOSITION TO
### PLAINTIFFS' MOTION TO PERMIT SUPPLEMENTAL EXPERT OPINIONS

The Cook Defendants[1] urge the Court to deny Plaintiffs' Motion to Permit

Supplemental Expert Opinions on Documents That Were Not Timely Disclosed (Dkt.

4690).  Plaintiffs have not shown the good cause required by Rule 16(b) for such an

extension of the expert disclosure deadline, and such supplementation would in any event

threaten serious disruption of the Court's intended trial schedule.  As this Court stated

during the February status conference, "there would be no supplementation unless

somebody gives me a pretty darn good reason that it needs to be done.  You've got to cut

this off at some time and just try the case."  February 9, 2017, Transcript, at 30:15-18.

With respect to the Dotter documents, Plaintiffs try to blame the Cook Defendants

for Plaintiffs' own delay and inaction in asking the Dotter Institute for those documents.

Moreover, Plaintiffs have failed to identify any information in or feature of the Dotter

---

[1] Defendants Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated),
and William Cook Europe ApS.

documents that differs from the information Plaintiffs experts already relied on or that would justify supplementation.

With respect to the Cook IVC Filter Data Summary ("Data Summary"), the Cook Defendants timely and appropriately disclosed this summary in response to a CMO-2 request for documents received with Plaintiff's notice for the deposition of Dr. Jennifer Brown, an employee of Cook Research, Incorporated, on March 21, 2017.  Nothing in the Rules of Procedure, this Court's orders, or Plaintiffs' discovery requests required the Cook Defendants to produce this newly created document any earlier.  Plaintiffs already had access to the publicly available literature and MAUDE data reflected in the summary, and Cook produced to Plaintiffs the sales and complaint data listed in the document months before Plaintiffs' expert deadline.  Plaintiffs have identified nothing new that would justify supplementation.  Although Plaintiffs argue that the Cook Defendants did not timely provide Plaintiffs with Cook's analysis of the literature and data, Plaintiffs do not deny that they had access to the underlying information and could have performed the same analysis themselves.

## I.   Plaintiffs' Motion Does Not Present a Current, Actual Need for Supplementation.

The Court should deny Plaintiffs' motion at the threshold because the motion does not present any real or present need for modifying the pretrial schedule or granting any other relief.  Although Plaintiffs "seek leave to have certain of their experts provide a brief addendum to their reports" addressing the Dotter documents and the Data Summary, Pl. Memo. at 1, Plaintiffs fail to demonstrate—indeed, fail to even *claim*—that their experts *actually* need to submit any supplemental reports.  Absent such a showing, Plaintiffs have not shown the "good cause" required by Rule 16(b).  *See United States v.*

*Cinergy Corp.*, 1:99-CV-1693LJMJMS, 2008 WL 695926 at *2 (S.D. Ind. Mar. 12, 2008) ("[A] party seeking to alter or modify a deadline must …demonstrate good cause to do so.").

Plaintiffs' motion does not assert that any of their experts actually needs or wants to supplement any expert report based on the Dotter documents or the Data Summary, which Plaintiffs have possessed since April 17 and April 9 respectively, and Plaintiffs certainly offer no factual support for any such claim. With respect to the Dotter documents, Plaintiffs simply assert that the documents are "the same type of evidence" as their experts previously examined and that those experts *might* want to amend their opinions based on the documents:

> Cook's failure to procure the evidence should not prevent Plaintiffs' experts from now relying and opining on it, ***should they deem it important to do so***.

Pl. Memo. at 7 (emphasis added). With respect to the Data Summary, Plaintiffs baldly assert that it "would have been presented" to their experts and "could have" affected their analysis. Pl. Memo. at 9-10. Again, however, Plaintiffs offer no declaration from any expert and no other support for any conclusion that any Plaintiffs' expert *actually* needs to supplement a report to account for the information in the data summary.

In fact, by their own admission, ***Plaintiffs have not yet even consulted with their experts*** to determine whether supplementation is needed based on the Dotter documents and the IVC filter data summary, as the last paragraph of Plaintiffs' motion makes clear:

> ***Plaintiffs request they be given 14 days from the date of ruling to consult with their experts regarding the Dotter documents and the IVC Filter Data Summary to determine whether any expert should provide an addendum.*** If so, Plaintiffs request an additional 14 days for disclosure of additional opinions based on and limited to these documents. Plaintiffs request that

> Cook be required to bear the expenses borne by all parties,
> counsel, and witnesses with respect to any follow-up discovery of
> Plaintiffs' experts should the Court order such discovery.

Pl. Memo. at 11 [Dkt. 4690] (emphasis added).  In other words, Plaintiffs do not and cannot claim at this time that their experts *actually* need to supplement their reports because Plaintiffs have not yet consulted with those experts.

In the roughly six weeks since they have obtained the Dotter documents and the Data Summary, nothing prevented Plaintiffs from consulting with their experts about the documents in question and determining whether the experts believe any supplemental report is necessary, and nothing stops them from doing so now.  Despite this opportunity, however, Plaintiffs have neither consulted their experts about whether supplementation is needed nor offered the Court any reason for their failure to do so.  As far as Plaintiffs can represent to the Court, their experts may have no need at all to supplement any opinions, and this whole motion will have been a complete waste of the Court's and the parties' time.

Before bringing a motion like this one, Plaintiffs must *actually* consult their experts about whether supplementation is needed.  *If* Plaintiffs' experts in fact believe supplementation is necessary, then—and *only* then—may Plaintiffs properly bring a motion for leave to supplement.  That motion would include documentation from the experts explaining how the Dotter documents or the data summary affects the experts' opinions and why the experts need to supplement their reports.  Plaintiffs' present motion offers no such documentation; all the Court has before it now are bald assertions by Plaintiffs' attorneys, and that is not a sound ground for relief.  *Cf. Radich v. Goode*, 886 F.2d 1391, 1395 (3d Cir. Pa. 1989) ("The adversary system recognizes the right and

practice of attorneys to take adversarial license with evidence and argue it as fact. It does not recognize argument as a surrogate for either evidence or fact.").

Plaintiffs' motion is at best premature and potentially wholly unnecessary, and it does not establish the good cause necessary to justify modifying the Court's schedule. *See* Fed. R. Civ. P. 16(b).  The Court should deny the motion until and unless Plaintiffs actually consult with their experts and document some actual and current basis for a need to supplement.  Only then could the Court evaluate whether Plaintiffs have actually demonstrated good cause for supplementation, and only then could it balance Plaintiffs' claimed need to supplement against the disruption of the pretrial and trial schedule that such supplementation would leave in its wake.  *See* Section IV below.

## II.  Plaintiffs' Delay in Seeking and Acquiring the Dotter Documents from the Entity that Possessed Those Documents Does Not Justify Permitting Plaintiffs to Serve Supplemental Expert Reports.

Even assuming for the sake of argument that Plaintiffs had offered the Court some evidence that their experts actually need to supplement their expert reports based on the Dotter documents, the Court should nevertheless deny Plaintiffs' motion to supplement with respect to those documents because Plaintiffs fail to exercise proper diligence in obtaining these documents.  Plaintiffs had the knowledge, the motive, and the opportunity to obtain these documents *years* ago, using the same method Plaintiffs eventually used successfully in April 2017.  Plaintiffs cannot justify supplementation by blaming the Cook Defendants' for Plaintiffs' own failure to pursue the discovery they believed they needed, and the Court should deny the motion.

A.  **Factual Background**

The Dotter Institute is an independent division of the Oregon Health & Science University School of Medicine charged with developing a multidisciplinary program in interventional therapy with emphasis on interventional education, research, and patient care.  On information and belief, in 2006, the Dotter Institute facilitated a sheep study by Japanese physicians, which included six sheep simultaneously implanted with *both* a Celect and a Tulip filter.  The physicians retrieved the filters at two- and twelve-week intervals to evaluate the ease of retrievability of the filters.  The study was not performed by Cook or by any agent of Cook, and it had no relation to Cook's regulatory approvals for the Tulip and Celect.  Plaintiffs do not claim that any Cook Defendant considered this study of six sheep by two Japanese physicians in the design or manufacturing processes for the Tulip or Celect.  *See* Plaintiffs' Motion, *passim*.

Plaintiffs' document requests included requests for documents in connection with Cook's IVC filter-related animal studies.  *See* Plaintiffs' Master Set of Requests for Production of Documents Nos. 18 and 19 (January 15, 2015).  Setting aside for the moment the question of whether the Dotter study was even a "Cook" animal study at all, the Cook Defendants possessed only a few documents related to the Dotter study, and their response to Plaintiffs' requests included those few documents.  Although the Dotter Institute facilitated studies for physicians on Cook products, including (apparently) the retrievability study at issue here, Dotter is not a part of any Cook company, and the Cook Defendants have no control and have never claimed to have any control over Dotter, its documents, or the Japanese physicians involved.  *See* 2/21/2017 Hearing Tr. at 43:11-44:4 (describing lack of control and efforts made to get documents anyway).

6

Plaintiffs have known of the existence of the Dotter Institute's filter retrieval study since at least October 9, 2015, when the Cook Defendants produced a protocol for a Dotter retrievability study as part of a document production. Through all of 2016 and into 2017, Plaintiffs did nothing to try to obtain documents related to this Dotter study from the Dotter Institute itself. Plaintiffs only inquired further about the Dotter Study on January 20, 2017, *over 15 months after learning of the study*, when one of Plaintiffs' attorneys emailed a Cook attorney requesting a copy of the Dotter study (among others) for Plaintiffs' experts. *See* Exhibit A attached. The Cook attorney emailed back 10 days later and informed Plaintiffs' attorneys: "This testing was done at the Dotter Institute. The email chain at CookMDL2570_0773352 indicates that no data beyond the original suggested protocol was kept at Cook or any subsidiary." *See* Exhibit B attached.

At a February 7, 2017 informal discovery conference under Local Rule 37(a), Plaintiffs raised the issue of the Dotter documents and argued (without submitting any proof) that the Cook Defendants had control over the Dotter Institute that would give them access to the Dotter study and related documents. The Cook Defendants repeated that they possessed no Dotter documents that they had not disclosed and that they had no control over the Dotter Institute that would allow them to force the Dotter Institute to produce such documents (if they existed). Judge Baker's comments on this issue—again, with no evidence before him—were as follows:

> The 3E item [the Dotter documents] strikes me as something that's different. 3E, it looks like there truly is a long-standing relationship between Cook and the Dotter Institute. There does appear to be financial support going on there. There appears to be a fact that there was specifically a contract with the defendant to perform studies. And I think that the Dotter Institute had provided Cook with copies of the results of the study. All of that seems to suggest custody and passages control to me. … 3E, there does seem to be custody and control.

7

\*\*\*

THE COURT: With respect to 3B, which is No. P03118B-04A, and 3E, Retrievability of the Celect and Gunther Tulip Vena Cava, I view those issues as both being ones of custody and control; that is, whether Cook has sufficient custody and control over the items such that they need to be produced.

\*\*\*

I think 3E is different. I think there is custody  and control with respect to 3E, involving the Dotter Institute, because there, there does appear to be a long-standing relationship with the defendant. There does appear to be financial support.

There appears to be some type of a contract with defendant to perform studies. And as a result of that – and I would also say that I think that Dotter provided Cook with a copy of the results of the study. As a result of that, I think there is sufficient facts to establish custody and control for 3E. So 3E would need to be produced…. That would be by February 17th.

2/7/17 Tr. at 26:128-27:8, 55:11-16, 55:25-56:11.[2]

Despite knowing that they had no actual control over the Dotter Institute and its documents, the Cook Defendants nevertheless complied with the Court's direction and expressly asked the Dotter Institute again to locate and produce the Retrievability study and any related documents.  Dotter personnel again informed the Cook Defendants that they had no such documents.  Cook attorneys reported these efforts and their results to the Court at the February 17, 2017 conference with Judge Baker, as the passages Plaintiffs quote in paragraphs 6 and 7 of their motion demonstrate.  *See* Pl. Mtn. at 2-3 (Dkt. 4690).

Finally, on March 9, 2017, ***38 days after Cook informed them that Cook had no other documents concerning the Dotter study***, Plaintiffs served their non-party subpoena on the Dotter Institute.  On April 17, in response to the subpoena, the Dotter Institute

---

[2] In part to avoid this type of forced speculation about issues of fact, Magistrate Judge Baker recently suspended the usual Local Rule 37-1 informal conference process for complex discovery-related issues in this litigation, instead adopting a presumption "that in most instances a formal motion and briefing will be required."  *See* Dkt. 4650 at 5.

produced documents regarding the Dotter study, documents whose existence the Dotter Institute had not previously disclosed to the Cook Defendants.  Plaintiffs' motion offers no reason that Plaintiffs could not have subpoenaed the Dotter Institute and timely obtained these documents months before the deadline for the disclosure of their expert reports.

In sum, once Plaintiffs belatedly raised the issue of the Dotter Study, the Cook Defendants made every reasonable effort to obtain the Dotter documents from the Dotter Institute, and Plaintiffs do not claim otherwise.  The Cook Defendants repeatedly told both Plaintiffs and Judge Baker that they do not control the Dotter Institute, which is a wholly separate and independent entity.  The Dotter Institute's failure to provide the documents to the Cook Defendants was not the result of the conduct of the Cook Defendants.  Again, Plaintiffs do not claim otherwise.

### B.  Plaintiffs' lack of diligence in pursuing the Dotter documents undercuts their claim of good cause for extending the expert deadline.

Plaintiffs failed to exercise diligence in pursuing the Dotter documents, and therefore cannot show good cause for an extension of the expert disclosure deadline to accommodate further expert opinions addressing those documents.  *See, e.g., Leibel v. NCL (Bahamas) Ltd.*, 185 F. Supp. 3d 1354, 1356-57 (S.D. Fla. 2016) (finding no good cause to modify expert deadline where party waited two months to seek substitution of expert likely to be excluded).

Plaintiffs' implication that they somehow justifiably depended on the Cook Defendants to produce the Dotter documents is unreasonable on its face.  As soon as Plaintiffs asked them about the documents, the Cook Defendants told Plaintiffs that Cook did not have either the documents themselves or any sure way of obtaining any

documents from the Dotter Institute.  Those representations were true, and Plaintiffs do not claim otherwise.  In contrast, Plaintiffs made no effort until *after* the expert deadline to obtain any Retrievability study documents that might exist from the one entity that they knew must *actually* have them:  the Dotter Institute itself.

In a nutshell:  Plaintiffs could have sought the documents from the Dotter Institute any time after they learned of the existence of the Dotter Study on ***October 9, 2015***, and they did not.  Plaintiffs could have subpoenaed the information from the Dotter Institute immediately on learning that the Cook Defendants had been told the Dotter Institute possessed no such documents on ***February 17, 2017***, and they did not.  Plaintiffs finally subpoenaed the Dotter Institute on March 12, 2017, and received the documents 31days later.  But even then, instead of promptly asking their experts whether supplementation was necessary, Plaintiffs have continued to delay.  Plaintiffs' 15-month delay in seeking documents to support their experts' opinions does not justify upsetting the Court's entire bellwether pretrial and trial schedule.

Plaintiffs' lengthy and unexplained delay in seeking the Dotter documents from the appropriate source demonstrates a lack of diligence that undercuts any claim of good cause for extending their deadline for expert disclosures.  *See, e.g., Birch v. Polaris Industries, Inc.*, 812 F.3d 1238, 1247-48 (10th Cir. 2015) (finding no good cause to modify deadline where plaintiff waited four months to seek to amend complaint to change theory); *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1312 (11th Cir. 2009) (finding no good cause to modify litigation schedule where plaintiff delayed seeking to substitute party); *Headfirst Baseball LLC v. Elwood*, 206 F.Supp.3d 148, 154-55 (D.D.C.2016) (finding no good cause where defendant did not exercise diligence in

seeking to amend counterclaim).  The Court should deny Plaintiffs' motion as it relates to the Dotter documents.

### C. Plaintiffs cannot establish good cause for supplementation because they fail to identify any unique or significant information in the Dotter documents.

Even assuming that Plaintiffs had exercised diligence in obtaining the Dotter documents, the Court should nevertheless deny Plaintiffs' motion because Plaintiffs have made no showing that the Dotter documents contain any information that would alter or affect their experts' opinions and require supplementation of any of their reports.  In the course of this MDL litigation, the Cook Defendants have produced enormous volumes of medical, technical, and scientific information, and the publicly available medical literature provides even more.  Plaintiffs' experts have undeniably relied on this massive collection of data in arriving at their current opinions; for example, the appendix to Dr. Kessler's report includes a 25-page list of documents, articles, studies, and other materials on which he relied.

Plaintiffs offer little information concerning how the Dotter documents fit into this larger picture or why the documents might justify supplementation of expert reports. Plaintiffs' motion loosely describes the types of documents Dotter produced (emails, images, photographs, communications) and generally asserts that "[t]his is precisely the type of evidence relied upon and examined by Plaintiffs' experts, particularly Drs. Kessler, Betensky, and Rajebi."  Pl. Mtn. at 4-7.  But Plaintiffs offer no reason for the Court to conclude that the relatively tiny volume of additional information Dotter provided is significant in the larger picture, or that that information could or would prompt any change of any kind in Plaintiffs' experts' opinions.  Neither Plaintiffs nor

their experts claim that the information in the Dotter documents is unique or different from the mountain of other data previously available, or that anything in the Dotter documents undercuts or contradicts any information on which the experts have relied.

Given Plaintiffs' failure to show that the Dotter documents are somehow significant in the context of the medical and scientific issues in this case or that they would actually alter Plaintiffs' experts' opinions, Plaintiffs have not shown good cause to modify the litigation schedule to permit expert supplementation. After all, if you have sampled 100 grapefruit and your report states that grapefruit are sour, you don't need to supplement that report simply because someone hands you one more grapefruit.

### III. The Cook Defendants' Production of the IVC Filter Data Summary Was Timely and Does Not Justify Permitting Plaintiffs to Serve Supplemental Expert Reports.

Even assuming again, for the sake of argument that Plaintiffs had offered the Court some evidence that their experts believe they need to supplement their reports based on the Data Summary, the Court should nevertheless deny Plaintiffs' motion to supplement with respect to this summary. The Cook Defendants did not violate any discovery obligation, and Plaintiffs had both the means and the opportunity to prepare such a summary themselves had they wished to do so. Plaintiffs' motion tries to fabricate a need for supplementation by blaming the Cook Defendants for Plaintiffs' own failure to pursue and assemble IVC filter information in a form they now find useful, and the Court should reject Plaintiffs' argument.

### A. Factual Background

Plaintiffs served a master set of document requests on the Cook Defendants on January 30, 2015. *See* Plaintiffs' Master Set of Requests for Production of Documents

(Jan. 30, 2015).  These requests consistently asked the Cook Defendants to produce documents "from 2000 to the present" or "from 2000 until the present."  *See id.* at Requests Nos. 6, 14, 15, 18, 28, 40, 42, 49, 50, 51, 56.  The Cook Defendants responded to these requests on April 15, 2015, identifying and beginning the rolling production of responsive documents in existence on that date.  *See* Cook's Objections and Responses to Plaintiffs' Master Set of Requests for Production of Documents (4/15/15).  As Plaintiffs acknowledge, the Data Summary at issue in the current motion did not exist on that date, and the Cook Defendants therefore could not and did not produce it.

The Cook Defendants completed the Data Summary in August 2016 as part of their continuing effort to obtain post-market feedback on its IVC filters.  The Data Summary consists of a compilation of data on Cook's and other manufacturers' filters from internal and publicly-available sources, including (1) publicly available medical and scientific literature, (2) publicly available MAUDE statistics, and (3) Cook's internal sales and complaint data, previously produced to Plaintiffs in the litigation.  The Data Summary also describes the methodology and results of systematic literature searches that the Cook Defendants conducted to gather information on the effectiveness of IVC filters in preventing pulmonary embolism and the safety of Cook's filters.  Cook intended to provide the Data Summary to a group of physicians with varying specialties to obtain their thoughts on its analysis and facilitate discussion on various topics relating to IVC filters.

Even before the Cook Defendants produced the Data Summary to Plaintiffs, Plaintiffs already had access to virtually all of the information used in the Data Summary and could have performed their own analysis and summary of the data to reach the same

conclusions about the safety and efficacy of Cook's filters as those stated in the Data Summary.  Examples of the information to which Plaintiffs had access well before the deadline for their experts' reports include:

- Background information on IVC filters;

- A list of publicly available literature;

- Published clinical evidence on IVC filter use;

- Publicly available MAUDE data;

- Identification of Cook's involvement in CIVC and PRESERVE; and

- Sales and complaint data produced by Cook.

The Data Summary thus provided Plaintiffs with virtually no new information,[3] and Plaintiffs do not claim otherwise.

### B.   The Cook Defendants did not violate any discovery obligations in not producing the Data Summary sooner.

Plaintiffs seek to excuse their experts' apparent failure to consider the information in the Data Summary for their original expert reports by fabricating a discovery violation by the Cook Defendants.  Contrary to Plaintiffs' suggestion, however, the Cook Defendants did not violate any discovery obligation.  They produced the Data Summary in in response to an April 2017 CMO-2 request for production they received with Plaintiff's notice for Dr. Jennifer Brown's deposition that called for the production of the Data Summary.  The Cook Defendants had no obligation to produce the Data Summary before that.

---

[3] As far as the Cook Defendants can determine, the Data Summary included only two pieces of information that were not already available to Plaintiffs, one concerning an updated IFU and the other a 2016 analysis of patient deaths.  None of this information relates to Plaintiff Hill or Plaintiff Gage, and Plaintiffs' motion does not claim that this information would require any of their experts to supplement their reports.

Assuming *arguendo* that the Data Summary would have fallen within the subject matter of one of Plaintiffs' original 2015 document requests,[4] the Cook Defendants breached no discovery obligation by failing to produce the summary after its creation in 2016.  Simply put, the Rules of Civil Procedure impose no obligation on a party to supplement a response to a document request with documents created *after* the party's initial response.  This is doubly true where, as here, Plaintiffs expressly limited their document request to a period that does not include the new document.

Plaintiffs baldly assert that "[t]here is no question this document [the Data Summary] should have been produced in supplemental response to Plaintiffs' original requests for production," Pl. Memo. at 8, but they cite no rule or case authority to support this assertion.[5]  In fact, Plaintiffs are mistaken, and nothing in the rules or the case law required the Cook Defendants to supplement their original document production with the data summary.

A party's obligation to supplement discovery responses is governed by Federal Rule of Civil Procedure 26(e)(1), which provides in relevant part:

> A party … who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:

---

[4] Plaintiffs' motion fails to identify any specific document request to which they claim the Data Summary would have been responsive.  This is in contrast to Plaintiffs' argument concerning the Dotter documents, discussed above, where Plaintiffs specifically identified Requests 18 and 19 as requesting documents concerning animal studies.

[5] Plaintiffs' assertion that "the fact that the Cook Defendants voluntarily produced" the summary "proves" that they had an obligation to produce the summary as a supplemental response, Pl. Memo. at 8, is mistaken.  The Cook Defendants produced the Data Summary because it was responsive to a CMO-2 request for production that it received on March 21, 2017.  The production of the Data Summary had nothing to do with any duty to supplement under Rule 26(e)(1); as discussed below, the Cook Defendants had no such duty.

> **(A)** in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> **(B)** as ordered by the court.

Fed. R. Civ. P. 26; *see also* Adv. Comm. Notes to Rule 26(e) ("Subdivision (e) provides that a party is not under a continuing burden except as expressly provided").  Case law confirms that this provision means what it says; the duty to supplement arises *only* when a party discovers that its initial disclosure or response was incomplete or incorrect.  As one court put it:

> "Rule 26(e) does not place a continuing burden on a party responding to a discovery request to supplement with new information."  *MSC. Software Corp. v. Altair Eng., Inc.*, No. 07–12807, 2012 WL 1340445, at *2 (E.D. Mich. Apr.18, 2012) (citing Adv. Comm. Notes to Rule 26(e)). Rather, the obligation to supplement arises only, in relevant part, where a "party learns that in some material respect the disclosure or response is incomplete or incorrect ...." Fed. R. Civ. P. 26(e)(1)(A).

*Rhein v. Smyth Auto., Inc.*, 2012 WL 3150953 at *3 (S.D. Ohio Aug. 2, 2012).

Under this standard, a party is not obligated to supplement a previous discovery response with newly developed information.  *See Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*, 2008 WL 4786671 (N.D. Cal. Oct. 29, 2008) ("nothing in [Rule 26(e)(1)] imposes a never ending obligation to produce documents continuously as they are created").  The duty arises only if subsequently developed evidence renders the party's previous responses incomplete or inaccurate.  *See, e.g.*, *Rhein v. Smyth Auto., Inc.*, 2012 WL 3150953 (S.D. Ohio Aug. 2, 2012) (denying request for supplementation of later generated documents where "[t]here is no evidence that the documents generated after October 31, 2011 make defendants' previous responses incomplete or incorrect").

The Data Summary here does not render any of the Cook Defendants' previous responses incomplete or inaccurate, and Plaintiffs do not claim that it does.

Plaintiffs also undercut any argument that the Cook Defendants had a duty to supplement with newly created documents by their own express limitation of the time period for responsive documents to the period "from 2000 to the present" or "from 2000 until the present."  The Sixth Circuit noted the effect of such limiting language on the supplementation obligation in *Taylor v. Union Inst.*, 30 F. App'x 443, 452 (6th Cir. 2002).  In *Taylor*, the court affirmed a district court ruling that defendant was not obligated to supplement a document production with a document not yet generated at the time of original production.  The court stated:

> The district court held that Union was not so obligated to disclose the Dobbins memorandum. According to the court, the request did not call for the memorandum as it requested only those documents regarding racial discrimination "for the last ten (10) years." The request for production referred to documents in a finite period of time, the ten years prior to Taylor's request, or at least prior to Union's response. **The document in question was created well after both the request and response.**

*Id.* at 451 (emphasis added).

Here, the Cook Defendants properly responded to Plaintiffs' original document requests with the responsive documents that existed at "the present," that is, at the time of the production.  Plaintiffs never served a document request seeking documents created after that April 15, 2015, production.  *See id.* at 452 ("If [plaintiff] wants the benefits of a self-executing duty to supplement, she ought not disable it with temporally limiting language in her request."); *Dong Ah Tire*, 2008 WL 4786671 at *2 ("To say that the duty to supplement covers documents generated after that date would render meaningless any delineated time period for production.").

Rule 26(e) does not place a continuing burden on a party responding to a discovery request to supplement with new information. As the Advisory Committee's Notes point out, a duty of continuous supplementation would impose substantial burdens, "especially in protracted cases" like the MDL proceedings here.  Adv. Comm. Notes to Rule 26(e).  The Cook Defendants fulfilled their discovery obligations, and Plaintiffs cannot use a nonexistent failure to supplement to justify supplemental expert reports. Plaintiffs have failed to show good cause, and the Court should deny their motion.

### C. Plaintiffs cannot show good cause for supplementation because they cannot identify any new information in the Data Summary.

Even assuming for the sake of argument that the Cook Defendants had had a duty to supplement their document production with the newly created summary, the Court should nevertheless deny Plaintiffs' motion because Plaintiffs have made no showing that the Data Summary contains any new information that would alter or affect Plaintiffs' experts' opinions or require supplementation of any of their reports.

As discussed above, virtually all of the data that Cook analyzed in the Data Summary was already otherwise available to Plaintiffs and their experts months before their March 17, 2017 expert disclosure deadline, either through Cook document productions or from the public domain.  Although Plaintiffs claim that the summary was "an important and unique document," Pl. Memo. at 7, they cite no information in the summary that they did not already possess or have the ability to access.

Given Plaintiffs' access to the data analyzed by Cook in the Data Summary prior to Cook's  production of the summary, Plaintiffs had every opportunity to summarize that data themselves well before their expert deadline.  Indeed, they apparently tried to do so; Plaintiffs acknowledge that their experts Dr. Kessler and Dr. Betensky "painstakingly

assembled from dozens of documents precisely this sort of data for the period 2000-2009." Pl. Memo. at 9.  Indeed, the vast majority of the literature Plaintiffs' experts cite in their reports is referenced within the Data Summary.  The fact that the Cook Defendants created a summary that Plaintiffs now like better than the summary their own experts prepared does not provide "good cause" to supplement their expert reports.

In sum, the Data Summary contains information that was available to Plaintiffs before its production, and Plaintiffs could have created their own summary of that information had they chosen to do so.  Moreover, Plaintiffs fail to identify anything in the document that would actually alter their experts' opinions.  Plaintiffs assert that the summary "could have been put to any number of uses by these experts [Drs. Kessler and Betensky], and perhaps others," Pl. Memo at 10, but such speculation does not justify departure from this Court's incredibly tight scheduling order. Plaintiffs have not shown good cause to modify the litigation schedule to permit expert supplementation, and the Court should deny their motion.

## IV. Plaintiffs' Proposed Supplementation Will Disrupt The Court's Bellwether Trial Schedule

The Court should also deny Plaintiffs' motion for leave to supplement because of the effect that such supplementation and its aftermath would have on the bellwether trial schedule.  The schedule between now and the Court's October 23, 2017, trial setting is incredibly tight.[6]  Plaintiffs' motion threatens substantial disruption to that schedule.

---

[6] For the Court's convenience, Cook attaches as Exhibit C the Chart of Parties' Proposed Deadlines, jointly submitted to the Court on April 25, 2017.  The Court has requested that the parties submit the dates in the form of a motion and Second Amended Bellwether Trial Plan, and the parties are in the process of doing so.

Plaintiffs propose that they be permitted to supplement some 28 days from the Court's ruling on Plaintiffs' Motion, and they specifically identify three experts who may wish to supplement their reports—Drs. Betensky, Rajebi, and Kessler—but leave open the possibility of supplementing other reports.  As of the date of this response, the Cook Defendants already have deposed Drs. Betensky and Rajebi, and Dr. Kessler is scheduled to be deposed on July 1 and 2, 2017.  Cook's own experts' reports are due on June 8, 2017.

Should the Court be inclined to consider permitting supplementation notwithstanding Cook's objections, the Court should require in the interests of efficiency and judicial economy that Plaintiffs provide such supplementation immediately to avoid further disruption of the Court's schedule.  This should impose no unreasonable burden on Plaintiffs, given that they have already had the documents at issue since April 7 and 17, 2017.  In addition, the Cook Defendants should not be required to disclose their expert reports until a reasonable time *after* they receive Plaintiffs' supplemental reports.

Unless the Court either denies Plaintiffs' motion or permits only immediate, narrowly-targeted supplementation only, Plaintiffs' proposal for supplementation would require modification of (1) the June 8 deadline for Cook's expert reports; (2) the July 17 deadline to compete expert depositions; (3) the August 9 deadline for *Daubert* and summary judgment Motions; and (4) September 6 and 20 deadlines for responses and replies to the *Daubert* and summary judgment motions.  The resulting impact would be felt most profoundly by the Court itself , which already has only **one month**  to hear argument and rule on all of the *Daubert*, summary judgment, and motions in limine in *Hill* and *Gage*.

Put simply, the schedule is already less than ideal, and granting Plaintiffs' request to supplement would make it untenable.  For this reason as well, Plaintiffs' motion should be denied.

**CONCLUSION**

The Court should deny Plaintiffs' motion.  Plaintiffs have asked the Court to alter the scheduling order to permit their experts to supplement their reports without ever asking their experts whether they actually need to supplement their reports.  Plaintiffs cannot blame the Cook Defendants for Plaintiffs' own delay and inaction in asking the Dotter Institute for its documents, and in any event have failed to identify any information in or feature of the Dotter documents that differs from the information Plaintiffs experts already had or would justify supplementation.  The Cook Defendants had no obligation to supplement their original document disclosure with the Data Summary, and properly produced the Data Summary in connection with a CMO-2 request for documents included with Plaintiff's notice of Dr. Jennifer Brown's deposition.  Furthermore, Plaintiffs had all of the data Cook analyzed in the Data Summary prior to its production, and could have performed the same analyses on the data that Cook did to reach Cook's conclusions in the Data Summary about the safety and effectiveness of its filters.

Respectfully submitted,

Dated: May 31, 2017

/s/ J. Joseph Tanner
Andrea Roberts Pierson (# 18435-49)
J. Joseph Tanner (#11856-49)
John T. Schlafer (# 28771-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-mail:  joe.tanner@faegrebd.com
E-Mail:  john.schlafer@faegrebd.com

James Stephen Bennett (# 22869-02)
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana  46802
Telephone: (260) 424-8000
Facsimile: (260) 460-1700
stephen.bennett@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 31, 2017, a copy of the foregoing COOK DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO PERMIT SUPPLEMENTAL EXPERT OPINIONS was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system. Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

/s/ J. Joseph Tanner