# Exhibit B

**Campbell, Andrew L.**

| | |
|---|---|
| **From:** | Campbell, Andrew L. |
| **Sent:** | Wednesday, May 31, 2017 3:14 PM |
| **To:** | Campbell, Andrew L. |
| **Subject:** | FW: Update on open discovery issues MDL 2570 |

From: "Douglas B. King" <doug.king@woodenmclaughlin.com>
Date: January 30, 2017 at 7:19:20 PM EST
To: "bmartin@bencmartin.com" <bmartin@bencmartin.com>
Cc: "Mheaviside@hrzlaw.com" <Mheaviside@hrzlaw.com>, "David Matthews (dmatthews@thematthewslawfirm.com)" <dmatthews@thematthewslawfirm.com>, "mschultz@levinlaw.com" <mschultz@levinlaw.com>, "jwilliams@rwp-law.com" <jwilliams@rwp-law.com>, "David C. DeGreeff (ddegreeff@wcllp.com)" <ddegreeff@wcllp.com>, "'andrea.pierson@faegrebd.com'" <andrea.pierson@faegrebd.com>, "James M. Boyers" <jim.boyers@woodenmclaughlin.com>, CookIVCFMDL <CookIVCFMDL@WoodenMcLaughlin.com>, "John.Schlafer@faegrebd.com" <John.Schlafer@faegrebd.com>
**Subject: Update on open discovery issues MDL 2570**

Ben, and colleagues,

As promised in my email of Friday, January 27, 2017, 5:15 PM, a copy of which is attached above for your convenience, I write to provide an update on the status of what we understand are the open discovery issues.

The format of this response follows the items numbered 1—12 of Ben's email to Andrea and me of Tuesday, January 24, 2017, 6:21 PM, with the corresponding paragraphs of Matt's email to me of the same day at 4:21 PM interspersed in Ben's email. The paragraphs from Matt's email are in **bold** beneath the paragraphs in Ben's email.

Our responses to the specific paragraphs of Ben and Matt's emails are in red below Matt's paragraphs.

1. Slides for VCA1, VCA2 and VCA3. See Matt's email (these have been requested for at least five weeks but I am certain much longer if I were to check my emails)

   **We requested original materials for ALL animal and clinical in our original RFP. They were requested again the day of or shortly after our 12/13/16 meeting w Fishbein (5 weeks ago). I believe they were requested even before that.**

   As to any histology slides that might exist from VCA1 (also known as TS040008), VCA2 (a/k/a FS080102), and VCA3 (a/k/a FS080105), we continue to investigate and consult with our clients.


2. Materials from OUS study (see Matt's email)

   **Imaging files, eCRF forms, CRF forms, all associated data collection and any other documents or data in Cook's possession relating to the study. Requested in our original RFP (18 &19)  Requested again by email 1/21 (imaging) and 1/22 (CRFs, etc.) The protocol indicates that MEDI would be in possession of all such materials.**

1

Imaging studies from the OUS study (a/k/a GTMX) were produced today on a drive that was sent via Overnight Delivery to Karin Scheele at Gallagher & Kennedy, per the attached letter of John Babione of our firm dated today. As indicated in John's letter, not all of the imaging studies from GTMX could be produced today, and the balance will be produced tomorrow.

When we spoke last week, I told you that eCRF and CRF forms for European patients enrolled in MTMX were not available to us because they remain in Denmark because of the EU Data Privacy Directive. I have since been informed that a set of the eCRF and CRF forms for patients enrolled in the study are archived at Cook Research Incorporated ("CRI") in West Lafayette, IN. We are in the process of obtaining them from CRI and they will be produced when they are made available to us.

3. Animal Studies Reports (as described in Matt's email)

Draft final and actual final reports for the animal studies identified below.. Originally requested in RFP (18 & 19). Requested again by email on 1/20.

1. **P030118D-03A: "Migration Test *in Vivo* (Sheep): Comparison of the Cook Celect Filter and the Gunther Tulip Filter (P030118D-03A) (Zaragoza). See draft protocol 0484250**

    Report produced at CookMDL2570_0204615. As indicated in the Device history file produced at CookMDL2570_0100977 (among others), P030118D-03A became "The Final Report for the Nonclinical Feasibility Study on Vena Cava Dimensional Measurements Pre- and Post Implantation of 2nd Generation Günther Tulip Vena Cava Filters. The study carried the internal code CI-VCDM.

2. **P030118D-04A: "Animal Comparison Test of the Cook Celect Filter and Gunther Tulip Vena Cava MReye Filter: Radial Force Needed to Disengage Filter Legs from the Vena Cava After 30 Days of Implantation" (Zaragoza Summer 2005). Protocol is for 12 sheep, 12 filters.**

    **While Cook drafted the protocol and assisted with study design, the scientists running the study at Zaragoza independently published their findings. See CookMDL2570_0490396 for discussion, and CookMDL2570_0490419 for report Zaragoza published.**

3. FS080102: 12 sheep 12 filters per 029 5478: "A summary of the study, description and analysis of the results along with relevant tables, figures and photos, and a critical evaluation of the results obtained will be written." Note: Saved internally as     "MIAT 01.04 TDMI v1.doc" by "Staff." Related animal use application at 028 5477.

    **Final report produced at CookMDL2570_0188598 in Sept. 2015**

4. VCOB (TS090024). See 0295471 discussing results. 0467213 (draft protocol).

2

**This was a Platinum specific test, which was not collected or produced pursuit to the exclusion of Platinum from discovery and subject to Cook Defendants' objection.**

5. "Retrievability of the Celect and Günther Tulip Vena Cava MReye Filters After 30- and 90-Day Implantation in the Sheep Vena Cava" Protocol is 0447366. We know it happened because Mitch Asami put it on his brag sheet at the end of the year.   Find no report of it.

**This testing was done at the Dotter Institute. The email chain at CookMDL2570_0773352 indicates that no data beyond the original suggested protocol was kept at Cook or any subsidiary.**

4.  Weekly & Monthly Complaint Summaries from WCE (Matt's email).

See examples and bates below. Requested 1/18/17.

Anette Andersen appears to have sent weekly and monthly "WCE complaint reports" to management but in each instance I have checked, the reports have been withheld as "nonresponsive proprietary content." Examples:

0764056 I an email attaching "Complaint Report 37.doc" and "Weekly Report 37.pdf" Both attachments (0764057 and 0764058) have a placeholder stating: "Withheld for Non Responsive Proprietary content"

The same is true for Week 42. See 0764049 (attaching "Open Complaints Week 42.doc" and "Incoming Complaints Week 42.rtf") both of which are withheld on the same basis.

The same is true for Week 36 (0764059) and Week 35 (0764062)

0764054 attaches "WCE Complaints Report July 2008.pdf" which is withheld on the same basis.

0764052 attaches "WCE Complaint Report August 2008.pdf" which is withheld on the same basis.

I can appreciate that WCE-wide complaint reports might include complaints on irrelevant devices, but I would not expect there to have been zero filter-related complaints during the time periods covered by the documents cited above. (Cook  had at least 17 <u>reported</u> perforations in 2008 (0143855) and surely more complaints about perforation than reported perforations, and of course there are many other reasons for complaints aside from perforation).

Even if we are aware of the complaints themselves based on recent or previous productions, these reports and accompanying emails demonstrate contemporaneous

3

management knowledge, which is of obivous importance.  And of course we have no idea whether the reports include further analysis. It's hard to imagine any relevancy objection to summaries of complaints and proporationality also seems a tough sell when it takes more no more work to produce the attachments than it does to claim privilege for them.

   Please accept this as a request that Cook produce <u>all weekly and monthly complaint reports for Tulip and Celect</u> (not merely the random sample above). If they have been produced elsewhere and these privilege claims are in error, please  let me know where I might find them. Given that our expert report deadlines are less than 30 days away, I would appreciate a quick response so we can demand in camera inspection, if necessary, in time to have a ruling and to make use of the information should the court find it discoverable.

   <span style="color:red">Jim wrote Matt on this today, per that letter that is attached. I saw that Matt responded to Jim on this already, and Jim has told me that he will reply directly to Matt.</span>

 5.  Nonresponsive Ongoing Clinical Studies "privileged" documents (Matt's email).

    Here is an example of another privilege type we discussed yesterday:  0624940 is withheld as Non Responsive Ongoing Clinical Studies content.

   But it's title includes TS110172-R. As I appreciate it, the "R" means report and it appears to be the final report for TS110172, which was a cyclic penetration test comparing Celect to Platinum (see the protocol at 0596060). There is no "ongoing study"    in this regard as Platinum cleared nearly 4 years ago. Nor is it clinical. It's bench testing. We have a draft report showing the results (dated before Platinum clearance while Celect was still on the market); but we have no final that I have been able to locate. Of course, even if this is just a different iteration of a draft report, that in itself often has probative value depending on how the report is altered from iteration to iteration.

   It was an attachment to 0624939, which also is withheld on the same basis and perhaps is an email or a cover page (from Torben Andersen custodian file).

   I also pulled the equiset from our database and other docs (possible duplicates?) are withheld on the same basis.  They include: 0319188, 0771330, 0618271, 0618244, 0618268, 0618241, 0618272, 0618269, 0618243, 0618270---roughly 15 total in equiset. I did not take the time to continue searching the remaining ones as the pattern seems clear.

   Please let me know if Cook will produce all of these documents or whether we should request in camera review. I make the same requst regarding the original Clausen email/illustration and any related emails, the original Choules email and powerpoint that was attached to it. I will hold off on the first "nonresponsive junk file" one as it's not apparent that the withheld document is in fact responsive, while that clearly seems to be the case with the others I have raised.

   These are just a few examples I have collected along the way. I don't mean to suggest these are the only such instances. Thanks for a word. Matt

Incidentally: I raised these internally a while back and it is possible they already are part of a pending demand for documents. If so, I apologize for doubling up on them. But I consider these particular examples of particular importance to ongoing expert work, so we need a relatively quick response on them. Thx.

<span style="color:red">Same as # 4 above: Jim and Matt are discussing.</span>

6. Specific Hot Docs Referenced in Other Documents but not Produced (see Matt's email for specifics)

Jim, this is one another I raised way back around the time of AMN's depo and you asked for examples. Namely, where an attachment is referenced in an email within an email chain, but we don't have the attachment (or the original email).

EXAMPLE 1

Below is an email from Brian Choules that was sent to Darell Talbert, Jacob Clausen, and Per Hendriksen (all of whom we have custodian files for).  But it shows up only in AMN's custodian file as Clausen forwarded it to him.  Word searches for the text of Choules email turn up only the version in AMN's files, and if the referenced powerpoint has been produced, I certainly can't find it. The document is 0833688

-----Oprindelig meddelelse-----
Fra: Brian Choules [mailto:choules@medinst.com]
Sendt: 26. februar 2010 05:24
Til: Talbert, Darrell; Christiansen, Henriette Stordal; Clausen, Jacob Lund; Busenbark, Molly; Hendriksen, Per; Fu, Qiang; Kyle Duffin
Cc: Reeves, Sarah; Sahlgren, Susan Gall; Justin Metcalf; Anthony Ragheb
Emne: Re: Update: Scenarios for celect modification

All,
Please find the attached power point including cyclic penetration data and migration resistance testing results. Also attached is a draft feasibility report showing the retrieval forces. We are still in the process of calculating the impulse for the retrieval force data (area of force versus     time).

Brian

EXAMPLE 2

Another example is this email from Clausen to Jessen, Heise, Hendriksen and Talbert. (0756001)

"If we make the barb in platinum can we claim it is a radiopaque marker, as we do on the elongated leg, hence a special 510(K) submission or will it be regarded as a new design and a normal 510(K) submission?"

It is buried in an email chain where, apparently, Heise responded only to Jessen on an unrelated topic (not going to Japan) and Jessen replied ("even better"). We don't have the original email, even in Heise's custodian file. If this simply is a matter of     routine elimination

of emails after X days, I fail to understand how Jessen's response to Heise about taking a trip to Japan survived, but Clausen's email to Heise (and others) did not. Both would have been in the same inbox (Heise's), received one day apart. Note that Clausen's email was accompanied by an "illustration" of the inside barb modification to Celect, but we don't have that illustration because his email vanished from everyone's inboxes. Searching word combinations from Clausen's email yields only this document.

Please help me understand as I am trying to figure out not only how we can obtain documents like this, but the extent of relevant information like this lost to document retention/destruction policies.

**Same as # 5 above; Jim and Matt discussing**

7. Nonresponsive junk mail (described in Matt's email)

Jim, per our conversation yesterday, here is an example of a common "privilege" claim I have run across. It is Bates 063 9935, which is an accompanies an advertisement and is titlted "Press Quality/.joboptions." I'm curious what "nonresponsive junk" means and thought this might be a good example. Thanks. Matt

I think that's it.

**Same as # 6 above; Jim and Matt discussing.**

8. Leigh Conners personnel file

**We expect to produce this electronically tomorrow. A copy will be sent directly to all of you, including Mike Heaviside.**

9. The image files discussed today that were overlooked by you (presuming we get them this will be taken down)

**All previously unproduced animal imaging studies were on the drive that is described in John Babione's letter to Karin Scheele, the second attachment above.**

10. Email deletion: Whether it continues or not

**We continue to discuss this with our clients.**

11. Those things that are still outstanding that we all agree you have agreed to produce but have not yet done so

**Comparing Ben's 11/24/16 letter w/ mine of 1/20/17, here's where I understand we are (and I using the paragraphs as numbered in Ben's letter and mine):**

3. Those portions of the Knowledge Matters binder that are not irrelevant to IVCFs were part of the drive we sent to Karin this morning, the one we would have received on Friday, 1/27/17, but for the weather delay. This is noted in the second latter from John Babione to Karin Scheele that is attached above.

We are still trying to get an uncorrupted copy of the CD that goes in the Knowledge Matters binder, and the Cook Code-Book, Anatomy Handouts, Rapid Review of Anatomy Book, and SIR Interventional Radiology Sourcebook.

4. Have we confirmed that the Brainshark assessment forms for the PowerPoint, Celect Filter Introduction—US Launch, no longer exist ?

Yes

6. Have we confirmed that all scripts or recordings of the Venous Drive-Thru that still exist have been produced ?

Yes

11. Have we confirmed that any CDs made for sales reps to give to docs have been produced ?

Yes

14/16. We are working on a list of RPNs and expect to produce that this week

15. Three financial statements that we think were probably already produced, but couldn't be certain, were on the weather-delayed drive that we produced this morning, per the second letter attached above from John Babione to Karin Scheele. No more recent financial statements exist.

21. We continue to investigate whether complaint files exist for the Tulips in the clinical studies in the appendices to the 1998 and 2000 Cook Incorporated 510(k) submissions, which would be Dockets K983823 submitted 10/28/98 and K000855 submitted 3/15/00.

22. The TrackWise export described in paragraph 22 (on page 10) of my letter to Ben of 1/20/17 will be produced tomorrow or Wednesday.

25. The 11 un-redacted documents in Ben Martin's sub-paragraphs t—z, aa—dd, r, q, and o on one of the drives we produced today, the drive sent by John to Karin via the second letter of his attached above.

We continue to discuss with the clients whether we will agree to produce without redaction the five documents in subparagraphs d (CookMDL2570_0594879; IVCF Team Meeting Minutes from 1/22/08), i (_0303901, Post-meeting IVCF/Venous Therapies Program Updates), p (_0620316, SV: Filter Study), ee (_0624939, Minutes of ISO VP meeting, etc.), and hh (_0319188, Bruce Fleck 2007 Accomplishments).

28. We continue to discuss with the client whether we will agree to produce cc of CAPAs (and related documents) initiated at WCE after collection of ESI at WCE in July of 2015.

30. A load file for the scanned paper complaint files was produced electronically by Rob Simmons of our office to all of you on Friday, 1/27/17.

7

   31. The images for the five complaints in this paragraph being sent to us for production are on one of the drives we produced today, the one described and sent with John's letter to Karin that is the first such letter attached above.

   34, 35 and 36 are covered by the production of imaging studies on the two drives produced today and described in John's letter, and one more drive to be produced tomorrow

   37. In paragraph 37 of his 11/24 letter, Ben requested the histology slides for the sheep studies, which are discussed above

12. Whether your boilerplate objections will be taken down or not—if not then obtain a briefing schedule for motions to compel.

   No. Answer is in my letter of 1/20/17, pp. 1—4.

   That is today's update. More tomorrow.

   Regards,

   Doug