UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____
                                            )
In Re: COOK MEDICAL, INC., IVC FILTERS )
MARKETING, SALES PRACTICES AND      )   Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION         )   MDL No. 2570
_____ )
                                            )
This Document Relates to                    )
Case No. 1:14-cv-06016-RLY-TAB              )
_____ )

**ORDER DENYING THE COOK DEFENDANTS' REQUEST
FOR INDEPENDENT MEDICAL EXAM**

**I.     Introduction**

The Cook Defendants have asked the Court to order Plaintiff Elizabeth Hill to undergo an independent medical exam that would require Hill to submit to (1) an inferior vena cava venogram and (2) an extended upper endoscopy.  The Cook Defendants' reasoning for this request rests largely on the fact that Hill previously underwent these procedures.  In response to the Cook Defendants' request that Hill be forced to undergo this invasive procedure, her lawyer remarked at the May 12, 2017, status conference that just because a soldier has done two tours in Afghanistan doesn't mean he wants to go back.  The Court agrees with Hill.  As explained below, there is no good cause for the Court to order Hill to submit to either procedure over her objections.

**II.    Discussion**

The parties agree that Hill will undergo two IMEs, a cardiovascular IME in Florida and a gastrointestinal IME in North Carolina.  The Cook Defendants agree to pay for all associated costs, including travel for Hill and a companion.  For the cardiovascular IME, the parties agree Hill will submit to a physical examination and a lower extremity venous Doppler ultrasound, but

disagree on whether she must submit to an IVC venogram. For the gastrointestinal IME, the parties agree Hill will submit to a physical examination, blood draw for laboratory testing, and abdominal CT (with oral and IV contrast), but disagree on whether she must submit to an extended upper endoscopy.

The Cook Defendants asked the Court in a letter brief and at oral argument held during the May 12 status conference to order Hill, over her objections, to submit to an IVC venogram during the cardiovascular IME and an extended upper endoscopy during the gastrointestinal IME. Rule 35 permits the Court to order Hill to submit to an IME and specify "the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2)(B). "Before entering such an order, however, the Court must additionally find the existence of 'good cause' for the testing." *Id.* at 35(a)(2)(A); *Flomo v. Brigestone Americas Holding, Inc.*, No. 1:06-CV-627-WTL-JMS, 2009 WL 4728021, at *1 (S.D. Ind. Dec. 2, 2009). For determining good cause, courts have looked at whether other discovery methods have been utilized and whether the requested examination is "needlessly duplicative, cumulative, or invasive." *McDonald v. Southworth*, No. 1:07-CV-217-JMS-DFH, 2008 WL 2705557, at *3 (S.D. Ind. July 10, 2008). Ultimately, "examination orders under Rule 35 rest in the sound discretion of the Court." *Id.* (citing *Bucher v. Krause,* 200 F.2d 576, 584 (7th Cir. 1953)).

   1.   **The Court will not order Hill to undergo an IVC venogram**

The IVC venogram involves injecting a contrast dye agent into Hill's veins to allow a doctor to view her veins through radiographic means. This procedure carries risks associated with the contrast and typically requires informed consent, which Hill has not given. Hill's medical expert, Dr. Marmureanu, relied on a 2013 IVC venogram to conclude Hill suffered

permanent injury to her vena cava as a result of an IVC filter.  Hill underwent an IVC venogram in 2011 and 2013, and her life care planner, Leigh Anne Levy, recommends Hill receive this test every five years to monitor the injury, which Defendants point out would be in 2018.

The Cook Defendants argue that Hill should submit to an IVC venogram as part of her cardiovascular IME since Hill relies upon the 2013 IVC venogram to prove her injury, Hill is due for another IVC venogram next year, and Cook will pay for it.  Plaintiffs object to this request because Hill does not want Cook's physicians injecting this contrast into her veins.  Moreover, Plaintiffs argue the procedure invades the integrity of Hill's body and there are medical risks associated with the contrast dye.  Particularly, Hill has expressed concern about cumulative effects.  Defendants are quick to point out that Hill was injected with contrast for prior CT scans in 2010, 2011, 2013, and 2015.  Also, Defendants point out that Hill will be injected with contrast for the abdominal CT at her gastrointestinal IME in North Carolina.

Introducing a foreign substance into the body is an invasive medical procedure.  The law is sensitive to one's autonomy with respect to such procedures.[1]  Absent a compelling need, courts are generally reluctant to subject a plaintiff to "lengthy, invasive, painful and stressful testing."  *McDonald*, 2008 WL 2705557, at *4.  In the Court's view, compelling Hill to submit to a new IVC venogram would be duplicative, as the Cook Defendants have records of Hill's 2013 IVC venogram.  Understandably, the Cook Defendants are concerned about the medical evidence underlying Dr. Marmureanu's conclusion, but the Cook Defendants have other options.  For example, rather than force Hill to submit to an additional test, the Cook Defendants can produce

---

[1] The Cook Defendants' reliance on the burden-shifting approach utilized in *Pena v. Troup*, 163 F.R.D. 352 (D. Colo. 1995), is unconvincing.  The issue in *Pena* was whether to grant a protective order from compelling a brain-damaged child to submit to an MRI under sedation in a medical malpractice action.  Hill is not seeking a protective order and she is not a juvenile.

3

their own medical expert to review the 2013 IVC venogram and opine on Hill's injuries. Furthermore, Hill's refusal to consent to this test may well be evidence admissible at trial. The Cook Defendants' need is therefore not compelling.

Furthermore, Hill consents to undergo two IMEs and reasonably objects to Cook's physicians inserting contrast into her body—twice. Just because Hill consented to being injected with contrast dye once does not mean she must be injected with contrast dye twice. Hill is concerned about the cumulative effects of the contrast on her body. Hill's prior venograms offered her a medical benefit, while the proposed IME venogram does not. The fact that an IVC venogram may be conducted for monitoring purposes next year is not indicative of a compelling need now. As Hill's counsel noted, simply because Hill's life planner recommended this test in the future does not assure that it will occur.

The Court finds no good cause to order Hill to submit to an IVC venogram without her consent and over her objection. The Cook Defendants' request that Hill be forced to submit to an IVC venogram is needlessly duplicative, cumulative, invasive and, therefore, denied.

### 2. The Court will not order Hill to undergo an extended upper endoscopy

The Cook Defendants' request to compel Hill to undergo a forced extended upper endoscopy fares no better. This procedure involves sedation by anesthesia and the insertion of a long, flexible scope down Hill's throat to allow a doctor to view her upper gastrointestinal tract. This procedure carries risks associated with both the anesthesia and the scope, and typically requires informed consent, which again, Hill has not given. Hill's medical expert, Dr. Marmureanu, relied on a 2014 upper endoscopy to conclude Hill suffered a narrowing in her bowel, referred to as duodenal stenosis, as a result of the IVC filter. Levy, Hill's life care

4

planner, recommends that Hill receive this test every three years to monitor the duodenal injury, which Defendants point out would be in 2017.

The Cook Defendants again argue that Hill should submit to an extended upper endoscopy as part of her gastrointestinal IME because the 2014 procedure is relied upon to prove Hill's injury, and she is due to undergo a routine extended upper endoscopy this fall. Plaintiffs object to this request because Hill does not want to undergo anesthesia and have Cook's physicians insert a scope into her body. As with the IVC venogram, this procedure invades the integrity of Hill's body and there are associated medical risks. Unlike the IVC venogram, this procedure requires anesthesia sedation. Defendants are quick to point out that Hill underwent this procedure at least seven times and never suffered a complication or had a reaction to anesthesia. Also, the parties disagree about whether Hill has an extended upper endoscopy scheduled this fall. Nevertheless, Hill will not consent to an extended upper endoscopy as part of her IME.

Case law does not support ordering Hill, a non-consenting Plaintiff, to submit to an invasive medical procedure which requires anesthesia. The Cook Defendants' reliance on *In re: Ethicon, Inc.,* MDL No. 2327, Pretrial Order #214 (S.D. W. Va. 2013), is misplaced. In *Ethicon*, the court held that "plaintiffs shall not be compelled to submit to tests that are more invasive and require informed consent; such as, testing that involves the insertion of a catheter or the administration of anesthesia." *Id.* Although the medical risks to Hill appear statistically low to the Cook Defendants, the risks are still very real from her vantage point. Just because prior extended upper endoscopies have not resulted in complications does not eliminate the possibility going forward. By analogy, successfully completing two tours of duty in Afghanistan does not

5

eliminate a soldier's peril on a return trip. Likewise, the Cook Defendants cannot say with certainty that Hill will not suffer complications from the anesthesia.

The Court has no good cause to force Hill to undergo an extended upper endoscopy. The Cook Defendants have records of all seven of Hill's prior endoscopies, making an eighth needlessly duplicative. As explained above, the Cook Defendants may choose to produce a medical expert to opine on whether Hill's duodenal injuries are permanent and may offer evidence of her refusal. A compelling need cannot be based on Hill's life planner's recommendation that she undergo a routine extended upper endoscopy this year. The Cook Defendants' request that Hill be forced to submit to an extended upper endoscopy is needlessly duplicative, invasive and, therefore, denied.

**III.  Conclusion**

In conclusion, the Court denies the Cook Defendants' request that Hill be ordered to submit, over her objections, to an IVC venogram during the cardiovascular IME and an extended upper endoscopy during the gastrointestinal IME. Hill may choose to consent, but she will not be compelled by the Court.[2]  Hill has been down this unpleasant and invasive road before.

---

[2] This order does not reach Plaintiffs' concern that the Cook Defendants seek these tests as a literal fishing expedition into Hill's body. However, Plaintiffs' sentiment is echoed in *Schlagenhauf v. Holder,* 379 U.S. 104, 126 (1964), in which Justice Douglas notes a distinction between plaintiffs and defendants in the Rule 35 context, remarking that during medical exams, some doctors are "interested only in answering a single question: did plaintiff in fact sustain the specific injuries claimed," while other doctors "will naturally be inclined to go on a fishing expedition" in search of anything which will tend to benefit their position. *Id.*, at *2. The Cook Defendants' motive may be to verify the permanency of Hill's injuries, but the Court recognizes that Plaintiffs' concern has support. While the issue is not reached, the Court agrees that Hill's bodily integrity must be respected.

The Court will not force her to make another trip.

    Date:  6/1/2017

                _____
                Tim A. Baker
                United States Magistrate Judge
                Southern District of Indiana

Distribution to all electronically registered counsel of record via ECF.
Distribution to all non-registered counsel of record to be made by Plaintiffs' Lead Counsel.