**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND                    Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION                                      MDL No. 2570

_____

This Document Relates to All Actions

_____

**COOK DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO
FILE SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR ADDITIONAL
DEPOSITION RELATED TO COOK'S DOCUMENT DESTRUCTION**

The Court already has pending before it three briefs (which followed two lengthy letters)

addressing Plaintiffs' quest to dig up evidence (that no one says exists) supporting a spoliation

instruction against the Cook Defendants. The Court should deny Plaintiffs' request to file yet

another brief on this topic; their proposed supplemental brief contains no new information

bearing on their "destruction" allegations and appears calculated to create a negative impression

about Cook that is not based on fact.

Plaintiffs' Motion for Leave (Dkt. 4741) previews the three main points Plaintiffs want

the Court to know: 1) Mr. Smith has sent and received a lot of emails in 20+ years at Cook; 2)

not many were produced in this litigation; and 3) he was able to utilize the "delete" function in

Outlook even while his Exchange mailbox was on hold. Of these three facts, only the third is

arguably relevant to the alleged spoliation issue – and may be of interest to the Court if it were

new news. It is not. Plaintiffs have known since the January 2015 Rule 30(b)(6) deposition of

Cook's IT witness that email holds are implemented at the server level. (Blanchard (Jan. 29,

1

2015) 146:20-147:6 (attached hereto as Exhibit A); Blanchard (Mar. 14, 2017) 57:11-58:15,

100:8-19 (attached hereto as Exhibit B)). **This means that regardless of what a user does**

**within his own interface, all emails on the server as of the date of the hold remain on the**

**server.** (Blanchard (Mar. 14, 2017) 57:11-58:15, 100:8-19; Hunt 30:15-22 (attached hereto as

Exhibit C)). **Consequently, none of Mr. Smith's emails were deleted after a hold was in**

**place**. *Id*. Plaintiffs knowingly omitted this fact in their motion and brief; they are well aware

that Mr. Smith's testimony that he "deleted" emails after he was placed on hold does not mean

that those emails were actually deleted. Cook's explanation of this aspect of its hold process was

reiterated at the March 14, 2017, Rule 30(b)(6) deposition on legal hold implementation:

> Q: I go back to my laptop and I disregard that [legal hold]
> instruction and I delete everything in my primary mailbox. My
> question is, is that data still maintained on the server?
>
> A: So, hypothetically, if a user disobeyed a . . . hold order, and
> went to their laptop and deleted content, would the legal hold
> feature retain that e-mail?
>
> Q: Yes.
>
> A: Yes, it would.
>
> . . .
>
> The hold feature keeps a copy so that way the content itself is not
> deleted. From the user's perspective, the content would appear to
> have been deleted.

(Ex. B: Blanchard (Mar. 14, 2017) 56:18-58:15). The evidence on that point is straightforward,

unchanged, and undisputed; Mr. Smith's testimony does not justify additional briefing on this

topic.

What Plaintiffs apparently are actually disappointed about is the number of Mr. Smith's

emails that were relevant and responsive to Plaintiffs' discovery requests. As Plaintiffs

themselves recite, Mr. Smith has been at Cook for over two decades. It is hardly a surprise that

he, or anyone for that matter, would have thousands of emails over a multi-year period, most of which would have nothing to do with filters, let alone the issues in these lawsuits. In context, it makes perfect sense that he would have few relevant emails, for several reasons. Over the years Mr. Smith has had multiple responsibilities with respect to many Cook products (beyond filters). (Smith 21:15-24:3 (attached hereto as Exhibit D)) Only since 2010 has he had responsibilities related to Cook's physician training courses, which include courses related to many other products in addition to filters. (Ex. D: Smith 120:1-4, 124:15-24, 125:23-126:4) Even for filter courses, Mr. Smith's job is limited to logistics for those training courses conducted from a region Cook calls "Texas west." (Ex. D: Smith 29:13-35:8, 45:11-16) And those courses are not his sole responsibility; Mr. Smith is only one of multiple people and entities that perform logistical duties for western IVC filter courses. (Ex. D: Smith 31:18-32:4, 40:8-12, 204:20-205:14) He is not responsible for development or delivery of content and is not responsible for selecting the presenters at those trainings. (Ex. D: Smith 35:23-38:4, 41:22-42:3, 42:19-43:8) There is no reason to think that a high volume of Mr. Smith's emails coordinating the logistics of various trainings (many unrelated to filters) would be relevant to Plaintiffs' claims in this litigation. Plaintiffs essentially concede this point as they do not even attempt to assert that any of the emails about which they complain had anything to do with filters.

Plaintiffs' assertion that "Cook's document destruction . . . goes all the way to high-level management" is completely inappropriate. (Dkt. 4741-1) Nothing in Plaintiffs' Motion or proposed brief (Dkt. 4741-1 at 3-4) makes any actual connections between or among "high-level management", the number of Mr. Smith's emails that were produced, and any "destruction" of documents. The reality is this: Mr. Smith was placed on litigation hold and his emails were preserved. His hard drive was imaged. (Ex. D: Smith 15:8-15, 17:18-18:1, 59:22-60:8) There is

no evidence that any evidence was lost or deleted during those processes. The more likely

inference presented by the size of Mr. Smith's email production is that the vast majority of Mr.

Smith's emails simply were not relevant to this litigation. Plaintiffs' frustration on this point does

not constitute evidence that any emails were intentionally destroyed. Likewise, it does not justify

any action by this Court – and certainly not expansion of Plaintiffs' fishing expedition.

Moreover, nothing in Mr. Smith's testimony makes Plaintiffs' pending motion for an

additional deposition any more compelling. That motion, the Court will recall, is not based upon

any evidence of widespread document destruction at Cook.[1] Instead, it is a search for a single

type of email that no one says ever existed. (Dkt. 4425) Specifically, Plaintiffs request for yet

more depositions is grounded in Plaintiffs' mischaracterization of deposition testimony of *one*

Cook district sales manager (Courtney Whitelock) and Plaintiffs' insistence that she created "call

notes" of each interaction with Ms. Hill's implanting physician (Dr. Zugza). That rationale fails

for at least three mutually exclusive reasons:

- Both Ms. Whitelock and Dr. Zuzga testified that they had no substantive interactions before Ms. Hill's filter was placed and therefore she could not have had call notes relevant to information exchanged before he placed Ms. Hill's filter. (Dkt. 4463 at 12-17).  In fact, Dr. Zuzga made the decision to use the Celect filter well before Ms. Whitelock even worked for Cook, and prior to Ms. Hill procedure, she never spoke to Dr. Zuzga about the Celect or Tulip IVC filters, never provided him with written materials, studies, or articles about the Celect, was not involved in the decision to place a filter in Ms. Hill, and does not know why Dr. Zuzga chose the Celect filter. (Dkt. 4463-2 at 6-8, 20-21 [Whitelock 63:21-64:1; 66:11-22; 71:19-20, 276:24-280:10]; Zuzga (April 19, 2017) 161:10-162:24 (attached hereto as Exhibit E)).

- Ms. Whitelock and her supervisor testified that emails about her sales calls with physicians was not part of their routine. (*Id;* Conners 59:16-25, 60:23-61:7, 86:13-87:8 (attached hereto as Exhibit F))

---

[1] It is important to remember that Cook's records management policy permanently preserved the records that may be relevant to these product liability actions such as design history records, risk management files, manufacturing records testing documents regulatory records, and quality assurance records — to name a few.  (Dkt. 4463 at 17-18)

- Because she did not save them in designated folders, any emails reflecting physician interactions before Ms. Hill's filter was placed in November 2010 would have been automatically deleted based on Cook's regular email retention practices long before Cook was served with Ms. Hill's complaint in January 2015, and even longer before this MDL was created. (Dkt. 4463 at 8-11)

Neither Mr. Smith's testimony nor anything in Plaintiffs' proffered supplemental brief disturbs any of those undisputed facts.

Accordingly, the Court should reject Plaintiffs' apparent attempt to expand the scope of the deposition about legal holds they've requested into the deposition they'd now apparently like to take about Cook Defendants' counsels' process in reviewing and producing Mr. Smith's emails. In their fully-briefed pending Motion for Additional Depositions (Dkt. 4424-25, 4557), Plaintiffs set forth the questions they hoped to pose to yet another Rule 30(6)(6) witness about Cook's litigation holds. (Dkt. 4425 at 10 n. 7) These questions include, for example, why Cook chose to implement a general hold on February 21, 2014 and whether Cook used any software to assist in identification of custodians to be placed on hold. (*Id.*) Nothing about Mr. Smith's testimony, or the questions Plaintiffs have now raised about the production of his emails — which implicate the search terms Plaintiffs' selected and a myriad of other long-settled production issues — would be answered by the questions Plaintiffs have posed about the hold process generally. Even if the Court were to permit Plaintiffs to take a third 30(b)(6) deposition about Cook's legal holds (which the Court should not for all the reasons set forth in Cook's opposition to Plaintiffs' principal motion (Dkt. 4463)), the scope of that deposition should in fact be limited to legal holds and not expanded to cover the entirely different topics Plaintiffs are raising now.

For all of these reasons, Cook Defendants respectfully request that the Court deny Plaintiffs' Motion for Leave to File Supplemental Brief in Support of Motion for Additional Deposition Related to Cook's Document Destruction.

Dated: June 1, 2017

Respectfully submitted,

*J. Joseph Tanner*
Andrea Roberts Pierson, Co-Lead Counsel
J. Joseph Tanner
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:          (317) 237-0300
Facsimile:          (317) 237-1000
andrea.pierson@faegrebd.com
joe.tanner@faegrebd.com

*Attorneys for Defendants Incorporated, Cook Defendants Medical LLC f/k/a Cook Defendants Medical Incorporated, William Cook Defendants Europe APS*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2017, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.  Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

*J. Joseph Tanner*