# EXHIBIT C

## Page 1

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

```
-------------------------    )
IN RE: COOK MEDICAL, INC.    )
IVC FILTERS MARKETING, SALES )  Case No.
PRACTICES AND PRODUCTS       )  1:14-ml-2570-
LIABILITY LITIGATION         )  RLY-TAB
-------------------------    )
This Document Relates to:    )  MDL No. 2570
All Actions                  )
-------------------------    )
```

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

VIDEOTAPED 30(b)(6) DEPOSITION OF

JAMES BERNARD HUNT

March 21, 2017

Indianapolis, Indiana

GOLKOW TECHNOLOGIES, INC.
877.370.3377 ph | 917.591.5672 fax
deps@golkow.com

## Page 2

```
 2      The videotaped 30(b)(6) deposition of
 3  JAMES BERNARD HUNT, called by the Plaintiffs for
 4  examination, taken pursuant to the Federal Rules of
 5  Civil Procedure of the United States District
 6  Courts pertaining to the taking of depositions,
 7  taken before CORINNE T. MARUT, C.S.R. No. 84-1968,
 8  Registered Professional Reporter and a Certified
 9  Shorthand Reporter of the State of Illinois, at the
10  offices of Faegre Baker Daniels, LLP 300 North
11  Meridian Street, Suite 2700, Indianapolis, Indiana,
12  on March 21, 2017, commencing at 9:39 a.m.
```

## Page 3

```
 1  APPEARANCES:
 3    ON BEHALF OF THE PLAINTIFFS:
 4      RILEY WILLIAMS & PIATT LLC
 5      301 Massachusetts Avenue
 6      Indianapolis, Indiana 46204
 7      317-633-5270
 8    BY: JOSEPH N. WILLIAMS, ESQ.
 9        jwilliams@rwp-law.com
11      LAW OFFICES OF BEN C. MARTIN, LLP
12      3710 Rawlins Street, Suite 1200
13      Dallas, TX 75219
14      (214) 761-6614
15    BY: BEN C. MARTIN, ESQUIRE
16        Bmartin@bencmartin.com
19    ON BEHALF OF THE DEFENDANTS:
20      FAEGRE BAKER DANIELS LLP
21      300 North Meridian Street, Suite 2700
22      Indianapolis, Indiana 46204
23      317-237-0300
24    BY: ANDREA ROBERTS PIERSON, ESQ.
25        andrea.pierson@FaegreBD.com
26        JOHN JOSEPH TANNER, ESQ.
27        joe.tanner@FaegreBD.com
28        ANNE K. RICCHIUTO, ESQ.
29        anne.ricchiuto@FaegreBD.com
31    ALSO PRESENT:
32      JASON VOELKE, Paralegal,
33      Rueb & Motta;
36    VIDEOTAPED BY: ANTHONY MICHELETTO
39    REPORTED BY: CORINNE T. MARUT, C.S.R. No. 84-1968
```

## Page 4

```
                INDEX
JAMES BERNARD HUNT              EXAMINATION
    BY MR. WILLIAMS............... 8
    BY MR. MARTIN................. 203
    BY MR. WILLIAMS............... 251
    BY MS. PIERSON................ 261
    BY MR. WILLIAMS............... 317
    BY MS. PIERSON................ 350
    BY MR. WILLIAMS............... 359

              EXHIBITS
HUNT DEPOSITION EXHIBIT          MARKED FOR ID
No. 1   List of custodians and hold    39
        dates

No. 2   Cook Legal Department:         54
        Procedure for Document Hold";
        CookMDL2570_0006306 - 0006308

No. 3   Bullet Point list of dates of  104
        holds

No. 4   Document, "Timeline of Events: 120
        Hill"

No. 5   1/25/12 e-mail and attached    133
        spreadsheet;
        CookMDL2570_0200522

No. 6   Stockton v. Cook Medical       166
        Incorporated Complaint for
        Money Damages and Demand for
        Jury Trial

No. 7   Adams v. Cook Medical          168
        Incorporated Complaint At Law
        and Demand for Jury Trial
```

Page 29

1 to the original question.
2      When you say that Mr. Nielsen would have
3 been informed that he should not delete or destroy
4 any documents when he was placed on hold, how was
5 that communicated?
6      A.   He would have been sent a written
7 communication outlining instructions to him.
8      Q.   Would that have come to him by e-mail?
9      A.   Yes.
10     Q.   Understanding your counsel's prior
11 instruction, I don't want to -- I don't want you to
12 talk about the substance until we hash that out
13 with the Court, but who would have drafted that
14 communication?
15     A.   It would have been our Legal Department
16 in conjunction with outside counsel.
17     MR. MARTIN: We need to take a break and talk.
18 I need to talk about Joe about this particular
19 situation and what we need to do with it at this
20 point.
21     MR. WILLIAMS: Can we go off the record.
22     THE VIDEOGRAPHER: We are off the record at
23 10:10 a.m.
24          (WHEREUPON, a recess was had

Page 30

1          from 10:10 to 10:26 a.m.)
2      THE VIDEOGRAPHER: We are back on the record
3 at 10:26 a.m.
4 BY MR. WILLIAMS:
5      Q.   We were talking about the litigation
6 hold or document hold with regard to Mr. Nielsen
7 before we took a break. You generally remember
8 that?
9      A.   Yes.
10     Q.   I think the last thing that we talked
11 about was that the hold to Mr. Nielsen would have
12 been drafted by Cook's Legal Department in
13 conjunction with outside counsel?
14     A.   Correct.
15     Q.   Last week Mr. Blanchard testified about
16 what Cook would do when a custodian is put on
17 document hold with regard to that custodian's
18 e-mail. He testified that there would be a setting
19 that could be enabled at the Microsoft Exchange
20 server level to make sure that e-mail is preserved.
21          Are you generally aware of that?
22     A.   Yes.
23     Q.   Other than that procedure and the
24 written communication that we talked about that was

Page 31

1 drafted by Cook legal in conjunction with outside
2 counsel, is there anything else that Cook did to
3 preserve Mr. Nielsen's documents?
4      A.   Absolutely.
5      Q.   Okay. Please tell me.
6      A.   Okay. So, first of all, I'm not exactly
7 sure -- I'm actually not sure of Nielsen's gender,
8 first of all. I think it was a Dutch name. So.
9 Or not Dutch but --
10     MR. TANNER: Danish.
11 BY THE WITNESS:
12     A.   Danish. Is he? Okay.
13          So, I guess with respect to preservation
14 of documents generally, without knowing what
15 Nielsen's position was, I can't say for sure what
16 documents existed or might exist, but we have a
17 document retention policy that requires core
18 documents in most of these functions to be
19 preserved permanently.
20          With respect to litigation hold specific
21 activities, custodians who are believed to have
22 relevant information are interviewed by generally
23 outside counsel to determine whether they have
24 information and what type and that information is

Page 32

1 collected.
2 BY MR. WILLIAMS:
3      Q.   Okay. So, you said, quote, "We have a
4 document retention policy that requires core
5 documents in most of these functions to be
6 preserved permanently," end quote?
7      A.   Yes.
8      Q.   Can you flesh that out for me a little
9 bit?
10     A.   I can. I don't have the document
11 retention schedule in front of me.
12     Q.   Sure.
13     A.   But we have, you know, quality
14 documents, regulatory documents, clinical study
15 documents, engineering documents and, you know,
16 many other types of documents that are held
17 permanently regardless of whether or not the
18 litigation hold is in place.
19     Q.   And those documents that you're
20 referring to that are required to be held
21 permanently, would they be set forth in Cook's
22 document retention schedule with specificity?
23     A.   Yes.
24     Q.   Are you aware of any document that is