**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

This Document Relates to Plaintiff:
*Barbara Gettman, et al.*
Cause No. 1:17-cv-06064-RLY-TAB

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO DISMISS OR STRIKE CLASS ALLEGATIONS**

Plaintiffs' class action complaint seeks money damages for medical monitoring expenses, disguised as a Rule 23(b)(2) class seeking injunctive relief. Although Plaintiffs describe their requested relief as injunctive, their own complaint makes plain their intent. Plaintiffs open and frame their Amended Complaint ("Complaint") by stating, "This case presents a simple question: Who should pay for the diagnosis and testing. . . ." (¶ 8.) The Supreme Court expressly rejected such tactics in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). Further, every court of appeals that has taken up the issue has held that medical-monitoring claims cannot form the basis of a 23(b)(2) injunctive class.[1] Cook Group Incorporated,[2] Cook Incorporated, and Cook Medical LLC,[3] (collectively "the Cook Defendants"), therefore, respectfully request that the Court strike all references to class members or class allegations from the First Amended Class

---

[1] *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 895 n.9 (7th Cir. 2011); *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 262 (3d Cir. 2011); *Olden v. Larage Corp.*, 383 F.3d 495, 510 (6th Cir. 2004); *Zinser v. Accufix Res. Inst., Inc.,* 253 F.3d 1180, 1195 (9th Cir. 2001).
[2] Incorrectly named and served as Cook Group, Inc.

Action Complaint in this matter and order Plaintiffs to refile an amended complaint that does not seek Rule 23(b)(2) class certification for injunctive relief.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' complaint addresses the same products at issue in MDL 2570: Cook's Inferior Vena Cava Filters. Indeed many paragraphs of the Amended Complaint here match the MDL master complaint nearly word-for-word. As the court is intimately familiar with Cook's Inferior Vena Cava Filters and their life-saving uses, the Cook Defendants will not undertake to describe them in detail here.

Plaintiffs seek to represent sweeping classes, consisting of every person in six states (Arizona, California, Colorado, Maryland, Ohio, and Pennsylvania) who has an unremoved Cook IVC Filter that was implanted since October 31, 2003. *Id.* ¶ 81. They seek class certification under Rule 23(b)(2), which creates a mandatory class (with no ability for class members to opt out) if "final injunctive or corresponding declaratory relief is appropriate respecting the class as a whole."

Plaintiffs seek only one form of relief: a medical monitoring fund. This too echoes the master consolidated complaint's request for "past and future medical expenses." Master Compl. Prayer ¶ A.MDL Master Compl, ECF No. 213, No. 1:14-ml-2570 (S.D. Ind. filed January 30, 2015.) Plaintiffs want the Cook Defendants to pay for a "a monitoring program designed to evaluate whether the risk/benefit profile of every Class Member factors removal of the Cook IVC Filter and, if so, to gather information on the appearance, condition, and location of the IVC filter" in each class member, "including whether it has fractured, migrated, perforated, or tiled, in order to provide a physical with the information necessary to remove the Cook IVC Filter

---

[3] Incorrectly named and served as Cook Medical, LLC

safely." Am. Compl. ¶ 73. To that end, Plaintiffs want the Court to create a fund for a massive class notice program, CT scans for class members, and individualized analysis "of the patient data collected by the protocol by an experienced interventional radiologist for every Class Member who still has a Cook IVC Filter installed." *Id.* ¶ 74. Plaintiffs acknowledge that the analysis will require an "individual risk/benefit assessment" for each class member, *id.* ¶ 67,[4] and will involve "weigh[ing] the benefits of continued filtration (need for PE prophylaxis)" in a given patient "against the associated risks (e.g., recurrent deep venous thrombosis, IVC thrombosis, symptomatic penetration, or mechanical failure) and uncertainties." *Id.* ¶ 68.[5]

## THE COURT SHOULD STRIKE THE CLAIMS FOR INJUNCTIVE CLASS RELIEF

### I. A Motion To Dismiss Is A Proper Vehicle to Strike Class Allegations

"One opposing a class action may move for an order determining that the action may not be maintained as a class suit." *Cook Cnty. Coll. Teachers Union v. Byrd*, 456 F.2d 882, 885 (7th Cir. 1972). Pursuant to Federal Rule of Civil Procedure 23(d)(1)(D), the court may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Rule 23(c)(1)(A) also requires that a decision about whether class proceedings are proper must be made "at an early practicable time." And Rule 12(f) permits the Court to strike portions of the pleadings.

Thus, class allegations can be dismissed or stricken at the pleadings stage where the "pleadings make clear that the suit cannot satisfy Rule 23." *DuRocher v. Nat'l Collegiate Athletic Ass'n*, No. 1:13-CV-01570-SEB, 2015 WL 1505675, at *6 (S.D. Ind. Mar. 31, 2015);

---

[4] Quoting Government of Canada Marketed Health Products Directorate, *Inferior Vena Cava (IVC) Filters—Risk of Serious Complications* (July 25, 2016), http://healthycanadians.gc.ca/recall-alert-rappel-avis/hc-sc/2016/59518a-eng.php).

[5] Quoting *ACR-SIR-SPR Practice Parameter for the Performance of Inferior Vena Vaca (IVC) Filter Placement for the Prevention of Pulmonary Embolism*, at 2, 10 (2016).

*see also id.* n.4 (collecting cases rejecting class certification at the pleadings stage).[6] "[C]ourts may—and should—address the plaintiff's class allegations when the pleadings are facially defective and definitively establish that a class action cannot be maintained." *Wright v. Family Dollar, Inc.,* No. 10 C 4410, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010).[7] The standard for granting the motion is a combination of Rule 12 and Rule 23:

> If the defendant moves to dismiss the class allegations before discovery, the court must evaluate the motion using a standard similar to that of Fed. R. Civ. P. 12(b)(6).... [T]he question is whether plaintiffs' allegations are sufficient to show that it is plausible that plaintiffs will be able to satisfy the Rule 23 requirements after conducting discovery.

*Ladik v. Wal-Mart Stores, Inc.,* 291 F.R.D. 263, 269 (W.D. Wis. 2013); *accord Bourbonnais v. Ameriprise Fin. Servs. Inc.*, 2015 WL 12991000 (E.D. Wis. Aug. 20, 2015). "Even when the defendant initiates the court's review of class allegations the burden remains on the plaintiff to establish that the suit may be maintained as a class action." *DuRocher*, 2015 WL 1505675, at *6; *Wright*, 2010 WL 4962838, at *2.

---

[6] *Accord Pumputiena v. Deutsche Lufthansa, AG*, No. 16 C 4868, 2017 WL 66823, at *8 (N.D. Ill. Jan. 6, 2017); *accord Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 830 (N.D. Ill. 2013); *Wright v. Mishawaka Housing Auth'y*, 2016 WL 7013875, *6 (N.D. Ind. Dec. 1, 2016); *Blankenship v. Pushpin Holdings, LLC*, No. 14 C 6636, 2015 WL 5895416, at *13 (N.D. Ill. Oct. 6, 2015) *Brunner v. Liautaud*, 2015 WL 1598106, *5 (N.D. Ill. Apr. 8, 2015); *Buonomy v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014).

[7] *Accord Muehlbauer v. Gen. Motors Corp.*, 431 F. Supp. 2d 847, 870 (N.D. Ill. 2006); *Equal Rights Ctr. v. Kohl's Corp.,* No. 14 C 8259, 2015 WL 3505179, at *3 (N.D. Ill. June 3, 2015) *Baker v. Home Depot USA, Inc*., No. 11 C 6768, 2013 WL 271666, at *4 (N.D. Ill. Jan. 24, 2013) *In re Yasmin & Yaz (Drospirenone) Mktg*., 275 F.R.D. 270, 274 (S.D. Ill. 2011) *Lee v. Children's Place Retail Stores, Inc*., No. 14 C 3258, 2014 WL 5100608, at *1 (N.D. Ill. Oct. 8, 2014); *Bohn v. Boiron, Inc.,* No. 11 C 08704, 2013 WL 3975126, at *5 (N.D. Ill. Aug. 1, 2013) (editing marks and citations omitted); *Wolfkiel v. Intersections Ins. Servs. Inc.,* 303 F.R.D. 287, 292-93 (N.D. Ill. 2014); *Arango v. Work & Well, Inc.,* No. 11 C 1525, 2012 WL 3023338, at *2 (N.D. Ill. July 24, 2012) *Alqaq v. CitiMortgage, Inc.,* No. 13 C 5130, 2014 WL 1689685, at *5 (N.D. Ill. Apr. 29, 2014).

US.112658132.02

## II. Compensation for Medical Monitoring Expenses is Not Available as a Class Remedy under Rule 23(b)(2)

Plaintiffs want class notice and individualized money payments from the Cook Defendants for doctor visits. There is a class-action device that allows such relief: Federal Rule of Civil Procedure 23(b)(3), which expressly provides for class notice and allows individual money relief. But Plaintiffs do not request (b)(3) certification. Instead, they seek to proceed under Rule 23(b)(2). Rule 23(b)(2) does not permit class certification unless "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." It is designed for cases where plaintiffs challenge a blanket policy that affects a large group of people, and that can be changed or ended with one stroke. It is *not* designed for cases like this one, where plaintiffs want a defendant to pay for individualized medical treatment that each class member will choose whether to receive.

In *Dukes*, the Supreme Court made clear that individual monetary relief is not available in a (b)(2) class action. That is all Plaintiffs request here: they simply want the Cook Defendants to pay money for medical testing that Plaintiffs allegedly need. The *Dukes* Court also held that (b)(2) certification is not available unless a single injunction would provide relief for the entire class—Rule 23(b)(2) "does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment." 564 U.S. 338, 360 (2011). Here Plaintiffs request that the Cook Defendants fund a customized course of diagnostic treatment for each putative class member—if and only if the class member chooses to undergo it. That is very far from the kind of all-or-nothing injunctive relief needed for a (b)(2) class.

US.112658132.02

A. The Medical Monitoring Sought Here Is Not "Injunctive Relief Or Corresponding Declaratory Relief."

Rule 23(b)(2) permits a plaintiff class to seek only "injunctive relief or corresponding declaratory relief." A (b)(2) class thus cannot be certified if plaintiffs seek "individual award[s] of monetary damages." *Dukes*, 564 at 360-61. Similarly, non-injunctive relief is not eligible for (b)(2) class treatment even if the relief is equitable in nature; "[t]he Rule does not speak of 'equitable' remedies generally but of injunctions and declaratory judgments." *Dukes*, 564 U.S. at 365. Here, Plaintiffs' claim is not injunctive in nature—they just want the Cook Defendants to defray the costs of diagnostic medical care. Recharacterizing this as a "medical monitoring fund" does not turn it into injunctive relief eligible for (b)(2) certification. *See Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 657 (C.D. Cal. Dec 12, 1996) ("Rule 23(b)(2) treatment is clearly unavailable where the principal relief sought is money damages. Although plaintiffs claim that this request for a medical monitoring program is not merely incidental to their action for monetary damages, it seems clear that the primary goal of plaintiffs is in fact monetary damages.")

The theory of medical monitoring claims is simple: a plaintiff has been exposed to an allegedly dangerous substance or product, has sought or desires medical attention to determine whether and how the product has affected her health, and wants the defendant to pay the doctor's bill. This kind of theory—monetary costs resulting from a defendant's product—is a classic description of legal relief in the form of damages. Indeed, in four of Plaintiffs' six states, medical-monitoring costs are expressly an item of damages,[8] and courts in the other two states have strongly suggested as much.[9]

---

[8] *Burns v. Jaquays Min. Corp.*, 752 P.2d 28, 33 (Az. Ct. App. 1987) (medical monitoring may be available to certain plaintiffs "and its cost is a compensable item of damage"); *Potter v.*

-6-

Unsurprisingly in the 23(b)(2) context, the Seventh Circuit has warned that "[n]ot all forms of medical monitoring are equitable in nature,"[10] and that "certification under Rule 23(b)(2) is inappropriate if the injunction is a disguised request for compensatory damages." *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 895 n.9 (7th Cir. 2011). "For example, a court order requiring a defendant to pay a plaintiff a sum of money for the purpose of medical monitoring is essentially an award of damages and therefore cannot be awarded in a Rule 23(b)(2) proceeding. The same can be said for a court order requiring the defendant to pay the plaintiffs' medical expenses directly." *Id.*[11] In the words of a leading treatise, "a claim for

---

*Firestone Tire & Rubber Co.*, 863 P.2d 795, 800 (Cal. 1993) ("On the issue of medical monitoring costs, we hold that such costs are a compensable item of damages in a negligence action where ... the need for future monitoring is a reasonably certain consequence of the plaintiff's toxic exposure"); *Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 75-76 (Md. 2013) ("recovery of damages for medical monitoring is permitted") ; *Day v. NLO*, 851 F. Supp. 869, 879-80 (S.D. Ohio 1994) (("[T]he need for future medical monitoring does not create a new tort. It is simply a compensable item of damage ....") (citation omitted)).

[9] *Cook v. Rockwell Int'l Corp.*, 755 F. Supp. 1468, 1476-77 (D. Colo. 1991) (predicting Colorado would allow medical-monitoring claims) ("The theory behind a claim for medical monitoring is simple. When a plaintiff is exposed to a hazardous substance, it is often sound medical practice to seek periodic medical monitoring to ascertain whether the plaintiff has contracted a disease. Because this need for medical monitoring was caused by a defendant's tortious acts or omissions, a defendant may be required to pay the cost of monitoring."); *Redland Soccer Club, Inc. v. Dep't. of the Army and Dep't of Defense of the U.S.*, 696 A.2d 137, 197 (Pa. 1997) (medical-monitoring awards are intended "to pay for expensive diagnostic examinations necessitated by another's negligence").

[10] Other Courts of Appeals agree. *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 262 (3d Cir. 2011) ("Medical monitoring cannot be easily categorized as injunctive or monetary relief."); *Olden v. Larage Corp.*, 383 F.3d 495, 510 (6th Cir. 2004) (a claim for "a constructive trust for medical monitoring ... at best, is quasi-equitable in nature); *Zinser v. Accufix Res. Inst., Inc.,* 253 F.3d 1180, 1195 (9th Cir. 2001) ("A request for medical monitoring cannot be categorized as primarily equitable or injunctive *per se*.").

[11] Again, many other courts agree. *See Barnes v. Am. Tobacco Co.,* 161 F.3d 127, 131–32 (3d Cir. 1998); *Zinser*, 253 F.3d at 1195-96 ("reserve fund" to pay for "medical examinations of class members, as well as treatment of disease detected in class members," is not injunctive in nature); *Duncan v. N.W. Airlines, Inc.*, 203 F.R.D. 601, 611 (W.D. Wash. Nov. 5, 2001) ("characteriz[ing] the relief as a program rather than a fund" does not change the fact that "the bottom line is money; such a "proposed class does not meet the requirements of Rule 23(b)(2)");

money to pay for medical monitoring is a damage claim, regardless of how it is characterized in the complaint." 1 *McLaughlin on Class Actions* § 5:19 (collecting cases). That is all that Plaintiffs seeks here: they want the Cook Defendants to pay for their individual abdominal scans and the examination of those scans by a radiologist. They have said so in their complaint. (Am. Compl. ¶8.)

The fact that Plaintiffs describe their proposed abdominal scans as "Court-supervised" (*id.*, Prayer ¶ 2) does not change matters. It is "firmly establish[ed] that a claim for money to pay for medical monitoring is a damages claim, regardless of how it is characterized in the complaint." 1 *McLaughlin on Class Actions* § 5:19 (13th ed.). So if it is a damages remedy when a defendant pays a plaintiff the cost of doctor visits, and a damages remedy when a defendant pays the doctor the cost of the visits, it must also be a damages remedy when the same payments happen through an intermediary fund—whether the fund is "court supervised" or not.[12]

---

*O'Connor v. Boeing N. Am., Inc.*, 180 F.R.D. 359, 379 (C.D. Cal. 1997); *Harding v. Tambrands Inc.*, 165 F.R.D. 623, 632 (D. Kan. Mar. 15, 1996) ("the creation of a fund to pay for [medical] monitoring" would be damages); *Thomas v. FAG Bearings Corp. Inc.,* 846 F. Supp. 1400, 1404 (W.D. Mo. 1994) (to the extent plaintiffs simply seek "an exchange of money" to cover "the future costs of medical monitoring," that is compensatory relief that "cannot for the basis of a class under Rule 23(b)(2).") *Daffin v. Ford Motor Co.*, 2004 WL 5705647, *6 (S.D. Ohio July 15, 2004) ("cost-shifting from consumer to" a defendant "is more properly considered under the rubric of compensatory and consequential damages rather than that of injunctive relief").

[12] Moreover, the Amended Complaint does not detail the role the Court would have in supervising the highly complex and individualized medical and scientific determinations necessary to monitor such a program across six states, or consider whether the Court has the resources to administer such an effort. As noted by the Michigan Supreme Court when considering a similar proposal, the difficulties inherent in judicial administration of a medical monitoring program "would necessarily impose huge clerical burdens on a court system lacking the resources to effectively administer such a regime." *Henry v. Dow Chemical Company*, 701 N.W.2d 684, 699, 473 Mich. 63, 473 Mich. 63 (2005). Courts simply do not "possess the technical expertise necessary to effectively administer a program heavily dependent on scientific disciplines such as medicine . . ." *Id*; see also Herbert L. Zarov et al., A Medical Monitoring Claim for Asymptomatic Plaintiffs: Should Illinois Take the Plunge?, 12 DEPAUL J. HEALTH CARE L. 1, 11, 27 (2009) (discussion of burden on courts of administering medical monitoring

Indeed, many courts from across the country have explained that it requires considerably more for a "court supervised" medical-monitoring remedy to be partly injunctive than what plaintiffs have alleged here. *See id.* ("[T]he majority of courts has refused to certify medical monitoring class actions under Rule 23(b)(2) where the medical monitoring claim sought expenses for future medical treatment or for diagnostic testing."). The relief must go beyond compensating the plaintiffs for the *costs* of diagnosis or treatment, and instead must require the defendant to take specific actions to improve the *quality* of the diagnosis and treatment available for the condition in question. So for example, there may be an injunctive component to a medical-monitoring claim if the court requires the defendant to undertake research or data-sharing to develop new medical knowledge about (or new treatments for) the condition its products allegedly cause. *See Dhamer v. Bristol-Myers Squibb Co.*, 183 F.R.D. 520, 528-29 (N.D. Ill. Nov. 18, 1998) ("funding for studies on the long-term effects of" the product, "funding for research into possible cures for the detrimental effect of" the product, "and a program for the sharing of information related to the diagnosis and treatment of ... injuries from" the product may be "injunctive in nature").[13]

---

programs).

[13] *Accord Zinser* at 253 F.3d at 1195-96 (order for "research into alternative methodologies for remedying the condition of each patient/class member" would be "injunctive"); *Duncan v. N.W. Airlines, Inc.*, 203 F.R.D. 601, 611 (W.D. Wash. Nov. 5, 2001) (request that defendant "pay simply for research and information sharing" about a disease it allegedly caused might be injunctive in nature); *Day*, 144 F.R.D. at 335-36 (payment of medical expenses alone is not injunctive, but "an elaborate medical monitoring program ... pursuant to which a plaintiff is monitored by particular physicians and the medical data produced utilized for group studies" may be); *Barnes*, 989 F. Supp. at 665 (similar); *Gibbs v. E.I. DuPont De Nemours & Co.*, 876 F. Supp. 475, 481 (W.D.N.Y. 1995) ("A court-administered fund which goes beyond payment of the costs of monitoring an individual plaintiff's health to establish pooled resources for the early detection and advances in treatment of the disease is injunctive in nature rather than 'predominantly money damages'"). Some courts regard even paying for research as compensatory. *E.g., Cook*, 181 F.R.D. at 478-80.

In *Kartman*, the Seventh Circuit cited a case from this line of authority when it stated that medical monitoring programs "could ... be characterized as injunctive" to the extent that "the court establishes its own medical-monitoring program managed by court appointed trustees." *Kartman*, 684 F.3d at 895 n.9 (citing *Barnes*, 161 F.3d at 131-32). While the Court of Appeals has not further explained what it means for a court to "establish[] its own medical-monitoring program," that language should be read in harmony with the other well-reasoned decisions on this topic. Plaintiffs surely cannot manufacture (b)(2) class eligibility simply by inserting the words "court supervised" in front of a demand for damages. Instead, as the cases above indicate, an injunction must instead direct the defendant to undertake some significant non-compensatory action. Plaintiffs have not requested any such relief here.

Before the Supreme Court (in *Dukes*) and Seventh Circuit clarified that individual money damages are never allowed in a (b)(2) class action,[14] some courts employed a more flexible standard —a class could be certified if the injunctive relief it sought "predominated" over any coincidental compensatory relief it requested. Under this now-obsolete standard, whether injunctive relief predominated in medical-monitoring cases usually turned on a careful examination of "the type of relief a plaintiff actually seeks," to determine whether "the crux of the action" was compensation for doctor visits or instead a more generalized research program. *Dhamer v. Bristol-Myers Squibb Co.*, 183 F.R.D. 520, 528-29 (N.D. Ill. Nov. 18, 1998).[15] It was

---

[14] The Seventh Circuit adopted a "no individual damages" rule similar to *Dukes* in 1999. *See Lemon v. Int'l Union of Operating Engineers, Local No. 139, AFL-CIO*, 216 F.3d 577, 580–81 (7th Cir. 2000) (discussing *Jefferson v. Ingersoll International Inc.*, 195 F.3d 894, 896 (7th Cir.1999).

[15] *See also, e.g., Zinser* 253 F.3d 1180, 1195-96 (9th Cir. 2001) (in medical-monitoring claim, component seeking "compensation for future medical treatment" and other non-injunctive relief predominated over component seeking injunction for "research into alternative methodologies for remedying the condition of each patient/class member"); *Harding v. Tambrands Inc.*, 165 F.R.D. 623, 632 (D. Kan. Mar. 15, 1996) (where plaintiffs requested "a program to monitor the

in that context that pre-*Dukes* district courts reached differing results on whether "medical monitoring relief [was] primarily compensatory or injunctive." *See Zinser,* 253 F.3d at 1196 (collecting cases); *Mehl v. Canadian Pac. Ry. Ltd.*, 227 F.R.D. 505, 516 (D.N.D. 2005) (same). Even before *Dukes*, however, *every* federal appellate court that considered a proposed (b)(2) medical monitoring class refused certification. *See Barnes v. Am. Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998); *Ball v. Union Carbide Corp.*, 385 F.3d 713, 728 (4th Cir. 2004); *Rhodes v. E.I. DuPont de Nemours & Co.*, 636 F.3d 88, 98-100 (refusing to revisit denial of certification on jurisdictional grounds) (4th Cir. 2011); *In re St Jude Med., Inc.*, 422 F.3d 1116, 1120 (8th Cir. 2005); *In re St Jude Med., Inc.*, 522 F.3d 836, 840 (8th Cir. 2008); *Zinser*, 253 F.3d 1180, 1196, *amended*, 273 F.3d 1266 (9th Cir. 2001); *Boughton v. Cotter Corp.*, 65 F.3d 823 (10th Cir. 1995).

*Dukes* has made things even simpler: it clarified that individualized money relief is *never* appropriate under Rule (b)(2), regardless whether injunctive relief predominates. So while the distinction between compensatory and injunctive relief that the courts drew pre-*Dukes* is still valid, there is no longer any need to determine which form of relief "predominates" in a medical monitoring program. Instead, the presence of an individualized compensatory element simply precludes (b)(2) certification. Although there are relatively few post *Dukes* decisions on medical monitoring, the Third Circuit has stated that "[i]n light of the Supreme Court's recent decision in *Wal-Mart Stores* ..., we question whether the kind of medical monitoring sought here can be certified under Rule 23(b)(2)". *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 263 (3d Cir. 2011) (denying certification on other grounds); *see also Coleman v. Union Carbide Corp.*, No. 2:11-0366, 2013 WL 5461855, *41 (S.D.W. Va. Sept. 13, 2013) ("[N]o circuit court of appeals has

---

future health of the class members and the creation of a fund to pay for that monitoring," this included an injunctive component but was "primarily money damages" so "it is not appropriate to certify a class under Rule 23(b)(2)").

-11-

ever approved certification of a medical monitoring class action . . . the plaintiffs have offered no compelling reason to adopt a different approach. Irrespective of how they attempt to explain otherwise, the individual nature of the medical monitoring elements of significant exposure and significantly increased risk present inestimable problems from a manageability perspective").

That should end the inquiry here. It is not at all clear that *any* part of Plaintiffs' proposed monitoring program is injunctive, but even if some element were—indeed, even if *much* of it were—that would not be enough for certification under 23(b)(2) following *Dukes*. Whatever other characteristics Plaintiffs' requested relief may have, they undeniably are demanding that the Cook Defendants pay the costs of their individual doctor visits. *See* Am. Compl. ¶ 8 ("This case presents a simple question: who should pay for the diagnosis and testing...?"). In other words, they want a monetary relief. And under *Dukes*, that relief precludes a (b)(2) class. Individuals have several options for seeking such relief in this MDL: they can join one of the many actions already filed, they can sue individually, or they can try to qualify as a (b)(3) class. But mandatory certification under Rule 23(b)(2) is not one of those options. vThe (b)(2) class allegations are facially defective and should be stricken.

### B. Medical Monitoring Involves Individualized Relief That Does Not Pertain To "The Class As A Whole"

Even if paying for doctor visits could somehow be exclusively injunctive relief (which it is not), it still would not be "respecting the class as a whole" as Rule 23(b)(2) requires. The rule is designed for all-or-nothing challenges to a defendant's uniform policy, but that is not what Plaintiffs present here. Instead, every proposed class member here would be entitled to a *different* form of relief—payment of a different amount at a different time, probably to a different doctor. Indeed, each class member would be able to individually decide whether to accept the relief at all. It will always be semantically possible to describe thousands of disparate,

individualized instances of relief as a single "program", and to package the relief into a single document. But doing so should not change the outcome for Plaintiffs here, where the real relief they seek is individualized medical care.

Rule 23(b)(2) does not permit just any class action seeking injunctive relief. It allows certification only where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." The Supreme Court explained the "apply generally" and respecting the class as a whole" requirements in *Dukes*: "The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful **only as to all of the class members or as to none of them**." 564 U.S. at 360 (citation omitted, emphasis not in original). The Supreme Court went on to emphasize this point, stating, "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Id.*

This explains why Rule 23(b)(2) does not require the class be notified or given an opportunity to opt out—if even one plaintiff wins the requested injunction, all the proposed class will be affected whether or not they have opted out. *Id.* at 362-63 ((b)(2) allows a class to seek "an indivisible injunction benefitting all its members at once"); *accord, e.g., In re Allstate Ins. Co.,* 400 F.3d 505, 506–07 (7th Cir. 2005) ("The thinking ... is that declaratory or injunctive relief will usually have the same effect on all the members of the class as individual suits would. For example, were Allstate enjoined from issuing a particular type of insurance policy, there wouldn't be any purpose in allowing individual members of the class to opt out and seek their

-13-

own injunction. They would all sink or swim together."). As the *Dukes* Court noted, these requirements are often satisfied in "civil rights cases against parties charged with unlawful, class-based discrimination." 564 U.S. at 361. In those cases, a simple injunction requiring an end to the allegedly discriminatory policy would provide redress to the class as a whole. *Id.*

By contrast, the Seventh Circuit has explained that after *Dukes*, 23(b)(2) classes may not involve "individual determinations" about what kind of relief is available. *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 499 (7th Cir. 2012). It is not enough to say that a victory for the proposed class would "*affect*[] the whole class" by "establish[ing] a system for eventually providing individual relief." *Id.* At a high enough level of generality, any collection of individual relief against a given defendant can be described as a single remedial "program." That does not mean that any collection of injunctive claims can be certified as a (b)(2) class. Instead, the order itself must *accomplish* the final relief. *Id.* For example, in *Jamie S.* the Seventh Circuit noted that a proper (b)(2) remedy must not "require[] class notice as a necessary element of its operation": if "[o]nly those class members who respond" receive a benefit while "nonresponders are unaffected," that "belies the notion that the court can provide final injunctive relief to the class as a whole. This is not the stuff of a proper Rule 23(b)(2) class." 668 F.3d at 499.

That perfectly describes the problems with most medical-monitoring classes under Rule 23(b)(2), including the one proposed by Plaintiffs here. Plaintiffs do not seek a blanket order requiring the Cook Defendants to stop doing something that is allegedly illegal. Plaintiffs do not even seek a blanket order requiring the Cook Defendants to take any single action. Rather, they want the Cook Defendants, under the "supervision" of the Court, to take a complex series of actions, resulting in thousands of separate payments to doctors for thousands of different courses

-14-

of medical imaging and diagnosis. *Cf. Steimel v. Minott,* No. 1:13-CV-957-JMS-MJD, 2014 WL 1213390, at *20 (S.D. Ind. Mar. 24, 2014) (denying (b)(2) certification where plaintiffs sought to compel individualized assessments of their health-care needs).

Plaintiffs recognize that their requested relief would not automatically benefit all class members, because as in *Jamie S.*, they demand the class be given notice. Even if the requested monitoring fund were injunctive in nature, and even if the Court ordered it and the Cook Defendants implemented it, that would not by itself benefit any of the putative class members. It would still be up to each individual class member to decide whether to go to the doctor and, if so, whether to seek reimbursement. *Cf. Henke v. Arco Midcon, L.L.C.*, No. 4:10CV86 HEA, 2014 WL 982777, at *13 (E.D. Mo. Mar. 12, 2014) ("The purported need for testing is not indivisible. The [inquiry] is not whether the relief could be applied to the whole proposed class, it is whether it can *only* be applied to the whole class or none of it." (emphasis added)). And even if a class member did this, the resulting relief would be exactly the same as if he or she had successfully sued individually on the same claims. Finally, like in *Jamie S.*, any class member who chose not see a doctor and claim compensation would not be affected by the proposed relief in any way.

Another way to describe this deficiency is as a lack of "cohesion" in the proposed class. As explained in *Dukes*, Rule 23(b)(2) requires that "the class members' interests [be] so inherently intertwined that final injunctive relief for some would necessarily be final injunctive relief for all." *Newberg on Class Actions* § 4:33 (5th ed.). Courts often "adopt a cohesiveness requirement ... as a means of measuring whether the class's interests *are* in fact so intertwined." *Id.* Under that standard, "[p]roposed medical monitoring classes suffer from cohesion difficulties". *In re St. Jude Med., Inc.,* 425 F.3d 1116, 1122 (8th Cir. 2005). The problem is that medical diagnosis cannot and should not be done on an assembly-line basis: "each plaintiff's

-15-

need (or lack of need) for medical monitoring is highly individualized," *id.*, such that "an individual's monitoring program by definition cannot" be established classwide. *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 146 (3d Cir. 1998). Many courts have so concluded, both before and after *Dukes*.[16]

So however the underlying issue is described—divisibility or non-finality of the requested injunction, or lack of cohesion in the proposed class—the rationale for (b)(2) class treatment is simply missing here. And because the complaint seeks an impermissible (b)(2) class, its class allegations are defective and should be stricken, or certification should be denied.

---

[16] *E.g., Coleman v. Union Carbide Corp.,* No. CIV.A. 2:11-0366, 2013 WL 5461855, at *21 (S.D.W. Va. Sept. 30, 2013) ("Ordinarily, the core question behind medical monitoring-whether a patient required monitoring in addition to the care he or she normally would require and, if so, the nature of the additional monitoring—depends on individual factors among class members.") (quoting *McLaughlin on Class Actions*); *In re Rezulin Prods. Liab. Litig.,* 210 F.R.D. 61, 75 (S.D.N.Y. 2002) ("Even where medical monitoring may be available in defined circumstances, the need and desire of individual subclass members for such a remedy varies considerably."); *Hood v. Gilster-Mary Lee Corp.,* No. 3:14-CV-05012-MDH, 2016 WL 5852866, at *8 (W.D. Mo. Sept. 30, 2016*); In re New Motor Vehicles Canadian Exp.,* No. MDL 1532, 2006 WL 623591, at *9 (D. Me. Mar. 10, 2006) (using "medical monitoring" as an example of "cases where "the injunctive remedy must be individualized ... the cohesiveness is lost, and (b)(2) certification becomes inappropriate"); *Lewallen v. Medtronic USA, Inc.,* No. C 01-20395 RMW, 2002 WL 31300899, at *4 (N.D. Cal. Aug. 28, 2002) ("[A]ssuming that there has been an increased need for medical monitoring, each individual plaintiff would only be able to recover to the extent of that increase. Whatever monitoring was expected as an part of the anticipated course of treatment would not be recoverable, again a particularly individualized inquiry") (discussing 23(b)(3) predominance); *see id.* at *3 (finding lack of (b)(2) cohesion for the same reasons).

## CONCLUSION

Few if any medical-monitoring class actions are certifiable under Rule 23(b)(2).  This case is no exception: Plaintiffs seek individual money payments for medical expenses, and to the extent they ask for any injunctive relief, it too is highly individualized.  So the class Plaintiffs propose is facially invalid and cannot be maintained.  The Court should order that all references to class members or class allegations be stricken from the Complaint, and that Plaintiffs should re-file an amended complaint that does not seek (b)(2) class certification.

Respectfully submitted,

Dated: June 2, 2017

/s/ John T. Schlafer

Andrea Roberts Pierson (# 18435-49)
John T. Schlafer (# 28771-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-Mail:  john.schlafer@faegrebd.com

*Counsel for Cook Defendants*