# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND               Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION                          MDL No. 2570

_____

This Document Relates Only to the Following Case:

      Valerie Graham
      Civil Action No.:  1:15-cv-00764-RLY-TAB

_____

**THE COOK DEFENDANTS' REPLY BRIEF IN SUPPORT**
**OF MOTION FOR SUMMARY JUDGMENT**

The Cook Defendants submit this reply in support of their motion for summary judgment

on all of Plaintiff Valerie Graham's claims against them.  Plaintiff's response fails to raise a

genuine issue of material fact suggesting that she filed her Complaint within the applicable

statutes of limitations, and her attempts to invoke the doctrines of fraudulent concealment and

equitable tolling are legally and factually unsupported.  Finally, Plaintiff cannot use claimed

violations of the Food, Drug and Cosmetic Act as a premise for her claim of negligence *per se*.

I.     **PLAINTIFF'S RESPONSE DOES NOT CREATE ANY FACTUAL DISPUTE.**

Plaintiff's response does not contest any of the material undisputed facts in the Cook

Defendants' original motion, *see* Dkt 1051 at 1-5, and does not challenge any of the materials the

Cook Defendants submitted to demonstrate those facts.  Although Plaintiff's response does assert

a number of facts, she offers no citations and submits no materials in support of her assertions.

*See* Fed. R. Civ. P. 56(c)(1)(A) (require party alleging genuine issue of fact to cite to specific

materials in record).  The Court must therefore accept the Cook Defendants' statement them as true.  *See Beijing Auto. Indus. Imp. & Exp. Corp. v. Indian Indus., Inc.,* 105 F. Supp. 3d 879, 883 (S.D. Ind. 2015); *see also Waldridge v. Am. Hoechst Corp.,* 24 F.3d 918, 922 (7th Cir.1994) (the Seventh Circuit has "repeatedly upheld the strict enforcement of these rules, sustaining the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts").

## II.   KANSAS'S STATUTES OF LIMITATION BAR ALL OF PLAINTIFF'S CLAIMS.

### A.   The KPLA Statute of Limitations Bars Plaintiff's Tort Claims.

The two-year statute of limitations imposed by the Kansas Product Liability Act bars Plaintiff's claims based on strict-liability failure to warn, strict-liability design defect, negligence, negligence per se, breach of express warranty, and breach of implied warranty. Although Plaintiff asserts that "what statutory period applies to Plaintiff Graham's claim ….is intensely and intricately a fact specific properly determined at trial," Pl. Resp. at 11, she cites no authority for this assertion, and she is mistaken.  The issue of which statute of limitations applies to a particular claim is a question of law to be determined by the Court.  *Bernstein v. Bankert*, 733 F.3d 190, 218 n. 18 (7th Cir. 2013).

By its terms, the KPLA applies to "any claim or action brought for harms caused by the manufacture, production, making, construction, fabrication, design, formula, preparation, assembly, installation, testing, warnings, instructions, marketing, packaging, storage or labeling of" a product, regardless of the theory under which the claim is brought.  K.S.A. § 60-3302(c). Plaintiff does not dispute that her strict liability and negligence claims fall within the scope of the KPLA's coverage.  With respect to her breach of warranty claims, although Plaintiff's response

2

devotes substantial space to breach of warranties in commercial contexts and when they occur, Pl. Resp. at 6-8, she acknowledges:

> In an action for breach of express or implied warranty where death, personal injury, or property damages is alleged, the applicable statute of limitations in Kansas would be the two-year tort statute of limitations at Kan. Stat. Ann. § 60-513 and would be classified as a products liability claim.

Pl. Resp. at 8.  Plaintiff admits that her claim is one for personal injury, *see id.* at 1-2, and thus, under her own analysis, her warranty claims fall within the KPLA's two-year statute of limitations.  *See also* K.S.A. § 60-3302(c) (stating the KPLA includes "any action based on…breach of express or implied warranty").

The undisputed facts here establish that the KPLA's two-year statute of limitations began to run when the Celect filter first caused her substantial injury, or at the very latest, when the fact of her injury became reasonably ascertainable.  Under Kansas law, a statute of limitations begins to run "when the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party." K.S.A. § 60-513(b).  Here, Plaintiff does not dispute the evidence the Cook Defendants' submitted showing that:

- On August 15, 2011, Plaintiff reported to Dr. Harbrecht that she was having abdominal discomfort that she attributed to her Celect filter.

- On September 8, 2011, Dr. Vamanan unsuccessfully tried to retrieve Plaintiff's Celect filter due to her previously reported abdominal discomfort, which Plaintiff attributed to her Celect filter.

3

- On September 9, 2011, in a second procedure, Dr. Vamanan successfully retrieved Plaintiff's filter by an open removal surgery through Graham's abdominal cavity.

- Plaintiff testified that the Celect filter Dr. Vamanan retrieved from Plaintiff in September 2011 was tilted, had migrated, had perforated her vena cava and an organ, and had caused bleeding.

- Before her September 9, 2011 surgery, Plaintiff's doctor told her that she would die if the Celect filter were not removed.

These undisputed facts demonstrate as a matter of law that the fact of Graham's injury was reasonably ascertainable no later September 9, 2011.  Indeed, the damages she seeks in her claim—extreme pain from the Celect's migration, the surgeries to remove the filter, major scarring, and coding during the retrieval operation—were undisputedly known to her immediately after the September 9, 2011 surgery.  The limitations period for her KPLA claims therefore began to run no later than September 9, 2011 and expired September 10, 2013, nearly two years before she filed her Complaint.

Even assuming for the sake of argument that Plaintiff somehow did not know of her pain, her scarring, and her surgeries at the time they occurred in September 2009, the Cook Defendants are nevertheless entitled to summary judgment because Plaintiff undisputedly retained counsel to make a claim regarding her filter more than two years before she commenced this action.  Plaintiff does not dispute that on December 3, 2012, the attorneys she retained to make a claim based on her filter wrote to her medical providers, stated that they represented her and requested her medical records, with special emphasis on her "**Implant Sheet from IVC filter**." *See* Jachimiak Aff. ¶¶ 2-7, 11-12 and Exs. 6-7, attached thereto (boldface in original)

4

[Dkt. 1052].  Plaintiff thus necessarily must have known of "the fact of injury," K.S.A. § 60-513(b), by that date—she had, after all, already retained her attorneys and those attorneys had requested medical records concerning the very surgeries on which her complaint focuses.  Under this scenario, the KPLA statute of limitations would have expired on December 3, 2014, still more than five months before she commenced this action.

The KPLA's two-year statute of limitations bars Plaintiff's tort claims, and the Cook Defendants are entitled to summary judgment on those claims.[1]

**B.    The KCPA Statute of Limitations Bars Plaintiff's KCPA Claim.**

Plaintiff's claim under the Kansas Consumer Protection Act is governed by a three-year limitations period, which Plaintiff's response acknowledges "'begins when the KCPA violation occurs.'"  Pl. Resp. at 5 (inadvertently omitting source of quotation).  Here, any KCPA violation by the Cook Defendants accrued *at the latest* when Dr. Lemons implanted the Celect filter on November 23, 2009; any claimed violation of the KCPA by the Cook Defendants that could have injured Plaintiff could not logically have occurred after that date.  *See Golden*, 276 P.3d at 789 (holding that plaintiff's KCPA claim accrued when plaintiff paid for and received object of

---

[1] Although Plaintiff's response discusses the Kansas UCC's four-year statute of limitations on warranty-based claims for economic damages, Pl. Resp. at 5-8, she never actually claims that she seeks any such economic damages in this case.  Even assuming *arguendo* that the UCC's four-year statute of limitations were applicable to some of Plaintiff's breach-of-warranty claims, however, Plaintiff still did not commence her action within the required period.  Under Kansas law, "a breach of a contractual warranty under the UCC 'occurs when tender of delivery is made,'" regardless of whether the injured party is aware of the breach.  *See. e.g., Golden v. Den-Mat Corp.*, 276 P.3d 773, 787 (Kan. Ct. App. 2012) (citing K.S.A. § 84-2-725(2)).  This period typically begins running when the goods are delivered or installed.  *Atlas Industries, Inc. v. National Cash Register Co.*, 216 Kan. 213, 221, 531 P.2d 41 (1975).  Here, Plaintiff was implanted with her Celect IVF filter on November 23, 2009.  *See* Def.s' Ex. A, Pl. Fact Sheet, Jachimiak Aff. ¶¶ 2-8 and Ex. 3.  The UCC four-year statute of limitations thus would have expired on November 23, 2013, over 17 months before Plaintiff commenced her action.

consumer transaction).  The statute of limitations on Plaintiff's KCPA claim thus expired no later than November 23, 2012, more than two years before Plaintiff commenced her action here.

     **C.**     **Plaintiff's Alleged Lack of "Actual Knowledge" that the Celect Filter Caused Her Injuries Does Not Excuse Her Failure to Comply with the Statute of Limitations.**

Plaintiff's only real attempt to contest the statute of limitations bar to her claims comes at the end of her response, when she claims that she was only "*suspicious* of the source of her abdominal pain" in 2009 and after her 2011 surgery, Pl. Resp. at 14 (emphasis in original), and that only after her attorneys obtained her medical records "did her suspicions evolve into actual knowledge that her particular brand and style of filter definitively resulted in the injuries she had suffered." *Id.* at 14-15.  Neither the law nor the facts here support this argument.

Plaintiff cites no authority for her assertion that the statute of limitations did not begin to run on her claims until she had "actual knowledge" that a specific product had "definitively" caused her injuries, and in fact Kansas law holds otherwise.  Under Kansas law, an action

> shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party.

K.S.A. § 60-513(b).  Under this standard, "[t]he phrase 'reasonably ascertainable' means that a plaintiff has the obligation to reasonably investigate available sources that contain the facts" concerning the injury "and its wrongful causation." *Davidson v. Denning*, 259 Kan. 659, 914 P.2d 936, 948 (Kan., 1996).  Indeed, the *Davidson* decision directly contradicts Plaintiff's argument, holding that "'[r]easonably ascertainable' *does not mean* 'actual knowledge.'" *Id.* (emphasis added).

US.112748380.08

Here, Plaintiff admits that she was "suspicious," and her pain and her retrieval surgery undisputedly put her on notice to investigate reasonably available sources—like her own medical records—to discover the facts about her injury.  She failed to do so.  The undisputed facts establish that the fact of her claimed injury from the Celect filter was reasonably ascertainable in 2009, and under Kansas law, she cannot use a claim that she lacked "actual knowledge" to delay the commencement of the statute of limitations period.  *See Davidson*, 914 P.2d at 948 (affirming summary judgment based on statute of limitations against plaintiffs who had relevant facts available to them more than two years before filing actions).

Plaintiff's argument also fails because she offers no evidence to support it.  Even assuming for the sake of argument that Plaintiff could avoid the statute of limitations by demonstrating that she lacked "actual knowledge" that the Celect filter had caused her injuries, the Cook Defendants would still be entitled to summary judgment because Plaintiff offers no evidence that she actually lacked such knowledge.  Plaintiff submitted no evidence whatever with her summary judgment response, and the record contains no evidence or testimony supporting her assertion that she lacked "actual knowledge" that "her particular brand and style of filter definitively resulted in the injuries she had suffered."  Absent some evidence to create a genuine issue of material fact on the issue, Plaintiff could not prevent summary judgment even assuming that Kansas had adopted the legal standard she proposes.

**D.     Neither Fraud nor Estoppel Equitably Tolled the Statute of Limitations.**

Plaintiff suggests in her response that the doctrines of fraudulent concealment and equitable estoppel excused her from complying with the applicable statutes of limitation.  *See* Pl. Resp. at 8-11.  Neither the law nor the facts permit application of those doctrines here.

US.112748380.08

      **1.**      **Plaintiff cannot invoke fraudulent concealment to avoid the statute of limitations.**

As Plaintiff's response acknowledges, under Kansas law fraudulent concealment can extend the statute of limitation *only* for a claim that is actually based on a theory of fraud. *See* K.S.A. § 60-513(3). The claimed fraud in the concealment itself is not sufficient; the claim at issue must assert fraud on its face. *See Bonin v. Vannaman*, 929 P.2d 754, 762 (Kan. 1996) ("the doctrine only tolls the time in which a fraud action may be filed if the plaintiff's claim for relief is validly grounded in fraud on its face"). Plaintiff's response concedes this point, Pl. Resp. at 10 ("The statute of limitations is tolled for claims based in fraud if the defendant conceals the facts giving rise to the claim," citing *Bonin*), and every one of the cases Plaintiff cites in her discussion of the statute of limitations for fraud involved an actual claim of fraud.[2] Here, however, Plaintiff does not assert a claim for common law fraud; as her response notes, her common-law claims are based on theories of strict liability failure to warn, strict liability design defect, negligence, negligence per se, breach of express warranty, and breach of implied warranty. Pl. Resp. at 3. Because she asserts no fraud claim, Kansas law does not permit Plaintiff to invoke fraudulent concealment to avoid the statute of limitations. *Bonin*, 929 P.2d at 765 ("The doctrine may not be utilized to extend the time for Amanda to file either her

---

[2] *See Miller v. Foulston, Siefkin, Powers & Eberhardt*, 246 Kan. 450, 463 (Kan. Apr. 13, 1990) ("plaintiff's claims are based upon wrongful … fraud"); *Wolf v. Brungardt*, 215 Kan. 272, 273 (Kan. 1974) ("This is an action to recover damages for fraud and breach of contract."); *Mingenback v. Mingenback*, 176 Kan. 471, 472 (Kan. 1954) ("an action to reform a deed on the ground it had been fraudulently altered"); *Brakefield v. Shelton*, 76 Kan. 451, 453 (Kan. 1907) (seeking to set aside contract for conveyance of land based on fraud); *Citizens State Bank v. Gilmore*, 226 Kan. 662, 663 (Kan. 1979) ("Plaintiff filed this action against the two defendants on multiple theories of indirect fraud [and] conspiracy to commit fraud"). The final case Plaintiff cites, *Wooderson v. Ortho Pharmaceutical Corp.*, 681 P.2d 1038, 235 Kan. 387 (Kan. 1984), is not a fraud case at all and does not even mention fraud except in defining the general standard for punitive damages. *See id.* at 415, 681 P.2d at 1061.

malpractice claim or her invalid fraud claim."); *see also Zurn Constructors, Inc. v. B.F. Goodrich Co.*, 746 F. Supp. 1051, 1056 (D. Kan. 1990) ("[U]nder Kansas law, fraudulent concealment does not toll the statute of limitations unless the plaintiff's claim for relief is grounded in fraud.").

Plaintiff correctly notes that some courts have remarked that Kansas has "apparently" broadened its fraudulent concealment doctrine to permit its application to non-fraud-based torts. Along this line, the Tenth Circuit commented:

> In *Pike* [*v. City of Mission*, 731 F.2d 655 (10th Cir. 1984)], we stated that "under Kansas law, fraudulent concealment does not toll the statute of limitations unless the plaintiff's claim for relief is grounded in fraud." [citations omitted]. However, that statement of the law no longer appears to be true. Now, under Kansas law, in order "to constitute concealment of a cause of action within the general rule tolling that statute of limitations, . . . there must be something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action." [citations omitted].

*Baker v. Board of Regents*, 991 F.2d 628, 633 (10th Cir. 1993). Even assuming that Kansas had in fact broadened the fraudulent concealment as these cases speculate, however, Plaintiff's argument still fails: Plaintiff here does not allege any "affirmative conduct" by the Cook Defendants that was designed to prevent, and did prevent, Plaintiff from discovering her cause of action against them.

Moreover, even assuming (1) that Kansas recognized the doctrine of fraudulent concealment in non-fraud cases *and* (2) that Plaintiff had alleged affirmative conduct by the Cook Defendants designed to prevent Plaintiff from learning of her cause of action, the Cook Defendants are nevertheless entitled to summary judgment because Plaintiff has offered the Court no evidence to create a genuine issue of material fact on the issue. A party opposing summary judgment may not rely on mere allegations, but must present actual evidence that

9

creates an issue of fact material to the legal basis for the motion.  *See* Fed. R. Civ. P. 56(c)(1)(A); *Thomas v. Christ Hosp. & Med. Ctr.,* 328 F.3d 890, 894 (7th Cir. 2003) ("conclusory assertions, unsupported by specific facts made in affidavits opposing a motion for summary judgment, are not sufficient to defeat a motion for summary judgment.") (citation omitted).  Absent any evidence to support Plaintiff's argument, the Cook Defendants are entitled to summary judgment.

Plaintiff attempts to fill the evidentiary gap in her fraudulent concealment argument by claiming that several medical studies show that the Cook Defendants "were *actually* concealing known defects and safety hazards associated with its products."  Pl. Resp. at 12-14.  This attempt fails for several reasons.

First, the studies are not even properly before the Court.  Plaintiff's response provides sometimes cryptic citations to the studies, but she never provides the Court with authenticated copies of the studies for the Court to review.

Second, even if Plaintiff had provided the studies to the Court, she has made no showing that any of the studies she cites would be admissible at trial.  *See* Fed. R. Civ. P. 56(c)(2), (4).  The articles are not sworn testimony or affidavits, and they are indisputably hearsay.  *See* Fed. R. Civ. P. 56(c)(4).  Although the studies involve expert knowledge and opinions, Plaintiff has not established the qualifications of the authors, the reliability of their methods, or the authors compliance with those methods, and does not suggest that any expert at trial will echo the contents of the studies.  *See* Fed. R. Evid. 702, 703.

Third, even if the studies were admissible, they do not show what Plaintiff says:  That the Cook Defendants "were actually concealing known defects and safety hazards."  These studies reflect the opinions of people *outside* Cook; they do not show either what Cook employees knew

10

or whether Cook employees did anything to conceal that knowledge.  Indeed, Plaintiff herself tacitly admits this, asserting that these studies show that "Defendants ***knew or should have known*** that their filters were more likely than not to tilt and to perforate."  Pl. Resp. at 14.  But "knew or should have known" is the standard for negligence; it does not support a claim of fraudulent concealment.

Fourth, even assuming that these outside studies somehow suggested that the Cook Defendants had concealed knowledge of the risks of Celect filters, the studies—even as Plaintiff characterizes them—do not suggest that the Cook Defendants did anything to conceal Plaintiff's injury from her after it occurred.  That is the core of Plaintiff's fraudulent concealment claim, and the studies Plaintiff cites does nothing to support it.

The studies Plaintiff cites are no substitute for admissible evidence that actually demonstrates affirmative conduct by the Cook Defendants to delay Plaintiff from filing her lawsuit.  Such evidence does not exist, and the Cook Defendants are entitled to summary judgment.

> **2.      Plaintiff cannot invoke equitable estoppel to avoid the statute of limitations.**

Plaintiff fares no better with her claim of equitable estoppel.  Kansas has described the doctrine of equitable estoppel as follows:

> Equitable estoppel is the effect of the voluntary conduct of a person whereby he is precluded, both at law and in equity, from asserting rights against another person relying on such conduct. A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show it rightfully relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts.

11

*Turon State Bank v. Bozarth*, 235 Kan. 786, 789, 684 P.2d 419, 422 (Kan. 1984).  Here, Plaintiff does not even allege that the Cook Defendants committed any act or made any representation to induce Plaintiff into believing any particular facts concerning her possible lawsuit against them, or that she reasonably relied on any such act or representation; indeed, she does not even claim that she had any communications with the Cook Defendants after her surgery.  Likewise, Plaintiff does not allege any facts that would impose on the Cook Defendants a duty to inform her of her right to sue.[3]  The cases that Plaintiff cites in support of her equitable estoppel argument demonstrates the necessity of such affirmative, misleading conduct to application of the doctrine.  *See, e.g., Dunn v. Dunn*, 47 Kan. App. 2d 619, 630, 281 P.3d 540, 554  (Kan. Ct. App. 2012) (denying estoppel claim, holding that "to invoke the doctrine, the debtor or defendant must have done something that amounted to an affirmative inducement to plaintiff to delay bringing the action") (quoting *Rex v. Warner*, 183 Kan. 763, 771, 332 P. 2d 572 (Kan. 1958)).[4]  Here, Plaintiff does not even *allege* such conduct, and she cannot as a matter of law avoid the statute of limitations through equitable estoppel.

---

[3] Plaintiff cites *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, 681 P.2d 1038 (Kan. 1984), for the proposition that a drug manufacturer has a duty to warn doctors about dangerous side effects of its product of which it knows or should know.  *See* Pl. Resp. at 10.  This is of course true, but it is basic product liability law that has nothing to do with the doctrine of fraudulent concealment, and Plaintiff cites no authority to suggest otherwise.

[4] The cases Plaintiff cites that applied equitable estoppel involved instances in which the defendant took clear affirmative steps to deter the plaintiff from filing suit.  *See Safeway Stores, Inc. v. Wilson*, 190 Kan. 7, 14, 372 P.2d 551, 555 (Kan. 1962)  (affirming application of equitable estoppel where appellants continued to request delays, offer to pay cost of repairs to the truck, and request for further information on damages "were sufficient to lull appellee into a sense of security preventing it from filing the instant action before the running of the statute of limitations"); *Coffey v. Stephens*, 3 Kan. App. 2d 596, 598, 599 P.2d 310, 312 (Kan. Ct. App. 1979) (holding promises to settle by three different claims representative were sufficient create jury question concerning whether defendant lulled plaintiff into a false sense of security").

12

And again, beyond mere allegations, Plaintiff has offered the Court no evidence to create a genuine issue of material fact suggesting that the Cook defendants took some affirmative action with the expectation that its action would induce Plaintiff to delay commencing her action.  A party opposing summary judgment must present actual evidence that creates an issue of material fact.  *See* Fed. R. Civ. P. 56(c)(1)(A); *Awok Ani-Deng v. Jeffboat LLC*, 2014 WL 1659798, at *5 (S.D. Ind. Apr. 24, 2014) ("A plaintiff's self-serving statements, which are speculative . . . and which are unsupported by specific concrete facts reflected in the record, cannot preclude summary judgment.").  Plaintiff has offered evidence at all in support of her equitable estoppel argument, and the Cook Defendants are entitled to summary judgment.[5]  *See Dunn*, 47 Kan. App. 2d at 641, 281 P.3d at 555 ("the cases teach us that [defendant] must have intended to deceive the children or at least harbored a willingness that the children would rely upon and be deceived by its silence")

### III.   PLAINTIFF MAY NOT BASE HER NEGLIGENCE PER SE CLAIM ON ALLEGED VIOLATIONS OF THE FOOD, DRUG, AND COSMETICS ACT.

As discussed in the Cook Defendants' original motion, Graham's negligence per se claim also fails because federal law and precedent bars her from basing that claim on an alleged violation of the Food, Drug, and Cosmetics Act, which is the only basis she offers for the claim.

---

[5] An additional reason prevents Plaintiff from relying on equitable estoppel to toll the statute of limitations on Plaintiff's KCPA claim.   Plaintiff argues that "the door remains open for the court to address whether a discovery provision is applicable to a fraud-based claim under the KCPA," cryptically alluding to "*Bonura*" without offering any citation.  Pl. Resp. at 10.  This is apparently a reference to *Bonura v. Sifers*, 39 Kan. App. 2d 617, 181 P.3d 1277 (Kan. Ct. App. 2008).  But *Bonura* does nothing to support Plaintiff's argument that the KCPA is subject to tolling.  On the contrary, the *Bonura* court notes:  "Although our Supreme Court has not addressed whether a discovery provision is applicable to a fraud-based claim under the KCPA, this court *has uniformly refused to apply a tolling provision* to claims brought under the KCPA."  *Id*. at 635, 181 P.3d at 1289 (emphasis added).

US.112748380.08

See Dkt. 1051 at 12.  Plaintiff's only response to this independent basis for summary judgment appears in a footnote on page 15 of her response, where she argues that she "has not included the FDCA as a means of initiating suit, as a cause of action exists pursuant to state consumer laws." Pl. Resp. at 15, n.5.

Plaintiff is mistaken; her negligence per se claim, incorporated from the Master Consolidated Complaint for Individual Claims, relies exclusively on claimed "[v]iolation of 21 U.S.C. §§321, 331, 352 and 21 C.F.R. §§1.21, 801, 803, 807, 820," provisions and regulations of the FDCA.  See Case 1:14-ml-02570 Dkt. No. 213, ¶¶ 89-92 (Master Complaint); Case 1:15-cv-00764 Dkt. 1 at 3 (Graham Short Form Complaint).  A plaintiff may not base a negligence per se claim based on the provisions of the FDCA; enforcement of the FDCA is reserved to the United States government.  *See, e.g., Eve v. Sandoz Pharmaceutical Corp.*, 2002 U.S. Dist. LEXIS 23965, *4-9 (S.D. Ind. Jan. 28, 2002).  Plaintiff does not argue otherwise.  Her negligence per se claim thus fails as a matter of law, and the Cook Defendants are entitled to summary judgment on Plaintiff's negligence per se claim on this ground as well.

US.112748380.08

IV.    **CONCLUSION**

Plaintiff's response fails to raise a genuine issue of material fact suggesting that she filed her Complaint within the applicable statutes of limitations; indeed, she has failed to present a single item of evidence to the Court.  Her attempts to invoke the doctrines of fraudulent concealment and equitable tolling are legally and factually unsupported.  In addition, Plaintiff cannot use claimed violations of the Food, Drug and Cosmetic Act as a premise for her claim of negligence *per se*.   The Cook Defendants are therefore entitled to summary judgment on all of Plaintiff's claims against them.

Respectfully submitted,

Dated: June 8, 2017

/s/ Andrea Pierson
Andrea Roberts Pierson (# 18435-49)
John Joseph Tanner (# 11856-49)
John T. Schlafer (# 28771-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-mail:   joe.tanner@faegrebd.com
E-Mail:  john.schlafer@faegrebd.com

James Stephen Bennett (# 22869-02)
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana  46802
Telephone: (260) 424-8000
Facsimile: (260) 460-1700
stephen.bennett@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

15

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2017, a copy of the foregoing COOK DEFENDANTS'

REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT was filed

electronically, and notice of the filing of this document will be sent to all parties by operation of

the Court's electronic filing system to CM/ECF participants registered to receive service in this

matter.  Parties may access this filing through the Court's system.  Lead Counsel for Defendants

will serve any non-CM/ECF registered parties.


/s/ Andrea Pierson

16

US.112748380.08