# EXHIBIT H

FaegreBD.com

# FAEGRE BAKER DANIELS

USA ▾ UK ▾ CHINA

**Andrea Roberts Pierson**
*Partner*
andrea.pierson@FaegreBD.com
Direct **+1 317.237.1424**

Faegre Baker Daniels LLP
300 North Meridian Street ▾ Suite 2700
Indianapolis ▾ Indiana 46204-1750
Main **+1 317 237 0300**
Fax **+1 317 237 1000**

April 7, 2017

**VIA E-MAIL**

Hon. Magistrate Tim A. Baker
Unites States District Court
Southern District of Indiana
Birch Bayh Federal Building & U.S. Courthouse
46 East Ohio Street
Indianapolis, IN 46204

Re:   Cook Medical, Inc., IVC Filters Products Liability Litigation MDL 2570

Dear Judge Baker:

I am writing on behalf of the Cook Defendants in anticipation of our upcoming discovery conference. Below I have outlined six issues that the Cook Defendants would like to address during the conference.

1. **Duration of Four Expert Witness Depositions:** On March 17, 2017, Plaintiffs served the Cook Defendants with seventeen expert reports written by thirteen different experts. In addition to issuing generic, common-issue expert reports, many experts also provided two separate, case-specific expert reports for the *Hill* case and the *Gage* case. The *Hill* and *Gage* cases involved different products (Celect in *Hill*; Tulip in *Gage*), different patients, and different alleged injuries or damages. The Cook Defendants will depose the proffered experts in the coming weeks. Of the thirteen expert witnesses disclosed, Cook anticipates that it will require two days (for a total of 14 hours) to conduct the depositions of four of the thirteen proffered expert witnesses: Dr. David Kessler; Dr. Mohammad Rajebi; Dr. Alexander Marmureanu; and Leigh Anne Levy, R.N.

   Given the considerable length and breadth of the experts' opinions, counsel for Cook has requested that Plaintiffs identify two days per witness -- for a total of 14 hours – for the four above-named witnesses only. Plaintiffs have refused, asserting that Cook is limited to seven hours per expert under Rule 30(d)(1).

   Rule 30(d)(1) "does not cap depositions categorically at seven hours. Instead, it states that the court [must] authorize more time 'for a fair examination." *Indianapolis Airport Authority v. Travelers Property Cas. Co. of America*, 2015 WL 4458903, *5 (S.D. Ind. July 21, 2015), quoting *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 521 (7th Cir.

Hon. Magistrate Tim A. Baker -2- April 7, 2017

2008))(holding "the rule broadly requires the Court to allow additional time "if needed to fairly examine the deponent…") (internal quotations omitted).

While the Cook Defendants agree that the questioning of Drs. Kessler, Rajebi, Marmureanu, and Ms. Levy should not be redundant, given the breadth of the opinions proffered, the depositions of these four expert witnesses will require more than seven hours. Specifically, Dr. David Kessler's report totals 160 pages and covers topics regarding regulatory issues, animal studies, clinical studies, filter safety and efficacy, product testing, and myriad other issues. Including schedules and appendices, Dr. Kessler's report is 458 pages. Dr. Mohammad Rajebi is an interventional radiologist who has written a 51-page generic report, as well as case-specific reports for *Hill* and *Gage*, which are 13 and 19 pages, respectively. He offers opinions regarding product instructions, testing, design, risk, post-market reporting, and regulatory issues, in addition to opinions regarding the medical history and medical causation issues related to Mrs. Hill and Mr. Gage. Dr. Alexander Marmureanu is a cardiothoracic surgeon whose generic report spans 37 pages, and whose case-specific reports span 17 pages for each *Hill* and *Gage*. Like Dr. Rajebi, Dr. Marmureanu offers opinions regarding at least six different substantive topics, as well as the medical history and medical causation issues related to Mrs. Hill and Mr. Gage. Ms. Levy is a life care planner, and she has written reports for *Hill* and *Gage* totaling 33 and 31 pages, respectively. Ms. Levy has extensive opinions regarding the long medical histories of Mrs. Hill and Mr. Gage, as well as opinions regarding their medical treatment, medical causation, medical prognosis and potential future treatments. She also interviewed Mrs. Hill five times, Mr. Gage two times, and spoke with fact witnesses and Dr. Marmureanu. The Cook Defendants are entitled to inquire about all of the bases and information upon which she relies for her opinions.

The complexity and scope of these witnesses' reports warrant a deposition of up to 14 hours for these four witnesses. One day of seven hours is simply not enough time to properly examine the witnesses given their myriad opinions and analyses of multiple cases.

2. **Proportionality and Remaining Depositions:** This Court limited additional company discovery depositions and custodial file productions on November 15, 2016. (*See* Discovery Order, ¶¶ 1-2 (Nov. 15, 2016) [Dkt. No. 3069] (permitting Plaintiffs six additional depositions, beyond the original 20 authorized by CMO 2, for a total of 26 depositions, as well as permitting six additional custodian files).) Likewise, Judge Young ordered during the November 10, 2016, Status Conference that company discovery was closed, noting that Plaintiffs would be permitted to complete the discovery ordered by this Court in the Discovery Order and requiring Plaintiffs to submit one letter identifying any outstanding discovery issues with any previously-served written discovery upon which Plaintiffs were permitted to follow up. Plaintiffs did so, Cook responded, and those issues have been resolved. As such, the Court effectively turned the page from two years of company discovery against Cook to the case-specific fact and expert discovery required to prepare the *Hill* and *Gage* matters for trial in October 2017 under the deadlines in Judge Young's Bellwether Trial Plan.

Although this Court limited Plaintiffs to 26 common-issue, company discovery depositions, Plaintiffs have requested 28 such depositions (and have indicated that they believe they are still

US.110954867.02

Hon. Magistrate Tim A. Baker -3- April 7, 2017

entitled to three more, for a total of 31 depositions). As such, the Cook Defendants respectfully request that Plaintiffs be limited to the eight remaining common-issue, company discovery depositions permitted by the Court in its November 15, 2017, Discovery Order, rather than the 10 to 13 currently anticipated by Plaintiffs (Plaintiffs have already taken 18 depositions). (*See* Remaining Proposed Company Discovery Depositions (attached as Exhibit A).)

The parties have conferred regarding this issue, and as the Cook Defendants understand it, Plaintiffs believe that only the depositions for five current employees[1] should count toward the remaining eight depositions permitted by the Discovery Order, leaving Plaintiffs three *additional* common-issue, company discovery depositions. Plaintiffs also believe that former employees of and third-party consultants to Cook[2] do not count toward the Court's allotted depositions in the Discovery Order, and have requested depositions from five such individuals.

Cook respectfully submits that enforcing the Court's Discovery Order and limiting Plaintiffs to the eight additional depositions ordered by this Court is proportional to the needs of the case and is consistent with the parties' need to focus their efforts on the case-specific and expert discovery currently required by the Court's Bellwether Trial Plan. Fact discovery closes under the Court's Bellwether Trial Plan on May 22, 2017, and the Cook defendants must depose a dozen Plaintiffs' experts and defend presumably eight more company depositions (13, under Plaintiffs' view) in just the next few weeks. In addition, the parties will depose two treating physicians and one therapist in *Hill*, and two treating physicians in *Gage*, in the next few weeks. Cook has requested independent medical examinations of Mrs. Hill, which must take place prior to Cook's May 16, 2017, expert report deadline, and Cook's experts must prepare and disclose their Rule 26(a)(2)(B) expert reports by May 16, 2017. Plaintiffs undoubtedly will seek the depositions of Cook's experts, which also must occur prior to the anticipated July 24, 2017, close of expert discovery (currently June 22, 2017). *Daubert*, summary judgment, and motions in limine will be filed quickly thereafter.

In short, company discovery has been occurring for more than two and one half years, and the time for new or expansive company discovery has passed. Plaintiffs' ongoing requests for depositions, custodial files, requests for production and the like threaten the Court's deadlines and are not proportional to the needs of *Hill* and *Gage*. The time, expense, and effort involved in preparing for and defending the additional two, five, or more employee, former employee, or consultant depositions requested by Plaintiffs is substantial and will involve hundreds of hours of attorney time, and is a significant business interruption for all of the witnesses. Given the schedule in *Hill* and *Gage*, and the issues in those cases, put simply, many of the depositions are

---

[1] Jennifer Brown, Lars Milling, James Smith, Henrick Gyllun, and Anthony Ragheb are current employees whose depositions have been requested.
[2] Plaintiffs are also attempting to depose two former employees—Jim Carlson and Kem Hawkins— two third-party consultants to Cook—Drs. Timperman, Smouse—and Dr. Kaufman of the Dotter Institute.

Hon. Magistrate Tim A. Baker -4- April 7, 2017

inconsistent with the needs of those cases. Cook respectfully requests that the Court adopt a proportional approach and limit Plaintiffs to the eight previously-ordered depositions.[3]

3. **Plaintiffs' New Requests For Production:** Plaintiffs also recently served Cook with new requests for production in contravention of Judge Young's November 10, 2016, direction that company discovery is closed. The Cook Defendants request that the Court protect it from Plaintiffs' new Requests for Production of Documents. Specifically, Plaintiffs have issued over one hundred requests for production of documents to the Cook Defendants, purportedly under CMO 2, with the notices of deposition regarding Drs. H. Robert Smouse, Paul Timperman, and John Kaufman.[4] However, nothing about CMO 2 obligates the Cook Defendants to produce documents in conjunction with the depositions of third parties, and the time to seek Cook documents regarding those parties has long since passed.

Moreover, the Requests are significantly overbroad and unduly burdensome. For example, the definition of "Documents" in the Requests calls for the production of every document referenced in a responsive document, regardless of whether the referenced documents are responsive themselves. It also seeks the production of documents relating to products other than the two at issue in this action—Tulip and Celect—even though the Court has barred discovery unrelated to Tulip and Celect from this action. With the exception of Request No. 5, the Requests also are not limited to any specific timeframe.

The Requests also seek discovery that is disproportionate to the needs of the case, particularly to the needs of *Hill* and *Gage*. The parties have engaged in extensive discovery in this action, and the Cook Defendants have already produced their relevant, non-privileged internal documents relating to Tulip and Celect. This production totals nearly 250 gigabytes of data, comprising well over a million pages of documents. The burden and expense on the Cook Defendants to produce documents that relate to third parties and products other than Tulip and Celect, or documents that have no bearing on any issue presented in this action, far outweigh any potential benefit that Plaintiffs might receive from obtaining such documents, given that other products are not at issue in this action and the Cook Defendants already have produced significant quantities of responsive documents

CMO 2 makes clear that the Cook Defendants have no obligation to respond to requests for production accompanying deposition notices served on third parties. *See* Case Management

---

[3] On April 4, 2017, Plaintiffs also requested the custodial file of Mr. Neal Fearnot, and continue to express a right to request at least three more custodial files under the Court's Discovery Plan. Cook is presently evaluating the proportionality of that request and the time required to collect, review, and produce his custodial file. However, the Cook Defendants respectfully submit that—given the timing—Plaintiffs should not be permitted to request additional custodial files until the conclusion of the October bellwether trial, or that any such requests should be considered on a case-by-case basis and timing for production should be ordered based on the scope of the anticipated production. The parties have conferred and counsel for Plaintiffs report that they have no specific, additional custodial files in mind.

[4] Plaintiffs also claim Cook must produce documents in response to a subpoena directed to Dr. Frank Lynch, which includes another 27 document requests that, with subparts, totals more than 100 requests.

US.110954867.02

Hon. Magistrate Tim A. Baker  -5-  April 7, 2017

Order #2 (Deposition Protocol) [Dkt. No. 281] at ¶ (D)(2) ("Prior to <u>any Cook 30(b)(6) and/or custodial fact witness depositions,</u> Defendants shall separately respond to each non-duplicative request attached to the deposition notice by producing the discoverable documents . . . ") (emphasis added). Therefore, Plaintiffs' reliance on CMO 2 is misplaced, and Cook respectfully submits that it need not respond to CMO 2 requests for documents accompanying notices served on third parties.

4. **Production of Expert Reliance Materials:** Despite the Cook Defendants' request on March 17, 2017, that the parties mutually agree to produce within seven days of disclosure of the parties' Rule 26(a)(2)(B) reports all of the materials[5] upon which the experts relied—something which Plaintiffs concede Cook is entitled to receive[6]—that production has not yet been completed and threatens the Cook Defendants' ability to timely produce its experts' reports. (*See* Email from Andrea Pierson, attorney for the Cook Defendants, to Michael Heaviside, attorney for Plaintiffs (Mar. 20, 2017) (noting request for the materials was made on Friday, March 17, 2017) (attached as Exhibit C).) Plaintiffs agreed on March 29, 2017, to produce all such materials and represented they would do so by March 31, 2017. (*See* Email from Ben Martin, attorney for Plaintiffs, to Andrea Pierson et al., attorneys for the Cook Defendants (Mar. 27, 2017) (attached as Exhibit D).) However, as of the writing of this letter, key information is still missing (particularly in the *Hill* case). (*See* Email from Andrea Pierson, attorney for the Cook Defendants, to Matt Schultz, attorney for Plaintiffs (Apr. 4, 2017) (outlining missing reliance materials) (attached as Exhibit E).)

It is now three weeks since service of Plaintiffs' experts' reports, and key reliance materials are still missing. The following reliance materials still have not yet been produced but allegedly serve as the bases of the opinions of Plaintiffs' experts.

- In Dr. Rajebi's *Hill*-specific report, on pg. 7, Dr. Rajebi comments that he reviewed a Duplex IVC ultrasound that demonstrated a narrowing of Mrs. Hill's IVC—in the same location as her IVC filter—when compared to previous imaging. He also commented that *on his exam* she presented with bilateral lower extremity edema. He comments on pg. 11 that Mrs. Hill's condition is consistent with IVC stenosis that will substantially contribute to IVC syndrome and the development of IVC thrombosis. In essence, Dr. Rajebi states in his report that, based on his review of imaging and personal examinations performed on March 16, 2017, he is of the opinion that Mrs. Hill has caval stenosis and duodenal stenosis as a result of her Cook IVC filter. Plaintiffs have yet to produce a single medical record, note, patient form, or other document regarding Mrs. Hill's examinations by Dr. Rajebi or other physicians. The Cook Defendants are also missing Addendum A, Exhibit 1 to Dr. Rajebi's *Hill*-specific report. Cook's experts cannot

---

[5] Defendants excluded the production of Cook documents produced in this litigation and publically-available medical literature.
[6] *See* Email from Matt Schultz, attorney for Plaintiffs, to Andrea Pierson, attorney for the Cook Defendants (March 24, 2017) (conceding that "clearly you are entitled to receive reliance materials that are neither Cook documents or cited and publically available literature") (attached as Exhibit B).

Hon. Magistrate Tim A. Baker	-6-	April 7, 2017

prepare their reports and opinions without that information and adequate time to review and interpret it.[7]

- Ms. Levy references "Social Media Records - 04/16/15" and other documents relied upon in her report. The Cook Defendants requested social media records via Requests for Production dated September, 1, 2016, and October 13, 2016, and Plaintiff declined to produce those records. The Cook Defendants also served an interrogatory requesting information about Mrs. Hill's social media usage, and Plaintiff objected to it "as seeking information outside the proper scope of discovery and as intended to harass, embarrass or violate Plaintiff and Plaintiff's family and friend's privacy." (*See* Plaintiff's Answers to Interrogatories (Oct. 12, 2016).) Cook requested that Plaintiff supplement her interrogatory answer in a letter dated October 20, 2016, and further requested screenshots of Mrs. Hill's Facebook account on November 17, 2016, and Plaintiffs refused. However, Plaintiff apparently provided these records to her own experts (and provided her counsel all social media passwords, according to her deposition) but has steadfastly refused to provide social media information to the Cook Defendants.

- Also referenced in Ms. Levy's report but not produced despite multiple requests are notes or records from four interviews with Mrs. Hill and notes or records from consultation with Dr. Marmareanu. Ms. Levy also has failed to produce notes and records from interviews of Mr. Gage and his ex-wife, upon which she apparently relies for her opinions.

- The Cook Defendants are missing materials relied upon by Mr. La Disa: (1) CAD models created by MARVL from design drawings for use in FEA model; (2) algorithms for FEA analysis; (3) ev3. Protégé everflex™ self-expanding peripheral stent system. 2010; and (4) Amplatzer occluder and delivery system - instructions for use. 2012. Receipt of these materials is critical to the work of the Cook Defendants' engineering experts, and the computational analysis to investigate those bases for the expert's opinions takes considerable time.

- The Cook Defendants are missing certain materials cited by Mr. McMeeking, such as: (1) the Greenfield exemplar on which he relied; (2) the Vena-Tech exemplar on which he relied; and (3) exact citation or source material for footnotes 36, 37, 38, 41, and 42 (each listed over-generically as, e.g., "bostonscientific.com" or "azom.com."

- The Cook Defendants are missing materials cited by Mr. Ritchie and Mr. Litsky, such as: (1) the Sherman explanted filter; (2) native versions of all photographs contained in the report; and (3) all other explanted filter examined by Mr. Ritchie and/or Mr. Litsky.

---

[7] On April 6, 2017, the undersigned counsel received a disc of images from counsel for Mrs. Hill, which presumably contains the Duplex IVC ultrasound on which two of Plaintiffs' expert rely, which Cook repeatedly and specifically requested during the last three weeks. Plaintiffs still have yet to produce any notes, medical records, or other documents regarding medical examinations specifically noted by Dr. Rajebi, one of their medical experts.

Hon. Magistrate Tim A. Baker -7- April 7, 2017

The Cook Defendants have repeatedly requested these materials since March 17, 2017, and respectfully request that the Court compel Plaintiffs to produce those materials within 48 hours. The failure timely to produce these materials substantially jeopardizes the Court's expert disclosure and expert deposition deadlines.

5. **IME Protocol:** Pursuant to the amended Case Management Order #19, this Court ordered the parties to "work together to establish a protocol for IMEs." On March 30, 2017, the Cook Defendants provided a draft protocol to Plaintiffs for consideration. Plaintiffs objected to the draft protocol on Monday April 3, 2017, but did not provide any specific revisions to the protocol. The parties conferred regarding the protocol yesterday and have agreed to do so again on or before April 13, 2017. However, if resolution is not quickly reached and the IMEs quickly scheduled, Cook's experts will be unable to complete the IMEs prior to their May 16, 2017, expert disclosure deadline. (Realistically, the IMEs need to be completed at least two weeks before.) We respectfully request that this issue be placed on the Court's agenda for a conference on April 14, 2017, in the event that all issues regarding the IME's are not resolved. Time is of the essence.

6. **Outstanding Discovery Requests in *Hill*:** On September 1, 2016, the Cook Defendants served Interrogatories and Requests for Production on Mrs. Hill. After Mrs. Hill submitted her unverified (and untimely) responses on October 12, 2016 (attached as Exhibit F), Cook's counsel sent a letter on October 20, 2016 (attached as Exhibit G), raising various concerns about Mrs. Hill's objections and renewing requests for supplemental answers, responses, and documents. Objections not timely raised are waived. *See Stelor Productions, Inc. v. Oogles N Googles*, 2008 WL 5062786, *1 (S.D. Ind. Nov. 21, 2008). To date, Mrs. Hill has not provided supplemental answers or documents for the following topics and we request that the Court order Plaintiff to produce the relevant documents and supplemental answers.

- Employment Records (Request No. 31) – Cook sought employment records from November 17, 2000 to the present. Plaintiff's response was "not applicable" to this Request. According to Ms. Levy's expert report, however, Mrs. Hill had a part-time job during this time period and immediately before her filter placement, which was not reflected on her Plaintiff's Fact Sheet. If Mrs. Hill has any employment records relating to this part-time job in her possession, we request that she produce them. If she does not have any records, then she at a minimum must identify this employer by name and address, and provide Cook with a signed authorization to obtain records directly from that employer. If plaintiff is not relying on any evidence relating to this subject to support her allegations or damages, then Mrs. Hill should state that as well.

- Social Media Information (PFS, Interrogatory No. 24, Request No. 37) – Cook sought information on Mrs. Hill's social media in connection with the Plaintiff's Fact Sheet, Interrogatories and Requests for Production. Specifically, the PFS requests "Screenshots of all webpages of each type of social media used by you (including, but not limited to, Facebook, Twitter, Instagram, Vine, Snapchat, Youtube, LinkedIn) showing any and all "posts" and/or "messages" from the date of implantation to the present." (Section

Hon. Magistrate Tim A. Baker                     -8-                         April 7, 2017

VIII(m)). While Plaintiff's response notes that "documents are attached," no documents were attached. When asked about it in her deposition, Mrs. Hill said she gave them to her attorney, and that she provided her attorney with her social media login information. (Hill 220:8-16; 220:17-24). Cook again requested the information from her counsel after the deposition by letter, but no information has been forthcoming. Request 37 also asked for "text messages, e-mails, tweets, or any and all social media posts (including but not limited to Face book, Twitter, Instagram, Vine, Snapchat, YouTube, LinkedIn, and Pinterest) that relate to, refer to, or concern the Filter, vena cava filters generally, your medical conditions, your recovery, your alleged damages, or Cook." Plaintiff belatedly objected and responded by refusing to provide the information in her written discovery responses. However, at least one of her experts, Ms. Levy, apparently possesses Mrs. Hill's social media because she included it in her report. Ms. Levy and Plaintiffs' other medical experts also now allege substantial damages and injuries to Mrs. Hill's physical, emotion, and financial conditions. Plaintiff should be required to provide all social media information to Cook, including passwords, profile information, and posts, without restriction. Ms. Levy specifically relied on it and, further, Mrs. Hill and her experts now claim wide-ranging damages to which Mrs. Hill's social media is relevant. Counsel repeatedly has ignored and failed to provide substantive information regarding her social media, and any objections to its production were not timely made and are waived. Moreover, given Plaintiffs' experts' sweeping allegations regarding Mrs. Hill's damages and limitations, all of her activities are now squarely at issue in the case. Moreover, given Plaintiffs' claim that Cook should have anticipated litigation by Mrs. Hill as early as August 2013, it is equally relevant to know what information Mrs. Hill possessed and retained in anticipation of litigation (or discarded) at least as early as August 2013. Mrs. Hill should be required to disclose all social media and passwords for the same from at least November 17, 2010, to the present date.

- Privilege Objections (Interrogatory Nos. 8, 20, Request Nos. 2, 12, 20, 27, 28, 29, 30, 37) – Plaintiff asserted multiple objections to Interrogatories and Requests on the basis of privilege without describing the nature of the documents or information. Plaintiff should be required to supplement her answers and provide a privilege log as appropriate.

- Medical Expenses (Interrogatory No. 5, Request No. 24) – Cook sought information about the nature of all expenses, financial losses, or damages identified in Plaintiff's discovery responses as being attributable to her filter. Plaintiff declined to provide information about what each of the expenses were for in her response. Plaintiff should be required to supplement her answer with this information. Also, after her deposition, we requested receipts for Mrs. Hill's out-of-pocket expenses discussed during her deposition. Plaintiff has not produced that information to Cook and Cook renews its request for these documents, which were also part of Request No. 24, but which are Plaintiff's claimed damages.

- Insurance Policy and Subrogation Information (Interrogatory Nos. 6, 7) – Cook requested information for the policy period, policy number, policy limits, and any subrogation

US.110954867.02

Hon. Magistrate Tim A. Baker -9- April 7, 2017

claims related to Mrs. Hill's medical insurance. Mrs. Hill did not provide this information, and Cook renews its request for supplemental responses that include this information.

- Communications Between Plaintiff and Any Third Party (Request No. 8) – Plaintiff solely produced medical bills in response to this request, which is not responsive. If Plaintiff has responsive documents, she should produce them, or otherwise state that she does not have any responsive documents in her possession, custody, or control.

- Information About Evidence to Support Plaintiff's Claims (Interrogatory Nos. 11-16, Request Nos. 13-18) – Plaintiff objected to multiple interrogatories about evidence that supported Plaintiff's claims on the basis that the Interrogatories were "premature." Cook renews its request for information regarding evidence that supports Plaintiff's various claims. Given the recent completion of her experts' reports, these Interrogatories should no longer be deemed "premature," and if Plaintiff does not have evidence to support her various allegations, she should state that she has not yet identified such evidence.

- Information Requested That Was Objected to on the Basis of Requesting Documents (Interrogatory Nos. 9, 18, 19, Request No. 1) – In multiple Interrogatories, Cook sought information about multiple subjects, yet Plaintiff objected on the basis that those Interrogatories sought production of documents. Plaintiff should be required to both supplement her answers with the information, as well as provide any responsive documents pursuant to Request No. 1, which seeks any documents identified in response to the interrogatories.

- In her deposition, Cook asked Mrs. Hill when she first contacted an attorney about a lawsuit against Cook and how she came to find her attorney. Plaintiff's attorney objected multiple times and instructed her not to answer based on attorney-client privilege, despite Cook's reassurances that they were not seeking the content of the communications, just the date. (Deposition of Elizabeth Hill, attached as Exhibit H, 34:8-35:16, 36:7-10, 229:7-231:21). This information is highly relevant and crucial to the issue of when the parties began anticipating litigation, especially in light of plaintiffs' allegations that Cook should have anticipated litigation on a specific date when it is possible that Plaintiff herself was not yet anticipating litigation.

- In her deposition, Cook also learned that Plaintiff submitted handwritten responses to her Plaintiff Fact Sheet, and someone else typed the answers. Plaintiff was unsure who typed the answers but believes it was someone at her attorney's office. (Exhibit I at 40:6-42:9). Cook requested a copy of the handwritten answers but Plaintiff's counsel said he "suspect[s] we destroyed those things" but would confirm and consider Cook's request to obtain a copy. *Id.* Cook's counsel sent a follow up letter on November 17, 2016 (attached as Exhibit I), but Plaintiff did not provide those answers.

Hon. Magistrate Tim A. Baker -10- April 7, 2017

Cook requests that the Court order production of the above-described information within 7 days. Given Cook's impending expert disclosure deadline, time is of the essence.

In addition, given the conflicting information provided by Dr. Levy's report regarding Mrs. Hill's activity, medical condition and complaints, all employment, physical limitations, and monetary damages, Cook requests that the Court given Cook leave to serve an additional 25 interrogatories on Mrs. Hill and, if necessary thereafter, reopen her deposition.

Respectfully submitted,

Andrea Roberts Pierson

ARP/eds

US.110954867.02