# EXHIBIT I



FaegreBD.com                                                                                             USA ▾ UK ▾ CHINA

**Andrew L. Campbell**
*Partner*
andrew.campbell@FaegreBD.com
Direct **+1 317 237 1011**

Faegre Baker Daniels LLP
300 North Meridian Street ▾ Suite 2700
Indianapolis ▾ Indiana 46204-1750
Main **+1 317 237 0300**
Fax **+1 317 237 1000**

May 11, 2017

*Via Email:* amy_holtz@insd.uscourts.gov

Hon. Magistrate Judge Tim A. Baker
United States District Court
Southern District of Indiana
Birch Bayh Federal Building & U.S. Courthouse
46 East Ohio Street
Indianapolis, IN 46204

Re:     Cook Medical, Inc., IVC Filters Products Liability Litigation MDL 2570

Dear Judge Baker:

In anticipation for the May 12, 2017, telephonic discovery conference, the Cook Defendants respectfully submit one additional issue for your consideration which plaintiffs have indicated they are prepared to address – our request that bellwether plaintiff Arthur Gage submit to a psychological evaluation as part of his independent medical examination ("IME").

**I.      Psychological Examination As Part Of Arthur Gage IME**

    **A.      Background**

Cook has requested that Mr. Gage undergo a psychological IME in San Francisco, California, and his counsel has objected.

    **B.      Cook's Need for a Psychological IME**

Per Rule 35(a) of the Federal Rules of Civil Procedure, Mr. Gage's mental condition is "in controversy."  Most plainly, in his answer to Interrogatory No. 4, Mr. Gage notes that he has "sustained physical injuries, as well as mental anguish, pain and suffering."  (*See* Gage's Answer to Interrogatory No. 4, attached as Exhibit A); *Mitchell v. Iowa Interstate R.R.*, No. 07-1351, 2009 U.S. Dist. LEXIS 68376, at *5 (C.D. Ill. Aug. 5, 2009) (finding that when a plaintiff's

Magistrate Judge Tim A. Baker -2- May 11, 2017

physical afflictions lead to psychological implications that play a role in that plaintiff's damages, then the mental condition of the plaintiff is in controversy).

Mr. Gage claims that filter perforation of his inferior vena cava has caused him "constant pain" since filter placement.  (*See* Gage PFS, attached as Exhibit B.)  Mr. Gage's physicians have noted the psychological implications of Mr. Gage's physical afflictions.  For example, notes by his primary care physician on May 2, 2013 – well after his filter placement on April 25, 2011 – indicate that Mr. Gage's epigastric pain "seems worse with getting aggravated mentally," which suggests a link between Mr. Gage's physical and mental health.  (*See* Loyola Medical Records, attached as Exhibit C.)  His medical records also indicate that Mr. Gage had been diagnosed with anxiety and depression at various times throughout his life.  (*See* Bolingbrook Family Medicine Records, attached as Exhibit D.)  The records produced to date, however, indicate Mr. Gage has never undergone a psychological evaluation to determine whether his mental condition is the result of his physical condition (or vice versa).

Moreover, Plaintiffs' own experts have indicated that Mr. Gage needs a psychological evaluation.  Indeed, in his expert report, Dr. Alexander Marmureanu indicates that Mr. Gage has undergone psychological distress as a result of his embedded filter, and he requires psychological evaluation with treatment based on such evaluation.  (*See* Marmureanu's Gage Report, p. 11-12, attached as Exhibit E.)  In describing this psychological distress, Dr. Marmureanu indicates that, because "Mr. Gage has an IVC filter strut penetrating outside his vena cava and into an organ which necessitates life-long anticoagulation," he may also suffer from anxiety and depression.  (*Id.* at 11.)  Cook is merely offering to fund the psychological evaluation that Mr. Gage's expert alleges he needs.

The psychological examination of Mr. Gage will merely consist of an interview and physical examination by a clinician. This is not invasive in the slightest, and it will cause Mr. Gage no further pain.

Given that (1) Mr. Gage has been diagnosed with several physical and psychological disorders throughout the years, (2) Mr. Gage's primary care physician has noted a link between his physical and mental health, (3) Mr. Gage's physical condition apparently involves a psychological component, and (4) the testing is neither redundant nor invasive, Cook should be entitled to a psychological examination of Mr. Gage.

      C.      **Travel to San Francisco**

First, the parties agreed to an IME Protocol which specifically contemplates Plaintiffs' travel to an IME and states that Cook shall bear the cost of Plaintiffs' travel.  Despite this agreed-upon protocol, Plaintiffs now object to Mr. Gage traveling to San Francisco for a psychological exam.

Second, courts in the Seventh Circuit have stated that requiring a plaintiff to travel to an IME is not contrary to law.  *See, e.g., McDonald v. Southworth*, 2008 WL 2705557, at *6 (S.D. Ind. July 10, 2008) (J. Magnus-Stinson) (stating that "it is not inconceivable that a court could order a plaintiff to travel some distance from not only his home but also from his selected forum") (citing *Stinchcomb v. U.S.*, 132 F.R.D. 29 (E.D. Pa. 1990) (ordering hearing on defendant's

Magistrate Judge Tim A. Baker -3- May 11, 2017

request that a New York plaintiff who filed suit in Pennsylvania travel to California for a medical examination because the renowned specialist had his practice in California)); *see also Snyder v. Tiller,* 2011 WL 4736294, at *1-2 (N.D. Ind. Oct. 5, 2011) (finding that an order requiring the plaintiff to submit to a medical examination outside the forum state is not contrary to law). The physician retained to perform the examination practices medicine in California, and he does not feel comfortable evaluating a patient in a state in which he does not practice.

Third, Plaintiffs have not demonstrated that traveling to San Francisco for this IME will cause Mr. Gage to suffer any undue hardship. To the contrary, Mr. Gage will not suffer any financial hardship because Cook has agreed to pay for all travel expenses incurred by Mr. Gage. Moreover, as part of this litigation, Mr. Gage traveled a similar distance to be evaluated by his own expert, Dr. Mohammed Rajebi. Indeed, Mr. Gage voluntarily traveled from Chicago to Denver for this examination, and it is unclear to Cook why Mr. Gage cannot now travel to San Francisco. (*See* Gage Depo, 129:17-130:3). Courts may consider a party's voluntary travel history in determining whether travel for an IME will cause an undue hardship. *See, e.g., Snyder*, 2011 WL 4736294, at *2 (finding that it was not clearly erroneous for the magistrate judge to order the plaintiff to travel to Chicago for an IME because the plaintiffs' objections were "unconvincing . . . and outweighed by the evidence that he had already agreed to travel within the district and regularly travelled outside the district for his own purposes"); *Vangergriff v. Red Robin Int'l, Inc.*, 2016 WL 1735857, at *2 (E.D. Tenn. May 2, 2016) (stating that "the amount and time of travel that the plaintiff has been willing to undertake on his or her own while burdened with the physical conditions" is a factor to consider when assessing the undue burden caused by travel for an IME). Thus, Mr. Gage's voluntary travel to Denver for this litigation should be considered in assessing the appropriateness of his travel to San Francisco.

Given that (1) Plaintiffs agreed to travelling in the IME Protocol, (2) traveling for an IME is not contrary to law, (3) Cook will bear the cost of Mr. Gage's travel, and (4) Mr. Gage has traveled for other medical examinations, including to meet with his experts, he should be able and expected to travel to San Francisco for his psychological examination.

## II.     Updates To Issues Under Advisement

Cook provides the Court the following update on a few issues that are under advisement from the last discovery conference.

### A.     Duration of Four Expert Depositions

As discussed at the last conference, Plaintiffs identified thirteen expert witnesses who provided seventeen reports, including both general and case-specific opinions in the *Hill* and *Gage* cases. Cook requested that it be provided fourteen hours each to depose four of Plaintiffs' experts: Dr. Mohammad Rajebi; Leigh Anne Levy, R.N.; Dr. Alexander Marmureanu; and Dr. David Kessler.

Dr. Rajebi's deposition is currently scheduled for May 19, 2017. After the last discovery conference, the Plaintiffs agreed to limit Dr. Rajebi's expert testimony to three limited topics. Cook currently plans to depose Dr. Rajebi on one seven hour day, but if Plaintiffs later revise the

Magistrate Judge Tim A. Baker -4- May 11, 2017

scope of Dr. Rajebi's opinions, Cook reserves the right to seek additional time from the Court to depose Dr. Rajebi. Accordingly, for now, Cook only needs to examine Dr. Rajebi for seven hours.

The deposition of Ms. Levy, Plaintiffs' life care planning expert, occurred on May 4 and 5, 2017. Ms. Levy's deposition was completed within nine hours by agreement of the parties. Accordingly, Cook only needed two additional hours, not seven.

During her deposition, Ms. Levy testified she relied on multiple opinions from Dr. Marmureanu, one of Plaintiffs' medical experts, regarding the medical treatments outlined in Ms. Levy's life care plans. This is yet one more reason why Dr. Marmureanu's deposition should exceed seven hours. Indeed, he needs to be questioned not only on his general opinions and two case-specific reports in *Hill* and *Gage*, but also his significant involvement with Ms. Levy's two case-specific reports. Plaintiffs have not agreed to limit Dr. Marmureanu's opinions. His deposition is currently scheduled for seven hours on June 6, 2017, and Cook requests that it be permitted to depose Dr. Marmureanu for a total of fourteen hours over two days.

Dr. Kessler's deposition currently is scheduled for seven hours. Similar to Dr. Marmureanu, Plaintiffs have not limited Dr. Kessler's opinions, and Cook needs a total of fourteen hours over two days to depose him. As we informed the Court in conjunction with the last conference, Dr. Kessler's report totals 160 substantive pages (458 pages with the schedules and appendices) and covers regulatory issues, animal studies, clinical studies, filter safety and efficacy, product testing, and myriad other issues.

### B. Outstanding Discovery Requests in *Hill*

In our prior letter to the Court, Cook identified nine categories of Interrogatories and Requests for Production that have not been adequately answered by Plaintiff Elizabeth Hill. Briefly, these Interrogatories and Requests for Production requested the following information and documents: (1) employment records, (2) social media information, (3) medical expenses, (4) insurance policy and subrogation information, (5) communications between Plaintiff and any third party, (6) evidence to support Plaintiff's claims, (7) information requested that was inappropriately objected to on the basis of requesting documents, (8) information about when Mrs. Hill contacted an attorney about her lawsuit against Cook, and (9) Mrs. Hill's handwritten responses to her Plaintiff Fact Sheet. Additionally, Mrs. Hill's counsel made multiple privilege objections without describing the nature of the documents or information, and Cook requests a privilege log outlining the bases for Plaintiff's various privilege objections.

Mrs. Hill's prompt attention to these outstanding discovery requests is necessary because of two upcoming case deadlines: Cook's expert reports on June 8, 2017, and the close of fact discovery on June 22, 2017. Cook served these discovery requests on September 1, 2016, and Mrs. Hill has had ample time to supplement her responses since Cook first raised questions about her discovery responses on October 20, 2016. Mrs. Hill has not provided any additional answers or document productions since we raised these issues again last month. Cook respectfully renews its request from its April 7, 2017, letter that Mrs. Hill produce the relevant documents requested, applicable privilege logs, and answers within 7 days.

US.111484158.01

Magistrate Judge Tim A. Baker -5- May 11, 2017

We look forward to discussing these issues on Friday.

Very truly yours,

*[signature: Andrew L. Campbell]*

Andrew L. Campbell

US.111484158.01