Roland Tellis (SBN 186269)
Rtellis@baronbudd.com
Evan Zucker (SBN 266702)
ezucker@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California  91436
Telephone:     (818) 839-2333
Facsimile:      (818) 986-9698

Ben Martin
bmartin@bencmartin.com
THE LAW OFFICES OF BEN C. MARTIN
3710 Rawlins Street, Suite 1230
Dallas, Texas 75219
Telephone:     (214) 761-6614

Wendy Fleishman
wfleishman@lchb.com
Daniel E. Seltz
dseltz@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone:     (212) 355-9500

*Attorneys for Plaintiffs and the Proposed
Classes*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570<br><br>**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS OR STRIKE CLASS ALLEGATIONS** |
| Document related to Plaintiffs:<br><br>BARBARA GETTMAN, et al., individually and on behalf of all others similarly situated,<br>　　Plaintiffs,<br>v.<br>COOK GROUP, INC.; COOK INCORPORATED; COOK MEDICAL, LLC; AND WILLIAM COOK EUROPE APS,<br>　　Defendants. | Case No.  1:17-cv-06064-RLY-TAB |

# TABLE OF CONTENTS

**Page**

I.      Introduction.................................................................................................. 1

II.     Plaintiffs' Allegations and Request for Diagnostic Services............................. 2

III.    Argument ..................................................................................................... 4

    A.      Cook's Motion is Premature. .................................................................. 4

    B.      Cook Mischaracterizes the Relief Sought................................................ 6

    C.      Plaintiffs Seek Equitable Relief. ............................................................. 9

    D.      The Requested Relief Is a Classic Group Remedy. ............................... 14

    E.      Leave to Amend Should Be Granted If the Court Grants Cook's Motion........... 17

IV.     Conclusion ................................................................................................. 18

# TABLE OF AUTHORITIES

**Page**

## CASES

*Ball v. Union Carbide Corp.*,
   385 F.3d 713 (4th Cir. 2004) ................................................... 13

*Barnes v. Am. Tobacco Co.*,
   161 F.3d 127 (3d Cir. 1998) ................................................ 11, 13

*Boatwright v. Walgreen Co.*,
   No. 10 C 3902, 2011 WL 843898 (N.D. Ill. Mar. 4, 2011) .................. 5, 15

*Boughton v. Cotter Corp.*,
   65 F.3d 823 (10th Cir. 1995) .................................................. 13

*Brown v. Swagway, LLC*,
   No. 3:15-CV-588 JVB, 2017 WL 899949 (N.D. Ind. Mar. 7, 2017) .............. 5, 15

*Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*,
   797 F.3d 426 (7th Cir. 2015) .................................................. 13

*Coleman v. Union Carbide Corp.*,
   No. 2:11-0366, 2013 WL 5461855 (S.D. W. Va. 2013) .......................... 13

*Damasco v. Clearwire Corp.*,
   662 F.3d 891 (7th Cir. 2011) ................................................... 4

*Day v. NLO*,
   851 F. Supp. 869 (S.D. Ohio 1994) ..................................... 5, 17, 18

*Day v. NLO, Inc.*,
   144 F.R.D. 330 (S.D. Ohio 1992), *vacated on*
   *other grounds, In re NLO, Inc.*, 5 F.3d 154 (6th Cir. 1993) ............... 10, 14

*De Falco v. Vibram USA, Inc.*,
   No. 12 C 7238, 2013 WL 1122825 (N.D. Ill. Mar. 18, 2013) .................... 4

*Dhamer v. Bristol-Myers Squibb Co.*,
   183 F.R.D. 520 (N.D. Ill. 1998) ............................................... 14

*Donovan v. Philip Morris USA, Inc.*,
   268 F.R.D. 1 (D. Mass. 2010) .............................................. 10, 17

1352466.3

## TABLE OF AUTHORITIES
### (continued)

Page

*Duncan v. N.W. Airlines, Inc.*,
   203 F.R.D. 601 (W.D. Wash. 2001) ......................................................................... 14

*Elliott v. Chicago Housing Authority*,
   No. 98 C 6307, 2000 WL 263730 (N.D. Ill. Feb. 28, 2000)..................................... 11

*Foman v. Davis*,
   371 U.S. 178 (1962).................................................................................................. 17

*Friends for All Children, Inc. v. Lockheed Aircraft Corp.*,
   746 F.2d 816 (D.C. Cir. 1984)................................................................................... 4

*Gates v. Rohm & Haas Co.*,
   655 F.3d 255 (3d Cir. 2011) ................................................................................ 12, 13

*Gibbs v. E.I. DuPont De Nemours & Co.*,
   876 F. Supp. 475 (W.D.N.Y. 1995)........................................................................... 14

*Hansen v. Mountain Fuel Supply Co.*,
   858 P.2d 970 (Utah 1993)........................................................................................... 5

*In re Diet Drugs Prods. Liab. Litig.*,
   No. Civ. A. 98-20626, 1999 WL 673066 (E.D. Pa. Aug. 26, 1999) ........................ 10

*In re NLO, Inc.*,
   5 F.3d 154 (6th Cir. 1993) ......................................................................................... 10

*In re St. Jude Med., Inc.*,
   522 F.3d 836 (8th Cir. 2008) ..................................................................................... 13

*In re Welding Fumes Prods. Liab. Litig.*,
   245 F.R.D. 279 (N.D. Ohio 2007) ............................................................................. 11

*Jamie S. v. Milwaukee Public Schools*,
   668 F.3d 481 (7th Cir. 2012) ..................................................................................... 16

*Johnson v. Meriter Health Servs. Emp. Ret. Plan*,
   702 F.3d 364 (7th Cir. 2012) ................................................................................ 13, 18

*Kartman v. State Farm Mut. Auto. Ins. Co.*,
   634 F.3d 883 (7th Cir. 2011) ..................................................................................... 12

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Mehl v. Canadian Pac. Ry. Ltd.*,
   227 F.R.D. 505 (D.N.D. 2005) ................................................. 13

*Potter v. Firestone Tire & Rubber*,
   863 P.2d 795 (Cal. 1993) ..................................................... 4, 13

*Rhodes v. E.I. DuPont de Nemours & Co.*,
   636 F.3d 88 (4th Cir. 2011) .................................................. 13

*Rysewyk v. Sears Holdings Corp.*,
   No. 15 CV 4519, 2015 WL 9259886 (N.D. Ill. Dec. 18, 2015) ................ 5

*Szabo v. Bridgeport Machines, Inc.*,
   249 F.3d 672 (7th Cir. 2001) ................................................ 6

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ........................................................ 6, 12

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001) .......................................... 12, 13, 14

## RULES

Fed. R. Civ. P. 15(a) ........................................................... 17

Fed. R. Civ. P. 23(b)(2) ................................................... passim

Fed. R. Civ. P. 23(b)(3) ................................................... 17, 18

## TREATISES

1 Joseph McLaughlin, *McLaughlin on Class Actions* § 5:19 (13th ed. 2016) ............ 12

1 William Rubenstein,  *Newberg on Class Actions* § 4:45 (5th ed. 2014) .................. 11

## OTHER AUTHORITIES

Fed. R. Civ. P. 23 advisory committee notes (1966) .................................... 9

Manual for Complex Litigation § 22.74 (4th ed. 2004) ................................. 11

1352466.3

Plaintiffs respectfully respond in opposition to the Cook Defendants' Motion to Dismiss or Strike Class Allegations (Dkt. No. 4955) ("Mem.").

## I.  <u>Introduction</u>

Cook's motion, in addition to being premature, is based on a misapprehension or mischaracterization of the Amended Complaint's allegations and the requested relief.[1]  Plaintiffs seek the establishment of a narrowly defined, Court-supervised notice and diagnostic protocol for the benefit of patients who have one of Cook's retrievable inferior vena cava ("IVC") filters implanted in their bodies, all of whom would benefit from the injunctive relief requested: a one-time scan of their filters to determine the position and state of their filters.  The purpose of this case is not for Plaintiffs to receive money from Cook, but for them to receive information, through a limited and well-defined diagnostic tool that will be available to all members of the proposed Class.

Cook's motion does not address the limited and narrowly defined protocol set forth in the Complaint.  Instead, it makes sweeping, categorical assertions that are divorced from the limited injunctive-only relief that Plaintiffs actually seek on their own behalf and on behalf of Class members.  Cook asks the Court to terminate this case as a class action, now, *at the pleading stage*, before Plaintiffs have had any opportunity to develop the facts that justify the injunctive relief they seek, or offer expert testimony in support of it.  According to Cook, cases seeking medical monitoring are never appropriate for class certification because the injunction includes a monetary cost to them.  But Cook's motion is not supported by the law: no Court has held that medical monitoring is *per se* inappropriate for injunctive treatment.

---

[1] The First Amended Class Action Complaint (Dkt. No. 29) is referred to below as the "Complaint."  All paragraph references are to the Complaint.

Cook asks this court to break new ground and establish just such a *per se* bar to class certification of medical monitoring claims under Rule 23(b)(2). Moreover, Cook seeks such a ruling through a disfavored procedural tactic – a motion to strike class allegations – that courts have recognized is not appropriate in cases like this one, in which class certification will involve numerous factual questions and expert opinion. Cook can and should raise the arguments it makes here at class certification, when the details of Plaintiffs' proposed class benefit or medical monitoring protocol will be presented with the support of evidence and expert opinion.

## II.       Plaintiffs' Allegations and Request for Diagnostic Services

Plaintiffs are residents of six states who have one of Cook's retrievable IVC filters implanted in their bodies. As the Complaint explains, Cook's IVC filters are prone to fracture into pieces, which can become lodged in vein, artery, the heart, or lungs. ¶ 3. They are also prone to migrate, including to sensitive organs, and to tilt within the IVC, perforating the vena cava and/or causing the very blood clots they are supposed to treat. *Id.* Dangerously for patients with these filters, patients whose filters have failed in one or more of these ways can be initially asymptomatic, unaware that their filters have failed until it is too late, and they have suffered a serious, potentially life threatening injury. *Id.* ¶ 5.

Cook's retrievable IVC filters present a danger to Plaintiffs and proposed Class members. Cook has been aware of safety and efficacy issues from the time that it submitted its application to the FDA for clearance to market its filters (*see* ¶¶ 36-40), and clinical trials have since confirmed the dangers that these filters pose to patients. *See, e.g.,* ¶¶ 42-49. Cook itself internally observed high rates of filter failure, including fracture, perforation, migration, and death. ¶¶ 55-58.

As safety concerns regarding retrievable IVC filters grew, the FDA and medical societies issued strong statements in support of the monitoring of patients with these filters, including

Cook's.  The FDA has twice specifically recommended follow-up of patients with retrievable IVC filters (¶¶ 67-68), a recommendation echoed by the Government of Canada in 2016.  ¶ 69. Last year, the American College of Radiology, the Society of Interventional Radiology, and the Society for Pediatric Radiology ("ACR-SIR") issued a practice parameter that concluded that patients with retrievable IVC filters "should be clinically reassessed periodically to weigh the benefits of continued filtration" against "associated risks," including "uncertainties (given limited data on long-term mechanical stability and integrity of some devices."  ¶ 70.  Peer-reviewed medical literature has similarly endorsed monitoring of those with retrievable IVC filters.  ¶ 71.  Despite these recommendations, most of these filters are not retrieved, leaving Class members exposed to ongoing risks of serious injury.  ¶ 72.

Consistent with the guidance and recommendations of regulators, medical societies, and researchers, Plaintiffs now seek the establishment of a notice and diagnostic protocol to allow those with Cook's filters to understand whether they are in imminent danger, and to use that information to protect themselves.  As the Complaint explains, Plaintiffs seek "appropriate diagnostic services" to assess the current condition and position of their filters.  Compl. ¶ 1. Those services are limited to a one-time non-contrast abdominal CT scan, and a review of the patient data collected by the protocol by an experienced interventional radiologist for every Class Member who still has a Cook IVC Filter installed.  ¶ 76.  Rather than monetary damages, Plaintiffs seek "an injunction creating a Court-supervised comprehensive medical monitoring fund for Plaintiffs and the Class Members, which would facilitate the early diagnosis and treatment to mitigate future injury to Plaintiffs and Class Members."  ¶ 102.

That is the sum of the program and the relief sought.  Although the information that Plaintiffs and Class members will gain from this diagnostic protocol can and will guide future

medical decisions, what Plaintiffs and Class members do with the information they get from this program is not part of this case.  Plaintiffs do not seek money relating to doctor visits that follow the limited protocol described in the Complaint.

The relief that Plaintiffs seek has long been recognized in clinical and public health medicine, and in the law, as an important tool to ensure that people who are exposed to a dangerous product, but who have not yet shown symptoms from that exposure, can prevent and mitigate their risk of injury.  As then-Judge Kenneth Starr wrote in a widely cited decision, these claims "accord[] with commonly shared intuitions of normative justice" because the defendant, "through his negligence, caused the plaintiff . . . to need specific medical services . . . ."  *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 825 (D.C. Cir. 1984).[2]

It is those services that Plaintiffs seek here, not monetary damages.  As explained below, Rule 23(b)(2) is an appropriate vehicle to seek them.

## III.   Argument

### A.   Cook's Motion is Premature.

Courts routinely deny motions like Cook's in cases, like this one, which involve fact-specific issues that will be the focus of full discovery.  *See, e.g., De Falco v. Vibram USA, Inc.*, No. 12 C 7238, 2013 WL 1122825, at *9 (N.D. Ill. Mar. 18, 2013) (denying motion to strike, and quoting *Damasco v. Clearwire Corp.*, 662 F.3d 891, 897 (7th Cir. 2011) ("a court may abuse its discretion by not allowing for appropriate discovery before deciding whether to certify a class")).  Medical monitoring cases, including this one, necessarily raise issues that will be disputed at

---

[2] Since the *Friends for All Children* decision, numerous courts have recognized medical monitoring claims as an essential tool of civil justice.  The California Supreme Court, in *Potter v. Firestone Tire & Rubber*, 863 P.2d 795 (Cal. 1993), held that there is "an important public health interest in fostering access to medical testing for individuals whose exposure to toxic chemicals creates an enhanced risk of disease, particularly in light of the value of early diagnosis and treatment for many cancer patients."  *Id.* at 824.

class certification and at trial.  These include, as discussed further below, Cook's negligence in selling the filters at issue, the resulting increased risk to Class members, and the scope and potential effectiveness of the proposed notice and diagnostic program.  Recognizing this, no court has dismissed a medical monitoring case's class allegations at the pleading stage.

"Motions to strike class allegations are disfavored."  *Brown v. Swagway, LLC*, No. 3:15-CV-588 JVB, 2017 WL 899949, at *1 (N.D. Ind. Mar. 7, 2017).  Courts recognize that motions for class certification are generally the better venue to consider whether the plaintiffs have met their burden of showing that the requirements of Rule 23 are satisfied.[3]  *See id.*  This is because class certification decisions "generally involve[] considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action," so that "a decision denying class status by striking class allegations at the pleading stage is inappropriate."  *Boatwright v. Walgreen Co.*, No. 10 C 3902, 2011 WL 843898, at *2 (N.D. Ill. Mar. 4, 2011).

Cook's motion short-circuits that process, forcing the Court to consider on the pleadings issues that are fact-intensive and typically the subject of expert testimony.  Plaintiffs in medical monitoring cases must show, for example, increased risk of disease or injury as a result of their exposure to the dangerous substance or product at issue, a showing that courts have explicitly held must be made through experts.  *See, e.g., Day v. NLO*, 851 F. Supp. 869, 881 (S.D. Ohio 1994).  Similarly, courts have also held that plaintiffs must show – through experts – that the proposed diagnostic test is one that a reasonable physician would order for a similarly situated patient.  *See Hansen v. Mountain Fuel Supply Co.*, 858 P.2d 970, 980 (Utah 1993).  As medical monitoring cases necessarily involve these types of expert-dependent issues, it is no surprise that

---

[3] On a motion to strike, however, Cook bears the burden of persuasion.  *Rysewyk v. Sears Holdings Corp.*, No. 15 CV 4519, 2015 WL 9259886, at *8 (N.D. Ill. Dec. 18, 2015).

Cook's motion contains not a single case where a court has dismissed a medical monitoring class action through a motion to strike class allegations.

Further, the Supreme Court has emphasized that Rule 23 "does not set forth a mere pleading standard . . . sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question,[] and that certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-351 (2011) (internal quotation marks and citation omitted); *see also Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001) (holding that to determine the propriety of a class action "a judge should make whatever factual and legal inquiries are necessary under Rule 23."). Thus, striking class allegations under Rule 23 with no opportunity for the presentation of factual evidence or expert testimony undercuts Plaintiffs' ability to property present these class certification issues to the Court, and the Court's ability to perform the rigorous, evidence-based analysis the Supreme Court has held it must.

### B.    Cook Mischaracterizes the Relief Sought.

In addition to being premature, Cook's argument in favor of its motion to strike class allegations is based on a flat mischaracterization of the relief sought in the Complaint. Cook repeatedly and inaccurately mischaracterizes that relief as "individualized money payments from the Cook Defendants for doctor visits." Mem. at 5; *see also id.* (describing this as a case where "plaintiffs want a defendant to pay for individualized medical treatment"); and *id.* at 12 (asserting that Plaintiffs request that "Defendants pay the costs of their individual doctor visits"). But repetition does not make that assertion accurate. The Complaint is crystal clear that Plaintiffs seek injunctive relief, that no money will flow to Plaintiffs or Class members, and that the proposed Court-supervised diagnostic protocol ends with a reading of a one-time scan.

- 6 -

Plaintiffs assert that these scans will provide Class members with information necessary to make an informed decision with their doctor about any treatment or removal that may be necessary with respect to their filter.  However, what happens after the monitoring protocol is up to Plaintiffs and Class members, and is not a part of this case.

The Complaint sets forth the requested relief in the very first paragraph, making no mention of either compensatory damages or payments for individual doctor visits: "This is a class action to allow Plaintiffs and Class Members (defined below) to seek and receive appropriate diagnostic services and other declaratory relief that they require as a direct and proximate result of the negligent and wrongful misconduct of Defendants in connection with  the development, design, promotion, marketing, and sale of certain inferior vena cava filters."  ¶ 1.

The Complaint also describes the monitoring program and its purposes, which are explicitly focused on getting Plaintiffs and their doctors services and information, not money: "Plaintiffs seek a monitoring program designed to evaluate whether the risk/benefit profile of every Class Member favors removal of the Cook IVC Filter and, if so, to gather information on the appearance, condition, and location of the IVC filter, including whether it has fractured, migrated, perforated, or tilted, in order to provide a physician with the information necessary to remove the Cook IVC Filter safely and to prevent and mitigate severe and life-threatening complications."  ¶ 75.  In other words, if Plaintiffs and Class members learn from this program that their filters have failed and they are at risk of injury, they will then be able to take steps to protect themselves.  But those steps are subsequent to the relief requested in this case.

The Complaint, again, is explicit about this.  Paragraph 76 describes the protocol as a "notice campaign to all Class Members informing them of the availability and necessity of the medical [monitoring] protocol; imaging of the filter and surrounding structures performed with a

non-contrast CT scan of the abdomen in order to provide a detailed and accurate assessment of the current status of the device and critical information as to the safety and difficulty of possible filter removal; and review of the patient data collected by the protocol by an experienced interventional radiologist for every Class Member who still has a Cook IVC Filter installed."  ¶ 76.  That paragraph explains how that information can be used: the process allows Class Members to consult with their physician "to determine if retrieval is clinically necessary and, if so, to provide the physician with necessary information regarding how best to approach removal of the Cook IVC Filter (the "Medical Monitoring Protocol").  *Id.*[4]

The one-time scan and reading of that scan apply to all Class members – they will aid all Class members and their doctors in subsequent treatment.  But that subsequent treatment is not part of this case or the requested protocol.  Therefore, Cook is simply wrong that this is a case where "plaintiffs want a defendant to pay for individualized medical treatment that each class member will choose whether to receive."  Mem. at 5.  That request is not in the Complaint; nor is the request for a "customized course of diagnostic treatment for each putative class member" (*id.*), and Cook cites to no such allegation.  Plaintiffs were clear that Cook should pay for the *protocol* itself, but do not allege that Cook should pay for what happens subsequently.  *See* ¶ 103 ("Cook should be required to establish a Court-supervised and Court-administered trust fund, in an amount to be determined, *to pay for the medical monitoring protocol* for all Class Members…" ).  Plaintiffs seek information about the state of their Cook filters, but seek no payment from Cook to them.

---

[4] *See also* ¶ 102 (stating that Plaintiffs seek "an injunction creating a Court-supervised comprehensive medical monitoring fund for Plaintiffs and the Class Members, which would facilitate the early diagnosis and treatment to mitigate future injury to Plaintiffs and Class Members.").

C.      **Plaintiffs Seek Equitable Relief.**

Although Rule 23(b)(2) certification is not appropriate where a plaintiff seeks where the relief sought "relates exclusively or predominantly to money damages," Fed. R. Civ. P. 23 advisory committee notes (1966), Plaintiffs here do not seek monetary damages in connection with this litigation, and instead seek only that Cook fund the medical monitoring program described above.  Cook, however, argues that Plaintiffs somehow seek to import a claim for money damages into a case in which Plaintiffs repeatedly and unambiguously request the implementation of a straightforward notice and diagnosis protocol that will apply to all Class members who have not filed cases for personal injuries from their Cook filters.  But Class members will receive no cash whatsoever, only medical services; nowhere in the Complaint do Plaintiffs seek money damages.  This injunctive or equitable relief is not incidental to other forms of relief sought; it is the sole relief sought.  Plaintiffs do not even seek money to then go seek medical services as they see fit.  Instead, the proposed program is limited to a one-time, specified scan, and a reading.  *See* Compl. ¶ 76.  Contrary to Cook's assertions, the Complaint simply cannot be read to be a "disguised request for compensatory damages."  Mem. at 7.

Cook presses this Court for a broad ruling that medical monitoring cases can never be classified as injunctive relief for purposes of Rule 23(b)(2).  Such a ruling would mark a dramatic departure from a long line of cases that carefully distinguish between requests for purely injunctive relief – as this Complaint includes – and those that are coupled with requests for monetary relief or have other characteristics not present here.  Even more novel is that Cook's demand that the Court abandon the analysis that courts routinely perform on class certification upon a robust record, including expert opinion, and make this sweeping ruling at the pleading stage.

Courts have repeatedly concluded that in cases like this one, in which plaintiffs seek the establishment of a court-supervised fund, and not direct payments to claimants, the proposed relief is equitable.  For example, in 2010, in *Donovan v. Philip Morris USA, Inc.*, 268 F.R.D. 1 (D. Mass. 2010), the Court surveyed the case law on the question of whether medical monitoring is properly classified as injunctive or monetary relief.  The answer, as the Court explained, "depend[s] on the contours of the requested relief."  *Id.* at 22.  Cases in which a defendant is simply ordered "to pay a plaintiff a certain sum of money," which the plaintiff can use to monitor her condition, or "to pay the plaintiffs' medical expenses directly so that a plaintiff may be monitored by the physician of his choice," do not constitute injunctive relief.  *Id.* (citing *Day v. NLO, Inc.*, 144 F.R.D. 330, 335-36 (S.D. Ohio 1992), *vacated on other grounds*, *In re NLO, Inc.*, 5 F.3d 154, 160 (6th Cir. 1993)).  Neither of those elements is present here.  Nor have the plaintiffs coupled the requested equitable relief with a request for monetary damages.  *See id.* at 23 (collecting authority); *see also, e.g., In re Diet Drugs Prods. Liab. Litig.*, No. Civ. A. 98-20626, 1999 WL 673066, at *6 (E.D. Pa. Aug. 26, 1999) (request for medical monitoring "is equitable in nature"); *In re NLO, Inc.*, 5 F.3d at 159 (stating that case law "generally support[s] the proposition that [medical monitoring] is injunctive in nature.")  Instead, this case is like the numerous decisions that the *Donovan* court identified as seeking injunctive relief.  It is a "structured program," involving medical personnel and a specified screening.  268 F.R.D. 1 at 22 (citing ten different decisions in accord).

The *Manual for Complex Litigation* has synthesized this distinction, and explained that the type of relief requested here falls within Rule 23(b)(2).  "Rule 23(b)(2) generally applies when the relief sought is a court-supervised program for periodic medical examination and research to detect diseases attributable to the product in question."  *Manual for Complex*

*Litigation* § 22.74 (4th ed. 2004).  By contrast, if the plaintiffs simply seek to have the defendants "pay class members but leave it to the members to arrange for and obtain tests, certification must generally meet the Rule 23(b)(3) standards."  *Id.* at 425.

Plaintiffs here do not seek those direct payments; instead, their request tracks neatly with the kind that courts, as in *In re Welding Fumes Prods. Liab. Litig.*, 245 F.R.D. 279 (N.D. Ohio 2007) ), have had no trouble calling "truly equitable in nature."  *Id.* at 290. Just as in that case, the class only includes those who have not filed claims for monetary damages from physical injury.  *Id.*   Also as in that case, the plaintiffs are not seeking a "certain sum of money," which plaintiffs "may or may not choose to use" to monitor their medical condition; or (2) "pay [their] medical expenses directly so that [they] may be monitored by the physician of [their] choice."  *Id.*  (quoting and distinguishing *Barnes v. Am. Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998) (a case relied on by Cook here, *see* Mem. at 7 n.11).[5]

Cook's discussion of "medical monitoring claims" generally – that a plaintiff "wants the defendant to pay the doctor's bill" (Mem. at 6), is divorced from the allegations actually found in the Complaint here, and ignores the distinctions that courts have carefully made over the years, which are reflected in how and what Plaintiffs pled.  Those courts have done what Cook has not done here – analyzed the nature of the relief sought and made a determination as to whether the requested relief is monetary or equitable.  Indeed, several of the cases that Cook cites reject the categorical rule that Cook would have this Court apply, and instead, continue actually to look at

---

[5] *See also Elliott v. Chicago Housing Authority*, No. 98 C 6307, 2000 WL 263730, at *14-15 (N.D. Ill. Feb. 28, 2000) (certifying class under Rule 23(b)(2) where plaintiffs sought a court-supervised medical monitoring program through which class members will receive periodic examinations and characterizing that relief as injunctive in nature); 1 William Rubenstein, *Newberg on Class Actions* § 4:45 (5th ed. 2014) ("[I]f medical monitoring represents only injunctive relief ordering a defendant to provide a service, medical monitoring classes may be maintainable under Rule 23(b)(2).").

what Plaintiffs seek.  *See, e.g.,* Mem. at 7, n.10 (citing *Gates v. Rohm & Haas Co.*, 655 F.3d 255,

262 (3d Cir. 2011) ("Medical monitoring cannot be easily categorized as injunctive or monetary

relief."); *see also Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1195 (9th Cir. 2001) ("A

request for medical monitoring cannot be categorized as primarily equitable or injunctive *per*

*se*.")).[6]  Further, these courts perform that analysis on class certification, not on the pleadings.

　　Cook also relies on selective quotation from a class action treatise (Mem. at 8), but that,

too, is more nuanced than Cook's discussion, and again notes that courts actually look at the

relief requested in determining whether it is equitable or not.  It notes that a "a substantial

number of courts have concluded that certain court-established and court-supervised medical

monitoring programs or funds may qualify for Rule 23(b)(2) certification.  These decisions have

turned on the requested relief being limited to a court-established medical monitoring program

solely for the purposes of diagnosing disease and sharing information with class members."

1 Joseph McLaughlin, *McLaughlin on Class Actions* § 5:19 (13th ed. 2016).  That describes the

limited diagnostic program described in the Complaint.  Because Plaintiffs are not seeking

monetary relief, Cook's discussion of cases in which courts have attempted to determine whether

requested relief was primarily injunctive or compensatory (Mem. at 10-11) is irrelevant, and

those cases are inapplicable.[7]  In addition, each of the decisions that Cook relies upon, in which

---

[6] Cook also cites dicta (Mem. at 7) from *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d
883, 895 n.9 (7th Cir. 2011), which was not a medical monitoring case, but instead involved
insurance coverage after a hailstorm.  The *Kartman* discussion, contrary to the categorical terms
in which Cook presents its motion, acknowledged that certain medical monitoring programs are
equitable in nature, including those that involve, as the one proposed here does, a court-
supervised fund.
[7] Contrary to Cook's assertion, courts, led by the Seventh Circuit, continue to examine the
contours of the proposed relief in Rule 23(b)(2) class actions, even after the Supreme Court's
ruling in *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), and have rejected the
categorical rule that Cook presses here.  The Seventh Circuit, in a lengthy discussion of *Dukes*'
implications for Rule 23(b)(2) cases, explicitly and repeatedly rejected the argument that Cook

courts held that Rule 23(b)(2) certification was inappropriate, involved class certification decisions, not pleading motions.[8]

Cook also asserts that for a medical monitoring claim to qualify as injunctive relief, it must go beyond diagnosis, and instead include steps that will lead to increased knowledge of the illness or condition and how to treat it.  Mem. at 9.  That, too, is in the Complaint, which notes that the need for monitoring stems in part from low retrieval rates, as physicians are allowing Cook's filters to remain in patients for unnecessarily long periods of time.  *See* ¶¶ 72, 78.  The Complaint explains that the protocol "aims to reduce complications by aiding in the detection and remediation of any malfunction and also generally provides awareness of the issue so it can be investigated."  ¶ 77.  Plaintiffs will ultimately need to demonstrate "the clinical value of early detection and diagnosis," and the necessity "for specific monitoring beyond that which an individual should pursue as a matter of general good sense and foresight."  *Potter*, 863 P.2d at 825 (applying California law).  But this (along with other common questions that will be part of the class certification inquiry) is a factual question, and one that Plaintiffs will need to show at

---

makes here – that cases involving monetary relief are "*never* appropriate under Rule 23(b)(2)." Mem. at 12 (emphasis in original).  In *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364 (7th Cir. 2012), the Seventh Circuit applied *Dukes*' limitations on Rule 23(b)(2) class actions, and held that a case involving an initial request for a "declaration of the rights," was appropriately certified under Rule 23(b)(2), even if that initial phase was a prelude to an action seeking monetary relief.  *See also, e.g., Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 443 (7th Cir. 2015) ("a 23(b)(2) class cannot seek money damages unless the monetary relief is incidental to the injunctive or declaratory relief.").  Here, the inquiry is even simpler, because Plaintiffs do not seek monetary relief, whether incidental to injunctive relief or not.

[8] *See* Mem. at 11 (citing *Zinser*, 253 F.3d at 1196 (class certification); *Mehl v. Canadian Pac. Ry. Ltd.*, 227 F.R.D. 505 (D.N.D. 2005) (class certification); *Barnes*, 161 F.3d 127 (class certification); *Ball v. Union Carbide Corp.*, 385 F.3d 713, 728 (4th Cir. 2004) (class certification); *Rhodes v. E.I. DuPont de Nemours & Co.*, 636 F.3d 88, 98-100 (4th Cir. 2011) (class certification); *In re St. Jude Med., Inc.*, 522 F.3d 836, 840 (8th Cir. 2008) (class certification); *Boughton v. Cotter Corp.*, 65 F.3d 823 (10th Cir. 1995) (class certification); *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 263 (3d Cir. 2011) (class certification); *Coleman v. Union Carbide Corp.*, No. 2:11-0366, 2013 WL 5461855 (S.D. W. Va. 2013) (class certification).

- 13 -

class certification is subject to common proof, but it is not appropriately decided on a motion on the pleadings.  The authorities that Cook cites on this point reflect this; nearly all of them involved class certification motions and did not stem from disfavored motions to strike class allegations.[9]

### D.    The Requested Relief Is a Classic Group Remedy.

Plaintiffs have proposed a population-based notice and diagnostic protocol that includes a common scan of common products.  Under the proposed program, identical relief will be available to each and every member of the Class.  Cook has created the need for this injunctive relief by designing, marketing, and selling defective IVC filters – by acting, as Rule 23(b)(2) anticipates, "on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]"  Fed. R. Civ. P. 23(b)(2).  Cook, however, argues that the notice and diagnostic protocol that Plaintiffs have proposed does not apply to the entire Class and is inherently individualized.  *See* Mem. at 12.  Cook has misread the Complaint, and simply raised a factual issue not amenable to a decision on a pleading challenge.

First, Cook's argument that the proposed diagnostic protocol involves individualized relief is based on a misapprehension of the Complaint.  The Complaint also sets forth the overwhelming consensus within the relevant medical community and among regulators that retrievable IVC filters should be monitored.  ¶¶ 66-73.  Those recommendations, from the FDA, Health Canada, and ACR-SIR, did not make distinctions among filter patients; the recommendation to monitoring and provide structured follow-up applied to all.  As the FDA has

---

[9] *See* Mem. at 9 (citing *Dhamer v. Bristol-Myers Squibb Co.*, 183 F.R.D. 520 (N.D. Ill. 1998) (class certification), and n.13 (citing *Zinser*, 253 F.3d at 1195-96 (class certification); *Duncan v. N.W. Airlines, Inc.*, 203 F.R.D. 601 (W.D. Wash. 2001) (class certification); *Day*, 144 F.R.D. at 335-36 (class certification); *Gibbs v. E.I. DuPont De Nemours & Co.*, 876 F. Supp. 475 (W.D.N.Y. 1995) (class certification as to selection cited by Cook).

stated, physicians to all Class members or people with a removable IVC filter should be evaluated in order to make that risk/benefit assessment about whether or not to remove the filter. The proposed diagnostic program facilitates that risk/benefit assessment by providing physicians the necessary information to undertake that process.  (Compl. ¶ 73.)  While the ultimate decision to remove the filter will involve "weigh[ing] the benefits of continued filtration (need for PE prophylaxis)" in a given patient "against the associated risks (e.g., recurrent deep venous thrombosis, IVC thrombosis, symptomatic penetration, or mechanical failure) and uncertainties," that weighing process is not undertaken as part of the proposed diagnostic program.

Second, Cook's contention that the proposed monitoring program does not benefit the class as a whole is a factual issue.  It will be Plaintiffs' burden at class certification to demonstrate that the proposed monitoring program can and will apply to all Class members. Plaintiffs will make that showing with expert testimony, which could include testimony on screening and monitoring programs from a public health expert, testimony concerning the structure and mechanics of notice from experts who have administered similar programs, as well as testimony concerning the population of patients whose Cook filters are still implanted. Plaintiffs should be permitted to make that showing at the proper time, after discovery, as other courts have repeatedly recognized.  *See, e.g., Brown*, 2017 WL 899949, at *1 ("Since class certification 'generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action,' striking class allegations at the pleading stage is generally inappropriate.") (quoting *Boatwright v. Walgreen Co.*, No. 10-cv-3902, 2011 WL 843898, at *2 (N.D. Ill. Mar. 4, 2011).[10]

---

[10] Each and every one of the cases that Cook relies on in its final section of its brief, on the question of whether the proposed relief is inherently individualized, were, again, decided on class certification, after development of the record.

The fact that notice to the Class is included in the proposed program does not make the requested injunctive relief individualized.  Plaintiffs are seeking a notice and education program because Plaintiffs and Class members have been deprived of the information they need to make decisions about the care of their filter, and to avoid future injury.  As a result, Plaintiffs are demanding a single, unitary course of action – a notice program that advises patients of the potential dangers with their filters and gives them the opportunity to address them.  That type of injunctive relief fits Rule 23(b)(2) like a glove.

In arguing that notice somehow means that the proposed relief is individualized, Cook relies heavily on *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481 (7th Cir. 2012), but that case is readily distinguishable.  First, it came to the Seventh Circuit on class certification, not on a motion to dismiss.  Second, in contrast to the simply defined class proposed here (patients whose Cook filters have not been explanted and have not filed a personal injury lawsuit), *Jamie S.* involved "thousands of individual determinations of class membership, liability, and appropriate remedies."  *Id.* at 499.  *Jamie S.*'s proposed class included some unknown number of children who were eligible for special education services, but had not been identified as needing those services.  Cook appears to attempt to analogize *Jamie S.*'s proposed remedy, which was to "merely initiate a process through which highly individualized determinations of liability and remedy are made[.]"  *Id.*  But that bears no resemblance to this case.  Here, the proposed monitoring program has a clear beginning (notice of the availability of the scan), middle (the scan), and end (a reading for the benefit of the doctor and patient to determine appropriate next steps).  Compl. ¶ 76. Class members can take whatever steps they and their doctors deem necessary after that.

**E.      Leave to Amend Should Be Granted If the Court Grants Cook's Motion.**

Should the Court grant Defendants' motion, Plaintiffs respectfully request that they be granted leave to amend their complaint to allege that class certification is alternatively appropriate pursuant to Rule 23(b)(3).  *See* Fed. R. Civ. P. 15(a); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded.").  In its brief, Cook concedes that this is an option.  *See* Mem. at 12 (suggesting that individuals seeking medical monitoring "can try to qualify as a (b)(3) class").  The relief ultimately available to Plaintiffs and Class members will be the same in a Rule 23(b)(3) action, and Plaintiffs expect that the evidence used to show why class certification is appropriate would overlap and be common to all Class members regardless of which subsection of Rule 23 is invoked.  The only difference between a Rule 23(b)(2) and Rule 23(b)(3) class will be the addition of an opt-out period, a difference that highlights the cohesiveness of the proposed class, and the infirmities of Cook's motion.

As several courts have noted, an opt-out right is an uneasy fit in cases in which plaintiffs seek medical monitoring – a classic group remedy.  The *Donovan* court explained, "because the prosecution of the medical monitoring claim does not preclude members from bringing suit if they eventually develop [a physical injury], an opt out is not necessary to protect later claims.  Looked at this way, the need for medical monitoring is appropriately classified as a group injury.  The opt out serves no purpose."  *Donovan*, 268 F.R.D. at 21.  The court in *Day* , held that the option to opt out and seek medical monitoring on an individual level is not likely to occur.  The *Day* court held that not only is "plaintiff-by-plaintiff injunctive relief . . . not practical" generally,

1352466.3

851 F. Supp. 869 at 885, but "[t]o administer medical monitoring piecemeal is unworkable." *Id.* at 886.[11]

These practical realities demonstrate that the monitoring program that Plaintiffs seek is a group remedy; no single individual would or could sue Cook to establish such a program on an individual basis.  Cook itself understands the indivisible nature of the medical monitoring protocol that Plaintiffs have described.  It states, "if even one plaintiff wins the requested injunction, all the proposed class will be affected whether or not they have opted out."  Mem. at 13.  As Cook seems to recognize, the requested injunction can and should affect, and benefit, all Class members.  In such a situation, Rule 23(b)(2) certification is appropriate.  However, aside from delay associated with an opt-out period,[12] there is no practical difference in how this case will proceed if Plaintiffs seek Rule 23(b)(3) certification.  Accordingly, if the Court grants Cook's motion, Plaintiffs should be permitted to amend their complaint to add Rule 23(b)(3) class allegations.

## IV.   <u>Conclusion</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' motion.

Dated:  June 30, 2017                       Respectfully submitted,

                                            By:___ */s/ Daniel E. Seltz*_____
                                                   Daniel E. Seltz

---

[11] The *Day* court, in approving certification under Rule 23(b)(2), also held that an opt-out right was not appropriate in a case where the defendant was to fund a program for the class; the lack of an opt-out option limited the defendant's liability to money actually spent on the proposed diagnostic testing through the court-supervised program. *See Day*, 851 F. Supp. at 886.
[12] The Court can still allow an opt-out option in a Rule 23(b)(2) case, as the Seventh Circuit has explained. *See Johnson*, 702 F.3d at 370-71.

1352466.3

Roland Tellis (SBN 186269)
Rtellis@baronbudd.com
Evan Zucker (SBN 266702)
ezucker@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California  91436
Telephone:    (818) 839-2333
Facsimile:    (818) 986-9698

Ben Martin
bmartin@bencmartin.com
THE LAW OFFICES OF BEN C. MARTIN
3710 Rawlins Street, Suite 1230
Dallas, Texas 75219
Telephone:    (214) 761-6614

Wendy Fleishman
wfleishman@lchb.com
Daniel E. Seltz
dseltz@lchb.com
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone:    (212) 355-9500

*On behalf of Plaintiffs and the proposed Class*