**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates to Plaintiff
    Arthur Gage
    Civil Case No. 1:14-cv-06016-RLY-TAB

**COOK DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF STANDING OR, IN THE ALTERNATIVE, TO LIMIT DAMAGES**

The Cook Defendants move to dismiss Plaintiff's claims on the ground that Arthur Gage lacks standing to assert those claims. Mr. Gage filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code during the course of this litigation, and all claims he had against the Cook Defendants became the property of his bankruptcy estate. Mr. Gage never disclosed those claims as an asset in the bankruptcy case, however, and the claims remain the property of the bankruptcy estate as a matter of law. Because Mr. Gage does not own or control the claims against the Cook Defendants, Mr. Gage has no standing to assert them in this action, and the Court should dismiss all of his claims.

In the alternative, if the bankruptcy trustee were to assume the prosecution of this action to pursue these claims and receives any necessary authorization from the bankruptcy court, and if this Court were to permit the trustee to do so (rather than dismissing the claims), the Court apply the doctrine of judicial estoppel against Mr. Gage and should limit any claim of damages to the

sum of (1) the valid claims by creditors allowed in the bankruptcy court, (2) interest on those claims, and (3) fees for the trustee incurred in the administration of the bankruptcy case.

I.  **FACTUAL BACKGROUND**

Plaintiff Arthur Gage was implanted with a Cook Gunther Tulip IVF filter during surgery on April 25, 2011.  Ex. A, Pl. Prof. Form at 1.

On November 14, 2014, Gage commenced this action against the Cook Defendants, asserting claims for damages related to the implantation of the Tulip filter.  *See* Case 1:14-cv-01875 (S.D. Indiana) Dkt. 1.  On March 18, 2015, Gage served his Plaintiff's Profile Form.  Ex. A, Pl. Profile Form.  In response to the question on that form that asked "Have you Filed for bankruptcy from 5 years prior to the date of first placement of the Inferior Vena Cava Filter [April 2011] to the present?", Gage checked "No."  *Id.* at 3.

On August 6, 2015, Cook served on Gage a notice to take his deposition on August 13, 2015.  *See* Ex. B, Second Amended Notice to Take Videotaped Deposition *Duces Tecum*.  On August 10, 2015—four days after the service of his second amended deposition notice in this action—Gage filed his voluntary petition for relief under Chapter 7 of the bankruptcy code in the United States Bankruptcy Court for the Northern District of Illinois.  *See generally,* Ex. C, Docket Sheet, Bankr. Pet. No. 15-27259 (N.D. Ill.); Ex. D, Bankr. Dkt. 1.  Gage was represented by an attorney in his bankruptcy case.  *See* Ex. E, Bankr. Dkt. 1-1 at 1 (showing signature of attorney Nathan Delman of the Semrad Law Firm); Ex. F, II Gage Dep. at 146:7-18.  Gage himself had the idea to file for bankruptcy and to call the attorney.  *Id.* at 147:5-10.

On page 2 of the "Statement of Your Current Monthly Income" that accompanied his bankruptcy filing, Gage listed $991.33 from a "Personal Injury Award" under the heading "Income from all other sources listed above."  Ex. G, Bankr. Dkt. 2 at 2.  Neither Gage's

bankruptcy petition nor the schedules that accompanied it, however, listed as an asset any claims or potential claims against the Cook Defendants. On Schedule B (relating to personal property), for item 21, which required Gage to disclose "[o]ther contingent and unliquidated claims of every nature," Gage checked "none." Ex. D, Bankr. Dkt. 1 at 10. Also on Schedule B, for item 35, which required Gage to disclose "[o]ther personal property of any kind not already listed," Gage checked "none." Ex. D, Bankr. Dkt. 1 at 11.

No other entry on Gage's Schedule B identified or suggested the existence of Gage's pending lawsuit against the Cook Defendants. Gage declared under penalty of perjury that the information provided in his petition was "true and correct." Ex. E, Bankr. Dkt 1-1 at 1. Gage also declared under penalty of perjury that he had read the Schedules he was submitting and that they were true and correct to the best of his knowledge, information, and belief. Ex. E, Bankr. Dkt. 1-1 at 3.

On August 13, 2015, three days after filing his bankruptcy petition, Gage appeared and testified at his initial deposition in this action, represented by one of his current attorneys, Matthew McCarley.

On September 14, 2015, the Trustee of Gage's bankruptcy estate, Brenda Porter Helms ("Trustee"), filed her Chapter 7 Report of No Distribution. Ex. C, Bankr. Dkt. 9 at 2-3. In that report, the Trustee stated that "there is no property available for distribution from the estate over and above that exempted by law." Ex. C, Bankr. Dkt. 9 at 2. On November 10, 2015, based on the Chapter 7 Trustee's Report of No Distribution and having no notice of the litigation against the Cook Defendants, the bankruptcy court issued its Order Discharging Gage—abandoning $0.00 of assets, exempting $5057.00 of assets, and discharging $18,880.00 of scheduled claims

without payment. Ex. C, Bankr. Dkt. 9 at 3; Ex. H, Bankr. Dkt. 13. On November 13, 2015, the bankruptcy case was closed and the Trustee was discharged. *See* Ex. C, Bankr. Dkt. 15 at 3.

On October 16, 2016, Gage served his response to Cook Interrogatory No. 3, which asked him to "[i]dentify and describe all legal claims ever made by or against you" and requested information concerning such proceedings. Ex. I, Gage's Answers to Interrogatories at 9. Gage identified the settlement of a claim involving a car accident and an insurance company, but did not mention his bankruptcy filings. *See id.* at 9. In addition, Gage never updated or filed an amended Plaintiff's Profile Form that either identified the bankruptcy filing or certified that the bankruptcy trustee had been notified of his claim against the Cook Defendants, as the PPF requires.

Finally, ***on January 9, 2017***, Gage acknowledged his bankruptcy filing for the first time in this action at his follow-up deposition, again represented by attorney Matthew McCarley. *See* Ex. F, II Gage Dep. at 112:1-6, 146:3-147:13. In the months since that deposition, the Cook Defendants are aware of no efforts by Gage or either set of his attorneys to reopen the bankruptcy case, to inform the bankruptcy court of the previously undisclosed claim against the Cook Defendants, or to contact the Trustee concerning intervention in this case as the real party in interest. According to the docket sheet, Gage's bankruptcy case has remained closed since November 13, 2015, and there have been no filings of any kind in the case since that date. *See* Ex. C, Docket Sheet, Bankr. Pet. No. 15-27259 (N.D. Ill.).

## II.  ARGUMENT

The Cook Defendants urge the Court to dismiss Plaintiff Arthur Gage's claims against them for lack of standing. These personal injury claims legally belong to Gage's bankruptcy estate, and Gage is not a real party in interest entitled to prosecute those claims.

Should the Trustee elect to seek substitution for Gage as the Plaintiff in this action, the Cook Defendants ask in the alternative that the Court limit the damages the Trustee/Plaintiff may recover at trial to the total of (1) the amount of all valid claims in Gage's bankruptcy proceeding (some $18,880), plus interest, and (2) fees for the Trustee incurred in that administration of the bankruptcy case. Given Gage's contradictory representations to this Court and the bankruptcy court, the doctrine of judicial estoppel bars Gage from any personal recovery beyond that which is owed his creditors in bankruptcy.

Where, as here, the issue of judicial estoppel is premised on a plaintiff's failure to schedule a lawsuit in a prior bankruptcy proceeding, "a court should first determine whether the individual has standing to bring suit or whether the trustee is the real party in interest, because most of a debtor's possessions become property of the estate upon the filing of a bankruptcy petition." *Biggs v. AM Gen., LLC,* No. 3:07-CV-28, 2008 WL 1957864, at *2 (N.D. Ind. May 1, 2008). The Cook Defendants will therefore address the issues of standing and judicial estoppel in turn.

### A. THE COURT SHOULD DISMISS PLAINTIFF ARTHUR GAGE'S CLAIMS BECAUSE HE LACKS STANDING TO ASSERT THEM.

The Court should dismiss Plaintiff Arthur Gage's claims in this case because he has no standing to prosecute them. Such claims are the property of his bankruptcy estate and, because Gage never informed the Trustee of their existence, the Trustee had no opportunity to make an informed decision to pursue or abandon such claims. If the Trustee elects and becomes

authorized to administer the claims, and if this Court concludes that the Trustee should be allowed to pursue that portion of the claims against the Cook Defendants that would satisfy the valid claims against the bankruptcy estate and pay plus the Trustee's allowed fees and costs, the Court should permit the Trustee a reasonable time to substitute herself for Gage as Plaintiff in this case. If she declines to do so, the Court should dismiss.

### 1. Plaintiff Arthur Gage has no standing to pursue the claims in this action.

Plaintiff Gage cannot maintain this action because he lacks standing to do so. To establish standing sufficient to prosecute his cause of action, Gage must demonstrate that he has suffered "(1) an injury in fact; (2) fairly traceable to the defendant's action; and (3) capable of being redressed by a favorable decision from the court." *Parvati Corp. v. City of Oak Forest, Ill.,* 630 F.3d 512, 516 (7th Cir. 2010). Here, Gage has no injury in fact and the Court cannot provide the relief he seeks because the bankruptcy estate is the rightful owner of the claims asserted in the litigation.

Pursuant to Section 541 of the Bankruptcy Code, all of a debtor's property becomes part of the bankruptcy estate at the time a petition is filed. 11 U.S.C. § 541(a)(1). This property includes causes of action that accrued prior to filing the petition, like Gage's claims against the Cook Defendants here. *See Cannon-Stokes v. Potter,* 453 F.3d 446, 448 (7th Cir. 2006). The trustee in a Chapter 7 case "has sole authority to dispose of property, including managing litigation related to the estate." *Cable v. Ivy Tech State College,* 200 F.3d 467, 472 (7th Cir. 1999) (citing 11 U.S.C. §§ 541(a)(1), 704(1)), *overruled on other grounds*, *Hill v. Tangherlini*, 724 F.3d 965, 968 (7th Cir. 2013).

Here, Gage filed a petition for Chapter 7 bankruptcy 11 months *after* filing the present lawsuit against the Cook Defendants. When he filed that petition, all of his property, including his existing lawsuit against the Cook Defendants, immediately became part of the bankruptcy estate. Gage therefore cannot pursue this lawsuit, because *"only* the trustee has standing to prosecute or defend a claim belonging to the estate." *Cable,* 200 F.3d at 472 (emphasis in original).

The Federal Rules of Civil Procedure require that an action "must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1); *see Weissman v. Weener,* 12 F.3d 84, 86 (7th Cir. 1993) ("[B]oth standing and real party in interest are used to designate a plaintiff who possesses a sufficient interest in the action to entitle him to be heard on the merits.") (internal quotation marks omitted). Because only the Trustee possesses the requisite interest in enforcing the rights of the bankruptcy estate, only the Trustee may prosecute this case as the real party in interest. *See* 11 U.S.C. § 541(a); Fed. R. Civ. P. 17(a)(1); *In re New Era, Inc.*, 135 F.3d 1206, 1209 (7th Cir. 1998) (holding that Chapter 7 trustee has exclusive right to represent debtor in court); *Guynn v. Potter,* No. IP 99-1907-CT/F, 2002 WL 243626, at *4 (S.D. Ind. Jan. 25, 2002). Nor does the closing of his bankruptcy case cure this problem or permit Gage to prosecute this action; "if a legal claim is not scheduled or otherwise administered by the time the bankruptcy is closed, it forever remains property of the estate, and the trustee remains the real party in interest." *Matthews v. Potter*, 316 Fed. Appx. 518, 521 (7th Cir. 2009); *see also* 11 U.S.C. § 554(d).

### 2. The Court should permit the Trustee a reasonable opportunity to substitute herself as plaintiff.

Before dismissing this action on the ground that Plaintiff Gage is not the real party in interest, the Court should give that real party in interest—the Trustee—an opportunity to step in and prosecute the action. Federal Rule 17(a)(3) imposes this requirement, stating:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder or substitution, the action proceeds as if it had been originally commenced by the real party in interest.[1]

Here, neither Gage nor his attorneys ever informed the bankruptcy court or the Trustee of Gage's claims against the Cook Defendants. The Court can therefore only speculate whether the Trustee would have been or would be interested in substituting herself as the plaintiff in this action and pursuing the claims against the Cook Defendants on behalf of Gage's debtors, who received no distribution from the bankruptcy estate. *See* Bankr. Dkt. 9, 13 (showing discharge without payments). After all, although Gage's concealment of the claims from the bankruptcy court estops Gage himself from recovering based on those claims (as discussed in section B. below), Gage's conduct should not necessarily operate to the prejudice of innocent creditors whose losses would otherwise go uncompensated. *See Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006) (noting risk to innocent creditors of barring trustee from pursuing

---

[1] Some courts have dismissed debtors' claims under circumstances like these based on lack of standing. *See, e.g., Lightspeed Media Corp. v. Smith*, 830 F.3d 500, 505 (7th Cir. 2016) (dismissing appeal where appellant who had filed Chapter 7 bankruptcy lacked standing); *United States ex rel. Gebert v. Transp. Admin. Servs.*, 260 F.3d 909, 914 (8th Cir. 2001) (affirming dismissal and noting: "After bankruptcy, the relator no longer has an interest in any damages because the claim is no longer his; the relator's right to the claim (including any money damages) is now the property of the bankruptcy estate."). Rule 17(a)(3) and Seventh Circuit precedent appear to require the Court to provide the Trustee with an opportunity to substitute.

portion of claim necessary to pay outstanding debts); *Wiggins v. Citizens Gas & Coke Utility*, 2008 WL 4530679 (S.D. Ind. 2008) (quoting *Biesek*).

Should the now-former Trustee deem the value of the claims to be sufficient to justify reopening the bankruptcy case, securing reappointment as Trustee, and pursuing the action against the Cook Defendants, the Court should provide her with a reasonable time in which to take those measures and to seek that substitution as the real party in interest to pursue the claims at issue, at least to the extent that the bankruptcy claims against the plaintiff/debtor remain unsatisfied. *See Bauer v. Commerce Union Bank*, 859 F.2d 438, 441-442 (6th Cir. 1988) (noting trial court did not abuse its discretion by substituting trustee for plaintiff debtors in tort case under Rule 17). If the Trustee elects to assume the prosecution of the action, any recovery should be limited as discussed in section B below.

If neither Gage nor the Trustee takes any action to accomplish a substitution within a reasonable time, the Court should dismiss the action with prejudice. *See, e.g., Lionetti v. Nat'l City Bank of Indiana*, No. 106-CV-511-SEB-TAB, 2008 WL 312921, at *1 (S.D. Ind. 2008) (granting summary judgment where plaintiff's counsel made no effort to notify bankruptcy trustee of unscheduled action or substitute him as real party in interest for plaintiff who lacked standing); *Metal Forming Techs., Inc. v. Marsh & McLennan Co.*, 224 F.R.D. 431, 438 (S.D. Ind. 2004) (granting summary judgment based on finding that "[p]laintiffs failed to substitute the real party in interest within a reasonable time after being notified of" the absence of real party in interest); *In re Davis*, 158 B.R. 1000, 1003 (Bankr. N.D. Ind. 1993) (dismissing complaint where debtors failed to correct real party in interest problem within the 15 days granted by court).

### B. SHOULD THE COURT PERMIT THE BANKRUPTCY TRUSTEE TO PURSUE PLAINTIFF'S CLAIMS, JUDICIAL ESTOPPEL LIMITS THE DAMAGES THE TRUSTEE MAY RECOVER.

Should the Trustee elect to reopen the bankruptcy case and to pursue this action as the real party in interest, the doctrine of judicial estoppel requires the Court to bar any recovery that would go to Gage personally and to limit the Trustee's potential recovery in this action to the amount of all valid and allowed claims in Gage's bankruptcy proceeding (plus interest)—i.e., the amount necessary to pay Gage's creditors in full—and the Trustee's allowed fees and costs incurred in Gage's bankruptcy case. *Pierce v. Visteon Corp.*, No. 1:05-cv-01325-LJM-DKL, at 32 (S.D. Ind., June 25, 2013) (holding that where the bankruptcy case is closed, "the Court believes the better legal construct to address the viability of the Bankrupt Plaintiffs' claims with respect to the closed cases is under the doctrine of judicial estoppel"); *accord, Canen v. U.S. Bank Nat'l Ass'n*, 913 F. Supp. 2d 657, 663 (N.D. Ind. 2012).

Application of judicial estoppel is necessary here both to protect the integrity of the Court and to prevent Gage from benefiting from his duplicity. As this Court has stated:

> Judicial estoppel is an equitable doctrine that serves to protect the integrity of the judicial process. It prevents a party from obtaining a benefit on one ground in a case and then taking a contrary position on that ground in a different case in order to obtain a second benefit. In effect, it prevents litigants from playing "fast and loose" with the courts by changing positions when it is convenient to them. *United States v. Hook,* 195 F.3d 299, 306 (7th Cir.1999) ("The purpose of judicial estoppel is 'to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories.'"), *cert. denied,* 529 U.S. 1082, 120 S.Ct. 1707, 146 L.Ed.2d 510 (2000); *Chaveriat v. Williams Pipe Line Co.,* 11 F.3d 1420, 1427 (7th Cir.1993); *In re Cassidy,* 892 F.2d 637, 641 (7th Cir.1990).

*Wiggins v. Citizens Gas & Coke Utility*, 2008 WL 4530679 at *1 (S.D. Ind. 2008).

The prerequisites for the application of judicial estoppel are:

(1) the later position must be clearly inconsistent with the earlier position;
(2) the facts at issue should be the same in both cases; and
(3) the party to be estopped must have convinced the first court to adopt its position.

10

*United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999) (quoting *Levinson v. United States*, 969 F.2d 260, 264-65 (7th Cir. 1992)).  Although prejudice to the opposing party may reinforce a finding of judicial estoppel, *see, e.g., New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) "prejudice to the opponent from the change of position is not a necessary element of judicial estoppel."  *Matter of Cassidy*, 892 F.2d 637, 641 n.2 (7th Cir. 1990) (citing *Konstantinidis v. Chen*, 626 F.2d 933 (D.C. Cir. 1980)).

Many courts have apply the doctrine of judicial estoppel in situations like this, where a party tries to assert a claim that existed at the time he sought bankruptcy protection but which he did not schedule as an asset in the bankruptcy proceedings.  *See, e.g., Biesek v. Soo Line Railroad Co.,* 440 F.3d 410 (7th Cir.2006); *Wiggins,* 2008 WL 4530679.  As the Seventh Circuit has noted, federal courts across the country have consistently held that "a debtor in bankruptcy who denies owning an asset, including a chose in action or other legal claim, cannot realize on that concealed asset after the bankruptcy ends."  *Cannon-Stokes v. Potter*, 453 F.3d 446, 447-448 (7th Cir. Ill. July 5, 2006);[2] *see also Smith v. American Gen. Life Ins. Co.*, 544 F.Supp.2d 734-35 (C.D. Ill. 2008) (applying judicial estoppel to Chapter 7 debtor to prevent "procedural chicanery"); *Bland v. Rahar*, 2008 WL 109388 (C.D. Ill. Jan. 9, 2008) (applying judicial estoppel even though the plaintiff did not understand the disclosure requirements).

---

[2] The Cannon-Stokes court cited circuit court decisions in *Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570 (1st Cir. 1993); *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314 (3d Cir. 2003); *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598 (5th Cir. 2005); *United States ex rel. Gebert v. Transport Administrative Services*, 260 F.3d 909, 917-19 (8th Cir. 2001); *Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778 (9th Cir. 2001); and *Barger v. Cartersville*, 348 F.3d 1289, 1293-97 (11th Cir. 2003).

The Court should apply judicial estoppel in the present case to bar a substituted Trustee from recovering any damages beyond the valid and allowed claims in Gage's bankruptcy proceeding (with interest) and the Trustee's allowed fees and costs and to prevent Gage from benefiting from his misrepresentations to the bankruptcy court. While the present case was pending in this Court, Gage filed his Chapter 7 case seeking the benefits of the Bankruptcy Code. Like all bankruptcy petitioners, that filing imposed on him the duty to disclose to the bankruptcy court all of his assets. Despite this duty, Gage concealed from the bankruptcy court and his creditors the claims he was asserting against the Cook Defendants and misrepresented to that court that he had no other assets. In doing so, Gage sought to obtain a monetary advantage, specifically to obtain the discharge of his personal debts while still pursuing his undisclosed claim against the Cook Defendants. In a nutshell, Gage represented to the bankruptcy court that he had no claim against the Cook Defendants at the same time he asserted just such a claim in this Court. *See BPP Illinois, LLC v. Royal Bank of Scotland Group, PLC*, 859 F.3d 188, 193-94 (2d Cir. 2017) (applying judicial estoppel and holding that debtor's failure to disclose cause of action to bankruptcy court is "equivalent to a representation" that no cause of action exists)

Gage's misrepresentations to the bankruptcy court threaten the integrity of the judicial process, and the Court should apply the doctrine of judicial estoppel to prevent Gage from benefitting from his concealment of his claim from the bankruptcy court and his creditors. This Court faced a nearly identical situation in *Wiggins v. Citizens Gas & Coke Utility*, 2008 WL 4530679 (S.D. Ind. 2008) and judicially estopped the debtor from receiving any monetary recovery based on the concealed claim. In *Wiggins*, the debtor filed an EEOC race discrimination charge against his employer. *Id*. at *1. Two months after filing the charge, the debtor filed for Chapter 7 bankruptcy protection and failed to list the EEOC claim as an asset in

12

his submissions. *Id.* at 2.  A month later, the bankruptcy court reported no receipt or distribution of assets, discharged the debtor's debts, and closed the bankruptcy case.  *Id.* at 1.

Two years after the bankruptcy case was closed, the debtor joined other plaintiffs and filed a discrimination suit against the employer.  *Id*.  As trial approached, the defendant discovered the debtor's earlier bankruptcy and his failure to disclose the claim against the employer in the bankruptcy proceedings, and moved to dismiss the debtor's claims.  *Id.*  The debtor then reopened his bankruptcy case, and the bankruptcy trustee moved to be substituted as the real party in interest.  *Id.*  Citing judicial estoppel, the employer then moved to dismiss the trustee's claims entirely or, in the alternative, "that any monetary recovery be capped at the amount of all valid and allowed claims in [debtor's] bankruptcy proceeding (including interest and the Trustee's allowed fees and costs incurred in the bankruptcy case)."  *Id.*

Judge Barker agreed that the debtor himself was judicially estopped from pursuing recovery on his discrimination claim.  The assertion of that claim in the district court was "clearly inconsistent" with the failure to list the claim in the bankruptcy court, the facts underlying the claim were the same in both cases, and bankruptcy court discharged the debtor's debts based in part "on the absence of these claims as assets."  These undisputed facts established the elements of judicial estoppel.  *Id.* at 2 (citing *Hook*).

The court also rejected the argument that the debtor's failure to disclose the claim to the bankruptcy court was inadvertent, noting that inadvertence can exist only where the debtor either is unaware of the claims or has no motive to conceal them.  *Id.* (collecting cases).  The debtor in *Wiggins* was clearly aware of his claims, and so did not fall within that exception; the court found his assertion that he was unaware of his obligation to disclose those claims was irrelevant.  *Id.* ("it is not the duty [to disclose] of which debtors must be unaware, but the facts giving rise to

13

their claims). The court also noted that the debtor "had a motive to conceal his claims: in order to obtain a discharge of his debts from the bankruptcy court." *Id.* at 3. As a result, the court concluded, "[h]is failure to disclose [his claims] in his bankruptcy proceedings cannot be seen as inadvertent."

While the *Wiggins* court judicially estopped the debtor from benefitting from any recovery based on the discrimination claims, the court permitted the trustee to pursue the claim to recover monies that would not go to the debtor. The Court noted that the Seventh Circuit had instructed courts "to not unduly punish creditors" in such situations "if effective alternative sanctions are available," *id.* at 4 (citing *Biesek*), and limited the trustee's recovery to "the amounts allowed by the Bankruptcy Court in Mr. Davidson's bankruptcy case for (1) creditors' claims, (2) interest thereon, and (3) fees for the Trustee incurred in the Bankruptcy Court," *id.* at 5.

The facts presented here are materially identical and require the same result. Like the debtor in *Wiggins*, Gage's assertion of his personal injury claim in this Court is "clearly inconsistent" with his failure to disclose that claim in his bankruptcy court filings. The facts underlying the personal injury claim are the same in both *Wiggins* and the instant case. And as in *Wiggins*, the Gage bankruptcy court discharged Gage's debts and closed his case based in part on the absence of his personal injury claim as an asset. These undisputed facts establish the elements of judicial estoppel, *see Hook*, 195 F.3d at 306, and the Court should apply the doctrine here to bar Gage from any monetary recovery based on his former claim against the Cook defendants.

Indeed, the facts here are even more compelling for the application of judicial estoppel than those in *Wiggins*. In *Wiggins*, the debtor had not yet commenced or joined litigation to

14

prosecute his claim at the time he filed for bankruptcy; he had only filed a charge with the EEOC.  *Wiggins*, 2008 WL 4530679 at *1.  Here, however, Gage had actually filed suit against the Cook Defendants eight months *before* he filed his bankruptcy case.  And Gage was affirmatively reminded of his claims in this action both immediately before and immediately after he filed his bankruptcy petition, through the notice and then the taking of his deposition int this case.  Gage cannot conceivably assert that he was unaware of his claim against the Cook Defendants—a potential asset to schedule—at the time he filed his bankruptcy case.

Moreover, the debtor in *Wiggins* acted immediately when the issue was raised to reopen his bankruptcy case, to amend his bankruptcy court disclosures to include the omitted claim, and to substitute the trustee as the real party in interest, *see id.*, and that did not save his claims from judicial estoppel.  Here, although Gage and his current attorneys have known of the bankruptcy problem since at least January 9, 2017, when Gage discussed the bankruptcy case in his second deposition, Gage has taken no steps of any kind to address the issue.  He has not moved to reopen his bankruptcy case, he has not tried to amend his bankruptcy submissions to include his claim against the Cook Defendants, and he has not sought to substitute the Trustee as the real party in interest.  He has simply continued to assert a claim that is not his to assert—a claim that he concealed from the bankruptcy court, the Trustee, and his creditors.  The argument for judicial estoppel is persuasive.  *See also Canen v. U.S. Bank Nat. Ass'n*, 913 F.Supp.2d 657, 665-66 (N.D. Ind. 2012) (judicially estopping plaintiffs from pursuing claims they knew of but did not disclose to bankruptcy court before discharge).

Therefore, should a re-appointed Trustee elect to pursue the claims in this action on behalf of Gage's creditors, this Court should—as it did in *Wiggins*—bar Gage from any personal recovery based on the claims and should judicially estop the Trustee from recovering any monies

in excess of the amounts allowed by the bankruptcy court in Gage's bankruptcy case for (1) creditors' claims, (2) interest on those claims, and (3) fees for the Trustee incurred in the administration of the bankruptcy case.  *See Wiggins*, 2008 WL 4530679 at 5.

## CONCLUSION

For the reasons discussed above, the Cook Defendants urge the Court to grant their motion and dismiss Plaintiff Arthur Gage's claims in this action on the ground that he lacks standing to assert those claims.  In the alternative, should the Trustee wish to assume the prosecution of this action to pursue these claims and the Court grants the Trustee leave to do so, the Court should apply the doctrine of judicial estoppel and should limit any recovery the amount of (1) the valid and allowed claims by creditors, (2) interest on those claims, and (3) fees for the Trustee incurred in the administration of the bankruptcy case.

Respectfully submitted,

Dated:         July 13, 2017          /s/ Andrea Roberts Pierson
Andrea Roberts Pierson (# 18435-49)
J. Joseph Tanner (#11856-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
E-mail:  andrea.pierson@faegrebd.com
E-mail:  joseph.tanner@faegrebd.com

James Stephen Bennett (# 22869-02)
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana  46802
Telephone: (260) 424-8000
Facsimile: (260) 460-1700
E-mail:  stephen.bennett@faegrebd.com

*Counsel for Defendants Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

16

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

/s/ Andrea Roberts Pierson