**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND          Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION                              MDL No. 2570
_____

This Document Relates to All Actions
_____

## DEFENDANTS' OBJECTIONS TO AND APPEAL FROM ORDER DENYING DEFENDANTS' MOTION FOR PROTECTIVE ORDER BARRING PROPOSED DEPOSITION OF KEM HAWKINS

The defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical

Incorporated), and William Cook Europe ApS (collectively "Cook" or Defendants), pursuant to

Rule 72 of the Federal Rules of Civil Procedure, object to and appeal from Magistrate Judge Tim

A. Baker's order entered on June 30, 2017 (the "Order") (Dkt. 5277), denying Cook's request for

entry of a protective order barring Plaintiffs' proposed deposition of Kem Hawkins ("Mr.

Hawkins"), the retired, former president of Cook Incorporated and Cook Medical Incorporated.

### SUMMARY OF THE REQUESTED RELIEF

Cook respectfully requests that the Court reverse the Order and enter a protective order

barring the deposition of Mr. Hawkins.  The Order was clearly erroneous and contrary to law

because, in cases such as this one, the law disfavors "apex depositions" of high ranking

executives where the requested information can be (and has been) garnered from more

knowledgeable subordinates.  Here, numerous current and former Cook executives and

employees have already offered the best evidence regarding Plaintiffs' proposed deposition

topics, and Mr. Hawkins has no unique or superior personal knowledge regarding the same.  That

Mr. Hawkins has any amount of relevant personal knowledge or involvement with Cook's IVC filters is not enough.

Furthermore, the court should consider that every single document pointed to by Plaintiffs purportedly showing Mr. Hawkins' involvement in filter strategy involves more knowledgeable subordinate Cook executives or employees already deposed or whose custodial files have been produced in discovery.  Thus, Mr. Hawkins can offer nothing unique, and the Court should consider that the high risk of abuse, harassment, and wasted resources arising from this deposition greatly outweighs the benefit, if any, to Plaintiffs.

**MAGISTRATE JUDGE'S RULING AND COOK'S OBJECTIONS**

On June 30, 2017, Magistrate Judge Baker denied Cook's request for entry of a protective order and stated that Plaintiffs may depose Mr. Hawkins.  Magistrate Judge Baker reasoned, in part, as follows:

> The Cook Defendants argue that Hawkins has no unique or superior personal knowledge relevant to the requested deposition. Plaintiffs' sealed memorandum provides specific and compelling examples that Hawkins was involved in the decision-making process and strategy regarding testing, design, marketing, and production of these filters. The Cook Defendants argue the law disfavors "apex depositions" of high-ranking executives. However, this is not the situation here. "[A]n apex deposition is generally inappropriate when an upper level executive lacks personal knowledge regarding the litigation, or when the requested information can be garnered from more knowledgeable subordinates." *Murillo v. Kohl's Corp.*, No. 16-CV-196-JPS, 2016 WL 6090862, at *4 (E.D. Wis. Oct. 18, 2016). Hawkins was personally involved with at least two of the IVC filters at issue in this MDL case. Thus, Hawkins has relevant personal knowledge.
>
> The Cook Defendants argue that Hawkins has no knowledge that is not already available to Plaintiffs from current and former Cook executives and employees that have already been deposed. Unlike Hawkins, however, these employees were not involved in the high-level decisions and strategic thinking surrounding the IVC filters at issue. In this regard, Hawkins is a better source for information related to this litigation because he

2

was the president of Cook during the time the Gunther Tulip and
Celect filters were manufactured and sold in the United States.

(Dkt. 5277 at pp. 2-3).

Cook objects to the Order as clearly erroneous and contrary to law for the following

reasons:

1)      Contrary to the Order, Cook has satisfied its burden of demonstrating good cause

for entry of a protective order barring the deposition of Mr. Hawkins.  Cook has shown that Mr.

Hawkins was involved only in high-level decisions concerning the Cook IVC filters, based on

information provided by other Cook employees.  Mr. Hawkins had no role in and has no unique

knowledge of the design, testing, manufacturing process, labeling and warnings, regulatory

activities, or marketing or advertising of the filters.  Present and former Cook employees are

much more knowledgeable about these areas of inquiry, and have been deposed regarding their

superior knowledge.

2)      The documents submitted by Plaintiffs and considered in the Order do not offer

"compelling examples that Hawkins was involved in the decision-making process and strategy

regarding testing, design, marketing and production of these filters."  (Dkt. 5277 at p. 2).  Rather,

the documents confirm that Mr. Hawkins can offer no unique or superior evidence than what has

already been discovered through additional Cook executives and employees.  The documents

reflect just the kind of high-level, non-specific involvement described by the multiple courts that

have barred such apex depositions.

3)      The Order improperly considered as meaningful the existence of Mr. Hawkins'

personal email account.  Plaintiffs' suspicions surrounding his personal email account have no

basis and no any bearing here in any event.  Plaintiffs exhausted their requests for custodial files

to be produced in discovery without requesting Mr. Hawkins' files, and Cook was thus under no

obligation to collect and search any email account of Mr. Hawkins.  In effect, Plaintiffs want to use the Hawkins deposition notice and their "CMO 2 Request for Documents to Cook Defendants" as an end-around to try to obtain an additional, unauthorized custodial file.  In any event, the documents submitted by the Plaintiffs reveal that they have had access to these relevant communications through other custodians.

4)     The Order failed to consider the substantial risks of allowing Plaintiffs to proceed with a deposition of Mr. Hawkins where Plaintiffs' attorneys have all but telegraphed their intention to "parade" these apex depositions before the jury for improper purposes.  Plaintiffs have stated that they think it's important for the jury to hear from the person who headed the company, an improper purpose in and of itself.  But common sense confirms Plaintiffs' *actual* intent is to falsely imply that because Mr. Hawkins cannot answer questions about specific facts or claims, that he was thus either ignorant or dishonest, and that Cook is therefore culpable.  Such implications would be false and improper, and the Order was clearly erroneous in its failure to consider the likelihood that Plaintiffs will try to implicitly impugn Cook in this manner.

## BACKGROUND

Melvin Kem Hawkins was the president of Cook Group Inc.[1] from 2001 through his retirement to Florida in 2015, and was president of Cook Incorporated from 2001 through 2013 and Cook Medical Incorporated from 2003 through 2015.  *See* Exhibit A, Declaration of Kem Hawkins ("Hawkins Decl.") ¶¶ 2-3.  Although Cook's Tulip filters and Celect filters (collectively "the Cook IVC filters") were manufactured and sold during Mr. Hawkins's time as president, he was involved only in high-level decisions concerning those filters, based on information provided by other Cook employees.  *Id.* ¶ 4.

---

[1] Cook Group Inc. is the holding company for the Cook family of companies, including Cook Incorporated and Cook Medical LLC, the primary defendants in this case.

4

When Plaintiffs' attorneys first sent Cook a proposed deposition notice/subpoena for the deposition of Mr. Hawkins, Cook attorney James M. Boyers conveyed to Plaintiffs Cook's objection to such a deposition based on the Apex Doctrine:

> If Plaintiffs' position is that this discovery is necessary to take Mr. Hawkins' deposition, we wish to advise you that Cook will invoke the Apex Doctrine to challenge any effort to take Mr. Hawkins' deposition in this litigation. Under the Apex Doctrine, courts may quash subpoenas for depositions of high level executives if the information being sought can be obtained from another witness or an alternative discovery method or if the deposition will result in an undue hardship.  In general, federal courts have held that a high level executive may only be deposed if there is a showing that the executive possesses knowledge of relevant facts unavailable through less intrusive methods, that those less intrusive methods of discovery have already been exhausted, and that the discovery will not be unnecessarily duplicative.  [case citations omitted]
> Importantly, much of the law that was developed on the issue of Apex depositions came before the modifications of Rule 26 in December of 2015. Those modifications, and the requirement of proportionality in all discovery, weigh heavily in favor of an order quashing the subpoena for documents and any subpoena for Mr. Hawkins' deposition.  We are prepared to file a motion for protective order.

Exhibit B, January 10, 2017 Letter from James M. Boyers regarding subpoena.[2]

In subsequent email correspondence, Cook's attorneys raised with Plaintiffs' attorneys the question of exactly what topics Plaintiffs believed justified the deposition of Mr. Hawkins. Plaintiffs' attorney counsel Matt Schultz responded:

> I neglected to mention the subject matters as you requested.  As I mentioned, it's difficult to specify as we don't wish to limit ourselves on subject matters.  That said, I would envision some brief questioning on the company history and organization and organizational responsibilities (enough to provide context for his testimony), and questions relating to Cook's IVC filter-related business with some focus on corporate policies and responsibilities given that he was the head of Cook Group/Cook Inc. for virtually the entire time period relevant to the cases.  I would expect questions into documents (those already produced and any produced/identified in Cook's CMO 2 response).  Those questions will be dictated by the content of the documents themselves.  I would not off the top of my head

---

[2] Mr. Boyers' letter also raised a number of objections to the document requests that accompanied the subpoena.

anticipate any inquiry into financial matters beyond his compensation and perhaps
sales numbers for IVC filters.  I hope this helps.

Exhibit C, March 26, 2017 Email from M. Schultz to A. Pierson regarding subpoena ("Schultz
Email").

That same day, March 26, 2017, Plaintiffs served on Cook a Notice of Taking Deposition
of Kem Hawkins, scheduling the deposition for June 12, 2017, in Indianapolis.  *See* Exhibit D,
Subpoena to Testify at a Video Deposition in a Civil Action and an accompanying Notice to
Take the Videotaped Oral Deposition of Melvin Kem Hawkins With CMO 2 Request For
Documents (Mar. 26, 2017) ("Notice").  The Notice does not identify any specific topics about
which Plaintiffs intend to question Mr. Hawkins.  It does, however, request that Mr. Hawkins
produce a broad array of documents, including

(1) "[a]ll documents constituting or containing written communications by or to" Mr.
Hawkins "relating in whole or in part to" any animal, bench, or clinical testing of any IVC filter;
any "labeling, advertising, promotion or marketing" of any IVC filter or delivery system; the
design, performance, safety, or efficacy of any IVC filter; and Cook compliance with federal and
international laws and regulations;

(2) all Cook standards and procedures relating to advertising or marketing of IVC filters,
communication with doctors about IVC filters, payments to doctors, complaint investigations of
IVC filters, and quality control for IVC filters;

(3) organizational charts, and

(4) Mr. Hawkins' personnel file.

*See* Ex. D, Notice at Request Nos. 1-4.

The Cook Defendants moved the Court for an order barring the apex deposition, Dkts.
4461, 4462, Plaintiffs filed a response, Dkt. 4638 (filed under seal with confidential documents

US.113201021.05

as exhibits at Dkt. 4639), and Cook filed a reply, Dkt. 4730.  By Order dated June 30, 2017, Magistrate Judge Baker denied Cook's motion.  *See* Dkt. 5277.

On July 14, 2017, Cook's attorney emailed Plaintiffs' attorney offering an additional deposition of Mark Breedlove, Cook's Vice president, Global Business Unit Leader for Peripheral Intervention, whom Cook had previously presented in response to Plaintiffs' Rule 30(b)(6) deposition notice on various issues.  *See* Ex. I.

## STANDARD OF REVIEW

Under Rule 72(a) of the Federal Rules of Civil Procedure, the district court will set aside or modify a nondispositive ruling if it is clearly erroneous and/or contrary to law. A factual finding is "clearly erroneous" where there is "'the definite and firm conviction that a mistake has been made.'" *Jones v. City of Elkhart*, 2012 WL 2458606, at *1 (N.D. Ind. June 27, 2012) (citing *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1993)).  A conclusion of law is "contrary to law" where the magistrate judge "'fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Henry v. Centeno*, 2011 WL 3796749 (N.D. Ill. Aug. 23, 2011) (quoting *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F.Supp.2d 70, 74 (N.D.N.Y. 2000)).

## ARGUMENT AND AUTHORITY

Cook urges the Court to reverse the Order and bar Plaintiffs from deposing Mr. Hawkins.  The fundamental question is whether Mr. Hawkins has unique or personal knowledge relevant to this litigation.  He does not.  Plaintiffs have had ample other means of obtaining the information they seek through more-knowledgeable witnesses and written discovery, and they have made good use of those opportunities.  Plaintiffs' insistence on this deposition only serves to harass Cook and Mr. Hawkins and waste the parties' time and resources.

US.113201021.05

## I.   THE STANDARD FOR QUASHING APEX DEPOSITIONS

Although public policy generally favors disclosure of relevant materials, a district court may limit the scope of discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C). The burden is on the party seeking the protective order to demonstrate that good cause exists for the entry of the order by making a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981).

Although acknowledging this burden on a defendant seeking to bar the deposition, federal courts nationwide—including both the Seventh Circuit and this Court—have imposed a substantial threshold for a plaintiff who wants to depose the president or other high-level official of a defendant, and have not hesitated to approve protective orders barring such depositions where a plaintiff cannot meet that threshold. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002); *Meharg v. I-Flow Corp.*, 2009 U.S. Dist. LEXIS 42446, 3-4 (S.D. Ind. May 15, 2009).

Courts view such depositions with disfavor and suspicion for several reasons. First, such top executives are "[g]enerally … familiar with the big picture of the operations of a company," but "not familiar with the day-to-day operations of a business." *Chick-Fil-A, Inc. v. CFT Dev., LLC*, 2009 U.S. Dist. LEXIS 34496, at *4 (M.D. Fla. Apr. 3, 2009). Second, the deposition of high-ranking corporate executives can be "quite costly and burdensome." *Patterson*, 281 F.3d at 682. Finally, "[v]irtually every court" to address this issue has recognized that the deposition of a President or CEO "creates a tremendous potential for abuse or harassment." *Affinity Labs of TX. v. Apple, Inc.*, 2001 WL 1753982, at *15 (N.D. Cal. 2011) (quotations and citations omitted).

8

For these reasons, courts have found that plaintiffs frequently cannot justify depositions of top corporate executives, especially in personal injury cases, where the product-specific facts in a particular case are remote from the big picture operations of a company. *See, e.g.*, *Salter*, 593 F.2d at 651-52; *Baine*, 141 F.R.D. at 335-36, *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 365-66 (D.R.I. 1985); *In re Continental Airlines, Inc.*, 305 S.W.3d 849, 858-59 (Tex. App. Ct. 2010); *Alberto v. Toyota Motor Corp.*, 796 N.W.2d 490, 496-98 (Mich. Ct. App. 2010). This is a particularly powerful point here, where the Celect and Tulip filters at issue in the MDL are just two of some 16,000 products produced under the Cook umbrella.

In considering whether to bar the deposition of a corporate executive, the court should look at "the totality of the circumstances, weighing the value of the material sought against the burden of providing it, and taking into account society's interest in furthering the truthseeking function in the particular case before the court." *Patterson*, 281 F.3d at 681. Courts focus on two questions in particular:

- Does the executive or top-level employee have unique or superior personal knowledge on relevant subject matters? *See Salter v. Upjohn Company*, 593 F.2d 649 (5th Cir. 1979) (requiring executive to have unique or superior personal knowledge before allowing plaintiff to depose him); *Baine v. General Motors Corp.*, 141 F.R.D. 332, 334 (M.D. Ala. 1991) (denying plaintiff's request to depose corporate vice president who lacked unique personal knowledge of the issues); *Harris v. Computer Associates Intern., Inc.*, 204 F.R.D. 44, 46-47 (E.D.N.Y., 2001) (holding that deposing high level corporate executives may be duplicative, cumulative, and burdensome where executive lacks personal knowledge of the disputed events).

US.113201021.05

- Can the information sought be obtained from lower-level employees or through less burdensome means, such as interrogatories?  *See, e.g., Patterson,* 281 F.3d at 681 (quoting Rule 26(b)(2); *Reif v. CNA*, 248 F.R.D. 448, 451 (E.D. Pa. 2008); *Roman v. Cumberland Ins. Group,* 2007 U.S. Dist. LEXIS 96775, at *1-2 (E.D. Pa. Oct. 26, 2007) (prohibiting the "deposing of corporate executives who have no direct knowledge of a plaintiffs claim when other employees with superior knowledge are available").

Here, both of these factors weigh heavily against permitting Plaintiffs to depose Mr. Hawkins.

## II.   MR. HAWKINS HAS NO UNIQUE OR SUPERIOR KNOWLEDGE ON THE TOPICS PLAINTIFFS PROPOSE.

"Generally, because the CEO of a large corporation is familiar with the big picture of the operations of a company - and is not familiar with the day to day operations of a business - most courts have fashioned a test that requires the party seeking the deposition of a CEO to show that the executive has 'unique or superior knowledge of discoverable information.'" *Chick-Fil-A, Inc. v. CFT Dev., LLC*, 2009 U.S. Dist. LEXIS 34496, at *4 (M.D. Fla. Apr. 3, 2009) (quoting *Saltar v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979) and collecting cases).  If the party  cannot make that showing, the court should grant the motion for a protective order.  *See Baine*, 141 F.R.D. at 335-36; *See Meharg v. I-Flow Corp.*, 2009 U.S. Dist. LEXIS 42446, 3-4 (S.D. Ind. May 15, 2009) (holding plaintiffs were entitled to depose defendant's CEO about events about which they had shown CEO had personal knowledge, but not about topics beyond his personal knowledge). Here, Mr. Hawkins lacks any unique or superior knowledge concerning any of the topics Plaintiffs propose to question him about, and Magistrate Judge Baker erred in concluding otherwise.

As a threshold matter, Plaintiffs created an additional hurdle for themselves by failing even to identify what topics they want to discuss with Mr. Hawkins.  Plaintiffs' Notice of Taking

10

US.113201021.05

Deposition of Mr. Hawkins identifies no topics at all, and, although Cook repeatedly asked Plaintiffs to identify the topics for Mr. Hawkins' proposed deposition, Plaintiffs' responses were vague, tentative, and overtly evasive. *See* Ex. C, Schultz Email ("it's difficult to specify as we don't wish to limit ourselves on subject matters"). The few deposition topics that Plaintiffs did identify do not involve any unique or superior knowledge on the part of Mr. Hawkins. Specifically:

1.   Company history, organization, and organizational responsibilities. *See* Ex. C, Schultz Email. Mr. Hawkins has no unique personal knowledge about company history and structure. *See* Ex. A, Hawkins Decl. ¶ 10. The history and organization of the various Cook companies is well known to multiple senior and long-term Cook personnel, and Plaintiffs have not suggested what information he allegedly has that cannot be obtained elsewhere. Indeed, inasmuch as Mr. Hawkins retired from Cook over two years ago, some of his knowledge concerning the history and organization of the companies may now be incomplete or outdated.

2.   "[Q]uestions relating to Cook's IVC filter-related business with some focus on corporate policies and responsibilities." *See* Ex. C, Schultz Email. This description is so vague that Cook cannot realistically identify what information Plaintiffs are after. Plaintiffs do not identify what "corporate policies and responsibilities" they want to ask Mr. Hawkins about, and do not say what other aspects of the broad topic of "Cook's IVC filter-related business" they want to address with him. Like many top executives, Mr. Hawkins was involved only in high-level decisions concerning the Cook IVC filter business, and depended on information provided by other Cook employees. *See* Ex. A, Hawkins Decl. ¶ 4. Plaintiffs have offered nothing to suggest that Mr. Hawkins' knowledge of the IVC business is unique or that it is superior to—or

11

even as good as—the knowledge of the subordinates who provided Mr. Hawkins with information.

3.   "[Q]uestions into documents. (those already produced and any produced/ identified in Cook's CMO 2 response)."  *See* Ex. C, Schultz Email.  This topic description is likewise vague and unhelpful.  Despite suggesting they will ask questions about documents "already produced," Plaintiffs do not identify what those documents are, what topics they address, who wrote and received them, or why Mr. Hawkins' knowledge of them is unique or superior to the knowledge of others who prepared or received the documents.  As to their intention to question Mr. Hawkins about documents that have not yet been produced, this topic is wholly speculative; it essentially proposes a fishing expedition based on as-yet unseen documents, and Plaintiffs of course cannot offer any basis to suggest that Mr. Hawkins' knowledge of those documents is unique or superior to the knowledge of other witnesses.

4.   Mr. Hawkins' compensation.  *See* Ex. C, Schultz Email.  Even assuming *arguendo* that the former president's compensation were relevant to these issues in this litigation, Mr. Hawkins' undoubted personal knowledge of his compensation is hardly unique; most obviously, it is known to the companies that compensated him.

5.   "[S]ales numbers for IVC filters."  *See* Ex. C, Schultz Email.  Plaintiffs cannot reasonably suggest that the retired president of the company has unique or superior information concerning sales numbers for the Celect and Tulip filters—again, just two of 16,000 Cook products.  Logically, other current company personnel have more accurate and more recent information on this topic.

Mr. Hawkins also has no unique or superior knowledge on any of the issues addressed in the document request accompanying the deposition notice, including topics such as product

design and development, product testing, manufacturing, product labeling, product warnings, marketing, advertising, or regulatory submissions and compliance.  *See* Ex. A, Hawkins Decl. ¶¶ 5-9.  In fact, it was in Plaintiffs' Memorandum in Opposition to Defendants' Motion for Protective Order that Plaintiffs first raised the argument that Mr. Hawkins "was intimately involved in the decision-making process and strategy regarding critical issues in this case, including decisions regarding the testing, design, marketing and production of the Gunther Tulip and Celect filters."  (Dkt. 4638 at p. 2).  But even on these issues, Plaintiffs have not, and cannot, demonstrate that Mr. Hawkins has unique or superior knowledge.

In sum, Plaintiffs have not identified any topic relevant to this litigation on which they wish to depose Mr. Hawkins about which he has unique or superior knowledge.  Magistrate Judge Baker erred in concluding that he does, and the Court should issue a protective order barring Hawkins' deposition.  *See, e.g., Salter v. Upjohn Co.,* 593 F.2d 649 (5th Cir. 1979) (protecting executive from deposition where requesting party could not establish the executive had unique, personal knowledge); *Lewelling v. Farmers Ins. of Columbus,* 879 F.2d 212,218 (6th Cir. 1989) (affirming protective order where chairman and C.E.O. lacked personal knowledge); *Baine v. General Motors Corp.,* 141 F.R.D. 332, 335 (M.D. Ala. 1991) (granting protective order against deposition of vice president where plaintiff "has not demonstrated that [he] has any superior or unique personal knowledge of the restraint system or of the accident which led to the plaintiffs' decedent's death").

### III. THE INFORMATION PLAINTIFFS SAY THEY SEEK HAS ALREADY BEEN PRODUCED THROUGH OTHER WITNESSES AND DOCUMENTS.

The Cook Defendants have shown that Plaintiffs have had every chance to obtain and in fact have obtained the information they say they want from other sources and through less

US.113201021.05

intrusive means.  *See Roman v. Cumberland Ins. Group,* 2007 U.S. Dist. LEXIS 96775 (E.D. Pa. Oct. 26, 2007) (granting protective order barring deposition of corporate executives without direct knowledge where knowledgeable lower level employee was available to testify).  The topics Plaintiffs have identified for their proposed deposition of Mr. Hawkins were the subjects of earlier 30(b)(6) motions and written discovery, and Plaintiffs have had the opportunity to fully explore those topics with other witnesses.  *See Murillo v. Kohl's Corp.*, 2016 U.S. Dist. LEXIS 144053 (E.D. Wis. Oct. 18, 2016) (granting protective order where proposed executive deponent "does not appear to possess any particularized knowledge beyond that which other witnesses have testified").

### 1.   Company history, organization, and organizational responsibilities.

Cook has already provided a corporate representative on the topic of corporate history, structure, and organization.  Early in the litigation, Plaintiffs served a 30(b)(6) deposition notice seeking testimony concerning the corporate structure and history of the various Cook companies, the relationships between and among those companies, and the companies' relationship with the Research and Development Department at the Medical Engineering and Development Institute, Inc.  *See* Exhibit E, Declaration of Andrew L. Campbell ("Campbell Decl.") at Exhibit 1, First Amended Notice of Deposition at 7 (Jan. 9, 2015).  In response, Cook produced Mark Breedlove, Cook's vice president and global business unit leader for peripheral intervention, who testified for a full day about these topics.   Ex. E, Campbell Decl. ¶ 6.

Plaintiffs' document requests to Cook also requested charts and other documents that identified and described the Cook companies corporate structure and organization.  *See* Exhibit F, Plaintiffs' Master Set of Requests for Production of Documents, Request Nos. 6, 8.  Cook responded to that request and produced such documents, and Plaintiffs have not claimed that that

14

production was insufficient.  Plaintiffs have already had a full and fair opportunity to obtain whatever information they need about Cook corporate history and structure, both from company documents and from a corporate witness prepared and presented to address just those topics. Plaintiffs have no need to depose Mr. Hawkins about those same topics.

> **2.    "[Q]uestions relating to Cook's IVC filter-related business with some focus on corporate policies and responsibilities"**

To the extent this topic differs from Plaintiffs' first topic concerning company organization and structure, Plaintiffs have already taken 30(b)(6) depositions of Cook corporate representatives who have provided more information on these topics than Mr. Hawkins could possibly offer.  Specifically:

- Plaintiffs noticed the deposition of a person knowledgeable about "the corporate organization and structure of the departments or divisions at Cook responsible for the sale, marketing, advertising or promotion of IVC Filters."  *See* Ex. E, Campbell Decl. at Exhibit 5, Notice to Take Deposition at 6 (Apr. 2, 2015) and Exhibit 6, Notice to Resume Deposition at 6 (Dec. 15, 2015).  In response, Cook produced the Product Manager for IVC Filters, Darrell Talbert, who testified at length on those topics.  *See* Ex. E, Campbell Decl. ¶ 24.

- Plaintiffs noted the deposition of a person knowledgeable about "corporate organization and structure of Cook relating to the approval, management, administration, operation and compliance… applicable to any IVC Filter."  *See* Ex. E, Campbell Decl. at Exhibit 3, Notice to Take Deposition at 6 (Apr. 23, 2015) and Exhibit 4, Notice to Resume Deposition at 6 (Dec. 17, 2015).  In response, Cook produced its Senior Vice President of Regulatory Affairs, April Lavender, who testified at length on these topics.  *See* Ex. E, Campbell Decl. ¶ 15.

- Cook also produced the following witnesses in response to Plaintiffs' additional 30(b)(6) notices, and each testified extensively about the filter business:

  o Tom Roberts, Vice President of Quality Assurance and Global Functional Leader for Quality Assurance;

  o Ted Heise, Vice President of Scientific Regulatory Affairs; and

  o Bruce Fleck, Senior Product Manager for IVC Filters.

*See* Ex. E, Campbell Decl. ¶¶ 17, 23.  In light of the comprehensive testimony from these individuals, Mr. Hawkins cannot offer unique or superior testimony concerning "Cook's IVC filter-related business."

### 3.  "[Q]uestions into documents."

Plaintiffs' vague desire to question Mr. Hawkins about unidentified "documents" is wholly inadequate to show that the information desired cannot be obtained from lower-ranking personnel or through other means.  Absent both the identification of a particular document and an explanation of why deposing others involved with the document would be insufficient, Plaintiffs cannot justify deposing Mr. Hawkins.

### 4.  Mr. Hawkins' compensation.

Again assuming for the sake of argument that information concerning Mr. Hawkins' compensation were relevant, such information would be easily obtainable through written discovery requests.  Plaintiffs simply have not made the attempt, and their time to do so has now passed.  *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 682 (7th Cir. 2002) (upholding district court's protective order against deposition of corporate vice president based in part on plaintiff's "refusal to avail herself of other reasonably available means of discovery").

16

### 5.   "[S]ales numbers for IVC filters."

Plaintiffs cannot reasonably suggest that information concerning sales numbers for IVC filters is not available from sources other than the retired president of the company, and in fact Cook has already provided Plaintiffs with the best-available data concerning sales.

- Cook produced sales data and financial data in response to Plaintiffs' discovery requests. These materials included sales data broken down by product and year, sales forecasts, and applicable balance sheets, income statements, annual reports, and business plans for the named Cook entities.  *See* Ex. E, Campbell Decl. ¶ 24.

- Cook also produced its product managers for IVC Filters, Darrell Talbert and Bruce Fleck, as 30(b)(6) witnesses on issues of sales and marketing.  *See* Ex. E, Campbell Decl. ¶¶ 23, 25.

The information that Plaintiffs say they seek concerning sales data is already in their hands from other sources, and they cannot justify deposing Mr. Hawkins to "discover" this known information.

### 6.   Document request topics.

Finally, Cook has already provided reams of documents and multiple witnesses addressing all the issues addressed in the document request that accompanied the deposition notice for Mr. Hawkins, including product design and development, product testing, manufacturing, product labeling, product warnings, marketing, advertising, or regulatory submissions and compliance.  *See* Ex. A, Hawkins Decl. ¶¶ 5-10; Ex. D, Campbell Decl. ¶¶ 4-28.

In sum, the history of discovery in this litigation shows that Plaintiffs have not only had the opportunity to pursue these proposed deposition topics through written discovery and depositions of other witnesses, they have taken advantage of those opportunities and have

US.113201021.05

*actually* obtained the information they now claim to seek.  Indeed, Cook has offered Plaintiffs an additional seven hours of deposition of senior executive Mark Breedlove to provide the information Plaintiffs say they want from Mr. Hawkins.  *See* Ex. I.

Plaintiffs can cite no evidence that Mr. Hawkins has any relevant information that Plaintiffs do not have or cannot obtain through other means, and the Court should therefore bar this apex deposition.  *See, e.g., Reif*, 248 F.R.D. at 449 (denying request to depose CEO "[b]ecause the [plaintiffs] have failed to show [CEO's] statement influenced the alleged discrimination and lower level employees are more knowledgeable"); *Baine v. General Motors Corp.,* 141 F.R.D. 332, 334 (M.D. Ala. 1991) ("deposing Mr. Mertz at this time would be oppressive, inconvenient, and burdensome inasmuch as it has not been established that the information necessary cannot be had from Mr. Sinke, other of the distributees of the Mertz memorandum, interrogatories, or the corporate deposition"); *Thomas v. International Business Machines,* 48 F.3d 478, 483 (10th Cir. 1995) (same); *Reif v. CNA,* 248 F.R.D. 448, 451 (E.D. Pa. 2008) (same); *Harris v. Computer Assoc. Intern, Inc.,* 204 F.R.D. 44, 46-47 (E.D.N.Y. 2001) (same).

## IV.     THE DOCUMENTS SUBMITTED BY PLAINTIFFS ARE NOT EVIDENCE OF MR. HAWKINS' ACTIVE ROLE IN STRATEGY AND DECISION-MAKING IN THE FILTER BUSINESS.

Magistrate Judge Baker's Order erroneously accepts Plaintiffs' argument that ten documents Plaintiffs included as exhibits with Plaintiffs' Response Brief (filed under seal at Dkt. 4639) constitute evidence that Mr. Hawkins played an active role in the design, development, marketing, or regulatory compliance of the Celect or the Tulip filters.  (Dkt. 4639-2, 4639-3, 4639-4, Dkt. 4639-5, Dkt. 4639-6, Dkt. 463-7, Dkt. 4639-9, Dkt. 4639-10, Dkt. 4639-11).  In the Order, Magistrate Judge Baker reasoned that "Plaintiffs' sealed memorandum provides specific

and compelling examples that Hawkins was involved in the decision-making process and strategy regarding testing, design, marketing, and production of these filters." (Dkt. 5277 at p. 2). But the documents simply reflect the kind of high-level, non-specific involvement described in the multiple courts that have barred such apex depositions:

- Exhibit 2 (Dkt. 4639-2). Mr. Hawkins asked Rob Lyles for information about Cook's efforts to take market share from competitors.

- Exhibits 3 & 4 (Dkts. 4639-3, 4639-4). Mr. Hawkins encouraged filter team members (several of whom Plaintiffs have already deposed) to work hard.

- Exhibit 5 (Dkt. 4639-5). Mr. Hawkins attended an IVC Filter Executive Committee Meeting (several of whose members Plaintiffs have already deposed), the minutes of which merely list him as an attendee and do not link him to any issue, assignment, or decision.

- Exhibit 6 (Dkt. 4639-6). Mr. Hawkins told Ted Heise (already deposed) that he trusts his subordinates' judgment concerning follow-up with physicians and Cook employees.

- Exhibit 7 (Dkt. 4639-7). Mr. Hawkins was cc'ed on an email to Rita Harden (already deposed) discussing a death involving a patient with an IVC filter.

- Exhibit 8 (Dkt. 4639-8). Mr. Hawkins forwarded to several Cook people (including the already deposed April Lavender and Tom Roberts) a PowerPoint presentation concerning IVF perforation that he had received from Diana Wu.

- Exhibit 9 (Dkt. 4639-9). A PowerPoint slide notes that Mr. Hawkins had asked a question about a retrievable filter.

- Exhibit 10 (Dkt. 4639-10).  Mr. Hawkins asked Bill Gibbons about the status of
  several projects, one of which related to IVC Filters.

- Exhibit 11 (Dkt. 4639-11).  Mr. Hawkins emailed Rob Lyles regarding the
  introduction of the Celect Platinum.

In essence, these documents reflect surface level communications regarding filters and
reinforce the conclusion that, like many top executives, Mr. Hawkins is "[g]enerally … familiar
with the big picture of the operations of a company" but "not familiar with the day-to-day
operations of a business." *Chick-Fil-A, Inc. v. CFT Dev., LLC*, 2009 U.S. Dist. LEXIS 34496, at
*4 (M.D. Fla. Apr. 3, 2009).  The decision-making process and strategy information that
Plaintiffs say they seek is already in their hands from other sources, and they cannot use a
deposition of Mr. Hawkins as an excuse to "discover" this already known information.

## V.   THE ORDER IMPROPERLY CONSIDERED MR. HAWKINS' PERSONAL EMAIL ACCOUNT AS RELEVANT.

In their response brief to Magistrate Judge Baker, Plaintiffs tried to justify Mr. Hawkins'
deposition and its accompanying document request by asserting that "they suspect that
[Hawkins' private aol.com account] was not searched for responsive documents."  (Dkt. 4639 at
p. 3).  But Plaintiffs offer no basis for this suspicion, and they do not suggest that they have ever
even raised this issue with Cook.  The Order improperly latched onto this issue as meaningful,
reasoning that "Hawkins regularly communicated on a personal email account, which Plaintiffs
suspect the Cook Defendants did not search when producing responsive documents to their
discovery requests.  This all suggests that Hawkins has relevant knowledge that is not already
available to Plaintiffs."  (Dkt. 5277 at p. 3).

Where this logic falls short is against the backstory of discovery in these cases.  Over the
course of this litigation, Plaintiffs requested Mr. Hawkins' custodial file on at least three

US.113201021.05

occasions (July 2016, October 2016, and November 2016), only to reassess each time and eventually abandon *each* of those requests.  Plaintiffs did not renew their request for Mr. Hawkins' custodial file after the Court permitted them additional custodial file requests, and they chose other custodians instead.  They thus consciously exhausted all of their authorized requests for custodial files.  *See* Dkt. 3069.  Consequently, regardless of whether relevant documents exist in Mr. Hawkins' email (either his professional or personal email), Plaintiffs are not entitled to this evidence.  In effect, Plaintiffs want to use Mr. Hawkins' deposition notice and their "CMO 2 Request for Documents to Cook Defendants" as an end-around to try to obtain an additional, unauthorized custodial file.  In any event, Plaintiffs own briefing and their documents cited reveal they have had access to the relevant communications through other custodians.  Magistrate Judge Baker's Order overlooks all of these undisputed facts.

## VI.   THE ORDER FAILED TO CONSIDER THE HIGH POTENTIAL FOR ABUSE AND HARASSMENT IN THE PROPOSED DEPOSITION OF MR. HAWKINS.

Finally, contrary to the case law setting forth issues regarding apex depositions, the Order fails to consider that the deposition of Mr. Hawkins is ripe for harassment and abuse.  "Virtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment."  *Celerity, Inc. v. Ultra Clean Holding, Inc.*, Case No. C05-04374 MMC (JL), 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007) (collecting cases).

As the discussion in sections above demonstrate, Plaintiffs' purpose in noticing the deposition of Mr. Hawkins cannot be to obtain discoverable information; Plaintiffs already have most of the information they say they seek, and if they really wanted to get more, they would depose the people more likely to have it.  Plaintiffs' true purpose is to harass Mr. Hawkins,

consume Cook's time and money in contesting and defending the deposition, and perhaps (Plaintiffs hope) improperly coerce concessions on other issues.  Courts have addressed this sort of harassment through protective orders, "restrict[ing] parties from deposing high-ranking officials because (by virtue of their position) they 'are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts.'"  *Brown v. Branch Banking & Trust Co.*, 2014 U.S. Dist. LEXIS 7721, at *7 (M.D. Fla. Jan. 22, 2014) (quoting *In re Bridgestone/Firestone, Inc. Tires Products Liab. Litig.*, 205 F.R.D. 535, 536 (S.D. Ind. 2002)).  All of these threats arise with respect to the proposed deposition of Mr. Hawkins, notwithstanding his retirement as company president.

One additional, equally improper purpose is also clear.  Plaintiffs' attorneys have all but telegraphed their intention to "parade" these apex depositions before the jury for improper purposes.  Plaintiffs have stated with respect to another Cook apex witness:[3] "We think it's important for the jury to hear from the person who headed the company."  Exhibit H, March 27, 2017 Email from M. Schultz to A. Pierson.  But why?  Why is that important?  Plaintiffs cited no supporting authority, and common sense confirms a jury does not automatically gain anything useful from hearing from the president of a company, particularly where—as here—that person has no unique or useful knowledge relating to the individual case.

Plaintiffs' *actual* reason for arguing that "it's important" to present the head of the company to the jury is their desire to falsely imply that because Mr. Hawkins cannot answer questions about specific facts or claims, he—as some sort of implied personification of the company—was either ignorant or dishonest, was therefore culpable, and that he and the company

---

[3] This email exchange involved Plaintiffs' response to Cook's inquiry concerning why Plaintiffs feel they need to depose Lars Milling, the current managing director of William Cook Europe.  *See* Exhibit G, Notice to Take The Videotaped Oral Deposition Of Lars Milling With CMO 2 Request for Documents.  Mr. Milling's deposition is not at issue in the present motion or appeal.

were ultimately even oblivious to product users.  After all, Plaintiffs will suggest, if even the company's president did not know or care about Subject X or Claim Y, the company must be not only liable but heartless.

Such implications would be false and improper, particularly because they ignore a corporate structure that necessarily and appropriately directs such facts and claims to the lower-level employees who can directly address them.  No president or executive can possibly know every detail about every product or every claim against the company, and Plaintiffs know it.  Their desire to implicitly impugn defendants in this way does not justify deposing an apex deponent.  As one court noted:

> We do not believe… that this holding [barring the deposition of corporate president] will frustrate a plaintiff's ability to penetrate high levels of corporate management in a search for truth.  Specifically, we do not agree…that a high-level official's protestation of ignorance of a lawsuit is self-serving and automatically suspect.  Lower level officials, with some probable connection to a plaintiff's case, are not permitted to avoid deposition by filing conclusory affidavits of ignorance. … In the case of an official at the head of corporate operations, however, expressions of ignorance of a specific case or claim are not implausible.

*Liberty Mutual Ins. Co. v. Superior Court*, 10 Cal. App. 4th 1282, 1289-1290 (Cal. App. 1st Dist. 1992); *see also Evans v. Allstate Ins. Co.*, 216 F.R.D. 515, 519 (N.D. Okla. 2003) (barring apex depositions despite plaintiffs' claims that "the depositions are necessary to prove their theory that a pervasive practice of inadequate supervision over Allstate claims adjusters exists within the corporation").

Nor do Plaintiffs suggest any willingness to contemplate any judicial role in defining the scope of the deposition.  Several of the cases on which Plaintiffs relied in their submissions to Magistrate Judge Baker limit the scope of the apex deposition and make specific provision for judicial intervention to prevent overly broad or harassing questioning of the apex witness.  *See,*

*e.g., Illinois Agric. Assoc. v. Rural Media Group, Inc.*, No. 13-1220, 2014 WL 1378074, at *2 (C.D. Ill. April 7, 2014) ("the parties may contact the Court to schedule a conference call to promptly resolve any disputes concerning the extent of questions asked of Nelson during his deposition"); *Meharg v. I-Flow Corp.*, No. 1:08-cv-0184-DFHTAB, 2009 WL 1404603, at *1 (S.D. Ind. May 15, 2009) (limiting scope of deposition to witness's personal knowledge and noting that "[t]he parties may coordinate with the Court the availability of the Magistrate Judge during the time of Earhart's deposition in order that the Magistrate Judge may resolve any disputes that may arise during the deposition regarding the scope of the questions allowed by this order.")  Plaintiffs here reject the need for any limitations at all and the Order failed to impose any such limitations.  Plaintiffs have taken an all-or-nothing position; they assert that they are entitled to depose Mr. Hawkins at any length about any topic, with no limitations of scope or subject.  And the Order essentially provides them with authority to proceed carte blanche.

Plaintiffs' purpose in noticing the deposition of Mr. Hawkins cannot be to obtain discoverable information; Plaintiffs already have most of the information they now say they seek, and they know who to ask if they really want more.  Contrary to Magistrate Judge Bake's conclusions, Mr. Hawkins has no unique or superior personal knowledge of the topics material to this litigation, and Plaintiffs' true purpose in seeking this deposition can only be to harass Mr. Hawkins, consume Defendants' time and money in contesting and defending the deposition, and improperly coerce concessions on other issues.  Such purposes are improper, and this Court should act to thwart them.  *See Brown v. Branch Banking & Trust Co.*, 2014 U.S. Dist. LEXIS 7721, at *7 (M.D. Fla. Jan. 22, 2014) (noting executives "'are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the

courts'") (quoting *In re Bridgestone/Firestone, Inc. Tires Products Liab. Litig.*, 205 F.R.D. 535, 536 (S.D. Ind. 2002)).

## CONCLUSION

Cook has provided its best evidence on testing, design, production and marketing of its IVC filters.  Mr. Hawkins has no unique, specialized or personal knowledge on any of these topics.   Plaintiffs' only purposes in continuing to pursue the deposition of Mr. Hawkins is to harass Cook's retired, former president; to waste the Cook's and its attorneys' time and resources; and to set up an improper presentation and argument at trial based on Mr. Hawkins' lack of detailed knowledge of lower-level corporate facts.  Nothing in the documents submitted to Magistrate Baker suggests otherwise.  Considering both the lack of such knowledge by Mr. Hawkins and the totality of the circumstances surrounding Plaintiffs' deposition notice, the Cook Defendants have established good cause for a protective order barring Mr. Hawkins' deposition, and the Order to the contrary was clearly erroneous and contrary to law.  Cook therefore requests that the Court reverse the Order and enter a protective order barring Plaintiffs from deposing Kem Hawkins.

US.113201021.05

Respectfully submitted,

Dated: July 14, 2017

/s/ Andrea Roberts Pierson
Andrea Roberts Pierson (# 18435-49)
J. Joseph Tanner (#11856-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-mail:  joseph.tanner@faegrebd.com

James Stephen Bennett (# 22869-02)
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana  46802
Telephone: (260) 424-8000
Facsimile: (260) 460-1700
stephen.bennett@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 14, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.


/s/ Andrea Roberts Pierson

US.113201021.05