# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

---

IN RE: COOK  MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS   LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB

MDL No. 2570

---

This Document Relates to:  All Actions

---

## PLAINTIFFS' MASTER SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS

Pursuant to Fed. R. Civ. P. 34, Plaintiffs in the above-referenced matter Request Defendants COOK GROUP, INC., COOK MEDICAL, INC., COOK MEDICAL, LLC, COOK, INC., MEDICAL ENGINEERING AND DEVELOPMENT INSTITUTE, INC., COOK MEDICAL TECHNOLOGIES, COOK DENMARK INTERNATIONAL APS, COOK DENMARK HOLDING APS, COOK GROUP EUROPE APS, COOK NEDERLAND BV, WILLIAM COOK EUROPE APS, to produce the documents as requested below within thirty (30) days after service hereon.

### DEFINITIONS

1.       "DOCUMENTS" and "DOCUMENTATION" as used in this Request is coextensive with the meaning of the terms "DOCUMENTS" and "tangible things" in Fed. R. Civ. P. 34, and shall have the broadest possible meaning and interpretation ascribed to the terms "DOCUMENTS" and "tangible things" under Fed. R. Civ. P. 34, and the applicable Local Rules. Consistent with the above definition, the term DOCUMENT shall include, without limitation, any database, written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or otherwise maintained or reproduced communication or representation,

any data compilation  in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda,  notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates, working papers, accounts, analytical records, reports and/or summaries of investigations, opinions or reports of consultants, opinions or reports of experts, opinions or reports of accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes of meetings, correspondence and communications (as defined below) of any type (including but not limited to video files, audio files, inter- and intra-office communications), questionnaires, surveys, charts, graphs, photographs, phonographs, films, tapes, discs, data cells, drums, printouts, all other compiled data which can be obtained (translated, if necessary, through intermediary or other devices into usable forms), DOCUMENTS maintained on, stored in or generated on any electronic transfer or storage system, any preliminary versions, drafts or revisions of any of the foregoing, and other writings or DOCUMENTS of whatever description or kind, whether produced or authorized by or on behalf of YOU or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in the possession, custody or control of YOU, or the former or present directors, officers, counsel, agents, employees, partners, consultants, principals, and/or persons acting on YOUR behalf.

2.      "Communication" and/or "correspondence" shall mean and refer to any oral, written, spoken or electronic transmission of information, including but not limited to,

meetings, discussions, conversations, telephone calls, memoranda, letters, emails, text messages, postings, instructions, conferences, or seminars or any other exchange of information between yourselves, or between you and any other person or entity.

3.      "Computer" means all devices utilizing microchips to facilitate processing, analysis, or storage of data, including microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers (also known as personal digital assistants or PDA's), minicomputers and mainframe computers. "Computer system," when used in reference to any computer, includes the following information: (a) the computer type, brand, and model, and (b) the brand and version of all software, including the operating system, private- and custom-developed applications, commercial applications, and/or shareware.

4.      "Electronic data" or "data" means the original (native electronic format), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind and description whether inscribed by mechanical, facsimile, electronic, magnetic, digital, or other means. Electronic data includes, by way of example only, computer programs (whether private, commercial, or works-in-progress), programming notes or instructions, activity listings of electronic mail receipts and/or transmittals, output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, deleted file or

file fragment.   Electronic data includes, electronically stored information or "ESI", which includes any and all items stored on computer memories, hard disks, floppy disks, CD-ROMs, removable media such as zip drives, USB drives, storage cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and/or transmittal.   The term electronic data also includes the file, folder tabs and/or containers and labels appended to, or associated with, any physical storage device associated with each original and/or copy.

5.      "Electronic media" means any magnetic or other storage media device used to record electronic data.   Electronic media devices may include computer memories, hard disks, floppy disks, CDROM, removable media such as Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM and ROM, or on or in any other vehicle for digital data storage and/or transmittal.

6.      "Identify" or "identity" with respect to persons, means to give, to the extent known, the person's full name, present or last known address, and when referring to a natural person, additionally, the present or last known place of employment.

7.      "Native Electronic Format" shall mean and refer the state of an electronic file as it presently exists on any and all computers, electronic media devices, networks or any other locations where data may be stored (including back-up servers, deleted folders, hidden folders, etc.), with all of the file's original metadata intact, meaning that the metadata fields have not been altered, deleted, updated or modified in any way.

8.      "Network" means any hardware and/or software combination that connects two or

more computers together and which allows the computers to share and/or transfer data between them. For the purposes of this definition, the connection between or among the computers need not be either physical or direct, *i.e.,* wireless networks, and sharing and/or transferring data via indirect routes utilizing modems and phone company facilities. In addition, there need not be a central file or data server nor a central network operating system in place, *i.e.,* peer-to-peer networks and networks utilizing a mainframe host to facilitate data transfer.

9.      "Person" means natural person, as well as corporate and/or governmental entity.

10.      "Possession, custody or control" shall mean and refer to any documents in your possession, custody or control.  A document is deemed to be in your "possession, custody or control" if is in your physical custody, or if it is in the physical custody of another person or entity and you: (a) own such document in whole or in part; (b) have a right by contract, statute or otherwise to use, inspect, examine or copy such document on any terms; (c) have an understanding, express or implied, that you may use, inspect, examine or copy such document on any terms; or (d) have, as a practical matter, been able to use, inspect, examine or copy such document when you have sought to do so. Such documents shall include, without limitation, documents that are in the custody of your attorney(s), employees, staff, representatives and agents.

11.      "IVC" is used to refer to Inferior Vena Cava.

12.      "IVC Filter" and "IVC Filters" means any Inferior Vena Cava Filter devices manufactured, sold and/or distributed by any of the defendants named to this action or any other entity including without limitation to competitors.

13.      "Cook IVC Filter," "Cook IVC Filters," "Cook Filter," and "Cook Filters" mean any Inferior Vena Cava Filter devices manufactured, sold and/or distributed by any of the

defendants named to this action or any other entity related to any of the defendants named to this action.

14.     "Relating to," "relate to," "referring to," 'refer to," "reflecting," "reflect," "concerning," or "concern" shall mean evidencing, regarding, concerning, discussing, embodying, describing, summarizing, containing, constituting, showing, mentioning, reflecting, pertaining to, dealing with, relating to, referring to in any way or manner, or in any way logically or factually, connecting with the matter described in that paragraph of these demands, including DOCUMENTS attached to or used in the preparation of or concerning the preparation of the DOCUMENTS.

15.     "Or" and "and" will be used interchangeably.

16.     Unless otherwise indicated, the "relevant period" for the information sought is 2000 to the present.

17.     "YOU," "YOUR," "Cook," "Cook Medical" or "Defendants" refer to the named defendants to this action (both collectively and individually) as well as all of their partners, directors, officers, employees, servants, agents, attorneys, joint venturers, third-party contractors or other representatives, including all corporations and entities affiliated with Defendants. The terms "YOU" or "YOUR" shall also include all predecessor business entities, as well as any predecessor's partners, directors, officers, employees, servants, agents, attorneys, joint venturers, third-party contractors or other representatives. The terms "YOU" or "YOUR" shall also include all foreign subsidiaries or foreign parent companies, as well as any foreign subsidiaries' or parent companies' partners, directors, officers, employees, servants, agents, attorneys, joint ventures or other representatives.

6

## INSTRUCTIONS

1.      In responding to this Request, YOU are required to produce all DOCUMENTS known or reasonably available to YOU, regardless of whether such DOCUMENTS are in YOUR possession, custody, or control or in the possession, custody, or control of YOUR agents, consignees, representatives or investigators, including YOUR attorneys or their agents, employees, representatives, or investigators.

2.      If any of the DOCUMENTS or information Requested cannot be produced in full, YOU are required to specify, to the extent possible, the reasons for YOUR inability to produce the remainder, and the approximate date when YOU expect to produce such DOCUMENTS, if at all.

3.      If any Request is deemed to call for the production of privileged or otherwise protected information or materials, YOU must provide the following information in a written response, designating and identifying those DOCUMENTS or information withheld from production on grounds of privilege:

     a) The reason for withholding the DOCUMENT or information;

     b) A statement of the legal basis for the claim of privilege, work product or other ground for non-disclosure;

     c) A brief description of the DOCUMENT, including:

         i. The date of the DOCUMENT;

        ii. The number of pages, attachments, and appendices;

       iii. The name(s) of its author(s) or preparer(s) and identification by employment and title of each such person;

       iv. The name of each person who was sent, shown, or copied     on

the DOCUMENT, or has had access to or custody of the DOCUMENT, together with an identification of each such person;

v. The present custodian; and

vi. The subject matter of the DOCUMENT, and in the case of any DOCUMENT relating or referring to a meeting or conversation, identification of such meeting or conversation, in sufficient detail to enable the Court to determine the propriety of any claim of privilege.

4. Failure to properly identify any withheld DOCUMENTS may result in the waiver of any right to assert a privilege later.

5. This Notice and Request impose a continuing obligation upon YOU. If after producing DOCUMENTS or information responsive to this Demand additional information or DOCUMENTS become available to YOU, YOU are required to produce such additional DOCUMENTS or information.

6. With respect to each DOCUMENT Requested that has been lost, destroyed, or otherwise disposed of since its preparation or receipt, YOU shall provide the following information separately as to each such DOCUMENT:

a) A general description of the subject matter, author, recipient(s), date;

b) The identity of each person who has received a copy or had an opportunity to receive a copy thereof;

c) The last custodian of the DOCUMENT or copies thereof; and

d) The full particulars or circumstances whereby the DOCUMENT was disposed of, destroyed, or otherwise lost.

7. All DOCUMENTS produced in response to these Requests shall be either:

8

a) Organized and labeled to correspond with the number of the specific request to which the DOCUMENTS are responsive, or

b) Produced in the order and in the manner that they are kept in the usual course of business.

8.      All DOCUMENTS requested shall include all DOCUMENTS and information that relate in whole or in part to the relevant time period, or to events or circumstances during such relevant time period, even though dated, prepared or generated or received prior to relevant time period.

9.      All DOCUMENTS that exist in electronic form are to be produced in electronic form and in their native electronic format, not in an electronic form that is merely a picture of a DOCUMENT such as a TIFF file, a TIF file, or a PDF file, with the Bates number applied in a manner that does not alter the DOCUMENT's metadata or its optical character recognition ("OCR") in any way.

## REQUESTS FOR PRODUCTION

1.      All DOCUMENTS and ESI referenced in any of YOUR answers to Plaintiffs' First Set of Interrogatories to Defendants or produced by YOU in any personal injury litigation related to IVC FILTERS and/or COOK IVC FILTERS.

**RESPONSE:**

2.      All logs, ledgers, and other such indices that reflect the identity and location of DOCUMENTS and ESI regarding COOK IVC FILTERS, and all DOCUMENTS, ESI or

presentations Defendants have ever created or prepared that in any way involve or concern COOK IVC FILTERS, regardless of whether such presentations were ever made, and all DOCUMENTS and ESI Defendants have ever received that in any way involve or concern COOK IVC FILTERS.

**RESPONSE:**

3.     A bibliography of all medical or scientific articles, presentations or abstracts known to defendant, published or unpublished, relating in any respect to COOK IVC FILTERS and/or IVC FILTERS.

**RESPONSE:**

4.     All DOCUMENTS and ESI in YOUR possession, custody, or control comprising or regarding or that in any way refer to, mention or discuss published and unpublished medical and scientific articles, abstracts, and research papers pertaining to COOK IVC FILTERS and/or IVC FILTERS, including all DOCUMENTS in YOUR possession, custody or control containing any data or information relating to published or unpublished studies (whether sponsored by YOU or not sponsored by YOU) involving COOK IVC FILTERS and/or IVC FILTERS, including all internal communications, grant applications and proposals; grant funding decisions and meetings or hearing about the same; phases, drafts, protocols, interim reports, final reports, and versions thereof, whether published or not. A partial list of the articles inquired about includes and by no means are limited to the following:

10

a) *Perforation of the IVC: Rule Rather Than Exception After Longer Indwelling Times For The Günther Tulip And Celect Retrievable Filters,* by Durack JC, et al, Cardiovasc Intervent Radiol. 2012 Apr;35(2):299-308. Epub 2011 Mar 30.

b) *Safety And Effectiveness Of The Celect Inferior Vena Cava Filter: Preliminary Results,* by Sangwaiya MJ, et al, Journal Of Vascular And Interventional Radiology : JVIR 20:9 2009 Sep pg 1188-92

c) *Use Of Retrievable Compared To Permanent Inferior Vena Cava Filters: A Single-Institution Experience,* by Van Ha TG, et al, Cardiovascular and Interventional Radiology 31:2 pg 308-15

d) *Long-Term Retrievability Of IVC Filters: Should We Abandon Permanent Devices?,* by Berczi V, et al., Cardiovascular and Interventional Radiology 30:5 pg 820-7

e) *Surgical Removal Of A Günther Tulip Filter With Symptomatic Caval Penetration After Unsuccessful Percutaneous Retrieval,* by Hwang JT et al., Annals of Vascular Surgery 25:5 2011 Jul pg 699.e9-12

f) *Symptomatic Caval Penetration By A Celect Inferior Vena Cava Filter.,* by Bogue CO et al, Pediatric Radiology 39:10 2009 Oct pg 1110-3

g) *Significant Caval Penetration By The Celect Inferior Vena Cava Filter: Attributable To Filter Design?,* by Sadaf A, et al Journal of vascular and interventional Radiology : JVIR 18:11 2007 Nov pg 1447-50

h) *Surgical Management Of Inferior Vena Cava Strut Penetration Causing Hydronephrosis: Case Report.,* by Baskara A, et al., Vascular and endovascular surgery 44:6 2010 Aug pg 491-3

**RESPONSE:**

5.   All DOCUMENTS and ESI that concern communications to and/or about any and all of the authors of the above-mentioned studies and a n y other author of any study, case report or article related to COOK IVC FILTERS and/or IVC FILTERS.

**RESPONSE:**

11

6.      Produce all DOCUMENTS and ESI, including corporate organization charts, sales department organizational charts, marketing department organizational charts, research and development department organizational charts, that identify each Defendants' corporate organizational structure from 2000 to the present, including, but not limited to, charts that set forth the organization of the various departments, divisions and subdivisions, and the heads and/or employees of each such department, division or subdivision, and the relationship and/or overlap, if any, among and between defendants or any third parties or consultants concerning the COOK IVC FILTERS.

**RESPONSE:**

7.      With respect to the different companies involved with COOK IVC FILTERS, produce documents identifying the role of each defendant with regard to COOK IVC FILTERS, any agreements among and between any other entity relating to the manufacturing, marketing and/or sale of COOK IVC FILTERS, and all DOCUMENTS and ESI concerning any potential purchase of the rights to manufacture, market, and/or sell COOK IVC FILTERS by a non-COOK MEDICAL entity, including, but not limited to, any communications with the potential purchaser and any internal communications regarding the potential purchase.

**RESPONSE:**

12

8.     For any entity, including corporations, subdivisions of corporation, limited liability companies, or third party contractors, that were involved in the design, setting of specifications, manufacture, labeling, marketing or distribution of the COOK IVC FILTERS, produce all DOCUMENTS and ESI referring to or embodying the structure of said entities Quality Control Units, which were in place from January 2000 through February 2012, including a description of all departments, divisions, officers, employees and/or other entities or persons.

**RESPONSE:**

9.     Concerning the manufacture of COOK IVC FILTERS, produce all DOCUMENTS concerning the manufacturing process utilized in making COOK IVC FILTERS, including all Quality Control and/or Quality Assurance policies and/or procedures in place during the manufacture of COOK IVC FILTERS, all Good Manufacturing Practice (GMP) inspection reports regarding the manufacture of COOK IVC FILTERS, all DOCUMENTS concerning changes to the manufacturing process utilized in making COOK IVC FILTERS, all DOCUMENTS a n d E S I concerning any changes to the manufacturing process utilized in making COOK IVC FILTERS that were considered and/or proposed but were not implemented, and all DOCUMENTS and ESI evidencing any facilities and/or entities involved in the Quality Control and/or Quality Assurance of the COOK IVC FILTERS.

**RESPONSE:**

10.    All DOCUMENTS and ESI concerning YOUR annual sales revenue and profits derived from COOK IVC FILTERS in the United States and broken down by State for every year since COOK IVC FILTERS were first marketed and sold in the United States.

**RESPONSE:**

11.    Any database maintained by or on behalf of COOK MEDICAL that contains data concerning the number of implanted COOK IVC FILTERS by any physician or hospital.

**RESPONSE:**

12.    Documents sufficient to identify any other IVC filter product developed by or for Defendants, whether or not ultimately submitted to a regulatory agency or marketed in any country, other than the ones formerly or presently marketed.

**RESPONSE:**

13.    All DOCUMENTS that reflect the policies and procedures that Defendants have had and/or have in place for the storage, deletion, and back-up of DOCUMENTS and emails generated by Defendants employees and agents regarding COOK IVC FILTERS including the steps taken by YOU to preserve all DOCUMENTS.

**RESPONSE:**

14

14.     All DOCUMENT retention or document destruction policies in effect for the years 2000 to the present and all DOCUMENTS and ESI which discuss or refer thereto.

**RESPONSE:**

15.     All insurance policies, including but not limited to, each and every general liability, comprehensive general liability, advertising liability, product liability insurance policies, excess coverage policies, or any other type of insurance coverage, that YOU believe may potentially cover claims related to COOK IVC FILTERS for policy years 2000 until the present. Please also include any documents relating or referring to any disputes or reservations of rights as to coverage.

**RESPONSE:**

16.     All DOCUMENTS and ESI relating, referring to or embodying any and all indemnity agreements, agreements to assume liability, agreements to assume the defense and joint defense agreements made by YOU, insurers for YOU, or any other entities that may be financially affected by any of the claims asserted in this litigation.

**RESPONSE:**

17.    All DOCUMENTS and ESI identifying testing facilities, bench testing facilities, clinical research companies and individuals used to test/study or who tested/studied COOK IVC FILTERS, together with any contracts whereby Defendants engaged the services of such companies and individuals along with any study protocols given to, used, or developed by such clinical research companies, as well as any study summaries and results provided by such clinical research companies.

**RESPONSE:**

18.    Concerning testing, bench testing, pre-clinical trials and clinical trials for COOK IVC FILTERS, all DOCUMENTS and ESI in YOUR possession, custody, or control relating to any SOP and policy and procedure manuals relating to YOUR tests and clinical and pre-clinical trials for COOK IVC FILTERS from 2000 to the present, any DOCUMENTS that identify or list (including in summary format) any completed, proposed, planned, considered, or conceived preclinical studies as well as clinical trials that assess the association between COOK IVC FILTERS and caval perforation, organ perforation, nerve damage, tilting, migration, severe bleeding events, strut fracture, bond fracture, bond failure and/or death, as well as any other severe injury, any and all notebooks and electronic notebooks in YOUR possession, custody or control, provided to clinical investigators or scientists that pertain to past, present, and future pre-clinical and clinical studies of COOK IVC FILTERS, and all DOCUMENTS and ESI in YOUR possession, custody, or control comprising or concerning data collected during all test phases and clinical and pre-clinical phases of the COOK IVC FILTERS, but not limited to all data

concerning animal studies, *in vitro* studies, competitive studies, scientific studies, head-to-head studies, same assay studies, parallel studies, and double blind studies.

**RESPONSE:**

19.     Whether published or not, whether discontinued or not, produce any study protocols developed by or on behalf of Defendants relating to COOK IVC FILTERS, regardless of whether the study was ever completed or whether human patients were ever enrolled, and all DOCUMENTS and ESI in YOUR possession, custody, or control from physicians and/or investigators concerning all COOK IVC FILTERS clinical or pre-clinical trials provided to YOU, whether provided to the FDA or not, all DOCUMENTS in YOUR possession, custody or control containing any data or information relating to unpublished and discontinued studies (whether sponsored by YOU or not sponsored by YOU) involving COOK IVC FILTERS, and all DOCUMENTS in YOUR possession, custody or control containing any data or information relating to ongoing, past, future, or potential studies (whether sponsored by YOU or not sponsored by YOU) involving COOK IVC FILTERS.

**RESPONSE:**

20.     All DOCUMENTS and ESI in YOUR possession, custody, or control constituting minutes from meetings, summaries of the minutes of such meetings, agendas for such meetings, presentations made at any such meetings (in their native format) and/or summaries

17

of such meetings with any and all physicians and investigators involved with clinical and pre-clinical trials for COOK IVC FILTERS, and all DOCUMENTS concerning any analysis or sub-analysis of clinical trial data and/or other safety and/or efficacy data used to determine specialty populations and/or other population criteria for the marketing, advertising, promotion, and/or targeting of COOK IVC FILTERS users.

**RESPONSE:**

21.   All DOCUMENTS and ESI relating, referring to or embodying minutes of any and all Board of Directors meetings or any other meeting which in any way refer to the COOK IVC FILTERS, including, but not limited to the following:

a)   The initial design and development of the COOK IVC FILTERS, design and development planning, design input, design output, design review, design verification, design validation, design transfer, design changes and design history file;

b)   The decision to initiate the National Launch of the COOK IVC FILTERS;

c)   Complications and/or adverse event reports concerning the COOK IVC FILTERS;

d)   Modifications to the design of the COOK IVC FILTERS;

e)   The decision(s) to remove any COOK IVC FILTERS from the market.

**RESPONSE:**

22.     Produce all DOCUMENTS and ESI referring to, relating to, or embodying any and all activities and efforts made by anyone on the part of the design input phase of the design and development process for the COOK IVC FILTERS to ensure that the physical and performance requirements for said products were appropriate and addressed the intended use of the device, including the needs of the user and the patient, as required by 21 C.F.R. Section 820.30(c).

**RESPONSE:**

23.     All DOCUMENTS and ESI in YOUR possession, custody, or control that relate to COOK IVC FILTERS and that were submitted to the FDA, or received from the FDA, and/or concerning any inquiries or investigations by governmental or regulatory organizations within the United States (either state or federal) related to COOK IVC FILTERS, including documents submitted to or received from such organizations.

**RESPONSE:**

24.     Documents and ESI sufficient to identify all countries in which COOK IVC FILTERS have been approved for sale and the date on which each was approved.

**RESPONSE:**

25.     Concerning regulatory filings seeking permission to sell COOK IVC FILTERS

19

or like formulations in the U.S. or in other countries, all correspondence or communications to or from any domestic or foreign regulatory agency and/or government relating to COOK IVC FILTERS and any English translations that exist, all DOCUMENTS and ESI that concern, or involve discussion about, the potential or actual submission of COOK IVC FILTERS for approval and/or the approval of COOK IVC FILTERS in any country including, but not limited to, the U.S. including, but not limited to, communications regarding foreign governmental agencies and their drug approval procedures, rules and/or standards, and including any English translations that exist if the DOCUMENTS are written in any language other than English, and all DOCUMENTS pertaining to safety, adverse events, problems, and complications regarding COOK IVC FILTERS, including, but not limited to, adverse event reports and responses thereto, or post-approval clinical trials and any English translations that exist if the DOCMENTS are written in any language other than English.

**RESPONSE:**

26.    All DOCUMENTS and ESI concerning deferred approval of any COOK IVC FILTER in any country, and/or concerning any governmental agency in any country worldwide that declined to approve an  application to market COOK IVC FILTERS or  for any indication, or did  so  requiring additional warnings, including, but not limited to, communications between the sponsor of COOK IVC FILTERS and the agency, and any English translations that exist if the DOCUMENTS are written in any language other than English.

**RESPONSE:**

27.    All DOCUMENTS prepared but not filed with the FDA or other foreign governmental agency, as well as all information pertaining to planned future applications or submissions, or submissions for foreign regulatory agencies, related to COOK IVC FILTERS.

**RESPONSE:**

28.    All DOCUMENTS and ESI in YOUR possession, custody, or control comprising or regarding YOUR internal communications pertaining to COOK IVC FILTERS' past, present, and future anticipated market share and/or sales in the United States and/or worldwide.

**RESPONSE:**

29.    All DOCUMENTS and ESI relating to, submitted to, created by, or concerning any committee that reviews and approves any advertising, sales and marketing materials relating to COOK IVC FILTERS.

**RESPONSE:**

30.     Concerning marketing with non-COOK MEDICAL employees, copies of all contracts or agreements with all non-COOK MEDICAL employees relating to the promotion of COOK IVC FILTER, documents sufficient to identify all advertising agencies or public relations firms utilized by COOK MEDICAL in connection with COOK IVC FILTERS in the United States, those concerning the relationship between Defendants and any outside person or entity involved in the market analysis, marketing, advertising, or promotion of COOK IVC FILTERS, including but not limited to the contracts between Defendants and such person or entity, communications, and any invoices for services rendered, and/or those relating to, demonstrating, or showing Defendants' direct or indirect contact with third party contractors and/or vendors who provide computerized or other data on medical device patient instructions for use (including but not limited to all records relating to, demonstrating, or showing whether Defendants sought to ascertain what the third party information vendors were stating about COOK IVC FILTERS, and any and all efforts to change any statements about COOK IVC FILTERS contained in patient information handouts using information generated by the third party vendors).

**RESPONSE:**

31.     Concerning television, radio, internet, event and/or convention promotion and advertisement or of COOK IVC FILTERS, video files (in video format) of all such advertisements, including drafts, for COOK IVC FILTERS, produced on DVD, and audio files (in audio format) of all radio advertisements, including drafts, for COOK IVC FILTERS on CD or DVD, as well as all DOCUMENTS showing or proving that COOK IVC FILTERS

advertisement and promotion was run on such media, including but not limited to affidavits received from the media outlets, media buyers, or YOUR advertising agencies or public relations firms, and all DOCUMENTS that demonstrate what city, date and time each advertisement relating to COOK IVC FILTERS ran.

**RESPONSE:**

32.     Concerning print advertising of whatever format, all DOCUMENTS and ESI relating to point-of-purchase advertisement and/or promotion for COOK IVC FILTERS, copies of all print advertisements, including drafts, for COOK IVC FILTERS, all draft and final COOK IVC FILTERS question and answer brochures, copies of all outdoor advertisements for COOK IVC FILTERS, and all DOCUMENTS relating to event advertising for COOK IVC FILTERS, all DOCUMENTS relating to coupon programs for COOK IVC FILTERS.

**RESPONSE:**

33.     Concerning electronic, internet, mobile device or social media marketing, produce screenshots of all Internet based advertisements (including but not limited to Web sites, blogs, bulletin boards, and pod-casts) ore-commerce information relating to COOK IVC FILTERS sponsored by or on behalf of Defendants, including every screen within any Website, copies of any Internet website (in a searchable format that can be navigated as if the site was operating

live) tracking data relating to COOK IVC FILTERS, all DOCUMENTS or information relating to the marketing of COOK IVC FILTERS through any internet-based website, email campaign, or any other use of the internet or electronic communication, and copies in electronic/navigable format of any Web page or Website maintained by or on behalf of COOK MEDICAL that contains any content relating to COOK IVC FILTERS.

**RESPONSE:**

34.     Concerning efforts to facilitate in-person marketing of COOK IVC FILTERS, all DOCUMENTS and ESI relating to any Direct-to-Consumer marketing and/or advertising campaigns relating to COOK IVC FILTERS, relating to grassroots sponsorship for COOK IVC FILTERS and/or all DOCUMENTS sufficient to identify Defendants' thought leaders and/or key opinion leaders including, but not limited to, doctors and healthcare providers who were offered and/or receive payment or honoraria from Defendants for preparation of scientific papers, posters, medical articles, speeches, lectures, and/or presentations regarding COOK IVC FILTERS.

**RESPONSE:**

35.     Concerning communications with sales representatives marketing COOK IVC FILTERS, produce All DOCUMENTS and ESI that identify former and/or present sales

representatives or detail persons responsible for, or involved with, the marketing or selling of COOK IVC FILTERS, including the territory each was responsible for, All DOCUMENTS used in the training of YOUR sales force and sales representatives who promoted or sold COOK IVC FILTERS at any point in time, all DOCUMENTS and ESI concerning or regarding the training of YOUR sales persons or detail people who worked on COOK IVC FILTERS, all audio files and video files (in native format) used in the training of your sales force and sales representatives relating to COOK IVC FILTERS, produced on separate DVD, all transcripts of any audio files and video files used in the training of your sales force and sales representatives relating to COOK IVC FILTERS, all audio communications (both in audio file format and a transcript of the same) between YOU and YOUR sales force relating to COOK IVC FILTERS, and all email or other written communications between YOU and YOUR sales force relating to COOK IVC FILTERS.

**RESPONSE:**

36.     Concerning communications between sales representatives and health care professionals, produce all DOCUMENTS and ESI that reflect written procedures or guidelines for sales persons or detail people for recording information about doctor and healthcare provider detail visits, all DOCUMENTS that contain information created by any sales representative or detail person concerning COOK IVC FILTERS that were created related to a meeting or conversation with any doctor or healthcare professional, and any database maintained by or on behalf of COOK MEDICAL that contains sales call notes relating to COOK

IVC FILTERS by your sales force, including but not limited to all DOCUMENTS relating to the creation of and additions to "drop-down menus" in the call notes database that are to be used by the sales force instead of a data entry field to be entered by the sales force.

**RESPONSE:**

37.     Concerning materials to be provided to health care professionals by either YOU or your sales representatives, produce all DOCUMENTS and ESI in YOUR possession, custody, or control intended to be provided to physicians regarding COOK IVC FILTERS and its intended use, contraindications, potential complications, and potential need for patient monitoring and/or testing, all DOCUMENTS and ESI relating to materials left or intended to be left by sales representatives in the offices of healthcare professionals relating to COOK IVC FILTERS, and all DOCUMENTS in YOUR possession, custody, or control that were provided to physicians or other healthcare professionals that were intended for distribution to patients concerning the risk of COOK IVC FILTERS causing or being associated with caval perforation, organ perforation, nerve damage, tilting, migration, severe bleeding events, strut fracture, bond fracture, bond failure and/or death, as well as any other injury.

**RESPONSE:**

38.     Concerning any domestic or foreign regulatory agency's response(s) to your

marketing, produce all DOCUMENTS that reflect warnings, objections or criticisms by any United States or foreign governmental or regulatory entity of YOUR marketing and/or promotional materials or practices for COOK IVC FILTERS, specifically including, but not limited to all internal communications relating to any such documents.

**RESPONSE:**

39.     With respect to the studies, testing and/or post-market surveillance of COOK IVC FILTERS, produce all such documents including without limitation to consulting agreements, engagement agreements, employment agreements, or any other agreement, relating in any way to the testing, research, development, and/or evaluation; all DOCUMENTS regarding any post-marketing studies, seeding studies, cohort studies, case control studies, randomized studies, protocols, or surveillance conducted in the United States and worldwide pertaining to COOK IVC FILTERS; all DOCUMENTS regarding any on-going and future proposed post-marketing studies regarding COOK IVC FILTERS; and all DOCUMENTS comprising or regarding the retention and/or use of any third-parties who have analyzed or re-analyzed COOK IVC FILTERS and its causal connection or association with caval perforation, organ perforation, nerve damage, tilting, migration, severe bleeding events, strut fracture, bond fracture, bond failure and/or death, as well as any other injury.

**RESPONSE:**

40.     Regarding post-market surveillance, produce all relating to any Standard

Operating Procedure ("SOP") and policy and procedure manuals relating to YOUR medical device surveillance group and its composition and responsibilities, and all DOCUMENTS relating to any SOP and policy and procedure manuals relating to YOUR post-marketing surveillance for COOK IVC FILTERS from 2000 to the present.

**RESPONSE:**


41.     Any and all DOCUMENTS and ESI evidencing or relating to any request by the Food and Drug Administration for YOU to conduct post-market surveillance of the COOK IVC FILTERS; and any plans, reports or other information YOU submitted to the Food and Drug Administration in response.

**RESPONSE:**


42.     Concerning Adverse Event Reports (AERs), produce all DOCUMENTS and all source files/source documents in YOUR possession, custody, or control of all AERs including without limitation to any SOP, policy, and procedure concerning adverse event reporting, complaints, or concerns from physicians, health care facilities, sales persons and representatives, and consumers, and the reporting of such concerns within YOUR company, and to the FDA, or any division thereof from 2000 to the present, all DOCUMENTS that reflect written procedures for the collection, evaluation or dissemination of adverse event reports concerning COOK IVC FILTERS, all DOCUMENTS received by Defendants that report an adverse event to Defendants, regardless of the source of such documents, in the original form

received by Defendants, including any pleadings that initiated litigation against defendants for personal injuries resulting from the use of COOK IVC FILTERS, all DOCUMENTS constituting and/or summarizing Defendants' post-market adverse event reports for COOK IVC FILTERS, and any charts (to be produced in color) created by COOK MEDICAL relating to adverse event reports for COOK IVC FILTERS, including comparisons to other IVC FILTERS.

**RESPONSE:**

43.     All DOCUMENTS and ESI evidencing and/or relating to any of the following: any and all complaints YOU received and/or became aware of for the COOK IVC FILTERS, including what the complaints consisted of, what action YOU took, if any, in response to each complaint regarding the COOK IVC FILTERS, including any attempts to obtain further information from the health care providers who treated the person whom was allegedly injured by a COOK IVC FILTER or had the COOK IVC FILTER malfunction; any communications YOU made or received regarding each complaint for the COOK IVC FILTERS, including internal communications, the results of any investigations regarding each complaint for the COOK IVC FILTERS and/or the basis for the decision not to investigation, what YOUR conclusions were as to each complaint, and the current status or final disposition of the complaint(s).

**RESPONSE:**

44.     All DOCUMENTS concerning or relating to any studies, including but not limited

to all phases, drafts, protocols, notes, comments, interim reports, final reports, and versions thereof, whether published or not, that suggest, raise question about, indicate or demonstrate a result that evaluates COOK IVC FILTERS' safety in relation to other IVC FILTERS.

**RESPONSE:**

45.    All discovery produced in any litigation, claim, lawsuit or any other action, including but not limited to deposition and trial testimony, expert reports, documents produced, Electronic Systems Information (ESI) produced, Answers to Interrogatories, Affidavits, Admissions, Rule 16 Disclosures and/or Motions served by or upon COOK MEDICAL relating to any injury allegedly caused by a COOK IVC FILTER.

**RESPONSE:**

46.    Regarding information from others concerning harm and COOK IVC FILTERS, produce all DOCUMENTS in YOUR possession, custody, or control comprising or regarding user complaints or concerns pertaining to COOK IVC FILTERS, all DOCUMENTS in YOUR possession, custody, or control comprising or regarding consumer and/or physician complaints or concerns pertaining to COOK IVC FILTERS, complaint files, all MedWatch forms and updates that concern or reference COOK IVC FILTERS, all DOCUMENTS relating to any field investigation reports concerning side effects caused, believed or claimed to be caused, possibly caused, and/or possibly associated at least in part by or with usage of COOK IVC FILTERS, all correspondence and/or other communication received from doctors,

30

hospitals, healthcare providers, and/or COOK IVC FILTERS users regarding complaints with COOK IVC FILTERS and/or adverse events with COOK IVC FILTERS, and all voicemail messages or documents memorializing same in Defendants' care, custody or control concerning any and all side effects of COOK IVC FILTERS, including, but not limited to, voicemail messages left by both COOK MEDICAL and non-COOK MEDICAL personnel.   Please produce these items on an audio compact disc. or portable hard drive.

**RESPONSE:**

47.    Concerning the analysis of information received, produce all DOCUMENTS and/or databases in YOUR possession, custody, or control comprising or regarding any committee, task force, or group YOU created or participated in to address or handle questions or concerns related to the association or causal connection between COOK IVC FILTERS and caval perforation, organ perforation, nerve damage, tilting, migration, severe bleeding events, strut fracture, bond fracture, bond failure and/or death, as well as any other injury, all internal communications concerning what information should be provided to consumer, physicians or other healthcare professionals concerning the risk of COOK IVC FILTERS causing or being associated with caval perforation, organ perforation, nerve damage, tilting, migration, severe bleeding events, strut fracture, bond fracture, bond failure and/or death, as well as any other injury, including, but not limited to, approved informed consent forms, all correspondence and/or other communication prepared and/or sent in response to communication received from doctors, pharmacists, hospitals, healthcare providers, and/or COOK IVC FILTERS users regarding complaints with COOK IVC FILTERS and/or adverse events with the COOK IVC

FILTERS, including any and all internal communications, and all DOCUMENTS and/or Information received or obtained from any source that relate in any way to any causal connection or association of COOK IVC FILTERS with caval perforation, organ perforation, nerve damage, tilting, migration, severe bleeding events, strut fracture, bond fracture, bond failure and/or death, as well as any other injury, which were provided by YOU to the FDA or any other regulatory agency.

**RESPONSE:**

48.    Concerning the COOK IVC FILTER package, produce all labels or labeling, final and draft, for use on or in the box used to package the COOK IVC FILTERS, whether submitted to the FDA or not, all internal communications regarding final or draft labeling for use on or in the box used to package the COOK IVC FILTER, and all communications between YOU and the FDA regarding labels or labeling, final and draft, for use on or in the box used to package the COOK IVC FILTER. If any changes were made to the labeling and instructions for use that were initially distributed with the COOK IVC FILTERS, produce all DOCUMENTS and ESI, including drafts and revisions thereto, and any communications regarding the those changes.

**RESPONSE:**

49.    Concerning package inserts, produce all DOCUMENTS in YOUR possession,

custody, or control relating to any SOP and policy and procedure manuals relating to the content and format of labeling for COOK IVC FILTERS from 2000 to the present, all draft package inserts pertaining to COOK IVC FILTERS, whether submitted to the FDA or not, all internal communications regarding package inserts for COOK IVC FILTERS, all communications between YOU and the FDA regarding any and all COOK IVC FILTER package inserts, all final package inserts approved to be placed within the COOK IVC FILTER package from 2000 to the present, and all package inserts intended for dissemination in any country other than the U.S. for COOK IVC FILTERS and any English translations that exist.

 **RESPONSE:**

 50. Concerning Core Data Sheets, produce all draft Core Data Sheets pertaining to COOK IVC FILTERS, whether submitted to the FDA or not, all internal communications regarding Core Data Sheets for COOK IVC FILTERS, all communications between YOU and the FDA regarding any and all COOK IVC FILTER Core Data Sheets, and all final Core Data Sheets relating to COOK IVC FILTERS approved to be distributed 2000 to the present.

 **RESPONSE:**

 51. Regarding Patient Information Sheets, produce all DOCUMENTS in YOUR possession, custody, or control relating to any SOP and policy and procedure manuals relating to the content and format of package inserts, patient information sheets, and other information pertaining to or concerning COOK IVC FILTERS from 2000 to the present that were

intended for physicians and patients, all draft patient information sheets and/or consumer information sheets pertaining to COOK IVC FILTERS, whether submitted to the FDA or not, all internal communications regarding final or draft COOK IVC FILTER patient information sheets and/or consumer information sheets, all communications between YOU and the FDA regarding any and all COOK IVC FILTER patient information sheets and/or consumer information sheets, and all final patient information sheets and/or consumer information sheets regarding COOK IVC FILTERS intended for dissemination to patients.

**RESPONSE:**

52.     Regarding patient information for patients outside of the U.S., produce all draft package inserts or patient information sheets pertaining to COOK IVC FILTERS that were prepared for any country other than the U.S. and any English translations that exist, and all final patient information sheets intended for dissemination in any country other than the U.S. regarding COOK IVC FILTERS and any English translations that exist.

**RESPONSE:**

53.     Produce all DOCUMENTS and/or Information received or obtained from any source that relate in any way to any causal connection or association of COOK IVC FILTERS with caval perforation, organ perforation, nerve damage, tilting, migration, severe bleeding events, strut fracture, bond fracture, bond failure and/or death, as well as any other injury, which were disclosed by YOU to consumers and potential consumers and your customers.

**RESPONSE:**

54.     Produce all DOCUMENTS relating or pertaining in any way to Instructions For Use (IFU) and all IFU drafts of COOK IVC FILTERS.

**RESPONSE:**

55.     Regarding distributing information through your sales force, all DOCUMENTS and/or information received or obtained from any source that relate in any way to any causal connection or association of COOK IVC FILTERS with caval perforation, organ perforation, nerve damage, tilting, migration, severe bleeding events, strut fracture, bond fracture, bond failure and/or death, as well as any other injury, which were provided by YOU to YOUR sales force, sales representatives or any other of YOUR employees involved in any way in the sale or marketing of COOK IVC FILTERS.

**RESPONSE:**

56.     Regarding Health Advisories or Dear Dr. Letters, produce all DOCUMENTS in YOUR possession, custody, or control relating to any SOP and policy and procedure manuals relating to Dear Doctor or Health Advisory Letters concerning or regarding COOK IVC FILTERS from 2000 to the present, all final and draft Dear Doctor/Healthcare Provider

Letters relating to COOK IVC FILTERS, whether or not ever sent, all internal communications regarding final or draft Dear Doctor/Healthcare Provider Letter regarding COOK IVC FILTERS, all communications between YOU and the FDA regarding any draft or final COOK IVC FILTER Dear Doctor/Healthcare Provider Letter, all final form Dear Doctor/Healthcare Provider Letters approved for dissemination to doctors and/or healthcare providers regarding COOK IVC FILTERS, all DOCUMENTS and/or Information received or obtained from any source that relate in any way to any causal connection or association of COOK IVC FILTERS with caval perforation, organ perforation, nerve damage, tilting, migration, severe bleeding events, strut fracture, bond fracture, bond failure and/or death, as well as any other injury, which were disclosed by YOU to the medical community, and all Dear Doctor/Healthcare Provider Letters intended for dissemination in any country other than the U.S. regarding COOK IVC FILTERS and any English translations that exist.

**RESPONSE:**

57.     Concerning potential label changes or providing a Dear Dr. Letter concerning COOK IVC FILTERS, produce all DOCUMENTS in YOUR possession, custody, or control comprising or regarding YOUR internal communications pertaining to COOK IVC FILTERS and any label changes and/or the decision whether to send Dear Doctor/Healthcare Provider Letters, all DOCUMENTS in YOUR possession, custody, or control comprising or regarding YOUR internal communications pertaining to COOK IVC FILTERS and the need for physician monitoring and/or testing to prevent caval perforation, organ perforation, nerve damage, tilting, migration, severe bleeding events, strut fracture, bond fracture, bond failure

36

and/or death, as well as any other injury, and all DOCUMENTS relating to, demonstrating, or showing that Defendants or their consultants contemplated or considered recommending that healthcare professionals test patients' prior to implantation of a COOK IVC FILTER and the outcome of any such considerations or discussions.

**RESPONSE:**

58.    Produce all DOCUMENTS and ESI relating to, referring to or embodying any discussion, suggestion, or study of whether any current or pending, approved or unapproved, 510(k) application or premarket approval application for the COOK IVC FILTERS should be withdrawn or suspended temporarily or permanently due to safety concerns, including but not limited to internal memorandum, notes of conversations, communications with the FDA and/or any foreign government regulatory authority; communications with manufacturers, licensors, licensees, distributors, physicians or marketer.

**RESPONSE:**

59.    Produce all DOCUMENTS and ESI relating to, referring to or embodying any and all communications, including but not limited to internal memorandum, notes of conversations, communications with the FDA, foreign government regulatory authorities, manufacturers, licensors, licensees, distributors, physicians or marketers, relating to a concern or belief that the FDA might issue an advisory warning or recall for retrievable inferior vena cava filters in general or Cook's retrievable inferior vena cava devices in particular.

**RESPONSE:**

60.     Any and all documents relating or pertaining in any way to any Health Hazard Evaluations conducted by or on behalf of any of the defendants to this action concerning COOK IVC FILTERS and any remedial action considered or undertaken.

**RESPONSE:**

61.     Any and all DOCUMENTS relating, referring to and/or embodying all licenses, contracts, royalty arrangements or other agreements made by YOU and any other entity related to the transfer of responsibility for the sale, marketing, manufacturing, testing or compliance with FDA regulations for the COOK IVC FILTERS.

**RESPONSE:**

62.     Any and all DOCUMENTS and ESI which:

a)  relate to, refer to or embody patents and patent applications for the COOK IVC FILTERS;

b)  relate to, refer to or embody all licensing agreements concerning any product or technology contained in said patents; and

c)  relate to, refer to or embody all proposed or contemplated licensing agreements concerning the COOK IVC FILTERS and all documents provided to proposed or contemplated licenses.

**RESPONSE:**

63.     For all other cases, whether resolved or ongoing, in which a COOK IVC FILTER is or was alleged to have fractured, migrated, and/or perforated the vena cava, please produce copies of deposition transcripts and/or deposition videos of all past and present employees, officers, directors, or agents of Cook Group, Inc., or any subsidiary division, company, or business entity of Cook Group, Inc. involved in any way with the COOK IVC FILTER, who were deposed in said actions.

**RESPONSE:**

64.     Produce exemplars of the COOK IVC FILTERS.

**RESPONSE:**

Dated: January 30, 2015                    **COHEN & MALAD, LLP**

                                           /s/ *Irwin B. Levin*
                                           Irwin B. Levin, IN Atty. No. 8786-49
                                           **COHEN & MALAD, LLP**
                                           One Indiana Square, #1400
                                           Indianapolis, Indiana 46204
                                           Telephone: (317) 636-6481
                                           Facsimile:  (317) 636-2593
                                           ilevin@cohenandmalad.com

                                           *Lead Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of January, 2015, a copy of the foregoing was sent by electronic mail to the following counsel of record:

John Charles Babione, II
WOODEN & MCLAUGHLIN LLP
211 North Pennsylvania Street, Suite 1800
Indianapolis, IN 46204
jbabione@woodmclaw.com

Douglas B. King
WOODEN & MCLAUGHLIN LLP
One Indiana Square, Suite 1800
Indianapolis, IN 46204-2019
dking@woodmclaw.com

James McGinnis Boyers
WOODEN & MCLAUGHLIN LLP
One Indiana Square, Suite 1800
Indianapolis, IN 46204-2019
jboyers@woodmclaw.com

Christopher D. Lee
WOODEN & MCLAUGHLIN LLP
21 SE Third Street, Suite 900
Evansville, IN 47708
clee@woodmclaw.com

Sandra L. Davis
WOODEN & MCLAUGHLIN LLP
One Indiana Square, Suite 1800
Indianapolis, IN 46204-2019
sdavis@woodmclaw.com

Kip S.M. McDonald
WOODEN & MCLAUGHLIN LLP
One Indiana Square, Suite 1800
Indianapolis, IN 46204-2019
kmcdonald@woodmclaw.com

By:  /s/ *Irwin B. Levin*
      Irwin B. Levin, IN Atty No. 8786-49
      **COHEN & MALAD, LLP**
      One Indiana Square, Suite 1400
      Indianapolis, Indiana 46204
      Telephone:  (317) 636-6481
      Facsimile: (317) 636-2593
      ilevin@cohenandmalad.com

      *Lead Counsel for Plaintiffs*