IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br><br>MDL No. 2570 |

This Document Relates to Plaintiff:

    Elizabeth Jane Hill
    Civil Case No. 1:14-cv-06016-RLY-TAB

**PLAINTIFF ELIZABETH JANE HILL'S REPONSE IN OPPOSITION
TO COOK DEFENDANTS' MOTION TO COMPEL DISCOVERY**

**RESPONSES FROM PLAINTIFF ELIZABETH JANE HILL AND BRIEF IN SUPPORT**

## I.    INTRODUCTION

The Cook Defendants' Motion to Compel Discovery Responses from Elizabeth Jane Hill

("Motion") was filed on June 22, 2017. Through their Motion to Compel, Defendants ask the

Court to compel production of a broad range of information:

1. Employment Records;
2. Social Media Information;
3. Medical Expenses;
4. Insurance Policy and Subrogation Information;
5. Communications between Plaintiff and Third Parties;
6. Evidence Plaintiff Claims Support Her Claims;
7. Information About Advertising or Labelling Materials Related to the Filter Read or Seen by Plaintiff;
8. Statements of Cook Taken or Possessed by Plaintiff Related to the Filter or the Allegations in the Complaint;
9. The Identity of and Facts Known by Witnesses;
10. Information About When Mrs. Hill Contacted an Attorney About Her Lawsuit Against Cook, and
11. Mrs. Hill's Handwritten Responses to Her Plaintiff Fact Sheet.

For the reasons that follow, Defendant's Motion to Compel should be denied.

## **LEGAL AUTHORITY**

### A.  **Standard on Motion.**

While discovery is often construed broadly, the scope of permissible discovery is not unbounded. Requested discovery must be relevant, and it must not impose an undue burden under the tests described in Rule 26(b)(2)(C). In this regard, even where requested discovery is relevant, the Court may limit it if it determines that the requested discovery is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive," Rule 26(b)(2)(C)(i), Fed. R. Civ. P.; the party seeking discovery has already had "ample opportunity" through other discovery in the action to obtain the requested information, Rule 26(b)(2)(C)(ii), Fed. R. Civ. P.; or the Court finds that the "burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Rule 26(b)(2)(C) (iii), Fed. R. Civ. P.

The information sought must be relevant, not overly burdensome to the responding party, and tailored to the issues involved in the particular case. *See Washington v. Brown & Williamson Tobacco Corp.,* 959 F.2d 1566, 1570 (11th Cir. 1992) (citations omitted). In addition, federal courts superimpose "a balancing of interests approach for Rule 26's good cause requirement," whereby the court balances one party's interest in accessing data against the other's keeping of the information confidential. *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.,* 263 F.3d 1304, 1313 (11th Cir.2001) (citing *Farnsworth,* 758 F.2d at 1547).

The party seeking discovery has the threshold burden of showing that the requested discovery is relevant. *See Siddiq v. Saudi Arabian Airlines Corp.,* 2011 WL 6936485, at *2 (M.D.Fla. Dec.7, 2011). Where the relevancy of a request is not readily apparent on its face, the burden falls on the moving party to establish relevancy. *See Suncast Technologies, L.L.C. v. Patrician Products, Inc.,* 2008 WL 179648, at *5 (S.D. Fla. Jan.17, 2008). A vague possibility that loose and sweeping discovery might turn up something does not show particularized need sufficient to meet a movant's burden. *See Joslin Dry Goods Co. v. EEOC,* 483 F.2d 178, 183–84 (10th Cir. 1973).

As detailed herein, Defendant has not demonstrated that all of the discovery it seeks in its Motion is relevant to the issues at bar. Moreover, even if it could, any limited probative value of the sweeping discovery requested, is severely outweighed by the burden of producing same, the privacy interests upon which it impinges, and is largely available from other sources.  Thus, Defendant's Motion must be denied.

### B. The Records Pertaining to Ms. Hill's Alleged Part Time Employment Do Not Exist, the Request is Not Relevant to Any Parties' Claim or Defense and Exceeds the Scope of Discovery.

The Defendants seek to compel employment documents which are not in the Plaintiff's possession and which, in fact, do not exist.  In addition, the Defendants' request for employment records is relevant to any claim or defense as the Plaintiff is not making any claims for lost wages or loss of earning capacity.

Section VIII of the Plaintiff's Profile Sheet inquired as to whether Ms. Hill was seeking damages for lost wages and she responded "no."[1] In fact, the agreed upon Plaintiff's Fact Sheet

---

[1] Exhibit "1," Plaintiff's Profile Form, Section VIII - Past History at p. 3; and, Exhibit "2", Plaintiff's Fact Sheet, Section II -  Claim Information, Question 11 p. 8.

only requires a plaintiff to produce records related to his or her earnings if he or she is making a

claim for lost wages or a loss of earning capacity.

      k)      If you claim lost wages or lost earnings capacity, produce copies of your
              Federal and State tax returns for the five (5) years prior to implantation of
              the Cook Inferior Vena Cava Filter(s) to the present redacting irrelevant
              information.

              Not applicable.[2]

In her deposition, Ms. Hill testified regarding her work history and that she had retired in

2010, prior to the back surgery that was the impetus for placement of the IVC filter at issue.[3]  In

addition she specifically stated she is not making a claim for lost wages:

      Q.      Okay. Under 11 it says that you're not making a claim for lost wages; is that
             correct?
      A.      That is correct. I am retired.[4]

It is clear from the responses to the Plaintiff's Profile Form, Plaintiff's Fact Sheet and

Ms. Hill's deposition testimony that she is not seeking to recover any damages from the

Defendants for lost wages or a loss of earning capacity. Therefore, the request for employment

records is not relevant to any claim or defense. *See,* Rule 26 (b) (1) Fed. R. Civ. P.

 The only basis for the Defendants' claim that some previously undisclosed, but equally

irrelevant employment records might exist is a statement made by Leigh Anne Levy, R.N.,

CLCP in her summary of Ms. Hill's Educational History/Occupational History that Ms. Hill had

obtained a part time job. This statement is the result of miscommunication.  At one point after

she had retired, Ms. Hill was told of an opportunity for part time employment teaching

psychiatric nurses communication skills.  To apply for the job, Ms. Hill had to take an on-line

"orientation" which lasted several hours.  She sat through the first hour of the orientation and

---

[2] Exhibit "3", Plaintiffs Fact Sheet, Section VII – Document Requests, Section (1)(k) at p. 29
[3] Exhibit "4", Deposition Testimony of Elizabeth Hill, 52/7 to 54/3, 57/4 to 58/5 and 58/24 to 59/3
[4] Exhibit "5", Deposition Testimony of Elizabeth Hill, 197/14-16

never completed it.  She never worked in that capacity and has not had any employment since she retired from the V.A. in 2010.

> Q.      I want to talk a little bit about the period of time after this procedure to try to remove your filter and before your July 2013th spinal reconstructive surgery.
> A.      Okay. Do you want me to go back to –
> Q.      So this is 2011 to 2013-ish. Tell me you -- you weren't working during this period of time, correct?
> A.      Correct.[5]

There are no records to produce from any part time employment as Ms. Hill never completed the application process and never took the job. It is true that Ms. Levy mentions Ms. Hill's work history to in her Life Care Report, but she does not place any monetary value on her inability to work or "lost enjoyment of life and disability", as the Defendants' phrase it, in her report.  Ms. Levy's conclusions relate solely to her "Projected Medical Service Needs" and the cost of those services.[6]

The information regarding part time employment sought by the Defendants does not exist and information related to Ms. Hill's employment is not likely to lead to the discovery and admissible evidence.  The Defendant's Motion to Compel should be denied.

### C.  The Defendants Request for Social Media Information Goes Beyond the Proper Scope of Discovery and Is Harassing.

While it is true that social media is subject to discovery, it is only discoverable to the extent it is adequately tailored satisfy the relevance standard.

> The Court recognizes that social networking site content may be subject to discovery under *Rule 34*. 'Generally, SNS content is neither privileged nor protected by any right of privacy.' *Davenport v. State Farm Mut. Auto. Ins. Co.,* 2012 U.S. Dist. LEXIS 20944, 2012 WL 555759 at *1 (M.D. Fla. Feb. 21, 2012). However, '[d]iscovery of SNS requires the application of basic discovery principles in a novel context.' *[EEOC v.] Simply Storage Mgmt.,* 270 F.R.D. [430,] 434[(S.D. Ind. 2010)]. In particular, several courts have found that even though

---

[5] Exhibit "6", Deposition Testimony of Elizabeth Hill, 121/10 to 17
[6]  Exhibit "7", Life Care Plan and Cost Analysis for Elizabeth Jane Hill, pp. 19 to 24.

certain SNS content may be available for public view, the Federal Rules do not grant a requesting party 'a generalized right to rummage at will through information that [the responding party] has limited from public view' but instead require 'a threshold showing that the requested information is reasonably calculated to lead to the discovery of admissible evidence.' *See Appler v. Mead Johnson & Co.,* No. 3:14-cv-166-RLY-WGH, 9 (S.D. Ind. 2015), *Tompkins v. Detroit Metropolitain Airport,* 278 F.R.D. 387, 388 (E.D. Mich. 2012); see also *Davenport,* 2012 U.S. Dist. LEXIS 20944, 2012 WL 555759 at *1. ('A request for discovery [of SNS content] must still be tailored . . . so that it "appears reasonably calculated to lead to the discovery of admissible evidence."') (quoting *Fed. R. Civ. P. 26(b)(1)*); *Mackelprang v. Fidelity Nat'l Title Agency of Nevada, Inc.,* 2007 U.S. Dist. LEXIS 2379, 2007 WL 119149 at *7 (D. Nev. Jan 9, 2007) ('Ordering . . . release of all of the private email messages on Plaintiff's Myspace.com internet account would allow Defendants to cast too wide a net for any information that might be relevant and discoverable.').

*Malhoit v. Home Depot U.S.A., Inc.,* 285 F.R.D. 566, 570-571 (C.D. Cal. 2012); *accord*, *Ye v. Cliff Viessman, Inc.,* No. 14-cv-01531, 2016 U.S. Dist. LEXIS 28882 at *8 -*10 (N.D. Ind. March 7, 2016). In the case of *Crabtree v. Angie's list, Inc.,* No. 1:16-cv-00877 (S.D. Ind. 2016) the Defense "sought documents such as email messages, social media posts, work schedules, journals, diaries, calendars, text messages, blog or website posts, Twitter messages or other social media posts "prepared, created, or used by" Plaintiffs from September 2014 to September 2015 that related to absences from or attendance at work." The Court stated, in its decision, "…the Court has an obligation to guard against intrusive discovery. Defendant's broad request would encompass clearly personal communications…the scope of the information sought by Defendant is plainly not proportional to the needs of this case."

The Defendants ask the court to compel a response to the following interrogatory:

**INTERROGATORY NO. 24:** Please state whether you use or ever have used social media websites, including but not limited to, Facebook, Twitter, Instagram, Vine, Snapchat, YouTube, LinkedIn, Pinterest, or other social media. For each website you have used, please provide all user names, handles, login names or IDs and e-mail addresses applicable to the login or use of the website, and the approximate dates or date range of use for each website.

This discovery request makes no attempt to adequately limit the information sought as required by Rule 26 (b)(1).   Defendants have not limited the scope of their request to a relevant time period or to content that is relevant to a claim or defense in this case. Instead, they are asking for unfettered access to the Plaintiff's media account:

> The Court should order Plaintiff to provide to Cook all requested social media information – specifically, Plaintiff's Facebook information – ***including passwords,*** all parts of her profile information and posts, without restriction from November 17, 2010, to the present date. Such information is relevant and discoverable.

Cook Defendants' Brief in Support of Motion to Compel Discovery Responses from the Plaintiff Elizabeth Hill at p. 8 [Doc. 5144], *emphasis supplied*.

By seeking access all of the social media information "including passwords . . . without restriction", the Defendants make clear that their intent is not to pose an appropriate request for production of documents limited in scope to what is relevant to the claims or defenses in this case, but instead to "rummage at will" through the Plaintiff's Facebook account. The Federal Rules of Civil Procedure do not permit such tactics. *Cliff Viessman, Inc*., 2016 U.S. Dist. LEXIS 28882 at *8-*10.[7]

The Plaintiff has already identified the social media account she uses and disclosed her email address in her response to the Plaintiff Fact Sheet.[8] Prior to the deposition of Leigh Anne Levy, R.N. CLCP, Plaintiff produced 90 pages from her Facebook account to Cook's attorneys. On April 28th, 2017, the deposition of Leigh Anne Levy, R.N. CLCP was taken by Defendant's

---

[7] It is significant to note that all of the cases cited by the Defendants in support of this broad ranging right to peruse through Ms. Hill's social media accounts predate the December 1, 2015 amendment to Rule 26. That amendment narrowed the concept of relevance for the purpose of discovery and "deleted the notion that information is discoverable, even if not directly relevant, if it is reasonably calculated to lead to the discovery of admissible evidence." *Cliff Viessman, Inc*., 2016 U.S. Dist. LEXIS 28882 at *6-*7, *citing,* Advisory Committee Notes to the 2015 Amendment to *Rule 26 of the Federal Rules of Civil Procedure*.
[8] Exhibit "8", Plaintiff's Profile Form, Section VIII -  Past History at pp. 3 & 4.

counsel. Plaintiff's 90 pages of social media information is attached to this deposition as exhibit #17.  These are the same Facebook pages that were referenced by Leigh Anne Levy, R.N. CLCP in her report. In addition, the Defendants' attorneys examined Ms. Hill at length about her use of the internet and social media during her deposition. The Defendants counsels addresses each issue that may be considered relevant to this cause of action, and Ms. Hill responded as follows:

Q.   Have you ever done any research on IVC filters?
A.   No.
Q.   Never Googled IVC filter?
A.   No.
Q.   I use Google as a verb. I don't know if that's really a verb but...
A.   I use Google. I understand.
Q.   So you never got on the computer and typed in "filter" or "IVC filter"?
A.   No.[9]

\*                    \*                    \*

Q.   Have you or your husband ever done any research on Cook, the company I represent?
A.   No.[10]

\*                    \*                    \*

Q.   Have you ever done research on pulmonary embolism online?
A.   No.
Q.   Any other research related to your case?
     MR. JOHNSON: Form.
Q.   You can answer.
A.   No.
Q.   Have you ever talked about your thoughts about IVC filters online?
A.   No.
Q.   Never gotten on a blog or social media Web site like Facebook and talked about IVC filters?
A.   No. That's private. I don't care to share my medical information on a social media network.
Q.   Have you ever talked about your experience with an IVC filter in response to a mass e-mail or an electronic list serve?
A.   No.[11]

---

[9] Exhibit "9", Deposition Testimony of Elizabeth Hill, 29/16 to 25.
[10] Exhibit "10", Deposition Testimony of Elizabeth Hill, 31/5 to 7
[11] Exhibit "11", Deposition Testimony of Elizabeth Hill, 32/13 to 33/5

The Plaintiff cannot be compelled to produce documents that do not exist. Further, the Plaintiff has otherwise provided the Defendants with relevant discovery related to her social media account. The Defendant's Motion to Compel should be denied as the Defendants have not narrowly tailored their request to a reasonable time period and to specific content that they claim is relevant to a claim or defense in this case. Therefore, their request exceeds the scope of permissible discovery under Rule 26(b)(1).

### D. Plaintiff has Properly Responded to the Defendants' Request for Information Regarding Her Medical Expenses.

In her answer to Interrogatory No.1, Plaintiff listed, to the best of her ability, all hospitalizations she had from November 17, 2000 [ten years prior to implantation of the filter in question] to the present date, including the name and address of each Hospital, a description of the service provided and the dated of service.[12]

In her answer to Interrogatory No. 2, Plaintiff listed, to the best of her ability, all healthcare providers with whom she had consulted or by whom she was examined or treated she had from November 17, 2000 [ten years prior to implantation of the filter in question] to the present date, including the name and address of each provider, the provider's specialty and the date of the service.[13]

In her answer to Interrogatory No. 5, Plaintiff listed, to the best in of her ability, the name of each medical provider for whom she was seeking recovery of her medical expenses, the date of service, the total amount of the provider's bill, the amount of the payments made and the amount of any outstanding balance.[14]

---

[12] See, Exhibit "E" to the Cook Defendants' Brief in Support of Motion to Compel Discovery Responses from the Plaintiff Elizabeth Hill at pp. 4-6. [Doc. 5144-6].
[13] See, *Id.*, at pp. 6-10. [Doc. 5144-6].
[14] See, *Id.*, at p. 11. [Doc. 5144-6].

The Defendants need only compare the Plaintiff's responses to Interrogatories Nos. 1, 2 & 5 and they will be able to determine the "nature of the service that was provided" with regard to each bill referenced in the Medical Bill Index. In addition, the Plaintiff provided the Defendants' counsel with a copy of the medical records and bills in her possession[15] and a signed medical authorization that permits the Defendants to obtain copies of her bills and records from her healthcare providers.[16]

Pursuant to Rule 26, the Court may limit a discovery request if it determines that the requested discovery is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive"  and/ or the party seeking discovery has already had "ample opportunity" through other discovery in the action to obtain the requested information, Rule 26(b)(2)(C)(i) & (ii), Fed. R. Civ. P.  The Plaintiff has fully responded to the Defendants' discovery requests and made the information available through her answers to the Defendants' Interrogatories, production of medical bills and records and submission of signed authorizations giving the Defendants' counsel access to her medical records and bills as well as her Medicare and insurance information. The Defendant's Motion to Compel should be denied.

### E.  Plaintiff has Properly Responded to the Defendants' Request for Information Regarding Her Insurance Policy and Subrogation Information.

The Plaintiff has identified who her medical insurance carriers were in response to Interrogatory No. 7.[17] She has produced copies of the medical bills obtained from her healthcare

---

[15] Exhibit "12"- Letter to Anna C. Rutigliano dated October 20, 2016, Exhibit "13"- Plaintiff's Supplemental Response to Defendant's First Set of Requests for Production dated January 9, 2017; Exhibit "14"- Letter to Andrea Pierson dated April 5, 2017, Exhibit "15"- Letter to Andrea Pierson dated April 12, 2017; Exhibit "16"- Letter to Andrea Pierson dated May 23, 2017; Exhibit "17"- Letter to Andrea Pierson dated June 26, 2017.
[16] Exhibit "18", Letter to Letter to Anna C. Rutigliano dated October 20, 2016.
[17] See, Exhibit "E" to the Cook Defendants' Brief in Support of Motion to Compel Discovery Responses from the Plaintiff Elizabeth Hill at p. 12. [Doc. 5144-6].

providers which includes insurance information as well as payments made.[18] She has recently

produced copies of the correspondence that has been received from Medicare, the Rawlings

Company and BCBS regarding any alleged subrogation claims.[19]  The plaintiff has also produced

signed authorizations granting the Defendants access to her insurance information.  Plaintiff has

properly responded to the Defendants' discovery requests, therefore the Motion to Compel

should be denied.

> **F. Defendants' Request for Production of All Communications Between the
> Plaintiff or Anyone Acting on Her Behalf to Any Third Party Relating to the
> Filter, This Action or The Allegations in This Action is Vague, Overly Broad and
> Exceeds the Scope of Discovery.**

"*Rule 34(b)* requires the requesting party to describe the information to be produced with

'reasonably particularity'. *Fed.R.Civ.P. 34(b)(1)(A)*.  'The test for reasonable particularity is

whether the request places a party upon reasonable notice of what is called for and what is not.'

*Bruggeman ex rel .Bruggeman v. Blagojevich, 219 F.R.D. 430, 436 (N.D. Ill. 2004)* (internal

quotations omitted). Discovery can be limited when it is unreasonably cumulative, overly broad,

unduly burdensome, or irrelevant. *Fed.R.Civ.P.26(b)(2)(C)*." *Cliff Viessman, Inc*., 2016 U.S.

Dist. LEXIS 28882 at *5.

To begin, the Defendants' First Request for Production defines the term

"communications" as "all forms of information transference written, oral or electronic, including

without limitation meetings, conferences, conversations, discussions, proposals, solicitations,

interviews, correspondence, messages, and notes, as well as memoranda and records of

communications."   "Plaintiff" means not just Elizabeth Hill but also her attorneys and

---

[18] See Exhibit "18"- Letter to Anna C. Rutigliano dated October 20, 2016, Exhibit "13" - Plaintiff's Supplemental
Response to Defendant's First Set of Requests for Production dated January 9, 2017; Exhibit "14" -  Letter to
Andrea Pierson dated April 5, 2017, Exhibit "15" - Letter to Andrea Pierson dated April 12, 2017; Exhibit "16" -
Letter to Andrea Pierson dated May 23, 2017; Exhibit "17" - Letter to Andrea Pierson dated June 26, 2017.
[19] Exhibit "19", email to Andrea Pierson dated July 7, 2017.

"representatives of any kind."   In addition to these broad definitions, the request seeks any "communications" that are "relevant to the filter, the action or the allegations in the action."

> . . . there are limits to the use of open-ended terms such as 'related to,' 'pertaining to,' or 'concerning. '[A] discovery request is overly broad and unduly burdensome on its face if it uses an omnibus term such as "relating to," "pertaining to," or "concerning" to modify a general category or broad range of documents or information.' *In re Urethane Antitrust Litigation,* No. 04-MD-1616-JWL-DJW, 2008 U.S. Dist. LEXIS 1733, 2008 WL 110896, *1 (D. Kan. Jan. 8, 2008) (citing *Johnson v. Kraft Foods North Am., Inc.,* 238 F.R.D. 648, 658 (D. Kan.2006)). The reason for this rule is that such broad language makes it extremely burdensome to determine which of numerous documents may conceivably fall within its scope:
>
>> Requests should be reasonably specific, allowing the respondent to readily identify what is wanted. Requests which are worded too broadly or are too all inclusive of a general topic function like a giant broom, sweeping everything in their path, useful or not. They require the respondent either to guess or move through mental gymnastics which are unreasonably time-consuming and burdensome to determine which of many pieces of paper may conceivably contain some detail, either obvious or hidden, within the scope of the request.
>
> *Audiotext Communications v. U.S. Telecom, Inc.,* No. CIV A. 94-2395-GTV, 1995 U.S. Dist. LEXIS 545, 1995 WL 18759, * 1 (D. Kan. Jan. 17, 1995).

*Dauska v. Green Bay Packaging, Inc.,* 291 F.R.D. 251, 261 (E.D. Wis. 2013).

Given the broad definitions and the use of the open-ended term "related to", Defendants' Request No. 8 gives no guidance as to what is called to be produced and what is not.  For example, the request would seem to include trial preparation materials as defined by Rule 26(3) & (4) of the Federal Rules of Civil Procedure, but such an interpretation would violate the exemption from discovery the rules bestow upon such information.  If the request is intended to address expert witness discovery, then it would be unnecessarily cumulative of the Case Management Orders previously entered regarding expert discovery in the MDL.  The scope of this request runs the gambit from notes taken regarding a "communication" with a "third party" to the requirement that the Plaintiff reproduce the "oral" discussions themselves. The request is

unlimited and not sufficiently modified or tailored to apprise the Plaintiff as to what documents are to be produced, therefore the Motion to Compel should be denied. *See*, *Krause v. Nev. Mut. Ins. Co*., 2:12-cv-00342, 2014 U.S. Dist. LEXIS 14872 at *18 -*19 (D. Nev. February 6, 2014).[20]

**G. Defendants' Interrogatories and Requests for Production Which Seek to Impose an Obligation to Give a Detailed Narrative Outline the Plaintiff's Entire Case and the Evidence Which Will be Used to Support Each Claim Are Improper Because They are Overboard and Oppressive.**

Defendants' multiple requests for the Plaintiff to "Describe each and every thing of which you are aware that supports your claim that Cook failed to . . .", and to produce, "Any and all documents you contend support or prove your claim that the Cook failed to . . . ." are not proper forms of discovery.

> Otherwise appropriate interrogatories involving 'an opinion or contention that relates to fact or the application of law to fact' are not necessarily objectionable. *Fed. R. Civ. P. 33(a)(2)*; *see Hendricks v. Mirabilis Ventures, Inc., No. 8:07-CV-661-T-17EAJ, 2008 U.S. Dist. LEXIS 10655, 2008 WL 423566, at *2 (M.D. Fla. Feb. 13, 2008)*. However, **_contention interrogatories_** are to be used sparingly and for the purpose of targeting specific claims that are either unclear or the subject of early resolution. Middle District Discovery (2015) at IV.C.2. As such, '[i]nterrogatories that purport to require a detailed narrative of the opposing parties' case are generally improper because they are overbroad and oppressive.' *Id.* Courts may order that such **_contention interrogatories_** need not be answered. *Fed. R. Civ. P. 33(a)(2)*; *Bingham v. Baycare Health Sys., No. 8:14-CV-73-T-23JSS, 2016 U.S. Dist. LEXIS 50940, 2016 WL 1546504, at *2 (M.D. Fla. Apr. 15, 2016)*.

*Suszko v. Specialized Loan Servicing, LLC.,* No. 8:16-cv-2333, 2017 U.S. Dist. LEXIS 98788 at *5 -*6 (M.D. Fla. June 27, 2017).

The U.S District Court for the Northern District of Indiana also recognizes that there are limits to the use of broad contention forms of discovery. *Norco Industries v. CPI Binani, Inc.*, No. 2:12 cv 313, 2012 U.S. Dist. LEXIS 176588 (N.D. Ind. December 13, 2012), is a patent

---

[20] The *Krause* opinion also states that a trial court is vested with broad authority to manage discovery and may exercise that discretion to reach the merits of a discovery dispute even if objections made are not ideal. *Krause,* 2014 U.S. Dist. LEXIS at *14 -*15.

infringement case in which the plaintiff issued a 30(b)(6) deposition that included the following

topics:

> 6. The factual basis for any claim construction argument that CPI intends to assert in responding to Norco's motion for preliminary injunction.

> 7. The factual basis for CPI's assertion that the Accused Products do not infringe upon the patent-in-suit, if it intends to argue non-infringement in responding to Norco's motion for preliminary injunction.

> 8. The factual basis for CPI's assertion that the patent-in-suit is invalid, if it intends to argue invalidity in responding to Norco's motion for preliminary injunction.

*Id.* at *3-*4.  The trial court reviewed these requests and held:

> These topics are relevant because they go directly to CPI's possible defenses. However, CPI argues that the proposed topics are inappropriate deposition topics.

> Norco's deposition topics exceed the scope of discovery and attempt to discover the legal conclusions and mental impressions of CPI's attorneys. The proposed topics state Norco's intent to inquire about the factual basis of CPI's possible defenses. The factual basis of any defenses that may be raised is a determination made by CPI's attorneys. This would amount to an attempt to depose opposing counsel. *See S.E.C. v. Buntrock, 2004 U.S. Dist. LEXIS 12036, 2004 WL 1470278, *2 (N.D. Ill. June 29, 2004)*. To respond, Norco either would need to depose CPI's attorney or CPI's attorney would need to prepare a witness to testify about the basis of its defenses. In either case, it would reveal the factual and legal theories of the defenses CPI's attorney intends to raise. If Norco were to make this inquiry to a CPI employee who has been informed about the basis of the defenses for the purpose of the deposition, this would infringe upon the attorney-client privilege, which shields from discovery any communications between the attorney and his client. *See Upjohn Co. v. United States, 449 U.S. 383, 390, 101 S.Ct. 677, 683, 66 L.Ed.2d 584 (1981)*(explaining "the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.") If Norco were to depose CPI's attorney, this directly would reveal his or her mental impressions and the legal theories on which he or she basis the defenses. Although the text of the attorney client privilege only prohibits discovery of documents made in anticipation of litigation, "the principles of *Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947)*, the seminal work product case, restrict an opposing party's inquiry into an attorney's mental processes, regardless of the discovery method employed." *Oak Industries v. Zenith Electronics Corp., 687 F.Supp. 369, 374 (N.D. Ill. 1988)*.

The case at bar is not a typical civil lawsuit involving one set of parties who are litigating for the first time.  This is a Bellwether case for a large MDL in which the discovery has been carefully scheduled, hundreds of thousands of pages of documents have been produced and reviewed, dozens of depositions have been taken and expert designations and have been exchanged.  The vast majority of the documents produced in the course of the discovery have come from the Defendants and they should be at least equally as knowledgeable regarding their existence and content as the Plaintiff.  Under specific facts and circumstances of this litigation, there is little to be gained from the use of such broad contention requests.  The Defendants are not using the discovery to target specific claims that are either unclear or the subject of early resolution, but rather to try to force the Plaintiff to present her case-in-chief in context of responding to interrogatories and requests for production.  *See, FDIC v. Fidelity & Deposit Co. of Maryland*, No. 3:11-cv-19, 2013 U.S. Dist. LEXIS 16339 at *4 (S.D. Ind. November 18, 2013)[holding that  a 30(b)(6) request that required a party to tender witness to testify as to the bases of every allegation made in a supplemental complaint was unduly burdensome as it was equivalent to requiring counsel to provide all the witnesses and evidence necessary to try his case].

Rule 33 allows for contention interrogatories, but does not provide and absolute right to their use.  *In re Convergent Tech. Sec. Litig.,* 108 F.R.D. 328, 333 (N.D. Cal. 1985). "[T]he key to determining whether **contention interrogatories** are appropriate is balance. Where a party could use a different discovery tool to obtain the same information while imposing less of a burden, 'a court would be constrained to rule that a contention interrogatory need not be answered.'" *Id.*

The Defendants have been provided with a number of alternative "discovery tools" through which they have been able to investigate the Plaintiff's claims in this litigation. These tools include, Plaintiff Profile Forms and Plaintiff Fact Sheets, access to the Plaintiff's medical records, written reports from the Plaintiff's retained experts, more than 30 depositions of the Defendants' employees and former employees, depositions of the Plaintiff, her husband, her treating physicians, case specific interrogatories and reproduction requests and deposition of the Plaintiff's designated experts. The contention interrogatories posed by the Defendants are overbroad, oppressive and exceed the scope of discovery. The Defendants' Motion to Compel should be denied.

**H. The Defendants Interrogatories Seeking Information About Advertising, Labelling, Statements of Cook, and Witnesses Requested through Interrogatories Clearly Exceed the Scope of Discovery.**

In evaluating the Defendants' Interrogatories and Requests for Production it is important to remember the Definitions and Instructions that were made a part of each discovery request. The term "you" was broadened from meaning the Plaintiff, Elizabeth Hill, to include her attorneys and "representatives of any kind", whoever they maybe. So. When Interrogatory No. 9, asks "state whether you read or saw any written, televised or internet-based advertising or labeling material related the filter . . .", the Defendant's intend for the question to mean, "State whether Elizbeth Hill, any of her attorneys or any representative of hers of any kind as you read or saw any written, televised or internet-based advertising or labeling material related the filter . . . ." when read in its intended context, the issues as to the clarity and scope of these requests becomes clear.

If it's the Defendant's intent to learn whether Ms. Hill read, or saw any written, televised or internet-based advertising or labeling material related the filter, they need only refer to her Plaintiff Fact Sheet and her deposition testimony. According to her Fact Sheet, Ms. Hill has not received any written labeling material.

16

7)   Prior to implantation with a Cook Inferior Vena Filter, did you receive any written and/or verbal information or instructions regarding the Cook Inferior Vena Cava Filter(s), including any risks or complications that might be associated with the use of the same?

Yes ___ No <u>X</u>   Don't Know ___[21]

She did however, testify about the television advertising she has seen:

Q.   Have you ever done any research on IVC filters?
A.   No.
Q.   Never Googled IVC filter?
A.   No.
Q.   I use Google as a verb. I don't know if that's really a verb but...
A.   I use Google. I understand.
Q.   So you never got on the computer and typed in "filter" or "IVC filter"?
A.   No.[22]

        *               *               *

Q.   Have you ever seen any articles about IVC filters?
A.   I have not, um, seen articles, but I've seen all the specials that have been on the "NBC Nightly 12 News" --
Q.   Okay.
A.   -- regarding the IVC filters. And there's an abundance of advertisements.
Q.   So you have seen a story on "NBC Nightly News"?
A.   I think three times.
Q.   When did you see those?
A.   Oh, I don't remember when they were aired. It's been the past year.
Q.   All three were in the past year?
A.   I believe so. Lester Holt.
Q.   Besides the NBC -- the three "NBC Nightly News" shows, have you seen anything else on TV about IVC filters?
A.   Advertisements.
Q.   When you say "advertisements," what do these advertisements say?
MR. JOHNSON: Form.
Q.   You can answer.
A.   Lawyers.
Q.   Besides lawyer advertisements, have you seen anything else on TV?
A.   No.[23]

        *               *               *

---

[21] Exhibit "2", Plaintiff's Fact Sheet, Section II - Claim Information, Question 11 p. 8
[22] Exhibit "9", Excerpt of Deposition Testimony of Elizabeth Hill, 29/16 to 25.
[23] Exhibit "10", Excerpt of Deposition Testimony of Elizabeth Hill, 31/8; Exhibit "11" Excerpt of Deposition Testimony of Elizabeth Hill, 32/12

Q.      Did you ever contact Cook about your filter?
A.      No.
Q.      Why not?
A.      Why would I?[24]

        *                              *                              *

Q.      Have you ever had any contact with any representative of Cook?
A.      No.
Q.      Have you ever seen any brochure or product literature relating to Cook or a Cook product?
A.      No.
Q.      Never seen a document written by Cook?
A.      No.
Q.      No, you've never seen one?
A.      No, I have not.[25]

        *                              *                              *

Q.      Have you discussed this litigation with anyone besides your lawyer?
A.      My husband.
Q.      Anyone besides your husband?
A.      My son is aware, but he does not know what's going on. He just knows that I'm involved with lawyers and that there's issues.
Q.      What about the three friends that we talked about as witnesses, Marsha or Barbara or --
A.      They -- they are aware that I have sought legal counsel.
Q.      But you haven't talked --
A.      We don't get into details.
Q.      What about your healthcare providers?
A.      Dr. Bellingar. And I believe Beth knows. And, of course, Dr. Choudhry knows.[26]

If the Defendants' discovery is truly focused on what the Plaintiff read or saw regarding IVC filters, what the Plaintiff knows about advertising, what the Plaintiff knows about their warning labels, and witnesses of whom she is aware, they have the answers. "Discovery can be limited when it is unreasonably cumulative, overly broad, unduly burdensome, or irrelevant. *Fed.R.Civ.P.26(b) (2)(C)*." *Cliff Viessman, Inc*., 2016 U.S. Dist. LEXIS 28882 at *5. The

---

[24] Exhibit "20", Deposition Testimony of Elizabeth Hill, 34/4 to 7.
[25] Exhibit "21", Deposition Testimony of Elizabeth Hill, 221/22 to 222/6.
[26] *Id.* at 221/7 to 222/22.

Plaintiff has provided the information the Defendant has requested. The Defendants' Motion to Compel should be denied.

### I.   The Plaintiff Has Responded to Defendants' Request for the Date Mrs. Hill First Contacted an Attorney.

Plaintiff's counsel has provided Defendants with this date so this issue is moot.

### J.   Mrs. Hill's Handwritten Draft Answers to the Plaintiff Fact Sheet Delivered to Her Attorney Are Privileged Attorney-Client Communications.

The Defendants seek to compel Mrs. Hill's draft answers to the Plaintiff Fact Sheet that were provided directly to her attorney which are privileged attorney-client communications. Citing to no authority, Defendants contend that Mrs. Hill should be compelled to produce a confidential communication Ms. Hill sent to her attorneys. In May 2017, during a hearing relating to the Plaintiff's Independent Medical Examination, the Defendant made arguments, bringing up the same issue. This court has not granted the Defendant's request.

"Section 90.502(1)(c), Florida Statutes (2012), provides generally that a communication between a lawyer and a client is 'confidential' if it is not intended to be disclosed to third-persons." *Montanez v. Publix Super Markets, Inc.*, 135 So. 3d 510, 512, 2014 Fla. App. LEXIS 4604 (Fla. Dist. Ct. App. 2014).  In *Montanez,* the court rejected Defendant's suggestion that because signed and verified answers were intended to be disclosed to a third person that a "client's unsigned and unverified draft answers, submitted directly to that client's lawyer for review, are likewise intended to be disclosed to others." *Id*. at 512-513.  The *Montanez* court further stated that "an attorney's role will often include assisting a client in the preparation of…answers, so as to best advance the client's interest while complying with all applicable legal and ethical requirements." *Id*.

Although the signed and verified final answers to the Plaintiff Fact Sheet were ultimately intended to be disclosed to third persons, Mrs. Hill's draft answers, submitted directly to her attorney for review, were never intended to be disclosed to others.  Furthermore, at no time during Mrs. Hill's deposition did she disclose her communications with her attorney regarding the preparation of her answers to the Plaintiff Fact Sheet other than to state that she did review both her handwritten draft and the answers that were typed into her signed and verified Plaintiff Fact Sheet.

> Q.     So when you signed this, you don't know if this signature was before or after you reviewed the typed copy?
>        MR. JOHNSON: Form objection. It's been asked and answered.
> Q.     You can answer.
> A.     After I reviewed it. I would not sign it before.
> Q.     Before you reviewed the -- the typed version?
> A.     I mean -- okay. I signed it that it was correct when I filled it out. I also signed afterwards.
> Q.     You also signed after you reviewed the typed copy?
> A.     I believe I did.[27]

### K. The Cook Defendants' Third Request for Production of Documents, Including Requests for Social Media Documents and Employment Records Are Not Relevant and Exceed the Scope of Permissible Discovery.

Demonstrated herein above, Defendants' are seeking to compel the Plaintiff to sign an authorization for employment records that do not exist and which are not relevant to any claim or defense. Ms. Hill did not have a part-time job teaching nurses after she left the VA in 2010. Plaintiff adopts and incorporates by reference all arguments and authorities contained in Section C, above as though fully set forth herein.

Plaintiff fully addresses the legal issues regarding the discovery of social media accounts in Section D, above, and hereby adopts and incorporates by reference all arguments and authorities

---

[27]     Exhibit "22", Deposition Testimony of Elizabeth Hill, 42/22 to 43/11.

contained in that Section as though fully set forth herein.  Social media is subject to discovery, it is only discoverable to the extent the discovery is adequately tailored satisfy the relevance standard. *Malhoit,* 285 F.R.D.at 570-571; *Cliff Viessman, Inc.,* 2016 U.S. Dist. LEXIS 28882 at *8 -*10.

Rather than properly tailor their initial request for social media information, the Cook Defendants' Third Request for Production is more intrusive.  The Defendants' are still asking for production of everything contained on her Facebook for more than two years and for production in the native format.

Here is the Defendants Request for production in its entirety:

**REQUEST NO. 5:** An electronic copy of your Facebook profile in native file format including wall or timeline posts, messages, events, places, devices used, information about sessions (available on the "security" file), photographs, and/or videos that relate to, refer to, or concern your travel to and from your vacation home in Tennessee, your travel of more than two hours away from your home, your relocation to Ft. Myers, your hobbies, your social activities, your claims against Cook, the Filter, vena cava filters generally, your medical conditions, your recovery, your alleged damages, or Cook from April 16, 2015, to present.

This request is every bit as overbroad as those addressed by the court in the *Malhoit,* case and is equally unenforceable. *Malhoite,* 285 F.R.D.at 571-573.  Defense counsel has already raised the issue of compelling Ms. Hill's Facebook in native file format in May, 2017, but no order was entered.  The Defendants requests are not tailored to relevant content only, therefore, the Motion to Compel should be denied. *Cliff Viessman, Inc.,* 2016 U.S. Dist. LEXIS 28882 at *10.

**L. Plaintiff Should Not Be Deemed to Have Waived Her Objections to the Defendants' Discovery Requests.**

As a preface to this section, the Plaintiff states to this Court that as soon as the Defendants have served properly narrowed discovery requests, limited to specific documents or a category of documents, the Plaintiff will promptly issue the appropriate responses and/or

documents and things. The Defendants have asserted that the Plaintiff has waived her objections to their discovery. Cook bases this assertion upon the fact that the Plaintiff's responses were served on October 12, 2016, not October 1, 2016. Cook also cites the absence of Plaintiff's privilege log.  October 1, 2016, was a Saturday. Monday, October 3, 2016, was the following week day. But for Plaintiff's calendaring error their discovery responses would have been served on October 3, 2016. It is important for this court to further consider that on or around September 28, 2016 Floridians, as well as the eastern coast of the United States were beginning to anticipate Hurricane Matthew. By October 1, 2016, Hurricane Matthew was a Category 5 storm. At this time gasoline, food, water, and adequate shelter became basic survival priorities with a limited supply. On October 4, 2016, Matthew made landfall in Haiti as a category 4 storm. On Thursday, October 6, 2016, Matthew made landfall in the Bahamas as a category 3-4 storm. On that same day, October 6, 2016, Shep Smith of Fox News declared that "If this storm moves twenty miles to the west, you are dead, everyone you know are dead… you cannot survive it…your kids die too." The local court house where Plaintiff's counsel is located was closed at least from October 5, 2016, through October 6, 2016. Despite the storm, Plaintiff served her answers as scheduled, albeit incorrectly, on Wednesday, October 12, 2016.

Plaintiffs have not produced a privilege log because the requested discovery is so overbroad that they cannot ascertain what the Defendant wants. An evaluation of the definitional language in the Defendant's requests, reveals these requests ask for "everything you have." For example, definition #1 of Defendants' First set of Interrogatories to Plaintiff Elizabeth Hill, Defendants' First Set of Requests For Production to Plaintiff Elizabeth Hill, and Defendants' Third Set of Requests For Production to Plaintiff Elizabeth Hill all state:

> "You," "your," "Hill," and "Plaintiff" means and refers to the Plaintiff, Elizabeth Hill, and includes her attorneys and representatives of any kind.

On its face, this generic language creates generic sweeping requests. The above's definitions and instructions invade protected communications, such as the attorney client privilege and work product privilege. Defendant's requests are so overbroad Plaintiff's compliance with this Court's Case Management Order #10 ("CMO #10") is impossible. Plaintiff's would be forced to define each and every privileged document they have. This type of improper request is not applicable to CMO #10 and was not contemplated by CMO #10. CMO #10 was proposed and stipulated upon a party making a proper discovery request that is limited in scope and relevant to the applicable claims and defenses. Plaintiff cannot comply with CMO #10 because the Defense's requests are so generic and broad that they do not allow the Plaintiff's compliance. Plaintiff restates her initial position that as soon as the Defendants have served properly narrowed discovery requests, limited to specific documents or a category of documents, the Plaintiff will promptly issue the appropriate responses and/or documents and things.

### L.1 Delay

The federal courts have made it clear that a delay in responding to discovery requests does not constitute an automatic waiver of objections. "The 'imposition of waiver of objections as sanction for untimely discovery responses is a harsh sanction, and, consequently is reserved for cases where the offending party was guilty of unjustified delay when responding to discovery.'" *Romary Associates, Inc.,[v. Kibbi LLC],* 1:10-CV-376, 2011 U.S. Dist. LEXIS 101539, 2011 WL 4005346 [at]  *3 [(N.D. Ind. Sept 8, 2011) (internal citations and quotation marks omitted)." *Ribik v. Peerless Indemnity Insurance Company*, 2:13-CV-154, 2014 U.S. Dist. LEXIS 88529 at *6-7 (N.D. Ind.  June 30, 2014).

In the *Ribik* case, the Plaintiff served the Defendant with her first set of Interrogatories and Request for Production on October 24, 2013 making the responses due on November 23, 2013. *Id.* at *2. The parties agreed to extend the response deadline to December 23, 2013 and on December 23, 2012 the Defendant filed and emergency motion with the Court resulting in an order giving the Defendant until January 13, 2014 to respond. *Id.* Another extension was agreed to by the parties giving the Defendant until January 20, 2014. *Id.* No further extensions were agreed to or ordered by the Court. In February of 2014, the Defendant changed counsel and the discovery responses were not served until March 6, 2014, after the plaintiff's motion had filed her motion to compel. *Id.* at *3-*4. The plaintiff argued that the Defendant had waived its objections because of its delay in responding to the discovery. The U.S. District Court Judge, acknowledging the harshness of such a result, disagreed:

> Defendant admits the delay, but contends that it had good cause, arguing that this dispute arose as the result of miscommunication between Plaintiff's counsel and Defendant's original counsel and between Defendant's original counsel and current counsel. The Court thinks that, though significant, Defendant's failures do not warrant the waiver of its objections, including objections on the basis of attorney-client privilege.

*Id.* at *6-*7.

In this case the Plaintiff's attorney's staff unintentionally recorded the wrong date for the response. This was a clerical error that resulted in an 11day delay in serving the response (which is nothing like the 5 ½ month delay experienced by the plaintiff in *Ribik*.) The Defendants have not asserted, and cannot demonstrate, that this inadvertent, very brief delay caused any prejudice or harm to the Defendants.

### L.2 Waiver of Privilege Due To The Absence Of A Privilege Log

The essential function of a privilege log is to identify the author of a document, provide a description of the document, the date the document was created, the recipient of the document,

and the specific privilege that party asserts attaches to the document. The Plaintiff concedes a privilege log was not created and cites to the reasons described in paragraph two section "L" of this response. However, the Plaintiff has asserted their objections to the relevant discovery requests.

This same Court, issued an Order addressing a similar issue in the case of *Joseph Simpson v. City of Indianapolis,* No. 1:13-cv-00791-RLY-TAB (S.D. Ind. 2015) on pageID 328 and 329 this Court states the following:

> While failing to produce a privilege log was a justifiable reason to support a finding of waiver, the Court is reluctant to find waiver on that basis alone. *See Am. Nat'l Bank & Trust Co. of Chicago v. Equitable Life Assurance Soc'y of U.S.,* 406 F.3d 867, 879 (7th Cir. 2005) (finding blanket waiver inappropriate for a privilege log absent a bad faith finding); *Muro v. Target Corp.,* 250 F.R.D. 350, 360 (N.D. Ill. 2007) ("Blanket waiver is not a favored remedy for technical inadequacies in a privilege log."). A privilege log serves an important purpose, providing opposing counsel and the Court the ability to evaluate the applicability of an asserted privilege. However, failure to produce a privilege log does not always demand a finding of waiver. *See Sann v. Mastrian,* No. 1:08-cv-1182-JMS-TAB, 2010 WL 4923900 (S.D. Ind. 2010). Directing the focus solely on Defendants' failure to timely produce a privilege log, the Court finds that under the circumstances of this case waiver is not appropriate. The emails at issue are communications between IMPD counsel and her client, which by their very nature are privileged—a fact acknowledged by the Court in its October 20 supplemental order. [Filing No. 62.] *See Jorling v. Anthem, Inc.,* No. 1:09-cv-0798-TWP-TAB, 2011 WL 3759189, at * (S.D. Ind. Aug. 25, 2011) (noting that the attorney-client privilege applies to communications between a client and his attorney that are intended to be confidential for the purpose of obtaining or providing legal advice).

In the case of *Bankers Sec. Ins. Co. v. Symons,* 889 So. 2d 93, 95 (Fla. 5th DCA 2004) the court states as follows:

> Attorney-client privilege and work-product immunity are important protections in the adversarial legal system, and any breach of these privileges can give one party an undue advantage over the other party. Florida's courts generally recognize that an implicit waiver of an important privilege as a sanction for a discovery violation should not be favored, but resorted to only when the violation is serious. *Cf. Liberty Mutual Insurance Co. v. Lease America*, Inc., 735 So.2d 560 (Fla. 4th DCA 1999) (the judiciary of this state should protect communications which Floridians recognize as privileged, without being hobbled by less important considerations);…

Florida Rule of Civil Procedure 1.280(b)(5) does not detail the procedure to follow for service of privilege logs and does not specifically address the appropriate sanction to be imposed if a party is tardy in filing a privilege log. Although a privilege log has not been provided in this case, Plaintiff reasserts its position above with relation to the sheer overbreadth of Defendant's requests. *See Magical Cruise Co. v. Dragovich*, 876 So. 2d 1281 (Fla. 5th DCA 2004), (Griffin, J., concurring). Finding an implied waiver of work product was an unduly harsh sanction given the facts of this case and not well supported by federal decisions applying the federal rule counterpart. In contrast to the federal cases relied on by TIG Insurance, there are many federal decisions that recognize the narrow reach of "implied waiver." For example, in *Boca Investerings Partnership v. United States*, 1998 WL 526567, 2 (D.D.C. Jan. 20, 1998), the defendant put forth the same argument made here: that a party responding to a request to produce waives any privilege or immunity if the privilege log is not supplied when the response is served. The judge rejected that argument, pointing out that no federal rule requires production of the log along with the response or dictates waiver as a sanction. The judge further observed cogently that the privilege log is a "means to an end and not an end in itself; the ultimate question is whether the documents are protected by the privilege." Id. at 3.1 *See Tyne v. Time Warner Entertainment Co., L.P.*, 212 F.R.D. 596 (M.D. Fla. 2002) (where privilege log was not filed until almost one year after discovery request, and did not sufficiently describe documents, federal court in interpreting federal discovery rule found that privilege log was untimely, but nevertheless declined to compel production, finding that sanction would be too harsh); *EEOC v. Safeway Store, Inc.*, 2002 WL 31947153 (N.D. Cal. Sept. 16, 2002) (the filing of a privilege log six months late would not constitute a waiver of the work-product claim, where defendant had already given plaintiff notice of the privilege claim, defendant produced a privilege log before the hearing on plaintiff's motion to compel, and there was no evidence that the delay prejudiced the plaintiff); *Anderson v. Hale*, 202 F.R.D. 548 (N.D. Ill. 2001) (previous notice of the work-product doctrine claim precluded the imposition of the waiver sanction).

In this case the Plaintiff has not acted in bad faith or sought to delay discovery. The Plaintiff asserted her objections, relevant privileges and attempted, in good faith, to comply with CMO #10. However, for the reasons stated in this section and its subparts the Plaintiff could not. The Plaintiff exercised her only and best option, to make the relevant objections without a privilege log. In light of the facts in this case, the case law described above, and the harshness of waiving the Plaintiff's asserted privileges, this court should deny the Defendant's motion seeking same.

///

26

///

///

## II.   CONCLUSION

Respectfully, Defendants have not and cannot met their burden as movants regarding any of issues for which it seeks such unbridled discovery. For these reasons, Defendant's Motion should be denied in its entirety.


Dated: July 20, 2017                             Respectfully Submitted,

                                                 */s/ Joseph N. Williams*
                                                 Joseph N. Williams, Atty. No. 25874-49
                                                 RILEY WILLIAMS & PIATT, LLC
                                                 301 Massachusetts Avenue
                                                 Indianapolis, IN 46204
                                                 Telephone: (317) 633-5270
                                                 Facsimile: (317) 426-3348
                                                 jwilliams@rwp-law.com

                                                 */s/ Joe Johnson*
                                                 Joe Johnson, Esq.
                                                 BABBITT & JOHNSON, P.A.
                                                 1641 Worthington Road, Suite 100
                                                 Post Office Box 4426 (33402-4426)
                                                 West Palm Beach, FL  33409
                                                 Telephone:  (561) 684-2500
                                                 Facsimile: (561) 684-6308
                                                 jjohnson@babbitt-johnson.com

                                                 *Attorneys for Plaintiff*


                                                 */s/ Michael W. Heaviside*
                                                 Michael W. Heaviside, Esq.
                                                 HEAVISIDE REED ZAIC, A LAW CORPORATION
                                                 910 17th Street NW, Suite 800
                                                 Washington, DC 20006
                                                 Telephone: (202) 233-1993
                                                 mheaviside@hrzlaw.com

/s/ Ben C. Martin
Ben C. Martin, Esq.
THE LAW OFFICE OF BEN C. MARTIN
3710 Rawlins Street, Suite 1230
Dallas, TX 75219
Telephone: (214) 761-6614
Facsimile: (214) 74407590
bmartin@bencmartin.com

/s/ David P. Matthews
David P. Matthews, Esq.
MATTHEW AND ASSOCIATES
2509 Sackett St.
Houston, TX 77098
Telephone: (713) 522-5250
Facsimile: (713) 535-7184
dmatthews@thematthewslawfirm.com

*Plaintiffs' Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2017, a copy of the foregoing was served electronically and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.

/s/ Joseph N. Williams
Joseph N. Williams