**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND                    Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION                                    MDL No. 2570

_____

This Document Relates to Plaintiff:
*Barbara Gettman, et al.*
Cause No. 1:17-cv-06064-RLY-TAB

_____

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT**
**OF THEIR MOTION TO DISMISS OR STRIKE CLASS ALLEGATIONS**

Plaintiffs' Complaint describes this case in one telling phrase: "Who should pay for the diagnosis and testing" they allegedly need? Am. Compl. ¶ 8.  Plaintiffs' own words illustrate why Plaintiffs cannot maintain a class action under Rule 23(b)(2)—which permits only claims for classwide injunctive relief, not for money damages or even non-injunctive, equitable relief.

Plaintiffs argue that their requested relief is CT scans or "information" about their implants, not money. But Plaintiffs do not want the Cook Defendants themselves to conduct CT scans or divulge information—as the Complaint indicates, they want Cook *to cover their costs* for these things. That is the kind of money damages that, after the Supreme Court's *Dukes* decision, precludes (b)(2) class certification. At a minimum, even if this relief has some equitable aspect, it still is not an injunction, as is required for a (b)(2) class. In addition, Plaintiffs request *individualized* "diagnosis and testing" for each class member. Even if it were injunctive, such individualized relief is not appropriate for a (b)(2) class.

Plaintiffs protest that they should be allowed discovery on class certification. But no amount of discovery can change what their own Complaint says this case is about: "Who should pay for the diagnosis and testing." Since that is what makes (b)(2) certification impossible, it is not necessary to wait for immaterial discovery to address a straightforward question of law.

In the end, the only non-compensatory action Plaintiffs want Cook to undertake is to send notice to their proposed class. That makes clear how Plaintiffs are trying to circumvent the requirements of Rule 23(b)(3). Under that rule, class notice would be sent and Plaintiffs would be free to demand that the Cook Defendants write the checks they request—but they would have to pay for class notice themselves, "as part of the ordinary burden of financing [their] own suit." *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 178-79 (U.S. 1974); Wright & Miller, *Federal Practice & Procedure* § 1788. Plaintiffs should not be able to shift that cost to the Cook Defendants by superficially repackaging their damages demands as injunctive relief. The class pleadings should be dismissed.

## I. Regardless Whether (b)(2) Medical-Monitoring Claims Are Ever Certifiable, This One Is Not.

The Cook Defendants' moving brief explained how Plaintiffs' requested medical-monitoring fund would amount to individualized damages awards, not the classwide injunctive relief required by Rule 23(b)(2). *See generally* ECF 4955. In response, Plaintiffs repeatedly—but wrongly—claim that the issue on this motion is whether "cases seeking medical monitoring are *never* appropriate for class certification" under Rule 23(b)(2). ECF 5257 at 1 (emphasis added).[1] That is indeed an open question after the Supreme Court's *Dukes* decision, but the Court need

---

[1] *See also id.* at 2 ("Cook asks this court to ... establish ... a *per se* bar to class certification of medical monitoring claims under Rule 23(b)(2)."), 9 ("Cook presses this Court for a broad ruling that medical monitoring cases can never be classified as injunctive relief for purposes of Rule 23(b)(2).").

not address that question to hold that *this* (b)(2) class cannot be certified. As the Cook Defendants have explained, a considerably narrower rule disposes of these class claims: a medical-monitoring case that is exclusively about "Who should pay for [individualized medical] diagnosis and testing" is fundamentally unsuited for (b)(2) class treatment.

The basic points are not disputed by the parties and are widely reflected in the caselaw. *First,* medical-monitoring remedies can include a mix of both damages and injunctive elements. *See* ECF 4955 at 6-8 (collecting many cases). *Second*, even before *Dukes*, the courts recognized that the damages component of a medical-monitoring remedy was not independently suitable for (b)(2) class certification. ECF 4955 at 9-11. Some courts were willing to certify (b)(2) medical-monitoring classes if they found that injunctive elements of medical monitoring were present and "predominated over" the damages component, but every time such an approval by a District Court has come before a Court of Appeals it has been rejected. ECF 4955 at 10-11. *Third*, after *Dukes* it does not matter anymore whether injunctive relief "predominates:" no (b)(2) class can be certified if *any* of the requested relief is individual damages awards. ECF 4955 at 11-12; *see Dukes*, 564 U.S. at 364-65. And *fourth*, *Dukes* also established that even purely injunctive claims are not suitable for class treatment if each class member would be entitled to individualized injunctive relief. ECF 4955 at 13-14.

In other words, *Dukes* prohibits (b)(2) certification of a medical-monitoring class unless the class seeks *only* injunctive forms of relief, and entirely eschews damages (and other non-injunctive relief). Even then, certification is possible only if all class members would receive *the same* monitoring, with no individual customization. As the Third Circuit recognized in *Gates v. Rohm and Hass*, it is an open question whether medical-monitoring relief can *ever* be uniformly and exclusively injunctive, so as to permit (b)(2) certification post-*Dukes*. 655 F.3d 255, 263 (3d

Cir. 2011). But the Court need not tackle that question here. Whether or not it is theoretically possible to request purely injunctive, classwide medical-monitoring relief, Plaintiffs have not done so in this case.

### A. Plaintiffs' Claim About "Who Should Pay" Does Not Permit A (b)(2) Class.

The Cook Defendants have explained the rule that emerges from the caselaw for how to determine whether medical monitoring relief is damages. ECF 4955 at 9-10. If plaintiffs simply ask that the defendant pay money to cover diagnostic costs that the plaintiffs otherwise would have to pay themselves: that is damages. *Id.* That is true whether the payment would go to the plaintiffs, or directly to their doctors or other care providers. *Id.* On the other hand, if plaintiffs want the defendant to set up a research or information-sharing program that they could not individually purchase, or to develop new methods of diagnosis that would not otherwise be available, that may be injunctive relief. *Id.*

What dooms Plaintiffs' (b)(2) class pleadings, without the need for any discovery on the issue, is that their requested relief falls squarely on the money-damages side of this line and even if it does request some equitable relief that relief is not injunctive in nature. *Id.* at 12

### 1. Plaintiffs Do Not Seek Any Injunctive Relief.

Far from seeking exclusively class wide injunctive relief, Plaintiffs' proposed medical-monitoring remedy has no injunctive component at all. If anything, Plaintiffs' response brief defines the relief they request even more narrowly than their Complaint did: they want the Cook Defendants to pay for (i) class notice, (ii) a medical CT scan for each class member who chooses to undergo it, and (iii) individualized analysis of each scan result by a radiologist.

US.112658132.02

ECF 5257 at 1, 3-4, 6-8.[2] This program would require thousands of separate payments, made to hundreds or thousands of different clinics and doctors, for each class member who chooses to participate. The Cook Defendants therefore accurately describe it as individualized money payments for customized courses of diagnostic medical care. Plaintiffs stress that some class members will need *more* doctor visits after this process, and that they are not (here) trying to get the Cook Defendants to pay for those. ECF 5257 at 4, 6-7. But that does not change the nature of the relief they *are* seeking.

Plaintiffs mistakenly suggest that what they want from the Cook Defendants is a "scan of their filters," or "information." ECF 5257 at 1. The Cook Defendants do not operate clinics with CT scanners (nor do Plaintiffs want them to), and they do not possess the clinical information that Plaintiffs seek (nor do Plaintiffs claim they do). Instead, Plaintiffs simply want the Cook Defendants to cover the cost of doing the scans and generating the information. To be sure, complying with an injunction usually costs money, but that does not mean—as Plaintiffs apparently argue—that any order to pay money is also an injunction.

Plaintiffs repeatedly, but irrelevantly, stress that they want the Cook Defendants to write checks to clinics and doctors, not directly to the proposed class members. ECF 5257 at 1, 4, 6. Plaintiffs seem to think that, even if a judgment simply orders a defendant to pay money, it must be an injunction if the payment is not directly to the claimant. The caselaw says otherwise. As the Cook Defendants' moving brief explained, the compensable harm in medical-monitoring claims is the *monetary cost* of diagnostic medical treatment, which a plaintiff otherwise would have to bear himself. ECF 4955 at 6 & nn.8-9. The D.C. Circuit case cited by Plaintiffs

---

[2] If the Court were inclined to deny the Cook Defendants' motion based on Plaintiffs' representations in their briefing about the nature of the relief they seek, Plaintiffs should be required to amend their complaint to incorporate those limits on their relief.

-5-

reinforces the point: when a defendant "caused the plaintiff" to bear "a cost" for "specific medical services," a medical-monitoring claim recognizes that the defendant "should pay." *Friends for All Children, Inc. v. Lockheed Aircraft Corp.*, 746 F.2d 816, 825 (D.C. Cir. 1984). Sometimes the plaintiff has already paid the doctor and seeks reimbursement; other times she wants the defendant to pay the doctor directly. But in either situation, the money is a damages remedy. *See* ECF 4955 at 6-8. To be injunctive relief, a medical monitoring program must go beyond this kind of compensation.

The other medical-monitoring cases that Plaintiffs cite demonstrate this principle. In *Donovan v. Philip Morris USA, Inc.*, the court specifically stated that "if a medical test is easily accessible and can be purchased, damages will suffice." 268 F.R.D. 1, 26 (D. Mass. 2010). It found injunctive medical-monitoring relief to be appropriate only because the plaintiffs sought such rare diagnostic treatments that "[c]lass members could not purchase the monitoring regime on their own even if they received a lump sum award." *Id.* at 6. As a result, the only way for plaintiffs to get the care they sought was to create a new monitoring program from the ground up—a program that itself would "hire medical and administrative personnel, purchase equipment, and establish procedures for intake, informed consent, record keeping, and so on." *Id.* at 22. It was on that basis that the court found injunctive relief appropriate.

Similarly, *In re NLO*, *Inc.*, the district court explained that if "a court ... order[s] the defendants to pay the plaintiffs' medical expenses directly so that a plaintiff may be monitored by the physician of his choice," that does *not* "constitute injunctive relief as required by rule 23(b)(2)." 144 F.R.D. 330, 336 (S.D. Ohio 1992). Instead, relief may have an injunctive component only if the court "establish[es] an elaborate medical monitoring program of its own, managed by court-appointed court-supervised trustees, pursuant to which a plaintiff is monitored

by particular physicians and the medical data produced utilized for group studies," and if the defendant is "required by the court to address issues as they develop during program administration." *Id.* So Plaintiffs get no help from their citation to the ensuing Sixth Circuit opinion, which merely held that this ruling was "not so clearly erroneous ... that mandamus is the proper remedy." 5 F.3d 154, 159-60 (6th Cir. 1993). Others of Plaintiffs' cited cases also appear to involve elaborate medical-monitoring programs including specific doctors and group studies.[3]

Plaintiffs here do not even seek relief like that in these pre-*Dukes* cases. The diagnostic care they seek is precisely the type that they could obtain on their own. Plaintiffs do not allege that CT scans or radiology analyses are somehow unavailable to them. They do state that "no single individual would or could sue Cook to establish a [medical monitoring] program on an individual basis," ECF 5257 but that refutes itself: individual claimants certainly could sue Cook for the cost of *their own individual* diagnostic treatment, and that is all that Plaintiffs seek to recover for the class. Similarly, Plaintiffs do not request any kind of research or information-sharing program,[4] and do not ask that the "fund" hire its own doctors, buy its own equipment, or develop its own treatment protocols. They just want the Court to supervise payments to

---

[3] *See In re Welding Fume Prods. Liab. Litig.*, 245 FRD 279, 290 (N.D. Ohio 2007)*; Elliott v. Chicago Housing Authority* 2000 WL 263730 *14-15 (N.D. Ill Feb. 28, 2000) (recognizing pre-*Dukes* "split in the case law" about (b)(2) certification of even this kind of medical-monitoring classes). The other case plaintiffs cite is nearly 20 years old and includes little analysis. *See In re Diet Drugs Prods. Liab. Litig.*, 1999 WL 673066, , *6 *9-10 (E.D. Pa. Aug. 26, 1999). Most importantly, it is from a district court in the Third Circuit, where the Court of Appeals has more recently "question[ed] whether the kind of medical monitoring sought here can be certified under Rule 23(b)(2)" following *Dukes*. *Gates v. Rohm & Haas Co.*, 655 F.3d 255, 263 (3d Cir. 2011).
[4] Plaintiffs state in passing that "the protocol [they request] aims to reduce complications by aiding in the detection and remediation of any malfunction and also generally provides awareness of the issue so it can be investigated. ECF 5257 at 13 (citing Compl. ¶ 77.) But of course, "aiding the detection and remediation of" an alleged problem is simple diagnosis, not research or information sharing. And Plaintiffs' proposed CT scans and radiology analyses would not "generally provide awareness of the issue;" they would simply provide diagnostic information to the individuals who were scanned.

US.112658132.02

thousands of *different* clinics and doctors, who would individually decide how to administer the CT scans and conduct the radiology analyses that Plaintiffs want. So even without considering *Dukes*, Plaintiffs have failed to plead the requirements for a (b)(2) class.

### 2. Plaintiffs Certainly Have Not Pleaded A Claim For *Exclusively* Injunctive Relief.

After *Dukes*, there is even less doubt on that point. The Cook Defendants have explained that previously, some district courts would certify (b)(2) classes if they thought injunctive components of a medical-monitoring remedy "predominated" over non-injunctive elements. ECF 4955 at 10-11. Plaintiffs have not made that showing, but even if they had, *Dukes* makes clear it is not enough: *any* individual non-injunctive component forecloses a (b)(2) class. As just explained, Plaintiffs' proposed fund unquestionably includes such components.

The two treatise sections that Plaintiffs rely on are obsolete, as they reflect pre-*Dukes* law. Plaintiffs cite a section from the Manual for Complex Litigation (published in 2004) that has not been updated to reflect *Dukes*. ECF 5257 at 10-11. It states that the "key question is whether the *primary* type of relief plaintiffs seek is for money damages," and that "the choice" between Rule (b)(2) and (b)(3) "revolves around whether the complaint is seeking *predominantly* money damages or equitable relief." Manual for Complex Litigation, § 22.74 (emphases added). That was the rule (in some Circuits) before *Dukes*, but it is not now. Only under that obsolete standard does the Manual say "a court-supervised program for periodic medical examination and research" may qualify for (b)(2) certification. *Id.* Similarly, *Newberg on Class Actions* § 4.45 discusses pre-*Dukes* caselaw almost exclusively. *See* ECF 5257 at 11 n.5.

Finally, even if there were some doubt whether the fund Plaintiffs request might be "equitable relief" in some way, that would not permit a (b)(2) class. As the Supreme Court made clear in *Dukes*, "the Rule does not speak of 'equitable' remedies generally but of injunctions and

declaratory judgments." *Dukes*, 564 U.S. at 365. A court may have the equitable power to order a defendant to pay money—such as the backpay requested by the *Dukes* plaintiffs, or restitution, or perhaps some kind of equitable fund—but that does not make such an order *an injunction*. And only a request for a full-fledged injunction will satisfy Rule 23(b)(2). *See Dukes*, 564 U.S. at 365 (it was "irrelevant" that "a backpay award is equitable in nature," because it is still not an injunction). Even on the most generous interpretation, Plaintiffs' requested money fund does not qualify. Their class pleadings therefore must be dismissed.

**B.  Even if Plaintiffs' Requested Relief was Injunctive, it is too Individualized.**

For similar reasons, Plaintiffs' "see-your-own-doctor" version of a medical monitoring fund cannot be the *classwide* injunctive relief required under Rule 23(b)(2). *See* ECF 4955 at 12-16. Even in medical-monitoring programs where all class members go to the same doctors, it is likely that individualized decisions—by class members about whether to even participate, and by the doctors about how to diagnose each unique patient—will swamp the possibility that any injunction could be classwide. *Id.* That is certainly true here. Plaintiffs' requested relief would not benefit any class member unless the class member learned about it and chose to participate in the program. Moreover, it would not just make the defendants hire a few doctors and buy certain medical equipment, but would make them pay *thousands* of different medical professionals to conduct and analyze CT scans as those professionals saw fit. That cannot possibly be an injunction "respecting the class as a whole" as the Rule requires.

Plaintiffs badly misread the Cook Defendants' brief as conceding that "if even one plaintiff wins the requested injunction, all the proposed class will be affected whether or not they have opted out." ECF 5257 at 18. That is what is required for (b)(2) certification, but as the Cook Defendants explained (ECF 4955 at 13-14), the situation here is exactly the opposite. Even

US.112658132.02

if Plaintiffs' requested program were implemented, it would have no effect at all on class members who (for whatever reason) do not seek any treatment under it. *Id.* at 14-15. This contrasts sharply with the paradigm (b)(2) class relief, which ends a defendant's legally-prohibited policy or implements a legally-required one. *Id.*

## II. The Nature Of The Requested Relief Is Determined By The Pleadings, Not By Discovery.

Lacking any good argument on the merits, Plaintiffs ask the Court to put off class-certification issues until after discovery. ECF 5257 at 1-2, 4-6, 12-15. That is inconsistent with Plaintiffs' argument that the relief they seek is simple and clear. And indeed, Plaintiffs fail to explain how discovery would change (or even illuminate) the pertinent issues. The Court should not allow Plaintiffs to engage in irrelevant discovery as a mere stalling tactic.

The Seventh Circuit has explained that in some cases "appropriate discovery" is needed "before deciding whether to certify a class," but in other cases discovery is "unnecessary to resolve class issues." *Damasco v. Clearwire Corp.*, 662 F.3d 891, 897 (7th Cir. 2011).[5] The Cook Defendants' opening brief explained how the courts tell the difference: the question is whether plaintiffs have pleaded enough to make it "plausible that [they] will be able to satisfy the Rule 23 requirements after conducting discovery." *Ladik v. Wal-Mart Stores, Inc.*, 291 F.R.D. 263, 269 (W.D. Wis. 2013); *see* ECF 4955 at 4 (quoting several other cases). The cases Plaintiffs cite agree with this standard. One of them explains that "[m]otions to strike class allegations are

---

[5] *Damasco* suggested that plaintiffs move to certify a class at the very beginning of the case, to avoid attempts by the defendant to moot the case by "offer[ing] to satisfy the [named] plaintiff's entire demand." *Id.* at 895, 896. The court suggested that such an early certification motion should be stayed if discovery was needed to decide it. *Id.* at 896-97. *Damasco* has since been overruled—an unaccepted offer of judgment does not moot a case, *Chapman v. First Index, Inc.*, 796 F.3d 783, 787 (7th Cir. 2015); *Campbell-Ewald Co. v. Gomez*, 135 S.Ct. 663 (2016)—but it remains true that some class-certification motions require discovery, while others can be decided on the pleadings.

disfavored," but only in the same way that 12(b)(6) motions to dismiss face a higher burden than post-discovery summary-judgment motions: denying class certification on the pleadings is "appropriate where it is clear from the pleadings that the class claims are defective" and "that no class action can be maintained." *Brown v. Swagway, LLC*, 2017 WL 899949, *1 (N.D. Ind. Mar. 7, 2017). Another of Plaintiffs' cases confirms that "[a] motion to strike class allegations under Rule 23 is an appropriate device to determine whether the case will proceed as a class action." *Rysewyk v. Sears Hldgs. Corp.*, 2015 WL 9259886, *1 (N.D. Ill. Dec. 18, 2015).[6]

Such motions are frequently granted. The Cook Defendants' moving brief cited more than a dozen cases from this Circuit alone in which class allegations were stricken. Plaintiffs object that the motion does not identify cases striking *medical monitoring* class allegations, ECF 5257 at 6, but they are wrong. *In re Yasmin & Yaz Marketing*, the plaintiffs sought medical monitoring on behalf of a class, and Chief Judge Herndon struck the class allegations, specifically rejecting the plaintiffs' contention that doing so was "premature." 275 F.R.D. 270, 273-74 (S.D. Ill. 2011). Of course, the Supreme Court decided *Dukes* only a few years ago, so the courts have not yet applied its specific rule in striking a (b)(2) medical-monitoring claim. But both before and after *Dukes*, many courts have stricken (b)(2) class allegations on the ground that they did not seek classwide injunctive relief.[7] Plaintiffs give no reason to think that medical monitoring claims should somehow be immune from that analysis.

---

[6] Plaintiffs also cite *Boatwright v. Walgreen Co.*, which appears to conclude that Rule 23(d) "does not provide the Court with a basis to strike class allegations" on the pleadings. 2011 WL 843898, *2 (N.D. Ill. Mar. 4, 2011). *Boatwright* cannot be read broadly as guaranteeing discovery for every plaintiff who pleads any class allegations; that would conflict with the widespread consensus of the decisions the Cook Defendants cited in their opening brief.

[7] *E.g.*, *Paternostro v. Choice Hotel Int'l Servs. Corp.*, 309 F.R.D. 397, 403 (E.D. La. 2015) (striking (b)(2) class allegations where plaintiffs' "ultimate goal [was] the recovery of individual monetary damages" and "[t]he declaratory judgment sought does not provide relief to each member of the class"); *Stanley v. Cent. Garden & Pet Corp.*, 891 F. Supp. 2d 757, 770-71 (D. Md. 2012) (striking (b)(2) class allegations "for individualized monetary damages" that "belong in Rule 23(b)(3)";

-11-

And Plaintiffs' other arguments confirm that they have failed to plead a viable (b)(2) class. As the Cook Defendants have explained, the nature of the relief Plaintiffs seek precludes class certification. In response, Plaintiffs do not argue that discovery will clarify the nature of their requested relief or resolve any dispute about it. Instead they ask for merits discovery: "to develop the facts that *justify* the injunctive relief they seek," ECF 5257 at 1 (emphasis added), by showing an "increased risk of disease or injury [from] exposure to [a] dangerous substance or product," *id.* at 5, and "that the proposed diagnostic test is one that a reasonable physician would order." *Id*. This is not responsive to the Cook Defendants' arguments. The Cook Defendants do not (at this stage) contend that class certification must be denied because some putative class members may not have been exposed to Cook filters. Nor do they question (on this motion) that Plaintiffs have pleaded that such exposure increased their risk of injury. And the Cook Defendants do not argue that CT scans are *per se* medically unreasonable. They are simply pointing out that *Plaintiffs' own pleadings* clearly request individualized money damages, not the classwide injunctive relief needed for a (b)(2) class. No amount of discovery will change that.

Plaintiffs nevertheless insist it is "a factual issue" whether "the proposed monitoring program can and will apply to all Class members." ECF 5257 at 14-15. That argument does not address the other fatal problem with their proposed relief: that it involves individualized money damages. But it also is wrong on its own terms, for two reasons. First, a monitoring program definitely will not apply to any class member who chooses not to participate. That will not change with discovery. And second, "the proposed monitoring program" itself will involve so much variation that no matter who it applies to, it simply does not qualify as classwide relief. On any fair reading of the Complaint, Plaintiffs are requesting a remedy that would involve

---

*Robinson v. Wal-Mart Stores, Inc.*, 253 F.R.D. 396, 401-02 (S.D. Miss. 2008); *In re Aiello*, 231 B.R. 693, 715 (Bkrtcy. N.D. Ill. 1999).

thousands of class members receiving diagnostic care from hundreds of different professionals, varying according to the professionals' judgment and the class members' health histories. The follow-up radiological analyses would be conducted by hundreds or thousands more doctors, again each applying his or her unique judgment and insights. Plaintiffs assume without justification that all of these individual variations will wind up being immaterial, leaving a uniform course of diagnostic treatment. That will not do. To generate a fact issue, it was Plaintiffs' burden to plead facts that make it not just "conceivable" but "plausible" that a uniform course of treatment would apply to all class members. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (U.S. 2007). They have failed to do so.

## III. Any Attempt To Litigate A 23(b)(3) Class Action Will Face Other Obstacles.

As a last resort, Plaintiffs ask leave to plead the 23(b)(3) class they should have started out with. ECF 5257 at 17-18. They are wrong, however, to claim that "[t]he only difference between a Rule 23(b)(2) and Rule 23(b)(3) class will be the addition of an opt-out period." *Id.* at 17.[8] Several other important differences would arise. As noted, a 23(b)(3) action would properly require Plaintiffs to bear the cost of class notice. *See supra* 2. And to obtain certification, Plaintiffs also would have to prove that common questions predominate over individual issues,

---

[8] Plaintiffs wrongly claim there is no purpose in allowing medical-monitoring class members to opt out. *See* ECF 5257 at 17-18. In the cases Plaintiffs rely on, the classes sought monitoring programs that class members could not have obtained individually—either the class would obtain the monitoring program, or else no one would. *See Day v. NLO*, 851 F. Supp. 869, 885 (S.D. Ohio 1994) (contemplating that the entire class would be "monitored by particular physicians and the medical data produced utilized for group studies"); *Donovan*, 268 F.R.D. at 5 ("Class members could not purchase the [requested] monitoring regime on their own even if they received a lump sum award.") . That is not true here. As the Cook defendants have explained, opt-outs plainly could obtain their own CT scans and radiology analyses, and then file individual suits to recover those costs. *See supra* 4. So opting out certainly would have a purpose. And Rule 23(b)(3) proceedings no doubt would reveal further reasons why some class members might have weaker (or stronger) claims than others, and therefore might not want to throw in their lot with the class.

US.112658132.02

"and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Cook Defendants do not believe Plaintiffs can make those showings—especially given the inherent individual issues involved in alleged medical-injury cases, and given that an MDL already exists to achieve the efficiencies of common discovery. The Cook Defendants will vigorously contest those issues if the Court were inclined to allow Plaintiffs to try to convert to a Rule 23(b)(3) class.

## CONCLUSION

Plaintiffs' proposed 23(b)(2) class is not viable as a matter of law. The Court should so hold, and should order Plaintiffs to re-file an amended complaint that does not seek (b)(2) class certification.

Respectfully submitted,

Dated: July 21, 2017

/s/ John T. Schlafer
Andrea Roberts Pierson (# 18435-49)
John T. Schlafer (# 28771-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-Mail:  john.schlafer@faegrebd.com

*Counsel for Cook Defendants*

-14-

US.112658132.02

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 21, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

<u>/s/ John T. Schlafer</u>

US.112658132.02