**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |
| This Document Relates to All Actions | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
DEFENDANTS' OBJECTIONS TO AND APPEAL FROM ORDER DENYING
DEFENDANTS' MOTION FOR PROTECTIVE ORDER
BARRING PROPOSED DEPOSITION OF KEM HAWKINS**

Defendants Cook Incorporated, Cook Medical LLC and William Cook Europe ApS's (collectively "Cook" or Defendants) motion seeking a protective order to bar the more than two thousand plaintiffs in this MDL from taking a single deposition of Kem Hawkins, the former President of Cook Group Inc., was properly denied by Magistrate Judge Jim A. Baker because Defendants failed to meet their burden of demonstrating good cause for the entry of a protective order. The law regarding "apex depositions" is inapposite because Mr. Hawkins is retired, and because that doctrine has little relevance in an MDL where the claims of thousands of plaintiffs are at issue. Most importantly, documents produced in this litigation demonstrate that Mr. Hawkins has unique personal knowledge because, as the Magistrate found after reviewing the documents submitted by Plaintiffs, "Hawkins was involved in the decision-making process and strategy regarding testing, design, marketing, and production of these filters." Order on Defendants' Motion for Protective Order ("Order"), June 30, 2017, Dkt. 5277 at p. 2. The Magistrate also found that Mr. Hawkins is a better source for the information Plaintiffs seek via this deposition because, unlike the employees who have already been deposed, Hawkins was

1

involved in "high-level decisions and strategic thinking surrounding the filters at issue." Order, Dkt. 5277 at p. 2-3. Because Magistrate Judge Baker's Order is not clearly erroneous or contrary to law, Plaintiffs ask the Court to overrule Defendants' objections to the Magistrate's Order and allow Plaintiffs to take Mr. Hawkins' deposition by a date certain.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72(a), a district court may modify or set aside a Magistrate's order on a nondispositive matter such as this discovery dispute only if it is clearly erroneous or contrary to law. *Banks v. Enova Fin.*, No. 10 C 4060, 2012 WL 5995729, at *2 (N.D. Ill. Nov. 30, 2012). Under the clear error standard, the district court may overturn a magistrate judge's determination only if the district court "is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 943 (7th Cir. 1997). "In general, a magistrate judge's choice between two permissible views of the facts will not meet the clearly erroneous standard." *Banks*, 2012 WL 5995729, at *2 (N.D. Ill. Nov. 30, 2012).

## FACTUAL BACKGROUND DEMONSTRATING THE MAGISTRATE'S ORDER IS NOT CLEARLY ERRONEOUS

Kem Hawkins was the President of Defendant Cook Incorporated from 2001 to 2013,[1] a critical time period in this case, during which both the Gunther Tulip and Celect filters were manufactured and sold in the United States. Hawkins Decl., Dkt. 5379-1, ¶¶ 2-4. Defendants concede that Mr. Hawkins was involved in high-level decisions concerning these filters. Hawkins Decl., Dkt. 5379-1, ¶ 4; Defs.' Objections, Dkt. 5379, at 3, 4, 11. Plaintiffs seek Mr.

---

[1] Mr. Hawkins was also President of Cook Group Incorporated from 2001 through July 2015 and President of Cook Medical Incorporated from 2003 through November 2013. Exhibit A to Defs.' Objections, Dkt. 5379-1, Declaration of Kem Hawkins ("Hawkins Decl.") ¶¶ 2-3.

Hawkin's deposition in order to ask questions regarding the strategic thinking behind those high level decisions – decisions that Plaintiffs contend caused them to suffer serious personal injuries.

Cook complains at length that Plaintiffs have not identified what information they seek from Mr. Hawkins, but Plaintiffs have explained that they want to ask questions regarding the documents sent to and from Mr. Hawkins regarding the IVC filters at issue in this case. As Magistrate Baker found, those documents reveal that Mr. Hawkins, in his role as the President of Cook, was involved in the decision-making process and strategy regarding critical issues in this case, including decisions regarding the testing, design, marketing and production of the Gunther Tulip and Celect filters. Order, Dkt. 5277 at p. 2-3. For example:

- Mr. Hawkins gave directives to his subordinates regarding the Celect and Gunther Tulip filter sales and marketing strategy. *E.g.*, Ex. 1, CookMDL2570_0694848 (Mr. Hawkins wrote: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

- Mr. Hawkins was present at key meetings to discuss regulatory strategies and the need (or lack thereof) for clinical testing of the Celect filter for marketing clearance, and followed up with directives to his subordinates after these meetings. *E.g.*, Ex. 2, CookMDL2570_0696036 (Mr. Hawkins directed: ▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓ in an email with the subject line ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓; Ex. 3, CookMDL2570_0695962 (Mr. Hawkins wrote in a memo to his subordinates: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓ Mr. Hawkins sent these communications the day of and the day after an IVC Filter Executive Committee meeting that he attended where the discussion included the need to enter the market with the Celect as soon as possible to keep sales growing, and the fact that Cook had experienced significant delays introducing the Celect filter ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Ex. 4, CookMDL2570_1274449.

- Mr. Hawkins was being kept abreast of developments regarding adverse events and was involved in damage control related to Cook's filters. *E.g.*, Ex. 5, CookMDL2570_0427903 (Mr. Hawkins wrote in response to a review of data regarding Celect's tendency to perforate the IVC: ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See also* Ex. 6, CookMDL2570_0300302-03 (Mr. Hawkins was sent

3

▪ ███ Ex. 7, CookMDL2570_0850270-71 (Mr. Hawkins requested, was sent, and forwarded to others ███).

- Mr. Hawkins provided direction to the engineering and design team. *E.g.*, Ex. 8, CookMDL2570_0832537 (translated PowerPoint with slide stating: ███).

- Mr. Hawkins was aware of problems with the design of the Celect filter, ███ Ex. 9, CookMDL2570_0835644.

- Mr. Hawkins directed his subordinates regarding design, marketing and sales strategies relating to the Gunther Tulip and Celect filters. For example, he wrote to Rob Lyles: ███ Ex. 10, CookMDL2570_0433348.

Magistrate Baker correctly found that while lower-level employees may be able to answer questions about what happened regarding the subjects discussed above, Mr. Hawkins, as President of the company, is the better source to answer questions regarding the strategic thinking behind *why* these decisions were made. Order, Dkt. 5277, at p. 2-3.

Cook argues that Mr. Hawkins could not possibly have relevant knowledge because the Gunther Tulip and Celect filters are "just two of some 16,000 products produced under the Cook umbrella." Defs.' Objections, Dkt. 5379, at 9. However, as of December 2000, the Gunther Tulip filter was "███"[2] which would appear to render it worthy of Mr. Hawkins' time and attention.

Cook argues that Plaintiffs' statement that they plan to question Mr. Hawkins about documents not yet produced is "wholly speculative." Defs.' Objections, Dkt. 5379, at 12. It

---

[2] Ex. 11, CookMDL2570_0731664_native.pdf (Dec. 14, 2000).

4

appears that Mr. Hawkins communicated on a regular basis via his personal *aol.com* account. *E.g.*, Exs. 1, 2, 5, 6, 7, 9, 10. Along with the deposition notice, Plaintiffs served a subpoena on Mr. Hawkins (a third party) for production of documents. In addition to seeking production of those documents, Plaintiffs seek to ask Mr. Hawkins questions about his personal email account, for what purpose he used it, whether it has been preserved, and whether it has been searched for responsive documents. It seems reasonable to conclude, as the Magistrate did, that Mr. Hawkins has relevant, unique and superior knowledge regarding his own *aol.com* account and its current status. Order, Dkt. 5277, at p. 3.

**ARGUMENT**

I. **THE MAGISTRATE CORRECTLY FOUND THAT COOK HAS THE BURDEN OF DEMONSTRATING GOOD CAUSE.**

Cook, as the party seeking a protective order to prevent Kem Hawkins' deposition, has the burden "to demonstrate that good cause exists for the entry of the order by making a 'particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *In re Pradaxa Prod. Liab. Litig.*, No. 3:12-md-02385-DRH-SCW, 2014 WL 257566, at *1 (S.D. Ill. Jan. 23, 2014) (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)). As this court has previously held, this burden does *not* shift to Plaintiffs just because Mr. Hawkins is a former corporate executive. *Meharg v. I-Flow Corp.*, No. 1:08-cv-0184-DFH-TAB, 2009 WL 1404603, at *1 (S.D. Ind. May 15, 2009) (noting that "I-Flow assumes because Earhart is President and Chief Executive Officer the burden automatically shifts to Plaintiffs to demonstrate that a deposition of Earhart is justified," but holding that "the burden remains on I-Flow to demonstrate that a protective order is warranted"). *See also Hunt v. Continental Cas. Co.*, No. 13-cv-05966-HSG, 2015 WL 1518067, at *1 n.1 (N.D. Ca. April 3, 2015) ("the burden

5

remains on the party seeking a protective order when the 'apex doctrine' is asserted as a basis for limiting discovery.").

Cook invokes the "apex doctrine" in an attempt to shield Mr. Hawkins from deposition, but, as Magistrate Baker noted, "high-ranking corporate executives are not immune from being deposed." Order, Dkt. 5277 at 2 (citing *In re Pradaxa Prod. Liab. Litig.*, 2014 WL 257566, at *1 ("[t]here is no *per se* rule prohibiting the depositions of high-ranking corporate executives.")). Rather, "[b]efore restricting discovery, the court should consider 'the totality of the circumstances, weighing the value of the material sought against the burden of providing it,' and taking into account society's interest in furthering 'the truthseeking function' in the particular case before the court." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676 (7th Cir. 2002) (quoting *Rowlin v. Alabama Dep't of Pub. Safety*, 200 F.R.D. 459, 461 (M.D. Ala. 2001)). As the Magistrate held, "[e]ven under this [apex] standard, Hawkins would not be protected from a deposition absent good cause." Order, Dkt. 5277, at p. 2. The totality of the circumstances here weighs in favor of allowing Mr. Hawkins' deposition to proceed.

## II. THE MAGISTRATE CORRECTLY HELD THAT THE APEX DOCTRINE DOES NOT SHIELD HAWKINS FROM BEING DEPOSED IN THIS MDL.

In considering the totality of the circumstances, this court has been unwilling to apply the apex doctrine in the context of an MDL. *In re Bridgestone/Firestone, Inc., Tires Prod. Liab. Litig.*, 205 F.R.D. 535, 536 (S.D. Ind. 2002) (allowing plaintiffs in an MDL to depose William Clay Ford, Jr., Chairman of the Board of Ford Motor Company). This court in *Bridgestone/Firestone* explained:

> Second, the plaintiffs seek to depose Mr. Ford, not for purposes of a single personal injury case, but to depose him once for all of the hundreds of personal injury cases pending in the MDL, the MDL class action, and many state court cases. . . . It seems to us that the coordinated deposition procedures outlined by Magistrate Judge Shields will serve to discourage numerous, repetitive, harassing, or abusive depositions of Mr. Ford.

*Id.* Just like in *Bridgestone/Firestone,* the coordinated deposition procedures in this Court allow a single deposition of Mr. Hawkins to proceed on behalf of thousands of plaintiffs and will prevent "numerous, repetitive, harassing or abusive depositions."

"Because an MDL consolidates discovery for a large number of cases, the concerns underlying the apex doctrine are lessened in the MDL context." *In re Lipitor Marketing, Sales Practices and Prod. Liab. Litig.*, MDL No. 2:14-mn-02502-RMG, 2014 WL 12621613, at *2 (D. S.C. Nov. 13, 2014) (allowing deposition of former Chief Medical Officer, noting he "will be deposed once for use in the approximately 1,300 cases involving approximately 4,000 plaintiffs in this MDL"). *See also In re Mentor Corp. Obtape Transobturator Sling Prod. Liab. Litig.*, No. 4:08-MD-2004(CDL), 2009 WL 4730321, at *2 (M.D. Ga. Dec. 1, 2009) (allowing depositions of defendant's World Wide President and of its founder and CEO in part because the depositions "are not for purposes of a single personal injury case – they are to be used in every case pending in this MDL proceeding."). Defendants have failed to cite a single case in which the apex doctrine was invoked to bar a deposition in an MDL.[3]

Independently, the apex doctrine does not apply to Mr. Hawkins because he is retired,[4] and a deposition will therefore not interfere with any of his corporate responsibilities. *See Illinois Agric. Assoc. v. Rural Media Group, Inc.*, No. 13-1220, 2014 WL 1378074, at *2 (C.D.

---

[3] Most, if not all, of the cases relied upon by Cook involve an *individual* personal injury, employment or contract dispute, as opposed to a consolidated or mass proceeding like an MDL. *E.g.*, *Patterson*, 281 F.3d at 682 (individual employment case with "relatively small amount in controversy"); *Thomas v. IBM*, 48 F.3d 478 (10th Cir. 1995) (individual employment case); *Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979) (individual negligence case); *Reif v. CNA*, 248 F.R.D. 448, 451 (E.D. Pa. 2008) (individual employment case); *Roman v. Cumberland Ins. Group*, No. 07-CV-1201, 2007 WL 4893479 (E.D. Pa. Oct. 26, 2007) (individual insurance dispute); *Evans v. Allstate Ins. Co.*, 216 F.R.D. 515 (N.D. Ok. 2003) (individual insurance dispute); *Liberty Mutual Ins. Co. v. Superior Court*, 10 Cal. App. 4th 1282 (Cal. App. 1st Dist. 1992) (individual workers compensation dispute); *Baine v. General Motors*, 141 F.R.D. 332 (M.D. Ala. 1991) (individual personal injury case); *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364 (D.R.I. 1985) (individual personal injury case).

[4] Mr. Hawkins retired in July 2015. Hawkins Decl., Dkt. 5379-1, ¶ 3.

Ill. April 7, 2014) (noting that status of proposed deponent as *former* President was relevant to court's consideration of totality of circumstances and allowing deposition to proceed); *Minter v. Wells Fargo Bank*, 258 F.R.D. 118, 126 (D. Md. 2009) (allowing deposition of Chairman and CEO in part because he "asserted that he is no longer a busy corporate executive, but works a limited schedule"). Thus, Magistrate Baker correctly held that "the fact that Hawkins is now retired does not weigh in favor of entering a protective order." Order, Dkt. 5277 at p. 2.

### III. EVEN IF THE APEX DOCTRINE APPLIES, THE MAGISTRATE PROPERLY HELD THAT COOK HAS FAILED TO DEMONSTRATE GOOD CAUSE FOR A PROTECTIVE ORDER.

Cook points to no *specific* undue burden or expense that a deposition of Kem Hawkins would create. *In re Pradaxa Prod. Liab. Litig.*, 2014 WL 257566, at *1 (Cook has burden "to demonstrate that good cause exists for the entry of the order by making a 'particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements'") (quoting *Gulf Oil*, 452 U.S. at 102 n.16). Cook repeatedly asserts that Mr. Hawkins' deposition "is ripe for harassment and abuse." *E.g.*, Defs.' Objections, Dkt. 5379, at 21. But, as this court has noted, general, unsubstantiated allegations such as these regarding the burden of depositions of executives are insufficient to establish good cause for a protective order. *Meharg*, 2009 WL 1404603, at *3. Rather, Cook is required to offer "evidence or explanation as to why the burden is 'unacceptable' in this situation." *Id*. *See also Illinois Agric. Assoc.*, 2014 WL 1378074, at *2 (opponent of executive's deposition is required to explain *why* expense of former president's deposition is too great). Without undue burden or expense, there is no good cause for a protective order.

While there is an absence of undue burden, there is benefit to Plaintiffs in taking Mr. Hawkins' deposition because, as Magistrate Judge Baker found, the documents produced in this litigation demonstrate that Mr. Hawkins possesses unique, personal knowledge relevant to this

8

litigation. These documents show that Mr. Hawkins was involved in and at times directed decisions central to this litigation. In contrast, the apex doctrine is intended to prevent depositions that are noticed for the *sole* reason that the proposed deponent is the CEO or top official of the defendant. *Minter*, 258 F.R.D. at 126-27 ("the apex deposition rule is bottomed on the apex executive lacking *any* knowledge of relevant facts. The rule is aimed to prevent the high level official deposition that is sought simply because he is the CEO or agency head ...").[5]

Cook argues that the documents relied upon by Magistrate Baker for his Order "reflect surface level communications." Defs.' Objections, Dkt. 5379, at 20. In making this argument, Cook recasts each of the documents in the most generalized light possible, and refrains from quoting the actual words written by Mr. Hawkins. *Id.* at 19-20. Review of the documents themselves reveals that Mr. Hawkins was aware of defects in the Gunther Tulip and Celect filters, including their tendency to perforate the inferior vena cava (IVC) and nearby organs;[6] that he sought to develop the Celect filter to increase market share,[7] and that he sought to speed up the process to get to market on the Celect,[8] despite problems with its design. As Magistrate Baker found, these documents demonstrate that Mr. Hawkins has relevant personal knowledge. The existence of this knowledge demonstrates that the deposition is not sought for harassment. In contrast, Cook relies heavily on cases in which the facts known to the executives whose depositions were sought were sparse to nonexistent. *E.g.*, *Chick-Fil-A, Inc. v, CFT Dev., LLC*,

---

[5] Several cases relied upon by Defendants are inapposite for this reason. *E.g.*, *Murillo v. Kohl's Corp.*, No. 16-CV-196-JPS, 2016 WL 6090862, at *4 (declining to allow deposition of executive where "[h]er name is not mentioned once in any discovery response or document produced by the defendants in this case"); *Liberty Mutual Ins. Co.,* 10 Cal. App. 4th at 1286 (individual workers compensation dispute declining to allow the deposition of CEO where his *only* connection to the lawsuit was two letters sent to him by plaintiffs' counsel, which he never actually read).

[6] Exs. 5-7, 9.

[7] Exs. 1, 4, 8.

[8] Exs. 2-4.

No. 5:07-cv-501-Oc-10GRJ, 2009 WL 928226, at *2-3 (M.D. Fla. April 3, 2009) (in a non-MDL case, denying deposition of a President/CEO where he did not author any of the documents at issue).

Defendants fault Plaintiffs for not taking them up on the offer of a deposition of Mark Breedlove instead of Kem Hawkins. Defs.' Objections, Dkt. 5379, at 18. But Defendants offer no evidence that it was Breedlove and not Hawkins who made the high level decisions at issue. Mr. Breedlove did not become a Vice President of Cook until late 2013 or early 2014, many years after the development of the Gunther Tulip and Celect filters. Ex. 12, Deposition of Mark A. Breedlove (Jan. 16, 2015), at 27:7-10. Furthermore, of the ten exemplar documents Plaintiffs attached to this and their prior response, Mr. Breedlove is copied on one and was forwarded one; otherwise, he is not mentioned. Most of these documents were authored at least in part by Mr. Hawkins. *E.g.*, Exs. 1, 2, 5, 9 & 10 (emails authored by Hawkins); Ex. 3 (memorandum authored by Hawkins). None were authored by Mr. Breedlove. Mr. Breedlove did not attend the IVC Filter Executive Committee meeting that is the subject of Exhibit 4; Mr. Hawkins did. Defendants offer no explanation as to how Mr. Breedlove will be able to answer questions regarding the basis for Mr. Hawkins' comments and decisions.

Finally, the timing of the proposed deposition of Mr. Hawkins weighs in favor of allowing the deposition to proceed. *See Kelley v. Microsoft Corp.*, No. C07-0475MJP, 2008 WL 5000278, at *2 (W.D. Wa. Nov. 21, 2008). In contrast to the discovery status in many of the cases cited by Cook,[9] Plaintiffs here have nearly completed the depositions of lower level employees and officers, and most discovery should be complete by the time of Mr. Hawkins'

---

[9] *E.g., Brown v. Branch Banking & Trust Co., Inc.*, No. 13-81192-CIV, 2014 WL 235455, at *3 (S.D. Fla. Jan. 22, 2014 (plaintiffs had yet to take any discovery); *Reif*, 248 F.R.D. at 451 (plaintiff had not yet deposed corporate designee); *Baine*, 141 F.R.D. at 335 (depositions of corporate representative and lower level employees had not yet taken place).

10

deposition. This will allow Plaintiffs to focus their questioning in a manner to avoid any unreasonable duplication. *Id*. (allowing deposition of Microsoft's CEO Steven Ballmer in part based on similar timing).

## **CONCLUSION**

Defendants' objections lack merit. As Magistrate Baker found, the documents presented by Plaintiffs provide "specific and compelling examples that Hawkins was involved in the decision-making process and strategy regarding testing, design, marketing, and production of these filters." Order, Dkt. 5277 at 2. Thus, Defendants' first and second objections should be overruled because Hawkins has unique, relevant, personal knowledge. Defendants' third objection should be overruled because Plaintiffs are entitled to seek relevant documents from Mr. Hawkins, a third party, and to ask questions about his personal *aol.com* account. Defendants' fourth objection should be overruled because Plaintiffs seek to question Mr. Hawkins regarding his strategic decision-making process, not to harass him.

In summary, the Magistrate was unconvinced that good cause exists in this MDL case for entering a protective order to shield Hawkins from a deposition. The Magistrate's Order is not clearly erroneous or contrary to law in light of Hawkins' relevant personal knowledge and Cook's failure to demonstrate any specific undue burden or expense that a deposition of Kem Hawkins would create. Plaintiffs respectfully request the Court to overrule Defendants' objections to the Magistrate's Order and order Defendants to produce Mr. Hawkins for deposition by a date certain, preferably two weeks from the date of the Court's order.

Dated: July 21, 2017.                    Respectfully Submitted,

*/s/ Ben C. Martin*
Ben C. Martin, Esq.
The Law Office of Ben C. Martin
3219 McKinney Avenue, Suite 100
Dallas, TX 75204
Telephone: (214) 761-6614
Facsimile: (214) 744-7590
Email: bmartin@bencmartin.com
*Plaintiffs' Co-Lead Counsel*

*/s/ Joseph N. Williams*
Joseph N. Williams, Atty. No. 25874-49
Riley Williams & Piatt, LLC
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317) 633-5270
Facsimile: (317) 426-3348
Email: jwilliams@rwp-law.com
*Liaison Counsel to Plaintiffs Steering Committee
and on behalf of Plaintiffs Steering Committee*

*/s/ Michael W. Heaviside*
Michael W. Heaviside, Esq.
Heaviside Reed Zaic, A Law Corporation
910 17th Street NW, Suite 800
Washington, DC 20006
Telephone: (202) 233-1993
Email: mheaviside@hrzlaw.com
*Plaintiffs' Co-Lead Counsel*

*/s/ David P. Matthews*
David P. Matthews, Esq.
Matthew and Associates
2509 Sackett St.
Houston, TX 77098
Telephone: (713) 522-5250
Facsimile: (713) 535-7184
Email: dmatthews@thematthewslawfirm.com
*Plaintiffs' Co-Lead Counsel*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 21, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

      Notice will be served on the parties listed below by first class U.S. Mail, postage prepaid:

Anthony J. Urban
Brian J. Urban
LAW OFFICES OF ANTHONY URBAN, P.C.
474 N. Centre Street, 3rd Floor
Pottsville, PA 17901

Carrie R. Capouellez
LOPEZ McHUGH LLP
214 Flynn Avenue
Moorestown, NJ 08057

Caleb H. Didriksen, III
Carl A Woods, III
DIDRIKSEN LAW FIRM, PLC
3114 Canal Street
New Orleans, LA 70119

Cliff W. Marcek
CLIFF W. MARCEK, P.C.
700 S. Third St.
Las Vegas, NV 89101

Cory H. Driggers
MORRIS CARY ANDREWS TALMADGE & DRIGGERS
P.O. Box 1649
Dothan, AL 36302

Craig D. Henderson
THE SNAPKA LAW FIRM
P.O. Box 23017
Corpus Christi, TX 78403

Curtis Hoke
THE MILLER FIRM LLC
The Sherman Building
108 Railroad Avenue
Orange, VA 22960

David C. Anderson
Anderson Law
711 Van Ness Avenue, Suite 220
San Francisco, CA 94102

Jack E. Urquhart
THE SNAPKA LAW FIRM
606 N. Carancahua, Suite 1511
Corpus Christi, TX 78401

Jay Harris
HARRIS, RENY & TORZEWSKI
Two Maritime Plaza, 3rd Floor
Toledo, OH 43604

Joseph A. Napiltonia
LAW OFFICE OF JOE NAPILTONIA
213 3rd Avenue North
Franklin, TN 37064

Joseph G. Sauder
CHIMICLES & TIKELLIS LLP
361 West Lancaster Avenue
Haverford, PA 19041

Kimberly L. Adams
LEVIN PAPANTONIO THOMAS ETC PA - PENSACOLA FL
316 S BAYLEN ST STE 400
PENSACOLA, FL 32502

Marian S. Rosen
ROSEN & SPEARS
5075 Westheimer, Suite 760
Houston, TX 77056

Mark R. Niemeyer
NIEMEYER AND GREBEL
10 S. Broadway, Suite 1125
St. Louis, MO 63102

Michael G. Glass
RAPPAPORT GLASS GREENE & LEVINE LLP
1355 Motor Parkway
Hauppauge, NY 11749

Neal L. Moskow
URY & MOSKOW
883 Black Rock Turnpike
Fairfield, CT 06825

Peter C. Wetherall
WETHERALL GROUP, LTD.
9345 W. Sunset Road
Suite 100
Las Vegas, NV 89148

Philip Sholtz
THE DRISCOLL FIRM, P.C.
211 N. Broadway
40th Floor
St. Louis, MO 63102

W. Bryan Smith
MORGAN & MORGAN, LLC
2600 One Commerce Square
Memphis, TN 38103

Wilnar J. Julmiste
ANDERSON GLENN LLP - BOCA RATON FL
2650 North Military Trial, Suite 430
Boca Raton, FL  33431

Heather H. Harrison
FAEGRE BAKER DANIELS LLP
311 S. Wacker Drive
Suite 4400
Chicago, IL 60606

Jennifer P Henry
THOMPSON & KNIGHT LLP
801 Cherry Street, Unit #1
Fort Worth, TX 76107

*/s/ Ben C. Martin*
Ben C. Martin