# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

_____

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

_____

This Document Relates to All Actions

_____

**DEFENDANTS' REPLY IN SUPPORT OF**
**OBJECTIONS TO AND APPEAL FROM ORDER DENYING THEIR MOTION FOR**
**PROTECTIVE ORDER PRECLUDING DEPOSITION OF KEM HAWKINS**

The Cook Defendants[1] urge the Court to reverse Magistrate Judge Baker's Order on

Defendants' Motion for Protective Order (the "Order") (Dkt. 5277), and enter a protective order

barring the deposition of Kem Hawkins ("Hawkins")—a former president of Cook Incorporated

and Cook Medical Incorporated who has no unique or specialized knowledge on the topics at

issue in this MDL.  The risk of abuse, harassment and wasted resources constitutes good cause

for entry of the protective order, especially where Mr. Hawkins cannot add anything meaningful

to the evidence his subordinates (other Cook executives and employees) already have offered

concerning the testing, design, production and marketing of Cook IVC filters.  These risks are

exacerbated where Plaintiffs have all but telegraphed their intent to set up an improper

presentation and argument at trial based on Mr. Hawkins' lack of detailed knowledge of lower-

level corporate facts.  Respectfully, the Order is clearly erroneous and contrary to law, and Cook

has established good cause for entry of a protective order.

_____

[1] The Cook Defendants in this matter are Cook Incorporated, Cook Medical LLC f/k/a Cook Medical Incorporated, and William Cook Europe APS (collectively "Cook").

**DISCUSSION**

In cases such as this one, the law disfavors "apex depositions" of high ranking executives where the information sought can be (and has been) garnered from more knowledgeable subordinates.  Mr. Hawkins can offer nothing unique here.  Every document pointed to by Plaintiffs purportedly showing Mr. Hawkins' involvement in filter "strategy" involves more knowledgeable subordinate Cook executives or employees who have already been the subjects of extensive discovery in this MDL.  (*See* Cook's Objections and Appeal, Dkt. 5739 at pp. 13-20).

The most Plaintiffs can muster concerning Mr. Hawkins' relevance to this MDL is his own statement that, in his role as president, he "was involved only in high-level decisions concerning the Cook IVC filters, based on information provided by other Cook employees." (Declaration of Kem Hawkins, Dkt. 5379-1 at ¶ 4).  But this minimal degree of involvement and knowledge does not just justify the risk of abuse, harassment, and wasted resources arising from this proffered unrestricted deposition.  Indeed, if that level of knowledge were enough to justify depositions of high ranking executives, the Apex Doctrine would not exist.

I.     **THE COURT MAY BAR THIS APEX DEPOSITION EVEN THOUGH MR. HAWKINS IS RETIRED.**

As a preliminary matter, Plaintiffs make sweeping assertions in their Response Memorandum in Opposition (Dkt. 5479, filed under seal at Dkt. 5480) that "[t]he apex doctrine does not apply to Mr. Hawkins because he is retired."  (Dkt. 5480 at p. 7).  However, the two cases on which Plaintiffs' rely demonstrate only that the retirement or work status of a former executive is but one factor in a court's consideration of the totality of circumstances—it is neither decisive nor prohibitive to application of the Apex Doctrine.  *See Illinois Agric. Assoc. v. Rural Media Group, Inc.*, 2014 WL 1378074, at *2 (C.D. Ill. April 7, 2014); *Minter v. Wells Fargo Bank*, 258 F.R.D. 118, 126 (D. Md. 2009).  Indeed, courts have found exactly the opposite

of what Plaintiffs assert.  In *Robertson v. McNeil-PPC Inc.*, 2014 WL 12576817 (C.D. Cal. Jan. 13, 2014), the District Judge found inappropriate the Magistrate's reasoning regarding apex deposition law being inapplicable to a retired CEO, stating:

> Although Judge Segal does not expressly reject the application of the apex doctrine to Goggins, that she did so is implicit in her order. Thus, her order states that "it cannot be argued that [Goggins'] deposition will take her away from her official duties" because she retired in 2011. Dkt. 72 at 7. "The Order goes on to state that the policy concerns discussed in the case law governing 'apex' depositions are simply inapplicable to a retired individual." *Id.* 7-8. Although part of the rationale behind the application of the apex doctrine is to protect executives from being taken away from their central duties so that they can be deposed, the doctrine also recognizes that deposition notices directed at high-level corporate officials "create[ ] a tremendous potential for abuse and harassment." *Celerity, Inc. v. Ultra Clean Holding, Inc.*, 2007 WL 205067, *3 (N.D. Cal. 2007). Thus, that Goggins is no longer employed by Defendant Johnson & Johnson does not alone preclude that application of the apex doctrine.

*Id*. at *17 (reversing a Magistrate Judge's order and barring the deposition of a retired executive until Plaintiff had undertaken reasonable, alternative methods of discovery, citing the tremendous potential for abuse and harassment); *see also WebSideStory, Inc. v. NetRatings, Inc.*, 2007 WL 1120567 (S.D. Cal. 2007) (finding that the apex doctrine applied to a former CEO who was currently a member of the Board of Directors for that company and the CEO and Chairman of the Board of Directors for another company).   As in these cases, Mr. Hawkins' retired status also does not preclude the application of the Apex Doctrine.

## II.   THE PRESENCE OF AN MDL DOES NOT OBVIATE THE RISKS OF POTENTIAL ABUSE; IT MAGNIFIES THEM.

Next, Plaintiffs argue that a single deposition of an executive in the context of an MDL involving thousands of plaintiffs minimizes the risk of abuse and harassment.  (Dkt. 5480 at pp. 6-7).  Not so.  The risk of abuse and grandstanding assuredly increases in the MDL context given the sweeping consequences of a single, improper deposition.  This is especially true where

Plaintiffs' attorneys have foreshadowed their intention to parade this apex deposition before the jury for improper purposes.  For example, Plaintiffs have stated that they think it's important for the jury to hear from the person who headed the company, an improper purpose in and of itself. As explained in greater detail later, the risks inherent in this limitless deposition are ripe for abuse and improper impugning of Cook across this entire MDL.

Moreover, contrary to Plaintiffs' assertions, at least one court has been willing to find the imposition of undue hardship on an executive in an MDL context when, like here, there has been a factual showing that the executive has no unique personal knowledge.  In *In re Ski Train Fire of Nov. 11, 2000 Kaprun, Austria*, No. MDL 1428, 2006 WL 1328259 (S.D.N.Y. May 16, 2006), the court refused to order the deposition of a recently retired CEO where Plaintiffs had access to the information sought in another deposition and where focused interrogatories could best address the subject.  *Id.* at *10.

### III.  THE DOCUMENTS SUBMITTED BY PLAINTIFFS DEMONSTRATE THAT PLAINTIFFS ALREADY HAVE HAD MORE THAN AMPLE OPPORTUNITY TO INVESTIGATE THEIR CONTENTS AND INQUIRE INTO THEIR BROAD PROFFERED DEPOSITION TOPICS.

Throughout this years-long discovery process, Plaintiffs have had access to the information they claim now to be seeking.  Plaintiffs attempt to circumvent this claim by stating "that they want to ask questions regarding the documents sent to and from Mr. Hawkins regarding the IVC filters at issue in this case."  (Dkt. 5480 at p. 2).  But in so explaining, Plaintiffs unwittingly concede that they have already been afforded the opportunity to discuss these documents with the other parties to these exact same communications.  These individuals include Mark Breedlove, Rob Lyles, Ted Heise, Rita Harden, Bruce Fleck, April Lavender, Arne Molegaard-Nielsen, Jesper Thyregod, Per Hendriksen, and Torben Anderson.  There's no reason

why Mr. Hawkins would have unique insight or better information regarding these documents than these individuals on the other end of the communications.

Furthermore, Plaintiffs improperly conclude that these documents offer "compelling examples that Hawkins was involved in the decision-making process and strategy regarding testing, design, marketing and production of these filters." (Dkt. 5277 at p. 2). To the contrary, the documents merely confirm that Mr. Hawkins can offer no unique or superior evidence regarding filter "strategy" than what has already been discovered through other Cook executives and employees. Specifically, Cook has produced numerous witnesses who testified extensively about the filter business:

- **Mark Breedlove, Vice President and Director of the Strategic Global Business Unit for Peripheral Intervention**
  Deposed on January 16, 2015, as Cook's 30(b)(6) witness on Corporate Organization and Strategy.

- **Thomas Roberts, Vice President of Quality Assurance and Global Functional Leader for Quality Assurance**
  Deposed on May 20, 2016.

- **Ted Heise, Vice President of Scientific Regulatory Affairs**
  Deposed on March 31, 2016, as Cook's 30(b)(6) witness on Clinical and Non-Clinical Trials.

- **April Lavender, Senior Vice President of Regulatory Affairs**
  Deposed on April 23, 2015, and on December 17, 2015, as Cook's 30(b)(6) witness on Regulatory Affairs.

- **Jennifer Brown, Ph.D., Director of Regulatory Science (Peripheral Intervention), Director of Regulatory Affairs**
  Deposed on April 21, 2017, and May 8, 2017.

- **Bruce Fleck, Senior Product Manager for IVC Filters (May 2003 – December 2007)**
  Deposed on July 20, 2016.

- **Darrell Talbert, Product Manager for IVC Filters**
  Deposed on April 27, 2015, and December 15, 2015, as Cook's 30(b)(6) witness on Sales and Marketing.

- **Brian Choules, Technical Director and Pre-Clinical Bench Testing Manager at MED Institute**
  Deposed on July 22, 2016.

- **Torben Andersen, Team Leader in Product Development re Filters**
  Deposed June 8, 2016.

- **Per Hendriksen, Principle Design Engineer re Celect Filter**
  Deposed June 15, 2016.

- **Jacob Clausen, Project Engineer/Manager/Leader re Celect Filter**
  Deposed June 21, 2016.

- **Jesper Thyregod, Director of Engineering at William Cook Europe ("WCE")**
  Deposed on June 1, 2016.

- **Henrik Gyllun, Director of Quality Assurance at WCE**
  Deposed on July 14, 2017.

- **Mark Frye, Co-Lead Engineer on Celect Filter**
  Deposed June 30, 2016.

- **Arne Molgaard-Nielsen, Director of Research at WCE and Co-Inventor of Tulip**
  Deposed July 14, 2016.

- **Rita Harden, Director of Customer Relations and Director of Regulatory Reporting**
  Deposed on January 22, 2016, as Cook's 30(b)(6) witness on Post-Market Surveillance and Regulatory Reporting.

- **Scott Blanchard, Director of Corporate Infrastructure**
  Deposed on January 29, 2015, as Cook's 30(b)(6) witness on Information Technology.

- **Bill Voorhees, Vice President and Chief Scientific Officer for MED Institute**
  Deposed on May 17, 2016.

- **Mette Neiendam Nielsen, Medical Communications Specialist at WCE**
  Deposed on June 3, 2016.

- **Anna Bjerg Jessen, Manager and Director in Regulatory Affairs at WCE**
  Deposed on June 10, 2016.

- **Jim Carlson, Senior Engineer and Research Engineer – Metallurgist**
  Deposed June 22, 2017.

- **Jim Smith, Peripheral Intervention VISTA Physician Training Coordinator**
  Deposed May 9, 2017, as Cook's 30(b)(6) witness on the VISTA program.

These are executives or high level personnel relating to Cook's filter business.  They have already provided immense insight into the strategy and high-level decision making Plaintiffs purportedly seek.  In fact, every person Mr. Hawkins identifies as being much more knowledgeable than him (concerning design and testing; the manufacturing process; labeling and warnings; registration, submissions and/or other regulatory issues; marketing or advertising; and history and organization of the Cook Companies), has been deposed in this litigation.  (*See* Dkt. 5379-1 at ¶¶ 5-10).  Moreover, many of these same individuals are included on the emails and documents that Plaintiffs say are the reason they want to depose Mr. Hawkins, and therefore, could have (or should have) been asked questions about those documents.   In light of the comprehensive testimony from these individuals, Mr. Hawkins cannot offer unique or superior testimony concerning Cook's IVC filter-related business.

Plaintiffs also assert that they "seek Mr. Hawkin's [sic] deposition in order to ask questions regarding the strategic thinking behind those high level decisions – decisions that Plaintiffs contend caused them to suffer serious personal injuries."   (Dkt. 5480 at p. 2).  But Plaintiffs have not alleged how Mr. Hawkins's decisions have harmed them.  As stated previously, Plaintiffs have had wide open access to the strategic thinking of the company surrounding its filter business by way of deposition of those high-ranking members of that division.  This includes Cook's July 14, 2017, compromise offer to allow an additional deposition of Mark Breedlove, Cook's Vice President, Global Business Unit Leader for Peripheral Intervention, whom Cook had previously presented in response to Plaintiffs' Rule 30(b)(6) deposition notice on various issues.  (*See* Dkt. 5379-9).  Plaintiffs' rejection of Cook's offer to allow them to depose the head of the Strategic Business Unit responsible for IVC filters

and someone who, unlike Mr. Hawkins, actually has relevant knowledge and will testify at trial, speaks volumes about Plaintiffs' motivations here.

In essence, Plaintiffs have had access to the information they seek through less intrusive means. *See Roman v. Cumberland Ins. Group,* 2007 U.S. Dist. LEXIS 96775 (E.D. Pa. Oct. 26, 2007) (granting protective order barring deposition of corporate executives without direct knowledge where knowledgeable lower level employee was available to testify). As already explained at length, the broad topics Plaintiffs have identified for their proposed deposition of Mr. Hawkins were the subjects of earlier 30(b)(6) motions and written discovery, and Plaintiffs have had the opportunity to fully explore those topics with other witnesses. *See Murillo v. Kohl's Corp.*, 2016 U.S. Dist. LEXIS 144053 (E.D. Wis. Oct. 18, 2016) (granting protective order where proposed executive deponent "does not appear to possess any particularized knowledge beyond that which other witnesses have testified"). If Plaintiffs failed to discuss any specific documents with the Cook witnesses, that failure does not grant them the opportunity to depose an executive with less knowledge on the issues. Indeed, this is the purpose and policy undergirding the Apex Doctrine.

Moreover, Plaintiffs have not identified a single topic relevant to this litigation on which they wish to depose Mr. Hawkins about which he has unique or superior knowledge. Mr. Hawkins has only the type of high-level, non-specific involvement described by multiple courts that have barred such apex depositions. Respectfully, Magistrate Judge Baker erred in concluding otherwise, and the Court should issue a protective order barring Mr. Hawkins' deposition. *See, e.g., Salter v. Upjohn Co.,* 593 F.2d 649 (5th Cir. 1979) (protecting executive from deposition where requesting party could not establish the executive had unique, personal knowledge); *Baine v. General Motors Corp.,* 141 F.R.D. 332, 335 (M.D. Ala. 1991) (granting

protective order against deposition of vice president where plaintiff "has not demonstrated that [he] has any superior or unique personal knowledge of the restraint system or of the accident which led to the plaintiffs' decedent's death").

### IV.   PLAINTIFFS' PERSISTENT FASCINATION WITH MR. HAWKINS' PRIVATE EMAIL ACCOUNT IS IRRELEVANT.

Both Plaintiffs (intentionally) and the Order (unintentionally) obfuscate the issues surrounding Mr. Hawkins' private email account.  Both failed to consider that Plaintiffs exhausted their requests for custodial files to be produced in discovery without requesting Mr. Hawkins' files, and neither Cook nor Mr. Hawkins were under any obligation to collect and search any email account of Mr. Hawkins (personal or professional).  Furthermore, Plaintiffs cannot argue they somehow didn't know of Mr. Hawkins until it was too late.  Quite to the contrary, Plaintiffs requested Mr. Hawkins' custodial file on at least three occasions (July 2016, October 2016, and November 2016), only to reassess and abandon each of those requests, presumably because they felt other custodians would have more relevant information.[2] Likewise, Plaintiffs' Subpoena to Testify at a Video Deposition in a Civil Action to Mr. Hawkins dated March 26, 2017 (Dkt. 5379-4), contained no document requests to Mr. Hawkins. Therefore, Mr. Hawkins was under no obligation to search his personal email account at any time in this litigation.  Thus, what remains from Plaintiffs' subpoena and deposition notice is only Plaintiffs' "CMO 2 Request for Documents to Cook Defendants," which is not directed to Mr. Hawkins' personal files, and is simply an attempt to get around the Court's orders limiting custodian discovery.   That conduct should not be rewarded, and certainly should not be

---

[2] Plaintiffs did not renew their request for Mr. Hawkins' custodial file after the Court permitted them additional custodial file requests, and they have now exhausted all of their authorized requests for custodial files.  *See* Dkt. 3069.

permitted based on the false premise that Mr. Hawkins had an obligation to search and produce records from his personal email account.

## V.     GOOD CAUSE EXISTS FOR ENTRY OF A PROTECTIVE ORDER BARRING THE DEPOSITION OF MR. HAWKINS.

Throughout the background of discovery concerning this matter (communications with Plaintiffs' counsel in emails, letters, etc.), it has been abundantly clear that Plaintiffs do not wish to limit the scope of Mr. Hawkins' proposed deposition in any respect.  Plaintiffs' Notice of Taking Deposition of Mr. Hawkins identifies no topics at all, and, although Cook repeatedly asked Plaintiffs to identify the specific topics for Mr. Hawkins' proposed deposition, Plaintiffs' responses were overtly evasive.  (*See* Dkt. 5379-3, Schultz Email stating "it's difficult to specify as we don't wish to limit ourselves on subject matters").  The Order was clearly erroneous as it failed to address the need for Mr. Hawkins to be protected from abusive deposition tactics.

Plaintiffs cite the case *In re Bridgestone/Firestone, Inc., Tires Prod. Liab. Litig.*, 205 F.R.D. 535 (S.D. Ind. 2002) to ostensibly demonstrate the court's "unwilling[ness] to apply the apex doctrine in the context of an MDL."  (Dkt. 5480 at p. 6).  What Plaintiffs fail to note, however, is that, unlike the Order in this case, the court in *Bridgestone* set forth strict guidelines for the deposition of the former Chairman of the Board that would serve to prevent abuse and harassment, including time limits and identification of topics.  If this Court should find that Plaintiffs are entitled to some confirming evidence tied to Mr. Hawkins, Cook submits that a more proportional solution would be well-tailored interrogatories as opposed to an unfettered deposition of a former president.  *See, e.g., In re Ski Train Fire of Nov. 11, 2000 Kaprun, Austria*, No. MDL 1428, 2006 WL 1328259, at *10 (S.D.N.Y. May 16, 2006).

Plaintiffs state that "the timing of the proposed deposition of Mr. Hawkins weighs in favor of allowing the deposition to proceed" because completion of most of discovery "will

allow Plaintiffs to focus their questioning in a manner to avoid any unreasonable duplication." (Dkt. 5480 at p. 10).  But Plaintiffs do not propose how their comprehensive list of requested topics will be narrowed, and they do not invite the Court to play any role in defining the scope of the deposition.

Plaintiffs' all-or-nothing position continues to signal their intent to improperly parade this apex deposition before the jury for improper purposes.  Plaintiffs hope to play a "game of gotcha" with the company's president and imply that he has somehow been either ignorant of details about IVC Filters or dishonest to patients who received Cook IVC Filters.  For instance, Plaintiffs state that the "[r]eview of documents themselves reveals that Mr. Hawkins was aware of defects" in the Cook IVC Filters.  (Dkt. 5480 at p. 9).  First, the filters are not defective, and Mr. Hawkins does not say they are.  In any event, Plaintiffs should be precluded from taking small snippets of evidence that show that Cook's president was being kept abreast of developments, and extrapolating broadly to imply that Cook as a whole did not respond appropriately to reports of adverse events.  Such implications would be false and improper since, "[i]n the case of an official at the head of corporate operations, [] expressions of ignorance of a specific case or claim are not implausible."  *Liberty Mutual Ins. Co. v. Superior Court*, 10 Cal. App. 4th 1282, 1289-1290 (Cal. App. 1st Dist. 1992).  The risks described above constitute good cause worthy of entry of a protective order.[3]

---

[3] Plaintiffs state boldly that "[w]ithout undue burden or expense, there is no good cause for a protective order." (Dkt. 5480 at p. 8).  This is not the standard for "good cause," but a truncated version thereof.  A district court may limit the scope of discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C); *see also* Fed. R. Civ. P. 26(c)(1) ("The Court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.")  There is obvious burden and expense from an unnecessary deposition of a former president.  But as Cook has made clear with sufficient evidence, including Plaintiffs' own words, the contemplated deposition would be also unreasonably cumulative or duplicative, and the information sought is obtainable from some other sources that are more convenient, less burdensome, or less expensive.  Moreover, the clear risk of abuse or harassment amplifies the need to limit discovery by precluding Mr. Hawkins deposition here.  *See Affinity Labs of TX. v. Apple, Inc*., 2001 WL 1753982,

## CONCLUSION

Mr. Hawkins has no unique, specialized or personal knowledge related to the issues of this MDL, and Cook has already provided the evidence Plaintiffs claim to be seeking.  Left without any legitimate basis for pursuing this deposition, and refusing to acknowledge any meaningful limitations thereto, Plaintiffs' only purpose in pursuing this deposition is to grandstand and place improper blame on a high ranking official who was not involved in the day-to-day activities involving Cook's IVC Filters.  Based on the evidence presented, Cook has established good cause for a protective order barring Mr. Hawkins' deposition, and the Order to the contrary, which failed to consider the high risk of abuse and its critical consequences for all cases in this MDL, was clearly erroneous and contrary to law.  Cook requests that the Court reverse the Order and enter a protective order barring Plaintiffs from deposing Kem Hawkins.

---

at *15 (N.D. Cal. 2011)( "[v]irtually every court" to address this issue has recognized that the deposition of a president or CEO "creates a tremendous potential for abuse or harassment.") (quotations and citations omitted). Cook has met the standard for entry of a protective order.

Respectfully submitted,

Dated: July 28, 2017                    /s/ J. Joseph Tanner
                                        Andrea Roberts Pierson (# 18435-49)
                                        J. Joseph Tanner (#11856-49)
                                        FAEGRE BAKER DANIELS LLP
                                        300 North Meridian Street, Suite 2700
                                        Indianapolis, Indiana  46204
                                        Telephone:  (317) 237-0300
                                        Facsimile:  (317) 237-1000
                                        E-Mail:  andrea.pierson@faegrebd.com
                                        E-mail:  joseph.tanner@faegrebd.com

                                        James Stephen Bennett (# 22869-02)
                                        FAEGRE BAKER DANIELS LLP
                                        110 W. Berry Street, Suite 2400
                                        Fort Wayne, Indiana  46802
                                        Telephone: (260) 424-8000
                                        Facsimile: (260) 460-1700
                                        stephen.bennett@faegrebd.com

                                        *Counsel for the defendants, Cook Incorporated,
                                        Cook Medical LLC (f/k/a Cook Medical
                                        Incorporated), and William Cook Europe ApS*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 28, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

/s/ J. Joseph Tanner

US.113399991.03