**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| IN RE: COOK MEDICAL, INC. IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates to:

> *Elizabeth Jane Hill*
> Case No. 1:14-cv-06016-RLY-TAB
>
> *Gage v. Cook Medical, Inc., et al.*
> Case No. 1:14-cv-1875-RLY-TAB

**DEFENDANTS' OPPOSITION TO**
**PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY**

The Court should deny Plaintiffs' motion seeking to exclude expert opinions of Plaintiffs' treating physicians on the claimed ground that the Cook Defendants did not adequately disclose those opinions in its expert disclosures. (The parties have resolved the second portion of Plaintiffs' motion, which sought to exclude or compel the depositions of Cook employees Jennifer Brown and Brian Choules, *see* Pl. Memo. at 12-15, and the Court need not address those issues.)

First, the testimony of the treating physicians to which Plaintiffs object reflect only facts these doctors knew and opinions they formed either before or during their treatment of Plaintiffs Hill and Gage. Rule 26(a)(2)(C) therefore permits Cook to disclose their anticipated testimony through a summary disclosure, rather than the formal expert report required by Rule 26(a)(2)(B). Indeed, Plaintiffs themselves used the same Rule 26(a)(2)(C) summary disclosures to disclose

1

similar expert testimony by some of these same treating physicians, describing the subject and substance of their anticipated testimony with detail similar to Cook's disclosures.

Second, even assuming that Cook had been required to provide full Rule 26(a)(2)(B) disclosures, any failure to do so was entirely harmless and has caused Plaintiffs no prejudice. Plaintiffs are fully aware of all the testimony Cook may offer from these treaters; it will all come from their depositions, which Plaintiffs' attorneys not only attended but actively participated in. Indeed, most of the testimony with which Plaintiffs now take issue addresses topics that Plaintiffs' attorneys themselves raised and pursued at those depositions.  Plaintiffs had plenty of time to analyze these treating doctors' testimony and, if necessary, to prepare their own experts to counter that testimony.  There was no surprise, no prejudice, and no reason to exclude the treaters' testimony.

Third, Plaintiffs' motion is at best premature.  Cook has not yet selected or designated what portions of these treating doctors' deposition testimony it will offer at trial, and Plaintiffs' motion asks the Court to exclude unspecified evidence without knowing either context or actual content.  If plaintiffs have any viable objections to specific portions of testimony, the Court should take up those objections at the time the testimony is offered at trial, when the Court will have a sense of both the content and the context of the testimony.

At base, Plaintiffs' motion asks the Court to exclude highly relevant testimony from the doctors who actually treated Plaintiffs simply because Plaintiffs do not like what their doctors had to say.  Plaintiffs would instead have the jury hear only from Plaintiffs' paid experts, whose testimony (not surprisingly) they like better.  For example, the Plaintiffs do not want the jury to hear their doctors' *actual* reasons for implanting their IVC filters; they want the jury to hear only that their experts think the filters were a bad idea.  That approach ignores the truth. The Court

should deny Plaintiffs' motion, and let the jury hear *all* of the facts relating to the Plaintiffs' own doctors' decisions to implant their filters.

### I. Cook Made Proper Summary Disclosures of the Treating Physicians' Anticipated Expert Testimony Under Rule 26(a)(2)(C).

Plaintiffs' motion badly misreads Rule 26(a)(2) and tries to impose on Cook disclosure obligations relating to Plaintiffs' own treating doctors far beyond those that the Rule requires. "[A] treating physician can provide an expert opinion without submitting a written report if the physician's opinion was formed during the course of the physician's treatment, and not in preparation for litigation." *E.E.O.C. v. AutoZone, Inc.,* 707 F.3d 824, 833 (7th Cir. 2013) (quoting *Meyers v. Nat'l R.R. Passenger Corp.,* 619 F.3d 729, 734–35 (7th Cir. 2010)). "[W]hen a treating physician morphs into a witness hired to render expert opinions that go beyond the usual scope of a treating doctor's testimony, the proponent of the testimony must comply with Rule 26(a)(2)." *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 819-820 (9th Cir. 2011). "[T]he question the court must answer is which of his opinions were formed during his treatment, and which after." *In re: Zimmer Nexgen Knee Implant Products Liability Litigation*, MDL No. 2272, No. 12-C-6279, at *5, 2015 WL 3799534 (N.D. Ill. June 17, 2015).

All of the treating doctor testimony that Cook has identified for use at trial either was formed during their treatment of Plaintiffs or reflects opinions and knowledge that predate that treatment and on which the doctors relied in making treatment decisions. Plaintiffs' motion does not cite a single item of expert knowledge or opinion in Cook's disclosure that Plaintiffs claim was formed *after* the conclusion or the doctors' treatment of Hill and Gage. *See In re: Zimmer*, 2015 WL 3799534 at *8 (holding Rule 26(a)(2)(B) does nor require formal report for treating doctor's testimony about possible causes of knee loosening he ruled out in course of treatment). Likewise, Plaintiffs' motion does not cite a single instance of testimony or opinion that Plaintiffs

claim was formed "in preparation for litigation." *See Autozone*, 707 F.3d at 833 (holding Rule 26(a)(2)(B) does not require formal report where treating doctor's "testimony focused on his treatment of [plaintiff] and his medical opinions were not formed for this litigation").

Instead, Plaintiffs' motion seeks to exclude testimony about the experience, knowledge, and opinions on which Hill's and Gage's treating physicians relied in treating these Plaintiffs and in making decisions concerning the placement and retrieval of the Cook IVC filters at issue here. For example, Plaintiffs would have the Court exclude their own treating doctors' testimony concerning:

- Their extensive experience in placing and retrieving IVC filters, *see, e.g.,* Dkt. 5310-2 (Exhibit to Pl. Motion, Cook Defendants' Rule 26(A)(2)(B) and 26(A)(2)(C)) at 5 (Lynch), 8 (Crisostomo), 10 (Goodwin);

- Their knowledge of the risks and benefits of IVC filters, *see, e.g., id.* at 5 (Lynch), 6 (Moreno), 7 (Zuzga), 8 (Cristotomo), 9-10 (Goodwin), 11 (Larkin);

- Their views that IVC filters are an appropriate and successful treatment for the prevention of pulmonary embolisms, *see, e.g., id.* at 6 (Moreno), 7 (Zuzga), 8-9 (Cristotomo), 9-10 (Goodwin), 11 (Larkin);

- Their opinions that the risks of placing IVC filters are low compared to the risks of pulmonary embolisms, *see, e.g., id.* at 6 (Moreno), 7 (Zuzga), 8 (Cristotomo), 10 (Goodwin); and

- Their success in retrieving IVC filters when necessary, *see, e.g., id.* at 7 (Moreno), 10 (Goodwin).

The treating doctors possessed all of these facts and held all of these opinions—and all of the others in Cook's disclosure—before and during their respective treatments of Plaintiffs, and

4

indeed rested many of their treatment decisions on these facts and opinions. Most prominently, in order to weigh the risks and benefits of placing IVC filters in Hill and Gage and make intelligent recommendations and decisions, these doctors necessarily relied on their then-current experience with filters and knowledge of and opinions concerning the risks and benefits of IVC filters, generally and of the Cook Celect and Tulip filters specifically. This knowledge and experience bear directly on why the doctors prescribed or placed the filters in Plaintiffs, and why or when the physicians attempted (or did not attempt) to retrieve Plaintiffs' filters. For example, Dr. Lynch explicitly testified that his implantation of hundreds of filters and his retrieval of more than 1800 filters formed the basis for his treatment decisions for Mrs. Hill, including his opinions formed during her treatment about the type of retrieval technique to use, the nature of her complication, his prognosis at the time of her treatment, and his belief at the time of treatment that she did not have caval stenosis but instead benign narrowing of the cava that would resolve. Exh. A, Lynch Dep., pp. 20:9-20, 23:10-18, 159:20-160:1, 162:23-163:23.

Such testimony about the reasons for a treating doctor's treatment does not require a formal Rule 26(a)(2)(B) report, but may be disclosed though a Rule 26(a)(2)(C) summary, as Cook did here. "When a treating physician testifies about his observation, diagnosis and treatment of a patient, the physician is testifying about what he saw and did ***and why he did it***, even though the physician's treatment and his testimony about that treatment are based on his specialized knowledge and training." *Griffith v. Northeast Ill. Reg'l Commuter R.R. Corp.*, 233 F.R.D. 513, 518 (N.D. Ill. 2006) (emphasis added). "Under these circumstances, no Rule 26(a)(2)(B) report is necessary." *Nagle v. Mink*, 2011 U.S. Dist. LEXIS 97781 (D. Colo. Aug. 29, 2011) (citing *Griffith*). *See also Nayak v. St. Vincent Hosp. & Health Care Ctr., Inc.*, No. 1:12-CV-00817-RLY-DM, 2014 WL 4908165, at *2 (S.D. Ind. Sept. 30, 2014) (holding that

5

Rule 26(a)(2)(C) summary disclosure was sufficient to disclose intention to call treating doctor to testify about "the reason why she decided to place Plaintiff on bed rest and to extend her medical leave from 6 to 8 weeks").

All of the knowledge and opinions listed in Cook's summary disclosures and in Plaintiffs' motion predate the end of Plaintiffs' treatment; none was developed either after the conclusion of treatment or for the purposes of litigation.[1]

The Rule 26(a)(2)(B) report requirement is not a rigid rule with hard and technical boundaries; a treating doctor is permitted latitude in testifying about matters closely related to treatment. As one of the cases on which Plaintiffs rely notes, a Rule 26(a)(2)(B) report "is not required when a treating physician testifies within a *permissive core on issues pertaining to treatment*, based on what he or she learned through actual treatment and from the plaintiff's records up to and including that treatment." *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 871 (6th Cir. 2007) (emphasis added); *see also In re: Zimmer Nexgen Knee Implant Products Liability Litigation*, MDL No. 2272, No. 12-C-6279, at *6, 2015 WL 3799534 (N.D. Ill. June 17, 2015) (holding Rule 26(a)(2)(B) does not require separate expert report to disclose post-treatment opinions that "help explain and elaborate on his observations and opinions originally formed during the course of [plaintiff's] treatment"). Every proposed area of testimony cited in Plaintiffs' motion falls within this "permissive core" surrounding Plaintiffs' treatment.

The lack of any Rule 26(a)(2)(B) requirement for Cook's designations of Plaintiffs' treating physicians is reinforced by Plaintiffs' own Rule 26(a)(2)(C) disclosures for these same treating physicians. Like Cook's disclosures, Plaintiffs' disclosures propose to offer the treating doctors' testimony concerning a number of facts that they knew and a number of opinions that

---

[1] The only possible exception Cook can identify is Dr. Moreno's anticipated testimony that "[a]fter he learned of Mrs. Hill's perforation of her vena cava, he continued using the Celect filter in patients." *See* Pl. Memo. at 7. But this is not a statement of expert opinion; this is simply a fact that will be offered by Dr. Moreno as a fact witness.

they held at the time they treated Hill and Gage. For example, Plaintiffs propose to have Gage treating physician Crisostomo testify:

> The purpose of a vena cava filter is to prevent large clots from migrating from the lower extremities to the lungs. Maximum performance of a filter is achieved by centering the filter in the vena cava. The theory behind the IVC filter is that it stops the big clots from getting to the lung. The efficiency of the device is dependent upon the proper positioning of the filter. If it is not properly positioned, it is not as efficient from the standpoint of its clot-trapping capability. An improperly positioned filter could interfere with hemodialysis or blood flow and create stagnation within the bloodstream, which could lead to the formation of a thrombus. It is important that the patency of the flow out of the kidney through the renal vein into the inferior vena cava be maintained so that there is no interference with the function of the kidney.

Exh. B, March 17, 2017 Letter from David P. Matthews providing "Bellwether Plaintiffs Hill and Gage's Designation of Experts and Opinion Testimony" at 7-8. Other examples include Plaintiffs' proposed expert testimony from Hill treating physician Bellingar, *id*. at 4 ("A foreign body in the duodenum can produce projectile vomiting, the foreign body penetrating the duodenum is of clinical significance."; "A patient with venous stenosis probably would have venous insufficiency/ congestion and would require a referral to a vascular specialist."), and Hill treating physician Zuzga, *id.* at 6 (Court "[W]hen placing the filter in Hill, he would not have expected the filter to become embedded and then perforate the cava and penetrate the duodenum.").[2] In other words, Plaintiffs intend to elicit from their treating physicians the same type of treatment-related background knowledge and opinions that Cook listed in its Rule 26(a)2)(C) summary disclosures. Neither party's intended trial testimony from these treating doctors requires a Rule 26(a)(2)(B) formal report.

The case law that Plaintiffs cite does not support the requirement of Rule 26(a)(2)(B) reports here. Virtually all the cases addressing the necessity of a Rule 26(a)(2)(B) report from a

---

[2] In listing these examples, Cook does not concede that the opinions Plaintiffs have disclosed are necessarily admissible at trial. Cook reserves its right to challenge the admissibility of this testimony on any appropriate ground, including *Daubert* challenges to opinions beyond the physicians' medical specialties or for which there is no reliable methodology.

7

treating physician arise in the context of a plaintiff seeking to have his or her treating doctor go beyond the scope of the doctor's treatment to opine about the cause of the condition for which the doctor treated the plaintiff.  *See, e.g., Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 824 (9th Cir. 2011) (addressing treating physician's new post-treatment opinion on causation developed at plaintiff's request); *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 869 (6th Cir. 2007) (addressing whether evidence showed that treating doctor formed his opinions about causation during treatment); *In re: Zimmer Nexgen Knee Implant Products Liability Litigation*, MDL No. 2272, No. 12-C-6279, at *8, 2015 WL 3799534 (N.D. Ill. June 17, 2015) (addressing which of expert's opinions about causation were developed during treatment and which after treatment); *see also Mackey v. Burlington Northern Santa Fe Ry.*, No. 05-4133-SAC, 2006 U.S. Dist. LEXIS 91649, 2006 WL 3512958, at *2 (D. Kan. Nov. 29, 2006) (permitting a treating physician to testify as to causation "to the limited extent that opinions about the cause of an injury are a necessary part of the patient's treatment" (quoting *Starling v. Union Pacific*, 203 F.R.D. 468, 479 (D. Kan. 2001)).

      None of the cases Plaintiffs cite addresses an adverse party's effort to present to a jury a treating doctor's testimony concerning the doctor's knowledge and opinions before and during a plaintiff's treatment.  On the contrary, every case that Plaintiffs cite in which a court *actually* excluded testimony based on the lack of a Rule 26(a)(2)(B) report based that decision of a plaintiff's retention of the treating doctor during litigation to opine on the cause of plaintiff's complaint.  *See, e.g., Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. Ariz. May 3, 2011) ("Goodman specifically retained a number of her treating physicians to render expert testimony beyond the scope of the treatment rendered; indeed, to form their opinions, these doctors reviewed information provided by Goodman's attorney that they hadn't

8

reviewed during the course of treatment."); *Meyers v. AMTRAK*, 619 F.3d 729, 735 (7th Cir. 2010) (holding Rule 26(a)(2)(B) report was required where treating doctors "prepared letters with opinions as to the causation of [plaintiff's] injuries at the request of [plaintiff's] attorney, specifically for the purpose of litigation"). Indeed, Cook agrees that opinions regarding information supplied to the physicians by either party after they concluded their treatment of the Plaintiffs and not considered during the course of that treatment is inadmissible. *See Goodman*, 644 F.3d at 826; *Meyer*, 619 F. 3d at 735.

Many of the cases Plaintiffs cite held that a Rule 26(a)(2)(B) report was ***not*** required under the circumstances of the case. *See Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 871 (6th Cir. 2007) (reversing summary judgment and holding that treating doctor's testimony did *not* require Rule 26(a)(2)(B) report); *Martin v. Stoops Buick, Inc.*, No. 1:14-cv-00298-RLY-DKL, 2016 WL 4088132 at *4 (S.D. Ind. July 28, 2016) (holding that expert who actually treated plaintiff, albeit retained during litigation, was not a retained expert and did not need to provide a Rule 26(a)2)(B) report). And other cases on which Plaintiffs rely do not even reach the issue. *See Slabaugh v. LG Elecs. USA, Inc.*, No. 1:12-CV-01020-RLY, 2015 WL 1396606, at *2-*4 (S.D. Ind. Mar. 26, 2015) (finding evidence insufficient to determine whether opinions at issue were formed in course of treatment and finding deficiencies in Rule 26(a)(2)(C) disclosures harmless); *Brunswick v. Menard, Inc.*, No. 2:11-CV-247, 2013 WL 5291965, at *3 (N.D. Ind. Sept. 19, 2013) (addressing sufficiency of plaintiffs' Rule 26(a)(2)(C) disclosure and finding any omission harmless). Plaintiffs cite no decision that has required a Rule 26(a)(2)(B) report under circumstances remotely similar to those presented here.

In sum, the testimony Cook intends to elicit at trial from Plaintiffs' treating physicians does not involve facts or opinions developed after the completion of Plaintiffs' treatment or for

the purpose of litigation, but facts and opinions that the doctors knew or relied on in their treatment decisions for the Plaintiffs. Rule 26(a)(2)(B) does not require a formal report setting out such opinions by treating physicians, and the Court should therefore deny Plaintiffs' motion to exclude.

## II. Any Noncompliance with Rule 26(a)(2)(B) Was Harmless and Does Not Justify Exclusion.

Even assuming for the sake of argument that Cook had been required to provide Rule 26(a)(2)(B) reports for some or all of the treating physician testimony it has identified, any failure to do so was entirely harmless and caused Plaintiffs no prejudice. *See* Fed. R. Civ. P. 37(c)(1) (permitting exclusion at trial of undisclosed Rule 26 information "unless the failure was substantially justified or harmless."). Cook does not presently anticipate calling any of Plaintiffs' treating physicians to testify live at trial, but intends instead to designate and play portions of the depositions the doctors gave in discovery in this litigation, depositions that Plaintiffs' attorneys attended and actively participated in. Plaintiffs thus know not only the substance but the exact wording of every piece of expert testimony that Cook could possibly offer from any of these treating physicians. Plaintiffs have known the content of this testimony since their attorneys attended the depositions of these eight treaters between January 11 and May 26, well before the June 12, 2017 deadline for Cook's expert disclosures. And Plaintiffs will know *exactly* which passages from these depositions Cook intends to offer at trial by the August 23, 2017, deadline for deposition designations.

In light of this, Plaintiffs are simply wrong in their conclusory assertion that they "would plainly be harmed by the admission of that opinion evidence, because without expert reports, Plaintiffs are unable to adequately evaluate or counter Defendants' experts' opinion." Pl. Memo. at 12. As Plaintiffs acknowledge, the rules permit exclusion at trial of undisclosed Rule 26

10

information "unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1). The requirement of prejudice is real; Rule 26(a)(2) is not intended to trick unwary litigants or to exclude relevant evidence for purely technical reasons, and courts are reluctant to grant exclusion absent some serious harm to the opposing party. *See, e.g., Martin v. Stoops Buick, Inc.*, No. 1:14-cv-00298-RLY-DKL, 2016 WL 4088132 at *4 (S.D. Ind. July 28, 2016) (finding Rule 26(a)(2)(C) summary insufficient but refusing to exclude and giving plaintiff 15 days to supplement disclosure); *see also Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011) (finding plaintiff failed to comply with Rule 26(a)(2)(B) requirement but nevertheless reversing summary judgment based on exclusion "as a matter of discretion" because plaintiff "should be allowed to rectify her error by disclosing reports for her treating physicians).

"The purpose of Rule 26(a)(2) is to prevent unfair surprise at trial and to permit the opposing party to prepare rebuttal reports, to depose the expert in advance of trial, and to prepare for depositions and cross-examination at trial." *Minebea Co. v. Papst*, 231 F.R.D. 3, 5-6 (D.D.C. 2005). Every one of these goals has been met here, and Plaintiffs have suffered no prejudice. Plaintiffs know every expert opinion that every treating physician could possibly offer at trial; indeed, Plaintiffs' motion does not even claim that they are *actually* unaware of exact substance of the treating physicians' testimony. Plaintiffs have deposed each of the treating doctors, and have disclosed their own intention to offer testimony from those very depositions. And Plaintiffs have had every opportunity to prepare to meet the treating doctors' opinions, and have in fact done so in several of their own experts' reports. Plaintiffs can claim no harm from the lack of formal Rule 26(a)(2)(B) reports from these doctors. There was no surprise, no prejudice, and no basis for exclusion. *See In re: Zimmer Nexgen Knee Implant Products Liability Litigation*, MDL No. 2272, No. 12-C-6279, at *7, 2015 WL 3799534 (N.D. Ill. June 17, 2015) (holding that, to

extent Rule 26(a)(2)(B) report was required, omission of report was harmless where opposing party's expert had opportunity to review deposition testimony and prepare to meet opinions).

Not only are the expert opinions to which Plaintiffs object fully set forth in the deposition transcripts of the treating physicians, most of those opinions appear in those depositions because Plaintiffs' attorneys themselves either elicited the testimony at issue or opened the door on the issue. For example, Plaintiffs themselves elicited the testimony or introduced the issue for every one of the topics Plaintiffs object to in Cook's disclosure of Dr. Frank Lynch (Pl. Memo. at 5):

- **Dr. Lynch's extensive experience in filter placement and retrieval.** Plaintiffs asked Dr. Lynch whether he had one of the largest filter extraction practices in the country, which he confirmed. (Exh. A, Lynch Dep., pp. 89-90).

- **Dr. Lynch's knowledge of the benefits and risks of IVC filters.** Plaintiffs introduced at Dr. Lynch's deposition Exhibit 9, a Powerpoint presentation about IVC filters that included their risks and benefits, and asked him multiple questions about his knowledge and discussion of the risks during the presentation. (*Id*., p. 104).

- **Period of time for removal.** Plaintiffs asked Dr. Lynch multiple questions about his website and the difficulty of filter retrievals (*Id*., p. 95-99), prompting Cook's attorneys to follow up on cross concerning whether he tells patients that there is a specific period of time within which a filter may be removed and why he does not (*Id.*, p. 157).

- **Definitions of perforation and penetration.** Plaintiffs asked Dr. Lynch about the rates of perforation or penetration (*Id.*, p.114-17), prompting Cook's attorney to ask on cross if there is a uniformly held definition of either term among physicians (*Id*., p. 158).

- **Rate of alternative retrieval techniques.** Plaintiffs asked Dr. Lynch about the absence of instructions for alternative retrieval techniques in the Cook IFUs (*Id.*, p. 132) and about whether Lynch asked about such techniques in Cook VISTA trainings and interactions with sales reps (*Id.*, p. 124). Also, on rebuttal, Cook's attorney asked about the rates of complications that Plaintiffs' counsel had raised, essentially following up on the rate of complicated retrievals (*Id.*, p. 160).

- **Never seen a long-term sequelae from penetration of small intestine.** Plaintiffs asked Dr. Lynch if he had concerns over a patient with small intestine penetration and represented that a filter prong in the duodenum made Mrs. Hill think "she was in danger." (*Id.*, pp. 139-40).

Similarly, with respect to Dr. Moreno, the first five topics to which Plaintiffs object in their motion essentially quote Dr. Moreno's responses to *Plaintiffs' own questioning*. Compare Pl. Memo. at 6 (listing testimony) *with* Exh. C, Moreno Dep. Vol. I (Mar. 14, 2017) at 12:22-14:18; 17:16-18:8; 23:16-24:2; 24:8-25:21; 32:1-12; Vol. II (Apr. 26, 2017) at 37:24-38:5; 47:13-16; 59:13-19. Cook could cite similar examples for the other treating doctors at issue, but the Court gets the point.

Thus, Plaintiffs not only cannot claim surprise from the treating doctors' intended testimony, Plaintiffs *themselves* opened the door to these topics and are responsible for the existence of much of that testimony. Indeed, Plaintiffs' suggestion—that Cook's intention to present at trial Plaintiffs' treating doctors' answers to Plaintiff's own deposition questions somehow converts those treating doctors into Cook's "retained" experts—is absurd. Plaintiffs would suffer no unfair prejudice from the admission of the treating doctors' testimony, and the Court should deny the motion.

### III. Plaintiffs' Motion is at Best Premature.

Finally, the Court should at the very least deny Plaintiffs' motion as premature. Cook does not expect presently to call any of Plaintiffs' treating physicians to testify live a trial, and Plaintiffs' motion does not suggest that Plaintiffs intend to do so. As a consequence, both parties will offer the doctors' testimony wholly through the doctors' depositions. At the moment, however, neither party knows exactly what deposition testimony the other party intends to offer at trial: the parties will exchange their deposition designations on August 23.

Plaintiffs' motion thus asks the Court to exclude evidence without being able to tell the Court exactly what that evidence is. Plaintiffs' motion targets broad, vague categories of possible testimony, but they do not and cannot object to a single specific deposition passage

13

*because they do not know what passages Cook may actually offer at trial*.  Without knowing what testimony is at issue, the Court cannot make any of the determinations Plaintiffs' motion would require, *e.g.*, whether a particular opinion was employed or formed in treating the Plaintiffs; whether the opinion needed to be disclosed; if so, whether Cook's disclosure was required to serve a formal Rule 26(a)(2)(B) expert report; and if it was, whether its failure to serve such a formal report was justified or harmless.  Plaintiffs' motion also risks wasting the Court's time by asking it to rule on general objections to unspecified testimony that Cook may not even offer.

The parties will file their objections to each other's deposition designations on September 12, 2017.  At that point, the Court and the parties will know what testimony Cook has designated from the treating physicians' depositions and what objections Plaintiffs may have to specific designations, and the Court will be in a position to make a fully informed decision.  At the very least, the Court should wait to rule on the admissibility of the treating physicians' testimony until that testimony is actually identified.

## CONCLUSION

For the reasons set forth above, Cook urges the Court to deny Plaintiffs' motion seeking to exclude expert opinions of Plaintiffs' treating physicians.

Respectfully submitted,

Dated:  August 3, 2017                                    /s/ John T. Schlafer
                                                                           Andrea Roberts Pierson
                                                                           John T. Schlafer
                                                                           FAEGRE BAKER DANIELS LLP
                                                                           300 North Meridian Street, Suite 2700
                                                                           Indianapolis, Indiana  46204
                                                                           Telephone:  (317) 237-0300
                                                                           Facsimile:  (317) 237-1000
                                                                           andrea.pierson@faegrebd.com
                                                                           john.schlafer@faegrebd.com

James Stephen Bennett, Co-Lead Counsel
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana  46802
Telephone:  (260) 424-8000
Facsimile:  (260) 460-1700
stephen.bennett@faegrebd.com

*Counsel for the Defendants Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 3, 2017, a copy of the foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE EXPERT TESTIMONY OR, IN THE ALTERNATIVE, TO COMPEL EXPERT DEPOSITIONS** was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

/s/ John T. Schlafer