UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND                Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION                 MDL No. 2570

_____

This Document Relates to All Actions
_____

## THE COOK DEFENDANTS' BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO MAINTAIN DOCUMENTS UNDER SEAL [DKT. NO. 5481]

### I.  INTRODUCTION

Plaintiffs have filed Plaintiffs' Memorandum in Opposition to Defendants' Objections to and Appeal from Order Denying Defendants' Motion for Protective Order Barring Proposed Deposition of Kem Hawkins ("Plaintiffs' Opposition") (redacted version*)* [Dkt. No 5479]. They have submitted as supporting exhibits various documents designated as "Company Confidential" by the Cook Defendants[1], pursuant to Case Management Order #8 (Stipulated Protective Order on Confidential Information). In accordance with Local Rules 5-11(d)(1) and 5-11(d)(2)(A)(ii), Plaintiffs filed these confidential documents (Plaintiff's Exhibits 1 through 12) *under seal* and an *unredacted* version of Plaintiffs' Opposition [Dkt. No. 5480] *under seal.*[2] Further, Plaintiffs have filed Plaintiffs' Motion to Maintain Documents Under Seal [Dkt. No. 5481].

As the parties designating the documents as confidential, the Cook Defendants submit this Brief in Support of Plaintiffs' Motion to Maintain Documents Under Seal and respectfully

---

[1]  The Cook Defendants in this matter are Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS (collectively, the "Cook Defendants" or "Cook").

[2]  The *unredacted* version of Plaintiffs' Opposition [Dkt. No. 5480] references and attaches Plaintiff's Exhibits 1 through 12.

US.1134001079

- 2 -

request that the Clerk of this Court maintain these confidential documents and the *unredacted* version of the Plaintiff's Opposition [Dkt. No. 5480] ***under seal***.

The Clerk should maintain Plaintiffs' Exhibits 1 through 11 to Plaintiffs' Opposition under seal because there is good cause for sealing such documents. The documents are confidential and proprietary research and development; post-market analysis; sales, marketing, and public relations; regulatory affairs; and complaint handling documents and information. They constitute confidential business and commercial information entitled to be protected from disclosure. There is good cause to maintain the documents as well as the unredacted version of Plaintiff's Opposition ***under seal*** in order to protect the Cook Defendants' interests in their confidential and proprietary information and to protect the Cook Defendants from competitive harm.

## II.    THE APPLICABLE LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(c)(1)(G), the court may, "for good cause," enter an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Consistent with Rule 26(c)(1)(G), the Seventh Circuit has long provided that documents that "meet the definition of trade secret or other categories of bona fide long-term confidentiality" may be sealed. *See Baxter International, Inc. v. Abbott Laboratories*, 297 F.3d 544, 546 (7th Cir. 2002). Indiana has generally adopted the definition of trade secret found in the Uniform Trade Secret Act. *See, e.g.*, *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 414 (S.D. Ind. 2001).[3] Under this standard, "a protectable trade secret has four characteristics: (1) information; (2) which derives independent economic value; (3) is not generally known or readily ascertainable by proper means by other

---

[3] The Indiana Uniform Trade Secret Act is identical to the Uniform Trade Secrets Act, 1(4), 14 U.L.A. 438 (1985).

- 2 -

US.113401079

persons who can obtain economic value from its disclosure or use; and (4) is the subject of efforts to maintain its secrecy that are reasonable under the circumstances. *E.g., Hamilton v. State Farm Mut. Auto Ins. Co.*, 204 F.R.D. 420, 423 (S.D. Ind. 2001) (citations omitted). Other confidential business or commercial information that does not technically fit the definition of trade secret is similarly entitled to the same level of protection as trade secrets if its disclosure would be harmful.

### Research and Development and Post- Market Product Analysis

Federal courts, including this court, have consistently held that product development, research, and testing documents and information are entitled to protection from disclosure as confidential and proprietary business information. Such information constitutes confidential business information because "a competitor's access to [a company's] research and development . . . present[s] potential dangers and may lead to a windfall to the discovering party." *Star Scientific,* 204 F.R.D. at 416 (S.D. Ind. 2001) (Baker, J.); *see also United States ex rel. Long v. GSD&M Idea City LLC*, 2014 WL 12648520, at *2 (N.D. Tex. Jan. 3, 2014) ("[I]nformation in which the producing party has a commercial interest, such as . . . research data, . . . has been found to constitute confidential commercial information."); *Kowalsky v. Hewlett-Packard Co.*, 2012 WL 892427, at *2 (N.D. Cal. Mar. 14, 2012) (exhibits were "sealable in their entirety because they contain[ed] HP's confidential product testing and evaluation process"); *cf. Andrx Pharm., LLC v. GlaxoSmithKline, PLC,* 236 F.R.D. 583, 586 (S.D. Fla. 2006) ("Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information." (citation omitted)), *affirmed,* 2006 WL 2403942 (S.D. Fla. 2006). Similarly, post-market product analysis is also entitled to protection from disclosure as confidential and proprietary business information. Disclosure of

such proprietary post-market analysis information is harmful because it would "provide a blueprint for competitors." *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at *1 (S.D. Ind. Feb. 2, 2009); *see also Star Scientific*, 204 F.R.D. at 415 (research and data, such as sales techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge").

### Sales, Marketing, and Public Relations

Confidential marketing plans or sales strategies have been held to constitute protectable trade secrets or protected confidential business information. *See, e.g.*, *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1270 (7th Cir. 1995) (trade secret material for sports drink includes information regarding the pricing, distribution and marketing of the drink and not just the drink formula); *Star Scientific*, 204 F.R.D. at 415 (research and data, such as sales techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge"); *Burk v. Heritage Serv. Equip.*, 737 N.E.2d 803, 814 (Ind. Ct. App. 2000) (finding that employee unfairly used marketing information and sales strategies in breach of the Indiana trade secrets clause); *see also Brunswick Corp. v. Jones*, 784 F.2d 271 (7th Cir. 1986) (confidential marketing strategies held protectable); *AGS Capital Corp., Inc. v. Prod. Action Intern., LLC*, 884 N.E.2d 294, 311 (Ind. Ct. App. 2008) (stolen information related to marketing strategy would "put [a company's competitors] at a severe disadvantage"). Good cause exists to maintain the confidentiality of such strategic plans and analysis when disclosure of that information would reveal the company's "response to changing market situations and competitive threats within the marketplace, and could therefore give a competitor insight into '[the company's] internal thinking'" and when publicizing this material "would allow [the company]'s competitors the benefit of this information without incurring the effort or expense."

*Bradburn Parent/Teacher Store, Inc. v. 3M*, 2004 WL 1146665, at *4 (E.D. Pa. May 19, 2004) (citation omitted).

### Regulatory Affairs and Complaint Handling

Courts have held that information related to regulatory compliance and/or submission efforts and strategies constitute confidential business information. *See, e.g.*, *Bayer Healthcare, LLC v. Norbrook Labs., Ltd.*, 2009 WL 3444938, at *1 (E.D. Wisc. Oct. 23, 2009) (good cause existed to seal deposition testimony and internal company emails containing proprietary commercial information and strategy related to an FDA filing). Such proprietary information, like confidential information regarding pricing and sales, is confidential because "the information is created to enhance [companies'] business and give them a competitive edge". *Star Scientific*, 204 F.R.D. at 415.

Internal complaint handling procedures and materials constitute trade secrets in Indiana if they contain (1) information; (2) that derives independent economic value; (3) is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (4) is the subject of efforts reasonable under the circumstances to maintain its secrecy. *Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 759 N.E.2d 239, 245-46 (Ind. Ct. App. 2001); *see also, e.g.*, *Hamilton v. State Farm Mut. Auto. Ins. Co.*, 204 F.R.D. 420, 423-24 (S.D. Ind. 2001); *Rep. Servs. Inc. v. Liberty Mut. Ins. Cos.*, 2006 WL 1635655, at *5 (E.D. Ken. June 9, 2006) (concluding that claims handling and training materials "had economic value to [defendant] due to (1) their confidential nature, (2) the time, effort, and expense [defendant] invested in creating these materials, (3) the evolutionary process surrounding the development of these materials, (4) the competitive nature of the [industry's] business, and (5)

the fact that competitors in [that] industry do not disclose information about their claims handling policies and procedures to one another.").

### III. THE CONFIDENTIAL DOCUMENTS AT ISSUE THAT SHOULD BE MAINTAINED UNDER SEAL

**Exhibit 1 [Dkt. No. 5480-1]** is an internal company email chain between K. Hawkins, R. Lyles, and P. Yonkman titled "IVC," discussing market strategy of Cook's IVC Filters [CookMDL2570_0694848]. This sales, marketing, and public relations document discusses the interplay of Cook's Tulip and Celect filters and efforts to capture market share currently held by competitors. This internal company email chain is designated and stamped: "Company Confidential."

**Exhibit 2 [Dkt. No. 5480-2]** is an internal company email from K. Hawkins to R. Lyles, J. Thyregod, A. Lavender, and others at Cook titled "Re: Tulip Enhancement and Celect Filter Filing and Clinical Trial." [CookMDL2570_0696036]. This email constitutes a research and development and regulatory affairs document since it references enhancement, filing, and clinical trials concerning the Tulip and Celect filters. This internal company email is designated and stamped: "Company Confidential."

**Exhibit 3 [Dkt. No. 5480-3]** is an internal company memo from K. Hawkins to N. Fearnot and L. Milling titled "IVC Filter," wherein Mr. Hawkins encouraged N. Fearnot and L. Milling to encourage activities related to filters [produced natively at CookMDL2570_0695962]. This memo constitutes a research and development and post-market product analysis document since it references studies (animal and clinical) related to the Celect filters. The slip-sheet produced for this native production of an internal company memo is designated and stamped: "Company Confidential."

**Exhibit 4 [Dkt. No. 5480-4]** is an internal company memo titled "IVC Filter Executive Committee Minutes," listing K. Hawkins, R. Lyles, A. Lavender, J. Thyregod, and other Cook employees as participants [produced natively at CookMDL2570_1274449].  This research and development, post-market product analysis, regulatory affairs, and sales, marketing, and public relations document provides details and action steps related to Tulip and Celect, including sales information, regulatory submissions, testing, and clinical studies.  The slip-sheet produced for this native production of an internal company memo is designated and stamped:  "Company Confidential."

**Exhibit 5 [Dkt. No. 5480-5]** is an internal company email chain between K. Hawkins, T. Heise, and R. Lyles, and other Cook employees titled "Re: Review of Celect Data [on Penetrations]." [CookMDL2570_0427903].  Among other things, this email chain constitutes a complaint handling, post-market product analysis and sales, marketing, and public relations document since it discusses issues and actions associated with data on the Celect Filter, and product follow-up with physicians and Cook employees.  This internal company email chain is designated and stamped:  "Company Confidential."

**Exhibit 6 [Dkt. No. 5480-6]** is an internal company email chain between K. Hawkins, R. Harden, and C. McIntosh titled "RE: Tulip Filter from UNC Hospitals," discussing an incident involving a patient with an IVC filter [CookMDL2570_0300302-3].  This email chain constitutes a complaint handling and regulatory affairs document since it discusses issues and actions associated with an adverse event involving an IVC filter and a surgeon's plan to report the same to the FDA.  This internal company email chain is designated and stamped:  "Company Confidential."

- 8 -

**Exhibit 7 [Dkt. No. 5480-7]** is an internal company email chain between K. Hawkins, R. Lyles, A. Lavender, and other Cook employees titled "[] AVF filter perforation ppt," wherein Mr. Hawkins forwarded a PowerPoint presentation to several Cook employees that he had received from D. Wu [CookMDL2570_0850270-1]. This email chain constitutes a complaint handling and post-market product analysis document since it is passing along information concerning adverse events related to filters. This internal company email chain is designated and stamped: "Company Confidential."

**Exhibit 8 [Dkt. No. 5480-8]** is an internal company PowerPoint presentation titled "PV-1-Endless Retrievable Tulip Vena Cava Filter." [produced natively at CookMDL2570_0832537]. This research and development and regulatory affairs document discusses background and issues related to design and regulatory submissions for Cook filters. The slip-sheet produced for this native production of an internal company PowerPoint is designated and stamped: "Company Confidential."

**Exhibit 9 [Dkt. No. 5480-9]** is an internal company email chain between K. Hawkins, B. Gibbons, J. Thyregod, M. Frye, and other Cook employees titled "Projects," wherein Mr. Hawkins requests status updates on Cook projects [CookMDL2570_0835644-5]. This research and development document discusses status updates on various Cook product designs and projects. This internal company email chain is designated and stamped: "Company Confidential."

**Exhibit 10 [Dkt. No. 5480-10]** is an internal company email chain between K. Hawkins, R. Lyles, and P. Yonkman titled "Celect and next generation." [CookMDL2570_0433348]. This sales, marketing, and public relations and research and development document discusses,

among other things, market strategy concerning Cook's IVC Filters and product performance. This internal company email chain is designated and stamped: "Company Confidential."

**Exhibit 11 [Dkt. No. 5480-11]** is an internal company memo titled "Marketing Update," regarding the Günther Tulip Vena Cava MReye$^{TM}$ Filter Sets [produced natively at CookMDL2570_0731664]. As suggested by its title, this is a sales, marketing, and public relations document and it discusses the strategic importance, target market, and marketplace positioning of the Tulip filter. The slip-sheet produced for this native production of an internal company memo is designated and stamped: "Company Confidential."

**Exhibit 12 [Dkt. No. 5480-12]** is the coversheet and a one-page excerpt (page 27) from the Videotaped 30(b)(6) Deposition of Mark A. Breedlove on January 16, 2015. Mr. Breedlove's deposition was designated as "Confidential." This excerpt from page 27 of the deposition contains only testimony concerning Mr. Breedlove's employment positions at Cook. It does not contain trade secret information or other confidential business information. Cook consents to the unsealing of Exhibit 12.

## IV.   THERE IS GOOD CAUSE TO MAINTAIN THE DOCUMENTS UNDER SEAL

Good cause exists to maintain Exhibits 1 through 11 under seal. The documents constitute confidential business and commercial information, and the Cook Defendants would face competitive and economic harm if such materials were made publicly available. Redaction is not a viable option because it would not provide the Cook Defendants adequate protection. The documents at issue do not merely contain discreet pieces of confidential business and commercial information that can be redacted. Rather, the documents in their entirety constitute confidential business and commercial information. They contain confidential, proprietary, and sensitive internal company information on research and development; post-market analysis;

sales, marketing, and public relations; regulatory affairs; and complaint handling documents and information.  The documents should not be disclosed to the public.

### A.     Exhibits 1, 10, 11

The internal company email chains and internal company documents in Exhibits 1, 10, and 11 all address sales, marketing, and public relations.  Exhibit 1 discusses the interplay of Cook's Tulip and Celect filters and efforts to capture market share currently held by competitors; Exhibit 10 discusses market strategy concerning Cook's IVC Filters and product performance; Exhibit 11 - an internal company memo titled "Marketing Update" - discusses the strategic importance, target market, and marketplace positioning of the Tulip filter.  Each of these exhibits should be maintained under seal for good cause as confidential business information about sales, marketing, and public relations.

As the Cook Defendants more fully demonstrated in their May 1, 2017 letter to Magistrate Judge Tim A. Baker and the supporting Declaration of Mark Breedlove (attached for reference as Exhibit A), the medical device industry, and the IVC Filter market in particular, is highly competitive.  Declaration of Mark Breedlove ("Breedlove Decl.") at ¶ 4.  In order to succeed in this environment, Cook commits substantial time, internal resources, and money to optimize its sales and marketing techniques and to maintain positive public perceptions through public relations.  *Id*. at ¶ 5.  For example, Cook routinely conducts analyses of the IVC Filter market and how its products fit into that market; compares the performance of its product line to that of competitor products; and develops key messaging for use with potential customers, and the public, to promote the organization, the product line, or both.  *Id*. at ¶ 14.  Although the final product of Cook's efforts may ultimately be made public, Cook's internal deliberations, drafts, ideas, and otherwise non-final product are kept in confidence, and are considered proprietary to

Cook. *Id*. If this information were publicly disclosed, it "would allow [Cook's] competitors the benefit of this information without incurring the effort or expense." *Bradburn Parent/Teacher Store*, 2004 WL 1146665, at *4. Such disclosure of Cook's internal product development strategies, and internal business philosophies, and goals and objectives would give its competitors an unfair insight into Cook's internal thinking. *Id.*; Breedlove Decl. ¶ 15.

In sum, good cause exists to maintain Exhibits 1, 10, 11 under seal. Cook's sales, marketing, and public relations information and strategies are confidential and proprietary. The disclosure of such information would result in competitive harm to Cook. Exhibits 1, 10, 11, should be sealed.

### B.      Exhibits 2, 3, 8, and 9

The internal company email chains, memo, and PowerPoint presentation which comprise Exhibits 2, 3, 8, and 9 all discuss product research, development, and testing. The internal company email at Exhibit 2 titled "Re: Tulip Enhancement and Celect Filter Filing and Clinical Trial" references product enhancement with respect the Tulip Filter and a clinical trial with respect to the Celect Filter; the internal company memo at Exhibit 3 references studies (animal and clinical) related to the Celect filters; the Powerpoint presentation at Exhibit 8 discusses background and issues related to design and regulatory submissions for Cook filters – touching on both product development and regulatory affairs; and the internal company email chain at Exhibit 9 discusses status updates on various Cook product designs and projects. These exhibits should be maintained under seal for good cause as confidential business information regarding product research and development.

As with Exhibits 1, 10, 11, the Cook Defendants' May 1, 2017 letter to Magistrate Baker and the Breedlove Declaration show good cause to maintain Exhibits 2, 3, 8, and 9 under seal.

- 11 -

Cook invests substantial resources into research and development, including with regard to Cook's IVC filter technology. Breedlove Decl. ¶ 6. Cook maintains strict confidentiality over its research and development ideas, efforts, and results, and considers such information to be proprietary to the company. *Id*. Disclosure of such information would result in competitive harm to Cook and could "lead to a windfall to the discovering party." *Star Scientific*, 204 F.R.D. at 416; Breedlove Decl. ¶ 7. and safety. *Id*. at ¶ 9.

Good cause exists to maintain Exhibits 2, 3, 8, and 9 under seal**.** Cook invests substantial resources into research and development and maintains strict confidentiality over its efforts. The medical device industry, and the IVC Filter market in particular, is highly competitive. The disclosure of Cook's confidential research and development information would result in competitive harm to Cook. Exhibits 2, 3, 8, and 9 should be sealed.

      C.     **Exhibits 6 and 7**

The internal company email chains at Exhibits 6 and 7 address, among other things, complaint handling. Exhibit 6 is an internal company email chain titled "RE: Tulip Filter from UNC Hospitals" which discusses an adverse event involving an IVC filter. Exhibit 7 is an internal company email titled "[] AVF filter perforation ppt," and passes along information concerning adverse events related to filters. Both exhibits should be maintained under seal for good cause as confidential business information regarding product complaint handling.

These exhibits also should be maintained as confidential and under seal for additional reasons. Exhibit 6 contains confidential regulatory affairs information, and Exhibit 7 contains confidential post-market product analysis information.

Again, the Cook Defendants' May 1, 2017 letter to Magistrate Baker and the Breedlove Declaration are instructive and demonstrate good cause to maintain Exhibits 6, 7 under seal.

US.113401079

With regard to complaint handling, Cook has developed complaint handling protocols and processes that govern the manner in which Cook responds to complaints, the types of information Cook evaluates in response to complaints, and the concerns and factors that drive Cook's decision-making in the complaint handling process. Breedlove Decl. ¶ 12. Cook maintains strict confidentiality with regard to its complaint handling efforts, as well as the underlying processes and protocols for such efforts. *Id.*

With respect to regulatory affairs, Cook invests substantial time and resources in developing regulatory strategies that ensure regulatory compliance in what Cook deems to be the best and most efficient ways possible. Breedlove Decl. ¶ 10. Cook maintains confidentiality with regard to its interactions with the agencies that regulate Cook, including the FDA, as well as the methods and strategies it employs in planning for regulatory submissions, responding to regulatory inquiries, and other aspects of regulatory affairs, because such information is the product of great investment and provides commercial and competitive benefits for Cook. *Id.* Disclosure of Cook's regulatory compliance methods and strategies would lead to a competitive disadvantage for Cook, as its competitors would be able to access, and potentially adopt and benefit from Cook's methods and strategies, without having to make the investment that Cook was required to make. *Id.* at ¶ 11.

Finally, with respect to post-market analysis, Cook undertakes substantial efforts to evaluate the performance of its medical devices (including IVC filters), as well as competitor devices in the industry, post-market. Breedlove Decl. ¶ 8. These include efforts to (among other things) evaluate adverse event reports, both quantitatively and qualitatively; review and internally evaluate peer-reviewed literature about Cook and competitor products; to perform testing on characteristics of Cook and competitor products; and, when there are reported failures,

to study and understand how and why Cook or competitor products allegedly failed. *Id*. Cook's methods of assessing its own products, including characteristics of products it may want to improve, could be exploited to Cook's commercial disadvantage and even discourage Cook employees (as well as the employees of other organizations in the medical device industry) from engaging in and/or memorializing such analyses, which could have a negative impact on product development and safety. Disclosure of Cook's post-market analysis efforts would harm Cook.

Good cause exists to maintain Exhibits 6 and 7 under seal. Cook maintains strict confidentiality over its complaint handling efforts and its regulatory affairs and interactions with agencies that regulate Cook, including the FDA. Further any disclosure of proprietary post-market analysis information would harm Cook because it would "provide a blueprint for competitors." *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at *1 (S.D. Ind. Feb. 2, 2009); *see also Star Scientific*, 204 F.R.D. at 415 (research and data, such as sales techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge"). The disclosure of Cook's confidential complaint handling information, confidential regulatory affairs information, and proprietary post-market analysis information would result in competitive harm to Cook. Exhibits 6 and 7 should be sealed.

### D.     Exhibits 4 and 5

The internal company memo "IVC Filter Executive Committee Minutes" at Exhibit 4 provides details and action steps related to Tulip and Celect, including sales information, regulatory submissions, testing, and clinical studies. Given its scope, it touches on a number of categories of confidential business and commercial information including: research and development; post-market analysis; regulatory affairs; and sales, marketing, and public relations.

US.113401079

The internal company e-mail chain titled "Re: Review of Celect Data on Penetrations" at Exhibit 5 discusses issues and actions associated with data on the Celect Filter and product follow-up with physicians and Cook employees. Like Exhibit 4, Exhibit 5 touches on a number of categories of confidential information including: complaint handling; post-market analysis; and sales, marketing, and public relations.

Again, the Cook Defendants' May 1, 2017 letter to Magistrate Baker and the Breedlove Declaration are instructive and demonstrate good cause to maintain Exhibits 4 and 5 under seal. The Breedlove Declaration has been discussed extensively throughout this Brief in Support. The Breedlove Declaration along with the legal authority in Section II. demonstrate good cause to maintain Exhibits 4 and 5 under seal.

The disclosure of Cook's confidential and proprietary research and development; post-market analysis; sales, marketing, and public relations; regulatory affairs; and complaint handling information contained in Exhibits 4 and 5 would result in competitive harm to Cook. Exhibits 4 and 5 should be sealed.

## V.  CONCLUSION

For all the foregoing reasons, the Cook Defendants respectfully request that the Court issue an Order directing the Clerk to maintain Exhibits 1 through 11 – Dkt. Nos. 5480-1, 5480-2, 5480-3, 5480-4, 5480-5, 5480-6, 5480-7, 5480-8, 5480-9, 5480-10, and 5480-11 – to Plaintiffs' Opposition under seal. The documents at issue are confidential and proprietary business information on research and development; post-market product analysis; sales, marketing, and public relations; regulatory affairs; and complaint handling. There is good cause to seal the documents to prevent public disclosure and competitive harm to the Cook Defendants.

The documents are confidential and proprietary in their entirety so "redacted (confidential portions blacked out) public version[s]" of these documents have *not* been submitted for consideration.  *See* L.R. 5-11(d)(3).

Further, the *unredacted* version of Plaintiffs' Opposition [Dkt. No. 5480] referencing and attaching the Exhibits should be maintained under seal.

In accordance with Local Rule 5-11(e)(4), the Cook Defendants have submitted as an attachment to this brief a proposed order maintaining documents under seal.  *See* Exhibit B.

Respectfully submitted,

Dated:  August 4, 2017
/s/ Andrea Roberts Pierson
Andrea Roberts Pierson (# 18435-49)
J. Joseph Tanner (# 11856-49)
Nicholas B. Alford (# 31867-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-Mail:  joe.tanner@faegrebd.com
E-Mail:  nicholas.alford@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

- 17 -

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2017, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

/s/ Andrea Roberts Pierson