UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| In Re: COOK MEDICAL, INC., IVC | ) | |
| FILTERS MARKETING, SALES | ) | |
| PRACTICES AND PRODUCT | ) | |
| LIABILITY LITIGATION | ) | 1:14-ml-02570-RLY-TAB |
| _____ | ) | MDL No. 2570 |
| | ) | |
| This Document Relates to: | ) | |
| *Barbara Gettman, et al.* | ) | |
| Cause No. 1:17-cv-6064-RLY-TAB | ) | |
| _____ | | |

**ENTRY ON DEFENDANTS' MOTION TO DISMISS OR STRIKE CLASS
ALLEGATIONS and THE PARTIES' MOTIONS FOR EXTENSION OF TIME**

On June 2, 2017, the Cook Defendants filed a Motion to Dismiss or Strike Class

Allegations. For the reasons explained below, the Cook Defendants' motion is **DENIED.**

Additionally, the parties filed for extensions of time to file a Response and a Reply.

Plaintiffs' Unopposed Motion for Extension of Time to Respond to Defendants' Motion

to Dismiss or Strike Class Allegations is **DENIED as MOOT**, and the parties' Amended

Joint Motion for Extension of Time to Respond and Reply to Defendants' Motion to

Dismiss or Strike Class Allegations is **GRANTED**.

**I.      Background**

The Cook Defendants manufacture, market, distribute, and sell medical devices

known as, *inter alia*, the Gunther Tulip Vena Cava Filter and the Cook Celect Vena Cava

Filter ("IVC filters"). (Filing No. 29, FAC ¶ 2). IVC filters are designed to filter or

"catch" blood clots that travel from the lower portions of the body to the heart and lungs.

1

(*Id.* ¶ 22).  The FAC alleges that Cook's IVC filters are prone to fracture, migrate, and to become lodged in a vein, artery, or organ.  (*Id.* ¶ 3).  They are also prone to tilt within the inferior vena cava, perforating the vena cava and/or causing the formation of blood clots. (*Id.*).  On this topic, the FAC refers to a May 2014 safety communication concerning IVC filters issued by the Food and Drug Administration ("FDA"), in which the FDA recommended that physicians and clinicians responsible for the ongoing care of patients with retrievable IVC filters should consider removal of the filter as soon as the risk from pulmonary embolism has passed.  (*Id.* ¶ 73).  The FDA also encouraged all physicians involved in the treatment and follow-up of patients receiving IVC filters to consider the risks and benefits of filter removal for each patient, and that the filter should be removed if the risk/benefit profile favored removal.  (*Id.*).

Plaintiffs, Barbara Gettman, Alfred Hakim, Dale Holdgreve, Henry Johnson, Detrice Livingston, and Wendy Novel, are residents of six states—Arizona, California, Colorado, Maryland, Ohio, and Pennsylvania—who were implanted with one of Cook's retrievable IVC filters.  (*Id.* ¶¶ 9-14).  They are presently asymptomatic.  (*Id.*). Concerned

about their future well-being, they brought the present action for medical monitoring[1] and

negligence.[2]

Pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure, they seek to

represent the following classes:

> All [Arizona, California, Colorado, Maryland, Ohio, and Pennsylvania] residents who, between October 31, 2003 and the date of the filing of this complaint, were implanted with a Cook IVC Filter—whose filter has not been explanted, and who has not filed a claim or lawsuit for personal injury relating        to        the        Cook        IVC        Filter.

(*Id.* ¶ 83).    On behalf of the proposed class,

> 75.  Plaintiffs seek a monitoring program designed to evaluate whether the risk/benefit profile of every Class Member favors removal of the Cook IVC Filter and, if so, to gather information on the appearance, condition, and location of the IVC filter, including whether it has fractured, migrated, perforated, or tilted, in order to provide a physician with the information necessary to remove the Cook IVC Filter safely and to prevent and mitigate severe and life-threatening complications.

> 76.  Specifically, Plaintiffs seek a medical monitoring protocol which consists of a notice campaign to all Class Members informing them of the availability and necessity of the medical monitoring protocol; imaging of the filter and surrounding structures performed with a non-contrast CT scan of

---

[1] "A claim for medical monitoring lies when a plaintiff seeks compensation for a toxic exposure that has not yet produced any physical manifestation of injury or disease." *Dhamer v. Bristol-Myers Squibb Co.*, 183 F.R.D. 520, 523 n.2 (N.D. Ill. 1998). To prevail under Pennsylvania law, a plaintiff must prove: (1) exposure greater than normal background levels; (2) to a proven hazardous substance; (3) caused by the defendant's negligence; (4) as a proximate result of the exposure, plaintiff has a significantly increased risk of contracting a serious latent disease; (5) a monitoring procedure exists that makes the early detection of the disease possible; (6) the prescribed monitoring regime is different from that normally recommended in the absence of the exposure; and (7) the prescribed monitoring regime is reasonably necessary according to contemporary scientific principles. *Redland Soccer Club, Inc. v. Dep't of the Army and Dep't of Defense of the U.S.*, 696 A.2d 137, 145-46 (Penn. 1997).

[2] Colorado and Pennsylvania recognize medical monitoring as an independent claim for relief. (FAC ¶ 92).  Arizona, California, Maryland, and Ohio recognize medical monitoring as a remedy and/or recoverable item of damages for negligent or tortious conduct.  (*Id.* ¶ 106).

the abdomen in order to provide a detailed and accurate assessment of the current status of the device and critical information as to the safety and difficulty of possible filter removal; and review of the patient data collected by the protocol by an experienced interventional radiologist for every Class Member who still has a Cook IVC filter installed.  The purpose of the monitoring procedure is then to allow the Class Member (or Class Member's care givers) to meet with the Class Member's physician to determine if retrieval is clinically necessary and, if so, to provide the physician with necessary information regarding how best to approach removal of the Cook IVC filter.

(*Id.* ¶¶ 75-76).  The medical monitoring protocol "aims to reduce complications by aiding in the detection and remediation of any malfunction and also generally provides awareness of the issue so it can be investigated."  (*Id.* ¶ 77).  Without this protocol, Plaintiffs allege, "many if not most patients implanted with these IVC Filters will not even be aware of the serious risk they are in."  (*Id.*).  To pay for the protocol for all class members, Plaintiffs ask the court to establish a court-supervised and court-administered trust fund.  (*Id.* ¶ 103).

## II.     Standard of Review

Where a defendant moves to dismiss the class allegations before discovery, the court evaluates the motion under the standard applied in deciding a motion to dismiss for failure to state a claim.  *Ladik v. Wal-Mart Stores, Inc*., 291 F.R.D. 263, 269 (W.D. Wisc. May 24, 2013) (citing *Sjoblom v. Charter Commc'ns, LLC*, No. 3:07-cv-451-bbc, 2007 WL 4560541, at *6 (W.D. Wisc. Dec. 19, 2007)).  The court thus considers whether the plaintiffs' allegations "'state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In the context of the present motion, "the question is whether the

[P]laintiffs' allegations are sufficient to show that it is plausible that [they] will be able to satisfy the Rule 23 requirements after conducting discovery." *Id.*

## III.    Rule 23(b)(2)

Rule 23(b)(2) allows class treatment when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." "The key to a Rule 23(b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011).  Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Id.* at 360-61.  But the *Dukes* Court left open the question of "whether there are any forms of 'incidental' monetary relief that are consistent with the interpretation of Rule 23(b)(2) we have announced and that comply with the Due Process Clause." *Id.* at 366.

## IV.    Discussion

The Cook Defendants argue Plaintiffs' proposed class impermissibly seeks monetary damages.  Plaintiffs respond that they seek only court-supervised medical services—a one-time scan of their filters to determine the position and state of their filters.  Plaintiffs maintain they are not seeking monetary damages, as the radiologists will be paid out of a court-supervised fund.

"The dispositive factor that must be assessed to determine whether a medical

monitoring claim can be certified as a Rule 23(b)(2) class is the type of relief a plaintiff

actually seeks." *Dhamer*, 183 F.R.D. at 528.  In *Donovan v. Philip Morris USA, Inc.*, 268

F.R.D. 1 (D. Mass. 2010), the District of Massachusetts explored this issue and observed:

> Relief in the form of medical monitoring may be by a number of means.
> First, a court may simply order a defendant to pay a plaintiff a certain sum of
> money.  The plaintiff may or may not choose to use that money to have his
> medical condition monitored.  Second, a court may order the defendants to
> pay the plaintiffs' medical expenses directly so that a plaintiff may be
> monitored by the physician of his choice.  Neither of these forms of relief
> constitute injunctive relief as required by Rule 23(b)(2).
>
> However, a court may also establish an elaborate medical monitoring
> program of its own, managed by court-appointed court-supervised trustees,
> pursuant to which a plaintiff is monitored by particular physicians and the
> medical data produced is utilized for group studies. In this situation, a
> defendant, of course, would finance the program as well as being required by
> the Court to address issues as they develop during the program
> administration.  Under these circumstances, the relief constitutes injunctive
> relief as required by Rule 23(b)(2).

*Id.* at 22 (quoting *In re NLO*, 144 F.R.D. 330, 335-36, (S.D. Ohio 1992), *vacated in part*

*on other grounds*, *In re NLO, Inc.*, 5 F.3d 154, 160 (6th Cir. 1993)).  *See also Kartman v.*

*State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 894 n. 9 (7th Cir. 2011) ("[I]f the court

establishes its own medical-monitoring program managed by court-appointed trustees,

the remedy could then be characterized as injunctive even if the defendants are required

to pay for the program.") (citing *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 131-32 (3d

Cir. 1998)).

At the pleadings stage, the medical-monitoring protocol which seeks to establish

a court-supervised and court-administered trust fund for the benefit of the Plaintiffs and

the proposed class members qualifies as injunctive relief even though the Cook

Defendants will ultimately be responsible for funding the protocol.  Contrary to the Cook

Defendants' assertion, the requested relief—a CT scan to determine the state and location

of the filter and whether it should and can be retrieved—applies to all Plaintiffs and class

members.  While the ultimate decision to remove the filter will involve a risk/benefit

analysis, the weighing process is not undertaken as part of the proposed diagnostic

protocol.

As Plaintiffs acknowledge, they will ultimately need to demonstrate "the clinical

value of early detection and diagnosis," and the necessity "for specific monitoring

beyond that which an individual should pursue as a matter of general good sense and

foresight."  *Potter v. Firestone Tire & Rubber Co.*, 863 P.2d 795, 825 (Cal. 1993).  This

(along with other common questions that will be a part of the class certification inquiry)

is a factual question, and one that Plaintiffs will need to show is subject to common proof

at the class certification stage, not the pleadings stage.

## IV.   Conclusion

Given the allegations of the First Amended Complaint, it is plausible that

Plaintiffs will be able to satisfy the requirements of Rule 23(b)(2) at the certification

stage, following discovery.  Accordingly, the Cook Defendants' Motion to Dismiss or

Strike Class Allegations (Filing No. 4954) is **DENIED**.  In addition, Plaintiffs'

Unopposed Motion for Extension of Time to Respond to Defendants' Motion to Dismiss

or Strike Class Allegations (Filing No. 5001) is **DENIED as MOOT**, and the parties'

Amended Joint Motion for Extension of Time to Respond and Reply to Defendants'

Motion to Dismiss or Strike Class Allegations (Filing No. 5002) is **GRANTED**.

**SO ORDERED** this 8th day of August 2017.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.