# EXHIBIT B

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 1

1         UNITED STATES DISTRICT COURT
2          SOUTHERN DISTRICT OF INDIANA
3              INDIANAPOLIS DIVISION
4
5    ----------------------------------
     IN RE: COOK MEDICAL, INC., IVC    )
6    FILTERS MARKETING, SALES          )
     PRACTICES AND PRODUCT LIABILITY   ) Case No.
7    LITIGATION,                       )
                                       ) 1:14-ml-2570-RLY-TAB
8    ----------------------------------
                                       ) MDL No. 2570
9    This Document Relates in          )
     ALL ACTIONS                       )
10                                     )
     ----------------------------------
11
12
13
14
15
16       DEPOSITION OF MICHAEL C. FISHBEIN, M.D.
17              LOS ANGELES, CALIFORNIA
18                FRIDAY, JULY 21, 2017
19
20
21
22   Job No. 2630175
23   Reported by:
     RICKI Q. MELTON, RPR
24   CSR No. 9400
25

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 25

1  lectures, research papers, book chapters,
2  et cetera, other than what you just mentioned here?
3      A    No.
4      Q    All right. And what area of expertise, in
5  your mind, have you been -- have you brought to
6  bear in this case? What is -- what is the area of
7  expertise that you are using here?
8      A    General pathology, autopsy pathology, and
9  cardiovascular pathology.
10     Q    Okay. Any other areas of expertise that
11 you've brought to bear on your work in this case?
12     A    Well, I have done quite a bit of research
13 on prosthetic devices used in human beings.
14     Q    What are those prosthetic devices that you
15 have done some research on?
16     A    Artificial heart valves, cardiac stents,
17 pacemakers, laser energy applied to the
18 cardiovascular system.
19     Q    Any others?
20     A    I think those are the major ones.
21     Q    Okay. And you mention stents. Just so
22 that the jury that might be hearing your testimony
23 some day understands, just describe for layman's
24 terms what a stent is.
25     A    A stent is an artificial device usually

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 60

1  Q    Okay.  Does that sort of mean about
2  60 percent time doing pathology?
3  A    Well, it's more like 80 percent now.
4  Q    Okay.  Depends on the time?
5  A    It's supposed to be 43 percent.
6  Q    It's supposed to be 43?
7  A    That's what they pay you, 43 percent --
8  Q    Okay.
9  A    -- but it's -- it's -- I'm probably
10 working about 80 percent.
11 Q    Okay.  What -- generally tell us what
12 procedures a pathologist performs.
13 A    Well, every pathologist is a little bit
14 different.
15 Q    Okay.
16 A    It depends if you are in academics, in a
17 private hospital, a corporate pathologist, but
18 someone like me in academics, you spend part of
19 your time teaching, part of your time doing
20 research of one type or another, and then part of
21 your time in what I would call clinical or
22 patient-related work, and that consists of doing
23 autopsies, maybe doing some cytology, which is
24 looking at cells on a slide, and I think what most
25 anatomic pathologists spend their time doing is

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 61

1  looking at biopsies from living patients.  So
2  someone has a lump somewhere, it's taken out and
3  sent to pathology and the pathologist studies it
4  and makes a diagnosis.
5      Q    And you said anatomic pathologist.  Is
6  that what category you would fit into?
7      A    Yes.
8      Q    When you were practicing full time, how
9  would you divide out -- you mentioned a couple of
10 different things that you do.  Some is in autopsy;
11 some is anatomical pathology, you know, viewing
12 tissues, things like that; some teaching.
13          How would you split out kind of by
14 percentagewise roughly what you spend your time
15 doing?
16     A    Right.  It's not the same every year, and
17 there's a little bit of overlap.
18          For example, if you are at an academic
19 institution when you're doing clinical work, you
20 are always working with a resident or fellow.  So
21 the teaching and the service work goes out at the
22 same time --
23     Q    Uh-huh.
24     A    -- but I would say, for most of my career,
25 I spent about 30 percent of the time on clinical

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 64

1  has been spent mainly dealing with actual tissue;
2  not images of tissues; is that correct?
3      A    Correct.
4      Q    And you don't examine or treat patients;
5  right?
6      A    That's correct.
7      Q    And don't diagnose disease in patients;
8  right?
9      A    Well, I diagnose disease in the pathology,
10 but I don't -- I don't examine patients and make a
11 diagnosis.
12     Q    Got you. Okay. Right.
13          You help diagnosis the disease that got
14 them at the end of the day?
15     A    Well, no. I mean, in a living patient,
16 the pathologist isn't making the diagnosis.
17     Q    I understand. That's true. That's a fair
18 correction.
19          So you will get some tissue and you will
20 say this is cancerous and that will be a diagnosis?
21     A    Right. Even though the patient may think
22 that it's the surgeon who is making the diagnosis,
23 it's actually the pathologist who is making the
24 diagnosis.
25     Q    Okay. I got you.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 66

1  radiology?
2      A    That's correct.
3      Q    Not an expert in vascular surgery?
4      A    That's correct.
5      Q    You are not an expert in engineering?
6      A    That's correct.
7      Q    Not an expert in interventional cardiology?
8      A    Correct.
9      Q    You are not an expert in medical device
10 design?
11     A    Correct.
12     Q    Not an expert in medical device testing?
13     A    Correct.
14     Q    Not an expert in epidemiology?
15     A    Correct.
16          MR. SCHULTZ:  I'm sorry, Chuck, to
17 interrupt.  I'll interpose a form objection on the
18 interventional -- the one before the --
19          MR. WEBBER:  Interventional cardiology?
20          MR. SCHULTZ:  Medical device testing.  As
21 vague.
22 BY MR. WEBBER:
23     Q    You are not an expert on epidemiology?
24     A    Correct.
25     Q    Not an expert on biostatistics?

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 67

1    A    Correct.

2    Q    See if I can spit this out.

3         You do not hold yourself out as expert on
4  FDA regulations; correct?

5    A    Correct.

6    Q    And do you believe that you are qualified
7  to read and interpret CT scans?

8    A    No.

9    Q    Do you believe that you are qualified to
10 read and interpret venograms?

11   A    No.

12   Q    Do you believe that you are qualified to
13 read and interpret MRIs?

14   A    No.

15        MR. WEBBER:  Okay.  Let's take a short
16 break here because I just want to get some copies
17 of some of these things because I'm going to ask
18 you a little bit about the billing records.

19        Why don't we just take a few-minute break.
20 We can visit the rest room or whatever and I'll get
21 some copies.

22        VIDEO OPERATOR:  We are off the record at
23 10:15 A.M.

24        (Off the record.)

25        VIDEO OPERATOR:  We are back on the record

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 232

1  pour some water.
2       MR. WEBBER: Yeah, that's fine. Let's
3  take a break.
4       VIDEO OPERATOR: We are off the record at
5  2:15 P.M.
6       (Off the record.)
7       VIDEO OPERATOR: We are back on the record
8  at 2:27 P.M.
9  BY MR. WEBBER:
10      Q   Doctor, in your report at pages 13 to 14,
11 you offer some opinions about the specific cases of
12 Elizabeth Hill and Arthur Gage; correct?
13      A   Yes.
14      Q   You've not seen any actual tissue --
15 tissue samples from either Ms. Hill or Mr. Gage;
16 correct?
17      A   Correct.
18      Q   You've not seen any sections or any slides
19 of tissue samples from either Ms. Hill or Mr. Gage;
20 correct?
21      A   Correct.
22      Q   And you've not done an autopsy on either
23 of them because I have reason to believe they're
24 still alive today.
25      A   That's correct.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 233

1  Q    So my question is: How are you able to
2  offer an opinion about the vascular effects of
3  their IVC filters on them when you haven't had a
4  chance to look at their tissue either in gross or
5  microscopically?
6  A    Well, first of all, I don't -- what I did
7  see was endoscopy photos that show the -- a strut
8  going through the duodenum.
9  Q    And that's from Ms. Hill; correct?
10 A    Yes, from Ms. Hill.
11      So you don't have to be a -- a pathologist
12 to know that that's a perforation.
13 Q    Okay. And you --
14 A    I just discuss -- I just discuss there that
15 scar can happen and that there was -- according to
16 the imaging, the apex was attached to the wall, and
17 that indicates that the filter was tilted. There's
18 no other way that the apex could be attached to the
19 wall.
20      And then I say that a -- that's a position
21 that has been associated with complications. I
22 don't say that happened in here.
23 Q    Okay. And -- and let's stick with Ms. Hill
24 just for a second.
25 A    Okay.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 239

1  effects of the IVC filter on Mr. Gage?
2      A    Well, he had CT scans done that showed
3  that struts were present in the aorta, in the right
4  renal vein near the duodenum, and near the liver.
5  So again, by my definition, that's perforation.
6      Q    Were those CT scans that you personally
7  reviewed, or are those just reports of CT scans
8  that were in the records that you reviewed?
9      A    Just reports.
10     Q    Okay.  And I think you testified earlier
11 you're not -- it's not part of your qualifications
12 to be able to read and interpret CT scans; correct?
13     A    Right.
14     Q    Okay.
15     A    And -- and, again, I think a later CT
16 showed one strut intimately related to the head of
17 the pancreas, one between the pancreatic head and
18 the aorta.  So, again, I think there was evidence
19 of perforation here.
20     Q    And you're not able -- you're not qualified
21 to make any determination about whether any of those
22 perforations or any of those phenomena would be
23 clinically significant; correct?
24     A    Correct.
25          MR. SCHULTZ:  Object to the form.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 242

```
 1            significance."
 2            It's not a normal biologic phenomenon.
 3    BY MR. WEBBER:
 4        Q    A perforation or --
 5        A    Yes, perforation.
 6        Q    Okay.  Okay.
 7        A    Maybe generally it's without clinical
 8    significance, but it's not a normal biologic
 9    phenomenon.
10        Q    You didn't evaluate or examine Mr. Gage or
11    Ms. Hill personally; correct?
12        A    That's correct.
13        Q    Okay.  And do you recall what you looked
14    at or which records you looked at for -- well,
15    strike that.
16            Did -- any records that you looked at for
17    Mr. Gage and Ms. Hill, did you list them in the
18    list of documents that you reviewed that we saw
19    back at Exhibit something or other?
20        A    I -- I have a --
21        Q    It would be -- it would be Exhibit 5
22    maybe?  I'm going to bet on Exhibit 5.  Yes.  Let
23    me rephrase that question.
24            Any medical records that you looked at
25    pertaining to Mr. Gage or Ms. Hill, would you have
```

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 243

1 listed those in your list of documents reviewed in
2 Exhibit 5?
3     A    Yes.
4     Q    Okay.
5     A    Yes, page 21 and 22.
6     Q    All right.  You have not looked to see
7 whether there's any evidence that Ms. Hill had any
8 narrowing of her duodenum as a result of the filter
9 strut in the duodenum; correct?
10     A    Correct.
11     Q    And you're not offering any causal
12 opinions in Ms. Hill's case; right?
13     A    Ms. -- what do you mean?
14     Q    That the -- that the IVC filter from Cook
15 caused any particular injury to her; correct?
16     A    That's correct.
17     Q    And the same with Mr. Gage.  You're not
18 offering any causal opinions, that is, that the IVC
19 filter caused any particular injury to Mr. Gage?
20     A    Correct.
21     Q    Okay.  Can the strut of a vena cava tent,
22 on your definition, into adjoining structures or
23 organs?
24     A    Yes.
25     Q    Okay.  What is extravasation?