UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

_____

This Document Relates to the Following Actions only:

    Elizabeth Jane Hill
    No. 1:14-cv-06016-RLY-TAB

    Arthur Gage
    No. 1:13-cv-01875-RLY-TAB

_____

**THE COOK DEFENDANTS' MOTION TO
MAINTAIN DOCUMENTS UNDER SEAL (MARMUREANU)**

Pursuant to Local Rule 5-11(d)(2)(A), the Cook Defendants[1] respectfully move the Court to maintain under seal the Cook Defendants' Memorandum in Support of Motion to Exclude Expert Opinions of Dr. Alexander Marmureanu ("Memorandum"), and Exhibits A, B, C, D, E, F, G, J, Q, T, W, and Z to that Memorandum. In support of this motion, the Cook Defendants state:

**LEGAL STANDARD**

1. Under Federal Rule of Civil Procedure 26(c)(1)(G), the court may, "for good cause," enter an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." *See also Baxter International, Inc. v. Abbott Laboratories*, 297 F.3d 544, 546 (7th Cir. 2002) (documents that "meet the definition of trade secret or other categories of bona fide long-term confidentiality" may be sealed). Likewise, private health information should be maintained

---

[1] The Cook Defendants in this matter are Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS (collectively, the "Cook Defendants").

under seal at least until consent by the patient is obtained. *See generally Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017).

2. Indiana has generally adopted the definition of trade secret found in the Uniform Trade Secret Act.[2] *See, e.g.*, *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 414 (S.D. Ind. 2001).[3] Under this standard, a protectable trade secret has four characteristics: (1) information; (2) that possesses independent economic value; (3) that is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (4) is the subject of efforts to maintain its secrecy that are reasonable under the circumstances. *See, e.g.*, *Hamilton v. State Farm Mut. Auto Ins. Co.*, 204 F.R.D. 420, 423 (S.D. Ind. 2001); *Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 759 N.E.2d 239, 245–46 (Ind. Ct. App. 2001); *Burk v. Heritage Food Serv. Equip., Inc.*, 737 N.E.2d 803, 813 (Ind. Ct. App. 2000).

3. Confidential business information that does not technically fit the definition of a trade secret is entitled to protection if its disclosure would be harmful physically or economically. *See Chaib v. GEO Grp., Inc.*, 2014 WL 4794194, at *1–3 (S.D. Ind. Sept. 24, 2014); *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at *1 (S.D. Ind. Feb. 2, 2009) (finding that protection is required where disclosure of certain proprietary information would "provide a blueprint for competitors").

---

[2] The presence of Cook's headquarters in Indiana justified the application of Indiana trade secret law to the issues here, because Indiana is the state where Cook would feel any injury or harm. *See, e.g.*, *Micro Data Base Sys., Inc. v. Dharma Sys., Inc.,* 148 F.3d 649 (7th Cir. 1998) (applying Indiana choice-of-law principles in a trade-secret case and holding that New Hampshire substantive law governed because the entity holding the trade secrets was headquartered there).

[3] The Indiana Uniform Trade Secret Act is identical to the Uniform Trade Secrets Act, 1(4), 14 U.L.A. 438 (1985).

4. Good cause likewise exists to protect private health information from public disclosure. *See Cole*, 2017 WL 2929523, at *3. As explained below, the Cook Defendants are cautious not to disclose such information until it is clear the patient consents to such disclosure.

5. The "good cause" standard under Rule 26(c) "requires a balancing of the potential harm to the litigants' interests against the public's right to obtain information concerning judicial proceedings." *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 415-16 (S.D. Ind. 2001) (Baker, J.); *see also Felling v. Knight*, 211 F.R.D. 552, 554 (S.D. Ind. 2003) ("The rule essentially operates to balance the public's interest in open proceedings against an individual's private interest in avoiding annoyance, embarrassment, oppression, or undue burden or expense.") (Baker, J.). Consistent with the doctrine discussed earlier, however, "the presumption of public access 'applies only to the materials that formed the basis of the parties' dispute and the district court's resolution; other materials that may have crept into the record are not subject to the presumption." *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013) (citing *Baxter Int'l*, 297 F.3d at 548)).

## DOCUMENTS SOUGHT TO BE SEALED

6. The Cook Defendants' Memorandum in Support of Motion to Exclude Expert Opinions of Dr. Alexander Marmureanu ("Memorandum") relies on and cites the Cook confidential information and protected health information contained in the Exhibits discussed individually below.

7. Exhibit A to the Memorandum is the Expert Report submitted by Dr. Alexander Marmureanu. The Report relies on patient complaint files collected and compiled by Cook, which are not available to the public (*see, e.g.,* pp. 4–5, 7–9, 18). It also relies upon and analyzes

- 4 -

the results of internal studies of IVC filter performance commissioned by Cook for Cook's proprietary use and not available to the public (pp. 10–14, 17).

8.  Exhibit B to the Memorandum is a further document submitted by Dr. Marmureanu containing his case-specific opinions with respect to Plaintiff Elizabeth Hill. The document contains details of Ms. Hill's medical history.

9.  Exhibit C to the Memorandum is a further document submitted by Dr. Marmureanu containing his case-specific opinions with respect to Plaintiff Arthur Gage. Exhibit C cites data from internal Cook sources concerning the use and effectiveness of the Gunther Tulip filter (*see* pp 4, 9 n.7). The document also contains details of Mr. Gage's medical history.

10. Exhibit D to the Memorandum is a compilation of internal Cook complaint files that Dr. Marmureanu analyzed in preparing his expert report. It consists almost entirely of proprietary data, not publicly available, collected by Cook relating to the performance of its IVC filters.

11. Exhibit E to the Memorandum is the deposition of Dr. Marmureanu. The testimony contains discussion of patient complaint files collected and compiled by Cook, which are not available to the public, and it also contains discussion of the results of internal Cook studies and experiments (*see, e.g.,* pp. 42–43, 217, 294–96, 313, 326–27, 360–61, 367–68, 444–45).

12. Exhibit F to the Memorandum is the Expert Report submitted by Dr. Anthony Venbrux. Exhibit F includes citations to an August 2016 Cook "data summary," which compiled a large amount of proprietary data from internal company sources concerning Cook filters, including the Celect Filter. (pp. 8–9). It also includes citations to the Clinical Investigation Plan for the Prospective Study of the Cook Celect Filter, Including Permanent and Retrievable Use


("OUS Study") (pp. 15–16). Lastly, it includes medical history information related to Plaintiff Hill. (pp. 17–20).

13.  Exhibit G to the Memorandum consists of excerpts of the deposition of Dr. Mark J. Goodwin. The document contains a discussion of Cook proprietary data relating to its IVC filters. (p. 156).

14.  Exhibit J to the Memorandum is the Expert Report submitted by Dr. Antonios P. Gasparis. Exhibit J includes citations to the 2016 Cook Data Summary compiling internal Cook complaint data (pp. 6–8). Dr. Gasparis' expert opinion on whether the warnings contained in the Gunther Tulip IFU were sufficient also incorporates internal Cook data of this nature. (pp. 16–17). Lastly, it includes medical history information related to Plaintiff Gage. (pp. 18–29).

15.  Exhibit Q to the Memorandum is the Expert Report submitted by Dr. Jon P. Fryzek. Exhibit Q includes citations to the 2016 Cook Data Summary compiling internal Cook complaint data (pp. 10–11). It also contains an extensive analysis of Cook internal complaint data and Cook sales data, drawn from Cook databases. (pp. 19–30, 33–35). Lastly, it includes medical history information related to Plaintiffs Hill and Gage. (pp. 38–41).

16.  Exhibit T to the Memorandum is a side-by-side comparison of similar language contained in the respective expert reports of Dr. Marmureanu and Dr. Mohammad Reza Rajebi. It therefore contains confidential excerpts from their report which have been redacted. *See supra,* ¶ 7.

17.  Exhibit W to the Memorandum is the Expert Report submitted by Dr. F. Michael Ferrante. The Report contains a detailed discussion of Plaintiff Gage's medical history, including elements of his medical history. (pp. 2–8, 10–11).

18.     Exhibit Z to the Memorandum is the Expert Report submitted by Dr. Bennett Leventhal. The Report contains an analysis of Plaintiff Gage's mental health and detailed discussion of his medical history, including elements of his medical history. (pp. 2–9).

## DISCUSSION

19.     Exhibits A, C, D, E, F, G, J, Q, and T contain internal Cook information relating to the development, use, performance, and/or sales of Cook's IVC filters. These documents fit the definition of protected confidential information because they rely on information that is not publicly available and the disclosure of which would pose a serious risk of economic harm to Cook. *See Chaib,* 2014 WL 4794194, at *1–3. As the Cook more fully demonstrated in its May 1, 2017 letter to Magistrate Judge Tim A. Baker and the supporting Declaration of Mark Breedlove (attached hereto as **Exhibit 1**), Cook invests substantial resources into research and development, including with regard to Cook's IVC filter technology.  Breedlove Decl. ¶ 6.  Cook maintains strict confidentiality over its research and development ideas, efforts, and results, and considers such information to be proprietary to the company.  *Id.*   And disclosure of such information would therefore result in competitive harm to Cook and could "lead to a windfall to the discovering party." *Star Scientific*, 204 F.R.D. at 416; Breedlove Decl. ¶¶ 6–7. Disclosure of non-public sales data would likewise cause competitive harm to Cook. *See EEOC v. Abbott Labs., Inc.*, 2012 WL 3842460, at *2–3 (E.D. Wis. Sept. 5, 2012). The Court should permit these documents, and the Memorandum citing and discussing those documents, to be filed under seal.

20.     Exhibits A, B, C, F, J, Q, W, and Z contain information related to the medical records and medical history of Plaintiffs Hill and Gage. Courts in the Seventh Circuit have routinely recognized that, while parties' medical information may be made public where it is relevant to the claims at issue and/or necessary to the disposition of the case, other information

- 7 -

may be kept under seal with good cause. *See Westedt v. Franklin,* 2016 WL 2997504, at *1 (E.D. Wis. May 23, 2016); *Gibson v. Milwaukee Cnty.*, 2015 WL 12964665, at *1 (E.D. Wis. Mar. 26, 2015); *Noe v. Carlos,* 2008 WL 5070463, at *3 (N.D. Ind. Nov. 26, 2008). The good cause inquiry thus requires balancing a party's acknowledged interest in medical privacy, *see Whalen v. Roe*, 429 U.S. 589, 599–600 (1977), against the Court's (and parties') interest in the accurate resolution of the conflict and the public interest in transparency. *Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017). The documents (and redacted portions of expert reports) listed above contain private, sensitive medical information. Out of an abundance of caution, the Court should permit these documents, too, to be filed under seal until Plaintiffs consent to what should be disclosed.

21. A proposed order granting this Motion has been filed with this Motion**.**

WHEREFORE, the Cook Defendants respectfully urge the Court to enter an order granting the Cook Defendants leave to file under seal and maintain under seal the Cook Defendants' Memorandum in Support of Motion to Exclude Expert Opinions of Dr. Alexander Marmureanu, and Exhibits A, B, C, D, E, F, G, J, Q, T, W, and Z to that Memorandum.

- 8 -

Dated:  August 9, 2017              Respectfully submitted,

/s/ Andrea Roberts Pierson
Andrea Roberts Pierson (# 18435-49)
J. Joseph Tanner (# 11856-49)
Nicholas B. Alford (# 31867-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:   (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-Mail:  joe.tanner@faegrebd.com
E-Mail:  nicholas.alford@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

- 8 -
US.113595063.01

- 9 -

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 9, 2017, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.  Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

      /s/ Andrea Roberts Pierson

US.113595063.01