UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

_____

This Document Relates to the Following Actions only:

   Elizabeth Jane Hill
   No. 1:14-cv-06016-RLY-TAB

   Arthur Gage
   No. 1:13-cv-01875-RLY-TAB

_____

## THE COOK DEFENDANTS' MOTION TO MAINTAIN DOCUMENTS UNDER SEAL (KESSLER)

Pursuant to Local Rule 5-11(d)(2)(A), the Cook Defendants[1] respectfully move the Court to maintain under seal the Cook Defendants' Memorandum in Support of Motion to Exclude Expert Opinions of Dr. David A. Kessler ("Memorandum"), and Exhibits 2, 3, 6, 7, 9, 11-21, 23, 25, 29-45 to that Memorandum. In support of this motion, the Cook Defendants state:

### LEGAL STANDARD

1. Under Federal Rule of Civil Procedure 26(c)(1)(G), the court may, "for good cause," enter an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." *See also Baxter International, Inc. v. Abbott Laboratories*, 297 F.3d 544, 546 (7th Cir. 2002) (documents that "meet the definition of trade secret or other categories of bona fide long-term confidentiality" may be sealed). ). Likewise, private health information should be maintained

---

[1] The Cook Defendants in this matter are Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS (collectively, the "Cook Defendants").

under seal at least until consent by the patient is obtained. *See generally Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017)

2. Indiana has generally adopted the definition of trade secret found in the Uniform Trade Secret Act.[2] *See, e.g.*, *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 414 (S.D. Ind. 2001).[3] Under this standard, a protectable trade secret has four characteristics: (1) information; (2) that possesses independent economic value; (3) that is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (4) is the subject of efforts to maintain its secrecy that are reasonable under the circumstances. *See, e.g.*, *Hamilton v. State Farm Mut. Auto Ins. Co.*, 204 F.R.D. 420, 423 (S.D. Ind. 2001); *Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 759 N.E.2d 239, 245–46 (Ind. Ct. App. 2001); *Burk v. Heritage Food Serv. Equip., Inc.*, 737 N.E.2d 803, 813 (Ind. Ct. App. 2000).

3. Confidential business information that does not technically fit the definition of a trade secret is entitled to protection if its disclosure would be harmful physically or economically. *See Chaib v. GEO Grp., Inc.*, 2014 WL 4794194, at *1–3 (S.D. Ind. Sept. 24, 2014); *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at *1 (S.D. Ind. Feb. 2, 2009) (finding that protection is required where disclosure of certain proprietary information would "provide a blueprint for competitors").

---

[2] The presence of Cook's headquarters in Indiana justified the application of Indiana trade secret law to the issues here, because Indiana is the state where Cook would feel any injury or harm. *See, e.g.*, *Micro Data Base Sys., Inc. v. Dharma Sys., Inc.,* 148 F.3d 649 (7th Cir. 1998) (applying Indiana choice-of-law principles in a trade-secret case and holding that New Hampshire substantive law governed because the entity holding the trade secrets was headquartered there).

[3] The Indiana Uniform Trade Secret Act is identical to the Uniform Trade Secrets Act, 1(4), 14 U.L.A. 438 (1985).

- 3 -

4. Good cause likewise exists to protect private health information from public disclosure. *See Cole*, 2017 WL 2929523, at *3. As explained below, the Cook Defendants are cautious not to disclose such information until it is clear the patient consents to such disclosure.

5. The "good cause" standard under Rule 26(c) "requires a balancing of the potential harm to the litigants' interests against the public's right to obtain information concerning judicial proceedings." *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 415-16 (S.D. Ind. 2001) (Baker, J.); *see also Felling v. Knight*, 211 F.R.D. 552, 554 (S.D. Ind. 2003) ("The rule essentially operates to balance the public's interest in open proceedings against an individual's private interest in avoiding annoyance, embarrassment, oppression, or undue burden or expense.") (Baker, J.). Consistent with the doctrine discussed earlier, however, "the presumption of public access 'applies only to the materials that formed the basis of the parties' dispute and the district court's resolution; other materials that may have crept into the record are not subject to the presumption." *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013) (citing *Baxter Int'l*, 297 F.3d at 548)).

## DOCUMENTS SOUGHT TO BE SEALED

6. The Memorandum relies on and cites Cook confidential information contained in the Exhibits discussed individually below.

7. Exhibit 2 to the Memorandum is the Expert Report submitted by Dr. Elisa D. Harvey. The Report contains an analysis of Cook's approval process for the Gunther Tulip and Cook Celect filters that discusses Cook study data and other forms of information that were submitted to the Food and Drug Administration (FDA) during the approval process but which were not otherwise disclosed publicly (pp. 17–25).

8.     Exhibit 3 to the Memorandum consists of excerpts from the 1998 510(k) submittal for the Tulip filter, which includes descriptions of internal testing done on the filter that is not intended to be distributed to the public.

9.     Exhibit 6 to the Memorandum is the Expert Report submitted by Dr. David Kessler. Dr. Kessler's report relies on and quotes extensively from internal Cook documents relating to design of the Celect (*see, e.g.,* Sections VI.A, VI.G., VIII.B.), internal studies of IVC filter performance commissioned by Cook for Cook's proprietary use and not available to the public (*see, e.g.,* Sections VI.B-C., VIII.B., IX.), multiple internal communications about responses to FDA and other regulatory agency requests for information and 510(k) submissions (*see, e.g.,* Sections VII., VI.C.5.a., VI.C.5.c.,VIII.A), and Cook's analysis of complaints and sales data (*see, e.g.,* Sections VI.D.-F., Schedule 4). A redacted version of this document is attached to Cook's public filing; Cook has filed an unredacted version under seal.

10.    Exhibits 7 and 11 to the Memorandum are two deposition transcripts of Dr. Kessler. The testimony contains discussion of clinical study data and complaints compiled by Cook, which are not available to the public, and it also contains discussion of the results of internal Cook studies and experiments (*see, e.g.,* pp. 46-51, 289-90, 294-296, 331-346, 360-367, 470, 537-538, 586-587), Cook's standards in designing its device (240, 242, 536-537 539-545), Cook's analysis of complaint and data (p. 452-453, 464-466, 469, 474-476, 480-481, 484-498, 504-509), and internal discussions about submittals to regulatory agencies (504-509).

11.    Exhibit 9 to the Memorandum is the deposition of Jennifer Brown, PhD. (Volume 2). In this excerpt, Dr. Brown discusses an August 2016 Cook "data summary," which compiled a large amount of proprietary data from internal company sources concerning Cook filters,

including the Celect Filter (pp. 407-408). Dr. Brown also discusses the company's participation in a clinical study (pp. 482-483), which has not been disclosed to the public.

12. Exhibit 12 to the Memorandum is the Expert Report submitted by Dr. Anthony Venbrux. Exhibit 12 includes citations to an August 2016 Cook "data summary," which compiled a large amount of proprietary data from internal company sources concerning Cook filters, including the Celect Filter. (pp. 8–9). It also includes citations to the Clinical Investigation Plan for the Prospective Study of the Cook Celect Filter, Including Permanent and Retrievable Use ("OUS Study") (pp. 15–16). Lastly, it includes medical history information related to Plaintiff Hill. (pp. 17–20).

13. Exhibit 13 to the Memorandum consists of excerpts of the deposition of Jennifer Brown. The excerpted testimony discusses internal Cook deliberations relating to Cook's IFUs for IVC filters and other communications, and thus involves confidential decision-making processes that are not disclosed to the public (pp. 185–186).

14. Exhibit 14 to the Memorandum is the deposition of Dr. Mohammad Rajebi. The deposition testimony includes discussion of data from Cook's internal 2008–2009 OUS study that was reviewed by Dr. Rajebi, (pp. 232-234), as well as other Cook internal information not disclosed to the public.

15. Exhibit 15 to the Memorandum is an internal Cook document entitled "Celect Modification." It analyzes internal Cook compilations of complaint data, studies, and sales data and presents recommendations and conclusions on possible modifications to the structure of the Cook Celect Filter. The document contains a large amount of Cook data that represents proprietary company knowledge and is not available to the public.

- 6 -

16.     Exhibit 16 to the Memorandum is an email exchange between two Cook employees. The email references internal Cook data concerning filter extraction and discusses strategic considerations involving the Celect Filter. Information contained in the email is not available to the public.

17.     Exhibit 17 to the Memorandum is the Expert Report submitted by Harold "Wally" Pellerite. The Report discusses Cook internal tracking and trending data on the Gunther Tulip and Celect filters, as included in Cook's August 2016 Data Summary (pp. 9–10). The Report also contains charts of Cook sales and complaint information drawn from data compiled by Cook and that is not publicly available (pp. 11–13).

18.     Exhibit 18 to the Memorandum consists of excerpts from the deposition of Harold "Wally" Pellerite. The excerpted testimony includes a discussion of Cook's "complaint rate" that is drawn from internal Cook data that is proprietary to Cook and not publicly available (pp. 133–34).

19.     Exhibit 19 to the Memorandum is a letter from Cook to a representative of the FDA. The letter summarizes reports of animal studies conducted by Cook and discusses the then-ongoing OUS clinical study of the Celect Filter. It also sets forth a conclusion on the Celect Filter that is drawn from this internal Cook data that is not publicly available.

20.     Exhibit 20 to the Memorandum is an email from a Cook representative to a representative of the FDA. The email makes reference to internal Cook data drawn from studies, and outlines Cook's plans and methods in testing and seeking government approval for the Celect Filter. Some of the information discussed in the email is not publicly available.

21.     Exhibit 21 to the Memorandum is the Draft Response to TGA Questions.  Exhibit 31 includes information related to internal studies of IVC filter performance commissioned by

Cook for Cook's proprietary use and not available to the public (pp. 1-4, 6), complaint data (p. 5), and confidential information relating to the design of the Celect filter (p. 5-6).

22. Exhibit 23 to the Memorandum consists of excerpts from the deposition of Arne Mølgaard-Nielsen. The excerpted testimony includes a discussion of strategic decisions Cook made during the design of the Celect Filter, and involves internal company deliberations that were kept confidential by Cook and are not matters of public knowledge (pp. 374, 377–78).

23. Exhibit 25 to the Memorandum is an email exchange between a Cook representative and a representative of the FDA. The email makes reference to internal Cook data drawn from studies, and outlines Cook's plans and methods in testing and seeking government approval for the Celect Filter. Some of the information discussed in the email is not publicly available.

24. Exhibit 29 to the Memorandum is the Cook Design Input Requirements for Celect. Exhibit 29 includes information relating to the design of the Celect filter that is intended for Cook's internal use only and is not available to the public.

25. Exhibit 30 to the Memorandum is the Design Verification Summary for the Celect. The document includes information relating to the design of the Celect filter that is intended for Cook's internal use only and is not available to the public.

26. Exhibit 31 to the Memorandum is an Email from Jennifer Bosley of Cook to an FDA representative. The email contains confidential communications between Cook and the FDA that relate to Cook's design, testing, and development of the Celect filter.

27. Exhibit 32 to the Memorandum is a Record of Telephone Contact between Cook and the FDA. The document contains confidential communications between Cook and the FDA that relate to Cook's design, testing, and development of the Celect filter.

28. Exhibit 33 to the Memorandum is a letter from the FDA to Cook dated September 23, 2004, regarding the 510(k) submission of Cook's 2nd Generation Vena Cava Filter. Exhibit 33 includes information related to internal studies of the Celect, including fatigue testing, finite element analysis testing, and animal studies. Exhibit 33 is a communication between Cook and the FDA that is not publicly available.

29. Exhibit 34 to the Memorandum is a September 23, 2004 response from Cook to the FDA regarding the 510(k) submission of Cook's 2nd Generation Vena Cava Filter. Exhibit 35 includes information related to internal studies and analyses of the Celect. Exhibit 34 also includes information related to the engineering and design of the Celect filter, which is information created by Cook for Cook's proprietary use and not available to the public.

30. Exhibit 35 to the Memorandum is a document entitled "Minutes from Meeting with FDA (April 29, 2005). Exhibit 35 details a confidential meeting between Cook and the FDA, and includes information related to the design of the Celect as well as the animal studies conducted by Cook. The material discussed at the meeting related to Cook's design and testing of the Celect is not publicly available.

31. Exhibit 36 to the Memorandum is a Letter from the FDA to Cook dated September 1, 2006. Exhibit 36 includes detailed information related to the animal study conducted by Cook, which is confidential Cook information that is not otherwise available to the public.

32. Exhibit 37 to the Memorandum is a Letter from Cook to the FDA dated April 10, 2007. Exhibit 37 includes information related to the "Summary of Available Clinical Data" for the Prospective Study of the Cook Celect Filter, Including Permanent and Retrievable Use ("OUS Study").

33. Exhibits 38, 39, 40, and 41 to the Memorandum are excerpts from Cook's VCA1 Animal Study at 30 Days, 60/90 Days, 180 Days, and 360 Days, respectively. The contents of these studies are confidential company information created by Cook that is not publicly available.

34. Exhibit 42 to the Memorandum is a Pre-IDE presentation that was created by Cook. Exhibit 42 includes detailed information related to the design and testing of the Celect, including pathology and histology results. Such information is internal Cook information that is not publicly available.

35. Exhibit 43 to the Memorandum is the Deposition of Rebecca Betensky, PhD. In this excerpt, Dr. Betensky discusses her findings related to causality, which are based on her review of complaints compiled by Cook, which are not available to the public.

36. Exhibit 44 to the Memorandum is the Expert Report submitted by Dr. Jon P. Fryzek. Exhibit 44 includes citations to the 2016 Cook Data Summary compiling internal Cook complaint data (pp. 10–11). It also contains an extensive analysis of Cook internal complaint data and Cook sales data, drawn from Cook databases. (pp. 19–30, 33–35). Lastly, it includes medical history information related to Plaintiffs Hill and Gage. (pp. 38–41).

37. Exhibit 45 to the Memorandum is a Cook document entitled "Performance Test – Clot Trapping Ability," which is a report of the clot trapping testing Cook conducted for the Celect. Exhibit 45 includes internal Cook information related to the clot trapping test, and such information was not made available to the public.

### DISCUSSION

38. Exhibits 1–6, 8, 9, 14–20, 23, 24, 26, 29–43, and 45–47 contain internal Cook information relating to the development, use, performance, and/or sales of Cook's IVC filters.

These documents fit the definition of protected confidential information because they rely on information that is not publicly available and the disclosure of which would pose a serious risk of economic harm to Cook. *See Chaib,* 2014 WL 4794194, at *1–3. As the Cook more fully demonstrated in its May 1, 2017 letter to Magistrate Judge Tim A. Baker and the supporting Declaration of Mark Breedlove (attached hereto as **Exhibit 1**), Cook invests substantial resources into research and development, including with regard to Cook's IVC filter technology. Breedlove Decl. ¶ 6. Cook maintains strict confidentiality over its research and development ideas, efforts, and results, and considers such information to be proprietary to the company. *Id*. And disclosure of such information would therefore result in competitive harm to Cook and could "lead to a windfall to the discovering party." *Star Scientific*, 204 F.R.D. at 416; Breedlove Decl. ¶¶ 6–7. Disclosure of non-public sales data would likewise cause competitive harm to Cook. *See EEOC v. Abbott Labs., Inc.*, 2012 WL 3842460, at *2–3 (E.D. Wis. Sept. 5, 2012). The Court should permit these documents to be filed under seal.

39.     Exhibits 12 and 35 contain information related to the medical records and medical history of Plaintiffs Hill and Gage. Courts in the Seventh Circuit have routinely recognized that, while parties' medical information may be made public where it is relevant to the claims at issue and/or necessary to the disposition of the case, other information may be kept under seal with good cause. *See Westedt v. Franklin,* 2016 WL 2997504, at *1 (E.D. Wis. May 23, 2016); *Gibson v. Milwaukee Cnty.*, 2015 WL 12964665, at *1 (E.D. Wis. Mar. 26, 2015); *Noe v. Carlos,* 2008 WL 5070463, at *3 (N.D. Ind. Nov. 26, 2008). The good cause inquiry thus requires balancing a party's acknowledged interest in medical privacy, *see Whalen v. Roe*, 429 U.S. 589, 599–600 (1977), against the Court's (and parties') interest in the accurate resolution of the conflict and the public interest in transparency. *Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL

US.113594627.01

2929523, at *3 (E.D. Wis. July 10, 2017). The documents listed above contain private, sensitive medical information. Out of an abundance of caution, the Court should permit these documents, too, to be filed under seal until Plaintiffs consent to what should be disclosed.

40. A proposed order granting this Motion has been filed with this Motion**.**

WHEREFORE, the Cook Defendants respectfully urge the Court to enter an order granting the Cook Defendants leave to file under seal and maintain under seal the Cook Defendants' Memorandum in Support of Motion to Exclude Expert Opinions of Dr. David A. Kessler, and Exhibits 2, 3, 6, 7, 9, 11-21, 23, 25, 29-45 to that Memorandum.

US.113594627.01

Dated:  August 9, 2017                              Respectfully submitted,


                                                    /s/ *Victoria R. Calhoon*
                                                    Andrea Roberts Pierson (# 18435-49)
                                                    Christin Jaye Eaton (MN Bar # 228795)
                                                    Victoria R. Calhoon (# 28492-49)
                                                    John T. Schlafer (# 28771-49)
                                                    FAEGRE BAKER DANIELS LLP
                                                    300 North Meridian Street, Suite 2700
                                                    Indianapolis, Indiana  46204
                                                    Telephone:  (317) 237-0300
                                                    Facsimile:  (317) 237-1000
                                                    Email:   andrea.pierson@faegrebd.com
                                                    Email:   christin.eaton@faegrebd.com
                                                    Email:   victoria.calhoon@faegrebd.com
                                                    Email:   john.schlafer@faegrebd.com

                                                    James Stephen Bennett (# 22869-02)
                                                    FAEGRE BAKER DANIELS LLP
                                                    110 W. Berry Street, Suite 2400
                                                    Fort Wayne, Indiana  46802
                                                    Telephone: (260) 424-8000
                                                    Facsimile: (260) 460-1700
                                                    Email:  stephen.bennett@faegrebd.com

                                                    *Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

- 12 -

**CERTIFICATE OF SERVICE**

I hereby certify that on August 9, 2017, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

/s/ Andrea Roberts Pierson

US.113594627.01