IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCT LIABILITY LITIGATION                    Case No: 1:14-ml-2570-RLY-TAB
————————————————————————                MDL No. 2570

This Document Relates to:

*Hill v. Cook Medical, Inc. et al.,*
Case No. 1:14-cv-6016-RLY-TAB
————————————————————————

————————————————————————————————————————————————

**PLAINTIFF HILL'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO
DEFENDANTS' AFFIRMATIVE DEFENSES**

## I.     INTRODUCTION

Plaintiff Hill moves for partial summary judgment on Defendants' following affirmative

defenses:

Defense #1:   limitations;
Defense #2:   assumption of the risk (comparative fault);
Defense #3:   laches;
Defense #8:   compliance with government rules;
Defense #9:   comparative fault;
Defense #10: nonparty fault;
Defense #11: superseding/intervening cause;
Defense #12: nonparty fault and product misuse (comparative fault); and
Defense #13: alteration/modification of device (nonparty fault/comparative fault).

## II.     PROCEDURAL HISTORY

On October 30, 2014, Plaintiff filed her Complaint including a request for jury trial

against the Cook Defendants ("Cook" or "Defendants") in the United States District Court for the

Middle District of Florida, Tampa Division. (Ex. A.) On November 24, 2014 this matter was

transferred via CTO-4 to the United States District Court for the Southern District of Indiana for

coordinated or consolidated pretrial proceedings (MDL 2570) pursuant to 28 U.S.C. §1407. (Ex. B.) On January 23, 2015, Defendants filed their Answer to Plaintiff Hill's Complaint. (Ex. C.) Plaintiff Hill filed a Short Form Complaint directly with this court on September 30, 2015. (Ex. D.) In accordance with CMO 5 entered by this Court on March 17, 2015, Plaintiff has waived her venue rights under *Lexecon* but maintains that the substantive law of the transferor jurisdiction—Florida—governs this motion and will apply at trial. *See, e.g.*, *In re Korean Air Lines Co.*, 642 F.3d 685, 699 (9th Cir. 2011) ("[T]he MDL transferee court is generally bound by the same substantive legal standards, if not always the same interpretation of them, as would have applied in the transferor court.")

## III.   FACTUAL BACKGROUND

Mrs. Hill suffered from chronic and acute back pain and prior to undergoing open laminectomy and fusion of her spine, her physician recommended a temporary IVC filter. (Ex. E.) On November 17, 2010, Mrs. Hill's physician, Dr. Zuzga, implanted a Cook Celect filter. (Ex. F.)  Follow up imaging confirmed its proper placement. (*Id.*) On December 6, 2010, Mrs. Hill underwent an open laminectomy with fusion. (Ex. E.). Follow-up imaging on October 18, 2011, showed the Celect filter still properly placed.  On August 14, 2013, one month after a secondary spinal surgery, Mrs. Hill experienced a bout of projectile vomiting and other gastrointestinal symptoms for which she was hospitalized. (Ex. I.) A CT scan of her abdomen revealed that one the Celect IVC filter struts had perforated her IVC and had pierced her small bowel (duodenum) into the lumen of the intestine. (Ex. G.)

## IV.    STATEMENT OF MATERIAL FACTS NOT IN DISPUTE ("SMF")

1.    A Cook Celect temporary/retrievable IVC filter was implanted in Plaintiff Elizabeth Hill for prophylaxis of pulmonary embolisms (PE) in anticipation of spine surgery on November 17, 2010 at Mease Countryside Hospital in Safety Harbor, Florida.  (Ex. F.)

2.    There were no complications at the time of implantation. (*Id.*)

3.    Four months after Mrs. Hill's spine surgery, Plaintiff's implanting doctor, Dr. Zuzga, scheduled the removal of the Cook Celect temporary/retrievable filter for March 23, 2011 because the risk of pulmonary embolism had diminished. (Ex. H.)

4.    After multiple attempts at removal, the procedure was aborted because the apex of the filter was embedded into the vena cava wall. (*Id.*)

5.    Mrs. Hill developed gastrointestinal symptoms, fatigue, diarrhea, abdominal pain, nausea, and vomiting on August 10, 2013.  (Ex. I.)

6.    She was admitted to the emergency room at Morton Plant Hospital in Clearwater, Florida on August 12, 2013. *(Id.)*

7.    Due to persistent gastrointestinal symptoms, fatigue, diarrhea, abdominal pain, nausea, and vomiting, Ms. Hill underwent an endoscopy procedure.  (Ex. G.)

8.    It was determined on August 15, 2013 that her Cook Celect temporary/retrievable filter had tilted and perforated through the wall of the vena cava, affecting her surrounding organs including her duodenum and small bowel. *(Id.)*

9.    Mrs. Hill's physicians, Dr. Yves Gabriel and Dr. Mark Zuzga, recommended immediate removal of the filter and advised transferring her case to a medical center experienced in IVC filter removals. (Ex. J.)

10.    Mrs. Hill's implanting physician, Dr. Zuzga, contacted Dr. Frank Lynch at Pennsylvania State University Hershey Medical Center and Dr. Lynch agreed to accept Mrs. Hill as a patient. (Ex. K.)

11.    Mrs. Hill was discharged from Morton Plant Hospital on August 10, 2013, and flew directly to Pennsylvania to be admitted at Pennsylvania State University Hershey Medical Center. (*Id*.)

12.    The next day, August 21, 2013, Dr. Lynch performed a technically difficult retrieval procedure and successfully removed the entire filter; however, a post removal cavagram indicated the narrowing at the explant site of Mrs. Hill's inferior vena cava and the bowel. (Ex. L.)

13.    Mrs. Hill is and was at all times relevant to this action a resident of the state of Florida; all of Mrs. Hill's treatment and care related to her Celect IVC filter took place in Florida; and her diagnosis and discovery of the failure of Cook's Celect filter occurred in Florida. The only treatment she received related to her Celect IVC filter that did not occur in Florida was directed by her vascular surgeons Dr. Gabriel and Dr. Zuzga in Florida.

14.    Mrs. Hill commenced this action in the United States District Court for the Middle District of Florida, Tampa Division, on October 30, 2014 against the Cook Defendants (Cook Incorporated, Cook Medical LLC (formerly known as Cook Medical Incorporated) and William Cook Europe ApS). (Docket number 1.)

V.    **ARGUMENT**

A.  **Partial Summary Judgment Standard**

Summary judgment is appropriate where the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed.R.Civ.P. 56(c*); Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A motion for partial summary judgment as to specific claims or issues may help narrow the issues in a case." *Holden v. Balko,* 949 F. Supp. 704, 706 (S.D. Ind. 1996) (granting partial summary judgment on nonparty defense). The standard is the same regardless of whether the motion addresses the entire case or only a portion of it: summary judgment is appropriate when the record demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Id.; See also* Fed. R. Civ. P. 56(c). A factual dispute is "genuine" only where evidence is produced that would entitle a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

All facts and inferences are to be drawn in the non-moving party's favor; however, neither "the mere existence of some alleged factual dispute between the parties, nor the existence of some metaphysical doubt as to the material facts, will defeat a motion for summary judgment." *Ind. ex rel. Naylor v. Ind. State Teacher's Ass'n*, 950 F. Supp. 2d 993, 999 (S.D. Ind. 2013) (Barker, J.) (internal quotations and citations omitted). The party seeking summary judgment on a claim for which the non-movant bears the burden of proof, "may discharge its burden by showing an absence of evidence to support the non-movant's case." *Id.* at 1000. The non-moving party's "self-serving statements, i.e., those which are speculative or lack foundation or personal knowledge, and which are unsupported by specific, concrete facts reflected in the record, cannot preclude summary judgment." *Id*.

### B. <u>Affirmative Defense #8 – Compliance With Government Rules</u>

Defendant asserts the following as its eighth affirmative defense:

8. "Any medical device or product for which Cook Defendants are responsible
   complied with applicable codes, standards, regulations, or specifications of

5

FDA, an agency of the United States; Council Directive 93/42/EEC of the European Community, The Medical Device Directive; BEK no. 1263 of 15.12.2008, Ministry of Health and Prevention, Denmark; The Canadian Medical Device Regulatory SOR/98-282 May 1998; the Australian Therapeutic Goods (Medical Devices) Regulations 2002; and applicable articles of the Japanese Pharmaceutical Affairs Law (MHLW Ministerial Ordinance no. 169, 2004). Plaintiff is, therefore, not entitled to recover any damages from Cook Defendants."

In the Plaintiff's forum state of Florida, this is the "government rules defense" ("GRD"). The GRD, 768.1256(1), *Florida Statutes*, establishes a rebuttable presumption that a product is not defective or unreasonably dangerous, and the manufacturer is not liable if three conditions are met. Specifically:

(1)   In a product liability action brought against a manufacturer or seller for harm allegedly caused by a product, there is a rebuttable presumption that the product is not defective or unreasonably dangerous and the manufacturer or seller is not liable if, at the time the specific unit of the product was sold or delivered to the initial purchaser or user, the aspect of the product that allegedly caused the harm:

   (a)   Complied with federal or state codes, statutes, rules, regulations, or standards relevant to the event causing the death or injury;

   (b)   The codes, statutes, rules, regulations, or standards are designed to prevent the type of harm that allegedly occurred; and

   (c)   Compliance with the codes, statutes, rules, regulations, or standards is required as a condition for selling or distributing the product.

The defense fails here as a matter of law for two reasons.  First, Defendants have pled a conclusory defense with no supporting facts.  Second, the federal code and rule provisions that serve "as a condition for selling or distributing the product" are not "designed to prevent the type of harm that allegedly occurred." Specifically, the 510(k) regulatory process by which the subject device was cleared for sale in the United States is not a process designed to ensure safety or effectiveness of the device.  For these reasons as set forth below, Plaintiff moves for entry of partial summary judgment on Defendants' government rules defense.

1.  <u>510(k) Clearance Is Not Based On a Safety and Effectiveness Review</u>

The FDA regulatory clearance that serves as the "condition for selling or distributing the product" is the premarket notification process ("510(k)").  The 510(k) process allows some medical devices to avoid the rigorous safety testing requirements imposed by the Medical Device Amendments to the FD&C Act.  *See Medtronic, Inc. v. Lohr*, 518 U.S. 470, 493 (1996).  The process is not focused on safety. *See* 21 C.F.R. § 807.87, 807.92, 807.93 (2012) (describing the requirements for 510(k) clearance).

The Supreme Court has long held that the "510(k) process is focused on *equivalence*, not safety", and therefore "substantial equivalence determinations provide little protection to the public." *Lohr*, 518 U.S. at 471.(emphasis in original).  The process "does not in any way denote official approval of the device." *Carroll v. Boston Scientific*, 2016 WL 3031063 (S.D.W.Va. 2016) (citing 21 C.F.R. §807.97).  The rule "imposes a limited form of review" on manufacturers of qualifying devices.  *Lewis v. Johnson & Johnson*, 991 F. Supp. 2d 748, 751-52 (S.D.W.Va. 2014) (quoting *Lohr*, 518 U.S. at 478).  In fact, "FDA regulations explicitly prohibit manufacturers of devices that have reached the market through the §510(k) process from indicating that the FDA has actually approved their device on the merits…". *Riegel v. Medtronic, Inc*., 451 F.3d 104, 112 (2d Cir. 2006), *aff'd* 552 U.S. 312, 128 S.Ct. 999. Devices entering the market having met the substantial equivalence standard after 510(k) review "have 'never been formally reviewed under the MDA for safety or efficacy'" and do not require the strict adherence to specifications in the application as the PMA-reviewed devices do. *Reigel v. Medtronic, Inc.*, 552 U.S. 312, 323 (2008).

The FDA itself explained the difference between the 510(k) premarket notification process and the more rigorous premarket approval process in an amicus brief filed with the Third

Circuit in *Horn v. Thoratec Corp.*, 376 F.3d 163, 167 (3d Cir.2004): "A manufacturer can obtain an FDA finding of 'substantial equivalence' by submitting a premarket notification to the agency in accordance with Section 510(k)…. A pre-market notification submitted under 510(k) is thus entirely different from a [premarket approval] which must include data sufficient to demonstrate that the device is safe and effective."

In *Lohr*, the Supreme Court similarly described the 510(k) process, observing: "If the FDA concludes on the basis of the § 510(k) notification that the device is 'substantially equivalent' to a pre-existing device, it can be marketed without further regulatory analysis…. [I]n contrast to the 1,200 hours necessary to complete a PMA review, the § 510(k) review is completed in an average of only 20 hours…. Section 510(k) notification requires little information, rarely elicits a negative response from the FDA, and gets processed very quickly." 518 U.S. at 478-79. In rejecting the manufacturer's contention that the 510(k) process amounted to a specific federal design requirement, the Supreme Court in *Lohr* said further: "The [defendant] exaggerates the importance of the 510(k) process…. *the 510(k) process is focused on equivalence, not safety*. As a result, *substantial equivalence determinations provide little protection to the public…. [T]he design of…'substantially equivalent' devices has never been formally reviewed…for safety or efficacy*." *Id.* at 493 (emphasis added); *see also Reigel v. Medtronic, Inc.*, 552 U.S. 312, 323 (2008) ("While § 510(k) [premarket notification] is focused on equivalence, not safety, premarket approval is focused on safety, not equivalence."); *Rodriguez v. Stryker Corp.*, 680 F.3d 568, 574 (6th Cir. 2012) ("The 510(k) process does not comment on safety."); *Lewis*, 991 F. Supp. 2d at 755 ("*The 510(k) process is not a safety statute or administrative regulation*. The Supreme Court has determined that 'the 510(k) process is focused on equivalence with a preexisting device rather than safety….'") (quoting *Lohr*)

(emphasis added).  For Cook even to suggest that the 510(k) process determined the safety and efficacy of its IVC Filters would contravene FDA's regulations prohibiting a device manufacturer from making "any representation that creates an impression of official approval of a [510(k)] device" because any such representation is "misleading." 21 C.F.R. § 807.97.

Because the 510(k) premarket notification process "is not a safety statute or administrative regulation," *Lewis*, 991 F. Supp. at 755, it cannot possibly serve as the basis for Cook's GRD, which requires compliance with a statute or rule "designed to prevent the type of harm that allegedly occurred."  This is precisely what the Southern District for West Virginia has held in cases involving the substantively identical GRDs in Florida and Texas: "Section 768.1256 of the Florida Statutes is nearly identical to the Texas statute at issue in *Lewis*. Both statutes provide a rebuttable presumption only when the product complies with government *safety* standards. Like I held in *Lewis*, because the 510(k) process is not "designed to prevent the type of harm that allegedly occurred," *see* Fla. Stat. § 768.1256(1)(b), I FIND that the government rules defense is inapplicable." *Edenfield v. Boston Sci. Corp.*, 2015 WL 5838517 at *4 (S.D.W. Va. 2015) (emphasis in original). *See also Lewis*, 991 F. Supp. 2d at 761 (finding GRD inapplicable because "the [device's] 510(k) clearance does not relate to its safety or efficacy. Furthermore, Ethicon has not provided the court with any mandatory safety standards or regulations with which the [device] complied.")  Plaintiff's research has turned up no decision affording a government rules defense to a 510(k)-cleared product like the Celect filter at issue here.

2.  <u>Defendant Cannot Meet Its Burden to Prove Their GRD</u>

Even if the defense were pled properly, summary judgment would not be appropriate unless Defendants demonstrate compliance (or genuine issues of fact surrounding their

compliance) with all three elements of the statutory defense. Specifically, with respect to "the aspect of the product that allegedly caused the harm," Defendants must identify the governing laws and (1) show that compliance with the laws was a "condition for selling or distributing the product," (2) show that the laws were "designed to prevent the type of harm that allegedly occurred" and (3) demonstrate through admissible evidence their compliance with such laws (or genuine issues of material fact regarding compliance). *Yaeger v. Lora Realty, Inc.*, 245 So. 2d 890, 891 (Fla. 3d DCA 1971) ("It is necessary for defendants to establish all of the elements of its affirmative defense.") Here, the eighth defense fails as a matter of law. *Cf. Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1344 (M.D. Fla. 2015) ("[Defendant] also contends, as a 'preliminary point,' that it is "entitled to a rebuttable presumption of no liability under Florida law because the [IVC] filter complied with federal safety regulations…. [Defendant] simply states in a conclusory fashion that it is entitled to this presumption, but fails to offer any argument or citation to the record to demonstrate that [Defendant] complied with the relevant statutes and regulations as required for application of the presumption. The Court could decline to apply the presumption on this basis alone."). Summary judgment is appropriate.

### C.  Affirmative Defenses ##1 and 3 – Statute of Limitations & Laches

Defendants pled the statute of limitations as their first defense: "Plaintiff's claims are barred by applicable statutes of limitations." (Ex. C, at 9.) Their third defense is laches: "Plaintiff's claims are barred by the doctrine of laches." (*Id.*) The applicable statute of limitations is section 95.11(3), *Florida Statutes*, which provides a four-year limitations period for actions

based on negligence, strict liability, fraud and breach of warranty not founded on a written instrument.[1].

Mrs. Hill filed her Complaint on October 30, 2014. (SMF 1.) Mrs. Hill first experienced symptoms and became aware of that her Celect IVC filtered had failed by perforating her bowel on August 15, 2013—less one year before filing the operative complaint and less than four years after the filter was placed (November 17, 2010) (SMF 1 and 8.)  On these facts, there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law" with respect to Defendants' limitations defense.   Fed. R. Civ. P. 56(c*); Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Defendants' laches defense may arise either at common law or under section 95.11(6), *Florida Statutes*, which states: "Laches shall bar any action *unless it is commenced within the time provided for legal actions concerning the same subject matter* regardless of lack of knowledge by the person sought to be held liable that the person alleging liability would assert his or her rights and whether the person sought to be held liable is injured or prejudiced by the delay. This subsection shall not affect application of laches at an earlier time in accordance with law." (emphasis added.)  Laches "is an equitable doctrine that is applied to bar a claim at equity based not upon the number of years that have lapsed but upon unreasonable delay in enforcing a right, coupled with a disadvantage to the person against whom the right is sought to be asserted. § 113 Fla. Jur. 2d, *Limitations & Laches* (2017).  It is "an omission to assert a right for an unreasonable and unexplained length of time under circumstances prejudicial to the adverse party.  It is an equitable defense...." *Ticktin v. Kearin*, 807 So. 2d 659, 663 (Fla. 3d DCA 2001).

---

[1] § 95.11(3)(a), (e), (j), (k) and (p), Fla. Stat. (2013).  The limitations period for breach of warranty contained in a written instrument is five years. § 95.11(2)(b), Fla. Stat. (2013).

The defense "must be proved by very clear and positive evidence." *Goodwin v. Blu Murray Ins. Agency,* 939 So. 2d 1098, 1104 (Fla. 5th DCA 2006).

Laches does not apply here because Mrs. Hill's action was "commenced within the time provided for legal actions," i.e., within the statute of limitations.  Defendants have not pled and could not prove that they have been prejudiced in any way or that Mrs. Hill "sat on her rights." *See Miami-Dade County v. Fernandez*, 905 So. 2d 213 (Fla. 3d DCA 2005) (deeming laches defense "devoid of merit" where defendant did not demonstrate that plaintiff county "sat on its rights").  Laches "may be applied before the statute of limitations expires only where strong equities, not present here, appear," *Goodwin*, 939 So. 2d at 1105.  Likewise, "[i]t has generally been held that laches does not come into play until the period prescribed by the applicable statute of limitations has expired." *Briggs v. Estate of Geelhoed*, 543 So. 2d 332, 333 (Fla. 4th DCA 1989). *See also Hancock Bank v. Hill St., LLC*, 2014 WL 12576792 at *4 (M.D. Fla. July 8, 2014) ("Plaintiff correctly argues that laches is appropriately applied prior to the running of the statute of limitations only where strong equities are present.") Under these circumstances, Defendants' laches defense fails as a matter of law and summary judgment is appropriate.

   D.  **Affirmative Defenses  ##10, 11, 12 and 13 – Nonparty "*Fabre*" Defenses**

      1.  Defendants' Burden to Plead & Prove Their Fabre Defenses.

In 1993 the Supreme Court of Florida established what is known as the "*Fabre* Doctrine." The doctrine provides that a defendant can seek allocation of fault to a third party for a plaintiff's injuries regardless of whether the third party can be sued in the same action. *Fabre v. Marin*, 623 So.2d 1182, 1185 (Fla.1993).  A "*Fabre* Defendant" is a "nonparty person or entity that a Defendant claims may be entirely or partially responsible for damages claimed by a Plaintiff in a civil case." *Id.*  The *Fabre* doctrine has been adopted as substantive law in Florida's

Case 1:14-ml-02570-RLY-TAB   Document 5714   Filed 08/11/17   Page 13 of 23 PageID #:
18187

comparative fault statute—section 768.81, *Florida Statutes*—which requires that a defendant in a

negligence or products liability action "affirmatively plead the fault of a nonparty and, absent a

showing of good cause, identify the nonparty, if known, or describe the nonparty as specifically

as practicable, either by motion or in the initial responsive pleading when defenses are first

presented, subject to amendment any time before trial…." § 768.81(3)(a)1, *Florida Statutes*

(2017).  Once a *Fabre* defense is properly pled, fault may be allocated to a nonparty only if the

defendant "prove[s] at trial, by a preponderance of the evidence, the fault of the nonparty in

causing the plaintiff's injuries." § 768.81(3)(a)2, *Florida Statutes* (2017).

Defendants assert four affirmative defenses, Nos. 10-13, based expressly or implicitly on

the alleged liability of nonparties. (Ex. C, at 10-11.)  They read as follows:

> 10. Plaintiff's damages or losses, if any, were caused or contributed to by the fault of
> other products, persons, firms, corporations, or entities over whom Cook Defendants had
> and have no control, or right of control, and for whom they owe no legal responsibility,
> including culpable non-parties who will be discovered through Cook Defendants ongoing
> investigation and discovery and to which the jury allocate fault at trial.

> 11. Plaintiff's claims against Cook Defendants are barred for the reason that her and/or
> her decedent's damages, if any, were caused by an intervening or superseding proximate
> cause.

> 12. *A cause of any physical harm sustained by Plaintiff was misuse of any medical device
> or product for which Cook Defendants are responsible by Plaintiff or by a person or
> person not reasonably expected by Cook Defendants at the time the product was sold,
> and Plaintiff is, therefore, not entitled to recovery any damages from Cook Defendants*
> (emphasis added).[2]

> 13.  A cause of any physical harm sustained by Plaintiff's decedent was a modification or
> alteration of any medical device or product for which Cook Defendants are responsible

---

[2] To the extent Defendants intend to allege that Plaintiff's comparative fault was an intervening,
superseding cause, the defense is deficient as discussed in the comparative fault section. Likewise, the
allegation of Plaintiff's comparative fault in the twelfth defense is addressed in the comparative fault
section below.

after delivery of the product to the initial user or consumer that was a proximate cause of the harm and was not reasonably expectable by Cook Defendants, and Plaintiff is, therefore, not entitled to recover any damages from Cook Defendants.

These *Fabre* defenses are legally insufficient because the defenses are not properly pled in accordance with Florida's comparative fault statute. In *Nash v. Wells Fargo Guard Service, Inc.* 678 So. 2d 1262 (Fla. 1996), the Florida Supreme Court held "that in order to include a nonparty on the verdict form pursuant to *Fabre*, the defendant must [1] plead as an affirmative defense the negligence of the nonparty and [2] specifically identify the nonparty." *Id.* Under long-standing Florida law, "[i]t is necessary" for a defendant "to establish all of the elements of its affirmative defense." *Yaeger v. Lora Realty, Inc.*, 245 So. 2d 890, 891 (Fla. 3d DCA 1971); and a plaintiff is entitled to "fair notice" through defense pleading that the defendant intends to assert a nonparty's fault. *Bogosian v. State Farm Mutual Auto. Ins. Co.*, 817 So. 2d 968 (Fla. 3d DCA 1998).

Defendants have asserted boilerplate allegations of unspecified fault on the part of unnamed nonparties. To the extent the defense of intervening, superseding cause is intended to encompass conduct by nonparties, the defense suffers the same infirmities. The same is true for the thirteenth defense of production modification/alteration. The tenth, eleventh, twelfth, and thirteenth defenses are thus facially insufficient.

**2.** No Record Evidence Supports Defendants' Deficient *Fabre* Defenses

Even if the defenses were properly pled, Plaintiff would be entitled to partial summary judgment unless there is admissible evidence supporting each element of the nonparty's alleged fault. *Lagueux v. Union Carbide Corp.*, 861 So. 2d 87, 88 (Fla. 4th DCA 2003) ("To include non-parties on a verdict form for the purpose of apportioning liability, a defendant must plead the negligence of a non-party as an affirmative defense and specifically identify the non-party.

14

(emphasis added)  The decision in *Thomas v. Daniel*, 736 So. 2d 100 (Fla. 1st DCA 1999) clearly articulates Defendants' burden: "[T]o include a non-party on a verdict form, defendants seeking to raise third-party liability must not only plead the non-party's negligence as an affirmative defense, but must also specifically identify the non-party and prove the non-party's fault in causing the accident." *Id.* at 101.  Defendants must "produce <u>specific evidence</u> sufficient … to justify the inclusion of the non-parties … in the jury instructions and on the verdict form." *Lagueux*, 861 So. 2d at 88. (emphasis added); *see also AMH Appraisal Consultants v. Argov Gavish Partnership*, 919 So. 2d 580, 581 (Fla. 4th DCA 2006) ("defendant has the burden of presenting sufficient evidence of the nonparty defendant's negligence").

The requirement that Defendants identify "specific evidence" is demanding.  For example, in an asbestos case a manufacturer was not permitted to place other asbestos manufacturers on the verdict form because it failed "to produce evidence establishing the specifics of different products, how often the products were used on the job sites, and the toxicity of those products as they were used [so as to] permit the jury to assess more accurately each of the asbestos products of both parties and nonparties on a job site and the likelihood of injury from each of the products." *W.R Grace &amp; Co. – Conn. v. Dougherty*, 636 So. 2d 746 (Fla. 2d DCA 1994).[3]

Defendants have identified no liable nonparties. They identify no one whose conduct might constitute a superseding cause and no facts to support a claim of product alteration. As for superseding cause, Defendants are liable under Florida law for subsequent foreseeable acts of medical negligence (though none is alleged here). *Stuart v. Hertz*, 351 So. 2d 703, 707 (Fla. 1977) (holding an initial tortfeasors is liable for "any additional harm and expense" caused by

---

[3] As addressed below, these principles apply equally to Defendants' allegations that Mrs. Hill is comparatively negligent. *Bongiorno v. Americorp, Inc.*, 159 So. 3d 1027 (Fla. 5th DCA 2015),

subsequent medical negligence). *See also Gross v. Lyons*, 763 So. 2d 276 (Fla. 2000) (holding initial tortfeasor liable for all damages, including those caused by successive tortfeasors, when the jury cannot apportion damages between tortfeasors).  Similarly, Defendants alteration/modification defense alleges only that an unspecified modification was "a cause" of harm to Mrs. Hill. This is not a defense to liability because even if true, such alteration would rise only to the level of a concurrent cause and Defendants would remain liable for the total harm. *See, e.g., Whitney v. R.J. Reynolds Tobacco Co.*, 157 So. 2d 309, 312 (Fla. 1st DCA 2014) ("[A] defendant's conduct need not be the only cause of a plaintiff's injuries, or even fifty-one percent of the cause; rather, the plaintiff must present evidence that the defendant's conduct was, more likely than not, **a** "substantial factor" in causing the injury. Thus, the plaintiff is not required to prove that the defendant's conduct alone was more likely than not the sole proximate cause.") (emphasis in original).

Under Florida law, summary judgment is appropriate when a defendant fails to meet this burden. *See, e.g., Ass'n for Retarded Citizens-Volusia, Inc. v. Fletcher*, 741 So. 2d 520, 524 (Fla. 5th DCA 1999) (upholding summary judgment against defendant who alleged nonparty medical negligence where defendant "failed to proffer any evidence to support its contention that medical negligence contributed to Nathan's death"). *Cf. Knauf Insulation v. Southern Brands, Inc.*, 2015 WL 5334311 at *3 (S.D. Ind. Sep. 14, 2015) (Barker, J.) (granting plaintiff summary judgment in UCC claim because a defense "without reference to any fact or evidence is insufficient to defeat summary judgment" as it does not "specifically plead and prove a defense to liability").

No such evidence has been alleged or proffered in this action.  The *Fabre* defenses in this action thus are insufficient as a matter of law and Defendants have not sought leave to amend them.  Partial summary judgment is appropriate on defenses 10-13.

### E.  Affirmative Defenses  ##9 and  12 – Comparative Fault[4]

   1.  Defendants' Burden to Prove Their Comparative Fault Defenses

Defendants assert two affirmative defenses, Nos. 9 and 12, based expressly or implicitly

on the Plaintiff's alleged comparative fault. (Ex. C, at 10.)

   9. Plaintiff's damages were caused, in whole or in part, by the comparative or
   contributory negligence of Plaintiff.

   12. *A cause of any physical harm sustained by Plaintiff was misuse of any medical device
   or product for which Cook Defendants are responsible by Plaintiff* or by a person or
   person not reasonably expected by Cook Defendants at the time the product was sold, and
   *Plaintiff is, therefore, not entitled to recovery any damages from Cook Defendants*
   (emphasis added).[5]

Under Florida's comparative fault statute, which applies in negligence and products

liability actions, "contributory fault chargeable to the claimant diminishes proportionately the

amount awarded as economic and noneconomic damages for an injury attributable to the

claimant's contributory fault, but does not bar recovery." § 768.81(2), Fla. Stat. (2017).  A

plaintiff is not comparatively negligent for her failure to discover a defect in the product or her

failure to guard against the possibility of its existence. *West v. Caterpillar Tractor Co., Inc.*, 336

So.2d 80, 92 (Fla. 1976).  According to the Florida Supreme Court, "The consumer or user is

entitled to believe that the product will do the job for which it was built.  On the other hand, the

consumer, user, or bystander is required to exercise ordinary due care." *Id.*  For a defendant to

allocate fault to a plaintiff, it must plead and prove that the plaintiff "[1] acts or fails to act as a

---

[4] This discussion applies equally to the superseding cause defense (#11) and the product alteration
defense (#13) to the extent they are intended to encompass Plaintiff's conduct.

[5] Defense 12 includes both *Fabre*  allegations and comparative fault allegations. Thus it was included in
the above discussion and is addressed here as well. Because both arise from the comparative fault statute,
the legal analyses overlap.

reasonable prudent person, and [2] such conduct proximately contributed to the plaintiff's injury. *Id*. at 90.

Florida law requires a defendant prove every element of its comparative fault defense, as recently reiterated in *Bongiorno v. Americorp, Inc.*, 159 So. 3d 1027 (Fla. 5th DCA 2015).  In *Bongiorno*, Florida's Fifth District Court of Appeal reversed a final judgment for defendant where defendant failed to prove every element of its comparative fault defense.  Plaintiff had fallen in a bathroom on defendant's property and defendant argued that plaintiff was comparatively negligent in wearing high heels. The trial court, sitting as the factfinder, agreed with defendant that plaintiff's choice to wear high heels "contributed to the fall."  The appellate court reversed because the defendant "bears the burden of proving that the negligence of the other party was a cause of the accident." *Id.* at 1029. This means the defendant must prove every element of the negligence—duty, breach, causation and harm. The defendant in *Bongiorno* failed to show the existence of a duty, i.e., that plaintiff "created a foreseeable zone of risk by wearing high heeled shoes." *Id.* at 1030.

Similarly, in *Borenstein v. Raskin*, 401 So. 2d 884, 885 (Fla. 3d DCA 1981), a medical malpractice defendant claimed plaintiff was comparatively negligent because she delayed in seeing a vascular surgeon.  Though the evidence showed she had simply followed all her doctors' advice, the trial court submitted a comparative fault instruction to the jury.  The Third District Court of Appeal reversed: "In order to establish the defense of comparative negligence Dr. Raskin had to prove each of the elements of negligence; that Mrs. Borenstein owed herself a duty of care, that she breached that duty and that the breach was the proximate cause of the damages she sustained." *Id.* at 886 (emphasis added). Because there was no evidence that plaintiff's delay in seeing a vascular surgeon was a proximate cause of her damages, the court

erred in submitting the instruction to the jury. *Accord Drew v. Tenet St. Mary's, Inc.*, 46 So. 3d 1165, 1167 (Fla. 4th DCA 2010) ("In order to establish the defense of comparative negligence, a medical defendant must prove each of the following three elements of negligence: first, that the patient owed himself a duty of care; second, that the patient breached that duty; and, third, that the breach was the proximate cause of the damages the patient sustained."); *Vidal v. Macksoud*, 933 So. 2d 659, 661 (Fla. 3d DCA 2006) (same); *Riegel v. Bielan*, 798 So. 2d 990, 991 (Fla. 2d DCA 2000) (same).

To the extent Defendants intended their twelfth defense as a "product misuse defense" rather than a comparative fault defense, that distinction has been abolished under Florida law. Product misuse was merged into comparative fault by the Florida Supreme Court more than 20 years ago. *Standard Havens Prods. v. Benitez*, 648 So. 2d 1192 (Fla. 1994) (expressly merging product misuse into comparative fault in cases "sounding in negligence" and discussing adoption of the same principle as to strict liability in *West v. Caterpillar*). As with its *Fabre* defenses, the Cook Defendants' Answer  includes only conclusory, boilerplate allegations.  The defense cites no supporting facts nor does it attempt to allege what duty Mrs. Hill owed to herself, how she breached that duty, or how any such breach proximately caused her damages.  Defendants have not sought to amend this allegation.  Accordingly, summary judgment is appropriate on the tenth and twelfth defenses.

### F.   **Affirmative Defense  #2 – Assumption of the Risk (Comparative Fault)**

Finally, Defendants' second affirmative defense states: "Plaintiff's decedent [sic] assumed or incurred any risks associated with the use of any Cook Defendants' medical device or product in connection with his medical treatment by providing his informed consent prior to undergoing medical treatment."  Assumption of the risk is no longer recognized as an affirmative

defense under Florida law, having been merged into comparative fault. *Blackburn v. Dorta*, 348 So. 2d 287 (Fla. 1977).  As a comparative fault defense, this suffers the same facial deficiencies as the other comparative fault defenses discussed above and summary judgment is appropriate.

## VI.   **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an Order that (1) grants this motion and (2) grants partial summary judgment in Plaintiff's favor on Defendants' affirmative defenses 1, 2, 3 and 8-13.

Dated: August 11, 2017                    Respectfully submitted,

**RILEY WILLIAMS & PIATT, LLC**

*/s/       Joseph N. Williams*
Joseph N. Williams, IN Atty. No. 25874-49
The Hammond Block Building
301 Massachusetts Avenue
Indianapolis, Indiana 46204
Telephone: (317) 633-5270
Facsimile: (317) 426-3348
jwilliams@rwp-law.com

***Liaison Counsel to Plaintiffs' Steering Committee
and on behalf of Plaintiffs' Steering Committee***

Michael W. Heaviside, Esq.
**HEAVISIDE REED ZAIC, A LAW CORPORATION**
910 17th Street, NW, Suite 800
Washington DC, 20006
Telephone: (202) 223-1993
mheaviside@hrzlaw.com

Ben C. Martin
**THE LAW OFFICES OF BEN C. MARTIN**
3710 Rawlins Street, Suite 1230
Dallas, TX 75219
Telephone: (214) 761-6614
Facsimile: (214) 744-7590
bmartin@bencmartin.com

David P. Matthews, Esq.
**MATTHEWS AND ASSOCIATES**
2509 Sackett St.
Houston, TX 77098
Telephone: (713) 522-5250
Facsimile: (713) 535-7184
dmatthews@thematthewslawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 11, 2017, a copy of the foregoing was served electronically and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. A copy of the foregoing was also served via U.S. Mail to the following non-CM/ECF participants:

Anthony James Urban
Law Offices of Anthony Urban, PC
474 N. Centre Street, 3rd Floor
Pottsville, PA 17901

Brian J. Urban
Law Offices of Anthony Urban, PC
474 N. Centre Street, 3r Floor
Pottsville, PA 17901

Carrie R. Capouellez
Lopez McHugh, LLP
214 Flynn Avenue
Moorestown, NJ 08057

Caleb Hoff Didricksen, III
Didricksen Law Firm, PLC
3114 Canal Street
New Orleans, LA 70119

Carl A. Woods, III
Didriksen Law Firm
3114 Canal Street
New Orleans, LA 70119

Cliff W. Marcek
Cliff W. Marcek, P.C.
700 S. Third Street
Las Vegas, NV 89101

Curtis Hoke
The Miller Firm LLC
The Sherman Building
108 Railroad Avenue
Orange, VA 22960

David Carl Anderson
Anderson Law
711 Van Ness Avenue
Suite 220
San Francisco, CA 94102

John Cornew
409 E. Maple ave
Lindenwold, NJ 08021

James R. Olson
Olson, Cannon, Gormley, Angulo
& Stoberski
9950 West Cheyenne Avenue
Las Vegas, NV 89129

Jay Harris
Harris, Reny & Torzewski
3rd Floor
Two Maritime Plaza
Toledo, OH 43604

Joseph A. Napiltonia
Law Office of Joe Napiltonia
213 3rd Avenue North
Franklin, TN 37064

Joseph G. Sauder
Chimicles & Tikellis, LLP
361 West Lancaster Avenue
Haverford, PA 19041

Max E. Corrick
Olson, Cannon, Gormley,
Desruisseaux
9950 West Cheyenne Avenue
Las Vegas, NV 89129

Neal Lewis Moskow
Ury & Moskow
883 Black Rock Turnpike
Fairfield, CT 06825

Philip Sholtz
The Driscoll Firm, P.C.
211 N. Broadway, 40th Floor
St. Louis, MO 63102

W. Bryan Smith
Morgan & Morgan, LLC
2600 One Commerce Square
Memphis, TN 38103

Peter C. Wetherall
Wetherall Group, LTD
9345 W. Sunset Road, Suite 100
Las Vegas, NV 89148

Richard A. Freese
Langston Sweet & Freese PA
The Morgan Keegan Center
2900 Highway 280, Suite 240
Birmingham, AL 35223

Wilnar Jeanne Julmiste
Anderson Glenn LLP–Boca Raton, FL
2201 NW Corporate Blvd, Suite 100
Boca Raton, FL 33431


*/s/ Ben C. Martin*
Ben C. Martin