Page 1

1           IN THE UNITED STATES DISTRICT COURT
2               SOUTHERN DISTRICT OF INDIANA
3                    INDIANAPOLIS DIVISION
4
5    IN RE: COOK MEDICAL INC.,        )
6    IVC FILTERS MARKETING, SALES     )
7    PRACTICES AND PRODUCTS           ) MDL No.
8    LIABILITY LITIGATION             ) 1:14-ml-2570-RLY-
9                                     ) TAB
10   ARTHUR GAGE                      ) MDL No. 2570
11   Civil Case No.                   )
12   1:14-cv-1875-RLY-TAB             )
13            The deposition of ORAJEAN DAUGHRITY,
14    called for examination pursuant to the Rules of
15    Civil Procedure for the United States District
16    Courts pertaining to the taking of depositions,
17    taken at 311 South Wacker Drive, Chicago, Illinois,
18    on the 22nd day of May, 2017, at the hour of
19    10:11 a.m.
20
21
22
23
24    Reported by:  Gina M. Luordo, CSR, RPR, CRR
25    License No.:  084-004143

Page 2

```
 1  APPEARANCES:
 2    THE GALLAGHER LAW FIRM, PLLC
      BY:  MR. MICHAEL T. GALLAGHER
 3        MS. PAMELA McLEMORE
          MS. SHAWNA FUGATE
 4    2905 Sackett Street
      Houston, Texas  77098
 5    (713) 222-8080
      pamm@gld-law.com
 6
        - and -
 7
      FEARS NACHAWATI
 8    BY:  MS. ARATI S. FURNESS
      4925 Greenville Avenue, Suite 715
 9    Dallas, Texas  75206
      (214) 461-6223
10    afurness@fnlawfirm.com
         Representing the Plaintiff;
11
12    FAEGRE BAKER DANIELS
      BY:  MR. KIP S.M. McDONALD
13         MS. ANNE K. RICCHIUTO
      300 N. Meridan Street, Suite 2700
14    Indianapolis, Indiana  46204
      (317) 237-1485
15    kip.mcdonald@faegrebd.com
      anne.ricchuito@faegrebd.com
16       Representing the Defendants.
17
18         * * * * * *
19
20
21
22
23
24
25  Also Present:  Mr. Ross Colby - Videographer
```

Page 3

```
 1              I N D E X
 2  WITNESS                  EXAMINATION
 3  ORAJEAN DAUGHRITY
 4    By Mr. McDonald              8
 5    By Ms. McLemore            100
 6    By Mr. McDonald (further)  103
 7
 8
 9            E X H I B I T S
10  NUMBER     DESCRIPTION              PAGE
11  Exhibit 1   Subpoena to Testify at a    8
12              Deposition in a Civil Action
13  Exhibit 2   Plaintiff Profile Form     25
14  Exhibit 3   Plaintiff Fact Sheet       29
15  Exhibit 4   Plaintiff Fact Sheet       43
16  Exhibit 5   Plaintiff Arthur Gage's    44
17              Answers to Defendant's First
18              Set of Interrogatories
```

Page 4

 1  THE VIDEOGRAPHER:  Good morning.  We are going
 2  on the record at 10:11 a.m. on May 22, 2017.
 3  Please note that the microphones are sensitive and
 4  may pick up whispering, private conversations and
 5  cellular interference.  Please turn off all cell
 6  phones or place them away from microphones as they
 7  can interfere with deposition audio.  Recording and
 8  video recording will continue until to take place
 9  until all parties agree to go off the record.
10      This is media unit 1 of the video recorded
11  deposition of Orajean Daughrity taken by counsel
12  for the defendant in the matter of In re: Cook
13  Medical, Inc., et al., filed in the United States
14  district for the Southern District of Indiana,
15  Indianapolis Division.  This deposition is being
16  held at Faegre Baker Daniels located at 311 South
17  Wacker Drive in Chicago, Illinois.
18      My name is Ross Colby from the firm
19  Veritext Legal Solutions.  The court reporter is
20  Gina Luordo from Veritext Legal Solutions.  I'm not
21  authorized to administer an oath.  I'm not related
22  to any party in this action, nor am I financially
23  interested in the outcome.  Counsel and all present
24  in the room will now state their appearances and
25  affiliations for the record.

Page 5

 1      MS. McLEMORE:  Pam McLemore for Arthur Gage.
 2      MR. McDONALD:  Kip McDonald for Cook
 3  defendants.
 4      MS. RICCHIUTO:  Anne Ricchiuto for Cook
 5  defendants.
 6      MR. GALLAGHER:  Mike Gallagher for Arthur Gage.
 7      MS. FURNESS:  Arati Furness for Arthur Gage.
 8      MS. FUGATE:  Shawna Fugate with The Gallagher
 9  Law Firm for Arthur Gage.
10      THE VIDEOGRAPHER:  Thank you.  If there are any
11  objections to this proceeding, please state them at
12  the time of your appearance beginning with the
13  noticing attorney.  Will the court reporter please
14  swear in the witness.
15          (Whereupon, the witness was
16          sworn.)
17      MR. McDONALD:  Just one preliminary matter.  I
18  want to get on the record the parties stipulate
19  that objections to form are preserved based on the
20  court's recent direction, I guess, to streamline
21  the process of the depositions.
22      MS. McLEMORE:  We agree.  Thank you.
23      MR. McDONALD:  Thank you.
24      Good morning.  My name is Kip McDonald.
25  We met briefly off the record earlier.  I represent

Page 74

1  Q. Any recollection as to how he got home?
2  A. I'm sure someone went to pick him up. It
3  wasn't me.
4  Q. Have you previously -- have you ever
5  picked him up from the hospital?
6  A. I have.
7  Q. How many times? Do you recall any -- how
8  many times have you picked him up from the
9  hospital?
10 A. Several.
11 Q. More than five?
12 A. More than five.
13 Q. More than 10?
14 A. I wouldn't say more than 10.
15 Q. Between five and 10?
16 A. It could be between five and -- because
17 I'm working a lot.
18 Q. How many times do you think you've taken
19 him to the hospital?
20 A. Many times.
21 Q. More than five?
22 A. I would say more than five, yes.
23 Q. Less than 10?
24 A. Less than 10.
25 Q. Do you recall seeing Mr. Gage immediately

Page 75

1  following or shortly after the placement of his
2  filter?
3  A. No. I know for a fact because I was
4  working, I didn't see him right afterwards.
5  Q. How long do you think it was until you saw
6  him?
7  A. Probably about three days after.
8  Q. How would you describe his condition at
9  that time?
10 A. Well, he was complaining of pain.
11 Q. What type of pain?
12 A. He said a lot of times when he yawned, it
13 felt like something was poking him.
14 Q. Did he know what or did he have an opinion
15 as to what was causing him the pain?
16 A. Well, he wasn't for sure, but he said he
17 didn't feel the pain before, that particular pain
18 before he had the IVC filter inserted.
19 Q. So within three days, he was complaining
20 to you about pain --
21 A. Yes.
22 Q. -- when he yawned?
23 A. Yes.
24 Q. Any other complaints?
25 A. Well, he was complaining about the IVC

Page 76

1  filter. He told me the first day it was inserted.
2  Q. What did he tell you on the first day?
3  A. He said he was having some pain. This is
4  before he came home from the hospital, and he told
5  the doctors. They took him back down to do a
6  procedure and another ultrasound, and I don't know
7  what happened after that.
8  Q. Is your understanding that he told the
9  doctors that he was having pain from his filter?
10 A. Yes. Yes, after they inserted it on the
11 same day. And they told him that he couldn't be
12 feeling it because it was -- he wouldn't feel it.
13 That's what they told him. You couldn't be feeling
14 that. So they took him down and did another
15 ultrasound. I don't know what happened after that.
16 Q. Do you know what doctors he told that to?
17 A. I'm not sure.
18 Q. And he was telling -- did he tell you that
19 the pain he was having while yawning was from his
20 filter?
21 A. He felt like it was because he wasn't
22 having it before.
23 Q. Didn't give any other explanation. He
24 believed the filter was causing the pain?
25 A. Yes.

Page 77

1  Q. And that was within three days of
2  placement?
3  A. Yes.
4  Q. Do you have any knowledge about
5  Mr. Gage -- sorry.
6     Have you told me everything you know about
7  the placement of Mr. Gage's IVC filter?
8  A. Yes, I have.
9  Q. Is there anything else you would tell a
10 jury about the placement of his IVC filter?
11 A. There's nothing else I could tell you
12 because I don't really know a whole lot about it.
13 Q. Nothing else about the two, three, four
14 days after placement of the filter?
15 A. Well, the two or three days after the
16 placement of the filter, he started having --
17 complaining about pain in his lower back, in his
18 leg and in his groin area, and that's pain that's
19 been from that time on consistent up to now.
20 Q. That's the same kind of pain that he's
21 having today?
22 A. Yes, that he's having now.
23 Q. And your understanding is that's always
24 been attributed to the filter?
25 A. That's what he told me.

Page 78

1  Q. That's what Mr. Gage has told you?
2  A. That's what he told me.
3  Q. Do you know what he did about -- what he
4  did about the pain in the two or three days after?
5  I know -- I understand you said he had a second
6  procedure, possibly an ultrasound, but you didn't
7  know the results?
8  A. I don't know, no.
9  Q. Do you know if he did anything else? Did
10 he go back?
11 A. I'm not sure, but I know that over the
12 course of the time that the IVC filter has been
13 implanted, he's gone back to the hospital numerous
14 times for pain and discomfort.
15 Q. The pain and discomfort being due to the
16 filter?
17 A. Yes. That's what he told me.
18 Q. Have you ever done anything to help
19 Mr. Gage with his filter?
20 A. No, I haven't. I don't know what to do.
21 I mean, give him a heating pad and have him sleep
22 on it.
23 Q. Okay. How about do you have any knowledge
24 about Mr. Gage being involved in a series of car
25 accidents and falls following the implant?

Page 79

1  A. I do recall a couple falls when he's
2  become unsteady.
3  Q. Any --
4  A. His legs give out.
5  Q. Any understanding as to why he's become
6  unsteady?
7  A. I'm not sure.
8  Q. Can you describe any of the falls for me?
9  Were you with him?
10 A. No, I was not.
11 Q. So your knowledge about any falls is based
12 on --
13 A. What he told me.
14 Q. How about car accidents. Any?
15 A. Car accidents? I think he's had a couple
16 car accidents. I wasn't with him.
17 Q. So you weren't involved in any of those?
18 A. No, I wasn't involved.
19 Q. Didn't witness any of them?
20 A. No, I did not.
21 Q. Didn't see him being hit by a car?
22 A. No.
23 Q. Do you recall him being hit by a car?
24 A. No.
25 Q. Do you recall him being injured in any of

Page 80

1  the car accidents?
2  A. I don't recall that.
3  Q. Do you recall Mr. Gage visiting Loyola
4  Renal Clinic in May of 2011 shortly after filter
5  placement?
6  A. I don't recall, but it's a possibility he
7  did.
8  Q. You don't recall attending with him?
9  A. No, I don't.
10 Q. Were you aware that Mr. Gage refused
11 dialysis?
12 A. I know that he did. He said he would
13 never take dialysis.
14 Q. Why is that?
15 A. He has a couple friends that were on
16 dialysis, and they passed away. So I think he just
17 has a fear of that.
18 Q. A fear that dialysis will --
19 A. Yes.
20 Q. What is that fear? Help me understand
21 that.
22 A. Thinking he's going to die.
23 Q. From the dialysis?
24 A. Yeah. He believes that you don't -- if
25 you get the dialysis, you don't live long, but I

Page 81

1  don't know. That's just his -- he just has a fear
2  of it.
3  Q. Do you have a different opinion on
4  dialysis?
5  A. I do.
6  Q. What is that opinion?
7  A. Well, I worked in hospitals before, and
8  I've seen people on dialysis, and they've lived for
9  years on dialysis, but he has says he has friends
10 on dialysis, and they didn't last that long. So he
11 has a fear. He said he would never get it.
12 Q. So would you describe Mr. Gage as someone
13 who is very sick or very ill?
14 A. I would say he is. He has his days when
15 he's feeling okay and days when he's not. Most
16 days he's not, but he just pushes himself.
17 Q. How so?
18 A. He doesn't -- he won't lay down. He just
19 has to get up and keep going. He said if he lays
20 down and just lets things bother him, he might as
21 well just lay there and die. So he just pushes
22 himself.
23 Q. So pushes himself to keep moving?
24 A. To keep moving, yeah.
25 Q. Does he have a belief that if he stops

21 (Pages 78 - 81)

Page 98

BY MR. McDONALD:
Q. Has anyone ever told you that there are problems with Mr. Gage's device?
A. Never had a discussion with anyone, no.
Q. Beyond Mr. Gage. Poor question.
Has anyone besides Mr. Gage ever told you that there was a problem with his device?
A. No.
Q. Are there any other medical visits or ER trips that you recall that we haven't discussed today?
A. I can't recall.
Q. Have you understood all of my questions today?
A. Yes.
MR. McDONALD: Take a quick break. We'll go off the record for just a minute.
THE VIDEOGRAPHER: We'll go off the record. The time is 12:20 p.m.
(Whereupon, a short break was taken.)
THE VIDEOGRAPHER: We're back on the record at 12:35 p.m.
BY MR. McDONALD:
Q. Ms. Daughrity, just a few final questions

Page 99

here.
Have you ever had any discussions with Mr. Gage about what he expects to come from the lawsuit he's filed?
A. No, I have not.
Q. Do you have any idea what it is he wants to happen as a result of the lawsuit?
A. No, I don't.
Q. Is there anything else you plan to tell a jury if you came to testify at trial?
A. No, I don't think so, not that I can think of right now.
Q. Anything that you've wanted to say today or talk about that we haven't talked about yet today?
A. No.
MR. McDONALD: Thank you. I'll pass the witness.
MS. McLEMORE: I have just a few. Would you like to switch sides?
MR. McDONALD: If you'd like.
THE VIDEOGRAPHER: We'll go off the record. The time is 12:36 p.m.
(Whereupon, a short break was taken.)

Page 100

THE VIDEOGRAPHER: Back on the record at 12:38 p.m.
MS. McLEMORE: Ms. Daughrity, I just wanted to ask you a couple of questions.
EXAMINATION
BY MS. McLEMORE:
Q. In front of you, you should still have Defendant's Exhibit 3. Can you find that for me, please?
A. Okay.
Q. Could you turn to Page 7. Do you see at the top, the date filed is March 18th of 2015?
A. Yes.
Q. And in your response to No. 10B there toward the bottom --
A. Yes.
Q. -- you indicated that you thought that was 2016?
A. Yes.
Q. Considering that it was filed in March of 2015, do you still believe that's 2016?
A. It looks like it's 2011.
Q. Do you believe you wrote over a date that was there before?
A. Yes.

Page 101

Q. I just wanted to clear that up. Thank you.
You talked a lot -- you were asked a lot of questions and talked a lot about the different pains and issues that Mr. Gage had with various conditions that he experienced or was diagnosed with before the filter, the placement of the filter.
A. Yes.
Q. And you talked somewhat about the pain that he had after the filter was placed. Do you recall that?
A. Yes.
Q. I was a little bit confused quite honestly. I wanted to ask do you or can you tell us the kind of pain that he had with regard to after the filter that was different than what he expressed prior to the placement of the filter?
A. After the filter, he started experiencing aching. He said it felt like aching in his groin area, lower back and down his right leg.
Q. His groin area, his lower back and his right leg?
A. Yes.
Q. So what was the general area that he

Page 102

1 complained about, and how was it different than his
2 complaints prior to the placement of the filter?
3    A.  He said he had never had pain there before
4 in those areas.
5    Q.  And had he expressed to you any kind of
6 pain in those areas prior to the placement of the
7 filter?
8    A.  No, he had not.
9    Q.  Did he have pain in his abdominal area
10 after the placement of the filter?
11    A.  Yes, he did.
12    Q.  Was this different than any abdominal pain
13 that he expressed to you before the placement?
14    A.  Yes.  It was a constant aching pain.
15    Q.  So you felt it was -- it was a consistent
16 pain?
17    A.  Yes.
18    Q.  And it was a different kind of pain?
19    A.  Yes.
20    MS. McLEMORE:  All right.  Thank you.  I have
21 no further questions.
22    MR. McDONALD:  Go off the record for a second.
23    THE VIDEOGRAPHER:  Off the record at 12:41 p.m.
24        (Whereupon, a short break was
25        taken.)

Page 103

1    THE VIDEOGRAPHER:  Back on the record at
2 12:45 p.m.
3        FURTHER EXAMINATION
4 BY MR. McDONALD:
5    Q.  Ms. Daughrity, do you remember earlier we
6 talked earlier about the different lists of pain
7 that Mr. Gage was experiencing before the filter
8 was placed?
9    A.  Yes.
10    Q.  Some of those we talked about were chronic
11 joint pain, chronic chest pain, abdominal pains,
12 thigh pains.  If I understood your testimony then,
13 he had experienced groin pain, lower back pain and
14 pain in his legs?
15    A.  Yes.
16    Q.  Is that still accurate?
17    A.  Yes.
18    Q.  So is it your testimony now that after the
19 filter, he also experienced -- after the filter was
20 placed, he also experienced those types of pain?
21    A.  Yes.
22    Q.  And it's possible that -- is it possible
23 that the pain he's experiencing after filter
24 placement is the same pain that he was experiencing
25 before filter placement?

Page 104

1    A.  I can't recall.  I'm not sure.
2    Q.  So you can't testify whether or not the
3 leg pain --
4    A.  Yes.
5    Q.  -- the groin pain, the aching and lower
6 back pain is the same pain that he experienced
7 before the filter?
8    A.  I'm not sure about that, yes.
9    MR. McDONALD:  Thank you.
10    THE VIDEOGRAPHER:  This is the conclusion of
11 the deposition.  We're going off the record.  The
12 time is 12:46 p.m.
13        (FURTHER DEPONENT SAITH NAUGHT.)

Page 105

1 STATE OF ILLINOIS  )
2                    ) SS:
3 COUNTY OF C O O K  )
4        I, GINA M. LUORDO, a notary public within
5 and for the County of Cook County and State of
6 Illinois, do hereby certify that heretofore,
7 to-wit, on May 22, 2017, personally appeared before
8 me, at 311 South Wacker Drive, Chicago, Illinois,
9 ORAJEAN DAUGHRITY, in a cause now pending and
10 undetermined in the United States District Court
11 for the Southern District of Indiana, IN RE: COOK
12 MEDICAL, INC., IVC FILTERS MARKETING, SALES
13 PRACTICES AND PRODUCTS LIABILITY LITIGATION.
14        I further certify that the said ORAJEAN
15 DAUGHRITY was first duly sworn to testify the
16 truth, the whole truth and nothing but the truth in
17 the cause aforesaid; that the testimony then given
18 by said witness was reported stenographically by me
19 in the presence of the said witness, and afterwards
20 reduced to typewriting by Computer-Aided
21 Transcription, and the foregoing is a true and
22 correct transcript of the testimony so given by
23 said witness as aforesaid.
24        I further certify that the signature to
25 the foregoing deposition was not waived by counsel