IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |
| This Document Relates to:<br><br>*Hill v. Cook Medical, Inc. et al.,*<br>Case No. 1:14-cv-6016-RLY-TAB | |

**PLAINTIFF'S MOTION TO EXCLUDE OR LIMIT THE EXPERT TESTIMONY OF
RENU VIRMANI, MD**

Plaintiff submits her Motion to Exclude or Limit the Expert Testimony of Renu Virmani, MD, and would respectfully show the Court that the challenged testimony from Cook's expert should be excluded or limited for the reasons set forth below.

**I.
Introduction and Relief Sought**

Because Dr. Virmani's deposition was taken on August 8, 2017—the day before the Daubert deadline—this motion is being filed within ten days of the deposition, as agreed by the parties.

Dr. Renu Virmani is a board-certified anatomic pathologist who gives a range of opinions centered on the histological evidence from Cook's various animal studies. However, her report strays into clinical opinions that she admits she is not qualified to render. Dr. Virmani's report describes the limitations on her expertise as an anatomic pathologist: "my job is to report on the tissue" and to "render an opinion on the tissue." (Ex. A, Virmani Rep. at 33.) She continues:

> I do not treat patients, make clinical diagnoses, or prescribe medications. I render diagnosis based on the examination of tissues…. <u>If there are no tissues removed, I believe pathologists should refrain from giving an opinion because it is not our job to do so, as we are not trained to make these judgments</u>." (*Id.*) (emphasis added)

Dr. Virmani is board certified only in anatomic pathology, (Virmani Dep. (Rough) at 60:23-25); she is not board certified in forensic or clinical pathology. Plaintiff brings no *Daubert* challenge to Dr. Virmani's opinions on the animal tissues she examined.

Plaintiff moves to exclude only one set of clinical opinions that are beyond Dr. Virmani's expertise and that are not supported by any reliable methodology. Specifically, Plaintiff moves to exclude the clot-trapping/hematological opinions in Section VIII(i) of Dr. Virmani's report ("Thrombus Around Filter is Expected Phenomenon"), including the following:

> (a) Cook filters "function to trap clots;" (b) "small clots are not concerning" while large clots "more likely are being caught in the filter and are coming from the pelvic and leg veins;" and (c) that "the Celect and Tulip filters are not inherently thrombogenic." (*Id.* at 31.)

None of these opinions is based on examination of tissue. All of these opinions are clinical judgments and Dr. Virmani admits she is not qualified to make clinical judgments.

## II.
## Argument

At the start of her deposition Dr. Virmani conceded she is not an expert in clotting:

Q. Do you consider yourself an expert in hematology?

A. No but I know enough about clotting as general you have to know as a physician, <u>but am I an expert in clotting, no I'm not</u>.

(Ex. B, Virmani Dep. (Rough) at 60:4-8) (emphasis added). Dr. Virmani feels qualified to give opinions on hematological questions as they relate to pathology but "not as a clinician, absolutely not." (*Id.* at 61:2-7.) She was asked: "Q. [S]ome doctors of course specialize in hematology and call themselves hematologists. You don't specialize in hematology do you? A. No I don't." (*Id.*

at 60:16-20.) She has never testified as an expert in hematology and has never sought to do so before this case. (*Id.* at 61:14-19.)

Despite these admitted limitations, Dr. Virmani seeks to opine on the efficacy of filters and the clinical course for filter patients—i.e., that Cook filters trap clots; that small clots are of no clinical concern; that large clots originate in the lower veins and are "more likely" trapped by the filter than caused by the filter; and, in her ultimate conclusion, that Cook filters are not "inherently thrombogenic." Dr. Virmani also directly references and "disagrees" with the conclusion of Dr. David Garcia, Plaintiff's expert clinical hematologist, that filters are thrombogenic. (Ex. A, Virmani Rep. at 31 n.23.)

This is not an instance where a pathologist has reviewed pathological specimens and correlates her conclusions to the clinical literature. *See, e.g., Wise v. C.R. Bard, Inc.*, 2015 WL 570070 at *4 (S.D.W.Va. Feb. 11, 2015) (permitting clinical pathologist testimony where he "reviewed pathological slides, compared his observations to published medical literature, and provided diagnostic interpretations of what he saw" based on reviewing "dozens of studies and articles"). While Section VIII(i) of her report begins with a brief discussion of the cellular response to a foreign body in the blood stream (which Plaintiff does not challenge), she then engages in a clinical discussion, beginning with a statement regarding which clots are of clinical concern and which are caught by the filter (an assertion necessarily premised on the opinion that Cook filters capture clots in the first place).

Dr. Virmani cites no authority for her conclusion that "small clots" are not concerning while large clots are "more likely" originating in patients' legs and "being caught by the filter." This unsupported conclusion is contrary to her own experience on autopsy where she has seen death caused by microscopic clots. (Virmani Dep. (Rough) at 198:11-17.) She did not perform

any literature review, test, or experiment to confirm that filters are catching clots rather than creating them. (*Id.* at 196:13-24.) When asked her methodology for arriving at this conclusion she replied, "it is impossible to determine whether a filter is causing the clot or it's trapping the clot unless and until you could visualize everything throughout the patient's life and I don't think you can make that decision." (*Id.* at 196:25-197:9) (emphasis added). When asked how she could draw her conclusion that filters are trapping clots and are not thrombogenic if it is "impossible" to tell whether a filter is causing a clot or trapping a clot, she responded that clots were not seen in "the animal study," so "therefore I assume that in humans when you see those, more likely they are coming from somewhere else." (*Id.* at 197:10-18.)

When asked what specific pathologic evidence she reviewed in this case to determine that Cook filters capture clots, she could cite none, responding instead, "Basically because it's the design of the filter is such that it is supposed to catch the clot … that's why the shape of the filter is the way it is, to trap that clot." (*Id.* 192:25-193:14.) When pressed again for actual evidence, Dr. Virmani cited the PREPIC study as "indirect evidence" supporting her opinion, but she conceded that "there's nothing in PREPIC I that speaks to the clot-trapping efficiency of a Gunther Tulip or Celect filter." (*Id.* at 194:12-15.) She also agreed that none of the Cook animal studies addressed in her report assessed the clot- trapping abilities of Cook filters. (*Id.* at 157:7-15) ("None of these [studies] had any testing done for clot trapping.") She did not recall reviewing Cook's *in vitro* clot-trapping study in arriving at her opinions. (*Id.* at 192:20-24.)

Dr. Virmani also cites Cook's own 2016 IVC Filter Data Summary to report that from 2008-2016, only 17 complaints of IVC occlusion have been made to Cook. From this she concludes neither filter is "inherently thrombogenic." (Ex. A¸ Virmani Rep. at 31 & n.23.) The first deficiency with this opinion is its logic—if any or all 17 reported cases were caused by the

filter then those instances would be proof that they <u>are</u> thrombogenic; the mere occurrence tells us nothing about the cause and Dr. Virmani claims it is "impossible" to tell, as quoted above. More important is that she cites complaints to Cook and treats those complaints as if they are a reflection of the occurrence rate in the real world. But Dr. Virmani admits she cannot know how representative complaints to the company (or, specifically, Cook's own characterization of complaints made to it) might be of the number of real-world events. Using the example of perforation, she was asked "what percentage of perforations that occur out in the world are reported to Cook?" Her candid response: "I don't know…." (Ex. B, Virmani Dep. (Rough) at 45:11-14.) Elsewhere in her deposition Dr. Virmani confirmed that with respect to any filter complication—including occlusion—no one knows what percentage/proportion of real-world complaints are reported to a manufacturer:

> Q.   Would it be true that for any complication whether it's migration, fracture, perforation, caval occlusion, thrombosis, post-implant pulmonary embolism, DVT, any complication you can think of for an IVC filter, you do not have any way do you of even estimating the percentage of those that occur in the real world that are actually reported to Cook, true?
>
> A.   You know, <u>nobody knows</u>. Even you don't know.

(*Id.* at 46:18-47:2) (emphasis added). Yet Dr. Virmani cites these unreliable figures for drawing conclusions about whether filters are "inherently thrombogenic," and this despite her own assertion that it is "impossible" to know whether a filter is causing a clot or trapping a clot.

In short, as an anatomic pathologist, Dr. Virmani is not trained to assess the clot-trapping efficiency or thrombogenic nature of Cook filters. She cites no competent evidence supporting her opinions and applies no recognized methodology in arriving at them. Thus, Plaintiff requests that the Court exclude all opinions in Section VIII(i) of Dr. Virmani's report beginning with the

statement that "Small clots are not concerning…" through the end of the section, including her opinion in footnote 23.

### III.
### Conclusion

For the reasons stated herein, Plaintiff requests that the Court grant her motion to exclude or limit the expert testimony of Renu Virmani, MD. Plaintiff additionally requests all other and further relief to which she may be justly entitled.

Dated: August 15, 2017.

                 Respectfully Submitted,

                 */s/ Joseph N. Williams*_____
                 Joseph N. Williams, Atty. No. 25874-49
                 Riley Williams & Piatt, LLC
                 301 Massachusetts Avenue
                 Indianapolis, IN 46204
                 Telephone: (317) 633-5270
                 Facsimile: (317) 426-3348
                 Email: jwilliams@rwp-law.com
                 *Liaison Counsel to Plaintiffs' Steering Committee and*
                 *on behalf of Plaintiffs' Steering Committee*

                 */s/ Michael W. Heaviside*_____
                 Michael W. Heaviside, Esq.
                 Heaviside Reed Zaic, A Law Corporation
                 910 17th Street NW, Suite 800
                 Washington, DC 20006
                 Telephone: (202) 233-1993
                 Email: mheaviside@hrzlaw.com

                 */s/ Ben C. Martin*_____
                 Ben C. Martin, Esq.
                 The Law Office of Ben C. Martin
                 3710 Rawlin Street, Suite 1230
                 Dallas, TX 75219
                 Telephone: (214) 761-6614
                 Facsimile: (214) 74407590
                 Email: bmartin@bencmartin.com

                         */s/ David P. Matthews*_____
                         David P. Matthews, Esq.
                         Matthew and Associates
                         2509 Sackett St.
                         Houston, TX 77098
                         Telephone: (713) 522-5250
                         Facsimile: (713) 535-7184
                         Email: dmatthews@thematthewslawfirm.com

                         *Plaintiffs' Co-Lead Counsel*

**CERTIFICATE OF SERVICE**

       I hereby certify that on August 15, 2017, a copy of the foregoing was served electronically and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. A copy of the foregoing was also served via U.S. Mail to the following non-CM/ECF participants:

| | |
|---|---|
| Anthony James Urban<br>Law Offices of Anthony Urban, PC<br>474 N. Centre Street, 3rd Floor<br>Pottsville, PA 17901 | Brian J. Urban<br>Law Offices of Anthony Urban, PC<br>474 N. Centre Street, 3r Floor<br>Pottsville, PA 17901 |
| Carrie R. Capouellez<br>Lopez McHugh, LLP<br>214 Flynn Avenue<br>Moorestown, NJ 08057 | Caleb Hoff Didricksen, III<br>Didricksen Law Firm, PLC<br>3114 Canal Street<br>New Orleans, LA 70119 |
| Carl A. Woods, III<br>Didriksen Law Firm<br>3114 Canal Street<br>New Orleans, LA 70119 | Cliff W. Marcek<br>Cliff W. Marcek, P.C.<br>700 S. Third Street<br>Las Vegas, NV 89101 |
| Curtis Hoke<br>The Miller Firm LLC<br>The Sherman Building<br>108 Railroad Avenue<br>Orange, VA 22960 | David Carl Anderson<br>Anderson Law<br>711 Van Ness Avenue<br>Suite 220<br>San Francisco, CA 94102 |
| John Cornew<br>409 E. Maple ave<br>Lindenwold, NJ 08021 | James R. Olson<br>Olson, Cannon, Gormley, Angulo<br>& Stoberski<br>9950 West Cheyenne Avenue<br>Las Vegas, NV 89129 |

Jay Harris
Harris, Reny & Torzewski
3rd Floor
Two Maritime Plaza
Toledo, OH 43604

Joseph G. Sauder
Chimicles & Tikellis, LLP
361 West Lancaster Avenue
Haverford, PA 19041

Neal Lewis Moskow
Ury & Moskow
883 Black Rock Turnpike
Fairfield, CT 06825

Philip Sholtz
The Driscoll Firm, P.C.
211 N. Broadway, 40th Floor
St. Louis, MO 63102

W. Bryan Smith
Morgan & Morgan, LLC
2600 One Commerce Square
Memphis, TN 38103

Joseph A. Napiltonia
Law Office of Joe Napiltonia
213 3rd Avenue North
Franklin, TN 37064

Max E. Corrick
Olson, Cannon, Gormley, Desruisseaux
9950 West Cheyenne Avenue
Las Vegas, NV 89129

Peter C. Wetherall
Wetherall Group, LTD
9345 W. Sunset Road, Suite 100
Las Vegas, NV 89148

Richard A. Freese
Langston Sweet & Freese PA
The Morgan Keegan Center
2900 Highway 280, Suite 240
Birmingham, AL 35223

Wilnar Jeanne Julmiste
Anderson Glenn LLP–Boca Raton, FL
2201 NW Corporate Blvd, Suite 100
Boca Raton, FL 33431

*/s/ Ben C. Martin*_____
Ben C. Martin