UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND         Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS   LIABILITY LITIGATION              MDL No. 2570
_____

This Document Relates to Plaintiff
    Elizabeth Jane Hill
    Civil Case No. 1:14-cv-06016-RLY-TAB
_____

**REPLY IN SUPPORT OF COOK DEFENDANTS'
MOTION TO COMPEL COMPLIANCE WITH SUBPOENA OF ANN SANTORO AND
<u>RESPONSE TO ANN SANTORO'S MOTION FOR PROTECTIVE ORDER</u>**

    The Court should grant the Cook Defendants' motion to compel and deny Ms. Santoro's motion for protective order for multiple reasons.  First, Ms. Santoro improperly joined her motion for protective order with her response to Cook's motion, and her motion therefore is not properly before the Court.  Second, Ms. Santoro offers no factual support or legal basis for the relief she seeks, and none exists.  Third, Ms. Santoro's objection is untimely and she has failed to preserve her objection.

    On the merits, because Plaintiff has put her mental and emotional health squarely at issue in this case, the Florida privilege statute on which Ms. Santoro relies specifically excepts from privilege the very documents the Cook Defendants seek here.  Furthermore, at least some of the records Ms. Santoro is withholding relate to her visit with Plaintiff while she was *in the hospital*

1

on August 16, 2013, allegedly suffering from issues relating to her filter.[1]  Finally, even if the documents were privileged, Plaintiff's waiver and consent is effective as to her husband.

Ms. Santoro has provided no good cause warranting protection from the production of any documents.  The Court should order Ms. Santoro to comply with Cook's subpoena to her and to produce the records of the joint sessions she conducted with Plaintiff and Mr. Hill.

### I. Ms. Santoro's motion for protective order is not properly before the Court.

As a threshold matter, the Court should reject Ms. Santoro's motion for protective order because it fails to comply with the Court's rules.  "It is well-established that 'pursuant to Local Rule 7-1(a), the Court will not consider a motion that is contained within a response brief.'"  *Rooks v. United States*, No. 115CV00079SEBDML, 2016 WL 368024, at *1 (S.D. Ind. Jan. 28, 2016) (citing *Slabaugh v. State Farm Fire & Cas. Co.*, No. 1:12-cv-01020-RLY-MJD, 2014 WL 1767088, at *6 (S.D. Ind. May 1, 2014); *see also Illinois Farmers Ins. Co. v. Phelps*, No. 114CV02018SEBTAB, 2016 WL 1187272, at *1 (S.D. Ind. Mar. 28, 2016).

Here, Ms. Santoro's motion for protective order in contained within her response to Cook's motion to compel her compliance with its subpoena.  This combining of her response and her motion is in direct violation of Rule 7-1(a), and Ms. Santoro neither offers any reason for violating the Rule nor even acknowledges that she has done so.  The Court should reject Ms. Santoro's motion on this ground.

### II. Ms. Santoro's objection and motion are unsupported by any evidence.

The Court should also reject Ms. Santoro's arguments and deny her motion because she has offered the Court absolutely no evidence to support any of her arguments.  Federal Rule of Civil Procedure 26(c) provides that upon a showing of good cause, a court "may make any order

---

[1] The Cook Defendants learned of this encounter for the first time when Plaintiff's counsel questioned Ms. Santoro about it during her deposition on June 9, 2017.  It was not disclosed during Plaintiff's deposition on November 10, 2016.

which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *See* Fed. R. Civ. Proc. 26(c). The party seeking a protective order has the burden of demonstrating good cause, and must make "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements" supporting the need for a protective order. *U.S. v. Garrett,* 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978).

Ms. Santoro has failed to meet her burden of showing that "justice requires" the entry of a protective order in this case. Ms. Santoro states in conclusory fashion that this Court should "issue a protective order protecting her from the production of any mental health counseling records dealing with Mr. Hill whom has not authorized his mental health records being released," Santoro Resp. at 4, and she asserts a number of facts about the timing and content of her objections and her communications with Plaintiff's husband and Cook's attorneys. But she offers the Court *nothing* to support any of these factual assertions. She does not attach any emails, any records of communications, or even her own affidavit to support anything she asserts. Although her memorandum refers to "exhibits," [2] she attached no exhibits to her submission. Absent factual support, the Court can neither grant Ms. Santoro's motion for protective order nor credit her arguments against Cook's motion to compel.

### III. Ms. Santoro's written objection is untimely.

The Court should reject Ms. Santoro's objection as untimely. Ms. Santoro claims, without citation to any legal authority, that her objection was timely because she notified the

---

[2] For example, Ms. Santoro's submission states that she:
> received a release from Mr. Hill to provide his records. However, the afternoon before Mrs. Santoro's [June 9, 2017] deposition counsel for Mrs. Santoro received a correspondence from Mr. Hill withdrawing his authorization to release of records. (*see exhibit c*). The note withdrawing the release is dated 3/22/17. However, Ms. Santoro never received the withdraw of the authorization to release the records.

Santoro Resp. at ¶ 4 (emphasis added). Despite this reference, Ms. Santoro submitted no "exhibit c."

Cook Defendants of Plaintiff's husband's withdrawal of his February 28, 2017 authorization[3] on June 8, 2017—the day before her June 9 deposition.[4] Ms. Santoro is mistaken, and her objection was not timely.

As detailed in the Cook Defendants' moving papers, a party objecting to a subpoena on the basis of privilege must both (1) object to the subpoena and (2) state the claim of privilege **within 14 days of service**. *Tuite v. Henry*, 98 F.3d 1411, 1416 (D.C. Cir. 1996). Ms. Santoro made no such communication within 14 days of the March 13, April 21, *or* May 18 subpoena. And even if the Court were to overlook those omissions based on Ms. Santoro's unsubstantiated claim of late notice from Plaintiff's husband, Ms. Santoro did not object in *writing*—as contemplated by Federal Rule of Civil Procedure 45(d)(2)(B)—until her July 19, 2017 response to Cook's motion to compel, more than a month *after* her deposition. Ms. Santoro's objections thus came too late. Her failure to timely object or move to quash as contemplated by Rule 45 waives any right she might have had to refuse production of the joint session documents based on privilege.

The single case Ms. Santoro cites in opposing Cook's motion to compel, *Palm Beach County School Board v. Morrison*, 621 So. 2d. 464 (1993) does not support her argument that she has not waived the privilege.[5] Although the *Palm Beach* court recognized that failing to assert the psychotherapist-patient privilege "at the earliest opportunity" did not automatically

---

[3] *See* Ex. G, Exhibit 3, p. 3 to Santoro Deposition.
[4] Ms. Santoro's deposition had previously been noticed for April 7, April 20, and May 2.
[5] The *Palm Beach* case is factually distinguishable in any event. The case involved a state court plaintiff who had not put his mental condition at issue, who filed multiple protective orders to prevent the disclosure of privileged medical records, and who was resisting his adversary's desire to attack his credibility using those privileged records. 621 So. 2d at 467. Here, in contrast, Plaintiff put her mental condition in issue, no one filed any motion for protective order before Ms. Santoro's response to Cook's Motion to Compel, and Cook is seeking the records to defend itself against Plaintiff's claims, not for some improper purpose.

waive the privilege in Florida state court, it did not—as Ms. Santoro seems to imply—hold that a failure to timely object or move to quash under Rule 45 is cured by claiming privilege during a deposition.[6] Ms. Santoro's objection is untimely, and the Court should compel production of Plaintiff's joint session records.

### IV. Ms. Santoro has not met her burden of showing the joint session records are privileged.

The person asserting that information is privileged has the burden of establishing the existence of each element of the privilege. *Southern Bell Tel. & Tel. Co. v. Deason,* 632 So.2d 1377, 1383 (Fla. 1994). Ms. Santoro has failed to meet her burden here.

Florida recognizes a psychotherapist-patient privilege, under which communications between a psychotherapist and patient, made for the purpose of diagnosing or treating the patient's mental condition, generally remain confidential.[7] *See* Fla. Stat. §90.503(1)(c), (2). Ms. Santoro contends, citing only the statute, that "the privilege is presumed" and absent "a Court order or waiver of privilege by the patient," she may not produce any records involving Plaintiff's husband. Santoro Resp. at 3. But the very statute on which Santoro relies expressly states that "[t]here is *no privilege* under this section . . . [f]or communications relevant to an issue of the mental or emotional condition of the patient in *any proceeding* in which the patient relies upon the condition as an element of his or her claim or defense[.]" Fla. Stat. §90.503(d) (emphasis added). This exception does *not* limit its application to communications *made by or*

---

[6] Although Ms. Santoro claims she "objected to the production of the documents on the record at her deposition prior to any production or privilege records being produced," Santoro Resp. ¶ 12, nothing in the transcript reflects such an objection. Counsel for Ms. Santoro telephoned Cook's counsel the day before the deposition, stated that Plaintiff's husband had revoked his authorization, and said that Ms. Santoro would not produce the joint session records absent a court order. Not until the end of Ms. Santoro's deposition, however, did Cook learn Ms. Santoro visited Plaintiff in the hospital when Plaintiff claims to have been having issues with her filter.

[7] In diversity actions, state law governs claims of privilege. *See* Fed. R. Evid. 501.

5

*to the patient*; it excepts from the privilege *all* "communications relevant to an issue of the mental or emotional condition of the patient" where—as here—the patient has put her condition at issue. Fla. Stat. §90.503(d). The reason for such exception is clear: "If a patient places in issue his or her mental or emotional condition as an element in his or her claim or defense, it would be inimical to the interests of justice to deny the adverse party an opportunity to introduce relevant evidence concerning that mental or emotional condition." *Nelson v. Womble*, 657 So. 2d 1221, 1222 (Fla. Dist. Ct. App. 1995) (quoting Charles Ehrhardt, *Florida Evidence* § 501.1).

Ms. Santoro does not dispute that the joint sessions at issue involved "communications relevant to an issue" of Plaintiff's mental or emotional condition. Thus, under the very statute on which Ms. Santoro relies, there is no psychotherapist-patient privilege, and this Court should order Ms. Santoro to comply with Cook's subpoena.

### V.     Plaintiff's express and implied waivers are effective for her non-party husband.

Plaintiff's express[8] and implied[9] waivers are also sufficient to allow production of any theoretically privileged records that involve her husband. Although no case law directly addresses the effect of a party spouse's waiver on a non-party spouse's privilege under the statute applicable here, federal courts applying federal common law have held that joint records relevant to the claims of a party-spouse can be produced, even in the absence of authorization from the non-party spouse, so long as those records are protected by an appropriate protective order.

In *Tavares v. Lawrence & Memorial Hospital*, No. 3:11-CV-770 (CSH), 2012 U.S. Dist. LEXIS 134881 (D. Conn. Sept. 20, 2012), a wife brought a suit for wrongful termination against a defendant hospital. The District of Connecticut acknowledged that by seeking emotional

---

[8] *See* Ex. B to Cook's Motion (Plaintiff's executed authorization).
[9] By placing her mental state at issue, Plaintiff has impliedly waived privilege.

distress damages, the wife had put her marital problems at issue and had waived the psychotherapist privilege. *Id*. at *10. The plaintiff's non-party husband, however, made no express waiver regarding his confidential marital therapy records, signed no medical authorization, and—as a non-party—had not placed his mental state at issue. *Id*. at *8. Although the court acknowledged "the intrusion into the privacy of the marital therapy records of [the non-party spouse]," it found those privacy interests did not prevent disclosure of the records. *Id*. at *11. Instead, "[t]o minimize said intrusion," the court in *Tavares* ordered the marital records be produced subject to an appropriate protective order. *Id*.

A court in the Southern District of New York reached a similar conclusion in *Alden v. Time Warner, Inc.,* No. 94 CIV. 6109 (JFK), 1995 WL 679238, at *2 (S.D.N.Y. Nov. 14, 1995). Although the *Alden* court acknowledged the spouse's privacy interests, it focused on the likely effect of the records sought on the plaintiff's claims: "Marital difficulties significant enough to prompt counseling are likely to have been an independent cause of emotional distress. . . . I am mindful that [non-plaintiff spouse]'s privacy interests are also implicated, but these can be protected with a proper confidentiality order." Based on this reasoning, the Court ordered the party spouse to execute authorizations for release of the marriage counselor's records, implicitly holding that the plaintiff's express waiver was sufficient to allow production of marital therapy records that impacted the non-party spouse.

Here, Ms. Santoro does not dispute that Plaintiff placed her mental and emotional state at issue in this case. Neither Plaintiff nor her husband has objected to the release of the subpoenaed documents or has moved for a protective order asserting privilege—not even in opposition to Cook's motion to compel the production of those documents. Plaintiff's husband's apparent revocation of his February 28, 2017, authorization to produce his records is therefore irrelevant

7

to the Court's inquiry, and Plaintiff's waiver is sufficient to allow production. And a protective order that will cover and protect the records at issue is already in place in this litigation. [*See* Case Management Order No. 8 [0481]]. The Court should order Ms. Santoro to produce the subpoenaed documents.

## VI. Plaintiff's husband has no privilege claim to the August 2013 "joint" record.

Even if the Court were to reject all of the Cook Defendants' arguments above, the Court should nevertheless in the alternative order Ms. Santoro to produce the August 2013 record regarding her visit to Plaintiff in the hospital because Plaintiff, not the couple, was the patient, and Plaintiff expressly waived privilege.[10]

Ms. Santoro herself admits that the August 2013 visit "was completely different from the events that [Ms. Santoro] had previously treated for relating to [Plaintiff's] marriage." [*See* Ex. H, Santoro Dep. at 107:11-15] When questioned by Plaintiff's lawyer on the topic, Ms. Santoro clearly distinguished the August 2013 "event:"

> Q: All right. Was this event that you got involved in in August of 2013 something that, in your opinion, was completely different from the events that you had previously treated for relating to her marriage?
> A: Yeah. This came out of the blue.
> Q: All right. There's no connection between the two, is there?
> A: No. No.
> Q: To try to imply that there's somehow overlap and there's a connection, would that be incorrect, in your opinion?
> A: I don't see a connection at all.
> Q: All right.
> A: But…
> Q: Okay. After that –

---

[10] Ms. Santoro produced an email at her deposition suggesting that the July 2013 session is also highly relevant and arguably different from the marriage sessions. *See* Ex. G, Exhibit 3, p. 4 to Santoro Deposition (On November 17, 2016, Santoro wrote Plaintiff: "If you recall, you had 9 individual sessions in 2012….There were 5 joint sessions with [Russ] in 2013, and only the last 2 (July and August) were about the situation with your back.").

8

*See* Ex. H, Santoro Dep. at 107:11-25.  Furthermore, Ms. Santoro's deposition testimony suggests that Plaintiff's husband's presence was incidental to her treatment of Plaintiff.  *Plaintiff* texted Ms. Santoro, who went to the hospital "as a professional" to help *Plaintiff* "cope."  *See id*. at 77:5-14; 105:9-15; *see also* Ex. I, Santoro Records at Santoro 025 (noting that "client" texted Ms. Santoro about "complications from last surgery" and "request[ed] prayers").  In fact, Ms. Santoro produced a record relating to the text message she received from Plaintiff prior to her deposition and she did not withhold it as a record relating to any "joint sessions;" it became clear only during her deposition that Ms. Santoro visited Plaintiff in the hospital after receiving that text message.  *See* Ex. I, Santoro Records at Santoro 025; Ex. H, Santoro Dep. 104:3-105:15.  According to Ms. Santoro, Plaintiff's "main concern and the reason for the need to cope and 'what am I going to do?' kind of thing … So she was – she was scared.… She didn't know if she would make it the next day."  *See* Ex. H, Santoro Dep. at 106:7-107:4.  Thus, the limited information known to Cook about the August 2013 "joint session" indicates that Plaintiff—not the couple—was the true patient, and Ms. Santoro's contact with Plaintiff's spouse at the hospital was ancillary.  This understanding is consistent with Plaintiff's husband's recollection of Ms. Santoro, whom he recalls visiting only "once," at her office, and not for "counseling as per se."  *See* Ex J, Russell Hill Dep., 64:24-65:24; 66:6-25; 67:5-7.  Mr. Hill testified that he did not go to any marital counseling sessions with Mrs. Hill.  *Id.* at 64:17-23.  Accordingly, the Court should, at the very least, order Ms. Santoro to produce the August 2013 record.

## CONCLUSION

For the reasons set forth above, the Cook Defendants urge the Court to (1) deny Ms. Santoro's motion for protective order and (2) grant their motion to compel Ms. Santoro to comply with Cook's subpoena seeking records of Plaintiff's joint sessions with her husband.

Dated: August 16, 2017                    Respectfully submitted,

/s/ John T. Schlafer
Andrea Roberts Pierson (# 18435-49)
John T. Schlafer (# 28771-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
Email:  andrea.pierson@faegrebd.com
Email:  john.schlafer@faegrebd.com

James Stephen Bennett (# 22869-02)
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana  46802
Telephone:  (260) 424-8000
Facsimile:  (260) 460-1700
Email:  stephen.bennett@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

US.113669871.08

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2017, a copy of the foregoing REPLY IN SUPPORT OF COOK DEFENDANTS' MOTION TO COMPEL COMPLIANCE WITH SUBPOENA OF ANN SANTORO AND RESPONSE TO ANN SANTORO'S MOTION FOR PROTECTIVE ORDER was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.  Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

I further certify that on August 16, 2017, a copy of the foregoing was served on counsel for Ann Santoro by e-mail and first class mail, postage pre-paid at the following address:

>Heidi J. Livingston, Esq.
>LAW OFFICES OF LORRAINE LESTER
>500 Colonial Center Parkway, Suite 250
>Lake Mary, Florida  32746
>407.804.4900 (main)
>407.804.6933 (direct)
>866.390.9498 (fax)
>heidi.livingston@cna.com

>/s/ John T. Schlafer