UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

———————————————————————

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND          Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS   LIABILITY LITIGATION              MDL No. 2570

———————————————————————

This Document Relates to Plaintiff
    Elizabeth Jane Hill
    Civil Case No. 1:14-cv-06016-RLY-TAB

———————————————————————

## COOK DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO BIFURCATE

      The Cook Defendants[1] respectfully ask this Court to bifurcate the compensatory and punitive damages portions of this case into separate trial phases, using the same jury.  Such a deliberate, phased approach to the complex issues presented in this case is particularly appropriate in this initial bellwether trial, where the parties will rely on the results in this case to consider resolution of other cases.

      The Cook Defendants propose that the initial phase of the jury trial address and resolve the questions of the Cook Defendants' liability to Mrs. Hill and the amount of compensatory damages (if any), and that the second phase—if necessary—address the Cook Defendants' liability for punitive damages and determination of the amount of such damages (if any).  This two-phase approach offers several case-management benefits, and it will conserve judicial resources and protect the defendants from unfair prejudice.

---

[1] The Cook Defendants in this matter are Cook Incorporated, Cook Medical LLC f/k/a Cook Medical Incorporated, and William Cook Europe APS.  All references to the "Cook Defendants" refer to all three entities unless otherwise noted.

I.       **Standard**

Federal Rule of Civil Procedure 42(b) permits a district court to order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims "for convenience, to avoid prejudice, or to expedite and economize."  The court may separate issues for trial if the separation will prevent prejudice to a party or promote judicial economy.  *Chlopek v. Federal Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007); *Houseman v. United States Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999).  If just one of these criteria is met, the district court may order bifurcation if doing so will not prejudice the non-moving party or violate the Seventh Amendment.[2]  *Cholpek*, 499 F.3d at 700; *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000).  The decision to bifurcate is within the district court's discretion, and its decision will be overturned only upon a clear showing of abuse.  *Houseman*, 171 F.3d at 1121; *McLaughlin v. State Farm*, 30 F.3d 861, 870 (7th Cir. 1994).

The present case presents multiple grounds for bifurcation:  bifurcation will promote judicial economy, it will expedite proceedings, it will prevent unfair prejudice to the Cook Defendants, and it will not prejudice Mrs. Hill.  This is a well-trodden path, and courts have often adopted bifurcation to promote just such convenience and economy.  *See, e.g.*, *Cholpek*, 499 F.3d at 700; *Krocka*, 203 F.3d at 516; *Houseman*, 171 F.3d at 1121; *Vandersteen v. Kelly*, No. 07 C 5632, 2010 WL 659327 at *2-3 (N.D. Ill. Feb. 23, 2010) (collecting cases where courts bifurcated compensatory and punitive damages).

The status of this case as an MDL bellwether gives additional weight to the arguments for bifurcation.  If this case proceeds to trial, a fair and orderly presentation of the issues to the jury

---

[2] Because the Cook Defendants propose that the same jury hear the compensatory and punitive damages phases, there is no risk of violating the Seventh Amendment's prohibition on re-examination.

is essential, not only to serve the interests of the individual litigants in this case but also to maintain the value of the case as a bellwether.  Other courts hearing MDL bellwether cases have used bifurcation to prevent prejudice to defendants.  *See, e.g.*, *In re Actos (Pioglitazone) Products Liability Litigation*, 2014 WL 5461859 at *1 n.6 (W.D. La. October 27, 2014). Similarly, because the *Hill* case is the first bellwether in this MDL, targeted compensatory and punitive damages phases are particularly important.  As discussed below, even viewed as a single case, the likelihood of prejudice to the Cook Defendants stemming from a single-phase trial is high.  The significance of that prejudice is augmented by the intent to use this case as one of the bellwethers for hundreds of cases in this MDL.

## II.   Bifurcation of punitive damages will promote judicial economy and sound management.

Based on the anticipated evidence and the law applicable to this case, a bifurcated approach to Mrs. Hill's punitive damages will be most efficient.

### A.   The evidence relevant to punitive damages is different from the evidence relevant to the liability theories and may properly be reserved until necessary, which will focus and shorten the trial.

For her liability theories, Mrs. Hill rests on claims that the Cook Defendants failed to warn and that the Cook product is defective, both of which require highly technical expert testimony.  Assuming arguendo that the Court permits either or both of these claims to go to trial, much of the relevant evidence will consist of the testimony of the treating physicians and expert opinions on warnings and design issues.

It is both feasible and helpful to separate the evidence related to these primary liability theories from the evidence Mrs. Hill may seek to introduce on the issue of punitive damages. The two bodies of evidence do not meaningfully overlap.  In particular, the product liability theories that Mrs. Hill seeks to present do not primarily depend on inquiry into the Cook

Defendants' conduct, but on expert evidence of whether a design defect existed and whether the label adequately warned of the risk Mrs. Hill encountered.

In contrast, to obtain punitive damages, Plaintiff must present evidence that defendants acted with malice, fraud, gross negligence, or oppressiveness that was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing." *Gresser v. Dow Chem. Co., Inc.*, 989 N.E.2d 339, 349 (Ind. Ct. App. 2013).[3]   These misconduct standards (and the evidence the plaintiff might claim support them) simply are not relevant to the questions of whether a design defect existed or a label failed to warn.  When different legal theories apply, bifurcation of liability phases is appropriate.  *See, e.g.*, *Jackson v. County of Los Angeles*, 29 F. App'x 430, 435-36 (9th Cir. 2001) (holding that bifurcation of liability phases is appropriate when each liability phase depends on a distinct theory); *see generally Hydrite Chem. Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 891 (7th Cir. 1995) ("The judge can bifurcate (or for that matter trifucate, or slice even more finely) a case at whatever point will minimize the overlap in evidence between the segmented phases or otherwise promote economy and accuracy in adjudication.").[4]   And courts have bifurcated the punitive damages question because the primary liability theories of product defect and failure to warn do not implicate inquiry into corporate conduct.  *See, e.g.*, *Emerick v United States Suzuki Motor Corp.*, 750 F.2d 19, 22 (3d Cir. 1984) (approving bifurcation of punitive damages in failure-to-warn and product-defect case involving motorcycle kickstand); *see also Scheufler v. General Host Corp.*,

---

[3] The application of Indiana law is discussed in Section II.B below.
[4] *See also Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 474 (5th Cir. 1986) (upholding bifurcation of punitive and compensatory damages in asbestos personal injury trial was proper, given the difference in purpose between punitive and compensatory damages); *Vandersteen*, 2010 WL 659327, at *2 (contrasting purposes of compensatory and punitive damages in deciding to bifurcate).

895 F. Supp. 1411, 1414-15 (D. Kan. 1995) (discussing the different evidence needed for actual and punitive damages in deciding to bifurcate the two damages phases).

Specific examples of evidence that potentially could be introduced with respect to a punitive damages claim, but that is unrelated to the claims for compensatory damages include the following:[5]

(1) Documents that post-date Mrs. Hill's implant date of November 17, 2010.

(2) Communications and documents relating to unrelated products.

(3) Communications and documents regarding the Cook Defendants' interactions with foreign regulatory authorities.

(4) Evidence of "subsequent remedial measures," including evidence related to the Celect Platinum.[6]

Some of these documents (or specific documents within one or more of these categories) will be the subject of forthcoming motions in limine.  However, regardless of the rulings on those motions, these and similar categories of evidence have no bearing on Mrs. Hill's failure-to-warn and product-defect claims and should not be introduced with respect to Mrs. Hill's claims for compensatory damages.

For example, documents that post-date Mrs. Hill's November 17, 2010 filter placement can have no bearing on her claim of failure to warn.  The Cook Defendants could not possibly have warned Mrs. Hill's physician, a learned intermediary, prior to her procedure, of information

---

[5] The Cook Defendants reserve their right to object to the admissibility of any such evidence, and some or all of the items mentioned above may be part of the Cook Defendants' motions in limine.

[6] Cook sought FDA clearance for the Celect Platinum on June 1, 2012, and the FDA cleared the device on July 3, 2012.  *See* Platinum 510(k) FDA Record, Summary, at 4, *available at* https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpmn/pmn.cfm?ID=K121629 (last accessed Aug. 21, 2017).

contained in scientific literature or internal company emails that post-date the procedure (as Mrs. Hill's counsel claim they should have). If admissible at all, such evidence could only be offered to show the Cook Defendants' conduct somehow warrants punitive damages. Conversely, the Cook Defendants may seek to introduce evidence of good manufacturing and quality assurance practices that post-date Mrs. Hill's implant in response to her claim for punitive damages to show its attention to these issues, such as Clinical Evaluation Reports ("CERs") and Corrective and Preventive Actions ("CAPAs"). Those documents may not be relevant to the compensatory phase.

Likewise, the Celect filter was cleared or approved by multiple foreign regulatory authorities prior to sale, and the Cook Defendants interacted with those regulatory authorities regarding the Celect. That interaction involves multiple countries, agencies, submissions, interactions, and approvals that span multiple years, and which have continued since the Celect was introduced to market in those countries. The Cook Defendants' degree of compliance with the regulations and requests of those foreign regulatory bodies is evidence that both parties may seek to introduce in a punitive damages stage, but it has no connection to Mrs. Hill's claim for compensatory damages.[7]

The Cook Defendants may seek to introduce in a punitive damages stage information related to accolades received from regulatory and industry sources for its design and manufacturing practices. Such information potentially could go to the question of whether the Cook Defendant's conduct supports an award of punitive damages. However, the Cook Defendants acknowledge that Mrs. Hill may argue that such evidence might not be relevant to the question of compensatory damages.

---

[7] The Cook Defendants note that they may also move in limine to exclude all evidence of interactions with foreign regulatory authorities.

Evidence concerning the Celect Platinum presents similar concerns.  Mrs. Hill would be prevented from offering evidence concerning the Celect Platinum design under Rule 407 as a subsequent remedial measure, but the Cook Defendants may themselves wish to offer evidence related to that design to refute Mrs. Hill's punitive damages claim, and specifically to show that their conduct was not willful and wanton.  Unless the compensatory and punitive claims are bifurcated for trial, the Cook Defendants will be unfairly placed on the horns of a dilemma, forced to decide whether to prejudice their defense against Plaintiff's compensatory damages claim in order to defend against her punitive damages claim.  Bifurcation resolves these concerns, eliminates the need for limiting instructions to the jury (which could be quite confusing and potentially ineffective), and likely shortens trial time required for the initial phase.

All told, this is a significant amount of information—multiple years-worth of additional documents and additional witnesses necessary to put such information into context—that would only need to be presented if Mrs. Hill met the high burden of having the question of liability for punitive damages submitted to the jury (which the Cook Defendants submit she cannot do in any event).

Likewise, the *damages* aspects of Mrs. Hill's compensatory and punitive damages claims are based on distinct and non-overlapping evidence.  The focus of compensatory damages is on making the plaintiff whole, and Mrs. Hill's evidence concerning compensatory damages will necessarily focus on the extent of her injuries, medical expenses she incurred, the need for future medical care, and the like.  In contrast, Mrs. Hill will presumably seek to support her request for punitive damages by offering financial information about the resources of the Cook Defendants (as well as potential evidence of alleged "bad" character or conduct).  The financial circumstances of the defendants do not affect the issues of warnings provided with the product or

the design of it. *See, e.g.*, *Ely v. Cabot Oil & Gas Corp.*, No. 3:09-CV-2284, 2016 WL 454817, at *6 (M.D. Penn. Feb. 5, 2016) (recognizing conditional relevance of financial evidence and bifurcating request for punitive damages until liability and compensatory damages verdict and court determines whether evidence justifies submitting punitive damages claim to jury).

Pragmatic reasons support bifurcation as well. Separating the two phases will allow the jury to better focus on the measure of damages. *See* Steven S. Gensler, *Bifurcation Unbound*, 75 Wash. L. Rev. 705, 706-07 (July 2000) (describing how bifurcation assists jury decision-making by ordering and simplifying the litigants' presentations and limiting the number of issues the jury must address at one time). Furthermore, as noted, some of the evidence Plaintiff wishes to rely on to support her request for punitive damages will be the subject of motions in limine, and bifurcation of trial will permit the Court to defer resolving certain motions unless and until the evidentiary issue actually arises.

If the jury ultimately rejects Mrs. Hill's failure-to-warn and product-defect claims, separating the presentation of punitive damages will have the salutary effect of substantially shortening the trial. In other words, both sides' additional evidence relevant only to punitive damages would not even need to be presented unless a compensatory verdict for Mrs. Hill justifies such presentation. *See, e.g.*, *Emerick*, 750 F.2d at 22 (approving bifurcation in part because "the trial court correctly noted that the Emericks were not entitled to submit the issue of punitive damages to the jury until they first established Suzuki's liability for compensatory damages"). Especially given the complexity of evidence involved in the primary liability theories, this bifurcated approach offers economy of time and resources. It also reserves potentially difficult evidentiary gatekeeper decisions this Court may need to make—and the trial time related to such objections and responses—until such decisions are clearly necessary.

**B. Punitive damages require a separate choice-of-law analysis, making a bifurcated approach particularly appropriate.**

While Florida law applies to Mrs. Hill's claim for compensatory damages, this Court should apply Indiana law to the request for punitive damages. That conclusion depends on a choice-of-law analysis that the Court need only confront if the jury finds the Cook Defendants liable on Mrs. Hill's primary claims and the Court determines there is enough evidence to present the question of punitive damages to the jury. The Cook Defendants stress that the Court need not finally determine what state's law applies to Mrs. Hill's punitive damages claim to resolve the present motion for bifurcation. Nevertheless, the discussion below demonstrates (1) the need for a separate analysis of choice-of-law issues for Mrs. Hill's compensatory and punitive damages claims, and (2) assuming the Cook Defendants are correct in their argument that Indiana law governs the punitive damages claim, the need to instruct the jury concerning different states' laws as to the two claims. Both of these factors weigh heavily in favor of bifurcating the compensatory and punitive damages claims in a phased trial.

Mrs. Hill originally filed her action in Florida. As this Court has already noted regarding choice-of-law principles, this transferee court applies the law of the state in which the transferor court is located. Entry on Motion for Judgment on the Pleadings Based on the Statute of Repose, ECF No. 4918, *In re Cook Medical, Inc., IVC Filters Marketing, Sales Practices and Product Liability Litigation*, May 31, 2017. To determine choice-of-law questions for tort issues, Florida applies the "significant relationship" approach in the Restatement (Second) of Conflict of Laws (1971). *Kirchman v. Novartis Pharm. Corp.*, 2014 WL 2722483, at *1 (M.D. Fla. June 16, 2014) (citing *Bishop v. Florida Specialty Paint, Co.*, 389 So.2d 999, 1001 (Fla.1980)). The Restatement approach requires determining which state—regarding each particular issue—has "the most significant relationship to the occurrence and the parties." *Id.* "[C]ourts must examine

the section 145 contacts in light of the general principles stated in section 6." *Id.* at 2.  The

Section 145 contacts include "(a) the place where the injury occurred, (b) the place where the

conduct causing the injury occurred, (c) the domicil, residence, nationality, place of

incorporation and place of business of the parties, and (d) the place where the relationship, if

any, between the parties is centered."  Restatement (Second) of Conflict of Laws § 145(2)

(1971).  "These contacts are to be evaluated according to their relative importance with respect to

the particular issue." *Id.*  The section 6 general principles include

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative
> interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be
> applied.

Restatement (Second) of Conflict of Laws § 6(2) (1971).

For personal injury actions, the "place of injury determines which state's laws apply,

unless some other state has a more 'significant relationship' to the particular issue." *Kirchman*,

2014 WL 2722483, at *2.  The parties agree that under this standard, Florida law governs

Plaintiff's claims for compensatory damages.  However, the conclusion that Florida law governs

Plaintiff's compensatory damages claim does not resolve which state's law applies to the issue of

***punitive*** damages. *Id.* at 3 ("'[T]he question of which state retains the greatest interest in

applying its punitive damage rule should be analyzed separately from the question of which state

retains the greatest interest in applying its compensatory damage rule.'" (quoting *Judge v. American Motors Corp.*, 908 F.2d 1565, 1571 n. 6 (11th Cir. 1990))); *see also Guenther v. Novartis Pharm. Corp.*, 2013 WL 1225391, at *2 (M.D. Fla. Mar. 27, 2013); *Zimmerman v. Novartis Pharm. Corp.*, 889 F.Supp.2d 757, 761–62 (D. Md. 2012).

The recently decided *Kirchman* case provides clear guidance to this court.  In *Kirchman*, the estate of a Florida resident who was prescribed and received drugs in Florida brought personal-injury and loss-of-consortium claims against the New Jersey drug manufacturer, claiming failure to warn and seeking both compensatory and punitive damages.  2014 WL 2722483, at *1.  The court determined that, although Florida law applied to the compensatory damages, New Jersey law should control the issue of punitive damages.  The court concluded that the alleged injury-causing conduct occurred in New Jersey, noting that New Jersey was the site of the manufacturer's corporate decisions about labeling, packaging, and warning of the drugs.  *See id.* at *4; *see also Guenther v. Novartis Pharm. Corp.*, 2013 WL 1225391, at *2 (M.D. Fla. Mar. 27, 2013); *Dopson-Troutt v. Novartis Pharm. Corp.*, 2103 WL 3808205 (M.D. Fla. Jul. 22, 2013) (same); *Williams v. Novartis Pharms. Corp.*, 2014 WL 1599547, at *5-6 (S.D. Ohio Apr. 21, 2014) (rejecting contrary analysis in *Rowland v. Novartis Pharm. Corp.*, 2013 WL 6145119 (W.D. Pa. Nov. 22, 2013)).  Analyzing the section 145 contacts and section 6 principles of the Restatement, the court concluded that "the place of the injury-causing conduct, New Jersey, is more important than the place of injury" given the deterrent nature of the punitive damages.  *Kirchman*, 2014 WL 2722483, at *5.  Because New Jersey had the most significant relationship, the court applied New Jersey law to the punitive damages claim.  *Id.*

A virtually identical analysis is appropriate here.  Mrs. Hill alleges failure-to-warn and design-defect claims based on corporate decisions concerning labeling and marketing practices

11

and product design.  Although the alleged injury occurred in Florida, the corporate conduct on

which Plaintiff bases her punitive damages claim occurred largely in Indiana, the site of the

Cook Defendants' corporate headquarters, where they held meetings, oversaw studies, and made

their marketing, labeling, sales, and product design decisions.[8]  Indiana also has a special interest

in regulating corporations headquartered in the state, particularly on a question of whether and to

what extent the company is subject to punitive damages.  Indiana therefore has the most

significant relationship regarding these issues and the question of deterrence, and Indiana law

applies to Mrs. Hill's request for punitive damages.

*Kirchman* provides solid guidance as to the proper choice-of-law analysis, and numerous

other courts analyzing the Restatement factors have reached similar conclusions—that the law of

the home state of the corporate defendant is the correct law to apply to a request for punitive

damages under the Restatement factors, particularly if the injury-*causing* conduct occurred in

that home state.  *See, e.g.*, *Campbell v. Fawber*, 975 F. Supp. 2d 485, 508 (M.D. Penn. 2013)

(home state of corporate defendant had dominant interest on question of punitive damages);

*Guenther v. Novartis Pharm. Corp.*, 2013 WL 1225391, at *2 (M.D. Fla. Mar. 27, 2013);

(same)[9]; *see also Curtis v. TransCor Am.*, LLC, 2012 WL 1080116, at *11 (applying law of the

home state of the corporate defendant although not all injury-causing conduct occurred there).

---

[8] Some of the events at issue took place in Europe, but that has no bearing on the present issue.
The critical fact here is that substantial portions of the conduct on which Plaintiff bases her
punitive damages claim took place in Indiana, and none of it took place in Florida.

[9] *Accord Dopson-Troutt v. Novartis Pharm. Corp.*, 2103 WL 3808205 (M.D. Fla. Jul. 22, 2013);
*Williams v. Novartis Pharm. Corp.*, Nos. 3:12-cv-145, 3:12-cv-238, 2014 WL 1599547, at *5-6
(S.D. Ohio Apr. 21, 2014) (rejecting contrary analysis in *Rowland v. Novartis Pharm. Corp.*,
2013 WL 6145119 (W.D. Pa. Nov. 22, 2013)); *Mathews v. Novartis Pharm. Corp.*, No. 3:12-cv-
00314-WHR, slip op. at 6-7 (S.D. Ohio July 12, 2013) (Ex. 2); *Stromenger v. Novartis Pharm.
Corp.*, No. 3:12-cv-00686, 2013 WL 1748357, at *8-10 (D. Or. Apr. 22, 2013); *Zimmerman v.
Novartis Pharm. Corp.*, 889 F. Supp. 2d 757, 762-64 (D. Md. 2012); *Brown v. Novartis Pharm.
Corp.*, No. 7:08-cv-00130-FL, 2011 WL 6318987, at *4-9 (E.D.N.C. Dec. 16, 2011); *Talley v.*

This need to apply Florida law to the compensatory damages claim and Indiana law to the punitive damages claim strongly supports bifurcation.  Under Indiana law, "[p]unitive damages may be awarded only if there is clear and convincing evidence that the defendant acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing." *Gresser v. Dow Chem. Co., Inc.*, 989 N.E.2d 339, 349 (Ind. Ct. App. 2013).  But this is different from the Florida standard, which permits an award of punitive damages in product liability actions where the plaintiff can show by clear and convincing evidence that the defendant is guilty of intentional misconduct or gross negligence.  *See* Fla. Stat. § 768.72 (2016).  If the Court agrees that the law of Indiana must govern the plaintiff's punitive damages claim, it would then need to instruct the jury with two different states' laws:  Florida law for the compensatory claims and Indiana law for the punitive claim.

The advantages of bifurcation under these circumstances are manifest in at least two ways.  First, if the Court bifurcates the determination of punitive damages from liability and compensatory damages, the Court may avoid the need to make this choice-of-law determination at all.  The jury may find no liability for compensatory damages, or the Court may determine that the evidence is insufficient to justify a second trial phase addressing punitive damages.  In either event, the punitive damages claim would not go forward, and the Court would not need to address which state's law would have governed that claim.

---

*Novartis Pharm. Corp.*, No. 08-cv-361-GCM, 2011 WL 2559974, at *4-5 (W.D.N.C. June 28, 2011); *Deutsch v. Novartis Pharm. Corp.*, 723 F. Supp. 2d 521, 523-526 (E.D.N.Y. 2010); *Irby v. Novartis Pharm. Corp.*, Nos. MID-L-1815-08, 278, 2011 WL 5835414, slip op. at 8 (N.J. Super. Ct. Nov. 18, 2011); *Meng v. Novartis Pharm. Corp.*, Nos. L7670-07MT, L-6072-08MT, 2009 WL 4623715, slip op. at 5-6 (N.J. Super. Ct. Law Div. Nov. 23, 2009).

Second, even assuming a punitive claim went forward, bifurcation would avoid the Court having to instruct the jury on different states' laws for different claims, with the attendant potential confusion concerning substantive standards, burdens of proof, and the effects of evidence.  For example, Florida law requires only a *preponderance* of evidence to prove Plaintiff's failure-to-warn and design-defect claims, *see, e.g.*, *Hoffman-LaRoche Inc. v. Mason*, 27 So. 3d 75, 77 (Fl. Ct. App. 2009), but Indiana law requires *clear and convincing* evidence of the required misconduct to impose punitive damages, *see Gresser*, 989 N.E.2d at 22.  If the claims are not bifurcated, the Court will need to instruct the jury on both standards of proof, creating the substantial risk that the jury would either apply the lower preponderance standard to the punitive-damage claim or the higher clear and convincing evidence standard to the liability theories.

Moreover, to the extent there is *any* question about the correct law to apply to Mrs. Hill's request for punitive damages, bifurcation is a prudent choice.  Notably, another district court in the Seventh Circuit has specifically suggested bifurcation of punitive damages for this very reason:  "[P]rudence suggests that the Court should consider structuring the trial to attempt to preserve the choice-of-law issue for appellate review.  The Court therefore proposes to bifurcate the issue of punitive damages from the issues of liability and compensatory damages."  *Smith v. I-Flow Corp.*, 753 F. Supp. 2d 744, 749 (N.D. Ill. 2010).  The Cook Defendants ask this Court to follow the same pragmatic approach.

**III.    Bifurcation of punitive damages will prevent unfair prejudice to the Cook Defendants.**

Besides conserving judicial resources and potentially expediting trial, bifurcation of the compensatory and punitive claims will prevent unfair prejudice to the Cook Defendants.  As noted above, certain evidence potentially relevant to the request for punitive damages is

irrelevant to Plaintiff's liability claim and associated calculation of compensatory damages, and that evidence would unfairly infect the jury's deliberations if the two claims were tried together. As discussed in the summary judgment brief, the evidence on which Plaintiff bases her punitive damages claim is insufficient as a matter of law to support that claim under the heightened standards that both Indiana and Florida impose for such a punitive award.  But if the Court disagrees and allows the punitive-damage claim to go to the jury, the Court should be especially wary of the serious risk of unfair prejudice to the Cook Defendants and should protect against that risk by ordering a phased trial.

> **A.  Certain non-financial evidence would be unfairly prejudicial to the Cook Defendants if presented before a liability determination.**

The Cook Defendants anticipate that Plaintiff may seek to introduce in support of her punitive damages claim certain evidence that is wholly irrelevant to the liability and compensatory issues here and would be inadmissible as to those claims.  However, if the compensatory and punitive claims are not bifurcated—even with proper jury instructions in place—the jury might nevertheless consider such evidence in determining liability and compensatory damages, resulting in unfair prejudice to the Cook Defendants.  *See Emerick*, 750 F.2d at 22 (upholding trial court's decision to bifurcate punitive damages where defendant's conduct was irrelevant to product liability theory and allowing evidence of defendant's conduct would have confused the jury and prejudiced the defendant); *Vandersteen*, 2010 WL 659327, at *2 (concluding that defendant's risk of prejudice if compensatory and punitive damages were not addressed separately was real and there was no reason for the court to take the risk); *Scheufler*,

985 F. Supp. at 1414 (noting that, without bifurcation, jury could improperly consider evidence relevant only to punitive damages during its determination of actual damages).[10]

 As discussed in Section II.A, a significant amount of evidence related to product development and knowledge of the Cook Defendants is potentially relevant to Plaintiff's punitive damage claim but clearly irrelevant to her compensatory damage claim.  Asking jurors to somehow separately consider these categories of information—as they would be required to do—yet make simultaneous determinations of liability for compensatory and punitive damages asks too much in a case already fraught with complexity and nuance.  Moreover, the Cook Defendants plan to move to exclude a significant amount of this evidence—including evidence of company documents and scientific literature that post-dates Mrs. Hill's implant—on the ground that the information is not relevant to compensatory damages, and Mrs. Hill is not entitled to punitive damages based on the undisputed evidence in this case.  Bifurcating the question of liability for compensatory damages from the question of liability for punitive damages is the only realistic way that the Court can protect the Cook Defendants from undue prejudice stemming from this evidence.

---

[10] Courts have also recognized that evidence relevant to the damages phase (such as the extent of the plaintiff's injuries) can be unfairly prejudicial when introduced during the liability phase. *See Chlopek*, 499 F.3d at 701 (upholding district court's decision to bifurcate liability and damages phases of trial where evidence related to plaintiff's injury was irrelevant to liability phase and was likely to cloud the issues and prejudice the defendant if presented); *Miller v. New Jersey Transit Auth. Rail Operations*, 160 F.R.D. 37, 42 (D. N.J. 1995) (noting that the "complexity of the case and the severity of Plaintiff's injuries would prejudice the Defendants so severely if issues of liability and damages were not bifurcated that the Defendants would not receive a fair trial").

**B.  Evidence of the Cook Defendants' financial position would be unfairly prejudicial if presented before a liability determination.**

Plainly, evidence of corporate wealth is not relevant to the question of liability on Plaintiff's failure-to-warn and design-defect theories.  If the compensatory and punitive phases are not separated, however, jurors will hear evidence related to the Cook Defendants' net worth while they are considering the merits of Plaintiff's claims for compensatory damages.  This juxtaposition would be fundamentally unfair to the Cook Defendants, and jury instructions cannot prevent that prejudice.  Courts have frequently bifurcated compensatory and punitive damage claims to prevent just this prejudice:  the jury's knowledge of the defendant's financial condition when determining liability and setting a compensatory award.  *See, e.g.*, *Jones v. Cargill, Inc.*, 490 F. Supp. 2d 978, 988 (N.D. Iowa 2007) (deeming bifurcation of punitive damages phase appropriate and noting that "[b]ifuration of trial into separate phases to consider punitive damages apart from liability avoids the potential that evidence pertinent to punitive damages, such as the financial status of Defendant, will improperly prejudice the jury's determination of liability"); *Collens v. City of New York*, 222 F.R.D. 249, 254 (S.D.N.Y. 2004) (stating "issues of punitive damages should normally be bifurcated from issues of liability so that proof of wealth is not admitted at the trial on liability and compensatory damages"); *North Dakota Fair Hous. Council, Inc. v. Allen*, 298 F. Supp. 2d 897, 899 (D. N. D. 2004) (granting motion to bifurcate punitive damages phase from liability and compensatory damages phase because "[e]vidence of the defendants' net worth, although relevant to issues concerning the claim for punitive damages, can have an adverse effect on jury deliberations concerning liability and compensatory damages").  And at least one federal appellate court has stated that bifurcation of punitive damages is the "preferred method" for accommodating the various interests when evidence of the defendant's financial condition is to be presented.  *Smith v. Lightning Bolt*

*Prods.*, 861 F.2d 363, 373-74 (2d Cir. 1988).  Reflecting the same policy, approximately 14 states statutorily provide for bifurcation of compensatory and punitive damages claims.  *See, e.g.*, Minn. Stat. § 549.20, subd. 4 (2016) (requiring bifurcation of compensatory and punitive claims on request of any party and barring evidence of defendant's financial condition in compensatory phase).

Here, the Cook Defendants are among Indiana's largest employers.  Plaintiffs have received certain financial documents in production including income statements, balance sheets, and annual reports from the Cook Defendants.  None of this evidence bears on the Cook Defendants' liability for compensatory damages.  If this extraneous evidence is presented before the determination of liability and compensatory damages, it is certainly possible and even likely that the information would improperly affect the jury's determination of the appropriate amount of compensatory damages.  As the U.S. Supreme Court noted in *Honda Motor Company v. Oberg*, "presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses[.]"  512 U.S. 415, 432 (1994).  This consideration weighs heavily in favor of bifurcation.  *See State Farm Fire & Cas. Co. v. Woods*, 896 F. Supp. 658, 660 (E.D. Tex. 1995) (bifurcation is "wisest course" where defendant could be severely prejudiced by presentation of evidence of its net worth during the calculation of actual damages).

Indeed, given the magnitude of the interest at stake for the Cook Defendants and the potential for unfair prejudice in a single-phase trial, the need for bifurcation of punitive damages in this case goes beyond the typical considerations of judicial economy and avoidance of prejudice and compels the conclusion that the Cook Defendants actually have a due process right to bifurcation under the Fourteenth Amendment.  Punitive damage awards imposed arbitrarily

without proper procedural safeguards violate due process protections.  *Honda*, 512 U.S. at 432. In this case, the procedural safeguard necessary to prevent an arbitrary award of punitive damages is a bifurcated trial.

Under *Connecticut v. Doehr*,[11] when a party makes a due process challenge to a state's role in a property deprivation, the inquiry is as follows:

> [F]irst, consideration of the private interest that will be affected by the prejudgment measure; second, an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards; and third, in contrast to *Mathews*, principal attention to the interest of the party seeking the prejudgment remedy, with, nonetheless, due regard for any ancillary interest the government may have in providing the procedure or foregoing the added burden of providing greater protections.

501 U.S. 1, 11 (1991).

As to the first consideration—the private interest affected by the decision to bifurcate—the Cook Defendants certainly have a substantial private interest at stake:  the potential punitive damages award.  On the second consideration—the risk of erroneous deprivation through a unitary trial and the probable value of a bifurcated trial—as described above, many courts and state legislatures have acknowledged the risk of a jury erroneously considering evidence of a defendant's net worth when determining liability and calculating compensatory damages, and noted the efficacy of a bifurcated trial in resolving that risk.  In this case, ordering bifurcation would prevent unfair prejudice to the Cook Defendants, satisfying the second requirement.

The third requirement—balancing the interests of the party seeking bifurcation with the burden bifurcation would impose on the government—is satisfied as well.  As discussed in

---

[11] The *Doehr* case modifies the existing *Mathews v. Eldridge* test as it applies to cases involving private litigants.  *See Mathews v. Eldridge*, 424 U.S. 319 (1976).

Section II, a two-phase trial in front of a single jury is likely to conserve the government's resources rather than create a burden, and the government's interest in holding a fair proceeding far outweighs any procedural inconvenience that might occur.  Because bifurcation of the punitive phase would prevent unfair prejudice to the Cook Defendants and would not be overly burdensome to the government, the Cook Defendants are entitled to bifurcation as a matter of due process.

Moreover, the financial documents, which are only relevant to punitive damages, are highly confidential and entitled to special protection, as this Court has recognized.  *See generally* March 15, 2017 Order on Discovery of Cook Group, Inc.'s Financial Information, No. 4108, at 2.  Given the highly confidential nature of this information, the information should be subject to public disclosure during trial only if absolutely necessary, i.e., only after Mrs. Hill has first met her burden of proving that liability exists on the failure-to-warn or product-defect claims and this Court has determined, based on the even higher standard of proof required for punitive damages, that the jury should consider the issue.  *Cf. Industries Metalicas Marva, Inc. v. Lausell*, 172 F.R.D. 1, 8-9 (D. P.R. 1997) (approving bifurcation of liability and damages (including discovery) in infringement case in part because of concerns over defendant's confidential documents).

In sum, the prejudice to the Cook Defendants stemming from having irrelevant and prejudicial evidence spilled into a single-phase trial would *alone* be sufficient reason to grant bifurcation.  Combined with the other factors discussed throughout this Memorandum, the argument for bifurcation is compelling.

**IV.      Mrs. Hill is not prejudiced by bifurcation.**

Finally, bifurcation of the liability and compensatory damages claims from the punitive damages claims will not prejudice Mrs. Hill at all, let alone unfairly prejudice her.  Under the Cook Defendants' proposal, if Mrs. Hill proves her claim for compensatory damages and the Court finds the evidence sufficient to create a jury question on punitive damages, she would have the full opportunity to present and argue her case for punitive damages to the jury.  Mrs. Hill cannot reasonably contend that she should be able to present evidence relevant to punitive damages before the jury determines liability:  A plaintiff does not suffer prejudice by not being allowed to present evidence irrelevant to the issue at hand.  *See, e.g.*, *Chlopek*, 499 F.3d at 70; *Krocka*, 203 F.3d at 516.

**V.       Conclusion**

Bifurcating the punitive damages phase of trial offers several advantages in the interests of prudent trial management—enhancing efficiency and deferring resolution of various issues until necessary.  It is also imperative to avoid jury confusion and risk of unfair prejudice to the Cook Defendants.  *See Hall v. Babcock & Wilcox Co.*, 69 F. Supp. 2d 716, 733 (W.D. Pa. 1999) (granting defendants' motion for a new trial so separate trials on compensatory and punitive damages claims could be held to avoid prejudice to the defendants).  For the reasons detailed above, the Cook Defendants ask this Court to bifurcate the compensatory and punitive damages claims and to try those claims in a phased trial to the same jury.

Dated: August 21, 2017          Respectfully submitted,

         /s/ Andrea Roberts Pierson
         Andrea Roberts Pierson
         J. Joseph Tanner
         John T. Schlafer
         FAEGRE BAKER DANIELS LLP
         300 North Meridian Street, Suite 2700
         Indianapolis, Indiana  46204
         Telephone:       (317) 237-0300
         Facsimile:        (317) 237-1000
         andrea.pierson@faegrebd.com
         joe.tanner@faegrebd.com
         john.schlafer@faegrebd.com

         James Stephen Bennett
         FAEGRE BAKER DANIELS LLP
         110 W. Berry Street, Suite 2400
         Fort Wayne, Indiana  46802
         Telephone:       (260) 424-8000
         Facsimile:        (260) 460-1700
         stephen.bennett@faegrebd.com

         *Attorneys for Defendants Cook Incorporated, Cook Medical LLC f/k/a Cook Medical Incorporated, William Cook Europe APS*

## CERTIFICATE OF SERVICE

I hereby certify that on August 21, 2017, a copy of the was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.  Lead Co-Counsel for Defendants will serve any non-CM/ECF registered parties.

         /s/ Andrea Roberts Pierson

US.113340825.08