**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

---

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

---

This Document Relates to the Following Actions only:

    Elizabeth Jane Hill
    No. 1:14-cv-06016-RLY-TAB

    Arthur Gage
    No. 1:13-cv-01875-RLY-TAB

---

### THE COOK DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE CASE-SPECIFIC EXPERT OPINIONS OF MICHAEL C. FISHBEIN, M.D.

    The defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS (collectively "Cook" or "the Cook Defendants") move this Court pursuant to Federal Rules of Evidence 702 to exclude at trial of the *Hill* and *Gage* matters the case-specific testimony of Michael Fishbein, M.D., Plaintiffs' pathology expert. Dr. Fishbein's proposed case-specific expert testimony fails to meet the standards for admission of expert testimony under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and its progeny. More specifically, Dr. Fishbein explained at his deposition that diagnoses in pathology are made through laboratory review of tissue samples and slides. He did not review those for Plaintiffs Hill and Gage, but nonetheless issued opinions in his report about alleged complications with the IVC filters that they received. These case-specific opinions should be excluded because they were not developed under the diagnosis

methods followed in pathology, derived from Dr. Fishbein's expertise as a pathologist, and are not helpful for the jury.

## I. Legal Standard for Admission of Expert Testimony

The Seventh Circuit employs a three-step analysis in its application of the *Daubert* standard: (1) the witness must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying the testimony must be scientifically reliable; and (3) the testimony must assist the trier of fact to understand evidence or to determine a fact in issue. *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). The party proffering the expert must show these factors by a "preponderance of proof." *United States v. Allen*, 207 F. Supp. 2d 856, 869 (N.D. Ind. 2002).

## II. Dr. Fishbein's Opinions

The bulk of Dr. Fishbein's expert report and proposed expert testimony in this litigation is focused on his review of animal studies performed on the Cook IVC filters, and the opinions he applied to that review. Cook is not challenging Dr. Fishbein's general opinions as part of this Motion.

On pages 13 and 14 of his expert report, however, Dr. Fishbein proffers several case-specific opinions about Plaintiffs Hill and Gage: Dr. Fishbein "was asked [by Plaintiffs] to review the medical records of Elizabeth Hill and Arthur Gage and to comment on the findings particularly with regard to the IVC Filters." *See* Excerpt from Expert Report of Michael C. Fishbein, M.D., pp. 13–14, attached as Exhibit A. His report contains a paragraph-long summary of Plaintiff Hill's and Plaintiff Gage's respective medical histories and opinions regarding each case.

Regarding Plaintiff Hill, Dr. Fishbein opines  *Id.* at 13. Regarding Plaintiff Gage, Dr. Fishbein similarly opines *Id.* at 14. At his deposition, Dr. Fishbein explained that he did not review any tissue samples or slides for Plaintiffs Hill and Gage, and admitted that his case-specific opinions were based solely on a review of their medical records, not on any pathological analysis or study. *See* Excerpts From Deposition of Michael Fishbein, M.D. ("Fishbein Dep."), 232:10–21; 239:9–13, attached as Exhibit B.

**III.     Dr. Fishbein's proposed case-specific expert testimony is not based on a reliable methodology, as required and used in the field of pathology.**

*Daubert* requires exclusion of Dr. Fishbein's case-specific opinions concerning Plaintiffs Hill and Gage because Dr. Fishbein did not employ a reliable methodology accepted in pathology—or, any methodology at all—in forming his case-specific opinions. In analyzing an expert's methodology, the Court considers whether "the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist." *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996). The proponent of expert testimony must "explain the methodologies and principles supporting the opinion," to prove that the opinion is admissible. *Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010); *see also Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009).

An expert's work will be admissible only to the extent that it "is reasoned, uses methods of the discipline, and is founded on data." *Lang v. Kohl's Food Stores, Inc.*, 217 F. 3d 919, 924 (7th Cir. 2000); *see also Peoples State Bank v. Stifel, Nicolaus, & Co.*, 2013 WL 1024917, at *4

3

(S.D. Ind. May 14, 2013); *In re Zimmer Nexgen Knee Implant Prod. Liab. Litig.*, 218 F. Supp. 3d 700, 712 (N.D. Ill. 2016) (excluding opinions of an expert that did not explain why his opinions were reliable because "[a]n expert who supplies nothing but a bottom line supplies nothing of value.") (internal citations omitted).  Identifying an accepted methodology does not end the inquiry under *Daubert*.  The "expert still must faithfully apply the method to the facts at hand" and must "rely on 'facts or data,' as opposed to subjective impressions."  *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 772 (7th Cir. 2014) (internal citation omitted).

### A.   Pathology is the science of laboratory analysis.

Pathology is the science of the causes and effects of disease, and it primarily encompasses the branch of medicine that deals with the laboratory examination of samples for diagnostic or forensic purposes.  Dr. Fishbein is an expert in "[g]eneral pathology, autopsy pathology, and cardiovascular pathology." Fishbein Dep., 25:8–9.  He considers his specialty to be "anatomical pathology" and defines and describes the work of an anatomical pathologist as:

> I would call clinical or patient-related work, and that **consists of doing autopsies**, maybe doing some cytology, **which is looking at cells on a slide**, and I think what most anatomic pathologists spend their time doing is **looking at biopsies of living patients**.  **So someone has a lump somewhere, it's taken out and sent to pathology and the pathologist studies it and makes a diagnosis.**

*Id.* at 60:24–61:4 (emphasis added).  A pathologist does not examine living patients directly, but instead consults with a clinician and makes diagnoses by analyzing the patient's tissue samples in a laboratory setting. *Id.* at 64:4–25.  Dr. Fishbein explained his work as a pathologist at his deposition:

> Q:   So [for example] you will get some tissue and you will say this is cancerous and that will be a diagnosis?
>
> A:   Right.  Even though the patient may think that it's the surgeon who is making the diagnosis, it's actually the pathologist who is making the diagnosis.

4

*Id*. at 64:19–24.

In sum, pathology, as it is generally understood (and confirmed by Dr. Fishbein in his own words) is the study of the causes of disease through laboratory analysis of tissue samples and slides. Therefore, an expert opinion in the field of pathology needs to be derived from review and analysis of pathology – *i.e.*, tissues samples and slides.

> **B.** **Dr. Fishbein's case-specific opinions were not derived under a reliable methodology required in the field of pathology because he did not review any slides or samples of Plaintiffs Hill and Gage.**

Dr. Fishbein did not review or perform any pathological analyses regarding the cases of Plaintiffs Hill and Gage. This was confirmed at his deposition, where he admitted that he did not review any samples or slides taken from them, nor did he examine Plaintiffs Hill and Gage:

> Q: Doctor, in your report at pages 13 and 14, you offer some opinions about the specific cases of Elizabeth Hill and Arthur Gage; correct?
>
> A: Yes.
>
> **Q: You've not seen any sections or any slides of tissue samples from either Ms. Hill or Mr. Gage; correct?**
>
> **A: Correct.**
>
> Q: And you've not done an autopsy on either of them because I have reason to believe they're still alive today.
>
> A: That's correct.
>
> ****
>
> Q: You didn't evaluate or examine Mr. Gage or Ms. Hill personally; correct?
>
> A: That's correct.

*Id*. at 232:10–21; 242:10–12 (emphasis added).

Nonetheless, Dr. Fishbein has proffered expert opinions regarding Plaintiff Hill and Plaintiff Gage; namely, ███████████████████████████████████████ ███  *See* Fishbein Report at 13–14; *supra* Section II (summarizing Dr. Fishbein's case-specific opinions). Dr. Fishbein developed these opinions solely from review of imaging reports in medical records. Fishbein Report at 13–14; Fishbein Dep., 239:6–13.

Dr. Fishbein's opinions are unreliable and should be excluded because they were not derived under the methods accepted and employed in his field. *Lang*, 217 F. 3d at 924 (emphasizing "that experts' work is admissible only to the extent it . . . uses the methods of the discipline"); *Peoples State Bank*, 2013 WL 1024917, at *4 (same); *Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*, 372 F. Supp. 2d 1104, 1111 (N.D. Ill. 2005) ("The expert must employ in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.") (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

Under remarkably similar circumstances, the United States District Court for the Western District of Virginia *twice* excluded the case-specific testimony of the plaintiffs' pathologist in the surgical mesh MDLs. As the Court explained, the pathologist's testimony was barred under *Daubert* in two separate cases because there was no indication in his report that he "review[ed] any pathology." *Winebarger v. Boston Scientific Corp.*, at *32 (S.D. W.Va. Apr. 24, 2015) (excluding pathologist's case-specific opinions because he "did not review any pathology" nor did he examine plaintiff's "explanted mesh or perform[] a physical examination."); *see also Carroll v. Boston Scientific Corp.*, 2016 WL 2939523, at *11 (S.D. W.Va. May 19, 2016) (excluding the same pathologist in a different case because "there [was] no evidence that [he] examined the plaintiff's explanted mesh, performed a physical examination, or otherwise conducted a differential diagnosis.").

Similarly, Dr. Fishbein's case-specific testimony should be excluded because he did not perform any pathological review or analysis in these cases and, therefore, should not be permitted to testify on case-specific issues. By his own admission, reaching a reliable diagnosis in the field of pathology requires review of slides and tissue samples, and Dr. Fishbein did not do that in for Plaintiffs Hill or Gage. The issue with his proposed expert testimony is not his expertise or qualifications as a pathologist; but rather that his work on these cases simply was not pathology. *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996) (noting that trial courts as gatekeepers under *Daubert* must ensure "the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist").

Accordingly, the manner in which Dr. Fishbein developed his case-specific opinions is not reliable and those opinions should be excluded under *Daubert*.

> **C.  Dr. Fishbein's proposed case-specific expert testimony is unreliable because it steps outside the bounds of his expertise as a pathologist and should thus be barred from trial.**

As noted above, Dr. Fishbein did not review samples and slides that would have been part of the accepted methodology employed by pathologists. But, nonetheless, he has issued case-specific opinions pertaining to Plaintiffs Gage and Hill. By doing so, Dr. Fishbein placed himself in the classic position of an expert with knowledge and experience in a specific field who attempts to opine on issues outside the areas of his expertise—an expert that has strayed too far from his proper role. A "district judge should assure himself, before admitting expert testimony, that the expert knows whereof he speaks." *Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 901 (7th Cir. 1994). The Court's focus is not whether the expert is qualified in general but

on whether the expert's qualifications provide sufficient foundation for an opinion on a particular topic or to address a specific question. *Gayton v. McCoy*, 593 F.3d 610, 617–18 (7th Cir. 2010). The Court must look individually at each of the expert's conclusions and determine whether the expert has adequate education, skill, and training to reach that conclusion. *Id.* at 617; *see also Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002) (stating that a surgeon "would be competent to testify that the cancer was too advanced for surgery, but [that] in offering the additional and critical judgment that the radiologist should have discovered the cancer sooner he would be, at best, just parroting the opinion of an expert in radiology").

In light of this facet of *Daubert*, courts exclude expert testimony where the expert's conclusions are rooted in knowledge and training that the expert does not have. *Hall v. Flannery*, 840 F.3d 922, 930 (7th Cir. 2016) (holding that an expert physician who possessed considerable knowledge about surgery, pediatrics, and neurology was unqualified to opine about plaintiff's heart-related issues because he had no specialized knowledge of cardiology); *Gayton*, 593 F.3d at 617 (finding a general practice physician unqualified to testify on the function and effect of heart disease drugs because he lacked specialized knowledge of cardiology and pharmacology); *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723–24 (7th Cir. 1999) (finding expert unqualified to testify regarding issues of toxicity where he was neither a medical doctor nor a toxicologist); *Higgins v. Koch Dev. Corp.*, 997 F. Supp. 2d 924, 931 (S.D. Ind. 2014) (holding expert unqualified to opine that chlorine gas caused asthma where expert did not treat patients exposed to chlorine gas); *Cunningham v. Masterwear, Inc.*, 2007 WL 1164832, at *10 (S.D. Ind. Apr. 19, 2007) (holding doctor's experience in diagnosing and treating asthma did not qualify doctor to opine whether plaintiff's asthma was attributable to PCE exposure).

While Dr. Fishbein's experience and education as a pathologist may have qualified him to offer certain opinions concerning tissue samples or slides from Plaintiff Hill and Plaintiff Gage's IVC filters, he did not perform any *pathology* analyses here.  Rather, Dr. Fishbein developed his case-specific opinions about Plaintiffs Hill and Gage from reviewing written CT reports prepared by *other physicians* based on CT imaging they reviewed and interpreted.  At the same time, he admitted that he is not qualified to review and interpret such imaging studies because such tasks are not part of the everyday work of a pathologist:

> Q: Were those CT scans that you personally reviewed, or are those just reports of CT scans that were in the records that you reviewed?
>
> A: Just reports.
>
> Q: Okay.  And I think you testified earlier you're not – it's not part of your qualifications to be able to read and interpret CT scans; correct?
>
> A: Right.
>
> ****
>
> Q: And you're not able – you're not qualified to make any determination about whether any of those perforations of any of those phenomena would be clinically significant: correct?
>
> A: Correct.

Fishbein Dep. at 239:6–13, 20–24.  Consequently, Dr. Fishbein's case-specific opinions should be excluded because he is not qualified to give them and his review included no reliable pathological methodology.

Indeed, the task of interpreting imaging records and reports is a task properly left to the specialties that review such records as part of their everyday treatment of patients and to the

9

radiologists or other kind of imaging specialists. However, Dr. Fishbein testified that he is neither, and that he is not qualified to interpret imaging studies:

> Q: Not an expert in vascular surgery?
>
> A: That's correct.
>
> ****
>
> Q: Not an expert in interventional cardiology?
>
> A: That's correct.

*Id.* at 66:3-8.

> Q: And do you believe that you are qualified to read and interpret CT scans?
>
> A: No.
>
> Q: Do you believe that you are qualified to read and interpret venograms?
>
> A: No.

*Id.* at 67:6–11.

Because Dr. Fishbein is opining outside his area of expertise, without employing the methodology required by his field, his case-specific testimony should be barred from the *Hill* and *Gage* trials. *See Hall*, 840 F.3d at 930; *Gayton*, 593 F.3d at 617; *Jones*, 188 F.3d at 723–24; *Cunningham*, 2007 WL 1164832, at *10.

### D. Dr. Fishbein's proposed expert testimony would not assist the jury.

The Court should also exclude Dr. Fishbein's case-specific testimony because it would not be helpful to the jury. When analyzing the relevance of proposed expert testimony, courts must consider whether the testimony will assist the trier of fact with its analysis of the issues. As part of this inquiry, the Court considers whether the expert's testimony is sufficiently tied to the facts of the case so that it will help the jury in resolving a factual dispute. *Sann v. Mastrian*,

10

2012 WL 253088, at *3 (S.D. Ind. Jan. 26, 2012); *see also Peoples State Bank*, 2013 WL 1024917, at *6 (explaining that the suggested testimony must "fit" the issue to which the expert is testifying). *Daubert* requires that if the opinion does not relate to an issue in the case, it "is not relevant and, ergo, non-helpful." *Kirkland v. Sigalove*, 2015 WL 231875, at *3 (quoting *Daubert*, 509 U.S. at 591); *see also Clark v. Takata Corp.*, 192 F.3d 750, 757 (7th Cir. 1999) ("A liability expert is only helpful to the fact finder if he is able to establish such an element of the claim through visual inspection, independent research, testing, and knowledge . . . Simply put, an expert does not assist the trier of fact in determining whether a product failed if he starts his analysis based upon an assumption that the product failed (the very question that he was called upon to resolve).").

Here, Plaintiffs' burden is ultimately to prove that the Cook filters were defective and caused the injuries that Plaintiffs Hill and Gage allege, and they must do so with reliable expert testimony because the Cook filters are complex medical devices. *See e.g., Menges v. Depuy Motech, Inc.*, 61 F. Supp. 2d 817, 827 (N.D. Ind. 1999); *Minisan v. Danek Med., Inc.*, 79 F. Supp. 2d 970, 976 (N.D. Ind. 1999). However, Dr. Fishbein does not plan to testify that the filters were defective or that they caused any injury to Plaintiffs Hill and Gage. Perhaps because pathology slides and samples were not available, Dr. Fishbein attempted to limit his case-specific opinions by stating that he is merely commenting on the records, instead of issuing full diagnoses and causation opinions regarding Plaintiff Hill and Plaintiff Gage's alleged injuries. Specifically, Dr. Fishbein stated in his deposition that "And then I say that a – that's a position that has been associated with complications. I don't say that happened in here." Fishbein Dep., 233:20–22. He further confirmed that he was not offering a causation opinion in these cases:

> Q:  And you're not offering any causal opinions in Ms. Hill's case; right?

11

> A: Ms. – what do you mean?
>
> Q: That the – that the IVC filter from Cook caused any particular injury to her; correct?
>
> A: That's correct.
>
> Q: And the same with Ms. Gage. You're not offering any causal opinions; that is, that the IVC filter caused any particular injury to Mr. Gage?
>
> A: Correct.

*Id*. at 243:11–20. Because Dr. Fishbein is not testifying that the filters were defective or that they caused any injury to Plaintiffs Hill and Gage, his testimony will not be helpful to the jury at trial because he will not be supplying the jury with expert testimony on the issues where expert testimony is needed.

To the extent Plaintiffs intend to offer Dr. Fishbein's testimony to interpret Plaintiff Hill and Plaintiff Gage's medical records and/or to establish that their filters perforated, Dr. Fishbein's testimony will not be useful or necessary to the jury for that purpose because his areas of expertise do not encompass interpretation of imaging studies and reports, as noted in Section II.C. above. Moreover, the testimony that Dr. Fishbein proffers about Plaintiffs Hill and Gage will be presented in those trials through testimony of other experts and the treating doctors. Thus, Dr. Fishbein's testimony, on matters outside his expertise, would be unnecessary and cumulative of testimony of other witnesses, and otherwise unhelpful for the jury to resolve any factual issue requiring expert testimony that is actually at issue in the *Hill* and *Gage* cases. *See* Fed. R. Evid. 702(a); 2011 Advisory Committee Note to Fed. R. Evid. 403 (noting that exclusion of evidence for reasons such as "waste of time, all find ample support in the authorities.").

12

## CONCLUSION

For the reasons stated above, the Cook Defendants urge the Court to grant their Motion to Exclude Case-Specific Opinions of Michael Fishbein, M.D., Plaintiffs' pathology expert, and bar him to from offering any case-specific opinions in the upcoming *Hill* and *Gage* bellwether trials. Succinctly put, Dr. Fishbein's opinions here were not derived under methods required in pathology, do not stem from areas where Dr. Fishbein holds expertise, and, ultimately, will not be helpful to the jury to resolve the factual issues before it in these trials.

Respectfully submitted,

Dated: August 9, 2017

/s/ *Jessica Benson Cox*
Jessica Benson Cox (# 26259-49)
Andrea Roberts Pierson (# 18435-49)
John T. Schlafer (# 28771-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-mail:   jessica.cox@faegrebd.com
E-Mail:  john.schlafer@faegrebd.com

James Stephen Bennett (# 22869-02)
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana  46802
Telephone: (260) 424-8000
Facsimile: (260) 460-1700
stephen.bennett@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 9, 2017, a copy of the foregoing **THE COOK DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE CASE-SPECIFIC EXPERT OPINIONS OF MICHAEL FISHBEIN, M.D.** was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.  Lead Counsel for Defendants will serve any non-CM/ECF registered parties.

/s/  *Jessica Benson Cox*

US.111236405.06