## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB

MDL No. 2570

_____

This Document Relates to the Following Actions only:

      Elizabeth Jane Hill
      No. 1:14-cv-06016-RLY-TAB

      Arthur Gage
      No. 1:13-cv-01875-RLY-TAB

_____

### COOK DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION
### TO EXCLUDE EXPERT OPINIONS OF DR. DAVID GARCIA

Defendants Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated),

and William Cook Europe ApS (collectively, the "Cook Defendants") move this Court to

exclude at trial the testimony of Plaintiffs' expert, Dr. David Garcia, pursuant to the Federal

Rules of Evidence.

Dr. Garcia offers no opinions that are in any way tied to Plaintiffs Hill or Gage, or that

would assist the jury with resolving any of the specific issues relevant to Plaintiffs Hill and

Gage's claims against Cook.  Moreover, even if one were to assume his general opinions were

relevant to the Hill and Gage cases,  Dr. Garcia is also not qualified to give certain opinions he

proffers in his Report, and several of his opinions about the risks involved with filters rest on

flawed methodology.  As such, Dr. Garcia's proposed expert testimony fails to meet the

1

standards for such testimony imposed by Rule 702 and by *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) and its progeny, and should therefore be excluded.

## I.   Legal Standard for Admission of Expert Testimony

The Seventh Circuit has set forth a three-step analysis in its application of the *Daubert* standard: (1) the witness must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying the testimony must be scientifically reliable; and (3) the testimony must assist the trier of fact to understand evidence or to determine a fact in issue. *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). The party proffering the expert must show these factors by a "preponderance of proof." *United States v. Allen*, 207 F.Supp.2d 856, 869 (N.D. Ind. 2002).

## II.   Dr. Garcia's Opinions

Dr. Garcia is a board certified hematologist and professor of hematology. Although he prescribes filters to his patients outside of the Courtroom, he offers general opinions in his report that: (1) there is no evidence to suggest that IVC filters provide a benefit to patients sufficient to justify their known risks; and (2) that filters cause thrombotic events. *See* Expert Report of David Garcia, M.D. ("Garcia Rpt."), attached hereto as **Exhibit A**, pp. 3, 6, March 15, 2017. Dr. Garcia also offers general opinions that Cook failed to adequately establish the safety and efficacy of the Celect or Tulip filters prior to marketing as a 510k device, and failed to adequately warn physicians of the risks associated with the Celect or Tulip in their respective Instructions For Use ("IFU"). Garcia Rpt. at 12; *see also* Deposition of David Garcia, M.D. ("Garcia Dep."), excerpts attached hereto as **Exhibit B**, 246:13-16, June 22, 2017. Finally, Dr. Garcia cites to Cook company documents to support his general opinions that ██████████████ ████████████████████████████████ Garcia Rpt. at 13-14. He, however, offers no specific opinions about Mrs. Hill, or Mr. Gage, and no other Plaintiffs' expert ties any of Dr.

2

Garcia's general opinions to the issues relevant in either the Hill or Gage cases.

### III.   Dr. Garcia's General Opinions About The Risks And Benefits Of Filters Should Be Excluded As Irrelevant

The Court should exclude the testimony of Dr. Garcia because his testimony is not helpful to the jury and will not assist the jury in resolving the factual questions actually presented by the claims of Plaintiffs Hill and Gage.  *See Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007) (for expert testimony to be admissible it "must assist the trier of fact to understand the evidence or to determine a fact in issue.") (citing Fed. R. Evid. 702).

Dr. Garcia paints with a broad brush condemning all IVC filters simply because he does not believe that medical literature proves either that IVC filters are safe and effective or that their benefits outweigh their risks.  For example, Dr. Garcia states:

- "IVC filter placement stands out as an invasive procedure for which hazards exist but no high-quality evidence of benefits exists to justify the known risks." Garcia. Rpt. at 3.
- "Widespread use of prophylactic IVC [filters] is not supported by evidence and should be discouraged."  *Id.* at 5 (internal quotation marks omitted).
- "The [IVC] filter is a widely available medical device that has been used for decades to prevent pulmonary embolism (PE), but studies testing the device have not demonstrated adequate proof of efficacy."  *Id.* at 11 (internal quotation marks omitted).
- "I conclude that Cook failed to adequately establish the safety and efficacy of the Tulip and Celect IVCF prior to marketing."  *Id.* at 12.

But the Hill and Gage cases are not about IVC filters as a category of medical device. These cases are about whether the specific Cook IVC filters places in Plaintiffs Hill and Gage were defective, either because of their design or because they failed to provide adequate warnings and instructions to Hill's and Gage's physicians.  Dr. Garcia's report does not tie ***any*** of his opinions to these Plaintiffs' claims, either generally or specifically. *See Daubert*, 509 U.S. at 591-93 (Rule 702 requires a valid connection between the expert's testimony and the pertinent

inquiry before the court as a precondition to admissibility); *Mathews v. Novartis Pharm. Corp.*, No. 3:12-cv-314, 2013 WL 5780415, at *14 (S.D. Ohio Sep. 20, 2013) (excluding expert testimony when plaintiffs experts could not tie opinions to the specific facts of a plaintiff's case); *see also Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1326 (M.D. Fla. 2015) (excluding expert opinions about defendants conduct when "compliance with an unidentified standard of ethical or professional conduct [was] not relevant to the issues in this case.").

Cook recognizes that experts' general opinions can sometimes be helpful to jurors where the proponent can establish a link between the general opinion and the specific claim at issue. But Plaintiffs here can establish no such link between Dr. Garcia's broad-brush opinions and Plaintiffs' specific claims for two reasons:  (1) no expert tries to do so, and (2) Dr. Garcia's opinions could not support such a link in any event.

**A.      No Expert Ties Dr. Garcia's Opinions To Hill or Gage**

First, Plaintiffs cannot fabricate a nexus between Dr. Garcia's opinions and Hill's and Gage's specific claims because none of their experts even attempts to provide that nexus.  Dr. Garcia himself certainly does not; he asserts no opinions whatsoever concerning Hill or Gage and offers no explanation of how his non-specific observations about IVC filters in general might relate to the specific circumstances of any patient, let alone the Plaintiffs here.  *See, e.g.,* Garcia Dep. at 150:23-151:5 (admitting that he is not offering any opinions about Hill or Gage whatsoever); *see also id*. at 221:16-222:6 (testifying that he was not opining whether Plaintiffs were injured by their filters or by thrombosis).  Indeed, Dr. Garcia does not even offer any opinion that the Celect and Tulip filters at issue here differ from any other IVC filter in any material respect at all, much less in any respect that bears on the claims asserted by Hill or Gage. Garcia Dep. at 284:7-14 (testifying that he is not opining that there are better or safer filters than the Tulip or Celect).

4

None of Plaintiffs' other experts makes any connection between any of Dr. Garcia's general opinions about IVC filters and the specific elements of Plaintiffs' claims.  In particular, the only expert Plaintiffs have identified to testify on the issue of causation, Dr. Alexander Marmureanu, does not rely on or even mention any of Dr. Garcia's views in offering his own opinions, and provides no link between Garcia and the Plaintiffs' claims.  Although Dr. Marmureanu's report states that he read and relied on Dr. Garcia's report (among others)[1], he testified at his deposition that he had no substantive conversations with Plaintiffs' other experts, Deposition of Alexander Marmureanu, M.D. ("Marmureanu Dep."), excerpts attached hereto as **Exhibit F,** at 24:4-25:4; 739:5-9, June 20-21, 2017, and he did not review any of their draft reports before finalizing his own.  *Id.* at 25:4-10; 423:25-424:14.  Moreover, his report does not cite or quote any portion of Dr. Garcia's expert report on which he relies, and he identified none at his deposition.  Marmureanu Dep. at 326:23-327:2.  In sum, neither Dr. Garcia himself nor any other expert draws any link between anything Dr. Garcia says in his report and any element of any claim asserted by either of these Plaintiffs.  Given that failure, Dr. Garcia's testimony could not be helpful to jurors in resolving the questions before them; it could only serve as a sort of "character evidence" against IVC filters, trying to poison the well against filters generally and Cook specifically in a manner wholly unrelated to the actual merits of these cases.

## B.      Dr. Garcia's Opinions Could Not Be Tied to the Hill or Gage Cases

Likewise, Plaintiffs cannot establish any link between Dr. Garcia's testimony and the actual claims by Plaintiffs Hill and Gage because Dr. Garcia's testimony does not (and cannot) support such a link.  Cook certainly recognizes that it is possible for general evidence to be

---

[1] See Expert Report of Alexander Marmureanu, M. D. ("Marmureanu  Rpt"), attached hereto as **Exhibit C**, p. 37, March 17, 2017; *see also* Dr. Alexander Marmureanu Case Specific Opinions Regarding Elizabeth Hill ("Marmureanu Hill Rpt") attached hereto as **Exhibit D**, p. 1;  *see also* Dr. Alexander Marmureanu Case Specific Opinions Regarding Arthur Gage ("Marmureanu Gage Rpt.") attached hereto as **Exhibit E**, p. 1.

relevant to a claim and helpful to a jury.  For example, experts often first address general causation—whether a particular product can cause a particular condition—and then move to specific causation—whether the particular product at issue actually caused that condition in the particular plaintiff.  Here, however, no move from the general to the specific is possible (and no link to Plaintiffs' individual claims can be made) because Dr. Garcia does not offer any actual evidence that could be linked.

Dr. Garcia offers no affirmative opinions about facts that actually exist; only opinions that facts have not been proven.  For example, Dr. Garcia opines only that the safety, efficacy, risks, and benefits of IVC filters have not been proven; he does not opine that the available evidence shows that IVC filters are ***not*** safe or effective, or that their benefits do ***not*** outweigh their risks for some patients.  He does not claim that IVC filters are defective, or that further research would ***dis***prove their safety, effectiveness, or benefits.  He merely opines that he has not seen sufficient evidence to prove those elements.

Thus, even assuming that some expert tried to link Dr. Garcia's opinion to some element of Plaintiffs' claims here, Dr. Garcia's statement that he has seen no proof of the safety and benefits of IVC filters would not be helpful to the jury. A lack of proof is, by definition, ***not proof***.  *See, e.g., Denson v. United States*, 574 F.3d 1318, 1343 (11th Cir. 2009) ("absence of proof is not proof of absence").  The Seventh Circuit addressed a similar issue in *United States v. Hagler*, in which a defendant argued that an earlier failure to conduct DNA testing that later proved inconclusive cast "grave doubt" about his guilt.  700 F.3d 1091, 1101 (7th Cir. 2012). The court rejected his argument, holding that the inconclusive test would not undermine the other affirmative evidence against him, but would "simply fail to lend it additional support."  *Id*. As the court noted, "[t]he absence of proof …is not proof of absence."  *Id*.; *see also Robnett v.*

6

*Blodgett*, 977 F.2d 590, 1992 WL 280980 at *2 (9th Cir. 1992) ("Absence of proof is not proof of absence.").

Plaintiff bears the burden of proving a defect, and legally, a plaintiff "must submit valid, affirmative proof, not the absence of any proof." *Francis v. Secretary of Dep't of Health & Human Servs.*, No. 98-0853V, 2000 WL 1517676, at *4 (Fed. Cl. Aug. 31, 2000). Evidence of a lack of proof—which is all Dr. Garcia has to offer—will not aid the jury in determining the issues of product defect (or negligence, or any other element that Plaintiffs must prove in the Hill and Gage case). In the words of Rule 401, his testimony has no tendency to make a fact of consequence to the action more or less likely than it would be without the evidence. "The absence of proof of a fact does not disprove the fact." *Johnson v. United States*, No. 4:06CR63-M, 2010 WL 3525840, at *6 (N.D. Miss. Sept. 3, 2010).

So why are Plaintiffs trying so hard to get Dr. Garcia's "lack of proof proof" before the jury? Again, because they hope to put the IVC filter itself on trial, rather than proving the merits of the individual Plaintiffs' claims. More than that, they want to shift the burden of proof to Cook; by offering Dr. Garcia's testimony that the safety and efficacy of IVC filters has not been proved, they hope to plant the seed in the jury's mind that Cook is somehow obligated both to prove the safety of IVC filters generally and to prove that the specific Cook filters at issue here did not harm these Plaintiffs. That would be improper, and it is the reason the Court acts as a gatekeeper to such efforts under *Daubert*. This is a case about Plaintiffs' claims that Cook IVC filters harmed them, and Plaintiffs bear the burden of proving their claims. Dr. Garcia's general testimony about lack of proof will not assist the jury in determining whether Plaintiff have met that burden.

IV.    **Dr. Garcia's General Opinions About the Risk Of Thrombosis With IVC Filters Should Be Excluded As Irrelevant**

Dr. Garcia also spends the majority of his report addressing a question that is neither posed by the plaintiffs themselves nor raised by their claims in this case:  the thrombogenicity of IVC filters.  Garcia Rpt. at 6-14.  ***This issue of whether an IVC filter is likely to cause a thrombus has no bearing on either of these cases.***  Neither Hill nor Gage has suffered a thrombus or claims injury from a thrombus, and neither has identified any expert testimony that they are likely to suffer a thrombus in the future.  *See* Marmureanu Dep. at 586:4-8 ("…you're not saying that, to a reasonable degree of medical certainty, that Mrs. Hill will develop those [thrombotic issues], correct?  A:  Absolutely not.").

Dr. Garcia's opinions concerning thrombogenicity might in theory be relevant in an IVC filter case in which the plaintiff has actually suffered a damaging thrombus, Dr. Garcia's general opinions that IVC filters are thrombogenic, however, are irrelevant to these Plaintiffs' claims and not tied to any issue that the jury must decide.

Although Hill and Gage are bellwether trials, they are still trials of these two plaintiffs' individual claims; they are not trials of Cook for any general objections that Plaintiffs or their attorneys may have to Cook's IVC filters.  Thrombogenicity has no role in Hill's or Gage's case, and the Court should exclude Dr. Garcia's opinions on the topic.  Absent some link to an actual claim by a party, "the generic expert's testimony would be superfluous."  *In re Gadolinium-Based Contrast Agents Prod. Liab. Litig., 2010 WL 1796334, at \*29 (N.D. Ohio May 4, 2010), opinion modified on reconsideration, 2010 WL 5173568 (N.D. Ohio June 18, 2010)* (rejecting defendant's proposed generic testimony concerning disease at issue and noting that if defendant disputes plaintiffs' diagnosis, "it will need to offer a case-specific expert, who has examined the plaintiff and reached a conclusion on that plaintiff's NSF diagnosis");  *see also*

8

*Mathews,* 2013 WL 5780415 at *14 (excluding expert testimony on the benefits of pretreatment dental screenings and alternate, reduced dosing schedules of a drug that plaintiffs alleged caused harm when plaintiffs experts could not tie these opinions to the specific facts of a plaintiff's case); *see also Tillman*, 96 F. Supp. 3d at1326 (excluding expert opinions about defendants conduct when "compliance with an unidentified standard of ethical or professional conduct [was] not relevant to the issues in this case."). Accordingly, these opinions should be excluded as irrelevant and unhelpful to the trier of fact in these two cases.

**V.     Dr. Garcia's Specific Criticisms of the IFU Should Also Be Excluded As Irrelevant**

The Court should also exclude as unhelpful to the jury Dr. Garcia's comments concerning the Cook filters' IFUs. Dr. Garcia's report makes the general claim that the Tulip and Celect instructions for use are inadequate, but it makes only one specific criticism of the IFUs: that they do not advise that long-term anticoagulation may be needed in many patients whose filter cannot be removed. Garcia Rpt. at 11-12; Garcia Dep. at 242:11-14. That opinion has no bearing on the claims in these cases because neither plaintiff raises any issue concerning the long-term use of anticoagulants.

In Mrs. Hill's case, although Dr. Marmureanu's initial report opined ███████████ ████████████████████████████ Marmureanu Hill Rpt. at 15-16, *Dr. Marmureanu expressly withdrew that opinion during his deposition.* See Marmureanu Dep. at 480:14-481:15. Long-term anti-coagulation thus is not at issue in Hill, Dr. Garcia's opinions concerning the sufficiency of the IFUs in addressing that issue would not be helpful to the jury, and the Court should bar those opinions from the Hill trial.

In Mr. *Gage's* case, Dr. Marmureanu again stated in his initial report that ███████████ ██████████████████████████████████ *See* Marmureanu Gage Rpt. at 10-11. At his deposition, however, Dr. Marmureanu admitted that ███████████████████████████

US.113590859.02

██████████████████████████████████████████████████████████

████████████████████████, Marmureanu Dep. at 692:11-21, and acknowledged that Gage's

treating physicians would need to evaluate the continuing need for anticoagulants should his

filter be removed.  *See id.* at 694:4-6 ("I would think if the filter will be out, they will need to re-

evaluate him and basically reassess if the Coumadin is necessary or not.").  The fact is, however,

uncontroverted that Gage's treating physician's made a decision that Mr. Gage ████████████

██████████████████████████████████████████████████████████

████████████████████████.  *See* Deposition of Timothy Larkin, M.D. ("Larkin Dep."),

excerpt attached hereto as **Exhibit G**, 84:10-85:09, April 19, 2017.  Thus in Gage, as in Hill, the

case presents no true issue concerning long-term use of anticoagulants, and the Court should bar

Dr. Garcia's testimony on the issue. *See United States v. Gallardo*, 497 F.3d 727, 733 (7th Cir.

2007) (expert testimony must be factually linked to the case to meet Rule 702's helpfulness

requirement); *see also Nationall Football League Properties, Inc. v. ProStyle, Inc.*, 57 F. Supp.

2d 665, 672 (E.D. Wisc. 1999) (excluding expert testimony that discussed general topics, finding

that this "non-specific information, standing alone, will not be of sufficient assistance to the jury

to warrant allowing it to be admitted at trial").

    At his deposition, Dr. Garcia volunteered several additional areas in which he contends

Cook's instructions fail to provide sufficient information, specifically the frequencies of caval

thrombosis, pulmonary embolism, and death.  Garcia Dep. at 242:22-243:01. The Court should

bar those opinions as well. First, none of these areas of purportedly insufficient instruction was

identified in Dr. Garcia's report, and the Court should exclude these based on this inadequate

disclosure. *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 765 (7th Cir. 2013) ("A party is barred

from introducing evidence or testimony that it failed to disclose without substantial justification

unless the failure was harmless"). Second, no one alleges that Hill or Gage suffered either a pulmonary embolism or death as a result of an IVC filter, so Dr. Garcia's views of the sufficiency of the IFUs' instructions concerning those complications have no bearing on the claims in the case. ████████████████████████████

████████████████████████ Marmureanu Hill Rpt. at 3, he bases that diagnosis entirely on his own reading of 2017 ultrasound images of Hill, images taken at his request for purposes of this litigation. Marmureanu Dep. at 504;519; 520:20-24. Nothing in the existing medical records of Hill's actual treatment makes any current diagnosis of stenosis, and both the ultrasound technician who performed the 2017 ultrasound and the physician who reviewed the images found the vein within normal limits and saw no stenosis. *Id.* at 511:15-512:18; *see also* Marmureanu Dep. Exhibits 14 & 15. Cook has moved to exclude Dr. Marmureanu's opinions concerning Hill's supposed stenosis on multiple grounds, *see* Marmureanu Daubert Motion Dkt. 4290 at 34, and the Court should reject Dr. Garcia's casual opinions concerning the sufficiency of the Cook IFUs' instructions concerning stenosis as unhelpful.

## VI.     Dr. Garcia's General Opinions About Filters Not Having Proven Benefits Are Also Not Reliable

Dr. Garcia's underlying methodology is also undercut by the glaring inconsistency between what he says in his general opinions and what he actually does in his day-to-day practice. *See People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 111 F.3d 528, 537 (7th Cir. 1997) (*Daubert* test requires "that the methods used by the expert to derive his opinion satisfy the standards for scientific methodology that his profession would require of his out-of-court research.").

As detailed above, Dr. Garcia's opinions consists largely of a general condemnation of IVC filters and his view that the medical literature does not prove either that IVC filters are safe

and effective or that their benefits outweigh their risks.  Yet in Dr. Garcia's own medical practice, he actually *prescribes those same IVC filters in his patients*.  *See* Garcia Dep. at 32:21-22 (he prescribes filters "occasionally").  Indeed, Dr. Garcia prescribed an IVC filter for one of his patients during the month before his deposition, after he issued his report in these cases. *Id.* at 78:21-23.

So what might account for this inconsistency between what Dr. Garcia says and what he does?  Logically, Dr. Garcia must have done one of two things:  either he did not apply the same methodology to analyzing IVC filters in this litigation that he uses in practicing medicine, or he applied the same methodology in both instances but did not adhere to the same intellectual rigor in forming his litigation opinions.  Either alternative renders his opinions unreliable under Daubert.[2]

First, *Daubert* test requires "that the methods used by the expert to derive his opinion satisfy the standards for scientific methodology that his profession would require of his out-of-court research."  *People Who Care*, 111 F.3d at 537; *see also Owens v. Amtrol, Inc.*, 94 F. Supp. 2d 952, 957 (N.D. Ind. 2000) ("modern evidence law demands that scientists demonstrate, in testimony, that the methods used to produce an opinion satisfy the standards for scientific methodology that his profession would require of his out-of-court research").  Nothing in Dr. Garcia's report suggests that he has used the methods he used to reach his litigation opinions about IVC filters that his profession ordinarily requires, and his prescription of IVC filters to his

---

[2] The only other possibility is that Dr. Garcia is consciously treating his patients with an implanted medical device that he does not believe has been proven safe or effective.  That possibility does not seem likely from his deposition testimony.  *See* Garcia Dep. at 84:10-20 ("Q: In those situations where you've recommended a filter be placed . . . . you would not have recommended a filter be placed if you thought those patients would not receive a benefit; correct? A: Correct.")

US.113590859.02

own patients proves that he has not.  The prescription of a medical device inherently involves the balancing of the risks that the device poses against the benefits that the device will provide.  Dr. Garcia obviously has a methodology for striking that balance, because he in fact makes treatment decision that necessarily conclude that the benefits of placing an IVC filter in a particular patient outweigh the risks.  But he cannot be applying that same methodology to arrive at his litigation opinions because his litigation opinions include the conclusion that the medical literature is insufficient to permit the very risk-benefit analysis that his treatment methodology regularly employs.  Dr. Garcia's litigation opinions thus contradict the methodology he uses in his daily practice, and do not satisfy the *Daubert* standard.  *See Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000) ("experts' work is admissible only to the extent it is reasoned, uses the methods of the discipline, and is founded on data. Talking off the cuff—deploying neither data nor analysis—is not an acceptable methodology.").

Viewed another way, even if one assumes that Dr. Garcia applied the same methodology to his litigation opinions that he applies in his medical practice, he plainly did not apply it with the same rigor he uses in treating patients, and his testimony thus fails under *Daubert*.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (*Daubert*'s gatekeeping requirement "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the **same** level of intellectual rigor that characterizes the practice of an expert in the relevant field.").  This lack of rigor is evident from the substantial difference between what Dr. Garcia is able to achieve in his practice compared to what he is able to achieve in his litigation opinion.[3]  In his practice, Dr. Garcia is able to make

---

[3] Similarly, this lack of rigor is evident from Dr. Garcia's deposition testimony discussing the materials upon which he chose to rely for his litigation opinions.  Specifically, Dr. Garcia confirmed that when writing to colleagues in the peer-reviewed literature, he had cited to a study by *Kucher et al.*, as suggesting  there is "an association between IVC filter placement and decreased mortality risk," in patients with PE, yet he did not cite to this paper in his

13

judgments about the safety and efficacy of IVC filters and to identify the risk and the benefits of the use of an IVC filter, not just generally but in the context of a specific patient's condition and needs.  In formulating his litigation opinion, however, Dr. Garcia proves unable to find a sufficient basis to form any opinion concerning the safety or effectiveness of IVC filters or to identify their risks and benefits, even on a general, non-case-specific basis.  Assuming he is employing the same methodology in both instances, he clearly is not bringing the same intellectual rigor to his efforts on his litigation opinions.  Given this failure, his litigation opinions fail to meet the *Daubert* standard for admissibility.  *See Allgood v. Gen. Motors Corp.*, No. 102CV1077DFHTAB, 2006 WL 2669337, at *4 (S.D. Ind. Sept. 18, 2006) ("Ultimately, the object of the court's Rule 702 reliability inquiry is to ensure that the opinions expressed by testifying experts 'adhere to the same standards of intellectual rigor that are demanded in their professional work.'") (quoting *Rosen v. Ciba-Geigy Corp.,* 78 F.3d 316, 318 (7th Cir.1996)).

Finally, despite his obvious confidence in evaluating the suitability of the placement of IVC filters in specific patients, Dr. Garcia fails to employ that medical expertise in the one place in this litigation where it might actually be useful:  to analyze the treatment of Plaintiffs Hill and Gage.  Had he analyzed their treatment, he could not only have employed the same methodology with the same intellectual rigor, he could have provided opinions that are actually connected to the issues in these cases and might be helpful to the jury.  *See* Section I above.  But he does not do so, or even try.

As noted above, Dr. Garcia's report does not mention either plaintiff, and he did not review or rely on either plaintiffs' medical records in any way in preparing his report.  Garcia Dep. at 151:2-5; 134:8-11; 221:16-222:6; *see also Zwillinger v. Garfield Slope Housing Corp.*,

---

litigation report when discussing the absence of evidence of a benefit from IVC filter use.  Garcia Dep. at 232:15-233:-07.

US.113590859.02

1998 WL 623589, at *19-20 (E.D.N.Y. Aug. 17, 1998) (excluding expert testimony because the expert had insufficient information regarding plaintiff's medical history to offer relevant, scientific expert testimony).  Despite his view that the medical literature does not demonstrate the safety, effectiveness, or benefits of IVC filters, Dr. Garcia does not contend that Plaintiffs' doctors were not justified in implanting filters under the particular circumstances presented by each plaintiff.  *Id.* at 134:12-17.   He does not opine that the risks to the Plaintiffs of implanting the plaintiffs with filters outweighed the benefits the filters provided to the Plaintiffs, nor does he express an opinion on any other treatment decisions.  *Id.* at 154:2-4; 92:13-20.

In short, Dr. Garcia's litigation opinions condemning IVC filters as unproven contradict his own out-of-court activities, and are the product of no reliable methodology or the failure to apply a methodology with rigor. *Daubert* requires exclusion of his testimony.

## VII.   Dr. Garcia Not Qualified To Give Certain Opinions About Cook's Compliance With FDA Regulations

Dr. Garcia is an expert who may have knowledge and experience in a discreet field, but who attempts to opine on a variety of issues outside of his identified expertise.  A "district judge should assure himself, before admitting expert testimony, that the expert knows whereof he speaks." *Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 901 (7th Cir. 1994).  The Court's focus is not whether the expert is qualified in general but on whether the expert's qualifications provide sufficient foundation for an opinion on a particular topic. *Gayton v. McCoy*, 593 F.3d 610, 617-18 (7th Cir. 2010).  The Court must look individually at each of the expert's conclusions and determine whether the expert has adequate education, skill, and training to reach that conclusion.  *Id.* at 617; *see also Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002) (stating that a surgeon "would be competent to testify that the cancer was too advanced for surgery, but [that] in offering the additional and critical judgment that the

15

radiologist should have discovered the cancer sooner he would be, at best, just parroting the opinion of an expert in radiology").

Consistent with this, courts exclude expert testimony where the expert's conclusions are rooted in knowledge and training that the expert does not have. *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 723-24 (7th Cir. 1999) (finding expert unqualified to testify regarding issues of toxicity where he was neither a medical doctor nor a toxicologist). Here, although Dr. Garcia's experience as a hematologist and professor of hematology may qualify him to offer certain opinions, he is not qualified to give the opinions he would offer here concerning FDA 510(k) clearance of the Celect and Tulip about IVC filters or about the instructions and warnings that accompany those filters.

### A.    Dr. Garcia is Not Qualified to Opine Whether Cook Satisfied FDA Clearance Requirements for the Cook Tulip and Celect Filters

Dr. Garcia contends that deficiencies he sees in three studies should have precluded an FDA determination of substantial equivalence between the Tulip and Celect as required for 510(k) clearance.[4] *See, e.g.,* Garcia Rpt. at 15 ███████████████████ ███████████████████████████████ Dr. Garcia, however, has no training, experience, or expertise that qualifies him to opine whether Cook performed studies sufficient to satisfy regulatory requirements of safety and efficacy, and/or that studies submitted

---

[4] As outlined in section three, these opinions are not relevant to either Hill or Gage. Dr. Garcia spends several pages of his report discussing the lack of evidence of efficacy of IVC filters discussing flaws in Cook's clinical studies on the Tulip and the Celect. *See, e.g.,* Garcia Rpt. at 12-20.  He, however, does not relate any of his opinions about the findings of these studies, or his opinions about the flaws in these studies, to Plaintiffs Hill or Gage. ████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ Allowing Dr. Garcia to testify about whether or not Cook studies had design flaws, when he is not connecting anything about these opinions to Hill or Gage, would be contrary to Rule 702's requirement that expert testimony have valid connection between the expert's testimony and the pertinent inquiry before the court as a precondition to admissibility.

to the FDA were sufficient to the FDA to receive 510(k) clearance.[5] He has no education, formal or informal, that pertains to FDA regulations, practices, procedures, or guidelines. Garcia Dep. at 42:23-43:01. Dr. Garcia has never worked with the FDA to submit a medical device for clearance, *id.* at 43:4, and has never designed a study to evaluate the efficacy of a medical device. *Id.* at 43:10-13. His only experience with any FDA approval process is sitting on a single mock FDA advisory panel for a pharmaceutical company. *Id.* at 251:7-25. Based on this lack of training or experience, Dr. Garcia is not an expert regarding any aspect of the FDA, a fact that he concedes. *Id.* at 251:22-24.

More critically here, Dr. Garcia concedes that he lacks any experience, real or mock, with the FDA approval process for medical devices. *Id.* at 251:8-252:9. Dr. Garcia had never heard of the FDA 510(k) approval process prior to this case. *Id.* at 252:6-14. When presented with the opportunity to learn more about approval process for the Tulip and Celect, Dr. Garcia declined to review Cook's entire FDA submission file for either filter. *Id.* at 261:14-18. At most, he has only seen "snippets" of the FDA files for the Tulip filter. *Id.* When viewed as a whole, nothing in Dr. Garcia's abbreviated role as a pharmaceutical consultant or his ancillary exposure to the FDA in the course of this litigation suggests that he is qualified to opine whether the Smouse, Hoppe, or Lyon studies sufficiently demonstrated substantial equivalence between the Tulip and Celect for 510(k) approval.

### B. Dr. Garcia is Not Qualified to Opine Whether Cook Satisfied FDA Labeling Requirements for the Cook Tulip and Celect Instructions for Use

Similarly, Dr. Garcia lacks the necessary training or experience with medical device instructions for use to qualify him to offer any opinion regarding the sufficiency of the

---

[5] Whether and to what extent Cook's 510(k) submissions to the FDA are relevant and admissible at all presents a different and broader question that Cook addresses elsewhere. Assuming that such evidence were relevant and admissible, however, Dr. Garcia is not qualified to offer it.

information they provide.  First, Dr. Garcia admits in his deposition that he does not place filters, has never seen a Cook filter, and has never seen the IFU for a Celect or Tulip outside of the context of litigation.  Garcia Dep. at 81:14-81:15; 86:01-86:03; 86:10-86:12; 240:05-240:14. Moreover, Dr. Garcia admitted that he has no specialized training or experience that would somehow render him qualified to discuss the adequacy of Cook's warnings with the jury, despite this admitted lack of familiarity with the IFUs themselves in his work as a hematologist. Specifically, Dr. Garcia testified he has had no training on how to draft warnings or instructions for medical devices and no training or education on the regulations applicable to instructions.  *Id.* at 239: 11-16.  He has no experience in drafting instructions for use, *id.* at 238: 14-16, and he has never been employed by a company that drafts instructions for use. *Id.* at 238: 17-19.  He has never been through the FDA approval process for a medical device, let alone for the accompanying instructions for use.  *Id.* at 238:20-22.  He has never been retained to consult on the warnings or instructions accompanying a medical device or otherwise. *Id.* at 240:2-3.  As noted above, Dr. Garcia possesses no education or training whatever regarding the FDA or any of its regulations, practices, procedures, or guidelines.  *Id.* at 43:1; 239:1-3.

Dr. Garcia's mere licensure as a physician, when he has testified he does not use or review Cook filter IFUs in his everday practice, is not sufficient to qualify him as an expert on this topic.  *See, e.g., Hall v. Flannery*, 840 F.3d 922, 930 (7th Cir. 2016) (holding expert physician possessing knowledge about surgery, pediatrics, and neurology nevertheless lacked specialized knowledge of cardiology and was not qualified to opine about heart-related issues); *Cunningham v. Masterwear, Inc.*, 2007 WL 1164832, *9 (S.D. Ind. 2007) (holding doctor's experience in diagnosing and treating asthma did not qualify doctor to opine whether plaintiff's asthma was attributable to PCE exposure); *see also Rheinfrank v. Abbott Labs., Inc.*, 680 F.

App'x 369, 375–76 (6th Cir. 2017) (holding a neurologist, geneticist, and epidemiologist were unqualified to opine on compliance with FDA warning label regulations).

In light of Dr. Garcia's demonstrable lack of expertise concerning (1) the FDA, its procedures, guidelines, and regulations, and (2) instructions for use for medical devices, the Court should exclude his proposed testimony on those issues.

### C.    Dr. Garcia Lacks the Expertise to Opine Whether Clot Trapping Studies Demonstrate the Safety and Efficacy of IVC Filters

Similarly, Dr. Garcia lacks the necessary training, education, or experience with engineering to qualify him to offer any opinion regarding the ability of IVC filters to trap clots. Dr. Garcia's report baldy asserts that "[a]ny theoretical benefit of IVC filters for patients cannot be established using the results of *ex vivo* experiments that show what percent of clots of a certain size are trapped by the device" and that "[t]here is no high-quality evidence to establish the minimum clinically relevant clot size in any particular patient."  Garcia Rpt. at 12.  But Dr. Garcia possesses no education or experience that qualifies him to make these assertions.  To begin with, Dr. Garcia is not a biomedical engineer nor does he hold any advanced degree in engineering. Garcia Dep. at 42:4-19.  He also lacks formal training or education concerning any type of engineering.  *Id.*  When asked whether he was offering any specific design opinions concerning the ability of clot trapping studies to demonstrate which clots could and could not be trapped,   Dr. Garcia explicitly disclaimed doing so.  Garcia Dep. at 122:17-20.  The fact that Dr. Garcia possesses a medical degree does not permit him to opine on matters outside his discipline.  *See, e.g.*, *Hall*, 840 F.3d at 930.

Taking into consideration (1) Dr. Garcia's admitted lack of expertise concerning anything related to engineering, and (2) his position that he was not offering opinions about the ability of

clot trapping studies to demonstrate which clots could be caught, the Court should exclude his opinions on these matters.

**VIII.   Dr. Garcia Employed No Reliable Methodology to Support His Determination That the IVC Filters in Cook's Internal Documents Caused the Thrombotic Events.**

Even if Dr. Garcia's opinions regarding thrombogenicity of IVC filters were relevant to the Hill and Gage cases (which they are not) Dr. Garcia's opinion that 8 adverse event reports from Cook establish that Cook IVC filters cause thrombosis should be excluded as scientifically unsound. *See Kumho Tire Co. v. Carmichael*, 526 U.S. at 137.  The full extent of Dr. Garcia's methodology is nothing more than rendering bottom line conclusions based on his subjective beliefs without relying on data, employing reasoning, or utilizing the methods of his discipline. *See Lang v. Kohl's Food Stores, Inc.*, 217 F. 3d at 924 (holding that an expert's work will be admitted only to the extent that it is reasoned, uses the methods of the discipline, and is founded on data); *see also People's State Bank v. Stifel, Nicolaus, & Co.*, 2013 WL 1024917, at *4 (S.D. Ind. May 14, 2013).  The deficiencies in Dr. Garcia's methodology are apparent in the following colloquy:

> Q.   Did you employ a differential diagnosis in reviewing these complaints?
> A.   Well, no, I—as I said, these complaints were confirmed by me to be ones where I didn't think there was a whole lot of differential diagnostic possibility. It was the filter and that was about it.
> Q.   So you didn't consider any other potential causes and rule out causes that were not the filter for these thrombotic events.
> A.   No, the cases were chosen to be ones where I didn't think that was needed.
> Q.   So you didn't consider any other potential causes for the thrombotic events in these eight complaints other than the filter?
> A.   I didn't think any were—well, I mean, I considered that such a thing was possible, that the thrombus may have happened independent of the filter, but in all of these cases because of timing and the nature of events, it was implausible to me that anything else could have caused the clot beside the filter.

Garcia Dep. at 194:16-195:10.  An expert must explain the methodologies and principles supporting his or her opinion. *Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010) (to be admissible under Rule 702, the expert's opinion must offer more than a bottom line).  An expert's simple statement of what he thinks, like Dr. Garcia's here, does not constitute employing a methodology, and it is not a reliable basis for an expert opinion.  "Talking off the cuff—deploying neither data nor analysis—is not an acceptable methodology." *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d at 924 (citing *McMahon v. Bunn-O-Matic Corp.*, 150 F.3d 651, 657-58 (7th Cir. 1998) and *Mid-State Fertilizer Co. v. Exchange National Bank*, 877 F.2d 1333, 1339 (7th Cir. 1989)).

Typically, a doctor employing a differential etiology or diagnosis (1) *systematically rules in* all potential causes of a patient's ailment, (2) *systematically rules out* causes that would not apply to the patient, thus permitting the physician to (3) arrive at the likely cause of the ailment. *See Myers v. Illinois Central R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010).  Dr. Garcia failed to follow this procedure; by his own admission, he neither looked at all of the potential causes of the thrombotic events nor systematically ruled out the causes not associated with the filters. Garcia Dep. at 195:2-4.

Dr. Garcia's approach to the eight Cook complaints on which he bases his thrombosis causation opinion demonstrates these analytical gaps in his method.  For example, when considering the cause of the thrombotic event in complaint 77058, Dr. Garcia relied on the following statements in the complaint to conclude that the patient's pulmonary embolism was caused by the IVC filter:

███████████████████████████████████████████████
███████████████████████████████████████████████████
████████████████████████████████████████

21

████████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████ Dr.
Garcia concedes, however, that he did not consider other factors that he admits were potential causes of the clot, including:

- ██████████████████████████████████████
  ███████████████████████████████████████
  ██████████████████

- ██████████████████████████████████████
  ██████████████████

- ███████████████████████████████████
  ███████████████████████████████
  █████████████████████████████████
  ██████████████████████████████████████
  ████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████ Yet the differential diagnosis required him to do so.

The same flawed methodology is evidence in Dr. Garcia's conclusion that ██████████

█████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████

US.113590859.02

 Again, this is not a methodology, it is simply a statement of a conclusion.

Dr. Garcia's methodology for evaluating the Cook complaints can be summarized by the following exchange:

*Daubert* requires exclusion of opinions that do not employ a reliable methodology. "A supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are reliable and relevant." *Clark v. Takata Corp.*, 192 F.3d 750, 759 n.5 (7th Cir. 1999). Because Dr. Garcia's methodology amounts to no more than bottom line conclusions based on his subjective judgment, the Court should bar him from testifying that IVC filters are thrombogenic or that they increase the risk of thrombosis. *See* Garcia Rpt. at 5.

## IX.   Dr. Garcia's Proposed Expert Testimony About Internal Company Emails Is Not Expert Testimony And Should Be Excluded

On pages 12 and 13 of Dr. Garcia's report, Dr. Garcia simply "reproduces" out of context statements made by internal Cook employees in company documents and purports to call this expert testimony.  It is not and should therefore be excluded.

23

Under Rule 702, a witness qualified as an expert may offer an opinion if his or her "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).  When Dr. Garcia was asked if he relied on any part of his work as a hematologist professor or his clinical experience to interpret the Cook company statements cited on pages 12-13 of his report, Dr. Garcia stated, "just reading English as an educated layperson would have allowed me to draw the same conclusions." Garcia Dep. at 255: 3-10.  In other words, his own testimony establishes the inadmissibility of these "opinions."

The Seventh Circuit has consistently held that an expert must testify to something more than what is 'obvious to the layperson' in order to be of any particular assistance to the jury. *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001); *Ancho v. Pentek Corp.*, 157 F.3d 512, 519 (7th Cir. 1998).  Dr. Garcia admits that he has not used scientific, technical, or specialized knowledge to render his opinions and specifically notes that a layperson could draw the same conclusions.

If Dr. Garcia is allowed walk the jury through these cherry-picked Cook company statements, the jury naturally could presume his expertise offers special insights they don't have.  *See, e.g., Baldonado v. Wyeth*, 2012 WL 1802066, at *4 (N.D. Ill. May 17, 2012) (finding that "allowing an expert to provide summary testimony 'based on nothing more than [the expert's] review of certain discovery materials could give the jury the impression that he did something more than simply review the materials, which the jury can do itself.'"); *see also United States v. Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996) ("Unless the expertise adds something, the expert is at best offering a gratuitous opinion, and at worst is exerting undue influence on the jury that would be subject to control under Rule 403.").

US.113590859.02

Courts therefore routinely exclude the very sort of testimony that plaintiffs proffer from Dr. Garcia here—*i.e.*, experts who plan to "merely read, selectively quote from, or 'regurgitate' the evidence." *Id.; see also Ocasio v. C.R. Bard, Inc.*, 2015 WL 2062611, at *4 (M.D. Fla. May 4, 2015) (expert's testimony that summarized defendant's documents was improper, stating that, "regardless of the accuracy of [the expert's] characterization, however, such testimony must be excluded because 'an expert cannot be presented to the jury [ ] for the purpose of constructing a factual narrative based upon record evidence.'"); *Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1330 (M.D. Fla. 2015) (excluding an engineering expert's opinions that offered "plaintiff-slanted summaries of [manufacturer] documents," stating that it would "not permit [the expert] to testify 'to simple inferences drawn from uncomplicated facts that serve only to buttress plaintiff's theory of the case.'"); *In re Zimmer NexGen Knee Implant Products Liab. Litig.*, 2015 WL 5145546, at *12 (N.D. Ill. Aug. 31, 2015) (excluding expert testimony which "simply summarize[d] internal [manufacturer] documents regarding post-market surveillance"). The same result should occur here.

## CONCLUSION

For the reasons stated above, the Cook Defendants urge the Court to grant their motion and to bar from the trial in this action the testimony of Plaintiffs' expert Dr. David Garcia.

US.113590859.02

Respectfully submitted,

Dated: August 9, 2017

/s/ *J. Stephen Bennett*

J. Joseph Tanner (# 11856-49)
Andrea Roberts Pierson (# 18435-49)
John T. Schlafer (# 28771-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone: (317) 237-0300
Facsimile:  (317) 237-1000
E-mail:   joe.tanner@faegrebd.com
E-Mail:  andrea.pierson@faegrebd.com
E-Mail:  john.schlafer@faegrebd.com

James Stephen Bennett (# 22869-02)
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana  46802
Telephone: (260) 424-8000
Facsimile: (260) 460-1700
stephen.bennett@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

26

**CERTIFICATE OF SERVICE**

I hereby certify that on August 9, 2017, a copy of the foregoing **COOK DEFENDANTS' MOTION TO EXCLUDE EXPERT OPINIONS OF DR. DAVID GARCIA** was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.  Lead Counsel for Defendants will serve any non-CM/ECF registered parties.

/s/ J. Stephen Bennett

US.113590859.02