IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND                    Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION                                          MDL No. 2570

_____

This Document Relates to the Following Actions only:

    Elizabeth Jane Hill
    No. 1:14-cv-06016-RLY-TAB

    Arthur Gage
    No. 1:13-cv-01875-RLY-TAB

_____

**COOK DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION
TO EXCLUDE EXPERT OPINIONS OF DR. REBECCA BETENSKY**

Defendants Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS (collectively "the Cook Defendants") move this Court under Federal Rules of Evidence 403 and 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) to exclude at trial the portion of the proposed testimony of Plaintiffs' expert Dr. Rebecca Betensky concerning odds ratios for Celect and Tulip filters concerning perforation, penetration, and puncture.

    **I.**    **Dr. Betensky's Opinions**

Dr. Rebecca Betensky is a Professor of Biostatistics at Harvard.  Ex. A, Expert Report of Rebecca Betensky, Ph.D. (hereinafter "Betensky Rpt."), at 14.  Her work consisted mainly of calculating odds ratios (ORs) for perforation, penetration, and puncture for the Cook Celect filter versus the Cook Tulip filter.  *Id.* at 1-3.  In simple terms, an "odds ratio" compares the incidence

of event A to the incidence of event B and expresses the result as a ratio. As applied to this case, Dr. Betensky took the reported incidence of perforation with the Celect filter over a given time period and compared it to the reported incidence of perforation with the Tulip filter over the same time period.  For example, if the Celect filter had a reported incidence of perforation of 0.06% over a given time period, and the Tulip had a reported incidence of perforation of 0.02% over the same time period, the odds ratio would be 3 (0.06 divided by 0.02).  Dr. Betensky calculated the odds ratios by looking at portions of Cook's records of complaints of various complications and Cook's sales records for the two devices in question and then performed simple division to produce a ratio. She also used a computer program to calculate "p values" and "confidence intervals" for each of the ratios that she calculated; generally speaking, those are statistical measures of the validity of the ratios, and they are not at issue in this motion.

   As relevant to the present motion, Dr. Betensky reports . *Id*. at 3-7.  For most of her comparisons, Dr. Betensky's odds ratios ▇▇▇▇, *see id.*, meaning that ▇▇▇▇▇

   An odds ratio, standing alone, may demonstrate *correlation*, but it does not demonstrate *causation*, and it is crucial to remember that "correlation is not the equivalent of *causation*." *Davis v. Time Warner Cable of Southeastern Wisconsin, L.P.*, 651 F.3d 664, 677 (7th Cir. 2011) (emphasis added).  For example, the incidence of cancer in City A may be 3% and the incidence in City B may be 2% (*i.e.*, the odds ratio is 1.5), but that does not necessarily mean that living in City A *causes* a higher risk of cancer.  *See* Ex. B, Deposition of Rebecca Betensky, Ph.D., April

21, 2017 (hereinafter "Betensky Dep."), at 182:19-183:5.  To establish causation (also called "causality"), you would need to rule out other potential causes of the disparity in cancer rates (statisticians call these alternative causes "confounders").  *Id.* at 183:6-185:13. Perhaps the people in City A have a greater genetic predisposition to cancer than those in City B, or perhaps preventative care is better in City B than in City A.  If one cannot control for those confounders, one cannot claim a causal link between living in City A and having a higher risk of developing cancer.  *Id.*

Dr. Betensky acknowledged that she did not consider any factors (confounders) that might have affected the disparity between Celect and Tulip in the number of perforations, penetrations, or punctures, such as physician experience, patient age, medical indications for filter use, contraindications for anticoagulant drugs, surgeon-related factors, and patient-specific factors.  *See* Betensky Dep. at 202:9-203:5.  And because of that, she conceded at her deposition that the ORs she had calculated did not and could not establish causation—that is, the ORs could not establish that the Celect *caused* more perforations than the Tulip—and that anyone using her data to establish causation would be misusing the data:



## II. Legal Standard for Admission of Expert Testimony.

The Seventh Circuit has set forth a three-step analysis in its application of the *Daubert* standard: (1) the witness must be qualified as an expert by knowledge, skill, experience, training,

3

or education; (2) the expert's reasoning or methodology underlying the testimony must be scientifically reliable; and (3) the testimony must assist the trier of fact to understand evidence or to determine a fact in issue. *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007). The party proffering the expert must show these factors by a "preponderance of proof." *United States v. Allen*, 207 F.Supp.2d 856, 869 (N.D. Ind. 2002).

Here, Cook does not dispute Dr. Betensky's qualifications as a biostatistician. However, Dr. Betensky's methodology for calculating ORs for Celect and Tulip filters is not reliable, in particular her dependence (1) on incomplete data hand-picked by Plaintiffs' attorneys and (2) on adverse-event reports and case reports of unproven reliability. And Dr. Betensky's testimony would not be helpful to the jury because it does not "fit" the facts of the case. On the contrary, admission of the testimony could only mislead the jury and unfairly prejudice Cook. The only reason that Plaintiffs would offer Dr. Betensky's testimony about the Celect/Tulip ORs would be to suggest causation (*i.e.*, to suggest that the Celect causes more perforations than the Tulip), but Dr. Betensky herself testified that her ORs *cannot* and *should not* be used for that purpose.

Thus, the Court should exclude Dr. Betensky's testimony concerning ORs comparing Celect and Tulip filters.

### III. Dr. Betensky does not employ a reliable methodology in calculating ORs for Celect and Tulip IVC Filters.

The Court should exclude Dr. Betensky's testimony concerning the Celect/Tulip ORs because her methodology is unreliable in two ways: it accepts without hesitation or verification the data hand-picked by Plaintiffs' attorneys, and it rests on unreliable and unverifiable adverse-event reports and case reports.

4

### A. Dr. Betensky's reliance on unverified materials selected by a party is not a reliable methodology.

Dr. Betensky's opinions are unreliable because the data underlying her opinions was cherry-picked by Plaintiffs' counsel, and Dr. Betensky did nothing to independently verify the data before performing her analysis. Dr. Betensky acknowledged in her deposition that Plaintiffs' attorneys provided all the materials she relied on. Betensky Dep. at 54:16-20.[1] Although Plaintiffs' attorneys had access to Cook's entire database of over 2700 case files, they elected to give Dr. Betensky only pieces of that data, and she had no clue of what she was missing:

> Q. Now you didn't review Cook's entire complaint database, correct?
> A. Correct.
> Q. Okay. You were given pieces of it, correct?
> A. Actually, I can't even speak to what I was given versus what I wasn't given. I was certainly given some pieces of it. I don't know what that represents.

Betensky Dep. at 55:5-14. Such cherry-picked data, particularly when the picking was done by an interested party, undermines any finding that the analysis of that data is reliable. *See, e.g., Fail-Safe, L.L.C. v. A.O. Smith Corp.*, 744 F. Supp. 2d 870, 889 (E.D. Wis. 2010) (noting that expert's cherry-picking of data provided "another strong reason to conclude that the witness utilized an unreliable methodology").

In addition, Dr. Betensky did nothing to verify that the reports of perforations, penetrations, and punctures—the very core of her testimony—actually involved *real* perforations, penetrations, and punctures:

███████████████████████████████████████

---

[1] It appears from the deposition testimony of Dr. David Kessler, another of Plaintiffs' retained experts, that he actually selected these materials and then used Plaintiffs' attorneys as a conduit to get them to Dr. Betensky. *See* Ex. C, Deposition of David A. Kessler, M.D., J.D., June 30-July 1, 2017 (hereinafter "Kessler Dep.") at 448:22-449:24.

5

██    ████████████████████████

████████████████

Many courts, including this one, have excluded expert opinion testimony as unreliable when the expert's opinion comes from data provided by counsel that the expert failed to independently verify. *See, e.g.*, *State Farm Fire & Cas. Co. v. Electrolux Home Prod., Inc.*, 980 F. Supp. 2d 1031, 1039, 1049 (N.D. Ind. 2013) (adopting Magistrate Judge's recommendation that expert's statistical analysis was unreliable because she relied on data provided to her by a party and "did nothing to independently verify the reliability of this information before she used it in her calculations."); *Higgins v. Koch Dev. Corp.*, No. 3:11-CV-81-RLY-WGH, 2013 WL 6238650, at *5 (S.D. Ind. Dec. 3, 2013) (holding expert lacked sufficient foundation to testify because he failed to "independently verify" medication cost data provided to him by counsel); *King-Indiana Forge, Inc. v. Millennium Forge, Inc.*, No. 1:07-CV-00341-SEB-DM, 2009 WL 3187685, at *2 (S.D. Ind. Sept. 29, 2009) ("when an expert relies upon information given to him by a party or counsel, he must independently verify that information before utilizing it in his calculations.").

      **B.**      **Dr. Betensky's reliance on case reports and adverse-event reports is not a reliable methodology.**

Dr. Betensky's anticipated testimony also rests on unreliable methodology because her analysis relies almost entirely on a collection of adverse-event reports and case reports. *See* Betensky Rpt. at 1 ████████████████████████████████████████████████ ████████████████████████████; *id.* at 49-51 (showing that Dr. Betensky's "reliance materials" are comprised almost entirely of adverse-event reports); Betensky Dep. at 54:16-20.

Adverse-event reports and case studies may be useful for an overview of how products are doing and to flag issues that may require additional investigation. Indeed, Dr. Betensky

6

herself noted that her results merely suggested issues that "needed investigation." Betensky Dep. at 205:9-11. Such reports *cannot*, however, form a scientifically reliable basis for expert conclusions, including conclusions related to causation. *See, e.g.*, *Ervin v. Johnson & Johnson, Inc.*, No. 2:04CV0205-JDT-WGH, 2006 WL 1529582, at *6 (S.D. Ind. May 30, 2006), *aff'd,* 492 F.3d 901 (7th Cir. 2007) ("Courts should treat with caution those expert opinions based on case reports."); *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 885 (10th Cir. 2005) ("Case reports that state that some women with breast implants developed disease do not provide an adequate scientific basis from which to conclude that breast implants in fact cause disease."); *Rider v. Sandoz Pharm. Corp.*, 295 F.3d 1194, 1199 (11th Cir. 2002) ("courts must consider that case reports are merely accounts of medical events. They reflect only reported data, not scientific methodology. . . . the district court carefully considered the case reports and properly concluded that the case reports did not by themselves provide reliable proof of causation."); *Lennon v. Norfolk & W. Ry. Co.*, 123 F. Supp. 2d 1143, 1152 (N.D. Ind. 2000) ("case reports are not a scientifically reliable basis for a causation opinion."); *Hall v. Baxter Healthcare Corp.*, 947 F. Supp. 1387, 1411 (D. Or. 1996) ("case reports and case studies are universally regarded as an insufficient scientific basis for a conclusion regarding causation because case reports lack controls.").

      The reasoning used in each of these cases applies with equal force here, and the Court should exclude Dr. Betensky's testimony about Celect/Tulip ORs because it rests on an unreliable methodology.

US.111223735.08

### IV.     Dr. Betensky testimony concerning Celect/Tulip ORs would mislead rather than assist the jury.

The Court should also exclude Dr. Betensky's testimony about Celect/Tulip ORs because that testimony is not relevant to these Plaintiffs' claims, and would in fact mislead the jury by implying that the Celect/Tulip ORs imply causation, the very conclusion that Dr. Betensky testified her ORs do ***not*** support.

#### A.     Dr. Betensky admitted that she cannot establish causation through her calculation of Celect/Tulip ORs because she cannot account for confounding factors.

Dr. Betensky admitted during her deposition that her analysis of the case reports provided by Plaintiffs' counsel did not permit her to establish causation, and that anyone using her data to establish causation would be misusing the data:



One of the primary reasons that Dr. Betensky's data do not permit her to establish causation is that the data provided by Plaintiffs' attorneys is insufficient for her to identify or account for confounding factors that might affect the number of perforations for Celect or Tulip filters, and thus alter the odds ratios between them. Dr. Betensky therefore admitted that her

---

[2] Dr. Betensky also acknowledged that she would not be willing to state in front of a group of peers that her calculations demonstrated that the design of the Celect caused a higher incidence of perforation than the design of the Tulip. *See* Betensky Dep. at 190:22-191:7. This unwillingness to subject any causation opinion to peer scrutiny confirms her stated view that such an opinion would not represent good science. *See, e.g.*, *Porter v. Whitehall Labs., Inc.*, 9 F.3d 607, 613 n.5 (7th Cir. 1993) ("submission to the scrutiny of the scientific community is a component of 'good science'") (quoting *Daubert*, 509 U.S. 579, 593 (1993)).

analysis does not account or control for such factors as physician experience, patient age, medical indications for filter use, contraindications for anticoagulant drugs, hospital- and surgeon-related factors, and patient-specific factors, to name a few. *See* Betensky Dep. at 194:15-195:3, 202:9-203:5. The case reports and adverse-event reports Plaintiffs' attorneys provided to Dr. Betensky as data sources simply do not contain the information needed to control for confounders, precluding her from establishing causation.

This failure to account for alternative causes—confounders—is one of the primary reasons courts consider causation opinions based on case reports to be unreliable. *See, e.g.*, *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 989–90 (8th Cir. 2001) ("Case reports make little attempt to screen out alternative causes for a patient's condition. They frequently lack analysis. And they often omit relevant facts about the patient's condition. Hence, causal attribution based on case studies must be regarded with caution.") (internal punctuation omitted); *In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396, 451 (S.D.N.Y. 2016) ("Case reports are generally disfavored by courts as evidence of causation because they merely describe reported phenomena without comparison to the rate at which the phenomena occur in the general population or in a defined control group; they do not isolate and exclude potentially alternative causes; and they do not investigate or explain the mechanism of causation.") (internal quotes and punctuation omitted); *Casey v. Ohio Med. Prod.*, 877 F. Supp. 1380, 1385 (N.D. Cal. 1995) (same).

### B. Even though Dr. Betensky admits she cannot establish causation through her Celect/Tulip ORs, any testimony about those ORs will inevitably and improperly suggest such causation.

Given Dr. Betensky's admission that her calculations do not permit her to form any opinion about causation, Cook assumes that Dr. Betensky will stay true to her word and will not

offer any opinion about causation at trial.  But that is just the problem:  Even though Dr. Betensky will not testify that her Celect/Tulip ORs permit a conclusion about causation, the only possible purpose for Plaintiffs to offer Dr. Betensky's testimony about the Celect/Tulip ORs *at all* would be to suggest causation, or to permit another expert to do so.

Any testimony that (for example) a particular source identified ▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ will unavoidably suggest to a juror that something inherent in the design of the Celect filter *causes* it ▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬.  This inference is certainly a natural layperson's reaction to such a statistic, and any one of us might have the same reaction.  But it is just certainly a *false* inference; as Dr. Betensky herself confirms, any use of her ORs to try to establish causation is a misuse of her conclusions.  Betensky Dep. at 204:21-205:8.

Plaintiffs clearly *intend* for jurors to draw this false inference from Dr. Betensky's testimony concerning the Celect/Tulip ORs:  Plaintiffs have no reason to offer the ORs testimony *other than* to imply that the Celect design is more likely to cause perforations than the Tulip design.  Dr. Betensky's testimony comparing the respective perforation odds of the Celect and Tulip filters has no independent relevance to the claims in either *Hill* or *Gage*.  The relative incidence of adverse events between the two filters is relevant only if the differential is *caused by* the design of the Celect filter. Thus, Dr. Betensky's testimony is relevant—that is, the testimony tends to make a fact of consequence to the action more likely—*only* if jurors misinterpret the testimony as evidence of causation.  Here, admission of the Celect/Tulip ORs statistics would invite the jury to believe something that Dr. Betensky herself says that the jury should not believe.  That is obviously not helpful to the jury.  *See Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007) (for expert testimony to be admissible it "must assist the

10

trier of fact to understand the evidence or to determine a fact in issue.") (citing Fed. R. Evid. 702).

### C. The unfair prejudicial effect of Dr. Betensky's testimony concerning Celect/Tulip ORs requires its exclusion.

Beyond the invitation to construe the Celect/Tulip ORs testimony as something that its own proponent says it is not—which is highly prejudicial on its own—several other factors compel the conclusion that any arguable probative value of such testimony is overwhelmingly outweighed by its unfair prejudicial effect on Cook and by the danger of jury confusion. *See* Fed. R. Evid. 403; *United States v. Sinclair*, 74 F.3d 753, 757–58 (7th Cir. 1996) (*Daubert* "does not relieve courts of the obligation to evaluate expert testimony under Rule 403.").

As discussed above, Dr. Betensky's testimony about the Celect/Tulip ORs only has "probative value" if the jury improperly inferred from the testimony that the design of the Celect IVC filter causes harm. Cook submits that where the only probative value is an improper inference, there is no probative value at all.

On the other side of the Rule 403 scale, permitting Dr. Betensky to testify to her Celect/Tulip ORs presents a number of very real and serious risks of unfair prejudice. First, for the reasons detailed above, her testimony would almost certainly mislead or at least confuse the jury on the issue of causation. Dr. Betensky's analysis shows at most an association or correlation, and courts have excluded evidence that tries to imply causation based on mere correlation or association. *See, e.g.*, *Davis*, 651 F.3d at 677 (noting that "correlation is not the equivalent of causation" and holding that without more than a temporal connection between two events, "a rational jury would be hard-pressed to connect the two");

11

Dr. Betensky's considerable credentials as a biostatistician increase the risk that the jury will improperly interpret her testimony as supporting causation.  As a former judge of this Court has observed:

> To the extent that such an opinion might be minimally probative, its prejudicial effect—reliance on the expert's stature instead of intrinsic probative value of evidence—will outweigh the minimal probative effect the evidence may have.  In a highly technical case like this, where a lay trier of fact cannot possibly determine the precise etiology of the injury without guidance from expert opinions, there is a risk that the jury would make an irrational finding of causation based upon the siren-like allure of opinions stated by highly qualified experts.

*Porter v. Whitehall Labs., Inc.*, 791 F. Supp. 1335, 1345 (S.D. Ind. 1992) (Tinder, J.), *aff'd,* 9 F.3d 607 (7th Cir. 1993) (internal reference omitted).  The same concerns apply here.  Like the expert in *Porter*, the limited probative value attached to Dr. Betensky's opinions is substantially outweighed by the risk that the jury will be misled by her credentials and make an irrational finding of causation.

Two other features of Dr. Betensky's Celect/Tulip ORs testimony threaten to confuse and mislead the jury.  First, the ORs that Dr. Betensky generates, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, create the impression of a significant number of actual, real world perforations.  But Dr. Betensky's ORs disguise the real number of perforations at issue here, which is extraordinarily tiny.  Take Dr. Betensky's OR of ▮▮▮▮▮▮▮▮▮▮.  *See* Betensky Rpt. at 5, 7.  Although Dr. Betensky correctly concludes that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  The ratios are thus seriously misleading, and plainly seek to generate jury alarm over a miniscule number of actual events.  A

person is almost seven times more likely to die from heat exposure than from a dog bite, but both are extraordinarily unlikely (0.00602% versus 0.00088%).[3]

Dr. Betensky's Celect/Tulip ORs testimony also threatens to confuse and mislead the jury because of its intentionally and excessively narrow focus. As Dr. Betensky's report notes, ▮

▮

▮ Betensky Rpt. at 3. In choosing this narrow window of inquiry, Plaintiffs carefully crafted Dr. Betensky's task to identify *only* the Celect/Tulip Odds Ratios for a single possible risk of IVC filters: perforation. Her task was designed *not* to calculate how Celect and Tulip compared with respect to other known risks of IVC filters (e.g., tilt, migration, hematoma, etc.) or to overall risk, which is likely the most important factor for most doctors and patients. Thus, assuming *arguendo* that Dr. Betensky's Celect/Tulip OR calculations could be useful at all, Plaintiffs have consciously sabotaged that usefulness by putting blinders on Dr. Betensky and forcing her to restrict her testimony to a very narrow slice of a full Celect/Tulip comparison that favors the narrative that Plaintiffs want to present. The limitation of Dr. Betensky's calculations to perforation, penetration, and puncture will mislead the jury.

These are not flaws or false impressions that can be cured through mere cross examination. All of these issues, and most of all the almost certain false inference of causation, are fundamental problems that undermine the proper role of the expert, and they can only be addressed through exclusion of the testimony.

---

[3] *Injury Facts Chart*, NATIONAL SAFETY COUNCIL, http://www.nsc.org/learn/safety-knowledge/Pages/injury-facts-chart.aspx (last visited Aug. 9, 2017).

13

## CONCLUSION

The Court should bar from trial the testimony of Plaintiffs' expert Dr. Rebecca Betensky concerning her calculation of ORs between Celect and Tulip filters concerning perforation, penetration, and puncture.

Respectfully submitted,

Dated: August 9, 2017

/s/ *J. Joseph Tanner*
J. Joseph Tanner (# 11856-49)
Andrea Roberts Pierson (# 18435-49)
John T. Schlafer (# 28771-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone: (317) 237-0300
Facsimile:  (317) 237-1000
E-Mail:  joe.tanner@faegrebd.com
E-Mail:  andrea.pierson@faegrebd.com
E-Mail:  john.schlafer@faegrebd.com

James Stephen Bennett (# 22869-02)
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana  46802
Telephone: (260) 424-8000
Facsimile: (260) 460-1700
stephen.bennett@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

US.111223735.08

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2017, a copy of the foregoing **COOK DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE EXPERT OPINIONS OF DR. REBECCA BETENSKY** was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.  Lead Counsel for Defendants will serve any non-CM/ECF registered parties.

/s/ J. Joseph Tanner

US.111223735.08