UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND              Case   No.   1:14-ml-
2570-RLY-TAB PRODUCTS LIABILITY LITIGATION   MDL No. 2570
_____

This Document Relates to:

    Civil Action No.: 1:15-cv-00764-RLY-TAB
_____

### PLAINTIFF'S MOTION TO ALTER, AMEND OR FOR RELIEF FROM THE COURTS ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY  JUDGMENT

**COMES NOW**, Plaintiff Valerie Graham, by and through her undersigned

counsel, and respectfully moves this Court under Rules 59(e) and 60(b) of the

Federal Rules of Civil Procedure to alter, amend or for relief from the judgment

entered on 8/2/17. (Document No. 5576). In support hereof Plaintiff states the

following:

Defendant filed its Motion for Summary Judgment (Document No. 70)

contending the Plaintiff's claim was time barred by the applicable statute of

limitations. Plaintiff served her response (Document No. 161) to which the

Defendant replied (Document No. 4991). This Court entered an Order granting

Defendants' Motion for Summary Judgment on 8/2/17 (Document No. 5576).

## I.     Authority

A litigant subject to an adverse judgment, and who seeks reconsideration by the district court of that adverse judgment, may "file either a motion to alter or amend the judgment pursuant to Fed.R.Civ.P. 59(e) or a motion seeking relief from the judgment pursuant to Fed.R.Civ.P. 60(b). *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991).

Rule 59(e) provides a basis for relief, as here, a party challenges the Court's application of the law to the facts of the case. See *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174–76 (1989) (concluding that Rule 59(e) was intended to apply to the reconsideration of matters encompassed within the merits of a judgment). Rule 59(e) "authorizes relief when a moving party 'clearly establish[es] either a manifest error of law or fact' or 'present[s] newly discovered evidence.'" *Souter v. International Union*, 993 F.2d 595, 599 (7th Cir. 1993) (quoting *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986)). A Rule 59(e) motion may be used "to draw the district court's attention to a manifest error of law or fact or to newly discovered evidence." *United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010). A "manifest error" means "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000); see also *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)(a motion to reconsider is proper

only when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.").

## II.    The Motion For Summary Judgment Was Premature

The Plaintiff's cause of action arose in Kansas City and is governed by the Kansas Product Liability Act (the "KPLA"). As this Court cites in its Order, Pursuant to the KPLA, products liability claims are subject to a two-year statute of Limitation and shall begin to accrue "when the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until sometime after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party." K.S.A. § 60-513(b). The defendant's motion and the Court's Order require an evidentiary finding of when the Plaintiff was aware of facts and circumstances.

This matter was not selected as a "bellwether" case and, as such, no case specific discovery is permitted by Case Management Order. To properly inquire into the state of the Plaintiff's knowledge case specific discovery is a vital necessity.

The Defendant asserts the Statute of Limitations has expired pursuant to this statute. K.S.A. § 60-513(b) relies on a discovery standard for the Plaintiff. In

essence what the Defendant is attempting to prove, without taking the deposition of the Plaintiff, her physician(s) or any other relevant witness is what the Plaintiff knew, when then Plaintiff knew it, and how the interpersonal interactions which Plaintiff experienced with her medical care providers and/or others resulted in the requisite knowledge to trigger the beginning of a statute of limitation. This is a factual issue on multiple fronts. This Court cannot make this decision as a matter of law without the sworn testimony of the Plaintiff, her medical providers and other relevant witnesses.

In evaluating a motion for summary judgment, the Court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party. See *Estate of Cole v. Fromm*, 94 F.3d 254, 257 (7th Cir. 1996). Factual disputes that might affect the outcome of the suit in light of the substantive law will preclude summary judgment. See Anderson, 477 U.S. at 248; *JPM Inc. v. John Deere Indus. Equip. Co.*, 94 F.3d 270, 273 (7th Cir. 1996). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Adickes v. S. H. Kress & Co.*, 398 U.S. 158,159 (U.S. June 1, 1970).The judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. In entering its Order, the Court relied on the following:

On August 15, 2011, Graham saw Dr. James Harbrecht for "evaluation of recurring problems of abdominal discomfort which she attribute[d] to her IVC filter." (Filing No. 1053-12, Progress Notes).

On September 8, 2011, Dr. Karthik Vamanan attempted to retrieve the Celect filter because of "failure" and "migration." (Pl. Profile Form § IV). His effort was unsuccessful. (Id.).

The next day, Dr. Vamanan performed surgery through Graham's abdominal cavity to retrieve the filter. (Id.).

Graham attests that not only had the Celect filter migrated, but it also had perforated her vena cava and an organ, and had caused bleeding. (Id. § V; Filing No. 1053-13, Radiological Report at 1-2).

She was informed prior to the 2011 removal that "I would die if it wasn't removed." (Pl. Fact Sheet § II, ¶ 9(c)).

Graham describes her bodily injuries as "extreme pain over a period of approximately two years, major operations to remove the filter, major scarring, coded during operation, major depression, and I still currently have complications." (Id. § II, ¶ 10(a)). Graham states that she began experiencing these symptoms "[d]irectly after implantation of the device." (Id. § 11, ¶ 10(b))

She attributed her injuries to the Celect filter in June 2010, after Dr.
Michael Breezley "informed [her] that the filter had migrated and 'he
wouldn't touch it' and that it may be the cause of the pain." (Id. § II,
¶ 10(c))

The above scenarios do not, taken alone or together, reasonably impart any
basis onto a plaintiff to ascertain her IVC device was defective. A physician
informing a patient that her IVC filter is a source of recurrent pain, on its face,
bears no relationship to whether the device is defective. The mere fact that the
Plaintiff had to undergo a serious procedure to remove this IVC filter does not
establish, on its face, that the Plaintiff would have any basis to ascertain that her
filter was defective.  The Plaintiff understands that there is no guarantee of success
or absence of sequelae when implanting foreign bodies into organic tissue. The
above statements are nothing more that evidence of that viewpoint. Due to the
Case Management Order there is no case specific discovery providing the
necessary context for this Court to be able to evaluate these statements.

The documentation relied upon by the Court in reaching its decision to grant the
Defendant's motion is not, by any means, intended to be a contextually complete
picture of the facts and circumstances surrounding the Plaintiff's knowledge at
each stage of her treatment. Only the Plaintiff's deposition and that of her
physicians could begin to show what, when, and how the Plaintiff learned of the

facts and circumstances surrounding her injuries and how that information bears on when she became aware that her IVC filter may be defective. This factual dispute cannot be resolved without adequate discovery and, ultimately, may be an issue of fact to be determined by a jury empaneled to decide this case.

### III.   Fraudulent Conduct of Defendant

Plaintiff seeks relief from Defendants under the following theories of liability: strict product liability – failure to warn; strict product liability – design defect; negligence; negligence per se - FDCA; breach of express warranty; breach of implied warranty; Kansas Stat. Ann. 50-623 Consumer Fraud and Unfair and Deceptive Trade Practices.

Under the Kansas Consumer Protection Act (KCPA), K.S.A. 50-626(a), a supplier may not engage in deceptive acts or practices in connection with a consumer transaction. The statute provides a nonexclusive list of types of conduct constituting deceptive acts or practices, including representations made knowingly or with reason to know that property or services have "characteristics" they, in fact, do not. K.S.A. 50-626(b)(1)(A). The KCPA applies to both goods and services. K.S.A. 50-624(h) ("property" subject to the Act includes "goods"); K.S.A. 50-624(h), (i) (services defined for coverage under the Act). The Act regulates the conduct of "suppliers," a term including sellers and manufacturers. K.S.A. 50-624(j). For a violation of  K.S.A. 50-626(b), the supplier need only have "reason to

know" that a representation about characteristics or qualities of the goods or services is inaccurate or misleading. The KCPA aims to protect consumers from unscrupulous business practices and, as remedial legislation, should be read liberally to further that objective. See K.S.A. 50-623; *Moore v. Bird Engineering Co.*, 273 Kan. 2, Syl. ¶ 3, 41 P.3d 755 (2002); *Stair v. Gaylord*, 232 Kan. 765, 775, 659 P.2d 178 (1983) (KCPA should be liberally construed to protect consumers from deceptive or unconscionable practices and from unilateral warranty disclaimers). "[T]he time limit for bringing a claim under the KCPA begins when the KCPA violation occurs.", *rev. denied* 286 Kan. 1176 (2008), however, the KCPA does not define the term "sale." The applicable statute of limitations for violations of the KCPA is 3 years, but the UCC contains a 4-year statute of limitations for contract claims based on the sale of goods under Article 2 of the Code. K.S.A. 84-2-725(1) ("An action for breach of contract for sale must be commenced within four years after the cause of action has accrued.").

The UCC provides that the cause of action accrues when the breach occurs. The injured party need not know of the breach to trigger the limitations period. K.S.A. 84-2-725(2). Of particular importance, here, given the facts, a breach of a contractual warranty under the UCC "occurs when tender of delivery is made." K.S.A. 84-2-725(2). If the warranty includes a promise of future performance of the goods, a breach does not occur until the recipient discovers or should have

discovered the deficient performance. K.S.A. 84-2-725(2)(emphasis added). Consistent with those statutes, the Kansas Supreme Court has recognized the limitation period for a breach of warranty typically, but not conclusively, begins running when the goods are delivered or installed. *Atlas Industries, Inc. v. National Cash Register Co.*, 216 Kan. 213, 221, 531 P.2d 41 (1975) (citing *Val Decker Packing Co. v. Corn Products Sales Co.*, 411 F.2d 850, 851 [6th Cir. 1969]). That reflects the general rule. See *RCI Contractors & Engineers v. Joe Rainero Tile*, 677 F. Supp. 2d 914, 917 (W.D. Va. 2010); *Ouellette v. Clinton Lindberg Cadillac Co.*, 60 S.W.3d 618, 621 (Mo. App. 2001).

Kansas courts treat the creation and breach of warranties in transactions for goods as questions of fact. *Hodges v. Johnson*, 288 Kan. 56, 65, 199 P.3d 1251 (2009) (breach of implied warranty of merchantability question of fact); *Stair v. Gaylord*, 232 Kan. 765, 770, 659 P.2d 178 (1983) (whether seller breached express warranty may be taken from the jury only if there is no evidence supporting the claim); *Black v. Don Schmid Motor, Inc.*, 232 Kan. 458, 467, 470, 657 P.2d 517 (1983) (breach of implied warranty of merchantability properly submitted to jury whether dealer extended express warranty to buyer is question for jury); *Christopher & Son v. Kansas Paint & Color Co.*, 215 Kan. 185, 197, 523 P.2d 709 (1974) (breach of implied warranty of fitness for particular purpose for jury); *Young & Cooper, Inc. v. Vestring*, 214 Kan. 311, 325-27, 521 P.2d 281 (1974);

see *Transamerica Oil, Corp. v. Lynes, Inc.*, 723 F.2d 758, 762 (10th Cir. 1983) (applying Kansas law).

Statute of limitations and available relief are different depending on the type of loss alleged in a breach of warranty case. In an action for breach of express or implied warranty where death, personal injury, or property damages is alleged, the applicable statute of limitations in Kansas would be the two-year tort statute of limitations at Kan. Stat. Ann. § 60-513 and would be classified as a products liability claim. Kan. Stat. Ann. § 60-513(b) as quoted above relies on a discovery standard.

In an action for breach of express or implied warranty where the result is economic loss, the applicable statute of limitations in Kansas would be the four-year contract for sale statute of limitations at Kan. Stat. Ann. § 84-2-725 and would be classified as a breach of contract claim under contract principles. Kan. Stat. Ann. § 84-2-725(2) as stated above provides "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." As applied to this case this period of limitation relies on a discovery standard.

The inquiry into which statutory period applies to the Plaintiff's claim (two year, three year, four year, etc.), all rely on a discovery standard to for when that period began to run. This is intensely and intricately a fact specific inquiry properly determined at trial; however, these determinations are further complicated by Defendants' fraudulent conduct in actively concealing and misrepresenting information regarding the safety and efficacy of a defective product.

Defendants widely advertised and promoted the Cook Celect filter as retrievable while safe and effective for the prevention of recurrent pulmonary embolism via placement in the vena cava.  During the same time the Defendants were promoting the safety and efficacy of this IVC filter, Defendants were actually concealing known defects and safety hazards associated with it.  Defendants failed to disclose known defects associated with its Celect IVC Filter to physicians, hospitals and patients; defects that were causing this filter to migrate, tilt, fracture and require open complex surgeries in order to remove the filter. This very concealment has a direct bearing on the statute of limitation issues in this case as well as which statute of limitations period applies.

The Cook Defendants have consistently maintained that all IVC Filters penetrate, perforate, and migrate.  The fact that the filter in this case penetrated, perforated, and/or migrated, standing alone, would not therefore support a cause of action for a defective device.  The Plaintiffs have also learned that in reporting the

results of the Lyons (OUS) study, Cook reported in a professional Journal, as well as in the IFU (Instructions for Use), that there were no perforations in the study. In fact there were perforations in approximately 20% of the retrieved filters. In this MDL the Plaintiffs have discovered that Cook intentionally failed to report adverse events to the appropriate regulatory authorities when they had an obligation to do so and also failed to report these events to the MAUDE Database. To make matters worse, Cook directed the salesforce to tout their artificially low MAUDE numbers to distinguish their product from competitors.  In this MDL the Plaintiffs have also discovered that the re-design of the Tulip filter actually increased the risk of product failure and that information was concealed.  Plaintiffs have also learned that as a product of the Cook "Document Retention Policy" many crucial documents regarding the interaction between the Cook sales force and the implanting physician have been destroyed.  The exchange of information between the implanter and the company is critical to this case.  All of these issues have been considered by or are still before Magistrate Judge Baker.  In the instant case, the Plaintiff is precluded from conducting any case specific discovery which is essential to this case. In addition, the Plaintiff asserts that the re-design of the Tulip Filter actually served to increase the rate of progressive perforation.

For these reasons, it is respectfully submitted that when the Plaintiff knew of a viable cause of action or the true effects of concealment are fact intensive inquiries which the Plaintiff has been prevented from exploring in this case.

## IV.  Conclusion

In light of the above this Court should alter or amend its judgment to reflect that, as a matter of law, the Plaintiff's asserted claims are not barred by the applicable statute of limitation and/or the Defendant's Motion for Summary Judgment is premature.

Respectfully submitted,

/s/Joseph R. Johnson, Esq.
Joseph R. Johnson, #372250, FL
Babbitt & Johnson, PA
Suite 100
1641 Worthington Road
PO Box 4426
West Palm Beach, FL 33402-4426
Tel: (561) 684-2500
Fax: (561) 684-6308
jjohnson@babbitt-johnson.com
*Attorney for Plaintiff Valerie Graham*

CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2017, a copy of the foregoing was served electronically and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.

/s/  Joseph R. Johnson