Exhibit 1

Case 1:14-ml-02570-RLY-TAB   Document 6038-1   Filed 08/30/17   Page 2 of 202 PageID #:
23347
Case 5:17-cv-02564-NC   Document 1   Filed 05/04/17   Page 2 of 22

1

**FAEGRE BAKER DANIELS LLP**
TARIFA B. LADDON (SBN 240419)

2
tarifa.laddon@faegrebd.com
HOWARD D. RUDDELL (SBN 281510)

3
howard.ruddell@faegrebd.com
11766 Wilshire Boulevard, Suite 750

4
Los Angeles, CA  90025
Phone: 310 500 2090

5
Fax:    310 500 2091

6
Attorneys for Defendants COOK GROUP
INCORPORATED, COOK MEDICAL LLC, f/k/a

7
COOK MEDICAL INCORPORATED, AND
WILLIAM COOK EUROPE APS

8

9
UNITED STATES DISTRICT COURT

10
NORTHERN DISTRICT OF CALIFORNIA

11
SAN JOSE DIVISION

12

13
DARA BERMAN-CHEUNG, an Individual;
SAM BERMAN CHEUNG, a Minor, by and

14
through his Guardian ad Litem, DARA
BERMAN-CHEUNG; and BAILEY

15
BERMAN CHUNG, a Minor, by and
through her Guardian ad Litem, DARA

16
BERMAN-CHEUNG,

17
                       Plaintiffs,

18
       vs.

19
COOK GROUP, INC., an Indiana
corporation; COOK MEDICAL

20
INCORPORATED a/k/a COOK MEDICAL,
INC., an Indiana corporation; COOK

21
MEDICAL, LLC, an Indiana corporation;
WILLIAM COOK EUROPE APS;

22
MATTHEW MELL, M.D., an individual;
STANFORD HEALTH CARE, a California

23
corporation; and DOES 1 through 50,
Inclusive,

24
                       Defendants.

Case No.:  5:17-cv-2564

(Santa Clara Superior Court, Case Number:
17CV307373)

**NOTICE OF REMOVAL OF
DEFENDANTS COOK GROUP, INC.,
COOK MEDICAL INCORPORATED a/k/a
COOK MEDICAL, INC., COOK
MEDICAL, LLC, and WILLIAM COOK
EUROPE APS PURSUANT TO 28 U.S.C. §§
1332, 1441, and 1446**

25

26

27

28

US.111334094.02

NOTICE OF REMOVAL:
Case No: 5:17-cv-2564

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that Defendants Cook Group Incorporated[1], Cook Medical LLC[2], and William Cook Europe ApS (collectively, "Cook"), by and through Cook's counsel, hereby remove the state court action entitled *Dara Berman-Cheung, et al. v. Cook Group, Inc., et al.*, Superior Court of California, County of Santa Clara, Case No. 17CV307373, to this Court pursuant to 28 U.S.C. §§ 1332, 1441(b), and 1446. The grounds for removal follow.

## INTRODUCTION

### A.    NATURE OF THE CASE

1.    Plaintiffs' Complaint commingles a medical device product liability action against Cook with a medical malpractice action against the implanting surgeon of that device, Matthew Mell, M.D. ("Dr. Mell"), and Stanford Hospital, where the implant procedure took place.

2.    With respect to Cook, the plaintiffs, Dara Berman-Cheung, Sam Berman Cheung, a minor, by and through his Guardian ad Litem, Dara Berman-Cheung, and Bailey Berman-Cheung, a Minor, by and through her Guardian ad Litem, Dara Berman-Cheung ("Plaintiffs"), bring a survival and wrongful death action, claiming injuries allegedly arising from the placement of an inferior vena cava filter ("IVC filter") designed and manufactured by Cook – specifically, the Cook Gunther Tulip® IVC Filter ("Gunther Tulip") – into the decedent, Richard Cheung ("Decedent"). Compl. *passim,* attached as Exhibit A. Plaintiffs allege that Cook "designed, researched, developed, manufactured, tested, marketed, advertised, promoted, distributed" the IVC filters after obtaining approval from the Food and Drug Administration via a Section 510(k) filing. *Id.*, ¶¶ 19-23. More specifically, Plaintiffs allege the Cook Defendants brought the IVC filters to market without conducting proper design testing and subsequently concealed any defects. *Id.*, ¶¶ 34-40.

---

[1] "Cook Group, Inc." is incorrectly named in the Complaint and is known as "Cook Group Incorporated."
[2] "Cook Medical Incorporated, a/k/a Cook Medical, Inc." is incorrectly named in the Complaint and is now known as "Cook Medical LLC (*formerly known as* Cook Medical Incorporated)."

1

Case 1:14-ml-02570-RLY-TAB  Document 6038-1  Filed 08/30/17  Page 4 of 202 PageID #:
23349
Case 5:17-cv-02564-RMW  Document 1  Filed 05/04/17  Page 3 of 22

3.      The Gunther Tulip was placed into Decedent on December 4, 2015.  *Id.*, ¶4.
Decedent passed away on December 20, 2015, allegedly as a result of severe tilting of the IVC filter
that "impaired its effectiveness in catching blood clots and preventing pulmonary embolism."
*Id.*, ¶4.

4.      Plaintiffs have set forth causes of action against Cook for strict products liability,
negligence, negligent misrepresentation, fraudulent misrepresentation, fraudulent concealment,
breach of warranty, and breach of express warranty.  *Id.*, ¶¶45-143.  Plaintiffs also bring a survival
action, wrongful death action, and seek punitive damages as to Cook.  *Id.*, ¶¶153-172.

5.      Plaintiffs also allege Medical Malpractice of defendants Dr. Mell, "Does 1 through
25," Stanford Health Care, and "Does 26 through 50" (collectively, the "Medical Defendants").
Specifically, Plaintiffs allege that the Medical Defendants "negligently and tortiously failed to
possess or exercise that degree of knowledge or skill that would ordinarily be possessed and
exercised by physicians and surgeons, hospitals, nurses, surgical technicians, attendants, medical
clinics, and the like."  *Id.*, ¶145.

6.      With respect to Dr. Mell specifically, Plaintiffs claim that he "improperly and
negligently failed to appropriately implant the filter," and "negligently and unlawfully failed to
advise other treating specialists" of the alleged risks of the filter's allegedly improper placement.
*Id.*, ¶¶ 146 –147.

7.      Plaintiffs filed this action against Cook in the Superior Court of the State of
California, County of Santa Clara, on or about March 16, 2017.  *Id.*  Plaintiffs served Cook with a
Summons and Amended Complaint for Damages on or about April 4, 2017.  *Id.,* pp. 1, 4, and 7.

**B.      AN MDL EXISTS INVOLVING THE SAME PRODUCTS AND CLAIMS**

8.      Beginning in 2013, plaintiffs filed federal court actions making nearly identical
claims against Cook arising out of the IVC filters.

2

9.        On October 15, 2014, pursuant to 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation ("JPML") determined that centralization was appropriate for these actions and began transferring Cook IVC filter cases to the Honorable Judge Richard L. Young of the United States District Court for the Southern District of Indiana for coordinated or consolidated pretrial proceedings.  Presently, there are hundreds of federal court cases currently pending before Judge Young involving the very Cook IVC filter at issue in this case and including nearly identical claims as in this case. *See, e.g., In re Cook Medical, Inc., IVC Filters Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2570 (J.P.M.L. Oct. 15, 2014) (ECF No. 29) (initial transfer order).

10.        Plaintiffs' counsel in this very case currently have a total of 78 cases pending in MDL No. 2570.

**C.        REMOVAL**

11.        As set forth in more detail below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 as an action between citizens of different states in which the amount in controversy exceeds $75,000, pursuant to 28 U.S.C. § 1332(a), and Cook has satisfied the procedural requirements for removal set forth in 28 U.S.C. § 1446.

**REMOVAL IS PROPER UNDER DIVERSITY JURISDICTION**

**A.        COMPLETE DIVERSITY OF CITIZENSHIP EXISTS BETWEEN ALL
PROPERLY JOINED PARTIES**

12.        This is an action over which this Court has original jurisdiction under 28 U.S.C. § 1332 and is one that may be removed to this Court under 28 U.S.C. § 1441, in that there exists complete diversity of citizenship between the proper parties – Plaintiffs and Cook – in the underlying cause of action.  The Medical Defendants, which are in-state defendants, do not defeat diversity under 28 U.S.C. § 1441(b)(2) because Plaintiffs' claims against the Medical Defendants are medical malpractice claims that relate to the treatment of Decedent, and thus, do not arise out of

3

the same transactions or occurrences as the products liability claims against Cook, which address the design, manufacturing, and marketing of IVC filters.  Ex. A, ¶¶ 144-147.  As such, the claims against the Medical Defendants should be severed from the claims against Cook and the citizenship of the Medical Defendants disregarded here.[3]  Finally, the amount in controversy as between Plaintiffs and Cook exceeds the sum or value of $75,000, exclusive of interests and costs.

### 1.   COMPLETE DIVERSITY EXISTS BETWEEN PLAINTIFFS AND COOK

13.    28 U.S.C. § 1441 provides that removal based on diversity jurisdiction is proper "if [none] of the parties in interest *properly* joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b) (emphasis added).

14.    Cook Group Incorporated is an Indiana corporation, having its principal place of business in Indiana, and, thus, for jurisdictional purposes is a citizen of Indiana.

15.    Cook Medical LLC, f/k/a, Cook Medical Incorporated is an Indiana limited liability company, having its principal place of business in Indiana.  Cook Medical, LLC's sole member is an Indiana corporation, Cook Group Incorporated, which is also a citizen of Indiana for jurisdictional purposes (see supra ¶ 14). Thus, for jurisdictional purposes, Cook Medical, LLC is a citizen of Indiana.

16.    William Cook Europe, ApS is organized and based in Denmark, and is thus a citizen of a foreign state for jurisdictional purposes.

17.    Plaintiffs Dara Berman-Cheung, Sam Berman Chung, and Bailey Berman-Cheung are citizens of the state of Ohio.  *See* Ex. A, ¶¶ 1-3.

---

[3] Cook has concurrently filed a Motion to Sever the claims against the Medical Defendants pursuant to Federal Rule of Civil Procedure 21.

4

NOTICE OF REMOVAL
Case No:  5:17-cv-2564

**2.    THE CITIZENSHIP OF THE MEDICAL DEFENDANTS SHOULD BE DISREGARDED BECAUSE PLAINTIFFS' CLAIMS AGAINST THEM HAVE BEEN PROCEDURALLY MISJOINED**

18.    Plaintiffs allege that co-defendants Dr. Mell and Stanford Hospital are citizens of California. *Id.*, ¶¶ 12-13.

19.    To the extent Plaintiffs believe that the Medical Defendants defeat diversity as in-state defendants under 28 U.S.C. § 1441(b)(2), they are wrong.  As discussed in more detail below, the claims against the Medical Defendants should be severed from this case and their citizenship should therefore be disregarded.  Their citizenship should not be considered when determining this Court's diversity jurisdiction to preserve Cook's right to removal and prevent Plaintiffs' attempted jurisdictional manipulation.  Courts ignore the citizenship of misjoined parties for the purposes of determining diversity jurisdiction.  *See*, *e.g.*, *Stone v. Zimmer*, No. 09-80252-CIV, 2009 WL 1809990, at *4 (S.D. Fla. June 25, 2009); *In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 146-48 (S.D.N.Y. 2001); *In re Diet Drugs Prods. Liab. Litig.*, No. Civ.A. 98-20478, 1999 WL 554584, at *2 (E.D. Pa. July 16, 2009); *Lyons v. The Am. Tobacco Co., Inc.*, No. Civ.A. 96- 00881, 1997 WL 809677, at *4 (S.D. Ala. Sept. 30, 1997).

20.    While the 9th Circuit has not expressly adopted the doctrine of procedural misjoinder (also called "fraudulent misjoinder") as originally set forth in *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot*, 204 F.3d 1353, 1360 (11th Cir. 2000), some district courts within the Ninth Circuit have applied the doctrine of fraudulent misjoinder.  *See Sutton v. Davol, Inc.*, 251 F.R.D. 500, 505 (E.D. Cal. 2008) (finding that plaintiffs fraudulently misjoined their product liability claims against the manufacturer of a medical device with the medical malpractice claims against resident physician and hospital defendants because the malpractice claims could not be based on the alleged negligence of the manufacturer); *see also Greene v. Wyeth*, 344 F.Supp.2d 674, 684-85 (D. Nev. 2004) (stating "this Court agrees

5

with the Fifth and Eleventh Circuits that the rule [of fraudulent misjoinder] is a logical extension of the established precedent that a plaintiff may not fraudulently join a defendant in order to defeat diversity jurisdiction in federal court").

21.     Further, federal courts have frequently applied the doctrine of procedural/fraudulent misjoinder where, as here, the case involves concurrent claims for products liability against manufacturers and medical negligence against healthcare providers. *See Sutton*, 251 F.R.D. at 505 (noted above); *In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*, 2007 WL 2572048, at *2 (D. Minn. Aug. 30, 2007) (finding the joinder of the medical malpractice claims against the physician with the product liability claims against the defibrillator manufacturer inappropriate because the claims did not involve common questions of law or fact and did not assert joint, several, or alternative liability of the parties); *Stone*, 2009 WL 1809990, at *4 (S.D. Fla. June 25, 2009) ("The joinder of the malpractice claims against [the doctor] and the [pain management center] with the product liability claim against [the product manufacturer] is thus inappropriate because these claims do not both involve common questions of law or fact and do not assert joint, several or alternative liability 'arising out of the same transaction, occurrence or series of transactions or occurrences.'" (internal citations omitted)); *In re Rezulin Products Liab. Litig.*, 2003 WL 21276425, at *1-2 (S.D.N.Y. June 2, 2003) (finding non-diverse physician improperly misjoined with claims against drug manufacturer). *But see Jurin v. Transamerica Life Ins. Co.*, 2014 WL 4364901, at *4 (N.D. Cal. Sept. 3, 2014) (declining to adopt the theory of fraudulent misjoinder); *N.C. ex rel. v. Pfizer, Inc.*, 2012 WL 1029518, at *4 (N.D. Cal. March 26, 2012) (declining to adopt the theory of fraudulent misjoinder as inapplicable based on the facts of the case). Here, Plaintiffs' claims against the Medical Defendants do not arise out of the same transaction or occurrence as their product liability claims against Cook, and Plaintiff does not allege joint, several, or alternative liability against Cook and the Medical Defendants.

6

22. Moreover, the essential elements of the medical malpractice claim against the Medical Defendants and the products liability claims against Cook are not the same. The critical components of the claims, including the evidence required to prove each claim, are legally and factually distinct. *See Stone*, 2009 WL 180990, at *4. For example, Plaintiffs' product liability claims brought against Cook involve the design, research, development, manufacture, testing, marketing, advertising, promotion, and distribution of the IVC filters. Ex. A, ¶¶ 19-23. These claims require fact discovery into areas such as product testing, FDA reporting requirements, manufacturing process, product labeling, and marketing practices. In contrast, the malpractice claims against Medical Defendants concern the doctor's performance, diagnosis of health ailments, standard of care and treatment, and interactions with Decedent. *See Id.*, ¶ 145. These issues require a factual investigation into the treating physician's training and experience, performance, and evaluation of care plans.

23. As a result, any liability found against the Medical Defendants would not be a basis for liability as to Cook, and separate liability could be found as to each. Whether the Medical Defendants are found liable for malpractice has absolutely no effect on whether Cook can be found liable under a theory of products liability. As discussed above, the same conclusion has been reached in numerous federal courts across the country and should be reached here.

24. Additionally, courts have found that the presence of an MDL is a factor to be considered in assessing whether removal is proper in this context. *See Mayfield v. London Women's Care, PLLC*, 2015 WL 3440492, at *5 (E.D. Ky. May 28, 2015) (denying a plaintiff's motion to remand because product liability claims against medical device manufacturers involve very different legal elements and facts than malpractice claims against healthcare defendants and noting that, contrary to plaintiff's assertions that severance would create inefficiency by forcing them to litigate in two forums, severance of the claims would, in actuality, likely benefit plaintiffs by

7

NOTICE OF REMOVAL
Case No: 5:17-cv-2564

allowing them to take advantage of a federal MDL while being unhindered in proceeding against the healthcare defendants); *Joseph v. Baxter Int'l, Inc.*, 614 F. Supp. 2d 868, 873 (N.D. Ohio 2009) (denying remand of products liability claims against prescription drug manufacturer because plaintiff had an adequate remedy in state court for his claim against the medical providers and would likely benefit from consolidated pretrial proceedings in the products liability MDL). Consequently, removal is appropriate here so that Plaintiffs may take advantage of the MDL governing the specific product they allege is defective. *See In re Cook Medical, Inc., IVC Filters Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2570, in the United States District Court for the Southern District of Indiana. Further, upon removal of this action, Cook will seek transfer of this action to MDL 2570 pending in the United States District Court for Southern District of Indiana because Plaintiffs' medical device product liability case involves common questions of fact with cases previously transferred to MDL 2570.

25.     Accordingly, Plaintiffs' claims against the Medical Defendants should be disregarded because joinder of them is improper, and this Court should retain jurisdiction over the remaining claims against Cook until this case is transferred to the MDL.

**B.     THE AMOUNT IN CONTROVERSY EXCEEDS $75,000**

26.     Based on the allegations in the Complaint, the amount in controversy, exclusive of interests and costs, exceeds $75,000, as required by 28 U.S.C. § 1332(a).

27.     A defendant can establish the amount in controversy by the allegations in a complaint, or by setting forth facts in the notice of removal that demonstrate the amount in controversy exceeds $75,000. *Conrad Assocs. v. Hartford Ace. & Indem. Co.,* 994 F. Supp. 1196 (N.D. Cal. 1998); *see also White v. FCI USA, Inc.*, 319 F.3d 672, 675 (5th Cir. 2003).

28.     A defendant must demonstrate that the amount in controversy plausibly exceeds the jurisdictional amount. *See Dart Cherokee Basin Operating Co., LLC v. Owens,* No. 13-719, 2014

NOTICE OF REMOVAL
Case No: 5:17-cv-2564

Case 1:14-ml-02570-RLY-TAB Document 6038-1 Filed 08/30/17 Page 10 of 202 PageID #:
23356
Case 5:17-cv-02564-RC Document 1 Filed 05/04/17 Page 10 of 12

WL 7010692, at *5-6 (U.S. Dec. 15, 2014) (Slip op.) ("In sum, as specified in § 1446(a), a

defendant's notice of removal need include only a plausible allegation that the amount in

controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by §

1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation.")

29. Plaintiffs' allegations in the Complaint demonstrate that they seek damages well in

excess of $75,000. Plaintiffs bring a survival action and a wrongful death action and allege the

following injuries and damages:

    a. General (non-economic) damages, including past and future pain and

        suffering, past and future emotional distress, past and future loss of

        enjoyment of life, and other consequential damages. Ex. A, Prayer for

        Damages, ¶ a.

    b. Specific (economic) damages, including past and future medical expenses,

        past and future lost wages and loss of earning capacity, and other

        consequential damages. *Id.*, ¶ b.

    c. Punitive damages. *Id.*, ¶ c.

30. In addition, attorneys' fees and costs of suit may be considered when determining if

the amount in controversy exceeds $75,000 for purposes of establishing diversity jurisdiction. *Bell

v. Preferred Life Assur. Soc.*, 320 U.S. 238, 240 (1943). Further, a reasonable inference of a

potential punitive damages award may also be considered in determining the amount in

controversy. *Id.*[4]

31. This list of alleged damages demonstrate that each Plaintiffs' claims exceed the

requisite amount in controversy for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

---

[4] Defendants deny all liability and that any damages are appropriate in this case.

US.111334094.02

NOTICE OF REMOVAL
Case No: 5:17-cv-2564

**C.     REMOVAL IS TIMELY**

32.     Removal is timely because Cook was served with a Summons and Complaint on April 4, 2017.  Ex. A, pp. 1, 4, and 7.

33.     No previous request has been made for the relief requested herein.

**D.     VENUE AND OTHER REQUIREMENTS ARE SATISFIED**

34.     Superior Court of the State of California, County of Santa Clara, is located in the Northern District of California.  *See* 28 U.S.C. § 84.  Therefore, venue is proper because the Northern District of California is the "district and division embracing the place where such action is pending." *See* 28 U.S.C. § 1441(a).

35.     Because the Medical Defendants have been fraudulently misjoined, their consent to removal is not necessary.  *See Sutton*, 251 F.R.D. at 505-506 (finding that failure to obtain the consent of the misjoined defendants did not negate an otherwise proper removal, and stating that "Plaintiffs' assertion that the consent of the California Defendants was required for removal based on fraudulent misjoinder is not the law in the Ninth Circuit").  Further, as the Ninth Circuit has articulated, "[a]lthough the usual rule is that all defendants in an action in a state court must join in a petition for removal . . . the 'rule of unanimity' does not apply to 'nominal, unknown or fraudulently joined parties.'"  *United Computer Systems, Inc. v. AT & T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002) (internal citations omitted).  While the Ninth Circuit has not expressly applied this rule to the doctrine of fraudulent *misjoinder*, the same reasoning should be applied.  Because the Medical Defendants have been procedurally misjoined in this action, they should be disregarded for diversity jurisdiction purposes and the rule of unanimity should not apply.

36.     Pursuant to the provisions of 28 U.S.C. § 1446(d), Cook will give Plaintiffs written notice of the filing of this Notice of Removal and shall file written notice of the filing of this Notice

10

NOTICE OF REMOVAL
Case No: 5:17-cv-2564

of Removal with the Superior Court of the State of California for the County of Santa Clara, attaching as Exhibit A thereto a copy of this Notice of Removal.

37.     Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Cook in the state court action are attached as Exhibit B.

WHEREFORE, Defendants Cook Group Incorporated, Cook Medical LLC (*formerly known as* Cook Medical Incorporated), and William Cook Europe ApS give notice that the matter styled as *Dara Berman-Cheung, et al. v. Cook Group, Inc., et al.*, in the Superior Court of the State of California for the County of Santa Clara, Case No. 17CV307373, is removed to the United States District Court for the Northern District of California.

Dated:  May 4, 2017                    **FAEGRE BAKER DANIELS LLP**

By:  */s/ Howard D. Ruddell*
TARIFA B. LADDON
HOWARD D. RUDDELL
Attorneys for Defendants COOK GROUP
INCORPORATED, COOK MEDICAL LLC,
f/k/a COOK MEDICAL INCORPORATED,
AND WILLIAM COOK EUROPE APS

11

# Exhibit A

**SUM-100**

# SUMMONS
*(CITACION JUDICIAL)*

ENDORSED

2017 MAR 16 A 8: 58

CLERK OF THE COURT
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
BY_____ G. DUARTE
DEPUTY

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

COOK GROUP, INC., an Indiana corporation; (Additional Parties
Attachment Form Attached)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

DARA BERMAN-CHEUNG, an Individual; (Additional Parties
Attachment Form Attached)

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Downtown Superior Court 191 North First Street, San Jose, CA 95113 | CASE NUMBER: *(Número de Caso):* **17 C V 3 0 7 3 7 3** |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Matthew Ramon Lopez, Lopez McHugh LLP, 100 Bayview Circle, Ste. 5600, Newport Beach, CA 92660
(949) 737-1501

| DATE: ~~3/15/2017~~ MAR 1 6 2017 *(Fecha)* | Clerk, by *(Secretario)* G. DUARTE | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [X] on behalf of *(specify):* Cook Medical, LLC, an Indiana Corporation

   under: [X] CCP 416.10 (corporation)      [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)      [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)      [ ] CCP 416.90 (authorized person)
          [ ] other *(specify):*
4. [X] by personal delivery on *(date):* 4/4/17

Page 1 of 1

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Exhibit A
Page 12

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Dara Berman-Cheung, et al. v. Cook Group, Inc., et al. | |

**INSTRUCTIONS FOR USE**

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

COOK MEDICAL INCORPORATED a/k/a COOK MEDICAL, INC., an Indiana corporation; COOK MEDICAL, LLC, an Indiana corporation; WILLIAM COOK EUROPE APS; MATTHEW MELL, M.D., an individual; STANFORD HEALTH CARE, a California corporation; and DOES 1 through 50, Inclusive,

Page __2__ of __3__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Exhibit A
Page 13

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Dara Berman-Cheung, et al. v. Cook Group, Inc., et al. | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

[✓] Plaintiff   [ ] Defendant   [ ] Cross-Complainant   [ ] Cross-Defendant

SAM BERMAN CHEUNG, a Minor, by and through his Guardian ad Litem, DARA BERMAN-CHEUNG; and BAILEY BERMAN CHUNG, a Minor, by and through her Guardian ad Litem, DARA BERMAN-CHEUNG,

Page __3__ of __3__

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Exhibit A
Page 14

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

ENDORSED

2017 MAR 16  A 8:58

CLERK OF THE COURT
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
BY_____ DEPUTY
G. DUARTE

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

COOK GROUP, INC., an Indiana corporation; (Additional Parties Attachment Form Attached)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

DARA BERMAN-CHEUNG, an Individual; (Additional Parties Attachment Form Attached)

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Downtown Superior Court<br>191 North First Street, San Jose, CA 95113 | CASE NUMBER:<br>*(Número del Caso):*<br>**17CV307373** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Matthew Ramon Lopez, Lopez McHugh LLP, 100 Bayview Circle, Ste. 5600, Newport Beach, CA 92660
(949) 737-1501

DATE: ~~3/15/2017~~  **MAR 16 2017**     Clerk, by _**G. DUARTE**_ , Deputy
*(Fecha)*                 *(Secretario)*              *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Cook Medical Incorporated a/k/a Cook medical Inc, an Indiana Corporation

   under: ☒ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)       ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 4/4/17

Page 1 of 1

| | |
|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** |

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Exhibit A
Page 15

Case 1:14-ml-02570-RLY-TAB Document 6038-1 Filed 08/30/17 Page 19 of 202 PageID #:
23364
Case 3:17-cv-02584-NC Document 1-1 Filed 05/04/17 Page 8 of 20

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Dara Berman-Cheung, et al. v. Cook Group, Inc., et al. | |

## INSTRUCTIONS FOR USE

➜ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➜ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

COOK MEDICAL INCORPORATED a/k/a COOK MEDICAL, INC., an Indiana corporation; COOK MEDICAL, LLC, an Indiana corporation; WILLIAM COOK EUROPE APS; MATTHEW MELL, M.D., an individual; STANFORD HEALTH CARE, a California corporation; and DOES 1 through 50, Inclusive,

Page __2__ of __3__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Dara Berman-Cheung, et al. v. Cook Group, Inc., et al. | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

[✓] Plaintiff    [ ] Defendant    [ ] Cross-Complainant    [ ] Cross-Defendant

SAM BERMAN CHEUNG, a Minor, by and through his Guardian ad Litem, DARA BERMAN-CHEUNG; and BAILEY BERMAN CHUNG, a Minor, by and through her Guardian ad Litem, DARA BERMAN-CHEUNG,

Page    3    of    3

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Exhibit A
Page 17

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

ENDORSED (stamp)

2017 MAR 16 A 8: 58

CLERK OF THE COURT
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
BY_____ DEPUTY
G. DUARTE

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

COOK GROUP, INC., an Indiana corporation; (Additional Parties Attachment Form Attached)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

DARA BERMAN-CHEUNG, an Individual; (Additional Parties Attachment Form Attached)

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Downtown Superior Court

191 North First Street, San Jose, CA 95113

CASE NUMBER:
*(Número del Caso):*

17CV307373

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Matthew Ramon Lopez, Lopez McHugh LLP, 100 Bayview Circle, Ste. 5600, Newport Beach, CA 92660
(949) 737-1501

DATE: ~~1/15/2017~~ **MAR 16 2017**
*(Fecha)*

Clerk, by _____ G. DUARTE _____, Deputy
*(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Cook Group, Inc, an Indiana Corporation

under: ☒ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)      ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)      ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☒ by personal delivery on *(date):* 4/4/17

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Exhibit A
Page 18

Case 1:14-ml-02570-RLY-TAB Document 6038-1 Filed 08/30/17 Page 22 of 202 PageID #:
23367
Case 5:17-cv-02564-NC Document 1-1 Filed 05/04/17 Page 2 of 44

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Dara Berman-Cheung, et al. v. Cook Group, Inc., et al. | |

**INSTRUCTIONS FOR USE**

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties
Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

COOK MEDICAL INCORPORATED a/k/a COOK MEDICAL, INC., an Indiana corporation; COOK
MEDICAL, LLC, an Indiana corporation; WILLIAM COOK EUROPE APS; MATTHEW MELL, M.D., an
individual; STANFORD HEALTH CARE, a California corporation; and DOES 1 through 50, Inclusive,

Page ___2___ of ___3___

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Exhibit A
Page 19

Case 1:14-ml-02570-RLY-TAB-Document 6038-11 Filed 09/20/17 Page 23 of 202 PageID #:
23368
Case 5:17-cv-02564-NC Document 1-1 Filed 05/04/17 Page 20 of 44 PageID #:

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Dara Berman-Cheung, et al. v. Cook Group, Inc., et al. | |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

[✓] Plaintiff  [ ] Defendant  [ ] Cross-Complainant  [ ] Cross-Defendant

SAM BERMAN CHEUNG, a Minor, by and through his Guardian ad Litem, DARA BERMAN-CHEUNG;
and BAILEY BERMAN CHUNG, a Minor, by and through her Guardian ad Litem, DARA
BERMAN-CHEUNG,

Page __3__ of __3__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

### ADDITIONAL PARTIES ATTACHMENT
**Attachment to Summons**

1   Ramon Rossi Lopez, Bar No. 86361
2   Matthew Ramon Lopez, Bar No. 263134
    Amorina Patrice Lopez, Bar No. 278002
3   Nicholas Robert Graham, Bar No. 307330
    LOPEZ McHUGH LLP
4   100 Bayview Circle, Suite 5600
    Newport Beach, California 92660
5   Telephone: (949) 737-1501
6   Facsimile: (949) 737-1504
    rlopez@lopezmchugh.com
7   mlopez@lopezmchugh.com
    alopez@lopezmchugh.com
8   ngraham@lopezmchugh.com

9

10   Attorneys for Plaintiffs

11         **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12             **FOR THE COUNTY OF SANTA CLARA**

13

14   DARA BERMAN-CHEUNG, an Individual;   )  Case No.: 17CV307373
    SAM BERMAN CHEUNG, a Minor, by and  )
15   through his Guardian ad Litem, DARA      )  **AMENDED COMPLAINT FOR DAMAGES**
    BERMAN-CHEUNG; and BAILEY        )    1.  STRICT PRODUCTS LIABILITY –
16   BERMAN CHUNG, a Minor, by and through  )        FAILURE TO WARN
    her Guardian ad Litem, DARA BERMAN-   )    2.  STRICT PRODUCTS LIABILITY –
17   CHEUNG,                     )        MANUFACTURING DEFECT
                            )    3.  NEGLIGENCE
18                           )    4.  NEGLIGENT MISREPRESENTATION
19            Plaintiffs,      )    5.  FRAUDULENT MISREPRESENTATION
    vs.                          )    6.  FRAUDULENT CONCEALMENT
20                          )    7.  BREACH OF EXPRESS WARRANTY
    COOK GROUP, INC.; an Indiana corporation;  )    8.  MEDICAL NEGLIGENCE
21   COOK MEDICAL INCORPORATED a/k/a   )    9.  SURVIVAL ACTION
    COOK MEDICAL, INC., an Indiana      )   10.  WRONGFUL DEATH
22   corporation; COOK MEDICAL, LLC, an   )
    Indiana corporation; WILLIAM COOK    )
23   EUROPE APS; MATTHEW MELL, M.D., an  )  **DEMAND FOR JURY TRIAL**
    individual; STANFORD HEALTH CARE, a   )
24   California corporation; and DOES 1 through  )
25   50, Inclusive,                   )
                            )
26                           )
           Defendants.      )
27                             )

28

ENDORSED
2017 MAR 20 A 10: 20
CLERK OF THE COURT
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
BY
L. QUACH-MARCELLANA

**BY FAX**

---

1

AMENDED COMPLAINT FOR DAMAGES

1     COME NOW, Plaintiffs, DARA BERMAN-CHEUNG, SAM BERMAN CHEUNG and

2  BAILEY BERMAN CHUNG, by and through their Guardian ad Litem, DARA BERMAN-CHEUNG

3  ("Plaintiffs"), by and through their attorneys, who complain and allege against Defendants, COOK

4  GROUP, INC., COOK MEDICAL INCORPORATED a/k/a COOK MEDICAL, INC., COOK

5  MEDICAL, LLC, WILLIAM COOK EUROPE APS and DOES 1 through 25 (hereinafter, collectively

6  referred to as "Cook" or "Cook Defendants"), MATTHEW MELL, M.D. ("Dr. Mell"), STANFORD

7  HEALTH CARE ("Stanford") and DOES 26 through 50 (hereinafter, collectively referred to as

8  "Medical Defendants"), on information and belief, as follows:

9                                    **PARTIES**

10    1.     Plaintiff DARA BERMAN-CHEUNG is the surviving spouse of RICHARD CHEUNG

11 ("Decedent") and at all times relevant to this action was and is a citizen and resident of the State of

12 Ohio.

13    2.     Plaintiff SAM BERMAN CHEUNG is a minor and natural child of RICHARD

14 CHEUNG and at all times relevant to this action was and is a citizen and resident of the State of Ohio.

15    3.     Plaintiff BAILEY BERMAN CHEUNG is a minor and natural child of RICHARD

16 CHEUNG and at all times relevant to this action was and is a citizen and resident of the State of Ohio.

17    4.     Decedent RICHARD CHEUNG, at all times relevant to this action was a citizen and

18 resident of the State of Ohio.  Mr. Cheung underwent placement of Cook Defendants' Gunther Tulip®

19 Vena Cava Filter on or about December 4, 2015 at Stanford Hospital in Redwood City, California.

20 Defendant MATTHEW MELL, M.D. is a vascular surgeon and was responsible for placing the device in

21 Decedent.  The filter subsequently malfunctioned due to severe tilting, which impaired its effectiveness

22 in catching blood clots and preventing pulmonary embolism.  This tilt-related malfunction and others

23 allowed clots to pass the filter that otherwise would have been caught had the filter been in a proper

24 centered position.  As a direct and proximate result of these malfunctions, RICHARD CHEUNG

25 suffered fatal injuries from pulmonary embolism, damages, and untimely death on or about December

26 20, 2015.

27

28

---

2

**AMENDED COMPLAINT FOR DAMAGES**

5.      Defendant COOK GROUP, INC. is an Indiana corporation with a principal place of business located at 750 Daniels Way, Bloomington, Indiana 47404.  Defendant Cook Group, Inc. regularly conducts business in the State of California and is authorized to do so.

6.      Defendant COOK MEDICAL INCORPORATED a/k/a COOK MEDICAL, INC. is an Indiana corporation with a principal place of business located at 750 Daniels Way, Bloomington, Indiana 47404.  Defendant Cook Medical Incorporated a/k/a Cook Medical, Inc. regularly conducts business in the State of California and is authorized to do so.

7.      Defendant COOK MEDICAL, LLC is an Indiana corporation with a principal place of business located at 750 Daniels Way, P.O. Box 1608, Bloomington, Indiana 47402.  Defendant Cook Medical, LLC regularly conducts business in the State of California, and is authorized to do so.

8.      Defendant WILLIAM COOK EUROPE APS is based in Bjaeverskov, Denmark and regularly conducts business in the State of California, and is authorized to do so.

9.      The Cook Defendants may be served with process upon their registered agent for service: C/O CSC Lawyers Incorporating Service, 50 West Broad Street, Suite 1800, Columbus, Ohio 43215.

10.     At all relevant times to this action, Cook Defendants include and included any and all parent companies, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

11.     At all relevant times to this action, as further detailed herein, the Cook Defendants, and each of them, were engaged in the business of researching, developing, testing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, packaging, processing, labeling, marketing, promoting, distributing, selling and/or introducing into interstate commerce and into the State of California, either directly or indirectly through third parties or related entities, the Gunther Tulip inferior vena cava ("IVC") filters, to be implanted in patients throughout the United States, including California, and including the filter implanted in RICHARD CHEUNG, and derived substantial income from doing business in California.

12.     Defendants MATTHEW MELL, M.D. and DOES 26 through 40, were and are physicians and surgeons duly licensed to practice medicine in the State of California, with offices located within the

3

**AMENDED COMPLAINT FOR DAMAGES**

Case 1:14-ml-02570-RLY-TAB  Document 6038-1  Filed 08/30/17  Page 27 of 202 PageID #:
23372
Case 5:17-cv-02564-NC  Document 1-1  Filed 05/04/17  Page 24 of 44

1   County of Santa Clara, State of California, and each of them has held him or herself out to the public,

2   including RICHARD CHEUNG, to possess that degree of skill, ability, and learning common to

3   practitioners in said community.

4        13.     STANFORD HEALTH CARE is a California corporation with a principal place of

5   business located at 300 Pasteur Dr., Stanford, California, County of Santa Clara.  Defendants

6   STANFORD HEALTH CARE and DOES 41 through 50, are and were at all times herein mentioned

7   corporations duly organized and existing under and by virtue of the laws of the State of California

8   and/or authorized to do business and doing business in the County of Santa Clara, State of California.

9        14.     At all relevant times to this action, each of the Medical Defendants was the agent and

10  employee of each of the remaining Medical Defendants and was at all times herein mentioned acting

11  within the scope of said agency and employment.

12       15.     In or around December 2015, Medical Defendants, and each of them, undertook the care,

13  treatment and examinations of Decedent, RICHARD CHEUNG.

**JURISDICTION AND VENUE**

15       16.     This Court has jurisdiction under the California Constitution, Article VI, Section 10 and

16  *Code of Civil Procedure* § 410.10.  Plaintiffs' damages exceed the jurisdictional minimum of this Court.

17       17.     Venue is proper in this Court pursuant to *Code of Civil Procedure* §§ 395 and 395.5

18  because the principal places of business for Defendant Stanford is situated in Santa Clara County.

19  Further, a substantial amount of the defendants' conduct took place in Santa Clara County.

**FACTUAL ALLEGATIONS**

21       18.     Plaintiffs bring this action for damages stemming from the wrongful death of their

22  decedent, RICHARD CHEUNG, as a direct and proximate result of Decedent being implanted with a

23  Cook Gunther Tulip IVC filter by MATTHEW MELL, M.D. at Stanford Hospital in Redwood City,

24  California, on or about December 4, 2015.

25       19.     The Cook Defendants designed, researched, developed, manufactured, tested, marketed,

26  advertised, promoted, distributed, and sell products such as IVC filters that are sold to and marketed to

27  prevent, among other things, recurrent pulmonary embolism via placement in the vena cava.  One such

---

4

**AMENDED COMPLAINT FOR DAMAGES**

1    product of the Cook Defendants' – the Gunther Tulip Filter – is introduced into the vena cava via a

2    coaxial introducer sheath system.

3        20.    Cook Defendants sought Food and Drug Administration ("FDA") approval to market the

4    Gunther Tulip IVC filter device and/or its components under Section 510(k) of the Medical Device

5    Amendment.

6        21.    Section 510(k) permits the marketing of medical devices if the device is substantially

7    equivalent to other legally marketed predicate devices without formal review for the safety or efficacy of

8    the device. The FDA explained the difference between the 510(k) process and the more rigorous

9    "premarket approval" ("PMA") process in its amicus brief filed with the Third Circuit in *Horn v.*

10   *Thoratec Corp.*, which the court quoted from:

11       A manufacturer can obtain an FDA finding of 'substantial equivalence' by submitting a
         premarket notification to the agency in accordance with section 510(k) of the [Food Drug
12       and Cosmetic Act]. 21 U.S.C. § 360(k). A device found to be 'substantially equivalent'
13       to a predicate device is said to be 'cleared' by FDA (as opposed to 'approved' by the
         agency under a PMA).
14

15   376 F.3d 163, 167 (3d Cir. 2004) (emphasis in original). A pre-market notification submitted under

16   510(k) is thus entirely different from the PMA process, which requires data sufficient to demonstrate

17   that the medical device at issue is safe and effective.

18       22.    In *Medtronic, Inc. v. Lohr*, the U.S. Supreme Court similarly described the 510(k)

19   process, observing:

20       If the FDA concludes on the basis of the [manufacturer's] § 510(k) notification that the
         device is "substantially equivalent" to a pre-existing device, it can be marketed without
21       further regulatory analysis. . . . The § 510(k) notification process is by no means
         comparable to the PMA process; in contrast to the 1,200 hours necessary to complete a
22       PMA review, the § 510(k) review is completed in average of 20 hours. . . . As one
         commentator noted: "The attraction of substantial equivalence to manufacturers is clear.
23       Section 510(k) notification requires little information, rarely elicits a negative response
         from the FDA, and gets processed quickly."
24

25   518 U.S. 470, 478-79 (1996) (quoting Adler, The 1976 Medical Device Amendments: A Step in the

26   Right Direction Needs Another Step in the Right Direction, 43 Food Drug Cosm. L.J. 511, 516 (1988)).

27       23.    Pursuant to *Wyeth v. Levine*, 555 U.S. 555 (2009), once a product is cleared "the

28   manufacturer remains under an obligation to investigate and report any adverse events associated with

---

5

**AMENDED COMPLAINT FOR DAMAGES**

1   the drug . . . and must periodically submit any new information that may affect the FDA's previous

2   conclusions about the safety, effectiveness, or labeling . . . ." This obligation extends to post-market

3   monitoring of adverse events/complaints.

4         24.     The inferior vena cava is a vein that returns blood to the heart from the lower portions of

5   the body. In certain people, for various reasons, blood clots travel from the vessels in the legs and

6   pelvis, through the vena cava and into the lungs. These blood clots can develop in the deep leg veins, a

7   condition called "deep-vein thrombosis" or "DVT." Once blood clots reach the lungs, they are

8   considered "pulmonary emboli" or "PE." Pulmonary emboli present risks to human health.

9         25.     An IVC filter, like the Cook Gunther Tulip filter, is designed to prevent thromboembolic

10  events by filtering or preventing blood clots/thrombi from traveling to the heart and/or lungs.

11        26.     The Gunther Tulip IVC filter is a retrievable filter.

12        27.     The Gunther Tulip IVC filter has a top hook and four anchoring struts for fixation. On

13  each strut, it has a "flower" formation that is shorter than the strut where a wire piece branches out on

14  each side of the strut forming an overall "flower" type formation on each strut.

15        28.     At all times relevant hereto, the Gunther Tulip was widely advertised and promoted by

16  the Cook Defendants as safe and effective treatment for prevention of recurrent pulmonary embolism via

17  placement in the vena cava.

18        29.     At all times relevant hereto, Cook Defendants knew its filters were defective and knew

19  that defect was attributable to the design's failure to withstand the normal anatomical and physiological

20  loading cycles exerted *in vivo*.

21        30.     On or about December 4, 2015, RICHARD CHEUNG was implanted with a Cook

22  Gunther Tulip filter at Stanford Hospital, in Redwood City, California. The Gunther Tulip placed in Mr.

23  Cheung was a retrievable filter. Dr. Mell was the physician responsible for the implantation and

24  placement of Mr. Cheung's IVC filter. The filter was severely tiled which impaired its effectiveness in

25  catching blood clots and preventing pulmonary embolism.

26        31.     On or about December 20, 2015, RICHARD CHEUNG suffered injuries and died

27  unexpectedly from a massive hyperacute pulmonary thromboembolic event with numerous multifocal

28

---

—6—
**AMENDED COMPLAINT FOR DAMAGES**

Exhibit A
Page 26

1    clots seen in both pulmonary arteries, extending to the pulmonary trunk and right ventricle, as a direct

2    and proximate result of the Cook Gunther Tulip filter device, which was implanted by Dr. Mell.

3         32.    The Cook Defendants represented that the design of the Gunther Tulip filter allows

4    accurate, predictable placement, and that its site struts help reduce the risk of tilting and migration, while

5    in reality the filters regularly tilt, migrate, and become embedded in the vena cava wall. The anchoring

6    mechanism of Cook Defendants' IVC filters, thus, is also insufficient to prevent tilting and migrations

7    post-placement.

8         33.    The configuration of the Gunther Tulip filters renders them prothrombotic. This means

9    that the filters actually leads to the formation of thromboembolism and PE – the exact condition these

10    devices are meant to prevent.

11         34.    A medical device manufacturer must, at a minimum, undertake research and testing to

12    understand the anatomy of where a device will be implanted and understand the forces the device may

13    be exposed to once in a human body. This design input must then be used to determine the minimum

14    safety requirements or attributes the device must have to meet user needs. In the case of an IVC filter,

15    user needs include a device that will capture blood clots of sufficient size to cause harmful consequences

16    and that will not fracture, migrate, tilt, perforate the vena cava, or be prothrombotic. Cook Defendants

17    failed to undertake any such efforts in these regards.

18         35.    Prior to bringing a product to market, a medical device manufacturer must also conduct

19    sufficient testing under real world or simulated use conditions to ensure that the device will meet user

20    needs even when exposed to reasonably foreseeable worst-case conditions. The Cook Defendants failed

21    to adequately establish and maintain such policies, procedures or protocols with respect to the Cook

22    Gunther Tulip IVC filters.

23         36.    Once placed on the market, Cook Defendants' post-market surveillance system revealed,

24    or should have revealed, to the Cook Defendants that the Gunther Tulip filters were unreasonably

25    dangerous and substantially more prone to fail or malfunction, and cause great bodily harm and/or death

26    to patients compared to other available treatment options.

27

28

7

**AMENDED COMPLAINT FOR DAMAGES**

37.     The Cook Defendants failed to disclose to physicians and patients, including Decedent, that its Gunther Tulip IVC filter was subject to tilt, or the appropriate degree of risk and lack of efficacy a tilted Gunther Tulip filter exposed and provided to patients.

38.     At all times relevant hereto, the Cook Defendants continued to promote the Gunther Tulip filter as safe and effective even though the clinical trials that had been performed were not adequate to support long or short term efficacy.

39.     The Cook Defendants concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the Gunther Tulip IVC filter.

40.     The failure of the Gunther Tulip is attributable, in part, to the fact that the Cook filter suffers from a design defect causing it to be unable to withstand the normal anatomical and physiological loading cycles exerted *in vivo.*

41.     At all times relevant hereto the Cook Defendants failed to provide sufficient warnings and instructions that would have put the Decedent and the general public on notice of the dangers and adverse effects caused by implantation of the Gunther Tulip IVC filter, including, but not limited to the design's failure to withstand the normal anatomical and physiological loading cycles exerted *in vivo.*

42.     The Cook Gunther Tulip Filter was designed, manufactured, distributed, sold and/or supplied by the Cook Defendants, and was marketed while defective due to the inadequate warnings, instructions, labeling, and/or inadequate testing in light of Cook Defendants' knowledge of the products failure and serious adverse events.

43.     At all times relevant hereto, the officers and/or directors of the Cook Defendants named herein participated in, authorized and/or directed the production and promotion of the aforementioned products when they knew or should have known of the hazardous and dangerous propensities of the said products, and thereby actively participated in the tortuous conduct that resulted in the injuries suffered by the Decedent, RICHARD CHEUNG, as well as his untimely death on December 20, 2015.

44.     On December 15, 2016, Plaintiffs, pursuant to *Code of Civil Procedure* § 364, sent letters of intent to MATTHEW MELL, M.D. and STANFORD HEALTH CARE.  As such, this Complaint is filed within the requirements set forth in *Code of Civil Procedure* § 340.5.

# FIRST CAUSE OF ACTION

## STRICT PRODUCTS LIABILITY – INADEQUATE WARNING

### (As to Cook Defendants)

45.    Plaintiffs incorporate by reference all prior allegations.

46.    At all relevant times, as set forth, *supra*, Cook Defendants, and each of them, engaged in the business of researching, developing, testing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, packaging, processing, labeling, marketing, promoting, distributing, selling and/or introducing into interstate commerce the Gunther Tulip IVC filters, and, through that conduct, have knowingly and intentionally placed Gunther Tulip IVC filters into the stream of commerce with full knowledge that they reach consumers such as Decedent who would become implanted with one.

47.    Cook Defendants did, in fact, research, develop, test, design, set specifications for, license, manufacture, prepare, compound, assemble, package, process, label, market, promote, distribute and/or sell their Gunther Tulip IVC filters to Decedent, his prescribing health care professionals, and the consuming public.  Additionally, Cook Defendants expected that the Gunther Tulip IVC filters they were researching, developing, testing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, packaging, processing, labeling, marketing, promoting, distributing, and/or selling to reach, and did, in fact, reach, prescribing health care professionals and consumers, including Decedent and his prescribing health care professionals, without any substantial change in the condition of the product from when it was initially distributed by Cook Defendants.

48.    The Gunther Tulip IVC filters had potential risks and side effects that were known or knowable to the Cook Defendants by the use of scientific inquiry and information available before, at, and after the design, manufacture, labeling, marketing, distribution, and sale of the Gunther Tulip IVC filters.

49.    Cook Defendants knew or should have known of the defective condition, characteristics, and risks associated with Gunther Tulip IVC filters prior to, on, and after the date Decedent RICHARD CHEUNG was implanted with a Gunther Tulip IVC filter.  These defective conditions included, but were not limited to: (1) Gunther Tulip IVC filters posed a significant and higher risk of failure than other

9

**AMENDED COMPLAINT FOR DAMAGES**

Exhibit A
Page 29

1 similar IVC filters (fracture, migration, tilting, and perforation of the vena cava wall); (2) Gunther Tulip

2 IVC filter failures result in serious injuries and death; (3) certain conditions or post-implant procedures,

3 such as morbid obesity or open abdominal procedures, could affect the safety and integrity of Gunther

4 Tulip IVC filters; (4) leaving Gunther Tulip IVC filters in for a period longer than necessary to prevent

5 immediate risk of pulmonary embolism increases the risk for patients of failures and complications with

6 the filter, such as the filter becoming deeply embedded in the vena cava, making them difficult or

7 impossible for removal.

8      50.    The Cook Defendants placed into the stream of commerce for ultimate use by users like

9 Decedent and his health care providers, Gunther Tulip IVC filters that were in an unreasonably

10 dangerous and defective condition due to warnings and instructions for use that were inadequate,

11 including, but not limited to Cook Defendants' failure to:

12        a.  Provide adequate instructions on how to place the filter, including the importance of

13           avoiding tilt during placement;

14        b.  Provide adequate instructions for how long in patients the filter should remain;

15        c.  Highlight the importance of removing the filter;

16        d.  Warn of the known risk of great bodily harm or death if the filter was not removed;

17        e.  Highlight the known risk of great bodily harm or death in the event of occlusion of the

18           vein caused by the filter itself;

19        f.  Warn of the risk of new DVT if the filter was left in too long;

20        g.  Warn of the risk of new pulmonary embolism, thrombosis, swelling, and pain in the

21           lower extremities if the filter was left in too long; and

22        h.  Warn of the risk of filter tilt and associated risks;

23        i.  Warn of the risk of filter perforation, fracture, or migration.

24      51.    Gunther Tulip IVC filters were in a defective and unsafe condition that was unreasonably

25 and substantially dangerous to any user or consumer implanted with Gunther Tulip IVC filters, such as

26 Decedent, when used in an intended or reasonably foreseeable way.

27      52.    The warnings and directions the Cook Defendants provided with their Gunther Tulip IVC

28 filters failed to adequately warn of the potential risks and side effects of the Gunther Tulip IVC filters.

53. These risks were known or were reasonably scientifically knowable to Cook Defendants, but not known or recognizable to ordinary consumers, such as Decedent or his treating doctors.

54. Cook Defendants' IVC filters were expected to and did reach Decedent without substantial change in their condition, labeling, or warnings as manufactured, distributed, and sold by Cook Defendants.

55. Additionally, Decedent and his physician used Gunther Tulip IVC filters in the manner in which they were intended to be used, making such use reasonably foreseeable to the Cook Defendants.

56. Had Decedent and his implanting physician known of the aforementioned risks and dangers associated with Gunther Tulip IVC filters, as well as the lack of efficacy, and had Cook Defendants provided adequate warnings and information to Decedent and his physicians regarding same, Decedent and his implanting physician would not have used Cook Defendants' Gunther Tulip filters.

57. As a direct and proximate result of the Cook Defendants' information defects, lack of sufficient instructions or warnings prior to, on, and after the date Decedent RICHARD CHEUNG was implanted with a Gunther Tulip IVC filter, Plaintiffs and Decedent suffered Injuries and Damages, and/or Death.

## SECOND CAUSE OF ACTION

## STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT

### (As to Cook Defendants)

58. Plaintiffs incorporate by reference all prior allegations.

59. Prior to, on, and after the date the Gunther Tulip IVC filter was implanted in Decedent, Cook Defendants, and each of them, researched, developed, tested, designed, set specifications for, licensed, manufactured, prepared, compounded, assembled, packaged, processed, labeled, marketed, promoted, distributed, and/or sold the Gunther Tulip IVC filters for use in the United States, including California, and the Gunther Tulip IVC filter implanted in Decedent.

60. At all relevant times, Cook Defendants designed, distributed, manufactured, marketed, and sold Gunther Tulip IVC filters that were unreasonably dangerous, unsafe, and defective in manufacture when they left Cook Defendants' possession.

---

11

**AMENDED COMPLAINT FOR DAMAGES**

61.    Based on information and belief, Gunther Tulip IVC filters, including that implanted in Decedent, contained manufacturing defects in that they differed from Cook Defendants' design or specifications, or from other typical units of the same product line.

62.    Based on information and belief, the manufacturing process employed by Cook Defendants for their Gunther Tulip IVC filters, including that implanted in Decedent, resulted in surface damage to the wire and weakening of the structural integrity of Cook Defendants' IVC filters, thus increasing the risk of tilt, cracks, fracture, breakage, perforation and migration.

63.    Based on information and belief, the Cook Defendants maintained design and manufacturing specifications that Gunther Tulip IVC filters were required to have the appropriate metal content, strength, size, durability, appearance, resistance levels, and number of inclusions, and should not be distributed if they exhibited a certain degree of surface damage.  The manufacturing process was intended to catch and identify any end-product filters that did not meet specifications and not distribute said filters.

64.    The degrees of surface damage present in Decedent's Gunther Tulip IVC filter was above the acceptable level as set by the Cook Defendants' design and manufacturing specifications.

65.    Based on information and belief, Cook Defendants manufactured the conichrome used in the Gunther Tulip IVC filter implanted in Decedent, such that it failed to meet specifications as to the appropriate appearance (e.g., degree of surface blemishes), metal content, strength, and number of inclusions, which substantially increased the risk of, *inter alia*, fatigue failure, perforation, tilt, fracture, and migration in said device.

66.    As a direct and proximate cause of Cook Defendants' defective manufacture of the Gunther Tulip IVC filter implanted in Decedent RICHARD CHEUNG, Plaintiffs and Decedent suffered Injuries and Damages, and/or Death.

/ / /

/ / /

/ / /

---

12

**AMENDED COMPLAINT FOR DAMAGES**

**THIRD CAUSE OF ACTION**

**NEGLIGENCE**

**(As to Cook Defendants)**

67.     Plaintiffs incorporate by reference all prior allegations.

68.     At the time of the design, distribution, manufacture, advertising, sale, and marketing of Gunther Tulip IVC filters and its implantation in Decedent, the Cook Defendants were aware that the Gunther Tulip IVC filters were designed and manufactured in a manner presenting:

   a.   An unreasonable risk of fracture of portions of the filters;

   b.   An unreasonable risk of migration of the filters and/or portions of the filters;

   c.   An unreasonable risk of filters tilting and/or perforating the vena cava wall; and

   d.   Insufficient strength or structural integrity to withstand normal placement within the human body.

69.     At the time of the design, distribution, manufacture, advertising, sale, and marketing of the Gunther Tulip IVC filters, and its implantation in Decedent, Cook Defendants were also aware that Gunther Tulip IVC filters:

   a.   Would be used without inspection for defects;

   b.   Would be used by patients with special medical conditions such as Decedent;

   c.   Had previously caused serious bodily injury to its users with special medical conditions such as Decedent;

   d.   Had no established efficacy;

   e.   Were less safe and effective than the predicate IVC filters already available on market;

   f.   Would be implanted in patients where the risk outweighed any benefit or utility of the filters;

   g.   Contained instructions for use and warnings that were inadequate;

   h.   Were prothrombotic; and

   i.   Were prone to severe tilting.

70.     At the time of manufacture and sale of the Gunther Tulip filters, including the one implanted in Decedent, Cook Defendants knew or should have known that using the Gunther Tulip IVC

13

**AMENDED COMPLAINT FOR DAMAGES**

1 filters as intended or in a reasonably foreseeable manner created a significant risk of patients suffering

2 severe health side effects including, but not limited to: hemorrhage; cardiac/pericardial tamponade;

3 cardiac arrhythmia and other symptoms similar to myocardial infarction; perforations of tissue, vessels

4 and organs; chronic deep vein thrombosis; pulmonary embolism; thrombosis; compartment syndrome;

5 and other severe personal injuries and diseases, which are permanent in nature, including, but not limited

6 to, death, physical pain and mental anguish, scarring and disfigurement, diminished enjoyment of life,

7 continued medical care and treatment due to chronic injuries/illness proximately caused by the device;

8 and the continued risk of requiring additional medical and surgical procedures including general

9 anesthesia, with attendant risk of life threatening complications.

10    71.    Cook Defendants had a duty to exercise due care and avoid unreasonable risk of harm to

11 others in the design of the Gunther Tulip IVC filters.

12    72.    Cook Defendants breached these duties by, among other things:

13    a.  Designing and distributing a product in which it knew or should have known that the

14        likelihood and severity of potential harm from the product exceeded the burden of taking

15        safety measures to reduce or avoid harm;

16    b.  Designing and distributing a product which it knew or should have known that the

17        likelihood and severity of potential harm from the product exceeded the likelihood of

18        potential harm from other IVC filters available for the same purpose;

19    c.  Failing to perform reasonable pre- and post-market testing of Gunther Tulip IVC filters to

20        determine whether or not the products were safe for their intended use;

21    d.  Failing to use reasonable and prudent care in the design, research, manufacture, and

22        development of Gunther Tulip IVC filters so as to avoid the risk of serious harm

23        associated with the use of such filters;

24    e.  Advertising, marketing, promoting, and selling Gunther Tulip IVC filters for uses other

25        than as approved and indicated in the products' labels;

26    f.  Failing to use reasonable care to warn or instruct, including pre and post-sale, Decedent,

27        his prescribing physicians, or the general health care community about the Gunther Tulip

28

filters' substantially dangerous condition or about facts making the products likely to be

dangerous;

g. Advertising, marketing and recommending the use of the Gunther Tulip filters, while

concealing and failing to disclose or warn of the dangers known by Cook Defendants to

be connected with and inherent in the use of these filter systems;

h. Representing that the Gunther Tulip filters were safe for their intended use when, in fact,

Cook Defendants knew and should have known the products were not safe for their

intended uses;

i. Continuing to manufacture and sell the Gunther Tulip filters with the knowledge that said

products were dangerous and not reasonably safe, and failing to comply with good

manufacturing regulations;

j. Failing to establish an adequate quality assurance program used in the manufacturing of

Gunther Tulip IVC filters; and

k. Failing to perform adequate evaluation and testing of Gunther Tulip IVC filters when

such evaluation and testing would have revealed the propensity of Gunther Tulip IVC

filters to cause injuries similar to those that Decedent suffered.

73. At all relevant times, Cook Defendants had a duty to exercise due care in the

manufacturing of the Gunther Tulip IVC filters.

74. Cook Defendants breached this duty by, among other things:

a. Failing to adopt manufacturing processes that would reduce the foreseeable risk of

product failure;

b. Failing to use reasonable care in manufacturing the product and by producing a product

that differed from their design or specifications or from other typical units from the same

production line;

c. Failing to use reasonable and prudent care in the design, research, manufacture, and

development of Gunther Tulip IVC filters and their manufacturing process so as to avoid

the risk of serious harm associated with the use of said filters; and

15

**AMENDED COMPLAINT FOR DAMAGES**

d.  Failing to establish an adequate quality assurance program used in the manufacturing of their IVC filters.

75.  At this time, all Gunther Tulip IVC filters are misbranded and adulterated by virtue of them failing to be the substantial equivalent of predicate IVC filter devices, making them subject to corrective action, including recall, in the interest of patient safety.

76.  Prior to, on, and after the date of Decedent's implantation with a Gunther Tulip IVC filter, and at all relevant times, Cook Defendants knew or reasonably should have known that Gunther Tulip IVC filters and their warnings were defective and dangerous or were likely to be dangerous when used in a reasonably foreseeable manner.

77.  Prior to, on, and after the date of Decedent's implantation with a Gunther Tulip IVC filter and at all relevant times thereafter, Cook Defendants became aware that the defects of Gunther Tulip IVC filters resulted in Gunther Tulip IVC filters causing injuries similar to those Decedent suffered.

78.  Reasonable manufacturers and distributors under the same or similar circumstances would have recalled or retrofitted Gunther Tulip IVC filters, and would thereby have avoided and prevented harm to many patients, including Decedent.

79.  In light of this information and Cook Defendants' knowledge described above, Cook Defendants had a duty to recall and/or retrofit Gunther Tulip IVC filters.

80.  The Cook Defendants breached its duty to recall and/or retrofit Gunther Tulip IVC filters.

81.  At all relevant times, Cook Defendants knew or should have known that Gunther Tulip IVC filters were defective and dangerous or were likely to be dangerous when used in a reasonably foreseeable manner.

82.  Such danger included the propensity of Gunther Tulip IVC filters to cause injuries similar to those suffered by Decedent.

83.  At all relevant times, Cook Defendants also knew or reasonably should have known that the users of Gunther Tulip IVC filters, including Decedent and his health care providers, would not realize or discover on their own the dangers presented by Gunther Tulip IVC filters.

84.  Reasonable manufacturers and reasonable distributors, under the same or similar circumstances as those of Cook Defendants prior to, on, and after the date of Decedent's use of a

1 | Gunther Tulip IVC filter, would have warned of the dangers presented by Gunther Tulip IVC filters, or
2 | instructed on the safe use of Gunther Tulip IVC filters.

3 | 85. Prior to, on, and after the date of Decedent's use of the IVC filter, Cook Defendants had a
4 | duty to adequately warn of the dangers presented by Gunther Tulip IVC filters and/or instruct on the
5 | safe use of Gunther Tulip IVC filters.

6 | 86. The Cook Defendants breached these duties by failing to provide adequate warnings to
7 | Decedent RICHARD CHEUNG, communicating the information and dangers described above and/or
8 | providing instruction for safe use of Gunther Tulip IVC filters.

9 | 87. As a direct and proximate result of Cook Defendants' negligent conduct described herein,
10 | Plaintiffs and Decedents suffered Injuries and Damages, and/or Death.

11 | **FOURTH CAUSE OF ACTION**

12 | **NEGLIGENT MISREPRESENTATION**

13 | **(As to Cook Defendants)**

14 | 88. Plaintiffs incorporate by reference all prior allegations.

15 | 89. Prior to, on, and after the dates the Gunther Tulip IVC filter was implanted in Decedent,
16 | Cook Defendants, and each of them, researched, developed, tested, designed, set specifications for,
17 | licensed, manufactured, prepared, compounded, assembled, packaged, processed, labeled, marketed,
18 | promoted, distributed, and/or sold the Gunther Tulip IVC filters for use in the United States, including
19 | California, and the Gunther Tulip IVC filter implanted in Decedent.

20 | 90. Prior to, on, and after the dates Cook Defendants, and each of them, distributed the
21 | Gunther Tulip IVC filter to Decedent through his health care providers, the Cook Defendants
22 | negligently and carelessly represented to Decedent, his treating physicians, the medical community, the
23 | FDA, and the general public that certain material facts were true when they were, in fact, false. The
24 | misrepresentations include, *inter alia*, the following:

25 |     a. That the Gunther Tulip IVC filters were safe, fit, and effective for use to prevent PEs.

26 |     b. That the Gunther Tulip IVC filters were not prothrombotic.

27

28

---

17

**AMENDED COMPLAINT FOR DAMAGES**

c. That the design of the Gunther Tulip IVC filters was better than competitor designs and eliminated the risk that pieces of the device could perforate the vena cava, that the devices could tilt, or that fractures could occur and migrate throughout the body.

d. That the Gunther Tulip IVC filters were as safe and as effective as the predicate devices set forth in their 510(k) applications to the FDA, which, by law, they were required to be.

e. That the Gunther Tulip IVC filters were safer and more effective than other available IVC filters.

f. That the Gunther Tulip IVC filters post-market were not found to have any increased risks of device failures or complications, such as tilt, perforation, fracture, migration, retrieval difficulties and/or death.

91. All of the aforementioned information and representations emanated from the same source, Cook Defendants, and was vetted by their copy review department (or equivalent) to ensure uniformity and harmony of the marketing message. The manner by which such information and representations were distributed, made available, or otherwise provided by Cook Defendants to Decedent and his health care providers was the same and include, but are not limited to, the following: reports, press releases, advertising campaigns, product information, instructions for use and other labeling materials provided with the Gunther Tulip IVC filters, print advertisements, commercial media containing material representations, as well as through their officers, directors, agents and representatives, including the Cook sales representatives that met with and detailed Decedent's prescribing and implanting physicians on the Gunther Tulip IVC filters, the 510(k) applications by Cook Defendants to the FDA for the Gunther Tulip filters, patient brochures, training seminars hosted by said Defendants, CME materials created and distributed by Cook Defendants, information supplied at professional conferences at booths hosted or manned by Cook Defendants or their Key Opinion Leaders, as well as the websites of Cook Defendants that provided information on the Gunther Tulip IVC filter, including product description, indications for use, instructions for use, and ordering information.

92. Decedent's prescribing and implanting physicians reviewed and relied on these materials, including, specifically, the product information, instructions for use, indications for use, and labeling materials provided with these devices, in performing a risk/benefit analysis in deciding to prescribe or

Exhibit A
Page 38

1  recommend use of a Gunther Tulip IVC filter in Decedent, and determining what risk information to

2  inform and discuss with Decedent, as part of the informed consent process.

3       93.    Prior to, on, and after the date Decedents and his physicians purchased and used the

4  device, said representations were untrue at the times they were made, and there was no reasonable

5  ground for Cook Defendants to believe said representations were true when said Defendants made said

6  representations.

7       94.    Prior to, on, and after the date Decedent and his physicians purchased and used the

8  device, Cook Defendants intended that Decedent, his physicians, and the general public would rely on

9  said representations and prescribe the Gunther Tulip IVC filters, which did in fact occur.

10       95.    The Cook Defendants knew or should have known prior to introduction on the market

11  and at the time of submitting the 510(k) applications that these representations were untrue, from their

12  own internal testing, analysis and investigation throughout the design and manufacturing process.

13  Moreover, post-market performance promptly revealed poor outcomes in patients who were suffering

14  failures and adverse events at an increased rate compared to other IVC filters.  This triggered the

15  obligation for further investigation and analysis of the safety and efficacy of the Gunther Tulip IVC

16  filters from the Cook Defendants, which further confirmed that the Gunther Tulip IVC filters were, in

17  fact, inferior in safety and efficacy and posed greater risks of harm and death than other IVC filters on

18  the market, including the predicate devices for the Gunther Tulip.

19       96.    It was known or should have been known by Cook Defendants, at all relevant times, that

20  the Gunther Tulip IVC filters, by way of their design, created and caused these devices to be

21  prothrombotic.  This information was revealed in the Cook Defendants' pre-market testing and analysis,

22  and has been reaffirmed throughout the post-market experience of these products, as reflected by the

23  increased number of these adverse event reports by physicians and published opinions in medical

24  literature.

25       97.    Cook Defendants owed a duty in all of their undertakings, including the dissemination of

26  information concerning its IVC filters, to exercise reasonable care to ensure that they did not in those

27  undertakings create unreasonable risks of personal injury to others.

28

Exhibit A
Page 39

98.    As set forth, *supra*, Cook Defendants disseminated to health care professionals and consumers through published labels, labeling, marketing materials, and otherwise information concerning the properties and effects of Gunther Tulip IVC filters with the intention that health care professionals and consumers would rely upon that information in their decisions concerning whether to prescribe and use Cook Defendants' IVC filters.

99.    The Cook Defendants, as medical device designers, manufacturers, sellers, promoters and/or distributors, knew or should reasonably have known that health care professionals and consumers, in weighing the potential benefits and potential risks of prescribing or using Gunther Tulip IVC filters, would rely upon information disseminated and marketed by Cook Defendants to them regarding the Gunther Tulip IVC filters.

100.    Cook Defendants failed to exercise reasonable care to ensure that the information they disseminated to health care professionals and consumers concerning the properties and effects of Gunther Tulip IVC filters was accurate, complete, and not misleading and, as a result, disseminated information to health care professionals and consumers that was negligently and materially inaccurate, misleading, false, and unreasonably dangerous to consumers such as Decedent.

101.    The Cook Defendants, as designers, manufacturers, sellers, promoters, and/or distributors, also knew or reasonably should have known that patients receiving Gunther Tulip IVC filters as recommended by health care professionals in reliance upon information disseminated by Cook Defendants as the manufacturer/distributor of Defendants' IVC filters would be placed in peril of developing the serious, life-threatening, and life-long injuries including, but not limited to, tilting, migration, perforation, fracture, lack of efficacy, and increased risk of the development of blood clots, if the information disseminated and relied upon was materially inaccurate, misleading, or otherwise false.

102.    The Cook Defendants had a duty to promptly correct material misstatements Cook Defendants' knew others were relying upon in making healthcare decisions. Cook Defendants purposely chose not to, however, in order to maintain their market share and level of competition with other IVC filter manufacturers.

AMENDED COMPLAINT FOR DAMAGES

Exhibit A
Page 40

103.     Cook Defendants failed in each of these duties by misrepresenting to Decedent RICHARD CHEUNG, his implanting physician, and the medical community in general, the safety and efficacy of Gunther Tulip IVC filters and failing to correct known misstatements and misrepresentations.

104.     As a direct and proximate result of Cook Defendants' negligent misrepresentations, Plaintiffs and Decedents suffered Injuries and Damages, and/or Death.

## FIFTH CAUSE OF ACTION

## FRAUDULENT MISREPRESENTATION

### (As to Cook Defendants)

105.     Plaintiffs incorporate by reference all prior allegations.

106.     Prior to, on, and after the date the Cook Defendants, and each of them, distributed the Gunther Tulip IVC filters to Decedent's health care providers, Cook Defendants intentionally represented to Decedent, his treating physicians, the medical community, the FDA, and the general public that certain material facts were true when they were, in fact, known by the Cook Defendants to be false and inaccurate. These misrepresentations involved the following topics:

    a.   The safety of the Gunther Tulip IVC filters;

    b.   The efficacy of the Gunther Tulip IVC filters;

    c.   The rate of failure of the Gunther Tulip IVC filters;

    d.   The adverse event reporting data of the Gunther Tulip IVC filters;

    e.   The pre-market testing of the Gunther Tulip IVC filters;

    f.   The approved uses of the Gunther Tulip IVC filters; and

    g.   The ability to retrieve the device at any time over a person's life.

107.     All of the aforementioned information and representations emanated from the same source, Cook, and was vetted by its copy review department (or equivalent) to ensure uniformity and harmony of the marketing message. The manner by which such information and representations were distributed, made available, or otherwise provided by Cook Defendants to Decedent and his health care providers was the same and include, but are not limited to, the following: reports, press releases, advertising campaigns, product information, instructions for use and other labeling materials provided with the Gunther Tulip IVC filters, print advertisements, commercial media containing material

21

AMENDED COMPLAINT FOR DAMAGES

Exhibit A
Page 41

1    representations, as well as through their officers, directors, agents and representatives, such as the Cook

2    sales representatives that met with and detailed Decedent's prescribing physicians on the Gunther Tulip

3    IVC filters, 510(k) applications to the FDA for the Gunther Tulip filters, patient brochures, training

4    seminars hosted by Cook Defendants, CME materials created and distributed by Cook Defendants,

5    information supplied at professional conferences at booths hosted or manned by Cook Defendants or

6    their Key Opinion Leaders, as well as the websites of Cook Defendants that provided information on the

7    Gunther Tulip IVC filter, including product description, indications for use, instructions for use, and

8    ordering information.

9        108.    These sources and materials contained false and misleading material representations,

10   which included:

11       a.   That the Gunther Tulip IVC filters were safe and fit when used for their intended purpose

12            or in a reasonably foreseeable manner;

13       b.   That the Gunther Tulip IVC filters did not pose dangerous health risks in excess of those

14            associated with the use of other similar IVC filters, including the predicate devices for the

15            Gunther Tulip filter;

16       c.   That the design of the Gunther Tulip IVC filters would eliminate the risks that pieces of

17            the device could perforate the vena cava or other organs, that the devices could tilt, or

18            that fractures could occur and migrate throughout the body;

19       d.   That the Gunther Tulip IVC filters were safer and more effective than other available

20            IVC filters;

21       e.   That any and all side effects from the Gunther Tulip IVC filters were accurately reflected

22            in the product information, instructions for use, warnings, and other labeling information

23            provided with the devices;

24       f.   That any and all types of adverse events associated with the Gunther Tulip IVC filters

25            was a class effect and essentially the same among all IVC filters;

26       g.   That the design of the Gunther Tulip IVC filters did not cause or promote blood clots,

27            clotting or occlusion of the IVC filter, or recurrent DVT and/or PE; and

28

**AMENDED COMPLAINT FOR DAMAGES**

Exhibit A
Page 42

h. That the Gunther Tulip IVC filters were adequately tested pre-market and prior to submitting the 510(k) applications to the FDA for clearance to withstand normal placement within the human body.

109. Cook Defendants made the foregoing misrepresentations knowing that they were false or without reasonable basis. As mentioned, *supra*, these materials included instructions for use and a warning document that was included in each package of the Gunther Tulip IVC filters distributed to Decedent's implanting physicians and implanted in Decedent.

110. The Cook Defendants knew prior to introduction on the market and at the time of submitting the 510(k) applications that these representations were untrue, from their own internal testing, analysis and investigation throughout the design and manufacturing process. Moreover, post-market performance immediately confirmed poor outcomes in patients who were suffering failures and adverse events at an increased rate compared to other IVC filters. This triggered the obligation for further investigation and analysis of the safety and efficacy of the Gunther Tulip IVC filters from Cook Defendants, which further established that the Gunther Tulip IVC filters were, in fact, inferior in safety and efficacy and posed greater risks of harm and death than other IVC filters on the market, including the predicate devices for the Gunther Tulip.

111. It was known by Cook Defendants, at all relevant times, that the Gunther Tulip IVC filters, by way of their design, created and caused these devices to be prothrombotic; blood clots, clotting and occlusion of the Gunther Tulip IVC filters were found to occur at a significantly increased rate compared to other IVC filters. This information was revealed in Cook Defendants' pre-market testing and analysis, and has been reaffirmed throughout the post-market experience of these products, as reflected by the increased number of these adverse event reports by physicians and published opinions in medical literature.

112. The Cook Defendants' intent and purpose in making the aforementioned misrepresentations was to deceive and defraud the public and the medical community, including the FDA, and Decedent's health care providers; to gain the confidence of the public and the medical community, including Decedent's health care providers; to falsely assure the public and the medical community of the quality of the Gunther Tulip IVC filters and their fitness for use; and to induce the

---

23

**AMENDED COMPLAINT FOR DAMAGES**

1    public and the medical community, including Decedent's health care providers to request, recommend,

2    prescribe, implant, purchase, and continue to use the Gunther Tulip filters , all in reliance on said

3    Defendants' misrepresentations, for the ultimate purposes of maintaining a competitive level with other

4    IVC filter manufacturers, gaining market share, and profiting.

5         113.    The foregoing representations and omissions by Cook Defendants were, in fact, false.

6         114.    Cook Defendants acted to serve their own interests and consciously disregarded

7    information generated by or made available to said Defendants establishing the substantial risk that the

8    Gunther Tulip IVC filters could cause great bodily harm and/or death in patients.

9         115.    Decedent's prescribing and implanting physicians reviewed and relied on these

10   aforementioned material misrepresentations, including, specifically, the product information,

11   instructions for use, indications for use, and labeling materials provided with these devices, in

12   performing a risk/benefit analysis in deciding whether to prescribe or recommend use of a Gunther Tulip

13   IVC filter in Decedent, and determining what risk information to inform and discuss with Decedent, as

14   part of the informed consent process.

15        116.    Cook Defendants' IVC filters are not safe, fit, and effective for human use in their

16   intended and reasonably foreseeable manner.

17        117.    Further, the use of Gunther Tulip IVC filters is hazardous to the users' health, and the

18   Gunther Tulip IVC filters have a serious propensity to cause users to suffer serious injuries, including

19   without limitation the injuries Decedent suffered, as well as his death.

20        118.    Finally, Cook Defendants' IVC filters have a statistically significant higher rate of failure

21   and injury than do other comparable IVC filters.

22        119.    In reliance upon the false representations and omissions made by Cook Defendants,

23   Decedent and his health care providers were induced to, and did use the Gunther Tulip IVC filter,

24   thereby causing Decedent to sustain severe personal injuries and death, as described herein.

25        120.    Cook Defendants knew and had reason to know that Decedent, his health care providers,

26   and the general medical community did not have the ability to determine the true facts intentionally

27   concealed and misrepresented by said Defendants, and would not have prescribed and implanted

28

1  Gunther Tulip IVC filters if the true facts regarding Gunther Tulip filters had not been concealed and

2  misrepresented by Cook Defendants.

3       121.    The Cook Defendants had sole access to material facts concerning the defective nature of

4  the Gunther Tulip filters, and their propensities to cause serious and dangerous side effects in the form

5  of dangerous injuries and damages to persons who were implanted with Gunther Tulip IVC filters.

6       122.    At the time Cook Defendants failed to disclose and intentionally misrepresented the

7  foregoing facts, and at the time Decedent was implanted with Gunther Tulip IVC filters, Decedent and

8  his health care providers were unaware of Cook Defendants' misrepresentations and omissions.

9       123.    The aforementioned concealed and misrepresented facts were critical to Decedent's

10  health care provider understanding the true risks and dangers inherent in Gunther Tulip IVC filters;

11  instead, Decedent's physicians reasonably relied upon the misrepresentations made by the Cook

12  Defendants in deciding to implant the Gunther Tulip IVC filter in Decedent.

13       124.    These fraudulent misrepresentations made by Cook Defendants to Decedent's health care

14  providers were a substantial contributing factor in their decision to recommend, use and implant the

15  Gunther Tulip IVC filters in Decedent RICHARD CHEUNG, and in causing Plaintiffs' and Decedents'

16  injuries and damages, and/or death.

17       125.    As a direct and proximate result of the Cook Defendants' fraudulent misrepresentations,

18  Plaintiffs and Decedents suffered Injuries and Damages, and/or Death.

19  **SIXTH CAUSE OF ACTION**

20  **FRAUDULENT CONCEALMENT**

21  **(As to Cook Defendants)**

22       126.    Plaintiffs incorporate by reference all prior allegations.

23       127.    In designing, manufacturing, marketing, distributing and selling the Gunther Tulip IVC

24  filters, the Cook Defendants concealed material facts from Decedent and his healthcare providers.

25       128.    These concealed material facts include, but are not limited to:

26         a.    That the Gunther Tulip IVC filters were unsafe and not fit when used for their intended

27            purpose or in a reasonably foreseeable manner;

28

---

25
**AMENDED COMPLAINT FOR DAMAGES**

b. That the Gunther Tulip IVC filters posed dangerous health risks in excess of those associated with the use of other similar IVC filters;

c. That there were additional side effects related to implantation and use of Gunther Tulip IVC filters that were not accurately and completely reflected in the warnings associated with Gunther Tulip IVC filters, including the fact that they are prothrombotic and that tilt could render them ineffective;

d. That the Gunther Tulip IVC filters were not adequately tested to withstand normal placement within the human body;

e. That Cook Defendants were aware prior to, on, and after the date the Gunther Tulip IVC filter was distributed and implanted in Decedent that electropolishing strengthened the structural integrity of the Gunther Tulip IVC filters, thereby reducing the risk of fracture.

129. Decedent and his health care providers were not aware of these and other facts concealed by Cook Defendants.

130. Cook Defendants are and were under a continuing duty to disclose the true character, quality and nature of the Gunther Tulip IVC filters that was implanted in Decedent, but, instead, they concealed them, at all relevant times. Cook Defendants' conduct, as described herein, arises to purposeful conduct, which the Cook Defendants realized was dangerous, reckless and without regard to the consequences or the rights and safety of Decedent.

131. In concealing these and other facts, Cook Defendants intended to deceive Decedent and his health care providers as to the true facts regarding the safety and efficacy of the Gunther Tulip IVC filters.

132. Decedent and his health care providers were ignorant of and could not reasonably discover the facts Cook Defendants fraudulently concealed and reasonably and justifiably relied on Cook Defendants' representations concerning the supposed safety and efficacy of Gunther Tulip IVC filters.

133. Decedent's prescribing and implanting physicians did, in fact, review and rely on the product inserts provided by Cook Defendants with the Gunther Tulip IVC filters prior to prescribing one for Decedent, for the purpose of making a risk/benefit assessment as to whether to prescribe or

1  recommend the Gunther Tulip filters, and determining what risk information to share and discuss with

2  Decedent.

3       134.   Decedent and his prescribing and implanting physicians reasonably and justifiably relied

4  on Cook Defendants' concealments and deception.

5       135.   Decedent's health care providers would not have prescribed, recommended, or otherwise

6  used the Gunther Tulip IVC filters to or with Decedent RICHARD CHEUNG, had Cook Defendants not

7  concealed the material information about the risks and efficacy, as set forth herein.

8       136.   As a direct and proximate result of Cook Defendants' fraudulent concealment of material

9  facts, Plaintiffs and Decedents suffered Injuries and Damages, and/or Death.

10  **SEVENTH CAUSE OF ACTION**

11  **BREACH OF EXPRESS WARRANTY**

12  **(As to Cook Defendants)**

13       137.   Plaintiffs incorporate by reference all prior allegations.

14       138.   Decedent, through his medical providers, purchased a Gunther Tulip IVC filter from

15  Cook Defendants.

16       139.   At all relevant times, Cook Defendants were merchants of goods of the kind including

17  medical devices and vena cava filters (i.e., Gunther Tulip IVC filters).

18       140.   At the time and place of sale, distribution, and supply of Gunther Tulip IVC filters to

19  Decedent (and to other consumer and the medical community), Cook Defendants expressly represented

20  and warranted that Gunther Tulip IVC filters:

21       a.  Were safe;

22       b.  Were well-tolerated, efficacious, fit for their intended purpose, and of marketable quality;

23       c.  Did not produce any unwarned-of dangerous side effects; and

24       d.  Were adequately tested.

25       141.   These express representations were set forth by Cook Defendants in package inserts for

26  Gunther Tulip IVC filters and media advertisements.

27

28

27

**AMENDED COMPLAINT FOR DAMAGES**

1      142.    At the time of Decedent's purchase from Cook Defendants, Gunther Tulip IVC filters

2 were not in a merchantable condition, and Cook Defendants breached its expressed warranties, in that

3 Gunther Tulip IVC filters, among other things:

4        a.   Were designed in such a manner so as to be prone to an unreasonably high incidence and

5           severity of tilt, fracture, perforation of vessels and organs, and/or migration;

6        b.   Were designed in such a manner so as to result in a unreasonably high incidence of injury

7           to the vessels and organs of its purchaser;

8        c.   Were manufactured in such a manner that the exterior surface of the filter was

9           inadequately, improperly, and inappropriately constituted, causing the device to weaken

10          and fail;

11       d.   Were unable to be removed at any time during a person's life;

12       e.   Were not efficacious in the prevention of pulmonary emboli;

13       f.   Carried a risk of use that outweighed any benefit; and

14       g.   Were not self-centering.

15      143.    As a direct and proximate result of Cook Defendants' breach of express warranty,

16 Plaintiffs and Decedent suffered Injuries and Damages, and/or Death.

17 **EIGHTH CAUSE OF ACTION**

18 **MEDICAL MALPRACTICE**

19 **(As to Medical Defendants)**

20      144.    Plaintiffs incorporate by reference all prior allegations.

21      145.    Plaintiffs further allege that in the aforementioned examinations, diagnoses, prescriptions,

22 surgery and the handling and control of the care and treatment of Decedent, RICHARD CHEUNG, by

23 Medical Defendants, and each of them, said Medical Defendants, and each of them, negligently and

24 tortiously failed to possess or exercise that degree of knowledge or skill that would ordinarily be

25 possessed and exercised by physicians and surgeons, hospitals, nurses, surgical technicians, attendants,

26 medical clinics, and the like, engaged in said professions in the same locality as Medical Defendants,

27 and each of them, in that said Medical Defendants, and each of them, negligently and unlawfully failed

28 to properly and correctly diagnose, render care and treatment to, obtain informed consent, perform

28

**AMENDED COMPLAINT FOR DAMAGES**

1   proper surgery on, and prescribe and administer medicine and drugs for the condition of Decedent,

2   RICHARD CHEUNG, causing his death on or about December 20, 2015.

3        146.    On or about December 4, 2015, Decedent underwent an implant procedure at Stanford

4   Hospital in Redwood City, California for placement of a Gunther Tulip filter by Defendants

5   MATTHEW MELL, M.D. and Stanford, through its agents and employees, and DOES 26 through 50.

6   Dr. Mell improperly and negligently failed to appropriately implant the filter, but instead placed it in a

7   severely tilted position and failed to make any reasonable efforts to correct the dangerous tilting or take

8   other medically recognized measures, all of which was below the accepted medical standard of care in

9   the community.

10        147.    Further, Dr. Mell negligently and unlawfully failed to advise other treating specialists of

11   RICHARD CHEUNG of the severe tilt of his filter and the serious and deadly risks associated with a

12   tilted filter. The other treating specialists included Dr. Gary Steinberg in neurosurgery for Mr. Cheung's

13   moyamoya disease which involved the risk of stroke without a surgical craniotomy, and the monitoring

14   of his pre-existing hypercoagulation disorder (which is a type of hyperclotting abnormality) by Dr.

15   Caroline Berube in hematology. These other treating physicians were tasked with making the difficult

16   and close decision regarding whether to proceed with surgical craniotomy in less than three (3) months

17   after an earlier pulmonary embolism, or wait the customary standard of care six (6) months after a

18   pulmonary embolism event had passed before performing the craniotomy surgery. The other treating

19   physicians opted for the early surgery date knowing that the anticoagulation medication successfully

20   controlling Mr. Cheung's clotting disorder had to be stopped prior to surgery to avoid a bleeding risk

21   because they relied instead on the protective capability of a properly implanted filter until

22   anticoagulation could safely be resumed after surgery. Although the hematologist proceeded in an

23   aggressive but prudent manner during the period of her care, and the craniotomy surgery provided

24   excellent results to Mr. Cheung, the surgical success was entirely undermined by the condition of the

25   severely tilted filter which was well known by Dr. Mell at all times material hereto, but unknown by the

26   other treating specialists.

27

28

AMENDED COMPLAINT FOR DAMAGES

148.    Additionally, Dr. Mell's failure to properly warn Decedent and other treating physicians involved in Mr. Cheung's care of the severely tilted filter and related risks resulted in a lack of informed consent to surgery by Mr. Cheung and his wife, DARA BERMAN-CHEUNG.

149.    As a direct and proximate result of the negligence, carelessness, recklessness, wantonness and unlawfulness of the Medical Defendants and each of them, and the resulting death, as aforesaid, Plaintiffs DARA BERMAN-CHEUNG, SAM BERMAN CHEUNG and BAILEY BERMAN CHUNG have suffered and continue to suffer from a life-altering tragedy and resulting damages in a sum within the jurisdiction of this Court and to be shown according to proof.

150.    As a direct and proximate result of the acts and omissions of Medical Defendants, and each of them, Plaintiffs have incurred expenses for the funeral and burial of Decedent, RICHARD CHEUNG, the exact value and amount of which will be shown according to proof.

151.    As a further direct and proximate result of the acts and omission of Medical Defendants, and each of them, Plaintiffs have been damaged in that each has been deprived of the care, comfort, society, protection, support, love, and services of Decedent, RICHARD CHEUNG, all to their damage in a sum according to proof at the time of trial and in excess of the minimum jurisdictional limit of this court.

152.    As a further direct and proximate result of the acts and omissions of Medical Defendants, and each of them, Plaintiffs have sustained and will in the future sustain loss of financial support from Decedent, RICHARD CHEUNG, and the value of Decedent's services to Plaintiffs in an amount to be shown according to proof.

### NINTH CAUSE OF ACTION

### SURVIVAL ACTION

#### (As to All Defendants)

153.    Plaintiffs incorporate by reference all prior allegations.

154.    DARA BERMAN-CHEUNG, SAM BERMAN CHEUNG and BAILEY BERMAN CHEUNG are the successors-in-interest to Decedent, RICHARD CHEUNG.

155.    As a direct and proximate result of the wrongful acts and omissions of the defendants, as alleged herein, Decedent suffered personal injuries for which he was required to and did employ

Exhibit A
Page 50

| | |
|---|---|
| 1 | physicians and other health care providers to examine, treat and care for him. As a further proximate |
| 2 | result, RICHARD CHEUNG experienced significant pain and suffering prior to his death, and incurred |
| 3 | medical and incidental expenses, as well as lost wages. |

**TENTH CAUSE OF ACTION**

**WRONGFUL DEATH**

**(As to All Defendants)**

7.       156.    Plaintiffs incorporate by reference all prior allegations.

157.    RICHARD CHEUNG was prescribed, supplied with, received, took, used and was implanted with a Gunther Tulip IVC filter product as tested, studied, researched, evaluated, endorsed, designed, formulated, compounded, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed, sold or otherwise placed in the stream of interstate commerce by Cook Defendants, and as implanted by Medical Defendants.

158.    The fatal injuries and damages of Decedent were caused by the wrongful acts, omissions, and fraudulent misrepresentations of Defendants, as described herein.

159.    As a result of the conduct of Defendants and the use of Defendants' IVC filters, Decedent suffered catastrophic and ultimately fatal injuries.

160.    As a result of the death of Decedent, Plaintiffs were deprived of love, companionship, comfort, affection, society, solace and moral support of their loved one, RICHARD CHEUNG.

161.    Plaintiffs, as the surviving and legal heirs to Decedent are entitled to recover economic and non-economic damages against all Defendants for wrongful death directly and legally caused by the defects in Defendants' IVC filters, and the negligent conduct, acts, errors, omissions and/or intentional and/or negligent misrepresentations of Defendants, and each of them, as alleged throughout this Complaint for Damages.

///

///

31

**AMENDED COMPLAINT FOR DAMAGES**

Case 5:17-cv-02564-NC Document 1 Filed 05/04/17 Page 52 of 242

## PUNITIVE DAMAGES ALLEGATIONS

### (As to Cook Defendants)

162.    Plaintiffs incorporate by reference all prior allegations.

163.    At all times material hereto, Cook Defendants knew or should have known that Gunther Tulip IVC filters were unreasonably dangerous with respect to the risk of tilt, fracture, migration and/or perforation.

164.    At all times material hereto, Cook Defendants attempted to misrepresent and did knowingly misrepresent facts concerning the safety of Gunther Tulip IVC filters.

165.    Cook Defendants' misrepresentations included knowingly withholding material information from the medical community and the public, including Decedent's physicians, concerning the safety of its Gunther Tulip IVC filters. Data establishes that the failure rates of the filters are and were much higher than what Cook Defendants have in the past and currently continue to publish to the medical community and members of the public.

166.    Cook Defendants' conduct, alleged throughout this Complaint, was willful, wanton, and undertaken with a conscious indifference and disregard to the consequences that consumers of their products faced, including Decedent. Cook Defendants had actual knowledge of the dangers presented by Gunther Tulip IVC filters, yet consciously failed to act reasonably to inform or warn Decedent, his physicians, or the public at large of these dangers. Cook Defendants consciously failed to establish and maintain an adequate quality and post-market surveillance system.

167.    At all times material hereto, Cook Defendants knew and recklessly disregarded the fact that Gunther Tulip IVC filters have an unreasonably high rate of tilt, fracture, migration, and/or perforation.

168.    Notwithstanding the foregoing, Cook Defendants continued to market Gunther Tulip IVC filters aggressively to consumers, including Decedent, without disclosing the aforesaid side effects.

169.    Cook Defendants knew of their Gunther Tulip IVC filters' lack of warnings regarding the risk of tilt, fracture, migration, and/or perforation, but intentionally concealed and/or recklessly failed to disclose that risk and continued to market, distribute, and sell its filters without said warnings so as to

AMENDED COMPLAINT FOR DAMAGES

1  maximize sales and profits at the expense of the health and safety of the public, including Decedent, in

2  conscious disregard of the foreseeable harm caused by Gunther Tulip IVC filters.

3       170.   Cook Defendants' intentional and/or reckless failure to disclose information deprived

4  Decedent's physicians of necessary information to enable them to weigh the true risks of using Gunther

5  Tulip IVC filters against its benefits.

6       171.   Cook Defendants' conduct is reprehensible, evidencing an evil hand guided by an evil

7  mind and was undertaken for pecuniary gain in reckless and conscious disregard for the substantial risk

8  of death and physical injury to consumers, including Decedent.

9       172.   Such conduct justifies an award of punitive or exemplary damages in an amount

10  sufficient to punish Cook Defendants' conduct and deter like conduct by Cook Defendants and other

11  similarly situated persons and entities in the future.

12  ## PRAYER FOR DAMAGES

13       WHEREFORE, Plaintiffs demand judgment against Defendants for:

14       a.   General (non-economic) damages, including, without limitation, past and future pain and

15  suffering; past and future emotional distress; past and future loss of enjoyment of life; and other

16  consequential damages as allowed by law;

17       b.   Special (economic) damages, including, without limitation, past and future medical

18  expenses; past and future lost wages and loss of earning capacity; and other consequential damages as

19  allowed by law;

20       c.   Punitive damages (only as to the Cook Defendants) in an amount sufficient to punish

21  Cook Defendants and deter similar conduct in the future;

22       d.   Costs of suit;

23       e.   Prejudgment interest as allowed by law;

24       f.   Post-judgment interest at the highest applicable statutory or common law rate from the

25  date of judgment until satisfaction of judgment; and

26       g.   Such other additional and further relief as Plaintiffs may be entitled to in law or in equity.

27

28  ///

---

33

**AMENDED COMPLAINT FOR DAMAGES**

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all triable issues.

Dated: March 20, 2017

Respectfully submitted,

LOPEZ McHUGH LLP

By: _____

Ramon Rossi Lopez
Matthew R. Lopez
Amorina P. Lopez
Nicholas R. Graham

Attorneys for Plaintiffs DARA BERMAN-
CHEUNG, SAM BERMAN CHEUNG and
BAILEY BERMAN CHUNG

---

34

**AMENDED COMPLAINT FOR DAMAGES**

Case 1:14-ml-02570-RLY-TAB   Document 6038-12   Filed 08/30/17   Page 58 of 202 PageID #:
23403
Case 5:17-cv-02564-NC   Document 1-2   Filed 05/04/17   Page 1 of 145

# Exhibit B

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**ENDORSED**

2017 MAR 16  A 8: 58

CLERK OF THE COURT
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
BY_____ DEPUTY
G. DUARTE

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

COOK GROUP, INC., an Indiana corporation; (Additional Parties Attachment Form Attached)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

DARA BERMAN-CHEUNG, an Individual; (Additional Parties Attachment Form Attached)

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: <br> *(El nombre y dirección de la corte es):* Downtown Superior Court <br> 191 North First Street, San Jose, CA 95113 | **CASE NUMBER:** <br> *(Número del Caso):* <br> 17CV307373 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Matthew Ramon Lopez, Lopez McHugh LLP, 100 Bayview Circle, Ste. 5600, Newport Beach, CA 92660
(949) 737-1501

DATE: ~~3/15/2017~~  **MAR 1 6 2017**                  Clerk, by _____ G. DUARTE _____ , Deputy
*(Fecha)*                                              *(Secretario)*                              *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [  ] as an individual defendant.
2. [  ] as the person sued under the fictitious name of *(specify):*

3. [X] on behalf of *(specify):* Cook Medical, LLC, an Indiana Corporation

   under: [X] CCP 416.10 (corporation)        [  ] CCP 416.60 (minor)
          [  ] CCP 416.20 (defunct corporation)  [  ] CCP 416.70 (conservatee)
          [  ] CCP 416.40 (association or partnership)  [  ] CCP 416.90 (authorized person)
          [  ] other *(specify):*
4. [X] by personal delivery on *(date):* 4/4/17

[SEAL]

Page 1 of 1

| | |
|---|---|
| Form Adopted for Mandatory Use <br> Judicial Council of California <br> SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 <br> www.courtinfo.ca.gov |

Exhibit B
Page 55

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Dara Berman-Cheung, et al. v. Cook Group, Inc., et al. | |

### INSTRUCTIONS FOR USE

➜ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➜ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

COOK MEDICAL INCORPORATED a/k/a COOK MEDICAL, INC., an Indiana corporation; COOK MEDICAL, LLC, an Indiana corporation; WILLIAM COOK EUROPE APS; MATTHEW MELL, M.D., an individual; STANFORD HEALTH CARE, a California corporation; and DOES 1 through 50, Inclusive,

Page __2__ of __3__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Case 1:14-ml-02570-RLY-TAB Document 603811 Filed 00/30/17 Page 61 of 202 PageID #:
Case 5:17-cv-02564-NC Document 12 Filed 05/04/17 Page 61 of 143
23406

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Dara Berman-Cheung, et al. v. Cook Group, Inc., et al. | |

**INSTRUCTIONS FOR USE**

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

[✓] Plaintiff    [ ] Defendant    [ ] Cross-Complainant    [ ] Cross-Defendant

SAM BERMAN CHEUNG, a Minor, by and through his Guardian ad Litem, DARA BERMAN-CHEUNG;
and BAILEY BERMAN CHUNG, a Minor, by and through her Guardian ad Litem, DARA
BERMAN-CHEUNG,

Page __3__ of __3__

**Page 1 of 1**

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Exhibit B
Page 57

1  Ramon Rossi Lopez, Bar No. 86361
2  Matthew Ramon Lopez, Bar No. 263134
   Amorina Patrice Lopez, Bar No. 278002
3  Nicholas Robert Graham, Bar No. 307330
   LOPEZ McHUGH LLP
4  100 Bayview Circle, Suite 5600
   Newport Beach, California 92660
5  Telephone: (949) 737-1501
6  Facsimile: (949) 737-1504
   rlopez@lopezmchugh.com
7  mlopez@lopezmchugh.com
   alopez@lopezmchugh.com
8  ngraham@lopezmchugh.com

9  Attorneys for Plaintiffs

10

11              SUPERIOR COURT OF THE STATE OF CALIFORNIA

12                  FOR THE COUNTY OF SANTA CLARA

13

14  DARA BERMAN-CHEUNG, an Individual;      )  Case No.: 17CV307373
    SAM BERMAN CHEUNG, a Minor, by and      )
15  through his Guardian ad Litem, DARA     )  AMENDED COMPLAINT FOR DAMAGES
    BERMAN-CHEUNG; and BAILEY               )     1. STRICT PRODUCTS LIABILITY –
16  BERMAN CHUNG, a Minor, by and through    )        FAILURE TO WARN
    her Guardian ad Litem, DARA BERMAN-      )     2. STRICT PRODUCTS LIABILITY –
17  CHEUNG,                                 )        MANUFACTURING DEFECT
                                            )     3. NEGLIGENCE
18                 Plaintiffs,              )     4. NEGLIGENT MISREPRESENTATION
19  vs.                                     )     5. FRAUDULENT MISREPRESENTATION
                                            )     6. FRAUDULENT CONCEALMENT
20  COOK GROUP, INC.; an Indiana corporation; )   7. BREACH OF EXPRESS WARRANTY
21  COOK MEDICAL INCORPORATED a/k/a         )     8. MEDICAL NEGLIGENCE
    COOK MEDICAL, INC., an Indiana          )     9. SURVIVAL ACTION
22  corporation; COOK MEDICAL, LLC, an      )    10. WRONGFUL DEATH
    Indiana corporation; WILLIAM COOK       )
23  EUROPE APS; MATTHEW MELL, M.D., an      )  DEMAND FOR JURY TRIAL
24  individual; STANFORD HEALTH CARE, a     )
    California corporation; and DOES 1 through )
25  50, Inclusive,                          )
                                            )
26                 Defendants.              )
27                                          )

28

                                    1
                   AMENDED COMPLAINT FOR DAMAGES

Exhibit B
Page 58

Case 1:14-ml-02570-RLY-TAB   Document 6038-12   Filed 08/30/17   Page 63 of 202 PageID #:
Case 5:17-cv-02564-NC   Document 1-1   Filed 05/04/17   Page 63 of 143
23408

1   COME NOW, Plaintiffs, DARA BERMAN-CHEUNG, SAM BERMAN CHEUNG and

2   BAILEY BERMAN CHUNG, by and through their Guardian ad Litem, DARA BERMAN-CHEUNG

3   ("Plaintiffs"), by and through their attorneys, who complain and allege against Defendants, COOK

4   GROUP, INC., COOK MEDICAL INCORPORATED a/k/a COOK MEDICAL, INC., COOK

5   MEDICAL, LLC,  WILLIAM COOK EUROPE APS and DOES 1 through 25 (hereinafter, collectively

6   referred to as "Cook" or "Cook Defendants"), MATTHEW MELL, M.D. ("Dr. Mell"), STANFORD

7   HEALTH CARE ("Stanford") and DOES 26 through 50 (hereinafter, collectively referred to as

8   "Medical Defendants"), on information and belief, as follows:

9                                    **PARTIES**

10      1.      Plaintiff DARA BERMAN-CHEUNG is the surviving spouse of RICHARD CHEUNG

11  ("Decedent") and at all times relevant to this action was and is a citizen and resident of the State of

12  Ohio.

13      2.      Plaintiff SAM BERMAN CHEUNG is a minor and natural child of RICHARD

14  CHEUNG and at all times relevant to this action was and is a citizen and resident of the State of Ohio.

15      3.      Plaintiff BAILEY BERMAN CHEUNG is a minor and natural child of RICHARD

16  CHEUNG and at all times relevant to this action was and is a citizen and resident of the State of Ohio.

17      4.      Decedent RICHARD CHEUNG, at all times relevant to this action was a citizen and

18  resident of the State of Ohio.  Mr. Cheung underwent placement of Cook Defendants' Gunther Tulip®

19  Vena Cava Filter on or about December 4, 2015 at Stanford Hospital in Redwood City, California.

20  Defendant MATTHEW MELL, M.D. is a vascular surgeon and was responsible for placing the device in

21  Decedent.  The filter subsequently malfunctioned due to severe tilting, which impaired its effectiveness

22  in catching blood clots and preventing pulmonary embolism.  This tilt-related malfunction and others

23  allowed clots to pass the filter that otherwise would have been caught had the filter been in a proper

24  centered position.  As a direct and proximate result of these malfunctions, RICHARD CHEUNG

25  suffered fatal injuries from pulmonary embolism, damages, and untimely death on or about December

26  20, 2015.

27

28

---

2

**AMENDED COMPLAINT FOR DAMAGES**

1      5.       Defendant COOK GROUP, INC. is an Indiana corporation with a principal place of

2 business located at 750 Daniels Way, Bloomington, Indiana 47404. Defendant Cook Group, Inc.

3 regularly conducts business in the State of California and is authorized to do so.

4      6.       Defendant COOK MEDICAL INCORPORATED a/k/a COOK MEDICAL, INC. is an

5 Indiana corporation with a principal place of business located at 750 Daniels Way, Bloomington,

6 Indiana 47404. Defendant Cook Medical Incorporated a/k/a Cook Medical, Inc. regularly conducts

7 business in the State of California and is authorized to do so.

8      7.       Defendant COOK MEDICAL, LLC is an Indiana corporation with a principal place of

9 business located at 750 Daniels Way, P.O. Box 1608, Bloomington, Indiana 47402. Defendant Cook

10 Medical, LLC regularly conducts business in the State of California, and is authorized to do so.

11      8.       Defendant WILLIAM COOK EUROPE APS is based in Bjaeverskov, Denmark and

12 regularly conducts business in the State of California, and is authorized to do so.

13      9.      The Cook Defendants may be served with process upon their registered agent for service:

14 C/O CSC Lawyers Incorporating Service, 50 West Broad Street, Suite 1800, Columbus, Ohio 43215.

15      10.     At all relevant times to this action, Cook Defendants include and included any and all

16 parent companies, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and

17 organizational units of any kind, their predecessors, successors and assigns and their officers, directors,

18 employees, agents, representatives and any and all other persons acting on their behalf.

19      11.     At all relevant times to this action, as further detailed herein, the Cook Defendants, and

20 each of them, were engaged in the business of researching, developing, testing, designing, setting

21 specifications for, licensing, manufacturing, preparing, compounding, assembling, packaging,

22 processing, labeling, marketing, promoting, distributing, selling and/or introducing into interstate

23 commerce and into the State of California, either directly or indirectly through third parties or related

24 entities, the Gunther Tulip inferior vena cava ("IVC") filters, to be implanted in patients throughout the

25 United States, including California, and including the filter implanted in RICHARD CHEUNG, and

26 derived substantial income from doing business in California.

27      12.     Defendants MATTHEW MELL, M.D. and DOES 26 through 40, were and are physicians

28 and surgeons duly licensed to practice medicine in the State of California, with offices located within the

**AMENDED COMPLAINT FOR DAMAGES**

1    County of Santa Clara, State of California, and each of them has held him or herself out to the public,

2    including RICHARD CHEUNG, to possess that degree of skill, ability, and learning common to

3    practitioners in said community.

4          13.     STANFORD HEALTH CARE is a California corporation with a principal place of

5    business located at 300 Pasteur Dr., Stanford, California, County of Santa Clara.  Defendants

6    STANFORD HEALTH CARE and DOES 41 through 50, are and were at all times herein mentioned

7    corporations duly organized and existing under and by virtue of the laws of the State of California

8    and/or authorized to do business and doing business in the County of Santa Clara, State of California.

9          14.     At all relevant times to this action, each of the Medical Defendants was the agent and

10    employee of each of the remaining Medical Defendants and was at all times herein mentioned acting

11    within the scope of said agency and employment.

12          15.     In or around December 2015, Medical Defendants, and each of them, undertook the care,

13    treatment and examinations of Decedent, RICHARD CHEUNG.

14                   **JURISDICTION AND VENUE**

15          16.     This Court has jurisdiction under the California Constitution, Article VI, Section 10 and

16    *Code of Civil Procedure* § 410.10.  Plaintiffs' damages exceed the jurisdictional minimum of this Court.

17          17.     Venue is proper in this Court pursuant to *Code of Civil Procedure* §§ 395 and 395.5

18    because the principal places of business for Defendant Stanford is situated in Santa Clara County.

19    Further, a substantial amount of the defendants' conduct took place in Santa Clara County.

20                      **FACTUAL ALLEGATIONS**

21          18.     Plaintiffs bring this action for damages stemming from the wrongful death of their

22    decedent, RICHARD CHEUNG, as a direct and proximate result of Decedent being implanted with a

23    Cook Gunther Tulip IVC filter by MATTHEW MELL, M.D. at Stanford Hospital in Redwood City,

24    California, on or about December 4, 2015.

25          19.     The Cook Defendants designed, researched, developed, manufactured, tested, marketed,

26    advertised, promoted, distributed, and sell products such as IVC filters that are sold to and marketed to

27    prevent, among other things, recurrent pulmonary embolism via placement in the vena cava.  One such

28

4
**AMENDED COMPLAINT FOR DAMAGES**

1   product of the Cook Defendants' – the Gunther Tulip Filter – is introduced into the vena cava via a

2   coaxial introducer sheath system.

3       20.    Cook Defendants sought Food and Drug Administration ("FDA") approval to market the

4   Gunther Tulip IVC filter device and/or its components under Section 510(k) of the Medical Device

5   Amendment.

6       21.    Section 510(k) permits the marketing of medical devices if the device is substantially

7   equivalent to other legally marketed predicate devices without formal review for the safety or efficacy of

8   the device. The FDA explained the difference between the 510(k) process and the more rigorous

9   "premarket approval" ("PMA") process in its amicus brief filed with the Third Circuit in *Horn v.*

10  *Thoratec Corp.*, which the court quoted from:

11  
12      A manufacturer can obtain an FDA finding of 'substantial equivalence' by submitting a
    premarket notification to the agency in accordance with section 510(k) of the [Food Drug
13      and Cosmetic Act]. 21 U.S.C. § 360(k). A device found to be 'substantially equivalent'
    to a predicate device is said to be 'cleared' by FDA (as opposed to 'approved' by the
14      agency under a PMA).

15  376 F.3d 163, 167 (3d Cir. 2004) (emphasis in original). A pre-market notification submitted under

16  510(k) is thus entirely different from the PMA process, which requires data sufficient to demonstrate

17  that the medical device at issue is safe and effective.

18      22.    In *Medtronic, Inc. v. Lohr*, the U.S. Supreme Court similarly described the 510(k)

19  process, observing:

20      If the FDA concludes on the basis of the [manufacturer's] § 510(k) notification that the
    device is "substantially equivalent" to a pre-existing device, it can be marketed without
21      further regulatory analysis. . . . The § 510(k) notification process is by no means
    comparable to the PMA process; in contrast to the 1,200 hours necessary to complete a
22      PMA review, the § 510(k) review is completed in average of 20 hours. . . . As one
    commentator noted: "The attraction of substantial equivalence to manufacturers is clear.
23      Section 510(k) notification requires little information, rarely elicits a negative response
24      from the FDA, and gets processed quickly."

25  518 U.S. 470, 478-79 (1996) (quoting Adler, The 1976 Medical Device Amendments: A Step in the

26  Right Direction Needs Another Step in the Right Direction, 43 Food Drug Cosm. L.J. 511, 516 (1988)).

27      23.    Pursuant to *Wyeth v. Levine*, 555 U.S. 555 (2009), once a product is cleared "the

28  manufacturer remains under an obligation to investigate and report any adverse events associated with

---

5

**AMENDED COMPLAINT FOR DAMAGES**

1  the drug . . . and must periodically submit any new information that may affect the FDA's previous

2  conclusions about the safety, effectiveness, or labeling . . . ." This obligation extends to post-market

3  monitoring of adverse events/complaints.

4      24.    The inferior vena cava is a vein that returns blood to the heart from the lower portions of

5  the body. In certain people, for various reasons, blood clots travel from the vessels in the legs and

6  pelvis, through the vena cava and into the lungs. These blood clots can develop in the deep leg veins, a

7  condition called "deep-vein thrombosis" or "DVT." Once blood clots reach the lungs, they are

8  considered "pulmonary emboli" or "PE." Pulmonary emboli present risks to human health.

9      25.    An IVC filter, like the Cook Gunther Tulip filter, is designed to prevent thromboembolic

10  events by filtering or preventing blood clots/thrombi from traveling to the heart and/or lungs.

11      26.    The Gunther Tulip IVC filter is a retrievable filter.

12      27.    The Gunther Tulip IVC filter has a top hook and four anchoring struts for fixation. On

13  each strut, it has a "flower" formation that is shorter than the strut where a wire piece branches out on

14  each side of the strut forming an overall "flower" type formation on each strut.

15      28.    At all times relevant hereto, the Gunther Tulip was widely advertised and promoted by

16  the Cook Defendants as safe and effective treatment for prevention of recurrent pulmonary embolism via

17  placement in the vena cava.

18      29.    At all times relevant hereto, Cook Defendants knew its filters were defective and knew

19  that defect was attributable to the design's failure to withstand the normal anatomical and physiological

20  loading cycles exerted *in vivo*.

21      30.    On or about December 4, 2015, RICHARD CHEUNG was implanted with a Cook

22  Gunther Tulip filter at Stanford Hospital, in Redwood City, California. The Gunther Tulip placed in Mr.

23  Cheung was a retrievable filter. Dr. Mell was the physician responsible for the implantation and

24  placement of Mr. Cheung's IVC filter. The filter was severely tiled which impaired its effectiveness in

25  catching blood clots and preventing pulmonary embolism.

26      31.    On or about December 20, 2015, RICHARD CHEUNG suffered injuries and died

27  unexpectedly from a massive hyperacute pulmonary thromboembolic event with numerous multifocal

28

1   clots seen in both pulmonary arteries, extending to the pulmonary trunk and right ventricle, as a direct

2   and proximate result of the Cook Gunther Tulip filter device, which was implanted by Dr. Mell.

3        32.    The Cook Defendants represented that the design of the Gunther Tulip filter allows

4   accurate, predictable placement, and that its site struts help reduce the risk of tilting and migration, while

5   in reality the filters regularly tilt, migrate, and become embedded in the vena cava wall.  The anchoring

6   mechanism of Cook Defendants' IVC filters, thus, is also insufficient to prevent tilting and migrations

7   post-placement.

8        33.    The configuration of the Gunther Tulip filters renders them prothrombotic.  This means

9   that the filters actually leads to the formation of thromboembolism and PE – the exact condition these

10  devices are meant to prevent.

11       34.    A medical device manufacturer must, at a minimum, undertake research and testing to

12  understand the anatomy of where a device will be implanted and understand the forces the device may

13  be exposed to once in a human body.  This design input must then be used to determine the minimum

14  safety requirements or attributes the device must have to meet user needs.  In the case of an IVC filter,

15  user needs include a device that will capture blood clots of sufficient size to cause harmful consequences

16  and that will not fracture, migrate, tilt, perforate the vena cava, or be prothrombotic.  Cook Defendants

17  failed to undertake any such efforts in these regards.

18       35.    Prior to bringing a product to market, a medical device manufacturer must also conduct

19  sufficient testing under real world or simulated use conditions to ensure that the device will meet user

20  needs even when exposed to reasonably foreseeable worst-case conditions.  The Cook Defendants failed

21  to adequately establish and maintain such policies, procedures or protocols with respect to the Cook

22  Gunther Tulip IVC filters.

23       36.    Once placed on the market, Cook Defendants' post-market surveillance system revealed,

24  or should have revealed, to the Cook Defendants that the Gunther Tulip filters were unreasonably

25  dangerous and substantially more prone to fail or malfunction, and cause great bodily harm and/or death

26  to patients compared to other available treatment options.

27

28

7

**AMENDED COMPLAINT FOR DAMAGES**

37. The Cook Defendants failed to disclose to physicians and patients, including Decedent, that its Gunther Tulip IVC filter was subject to tilt, or the appropriate degree of risk and lack of efficacy a tilted Gunther Tulip filter exposed and provided to patients.

38. At all times relevant hereto, the Cook Defendants continued to promote the Gunther Tulip filter as safe and effective even though the clinical trials that had been performed were not adequate to support long or short term efficacy.

39. The Cook Defendants concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the Gunther Tulip IVC filter.

40. The failure of the Gunther Tulip is attributable, in part, to the fact that the Cook filter suffers from a design defect causing it to be unable to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

41. At all times relevant hereto the Cook Defendants failed to provide sufficient warnings and instructions that would have put the Decedent and the general public on notice of the dangers and adverse effects caused by implantation of the Gunther Tulip IVC filter, including, but not limited to the design's failure to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

42. The Cook Gunther Tulip Filter was designed, manufactured, distributed, sold and/or supplied by the Cook Defendants, and was marketed while defective due to the inadequate warnings, instructions, labeling, and/or inadequate testing in light of Cook Defendants' knowledge of the products failure and serious adverse events.

43. At all times relevant hereto, the officers and/or directors of the Cook Defendants named herein participated in, authorized and/or directed the production and promotion of the aforementioned products when they knew or should have known of the hazardous and dangerous propensities of the said products, and thereby actively participated in the tortuous conduct that resulted in the injuries suffered by the Decedent, RICHARD CHEUNG, as well as his untimely death on December 20, 2015.

44. On December 15, 2016, Plaintiffs, pursuant to *Code of Civil Procedure* § 364, sent letters of intent to MATTHEW MELL, M.D. and STANFORD HEALTH CARE. As such, this Complaint is filed within the requirements set forth in *Code of Civil Procedure* § 340.5.

---

**AMENDED COMPLAINT FOR DAMAGES**

# FIRST CAUSE OF ACTION

## STRICT PRODUCTS LIABILITY – INADEQUATE WARNING

### (As to Cook Defendants)

45.   Plaintiffs incorporate by reference all prior allegations.

46.   At all relevant times, as set forth, *supra*, Cook Defendants, and each of them, engaged in the business of researching, developing, testing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, packaging, processing, labeling, marketing, promoting, distributing, selling and/or introducing into interstate commerce the Gunther Tulip IVC filters, and, through that conduct, have knowingly and intentionally placed Gunther Tulip IVC filters into the stream of commerce with full knowledge that they reach consumers such as Decedent who would become implanted with one.

47.   Cook Defendants did, in fact, research, develop, test, design, set specifications for, license, manufacture, prepare, compound, assemble, package, process, label, market, promote, distribute and/or sell their Gunther Tulip IVC filters to Decedent, his prescribing health care professionals, and the consuming public.  Additionally, Cook Defendants expected that the Gunther Tulip IVC filters they were researching, developing, testing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, packaging, processing, labeling, marketing, promoting, distributing, and/or selling to reach, and did, in fact, reach, prescribing health care professionals and consumers, including Decedent and his prescribing health care professionals, without any substantial change in the condition of the product from when it was initially distributed by Cook Defendants.

48.   The Gunther Tulip IVC filters had potential risks and side effects that were known or knowable to the Cook Defendants by the use of scientific inquiry and information available before, at, and after the design, manufacture, labeling, marketing, distribution, and sale of the Gunther Tulip IVC filters.

49.   Cook Defendants knew or should have known of the defective condition, characteristics, and risks associated with Gunther Tulip IVC filters prior to, on, and after the date Decedent RICHARD CHEUNG was implanted with a Gunther Tulip IVC filter.  These defective conditions included, but were not limited to: (1) Gunther Tulip IVC filters posed a significant and higher risk of failure than other

AMENDED COMPLAINT FOR DAMAGES

Exhibit B
Page 66

1 similar IVC filters (fracture, migration, tilting, and perforation of the vena cava wall); (2) Gunther Tulip

2 IVC filter failures result in serious injuries and death; (3) certain conditions or post-implant procedures,

3 such as morbid obesity or open abdominal procedures, could affect the safety and integrity of Gunther

4 Tulip IVC filters; (4) leaving Gunther Tulip IVC filters in for a period longer than necessary to prevent

5 immediate risk of pulmonary embolism increases the risk for patients of failures and complications with

6 the filter, such as the filter becoming deeply embedded in the vena cava, making them difficult or

7 impossible for removal.

8       50.     The Cook Defendants placed into the stream of commerce for ultimate use by users like

9 Decedent and his health care providers, Gunther Tulip IVC filters that were in an unreasonably

10 dangerous and defective condition due to warnings and instructions for use that were inadequate,

11 including, but not limited to Cook Defendants' failure to:

        a.  Provide adequate instructions on how to place the filter, including the importance of
            avoiding tilt during placement;

        b.  Provide adequate instructions for how long in patients the filter should remain;

        c.  Highlight the importance of removing the filter;

        d.  Warn of the known risk of great bodily harm or death if the filter was not removed;

        e.  Highlight the known risk of great bodily harm or death in the event of occlusion of the
            vein caused by the filter itself;

        f.  Warn of the risk of new DVT if the filter was left in too long;

        g.  Warn of the risk of new pulmonary embolism, thrombosis, swelling, and pain in the
            lower extremities if the filter was left in too long; and

        h.  Warn of the risk of filter tilt and associated risks;

        i.  Warn of the risk of filter perforation, fracture, or migration.

24      51.     Gunther Tulip IVC filters were in a defective and unsafe condition that was unreasonably

25 and substantially dangerous to any user or consumer implanted with Gunther Tulip IVC filters, such as

26 Decedent, when used in an intended or reasonably foreseeable way.

27      52.     The warnings and directions the Cook Defendants provided with their Gunther Tulip IVC

28 filters failed to adequately warn of the potential risks and side effects of the Gunther Tulip IVC filters.

---

10
**AMENDED COMPLAINT FOR DAMAGES**

53.     These risks were known or were reasonably scientifically knowable to Cook Defendants, but not known or recognizable to ordinary consumers, such as Decedent or his treating doctors.

54.     Cook Defendants' IVC filters were expected to and did reach Decedent without substantial change in their condition, labeling, or warnings as manufactured, distributed, and sold by Cook Defendants.

55.     Additionally, Decedent and his physician used Gunther Tulip IVC filters in the manner in which they were intended to be used, making such use reasonably foreseeable to the Cook Defendants.

56.     Had Decedent and his implanting physician known of the aforementioned risks and dangers associated with Gunther Tulip IVC filters, as well as the lack of efficacy, and had Cook Defendants provided adequate warnings and information to Decedent and his physicians regarding same, Decedent and his implanting physician would not have used Cook Defendants' Gunther Tulip filters.

57.     As a direct and proximate result of the Cook Defendants' information defects, lack of sufficient instructions or warnings prior to, on, and after the date Decedent RICHARD CHEUNG was implanted with a Gunther Tulip IVC filter, Plaintiffs and Decedent suffered Injuries and Damages, and/or Death.

## SECOND CAUSE OF ACTION

## STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT

### (As to Cook Defendants)

58.     Plaintiffs incorporate by reference all prior allegations.

59.     Prior to, on, and after the date the Gunther Tulip IVC filter was implanted in Decedent, Cook Defendants, and each of them, researched, developed, tested, designed, set specifications for, licensed, manufactured, prepared, compounded, assembled, packaged, processed, labeled, marketed, promoted, distributed, and/or sold the Gunther Tulip IVC filters for use in the United States, including California, and the Gunther Tulip IVC filter implanted in Decedent.

60.     At all relevant times, Cook Defendants designed, distributed, manufactured, marketed, and sold Gunther Tulip IVC filters that were unreasonably dangerous, unsafe, and defective in manufacture when they left Cook Defendants' possession.

---

11

**AMENDED COMPLAINT FOR DAMAGES**

61.     Based on information and belief, Gunther Tulip IVC filters, including that implanted in Decedent, contained manufacturing defects in that they differed from Cook Defendants' design or specifications, or from other typical units of the same product line.

62.     Based on information and belief, the manufacturing process employed by Cook Defendants for their Gunther Tulip IVC filters, including that implanted in Decedent, resulted in surface damage to the wire and weakening of the structural integrity of Cook Defendants' IVC filters, thus increasing the risk of tilt, cracks, fracture, breakage, perforation and migration.

63.     Based on information and belief, the Cook Defendants maintained design and manufacturing specifications that Gunther Tulip IVC filters were required to have the appropriate metal content, strength, size, durability, appearance, resistance levels, and number of inclusions, and should not be distributed if they exhibited a certain degree of surface damage.  The manufacturing process was intended to catch and identify any end-product filters that did not meet specifications and not distribute said filters.

64.     The degrees of surface damage present in Decedent's Gunther Tulip IVC filter was above the acceptable level as set by the Cook Defendants' design and manufacturing specifications.

65.     Based on information and belief, Cook Defendants manufactured the conichrome used in the Gunther Tulip IVC filter implanted in Decedent, such that it failed to meet specifications as to the appropriate appearance (e.g., degree of surface blemishes), metal content, strength, and number of inclusions, which substantially increased the risk of, *inter alia*, fatigue failure, perforation, tilt, fracture, and migration in said device.

66.     As a direct and proximate cause of Cook Defendants' defective manufacture of the Gunther Tulip IVC filter implanted in Decedent RICHARD CHEUNG, Plaintiffs and Decedent suffered Injuries and Damages, and/or Death.

/ / /

/ / /

/ / /

| | |
|---|---|
| 1 | **THIRD CAUSE OF ACTION** |
| 2 | **NEGLIGENCE** |
| 3 | **(As to Cook Defendants)** |
| 4 | 67. Plaintiffs incorporate by reference all prior allegations. |
| 5 | 68. At the time of the design, distribution, manufacture, advertising, sale, and marketing of |
| 6 | Gunther Tulip IVC filters and its implantation in Decedent, the Cook Defendants were aware that the |
| 7 | Gunther Tulip IVC filters were designed and manufactured in a manner presenting: |
| 8 | a. An unreasonable risk of fracture of portions of the filters; |
| 9 | b. An unreasonable risk of migration of the filters and/or portions of the filters; |
| 10 | c. An unreasonable risk of filters tilting and/or perforating the vena cava wall; and |
| 11 | d. Insufficient strength or structural integrity to withstand normal placement within the |
| 12 | human body. |
| 13 | 69. At the time of the design, distribution, manufacture, advertising, sale, and marketing of |
| 14 | the Gunther Tulip IVC filters, and its implantation in Decedent, Cook Defendants were also aware that |
| 15 | Gunther Tulip IVC filters: |
| 16 | a. Would be used without inspection for defects; |
| 17 | b. Would be used by patients with special medical conditions such as Decedent; |
| 18 | c. Had previously caused serious bodily injury to its users with special medical conditions |
| 19 | such as Decedent; |
| 20 | d. Had no established efficacy; |
| 21 | e. Were less safe and effective than the predicate IVC filters already available on market; |
| 22 | f. Would be implanted in patients where the risk outweighed any benefit or utility of the |
| 23 | filters; |
| 24 | g. Contained instructions for use and warnings that were inadequate; |
| 25 | h. Were prothrombotic; and |
| 26 | i. Were prone to severe tilting. |
| 27 | 70. At the time of manufacture and sale of the Gunther Tulip filters, including the one |
| 28 | implanted in Decedent, Cook Defendants knew or should have known that using the Gunther Tulip IVC |

1  filters as intended or in a reasonably foreseeable manner created a significant risk of patients suffering

2  severe health side effects including, but not limited to: hemorrhage; cardiac/pericardial tamponade;

3  cardiac arrhythmia and other symptoms similar to myocardial infarction; perforations of tissue, vessels

4  and organs; chronic deep vein thrombosis; pulmonary embolism; thrombosis; compartment syndrome;

5  and other severe personal injuries and diseases, which are permanent in nature, including, but not limited

6  to, death, physical pain and mental anguish, scarring and disfigurement, diminished enjoyment of life,

7  continued medical care and treatment due to chronic injuries/illness proximately caused by the device;

8  and the continued risk of requiring additional medical and surgical procedures including general

9  anesthesia, with attendant risk of life threatening complications.

10       71.    Cook Defendants had a duty to exercise due care and avoid unreasonable risk of harm to

11  others in the design of the Gunther Tulip IVC filters.

12       72.    Cook Defendants breached these duties by, among other things:

13           a.   Designing and distributing a product in which it knew or should have known that the

14              likelihood and severity of potential harm from the product exceeded the burden of taking

15              safety measures to reduce or avoid harm;

16           b.   Designing and distributing a product which it knew or should have known that the

17              likelihood and severity of potential harm from the product exceeded the likelihood of

18              potential harm from other IVC filters available for the same purpose;

19           c.   Failing to perform reasonable pre- and post-market testing of Gunther Tulip IVC filters to

20              determine whether or not the products were safe for their intended use;

21           d.   Failing to use reasonable and prudent care in the design, research, manufacture, and

22              development of Gunther Tulip IVC filters so as to avoid the risk of serious harm

23              associated with the use of such filters;

24           e.   Advertising, marketing, promoting, and selling Gunther Tulip IVC filters for uses other

25              than as approved and indicated in the products' labels;

26           f.   Failing to use reasonable care to warn or instruct, including pre and post-sale, Decedent,

27              his prescribing physicians, or the general health care community about the Gunther Tulip

28

filters' substantially dangerous condition or about facts making the products likely to be

dangerous;

g.  Advertising, marketing and recommending the use of the Gunther Tulip filters, while

concealing and failing to disclose or warn of the dangers known by Cook Defendants to

be connected with and inherent in the use of these filter systems;

h.  Representing that the Gunther Tulip filters were safe for their intended use when, in fact,

Cook Defendants knew and should have known the products were not safe for their

intended uses;

i.  Continuing to manufacture and sell the Gunther Tulip filters with the knowledge that said

products were dangerous and not reasonably safe, and failing to comply with good

manufacturing regulations;

j.  Failing to establish an adequate quality assurance program used in the manufacturing of

Gunther Tulip IVC filters; and

k.  Failing to perform adequate evaluation and testing of Gunther Tulip IVC filters when

such evaluation and testing would have revealed the propensity of Gunther Tulip IVC

filters to cause injuries similar to those that Decedent suffered.

73.  At all relevant times, Cook Defendants had a duty to exercise due care in the

manufacturing of the Gunther Tulip IVC filters.

74.  Cook Defendants breached this duty by, among other things:

a.  Failing to adopt manufacturing processes that would reduce the foreseeable risk of

product failure;

b.  Failing to use reasonable care in manufacturing the product and by producing a product

that differed from their design or specifications or from other typical units from the same

production line;

c.  Failing to use reasonable and prudent care in the design, research, manufacture, and

development of Gunther Tulip IVC filters and their manufacturing process so as to avoid

the risk of serious harm associated with the use of said filters; and

-15-

**AMENDED COMPLAINT FOR DAMAGES**

d. Failing to establish an adequate quality assurance program used in the manufacturing of their IVC filters.

75. At this time, all Gunther Tulip IVC filters are misbranded and adulterated by virtue of them failing to be the substantial equivalent of predicate IVC filter devices, making them subject to corrective action, including recall, in the interest of patient safety.

76. Prior to, on, and after the date of Decedent's implantation with a Gunther Tulip IVC filter, and at all relevant times, Cook Defendants knew or reasonably should have known that Gunther Tulip IVC filters and their warnings were defective and dangerous or were likely to be dangerous when used in a reasonably foreseeable manner.

77. Prior to, on, and after the date of Decedent's implantation with a Gunther Tulip IVC filter and at all relevant times thereafter, Cook Defendants became aware that the defects of Gunther Tulip IVC filters resulted in Gunther Tulip IVC filters causing injuries similar to those Decedent suffered.

78. Reasonable manufacturers and distributors under the same or similar circumstances would have recalled or retrofitted Gunther Tulip IVC filters, and would thereby have avoided and prevented harm to many patients, including Decedent.

79. In light of this information and Cook Defendants' knowledge described above, Cook Defendants had a duty to recall and/or retrofit Gunther Tulip IVC filters.

80. The Cook Defendants breached its duty to recall and/or retrofit Gunther Tulip IVC filters.

81. At all relevant times, Cook Defendants knew or should have known that Gunther Tulip IVC filters were defective and dangerous or were likely to be dangerous when used in a reasonably foreseeable manner.

82. Such danger included the propensity of Gunther Tulip IVC filters to cause injuries similar to those suffered by Decedent.

83. At all relevant times, Cook Defendants also knew or reasonably should have known that the users of Gunther Tulip IVC filters, including Decedent and his health care providers, would not realize or discover on their own the dangers presented by Gunther Tulip IVC filters.

84. Reasonable manufacturers and reasonable distributors, under the same or similar circumstances as those of Cook Defendants prior to, on, and after the date of Decedent's use of a

16

**AMENDED COMPLAINT FOR DAMAGES**

1  Gunther Tulip IVC filter, would have warned of the dangers presented by Gunther Tulip IVC filters, or

2  instructed on the safe use of Gunther Tulip IVC filters.

3       85.    Prior to, on, and after the date of Decedent's use of the IVC filter, Cook Defendants had a

4  duty to adequately warn of the dangers presented by Gunther Tulip IVC filters and/or instruct on the

5  safe use of Gunther Tulip IVC filters.

6       86.    The Cook Defendants breached these duties by failing to provide adequate warnings to

7  Decedent RICHARD CHEUNG, communicating the information and dangers described above and/or

8  providing instruction for safe use of Gunther Tulip IVC filters.

9       87.    As a direct and proximate result of Cook Defendants' negligent conduct described herein,

10  Plaintiffs and Decedents suffered Injuries and Damages, and/or Death.

11  **FOURTH CAUSE OF ACTION**

12  **NEGLIGENT MISREPRESENTATION**

13  **(As to Cook Defendants)**

14       88.    Plaintiffs incorporate by reference all prior allegations.

15       89.    Prior to, on, and after the dates the Gunther Tulip IVC filter was implanted in Decedent,

16  Cook Defendants, and each of them, researched, developed, tested, designed, set specifications for,

17  licensed, manufactured, prepared, compounded, assembled, packaged, processed, labeled, marketed,

18  promoted, distributed, and/or sold the Gunther Tulip IVC filters for use in the United States, including

19  California, and the Gunther Tulip IVC filter implanted in Decedent.

20       90.    Prior to, on, and after the dates Cook Defendants, and each of them, distributed the

21  Gunther Tulip IVC filter to Decedent through his health care providers, the Cook Defendants

22  negligently and carelessly represented to Decedent, his treating physicians, the medical community, the

23  FDA, and the general public that certain material facts were true when they were, in fact, false. The

24  misrepresentations include, *inter alia*, the following:

25       a.   That the Gunther Tulip IVC filters were safe, fit, and effective for use to prevent PEs.

26       b.   That the Gunther Tulip IVC filters were not prothrombotic.

27

28

---

17

**AMENDED COMPLAINT FOR DAMAGES**

c.    That the design of the Gunther Tulip IVC filters was better than competitor designs and eliminated the risk that pieces of the device could perforate the vena cava, that the devices could tilt, or that fractures could occur and migrate throughout the body.

d.    That the Gunther Tulip IVC filters were as safe and as effective as the predicate devices set forth in their 510(k) applications to the FDA, which, by law, they were required to be.

e.    That the Gunther Tulip IVC filters were safer and more effective than other available IVC filters.

f.    That the Gunther Tulip IVC filters post-market were not found to have any increased risks of device failures or complications, such as tilt, perforation, fracture, migration, retrieval difficulties and/or death.

91.    All of the aforementioned information and representations emanated from the same source, Cook Defendants, and was vetted by their copy review department (or equivalent) to ensure uniformity and harmony of the marketing message. The manner by which such information and representations were distributed, made available, or otherwise provided by Cook Defendants to Decedent and his health care providers was the same and include, but are not limited to, the following: reports, press releases, advertising campaigns, product information, instructions for use and other labeling materials provided with the Gunther Tulip IVC filters, print advertisements, commercial media containing material representations, as well as through their officers, directors, agents and representatives, including the Cook sales representatives that met with and detailed Decedent's prescribing and implanting physicians on the Gunther Tulip IVC filters, the 510(k) applications by Cook Defendants to the FDA for the Gunther Tulip filters, patient brochures, training seminars hosted by said Defendants, CME materials created and distributed by Cook Defendants, information supplied at professional conferences at booths hosted or manned by Cook Defendants or their Key Opinion Leaders, as well as the websites of Cook Defendants that provided information on the Gunther Tulip IVC filter, including product description, indications for use, instructions for use, and ordering information.

92.    Decedent's prescribing and implanting physicians reviewed and relied on these materials, including, specifically, the product information, instructions for use, indications for use, and labeling materials provided with these devices, in performing a risk/benefit analysis in deciding to prescribe or

1  recommend use of a Gunther Tulip IVC filter in Decedent, and determining what risk information to

2  inform and discuss with Decedent, as part of the informed consent process.

3       93.    Prior to, on, and after the date Decedents and his physicians purchased and used the

4  device, said representations were untrue at the times they were made, and there was no reasonable

5  ground for Cook Defendants to believe said representations were true when said Defendants made said

6  representations.

7       94.    Prior to, on, and after the date Decedent and his physicians purchased and used the

8  device, Cook Defendants intended that Decedent, his physicians, and the general public would rely on

9  said representations and prescribe the Gunther Tulip IVC filters, which did in fact occur.

10       95.    The Cook Defendants knew or should have known prior to introduction on the market

11  and at the time of submitting the 510(k) applications that these representations were untrue, from their

12  own internal testing, analysis and investigation throughout the design and manufacturing process.

13  Moreover, post-market performance promptly revealed poor outcomes in patients who were suffering

14  failures and adverse events at an increased rate compared to other IVC filters.  This triggered the

15  obligation for further investigation and analysis of the safety and efficacy of the Gunther Tulip IVC

16  filters from the Cook Defendants, which further confirmed that the Gunther Tulip IVC filters were, in

17  fact, inferior in safety and efficacy and posed greater risks of harm and death than other IVC filters on

18  the market, including the predicate devices for the Gunther Tulip.

19       96.    It was known or should have been known by Cook Defendants, at all relevant times, that

20  the Gunther Tulip IVC filters, by way of their design, created and caused these devices to be

21  prothrombotic.  This information was revealed in the Cook Defendants' pre-market testing and analysis,

22  and has been reaffirmed throughout the post-market experience of these products, as reflected by the

23  increased number of these adverse event reports by physicians and published opinions in medical

24  literature.

25       97.    Cook Defendants owed a duty in all of their undertakings, including the dissemination of

26  information concerning its IVC filters, to exercise reasonable care to ensure that they did not in those

27  undertakings create unreasonable risks of personal injury to others.

28

Exhibit B
Page 76

98.     As set forth, *supra*, Cook Defendants disseminated to health care professionals and consumers through published labels, labeling, marketing materials, and otherwise information concerning the properties and effects of Gunther Tulip IVC filters with the intention that health care professionals and consumers would rely upon that information in their decisions concerning whether to prescribe and use Cook Defendants' IVC filters.

99.     The Cook Defendants, as medical device designers, manufacturers, sellers, promoters and/or distributors, knew or should reasonably have known that health care professionals and consumers, in weighing the potential benefits and potential risks of prescribing or using Gunther Tulip IVC filters, would rely upon information disseminated and marketed by Cook Defendants to them regarding the Gunther Tulip IVC filters.

100.     Cook Defendants failed to exercise reasonable care to ensure that the information they disseminated to health care professionals and consumers concerning the properties and effects of Gunther Tulip IVC filters was accurate, complete, and not misleading and, as a result, disseminated information to health care professionals and consumers that was negligently and materially inaccurate, misleading, false, and unreasonably dangerous to consumers such as Decedent.

101.     The Cook Defendants, as designers, manufacturers, sellers, promoters, and/or distributors, also knew or reasonably should have known that patients receiving Gunther Tulip IVC filters as recommended by health care professionals in reliance upon information disseminated by Cook Defendants as the manufacturer/distributor of Defendants' IVC filters would be placed in peril of developing the serious, life-threatening, and life-long injuries including, but not limited to, tilting, migration, perforation, fracture, lack of efficacy, and increased risk of the development of blood clots, if the information disseminated and relied upon was materially inaccurate, misleading, or otherwise false.

102.     The Cook Defendants had a duty to promptly correct material misstatements Cook Defendants' knew others were relying upon in making healthcare decisions.  Cook Defendants purposely chose not to, however, in order to maintain their market share and level of competition with other IVC filter manufacturers.

20
**AMENDED COMPLAINT FOR DAMAGES**

103.    Cook Defendants failed in each of these duties by misrepresenting to Decedent RICHARD CHEUNG, his implanting physician, and the medical community in general, the safety and efficacy of Gunther Tulip IVC filters and failing to correct known misstatements and misrepresentations.

104.    As a direct and proximate result of Cook Defendants' negligent misrepresentations, Plaintiffs and Decedents suffered Injuries and Damages, and/or Death.

## FIFTH CAUSE OF ACTION

## FRAUDULENT MISREPRESENTATION

### (As to Cook Defendants)

105.    Plaintiffs incorporate by reference all prior allegations.

106.    Prior to, on, and after the date the Cook Defendants, and each of them, distributed the Gunther Tulip IVC filters to Decedent's health care providers, Cook Defendants intentionally represented to Decedent, his treating physicians, the medical community, the FDA, and the general public that certain material facts were true when they were, in fact, known by the Cook Defendants to be false and inaccurate.  These misrepresentations involved the following topics:

    a.   The safety of the Gunther Tulip IVC filters;

    b.   The efficacy of the Gunther Tulip IVC filters;

    c.   The rate of failure of the Gunther Tulip IVC filters;

    d.   The adverse event reporting data of the Gunther Tulip IVC filters;

    e.   The pre-market testing of the Gunther Tulip IVC filters;

    f.   The approved uses of the Gunther Tulip IVC filters; and

    g.   The ability to retrieve the device at any time over a person's life.

107.    All of the aforementioned information and representations emanated from the same source, Cook, and was vetted by its copy review department (or equivalent) to ensure uniformity and harmony of the marketing message.  The manner by which such information and representations were distributed, made available, or otherwise provided by Cook Defendants to Decedent and his health care providers was the same and include, but are not limited to, the following: reports, press releases, advertising campaigns, product information, instructions for use and other labeling materials provided with the Gunther Tulip IVC filters, print advertisements, commercial media containing material

Exhibit B
Page 78

1    representations, as well as through their officers, directors, agents and representatives, such as the Cook

2    sales representatives that met with and detailed Decedent's prescribing physicians on the Gunther Tulip

3    IVC filters, 510(k) applications to the FDA for the Gunther Tulip filters, patient brochures, training

4    seminars hosted by Cook Defendants, CME materials created and distributed by Cook Defendants,

5    information supplied at professional conferences at booths hosted or manned by Cook Defendants or

6    their Key Opinion Leaders, as well as the websites of Cook Defendants that provided information on the

7    Gunther Tulip IVC filter, including product description, indications for use, instructions for use, and

8    ordering information.

9        108.    These sources and materials contained false and misleading material representations,

10   which included:

11           a.    That the Gunther Tulip IVC filters were safe and fit when used for their intended purpose

12                 or in a reasonably foreseeable manner;

13           b.    That the Gunther Tulip IVC filters did not pose dangerous health risks in excess of those

14                 associated with the use of other similar IVC filters, including the predicate devices for the

15                 Gunther Tulip filter;

16           c.    That the design of the Gunther Tulip IVC filters would eliminate the risks that pieces of

17                 the device could perforate the vena cava or other organs, that the devices could tilt, or

18                 that fractures could occur and migrate throughout the body;

19           d.    That the Gunther Tulip IVC filters were safer and more effective than other available

20                 IVC filters;

21           e.    That any and all side effects from the Gunther Tulip IVC filters were accurately reflected

22                 in the product information, instructions for use, warnings, and other labeling information

23                 provided with the devices;

24           f.    That any and all types of adverse events associated with the Gunther Tulip IVC filters

25                 was a class effect and essentially the same among all IVC filters;

26           g.    That the design of the Gunther Tulip IVC filters did not cause or promote blood clots,

27                 clotting or occlusion of the IVC filter, or recurrent DVT and/or PE; and

28

---

22

**AMENDED COMPLAINT FOR DAMAGES**

h. That the Gunther Tulip IVC filters were adequately tested pre-market and prior to
submitting the 510(k) applications to the FDA for clearance to withstand normal
placement within the human body.

109. Cook Defendants made the foregoing misrepresentations knowing that they were false or
without reasonable basis. As mentioned, *supra*, these materials included instructions for use and a
warning document that was included in each package of the Gunther Tulip IVC filters distributed to
Decedent's implanting physicians and implanted in Decedent.

110. The Cook Defendants knew prior to introduction on the market and at the time of
submitting the 510(k) applications that these representations were untrue, from their own internal
testing, analysis and investigation throughout the design and manufacturing process. Moreover, post-
market performance immediately confirmed poor outcomes in patients who were suffering failures and
adverse events at an increased rate compared to other IVC filters. This triggered the obligation for
further investigation and analysis of the safety and efficacy of the Gunther Tulip IVC filters from Cook
Defendants, which further established that the Gunther Tulip IVC filters were, in fact, inferior in safety
and efficacy and posed greater risks of harm and death than other IVC filters on the market, including
the predicate devices for the Gunther Tulip.

111. It was known by Cook Defendants, at all relevant times, that the Gunther Tulip IVC
filters, by way of their design, created and caused these devices to be prothrombotic; blood clots,
clotting and occlusion of the Gunther Tulip IVC filters were found to occur at a significantly increased
rate compared to other IVC filters. This information was revealed in Cook Defendants' pre-market
testing and analysis, and has been reaffirmed throughout the post-market experience of these products,
as reflected by the increased number of these adverse event reports by physicians and published
opinions in medical literature.

112. The Cook Defendants' intent and purpose in making the aforementioned
misrepresentations was to deceive and defraud the public and the medical community, including the
FDA, and Decedent's health care providers; to gain the confidence of the public and the medical
community, including Decedent's health care providers; to falsely assure the public and the medical
community of the quality of the Gunther Tulip IVC filters and their fitness for use; and to induce the

---

**AMENDED COMPLAINT FOR DAMAGES**

1   public and the medical community, including Decedent's health care providers to request, recommend,

2   prescribe, implant, purchase, and continue to use the Gunther Tulip filters , all in reliance on said

3   Defendants' misrepresentations, for the ultimate purposes of maintaining a competitive level with other

4   IVC filter manufacturers, gaining market share, and profiting.

5        113.    The foregoing representations and omissions by Cook Defendants were, in fact, false.

6        114.    Cook Defendants acted to serve their own interests and consciously disregarded

7   information generated by or made available to said Defendants establishing the substantial risk that the

8   Gunther Tulip IVC filters could cause great bodily harm and/or death in patients.

9        115.    Decedent's prescribing and implanting physicians reviewed and relied on these

10  aforementioned material misrepresentations, including, specifically, the product information,

11  instructions for use, indications for use, and labeling materials provided with these devices, in

12  performing a risk/benefit analysis in deciding whether to prescribe or recommend use of a Gunther Tulip

13  IVC filter in Decedent, and determining what risk information to inform and discuss with Decedent, as

14  part of the informed consent process.

15       116.    Cook Defendants' IVC filters are not safe, fit, and effective for human use in their

16  intended and reasonably foreseeable manner.

17       117.    Further, the use of Gunther Tulip IVC filters is hazardous to the users' health, and the

18  Gunther Tulip IVC filters have a serious propensity to cause users to suffer serious injuries, including

19  without limitation the injuries Decedent suffered, as well as his death.

20       118.    Finally, Cook Defendants' IVC filters have a statistically significant higher rate of failure

21  and injury than do other comparable IVC filters.

22       119.    In reliance upon the false representations and omissions made by Cook Defendants,

23  Decedent and his health care providers were induced to, and did use the Gunther Tulip IVC filter,

24  thereby causing Decedent to sustain severe personal injuries and death, as described herein.

25       120.    Cook Defendants knew and had reason to know that Decedent, his health care providers,

26  and the general medical community did not have the ability to determine the true facts intentionally

27  concealed and misrepresented by said Defendants, and would not have prescribed and implanted

28

---

24

**AMENDED COMPLAINT FOR DAMAGES**

1    Gunther Tulip IVC filters if the true facts regarding Gunther Tulip filters had not been concealed and

2    misrepresented by Cook Defendants.

3         121.    The Cook Defendants had sole access to material facts concerning the defective nature of

4    the Gunther Tulip filters, and their propensities to cause serious and dangerous side effects in the form

5    of dangerous injuries and damages to persons who were implanted with Gunther Tulip IVC filters.

6         122.    At the time Cook Defendants failed to disclose and intentionally misrepresented the

7    foregoing facts, and at the time Decedent was implanted with Gunther Tulip IVC filters, Decedent and

8    his health care providers were unaware of Cook Defendants' misrepresentations and omissions.

9         123.    The aforementioned concealed and misrepresented facts were critical to Decedent's

10   health care provider understanding the true risks and dangers inherent in Gunther Tulip IVC filters;

11   instead, Decedent's physicians reasonably relied upon the misrepresentations made by the Cook

12   Defendants in deciding to implant the Gunther Tulip IVC filter in Decedent.

13        124.    These fraudulent misrepresentations made by Cook Defendants to Decedent's health care

14   providers were a substantial contributing factor in their decision to recommend, use and implant the

15   Gunther Tulip IVC filters in Decedent RICHARD CHEUNG, and in causing Plaintiffs' and Decedents'

16   injuries and damages, and/or death.

17        125.    As a direct and proximate result of the Cook Defendants' fraudulent misrepresentations,

18   Plaintiffs and Decedents suffered Injuries and Damages, and/or Death.

19                           **SIXTH CAUSE OF ACTION**

20                          **FRAUDULENT CONCEALMENT**

21                            **(As to Cook Defendants)**

22        126.    Plaintiffs incorporate by reference all prior allegations.

23        127.    In designing, manufacturing, marketing, distributing and selling the Gunther Tulip IVC

24   filters, the Cook Defendants concealed material facts from Decedent and his healthcare providers.

25        128.    These concealed material facts include, but are not limited to:

26        a.   That the Gunther Tulip IVC filters were unsafe and not fit when used for their intended

27             purpose or in a reasonably foreseeable manner;

28

---

25

**AMENDED COMPLAINT FOR DAMAGES**

Exhibit B
Page 82

b. That the Gunther Tulip IVC filters posed dangerous health risks in excess of those associated with the use of other similar IVC filters;

c. That there were additional side effects related to implantation and use of Gunther Tulip IVC filters that were not accurately and completely reflected in the warnings associated with Gunther Tulip IVC filters, including the fact that they are prothrombotic and that tilt could render them ineffective;

d. That the Gunther Tulip IVC filters were not adequately tested to withstand normal placement within the human body;

e. That Cook Defendants were aware prior to, on, and after the date the Gunther Tulip IVC filter was distributed and implanted in Decedent that electropolishing strengthened the structural integrity of the Gunther Tulip IVC filters, thereby reducing the risk of fracture.

129. Decedent and his health care providers were not aware of these and other facts concealed by Cook Defendants.

130. Cook Defendants are and were under a continuing duty to disclose the true character, quality and nature of the Gunther Tulip IVC filters that was implanted in Decedent, but, instead, they concealed them, at all relevant times. Cook Defendants' conduct, as described herein, arises to purposeful conduct, which the Cook Defendants realized was dangerous, reckless and without regard to the consequences or the rights and safety of Decedent.

131. In concealing these and other facts, Cook Defendants intended to deceive Decedent and his health care providers as to the true facts regarding the safety and efficacy of the Gunther Tulip IVC filters.

132. Decedent and his health care providers were ignorant of and could not reasonably discover the facts Cook Defendants fraudulently concealed and reasonably and justifiably relied on Cook Defendants' representations concerning the supposed safety and efficacy of Gunther Tulip IVC filters.

133. Decedent's prescribing and implanting physicians did, in fact, review and rely on the product inserts provided by Cook Defendants with the Gunther Tulip IVC filters prior to prescribing one for Decedent, for the purpose of making a risk/benefit assessment as to whether to prescribe or

1  recommend the Gunther Tulip filters, and determining what risk information to share and discuss with
2  Decedent.

3      134.  Decedent and his prescribing and implanting physicians reasonably and justifiably relied
4  on Cook Defendants' concealments and deception.

5      135.  Decedent's health care providers would not have prescribed, recommended, or otherwise
6  used the Gunther Tulip IVC filters to or with Decedent RICHARD CHEUNG, had Cook Defendants not
7  concealed the material information about the risks and efficacy, as set forth herein.

8      136.  As a direct and proximate result of Cook Defendants' fraudulent concealment of material
9  facts, Plaintiffs and Decedents suffered Injuries and Damages, and/or Death.

10  **SEVENTH CAUSE OF ACTION**
11  **BREACH OF EXPRESS WARRANTY**
12  **(As to Cook Defendants)**

13      137.  Plaintiffs incorporate by reference all prior allegations.

14      138.  Decedent, through his medical providers, purchased a Gunther Tulip IVC filter from
15  Cook Defendants.

16      139.  At all relevant times, Cook Defendants were merchants of goods of the kind including
17  medical devices and vena cava filters (i.e., Gunther Tulip IVC filters).

18      140.  At the time and place of sale, distribution, and supply of Gunther Tulip IVC filters to
19  Decedent (and to other consumer and the medical community), Cook Defendants expressly represented
20  and warranted that Gunther Tulip IVC filters:

21      a.  Were safe;
22      b.  Were well-tolerated, efficacious, fit for their intended purpose, and of marketable quality;
23      c.  Did not produce any unwarned-of dangerous side effects; and
24      d.  Were adequately tested.

25      141.  These express representations were set forth by Cook Defendants in package inserts for
26  Gunther Tulip IVC filters and media advertisements.

27
28

---
27
**AMENDED COMPLAINT FOR DAMAGES**

142. At the time of Decedent's purchase from Cook Defendants, Gunther Tulip IVC filters were not in a merchantable condition, and Cook Defendants breached its expressed warranties, in that Gunther Tulip IVC filters, among other things:

    a. Were designed in such a manner so as to be prone to an unreasonably high incidence and severity of tilt, fracture, perforation of vessels and organs, and/or migration;

    b. Were designed in such a manner so as to result in a unreasonably high incidence of injury to the vessels and organs of its purchaser;

    c. Were manufactured in such a manner that the exterior surface of the filter was inadequately, improperly, and inappropriately constituted, causing the device to weaken and fail;

    d. Were unable to be removed at any time during a person's life;

    e. Were not efficacious in the prevention of pulmonary emboli;

    f. Carried a risk of use that outweighed any benefit; and

    g. Were not self-centering.

143. As a direct and proximate result of Cook Defendants' breach of express warranty, Plaintiffs and Decedent suffered Injuries and Damages, and/or Death.

## EIGHTH CAUSE OF ACTION

## MEDICAL MALPRACTICE

### (As to Medical Defendants)

144. Plaintiffs incorporate by reference all prior allegations.

145. Plaintiffs further allege that in the aforementioned examinations, diagnoses, prescriptions, surgery and the handling and control of the care and treatment of Decedent, RICHARD CHEUNG, by Medical Defendants, and each of them, said Medical Defendants, and each of them, negligently and tortiously failed to possess or exercise that degree of knowledge or skill that would ordinarily be possessed and exercised by physicians and surgeons, hospitals, nurses, surgical technicians, attendants, medical clinics, and the like, engaged in said professions in the same locality as Medical Defendants, and each of them, in that said Medical Defendants, and each of them, negligently and unlawfully failed to properly and correctly diagnose, render care and treatment to, obtain informed consent, perform

1  proper surgery on, and prescribe and administer medicine and drugs for the condition of Decedent,

2  RICHARD CHEUNG, causing his death on or about December 20, 2015.

3      146.    On or about December 4, 2015, Decedent underwent an implant procedure at Stanford

4  Hospital in Redwood City, California for placement of a Gunther Tulip filter by Defendants

5  MATTHEW MELL, M.D. and Stanford, through its agents and employees, and DOES 26 through 50.

6  Dr. Mell improperly and negligently failed to appropriately implant the filter, but instead placed it in a

7  severely tilted position and failed to make any reasonable efforts to correct the dangerous tilting or take

8  other medically recognized measures, all of which was below the accepted medical standard of care in

9  the community.

10      147.    Further, Dr. Mell negligently and unlawfully failed to advise other treating specialists of

11  RICHARD CHEUNG of the severe tilt of his filter and the serious and deadly risks associated with a

12  tilted filter. The other treating specialists included Dr. Gary Steinberg in neurosurgery for Mr. Cheung's

13  moyamoya disease which involved the risk of stroke without a surgical craniotomy, and the monitoring

14  of his pre-existing hypercoagulation disorder (which is a type of hyperclotting abnormality) by Dr.

15  Caroline Berube in hematology. These other treating physicians were tasked with making the difficult

16  and close decision regarding whether to proceed with surgical craniotomy in less than three (3) months

17  after an earlier pulmonary embolism, or wait the customary standard of care six (6) months after a

18  pulmonary embolism event had passed before performing the craniotomy surgery. The other treating

19  physicians opted for the early surgery date knowing that the anticoagulation medication successfully

20  controlling Mr. Cheung's clotting disorder had to be stopped prior to surgery to avoid a bleeding risk

21  because they relied instead on the protective capability of a properly implanted filter until

22  anticoagulation could safely be resumed after surgery. Although the hematologist proceeded in an

23  aggressive but prudent manner during the period of her care, and the craniotomy surgery provided

24  excellent results to Mr. Cheung, the surgical success was entirely undermined by the condition of the

25  severely tilted filter which was well known by Dr. Mell at all times material hereto, but unknown by the

26  other treating specialists.

27

28

**AMENDED COMPLAINT FOR DAMAGES**

148. Additionally, Dr. Mell's failure to properly warn Decedent and other treating physicians involved in Mr. Cheung's care of the severely tilted filter and related risks resulted in a lack of informed consent to surgery by Mr. Cheung and his wife, DARA BERMAN-CHEUNG.

149. As a direct and proximate result of the negligence, carelessness, recklessness, wantonness and unlawfulness of the Medical Defendants and each of them, and the resulting death, as aforesaid, Plaintiffs DARA BERMAN-CHEUNG, SAM BERMAN CHEUNG and BAILEY BERMAN CHUNG have suffered and continue to suffer from a life-altering tragedy and resulting damages in a sum within the jurisdiction of this Court and to be shown according to proof.

150. As a direct and proximate result of the acts and omissions of Medical Defendants, and each of them, Plaintiffs have incurred expenses for the funeral and burial of Decedent, RICHARD CHEUNG, the exact value and amount of which will be shown according to proof.

151. As a further direct and proximate result of the acts and omission of Medical Defendants, and each of them, Plaintiffs have been damaged in that each has been deprived of the care, comfort, society, protection, support, love, and services of Decedent, RICHARD CHEUNG, all to their damage in a sum according to proof at the time of trial and in excess of the minimum jurisdictional limit of this court.

152. As a further direct and proximate result of the acts and omissions of Medical Defendants, and each of them, Plaintiffs have sustained and will in the future sustain loss of financial support from Decedent, RICHARD CHEUNG, and the value of Decedent's services to Plaintiffs in an amount to be shown according to proof.

### NINTH CAUSE OF ACTION

### SURVIVAL ACTION

### (As to All Defendants)

153. Plaintiffs incorporate by reference all prior allegations.

154. DARA BERMAN-CHEUNG, SAM BERMAN CHEUNG and BAILEY BERMAN CHEUNG are the successors-in-interest to Decedent, RICHARD CHEUNG.

155. As a direct and proximate result of the wrongful acts and omissions of the defendants, as alleged herein, Decedent suffered personal injuries for which he was required to and did employ

1  physicians and other health care providers to examine, treat and care for him. As a further proximate

2  result, RICHARD CHEUNG experienced significant pain and suffering prior to his death, and incurred

3  medical and incidental expenses, as well as lost wages.

## TENTH CAUSE OF ACTION

### WRONGFUL DEATH

#### (As to All Defendants)

7      156.    Plaintiffs incorporate by reference all prior allegations.

8      157.    RICHARD CHEUNG was prescribed, supplied with, received, took, used and was

9  implanted with a Gunther Tulip IVC filter product as tested, studied, researched, evaluated, endorsed,

10  designed, formulated, compounded, manufactured, produced, processed, assembled, inspected,

11  distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed, sold or otherwise

12  placed in the stream of interstate commerce by Cook Defendants, and as implanted by Medical

13  Defendants.

14      158.    The fatal injuries and damages of Decedent were caused by the wrongful acts, omissions,

15  and fraudulent misrepresentations of Defendants, as described herein.

16      159.    As a result of the conduct of Defendants and the use of Defendants' IVC filters, Decedent

17  suffered catastrophic and ultimately fatal injuries.

18      160.    As a result of the death of Decedent, Plaintiffs were deprived of love, companionship,

19  comfort, affection, society, solace and moral support of their loved one, RICHARD CHEUNG.

20      161.    Plaintiffs, as the surviving and legal heirs to Decedent are entitled to recover economic

21  and non-economic damages against all Defendants for wrongful death directly and legally caused by the

22  defects in Defendants' IVC filters, and the negligent conduct, acts, errors, omissions and/or intentional

23  and/or negligent misrepresentations of Defendants, and each of them, as alleged throughout this

24  Complaint for Damages.

25

26

27  /// 

28  ///

---

31

**AMENDED COMPLAINT FOR DAMAGES**

Exhibit B
Page 88

## PUNITIVE DAMAGES ALLEGATIONS

### (As to Cook Defendants)

162.    Plaintiffs incorporate by reference all prior allegations.

163.    At all times material hereto, Cook Defendants knew or should have known that Gunther Tulip IVC filters were unreasonably dangerous with respect to the risk of tilt, fracture, migration and/or perforation.

164.    At all times material hereto, Cook Defendants attempted to misrepresent and did knowingly misrepresent facts concerning the safety of Gunther Tulip IVC filters.

165.    Cook Defendants' misrepresentations included knowingly withholding material information from the medical community and the public, including Decedent's physicians, concerning the safety of its Gunther Tulip IVC filters.  Data establishes that the failure rates of the filters are and were much higher than what Cook Defendants have in the past and currently continue to publish to the medical community and members of the public.

166.    Cook Defendants' conduct, alleged throughout this Complaint, was willful, wanton, and undertaken with a conscious indifference and disregard to the consequences that consumers of their products faced, including Decedent. Cook Defendants had actual knowledge of the dangers presented by Gunther Tulip IVC filters, yet consciously failed to act reasonably to inform or warn Decedent, his physicians, or the public at large of these dangers. Cook Defendants consciously failed to establish and maintain an adequate quality and post-market surveillance system.

167.    At all times material hereto, Cook Defendants knew and recklessly disregarded the fact that Gunther Tulip IVC filters have an unreasonably high rate of tilt, fracture, migration, and/or perforation.

168.    Notwithstanding the foregoing, Cook Defendants continued to market Gunther Tulip IVC filters aggressively to consumers, including Decedent, without disclosing the aforesaid side effects.

169.    Cook Defendants knew of their Gunther Tulip IVC filters' lack of warnings regarding the risk of tilt, fracture, migration, and/or perforation, but intentionally concealed and/or recklessly failed to disclose that risk and continued to market, distribute, and sell its filters without said warnings so as to

AMENDED COMPLAINT FOR DAMAGES

1   maximize sales and profits at the expense of the health and safety of the public, including Decedent, in

2   conscious disregard of the foreseeable harm caused by Gunther Tulip IVC filters.

3          170.    Cook Defendants' intentional and/or reckless failure to disclose information deprived

4   Decedent's physicians of necessary information to enable them to weigh the true risks of using Gunther

5   Tulip IVC filters against its benefits.

6          171.    Cook Defendants' conduct is reprehensible, evidencing an evil hand guided by an evil

7   mind and was undertaken for pecuniary gain in reckless and conscious disregard for the substantial risk

8   of death and physical injury to consumers, including Decedent.

9          172.    Such conduct justifies an award of punitive or exemplary damages in an amount

10  sufficient to punish Cook Defendants' conduct and deter like conduct by Cook Defendants and other

11  similarly situated persons and entities in the future.

## PRAYER FOR DAMAGES

13         WHEREFORE, Plaintiffs demand judgment against Defendants for:

14         a.      General (non-economic) damages, including, without limitation, past and future pain and

15  suffering; past and future emotional distress; past and future loss of enjoyment of life; and other

16  consequential damages as allowed by law;

17         b.      Special (economic) damages, including, without limitation, past and future medical

18  expenses; past and future lost wages and loss of earning capacity; and other consequential damages as

19  allowed by law;

20         c.      Punitive damages (only as to the Cook Defendants) in an amount sufficient to punish

21  Cook Defendants and deter similar conduct in the future;

22         d.      Costs of suit;

23         e.      Prejudgment interest as allowed by law;

24         f.      Post-judgment interest at the highest applicable statutory or common law rate from the

25  date of judgment until satisfaction of judgment; and

26         g.      Such other additional and further relief as Plaintiffs may be entitled to in law or in equity.

27

28  / / /

Exhibit B
Page 90

1                 **DEMAND FOR JURY TRIAL**

2      Plaintiffs demand a trial by jury on all triable issues.

3

4 Dated: March 20, 2017               Respectfully submitted,

5                          LOPEZ McHUGH LLP

6

7

8                  By: _____
                         Ramon Rossi Lopez

9                          Matthew R. Lopez
                         Amorina P. Lopez

10                          Nicholas R. Graham

11                          Attorneys for Plaintiffs DARA BERMAN-
                         CHEUNG, SAM BERMAN CHEUNG and

12                          BAILEY BERMAN CHUNG

13

---

34

**AMENDED COMPLAINT FOR DAMAGES**

CIV-010

| ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Ramon Rossi Lopez  (SBN 86361)<br>Matthew Ramon Lopez (SBN 263134)<br>LOPEZ McHUGH LLP<br>100 Bayview Circle, Ste. 5600, Newport Beach, CA  92660<br>TELEPHONE NO.: (949) 737-1501   FAX NO. (Optional): (949) 737-1504<br>E-MAIL ADDRESS (Optional): rlopez@lopezmchugh.com/mlopez@lopezmchugh.com<br>ATTORNEY FOR (Name):   Plaintiffs | **RECEIVED**<br>MAR 16 2017<br>Clerk of the Court<br>Superior Court of CA County of Santa Clara<br>BY_____DEPUTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
  STREET ADDRESS: 191 North First Street
  MAILING ADDRESS:
  CITY AND ZIP CODE: San Jose, CA 95113
  BRANCH NAME: Downtown Superior Courthouse

PLAINTIFF/PETITIONER:  DARA BERMAN-CHEUNG, etc., et al.

DEFENDANT/RESPONDENT:  COOK GROUP, INC., etc., et al.

| APPLICATION AND ORDER FOR APPOINTMENT<br>OF GUARDIAN AD LITEM—CIVIL<br>[✓] EX PARTE | CASE NUMBER:<br>17CV307373 |
|---|---|

**NOTE:** This form is for use in civil proceedings in which a party is a minor, an incapacitated person, or a person for whom a conservator has been appointed. A party who seeks the appointment of a guardian ad litem in a family law or juvenile proceeding should use form FL-935. A party who seeks the appointment of a guardian ad litem in a probate proceeding should use form DE-350/GC-100. An individual cannot act as a guardian ad litem unless he or she is represented by an attorney or is an attorney.

1. Applicant (name): Dara Berman-Cheung                                    is
   a. [✓] the parent of (name):  Sam Berman Cheung
   b. [ ] the guardian of (name):
   c. [ ] the conservator of (name):
   d. [✓] a party to the suit.
   e. [ ] the minor to be represented (if the minor is 14 years of age or older).
   f. [ ] another interested person (specify capacity):

2. This application seeks the appointment of the following person as guardian ad litem (state name, address, and telephone number):
   Dara Berman-Cheung
   3186 Mountview Road
   Columbus, OH  43221

3. The guardian ad litem is to represent the interests of the following person (state name, address, and telephone number):
   Sam Berman Cheung
   3186 Mountview Road
   Columbus, OH  43221

4. The person to be represented is:
   a. [✓] a minor (date of birth):  October 17, 2003
   b. [ ] an incompetent person.
   c. [ ] a person for whom a conservator has been appointed.

5. The court should appoint a guardian ad litem because:
   a. [✓] the person named in item 3 has a cause or causes of action on which suit should be brought (describe):
      Medical Negligence, Product Liability, Wrongful Death, and Survival Action

[ ] Continued on Attachment 5a.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-010 [Rev. January 1, 2008] | APPLICATION AND ORDER FOR APPOINTMENT<br>OF GUARDIAN AD LITEM—CIVIL | Code of Civil Procedure,<br>§ 372 et seq |
|---|---|---|

BY FAX

CIV-010

| PLAINTIFF/PETITIONER: DARA BERMAN-CHEUNG, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: COOK GROUP, INC., etc., et al. | |

5. b. ☐ more than 10 days have elapsed since the summons in the above-entitled matter was served on the person named in item 3, and no application for the appointment of a guardian ad litem has been made by the person identified in item 3 or any other person.

c. ☑ the person named in item 3 has no guardian or conservator of his or her estate.

d. ☑ the appointment of a guardian ad litem is necessary for the following reasons *(specify):*

Sam Berman Cheung is a minor under the age of 14 and, along with his mother and sister, has a claim for damages against defendants for the wrongful death of his father, Richard Cheung,

☐ Continued on Attachment 5d.

6. The proposed guardian ad litem's relationship to the person he or she will be representing is:
   a. ☑ related *(state relationship):* Mother
   b. ☐ not related *(specify capacity):*

7. The proposed guardian ad litem is fully competent and qualified to understand and protect the rights of the person he or she will represent and has no interests adverse to the interests of that person. *(If there are any issues of competency or qualification or any possible adverse interests, describe and explain why the proposed guardian should nevertheless be appointed):*

☐ Continued on Attachment 7.

Matthew Ramon Lopez
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF ATTORNEY)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 3|13|2017

Dara Berman-Cheung
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF APPLICANT)

**CONSENT TO ACT AS GUARDIAN AD LITEM**

I consent to the appointment as guardian ad litem under the above petition.

Date: 3|13|2017

Dara Berman-Cheung
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PROPOSED GUARDIAN AD LITEM)

**ORDER** ☐ **EX PARTE**

THE COURT FINDS that it is reasonable and necessary to appoint a guardian ad litem for the person named in item 3 of the application, as requested.

THE COURT ORDERS that *(name):*
is hereby appointed as the guardian ad litem for *(name):*
for the reasons set forth in item 5 of the application.

Date: _____

_____
JUDICIAL OFFICER

☐ SIGNATURE FOLLOWS LAST ATTACHMENT

CIV-010 [Rev. January 1, 2008]

**APPLICATION AND ORDER FOR APPOINTMENT OF GUARDIAN AD LITEM—CIVIL**

Page 2 of 2

# SANTA CLARA COUNTY SUPERIOR COURT
## ALTERNATIVE DISPUTE RESOLUTION
### INFORMATION SHEET

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

### What is ADR?
ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

### What are the advantages of choosing ADR instead of litigation?
ADR can have a number of advantages over litigation:

- **ADR can save time.** A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

- **ADR can save money.** Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

- **ADR provides more participation.** Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

- **ADR provides more control and flexibility.** Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

- **ADR can reduce stress.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

### What are the main forms of ADR offered by the Court?
**Mediation** is an informal, confidential, flexible and non-binding process in the mediator helps the parties to understand the interests of everyone involved, and their practical and legal choices. The mediator helps the parties to communicate better, explore legal and practical settlement options, and reach an acceptable solution of the problem. The mediator does not decide the solution to the dispute; the parties do.

Mediation may be appropriate when:
- The parties want a non-adversary procedure
- The parties have a continuing business or personal relationship
- Communication problems are interfering with a resolution
- There is an emotional element involved
- The parties are interested in an injunction, consent decree, or other form of equitable relief

**Neutral evaluation**, sometimes called "Early Neutral Evaluation" or "ENE", is an informal process in which the evaluator, an experienced neutral lawyer, hears a compact presentation of both sides of the case, gives a non-binding assessment of the strengths and weaknesses on each side, and predicts the likely outcome. The evaluator can help parties to identify issues, prepare stipulations, and draft discovery plans. The parties may use the neutral's evaluation to discuss settlement.

Neutral evaluation may be appropriate when:
- The parties are far apart in their view of the law or value of the case
- The case involves a technical issue in which the evaluator has expertise
- Case planning assistance would be helpful and would save legal fees and costs
- The parties are interested in an injunction, consent decree, or other form of equitable relief

*-over-*

---

**ALTERNATIVE DISPUTE RESOLUTION INFORMATION SHEET
CIVIL DIVISION**

**Arbitration** is a less formal process than a trial, with no jury. The arbitrator hears the evidence and arguments of the parties and then makes a written decision. The parties can agree to binding or non-binding arbitration. In binding arbitration, the arbitrator's decision is final and completely resolves the case, without the opportunity for appeal. In non-binding arbitration, the arbitrator's decision could resolve the case, without the opportunity for appeal, unless a party timely rejects the arbitrator's decision within 30 days and requests a trial. Private arbitrators are allowed to charge for their time.

Arbitration may be appropriate when:
- The action is for personal injury, property damage, or breach of contract
- Only monetary damages are sought
- Witness testimony, under oath, needs to be evaluated
- An advisory opinion is sought from an experienced litigator (if a non-binding arbitration)

**Civil Judge ADR** allows parties to have a mediation or settlement conference with an experienced judge of the Superior Court. Mediation is an informal, confidential, flexible and non-binding process in which the judge helps the parties to understand the interests of everyone involved, and their practical and legal choices. A settlement conference is an informal process in which the judge meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations. The request for mediation or settlement conference may be made promptly by stipulation (agreement) upon the filing of the Civil complaint and the answer. There is no charge for this service.

Civil Judge ADR may be appropriate when:
- The parties have complex facts to review
- The case involves multiple parties and problems
- The courthouse surroundings would he helpful to the settlement process

**Special masters and referees** are neutral parties who may be appointed by the court to obtain information or to make specific fact findings that may lead to a resolution of a dispute.
Special masters and referees can be particularly effective in complex cases with a number of parties, like construction disputes.

**Settlement conferences** are informal processes in which the neutral (a judge or an experienced attorney) meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations.
Settlement conferences can be effective when the authority or expertise of the judge or experienced attorney may help the parties reach a resolution.

*What kind of disputes can be resolved by ADR?*
Although some disputes must go to court, almost any dispute can be resolved through ADR. This includes disputes involving business matters; civil rights; collections; corporations; construction; consumer protection; contracts; copyrights; defamation; disabilities; discrimination; employment; environmental problems; fraud; harassment; health care; housing; insurance; intellectual property; labor; landlord/tenant; media; medical malpractice and other professional negligence; neighborhood problems; partnerships; patents; personal injury; probate; product liability; property damage; real estate; securities; sports; trade secret; and wrongful death, among other matters.

*Where can you get assistance with selecting an appropriate form of ADR and a neutral for your case, information about ADR procedures, or answers to other questions about ADR?*

*Contact:*
Santa Clara County Superior Court
ADR Administrator
408-882-2530

Santa Clara County DRPA Coordinator
408-792-2784

CV-5003 REV 6/26/13     **ALTERNATIVE DISPUTE RESOLUTION INFORMATION SHEET
CIVIL DIVISION**     Exhibit B
Page 95

Case 1:14-ml-02570-RLY-TAB   Document 6038-12   Filed 09/20/17   Page 100 of 202 PageID #:
23445
Case 5:17-cv-02564-NC   Document 1-2   Filed 05/04/17   Page 49 of 143

# CIVIL LAWSUIT NOTICE

*Superior Court of California, County of Santa Clara*
*191 North First St., San José, CA 95113*

CASE NUMBER: _____ **17CV307373**

## PLEASE READ THIS ENTIRE FORM

*PLAINTIFF* (the person suing):  Within 60 days after filing the lawsuit, you must serve each Defendant with the *Complaint, Summons,* an *Alternative Dispute Resolution (ADR) Information Sheet,* and a copy of this *Civil Lawsuit Notice,* and you must file written proof of such service.

---

*DEFENDANT* (The person sued):  You must do each of the following to protect your rights:

1. You must file a **written response** to the *Complaint, using the proper legal form or format,* in the Clerk's Office of the Court, within **30 days** of the date you were served with the *Summons* and *Complaint;*
2. You must serve by mail  a copy of your written response on the  Plaintiff's attorney or on the Plaintiff if Plaintiff has no attorney (to "serve by mail" means to have an adult other than yourself mail a copy); and
3. You must attend the first Case Management Conference.

   Warning: If you, as the Defendant, do not follow these instructions, you may automatically lose this case.

---

*RULES AND FORMS:*  You must follow the California Rules of Court and the Superior Court of California, County of Santa Clara Local Civil Rules and use proper forms.  You can obtain legal information, view the rules and receive forms, free of charge, from the Self-Help Center at 201 North First Street, San José (408-882-2900 x-2926).

- State Rules and Judicial Council Forms: www.courts.ca.gov/forms.htm and www.courts.ca.gov/rules.htm
- Local Rules and Forms: www.scscourt.org

*CASE MANAGEMENT CONFERENCE (CMC):*  You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC.  You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

   *You or your attorney must appear at the CMC.  You may ask to appear by telephone – see Local Civil Rule 8.*

---

Your Case Management Judge is: _____ **Maureen Folan** _____ Department: ___ **8** ___

The 1st CMC is scheduled for: (Completed by Clerk of Court)

   Date: ____ JUL 1 1 2017 ____ Time: __ **3:00pm** __ in Department: ___ **8** ___

The next CMC is scheduled for: (Completed by party if the 1st CMC was continued or has passed)

   Date: _____ Time: _____ in Department:_____

---

*ALTERNATIVE DISPUTE RESOLUTION (ADR):*  If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.scscourt.org or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

*WARNING:* Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Ramon Rossi Lopez, SBN 86361; Matthew Ramon Lopez, SBN 263134; Amorina
Patrice Lopez, SBN 278002; Nicholas Robert Graham, SBN 307330
Lopez McHugh LLP
100 Bayview Circle, Suite 5600, Newport Beach, CA 92660
TELEPHONE NO.: (949) 737-1501     FAX NO.: (949) 737-1504
ATTORNEY FOR *(Name):* Plaintiff Dara Berman-Cheung, et al.

**CM-010**

*FOR COURT USE ONLY*

**ENDORSED**

2017 MAR 16   A 8: 58

CLERK O.  [illegible] COURT
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
BY_____ DUARTE
                        DEPUTY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Santa Clara
STREET ADDRESS: 191 North First Street
MAILING ADDRESS: 191 North First Street
CITY AND ZIP CODE: San Jose, 95113
BRANCH NAME: Downtown Superior Court

CASE NAME:
Dara Berman-Cheung, et al. v. Cook Group Inc., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited   ☐ Limited | ☐ Counter   ☐ Joinder | **17CV307373** |
| (Amount demanded exceeds $25,000)   (Amount demanded is $25,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: <br> DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☑ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition *re:* arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. ☐ Large number of separately represented parties
b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. ☐ Substantial amount of documentary evidence
d. ☐ Large number of witnesses
e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☐ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify):* Ten
5. This case ☐ is ☑ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: March 15, 2017
Matthew Ramon Lopez
_____
(TYPE OR PRINT NAME)

*(signature)*
_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**BY FAX**

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courtinfo.ca.gov*

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
 Asbestos Property Damage
 Asbestos Personal Injury/ Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
 Medical Malpractice– Physicians & Surgeons
 Other Professional Health Care Malpractice
Other PI/PD/WD (23)
 Premises Liability (e.g., slip and fall)
 Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
 Intentional Infliction of Emotional Distress
 Negligent Infliction of Emotional Distress
 Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
 Legal Malpractice
 Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
 Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
 Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
 Negligent Breach of Contract/ Warranty
 Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
 Collection Case–Seller Plaintiff
 Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
 Auto Subrogation
 Other Coverage
Other Contract (37)
 Contractual Fraud
 Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
 Writ of Possession of Real Property
 Mortgage Foreclosure
 Quiet Title
 Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
 Writ–Administrative Mandamus
 Writ–Mandamus on Limited Court Case Matter
 Writ–Other Limited Court Case Review
Other Judicial Review (39)
 Review of Health Officer Order
 Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
 Abstract of Judgment (Out of County)
 Confession of Judgment (*non-domestic relations*)
 Sister State Judgment
 Administrative Agency Award (*not unpaid taxes*)
 Petition/Certification of Entry of Judgment on Unpaid Taxes
 Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
 Declaratory Relief Only
 Injunctive Relief Only (*non-harassment*)
 Mechanics Lien
 Other Commercial Complaint Case (*non-tort/non-complex*)
 Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
 Civil Harassment
 Workplace Violence
 Elder/Dependent Adult Abuse
 Election Contest
 Petition for Name Change
 Petition for Relief From Late Claim
 Other Civil Petition

CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Page 2 of 2

Exhibit B
Page 98

Case 1:14-ml-02570-RLY-TAB Document 6038-12 Filed 09/20/17 Page 103 of 202 PageID #:
23448
Case 5:17-cv-02564-NC Document 1-2 Filed 05/04/17 Page 46 of 143 PageID #:

CIV-010

| ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

ATTORNEY *(Name, State Bar number, and address):*
Ramon Rossi Lopez   (SBN 86361)
Matthew Ramon Lopez (SBN 263134)
LOPEZ McHUGH LLP
100 Bayview Circle, Ste. 5600, Newport Beach, CA  92660
TELEPHONE NO.:  (949) 737-1501   FAX NO. *(Optional):*  (949) 737-1504
E-MAIL ADDRESS *(Optional):*  rlopez@lopezmchugh.com/mlopez@lopezmchugh.com
ATTORNEY FOR *(Name):*  Plaintiffs

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS:  191 North First Street
MAILING ADDRESS:
CITY AND ZIP CODE:  San Jose, CA  95113
BRANCH NAME:  Downtown Superior Courthouse

**RECEIVED**

MAR 16 2017

Clerk of the Court
Superior Court of CA County of Santa Clara
BY_____
                                    DEPUTY

PLAINTIFF/PETITIONER:  DARA BERMAN-CHEUNG, et al.

DEFENDANT/RESPONDENT:  COOK GROUP INC., etc., et al.

| APPLICATION AND ORDER FOR APPOINTMENT<br>OF GUARDIAN AD LITEM—CIVIL<br>[✓] EX PARTE | CASE NUMBER:<br>17CV307373 |
|---|---|

*NOTE: This form is for use in civil proceedings in which a party is a minor, an incapacitated person, or a person for whom a conservator has been appointed. A party who seeks the appointment of a guardian ad litem in a family law or juvenile proceeding should use form FL-935. A party who seeks the appointment of a guardian ad litem in a probate proceeding should use form DE-350/GC-100. An individual cannot act as a guardian ad litem unless he or she is represented by an attorney or is an attorney.*

1. Applicant *(name):* Dara Berman-Cheung                                      is
   a. [✓] the parent of *(name):*  Bailey Berman Cheung
   b. [ ] the guardian of *(name):*
   c. [ ] the conservator of *(name):*
   d. [✓] a party to the suit.
   e. [ ] the minor to be represented *(if the minor is 14 years of age or older).*
   f. [ ] another interested person *(specify capacity):*

2. This application seeks the appointment of the following person as guardian ad litem *(state name, address, and telephone number):*
   Dara Berman-Cheung
   3186 Mountview Road
   Columbus, OH  43221

3. The guardian ad litem is to represent the interests of the following person *(state name, address, and telephone number):*
   Bailey Berman Cheung
   3186 Mountview Road
   Columbus, OH  43221

4. The person to be represented is:
   a. [✓] a minor *(date of birth):*  August 20, 2005
   b. [ ] an incompetent person.
   c. [ ] a person for whom a conservator has been appointed.

5. The court should appoint a guardian ad litem because:
   a. [✓] the person named in item 3 has a cause or causes of action on which suit should be brought *(describe):*
      Medical Negligence, Product Liability, Wrongful Death, and Survival Action

[ ] Continued on Attachment 5a.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-010 [Rev. January 1, 2008] | APPLICATION AND ORDER FOR APPOINTMENT<br>OF GUARDIAN AD LITEM—CIVIL | Code of Civil Procedure,<br>§ 372 et seq. |
|---|---|---|

CIV-010

| PLAINTIFF/PETITIONER: DARA BERMAN-CHEUNG, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: COOK GROUP, INC., etc., et al. | |

5. b. ☐ more than 10 days have elapsed since the summons in the above-entitled matter was served on the person named in item 3, and no application for the appointment of a guardian ad litem has been made by the person identified in item 3 or any other person.

c. ☑ the person named in item 3 has no guardian or conservator of his or her estate.

d. ☑ the appointment of a guardian ad litem is necessary for the following reasons *(specify):*

Bailey Berman Cheung is a minor under the age of 14 and, along with her mother and brother, has a claim for damages against defendants for the wrongful death of her father, Richard Cheung,

☐ Continued on Attachment 5d.

6. The proposed guardian ad litem's relationship to the person he or she will be representing is:
a. ☑ related *(state relationship):* Mother
b. ☐ not related *(specify capacity):*

7. The proposed guardian ad litem is fully competent and qualified to understand and protect the rights of the person he or she will represent and has no interests adverse to the interests of that person. *(If there are any issues of competency or qualification or any possible adverse interests, describe and explain why the proposed guardian should nevertheless be appointed):*

☐ Continued on Attachment 7.

Matthew Ramon Lopez
_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF ATTORNEY)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
Date: 3|13|2017

Dara Berman-Cheung
_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF APPLICANT)

## CONSENT TO ACT AS GUARDIAN AD LITEM

I consent to the appointment as guardian ad litem under the above petition.
Date: 3|13|2017

Dara Berman-Cheung
_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF PROPOSED GUARDIAN AD LITEM)

## ORDER ☐ EX PARTE

THE COURT FINDS that it is reasonable and necessary to appoint a guardian ad litem for the person named in item 3 of the application, as requested.

THE COURT ORDERS that *(name):*
is hereby appointed as the guardian ad litem for *(name):*
for the reasons set forth in item 5 of the application.
Date: _____

_____
JUDICIAL OFFICER
☐ SIGNATURE FOLLOWS LAST ATTACHMENT

CIV-010 [Rev. January 1, 2008]

**APPLICATION AND ORDER FOR APPOINTMENT OF GUARDIAN AD LITEM—CIVIL**

Page 2 of 2

<table>
<tr><td>1</td><td>Ramon Rossi Lopez, Bar No. 86361<br>Matthew Ramon Lopez, Bar No. 263134</td></tr>
</table>

1 | Ramon Rossi Lopez, Bar No. 86361
Matthew Ramon Lopez, Bar No. 263134
2 | Amorina Patrice Lopez, Bar No. 278002
**LOPEZ McHUGH LLP**
3 | 100 Bayview Circle, Suite 5600
Newport Beach, CA 92660
4 | Telephone: (949) 737-1501
Facsimile: (949) 737-1504
5 | rlopez@lopezmchugh.com
mlopez@lopezmchugh.com
6 | alopez@lopezmchugh.com

7 | *Attorneys for Plaintiffs*

ENDORSED

2017 MAR 16 A 8: 58

CLERK OF COURT
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
BY_____ DEPUTY

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 | **FOR THE COUNTY OF SANTA CLARA**

10 |

11 | DARA BERMAN-CHEUNG, an Individual;
SAM BERMAN CHEUNG, a Minor, by and
12 | through his Guardian ad Litem, DARA
BERMAN-CHEUNG; and BAILEY
13 | BERMAN CHUNG, a Minor, by and
through her Guardian ad Litem, DARA
14 | BERMAN-CHEUNG,

Case No.: **17CV307373**

**DECLARATION OF SUCCESSORS-IN-INTEREST**

**[C.C.P. §377.32]**

15 |
16 |                    Plaintiffs,
vs.

17 | COOK GROUP, INC., an Indiana
corporation; COOK MEDICAL
18 | INCORPORATED a/k/a COOK MEDICAL,
INC., an Indiana corporation; COOK
19 | MEDICAL, LLC, an Indiana corporation;
WILLIAM COOK EUROPE ApS;
20 | MATTHEW MELL, M.D., an individual;
STANFORD HEALTH CARE, a California
21 | corporation; and DOES 1 through 50,
Inclusive,

22 |                    Defendants.

23 |

24 |        I, DARA BERMAN-CHEUNG, individually and on behalf of my minor children, SAM

25 | BERMAN CHEUNG and BAILEY BERMAN CHEUNG, declare as follows:

26 |        1.        We are the surviving spouse and children of RICHARD CHEUNG ("Decedent"),

27 | respectively.

28 |        2.        We, DARA BERMAN-CHEUNG, SAM BERMAN CHEUNG, and BAILEY

-1-

**DECLARATION OF SUCCESSORS-IN-INTEREST**

BY FAX

BERMAN CHEUNG, Decedent's spouse and children, are the beneficiaries of Decedent RICHARD

CHEUNG's estate pursuant to § 6042 of the California *Probate Code*.

       3.     Decedent died on December 20, 2015 in Santa Clara County, California. A true and

correct copy of the Decedent's Death Certificate is attached hereto.

       4.     There is no proceeding pending in California for administration of the Decedent's

Estate.

       5.     We, DARA BERMAN-CHEUNG, SAM BERMAN CHEUNG, and BAILEY

BERMAN CHEUNG, are the Decedent's successors-in-interest as defined in *Code of Civil*

*Procedure* § 377.11 and succeed to Decedent's interest in this action. We, DARA BERMAN-

CHEUNG, SAM BERMAN CHEUNG, and BAILEY BERMAN CHEUNG, are Decedent's spouse

and children, and sole beneficiaries of Decedent's Estate.

       6.     No other person has a right to commence the action or proceeding, or to be

substituted for the Decedent in the pending action.

       I declare under penalty of perjury under the laws of the State of California that the foregoing

is true and correct.

DATED: 3/15/2017

                           DARA BERMAN-CHEUNG, Declarant

-2-

**DECLARATION OF SUCCESSORS-IN-INTEREST**

Exhibit B
Page 102

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

COOK GROUP, INC., an Indiana corporation; (Additional Parties Attachment Form Attached)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

DARA BERMAN-CHEUNG, an Individual; (Additional Parties Attachment Form Attached)

ENDORSED

2017 MAR 16  A 8: 58

CLERK OF THE COURT
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
BY _____ DEPUTY
G. DUARTE

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Downtown Superior Court<br>191 North First Street, San Jose, CA 95113 | CASE NUMBER:<br>*(Número del Caso):*<br>17CV307373 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Matthew Ramon Lopez, Lopez McHugh LLP, 100 Bayview Circle, Ste. 5600, Newport Beach, CA 92660
(949) 737-1501

| DATE: 3/15/2017  MAR 16 2017 | Clerk, by | G. DUARTE | , Deputy |
|---|---|---|---|
| *(Fecha)* | *(Secretario)* | | *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Cook Medical Incorporated a/k/a Cook Medical Inc, an Indiana Corporation

   under: ☒ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
      ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
      ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
      ☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 4/4/17

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | SUMMONS | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

Exhibit B
Page 103

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Dara Berman-Cheung, et al. v. Cook Group, Inc., et al. | |

### INSTRUCTIONS FOR USE

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➔ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

COOK MEDICAL INCORPORATED a/k/a COOK MEDICAL, INC., an Indiana corporation; COOK MEDICAL, LLC, an Indiana corporation; WILLIAM COOK EUROPE APS; MATTHEW MELL, M.D., an individual; STANFORD HEALTH CARE, a California corporation; and DOES 1 through 50, Inclusive,

Page ___2___ of ___3___

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Case 1:14-ml-02570-RLY-TAB Document 6038-12 Filed 09/20/17 Page 109 of 202 PageID #:
23454
Case 5:17-cv-02564-NC Document 1-2 Filed 05/04/17 Page 52 of 143

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Dara Berman-Cheung, et al. v. Cook Group, Inc., et al. | |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

[✓] Plaintiff  [ ] Defendant  [ ] Cross-Complainant  [ ] Cross-Defendant

SAM BERMAN CHEUNG, a Minor, by and through his Guardian ad Litem, DARA BERMAN-CHEUNG;
and BAILEY BERMAN CHUNG, a Minor, by and through her Guardian ad Litem, DARA
BERMAN-CHEUNG,

Page  3  of  3

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Exhibit B
Page 105

```
 1 | Ramon Rossi Lopez, Bar No. 86361
 2 | Matthew Ramon Lopez, Bar No. 263134
   | Amorina Patrice Lopez, Bar No. 278002
 3 | Nicholas Robert Graham, Bar No. 307330
   | LOPEZ McHUGH LLP
 4 | 100 Bayview Circle, Suite 5600
   | Newport Beach, California 92660
 5 | Telephone: (949) 737-1501
 6 | Facsimile:  (949) 737-1504
   | rlopez@lopezmchugh.com
 7 | mlopez@lopezmchugh.com
   | alopez@lopezmchugh.com
 8 | ngraham@lopezmchugh.com
 9 | Attorneys for Plaintiffs
10 |
```

FILED BY FAX
2017 MAR 20 A 10: 20
CLERK OF THE COURT
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
L. QUACH-MARCELLANA

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**FOR THE COUNTY OF SANTA CLARA**

| | |
|---|---|
| DARA BERMAN-CHEUNG, an Individual; SAM BERMAN CHEUNG, a Minor, by and through his Guardian ad Litem, DARA BERMAN-CHEUNG; and BAILEY BERMAN CHUNG, a Minor, by and through her Guardian ad Litem, DARA BERMAN-CHEUNG, <br><br> Plaintiffs, <br><br> vs. <br><br> COOK GROUP, INC.; an Indiana corporation; COOK MEDICAL INCORPORATED a/k/a COOK MEDICAL, INC., an Indiana corporation; COOK MEDICAL, LLC, an Indiana corporation; WILLIAM COOK EUROPE APS; MATTHEW MELL, M.D., an individual; STANFORD HEALTH CARE, a California corporation; and DOES 1 through 50, Inclusive, <br><br> Defendants. | Case No.: 17CV307373 <br><br> **AMENDED COMPLAINT FOR DAMAGES** <br> 1. STRICT PRODUCTS LIABILITY – FAILURE TO WARN <br> 2. STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT <br> 3. NEGLIGENCE <br> 4. NEGLIGENT MISREPRESENTATION <br> 5. FRAUDULENT MISREPRESENTATION <br> 6. FRAUDULENT CONCEALMENT <br> 7. BREACH OF EXPRESS WARRANTY <br> 8. MEDICAL NEGLIGENCE <br> 9. SURVIVAL ACTION <br> 10. WRONGFUL DEATH <br><br> DEMAND FOR JURY TRIAL |

BY FAX

---

1

AMENDED COMPLAINT FOR DAMAGES

1      COME NOW, Plaintiffs, DARA BERMAN-CHEUNG, SAM BERMAN CHEUNG and

2 BAILEY BERMAN CHUNG, by and through their Guardian ad Litem, DARA BERMAN-CHEUNG

3 ("Plaintiffs"), by and through their attorneys, who complain and allege against Defendants, COOK

4 GROUP, INC., COOK MEDICAL INCORPORATED a/k/a COOK MEDICAL, INC., COOK

5 MEDICAL, LLC, WILLIAM COOK EUROPE APS and DOES 1 through 25 (hereinafter, collectively

6 referred to as "Cook" or "Cook Defendants"), MATTHEW MELL, M.D. ("Dr. Mell"), STANFORD

7 HEALTH CARE ("Stanford") and DOES 26 through 50 (hereinafter, collectively referred to as

8 "Medical Defendants"), on information and belief, as follows:

9                                      **PARTIES**

10      1.     Plaintiff DARA BERMAN-CHEUNG is the surviving spouse of RICHARD CHEUNG

11 ("Decedent") and at all times relevant to this action was and is a citizen and resident of the State of

12 Ohio.

13      2.     Plaintiff SAM BERMAN CHEUNG is a minor and natural child of RICHARD

14 CHEUNG and at all times relevant to this action was and is a citizen and resident of the State of Ohio.

15      3.     Plaintiff BAILEY BERMAN CHEUNG is a minor and natural child of RICHARD

16 CHEUNG and at all times relevant to this action was and is a citizen and resident of the State of Ohio.

17      4.     Decedent RICHARD CHEUNG, at all times relevant to this action was a citizen and

18 resident of the State of Ohio. Mr. Cheung underwent placement of Cook Defendants' Gunther Tulip®

19 Vena Cava Filter on or about December 4, 2015 at Stanford Hospital in Redwood City, California.

20 Defendant MATTHEW MELL, M.D. is a vascular surgeon and was responsible for placing the device in

21 Decedent. The filter subsequently malfunctioned due to severe tilting, which impaired its effectiveness

22 in catching blood clots and preventing pulmonary embolism. This tilt-related malfunction and others

23 allowed clots to pass the filter that otherwise would have been caught had the filter been in a proper

24 centered position. As a direct and proximate result of these malfunctions, RICHARD CHEUNG

25 suffered fatal injuries from pulmonary embolism, damages, and untimely death on or about December

26 20, 2015.

27

28

---

                 — 2
**AMENDED COMPLAINT FOR DAMAGES**

5. Defendant COOK GROUP, INC. is an Indiana corporation with a principal place of business located at 750 Daniels Way, Bloomington, Indiana 47404. Defendant Cook Group, Inc. regularly conducts business in the State of California and is authorized to do so.

6. Defendant COOK MEDICAL INCORPORATED a/k/a COOK MEDICAL, INC. is an Indiana corporation with a principal place of business located at 750 Daniels Way, Bloomington, Indiana 47404. Defendant Cook Medical Incorporated a/k/a Cook Medical, Inc. regularly conducts business in the State of California and is authorized to do so.

7. Defendant COOK MEDICAL, LLC is an Indiana corporation with a principal place of business located at 750 Daniels Way, P.O. Box 1608, Bloomington, Indiana 47402. Defendant Cook Medical, LLC regularly conducts business in the State of California, and is authorized to do so.

8. Defendant WILLIAM COOK EUROPE APS is based in Bjaeverskov, Denmark and regularly conducts business in the State of California, and is authorized to do so.

9. The Cook Defendants may be served with process upon their registered agent for service: C/O CSC Lawyers Incorporating Service, 50 West Broad Street, Suite 1800, Columbus, Ohio 43215.

10. At all relevant times to this action, Cook Defendants include and included any and all parent companies, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

11. At all relevant times to this action, as further detailed herein, the Cook Defendants, and each of them, were engaged in the business of researching, developing, testing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, packaging, processing, labeling, marketing, promoting, distributing, selling and/or introducing into interstate commerce and into the State of California, either directly or indirectly through third parties or related entities, the Gunther Tulip inferior vena cava ("IVC") filters, to be implanted in patients throughout the United States, including California, and including the filter implanted in RICHARD CHEUNG, and derived substantial income from doing business in California.

12. Defendants MATTHEW MELL, M.D. and DOES 26 through 40, were and are physicians and surgeons duly licensed to practice medicine in the State of California, with offices located within the

Exhibit B
Page 108

1  County of Santa Clara, State of California, and each of them has held him or herself out to the public,

2  including RICHARD CHEUNG, to possess that degree of skill, ability, and learning common to

3  practitioners in said community.

4        13.    STANFORD HEALTH CARE is a California corporation with a principal place of

5  business located at 300 Pasteur Dr., Stanford, California, County of Santa Clara.  Defendants

6  STANFORD HEALTH CARE and DOES 41 through 50, are and were at all times herein mentioned

7  corporations duly organized and existing under and by virtue of the laws of the State of California

8  and/or authorized to do business and doing business in the County of Santa Clara, State of California.

9        14.    At all relevant times to this action, each of the Medical Defendants was the agent and

10  employee of each of the remaining Medical Defendants and was at all times herein mentioned acting

11  within the scope of said agency and employment.

12        15.    In or around December 2015, Medical Defendants, and each of them, undertook the care,

13  treatment and examinations of Decedent, RICHARD CHEUNG.

14              **JURISDICTION AND VENUE**

15        16.    This Court has jurisdiction under the California Constitution, Article VI, Section 10 and

16  *Code of Civil Procedure* § 410.10.  Plaintiffs' damages exceed the jurisdictional minimum of this Court.

17        17.    Venue is proper in this Court pursuant to *Code of Civil Procedure* §§ 395 and 395.5

18  because the principal places of business for Defendant Stanford is situated in Santa Clara County.

19  Further, a substantial amount of the defendants' conduct took place in Santa Clara County.

20              **FACTUAL ALLEGATIONS**

21        18.    Plaintiffs bring this action for damages stemming from the wrongful death of their

22  decedent, RICHARD CHEUNG, as a direct and proximate result of Decedent being implanted with a

23  Cook Gunther Tulip IVC filter by MATTHEW MELL, M.D. at Stanford Hospital in Redwood City,

24  California, on or about December 4, 2015.

25        19.    The Cook Defendants designed, researched, developed, manufactured, tested, marketed,

26  advertised, promoted, distributed, and sell products such as IVC filters that are sold to and marketed to

27  prevent, among other things, recurrent pulmonary embolism via placement in the vena cava.  One such

28

**AMENDED COMPLAINT FOR DAMAGES**

1  product of the Cook Defendants' – the Gunther Tulip Filter – is introduced into the vena cava via a

2  coaxial introducer sheath system.

3      20.    Cook Defendants sought Food and Drug Administration ("FDA") approval to market the

4  Gunther Tulip IVC filter device and/or its components under Section 510(k) of the Medical Device

5  Amendment.

6      21.    Section 510(k) permits the marketing of medical devices if the device is substantially

7  equivalent to other legally marketed predicate devices without formal review for the safety or efficacy of

8  the device.  The FDA explained the difference between the 510(k) process and the more rigorous

9  "premarket approval" ("PMA") process in its amicus brief filed with the Third Circuit in *Horn v.*

10 *Thoratec Corp.*, which the court quoted from:

> A manufacturer can obtain an FDA finding of 'substantial equivalence' by submitting a
> premarket notification to the agency in accordance with section 510(k) of the [Food Drug
> and Cosmetic Act].  21 U.S.C. § 360(k).  A device found to be 'substantially equivalent'
> to a predicate device is said to be 'cleared' by FDA (as opposed to 'approved' by the
> agency under a PMA).

15 376 F.3d 163, 167 (3d Cir. 2004) (emphasis in original).  A pre-market notification submitted under

16 510(k) is thus entirely different from the PMA process, which requires data sufficient to demonstrate

17 that the medical device at issue is safe and effective.

18     22.    In *Medtronic, Inc. v. Lohr*, the U.S. Supreme Court similarly described the 510(k)

19 process, observing:

> If the FDA concludes on the basis of the [manufacturer's] § 510(k) notification that the
> device is "substantially equivalent" to a pre-existing device, it can be marketed without
> further regulatory analysis. . . .  The § 510(k) notification process is by no means
> comparable to the PMA process; in contrast to the 1,200 hours necessary to complete a
> PMA review, the § 510(k) review is completed in average of 20 hours. . . .  As one
> commentator noted: "The attraction of substantial equivalence to manufacturers is clear.
> Section 510(k) notification requires little information, rarely elicits a negative response
> from the FDA, and gets processed quickly."

25 518 U.S. 470, 478-79 (1996) (quoting Adler, The 1976 Medical Device Amendments: A Step in the

26 Right Direction Needs Another Step in the Right Direction, 43 Food Drug Cosm. L.J. 511, 516 (1988)).

27     23.    Pursuant to *Wyeth v. Levine*, 555 U.S. 555 (2009), once a product is cleared "the

28 manufacturer remains under an obligation to investigate and report any adverse events associated with

---

5

**AMENDED COMPLAINT FOR DAMAGES**

1    the drug . . . and must periodically submit any new information that may affect the FDA's previous

2    conclusions about the safety, effectiveness, or labeling . . . ." This obligation extends to post-market

3    monitoring of adverse events/complaints.

4         24.    The inferior vena cava is a vein that returns blood to the heart from the lower portions of

5    the body.  In certain people, for various reasons, blood clots travel from the vessels in the legs and

6    pelvis, through the vena cava and into the lungs.  These blood clots can develop in the deep leg veins, a

7    condition called "deep-vein thrombosis" or "DVT."  Once blood clots reach the lungs, they are

8    considered "pulmonary emboli" or "PE."  Pulmonary emboli present risks to human health.

9         25.    An IVC filter, like the Cook Gunther Tulip filter, is designed to prevent thromboembolic

10   events by filtering or preventing blood clots/thrombi from traveling to the heart and/or lungs.

11        26.    The Gunther Tulip IVC filter is a retrievable filter.

12        27.    The Gunther Tulip IVC filter has a top hook and four anchoring struts for fixation.  On

13   each strut, it has a "flower" formation that is shorter than the strut where a wire piece branches out on

14   each side of the strut forming an overall "flower" type formation on each strut.

15        28.    At all times relevant hereto, the Gunther Tulip was widely advertised and promoted by

16   the Cook Defendants as safe and effective treatment for prevention of recurrent pulmonary embolism via

17   placement in the vena cava.

18        29.    At all times relevant hereto, Cook Defendants knew its filters were defective and knew

19   that defect was attributable to the design's failure to withstand the normal anatomical and physiological

20   loading cycles exerted *in vivo*.

21        30.    On or about December 4, 2015, RICHARD CHEUNG was implanted with a Cook

22   Gunther Tulip filter at Stanford Hospital, in Redwood City, California.  The Gunther Tulip placed in Mr.

23   Cheung was a retrievable filter.  Dr. Mell was the physician responsible for the implantation and

24   placement of Mr. Cheung's IVC filter.  The filter was severely tiled which impaired its effectiveness in

25   catching blood clots and preventing pulmonary embolism.

26        31.    On or about December 20, 2015, RICHARD CHEUNG suffered injuries and died

27   unexpectedly from a massive hyperacute pulmonary thromboembolic event with numerous multifocal

28

1    clots seen in both pulmonary arteries, extending to the pulmonary trunk and right ventricle, as a direct

2    and proximate result of the Cook Gunther Tulip filter device, which was implanted by Dr. Mell.

3          32.    The Cook Defendants represented that the design of the Gunther Tulip filter allows

4    accurate, predictable placement, and that its site struts help reduce the risk of tilting and migration, while

5    in reality the filters regularly tilt, migrate, and become embedded in the vena cava wall. The anchoring

6    mechanism of Cook Defendants' IVC filters, thus, is also insufficient to prevent tilting and migrations

7    post-placement.

8          33.    The configuration of the Gunther Tulip filters renders them prothrombotic. This means

9    that the filters actually leads to the formation of thromboembolism and PE – the exact condition these

10    devices are meant to prevent.

11          34.    A medical device manufacturer must, at a minimum, undertake research and testing to

12    understand the anatomy of where a device will be implanted and understand the forces the device may

13    be exposed to once in a human body. This design input must then be used to determine the minimum

14    safety requirements or attributes the device must have to meet user needs. In the case of an IVC filter,

15    user needs include a device that will capture blood clots of sufficient size to cause harmful consequences

16    and that will not fracture, migrate, tilt, perforate the vena cava, or be prothrombotic. Cook Defendants

17    failed to undertake any such efforts in these regards.

18          35.    Prior to bringing a product to market, a medical device manufacturer must also conduct

19    sufficient testing under real world or simulated use conditions to ensure that the device will meet user

20    needs even when exposed to reasonably foreseeable worst-case conditions. The Cook Defendants failed

21    to adequately establish and maintain such policies, procedures or protocols with respect to the Cook

22    Gunther Tulip IVC filters.

23          36.    Once placed on the market, Cook Defendants' post-market surveillance system revealed,

24    or should have revealed, to the Cook Defendants that the Gunther Tulip filters were unreasonably

25    dangerous and substantially more prone to fail or malfunction, and cause great bodily harm and/or death

26    to patients compared to other available treatment options.

27

28

---

-7

**AMENDED COMPLAINT FOR DAMAGES**

37.     The Cook Defendants failed to disclose to physicians and patients, including Decedent, that its Gunther Tulip IVC filter was subject to tilt, or the appropriate degree of risk and lack of efficacy a tilted Gunther Tulip filter exposed and provided to patients.

38.     At all times relevant hereto, the Cook Defendants continued to promote the Gunther Tulip filter as safe and effective even though the clinical trials that had been performed were not adequate to support long or short term efficacy.

39.     The Cook Defendants concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the Gunther Tulip IVC filter.

40.     The failure of the Gunther Tulip is attributable, in part, to the fact that the Cook filter suffers from a design defect causing it to be unable to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

41.     At all times relevant hereto the Cook Defendants failed to provide sufficient warnings and instructions that would have put the Decedent and the general public on notice of the dangers and adverse effects caused by implantation of the Gunther Tulip IVC filter, including, but not limited to the design's failure to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

42.     The Cook Gunther Tulip Filter was designed, manufactured, distributed, sold and/or supplied by the Cook Defendants, and was marketed while defective due to the inadequate warnings, instructions, labeling, and/or inadequate testing in light of Cook Defendants' knowledge of the products failure and serious adverse events.

43.     At all times relevant hereto, the officers and/or directors of the Cook Defendants named herein participated in, authorized and/or directed the production and promotion of the aforementioned products when they knew or should have known of the hazardous and dangerous propensities of the said products, and thereby actively participated in the tortuous conduct that resulted in the injuries suffered by the Decedent, RICHARD CHEUNG, as well as his untimely death on December 20, 2015.

44.     On December 15, 2016, Plaintiffs, pursuant to *Code of Civil Procedure* § 364, sent letters of intent to MATTHEW MELL, M.D. and STANFORD HEALTH CARE.  As such, this Complaint is filed within the requirements set forth in *Code of Civil Procedure* § 340.5.

**AMENDED COMPLAINT FOR DAMAGES**

## FIRST CAUSE OF ACTION

## STRICT PRODUCTS LIABILITY – INADEQUATE WARNING

### (As to Cook Defendants)

45.     Plaintiffs incorporate by reference all prior allegations.

46.     At all relevant times, as set forth, *supra*, Cook Defendants, and each of them, engaged in the business of researching, developing, testing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, packaging, processing, labeling, marketing, promoting, distributing, selling and/or introducing into interstate commerce the Gunther Tulip IVC filters, and, through that conduct, have knowingly and intentionally placed Gunther Tulip IVC filters into the stream of commerce with full knowledge that they reach consumers such as Decedent who would become implanted with one.

47.     Cook Defendants did, in fact, research, develop, test, design, set specifications for, license, manufacture, prepare, compound, assemble, package, process, label, market, promote, distribute and/or sell their Gunther Tulip IVC filters to Decedent, his prescribing health care professionals, and the consuming public. Additionally, Cook Defendants expected that the Gunther Tulip IVC filters they were researching, developing, testing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, packaging, processing, labeling, marketing, promoting, distributing, and/or selling to reach, and did, in fact, reach, prescribing health care professionals and consumers, including Decedent and his prescribing health care professionals, without any substantial change in the condition of the product from when it was initially distributed by Cook Defendants.

48.     The Gunther Tulip IVC filters had potential risks and side effects that were known or knowable to the Cook Defendants by the use of scientific inquiry and information available before, at, and after the design, manufacture, labeling, marketing, distribution, and sale of the Gunther Tulip IVC filters.

49.     Cook Defendants knew or should have known of the defective condition, characteristics, and risks associated with Gunther Tulip IVC filters prior to, on, and after the date Decedent RICHARD CHEUNG was implanted with a Gunther Tulip IVC filter. These defective conditions included, but were not limited to: (1) Gunther Tulip IVC filters posed a significant and higher risk of failure than other

Exhibit B
Page 114

1   similar IVC filters (fracture, migration, tilting, and perforation of the vena cava wall); (2) Gunther Tulip

2   IVC filter failures result in serious injuries and death; (3) certain conditions or post-implant procedures,

3   such as morbid obesity or open abdominal procedures, could affect the safety and integrity of Gunther

4   Tulip IVC filters; (4) leaving Gunther Tulip IVC filters in for a period longer than necessary to prevent

5   immediate risk of pulmonary embolism increases the risk for patients of failures and complications with

6   the filter, such as the filter becoming deeply embedded in the vena cava, making them difficult or

7   impossible for removal.

8        50.    The Cook Defendants placed into the stream of commerce for ultimate use by users like

9   Decedent and his health care providers, Gunther Tulip IVC filters that were in an unreasonably

10   dangerous and defective condition due to warnings and instructions for use that were inadequate,

11   including, but not limited to Cook Defendants' failure to:

       a.  Provide adequate instructions on how to place the filter, including the importance of
12
          avoiding tilt during placement;
13

14          b.  Provide adequate instructions for how long in patients the filter should remain;

15          c.  Highlight the importance of removing the filter;

16          d.  Warn of the known risk of great bodily harm or death if the filter was not removed;

       e.  Highlight the known risk of great bodily harm or death in the event of occlusion of the
17
          vein caused by the filter itself;
18

19          f.  Warn of the risk of new DVT if the filter was left in too long;

20          g.  Warn of the risk of new pulmonary embolism, thrombosis, swelling, and pain in the

21             lower extremities if the filter was left in too long; and

22          h.  Warn of the risk of filter tilt and associated risks;

23          i.  Warn of the risk of filter perforation, fracture, or migration.

24        51.    Gunther Tulip IVC filters were in a defective and unsafe condition that was unreasonably

25   and substantially dangerous to any user or consumer implanted with Gunther Tulip IVC filters, such as

26   Decedent, when used in an intended or reasonably foreseeable way.

27        52.    The warnings and directions the Cook Defendants provided with their Gunther Tulip IVC

28   filters failed to adequately warn of the potential risks and side effects of the Gunther Tulip IVC filters.

---

**AMENDED COMPLAINT FOR DAMAGES**

Case 1:14-ml-02570-RLY-TAB Document 6038-12 Filed 09/30/17 Page 120 of 202 PageID #:
23465
Case 5:17-cv-02564-NC Document 1-12 Filed 05/04/17 Page 69 of 143 PageID #:

53.     These risks were known or were reasonably scientifically knowable to Cook Defendants, but not known or recognizable to ordinary consumers, such as Decedent or his treating doctors.

54.     Cook Defendants' IVC filters were expected to and did reach Decedent without substantial change in their condition, labeling, or warnings as manufactured, distributed, and sold by Cook Defendants.

55.     Additionally, Decedent and his physician used Gunther Tulip IVC filters in the manner in which they were intended to be used, making such use reasonably foreseeable to the Cook Defendants.

56.     Had Decedent and his implanting physician known of the aforementioned risks and dangers associated with Gunther Tulip IVC filters, as well as the lack of efficacy, and had Cook Defendants provided adequate warnings and information to Decedent and his physicians regarding same, Decedent and his implanting physician would not have used Cook Defendants' Gunther Tulip filters.

57.     As a direct and proximate result of the Cook Defendants' information defects, lack of sufficient instructions or warnings prior to, on, and after the date Decedent RICHARD CHEUNG was implanted with a Gunther Tulip IVC filter, Plaintiffs and Decedent suffered Injuries and Damages, and/or Death.

## SECOND CAUSE OF ACTION

## STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT

### (As to Cook Defendants)

58.     Plaintiffs incorporate by reference all prior allegations.

59.     Prior to, on, and after the date the Gunther Tulip IVC filter was implanted in Decedent, Cook Defendants, and each of them, researched, developed, tested, designed, set specifications for, licensed, manufactured, prepared, compounded, assembled, packaged, processed, labeled, marketed, promoted, distributed, and/or sold the Gunther Tulip IVC filters for use in the United States, including California, and the Gunther Tulip IVC filter implanted in Decedent.

60.     At all relevant times, Cook Defendants designed, distributed, manufactured, marketed, and sold Gunther Tulip IVC filters that were unreasonably dangerous, unsafe, and defective in manufacture when they left Cook Defendants' possession.

Exhibit B
Page 116

Case 1:14-ml-02570-RLY-TAB Document 6038-12 Filed 09/30/17 Page 121 of 202 PageID #:
Case 5:17-cv-02564-NC Document 1-2 Filed 05/04/17 Page 64 of 243 PageID #:
23466

61.     Based on information and belief, Gunther Tulip IVC filters, including that implanted in Decedent, contained manufacturing defects in that they differed from Cook Defendants' design or specifications, or from other typical units of the same product line.

62.     Based on information and belief, the manufacturing process employed by Cook Defendants for their Gunther Tulip IVC filters, including that implanted in Decedent, resulted in surface damage to the wire and weakening of the structural integrity of Cook Defendants' IVC filters, thus increasing the risk of tilt, cracks, fracture, breakage, perforation and migration.

63.     Based on information and belief, the Cook Defendants maintained design and manufacturing specifications that Gunther Tulip IVC filters were required to have the appropriate metal content, strength, size, durability, appearance, resistance levels, and number of inclusions, and should not be distributed if they exhibited a certain degree of surface damage.  The manufacturing process was intended to catch and identify any end-product filters that did not meet specifications and not distribute said filters.

64.     The degrees of surface damage present in Decedent's Gunther Tulip IVC filter was above the acceptable level as set by the Cook Defendants' design and manufacturing specifications.

65.     Based on information and belief, Cook Defendants manufactured the conichrome used in the Gunther Tulip IVC filter implanted in Decedent, such that it failed to meet specifications as to the appropriate appearance (e.g., degree of surface blemishes), metal content, strength, and number of inclusions, which substantially increased the risk of, *inter alia*, fatigue failure, perforation, tilt, fracture, and migration in said device.

66.     As a direct and proximate cause of Cook Defendants' defective manufacture of the Gunther Tulip IVC filter implanted in Decedent RICHARD CHEUNG, Plaintiffs and Decedent suffered Injuries and Damages, and/or Death.

/ / /

/ / /

/ / /

---

- - 12
**AMENDED COMPLAINT FOR DAMAGES**

**THIRD CAUSE OF ACTION**

**NEGLIGENCE**

**(As to Cook Defendants)**

67.    Plaintiffs incorporate by reference all prior allegations.

68.    At the time of the design, distribution, manufacture, advertising, sale, and marketing of Gunther Tulip IVC filters and its implantation in Decedent, the Cook Defendants were aware that the Gunther Tulip IVC filters were designed and manufactured in a manner presenting:

    a.  An unreasonable risk of fracture of portions of the filters;

    b.  An unreasonable risk of migration of the filters and/or portions of the filters;

    c.  An unreasonable risk of filters tilting and/or perforating the vena cava wall; and

    d.  Insufficient strength or structural integrity to withstand normal placement within the human body.

69.    At the time of the design, distribution, manufacture, advertising, sale, and marketing of the Gunther Tulip IVC filters, and its implantation in Decedent, Cook Defendants were also aware that Gunther Tulip IVC filters:

    a.  Would be used without inspection for defects;

    b.  Would be used by patients with special medical conditions such as Decedent;

    c.  Had previously caused serious bodily injury to its users with special medical conditions such as Decedent;

    d.  Had no established efficacy;

    e.  Were less safe and effective than the predicate IVC filters already available on market;

    f.  Would be implanted in patients where the risk outweighed any benefit or utility of the filters;

    g.  Contained instructions for use and warnings that were inadequate;

    h.  Were prothrombotic; and

    i.  Were prone to severe tilting.

70.    At the time of manufacture and sale of the Gunther Tulip filters, including the one implanted in Decedent, Cook Defendants knew or should have known that using the Gunther Tulip IVC

---

13

**AMENDED COMPLAINT FOR DAMAGES**

1  filters as intended or in a reasonably foreseeable manner created a significant risk of patients suffering

2  severe health side effects including, but not limited to: hemorrhage; cardiac/pericardial tamponade;

3  cardiac arrhythmia and other symptoms similar to myocardial infarction; perforations of tissue, vessels

4  and organs; chronic deep vein thrombosis; pulmonary embolism; thrombosis; compartment syndrome;

5  and other severe personal injuries and diseases, which are permanent in nature, including, but not limited

6  to, death, physical pain and mental anguish, scarring and disfigurement, diminished enjoyment of life,

7  continued medical care and treatment due to chronic injuries/illness proximately caused by the device;

8  and the continued risk of requiring additional medical and surgical procedures including general

9  anesthesia, with attendant risk of life threatening complications.

10      71.    Cook Defendants had a duty to exercise due care and avoid unreasonable risk of harm to

11  others in the design of the Gunther Tulip IVC filters.

12      72.    Cook Defendants breached these duties by, among other things:

13      a.   Designing and distributing a product in which it knew or should have known that the

14      likelihood and severity of potential harm from the product exceeded the burden of taking

15      safety measures to reduce or avoid harm;

16      b.   Designing and distributing a product which it knew or should have known that the

17      likelihood and severity of potential harm from the product exceeded the likelihood of

18      potential harm from other IVC filters available for the same purpose;

19      c.   Failing to perform reasonable pre- and post-market testing of Gunther Tulip IVC filters to

20      determine whether or not the products were safe for their intended use;

21      d.   Failing to use reasonable and prudent care in the design, research, manufacture, and

22      development of Gunther Tulip IVC filters so as to avoid the risk of serious harm

23      associated with the use of such filters;

24      e.   Advertising, marketing, promoting, and selling Gunther Tulip IVC filters for uses other

25      than as approved and indicated in the products' labels;

26      f.   Failing to use reasonable care to warn or instruct, including pre and post-sale, Decedent,

27      his prescribing physicians, or the general health care community about the Gunther Tulip

28

1  filters' substantially dangerous condition or about facts making the products likely to be

2  dangerous;

3  g. Advertising, marketing and recommending the use of the Gunther Tulip filters, while

4   concealing and failing to disclose or warn of the dangers known by Cook Defendants to

5   be connected with and inherent in the use of these filter systems;

6  h. Representing that the Gunther Tulip filters were safe for their intended use when, in fact,

7   Cook Defendants knew and should have known the products were not safe for their

8   intended uses;

9  i. Continuing to manufacture and sell the Gunther Tulip filters with the knowledge that said

10   products were dangerous and not reasonably safe, and failing to comply with good

11   manufacturing regulations;

12  j. Failing to establish an adequate quality assurance program used in the manufacturing of

13   Gunther Tulip IVC filters; and

14  k. Failing to perform adequate evaluation and testing of Gunther Tulip IVC filters when

15   such evaluation and testing would have revealed the propensity of Gunther Tulip IVC

16   filters to cause injuries similar to those that Decedent suffered.

17  73. At all relevant times, Cook Defendants had a duty to exercise due care in the

18 manufacturing of the Gunther Tulip IVC filters.

19  74. Cook Defendants breached this duty by, among other things:

20  a. Failing to adopt manufacturing processes that would reduce the foreseeable risk of

21   product failure;

22  b. Failing to use reasonable care in manufacturing the product and by producing a product

23   that differed from their design or specifications or from other typical units from the same

24   production line;

25  c. Failing to use reasonable and prudent care in the design, research, manufacture, and

26   development of Gunther Tulip IVC filters and their manufacturing process so as to avoid

27   the risk of serious harm associated with the use of said filters; and

28

---

15

**AMENDED COMPLAINT FOR DAMAGES**

d.   Failing to establish an adequate quality assurance program used in the manufacturing of their IVC filters.

75.   At this time, all Gunther Tulip IVC filters are misbranded and adulterated by virtue of them failing to be the substantial equivalent of predicate IVC filter devices, making them subject to corrective action, including recall, in the interest of patient safety.

76.   Prior to, on, and after the date of Decedent's implantation with a Gunther Tulip IVC filter, and at all relevant times, Cook Defendants knew or reasonably should have known that Gunther Tulip IVC filters and their warnings were defective and dangerous or were likely to be dangerous when used in a reasonably foreseeable manner.

77.   Prior to, on, and after the date of Decedent's implantation with a Gunther Tulip IVC filter and at all relevant times thereafter, Cook Defendants became aware that the defects of Gunther Tulip IVC filters resulted in Gunther Tulip IVC filters causing injuries similar to those Decedent suffered.

78.   Reasonable manufacturers and distributors under the same or similar circumstances would have recalled or retrofitted Gunther Tulip IVC filters, and would thereby have avoided and prevented harm to many patients, including Decedent.

79.   In light of this information and Cook Defendants' knowledge described above, Cook Defendants had a duty to recall and/or retrofit Gunther Tulip IVC filters.

80.   The Cook Defendants breached its duty to recall and/or retrofit Gunther Tulip IVC filters.

81.   At all relevant times, Cook Defendants knew or should have known that Gunther Tulip IVC filters were defective and dangerous or were likely to be dangerous when used in a reasonably foreseeable manner.

82.   Such danger included the propensity of Gunther Tulip IVC filters to cause injuries similar to those suffered by Decedent.

83.   At all relevant times, Cook Defendants also knew or reasonably should have known that the users of Gunther Tulip IVC filters, including Decedent and his health care providers, would not realize or discover on their own the dangers presented by Gunther Tulip IVC filters.

84.   Reasonable manufacturers and reasonable distributors, under the same or similar circumstances as those of Cook Defendants prior to, on, and after the date of Decedent's use of a

---

16

**AMENDED COMPLAINT FOR DAMAGES**

1  Gunther Tulip IVC filter, would have warned of the dangers presented by Gunther Tulip IVC filters, or

2  instructed on the safe use of Gunther Tulip IVC filters.

3       85.    Prior to, on, and after the date of Decedent's use of the IVC filter, Cook Defendants had a

4  duty to adequately warn of the dangers presented by Gunther Tulip IVC filters and/or instruct on the

5  safe use of Gunther Tulip IVC filters.

6       86.    The Cook Defendants breached these duties by failing to provide adequate warnings to

7  Decedent RICHARD CHEUNG, communicating the information and dangers described above and/or

8  providing instruction for safe use of Gunther Tulip IVC filters.

9       87.    As a direct and proximate result of Cook Defendants' negligent conduct described herein,

10  Plaintiffs and Decedents suffered Injuries and Damages, and/or Death.

11  **FOURTH CAUSE OF ACTION**

12  **NEGLIGENT MISREPRESENTATION**

13  **(As to Cook Defendants)**

14       88.    Plaintiffs incorporate by reference all prior allegations.

15       89.    Prior to, on, and after the dates the Gunther Tulip IVC filter was implanted in Decedent,

16  Cook Defendants, and each of them, researched, developed, tested, designed, set specifications for,

17  licensed, manufactured, prepared, compounded, assembled, packaged, processed, labeled, marketed,

18  promoted, distributed, and/or sold the Gunther Tulip IVC filters for use in the United States, including

19  California, and the Gunther Tulip IVC filter implanted in Decedent.

20       90.    Prior to, on, and after the dates Cook Defendants, and each of them, distributed the

21  Gunther Tulip IVC filter to Decedent through his health care providers, the Cook Defendants

22  negligently and carelessly represented to Decedent, his treating physicians, the medical community, the

23  FDA, and the general public that certain material facts were true when they were, in fact, false. The

24  misrepresentations include, *inter alia*, the following:

25      a.  That the Gunther Tulip IVC filters were safe, fit, and effective for use to prevent PEs.

26      b.  That the Gunther Tulip IVC filters were not prothrombotic.

27

28

17
**AMENDED COMPLAINT FOR DAMAGES**

    c.   That the design of the Gunther Tulip IVC filters was better than competitor designs and eliminated the risk that pieces of the device could perforate the vena cava, that the devices could tilt, or that fractures could occur and migrate throughout the body.

    d.   That the Gunther Tulip IVC filters were as safe and as effective as the predicate devices set forth in their 510(k) applications to the FDA, which, by law, they were required to be.

    e.   That the Gunther Tulip IVC filters were safer and more effective than other available IVC filters.

    f.   That the Gunther Tulip IVC filters post-market were not found to have any increased risks of device failures or complications, such as tilt, perforation, fracture, migration, retrieval difficulties and/or death.

91.   All of the aforementioned information and representations emanated from the same source, Cook Defendants, and was vetted by their copy review department (or equivalent) to ensure uniformity and harmony of the marketing message. The manner by which such information and representations were distributed, made available, or otherwise provided by Cook Defendants to Decedent and his health care providers was the same and include, but are not limited to, the following: reports, press releases, advertising campaigns, product information, instructions for use and other labeling materials provided with the Gunther Tulip IVC filters, print advertisements, commercial media containing material representations, as well as through their officers, directors, agents and representatives, including the Cook sales representatives that met with and detailed Decedent's prescribing and implanting physicians on the Gunther Tulip IVC filters, the 510(k) applications by Cook Defendants to the FDA for the Gunther Tulip filters, patient brochures, training seminars hosted by said Defendants, CME materials created and distributed by Cook Defendants, information supplied at professional conferences at booths hosted or manned by Cook Defendants or their Key Opinion Leaders, as well as the websites of Cook Defendants that provided information on the Gunther Tulip IVC filter, including product description, indications for use, instructions for use, and ordering information.

92.   Decedent's prescribing and implanting physicians reviewed and relied on these materials, including, specifically, the product information, instructions for use, indications for use, and labeling materials provided with these devices, in performing a risk/benefit analysis in deciding to prescribe or

Exhibit B
Page 123

1    recommend use of a Gunther Tulip IVC filter in Decedent, and determining what risk information to

2    inform and discuss with Decedent, as part of the informed consent process.

3         93.    Prior to, on, and after the date Decedents and his physicians purchased and used the

4    device, said representations were untrue at the times they were made, and there was no reasonable

5    ground for Cook Defendants to believe said representations were true when said Defendants made said

6    representations.

7         94.    Prior to, on, and after the date Decedent and his physicians purchased and used the

8    device, Cook Defendants intended that Decedent, his physicians, and the general public would rely on

9    said representations and prescribe the Gunther Tulip IVC filters, which did in fact occur.

10        95.    The Cook Defendants knew or should have known prior to introduction on the market

11   and at the time of submitting the 510(k) applications that these representations were untrue, from their

12   own internal testing, analysis and investigation throughout the design and manufacturing process.

13   Moreover, post-market performance promptly revealed poor outcomes in patients who were suffering

14   failures and adverse events at an increased rate compared to other IVC filters.  This triggered the

15   obligation for further investigation and analysis of the safety and efficacy of the Gunther Tulip IVC

16   filters from the Cook Defendants, which further confirmed that the Gunther Tulip IVC filters were, in

17   fact, inferior in safety and efficacy and posed greater risks of harm and death than other IVC filters on

18   the market, including the predicate devices for the Gunther Tulip.

19        96.    It was known or should have been known by Cook Defendants, at all relevant times, that

20   the Gunther Tulip IVC filters, by way of their design, created and caused these devices to be

21   prothrombotic.  This information was revealed in the Cook Defendants' pre-market testing and analysis,

22   and has been reaffirmed throughout the post-market experience of these products, as reflected by the

23   increased number of these adverse event reports by physicians and published opinions in medical

24   literature.

25        97.    Cook Defendants owed a duty in all of their undertakings, including the dissemination of

26   information concerning its IVC filters, to exercise reasonable care to ensure that they did not in those

27   undertakings create unreasonable risks of personal injury to others.

28

---

19

**AMENDED COMPLAINT FOR DAMAGES**

Exhibit B
Page 124

Case 1:14-ml-02570-RLY-TAB-NC Document 6038-12 Filed 09/30/17 Page 129 of 202 PageID #:
23474
Case 5:17-cv-02564-NC Document 1-2 Filed 05/04/17 Page 122 of 143

98.     As set forth, *supra*, Cook Defendants disseminated to health care professionals and
consumers through published labels, labeling, marketing materials, and otherwise information
concerning the properties and effects of Gunther Tulip IVC filters with the intention that health care
professionals and consumers would rely upon that information in their decisions concerning whether to
prescribe and use Cook Defendants' IVC filters.

99.     The Cook Defendants, as medical device designers, manufacturers, sellers, promoters
and/or distributors, knew or should reasonably have known that health care professionals and
consumers, in weighing the potential benefits and potential risks of prescribing or using Gunther Tulip
IVC filters, would rely upon information disseminated and marketed by Cook Defendants to them
regarding the Gunther Tulip IVC filters.

100.    Cook Defendants failed to exercise reasonable care to ensure that the information they
disseminated to health care professionals and consumers concerning the properties and effects of
Gunther Tulip IVC filters was accurate, complete, and not misleading and, as a result, disseminated
information to health care professionals and consumers that was negligently and materially inaccurate,
misleading, false, and unreasonably dangerous to consumers such as Decedent.

101.    The Cook Defendants, as designers, manufacturers, sellers, promoters, and/or
distributors, also knew or reasonably should have known that patients receiving Gunther Tulip IVC
filters as recommended by health care professionals in reliance upon information disseminated by Cook
Defendants as the manufacturer/distributor of Defendants' IVC filters would be placed in peril of
developing the serious, life-threatening, and life-long injuries including, but not limited to, tilting,
migration, perforation, fracture, lack of efficacy, and increased risk of the development of blood clots, if
the information disseminated and relied upon was materially inaccurate, misleading, or otherwise false.

102.    The Cook Defendants had a duty to promptly correct material misstatements Cook
Defendants' knew others were relying upon in making healthcare decisions.  Cook Defendants
purposely chose not to, however, in order to maintain their market share and level of competition with
other IVC filter manufacturers.

103.     Cook Defendants failed in each of these duties by misrepresenting to Decedent

RICHARD CHEUNG, his implanting physician, and the medical community in general, the safety and

efficacy of Gunther Tulip IVC filters and failing to correct known misstatements and misrepresentations.

104.     As a direct and proximate result of Cook Defendants' negligent misrepresentations,

Plaintiffs and Decedents suffered Injuries and Damages, and/or Death.

## FIFTH CAUSE OF ACTION

## FRAUDULENT MISREPRESENTATION

### (As to Cook Defendants)

105.     Plaintiffs incorporate by reference all prior allegations.

106.     Prior to, on, and after the date the Cook Defendants, and each of them, distributed the

Gunther Tulip IVC filters to Decedent's health care providers, Cook Defendants intentionally

represented to Decedent, his treating physicians, the medical community, the FDA, and the general

public that certain material facts were true when they were, in fact, known by the Cook Defendants to be

false and inaccurate.  These misrepresentations involved the following topics:

     a.   The safety of the Gunther Tulip IVC filters;

     b.   The efficacy of the Gunther Tulip IVC filters;

     c.   The rate of failure of the Gunther Tulip IVC filters;

     d.   The adverse event reporting data of the Gunther Tulip IVC filters;

     e.   The pre-market testing of the Gunther Tulip IVC filters;

     f.   The approved uses of the Gunther Tulip IVC filters; and

     g.   The ability to retrieve the device at any time over a person's life.

107.     All of the aforementioned information and representations emanated from the same

source, Cook, and was vetted by its copy review department (or equivalent) to ensure uniformity and

harmony of the marketing message.  The manner by which such information and representations were

distributed, made available, or otherwise provided by Cook Defendants to Decedent and his health care

providers was the same and include, but are not limited to, the following: reports, press releases,

advertising campaigns, product information, instructions for use and other labeling materials provided

with the Gunther Tulip IVC filters, print advertisements, commercial media containing material

Exhibit B
Page 126

Case 1:14-ml-02570-RLY-TAB Document 6038-12 Filed 09/20/17 Page 131 of 202 PageID #:
Case 5:17-cv-02564-NC Document 1-2 Filed 05/04/17 Page 74 of 143 PageID
23476

1   representations, as well as through their officers, directors, agents and representatives, such as the Cook

2   sales representatives that met with and detailed Decedent's prescribing physicians on the Gunther Tulip

3   IVC filters, 510(k) applications to the FDA for the Gunther Tulip filters, patient brochures, training

4   seminars hosted by Cook Defendants, CME materials created and distributed by Cook Defendants,

5   information supplied at professional conferences at booths hosted or manned by Cook Defendants or

6   their Key Opinion Leaders, as well as the websites of Cook Defendants that provided information on the

7   Gunther Tulip IVC filter, including product description, indications for use, instructions for use, and

8   ordering information.

9        108.   These sources and materials contained false and misleading material representations,

10   which included:

11       a.   That the Gunther Tulip IVC filters were safe and fit when used for their intended purpose

12          or in a reasonably foreseeable manner;

13       b.   That the Gunther Tulip IVC filters did not pose dangerous health risks in excess of those

14          associated with the use of other similar IVC filters, including the predicate devices for the

15          Gunther Tulip filter;

16       c.   That the design of the Gunther Tulip IVC filters would eliminate the risks that pieces of

17          the device could perforate the vena cava or other organs, that the devices could tilt, or

18          that fractures could occur and migrate throughout the body;

19       d.   That the Gunther Tulip IVC filters were safer and more effective than other available

20          IVC filters;

21       e.   That any and all side effects from the Gunther Tulip IVC filters were accurately reflected

22          in the product information, instructions for use, warnings, and other labeling information

23          provided with the devices;

24       f.   That any and all types of adverse events associated with the Gunther Tulip IVC filters

25          was a class effect and essentially the same among all IVC filters;

26       g.   That the design of the Gunther Tulip IVC filters did not cause or promote blood clots,

27          clotting or occlusion of the IVC filter, or recurrent DVT and/or PE; and

28

Exhibit B
Page 127

h.   That the Gunther Tulip IVC filters were adequately tested pre-market and prior to submitting the 510(k) applications to the FDA for clearance to withstand normal placement within the human body.

109.   Cook Defendants made the foregoing misrepresentations knowing that they were false or without reasonable basis. As mentioned, *supra*, these materials included instructions for use and a warning document that was included in each package of the Gunther Tulip IVC filters distributed to Decedent's implanting physicians and implanted in Decedent.

110.   The Cook Defendants knew prior to introduction on the market and at the time of submitting the 510(k) applications that these representations were untrue, from their own internal testing, analysis and investigation throughout the design and manufacturing process. Moreover, post-market performance immediately confirmed poor outcomes in patients who were suffering failures and adverse events at an increased rate compared to other IVC filters. This triggered the obligation for further investigation and analysis of the safety and efficacy of the Gunther Tulip IVC filters from Cook Defendants, which further established that the Gunther Tulip IVC filters were, in fact, inferior in safety and efficacy and posed greater risks of harm and death than other IVC filters on the market, including the predicate devices for the Gunther Tulip.

111.   It was known by Cook Defendants, at all relevant times, that the Gunther Tulip IVC filters, by way of their design, created and caused these devices to be prothrombotic; blood clots, clotting and occlusion of the Gunther Tulip IVC filters were found to occur at a significantly increased rate compared to other IVC filters. This information was revealed in Cook Defendants' pre-market testing and analysis, and has been reaffirmed throughout the post-market experience of these products, as reflected by the increased number of these adverse event reports by physicians and published opinions in medical literature.

112.   The Cook Defendants' intent and purpose in making the aforementioned misrepresentations was to deceive and defraud the public and the medical community, including the FDA, and Decedent's health care providers; to gain the confidence of the public and the medical community, including Decedent's health care providers; to falsely assure the public and the medical community of the quality of the Gunther Tulip IVC filters and their fitness for use; and to induce the

Exhibit B
Page 128

1  public and the medical community, including Decedent's health care providers to request, recommend,

2  prescribe, implant, purchase, and continue to use the Gunther Tulip filters , all in reliance on said

3  Defendants' misrepresentations, for the ultimate purposes of maintaining a competitive level with other

4  IVC filter manufacturers, gaining market share, and profiting.

5      113.    The foregoing representations and omissions by Cook Defendants were, in fact, false.

6      114.    Cook Defendants acted to serve their own interests and consciously disregarded

7  information generated by or made available to said Defendants establishing the substantial risk that the

8  Gunther Tulip IVC filters could cause great bodily harm and/or death in patients.

9      115.    Decedent's prescribing and implanting physicians reviewed and relied on these

10  aforementioned material misrepresentations, including, specifically, the product information,

11  instructions for use, indications for use, and labeling materials provided with these devices, in

12  performing a risk/benefit analysis in deciding whether to prescribe or recommend use of a Gunther Tulip

13  IVC filter in Decedent, and determining what risk information to inform and discuss with Decedent, as

14  part of the informed consent process.

15      116.    Cook Defendants' IVC filters are not safe, fit, and effective for human use in their

16  intended and reasonably foreseeable manner.

17      117.    Further, the use of Gunther Tulip IVC filters is hazardous to the users' health, and the

18  Gunther Tulip IVC filters have a serious propensity to cause users to suffer serious injuries, including

19  without limitation the injuries Decedent suffered, as well as his death.

20      118.    Finally, Cook Defendants' IVC filters have a statistically significant higher rate of failure

21  and injury than do other comparable IVC filters.

22      119.    In reliance upon the false representations and omissions made by Cook Defendants,

23  Decedent and his health care providers were induced to, and did use the Gunther Tulip IVC filter,

24  thereby causing Decedent to sustain severe personal injuries and death, as described herein.

25      120.    Cook Defendants knew and had reason to know that Decedent, his health care providers,

26  and the general medical community did not have the ability to determine the true facts intentionally

27  concealed and misrepresented by said Defendants, and would not have prescribed and implanted

28

Case 1:14-ml-02570-RLY-TAB Document 6038-12 Filed 09/20/17 Page 134 of 202 PageID #:
23479
Case 5:17-cv-02564-NC Document 1-2 Filed 05/04/17 Page 134 of 243

1   Gunther Tulip IVC filters if the true facts regarding Gunther Tulip filters had not been concealed and

2   misrepresented by Cook Defendants.

3       121.    The Cook Defendants had sole access to material facts concerning the defective nature of

4   the Gunther Tulip filters, and their propensities to cause serious and dangerous side effects in the form

5   of dangerous injuries and damages to persons who were implanted with Gunther Tulip IVC filters.

6       122.    At the time Cook Defendants failed to disclose and intentionally misrepresented the

7   foregoing facts, and at the time Decedent was implanted with Gunther Tulip IVC filters, Decedent and

8   his health care providers were unaware of Cook Defendants' misrepresentations and omissions.

9       123.    The aforementioned concealed and misrepresented facts were critical to Decedent's

10  health care provider understanding the true risks and dangers inherent in Gunther Tulip IVC filters;

11  instead, Decedent's physicians reasonably relied upon the misrepresentations made by the Cook

12  Defendants in deciding to implant the Gunther Tulip IVC filter in Decedent.

13      124.    These fraudulent misrepresentations made by Cook Defendants to Decedent's health care

14  providers were a substantial contributing factor in their decision to recommend, use and implant the

15  Gunther Tulip IVC filters in Decedent RICHARD CHEUNG, and in causing Plaintiffs' and Decedents'

16  injuries and damages, and/or death.

17      125.    As a direct and proximate result of the Cook Defendants' fraudulent misrepresentations,

18  Plaintiffs and Decedents suffered Injuries and Damages, and/or Death.

19                          **SIXTH CAUSE OF ACTION**

20                          **FRAUDULENT CONCEALMENT**

21                          **(As to Cook Defendants)**

22      126.    Plaintiffs incorporate by reference all prior allegations.

23      127.    In designing, manufacturing, marketing, distributing and selling the Gunther Tulip IVC

24  filters, the Cook Defendants concealed material facts from Decedent and his healthcare providers.

25      128.    These concealed material facts include, but are not limited to:

26      a.  That the Gunther Tulip IVC filters were unsafe and not fit when used for their intended

27          purpose or in a reasonably foreseeable manner;

28

---

                                    25
                        **AMENDED COMPLAINT FOR DAMAGES**

   b.   That the Gunther Tulip IVC filters posed dangerous health risks in excess of those
        associated with the use of other similar IVC filters;

   c.   That there were additional side effects related to implantation and use of Gunther Tulip
        IVC filters that were not accurately and completely reflected in the warnings associated
        with Gunther Tulip IVC filters, including the fact that they are prothrombotic and that tilt
        could render them ineffective;

   d.   That the Gunther Tulip IVC filters were not adequately tested to withstand normal
        placement within the human body;

   e.   That Cook Defendants were aware prior to, on, and after the date the Gunther Tulip IVC
        filter was distributed and implanted in Decedent that electropolishing strengthened the
        structural integrity of the Gunther Tulip IVC filters, thereby reducing the risk of fracture.

129.   Decedent and his health care providers were not aware of these and other facts concealed
by Cook Defendants.

130.   Cook Defendants are and were under a continuing duty to disclose the true character,
quality and nature of the Gunther Tulip IVC filters that was implanted in Decedent, but, instead, they
concealed them, at all relevant times.  Cook Defendants' conduct, as described herein, arises to
purposeful conduct, which the Cook Defendants realized was dangerous, reckless and without regard to
the consequences or the rights and safety of Decedent.

131.   In concealing these and other facts, Cook Defendants intended to deceive Decedent and
his health care providers as to the true facts regarding the safety and efficacy of the Gunther Tulip IVC
filters.

132.   Decedent and his health care providers were ignorant of and could not reasonably
discover the facts Cook Defendants fraudulently concealed and reasonably and justifiably relied on
Cook Defendants' representations concerning the supposed safety and efficacy of Gunther Tulip IVC
filters.

133.   Decedent's prescribing and implanting physicians did, in fact, review and rely on the
product inserts provided by Cook Defendants with the Gunther Tulip IVC filters prior to prescribing one
for Decedent, for the purpose of making a risk/benefit assessment as to whether to prescribe or

Exhibit B
Page 131

1   recommend the Gunther Tulip filters, and determining what risk information to share and discuss with

2   Decedent.

3       134.    Decedent and his prescribing and implanting physicians reasonably and justifiably relied

4   on Cook Defendants' concealments and deception.

5       135.    Decedent's health care providers would not have prescribed, recommended, or otherwise

6   used the Gunther Tulip IVC filters to or with Decedent RICHARD CHEUNG, had Cook Defendants not

7   concealed the material information about the risks and efficacy, as set forth herein.

8       136.    As a direct and proximate result of Cook Defendants' fraudulent concealment of material

9   facts, Plaintiffs and Decedents suffered Injuries and Damages, and/or Death.

10                   **SEVENTH CAUSE OF ACTION**

11                   **BREACH OF EXPRESS WARRANTY**

12                     **(As to Cook Defendants)**

13       137.    Plaintiffs incorporate by reference all prior allegations.

14       138.    Decedent, through his medical providers, purchased a Gunther Tulip IVC filter from

15   Cook Defendants.

16       139.    At all relevant times, Cook Defendants were merchants of goods of the kind including

17   medical devices and vena cava filters (i.e., Gunther Tulip IVC filters).

18       140.    At the time and place of sale, distribution, and supply of Gunther Tulip IVC filters to

19   Decedent (and to other consumer and the medical community), Cook Defendants expressly represented

20   and warranted that Gunther Tulip IVC filters:

21         a.   Were safe;

22         b.   Were well-tolerated, efficacious, fit for their intended purpose, and of marketable quality;

23         c.   Did not produce any unwarned-of dangerous side effects; and

24         d.   Were adequately tested.

25       141.    These express representations were set forth by Cook Defendants in package inserts for

26   Gunther Tulip IVC filters and media advertisements.

27

28

---

27

**AMENDED COMPLAINT FOR DAMAGES**

Exhibit B
Page 132

1   142.   At the time of Decedent's purchase from Cook Defendants, Gunther Tulip IVC filters

2   were not in a merchantable condition, and Cook Defendants breached its expressed warranties, in that

3   Gunther Tulip IVC filters, among other things:

4        a.   Were designed in such a manner so as to be prone to an unreasonably high incidence and

5          severity of tilt, fracture, perforation of vessels and organs, and/or migration;

6        b.   Were designed in such a manner so as to result in a unreasonably high incidence of injury

7          to the vessels and organs of its purchaser;

8        c.   Were manufactured in such a manner that the exterior surface of the filter was

9          inadequately, improperly, and inappropriately constituted, causing the device to weaken

10         and fail;

11       d.   Were unable to be removed at any time during a person's life;

12       e.   Were not efficacious in the prevention of pulmonary emboli;

13       f.   Carried a risk of use that outweighed any benefit; and

14       g.   Were not self-centering.

15  143.   As a direct and proximate result of Cook Defendants' breach of express warranty,

16  Plaintiffs and Decedent suffered Injuries and Damages, and/or Death.

17  ### EIGHTH CAUSE OF ACTION

18  ### MEDICAL MALPRACTICE

19  **(As to Medical Defendants)**

20  144.   Plaintiffs incorporate by reference all prior allegations.

21  145.   Plaintiffs further allege that in the aforementioned examinations, diagnoses, prescriptions,

22  surgery and the handling and control of the care and treatment of Decedent, RICHARD CHEUNG, by

23  Medical Defendants, and each of them, said Medical Defendants, and each of them, negligently and

24  tortiously failed to possess or exercise that degree of knowledge or skill that would ordinarily be

25  possessed and exercised by physicians and surgeons, hospitals, nurses, surgical technicians, attendants,

26  medical clinics, and the like, engaged in said professions in the same locality as Medical Defendants,

27  and each of them, in that said Medical Defendants, and each of them, negligently and unlawfully failed

28  to properly and correctly diagnose, render care and treatment to, obtain informed consent, perform

---

28

**AMENDED COMPLAINT FOR DAMAGES**

1  proper surgery on, and prescribe and administer medicine and drugs for the condition of Decedent,

2  RICHARD CHEUNG, causing his death on or about December 20, 2015.

3       146.    On or about December 4, 2015, Decedent underwent an implant procedure at Stanford

4  Hospital in Redwood City, California for placement of a Gunther Tulip filter by Defendants

5  MATTHEW MELL, M.D. and Stanford, through its agents and employees, and DOES 26 through 50.

6  Dr. Mell improperly and negligently failed to appropriately implant the filter, but instead placed it in a

7  severely tilted position and failed to make any reasonable efforts to correct the dangerous tilting or take

8  other medically recognized measures, all of which was below the accepted medical standard of care in

9  the community.

10       147.    Further, Dr. Mell negligently and unlawfully failed to advise other treating specialists of

11  RICHARD CHEUNG of the severe tilt of his filter and the serious and deadly risks associated with a

12  tilted filter. The other treating specialists included Dr. Gary Steinberg in neurosurgery for Mr. Cheung's

13  moyamoya disease which involved the risk of stroke without a surgical craniotomy, and the monitoring

14  of his pre-existing hypercoagulation disorder (which is a type of hyperclotting abnormality) by Dr.

15  Caroline Berube in hematology. These other treating physicians were tasked with making the difficult

16  and close decision regarding whether to proceed with surgical craniotomy in less than three (3) months

17  after an earlier pulmonary embolism, or wait the customary standard of care six (6) months after a

18  pulmonary embolism event had passed before performing the craniotomy surgery. The other treating

19  physicians opted for the early surgery date knowing that the anticoagulation medication successfully

20  controlling Mr. Cheung's clotting disorder had to be stopped prior to surgery to avoid a bleeding risk

21  because they relied instead on the protective capability of a properly implanted filter until

22  anticoagulation could safely be resumed after surgery. Although the hematologist proceeded in an

23  aggressive but prudent manner during the period of her care, and the craniotomy surgery provided

24  excellent results to Mr. Cheung, the surgical success was entirely undermined by the condition of the

25  severely tilted filter which was well known by Dr. Mell at all times material hereto, but unknown by the

26  other treating specialists.

27

28

**AMENDED COMPLAINT FOR DAMAGES**

148.    Additionally, Dr. Mell's failure to properly warn Decedent and other treating physicians involved in Mr. Cheung's care of the severely tilted filter and related risks resulted in a lack of informed consent to surgery by Mr. Cheung and his wife, DARA BERMAN-CHEUNG.

149.    As a direct and proximate result of the negligence, carelessness, recklessness, wantonness and unlawfulness of the Medical Defendants and each of them, and the resulting death, as aforesaid, Plaintiffs DARA BERMAN-CHEUNG, SAM BERMAN CHEUNG and BAILEY BERMAN CHUNG have suffered and continue to suffer from a life-altering tragedy and resulting damages in a sum within the jurisdiction of this Court and to be shown according to proof.

150.    As a direct and proximate result of the acts and omissions of Medical Defendants, and each of them, Plaintiffs have incurred expenses for the funeral and burial of Decedent, RICHARD CHEUNG, the exact value and amount of which will be shown according to proof.

151.    As a further direct and proximate result of the acts and omission of Medical Defendants, and each of them, Plaintiffs have been damaged in that each has been deprived of the care, comfort, society, protection, support, love, and services of Decedent, RICHARD CHEUNG, all to their damage in a sum according to proof at the time of trial and in excess of the minimum jurisdictional limit of this court.

152.    As a further direct and proximate result of the acts and omissions of Medical Defendants, and each of them, Plaintiffs have sustained and will in the future sustain loss of financial support from Decedent, RICHARD CHEUNG, and the value of Decedent's services to Plaintiffs in an amount to be shown according to proof.

## NINTH CAUSE OF ACTION

## SURVIVAL ACTION

### (As to All Defendants)

153.    Plaintiffs incorporate by reference all prior allegations.

154.    DARA BERMAN-CHEUNG, SAM BERMAN CHEUNG and BAILEY BERMAN CHEUNG are the successors-in-interest to Decedent, RICHARD CHEUNG.

155.    As a direct and proximate result of the wrongful acts and omissions of the defendants, as alleged herein, Decedent suffered personal injuries for which he was required to and did employ

1    physicians and other health care providers to examine, treat and care for him. As a further proximate

2    result, RICHARD CHEUNG experienced significant pain and suffering prior to his death, and incurred

3    medical and incidental expenses, as well as lost wages.

### TENTH CAUSE OF ACTION

### WRONGFUL DEATH

### (As to All Defendants)

7    156.    Plaintiffs incorporate by reference all prior allegations.

8    157.    RICHARD CHEUNG was prescribed, supplied with, received, took, used and was

9    implanted with a Gunther Tulip IVC filter product as tested, studied, researched, evaluated, endorsed,

10   designed, formulated, compounded, manufactured, produced, processed, assembled, inspected,

11   distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed, sold or otherwise

12   placed in the stream of interstate commerce by Cook Defendants, and as implanted by Medical

13   Defendants.

14   158.    The fatal injuries and damages of Decedent were caused by the wrongful acts, omissions,

15   and fraudulent misrepresentations of Defendants, as described herein.

16   159.    As a result of the conduct of Defendants and the use of Defendants' IVC filters, Decedent

17   suffered catastrophic and ultimately fatal injuries.

18   160.    As a result of the death of Decedent, Plaintiffs were deprived of love, companionship,

19   comfort, affection, society, solace and moral support of their loved one, RICHARD CHEUNG.

20   161.    Plaintiffs, as the surviving and legal heirs to Decedent are entitled to recover economic

21   and non-economic damages against all Defendants for wrongful death directly and legally caused by the

22   defects in Defendants' IVC filters, and the negligent conduct, acts, errors, omissions and/or intentional

23   and/or negligent misrepresentations of Defendants, and each of them, as alleged throughout this

24   Complaint for Damages.

25

26

27   / / /

28   / / /

---

31

**AMENDED COMPLAINT FOR DAMAGES**

## PUNITIVE DAMAGES ALLEGATIONS

### (As to Cook Defendants)

162.    Plaintiffs incorporate by reference all prior allegations.

163.    At all times material hereto, Cook Defendants knew or should have known that Gunther Tulip IVC filters were unreasonably dangerous with respect to the risk of tilt, fracture, migration and/or perforation.

164.    At all times material hereto, Cook Defendants attempted to misrepresent and did knowingly misrepresent facts concerning the safety of Gunther Tulip IVC filters.

165.    Cook Defendants' misrepresentations included knowingly withholding material information from the medical community and the public, including Decedent's physicians, concerning the safety of its Gunther Tulip IVC filters. Data establishes that the failure rates of the filters are and were much higher than what Cook Defendants have in the past and currently continue to publish to the medical community and members of the public.

166.    Cook Defendants' conduct, alleged throughout this Complaint, was willful, wanton, and undertaken with a conscious indifference and disregard to the consequences that consumers of their products faced, including Decedent. Cook Defendants had actual knowledge of the dangers presented by Gunther Tulip IVC filters, yet consciously failed to act reasonably to inform or warn Decedent, his physicians, or the public at large of these dangers. Cook Defendants consciously failed to establish and maintain an adequate quality and post-market surveillance system.

167.    At all times material hereto, Cook Defendants knew and recklessly disregarded the fact that Gunther Tulip IVC filters have an unreasonably high rate of tilt, fracture, migration, and/or perforation.

168.    Notwithstanding the foregoing, Cook Defendants continued to market Gunther Tulip IVC filters aggressively to consumers, including Decedent, without disclosing the aforesaid side effects.

169.    Cook Defendants knew of their Gunther Tulip IVC filters' lack of warnings regarding the risk of tilt, fracture, migration, and/or perforation, but intentionally concealed and/or recklessly failed to disclose that risk and continued to market, distribute, and sell its filters without said warnings so as to

AMENDED COMPLAINT FOR DAMAGES

Exhibit B
Page 137

1  maximize sales and profits at the expense of the health and safety of the public, including Decedent, in

2  conscious disregard of the foreseeable harm caused by Gunther Tulip IVC filters.

3       170.    Cook Defendants' intentional and/or reckless failure to disclose information deprived

4  Decedent's physicians of necessary information to enable them to weigh the true risks of using Gunther

5  Tulip IVC filters against its benefits.

6       171.    Cook Defendants' conduct is reprehensible, evidencing an evil hand guided by an evil

7  mind and was undertaken for pecuniary gain in reckless and conscious disregard for the substantial risk

8  of death and physical injury to consumers, including Decedent.

9       172.    Such conduct justifies an award of punitive or exemplary damages in an amount

10  sufficient to punish Cook Defendants' conduct and deter like conduct by Cook Defendants and other

11  similarly situated persons and entities in the future.

12                                 **PRAYER FOR DAMAGES**

13       WHEREFORE, Plaintiffs demand judgment against Defendants for:

14       a.     General (non-economic) damages, including, without limitation, past and future pain and

15  suffering; past and future emotional distress; past and future loss of enjoyment of life; and other

16  consequential damages as allowed by law;

17       b.     Special (economic) damages, including, without limitation, past and future medical

18  expenses; past and future lost wages and loss of earning capacity; and other consequential damages as

19  allowed by law;

20       c.     Punitive damages (only as to the Cook Defendants) in an amount sufficient to punish

21  Cook Defendants and deter similar conduct in the future;

22       d.     Costs of suit;

23       e.     Prejudgment interest as allowed by law;

24       f.     Post-judgment interest at the highest applicable statutory or common law rate from the

25  date of judgment until satisfaction of judgment; and

26       g.     Such other additional and further relief as Plaintiffs may be entitled to in law or in equity.

27

28  / / /

**AMENDED COMPLAINT FOR DAMAGES**

Exhibit B
Page 138

1    **DEMAND FOR JURY TRIAL**

2        Plaintiffs demand a trial by jury on all triable issues.

3

4    Dated: March 20, 2017                    Respectfully submitted,

5                                             LOPEZ McHUGH LLP

6

7
                                       By: _____
8                                          Ramon Rossi Lopez
9                                          Matthew R. Lopez
                                           Amorina P. Lopez
10                                         Nicholas R. Graham

11                                         Attorneys for Plaintiffs DARA BERMAN-
                                           CHEUNG, SAM BERMAN CHEUNG and
12                                         BAILEY BERMAN CHUNG

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

34

**AMENDED COMPLAINT FOR DAMAGES**

CIV-010

| ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Ramon Rossi Lopez (SBN 86361)<br>Matthew Ramon Lopez (SBN 263134)<br>LOPEZ McHUGH LLP<br>100 Bayview Circle, Ste. 5600, Newport Beach, CA 92660<br>TELEPHONE NO.: (949) 737-1501  FAX NO. (Optional): (949) 737-1504<br>E-MAIL ADDRESS (Optional): rlopez@lopezmchugh.com/mlopez@lopezmchugh.com<br>ATTORNEY FOR (Name): Plaintiffs | |

**RECEIVED**
MAR 16 2017
Clerk of the Court
Superior Court of CA County of Santa Clara
BY_____DEPUTY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 191 North First Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose, CA 95113
BRANCH NAME: Downtown Superior Courthouse

PLAINTIFF/PETITIONER: DARA BERMAN-CHEUNG, etc., et al.

DEFENDANT/RESPONDENT: COOK GROUP, INC., etc., et al.

| APPLICATION AND ORDER FOR APPOINTMENT<br>OF GUARDIAN AD LITEM—CIVIL<br>☑ EX PARTE | CASE NUMBER:<br>17CV307373 |
|---|---|

**BY FAX**

> NOTE: This form is for use in civil proceedings in which a party is a minor, an incapacitated person, or a person for whom a conservator has been appointed. A party who seeks the appointment of a guardian ad litem in a family law or juvenile proceeding should use form FL-935. A party who seeks the appointment of a guardian ad litem in a probate proceeding should use form DE-350/GC-100. An individual cannot act as a guardian ad litem unless he or she is represented by an attorney or is an attorney.

1. Applicant (name): Dara Berman-Cheung                               is
   a. ☑ the parent of (name): Sam Berman Cheung
   b. ☐ the guardian of (name):
   c. ☐ the conservator of (name):
   d. ☑ a party to the suit.
   e. ☐ the minor to be represented (if the minor is 14 years of age or older).
   f. ☐ another interested person (specify capacity):

2. This application seeks the appointment of the following person as guardian ad litem (state name, address, and telephone number):
   Dara Berman-Cheung
   3186 Mountview Road
   Columbus, OH 43221

3. The guardian ad litem is to represent the interests of the following person (state name, address, and telephone number):
   Sam Berman Cheung
   3186 Mountview Road
   Columbus, OH 43221

4. The person to be represented is:
   a. ☑ a minor (date of birth): October 17, 2003
   b. ☐ an incompetent person.
   c. ☐ a person for whom a conservator has been appointed.

5. The court should appoint a guardian ad litem because:
   a. ☑ the person named in item 3 has a cause or causes of action on which suit should be brought (describe):
   Medical Negligence, Product Liability, Wrongful Death, and Survival Action

☐ Continued on Attachment 5a.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-010 [Rev. January 1, 2008] | APPLICATION AND ORDER FOR APPOINTMENT<br>OF GUARDIAN AD LITEM—CIVIL | Code of Civil Procedure,<br>§ 372 et seq. |
|---|---|---|

Case 1:14-ml-02570-RLY-TAB Document 6038-12 Filed 09/20/17 Page 145 of 202 PageID #:
23490
Case 5:17-cv-02564-NC Document 1-2 Filed 05/04/17 Page 85 of 143

CIV-010

| PLAINTIFF/PETITIONER: DARA BERMAN-CHEUNG, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: COOK GROUP, INC., etc., et al. | |

5.  b. ☐ more than 10 days have elapsed since the summons in the above-entitled matter was served on the person named
    in item 3, and no application for the appointment of a guardian ad litem has been made by the person identified in
    item 3 or any other person.

    c. ☑ the person named in item 3 has no guardian or conservator of his or her estate.

    d. ☑ the appointment of a guardian ad litem is necessary for the following reasons *(specify):*

    Sam Berman Cheung is a minor under the age of 14 and, along with his mother and sister, has a
    claim for damages against defendants for the wrongful death of his father, Richard Cheung,

    ☐ Continued on Attachment 5d.

6.  The proposed guardian ad litem's relationship to the person he or she will be representing is:
    a. ☑ related *(state relationship):* Mother
    b. ☐ not related *(specify capacity):*

7.  The proposed guardian ad litem is fully competent and qualified to understand and protect the rights of the person he or she will
    represent and has no interests adverse to the interests of that person. *(If there are any issues of competency or qualification or
    any possible adverse interests, describe and explain why the proposed guardian should nevertheless be appointed):*

    ☐ Continued on Attachment 7.

| Matthew Ramon Lopez | |
|---|---|
| (TYPE OR PRINT NAME) | (SIGNATURE OF ATTORNEY) |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 3|13|2017

| Dara Berman-Cheung | |
|---|---|
| (TYPE OR PRINT NAME) | (SIGNATURE OF APPLICANT) |

### CONSENT TO ACT AS GUARDIAN AD LITEM

I consent to the appointment as guardian ad litem under the above petition.

Date: 3|13|2017

| Dara Berman-Cheung | |
|---|---|
| (TYPE OR PRINT NAME) | (SIGNATURE OF PROPOSED GUARDIAN AD LITEM) |

### ORDER ☐ EX PARTE

THE COURT FINDS that it is reasonable and necessary to appoint a guardian ad litem for the person named in item 3 of the
application, as requested.

THE COURT ORDERS that *(name):*
is hereby appointed as the guardian ad litem for *(name):*
for the reasons set forth in item 5 of the application.

Date:

| | JUDICIAL OFFICER |
|---|---|
| | ☐ SIGNATURE FOLLOWS LAST ATTACHMENT |

| CIV-010 [Rev. January 1, 2008] | **APPLICATION AND ORDER FOR APPOINTMENT**<br>**OF GUARDIAN AD LITEM—CIVIL** | Page 2 of 2 |
|---|---|---|

Case 1:14-ml-02570-RLY-TAB Document 6038-12 Filed 09/20/17 Page 146 of 202 PageID #:
23491
Case 3:17-cv-02564-NC Document 1-12 Filed 05/04/17 Page 89 of 143

# SANTA CLARA COUNTY SUPERIOR COURT
## ALTERNATIVE DISPUTE RESOLUTION
### INFORMATION SHEET

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

### What is ADR?
ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

### What are the advantages of choosing ADR instead of litigation?
ADR can have a number of advantages over litigation:

- **ADR can save time.** A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

- **ADR can save money.** Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

- **ADR provides more participation.** Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

- **ADR provides more control and flexibility.** Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

- **ADR can reduce stress.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

### What are the main forms of ADR offered by the Court?
**Mediation** is an informal, confidential, flexible and non-binding process in the mediator helps the parties to understand the interests of everyone involved, and their practical and legal choices. The mediator helps the parties to communicate better, explore legal and practical settlement options, and reach an acceptable solution of the problem. The mediator does not decide the solution to the dispute; the parties do.

Mediation may be appropriate when:
- The parties want a non-adversary procedure
- The parties have a continuing business or personal relationship
- Communication problems are interfering with a resolution
- There is an emotional element involved
- The parties are interested in an injunction, consent decree, or other form of equitable relief

**Neutral evaluation**, sometimes called "Early Neutral Evaluation" or "ENE", is an informal process in which the evaluator, an experienced neutral lawyer, hears a compact presentation of both sides of the case, gives a non-binding assessment of the strengths and weaknesses on each side, and predicts the likely outcome. The evaluator can help parties to identify issues, prepare stipulations, and draft discovery plans. The parties may use the neutral's evaluation to discuss settlement.

Neutral evaluation may be appropriate when:
- The parties are far apart in their view of the law or value of the case
- The case involves a technical issue in which the evaluator has expertise
- Case planning assistance would be helpful and would save legal fees and costs
- The parties are interested in an injunction, consent decree, or other form of equitable relief

*-over-*

**Arbitration** is a less formal process than a trial, with no jury. The arbitrator hears the evidence and arguments of the parties and then makes a written decision. The parties can agree to binding or non-binding arbitration. In binding arbitration, the arbitrator's decision is final and completely resolves the case, without the opportunity for appeal. In non-binding arbitration, the arbitrator's decision could resolve the case, without the opportunity for appeal, unless a party timely rejects the arbitrator's decision within 30 days and requests a trial. Private arbitrators are allowed to charge for their time.

Arbitration may be appropriate when:
- The action is for personal injury, property damage, or breach of contract
- Only monetary damages are sought
- Witness testimony, under oath, needs to be evaluated
- An advisory opinion is sought from an experienced litigator (if a non-binding arbitration)

**Civil Judge ADR** allows parties to have a mediation or settlement conference with an experienced judge of the Superior Court. Mediation is an informal, confidential, flexible and non-binding process in which the judge helps the parties to understand the interests of everyone involved, and their practical and legal choices. A settlement conference is an informal process in which the judge meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations. The request for mediation or settlement conference may be made promptly by stipulation (agreement) upon the filing of the Civil complaint and the answer. There is no charge for this service.

Civil Judge ADR may be appropriate when:
- The parties have complex facts to review
- The case involves multiple parties and problems
- The courthouse surroundings would he helpful to the settlement process

**Special masters and referees** are neutral parties who may be appointed by the court to obtain information or to make specific fact findings that may lead to a resolution of a dispute.
Special masters and referees can be particularly effective in complex cases with a number of parties, like construction disputes.

**Settlement conferences** are informal processes in which the neutral (a judge or an experienced attorney) meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations.
Settlement conferences can be effective when the authority or expertise of the judge or experienced attorney may help the parties reach a resolution.

*What kind of disputes can be resolved by ADR?*
Although some disputes must go to court, almost any dispute can be resolved through ADR. This includes disputes involving business matters; civil rights; collections; corporations; construction; consumer protection; contracts; copyrights; defamation; disabilities; discrimination; employment; environmental problems; fraud; harassment; health care; housing; insurance; intellectual property; labor; landlord/tenant; media; medical malpractice and other professional negligence; neighborhood problems; partnerships; patents; personal injury; probate; product liability; property damage; real estate; securities; sports; trade secret; and wrongful death, among other matters.

*Where can you get assistance with selecting an appropriate form of ADR and a neutral for your case, information about ADR procedures, or answers to other questions about ADR?*

*Contact:*

| | |
|---|---|
| Santa Clara County Superior Court | Santa Clara County DRPA Coordinator |
| ADR Administrator | 408-792-2784 |
| 408-882-2530 | |

ATTACHMENT CV-5012

# CIVIL LAWSUIT NOTICE

*Superior Court of California, County of Santa Clara*
*191 North First St., San José, CA 95113*

CASE NUMBER: **17 C V 3 0 7 3 7 3**

## PLEASE READ THIS ENTIRE FORM

*PLAINTIFF* (the person suing): Within 60 days after filing the lawsuit, you must serve each Defendant with the *Complaint*, *Summons*, an *Alternative Dispute Resolution (ADR) Information Sheet*, and a copy of this *Civil Lawsuit Notice*, and you must file written proof of such service.

---

*DEFENDANT* (The person sued): You must do each of the following to protect your rights:

1. You must file a **written response** to the *Complaint, using the proper legal form or format*, in the Clerk's Office of the Court, within **30 days** of the date you were served with the *Summons* and *Complaint*;
2. You must serve by mail a copy of your written response on the Plaintiff's attorney or on the Plaintiff if Plaintiff has no attorney (to "serve by mail" means to have an adult other than yourself mail a copy); and
3. You must attend the first Case Management Conference.

   Warning: If you, as the Defendant, do not follow these instructions, you may automatically lose this case.

---

*RULES AND FORMS:* You must follow the California Rules of Court and the Superior Court of California, County of Santa Clara Local Civil Rules and use proper forms. You can obtain legal information, view the rules and receive forms, free of charge, from the Self-Help Center at 201 North First Street, San José (408-882-2900 x-2926).

- State Rules and Judicial Council Forms: www.courts.ca.gov/forms.htm and www.courts.ca.gov/rules.htm
- Local Rules and Forms: www.scscourt.org

*CASE MANAGEMENT CONFERENCE (CMC):* You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC. You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

   *You or your attorney must appear at the CMC. You may ask to appear by telephone – see Local Civil Rule 8.*

Your Case Management Judge is: **Maureen Folan**          Department:     **8**

The 1st CMC is scheduled for: (Completed by Clerk of Court)

   Date: _____ JUL 1 1 2017 _____  Time: **3:00pm**  in Department:     **8**

The next CMC is scheduled for: (Completed by party if the 1st CMC was continued or has passed)

   Date: _____  Time: _____  in Department: _____

*ALTERNATIVE DISPUTE RESOLUTION (ADR):* If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.scscourt.org or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

*WARNING:* Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

Case 1:14-ml-02570-RLY-TAB Document 6038-12 Filed 09/20/17 Page 149 of 202 PageID #:
Case 5:17-cv-02564-NC Document 1-12 Filed 05/04/17 Page 92 of 143
23494

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Ramon Rossi Lopez, SBN 86361; Matthew Ramon Lopez, SBN 263134; Amorina Patrice Lopez, SBN 278002; Nicholas Robert Graham, SBN 307330 Lopez McHugh LLP 100 Bayview Circle, Suite 5600, Newport Beach, CA 92660 | |

TELEPHONE NO.: (949) 737-1501    FAX NO.: (949) 737-1504

ATTORNEY FOR *(Name):* Plaintiff Dara Berman-Cheung, et al.

**ENDORSED**

2017 MAR 16 A 8:58

CLERK OF THE COURT
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
BY_____ DEPUTY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Clara
STREET ADDRESS: 191 North First Street
MAILING ADDRESS: 191 North First Street
CITY AND ZIP CODE: San Jose, 95113
BRANCH NAME: Downtown Superior Court

CASE NAME:
Dara Berman-Cheung, et al. v. Cook Group Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | 17CV307373 |
| | | | | JUDGE: |
| | | | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[✓] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [✓] punitive
4. Number of causes of action *(specify):* Ten
5. This case [ ] is [✓] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: March 15, 2017

Matthew Ramon Lopez
_____    _____
(TYPE OR PRINT NAME)             (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**BY FAX**

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

Exhibit B
Page 145

Case 1:14-ml-02570-RLY-TAB Document 6038-12 Filed 09/20/17 Page 150 of 202 PageID #:
Case 5:17-cv-01564-NC Document 112 Filed 05/04/17 Page 150 of 243
23495

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
  Damage/Wrongful Death
Uninsured Motorist (46) *(if the
  case involves an uninsured
  motorist claim subject to
  arbitration, check this item
  instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/
    Wrongful Death
Product Liability *(not asbestos or
  toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice–
    Physicians & Surgeons
  Other Professional Health Care
    Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip
    and fall)
  Intentional Bodily Injury/PD/WD
    (e.g., assault, vandalism)
  Intentional Infliction of
    Emotional Distress
  Negligent Infliction of
    Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
  Practice (07)
Civil Rights (e.g., discrimination,
  false arrest) *(not civil
  harassment)* (08)
Defamation (e.g., slander, libel)
  (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice
    *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease
    Contract *(not unlawful detainer
    or wrongful eviction)*
  Contract/Warranty Breach–Seller
    Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/
    Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open
  book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections
    Case
Insurance Coverage *(not provisionally
  complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
  Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent
  domain, landlord/tenant, or
  foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
  drugs, check this item; otherwise,
  report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court
    Case Matter
  Writ–Other Limited Court Case
    Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor
    Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
  *(arising from provisionally complex
  case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of
    County)
  Confession of Judgment *(non-
    domestic relations)*
  Sister State Judgment
  Administrative Agency Award
    *(not unpaid taxes)*
  Petition/Certification of Entry of
    Judgment on Unpaid Taxes
  Other Enforcement of Judgment
    Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
  above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-
    harassment)*
  Mechanics Lien
  Other Commercial Complaint
    Case *(non-tort/non-complex)*
  Other Civil Complaint
    *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
  Governance (21)
Other Petition *(not specified
  above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult
    Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late
    Claim
  Other Civil Petition

CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Page 2 of 2

CIV-010

| ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY *(Name, State Bar number, and address):*
Ramon Rossi Lopez (SBN 86361)
Matthew Ramon Lopez (SBN 263134)
LOPEZ McHUGH LLP
100 Bayview Circle, Ste. 5600, Newport Beach, CA 92660
TELEPHONE NO.: (949) 737-1501   FAX NO. *(Optional):* (949) 737-1504
E-MAIL ADDRESS *(Optional):* rlopez@lopezmchugh.com/mlopez@lopezmchugh.com
ATTORNEY FOR *(Name):* Plaintiffs

**RECEIVED**

MAR 16 2017

Clerk of the Court
Superior Court of CA County of Santa Clara
BY_____DEPUTY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 191 North First Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose, CA 95113
BRANCH NAME: Downtown Superior Courthouse

PLAINTIFF/PETITIONER: DARA BERMAN-CHEUNG, et al.

DEFENDANT/RESPONDENT: COOK GROUP INC., etc., et al.

| APPLICATION AND ORDER FOR APPOINTMENT OF GUARDIAN AD LITEM—CIVIL  [✓] EX PARTE | CASE NUMBER 17CV307373 |
|---|---|

**NOTE:** *This form is for use in civil proceedings in which a party is a minor, an incapacitated person, or a person for whom a conservator has been appointed. A party who seeks the appointment of a guardian ad litem in a family law or juvenile proceeding should use form FL-935. A party who seeks the appointment of a guardian ad litem in a probate proceeding should use form DE-350/GC-100. An individual cannot act as a guardian ad litem unless he or she is represented by an attorney or is an attorney.*

1. Applicant *(name):* Dara Berman-Cheung                                is
   a. [✓] the parent of *(name):* Bailey Berman Cheung
   b. [ ] the guardian of *(name):*
   c. [ ] the conservator of *(name):*
   d. [✓] a party to the suit.
   e. [ ] the minor to be represented *(if the minor is 14 years of age or older).*
   f. [ ] another interested person *(specify capacity):*

2. This application seeks the appointment of the following person as guardian ad litem *(state name, address, and telephone number):*
   Dara Berman-Cheung
   3186 Mountview Road
   Columbus, OH 43221

3. The guardian ad litem is to represent the interests of the following person *(state name, address, and telephone number):*
   Bailey Berman Cheung
   3186 Mountview Road
   Columbus, OH 43221

4. The person to be represented is:
   a. [✓] a minor *(date of birth):* August 20, 2005
   b. [ ] an incompetent person.
   c. [ ] a person for whom a conservator has been appointed.

5. The court should appoint a guardian ad litem because:
   a. [✓] the person named in item 3 has a cause or causes of action on which suit should be brought *(describe):*
   Medical Negligence, Product Liability, Wrongful Death, and Survival Action

[ ] Continued on Attachment 5a.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CIV-010 [Rev. January 1, 2008]

**APPLICATION AND ORDER FOR APPOINTMENT
OF GUARDIAN AD LITEM—CIVIL**

Code of Civil Procedure,
§ 372 et seq

BY FAX
BY FAX

Case 1:14-ml-02570-RLY-TAB Document 6038-12 Filed 09/20/17 Page 152 of 202 PageID #:
23497
Case 5:17-cv-02564-NC Document 1-12 Filed 05/04/17 Page 153 of 243 PageID #:

CIV-010

| PLAINTIFF/PETITIONER: DARA BERMAN-CHEUNG, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: COOK GROUP, INC., etc., et al. | |

5. b. ☐ more than 10 days have elapsed since the summons in the above-entitled matter was served on the person named in item 3, and no application for the appointment of a guardian ad litem has been made by the person identified in item 3 or any other person.

   c. ☑ the person named in item 3 has no guardian or conservator of his or her estate.

   d. ☑ the appointment of a guardian ad litem is necessary for the following reasons *(specify)*:

   Bailey Berman Cheung is a minor under the age of 14 and, along with her mother and brother, has a claim for damages against defendants for the wrongful death of her father, Richard Cheung,

   ☐ Continued on Attachment 5d.

6. The proposed guardian ad litem's relationship to the person he or she will be representing is:
   a. ☑ related *(state relationship)*: Mother
   b. ☐ not related *(specify capacity)*:

7. The proposed guardian ad litem is fully competent and qualified to understand and protect the rights of the person he or she will represent and has no interests adverse to the interests of that person. *(If there are any issues of competency or qualification or any possible adverse interests, describe and explain why the proposed guardian should nevertheless be appointed)*:

   ☐ Continued on Attachment 7.

Matthew Ramon Lopez
_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF ATTORNEY)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
Date: 3/13/2017

Dara Berman-Cheung
_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF APPLICANT)

## CONSENT TO ACT AS GUARDIAN AD LITEM

I consent to the appointment as guardian ad litem under the above petition.
Date: 3/13/2017

Dara Berman-Cheung
_____
(TYPE OR PRINT NAME)

► _____
(SIGNATURE OF PROPOSED GUARDIAN AD LITEM)

## ORDER ☐ EX PARTE

THE COURT FINDS that it is reasonable and necessary to appoint a guardian ad litem for the person named in item 3 of the application, as requested.

THE COURT ORDERS that *(name)*:
is hereby appointed as the guardian ad litem for *(name)*:
for the reasons set forth in item 5 of the application.
Date:

_____
JUDICIAL OFFICER
☐ SIGNATURE FOLLOWS LAST ATTACHMENT

CIV-010 [Rev. January 1, 2008] | **APPLICATION AND ORDER FOR APPOINTMENT OF GUARDIAN AD LITEM—CIVIL** | Page 2 of 2

Exhibit B
Page 148

<table>
<tr><td>1</td><td>Ramon Rossi Lopez, Bar No. 86361<br>Matthew Ramon Lopez, Bar No. 263134</td></tr>
</table>

1 | Ramon Rossi Lopez, Bar No. 86361
Matthew Ramon Lopez, Bar No. 263134
2 | Amorina Patrice Lopez, Bar No. 278002
**LOPEZ McHUGH LLP**
3 | 100 Bayview Circle, Suite 5600
Newport Beach, CA 92660
4 | Telephone: (949) 737-1501
Facsimile: (949) 737-1504
5 | rlopez@lopezmchugh.com
mlopez@lopezmchugh.com
6 | alopez@lopezmchugh.com

7 | *Attorneys for Plaintiffs*

**ENDORSED**

2017 MAR 16  A 8: 58

*G. DUARTE*
CLERK OF THE COURT
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
BY_____DEPUTY

8 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9 | **FOR THE COUNTY OF SANTA CLARA**

10 |

11 | DARA BERMAN-CHEUNG, an Individual;
SAM BERMAN CHEUNG, a Minor, by and
12 | through his Guardian ad Litem, DARA
BERMAN-CHEUNG; and BAILEY
13 | BERMAN CHUNG, a Minor, by and
through her Guardian ad Litem, DARA
14 | BERMAN-CHEUNG,

15 | Plaintiffs,

16 | vs.

17 | COOK GROUP, INC., an Indiana
corporation; COOK MEDICAL
18 | INCORPORATED a/k/a COOK MEDICAL,
INC., an Indiana corporation; COOK
19 | MEDICAL, LLC, an Indiana corporation;
WILLIAM COOK EUROPE APS;
20 | MATTHEW MELL, M.D., an individual;
STANFORD HEALTH CARE, a California
21 | corporation; and DOES 1 through 50,
Inclusive,

22 | Defendants.

Case No.:  **17CV307373**

**DECLARATION OF SUCCESSORS-IN-INTEREST**

**[C.C.P. §377.32]**

**BY FAX**

24 |     I, DARA BERMAN-CHEUNG, individually and on behalf of my minor children, SAM

25 | BERMAN CHEUNG and BAILEY BERMAN CHEUNG, declare as follows:

26 |     1.     We are the surviving spouse and children of RICHARD CHEUNG ("Decedent"),

27 | respectively.

28 |     2.     We, DARA BERMAN-CHEUNG, SAM BERMAN CHEUNG, and BAILEY

-1-

**DECLARATION OF SUCCESSORS-IN-INTEREST**

BERMAN CHEUNG, Decedent's spouse and children, are the beneficiaries of Decedent RICHARD CHEUNG's estate pursuant to § 6042 of the California *Probate Code*.

       3.      Decedent died on December 20, 2015 in Santa Clara County, California. A true and correct copy of the Decedent's Death Certificate is attached hereto.

       4.      There is no proceeding pending in California for administration of the Decedent's Estate.

       5.      We, DARA BERMAN-CHEUNG, SAM BERMAN CHEUNG, and BAILEY BERMAN CHEUNG, are the Decedent's successors-in-interest as defined in *Code of Civil Procedure* § 377.11 and succeed to Decedent's interest in this action. We, DARA BERMAN-CHEUNG, SAM BERMAN CHEUNG, and BAILEY BERMAN CHEUNG, are Decedent's spouse and children, and sole beneficiaries of Decedent's Estate.

       6.      No other person has a right to commence the action or proceeding, or to be substituted for the Decedent in the pending action.

       I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: 3|15|2017                                                   

                                       DARA BERMAN-CHEUNG, Declarant

-2-

**DECLARATION OF SUCCESSORS-IN-INTEREST**

Exhibit B
Page 150

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

**ENDORSED** *(illegible stamp)*

2017 MAR 16   A 8: 58

CLERK OF THE COURT
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
BY_____ DEPUTY
*G. DUARTE*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

<u>COOK GROUP, INC., an Indiana corporation;</u> (Additional Parties Attachment Form Attached)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

DARA BERMAN-CHEUNG, an Individual; (Additional Parties Attachment Form Attached)

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* Downtown Superior Court 191 North First Street, San Jose, CA 95113 | CASE NUMBER: *(Número del Caso):* **17CV307373** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Matthew Ramon Lopez, Lopez McHugh LLP, 100 Bayview Circle, Ste. 5600, Newport Beach, CA 92660
(949) 737-1501

| DATE: ~~1/15/2017~~ **MAR 16 2017** *(Fecha)* | Clerk, by *(Secretario)* | *G. DUARTE* | , Deputy *(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*: Cook Group, Inc, an Indiana Corporation

   under: ☒ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☐ other *(specify)*:
4. ☒ by personal delivery on *(date)*: 4/4/17

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use Judicial Council of California SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 www.courtinfo.ca.gov |

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Dara Berman-Cheung, et al. v. Cook Group, Inc., et al. | |

**INSTRUCTIONS FOR USE**

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

COOK MEDICAL INCORPORATED a/k/a COOK MEDICAL, INC., an Indiana corporation; COOK MEDICAL, LLC, an Indiana corporation; WILLIAM COOK EUROPE APS; MATTHEW MELL, M.D., an individual; STANFORD HEALTH CARE, a California corporation; and DOES 1 through 50, Inclusive,

Page __2__ of __3__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Case 1:14-ml-02570-RLY-TAB   Document 6038-1   Filed 09/30/17   Page 157 of 202 PageID #:
23502
Case 2:17-cv-02564-NC   Document 89-1   Filed 09/04/17   Page 150 of 146

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Dara Berman-Cheung, et al. v. Cook Group, Inc., et al. | |

### INSTRUCTIONS FOR USE

➜ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➜ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.):*

[✓] Plaintiff   [ ] Defendant   [ ] Cross-Complainant   [ ] Cross-Defendant

SAM BERMAN CHEUNG, a Minor, by and through his Guardian ad Litem, DARA BERMAN-CHEUNG; and BAILEY BERMAN CHUNG, a Minor, by and through her Guardian ad Litem, DARA BERMAN-CHEUNG,

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

Exhibit B
Page 153

Case 1:14-ml-02570-RLY-TAB  Document 6039-1  Filed 08/30/17  Page 158 of 202 PageID #:
23503
Case 5:17-cv-02564-NC  Document 89-1  Filed 08/04/17  Page 159 of 202

1  Ramon Rossi Lopez, Bar No. 86361
2  Matthew Ramon Lopez, Bar No. 263134
   Amorina Patrice Lopez, Bar No. 278002
3  Nicholas Robert Graham, Bar No. 307330
   LOPEZ McHUGH LLP
4  100 Bayview Circle, Suite 5600
   Newport Beach, California 92660
5  Telephone: (949) 737-1501
6  Facsimile:  (949) 737-1504
   rlopez@lopezmchugh.com
7  mlopez@lopezmchugh.com
   alopez@lopezmchugh.com
8  ngraham@lopezmchugh.com

9
   Attorneys for Plaintiffs
10

11          SUPERIOR COURT OF THE STATE OF CALIFORNIA

12             FOR THE COUNTY OF SANTA CLARA

13

14  DARA BERMAN-CHEUNG, an Individual;      ) Case No.:  17CV307373
    SAM BERMAN CHEUNG, a Minor, by and      )
15  through his Guardian ad Litem, DARA      ) AMENDED COMPLAINT FOR DAMAGES
    BERMAN-CHEUNG; and BAILEY               )    1.  STRICT PRODUCTS LIABILITY –
16  BERMAN CHUNG, a Minor, by and through    )        FAILURE TO WARN
    her Guardian ad Litem, DARA BERMAN-      )    2.  STRICT PRODUCTS LIABILITY –
17  CHEUNG,                                  )        MANUFACTURING DEFECT
                                             )    3.  NEGLIGENCE
18              Plaintiffs,                  )    4.  NEGLIGENT MISREPRESENTATION
19  vs.                                      )    5.  FRAUDULENT MISREPRESENTATION
                                             )    6.  FRAUDULENT CONCEALMENT
20  COOK GROUP, INC.; an Indiana corporation;)    7.  BREACH OF EXPRESS WARRANTY
21  COOK MEDICAL INCORPORATED a/k/a          )    8.  MEDICAL NEGLIGENCE
    COOK MEDICAL, INC., an Indiana           )    9.  SURVIVAL ACTION
22  corporation; COOK MEDICAL, LLC, an       )   10.  WRONGFUL DEATH
    Indiana corporation; WILLIAM COOK        )
23  EUROPE APS; MATTHEW MELL, M.D., an       ) DEMAND FOR JURY TRIAL
24  individual; STANFORD HEALTH CARE, a      )
    California corporation; and DOES 1 through)
25  50, Inclusive,                           )
                                             )
26              Defendants.                  )
27                                           )

28

                                 1
                  AMENDED COMPLAINT FOR DAMAGES

BY FAX

[stamp:] 2017 MAR 20  A 10: 20
CLERK OF THE COURT
SUPERIOR COURT OF CA
COUNTY OF SANTA CLARA
L. QUACH-MARCELLANA

COME NOW, Plaintiffs, DARA BERMAN-CHEUNG, SAM BERMAN CHEUNG and BAILEY BERMAN CHUNG, by and through their Guardian ad Litem, DARA BERMAN-CHEUNG ("Plaintiffs"), by and through their attorneys, who complain and allege against Defendants, COOK GROUP, INC., COOK MEDICAL INCORPORATED a/k/a COOK MEDICAL, INC., COOK MEDICAL, LLC, WILLIAM COOK EUROPE APS and DOES 1 through 25 (hereinafter, collectively referred to as "Cook" or "Cook Defendants"), MATTHEW MELL, M.D. ("Dr. Mell"), STANFORD HEALTH CARE ("Stanford") and DOES 26 through 50 (hereinafter, collectively referred to as "Medical Defendants"), on information and belief, as follows:

**PARTIES**

1.      Plaintiff DARA BERMAN-CHEUNG is the surviving spouse of RICHARD CHEUNG ("Decedent") and at all times relevant to this action was and is a citizen and resident of the State of Ohio.

2.      Plaintiff SAM BERMAN CHEUNG is a minor and natural child of RICHARD CHEUNG and at all times relevant to this action was and is a citizen and resident of the State of Ohio.

3.      Plaintiff BAILEY BERMAN CHEUNG is a minor and natural child of RICHARD CHEUNG and at all times relevant to this action was and is a citizen and resident of the State of Ohio.

4.      Decedent RICHARD CHEUNG, at all times relevant to this action was a citizen and resident of the State of Ohio.  Mr. Cheung underwent placement of Cook Defendants' Gunther Tulip® Vena Cava Filter on or about December 4, 2015 at Stanford Hospital in Redwood City, California. Defendant MATTHEW MELL, M.D. is a vascular surgeon and was responsible for placing the device in Decedent.  The filter subsequently malfunctioned due to severe tilting, which impaired its effectiveness in catching blood clots and preventing pulmonary embolism.  This tilt-related malfunction and others allowed clots to pass the filter that otherwise would have been caught had the filter been in a proper centered position.  As a direct and proximate result of these malfunctions, RICHARD CHEUNG suffered fatal injuries from pulmonary embolism, damages, and untimely death on or about December 20, 2015.

**AMENDED COMPLAINT FOR DAMAGES**

1        5.     Defendant COOK GROUP, INC. is an Indiana corporation with a principal place of

2 business located at 750 Daniels Way, Bloomington, Indiana 47404. Defendant Cook Group, Inc.

3 regularly conducts business in the State of California and is authorized to do so.

4        6.     Defendant COOK MEDICAL INCORPORATED a/k/a COOK MEDICAL, INC. is an

5 Indiana corporation with a principal place of business located at 750 Daniels Way, Bloomington,

6 Indiana 47404. Defendant Cook Medical Incorporated a/k/a Cook Medical, Inc. regularly conducts

7 business in the State of California and is authorized to do so.

8        7.     Defendant COOK MEDICAL, LLC is an Indiana corporation with a principal place of

9 business located at 750 Daniels Way, P.O. Box 1608, Bloomington, Indiana 47402. Defendant Cook

10 Medical, LLC regularly conducts business in the State of California, and is authorized to do so.

11       8.     Defendant WILLIAM COOK EUROPE APS is based in Bjaeverskov, Denmark and

12 regularly conducts business in the State of California, and is authorized to do so.

13       9.     The Cook Defendants may be served with process upon their registered agent for service:

14 C/O CSC Lawyers Incorporating Service, 50 West Broad Street, Suite 1800, Columbus, Ohio 43215.

15      10.    At all relevant times to this action, Cook Defendants include and included any and all

16 parent companies, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and

17 organizational units of any kind, their predecessors, successors and assigns and their officers, directors,

18 employees, agents, representatives and any and all other persons acting on their behalf.

19      11.    At all relevant times to this action, as further detailed herein, the Cook Defendants, and

20 each of them, were engaged in the business of researching, developing, testing, designing, setting

21 specifications for, licensing, manufacturing, preparing, compounding, assembling, packaging,

22 processing, labeling, marketing, promoting, distributing, selling and/or introducing into interstate

23 commerce and into the State of California, either directly or indirectly through third parties or related

24 entities, the Gunther Tulip inferior vena cava ("IVC") filters, to be implanted in patients throughout the

25 United States, including California, and including the filter implanted in RICHARD CHEUNG, and

26 derived substantial income from doing business in California.

27      12.    Defendants MATTHEW MELL, M.D. and DOES 26 through 40, were and are physicians

28 and surgeons duly licensed to practice medicine in the State of California, with offices located within the

**AMENDED COMPLAINT FOR DAMAGES**

1    County of Santa Clara, State of California, and each of them has held him or herself out to the public,

2    including RICHARD CHEUNG, to possess that degree of skill, ability, and learning common to

3    practitioners in said community.

4        13.    STANFORD HEALTH CARE is a California corporation with a principal place of

5    business located at 300 Pasteur Dr., Stanford, California, County of Santa Clara.  Defendants

6    STANFORD HEALTH CARE and DOES 41 through 50, are and were at all times herein mentioned

7    corporations duly organized and existing under and by virtue of the laws of the State of California

8    and/or authorized to do business and doing business in the County of Santa Clara, State of California.

9        14.    At all relevant times to this action, each of the Medical Defendants was the agent and

10   employee of each of the remaining Medical Defendants and was at all times herein mentioned acting

11   within the scope of said agency and employment.

12       15.    In or around December 2015, Medical Defendants, and each of them, undertook the care,

13   treatment and examinations of Decedent, RICHARD CHEUNG.

14                        **JURISDICTION AND VENUE**

15       16.    This Court has jurisdiction under the California Constitution, Article VI, Section 10 and

16   *Code of Civil Procedure* § 410.10.  Plaintiffs' damages exceed the jurisdictional minimum of this Court.

17       17.    Venue is proper in this Court pursuant to *Code of Civil Procedure* §§ 395 and 395.5

18   because the principal places of business for Defendant Stanford is situated in Santa Clara County.

19   Further, a substantial amount of the defendants' conduct took place in Santa Clara County.

20                        **FACTUAL ALLEGATIONS**

21       18.    Plaintiffs bring this action for damages stemming from the wrongful death of their

22   decedent, RICHARD CHEUNG, as a direct and proximate result of Decedent being implanted with a

23   Cook Gunther Tulip IVC filter by MATTHEW MELL, M.D. at Stanford Hospital in Redwood City,

24   California, on or about December 4, 2015.

25       19.    The Cook Defendants designed, researched, developed, manufactured, tested, marketed,

26   advertised, promoted, distributed, and sell products such as IVC filters that are sold to and marketed to

27   prevent, among other things, recurrent pulmonary embolism via placement in the vena cava.  One such

28

---

4

**AMENDED COMPLAINT FOR DAMAGES**

product of the Cook Defendants' – the Gunther Tulip Filter – is introduced into the vena cava via a coaxial introducer sheath system.

      20.    Cook Defendants sought Food and Drug Administration ("FDA") approval to market the Gunther Tulip IVC filter device and/or its components under Section 510(k) of the Medical Device Amendment.

      21.    Section 510(k) permits the marketing of medical devices if the device is substantially equivalent to other legally marketed predicate devices without formal review for the safety or efficacy of the device. The FDA explained the difference between the 510(k) process and the more rigorous "premarket approval" ("PMA") process in its amicus brief filed with the Third Circuit in *Horn v. Thoratec Corp.*, which the court quoted from:

> A manufacturer can obtain an FDA finding of 'substantial equivalence' by submitting a premarket notification to the agency in accordance with section 510(k) of the [Food Drug and Cosmetic Act]. 21 U.S.C. § 360(k). A device found to be 'substantially equivalent' to a predicate device is said to be 'cleared' by FDA (as opposed to 'approved' by the agency under a PMA).

376 F.3d 163, 167 (3d Cir. 2004) (emphasis in original). A pre-market notification submitted under 510(k) is thus entirely different from the PMA process, which requires data sufficient to demonstrate that the medical device at issue is safe and effective.

      22.    In *Medtronic, Inc. v. Lohr*, the U.S. Supreme Court similarly described the 510(k) process, observing:

> If the FDA concludes on the basis of the [manufacturer's] § 510(k) notification that the device is "substantially equivalent" to a pre-existing device, it can be marketed without further regulatory analysis. . . . The § 510(k) notification process is by no means comparable to the PMA process; in contrast to the 1,200 hours necessary to complete a PMA review, the § 510(k) review is completed in average of 20 hours. . . . As one commentator noted: "The attraction of substantial equivalence to manufacturers is clear. Section 510(k) notification requires little information, rarely elicits a negative response from the FDA, and gets processed quickly."

518 U.S. 470, 478-79 (1996) (quoting Adler, The 1976 Medical Device Amendments: A Step in the Right Direction Needs Another Step in the Right Direction, 43 Food Drug Cosm. L.J. 511, 516 (1988)).

      23.    Pursuant to *Wyeth v. Levine*, 555 U.S. 555 (2009), once a product is cleared "the manufacturer remains under an obligation to investigate and report any adverse events associated with

**AMENDED COMPLAINT FOR DAMAGES**

Case 1:14-ml-02570-RLY-TAB  Document 6038-1  Filed 08/30/17  Page 163 of 202 PageID #:
Case 2:17-cv-02564-NEC  Document 6038-1  Filed 08/04/17  Page 108 of 143 PageID #:
23508

1    the drug . . . and must periodically submit any new information that may affect the FDA's previous

2    conclusions about the safety, effectiveness, or labeling . . . ."  This obligation extends to post-market

3    monitoring of adverse events/complaints.

4         24.     The inferior vena cava is a vein that returns blood to the heart from the lower portions of

5    the body.  In certain people, for various reasons, blood clots travel from the vessels in the legs and

6    pelvis, through the vena cava and into the lungs.  These blood clots can develop in the deep leg veins, a

7    condition called "deep-vein thrombosis" or "DVT."  Once blood clots reach the lungs, they are

8    considered "pulmonary emboli" or "PE."  Pulmonary emboli present risks to human health.

9         25.     An IVC filter, like the Cook Gunther Tulip filter, is designed to prevent thromboembolic

10    events by filtering or preventing blood clots/thrombi from traveling to the heart and/or lungs.

11         26.     The Gunther Tulip IVC filter is a retrievable filter.

12         27.     The Gunther Tulip IVC filter has a top hook and four anchoring struts for fixation.  On

13    each strut, it has a "flower" formation that is shorter than the strut where a wire piece branches out on

14    each side of the strut forming an overall "flower" type formation on each strut.

15         28.     At all times relevant hereto, the Gunther Tulip was widely advertised and promoted by

16    the Cook Defendants as safe and effective treatment for prevention of recurrent pulmonary embolism via

17    placement in the vena cava.

18         29.     At all times relevant hereto, Cook Defendants knew its filters were defective and knew

19    that defect was attributable to the design's failure to withstand the normal anatomical and physiological

20    loading cycles exerted *in vivo*.

21         30.     On or about December 4, 2015, RICHARD CHEUNG was implanted with a Cook

22    Gunther Tulip filter at Stanford Hospital, in Redwood City, California.  The Gunther Tulip placed in Mr.

23    Cheung was a retrievable filter.  Dr. Mell was the physician responsible for the implantation and

24    placement of Mr. Cheung's IVC filter.  The filter was severely tiled which impaired its effectiveness in

25    catching blood clots and preventing pulmonary embolism.

26         31.     On or about December 20, 2015, RICHARD CHEUNG suffered injuries and died

27    unexpectedly from a massive hyperacute pulmonary thromboembolic event with numerous multifocal

28

---

6

**AMENDED COMPLAINT FOR DAMAGES**

1  clots seen in both pulmonary arteries, extending to the pulmonary trunk and right ventricle, as a direct

2  and proximate result of the Cook Gunther Tulip filter device, which was implanted by Dr. Mell.

3       32.    The Cook Defendants represented that the design of the Gunther Tulip filter allows

4  accurate, predictable placement, and that its site struts help reduce the risk of tilting and migration, while

5  in reality the filters regularly tilt, migrate, and become embedded in the vena cava wall. The anchoring

6  mechanism of Cook Defendants' IVC filters, thus, is also insufficient to prevent tilting and migrations

7  post-placement.

8       33.    The configuration of the Gunther Tulip filters renders them prothrombotic. This means

9  that the filters actually leads to the formation of thromboembolism and PE – the exact condition these

10  devices are meant to prevent.

11       34.    A medical device manufacturer must, at a minimum, undertake research and testing to

12  understand the anatomy of where a device will be implanted and understand the forces the device may

13  be exposed to once in a human body. This design input must then be used to determine the minimum

14  safety requirements or attributes the device must have to meet user needs. In the case of an IVC filter,

15  user needs include a device that will capture blood clots of sufficient size to cause harmful consequences

16  and that will not fracture, migrate, tilt, perforate the vena cava, or be prothrombotic. Cook Defendants

17  failed to undertake any such efforts in these regards.

18       35.    Prior to bringing a product to market, a medical device manufacturer must also conduct

19  sufficient testing under real world or simulated use conditions to ensure that the device will meet user

20  needs even when exposed to reasonably foreseeable worst-case conditions. The Cook Defendants failed

21  to adequately establish and maintain such policies, procedures or protocols with respect to the Cook

22  Gunther Tulip IVC filters.

23       36.    Once placed on the market, Cook Defendants' post-market surveillance system revealed,

24  or should have revealed, to the Cook Defendants that the Gunther Tulip filters were unreasonably

25  dangerous and substantially more prone to fail or malfunction, and cause great bodily harm and/or death

26  to patients compared to other available treatment options.

27

28

**AMENDED COMPLAINT FOR DAMAGES**

Exhibit B
Page 160

37.     The Cook Defendants failed to disclose to physicians and patients, including Decedent, that its Gunther Tulip IVC filter was subject to tilt, or the appropriate degree of risk and lack of efficacy a tilted Gunther Tulip filter exposed and provided to patients.

38.     At all times relevant hereto, the Cook Defendants continued to promote the Gunther Tulip filter as safe and effective even though the clinical trials that had been performed were not adequate to support long or short term efficacy.

39.     The Cook Defendants concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the Gunther Tulip IVC filter.

40.     The failure of the Gunther Tulip is attributable, in part, to the fact that the Cook filter suffers from a design defect causing it to be unable to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

41.     At all times relevant hereto the Cook Defendants failed to provide sufficient warnings and instructions that would have put the Decedent and the general public on notice of the dangers and adverse effects caused by implantation of the Gunther Tulip IVC filter, including, but not limited to the design's failure to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

42.     The Cook Gunther Tulip Filter was designed, manufactured, distributed, sold and/or supplied by the Cook Defendants, and was marketed while defective due to the inadequate warnings, instructions, labeling, and/or inadequate testing in light of Cook Defendants' knowledge of the products failure and serious adverse events.

43.     At all times relevant hereto, the officers and/or directors of the Cook Defendants named herein participated in, authorized and/or directed the production and promotion of the aforementioned products when they knew or should have known of the hazardous and dangerous propensities of the said products, and thereby actively participated in the tortuous conduct that resulted in the injuries suffered by the Decedent, RICHARD CHEUNG, as well as his untimely death on December 20, 2015.

44.     On December 15, 2016, Plaintiffs, pursuant to *Code of Civil Procedure* § 364, sent letters of intent to MATTHEW MELL, M.D. and STANFORD HEALTH CARE.  As such, this Complaint is filed within the requirements set forth in *Code of Civil Procedure* § 340.5.

# FIRST CAUSE OF ACTION

## STRICT PRODUCTS LIABILITY – INADEQUATE WARNING

### (As to Cook Defendants)

45. Plaintiffs incorporate by reference all prior allegations.

46. At all relevant times, as set forth, *supra*, Cook Defendants, and each of them, engaged in the business of researching, developing, testing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, packaging, processing, labeling, marketing, promoting, distributing, selling and/or introducing into interstate commerce the Gunther Tulip IVC filters, and, through that conduct, have knowingly and intentionally placed Gunther Tulip IVC filters into the stream of commerce with full knowledge that they reach consumers such as Decedent who would become implanted with one.

47. Cook Defendants did, in fact, research, develop, test, design, set specifications for, license, manufacture, prepare, compound, assemble, package, process, label, market, promote, distribute and/or sell their Gunther Tulip IVC filters to Decedent, his prescribing health care professionals, and the consuming public. Additionally, Cook Defendants expected that the Gunther Tulip IVC filters they were researching, developing, testing, designing, setting specifications for, licensing, manufacturing, preparing, compounding, assembling, packaging, processing, labeling, marketing, promoting, distributing, and/or selling to reach, and did, in fact, reach, prescribing health care professionals and consumers, including Decedent and his prescribing health care professionals, without any substantial change in the condition of the product from when it was initially distributed by Cook Defendants.

48. The Gunther Tulip IVC filters had potential risks and side effects that were known or knowable to the Cook Defendants by the use of scientific inquiry and information available before, at, and after the design, manufacture, labeling, marketing, distribution, and sale of the Gunther Tulip IVC filters.

49. Cook Defendants knew or should have known of the defective condition, characteristics, and risks associated with Gunther Tulip IVC filters prior to, on, and after the date Decedent RICHARD CHEUNG was implanted with a Gunther Tulip IVC filter. These defective conditions included, but were not limited to: (1) Gunther Tulip IVC filters posed a significant and higher risk of failure than other

---

AMENDED COMPLAINT FOR DAMAGES

Case 1:14-ml-02570-RLY-TAB   Document 6039-2   Filed 08/30/17   Page 167 of 202 PageID #:
23512
Case 2:17-cv-02564-NCC   Document 3-2   Filed 08/04/17   Page 170 of 202

1  similar IVC filters (fracture, migration, tilting, and perforation of the vena cava wall); (2) Gunther Tulip

2  IVC filter failures result in serious injuries and death; (3) certain conditions or post-implant procedures,

3  such as morbid obesity or open abdominal procedures, could affect the safety and integrity of Gunther

4  Tulip IVC filters; (4) leaving Gunther Tulip IVC filters in for a period longer than necessary to prevent

5  immediate risk of pulmonary embolism increases the risk for patients of failures and complications with

6  the filter, such as the filter becoming deeply embedded in the vena cava, making them difficult or

7  impossible for removal.

8      50.     The Cook Defendants placed into the stream of commerce for ultimate use by users like

9  Decedent and his health care providers, Gunther Tulip IVC filters that were in an unreasonably

10  dangerous and defective condition due to warnings and instructions for use that were inadequate,

11  including, but not limited to Cook Defendants' failure to:

12          a.  Provide adequate instructions on how to place the filter, including the importance of

13              avoiding tilt during placement;

14          b.  Provide adequate instructions for how long in patients the filter should remain;

15          c.  Highlight the importance of removing the filter;

16          d.  Warn of the known risk of great bodily harm or death if the filter was not removed;

17          e.  Highlight the known risk of great bodily harm or death in the event of occlusion of the

18              vein caused by the filter itself;

19          f.  Warn of the risk of new DVT if the filter was left in too long;

20          g.  Warn of the risk of new pulmonary embolism, thrombosis, swelling, and pain in the

21              lower extremities if the filter was left in too long; and

22          h.  Warn of the risk of filter tilt and associated risks;

23          i.  Warn of the risk of filter perforation, fracture, or migration.

24      51.     Gunther Tulip IVC filters were in a defective and unsafe condition that was unreasonably

25  and substantially dangerous to any user or consumer implanted with Gunther Tulip IVC filters, such as

26  Decedent, when used in an intended or reasonably foreseeable way.

27      52.     The warnings and directions the Cook Defendants provided with their Gunther Tulip IVC

28  filters failed to adequately warn of the potential risks and side effects of the Gunther Tulip IVC filters.

---

10

**AMENDED COMPLAINT FOR DAMAGES**

53. These risks were known or were reasonably scientifically knowable to Cook Defendants, but not known or recognizable to ordinary consumers, such as Decedent or his treating doctors.

54. Cook Defendants' IVC filters were expected to and did reach Decedent without substantial change in their condition, labeling, or warnings as manufactured, distributed, and sold by Cook Defendants.

55. Additionally, Decedent and his physician used Gunther Tulip IVC filters in the manner in which they were intended to be used, making such use reasonably foreseeable to the Cook Defendants.

56. Had Decedent and his implanting physician known of the aforementioned risks and dangers associated with Gunther Tulip IVC filters, as well as the lack of efficacy, and had Cook Defendants provided adequate warnings and information to Decedent and his physicians regarding same, Decedent and his implanting physician would not have used Cook Defendants' Gunther Tulip filters.

57. As a direct and proximate result of the Cook Defendants' information defects, lack of sufficient instructions or warnings prior to, on, and after the date Decedent RICHARD CHEUNG was implanted with a Gunther Tulip IVC filter, Plaintiffs and Decedent suffered Injuries and Damages, and/or Death.

## SECOND CAUSE OF ACTION

## STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT

### (As to Cook Defendants)

58. Plaintiffs incorporate by reference all prior allegations.

59. Prior to, on, and after the date the Gunther Tulip IVC filter was implanted in Decedent, Cook Defendants, and each of them, researched, developed, tested, designed, set specifications for, licensed, manufactured, prepared, compounded, assembled, packaged, processed, labeled, marketed, promoted, distributed, and/or sold the Gunther Tulip IVC filters for use in the United States, including California, and the Gunther Tulip IVC filter implanted in Decedent.

60. At all relevant times, Cook Defendants designed, distributed, manufactured, marketed, and sold Gunther Tulip IVC filters that were unreasonably dangerous, unsafe, and defective in manufacture when they left Cook Defendants' possession.

---

11

AMENDED COMPLAINT FOR DAMAGES

61.     Based on information and belief, Gunther Tulip IVC filters, including that implanted in Decedent, contained manufacturing defects in that they differed from Cook Defendants' design or specifications, or from other typical units of the same product line.

62.     Based on information and belief, the manufacturing process employed by Cook Defendants for their Gunther Tulip IVC filters, including that implanted in Decedent, resulted in surface damage to the wire and weakening of the structural integrity of Cook Defendants' IVC filters, thus increasing the risk of tilt, cracks, fracture, breakage, perforation and migration.

63.     Based on information and belief, the Cook Defendants maintained design and manufacturing specifications that Gunther Tulip IVC filters were required to have the appropriate metal content, strength, size, durability, appearance, resistance levels, and number of inclusions, and should not be distributed if they exhibited a certain degree of surface damage. The manufacturing process was intended to catch and identify any end-product filters that did not meet specifications and not distribute said filters.

64.     The degrees of surface damage present in Decedent's Gunther Tulip IVC filter was above the acceptable level as set by the Cook Defendants' design and manufacturing specifications.

65.     Based on information and belief, Cook Defendants manufactured the conichrome used in the Gunther Tulip IVC filter implanted in Decedent, such that it failed to meet specifications as to the appropriate appearance (e.g., degree of surface blemishes), metal content, strength, and number of inclusions, which substantially increased the risk of, *inter alia*, fatigue failure, perforation, tilt, fracture, and migration in said device.

66.     As a direct and proximate cause of Cook Defendants' defective manufacture of the Gunther Tulip IVC filter implanted in Decedent RICHARD CHEUNG, Plaintiffs and Decedent suffered Injuries and Damages, and/or Death.

/ / /

/ / /

/ / /

---

12

**AMENDED COMPLAINT FOR DAMAGES**

Exhibit B
Page 165

Case 1:14-ml-02570-RLY-TAB-NO Document 8038-1 Filed 08/30/17 Page 170 of 202 PageID #:
Case 2:17-cv-02564-NO Document 8038-1 Filed 06/04/17 Page 170 of 202 PageID #:
23515

### THIRD CAUSE OF ACTION

### NEGLIGENCE

#### (As to Cook Defendants)

67.     Plaintiffs incorporate by reference all prior allegations.

68.     At the time of the design, distribution, manufacture, advertising, sale, and marketing of Gunther Tulip IVC filters and its implantation in Decedent, the Cook Defendants were aware that the Gunther Tulip IVC filters were designed and manufactured in a manner presenting:

    a.   An unreasonable risk of fracture of portions of the filters;

    b.   An unreasonable risk of migration of the filters and/or portions of the filters;

    c.   An unreasonable risk of filters tilting and/or perforating the vena cava wall; and

    d.   Insufficient strength or structural integrity to withstand normal placement within the human body.

69.     At the time of the design, distribution, manufacture, advertising, sale, and marketing of the Gunther Tulip IVC filters, and its implantation in Decedent, Cook Defendants were also aware that Gunther Tulip IVC filters:

    a.   Would be used without inspection for defects;

    b.   Would be used by patients with special medical conditions such as Decedent;

    c.   Had previously caused serious bodily injury to its users with special medical conditions such as Decedent;

    d.   Had no established efficacy;

    e.   Were less safe and effective than the predicate IVC filters already available on market;

    f.   Would be implanted in patients where the risk outweighed any benefit or utility of the filters;

    g.   Contained instructions for use and warnings that were inadequate;

    h.   Were prothrombotic; and

    i.   Were prone to severe tilting.

70.     At the time of manufacture and sale of the Gunther Tulip filters, including the one implanted in Decedent, Cook Defendants knew or should have known that using the Gunther Tulip IVC

**AMENDED COMPLAINT FOR DAMAGES**

1  filters as intended or in a reasonably foreseeable manner created a significant risk of patients suffering

2  severe health side effects including, but not limited to: hemorrhage; cardiac/pericardial tamponade;

3  cardiac arrhythmia and other symptoms similar to myocardial infarction; perforations of tissue, vessels

4  and organs; chronic deep vein thrombosis; pulmonary embolism; thrombosis; compartment syndrome;

5  and other severe personal injuries and diseases, which are permanent in nature, including, but not limited

6  to, death, physical pain and mental anguish, scarring and disfigurement, diminished enjoyment of life,

7  continued medical care and treatment due to chronic injuries/illness proximately caused by the device;

8  and the continued risk of requiring additional medical and surgical procedures including general

9  anesthesia, with attendant risk of life threatening complications.

10       71.    Cook Defendants had a duty to exercise due care and avoid unreasonable risk of harm to

11  others in the design of the Gunther Tulip IVC filters.

12       72.    Cook Defendants breached these duties by, among other things:

13           a.   Designing and distributing a product in which it knew or should have known that the

14                likelihood and severity of potential harm from the product exceeded the burden of taking

15                safety measures to reduce or avoid harm;

16           b.   Designing and distributing a product which it knew or should have known that the

17                likelihood and severity of potential harm from the product exceeded the likelihood of

18                potential harm from other IVC filters available for the same purpose;

19           c.   Failing to perform reasonable pre- and post-market testing of Gunther Tulip IVC filters to

20                determine whether or not the products were safe for their intended use;

21           d.   Failing to use reasonable and prudent care in the design, research, manufacture, and

22                development of Gunther Tulip IVC filters so as to avoid the risk of serious harm

23                associated with the use of such filters;

24           e.   Advertising, marketing, promoting, and selling Gunther Tulip IVC filters for uses other

25                than as approved and indicated in the products' labels;

26           f.   Failing to use reasonable care to warn or instruct, including pre and post-sale, Decedent,

27                his prescribing physicians, or the general health care community about the Gunther Tulip

28

---

14

**AMENDED COMPLAINT FOR DAMAGES**

Case 1:14-ml-02570-RLY-TAB   Document 6039-1   Filed 08/30/17   Page 172 of 202 PageID #:
23517
Case 2:17-cv-02564-NC   Document 3-1   Filed 09/04/17   Page 173 of 196

filters' substantially dangerous condition or about facts making the products likely to be dangerous;

g. Advertising, marketing and recommending the use of the Gunther Tulip filters, while concealing and failing to disclose or warn of the dangers known by Cook Defendants to be connected with and inherent in the use of these filter systems;

h. Representing that the Gunther Tulip filters were safe for their intended use when, in fact, Cook Defendants knew and should have known the products were not safe for their intended uses;

i. Continuing to manufacture and sell the Gunther Tulip filters with the knowledge that said products were dangerous and not reasonably safe, and failing to comply with good manufacturing regulations;

j. Failing to establish an adequate quality assurance program used in the manufacturing of Gunther Tulip IVC filters; and

k. Failing to perform adequate evaluation and testing of Gunther Tulip IVC filters when such evaluation and testing would have revealed the propensity of Gunther Tulip IVC filters to cause injuries similar to those that Decedent suffered.

73.    At all relevant times, Cook Defendants had a duty to exercise due care in the manufacturing of the Gunther Tulip IVC filters.

74.    Cook Defendants breached this duty by, among other things:

a. Failing to adopt manufacturing processes that would reduce the foreseeable risk of product failure;

b. Failing to use reasonable care in manufacturing the product and by producing a product that differed from their design or specifications or from other typical units from the same production line;

c. Failing to use reasonable and prudent care in the design, research, manufacture, and development of Gunther Tulip IVC filters and their manufacturing process so as to avoid the risk of serious harm associated with the use of said filters; and

**AMENDED COMPLAINT FOR DAMAGES**

Case 1:14-ml-02570-RLY-TAB Document 6039-1 Filed 08/30/17 Page 173 of 202 PageID #:
Case 2:17-cv-02564-NC Document 69-2 Filed 08/04/17 Page 116 of 145
23518

<table>
<tr><td>1</td><td>d. Failing to establish an adequate quality assurance program used in the manufacturing of</td></tr>
</table>

   d. Failing to establish an adequate quality assurance program used in the manufacturing of
      their IVC filters.

   75.    At this time, all Gunther Tulip IVC filters are misbranded and adulterated by virtue of
them failing to be the substantial equivalent of predicate IVC filter devices, making them subject to
corrective action, including recall, in the interest of patient safety.

   76.    Prior to, on, and after the date of Decedent's implantation with a Gunther Tulip IVC
filter, and at all relevant times, Cook Defendants knew or reasonably should have known that Gunther
Tulip IVC filters and their warnings were defective and dangerous or were likely to be dangerous when
used in a reasonably foreseeable manner.

   77.    Prior to, on, and after the date of Decedent's implantation with a Gunther Tulip IVC filter
and at all relevant times thereafter, Cook Defendants became aware that the defects of Gunther Tulip
IVC filters resulted in Gunther Tulip IVC filters causing injuries similar to those Decedent suffered.

   78.    Reasonable manufacturers and distributors under the same or similar circumstances
would have recalled or retrofitted Gunther Tulip IVC filters, and would thereby have avoided and
prevented harm to many patients, including Decedent.

   79.    In light of this information and Cook Defendants' knowledge described above, Cook
Defendants had a duty to recall and/or retrofit Gunther Tulip IVC filters.

   80.    The Cook Defendants breached its duty to recall and/or retrofit Gunther Tulip IVC filters.

   81.    At all relevant times, Cook Defendants knew or should have known that Gunther Tulip
IVC filters were defective and dangerous or were likely to be dangerous when used in a reasonably
foreseeable manner.

   82.    Such danger included the propensity of Gunther Tulip IVC filters to cause injuries similar
to those suffered by Decedent.

   83.    At all relevant times, Cook Defendants also knew or reasonably should have known that
the users of Gunther Tulip IVC filters, including Decedent and his health care providers, would not
realize or discover on their own the dangers presented by Gunther Tulip IVC filters.

   84.    Reasonable manufacturers and reasonable distributors, under the same or similar
circumstances as those of Cook Defendants prior to, on, and after the date of Decedent's use of a

**AMENDED COMPLAINT FOR DAMAGES**

1  Gunther Tulip IVC filter, would have warned of the dangers presented by Gunther Tulip IVC filters, or

2  instructed on the safe use of Gunther Tulip IVC filters.

3       85.    Prior to, on, and after the date of Decedent's use of the IVC filter, Cook Defendants had a

4  duty to adequately warn of the dangers presented by Gunther Tulip IVC filters and/or instruct on the

5  safe use of Gunther Tulip IVC filters.

6       86.    The Cook Defendants breached these duties by failing to provide adequate warnings to

7  Decedent RICHARD CHEUNG, communicating the information and dangers described above and/or

8  providing instruction for safe use of Gunther Tulip IVC filters.

9       87.    As a direct and proximate result of Cook Defendants' negligent conduct described herein,

10  Plaintiffs and Decedents suffered Injuries and Damages, and/or Death.

11                  **FOURTH CAUSE OF ACTION**

12                **NEGLIGENT MISREPRESENTATION**

13                  **(As to Cook Defendants)**

14       88.    Plaintiffs incorporate by reference all prior allegations.

15       89.    Prior to, on, and after the dates the Gunther Tulip IVC filter was implanted in Decedent,

16  Cook Defendants, and each of them, researched, developed, tested, designed, set specifications for,

17  licensed, manufactured, prepared, compounded, assembled, packaged, processed, labeled, marketed,

18  promoted, distributed, and/or sold the Gunther Tulip IVC filters for use in the United States, including

19  California, and the Gunther Tulip IVC filter implanted in Decedent.

20       90.    Prior to, on, and after the dates Cook Defendants, and each of them, distributed the

21  Gunther Tulip IVC filter to Decedent through his health care providers, the Cook Defendants

22  negligently and carelessly represented to Decedent, his treating physicians, the medical community, the

23  FDA, and the general public that certain material facts were true when they were, in fact, false. The

24  misrepresentations include, *inter alia*, the following:

25          a.   That the Gunther Tulip IVC filters were safe, fit, and effective for use to prevent PEs.

26          b.   That the Gunther Tulip IVC filters were not prothrombotic.

27

28

**AMENDED COMPLAINT FOR DAMAGES**

Exhibit B
Page 170

Case 1:14-ml-02570-RLY-TAB-N Document 6039-1 Filed 08/04/17 Page 175 of 202 PageID #:
Case 2:14-cv-02564-NC Document 83-2 Filed 08/04/17 Page 175 of 202
23520

    c.  That the design of the Gunther Tulip IVC filters was better than competitor designs and eliminated the risk that pieces of the device could perforate the vena cava, that the devices could tilt, or that fractures could occur and migrate throughout the body.

    d.  That the Gunther Tulip IVC filters were as safe and as effective as the predicate devices set forth in their 510(k) applications to the FDA, which, by law, they were required to be.

    e.  That the Gunther Tulip IVC filters were safer and more effective than other available IVC filters.

    f.  That the Gunther Tulip IVC filters post-market were not found to have any increased risks of device failures or complications, such as tilt, perforation, fracture, migration, retrieval difficulties and/or death.

    91.   All of the aforementioned information and representations emanated from the same source, Cook Defendants, and was vetted by their copy review department (or equivalent) to ensure uniformity and harmony of the marketing message. The manner by which such information and representations were distributed, made available, or otherwise provided by Cook Defendants to Decedent and his health care providers was the same and include, but are not limited to, the following: reports, press releases, advertising campaigns, product information, instructions for use and other labeling materials provided with the Gunther Tulip IVC filters, print advertisements, commercial media containing material representations, as well as through their officers, directors, agents and representatives, including the Cook sales representatives that met with and detailed Decedent's prescribing and implanting physicians on the Gunther Tulip IVC filters, the 510(k) applications by Cook Defendants to the FDA for the Gunther Tulip filters, patient brochures, training seminars hosted by said Defendants, CME materials created and distributed by Cook Defendants, information supplied at professional conferences at booths hosted or manned by Cook Defendants or their Key Opinion Leaders, as well as the websites of Cook Defendants that provided information on the Gunther Tulip IVC filter, including product description, indications for use, instructions for use, and ordering information.

    92.   Decedent's prescribing and implanting physicians reviewed and relied on these materials, including, specifically, the product information, instructions for use, indications for use, and labeling materials provided with these devices, in performing a risk/benefit analysis in deciding to prescribe or

1  recommend use of a Gunther Tulip IVC filter in Decedent, and determining what risk information to

2  inform and discuss with Decedent, as part of the informed consent process.

3      93.   Prior to, on, and after the date Decedents and his physicians purchased and used the

4  device, said representations were untrue at the times they were made, and there was no reasonable

5  ground for Cook Defendants to believe said representations were true when said Defendants made said

6  representations.

7      94.   Prior to, on, and after the date Decedent and his physicians purchased and used the

8  device, Cook Defendants intended that Decedent, his physicians, and the general public would rely on

9  said representations and prescribe the Gunther Tulip IVC filters, which did in fact occur.

10     95.   The Cook Defendants knew or should have known prior to introduction on the market

11 and at the time of submitting the 510(k) applications that these representations were untrue, from their

12 own internal testing, analysis and investigation throughout the design and manufacturing process.

13 Moreover, post-market performance promptly revealed poor outcomes in patients who were suffering

14 failures and adverse events at an increased rate compared to other IVC filters.  This triggered the

15 obligation for further investigation and analysis of the safety and efficacy of the Gunther Tulip IVC

16 filters from the Cook Defendants, which further confirmed that the Gunther Tulip IVC filters were, in

17 fact, inferior in safety and efficacy and posed greater risks of harm and death than other IVC filters on

18 the market, including the predicate devices for the Gunther Tulip.

19     96.   It was known or should have been known by Cook Defendants, at all relevant times, that

20 the Gunther Tulip IVC filters, by way of their design, created and caused these devices to be

21 prothrombotic.  This information was revealed in the Cook Defendants' pre-market testing and analysis,

22 and has been reaffirmed throughout the post-market experience of these products, as reflected by the

23 increased number of these adverse event reports by physicians and published opinions in medical

24 literature.

25     97.   Cook Defendants owed a duty in all of their undertakings, including the dissemination of

26 information concerning its IVC filters, to exercise reasonable care to ensure that they did not in those

27 undertakings create unreasonable risks of personal injury to others.

28

Exhibit B
Page 172

98.     As set forth, *supra*, Cook Defendants disseminated to health care professionals and consumers through published labels, labeling, marketing materials, and otherwise information concerning the properties and effects of Gunther Tulip IVC filters with the intention that health care professionals and consumers would rely upon that information in their decisions concerning whether to prescribe and use Cook Defendants' IVC filters.

99.     The Cook Defendants, as medical device designers, manufacturers, sellers, promoters and/or distributors, knew or should reasonably have known that health care professionals and consumers, in weighing the potential benefits and potential risks of prescribing or using Gunther Tulip IVC filters, would rely upon information disseminated and marketed by Cook Defendants to them regarding the Gunther Tulip IVC filters.

100.     Cook Defendants failed to exercise reasonable care to ensure that the information they disseminated to health care professionals and consumers concerning the properties and effects of Gunther Tulip IVC filters was accurate, complete, and not misleading and, as a result, disseminated information to health care professionals and consumers that was negligently and materially inaccurate, misleading, false, and unreasonably dangerous to consumers such as Decedent.

101.     The Cook Defendants, as designers, manufacturers, sellers, promoters, and/or distributors, also knew or reasonably should have known that patients receiving Gunther Tulip IVC filters as recommended by health care professionals in reliance upon information disseminated by Cook Defendants as the manufacturer/distributor of Defendants' IVC filters would be placed in peril of developing the serious, life-threatening, and life-long injuries including, but not limited to, tilting, migration, perforation, fracture, lack of efficacy, and increased risk of the development of blood clots, if the information disseminated and relied upon was materially inaccurate, misleading, or otherwise false.

102.     The Cook Defendants had a duty to promptly correct material misstatements Cook Defendants' knew others were relying upon in making healthcare decisions. Cook Defendants purposely chose not to, however, in order to maintain their market share and level of competition with other IVC filter manufacturers.

---

**AMENDED COMPLAINT FOR DAMAGES**

Case 1:14-ml-02570-RLY-TAB Document 6033-1 Filed 08/30/17 Page 178 of 202 PageID #:
23523
Case 2:17-cv-02564-NC Document 6033-1 Filed 08/04/17 Page 173 of 202 PageID #:

<ol start="103">
<li>Cook Defendants failed in each of these duties by misrepresenting to Decedent RICHARD CHEUNG, his implanting physician, and the medical community in general, the safety and efficacy of Gunther Tulip IVC filters and failing to correct known misstatements and misrepresentations.</li>
<li>As a direct and proximate result of Cook Defendants' negligent misrepresentations, Plaintiffs and Decedents suffered Injuries and Damages, and/or Death.</li>
</ol>

<h3 align="center">FIFTH CAUSE OF ACTION</h3>

<h3 align="center">FRAUDULENT MISREPRESENTATION</h3>

<strong>(As to Cook Defendants)</strong>

<ol start="105">
<li>Plaintiffs incorporate by reference all prior allegations.</li>
<li>Prior to, on, and after the date the Cook Defendants, and each of them, distributed the Gunther Tulip IVC filters to Decedent's health care providers, Cook Defendants intentionally represented to Decedent, his treating physicians, the medical community, the FDA, and the general public that certain material facts were true when they were, in fact, known by the Cook Defendants to be false and inaccurate. These misrepresentations involved the following topics:</li>
</ol>

    a. The safety of the Gunther Tulip IVC filters;

    b. The efficacy of the Gunther Tulip IVC filters;

    c. The rate of failure of the Gunther Tulip IVC filters;

    d. The adverse event reporting data of the Gunther Tulip IVC filters;

    e. The pre-market testing of the Gunther Tulip IVC filters;

    f. The approved uses of the Gunther Tulip IVC filters; and

    g. The ability to retrieve the device at any time over a person's life.

<ol start="107">
<li>All of the aforementioned information and representations emanated from the same source, Cook, and was vetted by its copy review department (or equivalent) to ensure uniformity and harmony of the marketing message. The manner by which such information and representations were distributed, made available, or otherwise provided by Cook Defendants to Decedent and his health care providers was the same and include, but are not limited to, the following: reports, press releases, advertising campaigns, product information, instructions for use and other labeling materials provided with the Gunther Tulip IVC filters, print advertisements, commercial media containing material</li>
</ol>

<hr>

21<br>
<strong>AMENDED COMPLAINT FOR DAMAGES</strong>

1    representations, as well as through their officers, directors, agents and representatives, such as the Cook

2    sales representatives that met with and detailed Decedent's prescribing physicians on the Gunther Tulip

3    IVC filters, 510(k) applications to the FDA for the Gunther Tulip filters, patient brochures, training

4    seminars hosted by Cook Defendants, CME materials created and distributed by Cook Defendants,

5    information supplied at professional conferences at booths hosted or manned by Cook Defendants or

6    their Key Opinion Leaders, as well as the websites of Cook Defendants that provided information on the

7    Gunther Tulip IVC filter, including product description, indications for use, instructions for use, and

8    ordering information.

9        108.    These sources and materials contained false and misleading material representations,

10   which included:

11       a.  That the Gunther Tulip IVC filters were safe and fit when used for their intended purpose

12           or in a reasonably foreseeable manner;

13       b.  That the Gunther Tulip IVC filters did not pose dangerous health risks in excess of those

14           associated with the use of other similar IVC filters, including the predicate devices for the

15           Gunther Tulip filter;

16       c.  That the design of the Gunther Tulip IVC filters would eliminate the risks that pieces of

17           the device could perforate the vena cava or other organs, that the devices could tilt, or

18           that fractures could occur and migrate throughout the body;

19       d.  That the Gunther Tulip IVC filters were safer and more effective than other available

20           IVC filters;

21       e.  That any and all side effects from the Gunther Tulip IVC filters were accurately reflected

22           in the product information, instructions for use, warnings, and other labeling information

23           provided with the devices;

24       f.  That any and all types of adverse events associated with the Gunther Tulip IVC filters

25           was a class effect and essentially the same among all IVC filters;

26       g.  That the design of the Gunther Tulip IVC filters did not cause or promote blood clots,

27           clotting or occlusion of the IVC filter, or recurrent DVT and/or PE; and

28

Case 1:14-ml-02570-RLY-TAB-NDocument-6033-1 Filed 08/30/17 Page 180 of 202 PageID #:
Case 2:17-cv-02564-NCO Document-63-2 Filed 08/04/17 Page 133 of 146 PageID
23525

h.  That the Gunther Tulip IVC filters were adequately tested pre-market and prior to

submitting the 510(k) applications to the FDA for clearance to withstand normal

placement within the human body.

109.  Cook Defendants made the foregoing misrepresentations knowing that they were false or

without reasonable basis.  As mentioned, *supra*, these materials included instructions for use and a

warning document that was included in each package of the Gunther Tulip IVC filters distributed to

Decedent's implanting physicians and implanted in Decedent.

110.  The Cook Defendants knew prior to introduction on the market and at the time of

submitting the 510(k) applications that these representations were untrue, from their own internal

testing, analysis and investigation throughout the design and manufacturing process.  Moreover, post-

market performance immediately confirmed poor outcomes in patients who were suffering failures and

adverse events at an increased rate compared to other IVC filters.  This triggered the obligation for

further investigation and analysis of the safety and efficacy of the Gunther Tulip IVC filters from Cook

Defendants, which further established that the Gunther Tulip IVC filters were, in fact, inferior in safety

and efficacy and posed greater risks of harm and death than other IVC filters on the market, including

the predicate devices for the Gunther Tulip.

111.  It was known by Cook Defendants, at all relevant times, that the Gunther Tulip IVC

filters, by way of their design, created and caused these devices to be prothrombotic; blood clots,

clotting and occlusion of the Gunther Tulip IVC filters were found to occur at a significantly increased

rate compared to other IVC filters.  This information was revealed in Cook Defendants' pre-market

testing and analysis, and has been reaffirmed throughout the post-market experience of these products,

as reflected by the increased number of these adverse event reports by physicians and published

opinions in medical literature.

112.  The Cook Defendants' intent and purpose in making the aforementioned

misrepresentations was to deceive and defraud the public and the medical community, including the

FDA, and Decedent's health care providers; to gain the confidence of the public and the medical

community, including Decedent's health care providers; to falsely assure the public and the medical

community of the quality of the Gunther Tulip IVC filters and their fitness for use; and to induce the

Exhibit B
Page 176

Case 1:14-ml-02570-RLY-TAB  Document 6038-1  Filed 08/30/17  Page 181 of 202 PageID #:
23526
Case 2:17-cv-02564-NC  Document 63-2  Filed 08/04/17  Page 124 of 146

1   public and the medical community, including Decedent's health care providers to request, recommend,

2   prescribe, implant, purchase, and continue to use the Gunther Tulip filters , all in reliance on said

3   Defendants' misrepresentations, for the ultimate purposes of maintaining a competitive level with other

4   IVC filter manufacturers, gaining market share, and profiting.

5          113.    The foregoing representations and omissions by Cook Defendants were, in fact, false.

6          114.    Cook Defendants acted to serve their own interests and consciously disregarded

7   information generated by or made available to said Defendants establishing the substantial risk that the

8   Gunther Tulip IVC filters could cause great bodily harm and/or death in patients.

9          115.    Decedent's prescribing and implanting physicians reviewed and relied on these

10  aforementioned material misrepresentations, including, specifically, the product information,

11  instructions for use, indications for use, and labeling materials provided with these devices, in

12  performing a risk/benefit analysis in deciding whether to prescribe or recommend use of a Gunther Tulip

13  IVC filter in Decedent, and determining what risk information to inform and discuss with Decedent, as

14  part of the informed consent process.

15         116.    Cook Defendants' IVC filters are not safe, fit, and effective for human use in their

16  intended and reasonably foreseeable manner.

17         117.    Further, the use of Gunther Tulip IVC filters is hazardous to the users' health, and the

18  Gunther Tulip IVC filters have a serious propensity to cause users to suffer serious injuries, including

19  without limitation the injuries Decedent suffered, as well as his death.

20         118.    Finally, Cook Defendants' IVC filters have a statistically significant higher rate of failure

21  and injury than do other comparable IVC filters.

22         119.    In reliance upon the false representations and omissions made by Cook Defendants,

23  Decedent and his health care providers were induced to, and did use the Gunther Tulip IVC filter,

24  thereby causing Decedent to sustain severe personal injuries and death, as described herein.

25         120.    Cook Defendants knew and had reason to know that Decedent, his health care providers,

26  and the general medical community did not have the ability to determine the true facts intentionally

27  concealed and misrepresented by said Defendants, and would not have prescribed and implanted

28

1  Gunther Tulip IVC filters if the true facts regarding Gunther Tulip filters had not been concealed and

2  misrepresented by Cook Defendants.

3      121.    The Cook Defendants had sole access to material facts concerning the defective nature of

4  the Gunther Tulip filters, and their propensities to cause serious and dangerous side effects in the form

5  of dangerous injuries and damages to persons who were implanted with Gunther Tulip IVC filters.

6      122.    At the time Cook Defendants failed to disclose and intentionally misrepresented the

7  foregoing facts, and at the time Decedent was implanted with Gunther Tulip IVC filters, Decedent and

8  his health care providers were unaware of Cook Defendants' misrepresentations and omissions.

9      123.    The aforementioned concealed and misrepresented facts were critical to Decedent's

10  health care provider understanding the true risks and dangers inherent in Gunther Tulip IVC filters;

11  instead, Decedent's physicians reasonably relied upon the misrepresentations made by the Cook

12  Defendants in deciding to implant the Gunther Tulip IVC filter in Decedent.

13      124.    These fraudulent misrepresentations made by Cook Defendants to Decedent's health care

14  providers were a substantial contributing factor in their decision to recommend, use and implant the

15  Gunther Tulip IVC filters in Decedent RICHARD CHEUNG, and in causing Plaintiffs' and Decedents'

16  injuries and damages, and/or death.

17      125.    As a direct and proximate result of the Cook Defendants' fraudulent misrepresentations,

18  Plaintiffs and Decedents suffered Injuries and Damages, and/or Death.

19  **SIXTH CAUSE OF ACTION**

20  **FRAUDULENT CONCEALMENT**

21  **(As to Cook Defendants)**

22      126.    Plaintiffs incorporate by reference all prior allegations.

23      127.    In designing, manufacturing, marketing, distributing and selling the Gunther Tulip IVC

24  filters, the Cook Defendants concealed material facts from Decedent and his healthcare providers.

25      128.    These concealed material facts include, but are not limited to:

26      a.    That the Gunther Tulip IVC filters were unsafe and not fit when used for their intended

27          purpose or in a reasonably foreseeable manner;

28

**AMENDED COMPLAINT FOR DAMAGES**

Case 1:14-cv-02570-RLY-TAB Document 6039-1 Filed 08/30/17 Page 183 of 202 PageID #:
23528
Case 2:17-cv-02564-NC Document 18-2 Filed 08/04/17 Page 126 of 145 PageID #:

b.  That the Gunther Tulip IVC filters posed dangerous health risks in excess of those associated with the use of other similar IVC filters;

c.  That there were additional side effects related to implantation and use of Gunther Tulip IVC filters that were not accurately and completely reflected in the warnings associated with Gunther Tulip IVC filters, including the fact that they are prothrombotic and that tilt could render them ineffective;

d.  That the Gunther Tulip IVC filters were not adequately tested to withstand normal placement within the human body;

e.  That Cook Defendants were aware prior to, on, and after the date the Gunther Tulip IVC filter was distributed and implanted in Decedent that electropolishing strengthened the structural integrity of the Gunther Tulip IVC filters, thereby reducing the risk of fracture.

129.    Decedent and his health care providers were not aware of these and other facts concealed by Cook Defendants.

130.    Cook Defendants are and were under a continuing duty to disclose the true character, quality and nature of the Gunther Tulip IVC filters that was implanted in Decedent, but, instead, they concealed them, at all relevant times.  Cook Defendants' conduct, as described herein, arises to purposeful conduct, which the Cook Defendants realized was dangerous, reckless and without regard to the consequences or the rights and safety of Decedent.

131.    In concealing these and other facts, Cook Defendants intended to deceive Decedent and his health care providers as to the true facts regarding the safety and efficacy of the Gunther Tulip IVC filters.

132.    Decedent and his health care providers were ignorant of and could not reasonably discover the facts Cook Defendants fraudulently concealed and reasonably and justifiably relied on Cook Defendants' representations concerning the supposed safety and efficacy of Gunther Tulip IVC filters.

133.    Decedent's prescribing and implanting physicians did, in fact, review and rely on the product inserts provided by Cook Defendants with the Gunther Tulip IVC filters prior to prescribing one for Decedent, for the purpose of making a risk/benefit assessment as to whether to prescribe or

Exhibit B
Page 179

Case 1:14-ml-02570-RLY-TAB   Document 6038-1   Filed 08/30/17   Page 184 of 202 PageID #:
23529
Case 2:17-cv-02564-NCOcument 6038-1   Filed 08/04/17   Page 124 of 142

1  recommend the Gunther Tulip filters, and determining what risk information to share and discuss with

2  Decedent.

3       134.    Decedent and his prescribing and implanting physicians reasonably and justifiably relied

4  on Cook Defendants' concealments and deception.

5       135.    Decedent's health care providers would not have prescribed, recommended, or otherwise

6  used the Gunther Tulip IVC filters to or with Decedent RICHARD CHEUNG, had Cook Defendants not

7  concealed the material information about the risks and efficacy, as set forth herein.

8       136.    As a direct and proximate result of Cook Defendants' fraudulent concealment of material

9  facts, Plaintiffs and Decedents suffered Injuries and Damages, and/or Death.

10  **SEVENTH CAUSE OF ACTION**

11  **BREACH OF EXPRESS WARRANTY**

12  **(As to Cook Defendants)**

13       137.    Plaintiffs incorporate by reference all prior allegations.

14       138.    Decedent, through his medical providers, purchased a Gunther Tulip IVC filter from

15  Cook Defendants.

16       139.    At all relevant times, Cook Defendants were merchants of goods of the kind including

17  medical devices and vena cava filters (i.e., Gunther Tulip IVC filters).

18       140.    At the time and place of sale, distribution, and supply of Gunther Tulip IVC filters to

19  Decedent (and to other consumer and the medical community), Cook Defendants expressly represented

20  and warranted that Gunther Tulip IVC filters:

21       a.   Were safe;

22       b.   Were well-tolerated, efficacious, fit for their intended purpose, and of marketable quality;

23       c.   Did not produce any unwarned-of dangerous side effects; and

24       d.   Were adequately tested.

25       141.    These express representations were set forth by Cook Defendants in package inserts for

26  Gunther Tulip IVC filters and media advertisements.

27

28

**AMENDED COMPLAINT FOR DAMAGES**

Exhibit B
Page 180

142.     At the time of Decedent's purchase from Cook Defendants, Gunther Tulip IVC filters were not in a merchantable condition, and Cook Defendants breached its expressed warranties, in that Gunther Tulip IVC filters, among other things:

    a.  Were designed in such a manner so as to be prone to an unreasonably high incidence and severity of tilt, fracture, perforation of vessels and organs, and/or migration;

    b.  Were designed in such a manner so as to result in a unreasonably high incidence of injury to the vessels and organs of its purchaser;

    c.  Were manufactured in such a manner that the exterior surface of the filter was inadequately, improperly, and inappropriately constituted, causing the device to weaken and fail;

    d.  Were unable to be removed at any time during a person's life;

    e.  Were not efficacious in the prevention of pulmonary emboli;

    f.  Carried a risk of use that outweighed any benefit; and

    g.  Were not self-centering.

143.     As a direct and proximate result of Cook Defendants' breach of express warranty, Plaintiffs and Decedent suffered Injuries and Damages, and/or Death.

## EIGHTH CAUSE OF ACTION

## MEDICAL MALPRACTICE

### (As to Medical Defendants)

144.     Plaintiffs incorporate by reference all prior allegations.

145.     Plaintiffs further allege that in the aforementioned examinations, diagnoses, prescriptions, surgery and the handling and control of the care and treatment of Decedent, RICHARD CHEUNG, by Medical Defendants, and each of them, said Medical Defendants, and each of them, negligently and tortiously failed to possess or exercise that degree of knowledge or skill that would ordinarily be possessed and exercised by physicians and surgeons, hospitals, nurses, surgical technicians, attendants, medical clinics, and the like, engaged in said professions in the same locality as Medical Defendants, and each of them, in that said Medical Defendants, and each of them, negligently and unlawfully failed to properly and correctly diagnose, render care and treatment to, obtain informed consent, perform

Exhibit B
Page 181

1     proper surgery on, and prescribe and administer medicine and drugs for the condition of Decedent,

2     RICHARD CHEUNG, causing his death on or about December 20, 2015.

3          146.    On or about December 4, 2015, Decedent underwent an implant procedure at Stanford

4     Hospital in Redwood City, California for placement of a Gunther Tulip filter by Defendants

5     MATTHEW MELL, M.D. and Stanford, through its agents and employees, and DOES 26 through 50.

6     Dr. Mell improperly and negligently failed to appropriately implant the filter, but instead placed it in a

7     severely tilted position and failed to make any reasonable efforts to correct the dangerous tilting or take

8     other medically recognized measures, all of which was below the accepted medical standard of care in

9     the community.

10          147.    Further, Dr. Mell negligently and unlawfully failed to advise other treating specialists of

11     RICHARD CHEUNG of the severe tilt of his filter and the serious and deadly risks associated with a

12     tilted filter. The other treating specialists included Dr. Gary Steinberg in neurosurgery for Mr. Cheung's

13     moyamoya disease which involved the risk of stroke without a surgical craniotomy, and the monitoring

14     of his pre-existing hypercoagulation disorder (which is a type of hyperclotting abnormality) by Dr.

15     Caroline Berube in hematology. These other treating physicians were tasked with making the difficult

16     and close decision regarding whether to proceed with surgical craniotomy in less than three (3) months

17     after an earlier pulmonary embolism, or wait the customary standard of care six (6) months after a

18     pulmonary embolism event had passed before performing the craniotomy surgery. The other treating

19     physicians opted for the early surgery date knowing that the anticoagulation medication successfully

20     controlling Mr. Cheung's clotting disorder had to be stopped prior to surgery to avoid a bleeding risk

21     because they relied instead on the protective capability of a properly implanted filter until

22     anticoagulation could safely be resumed after surgery. Although the hematologist proceeded in an

23     aggressive but prudent manner during the period of her care, and the craniotomy surgery provided

24     excellent results to Mr. Cheung, the surgical success was entirely undermined by the condition of the

25     severely tilted filter which was well known by Dr. Mell at all times material hereto, but unknown by the

26     other treating specialists.

27

28

**AMENDED COMPLAINT FOR DAMAGES**

Case 1:14-ml-02570-RLY-TAB   Document 6039-1   Filed 08/30/17   Page 187 of 202 PageID #:
23532
Case 2:17-cv-02564-NC   Document 23-2   Filed 08/04/17   Page 130 of 146

148.     Additionally, Dr. Mell's failure to properly warn Decedent and other treating physicians involved in Mr. Cheung's care of the severely tilted filter and related risks resulted in a lack of informed consent to surgery by Mr. Cheung and his wife, DARA BERMAN-CHEUNG.

149.     As a direct and proximate result of the negligence, carelessness, recklessness, wantonness and unlawfulness of the Medical Defendants and each of them, and the resulting death, as aforesaid, Plaintiffs DARA BERMAN-CHEUNG, SAM BERMAN CHEUNG and BAILEY BERMAN CHUNG have suffered and continue to suffer from a life-altering tragedy and resulting damages in a sum within the jurisdiction of this Court and to be shown according to proof.

150.     As a direct and proximate result of the acts and omissions of Medical Defendants, and each of them, Plaintiffs have incurred expenses for the funeral and burial of Decedent, RICHARD CHEUNG, the exact value and amount of which will be shown according to proof.

151.     As a further direct and proximate result of the acts and omission of Medical Defendants, and each of them, Plaintiffs have been damaged in that each has been deprived of the care, comfort, society, protection, support, love, and services of Decedent, RICHARD CHEUNG, all to their damage in a sum according to proof at the time of trial and in excess of the minimum jurisdictional limit of this court.

152.     As a further direct and proximate result of the acts and omissions of Medical Defendants, and each of them, Plaintiffs have sustained and will in the future sustain loss of financial support from Decedent, RICHARD CHEUNG, and the value of Decedent's services to Plaintiffs in an amount to be shown according to proof.

### NINTH CAUSE OF ACTION

### SURVIVAL ACTION

#### (As to All Defendants)

153.     Plaintiffs incorporate by reference all prior allegations.

154.     DARA BERMAN-CHEUNG, SAM BERMAN CHEUNG and BAILEY BERMAN CHEUNG are the successors-in-interest to Decedent, RICHARD CHEUNG.

155.     As a direct and proximate result of the wrongful acts and omissions of the defendants, as alleged herein, Decedent suffered personal injuries for which he was required to and did employ

Case 1:14-ml-02570-RLY-TAB   Document 6038-1   Filed 08/30/17   Page 188 of 202 PageID #:
Case 2:17-cv-02564-NC   Document 38-1   Filed 08/04/17   Page 188 of 202
23533

1    physicians and other health care providers to examine, treat and care for him.  As a further proximate

2    result, RICHARD CHEUNG experienced significant pain and suffering prior to his death, and incurred

3    medical and incidental expenses, as well as lost wages.

### TENTH CAUSE OF ACTION

### WRONGFUL DEATH

#### (As to All Defendants)

7        156.    Plaintiffs incorporate by reference all prior allegations.

8        157.    RICHARD CHEUNG was prescribed, supplied with, received, took, used and was

9    implanted with a Gunther Tulip IVC filter product as tested, studied, researched, evaluated, endorsed,

10   designed, formulated, compounded, manufactured, produced, processed, assembled, inspected,

11   distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed, sold or otherwise

12   placed in the stream of interstate commerce by Cook Defendants, and as implanted by Medical

13   Defendants.

14       158.    The fatal injuries and damages of Decedent were caused by the wrongful acts, omissions,

15   and fraudulent misrepresentations of Defendants, as described herein.

16       159.    As a result of the conduct of Defendants and the use of Defendants' IVC filters, Decedent

17   suffered catastrophic and ultimately fatal injuries.

18       160.    As a result of the death of Decedent, Plaintiffs were deprived of love, companionship,

19   comfort, affection, society, solace and moral support of their loved one, RICHARD CHEUNG.

20       161.    Plaintiffs, as the surviving and legal heirs to Decedent are entitled to recover economic

21   and non-economic damages against all Defendants for wrongful death directly and legally caused by the

22   defects in Defendants' IVC filters, and the negligent conduct, acts, errors, omissions and/or intentional

23   and/or negligent misrepresentations of Defendants, and each of them, as alleged throughout this

24   Complaint for Damages.

25

26

27   ///

28   ///

---

31

AMENDED COMPLAINT FOR DAMAGES

Case 1:14-ml-02570-RLY-TAB Document 6038-2 Filed 08/30/17 Page 189 of 202 PageID #:
Case 2:17-cv-02564-NEC Document 6038-2 Filed 08/04/17 Page 189 of 202 PageID #:
23534

<table>
<tr><td>1</td><td></td></tr>
</table>

## PUNITIVE DAMAGES ALLEGATIONS

### (As to Cook Defendants)

162. Plaintiffs incorporate by reference all prior allegations.

163. At all times material hereto, Cook Defendants knew or should have known that Gunther Tulip IVC filters were unreasonably dangerous with respect to the risk of tilt, fracture, migration and/or perforation.

164. At all times material hereto, Cook Defendants attempted to misrepresent and did knowingly misrepresent facts concerning the safety of Gunther Tulip IVC filters.

165. Cook Defendants' misrepresentations included knowingly withholding material information from the medical community and the public, including Decedent's physicians, concerning the safety of its Gunther Tulip IVC filters. Data establishes that the failure rates of the filters are and were much higher than what Cook Defendants have in the past and currently continue to publish to the medical community and members of the public.

166. Cook Defendants' conduct, alleged throughout this Complaint, was willful, wanton, and undertaken with a conscious indifference and disregard to the consequences that consumers of their products faced, including Decedent. Cook Defendants had actual knowledge of the dangers presented by Gunther Tulip IVC filters, yet consciously failed to act reasonably to inform or warn Decedent, his physicians, or the public at large of these dangers. Cook Defendants consciously failed to establish and maintain an adequate quality and post-market surveillance system.

167. At all times material hereto, Cook Defendants knew and recklessly disregarded the fact that Gunther Tulip IVC filters have an unreasonably high rate of tilt, fracture, migration, and/or perforation.

168. Notwithstanding the foregoing, Cook Defendants continued to market Gunther Tulip IVC filters aggressively to consumers, including Decedent, without disclosing the aforesaid side effects.

169. Cook Defendants knew of their Gunther Tulip IVC filters' lack of warnings regarding the risk of tilt, fracture, migration, and/or perforation, but intentionally concealed and/or recklessly failed to disclose that risk and continued to market, distribute, and sell its filters without said warnings so as to

Exhibit B
Page 185

1   maximize sales and profits at the expense of the health and safety of the public, including Decedent, in
2   conscious disregard of the foreseeable harm caused by Gunther Tulip IVC filters.

3       170.    Cook Defendants' intentional and/or reckless failure to disclose information deprived
4   Decedent's physicians of necessary information to enable them to weigh the true risks of using Gunther
5   Tulip IVC filters against its benefits.

6       171.    Cook Defendants' conduct is reprehensible, evidencing an evil hand guided by an evil
7   mind and was undertaken for pecuniary gain in reckless and conscious disregard for the substantial risk
8   of death and physical injury to consumers, including Decedent.

9       172.    Such conduct justifies an award of punitive or exemplary damages in an amount
10  sufficient to punish Cook Defendants' conduct and deter like conduct by Cook Defendants and other
11  similarly situated persons and entities in the future.

12                          **PRAYER FOR DAMAGES**

13      WHEREFORE, Plaintiffs demand judgment against Defendants for:

14      a.      General (non-economic) damages, including, without limitation, past and future pain and
15  suffering; past and future emotional distress; past and future loss of enjoyment of life; and other
16  consequential damages as allowed by law;

17      b.      Special (economic) damages, including, without limitation, past and future medical
18  expenses; past and future lost wages and loss of earning capacity; and other consequential damages as
19  allowed by law;

20      c.      Punitive damages (only as to the Cook Defendants) in an amount sufficient to punish
21  Cook Defendants and deter similar conduct in the future;

22      d.      Costs of suit;

23      e.      Prejudgment interest as allowed by law;

24      f.      Post-judgment interest at the highest applicable statutory or common law rate from the
25  date of judgment until satisfaction of judgment; and

26      g.      Such other additional and further relief as Plaintiffs may be entitled to in law or in equity.

27

28  / / /

---

Case 1:14-ml-02570-RLY-TAB   Document 6038-1   Filed 08/30/17   Page 191 of 202 PageID #:
23536
Case 2:17-cv-02564-NC   Document 9-2   Filed 08/04/17   Page 134 of 146

1

## DEMAND FOR JURY TRIAL

2      Plaintiffs demand a trial by jury on all triable issues.

3

4   Dated: March 20, 2017                    Respectfully submitted,

5                                             LOPEZ McHUGH LLP

6

7

8   By: _____
                                             Ramon Rossi Lopez
9                                            Matthew R. Lopez
                                             Amorina P. Lopez
10                                           Nicholas R. Graham

11                                           Attorneys for Plaintiffs DARA BERMAN-
                                             CHEUNG, SAM BERMAN CHEUNG and
12                                           BAILEY BERMAN CHUNG

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case 1:14-ml-02570-RLY-TAB Document 6038-1 Filed 08/30/17 Page 192 of 202 PageID #:
Case 5:17-cv-02564-NC Document 6038-1 Filed 08/04/17 Page 135 of 145 PageID #:
23537

CIV-010

| ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Ramon Rossi Lopez (SBN 86361)<br>Matthew Ramon Lopez (SBN 263134)<br>LOPEZ McHUGH LLP<br>100 Bayview Circle, Ste. 5600, Newport Beach, CA 92660<br>TELEPHONE NO.: (949) 737-1501  FAX NO. (Optional): (949) 737-1504<br>E-MAIL ADDRESS (Optional): rlopez@lopezmchugh.com/mlopez@lopezmchugh.com<br>ATTORNEY FOR (Name): Plaintiffs | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 191 North First Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose, CA 95113
BRANCH NAME: Downtown Superior Courthouse

**RECEIVED**
MAR 16 2017
Clerk of the Court
Superior Court of CA County of Santa Clara
BY_____DEPUTY

PLAINTIFF/PETITIONER: DARA BERMAN-CHEUNG, etc., et al.

DEFENDANT/RESPONDENT: COOK GROUP, INC., etc., et al.

| APPLICATION AND ORDER FOR APPOINTMENT<br>OF GUARDIAN AD LITEM—CIVIL<br>☑ EX PARTE | CASE NUMBER:<br>17CV307373 |
|---|---|

**NOTE:** *This form is for use in civil proceedings in which a party is a minor, an incapacitated person, or a person for whom a conservator has been appointed. A party who seeks the appointment of a guardian ad litem in a family law or juvenile proceeding should use form FL-935. A party who seeks the appointment of a guardian ad litem in a probate proceeding should use form DE-350/GC-100. An individual cannot act as a guardian ad litem unless he or she is represented by an attorney or is an attorney.*

1. Applicant (name): Dara Berman-Cheung                                is
   a. ☑ the parent of (name): Sam Berman Cheung
   b. ☐ the guardian of (name):
   c. ☐ the conservator of (name):
   d. ☑ a party to the suit.
   e. ☐ the minor to be represented (if the minor is 14 years of age or older).
   f. ☐ another interested person (specify capacity):

2. This application seeks the appointment of the following person as guardian ad litem (state name, address, and telephone number):
   Dara Berman-Cheung
   3186 Mountview Road
   Columbus, OH 43221

3. The guardian ad litem is to represent the interests of the following person (state name, address, and telephone number):
   Sam Berman Cheung
   3186 Mountview Road
   Columbus, OH 43221

4. The person to be represented is:
   a. ☑ a minor (date of birth): October 17, 2003
   b. ☐ an incompetent person.
   c. ☐ a person for whom a conservator has been appointed.

5. The court should appoint a guardian ad litem because:
   a. ☑ the person named in item 3 has a cause or causes of action on which suit should be brought (describe):
      Medical Negligence, Product Liability, Wrongful Death, and Survival Action

☐ Continued on Attachment 5a.

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-010 [Rev. January 1, 2008] | APPLICATION AND ORDER FOR APPOINTMENT<br>OF GUARDIAN AD LITEM—CIVIL | Code of Civil Procedure,<br>§ 372 et seq. |
|---|---|---|

BY FAX

CIV-010

| PLAINTIFF/PETITIONER: DARA BERMAN-CHEUNG, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: COOK GROUP, INC., etc., et al. | |

5. b. ☐ more than 10 days have elapsed since the summons in the above-entitled matter was served on the person named in item 3, and no application for the appointment of a guardian ad litem has been made by the person identified in item 3 or any other person.

 c. ☑ the person named in item 3 has no guardian or conservator of his or her estate.

 d. ☑ the appointment of a guardian ad litem is necessary for the following reasons *(specify)*:

 Sam Berman Cheung is a minor under the age of 14 and, along with his mother and sister, has a claim for damages against defendants for the wrongful death of his father, Richard Cheung,

 ☐ Continued on Attachment 5d.

6. The proposed guardian ad litem's relationship to the person he or she will be representing is:
 a. ☑ related *(state relationship)*: Mother
 b. ☐ not related *(specify capacity)*:

7. The proposed guardian ad litem is fully competent and qualified to understand and protect the rights of the person he or she will represent and has no interests adverse to the interests of that person. *(If there are any issues of competency or qualification or any possible adverse interests, describe and explain why the proposed guardian should nevertheless be appointed)*:

 ☐ Continued on Attachment 7.

Matthew Ramon Lopez
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF ATTORNEY)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 3|13|2017

Dara Berman-Cheung
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF APPLICANT)

**CONSENT TO ACT AS GUARDIAN AD LITEM**

I consent to the appointment as guardian ad litem under the above petition.

Date: 3|13|2017

Dara Berman-Cheung
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PROPOSED GUARDIAN AD LITEM)

**ORDER** ☐ **EX PARTE**

THE COURT FINDS that it is reasonable and necessary to appoint a guardian ad litem for the person named in item 3 of the application, as requested.

THE COURT ORDERS that *(name)*:
is hereby appointed as the guardian ad litem for *(name)*:
for the reasons set forth in item 5 of the application.

Date:

_____
JUDICIAL OFFICER
☐ SIGNATURE FOLLOWS LAST ATTACHMENT

| | | |
|---|---|---|
| CIV-010 [Rev. January 1, 2008] | **APPLICATION AND ORDER FOR APPOINTMENT OF GUARDIAN AD LITEM—CIVIL** | Page 2 of 2 |

Case 1:14-ml-02570-RLY-TAB   Document 6038-1   Filed 08/30/17   Page 194 of 202 PageID #:
Case 2:17-cv-02564-NCC   Document 6038-1   Filed 08/04/17   Page 134 of 142 PageID #:
23539

# SANTA CLARA COUNTY SUPERIOR COURT
## ALTERNATIVE DISPUTE RESOLUTION
## INFORMATION SHEET

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

*What is ADR?*
ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

*What are the advantages of choosing ADR instead of litigation?*
ADR can have a number of advantages over litigation:

- **ADR can save time.** A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

- **ADR can save money.** Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

- **ADR provides more participation.** Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

- **ADR provides more control and flexibility.** Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

- **ADR can reduce stress.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

*What are the main forms of ADR offered by the Court?*
**Mediation** is an informal, confidential, flexible and non-binding process in the mediator helps the parties to understand the interests of everyone involved, and their practical and legal choices. The mediator helps the parties to communicate better, explore legal and practical settlement options, and reach an acceptable solution of the problem. The mediator does not decide the solution to the dispute; the parties do.

Mediation may be appropriate when:
- The parties want a non-adversary procedure
- The parties have a continuing business or personal relationship
- Communication problems are interfering with a resolution
- There is an emotional element involved
- The parties are interested in an injunction, consent decree, or other form of equitable relief

**Neutral evaluation**, sometimes called "Early Neutral Evaluation" or "ENE", is an informal process in which the evaluator, an experienced neutral lawyer, hears a compact presentation of both sides of the case, gives a non-binding assessment of the strengths and weaknesses on each side, and predicts the likely outcome. The evaluator can help parties to identify issues, prepare stipulations, and draft discovery plans. The parties may use the neutral's evaluation to discuss settlement.

Neutral evaluation may be appropriate when:
- The parties are far apart in their view of the law or value of the case
- The case involves a technical issue in which the evaluator has expertise
- Case planning assistance would be helpful and would save legal fees and costs
- The parties are interested in an injunction, consent decree, or other form of equitable relief

*-over-*

**Arbitration** is a less formal process than a trial, with no jury. The arbitrator hears the evidence and arguments of the parties and then makes a written decision. The parties can agree to binding or non-binding arbitration. In binding arbitration, the arbitrator's decision is final and completely resolves the case, without the opportunity for appeal. In non-binding arbitration, the arbitrator's decision could resolve the case, without the opportunity for appeal, unless a party timely rejects the arbitrator's decision within 30 days and requests a trial. Private arbitrators are allowed to charge for their time.

Arbitration may be appropriate when:
- The action is for personal injury, property damage, or breach of contract
- Only monetary damages are sought
- Witness testimony, under oath, needs to be evaluated
- An advisory opinion is sought from an experienced litigator (if a non-binding arbitration)

**Civil Judge ADR** allows parties to have a mediation or settlement conference with an experienced judge of the Superior Court. Mediation is an informal, confidential, flexible and non-binding process in which the judge helps the parties to understand the interests of everyone involved, and their practical and legal choices. A settlement conference is an informal process in which the judge meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations. The request for mediation or settlement conference may be made promptly by stipulation (agreement) upon the filing of the Civil complaint and the answer. There is no charge for this service.

Civil Judge ADR may be appropriate when:
- The parties have complex facts to review
- The case involves multiple parties and problems
- The courthouse surroundings would he helpful to the settlement process

**Special masters and referees** are neutral parties who may be appointed by the court to obtain information or to make specific fact findings that may lead to a resolution of a dispute.
Special masters and referees can be particularly effective in complex cases with a number of parties, like construction disputes.

**Settlement conferences** are informal processes in which the neutral (a judge or an experienced attorney) meets with the parties or their attorneys, hears the facts of the dispute, helps identify issues to be resolved, and normally suggests a resolution that the parties may accept or use as a basis for further negotiations.
Settlement conferences can be effective when the authority or expertise of the judge or experienced attorney may help the parties reach a resolution.

*What kind of disputes can be resolved by ADR?*
Although some disputes must go to court, almost any dispute can be resolved through ADR. This includes disputes involving business matters; civil rights; collections; corporations; construction; consumer protection; contracts; copyrights; defamation; disabilities; discrimination; employment; environmental problems; fraud; harassment; health care; housing; insurance; intellectual property; labor; landlord/tenant; media; medical malpractice and other professional negligence; neighborhood problems; partnerships; patents; personal injury; probate; product liability; property damage; real estate; securities; sports; trade secret; and wrongful death, among other matters.

*Where can you get assistance with selecting an appropriate form of ADR and a neutral for your case, information about ADR procedures, or answers to other questions about ADR?*

*Contact:*

Santa Clara County Superior Court          Santa Clara County DRPA Coordinator
ADR Administrator                          408-792-2784
408-882-2530

**ALTERNATIVE DISPUTE RESOLUTION INFORMATION SHEET
CIVIL DIVISION**

ATTACHMENT CV-5012

# CIVIL LAWSUIT NOTICE

*Superior Court of California, County of Santa Clara*
*191 North First St., San José, CA  95113*

CASE NUMBER: _____ **1 7 C V 3 0 7 3 7 3**

### PLEASE READ THIS ENTIRE FORM

*PLAINTIFF* (the person suing):  Within 60 days after filing the lawsuit, you must serve each Defendant with the *Complaint, Summons*, an *Alternative Dispute Resolution (ADR) Information Sheet*, and a copy of this *Civil Lawsuit Notice*, and you must file written proof of such service.

---

*DEFENDANT* (The person sued):  **You must do each of the following to protect your rights:**

1. You must file **a written response** to the *Complaint, using the proper legal form or format,* in the Clerk's Office of the Court, within **30 days** of the date you were served with the *Summons* and *Complaint*;
2. You must serve by mail  a copy of your written response on the  Plaintiff's attorney or on the Plaintiff if Plaintiff has no attorney (to "serve by mail" means to have an adult other than yourself mail a copy); and
3. You must attend the first Case Management Conference.

   **Warning:  If you, as the Defendant, do not follow these instructions, you may automatically lose this case.**

---

*RULES AND FORMS:*  You must follow the California Rules of Court and the Superior Court of California, County of Santa Clara Local Civil Rules and use proper forms.  You can obtain legal information, view the rules and receive forms, free of charge, from the Self-Help Center at 201 North First Street, San José (408-882-2900 x-2926).

- State Rules and Judicial Council Forms:  www.courts.ca.gov/forms.htm and www.courts.ca.gov/rules.htm
- Local Rules and Forms:  www.scscourt.org

*CASE MANAGEMENT CONFERENCE (CMC):*  You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC.  You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

*You or your attorney must appear at the CMC.  You may ask to appear by telephone – see Local Civil Rule 8.*

---

*Your Case Management Judge is:* _____ **Maureen Folan** _____ *Department:* ____ **8** ____

The 1st CMC is scheduled for:  (Completed by Clerk of Court)

   *Date:* _____ JUL 1 1 2017 _____  *Time:* __**3:00pm**__  in Department: ____ **8** ____

*The next CMC is scheduled for:*  (Completed by party if the 1st CMC was continued or has passed)

   *Date:* _____  *Time:* _____  in Department: _____

---

*ALTERNATIVE DISPUTE RESOLUTION (ADR):*  If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.scscourt.org or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

*WARNING:*  Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: Ramon Rossi Lopez, SBN 86361; Matthew Ramon Lopez, SBN 263134; Amorina Patrice Lopez, SBN 278002; Nicholas Robert Graham, SBN 307330 Lopez McHugh LLP 100 Bayview Circle, Suite 5600, Newport Beach, CA 92660 | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: (949) 737-1501   FAX NO.: (949) 737-1504 ATTORNEY FOR *(Name)*: Plaintiff Dara Berman-Cheung, et al. | ENDORSED<br><br>2017 MAR 16  A 8: 58<br><br>CLERK OF THE COURT<br>SUPERIOR COURT OF CA.<br>COUNTY OF SANTA CLARA<br>BY _____ DEPUTY |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF Santa Clara<br>STREET ADDRESS: 191 North First Street<br>MAILING ADDRESS: 191 North First Street<br>CITY AND ZIP CODE: San Jose, 95113<br>BRANCH NAME: Downtown Superior Court | |
| CASE NAME:<br>Dara Berman-Cheung, et al. v. Cook Group Inc., et al. | |

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: 17CV307373 |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter | [ ] Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[✓] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is   [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply)*: a. [✓] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [✓] punitive
4. Number of causes of action *(specify)*: Ten
5. This case [ ] is   [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: March 15, 2017

Matthew Ramon Lopez
_____
(TYPE OR PRINT NAME)                                         (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use Judicial Council of California CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; Cal. Standards of Judicial Administration, std. 3.10 www.courtinfo.ca.gov |
|---|---|---|

BY FAX

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice– Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/ Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award *(not unpaid taxes)*
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint Case *(non-tort/non-complex)*
Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Exhibit B
Page 194

Case 1:14-ml-02570-RLY-TAB Document 6038-1 Filed 08/30/17 Page 199 of 202 PageID #:
Case 2:17-cv-02564-NEC Document 3-2 Filed 08/04/17 Page 142 of 145
23544

CIV-010

| ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Ramon Rossi Lopez (SBN 86361)<br>Matthew Ramon Lopez (SBN 263134)<br>LOPEZ McHUGH LLP<br>100 Bayview Circle, Ste. 5600, Newport Beach, CA 92660<br>TELEPHONE NO.: (949) 737-1501  FAX NO. (Optional): (949) 737-1504<br>E-MAIL ADDRESS (Optional): rlopez@lopezmchugh.com/mlopez@lopezmchugh.com<br>ATTORNEY FOR (Name): Plaintiffs | **RECEIVED**<br>**MAR 16 2017**<br>Clerk of the Court<br>Superior Court of CA County of Santa Clara<br>BY_____DEPUTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 191 North First Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose, CA 95113
BRANCH NAME: Downtown Superior Courthouse

PLAINTIFF/PETITIONER: DARA BERMAN-CHEUNG, et al.

DEFENDANT/RESPONDENT: COOK GROUP INC., etc., et al.

| APPLICATION AND ORDER FOR APPOINTMENT<br>OF GUARDIAN AD LITEM—CIVIL<br>[✓] EX PARTE | CASE NUMBER:<br>17CV307373 |
|---|---|

*NOTE: This form is for use in civil proceedings in which a party is a minor, an incapacitated person, or a person for whom a conservator has been appointed. A party who seeks the appointment of a guardian ad litem in a family law or juvenile proceeding should use form FL-935. A party who seeks the appointment of a guardian ad litem in a probate proceeding should use form DE-350/GC-100. An individual cannot act as a guardian ad litem unless he or she is represented by an attorney or is an attorney.*

1. Applicant *(name):* Dara Berman-Cheung                                   is
   a. [✓] the parent of *(name):* Bailey Berman Cheung
   b. [ ] the guardian of *(name):*
   c. [ ] the conservator of *(name):*
   d. [✓] a party to the suit.
   e. [ ] the minor to be represented *(if the minor is 14 years of age or older).*
   f. [ ] another interested person *(specify capacity):*

2. This application seeks the appointment of the following person as guardian ad litem *(state name, address, and telephone number):*
   Dara Berman-Cheung
   3186 Mountview Road
   Columbus, OH 43221

3. The guardian ad litem is to represent the interests of the following person *(state name, address, and telephone number):*
   Bailey Berman Cheung
   3186 Mountview Road
   Columbus, OH 43221

4. The person to be represented is:
   a. [✓] a minor *(date of birth):* August 20, 2005
   b. [ ] an incompetent person.
   c. [ ] a person for whom a conservator has been appointed.

5. The court should appoint a guardian ad litem because:
   a. [✓] the person named in item 3 has a cause or causes of action on which suit should be brought *(describe):*
      Medical Negligence, Product Liability, Wrongful Death, and Survival Action

[ ] Continued on Attachment 5a.

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-010 [Rev. January 1, 2008] | APPLICATION AND ORDER FOR APPOINTMENT<br>OF GUARDIAN AD LITEM—CIVIL | Page 1 of 2<br>Code of Civil Procedure,<br>§ 372 et seq |

BY FAX

BY FAX

Exhibit B
Page 195

Case 1:14-ml-02570-RLY-TAB Document 6038-2 Filed 08/04/17 Page 200 of 202 PageID #:
Case 2:17-cv-02564-NJC Document 5-1 Filed 08/04/17 Page 143 of 145 PageID #:
23545

CIV-010

| PLAINTIFF/PETITIONER: DARA BERMAN-CHEUNG, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: COOK GROUP, INC., etc., et al. | |

5. b. ☐ more than 10 days have elapsed since the summons in the above-entitled matter was served on the person named in item 3, and no application for the appointment of a guardian ad litem has been made by the person identified in item 3 or any other person.

c. ☑ the person named in item 3 has no guardian or conservator of his or her estate.

d. ☑ the appointment of a guardian ad litem is necessary for the following reasons *(specify):*

Bailey Berman Cheung is a minor under the age of 14 and, along with her mother and brother, has a claim for damages against defendants for the wrongful death of her father, Richard Cheung,

☐ Continued on Attachment 5d.

6. The proposed guardian ad litem's relationship to the person he or she will be representing is:
a. ☑ related *(state relationship):* Mother
b. ☐ not related *(specify capacity):*

7. The proposed guardian ad litem is fully competent and qualified to understand and protect the rights of the person he or she will represent and has no interests adverse to the interests of that person. *(If there are any issues of competency or qualification or any possible adverse interests, describe and explain why the proposed guardian should nevertheless be appointed):*

☐ Continued on Attachment 7.

Matthew Ramon Lopez
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF ATTORNEY)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
Date: 3/13/2017

Dara Berman-Cheung
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF APPLICANT)

## CONSENT TO ACT AS GUARDIAN AD LITEM

I consent to the appointment as guardian ad litem under the above petition.
Date: 3/13/2017

Dara Berman-Cheung
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PROPOSED GUARDIAN AD LITEM)

## ORDER ☐ EX PARTE

THE COURT FINDS that it is reasonable and necessary to appoint a guardian ad litem for the person named in item 3 of the application, as requested.

THE COURT ORDERS that *(name):*
is hereby appointed as the guardian ad litem for *(name):*
for the reasons set forth in item 5 of the application.
Date:

_____
JUDICIAL OFFICER
☐ SIGNATURE FOLLOWS LAST ATTACHMENT

CIV-010 [Rev. January 1, 2006]

**APPLICATION AND ORDER FOR APPOINTMENT
OF GUARDIAN AD LITEM—CIVIL**

Page 2 of 2

Case 1:14-ml-02570-RLY-TAB Document 6038-1 Filed 08/30/17 Page 201 of 202 PageID #:
23546
Case 5:17-cv-02564-NC Document 63-1 Filed 08/04/17 Page 214 of 215 PageID #:

BY FAX

1    Ramon Rossi Lopez, Bar No. 86361
    Matthew Ramon Lopez, Bar No. 263134
2    Amorina Patrice Lopez, Bar No. 278002
    **LOPEZ McHUGH LLP**
3    100 Bayview Circle, Suite 5600
    Newport Beach, CA 92660
4    Telephone: (949) 737-1501
    Facsimile: (949) 737-1504
5    rlopez@lopezmchugh.com
    mlopez@lopezmchugh.com
6    alopez@lopezmchugh.com

7    *Attorneys for Plaintiffs*

ENDORSED

2017 MAR 16  A 8: 58

CLERK ... COURT
SUPERIOR COURT ... CA
COUNTY OF SANTA CLARA
BY_____ DEPUTY

8  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9  **FOR THE COUNTY OF SANTA CLARA**

| | |
|---|---|
| 11   DARA BERMAN-CHEUNG, an Individual; <br>12   SAM BERMAN CHEUNG, a Minor, by and <br> through his Guardian ad Litem, DARA <br>13   BERMAN-CHEUNG; and BAILEY <br> BERMAN CHUNG, a Minor, by and <br>14   through her Guardian ad Litem, DARA <br> BERMAN-CHEUNG, <br>15 <br>            Plaintiffs, <br>16    vs. <br>17   COOK GROUP, INC., an Indiana <br> corporation; COOK MEDICAL <br>18   INCORPORATED a/k/a COOK MEDICAL, <br> INC., an Indiana corporation; COOK <br>19   MEDICAL, LLC, an Indiana corporation; <br> WILLIAM COOK EUROPE APS; <br>20   MATTHEW MELL, M.D., an individual; <br> STANFORD HEALTH CARE, a California <br>21   corporation; and DOES 1 through 50, <br> Inclusive, <br>22 <br>            Defendants. | Case No.:   **17CV307373** <br><br> **DECLARATION OF SUCCESSORS-IN-INTEREST** <br><br> **[C.C.P. §377.32]** |

24      I, DARA BERMAN-CHEUNG, individually and on behalf of my minor children, SAM

25  BERMAN CHEUNG and BAILEY BERMAN CHEUNG, declare as follows:

26      1.      We are the surviving spouse and children of RICHARD CHEUNG ("Decedent"),

27  respectively.

28      2.      We, DARA BERMAN-CHEUNG, SAM BERMAN CHEUNG, and BAILEY

-1-

**DECLARATION OF SUCCESSORS-IN-INTEREST**

Case 1:14-ml-02570-RLY-TAB   Document 6039-1   Filed 08/30/17   Page 202 of 202 PageID #:
Case 2:17-cv-02564-NC   Document 89-2   Filed 08/04/17   Page 146 of 146
23547

1    BERMAN CHEUNG, Decedent's spouse and children, are the beneficiaries of Decedent RICHARD

2    CHEUNG's estate pursuant to § 6042 of the California *Probate Code*.

3        3.      Decedent died on December 20, 2015 in Santa Clara County, California.  A true and

4    correct copy of the Decedent's Death Certificate is attached hereto.

5        4.      There is no proceeding pending in California for administration of the Decedent's

6    Estate.

7        5.      We, DARA BERMAN-CHEUNG, SAM BERMAN CHEUNG, and BAILEY

8    BERMAN CHEUNG, are the Decedent's successors-in-interest as defined in *Code of Civil

9    Procedure* § 377.11 and succeed to Decedent's interest in this action.  We, DARA BERMAN-

10   CHEUNG, SAM BERMAN CHEUNG, and BAILEY BERMAN CHEUNG, are Decedent's spouse

11   and children, and sole beneficiaries of Decedent's Estate.

12       6.      No other person has a right to commence the action or proceeding, or to be

13   substituted for the Decedent in the pending action.

14       I declare under penalty of perjury under the laws of the State of California that the foregoing

15   is true and correct.

16   DATED:  3|15|2017

17                                                        DARA BERMAN-CHEUNG, Declarant

18

19

20

21

22

23

24

25

26

27

28

-2-

**DECLARATION OF SUCCESSORS-IN-INTEREST**