**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

_____

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND           Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION                      MDL No. 2570
_____

**This Document Relates to Plaintiff**
    **Elizabeth Jane Hill**
    **Civil Case No. 1:14-cv-06016-RLY-TAB**
_____

**PLAINTIFF'S MOTION AND MEMORANDUM IN RESPONSE TO THE**
**COOK DEFENDANTS' MOTION TO BIFURCATE**

COMES NOW Plaintiff Elizabeth Hill and files her response to the Cook Defendants'

("Cook") Motion to Bifurcate, and in support thereof, respectfully shows the Court as follows:

**I.**    <u>**INTRODUCTION**</u>

Nearly two years after its first request for bifurcation was denied by this Court, Cook again

brings a Motion to Bifurcate.  *See* Order on Defendants' Motion to Bifurcate, Docket No. 817,

October 30, 2015, attached hereto as Exhibit A.  In its new motion, Cook asks that the

compensatory damage and punitive damage portions of the case be segregated into separate trial

phases using the same jury. Specifically, Cook request a first phase limited to liability and

compensatory damages and a second phase addressing both entitlement to and the amount of

punitive damages

As was the case the first time it raised the bifurcation issue, Cook has not (and cannot)

satisfy its burden to compel this form of bifurcation, nor has it shown that bifurcation will promote

judicial economy or efficiency in this trial.  Cook's motion is deficient in a number of ways:

1

- Cook misstates the claims that are at issue in the compensatory phase. It repeatedly argues that the only issues at trial are design defect and failure to warn. (Def. Memo. at 3, 4, 5, 7, 8, 11, 14, 17, 20.) Cook never mentions Plaintiff's pending negligence claim.[1] Negligence focuses on whether Cook's' conduct was reasonably careful. All of the evidence proving negligence is evidence that also informs the jury's determination of entitlement to punitive damages.

- Cook proposes a novel form of bifurcation (segregating entitlement to punitive damages from the compensatory phase). None of the cases cited by Cook involved bifurcation of this sort. Most did not involve punitive damages at all and the one case that did involve punitive damages merely bifurcated the *amount* of punitive damages in a second trial phase.[2]

- It would be inefficient, and perhaps impossible, to parse out evidence of negligence and product defect (i.e., consumer expectation) from evidence of reprehensibility (i.e., entitlement to punitive damages). If it could be done, it would pose a danger of jury confusion and distraction while requiring the introduction of redundant liability evidence in Cook's proposed second phase.

- Cook's fear that it will be prejudiced if the jury hears limited amounts of punitive damage evidence during the liability phase of the trial may be addressed though a jury instruction (or though the traditional bifurcation of liability/compensatory damages/entitlement to punitive damages from the amount of punitive damages). Meanwhile the prejudice to Plaintiff if bifurcation is granted – including the expense of having to recall witnesses during two separate trial phases, the unavoidable delay occasioned by disputes over evidence, and jury disinterest and confusion after sitting through repetitive evidence presented in two trial phases – cannot easily be cured.

The law on bifurcation is clear that dividing a trial into multiple parts is the exception and not the rule. For these reasons, Plaintiff respectfully requests Cook's motion be denied.

---

[1] The Court granted summary judgment on Plaintiff's independent count for negligence *per se* but Plaintiff's count for general negligence was not challenged and was not affected by that ruling.

[2] *In re Actos (Pioglitzaone) Prods. Liab. Litig.*, 2014 WL 5461859 at *8 (W.D. La. Oct. 27, 2014) ("After the close of the evidence at trial, this Court instructed the jury on the law applicable to their determination of whether punitive damages should be awarded…. Only after the jury had found in the affirmative as to both Defendants did the second phase of the trial begin, during which the jury was to determine the amount of punitive damages.")

## II.   ARGUMENT AND AUTHORITIES

### A. Legal Standard

There is no presumption in favor of bifurcation.  *Trinity Homes, LLC v. Regent Ins. Co.*, No. 1:04-cv-1920JDTWTL, 2006 WL 753125, at *2 (S.D. Ind. Mar. 20, 2006).  The "normal procedure is to try compensatory and punitive damage claims together …." *Smith v. PH Mortgage Corp.*, 2015 WL 4256532, at *5-7 (N.D. Ind. July 14, 2015) (citing *McLaughlin v. State Farm Mut. Auto. Ins. Co.*, 30 F.3d 861 (7th Cir. 1994)).  Bifurcation is the exception to the rule that all issues in a case should be tried together. *Keyes Fibre Co. v. Packaging Corp. of Am.*, 763 F. Supp. 374, 375 (N.D. Ill. 1991).

A district court may bifurcate issues for trial in furtherance of convenience, to avoid prejudice, or to economize and expedite a trial.  Fed. R. Civ. P. 42(b).  Bifurcation may be appropriate if the party seeking it shows that doing so: (1) serves the interests of judicial economy, (2) does not unfairly prejudice the non-moving party, and (3) does not violate the Seventh Amendment.  *Krocka v. City of Chicago*, 203 F.3d 507, 517 (7th Cir. 2000).  The party seeking bifurcation has the burden of proving judicial economy would be served and that the opposing party would not be prejudiced by separate trial.  *Ralzar v. Am. Family Ins. Co.*, No. 2:08-cv-241, 2009 WL 1543524, at *2 (N.D. Ind. June 2, 2009); *Montgomery v. Am. Family Ins. Co.*, No. 3:09-cv-00545, 2010 WL 1936085, at *2 (N.D. Ind. May 11, 2010).

However, bifurcation is not the preferred method of proceeding in a lawsuit, especially where issues and evidence supporting them may overlap and one must "carve at the joint" to bifurcate issues.  *Hydrite Chemical Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 890 (7th Cir. 1995); *see also State of Ala. V. Blue Bird Body Co.*, 573 F.2d 309, 318 (5th Cir. 1978) (bifurcation should be reserved for issues that are "so distinct and separable from the others that a trial of it

3

alone may be had without injustice").  When there is a significant overlap of issues, management

of trial is not served by bifurcation.  *McLaughlin v. State Farm Mut. Auto. Ins. Co.*, 30 F.3d 861

(7th Cir. 1994).  To divide a trial into two different issues to be heard separately can be a recipe

for disaster.  *Hydrite Chemical Co.*, 47 F.3d at 890.  Bifurcation is also expensive for the court and

the parties.  *Jones v. Travco Ins. Co.*, 2014 WL 1404726, at *2 (S.D. Ind. April 9, 2014).  Although

Cook argues that "courts have often adopted bifurcation to promote just such convenience and

economy," (Def. Memo. at 2), none of the cases it cites for this proposition bifurcated the trial in

the manner Cook seeks here.[3]  Without these benefits, bifurcation should be denied.

**B.     Bifurcation Will Not Serve the Interest of Judicial Economy.**

**1.     There is substantial overlap between the evidence supporting general liability and causation and the evidence supporting punitive damages.**

Issues of liability and punitive damages are closely intertwined in this case.  When the

evidence substantially overlaps, "the normal procedure is to try compensatory and punitive damage

claims together with appropriate instructions to make clear to the jury the difference in the clear

and convincing evidence required for the award of punitive damages." *Hangarter v. Provident Life*

---

[3] *See Chlopek*, 499 F.3d at 697 (bifurcating compensatory liability and damages—no punitive issue); *Krocka* 203 F.3d at 516 (same); *Houseman*, 171 F.3d at 1121 (same); *Vandersteen*, 2010 WL 659327 at *2-3 (damages-only trial bifurcating punitive liability because no liability evidence would be presented in compensatory phase); *In re Actos*, 2014 WL 5461859 at *8 (bifurcating *amount* of punitive damages but trying *entitlement* to punitive damages in compensatory phase).  Cook cites two other cases that bifurcate punitive damages where "primary liability theories of product defect and failure to warn do not implicate inquiry into corporate conduct." (Def. Memo. at 4.) These two cases are inapposite because Ms. Hill's negligence claim is all about "corporate conduct."  Only one of these two cases bifurcated punitive damages in the peculiar manner suggested by Cook, and it was a pollution/nuisance case, not a products liability case. *See Emerick*, 750 F.2d at 22 (bifurcating compensatory liability from all damages and all punitive damage issues); *Scheufler*, 895 F. Supp. 1411 at 1413 (trial court order bifurcating all punitive issues from compensatory issues where there is no overlap of issues).  Cook also cites two other inapposite cases. *Gresser*, 29 Fed. Appx. at 435-36 (unpublished opinion in an excessive force case segregating punitive damages from individual and municipal liability issues where each phase "did depend on a distinct theory [of liability]"); *Hydrite Chem.* 47 F.3d at 889 (bifurcating compensatory liability and damages—no punitive issue).

4

*and Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) (citing *McLaughlin v. State Farm Mut. Auto Ins. Co.*, 30 F.3d 861, 871 (7th Cir. 1994)).

Cook fails to adequately address this issue because it overlooks Plaintiff's negligence claim. The jury's negligence determination is based on the reasonableness of Cook's conduct.[4] The jury's determination on entitlement to punitive damages depends on the reprehensibility of the very same conduct: "Evidence of actual harm to nonparties can help to show that *the conduct that harmed the plaintiff* also posed a substantial risk of harm to the general public, *and so was particularly reprehensible*. *Philip Morris USA v. Williams*, 549 U.S. 346, 355 (2007) (emphasis added); *see also id.* at 354 (holding that potential harm is relevant to establishing punitive damages so long as it "was harm potentially caused *the plaintiff*") (emphasis in original). The peculiar second phase Cook proposes would not include the introduction of any liability/misconduct evidence not already introduced in the compensatory phase or, stated differently, it would *only* include the re-presentation of liability/misconduct evidence already introduced in the compensatory phase.

Bifurcation is not convenient, expeditious or economical if evidence goes to multiple issues in the case as it would therefore necessitate the duplication of evidence in multiple trials. Efficiency is served when evidence on multiple issues is presented once. *Keyes*, 763 F. Supp. at 375; *Creek v. Village of Westhaven*, 1991 WL 203792, at *1 (N.D. Ill., October 1, 1991) (bifurcation of trial on liability and damages inappropriate because issues were closely intermingled); *Welcker v. Smithkline Beckman*, 746 F. Supp. 576, 583 (E.D. Pa. 1990) (denying

---

[4] Fla. Standard Jury Instr. 403.9 ("Negligence is the failure to use reasonable care, which is the care that a reasonably careful [designer] [manufacturer] [seller] [importer] [distributor] [supplier] would use under like circumstances. Negligence is doing something that a reasonably careful [designer] [manufacturer] [seller] [importer] [distributor] [supplier] would not do under like circumstances or failing to do something that a reasonably careful [designer] [manufacturer] [seller] [importer] [distributor] [supplier] would do under like circumstances.")

bifurcation of liability and damages: "[B]ifurcation would probably result in duplicative testimony, rather than a saving of time."). Cook's proposal would unnecessarily lengthen trial and require duplicative evidence in separate phases.

Cook never addresses this point and instead contends that the evidence Plaintiff needs to bring her design defect and failure to warn claims does not "primarily depend on inquiry into [Cook's] conduct." (Def. Memo. at 3-4). This is incorrect. For Plaintiff to succeed on her negligence claim, she must show evidence of duty, breach of duty, and causation. Thus, for example, evidence relating to Cook's conduct bears directly on whether Cook breached its duty of care in the design and development of the product and/or through the warnings given. Specifically, Cook knew that the Celect filter posed increased risks of perforation, including progressive perforation, and not only failed to adequately warn about these issues, but actively concealed them in the publication of its Celect clinical trial—all the while Cook was covertly redesigning the Celect to address its problems with perforation. A reasonable jury may decide that constitutes a breach of Cook's duty to Ms. Hill or that, in light of Cook's misconduct, the Celect was defective because a reasonable consumer would not expect the extreme perforation Ms. Hill suffered. The jury might also consider this conduct sufficiently reprehensible to support an award of punitive damages. Thus, evidence of multiple prior incidents, evidence of adverse event reporting issues, evidence of Cook's promotion of the Celect filter support *both* compensatory liability and entitlement to punitive damages.

The jury may also find that Cook's choice to market the Celect without adequate testing and without proper post-market surveillance constitutes negligence and merits punitive damages. On this issue, there is no clear divide between the evidence establishing Cook's liability and the evidence showing reprehensible conduct. In short, Cook's entire course of conduct relating to

6

perforation problems with Celect serves as the foundation for compensatory liability and for entitlement to punitive damages.

### 2. Cook's concerns for prejudice are unjustified and may in any event be efficiently addressed through jury instructions.

Cook identifies four types of evidence it argues are relevant only to punitive damages. All are in fact relevant to liability for negligence and design defect.

Documents post-dating Ms. Hill's implant are relevant to show lack of mistake and course of conduct. For example, in 2012 Cook claimed to the FDA and to practicing doctors that the Celect was redesigned as Celect Platinum only to add "radiopaque markers" enhancing its visibility on imaging. These claims were the culminating event in a five-year re-design project to fix Celect's perforation problem—a problem Cook never revealed before Ms. Hill's implant. Though post-dating Ms. Hill's implant, these representations confirm Cook's pre-implant intent to conceal Celect's perforation problem. Cook argues that such evidence could have "no bearing" on Ms. Hill's warning claim; but it is in fact further proof that Cook failed to warn and proof that it was no accident. Contrary to Cook's suggestion, scientific literature post-dating Ms. Hill's implant is not relevant for the sole purpose that Cook's conduct "warrants punitive damages." (Def. Memo. at 6.) It is relevant to show that it took doctors years to figure out and eventually publish what Cook knew long before Ms. Hill received a Celect filter. It is evidence of Cook's failure to act as a reasonably careful company would act; that is, evidence of negligence.

Communications and "documents pertaining to unrelated products" are not categorically irrelevant in the compensatory phase. Cook cites no example of any such evidence, but a good example would involve its comparative marketing efforts. Cook marketed the Celect by urging doctors to compare Celect's adverse event reports in the FDA's MAUDE database to its competitors' products while Cook admits it breached its obligation to report Celect adverse events

occurring outside the U.S. to MAUDE. Cook thus not only failed to warn regarding the extent of Celect's perforation issues; it actively misled physicians in this regard. This is evidence of unreasonable conduct. It is evidence informing what a "reasonable consumer" would expect, which is the litmus for design defect under Florida law. The mere happenstance that this probative evidence refers to "unrelated products" does not render it irrelevant.

Likewise, Cook's interactions with foreign regulatory authorities are relevant for purposes other than entitlement to punitive damages. In 2010, Australia's counterpart to the FDA (the TGA) requested data regarding Celect's perforation rates as compared to the Tulip. This prompted a lengthy back-and-forth and an internal investigation at Cook that led it to conclude that Celect had a statistically significantly higher rate of perforation complaints than Tulip. It did not share this conclusion with the TGA and attempted to explain away the importance of complaint data, which not only reveals Cook's state of mind, but is part of an ongoing narrative of all that Cook knew and all that it failed to reveal.

Finally, Cook cites the Platinum as evidence of "subsequent remedial measures" that it claims would be relevant only to punitive damages. But as noted above, the Celect Platinum was not a "subsequent" event. The Platinum re-design to minimize perforations began within months of Celect's clearance as a permanent filter in the U.S. and before it had been cleared as a retrievable device. By the time of Ms. Hill's implant, Cook had more than two years of bench and animal testing under its belt for the Celect Platinum and, in fact, it was cleared for use before Ms. Hill was injured. A jury may well deem it negligent to conceal Celect's perforation problem while working to design a fix for it. The very existence of the Platinum redesign effort corroborates Cook's failure to warn and the fact that Cook mischaracterized the purpose for the redesign shows it was not a

mere mistake.  Again, this is evidence that certainly is relevant on the punitive damages question, but its relevant is not limited to that issue.

If any or all of this evidence were indeed relevant only to punitive damage issues, its introduction during the compensatory phase would nevertheless be appropriate if accompanied by limiting instructions.  The use of instructions promotes judicial efficiency and conserves resources.  To the extent that Cook is concerned that the evidence relating "solely" to punitive damages spans multiple years and would require calling multiple witnesses, that fear is unwarranted.  Plaintiff intends to present a clear, concise trial to the Court and jury.

Cook's proposed solution is to effectively conduct two liability trials.  Clearly the use of limiting instructions is more efficient and jurors are presumed to follow all such instructions. *United States v. Garvey*, 693 F.3d 722, 726 (7th Cir. 2012) ("[J]urors are presumed to follow limiting and curative instructions unless the matter improperly before them is so powerfully incriminating that they cannot reasonably be expected to put it out of their minds.") (quoting *United States v. Smith*, 308 F.3d 726 (7th Cir. 2002)).

In reviewing the same issues in another medical device MDL, the Northern District of Texas denied bifurcation due to the overlap of the evidence. *In re: DePuy Orthpaedics, Inc. Pinnacle Hip Implant Products Liability Litigation*, *relating to* Case No. 3:11-cv-01941, Order (N.D. Texas Jan. 8, 2016), attached hereto as Exhibit B.  This Court should also deny bifurcation here.

### 3.     Bifurcation will cause delay by creating additional evidentiary disputes.

Bifurcation will cause delays by creating disputes which would not exist if all issues were tried together.  Bifurcation, by definition, creates the potential for the parties to argue about what evidence should or should not be a part of the various trials.  This is especially true given that the

parties are already in dispute over much of the evidence planned for trial.  *Trading Technologies Int'l v. Espeed, Inc.*, 431 F. Supp. 2d. 834, 840 (N.D. Ill 2006) ("Given the nature of this case thus far, we would not be surprised if the parties engaged in extensive motion practice wrangling over whether certain pieces of discovery were applicable to the liability case or the willfulness/damages case").  Creating mini-trials over each email or other internal corporate document does not make for an efficient trial.

> **4.    The theoretical possibility that a punitive damage trial may not be necessary does not create an efficiency benefit warranting bifurcation.**

Cook raises the speculative possibility that Plaintiff may not reach the punitive damage phase of a bifurcated trial as an efficiency benefit thereby warranting bifurcation.  Yet, no court has adopted a "likelihood of success on the merits" test for determining whether bifurcation would save time and court resources.  If a defendant's mere possibility of success in defeating the liability claim were enough to establish an efficiency benefit to bifurcated trials, every trial would involve a separate punitive damage proceeding and bifurcation would be the rule, and not the exception.  As noted above, the reverse is true. *Stachton v. Woodward*, 2015 WL 7963144, at *2 (N.D. Ind. 2015) (single trial best serves judicial economy because it is uncertain if defendant would prevail on liability due to number of factual disputes; defendant's possibility of success on liability claim does not warrant bifurcation).

> **5.    The mere presence of a conflict of law issue does not necessitate bifurcation.**

The presence of a conflicts of law issue does not necessitate a bifurcated trial.  A number of claims arrive in federal court by virtue of diversity jurisdiction and, consequently, conflict of law issues abound.  It cannot be said that making a determination as to which state's punitive damage laws should apply is such a taxing exercise on the Court that it should be avoided by

bifurcating the trial.  Cook has filed a summary judgment motion to apply Indiana substantive law on the issue of punitive damages.  Its bifurcation motion bootstraps those arguments, (Def. Memo. at 9-12), and then presumes the Court will rule in its favor.  No matter how the Court rules, the issue will be resolved well before trial.  If the Court were to apply Indiana substantive law, the jury would simply be instructed on Florida law as the compensatory issues and Indiana law on punitive damage issues.

Cook is mistaken in suggesting there is some conflict that would require separate, phased jury instructions.  It notes correctly that Florida law requires a preponderance of evidence on the compensatory claims and notes correctly that Indiana requires clear and convincing evidence on entitlement to punitive damages, but then it mistakenly suggests this requires bifurcation.  First, Florida also requires proof by clear and convincing evidence for entitlement to punitive damages.[5]  Second, courts routinely try compensatory and punitive damage liability issues in a single trial despite different burdens of proof.  Indeed, this Court has held as much:

> [I]t is not uncommon for a jury to hear a case involving both punitive and compensatory damages.  The jury will be instructed as to the differing burdens of proof, and both parties may tender instructions explaining the different burdens.  As stated in *McLaughlin*, '[s]ince the evidence usually overlaps substantially, the normal procedure is to try compensatory and punitive claims together with appropriate instructions to make clear to the jury the difference in the clear and convincing evidence required for the award of punitive damages.' *McLauglin* at 871.  The Court is confident in jurors' ability to understand and decide the issues when given appropriate instructions.

*Williamson v. Progressive Northern Ins. Co.*, 2007 WL 2176561, at *2 (S.D. Ind. 2007).  Therefore, bifurcation is not warranted on these grounds.

---

[5] Fla. Standard Jury Instr. 503.2 ("Punitive damages are warranted against (defendant) if you find by clear and convincing evidence that (defendant) was guilty of intentional misconduct or gross negligence … 'Clear and convincing evidence' differs from the 'greater weight of the evidence'….").

Finally, although Cook "stresses" to the Court it need not decide the choice of law issue at this point, it devotes roughly four pages to argue why Indiana law should apply. Rather than arguing a matter Cook claims is not at issue in the present motion, Plaintiff refers the Court to her response to Cook's motion for summary judgment for a discussion of the choice of law issue and adopts the arguments therein by reference.

### C.   Cook is Not Unfairly Prejudiced By a Single Trial.

Cook seems to forget that all evidence admitted at trial in an adversarial system is prejudicial towards one party or the other.  The burden is on Cook to show that the effect would be "unduly" prejudicial.  Cook has not done so in the present motion.

### 1.   Certain non-financial evidence is not unfairly prejudicial and such evidence is necessary for Plaintiff to present her case.

As discussed above, the evidence supporting Plaintiff's entitlement to punitive damages overlaps with the evidence Plaintiff will introduce to establish liability for compensatory damages. Attempting to parse out the relatively small portion of that evidence which relates solely to punitive damages (if any exists) would require continued objections, side bar discussions, and possible motion practice. Nothing could be more inefficient.

The better practice, and one routinely used by courts, is to address the limited purpose for which certain evidence may be considered through a jury instruction.   Federal courts, including this one, have stated as much. *Cardiac Pacemakers, Inc. v. St. Jude Med.*, 2001 WL 699856, at *2 (S.D. Ind. 2001) (agreeing that potential confusion can be remedied by good lawyering, cautionary warnings, limiting instructions, or special verdict forms) (citing *Real v. Bun-O-Matic, Corp.*, 195 F.R.D. 618, 624-25 (N.D. Ill. 2000)); *see also In re Heparin Prods. Liab. Litig.*, 2011 WL 1097637, at *4 (N.D. Ohio 2011) (finding any potential for prejudice to defendants can be avoided with appropriate limiting instructions); *Hamm v. American Home Prods. Corp.*, 888 F.

12

Supp. 1037, 1039 (1995) ("any concerns about potential prejudice to the defendant may be directly addressed, and the prejudiced cured, with appropriate limiting instructions") (citing *Brown v. Advantage Engineering*, 732 F. Supp. 1163, 1171 (N.D. Ga. 1990)).

Cook also seemingly suggests that juries are incapable of understanding and abiding by court instructions. However, "[j]uries in both civil and criminal cases are presumed to be able to follow instructions even when they are told to separate issues much more difficult to separate than liability vs. damages." *Wilson v. Sundstrand Corp.*, WL 2187838 at *1 (N.D. Ill. 2003); *see also Barton v. Chicago & Northwestern Transp. Co.*, 757 N.E.2d 533 (1st Dist. 2001) (demonstrating jury instructions sufficient to address punitive vs. compensatory damages in lawsuit). "To say that the jury may be confused amounts to nothing more than an unfounded speculation that the jurors would disregard clear instructions of the court in arriving at their verdict." *Opper v. United States*, 348 U.S. 84, 95 (1954). See also *Balzer v. Am. Family Ins. Co.*, 2009 WL 1543524 (N.D. Ind. 2009) (mere speculation is an inadequate basis upon which the court should grant a separate trial). Thus, bifurcation should not be granted on these grounds.

### 2.   Admission of Cook's financial information is not unfairly prejudicial.

Cook's argument that its financial motives are irrelevant in a negligence action is similarly misguided. As this Court has already held in denying Cook's first motion to bifurcate:

> Defendants' continued marketing and profiting from these devices create a tangible overlap between its liability for punitive damages and its financial information. Screening Defendants' financial information from the first stage of trial leaves Plaintiff with incomplete evidence for argument that Defendants are liable for punitive damages. How will a jury determine at stage one whether Defendants preserved their financial interest at the expense of injury to Plaintiffs if all of the financial information is reserved for stage two? Separating and withholding Defendants' financial information at stage one might even confuse the jury on the issue of liability. Defendants' liability for punitive damages and its financial

> information are so closely intertwined in this case that they cannot
> be separated without prejudicing Plaintiffs.

*See* Exhibit A, at 4-5.

Here, evidence of the profits gained in relation to Plaintiff's treatment and injuries is relevant to a jury's consideration in determining whether a duty was breached.  It can also be informative when comparing costs related to design modifications and the amount of profit enjoyed by Cook.  Federal courts have recognized the relevance of such information in making liability determinations: "[E]xcessive concern with the image and marketing of [their products] at the expense of making efforts toward determining whether they were safe could be probative as to whether [the manufacturer] breached a duty of care towards the plaintiffs."  *In re: Diet Drugs*, 369 F.3d 293, 314 (3d Cir. 2004).  Thus, Plaintiff is permitted to show that the potential for (and realization of) profits through promotion of its Celect IVC Filter was a motivating factor for Cook's negligent activities.

On the other hand, excluding this information, would be inappropriate and unfairly prejudicial to Plaintiff.  The evidence regarding net worth will not be extensive.  Therefore, little in the way of economy would be achieved through bifurcation.  Instead, it would be a burden on the Plaintiff and the Court to have to determine throughout the liability phase of the trial what is "relevant financial information" versus "financial information that should only be allowed in the punitive damage stage".  Again, this in no way aids in the efficiency of this trial.

Cook's suggestion that a jury would be unduly biased against a corporation with a large net worth, is "made at such a level of generality that it could be urged as a basis for bifurcation of punitive damages issues in any case involving a potentially sympathetic plaintiff and wealthy defendants."  *Challenge Aspen v. King World Prods. Corp.*, 2001 WL 1403001, at *3 (N.D. Ill.2001).  The mere fact of Cook's wealth should not afford it the right to dictate trial procedures.

Moreover, any prejudice Cook believes it will bear can be effectively addressed by the Court.  The Court can control the timing of the financial evidence offered so that no evidence of net worth is admitted unless and until the judge concludes that sufficient evidence has been presented to create a possibility of a punitive damage award.  Additionally, or alternatively, a limiting instruction could be given.

In its final argument, Cook claims to have a due process right to a bifurcated trial.   Cook arrives at this novel position by claiming that without the procedural safeguard of bifurcation it is at risk of being arbitrarily deprived of its private interest in the potential punitive damage award.  Tellingly, Cook cites no authority holding that a non-bifurcated trial is a violation of due process.[6]  This case is an action between two private citizens.  Federal courts have consistently held that due process considerations have no bearing in actions between private citizens.   *Caldwell v. Citimortgage, Inc.*, 2015 WL 6445467, at *4 (N.D. Ill.) (the Fifth and Fourteenth Amendments "protect citizens from conduct by the government, but not by conduct by private actors, not matter how egregious that conduct might be.") (citing *Whitney v. Window to the World Comm's,* 837 F. Supp. 2d 854, 856 (N.D. Ill. 2011) (quoting *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009)); s*ee also Martin v. Shawano-Gresham School Dist.*, 295 F.3d 701, 708 (7th Cir. 2002) (holding the due process clause does not require the state

---

[6] Cook cites *Connecticut v. Doehr*, for the inquiry to be made when a party alleges a due process challenge to a state's role in property deprivation. 501 U.S. 1 (1991).  However, even a cursory reading of *Doehr* reveals the limits of its application in this case.  *Doehr* involved a private citizen, DiGiovanni, bringing a claim for assault and battery against another private citizen, Doehr.  Before filing his Complaint, DiGiovanni applied to the Connecticut State Superior Court for an attachment on Doehr's real property to ensure he could obtain judgment if a jury found in his favor.  The Connecticut Court provided no notice of hearing prior to the judge's order granting attachment.  Only after the sheriff attached the property, did Doehr receive notice of the attachment and an opportunity to have post attachment hearing.  Doehr appealed claiming the Connecticut statute on notice of attachment violated his Due Process rights under the Fourteenth Amendment.  *Doehr*, at 1-3. These facts are inapplicable to the current facts in this case.  Plaintiff has not attempted to assert an attachment or any lien interest against Cook.  More importantly, Cook has been on notice of the punitive damage claim for years and by the time the issue is submitted to the jury, Cook will have had several opportunities to be heard.

to protect the life, liberty and property of its citizens against invasion by private actors, but only against deprivation of life, liberty and property by state actors); *JPMorgan Chase Lima v. Bank of America, N.A.*, 2017 WL 1422971, at *4 (S.D. Fla 2017) (credit card holder failed to sufficiently allege that issuing bank or debt collectors were state actors or engaged in any state action, as required to state a claim that they violated her due process rights under the Fifth and Fourteenth Amendments, bank and debt collectors were private parties); *Baycare Health System v. Agency for Health Care Admin.*, 940 So.2d 563, 569 (2d DCA 2006) (constitutional due process protections do not extend to private conduct abridging individual rights; only state action is subject to scrutiny under a due process analysis).

Cook is not entitled to any special protections at this point.  The facts of this case do not yet involve a state actor withholding a right of a private citizen. If Cook wishes to assert a due process argument after punitive damages are awarded, it may do so but there is no requirement on a Court to bifurcate a trial beforehand.  To adopt Cook's line of thinking would mean every pre-trial decision by the court would be subject to a due process violation.  At this stage, the limited financial information Plaintiff seeks to introduce is relevant and applicable to Plaintiff's claims and therefore Cook's motion to bifurcate should be denied.

### D.      Bifurcation Would Unfairly Prejudice Plaintiff.

For all the reasons above, it is clear Plaintiff will be prejudiced by not having all her claims against Cook tried at one time.  There is a substantial and inevitable overlap in the evidence to be presented in the liability and punitive damage phases of this case. If the presentation of evidence is split over two trial phases, Plaintiff and the Court will have to spend considerable resources deciphering which evidence can or cannot be used in the first phase. Plaintiff will also have to recall her expert witnesses - costing Plaintiff an enormous expense in money and time.

16

Additionally, the risk of jury indifference or confusion is heightened when jurors are asked to sit through two trials on the same evidence. Bifurcating this trial would needlessly complicate and lengthen the prosecution of Plaintiff's claims (and the entire trial); thus, resulting in prejudice to Plaintiff.

**III.   <u>CONCLUSION</u>**

As this Court has previously expressed, bifurcation "is expensive to the court-as well as to the parties.  This court is too busy and too stretched for resources to conduct two jury trials for the same litigation." *Jones*, 2014 WL 1404726, at \*2.  Because bifurcation is not justified in this case, Plaintiff prays that Cook's motion to bifurcate be in all ways denied.

Alternatively, if the Court is inclined to bifurcate any part of this case, Plaintiff asks that it bifurcate only the issue of the *amount* of punitive damages to be awarded.  Plaintiff asks that the Court allow evidence supporting all other issues to be presented in the first trial phase; and, if the jury decides that Cook's behavior is so reprehensible as to warrant punitive damages, that the jury be asked to determine the amount of any punitive damage award in a second phase to commence immediately after a verdict.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that Cook's Motion to Bifurcate be denied, and for such other and further relief, either at law or in equity, to which Plaintiff has shown or will show herself justly entitled.

Respectfully submitted this 5th day of September, 2017.

*/s/ Ben C. Martin*_____
Ben C. Martin, Esq.
The Law Office of Ben C. Martin
3710 Rawlin Street, Suite 1230
Dallas, TX 75219
Telephone: (214) 761-6614
Facsimile: (214) 74407590
Email: bmartin@bencmartin.com

*/s/ Joseph N. Williams*_____
Joseph N. Williams, Atty. No. 25874-49
Riley Williams & Piatt, LLC
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317) 633-5270
Facsimile: (317) 426-3348
Email: jwilliams@rwp-law.com

*/s/ Michael W. Heaviside*_____
Michael W. Heaviside, Esq.
Heaviside Reed Zaic, A Law Corporation
910 17th Street NW, Suite 800
Washington, DC 20006
Telephone: (202) 233-1993
Email: mheaviside@hrzlaw.com

*/s/ David P. Matthews*_____
David P. Matthews, Esq.
Matthew and Associates
2509 Sackett St.
Houston, TX 77098
Telephone: (713) 522-5250
Facsimile: (713) 535-7184
Email: dmatthews@thematthewslawfirm.com

*Plaintiffs' Co-Lead Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 5th, 2017, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system which will send notification of such filing to the

CM/ECF participants registered to receive service in this action.


*/s/ Ben C. Martin* _____