UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

This Document Relates to the Following Actions only:

Elizabeth Jane Hill
No. 1:14-cv-06016-RLY-TAB

Arthur Gage
No. 1:13-cv-01875-RLY-TAB

**THE COOK DEFENDANTS' MOTION TO MAINTAIN
DOCUMENTS UNDER SEAL (*THE COOK DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF
CERTAIN DEFENSE EXPERTS AND EXHIBITS TO THE RESPONSE*)**

Pursuant to Local Rule 5-11(d)(2)(A), the Cook Defendants[1] respectfully move the Court to seal and maintain under seal The Cook Defendants' Response to Plaintiffs' Motion to Exclude or Limit the Testimony of Certain Defense Experts ("Response'), and Exhibits 1, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, and 16 to that Response. In support of this motion, the Cook Defendants state:

**LEGAL STANDARD**

1. Under Federal Rule of Civil Procedure 26(c)(1)(G), the court may, "for good cause," enter an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." *See also Baxter International, Inc. v. Abbott Laboratories*, 297 F.3d 544, 546 (7th Cir. 2002) (documents

---

[1] The Cook Defendants in this matter are Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS (collectively, the "Cook Defendants" or "Cook").

that "meet the definition of trade secret or other categories of bona fide long-term confidentiality" may be sealed). Likewise, private health information should be maintained under seal at least until consent by the patient is obtained. *See generally Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017).

2. **Trade Secrets –** Indiana has generally adopted the definition of trade secret found in the Uniform Trade Secret Act.[2] *See, e.g., Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 414 (S.D. Ind. 2001).[3] Under this standard, a protectable trade secret has four characteristics: (1) information; (2) that possesses independent economic value; (3) that is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (4) is the subject of efforts to maintain its secrecy that are reasonable under the circumstances. *See, e.g., Hamilton v. State Farm Mut. Auto Ins. Co.*, 204 F.R.D. 420, 423 (S.D. Ind. 2001); *Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 759 N.E.2d 239, 245–46 (Ind. Ct. App. 2001); *Burk v. Heritage Food Serv. Equip., Inc.*, 737 N.E.2d 803, 813 (Ind. Ct. App. 2000).

3. Other confidential business or commercial information that does not technically fit the definition of trade secret is similarly entitled to the same level of protection as trade secrets if its disclosure would be harmful physically or economically. *See Chaib v. GEO Grp., Inc.*, 2014 WL 4794194, at *1–3 (S.D. Ind. Sept. 24, 2014); *Ellis v. CCA of Tenn., LLC*, 2009

---

[2] The presence of Cook's headquarters in Indiana justified the application of Indiana trade secret law to the issues here, because Indiana is the state where Cook would feel any injury or harm. *See, e.g., Micro Data Base Sys., Inc. v. Dharma Sys., Inc.,* 148 F.3d 649 (7th Cir. 1998) (applying Indiana choice-of-law principles in a trade-secret case and holding that New Hampshire substantive law governed because the entity holding the trade secrets was headquartered there).

[3] The Indiana Uniform Trade Secret Act is identical to the Uniform Trade Secrets Act, 1(4), 14 U.L.A. 438 (1985).

WL 234514, at *1 (S.D. Ind. Feb. 2, 2009) (finding that protection is required where disclosure of certain proprietary information would "provide a blueprint for competitors").

4.  **Research and Development** – Federal courts, including this court, have consistently held that product development, research, and testing documents and information are entitled to protection from disclosure as confidential and proprietary business information. Such information constitutes confidential business information because "a competitor's access to [a company's] research and development . . . present[s] potential dangers and may lead to a windfall to the discovering party." *Star Scientific*, 204 F.R.D. at 416 (S.D. Ind. 2001) (Baker, J.); *see also United States ex rel. Long v. GSD&M Idea City LLC*, 2014 WL 12648520, at *2 (N.D. Tex. Jan. 3, 2014) ("[I]nformation in which the producing party has a commercial interest, such as . . . research data, . . . has been found to constitute confidential commercial information."); *Kowalsky v. Hewlett-Packard Co.*, 2012 WL 892427, at *2 (N.D. Cal. Mar. 14, 2012) (exhibits were "sealable in their entirety because they contain[ed] HP's confidential product testing and evaluation process"); *cf. Andrx Pharm., LLC v. GlaxoSmithKline, PLC,* 236 F.R.D. 583, 586 (S.D. Fla. 2006) ("Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information." (citation omitted)), *affirmed,* 2006 WL 2403942 (S.D. Fla. 2006).

5.  **Post-Market Product Analysis** – Similarly, post-market product analysis is also entitled to protection from disclosure as confidential and proprietary business information. Disclosure of such proprietary post-market analysis information is harmful because it would "provide a blueprint for competitors." *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at *1 (S.D. Ind. Feb. 2, 2009); *see also Star Scientific*, 204 F.R.D. at 415 (research and data, such as sales

techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge").

6. **Sales, Marketing, and Public Relations** – Confidential marketing plans or sales strategies have been held to constitute protectable trade secrets or protected confidential business information. *See, e.g.*, *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1270 (7th Cir. 1995) (trade secret material for sports drink includes information regarding the pricing, distribution and marketing of the drink and not just the drink formula); *Star Scientific*, 204 F.R.D. at 415 (research and data, such as sales techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge"); *Burk v. Heritage Serv. Equip.*, 737 N.E.2d 803, 814 (Ind. Ct. App. 2000) (finding that employee unfairly used marketing information and sales strategies in breach of the Indiana trade secrets clause); *see also Brunswick Corp. v. Jones*, 784 F.2d 271 (7th Cir. 1986) (confidential marketing strategies held protectable); *AGS Capital Corp., Inc. v. Prod. Action Intern., LLC*, 884 N.E.2d 294, 311 (Ind. Ct. App. 2008) (stolen information related to marketing strategy would "put [a company's] competitors] at a severe disadvantage"). Good cause exists to maintain the confidentiality of such strategic plans and analysis when disclosure of that information would reveal the company's "response to changing market situations and competitive threats within the marketplace, and could therefore give a competitor insight into '[the company's] internal thinking'" and when publicizing this material "would allow [the company]'s competitors the benefit of this information without incurring the effort or expense." *Bradburn Parent/Teacher Store, Inc. v. 3M*, 2004 WL 1146665, at *4 (E.D. Pa. May 19, 2004) (citation omitted).

7. **Regulatory Affairs** – Courts have held that information related to regulatory compliance and/or submission efforts and strategies constitute confidential business information.

*See, e.g.*, *Bayer Healthcare, LLC v. Norbrook Labs., Ltd.*, 2009 WL 3444938, at *1 (E.D. Wisc. Oct. 23, 2009) (good cause existed to seal deposition testimony and internal company emails containing proprietary commercial information and strategy related to an FDA filing). Such proprietary information, like confidential information regarding pricing and sales, is confidential because "the information is created to enhance [companies'] business and give them a competitive edge". *Star Scientific*, 204 F.R.D. at 415.

8. **Complaint Handling** – Internal complaint handling procedures and materials constitute trade secrets in Indiana if they contain (1) information; (2) that derives independent economic value; (3) is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (4) is the subject of efforts reasonable under the circumstances to maintain its secrecy. *Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 759 N.E.2d 239, 245-46 (Ind. Ct. App. 2001); *see also, e.g.*, *Hamilton v. State Farm Mut. Auto. Ins. Co.*, 204 F.R.D. 420, 423-24 (S.D. Ind. 2001); *Rep. Servs. Inc. v. Liberty Mut. Ins. Cos.*, 2006 WL 1635655, at *5 (E.D. Ken. June 9, 2006) (concluding that claims handling and training materials "had economic value to [defendant] due to (1) their confidential nature, (2) the time, effort, and expense [defendant] invested in creating these materials, (3) the evolutionary process surrounding the development of these materials, (4) the competitive nature of the [industry's] business, and (5) the fact that competitors in [that] industry do not disclose information about their claims handling policies and procedures to one another.").

9. **Medical Privacy –** With respect to medical information, courts in the Seventh Circuit have routinely recognized that, while parties' medical information may be made public where it is relevant to the claims at issue and/or necessary to the disposition of the case, other

information may be kept under seal with good cause. *See Westedt v. Franklin,* 2016 WL 2997504, at *1 (E.D. Wis. May 23, 2016); *Gibson v. Milwaukee Cnty.*, 2015 WL 12964665, at *1 (E.D. Wis. Mar. 26, 2015); *Noe v. Carlos,* 2008 WL 5070463, at *3 (N.D. Ind. Nov. 26, 2008). The good cause inquiry thus requires balancing a party's acknowledged interest in medical privacy, *see Whalen v. Roe*, 429 U.S. 589, 599–600 (1977), against the Court's (and parties') interest in the accurate resolution of the conflict and the public interest in transparency. *Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017). Private health information should be maintained under seal at least until consent by the patient is obtained. *See generally id.* at *3.

10. The "good cause" standard under Rule 26(c) "requires a balancing of the potential harm to the litigants' interests against the public's right to obtain information concerning judicial proceedings." *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 415-16 (S.D. Ind. 2001) (Baker, J.); *see also Felling v. Knight*, 211 F.R.D. 552, 554 (S.D. Ind. 2003) ("The rule essentially operates to balance the public's interest in open proceedings against an individual's private interest in avoiding annoyance, embarrassment, oppression, or undue burden or expense.") (Baker, J.). Consistent with the doctrine discussed earlier, however, "the presumption of public access 'applies only to the materials that formed the basis of the parties' dispute and the district court's resolution; other materials that may have crept into the record are not subject to the presumption." *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013) (citing *Baxter Int'l*, 297 F.3d at 548)).

**DOCUMENTS SOUGHT TO BE SEALED**

11. Cook's Response relies on and cites the Cook confidential information and the protected health information contained in the Exhibits discussed individually below.

12. Exhibit 1 to the Response is Excerpts of the Deposition of Elisa Harvey, DVM, Ph.D. ("Harvey Dep.") (July 24, 2017). Dr. Harvey is a Cook retained regulatory expert. Dr. Harvey was retained by Cook to address Cook's compliance with FDA regulations and guidance applicable to premarket submissions for the Tulip Vena Cava Filter and the Celect Vena Cava Filter. Dr. Harvey's deposition has be designated "Confidential – Subject to Protective Order." The deposition excerpts submitted at Exhibit 1 address Cook's regulatory submissions (*see, e.g.,* pp. 35, 91-92) and compliance with regulatory requirements (*see, e.g.,* pp. 60-61), as well as Cook's product research, testing, and development (*see, e.g.,* pp. 205, 304).

13. Exhibit 2 to the Response is an FDA guidance document entitled, Premarket Notification (510(k)), U.S. FOOD AND DRUG ADMIN. (last updated August 15, 2016), available at https://www.fda.gov/medicaldevices/deviceregulationandguidance/howtomarketyourdevice/premarketsubmissions/premarketnotification510k/default.htm#se. This exhibit is a publicly available document, is not confidential, and does not need to be maintained under seal.

14. Exhibit 3 to the Response is an FDA guidance document entitled, The 510(k) Program: Evaluating Substantial Equivalence in Premarket Notifications [510(k)], Guidance for Industry and Food and Drug Administration Staff, U.S. FOOD AND DRUG ADMIN., July 28, 2014, available at https://www.fda.gov/downloads/MedicalDevices/.../UCM284443.pdf. This exhibit is a publicly available document, is not confidential, and does not need to be maintained under seal.

15. Exhibit 4 to the Response is an FDA Memorandum Re: Reclassification of Cardiovascular Intravascular Filters authored by Veronica Price, a Biomedical Engineer at FDA, and is dated August 11, 2004 (CookMDL2570_1281529-1281538). This exhibit is a publicly available document, is not confidential, and does not need to be maintained under seal.

16. Exhibit 5 to the Response is Excerpts of the Deposition of Harold Pellerite ("Pellerite Dep.") (July 26, 2017). Harold "Wally" Pellerite ("Mr. Pellerite") is a Cook retained regulatory expert. Mr. Pellerite was retained by Cook to address Cook's compliance with FDA regulations and guidance applicable to premarket submissions and post-market monitoring of Cook Vena Cava filters. Mr. Pellerite's deposition has be designated "Confidential – Subject to the Protective Order." The deposition excerpts submitted at Exhibit 5 address Cook's regulatory submissions (*see, e.g.,* p. 120) and regulatory compliance with FDA guidance and regulations (*see, e.g.,* p. 154).

17. Exhibit 6 to the Response is Excerpts of the Deposition of Dr. Alexander Marmureanu ("Marmureanu Dep.") (June 20-21, 2017). Dr. Marmureanu is Plaintiff Elizabeth Jane Hill's and Plaintiff Arthur Gage's retained expert. Dr. Marmureanu's deposition has been designated "Confidential – Subject to Protective Order." The deposition excerpts submitted at Exhibit 6 include information related to and references to Dr. Marmureanu's opinions on the design of the Celect Filter (pp. 154, 324, 325, 345, 380); Cook's internal complaint reports (p. 326); and Mrs. Hill's medical history, conditions, and treatment (pp. 497-500).

18. Exhibit 7 to the Response is Excerpts of the Deposition of Dr. Anthony Venbrux ("Venbrux Dep.") (July 14, 2017). Dr. Venbrux is Cook's retained medical expert who was asked to opine in the *Hill* matter. Dr. Venbrux's deposition has be designated "Confidential – Subject to Protective Order." The deposition excerpts submitted at Exhibit 7 include discussions of Mrs. Hill's medical history, conditions, and treatment.

19. Exhibit 8 to the Response is Ex. 22 to the Deposition of Dr. Anthony Venbrux ("Venbrux Dep.") (July 14, 2017). Ex. 22 to Dr. Venbrux's Deposition is a venogram of another

patient (*i.e.,* a patient other than Mrs. Hill) dated April 20, 2007, more than three years before Mrs. Hill even received her filter.

20. Exhibit 9 to the Response is the March 17, 2017 Letter from Plaintiffs' Counsel David P. Matthews providing "Bellwether Plaintiffs Hill and Gage's Designation of Experts and Opinion Testimony." In this letter, Plaintiffs' counsel identifies Plaintiffs' retained experts by name and address. Further, Plaintiffs' counsel discloses and identities by name and address individuals who will provide opinion testimony, but who have not been retained as experts ("unretained experts"). With respect to these unretained experts – *which include some of Plaintiffs' treating physicians* – Plaintiff's counsel also generally identifies and describes the subject matter of their testimony and various facts and opinions. Information about Plaintiffs Elizabeth Jane Hill's and Arthur Gage's respective medical histories and conditions is included within the unretained expert disclosures.

21. Exhibit 10 to the Response is Excerpts of the Deposition of Dr. Anthony Moreno ("Moreno Dep. I") ( March 14, 2017). Dr. Moreno is a board-certified orthopedic surgeon and one of Plaintiff Elizabeth Jane Hill's treating physicians. He prescribed an IVC filter for Mrs. Hill. Dr. Moreno's deposition has be designated "Confidential – Subject to the Protective Order." The deposition excerpts submitted at Exhibit 10 include information about Mrs. Hill's medical history, conditions, and treatment.

22. Exhibit 11 to the Response is Excerpts of the Deposition of Dr. Anthony Moreno ("Moreno Dep. II") (April 26, 2017). Dr. Moreno's deposition has be designated "Confidential – Subject to Protective Order." The deposition excerpts submitted at Exhibit 11 include information about Mrs. Hill's medical history, conditions, and treatment.

23. Exhibit 12 to the Response is Excerpts of the Deposition of Dr. Timothy Larkin ("Larkin Dep.") (April 19, 2017). Dr. Timothy Larkin is a board-certified cardiologist and one of Plaintiff Arthur Gage's treating physicians. Dr. Larkin's deposition has been designated "Confidential – Subject to Protective Order." The deposition excerpts submitted at Exhibit 12 include information about Mr. Gage's medical history, conditions, and treatment.

24. Exhibit 13 to the Response is Ex. 17 to the Deposition of Dr. Timothy Larkin ("Larkin Dep.") (April 19, 2017). Dr. Larkin's deposition has been designated "Confidential – Subject to the Protective Order." Ex. 17 to Dr. Larkin's deposition is one of Plaintiff Arthur Gage's medical records. Specifically, it is a record of Mr. Gage's January 16, 2014 Office Visit with Dr. Larkin. It includes information about Mr. Gage's medical history, conditions, and treatment.

25. Exhibit 14 to the Response is Excerpts of the Deposition of Dr. Mark Zuzga ("Zuzga Dep.") ( April 19, 2017). Dr. Zuzga is one of Mrs. Hill's treating physicians and, more specifically, is the vascular surgeon who implanted Mrs. Hill's Celect IVC filter. Dr. Zuzga's deposition has been designated "Confidential." The deposition excerpts submitted at Exhibit 14 include information about Mrs. Hill's medical history, conditions, and treatment.

26. Exhibit 15 to the Response is Excerpts of the Deposition of Dr. Frank Lynch ("Lynch Dep.") (May 26, 2017). Dr. Lynch is one of Mrs. Hill's treating physicians and, more specifically, is the interventional radiologist who retrieved Mrs. Hill's filter. Dr. Lynch's deposition has been designated "Confidential – Subject to Protective Order." The deposition excerpts submitted at Exhibit 15 include information about Mrs. Hill's medical history, conditions, and treatment.

27.  Exhibit 16 to the Response is Excerpts of the Deposition of Dr. Paul Crisostomo ("Crisostomo Dep.") (January 13, 2017). Dr. Crisostomo is one of Mr. Gage's treating physicians and, more specifically, is the vascular surgeon who ordered and reviewed imaging of Mr. Gage's IVC filter after Mr. Gage complained of pain. Dr. Crisostomo's deposition has been designated "Confidential – Subject to Protective Order." The deposition excerpts submitted at Exhibit 16 include information about Mr. Gage's medical history, conditions, and treatment.

### THERE IS GOOD CAUSE TO MAINTAIN THE DOCUMENTS UNDER SEAL

28.  Exhibit 1 references and contains information on Cook's product research and development with respect to IVC filters. This information and document fit the definition of protected confidential information because they rely on information that is not publicly available and the disclosure of which would pose a serious risk of economic harm to Cook. *See Chaib*, 2014 WL 4794194, at *1–3. As Cook more fully demonstrated in its May 1, 2017 letter to Magistrate Judge Tim A. Baker and the supporting Declaration of Mark Breedlove (attached hereto as **Exhibit A**), Cook invests substantial resources into research and development, including with regard to Cook's IVC filter technology. Breedlove Decl. ¶ 6. Cook maintains strict confidentiality over its research and development ideas, efforts, and results, and considers such information to be proprietary to the company. *Id.* And disclosure of such information would therefore result in competitive harm to Cook and could "lead to a windfall to the discovering party." *Star Scientific*, 204 F.R.D. at 416; Breedlove Decl. ¶¶ 6–7. The Court should permit this document, and Cook's Response citing and discussing this document, to be filed under seal.

29.  Exhibits 1 and 5 reference, address, and contain information on Cook's regulatory affairs. As pointed out above, courts have held that information related to regulatory compliance

and/or submission efforts and strategies constitute confidential business information. *See, e.g., Bayer Healthcare, LLC v. Norbrook Labs., Ltd.*, 2009 WL 3444938, at *1 (E.D. Wisc. Oct. 23, 2009) (good cause existed to seal deposition testimony and internal company emails containing proprietary commercial information and strategy related to an FDA filing). With respect to regulatory affairs, Cook invests substantial time and resources in developing regulatory strategies that ensure regulatory compliance in what Cook deems to be the best and most efficient ways possible. Breedlove Decl. ¶ 10. Cook maintains confidentiality with regard to its interactions with the agencies that regulate Cook, including the FDA, as well as the methods and strategies it employs in planning for regulatory submissions, responding to regulatory inquiries, and other aspects of regulatory affairs, because such information is the product of great investment and provides commercial and competitive benefits for Cook. *Id*. Disclosure of Cook's regulatory compliance methods and strategies would lead to a competitive disadvantage for Cook, as its competitors would be able to access, and potentially adopt and benefit from Cook's methods and strategies, without having to make the investment that Cook was required to make. *Id*. at ¶ 11. The Court should permit these documents, and Cook's Response citing and discussing these documents, to be filed under seal.

30.     Exhibit 6 references and contains information on, among other things, Cook's internal complaint reports and Cook's product design. Again, the Cook Defendants' May 1, 2017 letter to Magistrate Baker and the Breedlove Declaration are instructive and demonstrate good cause to maintain Exhibit 6 under seal. With regard to complaint handling, Cook has developed complaint handling protocols and processes that govern the manner in which Cook responds to complaints, the types of information Cook evaluates in response to complaints, and the concerns and factors that drive Cook's decision-making in the complaint handling process.

Breedlove Decl. ¶ 12. Cook maintains strict confidentiality with regard to its complaint handling efforts, as well as the underlying processes and protocols for such efforts. *Id*. The Court should permit this document, and Cook's Response citing and discussing this document, to be filed under seal.

31. Finally, Exhibits 6, 7, 9, 10, 11, 12, 13, 14, 15, and 16 reference and contain information related to Plaintiff Elizabeth Jane Hill's and Plaintiff Arthur Gage's respective medical histories, conditions, and treatments. Exhibit 8 is a medical record – a venogram – related to another patient altogether. As pointed out above, courts in the Seventh Circuit have routinely recognized that, while parties' medical information may be made public where it is relevant to the claims at issue and/or necessary to the disposition of the case, other information may be kept under seal with good cause. *See Westedt v. Franklin,* 2016 WL 2997504, at *1 (E.D. Wis. May 23, 2016); *Gibson v. Milwaukee Cnty.*, 2015 WL 12964665, at *1 (E.D. Wis. Mar. 26, 2015); *Noe v. Carlos,* 2008 WL 5070463, at *3 (N.D. Ind. Nov. 26, 2008). The good cause inquiry thus requires balancing a party's acknowledged interest in medical privacy, *see Whalen v. Roe*, 429 U.S. 589, 599–600 (1977), against the Court's (and parties') interest in the accurate resolution of the conflict and the public interest in transparency. *Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017). These exhibits contain private, sensitive medical information. Out of an abundance of caution, Cook seeks to have these documents filed and maintained under seal for good cause until Plaintiffs consent to what should be disclosed and further to protect the medical privacy of the patient record at Exhibit 8.

32. A proposed order granting this Motion has been filed with this Motion as **Exhibit B.**

WHEREFORE, the Cook Defendants respectfully urge the Court to enter an order granting the Cook Defendants leave to file under seal and to maintain under seal The Cook Defendants' Response to Plaintiffs' Motion to Exclude or Limit the Testimony of Certain Defense Experts, and Exhibits 1, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, and 16 to that Response.

Dated:  September 6, 2017                    Respectfully submitted,

/s/ *Andrea Roberts Pierson*
Andrea Roberts Pierson (# 18435-49)
John T. Schlafer (# 28771-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone: (317) 237-0300
Facsimile:  (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-Mail:  john.schlafer@faegrebd.com

James Stephen Bennett (# 22869-02)
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana  46802
Telephone: (260) 424-8000
Facsimile: (260) 460-1700
stephen.bennett@faegrebd.com

*Counsel for the Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2017, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

/s/ *Andrea Roberts Pierson*

US.114032859