UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND           Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION            MDL No. 2570

_____

This Document Relates to Plaintiff:
    Elizabeth Jane Hill
    No. 1:14-cv-06016-RLY-TAB

_____

**THE COOK DEFENDANTS' MOTION TO MAINTAIN
DOCUMENTS UNDER SEAL (*THE COOK DEFENDANTS'
RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND EXHIBITS TO THE RESPONSE*)**

Pursuant to Local Rule 5-11(d)(2)(A), the Cook Defendants[1] respectfully move the Court to seal and maintain under seal The Cook Defendants' Response to Plaintiff's Motion for Partial Summary Judgment ("Response'), and Exhibits A, D, D.A., D.B., E, F, G, H, I, J, K, L, M, N, and O to that Response. In support of this motion, the Cook Defendants state:

**LEGAL STANDARD**

1.   Under Federal Rule of Civil Procedure 26(c)(1)(G), the court may, "for good cause," enter an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." *See also Baxter International, Inc. v. Abbott Laboratories*, 297 F.3d 544, 546 (7th Cir. 2002) (documents that "meet the definition of trade secret or other categories of bona fide long-term confidentiality" may be sealed). Likewise, private health information should be maintained

---

[1]   The Cook Defendants in this matter are Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS (collectively, the "Cook Defendants" or "Cook").

under seal at least until consent by the patient is obtained. *See generally Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017).

2.  **Trade Secrets –** Indiana has generally adopted the definition of trade secret found in the Uniform Trade Secret Act.[2] *See, e.g.*, *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 414 (S.D. Ind. 2001).[3] Under this standard, a protectable trade secret has four characteristics: (1) information; (2) that possesses independent economic value; (3) that is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (4) is the subject of efforts to maintain its secrecy that are reasonable under the circumstances. *See, e.g.*, *Hamilton v. State Farm Mut. Auto Ins. Co.*, 204 F.R.D. 420, 423 (S.D. Ind. 2001); *Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 759 N.E.2d 239, 245–46 (Ind. Ct. App. 2001); *Burk v. Heritage Food Serv. Equip., Inc.*, 737 N.E.2d 803, 813 (Ind. Ct. App. 2000).

3.  Other confidential business or commercial information that does not technically fit the definition of trade secret is similarly entitled to the same level of protection as trade secrets if its disclosure would be harmful physically or economically. *See Chaib v. GEO Grp., Inc.*, 2014 WL 4794194, at *1–3 (S.D. Ind. Sept. 24, 2014); *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at *1 (S.D. Ind. Feb. 2, 2009) (finding that protection is required where disclosure of certain proprietary information would "provide a blueprint for competitors").

---

[2] The presence of Cook's headquarters in Indiana justified the application of Indiana trade secret law to the issues here, because Indiana is the state where Cook would feel any injury or harm. *See, e.g.*, *Micro Data Base Sys., Inc. v. Dharma Sys., Inc.,* 148 F.3d 649 (7th Cir. 1998) (applying Indiana choice-of-law principles in a trade-secret case and holding that New Hampshire substantive law governed because the entity holding the trade secrets was headquartered there).

[3] The Indiana Uniform Trade Secret Act is identical to the Uniform Trade Secrets Act, 1(4), 14 U.L.A. 438 (1985).

4. **Research and Development** – Federal courts, including this court, have consistently held that product development, research, and testing documents and information are entitled to protection from disclosure as confidential and proprietary business information. Such information constitutes confidential business information because "a competitor's access to [a company's] research and development . . . present[s] potential dangers and may lead to a windfall to the discovering party." *Star Scientific,* 204 F.R.D. at 416 (S.D. Ind. 2001) (Baker, J.); *see also United States ex rel. Long v. GSD&M Idea City LLC*, 2014 WL 12648520, at *2 (N.D. Tex. Jan. 3, 2014) ("[I]nformation in which the producing party has a commercial interest, such as . . . research data, . . . has been found to constitute confidential commercial information."); *Kowalsky v. Hewlett-Packard Co.*, 2012 WL 892427, at *2 (N.D. Cal. Mar. 14, 2012) (exhibits were "sealable in their entirety because they contain[ed] HP's confidential product testing and evaluation process"); *cf. Andrx Pharm., LLC v. GlaxoSmithKline, PLC,* 236 F.R.D. 583, 586 (S.D. Fla. 2006) ("Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information." (citation omitted)), *affirmed,* 2006 WL 2403942 (S.D. Fla. 2006).

5. **Post-Market Product Analysis** – Similarly, post-market product analysis is also entitled to protection from disclosure as confidential and proprietary business information. Disclosure of such proprietary post-market analysis information is harmful because it would "provide a blueprint for competitors." *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at *1 (S.D. Ind. Feb. 2, 2009); *see also Star Scientific*, 204 F.R.D. at 415 (research and data, such as sales techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge").

6. **Sales, Marketing, and Public Relations** – Confidential marketing plans or sales strategies have been held to constitute protectable trade secrets or protected confidential business information. *See, e.g.*, *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1270 (7th Cir. 1995) (trade secret material for sports drink includes information regarding the pricing, distribution and marketing of the drink and not just the drink formula); *Star Scientific*, 204 F.R.D. at 415 (research and data, such as sales techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge"); *Burk v. Heritage Serv. Equip.*, 737 N.E.2d 803, 814 (Ind. Ct. App. 2000) (finding that employee unfairly used marketing information and sales strategies in breach of the Indiana trade secrets clause); *see also Brunswick Corp. v. Jones*, 784 F.2d 271 (7th Cir. 1986) (confidential marketing strategies held protectable); *AGS Capital Corp., Inc. v. Prod. Action Intern., LLC*, 884 N.E.2d 294, 311 (Ind. Ct. App. 2008) (stolen information related to marketing strategy would "put [a company's competitors] at a severe disadvantage"). Good cause exists to maintain the confidentiality of such strategic plans and analysis when disclosure of that information would reveal the company's "response to changing market situations and competitive threats within the marketplace, and could therefore give a competitor insight into '[the company's] internal thinking'" and when publicizing this material "would allow [the company]'s competitors the benefit of this information without incurring the effort or expense." *Bradburn Parent/Teacher Store, Inc. v. 3M*, 2004 WL 1146665, at *4 (E.D. Pa. May 19, 2004) (citation omitted).

7. **Regulatory Affairs** – Courts have held that information related to regulatory compliance and/or submission efforts and strategies constitute confidential business information. *See, e.g.*, *Bayer Healthcare, LLC v. Norbrook Labs., Ltd.*, 2009 WL 3444938, at *1 (E.D. Wisc. Oct. 23, 2009) (good cause existed to seal deposition testimony and internal company emails

containing proprietary commercial information and strategy related to an FDA filing). Such proprietary information, like confidential information regarding pricing and sales, is confidential because "the information is created to enhance [companies'] business and give them a competitive edge". *Star Scientific*, 204 F.R.D. at 415.

8. **Complaint Handling** – Internal complaint handling procedures and materials constitute trade secrets in Indiana if they contain (1) information; (2) that derives independent economic value; (3) is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (4) is the subject of efforts reasonable under the circumstances to maintain its secrecy. *Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 759 N.E.2d 239, 245-46 (Ind. Ct. App. 2001); *see also, e.g.*, *Hamilton v. State Farm Mut. Auto. Ins. Co.*, 204 F.R.D. 420, 423-24 (S.D. Ind. 2001); *Rep. Servs. Inc. v. Liberty Mut. Ins. Cos.*, 2006 WL 1635655, at *5 (E.D. Ken. June 9, 2006) (concluding that claims handling and training materials "had economic value to [defendant] due to (1) their confidential nature, (2) the time, effort, and expense [defendant] invested in creating these materials, (3) the evolutionary process surrounding the development of these materials, (4) the competitive nature of the [industry's] business, and (5) the fact that competitors in [that] industry do not disclose information about their claims handling policies and procedures to one another.").

9. **Medical Privacy** – With respect to medical information, courts in the Seventh Circuit have routinely recognized that, while parties' medical information may be made public where it is relevant to the claims at issue and/or necessary to the disposition of the case, other information may be kept under seal with good cause. *See Westedt v. Franklin,* 2016 WL 2997504, at *1 (E.D. Wis. May 23, 2016); *Gibson v. Milwaukee Cnty.*, 2015 WL 12964665, at

*1 (E.D. Wis. Mar. 26, 2015); *Noe v. Carlos,* 2008 WL 5070463, at *3 (N.D. Ind. Nov. 26, 2008). The good cause inquiry thus requires balancing a party's acknowledged interest in medical privacy, *see Whalen v. Roe*, 429 U.S. 589, 599–600 (1977), against the Court's (and parties') interest in the accurate resolution of the conflict and the public interest in transparency. *Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017). Private health information should be maintained under seal at least until consent by the patient is obtained. *See generally id.* at *3.

10.     The "good cause" standard under Rule 26(c) "requires a balancing of the potential harm to the litigants' interests against the public's right to obtain information concerning judicial proceedings." *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 415-16 (S.D. Ind. 2001) (Baker, J.); *see also Felling v. Knight*, 211 F.R.D. 552, 554 (S.D. Ind. 2003) ("The rule essentially operates to balance the public's interest in open proceedings against an individual's private interest in avoiding annoyance, embarrassment, oppression, or undue burden or expense.") (Baker, J.). Consistent with the doctrine discussed earlier, however, "the presumption of public access 'applies only to the materials that formed the basis of the parties' dispute and the district court's resolution; other materials that may have crept into the record are not subject to the presumption." *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013) (citing *Baxter Int'l*, 297 F.3d at 548)).

**DOCUMENTS SOUGHT TO BE SEALED**

11.     Cook's Response contains, relies on, or cites the Cook confidential information and the protected health information contained in the Exhibits discussed individually below.

12.     Exhibit A to the Response is the Expert Report of Dr. David A. Kessler ("Kessler Report") (March 17, 2017). Dr. Kessler's report relies on and quotes extensively from internal

Cook documents relating to design of the Celect (*see, e.g.,* Sections VI.A, VI.G., VIII.B.), internal studies of IVC filter performance commissioned by Cook for Cook's proprietary use and not available to the public (*see, e.g.,* Sections VI.B-C., VIII.B., IX.), multiple internal communications about responses to FDA and other regulatory agency requests for information and 510(k) submissions (*see, e.g.,* Sections VII., VI.C.5.a., VI.C.5.c.,VIII.A), and Cook's analysis of complaints and sales data (*see, e.g.,* Sections VI.D.-F., Schedule 4).  A redacted version of this document is attached to Cook's public filing; Cook has filed an unredacted version under seal.

13. Exhibit B to the Response is an FDA guidance document entitled, The 510(k) Program: Evaluating Substantial Equivalence in Premarket Notifications [510(k)], Guidance for Industry and Food and Drug Administration Staff, U.S. FOOD AND DRUG ADMIN., July 28, 2014, available at https://www.fda.gov/downloads/MedicalDevices/.../UCM284443.pdf.  This exhibit is a publicly available document, is not confidential, and does not need to be maintained under seal.

14. Exhibit C to the Response is an FDA guidance document entitled, Premarket Notification 510(k), U.S. FOOD AND DRUG ADMIN. (last updated August 15, 2016), available at https://www.fda.gov/medicaldevices/deviceregulationandguidance/howtomarketyourdevice/premarketsubmissions/premarketnotification510k/default.htm#se.  This exhibit is a publicly available document, is not confidential, and does not need to be maintained under seal.

15. Exhibit D to the Response is the Declaration of April Lavender (8/9/2017) ("Lavender Decl.") *with selected documents from Exhibit B to the 8/9/2017 Declaration attached* – Ex. D.A., Veronica Price, FDA Biomedical Engineer, Memorandum: Reclassification of Cardiovascular Intravascular Filters (December 2, 1996) (COOKFOIA 000065-000180), and

Ex. D.B., Veronica Price, FDA Biomedical Engineer, Memorandum: Reclassification of Cardiovascular Intravascular Filters (August 11, 2004) (COOKFOIA 000181-000190). The Declaration of April Lavender recounts Cook's communications with the Food and Drug Administration (FDA) in connection with the development and approval process for the Gunther Tulip and Celect filters. Exhibit D discusses and refers to internal Cook documents that reflect Cook's strategic thinking and design process and that have not been made publicly available. Exhibit D also authenticates Ex. D.A. and Ex. D.B. which are among the documents Cook received from the FDA in response to Cook's FOIA request.

16. Exhibit E to the Response is the Expert Report of Elisa D. Harvey, DVM, Ph.D. ("Harvey Report") (June 12, 2017). Dr. Harvey is a Cook retained regulatory expert. Dr. Harvey was retained to address Cook's compliance with FDA regulations and guidance applicable to premarket submissions for the Tulip Vena Cava Filter and the Celect Vena Cava Filter. The Harvey Report has been designated as containing confidential material. The Harvey Report contains an analysis of Cook's approval process for the Gunther Tulip and Cook Celect filters that discusses Cook study data and other forms of information that were submitted to the Food and Drug Administration (FDA) during the approval process but which were not otherwise disclosed publicly (pp. 17–25).

17. Exhibit F to the Response is Excerpts of the Deposition of Elisa D. Harvey, DVM, Ph.D. ("Harvey Dep.") (July 24, 2017). Dr. Harvey's deposition has been designated "Confidential – Subject to Protective Order." The deposition excerpts submitted at Exhibit F address 510(k) requirements and regulatory submissions**.**

18. Exhibit G to the Response is Excerpts of the Deposition of Dr. Anthony Venbrux ("Venbrux Dep.") (July 14, 2017). Dr. Venbrux is Cook's retained medical expert who was

asked to opine in the *Hill* matter. Dr. Venbrux's deposition has be designated "Confidential – Subject to Protective Order." The deposition excerpts submitted at Exhibit G include discussions of Mrs. Hill's medical history, conditions, and treatment.

19. Exhibit H to the Response is the Expert Report of Dr. Anthony Venbrux ("Venbrux Report") (June 26, 2017). Dr. Venbrux is Cook's retained medical expert who was asked to opine in the *Hill* matter. The Venbrux Report has been designated as containing confidential material. The Venbrux Report submitted at Exhibit H includes discussions of Mrs. Hill's medical history, conditions, and treatment, as well as discussions of internal Cook documents that are not available to the public (pp. 6-9, 14-16), and internal studies of IVC filter performance commissioned by Cook for Cook's proprietary use, which is also not available to the public (pp. 14-16)**.**

20. Exhibit I to the Response is the Expert Report of Dr. Todd Baron ("Baron Report") (June 29, 2017). Dr. Baron is Cook's retained medical expert who was asked to opine on gastrointestinal issues in the *Hill* matter. The Baron Report has been designated "Confidential." The Baron Report submitted at Exhibit I includes discussions of Mrs. Hill's medical history, conditions, and treatment.

21. Exhibit J to the Response is Excerpts of the Deposition of Dr. Alexander Marmureanu ("Marmureanu Dep.") (June 20-21, 2017). Dr. Marmureanu is Plaintiff Elizabeth Jane Hill's and Plaintiff Arthur Gage's retained expert. Dr. Marmureanu's deposition has been designated "Confidential – Subject to Protective Order." The deposition excerpts submitted at Exhibit J include information related to Mrs. Hill's medical history, conditions, and treatment.

22. Exhibit K to the Response is one of Plaintiff Elizabeth Jane Hill's medical records. Specifically, it is Mrs. Hill's Informed Consent signed November 17, 2010. It includes information about Mrs. Hill's medical history, conditions, and treatment.

23. Exhibit L to the Response is one of Plaintiff Elizabeth Jane Hill's medical records. Specifically, it is Mrs. Hill's Informed Consent signed March 23, 2011. It includes information about Mrs. Hill's medical history, conditions, and treatment.

24. Exhibit M to the Response is one of Plaintiff Elizabeth Jane Hill's medical records. Specifically, it is Mrs. Hill's Consent for Procedure signed November 17, 2010. It includes information about Mrs. Hill's medical history, conditions, and treatment.

25. Exhibit N to the Response is Excerpts of the Deposition of Elizabeth Jane Hill ("Hill Dep.") (November 10, 2016). The deposition excerpts submitted at Exhibit N include information related to Mrs. Hill's medical history, conditions, and treatment.

26. Exhibit O to the Response is the Case Specific Expert Report of Dr. Alexander Marmureanu for Plaintff Elizabeth Jane Hill ("Marmureanu HILL Report"). Dr. Marmureanu is Plaintiff Elizabeth Jane Hill's and Plaintiff Arthur Gage's retained expert. Dr. Marmureanu's report submitted at Exhibit O discusses Mrs. Hill's medical history, conditions, and treatment. A redacted version of this document is attached to Cook's public filing; Cook has filed an unredacted version under seal.

**THERE IS GOOD CAUSE TO MAINTAIN THE DOCUMENTS UNDER SEAL**

27. Exhibit A references and contains information on Cook's product research and development with respect to IVC filters. This information and document fit the definition of protected confidential information because they rely on information that is not publicly available and the disclosure of which would pose a serious risk of economic harm to Cook. *See Chaib,*

2014 WL 4794194, at *1–3. As Cook more fully demonstrated in its May 1, 2017 letter to Magistrate Judge Tim A. Baker and the supporting Declaration of Mark Breedlove (attached hereto as **Exhibit 1**), Cook invests substantial resources into research and development, including with regard to Cook's IVC filter technology. Breedlove Decl. ¶ 6. Cook maintains strict confidentiality over its research and development ideas, efforts, and results, and considers such information to be proprietary to the company. *Id.* And disclosure of such information would therefore result in competitive harm to Cook and could "lead to a windfall to the discovering party." *Star Scientific*, 204 F.R.D. at 416; Breedlove Decl. ¶¶ 6–7. The Court should permit this document, and Cook's Response citing and discussing this document, to be filed under seal.

28. Exhibit A also references and contains information on Cook's post-market product analysis. With respect to post-market analysis, Cook undertakes substantial efforts to evaluate the performance of its medical devices (including IVC filters), as well as competitor devices in the industry, post-market. Breedlove Decl. ¶ 8. These include efforts to (among other things) evaluate adverse event reports, both quantitatively and qualitatively; review and internally evaluate peer-reviewed literature about Cook and competitor products; to perform testing on characteristics of Cook and competitor products; and, when there are reported failures, to study and understand how and why Cook or competitor products allegedly failed. *Id.* Cook's methods of assessing its own products, including characteristics of products it may want to improve, could be exploited to Cook's commercial disadvantage and even discourage Cook employees (as well as the employees of other organizations in the medical device industry) from engaging in and/or memorializing such analyses, which could have a negative impact on product development and safety. Disclosure of Cook's post-market analysis efforts would harm Cook.

29.     Exhibits A, D, D.A., D.B., E, and F reference, address, and contain information on Cook's regulatory affairs.  As pointed out above, courts have held that information related to regulatory compliance and/or submission efforts and strategies constitute confidential business information.  *See, e.g.*, *Bayer Healthcare, LLC v. Norbrook Labs., Ltd.*, 2009 WL 3444938, at *1 (E.D. Wisc. Oct. 23, 2009) (good cause existed to seal deposition testimony and internal company emails containing proprietary commercial information and strategy related to an FDA filing).  With respect to regulatory affairs, Cook invests substantial time and resources in developing regulatory strategies that ensure regulatory compliance in what Cook deems to be the best and most efficient ways possible.  Breedlove Decl. ¶ 10.  Cook maintains confidentiality with regard to its interactions with the agencies that regulate Cook, including the FDA, as well as the methods and strategies it employs in planning for regulatory submissions, responding to regulatory inquiries, and other aspects of regulatory affairs, because such information is the product of great investment and provides commercial and competitive benefits for Cook.  *Id*.  Disclosure of Cook's regulatory compliance methods and strategies would lead to a competitive disadvantage for Cook, as its competitors would be able to access, and potentially adopt and benefit from Cook's methods and strategies, without having to make the investment that Cook was required to make.  *Id*. at ¶ 11.  The Court should permit these documents, and Cook's Response citing and discussing these documents, to be filed under seal.

30.     Exhibits A and H reference and contain information on, among other things, Cook's internal complaint handling.  Again, the Cook Defendants' May 1, 2017 letter to Magistrate Baker and the Breedlove Declaration are instructive and demonstrate good cause to maintain these Exhibits under seal.  With regard to complaint handling, Cook has developed complaint handling protocols and processes that govern the manner in which Cook responds to

- 12 -

complaints, the types of information Cook evaluates in response to complaints, and the concerns and factors that drive Cook's decision-making in the complaint handling process. Breedlove Decl. ¶ 12. Cook maintains strict confidentiality with regard to its complaint handling efforts, as well as the underlying processes and protocols for such efforts. *Id*. The Court should permit these documents, and Cook's Response citing these documents, to be filed under seal.

31. Finally, Exhibits G, H, I, J, K, L, M, N, and O reference and contain information related to Plaintiff Elizabeth Jane Hill's medical history, conditions, and treatments. As pointed out above, courts in the Seventh Circuit have routinely recognized that, while parties' medical information may be made public where it is relevant to the claims at issue and/or necessary to the disposition of the case, other information may be kept under seal with good cause. *See Westedt v. Franklin,* 2016 WL 2997504, at *1 (E.D. Wis. May 23, 2016); *Gibson v. Milwaukee Cnty.*, 2015 WL 12964665, at *1 (E.D. Wis. Mar. 26, 2015); *Noe v. Carlos,* 2008 WL 5070463, at *3 (N.D. Ind. Nov. 26, 2008). The good cause inquiry thus requires balancing a party's acknowledged interest in medical privacy, *see Whalen v. Roe*, 429 U.S. 589, 599–600 (1977), against the Court's (and parties') interest in the accurate resolution of the conflict and the public interest in transparency. *Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017). These exhibits contain private medical information. Cook seeks to have these documents filed and maintained under seal for good cause until Plaintiff Elizabeth Jane Hill consents to what should be disclosed in order to protect her medical privacy.

32. A proposed order granting this Motion has been filed with this Motion as **Exhibit 2.**

WHEREFORE, the Cook Defendants respectfully urge the Court to enter an order granting the Cook Defendants leave to file under seal and to maintain under seal The Cook

Defendants' Response to Plaintiffs' Motion for Partial Summary Judgment, and Exhibits A, D, D.A., D.B., E, F, G, H, I, J, K, L, M, N, and O to that Response.

Dated:  September 8, 2017                    Respectfully submitted,

/s/ *Andrea Roberts Pierson*
Andrea Roberts Pierson (# 18435-49)
John T. Schlafer (# 28771-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone: (317) 237-0300
Facsimile:  (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-Mail:  john.schlafer@faegrebd.com

James Stephen Bennett (# 22869-02)
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana  46802
Telephone: (260) 424-8000
Facsimile: (260) 460-1700
stephen.bennett@faegrebd.com

*Counsel for Defendants Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

US.114076988

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2017, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

                                                   /s/ *Andrea Roberts Pierson*

US.114076988