IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |
| This Document Relates to<br>Cause No.: 1:17-cv-06076-RLY-TAB | |

### COOK DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

This case is one of hundreds of similar product liability cases in which it is alleged that an individual received a defective inferior vena cava filter ("IVC filter") that was designed and manufactured by Cook Group Incorporated, Cook Medical LLC, f/k/a Cook Medical Incorporated, and William Cook Europe ApS (collectively, "Cook"). *See* Am. Complaint, ¶ 4; *In re Cook Medical, Inc., IVC Filters Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2570 (the "MDL") (J.P.M.L. Oct. 15, 2014) (initial transfer order) (attached hereto as Exhibit A). In an attempt to avoid federal diversity jurisdiction and the MDL, Plaintiffs—who are citizens of Ohio and represented by one of the law firms that pushed for the creation of the MDL—have named as defendants a Matthew Mell, M.D., California physician, Stanford Health Care, a California medical facility (collectively, the "Medical Defendants"), alleging medical malpractice claims. Cook removed the case to federal court on two independent theories: (1) the theory that the Medical Defendants should be severed from the case under Federal Rule of Civil Procedure 21; and (2) fraudulent misjoinder, also known as procedural misjoinder. Plaintiffs now move to remand.

1

Plaintiffs' motion to remand should be denied for two reasons. First, this Court can and should sever the claims against the Medical Defendants under Federal Rule of Civil Procedure 21. The Medical Defendants are neither necessary nor indispensable parties to the action. Severance is particularly appropriate given the existence of the MDL and the prejudice that will result if Cook is forced to defend against the same types of claims in multiple jurisdictions. Plaintiffs, on the other hand, will not be prejudiced in the slightest given their counsel's participation on the Plaintiffs' Executive Steering Committee in the MDL where they currently represent 102 plaintiffs. Allowing Plaintiffs to avoid the existing MDL simply by naming a nondiverse treating physician and hospital as defendants defeats the entire purpose of the MDL and undermines efforts to reach a resolution as to the underlying product liability claims.[1] As the Medical Defendants are not properly joined parties, their citizenship can be ignored for purposes of determining diversity jurisdiction.

Alternatively, the Court should rule that Plaintiffs have procedurally misjoined the Medical Defendants. Plaintiffs' product liability claims against Cook call for a factual investigation into the product's design, development, manufacture, sale, marketing, labeling, advertising, promotion, and distribution, while Plaintiffs' medical malpractice claims concern the standard of care, patient interactions, and diagnosis of health ailments. The two sets of claims

---

[1] Cook is currently dealing with this issue in various courts across the country. *See Osorio v. Cook Group Incorporated et al.*, Case No. 5:17-cv-01146 (C.D. Cal.); *Pierce v. Frink et al.*, Case No. 2:17-cv-01731 (E.D. Cal.); *Berman-Cheung et al. v. Cook Group Incorporated et al.*, Case No. 5:17-cv-02564 (N.D. Cal.); *Kay v. Regents of the University of California et al.*, Case No. 3:17-cv-01512 (S.D. Cal.); *Lowther-Berman v. Cook Incorporated et al.*, Case No. 2:17-cv-03852, (S.D. W. Va.); *Strickland v. Proffitt et al.*, Case No. 3:17-cv-02059 (N.D. Tex.); *Tew v. Rice et al.*, Case No. 2:17-cv-06351; *Schmellick v. Cook Incorporated et al.*, Case No. 2:17-cv-02640-WB (E.D. Pa.); *Pleasant v. Cook Incorporated et al.*, Case No. 3:17-cv-01498 (N.D. Tex.); *Givney v. Savage et al.*, Case No. 3:17-01432 (N.D. Tex.); *Jewett v. Baxter et al.*, Case No. 5:17-cv-05036 (D.S.D.); *Lowicki v. Lung et al.*, Case No. 2:17-cv-01615 (D. Nev.) *Collins, et al. v. Cook Group Incorporated, et al.*, Case No. 4:16-CV-02140 (E.D. Mo.); *Halinski et al. v. Cook Group Incorporated et al.*, Case No. 4:16-CV-02141 (E.D. Mo.).

are quite different, and, given the existence of the MDL, they should be litigated in different courts—the product liability claims in the MDL, and the medical malpractice claims in state court.

## I. PROCEDURAL HISTORY

Plaintiffs filed this action in Santa Clara Superior Court on March 20, 2017. On May 4, 2017, Cook timely removed the case to federal court in the Northern District of California. Also on May 4, Cook filed a motion to stay all proceedings pending the JPML decision on transfer to MDL No. 2570, and a motion to sever the medical defendants under Federal Rule of Civil Procedure 21. Plaintiffs filed their motion to remand on June 2, 2017. All three motions were fully briefed as of June 30, 2017. On August 1, 2017, the JPML transferred Plaintiffs' case from the Northern District of California to this Court for inclusion in MDL No. 2570. *See* August 1, 2017 JPML Transfer Order, attached as Exhibit B.[2]

## II. THE MEDICAL DEFENDANTS SHOULD BE SEVERED FROM THIS ACTION.

Federal diversity jurisdiction requires that the parties be in complete diversity and the amount in controversy exceed $75,000. 28 U.S.C. § 1332. Plaintiffs do not dispute that the amount in controversy is met or that Cook's removal was timely. Instead, Plaintiffs argue that the Medical Defendants are California citizens that defeat diversity under the forum defendant rule. They do not.

---

[2] Prior to the transfer order, Plaintiffs made the same arguments to the JPML that they make in their motion to remand. The Panel transferred the case for inclusion in MDL No. 2570 without precluding Plaintiffs from making the arguments to this Court. ("The Panel often has held that jurisdictional issues do not present an impediment to transfer, as plaintiffs can present these arguments to the transferee judge.").

### 1. Plaintiffs do not dispute that this Court has discretion to sever the medical defendants.

Federal Rule of Civil Procedure 21 allows both district and appellate courts to drop nondiverse dispensable parties to secure subject matter jurisdiction in the remaining action. Fed. R. Civ. P. 21; *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989) ("It is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time …."). The Seventh Circuit has used Rule 21 to dismiss dispensable diversity-destroying defendants. *See, e.g., Altom Transport, Inc. v. Westchester Fire Ins. Co.*, 823 F.3d 416 (7th Cir. 2016).

That a nondiverse party may have been permissively joined by the standards of Rule 20 is immaterial. *Mayfield v. London Women's Care, PLLC*, 2015 WL 3440492, at *3, n.5 (E.D. Ky. May 28, 2015) ("During oral argument, Plaintiffs repeatedly voiced their belief that the claims in this case arise from the same transaction or occurrence. However, the controlling authority clearly states that severance under Rule 21 is guided by the standards set forth in Rule 19, not Rule 20."); *Longlois v. Stratasys, Inc.*, 2014 WL 2766111, at *4 (D. Minn. June 18, 2014) (concluding that "[w]hether the Plaintiffs can satisfy the standard for permissive joinder under Rule 20(a) is thus immaterial" when severing a co-plaintiff's claim under Rule 21). Even if Plaintiffs' medical malpractice claims and product liability claims were properly joined, "under Rule 21 the district court has the discretion to sever any claims that are 'discrete and separate' in the interest of judicial economy and to avoid prejudice." *Vermillion v. Levenhagen*, 604 Fed. Appx. 508, 513 (7th Cir. 2015) (citing *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 442 (7th Cir. 2006); *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000); and *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 D.2d 738, 743 (7th Cir. 1985)).

The Medical Defendants are neither necessary nor indispensable to this action. The Plaintiffs do not dispute this. Indeed, they fail to even mention the issue in their motion to remand. It is undisputed that the Medical Defendants played no role in the design or manufacture of the Cook IVC filter. Thus, they cannot be "necessary" for the resolution of Plaintiffs' product liability claims. The United States Supreme Court has held the same on very similar facts. *See, e.g., Temple v. Synthes Corp.*, 498 U.S. 5 (1990) (per curiam) (concluding that the physician who performed an implant surgery, and the hospital where the surgery occurred, were not necessary parties to a product liability action against the medical device manufacturer).

### 2. All factors weigh in favor of severance.

In determining whether to drop a nondiverse defendant under Rule 21, a court may consider "(1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims." *Allstate Property & Cas. Ins. Co. v. Omega Flex, Inc.*, 2013 WL 786764, at *2 (S.D. Ind. Mar. 1, 2013) (citing *In re High Fructose Corn Syrup Antitrust Litig.*, 293 F. Supp. 2d 854, 862 (C.D. Ill. 2003)).

### a. Plaintiffs' medical malpractice claims do not arise out of the same transaction or occurrence as Plaintiffs' product liability claims and do not present common questions of law or fact.

The first and second *Allstate* factors look to whether Plaintiffs' claims arise out of the same transaction or occurrence and whether they present common questions of law or fact. *Id*. Here, Plaintiffs' own allegations illustrate the significant factual and legal differences between the medical malpractice claims and the product liability claims. The medical malpractice claims

against the Medical Defendants involve the failure to "properly and correctly diagnose, render care and treatment to, obtain informed consent, perform proper surgery on, and prescribe and administer medicine and drugs for the condition of Decedent, causing his death." Am. Compl., ¶ 145.  On the other hand, Plaintiffs' product liability claims involve Cook's alleged failure "to use reasonable and prudent care in the design, research, manufacture, and development of Gunther Tulip IVC filters." *Id*. ¶ 74.  Plaintiffs' claims that go to the safety and efficacy of Cook's IVC filters have little if anything to do with the malpractice claims against the Medical Defendants. Likewise, the causation element of medical malpractice claims is proximate cause as opposed to producing cause for product liability claims.  The malpractice claims therefore may be appropriately severed from this action because they do not arise out of the same transaction or occurrence.

Courts across the country have retained jurisdiction over product liability claims against manufacturer defendants despite the presence of nondiverse healthcare providers.  In *In re Guidant Corp. Implantable Defibrillators Products Liability Litigation*, MDL No. 05-1708 (DWF/AJB), 2007 WL 2572048 (D. Minn. Aug. 30, 2007), for example, the court held that the joinder of the medical malpractice claim and product liability claims was "inappropriate because the claims do not both involve common questions of law or fact and assert joint, several, or alternative liability 'arising out of the same transaction, occurrence, or series of transactions or occurrences.'" *Id*. at *2 (citing Fed. R. Civ. P. 20(b)).  The court went on to state that "any liability that may be found against either [manufacturer defendant] or [doctor] would not be a basis for liability as to the other." *Id*.  Similarly, in *Stone v. Zimmer, Inc.,* No. 09-80252-CIV, 2009 WL 1809990 (S.D. Fla. June 25, 2009), the court held that medical malpractice and product liability claims "do not both involve common questions of law or fact" and do not "aris[e] out of

the same transaction or occurrence." *Id*. at *1. Other cases involving similar claims have come out the same way on the same or similar grounds. *See*, *e.g.*, *Smith v. Hendricks*, 140 F. Supp. 3d 66, 73-75 (D. D.C. 2015) (holding that medical malpractice claims improperly joined to product liability claims); *In re Stryker Rejuvenate and ABG II Hip Implant Prods. Liab. Litig.*, MDL No. 13-2441 (DWF/FLN), 2013 WL 6511855, at *5 (D. Minn. Dec. 12, 2013) (finding that medical malpractice claims do not arise out of same transaction or occurrence as the product liability claims); *Sutton v. Davol, Inc.*, 251 F.R.D. 500 (E.D. Cal. 2008) (finding that plaintiffs fraudulently misjoined their products liability claims against the manufacturer of a medical device with the medical malpractice claims against resident physician and hospital defendants because the malpractice claims could not be based on the alleged negligence of the manufacturer); *In re Rezulin Prods. Liab. Litig.*, MDL No. 1348, 2003 WL 21276425, at *1 (S.D.N.Y. June 2, 2003) ("the joinder of the malpractice claim with the others was inappropriate because the claims do not both involve common questions of law or fact and assert 'joint, several, or alternative liability . . . arising from the same transaction, occurrence, or series of transactions or occurrences.'" (quoting Fed. R. Civ. P. 20)).

As these cases show, Plaintiffs' medical malpractice claims against the Medical Defendants are "discrete and separate" from their product liability claims against Cook.

> **b.  Severance facilitates judicial economy and avoids prejudice where Plaintiffs' product liability claims are identical to those at issue in the MDL.**

The third factor to consider under *Allstate* is "whether settlement of the claims or judicial economy would be facilitated" by severance. 2013 WL 786764, at *2. Plaintiffs allege that the Cook IVC filter implanted in the decedent had an increased risk of "tilt, cracks, fracture, breakage, perforation and migration." Am. Compl., ¶ 62. The MDL transfer order states that

"[t]he subject actions share factual issues arising from allegations that defects in the design of Cook's inferior vena cava filters makes them more likely to fracture, migrate, tilt, or perforate the inferior vena cava, causing injury." *See* Ex. A. As the common questions of fact that formed the basis for the creation of the MDL directly overlap with Plaintiffs' allegations here, severance of the Medical Defendants will promote judicial economy and allow for the consolidation of Plaintiffs' product liability claims into a single proceeding.

      Cook will be the first to admit that Plaintiffs' argument would be far more compelling if there were no MDL. But there is an MDL—a very active MDL with hundreds of cases involving the very same products and product liability claims brought here. Courts across the country have agreed that the presence of the MDL is a "critical policy reason" for exercising discretion to sever nondiverse defendants under Rule 21. *See Sullivan v. Calvert Mem'l Hosp.*, 117 F. Supp. 3d 702, 707 (D. Md. 2015).[3] Severance is necessary to "preserve the interests of judicial expediency and justice so that all pre-trial discovery on the products liability case can be coordinated in a single forum." *Sutton v. Davol*, 251 F.R.D. 500, 505 (E.D. Cal. 2008). Severing the claims against the Medical Defendants and allowing the product liability claims to proceed in the MDL will also "greatly enhance" Plaintiffs' ability to negotiate a settlement. *Mayfield*, 2015 WL 3440492, at *5.

---

[3] The existence of an MDL was also an important factor in the following cases where the court severed nondiverse medical malpractice defendants from a case involving product liability claims. *See, e.g., Mayfield*, 2015 WL 3440492, at *5; *Kelly v. Aultman Physician Ctr.*, 2013 WL 2358583, at *2 (N.D. Ohio May 29, 2013); *Cooke–Bates v. Bayer Corp.*, 2010 WL 3984830, at *4 (E.D. Va. 2010); *Joseph v. Baxter Int'l Inc.*, 614 F. Supp. 2d 868, 873 (N.D. Ohio 2009); *Sutton*, 251 F.R.D. at 505; *In re Guidant*, 2007 WL 2572048, at *2 (D. Minn. Aug. 30, 2007); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 676 (D. Nev. 2004); *In re Rezulin*, 2003 WL 21276425, at *1 (S.D.N.Y. Jun. 2, 2003).

### c. Severance will benefit both parties and avoid prejudicing Cook.

The fourth *Allstate* factor looks to "whether prejudice would be avoided if severance were granted." 2013 WL 786764, at *2. Nowhere in their motion to remand do Plaintiffs allege they will be prejudiced by severance of the Medical Defendants. Nor could they. "The MDL procedure is designed to direct judicial resources and the parties' pretrial litigation efforts more efficiently to benefit *both* plaintiffs and defendants." *In re Propecia (Finasteride) Prods. Liab. Litig.*, 2013 WL 3729570, at *8 (E.D.N.Y. May 17, 2013) (emphasis added). The cost and burden of litigating against Cook will drop considerably, as Plaintiffs will not be required to engage in expensive and burdensome discovery on their own. *See Mayfield*, 2015 WL 3440492, at *5; *see also Joseph v. Baxter Int'l Inc.*, 614 F. Supp. 2d 868, 873 (N.D. Ohio 2009).

"If plaintiffs can escape the MDL by joining multiple, unconnected and non-diverse parties in a state court of their choice, they defeat the purposes of the MDL and deny defendants their right to removal." *In re Propecia*, 2013 WL 3729570, at *8. Cook would be required to separately litigate the product liability claims brought by Plaintiffs in California state court, when it is litigating hundreds of similar cases here, in the MDL. "Whatever inconvenience [the plaintiffs] might suffer from [their] having to litigate [their] claims in two separate forums, that inconvenience is far exceeded by the prejudice of requiring the manufacturer of a [medical device] to defend on many more than just two fronts." *Sullivan*, 117 F. Supp. 3d at 707. That prejudice would be needless, as Plaintiffs have an adequate remedy against the medical malpractice defendants in the form of a lawsuit in state court. *Mayfield*, 2015 WL 3440492, at *5. Taking the exact language Plaintiffs' counsel used when asking the JPML to create the MDL, "[w]ith more filings to come, consolidating these 27 actions pending in 11 different districts for pretrial proceedings will promote Section 1407's goals of insuring the just and

efficient conduct of the actions and avoiding inconsistent or conflicting substantive and procedural determinations." *See* July 21, 2014 Memorandum of Law in Support of Motion for Transfer and Coordination or Consolidation Under 28 U.S.C. § 1407 (Dkt. 1), attached as Exhibit C. Plaintiffs now seek to subject Cook to the exact inconsistencies the MDL was created to avoid.

Further supporting severance of the Medical Defendants is Plaintiffs' counsel's involvement in the MDL. Lopez McHugh LLP represents 102 plaintiffs in the MDL as of September 12, 2017—an additional 24 above the 78 plaintiffs they represented as of the May 4, 2017 removal date. Lopez McHugh was a signatory to the initial transfer motion that led to the creation of the MDL in 2014. *See* Exhibit C. Lopez McHugh also serves on the Plaintiffs' Executive Committee and has a leadership role in shaping the MDL proceedings.

Accordingly, Plaintiffs will not be prejudiced by severance and transfer of the product liability claims. And any potential prejudice would be substantially outweighed by the prejudice Cook would face if forced to litigate this case outside of the MDL.

### d. Different witnesses and documentary proof are required for Plaintiffs' product liability claims and medical malpractice claims.

The final *Allstate* factor looks to "whether different witnesses and documentary proof are required for the separate claims." 2013 WL 786764, at *2. Severance is warranted as Plaintiffs' medical malpractice claims and product liability claims will have little, if any, overlapping evidence. Plaintiff will put on evidence relating to the standard of care and the treatment provided by the Medical Defendants to prove their medical malpractice case. In contrast, Plaintiffs will need to put on evidence pertaining to Cook's manufacture, design, testing, and marketing of the Gunther Tulip to prove their product liability claims. This factor weighs in

favor of severance as "the medical negligence and malpractice claim and the burden of proof to sustain [that] claim is totally different [from] the burden of proof . . . necessary to secure judgment for product liability." *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir. 2006). Further supporting Cook's request for severance, courts within this District have held that severance is warranted even where "there may be some overlap of witnesses and evidence." *Allstate,* 2013 WL 786764, at *3.

Also supporting severance of the Medical Defendants is the location of witnesses supporting the medical malpractice and product liability claims. While the Medical Defendants' witnesses will almost certainly be stationed in California, not a single product liability witness resides in California as Plaintiffs are all residents of Ohio and Cook's witnesses are predominantly in Indiana. Instead of proceeding with the product liability claims in their neighboring state of Indiana where the MDL is located, Plaintiffs seek to litigate the matter over 2,000 miles away.

### III.  ALTERNATIVELY, THE MEDICAL DEFENDANTS ARE PROCEDURALLY MISJOINED UNDER RULE 20.

The citizenship of the Medical Defendants should be disregarded for a second, independent reason: they have been procedurally misjoined. We say this is an independent reason to disregard the Medical Defendants' citizenship because if the Court decides to sever the Medical Defendants under Rule 21, it need not reach the issue of procedural misjoinder. *See Mayfield*, 2015 WL 3440492, at *6.

The complete diversity rule is subject to two exceptions that are relevant here. First, nondiverse parties will not prevent federal courts from exercising diversity jurisdiction when a party has been fraudulently joined. "If the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state, the

joinder of the resident defendant is fraudulent." *McCabe v. Gen.l Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987); *see also Walton v. Bayer Corp.*, 643 F.3d 994, 999 (7th Cir. 2011). Second, federal courts may exercise diversity jurisdiction over nondiverse parties if the nondiverse parties have been fraudulently *mis*joined. Whereas the theory of fraudulent joinder focuses on the procedural deficiencies of the claims against a joined party, fraudulent misjoinder focuses on the procedural deficiencies of a party's joinder. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1359-60 (11th Cir. 1996), *abrogated on other grounds*, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). Cook argues the latter (procedural misjoinder), not the former (fraudulent joinder).

Procedural misjoinder occurs "when a plaintiff sues a diverse defendant in state court and joins a viable claim involving a nondiverse party, or a resident defendant, even though the plaintiff has no reasonable procedural basis to join them in one action because the claims bear no relation to each other." *Id*. at 620. The Seventh Circuit has not addressed the viability of fraudulent misjoinder, but other circuit courts have considered it. *See In re Benjamin Moore & Co.,* 309 F.3d 296, 298 (5th Cir. 2002) (stating that "it might be concluded that misjoinder of plaintiffs should not be allowed to defeat diversity"); *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 622 (8th Cir. 2010) ("We make no judgment on the propriety of the [fraudulent misjoinder] doctrine in this case, and decline to either adopt or reject it at this time."); *California Dump Truck Owners Ass'n v. Cummins Engine Co.*, 24 Fed. App'x 727, 729 (9th Cir. 2001) (unpublished) (assuming, but without deciding, that the Ninth Circuit would accept the doctrine and apply it to allegations of misjoined plaintiffs); *Lafalier v. State Farm Fire & Cas. Co.*, 391 Fed. App'x 732, 739 (10th Cir. 2010) (declining to decide whether to adopt fraudulent misjoinder doctrine).

### 1. The Court need not engage in a choice of law analysis as California's permissive joinder statute is substantially similar to Rule 20.

Plaintiffs—acknowledging that applicable federal and state joinder laws are similar to each other—argue that California's permissive joinder statute, not Federal Rule 20, should be applied. However, the Supreme Court has held that federal removal law should not incorporate state joinder practices. *Grubbs v. Gen. Elec. Credit Corp.*, 405 U.S. 699, 705 (1972). Based on the principles of *Erie*, federal courts sitting in diversity apply federal law to procedural issues and state law to substantive issues. *See, e.g.,* Charles A. Wright, Arthur R. Miller, May Kay Kane, 7 Fed. Prac. & Proc. Civ. 3d § 1652 ("Because it is primarily a procedural device, party joinder in the federal courts is governed by [Federal] Rule 20 and state restrictions on the practice are inapplicable."). In any event, it is unnecessary to resolve whether California or federal procedure applies due to the similarity between the two as "[t]he California rule on permissive joinder is nearly identical to the federal rule and is identical in all relevant respects here." *In re Stryker Rejuvenate & ABG II Hip Implant Prods. Liab. Litig.*, 2013 WL 6511855, at *3 n.3 (D. Minn. Dec. 12, 2013); *see also Sutton* 251 F.R.D. at 504-05.

California Code of Civil Procedure section 379(a)(1) largely mirrors Rule 20, permitting joinder of defendants if there is "[a]ny right to relief jointly, severally, or in the alternative, in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action." Plaintiffs argue that Code of Civil Procedure section 379(c) expands permissive joinder by allowing them to join multiple defendants when "in doubt as to the person from whom he or she is entitled to redress." Section 379(c) does not apply here as "there can be no legitimate dispute that any liability on the part of the [Medical Defendants] has a separate and distinct

factual basis from that of the [manufacturer defendants]." *In re Stryker Rejuvenate*, 2013 WL 6511855, at *4 n.4.

Given that California's permissive joinder statute is substantially similar to Rule 20, a choice of law analysis is not necessary to determine the pending motion. Regardless which permissive joinder standard is applied, Plaintiffs' claims against the Medical Defendants are procedurally misjoined as they do not arise out of the same transaction or occurrence as the product liability claims asserted against Cook.

### 2.  The Medical Defendants are Procedurally Misjoined.

Plaintiffs make no attempt to address, let alone distinguish, the procedural misjoinder authority cited in Cook's notice of removal. That is not surprising because many of these cases are closely analogous to this case. *See, e.g., Sutton*, 251 F.R.D. 500 (finding procedural misjoinder where plaintiff joined products liability claims with medical malpractice claims); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 2007 WL 2572048, at *2 (D. Minn. Aug. 30, 2007) (denying remand where plaintiff joined products liability claims against defibrillator manufacturer and a medical negligence claim against the physician); *In re Rezulin Prod. Liab. Litig.*, 2003 WL 21276425, at *1-2 (finding nondiverse physician procedurally misjoined with claims against drug manufacturer). While admittedly not binding on this court, these cases and others like them offer helpful guidance in an area of emerging law. *See, e.g., Smith v. Hendricks*, 140 F. Supp. 3d 66, 73-75 (D. D.C. 2015) (relying on out of district cases, including *Sutton* and *In re Guidant*, in holding that medical malpractice claims improperly joined to product liability claims); *In re Stryker Rejuvenate*, 2013 WL 6511855, at *5 (relying on *In re Guidant* and *Greene* in finding that medical malpractice claims do not arise out of same transaction or occurrence as the product liability claims).

Plaintiffs argue that there is no basis for removal because the claims "arise out of the same transaction, occurrence, or series of transactions or occurrences." Doc. 6037 at 10. But, as fully addressed in Section 2.a above,[4] Plaintiffs' own allegations demonstrate the significant factual and legal differences between the medical malpractice claims and the product liability claims.

Plaintiffs argue that the claims against Cook and the claims against the medical defendants are "clearly and logically related and *likely* involve common issues of fact" (Doc. 6037 at 13) (emphasis added), but that is not the relevant standard. Under Rule 20, multiple defendants may be joined in one action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; *and* "(B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). "Both of these requirements must be satisfied in order to sustain party joinder under Rule 20(a)." 7 Charles Alan Wright et al., Fed. Prac. & Proc. Civ. § 1653 (3d ed.).

Plaintiffs cite several cases for the proposition that the presence of two different legal claims does not prevent joinder where the claims arise from a single source. Many of the cases Plaintiffs cite in support of this proposition, however, did not involve a concurrent MDL, as here. Take for example *Reuter v. Medtronics, Inc.*, 2010 WL 4628439 (D.N.J. Nov. 5, 2010), which Plaintiffs discuss in detail. In that case, the court found that the product liability claims against the manufacturer of a pacemaker and the malpractice claims against the implanting physician were properly joined. Missing in that case, though, was a pending MDL concerning the same product. As such, the court had no occasion to consider the judicial efficiencies that would be

---

[4] Cook directs the Court to the above section to shorten the opposition and avoid duplicative discussion.

achieved by removal, severance, and transfer to an MDL. Nor did the court have any occasion to consider the prejudice the defendant would suffer if forced to litigate the case in state court while hundreds of other similar cases were being litigated in an MDL by the same defendant.

Cook recognizes that some courts have ruled against the product liability defendant even in cases where there was a pending MDL. *See, e.g., In re: Bard IVC Filters Prods. Liab. Litig.*, 2016 WL 2347430, at *8 (D. Az. May 4, 2016). Here, however, the existence of the MDL is particularly compelling given Plaintiffs' counsel's involvement in establishing the MDL, Plaintiffs' counsel's representation of over 100 other plaintiffs in the MDL, and Plaintiffs' counsel's leadership role on the MDL Plaintiffs' Executive Steering Committee constitutes egregious misjoinder. *See Tapscott*, 77 F.3d at 1360. To Cook's knowledge, none of the authority cited by Plaintiffs in support of their motion to remand involve facts even remotely similar. Not only does Plaintiffs' counsel's participation the MDL negate any potential prejudice, it further increases the prejudice against Cook that will result by having to litigate in multiple forums across the country. Because there are considerable efficiencies to be gained, and significant prejudice to be avoided, by consolidating Plaintiffs' product liability claims into the MDL, Cook respectfully urges this court to follow the numerous other cases that have gone the other way and ruled in favor of federal jurisdiction. The benefits of removal and severance in this case will far outweigh any disadvantages.

**IV.   PLAINTIFFS ARE NOT ENTITLED TO FEES AND COSTS IF THE CASE IS REMANDED.**

Should this Court grant Plaintiffs' motion to remand, sanctions would not be appropriate. It is well settled that when an objectively reasonable basis exists for removing a case, fees and costs should be denied. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Cook has an objectively reasonable basis for removing this case for two reasons. First, as discussed

earlier, current law allows the Court to exercise its discretion to sever the Medical Defendants under Rule 21 and let Plaintiffs' product liability claims proceed in the MDL, where hundreds of cases involving common factual allegations are currently pending. Second, and as also discussed earlier, no circuit precedent prohibits application of the doctrine of procedural misjoinder in the context of a case such as this, and Cook has offered an objectively reasonable basis for the court to apply the doctrine here, citing cases that are very similar to this one.

The majority of cases cited by Plaintiff in support of remand do not award fees and costs for removal based on procedural misjoinder. For example, one district court declined to award attorneys' fees, finding that defendant's fraudulent misjoinder theory "did not lack an objectively reasonable basis." *Fore Investments, LLC v. Travelers Indem. Co. of America*, 2013 WL 3467328, at *9 (S.D. Ind. July 9, 2013) (citing *Martin*, 546 U.S. at 141).

Accordingly, Cook had objectively reasonable grounds on which to remove, and should not be penalized for having done so.

### V. CONCLUSION

Forcing Cook to litigate factually similar claims in state courts across the country "whenever and wherever the claims might be joined to claims against healthcare providers that installed the device would defeat the entire purpose of the MDL." *Sullivan*, 117 F. Supp. 3d at 707. Cook therefore respectfully requests that this Court deny Plaintiffs' motion to remand and sever the claims against the Medical Defendants to allow Plaintiffs' product liability claims to the proceed in the MDL—as Plaintiffs' counsel requested over three years ago.

Dated: September 13, 2017              Respectfully submitted,

/s/ John T. Schlafer
Andrea Roberts Pierson (# 18435-49)
John Joseph Tanner (# 11856-49)
John T. Schlafer (# 28771-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-mail:   joe.tanner@faegrebd.com
E-Mail:  john.schlafer@faegrebd.com

James Stephen Bennett (# 22869-02)
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana  46802
Telephone: (260) 424-8000
Facsimile: (260) 460-1700
stephen.bennett@faegrebd.com

*Counsel for the Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

**CERTIFICATE OF SERVICE**

    I hereby certify that on September 13, 2017, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

                                              John T. Schlafer