UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

_____

This Document Relates to the Following Action only:

    Elizabeth Jane Hill
    No. 1:14-cv-06016-RLY-TAB

_____

### THE COOK DEFENDANTS' MOTION TO MAINTAIN UNDER SEAL MEMORANDUM IN SUPPORT OF OMNIBUS MOTIONS IN LIMINE AND ATTACHED EXHIBITS

Pursuant to Local Rule 5-11(d)(2)(A), the Cook Defendants[1] respectfully move the Court to maintain under seal the Cook Defendants' Memorandum in Support of Omnibus Motions in Limine ("Memorandum"), and Exhibits 2–5, 6, 6A, 7, 10, 12, 12A–12G, 14–15, 17–20, 23–27, 29–31, 33–35, 40–46, 51, and 52 to that Memorandum. In support of this motion, the Cook Defendants state:

### LEGAL STANDARD

1.    Under Federal Rule of Civil Procedure 26(c)(1)(G), the court may, "for good cause," enter an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." *See also Baxter International, Inc. v. Abbott Laboratories*, 297 F.3d 544, 546 (7th Cir. 2002) (documents that "meet the definition of trade secret or other categories of bona fide long-term confidentiality" may be sealed). Likewise, private health information should be maintained

---

[1]    The Cook Defendants in this matter are Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS (collectively, the "Cook Defendants").

under seal at least until consent by the patient is obtained. *See generally Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017).

2. **Trade Secrets –** Indiana has generally adopted the definition of trade secret found in the Uniform Trade Secret Act.[2] *See, e.g.*, *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 414 (S.D. Ind. 2001).[3] Under this standard, a protectable trade secret has four characteristics: (1) information; (2) that possesses independent economic value; (3) that is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (4) is the subject of efforts to maintain its secrecy that are reasonable under the circumstances. *See, e.g.*, *Hamilton v. State Farm Mut. Auto Ins. Co.*, 204 F.R.D. 420, 423 (S.D. Ind. 2001); *Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 759 N.E.2d 239, 245–46 (Ind. Ct. App. 2001); *Burk v. Heritage Food Serv. Equip., Inc.*, 737 N.E.2d 803, 813 (Ind. Ct. App. 2000).

3. Other confidential business or commercial information that does not technically fit the definition of trade secret is similarly entitled to the same level of protection as trade secrets if its disclosure would be harmful physically or economically. *See Chaib v. GEO Grp., Inc.*, 2014 WL 4794194, at *1–3 (S.D. Ind. Sept. 24, 2014); *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at *1 (S.D. Ind. Feb. 2, 2009) (finding that protection is required where disclosure of certain proprietary information would "provide a blueprint for competitors").

---

[2] The presence of Cook's headquarters in Indiana justified the application of Indiana trade secret law to the issues here, because Indiana is the state where Cook would feel any injury or harm. *See, e.g.*, *Micro Data Base Sys., Inc. v. Dharma Sys., Inc.,* 148 F.3d 649 (7th Cir. 1998) (applying Indiana choice-of-law principles in a trade-secret case and holding that New Hampshire substantive law governed because the entity holding the trade secrets was headquartered there).

[3] The Indiana Uniform Trade Secret Act is identical to the Uniform Trade Secrets Act, 1(4), 14 U.L.A. 438 (1985).

4. **Research and Development** – Federal courts, including this court, have consistently held that product development, research, and testing documents and information are entitled to protection from disclosure as confidential and proprietary business information. Such information constitutes confidential business information because "a competitor's access to [a company's] research and development . . . present[s] potential dangers and may lead to a windfall to the discovering party." *Star Scientific,* 204 F.R.D. at 416 (S.D. Ind. 2001) (Baker, J.); *see also United States ex rel. Long v. GSD&M Idea City LLC*, 2014 WL 12648520, at *2 (N.D. Tex. Jan. 3, 2014) ("[I]nformation in which the producing party has a commercial interest, such as . . . research data, . . . has been found to constitute confidential commercial information."); *Kowalsky v. Hewlett-Packard Co.*, 2012 WL 892427, at *2 (N.D. Cal. Mar. 14, 2012) (exhibits were "sealable in their entirety because they contain[ed] HP's confidential product testing and evaluation process"); *cf. Andrx Pharm., LLC v. GlaxoSmithKline, PLC,* 236 F.R.D. 583, 586 (S.D. Fla. 2006) ("Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information." (citation omitted)), *affirmed,* 2006 WL 2403942 (S.D. Fla. 2006).

5. **Post-Market Product Analysis** – Similarly, post-market product analysis is also entitled to protection from disclosure as confidential and proprietary business information. Disclosure of such proprietary post-market analysis information is harmful because it would "provide a blueprint for competitors." *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at *1 (S.D. Ind. Feb. 2, 2009); *see also Star Scientific*, 204 F.R.D. at 415 (research and data, such as sales techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge").

6. **Sales, Marketing, and Public Relations** – Confidential marketing plans or sales strategies have been held to constitute protectable trade secrets or protected confidential business information. *See, e.g.*, *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1270 (7th Cir. 1995) (trade secret material for sports drink includes information regarding the pricing, distribution and marketing of the drink and not just the drink formula); *Star Scientific*, 204 F.R.D. at 415 (research and data, such as sales techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge"); *Burk v. Heritage Serv. Equip.*, 737 N.E.2d 803, 814 (Ind. Ct. App. 2000) (finding that employee unfairly used marketing information and sales strategies in breach of the Indiana trade secrets clause); *see also Brunswick Corp. v. Jones*, 784 F.2d 271 (7th Cir. 1986) (confidential marketing strategies held protectable); *AGS Capital Corp., Inc. v. Prod. Action Intern., LLC*, 884 N.E.2d 294, 311 (Ind. Ct. App. 2008) (stolen information related to marketing strategy would "put [a company's] competitors] at a severe disadvantage"). Good cause exists to maintain the confidentiality of such strategic plans and analysis when disclosure of that information would reveal the company's "response to changing market situations and competitive threats within the marketplace, and could therefore give a competitor insight into '[the company's] internal thinking'" and when publicizing this material "would allow [the company]'s competitors the benefit of this information without incurring the effort or expense." *Bradburn Parent/Teacher Store, Inc. v. 3M*, 2004 WL 1146665, at *4 (E.D. Pa. May 19, 2004) (citation omitted).

7. **Regulatory Affairs** – Courts have held that information related to regulatory compliance and/or submission efforts and strategies constitutes confidential business information. *See, e.g.*, *Bayer Healthcare, LLC v. Norbrook Labs., Ltd.*, 2009 WL 3444938, at *1 (E.D. Wisc. Oct. 23, 2009) (good cause existed to seal deposition testimony and internal

company emails containing proprietary commercial information and strategy related to an FDA filing). Such proprietary information, like confidential information regarding pricing and sales, is confidential because "the information is created to enhance [companies'] business and give them a competitive edge". *Star Scientific*, 204 F.R.D. at 415.

8. **Complaint Handling** – Internal complaint handling procedures and materials constitute trade secrets in Indiana if they contain (1) information; (2) that derives independent economic value; (3) is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (4) is the subject of efforts reasonable under the circumstances to maintain its secrecy. *Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 759 N.E.2d 239, 245-46 (Ind. Ct. App. 2001); *see also, e.g.*, *Hamilton v. State Farm Mut. Auto. Ins. Co.*, 204 F.R.D. 420, 423-24 (S.D. Ind. 2001); *Rep. Servs. Inc. v. Liberty Mut. Ins. Cos.*, 2006 WL 1635655, at *5 (E.D. Ken. June 9, 2006) (concluding that claims handling and training materials "had economic value to [defendant] due to (1) their confidential nature, (2) the time, effort, and expense [defendant] invested in creating these materials, (3) the evolutionary process surrounding the development of these materials, (4) the competitive nature of the [industry's] business, and (5) the fact that competitors in [that] industry do not disclose information about their claims handling policies and procedures to one another.").

9. **Medical Privacy –** With respect to medical information, courts in the Seventh Circuit have routinely recognized that, while parties' medical information may be made public where it is relevant to the claims at issue and/or necessary to the disposition of the case, other information may be kept under seal with good cause. *See Westedt v. Franklin,* 2016 WL 2997504, at *1 (E.D. Wis. May 23, 2016); *Gibson v. Milwaukee Cnty.*, 2015 WL 12964665, at

*1 (E.D. Wis. Mar. 26, 2015); *Noe v. Carlos,* 2008 WL 5070463, at *3 (N.D. Ind. Nov. 26, 2008). The good cause inquiry thus requires balancing a party's acknowledged interest in medical privacy, *see Whalen v. Roe*, 429 U.S. 589, 599–600 (1977), against the Court's (and parties') interest in the accurate resolution of the conflict and the public interest in transparency. *Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017). Private health information should be maintained under seal at least until consent by the patient is obtained. *See generally id.* at *3.

10. The "good cause" standard under Rule 26(c) "requires a balancing of the potential harm to the litigants' interests against the public's right to obtain information concerning judicial proceedings." *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 415-16 (S.D. Ind. 2001) (Baker, J.); *see also Felling v. Knight*, 211 F.R.D. 552, 554 (S.D. Ind. 2003) ("The rule essentially operates to balance the public's interest in open proceedings against an individual's private interest in avoiding annoyance, embarrassment, oppression, or undue burden or expense.") (Baker, J.). Consistent with the doctrine discussed earlier, however, "the presumption of public access 'applies only to the materials that formed the basis of the parties' dispute and the district court's resolution'; other materials that may have crept into the record are not subject to the presumption." *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013) (citing *Baxter Int'l*, 297 F.3d at 548)).

## DOCUMENTS SOUGHT TO BE SEALED

11. The Cook Defendants' Memorandum in Support of Omnibus Motions in Limine ("Memorandum") relies on and cites the Cook confidential information and protected health information contained in the Exhibits discussed individually below.

12. Exhibit 2 to the Memorandum consists of excerpts from Volume I of the transcript of Plaintiff's expert witness Dr. Alexander Marmureanu's deposition. The testimony contains discussion of patient complaint files collected and compiled by Cook, which are not available to the public, including discussion of studies commissioned as part of Cook's approval process for its IVC filters (pp. 326–27, 374, 378–79, 381, 384–85, 398–401). This information is integral to Cook's process in designing its IVC filters, seeking regulatory approval for their sale, and monitoring their use.

13. Exhibit 3 to the Memorandum consists of excerpts from the deposition of Cook employee Anna Jessen. Ms. Jessen's testimony includes discussion of the processes Cook uses in clinical trials and post-marketing surveillance for its IVC filters (pp. 88–90). This information is not known to the public, and it is integral to Cook's process in designing its IVC filters, seeking regulatory approval for their sale, and monitoring their use.

14. Exhibit 4 to the Memorandum consists of excerpts from the deposition of Cook employee Mette Nielsen. Ms. Nielsen's testimony includes discussion of internal Cook complaint data and clinical evidence reports and the use of such data by William Cook Europe's regulatory affairs department (pp. 234–37). This information is not known to the public, and it is integral to Cook's process in designing its IVC filters, seeking regulatory approval for their sale, and monitoring their use.

15. Exhibit 5 to the Memorandum consists of excerpts of the deposition of Tom Roberts. The testimony includes discussion of Cook's internal adverse event logging process connected with its monitoring of Cook products (pp. 136–37, 157–60, 252–56, 259–60). This information is private to Cook.

- 8 -

16. Exhibit 6 to the Memorandum consists of excerpts from the deposition of Cook engineering manager Mark Frye. The excerpted testimony contains a discussion of Cook's strategic goals in designing the Cook Celect® filter, including the discussion of internal Cook emails on the subject (pp. 30–31). Both Cook's engineering design process and its strategic decision-making are non-public information.

17. Exhibit 6A to the Memorandum is the document labeled as Exhibit 259 to the Frye Deposition. The document is an internal new product application form for a filter device. It contains non-public information concerning Cook's research, design, and strategic processes.

18. Exhibit 7 to the Memorandum consists of excerpts from the deposition of Arne Molgaard-Nielsen, director of research for William Cook Europe. Mr. Molgaard-Nielsen's testimony includes discussion of internal Cook animal studies in connection with the Gunther Tulip® filter (pp. 48–49) and a PowerPoint presentation on the Cook Celect® filter produced by Cook employees for internal use (pp. 50–53). These materials concerning Cook's engineering design process and its strategic decision-making are confidential, non-public information.

19. Exhibit 10 to the Memorandum consists of excerpts from the deposition of Cook expert witness Dr. Anthony Venbrux. Dr. Venbrux's testimony includes discussion of Plaintiff Hill's medical records and medical history of a sensitive and personal nature (p. 273).

20. Exhibit 12 to the Memorandum consists of excerpts from the deposition of Cook district sales manager Courtney Whitelock. Ms. Whitelock's testimony includes discussion of Cook's processes in training its sales representatives on the characteristics of its IVC filters or sales or marketing techniques (pp. 62–65, 71, 100–01, 121–27, 130–33, 247, 273–75, 290–92) and discussion of internal Cook emails marked "company confidential" concerning Cook's post-

marketing monitoring of patient data (pp. 186–89). This information is not known to the public, and it is integral to Cook's process in marketing its IVC filters and monitoring their use.

21. Exhibit 12A to the Memorandum is the document marked as Exhibit 467 to the Whitelock Deposition. The document is a spreadsheet documenting Ms. Whitelock's marketing activities. It contains information on Cook's marketing process and strategy that is not publicly available.

22. Exhibit 12B to the Memorandum is the document marked as Exhibit 474 to the Whitelock Deposition. The document is a Cook internal email chain marked as "company confidential." It contains private Cook data and strategic considerations concerning the research and development of Cook's IVC filters.

23. Exhibit 12C to the Memorandum is the document marked as Exhibit 476 to the Whitelock Deposition. The document is a Cook internal email chain marked as "company confidential." It contains private Cook data and strategic considerations concerning the research and development of Cook's IVC filters.

24. Exhibit 12D to the Memorandum is the document marked as Exhibit 470 to the Whitelock Deposition, and entitled "Value Added Selling for IVC Filters: Overcoming the Concern of Filter Tilt." The document contains private Cook information about its sales and marketing strategy.

25. Exhibit 12E to the Memorandum is the document marked as Exhibit 468 to the Whitelock Deposition. The document is a Cook internal email chain marked as "company confidential." It contains private Cook information about its sales and marketing strategy.

26. Exhibit 12F to the Memorandum is the document marked as Exhibit 473 to the Whitelock deposition. The document is a Cook internal email chain marked as "company

confidential." It contains analysis of study data on Cook IVC filters that relates to the design and development of the filters and that is not publicly available.

27.     Exhibit 12G to the Memorandum is the document marked as Exhibit 485 to the Whitelock Deposition, and entitled "Cook IVC Filters: The broadest, most proven line in the world." The document is an internally distributed piece of marketing material on the Cook IVC filters. The strategic considerations contained in it are private to Cook.

28.     Exhibit 14 to the Memorandum consists of excerpts from Volume I of the transcript of Plaintiff's expert David Kessler's deposition. The testimony contains discussion of Cook's regulatory approval process that is not publicly available information (pp. 237–40).

29.     Exhibit 15 to the Memorandum consists of excerpts from Volume I of the transcript of James Hunt's Rule 30(b)(6) deposition. The testimony includes discussion of internal Cook emails regarding patient complaints (pp. 133–136). This information is not known to the public, and it is integral to Cook's process in marketing its IVC filters and monitoring their use.

30.     Exhibit 17 to the Memorandum is the transcript of a pre-trial hearing held before Magistrate Judge Baker on February 21, 2017. The transcript includes discussion of internal Cook complaint files (p. 48). This information is not known to the public, and it is integral to Cook's process in marketing its IVC filters and monitoring their use.

31.     Exhibit 18 to the Memorandum is the "Defendant Profile Form" submitted by Cook for Plaintiff Hill. The document contains internal Cook sales data that is not disclosed to the public (pp. 7–58).

32.     Exhibit 19 to the Memorandum is the Declaration of April Lavender. The Declaration concerns Cook's pre-approval submissions for its IVC filters, and includes

- 10 -

discussion of Cook's pre-approval testing process. Information concerning Cook's pre-approval testing process is private to Cook and has not been disclosed publicly.

33. Exhibit 20 to the Memorandum consists of excerpts of the deposition of Jen Brown. The testimony includes a discussion of the Cook confidential document entitled "Executive Summary: Cook Celect Filter" (pp. 170–73). It also includes discussion of Cook's planning considerations with respect to updating its instructions for use (IFUs). The testimony therefore involves internal Cook information compiled from patient data and other post-marketing surveillance data that was not made publicly available.

34. Exhibit 23 to the Memorandum consists of excerpts of the February 8, 2017 deposition of Dr. Mark Zuzga. The excerpted testimony includes internal performance review information for Cook marketing employees, which is confidential personnel data not disclosed to the public (pp. 20–21), and internal Cook emails regarding implantation techniques for the Cook Celect® filter (pp. 72–73).

35. Exhibit 24 to the Memorandum is the Expert Report submitted by Dr. Alexander Marmureanu. The cited excerpt of the Report discusses patient complaint files collected and compiled by Cook, which are not available to the public (p. 24).

36. Exhibit 25 to the Memorandum is the Expert Report submitted by Dr. Robert McMeeking. The Report includes a discussion of internal Cook data on the structure and specifications of the Cook Celect® and Gunther Tulip® filters. (pp. 11–17). It also discusses results of experiments conducted by Cook on Cook filters for internal use, the results of which are not publicly available. (pp. 40–41, 48).

37. Exhibit 26 to the Memorandum consists of excerpts of Dr. Robert McMeeking's deposition. The testimony includes discussion of internal Cook engineering data upon which he

partly relied in preparing his report (*see, e.g.,* pp. 162–63, 175–77). Cook's internal engineering data is integral to its design process and is not publicly available information.

38. Exhibit 27 to the Memorandum is the Expert Report submitted by Dr. David Garcia. The Report discusses internal Cook complaint data that is not publicly available (pp. 9–10). It also quotes several internal Cook communications and discusses three Cook studies involving Cook data that is not publicly available (pp. 13–18). This information is integral to Cook's process in designing its IVC filters, seeking regulatory approval for their sale, and monitoring their use.

39. Exhibit 29 to the Memorandum consists of excerpts from Volume II of the transcript of Plaintiff's expert witness Dr. David Kessler's deposition. The testimony contains discussion of clinical study data and complaints compiled by Cook, which are not available to the public, and it also contains discussion of the results of internal Cook studies and experiments (*see* pp. 538–41), Cook's analysis of complaint reports and data (pp. 452-453, 488-489, 506-509, 518–25, 614–17), and internal discussions about submittals to regulatory agencies (506-509). This information is integral to Cook's process in marketing its IVC filters and monitoring their use.

40. Exhibit 30 to the Memorandum consists of excerpts from Volume II of the transcript of Dr. Marmureanu's deposition. The testimony contains discussion of internal Cook data on patient reports that is not disclosed to the public (pp. 475–76, 643, 728–29). This information is integral to Cook's process in designing its IVC filters, seeking regulatory approval for their sale, and monitoring their use.

41. Exhibit 31 to the Memorandum consists of excerpts of the deposition of James Smith. The testimony includes discussion of internal Cook emails, primarily relating to sales (pp.

87–89, 160–75, 192–96, 199–203, 231–36, 241–46, 305). This information is not known to the public, and it is integral to Cook's process in marketing its IVC filters and monitoring their use.

42. Exhibit 33 to the Memorandum consists of excerpts of the deposition of Henrik Gyllun. The testimony includes discussion of internal Cook engineering and design documents (pp. 89–95, 101–03, 190–96). Cook's internal engineering data is integral to its design process, and is not non-public information.

43. Exhibit 34 to the Memorandum consists of excerpts from the deposition of Cook Rule 30(b)(6) witness Andrew Blanchard. The excerpted testimony contains Mr. Blanchard's discussion of Cook's internal document management system for engineering drawings and other data related to its products (pp. 41–42), as well as discussion of Cook proprietary regulatory affairs tracking software (pp. 43–45). This information is private to Cook and developed at Cook's own expense for its internal use.

44. Exhibit 35 to the Memorandum is the Expert Report submitted by Dr. David Kessler. Dr. Kessler's report relies on and quotes extensively from internal Cook documents relating to design of the Celect® filter (*see, e.g.,* Sections VI.A, VI.G., VIII.B.), internal studies of IVC filter performance commissioned by Cook for Cook's proprietary use (*see, e.g.,* Sections VI.B-C., VIII.B., IX.), multiple internal communications about responses to FDA and other regulatory agency requests for information and 510(k) submissions (*see, e.g.,* Sections VII., VI.C.5.a., VI.C.5.c.,VIII.A), and Cook's analysis of complaints and sales data (*see, e.g.,* Sections VI.D.-F., Schedule 4).  This information is not publicly available.

45. Exhibit 40 to the Memorandum is a Cook document entitled "Product Development Strategy Overview." The document is marked "company confidential" and contains Cook sales, marketing, and strategic information that was not made publicly available.

- 13 -

46. Exhibit 41 to the Memorandum is a Cook document entitled "Executive Summary: Cook Celect Filter." The document contains internal Cook information compiled from patient data and other post-marketing surveillance data that was not made publicly available.

47. Exhibit 42 to the Memorandum consists of excerpts of the deposition of John Kaufman. The testimony includes a discussion of the Cook confidential document entitled "Executive Summary: Cook Celect Filter" (pp. 186–89). The document contains internal Cook information compiled from patient data and other post-marketing surveillance data that was not made publicly available.

48. Exhibit 43 to the Memorandum is a February 28, 2013 "Section 522" letter from the FDA to Cook concerning post-market surveillance of Cook products. The document is marked "company confidential." The letter requires Cook to formulate a post-market surveillance plan and includes discussion of Cook sales and patient data. This information is not publicly available.

49. Exhibit 44 to the Memorandum is a document marked as Exhibit 478 to the Whitelock Deposition. It contains images from Plaintiff Hill's endoscopy procedure that are of a personal and sensitive nature.

50. Exhibit 45 to the Memorandum is a "Life Care Plan and Cost Analysis" for Plaintiff Hill prepared by Ms. Levy based on analysis of Ms. Hill's medical records. The document contains an extensive, detailed discussion of Ms. Hill's medical history.

51. Exhibit 46 to the Memorandum consists of excerpts of the deposition testimony of Plaintiff Hill. The testimony includes discussion of personal, sensitive medical history information relating to Plaintiff Hill.

US.114207542

52. Exhibit 51 to the Memorandum is the Expert Report submitted by Dr. Elisa Harvey. The cited portions of the Report contain discussion of the sufficiency of Cook's pre-approval submissions for its IVC filters, and also include discussion of Cook's pre-approval testing process. Information concerning Cook's pre-approval testing process is private to Cook.

53. Exhibit 52 to the Memorandum consists of excerpts of the deposition of Leigh Conners. The testimony includes discussion of internal Cook marketing materials and training provided to Cook sales representatives (pp. 21–22, 95–97, 298–301). This information is private to Cook and has not been made publicly available.

## DISCUSSION

54. The Memorandum and exhibits listed above contain internal Cook information relating to the development, use, performance, marketing, sales, regulatory affairs, complaint handling procedures, and/or post-marketing monitoring of Cook's IVC filters. Specifically:

- Exhibits 6, 6A, 7, 12B, 12C, 12F, 23, 25–27, 29, 33, 35, 40, and 51 contain information relating to the research and development of Cook's IVC filters;

- Exhibits 3, 5, 12, 20, 30, 34, and 41–43 contain information relating to post-market analysis of Cook products;

- Exhibits 12, 12A, 12D, 12E, 12G, 18, 23, 31, 40, and 52 contain information relating Cook's marketing and/or sales processes;

- Exhibits 2, 4, 14, 19, 29, 34–35, and 51 contain information relating to Cook's regulatory affairs; and

- Exhibits 2, 5, 15, 17, 24, 27, 29, and 35 contain information relating to Cook's complaint handling procedures.

US.114207542

55. These documents fit the definition of protected confidential information because they rely on information that is not publicly available and the disclosure of which would pose a serious risk of economic harm to Cook. *See Chaib,* 2014 WL 4794194, at *1–3. As Cook more fully demonstrated in its May 1, 2017 letter to Magistrate Judge Tim A. Baker and the supporting Declaration of Mark Breedlove (attached hereto as **Exhibit 1**), Cook invests substantial resources into research and development, including with regard to Cook's IVC filter technology. Breedlove Decl. ¶ 6. Cook maintains strict confidentiality over its research and development ideas, efforts, and results, and considers such information to be proprietary to the company. *Id*. Likewise, Cook invests considerable resources in, derives commercial advantage from, and maintains strict confidentiality over, its post-market product analysis, its regulatory affairs, and its complaint handling procedures. *Id.* at ¶¶ 8–13. And disclosure of such information would therefore result in competitive harm to Cook and could "lead to a windfall to the discovering party." *Star Scientific*, 204 F.R.D. at 416; Breedlove Decl. ¶¶ 6–7. Disclosure of non-public marketing or sales data would likewise cause competitive harm to Cook. Breedlove Decl. ¶¶ 14–15. *See EEOC v. Abbott Labs., Inc.*, 2012 WL 3842460, at *2–3 (E.D. Wis. Sept. 5, 2012). The Court should permit these documents, and the Memorandum citing and discussing those documents, to be filed under seal.

56. Exhibits 10 and 44–46 contain information related to the medical records and medical history of Plaintiff Hill. Courts in the Seventh Circuit have routinely recognized that, while parties' medical information may be made public where it is relevant to the claims at issue and/or necessary to the disposition of the case, other information may be kept under seal with good cause. *See Westedt v. Franklin,* 2016 WL 2997504, at *1 (E.D. Wis. May 23, 2016); *Gibson v. Milwaukee Cnty.*, 2015 WL 12964665, at *1 (E.D. Wis. Mar. 26, 2015); *Noe v. Carlos,*

2008 WL 5070463, at *3 (N.D. Ind. Nov. 26, 2008). The good cause inquiry thus requires balancing a party's acknowledged interest in medical privacy, *see Whalen v. Roe*, 429 U.S. 589, 599–600 (1977), against the Court's (and parties') interest in the accurate resolution of the conflict and the public interest in transparency. *Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017). The documents listed above contain private, sensitive medical information. Out of an abundance of caution, the Court should permit these documents, too, to be filed under seal until Plaintiffs consent to what should be disclosed.

57. A proposed order granting this Motion has been filed with this Motion**.**

WHEREFORE, the Cook Defendants respectfully urge the Court to enter an order granting the Cook Defendants leave to file under seal and maintain under seal the Cook Defendants' Memorandum in Support of Omnibus Motions in Limine ("Memorandum"), and Exhibits 2–5, 6, 6A, 7, 10, 12, 12A–12G, 14–15, 17–20, 23–27, 29–31, 33–35, 40–46, 51, and 52 to that Memorandum.

Dated: September 14, 2017       Respectfully submitted,

/s/ Andrea Roberts Pierson
Andrea Roberts Pierson (# 18435-49)
John T. Schlafer (# 28771-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:   (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-Mail:  joe.tanner@faegrebd.com
E-Mail:  nicholas.alford@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

US.114207542

- 19 -

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2017, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

/s/ Andrea Roberts Pierson