# Exhibit R

Confidential - Subject to the Protective Order

```
 1                  UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF INDIANA
 2                      INDIANAPOLIS DIVISION
 3    --------------------------------§
      In Re:  COOK MEDICAL, INC., IVC  §
 4    FILTERS MARKETING, SALES         §Case No.
      PRACTICES AND PRODUCTS LIABILITY §1:14-cv-06016
 5    LITIGATIONS                      §-RLY-TAB
      -------------------------------- §
 6
                    IN THE CIRCUIT COURT OF THE
 7             SIXTH JUDICIAL CIRCUIT IN AND FOR
                     PINELLAS COUNTY, FLORIDA
 8
 9    ------------------------------- §
      ELIZABETH JANE HILL,             §
10        Plaintiff,                   §
      vs.                              §Case No.
11    COOK MEDICAL INCORPORATION a/k/a §1:14-cv-06016
      COOK MEDICAL, INC.; COOK         §
12    INCORPORATED and COOK GROUP,     §
      INC.,                            §
13        Defendants.                  §
      ------------------------------- §
14                          - - -
                        February 8, 2017
15                          - - -
16       Confidential - Subject to the Protective Order
            Videotaped deposition of MARK ZUZGA, DO, held
17       at Holiday Inn, 2580 Gulf to Bay Boulevard,
         Clearwater, Florida 33765, commencing at
18       3:03 p.m., on the above date, before Tami Cline,
         Registered Merit Reporter, Certified Realtime
19       Reporter, and Florida Professional Reporter.
20                          - - -
21                  GOLKOW TECHNOLOGIES, INC.
            877.370.3377 ph | 917.591.5672 fax
22                     deps@golkow.com
23
24
```

Confidential - Subject to the Protective Order

Page 50

1  placement technique that there would be no problem
2  with this filter; right?
3      MS. PIERSON: Object to form.
4      THE WITNESS: For a placement?
5  BY MR. HEAVISIDE:
6   Q.  Yeah.
7   A.  Yes.
8   Q.  And you did follow the appropriate placement
9  technique, correct --
10  A.  Yes.
11  Q.  -- with Mrs. Hill?
12  A.  Yes.
13  Q.  And for that matter, you followed the
14 retrieval technique as outlined in the IFU; correct?
15     MS. PIERSON: Object to form.
16     THE WITNESS: I have never really thoroughly
17 read the IFU. So I base my retrieval techniques
18 on my training.
19 BY MR. HEAVISIDE:
20  Q.  Well, we can go through later your technique,
21 but at this point in time, correct me if I'm wrong,
22 I'll represent to you that that technique was --
23  A.  Yes.
24  Q.  -- the approved in the case. Does that sound

Page 51

1  correct?
2      MS. PIERSON: Object to form.
3      THE WITNESS: That would be reasonable to
4   say, yes.
5  BY MR. HEAVISIDE:
6   Q.  Okay. Now, the next page, which on the
7  bottom says 005805, at the top page it says "MR
8  Compatibility"?
9   A.  Uh-huh.
10  Q.  The section that says "Potential Adverse
11 Events," do you see where I am there?
12  A.  Yes.
13  Q.  By the characterization as potential adverse
14 events, can you fairly read that to mean we don't
15 know if any of these events have ever happened, but
16 they are a possibility?
17     MS. PIERSON: Object to form.
18     THE WITNESS: I don't know if I can answer
19 that question. I didn't write this.
20 BY MR. HEAVISIDE:
21  Q.  Okay. Well, does it say the following events
22 have been observed in connection with the use of a
23 Cook Celect Filter?
24  A.  It does not say that, no.

Page 52

1   Q.  Okay. And it doesn't say anything about
2  perforation and penetration into an adjoining organ,
3  does it?
4      MS. PIERSON: Object to form.
5      THE WITNESS: Vena cava perforation?
6  BY MR. HEAVISIDE:
7   Q.  Into an adjoining organ like the liver or the
8  aorta or --
9   A.  No. No, it does not say that.
10  Q.  Okay. And, in fact, it does say as a
11 potential adverse event perforation; right?
12  A.  Yes.
13  Q.  And if you want more information about that,
14 you go down the page about clinical studies; right?
15  A.  Yes.
16  Q.  And in the last full paragraph third line in,
17 it says, "No device related major adverse events
18 (defined as hemorrhage, perforation, death,
19 occlusion, filter fracture or significant filter
20 migration) have occurred."
21     Right?
22  A.  Yes.
23  Q.  Okay. So you would expect the IFU to fairly
24 tell you what risks events are associated with use of

Page 53

1  this product. That would be your expectation; right?
2      MS. PIERSON: Object to form.
3      THE WITNESS: Yes.
4  BY MR. HEAVISIDE:
5   Q.  Okay. And if they tell you here potential
6  adverse events are vena cava perforation but here
7  they say that actually no perforations have been
8  identified, you might conclude that there are no
9  perforations?
10     MS. PIERSON: Object to form.
11 BY MR. HEAVISIDE:
12  Q.  Right?
13  A.  Based on their study at six months, yes, is
14 what I would say.
15  Q.  Well, there is no other information printed
16 on this document, is there?
17     MS. PIERSON: Object to form.
18     THE WITNESS: No.
19     MR. HEAVISIDE: I'm going to show you
20 another -- this will be Exhibit 14.
21     ---
22     (Exhibit 14, Celect Reportable Complaints 01
23 Oct 2008 - 13 Sept 2013, Bates Cook IVCF 008488 -
24 008500 and Bates No. CookMDL2570_0015049 - 0015061 -