**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND                    Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION                      MDL No. 2570

_____

This Document Relates to the Following Actions only:

      Elizabeth Jane Hill
      No. 1:14-cv-06016-RLY-TAB

      Arthur Gage
      No. 1:13-cv-01875-RLY-TAB

_____

**THE COOK DEFENDANTS' MOTION TO MAINTAIN**
**UNDER SEAL REPLY IN SUPPORT OF MOTION TO EXCLUDE NO. 5:**
**EXPERT OPINIONS OF DR. DAVID KESSLER AND ATTACHED EXHIBITS**

Pursuant to Local Rule 5-11(d)(2)(A), the Cook Defendants[1] respectfully move the Court

to maintain under seal the Cook Defendants' Reply in Support of Motion to Exclude No. 5:

Expert Opinions of Dr. David Kessler ("Memorandum"), and Exhibits 46-49, 51-53 to that

Memorandum. In support of this motion, the Cook Defendants state:

**LEGAL STANDARD**

1.      Under Federal Rule of Civil Procedure 26(c)(1)(G), the court may, "for good

cause," enter an order "requiring that a trade secret or other confidential research, development,

or commercial information not be revealed or be revealed only in a specified way." *See also*

*Baxter International, Inc. v. Abbott Laboratories*, 297 F.3d 544, 546 (7th Cir. 2002) (documents

that "meet the definition of trade secret or other categories of bona fide long-term

---

[1]    The Cook Defendants in this matter are Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical
Incorporated), and William Cook Europe ApS (collectively, the "Cook Defendants").

confidentiality" may be sealed).  Likewise, private health information should be maintained under seal at least until consent by the patient is obtained. *See generally Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017).

2. **Trade Secrets –** Indiana has generally adopted the definition of trade secret found in the Uniform Trade Secret Act.[2] *See, e.g.*, *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 414 (S.D. Ind. 2001).[3] Under this standard, a protectable trade secret has four characteristics: (1) information; (2) that possesses independent economic value; (3) that is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (4) is the subject of efforts to maintain its secrecy that are reasonable under the circumstances. *See, e.g.*, *Hamilton v. State Farm Mut. Auto Ins. Co.*, 204 F.R.D. 420, 423 (S.D. Ind. 2001); *Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 759 N.E.2d 239, 245–46 (Ind. Ct. App. 2001); *Burk v. Heritage Food Serv. Equip., Inc.*, 737 N.E.2d 803, 813 (Ind. Ct. App. 2000).

3. Other **confidential** business or commercial information that does not technically fit the definition of trade secret is similarly entitled to the same level of protection as trade secrets if its disclosure would be harmful physically or economically. *See Chaib v. GEO Grp., Inc.*, 2014 WL 4794194, at *1–3 (S.D. Ind. Sept. 24, 2014); *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at *1 (S.D. Ind. Feb. 2, 2009) (finding that protection is required where disclosure of certain proprietary information would "provide a blueprint for competitors").

---

[2] The presence of Cook's headquarters in Indiana justifies the application of Indiana trade secret law to the issues here, because Indiana is the state where Cook would feel any injury or harm. *See, e.g.*, *Micro Data Base Sys., Inc. v. Dharma Sys., Inc.,* 148 F.3d 649 (7th Cir. 1998) (applying Indiana choice-of-law principles in a trade-secret case and holding that New Hampshire substantive law governed because the entity holding the trade secrets was headquartered there).

[3] The Indiana Uniform Trade Secret Act is identical to the Uniform Trade Secrets Act, 1(4), 14 U.L.A. 438 (1985).

4.     **Research and Development** – Federal courts, including this court, have consistently held that product development, research, and testing documents and information are entitled to protection from disclosure as confidential and proprietary business information.  Such information constitutes confidential business information because "a competitor's access to [a company's] research and development . . . present[s] potential dangers and may lead to a windfall to the discovering party."  *Star Scientific,* 204 F.R.D. at 416 (S.D. Ind. 2001) (Baker, J.); *see also United States ex rel. Long v. GSD&M Idea City LLC*, 2014 WL 12648520, at *2 (N.D. Tex. Jan. 3, 2014) ("[I]nformation in which the producing party has a commercial interest, such as . . . research data, . . . has been found to constitute confidential commercial information."); *Kowalsky v. Hewlett-Packard Co.*, 2012 WL 892427, at *2 (N.D. Cal. Mar. 14, 2012) (exhibits were "sealable in their entirety because they contain[ed] HP's confidential product testing and evaluation process"); *cf. Andrx Pharm., LLC v. GlaxoSmithKline, PLC,* 236 F.R.D. 583, 586 (S.D. Fla. 2006) ("Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information." (citation omitted)), *affirmed,* 2006 WL 2403942 (S.D. Fla. 2006).

5.     **Post-Market Product Analysis** – Similarly, post-market product analysis is also entitled to protection from disclosure as confidential and proprietary business information. Disclosure of such proprietary post-market analysis information is harmful because it would "provide a blueprint for competitors."  *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at *1 (S.D. Ind. Feb. 2, 2009); *see also Star Scientific*, 204 F.R.D. at 415 (research and data, such as sales techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge").

US.114258387.01

6.      **Sales, Marketing, and Public Relations** – Confidential marketing plans or sales strategies have been held to constitute protectable trade secrets or protected confidential business information.  *See, e.g.*, *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1270 (7th Cir. 1995) (trade secret material for sports drink includes information regarding the pricing, distribution and marketing of the drink and not just the drink formula); *Star Scientific*, 204 F.R.D. at 415 (research and data, such as sales techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge"); *Burk v. Heritage Serv. Equip.*, 737 N.E.2d 803, 814 (Ind. Ct. App. 2000) (finding that employee unfairly used marketing information and sales strategies in breach of the Indiana trade secrets clause); *see also Brunswick Corp. v. Jones*, 784 F.2d 271 (7th Cir. 1986) (confidential marketing strategies held protectable); *AGS Capital Corp., Inc. v. Prod. Action Intern., LLC*, 884 N.E.2d 294, 311 (Ind. Ct. App. 2008) (stolen information related to marketing strategy would "put [a company's competitors] at a severe disadvantage").  Good cause exists to maintain the confidentiality of such strategic plans and analysis when disclosure of that information would reveal the company's "response to changing market situations and competitive threats within the marketplace, and could therefore give a competitor insight into '[the company's] internal thinking'" and when publicizing this material "would allow [the company]'s competitors the benefit of this information without incurring the effort or expense."  *Bradburn Parent/Teacher Store, Inc. v. 3M*, 2004 WL 1146665, at *4 (E.D. Pa. May 19, 2004) (citation omitted).

7.      **Regulatory Affairs** – Courts have held that information related to regulatory compliance and/or submission efforts and strategies constitutes confidential business information.  *See, e.g.*, *Bayer Healthcare, LLC v. Norbrook Labs., Ltd.*, 2009 WL 3444938, at *1 (E.D. Wisc. Oct. 23, 2009) (good cause existed to seal deposition testimony and internal

company emails containing proprietary commercial information and strategy related to an FDA filing). Such proprietary information, like confidential information regarding pricing and sales, is confidential because "the information is created to enhance [companies'] business and give them a competitive edge". *Star Scientific*, 204 F.R.D. at 415.

8. **Complaint Handling** – Internal complaint handling procedures and materials constitute trade secrets in Indiana if they contain (1) information; (2) that derives independent economic value; (3) is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (4) is the subject of efforts reasonable under the circumstances to maintain its secrecy. *Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 759 N.E.2d 239, 245-46 (Ind. Ct. App. 2001); *see also, e.g.*, *Hamilton v. State Farm Mut. Auto. Ins. Co.*, 204 F.R.D. 420, 423-24 (S.D. Ind. 2001); *Rep. Servs. Inc. v. Liberty Mut. Ins. Cos.*, 2006 WL 1635655, at *5 (E.D. Ken. June 9, 2006) (concluding that claims handling and training materials "had economic value to [defendant] due to (1) their confidential nature, (2) the time, effort, and expense [defendant] invested in creating these materials, (3) the evolutionary process surrounding the development of these materials, (4) the competitive nature of the [industry's] business, and (5) the fact that competitors in [that] industry do not disclose information about their claims handling policies and procedures to one another.").

9. **Medical Privacy** – With respect to medical information, courts in the Seventh Circuit have routinely recognized that, while parties' medical information may be made public where it is relevant to the claims at issue and/or necessary to the disposition of the case, other information may be kept under seal with good cause. *See Westedt v. Franklin,* 2016 WL 2997504, at *1 (E.D. Wis. May 23, 2016); *Gibson v. Milwaukee Cnty.*, 2015 WL 12964665, at

*1 (E.D. Wis. Mar. 26, 2015); *Noe v. Carlos,* 2008 WL 5070463, at *3 (N.D. Ind. Nov. 26, 2008). The good cause inquiry thus requires balancing a party's acknowledged interest in medical privacy, *see Whalen v. Roe*, 429 U.S. 589, 599–600 (1977), against the Court's (and parties') interest in the accurate resolution of the conflict and the public interest in transparency. *Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017). Private health information should be maintained under seal at least until consent by the patient is obtained. *See generally id.* at *3.

10.     The "good cause" standard under Rule 26(c) "requires a balancing of the potential harm to the litigants' interests against the public's right to obtain information concerning judicial proceedings." *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 415-16 (S.D. Ind. 2001) (Baker, J.); *see also Felling v. Knight*, 211 F.R.D. 552, 554 (S.D. Ind. 2003) ("The rule essentially operates to balance the public's interest in open proceedings against an individual's private interest in avoiding annoyance, embarrassment, oppression, or undue burden or expense.") (Baker, J.). Consistent with the doctrine discussed earlier, however, "the presumption of public access 'applies only to the materials that formed the basis of the parties' dispute and the district court's resolution'; other materials that may have crept into the record are not subject to the presumption." *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013) (citing *Baxter Int'l*, 297 F.3d at 548)).

## DOCUMENTS SOUGHT TO BE SEALED

11.     The Cook Defendants' Reply In Support Of Motion To Exclude No. 5: Expert Opinions Of Dr. David Kessler ("Memorandum") relies on and cites the Cook confidential information and protected health information contained in the Exhibits discussed individually below.

US.114258387.01

12.     Exhibit 46 to the Memorandum is Excerpts of the Deposition of Harold Pellerite ("Pellerite Dep.") (July 26, 2017).  Harold "Wally" Pellerite ("Mr. Pellerite") is a Cook retained regulatory expert.  Mr. Pellerite was retained by Cook to address Cook's compliance with FDA regulations and guidance applicable to premarket submissions and post-market monitoring of Cook Vena Cava filters.  Mr. Pellerite's deposition has been designated "Confidential – Subject to the Protective Order."   The deposition excerpts submitted at Exhibit 46 address Cook's regulatory submissions and regulatory compliance with FDA guidance and regulations.

13.     Exhibit 47 to the Memorandum is Excerpts of the Deposition of Elisa Harvey, DVM, Ph.D. ("Harvey Dep.") (July 24, 2017).  Dr. Harvey is a Cook retained regulatory expert. Dr. Harvey was retained by Cook to address Cook's compliance with FDA regulations and guidance applicable to premarket submissions for the Tulip Vena Cava Filter and the Celect Vena Cava Filter.  Dr. Harvey's deposition has be designated "Confidential – Subject to Protective Order."  The deposition excerpts submitted at Exhibit 47 address Cook's regulatory submissions and compliance with regulatory requirements.

14.     Exhibit 48 to the Memorandum is Excerpts of the Deposition of Dr. Mark Zuzga ("Zuzga Dep.") ( April 19, 2017).  Dr. Zuzga is one of Mrs. Hill's treating physicians and, more specifically, is the vascular surgeon who implanted Mrs. Hill's Celect IVC filter. Dr. Zuzga's deposition has been designated "Confidential."  The deposition excerpts submitted at Exhibit 48 include information about Mrs. Hill's medical history, conditions, and treatment.

15.     Exhibit 49 to the Memorandum is Excerpts of the Deposition of Dr. Anthony Moreno (April 26, 2017).  Dr. Moreno is a board-certified orthopedic surgeon and one of Plaintiff Elizabeth Jane Hill's treating physicians.  He prescribed an IVC filter for Mrs. Hill.  Dr. Moreno's deposition has been designated "Confidential – Subject to the Protective Order."  The

US.114258387.01

deposition excerpts submitted at Exhibit 49 include information about Mrs. Hill's medical history, conditions, and treatment.

16.     Exhibit 51 to the Memorandum is an email thread between Cook employees discussing complaint analysis for the Tulip and Celect and strategy relating to a response to a regulatory agency inquiry.  These emails include proprietary Cook complaint data and sales data that are not publicly available.

17.     Exhibit 52 is the Expert Report of Dr. Rebecca Betensky.  Dr. Betensky's Report consists almost entirely of an analysis of internal Cook data on adverse event reports and sales numbers for the Cook IVC filters (pp. 3-8).  These data are proprietary to Cook and have not been made public.  The report also contains two pages of tables summarizing Cook internal data (pp. 11-12).  A redacted version of this document is attached to Cook's public filing; Cook has filed an unredacted version under seal.

18.     Exhibit 53 to the Memorandum is Excerpts from the deposition of Dr. Betensky (April 21, 2017).  The deposition excerpt submitted at Exhibit 53 contains discussion related to Dr. Betensky's analysis of proprietary Cook complaint data and sales data that is not publicly available.

## DISCUSSION

19.     The Memorandum and exhibits listed above contain internal Cook information relating to the development, use, performance, marketing, sales, regulatory affairs, complaint handling procedures, and/or post-marketing monitoring of Cook's IVC filters. Specifically:

- Exhibits 46, 51-53 contain information relating to post-market analysis of Cook products;

US.114258387.01

- Exhibits 51-53 contain information relating Cook's marketing and/or sales processes;

- Exhibits 46-47 contain information relating to Cook's regulatory affairs; and

- Exhibits 46, 51-53 contain information relating to Cook's complaint handling procedures.

20.     These documents fit the definition of protected confidential information because they rely on information that is not publicly available and the disclosure of which would pose a serious risk of economic harm to Cook. *See Chaib,* 2014 WL 4794194, at *1–3. As Cook more fully demonstrated in its May 1, 2017 letter to Magistrate Judge Tim A. Baker and the supporting Declaration of Mark Breedlove (attached hereto as **Exhibit 1**), Cook invests substantial resources into research and development, including with regard to Cook's IVC filter technology. Breedlove Decl. ¶ 6.  Cook maintains strict confidentiality over its research and development ideas, efforts, and results, and considers such information to be proprietary to the company.  *Id.* Likewise, Cook invests considerable resources in, derives commercial advantage from, and maintains strict confidentiality over, its post-market product analysis, its regulatory affairs, and its complaint handling procedures. *Id.* at ¶¶ 8–13. And disclosure of such information would therefore result in competitive harm to Cook and could "lead to a windfall to the discovering party."  *Star Scientific*, 204 F.R.D. at 416; Breedlove Decl. ¶¶ 6–7. Disclosure of non-public marketing or sales data would likewise cause competitive harm to Cook. Breedlove Decl. ¶¶ 14–15. *See EEOC v. Abbott Labs., Inc.*, 2012 WL 3842460, at *2–3 (E.D. Wis. Sept. 5, 2012). The Court should permit these documents, and the Memorandum citing and discussing those documents, to be filed under seal.

21.     Exhibits 48-49 contain information related to the medical records and medical history of Plaintiff Hill. Courts in the Seventh Circuit have routinely recognized that, while parties' medical information may be made public where it is relevant to the claims at issue and/or necessary to the disposition of the case, other information may be kept under seal with good cause. *See Westedt v. Franklin,* 2016 WL 2997504, at *1 (E.D. Wis. May 23, 2016); *Gibson v. Milwaukee Cnty.*, 2015 WL 12964665, at *1 (E.D. Wis. Mar. 26, 2015); *Noe v. Carlos,* 2008 WL 5070463, at *3 (N.D. Ind. Nov. 26, 2008). The good cause inquiry thus requires balancing a party's acknowledged interest in medical privacy, *see Whalen v. Roe*, 429 U.S. 589, 599–600 (1977), against the Court's (and parties') interest in the accurate resolution of the conflict and the public interest in transparency. *Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017). The documents listed above contain private, sensitive medical information. Out of an abundance of caution, the Court should permit these documents, too, to be filed under seal until Plaintiffs consent to what should be disclosed.

22.     A proposed order granting this Motion has been filed with this Motion**.**

WHEREFORE, the Cook Defendants respectfully urge the Court to enter an order granting the Cook Defendants leave to file under seal and maintain under seal the Cook Defendants' Reply in Support of Motion to Exclude No. 5: Expert Opinions of Dr. David Kessler ("Memorandum"), and Exhibits 46-49, 51-53 to that Memorandum.

US.114258387.01

Dated:  September 20, 2017                    Respectfully submitted,


                                             /s/ Victoria R. Calhoon
                                             Andrea Roberts Pierson (# 18435-49)
                                             Victoria R. Calhoon (# 28492-49)
                                             FAEGRE BAKER DANIELS LLP
                                             300 North Meridian Street, Suite 2700
                                             Indianapolis, Indiana  46204
                                             Telephone:  (317) 237-0300
                                             Facsimile:  (317) 237-1000
                                             E-Mail:  andrea.pierson@faegrebd.com
                                             E-Mail:  victoria.calhoon@faegrebd.com


                                             Charles F. Webber (MN Bar #215247)
                                             Christin Jaye Eaton (MN Bar # 228795)
                                             FAEGRE BAKER DANIELS LLP
                                             2200 Wells Fargo Center
                                             90 South Seventh Street
                                             Minneapolis, MN 55402
                                             Telephone:  (612) 766-7000
                                             Facsimile:  (612) 766-1600
                                             E-Mail:  chuck.webber@faegrebd.com
                                             E-Mail:  christin.eaton@faegrebd.com


                                             James Stephen Bennett (# 22869-02)
                                             FAEGRE BAKER DANIELS LLP
                                             110 W. Berry Street, Suite 2400
                                             Fort Wayne, Indiana  46802
                                             Telephone: (260) 424-8000
                                             Facsimile:  (260) 460-1700
                                             E-Mail:  stephen.bennett@faegrebd.com

                                             *Counsel for the defendants, Cook Incorporated,
                                             Cook Medical LLC (f/k/a Cook Medical
                                             Incorporated), and William Cook Europe ApS*

US.114258387.01

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 20, 2017, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.  Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

/s/ Victoria R. Calhoon

US.114258387.01