UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND          Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS  LIABILITY LITIGATION             MDL No. 2570

_____

This Document Relates to Plaintiff
        Arthur Gage
        Civil Case No.  1:14-cv-01875-RLY/TAB

_____


**COOK DEFENDANTS' REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

The Court should grant Cook summary judgment on Plaintiff Arthur Gage's claims based

on negligent design, strict-liability and negligent failure to warn, negligent manufacturing,[1] and

breach of express and implied warranties, as well as his claim for punitive damages.  As noted in

Cook's original motion, Plaintiff does not assert a claim based on strict-liability design defect.

*See* Dkt. 5479 at 1, n2, and Plaintiff's response does not dispute this omission.

### I.  Illinois's Statute of Limitations Bars Plaintiff's Claims.

Cook is entitled to summary judgment because Illinois's two-year statute of limitations

bars all Plaintiff's claims.

Plaintiff does not contest the facts set forth in Cook's original motion bearing on the

statute of limitations.  *See* Dkt. at 5749 at 7-14.  Specifically, Plaintiff does not dispute that

within a few days of the initial placement of his Tulip IVC filter in April 2011:

---

[1] Plaintiff's response does not oppose Cook's motion for summary judgment on his negligent
manufacturing claim.  *See* Dkt. 5749 at 24-25.  Plaintiff has therefore conceded the argument,
and Cook is entitled to summary judgment on that claim.  *See Bonte v. U.S. Bank, N.A.*, 624 F.3d
461, 466 (7th Cir.2010) ("Failure to respond to an argument ... results in waiver," and "silence
leaves us to conclude" a concession).

- Plaintiff experienced a sudden onset of excruciating pain, which he says continues to the present day;
- He knew that this pain was new, unexpected, and different from what he had expected from his surgery;
- The pain immediately made him think something was wrong; and
- He immediately blamed the pain on the IVC filter.

Under well-established case law, the existence of these facts commenced the running of the statute of limitations.  *See, e.g., Conley v. Springfield Clinic*, 474 N.E.2d 421, 422 (Ill. App. Ct. 1985) (holding statute began to run when, within weeks of her shoulder surgery, plaintiff experienced pain, and attributed it to her surgery); *Hutson v. Hartke*, 686 N.E.2d 734, 736 (Ill. App. Ct. 1997); *Berry v. G. D. Searle & Co.*, 309 N.E.2d 550, 556 (1974) (holding plaintiff's product liability claim against a drug manufacturer was time barred because the suit was filed more than two years after the onset of plaintiff's stroke symptoms, which the court held was "a traumatic event"); *Reat*, 197 N.E.2d at 866 (dismissing on statute of limitations grounds, stating: "He knew he had pain. He knew he was physically injured. He was not legally ignorant of the existence of his alleged cause of action."); *Reat v. Illinois Cent. R. Co.*, 197 N.E.2d 860, 863 (Ill. App. Ct. 1964) ("where the defendant's alleged breach of duty causes the plaintiff to suffer pain the invasion of his interest is manifest as soon as it occurs and he has a ripe cause of action then").

Plaintiff tries to distinguish these cases by arguing that in each case, "there were no other reasonable causes of the injuries suffered by these plaintiffs" other than the defendant's wrongful conduct, and that the plaintiffs were therefore "on notice that a possible cause of action exists." Pl. Resp. at 6.  But Plaintiff's proposed distinction does not bear scrutiny.  Here, regardless of whether there *might* have been other causes of Plaintiff's pain following the placement of his filter, Mr. Gage undeniably did not ***in fact*** consider any other possible causes.  Instead, he immediately blamed the Tulip IVC filter, just as he does in this belated lawsuit.  His own actual,

2

immediate blaming of the Tulip IVC filter seals his fate as it shows that he had the very "notice that a possible cause of action exists" that he argues commenced the running of the statutes in *Hutson*, *Berry*, and *Reat*.

The only case Plaintiff cites in support of his argument that the statute of limitations did not begin to run immediately after he began experiencing excruciating pain that he attributed to his filter is *Watkins v. Health & Hospitals Governing Com.*, 397 N.E.2d 228, 230 (Ill. App. 1979).  *See* Pl. Resp. at 6-7.  But the facts in *Watkins* were far different than those Plaintiff presents here.  In *Watkins*, the plaintiff had no reason to suspect that the amputation of her leg resulted from the dye test she had undergone.  On the contrary, because the plaintiff was a diabetic, she could reasonably assume that her diabetes necessitated the amputation, and the court expressly relied on that fact in holding the statute did not begin to run at the time of the amputation.  *See id.* at ("It would be quite reasonable for plaintiff, a diabetic, to assume the amputation was a result of her diabetes and not the defendant's negligence.").

In contrast here, as noted above, Plaintiff ***in fact*** blamed his pain on the Tulip filter, a fact he does not deny.  To the contrary, he boasts of having sound reasons to immediately blame his pain on a problem with his Tulip filter, including the timing of the pain immediately after the filter's placement, the new and unique character of the pain, the severity of the pain, and the lack of any warning from his treating physician that he would experience such pain.  Dkt. 5749-10, Ex. K, 4/23/17 Pangan Dep. 121:24-122:1[2].  The dispositive facts in the *Watkins* case clearly distinguish it from Plaintiff's claim here.

---

[2] In accordance with Local Rule 5-1(b), Cook filed its Exhibits Submitted With Cook Defendants' Memorandum in Support of Motion for Summary Judgment in the Gage natter ("List of Exhibits Submitted") [Dkt. No. 5750] contemporaneously with its Motion For Summary Judgment [5745] and Memorandum in Support [Dkt. 5749]. The exhibits referenced in this Reply Brief are attached to that List of Exhibits Submitted and Memorandum in Support.

US.113559510.11

Moreover, although the facts of *Watkins* differ from those here, the legal standard the *Watkins* court applied requires summary judgment here.  The *Watkins* court stated:

> [T]he statute of limitations begins to run "when there is a concurrence of the actual or constructive knowledge of both the physical problem and the possibility that someone is at fault for its existence."

*Watkins v. Health & Hospitals Governing Com.*, 397 N.E.2d 228, 230 (Ill. App. 1979) (quoting *Roper v. Markle*, 375 N.E.2d 934, 938 (Ill. App. 1978) and citing *Kristina v. St. James Hospital* (1978), 380 N.E.2d 816 (Ill. App. 1978) and *Licka v. William A. Sales, Ltd.* (1979), 388 N.E.2d 1261 (Ill. App. 1979), for the same test).  Here, Plaintiff undisputedly had both "actual… knowledge of the physical problem"—the excruciating pain—and knowledge of the possibility that someone—Cook—was at fault for the existence of the pain.  Thus, even under the standard articulated in the case on which Plaintiff himself relies, his claim is time-barred.

Plaintiff in effect argues that the statute of limitations somehow stopped running when he consulted doctors for his pain because those doctors did not immediately confirm his blaming of the Cook filter.  Put another way, Plaintiff argues that even though his knowledge of his pain and his belief that his Tulip filter caused that pain put him on notice and thus started the statute running, his doctors' failure to confirm the source of the pain or their suggestions that the pain might have some other source somehow tolled or stopped the running of the statute, and the statute only restarted when some doctor confirmed that something had gone wrong with the filter.  *See* Pl. Resp. at 8-10.  Notably, Plaintiff cites no authority for his suggestion that the comments of a third party, unconnected to the defendant, can interrupt and later restart the running of a statute of limitations.  On the contrary, Plaintiff's proposed rule runs afoul of Illinois cases that reject the notion that a statute of limitations only begins to run when a doctor confirms the plaintiff's injury.  *See, e.g., Hutson*, 686 N.E.2d at 737-38 (rejecting plaintiff's argument that statute of limitations began to run only when she first sought medical care and/or

4

obtained a medical diagnosis); *see also* Entry on the Cook Defendants' Motion for Summary Judgment, Dkt. 5575, at 8 (Aug. 2, 2017) ("Graham submits no evidence that the Cook Defendants took any action designed to prevent her from filing her complaint on time").

Finally, citing no legal authority, Plaintiff suggests that his own mental state should affect when the statute of limitations began to run. *See* Pl. Resp. at 8 (quoting Dr. Leventhal's report). Although a party's mental condition may toll a statute of limitations in extreme cases, the bar for such "legal disability" is high:

> A person suffers from a "legal disability" where he or she is "entirely without understanding or capacity to make or communicate decisions regarding his person and totally unable to manage his [or her] estate or financial affairs." *Estate of Riha v. Christ Hospital,* 187 Ill.App.3d 752, 756, 135 Ill. Dec. 907, 544 N.E.2d 403 (1989). In a personal injury case, a person is not legally disabled if he or she can comprehend the nature of the injury and its implications. *Sille v. McCann Construction Specialties,* 265 Ill.App.3d 1051, 1055, 202 Ill. Dec. 808, 638 N.E.2d 676 (1994).

*Hochbaum v. Casiano*, 686 N.E.2d 626, 631 (Ill. App. 1997). Plaintiff does not argue that he meets or ever met this legal threshold for a "legal disability" that would toll the statute of limitations, and the opinion from Dr. Leventhal that Plaintiff quotes is neither sufficiently certain nor sufficiently specific to support such a finding of legal disability. *See id.* at (holding plaintiff was not "legally disabled," despite doctor's testimony that he believed patient was incompetent and unable to make any decisions concerning legal matters, where plaintiff was able to manage her personal affairs and make and communicate decisions).

The statute of limitations bars all of Plaintiff's claims, and Cook is entitled to summary judgment.

US.113559510.11

## II. Cook is Entitled to Summary Judgment on Plaintiff's Negligent Design Claim.

Plaintiff's response fails to create a genuine issue of material fact on either the liability or the causation element of his negligent design claim, and Cook is entitled to summary judgment on that claim.

### A. Plaintiff cannot create a genuine issue of material fact concerning negligent design.

The expert reports of Plaintiff's experts Dr. Marmureanu and Dr. McMeeking do not create a jury question on negligent design, and Cook is entitled to summary judgment on that claim. *Salerno v. Innovative Surveillance Tech., Inc.*, 932 N.E.2d 101, 112 (Ill. App. Ct. 2010).

As to Dr. Marmureanu, Plaintiff first argues that Cook merely objects to his failure to use "legaleeze and buzzwords" in his report. Pl. Resp. at 26. But these omitted "legaleeze and buzzwords" cannot be so casually disregarded because they are the *elements* of Plaintiff's claim: design, negligent, unreasonably dangerous, standard of care, defect, or defective. *See, e.g., Blue v. Environmental Eng'g, Inc.,* 828 N.E.2d 1128, 1142 (Ill.2005) ("a negligence claim for a defective design of a product" rests on proof that "the defendant deviated from the standard of care that other manufacturers in the industry followed at the time the product was designed"); *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 263-64 (Ill. 2007) (holding that "in a negligence claim, a defendant's fault is at issue *in addition to the condition of the product*") (citing *Coney v. J.L.G. Industries, Inc.*, 454 N.E.2d 197 (Ill. 1983)) (emphasis added). Dr. Marmureanu's failure to address these concepts is a failure of substance, not of semantics. His report simply asserts no flaws in the Tulip design and no failure to exercise reasonable care.

Plaintiff's reliance on Dr. Marmureanu's discussion of filters' risks and benefits does not substitute for testimony of actual negligent design and does not establish that Cook failed to follow the applicable standard of care. Nor does Dr. Marmureanu's report establish the

6

necessary design defect.  Although the report discusses the risks and the benefits of the IVC filter and its complications, he never attributes any aspect of the filter's risks to any aspect of the product's *design*.  As Plaintiff's response notes, Dr. Marmureanu's report talks about potential complications of IVC filters, the rates at which those complications occur, and his view of the limited utility of the filter.  But in the entire 21-page section of the Marmureanu report on which Plaintiff bases his argument, Dr. Marmureanu never attributes any of the complications he cites even generally to the *design* of the filter, much less to any specific feature of the design.

Plaintiff argues that Dr. Marmureanu need not set out the standard of care for designing medical devices because Dr. McMeeking does so in his report.  Pl. Resp. at 27-28.  But this misses the point:  Although Dr. McMeeking sets forth a standard of care for design, neither Dr. Marmureanu nor Dr. McMeeking ever opines that Cook *violated* that standard of care in designing the Tulip IVC filter.  *See Blue,* 828 N.E.2d at 1142 (Ill. 2005) (requiring proof that "defendant deviated from the standard of care that other manufacturers in the industry followed at the time the product was designed").  Plaintiff's response cites no testimony to the contrary.

Plaintiff also argues that Dr. McMeeking's opinions create an issue of fact on design defect because his report discusses the risks of IVC filters, and "the test is whether, given the design of the product, the risks of the given design are outweighed by the benefits."  Pl. Resp. at 27-28.  But even if the risk-benefit test were sufficient alone to establish negligent design (which it is not, *see Calles*, 864 N.E.2d at 263-64), Dr. McMeeking's report does not create an issue of fact on design defect under that test.  As Plaintiff's response tacitly acknowledges by omission, Dr. McMeeking's report addresses only the *risks* of IVC filters; he does *not* address the *benefits*. Indeed, as noted in Cook's original motion, Dr. McMeeking acknowledged at his deposition that he *could not* assess the benefits of IVC filters in the context of his design opinions.  *See* Dkt. 5750-10, Ex. T, McMeeking Depo. at 315:25-316:20 ("I'm not in a position to make assessment

of the benefits.").  Because he does not and cannot assess the benefits of IVC filters, Dr. McMeeking does not and cannot offer any opinion on the risk-benefit test that might affect Cook's entitlement to summary judgment.

Plaintiff argues that Dr. McMeeking's proposed testimony concerning safer alternative design creates a genuine issue of fact on design defect.[3]  Pl. Resp. at 28.  In its original motion, Cook pointed out that Dr. McMeeking's testimony fails to create such an issue of fact because (1) Dr. McMeeking admits he is not in a position to evaluate the benefits of alternatives and thus cannot opine that they are "reasonable," (2) his evaluation of the alternatives looked only at perforation and did not consider the alternatives' potential effect on efficacy or other possible complications, (3) the "alternatives" are *permanent* filters, and thus are not true alternatives to the retrievable Tulip.  *See* Dkt 5749 at 21-22.  Plaintiff fails to address any of these problems with Dr. McMeeking's testimony, casually dismissing them as going "to the weight of the evidence."  Pl. Resp. at 28.  Plaintiff is mistaken.  These issues do not bear solely on the weight the jury should give the evidence; they go to the issue of whether Dr. McMeeking's alternative design testimony can create an issue of fact, given his admitted lack of foundation and his failure to assure that the alternatives actually performed the same function and provided the same benefits as the Tulip.  Plaintiff does not dispute that Dr. McMeeking's opinions on alternative design suffer from the failings that Cook cited, and effectively concede the point.  The opinions therefore cannot not defeat summary judgment on his design claim.

---

[3] Plaintiff also argues that because Illinois law does not require a design plaintiff to prove the existence of a "reasonable alternative design," this evidence necessarily creates a jury question on negligent design.  *See* Pl. Resp. at 28.  Plaintiff misunderstands the law.  Although Illinois courts do not *require* proof of a reasonable alternative design to prove design defect, evidence of such a reasonable alternative design may nevertheless constitute evidence of a design defect.  *See Baley v. Fed. Signal Corp.*, 982 N.E.2d 776, 802 (Ill. App. 2013).  Cook therefore addressed the evidence in its motion for summary judgment.

### B. Plaintiff cannot create a genuine issue of material fact concerning causation based on design defect.

Plaintiff does not dispute that he must prove causation for his negligent design claim through expert testimony. *See Show v. Ford Motor Co.,* 659 F.3d 584, 588 (7th Cir. 2011). The expert testimony he offers, however, fails to create a jury question on causation.

First, Dr. Marmureanu, the only expert Plaintiff offers on the issue of specific causation, opines that "the defective Gunther Tulip filter has a 'tendency to perforate' and its 'tendency to progressively perforate,'" *See* Dkt.5750-7, Ex. Q, Marmureanu Gage Rpt. at 1, but he never asserts that this "tendency" *caused* Plaintiff Gage's injuries. Plaintiff's response does not deny this, but instead tries to obscure the point by mischaracterizing Cook's supporting case citation. *See* Pl. Resp. at 28-29. Plaintiff fails to address the two critical points here. First, a "tendency" is not evidence that a design caused a problem; a tendency is simply an observation of a correlation, with no causal element or link to product design. For example, a sports car may have a "tendency" to get into more crashes than a Volvo wagon, but that "tendency" does not mean that the design of the sports car caused those crashes. *See Davis v. Time Warner Cable of Southeastern Wisconsin, L.P.,* 651 F.3d 664, 677 (7th Cir. 2011) ("correlation is not the equivalent of causation").

Second, even assuming for the sake of argument that a "tendency" could involve a causal element, Dr. Marmureanu's report on Plaintiff Gage never opines that any "tendency" of the Tulip filter to perforate actually *caused* Plaintiff's perforation. Plaintiff has no expert testimony to support any claim that any "tendency" of the Tulip filter caused his perforation.

Third, Plaintiff asserts that Dr. Marmureanu offered causation opinions because he opined that Plaintiff's injuries were "substantially contributed to" or were "caused" "by the Tulip filter" or by "the placement of the Tulip filter." Pl. Resp. at 29 (quoting Marmureanu Rpt.).

Dr. Marmureanu does indeed make these statements about the Tulip filter, and they present a logical inference that is almost axiomatic:  To the extent that Plaintiff suffered complications because his Tulip filter perforated, those complications were caused "by the Tulip filter." Indeed, Cook in fact specifically noted these very opinions by Dr. Marmureanu in its original motion. *See* Dkt. 5749 at 23.

The inference Plaintiff urges, however, does not support Plaintiff's claim that a defect in the *design* of the Tulip filter caused Plaintiff's injuries, and that is Plaintiff's claim here.  The Tulip perforation caused the complications, but what caused the perforation?  Was it the design of the Tulip?  Or was it the technique the doctor used in placing it, or some weakness in Plaintiff's inferior vena cava, or some other factor?  Dr. Marmureanu expresses no opinion on the question, and certainly does not attribute Plaintiff's perforation to the Tulip's design.  Indeed, as noted in Cook's original motion, Dr. Marmureanu's 17-page report on Plaintiff Gage does not even *mention* the word design.

Plaintiff has no expert evidence showing that any negligence in the design of the Tulip IVC filter caused his injuries, and Cook is entitled to summary judgment on that claim.

### III.      Cook is Entitled to Summary Judgment on Plaintiff's Failure-to-Warn Claims.

Cook is also entitled to summary judgment on Plaintiff's strict liability and negligent failure-to-warn claims because he cannot establish either that Cook's warning was inadequate or that any inadequacy in the warning caused Plaintiff's injuries.

#### A.  Plaintiff cannot create a genuine issue of material fact the Cook failed to adequately warn doctors about possible complications of IVC filters.

Cook is entitled to summary judgment on Plaintiff's failure-to-warn claims, both negligence and strict liability, because he can offer no expert testimony or other evidence that

Cook's warnings were inadequate or that Cook should have provided doctors with any additional instructions or warnings concerning potential risks of using the Tulip IVC filter.

> **1. Plaintiff has no expert testimony that Cook should have provided doctors with additional information or warnings concerning perforation or other possible complications of IVC filters.**

Plaintiff's response asserts that "Dr. Marmureanu's report state[s] that the Tulip IFU failed to adequately inform doctors of the product's defects and risks." Pl. Resp. at 12. In fact, Dr. Marmureanu's report expresses no such opinion. His report, and Plaintiff's partial summary of that report on pages 12-19 and 20-21 of his response, recites Dr. Marmureanu's opinions (1) that IVC filters have a number of complications, including tilt, perforation, and embedment; (2) that some of those complication can be serious; (3) that Cook has known of those complications for a number of years; and (4) that the Tulip IFU does not warn of some of these complications. Nowhere in either Dr. Marmureanu's General Report or his Gage-specific report, however, does Dr. Marmureanu opine (1) that Cook should have warned about such complications, (2) that Cook violated any standard of care in omitting such additional warnings, (3) that any other filter manufacturer includes such additional warnings, or (4) that the Tulip is defective or unreasonably dangerous as a result of the omission of any such warning. If Dr. Marmureanu's report contained any of these opinions, it would have been an easy matter for Plaintiff simply to quote that opinion in his response. He does not do so.[4]

Plaintiff also looks for expert support for his claim of negligent failure to warn from Dr. Garcia, quoting the same passage Cook discussed in its original motion. Plaintiff wants to connect Dr. Garcia's comments about specific risks on page 2 of his report to his vague

---

[4] Plaintiff also cites a passage from Dr. Marmureanu's deposition in which he confirms his view that Cook's Instructions for Use were "incorrectly designed" and "should have been written different." Pl. Resp. at 21. Even if this opinion were actually stated in Dr. Marmureanu's report (it was not), the opinion says nothing about warnings and does not suggest that the warnings were inadequate or what warnings he believes Cook should have given.

11

comments about "well established risks" eight pages and five sections later, asserting that that "[i]t's very obvious" that the risks are the same.  But the Court should not have to parse remote passages in an expert's report to piece together a retained expert's opinion.  If Dr. Garcia truly held the opinion that Cook had failed to adequately warn doctors of perforation or any other specific risk, he could easily have said so in his report.  He did not, and in fact does not mention the Cook IFU or its warnings anywhere in his report other than the single quoted passage.  Likewise, Plaintiff submitted no deposition testimony or declaration from Dr. Garcia that tried to clarify that he intended his report to convey such an opinion.  Dr. Garcia does not opine that Cook provided inadequate information about any potential complication (other than the possible need for long-term anticoagulation, which Plaintiff already needed), and offers no opinion about what any additional warning should have said.

Although Plaintiff's experts opine that Cook omitted certain information about IVC filter risks from the Tulip IFU, that alone does not establish a negligent failure to warn.  A label or an IFU cannot possibly include every piece of information that a manufacturer has about a product, and the mere omission of a warning about a possible risk is not a sufficient ground for liability.  The omission must be negligent or must render the product defective and unreasonably dangerous.  *See, e.g., Salerno v. Innovative Surveillance Tech., Inc.*, 932 N.E.2d 101, 109 (Ill. App. Ct. 2010).  Plaintiff offers no expert testimony to support his claim that Cook negligently failed to warn, and Cook is therefore entitled to summary judgment on that claim.

### 2.   Plaintiff's effort to prove the inadequacy of Cook's warning without expert testimony fails.

Plaintiff tries to evade the requirement of expert testimony on the adequacy of warnings by arguing that "[d]octors cannot be considered learned intermediaries if they have not been sufficiently warned of the harmful effects of a drug."  Pl. Resp. at 22.  But expert testimony is

US.113559510.11

still required because the jury needs to understand what would constitute a "sufficient warning" about a product for a medical professional who already uses the product all the time. *See Northern Trust Co.*, 572 N.E.2d at 1036.

This non-expert-based argument also ignores the reality of what Plaintiff's treating physician Dr. Goodwin *actually* knew. Plaintiff admits that Dr. Goodwin was already well-versed in the risks, benefits, and procedures of IVC filters at the time he placed Plaintiff's filter:

> Based upon his deposition testimony, Dr. Goodwin is pretty confident with regard to his knowledge of IVC filters, including the Tulip. He stated that he learned the right place to put the filter by talking to lots of people and going to lots of courses. …His knowledge of how and where to place the Tulip is based on his medical education, training and judgment.

Pl. Resp. at 24 (citations omitted). But this is only half the story. As Cook noted in its original motion, at the time Dr. Goodwin placed Plaintiff's Tulip IVC filter, he was fully aware of the risks associated with implanting the Tulip filter, including the risks of tilt, tenting, penetration, perforation, migration, acute damage to the inferior vena cava, hematoma at the vascular access site, hemorrhage, thrombosis or stenosis, infection, and death. *See* Dkt. 5749-9, Ex. J, Goodwin Dep. at 92:20-99:1; 104:2-105:18. These risks were also well known in the medical community in 2011. *Id* at 99:18-100:1. Plaintiff does not dispute these facts, and they fatally undercut his argument that Dr. Goodwin was not a learned intermediary because he had "not been sufficiently warned of the harmful effects of a drug." Pl. Resp. at 22.

The specific examples Plaintiff offers likewise ignore the realities of this case. Plaintiff argues that Dr. Goodwin had never heard of anyone dying from "having a filter in," and that Cook was aware of the deaths associated with the Tulip filter. *Id.* at 23. But the Tulip IFU *did* specifically warn doctors about the risk of death. *See* Dkt. 5749-15, Ex. U, IFU for Günther Tulip™ Vena Cava Filter Set for Femoral Vein Approach. And even if it had not, Plaintiff Gage

of course did not die from having his filter in, and any failure to warn about that risk could have no relevance here.

Plaintiff also argues that Dr. Goodwin stated that "tilt has no clinical significance," while Cook had evidence that tilt could in fact be clinically significant.  Pl. Resp. at 23.  But this evidence does not suggest that Cook failed to tell Dr. Goodwin about the risks of tilt; it merely shows that Dr. Goodwin has his own opinions about the clinical significance of tilt based on his own experience.  *See* Ex. X, Goodwin Dep. at 56:24-57:1 ("I just reserve the right to disagree that the tilt has any clinical significance"); 88:23-89:1 ("So, to me the issue of tilt is does tilt really have any clinical significance, and in my experience it doesn't"); *see also* 93:2-13. Indeed, when Plaintiff's attorney later confronted Dr. Goodwin with articles purportedly showing clinical effects from filter tilt, Dr. Goodwin steadfastly rejected the attorney's effort to suggest that tilt has clinical significance.  *See* Goodwin Dep. at 52:17-53:7 (the passage Plaintiff cites in his response).  Given Dr. Goodwin's adamant opinion on the issue of tilt even today, years after Plaintiff's placement and despite being shown supposed intervening medical research addressing the topic, Plaintiff's suggestion that some additional information from Cook would have changed Dr. Goodwin's mind six years ago is mere speculation, and cannot defeat summary judgment.

Plaintiff also argues that Cook had avenues available other than the Tulip IFU to convey information to his treating doctor Dr. Goodwin, including seminars, presentations, and individual conferences with Cook sales representatives.  Pl. Resp. at 22-23.  But again, this argument faces several insurmountable problems:

- Plaintiff cites no legal authority suggesting that Cook had any duty to provide any particular information to doctors through these methods, as opposed to the IFU;

14

- Plaintiff offers no expert testimony opining that doctors using IVC filters needed any additional information or that any failure by Cook to provide any particular additional information violated any standard of care; and

- Plaintiff ignores Dr. Goodwin's testimony, cited above, that both he and the medical community in general already knew of the risks presented by IVC filter use at the time of Plaintiff's filter placement.

Plaintiff has failed to raise a jury issue on the adequacy of Cook's warnings, and Cook is entitled to summary judgment on that claim.

**B. The undisputed facts establish that any alleged omission of information from the Tulip IFU did not cause Gage's alleged injuries.**

As set forth in Cook's original motion, Plaintiffs cannot as a matter of law establish that any alleged deficiency in the IFU caused Plaintiff's alleged injury.  Plaintiff has failed to respond to this argument in any way, and Cook is therefore entitled to summary judgment.

In its original motion, Cook argued that it was entitled to summary judgment based on Plaintiff's inability to create a fact issue on causation on his warning claim.  Specifically, Cook argued that Plaintiff's causal chain is deficient in three ways, each of which is fatal to the claim:

1. Dr. Goodwin, the doctor who placed Plaintiff's Tulip IVC filter, did not read or rely on the Tulip IFU in any way;

2. Dr. Goodwin knew of all the risks at issue here, including the risk of perforation, at the time he placed Plaintiff's IVC filter; and

3. Dr. Goodwin still believes today that the benefits of the filter to Plaintiff outweigh the risks and would still place the filter in Plaintiff today.

*See* Dkt. 5749 at 4-5, 28-31.  Both as a matter of logic and as a matter of Illinois law, where a treating physician does not read the manufacturer's warning, or already knows the risks without

the warning, or would not change the treatment provided even with additional knowledge, any claimed deficiency in a product warning cannot as a matter of law be a cause of a plaintiff's injury.  *See, e.g., Wooten v. Johnson & Johnson Products, Inc.*, 635 F. Supp. 799, 804 (N.D. Ill. 1986) (granting summary judgment on failure to warn claim where prescribing physician was aware of risks at issue).

Plaintiff's response to Cook's motion does not address this causation argument in any way.[5]  Plaintiff does not dispute the facts Cook sets out on the causation issue, does not question Cook's statement of the law, and does not challenge Cook's application of the law to the facts.

By failing to respond to Cook's argument that he cannot prove the causation element of his failure-to-warn claim, Plaintiff has waived his right to oppose that argument and has conceded that Cook's argument is well taken.  *See, e.g., Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) ("Because they did not provide the district court with any basis to decide their claims, and did not respond to the City's arguments, these claims are waived."); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir.2010) ("Failure to respond to an argument ... results in waiver," and "silence leaves us to conclude" a concession.); *Myers v. Thoman*, 2010 U.S. Dist. LEXIS 107502, at *11, 2010 WL 3944654 (S.D. Ind. Oct. 6, 2010).  Because causation is a necessary element in Plaintiff's failure-to-warn claims, and because Plaintiff's failure to respond concedes Cook's argument that he cannot prove causation, Cook is entitled to summary judgment on Plaintiff's failure-to-warn claims.

## IV.      Cook is Entitled to Summary Judgment on Plaintiff's Breach of Express and Implied Warranty Claims.

Cook is entitled to summary judgment on Plaintiff's express and implied warranty claims.

---

[5] In contrast, as discussed above, Plaintiff's response *does* address Cook's causation argument relating to his design-defect claim.  *See* Pl. Resp. at 28-30 (under heading "Causation").

US.113559510.11

**A. Gage's express warranty claim because he cannot prove the terms of alleged express warranty or the substance of any affirmation of fact or promise.**

Plaintiff has not identified the language, the form, or the circumstances of any express warranty that Cook allegedly made to him or his doctor, either in his complaint, in his discovery responses, or in his response to Cook's motion for summary judgment, and has thus failed to create a genuine issue of material fact on that claim.

Plaintiff responds that he has sufficiently pled an express warranty claim. Pl. Resp. at 30-31. Cook disagrees, but the point is irrelevant. This is a summary judgment motion, and Plaintiff must offer specific evidence to support his claim and may not simply rely on his pleadings. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

Plaintiff also argues that the Tulip IFU makes an express warranty when it states that the filter is "indicated for the prevention of recurrent pulmonary embolism." Pl. Resp. at 31. But this statement does not warrant anything, and no reasonable reader would read it to do so. Such a reading in particularly unreasonable given the general public knowledge and the testifying doctors' universal testimony that "there is no way of 100 percent guaranteeing anything in medicine." Ex. X, Goodwin Dep. at 119:8-22. The IFU statement is simply a statement of the purpose for which the filter is intended; it does not warrant a particular level of performance or anything else, and cannot support an express warranty claim.

**B. Cook is entitled to summary judgment as a matter of law because Gage's inability to prove defect is fatal to a breach of implied warranty claim.**

Plaintiff's only response to Cook's motion for summary judgment on his claim for breach of implied warranty is to cross-reference to his arguments in support of his design-defect and failure-to-warn claims. *See* Pl. Resp. at 32. Because those design and warning arguments fail, as discussed above, Plaintiff's breach of implied warranty claim fails as well. *See Alvarez v. Am.*

US.113559510.11

*Isuzu Motors*, 749 N.E.2d 16, 23 (Ill. App. Ct. 2001) (holding plaintiff must prove product is defective to prevail on claim of breach of implied warranty of merchantability).

**V.      Cook is Entitled to Summary Judgment on Plaintiff's Punitive Damages Claim.**

Nothing in the items Plaintiff cites in opposing summary judgment on this claim comes near to meeting the high threshold for punitive damages.  Plaintiff describes evidence of:

- Cook's recognition that its filters could be improved and its attempts to do so;

- Cook's recognition that tilting and endotheliazation can occur in Cook filters (as they can in all IVC filters);

- Cook's marketing of its retrievable filters as retrievable; and

- Cook's efforts to advise doctors how to avoid tilt.

Cook respectfully submits that the evidence Plaintiff cites would not even support a negligence claim; it simply shows a company striving to understand how its medical device performs and to improve that performance.  Even reading the evidence in the light most favorable to Plaintiff's claim, however, the evidence falls far short of proving either that Cook engaged in "a course of action which shows an utter indifference to or conscious disregard for the safety of others," *Proctor v. Davis*, 682 N.E.2d 1203, 1216 (Ill. App. 1997), or that it acted with malice, fraud, willful and wanton misconduct, oppressiveness "which was not the result of a mistake of fact or law, mere negligence, or other human failing," *Wohlwend v. Edwards*, 796 N.E.2d 781, 784 (Ind. 2003).  No reasonable juror could conclude that Plaintiff's evidence meets either test.

In addition, Plaintiff makes no effort to connect the conduct on which he bases his punitive damages claim to the conduct he claims caused his injuries.  Due process requires a punitive damage award to be linked to the basis for the underlying compensatory damage claim.  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 424 (2003) (holding that

18

conduct on which punitive damages are based "must have a nexus to the specific harm suffered by the plaintiff").  The conduct on which Plaintiff says he rests his punitive damages claim is Cook's supposed knowledge of and failure to warn about tilt and retrievability.  Pl. Resp. at 33-34.  But as detailed in Cook's original motion, Plaintiff cannot show any causal link between that supposed conduct and Plaintiff's injury because his treating doctor (1) did not read or rely on any information from Cook is selecting Plaintiff's filter, (2) already knew at the time of Plaintiff's placement procedure about the risk of IVC filters, including tilt and endotheliazation, and (3) would not have treated Plaintiff any differently even knowing now he complications he actually suffered.  *See* Dkt. 5749 at 28-31.  And as discussed above in Section III(B), Plaintiff does not dispute those facts.

As a consequence, the conduct on which Plaintiff bases his punitive damage claim has no possible connection to the claimed cause of his injury.  Because Plaintiff has shown no nexus between his claimed injuries and any Cook conduct that meets the standard for punitive damages under either Illinois or Indiana law, his punitive damage claim fails.

## CONCLUSION

The Court should grant summary judgment to Cook on all of Plaintiff's claims.

US.113559510.11

Dated: September 22, 2017

Respectfully submitted,

/s/ John T. Schlafer
Andrea Roberts Pierson, Co-Lead Counsel
John T. Schlafer
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:          (317) 237-0300
Facsimile:          (317) 237-1000
andrea.pierson@faegrebd.com
john.schlafer@faegrebd.com

James Stephen Bennett, Co-Lead Counsel
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana  46802
Telephone:          (260) 424-8000
Facsimile:          (260) 460-1700
stephen.bennett@faegrebd.com

*Attorneys for Defendants Cook Incorporated, Cook Medical LLC f/k/a Cook Medical Incorporated, William Cook Europe APS*

20

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 22, 2017, a copy of the foregoing COOK

DEFENDANTS' REPLY TO MOTION FOR SUMMARY JUDGMENT was filed

electronically, and notice of the filing of this document will be sent to all parties by operation of

the Court's electronic filing system to CM/ECF participants registered to receive service in this

matter.  Parties may access this filing through the Court's system.  Lead Co-Counsel for

Defendants will serve any non-CM/ECF registered parties.


/s/ John T. Schlafer                          

US.113559510.11