# EXHIBIT CC

1

```
 1                    UNITED STATES DISTRICT COURT
                      SOUTHERN DISTRICT OF FLORIDA
 2                           MIAMI DIVISION
                      CASE NO. 14-24061-CIVIL-GOODWIN
 3

 4   AMAL EGHNAYEM, et al.,           Miami, Florida

 5                Plaintiffs,         November 13, 2014

 6         vs.                        8:48 a.m. to 6:18 p.m.

 7   BOSTON SCIENTIFIC CORP.,

 8                Defendant.          Pages 1 to 229

 9

10                            JURY TRIAL
            BEFORE THE HONORABLE JOSEPH R. GOODWIN,
11                 UNITED STATES DISTRICT JUDGE

12

13   APPEARANCES:

14
     FOR THE PLAINTIFFS:     JIM H. PERDUE, JR., ESQ.
15                           PERDUE & KIDD, LLP
                             510 Bering Drive, Suite 550
16                           Houston, Texas 77057

17                           SHELLEY HUTSON, ESQ.
                             CLARK, LOVE, HUTSON
18                           440 Louisiana Street, Suite 1600
                             Houston, Texas 77002
19
                             JOSEPH ANTHONY OSBORNE, ESQ.
20                           BABBITT, JOHNSON, OSBORNE & LeCLAINCHE
                             1641 Worthington Road
21                           Suite 100
                             West Palm Beach, Florida 33409
22
                             ERIN COPELAND, ESQ.
23                           FIBICH, HAMPTON, LEEBRON, BRIGGS &
                               JOSEPHSON, LLP
24                           1150 Bissonnet
                             Houston, Texas 77005
25
```

```
 1   FOR THE DEFENDANT:      MOLLY H. CRAIG, ESQ.
                             THE HOOD LAW FIRM, LLC
 2                           172 Meeting Street
                             Charleston, South Carolina 29401
 3
                             MATTHEW D. KEENAN, ESQ.
 4                           ERIC ANIELAK, ESQ.
                             SHOOK, HARDY & BACON
 5                           2555 Grand Boulevard
                             Kansas City, Missouri 64108
 6
                             HILDY M. SASTRE, ESQ.
 7                           SHOOK, HARDY & BACON
                             201 South Biscayne Boulevard
 8                           Suite 2400
                             Miami, Florida 33131
 9

10   INTERPRETED BY:         MARIA MARCILLO
                             CONSUELO BASCUAS
11

12   REPORTED BY:            LISA EDWARDS, RDR, CRR
                             Official Court Reporter
13                           United States District Court
                             400 North Miami Avenue
14                           Twelfth Floor
                             Miami, Florida 33128
15                           (305) 523-5499

16

17

18

19

20

21

22

23

24

25
```

1  the failure-to-warn case based on the representation of
2  Mr. Osborne that the injuries suffered by Ms. Eghnayem were
3  warned of and known to her.  I think I heard her counsel make
4  that admission in court.
5         THE COURT:  Well, I think -- I think Plaintiff thinks
6  that I don't understand what he's saying.  But I do.
7         I am going to give an instruction -- let me see it,
8  Meghan.
9         THE LAW CLERK:  Let me look for it.
10         THE COURT:  In the meantime, let me deal with the risk
11  utility versus consumer expectation business.
12         MR. OSBORNE:  Sure.
13         THE COURT:  The issue before the Court is the final
14  jury instruction on the claim of strict liability for design
15  defect.  Specifically, the parties dispute which objective test
16  the Court should direct the jury to apply to the second element
17  of this claim; that is, whether the defective design of the
18  Pinnacle made it unreasonably dangerous to the user.
19         The Defendant asserts that the appropriate test for
20  this inquiry in this case is the risk utility test.  The risk
21  utility test as provided by the Florida standard jury
22  instructions states that "A product is unreasonably dangerous
23  because of its design if the risk of danger in the design
24  outweighs the benefits."
25         The Plaintiffs, on the other hand, maintain that the

Case 1:14-ml-02570-RLY-TAB   Document 6511-2   Filed 09/22/17   Page 5 of 8 PageID #: 34097
Case 1:14-cv-24061-JRG   Document 318   Entered on FLSD Docket 11/17/2014   Page 16 of 229

16

```
 1   risk utility test alone is not a sufficient instruction to the
 2   jury.  Rather, in their view, the jury should also be
 3   instructed on the consumer expectation test, which provides
 4   that "A product is unreasonably dangerous because of its design
 5   if the product fails to perform as safely as an ordinary
 6   consumer would expect when used as intended or in a manner
 7   reasonably foreseeable by the manufacturer."
 8        The Florida standard jury instructions leave room for
 9   the use of either test.  Indeed, in the comments to the
10   instruction, the Supreme Court of Florida committee on standard
11   jury instructions states, "Absent more definitive authority in
12   Florida, the committee recommends that neither test to the
13   exclusion of the other" -- that is, the committee recommends
14   neither test to the exclusion of the other -- "and expresses no
15   opinion about whether the two charges should be given
16   alternatively or together."
17        The jury instruction -- and then quoting again --
18   "provides language suitable for either standard, or both,
19   determined by the trial court to be appropriate."
20        Thus, this Court would be consistent with the Florida
21   standard jury instructions if I instructed the jury on the risk
22   utility test alone, the consumer expectation test alone or on
23   both tests together.
24        But I conclude that the risk utility test alone is
25   appropriate in this case with regard to the strict liability
```

```
 1    claim for design defect.
 2            In reaching this conclusion, I was motivated to some
 3    extent by the rationale underlying the learned intermediary
 4    doctrine, which Florida has adopted as an exception to a
 5    manufacturer's usual duty to warn.
 6            When the learned intermediary doctrine is in place, as
 7    it is in this case, the law relies on the expertise of the
 8    physician intermediary to, quote, "bridge the gap" between the
 9    manufacturer and the consumer in cases where the product at
10    issue and its related warnings are sufficiently complex so as
11    not to be fully appreciated by the consumer.
12            This learned intermediary concept is equally applicable
13    to design defect claims.  If a medical device is so complex
14    that its directions and warnings cannot be fully appreciated by
15    the consumer, thereby triggering the learned intermediary
16    doctrine, then I think, analogously, it is undoubtedly too
17    complex for a consumer to develop measurable expectations about
18    its proper design.
19            In such cases of complex products, courts applying
20    Florida law have deferred to the risk utility test, which
21    laypersons can easily apply, rather than the consumer
22    expectation test.
23            I follow the lead of these courts and will instruct the
24    jury on the risk test alone -- risk utility test alone.
25    Providing a second instruction on a consumer expectation test,
```

Case 1:14-ml-02570-RLY-TAB   Document 6511-2   Filed 09/22/17   Page 7 of 8 PageID #: 34099
Case 1:14-cv-24061-JRG   Document 318   Entered on FLSD Docket 11/17/2014   Page 18 of 229

18

```
 1    as the Plaintiff suggests, would, in my judgment, result in the
 2    possibility of -- substantial possibility of jury confusion and
 3    error, given the medical and technical complexity of the
 4    Pinnacle mesh kit at issue, which can only be obtained through
 5    a prescribing physician intermediary.
 6          Contrary to the Plaintiffs' contentions, I believe that
 7    the outcome of Aubin, A-u-b-i-n, versus Union Carbide
 8    Corporation, currently pending before the Florida Supreme
 9    Court, would not negate this ruling.  In the Aubin case, the
10    Florida Supreme Court is expected to decide whether Florida
11    will adopt the third restatement of torts for products
12    liability or whether Florida will continue to employ the second
13    restatement of torts.
14          If the Florida Supreme Court decides to adopt the third
15    restatement, the risk utility test becomes law for design
16    defect claims, which coincides with this Court's ruling.
17          Alternatively, if the Florida Supreme Court rejects the
18    third restatement, the risk utility test is not abrogated as a
19    possible jury instruction.
20          In light of Aubin, this Court's best option is to abide
21    by the current Florida standard jury instructions on design
22    defect and the application of those instructions, which allow
23    for the use of the risk utility test by itself.
24          Indeed, some Florida courts have insisted upon use of
25    the risk utility test in cases involving complex products.
```

Case 1:14-ml-02570-RLY-TAB   Document 6511-2   Filed 09/22/17   Page 8 of 8 PageID #: 34100
Case 1:14-cv-24061-JRG   Document 318   Entered on FLSD Docket 11/17/2014   Page 19 of 229

19

```
 1   Without direction, specific direction, otherwise from the
 2   Florida Supreme Court, I will follow this trend.
 3           I will instruct the jury only on the risk utility test.
 4   I will instruct the jury that a device is unreasonably
 5   dangerous because of its design if the risk of danger in the
 6   design outweighs the benefits.
 7           With regard to the statute-of-limitations issue, my
 8   proposed charge says something to the effect, "Second, Boston
 9   Scientific asserts the defense of statute of limitations for
10   Plaintiff Amal Eghnayem.  It is the law of the State of Florida
11   that a person who asserts a claim for injuries must seek
12   recovery within a certain period of time after she discovers,
13   or should have discovered with the exercise of due diligence,
14   the facts giving rise to her claim.
15           "In this case, if Boston Scientific shows by a
16   preponderance of the evidence that Plaintiff Amal Eghnayem
17   discovered, or through the exercise of due diligence should
18   have discovered, the facts giving rise to her claims on or
19   before April 11th, 2009, your verdict may be for Boston
20   Scientific as to Ms. Eghnayem's claims."
21           There is room in there, as you can see, for argument
22   about the matter.  But it wasn't an argument I heard when I --
23   when we just had that colloquy a few minutes ago.
24           Are we ready to bring in the jury?
25           MR. ANIELAK:  Your Honor, we have a couple of short
```