UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND          Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS   LIABILITY LITIGATION              MDL No. 2570

_____

This Document Relates to Plaintiff

      Elizabeth Jane Hill
      Civil Case No. 1:14-cv-06016-RLY-TAB

_____

## COOK DEFENDANTS'
## REPLY IN SUPPORT OF MOTION TO BIFURCATE

The Cook Defendants[1] respectfully ask the Court to bifurcate trial of this case in the manner described in the Memorandum in Support of Motion to Bifurcate to promote judicial economy and minimize unfair prejudice.[2]  Mrs. Hill's opposition to the Cook Defendants' bifurcation motion is based on a tortured statement of her remaining claims and a misapplication of the case law on bifurcation.  In addition, Mrs. Hill's opposition to the application of Indiana law to her punitive damages claim provides further reason to bifurcate, and this reply addresses her position on that issue.

**I.      Courts routinely bifurcate punitive damages, especially in tort cases.**

In her response to the motion to bifurcate, Mrs. Hill suggests that bifurcation of punitive damages is a "novel" concept invented by the Cook Defendants.  Plaintiff's Response Br. at 2.

---

[1] The Cook Defendants in this matter are Cook Incorporated, Cook Medical LLC f/k/a Cook Medical Incorporated, and William Cook Europe ApS.  All references to the "Cook Defendants" refer to all three entities unless otherwise noted.

[2] At a much earlier stage of this litigation, the Court denied without prejudice the Cook Defendants' 2015 motion to bifurcate discovery and trial, and specifically noted that the trial judge might want to revisit the issue with the benefit of completed discovery, rulings on dispositive motions, and viable trial dates.  Order on Defendants' Motion to Bifurcate at 5.

Despite Mrs. Hill's posturing, bifurcation of the punitive damages phase is a standard trial-management technique used to promote efficiency and fairness to the parties. The Annotated Manual for Complex Litigation notes that in the mass torts context "in *most cases* the issue of punitive damages is bifurcated." David F. Herr, *Annotated Manual for Complex Litigation* § 22.93 (4th ed. 2017) (emphasis added).

In its opening brief, the Cook Defendants provided numerous examples of personal injury cases where courts granted or upheld requests to bifurcate punitive damages, such as *Jenkins v. Raymark Indus. Inc.*, 782 F.3d 468 (5th Cir. 1986), *Emrick v. United States Suzuki Motor Corp.*, 750 F.2d 19 (3d Cir. 1984) (also a design defect case), and *Vandersteen v. Kelly*, No. 07 C 5632, 2010 WL 659327 (N.D. Ill. Feb. 23, 2010). The courts concluded that, in the personal injury context, bifurcation of punitive damages from the liability phase was an effective way to approach presentation of the evidence, particularly given the different purposes of the liability and punitive damages phases.

Throughout her response opposing bifurcation, Mrs. Hill relies heavily on a line of cases involving insurance coverage disputes in which requests for bifurcation were denied.[3] While these cases contain language unfavorable to bifurcation, which Mrs. Hill quotes extensively, the courts in these cases were reacting to the fact that "in disputes concerning insurance coverage and bad faith claims, the issues often overlap and are inextricably intertwined," rendering

---

[3] *Smith v. PH Mortgage Corp.*, 2015 WL 4256532 (N.D. Ind. July 14, 2015), *Jones v. Travco Ins. Co.,* 2014 WL 1404726 (S.D. Ind. April 9, 2014), *Montgomery v. American Family Ins. Co.*, No. 3:09-cv-00545, 2010 WL 1936085 (N.D. Ind. May 11, 2010), *Balzer v. American Family Ins. Co.*, No. 2:08-cv-241, 2009 WL 1543524 (N.D. Ind. June 2, 2009), *Williamson v. Progressive Northern Ins. Co.,* 2007 WL 2176561 (S.D. Ind. 2007), *Trinity Homes LLC v. Regent Ins. Co.*, No. 1:04-cv-1920 JDTWTL, 2006 WL 753125 (S.D. Ind. March 20, 2006), all of which Mrs. Hill cites and many of which she quotes, fall into this category. The line descends from *McLaughlin v. State Farm Mut. Auto Ins. Co.*, 30 F.3d 861 (7th Cir. 1994), also an insurance coverage dispute case. The Opinion Mrs. Hill attaches to her response as Exhibit B relies on the same insurance coverage dispute line of cases.

bifurcation a less useful tool than it might be in other contexts (such as this one). *Balzer v. American Family Ins. Co.*, No. 2:08-cv-241, 2009 WL 1543524, at \*2 (N.D. Ind. June 2, 2009). Other cases Mrs. Hill relies on also spring from facts that differ greatly from the case at hand, and one of her anti-bifurcation cases does not even involve a trial by jury.[4]

This personal injury case within the multi-district litigation process is vastly different than the cases Mrs. Hill cites.  In cases structurally similar to this one (involving numerous plaintiffs or a representative plaintiff claiming an injury against a corporate defendant—let alone three corporate defendants as is the case here—courts regularly bifurcate the punitive damages phase.  For example, in *Scheufler v. General Host Corp.*, involving a pollution claim by a group of landowners against the owner of a salt plant, the court carefully considered and discussed at length the option of bifurcating the punitive damages phase before concluding that bifurcation of punitive damages would be conducive to judicial economy and efficiency, would reduce confusion, and would prevent possible prejudice to the defendant.  895 F. Supp. 1411, 1413-14 (D. Kan. 1995).  In the case Mrs. Hill cites with the most similar factual pattern (a class action by consumers of diet drugs against a pharmaceutical company), the court of appeals actually suggests that the district court consider a bifurcated trial.  *In re Diet Drugs Products Liab. Litigation*, 369 F.3d 293, 318 (3d Cir. 2004); *see also In re Bendectin Litigation*, 857 F.2d 290, 314-16 (6th Cir. 1988) (upholding trifurcated products liability trial against drug manufacturer); *In re Actos (Pioglitazone) Products Liability Litigation*, 2014 WL 5461859 at \*1 n.6 (W.D. La. October 27, 2014) (bifurcating MDL bellwether case).

---

[4] For example, *Challenge Aspen v. King World Productions Corp.*, 2001 WL 1403001 (N.D. Ill. 2001), is a contract dispute over charity auction items; *Keyes Fibre Company v. Packaging Corp. of America*, 763 F. Supp. 374 (N.D. Ill. 1991), involved the bench trial of a patent infringement case, and *Trading Techs. Int'l., Inc. v. eSpeed, Inc.*, 413 F. Supp. 2d 883 (N.D. Ill. 2007) aff'd, 595 F.3d 1340 (Fed. Cir. 2010), is also a patent infringement case.

Support for bifurcation of punitive damages extends beyond case law.  Strong public policy reasons support bifurcation of punitive damages in tort cases, as evidenced by the 14 states that have passed legislation explicitly providing for such bifurcation.  Ohio, for example, has a statute that makes bifurcation mandatory on the motion of any party in a tort action tried to a jury, if the plaintiff has made a claim for compensatory damages and a claim for punitive damages.  *See* Ohio Rev. Code Ann. Sec. 2315.21(B)(1).  The Cook Defendants' proposal to bifurcate punitive damages from compensatory damages is hardly "novel."

**II.     Bifurcation serves the interest of judicial economy.**

> **A.  The evidence relevant to liability for compensatory damages does not overlap with the evidence relevant to punitive damages.**

Mrs. Hill attempts to create an evidentiary overlap where none exists.  In her response, Mrs. Hill asserts that the Cook Defendants "misstate[] the claims that are at issue in the compensatory phase," insisting that Mrs. Hill has a negligence claim concerning "whether Cook's conduct was reasonably careful."  Plaintiff's Response Br. at 2.  As Cook more fully addressed in the Cook Defendants' Reply in Support of Motion for Summary Judgement, the law does not permit Mrs. Hill to pursue a "general negligence" claim in a products case, and her only remaining substantive claims are strict liability design defect and negligent failure to warn.[5]

Mrs. Hill seems to see her "general negligence" claim as encompassing every action by the Cook Defendants with which she finds fault.  Her opposition to bifurcation of punitive damages is largely premised on the purported overlap between the evidence she suggests would support her non-existent "general negligence" claim and the evidence that would support the imposition of punitive damages.  *See* Plaintiff's Response at 4-6.  But Mrs. Hill cannot manufacture an overlap of evidence by pursuing a claim unrecognized by Florida law.  *See* Cook

---

[5] As noted in the Reply in Support of Motion for Summary Judgment, Mrs. Hill has abandoned her strict liability failure to warn claim.

4

Defendants' Reply in Support of Motion Summary Judgment, at 2-5 (describing absence of general negligence claim in product liability context). Because a "general negligence" claim cannot stand, the purported evidentiary overlap disappears, along with Mrs. Hill's primary argument against bifurcation.

In their opening motion, the Cook Defendants identified these four categories of evidence as relevant only to punitive damages:

(1) Documents that post-date Mrs. Hill's implant date of November 17, 2010.

(2) Communications and documents relating to unrelated products.

(3) Communications and documents regarding the Cook Defendants' interactions with foreign regulatory authorities.

(4) Evidence of "subsequent remedial measures," including evidence related to the Celect Platinum.

In her response, Mrs. Hill makes certain suggestions, which rely almost entirely on her non-viable general negligence theory. None of the matters she raises indicates an overlap that prevents bifurcation because, as a preliminary matter, the Cook Defendants have moved in limine regarding all these matters, and they should be excluded. In particular, Mrs. Hill suggests the following:

(1) that a 2012 communication with the FDA regarding the Celect Platinum is evidence of negligence;[6]

---

[6] Response Br. at 7. Although non-specific, presumably Mrs. Hill is referring to the 510(k) for the Platinum. Any such evidence is inadmissible for multiple reasons, including the facts that Mrs. Hill did not receive the Platinum device and that the evidence post-dates her date of implant by two years. *See* Cook Defendants' Omnibus Motion in Limine Memorandum, ECF No. 6310, at 45-51 (motion in limine #12 regarding any testimony, evidence, or argument concerning new product designs after the development of the Celect and its IFU).

(2) that the Cook Defendants breached an obligation to report international adverse events, which was unreasonable conduct;[7]

(3) that the Cook Defendants did not share certain statistical data and conclusions with Australian authorities, which "reveals Cook's state of mind";[8] and

(4) that the existence of the Platinum re-design effort corroborates a failure to warn.[9]

Plaintiff's Response Br. at 7-9. As to the first three matters, Mrs. Hill does not suggest, much less establish, that any of these matters affects the elements of either a strict liability design defect claim or a negligent failure to warn claim, which should be the focus of the compensatory damages claims. And as to the Platinum re-design effort, the argument she is making is a classic subsequent remedial measure liability argument blocked by Rule 407 and good public policy.

The arguments in the Memorandum in Support of Omnibus Motions in Limine explain why these matters are not admissible at least as to compensatory damages, and those extensive arguments need not be repeated here. However, the Cook Defendants note that those arguments

---

[7] Response Br. at 7-8. Evidence regarding alleged failure to report adverse events is pre-empted under *Buckman*. *See* Cook Defendants' Omnibus Motion in Limine Memorandum, ECF No. 6310, at 8-12 (motion in limine #2 regarding any testimony, evidence, or argument that the Cook Defendants misrepresented information to or withheld information from the FDA or violated FDA reporting requirements related to adverse events). In addition, Florida law does not recognize a claim for "negligent reporting." *See* Reply In Support of Motion For Summary Judgment at 4 (citing *Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1329-30 (11th Cir. 2017) (applying Florida law and rejecting negligence claim based on failure to report adverse events).

[8] Response Br. at 8. There is no relevance to communications with the country of Australia. *See* Cook Defendants' Omnibus Motion in Limine Memorandum, ECF No. 6310, at 34-37 (motion in limine #10 regarding any testimony, evidence, or argument concerning regulatory communications outside the United States). Even if there were, claims based on compliance with foreign regulations or reporting to foreign countries cannot form the basis of a negligence claim under Florida law. *Mink*, 860 F.3d at 1329-30.

[9] Response Br. at 8. The Platinum design constitutes a subsequent remedial measure that post-dates Mrs. Hill's device and implantation. *See* Cook Defendants' Omnibus Motion in Limine Memorandum, ECF No. 6310, at 45-51 (motion in limine #12 regarding any testimony, evidence, or argument concerning new product designs after the development of the Celect and its IFU).

6

provide additional support for the motion to bifurcate because bifurcating punitive damages permits the Court to defer potentially difficult evidentiary decisions until necessary in a punitive phase.

Mrs. Hill relies on the fact that limiting instructions may be used regarding evidence that is relevant only to punitive damages.  Plaintiff's Response Br. at 9.  While limiting instructions certainly should be given any time evidence is admitted for a limited purpose, extensive limiting instructions have the potential to be confusing to the jury and to consume trial time.  As a practical matter, it is difficult if not impossible to determine how they would work here.  Plainly Mrs. Hill intends to rely on a slew of evidence that the Cook Defendants believe is relevant at best only to a punitive damages claim.  Mrs. Hill offers no concrete suggestions as to how and when limiting instructions would be delivered and how they could avoid prejudice to the Cook Defendants versus creating prejudice by drawing even more attention to the presentation.  If the trial can be structured in a way to avoid consuming precious trial time with distracting interruptions of multiple limiting instructions, that will serve the judicial interest of effective and efficient trial management (and avoid potential prejudice as discussed further below).

Likewise, bifurcation will not create a series of mini-trials.  Mrs. Hill suggests that bifurcation would lead to inefficiencies due to arguments over which phase various pieces of evidence may be presented in.  Plaintiff's Response Br. at 9-10.  This is a red herring.  By the time of trial, this Court will have considered and resolved the Cook Defendants' motion for summary judgment, motions in limine, and Daubert motions.  The Court's rulings on these pending motions will undoubtedly clarify what evidence may be presented for what purposes so that there is low risk of extensive debate at trial.

Taking into account the claims that Mrs. Hill may actually pursue and the lack of admissibility of certain evidence, Mrs. Hill does not and cannot substantiate her claim that there

is substantial evidentiary overlap with respect to liability for compensatory damages and punitive damages.  And even if there is some overlapping evidence, bifurcation may still be warranted to prevent unfair prejudice to the Cook Defendants as discussed further below.  *See Hall v. Babcock & Wilcox Co.,* 69 F. Supp.2d 716, 733 (W.D. Pa. 1999).

### B.  Bifurcation will potentially shorten and simplify this trial.

Bifurcation will conserve judicial resources by reserving issues until it is necessary for them to be decided.  Unless Mrs. Hill can show there was a defect in the Celect filter, there will be no need for a punitive phase at all.  This is an especially significant factor here given the wide-ranging "corporate conduct" evidence Mrs. Hill evidently wants to present to support her punitive damages claim.  The potential scope of evidence in this case has caused both sides to identify 30 or more witnesses.  Undoubtedly, some of these witnesses on both sides are necessary only with respect to the presentation of evidence (and rebuttal evidence) relevant to punitive damages.[10]

Contrary to Mrs. Hill's suggestion that likelihood of success is not a factor considered by courts in evaluating bifurcation motions (Plaintiff's Response Br. at 10), the likelihood that substantial evidence might not need to be presented is an important factor for courts deciding whether to bifurcate punitive damages.  *See, e.g.*, *Scheufler*, 895 F. Supp. at 1414 ("The jury

---

[10] Indeed, counsel for Mrs. Hill has characterized one of her witnesses, Robert Johnson, Ph.D., as relevant only to punitive damages.  Notably, counsel for Mrs. Hill previously represented that Dr. Johnson would not testify, and now, in a change of direction, represents that he may testify. The Cook Defendants will move to strike based on Mrs. Hill's prior representation and the unfair prejudice created by her effort to add him to the case at this late date.  But, in the event the Court allows his testimony, the interests of efficient case management call for a bifurcated phase where witnesses such as Dr. Johnson (who will only testify as to punitive damages) are reserved unless and until necessary.  Cook undoubtedly will be required to counter-designate a Cook witness to oppose whatever (as of yet undisclosed) testimony Dr. Johnson may offer.

US.114219646.05

would not need to consider these issues if actual damages are not awarded, which would save trial time and the expense of putting on the additional evidence.").

Because the Cook Defendants propose that the question of punitive damages be presented to the same jury in the event of (1) a finding of liability for compensatory damages, and (2) the Court's conclusion that the issue of punitive damages should go to the jury, there will be no need to repeat evidence the jury has already heard. As a practical matter, nothing more than a brief pause is required between the two phases. So even if Mrs. Hill prevails on compensatory damages and the legal question of whether punitive damages should be submitted to the jury, bifurcation would not meaningfully extend the trial.

### C. The conflict of law analysis for punitive damages makes bifurcation a sensible approach.

In her opposition to the motion to bifurcate, Mrs. Hill gave a cursory response to the choice of law analysis. Plaintiff's Response Br. at 10-11. Her argument is unpersuasive because the Cook Defendants have not argued that the conflict of law issue *necessitates* bifurcation but rather that bifurcation is a tool the Court can use to simplify judicial decision-making, avoid confusing jury instructions, and preserve appellate review of the choice of law issue. The parties plainly dispute the proper law to apply to the punitive damages claim, and the resolution of that issue has consequences (creating a true conflict of laws).[11] Bifurcating the trial as the Cook Defendants propose best preserves for appellate review the choice of either Indiana or Florida law for the punitive damages claim. A sister court in the Seventh Circuit has already recognized and suggested that very approach. *See Smith v. I-Flow Corp.*, 753 F. Supp. 2d 744, 749 (N.D. Ill. 2010) (suggesting that bifurcation be employed due to the choice of law analysis on the punitive damages claim). Cleanly preserving the issue for appellate review is surely in both parties'

---

[11] Indiana and Florida have different punitive damages standards, caps, and directions as to payment. *Compare* Ind. Code § 34-51-3-1 *et seq. with* Fla. Stat. §§ 768.72 through 768.73.

interest.  And if the Court bifurcates the punitive damages phase, it could even opt to defer resolving the choice of law issue until and unless there is a determination that the issue of punitive damages can and should go to the jury.

On the merits of the choice of law question, Mrs. Hill's argument is equally unavailing. Her substantive response to the choice of law analysis is found in her summary judgment response, where she devotes eleven pages to the issue.  Cook Defendants' Memo. in Support of Motion To Bifurcate, ECF No. 5861, at 23-33.  Nowhere in those eleven pages does she confront the fact that the vast majority of courts analyzing similar claims (product defect and failure to warn) have concluded that the law of the home state of the corporate defendant is the proper law to apply to a punitive damages claim brought in a forum states (like Florida) that follows the "significant relationship" approach in the Restatement (Second) of Conflict of Laws.[12]  While Mrs. Hill cites a number of Florida cases, only one of her cases concerns a choice of law analysis for a punitive damages claim, and that case invokes a different analysis, adopting the law of the

---

[12] *See, e.g.*, *Campbell v. Fawber*, 975 F. Supp. 2d 485, 508 (M.D. Penn. 2013) (home state of corporate defendant had dominant interest on question of punitive damages); *Guenther v. Novartis Pharm. Corp.*, 2013 WL 1225391, at *2 (M.D. Fla. Mar. 27, 2013); (same); *Curtis v. TransCor Am.*, LLC, 2012 WL 1080116, at *11 (N.D. Ill. 2012) (applying law of the home state of the corporate defendant although not all injury-causing conduct occurred there); *Smith v. I-Flow Corp.*, 753 F. Supp. 2d 744, 749 (N.D. Ill. 2010) (home state of corporate defendant had dominant interest on question of punitive damages); *see also Dopson-Troutt v. Novartis Pharm. Corp.*, 2103 WL 3808205 (M.D. Fla. Jul. 22, 2013); *Williams v. Novartis Pharm. Corp.*, Nos. 3:12-cv-145, 3:12-cv-238, 2014 WL 1599547, at *5-6 (S.D. Ohio Apr. 21, 2014) (rejecting contrary analysis in *Rowland v. Novartis Pharm. Corp.*, 2013 WL 6145119 (W.D. Pa. Nov. 22, 2013)); *Mathews v. Novartis Pharm. Corp.*, No. 3:12-cv-00314-WHR, slip op. at 6-7 (S.D. Ohio July 12, 2013); *Stromenger v. Novartis Pharm. Corp.*, No. 3:12-cv-00686, 2013 WL 1748357, at *8-10 (D. Or. Apr. 22, 2013); *Zimmerman v. Novartis Pharm. Corp.*, 889 F. Supp. 2d 757, 762-64 (D. Md. 2012); *Brown v. Novartis Pharm. Corp.*, No. 7:08-cv-00130-FL, 2011 WL 6318987, at *4-9 (E.D.N.C. Dec. 16, 2011); *Talley v. Novartis Pharm. Corp.*, No. 08-cv-361-GCM, 2011 WL 2559974, at *4-5 (W.D.N.C. June 28, 2011); *Deutsch v. Novartis Pharm. Corp.*, 723 F. Supp. 2d 521, 523-526 (E.D.N.Y. 2010); *Irby v. Novartis Pharm. Corp.*, Nos. MID-L-1815-08, 278, 2011 WL 5835414, slip op. at 8 (N.J. Super. Ct. Nov. 18, 2011); *Meng v. Novartis Pharm. Corp.*, Nos. L7670-07MT, L-6072-08MT, 2009 WL 4623715, slip op. at 5-6 (N.J. Super. Ct. Law Div. Nov. 23, 2009).

US.114219646.05

state in which an insurance contract was agreed and issued.[13]  It bears reiterating that the Cook

Defendants' choice of law analysis pertains only to the punitive damages claim; the parties do

not dispute that under the "significant relationship" approach, Florida law applies to the

compensatory damages claims.  The choice of law analysis as to the proper law to apply to the

punitive damages claim can be and is different.

      With respect to that choice of law analysis, the parties agree on certain points which may

be helpful to the Court to illuminate.  First, the parties agree that courts must consider the

Restatement section 145 contacts in light of the general principles stated in section 6.  Cook

Defendants' Memo. in Support of Motion To Bifurcate, ECF No. 5861, at 10; Plaintiff Hill's

Opposition to Defendant's Motion for Summary Judgment, ECF No. 6161, at 24-25.  Second,

the parties also agree that the relevant contacts are with the states of Indiana and Florida.  The

plaintiff is a Florida resident allegedly injured in Florida, while the Cook Incorporated and Cook

---

[13] *See Adams v. Brannan*, 500 So. 2d 236 (Fla. 3d DCA 1986) (concluding that North Carolina
law applied and permitted coverage of punitive damages against an uninsured motorist carrier
because Florida's interest in the deterrence function of punitive damages was not compromised
by the recovery of punitive damages against an uninsured motorist carrier).  Mrs. Hill's other
Florida cases do not concern a choice of law analysis for punitive damages.  *See Bishop v. Fla.
Specialty Paint Co.*, 389 So. 2d 999 (Fla. 1980) (adopting the significant relationship test of the
Restatement (Second) of Conflicts); *Tune v. Philip Morris Inc.*, 766 So. 2d 350 (Fla. 2d DCA
2000) (no reference to punitive damages claim; conflict state had no apparent interest or stake in
claim under the Restatement factors); *Gordon v. State*, 585 So. 2d 1033 (Fla. 3d DCA 1991) (does
not concern choice of law analysis; reflecting on purpose of punitive damages statute); *Nicholson
v. Am. Fire & Cas. Ins. Co.*, 177 So. 2d 52 (Fla. 2d DCA 1965) (does not concern choice of law
analysis; concluding that automobile insurance does not cover punitive damages awards); *U.S.
Concrete Pipe Co. v. Bould*, 437 So. 2d 1061 (Fla. 1983) (does not concern choice of law
analysis; concluding that insurance company was liable for punitive damages award potentially
based on vicarious liability); *Ingram v. Pettit*, 340 So.2d 922 (Fla. 1976) (does not concern choice
of law analysis; concluding that juries may award punitive damages based on proof of
intoxication without regard to additional proof of careless driving); *Beattey v. Coll. Ctr. of
Finger Lakes Inc.*, 613 So. 2d 52 (Fla. 4th DCA 1992) (no reference to punitive damages claim;
automobile accident choice of law analysis); *Proprietors Ins. Co. v. Valsecchi*, 435 So. 2d 290
(Fla. 3d DCA 1983) (no reference to punitive damages; airplane crash choice of law analysis);
*Ryder Truck Rental, Inc. v. Rosenberger*, 699 So. 2d 713 (Fla. 3d DCA 1997) (no reference to
punitive damages claim; automobile accident choice of law analysis).

Medical are Indiana corporations with their principal place of business is Indiana.  William Cook Europe is located in Denmark.  The conduct Mrs. Hill complains of generally occurred in Indiana (or Denmark, but not in Florida).[14]  The parties further agree that the place of injury generally determines which state's laws apply, *unless* some other state has a more "significant relationship" to the particular issue.  This is where consideration must be given to the section 6 general principles, and where the parties diverge.  As previously stated, the section 6 general principles include

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(2) (1971).  Mrs. Hill discusses each of these factors but admits that (d) and (f) have less importance in the area of torts than contracts and that (a) is not an issue at all, *see* Plaintiff Hill's Opposition to Defendant's Motion for Summary Judgment, ECF No. 6161, at 28-31, 33, and so the Cook Defendants will not address these factors in the interests of simplifying this analysis.  What most courts conducting choice of law

---

[14] The corporate decision-making as to marketing and labeling generally occurred in Indiana. *See, e.g.*, Plaintiff Hill's Statement of Additional Material Facts, ECF No. 6164, ¶ 102.  Product development and testing occurred in Indiana and Denmark.  *See, e.g.*, Answer of Cook Defendants to Plaintiffs' Master Consolidated Complaint for Individual Claims, ¶ 22.  None of the decision-making, design, development, labeling, or testing as to which Mrs. Hill complains occurred in Florida.

US.114219646.05

analyses on the issue of punitive damages have focused on, and what is most likely to be instructive to this Court, is the analysis of the respective states' interests in seeing their policies applied to the determination of punitive damages and the basic policies underlying that field of law.

Contrary to Mrs. Hill's insistence that the state where the injury occurred has the predominant interest in enforcing its deterrence policy, the comment to the Restatement acknowledges that when the purpose of the rule of tort law is deterrence, the state where the conduct occurred often has the greater interest:

> [A]n important factor in determining which is the state of most significant relationship is the purpose sought to be achieved by the rule of tort law involved. If this purpose is to punish the tortfeasor and thus to deter others from following his example, there is better reason to say that the state where the conduct occurred is the state of dominant interest and that its local law should control than if the tort rule is designed primarily to compensate the victim for his injuries.

Restatement (2d) of Conflict of Laws § 145, cmt. c (1971).  This makes sense because of the deterrent purpose of a punitive damages award.  A punitive damages award is not designed to benefit a private plaintiff but rather to deter a defendant and others similarly situated from causing future harm.  Indeed, a number of Mrs. Hill's cases recognize this very circumstance.  *See* Plaintiff Hill's Opposition to Defendant's Motion for Summary Judgment, ECF No. 6161, at 27-28 (Florida cases cited therein).  Accordingly, most courts, including the Middle and Northern Districts of Florida, have concluded that the state where the alleged misconduct occurred, i.e., the home state of the corporate defendant where marketing and labeling decisions are made, has a greater interest in that deterrent function than the state where injury occurred, especially given that the plaintiff's injuries are addressed and satisfied through the availability of compensatory damages.  *See e.g.*, *Kirchman v. Novartis Pharm. Corp.*, 2014 WL 2722483, at *1 (M.D. Fla. June 16, 2014); *Krause v. Novartis Pharm. Corps.*, 926 F. Supp. 2d 1306, 1311 (N.D.

US.114219646.05

Fla. 2013); *see also supra* footnote 12.  The Cook Defendants note that Mrs. Hill claims that some of the injury-causing conduct occurred in Florida—in the form of a sales representative conducting seminars attended by her doctor—but a manufacturer's duty to warn is in the label, and labeling decisions were made in Indiana.  Nor is there any duty to train recognized by Florida law.  *See Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1329-30 (11th Cir. 2017) (rejecting failure to train under the learned intermediary doctrine).

Mrs. Hill criticizes the Cook Defendants' citation to and reliance on *Kirchman v. Novartis*, 2014 WL 22722483 (M.D. Fla. 2014), but aside from a cursory citation to the 8th Circuit decision in *Winter v. Novartis Pharmaceuticals Corp.*, 739 F.3d 405, 410 (8th Cir. 2014), she offers no contrary authority.[15]  The reasoning of *Kirchman* and *Krause* (and the other cases cited in footnote 12) is sound.  As the court in *Krause* explained:

> Other courts that have applied the Restatement (Second) Conflict of Laws analysis in similar circumstances have chosen to apply the punitive damages law of the state in which the tortfeasor's alleged wrongful conduct occurred as having the most significant relationship. *See e.g.*, *Chiles v. Novartis Pharmaceuticals Corp.*, 923 F.Supp.2d 1330, 3:06–cv–96–J–32–JBT, ECF No. 190, 2013 WL 539891 (M.D.Fla. February 7, 2013), *Brown*, 2012 WL 3066588, at *8; *Talley v. Novartis Pharmaceuticals Corp.*, 3:08–cv–361–GCM, 2011 WL 2559974, *4 (W.D.N.C. June 28, 2011) ("The basic policy underlying punitive damages is to punish and deter the Defendant, whose conduct occurred in New Jersey, thus the interests of the tort field are enhanced through consistent application of New Jersey law."). The court finds the reasoning articulated in these cases to be sound. Moreover, it is consistent with commentary of the Restatement, which instructs, "when the primary purpose of the tort rule involved is to deter or punish misconduct, the place where the conduct occurred has peculiar significance." Restatement (Second) Conflict of Laws § 145, cmt. e.

*Krause v. Novartis Pharm. Corps.*, 926 F. Supp. 2d at 1311.  *Krause*, *Kirchman*, and the cases cited in footnote 12 should be most instructive to this Court, particularly given this Court's need to apply the law of the forum state on choice of law issues.

---

[15] The contrary decision in *Winter* rests on the conclusion that some of the injury-causing conduct occurred in the state of injury.  739 F.3d at 410.

US.114219646.05

Finally, the Cook Defendants note that Mrs. Hill's citation and discussion of § 163 of the Restatement (Second) of the Conflict of Laws is confusing if not misleading.  Section 163 does *not* "address the situation here" as Mrs. Hill claims, Cook Defendants' Memo. in Support of Motion To Bifurcate, ECF No. 5861, at 26, but rather pertains to the conflict analysis in situations where conduct is privileged (or required) in one state but not in another and a decision must be made as to which state's law to apply.  A sample illustration to § 163 is included in the footnote to this sentence, indicating the type of situation for which Restatement § 163 would be relevant.[16]  Mrs. Hill acknowledges in her discussion of § 163 that "Cook does not claim that Indiana law 'required' or compelled its misconduct," so it is entirely unclear why Mrs. Hill is discussing § 163 and why she faults the citation of cases that do not concern § 163.  *See* Plaintiff Hill's Opposition to Defendant's Motion for Summary Judgment, ECF No. 6161, at 24, 26.  Section 163 of the Restatement (Second) of the Conflict of Laws simply has no application to this case.  For the sake of absolute clarity, the Cook Defendants have never claimed any state law privilege or defense.  The Cook Defendants' position is that none of the complained-of conduct constitutes malice, fraud, gross negligence, or oppressiveness.

---

[16] The Restatement § 163 includes the following illustration:

> By the local law of state X, a person, when attacked, may lawfully stand his ground and defend himself by killing if necessary. By the local law of state Y, he must retire without killing if it is safe to do so. A, in X, is attacked by B with apparent intent to kill. A reasonably believes that the only way he can save his life without retiring is to shoot B. A stands his ground and shoots at B while exercising reasonable care to avoid hitting third persons. Nevertheless, A misses B and hits C in state Y. C could recover against A for his injuries under Y local law but not under the local law of X. C brings suit against A in a court of state Z. For reasons stated in Comment a, the interests of both X and Y would be furthered by application of their respective local law rules. The Z court should apply the Y rule and render judgment for C unless it finds that the policy underlying the X rule of privilege is particularly strong.

Restatement (Second) of Conflict of Laws § 163 (1971).

US.114219646.05

For all these reasons, the Cook Defendants maintain that Indiana law applies to Mrs. Hill's punitive damages claim.  If the Court grants the motion to bifurcate, it can defer resolving the issue unless and until necessary, but bifurcation is prudent in any event because it will simplify jury instructions and best preserve the disputed issue for appellate review.

**III.    Bifurcation protects the Cook Defendants from undue prejudice and does not prejudice Mrs. Hill.**

Mrs. Hill's suggestion of a single-phase trial, in which all claims are tried together, will unfairly prejudice the Cook Defendants and jeopardize the stability of a jury verdict for Mrs. Hill.

Mrs. Hill suggests that undue prejudice to the Cook Defendants can be cured by limiting instructions.  Plaintiff's Response Br. at 12.  But the Court need not risk undue prejudice when a procedural tool is available that eliminates the likelihood of unfair prejudice and likely enhances juror understanding and judicial economy.  The *Vandersteen* court addressed this exact problem in granting the defendant's motion for bifurcation:

> To be sure, the Court could instruct the jury to consider evidence of drug use by Mr. Kelly only as to the punitive damages claim, and we presume the jury would endeavor to follow that instruction. But, we see no reason to take the risk that a jury might fail to do so, if the cost to judicial efficiency from bifurcation is minimal.

*Vandersteen,* 2010 WL 659327, at *2.  Mrs. Hill's claims that she will be prejudiced by bifurcation are premised on her contention that there is a significant overlap in the evidence, which there is not, as discussed above.  Mrs. Hill does not explain in any detail her assertion that her expert witnesses would need to be recalled, and she has not substantiated her suggestion that would involve "enormous expense in money and time."  *See* Plaintiff's Response Br. at 16.

A two-phase trial can be handled in a way to minimize any prejudice to Mrs. Hill, but the reverse is not true:  a single-phase trial could lead to unfair prejudice to the Cook Defendants so

US.114219646.05

significant as to require a new trial. *See Hall*, 69 F. Supp.2d at 733. In *Hall*, a case in which plaintiffs sued a nuclear facility for causing their cancers, after the first (single-phase) trial resulted in a jury verdict for the plaintiffs, the court granted defendants' motion for a new trial in order to hold separate trials for compensatory and punitive damages, *even though separate trials would inconvenience plaintiffs and require witnesses to be called twice*. *Id.* The court concluded that the plaintiffs' inconvenience was outweighed by the prejudice suffered by the defendants if the evidence related to punitive damages was included in the liability and compensatory damages phase. *Id.*

Bifurcation will further protect information about the Cook Defendants' financial capacity— information the Court has already held to be highly confidential—until it is necessary for the jury to consider it. *See Ely v. Cabot Oil & Gas Corp.*, No. 3:09-CV-2284, 2016 WL 454817 (M.D. Pa. Feb. 5, 2016), at *6 (sequencing environmental damage trial so that evidence of defendant's finances introduced only when ripe for the jury's consideration). To support her argument against bifurcation, Mrs. Hill quotes a passage from the Court's earlier bifurcation ruling noting that the Cook Defendants' financial information could relate to liability for punitive damages. Plaintiff's Response Br. at 13-14. In no way did the Court imply that the Cook Defendants' financial capacity related to liability on the underlying claims or the amount of compensatory damages.[17] *Id.* In fact, the Court's earlier ruling supports the Cook Defendants' proposal of bifurcating all issues related to punitive damages, as opposed to leaving the issue of

---

[17] The *In re Diet Drugs* court went further, specifically acknowledging that "evidence relating to [defendant's] size, profits, and sales figures, which is not probative of liability, causation, or compensation" was correctly barred by the terms of a settlement agreement prohibiting punitive damages. 369 F.3d at 312. Mrs. Hill incorrectly cites this case for the opposite proposition. *See* Plaintiff's Response Br. at 13 ("Federal courts have recognized the relevance of such information in making liability determinations[.]").

US.114219646.05

liability for punitive damages in the same phase as the issue of liability for compensatory damages.

Bifurcation will also help the jury understand the evidence and avoid inconsistent verdicts.  While juries can certainly understand complex evidence and follow jury instructions, there is no reason to make the jury's task more difficult than necessary when the Court can structure the trial to help the jury and will minimize the risk of inconsistent verdicts (e.g., the jury finding no defect in the Celect, but still awarding punitive damages).  The jury in a Florida products-liability case, *Consolidated Aluminum Corporation v. Braun*, 447 So.2d 391 (Fla. Dist. Ct. App. 1984), made just such an error.  It found the defendant ladder manufacturer negligent in causing the plaintiff's injury, while at the same time finding no defect in the defendant's ladder. *Id.* at 392.  The reviewing court found this impossible—because the defendant could not have been negligent if the product contained no defect—and reversed and remanded.  *Id.*  Bifurcating the trial so that the issue of punitive damages is only submitted to the jury once the jury has found Mrs. Hill entitled to compensatory damages prevents the risk of such an inconsistency.

Finally, Mrs. Hill's response to the Cook Defendants' due process argument misses the point.  The Cook Defendants are not arguing that the Fourteenth Amendment's Due Process Clause implicates the actions of a private party, but that under *Connecticut v. Doehr*, 501 U.S. 1 (1991), proceeding with a single-phase trial when bifurcation is an option exposes the Cook Defendants to an unconstitutional level of risk of erroneous deprivation of their property.  The Court need not face this risk given that bifurcation is a sensible and prudent case management tool for this case.

US.114219646.05

IV.     **At minimum, the amount of punitive damages should be bifurcated, along with financial evidence.**

At the end of her response, Mrs. Hill recognizes that bifurcation of the *amount* of punitive damages may be appropriate.  Plaintiff's Response Br. at 17.  Certainly, at minimum, the trial should be bifurcated for separate consideration of the amount of punitive damages.  If the Court elects to bifurcate the trial in this way, evidence of the Cook Defendants' financial capacity should only be introduced in the bifurcated second stage.  There is no purpose other than punitive damages for which such information could be relevant, and as discussed, it would be unduly prejudicial to allow such evidence to be presented earlier.  Mrs. Hill virtually acknowledges as much:  "The Court can control the timing of the financial evidence offered so that no evidence of net worth is admitted unless and until the judge concludes that sufficient evidence has been presented to create a possibility of a punitive damage award."  Plaintiff's Response Br. at 15.  Confidential financial information should not be presented before a liability verdict and a determination of compensatory damages.

The Cook Defendants maintain, however, their primary position that the most fair and sensible trial structure for this case is to bifurcate the entire punitive damages phase and all associated evidence relevant to the question of liability for punitive damages, not just the question of the amount of punitive damages.  In addition to all the reasons discussed, bifurcation is particularly important for this bellwether case so that the parties may discern how the jury views issues common to all cases, rather than mixed with an individual plaintiff's facts and circumstances.

US.114219646.05

## V.      Conclusion

For all the foregoing reasons, the Cook Defendants respectfully ask the Court to bifurcate the questions of liability for and amount of punitive damages from the question of compensatory damages as set forth in the motion to bifurcate.

Dated: September 22, 2017                    Respectfully submitted,

                                             /s/ Andrea Roberts Pierson
                                             Andrea Roberts Pierson, Co-Lead Counsel
                                             John T. Schlafer
                                             FAEGRE BAKER DANIELS LLP
                                             300 North Meridian Street, Suite 2700
                                             Indianapolis, Indiana  46204
                                             Telephone:          (317) 237-0300
                                             Facsimile:          (317) 237-1000
                                             andrea.pierson@faegrebd.com
                                             john.schlafer@faegrebd.com

                                             James Stephen Bennett, Co-Lead Counsel
                                             FAEGRE BAKER DANIELS LLP
                                             110 W. Berry Street, Suite 2400
                                             Fort Wayne, Indiana  46802
                                             Telephone:          (260) 424-8000
                                             Facsimile:          (260) 460-1700
                                             stephen.bennett@faegrebd.com

                                             *Attorneys for Defendants Cook Incorporated, Cook Medical LLC f/k/a Cook Medical Incorporated, William Cook Europe APS*

US.114219646.05

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 22, 2017, a copy of the foregoing was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.  Lead Co-Counsel for Defendants will serve any non-CM/ECF registered parties.


    /s/ Andrea Roberts Pierson      

US.114219646.05