**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND            Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION             MDL No. 2570
_____

This Document Relates to the Following Actions only:

    Elizabeth Jane Hill
    No. 1:14-cv-06016-RLY-TAB
_____

### THE COOK DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE SURGICAL CONSENT FORMS

    Defendants Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS (collectively, the "Cook Defendants" or "Cook") urge the Court to deny Plaintiff's Motion In Limine To Exclude Surgical Consent Forms [Dkt. 6293].

    Although Plaintiff's motion asks the Court to exclude three consent forms that she signed before various procedures,[1] the motion offers only fragments of the forms themselves and never presents the Court with the full content and context of the consent forms and what they actually *say*.  In the two Informed Consent forms central to Plaintiff's motion (Exhibits A and C), Plaintiff stated:

### INFORMED CONSENT

    I [Elizabeth Hill] voluntarily consent to allow Dr/Drs. [Zuzga] or his/her associates to perform the following procedure(s) referred to as:

### IVC FILTER

The risks have been fully explained to me. I understand that these risks may include but are not limited to:

_____

[1]   Although Plaintiff's motion states that the first two consent forms she seeks to exclude are dated November 11, 2010, Pl. Mt. at 1, Exhibits A and B to her motion show that she actually gave the consents on November ___*17*, 2010.

- Contrast reaction
- Pain, infection, bleeding
- Injury to vessel or nerve (including perforation)
- Hematoma (large bruise)
- Stroke
- Pulmonary embolus (clot in lung)
- Filter Migration
- Heart Arrthythmia
- JVC thrombosis resulting in leg swelling
- Other

The risks of sedation/anesthesia have been fully explained to me and include but are not limited to respiratory problems, paralysis, brain damage, drug reaction or possibly death.

The alternatives to this procedure have been explained and include surgery, medical management and observation. My doctor has discussed with me the possible problems with recovery and outcomes I may or may not expect as a result of the procedure.

The benefits of this procedure have been fully explained. I understand that no results can be guaranteed or assured.  The goal of this procedure is to significantly reduce your risk of pulmonary embolus.

If something unexpected happens to me during the procedure calling for additional procedures or treatments, I consent to allow my doctor to do what he/she believes necessary.

I acknowledge that I have read and fully understand this consent form and that all my questions have been answered to my satisfaction.

/s/ [Elizabeth J. Hill]

Pl. Exs. A & C; *see also* Ex. B (third consent with discussion of risks).

A.     **The consent forms are relevant to Plaintiff's express assumption of risk.**

The Court should deny Plaintiff's motion to exclude her consent forms because those forms are relevant evidence of her express assumption of the risks inherent in the placement of the Celect IVC filter, including the risk of perforation.  Plaintiff's motion mistakenly asserts that "Cook has argued to this Court that by signing these three forms…, Mrs. Hill consented to a

- 2 -

post-implant perforation into her duodenum," and that "Cook will questionably say the same to the jury if permitted."  Pl. mtn. at 1-2.  This assertion is simply wrong.  Of course, no one in Plaintiff's situation would consent to an *actual* post-implant injury that was not a necessary part of treatment, like a perforation, and Cook does not suggest otherwise.  What Plaintiff Hill did, and what makes her consent forms relevant and admissible, was acknowledge the *risks* of perforation and other complications inherent in the IVC filter and agree to *accept those risks* in light of the potential benefits that the filter could provide.

Under Florida law, express assumption of risk is a defense against a tort claim.  *See Acosta v. United Rentals North Am., Inc.*, 2013 U.S. Dist. LEXIS 31392, 15-16 (M.D. Fla. Mar. 7, 2013) (citing *Kendrick v. Ed's Beach Serv., Inc.*, 577 So. 2d 936, 937 (Fla. 1991) and *Blackburn*, 348 So. 2d at 292); *Kuehner v. Green*, 436 So. 2d 78, 79 (Fla. 1983) (holding that Florida law recognizes the defense of express assumption of risk in "situations in which actual consent exists," quoting *Blackburn*).  The issue of whether a plaintiff expressly assumed a risk is for the jury:  "It is the jury's function to determine whether a participant…'actually consented' to confront certain dangers."  *Kuehner v. Green*, 436 So. 2d 78, 80 (Fla. 1983); *see also Black v. District Bd. of Trustees*, 491 So. 2d 303, 306 (Fla. Dist. Ct. App. 1986) ("we find no error by the trial court in submitting the issue of [express] assumption of risk to the jury").

Here, the three forms in which Plaintiff consented to the risks of her doctor's placement of the IVC filter are relevant to the jury question of whether Plaintiff consented to the risks of her doctor's placement of the IVC filter placement.  The conclusion is virtually axiomatic:  A = A.

US.114221203

Moreover, in two of the three forms, Plaintiff expressly acknowledges and consents to the risk of IVC perforation, the *very complication* Plaintiff claims is the source of her injuries here.[2]

Plaintiff does not dispute that the consent forms constitute evidence of her consent, or that they would be relevant to the defense of express assumption of risk.  Instead, Plaintiff argues that the consent form relates *only* to the IVC filter placement *procedure*, and not to the IVC filter that was the whole purpose of the procedure.  Plaintiff's argument makes no sense based on the language and context of the consent forms, it has no support either in law or in fact, and the Court should reject it.

First, the distinction Plaintiff proposes is illogical in the context of the consent forms themselves.  Although Plaintiff's argument correctly notes that the consent forms use the word "procedure" frequently, Plaintiff offers nothing but *ipse dixit* for her assertion that this use means that the forms intend a distinction between the placement procedure and the product the procedure places, and a closer look compels rejection of this argument.[3]  As Plaintiff notes, the consent form states that "The goal of this procedure is to significantly reduce your risk of pulmonary embolus."  But it is undisputed that the IVC filter *procedure* itself does nothing to

---

[2]  Although Plaintiff asserts in her introduction that she could not have assumed the risks of the "unreasonably dangerous" Celect IVC filter because she did not know it was unreasonably dangerous, Pl. Mtn. at 2-3, she never develops or offers any legal support for the argument  In any event, Cook maintains that Plaintiff's Celect IVC filter was ***not*** unreasonably dangerous, and that Plaintiff unfortunately experienced one of the known and inherent risks of IVC filters about which Cook warned and to which Plaintiff consented.  This is of course a classic jury question, and Plaintiff's disagreement with Cook's position does not justify keeping the evidence that supports Cook's position from the jury.

[3]  Plaintiff erroneously asserts that "Even Mrs. Hill's implanting physician testifies that these forms can be used for multiple different types of procedures."  Pl. Mtn. at 6 (citing Ex. F at 201:13-16).  In the passage that Plaintiff cites, Dr. Zuzga expressly restricts his comments about using a form for other procedures to a single consent form that Plaintiff signed on November 17, 2010 (labeled as Exh. 37 to the deposition and as Exh. B to Plaintiff's motion).  Dr. Zuzga was not addressing the IVC-Filter-specific consent forms (Exhs. 36 and 38 to the deposition and Exhs. A and C to Plaintiff's motion).

US.114221203

reduce the risk of pulmonary embolus; it is the presence of the *filter* in the IVC *after* the procedure that reduces the risk of PE, by catching blood clots. Similarly, Plaintiff acknowledges in the consent form that "The benefits of this procedure have been fully explained." But again, the "procedure" – viewed in isolation as Plaintiff would have it – provides no "benefits"; it is the IVC filter itself that *actually* provides the "benefits."

Even more specifically, although Plaintiff asserts that the consent forms are "expressly limited" to risks "during the *procedure*," Pl. Mtn. at 6 (emphasis in original), she ignores that her consent expressly extends to risks such as "infection" and "filter migration," complications that by their nature will occur only ***after*** the completion of the procedure. Contrary to Plaintiff's assertion, the consent forms contain no language "expressly limiting" their scope to the placement procedure and excluding the product placed.

Second, Plaintiff cites no legal authority supporting either the generally narrow view of relevance she proposes or the specific line she proposes to draw between consent to the risks of a procedure and consent to the risks of the product involved in the procedure. Rule 401 provides a broad definition of relevance, providing that evidence is relevant if:

> (a)   it has any tendency to make a fact more or less probable than it would be without the evidence; and
> (b)   the fact is of consequence in determining the action.

Fed. R. Evid. 401. This is an intentionally broad definition that favors relevance and the admissibility of evidence. *United States v. Lynn,* 851 F.3d 786, 794 (7th Cir., 2017) (noting "[t]his broad language favoring relevance" in Rules 401 and 402). Evidence need not be conclusive in order to be relevant and admissible; it need only increase or decrease the likelihood that a material fact is true. *See, e.g., Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 927 (2d Cir. 1977). Nothing in this broad definition of relevance supports the fine

US.114221203

distinction that Plaintiff tries to draw here, trying to separate a medical procedure from the medical device without which the procedure would not exist.  Plaintiff is essentially asking the Court to separate two sides of the same coin, but she offers no case law or other legal support for such an approach.

Finally, Plaintiff offers no factual support for her proposed interpretation of the consent forms as covering only the IVC filter placement and not the IVC filter actually placed.  Despite deposing her treating physician Dr. Zuzga twice, Plaintiff can cite nothing in his testimony suggesting that he or any other medical professional agrees with her narrow reading of the consent forms.  On the contrary, Dr. Zuzga made clear that when he discussed the risks with Plaintiff, he addressed both the risks of the procedure itself and the long-term risks of the filter:

> Q.    [reading from letter from Dr. Zuzga to Dr. Moreno]  "Risks and benefits were discussed with Elizabeth, including bleeding, thrombosis and need for secondary procedure."
> Correct?
> A.    Yes.
> Q.    So the risks that you discussed with Mrs. Hill at that point in time were risks attendant to the procedure, like bleeding or bruising or that type of thing?
> ****
> THE WITNESS:  That line actually means risks and benefits meaning bleeding during with – the procedure, thrombosis of the cava, which filters can cause, and need for secondary procedures.  *That line covers pretty much putting the filter in and long-term complications of filters in and of themselves.*

Pl. Ex. E, Zuzga Dep. Vol I at 75:6-22 (emphasis added).

Although Plaintiff quotes Dr. Zuzga's testimony at some length, *see* Pl. Mtn. at 7-9, her discussion misses the point.  As Plaintiff notes, Dr. Zuzga testified that he did not expect Plaintiff's filter to perforate the IVC wall, and he was surprised to learn that it had done so.  *See id.* (citing Zuzga Dep. at 62:15-17 (Pl. Ex. E), 20:25-21:9; 25:20-26:1 (Pl. Ex. F)).  But this testimony has nothing to do with the **_risk_** of complications, and the **_risk_** is what Plaintiff consented to.  If a complication has a one-in-a-hundred risk of occurring, a doctor will not expect

the complication to occur in any particular patient, and will be surprised if it does.  But that does not mean that the doctor did not (1) know of the 1/100 risk, (2) discuss the  risk with the patient, and (3) obtain the patient's consent to the small risk in light of the potential benefit of the medical device – which is exactly what Plaintiff agrees in the consent forms occurred here.  *See* Ex. 1, Zuzga Dep. Vol. II at 224:21-225:13 ("[Y]ou had no expectation that Mrs. Hill's filter would perforate her duodenum following your retrieval attempt, it's accurate to say that you had no expectation, but you always knew it was a risk?  A. Correct.").[4]  Both doctor and patient agreed that the risk was justified by the potential benefit to Plaintiff – indeed, Dr. Zuzga testified that even knowing all he knows today about Plaintiff's unfortunate complications, he still believes the potential benefits outweighed the potential risks, Ex. 1, Zuzga Dep. Vol. 2 at 226:1-15, and he would not change how he treated Plaintiff, *id.* at 181:9-13.   Nothing in Dr. Zuzga's testimony support dividing the risk of the placement procedure from risks of the product that was the subject of that procedure.

Plaintiff's own testimony about her consent forms does not even support her present argument.  Although Plaintiff now claims that her consent forms applied only to the IVC filter procedure and not to the IVC filter necessary for that procedure, when Cook asked Plaintiff about the consent forms at her deposition, she did not claim that she had understood the forms to make any such distinction between procedure and device, notwithstanding her own acknowledged history as a "health care professional" who "work[ed] with patients all the time to sign things like informed consents."   Ex. 2, Deposition of Elizabeth Hill at 106:23-108:21, 247:3-13.  Instead, Plaintiff tried to undermine the consent forms by stating that she signed one

---

[4]   *See also* Ex. 1, Zuzga Dep. Vol. 2 at 113:8-114:8 (testifying that the risk of perforation was well known); *id.* at 142:10-143:5 (noting he understood the risk of perforation included the specific risk that the filter could perforate the small intestine); *id.* at 129:1-130:4; 133:13-18; 137:12-18 (noting Ms. Hill was specifically warned of the risk of perforation).

form while on a gurney, without her reading glasses, and while under medication.[5]  If Plaintiff

wishes now to shift ground and testify at trial that she understood the consent form to imply

some difference between the IVC filter procedure and the IVC filter that is the subject of the

procedure, she is of course free to do so and take her chances that the jury will believe her.  But

her claimed eleventh hour discovery of what the consent forms meant to her seven years ago is

not a ground for excluding the consent forms themselves, which support an entirely different

conclusion.

The Court stated at the September 25, 2017 hearing on the parties' motions for summary

judgment that a genuine issue of material fact exists on the issue of express assumption of the

risk.  The consent forms are relevant to whether Plaintiff expressly assumed the risks inherent in

the use of an IVC filter, Fed. R. Evid. 401, 402, and the Court should deny Plaintiff's motion on

that ground.

> **B.**     **The consent forms are relevant to the "consumer expectations" standard that Plaintiff claims governs her design defect claim.**

The Court should deny Plaintiff's motion to exclude her consent forms because the forms

are relevant evidence of "consumer expectations."   Plaintiff argues in her response to Cook's

motion for summary judgment that the jury must evaluate her design claims based on the

"consumer expectations" test.  *See* Dkt. 6161 at 18-20.  Cook disagrees with Plaintiff's position

that the "consumer expectations" standard applies,[6] but this is nevertheless Plaintiff's position,

---

[5]   In fact, hospital personnel attest that under the hospital's procedures, Plaintiff would not and
     could not have signed the consent form under such conditions.  *See* Declaration of Coleen
     Gillan.
[6]   As detailed in Cook original memorandum in support of its motion for summary judgment
     [Dkt. 5753] and Cook's reply in support of that motion [Dkt. 6510], Florida applies the risk-
     benefit standard to medical device claims like Plaintiff's rather than the consumer expectation
     standard.

and the Court must review Plaintiff's argument on the admissibility of evidence based on her position on the legal standard she much meet to prove her case.

In this context, Plaintiff's consent forms are relevant to the risks that both "an ordinary consumer" and Plaintiff herself would have expected from the Celect IVC filter.   Using Plaintiff's treating physicians as a conduit – as contemplated by Florida's learned intermediary doctrine – the consent forms informed the expectations of patients (including Plaintiff herself) concerning IVC filters, including the fact that "no results can be guaranteed or assured" and the specific complications that might result from placement of the filter.  *See* Pl. Ex. A, B, and C. One of the grounds Plaintiff urges for denying Cook's motion for summary judgment on design defect is that "Cook has made no effort to demonstrate Ms. Hill's (or any consumer's) expectations."  The consent forms at issue here provide just such evidence:  they demonstrate what Plaintiff and other patients should and would expect from the IVC filter.  They therefore tend to make the fact of Plaintiff's expectation of the risk of these complications more likely than that fact would be without the consent forms.

Thus, under Plaintiff's own proposed "consumer expectations" standard for design defect, the consent forms would be relevant and admissible, and the Court should deny Plaintiff's motion to exclude them.  Fed. R. Evid. 401, 402.

### C.      The consent forms are relevant to Plaintiff's treating physician Dr. Zuzga's knowledge of the risk of perforation.

The consent forms are also relevant because they demonstrate Plaintiff's treating physician Dr. Zuzga's existing knowledge of the possible complications of the IVC filter at the time of and in the specific context of Plaintiff's IVC filter procedure.

Under Florida law, if a doctor who prescribes and uses a medical product is already aware of a product risk that eventually causes injury to a patient, any failure by the product

US.114221203

manufacturer to warn the doctor of that risk cannot be the cause of the patient's injury.  *See, e.g., Felix v. Hoffmann–LaRoche, Inc.,* 540 So.2d 102, 104 (Fla. 1989) (affirming summary judgment where treating doctor knew of the product's dangers, holding that "any inadequacy in the [product] warning could not have been the proximate cause of the birth defects").  Here, the consent forms that Dr. Zuzga required his patients to sign list the specific complications that Plaintiff claims to have experienced, including perforation.   These forms thus provide evidentiary support for Cook's argument that Dr. Zuzga already knew of the risk of perforation and other complications of IVC filters at the time of Plaintiff's filter placement, and that any claimed failure of Cook to warn Dr. Zuzga about those risks and complications could not have caused Plaintiff's claimed injuries.

Dr. Zuzga's preexisting knowledge is relevant to Plaintiff's claim of causation, and the consent forms make that preexisting knowledge more likely than it would be without the forms. *See* Fed. R. Evid. 401.  The consent forms are therefore relevant to Dr. Zuzga's knowledge, and the Court should on that ground deny Plaintiff's motion to exclude them.  Fed. R. Evid. 402.

### D.    Admission of the consent forms would not unfairly prejudice Plaintiff.

Plaintiff also briefly asserts the Court should exclude the consent forms under Rule 403 because the admission of the forms would cause "unfair prejudice," Pl. Mtn. at 5, 10, but she offers no analysis suggesting what prejudice would result from the admission of Plaintiff's consents or why that prejudice would be unfair. The only thing that comes close is Plaintiff's apparent belief (without citation) that Cook will argue that "that by signing these forms Mrs. Hill consented to her injuries."  Pl. Mtn. at 9.  But as noted above, Cook of course does not intend to argue any such thing.  The consent forms simply show that Plaintiff was aware of and consented to the ***risks*** inherent in IVC placement – risks that Plaintiff's own physician testifies are

- 10 -

unavoidable in any IVC filter placement – one of which unfortunately occurred in Plaintiff's case.

The only case Plaintiff cites in support of her Rule 403 argument actually affirmed the *rejection* of a Rule 403 challenge to evidence with far more damaging prejudice than anything Plaintiff suggests here:  evidence that a witness was a member of a criminal gang.  *See United States v. Hankey*, 203 F.3d 1160, 1173 (9th Cir. 2000) ("the district court did not err in admitting the 'gang' related evidence for impeachment purposes.").  Plaintiff has not demonstrated that the danger of unfair prejudice of admitting the consent forms "substantially outweigh[s]" the significant probative value of those forms on several issues, as discussed above.  The Court should deny Plaintiff's effort to exclude the consent forms under Rule 403.

Respectfully submitted,


Dated: September 26, 2017

/s/ *Andrea Pierson*
Andrea Roberts Pierson (# 18435-49)
John T. Schlafer (# 28771-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone: (317) 237-0300
Facsimile:  (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-Mail:  john.schlafer@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

- 11 -

US.114221203

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 26, 2017, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.  Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

/s/ *Andrea Pierson*

- 12 -

US.114221203