UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| In Re: COOK MEDICAL, INC., IVC | ) | |
| FILTERS MARKETING, SALES | ) | |
| PRACTICES AND PRODUCT | ) | |
| LIABILITY LITIGATION | ) | 1:14-ml-02570-RLY-TAB |
| _____ | ) | MDL No. 2570 |
| | ) | |
| This Document Relates to: | ) | |
| | ) | |
| Elizabeth Jane Hill, | ) | |
| 1:14-cv-6016-RLY-TAB | ) | |
| _____ | ) | |

**ENTRY ON THE COOK DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and

William Cook Europe APS (collectively "the Cook Defendants"), develop, manufacture,

sell, and distribute medical devices for use in medical applications throughout the United

States and the world.  The medical devices at issue in this litigation are the Cook

Defendants' Inferior Vena Cava Filters, most notably the Günther Tulip® Vena Cava

Filter and the Cook Celect® Vena Cava Filter.  These devices are used for the prevention

of pulmonary embolism by trapping blood clots as they travel through the inferior vena

cava.  The Plaintiffs in this multi-district litigation case allege that the Filters are prone

to, *inter alia*, tilt, migrate, fracture, and perforate the inferior vena cava, causing them

personal injuries.

1

This first bellwether case is brought by Plaintiff Elizabeth Jane Hill.  Her claims against the Cook Defendants include strict liability design defect, negligence, and punitive damages.  The Cook Defendants move for summary judgment on all claims.  In Plaintiff's response, she withdrew her strict liability failure to warn claim and the court, during oral argument on September 25, 2017, **GRANTED** the Cook Defendants' Motion on that claim.  This entry addresses Plaintiff's negligent failure to warn claim.

## I.      Background

Plaintiff suffers from scoliosis.  (Filing No. 5753-7, Deposition of Dr. Anthony Moreno, Vol. 2, at 21).  She was scheduled to have major back surgery on December 6, 2010.  (*Id.* at 13, 20).  Because that type of major back surgery carries with it an increased risk of the patient developing life-threatening blood clots, her spinal surgeon, Dr. Anthony Moreno, referred Plaintiff to Dr. Mark Zuzga for inferior vena cava ("IVC") filter placement.  (*Id.* at 28-30; Filing No. 5753-8, Deposition of Dr. Anthony Moreno, Vol. 1 at 10, 11, 13, 43).

Dr. Zuzga chose the Celect IVC filter that was implanted in Plaintiff on November 17, 2010, in Florida.  (Filing No. 5754-3, Deposition of Dr. Mark Zuzga at 108; Filing No. 5753-2, Operative Report).  The consent form provided to her prior to surgery expressly warned of risks including pain, infection, bleeding, and "Injury to vessel or nerve (including perforation)."  (Filing No. 5753-3, Consent Form).  Plaintiff suffered no complications at the time the Celect filter was placed.  (Operative Report).

On March 23, 2011, Dr. Zuzga attempted to remove Plaintiff's IVC filter. (Filing No. 5753-4, Operative Report). He aborted the attempt due to his "inability to snare the IVC filter." (*Id.*).

Plaintiff subsequently complained of gastrointestinal symptoms and was diagnosed with bowel inflammation suggestive of Crohn's Disease on August 12, 2013. (Filing No. 5754-1, Radiology Report). Three days later, an endoscopy determined that the Celect filter had perforated her inferior vena cava ("IVC") into her duodenum. (Filing No. 5754-2, Operative Report). Her filter was removed by Dr. Frank Lynch in Pennsylvania on August 21, 2013. (Filing No. 5753-5, Operative Report).

Plaintiff commenced this action on October 30, 2014. She claims that as a result of a defect in the design of her Celect filter and its warnings, she has suffered injuries, most notably, stenosis of her vena cava. (Zuzga Dep. at 139).

All other facts material to the disposition of this claim will be addressed *infra.*

## II.      Failure to Warn

To establish a *prima facie* case of negligent failure to warn, the plaintiff must prove: (1) that the defendant is the manufacturer or seller of the product at issue; (2) that the defendant had reason to know that its product was likely to be dangerous for its intended use and had no reason to believe that the intended user would realize its dangerous condition; (3) that the defendant nevertheless failed to exercise reasonable care to inform the user of the condition; and (4) that the defendant's alleged negligent failure to warn was the proximate cause of the plaintiff's injury. *Kaufman v. Wyeth, LLC*, No. 1:02-cv-22692, 2011 WL 10483576, at *4 (S.D. Fla. Aug. 15, 2011).

3

The Instructions for Use ("IFUs") for the Celect IVC Filter Set list, as "potential adverse events," the following:

- Damage to the vena cava

- Pulmonary embolism

- Filter embolization

- Vena cava perforation

- Vena cava occlusion or thrombosis

- Hemorrage

- Hematoma at vascular access site

- Infection at vascular access site

- Death

(Filing No. 5753-15, IFU for Cook Celect Filter Set).  It also references a clinical study (the OUS study), and reports: "No device related major adverse events (defined as hemorrhage, perforation, death, occlusion, filter fracture or significant filter migration) have occurred."  (*Id.*).  According to Plaintiff, the IFU misrepresented the results of the OUS study because the Cook Defendants knew the Celect had a propensity to perforate. (*See* Filing No. 6171-21, Expert Report of Dr. David Kessler ¶¶ 198-99).

Plaintiff argues the IFU fails to warn about *progressive* perforation, about perforation into adjoining organs, or about the *rates* of perforation for its filter.  The Cook Defendants respond that Plaintiff's failure to warn claims are barred by the learned intermediary doctrine.  Therefore, they argue, Plaintiff is unable to show, as a matter of

law, that the Cook Defendants' negligent failure to warn was a proximate cause of her

injuries.

Florida's "learned intermediary doctrine" provides that in a medical device case

such as this, the manufacturer has a duty to warn the treating physician, not the patient, of

the risks associated with the device. *Felix v. Hoffmann-LaRoche, Inc.*, 540 So.2d 102,

104 (Fla. 1989). Thus, a medical device manufacturer discharges its duty to warn if it

gives an adequate warning to the physician who prescribes the device. *Small v. Amgen,*

*Inc.*, 134 F.Supp.3d 1358, 1367 (M.D. Fla. 2015) (citing *Buckner v. Allergan Pharms.,*

*Inc.*, 400 So.2d 820, 822 (Fla. Dist. Ct. App. 1981)). A manufacturer's warning is

adequate if it apprises the physician of the possibility that the prescription medical device

might cause the condition suffered by the plaintiff. *Schenone v. Zimmer Holdings, Inc.*,

No. 3:12-cv-1046-J-39MCR, 2014 WL 12576790, at * 10 (M.D. Fla. Aug. 8, 2014)

(citing *Rounds v. Genzyme Corp.*, 440 Fed. Appx. 753, 755 (11th Cir. 2011)).

"Where the person to whom the manufacturer owed a duty to warn . . . has not

read the label, an inadequate warning cannot be the proximate cause of the plaintiff's

injuries." *Lopez v. S. Coatings, Inc.*, 580 So.2d 864, 865 (Fla. Dist. Ct. App. 1991). In

addition, "the failure of the manufacturer to provide adequate warnings of the risks

associated with a medical device is not the proximate cause of a patient's injury if the

prescribing physician had independent knowledge of the risk that the adequate warning

should have communicated." *Christopher v. Cutter Labs.*, 53 F.3d 1184, 1192 (11th Cir.

1995). "Accordingly, 'the adequacy of the warning is irrelevant if the prescribing

physician, as opposed to the patient, has knowledge of the risks and benefits of the

[medical device] and would have prescribed the [medical device] anyway had the warnings been issued.'" *Small*, 134 F.Supp.3d at 1367 (quoting *Chase v. Novartis Pharm. Corp.*, 740 F.Supp.2d 1295, 1297 (M.D. Fla. 2006)).

Dr. Zuzga testified that he did not read or rely on the IFU prior to Plaintiff's surgery. (Zuzga Dep. at 141, 144-45). Because Dr. Zuzga did not read or rely on the IFU, the content of the IFU—including any alleged misrepresentations it may have contained—had no impact on his decision to place the Celect filter in Plaintiff, and therefore, could not have caused Plaintiff's injury.

Even if Dr. Zuzga had read the IFU, any deficiency in the IFU could not have caused Plaintiff's injuries because he testified that he was fully aware of the risks of the surgery, including the risk of perforation of the vena cava and surrounding organs and stenosis of the vena cava:

Q: [I]s there any risk that you've heard about today that you did not know in November 2010?

A: No.

Q: Okay. In November of 2010, you knew about the risks . . . described about organ perforation, a narrowed or stenosed vena cava, those were all well known to you?

A: Correct.

Q: And when Mr. Johnson asked you, you had no expectation that [Plaintiff's] perforation – or excuse me, you had no expectation that [Plaintiff's] filter would perforate her duodenum following your retrieval attempt, it's accurate to say that you had no expectation, but you always knew it was a risk?

A: Correct.

(Zuzga Dep. at 224-25; *see also id.* at 113-14 (testifying that the risk of perforation was well known); *id.* at 142-43 (noting he understood the risk of perforation including the specific risk that the filter could perforate the small intestine); *id.* at 129-30, 133, 137 (noting Plaintiff was specifically warned of the risk of perforation).

And if that testimony were not enough, Dr. Zuzga opined that Plaintiff's risk of pulmonary embolism during her lengthy spinal surgery outweighed the risks of any complication from the IVC filter, including the complications that she actually experienced:

> Q: Dr. Zuzga, we talked in great detail about all of the risks associated with the Celect filter and with other filters. We talked about all the risks known to you, perforation, organ perforation, stenosis and other things. In your opinion, are all of those risks outweighed by the risk of death from a pulmonary embolism?
>
> A: Yes.

(*Id.* at 226).

> \*\*\*
>
> Q: Is there anything that you learned following her retrieval attempt in March of 2011, that caused you to say, Hey, I need to bring [Plaintiff] back and do something different with her?
>
> A: No.
>
> \*\*\*
>
> Q: Is there anything you learned after March of 2011, even up to today, that would cause you to change the way that you treated [Plaintiff] following March of 2011?
>
> A: No.

(*Id.* at 181).

Given Dr. Zuzga's devastating testimony, the Cook Defendants' failure to warn could not have been the proximate cause of Plaintiff's injuries.

## III.    Conclusion

The undisputed evidence reflects that Dr. Zuzga (1) did not read or rely on the Celect IVC filter's IFU, (2) already knew at the time of Plaintiff's implant about all of the complications Plaintiff experienced, and (3) would not have treated Plaintiff any differently even knowing now the complications that she actually suffered.  Therefore, Plaintiff is unable, as a matter of law, to establish causation in her negligent failure to warn claim.  Accordingly, the Cook Defendants' Motion for Summary Judgment (Filing No. 5752) on Plaintiff's negligent failure to warn claim is **GRANTED**. The balance of Plaintiff's claims remain **UNDER ADVISEMENT**.


**SO ORDERED** this 2nd day of October 2017.


_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana


Distributed Electronically to Registered Counsel of Record.