UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION <br> _____ <br><br> This Document Relates to: <br><br> Elizabeth Jane Hill, <br> 1:14-cv-6016-RLY-TAB <br> _____ | 1:14-ml-02570-RLY-TAB <br> MDL No. 2570 |

**ENTRY ON THE COOK DEFENDANTS' MOTION TO EXCLUDE EXPERT OPINIONS OF DR. ALEXANDER MARMUREANU**

Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe APS (collectively "the Cook Defendants"), move to exclude the opinions of Plaintiff Elizabeth Jane Hill's causation expert, Dr. Alexander Marmureanu. Because Plaintiff's failure to warn claims have been dismissed, this Entry focuses on Dr. Marmureanu's opinions regarding Plaintiff's strict liability defective design and negligent design claims.

**I.       Background**

Dr. Marmureanu is a board-certified general and thoracic surgeon. (Filing No. 5664-1 Expert Report of Dr. Alexander Marmureanu at 1). Currently, he is CEO and President of California Heart and Lung Surgery Center. (*Id.*).

1

In his Expert Report, Dr. Marmureanu opines on the cause and extent of the injuries suffered by Plaintiff. He bases his opinions on (1) his education, training, and experience; (2) Plaintiff's medical records and imaging; (3) his review of select internal Cook's emails and memoranda provided to him by Plaintiffs' attorneys; (4) medical literature; and (5) his review of Cook's internal complaint files selected by Plaintiff's attorneys between October 1, 2008 to September 13, 2013. (Filing No. 5664-2, Dr. Marmureanu's Case-Specific Opinions Regarding Plaintiff ("Hill Expert Report")). His opinions include:

- Plaintiff's filter failure was caused by the Celect filter's tendency to perforate the IVC and progressively perforate leading to tilt, and embedded apex, and perforation of her IVC and duodenum. (*Id.* at 1, 12).

- The Celect filter caused Plaintiff to have moderate IVC stenosis, gastrointestinal issues, lower extremity edema, and depression and anxiety. (*Id.* at 1-3, 14, 16).

- She did not have other health conditions that contributed to her IVC failure. (*Id.* at 15).

- Plaintiff will require, as a result of complications with her IVC filter, the following treatment: lifetime anticoagulation and proton pump inhibitor; monitoring and medical surveillance for life, including annual visits to a vascular specialist; psychological counseling; and lymphedema therapy. (*Id.* at 16).

## II.     Standard for Expert Testimony

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence and the principles announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Specifically, (1) the expert must be

qualified by knowledge, skill, experience, training, or education; (2) the proposed expert testimony must assist the trier of fact in determining a relevant fact at issue in the case; (3) the expert's testimony must be based on sufficient facts or data and reliable principles and methods; and (4) the expert must have reliably applied the principles and methods to the facts of the case. *Lees v. Carthage College*, 714 F.3d 516, 521-22 (7th Cir. 2013) (citations omitted). *See also Lapsley v. Xtek, Inc.*, 689 F.3d 802, 809 (7th Cir. 2012) ("Rule 702 requires that expert testimony be relevant, reliable, and have a factual basis—requirements that must be met before the jury is allowed to hear and perhaps be persuaded by the expert testimony."). As the proponent of the expert testimony at issue, the plaintiff has the burden of demonstrating the expert's admissibility. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

### III. Discussion

The Cook Defendants argue that Dr. Marmureanu is not qualified to give opinions on the design of the Celect filter and that he failed to apply a reliable methodology in forming his causation opinions.

#### A. Qualifications

An expert may be qualified by "knowledge, skill, experience, training, or education." Fed. R. Civ. P. 702. "While 'extensive academic and practical expertise' in an area is certainly sufficient to qualify a witness as an expert, *Bryant v. City of Chicago*, 200 F.3d 1092, 1098 (7th Cir. 2000), Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience." *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (citation omitted). Therefore, "a court should

3

consider an expert's full range of practical experience as well as academic or technical training when determining whether the expert is qualified to render an opinion in a given area." *Id.* Here, the Cook Defendants challenge Dr. Marmureanu's qualifications because he does not specialize in the fields of Interventional Radiology, Vascular Surgery, or Interventional Cardiology.

Dr. Marmureanu testified that after he completed his residency at New York University in general surgery, he completed a fellowship at the University of California at Los Angeles which focused on cardiothoracic surgery. (Filing No. 5664-5, Deposition of Dr. Alexander Marmureanu ("Marmureanu Dep.") at 56-57, 60). He presently performs "thoracic surgery, which covers cardiac surgery, heart surgery, lung surgery, and all the blood vessels associated with [sic]," as well as "vascular surgery, open, as well as endovascular [surgery]." (*Id.* at 53-54). Furthermore, he has both implanted and explanted IVC filters, although he has not performed either procedure for a number of years. (*Id.* at 205, 211). The court finds Dr. Marmureanu is qualified to give an opinion on causation based upon his education, training, and experience.

The Cook Defendants challenge his opinion that the Celect filter has a tendency to perforate due to the "stiffness of the filter" and "excess radial force" of the filter. They argue he is not an engineer; he has never been involved in the design of an IVC filter; and he has never studied the design of any IVC filter. (*Id.* at 95-99, 426-27). In addition, they point out that his expert report and Curriculum Vitae include no articles about the design, testing, or manufacture of any medical device. (*Id.* at 126).

4

Plaintiff represents that she is not offering Dr. Marmureanu to testify outside the scope of his expertise as a cardiothoracic surgeon. She notes that he "may" reference filter characteristics such as the stiffness[1] of the filter material and the excessive radial force applied by the filter. *See id.* at 345 ("I think it's due to a poorly designed filter and probably material, or definitely the material that's being used in this filter, which according to my study, seems to be stronger and stiffer than anything else in creating more of a radial force."); Hill Expert Report at 12 ("The perforation and penetration was caused by the defective Cook [Celect] filter[2] which is due to the stiffness of the filter, resulting in excess radial force, and lack of perforation limiters on the filter struts."). But as the Cook Defendants observe, his opinions on the material used and radial force of the struts are engineering opinions, not opinions from a cardiothoracic surgeon. Therefore, Dr. Marmureanu may not testify that the Celect filter has a tendency to perforate due to the stiffness of the filter or its excessive radial force.

### B.     Methodology

"Differential diagnosis is an accepted and valid methodology for an expert to render an opinion about the identity of a specific ailment." *Myers v. Ill. Cent. R. R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010); *see also Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 705 (7th Cir. 2015) (excluding expert's causation opinion for his failure to employ a differential diagnosis). It "refers to a method of *diagnosing* an ailment, not determining

---

[1] In a footnote in his expert report, he discusses "stiffness and radial force in the main body of [his] report." (Hill Expert Report at 12 n. 3). There is no discussion of those characteristics of the filter in his general report.

[2] His expert report refers to the Gunther Tulip filter. This appears to be a typographical error.

its cause." *Higgins*, 794 F.3d at 705. On the other hand, differential etiology "is a causation-determining methodology." *Id.* "[I]n differential etiology, the doctor rules in all the potential causes of a patient's ailment and then by systematically ruling out causes that would not apply to the patient, the physician arrives at what is the likely cause of the ailment.'" *Schultz v. Azko Novel Paints, LLC,* 721 F.3d 426, 433 (7th Cir. 2013) (quoting *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 641 (7th Cir. 2010)).

The Cook Defendants argue Dr. Marmureanu failed to use a differential etiology[3] in arriving at his causation opinions because he neither ruled in nor ruled out all possible causes of Plaintiff's injuries. The court will begin with Dr. Marmureanu's causation opinion with respect to tilt and perforation.

### 1. Tilt and Perforation

Dr. Marmureanu testified that Plaintiff's Celect filter tilted, embedded, and perforated the IVC and duodenum because those conditions are present on her medical imaging. (Marmureanu Dep. at 336). Therefore, he explained, he did not need to do a differential diagnosis. (*Id.* ("I don't need to do a differential diagnosis because I see the perforated filter on the endoscopy pictures provided to me. So I know that filter perforated.")). The malposition of the filter was confirmed by her explanting doctor and documented in her medical records. (Filing No. 5753-5, Operative Report dated Aug. 21, 2013 ("EGD showed a perforated filter leg in the small bowel."). *See also* Filing No. 5754-2, Operative Report dated Aug. 15, 2013 ("An upper gastrointestinal endoscopy

---

[3] The parties used the term "differential diagnosis" rather than "differential etiology." To avoid confusion, the court will do so as well.

6

done in view of the above revealed the presence of a wire that was penetrating through the duodenal wall and extending to the opposite duodenal wall covering the entire lumen. This wire appears to be sharp steel wire that may be emanating from the adjoining inferior vena cava stabilization process that was done at some point."). In a case such as this, where a condition is obvious, a differential diagnosis is not necessarily required to determine the cause. *See Sita v. Danek Medical, Inc.*, 43 F.Supp.2d 245, 254 (E.D.N.Y. 1999) (differential diagnosis was not necessary where x-ray clearly revealed that one of the screws implanted in the pedicles of Sita's spine had fractured). Absent any other explanation for a metal object inside Plaintiff's body, Dr. Marmureanu may reliably determine that the perforation of Plaintiff's IVC and duodenum by a metal strut was caused by the Celect filter.

An underlying issue here is whether something other than the design of the filter—some other physical condition, disease, or external factor—could have caused the filter to tilt, embed, and perforate Plaintiff's IVC and duodenum. According to the Cook Defendants, Dr. Marmureanu failed to consider other causes of filter malpositioning and perforation, including technical error, abnormalities resulting in a filter touching the caval wall or placing unusual forces on the cava, trauma to the abdomen, compromised vena cava tissues, her spinal surgery, or any other physiological changes in the diameter of the vena cava. Therefore, they argue, his opinion is unreliable.

Dr. Marmureanu testified that he reviewed Plaintiff's medical records. He considered (and apparently ruled out) her (1) prior cervical fusion, (2) degenerative scoliosis, (3) L3-4 discectomy infusion, (4) prior history of esophagitis, (5)

7

Gastroesophageal Reflux Disease, (6) hypercholesterolemia, and (7) obesity. (Marmureanu Dep. at 339-340). In addition, he did not find anything in her medical records indicating she had a weak IVC or duodenum. (*Id.* at 352). He also considered and ruled out any foreign trauma to her abdominal region, including trauma from a car accident. (*Id.* at 335, 352-53). Consistent with the medical literature, Cook internal documents and complaint reports, Plaintiff's medical records, and his training and experience, he opined that her filter became malpositioned because of the design of the Celect filter and not by other causes. (Marmureanu Dep. at 325-26; *see also id.* at 352 ("So based on my review of the records and considering all the records available, doing the differential diagnosis, my opinion is that the filter perforated due to the design. And again, not due to the trauma or pre-existing conditions or any major event.")). Whether Dr. Marmureanu considered every possible alternative cause of the filter's tilt and perforation goes to the weight of his testimony, not its admissibility.

### 2. IVC Stenosis

Dr. Marmureanu opines that the Celect filter's perforated strut caused stenosis (narrowing) of Plaintiff's IVC. (Hill Expert Report at 1-2). The Cook Defendants contend he failed to "rule in" any of the possible causes of the appearance of caval stenosis in his expert report and thus never "rules out" other possible causes. Instead, he bases his opinion solely on his observation of narrowing in a Duplex ultrasound taken in March 2017. (Marmureanu Dep. at 520).

Dr. Marmureanu's opinion is supported by the physician that reviewed the imaging. He reported "mild narrowing of the upper to mid IVC" and that "IVC stricture

8

cannot be totally excluded." (*Id.* at 513). Dr. Marmureanu's opinion is also supported by the fact that "[Plaintiff's] medical records and diagnostic testing are devoid of any mention of pre-existing IVC stenosis." (Hill Expert Report at 2).

Furthermore, upon inquiry by counsel for the Cook Defendants, Dr. Marmureanu acknowledged that compression of the vena cava may make it appear narrowed on an ultrasound. (Marmureanu Dep. at 519). For example, Dr. Marmureanu identified retroperitoneal hematomas, cancer, foreign bodies, hematomas, and surrounding tissues and organs as possible causes of IVC compression. (*Id.*). He explained that, while these are alternative causes for compression in a hypothetical patient, these conditions do not exist in Plaintiff's case. (*Id.*). Dr. Marmureanu further explained that being overweight does not increase IVC compression because "they're overweight on the outside, not the inside" and "the weight is all distributed from the abdominal wall up." (*Id.* at 519-20). Whether Dr. Marmureanu considered every possible alternative cause of the Plaintiff's IVC stenosis goes to the weight of his testimony, not its admissibility.

### 3. Gastrointestinal Symptoms

Dr. Marmureanu's expert report observes that "long-term perforation of the duodenum by the IVC filter strut was a substantial contributing factor to scarring of the duodenal wall and chronic inflammation." (Hill Expert Report at 13). The scarring, he continued, is a substantial contributing factor to duodenal stenosis, which can lead to a patient's ongoing symptoms of nausea, vomiting, and epigastric abdominal pain. (*Id.*). Accordingly, Dr. Marmureanu opined that Plaintiff's gastrointestinal symptoms,

9

including abdominal pain, nausea, and vomiting, were caused by the Celect filter. (*Id.* at 344).

The Cook Defendants challenge Dr. Marmureanu's opinion because he cites no testing, studies, or experience to support his opinion that perforation of the duodenum by an IVC filter can cause gastrointestinal symptoms like Plaintiff's. Instead, he relies on his "common sense." (*Id.* at 525). He explained:

> Well, first of all, I used common sense. After common sense, it's my – I mean basically, she's got a stabbing wound of – also the trauma. This is a stabbing wound to an organ. This – basically, she's got a small knife coming from one side, going through the lumen, coming out to – to the other side. And that, in my experience, explain [sic] pain and symptoms associated with symptoms [sic].

(*Id.* at 525-26).

Dr. Marmureanu testified that he relied on his training and experience when he opined that all perforations of the duodenum result in a fibrotic reaction, inflammatory reaction, and scarring of the duodenum. (*Id.* at 530, 532-33). He also based his opinion on Plaintiff's endoscopy report that showed inflammation in the area of the foreign body, (*id.* at 532-34), as well as his review of the medical literature and approximately 300 Cook complaint files, as establishing the connection between perforation by a foreign body and inflammation, (*id.* at 535).

In addition, Dr. Marmureanu explained that the penetration of her duodenum by a foreign object would cause pain and inflammation. (*Id.* at 572). Dr. Marmureanu attributed the pain and inflammation to the filter rather than her earlier diagnosis of duodenitis because the duodenitis she had suffered appeared to be controlled. (*Id.* at 574-

75). He also considered and ruled out esophageal issues and gastric issues Plaintiff may have had in the past as the cause of her pain because her medical records indicated those conditions were under control. (*Id.* at 576-77). And lastly, Plaintiff's intestinal conditions improved and her pain lessened after the filter was removed. (*Id.* at 569-71; Hill Expert Report at 13). The court therefore finds Dr. Marmureanu may testify that Plaintiff suffered gastrointestinal issues because of the perforated strut.

### 4.     Venous Insufficiency

Dr. Marmureanu opines in his expert report that Plaintiff "has problematic lower extremity edema from venous insufficiency that will result in thrombotic complications as she ages." (Hill Expert Report at 2). The Cook Defendants complain that Dr. Marmureanu formed his opinion based only on a "15-second" touch of her legs.

Dr. Marmureanu testified that he saw Plaintiff the same day she had the Duplex ultrasound. (Marmureanu Dep. at 482). He noted that she had trouble getting on the examination table and that her legs were swollen. (*Id.*). In response to his inquiry, she responded that her legs were "always" swollen. (*Id.*). He palpated her feet for 15 seconds, and opined that Plaintiff had plus 2 lower extremity edema. (*Id.* at 482, 503). He did not consider other possible causes of the alleged swelling, and did nothing to compare her condition on that day with any prior day. (*Id.* at 482). Dr. Marmureanu's failure to even attempt a differential diagnosis requires the exclusion of this opinion.

### 5.     Depression and Anxiety

During his examination of Plaintiff, Dr. Marmureanu reports that she expressed feeling "traumatized" by the filter and the presence of "holes in her body, holes in her

11

duodenum." (*Id.* at 620). Because "it seems some patients do better with psychological counseling, so [he] put it in [the report]." (*Id.*). He does not know whether she has received such counseling since the retrieval, and he cannot say whether counseling would help her. (*Id.* at 621). According to the Cook Defendants, Dr. Marmureanu's opinion lacks any reliable methodology. The court agrees. This opinion is excluded.

### 6. Future Medical Complications

At the time he wrote his report, Dr. Marmureanu opined that Plaintiff would require the following items throughout her life: (1) medical monitoring, (2) psychological counseling, (3) compression hosiery, (4) anticoagulants, and (5) lymphedema therapy. After considering Plaintiff's recent medical testing results, Dr. Marmureanu concluded that her need for anticoagulants and lymphedema therapy were not indicated or necessary. (*Id.* at 480-81). With respect to the balance of her future medical needs, Dr. Marmureanu admits that Plaintiff has not required medical monitoring and surveillance, counseling, or compression hosiery any time since her filter was retrieved in 2013. (*Id.* at 617-18 (When asked if Plaintiff will require annual surveillance to date, he responded: "I don't know. I don't know."); *id.* at 620-21 (admitting she has not required counseling and does not know if she will); *id.* at 622 (admitting he did not evaluate whether Plaintiff needs compression hosiery)). These opinions lack a reliable methodology and therefore, are excluded.

## IV.   Conclusion

The Cook Defendants' Motion to Exclude Expert Opinions of Dr. Alexander Marmureanu is **GRANTED in part** and **DENIED in part** (Filing No. 5662).  In particular:

- Dr. Marmureanu may not testify that the Celect filter was defectively designed due to his analysis of the filter's properties.

- Dr. Marmureanu may testify that the filter's design caused it to tilt, embed and perforate her IVC and duodenum based on a differential diagnosis.

- Dr. Marmureanu may testify that the perforation of the IVC strut caused her IVC stenosis and gastrointestinal symptoms.

- Dr. Marmureanu may not testify that the perforated filter strut caused her venous insufficiency, depression and anxiety.

**SO ORDERED** this 4th day of October 2017.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.