UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION _____ | ) ) ) ) ) ) | 1:14-ml-02570-RLY-TAB MDL No. 2570 |
| This Document Relates to: Elizabeth Jane Hill, 1:14-cv-6016-RLY-TAB _____ | ) ) ) ) ) | |

**ENTRY ON THE COOK DEFENDANTS' MOTION TO EXCLUDE EXPERT OPINIONS OF DR. MOHAMMAD RAJEBI**

Plaintiff, Elizabeth Jane Hill, offers the testimony of Dr. Mohammad Rajebi, a board certified and practicing interventional radiologist. After reviewing the venograms from 58 patients in the OUS[1] clinical study, Dr. Rajebi found that 46 out of 58 patients implanted with the Celect IVC filter experienced perforations. However, an article[2] reporting the results of the OUS Study, published in the Journal of Interventional Radiology (the "Lyon Study"), reported that none of the patients experienced perforations. Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated),

---

[1] The clinical OUS ("Outside the United States") Study was funded by the Cook Defendants. (Filing No. 6116-2, Lyon, et al., *Short- and Long-term Retrievability of the Celect Vena Cava Filter: Results form a Multi-institutional Registry*, JVIR 2009 ("Lyon Study")).
[2] The Lyon Study was co-authored by three Cook employees. (Lyon Study at 1).

1

and William Cook Europe APS (collectively "the Cook Defendants"), move to exclude this testimony. For the reasons explained below, their Motion is **DENIED**.

## I.     Background

At the time he executed his expert report, Dr. Rajebi was an Assistant Professor of Interventional Radiology at the University of Colorado, Department of Radiology. (Filing No. 6116-4, Expert Report of Dr. Mohammad Rajebi ("Expert Report") at 1). During his employment, he interpreted venograms[3] on a daily basis, approximately 20 percent of the time, and was responsible for interpreting venograms for his own patients as part of performing interventional procedures. (Filing No. 6116-5, Deposition of Dr. Mohammad Rajebi ("Rajebi Dep.") at 152).

With respect to his educational background, following a one-year internship in internal medicine, Dr. Rajebi completed four years of a diagnostic radiology residency at the State University of New York Upstate Medical University in Syracuse, New York, where he served as Co-Chief Resident from July 2011-2012. (Expert Report at 1). While in his diagnostic radiology residency, he assisted interventional radiologists with placement of about 100 IVC filters per year and assisted with removal of others. (Rajebi Dep. at 63-64).

---

[3] Venograms are typically interpreted by interventional radiologists like Dr. Rajebi. (*Id.* at 111). In clinical practice, a venogram is performed both before and after IVC placement. (*Id.* at 205, 210). It is done before placement so the interventional radiologist is aware of the size and anatomy of the patient's IVC and the location of the patient's renal veins. (Rajebi Dep. at 205). And it is done after to confirm proper placement and to check for tilt. (*Id.* at 210).

After completing his residency, Dr. Rajebi completed a vascular and interventional radiology fellowship under the direction of Dr. Barry Katzen, founder of the Miami Cardiac and Vascular Institute. (Expert Report at 2). During his fellowship, he interpreted imaging and prepared a written report under the supervision of an interventional radiologist. (Rajebi Dep. at 84). This fellowship in interventional radiology had a special focus on procedures related to and interpretations of images related to IVC filters, including CT venograms, MR venograms, and angiographic venograms. (*Id.* at 67-68, 83-84; Expert Report at 2). Dr. Rajebi estimates that during his fellowship, he interpreted at least one to two venograms a day. (Rajebi Dep. at 83).

In the present case, he opines:

> I have had the opportunity to review the venograms for OUS study Registry 8 subjects that were provided to plaintiffs through discovery. For purposes of my review, I applied the definition of a "perforation" used in the published Lyon study: a "strut protruding out of the IVC wall." Using that definition, it is my opinion that out of the 58 patients who underwent removal and for whom a removal venogram was available for my review[,] 46 confirmed the filter had perforated the vena cava.

(Expert Report at 41-42) (footnotes omitted). The Cook Defendants argue Dr. Rajebi's testimony should be excluded because he is not qualified to testify as an expert witness, his testimony is unreliable, and his testimony will not assist the trier of fact.

## II.     Standard for Expert Testimony

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence and the principles announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Specifically, (1) the expert must be qualified by knowledge, skill, experience, training, or education; (2) the proposed expert

3

testimony must assist the trier of fact in determining a relevant fact at issue in the case; (3) the expert's testimony must be based on sufficient facts or data and reliable principles and methods; and (4) the expert must have reliably applied the principles and methods to the facts of the case. *Lees v. Carthage College*, 714 F.3d 516, 521-22 (7th Cir. 2013) (citations omitted). *See also Lapsley v. Xtek, Inc.*, 689 F.3d 802, 809 (7th Cir. 2012) ("Rule 702 requires that expert testimony be relevant, reliable, and have a factual basis— requirements that must be met before the jury is allowed to hear and perhaps be persuaded by the expert testimony."). As the proponent of the expert testimony at issue, the plaintiff has the burden of demonstrating the expert's admissibility. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

**III.   Discussion**

    **A.   Qualifications**

The Cook Defendants argue Dr. Rajebi is not qualified to testify because he lied under oath about his employment. They cite to his May 18, 2017 deposition, during which he stated he was employed at the University of Colorado, both as a professor and as a clinician in interventional radiology. (Filing No. 5668-1, Rajebi Dep. at 99, 148-49). Dr. Rajebi has not been employed with the University since March 23, 2017. (Filing No. 5682-3, Certification of Public Record (8-7-17)).

Whether or not he was truthful with respect to his present employment is relevant to his credibility with the jury, but is irrelevant to his qualifications to testify in this case. As demonstrated by his testimony, his expert report, and his Curriculum Vitae, he

possesses the education, training, and experience to offer expert testimony regarding whether certain imaging showed perforation of a patient's IVC.

### B. Methodology

The Cook Defendants argue Dr. Rajebi's methodology is unreliable because he "had no standards for reviewing the images, no study protocol, no documentation of his review of any image, and no notes or measurements." (Filing No. 5682, Memorandum in Support at 8).

According to Dr. Rajebi, the interpretation of a venogram "is a very simple task." (*Id.* at 165-66). Even though the wall of the vena cava is not visible in a venogram, he explained, he is able to diagnose a perforation by looking at the column of contrast. (*Id.* at 227-28). If he sees "a component of the filter that has any distance with the column of contrast, [he] will call it a perforation." (*Id.* at 228). Dr. Rajebi testified he does not follow the Society of Radiologists' definition of perforation, which defines perforation as filter component penetration greater than 3 millimeters of the caval wall, because in his experience, practicing clinicians do not measure the distance. (*Id.* at 234-35) ("I've seen, you know, prominent interventional radiologists practice around me, and they're the same. Nobody sits there and measures and says, "Oh, this is not perforated. This is 3 millimeters. That's just a matter of paper."). The definition of perforation Dr. Rajebi uses is the only definition he has ever used in his clinical practice. (*Id.* at 231-32). Dr. Rajebi also noted it was the same definition of perforation used in the Lyon Study. (*Id.* at

5

299; Lyon Study at 1445 (reporting "there was no evidence of perforation[4] (strut protruding out of the caval walls")).

An expert's testimony may be based primarily on his experience even if there is no "scientific" method underlying his opinion. *In re Zimmer NexGen Knee Implant Prods. Liab. Litig.*, 2017 WL 36406, at *7 ("Testimony based primarily on an expert's experience may be admissible even if there is no "scientific" method underlying the expert's opinions."); *see also Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) ("Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience.") (quoting *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 591 (7th Cir. 2000)). That appears to be the case here. Dr. Rajebi has significant clinical experience interpreting images like those presented in the OUS Study. His opinions are based on observations he was trained to make and routinely uses in his clinical practice. (*See also* Rajebi Dep. at 291 (testifying that at the University of Colorado, radiologists periodically check the accuracy of each other's review of images)). The Cook Defendants' objections relating to his definition of perforation as opposed to the Society of Radiologists' definition, and the accuracy of his interpretation of the venograms are not the type of objections that warrant the exclusion of his testimony. Rather, these areas of inquiry may be addressed on cross-examination. *See Daubert,* 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction

---

[4] The OUS Study Protocol defined perforation as "[p]rotrusion of filter struts through the wall of the IVC causing hemorrhage or hematoma." (Filing No. 5688-2, Clinical Investigation Plan (or OUS Study) at 25). Why the Lyon Study used a different definition is a subject which will likely be raised at trial.

on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

### C. Assist the Jury

Lastly, the Cook Defendants argue Dr. Rajebi's testimony will not assist the jury because it is simply irrelevant to establish Plaintiff's failure to warn claim. At this juncture, Plaintiff's failure to warn claims are no longer part of this case. However, Plaintiff's design defect claims remain. And while the Florida Supreme Court held the consumer expectations standard is the controlling standard for strict liability design defect cases, *Aubin v. Union Carbide Co.*, 177 So.3d 489, 510 (Fla. 2015), Dr. Rajebi's testimony that OUS imaging contains more perforations than reported in the Lyon Study may be relevant to Plaintiff's strict liability design defect claim. The Cook Defendants will likely argue in defense that the benefits of the Celect filter's design outweigh any risk of injury or death. *Id.* at 511. In that circumstance, Dr. Rajebi's testimony will assist the jury in determining the risk of injury from perforation the Cook Defendants were aware of prior to marketing and selling the Cook Celect IVC filter.

7

## IV.     Conclusion

The court finds Dr. Rajebi is qualified to testify in this matter, his opinions are reliable, and his testimony will assist the jury to determine a fact in issue; namely, Plaintiff's design defect claims.  Therefore, the Cook Defendants' Motion to Exclude Expert Opinions of Dr. Mohammad Rajebi (Filing No. 5671) is **DENIED**.

**SO ORDERED** this 10th day of October 2017.

                                                                     _____
                                                                     RICHARD L. YOUNG, JUDGE
                                                                     United States District Court
                                                                     Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.