# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND                    Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION                     MDL No. 2570

_____

This Document Relates to the Following Actions only:

      Elizabeth Jane Hill
      No. 1:14-cv-06016-RLY-TAB

_____

## THE COOK DEFENDANTS' MEMORANDUM IN RESPONSE TO ELIZABETH HILL'S SUPPLEMENTAL BRIEF IN SUPPORT OF HER STRICT LIABILITY DESIGN DEFECT CLAIM

Defendants Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS (collectively, the "Cook Defendants" or "Cook") submit this response to Elizabeth Hill's Supplemental Brief In Support Of Her Strict Liability Design Defect Claim. Plaintiff's submission responded to the Court's October 17, 2017 Order that she "file a short brief addressing *all* of the elements of her strict liability design defect claim, with evidence." Dkt. 6849 (emphasis by Court). To prevail on her strict-liability design defect, Plaintiff must establish the following elements:

1. Plaintiff's Celect IVC filter had a defect in its design;

2. That design defect rendered the filter unreasonably dangerous;

3. The design defect caused injuries to Plaintiff; *and*

4. Plaintiff suffered compensable damages from those injuries.

*See West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 86-87 (Fla. 1976).

Plaintiff's October 18, 2017 submission to the Court fails to offer sufficient factual support to create a jury question on any of the first three of these requirements.  Most prominently, ***Plaintiff fails to offer any expert testimony that any defect in the Celect IVC filter design rendered the filter unreasonably dangerous***, *i.e.*, that the Celect did not live up to the safety expectations of doctors who use IVC filters to help their patients avoid death or other serious injury that can result from blood clots.  In addition:

- Plaintiff's response does not cure the failure of her original summary judgment response to address Cook's argument on the essential element of causation, thereby waiving any argument in defense of causation and, through it, her design defect claim;

- Even assuming that she had not already conceded the issue of causation, Plaintiff's response does not offer the expert testimony necessary to create a genuine issue of material fact on her claim that a design defect in the Celect IVC filter caused her claimed injuries; and

- Plaintiff's response does not demonstrate a genuine issue of material fact on her claim that the design of the Celect IVC filter was defective.

Finally, even if the evidence Plaintiff adduced with her submission were sufficient to warrant a trial on her strict-liability design defect claim, her submission and the Court's October 17 Order granting summary judgment on her negligent testing claim reinforce the need to bifurcate the compensatory and punitive phases of the trial.

**DISCUSSION**

I.   **Plaintiff's New Evidence Does Not Demonstrate a Genuine Issue of Material Fact on Her Claim that the Design of the Celect IVC Filter was Defective.**

"In order to hold a manufacturer liable on the theory of strict liability in tort, the user must establish … the…unreasonably dangerous condition of the product." *West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 87 (Fla. 1976). Plaintiff has not done this and cannot do it. Despite persuading the Court to apply the "consumer expectations" standard to the "unreasonably dangerous" element of her design defect claim, Plaintiff has identified no expert who will provide testimony that will meet that standard, *i.e.*, that the Celect IVC filter failed to meet the reasonable safety expectations of doctors in the position of Plaintiff's treating doctor, Dr. Zuzga.

In her original response to Cook's summary judgment motion, Plaintiff argued that the Court should evaluate whether the Celect was "unreasonably dangerous under Florida's "consumer expectation" standard, rather than under the risk-benefit standard that Cook urged. *See* Dkt. 6161 at 4-5. The Court accepted Plaintiff's argument and adopted the "consumer expectations" standard in its original order addressing design defect. *See* Dkt. 6761 at 2-3 ("[T]he definition of design defect… which utilizes the consumer expectations test, instead of utilizing the risk utility test best vindicates the purposes underlying the doctrine of strict liability.") (quoting *Aubin v. Union Carbide Corp.*, 177 So. 3d 489, 494 (Fla. 2015)).

Under this consumer expectation standard that Plaintiff urged and the Court adopted, the question is "whether a product is unreasonably dangerous in design because it failed to perform as safely as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner." *Aubin*, 177 So. 3d at 503 (quoting Restatement (Second) of Torts § 402A (1965)); *see also* Plaintiff's Proposed Jury Instructions 403.7b, 403.15 [Dkt. 6530] (proposing same standard). Plaintiff's response concedes that under the circumstances here, the

US.114665266.10

"consumers" whose "expectations" are relevant under this standard are doctors in the position of Plaintiff's treating doctor, Dr. Zuzga, and *not* patients in the position of Plaintiff herself.  *See* Dkt. 6886 at 9 (addressing "the ordinary expectations of implanting physicians").  Determining such doctors' "reasonable expectations" concerning the Celect IVC filter necessarily requires medical knowledge and expertise, and therefore expert testimony.  Jurors could not be expected to determine doctors' expectations on their own without assistance from experts who actually know the medical community involved with IVC filter placement and can talk about the state of that community's knowledge and beliefs.  *See, e.g., Bommersbach v. Ruiz*, 461 F. Supp. 2d 743, 749 (S.D. Ill. 2006) (holding doctor's exercise of professional medical judgment requires expert testimony); *Hendricks v. Goszkowski*, No. 106CV0590DFHWTL, 2006 WL 4843406, at *2 (S.D. Ind. Oct. 3, 2006) (holding that plaintiff in medical malpractice case "must present evidence, in the form of expert testimony, regarding what other reasonable doctors similarly situated would have done under the circumstances").

Plaintiff's response agrees that that Florida's "consumer expectation" standard requires her to prove that her Celect IVC filter failed to perform as safely in normal use as doctors in Dr. Zuzga's position would expect, and that this is an *objective* standard, *i.e.*, that the standard looks at what an ordinary doctor would reasonably have expected, not what any specific doctor *actually* expected.  *See* Dkt. 6886 at 2, 9.  Nevertheless, ***Plaintiff's response identifies no expert*** who will testify concerning what doctors in Dr. Zuzga's position would have reasonably expected concerning the safety of the Celect filter and no expert who will opine that the Celect filter failed to perform as safely as those doctors expected, particularly given the circumstances of Plaintiff's use.  Plaintiff describes several design changes that Dr. McMeeking speculates would have reduced the Celect's perforation rate, Dkt. 6886 at 3-4 (see discussion in section IV

below), but Dr. McMeeking offers no opinion that the Celect's then-existing perforation rate violated the expectations of physicians who place IVC filters.  Indeed, as an engineer with no medical training, he would not have been qualified to offer such an opinion.

Although Plaintiff argues that "the ordinary expectations of implanting physicians were shaped by Cook's own representations about the product," Dkt. 6886 at 9, she offers no expert testimony concerning what those "ordinary expectations of implanting physicians" *actually were* at the time that Dr. Zuzga places Plaintiff's Celect filter, or what parts (if any) of Cook's representations a reasonable doctor would rely on in forming expectations regarding the safety of a product.  Instead, Plaintiff attributes several representations to Cook and asks the Court and the jury to speculate about what effect those representations might have had on doctors' expectations.  Dkt 6886 at 9-10.  Such speculation is not sufficient to establish the expectations of a reasonable physician and cannot substitute for expert testimony, and Plaintiff cites no authority to suggest that it can.

In fact, the undisputed evidence in this case demonstrates that *every single one* of the doctors who was actually involved in Plaintiff's care—Drs. Lynch, Zuzga, and Moreno—*in fact* expected a risk of perforation from the Celect IVC filter, and indeed every other IVC filter available.  *See., e.g.,* Ex. A, Lynch Dep. at 31:23-33:8 (testifying that he had seen perforation and organ perforation in his own practice by the time he treated Mrs. Hill in 2013 and that it was "well-documented in the literature that [organ perforation] could occur."); Dkt. 5688-7, Ex. J, Zuzga April Dep. at 113:8-23 (testifying that perforation of the vena cava and organ perforation were known risks in November 2010); Ex. B, April Moreno Dep. at 9:23-10:3 (when asked if he expected that Plaintiff's filter would perforate her duodenum, Dr. Moreno replied "I always tell patients that the filters do have complications, and the surgeons are going to go over it, and they

5

are not perfect, and some of them we can't take out.").  Indeed, even Plaintiff's own expert Dr. Marmureanu *agreed* that the risks of perforation and damage to the surrounding organs were well known in the medical community in 2010 and 2011, and he testified that when he consulted with his patients prior to placing a filter during that period, he would advise them of the risks of perforation and organ damage.  *See* Dkt. 5664-5, Ex. E, Marmureanu Dep. at 264:19-266:11; *see also* Ex. C, Venbrux Dep. at 353:8-15 (in 2010, the relevant medical community was aware that all filters had a rate of vena cava perforation).

Plaintiff's attempt to disguise this omission in her expert case by pointing to Dr. Zuzga's supposed personal "expectations" about Plaintiff's specific complication with her Celect IVC filter, *see* Dkt 6886 at 10-11, fails for several reasons.  First, Plaintiff is simply wrong in asserting (without citation to the record) that "Dr. Zuzga was motivated to use the Celect retrievable filters based on Cook's representations and assurances that the product was safe, effective and retrievable."  Dkt. 6886 at 10.  As Plaintiff must know from Cook's summary judgment motion and the Court's order granting summary judgment on her failure-to-warn claims, Dr. Zuzga testified unambiguously that he did not rely on anything Cook communicated to him in selecting the Celect filter for Plaintiff.  *See* Dkt. 5688-7, Ex. J, Zuzga April Dep. at 141:7-14, 144:15-145:3 ("Q. You did not rely on anything that Cook communicated to you in selecting the filter appropriate for Mrs. Hill?  A. Correct").

Second, as Plaintiff acknowledges, the "consumer expectations" standard is an *objective* standard, not a standard that depends on the particular knowledge of one person in a single case; it addresses what "an *ordinary* consumer would expect," not what a specific consumer in a particular case actually expected.  *Aubin*, 177 So. 3d at 503 (emphasis added).  Under that standard, Dr. Zuzga's personal opinion is irrelevant.  What a single doctor—even the plaintiff's

6

treating doctor—may think or expect does not demonstrate what an *ordinary* doctor in his position would necessarily think. Plaintiffs must present expert evidence—a physician in the relevant medical specialty—who opines that the Celect did not meet physician expectations, *and Plaintiff offers no such evidence.*

Most importantly, however, Plaintiff's argument addresses the wrong question. What matters is *not* whether the medical community or Dr. Zuzga expected Plaintiff to experience the *actual* complication she claims, but whether they expected the *risk* of that complication. By analogy, a pocket knife is not defectively designed simply because it has cut a consumer's hand; although the consumer did not expect the knife to actually cut the hand, in using the knife the consumer expected the risk that the knife might cut the hand. After all, a cut on the hand is a risk inherent in using a sharp blade, just as certain complications are risks inherent in using an IVC.

This analysis is consistent with Dr. Zuzga's testimony here. As Plaintiff correctly notes, Dr. Zuzga testified that he did not expect Plaintiff's filter to perforate the IVC wall, and he was surprised to learn that it had done so. *See* Dkt. 6886 at 10-11 (citing Zuzga Dep. at 62:1-63:3). But that testimony has nothing to do with the *risks* of complications that Dr. Zuzga or other doctors expected in using the IVC filter, and the expected risks are what matters. If a complication has a one-in-a-hundred risk of occurring, a doctor will not expect the complication to occur in any particular patient, and may be surprised if it does. But what is *material* is that the doctor *expects* the 1/100 risk and makes that risk to be part of the balance when the doctor weighs whether to prescribe the medical device for the patient. This is exactly the expectation of risk that Dr. Zuzga testified to here:

> [Q:] [Y]ou had no expectation that Mrs. Hill's filter would perforate her duodenum following your retrieval attempt, it's accurate to say that you had no expectation, but you always knew it was a risk?
> A. Correct.

7

*See* Dkt. 6511-1, Ex. Y, Zuzga Dep. Vol. II at 224:21-225:13.[1]

In sum, Plaintiff's October 18 response offers no expert testimony that either describes implanting doctors' reasonable expectations about the safety of IVC filters or opines that the Celect IVC filter violated those expectations.  Absent such expert testimony, Plaintiff cannot prove that her Celect IVC filter was "unreasonably dangerous" under Florida law, and thus cannot as a matter of law establish a jury question on her strict-liability design defect claim.  *See, e.g., Thornton v. M7 Aerospace LP*, 796 F.3d 757, 773 (7th Cir. 2015) ("failure to come forward with expert testimony regarding any alleged design defect or dangerousness is fatal to their claim").

## II. Plaintiff Conceded the Element of Causation on her Design Defect Claim by Failing to Respond to Cook's Motion for Summary Judgment on that Issue.

On the causation element of her design defect claim, Plaintiff waived any right to dispute the failure of the element by failing to offer any argument or evidence in support of causation in her response to Cook's summary judgment motion challenging that element.  Nothing in Plaintiff's most recent submission alters that waiver.  On the contrary, despite Cook's argument about waiver in its reply in support of summary judgment, *see* Dkt. 6510 at 6-8, and the Court's pointed questioning of Plaintiff's counsel at the October 16, 2017 hearing about Plaintiff's failure to respond to Cook's causation argument, Plaintiff's submission not only fails to persuade on the waiver issue, it fails even to ***mention*** it.

In its original motion, Cook specifically moved for summary judgment based on Plaintiff's inability to create a fact issue on causation for her design defect claim.  Cook argued that Florida law requires expert testimony on the causation element of a design defect claim and

---

[1] *See also* Dkt. 6511-1, Ex. Y, Zuzga Dep. Vol. II at 142:10-143:5 (noting he understood the risk of perforation included the specific risk that the filter could perforate the small intestine); *id.* at

US.114665266.10

that Plaintiff's only identified expert on specific causation, Dr. Marmureanu, offered no opinion that any design defect in Plaintiff's Celect IVC filter had actually caused Plaintiff's injuries. *See* Dkt. 5753 at 27-30. Cook thus met its initial burden under Rule 56—it established the absence of a genuine issue of material fact on causation and, absent production of conflicting evidence by Plaintiff, was entitled to summary judgment.

Plaintiff's response to Cook's motion, Dkt. 6161, failed to address Cook's causation argument in any way. Plaintiff did not dispute the facts Cook cited, did not question Cook's statement of the law, and did not challenge Cook's application of the law to the facts. Indeed, Plaintiff did not even use the word "causation" in her response to Cook's Motion for Summary Judgment.

Plaintiff's failure to respond in any way to Cook's causation argument waived her right to oppose that argument. *See, e.g., Goodpaster v. City of Indianapolis*, 736 F.3d 1060, 1075 (7th Cir. 2013) ("Because they did not provide the district court with any basis to decide their claims, and did not respond to the City's arguments, these claims are waived."); *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir.2010) ("Failure to respond to an argument ... results in waiver," and "silence leaves us to conclude" a concession.); *Myers v. Thoman*, 2010 U.S. Dist. LEXIS 107502, at *11, 2010 WL 3944654 (S.D. Ind. Oct. 6, 2010) ("The Seventh Circuit has clearly held that a party who fails to respond to points made ... concedes those points.").

Plaintiff cannot use her October 18 response to the Court's order as a "do over," a tardy attempt to provide evidence that she failed to argue in her original response. "As the 'put up or shut up' moment in a lawsuit,' summary judgment requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing

---

129:1-130:4; 133:13-18; 137:12-18 (noting Ms. Hill was specifically warned of the risk of

that there is a genuine dispute of material fact for trial." *Grant v. Trustees of Indiana Univ.*, 870

F.3d 562, 568 (7th Cir. 2017) (citation omitted), *reh'g and suggestion for reh'g en banc denied*

(Sept. 28, 2017).  Nothing in the Federal Rules contemplates a second bite at the apple,

especially for arguments that a party could have but did not make the first time around. *See, e.g.,*

*Bernstein v. Bankert*, 2011 U.S. Dist. LEXIS 10718, *3, 2011 WL 470430 (S.D. Ind. 2011)

("Reconsideration is appropriate to … present newly discovered evidence.") (internal quotations

and citations omitted).  Here, the great majority of the evidence that Plaintiff offers on both

product defect and causation is evidence that Plaintiff could have offered in her original

summary judgment response, but did not.  A party gets one opportunity to make the best

arguments and present the best evidence, and if she falls short in that effort, she cannot simply

take another shot. *See LG Elecs. v. Whirlpool Corp.*, No. 08 C 242, 2009 WL 5579006, at *4

(N.D. Ill. Nov. 23, 2009) (holding that defendant had "waived its arguments … by necessary

implication" by omitting the arguments from its reply).

      Nor can Plaintiff retroactively save the causation element of her design defect claim by

belatedly pointing the Court to places in the record where she says the Court could have found

evidence to support her argument had her original response pointed the Court there—which it did

not. *See* Ex. D, 10/17/2017 email from Joseph Williams to Tina Doyle.  Courts are not obligated

to hunt for facts to support a litigant's position; the litigant is required to point the court to the

evidence. *See, e.g., Firishchak v.  Holder*, 636 F.3d 305 (7th Cir. 2011) (quoting *Linrud v.

Linrud*, 552 N.W.2d 342, 345 (N.D.1996)); *see also Friend v. Valley View Cmty. Unit Sch. Dist.

365U*, 789 F.3d 707, 711 (7th Cir. 2015) ("As we have cautioned time and again, '[j]udges are

---

perforation).

not like pigs, hunting for truffles buried in [the record].'") (quoting *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991)).

Cook's motion for summary judgment established Cook's entitlement to summary judgment on Plaintiff's design defect claim based on a lack of evidence of causation, and Plaintiff failed to respond to that argument or to present any evidence supporting the causation element. Cook is entitled to summary judgment on that claim.

## III.   Plaintiff Has Failed to Demonstrate a Genuine Issue Of Material Fact on Her Claim That a Design Defect in the Celect IVC Filter Caused Her Claimed Injuries.

Even assuming that she had not conceded the causation element through her earlier failure to respond, Plaintiff's October 18 response fails to identify sufficient evidence to support that causation element. Again, because of the complex nature of medical devices and medical injury, Plaintiff must support that causation element with expert testimony. *See Schenone v. Zimmer Holdings, Inc.*, No. 3:12-CV-1046-J-39MCR, 2014 WL 12576790, at *3 (M.D. Fla. Aug. 8, 2014) (citing *Hughes v. Stryker Corp.*, 423 Fed. Appx. 878, 881 & n.4 (11th Cir. 2011) (citation omitted). Simply put. Plaintiff must proffer evidence (1) of a specific defect that (2) caused Plaintiff's injuries. It is not enough for Dr. McMeeking to merely assert a defect and describe an observed "tendency." Plaintiff was obligated to proffer actual evidence of a defect and evidence that that defect caused her injury. She has not. Although Plaintiff asserts that "ample evidence" supports causation, she spends most of this section presenting argument, not evidence.

The only expert Plaintiff cites for a causal link between a supposed design defect and the perforation of her filter is Dr. Marmureanu.[2] But Dr. Marmureanu's report offers no opinion that

---

[2] Notably, Plaintiff offers no testimony from her regulatory expert Dr. Kessler in either her defect argument or her causation argument. This omission strongly suggests that Plaintiff

any design defect in the Celect filter caused Mrs. Hill's perforation; indeed, his 17-page report on Mrs. Hill does not even mention the word "design." The *single passage* from Dr. Marmureanu's report that Plaintiff cites in attempted support of her claim that a design defect caused Plaintiff's perforation is his statement: "The perforation and penetration was caused (substantially contributed to) by the defective Cook Gunther Tulip filter which is due to the stiffness of the filter, resulting in excess radial force, and lack of perforation limiters on the filter struts." Dkt. 6886 at 12 (quoting Marmureanu Hill Rpt. at 12 (Plaintiff's Ex. Y)). What Plaintiff fails to tell the Court is that *this statement is all there is*; Dr. Marmureanu's report provides absolutely no analysis explaining or supporting this conclusory assertion. Dr. Marmureanu states in a footnote to the quoted passage that "I discuss stiffness and radial force in the main body of my report," *id.*, but *he does not in fact do so*. His General Report does not even *mention* the terms "stiffness" or "perforation limiters," and its only reference to radial force is in a statement that he intends to use animation at trial to "demonstrate" the issue—an issue that his report *does not address*. And although Plaintiff bravely attempts to tie Dr. Marmureanu's causation assertion to Dr. McMeeking's testimony about product defect, Dkt. 6886 at 12, Dr. Marmureanu never mentions Dr. McMeeking or any of his opinions and never attempts to tie his opinion's to any of the defects Dr. McMeeking alleges.

In fact, Dr. Marmureanu's testimony reveals that he has no idea what the alleged specific design defect in the Cook filter is supposed to be. He simply condemns "the filter as a whole"—indeed, *all* IVC filters, regardless of who makes them—and he does not know or (apparently) care about any specific defect in the design. He testified:

---

recognizes that Dr. Kessler's testimony simply is not relevant to her sole remaining claim, strict liability design-defect claim. Cook urges the Court to take this implicit concession into account in addressing Cook's pending *Daubert* motion to exclude Dr. Kessler's testimony.

Q.    In your report regarding Mrs. Hill's conclusion, have you reached the conclusion that Mrs. Hill's alleged injuries were caused by the design of the Celect filter?

A.    Well, I would say more than the design. They were design -- they were caused by the filter. It's not only the design. It's the metal in the filter that created the perforation. It's a poor design, but it's not only -- it's the way it was being -- the metal was being used with the design, the way it was welded with the design, the fracture they came up with the design. So it's not only the design. It's the filter as a total.

Dkt. 5754-10, Ex. S, Marmureanu Dep. at 325:3-16.  *See also id.* at 344:14-19 ("Could be the design. Could be the material the filter is made of."); *id.* at 349:18-24 ("it's the design and the material, and not only just the poor workmanship that perhaps went into the R&D, and the filter tilted then perforated").  Dr. Marmureanu's assertion that some defect in the Celect IVC filter caused Plaintiff's perforation is unsupported by authority or analysis and fatally undermined by his deposition testimony.  "An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Mid-State Fertilizer Co. v. Exchange Nat. Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir. 1989).  Dr. Marmureanu's single conclusory assertion is insufficient to support the element of causation here.

Plaintiff also asserts that a "tendency" to perforate is sufficient evidence to support causation, citing *Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307 (M.D. Fla. 2015).  Dkt. 6886 at 12-13.  Plaintiff claims that *Tillman* "held that evidence of a propensity to perforate was sufficient to defeat summary judgment." *See* Ex. D, 10/17/2017 email from Joseph Williams to Tina Doyle; *see also* Dkt. 6886 at 13 (arguing *Tillman* court held "tendency" was sufficient to "raise a fact issue on causation").  But Plaintiff ignores two aspects of the *Tillman* case that make it much different from Plaintiff's claims and that undercut any application of its holding here.

First, as Plaintiff herself pointed out in her summary judgment response, the *Tillman* decision did not address causation under the "consumer expectations" standard for design that Plaintiff successfully urged the Court to adopt in the present case.  *See* Dkt. 6161 at 4 (arguing

13

*Tillman* court did not have the benefit of the *Aubin* decision's adoption of the "consumer expectations" standard). Instead, the *Tillman* court applied the risk-benefit standard that this Court has rejected, and in fact premised the existence of a fact issue ***expressly*** on an application of the risk-benefit standard: "there is sufficient evidence to support a finding that the Filter is unreasonably dangerous due to its design because its propensity to migrate, tilt, perforate the IVC, and fracture ***outweigh its benefits*****." 96 F. Supp. 3d at 1348 (emphasis added). In other words, Plaintiff now tries to save her design defect claim by invoking *Tillman's* application of the very risk-benefit test that she successfully urged this Court to reject. The *Tillman* holding does not apply here.

Second, Plaintiff ignores the factual context of the *Tillman* court's holding that propensity is sufficient to create a fact issue on causation. The injury claim that the *Tillman* court was addressing in this causation holding was not a claim that the filter had ***actually*** caused plaintiff a compensable physical injury, *id.* at 1320 ("there is no evidence that the Filter implanted in Tillman's IVC has fractured"), but a claim that the plaintiff needed ongoing medical monitoring because her still-implanted filter had tilted and ***might*** fracture in the future. *Id.* at 1322 ("Tillman contends that the Filter is defectively designed such that it poses an unreasonable risk of fracture and requires her to obtain ongoing medical monitoring"). Because the plaintiff sought compensation for the result of the ***risk*** of injury, not the injury itself, the Court concluded that evidence of the existence of that risk—the filter's ***propensity*** to fracture— was sufficient to permit the jury to conclude that the risk had caused the need for ongoing monitoring. *See id.* at 1341 ("She also presents evidence that these aspects of the Filter's design [the propensity to fracture, perforate, or migrate] have damaged her in that the resulting risk of fracture requires Tillman to obtain ongoing medical monitoring.").

14

US.114665266.10

Plaintiff's situation is quite different.  Plaintiff's Celect filter has already been removed, and she faces no possible future risk from any claimed tendency of the Celect filter to perforate. Therefore, unlike the plaintiff in *Tillman,* she could not and does not seek damages arising from an unrealized risk or "tendency" of the Celect filter.  Instead, she claims the risk was ***realized***, and that the design of her Celect filter ***actually*** caused her ***physical*** injury by perforating her IVC.  Proof that a defect in the design of the Celect filter ***actually*** caused Plaintiff's particular filter to perforate and cause such a ***real*** physical injury requires evidence of more than the filter's mere ***tendency*** to perforate; it requires evidence that a defect in the product the design "contributed substantially to producing" the injury.  *See, e.g.,* Fla. Std. Jury Inst. 401.12.

Evidence of a mere "tendency" to perforate does not provide the required "substantial contribution" in the circumstances here.  *See* Dkt. 5754-9, Ex. R, Marmureanu Hill Report. at 1 ("Ms. Hill's Celect filter failure was caused by the Celect filter's tendency to perforate the IVC and progressively perforate.").  Dr. Marmureanu's statement that Celect filters have a "tendency" to perforate is simply an observation (which Cook disputes) that Celect filters "tend" to perforate, a correlation between the use of the Celect filter and perforation.  And as many courts have observed, "correlation is not the equivalent of causation." *E.g., Davis v. Time Warner Cable of Southeastern Wisconsin, L.P.*, 651 F.3d 664, 677 (7th Cir. 2011).  To establish causation, one would need to rule out "confounders"—other potential causes of the two sets of events—such as hot weather.  With respect to the Celect, a number of factors other than product design might account for the observation that the Celect has a "tendency" to perforate, including physician experience, patient age, medical indications for filter use, contraindications for anticoagulant drugs, surgeon-related factors, and patient-specific factors.  Dr. Marmureanu has done nothing to rule out or otherwise account for such confounders.  And without the consideration of

15

confounders, Plaintiff's own expert Dr. Betensky has confirmed that a mere correlation between Celect filters and perforation—a "tendency" of Celect filters to perforate—cannot demonstrate causation, and that any attempt to argue otherwise would be improper and unscientific. Dkt. 5672-2, Ex. B, Betensky Dep. at 204:21-205:8.

Plaintiff's third argument requires little response. Plaintiff argues that because a filter is always involved when a filter perforates, the filter must "cause" the perforation. *See* Dkt. 6886 at 13-14. Therefore, Plaintiff argues, because the fact that Plaintiff's filter perforated her IVC is "obvious," the filter must have caused the perforation. *Id.* But this argument is obviously circular and ultimately useless, and Plaintiff cites no authority to support it. The question here is not whether the filter caused the perforation; the question here is whether a ***design defect*** in the Celect IVC filter ***caused*** the filter to perforate the IVC. That causation is far from "obvious," and Plaintiff's argument does nothing to support her claim.

Finally, Plaintiff argues that Dr. Marmureanu creates an issue of fact on causation by opining that the perforation of Plaintiff's Celect IVC filter caused Plaintiff to experience IVC stenosis, scarring, inflammation, and other symptoms. But Plaintiff's argument is too far down the causal chain. Even assuming *arguendo* that Plaintiff were correct and Dr. Marmureanu provided evidence that Plaintiff's perforation caused certain symptoms, that conclusion does nothing to address the critical threshold causation question: what caused Plaintiff's perforation in the first place: a design defect, a risk inherent in all filters, or some other factor? Dr. Marmureanu purports to link symptoms to perforation, but he ***does not link perforation to a design defect***. That is the critical gap in the causal chain, and Plaintiff's October 18 submission does nothing to fill it. Nothing in Dr. Marmureanu's or any other expert's report creates a jury question on whether any specific design defect caused Plaintiff's injuries.

16

**IV.    Plaintiff Cannot Demonstrate a Genuine Issue of Material Fact on Her Claim that the Design of the Celect IVC Filter was Defective.**

The evidence Plaintiff cites in support of her design defect claim in her October 18, 2017 response also is insufficient as a matter of law to create a jury issue on whether her Celect IVC filter has a defect in its design.  The opinions of the single expert Plaintiff offers on design defect, Dr. Robert McMeeking, does not support a defect in the design of her Celect IVC filter. Absent expert testimony supporting defect, Plaintiff's design-defect claim fails as a matter of law.  *See Malvaes v. Constellation Brands, Inc.*, No. 14-21302-CIV, 2015 WL 3874815, at *2 (S.D. Fla. June 23, 2015) (design-defect claim fails without expert testimony of defect); *Fagundez v. Louisville Ladder, Inc.*, Case No. 10–23131, 2011 WL 6754089, at *2 (S.D. Fla. Dec.22, 2011) (collecting cases).

Plaintiff fails to identify any opinions by Dr. McMeeking that demonstrate a specific design defect in the Celect.  Plaintiff hangs her hat on what amounts to three alleged "design flaws" identified by Dr. McMeeking: "excessive stiffness of filter materials, excessive radial force, and the lack of perforation limiters," all of which he says make the Celect "likely" to tilt or perforate.  Submission at 12.  There are at least four fundamental problems with this testimony (besides the fact that it is inadmissible).

First, Dr. McMeeking concedes **he does not know how much force is necessary to perforate the human vena cava**.  Ex. E, McMeeking Dep. 109-10, 120.  If he does not know that, then he cannot legitimately claim (as he does) that the Celect is "likely" to perforate the human vena cava generally, let alone that it was likely to perforate Plaintiff's vena cava in particular.

Second, Dr. McMeeking repeatedly conceded that **he conducted no test to demonstrate that the absence of the alleged flaws would have reduced perforation**.  Here is just one example:

> A:   My assessment of perforation limiters is they would help to both inhibit migration, inhibit tilting, inhibit perforation.  And because fracture is often associated with perforation, to inhibit fracture, as well.  So I see multiple benefits in some designs that you could invoke for the purpose of limiting tilt.
>
> Q.   Okay.  **But you haven't done any testing, though, to see whether in fact that would have the effects that you've suggested; correct**?
>
> A.   **I have not done any bench testing of the filter.**

(Ex. E, McMeeking Dep 65-66 (emphasis added).  This testimony is very problematic because Seventh Circuit cases "have consistently recognized the importance of testing the alternative design."  *Dhillon v. Crown Controls Corp.,* 269 F.3d 865, 870 (7th Cir. 2001); *accord Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 895 (7th Cir. 2011); *see also  Cummins v. Lyle Indus.*, 93 F.3d 362, 368-69 (7th Cir. 1996) (citing cases).  Cook acknowledges that a plaintiff need not demonstrate a "reasonable alternative design" to prevail on a design-defect case, but Cook is not insisting that she or her expert do so.[3]  Indeed, it is **Plaintiff** who stakes her claim on Dr. McMeeking's theory that the Celect is defective because it <u>lacks</u> certain features. As an expert, he must do something to ***prove*** that theory, but he does not even try.  He repeatedly concedes that he never tested the filter as it is, ***or as it would be if it had the features he touts***. *See, e.g.*, McMeeking Dep. 66.  He simply speculates that Cook could have made the filter "better," but never bothers to support his speculation with any testing or evidence. He would be asking the

---

[3] In any event, evidence of a reasonable alternative design may be evidence of a design defect, *see Aubin v. Union Carbide Corp.*, 177 So. 3d 489, 511 (Fla. 2015), and Dr. McMeeking does not provide that evidence.  Dr. McMeeking's proposed "reasonable alternative designs" are neither reasonable nor truly alternatives, and thus provide no evidentiary support for a claim of design defect in the Celect.

jury to simply take his word for it because he is an expert.  That is improper.  *See Mid-State Fertilizer*, 877 F.2d at 1339.

Third, while Dr. McMeeking claims that adopting his preferred measures would have "reduced the tendency for the legs to perforate [and] for the filter to tilt" (Report at 49), he never says in his report or his deposition **by how much** it would reduce that "tendency," or (more importantly) whether it would have **prevented** Ms. Hill's filter from tilting or perforation.

Finally, Dr. McMeeking admitted that he has no idea whether his proposed features would actually **increase other risks** in the filter:

> Q.  Is there anything other than the penetration limiters that you mentioned with respect to the Celect platinum that you believe would have reduced the risks of Celect and the Tulip filters without giving up any of the benefits of those filters?  Anything other than the penetration limiters you mentioned?
>
> * * *
>
> A.  The -- some of the other suggestions that I made, such as changing the material and such as changing the design of the shape of the limbs, would have to be assessed very carefully to make sure they were not compromising some risks that were otherwise relevant to the filter.
>
> Q.  You don't know, as you sit here today, whether those changes would actually increase other risks imposed by the filter; correct?
>
> * * *
>
> A:  **Without making a specific assessment, I am not in a position to -- to comment on that or to make that assessment.**
>
> Q.  You are not in a position today, as you sit here, to say whether those changes that you suggested would preserve all of the benefits of the filter without any reduction of the benefits; correct?
>
> * * *
>
> A.  The -- since that addresses medical benefits, **I'm not in a position to make assessment of the benefits**.  But I recognize that the risks may move up or down when changes are made to the design of the filter.

US.114665266.10

Ex. E, McMeeking Dep. 315-16 (emphasis added; counsel's objections and comments omitted). Without the ability to assess whether a different design would have created additional (perhaps worse) risks, Dr. McMeeking cannot establish that the Celect's actual design is defective.

So in short, Dr. McMeeking's opinion basically is: "If Cook would done X, Y, and Z, I think they would've reduced the occurrence of perforation. I haven't tested to see whether that's true, I can't say by how much it would've reduced perforation, and I can't say that other risks wouldn't have gone up, but I'm sure that my ideas would've helped reduce perforation." That is simply not enough to allow a reasonable jury to conclude (without speculating) that the Celect was defective—let alone that any specific defect *caused* Ms. Hill's injury. For all we know, based even on Dr. McMeeking's own opinions, a device with perforation limiters, made of different materials, and having different diameter struts, might *still* have tilted, embedded, and perforated Ms. Hill's inferior vena cava. Dr. McMeeking cannot and does not rule that out, which means that his opinion cannot carry the day for Plaintiff.

In sum, Plaintiff's October 18 submission cites nothing in Dr. McMeeking's report that is sufficient to support Plaintiff's claim that her Celect IVC filter was defective because of its design.

## V.   Plaintiff's Submission Reinforces the Justification of Bifurcating the Trial of the Compensatory and Punitive Damages Phases of This Case.

Finally, Plaintiff's October 18 submission, combined with the Court's October 17, 2017 Order granting summary judgment on Plaintiff's negligent testing claim, reinforce the need to bifurcate the compensatory and punitive phases of any trial in this case.

Plaintiff's sole remaining claim, strict-liability design defect, focuses on the safety of the product at issue, not the manufacturer's conduct or exercise of care toward to that product. *See, e.g.*, Fla. Std. Jury Inst. 403.7 (citing Restatement (Second) Torts, § 402A(2)(a)). As a

US.114665266.10

consequence, all the evidence of Cook conduct that Plaintiff proposed to offer in support of her now-dismissed negligence claims is irrelevant to the trial of her claim for compensatory damages based on strict-liability design defect.  If such evidence of conduct evidence has any relevance at all, that relevance could be only to Plaintiff's claim for punitive damages.

This divergence of the relevance of Plaintiff's evidence—with product-related evidence relevant to her compensatory damages claim and conduct-related evidence relevant only to the punitive damages claim—supports the bifurcation of the trial of the compensatory and punitive damages claims into two trial phases.  Because the evidence relevant to the compensatory and punitive damage claims is now clearly different, any concern over the repetition of evidence in a two-phase trial is all but gone.  Indeed, Plaintiff's October 18, 2017 submission concerning the evidence supporting her strict-liability design defect claim bolsters this conclusion—the great majority of the evidence that Plaintiff cites in support of that claim deals only with the Celect product, and not with the conduct of Cook.  The Cook Defendants urge the Court to take its October 17th order and its limiting effect on the evidence into account in considering Cook's pending motion to bifurcate.  *See* Dkt. 620, 621, 648.

US.114665266.10

Respectfully submitted,


Dated: October 19, 2017                  /s/ *Andrea Pierson*
                                         Andrea Roberts Pierson (# 18435-49)
                                         John T. Schlafer (# 28771-49)
                                         FAEGRE BAKER DANIELS LLP
                                         300 North Meridian Street, Suite 2700
                                         Indianapolis, Indiana  46204
                                         Telephone: (317) 237-0300
                                         Facsimile:  (317) 237-1000
                                         E-Mail:  andrea.pierson@faegrebd.com
                                         E-Mail:  john.schlafer@faegrebd.com

                                         *Counsel for the defendants, Cook Incorporated,*
                                         *Cook Medical LLC (f/k/a Cook Medical*
                                         *Incorporated), and William Cook Europe ApS*

US.114665266.10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 19, 2017, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.  Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

*/s/ Andrea Pierson*