# Exhibit B

CONFIDENTIAL -SUBJECT TO PROTECTIVE ORDER

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF INDIANA
 2                    INDIANAPOLIS DIVISION
 3              CASE NO.   1:14-ml-2570-RLY-TAB
                    MLD NO.    2570
 4
 5   IN RE: COOK MEDICAL, INC., IVC
     FILTERS MARKETING, SALES PRACTICES
 6   AND PRODUCTION LIABILITY LITIGATION
 7   _____/
 8
                    2808 West Dr. MLK Jr. Boulevard
 9                        Tampa, Florida
                     8:35 a.m. to 10:00 a.m.
10                       April 26, 2017
11
12      VIDEOTAPED DEPOSITION OF ANTHONY MORENO, M.D.
13
14           Taken on behalf of COOK MEDICAL, INC. before
15   Kim Auslander, RPR, CRR, Notary Public in and for the
16   State of Florida at Large, pursuant to Notice of Taking
17   Deposition in the above cause.
18
19
20
21
22
23
24
25
```

Page 6

1  for example, than another filter, one filter has a
2  lesser recovery rate, would you prefer that the filter
3  be used be the one with the least amount of risk to the
4  patient and the highest rate of recovery?
5      MR. WEBBER: Same objection.
6      You can answer.
7  A  Well, you know, I leave it up to the physician
8  who I refer the patient to, whether it is a vascular
9  surgeon or interventional radiologist, to make that
10 decision on which filter, in their experience, is best.
11     I know from my experience with implants that
12 sometimes those factors are hard to judge, and sometimes
13 that takes a lot of time in clinical time to figure that
14 out, but of course whatever is the safest and best for
15 my patient I want, absolutely.
16 Q  Okay. And I guess that kind of gets back to
17 my question in a way. If it was shown that there were
18 filters other than the select she received that would
19 have provided her with less risk of perforation, would
20 you, in that narrow hypothesis, prefer a filter that
21 provided less risk for perforation?
22     MR. WEBBER: I object to form and foundation.
23     You can answer.
24 A  You know, obviously, I think the less risk to
25 the patient the better, but I think those things, like I

Page 7

1  said, take a lot of time to prove, and I think whether
2  one filter is better than the other, I really don't
3  know, and I think there's probably, you know, doctors in
4  the US that could, you know, opine in that direction
5  better than I can.
6  Q  That's simply not part of what your practice
7  is?
8  A  Right. Exactly.
9  Q  Thank you.
10     Doctor, I've marked as Exhibit 8 to your
11 deposition. That -- you signed the consent to keep
12 information confidential from the deposition; is that
13 correct?
14 A  Yes.
15 Q  I appreciate that.
16     I'm quickly going to hand you what's been
17 marked as Exhibit 9 to your deposition and ask you if
18 you've ever seen these images before.
19 A  Yes.
20 Q  Okay. And what are those images, as far as
21 you understand it?
22 A  Well, the patient showed me these. These are
23 the images, I guess, when she had a scope, an endoscopy,
24 and they show the prongs of the filter in her bowel.
25 Q  And can you tell me what part of the body do

Page 8

1  we see in that photograph?
2  A  Again, out of my realm of specialty, but it
3  looks like bowel to me.
4  Q  Okay. You understand -- or do you understand
5  that after placement of the filter for her back surgery,
6  Ms. Hill suffered a complication; that being perforation
7  of her duodenum --
8  A  Yes.
9  Q  -- by the filter?
10 A  Sure.
11 Q  That is a picture she showed you after that
12 had been detected?
13 A  Yes. After she had it removed, I believe. It
14 was already fixed.
15 Q  And let me just ask you, Doctor, if you
16 could -- I know we're kind of teaching school here --
17 but if you could hold that up so the camera could see
18 it, too.
19     My quick question for you, Doctor; certainly
20 that is not a medical result that you would have
21 expected for Ms. Hill when you advised about putting the
22 filter in?
23     MR. WEBBER: I object to form.
24     You can answer.
25 A  First of all, I didn't put the filter in, and

Page 9

1  I'm not an expert at looking at filters or bowel, so if
2  you want to hand me an X ray with some screws in the
3  spine, then I'm probably a little bit better, but it's
4  probably better that the physicians who put these in --
5  but, you know, I think that's the filter and this is the
6  bowel, but, again, it's out of my realm of specialty.
7  Clearly I don't look at bowel pictures, you know, I
8  would say never; unless it's mine or my family's.
9  Q  Let me just ask it this way then, Doctor, real
10 quick. When you requested a vascular -- was it a
11 vascular surgeon consult?
12 A  Usually it is, yes.
13 Q  -- regarding the filter for Ms. Hill --
14 A  Yes.
15 Q  -- and the filter was placed, did you have any
16 expectation that Ms. Hill was going to suffer a
17 perforation of her duodenum as a result of having that
18 filter placed?
19     MR. WEBBER: I object to form and foundation.
20     You can answer.
21 A  What is the question; did I think she was
22 going to have a complication in general?
23 Q  Did you expect the filter would be perforating
24 her duodenum when you requested it be placed?
25 A  I always tell patients that the filters do

CONFIDENTIAL -SUBJECT TO PROTECTIVE ORDER

Page 10

1 have complications, and the surgeons are going to go
2 over it, and they are not perfect, and some of them we
3 can't take out.
4     But I leave the -- again, since I don't put
5 them in -- you know, if you do a procedure on a patient,
6 such as when I do the surgery on Ms. Hill, you go
7 through all the potential complications.
8     The surgeon who puts the filter in or the
9 radiologist who puts the filter in goes through all the
10 potential complications, so --
11     (Phone ringing.)
12     MR. ARBON: I apologize.
13  Q  Perforation of Ms. Hill's bowel is certainly
14 not a result that medically would have been desired
15 medically, correct?
16     MR. WEBBER: Objection to form and leading.
17     You can answer.
18  A  Again, you know, I am not an expert at
19 filters, but obviously she had a complication with the
20 filter. The filter was removed.
21  Q  Doctor, have you had any communications or
22 discussions about Ms. Hill's case with Mr. Webber
23 outside of the deposition, the last deposition?
24  A  We may have had a phone call or a conversation
25 a long time ago; six months ago, eight months ago, but I

Page 11

1 don't recall the context of the conversation. Maybe
2 just he introduced himself and said he was working
3 for --
4     THE WITNESS: Is it Cook?
5     MR. WEBBER: Yes.
6  A  -- the manufacturer, and this was going on,
7 and then I explained to him, you know, how I use filters
8 and why I use them.
9  Q  Okay. Have you had a conversation with
10 anybody else with his firm that you know of outside of
11 the course of this deposition?
12  A  Not that I recall.
13  Q  Have you had any conversations with Mr. Webber
14 or anyone from his firm since your last -- when we
15 started the deposition?
16  A  No.
17     MR. ARBON: I'm going to go ahead and pass the
18     witness, and I will reserve any time I have left
19     for additional questions.
20         EXAMINATION
21 BY MR. WEBBER:
22  Q  Good morning, Doctor. My name is Chuck
23 Webber. We met a couple times.
24  A  Yes.
25  Q  I am going to show you what we marked as

Page 12

1 Exhibit 10.
2     My understanding is that Exhibit 10 is your
3 medical chart, your medical records relating to
4 Ms. Hill. We received these from your office.
5     I just wanted to have you verify that quickly,
6 if you can, this is what we received, and you can read
7 as much of it as you want, but --
8  A  Yes. It looks like part of my records, yes.
9  Q  I will represent to you this is what we got
10 from your office.
11  A  Yes.
12  Q  And are these records that we're looking at in
13 Exhibit 10, are these notes and statements that relate
14 to your medical treatment or diagnosis of Ms. Hill?
15  A  Yes.
16  Q  And do they describe her medical history, her
17 symptoms, her sensations, their cause, things like that?
18  A  Yes.
19  Q  And you wanted these to be accurate, I assume?
20  A  Yes.
21  Q  And wanted them to be complete?
22  A  Yes.
23  Q  And were these notes that we see here made at
24 or around the time that you observed the events that are
25 recorded here?

Page 13

1  A  Yes.
2  Q  Okay. And these notes are kept in the
3 ordinary course of your practice?
4  A  Yes.
5  Q  And it's your regular practice to keep and
6 make records such as these?
7  A  Yes.
8  Q  Okay. Great.
9     Doctor, I want to talk to you -- I may jump
10 around a little bit just because I'm trying to structure
11 this for the time we have -- I want to start with the
12 surgery itself, if I might.
13     You did your surgery on Ms. Hill on
14 December 6th of 2010, I believe; does that sound
15 correct?
16  A  Yes.
17  Q  Okay. And do you recall -- I want to start
18 first with whether you used an anterior or posterior
19 approach with her.
20  A  Posterior approach.
21  Q  Okay. And so does that mean that she was on
22 her stomach the whole time?
23  A  Yes. From the back of the spine.
24  Q  Okay. Was that true throughout the surgery,
25 was she on her stomach, or were there periods of time

4 (Pages 10 - 13)