**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates to the Following Actions only:

    Elizabeth Jane Hill
    No. 1:14-cv-06016-RLY-TAB

**THE COOK DEFENDANTS' BENCH BRIEF ON**
**EVIDENCE RELEVANT TO CONSUMER EXPECTATIONS**

Defendants Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS (collectively, the "Cook Defendants" or "Cook") submit the following bench brief to address issues with respect to evidence that Plaintiff may claim to be relevant to the "consumer expectations" standard for design defect that this Court has adopted—whether the Celect filter failed to perform as safely as an ordinary doctor in the position of Mrs. Hill's doctor would expect when used as intended or when used in a reasonably foreseeable manner. Specifically, Cook expects Plaintiff will attempt to justify the admission at trial of a wide variety of unrelated evidence on the pretext that the evidence is relevant to doctors' expectations. This brief is submitted in anticipation of such attempts.

**ARGUMENT**

**1.      The "consumer" whose expectations are relevant is the doctor, not the patient.**

The parties agree that under the circumstances of this case, the "consumer" in the consumer expectations standard is Dr. Zuzga as Plaintiff's treating physician, and not Plaintiff herself as the patient. *See* October 12, 2017 Hearing Transcript, at 42:21-22 (Plaintiff "concede[s] the doctor is the consumer under Florida law"). Case law from around the country supports this conclusion. *See, e.g., Moss v. Wyeth Inc.*, 872 F.Supp.2d 162, 170-71(D. Conn. 2012) (holding in applying consumer expectations test to claim of design defect in drug "the relevant expectations are those of the physician, not the ultimate consumer"); *St. Clair v. Nellcor Puritan Bennett LLC*, No. CV-10-1275-PHX-LOA, 2011 WL 5331674, at *6–7 (D. Ariz. Nov. 7, 2011) ("as to this medically-related product, the ordinary consumer under the consumer expectation test is the physician who used the [medical device at issue]")(applying Arizona law); A*dams v. Synthes Spine Co., LP.*, 298 F.3d 1114, 1117 (9th Cir. 2002) (explaining the "consumer" of a prescription-only medical device is the prescribing physician)(applying Washington law).

**2.      Doctors' expectations are measured by an objective standard.**

The parties also agree that the consumer expectation standard is an ***objective*** standard, *i.e.*, that the standard looks at what an ordinary doctor would reasonably have expected, not what any specific doctor ***actually*** expected. *See* Pl. Supp. Br. on Design Defect (Dkt. 6886) at 9 (addressing "the ordinary expectations of implanting physicians"). Florida law supports this objective standard. *Hobart Corp. v. Siegle By & Through Hoerber*, 600 So. 2d 503, 505 (Fla. 3d DCA 1992)(noting that both risk-utility and consumer expectations test require application of objective standard to determine product defect).

### 3. Proof of a doctor's reasonable expectations concerning the safety of a complex medical device requires expert testimony.

Florida decisions requiring expert testimony to prove similar elements in multiple contexts make clear that Plaintiff here must offer expert testimony on doctors' expectations to support her design defect claims.[1]  Florida courts require expert testimony on matters "simply too esoteric to be understood by the average juror." *AMH Appraisal Consultants, Inc. v. Argov Gavish P'ship*, 919 So. 2d 580, 582 (Fla. Dist. Ct. App. 2006); *see also Ins. Co. of the W. v. Island Dream Homes, Inc.*, 679 F.3d 1295, 1298 (11th Cir. 2012) (holding claim of negligent roofing failed absent expert testimony, holding: "Expert testimony is required to define the standard of care when the subject matter is beyond the understanding of the average juror.") (applying Florida law); *AMH Appraisal Consultants, Inc. v. Argov Gavish P'ship*, 919 So.2d 580, 581-82 (Fla. 4th Dist. Ct. App. 2006) (holding that the standard of care for a property appraiser was "too esoteric to be understood by the average layperson").

Issues concerning medical knowledge and judgement are frequently beyond the understanding of an average juror, and so require expert testimony. *See, e.g., Sims v. Helms*, 345 So. 2d 721, 723 (Fla. 1977) ("[E]xcept in rare cases [where the issue is obvious], neither the court nor the jury can or should be permitted to decide, arbitrarily, what is or is not a proper diagnosis or an acceptable method of treatment of a human ailment.") (internal citations omitted).  And of course, as noted on Cook's summary judgment motion, Florida law requires expert proof of product defect in strict liability cases, the situation presented here. *See, e.g., Thornton v. M7 Aerospace LP*, 796 F.3d 757, 773 (7th Cir. 2015) ("failure to come forward with expert testimony regarding any alleged design defect or dangerousness is fatal to their claim");

---

[1] Because of the recency of the Aubin decision, understandably, no Florida court has yet directly addressed the specific issue of whether proof of a doctor's "expectations" concerning the safety of a complex medical device requires expert testimony.

*Malvaes v. Constellation Brands, Inc.*, No. 14-21302-CIV, 2015 WL 3874815, at *2 (S.D. Fla. June 23, 2015) (design-defect claim fails without expert testimony of defect); *Fagundez v. Louisville Ladder, Inc.*, Case No. 10–23131, 2011 WL 6754089, at *2 (S.D. Fla. Dec.22, 2011) (collecting cases).  Given this precedent, Plaintiff cannot reasonably dispute that she needs to establish the reasonable safety expectations of doctors in Dr. Zuzga's position through expert testimony.

The few courts in other jurisdictions that have addressed this issue agree, requiring expert evidence to prove consumer expectations in design defect cases.  These decisions address both claims involving medicals devices, *see, e.g., Cappellano v. Wright Med. Grp., Inc.*, 838 F. Supp. 2d 816, 830–31 (C.D. Ill. 2012) (requiring expert testimony to demonstrate that a hip prosthesis was unreasonably dangerous under consumer expectation test, explaining product was a "complex device" that "can fail for many reasons," and is "beyond a lay jury's understanding") (applying Illinois law); *Koger v. Synthes N. Am., Inc.*, No. 3:07-CV-01158 WWE, 2009 WL 5110780, at *2 (D. Conn. Dec. 17, 2009) (requiring expert testimony under "modified consumer expectation test" because "implanted medical screws are medical devices that are outside of the ordinary consumer's common knowledge) (applying Connecticut law), and cases involving other complex products.  *See, e.g., Show v. Ford Motor Co.*, 659 F.3d 584, 587 (7th Cir. 2011) (affirming summary judgment on claim that car had design defect, holding that it "takes expert evidence to establish a complex product's unreasonable dangerousness through a consumer-expectations approach."), *Scantlin v. Gen. Elec. Co.*, 690 F. App'x 558, 558–59 (9th Cir. 2017) (requiring "expert testimony to support [plaintiff's] consumer expectations theory of design defect" where "[t]he workings of the industrial switchboard and its internal barrier were 'sufficiently beyond common experience that the opinion of an expert [was] required'")(applying

4

California law).  Clearly, the expectation of physicians like Dr. Zuzga regarding IVC filters is beyond the common experience of jurors.

### 4. Plaintiff intends to use the "consumer expectations" standard to justify the admission of evidence that has no bearing on the standard.

Faced with (1) the Court's dismissal of most of her claims (negligence per se, strict-liability and negligent failure to warn, negligent design, and negligent testing), and (2) the exclusion of multiple categories of her evidence (including individual Cook complaint files, Dr. Kessler's testimony on industry standards, previously undisclosed expert opinions, and witness testimony about documents about which they have no personal knowledge) (Dkt. 6850), Plaintiff now has made clear her intention to try to gain the admission of a large body of this excluded or now-irrelevant evidence by trying to tie that evidence, however tenuously, to the consumer expectations standard of her sole-remaining claim, strict liability design defect.  The Court should reject these efforts for two reasons:  (1) the evidence has no bearing on what expectations about the safety of the Celect IVC filter a reasonable doctor in Dr. Zuzga's position would have had in 2010, and (2) the evidence has no relation to expert testimony with which Plaintiff must prove those expectations—expert testimony that Plaintiff does not have.

First, most of the evidence that Cook anticipates Plaintiff will now seek to offer under the rubric of "consumer expectations" has no bearing on that expectations issue at all, and plaintiff's own strained explanations demonstrate that conclusion.  For example, Plaintiff attempts to justify her designation of Kem Hawkins' testimony about the growth in the size and wealth of the company (designating Hawkins Dep. at 22:20-22, 23:12-14:12), notwithstanding the Court order excluding such evidence, Dkt. 6850 at 3 (¶ 19), with the following explanation:

5

> Statement re wealth is not being offered to prove size or wealth but rather that under Hawkins business grew rapidly and he was a successful leader. Further exhibit is relevant because increases in sales and size during Hawkins' tenure demonstrate motivation behind product design decisions, which <u>speaks to risk/benefit and consumer expectation</u>.
> Prejudice does not outweigh probative value because <u>purpose is not simply to show Cook size/wealth in a prejudicial way, but rather to show changes in sales and employment which are relevant to motivation behind product design decisions</u>. The Court has not excluded this sort of testimony concerning increases in sales or employment insofar as those increases speak to product design considerations.

Pl. Resp. to Cook Obj. to Pl. Designations of Hawkins (emphasis added). To say that this proposed three-step journey from corporate growth to consumer expectations is speculative is to understate the case. Level of growth does not logically "demonstrate" the motivation for product designs, and corporate motivation does not "speak to" consumer expectation in any coherent way. The explanation simply does not make sense.

Similarly, also in the context of the Hawkins deposition, Plaintiff tries to justify the admission of adverse events and complaints in emails (including death complaints) concerning *Tulip* filters (designating Hawkins Dep. at 56:3-15 & Exh. 6) based on their supposed link to "consumer expectations" about the *Celect* filter:

> Email (Exhibit 6) is relevant because it is about adverse events associated with the <u>Tulip, which contributed to filter design elements and which speaks to risk/benefit and consumer expectation</u>.

Pl. Resp. to Cook Obj. to Pl. Designations of Hawkins (emphasis added). Again, Plaintiff's argument that adverse events relating to *Tulip* IVC filters somehow inform doctors reasonable safety expectations concerning *Celect* IVC filters is so attenuated as to be all but imaginary.

As these creative examples show, Cook cannot possibly anticipate either all the obsolete evidence relating to dismissed claims and excluded testimony that Plaintiff may try to re-characterize as relating to consumer expectations or the inventive chains of illogic that Plaintiff may urge in support of that re-characterization, and Cook thus cannot ask the Court here to

exclude specific documents or testimony on these grounds. Cook submits this brief to alert the Court to the type of evidentiary tactics Cook expects and to provide the Court with a preview of the issue for when it arises at trial.[2]

Second, Plaintiff cannot justify the admission of her leftover evidence based on the consumer expectations element of her design defect claim because none of that evidence could possibly support the expert testimony on which she must base her proof of that element. As discussed above, the nature of the consumer expectations proof required under the circumstances of this case—the reasonable expectations of IVC filter placement specialists like Dr. Zuzga concerning the safety of the Celect IVC filter in 2010—dictates that the element can only be satisfied through expert testimony. However, *none* of Plaintiff's experts has disclosed *any* opinion on the issue of doctors' reasonable safety expectations or the question of whether Celect met or failed to meet those expectations.[3] And the Court has of course ruled that experts may not testify to opinions they have not disclosed. *See* Dkt. 6850 at 2 (granting Cook motion "to bar expert opinions not disclosed in that expert's report").

---

[2] In addition, of course, Plaintiff cannot possibly claim that any document or conduct after her filter left Cook's possession in 2010 can assist her in meeting the consumer expectations test. *See Aubin v. Union Carbide Corp.*, 177 So. 3d 489, 513 Fla. 2015) (holding that defectiveness of product under consumer expectations test is measured "'at the time it leaves the seller's hands'" (quoting Restatement (Second) of Torts § 402A cmt. g. (1965)).

[3] Indeed, some of Plaintiff's experts would not be qualified to express an opinion on this issue in any event because they lack expertise in the medical community whose expectations are at issue, doctors who implant IVC filters. For example, Plaintiff's regulatory expert Dr. Kessler disqualified himself from commenting on that community because he has never been part of it:

    [Q]    [I]s it fair to say, Dr. Kessler, 21 that you have, you have not been a member of the medical community of interventional radiologists, vascular surgeons, and interventional cardiologists who place filters?
    A.    Yeah, that's -- I don't live in that world, per se. I interact with that world, but I don't live in that world. I'm not a specialty.

Kessler Dep. at 136:20-137:2.

Given the absence of any expert testimony from Plaintiff's experts in support of her consumer expectations claim, Plaintiff cannot argue the relevance or justify the admission of any of her "orphan evidence" from other claims based on the ground that such evidence supports any expert opinion on consumer expectations. Because none of Plaintiff's experts has disclosed any opinion on doctors' expectations, obviously none of them has disclosed any facts or data supporting any such opinion, nor any reliance on any of the evidence that Plaintiff may urge. Thus, even assuming for the sake of argument that Plaintiff's evidence were of a type that could have supported an opinion concerning doctors' expectations (which it is not, as discussed above), the evidence *cannot* provide such support here because there is no opinion concerning doctors' expectations for it to support.

Without an expert opinion to support, any evidence Plaintiff would offer in supposed support of her consumer expectations claim is untethered, irrelevant, and inadmissible. As Plaintiff will doubtless point out, the *Aubin* court noted that "a manufacturer plays a pivotal role in crafting the image of a product and establishing the consumers' expectations for that product, a portrayal which in turn motivates consumers to purchase that particular product." *Aubin v. Union Carbide Corp.*, 177 So. 3d at 511. Plaintiff will likely argue based on this language that her surplus evidence shows how Cook supposedly crafted the image of the Celect and influenced expectations. But without expert testimony to provide *context* for such evidence, the facts Plaintiff purports to show as Cooks' influence on consumer expectations—from design decisions to corporate motivations to statements to doctors—are necessarily meaningless and speculative. Plaintiff's guesswork about how Cook's conduct might have influence doctors' expectations about the safety of the Celect IVC Filter in 2010 are not enough. To make use of evidence of Cook conduct she claims influenced doctors' expectations, Plaintiff needs to demonstrate (1) that

8

the specific Cook conduct reflected in the evidence offered *actually* played a role in forming doctors' safety expectations for the Celect; (2) what those resulting safety expectations were; and (3) that the Celect Filter failed to live up to those expectations. Without expert testimony, Plaintiff cannot establish any of these three links in the logical chain necessary to sustain a claim based on consumer expectation. The evidence of conduct that she urges as support for that claim provides no such support, and does not make any fact of consequence to the determination of the action any more or less likely.

Without some qualified expert to give it context and significance, the evidence Plaintiff seeks to admit under the pretext of consumer expectations is just evidence "in the air," unconnected in any substantial way to any of the fact issues the jury will need to resolve in this trial. Moreover, given the evidence's lack of connection to the proof necessary for the consumer expectations standard, it is also speculative, unfairly prejudicial, and likely to confuse the jury. Again, Cook urges the Court to keep these considerations in mind when Plaintiff offers evidence at trial based on supposed links to "consumer expectations" and Cook objects to that evidence.

## CONCLUSION

Plaintiff's pretrial conduct, including her deposition designations and responses to objections, demonstrates a clear intent to try to use the "consumer expectations" standard to effectively resurrect her claims for negligence per se, failure to warn, negligent design, and negligent testing. Virtually none of the evidence Plaintiff would have offered in support of those claims has any bearing on Florida's consumer expectations test under the circumstances of this case, and the Court should view Plaintiff's offer of such obsolete evidence with skepticism.

                                        Respectfully submitted,

Dated: October 23, 2017           /s/ *Andrea Pierson*
                                        Andrea Roberts Pierson (# 18435-49)
                                        John T. Schlafer (# 28771-49)
                                        FAEGRE BAKER DANIELS LLP
                                        300 North Meridian Street, Suite 2700
                                        Indianapolis, Indiana  46204
                                        Telephone: (317) 237-0300
                                        Facsimile:  (317) 237-1000
                                        E-Mail:  andrea.pierson@faegrebd.com
                                        E-Mail:  john.schlafer@faegrebd.com

                                        *Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 23, 2017, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.  Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

                                              /s/ *Andrea Pierson*