## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND            Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION             MDL No.  2570

_____

This Document Relates to the Following Action only:

      Elizabeth Jane Hill
      No. 1:14-cv-06016-RLY-TAB

_____

## THE COOK DEFENDANTS' MEMORANDUM IN SUPPORT OF
## MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendants Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated),

and William Cook Europe ApS (collectively, the "Cook Defendants" or "Cook") move the Court

to grant judgment as a matter of law under Rule 50(a) as to Plaintiff's only remaining claim

against them in this case, strict-liability design defect.[1]  Plaintiff has failed to offer sufficient

evidence to permit a jury to find in her favor on two critical elements of her claim:  design defect

and causation.  Plaintiff has also failed to offer any evidence supporting the individual liability of

defendant Cook Incorporated.

## I.      Standard for Judgment as a Matter of Law

Under Rule 50, a court should grant judgment as a matter of law when a party has been

fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to

_____

[1] This memorandum specifically addresses the grounds for dismissing Plaintiff's claim for strict-liability design defect, her only remaining claim for compensatory damages.  Plaintiff does not dispute that if her claim for compensatory damages fails, she is not entitled to pursue her claim for punitive damages, and that claim must be dismissed as well.  A finding of liability is a prerequisite to a determination of punitive damages. *See Engle v. Liggett Group, Inc.*, 945 So.2d 1246, 1262–63 (Fla. 2006).

1

find for that party on that issue. *Murray v. Chicago Transit Auth.*, 252 F.3d 880, 886 (7th Cir. 2001). The Court must "view the evidence in the light most favorable to the nonmoving party and ascertain whether there exists any evidence upon which a jury could reach a verdict for the party producing it, upon whom the onus of proof is imposed." *Deimer v. Cincinnati Sub-Zero Prods.*, 58 F.3d 341, 343-44 (7th Cir.1995) (internal quotation and citations omitted). A mere scintilla of evidence is not enough to defeat judgment as a matter of law. *La Montagne v. American Convenience Prods.*, 750 F.2d 1405, 1410 (7th Cir.1984). The standard for granting judgment as a matter of law mirrors the standard for granting summary judgment. *Murray*, 252 F.3d at 886-87.

## II. A reasonable jury would not have a legally sufficient basis to find for Plaintiff on her claim for strict-liability design defect.

To prevail on her strict-liability design-defect claim, Plaintiff must establish (1) that her Celect IVC filter was defective and unreasonably dangerous, and (2) that the defect in her Celect IVC filter caused her claimed injuries. *See, e.g., West v. Caterpillar Tractor Co.*, 336 So.2d 80, 87 (Fla. 1976). Plaintiff must prove both of these elements to prevail on her claim, but she has failed to present sufficient evidence to create a jury issue as to either one.

### A. A reasonable jury would not have a legally sufficient basis to find that the design of Plaintiff's Celect IVC Filter was defective.

Plaintiff has failed to present sufficient evidence for the jury to conclude that the design of her Celect IVC filter was defective. Proof of design defect requires expert testimony. *See, e.g., Malvaes v. Constellation Brands, Inc.*, No. 14-21302-CIV, 2015 WL 3874815, at *2 (S.D. Fla. June 23, 2015) (design-defect claim fails without expert testimony of defect); *Fagundez v. Louisville Ladder, Inc.*, Case No. 10–23131, 2011 WL 6754089, at *2 (S.D. Fla. Dec.22, 2011) (collecting cases).

US.114909461.03

Plaintiff has offered no expert testimony that the design of her Celect IVC filter was defective. Neither Plaintiff's regulatory expert Dr. Kessler nor her pathologist Dr. Fishbein expressed any opinion that the design of the Celect was defective. Plaintiff repeatedly and expressly disclaimed any design defect testimony by Dr. Marmureanu. *See* Tr. at 1571:17-18 (Oct. 31) ("we're not offering Dr. Marmureanu to talk about defective design"), 1576:12 ("He is not going to testify that there was a design defect."). And not only did Dr. McMeeking fail to offer any opinion that the Celect IVC filter was defective, Plaintiff's attorneys strenuously objected when Cook's attorney even raised the issue with him. *See* Tr. at 1102:9-1103:11. ("MS. BAUGHMAN: That is incorrect. The doctor has not offered an opinion on defect.").

Plaintiff's own experts acknowledge that the occurrence of a complication with a medical device does not mean that the device is defective. *See* Tr. at 697:7-9 (10/25) (Fishbein) ("Q Just because a patient has a complication with a medical device, it doesn't mean the device is defective, correct? A Correct."); Tr. at 1720:1-5 (Oct. 31) (Marmureanu) ("Q The jury heard Dr. Fishbein, a pathologist, testify earlier this week that just because a patient has a complication, that doesn't mean there's something wrong with the device. Do you agree with that? A It could be, yes."). Absent expert testimony that the design of the Celect IVC filter was defective, Plaintiff cannot sustain her design defect claim. *See Malvaes*, 2015 WL 3874815, at *2.

B.  **A reasonable jury would not have a legally sufficient basis to find that the design of Plaintiff's Celect IVC Filter was unreasonably dangerous.**

Plaintiff has failed to present sufficient evidence for the jury to conclude that her Celect IVC filter was unreasonably dangerous. The Court has ruled that the "unreasonably dangerous" prong of Plaintiff's strict-liability design-defect claim under Florida law is governed by the consumer-expectations standard. *See* Dkt. 6761 at 2-3 (citing *Aubin v. Union Carbide Corp.*,

3

177 So.3d 489 (Fla. 2015)).[2]  The parties agree that under the circumstances of this case, the "consumer" whose "expectations" inform the consumer expectations standard is Dr. Mark Zuzga, the doctor who placed Plaintiff's Celect IVC filter, and not Plaintiff herself.  *See* October 12, 2017 Hearing Transcript, at 42:21-22 (Plaintiff "concede[s] the doctor is the consumer under Florida law"); Dkt. 7015 at 2, n.2 (noting no dispute on this point).[3]

The parties also agree that the consumer expectation standard is an ***objective*** standard, *i.e.*, that the standard looks at what an ordinary doctor would reasonably have expected, not what any specific doctor ***actually*** expected.  *See* Pl. Supp. Br. on Design Defect (Dkt. 6886) at 9 (addressing "the ordinary expectations of implanting physicians").  Dkt. 7015 at 2, n.2 (noting no dispute on this point).[4]

The dispute between the parties therefore comes down to one question:  Does proof of what an ordinary doctor would reasonably have expected concerning the safety of the Celect IVC filter require expert testimony?  If so, Plaintiff's claim fails as a matter of law.  She has acknowledged that she has no expert testimony on this issue, and the evidence she has offered instead cannot substitute for such expert testimony.  *See, e.g., Thornton v. M7 Aerospace LP*, 796

---

[2] Cook continues to maintain that the Court should apply the risk-benefit standard to this Florida design-defect claim, *see, e.g., Eghnayem v. Boston Scientific Corp.*, ___ F.3d ___, 2017 WL 4681345 (11th Cir. Oct. 19, 2017), but acknowledges that the Court has adopted the consumer-expectations test instead and has framed this motion accordingly.

[3] Case law from around the country supports this conclusion.  *See, e.g., Moss v. Wyeth Inc.*, 872 F.Supp.2d 162, 170-71(D. Conn. 2012) (holding in applying consumer-expectations test to claim of design defect in drug "the relevant expectations are those of the physician, not the ultimate consumer");  *St. Clair v. Nellcor Puritan Bennett LLC*, No. CV-10-1275-PHX-LOA, 2011 WL 5331674, at *6–7 (D. Ariz. Nov. 7, 2011) ("as to this medically-related product, the ordinary consumer under the consumer expectation test is the physician who used the [medical device at issue]")(applying Arizona law); A*dams v. Synthes Spine Co., LP.*, 298 F.3d 1114, 1117 (9th Cir. 2002) (explaining the "consumer" of a prescription-only medical device is the prescribing physician)(applying Washington law).

[4] Florida law supports this objective standard.  *Hobart Corp. v. Siegle By & Through Hoerber*, 600 So. 2d 503, 505 (Fla. 3d DCA 1992) (noting that both risk-utility and consumer expectations test require application of objective standard to determine product defect)

US.114909461.03

F.3d 757, 773 (7th Cir. 2015) (holding that where proof of claim requires expert testimony, failure to produce expert testimony is fatal to claim).

      **1.**      **Proof of an ordinary doctor's reasonable expectations concerning the safety of a complex medical device requires expert testimony.**

To establish an ordinary doctor's reasonable expectations about the safety of the Celect IVC filter in 2010, Plaintiff was required to present expert testimony. Florida decisions have imposed the requirement of expert testimony on similar elements in many similar contexts, and those cases make clear that Plaintiff was required to present expert testimony to prove the consumer expectations element here.

Florida law requires expert testimony on matters "simply too esoteric to be understood by the average juror." *AMH Appraisal Consultants, Inc. v. Argov Gavish P'ship*, 919 So. 2d 580, 582 (Fla. Dist. Ct. App. 2006); *see also Ins. Co. of the W. v. Island Dream Homes, Inc.*, 679 F.3d 1295, 1298 (11th Cir. 2012) (holding claim of negligent roofing failed absent expert testimony and stating: "Expert testimony is required to define the standard of care when the subject matter is beyond the understanding of the average juror.") (applying Florida law); *AMH Appraisal Consultants, Inc. v. Argov Gavish P'ship*, 919 So.2d 580, 581-82 (Fla. 4th Dist. Ct. App. 2006) (holding that the standard of care for a property appraiser was "too esoteric to be understood by the average layperson"). In a past submission on this issues, Plaintiff correctly quoted *Cappellano v. Wright Med. Group, Inc.*, 838 F. Supp. 2d 816, 830-831 (N.D. Ill. 2012) as stating that "[e]xpert testimony is not required in all cases to demonstrate that a product was unreasonably dangerous under the consumer-expectation test," Dkt. 7015 at 3, but omitted the crucial remainder of the sentence: "however, expert testimony regarding the product's unreasonable dangerousness is required if the product is complex and beyond a lay jury's understanding." 838 F. Supp. 2d at 831 (citations omitted).

Issues concerning medical knowledge and opinions like those involved here are frequently beyond the understanding of an average juror, and so require expert testimony. *See, e.g., Sims v. Helms*, 345 So. 2d 721, 723 (Fla. 1977) ("[E]xcept in rare cases [where the issue is obvious], neither the court nor the jury can or should be permitted to decide, arbitrarily, what is or is not a proper diagnosis or an acceptable method of treatment of a human ailment.") (internal citations omitted). As the Court itself noted early in the trial: "when you're dealing with medical issues and scientific issues, many times that is way beyond a lay juror's comprehension. That's what expert testimony is all about." Tr. at 284:4-7 (Oct. 23, 2017).

Moreover, as noted above, Florida law requires expert testimony to prove a design defect in a strict liability case. *See, e.g., Malvaes v. Constellation Brands, Inc.*, No. 14-21302-CIV, 2015 WL 3874815, at *2 (S.D. Fla. June 23, 2015); *Fagundez v. Louisville Ladder, Inc.*, Case No. 10–23131, 2011 WL 6754089, at *2 (S.D. Fla. Dec.22, 2011). Inasmuch as the Court has held that the "unreasonably dangerous" aspect of Plaintiff's design defect claim here is measured through the consumer-expectations standard, this precedent applying Florida law establishes that Plaintiff needed to establish the reasonable safety expectations of doctors in Dr. Zuzga's position through expert testimony.

Several jurisdictions (including the Seventh Circuit) have addressed this issue and have required expert evidence to prove consumer expectations in design defect cases. *See Show v. Ford Motor Co.*, 659 F.3d 584, 587 (7th Cir. 2011) (affirming summary judgment on claim that car had design defect, holding that it "takes expert evidence to establish a complex product's unreasonable dangerousness through a consumer-expectations approach."). Of particular moment here, courts have required expert testimony on consumer expectations in cases involving medicals devices like the Celect filter. *See, e.g., Cappellano v. Wright Med. Grp., Inc.*, 838 F.

6

Supp. 2d 816, 830–31 (C.D. Ill. 2012) (requiring expert testimony to demonstrate that hip prosthesis was unreasonably dangerous under consumer expectation test, explaining product was a "complex device" that "can fail for many reasons," and is "beyond a lay jury's understanding") (applying Illinois law); *Koger v. Synthes N. Am., Inc.*, No. 3:07-CV-01158 WWE, 2009 WL 5110780, at *2 (D. Conn. Dec. 17, 2009) (requiring expert testimony under "modified consumer expectation test" because "implanted medical screws are medical devices that are outside of the ordinary consumer's common knowledge) (applying Connecticut law). *See also Scantlin v. Gen. Elec. Co.*, 690 F. App'x 558, 558–59 (9th Cir. 2017) (requiring "expert testimony to support [plaintiff's] consumer expectations theory of design defect" where "[t]he workings of the industrial switchboard and its internal barrier were 'sufficiently beyond common experience that the opinion of an expert [was] required'")(applying California law).  The expectation of an ordinary physician in the position of Dr. Zuzga regarding the risks of IVC filters is likewise beyond the common experience of jurors; indeed, Plaintiff's attorney has conceded that the definition of the medical standard of care requires expert testimony.  *See* Tr. at 1945:14-17 (Nov. 1) (THE COURT: You're saying standard of care needs expert testimony? MS. BAUGHMAN: Of course standard of care needs expert testimony.").

The only case Plaintiff has offered to date to try to suggest that she does not need expert testimony on this issue is *St. Clair v. Nellcor Puritan Bennett LLC*, No. CV-10-1275-PHX-LOA, 2011 WL 5331674 (D. Ariz. 2011).  *St. Clair* is distinguishable from the circumstances here in at least two material respects.  First, the defendant in *St. Clair* did not even *argue* the "consumer expectations" standard at issue here; instead, it "apparently assume[d], without explanation, that only the risk/benefit analysis applies in this case."  *Id.* at *6.  Here, in contrast, the need for

US.114909461.03

expert testimony on the consumer expectations issue has been front and center in Cook's defense ever since the Court approved that standard.

Second, in trying to predict how the Arizona Supreme Court would address the issue, the *St. Clair* court adopted a ***subjective*** standard for a doctor's expectations about the safety of the product, rather than the ***objective*** standard that the parties agree applies here under Florida law. *See Hobart Corp. v. Siegle By & Through Hoerber*, 600 So. 2d 503, 505 (Fla. 3d DCA 1992); Fla. Std. JI 403.7.  In other words, instead of addressing the expectations of an *ordinary* doctor in the position of the plaintiff's treating doctor, the *St. Clair* court addressed the *personal* expectations of the treating doctor *himself*:  "this Court predicts that the Arizona Supreme Court would likely find that as to this medically-related product, ***the ordinary consumer under the consumer expectation test is the physician who used the Nellcor resuscitator bag.***"  *Id*. at *7 (emphasis added).  Applying this subjective standard, the court noted that "there is a dispute regarding whether Dr. Teaford thought something was wrong with the Nellcor bag," and concluded on that basis that even without expert testimony, "[t]he circumstances surrounding the incident and witness testimony provide a sufficient basis to create a question of fact that the resuscitator bag was not properly designed."  *Id*.

The *St. Clair* court's reliance on a *subjective* standard for consumer expectations rather than Florida's *objective* standard makes all the difference with respect to the need for expert testimony.  Where the only issue is the subjective expectations of a particular doctor, expert testimony is unnecessary; all one needs is the testimony of the doctor him- or herself to establish the required "expectations."  Thus, because the plaintiffs in *St. Clair* had the treating physician's testimony, they were able to create a genuine issue of fact *without* expert testimony.  Under the objective standard applicable here, however, one doctor's testimony is not enough to establish

the safety expectations of an ordinary doctor in the position of Plaintiff's treating physician Dr. Zuzga. Plaintiff needs an expert who is qualified to opine concerning the safety expectations of such doctors and who has employed a sound methodology in arriving at that opinion. The *St. Clair* case does not support Plaintiff's claim that she can prove doctors' expectations under Florida law under the circumstances here without expert testimony.

> **2.      Expert testimony concerning consumer expectations is feasible and commonly used.**

Plaintiff has also objected to any requirement of expert testimony concerning doctors' expectations on the ground that such expert testimony is not possible and might not be competent, arguing:

> [Plaintiff's attorney:] …Do we have one to come in and say, this is what doctors should have known or I can tell you what doctors would have expected based on this, no, and I'm not sure that would be competent testimony for a physician to come in and say, let me tell you what all doctors would expect from this.

Oct. 23 Tr. at 284:8-14. Plaintiff is mistaken.

Case law is replete with examples of legal theories that involve expert testimony about the understanding and expectations of consumers and other groups. The Seventh Circuit observed in a product-liability case involving the consumer-expectations standard that "the law often requires expert evidence about consumer expectations…because jurors are supposed to decide on the basis of the record rather than their own intuitions and assumptions." *Show*, 659 F.3d at 586. In trademark litigation, for example, surveys conducted by experts are often needed to establish that consumers would be confused by particular packaging or messages. *See, e.g., Libman Co. v. Vining Industries, Inc.,* 69 F.3d 1360, 1361 (7th Cir. 1995); *Braun Inc. v. Dynamics Corp. of America,* 975 F.2d 815, 828 (Fed. Cir. 1992); *Lever Brothers Co. v. American Bakeries Co.,* 693 F.2d 251, 258 (2d Cir. 1982). Likewise, expert evidence concerning

9

consumer expectations is often vital to claims under the Fair Credit Reporting Act and the Fair Debt Collection Practices Act to show that brochures would confuse an ordinary unsophisticated borrower.  *See, e.g., Pettit v. Retrieval Masters Creditor Bureau, Inc.,* 211 F.3d 1057, 1062 (7th Cir. 2000); *Walker v. National Recovery, Inc.,* 200 F.3d 500 (7th Cir.1999); *Johnson v. Revenue Management Corp.,* 169 F.3d 1057, 1060–61 (7th Cir. 1999).

Courts have also recognized the feasibility of expert testimony concerning consumer expectations concerning products beyond the knowledge of a lay consumer.  For example, where a plaintiff's claim required proof of "consumer expectations" concerning "[t]he workings of the industrial switchboard and its internal barrier"—the "consumers" being electricians—the court held that the plaintiff "was required to present expert testimony to support his consumer expectations theory of design defect."  *Campbell v. Gen. Motors Corp.*, 32 Cal.3d 112, 124 (1982) (citations and alteration omitted); *see also Lunghi v. Clark Equip. Co., Inc.*, 153 Cal.App.3d 485, 496 (Cal. App. 1984) (rejecting the plaintiffs' proffered jury instruction premised on lay testimony rather than expert opinion in support of consumer expectations test). *See also id.* ("appellants are free to present evidence in the form of expert opinions on the reasonable expectations of consumers of the product involved here, which is outside the experience of ordinary consumers"); *Bachtel v. TASER Int'l, Inc.*, 747 F.3d 965, 970 (8th Cir. 2014) (affirming district court's requirement of expert testimony to prove "the effect of a warning on a police officer involved in a physical confrontation in the field").

In sum, Plaintiff errs in asserting that expert testimony concerning doctors' expectations concerning the risks and safety of the Celect IVC filter would not be possible or competent. Courts regularly require and receive just this kind of expert evidence.

10

3.     **Plaintiff has failed to introduce the required expert testimony concerning an ordinary doctor's reasonable expectations concerning the safety of Plaintiff's Celect IVC filter.**

Plaintiff has failed in her case in chief to introduce the required expert evidence of the reasonable safety expectations of the Celect IVC filter among doctors who implant such IVC filters.  Indeed, Plaintiff's attorney acknowledged on the first day of trial that Plaintiff could offer no such expert testimony:

> MR. SCHULTZ: I understand, Judge. I mean, they're going to hear from a host of experts.  ***Do we have one to come in and say, this is what doctors should have known or I can tell you what doctors would have expected based on this, no,*** and I'm not sure that would be competent testimony for a physician to come in and say, let me tell you what all doctors would expect from this.
> And, Judge, ***we do not have an expert that I'm aware of that's willing to come in and say, based on these representations, I will tell you that an objective, reasonable consumer physician would think X, Y or Z.*** As I say, I don't think that's competent testimony, but I'll concede that unless somebody else is aware of it because it's not the standard.  But, you know, so ***that's why we don't have it***, Judge.

Tr. at 284:8-21 (Oct. 23, 2017) (emphasis added).  Plaintiff later suggested that she had other evidence that could substitute for such expert testimony, *see* Tr. at 284:22-285:22; Dkt. 7015, and Cook addresses that evidence below.  But as noted above, the parties agree that a central requirement of Plaintiff's design-defect claim is proof that the Celect IVC filter did not meet the safety expectations of doctors like Dr. Zuzga who place IVC filters.  Plaintiff admits she has no expert testimony to support that claim, and her claim fails as a matter of law without it.  *See, e.g., Malvaes v. Constellation Brands, Inc.*, No. 14-21302-CIV, 2015 WL 3874815, at *2 (S.D. Fla. June 23, 2015).

Plaintiff tries to compensate for the absence of expert testimony concerning doctors' reasonable expectations about the safety of the Celect filter by pointing to evidence of facts about the filter that an expert might consider in forming such an opinion.  For example, as

11

discussed in more detail below, Plaintiff elicited testimony concerning treating physician Dr. Zuzga's personal expectations (from Dr. Zuzga), physicians complaints and inquiries to Cook (from Dr. Marmureanu), and Cook's view of the importance of providing accurate information to doctors (from Cook witnesses).  But these are just isolated facts that an expert *might* view as factors to consider in forming an opinion concerning doctors' expectations, along with myriad other factors that Plaintiff has *not* presented—for example, what doctors learn about IVC filters in medical school and training, doctors' personal experiences with the Celect and other IVC filters, and what information other IVC filter manufacturers provide to doctors.  Without an expert to interpret the facts Plaintiff has presented, to identify and analyze other facts that might be relevant, and to apply a reliable methodology to all the material facts to arrive at a defensible expert opinion, the facts Plaintiff offers are not expert opinion, they are just a pile of facts.

By analogy, a plaintiff claiming a design defect in a knee implant may have evidence of the material used in the implant components, the angle at which the components meet, and the composition of the adhesive, but that evidence alone does not and cannot satisfy the requirement of expert testimony of a design defect.  The plaintiff would need a qualified expert to apply his or her design expertise to that evidence and to form an opinion that the design is defective.  So here, even assuming that the evidence Plaintiff has accumulated would be of the type that an expert might rely on in forming an opinion about doctors' safety expectations (which we don't know), no expert has *actually* gathered the relevant information together and formed an opinion about (1) the reasonable expectations of IVC-placing doctor concerning the safety of the Celect IVC filter or (2) whether Plaintiff's Celect IVC filter violated those expectations.

The Seventh Circuit addressed the need for expert testimony in the consumer-expectations context in *DeKoven v. Plaza Assocs.*, 599 F.3d 578 (7th Cir. 2010).  In *DeKoven*,

the court held that although particular language in a dunning letter *might* deceive recipients, such deception could only be adequately *proven* through an expert's competent survey of consumers. The Court noted:

> We see a potential for deception of the unsophisticated in those offers but we have no way of determining whether a sufficiently large segment of the unsophisticated are likely to be deceived to enable us to conclude that the statute has been violated.

*Id.* at 580 (affirming dismissal of Fair Debt Collection Practices Act suit where consumer survey offered was "no good").

What Plaintiff has tried to do with the supposed "consumer expectations" evidence is in effect resurrect her failure-to-warn claims, which the Court dismissed on summary judgment. Plaintiff characterizes virtually all of her "consumer expectations" evidence as showing either that Cook told doctors something inaccurate about the benefits or risks of the Celect filter or that Cook failed to tell doctors something about the risks or benefits that it should have told them— the classic elements of a failure-to-warn claim.  Indeed, as the Court noted, the testimony from Dr. Marmureanu that Plaintiff sought to offer on this issue was drawn entirely from the "Failure to Warn" section of his report.  Tr. at 1645:1-3 (Oct. 31).  Nothing in the *Aubin* decision permits Plaintiff to distort the consumer-expectations test for design defect into a *de facto* failure-to-warn standard, particularly without any expert testimony to make a connection between the claimed failure to warn and actual consumer expectations.

   a.   **Dr. Zuzga's testimony does not substitute for expert testimony.**

Although Plaintiff suggested in her October 24, 2017, trial brief, that she could use the testimony of Dr. Zuzga to satisfy the expert testimony requirement of her consumer expectations claim, Dkt. 7015 at 3-5, Plaintiff acknowledged in open court on November 2, 2017, that she was not offering Dr. Zuzga's testimony as expert testimony.  Tr. at __ (citation to come).  Moreover,

Plaintiff cannot rely on Dr. Zuzga's testimony as a substitute for expert testimony on consumer expectations for two reasons.

First, the parties agree that the "consumer expectations" standard is an *objective* standard. *E.g., Hobart Corp. v. Siegle By & Through Hoerber*, 600 So. 2d 503, 505 (Fla. 3d DCA 1992). An objective standard looks at the beliefs and understanding of a hypothetical reasonable person regarding the events at issue, while a subjective standard looks at the actual beliefs and understanding of the specific person involved in the events. *See, e.g., Turner v. Pcr*, 754 So. 2d 683, 688 (Fla. 2000). The expectations of an individual doctor, even a plaintiff's own treating doctor, relates only to the subjective impression of that doctor; they do not establish the reasonable expectations of an ordinary doctor in the treating doctor's position. Although an individual doctor's personal opinion might be a *factor* that an expert might consider in forming an opinion about the objective expectations of an ordinary doctor, such a personal opinion cannot *substitute* for that expert testimony. Plaintiff's attorney made this very point to the Court at least twice:

> Obviously, what [Dr. Zuzga] thought is relevant but it's not the standard for determination of liability.

October 12, 2017 Hearing Transcript at 42:24-43:3.

> … I think he [Dr. Zuzga] can testify as to his own expectations and what he knew, but I don't know that there's any foundation for him to say the general medical community was well aware of X. He's a single person. I don't think he's got any ability or any competence to provide that testimony.

Tr. at 1512:11-16 (10/31).[5]

---

[5] Indeed, as discussed above, the only case Plaintiff cites in support of the use of Dr. Zuzga's testimony, *St. Clair v. Nellcor Puritan Bennett LLC*, applied a subjective standard for consumer expectations, rather than the objective standard applicable here.

14

Second, even assuming for the sake of argument that Dr. Zuzga's subjective opinion could satisfy the objective standard for consumer expectations, the relevant portions of Dr. Zuzga's testimony say just the opposite of what Plaintiff suggests.  Plaintiff's reliance on Dr. Zuzga's testimony that he did not expect Plaintiff Hill's specific to perforate, Zuzga Dep. (2/8/17) at 62:1-63:3 (cited in Plaintiff's Response to Trial Br. at 5-6 (Dkt. 7015), addresses the wrong question.  What matters is *not* whether the medical community or Dr. Zuzga expected Plaintiff or any other individual patient to experience the *actual* complication she claims, but whether they expected the *risk* of that complication.  By analogy, a pocket knife is not defectively designed simply because it has cut a consumer's hand; although the consumer did not *expect* the knife to *actually* cut their hand, in using the knife the consumer expected the *risk* that the knife might cut their hand.  After all, a cut on the hand is a risk inherent in using a sharp blade, just as certain complications are risks inherent in using an IVC.

Dr. Zuzga testified that he did not expect Plaintiff's filter to perforate the IVC wall, and that he was surprised to learn that it had done so.  *See* Zuzga Dep. at 62:1-63:3.  But this testimony has nothing to do with the ***risks*** of complications that Dr. Zuzga or other doctors expected in using the IVC filter, and the expected ***risks*** are what matters.  If a complication has a one-in-a-hundred risk of occurring, a doctor will not expect the complication to occur in any particular patient, and may be surprised if it does.  But what is *material* is that the doctor *expects* the 1/100 risk and makes that risk part of the balance when the doctor weighs whether to prescribe the medical device for the patient.  This is exactly the expectation of risk that Dr. Zuzga testified to here:

> [Q]   [Y]ou had no expectation that Mrs. Hill's filter would perforate her duodenum following your retrieval attempt, it's accurate to say that you had no expectation, but you always knew it was a risk?
> A.    Correct.

Zuzga Dep. Vol. II at 224:21-225:13.  Nothing in Dr. Zuzga's testimony supports a finding that Plaintiff's Celect IVC Filter was unreasonably dangerous in design because it failed to perform as safely as an ordinary doctor would expect.

Indeed, even today, when Dr. Zuzga is aware not only of the risks of complications but of the *actual* complications that Plaintiff unfortunately experienced, his *certain* knowledge of those concrete results—far beyond any mere expectations—has not changed Dr. Zuzga's views that Cook Celect is a safe and effective means of treating patients at risk of pulmonary embolism, or that the potential benefits to Plaintiff outweighed the potential risks.  *See* Dkt. 6660 at 6-8 (Court's order granting summary judgment on failure-to-warn claims).  Indeed, Dr. Zuzga would not change how he treated Plaintiff, *see id.*, and nothing in his testimony supports any claim that he did not fully expect the risk of perforations and other complications when he placed Plaintiff's filter.

Dr. Zuzga's testimony cannot substitute for expect testimony that addresses Florida's objective standard for reasonable expectations.

> **b.**     **Dr. Marmureanu's testimony does not substitute for expert testimony.**

The Court barred Plaintiff from offering any expert opinion by Dr. Marmureanu about consumer expectations because his report failed to disclose any such opinions. Tr. at 1647 at 20:25 (Oct. 31).  Plaintiff has nevertheless suggested that, although Dr. Marmureanu cannot provide the required expert testimony concerning the reasonable expectations of a doctor in Dr. Zuzga's position about the safety of the Celect IVC filter, his testimony can somehow stand in for that expert testimony.  *See* Tr. at 284-85 ("MR. MARTIN: Well, there will be some testimony from Dr. Marmureanu, Your Honor, with respect to what a -- what the doctors were given with respect to information.").  Plaintiff is mistaken.

Dr. Marmureanu testified that he had reviewed various Cook complaint files and characterized some of those files as involving inquiries regarding retrievals, and he gave his opinions concerning what he read as promises of non-perforation in the IFU for the Celect IVC filter.  None of this testimony is an adequate substitute for expert opinion about the reasonable expectations of doctors about the safety of Celect IVC filters.  On the contrary, Dr. Marmureanu expressly disavowed any knowledge of whether any other doctor agreed with his personal interpretation of Cook documents:

> Q        You've talked about the IFU a couple of times and what you believe is a promise to be perforation-proof and retrievable 100 percent of the time. Is there any other physician in the world that you can name for us today who holds that belief?
>
> A        You would have to ask people. I don't know. That's my opinion, personal opinion.

Tr. at 1172:11-16 (Oct. 31).  But Plaintiff did not "ask people," and lacks the expert testimony about doctors' expectations that "asking people" might have produced.  Even if the jury were to credit Dr. Marmureanu's opinion—that an IFU that expressly warned about the risk of perforation nevertheless guaranteed there would be no perforation—jurors would have no basis to extrapolate that opinion to all doctors who place IVC filters.  As with other evidence discussed above, Dr. Marmureanu's testimony might provide information on which on expert could rely in forming an opinion about doctor's expectations, but it does not provide that opinion.  Plaintiff has provided no expert testimony to assist the jury in understanding and interpreting this testimony in context of the consumer expectations standard.

> c.        **Dr. Gardner's testimony does not satisfy the expert testimony requirement.**

Cook anticipates that Plaintiff may try to retroactively characterize the testimony of Cook employee Dr. James Gardner as expert testimony and argue that it satisfies the requirement of

expert testimony about doctors' 2010 expectations about the safety of the Celect IVC filter.  Dr.

Gardner testified along the following lines:

> Q       What I asked for -- and I'm not talking about Cook. I'm just going talk about --
>         you're an expert.
> A       Uh-huh.
> Q       I'm going to talk about a hypothetical medical device company.
>         If that company's medical science officer says, in 2007, 2008, 2009, 2010, talks
>         about it again in 2013, that there is no evidence to support the use of a device, do
>         you think the reasonable physician would expect that company to disclose that?
> A       So I think a reasonable physician would expect to see the evidence around a
>         device and draw their own conclusions about whether or not the benefits outweigh
>         the risks. I don't necessarily know they want to hear my opinion as an individual,
>         and I'm not saying that was my opinion in those emails, by the way. This is a
>         hypothetical situation.

Tr. at 820:18-821:8 (Oct. 24).  Any attempt to use Dr. Gardner as some sort of involuntary

"expert" on the subject of doctors' expectations fails for several reasons.

First, Plaintiff did not disclose Dr. Gardner as an expert witness on the subject of doctors'

expectations, and indeed did not disclose him as an expert witness at all.  Although Cook listed

Dr. Gardner as a potential non-retained expert witness, Cook's summary of the facts and

opinions on which he might testify described only testimony concerning deep vein thrombosis

and pulmonary embolisms,  treatment options for PE, and the safety, effectiveness, and clinical

history of the Celect and Tulip filters, not consumer expectations.[6]  *See* Cook Defendants' Rule

---

[6] Cook's summary of Dr. Gardner's expert testimony stated in its entirety:
> • Dr. Gardner is familiar with the clinical significance of DVTs and PE, recurrent PE, and
> how PE causes injury and potentially death. Various patient-specific factors can place a
> patient at increased risk for PE. He is generally familiar with frequency and rates of
> DVTs and PE, and is aware of the treatment modalities available to physicians when a
> patient is at risk of PE and recurrent PE.
> • There are different treatment alternatives for patients presenting with PE and the risks
> and benefits of each. There are various pharmacologic, mechanical, and surgical
> techniques for the treatment of PE, and different circumstances under which the varying
> treatment alternatives may be deployed.

US.114909461.03

26(a)(2)(B) and 26(a)(2)(C) Expert Disclosures at 23-24; *see also* Tr. at 767:21-23 ("MS. PIERSON: Your Honor, we don't have any objection to the witness being cross-examined, but this wasn't part of his expert disclosure."). Plaintiff failed to disclose any "expert testimony" by Dr. Gardner as required by Rule 26(a), and cannot now reclassify his testimony as expert opinion. *Cf. Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996) ("The sanction of exclusion is thus automatic and mandatory unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless.").

Second, Plaintiff did nothing to qualify Dr. Gardner as an expert on the reasonable safety expectations of doctors who place Celect IVC filters. As this Court has noted, "simply possessing a medical degree does not qualify a [doctor] as an expert in all medical fields." *Higgins v. Koch Development Corp.*, No. 3:11-cv-81-RLY-WGH, 2013 WL 6238650, at *3 (S.D. Ind. Dec. 3, 2013). The key question is not whether the expert is qualified in general, but whether the expert's qualifications provide sufficient foundation for an opinion on a particular topic. *Gayton v. McCoy,* 593 F.3d 610, 617-618 (7th Cir. 2010). Here, Plaintiff made no effort to qualify Dr. Gardner to opine concerning the reasonable expectations of doctors who place IVC filters. On the contrary, Plaintiff spent substantial time in their examination of Mr. Gardner emphasizing that he was not and never had been a licensed doctor, that he had not treated patients in decades, and that he had shelved his medical career in favor of a business career in the medical device field. Tr. at 714:19-715:16 (Oct. 24).

Third, Plaintiff did nothing to establish what if any methodology Dr. Gardner used in forming any "expert opinions." "A supremely qualified expert cannot waltz into the courtroom

---

• The Tulip and Celect are safe and effective products. The risk benefit analysis of the Tulip and Celect are favorable, and both have a long clinical history of successful use in patients.

Cook Defendants' Rule 26(a)(2)(B) and 26(a)(2)(C) Expert Disclosures at 224.

and render opinions unless those opinions are based upon some recognized scientific method and reliable and relevant under the test set forth by the Supreme Court in *Daubert*." *Clark v. Takata Corp.*, 192 F.3d 750, 759 n.5 (7th Cir. 1999).  Here, Plaintiff did nothing to try to either define any methodology supporting any expert opinion or establish its reliability.  "[N]o physician may testify to his or her opinion based solely on the expert's say so and a medical degree." *Cunningham v. Masterwear, Inc.*, 2007 WL 1164832, *10 (S.D. Ind. 2007).  Absent the demonstration of some evidence of a reliable methodology, Plaintiff cannot retrospectively transmogrify Dr. Gardner's testimony into expert testimony.  *Cf. In re Zimmer NexGen Knee Implant Prods. Liab. Litig.*, 218 F. Supp. 3d 700, 714 (N.D. Ill. 2016) (excluding testimony where expert report "provides almost no explanation of how the sources he reviewed support his conclusions").

Fourth, Plaintiff did nothing to assure that any "expert opinion" elicited from Dr. Gardner was expressed with the requisite degree of certainty.  With every one of her properly disclosed, properly qualified medical experts, Plaintiff's attorneys were careful to insure that the expert expressly testified that he offered his opinion to a "reasonable degree of medical [or scientific] certainty."  *See, e.g.,* Tr. at 662:19-22 (Oct. 25) (Fishbein); Tr. at 1036: 19-1037:1; 1049:20-1050:18;1051:2-1052:6 (Oct. 26) (McMeeking); Tr. at 1630:15-1631:3 (Oct. 31) (Marmureanu). Plaintiff established no such degree of certainty for any of Dr. Gardner's testimony.

Finally, a party cannot simply "sneak in" expert testimony as Plaintiff did here—by telling a fact witness "You're an expert," asking a question, then treating the answer as if it were expert testimony.  The requirements discussed above—notice, qualification, methodology, and certainty of testimony—are all intended in part to prevent just this kind of "stealth expert." Plaintiff cannot satisfy the requirement of expert testimony for consumer expectations by the

20

purported conversion of a fact witness into an expert without following any of the rules or standards governing expert testimony.

### C.   A reasonable jury would not have a legally sufficient basis to find that any design defect in Plaintiff's Celect IVC Filter caused Plaintiff's claimed injuries.

Plaintiff has failed to present sufficient evidence for the jury to conclude that any design defect in her Celect IVC filter caused any of her claimed injuries.

#### 1.   Plaintiff needed to prove causation through expert testimony.

Under Florida law, "strict liability should be imposed only when a product the manufacturer places on the market, knowing that it is to be used without inspection for defects, proves to have *a defect that causes injury to a human being*." *Aubin v. Union Carbide Corp.*, 177 So. 3d 489, 503 (Fla. 2015) (quoting *West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 86 (Fla. 1976)) (emphasis added).  Although the Court has adopted the consumer-expectations standard based on the *Aubin* case, nothing in *Aubin* eliminated the need for a strict-liability plaintiff to prove causation as well as defect.  Because of the complex nature of medical devices and medical injury, Plaintiff must prove the causation element of her design-defect claim with expert testimony.  *See Schenone v. Zimmer Holdings, Inc.*, No. 3:12-CV-1046-J-39MCR, 2014 WL 12576790, at *3 (M.D. Fla. Aug. 8, 2014) (citing *Hughes v. Stryker Corp.*, 423 Fed. Appx. 878, 881 & n.4 (11th Cir. 2011) (citation omitted).

#### 2.   Plaintiff has offered no expert testimony to support the element of causation.

Plaintiff has failed to offer sufficient expert evidence to permit the jury to conclude that some defect in her Celect IVC filter caused her any injuries.  The only expert Plaintiff called at trial to try to make a causal link between a supposed design defect and the perforation of her filter was Dr. Marmureanu, who testified:

> Q     With respect to the tendency to tilt, perforate and embed, do you have an opinion as to whether or not the design causing that was a substantial factor in the injuries sustained by Ms. Hill, including the vena cava perforation and the perforation into the duodenum and the abdominal, and other IVC filters stenoses and problems she has suffered?
>
> A     Yes, sir, I agree with you.
>
> Q     What's your opinion?
>
> A     My opinion is the design and construction gave rise to all of the above issues.

Tr. at 1635:11-20.  This testimony fails for several reasons to provide a legally sufficient basis for the jury to find that a design defect caused Plaintiff's perforation or any of Plaintiff's injuries.

First, Dr. Marmureanu testified *only* that "the design and construction" of the Celect IVC filter caused Plaintiff's perforation, tilting, and embedment; he did ***not*** testify that any ***defect*** in the design of the filter caused any of those complications.  "In a strict liability case involving an allegedly defective product, the plaintiff must be able to make a prima facie showing that the defect in the product was the proximate cause of the injuries suffered."  *Barati v. Aero Industries, Inc.*, 579 So. 2d 176, 177 (Fla. App. 1991) (citing *West v. Caterpillar Tractor Co., Inc.,* 336 So.2d 80 (Fla. 1976) and *Cassisi v. Maytag Company,* 396 So.2d 1140 (Fla. 1st DCA 1981)); *see also Aubin*, 177 So. 3d at 503 (holding defendant may be held liable under a theory of strict-liability design-defect "when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have ***a defect that causes injury to a human being***" (emphasis added)); Fla. Std. Jury Inst. 403.12 ("A defect in a product… is a legal cause of …injury…if…"). As the court put it in *West*, Florida's seminal strict liability decision:

> In order to hold a manufacturer liable on the theory of strict liability in tort, the user must establish the manufacturer's relationship to the product in question, the defect and unreasonably dangerous condition of the product, and ***the existence of the proximate causal connection between such condition and the user's injuries or damages***.

*West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 87 (Fla. 1976) (emphasis added).

US.114909461.03

Absent a causal connection between defect and injury, a design defect claim fails.  For example, in *Barati*, the plaintiff was injured while trying to repair a defective cable pulley on a tarpaulin-pulling mechanism.  579 So. 2d at 177.  The Plaintiff brought design defect and negligent design claims against the product's manufacturer, and the manufacturer moved for summary judgment.  *Id.* The court conceded that the pulley was "defective" because the cable often slipped off the pulley when the product was used as intended.  *Id.*  Nevertheless, the court affirmed the grant of summary judgment on Plaintiff's design claims because it was plaintiff's attempt to repair the defect, ***rather than the defect itself***, that caused plaintiff's injuries.  *Id*. at 178 ("Normal use of the defective mechanism did not cause Barati's injuries: his <u>attempted repair</u> did." (emphasis in original)).  As the court put it, "the design defect had but a tenuous relationship to Barati's injuries," and plaintiff's claim therefore failed as a matter of law for lack of causation.  *Id.* at 177.

So here, Plaintiff's only causation expert Dr. Marmureanu offered no opinion that any defect in the design of Plaintiff's Celect IVC filter caused the perforation, tilting, or embedment of that filter or any of the injuries she attributes to those complications.  Indeed, in his entire direct and cross examination, he did not even *mention* the word "defect" or "defective."  And as noted above, Dr. Marmureanu agrees that "just because a patient has a complication, that doesn't mean there's something wrong with the device."  Tr. at 1720:1-5 (Oct. 31).  Absent expert testimony that some defect in the design of the Celect IVC filter caused her some injury, Plaintiff cannot establish the element of causation, and her design defect claim fails as a matter of law. *See Barati*, 579 So. 2d at 177.

Second, Dr. Marmureanu's testimony linking perforation, tilting, and embedment with the design of the Celect IVC filter is itself fatally inadequate.  The passage quoted above was the

*sum total* of Dr. Marmureanu's testimony about the cause of Plaintiff's perforation, tilting, and embedment.  He offered no explanation or analysis of why he concluded that the design of the filter caused these complications, and he provided no medical or scientific authority supporting his opinion.  He did not suggest that any particular aspect of the Celect's design caused these complications, and he did not try to link his opinion to any of the features of the Celect with which Dr. McMeeking took issue (e.g., stiffness, radial force, perforation limiters).  Cook submits that Dr. Marmureanu's unexplained, unsupported, and conclusory opinion is insufficient as a matter of law to support a jury finding on the element of causation.

Dr. McMeeking's testimony likewise fails to support any reasonable inference of specific causation.  Dr. McMeeking was not designated to testify on the issue of specific causation, he did not testify about causation, and he did not link any feature of the design of the Celect IVC filter to any injury Plaintiff claims.  Indeed, as noted above, Dr. McMeeking did not even opine that the Celect filter was actually *defective* in its design, and Plaintiff's attorneys blocked Cook's efforts to question Dr. McMeeking on his views about product defect.  *See* Tr. at 1102:9-1103:11.

Finally, Plaintiff has established no causal link between any claimed consumer expectations and Plaintiff's injuries.  Neither Dr. Zuzga nor anyone else testified that any general consumer expectations about the Celect's safety caused Dr. Zuzga to select the Celect filter for Plaintiff.  On the contrary, Dr. Zuzga's testimony established just the opposite.  Regardless of what safety expectations allegedly shaped by Cook the ordinary doctor placing IVC filters may have had, or how that supposedly Cook-generated expectation might have affected an ordinary doctor's conduct, none of that could have caused Plaintiff's injuries.  Indeed, the Court effectively found as much in its order granting summary judgment on Plaintiff's failure-to-warn

24

claim, Dkt. 6660.  As the Court held in that order, the undisputed facts established (1) that Dr. Zuzga did not rely on anything that Cook communicated to him in selecting the Celect filter for Plaintiff, (2) that he was already fully aware of all the risks of the Celect filter, and (3) that, even knowing the complications that Plaintiff actually experienced, he would not have changed his selection of the Celect filter or his treatment of Plaintiff, and he still believed that the benefits of the filter outweighed its risks.  Dkt. 6660 at 6-8; ; *see also* Zuzga Dep. Vol. 2 at 113:8-114:8; 224:21-225:13.  Given these established and undisputed facts in the Court's prior order, reinforced by Dr. Zuzga's trial testimony, no reasonable jury could conclude that any claimed consumer expectations concerning the safety of the Celect filter caused Dr. Zuzga's selection of Plaintiff's Celect filter or, in turn, the complications involving the filter and the injuries Plaintiff claims resulted from those complications.

## III.    Plaintiff Offered No Evidence to Support Liability of Defendant Cook, Inc.

Defendant Cook Incorporated (as distinguished from Defendants Cook Medical LLC and William Cook Europe APS) is entitled to judgment as a matter of law on all claims against it because Plaintiff failed to offer any evidence that Cook Incorporated has any role in the manufacture or sale of Mrs. Hill's IVC filter.  (Cook previously  moved for summary judgment as to Cook, Inc. on this ground as part of its main motion for summary judgment, *see* Dkts. 5753, 6510, but the Court did not rule on that portion of Cook's motion.)

To recover under any Florida product liability theory, a plaintiff must demonstrate that the defendant is in the chain of manufacture, sale, and distribution of the product claimed to have caused the injury.  *West v. Caterpillar Tractor Co.,* 336 So. 2d 80, 87 (Fla.1976) (adopting the requirement from the Restatement (2d) of Torts § 402A, which permits imposition of liability on "[o]ne who sells any product in a defective condition unreasonably dangerous" and requires that

US.114909461.03

the seller be engaged in the business of selling the product); *Jennings v. BIC Corp.*, 181 F.3d 1250, 1255 (11th Cir. 1999) ("the manufacturer of a defective product can be held liable if the manufacturer made the product in question"); *North Miami General Hospital, Inc. v. Goldberg*, 520 So. 2d 650, 652 (Fla. Dist. Ct. App. 1988) (finding the doctrine of strict liability inherently requires a defendant be a business within the product's distributive chain).

Plaintiff's attorney asserted in opening that "Cook, Inc. in Indiana distributes those devices in the United States."  10/23 Aft. Tr. at 14:51:59 04  But Plaintiff has offered no evidence in her case in chief to suggest that Cook Incorporated had any role in the manufacture, sale, or distribution of Hill's Celect IVC filter.  Without evidence that Cook Incorporated has some role in the chain of distribution of Plaintiff's Celect IVC filter, the jury does not have a legally sufficient basis to find Cook Incorporated liable to Plaintiff under her strict-liability design-defect claim.

In her response to Cook's earlier motion for summary judgment, Plaintiff argued that Cook, Incorporated could be found liable to Plaintiff notwithstanding its absence from the chain of distribution on two grounds:  (1) because Cook Incorporated manufactured a portion of an associated product, the introducer sheath for the Celect IVC filter, and (2) because Cook Incorporated profited from the sale of Plaintiff's Celect IVC filter.  These arguments cannot defeat JMOL here because they lack either legal or factual support.

First, as to the introducer sheath, Plaintiff makes no claim that the introducer sheath manufactured by Cook Incorporated was defective in any way.  Cook is aware of no authority under Florida law that permits a party to recover from the manufacturer of a *non*-defective medical device based on a claimed design defect in a related but separate medical device. Plaintiff essentially asks the Court to set the bar *higher* for manufacturers of non-defective, non-

26

component products than it is for manufacturers of *allegedly defective* components. To be clear, even if the introducer sheath were considered a "component" of the Celect IVC Filter (it is not), Cook Incorporated could not be liable under Florida law absent proof of design defect *in the sheath*. *See Scheman-Gonzalez v. Saber Mfg. Co.*, 816 So. 2d 1133, 1141 (Fla. Dist. Ct. App. 2002) (explaining that manufacturer of component part that is incorporated into larger product is liable *only if* "[t]he component is defective in itself" or "[t]he integration of the component causes the product to be defective" and the defect "causes the harm")(citing *Restatement (Third) of Torts: Products Liability* § 5 p. 140 (1997))(emphasis added); *see also Janusz v. Symmetry Med. Inc.*, No. 15-CV-294, 2017 WL 2539148, at *8 (E.D. Wis. June 9, 2017) ("A component manufacturer is strictly liable only if the injury *is directly attributable to a defect in the component*")(emphasis added, citations omitted). Here, Plaintiff has not even alleged any defect in the introducer sheath, much less offered evidence of such a defect. In addition, even assuming for the sake of argument that such a liability claim were possible, Plaintiff has offered no evidence at trial that Cook Incorporated actually manufactured the introducer sheath for Plaintiff's Celect IVC filter.[7]

Second, as to Cook, Incorporated's supposed profiting from Plaintiff's Celect IVC filter, the law again fails to support Plaintiff's theory that Cook Incorporated can be held liable solely because it may have profited indirectly from the sale of Plaintiff's Celect IVC filter. Plaintiff has correctly noted that "the underlying basis for the doctrine of strict liability is that those entities *within a product's distributive chain* 'who profit from the sale or distribution of [the product] to the public, rather than an innocent person injured by it, should bear the financial burden of even

---

[7] Although Plaintiff's response to Cook's summary judgment motion cited evidence in support of her assertion that Cook Incorporated manufactured the introducer sheath, *see* Dkt. 6161 at 34-35 (citing SAMF, Dkt. 6162, which in turn cites Mark Breedlove's 30(b)(6) Dep. at 29:21- 31:13 and 31:21-32:17), Plaintiff did not offer that or any other supporting evidence at trial.

US.114909461.03

an undetectable product defect.'"  *Samuel Friedland Family Enters. v. Amoroso*, 630 So. 2d

1067, 1068 (Fla. 1994) (quoting *North Miami General Hosp., Inc. v. Goldberg*, 520 So. 2d 650,

651 (Fla. 3d DCA 1988)).  But Cook is aware of no Florida authority that profiting from the sale

of a product, even indirectly, is sufficient *by itself* to support strict liability.  If that were the rule,

then every shareholder of a company could personally be held strictly liable for every defective

product the company might sell, and that clearly is not the law.

  If Plaintiff wants to hold Cook Incorporated vicariously liable for products manufactured

and sold by related but separate companies, she bears the burden of proving a ground for that

liability.  *See, e.g., Enic, PLC v. F.F. S. & Co.*, 870 So. 2d 888, 891 (Fla. Dist. Ct. App. 2004) (in

the context of a parent corporation and its subsidiary, "[d]etermination of the existence of an

agency is an issue of fact and the burden is on the plaintiff to establish a prima facie case.").

Plaintiff has not alleged any theory of alter ego, "piercing the corporate veil," or any other

ground for vicarious liability.  *Cf., e.g., Lipsig v. Ramlawi*, 760 So. 2d 170, 187 (Fla. Dist. Ct.

App. 2000) ("even if a corporation is merely an alter ego of its dominant shareholder or

shareholders, the corporate veil cannot be pierced so long as the corporation's separate identity

was lawfully maintained").  Moreover, even if Plaintiff had pleaded a tenable legal theory for

vicarious liability based on Cook Incorporated profits or relationships with other Cook entities,

she has offered no evidence that would permit the jury to infer that Cook actually profited from

the sale of Plaintiff's Celect IVC filter or that Cook Incorporated had any relevant financial

relationship with the Cook entities actually in the distribution chain for her filter.

  In sum, Plaintiff has offered no evidence at trial that would support a jury finding that

Cook Incorporated had any role in the manufacture or distribution of Hill's Celect IVC Filter or

US.114909461.03

received any financial benefit from the sale.  Cook Incorporated is therefore entitled to judgement as a matter of law on all of Plaintiff's claims against Cook Incorporated in this matter.

## CONCLUSION

For the reasons set forth above and in Cook's oral argument to the Court, the Cook defendants urge the Court to grant their motion and to order judgment as a matter of law on all of Plaintiff's remaining claims against them.  In the alternative, Cook, Incorporated urges the Court to order judgment as a matter of law as to all claims against it on the ground that it did not manufacture, sell, or distribute Plaintiff's Celect IVC filter.

Respectfully submitted,


Dated: November 2, 2017                    /s/ *Andrea Pierson*
                                           Andrea Roberts Pierson (# 18435-49)
                                           John T. Schlafer (# 28771-49)
                                           FAEGRE BAKER DANIELS LLP
                                           300 North Meridian Street, Suite 2700
                                           Indianapolis, Indiana  46204
                                           Telephone: (317) 237-0300
                                           Facsimile:  (317) 237-1000
                                           E-Mail:  andrea.pierson@faegrebd.com
                                           E-Mail:  john.schlafer@faegrebd.com

                                           *Counsel for the defendants, Cook Incorporated,*
                                           *Cook Medical LLC (f/k/a Cook Medical*
                                           *Incorporated), and William Cook Europe ApS*

US.114909461.03

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 2, 2017, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.  Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.


/s/ *Andrea Pierson*

US.114909461.03