UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND           Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS   LIABILITY LITIGATION           MDL No. 2570

_____

This Document Relates to Plaintiff
    Elizabeth Jane Hill
    Civil Case No. 1:14-cv-06016-RLY-TAB

_____

### PLAINTIFF'S RESPONSE TO DEFENDANTS BENCH BRIEF REGARDING NON-RETAINED EXPERT'S NOTES

Dr. Jennifer Brown is an employee of Cook and has been designated to testify as a non-retained expert at trial. She is on Defendants' "will call" list for next week.  Cook asserts claims of attorney-client privilege and work product protection over several entries in notepads that Dr. Brown produced after their existence was discovered during her September expert deposition. A proper analysis of the law shows that this Court has previously held such privileges waived.

    **I.**    **Dr. Brown's testimony does not suggest the notes were taken in the course of discussions with counsel or that she maintained one notepad as a fact witness and one as an expert witness.**

Dr. Brown's testimony under oath does not mention discussions with counsel and does not suggest the notebooks would reflect counsel's communications or mental impressions. Nor does Dr. Brown state that she prepared one notebook as a fact witness and one as an expert as Cook asserts (although Cook does not appear to argue the distinction matters):

> Q. The sixth -- oh, and I did request notes here back in No. 5. **Have you made notes** of any description **in the course of preparing to give testimony, expert testimony**, in the case?
>
> A. Description of -- I mean, **I've taken notes just to refresh my memory of things**.
>
> Q. Right. That's what I'm describing. So, **if you're reviewing a document and just taking notes** on stuff that you may want to talk about or give opinions on.

> A. **Yeah, like I've resummarized key points from, let's say, a few articles that I've read**.
>
> Q. And what form do those notes or summaries take?
>
> A. It's in a notepad, and that's –
>
> Q. Handwritten?
>
> A. Horrible handwriting, yes.
>
> Q. All right. Well, at least you don't have to go through the process of untangling it today. All right. And is that all contained in one notepad?
>
> A. I think **it might be in two now. Only because I forget one sometimes**. But, yes, I know where they are.

(J. Brown Dep. 9/9/17 at 21:23-22:24) (Ex. A.)

Later in the deposition Dr. Brown did not quibble with counsel's characterization of the notepads as summaries of her review of evidence in the case:

> Q. You have **two notepads that include key points and summaries that you have taken with respect to your review of evidence in connection with the case**, correct?
>
> A. Yes.

(*Id.* at 185:17-23) (over objection to form but not as to privilege). Ms. Brown mentions summarizing key points and reviewing articles, but not meeting with attorneys. Rather than stating she created one notebook for her fact testimony and one for her later expert testimony, she says she maintained two because she sometimes forgot the first one. No assertion of privilege was made at the deposition when the undersigned requested production of the notebooks. Of course, if *in camera* review of the redacted materials reveals identifiable communications with attorneys, that would change things; but as things stand Dr. Brown's testimony under oath does not suggest that is the case and her testimony cannot be rebutted by unattested argument of counsel.

Cook has the burden of establishing the privileges it invokes, as recognized in the cases cited in its brief. *See, e.g.*, *Graco, Inc. v. PMC Glob.*, 2011 WL 666056 at *11 (D.N.J. Feb. 14, 2011).

### II. As a non-retained testifying expert, Dr. Brown's preparation materials are not protected by any privilege.

Rule 26 expressly protects communications between attorneys and **retained** experts, but does not extend those protections to **non-retained** experts like Dr. Brown. Fed. R. Civ. P. 26(b)(4)(C) ("*Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses.* Rules 26(b)(3)(A) and (B) **protect communications between the party's attorney and any witness <u>required to provide a report</u>** under Rule 26(a)(2)(B), regardless of the form of the communications….") (emphasis added). The preceding subsection of Rule 26 protects drafts of reports or disclosures "required under Rule 26(a)(2)." Fed. R. Civ. P. 26(b)(4)(B). Thus, the rule intentionally protects drafts of all experts but protects communications only with experts required to provide a report.

The first case Cook cites—*Bingham v. Baycare Health Sys.*, 2016 WL 5106946 (M.D. Fla. Sep. 20, 2016)—articulates this distinction:

> Specifically, Rule 26(b)(4)(B) protects drafts of any report or disclosure required under Rule 26(a)(2) and therefore applies to experts disclosed under both Rule 26(a)(2)(B) and Rule 26(a)(2)(C). In contrast, the protection afforded to attorney-expert communications applies only to communications between a party's attorney and retained experts under Rule 26(a)(2)(B).

*Id.* at *5. Cook relies on *Bingham* to assert privilege here, but in *Bingham* the plaintiff asserted privilege arguing the materials at issue could "be construed as a very preliminary draft of an expert report." *Id.* In other words, the protection there would have fallen under Rule 26(b)(4)(B), which protects draft reports, not Rule 26(b)(4)(C), which is the provision at issue here. The *Bingham* court recognized "The **protection afforded to draft expert reports** is designed to protect the mental impressions and theories of the attorney, not the expert's." *Id.* at

- 3 -

\*3 (emphasis added). Cook does not attempt to characterize Dr. Brown's notepads as draft reports, of course, because as a non-retained expert Dr. Brown did not draft a report.

Cook next relies on *Graco, Inc. v. PMC Global*, 2011 WL 666056 (D.N.J. Feb. 14, 2011). The *Graco* court found that certain employee experts were essentially non-retained experts. *Id.* at \*14. It canvassed the law on Rule 26 disclosures and on attorney-client privilege and, without analysis or application of the law to the facts, held that attorney-client communications were privileged. *Id.* *Graco* thus supports Cook's legal position (if one assumes the notepads in fact reveal attorney-client communications). However, *Graco* provides a long recitation of facts and general law but no analysis of the issue.

Cook finally relies on *PACT XPP Techs v. Xilinx, Inc.*, 2012 WL 1205855 (E.D. Tex. Apr. 11, 2012), which does also support Cook's position by holding that the attorney-client privilege and work product protections may be invoked with respect to a non-retained expert. *Id.* at \*4. It relies primarily on language from the 2010 Committee Notes to the Federal Rules of Evidence but does not analyze pre-2010 law, which would be appropriate because the 2010 amendments did not alter the preexisting law on experts like Dr. Brown. In other words, *PACT* correctly recognizes the 2010 amendments did not protect communications with experts like Dr. Brown and correctly recognizes the 2010 Committee Notes hold open the possibility communications with non-retained experts might be privileged; but it fails to then analyze the preexisting law that governs when such communications are in fact privileged.

Of course, to obtain a ruling consistent with *PACT* and *Graco*, Cook must meet its burden to demonstrate that Dr. Brown's notes in fact reflect attorney communications or mental impressions and not merely "the opinions to be offered by the expert or the development, foundation, or basis of those opinions." *Graco*, 2011 WL 666056 at \*9.

Contrary to Cook's cited cases is the early and influential *United States v. Sierra Pacific Industries*, 2011 WL 2119078 (E.D. Cal. May 26, 2011). *Sierra Pacific* deeply analyzed this

- 4 -

issue, including in its review the committee report from the 2010 amendments which found "**there were certain circumstances under which broad discovery should be allowed into a party attorney's communications with a non-reporting employee expert witness, the committee refused to protect such communications in all cases**. But the committee did not intend that such communications with non-reporting expert witnesses be discoverable in all cases." *Id.* at *7 (emphasis added).  Because the 2010 amendments did not alter the existing law on non-reporting "testifying experts" like Dr. Brown, the *Sierra Pacific* court correctly noted that pre-2010 caselaw applies and that "[t]he **majority view, and the better view … is that all things communicated to the expert and considered by the expert in forming an opinion must be disclosed even if it constitutes opinion otherwise protected as work product**." *Id.* (quoting *Ass'n of Irritated Residents v. Dairy*, 2008 WL 2509735 at *1 (E.D. Cal. 2008) (emphasis added).

      The *Sierra Pacific* court noted *Graco*'s dearth of analysis on the issue and arrived at the opposite conclusion, which was consistent with all prior caselaw in the Ninth Circuit:

> While it is desirable that any testifying expert's opinion be untainted by attorneys' opinions and theories, **it is even more important that a witness who is testifying regarding [her] own personal knowledge of facts be unbiased**. Therefore, at least in some cases, discovery should be permitted into such witnesses' communications with attorneys, in order to prevent, or at any rate expose, attorney-caused bias.

*Id.* at 9 (emphasis added)  The court concluded that the privileges had been waived.  This makes sense because the employee non-retained experts had "first-hand factual knowledge" regarding core issues in the case, unlike retained experts. The *Sierra Pacific* court reasoned that "[i]f their communications with counsel were protected, any potential biases in their testimony … would be shielded from the fact-finder." *Id.* at 10.  Dr. Brown is not merely a retained expert from whom one may expect a certain amount of advocacy and bias.  Her opinions are factual in nature, i.e., they derive from and are limited to her experiences at Cook in the matters she will testify upon.  Her communications with counsel were not proprietary discussions around her

- 5 -

work at the company, they occurred—if they occurred at all—in preparing her to testify. *See also PacifiCorp v. NW Pipeline GP*, 879 F. Supp. 2d 1171, 1213 (D. Or. 2012) (witnesses who "may provide both expert and lay testimony … fall in the category of hybrid fact and expert witnesses whose designation as non-reporting experts serves to waive all applicable privileges and protections for items they considered that relate to the topic of their testimony."); *Luminara Worldwide, v. Liown Elecs. Co. Ltd.*, 2016 WL 6774229 at *3 (D. Minn. Nov. 15, 2016) (citing *Sierra Pacific* and finding waiver of privileges for non-retained expert).

Importantly, **the Southern District of Indiana has held that intentional disclosure of work product to testifying experts waives work product protections.** As the *Sierra Pacific* court noted, the 2010 amendments represent the first time Rule 26 distinguished between retained/reporting and non-retained/non-reporting experts (and it did not extend to non-retained/non-reporting experts the same protections afforded retained/reporting experts). It did not alter the preexisting law regarding waiver of privilege as to what were previously referred to generally as "testifying experts" (whether retained experts or non-retained experts aka "hybrid experts"). This Court held the following: "The more persuasive decisions hold that at least **intentional disclosure of opinion work-product to a testifying expert waives the privilege**. *Simon Prop. Group L.P. v. mySimon, Inc.*, 194 F.R.D. 644, 646 (S.D. Ind. 2000) (Hamilton, J.) (citing *In Karn v. Ingersoll–Rand Co.*, 168 F.R.D. 633, 637–41 (N.D. Ind. 1996) (Cosbey, M.J.)) (emphasis added). The *Simon Properties* court continued:

> Magistrate Judge Cosbey considered this issue in detail and thoroughly analyzed the case law, commentaries, and competing policy arguments. He held that **the requirements for disclosure of matters "considered" by a testifying expert in forming his or her opinions prevailed over any claim of work-product privilege, including claims that documents constituted "opinion" work-product.** In light of the 1993 amendments to Rule 26(a)(2), he specifically rejected any distinction between documents that the expert "reviewed" and those that the expert "relied upon."
>
> \*\*\*

> After reviewing these decisions, this court agrees with Magistrate Judge Cosbey's holding and reasoning in *Karn* and with the other courts that have followed that decision. **An intentional disclosure of opinion work-product to a testifying expert witness effectively waives the work-product privilege.** Without repeating the extensive debate in the cited opinions, under Rule 26, **an attorney should not be permitted to give a testifying expert witness a detailed "road-map" for the desired testimony without also giving the opposing party an opportunity to discover that "map" and to cross-examine the expert about its effect on the expert's opinions** in the case

*Simon Prop. Group v. mySimon, Inc.*, 194 F.R.D. 644, 646-7 (S.D. Ind. 2000)

This Court's interpretation of the pre-2010 law is consistent with that of the district courts in the Ninth Circuit, i.e., all of the caselaw relied upon by the *Sierra Pacific* court.

No lawyer or judge takes lightly waiver of the attorney-client privilege or the disclosure of an opposing lawyers' mental impressions; but federal law has long recognized when it is appropriate to do so. Assuming—as it has not been yet shown—that the redactions to Dr. Brown's records reveal such communications or opinion work product, the hard but inevitable truth is that Cook's lawyers should have apprised themselves of the law before freely sharing their ideas with an employee they intended to have testify at trial because the law has been quite clear for quite a while that those communications enjoy no privilege.

>  */s/ Matthew D. Schultz*
> Matthew D. Schultz (FL Bar #640328)
> LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A.
> 316 South Baylen Street, Suite 600
> Pensacola, FL 32502-5996
> Telephone:  (850) 435-7140
> Facsimile:   (850) 435-7020
> Email:  mschultz@levinlaw.com
>
> *Counsel for Plaintiff*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 3, 2017, a copy of the foregoing was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Co-Counsel for Defendants will serve any non-CM/ECF registered parties.

                                              */s/ Matthew D. Schultz*
                                              Matthew D. Schultz (FL Bar #640328)
                                              LEVIN, PAPANTONIO, THOMAS, MITCHELL,
                                              RAFFERTY & PROCTOR, P.A.
                                              316 South Baylen Street, Suite 600
                                              Pensacola, FL 32502-5996
                                              Telephone: (850) 435-7140
                                              Facsimile: (850) 435-7020
                                              Email: mschultz@levinlaw.com

                                              *Counsel for Plaintiff*