IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No.  1:14-ml-2570-RLY-TAB MDL No. 2570 |

This Document Relates to: All Actions

**COOK DEFENDANTS' MOTION TO CONTINUE OR STAY *BRAND*
AND SELECT PRODUCT-IN-PLACE REPRESENTATIVE BELLWETHER TRIALS**

For the reasons set forth in more detail below, the Cook Defendants move the Court to continue or stay *Brand*—currently set for trial as a bellwether case in September 2018—and choose instead Product-in-Place representative bellwether trials.  *Brand* is not representative of this multi-district litigation, and trying *Brand* will not inform the parties on any issues common to other cases.  Instead, the Cook Defendants request that the Court try Product-in-Place cases, that is, cases where the product was placed, but not retrieved, and no *real* injury was alleged, as these cases represent a third of the cases in this MDL.

**INTRODUCTION**

The purpose of a bellwether trial is to provide useful information to the parties that can help facilitate the resolution of issues or other cases in the MDL.  "If bellwether trials are to produce reliable information about the other cases in the MDL, the specific plaintiffs and their claims should be representative of the range of cases."  Barbara Rothstein & Catherine Borden, Federal Judicial Center, *Managing Multidistrict Litigation in Products Liability Cases: A Pocket Guide for Transferee Judges* 44 (2011).  Indeed, "[t]he more representative the bellwether cases, the more reliable the information about similar cases will be."  *Id.* at 45.  Bellwether cases should

"represent the MDL as a whole." (*See* April 15, 2016 Order on Fifth Amended Case Management Plan, at 1 [Dkt. No. 1341] (hereinafter, "Bellwether Order").)

*Brand* is unrepresentative of the MDL in whole (or even in part). *Brand* involves both a fractured IVC filter and an open surgical procedure to remove the filter. However, to date, of the 2,908 plaintiffs who have submitted a Plaintiff Profile Form, only **0.86%** of these cases include allegations of both fracture and open removal procedure (25 cases). (Only 11.1% of the plaintiffs allege fracture, and only 2.3% of plaintiffs allege an open removal.) In addition, *Brand* is the **only** case in the entire MDL where the plaintiff alleges that there are retained fragment(s) of the filter in her body that cannot be retrieved and that another filter fragment *sua sponte* became extracorporeal (i.e., outside the body)—events Mrs. Brand describes as life-altering, dramatic, and for which she requests both compensatory and punitive damages. Trial of the allegations in *Brand*, thus, would not illuminate any issue relevant to the MDL or the parties in it. Consequently, *Brand* is unrepresentative and, therefore, lacks value as a bellwether.

Contrary to *Brand*, a significant portion of the MDL is comprised of Product-in-Place ("PIP") and No Injury cases, which *are* representative of the MDL. PIP/No Injury cases are essentially cases where the plaintiff alleges no injury at all. In most cases, the plaintiff's chief complaint is that the product remains in place.[1] Cases that fit into this PIP/No Injury category make up **33% of the MDL**, whereas only 0.86% of cases in the MDL fit the allegations at issue in *Brand*. Cook respectfully submits that if the true goal of this multi-district process is to conduct discovery, resolve legal issues, and value cases common to the MDL, trial of *Brand* achieves none of those goals. The parties and the Court would invest countless hours working

---

[1] Included in this definition are cases where the product is in place, and the plaintiff has also alleged in the Plaintiff Profile Forms or Fact Sheets (PPF or PFS) (1) the product is tilted, and/or (2) "Other" outcomes not recognized by the agreed PPF and PFS, but where no meaningful physical injury was alleged (e.g., mental anguish, too risky, and frequent monitoring required, and in many cases where no "Other" outcome was described).

this case up for trial, but at the end of the trial, the parties and the Court are unlikely to gain any information that would facilitate the resolution of the remaining cases.  For this reason, the Court should continue or indefinitely stay the *Brand* trial and replace it with more representative PIP/No Injury cases.

## BACKGROUND

### I.   The Evolution of this MDL

*Brand* was selected as a bellwether on July 19, 2016, along with *Gage* and *Hill*. (*See* July 19, 2016 Order on Bellwether Trial Selections [Dkt. No. 2107].)   At the time *Brand* was selected, there were about 824 cases in the MDL, and only 74 of the cases in the MDL were eligible for bellwether selection. (Bellwether Order, at 3 [Dkt. No. 1341].)  Since *Brand* was selected, the MDL has more than quadrupled in size.  Today, there are now roughly 3,766[2] cases.  Around the time *Brand* was selected as a bellwether trial, the Plaintiff Profile Forms and Plaintiffs' responses to CMO-13 suggested that the predominate outcome alleged by the plaintiffs for both Tulip and Celect was IVC perforation.  (*See* Cook Defs.' Mem. Regarding the New Disc. Pool & Cook's Proposed Bellwether Trials, at 4, Table 1 (May, 20, 2016) [Dkt. No. 1634].)

Today, the outcomes alleged by plaintiffs are as follows:

---

[2] Although there are roughly 3,766 cases in the MDL, only 2,908 have submitted Plaintiff Profile Forms.  It is important to note that the information available in the Plaintiff Profile Form is self-reported by plaintiffs.  Based on medical records that the Cook Defendants have reviewed to date, the Cook Defendants believe that the incidence of the various alleged device failure modes at issue in the MDL are over stated.  Nonetheless, the plaintiffs' self-reporting is the best information currently available on the makeup of the MDL.

**Table 1: December 27, 2017 MDL Case Statistics Based on PPF**

|  | Other | Unable to Retrieve | IVC Perforation | Tilt | Migration | Organ Perforation | Fracture | Bleeding | Open Removal |
|---|---|---|---|---|---|---|---|---|---|
| **Tulip** | 780 | 756 | 534 | 458 | 193 | 128 | 82 | 67 | 11 |
| **Celect** | 811 | 686 | 684 | 556 | 337 | 279 | 242 | 115 | 56 |
| **Total** | 1,591 | 1,442 | 1,218 | 1,014 | 530 | 407 | 324 | 182 | 67 |

**Figure 1: December 27, 2017 Makeup of MDL by Alleged Outcome[3]**



Further analysis of the 2,908 cases in which a plaintiff has completed PPF reveals that there are 961 PIP/No Injury cases—roughly 38 times larger than the 25 cases for which *Brand* would be representative (i.e., cases alleging both fracture and open removal).

## II.  The Procedural History of *Brand*

To date, very limited discovery has taken place in *Brand*.  Only the Plaintiffs, Tonya and Allen Brand, and Cook's district manager, Tamara Clemmer, have been deposed.  Although the parties are in the process of collecting medical records related to Mrs. Brand's past and present medical history, none of Mrs. Brand's treating physicians have been deposed; neither have any other fact or damages witnesses.  Expert witnesses and their reports will be produced in mid-April for plaintiffs and mid-May for Cook.  Consequently, no expert depositions have taken

---

[3] The percentages in this chart represent the overall alleged outcome makeup of the MDL as a whole, not the percentage of plaintiffs alleging any particular outcome.  For example, although 11.1% (324/2,908*100=11.1%) of plaintiffs allege fracture, fracture makes up only 5% (324/6,605*100=5%) of the MDL.

4

place to date in *Brand*.  Moreover, no motion for summary judgment, *Daubert* motion, or any other pre-trial, evidentiary motion has been filed.  Pursuant to the schedule entered by the Court on August 23, 2017, the bulk of the work on depositions and motions practice will occur from February to April of 2018.  (*See* Second Amended Case Management Order # 19 (Third Amended Bellwether Trial Plan), Ex. C [Dkt. No. 5889-3].)

## ARGUMENT

*Brand* is unrepresentative of the MDL and therefore lacks value as a bellwether.  Mrs. Brand has a complicated and convoluted medical history.[4]  She received her filter immediately before undergoing a spine surgery in 2009.  (*See* First Amended Complaint, ¶ 23).  Two years later, she claims she pulled a fractured piece of her filter from her thigh.  (*Id.* at ¶ 26.)  Although this fact alone makes her case unique—if not virtually unheard of—the case is further complicated by the fact that (1) Mrs. Brand ultimately opted to have an open procedure to remove her filter, and (2) Mrs. Brand claims there are multiple filter fragments that remain in her body and are lodged against her spine, which she says prevents many of her activities of daily living and causes her constant back pain and anxiety.  (*See* Third Supplemental Plaintiff Profile Form, at pp. 2-3, relevant excerpts attached as Exhibit A; Plaintiff Fact Sheet, at pp. 14-15, relevant excerpts attached as Exhibit B.)

The fact that Mrs. Brand's filter fractured makes her case an outlier.  The fact that Mrs. Brand also underwent an open removal procedure makes her case an *extreme* outlier.  The fact Mrs. Brand alleges that the filter fragments remain in her body on the verge of injury at any moment, with a fragment being pulled through the skin of her thigh makes this case a class of one within this MDL.  Of the 2,908 plaintiffs who have submitted a Plaintiff Profile Form, only

---

[4] Defendants have collected over 11,900 pages of medical records.  For frame of reference, in the *Hill* case, Defendants collected 5,916 pages of medical records.

about 25, or roughly **0.86%**, of these cases include allegations of both fracture and open removal procedure. Cook has been unable to locate a single other case in the MDL where a plaintiff claims to have pulled a piece of the filter from her body, much less a plaintiff claiming filter fragments remain and are migrating within (and outside) of the body. Consequently, the *Brand* case is wholly unrepresentative of the MDL, and it therefore lacks value as a bellwether. *See In re Chevron USA, Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997) ("A bellwether trial designed to achieve its value ascertainment function for settlement purposes or to answer troubling causation or liability issues common to the universe of claimants has as a core element representativeness . . . .").

Because *Brand* is unrepresentative, it should not be a bellwether trial. If tried at all, *Brand* should be continued until mid-2019 or otherwise stayed, so that the parties may in the meantime try cases representative of a significant segment of the MDL. As noted above, the single largest category of cases in the MDL today are what's known as PIP/No Injury cases. Nine-hundred and sixty-one of the 2,908 plaintiffs who have submitted Plaintiff Profile Forms fit the PIP/No Injury definition. Fracture and open removal cases, on the other hand, are outliers, and cases like *Brand* that involve both fracture and an open removal procedure are even less representative (less than one percent of the MDL).

If the Court and parties want the bellwether process to produce meaningful results, then the cases tried as bellwethers should be representative of the MDL as a whole, and the single largest segment of the MDL at present is PIP/No Injury cases. Specifically, the Cook Defendants respectfully request that the Court should order a new bellwether selection process that includes the random selection of cases with strikes from the PIP/No Injury cases. In doing so, the Court would create a pool of 961 PIP/No Injury cases from which bellwethers could be

selected. Because the bellwether process is best served when the cases have as few confounders and variables as possible, cases that simply allege no injury at all would best serve the bellwether process. However, any case meeting the PIP/No Injury definition would be more informative and representative than *Brand*.

Finally, while Cook denies that any of the cases in the MDL have merit, it is worth noting that the plaintiffs have repeatedly claimed that the cases where an IVC filter remains *in situ* are the vast majority of the cases in the MDL. Those cases have been a significant driver of the growth of the MDL over the last 18 months, and they likely will continue to be a significant driver of MDL filings given the overwhelming attorney advertising for IVC filter cases by some plaintiffs' counsel. For example, in an advertisement posted on the National Injury Help website on March 3, 2017, titled "Product in Place Lawsuits an Option for IVC Filter Patients with no Complications," the author of the advertisement states that "People who have retrievable IVC filters implanted but haven't noticed any symptoms or complications may still be eligible for an IVC filter claim. These claims are called Product in Place, or PIP." (Attached hereto as Exhibit C.) Another example is an advertisement for a webinar titled "IVC Filter – The Keys to Unlocking Value in Product in Place Cases." (Attached hereto as Exhibit D.) The fact that 99% or more of the thousands of patients implanted with the Tulip or Celect have reported no complication at all with their IVC filter also suggests that PIP/No Injury cases will continue to be a significant driver of MDL filings.

Consequently, if the parties and the Court have any hope of resolving this MDL, it is in the interest of all to determine the value of the PIP/No Injury cases sooner rather than later so that plaintiffs' counsel will have information on the value of the PIP/No Injury cases for which they are now advertising. As recognized during the recent Court Ordered Settlement

Conference, resolving the issue of PIP/No Injury cases through the bellwether process would go a long way towards eliminating a major obstacle to moving this MDL forward.  *See In re: Cook Medical, Inc., IVC Filters Marketing, Sales Practices & Prods. Liab. Litig.*, 53 F. Supp. 3d 1379, 1381 (J.P.M.L. 2014) ("[I]f defendants believe plaintiffs' counsel are filing frivolous claims, it is incumbent upon defense counsel to bring that concern to the attention of the transferee court, and to propose a process to identify and resolve such claims.").

## CONCLUSION

For the foregoing reasons, the Court should continue or indefinitely stay the *Brand* trial and should enter an order establishing a PIP/No Injury bellwether process.  The majority of case specific discovery has not been completed in *Brand*, and no expert disclosures or expert discovery has been undertaken.  Thus, staying or postponing the *Brand* trial work up would not prejudice plaintiffs.  It is in the best interest for all involved to address now, in place of *Brand*, the PIP/No Injury cases, which comprise roughly 33% of the MDL, as opposed to a single case that represents .86% or less of the MDL.  The Cook Defendants will submit a proposed order for the Court's and plaintiffs' consideration that establishes a PIP/No Injury bellwether process.

Dated: December 29, 2017    Respectfully submitted,

/s/ Andrea Roberts Pierson
Andrea Roberts Pierson (# 18435-49)
John T. Schlafer (# 28771-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone: (317) 237-0300
Facsimile:  (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-Mail:  john.schlafer@faegrebd.com

James Stephen Bennett (# 22869-02)
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana  46802
Telephone: (260) 424-8000
Facsimile:  (260) 460-1700
E-Mail:  stephen.bennett@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 29, 2017, a copy of the foregoing "Cook Defendants' Motion to Continue or Stay *Brand* and to Select Product-in-Place Representative Bellwether Trials" was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.  Lead Counsel for Defendants will serve any non-CM/ECF registered parties.


/s/ Andrea Roberts Pierson