IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |
| This Document Relates to<br>　*Brand v. Cook Medical, Inc. et al.,*<br>　1:14-cv-06018-RLY-TAB | **Brief in Support of Plaintiffs' Motion to Compel Depositions** |

### PLAINTIFF'S BRIEF IN SUPPORT OF HER MOTION TO COMPEL DISCOVERY

Pursuant to Federal Rules of Civil Procedure 26, 30 and 37 and Local Rule 37-, Tonya Brand moves the Court to compel the production of the complete complaint report regarding Ms. Brand's failed filter and the depositions of several Cook employees. These employees all have relevant information relating to the sale of Cook IVC filters to the plaintiff's implanting physician or the failure of the Celect filter that perforated Tonya Brand's vena cava, became embedded, fractured, and invaded other vessels and organs, leading to an open retrieval of the body of the filter.

### FACTUAL BACKGROUND

The documents that the plaintiff seeks from Cook are the 28 files listed as attachments to the "Single Complaint Reports" Cook generated with regard to Ms. Brand's filter failure. As will be addressed further in Section C, CMO 4 requires that Cook fully answer Defendant Fact Sheets in all Bellwether cases including Brand. Section VI(D) of the Defendant's Fact Sheet specifically requires provision of a true and complete copy of the complaint file (in this case the

"Single Complaint Report(s)". Cook has never provided the actual attachments referenced in its reports though plaintiff has asked for them on several occasions.

All of the employees or agents of Cook whose depositions have been requested participated in the sale of IVC filters to Dr. Mark Rheudasil, the implanting physician, or investigated the complaint brought by Ms. Brand's physician and assisted with the analysis of Ms. Brand's specific filter and the reason for its failure. Plaintiff has not asked to depose every member of the Cook investigation team—only key players, only one of whom has previously been deposed. Ms. Brand has sought to obtain these depositions—several of which were requested as far back as last summer—and all of which are relevant to her case. Nonetheless Cook has refused to offer any of those individuals for deposition.[1]

Specifically, Plaintiffs seek to depose the following individuals:

**Don Archie**: Mr. Archie is the Regional Manager who supervised the sales activities of Meg Senker Donley and Tamara Clemmer, the two sales representatives who were responsible for calling on Dr. Rheudasil at the time he implanted Ms. Brand's IVC. Mr. Archie has never been deposed.

**Meg Senker Donley**: Ms. Donley is one of two District Managers who had responsibility for making sales calls on Dr. Rheudasil with regard to Cook's IVC filters at the time he placed Ms. Brand's Celect IVC filter. She has never been deposed.

---

[1] Other Cook employees who participated in the complaint process or investigation but whom Plaintiff does not seek to depose here include Tamara Hanson, Susan Ballegaard, Arne Molgaard Nielsen, Torben Andersen, Qiang Fu and Yvette Appel.

2

**Dr. Griffin (first name unknown)**:  According to the Single Complaint Report, "Dr. Griffin" reviewed Ms. Brand's medical records and imaging and offered several medical opinions regarding the case.  Dr. Griffin has never been deposed.'

**Lykke Sylow Iversen:**  Ms. Iversen is in Quality Engineering and the Brand complaint investigation was assigned to her specifically. She authored the Brand Single Complaint Report (in fact there were two—she authored both) and performed the "risk assessment" included in the report. She has never been deposed.

**Thomas Willads Jensen**: Mr. Jensen is a filter Product Manager who participated in the Brand complaint evaluation as reflected in the Single Complaint Report and associated emails. He has never been deposed.

**Annette Luneborg**:  Ms. Luneborg—a Coordinator in Regulatory Communications—was the "peer reviewer" for the Brand Single Complaint Report and also performed independent evaluations/classification of Ms. Brand's and other complaint reports. She has not been deposed.

**Darrell Talbert**:  Mr. Talbert personally visited the implanting/complaining physician after he filed the initial complaint with Cook.  Oddly, although Mr. Talbert has been deposed before, and is the only of these witnesses to have been deposed before, he is the only witness Cook agreed to have Plaintiff depose, but only on the condition that Plaintiff waive depositions of all others involved in the complaint investigation. Mr. Talbert has been deposed twice and testified in the *Hill* trial; but he has never been deposed regarding the Brand complaint/ investigation or his interactions with Ms. Brand's treating physician.

Cook's objections have rested largely on the notion that Plaintiffs in the MDL already took several depositions on "complaint handling."  None of those depositions involved these witnesses, the Brand case, or the Brand Single Complaint Forms, which are lengthy, detailed,

contain technical Quality Engineering risk documentation/analysis, and are specific to this Bellwether Plaintiff.

### A. THE BRAND FILTER FAILURE

Ms. Brand was scheduled for spine surgery on March 19, 2009. On that day, Ms. Brand was taken to the OR and Mark Rheudasil, MD placed a Cook Celect into her inferior vena cava. Once the filter was in place, Thomas Morrison, III, MD performed the surgery on her spine. The Cook Celect IVC filter was implanted as a prophylactic measure ostensibly to prevent the development a pulmonary embolus.

On June 17, 2011, Ms. Brand pulled a piece of metal out her thigh which was later confirmed to be a piece of her IVC filter. Dr. Rheudasil's office reported Ms. Brand's fractured filter to Cook's District Manager, Tamara Clemmer, on June 22, 2011. On or about Tuesday, June 28, 2011, Darrell Talbert met with Dr. Rheudasil to discuss Ms. Brand's filter.[2] On July 14, 2011 there was an unsuccessful attempt to remove the fractured IVC filter. That surgery was performed by Mark Rheudasil, MD. On October 22, 2015, Dr. Rheudasil performed an open retrieval procedure that successfully retrieved the main body of her Celect filter but left a piece of the filter behind.

### B. COOK'S INVESTIGATION OF THE BRAND EVENTS

On July 22, 2011, an investigation into Tonya Brand's fractured Celect filter was originated by Cook under Cook's complaint investigation process. In the course of this investigation, Darrell Talbert arranged a meeting with Dr. Rheudasil[3] and Ms. Lykke S. Iversen was assigned to organize

---

[2] Exhibit "1" Email exchange dated 06/23/2011, CookMDL2507_0074640 – 645.

[3] *Id.*

4

and complete the Single Complaint Report. The Single Complaint Report was created as part of the investigation (in fact there were two). It details the events relating to the Brand Celect filter's sale, manufacturing history, lot number, implantation, perforation, and ultimate fracture and embolization including removal of a piece of the filter from the victim's thigh by the victim herself.[4]

The Single Complaint Report for the Brand Celect filter lays out many details about the filter, the investigation Cook performed regarding it, names of the specific individuals who participated in the investigation, the problems with the filter, Cook's analysis of the filter complications, QE trending and risk analyses, a list of 80+ similar events, a literature review and other technical matters including a final analysis of the Brand filter failure. Though Cook's analysis is sometimes confusing it is not confusing as to which Cook individuals were involved in the investigation and which Cook employees analyzed the data. It is also not confusing as to the particular items Cook analyzed and reviewed including an extensive analysis of Ms. Brand's medical records and diagnostic films, literature, internal documents and many other relevant matters that relate to the Brand filter specifically and Cook's conclusions regarding its failure. It is the single most important document regarding Cook's investigation and its conclusions regarding the cause of Tonya Brand's filter perforation and fracture.

C. **DESCRIPTION OF THE DOCUMENTS REQUESTED**

A second, and later, Single Complaint Report was issued some months after the first one, incorporating more of Cook's investigation into the Brand filter debacle.[5] The report lists 28

---

[4] *See*, Exhibit "2" - Single Complaint Report – PR 38639 - CookMDL2570-0100589 – 606 and Exhibit "3" - Single Complaint Report – PR 38639 - CookMDL2570-0100607 – 626.

[5] . *See*, Exhibit "2" - Single Complaint Report – PR 38639 - CookMDL2570-0100589 – 606 and Exhibit "3" - Single Complaint Report – PR 38639 - CookMDL2570-0100607 – 626.

"Attached Files" which were included in the Single Complaint Report.[6] CMO 4 requires the Cook Defendants to fully respond to the Defendant Fact Sheet.[7] Section VI (D) of the Defendant Fact Sheet specifically identifies "a true and complete copy of the complaint file relating to the Plaintiff" as a document that is to be produced. The Single Complaint Reports Cook produced did not include any of the "Attached Files" and so are clearly incomplete.[8] Plaintiff Tonya Brand has requested these materials be produced and she now requests Cook be ordered to produce them[9]. Those materials are listed as follows in the order they were listed in the Single Complaint Reports:

    PR38639 - Scanned Receipt.pdf

    PR38639 -Scanned receipt.pdf

    WCE 02 AUG 2011.pdf

    PR38639-Acknowledgement letter.doc

    PR38639-cpml email.msg

    PR38639-product conf and info.msg

    PR38639-RGA# given.msg

    PR38639-RGA#Given2.msg

    PR38639 Brand - comments to FDA alert.msg

    PR38639 Brand Timperman's revised review.msg

    PR38639 Brand-medical chronology by Kelli.docx

---

[6] Exhibit "3" - Single Complaint Report – PR 38639 - CookMDL2570-0100609.

[7] Exhibit "7" – Case Management Order No. 4.

[8] In response to Section VI(D), Cook refers to some 144 Bate numbered documents that were listed as being responsive to Section II(B)(13). That broad reference is not a sufficient response as the documents listed in the report are not listed by Bates number and the Defendants' response to the DFS does not give the plaintiff any indication which of the 144 documents listed in Section II(B)(13), if any, are the 28 "Attached Files" that were specifically incorporated into the Single Complaint Report. Per CMO 4, the Defendants should provide a complete copy of the Single Complaint Report with the attached files.

[9] On December 18, 2017 plaintiff's counsel sent a notice of deficiency by email that specifically addressed the plaintiff's request for copies of the "Attached Files". *See* Exhibit "8" Email from Ben Martin to Andrea Pierson, dated 12/18/17. As of this date, those documenst have not been produced.

    PR38639 Comments to filter fracture AMN.docx

    PR38639 Or Moririson medical records.pdf

    Celecto110 05082011.xls

    lmagesPR38639.docx

    Info re Endelig evaluering af claim Brand PR38639.msg

    MNN Endelig evaluering af claim Brand PR38639.msg

    REG01- celect 23oct2014.xlsx

    TWJ Review af customized letter PR38639.msg

    QERA 005 rev1, Celect fracture.pdf

    290 _forceps retrievpdf. pdf

    297-difficult-Tulip. pdf

    364-G2 fractures.pdf

    JVIR 2011 Filtres.pdf

    Oh_ RemvlRetrvbllVCFT entngPntrtion JVIR0211. pdf

    Timothy D. Townsend, Sum~n Rathun, Archana Gautam and Thomas Whitsett Persistent abdominal pain from a pi

    PR38639 Brand Dr. Griffins Summary Final 6-26-14.docx

    PR38639 Brand Dr. Griffins Summary Final-21October2014.pdf[10]

D. **INDIVIDUALS WHOSE DEPOSITIONS ARE REQUESTED AND A DESCRIPTION OF THEIR INVOLVEMENT**

    The individuals whose depositions have been requested, some of whom have been referenced above, are listed as follows:

        a. Don Archie
        b. Meg Senker Donley
        c. Dr. Griffin
        d. Lykke Sylow Iversen
        e. Thomas Willads Jensen

---

[10] Exhibit "3" - Single Complaint Report – PR 38639 - CookMDL2570-0100609.

      f. Annette Luneborg
      g. Darrell Talbert

A Single Complaint Report was initiated by Cook with regard to Ms. Brand's fractured filter on July 26, 2011. According to that report, Cook's investigation into Ms. Brand's failed IVC filter was conducted by Lykke S. Iversen. Ms. Iversen is a Quality Engineer at Cook. Ms. Iversen not only guided the investigation, she performed the risk assessment that is made part of the report.[11] Annette Luneborg is a Complaint Coordinator with Regulatory Affairs at Cook. Ms. Luneborg was responsible for peer review of the complaint regarding Ms. Brand's filter fracture.[12] The Single Complaint Report and a document referred to as the "Customized Letter" regarding Ms. Brand's filter failure were also reviewed by Thomas Willads Jensen, a Product Manager at Cook.[13] Cook also consulted with Dr. Griffin, and his review of Ms. Brand's imaging and medical records was included in the report. *Id.*

Dr. Griffin, Lykke S. Iversen, Thomas Willads Jensen, Annette Luneborg and Darrell Talbert all played a significant role in the Cook Defendants' evaluation of the failure of Tonya Brand's Celect filter. Clearly, they have knowledge of the matters relevant to her case specific claims.[14]

The Cook Defendants have asserted that the previous 30(b)(6) depositions on the broad topics of "complaint investigation and handling" somehow preclude the taking of case specific

---

[11] *Id.*

[12] *Id.*

[13] *Id.*, and Exhibit 4 – Email from Thomas Willads Jensen to Lykke S. Iverson, dated 08/18/2011, CookMDL2570_0074646-651).

[14] *See*, Exhibit "2" Single Complaint Report – PR 38639 - CookMDL2570-0100589 – 606 and Exhibit "3" Single Complaint Report – PR 38639 - CookMDL2570-0100607 – 626.

8

depositions regarding the complaint investigation conducted with regard to Ms. Brand's filter and its failure. In other words, Cook is taking the position that the plaintiff is not entitled to take depositions related to what Cook's own investigation said about the failure of the Brand filter itself because MDL 30(b)(6) "complaint handling" depositions have been taken. Cook's argument is specious and not a proper basis for refusing to product these witnesses for deposition.

In their Response to the Defendant Fact Sheet in this case, the Cook Defendants identified only one sales representative as the person who "had any contact with an identified physician or healthcare provider . . . ." That person was Tamara Potter Clemmer.[15] The Defendants also identified Mr. Don Archie as Ms. Clemmer's supervisor during the "relevant time period." What Cook left out was the fact there was second sales representative who also had contact with Dr. Rheudasil regarding IVC filters at that very same time Ms. Clemmer was detailing the doctor's group, a District Manager named Meg Senker Donley. The reason there were two representatives calling on Dr. Rheudasil during the relevant time period is very simple, Dr. Rheudasil performed surgeries in two separate hospitals, St. Joseph Hospital and Northside Hospital. Ms. Clemmer was the sales representative for Northside Hospital and Ms. Donley serviced St. Joseph Hospital. As a result, both sales representatives made calls on Dr. Rheudasil. Cook has refused to allow Ms. Brand to depose the other sales representative that had direct involvement with the very doctor that implanted the Brand filter. In Ms. Clemmer's deposition she also discussed her supervisor and regional manager at the time of the Brand filter sale, Don Archie—another individual whose deposition has been refused.

Ms. Clemmer was deposed on June 15, 2017, at which time she testified as follows:

100

---

[15] Exhibit "5", Cook's Third Amended Defendant Fact Sheet at pp. 7-8.

22   Q. And this sets forth the
23   identity and last known address and telephone
24   number of Mr. Archie, Don Archie.  You've

                    101
1    talked about him a little bit; correct?
2         A. Yes, sir.
3         Q. And he was your supervisor.
4    And, indeed, his title was regional manager
5    at the time of Ms. Brand's placement of the
6    filter by Dr. Rheudasil; correct?
7         A. The specific year, I'm not
8    sure.  The time sounds accurate.  You would
9    have to check on his regional manager dates.
10        Q. Now, who is Ms. Donley?
11        A. Meg?
12        Q. Yes.
13        A. Sanker-Donley was another
14   district manager in the city with me, and she
15   was the sales representative for St. Joseph's
16   Hospital.
17        Q. So you actually had two
18   district managers, two sales representatives,
19   at the same level?  You and Ms. Donley were
20   the same level in the company; would that be
21   true?
22        A. Yes, sir.
23        Q. So do you know how it came
24   about that there were actually two of you

                    102
1    that had responsibility as sales managers for
2    and district managers for that account?
3         A. Yes.[16]

                    102
21   Is there any question in your mind
22   that you, at the time of the implantation of
23   the filter in this case -- that around that
24   period of time, that you would have been the

                    103

---

[16] Exhibit "6" Sworn Deposition Testimony of Tamara Potter Clemmer, 100:22 to 102:3.

```
 1  sales representative who would have been
 2  detailing that particular account?
 3       A. Both Meg and I would detail
 4  Dr. Rheudasil.17
```

### 103

```
20  Q. Okay.  And what I'm -- and you
21  guys were the sales representatives, you and
22  Meg.  And so what I'm trying to find out is
23  would you say that you had joint
24  responsibility for that -- the sale of that
```

### 104

```
 1  filter to that group?
 2       A. We didn't necessarily consider
 3  it responsibility for the sale.  We -- we
 4  would educate and provide support for
 5  Dr. Rheudasil or for the facility and staff
 6  that he worked with.  And so if it was
 7  responsibility for a certain sale, we didn't
 8  view it that way.  It was I was responsible
 9  for Northside, she was responsible for
10  St. Joseph's, but we helped together to
11  provide education and support for them.
12       Q. Who was Dr. Rheudasil with?
13  Was it Northside or was it St. Joseph?  Do
14  you recall at the time, around the time of
15  Ms. Brand's implantation?
16       A. He would practice out of both
17  facilities.  Typically, physicians don't stay
18  with just one hospital.  So his practice was
19  private at the time, and they would do their
20  Kaiser Permanente patients at Northside, and
21  across the street, they would do their other
22  patients at St. Joseph's.  The specifics
23  between why they would choose one over the
24  other for all other patients, you'd have to
```

### 105

```
 1  ask him.
 2       Q. It's my understanding that
 3  Mr. Archie still does work for Cook; is that
```

---

[17] *Id.* at 102:21 to 103:4.

11

```
 4  correct?
 5        A. He sure does.
 6        Q. Now, I think in other -- I
 7  think that it would be well known what the
 8  relationship is as far as a regional -- well,
 9  let me just ask it.
10         He was a regional manager.
11  Could you explain to the jury, back in, let's
12  say, 2009, what a regional manager was, what
13  that name means?
14         A. He would help me with my
15  administration responsibilities.  He would be
16  there if I needed support or if I needed
17  questions answered from Cook corporate.  He
18  might help facilitate that.  But outside of
19  that, he was pretty good at letting us grow
20  on our own as far as just -- as a whole.[18]
```

Testimony regarding the sales contacts that Cook had with Ms. Brand's implanting physician is relevant to the facts of this case and within the scope of permissible discovery. The Cook Defendants have no valid basis for preventing the plaintiff's counsel from deposing Mr. Archie or Ms. Donley.

WHEREFORE, plaintiff respectfully requests that the Court enter an Order Compelling the Cook Defendants to produce the documents listed as "Attached Files" in the Single Complaint Report at Bates page CookMDL2570-0100609, and which compels the Cook Defendants to produce the following witnesses for deposition: 1) Don Archie; 2) Meg Senker Donley, 3) Dr. Griffin 4) Lykke S. Iversen 5) Thomas Willads Jensen 6) Annette Luneborg and 7) Darrell Talbert.

---

[18] *Id.* at 103:20 to 105:20.

Dated: January 5, 2018

Respectfully Submitted,

*/s/ Joseph N. Williams*
Joseph N. Williams, Atty. No. 25874-49
Riley Williams & Piatt, LLC
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317) 633-5270
Facsimile: (317) 426-3348
Email: jwilliams@rwp-law.com

*Liaison Counsel to Plaintiffs' Steering Committee and on behalf of Plaintiffs' Steering Committee*

*/s/ Michael W. Heaviside*
Michael W. Heaviside, Esq.
Heaviside Reed Zaic, A Law Corporation
910 17th Street NW, Suite 800
Washington, DC 20006
Telephone: (202) 233-1993
Email: mheaviside@hrzlaw.com

*/s/ Ben C. Martin*
Ben C. Martin, Esq.
The Law Office of Ben C. Martin
3710 Rawlin Street, Suite 1230
Dallas, TX 75219
Telephone: (214) 761-6614
Facsimile: (214) 74407590
Email: bmartin@bencmartin.

*/s/ David P. Matthews*
David P. Matthews, Esq.
Matthew and Associates
2509 Sackett St.
Houston, TX 77098
Telephone: (713) 522-5250
Facsimile: (713) 535-7184
Email: dmatthews@thematthewslawfirm.com

*Plaintiffs' Co-Lead Counsel*

## CERTIFICATE OF SERVICE

 I hereby certify that on this 5th day of January, 2018, a copy of the foregoing was served electronically and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.

              */s/ Ben C. Martin*
              Ben C. Martin