UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

—————————————————————

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND          Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS   LIABILITY LITIGATION               MDL No. 2570

—————————————————————

This Document Relates to Plaintiff
Ashley Gilbert
Civil Case No. 1:16-cv-6049-RLY-TAB

—————————————————————

### THE COOK DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COURTNEY LUNG

The Cook Defendants[1] respectfully move this Court for an order dismissing all of

Plaintiff's claims against Courtney Lung.  First, Plaintiff has not served Ms. Lung since filing the

complaint over 18 months ago, and the Court lacks jurisdiction over Courtney Lung as a result.

Second, even if the Court allowed Plaintiff additional time to serve Courtney Lung, taking all of

Plaintiff's allegations as true, Plaintiff fails to state claims under Nevada law against Ms. Lung.

Alternatively, even if the Court were to find that Plaintiff has sufficiently stated her claims

against Ms. Lung, the Cook Defendants urge the Court to consider Ms. Lung's uncontroverted

sworn testimony submitted with the Cook Defendants' Notice of Removal demonstrates, find her

joinder fraudulent, and dismiss all of Plaintiff's claims against her.

### BACKGROUND

This lawsuit arises from the September 25, 2012 placement of a Cook Celect IVC filter in

Plaintiff Ashley Gilbert.  Plaintiff has named as a nondiverse defendant Cook Medical LLC

———————————————————————

[1] Because the Cook Defendants are the only parties that have been served in this action, the Cook
Defendants are the only parties in a position to make these arguments and therefore must (by
necessity) be the ones to argue Ms. Lung's fraudulent joinder in conjunction with Cook's
removal.

US.115694098.07

employee Courtney Lung, whom they allege "sold, marketed, and delivered" the Celect Filter, as

a defendant.  For the reasons set forth in this Motion and in the Cook Defendants' Notice of

Removal, Ms. Lung is fraudulently joined and is not a proper defendant in this action.

## ARGUMENT

### I.   The Court should dismiss the claims against Courtney Lung for lack of personal jurisdiction and insufficient service of process.

As a threshold matter, the Court should dismiss the claims against Ms. Lung for

insufficient service of process and lack of personal jurisdiction over the claims.  To date,

Plaintiff has not served Courtney Lung with the summons or complaint in this action.  Absent

sufficient service of process, the Court does not have personal jurisdiction over an individual.

*Rabiolo v. Weinstein,* 357 F.2d 167, 168 (7th Cir. 1966). The Court should dismiss Courtney

Lung as a defendant in this case.  See Fed. R. Civ. P.  12(b)(2), 12(b)(5).

### A.   The Court can, and should, address personal jurisdiction before subject-matter jurisdiction.

The Court has the discretion to address the issue of its jurisdiction over the person of

Courtney Lung before addressing issues of subject matter jurisdiction like diversity of

citizenship.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999) (holding federal

court did not abuse its discretion, by deciding personal jurisdiction issue before subject matter

jurisdiction issue).  The Court should exercise that discretion here.

As the Court noted in *Ruhrgas*, where a court has before it a straightforward personal

jurisdiction issue and a more difficult subject matter jurisdiction issue, the court may resolve

personal jurisdiction first.  *Id.*; *see also Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760,

764 (8th Cir. 2001) (noting that a court may decide a personal jurisdiction question before

US.115694098.07

deciding a subject matter jurisdiction question); *In re Bard IVC Filters Prods. Liab. Litig.*, MDL No. 15-2641, No. CV-16-02442-PHX-DGC, 2016 WL 6393595, at *2 (D. Ariz. Oct. 28, 2016); *see also Evan v. Johnson & Johnson*, Civil Action No. H-14-2800, 2014 WL 7342404, at *3 (S.D. Tex. Dec. 23, 2014) (finding "that the most efficient course of action is to consider the motion to dismiss for lack of personal jurisdiction" first and thereafter deny the plaintiffs' motion to remand "because no non-diverse plaintiffs remain," effectively eliminating the need to decide the subject matter jurisdiction questions raised in plaintiff's motion to remand).

Here, as in *Ruhrgas*, the limits on personal jurisdiction are founded in the "*constitutional safeguard*" of the Due Process Clause, whereas the limits on subject-matter jurisdiction are founded in the *statutory requirement* of complete diversity of citizenship. *See* 526 U.S. at 584. In addition, the lack of personal jurisdiction is plain, simple, and follows directly from Supreme Court precedent and settled legal principles, as discussed below. In contrast, the subject-matter jurisdiction issue presents questions that are considerably more complicated. The Court should therefore address personal jurisdiction first.

### B.  Standard of Review – Rules 12(b)(5) and 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) requires dismissal of a claim where personal jurisdiction is lacking. When a defendant moves to dismiss under Rule 12(b)(2), the plaintiff bears the burden of demonstrating the existence of jurisdiction. *Purdue Research Found. v. Sanofi–Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003); *RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1276 (7th Cir. 1997). Likewise, under Rule 12(b)(5), the plaintiff likewise bears the burden to demonstrate that the district court has jurisdiction over each defendant through effective service. *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011).

US.115694098.07

Federal Rule of Civil Procedure 4(m) requires that the plaintiff's service of process occur within 90 days of the filing date of the complaint.  *See* Fed. R. Civ. P. 4.  Where a suit is removed to federal court from state court, the time period under Rule 4(m) for service of process commences on the date of removal.  *See Cardenas*, 646 F.3d at 1004. If a defendant is not served within 90 days after removal, the court, on its own or on a motion to dismiss brought under Rule 12(b)(5), "must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. Pro. 4(m); 81(c)(1).  Only if a plaintiff "shows good cause for the failure" must the court extend the time for service "for an appropriate period."  *See id*.  Absent such a showing of good cause, the Court has discretion either to dismiss the action without prejudice or to grant a permissive extension of time to effect service. *See Cardenas*, 646 F.3d at 1006.

**C.  Plaintiff cannot demonstrate effective service on Courtney Lung.**

On March 20, 2016, Plaintiff filed this action in Nevada state court.[2]  On July 27, 2016, the Cook Defendants and Courtney Lung filed their Notice of Removal, stating "Plaintiff has not served Ms. Lung . . . with a summons and the complaint."[3]  *See* Notice of Removal, Dkt. No. 1, at ¶ 2.  On August 3, 2016, the Cook Defendants filed their Answer to Plaintiff's Complaint, stating for a second time "Defendant[] Courtney Lung . . . ha[s] not yet been served."  *See* Answer, Dkt. No. 5, at fn. 1.

---

[2] Nevada Rule of Civil Procedure 4(i) imposes a 120-day time limit on service of the complaint and summons. Under Nevada Rule of Civil Procedure 4(i), Plaintiff had until July 18, 2016 to timely serve Ms. Lung with the summons and complaint.  She did not do so.

[3] "Courts . . . have long held that a defendant's removal of an action to federal court does not waive the defendant's objection to the sufficiency of service of process." *Graves v. Republic Nat'l Distrib. Co.*, 42 F. Supp. 3d 121, 123 (D.D.C. 2014).  The Seventh Circuit is one such court, and made clear in *Silva v. City of Madison* that the mere act of removal does not "abrogate the necessity for something as fundamental as service of process." 69 F.3d 1368, 1376 (7th Cir. 1995).

US.115694098.07

On August 15, 2016, the Cook Defendants filed their Statement Concerning Removal, stating for a third time "Defendant[] Courtney Lung ha[s] not been served with [a] summons[] and complaint[] in this matter." *See* Statement Concerning Removal, Dkt. No. 10, at ¶ 2.  On August 23, 2016, Plaintiff moved to remand.  Plaintiff's motion did not address or mention the lack of service of process on Courtney Lung.  On September 9, 2016, the Cook Defendants timely opposed remand, again stating that "Defendant[] Courtney Lung . . . ha[s] not been served with a summons and the Complaint." *See* Response in Opposition to Plaintiff's Motion to Remand, Dkt. No. 16, at pp. 2, 4.  On December 9, 2016, this case was transferred from the District of Nevada to this Court as part of the MDL proceedings.  Dkt. No. 23.

At no point has Plaintiff effected service on Courtney Lung.

### D.  Plaintiff cannot show good cause for her failure to serve Courtney Lung.

As of January 12, 2018, Plaintiff has had more than 663 days to serve Courtney Lung since filing the complaint in Nevada state court, 534 days since the Cook Defendants' removal to the District of Nevada, and more than a year since transfer into this Court.  Despite ample time above and beyond the 90 days afforded under Rule 4, and despite clear notice of the deficiency in *four separate filings*, Plaintiff still failed to accomplish service of process on Ms. Lung, timely or otherwise.  The Seventh Circuit has found *less* extreme delays warranted dismissal. *See, e.g., Cardenas*, 646 F.3d at 1003 (360-day delay); *Conover v. Lein*, 87 F.3d 905, 909 (7th Cir. 1996) (eight-month delay).  As the Seventh Circuit explained in *Cardenas*, "[t]hese service requirements provide notice to the parties, encourage parties and their counsel to diligently pursue their cases, and trigger a district court's ability to exercise jurisdiction over a defendant." *Id*. at 1005 (citations omitted).  Because Plaintiff cannot demonstrate effective service on Ms. Lung (permitting the Court to exercise personal jurisdiction over her) and cannot show good

cause of her delay in service, the Court should exercise its discretion and dismiss Plaintiff's claims against Courtney Lung under Rules 12(b)(2) and 12(b)(5).

**II. The Court should not allow Plaintiff additional time to effect service on Ms. Lung because Plaintiff does not—and cannot—state her claims against Ms. Lung under the *Twombly/Iqbal* plausibility standard.**

Even if this Court were to exercise its discretion and allow Plaintiff a permissive extension of time to accomplish service on Courtney Lung, any such extension would be futile because Plaintiff has not, and cannot, state claims against Courtney Lung under the *Twombly/Iqbal* plausibility standard.  *See* Fed. R. Civ. P. 12(b)(6).

A plaintiff may defeat a Rule 12(b)(6) motion only if the plaintiff can state a claim that is plausible on its face.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  *Vinson v. Vermillion County, Ill.*, 776 F.3d 924, 928 (7th Cir. 2015); *Ball v. City of Indianapolis*, 760 F.3d 636, 643 (7th Cir. 2014).  Conversely, a court should grant a Rule 12(b)(6) motion if "the plaintiff cannot prove any facts that would support [her] claim for relief."  *Id.*  In ruling on a motion to dismiss for failure to state a claim, the Court must "accept as true all well-pleaded facts," *Forseth v. Village of Sussex*, 199 F.3d 363, 364 (7th Cir. 2000), and must "view the facts in the complaint in the light most favorable to the nonmoving party."  *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

At the same time, "conclusory allegations merely reciting the elements of the claim are not entitled to [the] presumption of truth" afforded to well-pleaded facts.  *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). The well-pleaded facts alone

> must be enough to raise a right to relief above the speculative level.  That is, the complaint must contain allegations plausibly suggesting (not merely consistent with) an entitlement to relief.  If the allegations give rise to an obvious alternative explanation, then the complaint may stop short of the line between possibility and plausibility of entitlement to relief.

US.115694098.07

*Id.* (internal citations to *Twombly* and *Iqbal* omitted).  The Seventh Circuit "interpret[s]

*Twombly* and *Iqbal* to require the plaintiff to 'provid[e] some specific facts' to support the legal

claims asserted in the complaint.  The degree of specificity required is not easily quantified, but

'the plaintiff must give enough details about the subject-matter of the case to present a story that

holds together.'" *Id*. (citations omitted).

### A. Plaintiff's general allegations against all Defendants do not "present a story that holds together" to support a claim against Courtney Lung.

The overwhelming majority of Plaintiff's complaint makes broad allegations against all

the Defendants generally.  Plaintiff asserts claims for negligence, fraudulent concealment, strict-

products-liability failure to warn, breach of implied warranty of merchantability, and deceptive

trade practices collectively against all Defendants, including Ms. Lung.[4]  Such generalized and

collective references to "defendants" are insufficient to withstand a motion to dismiss or to rebut

charges of fraudulent joinder.  *See Badon v. RJR Nabisco Inc.*, 224 F.3d 382, 391-93 (5th Cir.

2000) (affirming finding of fraudulent joinder where plaintiffs' claims merely referred to

"defendants" collectively and where plaintiffs failed to allege any "particular or specific activity"

on the part of non-diverse defendants); *In re Rezulin*, 168 F. Supp. 2d 136, 140 n.10 (S.D.N.Y.

2001) (dismissing non-diverse defendant and denying remand where "plaintiffs make no specific

allegations against [the nondiverse defendant] at all, instead [they] attribut[e] wrongdoing to the

collective 'defendants").[5]  Likewise here, Plaintiff's general allegations concerning all

---

[4] Plaintiff also brings claims for strict-product-liability design defect and strict-product-liability
manufacturing defect against all defendants *except* Courtney Lung.
[5] *See also Bagley v. Bayer Corp. (In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices &
Prods. Liab. Litig.)*, 2012 WL 1831789, at *2 (S.D. Ill. May 18, 2012) (dismissing pharmacy
defendant that had been fraudulently joined, noting that "[a]lthough the term 'Defendants' is
defined to include [the pharmacy], it is clear that these allegations could only be directed at the
pharmaceutical defendants and not at [that defendant]"); *Lyons v. Am. Tobacco Co.*, No. CIV.A.
96-0881-BH-S, 1997 WL 809677, at *5 (S.D. Ala. Sept. 30, 1997) (explaining "there can be no

US.115694098.07

"defendants" are not sufficient to state a claim against Ms. Lung or to avoid a finding of

fraudulent joinder.

### B.  Plaintiff's two specific allegations against Defendant Courtney Lung do not support a claim against Courtney Lung under Nevada law.

Beyond these vague, general allegations, Plaintiff mentions Courtney Lung only twice in

her 107-paragraph Complaint.  Those paragraphs allege:

> 2.  Defendant Courtney Lung is an individual who sold, marketed and delivered the Cook Celect® Vena Cava Filter Set implanted in Ashley Gilbert to her prescribing physicians and/or the University Medical Center. Ms. Lung has been a resident of Clark County, Nevada for over 20 years and has been selling the Cook Celect® Vena Cava Filter Set since it was first cleared by the FDA for use in 2007. Ms. Lung describes her current job duty in her LinkedIn page as "tasked with keeping and identifying new areas of business growth while maintaining existing market share in respective hospital chains and clinics." Ms. Lung was the primary point of contact for educating Ms. Gilbert's prescribing physicians about the device's features, assisting them with understanding the proper use of the device, explaining its risks and benefits, answering their questions, and convincing them to either convert to using the device and/or to continue using the device. Ms. Lung did this by making frequent in person sales calls to Ms. Gilbert's prescribing physicians to promote the device; providing sales brochures, favorable clinical data and other marketing materials to Ms. Gilbert's prescribing physicians; recruiting and/or attempting to recruit Ms. Gilbert's prescribing physicians for educational and training opportunities that promoted the Cook Celect® Vena Cava Filter Set; and at times participating and/or observing Ms. Gilbert's prescribing physicians in placing the device.

> ***

> 73.  At the time and place of the sale, distribution, and supply of the Defendants' Celect Filter System to Plaintiff by way of Plaintiff's health care providers and medical facilities, Defendants expressly represented and warranted, by labeling materials submitted with the product and direct representations from Courtney

---

better admission of fraudulent joinder" of in-state defendants than plaintiff's failure "to set forth any specific factual allegations" against them);  *Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546, 550 (E.D. Ky. 2001) (denying motion to remand and noting that "[although plaintiffs' complaint commonly employs the generic term 'defendants,' the context and nature of the individual allegations make clear that only the drug companies are targeted"); *Beavers v. DePuy Orthopaedics, Inc.*, No. 1:11 dp 20275, 2012 WL 1945603, at *5 (N.D. Ohio May 30, 2012) ("[T]he lack of factual allegations regarding Orthopaedic Partners, LLC, provides no more than labels and conclusions insufficient to sustain viability of the legal claims.").

US.115694098.07

Lung, that the Celect Filter was safe and effective for its intended and reasonably foreseeable use.

Compl, ¶¶ 2, 73.  The remaining 105 paragraphs of Plaintiff's complaint address individual defendants other than Ms. Lung, or address "ALL defendants, including DOES 1 through 100, inclusive."  *See* Compl., ¶ 10.

As the two paragraphs quoted above demonstrate, Plaintiff begins by characterizing Ms. Lung's conduct using exactly the same wording about sales, marketing, and delivery that Plaintiff uses in describing the corporate product-liability defendants:  "At all times relevant to this action, Defendant [insert pleaded name] designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, distributed, and sold the Cook Celect Filter Set to be implanted in patients throughout the United States, including Nevada."  *See* Compl., at ¶ 3 ("Cook Group, Incorporated), ¶ 4 ("Cook Medical, Incorporated"), ¶ 5 ("Medical Engineering and Development Institute, Inc."), ¶ 6 ("MED Institute, Inc. and Cook MED Institute, Inc."), ¶ 7 ("Cook Denmark International APS"), ¶ 8 ("William Cook Europe APS"), ¶ 9 ("DOES 1-100, inclusive").  When Plaintiff describes Ms. Lung's *specific* conduct that is purportedly relevant to Ms. Gilbert, she merely describes the conduct of a corporate employee carrying out an employee's duties, even quoting those duties from Ms. Lung's LinkedIn page, which identifies her as a Cook Medical employee.

Under Nevada law, Plaintiff's allegations that Ms. Lung is an employee carrying out her duties regarding a supposedly defective product—a product that she did not design or manufacture and never owned—is insufficient as a matter of law to support any type of claim against her in an individual capacity.  As the District of Nevada has recognized, "sales representatives cannot be liable simply because they are sales representatives; their actions must create an adequate causal link to the plaintiff's claims."  *See Thompson v. Medtronic, Inc.*, No.

9

2:06CV00675RCJ(PAL), 2006 WL 3544937, at *4 (D. Nev. Dec. 8, 2006) (dismissing fraudulently joined sales representative that "did not sell, contract to sell, or distribute" infusion set); *Kite v. Zimmer US, Inc.*, 2006 WL 3386765 at *3 (holding that there were no colorable claims against sales representative company, where company was "merely a service provider" and did "not sell goods or contract to sell goods"); *Sobkowski v. Wyeth, Inc.*, No. 5:04-CV-96-OC-10GRJ, 2004 WL 3581799, at *1 (M.D. Fla. June 24, 2004) (dismissing sales representative as fraudulently joined where there was "no reasonable basis for predicting that a [state] court would impose liability on any one of the non-diverse sales representative defendants.  There is only a theoretical possibility, devoid of factual basis, that the sales representative had or should have had advance or special knowledge about the drug and failed to communicate that knowledge to the doctor.").  Examination of Plaintiff's specific theories of recovery confirms the lack of any legal basis for imposing liability on employee Lung.

### 1.     Plaintiff has no plausible claim for strict-product-liability failure to warn against Ms. Lung under Nevada law.

Plaintiff's strict-liability failure-to-warn claim against Ms. Lung fails as a matter of law. In Nevada, a defendant may be liable under a theory of strict product liability based on a defective product only if it "is a seller 'engaged in the business of *selling* such a product.'" *Calloway v. City of Reno*, 993 P.2d 1259, 1270 (Nev. 2000) (adopting and quoting Restatement (Second) of Torts § 402A) (emphasis added), *overruled on other grounds by Olson v. Richard*, 89 P.3d 31 (Nev. 2004); *see also* Restatement (Third) of Torts § 20 ("One Who Sells or Otherwise Distributes"), cmt. g (1998) ("Sales personnel, sales representatives, and other sales facilitators are not subject to strict products liability.").  Plaintiff's conclusory allegations that Ms. Lung "sold, marketed, and delivered" the IVC Filter, without more, do not plausibly

establish "engage[ment] in the business of selling" IVC filters, a required element of her strict products liability claim under Nevada law.

First, Cook is aware of no case in any jurisdiction holding a product manufacturer's employee strictly liable as a "seller" of an allegedly defective product under Restatement (Second) of Torts § 402A.  On the contrary, Nevada courts have taken seriously Section 402A's requirement that a strict-liability defendant must be "in the business" of selling products.  *See, e.g., Allison v. Merck & Co.*, 878 P.2d 948, 952 n.1 (Nev. 1994) (holding that a county health district was not strictly liable for distributing allegedly defective health product because it was not a "seller of products")(citing Restatement (Second) Torts § 402 and N.R.S. 104.2313-2315); *Calloway*, 993 P.2d at 1270 (holding that contractor who provides and installs products as part of construction project "is not engaged in the business of 'manufacturing' or selling such products and therefore does not come within the ambit of section 402A").

Here, Plaintiff does not plead that Ms. Lung was "in the business of selling" IVC filters, only that she was *employed* by a *company* that was in the business of selling IVC filters.  Nevada law defines "sale" as consisting of the "passing of title from the seller to the buyer for a price," N.R.S. 104.2106, but Plaintiff does not allege that Ms. Lung owned or held title to Cook products at any time, or that she passed title to the filter for a price.  Plaintiff thus has not pleaded a viable strict-liability claim against Ms. Lung under Nevada law, and the strict-liability claim against her must be dismissed.

This conclusion is consistent with holdings in other states, which have held that plaintiffs have no plausible claim for section 402A strict liability against mere *employees* of businesses that sell allegedly defective products.  For instance, the U.S. District Court for the Southern District of Mississippi explained:

US.115694098.07

> Plaintiff points to a definition of "seller" [in] which the Mississippi Supreme Court . . . said only that "[t]he term 'seller' is defined as a person who sells or contracts to sell goods," and is further defined by Restatement (Second) Section 402A as "any person engaged in the business of selling products for use or consumption." *Id.* (citations omitted)  It is nevertheless manifest to the court that there exists no reasonable basis for predicting that state law might impose strict liability upon the *employees* of businesses which sell products to consumers. ***Such employees are not "in the business of selling products" but rather are employed by companies that are "in the business of selling products for use or consumption."***  Thus, in that circumstance, the "sellers" are the businesses, and not their employees, who act solely as agents for their principals. Therefore, there is no possibility that plaintiff has alleged any viable claim for recovery against [the employee sales representative, who] is entitled to be dismissed from the action[.]

*McCurtis v. Dolgencorp, Inc.*, 968 F. Supp. 1158, 1160–61 (S.D. Miss. 1997) (emphasis added);

*accord Johnson v. Parke-Davis*, 114 F. Supp. 2d 522, 525 (S.D. Miss. 2000) (holding plaintiffs

had no strict liability claim against the defendant sales representatives); *In re Diet Drugs*

*(Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, No. CIV.A. 03-20584, 2004

WL 1118714, at *4 (E.D. Pa. May 18, 2004) ("The Mississippi courts have clearly decided in the

prescription drug context that the duty to warn does not extend to sales representatives. In

addition, under Mississippi law, sales representatives are not 'sellers,' but rather, employees of

the business which are the sellers.") (citations omitted); *In re Diet Drugs*

*(Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig.*, No. CIV.A.03-20379, 2004

WL 1125913, at *4 (E.D. Pa. May 14, 2004) (same); *In re Diet Drugs*, No. CIV.A.03-20288,

2004 WL 1119925, at *3 (E.D. Pa. May 17, 2004) (same).

This conclusion is buttressed by Nevada's adoption of the learned intermediary doctrine

in the medical-device context.  *Klasch v. Walgreen Co.*, 264 P.3d 1155 (Nev. 2011); *Moses v.*

*Danek Medical, Inc.* (holding that the learned intermediary doctrine applies because of the

doctor's independent knowledge of the risks and the FDA status of the medical device at issue);

*Kwasniewski v. Sanofi-Aventis U.S., LLC*, 637 F. App'x 405, 406 (9th Cir. 2016) (affirming that

"under Nevada law, there is no duty to warn on the part of a non-prescribing therapist").  Under this doctrine, sales representatives owe no duty to warn patients or—unlike manufacturers—to warn treating physicians of the risks associated with the device. *See, e.g.*, *Catlett v. Wyeth, Inc.*, 379 F. Supp. 2d 1374, 1381 (M.D. Ga. 2004) ("There is no basis for a claim against a sales representative under the learned intermediary doctrine that imposes a duty on the *manufacturer* of the drug to warn the physicians.") (emphasis in original, applying Georgia law); *Lizana v. Guidant Corp.*, No. Civ.A 1:03CV254GRO, 2004 WL 3316405, at *3 (S.D. Miss. Jan. 21, 2004) ("The Court finds that [the sales representative] cannot be liable for any alleged failure to warn advanced by Plaintiff's allegations in her complaint, and that there is no basis for any claim based on strict liability asserted against [him].") (applying Mississippi law, dismissing non-diverse sales representative, and denying motion to remand to state court).

Plaintiff has not pleaded and cannot plead that Ms. Lung was "engaged in the business" of selling products" like IVC filters under Nevada law.  The Cook Defendants are entitled to judgment on Plaintiff's claim against Ms. Lung for strict-liability failure to warn.

### 2. Plaintiff has no plausible claim for negligence against Ms. Lung under Nevada law.

Plaintiff does not plead any conduct that could result in Ms. Lung's liability for negligence.  A claim for negligence under Nevada law must be based, *inter alia*, on an existing duty of care and a breach of that duty.  *See Jordan v. State ex. rel. Dept. of Motor Vehicles and Public Safety*, 110 P.3d 30, 51 (Nev. 2005).  A sales representative acting as a mere conduit of information or even of the product itself has no independent duty to inspect or test for product defects, and therefore cannot be personally liable for negligence.  *See Thompson*, 2006 WL 3544937, at *3 (applying Nevada law, holding sales representative was not liable under negligence theory); *Kite v. Zimmer US, Inc.*, 2:06-CV-745-RCJ-RJJ, 2006 WL 3386765, at *4

13

(D. Nev. Nov. 22, 2006) (adopting Restatement view and holding supplier could not be liable for negligence).

Set against this standard, Plaintiff does not claim that Ms. Lung had any affirmative duty to Plaintiff with respect to the IVC filter, does not allege what any such duty was, and does not allege that Ms. Lung breached any such duty.  The Complaint in this case alleges no plausible basis for imposing individual liability on Ms. Lung under a negligence theory, and that claim too must fail.

> **3.      Plaintiff has no plausible claim for breach of warranty against Ms. Lung under Nevada law.**

Plaintiff does not plead any conduct that could result in Ms. Lung's liability for breach of warranty.  Under Nevada law, express and implied warranties can only be provided by and enforced against "*sellers*" of products.  *See* N.R.S. 104.2313-2315.  As discussed above, Ms. Lung is not a "seller."  Furthermore, a warranty claim is at bottom a contract claim and, under Nevada law, no one "is liable upon a contract except those who are parties to it."  *Clark Cty. v. Bonanza No. 1*, 615 P.2d 939, 943 (Nev. 1980).  Individual employees in Nevada cannot be liable for the corporation's contractual obligations unless they agreed to be personally liable for those obligations. *Hobson v. Bradley & Drendel, Ltd.*, 654 P.2d 1017, 1018 (Nev. 1982). Plaintiff does not plead the existence of such an agreement here.  Ms. Lung is entitled to judgment on Plaintiff's breach-of-warranty claim.

> **4.      Plaintiff's fraud-based claims against Ms. Lung fail as a matter of law.**

Plaintiff does not plead any conduct that could result in Ms. Lung's liability for fraudulent concealment or deceptive trade practices.  *See* Compl. ¶¶ 24-27, 92-97.

### a.     Plaintiff fails to plead her fraud-based claims against Ms. Lung with particularity.

As a threshold matter, Plaintiff has failed to plead her fraudulent-concealment and deceptive-trade-practices claims against Ms. Lung with the particularity required by Federal Rule of Civil Procedure 9.  Under Rule 9, a party alleging fraud must state "with particularity" the "circumstances constituting fraud."  Fed. R. Civ. P. 9.[3]  This requirement of particularity applies to Plaintiff's fraud-related claims of fraudulent concealment and deceptive trade practices.  *See Golden Nugget, Inc. v. Ham*, 646 P.2d 1221, 1224 (Nev. 1982) (fraudulent concealment claims must be stated with particularity); *Davenport v. Homecomings Fin., LLC*, No. 56322, 2014 WL 1318964, at *3 (Nev. Mar. 31, 2014) (deceptive trade practices claims must be stated with particularity).

To comply with Rule 9, assertions of fraud must include "the who, what, when, where, and how" of the misconduct alleged.  *Uni*Quality, Inc. v. Infotronx, Inc*., 974 F.2d 918, 923 (7th Cir. 1992) ("the plaintiff [must] state the identity of the person who made the representation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff") (internal quotation omitted).  In the context of a fraud claim involving multiple defendants (as Plaintiff's claims are framed here), the rule requires a plaintiff, at a minimum, to identify the role *of each defendant* in the alleged fraudulent scheme.  *Vicom, Inc. v. Harbridge Merchant Servs.,* 20 F.3d 771, 778 (7th Cir. 1994) (explaining that in a multiple-defendant case, "the complaint should inform each defendant of the nature of his alleged participation in the fraud"); *see also Zic v. Italian Gov't Travel Office,* 149 F.Supp.2d 473, 477 (N.D.Ill. 2001) ("The particularity requirement of Rule 9(b) means that a plaintiff may

---

[3] The same requirement of particularity also applied to Plaintiffs' original state-court pleading of these claims.  *See* Nev. R. Civ. P. 9

US.115694098.07

not 'lump' multiple defendants together in a fraud claim; he must identify the nature of defendant's participation in the alleged fraud."); *Burns v. Wyeth, Inc.*, 352 F. Supp. 2d 773, 777 (E.D. Ky. 2004) (finding fraudulent joinder with respect to pharmaceutical representative where "Plaintiffs do not plead with particularity or specificity when or where the alleged misrepresentations occurred, or for that matter, what was allegedly mispresented.").

Plaintiff's conclusory allegations of fraudulent concealment and deceptive trade practices fall short of the specificity required by Rule 9(b).  Plaintiff pleads only that Courtney Lung made "direct representations" regarding the safety and efficacy of the filter; Plaintiff does not state when or where Ms. Lung made the alleged "direct representations," what fact(s) Ms. Lung allegedly misrepresented, or how Ms. Lung was involved in the alleged fraudulent scheme.  The Court should therefore dismiss Plaintiff's fraud-based claims against Courtney Lung.

### b. Plaintiff has no plausible claim for fraudulent concealment against Ms. Lung under Nevada law.

Even assuming *arguendo* that Plaintiff had pleaded her fraudulent concealment claim with sufficient particularity, Plaintiff nevertheless fail to state a claim on which relief can be granted.  Nevada generally does not recognize an action for fraud based on nondisclosure.  *See Epperson v. Roloff*, 719 P.2d 799, 803-04 (Nev. 1986) (noting the "general rule" that "an action in deceit will not lie for nondisclosure").  A duty of disclosure that might ground a cause of action for nondisclosure could only arise from some specific relationship between Ms. Lung and Plaintiff.  *See Dow Chem. Co. v. Mahlum,* 970 P.2d 98, 110 (Nev. 1998), *overruled in part on other grounds by GES, Inc. v. Corbitt*, 117 P.3d 11 (Nev. 2001) ("The duty to disclose requires, at a minimum, some form of relationship between the parties.").  Here, Plaintiff does not and cannot plead that she had any relationship with Ms. Lung that might give rise to such a duty.

US.115694098.07

Absent such a duty, Plaintiff's fraudulent concealment claim against Ms. Lung fails as a matter of law, and the Court should dismiss this claim against Courtney Lung.

**c.**      **Plaintiff has no plausible claim for deceptive trade practice against Ms. Lung under Nevada law.**

Likewise, even assuming for the sake of argument that Plaintiff had pleaded her deceptive-trade-practices claim with the required particularity, Plaintiff nevertheless fails to state a claim on which relief can be granted.  Under the Nevada Deceptive Trade Practices Act, "[a]n action may be brought by any person who is a victim of consumer fraud."  Nev. Rev. Stat. § 41.600(1).  As the U.S. District Court for the District of Nevada has observed, "for a private NDTPA claim for damages, the Nevada Supreme Court would require, at a minimum, a victim of consumer fraud to prove that (1) an act of consumer fraud by the defendant (2) caused (3) damage to the plaintiff."  *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009).  "Deceptive trade practice claims similarly require evidence that the opposing party knowingly made a false representation."  *Wild Game Ng, LLC v. IGT*, No. 63249, 2015 WL 7575352, at *1 (Nev. Nov. 24, 2015)); N.R.S. 598.0915(5), (7), (15) (providing, generally, that a person engages in a deceptive trade practice when he knowingly makes false representations)..

Plaintiff does not allege that Ms. Lung knowingly made any false representations to Plaintiff or her physicians, or that any such representation by Ms. Lung was the actual or proximate cause of Plaintiff's alleged injuries.  The Court should therefore dismiss Plaintiff's deceptive trade practice claim against Courtney Lung.

**III. There is no reasonable basis for predicting a Nevada state court *might* impose liability on Ms. Lung under any theory in Plaintiff's Complaint.**

Consideration of the fraudulent joinder issue reinforces the lack of any plausible basis for Plaintiff's claims against Ms. Lung under Nevada law.  As discussed in section II above,

17

Plaintiff's Complaint *as presently pleaded* fails to state a plausible claim against Ms. Lung.  In the present posture of this case, however, the added ingredient of fraudulent joinder and the Cook Defendants' submission establishing that fraudulent joinder buttresses the argument for dismissing Plaintiff's claims against Ms. Lung.  The facts established in the record demonstrate that Plaintiff not only has not pleaded but ***cannot plead*** a viable claim against Ms. Lung.

### A.  Standard of Review – Fraudulent Joinder

As noted above, the Cook Defendants removed this case from Nevada state court to federal court based on diversity jurisdiction.  It is well-settled that "fraudulently joined defendants will not defeat removal on diversity grounds."  *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998) (citing *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1193 n.1 (9th Cir. 1988); *McCabe v. General Foods Corp.,* 811 F.2d 1336, 1339 (9th Cir. 1987)); *see also Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001).  A defendant is fraudulently joined "'[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'"  *Morris*, 236 F.3d at 1067 (quoting *McCabe*, 811 F.2d at 1339).  A plaintiff fails to state a cause of action against a resident defendant when "the relevant claim is patently spurious, or when there is no reasonable basis for imposing liability on the resident defendant."  *TPS Utilicom Servs., Inc. v. AT&T Corp.*, 223 F. Supp. 2d 1089, 1102 (C.D. Cal. 2002).

In considering fraudulent joinder, the Court may "pierce the pleadings" and consider summary judgment-type evidence such as affidavits and deposition testimony.  *Conk v. Richards & O'Neil, LLP*, 77 F. Supp. 2d 956, 964 (S.D. Ind. 1999) (collecting cases from within the Seventh Circuit that conclude "that a court evaluating a claim of fraudulent joinder may look to factual assertions beyond those alleged in a plaintiff's complaint," such as affidavits and "the

US.115694098.07

entire record"); *Morris*, 236 F.3d at 1068 (citing *Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995)); *see also Higley v. Cessna Aircraft Co.*, No. CV 10-3345, 2010 WL 3184516, at *2 (C.D. Cal. July 21, 2010) ("While Plaintiffs are in no way required to prove their case, by the same token they cannot avoid a finding of fraudulent joinder by asserting a mere hypothetical possibility of a cause of action against the resident defendant.")(citation omitted). Thus, "[w]here joinder of a given defendant destroys the removability of a case, and where there is no reasonable basis for predicting that the state court might impose liability on the defendant, the federal court may properly dismiss such defendant and maintain jurisdiction over the case." *Bhadra v. State Farm Fire & Cas. Co.*, No. 2:10-cv-00089-KJD-RJJ, 2010 WL 2265196 (D. Nev. June 1, 2010).

### B. Plaintiff does not meaningfully oppose the sworn statements in Ms. Lung's affidavit.

Plaintiff has not offered any evidence to contradict the sworn statements in Ms. Lung's declaration, a failure on plaintiff's part that conclusively undercuts her claims of liability against Ms. Lung. The Cook Defendants premised their claim of fraudulent joinder on Plaintiff's failure to allege any factual or legal basis for imposing individual liability on Courtney Lung under Nevada law. *See* Notice of Removal, ¶¶ 19-21. In a declaration supporting Cook's Notice of Removal, Ms. Lung states the following facts under oath:

1. She is a W-2, salaried employee who works as a District Manager for Cook Medical LLC ("CML"). Declaration of Courtney Lung in Support of Cook Defendants' Notice of Removal ("Lung Decl."), Case 1:16-cv-06049, Dkt. No. 17 (D. Nev., Sept. 12, 2016) at ¶ 2.
2. She has never worked as an independent contractor for CML, or for any affiliate of Cook Group Incorporated ("CGI") or CML. *Id.*
3. CML sells medical devices, including Cook Celect® vena cava filters. *Id.* at ¶ 3.
4. William Cook Europe ApS manufactures Cook Celect® vena cava filters, and Ms. Lung has never been an employee of that company. *Id.* at ¶ 4.
5. Ms. Lung does not now and has never in the past designed, manufactured, labeled, or sold Cook Celect® vena cava filters. *Id.* at ¶ 5.

US.115694098.07

6. Cook Celect® vena cava filters are packaged in sealed, sterile material. *Id.* at ¶ 6.

7. Ms. Lung never opens, assembles, alters, modifies, or inspects those products in any way before they are used in a medical procedure. *Id.*

8. Ms. Lung has never drafted nor has she ever modified the written Warnings or Instructions For Use that accompany Celect® vena cava filters. *Id.* at ¶ 7.

9. CML sells and ships Cook Celect® vena cava filters directly to University Medical Center in Las Vegas. *Id.* at ¶ 8.

10. In 2012, University Medical Center maintained an inventory of vena cava filters, including the Celect® vena cava filter. *Id.* at ¶ 9.

11. Ms. Lung does not buy medical devices from CML, nor does she take ownership, title to, or sell medical devices. *Id.* at ¶ 10.

12. Ms. Lung is not a party to any contracts with Las Vegas hospitals, including University Medical Center. *Id.* at ¶ 11.

13. Ms. Lung has never met Ms. Gilbert, nor did she attend, participate in, or observe her implant procedure. *Id.* at ¶ 12.

14. To Ms. Lung's knowledge, she has never spoken with or about Ms. Gilbert. *Id.*

15. Ms. Lung had no knowledge of any alleged defect in the device implanted in Ms. Gilbert. *Id.* at ¶ 13.

16. Ms. Lung did not make any representations or warranties to Ms. Gilbert regarding any medical device, and she did not provide her any written materials. *Id.* at ¶ 14.

17. Ms. Lung also did not make any representations or warranties to any physician regarding the suitability of the Celect® vena cava filter for implantation in any particular patient. *Id.* at ¶ 15.

In opposing removal, Plaintiff offered no evidence to contradict these sworn statements.

*See generally* Motion to Remand, Dkt. No. 12 (failing to address Ms. Lung's declaration). The District of Nevada has found such inaction weighs in favor of dismissal of a non-diverse sales representative for failure to state a claim under Nevada law, and the Court should find Plaintiff's silence on the issue dispositive here. *See Suckow v. Medtronic, Inc.*, 971 F. Supp. 2d 1042, 1048 (D. Nev. 2013) (finding that sales representative's sworn statements and plaintiffs' failure to oppose allegations in the Notice of Removal supported finding that plaintiffs' failure to state a cause of action against the non-diverse sales representative was "obvious according to the settled rules of the state of Nevada").

### C.  Plaintiff cannot recover against Ms. Lung on any theory under Nevada law.

Not only does Plaintiff fail to plead any non-conclusory facts that could state a claim against Ms. Lung individually, Ms. Lung's sworn declaration—summarized above—***directly contradicts*** any inference from the substance of the bare allegations in Plaintiff's Complaint that might support a cause of action against her.  Where a sales representative's sworn testimony pierces the conclusory allegations offered to support a claim against the representative, Plaintiff's allegations cannot defeat dismissal for fraudulent joinder.  *See*, e.g., *Suckow*, 971 F. Supp. 2d at 1048; *Thompson,* 2006 WL 3544937 at *4; *Kite*, 2006 WL 3386765 at *3; *Sobkowski,* 2004 WL 3581799 at *7; *Ridings v. Maurice*, No. 15-00020-CV-W-JTM, 2015 WL 1474080, at *3 (W.D. Mo. Mar. 31, 2015)(explaining that where the underlying petition contains "a series of generic allegations related to the 'defendants' (collectively), . . . an affidavit from a defendant stating facts 'though in the nature of negatives' is 'the best evidence possible,'" adding that it was "unclear how [the sales representatives] could refute any involvement with the subject matter of the petition except by the types of declarations they filed").  This is especially true where, as here, Courtney Lung's declaration remains uncontroverted.  *See Suckow*, 971 F. Supp. 2d at 1048; *Southern v. Pfizer, Inc.*, 471 F. Supp. 2d 1207, 1214 (N.D. Ala. 2006); *In re Diet Drugs Prods. Liab. Litig.*, No. 03-20611, 2004 U.S. Dist. LEXIS 19848, at *5-6 (E.D. Pa. Sept. 28, 2004).  The present record provides no conceivable reasonable basis for predicting that Nevada law might impose liability against Courtney Lung personally for negligence, fraudulent concealment, strict-liability failure to warn, breach of implied warranty of merchantability, or deceptive trade practices.  The Court should therefore dismiss all of Plaintiff's claims against Courtney Lung.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Courtney Lung from this action.

Dated: January 12, 2018

Respectfully submitted,

/s/ John T. Schlafer
Andrea Roberts Pierson, Co-Lead Counsel
John T. Schlafer
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:        (317) 237-0300
Facsimile:        (317) 237-1000
andrea.pierson@faegrebd.com
john.schlafer@faegrebd.com

James Stephen Bennett, Co-Lead Counsel
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana  46802
Telephone:        (260) 424-8000
Facsimile:        (260) 460-1700
stephen.bennett@faegrebd.com

*Attorneys for Defendants Cook Incorporated, Cook Medical LLC f/k/a Cook Medical Incorporated, William Cook Europe APS*

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 12, 2018, a copy of the foregoing COOK

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS was filed

electronically, and notice of the filing of this document will be sent to all parties by operation of

the Court's electronic filing system to CM/ECF participants registered to receive service in this

matter.  Parties may access this filing through the Court's system.  Lead Co-Counsel for

Defendants will serve any non-CM/ECF registered parties.


/s/ John T. Schlafer

US.115694098.07