IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB MDL NO. 2570 |

This Document Relates to:
Ashley Gilbert
1:16-cv-6049-RLY-TAB

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COURNEY LUNG [Docket No. 7467]

### I.  INTRODUCTION

Plaintiff's motion to remand this matter to state court for a lack of subject matter jurisdiction was filed on August 23, 2016.  The Motion for Remand hinges on whether Defendants have carried their heavy burden of establishing that Courtney Lung was fraudulently joined, i.e. that there is no reasonable possibility that Courtney Lung could be held liable under Nevada law. Pursuant to the Court's order regarding Transferred Cases [Docket No. 7312], Plaintiffs and defendants filed a joint notice [Docket No. 7370] on December 18, 2017, notifying the Court that Plaintiff's motion for remand had been adequately briefed and was ready for determination by the Court.

On January 18, 2018, Cook Defendants then filed the instant Motion to Dismiss defendant Courtney Lung for alleged lack of personal jurisdiction and because Courtney Lung allegedly cannot be held liable under Nevada law. Defendants' Motion should be denied because Courtney Lung waived the right to challenge personal jurisdiction by expressly agreeing to waive service

1

and failing to challenge personal jurisdiction within a reasonable time. Further, Defendants inappropriately ask the court to consider the merits of Plaintiff's claims without first resolving whether the Court has subject matter jurisdiction in the case. Given that the Court cannot rule on a motion to dismiss requiring consideration of the merits without first determining it has subject matter jurisdiction, which would require a ruling on the pending motion for remand/fraudulent joinder issue, it appears that Defendants' motion is really an effort to insert new argument and case law into the already fully briefed motion for remand. As the parties have already briefed these issues and notified the court that the subject matter jurisdiction issue is ready for determination, the court should not consider additional argument on these topics under the guise of a Motion to Dismiss.

## II.    FACTUAL HISTORY

Plaintiff is a resident of Nevada who underwent placement of a Cook Celect® Vena Cava filter on September 25, 2012 at University Medical Center in Las Vegas, Nevada. 1:16-cv-06049, Dkt. No. 1-1 ("Compl.") ¶ 1.   The device subsequently malfunctioned by tilting and perforating her vena cava and intestine. (*Id*). As a result, she suffered severe abdominal pain, cardiac complications, sepsis, acute kidney injury, and required multiple corrective surgical procedures. (*Id*).

On March 16, 2016, Plaintiff filed suit in Clark County, Nevada against Defendants Cook Group Incorporated; Cook Medical, Incorporated; Medical Engineering and Development Institute, Inc.;  MED Institute, Inc. and Cook MED Institute; Cook Medical Denmark International APS; William Cook Europe APS (collectively "Cook Defendants") and Courtney Lung for strict products liability, negligence, fraudulent concealment, and deceptive trade practices (Nev. Rev. Stat. Ann. § 42.001).  *Id.*

Courtney Lung is an individual who has been a resident of a Nevada and "selling" Cook Cook Celect® Vena Cava filter therein since at least 2007 for her employer Cook Medical Incorporated, now Cook Medical LLC (CML). 1:16-cv-06049, Dkt. No. 1-1 ¶ 2 (Compl.), Dkt. No. 5 ¶ 2 Defs.' Collective Answer to Pl.'s Compl. (hereinafter "Answer"); Ex. 5 ¶3, Courtney Lung's Answer to Compl. in *Lowicki v. Lung*, case number 1:17-cv-06071 (admitting "Ms. Lung has been a resident of Clark County, Nevada for over 20 years and has been **selling** Cook Celect® vena cava filters, in her capacity as an employee of CML, since it was first cleared by the FDA for use in 2007.")(emphasis added). Ms. Lung's sales territory included all hospitals and physicians in Las Vegas, Nevada. Ex 1, Declaration of Troy A. Brenes ("Brenes Decl.") ¶ 2.

In a May 2011 presentation, Ms. Lung explains that of the overall IVC filter use in her territory, she captured or converted 85-90% of the market share to use of Cook Defendants' IVC filters. Ex. 2, p. 2 (a true and correct copy of a May 2011 PowerPoint Presentation authored by Courtney Lung and produced in discovery by Defendants.) She explains that these sales mostly involved the Celect and Tulip IVC filters. *Id.*

Plaintiffs allege and Ms. Lung's declaration does not dispute that she was the primary point of contact for educating Ms. Lowicki's prescribing physicians about the device's features, assisting them with understanding the proper use of the device, explaining its risks and benefits, answering their questions, and convincing them to either convert to using the device and/or to continue using the device." Compl. ¶ 2.  Indeed, Defendants admit her job included ensuring that Ms. Gilbert's physicians either did not stop using the Cook Celect® filter and/or converted to using the device. Answer ¶ 2.

Plaintiffs allege and Ms. Lung's declaration does not dispute that Ms. Lung accomplished these job duties "by making frequent in person sales calls to Ms. Lowicki's prescribing physicians to promote the device; providing sales brochures, favorable clinical data and other marketing materials to Ms. Lowicki's prescribing physicians; recruiting and/or attempting to recruit Ms. Gilbert's treating physicians for educational and training opportunities that promoted the Cook Celect® Vena Cava Filter Set; and at times participating and/or observing Ms. Gilbert's prescribing physicians in placing the device." *Id.* Indeed, Ms. Lung notes that one of the ways she sought to protect her market share in her territory was by helping her doctors increase referrals and filter usage by setting up "Technology dinners" and "lunch and learns" for bariatrics, oncology, hospitalists and orthopods." Ex. 2, p. 29.

Plaintiff alleges Ms Lung's conduct was wrongful in that she knew or should have known that at the time she promoted, educated and delivered or ordered the Cook Celect® filer implanted in Plaintiff that it had an unreasonably and unexpectedly high risk of fracture, migration, excessive tilting, and tendency to tear the vena cava once implanted in the human body, and that such failures exposed patients to, and in fact had caused numerous serious injuries, including death and cardiac complications. *Id.* ¶¶ 19, 44-46. She further knew or should have known that these risks for the Celect® filter were substantially higher than other similar devices. *Id.* Ms. Lung also knew or should have known that the device did not have the appropriate metal content and, as such, increased the risk of the device tearing her vena cava and causing death or other serious injury. *Id.* ¶¶ 19(c), 47. Despite awareness of these risks, Ms. Lung personally marketed and delivered the device to Plaintiff's health care providers and failed to reveal her knowledge of the risk posed by the product. *Id.* ¶¶ 19(d); 26; 39(d)(g)(h); 49. Representing that the Cook Celect® filter was safe of its intended use when in fact, she knew or

4

should have known the product was not safe for its intended purpose. *Id.* ¶39 (h). Ms. Lung also failed to provide adequate instructions, guidelines, and safety precautions to those persons to whom it was reasonably foreseeable would prescribe, use, and implant the Celect® filter. (*Id.* ¶ 39(f)).

Indeed, in Ex. 2, Ms. Lung reveals that prior to Plaintiff being implanted with the device, Ms. Lung was aware of safety problems with the device and believed that younger patients, like Ms. Gilbert, should receive the safer Tulip device to avoid complications. Ex. 2, p. 26. She specifically mentions a cluster of device failures in Las Vegas involving "leg spreading, migration, and fracture. " Cook Defendants have described leg spreading as leading to penetration/perforation.

### III.  PROCEDURAL HISTORY

On March 16, 2016, Plaintiff filed suit in Clark County, Nevada.

On April 14, 2016, counsel Courtney Lung agreed to waive service if Plaintiff agreed to not oppose a request to consolidate the cases then pending in Clark County. Defendants also agreed not to attempt removal of the cases to federal court. Ex. 1 ¶¶ 4-5, Brenes Decl.; Ex. 3 (a true and correct copy of an email exchange between Troy Brenes and Doug King regarding service of process). The parties also agreed that Defendants would not seek removal of these cases under a theory of fraudulent joinder. These agreements were confirmed by telephone later than day. *Id.*

However, on July 27, 2016, Courtney Lung and the Cook Defendants petitioned for removal of these cases.

On July 28, 2016, Plaintiff's counsel contacted defense counsel by email to ascertain why Defendants broke the agreement to not remove the *Ashley Gilbert* case.  Brenes Decl. ¶¶ 6-7, Ex.

4. Defense counsel responded that the client had overruled the agreement. *Id.* However, at no point did Defendants state that they were also withdrawing the agreement to waive service. *Id.*

August 23, 2016, Plaintiff filed a motion seeking remand of this matter due to a lack of subject matter jurisdiction. Doc. No. 12. Defendants filed a Response in Opposition on September 9, 2016. 1:16-cv-06049, Dkt. No. 16.

## IV. LEGAL ARGUMENT

### a. Courtney Lung Waived Right to Challenge Personal Jurisdiction for Lack of Service of Process by Expressly Waiving Service of Process and by Failing to Raise Objection Within Timely Manner.

Personal jurisdiction, "represents a restriction on judicial power . . . as a matter of individual liberty." *Insurance Corp. of Ireland* v. *Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702, 72 L. Ed. 2d 492, 102 S. Ct. 2099 (1982). Therefore, a party may forgo that right, effectively consenting to the court's exercise of adjudicatory authority. See Fed. Rule Civ. Proc. 12(h)(1) (defense of lack of jurisdiction over the person waivable); *Insurance Corp. of Ireland*, 456 U.S. at 703 (same). Here, Defendant Courtney Lung choose to waive service while this matter was pending in state court and, therefore, cannot now challenge personal jurisdiction on the basis that she was not served.

Two months after this law suit was filed in state court, Defense Counsel Douglas King agreed to waive service on behalf of Courtney Lung in exchange for Plaintiff agreeing to not oppose Defendants planned efforts to coordinate cases then pending in Clark County before single judge. This agreement was laid out in an email communication, Ex. 3, and was confirmed by telephone call on April 14, 2016. Brenes Decl. ¶¶ 4-5. While Defense Counsel Douglas King later admitted Defendants broke an agreement that they would not remove the case the federal court, he never claimed that he was withdrawing or could withdraw the agreement to waive service on behalf

6

of Courtney Lung. Therefore, Ms. Lung has waived the right to challenge personal jurisdiction on the basis that she was not served.

Courtney Lung has also waived her right to challenge personal jurisdiction by failing to ever challenge whether this Court has personal jurisdiction over her. See, Fed. R. Civ. P. 12(h)(1). The parties bringing this motion are the Cook Defendants, not Ms. Lung. Defendant offers no explanation for why Ms. Lung invoked the jurisdiction of this court but has not raised an objection to personal jurisdiction since she removed this case to federal court on July 27, 2016. The Cook Defendants also fail to explain on what basis they have standing to bring a motion to dismiss a co-defendant.

Even if the Court decides that Courtney Lung can revoke her agreement to waive service, good cause exists to extend Plaintiff's time to make service. Good cause exists because Plaintiff relied on Ms. Lung's agreement to waive service in deciding not to serve Ms. Lung. Such reliance was reasonable and proper. Defendant should not be entitled to fraudulently induce plaintiff into not serving process and then rely on that lack of service as means of obtaining dismissal of the case.

      **b.  The Court May Not Consider Defendants' Motion to Dismiss Plaintiff's Claims Against Courtney Lung On the Merits Without First Addressing Whether This Court Has Subject Matter Jurisdiction.**

Before a federal court considers the merits of a case, it must first satisfy itself of its jurisdiction over the subject matter of the case. *Steel Co.* v. *Citizens for Better Environment,* 523 U.S. 83, 101-102 (1998). "For a court to pronounce upon [the merits] when it has no jurisdiction to do so," *Steel Co.* declared, "is . . . for a court to act ultra vires." 523 U.S. at 101-102. Indeed, in the *Suckow v. Medtronic, Inc.*, case on which Defendants heavily rely, the court states that it must first determine whether it has subject matter jurisdiction before considering

7

defendant's motion to dismiss. 971 F. Supp. 2d 1042 (Dist. Nev. 2013)("As a threshold consideration, the Court must first determine its jurisdiction over this action. If the Court finds that Defendant Row was improperly joined, and that jurisdiction exists over the action, then disposition of Defendant Medtronic's Motion to Dismiss …may be proper."). Thus, unless and until the Court determines that it has subject matter jurisdiction over this matter, i.e. that Defendant Courtney Lung was fraudulently joined, the Court should not rule on Defendants' Motion to Dismiss, as such a ruling requires a consideration of the merits of the case.

      **c. The Parties Have Already Briefed Subject Matter Jurisdiction and Fraudulent Joinder Issues and, Therefore, It Is a Waste of the Parties' and Court's time and Resources to Again Brief these Same Issues Under the Guise of a Motion to Dismiss.**

The parties briefed the issue of whether this Court has subject matter jurisdiction, i.e. whether Courtney Lung was fraudulently joined, as part of Plaintiff's Motion to Remand. Plaintiff filed the motion on August 23, 2016 and defendants filed a Response in opposition on September 9, 2016. On December 18, 2017, following the Court Order Regarding Transferred Cases, the parties notified the Court that no further briefing regarding the Motion to Remand was required and that the matter was ripe for ruling. Dkt. 7370-1, p. 2. However, on January 12, 2018, Cook Defendants filed this Motion to Dismiss all Claims against Courtney Long either because she had not been served and/or because there were no plausible claims against Ms. Lung under Nevada law, i.e. she was fraudulently joined. See, Defs.' Mot. To Dismiss, pp. 10-21, Dkt. 7467.

Given that the Court cannot rule on a motion to dismiss requiring consideration of the merits without first determining it has subject matter jurisdiction over this case, which would require a ruling on the pending motion to remand/fraudulent joinder issue, it appears that Defendants' motion is really just an effort to insert new argument and case law into the already briefed motion for remand. As the parties have already briefed these issues and notified the court

that the subject matter jurisdiction issue is ready for determination, the court should not consider additional argument on these topics under the guise of a Motion to Dismiss. Therefore, instead of submitting new briefing on whether Plaintiff has plausible claims against Ms. Lung under Nevada law, Plaintiff directs the Court to Plaintiff's Motion for Remand regarding the same topic. *See* Doc. No. 12, of Plaintiff's individual case file.

### d. To the Extent Defendants Argue Plaintiff Has Burden to Show Plaintiff's Claims Against Ms. Lung Are Viable, Defendants Misstate the Law.

In the Seventh Circuit, Joinder is considered fraudulent, and is therefore disregarded, only if the [diverse] defendant can show there exists no 'reasonable possibility that a state court would rule against the [non-diverse] defendant.'" *Schwartz v. State Farm Mut. Auto. Ins. Co*., 174 F.3d 875, 878 (*quoting Poulos v. Naas Foods, Inc*., 959 F.2d 69, 73 (7th Cir.1992)); *see also Morris v. Nuzzo*, 718 F.3d 660, 671 n. 5 (7th Cir.2013) ("We stick exclusively to our own 'any reasonable possibility' test in this opinion...."). A defendant "bear[s] a heavy burden to establish fraudulent joinder," and courts must "resolv[e] all issues of fact and law in favor of the plaintiff." *Poulos*, 959 F.2d at 73. The Seventh Circuit has suggested that this "burden is even more favorable to the plaintiff than the standard that applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Schur v. L.A. Weight Loss Ctrs., Inc*., 577 F.3d 752, 764 (7th Cir.2009).

### e. As Evidenced by Numerous Cases That Have Addressed Fraudulent Joinder in Context of Claims Against Sales Representatives Under Nevada Law, Defendants Cannot Establish Fraudulent Joinder.

Plaintiff will not repeat the extensive and specific arguments made regarding fraudulent joinder as part of her remand motion herein. However, Plaintiff generally notes that numerous cases have established that Nevada law is not settled as to whether a sales representative, like Ms. Lung, can be held liable under a strict product liability claim and, therefore, the ambiguity in controlling law means that Defendants cannot establish fraudulent joinder. *See e.g.*, *Zaite v. Long*

(*In re Pradaxa Prods. Liab. Litig.*), 2013 U.S. Dist. LEXIS 147302 (S.D. Ill. Oct. 11, 2013); *Rundle v. Depuy Orthopaedics, Inc*., No. 2:11-cv-00634-PMP-GWF, 2011 U.S. Dist. LEXIS 80514 (D. Nev. July 6, 2011); *Moore v. Medtronic, Inc*., Case No. 2:05-CV-01329-KJD-PAL, 2006 U.S. Dist. LEXIS 44198 (D. Nev. June 26, 2006).[1] Notably, *Zaite* was decided by Judge Herndon overseeing another Multidistrict Litigation, was decided under 7th Circuit law, and contained identical claims as raised herein. Further, "[T]he very fact that the courts may differ in their resolutions…shows there is a possibility of recovery." *Hartley v. CSX Transp., Inc.,* 187 F.3d 422, 425 (4th Cir. 1999)(reversing district court's order refusing to remand case based on finding of fraudulent joinder because "[n]o South Carolina case has squarely held" that the plaintiff's claims in that case were foreclosed.)

### f. Unlike In Cases Cited by Defendants, There is a Causal Nexus Between Ms. Lung's Conduct and Plaintiff's Injuries.

Defendants' Motion relies on cases where there was no possible or alleged causal nexus between the alleged conduct and the alleged injury. See e.g., *Suckow v. Medtronic, Inc.*, 971 F. Supp. 2d 1042 (Dist. Nev. 2013)(alleged negligence was based on defendant's allegedly improper adjustment of a medical device, but Plaintiff did not rebut affidavit by Defendant that he did not become involved in Plaintiff's care until months after the alleged negligence); *Thompson v. Medtronic, Inc.,* No. 2:05-CV-01329-KJD-PAL, 2006 U.S. Dist. LEXIS 44198 at *3 (D.Nev. December 8, 2006)(finding fraudulent joinder of the sales representative defendant because he was on disability during the entire period that the at issue medical device was commercially available and, therefore, could not have taken part in the design, manufacture, marketing, promotion, sale or distribution of the infusion sets."). Unlike these cases, Defendants' have not negated the key

---

[1] These cases, as well as the other claims, are discussed in detail in Plaintiff's Motion to Remand.

elements of Plaintiff's claims. Instead, Defendants have asserted legal conclusions without factual explanation or support.

As in *Moore, Rundle* and *Zaite* and contrary to *Suckow* and *Thompson,* Ms. Lung had direct involvement in promoting and facilitating the sale or use of the Cook Celect® filter in Plaintiff such that there is an adequate causal nexus between its alleged conduct and plaintiff's injuries. Courtney Lung is an individual who has been a resident of a Nevada and "selling" Cook Cook Celect® Vena Cava filter therein since at least 2007 for her employer Cook Medical Incorporated, now Cook Medical LLC (CML). 1:16-cv-06049, Dkt. No. 1-1 ¶ 2 (Compl.), Dkt. No. 5 ¶ 2 Defs.' Collective Answer to Pl.'s Compl. (hereinafter "Answer"); Ex. 5 ¶3, Courtney Lung's Answer to Compl. in *Lowicki v. Lung*, case number 1:17-cv-06071 (admitting "Ms. Lung has been a resident of Clark County, Nevada for over 20 years and has been **selling** Cook Celect® vena cava filters, in her capacity as an employee of CML, since it was first cleared by the FDA for use in 2007.")(emphasis added). Ms. Lung's sales territory included all hospitals and physicians in Las Vegas, Nevada. Ex 1, Declaration of Troy A. Brenes ("Brenes Decl.") ¶ 2.

Plaintiff alleges and Ms. Lung's declaration does not deny that she "was the primary point of contact for educating Ms. Gilbert's prescribing physicians about the device's features, assisting them with understanding the proper use of the device, explaining its risks and benefits, answering their questions, and convincing them to either convert to using the device and/or to continue using the device." Compl. ¶ 2. Indeed, Ms. Lung admits her job included ensuring that Ms. Gilbert's physicians either did not stop using the Cook Celect® filter and/or converted to using the device. Answer ¶ 2.

Plaintiff alleges and Ms. Lung's declaration does not deny that she accomplished these job duties "by making frequent in person sales calls to Ms. Gilbert's prescribing physicians to

11

promote the device; providing sales brochures, favorable clinical data and other marketing materials to Ms. Gilbert's prescribing physicians; recruiting and/or attempting to recruit Ms. Gilbert's treating physicians for educational and training opportunities that promoted the Cook Celect® Vena Cava Filter Set; and at times participating and/or observing Ms. Gilbert's prescribing physicians in placing the device." Compl. ¶ 2. While Plaintiff has not had the opportunity to obtain discovery from Ms. Lung, Plaintiff has discovered a PowerPoint authored by her in May 2011. The PowerPoint confirms Ms. Lung marketed the Celect Filter as part of her job responsibilities. Ex. 2, p. 2. It further reveals that Ms. Lung attempted to protect her majority market share in her district by, among other things, helping her doctors increase referrals and filter usage by setting up "Technology dinners" and "lunch and learns" for bariatrics, oncology, hospitalists and orthopods" regarding these devices. *Id.* p. 29.

      Plaintiff alleges Ms Lung's conduct was wrongful in that she knew or should have known that at the time she promoted, educated and delivered or ordered the Cook Celect® filter implanted in Plaintiff that it had an unreasonably and unexpectedly high risk of fracture, migration, excessive tilting, and tendency to tear the vena cava once implanted in the human body, and that such failures exposed patients to, and in fact had caused numerous serious injuries, including death and cardiac complications. *Id.* ¶¶ 19, 44-46. She further knew or should have known that these risks for the Celect® filter were substantially higher than other similar devices. *Id.* Ms. Lung also knew or should have known that the device did not have the appropriate metal content and, as such, increased the risk of the device tearing her vena cava and causing death or other serious injury. *Id.* ¶¶ 19(c), 47. Despite awareness of these risks, Ms. Lung personally marketed and delivered the device to Plaintiff's health care providers and failed to reveal her knowledge of the risk posed by the product. *Id.* ¶¶ 19(d); 26; 39(d)(g)(h); 49.

12

Representing that the Cook Celect® filter was safe of its intended use when in fact, she knew or should have known the product was not safe for its intended purpose. *Id.* ¶39 (h). Ms. Lung also failed to provide adequate instructions, guidelines, and safety precautions to those persons to whom it was reasonably foreseeable would prescribe, use, and implant the Celect® filter. (*Id.* ¶ 39(f)). These allegations are supported by page of 26 of Ms. Lung's PowerPoint, in which she reveals that she was aware that the Celect filter was more dangerous than the Tulip filter for younger patients, like plaintiff, and that there had been multiple safety failures involving the Celect filter in Las Vegas, including "leg spreading, migration and fracture." Ex. 2.

Ms. Lung declaration that she did not "sell" the device any time and was not aware of any "defect" in the device are legal conclusions which contradict her own admissions and statements made in her 2011 PowerPoint.

### g. Defendants' Have failed to Establish that Nevada Has Adopted the *Twombly* and *Iqbal* Standard.

The fraudulent joinder analysis looks to whether the claim against the resident defendant is viable under the settled rules of the state and federal courts therefore look to the state's pleading standard in determining whether a claim against a resident defendant is viable. *See Edwea, Inc. v. Allstate Ins. Co.*, No. CIV.A. H-10-2970, 2010 U.S. Dist. LEXIS 129582, 2010 WL 5099607, at *5 (S.D. Tex. Dec. 8, 2010) (collecting cases). Nevada is a notice-pleading jurisdiction, that liberally construes pleadings to pleadings to place into issue matters which are fairly noticed to the adverse party. *Hay v. Hay*, 678 P.2d 672. A party need only set forth sufficient facts to establish the necessary elements of a claims for relief, so that the adverse party has adequate notice of the nature of the claim sought and relief sought. *Branda v. Sanford*, 97 Nev. 643, 648, 637 P.2d 1223, 1227 (1981). Defendants have not provided any case law establishing that Nevada has adopted the *Twombly/Iqbal* pleading requirements. As laid out above, Plaintiff has clearly laid out what Ms.

13

Lung's involvement was with this case such that she has adequate notice of the claims being alleged against her, as well as the relief Plaintiff is seeking.

### V. CONCLUSION

Based on the foregoing and attached exhibits, Plaintiff respectful requests that the court deny Defendants' Motion to Dismiss Courtney Lung as a Defendant in this case.

Dated: January 26, 2018

                                Respectfully submitted,

                                /s/ Troy A. Brenes
                         Troy A. Brenes CA Bar No. 249776)
                         BRENES LAW GROUP, P.C.
                         27141 Aliso Creek Rd., Suite 270
                         Aliso Viejo, CA 92656
                         Telephone:      (949)397-9360
                         Facsimile:       (949)607-4192
                         tbrenes@breneslawgroup.com

                         Peter C. Wetherall
                         NV Bar No. 4414
                         Wetherall Group, Ltd.
                         9345 West Sunset Road, Suite 100
                         Las Vegas, NV 89148
                         Telephone:      (702)-838-8500
                         Facsimile:       (702)-837-5081

                         *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on January 26, 2018, a copy of the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COURNEY LUNG** was filed electronically. Parties may access this filing through the Court's electronic records system.

/s/ Troy A. Brenes
Troy A. Brenes
