# EXHIBIT H

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates to the Following Actions only:

    Elizabeth Jane Hill
    No. 1:14-cv-06016-RLY-TAB

    Arthur Gage
    No. 1:13-cv-01875-RLY-TAB

**COOK DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO EXCLUDE OR LIMIT THE EXPERT TESTIMONY OF SCOTT ROBERTSON, Ph.D.**

The Cook Defendants submit this opposition in response to the Plaintiffs' Motion to Exclude or Limit the Expert Testimony of Scott Robertson, Ph.D. ("Dr. Robertson"), and respectfully urge the Court to deny Plaintiffs' request to limit or exclude the challenged testimony for the reasons set forth below.

**I.      INTRODUCTION**

Dr. Robertson is a well-qualified mechanical and materials science engineer and has extensive experience designing and developing his own IVC filter as well as other medical devices.

Dr. Robertson offers three general opinions in this case:

- Opinion 1 – Cook Medical's design process for the Gunther Tulip and Celect IVC filters was appropriate, state of the art, and provided the information needed to confirm the designs' functionality, safety, and efficacy.

- Opinion 2 – Cook Medical's Gunther Tulip and Celect IVC filter designs are not defective, and the benefits or utility of the designs far outweigh their risks.

- Opinion 3 – Cook Medical's testing procedures to confirm design safety and efficacy were appropriate, state of the art, and provided the information needed to confirm the designs' functionality, safety, and efficacy.

Dkt. 5940, Ex. A, p. 21. In addition to his three general opinions, Dr. Robertson offers rebuttal opinions to two of Plaintiffs' experts (Dr. Robert McMeeking and Dr. John DaLisa) and offers case-specific engineering opinions in *Hill* and *Gage* ruling out that a defect in design or manufacture caused the Cook IVC filters at issue to be malpositioned, tilted, or to perforate Ms. Hill's or Mr. Gage's inferior vena cava – complications which are well-known risks for all IVC filters regardless of manufacturer. *Id.* at A1-15, B1-6, C1-3 & D1-3.

Plaintiffs do not challenge Opinions 1 and 3 nor do they challenge Dr. Robertson's criticisms of Dr. McMeeking or Dr. DaLisa. Dkt. 5940, pp. 1-2. Instead, Plaintiffs challenge Opinion 2 and Dr. Robertson's case-specific opinions in *Hill* and *Gage*. *Id.* In other words, Plaintiffs concede that Dr. Robertson is well qualified and that his engineering opinions on the design process and testing procedures for Cook IVC filters are admissible. Yet, in the same breath, Plaintiffs then argue that Dr. Robertson is not qualified to offer engineering opinions on the adequacy of the design of Cook IVC filters or case-specific opinions ruling out defect and that he fails to utilize a reliable methodology.

As explained below, Plaintiffs' criticisms about Dr. Robertson's General Opinion 2 and case-specific opinions lack merit. The Court should deny their Motion in its entirety.

## II. ARGUMENT

### A. Dr. Robertson Is Well Qualified To Offer General Opinion 2 And His Case-Specific Opinions In *Hill* And *Gage*.

Dr. Robertson is a well-qualified mechanical and materials science engineer with extensive IVC filter experience. Unlike Plaintiffs' engineering expert, Dr. Robert McMeeking,

whose knowledge about and experience with IVC filters stems solely from his litigation work, Dr. Robertson's knowledge and experience was obtained outside the context of litigation and is based on his experience designing and developing his own IVC filter while employed with Teneo Medical Development. Dkt. 5940, Ex. A, p. E1; Robertson Dep.[1], 51:8-19; 426:7-17. As part of his work developing the Teneo IVC filter, Dr. Robertson studied many other IVC filters and performed comparative bench experiments and analysis on Cook IVC filters. Robertson Dep., 45:6-23; 114:22-115:17. In addition, Dr. Robertson was involved in overseeing the finite element analysis for the development of his Teneo IVC filter and participated in animal studies as part of the design process. Robertson Dep., 52:5-23; 426:7-427:7. During his development of the Teneo IVC filter, Dr. Robertson also met and discussed with many medical doctors that used Cook IVC filters. Robertson Dep., 125:18-127:6. Some of these medical doctors served on Dr. Robertson's scientific advisory board while others are medical doctors that Dr. Robertson interviewed as key opinion leaders. *Id.* In short, it is Dr. Robertson's *real life experience* developing his own IVC filter that informs his opinions in this case, not knowledge he gained as a litigation expert like Dr. McMeeking.

Indeed, in the years since *Daubert* was decided, the lower courts have built upon its framework, and they have measured the reliability of expert testimony against several additional factors. Those factors are collected in the Advisory Committee's Note accompanying the 2000 amendments to Rule 702. The first one listed is whether the expert is proposing to testify about matters "growing naturally and directly" out of research he has conducted "independent of the litigation," or whether the expert has developed his opinions "expressly for purposes of testifying." FED. R. EVID. 702, Advisory Committee's Note (2000 amends.) (internal quotation marks omitted). As support for the notion that this is a relevant factor, the Advisory Committee

---

[1] Excerpts from the Deposition of Scott Robertson, August 17, 2017 ("Robertson Dep."), are attached as Exhibit 1.

cited the court of appeals' opinion on remand from the Supreme Court in *Daubert* itself: *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995). That case describes the source of the expert's opinions as a "very significant fact to be considered." *Id.* Although not dispositive, "in determining whether proposed expert testimony amounts to good science, [a court] may not ignore the fact that a scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office." *Id.* Therefore, "[t]hat an expert testifies based on research he has conducted independent of the litigation provides important, objective proof that the research comports with the dictates of good science." *Id.*

In addition to Dr. Robertson's independent knowledge and experience developing his own IVC filter, Dr. Robertson has years of experience working as an engineer for medical device manufacturers. Dkt. 5940, Ex. A, at E1; Robertson Dep., 26:18-27:11. Dr. Robertson formerly worked as an engineer with medical device company Medtronic. *Id.* While employed with Medtronic, Dr. Robertson worked with teams of finite element engineers to understand the limitations and benefits that FEA can provide. *Id.* Dr. Robertson also has years of experience as an engineering consultant performing failure analyses, including analyses on medical devices ranging from fractured bone anchors and hip implants to fractured heart valves. Dkt. 5940, p. E2; Robertson Dep., 86:17-88:8; 90:15-91:23. Moreover, Dr. Robertson has been trained to interpret medical images, CTs, fluoroscopic images, and to derive boundary conditions for bench testing from those images. Robertson Dep., 30:2-16. Based on this training and experience, Dr. Robertson is able to interpret data that comes from medical images for the purpose of designing medical products. *Id.* at 30:2-31: 17. In fact, he routinely interpreted and diagnosed medical images from animal studies during the development of his own IVC filter. *Id.* at 31:9-17.

Dr. Robertson obtained his Bachelor of Science in Mechanical Engineering from the University of Texas in Austin and obtained his a Master of Science and Doctor of Philosophy in Materials Science & Engineering from the University of California in Berkley, along with a Minor in Biomedical Engineering. Dkt. 5940, Ex. A, p. E1; Robertson Dep., 25:18-26:17; 424:16-425:19. Dr. Robertson has given multiple engineering lectures and published numerous peer-reviewed articles on the fatigue strength of metals used to manufacture IVC filters. Dkt. 5940, Ex. A, p. E2-3; Robertson Dep., 60:20-61:12. In particular, Dr. Robertson has lectured and published on Nitinol and Elgiloy, both of which are metals used to manufacture IVC filters with the latter being the metal alloy currently used to manufacture Cook's IVC filters. Dkt. 5940, Ex. A, p. E2-3; Robertson Dep., 38:13-40:14. Notably, Dr. Robertson has published in engineering journals and in medical journals specifically in the field of IVC filters. Dkt. 5940, Ex. A, p. E2-3. Dr. Robertson also presented information to the FDA during the development of his own IVC filter. Robertson Dep., 47:10-19; 49:1-23.

Plaintiffs contend that General Opinion 2 and Dr. Robertson's case-specific opinions are "medical opinions" as opposed to engineering opinions and, therefore, claim that Dr. Robertson is not qualified to offer them because he is not a medical doctor, biostatistician or an epidemiologist.[2] Dkt. 5940, pp. 4, 9. To be clear, Dr. Robertson's opinions are biomedical

---

[2] Plaintiffs cite a string of cases to support their argument that Dr. Robertson is unqualified to offer General Opinion 2 and his case specific opinions. However, the cases cited by Plaintiffs are distinguishable and inapposite to the facts of this case. Here, Dr. Robertson is attempting to offer engineering and design opinions, not medical causation opinions, based on his extensive knowledge and direct experience with IVC filters. The cases cited by Plaintiffs, on the other hand, involve engineering experts that attempted to offer medical causation opinions as opposed to engineering opinions and had no experience or qualifications to offer such opinions. *See Goodwin v. MTD Prod., Inc.*, 232 F.3d 600, 609 (7th Cir. 2002) (precluding expert testimony about "nature, scope, or cause of an eye injury" where the proposed expert was a mechanical engineer with "neither a medical degree nor any medical training."); *Bowersock v. Davol, Inc.*, 236 F.Supp.3d 1074, 1087-88 (S.D. Ind. 2017) (excluding expert testimony in case involving a prescription hernia patch where proposed engineering expert attempted to offer opinions about bowel injury at issue despite failing to use a reliable methodology and admitting "that he is not an expert . . . and only had 'some knowledge about [them].'"); *Burton v. Riverboat Inn Corp.*, 2013 WL 6153231 at *5 (S.D. Ind. Nov. 2013) (precluding expert testimony regarding cause of injury where the proposed expert was a civil engineer with "no training or expertise in medicine."); *In re Zimmer NexGen Knee Implant Prod. Liab. Lit.*, 2015 WL 5145546, at *10

engineering opinions based on his knowledge and independent and extensive experience designing and developing his own IVC filter as well as other medical devices. Regardless, the case law is clear that a witness's relevant experience and knowledge are to be considered in the analysis of an expert's qualifications. As explained in detail above, Dr. Robertson has extensive knowledge and real-world experience in developing and designing his own IVC filter as well as other medical devices. As such, Dr. Robertson is clearly well qualified to offer the opinions that Plaintiffs challenge. *See Smith v. Ford Motor Co.*, 215 F.3d 713, 721 (7th Cir. 2000) ("[A] court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area."); *Loudermill v. Dow Chemical Co.*, 863 F.2d 566, 569 (8th Cir. 1988) (admitting an expert's testimony relating to causation of injuries, despite the expert's lack of medical experience, because he had "considerable academic and practical knowledge in the field of toxicology"); *Kumho Tire Co., Ltd v. Carmichael*, 526 U.S. 137, 156 (1999) ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.").

**B.   Dr. Robertson's General Opinion 2 Is Based On A Sound And Reliable Methodology.**

Plaintiffs attack Dr. Roberson's opinion that the Cook IVC filters at issue are not defective, and that the benefits or utility of their designs outweigh the risks. Specifically, Plaintiffs take issue with Dr. Robertson's risk-benefit analysis, which follows the same methodology that Dr. Robertson used in developing his own IVC filter and is similar to the IVC

---

(N.D. Ill. Aug. 31, 2015) (precluding expert testimony about "clinical risk-benefit analysis" in prescription device case where the proposed expert admitted being unqualified to offer such testimony because clinical risk-benefit analysis was outside the scope of his practice); *In re Rezulin Prod. Liab Lit.*, 309 F.Supp.2d 531, 560 (S.D. N.Y. 2004) (precluding expert testimony on evaluation of "risks versus benefits" in prescription drug case where the proposed expert admitted being unqualified due to "lack of familiarity with [prescription drug's] alleged benefits in treating diabetes... .").

filter risk-benefit analysis performed in the peer-reviewed *Morales* article.[3] Dkt. 5941, Ex. F; Robertson Dep., 435:6-437:21.

On the benefit side of the analysis, Plaintiffs criticize Dr. Robertson's methodology as unreliable and contend that Dr. Robertson failed to provide "any data or studies demonstrating whether, or the extent to which, pulmonary embolism is actually prevented by Cook's filters" and failed to perform an adequate review of the literature. Dkt. 5940, p. 10. Plaintiffs are simply incorrect. Dr. Robertson's methodology is based on the same methodology he used to design and develop his Teneo IVC filter while employed with Teneo Medical Development. Dkt. 5940, Ex. A, pp. 13-33 & E1; Robertson Dep., 51:8-19; 246:14-247:11; 426:7-17; 445:17-446:6; 447:23-448:14. As he explained in his expert report and at his deposition, Dr. Robertson identified the primary performance feature or benefit of an IVC filter to be the ability to capture clots. *Id.* Dr. Robertson then considered features or risks such as migration resistance, fracture resistance, perforation resistance, tilt resistance, optional retrievability, and occlusion. *Id.* Consistent with the methodology he used in developing his own IVC filter, these are the criteria which Dr. Robertson used and ranked to perform his risk-benefit analysis. *Id.*

To prove that Cook IVC filters are capable of capturing clots, Dr. Robertson relied upon clot trapping studies or publications that were performed using numerous clot sizes, including individual clots and a cascade of clots. Dkt. 5940, Ex. A, pp. 23, 27; Robertson Dep., 249:7-18, 298:10-23. Moreover, these studies also include the use of tilted and un-tilted filters. *Id.* These clot trapping studies demonstrate that IVC filters are effective in preventing pulmonary embolism. *Id.* Dr. Robertson also relies upon the *Morales* paper, which combines all IVC filters into a single publication and performs a risk/benefit analysis of IVC filters in general showing

---

[3] Morales, et al., "Decision analysis of retrievable inferior vena cava filters in patients without pulmonary embolism," J. Vasc. Surgery, Vol. 1, No. 4, pp. 376-84 (Oct. 2013).

7

that the benefits always outweigh the risk over the time period that was examined. Robertson Dep., 251:1-23. Dr. Robertson further cites the PRECIP I study as being a randomized clinical trial that demonstrates that IVC filters are capable of preventing pulmonary embolism. *Id.* at 242:1-12; 243:17-244:7. The primary end point in the PRECIP I study was to establish that IVC filters are appropriate for reducing the risk of pulmonary embolism. *Id.* at 239:15-240:22. Dr. Roberson then correlates those results with the bench top experiments that were performed by researchers demonstrating the clot-trapping ability of the Cook IVC filters to be the same or superior to other IVC filters that were used in the PRECIP I clinical study. Dkt. 5940, Ex. A, pp. 23, 27, & A10; Robertson Dep., 242:1-12; 243:17-246:8; 253:9-17; 254:16-255:7.

Dr. Robertson also spoke with key opinion leaders, took surveys of key opinion leaders, and listened to his advisory board consisting of medical doctors during the development of his Teneo IVC filter. Robertson Dep., 215:14-216:5. The opinions that were shared with him informed his opinions about the benefits of IVC filters. *Id.* Moreover, as part of Dr. Robertson's work in developing his Teneo IVC filter, he reviewed several articles that are included in his current expert report and as well as other items that were contemporary in the 2009 to 2011 time period which informed him on the utility and benefits of IVC filters preventing pulmonary embolism. Robertson Dep., 214:20-215:5.

Finally, Dr. Robertson reviewed and relied on the medical records and depositions of the implanting and explanting physicians in *Gage* and *Hill*, all of whom agreed in their depositions that IVC filters, including Cook IVC filters, are safe and efficacious in preventing pulmonary embolism. Dkt. 5950, Ex. A, pp. C1-3, D1-3, F13-F20; Zuzga Dep.[4], 63:1-13; Lynch Dep.[5],

---

[4] Excerpts from the Deposition of Mark Zuzga, M.D. (*Hill*), ("Zuzga Dep."), are attached as Exhibit 2.
[5] Excerpts from the Deposition of Frank Lynch, M.D. (*Hill*), ("Lynch Dep."), are attached as Exhibit 3.

165:21-166:4; Goodwin Dep.[6], 93:2-13; Crisostomo Dep.[7], 69:7-14. Plaintiffs criticize Dr. Robertson for not attempting to quantify the number of Cook IVC filters which have actually prevented pulmonary embolism from the hundreds of thousands that have been successfully implanted in patients. Dkt. 5940, p. 10. Yet, Plaintiffs cannot point to any methodology that would allow anyone to perform such an impossible task, much less to do it based on a sound and reliable methodology.

On the risk side of the analysis, Plaintiffs take issue with Dr. Robertson's reliance on Cook's IVC Filter Data Summary and his reliance on the analysis of Cook's epidemiology expert, Dr. Fryzek, regarding complaint and adverse event data for Cook IVC filters. Dkt. 5940, p. 11. Specifically, Plaintiff criticizes Dr. Robertson and Dr. Fryzek for not knowing "how representative complaints to the company might be of the number of real world adverse events." *Id.* However, Plaintiffs again cannot point to any reliable methodology that would allow anyone to perform such a task. As Dr. Robertson explained during his deposition, the Cook Data Summary is "the most representative based upon the limited data that we have to represent the best estimate of what is going on in the real world." Robertson Dep., 190:2-10. Indeed, to formulate this summary, Cook conducted an extensive literature review and data analysis. Specifically, the Cook Data Summary was prepared by Cook in consultation with a group of independent physicians and experts. Brown Dep., 372:6-379:5.[8] The purpose of the Data Summary was to optimize the potential benefits and reduce the potential risks associated with the use of IVC filters based on the analysis of independent, expert clinicians and scientists knowledgeable in the management of venous thromboembolism and the use of IVC filters.

---

[6] Excerpts from the Deposition of Mark Goodwin, M.D. (*Gage*) ("Goodwin Dep."), are attached as Exhibit 4.
[7] Excerpts from the Deposition of Paul Crisostomo, M.D. (*Gage*) ("Crisostomo Dep."), are attached as Exhibit 5.
[8] Excerpts from the Deposition of Jenifer Brown, Ph.D., May 8, 2017 ("Brown Dep."), are attached as Exhibit 6.

9

Kaufman Dep., 292:20-298:3.[9] The Data Summary included an extensive analysis of Cook's in-house complaint data, complaint data for IVC filters from all manufacturers as reported in the MAUDE database, and the results of a systematic literature search. Brown Dep., 373:10-374:4. Based on the available data, Cook concluded in the Data Summary that the risk-benefit ratio of its IVC filters is favorable and that the data continues to suggest that patients treated with Cook IVC filters largely experience favorable outcomes. *Id.* at 369:10-377:4. In preparing his expert report, Dr. Robertson properly reviewed and relied on the Cook IVC Filter Data Summary, which Dr. Robertson described as "the best estimate of what is going on in the real world." Robertson Dep., 190:2-10.

Moreover, Dr. Robertson analyzed complaint data for Cook IVC filters during the development of his Teneo IVC filter and used a methodology very similar to the methodology used by Cook's IVC Filter Data Summary and Dr. Fryzek's expert analysis. Dkt. 5940, Ex. A, pp. 22, F7, F46; Robertson Dep., 165:11-18. In fact, Dr. Robertson compared the adverse event rates upon which he relied from Cook's Data Summary and Dr. Fryzek's analysis to the analysis he performed using a similar methodology when he was developing the Teneo IVC Filter. Robertson Dep., 166:24-167:8; 170:21-171:24. Based on this comparison, Dr. Robertson determined the adverse event rate that he calculated was similar to the results in Cook's Data Summary and Dr. Fryzek's report and that the adverse event rates compared quite favorably. *Id.* Not surprisingly, the work that Dr. Robertson performed for Teneo on Cook's adverse event rates informs his general opinion of IVC filters and IVC filter development. Robertson Dep., 168:10-16. In any event, the adequacy of Dr. Robertson's literature search and analysis of complaint data goes to the weight, not admissibility, of the expert's testimony. *Ameritox, Ltd. v. Millennium Health*, LLC, 2015 WL 1520821, at *13 (W.D. Wisc. Apr. 3, 2015) (stating that

---

[9] Excerpts from the Deposition of John Kaufman, M.D., ("Kaufman Dep."), are attached as Exhibit 7.

even if the expert failed to conduct independent searches, "case law suggests that this concern goes to weight, 'rather than . . . admissibility.'" (citing *NutraSweet Co. v. X-L Eng'g Co.*, 227 F.3d 776, 789 (7th Cir. 2000)). Accordingly, Dr. Robertson's testimony should not be excluded, as the jury can appropriately determine the weight of Dr. Robertson's testimony based on the thoroughness of his literature and data review.

Plaintiffs also criticize Dr. Robertson's risk-benefit analysis because he does not consider as part of his analysis the risk of thromboembolic disease, which Plaintiffs point to as a risk mentioned in a single article involving Nitinol IVC filters manufactured by a company other than Cook. Dkt. 5940, p. 12; Robertson Dep., 211:1-212:24. As Dr. Robertson explains in his expert report however, he analyzed and ranked potential adverse events in order of importance based on the seriousness of the threat posed to the patient, and Dr. Robertson's ranking was based on his review and analysis of Cook's engineering documents, depositions of Cook employees, and his own personal experience designing an IVC filter. Dkt. 5940, Ex. A, pp. 13-33; Robertson Dep., 246:14-247:11. Moreover, Dr. Robertson did in fact consider in his risk-benefit analysis the complications at issue in *Hill* and *Gage* – malpositioning, tilt, or to perforation. As such, Dr. Robertson's failure to consider the risk of thromboembolic disease alone does not render Dr. Robertson's methodology unsound.

In short, the methodology employed by Dr. Robertson—namely, using his vast knowledge and experience from designing his own IVC and analyzing and reviewing the available peer-reviewed literature and data, Cook's own internal testing, Cook's engineering documents, and the depositions of Cook employees—is a *valid* methodology. *See Phillips v. Raymond Corp.*, 364 F. Supp. 2d 730, 743 (N.D. Ill. 2005) (noting that "the process of analyzing assembled data while using experience to interpret the data is not illicit" and that "an expert need

11

not actively conduct his or her own test to have a valid methodology"); *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 372 F. Supp. 2d 1104, 1119 (N.D. Ill. 2005) (same); *see also Clark v. Takata Corp.*, 192 F.3d 750, 758 (7th Cir. 1999) ("Either 'hands-on testing' or 'review of experimental, statistical, or other scientific data generated by others in the field' may suffice as a reasonable methodology upon which to base an opinion." (quoting *Cummins v. Lyle Indus.*, 93 F.3d 362, 396 (7th Cir. 1996)). Not only is the methodology employed by Dr. Robertson valid, his expert opinions will be helpful to the jury to rebut Plaintiffs' theory that Cook's IVC filters are prone to tilting and perforating.

**C. Dr. Robertson's Case-Specific Opinions Ruling Out Design And Manufacturing Defects As The Cause Of The Complications At Issue In *Hill* and *Gage* Are Based On A Sound And Reliable Methodology.**

Plaintiffs also challenge Dr. Robertson's case-specific opinions. Dkt. 5940, p. 3-8; Dkt. 5940, Ex. A, pp. C1-3 & D1-3. As an initial matter, Dr. Robertson does not attempt to offer medical causation opinions or "to blame the tilting and perforation of Ms. Hill's and Mr. Gage's filters on the method of deployment of the filters by their treating physicians and the plaintiffs' conditions (e.g., scoliosis) and treatments (e.g., surgeries)..." Dkt. 5940, pp. 3-4. Nor does Dr. Robertson offer any medical opinions about the extent of any injuries alleged in *Hill* and *Gage*. Dkt. 5940, Ex. A, pp. C1-3 & D1-3. Instead, Dr. Robertson simply rules out defects in manufacture and design as the cause of complications in *Hill* and *Gage*. *Id.* Dr. Robertson's opinion that Cook IVC filters are not defective and his opinion ruling out defect as a cause are based upon his extensive engineering knowledge and experience with IVC filters. To the extent Plaintiffs disagree or take issue with Dr. Robertson's assessment in *Gage* or *Hill*, Plaintiffs' arguments go to the weight of Dr. Robertson's opinions rather than their admissibility, and the determination of that weight is for the fact finder. *Manpower, Inc. v. Ins. Co. of Penn.*, 732 F.3d

796, 806 (7th Cir. 2013) ("The district court usurps the role of the jury, and therefore abuses its discretion, if it unduly scrutinizes the quality of the expert's data and conclusions rather than the reliability of the methodology the expert employed."); *Smith*, 215 F.3d at 719 (citing *Walker*, 208 F.3d at 589-90) ("The question of whether the expert is credible or whether his or her theories are correct given the circumstances is a factual one that is left for the jury to determine after opposing counsel has been provided the opportunity to cross-examine the expert regarding his conclusions and the facts on which they are based."); *see also Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 762 (7th Cir. 2010) (criticisms of the quality of an expert's opinions go to the appropriate weight that should be given, rather than its admissibility); *Phillips v. Raymond Corp.*, 364 F. Supp. 2d 730, 743 (N.D. Ill. 2005) (citing *Smith*, 215 F.3d at 719).

Plaintiffs criticize Dr. Robertson's case-specific opinions as speculative on the basis that he "performed no engineering tests or calculations in order to reach his case specific opinions." Dkt. 5940, pp. 3, 6. However, as Dr. Robertson explained during his deposition, he relied upon his extensive engineering knowledge and the methodology he employed in designing and developing his own IVC filter. Robertson Dep., 275:13-21; 279:13-280:1. Moreover, while Dr. Robertson does not perform his own independent calculations, he does provide analysis and critique about the calculations performed by Plaintiffs' engineering expert, Dr. McMeeking. Dkt. 5940, Ex. A, C2-3, D2-3. Notably, Dr. Robertson points out the fact that the IVC Filters at issue in *Hill* and *Gage* have not fractured despite tilting and perforation, which are real-world data points directly contradicting the accuracy of Dr. McMeeking's calculations and opinions about the performance of Mr. Gage's and Ms. Hill's IVC filters. *Id.* In response to Dr. McMeeking's calculations, Dr. Robertson estimates Ms. Hill's IVC filter has survived over 15 million cycles post-tilt and post-perforation without experiencing fracture. *Id.* Likewise, Dr.

13

Robertson estimates that Mr. Gage's IVC filter has survived over 30 million respiratory cycles post-tilt and post perforation without experiencing fracture. *Id.*

Plaintiffs also take issue with Dr. Robertson's opinions about whether and when Ms. Hill's IVC filter became tilted. However, Plaintiffs simply "cherry pick" sound bites to make Dr. Robertson's nuanced opinions seem "contradictory," "circular," or "flawed." Dkt. 5940, pp. 3-8. To be clear, Dr. Robertson's opinion is neither contradictory, circular, nor flawed as Plaintiffs contend. Dr. Robertson clearly states in his expert report and in his deposition that while Ms. Hill's IVC appears to be tilted upon deployment and her medical records regard it that way, the term "tilted" is not accurate from an engineering perspective because it is impossible to obtain centrality of a conical filter when it is deployed into a curved vessel (i.e. her inferior vena cava). Dkt. 5950, Ex. A, pp. C1-3; Robertson Dep., 260:4-261:7; 261:19-262:5; 262:10-22; 265:5-10; 265:24-271:16. Therefore, it is more accurate to describe Ms. Hill's anatomy (not the position of the filter) as curved or tilted. *Id.* Dr. Robertson goes on to offer the engineering opinion that Ms. Hill's surgery to straighten her spine most likely increased the stress in some areas of her IVC filters and decreased the stress in other areas. Dkt. 5940, Ex. A, p. D-2; Robertson Dep., 275:6-276:11; 324:1-325:4. Although Dr. Robertson does not quantify the change in stresses, his opinion that a change in stresses did in fact occur is based on his engineering knowledge and experience with IVC filters. *Id.*; *see Kumho Tire Co., Ltd*, 526 U.S. at 156 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.").

In short, Dr. Robertson provides a narrative summary of the respective medical records for Ms. Hill and Mr. Gage, relies on the medical opinions of Cook's medical experts (Dr. Anthony Venbrux in *Hill* and Dr. Antonios Gasparis in *Gage*), and based on their medical

14

opinions and Dr. Robertson's independent engineering analysis and experience, he concludes there were no design or manufacturing defects that caused the Cook IVC filters at issue to malposition, tilt, and perforate in *Hill* and *Gage* – complications which are well-known risks for all IVC filters regardless of manufacturer. Dkt. 5940, Ex. A, pp. C1-3 & D1-3; Robertson Dep., 280:2-281:2, 257:4-22, 259:4-260:3. The methodology that Dr. Robertson employs is valid and reliable.

### III.  CONCLUSION

For the reasons set forth above, the Court should deny Plaintiffs' motion to exclude or limit the trial testimony of Cook expert Scott Robertson, Ph.D.

Respectfully submitted,

Dated: September 25, 2017

/s/ *Andrea Pierson*
Andrea Roberts Pierson (# 18435-49)
John T. Schlafer (# 28771-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
E-Mail: andrea.pierson@faegrebd.com
E-Mail: john.schlafer@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

## CERTIFICATE OF SERVICE

I hereby certify that on September 25, 2017, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

/s/ *Andrea Pierson*