IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

IN RE: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

_____

Case No. 1:14-ml-2570-RLY-TAB
MDL NO. 2570

This Document Relates to:
Tracy Lowicki and Ron Lowicki
1:17-cv-6071-RLY-TAB

_____

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR
PARTIAL JUDGMENT ON THE PLEADINGS [Docket No. 7469]**

## I.   INTRODUCTION

Plaintiff's counsel filed three cases in state court in Clark County, Nevada on behalf of

plaintiffs severely injured and/or killed by the Cook Celect Filter. In each case, Plaintiff named

the Cook Defendants as well as their local sales representative, Courtney Lung. These cases were

filed on December 15, 2015 (*Ellingson*), March 20, 2016 (*Gilbert*), and April 4, 2017 (*Lowicki*).

Defendants removed the *Gilbert* and *Lowicki* cases to Federal court on the basis that Courtney

Lung, who would otherwise destroy diversity jurisdiction, was fraudulently joined. Plaintiff's

counsel filed a motion for remand in the *Gilbert* case on August 23, 2016. 1:16-cv-06049, Dkt.

No. 12. Instead of burdening the Court and parties with the unnecessary time and expense of an

identical motion in the Lowicki case, Plaintiff believed it was more appropriate to allow the Court

to rule on *Gilbert* Motion for Remand as that would provide the parties with an answer to the

identical fraudulent joinder issues raised in the *Lowicki* case.  Pursuant to the Court's order

regarding Transferred Cases [Docket No. 7312], Plaintiffs and defendants filed a joint notice

1

[Docket No. 7370] on December 18, 2017, notifying the Court that the *Gilbert* motion for remand had been adequately briefed and was ready for determination by the Court.

Instead of waiting for the Court's order on the *Gilbert* matter, which is imminent, the Cook Defendants moved for a Judgement on the Pleadings as to Courtney Lung under Federal Rule of Civil Procedure 12(c). 1:14-ml-02570, Dkt. No. 7469. Defendants' Motion is really a motion for summary judgment under Rule 56.[1] Before considering the merits of case, as requested by Defendants, the Court must first determine if it has subject matter jurisdiction. Defendants' Motion should be denied because Defendants cannot carry their heavy burden of establishing that Courtney Lung was fraudulent joined, i.e. that there is no reasonable possibility that Courtney Lung could be held liable under Nevada Law. Therefore, this Court lacks subject matter jurisdiction over this matter and the case should be remanded.

## II.     FACTUAL HISTORY

Plaintiff is a resident of Nevada who underwent placement of a Cook Celect® Vena Cava filter on June 24, 2012 at University Medical Center in Las Vegas, Nevada. 1:17-cv-06071, Dkt. No. 1-1 ¶1 (hereinafter "Compl."). The device subsequently malfunctioned by migrating and perforating her vena cava. Compl. ¶ 1; Ex. 2 (a true and correct copy of Plaintiff's medical records). As a result, she suffered severe pain and required surgery to remove the defective device and repair her vena cava. (*Id*).

On April 24, 2017, Plaintiff filed suit in Clark County, Nevada against Defendants Cook Group Incorporated; Cook Medical, Incorporated; Medical Engineering and Development Institute, Inc.; MED Institute, Inc. and Cook MED Institute; Cook Medical Denmark International APS; William Cook Europe APS (collectively "Cook Defendants") and Courtney

---

[1] Defendants' Motion requests that the Court consider evidence outside of the pleadings.

Lung for strict products liability, negligence, fraudulent concealment, and deceptive trade practices (Nev. Rev. Stat. Ann. § 42.001).  Compl.

Courtney Lung is an individual who has been a resident of a Nevada and "selling" Cook Cook Celect® Vena Cava filter therein since at least 2007 for her employer Cook Medical Incorporated, now Cook Medical LLC (CML). 1:17-cv-06071, Dkt. No. 6 ¶¶ 3, 13 (hereinafter "Answer"). Ms. Lung's sales territory included all hospitals and physicians in Las Vegas, Nevada. Ex 1, Declaration of Troy A. Brenes ("Brenes Decl.") ¶ 2.

In a May 2011 presentation, Ms. Lung explains that of the overall IVC filter use in her territory, she captured or converted 85-90% of the market share to use of Cook Defendants' IVC filters. Ex. 3, p. 2 (a true and correct copy of a May 2011 PowerPoint Presentation authored by Courtney Lung and produced in discovery by Defendants.) She explains that these sales mostly involved the Celect and Tulip IVC filters. *Id.*

Plaintiffs allege and Ms. Lung's declaration does not dispute that she was the primary point of contact for educating Ms. Lowicki's prescribing physicians about the device's features, assisting them with understanding the proper use of the device, explaining its risks and benefits, answering their questions, and convincing them to either convert to using the device and/or to continue using the device." Compl. ¶ 3.  Indeed, Defendants admit her job included ensuring that Ms. Gilbert's physicians either did not stop using the Cook Celect® filter and/or converted to using the device. Answer ¶ 3.

Plaintiffs allege and Ms. Lung's declaration does not dispute that Ms. Lung accomplished these job duties "by making frequent in person sales calls to Ms. Lowicki's prescribing physicians to promote the device; providing sales brochures, favorable clinical data and other marketing materials to Ms. Lowicki's prescribing physicians; recruiting and/or attempting to

recruit Ms. Gilbert's treating physicians for educational and training opportunities that promoted the Cook Celect® Vena Cava Filter Set; and at times participating and/or observing Ms. Gilbert's prescribing physicians in placing the device." *Id.* Indeed, Ms. Lung notes that one of the ways she sought to protect her market share in her territory was by helping her doctors increase referrals and filter usage by setting up "Technology dinners" and "lunch and learns" for bariatrics, oncology, hospitalists and orthopods." Ex. 3, p. 29.

Plaintiff alleges Ms. Lung's conduct was wrongful in that she knew or should have known that at the time she promoted, educated and delivered or ordered the Cook Celect® filer implanted in Plaintiff that it had an unreasonably and unexpectedly high risk of fracture, migration, excessive tilting, and tendency to tear the vena cava once implanted in the human body, and that such failures exposed patients to, and in fact had caused numerous serious injuries, including death and cardiac complications. Compl. ¶¶ 20, 45-47. She further knew or should have known that these risks for the Celect® filter were substantially higher than other similar devices. *Id.*  Ms. Lung also knew or should have known that the device did not have the appropriate metal content and, as such, increased the risk of the device tearing her vena cava and causing death or other serious injury. *Id.* ¶¶ 20(c), 48. Despite awareness of these risks, Ms. Lung personally marketed the device to Plaintiff's health care providers and failed to reveal her knowledge of the risk posed by the product. *Id.* ¶¶ 20(d); 27; 40(d)(g)(h); 50. Representing that the Cook Celect® filter was safe of its intended use when in fact, she knew or should have known the product was not safe for its intended purpose. *Id.* ¶40 (h).  Ms. Lung also failed to provide adequate instructions, guidelines, and safety precautions to those persons to whom it was reasonably foreseeable would prescribe, use, and implant the Celect® filter. (*Id.* ¶ 40(f)).

Ms. Lung's own PowerPoint reveals that prior to Plaintiff being implanted with the device, Ms. Lung was aware of safety problems with the device. Ex. 3, p. 26. She specifically mentions a cluster of device failures in her territory, Las Vegas, involving "leg spreading, migration, and fracture. " Cook Defendants have described leg spreading as leading to penetration/perforation.

### III.   LEGAL ARGUMENT

#### a.   The Court Must First Determine Whether It Has Subject Matter Jurisdiction Before It May Consider Defendants' Motion to Dismiss.

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 USCS § 1447. Therefore, before a federal court considers the merits of a case, it must first satisfy itself of its jurisdiction over the subject matter of the matter. *Steel Co.* v. *Citizens for Better Environment,* 523 U.S. 83, 101-102 (1998). "For a court to pronounce upon [the merits] when it has no jurisdiction to do so," *Steel Co.* declared, "is . . . for a court to act ultra vires." 523 U.S. at 101-102. In *Suckow v. Medtronic, Inc*., a case on which Defendants rely, the court confirmed that it must first determine whether it has subject matter jurisdiction before considering defendant's motion to dismiss. 971 F. Supp. 2d 1042 (Dist. Nev. 2013)("As a threshold consideration, the Court must first determine its jurisdiction over this action. If the Court finds that Defendant Row was improperly joined, and that jurisdiction exists over the action, then disposition of Defendant Medtronic's Motion to Dismiss …may be proper."). Thus, unless and until the Court determines that it has subject matter jurisdiction over this matter, i.e. that Defendant Courtney Lung was fraudulently joined, the Court should not rule on Defendants' Motion to Dismiss, as such a ruling requires a consideration of the merits of the case.

**b.  The Court Lacks Subject Matter Jurisdiction as Defendants Cannot Establish Courtney Lung Was Fraudulently Joined.**

Defendants removed this matter based on the allegation of diversity jurisdiction. Removal based on diversity jurisdiction is not proper if diversity is lacking or if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought. 28 U.S.C. § 1441(b)(2). Plaintiffs served Ms. Lung on May 26, 2017. Ex. 1, ¶ 5; Ex. 4. As Plaintiffs and Ms. Lung are residents and citizens of Nevada, this Court lacks subject matter jurisdiction unless Defendants can carry the heavy burden of establishing that Ms. Lung was fraudulently joined, i.e. that there is no reasonable possibility that Ms. Lung could be held liable under Nevada law. Numerous cases addressing this exact issue have held that Nevada law is not settled as to whether a sales representative, like Ms. Lung, can be held liable under a strict product liability claim and, therefore, the ambiguity in controlling law means that Defendants cannot establish fraudulent joinder. *See e.g.*, *Zaite v. Long* (*In re Pradaxa Prods. Liab. Litig.*), 2013 U.S. Dist. LEXIS 147302 (S.D. Ill. Oct. 11, 2013); *Rundle v. Depuy Orthopaedics, Inc.*, No. 2:11-cv-00634-PMP-GWF, 2011 U.S. Dist. LEXIS 80514 (D. Nev. July 6, 2011); *Moore v. Medtronic, Inc.*, Case No. 2:05-CV-01329-KJD-PAL, 2006 U.S. Dist. LEXIS 44198 (D. Nev. June 26, 2006).[2]

i.   Legal Standard

A plaintiff may not sue a non-diverse "defendant solely for the purpose of defeating federal diversity jurisdiction." *Schwartz v. State Farm Mut. Auto. Ins. Co*., 174 F.3d 875, 878 (7th Cir.1999) (*citing Gottlieb v. Westin Hotel*, 990 F.2d 323, 327 (7th Cir. 1993)). "Such joinder is considered fraudulent, and is therefore disregarded, if the [diverse] defendant can show there

---

[2] *Zaite* was decided by Judge Herndon overseeing another Multidistrict Litigation, was decided under 7th Circuit law, and contained identical claims as raised herein.

exists no 'reasonable possibility that a state court would rule against the [non-diverse] defendant.'" *Schwartz*, 174 F.3d at 878 (*quoting Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir.1992)); *see also Morris v. Nuzzo*, 718 F.3d 660, 671 n. 5 (7th Cir.2013) ("We stick exclusively to our own 'any reasonable possibility' test in this opinion...."). A defendant "bear[s] a heavy burden to establish fraudulent joinder," and courts must "resolv[e] all issues of fact and law in favor of the plaintiff." *Poulos*, 959 F.2d at 73. The Seventh Circuit has suggested that this "burden is even more favorable to the plaintiff than the standard that applies to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 764 (7th Cir.2009).

Additionally, Defendants have not presented any authority for the proposition that the pleading standard adopted in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) should be applied in this matter. The fraudulent joinder analysis looks to whether the claim against the resident defendant is viable under "the settled rules of *the state*," *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2000), (emphasis added), and federal courts therefore look to the state's pleading standard in determining whether a claim against a resident defendant is viable, *see Edwea, Inc. v. Allstate Ins. Co.*, No. CIV.A. H-10-2970, 2010 U.S. Dist. LEXIS 129582, 2010 WL 5099607, at *5 (S.D. Tex. Dec. 8, 2010) (collecting cases). Nevada is a notice-pleading jurisdiction, that liberally construes pleadings to pleadings to place into issue matters which are fairly noticed to the adverse party. *Hay v. Hay*, 678 P.2d 672. A party need only set forth sufficient facts to establish the necessary elements of a claims for relief, so that the adverse party has adequate notice of the nature of the claim sought and relief sought. *Branda v.*

*Sanford*, 97 Nev. 643, 648, 637 P.2d 1223, 1227 (1981). Defendants have not provided any case law establishing that Nevada has adopted the *Twombly/Iqbal* pleading requirements.

ii.   Nevada Substantive Law Governs

Plaintiffs agree with Defendants that Plaintiffs' claims are governed by Nevada substantive law. Where neither party raises conflict of law issue in a diversity jurisdiction case, the court may presume that the claims are governed by the substantive law of the forum state. *See Zaite v. Long* (*In re Pradaxa Prods. Liab. Litig.*), 2013 U.S. Dist. LEXIS 147302 at *3 (S.D. Ill. Oct. 11, 2013)(citing *Employers Mut. Cas. Co. v. Skoutaris*, 453 F.3d 915, 923 (7th Cir. 2006)).

iii.   Defendants Cannot Establish Settled Nevada Law Prohibits Strict Products Liability Claims Against Courtney Lung**.**

The determination of whether Defendant Courtney Lung has been fraudulently joined as to the strict products liability claim depends on whether Nevada has settled law as to whether a sales representative potentially qualifies as a "seller" or distributor of a product within the meaning of Nevada's strict products liability law. Numerous district courts, including within the Seventh Circuit, have addressed this exact issue. With the exception of several opinions, which are distinguishable on the facts, all of these courts have ordered remand because "the question of whether a sales representative may be subject to [strict product liability] has not been definitively decided by Nevada Courts." *See Zaite v. Long* (*In re Pradaxa Prods. Liab. Litig.*), MDL No. 2385; 3:12-md-02385-DRH-SCW, 2013 U.S. Dist. LEXIS 147302 *5 (S.D. Ill. Oct. 11, 2013).

In *Moore v. Medtronic, Inc*., Case No. 2:05-CV-01329-KJD-PAL, 2006 U.S. Dist. LEXIS 44198 (D. Nev. June 26, 2006)**,** the plaintiff sued Medtronic, the manufacturer of a defective catheter device that was used in her surgery.  The plaintiff also sued Petroni, a Nevada resident, who worked for Medtronic as a "Therapy Consultant."  In preparation for the surgery, the surgeon contacted Petroni to request that a pump and catheter be ordered for the surgery.

The catheter was taken from the manufacturer's "trunk stock" which consisted of Medtronic devices that Petroni stored at his office or residence so that they could be readily available for a surgeon's use. Petroni, however, did not arrange the purchase order and invoice for the catheter at issue. That paperwork was handled by another independent contractor for Medtronic who was not named in the lawsuit. The defendants removed the action to federal court and plaintiff subsequently filed a motion to remand based on the lack of diversity between plaintiff and defendant Petroni. The defendants argued, however, that Petroni was fraudulently joined and that the motion to remand should be denied.

The opinion, by Judge Dawson, stated that "[u]nder the law of strict liability in [Nevada], responsibility for injuries caused by defective products is properly fixed wherever it will most effectively reduce the hazards to life and health inherent in defective products that reach the market. Although manufacturers are not insurers of their products, where injury is caused by a defective product, responsibility is placed upon the manufacturer and the distributor for the defective product rather than on the injured consumer." *Moore,* 2006 U.S. Dist. LEXIS 44198, at *2, quoting *Allison v. Merck & Co.,* 878 P.2d 948, 110 Nev. 762, 767-68 (1994). The court further noted that the Nevada Supreme Court has relied on the Restatement (Second) of Torts Section 402A in addressing strict product liability under Nevada law. *Id.* citing *Allison,* 878 P.2d at 953-58, 110 Nev. at 769-76 (addressing the application of comment k to section 402A); and *Ellery v. Stephens,* 760 P.2d 768, 771-72, 104 Nev. 413, 417-18 n. 3 (citing comment f to section 402A). Although these cases predated the publication of the Restatement (Third) of Torts, *Moore* recognized that the Nevada Supreme Court regularly relies on the restatement of torts in addressing strict product liability claims. *Id.*

*Moore* nevertheless stated that "there is a dearth of case law in Nevada state courts defining what a 'seller' is for purposes of strict products liability." 2006 U.S. Dist. LEXIS 44198, at *2. Although *Allison* held that the defendant county health district was not a seller of a vaccine product that it administered to a child, *Moore* noted that the Nevada Supreme Court provided no reasoning for its decision. 2006 U.S. Dist. LEXIS 44198, at *2 n. 3. *Moore* further noted that "there are obvious differences between a county health district and a sales representative for a manufacturer which would make *Allison's* holding inapplicable to the instant case." *Id. Moore* also stated that Nevada courts have not addressed whether a sales representative for a manufacturer can be considered a "seller" for purposes of liability under a strict product liability theory. The court noted that other jurisdictions are split on the issue. 2006 U.S. Dist. LEXIS 44198, at *2 n. 4, citing *Memphis Bank & Trust Co. v. Water Serv. Inc.,* 758 S.W.2d 525 (Tenn. 1998) (holding that a sales representative is not subject to strict products liability) versus *Bittler v. White & Co. Inc.,* 560 N.E.2d 979, 203 Ill. App. 3d 26, 148 Ill. Dec. 382 (1990) (finding that participatory connection with defective product was sufficient to subject the exclusive sales representative to strict product liability) and *Brumbaugh v. CEJJ, Inc.,* 547 N.Y.S.2d 699, 152 A.D.2d 69 (1989) (finding exclusive sales agent subject to strict product liability because he was a mandatory link in the distribution chain).

In granting plaintiff's motion for remand, *Moore* stated:

As explained previously, it is unclear as a matter of state law whether a sales representative like Petroni is or is not a "seller of products" under a theory of strict products liability.  This Court cannot (but more importantly will not) predict how the state courts would define a "seller" for purposes of strict liability given their silence so far on this issue. Moreover, if Petroni's position would be considered a "seller" for purposes of strict products liability, when viewing the evidence in the light most favorable to the Plaintiffs, one could find that Defendant Petroni was a sufficient link in the chain of distribution. What role, if any, Defendant Petroni played in procuring the product for Plaintiff's surgery should be determined by the trier of fact.

10

> . . . The Court is instructed to remand a case unless there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court. Defendants have not met their heavy burden concerning the alleged fraudulent joinder of Defendant Petroni. Because Plaintiff has a "colorable" state law claim against Defendant Petroni, this Court must grant Plaintiff's motion to remand.

*Moore,* 2006 U.S. Dist. LEXIS 44198, at *3.

In *Kite v. Zimmer US, Inc.,* No. 2:06-CV-0745-RCJ (RJJ), 2006 U.S. Dist. LEXIS 85420 (D.Nev. November 22, 2006), the plaintiff sued the manufacturer of an artificial hip device (Zimmer US) and its Nevada sales representative (Zimmer Frey Associates) relating to allegedly defective hip she was implanted with in April 2004.  Plaintiffs filed for removal arguing a lack of complete diversity.  *Id.* at *1.  Defendants responded that Zimmer Frey Associates ("Zimmer Frey") had been fraudulently joined. An officer of Zimmer Frey provided an affidavit that it did not facilitate the delivery of any devices in Las Vegas beyond a certain date that was long before the plaintiff's surgery.  *Id.* at *2, 6.

In denying the plaintiff's motion to remand, Judge Jones cited his earlier decision in *Baker v. Merck & Co. Inc.,* Case No. CV-S-05-0625, Order, 2005 U.S. Dist. LEXIS 44127 (D.Nev. September 12, 2005), in which he stated that "[i]f there is an 'absence of a sufficient causal nexus between' the plaintiff's claims and the alleged conduct of the defendant, the causes of action will fail and joinder will be improper." *Kite,* 2006 U.S. Dist. LEXIS 85420, at 2. The plaintiff in *Baker* alleged that defendants (drug sales representatives) supplied the drug Vioxx to the plaintiffs' physicians. The court found, however, that two of the plaintiffs received Vioxx from their physicians in California, an area not covered by the defendant sales representatives. Because no causal nexus existed, the court found no colorable claim against the defendant sales representatives as to the two plaintiffs.  Judge Jones held that evidence in *Kite* also showed "an

11

absence of casual nexus between plaintiffs' claims and the alleged conduct of Zimmer Frey"
because there was no evidence that Zimmer Frey had distributed or marketed the products to
plaintiff's health care providers. Therefore, Judge Jones held plaintiffs did not have a colorable
claim against the defendant and the motion to remand was denied.

 *Thompson v. Medtronic, Inc.,* No. 2:05-CV-01329-KJD-PAL, 2006 U.S. Dist. LEXIS
44198 (D.Nev. December 8, 2006), was also decided by Judge Jones.  In this case, the plaintiff's
physician recommended that he purchase an insulin pump and referred him to Medtronic/Mini-
Med's sales representative, Baxter, who sold plaintiff the insulin pump. The insulin pump
required the use of disposable tubing known as infusion sets that connected the pump to a needle
inserted into plaintiff's body. Baxter provided plaintiff with Mini-Med's 800 telephone number so
that he could order the infusion sets directly from the manufacturer or supplier. Baxter was on
disability leave during the time in which Mini-Med sold a new type of infusion set, called
"Quick-set," to plaintiff. Mini-Med stopped selling the Quick-set infusion set prior to Baxter's
return. The plaintiff later filed a bodily injury lawsuit against the manufacturer and Baxter in
state court based on alleged defects in the Quick-set infusion sets.

 The court in *Thompson* discussed the statement in *Moore v. Medtronic, Inc.* "that Nevada
case law does not specifically address whether a sales representative for a manufacturer may be a
'seller' for purposes of strict product liability." *Thompson,* 2006 U.S. Dist. LEXIS 44198, 2006
WL 3544937, at *2. The court, however, distinguished *Moore* on the grounds that there was not
a "sufficient causal nexus" between the plaintiff's claims and the alleged conduct of the sales
representative, Baxter. The court explained that Baxter was on disability during the entire period
that the Quick-set infusion sets were commercially available and, therefore "Baxter did not take

part in the design, manufacture, marketing, promotion, sale or distribution of the infusion sets."
2006 U.S. Dist. LEXIS 44198, at *3.

In *Rundle v. Depuy Orthopaedics, Inc.*, No. 2:11-cv-00634-PMP-GWF, 2011 U.S. Dist.
LEXIS 80514 (D. Nev. July 6, 2011), another Nevada district court addressed the issue of
whether Nevada law is settled as to whether a sales representative or distributor can be a "seller"
under Nevada law. *Rundle* involved three Nevada resident Plaintiffs who filed an action in the
Nevada District Court, Clark County alleging causes of action against Depuy Orthopedics, Inc.
("Depuy") and Precision Instruments, Inc. (Precision) for negligence, strict products liability,
breach of implied and express warranties, deceptive trade practice act violations, deceit, and
negligent misrepresentation relating to their implantation with an ASR Hip. Defendant Depuy
was a diverse defendant who designed and manufactured the product. *Id.* at *2. Defendant
Precision was a Nevada resident. *Id.* Plaintiffs alleged that Precision "sold" and delivered the
Depuy ASR Hip devices that were implanted in each of them. *Id.* at 36. Plaintiffs also alleged
that Precision was responsible for educating plaintiffs' surgeon regarding Depuy ASR Hip,
answering any questions the surgeon had about the device and convincing plaintiffs' surgeon to
purchase and use the device. *Id.* While Precision denied that it sold or ever possessed title to the
Depuy ASR Hip, it did not dispute that it delivered the prosthesis to the Plaintiffs surgeon either
by retrieving them from inventory maintained at the hospital or at Precision's facility, or by
ordering the prosthesis from Depuy. *Id.* at *36-37. "Nor [did] Precision refute Plaintiffs'
allegation that Precision's sales representatives provided education to Plaintiff's surgeon about
the Depuy ASR Hip devices and answered the physician's questions about the devices. *Id.*
Defendants removed the case to federal court arguing that Precision had been fraudulently
joined.

*Rundle* conducted an extensive analysis of the prior decisions in *Moore* and the opinions authored by Judge Jones. *Id.* at * 19-27.   *Rundle* also discussed numerous federal court decisions that were consistent with decision in *Moore* in that where the controlling state law is either unclear or arguably permits the imposition of strict liability on a manufacturer's sales representative, then a case must be remanded. *Id.* at * 27-35 (discussing *Cooper v. Zimmer Holdings, Inc.* 320 F. Supp. 2d 1154 (D.Kan. 2004); *Malkmus v. Depuy Orthopaedics Inc.* 2011 U.S. Dist. Lexis 63202 (E.D. Wis. June 13, 2011); *Spataro v. Depuy Orthopaedics, Inc. et al*, 2009 U.S. Dist. Lexis 15734 (D.N.M. 2009); *McCarty v. Johnson & Johnson, et al*., 2010 U.S. Dist. Lexis 64902 (E.D. Cal. 2010); *Hinds v. Zimmer, Inc.* 2009 U.S. Dist. Lexis 48565 (E.D. Cal. 2009).   *Rundle* ultimately ordered that the case be remanded as the sales representative defendant, Precision, had not been fraudulently joined. The court explained:

> The decisions in *Kite v. Zimmer, Inc.* and *Thompson v. Medtronic, Inc.* rest, in part, on the view that a manufacturer's sales representative is a not a "seller" within the meaning of Nevada's strict product liability law. *Moore v. Medtronic, Inc.,* however, holds that Nevada law on this issue is unsettled. *Moore* is consistent with the decisions from other districts in which the controlling state law is either unclear or arguably permits the imposition of strict liability on manufacturer's sales representatives. More importantly, *Moore* is consistent with the federal law of removal that any ambiguities in controlling state law should be resolved in plaintiff's favor and therefore in favor of remand. Because it is possible that the Nevada Supreme Court will hold that a manufacturer's exclusive sales representative is strictly liable for design defects based on the type of conduct alleged in this case, Precision Instruments has not been fraudulently joined so long as there is a causal nexus between its alleged conduct and Plaintiffs' injuries.

*Id.* at *35-36. The court further explained that unlike in *Kite* and *Thompson* the allegations suggested that Precision had direct involvement in promoting and facilitating the sale or use of the products such that there was an adequate causal nexus between its alleged conduct and plaintiff's injuries. *Id.* at * 37.

14

In *Zaite v. Long* (*In re Pradaxa Prods. Liab. Litig.*), 2013 U.S. Dist. LEXIS 147302 (S.D. Ill. Oct. 11, 2013), a Nevada plaintiff filed an action against Nevada resident Carla J. Long and diverse defendants Boehringer Ingelheim International GmbH ("BII") and Boehringer Ingelheim Pharmaceuticals, Inc. ("BIPI") in Nevada State Court relating to their marketing and distribution of the drug Pradaxa.  She alleged that Ms. Long was the sales representative who marketed and distributed Pradaxa for BIPI and BII in Clark County Nevada (the same county where decent and her health care providers resided). She further alleged that Ms. Long "knew that there was increased bleeding risk associated with Pradaxa and failed to adequately warn decedent's physician, to who she personally marketed Pradaxa, about those risks. Plaintiff asserted claims sounding strict liability, negligence, breach of warranty, and fraud and misrepresentation. *Zaite*, 2013 U.S. Dist. LEXIS 147302 * 4.

Defendants removed the case to federal court arguing that Ms. Long was fraudulently joined. Defendants argued that the settled law of Nevada held that a sales representative could not be held liable under strict products liability claims. The case was then transferred to the multidistrict litigation proceedings.  Plaintiff filed a motion for remand based on a lack of diversity, and Judge Herndon remanded the case to state court.  He explained, "Ms. Zaite has shown that the question of whether a sales representative may be subject to liability has not been definitively decided by Nevada Courts." *Id.* at * 5.  Judge Herndon further held that the allegations that Ms. Lung personally marketed the drug to the prescribing physicians and failed to reveal her knowledge of the increased risk posed by the product were sufficient to establish a causal nexus between her claims and Ms. Lon g's allegedly wrongful conduct. *Id.* at * 6.

Thus, contrary to the Claims by Defendants in this case, Nevada law is not settled as to whether or not a sales representative can be held liable under a strict liability claim. The

outcomes in *Moore, Rundle* and *Zaite* are far more consistent with federal law of removal that any ambiguity in controlling state law should be resolved in plaintiff's favor and therefore in favor of remand. As *Moore* explained [t]his Court cannot (but more importantly will not) predict how the state courts would define a 'seller' for purposes of strict liability given their silence so far on this issue." *Moore,* 2006 U.S. Dist. LEXIS 44198, at *3. "The very fact that the courts may differ in their resolutions… shows there is a possibility of recovery." *Hartley v. CSX Transp., Inc.,* 187 F.3d 422, 425 (4th Cir. 1999)(reversing district court's order refusing to remand case based on finding of fraudulent joinder because "[n]o South Carolina case has squarely held" that the plaintiff's claims in that case were foreclosed.)  Therefore, so long as there is a causal nexus between Plaintiff's claims and Ms. Lungs conduct, this case should be remanded.

As in *Moore, Rundle* and *Zaite* and contrary to the cases cited by Defendants*,* Ms. Lung had direct involvement in promoting and facilitating the sale or use of the Cook Celect® filter in Plaintiff such that there is an adequate causal nexus between Ms. Lung's alleged conduct and plaintiff's injuries.

Courtney Lung has been a resident of a Nevada and "selling" Cook Cook Celect® Vena Cava filter therein since at least 2007 for her employer Cook Medical Incorporated, now Cook Medical LLC (CML). 1:17-cv-06071, Dkt. No. 6 ¶¶ 3, 13 (hereinafter "Defs.' Answer"). Ms. Lung's sales territory included all hospitals and physicians in Las Vegas, Nevada, including Plaintiff's prescribing physicians. Ex 1, Declaration of Troy A. Brenes ("Brenes Decl.") ¶ 2.   In a May 2011 presentation, Ms. Lung explains that of the overall IVC filter use in her territory, she captured or converted 85-90% of the market share to use of Cook Defendants' IVC filters. Ex. 3, p. 2. She explains that these sales mostly involved the Celect and Tulip IVC filters. *Id.*

Despite undeniable evidence that Ms. Lung was the territory representative assigned to sell the Cook Celect Filter in Las Vegas, Nevada since 2007, Ms. Lung signed a declaration starting that she never "sold" the device to anyone. 1:17-cv-06071, Dkt. No. 2 ¶ 5. It is unclear why Ms. Lung and defense counsel have intentionally sought to deceive and mislead the Court. In any case, the admitted facts and evidence establish that Ms. Lung did in fact sell Cook Celect Filter to all accounts in Las Vegas.

Plaintiffs allege and Ms. Lung's declaration does not dispute that she was the primary point of contact for educating Ms. Lowicki's prescribing physicians about the device's features, assisting them with understanding the proper use of the device, explaining its risks and benefits, answering their questions, and convincing them to either convert to using the device and/or to continue using the device." Compl. ¶ 3.  Indeed, Defendants admit her job included ensuring that Ms. Gilbert's physicians either did not stop using the Cook Celect® filter and/or converted to using the device. Answer ¶ 3.

Plaintiffs allege and Ms. Lung's declaration does not dispute that Ms. Lung accomplished these job duties "by making frequent in person sales calls to Ms. Lowicki's prescribing physicians to promote the device; providing sales brochures, favorable clinical data and other marketing materials to Ms. Lowicki's prescribing physicians; recruiting and/or attempting to recruit Ms. Gilbert's treating physicians for educational and training opportunities that promoted the Cook Celect® Vena Cava Filter Set; and at times participating and/or observing Ms. Gilbert's prescribing physicians in placing the device." *Id.* Indeed, Ms. Lung notes that one of the ways she sought to protect her market share in her territory was by helping her doctors increase referrals and filter usage by setting up "Technology dinners" and "lunch and learns" for bariatrics, oncology, hospitalists and orthopods." Ex. 3, p. 29.

Plaintiffs allege Ms Lung's conduct was wrongful in that she knew or should have known that at the time she promoted, educated and delivered or ordered the Cook Celect® filer implanted in Plaintiff that it had an unreasonably and unexpectedly high risk of fracture, migration, excessive tilting, and tendency to tear the vena cava once implanted in the human body, and that such failures exposed patients to, and in fact had caused numerous serious injuries, including death and cardiac complications. Compl. ¶¶ 20, 45-47. She further knew or should have known that these risks for the Celect® filter were substantially higher than other similar devices. *Id.*  Ms. Lung also knew or should have known that the device did not have the appropriate metal content and, as such, increased the risk of the device tearing her vena cava and causing death or other serious injury. *Id.* ¶¶ 20(c), 48. Despite awareness of these risks, Ms. Lung personally marketed the device to Plaintiff's health care providers and failed to reveal her knowledge of the risk posed by the product. *Id.* ¶¶ 20(d); 27; 40(d)(g)(h); 50. Representing that the Cook Celect® filter was safe of its intended use when in fact, she knew or should have known the product was not safe for its intended purpose. *Id.* ¶40 (h).  Ms. Lung also failed to provide adequate instructions, guidelines, and safety precautions to those persons to whom it was reasonably foreseeable would prescribe, use, and implant the Celect® filter. (*Id.* ¶ 40(f)).

Plaintiffs have not bee afforded the right to obtain discovery from or about Ms. Lung. However, Plaintiffs have discovered one PowerPoint authored by Ms. Lung that was produced by a different witness. This PowerPoint reveals that prior to Plaintiff being implanted with the device, Ms. Lung was aware of safety problems with the device. Ex. 3, p. 26. She specifically mentions a cluster of device failures in her territory, Las Vegas, involving "leg spreading, migration, and fracture. "

These allegations are sufficient to put Ms. Lung on notice of the claims and relief being sought against her, as well as to establish that there is casual nexus between her conduct and the alleged harm to Plaintiffs.

iv. <u>Defendants Cannot Establish Settled Nevada Law Prohibits A Negligence Claim Against Courtney Lung.</u>

Multiple district courts have analyzed the issue of whether sales representatives may be liable for negligence under Nevada law. The majority of these courts have held that Nevada law on the issue may recognize a duty of care running from the sales representative to the patient or his provider. *See, Russing et al. v. Wyeth et al.,* CV-S-04-1597-PMP(RJJ), attached hereto as Ex. 5; *Van Brocklin v. Wyeth*, CV-N-04-0675-HDM (RDM), attached hereto as Ex. 6; *But see Kite v. Zimmer US, Inc.,* 2006 U.S. Dist. LEXIS 85420. Because it is not obvious that Nevada would not recognize a duty running from pharmaceutical sales representatives to patients like Plaintiff or their health care providers, Defendants cannot carry their burden of establishing fraudulent joinder.

In *Russing*, Plaintiffs filed suit in Nevada state court against a pharmaceutical manufacturer and its distributor/sales representative for negligence, strict liability, breach of implied and express warranties, deceit by concealment, and negligent misrepresentation. Plaintiffs alleged a drug caused them to develop breast cancer. Ex. 5, pp. 2-3.  Defendants removed the case under diversity citizenship. *Id.* p. 3. Plaintiffs moved for remand based on a lack of diversity jurisdiction. *Id.*  Defendants opposed the motion by arguing that the sales representative defendants had been fraudulently joined in that sales representatives owe no duty to patients to warn of or disclose a drug's risks under settled Nevada law. *Id.* Thus, the

negligence and deceit by concealment claims were allegedly precluded. The court disagreed and remanded the case to state court. *Id.*

*Russing* explained "[n]evada courts have not addressed the issue of whether pharmaceutical sales representatives owe a duty of care to the physicians and patients with whom they deal." Ex. 5, p. 6. "Nevada does, however, recognize that an agent may be individually liable for his negligence, regardless of whether or not he or she was acting for the sole benefit of the principal." *Id.* at pp. 6-7 (citing *Semenza v. Caughlin Crafted Homes*, 901 P.2d 684, 689 (Nev. 1995). "Because it is not obvious that Nevada would not recognize a duty running from pharmaceutical sales representatives to patients like Plaintiff…, Defendants have not met their burden of demonstrating the joinder of the detailer defendants was fraudulent." *Id.* at p. 7. Accordingly, Defendants, like the defendants in *Russing*, cannot meet their burden of showing that Ms. Lung was fraudulently joined, because Defendants cannot establish that there is no possibility that a Nevada state court would hold Ms. Lung liable for negligence in this case. The same conclusion was reached in *Vanbrocklin.*

In *Vanbrocklin*, Plaintiffs sued the drug manufacturer and the sales representatives under multiple theories, including negligence, deceit by concealment and negligent misrepresentation in Nevada state district court. Ex. 6, p. 1. Defendants then removed the case to federal court arguing the sales representatives had been fraudulently joined. *Id.* p. 2. As with the *Russing,* the court found that "Plaintiffs have plead facts sufficient to establish 'colorable' claims against the Defendants and ordered the case be remanded to state court." *Id.* p. 4.

Thus, Defendants cannot establish their burden of proving that Nevada will not recognize a duty of care from sales representatives running to the patient or his or her health care providers. Moreover, as discussed above, Ms. Lungs failure to disclose the severity and increased nature of

risks associated with the Cook Celect® filter or provide adequate instructions or safety precautions resulted in Plaintiff being implanted with a defective product that caused her serious harm.

v. <u>Defendants Cannot Establish Settled Nevada Law Prohibits Fraudulent Concealment Claims Against Courtney Lung.</u>

Contrary to Defendants' claims, Nevada Sales representatives may be liable for negligent misrepresentation or fraudulent concealment under Nevada law.  In Nevada, "an agent who fraudulently makes representations is liable in tort to the injured person although the fraud occurs in a transaction on behalf of the principal." *Nev-Tex Oil and Gas v. Precision Rolled Prod.*, 782 P.2d 1311 (Nev. 1989)(citing *Carral v. Lux,* 420 P.2d 564, 576 (1996)).  In *Nev-Tex Oil*, the Nevada Supreme Court found a corporation's agent personally liable for fraud, even though the fraud occurred in a transaction on behalf of the corporation. *Id.*  The Court held that the agent's own fraudulent actions subjected him to liability "regardless of whether the corporate veil was correctly pierced." *Id.* "An officer actively participating in the fraud cannot escape personal liability on the ground that the officer was acting for the corporation. Similarly, it is immaterial that the officer received no benefits from the transaction. The corporation may also be liable, but the individual is not thereby relieved of his or her own responsibility." *Russing et al. v. Wyeth et al.,* CV-S-04-1597-PMP(RJJ) (citing 3 Fletcher Cyclopedia of Private Corp. § 1143). "Furthermore, the rule that an agent may be individually liable for the torts he or she commits in the course of employment is not limited to fraud based claims. *Id.* at p. 6. (citing *Semenza v. Caughlin Crafted Homes*, 901 P.2d 684, 689 (Nev. 1995)). Thus, multiple district courts have granted remand after finding that sales representatives may be individually liable for misrepresentation and concealment claims. *See, Id.*; *Hellman et al. v. Wyeth et al.*, CV-S-04-1614-RLH (LRL), attached hereto as Ex. 7.

21

vi.   <u>Defendants Cannot Establish Settled Nevada Law Prohibits Breach of Warranty Claims Against Courtney Lung.</u>

As found in *Russing*, *Van Brocklin* and *Hellman*, Nevada law may allow a claim for breach of warranties against a sales representative defendant. See, Exs. 1-3. As discussed extensively under the strict liability discussion above, Nevada law is not settled on whether a sales representative may be considered a "seller." As *Moore* explained [t]his Court cannot (but more importantly will not) predict how the state courts would define a 'seller'… given their silence so far on this issue." *Moore,* 2006 U.S. Dist. LEXIS 44198, at *3.

vii.   <u>Defendants Cannot Establish Settled Nevada Law Prohibits Deceptive Trade Practice Claims Against Courtney Lung.</u>

Nevada's Deceptive Trade Practices Act provides a private cause of action for individuals harmed by "deceptive trade practices." *See,* Nev. Rev. Stat. Ann. § 42.00l. "A person engages in a 'deceptive trade practice' when in the course of his or her business or occupation he or she knowingly ... fails to disclose a material fact in connection with the sale or lease of goods or services."). Nev. Rev. Stat. Ann. § 598.0923. The Deceptive Trade Practices Statute allows anyone directly harmed by the deceptive trade practice to recover damages. *See, Southern Serv. Corp. v. Excel Bldg. Servs.,* 617 F. Supp. 2d 1097 (D.Nev. 2007)(allowing competitor to sue under consumer fraud statute). The majority of courts have recognized that a fraud against a physician is a fraud against a plaintiff because the physician acts as the agent of the plaintiff for purposes of reliance on a drug manufacturers representations. *See, e.g. Crocker v. Winthrop Labs,* 514 S.W. 2d 429 (Tex. 1974); *Wechsler v. Hoffman-La Roche, Inc.* 198 Misc. 540 (Sup. Ct. 1950); *Toole v. Richardson-Merrill Inc.,* 251 Cal. App. 2d 689 (Cal. App. 1967);*Albertson v. Richardson-Merrell, Inc.,* 441 So. 2d 1146, 1150 (Fla. Dist. Ct. App. 1983). For the same reasons that Defendant Ms. Lung is

liable for strict liability, she is also liable for failing to disclose material facts in connection
with the sale of the Cook Celect® filter.

> viii.  No Authority Supports Defendants' Contention that Not Challenging
> Removal In Each Individual Case that is Removed is Dispositive as to
> Whether there Was Fraudulent Joinder.

Defendants rely on the *Sucklow v. Medtronic, Inc.,* 971 F. Supp.2d 1042, case to claim that
not opposing removal at the time of removal in each individual case somehow creates a
presumption that the Court has jurisdiction. 1:14-ml-02570, Dkt. No. 7469 p. 17. However, neither
the *Sucklow* case or any other case support this proposition. As described under the legal standard
section above, the presumption is against fraudulent joinder and Defendants must meet a heavy
burden to establish fraudulent joinder occurred. In the *Sucklow* case, which is not even a decision
by a court in the Seventh Circuit, it was the complete absence by the Plaintiff to challenge any
statements in the declaration or to make any jurisdictional arguments in opposition to the motion
dismiss that caused the court to say the failure to ever address subject matter jurisdiction could
provide some support for a finding that the defendant had overcome the presumption against
removal. *Sucklow*, 971 F. Supp.2d at 1048. Even then the court just indicated this complete failure
to address fraudulent joinder even in opposition to the motion to dismiss, just created some support
for Defendants' burden but never suggested it was remotely dispositive. *Id.*

Unlike in *Sucklow*, Plaintiffs have provided evidence challenging Defendant's declaration
that she never "sold" the device and have addressed the fraudulent joinder argument in their
opposition to the motion for judgment on the pleading. *Sucklow* is further distinguishable in that
this matter is pending in a multidistrict litigation. In such circumstances, it makes sense to conserve
the resources of the Court and parties by addressing the identical issues in one case and then
applying the ruling to other similar cases. Plaintiff's counsel has attempted to do this by filing a

motion for remand in the *Gilbert* case (1:16-cv-0649, Dkt. No. 12). Plaintiffs have made Defendants well aware that they opposed Defendants claims of fraudulent joinder in this case but believed it made sense to wait and see what the court would rule in the *Gilbert* case, which raised identical issues as in *Lowicki*. Thus, the court should not apply any presumption in favor of Defendants because Plaintiffs did not immediately challenge subject matter jurisdiction in their individual case.

## IV.    CONCLUSION

Based on the foregoing, the pleadings in this matter and the attached exhibits, Plaintiff respectfully requests that the court deny Defendants' Motion for Judgment on the Pleadings and remand this case to state Court.

Dated: January 26, 2018                              Respectfully Submitted,

                                                       ____/s/ Troy A. Brenes_____
                                                       Troy A. Brenes (CA Bar No. 249776)
                                                       BRENES LAW GROUP, P.C.
                                                       27141 Aliso Creek Rd., Suite 270
                                                       Aliso Viejo, CA 92656
                                                       Telephone:     (949)397-9360
                                                       Facsimile:     (949)607-4192
                                                       tbrenes@breneslawgroup.com

                                                       Peter C. Wetherall(NV Bar No. 4414)
                                                       Wetherall Group, Ltd.
                                                       9345 West Sunset Road, Suite 100
                                                       Las Vegas, NV 89148
                                                       Telephone:     (702)-838-8500
                                                       Facsimile:     (702)-837-5081

                                                       *Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on January 26, 2018, a copy of the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS** was filed electronically. Parties may access this filing through the Court's electronic records system.


/s/ Troy A. Brenes_____
Troy A. Brenes