UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC. IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS   LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB MDL No. 2570 |

This Document Relates to Plaintiff
Ashley Gilbert
Civil Case No. 1:16-cv-6049-RLY-TAB

**THE COOK DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS COURTNEY LUNG**

The Cook Defendants urge the Court to grant their motion to dismiss all claims against Courtney Lung in this action.  The Court lacks personal jurisdiction over Ms. Lung, and Plaintiff has not demonstrated good cause for additional time to effect service of process.  Alternatively, Cook respectfully requests that the Court dismiss Ms. Lung from the case for all the reasons articulated in the Cook Defendants' Notice of Removal (Dkt. No. 1) and unanswered Opposition to Plaintiff's Motion to Remand (Dkt. No. 16).

**ARGUMENT**

**I. The personal jurisdiction inquiry is straightforward, and the Court should address it before subject matter jurisdiction under *Ruhrgas*.[1]**

Plaintiff's counsel's efforts to muddy the waters on this issue by claiming all defendants waived service on April 14, 2016, fail to overcome the Court's lack of personal jurisdiction over

---

[1] *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588, 119 S. Ct. 1563, 1572, 143 L. Ed. 2d 760 (1999) ("Where, as here, however, a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction.").

1

US.116256302.04

Ms. Lung. Contrary to Plaintiff's assertion, the parties never agreed that Cook would waive service on all defendants in exchange for Mr. Brenes' agreeing to transfer his Cook IVC Filter cases before a single Nevada state court judge. Plainly, no such agreement occurred because Mr. Brenes would not agree to, and in fact used a peremptory challenge to escape that Nevada state court judge. Further, Plaintiff subsequently served three defendants via Corporation Service Company®, acts that are inconsistent with such an agreement; such an agreement three months earlier would have rendered such service superfluous.

### A. Mr. Brenes took actions inconsistent with the existence of an agreement to waive service on all defendants, and those actions are dispositive on the issue.

Plaintiff errs in claiming that "Ms. Lung waived the right to challenge personal jurisdiction by expressly agreeing to waive service[.]" (Dkt. No. 36) ("Pl. Opp."), pp. 1-2. Most prominently, Plaintiff offers no written or electronic evidence of any such waiver. Cook certainly agrees that counsel had discussions in early April 2016 regarding two proposals, including a proposal for a service waiver. *See* Brenes Decl. at ¶ 5; Pl. Opp. at Ex. 3. As Mr. Brenes explained, the proposals were:

> (1) That the defendants waive and Mr. King accept service on behalf of all defendants in exchange for Plaintiff's counsel's agreement not to oppose Cook's request to transfer this and future cases in Clark County, Nevada to the court in which *Ellingson*[2] had been pending; and
> (2) That the defendants would not seek removal of Mr. Brenes' Nevada state court cases on fraudulent joinder grounds in exchange for Mr. Brenes not naming Ms. Lung in future lawsuits.

*See id*. Mr. Brenes voiced no objection to these proposals, but informed Mr. King he needed to check with his local counsel before giving Mr. King a final response. Pl. Opp., at Ex. 3.

---

[2] On December 15, 2015, Mr. Brenes filed *Marie Ellingson v. Courtney Lung, et al.* in the Eighth Judicial District Court of Clark County, Nevada. The case was initially assigned to Department XIX before Judge Kephart. See Affidavit of Douglas B. King in Support of the Cook Defendants' Reply In Support of Motion to Dismiss Courtney Lung ("King Aff."), ¶ 3.

2

Despite Mr. King's and Mr. Brenes' disparate accounts of their mid-April phone call, Plaintiff's counsel's undisputed actions afterward leave no doubt that the parties never reached any agreement as to waiver. *See* King Aff., attached hereto. First, on May 10, 2016, Plaintiff's counsel moved in his earlier-filed case (*Ellingson*) to strike the very judge to whom Mr. Brenes' cases were to be transferred in exchange for the proposed waiver he now seeks to retroactively create. In other words, Mr. Brenes unilaterally destroyed the consideration Cook had proposed—the assignment of cases to a specific judge—for the very service waiver that Plaintiff now seeks to enforce.

Second, on June 27, 2016, Plaintiff's counsel formally served three of the Cook defendants (but notably not Courtney Lung) by Corporation Service Company®—three entities Mr. Brenes now claims had *already waived service* in April 2016 under the same supposed agreement that Plaintiff argues subjects Ms. Lung to the Court's jurisdiction here. *See* King Aff., at ¶¶ 14-16, Exs. 3-5.

Plaintiff's Opposition ignores both these two facts, and instead relies on Mr. Brenes' recollection that "[o]n April 14, 2016, Defense counsel Douglas King agreed to waive service on behalf of all defendants in this matter in exchange for Plaintiff agreeing not to oppose transfer of all cases then pending in Clark County Nevada to one judge." Brenes Decl., at ¶ 4. Mr. Brenes' undocumented recollection that Cook entered into such an agreement is insufficient to demonstrate Ms. Lung's waiver of service, particularly given Mr. Brenes' strike of the judge to whom all of his Clark County cases were to be transferred, and his later inconsistent service of other defendants supposedly covered by the same waiver. Mr. Brenes' bald assertion is insufficient to demonstrate Ms. Lung's waiver of service of process, and does not justify

3

affording Plaintiff additional time to serve Ms. Lung with process nearly two years after filing the Complaint.  The Court should dismiss Ms. Lung.

### B. Cook notified Plaintiff in nearly every filing that Ms. Lung had not been served with process.

Plaintiff asserts that "Ms. Lung waived the right to challenge personal jurisdiction by . . . failing to challenge personal jurisdiction with a reasonable time."  Pl. Opp., p. 2 (citing Fed. R. Civ. Pro. 12(h)(1)). Nothing in the Federal Rules of Civil Procedure provides for a party's waiver of personal jurisdiction and sufficiency of process defenses *before that party responds to the complaint or takes any action consistent with the court's jurisdiction*. As Cook explained in its moving papers, "[c]ourts . . . have long held that a defendant's removal of an action to federal court does not waive the defendant's objection to the sufficiency of service of process." *Graves v. Republic Nat'l Distrib. Co.*, 42 F. Supp. 3d 121, 123 (D.D.C. 2014). The Seventh Circuit made clear in *Silva v. City of Madison* that the mere act of removal does not "abrogate the necessity for something as fundamental as service of process." 69 F.3d 1368, 1376 (7th Cir. 1995).  Ms. Lung has not waived any defense in this action.  Further, Plaintiff's argument that the only parties properly subject to the Court's jurisdiction filed the present motion has no bearing on the Court's ability to dismiss Ms. Lung; the Court has the inherent power to do so on its own for lack of personal jurisdiction or fraudulent joinder. *See, respectively*, *Wine & Canvas Dev., LLC v. Roberts*, No. 1:12-CV-1752-JMS-TAB, 2013 WL 1099895, at *1 (S.D. Ind. Mar. 15, 2013) ("The Court may *sua sponte* raise an issue regarding its lack of personal jurisdiction over non-moving defendants.")(collecting cases); and Fed. R. Civ. Pro. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.").

Furthermore, the issue of the lack of service on Ms. Lung has been repeatedly raised in filings throughout this litigation.  When the Cook Defendants removed this case, they stated in

4

their Notice of Removal that Plaintiff had not served Ms. Lung with a summons and the complaint. Dkt. No. 1, ¶ 2. On August 3, 2016, the Cook Defendants filed their Answer, stating that Courtney Lung had not yet been served. Dkt. No. 5, p. 2 fn. 1. On August 15, 2016, the Cook Defendants filed their Statement Concerning Removal as ordered by the Nevada District Court, again stating that Ms. Lung had not been served with summonses and complaints. Dkt. No. 10, ¶ 2. On August 16, 2016, the Cook Defendants moved to stay the Nevada federal court action, and stated that Plaintiff had not served Courtney Lung with a summons and complaint. Dkt No. 11, p. 2 fn. 1. On August 23, 2016, Plaintiff moved to remand the case. Dkt. No. 12. Plaintiff's Motion to Remand is silent on the alleged waiver of service by all defendants in April 2016, and does not challenge the timeliness of Cook's July 27, 2016 removal. *See id., passim.*

On August 30, 2016, the parties jointly filed a Joint Status Report, in which Cook ***and Plaintiff*** reported to the federal judge that only defendants Cook Group Incorporated, Cook Medical Incorporated, and Medical Engineering and Development Institute, Inc. were served with a summons and complaint in this matter. Dkt. No. 14. On September 9, 2016, the Cook Defendants filed their Response in Opposition to Plaintiff's Motion to Remand, reciting for a fifth time that Ms. Lung had not been served with a summons and the complaint. Dkt. No. 16, p. 2. In that opposition, the Cook Defendants clarified that "[a]s Ms. Lung has not yet been properly served with a summons and complaint, she is under no obligation to file a responsive pleading." *Id.*, p. 3. In closing their opposition to remand, the Cook Defendants submitted "[t]his Court has diversity jurisdiction, and if Ms. Lung were ever served with the Complaint, the claims against her would be dismissed in her favor." *Id.*, pp. 14-15. Plaintiff filed no reply, and instead "notif[ied] the Court that Plaintiff's motion for remand had been adequately briefed and was ready for determination by the Court." *See* Pl. Opp., p. 1 (citing Joint Notice Identifying Pending

5

Motions, MDL Dkt. No. 7370).  In sum, the issue of Plaintiff's lack of service on Ms. Lung has been preserved and pointed out to Plaintiff at every stage of this litigation.

Faced with the undisputed lack of service of process on Ms. Lung, and Plaintiff's counsel's decision not to move to remand or otherwise respond to Cook's fraudulent joinder arguments in a second, virtually identical case pending before this Court (*Lowicki*), the Cook Defendants moved to dismiss Ms. Lung from this action on appropriate legal grounds.  Plaintiff's only substantive response is to rely on an undocumented agreement that is wholly inconsistent with Plaintiff's attorney's subsequent actions in at least two ways.   This response is insufficient to demonstrate service on Ms. Lung, and Cook urges the Court to dismiss Ms. Lung on personal jurisdiction grounds.

## II. Mr. Brenes' selective naming of Ms. Lung in cases filed on behalf of Las Vegas plaintiffs only underscores the impropriety of her joinder here.

The second agreement Mr. Brenes raises in Plaintiff's response—in which he stops naming Ms. Lung as a defendant in exchange for Cook agreeing not to remove his cases on fraudulent joinder grounds—is instructive on the fraudulent joinder issue, should the Court choose to reach it.

Although Cook believes that its arguments in Opposition to Plaintiff's Motion to Remand are sufficient by themselves to defeat remand,[3] the character of this additional agreement underscores the impropriety of Ms. Lung's joinder here.  Cook respectfully submits that a timeline of Mr. Brenes' four actions filed on behalf of Las Vegas plaintiffs is useful on this point:

   i. On March 11, 2013, Mr. Brenes invoked the diversity jurisdiction of Nevada federal court when he filed a complaint on behalf of a Las Vegas, Nevada plaintiff, Tammy

---

[3] Cook also incorporates those argument here to the extent the Court believes formal incorporation is necessary.

6

US.116256302.04

True. *True v. Cook Medical Incorporated, et al.,* Case 2:13-cv-00413 (D. Nevada) (ECF No. 1) ("*True* Complaint"), at ¶13 ("Jurisdiction is proper in this Court under 28 U.S.C. § 1332(a)(1) because the plaintiff and defendants are citizens of different states, and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), excluding interest and costs."). Ms. True brings the almost identical claims[4] against almost identical Cook entities.[5] Her complaint is identical in substance to Plaintiff's complaint in this action but for one critical omission: it makes no reference to Courtney Lung. *See generally True* Complaint.

ii. On July 27, 2014, Mr. Brenes moved for the creation of MDL No. 2570. *See In re Cook Medical, Inc., IVC Filters Marketing, Sales Practices, and Products Liability Litigation,* MDL No. 2570 (J.P.M.L July 21, 2014) (ECF No. 1) (Motion to Transfer with Brief in Support of Troy Brenes, Esq.); *In re Cook Medical, Inc., IVC Filters Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2570 (J.P.M.L Aug. 22, 2014) (ECF No. 19) (Reply to Response to Motion to Transfer of Troy Brenes, Esq.).

iii. *True* was one of the 27 "Related Actions" cited in support of consolidation or coordination; actions that were, according to Mr. Brenes, "each filed appropriately in federal court." *See id.*.

iv. On October 15, 2014, the JPML ordered centralization of IVC Filter proceedings, over Cook's objection, making Mr. Brenes' *True* case one of the first filed in MDL No. 2570.

v. On December 15, 2015, after convincing the JPML that all Cook IVC Filter cases should be centralized in this Court, Mr. Brenes filed a complaint virtually identical to *True* on behalf of a second Las Vegas plaintiff, but in Nevada state court (*Ellingson*). The most notable change to the pleading was the insertion of two cursory allegations against newly-named defendant Courtney Lung, a Nevada citizen and employee of co-defendant Cook Medical LLC.

vi. On March 20, 2016, Mr. Brenes filed the present action in Nevada state court, again naming Ms. Lung. *See* Dkt. No. 1, at Ex. A.

vii. In April 2016, Mr. Brenes agreed not to name Ms. Lung in future actions in exchange for the Cook Defendants not removing his cases. *See* Pl. Opp., Ex. 3.

viii. On July 27, 2016, Cook timely removed *Gilbert* on fraudulent joinder grounds. Dkt. No. 1.

ix. On July 28, 2016, Mr. Brenes emailed former counsel for Cook: "I thought we had an agreement that you were not going to remove these cases." *See* Pl. Opp., at Ex. 4.

---

[4] Strict Products Liability – Failure to Warn, Strict Products Liability – Design Defects, Strict Products Liability – Manufacturing Defect, Negligence, Breach of Implied Warranty of Merchantability, Negligent Misrepresentation, Deceptive Trade Practice, and Punitive Damages. *See True* Complaint.

[5] Cook Medical Incorporated a/k/a Cook Medical, Inc., Cook Incorporated, Cook Group, Inc., William Cook Europe, ApS, Does I-XX, and Roe Corporations XXI-XL. *See True* Complaint.

      x.    On April 24, 2017, Mr. Brenes named Courtney Lung in a third Nevada state court suit (*Lowicki*), which Cook timely removed on fraudulent joinder grounds.

Although this Court has recognized that a plaintiff's intent generally plays no role in the fraudulent joinder inquiry, Cook respectfully submits that Mr. Brenes' actions are nonetheless relevant to the Court's analysis here. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992) ("Although false allegations of jurisdictional fact may make joinder fraudulent, *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir.1981), in most cases fraudulent joinder involves a claim against an in-state defendant that simply has no chance of success, whatever the plaintiff's motives.")

Specifically, courts have recognized that the lack of good faith intention to prosecute an action against a non-diverse defendant or seek a joint judgment supports a finding of fraudulent joinder. *Bentley v. Merck & Co.*, No. 17-1122, 2017 WL 2311299, at *2 (E.D. Pa. May 26, 2017) (citing *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990); *In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006); *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985)); *see also Franz v. Wyeth*, 431 F. Supp. 2d 688, 690 (S.D. Tex. 2004) (holding "when a Plaintiff, at whatever time and for whatever reason, indicates a desire to completely abandon the claims against all non-diverse defendants, those defendants are fraudulently joined"); *Spira Footwear, Inc. v. Lebow*, No. EP-08-CV-0055, 2008 WL 11334093, at *2 (W.D. Tex. June 12, 2008) ("In order to show improper joinder based upon 'voluntary abandonment' of a claim, there need not be a formal dismissal of the non-diverse party, but the defendant must show 'a definite or unequivocal expression of intent to discontinue the action against the resident party.'") (citing *Naef v. Masonite Corp.*, 923 F. Supp. 1504, 1510 (S.D. Ala. 1996)); *Delatte v. Zurich Ins. Co.*, 683 F. Supp. 1062, 1063 (M.D. La. 1988); *Bourque v. Nan Ya Plastics Corp.*, 906 F. Supp. 348, 352 (M.D. La. 1995) ("The defendants can avoid remand of the case if they can show that

8

plaintiff has voluntarily abandoned his claims against the non diverse defendants by clear and unambiguous acts."); *Aydell v. Sterns,* 677 F.Supp. 877, 880 (M.D.La.1988) ("Where plaintiff by his voluntary act has definitely indicated his intention to discontinue the action as to all non-diverse defendants, the case then becomes removable"); *Stamm v. American Tel. & Tel. Co.,* 129 F.Supp. 719, 721 (D.C.Mo.1955) (citing cases) ("It is quite well-settled that if the plaintiff voluntarily dismisses, discontinues, or in any way abandons, the action as to the resident joint defendant, the cause then becomes removable"); *Heniford v. American Motors Sales Corp.,* 471 F.Supp. 328, 334 (D.S.C.1979) (plaintiffs' counsel's "admonishment to the jury not to return a verdict against [the non-diverse defendant] established the prerequisites for removal"); *Ramirez v. Michelin N. Am., Inc.*, No. C.A. C-07-228, 2007 WL 2126635, at *3 (S.D. Tex. July 19, 2007) (denying remand where plaintiffs announced no serious, good-faith intent to prosecute their claims against non-diverse defendants).

In *Bentley*, the same plaintiff's attorney had filed suit against the same defendants in federal court. When the presence of a non-diverse defendant made no difference to the forum, the plaintiffs let her go; in other words, plaintiffs kept her in the cases only where her presence purportedly defeated diversity. As the district court observed:

> We find that the only reason plaintiffs have joined [the employee] as a defendant is to defeat this court's subject matter jurisdiction and that they have no real intention in good faith to prosecute these actions against her to judgment. We reach this compelling finding in light of the stipulation of dismissal of [the employee] in *Juday* and the plaintiffs' retention of [the employee] in the other similar cases where the same counsel represents all the plaintiffs. Plaintiffs' attorney conceded this inconsistency at oral argument and offered no explanation for it . . . .

*Id.* at *3.

Likewise here, when Mr. Brenes filed *True* in federal court before moving for the creation of MDL No. 2570, he did not join Ms. Lung and instead argued before the JPML that

9

the case was properly in federal court and supported centralization of Cook IVC Filter cases in this Court.  Following the JPML's centralization order, Mr. Brenes filed two Nevada state court cases in which he joined, on threadbare allegations, a defendant Cook entity's employee—a diversity-defeating defendant whom he later agreed to stop naming in exchange for Cook's agreement not to remove those cases.  *See* Brenes Decl. After Mr. Brenes perceived that Cook broke that agreement, he filed a third state court suit naming Ms. Lung.

In effect, Mr. Brenes has elected to name Ms. Lung only when she is needed to defeat diversity, and "has no real intention in good faith to prosecute the actions against her to judgment."  *See Bentley*.  Such gamesmanship and jurisdictional manipulation tips the scales in favor of fraudulent joinder and supports dismissal of Ms. Lung from this case.

### III. Plaintiff fails to explain why Ms. Lung's status as an employee is not fatal to her joinder.

#### A. Plaintiff has no basis for recovering against a co-defendant's employee under Nevada law.

On the merits of Plaintiff's purported claim against Ms. Lung, neither Plaintiff's motion to remand nor her response to the present motion addresses the legal effect of the undisputed fact that Ms. Lung is an *employee* sales representative—not an independent sales representative. *See* Pl. Opp., *passim*. Instead, Plaintiff directs the court to three cases that discuss *independent* sales representative or sales *company* liability.  *See* Pl. Opp., pp. 9-10 (citing *Moore*, *Rundle*, and *Zaite* in support of the notion that "numerous cases have established that Nevada law is not settled as to whether a sales representative, like Ms. Lung, can be held liable under a strict product liability claim and, therefore, the ambiguity in controlling law means that Defendants cannot establish fraudulent joinder").

10

Plaintiff's argument is misleading because none of the cases she cites involved a claim of individual liability against an *employee*. *See Moore v. Medtronic, Inc.*, No. 2:05CV 01329 KJD PAL, 2006 WL 1795861 (D. Nev. June 28, 2006) (acknowledging that it was "unclear as a matter of state law whether a sales representative like [defendant, an independent consultant] is or is not a 'seller of products' under a theory of strict products liability")[6]; *Rundle v. Depuy Orthopaedics, Inc.*, No. 2:11-CV-00634-PMP, 2011 WL 3022569 (D. Nev. July 6, 2011) (acknowledging "it is possible that the Nevada Supreme Court will hold that a manufacturer's exclusive sales representative [company] is strictly liable for design defects based on the type of conduct alleged in this case"); *Zaite v. Long (In re Pradaxa (Dabigatran Etexilate) Prod. Liab. Litig.)*, No. 312MD02385DRHSCW, 2013 WL 5609340, at *2 (S.D. Ill. Oct. 11, 2013) (citing both *Moore* and *Rundle* for the proposition that sales representative liability had not been definitively decided by Nevada courts). Furthermore, the court in *Rundle* used the terms "independent" and "independent contractor" sales representatives in its discussion of sales representative liability, impliedly noting the inherent and substantial difference between independent sales representatives and non-independent employees such as Ms. Lung. *Id*. at *9-13 (observing that courts in other jurisdictions had granted motions to remand product liability actions brought against resident independent sales representatives, independent contractor sales representatives, and sales representative companies).

---

[6] Notably, *Moore* cited two non-Nevada cases involving sales representative *companies* for the proposition that other jurisdictions are split as to whether a manufacturer's sales representative can be considered a "seller" under a strict products liability theory. *Id*. at *2, n. 4 ("*Bittler v. White & Co. Inc.*, 560 N.E.2d 979, 203 Ill.App.3d 26 (1990) (finding that participatory connection with defective product was sufficient to subject exclusive sales representative [company] to strict products liability); and *Brumbaugh v. CEJJ, Inc.*, 547 N.Y.S.2d 699, 152 A.D.2d 69 (1989) (finding exclusive sales agent [company] subject to strict product liability because [it] was a mandatory link in the distribution chain)").

11

>    B.  **Plaintiff has identified no facts that support inclusion of Cook Medical LLC employee Courtney Lung in this action.**

In attempted defense of Plaintiff's joinder of Ms. Lung, Plaintiff cites two pieces of evidence— a PowerPoint slide deck purportedly produced in the MDL but with no bates labels or other authentication, and Ms. Lung's answer in *Lowicki* that she has been "selling Cook Celect® vena cava filters, in her capacity as an employee of [Cook Medical LLC]." *See* Pl. Opp., p. 3.  But both of these items merely highlight Ms. Lung's status as a Cook *employee*—a distinction on which Plaintiff has offered *no* argument—and do nothing to advance the arguments Plaintiff makes in opposing dismissal of Ms. Lung.  At most, these two items show that Ms. Lung may be an appropriate fact witness in Plaintiff's case against the Cook Defendants. Without more, however, they are insufficient to justify Ms. Lung's joinder, and the Court should dismiss her.

>    C.  **Plaintiff is not entitled to any discovery on Ms. Lung** *at this time*.

Plaintiff alludes to the fact that "she has not had the opportunity to obtain discovery from Ms. Lung" as if to justify the limited support for Plaintiff's claims against her.  *See* Pl. Opp., p. 12.  But Plaintiff's asserted need for additional discovery cannot support remand, and courts routinely reject requests for additional discovery when the plaintiffs' factual allegations are insufficient to state a claim for relief against a forum defendant.   *See, e.g., Higley v. Cessna Aircraft Co.,* No. CV 10–3345–GHK, 2010 WL 3184516, at *3 (C.D.Cal. July 21, 2010) ("[T]he propriety of removal is determined at the time of removal—not according to the factual allegations stated at a later date, and our finding of fraudulent joinder with respect to Plaintiffs' current Motion does *not* include consideration of whether, with further discovery, the plaintiff may uncover a factual basis for its claims." (quotation marks omitted)).

12

At the time of removal in *Higley,* none of the defendants had answered the complaint and the removing defendants argued that the plaintiffs' allegations were insufficient to state a claim against the forum defendant. Because the plaintiffs' allegations against the forum defendant were facially insufficient, and the plaintiffs had identified no other facts that could be asserted to state a claim, the court denied their request for discovery. *Id.* This decision was supported by and consistent with the general notion that under the Federal Rules of Civil Procedure, a plaintiff cannot "unlock the doors of discovery ... armed with nothing more than conclusions." *Ashcroft v. Iqbal,* 556 U.S. 663, 678 (2009). Likewise here, Plaintiff's vague assertion that she needs additional discovery against Ms. Lung cannot overcome the lack of any factual allegations that could possibly support recovery against this Cook employee under Nevada law.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Courtney Lung from this action.

Dated: February 2, 2018

Respectfully submitted,

/s/ John T. Schlafer
Andrea Roberts Pierson, Co-Lead Counsel
John T. Schlafer
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:        (317) 237-0300
Facsimile:         (317) 237-1000
andrea.pierson@faegrebd.com
john.schlafer@faegrebd.com

James Stephen Bennett, Co-Lead Counsel
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana  46802
Telephone:        (260) 424-8000
Facsimile:         (260) 460-1700
stephen.bennett@faegrebd.com

*Attorneys for Cook Defendants*

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2018, a copy of the foregoing COOK DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.  Lead Co-Counsel for Defendants will serve any non-CM/ECF registered parties.

/s/ John T. Schlafer

US.116256302.04