**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

_____

In Re: COOK MEDICAL, INC., IVC FILTERS            Case No. 1:14-ml-2570-RLY-TAB
MARKETING, SALES PRACTICES AND                    MDL No. 2570
PRODUCTS LIABILITY LITIGATION
_____

This Document Relates:
*Ashley Gilbert*
Case No. 1:16-cv-6049-RLY-TAB
_____


**AFFIDAVIT OF DOUGLAS B. KING IN SUPPORT OF THE COOK DEFENDANTS'**
**REPLY IN SUPPORT OF MOTION TO DISMISS COURTNEY LUNG**

I, Douglas B. King, state as follows:

1.      I am over 18 years of age and have personal knowledge of the facts and

representations set forth in this affidavit.

2.      I am one of the attorneys at the law firm of Wooden McLaughlin, counsel of

record for the Cook Defendants in this matter during 2016.

3.      On December 15, 2015, Mr. Brenes filed *Marie Ellingson v. Courtney Lung, et al.*

in the Eighth Judicial District Court of Clark County, Nevada.  The case was initially assigned to

Department XIX before Judge Kephart.  Case No. A-15-729064-C.

4.      On March 20, 2016, Mr. Brenes filed the above-captioned case, against the same

defendants as in *Ellingson* and in the same Nevada state court. The case was initially assigned to

Department X before Judge Walsh. *See* Dkt. No. 1.

5.      I first spoke with Mr. Brenes regarding the two proposals outlined in his

Declaration in a phone conversation on April 1, 2016.  *See* Plaintiff's Opposition to Defendants'

Motion to Dismiss Courtney Lung ("Pl. Opp.") at Ex. 3.  The proposals I discussed with Mr. Brenes were:

      i.    That the defendants waive and my firm accept service on behalf of all defendants in this matter in exchange for Plaintiff's agreement not to oppose our request to transfer this and future cases in Clark County, Nevada, to the department where *Ellingson* was then pending; and

     ii.    That the defendants would not seek removal of the then-pending cases on fraudulent joinder grounds in exchange for Mr. Brenes not naming Courtney Lung in future lawsuits.

*See* Declaration of Troy A. Brenes in Support of Opposition to Defendants' Motion to Dismiss Courtney Lung ("Brenes Decl.") at ¶¶ 4, 5; *see also* Pl. Opp, at Ex. 3.

      6.    Although Mr. Brenes did not state any objection to my proposals during our April 1, 2016, phone conversation, he said that he wanted to check with his local counsel before entering into either agreement.  *See* Pl. Opp., at Ex. 3.

      7.    On April 14, 2016, I followed up by email with Mr. Brenes regarding my two proposals.  *See* Brenes Decl., at ¶¶ 4, 5; Pl. Opp., at Ex. 3.  I also expanded my second proposal regarding removal to say that the defendants would not attempt to remove *Ellingson*, this matter, or any future lawsuits in exchange for Plaintiff's agreement to dismiss Ms. Lung from the two then-pending cases (*Ellingson* and *Gilbert*), in addition to agreeing not to name her in future suits.  *See* Pl. Opp., at Ex. 3.

      8.    On or around April 14, 2016, Mr. Brenes expressly rejected my proposal to coordinate proceedings in the department where *Ellingson* had been assigned.

9.      The proposal to accept service on behalf of all defendants was contingent upon Plaintiff's counsel's agreement to coordinate proceedings in the department where *Ellingson* had been assigned. *See* Pl. Opp., at Ex. 3.

10.      To the best of my recollection, I had no further communications with Plaintiff's counsel regarding either proposed agreement until Mr. Brenes's July 28, 2016, email. *See* Brenes Decl., at ¶¶ 6, 7; Pl. Opp., at Ex. 4.

11.      There was no other agreement with Plaintiff's counsel regarding waiver of service on any defendant in this action.

12.      On May 10, 2016, Plaintiff's counsel filed a Notice of Peremptory Challenge of Judge [Kephart] in *Ellingson*, requesting that the case be re-assigned from Judge Kephart in Department XIX to another judge in the Eight Judicial District Court.  Attached as Exhibit 1 is a true and accurate copy of the Notice.

13.      On May 11, 2016, *Ellingson* was randomly reassigned to Department XVI "follow[ing] the filing of a Peremptory Challenge of Judge William Kephart."  Attached as Exhibit 2 is a true and accurate copy of the Notice of Department Reassignment.

14.      On June 27, 2016, Plaintiff's counsel served Medical Engineering and Development Institute, Inc., in this case by Corporation Service Company®.  Attached as Exhibit 3 are true and accurate copies of service of process documents on Medical Engineering and Development Institute, Inc.

15.      On June 27, 2016, Plaintiff's counsel served Cook Group Incorporated in this case by Corporation Service Company®.  Attached as Exhibit 4 are true and accurate copies of service of process documents on Cook Group Incorporated.

16.     On June 27, 2016, Plaintiff's counsel served Cook Medical, Incorporated in this case by Corporation Service Company®.  Attached as Exhibit 5 are true and accurate copies of service of process documents on Cook Medical, Incorporated.

17.     On July 27, 2016, the Cook Defendants removed this action on fraudulent joinder grounds.

18.     On July 28, 2016, Mr. Brenes sent me an email regarding the proposal to stop naming Ms. Lung in exchange for our agreement not to remove.  *See* Brenes Decl., at ¶¶ 6, 7; Pl. Opp., at Ex. 4.

19.     The proposal regarding waiver was independent of the proposal regarding removal.

*(signature page follows)*

**I DECLARE UNDER THE PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.**

Douglas B. King

US.116193694.03

# EXHIBIT 1

Electronically Filed
05/10/2016 03:53:40 PM

**CLERK OF THE COURT**

1   Ramiro Morales (Bar # 7101)
2   David A. Astengo (Bar # 11045)
    MORALES FIERRO & REEVES
3   600 South Tonopah Drive, Suite 300
    Las Vegas, Nevada 89106
4   (702) 699-7822 (Telephone)
    ( (702) 699-9455 (Facsimile)
5   Attorneys for Plaintiff Marie Ellingson

6

7

8                   **EIGHTH JUDICIAL DISTRICT COURT**
9                     **COUNTY OF CLARK, NEVADA**

10  MARIE ELLINGSON, individually and on      ) Case No. A-15-729064-C
    behalf of the estate of LINK ELLINGSON    ) Dept. No. XIX
11                                            )
12            *Plaintiff,*                    )
              vs.                             )
13                                            ) **NOTICE OF PEREMPTORY CHALLENGE OF**
                                              ) **JUDGE**
14  COURTNEY LUNG, an individual; COOK        )
    GROUP INCORPORATED; a corporation;        )
15  COOK MEDICAL, INCORPORATED; a             )
    corporation; MEDICAL ENGINEERING and      )
16  DEVELOPMENT INSTITUTE, INC., a            )
    corporation; MED INSTITUTE, INC.;  a      )
17  corporation; COOK MED INSTITUTE, a        )
    corporation; COOK DENMARK                 )
18  INTERNATIONAL APS, a foreign entity       )
    most closely resembling a corporation;    )
19  WILLIAM COOK EUROPE APS; a foreign        )
    entity most closely resembling a corporation; )
20  and DOES 1 through 100 inclusive,         )
                                              )
21            *Defendants.*                   )
22  _____ )
23

24  ///

25  ///

26  ///

27  ///

28  ///

---
1
**NOTICE OF PEREMPTORY CHALLENGE OF JUDGE**

COMES NOW Plaintiff MARIE ELLINGSON, individually and on behalf of the Estate of Link Ellingson, and files Peremptory Challenge of Judge.

Plaintiff requests that this case be re-assigned from Judge William Kephart in Department XIX, to another Judge in the Eighth Judicial District Court.  (Supreme Court Rule 48.1).

Dated:  May 9, 2015                         Respectfully Submitted,


By:        /s/ David A. Astengo
          Ramiro Morales (Bar No. 7101)
          David A. Astengo (Bar No. 11045)
          MORALES FIERRO & REEVES
          600 South Tonopah Drive, Suite 300
          Las Vegas, Nevada 89106
          (702) 699-7822 (Telephone)
          (702) 699-9455 (facsimile)


          **To be admitted *Pro Hac Vice*:**

          Troy A. Brenes (California Bar No. 249776)
          Brenes Law Group
          16A Journey
          Aliso Viejo, CA 92656
          (949) 397-9360 (Telephone)
          (949) 607-4192 (Facsimile)

**NOTICE OF PEREMPTORY CHALLENGE OF JUDGE**

# EXHIBIT 2

Electronically Filed
05/11/2016 10:06:46 AM

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

****

**CLERK OF THE COURT**

| | |
|---|---|
| Marie Ellingson, Plaintiff(s) | Case No.:   A-15-729064-C |
| vs. | |
| Courtney Lung, Defendant(s) | Department 16 |

### NOTICE OF DEPARTMENT REASSIGNMENT

NOTICE IS HEREBY GIVEN that the above-entitled action has been randomly reassigned to Judge Timothy C. Williams.

☒   This reassignment follows the filing of a Peremptory Challenge of Judge William Kephart.

ANY TRIAL DATE AND ASSOCIATED TRIAL HEARINGS STAND BUT MAY BE RESET BY THE NEW DEPARTMENT.

Any motions or hearings presently scheduled in the FORMER department will be heard by the NEW department as set forth below.

**Motion to Associate Counsel (x2), on 06/02/2016, at 9:00 AM.**

PLEASE INCLUDE THE NEW DEPARTMENT NUMBER ON ALL FUTURE FILINGS.

STEVEN D. GRIERSON, CEO/Clerk of the Court

By:   /s/ Joshua Raak

Joshua Raak, Deputy Clerk of the Court

### CERTIFICATE OF SERVICE

I hereby certify that this 11th day of May, 2016

☒   The foregoing Notice of Department Reassignment was electronically served to all registered parties for case number A-15-729064-C.

☒   I placed a copy of the foregoing Notice of Department Reassignment in the appropriate attorney folder located in the Clerk of the Court's Office:

Ramiro Morales – Morales Fierro & Reeves

/s/ Joshua Raak

Joshua Raak, Deputy Clerk of the Court

# EXHIBIT 3

SUMM

# District Court

## CLARK COUNTY, NEVADA

ASHLEY GILBERT, an individual,

              Plaintiff,

    vs.

COURTNEY LUNG, an individual; COOK GROUP INCORPORATED; a corporation; COOK MEDICAL, INCORPORATED; a corporation; MEDICAL ENGINEERING and DEVELOPMENT INSTITUTE, INC., a corporation; MED INSTITUTE, INC.; a corporation; COOK MED INSTITUTE, a corporation; COOK DENMARK INTERNATIONAL APS, a foreign entity most closely resembling a corporation; WILLIAM COOK EUROPE APS; a foreign entity most closely resembling a corporation; and DOES 1 through 100 inclusive,

              Defendants.

CASE NO.:  A-16-733747-C
DEPT. NO.: X

## SUMMONS – CIVIL
MEDICAL ENGINEERING and DEVELOPMENT INSTITUTE, INC.

**NOTICE! YOU HAVE BEEN SUED.  THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING HEARD UNLESS YOU RESPOND WITHIN 20 DAYS.  READ THE INFORMATION BELOW.**

**TO THE DEFENDANT(S):**  A civil Complaint has been filed by the Plaintiff(s) against you for the relief set forth in the Complaint.

        *MEDICAL ENGINEERING and DEVELOPMENT INSTITUTE, INC.*

1.    If you intend to defend this lawsuit, within 20 days after this Summons is served on you exclusive of the day of service, you must do the following:

    (a)    File with the Clerk of this Court, whose address is shown below, a formal written response to the Complaint in accordance with the rules of the Court, with the appropriate filing fee.

    (b)    Serve a copy of your response upon the attorney whose name and address is shown below.

2.    Unless you respond, your default will be entered upon application of the Plaintiff(s) and failure to so respond will result in a judgment of default against you for the relief demanded in the Complaint, which could result in the taking of money or property or other relief requested in the Complaint.

3.    If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response may be filed on time.

4.    The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission members and legislators each have 45 days after service of this Summons within which to file an Answer or other responsive pleading to the Complaint

Submitted by:

*Pet c. Wur*
_____
PETER C. WETHERALL, ESQ.
Nevada Bar No: 4414
WETHERALL GROUP, LTD.
9345 W. Sunset Road, Suite 100
Las Vegas, NV 89148
*Attorneys for Plaintiff*

STEVEN D. GRIERSON
CLERK OF COURT

By: _____
DEPUTY CLERK   KADIRA BECKOM   DATE JUN 15 2016
Regional Justice Center
200 Lewis Avenue
Las Vegas, NV 89155

# DISTRICT COURT CIVIL COVER SHEET

A–16–733747–C

Clark _____ County, Nevada

Case No. _____
*(Assigned by Clerk's Office)*

X

| I. Party Information *(provide both home and mailing addresses if different)* | |
|---|---|
| Plaintiff(s) (name/address/phone): | Defendant(s) (name/address/phone): |
| **Ashley Gilbert** | **Courtney Lung, an individual, Cook Group Inc.,** |
| 220 Mission Catalina, Unit 104 | William Cook Europe ApS, Cook Denmark International; |
| Las Vegas, NV 89107 | Cook Medical LLC., Does 1-100 |
| (702)-828-4107 | |
| Attorney (name/address/phone): | Attorney (name/address/phone): |
| Peter C. Wetherall | |
| Wetherall Group, Ltd. | |
| 9345 West Sunset Road, Ste. 100 | |
| Las Vegas, NV 89148   (702)-838-8500 | |

## II. Nature of Controversy *(please select the one most applicable filing type below)*

### Civil Case Filing Types

| Real Property | Torts | |
|---|---|---|
| **Landlord/Tenant** | **Negligence** | **Other Torts** |
| ☐ Unlawful Detainer | ☐ Auto | ☑ Product Liability |
| ☐ Other Landlord/Tenant | ☐ Premises Liability | ☐ Intentional Misconduct |
| **Title to Property** | ☐ Other Negligence | ☐ Employment Tort |
| ☐ Judicial Foreclosure | **Malpractice** | ☐ Insurance Tort |
| ☐ Other Title to Property | ☐ Medical/Dental | ☐ Other Tort |
| **Other Real Property** | ☐ Legal | |
| ☐ Condemnation/Eminent Domain | ☐ Accounting | |
| ☐ Other Real Property | ☐ Other Malpractice | |

| Probate | Construction Defect & Contract | Judicial Review/Appeal |
|---|---|---|
| **Probate** *(select case type and estate value)* | **Construction Defect** | **Judicial Review** |
| ☐ Summary Administration | ☐ Chapter 40 | ☐ Foreclosure Mediation Case |
| ☐ General Administration | ☐ Other Construction Defect | ☐ Petition to Seal Records |
| ☐ Special Administration | **Contract Case** | ☐ Mental Competency |
| ☐ Set Aside | ☐ Uniform Commercial Code | **Nevada State Agency Appeal** |
| ☐ Trust/Conservatorship | ☐ Building and Construction | ☐ Department of Motor Vehicle |
| ☐ Other Probate | ☐ Insurance Carrier | ☐ Worker's Compensation |
| **Estate Value** | ☐ Commercial Instrument | ☐ Other Nevada State Agency |
| ☐ Over $200,000 | ☐ Collection of Accounts | **Appeal Other** |
| ☐ Between $100,000 and $200,000 | ☐ Employment Contract | ☐ Appeal from Lower Court |
| ☐ Under $100,000 or Unknown | ☐ Other Contract | ☐ Other Judicial Review/Appeal |
| ☐ Under $2,500 | | |

| Civil Writ | | Other Civil Filing |
|---|---|---|
| **Civil Writ** | | **Other Civil Filing** |
| ☐ Writ of Habeas Corpus | ☐ Writ of Prohibition | ☐ Compromise of Minor's Claim |
| ☐ Writ of Mandamus | ☐ Other Civil Writ | ☐ Foreign Judgment |
| ☐ Writ of Quo Warrant | | ☐ Other Civil Matters |

*Business Court filings should be filed using the Business Court civil coversheet.*

| 3/16/16 | /s/ Peter C. Wetherall |
|---|---|
| Date | Signature of initiating party or representative |

*See other side for family-related case filings.*

Electronically Filed
03/20/2016 10:44:04 PM

*[signature]*

**CLERK OF THE COURT**

1 | **COMP**
Peter C. Wetherall, Esq.
2 | NV Bar No. 4414
Wetherall Group, Ltd.
3 | 9345 West Sunset Road, Suite 100
4 | Las Vegas, NV 89148
702.838.8500 (office)
5 | 702.837.5081 (fax)
6 | pwetherall@wetherallgroup.com
and
7 | Troy A. Brenes, Esq.
Pro Hac pending
8 | Brenes Law Group
9 | 16A Journey, Suite 200
Aliso Viejo, CA 92656
10 | 949.397.9360 (office)
11 | 949.607.4192 (fax)
*Attorney for Plaintiff,*
12 | Ashley Gilbert

13 |

14 | **DISTRICT COURT**

15 | **CLARK COUNTY, NEVADA**

16 | ASHLEY GILBERT, an individual,

17 |       *Plaintiff,*

18 |     vs.

19 | COURTNEY LUNG, an individual; COOK
20 | GROUP INCORPORATED; a corporation;
COOK MEDICAL, INCORPORATED; a
21 | corporation; MEDICAL ENGINEERING and
DEVELOPMENT INSTITUTE, INC., a
22 | corporation; MED INSTITUTE, INC.; a
corporation; COOK MED INSTITUTE, a
23 | corporation; COOK DENMARK
24 | INTERNATIONAL APS, a foreign entity
most closely resembling a corporation;
25 | WILLIAM COOK EUROPE APS; a foreign
26 | entity most closely resembling a corporation;
and DOES 1 through 100 inclusive,

27 |
28 |      *Defendants.*

Case No. A-16-733747-C

Dept. No. X

**COMPLAINT**

1
COMPLAINT FOR DAMAGES

1    Comes now Plaintiff ASHLEY GILBERT and complains against Defendants Courtney Lung;

2  Cook Group, Incorporated; Cook Medical, Incorporated; Medical Engineering and Development

3  Institute, Inc.; MED Institute, Inc.; Cook MED Institute, Inc.; Cook Denmark International APS;

4  William Cook Europe APS; and DOES 1 through 100 and alleges as follows:

5  <div align="center">**PARTIES**</div>

6  **Plaintiff**

7    1.    Ashley Gilbert at all time relevant to the complaint resided in Las Vegas, Nevada. On

8  September 25, 2012, she was implanted with a Cook Celect® Vena Cava Filter Set at the University

9  Medical Center in Las Vegas, Nevada.  The filter was placed properly and in accordance with labeling

10  materials and instructions provided by the defendants.  The filter subsequently tilted with the top of the

11  filter becoming embedded in Ms. Gilbert's vena cava wall. Additionally, all of the struts perforated

12  through her vena cava wall, with five struts perforating into her bowel and one strut coming within two

13  mm of perforating her aorta. This malfunction resulted in severe abdominal pain, cardiac complications,

14  multiple corrective surgical procedures, severe sepsis, and acute kidney injury. Ms. Gilbert brings this

15  complaint against those persons and entities that designed, set specifications, manufactured, marketed,

16  distributed, and sold her Cook Celect® Vena Cava Filter Set implanted.

17  **Defendants**

18    2.    Defendant Courtney Lung is an individual who sold, marketed and delivered the Cook

19  Celect® Vena Cava Filter Set implanted in Ashley Gilbert to her prescribing physicians and/or the

20  University Medical Center. Ms. Lung has been a resident of Clark County, Nevada for over 20 years and has

21  been selling the Cook Celect® Vena Cava Filter Set since it was first cleared by the FDA for use in 2007.

22  Ms. Lung describes her current job duty in her LinkedIn page as "tasked with keeping and identifying

23  new areas of business growth while maintaining existing market share in respective hospital chains and

24  clinics." Ms. Lung was the primary point of contact for educating Ms. Gilbert's prescribing physicians

25  about the device's features, assisting them with understanding the proper use of the device, explaining

26  its risks and benefits, answering their questions, and convincing them to either convert to using the

27  device and/or to continue using the device. Ms. Lung did this by making frequent in person sales calls to

28  Ms. Gilbert's prescribing physicians to promote the device; providing sales brochures, favorable clinical

1   data and other marketing materials to Ms. Gilbert's prescribing physicians; recruiting and/or attempting

2   to recruit Ms. Gilbert's prescribing physicians for educational and training opportunities that promoted

3   the Cook Celect® Vena Cava Filter Set; and at times participating and/or observing Ms. Gilbert's

4   prescribing physicians in placing the device.

5       3.    Defendant Cook Group, Incorporated is an Indiana Corporation with its principal place of

6   business located at 750 Daniels Way, Bloomington, Indiana 47404. Defendants Cook Group

7   Incorporated regularly conducts business in the State of Nevada, and is authorized to do so. At all times

8   relevant to this action, Defendant Cook Group, Incorporated designed, set specifications, manufactured,

9   prepared, compounded, assembled, processed, marketed, distributed, and sold the Cook Celect® Vena

10  Cava Filter Set to be implanted in patients throughout the United States, including Nevada.

11      4.    Defendant Cook Medical, Incorporated is an Indiana Corporation with its principal place

12  of business located at 750 Daniels Way, Bloomington, Indiana 47404. Defendant Cook Group

13  Incorporated regularly conducts business in the State of Nevada, and is authorized to do so. At all times

14  relevant to this action, Defendant Cook Medical, Incorporated designed, set specifications,

15  manufactured, prepared, compounded, assembled, processed, marketed, distributed, and sold the Cook

16  Celect® Vena Cava Filter Set to be implanted in patients throughout the United States, including

17  Nevada.

18      5.    Defendant Medical Engineering and Development Institute, Inc. is an Indiana corporation

19  with a principal place of business located at 750 Daniels Way, Bloomington, Indiana 47404. Defendant

20  Cook Medical Engineering and Development Institute, Inc. regularly conducts business in the State of

21  Nevada, and is authorized to do so. At all times relevant to this action, Defendant Medical Engineering

22  and Development Institute, Inc., designed, set specifications, manufactured, prepared, compounded,

23  assembled, processed, marketed, distributed, and sold the Cook Celect® Vena Cava Filter Set to be

24  implanted in patients throughout the United States, including Nevada.

25      6.    Defendants MED Institute, Inc. and Cook MED Institute, Inc., (MED = Medical

26  Engineering and Development) are Indiana Corporations with principal of business located at 1 Geddess

27  Way, West Lafayettee, Indiana 47906. Defendants MED Institute, Inc. and Cook MED Institute, Inc.,

28  regularly conduct business in the State of Nevada, and are authorized to do so. At all times relevant to

1   this action, Defendants MED Institute, Inc. and Cook MED Institute, Inc., designed, set specifications,

2   manufactured, prepared, compounded, assembled, processed, marketed, distributed, and sold the Cook

3   Celect® Vena Cava Filter Set to be implanted in patients throughout the United States, including

4   Nevada.

5         7.      Defendant Cook Denmark International APS is a foreign entity based in Denmark, which

6   most closely resembles a corporation. Defendants Cook Group Incorporated regularly conducts business

7   in the State of Nevada, and is authorized to do so. At all times relevant to this action, Defendant Cook

8   Denmark International APS designed, set specifications, manufactured, prepared, compounded,

9   assembled, processed, marketed, distributed, and sold the Cook Celect® Vena Cava Filter Set to be

10  implanted in patients throughout the United States, including Nevada.

11        8.      Defendant William Cook Europe APS is based in Bjaeverskov, Denmark, which most

12  closely resembles a corporation, and regularly conduct business in the State of Nevada, and is authorized

13  to do so. At all times relevant to this action, Defendant William Cook Europe APS designed, set

14  specifications, manufactured, prepared, compounded, assembled, processed, marketed, distributed, and

15  sold the Cook Celect® Vena Cava Filter Set to be implanted in patients throughout the United States,

16  including Nevada.

17        9.      Defendants DOES 1-100, inclusive, designed, set specifications, manufactured, prepared,

18  compounded, assembled, processed, marketed, distributed, and sold the Cook Celect® Vena Cava Filter

19  Set to be implanted in patients throughout the United States, including Nevada. The true names,

20  identities, or capacities, whether individual, associate, corporate or otherwise of defendants, DOES 1

21  through 100, inclusive, are unknown to Plaintiff who, therefore, sues said defendants by such fictitious

22  names.  When the true names, identities or capacities of said fictitiously designated defendants are

23  ascertained, plaintiff will seek leave of Court to amend this complaint to insert the true names, identities,

24  and/or capacities of DOE Defendants, together with the proper charging allegations against said DOE

25  Defendants.

26        10.     All references to "Defendants" hereafter shall refer to ALL defendants, including DOES

27  1 through 100, inclusive, unless otherwise stated.

28  / / / /

### JURISDICTION AND VENUE

This Court has jurisdiction in this matter and venue is proper in that the facts and circumstances leading to injuries occurred in Clark County, Nevada and Plaintiff seeks damages in excess of $50,000, exclusive of interest or cost and regardless of comparative liability.

### GENERAL FACTUAL ALLEGATIONS

11.     Plaintiff brings this case as result of a surgically implanted medical device, known as the Cook Celect® Vena Cava Filter Set (hereafter "Celect Filter"), tilting and tearing her vena cava and bowel in multiple locations, causing numerous serious complications.

12.     The Celect Filter was designed, manufactured, prepared, compounded, assembled, processed, labeled, marketed, distributed, and sold by Defendants starting in 2007 for the prevention of blood clots (thrombi) from travelling from the lower portions of the body to the heart and lungs. At all times relevant hereto, the Celect Filter was widely advertised and promoted by the Defendants, including in the State of Nevada, as safe and effective treatment for prevention of recurrent pulmonary embolism via placement in the vena cava.

13.     An IVC filter, like the Cook Filters, is a device designed to filter blood clots (called "thrombi") that travel from the lower portions of the body to the heart and lungs. IVC filters may be designed to be implanted, either temporarily or permanently, within the vena cava.

14.     The inferior vena cava is a vein that returns blood to the heart from the lower portion of the body. In certain people, and for various reasons, thrombi travel from vessels in the legs and pelvis, through the vena cava into the lungs. Often these thrombi develop in the deep leg veins. The thrombi are called "deep vein thrombosis" or DVT. Once the thrombi reach the lungs they are considered "pulmonary emboli" or PE. An IVC filter, like the Cook IVC Filters, is designed to prevent thromboembolic events.

15.     The Cook Celect® Vena Cava Filter has four (4) anchoring struts for fixation and eight (8) independent secondary struts to improve self-centering and clot trapping.

16.     Defendants sought Food and Drug Administration ("FDA") clearance to market the Celect Filter and/or its components under Section 510(k) of the Medical Device Amendment.

17.     Section 510(k) allows marketing of medical devices if the device is substantially equivalent to other legally marketed predicate devices without formal review for the safety or efficacy of the said device. The FDA explained the difference between the 510(k) process and the more rigorous "premarket approval" process in an amicus brief filed with the Third Circuit in *Horn v. Thoratec Corp.*, 376 F.3d 163, 167 (3d Cir. 2004):

> A manufacturer can obtain an FDA finding of "substantial equivalence" by submitting a premarket notification to the agency in accordance with section 510(k)...A device found to be 'substantially equivalent' to a predicate device is said to be "cleared" by FDA (as opposed to "approved" by the agency under a [premarket approval]). A pre-market notification submitted under 510(k) is thus entirely different from a [pre-market approval] which must include data sufficient to demonstrate that the device is safe and effective. (Emphasis in original).

18. In *Medtronic, Inc. v. Lohr*, 518 U.S. 470,478-79 (1996), the Supreme Court similarly described the 510(k) process, observing:

> If the FDA concludes on the basis of the [manufacturer's] §510(k) notification that the device is 'substantially equivalent' to a pre-existing device, it can be marketed without further regulatory analysis...The §510(k) notification process is by no means comparable to the [premarket approval] process; in contract to the 1,200 hours necessary to complete a PMA review, the §510(k) review is completed in average of 20 hours...Section §510(k) notification requires little information, rarely elicits a negative response from the FDA, and gets process quickly.

19.     Prior to Ashley Gilbert being implanted with a Celect Filter on September 25, 2012, Defendants knew and should have known that the device was defective and unreasonably dangerous for, *inter alia*, the following reasons:

a.   Defendants failed to conduct adequate clinical testing, such as animal studies, to determine how the device would function once permanently implanted in the human body.

b.   Defendants knew and/or should have known that the Celect Filter had an unreasonably and unexpectedly high risk of fracture, migration, excessive tilting and tendency to tear the vena cava once implanted in the human body.  Defendants knew and/or should have known that such failures exposed patients to and in fact had caused serious injuries, including: death; hemorrhage; cardiac/pericardial tamponade; cardiac arrhythmia and other symptoms similar to myocardial infarction;

1    severe and persistent pain; perforations of tissue, vessels and organs; and inability to remove the device.

2    Further, Defendants knew or should have known that these risks for Celect Filter were and are

3    substantially higher than other similar devices.

4         c.  Further, Defendants knew and/or should have known that the Celect Filter contained

5    conditions, which Defendants did not intend, which resulted in the device not performing as safely and

6    the ordinary consumer would expect. For example, Defendants knew that the Celect Filter did not

7    contain the planned mixture of metals, which resulted in it being more likely to perforate the vena cava.

8         d.  Despite being aware of these risks, Defendants misrepresented, omitted, and/or failed to

9    provide adequate warnings of these risks or instructions for safe use.

10    <p align="center">**SPECIFIC FACTUAL ALLEGATIONS AS TO PLAINTIFF**</p>

11

12        20.  On September 25, 2012, Ashley Gilbert was implanted with Cook Celect Filter

13    University Medical Center in Las Vegas, Nevada.

14        21.  The Celect Filter was properly deployed in accordance with instructions and labeling

15    materials from the Defendants.

16        22.  The filter subsequently tilted with the top of the filter becoming embedded in Ms.

17    Gilbert's vena cava wall. Additionally, all of the struts perforated through her vena cava wall, with five

18    struts perforating into her bowel and one strut coming within two millimeters of perforating her aorta.

19    This malfunction resulted in severe abdominal pain, cardiac complications, multiple corrective surgical

20    procedures, severe sepsis, acute kidney injury, and significant disfigurement. She was hospitalized for

21    16 days.

22

23    <p align="center">**FRUADULENT CONCEALMENT**</p>

24        23.  Any applicable statutes of limitation have been tolled by the knowing and active

25    concealment and denial of material facts known by Defendants when they had a duty to disclose those

26    facts. They have kept Plaintiff ignorant of vital information essential to the pursuit of their claims,

27    without any fault or lack of diligence on Plaintiff's part, for the purpose of obtaining delay on Plaintiff's

28    part in filing on their causes of action. Defendants' fraudulent concealment did result in such delay.

24.     Defendants are estopped from relying on the statute of limitations defense because Defendants failed to timely disclose, among other things, facts evidencing the defective and unreasonably dangerous nature of the Celect Filter.

25.     Plaintiff and Plaintiff's health care providers could not reasonably have discovered the claims made herein until at the earliest when the device malfunction was discovered in 2015.

26.     The Defendants are and were under a continuing duty to disclose the true character, quality and nature of the device that was implanted in Plaintiff, but instead they concealed them. Defendants' conduct, as described in this complaint, amounts to conduct purposely committed, which Defendants must have realized was dangerous, heedless and reckless, without regard to the consequences or the rights and safety of Plaintiff.

## **CORPORATE/VICARIOUS LIABILITY**

27.     At all times herein mentioned, each of the Defendants was the agent, servant, partner, co-conspirator and/or joint venturer of each of the other Defendants herein and was at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture and rendered substantial assistance and encouragement to the other Defendants, knowing that their collective conduct constituted a breach of duty owed to the Plaintiff.

28.     There exists and, at all times herein mentioned, there existed a unity of interest in ownership between certain Defendants and other certain Defendants such that any individuality and separateness between the certain Defendants has ceased and these Defendants are the alter ego of the other certain Defendants and exerted control over those Defendants.  Adherence to the fiction of the separate existence of these certain Defendants as entities distinct from other certain Defendants will permit an abuse of the corporate privilege and would sanction a fraud and/or would promote injustice.

29.     At all times herein mentioned, Defendants, and each of them, were engaged in the business of, or were successors in interest to, entities engaged in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, prescribing and/or advertising for sale, and

1   selling products for use by the Plaintiff. As such, each Defendant is individually, as well as jointly and

2   severally, liable to the Plaintiff for Plaintiff's damages.

3         30.    At all times herein mentioned, the officers and/or directors of the Defendants named

4   herein participated in, authorized and/or directed the production and promotion of the aforementioned

5   products when they knew, or with the exercise of reasonable care and diligence should have known, of

6   the hazards and dangerous propensities of said products, and thereby actively participated in the tortious

7   conduct that resulted in the injuries suffered by the Plaintiff.

8
**FIRST CAUSE OF ACTION**
**NEGLIGENCE**

9
**(Against All Defendants)**

10

11        31.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in

12   the foregoing paragraphs as though fully set forth herein.

13        32.    At all times relevant to this cause of action, Defendants were in the business of designing,

14   developing, setting specifications, manufacturing, marketing, selling, and distributing the Celect Filter.

15        33.    Defendants designed, manufactured, marketed, inspected, labeled, promoted, distributed

16   and sold the Celect Filter that was implanted in Plaintiff.

17        34.    Defendants had a duty to exercise reasonable and prudent care in the development,

18   testing, design, manufacture, inspection, marketing, labeling, promotion, distribution and sale of the

19   Celect Filter so as to avoid exposing others to foreseeable and unreasonable risks of harm.

20        35.    Defendants knew or reasonably should have known that the Celect Filter was dangerous

21   or was likely to be dangerous when used in its intended or reasonably foreseeable manner.

22        36.    At the time of manufacture and sale of the Celect Filter (prior to 2012), Defendants knew

23   or should have known that the Celect Filter:

24            a.  Was designed and manufactured in such a manner so as to present an
unreasonable risk of fracture of portions of the device;

25

26            b.  Was designed and manufactured so as to present a unreasonable risk of migration
of the device and/or portions of the device; and/or

27

28            c.  Was designed and manufactured so as to present a unreasonable risk of the device
tilting and/or tearing the vena cava wall;

      d.  Was designed and manufactured to have unreasonable and insufficient strength or structural integrity to withstand normal placement within the human body.

37.    At the time of manufacture and sale of the Celect Filter (prior to 2012), Defendants knew or should have known that using the Celect Filter in its intended use or in a reasonably foreseeable manner created a significant risk of a patient suffering severe health side effects, including, but not limited to: hemorrhage; cardiac/pericardial tamponade; cardiac arrhythmia and other symptoms similar to myocardial infarction; perforations of tissue, vessels and organs; and other severe personal injuries and diseases, which are permanent in nature, including, but not limited to, death, physical pain and mental anguish, scarring and disfigurement, diminished enjoyment of life, continued medical care and treatment due to chronic injuries/illness proximately caused by the device; and the continued risk of requiring additional medical and surgical procedures including general anesthesia, with attendant risk of life threatening complications.

38.    Defendants knew or reasonably should have known that consumers of the Celect Filter would not realize the danger associated with using the device in its intended use and/or in a reasonably foreseeable manner.

39.    Defendants breached their to duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution and sale of the Celect Filter in, among other ways, the following acts and omissions:

      a.  Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the burden of taking safety measures to reduce or avoid harm;

      b.  Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the likelihood of potential harm from other device available for the same purpose;

      c.  Failing to use reasonable care in manufacturing the product and producing a product that differed from their design or specifications or from other typical units from the same production line;

      d.  Failing to use reasonable care to warn or instruct, including pre and post sale, Plaintiff, Plaintiff's physicians, or the general health care community about the Celect Filter's substantially dangerous condition or about facts making the product likely to be dangerous;

e. Failing to perform reasonable pre and post-market testing of the Celect Filter to determine whether or not the product was safe for its intended use;

f. Failing to provide adequate instructions, guidelines, and safety precautions, including pre and post sale, to those persons to whom it was reasonably foreseeable would prescribe, use, and implant the Celect Filter;

g. Advertising, marketing and recommending the use of the Celect Filter, while concealing and failing to disclose or warn of the dangers known by Defendants to be connected with and inherent in the use of the Celect Filter;

h. Representing that the Celect Filter was safe for its intended use when in fact, Defendants knew and should have known the product was not safe for its intended purpose;

i. Continuing manufacture and sale of the Celect Filter with the knowledge that said product was dangerous and not reasonably safe, and failing to comply with FDA good manufacturing regulations;

j. Failing to use reasonable and prudent care in the design, research, manufacture, and development of the Celect Filter so as to avoid the risk of serious harm associated with the use of the Celect Filter;

k. Advertising, marketing, promoting and selling Celect Filter for uses other than as approved and indicated in the product's label;

l. Failing to establish an adequate quality assurance program used in the manufacturing of the Celect Filter.

m. Failing to establish and maintain and adequate post-market surveillance program.

40.    A reasonable manufacturer, distributor, or seller under the same or similar circumstances would not have engaged in the before-mentioned acts and omissions.

41.    As a direct and proximate result of the foregoing and as a result of the acts and/or omissions of Defendants, and each of them, Plaintiff sustained and continues to suffer severe pain and suffering and economic loss. Plaintiff's damages are in an amount in excess of the Ten Thousand Dollar ($10,000) jurisdictional minimum of this Court.

## SECOND CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY - FAILURE TO WARN
### (Against All Defendants)

1    42.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in
2    the foregoing paragraphs as though fully set forth herein.

3    43.    Defendants designed, set specifications, manufactured, prepared, compounded,
4    assembled, processed, marketed, labeled, distributed, and sold the Celect Filter, including the one
5    implanted into Ashley Gilbert, into the stream of commerce and in the course of same, directly
6    advertised and marketed the device to consumers or persons responsible for consumers.

7    44.    At the time Defendants designed, manufactured, prepared, compounded, assembled,
8    processed, marketed, labeled, distributed, and sold the device into the stream of commerce, Defendants
9    knew or should have known the device presented an unreasonable danger to users of the product when
10   put to its intended and reasonably anticipated use.

11   45.    Specifically, Defendants knew or should have known at the time they manufactured,
12   labeled, distributed and sold the Celect Filter, which was implanted in Plaintiff, that the Celect Filter,
13   *inter alia*, posed a significant and higher risk than other available inferior vena cava filters of device
14   failure (fracture, migration, tilting, and perforation of the vena cava wall) and resulting serious injuries.

15   46.    Defendants also knew that that Celect Filter was confirmed to have caused numerous
16   patient deaths through devices failures, but failed to adequately warn Plaintiff's prescribing physicians
17   of the severity or likelihood of complications confirmed to have been caused by the device.

18   47.    Defendants also knew or should have known that the Celect Filter as manufactured did
19   not have the appropriate metal content and, as such, exposed Plaintiff to an increased risk of the device
20   tearing her vena cava and causing death or other serious injury.

21   48.    Therefore, Defendants had a duty to warn of the risk of harm associated with the use of
22   the device and to provide adequate instructions on the safe and proper use of the device. Defendants
23   further had a duty to warn of dangers and proper safety instructions that it became aware of even after
24   the device was distributed and implanted in Plaintiff.

25   49.    Despite this duty, Defendants failed to adequately warn of material facts regarding the
26   safety and efficacy of the Celect Filter, and further failed to adequately provide instructions on the safe
27   and proper use of the device.

28

50.    Plaintiff and her prescribing physician would not have used the Cook Select Filter, had these facts been disclosed.

51.    The health risks associated with the device as described herein are of such a nature that ordinary consumers would not have readily recognized the potential harm.

52.    Plaintiff and her health care providers used the device in a normal, customary, intended, and foreseeable manner, namely as a surgically implanted device used to prevent pulmonary embolisms.

53.    Therefore, the Celect Filter implanted in Plaintiff was defective and unreasonably dangerous at the time of release into the stream of commerce due to inadequate warnings, labeling and/or instructions accompanying the product.

54.    The Celect Filter implanted in Plaintiff was in the same condition as when it was manufactured, inspected, marketed, labeled, promoted, distributed and sold by Defendants.

55.    As a direct and proximate result of the foregoing and as a result of the acts and/or omissions of Defendants, and each of them, Plaintiff sustained and continues to suffer severe pain and suffering and economic loss. Plaintiff's damages are in an amount in excess of the Ten Thousand Dollar ($10,000) jurisdictional minimum of this Court.

### THIRD CAUSE OF ACTION
### STRICT PRODUCTS LIABILITY – DESIGN DEFECTS
### (Against All Defendants Except Courtney Lung)

56.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

57.    At all times relevant to this action, Defendants developed, tested, designed, manufactured, inspected, labeled, promoted, distributed and sold into the stream of commerce the Celect Filter, including the one implanted in Plaintiff.

58.    The Celect Filter was expected to, and did, reach its intended consumers without substantial change in the condition in which it was in when it left Defendants' possession.  In the alternative, any changes that were made to Celect Filter implanted Ashley Gilbert were reasonably foreseeable to Defendants.

59.    The Celect Filter implanted in Plaintiff was defective in design because it failed to perform in a manner reasonably expected by consumers given its nature and intended function.

60.    The Celect Filter implanted in Plaintiff was defective in design, in that its risks of harm exceeded its claimed benefits.

61.    Plaintiff and her health care providers used the Celect Filter in a manner that was reasonably foreseeable to Defendants.

62.    Neither Plaintiff, nor her health care providers could have by the exercise of reasonable care discovered the devices defective condition or perceived its unreasonable dangers prior to her implantation with the device.

63.    As a direct and proximate result of the foregoing and as a result of the acts and/or omissions of Defendants, and each of them, Plaintiff sustained and continues to suffer severe pain and suffering and economic loss. Plaintiff's damages are in an amount in excess of the Ten Thousand Dollar ($10,000) jurisdictional minimum of this Court.

## FOURTH CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT
### (Against All Defendants Except Courtney Lung )

64.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

65.    Defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the Celect Filter that was implanted into Plaintiff.

66.    The Celect Filter implanted in Plaintiff contained conditions, which Defendants did not intend, at the time it left Defendants' control and possession.

67.    For example, the device did not have the material content that its designed required. This made the device far more likely to perforate the vena cava and cause death.

68.    Plaintiff and her health care providers used the Celect Filter in a manner that was reasonably foreseeable to Defendants.

69.    As a result of this condition, the product injured Plaintiff and failed to perform as safely as the ordinary consumer would expect when used in a reasonably foreseeable manner.

70.     As a direct and proximate result of the foregoing and as a result of the acts and/or omissions of Defendants, and each of them, Plaintiff sustained and continues to suffer severe pain and suffering and economic loss. Plaintiff's damages are in an amount in excess of the Ten Thousand Dollar ($10,000) jurisdictional minimum of this Court.

### FIFTH CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
**(Against All Defendants)**

71.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

72.     At all times relevant to this action, Defendants designed, researched, developed, manufactured, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce the Celect Filter for use as a surgically implanted device used to prevent pulmonary embolisms and for uses other than as approved and indicated in the product's instructions, warnings, and labels.

73.     At the time and place of the sale, distribution, and supply of the Defendants' Celect Filter System to Plaintiff by way of Plaintiff's health care providers and medical facilities, Defendants expressly represented and warranted, by labeling materials submitted with the product and direct representations from Courtney Lung, that the Celect Filter was safe and effective for its intended and reasonably foreseeable use.

74.     Defendants knew of the intended and reasonably foreseeable use of the Celect Filter, at the time they marketed, sold, and distributed the product for use by Plaintiff, and impliedly warranted the product to be of merchantable quality, and safe and fit for its intended use.

75.     Defendants impliedly represented and warranted to the healthcare community, Plaintiff and her health care providers, that the Celect Filter was safe and of merchantable quality and fit for the ordinary purpose for which the product was intended and marketed to be used.

76.     The representations and implied warranties made by Defendants were false, misleading, and inaccurate because the Celect Filter was defective, unsafe, unreasonably dangerous, and not of merchantable quality, when used in its intended and/or reasonably foreseeable manner. Specifically, at

the time of Plaintiff's purchase of the Celect Filter from Defendants, through Plaintiff's physicians and medical facilities, it was not in a merchantable condition in that:

    a.  It was designed in such a manner so as to be prone to a statistically high incidence of failure, including fracture, migration, excessive tilting, and perforation of the inferior vena cava;

    b.  It was designed in such a manner so as to result in a statistically significant incidence of injury to the organs and anatomy; and

    c.  It was manufactured in such a manner so that the Celect Filter did not have the material content that is was designed to have, such that it was more likely to tear a person's vena cava.

77.    Plaintiff and her health care providers reasonably relied on the superior skill and judgment of Defendants as the designers, researchers, manufacturers, and sales representatives of the product, as to whether the Celect Filter was of merchantable quality and safe and fit for its intended use, and also relied on the implied warranty of merchantability and fitness for the particular use and purpose for which the Celect Filter was manufactured and sold.

78.    Defendants placed the Celect Filter into the stream of commerce in a defective, unsafe, and unreasonably dangerous condition, and the product was expected to and did reach Plaintiff without substantial change in the condition in which the Celect Filter was manufactured and sold.

79.    Defendants breached their implied warranty because their Celect Filter was not fit for its intended use and purpose.

80.    As a direct and proximate result of the foregoing and as a result of the acts and/or omissions of Defendants, and each of them, Plaintiff sustained and continues to suffer severe pain and suffering and economic loss. Plaintiff's damages are in an amount in excess of the Ten Thousand Dollar ($10,000) jurisdictional minimum of this Court.

### SIXTH CAUSE OF ACTION
### FRUADULENT CONCEALMENT
### (Against All Defendants)

81.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

1     82.    At all times relevant to this cause of action, Defendants negligently, knowingly, willfully,

2 wrongfully and intentionally concealed certain material facts, as previously set forth herein from

3 Plaintiff and her prescribing physicians, including without limitation, that the Celect Filter was not safe,

4 fit, and effective for use as a surgically implanted hernia repair device despite being aware at all relevant

5 times of the dangerous and defective nature of the Celect Filter, as described in this complaint.

6     83.    Defendants concealed, among other facts, the following:

7     a.   Defendants knew at the time they manufactured, labeled, distributed and sold the Celect

8        Filter, which was implanted in Plaintiff, that the Celect Filter, *inter alia*, posed a

9        significant and higher risk than other available inferior vena cava filters of device failure

10       (fracture, migration, tilting, and perforation of the vena cava wall) and resulting serious

11       injuries.

12     b.   Defendants also knew that that Celect Filter was confirmed to have caused numerous

13       patient deaths through devices failures, but failed to adequately warn Plaintiff's

14       prescribing physicians of the severity or likelihood of complications confirmed and/or

15       alleged to have been caused by the device.

16     c.   Defendants also knew or should have known that the Celect Filter, as manufactured, did

17       not have the appropriate metal content and, as such, exposed Plaintiff to an increased risk

18       of the device tearing her vena cava and causing death or other serious injury.

19     d.   That there was no reliable evidence that the device was efficacious or improved patient

20       outcomes.

21     84.    The information distributed by Defendants to the public, the medical community and

22 Plaintiff's prescribing physicians was in the form of verbal communications during sales calls, reports,

23 press releases, advertising campaigns, labeling materials, print advertisements, commercial media

24 containing material representations, which contained omissions and concealment of the truth about the

25 dangers of the use of the Celect Filter. These materials included instructions for use and warning

26 information that was included in the package of the Cook Filter that was implanted in Ashley Gilbert

27 and direct communications Defendants had with Plaintiff's prescribing physicians during sales calls.

28

85.     Defendants' intent and purpose in concealing these material fact was to deceive and defraud Plaintiff's prescribing physicians; to falsely assure them of the quality of the Celect Filter and its fitness for use; and to induce them to request, recommend, prescribe, implant, purchase, and continue to use the Celect Filter.

86.     In reasonable reliance upon marketing and promotional materials and omissions by Defendants, Plaintiff and her prescribing physicians were induced to, and did use the Celect Filter, thereby causing Plaintiff to suffer massive internal bleeding and death.

87.     Defendants knew and had reason to know that Plaintiff and her prescribing physicians did not have the ability to determine the true facts intentionally and/or negligently concealed by Defendants, and would not have prescribed and implanted the Celect Filter, if the true facts regarding the device had not been concealed by Defendants.

88.     Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects in the form of dangerous injuries and damages to persons who are implanted with the Celect Filter.

89.     At the time Defendants failed to disclose and misrepresented the foregoing facts, and at the time Plaintiff used the Celect Filter, Plaintiff and her prescribing physicians were unaware of said Defendants' negligent omissions of material fact.

90.     As a direct and proximate result of the foregoing and as a result of the acts and/or omissions of Defendants, and each of them, Plaintiff sustained and continues to suffer severe pain and suffering and economic loss. Plaintiff's damages are in an amount in excess of the Ten Thousand Dollar ($10,000) jurisdictional minimum of this Court.

**SIXTH CAUSE OF ACTION**
**DECEPTIVE TRADE PRACTICES**
**(Nev. Rev. Stat. Ann. § 42.001)**
**(Against All Defendants)**

91.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

92.     At all times relevant to this action, Defendants designed, researched, developed, manufactured, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the

1    stream of commerce the Celect Filter, including the one implanted in Plaintiff, for use as a surgically

2    implanted device used to prevent pulmonary embolisms and for uses other than as approved and

3    indicated in the product's instructions, warnings, and labels.

4        93.    At all times relevant to this cause of action, Defendants negligently, knowingly, willfully,

5    wrongfully and intentionally concealed certain material facts, as previously set forth herein from

6    Plaintiff and her prescribing physicians, including without limitation, that the Celect Filter was not safe,

7    fit, and effective for use as a surgically implanted IVC filter despite being aware at all relevant times of

8    the dangerous and defective nature of the Celect Filter, as described in this complaint.

9        94.    Defendants concealed, among other facts, the following:

10       a.    Defendants knew at the time they manufactured, labeled, distributed and sold the Celect

11            Filter, which was implanted in Plaintiff, that the Celect Filter, *inter alia*, posed a

12            significant and higher risk than other available inferior vena cava filters of device failure

13            (fracture, migration, tilting, and perforation of the vena cava wall) and resulting serious

14            injuries.

15       b.    Defendants also knew that that Celect Filter was confirmed to have caused numerous

16            patient deaths through devices failures, but failed to adequately warn Plaintiff's

17            prescribing physicians of the severity or likelihood of complications confirmed and/or

18            alleged to have to have been caused by the device.

19       c.    Defendants also knew or should have known that the Celect Filter, as manufactured, did

20            not have the appropriate metal content and, as such, exposed Plaintiff to an increased risk

21            of the device tearing her vena cava, perforating internal organs and causing death or other

22            serious injury.

23       d.    That there was no reliable evidence that the device was efficacious or improved patient

24            outcomes.

25       95.    Plaintiff and her prescribing physicians were unaware of these facts and would not have

26    acted as they did if they had known of the concealed or suppressed facts.

27       96.    As a direct and proximate result of the foregoing and as a result of the acts and/or

28    omissions of Defendants, and each of them, Plaintiff sustained and continues to suffer severe pain and

suffering and economic loss. Plaintiff's damages are in an amount in excess of the Ten Thousand Dollar ($10,000) jurisdictional minimum of this Court.

## PUNITIVE DAMAGES ALLEGATIONS

97.     Plaintiff re-alleges each and every allegation in this Complaint and incorporates each allegation into this Count, as if set forth at length, in its entirety.

98.     Plaintiff is entitled to an award of punitive and exemplary damages based upon Defendants' intentional, willful, knowing, fraudulent, malicious acts, omissions, and conduct, and their complete and total reckless disregard for the public safety and welfare.

99.     Defendants had knowledge of, and were in possession of evidence demonstrating that, the Celect Filter was defective and unreasonably dangerous and had a substantially higher failure rate than did other similar devices on the market.

100.    Defendants were further aware that the Cook Celect filter posed substantially great risk of failure and resulting injury than had ever been disclosed to consumer and in fact offered no proven benefit.

101.    Yet, Defendants failed to:

    a.    Inform or warn Ashley Gilbert or her prescribing physicians of the dangers;

    b.    To establish and maintain an adequate quality and post-market surveillance system; and

    c.    Recall the Celect Filter from the market.

102.    Defendants acted to serve their own interests and having reasons to know and consciously disregarding the substantial risk that their product might kill or significantly harm patients, or significantly injure the rights of others, and consciously pursued a course of conduct knowing that such conduct created a substantial risk of significant harm to other persons.

103.    As a direct, proximate, and legal result of Defendants' acts and omissions a described herein, and Plaintiff's implantation with Defendants' defective product, Plaintiff suffered untimely death.

## PRAYER FOR DAMAGES

**WHEREFORE**, Plaintiff prays for Judgment against all Defendants, and each of them jointly and severally, as follows:

1.  General damages in excess of $10,000;

2.  Medical and other special damages, past, present, and future, according to proof at the time of trial;

3.  Pre-judgment and post-judgment interest pursuant to the laws of the State of Nevada;

4.  Costs of suit incurred herein;

5.  Punitive damages according to proof at time of trial; and

6.  For such other and further relief as the court may deem just and proper.

Dated: March 20, 2016                    WETHERALL GROUP, LTD.

By:  _____
     Peter C. Wetherall
     NV Bar No. 4414
     9345 West Sunset Road, Suite 100
     Las Vegas, NV 89148
     702.838.8500 (office)
     702.837.5081 (fax)
     pwetherall@wetherallgroup.com
     and
     Troy A. Brenes, Esq.
     Pro Hac pending
     Brenes Law Group
     16A Journey, Suite 200
     Aliso Viejo, CA 92656
     949.397.9360 (office)
     949.607.4192 (fax)
     *Attorney for Plaintiff,*
     Ashley Gilbert

1    **IAFD**
     Peter C. Wetherall, Esq.
2    Nevada Bar #4414
     pwetherall@wetherallgroup.com
3    WETHERALL GROUP, LTD.
     9345 West Sunset Road, Suite #100
4    Las Vegas, Nevada 89148
     Ph.  (702) 838-8500
5    Fax (702) 837-5081
     and
6    Troy A. Brenes, Esq.
     Pro Hac pending
7    Brenes Law Group
     16A Journey, Suite 200
8    Aliso Viejo, CA 92656
     949.397.9360 (office)
9    949.607.4192 (fax)
     *Attorney for Plaintiff,*
10   Ashley Gilbert

11   *Attorneys for Plaintiff*

12                          **DISTRICT COURT**

13                     **CLARK COUNTY, NEVADA**

14                              *****

15   ASHLEY GILBERT, an individual,
                                            Case No.:
16              *Plaintiff,*
            vs.                             Dept. No.
17
     COURTNEY LUNG, an individual; COOK
18   GROUP INCORPORATED; a corporation;
     COOK MEDICAL, INCORPORATED; a
19   corporation; MEDICAL ENGINEERING and
     DEVELOPMENT INSTITUTE, INC., a
20   corporation; MED INSTITUTE, INC.;  a
     corporation; COOK MED INSTITUTE, a
21   corporation; COOK DENMARK
     INTERNATIONAL APS, a foreign entity
22   most closely resembling a corporation;
     WILLIAM COOK EUROPE APS; a foreign
23   entity most closely resembling a corporation;
     and DOES 1 through 100 inclusive,
24
                *Defendants.*
25   **INITIAL APPEARANCE FEE DISCLOSURE (NRS CHAPTER 19)**

26

WETHERALL GROUP, LTD.
9345 W. Sunset Road, Suite 100 • Las Vegas, NV 89148
Tel: (702) 838-8500 • Fax: (702) 837-5081

1

Pursuant to NRS Chapter 19, as amended by Senate Bill 106, filing fees are submitted for parties appearing in the above entitled action as indicated below:

ASHLEY GILBERT                    $270.00

Total Remitted (Required)      $270.00

DATED this 20th day of March, 2016.

WETHERALL GROUP, LTD.

By _____

Peter C. Wetherall, Esq., NV Bar No. 4414
9345 West Sunset Road, Suite #100
Las Vegas, Nevada 89148
Phone: (702) 838-8500
Fax:  (702) 837-5081
pwetherall@wetherallgroup.com
and
Troy A. Brenes, Esq.
Pro Hac pending
Brenes Law Group
16A Journey, Suite 200
Aliso Viejo, CA 92656
949.397.9360 (office)
949.607.4192 (fax)
*Attorney for Plaintiff,*
Ashley Gilbert

WETHERALL GROUP, LTD.
9345 W. Sunset Road, Suite 100 • Las Vegas, NV 89148
Tel: (702) 838-8500 • Fax: (702) 837-5081

2

# EXHIBIT 4

SUMM

# District Court

## CLARK COUNTY, NEVADA

ASHLEY GILBERT, an individual,

        Plaintiff,

  vs.

COURTNEY LUNG, an individual; COOK GROUP
INCORPORATED; a corporation; COOK MEDICAL,
INCORPORATED; a corporation; MEDICAL ENGINEERING
and DEVELOPMENT INSTITUTE, INC., a corporation; MED
INSTITUTE, INC.; a corporation; COOK MED INSTITUTE, a
corporation; COOK DENMARK INTERNATIONAL APS, a
foreign entity most closely resembling a corporation; WILLIAM
COOK EUROPE APS; a foreign entity most closely resembling a
corporation; and DOES 1 through 100 inclusive,

        Defendants.

CASE NO.: A-16-733747-C
DEPT. NO.: X

## SUMMONS – CIVIL
  COOK GROUP INCORPORATED

**NOTICE! YOU HAVE BEEN SUED.  THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING
HEARD UNLESS YOU RESPOND WITHIN 20 DAYS.  READ THE INFORMATION BELOW.**

**TO THE DEFENDANT(S):**  A civil Complaint has been filed by the Plaintiff(s) against you for the relief set forth in the
Complaint.

*COOK GROUP INCORPORATED*

1.    If you intend to defend this lawsuit, within 20 days after this Summons is served on you exclusive of the day of
    service, you must do the following:
    (a)    File with the Clerk of this Court, whose address is shown below, a formal written response to the
        Complaint in accordance with the rules of the Court, with the appropriate filing fee.
    (b)    Serve a copy of your response upon the attorney whose name and address is shown below.

2.    Unless you respond, your default will be entered upon application of the Plaintiff(s) and failure to so respond
    will result in a judgment of default against you for the relief demanded in the Complaint, which could result in
    the taking of money or property or other relief requested in the Complaint.

3.    If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response
    may be filed on time.

4.    The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission
    members and legislators each have 45 days after service of this Summons within which to file an Answer or
    other responsive pleading to the Complaint

Submitted by:

*Pet C. Wu*

PETER C. WETHERALL, ESQ.
Nevada Bar No: 4414
WETHERALL GROUP, LTD.
9345 W. Sunset Road, Suite 100
Las Vegas, NV 89148
*Attorneys for Plaintiff*

STEVEN D. GRIERSON
CLERK OF COURT

By: _____    _____
DEPUTY CLERK          Date
Regional Justice Center
200 Lewis Avenue
Las Vegas, NV 89155

# DISTRICT COURT CIVIL COVER SHEET

A-16-733747-C

Clark _____ County, Nevada

Case No. _____

X

*(Assigned by Clerk's Office)*

## I. Party Information *(provide both home and mailing addresses if different)*

| Plaintiff(s) (name/address/phone): | Defendant(s) (name/address/phone): |
|---|---|
| **Ashley Gilbert** | Courtney Lung, an individual, Cook Group Inc., |
| 220 Mission Catalina, Unit 104 | William Cook Europe ApS, Cook Denmark International; |
| Las Vegas, NV 89107 | Cook Medical LLC., Does 1-100 |
| (702)-828-4107 | |
| Attorney (name/address/phone): | Attorney (name/address/phone): |
| Peter C. Wetherall | |
| Wetherall Group, Ltd. | |
| 9345 West Sunset Road, Ste. 100 | |
| Las Vegas, NV 89148   (702)-838-8500 | |

## II. Nature of Controversy *(please select the one most applicable filing type below)*

### Civil Case Filing Types

| Real Property | Negligence | Torts |
|---|---|---|
| **Landlord/Tenant** | **Negligence** | **Other Torts** |
| ☐ Unlawful Detainer | ☐ Auto | ☑ Product Liability |
| ☐ Other Landlord/Tenant | ☐ Premises Liability | ☐ Intentional Misconduct |
| **Title to Property** | ☐ Other Negligence | ☐ Employment Tort |
| ☐ Judicial Foreclosure | **Malpractice** | ☐ Insurance Tort |
| ☐ Other Title to Property | ☐ Medical/Dental | ☐ Other Tort |
| **Other Real Property** | ☐ Legal | |
| ☐ Condemnation/Eminent Domain | ☐ Accounting | |
| ☐ Other Real Property | ☐ Other Malpractice | |

| Probate | Construction Defect & Contract | Judicial Review/Appeal |
|---|---|---|
| **Probate** *(select case type and estate value)* | **Construction Defect** | **Judicial Review** |
| ☐ Summary Administration | ☐ Chapter 40 | ☐ Foreclosure Mediation Case |
| ☐ General Administration | ☐ Other Construction Defect | ☐ Petition to Seal Records |
| ☐ Special Administration | **Contract Case** | ☐ Mental Competency |
| ☐ Set Aside | ☐ Uniform Commercial Code | **Nevada State Agency Appeal** |
| ☐ Trust/Conservatorship | ☐ Building and Construction | ☐ Department of Motor Vehicle |
| ☐ Other Probate | ☐ Insurance Carrier | ☐ Worker's Compensation |
| **Estate Value** | ☐ Commercial Instrument | ☐ Other Nevada State Agency |
| ☐ Over $200,000 | ☐ Collection of Accounts | **Appeal Other** |
| ☐ Between $100,000 and $200,000 | ☐ Employment Contract | ☐ Appeal from Lower Court |
| ☐ Under $100,000 or Unknown | ☐ Other Contract | ☐ Other Judicial Review/Appeal |
| ☐ Under $2,500 | | |

| Civil Writ | | Other Civil Filing |
|---|---|---|
| **Civil Writ** | | **Other Civil Filing** |
| ☐ Writ of Habeas Corpus | ☐ Writ of Prohibition | ☐ Compromise of Minor's Claim |
| ☐ Writ of Mandamus | ☐ Other Civil Writ | ☐ Foreign Judgment |
| ☐ Writ of Quo Warrant | | ☐ Other Civil Matters |

*Business Court filings should be filed using the Business Court civil coversheet.*

| 3/16/16 | /s/ Peter C. Wetherall |
|---|---|
| Date | Signature of initiating party or representative |

*See other side for family-related case filings.*

Electronically Filed
03/20/2016 10:44:04 PM

**CLERK OF THE COURT**

1  **COMP**
   Peter C. Wetherall, Esq.
2  NV Bar No. 4414
   Wetherall Group, Ltd.
3  9345 West Sunset Road, Suite 100
   Las Vegas, NV 89148
4  702.838.8500 (office)
5  702.837.5081 (fax)
   pwetherall@wetherallgroup.com
6  and
7  Troy A. Brenes, Esq.
   Pro Hac pending
8  Brenes Law Group
9  16A Journey, Suite 200
   Aliso Viejo, CA 92656
10 949.397.9360 (office)
11 949.607.4192 (fax)
   *Attorney for Plaintiff,*
12 Ashley Gilbert

13

14                    **DISTRICT COURT**

15              **CLARK COUNTY, NEVADA**

16 ASHLEY GILBERT, an individual,

17                                   )  **Case No.** A-16-733747-C
            *Plaintiff,*             )
18         vs.                       )  **Dept. No.**  X
                                     )
19 COURTNEY LUNG, an individual; COOK )  **COMPLAINT**
20 GROUP INCORPORATED; a corporation; )
   COOK MEDICAL, INCORPORATED; a     )
21 corporation; MEDICAL ENGINEERING and )
   DEVELOPMENT INSTITUTE, INC., a    )
22 corporation; MED INSTITUTE, INC.; a )
   corporation; COOK MED INSTITUTE, a )
23 corporation; COOK DENMARK         )
24 INTERNATIONAL APS, a foreign entity )
   most closely resembling a corporation; )
25 WILLIAM COOK EUROPE APS; a foreign )
   entity most closely resembling a corporation; )
26 and DOES 1 through 100 inclusive,  )
27                                   )
            *Defendants.*            )
28                                   )
                                     )

                          1
               COMPLAINT FOR DAMAGES

1    Comes now Plaintiff ASHLEY GILBERT and complains against Defendants Courtney Lung;

2 Cook Group, Incorporated; Cook Medical, Incorporated; Medical Engineering and Development

3 Institute, Inc.; MED Institute, Inc.; Cook MED Institute, Inc.; Cook Denmark International APS;

4 William Cook Europe APS; and DOES 1 through 100 and alleges as follows:

5              **PARTIES**

6 **Plaintiff**

7    1.  Ashley Gilbert at all time relevant to the complaint resided in Las Vegas, Nevada. On

8 September 25, 2012, she was implanted with a Cook Celect® Vena Cava Filter Set at the University

9 Medical Center in Las Vegas, Nevada. The filter was placed properly and in accordance with labeling

10 materials and instructions provided by the defendants. The filter subsequently tilted with the top of the

11 filter becoming embedded in Ms. Gilbert's vena cava wall. Additionally, all of the struts perforated

12 through her vena cava wall, with five struts perforating into her bowel and one strut coming within two

13 mm of perforating her aorta. This malfunction resulted in severe abdominal pain, cardiac complications,

14 multiple corrective surgical procedures, severe sepsis, and acute kidney injury. Ms. Gilbert brings this

15 complaint against those persons and entities that designed, set specifications, manufactured, marketed,

16 distributed, and sold her Cook Celect® Vena Cava Filter Set implanted.

17 **Defendants**

18    2.  Defendant Courtney Lung is an individual who sold, marketed and delivered the Cook

19 Celect® Vena Cava Filter Set implanted in Ashley Gilbert to her prescribing physicians and/or the

20 University Medical Center. Ms. Lung has been a resident of Clark County, Nevada for over 20 years and has

21 been selling the Cook Celect® Vena Cava Filter Set since it was first cleared by the FDA for use in 2007.

22 Ms. Lung describes her current job duty in her LinkedIn page as "tasked with keeping and identifying

23 new areas of business growth while maintaining existing market share in respective hospital chains and

24 clinics." Ms. Lung was the primary point of contact for educating Ms. Gilbert's prescribing physicians

25 about the device's features, assisting them with understanding the proper use of the device, explaining

26 its risks and benefits, answering their questions, and convincing them to either convert to using the

27 device and/or to continue using the device. Ms. Lung did this by making frequent in person sales calls to

28 Ms. Gilbert's prescribing physicians to promote the device; providing sales brochures, favorable clinical

1    data and other marketing materials to Ms. Gilbert's prescribing physicians; recruiting and/or attempting

2    to recruit Ms. Gilbert's prescribing physicians for educational and training opportunities that promoted

3    the Cook Celect® Vena Cava Filter Set; and at times participating and/or observing Ms. Gilbert's

4    prescribing physicians in placing the device.

5        3.      Defendant Cook Group, Incorporated is an Indiana Corporation with its principal place of

6    business located at 750 Daniels Way, Bloomington, Indiana 47404. Defendants Cook Group

7    Incorporated regularly conducts business in the State of Nevada, and is authorized to do so. At all times

8    relevant to this action, Defendant Cook Group, Incorporated designed, set specifications, manufactured,

9    prepared, compounded, assembled, processed, marketed, distributed, and sold the Cook Celect® Vena

10   Cava Filter Set to be implanted in patients throughout the United States, including Nevada.

11       4.      Defendant Cook Medical, Incorporated is an Indiana Corporation with its principal place

12   of business located at 750 Daniels Way, Bloomington, Indiana 47404. Defendant Cook Group

13   Incorporated regularly conducts business in the State of Nevada, and is authorized to do so. At all times

14   relevant to this action, Defendant Cook Medical, Incorporated designed, set specifications,

15   manufactured, prepared, compounded, assembled, processed, marketed, distributed, and sold the Cook

16   Celect® Vena Cava Filter Set to be implanted in patients throughout the United States, including

17   Nevada.

18       5.      Defendant Medical Engineering and Development Institute, Inc. is an Indiana corporation

19   with a principal place of business located at 750 Daniels Way, Bloomington, Indiana 47404. Defendant

20   Cook Medical Engineering and Development Institute, Inc. regularly conducts business in the State of

21   Nevada, and is authorized to do so.  At all times relevant to this action, Defendant Medical Engineering

22   and Development Institute, Inc., designed, set specifications, manufactured, prepared, compounded,

23   assembled, processed, marketed, distributed, and sold the Cook Celect® Vena Cava Filter Set to be

24   implanted in patients throughout the United States, including Nevada.

25       6.      Defendants MED Institute, Inc. and Cook MED Institute, Inc., (MED = Medical

26   Engineering and Development) are Indiana Corporations with principal of business located at 1 Geddess

27   Way, West Lafayettee, Indiana 47906. Defendants MED Institute, Inc. and Cook MED Institute, Inc.,

28   regularly conduct business in the State of Nevada, and are authorized to do so. At all times relevant to

---

3

COMPLAINT FOR DAMAGES

1   this action, Defendants MED Institute, Inc. and Cook MED Institute, Inc., designed, set specifications,

2   manufactured, prepared, compounded, assembled, processed, marketed, distributed, and sold the Cook

3   Celect® Vena Cava Filter Set to be implanted in patients throughout the United States, including

4   Nevada.

5        7.    Defendant Cook Denmark International APS is a foreign entity based in Denmark, which

6   most closely resembles a corporation. Defendants Cook Group Incorporated regularly conducts business

7   in the State of Nevada, and is authorized to do so. At all times relevant to this action, Defendant Cook

8   Denmark International APS designed, set specifications, manufactured, prepared, compounded,

9   assembled, processed, marketed, distributed, and sold the Cook Celect® Vena Cava Filter Set to be

10   implanted in patients throughout the United States, including Nevada.

11        8.    Defendant William Cook Europe APS is based in Bjaeverskov, Denmark, which most

12   closely resembles a corporation, and regularly conduct business in the State of Nevada, and is authorized

13   to do so. At all times relevant to this action, Defendant William Cook Europe APS designed, set

14   specifications, manufactured, prepared, compounded, assembled, processed, marketed, distributed, and

15   sold the Cook Celect® Vena Cava Filter Set to be implanted in patients throughout the United States,

16   including Nevada.

17        9.    Defendants DOES 1-100, inclusive, designed, set specifications, manufactured, prepared,

18   compounded, assembled, processed, marketed, distributed, and sold the Cook Celect® Vena Cava Filter

19   Set to be implanted in patients throughout the United States, including Nevada. The true names,

20   identities, or capacities, whether individual, associate, corporate or otherwise of defendants, DOES 1

21   through 100, inclusive, are unknown to Plaintiff who, therefore, sues said defendants by such fictitious

22   names.  When the true names, identities or capacities of said fictitiously designated defendants are

23   ascertained, plaintiff will seek leave of Court to amend this complaint to insert the true names, identities,

24   and/or capacities of DOE Defendants, together with the proper charging allegations against said DOE

25   Defendants.

26        10.    All references to "Defendants" hereafter shall refer to ALL defendants, including DOES

27   1 through 100, inclusive, unless otherwise stated.

28   ////

**JURISDICTION AND VENUE**

This Court has jurisdiction in this matter and venue is proper in that the facts and circumstances leading to injuries occurred in Clark County, Nevada and Plaintiff seeks damages in excess of $50,000, exclusive of interest or cost and regardless of comparative liability.

**GENERAL FACTUAL ALLEGATIONS**

11.     Plaintiff brings this case as result of a surgically implanted medical device, known as the Cook Celect® Vena Cava Filter Set (hereafter "Celect Filter"), tilting and tearing her vena cava and bowel in multiple locations, causing numerous serious complications.

12.     The Celect Filter was designed, manufactured, prepared, compounded, assembled, processed, labeled, marketed, distributed, and sold by Defendants starting in 2007 for the prevention of blood clots (thrombi) from travelling from the lower portions of the body to the heart and lungs. At all times relevant hereto, the Celect Filter was widely advertised and promoted by the Defendants, including in the State of Nevada, as safe and effective treatment for prevention of recurrent pulmonary embolism via placement in the vena cava.

13.     An IVC filter, like the Cook Filters, is a device designed to filter blood clots (called "thrombi") that travel from the lower portions of the body to the heart and lungs. IVC filters may be designed to be implanted, either temporarily or permanently, within the vena cava.

14.     The inferior vena cava is a vein that returns blood to the heart from the lower portion of the body. In certain people, and for various reasons, thrombi travel from vessels in the legs and pelvis, through the vena cava into the lungs. Often these thrombi develop in the deep leg veins. The thrombi are called "deep vein thrombosis" or DVT. Once the thrombi reach the lungs they are considered "pulmonary emboli" or PE. An IVC filter, like the Cook IVC Filters, is designed to prevent thromboembolic events.

15.     The Cook Celect® Vena Cava Filter has four (4) anchoring struts for fixation and eight (8) independent secondary struts to improve self-centering and clot trapping.

16.     Defendants sought Food and Drug Administration ("FDA") clearance to market the Celect Filter and/or its components under Section 510(k) of the Medical Device Amendment.

17.  Section 510(k) allows marketing of medical devices if the device is substantially equivalent to other legally marketed predicate devices without formal review for the safety or efficacy of the said device. The FDA explained the difference between the 510(k) process and the more rigorous "premarket approval" process in an amicus brief filed with the Third Circuit in *Horn v. Thoratec Corp.*, 376 F.3d 163, 167 (3d Cir. 2004):

> A manufacturer can obtain an FDA finding of "substantial equivalence" by submitting a premarket notification to the agency in accordance with section 510(k)...A device found to be 'substantially equivalent' to a predicate device is said to be "cleared" by FDA (as opposed to "approved" by the agency under a [premarket approval]). A pre-market notification submitted under 510(k) is thus entirely different from a [pre-market approval] which must include data sufficient to demonstrate that the device is safe and effective. (Emphasis in original).

18. In *Medtronic, Inc. v. Lohr*, 518 U.S. 470,478-79 (1996), the Supreme Court similarly described the 510(k) process, observing:

> If the FDA concludes on the basis of the [manufacturer's] §510(k) notification that the device is 'substantially equivalent' to a pre-existing device, it can be marketed without further regulatory analysis...The §510(k) notification process is by no means comparable to the [premarket approval] process; in contract to the 1,200 hours necessary to complete a PMA review, the §510(k) review is completed in average of 20 hours...Section §510(k) notification requires little information, rarely elicits a negative response from the FDA, and gets process quickly.

19.  Prior to Ashley Gilbert being implanted with a Celect Filter on September 25, 2012, Defendants knew and should have known that the device was defective and unreasonably dangerous for, *inter alia*, the following reasons:

a.  Defendants failed to conduct adequate clinical testing, such as animal studies, to determine how the device would function once permanently implanted in the human body.

b.  Defendants knew and/or should have known that the Celect Filter had an unreasonably and unexpectedly high risk of fracture, migration, excessive tilting and tendency to tear the vena cava once implanted in the human body.  Defendants knew and/or should have known that such failures exposed patients to and in fact had caused serious injuries, including: death; hemorrhage; cardiac/pericardial tamponade; cardiac arrhythmia and other symptoms similar to myocardial infarction;

severe and persistent pain; perforations of tissue, vessels and organs; and inability to remove the device. Further, Defendants knew or should have known that these risks for Celect Filter were and are substantially higher than other similar devices.

c. Further, Defendants knew and/or should have known that the Celect Filter contained conditions, which Defendants did not intend, which resulted in the device not performing as safely and the ordinary consumer would expect. For example, Defendants knew that the Celect Filter did not contain the planned mixture of metals, which resulted in it being more likely to perforate the vena cava.

d. Despite being aware of these risks, Defendants misrepresented, omitted, and/or failed to provide adequate warnings of these risks or instructions for safe use.

## SPECIFIC FACTUAL ALLEGATIONS AS TO PLAINTIFF

20.     On September 25, 2012, Ashley Gilbert was implanted with Cook Celect Filter University Medical Center in Las Vegas, Nevada.

21.     The Celect Filter was properly deployed in accordance with instructions and labeling materials from the Defendants.

22.     The filter subsequently tilted with the top of the filter becoming embedded in Ms. Gilbert's vena cava wall. Additionally, all of the struts perforated through her vena cava wall, with five struts perforating into her bowel and one strut coming within two millimeters of perforating her aorta. This malfunction resulted in severe abdominal pain, cardiac complications, multiple corrective surgical procedures, severe sepsis, acute kidney injury, and significant disfigurement. She was hospitalized for 16 days.

## FRUADULENT CONCEALMENT

23.     Any applicable statutes of limitation have been tolled by the knowing and active concealment and denial of material facts known by Defendants when they had a duty to disclose those facts. They have kept Plaintiff ignorant of vital information essential to the pursuit of their claims, without any fault or lack of diligence on Plaintiff's part, for the purpose of obtaining delay on Plaintiff's part in filing on their causes of action. Defendants' fraudulent concealment did result in such delay.

24.     Defendants are estopped from relying on the statute of limitations defense because Defendants failed to timely disclose, among other things, facts evidencing the defective and unreasonably dangerous nature of the Celect Filter.

25.     Plaintiff and Plaintiff's health care providers could not reasonably have discovered the claims made herein until at the earliest when the device malfunction was discovered in 2015.

26.     The Defendants are and were under a continuing duty to disclose the true character, quality and nature of the device that was implanted in Plaintiff, but instead they concealed them. Defendants' conduct, as described in this complaint, amounts to conduct purposely committed, which Defendants must have realized was dangerous, heedless and reckless, without regard to the consequences or the rights and safety of Plaintiff.

## **CORPORATE/VICARIOUS LIABILITY**

27.     At all times herein mentioned, each of the Defendants was the agent, servant, partner, co-conspirator and/or joint venturer of each of the other Defendants herein and was at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture and rendered substantial assistance and encouragement to the other Defendants, knowing that their collective conduct constituted a breach of duty owed to the Plaintiff.

28.     There exists and, at all times herein mentioned, there existed a unity of interest in ownership between certain Defendants and other certain Defendants such that any individuality and separateness between the certain Defendants has ceased and these Defendants are the alter ego of the other certain Defendants and exerted control over those Defendants. Adherence to the fiction of the separate existence of these certain Defendants as entities distinct from other certain Defendants will permit an abuse of the corporate privilege and would sanction a fraud and/or would promote injustice.

29.     At all times herein mentioned, Defendants, and each of them, were engaged in the business of, or were successors in interest to, entities engaged in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, prescribing and/or advertising for sale, and

1  selling products for use by the Plaintiff.  As such, each Defendant is individually, as well as jointly and

2  severally, liable to the Plaintiff for Plaintiff's damages.

3      30.  At all times herein mentioned, the officers and/or directors of the Defendants named

4  herein participated in, authorized and/or directed the production and promotion of the aforementioned

5  products when they knew, or with the exercise of reasonable care and diligence should have known, of

6  the hazards and dangerous propensities of said products, and thereby actively participated in the tortious

7  conduct that resulted in the injuries suffered by the Plaintiff.

8  **FIRST CAUSE OF ACTION**
   **NEGLIGENCE**

9  **(Against All Defendants)**

10

11      31.  Plaintiff re-alleges and incorporates by reference each and every allegation contained in

12  the foregoing paragraphs as though fully set forth herein.

13      32.  At all times relevant to this cause of action, Defendants were in the business of designing,

14  developing, setting specifications, manufacturing, marketing, selling, and distributing the Celect Filter.

15      33.  Defendants designed, manufactured, marketed, inspected, labeled, promoted, distributed

16  and sold the Celect Filter that was implanted in Plaintiff.

17      34.  Defendants had a duty to exercise reasonable and prudent care in the development,

18  testing, design, manufacture, inspection, marketing, labeling, promotion, distribution and sale of the

19  Celect Filter so as to avoid exposing others to foreseeable and unreasonable risks of harm.

20      35.  Defendants knew or reasonably should have known that the Celect Filter was dangerous

21  or was likely to be dangerous when used in its intended or reasonably foreseeable manner.

22      36.  At the time of manufacture and sale of the Celect Filter (prior to 2012), Defendants knew

23  or should have known that the Celect Filter:

24          a.  Was designed and manufactured in such a manner so as to present an
   unreasonable risk of fracture of portions of the device;

25

26          b.  Was designed and manufactured so as to present a unreasonable risk of migration
   of the device and/or portions of the device; and/or

27

28          c.  Was designed and manufactured so as to present a unreasonable risk of the device
   tilting and/or tearing the vena cava wall;

      d.  Was designed and manufactured to have unreasonable and insufficient strength or structural integrity to withstand normal placement within the human body.

37.    At the time of manufacture and sale of the Celect Filter (prior to 2012), Defendants knew or should have known that using the Celect Filter in its intended use or in a reasonably foreseeable manner created a significant risk of a patient suffering severe health side effects, including, but not limited to: hemorrhage; cardiac/pericardial tamponade; cardiac arrhythmia and other symptoms similar to myocardial infarction; perforations of tissue, vessels and organs; and other severe personal injuries and diseases, which are permanent in nature, including, but not limited to, death, physical pain and mental anguish, scarring and disfigurement, diminished enjoyment of life, continued medical care and treatment due to chronic injuries/illness proximately caused by the device; and the continued risk of requiring additional medical and surgical procedures including general anesthesia, with attendant risk of life threatening complications.

38.    Defendants knew or reasonably should have known that consumers of the Celect Filter would not realize the danger associated with using the device in its intended use and/or in a reasonably foreseeable manner.

39.    Defendants breached their to duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution and sale of the Celect Filter in, among other ways, the following acts and omissions:

    a.  Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the burden of taking safety measures to reduce or avoid harm;

    b.  Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the likelihood of potential harm from other device available for the same purpose;

    c.  Failing to use reasonable care in manufacturing the product and producing a product that differed from their design or specifications or from other typical units from the same production line;

    d.  Failing to use reasonable care to warn or instruct, including pre and post sale, Plaintiff, Plaintiff's physicians, or the general health care community about the Celect Filter's substantially dangerous condition or about facts making the product likely to be dangerous;

e.  Failing to perform reasonable pre and post-market testing of the Celect Filter to determine whether or not the product was safe for its intended use;

f.  Failing to provide adequate instructions, guidelines, and safety precautions, including pre and post sale,  to those persons to whom it was reasonably foreseeable would prescribe, use, and implant the Celect Filter;

g.  Advertising, marketing and recommending the use of the Celect Filter, while concealing and failing to disclose or warn of the dangers known by Defendants to be connected with and inherent in the use of the Celect Filter;

h.  Representing that the Celect Filter was safe for its intended use when in fact, Defendants knew and should have known the product was not safe for its intended purpose;

i.  Continuing manufacture and sale of the Celect Filter with the knowledge that said product was dangerous and not reasonably safe, and failing to comply with FDA good manufacturing regulations;

j.  Failing to use reasonable and prudent care in the design, research, manufacture, and development of the Celect Filter so as to avoid the risk of serious harm associated with the use of the Celect Filter;

k.  Advertising, marketing, promoting and selling Celect Filter for uses other than as approved and indicated in the product's label;

l.  Failing to establish an adequate quality assurance program used in the manufacturing of the Celect Filter.

m.  Failing to establish and maintain and adequate post-market surveillance program.

40.   A reasonable manufacturer, distributor, or seller under the same or similar circumstances would not have engaged in the before-mentioned acts and omissions.

41.   As a direct and proximate result of the foregoing and as a result of the acts and/or omissions of Defendants, and each of them, Plaintiff sustained and continues to suffer severe pain and suffering and economic loss. Plaintiff's damages are in an amount in excess of the Ten Thousand Dollar ($10,000) jurisdictional minimum of this Court.

**SECOND CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY - FAILURE TO WARN**
**(Against All Defendants)**

1      42.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in

2 the foregoing paragraphs as though fully set forth herein.

3      43.    Defendants designed, set specifications, manufactured, prepared, compounded,

4 assembled, processed, marketed, labeled, distributed, and sold the Celect Filter, including the one

5 implanted into Ashley Gilbert, into the stream of commerce and in the course of same, directly

6 advertised and marketed the device to consumers or persons responsible for consumers.

7      44.    At the time Defendants designed, manufactured, prepared, compounded, assembled,

8 processed, marketed, labeled, distributed, and sold the device into the stream of commerce, Defendants

9 knew or should have known the device presented an unreasonable danger to users of the product when

10 put to its intended and reasonably anticipated use.

11      45.    Specifically, Defendants knew or should have known at the time they manufactured,

12 labeled, distributed and sold the Celect Filter, which was implanted in Plaintiff, that the Celect Filter,

13 *inter alia*, posed a significant and higher risk than other available inferior vena cava filters of device

14 failure (fracture, migration, tilting, and perforation of the vena cava wall) and resulting serious injuries.

15      46.    Defendants also knew that that Celect Filter was confirmed to have caused numerous

16 patient deaths through devices failures, but failed to adequately warn Plaintiff's prescribing physicians

17 of the severity or likelihood of complications confirmed to have been caused by the device.

18      47.    Defendants also knew or should have known that the Celect Filter as manufactured did

19 not have the appropriate metal content and, as such, exposed Plaintiff to an increased risk of the device

20 tearing her vena cava and causing death or other serious injury.

21      48.    Therefore, Defendants had a duty to warn of the risk of harm associated with the use of

22 the device and to provide adequate instructions on the safe and proper use of the device. Defendants

23 further had a duty to warn of dangers and proper safety instructions that it became aware of even after

24 the device was distributed and implanted in Plaintiff.

25      49.    Despite this duty, Defendants failed to adequately warn of material facts regarding the

26 safety and efficacy of the Celect Filter, and further failed to adequately provide instructions on the safe

27 and proper use of the device.

28

50. Plaintiff and her prescribing physician would not have used the Cook Celect Filter, had these facts been disclosed.

51. The health risks associated with the device as described herein are of such a nature that ordinary consumers would not have readily recognized the potential harm.

52. Plaintiff and her health care providers used the device in a normal, customary, intended, and foreseeable manner, namely as a surgically implanted device used to prevent pulmonary embolisms.

53. Therefore, the Celect Filter implanted in Plaintiff was defective and unreasonably dangerous at the time of release into the stream of commerce due to inadequate warnings, labeling and/or instructions accompanying the product.

54. The Celect Filter implanted in Plaintiff was in the same condition as when it was manufactured, inspected, marketed, labeled, promoted, distributed and sold by Defendants.

55. As a direct and proximate result of the foregoing and as a result of the acts and/or omissions of Defendants, and each of them, Plaintiff sustained and continues to suffer severe pain and suffering and economic loss. Plaintiff's damages are in an amount in excess of the Ten Thousand Dollar ($10,000) jurisdictional minimum of this Court.

## THIRD CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY – DESIGN DEFECTS
### (Against All Defendants Except Courtney Lung)

56. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

57. At all times relevant to this action, Defendants developed, tested, designed, manufactured, inspected, labeled, promoted, distributed and sold into the stream of commerce the Celect Filter, including the one implanted in Plaintiff.

58. The Celect Filter was expected to, and did, reach its intended consumers without substantial change in the condition in which it was in when it left Defendants' possession. In the alternative, any changes that were made to Celect Filter implanted Ashley Gilbert were reasonably foreseeable to Defendants.

59. The Celect Filter implanted in Plaintiff was defective in design because it failed to perform in a manner reasonably expected by consumers given its nature and intended function.

60.     The Celect Filter implanted in Plaintiff was defective in design, in that its risks of harm exceeded its claimed benefits.

61.     Plaintiff and her health care providers used the Celect Filter in a manner that was reasonably foreseeable to Defendants.

62.     Neither Plaintiff, nor her health care providers could have by the exercise of reasonable care discovered the devices defective condition or perceived its unreasonable dangers prior to her implantation with the device.

63.     As a direct and proximate result of the foregoing and as a result of the acts and/or omissions of Defendants, and each of them, Plaintiff sustained and continues to suffer severe pain and suffering and economic loss. Plaintiff's damages are in an amount in excess of the Ten Thousand Dollar ($10,000) jurisdictional minimum of this Court.

### FOURTH CAUSE OF ACTION
### STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT
**(Against All Defendants Except Courtney Lung )**

64.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

65.     Defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the Celect Filter that was implanted into Plaintiff.

66.     The Celect Filter implanted in Plaintiff contained conditions, which Defendants did not intend, at the time it left Defendants' control and possession.

67.     For example, the device did not have the material content that its designed required. This made the device far more likely to perforate the vena cava and cause death.

68.     Plaintiff and her health care providers used the Celect Filter in a manner that was reasonably foreseeable to Defendants.

69.     As a result of this condition, the product injured Plaintiff and failed to perform as safely as the ordinary consumer would expect when used in a reasonably foreseeable manner.

70.     As a direct and proximate result of the foregoing and as a result of the acts and/or omissions of Defendants, and each of them, Plaintiff sustained and continues to suffer severe pain and suffering and economic loss. Plaintiff's damages are in an amount in excess of the Ten Thousand Dollar ($10,000) jurisdictional minimum of this Court.

## FIFTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Against All Defendants)

71.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

72.     At all times relevant to this action, Defendants designed, researched, developed, manufactured, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce the Celect Filter for use as a surgically implanted device used to prevent pulmonary embolisms and for uses other than as approved and indicated in the product's instructions, warnings, and labels.

73.     At the time and place of the sale, distribution, and supply of the Defendants' Celect Filter System to Plaintiff by way of Plaintiff's health care providers and medical facilities, Defendants expressly represented and warranted, by labeling materials submitted with the product and direct representations from Courtney Lung, that the Celect Filter was safe and effective for its intended and reasonably foreseeable use.

74.     Defendants knew of the intended and reasonably foreseeable use of the Celect Filter, at the time they marketed, sold, and distributed the product for use by Plaintiff, and impliedly warranted the product to be of merchantable quality, and safe and fit for its intended use.

75.     Defendants impliedly represented and warranted to the healthcare community, Plaintiff and her health care providers, that the Celect Filter was safe and of merchantable quality and fit for the ordinary purpose for which the product was intended and marketed to be used.

76.     The representations and implied warranties made by Defendants were false, misleading, and inaccurate because the Celect Filter was defective, unsafe, unreasonably dangerous, and not of merchantable quality, when used in its intended and/or reasonably foreseeable manner. Specifically, at

1 the time of Plaintiff's purchase of the Celect Filter from Defendants, through Plaintiff's physicians and

2 medical facilities, it was not in a merchantable condition in that:

3    a. It was designed in such a manner so as to be prone to a statistically high incidence of

4       failure, including fracture, migration, excessive tilting, and perforation of the inferior

5       vena cava;

6    b. It was designed in such a manner so as to result in a statistically significant incidence of

7       injury to the organs and anatomy; and

8    c. It was manufactured in such a manner so that the Celect Filter did not have the material

9       content that is was designed to have, such that it was more likely to tear a person's vena

10      cava.

11   77.   Plaintiff and her health care providers reasonably relied on the superior skill and

12 judgment of Defendants as the designers, researchers, manufacturers, and sales representatives of the

13 product, as to whether the Celect Filter was of merchantable quality and safe and fit for its intended use,

14 and also relied on the implied warranty of merchantability and fitness for the particular use and purpose

15 for which the Celect Filter was manufactured and sold.

16   78.   Defendants placed the Celect Filter into the stream of commerce in a defective, unsafe,

17 and unreasonably dangerous condition, and the product was expected to and did reach Plaintiff without

18 substantial change in the condition in which the Celect Filter was manufactured and sold.

19   79.   Defendants breached their implied warranty because their Celect Filter was not fit for its

20 intended use and purpose.

21   80.   As a direct and proximate result of the foregoing and as a result of the acts and/or

22 omissions of Defendants, and each of them, Plaintiff sustained and continues to suffer severe pain and

23 suffering and economic loss. Plaintiff's damages are in an amount in excess of the Ten Thousand Dollar

24 ($10,000) jurisdictional minimum of this Court.

25            **SIXTH CAUSE OF ACTION**
              **FRUADULENT CONCEALMENT**
26               **(Against All Defendants)**

27

28   81.   Plaintiff re-alleges and incorporates by reference each and every allegation contained in

the foregoing paragraphs as though fully set forth herein.

82.     At all times relevant to this cause of action, Defendants negligently, knowingly, willfully, wrongfully and intentionally concealed certain material facts, as previously set forth herein from Plaintiff and her prescribing physicians, including without limitation, that the Celect Filter was not safe, fit, and effective for use as a surgically implanted hernia repair device despite being aware at all relevant times of the dangerous and defective nature of the Celect Filter, as described in this complaint.

83.     Defendants concealed, among other facts, the following:

    a.   Defendants knew at the time they manufactured, labeled, distributed and sold the Celect Filter, which was implanted in Plaintiff, that the Celect Filter, *inter alia*, posed a significant and higher risk than other available inferior vena cava filters of device failure (fracture, migration, tilting, and perforation of the vena cava wall) and resulting serious injuries.

    b.   Defendants also knew that that Celect Filter was confirmed to have caused numerous patient deaths through devices failures, but failed to adequately warn Plaintiff's prescribing physicians of the severity or likelihood of complications confirmed and/or alleged to have been caused by the device.

    c.   Defendants also knew or should have known that the Celect Filter, as manufactured, did not have the appropriate metal content and, as such, exposed Plaintiff to an increased risk of the device tearing her vena cava and causing death or other serious injury.

    d.   That there was no reliable evidence that the device was efficacious or improved patient outcomes.

84.     The information distributed by Defendants to the public, the medical community and Plaintiff's prescribing physicians was in the form of verbal communications during sales calls, reports, press releases, advertising campaigns, labeling materials, print advertisements, commercial media containing material representations, which contained omissions and concealment of the truth about the dangers of the use of the Celect Filter. These materials included instructions for use and warning information that was included in the package of the Cook Filter that was implanted in Ashley Gilbert and direct communications Defendants had with Plaintiff's prescribing physicians during sales calls.

85.     Defendants' intent and purpose in concealing these material fact was to deceive and defraud Plaintiff's prescribing physicians; to falsely assure them of the quality of the Celect Filter and its fitness for use; and to induce them to request, recommend, prescribe, implant, purchase, and continue to use the Celect Filter.

86.     In reasonable reliance upon marketing and promotional materials and omissions by Defendants, Plaintiff and her prescribing physicians were induced to, and did use the Celect Filter, thereby causing Plaintiff to suffer massive internal bleeding and death.

87.     Defendants knew and had reason to know that Plaintiff and her prescribing physicians did not have the ability to determine the true facts intentionally and/or negligently concealed by Defendants, and would not have prescribed and implanted the Celect Filter, if the true facts regarding the device had not been concealed by Defendants.

88.     Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects in the form of dangerous injuries and damages to persons who are implanted with the Celect Filter.

89.     At the time Defendants failed to disclose and misrepresented the foregoing facts, and at the time Plaintiff used the Celect Filter, Plaintiff and her prescribing physicians were unaware of said Defendants' negligent omissions of material fact.

90.     As a direct and proximate result of the foregoing and as a result of the acts and/or omissions of Defendants, and each of them, Plaintiff sustained and continues to suffer severe pain and suffering and economic loss. Plaintiff's damages are in an amount in excess of the Ten Thousand Dollar ($10,000) jurisdictional minimum of this Court.

**SIXTH CAUSE OF ACTION**
**DECEPTIVE TRADE PRACTICES**
**(Nev. Rev. Stat. Ann. § 42.001)**
**(Against All Defendants)**

91.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

92.     At all times relevant to this action, Defendants designed, researched, developed, manufactured, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the

1  stream of commerce the Celect Filter, including the one implanted in Plaintiff, for use as a surgically

2  implanted device used to prevent pulmonary embolisms and for uses other than as approved and

3  indicated in the product's instructions, warnings, and labels.

4      93.   At all times relevant to this cause of action, Defendants negligently, knowingly, willfully,

5  wrongfully and intentionally concealed certain material facts, as previously set forth herein from

6  Plaintiff and her prescribing physicians, including without limitation, that the Celect Filter was not safe,

7  fit, and effective for use as a surgically implanted IVC filter despite being aware at all relevant times of

8  the dangerous and defective nature of the Celect Filter, as described in this complaint.

9      94.   Defendants concealed, among other facts, the following:

10        a.  Defendants knew at the time they manufactured, labeled, distributed and sold the Celect

11            Filter, which was implanted in Plaintiff, that the Celect Filter, *inter alia*, posed a

12            significant and higher risk than other available inferior vena cava filters of device failure

13            (fracture, migration, tilting, and perforation of the vena cava wall) and resulting serious

14            injuries.

15        b.  Defendants also knew that that Celect Filter was confirmed to have caused numerous

16            patient deaths through devices failures, but failed to adequately warn Plaintiff's

17            prescribing physicians of the severity or likelihood of complications confirmed and/or

18            alleged to have to have been caused by the device.

19        c.  Defendants also knew or should have known that the Celect Filter, as manufactured, did

20            not have the appropriate metal content and, as such, exposed Plaintiff to an increased risk

21            of the device tearing her vena cava, perforating internal organs and causing death or other

22            serious injury.

23        d.  That there was no reliable evidence that the device was efficacious or improved patient

24            outcomes.

25      95.   Plaintiff and her prescribing physicians were unaware of these facts and would not have

26  acted as they did if they had known of the concealed or suppressed facts.

27      96.   As a direct and proximate result of the foregoing and as a result of the acts and/or

28  omissions of Defendants, and each of them, Plaintiff sustained and continues to suffer severe pain and

suffering and economic loss. Plaintiff's damages are in an amount in excess of the Ten Thousand Dollar ($10,000) jurisdictional minimum of this Court.

## PUNITIVE DAMAGES ALLEGATIONS

97.     Plaintiff re-alleges each and every allegation in this Complaint and incorporates each allegation into this Count, as if set forth at length, in its entirety.

98.     Plaintiff is entitled to an award of punitive and exemplary damages based upon Defendants' intentional, willful, knowing, fraudulent, malicious acts, omissions, and conduct, and their complete and total reckless disregard for the public safety and welfare.

99.     Defendants had knowledge of, and were in possession of evidence demonstrating that, the Celect Filter was defective and unreasonably dangerous and had a substantially higher failure rate than did other similar devices on the market.

100.    Defendants were further aware that the Cook Celect filter posed substantially great risk of failure and resulting injury than had ever been disclosed to consumer and in fact offered no proven benefit.

101.    Yet, Defendants failed to:

a.  Inform or warn Ashley Gilbert or her prescribing physicians of the dangers;

b.  To establish and maintain an adequate quality and post-market surveillance system; and

c.  Recall the Celect Filter from the market.

102.    Defendants acted to serve their own interests and having reasons to know and consciously disregarding the substantial risk that their product might kill or significantly harm patients, or significantly injure the rights of others, and consciously pursued a course of conduct knowing that such conduct created a substantial risk of significant harm to other persons.

103.    As a direct, proximate, and legal result of Defendants' acts and omissions a described herein, and Plaintiff's implantation with Defendants' defective product, Plaintiff suffered untimely death.

## PRAYER FOR DAMAGES

**WHEREFORE**, Plaintiff prays for Judgment against all Defendants, and each of them jointly and severally, as follows:

1.   General damages in excess of $10,000;

2.   Medical and other special damages, past, present, and future, according to proof at the time of trial;

3.   Pre-judgment and post-judgment interest pursuant to the laws of the State of Nevada;

4.   Costs of suit incurred herein;

5.   Punitive damages according to proof at time of trial; and

6.   For such other and further relief as the court may deem just and proper.

Dated:  March 20, 2016                    WETHERALL GROUP, LTD.

By:   _____
          Peter C. Wetherall
          NV Bar No. 4414
          9345 West Sunset Road, Suite 100
          Las Vegas, NV 89148
          702.838.8500 (office)
          702.837.5081 (fax)
          pwetherall@wetherallgroup.com
          and
          Troy A. Brenes, Esq.
          Pro Hac pending
          Brenes Law Group
          16A Journey, Suite 200
          Aliso Viejo, CA 92656
          949.397.9360 (office)
          949.607.4192 (fax)
          *Attorney for Plaintiff,*
          Ashley Gilbert

**IAFD**
Peter C. Wetherall, Esq.
Nevada Bar #4414
pwetherall@wetherallgroup.com
WETHERALL GROUP, LTD.
9345 West Sunset Road, Suite #100
Las Vegas, Nevada 89148
Ph. (702) 838-8500
Fax (702) 837-5081
and
Troy A. Brenes, Esq.
Pro Hac pending
Brenes Law Group
16A Journey, Suite 200
Aliso Viejo, CA 92656
949.397.9360 (office)
949.607.4192 (fax)
*Attorney for Plaintiff,*
Ashley Gilbert

*Attorneys for Plaintiff*

WETHERALL GROUP, LTD.
9345 W. Sunset Road, Suite 100 • Las Vegas, NV 89148
Tel: (702) 838-8500 • Fax: (702) 837-5081

**DISTRICT COURT**

**CLARK COUNTY, NEVADA**

*****

ASHLEY GILBERT, an individual,

*Plaintiff,*

vs.

COURTNEY LUNG, an individual; COOK GROUP INCORPORATED; a corporation; COOK MEDICAL, INCORPORATED; a corporation; MEDICAL ENGINEERING and DEVELOPMENT INSTITUTE, INC., a corporation; MED INSTITUTE, INC.; a corporation; COOK MED INSTITUTE, a corporation; COOK DENMARK INTERNATIONAL APS, a foreign entity most closely resembling a corporation; WILLIAM COOK EUROPE APS; a foreign entity most closely resembling a corporation; and DOES 1 through 100 inclusive,

*Defendants.*

Case No.:

Dept. No.

**INITIAL APPEARANCE FEE DISCLOSURE (NRS CHAPTER 19)**

1     Pursuant to NRS Chapter 19, as amended by Senate Bill 106, filing fees are submitted for

2  parties appearing in the above entitled action as indicated below:

3      ASHLEY GILBERT          $270.00

4      Total Remitted (Required)   $270.00

5      DATED this 20th day of March, 2016.

6                                          WETHERALL GROUP, LTD.

7

8                          By _____
                             Peter C. Wetherall, Esq., NV Bar No. 4414
9                            9345 West Sunset Road, Suite #100
                             Las Vegas, Nevada 89148
10                           Phone: (702) 838-8500
                             Fax:  (702) 837-5081
11                           pwetherall@wetherallgroup.com
                             and
12                           Troy A. Brenes, Esq.
                             Pro Hac pending
13                           Brenes Law Group
                             16A Journey, Suite 200
14                           Aliso Viejo, CA 92656
                             949.397.9360 (office)
15                           949.607.4192 (fax)
                             *Attorney for Plaintiff,*
16                           Ashley Gilbert

17

18

19

20

21

22

23

24

25

26

WETHERALL GROUP, LTD.
9345 W. Sunset Road, Suite 100 • Las Vegas, NV 89148
Tel: (702) 838-8500 • Fax: (702) 837-5081

# EXHIBIT 5

SUMM

# District Court
## CLARK COUNTY, NEVADA

ASHLEY GILBERT, an individual,

        Plaintiff,

    vs.

COURTNEY LUNG, an individual; COOK GROUP
INCORPORATED; a corporation; COOK MEDICAL,
INCORPORATED; a corporation; MEDICAL ENGINEERING
and DEVELOPMENT INSTITUTE, INC., a corporation; MED
INSTITUTE, INC.; a corporation; COOK MED INSTITUTE, a
corporation; COOK DENMARK INTERNATIONAL APS, a
foreign entity most closely resembling a corporation; WILLIAM
COOK EUROPE APS; a foreign entity most closely resembling a
corporation; and DOES 1 through 100 inclusive,

        Defendants.

CASE NO.: A-16-733747-C
DEPT. NO.: X

## SUMMONS – CIVIL
  COOK MEDICAL, INCORPORATED

**NOTICE! YOU HAVE BEEN SUED.  THE COURT MAY DECIDE AGAINST YOU WITHOUT YOUR BEING
HEARD UNLESS YOU RESPOND WITHIN 20 DAYS.  READ THE INFORMATION BELOW.**

**TO THE DEFENDANT(S):**  A civil Complaint has been filed by the Plaintiff(s) against you for the relief set forth in the
Complaint.

### COOK MEDICAL, INCORPORATED

1.    If you intend to defend this lawsuit, within 20 days after this Summons is served on you exclusive of the day of
service, you must do the following:
    (a)    File with the Clerk of this Court, whose address is shown below, a formal written response to the
Complaint in accordance with the rules of the Court, with the appropriate filing fee.
    (b)    Serve a copy of your response upon the attorney whose name and address is shown below.

2.    Unless you respond, your default will be entered upon application of the Plaintiff(s) and failure to so respond
will result in a judgment of default against you for the relief demanded in the Complaint, which could result in
the taking of money or property or other relief requested in the Complaint.

3.    If you intend to seek the advice of an attorney in this matter, you should do so promptly so that your response
may be filed on time.

4.    The State of Nevada, its political subdivisions, agencies, officers, employees, board members, commission
members and legislators each have 45 days after service of this Summons within which to file an Answer or
other responsive pleading to the Complaint

Submitted by:

*Pet C. Wut*
_____
PETER C. WETHERALL, ESQ.
Nevada Bar No: 4414
WETHERALL GROUP, LTD.
9345 W. Sunset Road, Suite 100
Las Vegas, NV 89148
*Attorneys for Plaintiff*

STEVEN D. GRIERSON
CLERK OF COURT

By: _____
DEPUTY CLERK            Date
Regional Justice Center
200 Lewis Avenue
Las Vegas, NV 89155

# DISTRICT COURT CIVIL COVER SHEET    A-16-733747-C

__Clark__ _____ County, Nevada

Case No. _____

*(Assigned by Clerk's Office)*                    X

## I. Party Information *(provide both home and mailing addresses if different)*

| Plaintiff(s) (name/address/phone): | Defendant(s) (name/address/phone): |
|---|---|
| Ashley Gilbert | Courtney Lung, an individual, Cook Group Inc., |
| 220 Mission Catalina, Unit 104 | William Cook Europe ApS, Cook Denmark International; |
| Las Vegas, NV 89107 | Cook Medical LLC., Does 1-100 |
| (702)-828-4107 | |
| Attorney (name/address/phone): | Attorney (name/address/phone): |
| Peter C. Wetherall | |
| Wetherall Group, Ltd. | |
| 9345 West Sunset Road, Ste. 100 | |
| Las Vegas, NV 89148   (702)-838-8500 | |

## II. Nature of Controversy *(please select the one most applicable filing type below)*

### Civil Case Filing Types

| Real Property | Torts | |
|---|---|---|
| **Landlord/Tenant** | **Negligence** | **Other Torts** |
| ☐ Unlawful Detainer | ☐ Auto | ■ Product Liability |
| ☐ Other Landlord/Tenant | ☐ Premises Liability | ☐ Intentional Misconduct |
| **Title to Property** | ☐ Other Negligence | ☐ Employment Tort |
| ☐ Judicial Foreclosure | **Malpractice** | ☐ Insurance Tort |
| ☐ Other Title to Property | ☐ Medical/Dental | ☐ Other Tort |
| **Other Real Property** | ☐ Legal | |
| ☐ Condemnation/Eminent Domain | ☐ Accounting | |
| ☐ Other Real Property | ☐ Other Malpractice | |

| Probate | Construction Defect & Contract | Judicial Review/Appeal |
|---|---|---|
| **Probate** *(select case type and estate value)* | **Construction Defect** | **Judicial Review** |
| ☐ Summary Administration | ☐ Chapter 40 | ☐ Foreclosure Mediation Case |
| ☐ General Administration | ☐ Other Construction Defect | ☐ Petition to Seal Records |
| ☐ Special Administration | **Contract Case** | ☐ Mental Competency |
| ☐ Set Aside | ☐ Uniform Commercial Code | **Nevada State Agency Appeal** |
| ☐ Trust/Conservatorship | ☐ Building and Construction | ☐ Department of Motor Vehicle |
| ☐ Other Probate | ☐ Insurance Carrier | ☐ Worker's Compensation |
| **Estate Value** | ☐ Commercial Instrument | ☐ Other Nevada State Agency |
| ☐ Over $200,000 | ☐ Collection of Accounts | **Appeal Other** |
| ☐ Between $100,000 and $200,000 | ☐ Employment Contract | ☐ Appeal from Lower Court |
| ☐ Under $100,000 or Unknown | ☐ Other Contract | ☐ Other Judicial Review/Appeal |
| ☐ Under $2,500 | | |

| Civil Writ | | Other Civil Filing |
|---|---|---|
| **Civil Writ** | | **Other Civil Filing** |
| ☐ Writ of Habeas Corpus | ☐ Writ of Prohibition | ☐ Compromise of Minor's Claim |
| ☐ Writ of Mandamus | ☐ Other Civil Writ | ☐ Foreign Judgment |
| ☐ Writ of Quo Warrant | | ☐ Other Civil Matters |

*Business Court filings should be filed using the Business Court civil coversheet.*

| 3/16/16 | /s/ Peter C. Wetherall |
|---|---|
| Date | Signature of initiating party or representative |

*See other side for family-related case filings.*

Electronically Filed
03/20/2016 10:44:04 PM

**CLERK OF THE COURT**

1  **COMP**
   Peter C. Wetherall, Esq.
2  NV Bar No. 4414
   Wetherall Group, Ltd.
3  9345 West Sunset Road, Suite 100
   Las Vegas, NV 89148
4  702.838.8500 (office)
   702.837.5081 (fax)
5  pwetherall@wetherallgroup.com
6  and
   Troy A. Brenes, Esq.
7  Pro Hac pending
   Brenes Law Group
8  16A Journey, Suite 200
   Aliso Viejo, CA 92656
9  949.397.9360 (office)
   949.607.4192 (fax)
10 *Attorney for Plaintiff,*
   Ashley Gilbert
11
12
13
14                        **DISTRICT COURT**
15
                      **CLARK COUNTY, NEVADA**
16
   ASHLEY GILBERT, an individual,
17                                        ) **Case No.** A-16-733747-C
              *Plaintiff,*                )
18       vs.                              ) **Dept. No.**  X
                                          )
19 COURTNEY LUNG, an individual; COOK     ) **COMPLAINT**
20 GROUP INCORPORATED; a corporation;     )
   COOK MEDICAL, INCORPORATED; a          )
21 corporation; MEDICAL ENGINEERING and   )
   DEVELOPMENT INSTITUTE, INC., a         )
22 corporation; MED INSTITUTE, INC.; a    )
   corporation; COOK MED INSTITUTE, a     )
23 corporation; COOK DENMARK              )
   INTERNATIONAL APS, a foreign entity    )
24 most closely resembling a corporation; )
   WILLIAM COOK EUROPE APS; a foreign     )
25 entity most closely resembling a corporation; )
   and DOES 1 through 100 inclusive,      )
26                                        )
27            *Defendants.*               )
                                          )
28 _____       )

                          1
                COMPLAINT FOR DAMAGES

1       Comes now Plaintiff ASHLEY GILBERT and complains against Defendants Courtney Lung;

2  Cook Group, Incorporated; Cook Medical, Incorporated; Medical Engineering and Development

3  Institute, Inc.; MED Institute, Inc.; Cook MED Institute, Inc.; Cook Denmark International APS;

4  William Cook Europe APS; and DOES 1 through 100 and alleges as follows:

5                               **PARTIES**

6  **Plaintiff**

7       1.    Ashley Gilbert at all time relevant to the complaint resided in Las Vegas, Nevada. On

8  September 25, 2012, she was implanted with a Cook Celect® Vena Cava Filter Set at the University

9  Medical Center in Las Vegas, Nevada.  The filter was placed properly and in accordance with labeling

10  materials and instructions provided by the defendants.  The filter subsequently tilted with the top of the

11  filter becoming embedded in Ms. Gilbert's vena cava wall. Additionally, all of the struts perforated

12  through her vena cava wall, with five struts perforating into her bowel and one strut coming within two

13  mm of perforating her aorta. This malfunction resulted in severe abdominal pain, cardiac complications,

14  multiple corrective surgical procedures, severe sepsis, and acute kidney injury. Ms. Gilbert brings this

15  complaint against those persons and entities that designed, set specifications, manufactured, marketed,

16  distributed, and sold her Cook Celect® Vena Cava Filter Set implanted.

17  **Defendants**

18       2.    Defendant Courtney Lung is an individual who sold, marketed and delivered the Cook

19  Celect® Vena Cava Filter Set implanted in Ashley Gilbert to her prescribing physicians and/or the

20  University Medical Center. Ms. Lung has been a resident of Clark County, Nevada for over 20 years and has

21  been selling the Cook Celect® Vena Cava Filter Set since it was first cleared by the FDA for use in 2007.

22  Ms. Lung describes her current job duty in her LinkedIn page as "tasked with keeping and identifying

23  new areas of business growth while maintaining existing market share in respective hospital chains and

24  clinics." Ms. Lung was the primary point of contact for educating Ms. Gilbert's prescribing physicians

25  about the device's features, assisting them with understanding the proper use of the device, explaining

26  its risks and benefits, answering their questions, and convincing them to either convert to using the

27  device and/or to continue using the device. Ms. Lung did this by making frequent in person sales calls to

28  Ms. Gilbert's prescribing physicians to promote the device; providing sales brochures, favorable clinical

1   data and other marketing materials to Ms. Gilbert's prescribing physicians; recruiting and/or attempting

2   to recruit Ms. Gilbert's prescribing physicians for educational and training opportunities that promoted

3   the Cook Celect® Vena Cava Filter Set; and at times participating and/or observing Ms. Gilbert's

4   prescribing physicians in placing the device.

5        3.       Defendant Cook Group, Incorporated is an Indiana Corporation with its principal place of

6   business located at 750 Daniels Way, Bloomington, Indiana 47404. Defendants Cook Group

7   Incorporated regularly conducts business in the State of Nevada, and is authorized to do so. At all times

8   relevant to this action, Defendant Cook Group, Incorporated designed, set specifications, manufactured,

9   prepared, compounded, assembled, processed, marketed, distributed, and sold the Cook Celect® Vena

10  Cava Filter Set to be implanted in patients throughout the United States, including Nevada.

11       4.       Defendant Cook Medical, Incorporated is an Indiana Corporation with its principal place

12  of business located at 750 Daniels Way, Bloomington, Indiana 47404. Defendant Cook Group

13  Incorporated regularly conducts business in the State of Nevada, and is authorized to do so. At all times

14  relevant to this action, Defendant Cook Medical, Incorporated designed, set specifications,

15  manufactured, prepared, compounded, assembled, processed, marketed, distributed, and sold the Cook

16  Celect® Vena Cava Filter Set to be implanted in patients throughout the United States, including

17  Nevada.

18       5.       Defendant Medical Engineering and Development Institute, Inc. is an Indiana corporation

19  with a principal place of business located at 750 Daniels Way, Bloomington, Indiana 47404. Defendant

20  Cook Medical Engineering and Development Institute, Inc. regularly conducts business in the State of

21  Nevada, and is authorized to do so.  At all times relevant to this action, Defendant Medical Engineering

22  and Development Institute, Inc., designed, set specifications, manufactured, prepared, compounded,

23  assembled, processed, marketed, distributed, and sold the Cook Celect® Vena Cava Filter Set to be

24  implanted in patients throughout the United States, including Nevada.

25       6.       Defendants MED Institute, Inc. and Cook MED Institute, Inc., (MED = Medical

26  Engineering and Development) are Indiana Corporations with principal of business located at 1 Geddess

27  Way, West Lafayettee, Indiana 47906. Defendants MED Institute, Inc. and Cook MED Institute, Inc.,

28  regularly conduct business in the State of Nevada, and are authorized to do so. At all times relevant to

1   this action, Defendants MED Institute, Inc. and Cook MED Institute, Inc., designed, set specifications,

2   manufactured, prepared, compounded, assembled, processed, marketed, distributed, and sold the Cook

3   Celect® Vena Cava Filter Set to be implanted in patients throughout the United States, including

4   Nevada.

5          7.      Defendant Cook Denmark International APS is a foreign entity based in Denmark, which

6   most closely resembles a corporation. Defendants Cook Group Incorporated regularly conducts business

7   in the State of Nevada, and is authorized to do so. At all times relevant to this action, Defendant Cook

8   Denmark International APS designed, set specifications, manufactured, prepared, compounded,

9   assembled, processed, marketed, distributed, and sold the Cook Celect® Vena Cava Filter Set to be

10  implanted in patients throughout the United States, including Nevada.

11         8.      Defendant William Cook Europe APS is based in Bjaeverskov, Denmark, which most

12  closely resembles a corporation, and regularly conduct business in the State of Nevada, and is authorized

13  to do so. At all times relevant to this action, Defendant William Cook Europe APS designed, set

14  specifications, manufactured, prepared, compounded, assembled, processed, marketed, distributed, and

15  sold the Cook Celect® Vena Cava Filter Set to be implanted in patients throughout the United States,

16  including Nevada.

17         9.      Defendants DOES 1-100, inclusive, designed, set specifications, manufactured, prepared,

18  compounded, assembled, processed, marketed, distributed, and sold the Cook Celect® Vena Cava Filter

19  Set to be implanted in patients throughout the United States, including Nevada. The true names,

20  identities, or capacities, whether individual, associate, corporate or otherwise of defendants, DOES 1

21  through 100, inclusive, are unknown to Plaintiff who, therefore, sues said defendants by such fictitious

22  names.  When the true names, identities or capacities of said fictitiously designated defendants are

23  ascertained, plaintiff will seek leave of Court to amend this complaint to insert the true names, identities,

24  and/or capacities of DOE Defendants, together with the proper charging allegations against said DOE

25  Defendants.

26         10.     All references to "Defendants" hereafter shall refer to ALL defendants, including DOES

27  1 through 100, inclusive, unless otherwise stated.

28  ////

**JURISDICTION AND VENUE**

This Court has jurisdiction in this matter and venue is proper in that the facts and circumstances leading to injuries occurred in Clark County, Nevada and Plaintiff seeks damages in excess of $50,000, exclusive of interest or cost and regardless of comparative liability.

**GENERAL FACTUAL ALLEGATIONS**

11.     Plaintiff brings this case as result of a surgically implanted medical device, known as the Cook Celect® Vena Cava Filter Set (hereafter "Celect Filter"), tilting and tearing her vena cava and bowel in multiple locations, causing numerous serious complications.

12.     The Celect Filter was designed, manufactured, prepared, compounded, assembled, processed, labeled, marketed, distributed, and sold by Defendants starting in 2007 for the prevention of blood clots (thrombi) from travelling from the lower portions of the body to the heart and lungs. At all times relevant hereto, the Celect Filter was widely advertised and promoted by the Defendants, including in the State of Nevada, as safe and effective treatment for prevention of recurrent pulmonary embolism via placement in the vena cava.

13.     An IVC filter, like the Cook Filters, is a device designed to filter blood clots (called "thrombi") that travel from the lower portions of the body to the heart and lungs. IVC filters may be designed to be implanted, either temporarily or permanently, within the vena cava.

14.     The inferior vena cava is a vein that returns blood to the heart from the lower portion of the body. In certain people, and for various reasons, thrombi travel from vessels in the legs and pelvis, through the vena cava into the lungs. Often these thrombi develop in the deep leg veins. The thrombi are called "deep vein thrombosis" or DVT. Once the thrombi reach the lungs they are considered "pulmonary emboli" or PE. An IVC filter, like the Cook IVC Filters, is designed to prevent thromboembolic events.

15.     The Cook Celect® Vena Cava Filter has four (4) anchoring struts for fixation and eight (8) independent secondary struts to improve self-centering and clot trapping.

16.     Defendants sought Food and Drug Administration ("FDA") clearance to market the Celect Filter and/or its components under Section 510(k) of the Medical Device Amendment.

17.     Section 510(k) allows marketing of medical devices if the device is substantially equivalent to other legally marketed predicate devices without formal review for the safety or efficacy of the said device. The FDA explained the difference between the 510(k) process and the more rigorous "premarket approval" process in an amicus brief filed with the Third Circuit in *Horn v. Thoratec Corp.*, 376 F.3d 163, 167 (3d Cir. 2004):

> A manufacturer can obtain an FDA finding of "substantial equivalence" by submitting a premarket notification to the agency in accordance with section 510(k)...A device found to be 'substantially equivalent' to a predicate device is said to be "cleared" by FDA (as opposed to "approved" by the agency under a [premarket approval]). A pre-market notification submitted under 510(k) is thus entirely different from a [pre-market approval] which must include data sufficient to demonstrate that the device is safe and effective. (Emphasis in original).

18. In *Medtronic, Inc. v. Lohr*, 518 U.S. 470,478-79 (1996), the Supreme Court similarly described the 510(k) process, observing:

> If the FDA concludes on the basis of the [manufacturer's] §510(k) notification that the device is 'substantially equivalent' to a pre-existing device, it can be marketed without further regulatory analysis...The §510(k) notification process is by no means comparable to the [premarket approval] process; in contract to the 1,200 hours necessary to complete a PMA review, the §510(k) review is completed in average of 20 hours...Section §510(k) notification requires little information, rarely elicits a negative response from the FDA, and gets process quickly.

19.     Prior to Ashley Gilbert being implanted with a Celect Filter on September 25, 2012, Defendants knew and should have known that the device was defective and unreasonably dangerous for, *inter alia*, the following reasons:

a.   Defendants failed to conduct adequate clinical testing, such as animal studies, to determine how the device would function once permanently implanted in the human body.

b.   Defendants knew and/or should have known that the Celect Filter had an unreasonably and unexpectedly high risk of fracture, migration, excessive tilting and tendency to tear the vena cava once implanted in the human body.  Defendants knew and/or should have known that such failures exposed patients to and in fact had caused serious injuries, including: death; hemorrhage; cardiac/pericardial tamponade; cardiac arrhythmia and other symptoms similar to myocardial infarction;

---

6
COMPLAINT FOR DAMAGES

1  severe and persistent pain; perforations of tissue, vessels and organs; and inability to remove the device.

2  Further, Defendants knew or should have known that these risks for Celect Filter were and are

3  substantially higher than other similar devices.

4      c.  Further, Defendants knew and/or should have known that the Celect Filter contained

5  conditions, which Defendants did not intend, which resulted in the device not performing as safely and

6  the ordinary consumer would expect. For example, Defendants knew that the Celect Filter did not

7  contain the planned mixture of metals, which resulted in it being more likely to perforate the vena cava.

8      d.  Despite being aware of these risks, Defendants misrepresented, omitted, and/or failed to

9  provide adequate warnings of these risks or instructions for safe use.

10  **SPECIFIC FACTUAL ALLEGATIONS AS TO PLAINTIFF**

11

12  20.  On September 25, 2012, Ashley Gilbert was implanted with Cook Celect Filter

13  University Medical Center in Las Vegas, Nevada.

14  21.  The Celect Filter was properly deployed in accordance with instructions and labeling

15  materials from the Defendants.

16  22.  The filter subsequently tilted with the top of the filter becoming embedded in Ms.

17  Gilbert's vena cava wall. Additionally, all of the struts perforated through her vena cava wall, with five

18  struts perforating into her bowel and one strut coming within two millimeters of perforating her aorta.

19  This malfunction resulted in severe abdominal pain, cardiac complications, multiple corrective surgical

20  procedures, severe sepsis, acute kidney injury, and significant disfigurement. She was hospitalized for

21  16 days.

22

23  **FRUADULENT CONCEALMENT**

24  23.  Any applicable statutes of limitation have been tolled by the knowing and active

25  concealment and denial of material facts known by Defendants when they had a duty to disclose those

26  facts.  They have kept Plaintiff ignorant of vital information essential to the pursuit of their claims,

27  without any fault or lack of diligence on Plaintiff's part, for the purpose of obtaining delay on Plaintiff's

28  part in filing on their causes of action. Defendants' fraudulent concealment did result in such delay.

24.     Defendants are estopped from relying on the statute of limitations defense because Defendants failed to timely disclose, among other things, facts evidencing the defective and unreasonably dangerous nature of the Celect Filter.

25.     Plaintiff and Plaintiff's health care providers could not reasonably have discovered the claims made herein until at the earliest when the device malfunction was discovered in 2015.

26.     The Defendants are and were under a continuing duty to disclose the true character, quality and nature of the device that was implanted in Plaintiff, but instead they concealed them. Defendants' conduct, as described in this complaint, amounts to conduct purposely committed, which Defendants must have realized was dangerous, heedless and reckless, without regard to the consequences or the rights and safety of Plaintiff.

## CORPORATE/VICARIOUS LIABILITY

27.     At all times herein mentioned, each of the Defendants was the agent, servant, partner, co-conspirator and/or joint venturer of each of the other Defendants herein and was at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture and rendered substantial assistance and encouragement to the other Defendants, knowing that their collective conduct constituted a breach of duty owed to the Plaintiff.

28.     There exists and, at all times herein mentioned, there existed a unity of interest in ownership between certain Defendants and other certain Defendants such that any individuality and separateness between the certain Defendants has ceased and these Defendants are the alter ego of the other certain Defendants and exerted control over those Defendants.  Adherence to the fiction of the separate existence of these certain Defendants as entities distinct from other certain Defendants will permit an abuse of the corporate privilege and would sanction a fraud and/or would promote injustice.

29.     At all times herein mentioned, Defendants, and each of them, were engaged in the business of, or were successors in interest to, entities engaged in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, prescribing and/or advertising for sale, and

1 | selling products for use by the Plaintiff. As such, each Defendant is individually, as well as jointly and
2 | severally, liable to the Plaintiff for Plaintiff's damages.

3 |      30.    At all times herein mentioned, the officers and/or directors of the Defendants named
4 | herein participated in, authorized and/or directed the production and promotion of the aforementioned
5 | products when they knew, or with the exercise of reasonable care and diligence should have known, of
6 | the hazards and dangerous propensities of said products, and thereby actively participated in the tortious
7 | conduct that resulted in the injuries suffered by the Plaintiff.

8 | <div align="center">**FIRST CAUSE OF ACTION**<br>**NEGLIGENCE**</div>
9 | <div align="center">**(Against All Defendants)**</div>

10 |

11 |      31.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in
12 | the foregoing paragraphs as though fully set forth herein.

13 |      32.    At all times relevant to this cause of action, Defendants were in the business of designing,
14 | developing, setting specifications, manufacturing, marketing, selling, and distributing the Celect Filter.

15 |      33.    Defendants designed, manufactured, marketed, inspected, labeled, promoted, distributed
16 | and sold the Celect Filter that was implanted in Plaintiff.

17 |      34.    Defendants had a duty to exercise reasonable and prudent care in the development,
18 | testing, design, manufacture, inspection, marketing, labeling, promotion, distribution and sale of the
19 | Celect Filter so as to avoid exposing others to foreseeable and unreasonable risks of harm.

20 |      35.    Defendants knew or reasonably should have known that the Celect Filter was dangerous
21 | or was likely to be dangerous when used in its intended or reasonably foreseeable manner.

22 |      36.    At the time of manufacture and sale of the Celect Filter (prior to 2012), Defendants knew
23 | or should have known that the Celect Filter:

24 |      a.   Was designed and manufactured in such a manner so as to present an unreasonable risk of fracture of portions of the device;

25 |

26 |      b.   Was designed and manufactured so as to present a unreasonable risk of migration of the device and/or portions of the device; and/or

27 |

28 |      c.   Was designed and manufactured so as to present a unreasonable risk of the device tilting and/or tearing the vena cava wall;

<div align="center">9<br>COMPLAINT FOR DAMAGES</div>

d. Was designed and manufactured to have unreasonable and insufficient strength or structural integrity to withstand normal placement within the human body.

37. At the time of manufacture and sale of the Celect Filter (prior to 2012), Defendants knew or should have known that using the Celect Filter in its intended use or in a reasonably foreseeable manner created a significant risk of a patient suffering severe health side effects, including, but not limited to: hemorrhage; cardiac/pericardial tamponade; cardiac arrhythmia and other symptoms similar to myocardial infarction; perforations of tissue, vessels and organs; and other severe personal injuries and diseases, which are permanent in nature, including, but not limited to, death, physical pain and mental anguish, scarring and disfigurement, diminished enjoyment of life, continued medical care and treatment due to chronic injuries/illness proximately caused by the device; and the continued risk of requiring additional medical and surgical procedures including general anesthesia, with attendant risk of life threatening complications.

38. Defendants knew or reasonably should have known that consumers of the Celect Filter would not realize the danger associated with using the device in its intended use and/or in a reasonably foreseeable manner.

39. Defendants breached their to duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution and sale of the Celect Filter in, among other ways, the following acts and omissions:

    a. Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the burden of taking safety measures to reduce or avoid harm;

    b. Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the likelihood of potential harm from other device available for the same purpose;

    c. Failing to use reasonable care in manufacturing the product and producing a product that differed from their design or specifications or from other typical units from the same production line;

    d. Failing to use reasonable care to warn or instruct, including pre and post sale, Plaintiff, Plaintiff's physicians, or the general health care community about the Celect Filter's substantially dangerous condition or about facts making the product likely to be dangerous;

e.  Failing to perform reasonable pre and post-market testing of the Celect Filter to determine whether or not the product was safe for its intended use;

f.  Failing to provide adequate instructions, guidelines, and safety precautions, including pre and post sale, to those persons to whom it was reasonably foreseeable would prescribe, use, and implant the Celect Filter;

g.  Advertising, marketing and recommending the use of the Celect Filter, while concealing and failing to disclose or warn of the dangers known by Defendants to be connected with and inherent in the use of the Celect Filter;

h.  Representing that the Celect Filter was safe for its intended use when in fact, Defendants knew and should have known the product was not safe for its intended purpose;

i.  Continuing manufacture and sale of the Celect Filter with the knowledge that said product was dangerous and not reasonably safe, and failing to comply with FDA good manufacturing regulations;

j.  Failing to use reasonable and prudent care in the design, research, manufacture, and development of the Celect Filter so as to avoid the risk of serious harm associated with the use of the Celect Filter;

k.  Advertising, marketing, promoting and selling Celect Filter for uses other than as approved and indicated in the product's label;

l.  Failing to establish an adequate quality assurance program used in the manufacturing of the Celect Filter.

m. Failing to establish and maintain and adequate post-market surveillance program.

40.  A reasonable manufacturer, distributor, or seller under the same or similar circumstances would not have engaged in the before-mentioned acts and omissions.

41.  As a direct and proximate result of the foregoing and as a result of the acts and/or omissions of Defendants, and each of them, Plaintiff sustained and continues to suffer severe pain and suffering and economic loss. Plaintiff's damages are in an amount in excess of the Ten Thousand Dollar ($10,000) jurisdictional minimum of this Court.

**SECOND CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY - FAILURE TO WARN**
**(Against All Defendants)**

1       42.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in

2   the foregoing paragraphs as though fully set forth herein.

3       43.    Defendants designed, set specifications, manufactured, prepared, compounded,

4   assembled, processed, marketed, labeled, distributed, and sold the Celect Filter, including the one

5   implanted into Ashley Gilbert, into the stream of commerce and in the course of same, directly

6   advertised and marketed the device to consumers or persons responsible for consumers.

7       44.    At the time Defendants designed, manufactured, prepared, compounded, assembled,

8   processed, marketed, labeled, distributed, and sold the device into the stream of commerce, Defendants

9   knew or should have known the device presented an unreasonable danger to users of the product when

10  put to its intended and reasonably anticipated use.

11      45.    Specifically, Defendants knew or should have known at the time they manufactured,

12  labeled, distributed and sold the Celect Filter, which was implanted in Plaintiff, that the Celect Filter,

13  *inter alia*, posed a significant and higher risk than other available inferior vena cava filters of device

14  failure (fracture, migration, tilting, and perforation of the vena cava wall) and resulting serious injuries.

15      46.    Defendants also knew that that Celect Filter was confirmed to have caused numerous

16  patient deaths through devices failures, but failed to adequately warn Plaintiff's prescribing physicians

17  of the severity or likelihood of complications confirmed to have been caused by the device.

18      47.    Defendants also knew or should have known that the Celect Filter as manufactured did

19  not have the appropriate metal content and, as such, exposed Plaintiff to an increased risk of the device

20  tearing her vena cava and causing death or other serious injury.

21      48.    Therefore, Defendants had a duty to warn of the risk of harm associated with the use of

22  the device and to provide adequate instructions on the safe and proper use of the device. Defendants

23  further had a duty to warn of dangers and proper safety instructions that it became aware of even after

24  the device was distributed and implanted in Plaintiff.

25      49.    Despite this duty, Defendants failed to adequately warn of material facts regarding the

26  safety and efficacy of the Celect Filter, and further failed to adequately provide instructions on the safe

27  and proper use of the device.

28

1   50. Plaintiff and her prescribing physician would not have used the Cook Celect Filter, had

2 these facts been disclosed.

3   51. The health risks associated with the device as described herein are of such a nature that

4 ordinary consumers would not have readily recognized the potential harm.

5   52. Plaintiff and her health care providers used the device in a normal, customary, intended,

6 and foreseeable manner, namely as a surgically implanted device used to prevent pulmonary embolisms.

7   53. Therefore, the Celect Filter implanted in Plaintiff was defective and unreasonably

8 dangerous at the time of release into the stream of commerce due to inadequate warnings, labeling

9 and/or instructions accompanying the product.

10   54. The Celect Filter implanted in Plaintiff was in the same condition as when it was

11 manufactured, inspected, marketed, labeled, promoted, distributed and sold by Defendants.

12   55. As a direct and proximate result of the foregoing and as a result of the acts and/or

13 omissions of Defendants, and each of them, Plaintiff sustained and continues to suffer severe pain and

14 suffering and economic loss. Plaintiff's damages are in an amount in excess of the Ten Thousand Dollar

15 ($10,000) jurisdictional minimum of this Court.

16
<div align="center">

**THIRD CAUSE OF ACTION**
**STRICT PRODUCTS LIABILITY – DESIGN DEFECTS**
**(Against All Defendants Except Courtney Lung)**

</div>

17

18

19   56. Plaintiff re-alleges and incorporates by reference each and every allegation contained in

20 the foregoing paragraphs as though fully set forth herein.

21   57. At all times relevant to this action, Defendants developed, tested, designed,

22 manufactured, inspected, labeled, promoted, distributed and sold into the stream of commerce the Celect

23 Filter, including the one implanted in Plaintiff.

24   58. The Celect Filter was expected to, and did, reach its intended consumers without

25 substantial change in the condition in which it was in when it left Defendants' possession.  In the

26 alternative, any changes that were made to Celect Filter implanted Ashley Gilbert were reasonably

27 foreseeable to Defendants.

28   59. The Celect Filter implanted in Plaintiff was defective in design because it failed to

perform in a manner reasonably expected by consumers given its nature and intended function.

60.     The Celect Filter implanted in Plaintiff was defective in design, in that its risks of harm exceeded its claimed benefits.

61.     Plaintiff and her health care providers used the Celect Filter in a manner that was reasonably foreseeable to Defendants.

62.     Neither Plaintiff, nor her health care providers could have by the exercise of reasonable care discovered the devices defective condition or perceived its unreasonable dangers prior to her implantation with the device.

63.     As a direct and proximate result of the foregoing and as a result of the acts and/or omissions of Defendants, and each of them, Plaintiff sustained and continues to suffer severe pain and suffering and economic loss. Plaintiff's damages are in an amount in excess of the Ten Thousand Dollar ($10,000) jurisdictional minimum of this Court.

## FOURTH CAUSE OF ACTION
## STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT
### (Against All Defendants Except Courtney Lung )

64.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

65.     Defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the Celect Filter that was implanted into Plaintiff.

66.     The Celect Filter implanted in Plaintiff contained conditions, which Defendants did not intend, at the time it left Defendants' control and possession.

67.     For example, the device did not have the material content that its designed required. This made the device far more likely to perforate the vena cava and cause death.

68.     Plaintiff and her health care providers used the Celect Filter in a manner that was reasonably foreseeable to Defendants.

69.     As a result of this condition, the product injured Plaintiff and failed to perform as safely as the ordinary consumer would expect when used in a reasonably foreseeable manner.

70.     As a direct and proximate result of the foregoing and as a result of the acts and/or omissions of Defendants, and each of them, Plaintiff sustained and continues to suffer severe pain and suffering and economic loss. Plaintiff's damages are in an amount in excess of the Ten Thousand Dollar ($10,000) jurisdictional minimum of this Court.

## FIFTH CAUSE OF ACTION
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Against All Defendants)

71.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

72.     At all times relevant to this action, Defendants designed, researched, developed, manufactured, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce the Celect Filter for use as a surgically implanted device used to prevent pulmonary embolisms and for uses other than as approved and indicated in the product's instructions, warnings, and labels.

73.     At the time and place of the sale, distribution, and supply of the Defendants' Celect Filter System to Plaintiff by way of Plaintiff's health care providers and medical facilities, Defendants expressly represented and warranted, by labeling materials submitted with the product and direct representations from Courtney Lung, that the Celect Filter was safe and effective for its intended and reasonably foreseeable use.

74.     Defendants knew of the intended and reasonably foreseeable use of the Celect Filter, at the time they marketed, sold, and distributed the product for use by Plaintiff, and impliedly warranted the product to be of merchantable quality, and safe and fit for its intended use.

75.     Defendants impliedly represented and warranted to the healthcare community, Plaintiff and her health care providers, that the Celect Filter was safe and of merchantable quality and fit for the ordinary purpose for which the product was intended and marketed to be used.

76.     The representations and implied warranties made by Defendants were false, misleading, and inaccurate because the Celect Filter was defective, unsafe, unreasonably dangerous, and not of merchantable quality, when used in its intended and/or reasonably foreseeable manner. Specifically, at

the time of Plainitff's purchase of the Celect Filter from Defendants, through Plaintiff's physicians and medical facilities, it was not in a merchantable condition in that:

      a. It was designed in such a manner so as to be prone to a statistically high incidence of failure, including fracture, migration, excessive tilting, and perforation of the inferior vena cava;

      b. It was designed in such a manner so as to result in a statistically significant incidence of injury to the organs and anatomy; and

      c. It was manufactured in such a manner so that the Celect Filter did not have the material content that is was designed to have, such that it was more likely to tear a person's vena cava.

77.     Plaintiff and her health care providers reasonably relied on the superior skill and judgment of Defendants as the designers, researchers, manufacturers, and sales representatives of the product, as to whether the Celect Filter was of merchantable quality and safe and fit for its intended use, and also relied on the implied warranty of merchantability and fitness for the particular use and purpose for which the Celect Filter was manufactured and sold.

78.     Defendants placed the Celect Filter into the stream of commerce in a defective, unsafe, and unreasonably dangerous condition, and the product was expected to and did reach Plaintiff without substantial change in the condition in which the Celect Filter was manufactured and sold.

79.     Defendants breached their implied warranty because their Celect Filter was not fit for its intended use and purpose.

80.     As a direct and proximate result of the foregoing and as a result of the acts and/or omissions of Defendants, and each of them, Plaintiff sustained and continues to suffer severe pain and suffering and economic loss. Plaintiff's damages are in an amount in excess of the Ten Thousand Dollar ($10,000) jurisdictional minimum of this Court.

<div align="center">

**SIXTH CAUSE OF ACTION**
**FRUADULENT CONCEALMENT**
**(Against All Defendants)**

</div>

81.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

82.     At all times relevant to this cause of action, Defendants negligently, knowingly, willfully, wrongfully and intentionally concealed certain material facts, as previously set forth herein from Plaintiff and her prescribing physicians, including without limitation, that the Celect Filter was not safe, fit, and effective for use as a surgically implanted hernia repair device despite being aware at all relevant times of the dangerous and defective nature of the Celect Filter, as described in this complaint.

83.     Defendants concealed, among other facts, the following:

a.  Defendants knew at the time they manufactured, labeled, distributed and sold the Celect Filter, which was implanted in Plaintiff, that the Celect Filter, *inter alia*, posed a significant and higher risk than other available inferior vena cava filters of device failure (fracture, migration, tilting, and perforation of the vena cava wall) and resulting serious injuries.

b.  Defendants also knew that that Celect Filter was confirmed to have caused numerous patient deaths through devices failures, but failed to adequately warn Plaintiff's prescribing physicians of the severity or likelihood of complications confirmed and/or alleged to have been caused by the device.

c.  Defendants also knew or should have known that the Celect Filter, as manufactured, did not have the appropriate metal content and, as such, exposed Plaintiff to an increased risk of the device tearing her vena cava and causing death or other serious injury.

d.  That there was no reliable evidence that the device was efficacious or improved patient outcomes.

84.     The information distributed by Defendants to the public, the medical community and Plaintiff's prescribing physicians was in the form of verbal communications during sales calls, reports, press releases, advertising campaigns, labeling materials, print advertisements, commercial media containing material representations, which contained omissions and concealment of the truth about the dangers of the use of the Celect Filter. These materials included instructions for use and warning information that was included in the package of the Cook Filter that was implanted in Ashley Gilbert and direct communications Defendants had with Plaintiff's prescribing physicians during sales calls.

85.     Defendants' intent and purpose in concealing these material fact was to deceive and defraud Plaintiff's prescribing physicians; to falsely assure them of the quality of the Celect Filter and its fitness for use; and to induce them to request, recommend, prescribe, implant, purchase, and continue to use the Celect Filter.

86.     In reasonable reliance upon marketing and promotional materials and omissions by Defendants, Plaintiff and her prescribing physicians were induced to, and did use the Celect Filter, thereby causing Plaintiff to suffer massive internal bleeding and death.

87.     Defendants knew and had reason to know that Plaintiff and her prescribing physicians did not have the ability to determine the true facts intentionally and/or negligently concealed by Defendants, and would not have prescribed and implanted the Celect Filter, if the true facts regarding the device had not been concealed by Defendants.

88.     Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects in the form of dangerous injuries and damages to persons who are implanted with the Celect Filter.

89.     At the time Defendants failed to disclose and misrepresented the foregoing facts, and at the time Plaintiff used the Celect Filter, Plaintiff and her prescribing physicians were unaware of said Defendants' negligent omissions of material fact.

90.     As a direct and proximate result of the foregoing and as a result of the acts and/or omissions of Defendants, and each of them, Plaintiff sustained and continues to suffer severe pain and suffering and economic loss. Plaintiff's damages are in an amount in excess of the Ten Thousand Dollar ($10,000) jurisdictional minimum of this Court.

**SIXTH CAUSE OF ACTION**
**DECEPTIVE TRADE PRACTICES**
**(Nev. Rev. Stat. Ann. § 42.001)**
**(Against All Defendants)**

91.     Plaintiff re-alleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

92.     At all times relevant to this action, Defendants designed, researched, developed, manufactured, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the

stream of commerce the Celect Filter, including the one implanted in Plaintiff, for use as a surgically implanted device used to prevent pulmonary embolisms and for uses other than as approved and indicated in the product's instructions, warnings, and labels.

93.   At all times relevant to this cause of action, Defendants negligently, knowingly, willfully, wrongfully and intentionally concealed certain material facts, as previously set forth herein from Plaintiff and her prescribing physicians, including without limitation, that the Celect Filter was not safe, fit, and effective for use as a surgically implanted IVC filter despite being aware at all relevant times of the dangerous and defective nature of the Celect Filter, as described in this complaint.

94.   Defendants concealed, among other facts, the following:

a.   Defendants knew at the time they manufactured, labeled, distributed and sold the Celect Filter, which was implanted in Plaintiff, that the Celect Filter, *inter alia*, posed a significant and higher risk than other available inferior vena cava filters of device failure (fracture, migration, tilting, and perforation of the vena cava wall) and resulting serious injuries.

b.   Defendants also knew that that Celect Filter was confirmed to have caused numerous patient deaths through devices failures, but failed to adequately warn Plaintiff's prescribing physicians of the severity or likelihood of complications confirmed and/or alleged to have to have been caused by the device.

c.   Defendants also knew or should have known that the Celect Filter, as manufactured, did not have the appropriate metal content and, as such, exposed Plaintiff to an increased risk of the device tearing her vena cava, perforating internal organs and causing death or other serious injury.

d.   That there was no reliable evidence that the device was efficacious or improved patient outcomes.

95.   Plaintiff and her prescribing physicians were unaware of these facts and would not have acted as they did if they had known of the concealed or suppressed facts.

96.   As a direct and proximate result of the foregoing and as a result of the acts and/or omissions of Defendants, and each of them, Plaintiff sustained and continues to suffer severe pain and

suffering and economic loss. Plaintiff's damages are in an amount in excess of the Ten Thousand Dollar ($10,000) jurisdictional minimum of this Court.

## PUNITIVE DAMAGES ALLEGATIONS

97.     Plaintiff re-alleges each and every allegation in this Complaint and incorporates each allegation into this Count, as if set forth at length, in its entirety.

98.     Plaintiff is entitled to an award of punitive and exemplary damages based upon Defendants' intentional, willful, knowing, fraudulent, malicious acts, omissions, and conduct, and their complete and total reckless disregard for the public safety and welfare.

99.     Defendants had knowledge of, and were in possession of evidence demonstrating that, the Celect Filter was defective and unreasonably dangerous and had a substantially higher failure rate than did other similar devices on the market.

100.    Defendants were further aware that the Cook Celect filter posed substantially great risk of failure and resulting injury than had ever been disclosed to consumer and in fact offered no proven benefit.

101.    Yet, Defendants failed to:

    a.   Inform or warn Ashley Gilbert or her prescribing physicians of the dangers;

    b.   To establish and maintain an adequate quality and post-market surveillance system; and

    c.   Recall the Celect Filter from the market.

102.    Defendants acted to serve their own interests and having reasons to know and consciously disregarding the substantial risk that their product might kill or significantly harm patients, or significantly injure the rights of others, and consciously pursued a course of conduct knowing that such conduct created a substantial risk of significant harm to other persons.

103.    As a direct, proximate, and legal result of Defendants' acts and omissions a described herein, and Plaintiff's implantation with Defendants' defective product, Plaintiff suffered untimely death.

## PRAYER FOR DAMAGES

**WHEREFORE**, Plaintiff prays for Judgment against all Defendants, and each of them jointly and severally, as follows:

1.     General damages in excess of $10,000;

2.     Medical and other special damages, past, present, and future, according to proof at the time of trial;

3.     Pre-judgment and post-judgment interest pursuant to the laws of the State of Nevada;

4.     Costs of suit incurred herein;

5.     Punitive damages according to proof at time of trial; and

6.     For such other and further relief as the court may deem just and proper.

Dated: March 20, 2016               WETHERALL GROUP, LTD.

By:   _Per C. Wel_____

Peter C. Wetherall
NV Bar No. 4414
9345 West Sunset Road, Suite 100
Las Vegas, NV 89148
702.838.8500 (office)
702.837.5081 (fax)
pwetherall@wetherallgroup.com
and
Troy A. Brenes, Esq.
Pro Hac pending
Brenes Law Group
16A Journey, Suite 200
Aliso Viejo, CA 92656
949.397.9360 (office)
949.607.4192 (fax)
*Attorney for Plaintiff,*
Ashley Gilbert

1   **IAFD**
    Peter C. Wetherall, Esq.

2   Nevada Bar #4414
    pwetherall@wetherallgroup.com

3   WETHERALL GROUP, LTD.
    9345 West Sunset Road, Suite #100

4   Las Vegas, Nevada 89148
    Ph.  (702) 838-8500

5   Fax (702) 837-5081
    and

6   Troy A. Brenes, Esq.
    Pro Hac pending

7   Brenes Law Group
    16A Journey, Suite 200

8   Aliso Viejo, CA 92656
    949.397.9360 (office)

9   949.607.4192 (fax)
    *Attorney for Plaintiff,*

10  Ashley Gilbert

11  *Attorneys for Plaintiff*

12               **DISTRICT COURT**

13           **CLARK COUNTY, NEVADA**

14                  *\*\*\*\*\**

15  ASHLEY GILBERT, an individual,

16         *Plaintiff,*
       vs.

17

18  COURTNEY LUNG, an individual; COOK
    GROUP INCORPORATED; a corporation;

19  COOK MEDICAL, INCORPORATED; a
    corporation; MEDICAL ENGINEERING and

20  DEVELOPMENT INSTITUTE, INC., a
    corporation; MED INSTITUTE, INC.;  a

21  corporation; COOK MED INSTITUTE, a
    corporation; COOK DENMARK

22  INTERNATIONAL APS, a foreign entity
    most closely resembling a corporation;

23  WILLIAM COOK EUROPE APS; a foreign
    entity most closely resembling a corporation;

24  and DOES 1 through 100 inclusive,

         *Defendants.*

25    **INITIAL APPEARANCE FEE DISCLOSURE (NRS CHAPTER 19)**

26

Case No.:

Dept. No.

WETHERALL GROUP, LTD.
9345 W. Sunset Road, Suite 100 • Las Vegas, NV 89148
Tel: (702) 838–8500 • Fax: (702) 837-5081

1

1   Pursuant to NRS Chapter 19, as amended by Senate Bill 106, filing fees are submitted for

2   parties appearing in the above entitled action as indicated below:

3   ASHLEY GILBERT          $270.00

4   Total Remitted (Required)    $270.00

5   DATED this 20th day of March, 2016.

6                                           WETHERALL GROUP, LTD.

7

8   By _____

9                                           Peter C. Wetherall, Esq., NV Bar No. 4414
                                            9345 West Sunset Road, Suite #100
10                                          Las Vegas, Nevada 89148
                                            Phone: (702) 838-8500
11                                          Fax:  (702) 837-5081
                                            pwetherall@wetherallgroup.com
                                            and
12                                          Troy A. Brenes, Esq.
                                            Pro Hac pending
13                                          Brenes Law Group
                                            16A Journey, Suite 200
14                                          Aliso Viejo, CA 92656
                                            949.397.9360 (office)
15                                          949.607.4192 (fax)
                                            *Attorney for Plaintiff,*
16                                          Ashley Gilbert

17

18

19

20

21

22

23

24

25

26

WETHERALL GROUP, LTD.
9345 W. Sunset Road, Suite 100 • Las Vegas, NV 89148
Tel: (702) 838-8500 • Fax: (702) 837-5081

2