UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

———————————————————————

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND          Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS   LIABILITY LITIGATION              MDL No. 2570

———————————————————————

This Document Relates to Plaintiffs
Tracy Lowicki and Ron Lowicki
Civil Case No. 1:17-cv-6071-RLY-TAB

———————————————————————

**THE COOK DEFENDANTS' REPLY IN SUPPORT OF
PARTIAL JUDGMENT ON THE PLEADINGS**

The Cook Defendants urge the Court to grant their motion for partial judgment on the

pleadings and dismiss all claims against Courtney Lung in this action.  The Cook Defendants

note that Plaintiffs have improperly tried to join a motion to remand with their response to

Cook's motion, and that motion is therefore not properly before the Court.  Even if the Court

construes Plaintiffs' opposition as a motion to remand, however, the Court should dismiss Ms.

Lung from the case for all the reasons articulated in the Cook Defendants' Notice of Removal

(Dkt. No. 1) and those outlined below, and should therefore deny any motion to remand.

**ARGUMENT**

**I.  Plaintiffs' motion to remand is not properly before the Court.**

As a threshold matter, the Court should reject Plaintiffs' motion to remand because it

fails to comply with the Court's rules.   Plaintiffs' response to Cook's motion contains its own

request for affirmative relief, seeking remand of this action to state court.  But "[i]t is well-

established that 'pursuant to Local Rule 7-1(a), the Court will not consider a motion that is

contained within a response brief.'"  *Rooks v. United States*, No. 115CV00079SEBDML, 2016

1

WL 368024, at *1 (S.D. Ind. Jan. 28, 2016) (citing *Slabaugh v. State Farm Fire & Cas. Co.*, No. 1:12-cv-01020-RLY-MJD, 2014 WL 1767088, at *6 (S.D. Ind. May 1, 2014); *see also Illinois Farmers Ins. Co. v. Phelps*, No. 114CV02018SEBTAB, 2016 WL 1187272, at *1 (S.D. Ind. Mar. 28, 2016). Plaintiffs' incorporation of a motion to remand into their response to Cook's motion for partial judgment on the pleadings directly violates Rule 7-1(a), and Plaintiffs neither offer any reason for violating the Rule nor even acknowledge that they have done so.

Plaintiffs also err in relying upon a Motion to Remand their counsel filed in a different case involving the same non-diverse employee. First, Plaintiffs do not offer—and Cook is not aware of—any legal basis as to why a motion to remand pending in a different case (*Gilbert*) legitimizes their silence on Cook's fraudulent joinder arguments in this case. *See* Pl. Opp., p. 1. Although Cook agrees that Plaintiffs' failure to immediately challenge subject matter jurisdiction is not dispositive on the issue, respectfully, that conduct is a factor that weighs in the balance.

Further, Plaintiffs' reliance on the Court's pending decision in *Gilbert*—a ruling Plaintiffs "believe[] . . . would provide the parties with an answer to the identical fraudulent joinder issues raised in the *Lowicki* case"—undercuts their request for remand here given that (1) their counsel never served Ms. Lung with process in *Gilbert*; and (2) their counsel named Ms. Lung in this case only after coming to believe (mistakenly) that Cook had broken an agreement in *Gilbert*—an agreement in which Mr. Brenes would stop naming Ms. Lung in exchange for Cook not removing his Nevada state court cases on fraudulent joinder grounds. *See* Pl. Opp., pp. 1-2; Affidavit of Douglas B. King in Support of the Cook Defendants' Reply in Support of Motion to Dismiss Courtney Lung filed in *Gilbert* ("King Aff."), attached hereto. Either way, Plaintiffs' reliance on their counsel's motion to remand in *Gilbert* is fatal to their position here. To use Plaintiffs' own words, "it makes sense to conserve the resources of the Court and parties

by addressing the identical issues in one case and then applying the ruling to other similar cases."
The Court should reject Plaintiffs' motion in both *Gilbert* and *Lowicki*.

## II. Should the Court treat Plaintiffs' opposition[1] as a motion to remand, the Court should find Ms. Lung's joinder fraudulent and dismiss her from this action.

### A. Mr. Brenes' selective naming of Ms. Lung in cases filed on behalf of Las Vegas plaintiffs only underscores the impropriety of her joinder here.

The agreement Plaintiffs' counsel cites in opposition to Cook's Motion to Dismiss Courtney Lung from an earlier-filed case (*Gilbert*)—one in which he stops naming Ms. Lung as a defendant in exchange for Cook agreeing not to remove his state court cases on fraudulent joinder grounds—is instructive on the fraudulent joinder issue, should the Court choose to reach it.

Although Cook maintains that the arguments in its moving papers are sufficient by themselves to defeat remand,[2] the character of this additional agreement underscores the impropriety of Ms. Lung's joinder here.  Cook respectfully submits that a timeline of Mr. Brenes' four actions filed on behalf of Las Vegas plaintiffs is useful on this point:

    i.  On March 11, 2013, Mr. Brenes invoked the diversity jurisdiction of Nevada federal court when he filed a complaint on behalf of a Las Vegas, Nevada plaintiff, Tammy True.  *True v. Cook Medical Incorporated, et al.,* Case 2:13-cv-00413 (D. Nevada) (ECF No. 1) ("*True* Complaint"), at ¶13 ("Jurisdiction is proper in this Court under 28 U.S.C. § 1332(a)(1) because the plaintiff and defendants are citizens of different states, and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), excluding interest and costs."). Ms. True brings the almost identical claims[3] against almost identical Cook entities.[4]  Her complaint is identical in

---

[1] Plaintiffs' response does not address any of Cook's arguments under Rule 12(b)(6), and any opposition is waived.  Plaintiffs' response also fails to address Mr. Lowicki's consortium claim; those arguments too, are waived.

[2] Cook also incorporates those argument here to the extent the Court believes formal incorporation is necessary. *See, e.g.,* Part II.

[3] Strict Products Liability – Failure to Warn, Strict Products Liability – Design Defects, Strict Products Liability – Manufacturing Defect, Negligence, Breach of Implied Warranty of Merchantability, Negligent Misrepresentation, Deceptive Trade Practice, and Punitive Damages. *See True* Complaint.

substance to Plaintiffs' complaint in this action but for one critical omission: it makes no reference to Courtney Lung. *See generally True* Complaint.

ii.     On July 27, 2014, Mr. Brenes moved for the creation of MDL No. 2570. *See In re Cook Medical, Inc., IVC Filters Marketing, Sales Practices, and Products Liability Litigation,* MDL No. 2570 (J.P.M.L July 21, 2014) (ECF No. 1) (Motion to Transfer with Brief in Support of Troy Brenes, Esq.); *In re Cook Medical, Inc., IVC Filters Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2570 (J.P.M.L Aug. 22, 2014) (ECF No. 19) (Reply to Response to Motion to Transfer of Troy Brenes, Esq.).

iii.    *True* was one of the 27 "Related Actions" cited in support of consolidation or coordination; actions that were, according to Mr. Brenes, "each filed appropriately in federal court." *See id*.

iv.     On October 15, 2014, the JPML ordered centralization of IVC Filter proceedings, over Cook's objection, making Mr. Brenes' *True* case one of the first filed in MDL No. 2570.

v.      On December 15, 2015, after convincing the JPML that all Cook IVC Filter cases should be centralized in this Court, Mr. Brenes filed a complaint virtually identical to *True* on behalf of a second Las Vegas plaintiff, but in Nevada state court (*Ellingson*). See Pl. Opp., p. 1. The most notable change to the pleading was the insertion of two cursory allegations against newly-named defendant Courtney Lung, a Nevada citizen and employee of co-defendant Cook Medical LLC.

vi.     On March 20, 2016, Mr. Brenes filed a second action in Nevada state court (*Gilbert*), again naming Ms. Lung. Civil Case No. 1:16-cv-6049 (ECF No. 1).

vii.    In April 2016, Mr. Brenes agreed not to name Ms. Lung in future actions in exchange for the Cook Defendants not removing his cases. *See* Civil Case No. 1:16-cv-6049 (ECF No. 36).

viii.   On July 27, 2016, Cook timely removed *Gilbert* on fraudulent joinder grounds. Civil Case No. 1:16-cv-6049 (ECF No. 1).

ix.     On July 28, 2016, Mr. Brenes emailed former counsel for Cook: "I thought we had an agreement that you were not going to remove these cases." *See* Civil Case No. 1:16-cv-6049 (ECF No. 36).

x.      On April 24, 2017, Mr. Brenes named Courtney Lung in this case—Mr. Brenes' third Nevada state court suit against the Cook Defendants and Ms. Lung.  Dkt. No. 1. Cook timely removed this case on fraudulent joinder grounds. *See id*.

Cook respectfully submits that Mr. Brenes' actions are relevant to the Court's analysis here. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992) ("Although false allegations of jurisdictional fact may make joinder fraudulent, *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545,

---

[4] Cook Medical Incorporated a/k/a Cook Medical, Inc., Cook Incorporated, Cook Group, Inc., William Cook Europe, ApS, Does I-XX, and Roe Corporations XXI-XL. *See True* Complaint.

549 (5th Cir.1981), in most cases fraudulent joinder involves a claim against an in-state

defendant that simply has no chance of success, whatever the plaintiff's motives.").  Specifically,

courts have recognized that the lack of good faith intention to prosecute an action against a non-

diverse defendant or seek a joint judgment supports a finding of fraudulent joinder.  *Bentley v.

Merck & Co.*, No. 17-1122, 2017 WL 2311299, at *2 (E.D. Pa. May 26, 2017) (citing *Boyer v.

Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990); *In re Briscoe*, 448 F.3d 201, 216 (3d

Cir. 2006); *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985)); *see also Franz

v. Wyeth*, 431 F. Supp. 2d 688, 690 (S.D. Tex. 2004) (holding "when a Plaintiff, at whatever time

and for whatever reason, indicates a desire to completely abandon the claims against all non-

diverse defendants, those defendants are fraudulently joined"); *Spira Footwear, Inc. v. Lebow*,

No. EP-08-CV-0055, 2008 WL 11334093, at *2 (W.D. Tex. June 12, 2008) ("In order to show

improper joinder based upon 'voluntary abandonment' of a claim, there need not be a formal

dismissal of the non-diverse party, but the defendant must show 'a definite or unequivocal

expression of intent to discontinue the action against the resident party.'") (citing *Naef v.

Masonite Corp.*, 923 F. Supp. 1504, 1510 (S.D. Ala. 1996)); *Delatte v. Zurich Ins. Co.*, 683 F.

Supp. 1062, 1063 (M.D. La. 1988); *Bourque v. Nan Ya Plastics Corp.*, 906 F. Supp. 348, 352

(M.D. La. 1995) ("The defendants can avoid remand of the case if they can show that plaintiff

has voluntarily abandoned his claims against the non diverse defendants by clear and

unambiguous acts."); *Aydell v. Sterns,* 677 F.Supp. 877, 880 (M.D.La.1988) ("Where plaintiff by

his voluntary act has definitely indicated his intention to discontinue the action as to all non-

diverse defendants, the case then becomes removable"); *Stamm v. American Tel. & Tel. Co.,* 129

F.Supp. 719, 721 (D.C.Mo.1955) (citing cases) ("It is quite well-settled that if the plaintiff

voluntarily dismisses, discontinues, or in any way abandons, the action as to the resident joint

US.116287874.03

defendant, the cause then becomes removable"); *Heniford v. American Motors Sales Corp.,* 471 F.Supp. 328, 334 (D.S.C.1979) (plaintiffs' counsel's "admonishment to the jury not to return a verdict against [the non-diverse defendant] established the prerequisites for removal"); *Ramirez v. Michelin N. Am., Inc.*, No. C.A. C-07-228, 2007 WL 2126635, at *3 (S.D. Tex. July 19, 2007) (denying remand where plaintiffs announced no serious, good-faith intent to prosecute their claims against the non-diverse defendants).

For example, in *Bentley*, the same plaintiff's attorney had filed suit the same defendants in federal court in multiple cases.  When the presence of a non-diverse defendant made no difference to the forum, the plaintiffs let that defendant out of the case; in other words, plaintiffs kept her in the cases only where her presence purportedly would defeat diversity.  As the district court observed:

> We find that the only reason plaintiffs have joined [the employee] as a defendant is to defeat this court's subject matter jurisdiction and that they have no real intention in good faith to prosecute these actions against her to judgment. We reach this compelling finding in light of the stipulation of dismissal of [the employee] in *Juday* and the plaintiffs' retention of [the employee] in the other similar cases where the same counsel represents all the plaintiffs.  Plaintiffs' attorney conceded this inconsistency at oral argument and offered no explanation for it . . . .

*Id*. at *3.

Likewise here, when Mr. Brenes filed *True* in federal court before moving for the creation of MDL No. 2570, he did not join Ms. Lung and instead argued before the JPML that the case was properly in federal court and supported centralization of Cook IVC Filter cases in this Court.  Following the JPML's centralization order, Mr. Brenes filed two Nevada state court cases in which he joined, on threadbare allegations, a defendant Cook entity's employee—a diversity-defeating defendant whom he later agreed to stop naming in exchange for Cook's

agreement not to remove those cases. After Mr. Brenes perceived that Cook broke that agreement, he filed this action—his third Nevada state court suit naming Ms. Lung.

Like the attorney in *Bentley,* Mr. Brenes has elected to name Ms. Lung only when she is needed to defeat diversity, and "has no real intention in good faith to prosecute the actions against her to judgment." Such gamesmanship and jurisdictional manipulation tips the scales in favor of fraudulent joinder and supports dismissal of Ms. Lung from this case.

> **B. Plaintiffs have no basis for recovering against a co-defendant's employee under Nevada law.**

On the merits of Plaintiffs' purported claim against Ms. Lung, Plaintiffs' response to the present motion fails to address the legal effect of the undisputed fact that Ms. Lung is an *employee* sales representative of one of the Cook defendants—not an independent sales representative. *See* Pl. Opp., *passim.* Plaintiffs do not even use the word "employee" in their Opposition. Instead, Plaintiffs rely on three cases that discuss *independent* sales representative or independent sales *company* liability. *See* Pl. Opp., pp. 6, 16 (citing *Moore*, *Rundle*, and *Zaite* in support of the notion that "[n]umerous cases have established that Nevada law is not settled as to whether a sales representative, like Ms. Lung, can be held liable under a strict product liability claim and, therefore, the ambiguity in controlling law means that Defendants cannot establish fraudulent joinder").

Plaintiffs' argument is misleading because none of the cases they cite involved a claim of individual liability against an *employee*. *See Moore v. Medtronic, Inc.*, No. 2:05CV 01329 KJD PAL, 2006 WL 1795861 (D. Nev. June 28, 2006) (acknowledging that it was "unclear as a matter of state law whether a sales representative like [defendant, an independent consultant] is

7

or is not a 'seller of products' under a theory of strict products liability")[5]; *Rundle v. Depuy Orthopaedics, Inc.*, No. 2:11-CV-00634-PMP, 2011 WL 3022569 (D. Nev. July 6, 2011) (acknowledging "it is possible that the Nevada Supreme Court will hold that a manufacturer's exclusive sales representative [company] is strictly liable for design defects based on the type of conduct alleged in this case"); *Zaite v. Long (In re Pradaxa (Dabigatran Etexilate) Prod. Liab. Litig.)*, No. 312MD02385DRHSCW, 2013 WL 5609340, at *2 (S.D. Ill. Oct. 11, 2013) (citing both *Moore* and *Rundle* for the proposition that sales representative liability had not been definitively decided by Nevada courts).  Indeed, the court in *Rundle* specifically used the terms "independent" and "independent contractor" sales representatives in its discussion of sales representative liability, impliedly noting the inherent and substantial difference between independent sales representatives and non-independent employees such as Ms. Lung.  *Id*. at *9- 13 (observing that courts in other jurisdictions had granted motions to remand product liability actions brought against resident independent sales representatives, independent contractor sales representatives, and sales representative companies). Plaintiffs' failure to account for this crucial distinction is fatal to their opposition, and Cook urges the Court to dismiss Ms. Lung.

### i. Plaintiffs have identified no facts that support inclusion of Cook Medical LLC employee Courtney Lung in this action.

In attempted defense of Plaintiffs' joinder of Ms. Lung, Plaintiffs cite two pieces of evidence—a PowerPoint slide deck purportedly produced in the MDL but with no bates labels or

---

[5]  Notably, *Moore* cited two non-Nevada cases involving sales representative *companies* for the proposition that other jurisdictions are split as to whether a manufacturer's sales representative can be considered a "seller" under a strict products liability theory.  *Id*. at *2, n. 4 ("*Bittler v. White & Co. Inc.*, 560 N.E.2d 979, 203 Ill.App.3d 26 (1990) (finding that participatory connection with defective product was sufficient to subject exclusive sales representative [company] to strict products liability); and *Brumbaugh v. CEJJ, Inc.*, 547 N.Y.S.2d 699, 152 A.D.2d 69 (1989) (finding exclusive sales agent [company] subject to strict product liability because [it] was a mandatory link in the distribution chain)").

other authentication, and Ms. Lung's answer that she has been "selling" Cook IVC Filters, in her

capacity as an employee of Cook Medical LLC. *See* Pl. Opp., p. 3.  But both of these items

merely highlight Ms. Lung's status as a Cook *employee*—a distinction on which Plaintiffs have

offered *no* argument—and do nothing to advance the arguments Plaintiffs make in opposing

dismissal of Ms. Lung.  At most, these two items show that Ms. Lung may be an appropriate fact

witness in Plaintiffs' case against the Cook Defendants. Without more, however, they are

insufficient to justify Ms. Lung's joinder, and the Court should dismiss her.

### ii.  Plaintiffs are not entitled to any discovery on Ms. Lung.

Plaintiffs allude to the fact that they "have not bee [sic] afforded the right to obtain

discovery from or about Ms. Lung" as if to justify the limited support for Plaintiffs' claims

against her.  *See* Pl. Opp., p. 18.  But Plaintiffs' asserted need for additional discovery cannot

support remand, and courts routinely reject requests for additional discovery when the plaintiffs'

factual allegations are insufficient to state a claim for relief against a forum defendant.  *See,*

*e.g., Higley v. Cessna Aircraft Co.,* No. CV 10–3345–GHK (FMOx), 2010 WL 3184516, at *3

(C.D.Cal. July 21, 2010) ("[T]he propriety of removal is determined at the time of removal—not

according to the factual allegations stated at a later date, and our finding of fraudulent joinder

with respect to Plaintiffs' current Motion does *not* include consideration of whether, with

further discovery, the plaintiff may uncover a factual basis for its claims." (quotation marks

omitted)).

In *Higley,* none of the defendants had answered the complaint at the time of removal, and

the removing defendants argued that the plaintiffs' allegations were insufficient to state a claim

against the forum defendant. Because the plaintiffs' against the forum defendant were facially

insufficient, and the plaintiffs had identified no other facts that could be asserted to state a claim,

US.116287874.03

the court denied their request for discovery. *Id.* This decision was supported by and consistent with the general notion that under the Federal Rules of Civil Procedure, a plaintiff cannot "unlock the doors of discovery ... armed with nothing more than conclusions." *Ashcroft v. Iqbal,* 556 U.S. 663, 678 (2009).  Likewise here, Plaintiffs' vague assertion that she needs additional discovery against Ms. Lung cannot overcome the lack of any factual allegations that could possibly support recovery against this Cook employee under Nevada law.

### C.  Plaintiffs' opposition strays far from the record in this case.

Plaintiffs' speculation that Ms. Lung (1) "knew or should have known [about various alleged risks associated with the Filter]"; (2) "knew or should have known that the device did not have the appropriate metal content"; (3) "failed to provide adequate instructions, guidelines, and safety precautions"; and (4) "[d]espite awareness of these risks, Ms. Lung personally marketed and delivered the device to Plaintiffs' treating health care providers and failed to reveal her knowledge of the risk posed by the product" are more in the manner of a products claim against a manufacturer, which Ms. Lung certainly is not.  *At most*, such allegations raise no more than "a mere hypothetical possibility of a cause of action against the resident defendant."  *Id*. at 4; *Higley v. Cessna Aircraft Co.,* No. CV 10-3345, 2010 WL 3184516, at *2 (C.D. Cal. July 21, 2010) ("While Plaintiffs are in no way required to prove their case, by the same token they cannot avoid a finding of fraudulent joinder by asserting a mere hypothetical possibility of a cause of action against the resident defendant.")(citation omitted).  Such a hypothetical is insufficient to defeat this Court's diversity jurisdiction.

### i.  Plaintiffs' opposition provides no valid factual or legal basis for their claims against Ms. Lung.

Plaintiffs assert claims for strict liability, negligence, fraudulent concealment, breach of implied warranty of merchantability, and deceptive trade practices against all defendants

US.116287874.03

collectively.[6]  Plaintiffs' opposition, like their Complaint, provides no valid legal basis for their claims against Ms. Lung and instead relies heavily on three unpublished decisions from 2005. *See* Pl. Mot., Exs. 5-7; *compare with Thompson v. Medtronic, Inc.*, No. 2:06CV00675RCJ(PAL), 2006 WL 3544937, at *4 (D. Nev. Dec. 8, 2006) (explaining "sales representatives cannot be liable simply because they are sales representatives; their actions must create an adequate causal link to the plaintiff's claims" and holding individual sales representative was fraudulently joined because he "did not sell, contract to sell, or distribute" infusion set);  *Kite v. Zimmer US, Inc.*, 2006 WL 3386765 at *3 (holding that there were no colorable claims against sales representative company, where company was "merely a service provider" and did "not sell goods or contract to sell goods"); *Sobkowski v. Wyeth, Inc.*, No. 5:04-CV-96-OC-10GRJ, 2004 WL 3581799, at *1 (M.D. Fla. June 24, 2004) (finding sales representatives fraudulently joined where there was "no reasonable basis for predicting that a [state] court would impose liability on any one of the non-diverse sales representative defendants. There is only a theoretical possibility, devoid of factual basis, that the sales representative had or should have had advance or special knowledge about the drug and failed to communicate that knowledge to the doctor.").

---

[6].  Although Plaintiffs refer to a claim for negligent misrepresentation in their opposition, no such cause of action appears in their Complaint.  Even if Plaintiffs had asserted a claim for negligent misrepresentation, Nevada law would never support such a claim against Ms. Lung.  In Nevada, negligent misrepresentation is only available to plaintiffs who have suffered pecuniary loss in the context of a business transaction. *See Bill Stremmel Motors, Inc. v. First Nat'l Bank of Nev.*, 575 P.2d 938, 940 (Nev. 1978) (adopting test for negligent misrepresentation from the Restatement (Second) of Torts § 552); *Forest*, 791 F. Supp. at 1461 (granting summary judgment in defendant's favor on a negligent misrepresentation claim against manufacturer of medical device implant, explaining:  "It is clear from [the Restatement] that [negligent misrepresentation] is only available to those suffering *pecuniary injury in the context of a business transaction*.  As such, the facts of the instant case do not support even the allegation of negligent misrepresentation *nor could Plaintiff recover damages for personal injury*.").

1. **Plaintiffs cannot assert a claim for strict liability against Ms. Lung under Nevada law.**

Plaintiffs' reliance on *Rundle*, *Zaite*, and *Moore* is misplaced, and there is no ambiguity as to *employee* sales representative liability under Nevada law.  *See* Part B, infra. Further, Plaintiffs proffer contested (and unfounded) assertions concerning Ms. Lung's employment and activities, but these do not constitute an "adequate casual nexus between Ms. Lung's alleged conduct and plaintiff's injuries." Pl. Opp., p. 16.

Moreover, the record established by the Cook Defendants' removal papers rebuts any nexus between Plaintiffs' claims and the allegedly wrongful conduct of Courtney Lung. Employee Courtney Lung (1) did not design, manufacture, label, or sell Cook products, (2) did not exercise control over the content of any warnings or instructions for use that accompany Cook products, (3) never took title to or owned Cook products, (4) never opened, assembled, altered, modified, or inspected Cook products received in their original packaging, (5) never made representations or warranties to Plaintiffs regarding any medical device; (6) never made any representations or warranties to any physician concerning the suitability of the Celect® filter for implantation in any particular patient; and (7) had no knowledge of any alleged defect in the device implanted in Plaintiff Tracy Lowicki.  Lung Aff., Dkt. No. 2.  Courtney Lung's conduct therefore does not sufficiently link her to Plaintiffs' claims and she cannot be a "seller of products" as required by Nevada law.  *See Thompson,* 2006 WL 3544937, at *3 (holding that sales representative "did not sell, contract to sell, or distribute" the devices in question where plaintiff purchased allegedly defective products directly from manufacturer).

US.116287874.03

**2.    Plaintiffs cannot possibly recover against Ms. Lung for negligence under Nevada law.**

The record before the Court on removal, unchallenged by any evidence on Plaintiffs' part, likewise establishes that Ms. Lung did not engage in any conduct that could result in liability for negligence as Plaintiffs assert in opposition to the present motion.  *See* Pl. Opp., pp. 20-21 (claiming "Ms Lungs [sic] failure to disclose the severity and increased nature of risks associated with the Cook Celect® filter or provide adequate instructions or safety precautions resulted in Plaintiff being implanted with a defective product that caused her serious harm").  A claim for negligence under Nevada law must be based on, *inter alia*, an existing duty of care and a breach of that duty.  *See Jordan v. State ex. rel. Dept. of Motor Vehicles and Public Safety*, 110 P.3d 30, 51 (Nev. 2005).  Because Courtney Lung did not design, manufacture, label, or sell the Filter, and had no knowledge of any alleged defect in the Filter, Ms. Lung did not owe Ms. Gilbert a duty of care.  *See* Lung Aff., Dkt. No. 2.  Federal courts applying Nevada law have held that a sales representative acting as a mere conduit of information or of the product has no duty to inspect or test for product defects, and therefore cannot be liable for negligence.  *See Thompson*, 2006 WL 3544937, at *3 (holding sales representative was not liable under negligence theory); *Kite v. Zimmer US, Inc.*, 2:06-CV-745-RCJ-RJJ, 2006 WL 3386765, at *4 (D. Nev. Nov. 22, 2006) (adopting Restatement view and holding supplier could not be liable for negligence).

Set against this standard, Plaintiffs do not state how Ms. Lung had any affirmative duty to Plaintiffs with respect to the Filter or what that duty was.  *See* Pl. Opp., p. 20 (claiming "it is not obvious that Nevada would not recognize a duty running from pharmaceutical sales representatives to patients like Plaintiff or their health care providers" but failing to identify any

US.116287874.03

affirmative duty of care owed by Ms. Lung).[7]  Instead, Plaintiffs quote heavily from unpublished decisions to argue that a negligence claim might possibly exist.  *See* Pl. Opp., pp. 19-20.  Any reliance on these cases is misguided.  Plaintiffs' mainstay case, *Russing v. Wyeth*, cited for the proposition that Nevada law recognizes "that an agent may be *individually* liable for his negligence," does not support remand because the Complaint in this case alleges no specific and reasonable basis for individual liability of Courtney Lung, and in particular no duty that she as an individual owed Plaintiffs. *See* Pl. Mot., Ex. 5; p. 19 (claiming that Nevada "may recognize a duty of care running from the sales representative to the patient or provider" but citing no allegations to support a finding of individual liability in this case).  Plaintiffs' argument is also undercut by one of the three unpublished opinions attached to their motion, which found ***no colorable claims for negligence (or strict liability) against sales representative defendants***.  *See* Pl. Opp., Ex. 7 (*Hellman v. Wyeth*).

### 3.  <u>Plaintiffs have no fraudulent concealment claim against Ms. Lung under Nevada law.</u>

Nevada generally does not recognize an action for fraud based on nondisclosure. *See Epperson v. Roloff*, 719 P.2d 799, 803-04 (Nev. 1986) (noting the "general rule" that "an action in deceit will not lie for nondisclosure"). Plaintiffs argue in favor of a combination fraudulent concealment/negligent misrepresentation claim (which their Complaint does not assert) based

---

[7]  In the Background of their Motion, Plaintiffs cite to generalized allegations directed at all Defendants. *See* Pl.  Opp., p. 4 (citing, e.g., Compl. ¶¶ 20, 45-47)("Defendants breached their duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution, and sale of the Celect Filter . . ."; "At the time Defendants designed, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed and sold the device . . .."); *compare with* Compl. ¶¶ 4-9 (entity Cook Defendants "designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, distributed, and sold" the Filter).  However, these broad allegations do not identify any affirmative duty owed by Courtney Lung and Plaintiffs otherwise offers no foundation for her allegations that Ms. Lung "knew or should have known" any number of things about the filter when there is no basis for attributing such knowledge to Ms. Lung.

US.116287874.03

upon alleged potential "personal liability."  *See* Pl. Opp., p. 21 (discussing *Nev-Tex Oil and Gas v. Precision Rolled Prod.*, 782 P.2d 1311 (Nev. 1989), which involved an agent that intentionally misrepresented material facts in a transaction, for the proposition that sales representatives may be liable for negligent misrepresentation or fraudulent concealment); *see also infra* fn. 6 (explaining why Plaintiffs have no possible negligent misrepresentation claim under Nevada law).  In fact, as the removal record establishes, Ms. Lung and Plaintiffs had no communication with one another or any relationship that would give rise to a duty to disclose.  *See Dow Chem. Co. v. Mahlum,* 970 P.2d 98, 110 (Nev. 1998), *overruled in part on other grounds by GES, Inc. v. Corbitt*, 117 P.3d 11 (Nev. 2001) ("The duty to disclose requires, at a minimum, some form of relationship between the parties.").  Because no relationship exists between the parties that could give rise to a duty to disclose, Plaintiffs have no claim for fraudulent concealment against Ms. Lung.

4.   **Plaintiffs have no possible breach of warranty claim against Ms. Lung under Nevada law.**

As discussed above, Ms. Lung is not a "seller" and thus cannot be liable for breach of warranty.  Under Nevada law, no one "is liable upon a contract except those who are parties to it."  *Clark Cty. v. Bonanza No. 1*, 615 P.2d 939, 943 (1980).  Individual employees in Nevada cannot be liable for the corporation's contractual obligations unless they agreed to be personally liable for those obligations.  *Hobson v. Bradley & Drendel, Ltd.*, 654 P.2d 1017, 1018 (Nev. 1982).  Plaintiffs do not allege the existence of such an agreement here (none exists).

5.   **Plaintiffs have no deceptive trade practice claim against Ms. Lung under Nevada law.**

As a threshold matter, Plaintiffs have failed to plead their fraud claims with particularity.  *See* Cook's Mot.

15

In addition, Plaintiffs' NDTPA claim fails on the merits as a matter of law.  Under the Nevada Deceptive Trade Practices Act, ""[a]n action may be brought by any person who is a victim of consumer fraud."  Nev. Rev. Stat. § 41.600(1).  Though the Nevada Supreme Court has not specified the elements of a NDTPA private cause of action, the U.S. District Court for the District of Nevada has concluded "that for a private NDTPA claim for damages, the Nevada Supreme Court would require, at a minimum, a victim of consumer fraud to prove that (1) an act of consumer fraud by the defendant (2) caused (3) damage to the plaintiff."  *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009).  "Deceptive trade practice claims similarly require evidence that the opposing party knowingly made a false representation. NRS 598.0915(5), (7), (15) (providing, generally, that a person engages in a deceptive trade practice when he knowingly makes false representations)."  *Wild Game Ng, LLC v. IGT*, No. 63249, 2015 WL 7575352, at *1 (Nev. Nov. 24, 2015)).  Here, the removal record establishes that Courtney Lung did not knowingly make any direct representations to Plaintiffs at all, let alone any false representations, nor was Ms. Lung the actual or proximate cause of Plaintiffs' alleged injuries.

Plaintiffs cite only to authority from other jurisdictions to argue that "drug manufacturer's representations" to a physician are somehow actionable under the NDTPA.  *See* Pl. Opp., p. 22.  But Ms. Lung is not a manufacturer.  None of Plaintiffs' allegations suggest how the NDTPA applies to a claim against Ms. Lung in this case.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Courtney Lung from this action. Because there is no reasonable basis for holding Courtney Lung liable under any legal theory,

16

Courtney Lung was fraudulently joined, diversity jurisdiction is present, and the case was

properly removed to federal court.


Dated: February 2, 2018                     Respectfully submitted,

                                            /s/ John T. Schlafer
                                            Andrea Roberts Pierson, Co-Lead Counsel
                                            John T. Schlafer
                                            FAEGRE BAKER DANIELS LLP
                                            300 North Meridian Street, Suite 2700
                                            Indianapolis, Indiana  46204
                                            Telephone:         (317) 237-0300
                                            Facsimile:         (317) 237-1000
                                            andrea.pierson@faegrebd.com
                                            john.schlafer@faegrebd.com

                                            James Stephen Bennett, Co-Lead Counsel
                                            FAEGRE BAKER DANIELS LLP
                                            110 W. Berry Street, Suite 2400
                                            Fort Wayne, Indiana  46802
                                            Telephone:         (260) 424-8000
                                            Facsimile:         (260) 460-1700
                                            stephen.bennett@faegrebd.com

                                            *Attorneys for Defendants Cook Incorporated, Cook
                                            Medical LLC f/k/a Cook Medical Incorporated,
                                            William Cook Europe APS*

US.116287874.03

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2018, a copy of the foregoing COOK

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE

PLEADINGS was filed electronically, and notice of the filing of this document will be sent to all

parties by operation of the Court's electronic filing system to CM/ECF participants registered to

receive service in this matter.  Parties may access this filing through the Court's system.  Lead

Co-Counsel for Defendants will serve any non-CM/ECF registered parties.


/s/ John T. Schlafer

US.116287874.03