**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

———————————————————————

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND               Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION                MDL No. 2570

———————————————————————

This Document Relates to:

   *Brand v. Cook Medical, Inc. et al.,*
   Case No. 1:14-cv-06018-RLY-TAB

———————————————————————

**THE COOK DEFENDANTS' BRIEF**
**IN SUPPORT OF PLAINTIFF'S MOTION TO**
**MAINTAIN DOCUMENT UNDER SEAL [DKT. NO. 7553]**

**I.      INTRODUCTION**

Plaintiff has filed Plaintiff Tonya Brand's Emergency Motion to Compel [Dkt. No. 7551]

("Plaintiff's Emergency Motion to Compel").  Plaintiff has submitted as a supporting exhibit a

document along with attachments designated as "Confidential" or "Confidential Attorneys' Eyes

Only" by the Cook Defendants[1], pursuant to Case Management Order #8 (Stipulated Protective

Order on Confidential Information).   In accordance with Local Rules 5-11(d)(1) and 5-

11(d)(2)(A)(ii), Plaintiff filed this confidential document with attachments (**Exhibit 2 [Dkt. No.**

**7552-1]** to Plaintiff's Emergency Motion to Compel) *under seal.*  Further, Plaintiff has filed

Plaintiff's Motion to Maintain Documents Under Seal [Dkt. No. 7553].

As the parties designating the document with attachments as confidential, the Cook

Defendants submit this Brief in Support of Plaintiff's Motion to Maintain Document Under Seal

---

[1]   The Cook Defendants in this matter are Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical
    Incorporated), and William Cook Europe ApS (collectively, the "Cook Defendants" or "Cook").

and respectfully request that the Clerk of this Court maintain this confidential document with attachments *under seal*.

The Clerk should maintain **Exhibit 2 [Dkt. No. 7552-1]** to Plaintiff's Emergency Motion to Compel under seal because there is good cause for sealing such document with attachments. The document with attachments is confidential and proprietary sales, marketing, and public relations documents and information. This constitutes confidential business and commercial information entitled to be protected from disclosure. There is good cause to maintain the document with attachments *under seal* in order to protect the Cook Defendants' interests in their confidential and proprietary information and to protect the Cook Defendants from competitive harm.

## II.   THE APPLICABLE LEGAL STANDARD

1.   Under Federal Rule of Civil Procedure 26(c)(1)(G), the court may, "for good cause," enter an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." *See also Baxter International, Inc. v. Abbott Laboratories*, 297 F.3d 544, 546 (7th Cir. 2002) (documents that "meet the definition of trade secret or other categories of bona fide long-term confidentiality" may be sealed). Likewise, private health information should be maintained under seal at least until consent by the patient is obtained. *See generally Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at \*3 (E.D. Wis. July 10, 2017).

2.   **Trade Secrets –** Indiana has generally adopted the definition of trade secret found in the Uniform Trade Secret Act.[2] *See, e.g.*, *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 414

---

[2]   The presence of Cook's headquarters in Indiana justified the application of Indiana trade secret law to the issues here, because Indiana is the state where Cook would feel any injury or harm. *See, e.g.*, *Micro Data Base Sys., Inc. v. Dharma Sys., Inc.*, 148 F.3d 649 (7th Cir. 1998) (applying Indiana

US.116389281.02

(S.D. Ind. 2001).[3] Under this standard, a protectable trade secret has four characteristics: (1) information; (2) that possesses independent economic value; (3) that is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (4) is the subject of efforts to maintain its secrecy that are reasonable under the circumstances. *See, e.g.*, *Hamilton v. State Farm Mut. Auto Ins. Co.*, 204 F.R.D. 420, 423 (S.D. Ind. 2001); *Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 759 N.E.2d 239, 245–46 (Ind. Ct. App. 2001); *Burk v. Heritage Food Serv. Equip., Inc.*, 737 N.E.2d 803, 813 (Ind. Ct. App. 2000).

3.    Other confidential business or commercial information that does not technically fit the definition of trade secret is similarly entitled to the same level of protection as trade secrets if its disclosure would be harmful physically or economically. *See Chaib v. GEO Grp., Inc.*, 2014 WL 4794194, at *1–3 (S.D. Ind. Sept. 24, 2014); *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at *1 (S.D. Ind. Feb. 2, 2009) (finding that protection is required where disclosure of certain proprietary information would "provide a blueprint for competitors").

4.    **Research and Development** – Federal courts, including this court, have consistently held that product development, research, and testing documents and information are entitled to protection from disclosure as confidential and proprietary business information. Such information constitutes confidential business information because "a competitor's access to [a company's] research and development . . . present[s] potential dangers and may lead to a windfall to the discovering party." *Star Scientific,* 204 F.R.D. at 416 (S.D. Ind. 2001) (Baker, J.); *see also United States ex rel. Long v. GSD&M Idea City LLC*, 2014 WL 12648520, at *2

---

choice-of-law principles in a trade-secret case and holding that New Hampshire substantive law governed because the entity holding the trade secrets was headquartered there).

[3]    The Indiana Uniform Trade Secret Act is identical to the Uniform Trade Secrets Act, 1(4), 14 U.L.A. 438 (1985).

US.116389281.02

(N.D. Tex. Jan. 3, 2014) ("[I]nformation in which the producing party has a commercial interest, such as . . . research data, . . . has been found to constitute confidential commercial information."); *Kowalsky v. Hewlett-Packard Co.*, 2012 WL 892427, at \*2 (N.D. Cal. Mar. 14, 2012) (exhibits were "sealable in their entirety because they contain[ed] HP's confidential product testing and evaluation process"); *cf. Andrx Pharm., LLC v. GlaxoSmithKline, PLC,* 236 F.R.D. 583, 586 (S.D. Fla. 2006) ("Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information." (citation omitted)), *affirmed,* 2006 WL 2403942 (S.D. Fla. 2006).

5.      **Post-Market Product Analysis** – Similarly, post-market product analysis is also entitled to protection from disclosure as confidential and proprietary business information. Disclosure of such proprietary post-market analysis information is harmful because it would "provide a blueprint for competitors." *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at \*1 (S.D. Ind. Feb. 2, 2009); *see also Star Scientific*, 204 F.R.D. at 415 (research and data, such as sales techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge").

6.      **Sales, Marketing, and Public Relations –** Confidential marketing plans or sales strategies have been held to constitute protectable trade secrets or protected confidential business information.  *See, e.g.*, *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1270 (7th Cir. 1995) (trade secret material for sports drink includes information regarding the pricing, distribution and marketing of the drink and not just the drink formula); *Star Scientific*, 204 F.R.D. at 415 (research and data, such as sales techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge"); *Burk v. Heritage Serv. Equip.*, 737 N.E.2d 803, 814 (Ind. Ct. App. 2000) (finding that employee unfairly

- 4 -

used marketing information and sales strategies in breach of the Indiana trade secrets clause); *see also Brunswick Corp. v. Jones*, 784 F.2d 271 (7th Cir. 1986) (confidential marketing strategies held protectable); *AGS Capital Corp., Inc. v. Prod. Action Intern., LLC*, 884 N.E.2d 294, 311 (Ind. Ct. App. 2008) (stolen information related to marketing strategy would "put [a company's competitors] at a severe disadvantage").  Good cause exists to maintain the confidentiality of such strategic plans and analysis when disclosure of that information would reveal the company's "response to changing market situations and competitive threats within the marketplace, and could therefore give a competitor insight into '[the company's] internal thinking'" and when publicizing this material "would allow [the company]'s competitors the benefit of this information without incurring the effort or expense."  *Bradburn Parent/Teacher Store, Inc. v. 3M*, 2004 WL 1146665, at *4 (E.D. Pa. May 19, 2004) (citation omitted).

7.      **Regulatory Affairs –** Courts have held that information related to regulatory compliance and/or submission efforts and strategies constitutes confidential business information. *See, e.g.*, *Bayer Healthcare, LLC v. Norbrook Labs., Ltd.*, 2009 WL 3444938, at *1 (E.D. Wisc. Oct. 23, 2009) (good cause existed to seal deposition testimony and internal company emails containing proprietary commercial information and strategy related to an FDA filing).  Such proprietary information, like confidential information regarding pricing and sales, is confidential because "the information is created to enhance [companies'] business and give them a competitive edge".  *Star Scientific*, 204 F.R.D. at 415.

8.      **Complaint Handling** – Internal complaint handling procedures and materials constitute trade secrets in Indiana if they contain (1) information; (2) that derives independent economic value; (3) is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (4) is the subject of

- 5 -

US.116389281.02

efforts reasonable under the circumstances to maintain its secrecy. *Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 759 N.E.2d 239, 245-46 (Ind. Ct. App. 2001); *see also, e.g.*, *Hamilton v. State Farm Mut. Auto. Ins. Co.*, 204 F.R.D. 420, 423-24 (S.D. Ind. 2001); *Rep. Servs. Inc. v. Liberty Mut. Ins. Cos.*, 2006 WL 1635655, at \*5 (E.D. Ken. June 9, 2006) (concluding that claims handling and training materials "had economic value to [defendant] due to (1) their confidential nature, (2) the time, effort, and expense [defendant] invested in creating these materials, (3) the evolutionary process surrounding the development of these materials, (4) the competitive nature of the [industry's] business, and (5) the fact that competitors in [that] industry do not disclose information about their claims handling policies and procedures to one another.").

9.     **Internal Information on Corporate Structure and Business Operations –** Courts also have determined that information about a corporation's internal business operations and corporate structure is confidential and proprietary and, therefore, entitled to protection from public disclosure. *E.g., True Health Chiropractic, Inc. v. McKesson Corporation,* 2015 WL 3409721 (USDC N.D. Cal.) (May 27, 2015) at \*4 (granting motion to seal confidential and proprietary information about the defendant's internal business operations and corporate structure).

10.     **Medical Privacy –** With respect to medical information, courts in the Seventh Circuit have routinely recognized that, while parties' medical information may be made public where it is relevant to the claims at issue and/or necessary to the disposition of the case, other information may be kept under seal with good cause. *See Westedt v. Franklin,* 2016 WL 2997504, at \*1 (E.D. Wis. May 23, 2016); *Gibson v. Milwaukee Cnty.*, 2015 WL 12964665, at \*1 (E.D. Wis. Mar. 26, 2015); *Noe v. Carlos,* 2008 WL 5070463, at \*3 (N.D. Ind. Nov. 26,

- 6 -

2008). The good cause inquiry thus requires balancing a party's acknowledged interest in medical privacy, *see Whalen v. Roe*, 429 U.S. 589, 599–600 (1977), against the Court's (and parties') interest in the accurate resolution of the conflict and the public interest in transparency. *Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017). Private health information should be maintained under seal at least until consent by the patient is obtained. *See generally id.* at *3.

11. The "good cause" standard under Rule 26(c) "requires a balancing of the potential harm to the litigants' interests against the public's right to obtain information concerning judicial proceedings." *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 415-16 (S.D. Ind. 2001) (Baker, J.); *see also Felling v. Knight*, 211 F.R.D. 552, 554 (S.D. Ind. 2003) ("The rule essentially operates to balance the public's interest in open proceedings against an individual's private interest in avoiding annoyance, embarrassment, oppression, or undue burden or expense.") (Baker, J.). Consistent with the doctrine discussed earlier, however, "the presumption of public access 'applies only to the materials that formed the basis of the parties' dispute and the district court's resolution'; other materials that may have crept into the record are not subject to the presumption." *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013) (citing *Baxter Int'l*, 297 F.3d at 548)).

## III. THE CONFIDENTIAL DOCUMENT AT ISSUE THAT SHOULD BE MAINTAINED UNDER SEAL

**Exhibit 2 [Dkt. No. 7552-1]** is Cook's Third Amended Defendant Fact Sheet (with its attached Exhibits) – related to the Tonya Brand case. This document constitutes a sales, marketing, and public relations document since it includes and discloses the following internal company matters: 1) confidential sales information related to filters; 2) a private personnel file and internal performance evaluations for a Cook employee; and 3) proprietary business

information related to Cook's marketing contacts and events and expenses related thereto.  The foregoing items constitute valuable, confidential, and protectable business information.  Each of the exhibits submitted along with this document have been marked "Confidential" or "Confidential Attorneys' Eyes Only."

## IV.    THERE IS GOOD CAUSE TO MAINTAIN THE DOCUMENT UNDER SEAL

Good cause exists to maintain **Exhibit 2 [Dkt. No. 7552-1]** under seal.  The document constitutes confidential business and commercial information, and the Cook Defendants would face competitive and economic harm if such materials were made publicly available.  Redaction is not a viable option because it would not provide the Cook Defendants adequate protection.  The document at issue does not merely contain discreet pieces of confidential business and commercial information that can be redacted.  Rather, the document in its entirety constitutes confidential business and commercial information.  It contains confidential, proprietary, and sensitive internal company information on sales, marketing, and public relations documents and information.  The document should not be disclosed to the public.

In particular, **Exhibit 2 [Dkt. No. 7552-1]** includes and discloses the following internal company matters:  1) confidential sales information related to filters; 2) a private personnel file and internal performance evaluations for a Cook employee; and 3) proprietary business information related to Cook's marketing contacts and events and expenses related thereto. **Exhibit 2 [Dkt. No. 7552-1]** should be maintained under seal for good cause as confidential business information about sales, marketing, and public relations.

As the Cook Defendants more fully demonstrated in their May 1, 2017 letter to Magistrate Judge Tim A. Baker and the supporting Declaration of Mark Breedlove (attached here for reference as **Exhibit 1**) he medical device industry, and the IVC Filter market in particular, is highly competitive.  Breedlove Decl. at ¶ 4.  In order to succeed in this environment, Cook

commits substantial time, internal resources, and money to optimize its sales and marketing techniques and to maintain positive public perceptions through public relations. *Id*. at ¶ 5. For example, Cook routinely conducts analyses of the IVC Filter market and how its products fit into that market; compares the performance of its product line to that of competitor products; and develops key messaging for use with potential customers, and the public, to promote the organization, the product line, or both. *Id*. at ¶ 14. Although the final product of Cook's efforts may ultimately be made public, Cook's internal deliberations, drafts, ideas, and otherwise non-final product are kept in confidence, and are considered proprietary to Cook. *Id*. If this information were publicly disclosed, it "would allow [Cook's] competitors the benefit of this information without incurring the effort or expense." *Bradburn Parent/Teacher Store*, 2004 WL 1146665, at *4. Such disclosure of Cook's internal product development strategies, and internal business philosophies, and goals and objectives would give its competitors an unfair insight into Cook's internal thinking. *Id.*; Breedlove Decl. ¶ 15.

In sum, good cause exists to maintain **Exhibit 2 [Dkt. No. 7552-1]** under seal. Cook's sales, marketing, and public relations information and strategies are confidential and proprietary. The disclosure of such information would result in competitive harm to Cook. **Exhibit 2 [Dkt. No. 7552-1]** should be sealed.

## V.    CONCLUSION

For all the foregoing reasons, the Cook Defendants respectfully request that the Court issue an Order directing the Clerk to maintain **Exhibit 2 [Dkt. No. 7552-1]** to Plaintiff's Emergency Motion to Compel **under seal**. The document at issue is confidential and proprietary business information on sales, marketing, and public relations. There is good cause to seal the document to prevent public disclosure and competitive harm to the Cook Defendants.

US.116389281.02

In accordance with Local Rule 5-11(e)(4), the Cook Defendants have submitted a proposed order maintaining the documents under seal.

Respectfully submitted,

Dated:  February 7, 2018

/s/ Andrea Roberts Pierson

Andrea Roberts Pierson (# 18435-49)
J. Joseph Tanner (# 11856-49)
Nicholas B. Alford (# 31867-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-Mail:  joe.tanner@faegrebd.com
E-Mail: nicholas.alford@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

- 10 -

US.116389281.02

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2018, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.  Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.


<u>/s/ Andrea Roberts Pierson</u>

US.116389281.02