**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

_____

This Document Relates to:

    *Brand v. Cook Medical, Inc. et al.,*
    Case No. 1:14-cv-06018-RLY-TAB

_____

**THE COOK DEFENDANTS' BRIEF
IN SUPPORT OF PLAINTIFF'S MOTION TO
MAINTAIN DOCUMENTS UNDER SEAL [DKT. NO. 7578]**

**I.    INTRODUCTION**

Plaintiff has filed Plaintiff's Reply Brief in Support of Plaintiff's Motion to Compel Discovery [Dkt. No. 7576] ("Plaintiff's Reply Brief").  Plaintiff has submitted as supporting exhibits various documents designated as "Confidential" or "Company Confidential" by the Cook Defendants[1], pursuant to Case Management Order #8 (Stipulated Protective Order on Confidential Information).  In accordance with Local Rules 5-11(d)(1) and 5-11(d)(2)(A)(ii), Plaintiff filed these confidential documents – **Exhibit 9 [Dkt. No. 7577-1], Exhibit 10 [Dkt. No. 7577-2], and Exhibit 11 [Dkt. No. 7577-3]** to Plaintiff's Reply Brief – *under seal.*  Further, Plaintiff has filed Plaintiff's Motion to Maintain Documents Under Seal [Dkt. No. 7578].

As the parties designating the documents as confidential, the Cook Defendants submit this Brief in Support of Plaintiff's Motion to Maintain Documents Under Seal and respectfully request that the Clerk of this Court maintain these confidential documents ***under seal***.

---

[1]    The Cook Defendants in this matter are Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS (collectively, the "Cook Defendants" or "Cook").

- 2 -

The Clerk should maintain **Exhibit 9 [Dkt. No. 7577-1], Exhibit 10 [Dkt. No. 7577-2], and Exhibit 11 [Dkt. No. 7577-3]** to Plaintiff's Reply Brief under seal because there is good cause for sealing these documents. The documents are confidential and proprietary post-market product analysis, regulatory affairs, and complaint handling documents and information. They constitute confidential business and commercial information entitled to be protected from disclosure. There is good cause to maintain the documents *under seal* in order to protect the Cook Defendants' interests in their confidential and proprietary information and to protect the Cook Defendants from competitive harm.

## II.     THE APPLICABLE LEGAL STANDARD

1.     Under Federal Rule of Civil Procedure 26(c)(1)(G), the court may, "for good cause," enter an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." *See also Baxter International, Inc. v. Abbott Laboratories*, 297 F.3d 544, 546 (7th Cir. 2002) (documents that "meet the definition of trade secret or other categories of bona fide long-term confidentiality" may be sealed). Likewise, private health information should be maintained under seal at least until consent by the patient is obtained. *See generally Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017).

2.     **Trade Secrets –** Indiana has generally adopted the definition of trade secret found in the Uniform Trade Secret Act.[2] *See, e.g.*, *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 414

---

[2] The presence of Cook's headquarters in Indiana justified the application of Indiana trade secret law to the issues here, because Indiana is the state where Cook would feel any injury or harm. *See, e.g.*, *Micro Data Base Sys., Inc. v. Dharma Sys., Inc.,* 148 F.3d 649 (7th Cir. 1998) (applying Indiana choice-of-law principles in a trade-secret case and holding that New Hampshire substantive law governed because the entity holding the trade secrets was headquartered there).

(S.D. Ind. 2001).[3] Under this standard, a protectable trade secret has four characteristics: (1) information; (2) that possesses independent economic value; (3) that is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (4) is the subject of efforts to maintain its secrecy that are reasonable under the circumstances. *See, e.g.*, *Hamilton v. State Farm Mut. Auto Ins. Co.*, 204 F.R.D. 420, 423 (S.D. Ind. 2001); *Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 759 N.E.2d 239, 245–46 (Ind. Ct. App. 2001); *Burk v. Heritage Food Serv. Equip., Inc.*, 737 N.E.2d 803, 813 (Ind. Ct. App. 2000).

3. Other confidential business or commercial information that does not technically fit the definition of trade secret is similarly entitled to the same level of protection as trade secrets if its disclosure would be harmful physically or economically. *See Chaib v. GEO Grp., Inc.*, 2014 WL 4794194, at *1–3 (S.D. Ind. Sept. 24, 2014); *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at *1 (S.D. Ind. Feb. 2, 2009) (finding that protection is required where disclosure of certain proprietary information would "provide a blueprint for competitors").

4. **Research and Development** – Federal courts, including this court, have consistently held that product development, research, and testing documents and information are entitled to protection from disclosure as confidential and proprietary business information. Such information constitutes confidential business information because "a competitor's access to [a company's] research and development . . . present[s] potential dangers and may lead to a windfall to the discovering party." *Star Scientific,* 204 F.R.D. at 416 (S.D. Ind. 2001) (Baker, J.); *see also United States ex rel. Long v. GSD&M Idea City LLC*, 2014 WL 12648520, at *2 (N.D. Tex. Jan. 3, 2014) ("[I]nformation in which the producing party has a commercial interest,

---

[3] The Indiana Uniform Trade Secret Act is identical to the Uniform Trade Secrets Act, 1(4), 14 U.L.A. 438 (1985).

- 3 -

US.116433691

such as . . . research data, . . . has been found to constitute confidential commercial information."); *Kowalsky v. Hewlett-Packard Co.*, 2012 WL 892427, at *2 (N.D. Cal. Mar. 14, 2012) (exhibits were "sealable in their entirety because they contain[ed] HP's confidential product testing and evaluation process"); *cf. Andrx Pharm., LLC v. GlaxoSmithKline, PLC,* 236 F.R.D. 583, 586 (S.D. Fla. 2006) ("Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information." (citation omitted)), *affirmed,* 2006 WL 2403942 (S.D. Fla. 2006).

     5.    **Post-Market Product Analysis** – Similarly, post-market product analysis is also entitled to protection from disclosure as confidential and proprietary business information. Disclosure of such proprietary post-market analysis information is harmful because it would "provide a blueprint for competitors." *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at *1 (S.D. Ind. Feb. 2, 2009); *see also Star Scientific*, 204 F.R.D. at 415 (research and data, such as sales techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge").

     6.    **Sales, Marketing, and Public Relations –** Confidential marketing plans or sales strategies have been held to constitute protectable trade secrets or protected confidential business information. *See, e.g.*, *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1270 (7th Cir. 1995) (trade secret material for sports drink includes information regarding the pricing, distribution and marketing of the drink and not just the drink formula); *Star Scientific*, 204 F.R.D. at 415 (research and data, such as sales techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge"); *Burk v. Heritage Serv. Equip.*, 737 N.E.2d 803, 814 (Ind. Ct. App. 2000) (finding that employee unfairly used marketing information and sales strategies in breach of the Indiana trade secrets clause); *see*

*also Brunswick Corp. v. Jones*, 784 F.2d 271 (7th Cir. 1986) (confidential marketing strategies held protectable); *AGS Capital Corp., Inc. v. Prod. Action Intern., LLC*, 884 N.E.2d 294, 311 (Ind. Ct. App. 2008) (stolen information related to marketing strategy would "put [a company's] competitors] at a severe disadvantage"). Good cause exists to maintain the confidentiality of such strategic plans and analysis when disclosure of that information would reveal the company's "response to changing market situations and competitive threats within the marketplace, and could therefore give a competitor insight into '[the company's] internal thinking'" and when publicizing this material "would allow [the company]'s competitors the benefit of this information without incurring the effort or expense." *Bradburn Parent/Teacher Store, Inc. v. 3M*, 2004 WL 1146665, at *4 (E.D. Pa. May 19, 2004) (citation omitted).

7. **Regulatory Affairs** – Courts have held that information related to regulatory compliance and/or submission efforts and strategies constitutes confidential business information. *See, e.g.*, *Bayer Healthcare, LLC v. Norbrook Labs., Ltd.*, 2009 WL 3444938, at *1 (E.D. Wisc. Oct. 23, 2009) (good cause existed to seal deposition testimony and internal company emails containing proprietary commercial information and strategy related to an FDA filing). Such proprietary information, like confidential information regarding pricing and sales, is confidential because "the information is created to enhance [companies'] business and give them a competitive edge". *Star Scientific*, 204 F.R.D. at 415.

8. **Complaint Handling** – Internal complaint handling procedures and materials constitute trade secrets in Indiana if they contain (1) information; (2) that derives independent economic value; (3) is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (4) is the subject of efforts reasonable under the circumstances to maintain its secrecy. *Zemco Mfg., Inc. v. Navistar*

*Intern. Transp. Corp.*, 759 N.E.2d 239, 245-46 (Ind. Ct. App. 2001); *see also, e.g.*, *Hamilton v. State Farm Mut. Auto. Ins. Co.*, 204 F.R.D. 420, 423-24 (S.D. Ind. 2001); *Rep. Servs. Inc. v. Liberty Mut. Ins. Cos.*, 2006 WL 1635655, at *5 (E.D. Ken. June 9, 2006) (concluding that claims handling and training materials "had economic value to [defendant] due to (1) their confidential nature, (2) the time, effort, and expense [defendant] invested in creating these materials, (3) the evolutionary process surrounding the development of these materials, (4) the competitive nature of the [industry's] business, and (5) the fact that competitors in [that] industry do not disclose information about their claims handling policies and procedures to one another.").

9.  **Internal Information on Corporate Structure and Business Operations –** Courts also have determined that information about a corporation's internal business operations and corporate structure is confidential and proprietary and, therefore, entitled to protection from public disclosure. *E.g., True Health Chiropractic, Inc. v. McKesson Corporation,* 2015 WL 3409721 (USDC N.D. Cal.) (May 27, 2015) at *4 (granting motion to seal confidential and proprietary information about the defendant's internal business operations and corporate structure).

10. **Medical Privacy –** With respect to medical information, courts in the Seventh Circuit have routinely recognized that, while parties' medical information may be made public where it is relevant to the claims at issue and/or necessary to the disposition of the case, other information may be kept under seal with good cause. *See Westedt v. Franklin,* 2016 WL 2997504, at *1 (E.D. Wis. May 23, 2016); *Gibson v. Milwaukee Cnty.*, 2015 WL 12964665, at *1 (E.D. Wis. Mar. 26, 2015); *Noe v. Carlos,* 2008 WL 5070463, at *3 (N.D. Ind. Nov. 26, 2008). The good cause inquiry thus requires balancing a party's acknowledged interest in

medical privacy, *see Whalen v. Roe*, 429 U.S. 589, 599–600 (1977), against the Court's (and parties') interest in the accurate resolution of the conflict and the public interest in transparency. *Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017). Private health information should be maintained under seal at least until consent by the patient is obtained. *See generally id.* at *3.

11. The "good cause" standard under Rule 26(c) "requires a balancing of the potential harm to the litigants' interests against the public's right to obtain information concerning judicial proceedings." *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 415-16 (S.D. Ind. 2001) (Baker, J.); *see also Felling v. Knight*, 211 F.R.D. 552, 554 (S.D. Ind. 2003) ("The rule essentially operates to balance the public's interest in open proceedings against an individual's private interest in avoiding annoyance, embarrassment, oppression, or undue burden or expense.") (Baker, J.). Consistent with the doctrine discussed earlier, however, "the presumption of public access 'applies only to the materials that formed the basis of the parties' dispute and the district court's resolution'; other materials that may have crept into the record are not subject to the presumption." *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013) (citing *Baxter Int'l*, 297 F.3d at 548)).

### III. THE CONFIDENTIAL DOCUMENTS AT ISSUE THAT SHOULD BE MAINTAINED UNDER SEAL

**Exhibit 9 [Dkt. No. 7577-1]** is a compilation of excerpts from the 30(b)(6) deposition of Rita Harden related to all actions in MDL No. 2570. Ms. Harden's deposition took place on January 22, 2016. Ms. Harden was deposed as Cook's corporate representative regarding post-market surveillance and regulatory reporting. Consequently, the excerpts from her transcript include confidential and proprietary information related to post-market product analysis, regulatory affairs, and complaint handling. This deposition transcript is designated and

stamped: "Confidential."

**Exhibit 10 [Dkt. No. 7577-2]** is a Quality System Procedure from William Cook Europe entitled "Complaint Investigation," (Version 4.0) with an effective date of October 23, 2013 [CookMDL2570_0025055 - 0025060]. This document constitutes a complaint handling document since it discusses the purpose, scope, methods, and roles and responsibilities related to investigation of customer complaints. This internal company procedure memorandum is designated and stamped: "Confidential."

**Exhibit 11 [Dkt. No. 7577-3]** is a report prepared by Dr. Paul Timperman (a radiologist engaged by Cook as a consultant to assess customer complaints) related to a specific customer complaint (PR38639), dated September 12, 2012 [CookMDL2570_0813263 - 0813266]. This document constitutes a complaint handling document since it sets forth findings and impressions related to PR38639. This internal company complaint investigation summary document is designated and stamped: "Company Confidential."

**IV.   THERE IS GOOD CAUSE TO MAINTAIN THE DOCUMENTS UNDER SEAL**

Good cause exists to maintain **Exhibit 9 [Dkt. No. 7577-1], Exhibit 10 [Dkt. No. 7577-2], and Exhibit 11 [Dkt. No. 7577-3]** to Plaintiff's Reply Brief under seal. The documents constitute confidential business and commercial information, and the Cook Defendants would face competitive and economic harm if such materials were made publicly available. Redaction is not a viable option because it would not provide the Cook Defendants adequate protection. The documents at issue do not merely contain discreet pieces of confidential business and commercial information that can be redacted. Rather, the documents in their entirety constitute confidential business and commercial information. They contain confidential, proprietary, and sensitive internal company information on post-market product analysis; regulatory affairs; and complaint handling. The documents should not be disclosed to the public.

A.     **Exhibit 9 [Dkt. No. 7577-1]**

**Exhibit 9 [Dkt. No. 7577-1]**, which is a compilation of excerpts from the 30(b)(6) deposition of Rita Harden, addresses post-market surveillance and regulatory reporting. The excerpts from her deposition transcript include confidential, proprietary, and protectable information related to post-market product analysis, regulatory affairs, and complaint handling. Accordingly, this exhibit should be maintained under seal for good cause as confidential business information regarding post-market product analysis, regulatory affairs, and complaint handling.

The Cook Defendants' May 1, 2017 letter to Magistrate Baker and the Declaration of Mark Breedlove (attached here for reference as **Exhibit 1**) are instructive and demonstrate good cause to maintain **Exhibit 9 [Dkt. No. 7577-1]** under seal. With regard to post-market product analysis, Cook undertakes substantial efforts to evaluate the performance of its medical devices (including IVC filters), as well as competitor devices in the industry, post-market. Breedlove Decl. ¶ 8. These include efforts to (among other things) evaluate adverse event reports, both quantitatively and qualitatively; review and internally evaluate peer-reviewed literature about Cook and competitor products; to perform testing on characteristics of Cook and competitor products; and, when there are reported failures, to study and understand how and why Cook or competitor products allegedly failed. *Id*. Cook's methods of assessing its own products, including characteristics of products it may want to improve, could be exploited to Cook's commercial disadvantage and even discourage Cook employees (as well as the employees of other organizations in the medical device industry) from engaging in and/or memorializing such analyses, which could have a negative impact on product development and safety. Disclosure of Cook's post-market analysis efforts would harm Cook.

With respect to regulatory affairs, Cook invests substantial time and resources in developing regulatory strategies that ensure regulatory compliance in what Cook deems to be the best and most efficient ways possible. *Id.* at ¶ 10. Cook maintains confidentiality with regard to its interactions with the agencies that regulate Cook, including the FDA, as well as the methods and strategies it employs in planning for regulatory submissions, responding to regulatory inquiries, and other aspects of regulatory affairs, because such information is the product of great investment and provides commercial and competitive benefits for Cook. *Id.* Disclosure of Cook's regulatory compliance methods and strategies would lead to a competitive disadvantage for Cook, as its competitors would be able to access, and potentially adopt and benefit from Cook's methods and strategies, without having to make the investment that Cook was required to make. *Id.* at ¶ 11.

Finally, with regard to complaint handling, Cook has developed complaint handling protocols and processes that govern the manner in which Cook responds to complaints, the types of information Cook evaluates in response to complaints, and the concerns and factors that drive Cook's decision-making in the complaint handling process. *Id.* at ¶ 12. Cook maintains strict confidentiality with regard to its complaint handling efforts, as well as the underlying processes and protocols for such efforts, because this information is the product of internal investment and the rigor and efficiency of Cook's practices contribute to its competitive success. *Id.* Public disclosure of this information would enable Cook's competitors to access and potentially adopt and benefit from Cook's methods, without having to make the investment that Cook was required to make, which would result in an undeserved benefit to Cook's competitors and a potential competitive disadvantage to Cook. *Id.* at ¶ 13.

Good cause exists to maintain **Exhibit 9 [Dkt. No. 7577-1]** under seal. Cook maintains strict confidentiality over its complaint handling efforts and disclosure of such information would harm Cook. Similarly, it maintains strict confidentiality over its regulatory affairs information and regulatory compliance methods and strategies the disclosure of which would put Cook at a competitive disadvantage. Further, any disclosure of proprietary post-market analysis information would harm Cook because it would "provide a blueprint for competitors." *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at *1 (S.D. Ind. Feb. 2, 2009); *see also Star Scientific*, 204 F.R.D. at 415 (research and data, such as sales techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge"). The disclosure of Cook's confidential post-market product analysis, regulatory affairs, and complaint handling information would result in competitive harm to Cook. **Exhibit 9 [Dkt. No. 7577-1]** should be sealed.

   **B.** **Exhibit 10 [Dkt. No. 7577-2] and Exhibit 11 [Dkt. No. 7577-3]**

**Exhibit 10 [Dkt. No. 7577-2]** – which is Quality System Procedure from William Cook Europe entitled "Complaint Investigation," (Version 4.0) with an effective date of October 23, 2013 - and **Exhibit 11 [Dkt. No. 7577-3]** - which is a report prepared by Dr. Paul Timperman (a radiologist engaged by Cook as a consultant to assess customer complaints) related to a specific customer complaint (PR38639) – should be both be maintained under seal as confidential complaint handling documents. The rationale and good cause for maintaining these documents under seal is outlined above in the portion of Section IV. A. discussing complaint handling.

As demonstrated above, Cook has developed complaint handling protocols and processes that govern the manner in which Cook responds to complaints, the types of information Cook evaluates in response to complaints, and the concerns and factors that drive Cook's decision-

making in the complaint handling process; Cook maintains strict confidentiality with regard to its complaint handling efforts, as well as the underlying processes and protocols for such efforts; this information is the product of internal investment and the rigor, and the efficiency of Cook's practices contribute to its competitive success; and public disclosure of this information would result in an undeserved benefit to Cook's competitors and a potential competitive disadvantage to Cook.  *See* Breedlove Decl. ¶¶ 12-13.

In sum, good cause exists to maintain **Exhibit 10 [Dkt. No. 7577-2] and Exhibit 11 [Dkt. No. 7577-3]** under seal.  Cook's complaint handling documents, information, and procedures are confidential and proprietary.  The public disclosure of such information would result in competitive harm to Cook, and these exhibits should be sealed.

## V. CONCLUSION

For all the foregoing reasons, the Cook Defendants respectfully request that the Court issue an Order directing the Clerk to maintain **Exhibit 9 [Dkt. No. 7577-1], Exhibit 10 [Dkt. No. 7577-2], and Exhibit 11 [Dkt. No. 7577-3]** to Plaintiff's Reply Brief ***under seal***.  The documents at issue are confidential and proprietary business information on post-market product analysis, regulatory affairs, and complaint handling documents and information.  There is good cause to seal the documents and to maintain them under seal to prevent public disclosure and competitive harm to the Cook Defendants.

In accordance with Local Rule 5-11(e)(4), the Cook Defendants have submitted a proposed order maintaining the documents under seal.

Respectfully submitted,

Dated:  February 12, 2018

/s/ Andrea Roberts Pierson
Andrea Roberts Pierson (# 18435-49)
J. Joseph Tanner (# 11856-49)
Nicholas B. Alford (# 31867-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-Mail:  joe.tanner@faegrebd.com
E-Mail:  nicholas.alford@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

- 13 -

US.116433691

**CERTIFICATE OF SERVICE**

I hereby certify that on February 12, 2018 a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

/s/ Andrea Roberts Pierson

US.116433691