UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND                   Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS   LIABILITY LITIGATION                         MDL No. 2570

_____

This Document Relates to Plaintiff
         Brenda Helms, Bankruptcy Trustee for the
         Estate of Arthur Gage,
         No. 1:14-cv-01875- TWP-MJD

_____


## COOK DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO BIFURCATE COMPENSATORY AND PUNITIVE DAMAGES PHASES OF TRIAL

The Cook Defendants[1] respectfully ask this Court to bifurcate the compensatory and

punitive damages portions of this case into separate trial phases, using the same jury.[2]  Such a

deliberate, phased approach to the complex issues presented in this case is particularly

appropriate in this bellwether trial, where the parties will rely on the results in this case to

consider resolution of other cases.  The Court granted such bifurcation in the *Hill* bellwether

case, *see* Dkt. 6944, finding that bifurcation would "conserve judicial resources and protect

defendants from unfair prejudice."  *Id.* at 1.  The same benefits justify bifurcation here.

The structural tool of bifurcation will promote the fairness and economy of this litigation.

As in *Hill*, the Cook Defendants propose that the initial phase of the jury trial would address and

resolve the questions of the Cook Defendants' liability to Plaintiff and the amount of

_____

[1] The Cook Defendants in this matter are Cook Incorporated, Cook Medical LLC f/k/a Cook
Medical Incorporated, and William Cook Europe ApS.  All references to the "Cook Defendants"
refer to all three entities unless otherwise noted.
[2] This motion is independent of the Cook Defendants' separate motion to bifurcate trial of the
statute of limitations issue from the rest of the issues in the compensatory phase of the trial, using
separate juries.

1

compensatory damages (if any), and the second phase—if necessary—would address the Cook

Defendants' liability for punitive damages and determination of the amount of such damages (if

any).  This two-phase approach offers several case-management benefits, has the potential to

conserve judicial resources, and protects the defendants from undue prejudice.

## I.      Standard

Federal Rule of Civil Procedure 42(b) permits a district court to order a separate trial of

one or more separate issues, claims, crossclaims, counterclaims, or third-party claims "for

convenience, to avoid prejudice, or to expedite and economize."   The district court may separate

issues for trial if the separation will prevent prejudice to a party or promote judicial economy.

*Chlopek v. Federal Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007); *Houseman v. United States*

*Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999).  If just one of these criteria is met,

the district court may order bifurcation if doing so will not prejudice the non-moving party and

will not violate the Seventh Amendment.[3]  *Cholpek*, 499 F.3d at 700; *Krocka v. City of Chicago*,

203 F.3d 507, 516 (7th Cir. 2000).  The decision to bifurcate is within the district court's

discretion, and its decision will be overturned only upon a clear showing of abuse.  *Houseman*,

171 F.3d at 1121; *McLaughlin v. State Farm*, 30 F.3d 861, 870 (7th Cir. 1994).

The present case presents multiple grounds for bifurcation:  bifurcation will promote

judicial economy, it will expedite proceedings, it will prevent unfair prejudice to the Cook

Defendants, and it will not prejudice Plaintiff.  This is a well-trodden path, and courts have often

bifurcated trials to promote convenience and judicial economy, expedite proceedings, and avoid

prejudice.  *See, e.g.*, *Cholpek*, 499 F.3d at 700; *Krocka*, 203 F.3d at 516; *Houseman*, 171 F.3d at

---

[3] Because the Cook Defendants propose that the same jury hear the compensatory and punitive
damages phases, there is no risk of violating the Seventh Amendment's prohibition on re-
examination.

1121; *Vandersteen v. Kelly*, No. 07 C 5632, 2010 WL 659327 at *2-3 (N.D. Ill. Feb. 23, 2010) (collecting cases where courts bifurcated compensatory and punitive damages).

The status of this case as an MDL bellwether gives additional weight to the arguments for bifurcation.  If this case proceeds to trial, a fair and orderly presentation of the issues to the jury is essential, not only to serve the interests of the individual litigants in this case but also to maintain the value of the case as a bellwether.  Other courts hearing bellwether cases in multi-district litigation have used SUCH bifurcation to prevent prejudice to defendants.  *See, e.g.*, *In re Actos (Pioglitazone) Products Liability Litigation*, 2014 WL 5461859 at *1 n.6 (W.D. La. October 27, 2014).  As discussed below, even viewed as a single case, the likelihood of prejudice to the Cook Defendants stemming from a single-phase trial is high.  The significance of that prejudice is augmented by the status of this case as one of the bellwethers for hundreds of cases in this MDL.

## II.    Bifurcation Of Punitive Damages Will Promote Judicial Economy And Sound Management

Based on the anticipated evidence and the law applicable to this case, a bifurcated approach to Plaintiff's punitive damages will be most efficient.

### A.    The Evidence Relevant to Punitive Damages Is Different From the Evidence Relevant to the Liability Theories and May Properly Be Reserved Until Necessary, Potentially Shortening the Trial.

For liability theories, Plaintiff rests on claims that the Cook Defendants failed to warn, that Mr. Gage's Cook Tulip IVC filter was defective in design or manufacture, that the Cook Defendants failed to follow the standard of care for medical device manufacturers, and that the Cook Defendants breached express or implied warranties, all of which require highly technical expert testimony.  Assuming *arguendo* that the Court permits any of these claims to go to trial,

US.116039700.05

much of the relevant evidence will consist of the testimony of the treating physicians and expert opinions on warnings, design, manufacture, and warranty issues.

It is both feasible and helpful to separate the evidence related to these primary liability theories from the evidence Plaintiff may seek to introduce on the issue of punitive damages. The two bodies of evidence do not substantially overlap. Most of the product liability theories that Plaintiff seeks to present do not depend on inquiry into the Cook Defendants' conduct, but on expert evidence of whether a design or manufacturing defect existed, whether the label adequately warned of the risk Mr. Gage encountered, and whether either express or implied warranties were breached.

In contrast, to obtain punitive damages, Plaintiff must present evidence that the Cook Defendants acted with "malice, fraud, gross negligence, or oppressiveness that was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing." *Gresser v. Dow Chem. Co., Inc.*, 989 N.E.2d 339, 349 (Ind. Ct. App. 2013).[4] These elevated standards (and the evidence Plaintiff might claim support them) are simply not relevant to the questions of whether a design or manufacturing defect existed, whether a failure to warn or breach of warranty occurred, or whether a Cook Defendant merely failed to follow a standard of conduct. When different legal theories apply, bifurcation of liability phases is appropriate. *See, e.g.*, *Jackson v. County of Los Angeles*, 29 F. App'x 430, 435-36 (9th Cir. 2001) (holding that bifurcation of liability phases is appropriate when each liability phase depends on a distinct theory); *see generally Hydrite Chem. Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 891 (7th Cir. 1995) ("The judge can bifurcate (or for that matter trifucate, or slice even more finely) a case at whatever point will minimize the overlap in evidence between the

---

[4] The application of Indiana law is discussed in Section II.B below.

4

segmented phases or otherwise promote economy and accuracy in adjudication.").[5]  And courts

have granted bifurcation of the punitive damages issue precisely *because* the primary product

liability theories do not focus on flagrant or egregious corporate conduct.  *See, e.g.*, *Emerick v*

*United States Suzuki Motor Corp.*, 750 F.2d 19, 22 (3d Cir. 1984) (approving bifurcation of

punitive damages in failure to warn and product defect case involving motorcycle kickstand); *see*

*also Scheufler v. General Host Corp.*, 895 F. Supp. 1411, 1414-15 (D. Kan. 1995) (discussing

the different evidence needed for actual and punitive damages in deciding to bifurcate the two

damages phases).

Likewise, there is no overlap in the evidence bearing on the damages aspects of

Plaintiff's compensatory and punitive damages claims.  The focus of compensatory damages is

on making the plaintiff whole, and Plaintiff's evidence concerning compensatory damages will

necessarily focus on the extent of Mr. Gage's injuries, medical expenses he incurred, the need for

future medical care, and the like.  In contrast, Plaintiff will presumably seek to support a request

for punitive damages by offering financial information about the resources of the Cook

Defendants.  The financial circumstances of the defendants do not affect the issues of warnings

provided with the product or the product's design.  *See, e.g.*, *Ely v. Cabot Oil & Gas Corp.*, No.

3:09-CV-2284, 2016 WL 454817, at *6 (M.D. Penn. Feb. 5, 2016) (recognizing conditional

relevance of financial evidence and determining that the request for punitive damages should be

bifurcated until the jury returns its liability and compensatory damages verdict and the court

---

[5] *See also Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468, 474 (5th Cir. 1986) (upholding
bifurcation of punitive and compensatory damages in asbestos personal injury trial was proper,
given the difference in purpose between punitive and compensatory damages); *Vandersteen*,
2010 WL 659327 at *2 (contrasting purposes of compensatory and punitive damages in deciding
to bifurcate).

determines whether there is adequate basis for the request for punitive damages to be returned to the jury).

Pragmatic reasons support bifurcation as well. Separating the two phases will allow the jury to better focus on the measure of damages. *See* Steven S. Gensler, *Bifurcation Unbound*, 75 Wash. L. Rev. 705, 706-07 (July 2000) (describing how bifurcation assists jury decision-making by ordering and simplifying the litigants' presentations and limiting the number of issues the jury must address at one time). Furthermore, some of the evidence Plaintiff wishes to rely on to support the request for punitive damages will be the subject of motions *in limine*, and bifurcation of trial may permit the Court to defer resolving certain motions until necessary.

Ultimately, if the jury declines to find for Plaintiff on the failure to warn, product defect or manufacturing claims, and/or warranty claims, separating the presentation of punitive damages will have the salutary effect of substantially shortening the trial. In other words, the additional evidence relevant only to punitive damages will be presented only if absolutely necessary. *See, e.g.*, *Emerick*, 750 F.2d at 22 (approving bifurcation in part because "the trial court correctly noted that the Emericks were not entitled to submit the issue of punitive damages to the jury until they first established Suzuki's liability for compensatory damages"). This was exactly the result in the *Hill* trial when the Court bifurcated compensatory and punitive damages; because the jury found for the Cook Defendants in the compensatory phase, evidence relating to punitive damages was unnecessary.

Given the complexity of evidence involved in the primary liability theories, this bifurcated approach offers economy of time and resources. It also reserves potentially difficult evidentiary gatekeeper decisions this Court may need to make—and the trial time related to such objections and responses—until such decisions are clearly necessary.

**B.      Punitive Damages Require a Separate Choice-of-Law Analysis, Making a Bifurcated Approach Particularly Appropriate.**

Although Illinois law applies to Plaintiff's claims for compensatory damages, the Cook Defendants maintain that the Court should apply Indiana law to the request for punitive damages. The Court's decision on that issue will depend on a choice-of-law analysis that the Court need confront only if the jury finds the Cook Defendants liable on Plaintiff's claims for compensatory damages and the Court determines Plaintiff has presented sufficient evidence to present the question of punitive damages to the jury.  The Court need not finally determine what state's law applies to Plaintiff's punitive damages claim in order to address the present motion for bifurcation.  Nevertheless, the discussion below demonstrates (1) the need for a separate analysis of choice-of-law issues for Plaintiff's compensatory and punitive damages claims, and (2) assuming the Cook Defendants are correct in their argument that Indiana law governs the punitive damages claim, the need to instruct the jury concerning different states' laws to the two claims.  Both of these factors weigh heavily in favor of bifurcating the compensatory and punitive damages claims in a phased trial.

Plaintiff's case originates from Illinois and was direct-filed in Indiana.   This Court has already determined that it will treat a foreign direct-filed case as if it had been transferred from the judicial district in the state from which the case originated.  *See* Entry on Motion for Judgment on the Pleadings Based on the Statute of Repose, Dkt. 4918 at 3 (May 31, 2017) ("[T]he court adopts this approach, as it is in keeping with the rule that the transferee court applies the law of the state in which the transferor court is located.").

To determine choice-of-law questions for tort issues, Illinois applies the "significant relationship" approach detailed in the Restatement (Second) of Conflict of Laws (1971). *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007).  Although courts typically

presume in personal injury cases are governed by the law of the state where the injury occurred,

that presumption may be overcome by showing that another state has a more significant

relationship to the issue under consideration.  *Id.* at 902–03; Restatement (Second) of Conflict of

Laws, § 175 (1971) ("Second Restatement").  In assessing that issue, "Illinois courts consider the

principles set forth in sections 6 and 145 of the Second Restatement."  *Curtis v. TransCor Am.*,

LLC, 2012 WL 1080116, at *5 (N.D. Ill. 2012 Mar. 29, 2012).

The Section 145 contacts include "(a) the place where the injury occurred, (b) the place

where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of

incorporation and place of business of the parties, and (d) the place where the relationship, if

any, between the parties is centered."  Restatement (Second) of Conflict of Laws § 145(2); *see

also Townsend*, 879 N.E.2d at 901.  The section 6 general principles include:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states

in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(2) (1971); *see also Townsend*, 879 N.E.2d at 900.

The parties agree that Illinois law governs Plaintiff's claims for compensatory damages,

but that does not resolve which state's law applies to the issue of punitive damages.  Under

Illinois procedural law, this Court must undertake the analysis of factors under sections 145 and

US.116039700.05

6 of the Second Restatement to determine what state's law applies to punitive damages.  *See Smith v. I-Flow Corp.*, 753 F. Supp. 2d 744, 748-49 (N.D. Ill. 2010) (analyzing choice of law for punitive damages claim in product liability case); *see also Curtis*, 2012 WL 1080116, at *4-11 (conducting analysis involving interests of three states); *In re Aircrash disaster Near Roselawn, Ind. on Oct. 31, 1994*, 926 F. Supp. 736, 739-46 (N.D. Ill. 1996) (similar).

   *Smith v. I-Flow Corp.* provides helpful guidance.  In *Smith*, Michigan plaintiffs were allegedly injured in Michigan by a pain pump manufacturer with its principal place of business in California.  Analyzing the Restatement factors, the court concluded that although Michigan law governed the plaintiffs' claims for compensatory damages, California law should apply to the request for punitive damages.  *Smith*, 753 F. Supp. 2d at 749.  The court noted that the relationship between the parties was centered in Michigan where the surgery occurred, but that the domicile factor did not point to any one state because the plaintiffs were citizens of Michigan and the manufacturer's principal place of business was California.  *Id.* at 747.  Reflecting that the "two most significant contacts in a tort case are the place where the injury occurred and the place where the conduct causing the injury occurred," *id.* at 747-48, the Court noted that the injury occurred in Michigan where the plaintiffs live and the surgery occurred, but the conduct that caused the injury took place in a state other than Michigan.  *Id.* at 748.  In particular, the manufacturers' "decisions regarding marketing and distribution of its pain pumps, and its activities that [plaintiffs] contend warrant imposition of punitive damages, took place in California" where the manufacturer is headquartered.  *Id.*  Just so here—Mr. Gage's injury occurred in Illinois; the conduct Plaintiff identifies as giving rise to punitive damages occurred at the Cook Defendants' corporate headquarters in Indiana.

US.116039700.05

The court in *Smith* also considered the policy factors identified in Section 6 of the Restatement and noted the distinct public purpose of punitive damages: "The public's goal is to punish wrongdoing and thereby to protect itself from future misconduct, either by the same defendant or other potential wrongdoers." *Id.* (internal citation and quotation omitted). The court reasoned that "the state in which a defendant is domiciled has a considerably stronger policy interest in whether punitive damages are available than the state in which the plaintiff's injury occurred." *Id.*; *see also* Restatement (Second) of Conflict of Laws, § 145 cmt c (1971) ("[A]n important factor in determining which is the state of most significant relationship is the purpose sought to be achieved by the rule of tort law involved. If this purpose is to punish the tortfeasor and thus to deter others from following his example, there is better reason to say that the state where the conduct occurred is the state of dominant interest and that its local law should control than if the tort rule is designed primarily to compensate the victim for his injuries."). The court concluded that the interest of California, the state where the manufacturer was based, "far outweighs" the interest of the state of Michigan with respect to the question of punitive damages. *Id.* at 749.

A virtually identical analysis is appropriate here. Plaintiff alleges claims based on strict-liability failure to warn, negligent design, manufacturing, and failure to warn, and breach of express and implied warranty. Those claims are generally based on corporate decisions concerning labeling and marketing practices and product design. Although the alleged injury occurred in Illinois, the injury-causing *conduct* alleged against the Cook Defendants occurred in Indiana, where the Cook Defendants have their corporate headquarters and where they made their marketing and labeling and product design decisions. Like the interest of the state of California recognized in *Smith*, Indiana also has special interest in regulating corporations

headquartered in the state, particularly on a question of whether the company is subject to punitive damages.  Indiana therefore has the most significant relationship regarding these issues and the question of deterrence.  Accordingly, Indiana law should apply to Plaintiff's request for punitive damages.

Numerous other courts analyzing the Restatement factors have reached similar conclusions:  the law of the home state of the corporate defendant should apply to a request for punitive damages under the Restatement factors, particularly if the injury-*causing* conduct occurred in that home state.  *See, e.g.*, *Kirchman*, 2014 WL 2722483, at *4 ("place of the injury-causing conduct"—home state of corporate defendant— "is more important than the place of injury"); *Campbell v. Fawber*, 975 F. Supp. 2d 485, 508 (M.D. Penn. 2013) (home state of corporate defendant had dominant interest on question of punitive damages); *Guenther v. Novartis Pharms. Corp.*, 2013 WL 1225391, at *2 (M.D. Fla. Mar. 27, 2013); (same)[6]; *see also Curtis*, 2012 WL 1080116, at *11 (applying law of the home state of the corporate defendant although not all injury-causing conduct occurred there).

In sum, the Cook Defendants maintain that the Court should apply Indiana law to Plaintiff's claim for punitive damages, including the relevant cap on punitive damages, and that

---

[6] *Acord Dopson-Troutt v. Novartis Pharm. Corp.*, 2103 WL 3808205 (M.D. Fla. Jul. 22, 2013); *Williams v. Novartis Pharm. Corp.*, Nos. 3:12-cv-145, 3:12-cv-238, 2014 WL 1599547, at *5-6 (S.D. Ohio Apr. 21, 2014) (rejecting contrary analysis in *Rowland v. Novartis Pharm. Corp.*, 2013 WL 6145119 (W.D. Pa. Nov. 22, 2013)); *Mathews v. Novartis Pharm. Corp.*, No. 3:12-cv-00314-WHR, slip op. at 6-7 (S.D. Ohio July 12, 2013) (Ex. 2); *Stromenger v. Novartis Pharm. Corp.*, No. 3:12-cv-00686, 2013 WL 1748357, at *8-10 (D. Or. Apr. 22, 2013); *Zimmerman v. Novartis Pharm. Corp.*, 889 F. Supp. 2d 757, 762-64 (D. Md. 2012); *Brown v. Novartis Pharm. Corp.*, No. 7:08-cv-00130-FL, 2011 WL 6318987, at *4-9 (E.D.N.C. Dec. 16, 2011); *Talley v. Novartis Pharm. Corp.*, No. 08-cv-361-GCM, 2011 WL 2559974, at *4-5 (W.D.N.C. June 28, 2011); *Deutsch v. Novartis Pharm. Corp.*, 723 F. Supp. 2d 521, 523-526 (E.D.N.Y. 2010) *Irby v. Novartis Pharm. Corp.*, Nos. MID-L-1815-08, 278, 2011 WL 5835414, slip op. at 8 (N.J. Super. Ct. Nov. 18, 2011); *Meng v. Novartis Pharm. Corp.*, Nos. L7670-07MT, L-6072-08MT, 2009 WL 4623715, slip op. at 5-6 (N.J. Super. Ct. Law Div. Nov. 23, 2009).

US.116039700.05

the jury must be instructed on punitive damages based on Indiana law.  Under Indiana law "[p]unitive damages may be awarded only if there is clear and convincing evidence that the defendant acted with malice, fraud, gross negligence, or oppressiveness which was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing." *Gresser*, 989 N.E.2d at 349.  If the Court agrees that the law of Indiana must govern Plaintiff's punitive damages claim, it would then need to instruct the jury with two different states' laws:  Illinois law for the compensatory claims and Indiana law for the punitive claim.

The advantages of bifurcation under these circumstances are manifest in at least two ways.  First, if the Court bifurcates the determination of punitive damages from liability and compensatory damages, the Court might entirely avoid the need to resolve this choice-of-law issue.  The jury may find no liability for compensatory damages, or the Court may determine that the evidence is insufficient to justify a second trial phase addressing punitive damages.  In either instance, the punitive damages claim would not go forward, and the Court would not need to determine which state's law would have governed that claim.

Second, even assuming a punitive claim went forward, bifurcation would avoid the Court having to instruct the jury on different states' laws for different claims at the same time, with the attendant potential confusion concerning substantive standards, burdens of proof, and the effects of evidence.  For example, Illinois law requires only a *preponderance* of evidence to prove Plaintiff's failure-to-warn and design-defect claims, but Indiana law requires *clear and convincing* evidence of the required misconduct to impose punitive damages. *See Gresser*, 989 N.E.2d at 349.  If the claims are not bifurcated, the Court will need to instruct the jury on both standards of proof in the same set of instructions, creating the substantial risk that the jury would

12

either apply the lower preponderance standard to the punitive-damage claim or the higher clear and convincing evidence standard to the liability theories.

Moreover, to the extent there is *any* question about the correct law to apply to Plaintiff's request for punitive damages, bifurcation is a prudent choice. The *Smith* court specifically suggested bifurcation of punitive damages for this very reason: "[P]rudence suggests that the Court should consider structuring the trial to attempt to preserve the choice of law issue for appellate review. The Court therefore proposes to bifurcate the issue of punitive damages from the issues of liability and compensatory damages." *Smith*, 753 F. Supp. 2d at 749. The Cook Defendants ask this Court to follow the same pragmatic approach.

## III. Bifurcation Of Punitive Damages Will Prevent Unfair Prejudice To The Cook Defendants

Besides conserving judicial resources and potentially expediting trial, bifurcation of the compensatory and punitive claims will prevent unfair prejudice to the Cook Defendants, as the Court noted in granting bifurcation in the *Hill* case. *See* Dkt. 6944. As discussed above, certain evidence potentially relevant to the request for punitive damages is irrelevant to Plaintiff's liability claims and the associated calculation of compensatory damages, and that evidence would unfairly infect the jury's deliberations if the two claims were tried together. As discussed in the Cook Defendants' summary judgment brief, Dkt. 5749, the evidence on which Plaintiff bases the punitive damages claim is insufficient as a matter of law to support that claim under the heightened standards that both Indiana and Illinois impose for a punitive award. But if the Court disagrees and allows the punitive damage claim to go to the jury, the Court should be especially wary of the serious risk of prejudice to the Cook Defendants and should protect against that risk by ordering a phased trial.

US.116039700.05

**A.     Certain Non-Financial Evidence Would Be Unfairly Prejudicial to the Cook Defendants if Presented Before a Liability Determination.**

The Cook Defendants anticipate that Plaintiff may seek to introduce in support of the punitive damages claim certain evidence that is wholly irrelevant to the liability and compensatory issues here and would be inadmissible as to those claims.  However, if the compensatory and punitive claims are not bifurcated—even with proper jury instructions in place—the jury might nevertheless consider such documents in determining liability and compensatory damages, resulting in unfair prejudice to the Cook Defendants.  *See Emerick*, 750 F.2d at 22 (upholding trial court's decision to bifurcate punitive damages where defendant's conduct was irrelevant to product liability theory and allowing evidence of defendant's conduct would have confused the jury and prejudiced the defendant); *Vandersteen*, 2010 WL 659327 at *2 (concluding that defendant's risk of prejudice if compensatory and punitive damages were not addressed separately was real and there was no reason for the court to take the risk); *Scheufler*, 985 F. Supp. at 1414 (noting that, without bifurcation, jury could improperly consider evidence relevant only to punitive damages during its determination of actual damages).[7]

---

[7] Courts have also recognized that evidence relevant to the damages phase (such as the extent of the plaintiff's injuries) can be unfairly prejudicial when introduced during the liability phase. *See Chlopek*, 499 F.3d at 701 (upholding district court's decision to bifurcate liability and damages phases of trial where evidence related to plaintiff's injury was irrelevant to liability phase and was likely to cloud the issues and prejudice the defendant if presented); *Miller v. New Jersey Transit Auth. Rail Operations*, 160 F.R.D. 37, 42 (D. N.J. 1995) (noting that the "complexity of the case and the severity of Plaintiff's injuries would prejudice the Defendants so severely if issues of liability and damages were not bifurcated that the Defendants would not receive a fair trial").  The Cook Defendants do not request such liability/damages bifurcation here, but simply observe that some courts have applied a standard for bifurcation that goes even further in preventing unfair prejudice than the bifurcation the Cook Defendants seek here.

US.116039700.05

Specific examples of "conduct evidence" Plaintiff may seek to introduce in support of a punitive damages claim but that are unrelated to Plaintiff's claims for compensatory damages include:

(1) Documents that post-date Mr. Gage's implant date of April 27, 2011.

(2) Communications and documents about unrelated products.

(3) Communications and documents regarding dealings with foreign regulatory authorities.

(4) Evidence of "subsequent remedial measures."

Some of these documents (or specific documents within one or more of these categories) will be the subject of forthcoming motions *in limine*. These categories of evidence have no bearing on Plaintiff's strict liability failure-to-warn, negligent manufacturing, product defect and failure-to-warn claims, or breach of warranty claims and should not be introduced with respect to Plaintiff's claims for compensatory damages.

With respect to evidence of subsequent remedial measures, Rule 407 bars Plaintiff from introducing such evidence to prove a design defect or a need for an instruction or warning. But with respect to the request for punitive damages, the Cook Defendants may themselves wish to offer evidence related to subsequent efforts to rebut the punitive damages claim, and specifically to show that their conduct was not willful and wanton. Unless the compensatory and punitive claims are bifurcated for trial, the Cook Defendants will be unfairly placed on the horns of a dilemma, forced to decide whether to prejudice their defense against Plaintiff's compensatory damages claim in order to defend against the punitive damages claim. Bifurcation resolves these concerns, eliminates the need for limiting instructions to the jury (which could be quite confusing and potentially ineffective), and likely shortens trial time required for the initial phase.

15

**B.      Evidence of the Cook Defendants' Financial Position Would Be Unfairly Prejudicial if Presented Before a Liability Determination.**

Evidence of corporate finances is not relevant to the question of liability on Plaintiff's strict liability failure-to-warn, negligent design, negligent manufacturing defect, negligent failure-to-warn, and breach of warranty theories.  However, if the compensatory and punitive phases are not separated, jurors will hear evidence related to the Cook Defendants' net worth while they are considering the merits of Plaintiff's claims for compensatory damages.  This juxtaposition would be fundamentally unfair to the Cook Defendants, and jury instructions cannot prevent that prejudice.  Courts have frequently bifurcated compensatory and punitive damage claims to prevent just this prejudice:  the jury's knowledge of the defendant's financial condition when determining liability and setting a compensatory award.  *See, e.g.*, *Jones v. Cargill, Inc.*, 490 F. Supp. 2d 978, 988 (N.D. Iowa 2007) (deeming bifurcation of punitive damages phase appropriate and noting that "[b]ifuration of trial into separate phases to consider punitive damages apart from liability avoids the potential that evidence pertinent to punitive damages, such as the financial status of Defendant, will improperly prejudice the jury's determination of liability"); *Collens v. City of New York*, 222 F.R.D. 249, 254 (S.D.N.Y. 2004) (stating "issues of punitive damages should normally be bifurcated from issues of liability so that proof of wealth is not admitted at the trial on liability and compensatory damages"); *North Dakota Fair Hous. Council, Inc. v. Allen*, 298 F. Supp. 2d 897, 899 (D. N. D. 2004) (granting motion to bifurcate punitive damages phase from liability and compensatory damages phase because "[e]vidence of the defendants' net worth, although relevant to issues concerning the claim for punitive damages, can have an adverse effect on jury deliberations concerning liability and compensatory damages").  And at least one federal appellate court has stated that bifurcation of punitive damages is the "preferred method" for accommodating the various interests when

evidence of the defendant's financial condition is to be presented.  *Smith v. Lightning Bolt Prods.*, 861 F.2d 363, 373-74 (2d Cir. 1988).[8]

Here, the Cook Defendants are some of Indiana's largest corporate citizens.  If evidence of the Cook Defendants' financial status is presented before the determination of liability and compensatory damages, it is certainly possible that the information would improperly affect the jury's determination of the appropriate amount of compensatory damages.  As the U.S. Supreme Court noted in *Honda Motor Company v. Oberg*, "presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses."  512 U.S. 415, 432 (1994).  This risk of unfair prejudice weighs heavily in favor of bifurcation.  *See State Farm Fire & Cas. Co. v. Woods*, 896 F. Supp. 658, 660 (E.D. Tex. 1995) (bifurcation is "wisest course" where defendant could be severely prejudiced by presentation of evidence of its net worth during the calculation of actual damages).

The financial documents, which are only relevant to punitive damages, are also highly confidential and entitled to special protection, as this Court has recognized.  *See generally* Baker's April 21, 2017 Order.  Given the highly confidential nature of this information, the information should be subject to public disclosure during trial[9] only if absolutely necessary, i.e., only after Plaintiff has first met the burden of proving that liability exists on the strict liability failure-to-warn, negligent manufacturing, design, and failure-to-warn, or breach of warranty claims and this Court has determined, based on the even higher standard of proof required for punitive damages, that the jury should consider the issue.  *Cf. Industrias Metalicas Marva, Inc. v.*

---

[8] Reflecting the same policy, approximately 14 states statutorily provide for bifurcation of compensatory and punitive damages claims.  *See, e.g.,* Minn. Stat. § 549.20, subd. 4 (2016) (requiring bifurcation of compensatory and punitive claims on request of any party and barring evidence of defendant's financial condition in compensatory phase).

[9] In the event the documents are introduced at trial, the Cook Defendants reserve the right to request special protection.

US.116039700.05

*Lausell*, 172 F.R.D. 1, 8-9 (D. P.R. 1997) (approving bifurcation of liability and damages (including discovery) in infringement case in part because of concerns over defendant's confidential documents).

In addition, given the magnitude of the interest at stake for the Cook Defendants and the potential for unfair prejudice in a single-phase trial, the need for bifurcation of punitive damages in this case goes beyond the typical considerations of judicial economy and avoidance of prejudice and reaches the point where the Cook Defendants actually have a due process right to bifurcation under the Fourteenth Amendment.   Punitive damage awards imposed arbitrarily without proper procedural safeguards violate due process protections.  *Honda*, 512 U.S. at 432. In this case, the procedural safeguard necessary to prevent an arbitrary award of punitive damages is a bifurcated trial.

Under *Connecticut v. Doehr*,[10] when a party makes a due process challenge to a state's role in a property deprivation, the inquiry is as follows:

> [F]irst, consideration of the private interest that will be affected by the prejudgment measure; second, an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards; and third, in contrast to *Mathews*, principal attention to the interest of the party seeking the prejudgment remedy, with, nonetheless, due regard for any ancillary interest the government may have in providing the procedure or foregoing the added burden of providing greater protections.

501 U.S. 1, 11 (1991).

As to the first consideration—the private interest affected by the decision to bifurcate— the Cook Defendants certainly have a substantial private interest at stake:  the potential punitive

---

[10] The *Doehr* case modifies the existing *Mathews v. Eldridge* test as it applies to cases involving private litigants.  *See Mathews v. Eldridge*, 424 U.S. 319 (1976).

damages award.  On the second consideration—the risk of erroneous deprivation through a unitary trial and the probable value of a bifurcated trial—as described above, many courts and state legislatures have acknowledged the risk of a jury erroneously considering evidence of a defendant's net worth when determining liability and calculating compensatory damages, and noted the efficacy of a bifurcated trial in resolving that risk.  In this case, ordering bifurcation would prevent unfair prejudice to the Cook Defendants, thus satisfying the second requirement. The third requirement—balancing the interests of the party seeking bifurcation with the burden bifurcation would impose on the government—is satisfied as well.  As discussed in Section II,  a two-phase trial in front of a single jury is likely to conserve the government's resources rather than create a burden, and the government's interest in holding a fair proceeding far outweighs any procedural inconvenience that might occur.  Because bifurcation of the punitive phase would prevent unfair prejudice to the Cook Defendants and would not be overly burdensome to the government, the Cook Defendants are entitled to bifurcation as a matter of due process.

In sum, the prejudice to the Cook Defendants stemming from having irrelevant and prejudicial evidence spilled into a single-phase trial would *alone* be sufficient reason to grant bifurcation.  Combined with the other factors discussed throughout this memorandum, the argument for bifurcation is compelling.

## IV.    Plaintiff Is Not Prejudiced By Bifurcation

Finally, bifurcation of the liability and compensatory damages claims from the punitive damages claims will not prejudice Plaintiff, let alone *unfairly* prejudice Plaintiff.  Under the Cook Defendants' proposal, if Plaintiff proves the claim for compensatory damages and the Court finds the evidence sufficient to create a jury question on punitive damages, Plaintiff would have the full opportunity to present and argue the case for punitive damages to the jury.  Plaintiff

cannot reasonably claim any right to present evidence relevant to punitive damages before the jury determines liability:  A plaintiff does not suffer prejudice by not being allowed to present evidence irrelevant to the issue at hand.  *See, e.g.*, *Chlopek*, 499 F.3d at 70; *Krocka*, 203 F.3d at 516.

## V.    Conclusion

As the Court recognized in the *Hill* case, bifurcating the punitive damages phase of trial offers several advantages in the interests of prudent trial management—enhancing efficiency and deferring resolution of various issues until necessary.  It is also imperative to avoid jury confusion and risk of unfair prejudice to the Cook Defendants.  *Cf. Hall v. Babcock & Wilcox Co.,* 69 F. Supp. 2d 716, 733 (W.D. Pa. 1999) (granting defendants' motion for a new trial so separate trials on compensatory and punitive damages claims could be held to avoid prejudice to the defendants).  For the reasons detailed above, the Cook Defendants ask this Court follow the procedure it adopted in *Hill* and bifurcate the compensatory and punitive damages claims and try those claims in a phased trial to the same jury.

US.116039700.05

Dated: February 12, 2018

Respectfully submitted,

/s/ Andrea Roberts Pierson
Andrea Roberts Pierson, Co-Lead Counsel
John T. Schlafer
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:         (317) 237-0300
Facsimile:         (317) 237-1000
andrea.pierson@faegrebd.com
john.schlafer@faegrebd.com

James Stephen Bennett, Co-Lead Counsel
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana  46802
Telephone:         (260) 424-8000
Facsimile:         (260) 460-1700
stephen.bennett@faegrebd.com

*Attorneys for Defendants Cook Incorporated, Cook Medical LLC f/k/a Cook Medical Incorporated, William Cook Europe APS*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 12, 2018, a copy of COOK DEFENDANTS'

MEMORANDUM IN SUPPORT OF MOTION TO BIFURCATE  COMPENSATORY AND

PUNITIVE DAMAGES PHASES OF TRIAL was filed electronically, and notice of the filing of

this document will be sent to all parties by operation of the Court's electronic filing system to

CM/ECF participants registered to receive service in this matter.  Parties may access this filing

through the Court's system.  Lead Co-Counsel for Defendants will serve any non-CM/ECF

registered parties.


/s/ Andrea Pierson Roberts

US.116039700.05