EXHIBIT A

| | |
|---|---|
| **From:** | Justin Sabol |
| **To:** | "CookFilterMDL@FaegreBD.com" |
| **Subject:** | Ashley Gilbert Plaintiff Profile Sheet, Case No. 1:16-cv-06049-RLY-TAB |
| **Date:** | Thursday, February 01, 2018 3:19:54 PM |
| **Attachments:** | Gilbert, Ashley Plaintiff Profile Sheet.pdf |

Dear Counsel,

       Please find attached the completed Plaintiff Profile Sheet for Ashley Gilbert in the Cook IVC Filter MDL, Case No. 1:16-cv-06049-RLY-TAB.

Best Regards,

Justin A. Sabol
**Paralegal**
**Brenes Law Group, P.C.**.
27141 Aliso Creek Rd., Ste 270
Aliso Viejo, CA 92656
(888) 862-6104 Toll Free
(949) 397-9128 Telephone
(949) 607-4192 Facsimile
www.BrenesLawGroup.com



Privileged and Confidential Communication.  This electronic transmission, and any documents attached hereto, (a) are protected by the Electronic Communications Privacy Act (18 USC sections 2510-2521), (b) may contain confidential and/or legally privileged information and/or attorney work-product, and (c) are for the sole use of the intended recipient named above.  If you have received this electronic message in error, please notify the sender and delete the electronic message.  Any disclosure, copying, distribution, or use of the contents of the information received in error is strictly prohibited.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA

*MDL No. 2570*

IN RE:  COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION

In completing this **Plaintiff Profile Sheet**, you are under oath and must provide information that is true and correct to the best of your knowledge. The Plaintiff Profile Form shall be completed in accordance with the requirements and guidelines set forth in the applicable Case Management Order.

## I. CASE INFORMATION

**Caption:**   Gilbert v. Cook Incorporated, et al.          **Date:**  7/27/2016
**Docket No.:**   1:16-cv06049-RLY-TAB
**Plaintiff(s) attorney and Contact information:**
   Troy A. Brenes
   Brenes Law Group, P.C.
   27141 Aliso Creek Rd., Ste 270
   Aliso Viejo, CA 92656

## II. PLAINTIFF INFORMATION

1. Please State:
   a. Full name of the person who received the Cook Inferior Vena Cava Filter(s), including maiden name (if applicable):  Ashley  Shanea Gilbert
   b. If you are completing this form in a representative capacity (e.g., on behalf of the estate of a deceased person), please list your full name and your relationship to the person listed in 1(a) above:
      [If you are completing this form in a representative capacity, please respond to the remaining questions with respect to the person who received the Cook IVC Filter.]
2. Spouse:  N/A                          Loss of Consortium?  ☐Yes ☒No
3. Date of birth:  6/12/1988
4. Date of death (if applicable):
5. Social Security No.:  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
6. Current Address:  601 McDermott St., Las Vegas, NV 89107
   a. If you have lived at this address for less than ten (10) years, provide each of your prior residential addresses from 2006 to the present:

| Prior Address | Dates You Lived at this Address |
|---|---|
| 220 Mission Catalina Lane, Unit 104 Las Vegas, NV 89107 | 2015 - 2017 |
| 1325 S. Casino Center, Apt. B Las Vegas, NV 89104 | 2013 - 2015 |
| 301 Orland Ave., Apt 36 Las Vegas, NV 89107 | 2006 - 2013 |

7.  If you have ever been married, provide (a) the name of your current spouse and the date you were married and (b) the name of your ex-spouse(s) and the date of each marriage.

N/A

8.  Do you have children? ☒ Yes ☐ No

If yes, please provide the following information with respect to each child:

| Name and Address of Child | DOB | Is the Child Dependent on You? |
|---|---|---|
| Leeshanea Gilbert | 8/28/2002 | Yes |
| Omariyae Strong | 2/18/2008 | Yes |
|  |  |  |
|  |  |  |

9.  Other than children identified above, identify the name and age of any person who currently resides with you and their relationship to you:

Christopher Gilbert - 68 - Grandfather

Kieran Gilbert - 47 - Father

10. Please state your highest level of education: some high school, high school graduate, some college, college graduate, or post-graduate degree and identify the institution at which you attained your highest level of education.

11th Grade

11. Are you claiming damages for lost wages: ☒ Yes ☐ No

12. If so, for what time period:   9/21/2012 - Present

13. Please provide the following employment information for the period beginning two years before your IVC filter implant or the past 10 years, whichever is shorter:

| Employer | Job Title/Duties | Dates of Employment | Salary/Pay Rate |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

2

a. Have you filed for bankruptcy from 2 years prior to the date of first placement of the Inferior Vena Cava Filter to the present?: ☐Yes ☒No

b. If so, state the year you filed and whether the bankruptcy trustee been notified of your pending claim.

_____

14. Have you ever served in any branch of the military? ☐Yes ☒No

a. If yes, please provide the branch and dates of service, rank upon discharge and the type of discharge you received:

_____

15. Within the last ten (10) years, have you been convicted of, or plead guilty to, a felony and/or crime of fraud or dishonesty? ☐Yes ☒No

If yes, please set forth where, when and the felony and/or crime of fraud and/or dishonesty:

_____

_____

16. Do you have a computer?  ☐Yes ☒No

17. If so, do you now or have you in the past had an account with Facebook, Twitter, Instagram, Vine, Snapchat, YouTube, LinkedIn or other social media websites? ☒Yes ☐No ☐Not Applicable

## III. DEVICE INFORMATION

1. Date of Implant: ___September 25, 2012___
2. Reason for Implant: ___Pulmonary Emboli Prevention___
3. Brand Name: ___Cook Celect___
4. Mfr. ___Cook Medical___
5. Lot Number: ___Unknown___
6. Placement Physician (Name/Address):___Robby Ann Quinsto, M.D.___
7. Medical Facility (Name/Address): ___University Medical Center, Las Vegas, NV___

(This section to be used if more than one filter is at issue)

1. Date of Implant: _____
2. Reason for Implant: _____
3. Brand Name: _____
4. Mfr. _____
5. Lot Number: _____
6. Placement Physician (Name/Address):_____
7. Medical Facility (Name/Address): _____

Have you ever been implanted with any other vena cava filters or related product(s) besides the Cook Inferior Vena Cava Filter(s) for the treatment of the same condition(s) identified in your answer above?

    a.  If yes, please identify any such device(s) or product(s). _____

    b.  When was this device or product implanted in you? _____

    c.  Provide the name, address and phone number of the physician(s) who implanted this other device or product? _____

    d.  Provide the name and address of facilities where the other device or product implanted in you? _____

    e.  State your understanding of why was the other device or product implanted in you?

*• Attach medical evidence of product identification*

## IV. RETRIEVAL/REMOVAL/EXPLANT PROCEDURE INFORMATION

1.  Date of retrieval (including any attempts):  1/2/2015(unsuccessful)
2.  Type of retrieval:  Laproscopic
3.  Retrieval physician (Name/Address):  Elan Bomsztyk, M.D.
4.  Medical Facility (Name/Address):  University Medical Center, Las Vegas, NV
5.  Reason for Retrieval:  IVC Filter perforation obstruction to the duodenal wall

(This section to be used if more than one retrieval attempted)

1.  Date of retrieval (including any attempts): 1/12/2015
2.  Type of retrieval:  Open Removal
3.  Retrieval physician (Name/Address): Quynh Feikes, M.D.
4.  Medical Facility (Name/Address):  University Medical Center, Las Vegas, NV
5.  Reason for Retrieval: Migrated filter with perforating struts

1.  Date of retrieval (including any attempts):_____
2.  Type of retrieval: _____
3.  Retrieval physician (Name/Address): _____
4.  Medical Facility (Name/Address): _____
5.  Reason for Retrieval:_____

1.  Date of retrieval (including any attempts):_____
2.  Type of retrieval: _____
3.  Retrieval physician (Name/Address): _____
4.  Medical Facility (Name/Address): _____
5.  Reason for Retrieval:_____

## V.  OUTCOME ATTRIBUTED TO DEVICE

| | |
|---|---|
| ☒ **Migration** | ☐ Other |
| ☒ **Tilt** | ☐ Other |
| ☒ **Vena Cava Perforation** | ☐ Other |
| ☐ **Fracture** | ☐ Other |
| ☐ **Device is unable to be retrieved** | ☐ Other |
| ☐ **Bleeding** | ☐ Other |
| ☒ **Organ Perforation** | ☐ Other |

## VI. HOW OUTCOME(S) ATTRIBUTED TO DEVICE DETERMINED

Ct Scan                                    by    John Ryan, M.D.
(e.g. imaging studies, surgery, doctor visits)

_____    by    _____

_____    by    _____

_____    by    _____

## VII. CURRENT COMPLAINTS

Describe all injuries and physical complaints you attribute to the device:

Pain and suffering, including disfigurement and pain when active.

## VIII. MEDICAL BACKGROUND

1. Provide your <u>current</u>: Age ___29___   Height ___5' 3"___   Weight ___250___
2. Provide your: Age ___24___   Weight ___240___ (approximate, if unknown) <u>at the time</u> the Cook Inferior Vena Cava Filter was implanted in you.

3. In chronological order, list any and all hospitalizations and outpatient procedures you had in the five (5) year period BEFORE implantation of the Cook Inferior Vena Cava Filter(s). Identify by name and address the doctor(s), hospital(s) or other healthcare provider(s) involved with each hospitalization or outpatient procedure; and provide the approximate date(s) for each:

| Approximate Date | Doctor or Healthcare Provider Involved (including address) |
|---|---|
| Do Not Recall | |
| | |
| | |

*[Attach additional sheets as necessary to provide the same information for any and all surgeries leading up to implantation of the Cook Inferior Vena Cava Filter(s)]*

4. <u>Before the implantation</u> of the Cook Inferior Vena Cava Filter(s), did you regularly exercise or participate in activities that required lifting or strenuous physical activity?

    ☒ Yes ☐ No

5. In chronological order, list any and all hospitalizations and outpatient procedures you had AFTER implantation of the Cook Inferior Vena Cava Filter(s). Identify by name and address the doctor(s), hospital(s) or other healthcare provider(s) involved with each hospitalization or outpatient procedure, and provide the approximate date(s) for each:

| Approximate Date | Doctor or Healthcare Provider Involved (including address) |
|---|---|
| 2012 - Present | University Medical Center, 1800 W. Charleston Blvd., Las Vegas, NV 89102 |
| | |
| | |

6. To the extent not already provided in the charts above, provide the name, address, and telephone number of every doctor, hospital or other health care provider from which you have received medical advice and/or treatment in the past seven (7) years:

| Name and Specialty | Address | Approximate Dates/Years of Visits |
|---|---|---|
| N/A | | |
| | | |
| | | |
| | | |

7. <u>Since the date</u> that the Cook Inferior Vena Cava Filter(s) was implanted, have you regularly exercised, or regularly participated in activities that required lifting, or regularly engaged in strenuous physical activity?

☐Yes ☒No

Describe each activity which you contend has been limited or which you contend that you can no longer engage in because of receiving of your Cook Inferior Vena Cava Filter(s).

I have pain all the time and especially when i try to be active.

8. Number of Deep Vein Thromboses before and after implant of your Cook IVC Filter:
   Do Not Recall

9. Number of Pulmonary Emboli before and after the implant of your Cook IVC filter:
   Do Not Recall

10. If you had any of the following conditions beginning five years before your IVC filter implant or after it was implanted, please provide the requested information.

| Condition | Date Range | Treating Doctor and/or Facility |
|---|---|---|
| Lupus ☐Yes ☒No | | |
| Crohn's Disease ☐Yes ☒No | | |
| Factor V Leiden ☐Yes ☒No | | |
| Protein Deficiency ☐Yes ☒No | | |
| Spinal fusion/back sx ☐Yes ☒No | | |

| Anti-thrombin deficiency ☐Yes ☒No | | |
|---|---|---|
| Prothrombin mutation ☐Yes ☒No | | |

11. For the period beginning five (5) years before your IVC implant to the present date, describe all major health problems and surgeries you recall, other than those listed above.

| Approx. Date Range | Health Problem or Surgery |
|---|---|
| 2011 - Present | Hypertension |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

12. If you are seeking damages for emotional distress in this lawsuit, you must respond to this question:  Yes

Have you experienced, been diagnosed with or received psychiatric or psychological treatment of any type, including therapy, for any mental health conditions including depression, anxiety or other emotional or psychiatric disorders during the three (3) years prior to the filing of this lawsuit through the present?  ☐Yes ☒No

If yes, specify condition, date of onset, medication/treatment, treating physician and current status of condition:

_____

_____

_____

13. Do you now or have you ever smoked tobacco products?  ☒Yes ☐No

    If yes: How long have/did you smoke?  ___Approx. 8 years___

14. List each prescription medication you have taken for more than three (3) months at a time, beginning three (3) years prior to the implant to the present, please provide the following.

| Medication | Reason for Taking | Dates of Use | Pharmacy (with Address if Known) |
|---|---|---|---|
| Do Not Recall | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

## IX.  PRIOR CLAIM INFORMATION & FACT WITNESSES

1. Have you filed a lawsuit or made a claim since the placement of the device, other than in the present suit, relating to any bodily injury? ☐Yes ☒No.  If yes, specify:

    a. Court in which lawsuit/claim was filed or initiated:_____

    b. Case/Claim Number:_____

    c. Nature of Claim/Injury:_____

2. Have you applied for Workers' Compensation (WC), Social Security disability (SSI or SSD) benefits, or other State or Federal disability benefits since the placement of the device? ☐Yes ☒No.  If yes, specify:

    a. Date (or year) of application:_____

    b. Type of benefits sought: _____

    c. Agency/Insurer from which you sought the benefits:_____

    d. The nature of the claimed injury/disability: _____

e.   Whether the claim was accepted or denied: _____

3.   Identify by name, address and relationship to you, all persons (other than your healthcare providers) who possess information concerning your injuries and/or current medical condition:

| Name | Address (if known) | Relationship to You |
|------|--------------------|--------------------|
| N/A  |                    |                    |
|      |                    |                    |
|      |                    |                    |
|      |                    |                    |
|      |                    |                    |

## X. DOCUMENT REQUESTS

In addition to the requirements in Amended Case Management Order #4, Section 1.d., that each plaintiff shall provide the defendants with hard copies or electronic files of all medical records in their possession or in the possession of their attorneys or other representatives, including, but not limited to, records that support product identification, state whether you have any of the following documents in your possession or in the possession of your attorneys or other representatives.  If you do, please provide a true and correct copy of any such documents with this completed Profile Sheet.

1.   If you were appointed by a Court to represent the plaintiff in this lawsuit, produce any documents demonstrating such appointment.
       Applies to me and: ☐the documents are attached OR ☐I have no documents OR
       ☒Does not apply to me

2.   If you represent the Estate of a deceased person in this lawsuit, produce a copy of the decedent's death certificate and autopsy report (if applicable).
       Applies to me and: ☐the documents are attached OR ☐I have no documents OR
       ☒Does not apply to me

3.   Produce any Cook Inferior Vena Cava Filter product packaging, labeling, advertising, or any other product-related items.
       Applies to me and: ☐the documents are attached OR ☒I have no documents OR
       ☐Does not apply to me

4.  Produce all documents concerning any communication between you and the Food and Drug Administration (FDA), or between you and any employee or agent of the Cook Group Defendants, regarding the Cook Inferior Vena Cava Filter(s) at issue, except those communications that are attorney/client or work product privileged or that are between your counsel in this case and Cook or Cook's counsel.

    Applies to me and: ☐ the documents are attached OR ☐ I have no documents OR ☒ Does not apply to me

5.  Produce all documents, correspondence or communication relating to the Cook Inferior Vena Cava Filter, which was exchanged between Cook Group Defendants, your healthcare providers or you, except those communications that are attorney/client or work product privileged or that are between your counsel in this case and Cook or Cook's counsel.

    Applies to me and: ☐ the documents are attached OR ☒ I have no documents OR ☐ Does not apply to me

6.  Produce all documents describing risks and/or benefits of Inferior Vena Cava Filters, which you received before your procedure, including but not limited to any risks and/or benefits associated with the Cook Inferior Vena Cava Filter(s)

    Applies to me and: ☐ the documents are attached OR ☒ I have no documents OR ☐ Does not apply to me

7.  Produce any and all documents reflecting the model number and lot number of the Cook Inferior Vena Cava Filter(s) you received.

    Applies to me and: ☐ the documents are attached OR ☒ I have no documents OR ☐ Does not apply to me

8.  If you underwent surgery or any other procedure to remove, in whole or in part, the Cook Inferior Vena Cava Filter(s), produce any and all documents, other than documents that may have been generated by expert witnesses retained by your counsel for litigation purposes, that relate to any evaluation of the Cook Inferior Vena Cava Filter(s) removed from you.

    Applies to me and: ☒ the documents are attached OR ☐ I have no documents OR ☐ Does not apply to me

9.  If you claim lost wages or lost earning capacity, produce copies of your Federal and State tax returns for the period beginning three years before you claim your wage loss began to the present date, redacting irrelevant information.

    Applies to me and: ☐ the documents are attached OR ☐ I have no documents OR ☒ Does not apply to me

10. All documents concerning payments on behalf of the injured party for medical treatment relating to the injuries claimed in this lawsuit, including, but not limited to any lien notices and documents which identify potential lien holders

Applies to me and: ☒the documents are attached OR ☐I have no documents OR ☐ Does not apply to me

## AUTHORIZATIONS

Provide ONE (1) SIGNED ORIGINAL copy of the records authorization form attached in Exhibit A. The form will authorize counsel for the Cook Group Companies to obtain those records identified within this Claimant Profile Form.

## VERIFICATION

I, _Ashley Gilbert_, declare under penalty of perjury subject to all applicable laws, that I have carefully reviewed the final copy of this Claimant Profile Form dated _Jan 29, 2018_ and verified that all of the information provided is true and correct to the best of my knowledge, information and belief.

_____
[Signature of Claimant]

## VERIFICATION OF LOSS OF CONSORTIUM (if applicable)

I, _____ declare under penalty of perjury subject to all applicable laws, that I have carefully reviewed the final copy of this Claimant Profile Form dated _____ and verified that all of the information provided is true and correct to the best of my knowledge, information and belief.

_____
[Signature of Consortium Plaintiff]

1582633-3 (10909-0412)

**AUTHORIZATION TO DISCLOSE MEDICAL INFORMATION**

To:

I, the undersigned, hereby authorize and request the Custodian of the above-named entity to disclose to Wooden & McLaughlin LLP, 211 N. Pennsylvania St., Suite 1800, Indianapolis, IN 46204 _____ any and all medical records, including those that may contain protected health information (PHI) regarding Ashley Gilbert, whether created before or after the date of signature.

This authorization specifically does **not** permit Wooden & McLaughlin LLP to discuss any aspect of my medical care, medical history, treatment, diagnosis, prognosis, or any other circumstances revealed by or in the medical records with my medical providers, past or present, ex parte and without the presence of my attorney.  Records requested may include, but are not limited to:

a)    all medical records, physician's records, surgeon's records, pathology/cytology reports, physicals and histories, laboratory reports, operating room records, discharge summaries, progress notes, patient intake forms, consultations, prescriptions, nurses' notes, birth certificate and other vital statistic records, communicable disease testing and treatment records, correspondence, prescription records, medication records, orders for medications, therapists' notes, social worker's records, insurance records, consent for treatment, statements of account, itemized bills, invoices and any other papers relating to any examination, diagnosis, treatment, periods of hospitalization, or stays of confinement, or documents containing information regarding amendment of protected health information (PHI) in the medical records, copies (NOT originals) of all x-rays, CT scans, MRI films, photographs, and any other radiological, nuclear medicine, or radiation therapy films and of any corresponding reports and requisition records, and any other written materials in its possession relating to any and all medical diagnoses, medical examinations, medical and surgical treatments or procedures.  I expressly request that all covered entities under HIPAA identified above disclose full and complete protected medical information. This authorization and release does not allow _____ to request or take possession of pathology/cytology specimens, extracted mesh, pathology/cytology or hematology slides, wet tissue or tissue blocks.

b)    complete copies of all prescription profile records, prescription slips, medication records, orders for medication, payment records, insurance claims forms correspondence and any other records. I expressly request that all covered entities under HIPAA identified above disclose full and complete protected medical information.

A photocopy of this authorization shall be considered as effective and valid as the original, and this authorization will remain in effect until the earlier of: (i) the date of settlement or final disposition of Ashley Gilbert v. Cook Medical Inc., et al. or (ii) five (5) years after the date of signature of the undersigned below.  The purpose of this authorization is for civil litigation.

**NOTICE**

- The individual signing this authorization has the right to revoke this authorization at any time, provided the revocation is in writing to Wooden & McLaughlin LLP except to the extent that the entity has already relied upon this Authorization to disclose protected health information (PHI).
- The individual signing this authorization understands that the covered entity to whom this authorization is directed may not condition treatment, payment, enrollment or eligibility benefits on whether or not the individual signs the authorization.
- The individual signing this authorization understands that protected health information (PHI) disclosed pursuant to this authorization may be subject to redisclosure by the recipients and that, in such case, the disclosed PHI no longer will be protected by federal privacy regulations.
- The individual signing this authorization expressly authorizes the above-named entity to disclose HIV/AIDS records and information to Wooden & McLaughlin LLP.
- The individual signing this authorization understands information authorized for release may include records that may indicate the presence of a communicable disease.
- The individual signing this authorization understands that she/he shall be entitled to receive a copy of all documents requested via this authorization within a reasonable period of time after such records are received by Wooden & McLaughlin LLP.

I have read this Authorization and understand that it will permit the entity identified above to disclose PHI to Wooden & McLaughlin LLP.

Ashley Gilbert

_____
Name of Patient (Print)

_____
Former/Alias/Maiden Name of Patient

June 12, 1988
_____
Patient's Date of Birth

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
_____
Patient's Social Security Number

1001 McDermit St
_____
Patient's Address   Las Vegas, NV
89107

_____
Signature of Patient or Individual

1/29/2018
_____
Date

_____
Name of Patient Representative

_____
Description of Authority

## AUTHORIZATION AND CONSENT
## TO RELEASE PSYCHOTHERAPY NOTE

Name of Individual: Ashley Gilbert

Social Security Number: 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

Date of Birth: June 12 11988

Provider Name:

TO:        All physicians, hospitals, clinics and institutions, pharmacists and other healthcare providers

        The Veteran's Administration and all Veteran's Administration hospitals, clinics, physicians and employees

        The Social Security Administration

        Open Records, Administrative Specialist, Department of Workers' Claims

        All employers or other persons, firms, corporations, schools and other educational institutions

The undersigned individual herby authorizes each entity included in any of the above categories to furnish and disclose to Wooden & McLaughlin LLP, 211 N. Pennsylvania St., Suite 1800, Indianapolis, IN 46204 and its authorized representatives, true and correct copies of all "psychotherapy notes", as such term is defined by the Health Insurance Portability and Accountability Act, 45 CFR §164.501. Under HIPAA, the term "psychotherapy notes" means notes recorded (in any medium) by a health care provider who is a mental health professional documenting or analyzing the contents of conversation during a private counseling session or a group, joint or family counseling session and that are separated from the rest of the individual's record. This authorization does not authorize Wooden & McLaughlin LLP to engage in ex parte communication concerning same.

- This authorization provides for the disclosure of the above-named patient's protected health information for purposes of the following litigation matter: Ashley Gilbert v. Cook Medical, Inc., et al.

- The undersigned individual is hereby notified and acknowledges that any health care provider or health plan disclosing the above requested information may not condition treatment, payment, enrollment or eligibility for benefits on whether the individual signs this authorization.

- The undersigned individual is hereby notified and acknowledges that he or she may revoke this authorization by providing written notice to Wooden & McLaughlin LLP and/or to one or more entities listed in the above categories, except to the extent that any such entity has taken action in reliance on this authorization.

- The undersigned is hereby notified and acknowledges that he or she is aware of the potential that protected health information disclosed and furnished to the recipient pursuant to this authorization is subject to redisclosure by the recipient for the purposes of this litigation in a manner that will not be protected by the Standards for the Privacy of Individually Identifiable Health Information contained in the HIPAA regulations (45 CFR §§164.500-164.534).

- The undersigned is hereby notified that he/she is aware that any and all protected health information disclosed and ultimately furnished to Wooden & McLaughlin LLP in accordance with orders of the court pursuant to this authorization will be shared with any and all co-defendants in the matter of Ashley Gilbert v. Cook Medical, Inc., et al. and is subject to redisclosure by the recipient for the purposes of this litigation in a manner that will not be protected by the Standards for the Privacy of Individually Identifiable Health Information contained in the HIPAA regulations (45 CFR §§164.500-164.534).

- A photocopy of this authorization shall be considered as effective and valid as the original, and this authorization will remain in effect until the earlier of: (i) the date of settlement or final disposition of _Ashley Gilbert_ v. Cook Medical, Inc., et al. or (ii) five (5) years after the date of signature of the undersigned.

**I have carefully read and understand the above and do hereby expressly and voluntarily authorize the disclosure of all of my above information to Wooden & McLaughlin LLP and its authorized representatives, by any entities included in the categories listed above.**

Date: _1/29/2018_

_[Signature]_
Signature of Individual or Individual's Representative

Individual's Name and Address:
_1001 McDermit St_

_Las Vegas, NV_

_89107_

_____
Printed Name of Individual's Representative (If applicable)

_____
Relationship of Representative to Individual (If applicable)

_____
Description of Representative's authority to act for Individual (If applicable)

**This authorization is designed to be in compliance with the Health Insurance Portability and Accountability Act, and the regulations promulgated thereunder, 45 CFR Parts 160 and 164 (collectively, "HIPAA").**

## AUTHORIZATION TO DISCLOSE INSURANCE INFORMATION

To:

I, the undersigned, hereby authorize and request the above-named entity to disclose to Wooden & McLaughlin LLP, 211 N. Pennsylvania St., Suite 1800, Indianapolis, IN 46204, any and all records containing insurance information, including those that may contain protected health information (PHI) regarding _Ashley Gilbert_, whether created before or after the date of signature. Records requested may include, but are not limited to:

applications for insurance coverage and renewals; all insurance policies, certificates and benefit schedules regarding the insured's coverage, including supplemental coverage; health and physical examination records that were reviewed for underwriting purposes, and any statements, communications, correspondence, reports, questionnaires, and records submitted in connection with applications or renewals for insurance coverage, or claims; all physicians', hospital, dental reports, prescriptions, correspondence, test results, radiology reports and any other medical records that were submitted for claims review purposes; any claim record filed; records of any claim paid; records of all litigation; and any other records of any kind concerning or pertaining to the insured. I expressly request that all covered entities under HIPAA identified above disclose full and complete protected medical information. By signing this authorization, I expressly do not authorize Wooden & McLaughlin LLP to engage in any ex parte interview or oral communication about me or any information contained in the materials produced without the presence of my attorney.

A photocopy of this authorization shall be considered as effective and valid as the original, and this authorization will remain in effect until the earlier of: (i) the date of settlement or final disposition of _Ashley Gilbert_ **v. Cook Medical, Inc., et al.** or (ii) five (5) years after the date of signature of the undersigned below. The purpose of this authorization is for civil litigation.

NOTICE
- **The individual signing this authorization has the right to revoke this authorization at any time, provided the revocation is in writing to Wooden & McLaughlin LLP, except to the extent that the entity has already relied upon this Authorization to disclose protected health information (PHI).**
- **The individual signing this authorization understands that the covered entity to whom this authorization is directed may not condition treatment, payment, enrollment or eligibility benefits on whether or not the individual signs the authorization.**
- **The individual signing this authorization understands that protected health information (PHI) disclosed pursuant to this authorization may be subject to redisclosure by the recipients and that, in such case, the disclosed PHI no longer will be protected by federal privacy regulations.**
- **The individual signing this authorization understands information authorized for release may include records that may indicate the presence of a communicable disease.**
- **The individual signing this authorization understands that she/he shall be entitled to receive a copy of all documents requested via this authorization within a reasonable period of time after such records are received by Wooden & McLaughlin LLP.**

I have read this Authorization and understand that it will permit the entity identified above to disclose PHI to Wooden & McLaughlin LLP.

_Ashley Gilbert_

Name of Individual

_Ashley Gepart_

Signature of Individual or Individual Representative

_1/29/2018_

Date

Former/Alias/Maiden Name of Individual

_June 12, 1988_

Individual's Date of Birth

Name of Individual Representative

_07-24-7034_

Individual's Social Security Number

Description of Authority

_1001 McDermitt St_

Individual's Address _Las Vegas NV 89107_

## AUTHORIZATION TO DISCLOSE MEDICAID INFORMATION

To:

I, the undersigned, hereby authorize and request the above-named entity to disclose to the agents or designees of Wooden & McLaughlin LLP, 211 N. Pennsylvania St., Suite 1800, Indianapolis, IN 46204, any and all records containing Medicaid information, including those that may contain protected health information (PHI) regarding _____, whether created before or after the date of signature. This authorization should also be construed to permit agents or designees of Wooden & McLaughlin LLP to copy, inspect and review any and all such records. Records requested may include, but are not limited to:

all Medicaid records, including explanations of Medicaid benefit records and claims records; any statements, communications, pro reviews, denials, appeals, correspondence, reports, questionnaires or records submitted in connection with claims; all reports from physicians, hospitals, dental providers, prescriptions; correspondence, test results, and any other medical records; records of claims paid to or on the behalf of _____; records of litigation and any other records of any kind. I expressly request that all covered entities under HIPAA identified above disclose full and complete protected medical information.

A photocopy of this authorization shall be considered as effective and valid as the original, and this authorization will remain in effect until the earlier of: (i) the date of settlement or final disposition of _____ v. Cook Medical, Inc., et al. or (ii) five (5) years after the date of signature of the undersigned below. The purpose of this authorization is for civil litigation. By signing this authorization, I expressly do not authorize any ex parte interview or oral communication about me or my medical history by Wooden & McLaughlin LLP without the presence of my attorney.

NOTICE
- **The individual signing this authorization has the right to revoke this authorization at any time, provided the revocation is in writing to Wooden & McLaughlin LLP, except to the extent that the entity has already relied upon this Authorization to disclose protected health information (PHI).**
- **The individual signing this authorization understands that the covered entity to whom this authorization is directed may not condition treatment, payment, enrollment or eligibility benefits on whether or not the individual signs the authorization.**
- **The individual signing this authorization understands that protected health information (PHI) disclosed pursuant to this authorization may be subject to redisclosure by the recipients and that, in such case, the disclosed PHI no longer will be protected by federal privacy regulations.**
- **The individual signing this authorization understands information authorized for release may include records that may indicate the presence of a communicable disease.**
- **The individual signing this authorization understands that they shall be entitled to receive a copy of all documents requested via this authorization within a reasonable period of time after such records are received by Wooden & McLaughlin LLP.**
-

I have read this Authorization and understand that it will permit the entity identified above to disclose PHI to Wooden & McLaughlin LLP.

_Ashley Gilbert_

Name of Individual

_Ashley Gilbert_

Signature of Individual or Individual

_____

Former/Alias/Maiden Name of Individual

_____

Date

_June 12, 1988_

Individual's Date of Birth

_____

Name of Individual Representative

_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_

Individual's Social Security Number

_____

Description of Authority

_600 McDermitt_

Individual's Address _Las Vegas NV 89107_

## AUTHORIZATION TO DISCLOSE EMPLOYMENT INFORMATION

To:

I, the undersigned, hereby authorize and request the above-named entity to disclose to Wooden & McLaughlin LLP, 211 N. Pennsylvania St., Suite 1800, Indianapolis, IN 46204, any and all records containing employment information including those that may contain protected health information (PHI) regarding _Ashel Gilbert_, whether created before or after the date of signature.  Records requested may include, but are not limited to:

all applications for employment, resumes, records of all positions held, job descriptions of positions held, payroll records, W-2 forms and W-4 forms, performance evaluations and reports, statements and reports of fellow employees, attendance records, worker's compensation files; all hospital, physician, clinic, infirmary, nurse, dental records; test results, physical examination records and other medical records; any records pertaining to medical or disability claims, or work-related accidents including correspondence, accident reports, injury reports and incident reports; insurance claim forms, questionnaires and records of payments made; pension records, disability benefit records, and all records regarding participation in company-sponsored health, dental, life and disability insurance plans; material safety data sheets, chemical inventories, and environmental monitoring records and all other employee exposure records pertaining to all positions held; and any other records concerning employment with the above-named entity.  I expressly request that all covered entities under HIPAA identified above disclose full and complete protected medical information.  By signing this authorization, I expressly do not authorize any ex parte interview or oral communication about me or my employment history by Wooden & McLaughlin LLP without the presence of my attorney.

A photocopy of this authorization shall be considered as effective and valid as the original, and this authorization with remain in effect until the earlier of: (i) the date of settlement or final disposition of _Ashel Gilbert_ v. Cook Medical, Inc., et al. or (ii) five (5) years after the date of signature of the undersigned below.  A copy of this authorization may be used in place of and with the same force and effect as the original.  The purpose of this authorization is for civil litigation.

NOTICE
- **The individual signing this authorization has the right to revoke this authorization at any time, provided the revocation is in writing to Wooden & McLaughlin LLP, except to the extent that the entity has already relied upon this Authorization to disclose protected health information (PHI).**
- **The individual signing this authorization understands that the covered entity to whom this authorization is directed may not condition treatment, payment, enrollment or eligibility benefits on whether or not the individual signs the authorization.**
- **The individual signing this authorization understands that protected health information (PHI) disclosed pursuant to this authorization may be subject to redisclosure by the recipients and that, in such case, the disclosed PHI no longer will be protected by federal privacy regulations.**
- **The individual signing this authorization understands information authorized for release may include records that may indicate the presence of a communicable disease.**
- **The individual signing this authorization understands that they shall be entitled to receive a copy of all documents requested via this authorization within a reasonable period of time after such records are received by Wooden & McLaughlin LLP.**

I have read this Authorization and understand that it will permit the entity identified above to disclose PHI to  Wooden & McLaughlin LLP.

| | |
|---|---|
| _____ | _____ |
| Name of Employee | Signature of Employee or Employee Representative |
| _____ | _____ |
| Former/Alias/Maiden Name of Employee | Date |
| _____ | _____ |
| Employee's Date of Birth | Name of Employee Representative |
| _____ | _____ |
| Employee's Social Security Number | Description of Authority |
| _____ | |
| Employee's Address | |

## AUTHORIZATION TO DISCLOSE WORKERS' COMPENSATION INFORMATION

To:

I, the undersigned, hereby authorize and request the above-named entity to disclose to Wooden & McLaughlin LLP, 211 N. Pennsylvania St., Suite 1800, Indianapolis, IN 46204, any and all records containing Workers' Compensation information, including those that may contain protected health information (PHI) regarding _____ whether created before or after the date of signature. Records requested may include, but are not limited to:

all workers' compensation claims, including claim petitions, judgments, findings, notices of hearings, hearing records, transcripts, decisions and orders; all depositions and reports of witnesses and expert witnesses; employer's accident reports; all other accident, injury, or incident reports; all medical records; records of compensation payment made; investigatory reports and records; applications for employment; records of all positions held; job descriptions of any positions held; salary records; performance evaluations and reports; statements and comments of fellow employees; attendance records; all physicians', hospital, medical, health reports; physical examinations; records relating to health or disability insurance claims, including correspondence, reports, claim forms, questionnaires, records of payments made to physicians, hospitals, and health institutions or professionals; statements of account, itemized bills or invoices; and any other records relating to the above-named individual. Copies (NOT originals) of all x-rays, CT scans, MRI films, photographs, and any other radiological, nuclear medicine, or radiation therapy films and of any corresponding reports. I expressly request that all covered entities under HIPAA identified above disclose full and complete protected medical information.

A photocopy of this authorization shall be considered as effective and valid as the original, and this authorization will remain in effect until the earlier of: (i) the date of settlement or final disposition of _____.Cook Medical, Inc., et al. or (ii) five (5) years after the date of signature of the undersigned below. The purpose of this authorization is for civil litigation. This authorization is for the release of records only and does not allow Wooden & McLaughlin to engage in ex parte communications regarding the subject matter of this release and without the presence of my attorney.

NOTICE
- **The individual signing this authorization has the right to revoke this authorization at any time, provided the revocation is in writing to Wooden & McLaughlin LLP, except to the extent that the entity has already relied upon this Authorization to disclose protected health information (PHI).**
- **The individual signing this authorization understands that the covered entity to whom this authorization is directed may not condition treatment, payment, enrollment or eligibility benefits on whether or not the individual signs the authorization.**
- **The individual signing this authorization understands that protected health information (PHI) disclosed pursuant to this authorization may be subject to redisclosure by the recipients and that, in such case, the disclosed PHI no longer will be protected by federal privacy regulations.**
- **The individual signing this authorization understands information authorized for release may include records that may indicate the presence of a communicable disease.**
- **The individual signing this authorization understands that they shall be entitled to receive a copy of all documents requested via this authorization within a reasonable period of time after such records are received by Wooden & McLaughlin LLP.**

I have read this Authorization and understand that it will permit the entity identified above to disclose PHI to Wooden & McLaughlin LLP.

Ashley Gilbert

_Name of Individual_

_Former/Alias/Maiden Name of Individual_

June 12, 1988

_Individual's Date of Birth_

1022-24-7034

_Individual's Social Security Number_

1601 McDermitst

_Individual's Address_

Las Vegas NV 89107

Ashley Gilbert

_Signature of Individual or Individual Representative_

1/29/18

_Date_

_Name of Individual Representative_

_Description of Authority_

Social Security Administration
Consent for Release of Information

Form Approved
OMB No 0960-0566

*SSA will not honor this form unless all required fields have been completed (\*signifies required field)*

TO:  Social Security  Administration

Ashley Gilbert         June 12, 1988     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
*Name                              *Date of Birth                    *Social Security Number

I authorize the Social Security Administration to release information or records about me to:

*NAME                                              *ADDRESS

Wooden  & McLaughlin  LLP                211 N. Pennsylvania  St.                        Ste.1800

                                        Indianapolis, IN 46204

*I want this information released because:          civil litigation
*There may be a charge  for releasing information.*

*Please release the following information selected from the list below:
*You must  check  at least one box.  Also,  SSA will not disclose records unless applicable date ranges are included.*

⊓ Social Security  Number

⊓ Current  monthly Social Security  benefit  amount

⊓ Current  monthly Supplemental Security Income  payment amount

⊓ My benefit/payment amounts  from _____ to _____

⊓ My Medicare  entitlement from _____ to _____

⊓ Medical  records from my claims folder(s) from _____ to ___ ___,-- , . ,----- .-=----
     *If you want SSA to release a minor's medical records, do not use this form but instead contact
                 your local SSA office.*

☑ Complete  medical  records  from my claims  folder(s)
☑ Other  record(s)  from my file (e.g. applications, questionnaires, consultative examination reports,
     determinations, etc.)

I am the individual to whom  the requested information/record  applies, or the parent or legal guardian of a minor,
or the legal guardian of a legally incompetent adult.  I declare under penalty of perjury in accordance with 28
C.F.R. § 16.41(d)(2004) that  I have examined all the information on this form, and on any accompanying
statements or forms, and it is true and correct to the best of my knowledge. I understand that anyone who
knowingly or willfully  seeking or obtaining access to records about  another person under false pretenses is
punishable by a fine of up to $5,000.  I also understand that any applicable fees must be paid by me.

*Signature:  _____   *Date:  1/29/18

Relationship (if not  the individual)  _____   *Daytime Phone:  702-883-2226

Form SSA-3288 (07-2010) EF (07-2010)

### 1-800-MEDICARE Authorization to Disclose Personal Health Information

Use this form if you want 1-800-MEDICARE to give your personal health information to someone other than you.

*Ashley Gilbert* _____ *6/12/88*

**1. Print Name**                    **Medicare Number**        **Date of Birth**
(First and last name of the person with Medicare)  (Exactly as shown on the Medicare Card)  (mm/dd/yyyy)

2. Medicare will only disclose the personal health information you want disclosed.

  **2A:  Check only one box below to tell Medicare the specific personal health information you want disclosed:**

   ☐ Limited Information (go to question 2b)

   ☐ Any Information (go to question 3)

  **2B:  Complete only if you selected "limited information". Check all that apply:**

   ☐ Information about your Medicare eligibility

   ☐ Information about your Medicare claims

   ☐ Information about plan enrollment (e.g. drug or MA Plan)

   ☐ Information about premium payments

   ☐ Other Specific Information (please write below; for example, payment information)

   _____

3. **Check only one box below indicating how long Medicare can use this authorization to disclose your personal health information** (subject to applicable law-for example, your State may limit how long Medicare may give out your personal health information):

  ☐ Disclose my personal health information indefinitely

  ☒ Disclose my personal health information for a specified period only
   beginning:  (mm/dd/yyyy)          and ending: (mm/dd/yyyy) _____

   *9/21/12 - 9/21/12*                    *1/1/15 - 1/27/15*

4. Fill in the name and address of the person(s) or organization(s) to whom you want Medicare to disclose your personal health information. Please provide the specific name of the person(s) for any organization you list below:

1. Name: Wooden & McLaughlin LLP

   Address: 211 N. Pennsylvania St., Suite 1800

   Indianapolis, IN 46204

2. Name: _____

   Address: _____

   _____

3. Name: _____

   Address: _____

   _____

5. 

I authorize 1-800-MEDICARE to disclose my personal health information listed above to the person(s) or organization(s) I have named on this form. I understand that my personal health information may be re-disclosed by the person(s) or organization(s) and may no longer be protected by law.

702-883-2226

1/29/18

Signature          Telephone Number          Date (mm/dd/yyyy)

Print the address of the person with Medicare (Street Address, City, State, and ZIP)

Lacy McDermit St   Las Vegas NN 89167

☐ Check here if you are signing as a personal representative and complete below. Please attach the appropriate documentation (for example, Power of Attorney). This only applies if someone other than the person with Medicare signed above.

Print the Personal Representative's Address (Street Address, City, State, and ZIP)

_____

_____

Telephone Number of Personal Representative: - - - - - - - - - - - - - - -

Personal Representative's Relationship to the Beneficiary: - - - - - - - - - - - - - -

Case 1:14-ml-02570-RLY-TAB   Document 7683-1   Filed 02/16/18   Page 31 of 35 PageID #: 41845

==========================================================================================
                          09/25/2012              Expected
                          15:50      Units         Range
==========================================================================================

37 WKS, R C SECTION

Exam Charge Date: Sep 25 2012  2:19PM
PROCEDURE:  SPC 0306 - SP IVC FILTER PLACEMENT   -- 6271849

CLINICAL HISTORY:    Needs pulmonary embolism prophylaxis, because the
patient had prior pulmonary emboli.


PREPROCEDURE: Patient seen, evaluated, history and physical reviewed, and the
patient approved for sedation. Discussed risks, benefits, and alternatives
for procedure and/or sedation, and obtained informed consent. The patient
understood the information and all questions answered. Immediately prior to
starting the procedure, in the presence of assisting personnel, procedural
pause conducted to verify the correct patient, verification of the procedure,
and as applicable, correct side and site, as well as possession of the
appropriate equipment for the procedure and any applicable implants.
PREPROCEDURE: Patient seen, evaluated, history and physical reviewed, and the
patient approved for sedation. Discussed risks, benefits, and alternatives
for procedure and/or sedation, and obtained informed consent. The patient
understood the information and all questions answered. Immediately prior to
starting the procedure, in the presence of assisting personnel, procedural
pause conducted to verify the correct patient, verification of the procedure,
and as applicable, correct side and site, as well as possession of the
appropriate equipment for the procedure and any applicable implant. The
patient was approved for sedation. Discussed risks, benefits, and
alternatives for procedure and/or sedation, and informed consent was
obtained. The patient understood the information and all questions answered.


TOTAL FLUOROSCOPY TIME: 3.0 minutes.
TECHNIQUE:      After obtaining informed consent, the patient's right neck
was sterilely cleansed and draped in standard fashion. After the
administration of local anesthesia, uneventful needle access was achieved,
using ultrasound guidance (documentation film obtained and preserved in the
hospital PACS system) and micropuncture technique, into the right internal
jugular vein, using the Seldinger technique, a guidewire was advanced into
the inferior vena cava. A 4-French conversion system was then utilized to
convert from the 018 guidewire to an 035 guidewire which was then advanced
into the inferior vena cava, and subsequently the right common iliac vein. A
9-French sheath was then advanced over the guidewire into the right common
iliac vein. A right iliac venogram and an inferior venacavogram was performed
through the sheath, using 25 cc of Isovue-300,. The sheath was then used to
deploy a Celect retrievable IVC filter just below the renal veins. Follow-up
inferior venacavogram was then performed through the sheath using 20 cc of
Isovue-300. The sheath was then removed and hemostasis was achieved with

manual compression. The patient tolerated the procedure well. There were no
immediate procedure-related complications.

GILBERT, ASHLEY     1500100686     0002466211

UNIVERSITY MEDICAL CENTER OF SOUTHERN NEVADA
DEPARTMENT OF RADIOLOGY
1800 W. CHARLESTON BLVD. LAS VEGAS, NV.   89102
(702) 383-2241

Patient Name: GILBERT, ASHLEY
Sex: F                                    Date of Birth: 06/12/1988
Location: 3SO:3030-1                      MRN: 0002466211
Encounter: 1500100686

Ordering Physician: KUMAR, JAY
Order Number: 6870477                     Order Date: 01/02/2015

Interpreting Radiologist: BOMSZTYK, ELAN
Dictated on: 01/02/2015 at 16:04
Signed and Finalized by: BOMSZTYK, ELAN on 01/02/2015

---

Exam Charge Date: Jan  2 2015  4:04PM
PROCEDURE:  SPC 0369 - SP VENOGRAM IVC  -- 6870477

Procedure: IVC filter removal with fluoroscopic guidance

Clinical Indication: IVC filter with perforation obstruction to the
duodenal wall and pericaval soft tissues.

Comparison: CT January 2, 2015 and prior

Technique: Written and informed consent was obtained from the patient.
The patient was placed supine on the angiography table. The right neck
and groin were prepped and draped in the usual sterile fashion. Maximal
barrier technique was employed by all operators. 1% lidocaine was infused
subcutaneously. The right internal jugular vein was punctured with a
21-gauge needle under ultrasound guidance. Sonographic images of the
patent jugular vein were saved. An 08 wire was advanced through the
needle. A 4 French micropuncture catheter was advanced over the wire. The
inner dilator and wire were removed. An 035 Nitrex wire was advanced into
the IVC. The tract was dilated. The IVC filter removal sheath was
advanced into the abdominal aorta. IVC venogram was performed. Attempts
to capture the hook with a gooseneck and trilobed snare is was
unsuccessful. The lateral IVC cavogram was performed. Further attempts to
remove the filter were abandoned. The sheath was removed. Hemostasis was
easily achieved with manual pressure. The patient tolerated the procedure
well. There was no complication. 50 mcg of intravenous fentanyl was
administered for sedation. Total fluoroscopy time was 13.4 minutes.

Findings:

The retrievable IVC filter is tilted posteriorly. The pelvic and cone of
IVC filter embedded in the posterior wall of the filter. All of the
filter struts have perforated through the caval wall. No caval thrombus
is visualized.

Impression:

Unsuccessful fluoroscopic guided IVC filter removal. The hook and cone of
the filter are embedded deep in the posterior wall of the inferior vena
cava. Thus, standard snare retrieval of the filter is impossible. All of

GILBERT, ASHLEY      1500100686      0002466211

the struts of the filter have penetrated the caval wall.

Procedure: IVC filter removal with fluoroscopic guidance

Clinical Indication: IVC filter with perforation obstruction to the duodenal wall and pericaval soft tissues.

Comparison: CT January 2, 2015 and prior

Technique: Written and informed consent was obtained from the patient. The patient was placed supine on the angiography table. The right neck and groin were prepped and draped in the usual sterile fashion. Maximal barrier technique was employed by all operators. 1% lidocaine was infused subcutaneously. The right internal jugular vein was punctured with a 21-gauge needle under ultrasound guidance. Sonographic images of the patent jugular vein were saved. An 08 wire was advanced through the needle. A 4 French micropuncture catheter was advanced over the wire. The inner dilator and wire were removed. An 035 Nitrex wire was advanced into the IVC. The tract was dilated. The IVC filter removal sheath was advanced into the abdominal aorta. IVC venogram was performed. Attempts to capture the hook with a gooseneck and trilobed snare is was unsuccessful. The lateral IVC cavogram was performed. Further attempts to remove the filter were abandoned. The sheath was removed. Hemostasis was easily achieved with manual pressure. The patient tolerated the procedure well. There was no complication. 50 mcg of intravenous fentanyl was administered for sedation. Total fluoroscopy time was 13.4 minutes.

Findings:

The retrievable IVC filter is tilted posteriorly. The pelvic and cone of IVC filter embedded in the posterior wall of the filter. All of the filter struts have perforated through the caval wall. No caval thrombus is visualized.

Impression:

Unsuccessful fluoroscopic guided IVC filter removal. The hook and cone of the filter are embedded deep in the posterior wall of the inferior vena cava. Thus, standard snare retrieval of the filter is impossible. All of the struts of the filter have penetrated the caval wall.

GILBERT, ASHLEY      1500100686      0002466211

UNIVERSITY MEDICAL CENTER
1800 West Charleston Boulevard
Las Vegas, Nevada 89102

DATE OF SERVICE:  01/12/2015

SURGEON:  Quynh Feikes, M.D.

ASSISTANT SURGEON:  J Randall Feikes, M.D.

PARTICIPATING SURGEON:  Paul Dickson, CST-CFA

ANESTHESIOLOGIST:  Mark S Scheller, MD

PREOPERATIVE DIAGNOSIS:  Eroding inferior vena cava filter.

POSTOPERATIVE DIAGNOSIS:  Eroding inferior vena cava filter.

PRIMARY PROCEDURE:
1. Exploratory laparotomy for open removal of inferior vena cava filter.
2. Independent interpretation of transesophageal echocardiogram.

ADDITIONAL ASSISTANT:  Dr. Heidi Ryan.

ANESTHESIA:  General.

ESTIMATED BLOOD LOSS:  Less than 100 cubic centimeters.

COMPLICATIONS:  None.

INDICATIONS FOR PROCEDURE:  Patient is a 26-year-old African American female, with a history of a DVT and PE in the past, who had IVC filter placed after a complicated C-section 2 years ago.  She signed out AMA, was lost to followup, and now presented with lower quadrant abdominal pain that was thought initially to be secondary to PID and then constipation.  Initially during the course of workup was also found incidentally to have evidence of IVC filter that was in place with struts that appeared to be eroding into the duodenum.  A GI workup included endoscopy which showed no evidence of protrusions of the struts intraluminally.  A GI follow-through showed no evidence of extravasation consistent with perforation.  She was treated for PID and now presents for a laparotomy and open removal of her IVC filter.

FINDINGS:  All struts were found to be outside of the cava itself, and several struts were sticking into the wall of the duodenum itself.  There was evidence of chronic inflammation around that area.  No evidence of any abscess or fluid collection.  No other evidence of acute infection.  Inside the cava the struts were all sticking outside, with evidence of partial chronic thrombus of the filter itself.  On TEE she had evidence of a mildly dilated left ventricle.  Overall EF was poor at 35%, given her young age, and no other evidence of valvular pathology was noted.

GILBERT, ASHLEY     1500100686     0002466211

PROCEDURE:  After obtaining informed consent from the patient she was taken to the operating room, placed on the OR table in supine position.  General anesthesia was administered.  Endotracheal intubation was obtained.  Monitoring lines were placed.  Chest, abdomen, and bilateral groins were then prepped and draped in a sterile manner.  Time-out was instituted, and procedure was confirmed.

The midline incision was then made, and dissection was then carried down until the perineal cavity was then entered, and the midline incision was further opened.  There were some adhesions then noted inferiorly, consistent with her history of previous C-section.  The omentum was taken down with a combination of electrocautery as well as ties and cutting.  Once the adhesions were freed up, Balfour retractor was then placed, Thompson retractor was then also placed, and the retroperitoneal reflection on the right was then taken down to mobilize the right colon.  Once done, further dissection freed up until the duodenum was encountered along with the suprarenal IVC.  Dissection was then carried down in this spot until there was an area just near the gonadal vein that appeared to be intensely inflamed.  Careful dissection here revealed a possible strut that was sticking out.  The cava was further dissected below both renal veins until vessel loop control could be obtained, and further down beyond the area of inflammation, where a vessel loop was also placed.  Once done, further dissection was then carried out until the cava was then fully dissected out.  There were areas where there appeared to be a few struts that were sticking out.  Once this was then dissected, the struts were then removed from the wall of the duodenum itself, and this was further dissected away.  There were a total of 5 such struts that we could see anterolaterally.  Once these were fully mobilized away from the cava, the patient was then fully heparinized with 5000 units of heparin IV.  After allowing for several minutes of circulation, the cava was snared superior, just underneath the renal vein, and further down.  The IVC was then entered with a knife and Potts scissors.  The cava filter was then isolated.  The struts were then removed from the walls itself and completely removed.  There was an area where the filter itself appeared to burrow into the wall of the IVC.  This was then debrided out, and portions of the thrombus were then removed.  Once done, it was irrigated out with heparinized saline.  The IVC was then repaired with a running 5-0 Prolene suture.  The _____ were then removed, and there was good hemostasis.  There were 2 areas of slight denudation on the duodenum.  This was repaired by Dr. Ryan with interrupted 3-0 silk sutures.  Once done, a 10 flat Jackson-Pratt drain was then placed and connected to bulb suction.  The intestinal contents were placed back in abdominal cavity.  The midline incision was then reapproximated, looped #2 PDS.  The subcutaneous tissue was closed with 2-0 Vicryl, and skin was closed with 3-0 Monocryl subcuticular stitch and sealed with Dermabond.  Before that, NG tube was palpated in good position in the stomach.  Dermabond and sterile dressing were applied.  Patient tolerated procedure, was left ventilated, and moved back to the ICU for further care.  All sponge and needle counts were correct.

cc:  Dr. Wadonnie

QF/MedQ
DD:  01/12/2015 10:47:47
DT:  01/12/2015 14:07:28

QUYNH FEIKES, M.D.