UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

_____

This Document Relates to:

 *Brand v. Cook Medical, Inc. et al.,*
 Case No. 1:14-cv-06018-RLY-TAB

_____

### THE COOK DEFENDANTS' BRIEF
### IN SUPPORT OF PLAINTIFF'S MOTION TO
### MAINTAIN DOCUMENTS UNDER SEAL [DKT. NO. 7721]

**I. INTRODUCTION**

Plaintiff has filed Plaintiff's Response Opposing William Cook Europe ApS's Motion for Summary Judgment as to All Claims Against It and Brief in Support [Dkt. No. 7719] ("Plaintiff's Response"). Plaintiff has submitted as supporting exhibits various documents designated as "Confidential" or "Company Confidential" by the Cook Defendants[1], pursuant to Case Management Order #8 (Stipulated Protective Order on Confidential Information), as well as portions of Plaintiff Tonya Brand's medical records. In accordance with Local Rules 5-11(d)(1) and 5-11(d)(2)(A)(ii), Plaintiff filed these confidential documents and medical records – **Exhibit 1 [Dkt. No. 7720-1], Exhibit 2 [Dkt. No. 7720-2], Exhibit 3 [Dkt. No. 7220-3], Exhibit 4 [Dkt. No. 7220-4], Exhibit 5 [Dkt. No. 7220-5], and Exhibit 12 [Dkt. No. 7720-6]** to Plaintiff's Response – ***under seal.*** Further, Plaintiff has filed Plaintiff's Motion to Maintain Documents Under Seal [Dkt. No. 7721].

---

[1] The Cook Defendants in this matter are Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS (collectively, the "Cook Defendants" or "Cook").

- 2 -

As the parties designating the various documents as confidential, the Cook Defendants submit this Brief in Support of Plaintiff's Motion to Maintain Documents Under Seal and respectfully request that the Clerk of this Court maintain these confidential documents and *under seal*. The Cook Defendants further respectfully request that the Clerk maintain Plaintiff's medical records under seal.

The Clerk should maintain **Exhibit 1 [Dkt. No. 7720-1], Exhibit 2 [Dkt. No. 7720-2], Exhibit 3 [Dkt. No. 7220-3], Exhibit 4 [Dkt. No. 7220-4], Exhibit 5 [Dkt. No. 7220-5], and Exhibit 12 [Dkt. No. 7720-6]** to Plaintiff's Response under seal because there is good cause for sealing these documents. Exhibits 2, 3, 4, and 5 are confidential and proprietary internal complaint handling and post-market analysis documents and information. They constitute confidential business and commercial information entitled to be protected from disclosure. There is good cause to maintain these documents *under seal* in order to protect the Cook Defendants' interests in their confidential and proprietary information and to protect the Cook Defendants from competitive harm. Further, Exhibits 1 and 12 are portions of Plaintiff's medical records. These medical records should be maintained under seal out of an abundance of caution to protect Plaintiff's interest in her medical privacy.

## II. THE APPLICABLE LEGAL STANDARD

1. Under Federal Rule of Civil Procedure 26(c)(1)(G), the court may, "for good cause," enter an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." *See also Baxter International, Inc. v. Abbott Laboratories*, 297 F.3d 544, 546 (7th Cir. 2002) (documents that "meet the definition of trade secret or other categories of bona fide long-term confidentiality" may be sealed). Likewise, private health information should be maintained

under seal at least until consent by the patient is obtained. *See generally Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017).

  2. **Trade Secrets –** Indiana has generally adopted the definition of trade secret found in the Uniform Trade Secret Act.[2] *See, e.g.*, *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 414 (S.D. Ind. 2001).[3] Under this standard, a protectable trade secret has four characteristics: (1) information; (2) that possesses independent economic value; (3) that is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (4) is the subject of efforts to maintain its secrecy that are reasonable under the circumstances. *See, e.g.*, *Hamilton v. State Farm Mut. Auto Ins. Co.*, 204 F.R.D. 420, 423 (S.D. Ind. 2001); *Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 759 N.E.2d 239, 245–46 (Ind. Ct. App. 2001); *Burk v. Heritage Food Serv. Equip., Inc.*, 737 N.E.2d 803, 813 (Ind. Ct. App. 2000).

  3. Other confidential business or commercial information that does not technically fit the definition of trade secret is similarly entitled to the same level of protection as trade secrets if its disclosure would be harmful physically or economically. *See Chaib v. GEO Grp., Inc.*, 2014 WL 4794194, at *1–3 (S.D. Ind. Sept. 24, 2014); *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at *1 (S.D. Ind. Feb. 2, 2009) (finding that protection is required where disclosure of certain proprietary information would "provide a blueprint for competitors").

  4. **Research and Development –** Federal courts, including this court, have consistently held that product development, research, and testing documents and information are

---

[2] The presence of Cook's headquarters in Indiana justified the application of Indiana trade secret law to the issues here, because Indiana is the state where Cook would feel any injury or harm. *See, e.g.*, *Micro Data Base Sys., Inc. v. Dharma Sys., Inc.*, 148 F.3d 649 (7th Cir. 1998) (applying Indiana choice-of-law principles in a trade-secret case and holding that New Hampshire substantive law governed because the entity holding the trade secrets was headquartered there).

[3] The Indiana Uniform Trade Secret Act is identical to the Uniform Trade Secrets Act, 1(4), 14 U.L.A. 438 (1985).

US.11686055

entitled to protection from disclosure as confidential and proprietary business information. Such information constitutes confidential business information because "a competitor's access to [a company's] research and development . . . present[s] potential dangers and may lead to a windfall to the discovering party." *Star Scientific,* 204 F.R.D. at 416 (S.D. Ind. 2001) (Baker, J.); *see also United States ex rel. Long v. GSD&M Idea City LLC*, 2014 WL 12648520, at *2 (N.D. Tex. Jan. 3, 2014) ("[I]nformation in which the producing party has a commercial interest, such as . . . research data, . . . has been found to constitute confidential commercial information."); *Kowalsky v. Hewlett-Packard Co.*, 2012 WL 892427, at *2 (N.D. Cal. Mar. 14, 2012) (exhibits were "sealable in their entirety because they contain[ed] HP's confidential product testing and evaluation process"); *cf. Andrx Pharm., LLC v. GlaxoSmithKline, PLC,* 236 F.R.D. 583, 586 (S.D. Fla. 2006) ("Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information." (citation omitted)), *affirmed,* 2006 WL 2403942 (S.D. Fla. 2006).

5. **Post-Market Product Analysis** – Similarly, post-market product analysis is also entitled to protection from disclosure as confidential and proprietary business information. Disclosure of such proprietary post-market analysis information is harmful because it would "provide a blueprint for competitors." *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at *1 (S.D. Ind. Feb. 2, 2009); *see also Star Scientific*, 204 F.R.D. at 415 (research and data, such as sales techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge").

6. **Sales, Marketing, and Public Relations –** Confidential marketing plans or sales strategies have been held to constitute protectable trade secrets or protected confidential business information. *See, e.g.*, *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1270 (7th Cir. 1995) (trade secret material for sports drink includes information regarding the pricing, distribution and

marketing of the drink and not just the drink formula); *Star Scientific*, 204 F.R.D. at 415 (research and data, such as sales techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge"); *Burk v. Heritage Serv. Equip.*, 737 N.E.2d 803, 814 (Ind. Ct. App. 2000) (finding that employee unfairly used marketing information and sales strategies in breach of the Indiana trade secrets clause); *see also Brunswick Corp. v. Jones*, 784 F.2d 271 (7th Cir. 1986) (confidential marketing strategies held protectable); *AGS Capital Corp., Inc. v. Prod. Action Intern., LLC*, 884 N.E.2d 294, 311 (Ind. Ct. App. 2008) (stolen information related to marketing strategy would "put [a company's competitors] at a severe disadvantage"). Good cause exists to maintain the confidentiality of such strategic plans and analysis when disclosure of that information would reveal the company's "response to changing market situations and competitive threats within the marketplace, and could therefore give a competitor insight into '[the company's] internal thinking'" and when publicizing this material "would allow [the company]'s competitors the benefit of this information without incurring the effort or expense." *Bradburn Parent/Teacher Store, Inc. v. 3M*, 2004 WL 1146665, at *4 (E.D. Pa. May 19, 2004) (citation omitted).

7.    **Regulatory Affairs –** Courts have held that information related to regulatory compliance and/or submission efforts and strategies constitutes confidential business information. *See, e.g.*, *Bayer Healthcare, LLC v. Norbrook Labs., Ltd.*, 2009 WL 3444938, at *1 (E.D. Wisc. Oct. 23, 2009) (good cause existed to seal deposition testimony and internal company emails containing proprietary commercial information and strategy related to an FDA filing). Such proprietary information, like confidential information regarding pricing and sales, is confidential because "the information is created to enhance [companies'] business and give them a competitive edge". *Star Scientific*, 204 F.R.D. at 415.

8. **Complaint Handling** – Internal complaint handling procedures and materials constitute trade secrets in Indiana if they contain (1) information; (2) that derives independent economic value; (3) is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (4) is the subject of efforts reasonable under the circumstances to maintain its secrecy. *Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 759 N.E.2d 239, 245-46 (Ind. Ct. App. 2001); *see also, e.g.*, *Hamilton v. State Farm Mut. Auto. Ins. Co.*, 204 F.R.D. 420, 423-24 (S.D. Ind. 2001); *Rep. Servs. Inc. v. Liberty Mut. Ins. Cos.*, 2006 WL 1635655, at *5 (E.D. Ken. June 9, 2006) (concluding that claims handling and training materials "had economic value to [defendant] due to (1) their confidential nature, (2) the time, effort, and expense [defendant] invested in creating these materials, (3) the evolutionary process surrounding the development of these materials, (4) the competitive nature of the [industry's] business, and (5) the fact that competitors in [that] industry do not disclose information about their claims handling policies and procedures to one another.").

9. **Internal Information on Corporate Structure and Business Operations** – Courts also have determined that information about a corporation's internal business operations and corporate structure is confidential and proprietary and, therefore, entitled to protection from public disclosure. *E.g., True Health Chiropractic, Inc. v. McKesson Corporation,* 2015 WL 3409721 (USDC N.D. Cal.) (May 27, 2015) at *4 (granting motion to seal confidential and proprietary information about the defendant's internal business operations and corporate structure).

10. **Medical Privacy** – With respect to medical information, courts in the Seventh Circuit have routinely recognized that, while parties' medical information may be made public where it is relevant to the claims at issue and/or necessary to the disposition of the case, other

information may be kept under seal with good cause. *See Westedt v. Franklin,* 2016 WL 2997504, at *1 (E.D. Wis. May 23, 2016); *Gibson v. Milwaukee Cnty.*, 2015 WL 12964665, at *1 (E.D. Wis. Mar. 26, 2015); *Noe v. Carlos,* 2008 WL 5070463, at *3 (N.D. Ind. Nov. 26, 2008). The good cause inquiry thus requires balancing a party's acknowledged interest in medical privacy, *see Whalen v. Roe*, 429 U.S. 589, 599–600 (1977), against the Court's (and parties') interest in the accurate resolution of the conflict and the public interest in transparency. *Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017). Private health information should be maintained under seal at least until consent by the patient is obtained. *See generally id.* at *3.

11.  The "good cause" standard under Rule 26(c) "requires a balancing of the potential harm to the litigants' interests against the public's right to obtain information concerning judicial proceedings." *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 415-16 (S.D. Ind. 2001) (Baker, J.); *see also Felling v. Knight*, 211 F.R.D. 552, 554 (S.D. Ind. 2003) ("The rule essentially operates to balance the public's interest in open proceedings against an individual's private interest in avoiding annoyance, embarrassment, oppression, or undue burden or expense.") (Baker, J.). Consistent with the doctrine discussed earlier, however, "the presumption of public access 'applies only to the materials that formed the basis of the parties' dispute and the district court's resolution'; other materials that may have crept into the record are not subject to the presumption." *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013) (citing *Baxter Int'l*, 297 F.3d at 548)).

### III. THE CONFIDENTIAL DOCUMENTS AT ISSUE THAT SHOULD BE MAINTAINED UNDER SEAL

**Exhibit 1 [Dkt. No. 7720-1]** is a Certificate of Authenticity of Medical Records and a compilation of medical records related to the care and treatment of Plaintiff Tonya Brand by Dr. Mark Rheudasil [labeled as Bates numbers Bates Nos. 000081-83, 000039-40, and 000075-

76]. This exhibit constitutes a medical privacy document since it contains details concerning Ms. Brand's private medical care. Furthermore, Ms. Brand, by filing her medical records under seal, has not indicated her consent to release of the information publicly.

**Exhibit 2 [Dkt. No. 7720-2]** is a Cook internal company email chain between T. Clemmer, D. Talbert, M. Dubois, L. Conners, and M. Senker titled "Re: Dr. Mark Rheudasil IVC filter complications June 2011," discussing Cook's internal investigation, evaluation, and strategy concerning a complaint report [CookMDL2570_0074640-0074645]. This email constitutes a complaint handling document since it discusses a complaint report and past and future meetings and calls with a physician related to the care and treatment of a patient implanted with a Cook IVC filter. This internal company email chain is designated and stamped: "Company Confidential."

**Exhibit 3 [Dkt. No. 7220-3]** is a Cook internal company email from L. Iversen to T. Jensen, M. Nielsen, A. Moelgaard-Nielsen, and T. Andersen titled "Claim Brand evaluation with updated summary" dated 11/4/2014 and a SCR dated 10/24/2014 10:33 AM [CookMDL2570_0100607-0100626]. This email and SCR constitutes a complaint handling document since it discusses and presents an updated internal complaint report form related to the care and treatment of a patient implanted with a Cook IVC filter. This internal company email and its attachment are designated and stamped: "Company Confidential."

**Exhibit 4 [Dkt. No. 7220-4]** is a Cook internal company email from L. Iversen and T. Jensen titled "Review of customized letter PR38639," discussing Cook's internal investigation, evaluation, and strategy concerning a complaint report [CookMDL2570_0074647-0074651]. This email constitutes a complaint handling document since it discusses an investigation related to a complaint involving a patient implanted with a Cook IVC filter. This internal company email is designated and stamped: "Company Confidential."

US.11686055

- 9 -

**Exhibit 5 [Dkt. No. 7220-5]** is an email and Excel spreadsheet attachment from M. Nielsen to R. Harden and N. Gildersleeve titled "WCE Review Product Liability Claims," containing detailed information related to ongoing product liability claims at William Cook Europe [CookMDL2570_0200522-0200523]. Cook's internal complaint files, complaint handling procedures, and post-market product analysis are confidential. These documents should be maintained under seal because they address and discuss Cook's confidential information. This internal company email and its attachment (slip-sheeted for the native spreadsheet) are designated and stamped: "Company Confidential."

**Exhibit 12 [Dkt. No. 7720-6]** is a Medical Records Certificate and medical record (Implant Record/Charge Sheet) related to the care and treatment of Plaintiff Tonya Brand at Northside Hospital [labeled as bates number Bates No. 000025]. This exhibit constitutes a medical privacy document since it contains details concerning Ms. Brand's private medical care. Furthermore, Ms. Brand, by filing this medical record under seal, has not indicated her consent to release of the information publicly.

## IV.   THERE IS GOOD CAUSE TO MAINTAIN THE DOCUMENTS UNDER SEAL

Good cause exists to maintain **Exhibit 1 [Dkt. No. 7720-1], Exhibit 2 [Dkt. No. 7720-2], Exhibit 3 [Dkt. No. 7220-3], Exhibit 4 [Dkt. No. 7220-4], Exhibit 5 [Dkt. No. 7220-5], and Exhibit 12 [Dkt. No. 7720-6]** to Plaintiff's Response *under seal*.

Exhibits 2, 3, 4, and 5 constitute confidential business and commercial information, and the Cook Defendants would face competitive and economic harm if such materials were made publicly available. Redaction is not a viable option because it would not provide the Cook Defendants adequate protection. The documents at issue do not merely contain discreet pieces of confidential business and commercial information that can be redacted. Rather, the documents in their entirety constitute confidential business and commercial information. They contain

confidential, proprietary, and sensitive internal company information on internal complaint handling, internal complaint handling documents, and post-market product analysis. The documents should not be disclosed to the public.

Exhibits 1 and 12 are portions of Plaintiff Tonya Brand's medical records and contain information related to her medical history, conditions, and treatment. Out of an abundance of caution, these documents should be maintained under seal to protect Plaintiff's medical privacy until Plaintiff consents to what should be disclosed.

### A.   Exhibit 2, 3, 4, and 5

Exhibits 2, 3, 4, and 5 address Cook's internal complaint handling, internal complaint handling documents, and post-market product analysis. All of these exhibits should be maintained under seal for good cause as confidential business information regarding product complaint handling and post-market product analysis.

The Cook Defendants' May 1, 2017 letter to Magistrate Baker and the Declaration of Mark Breedlove (attached here for reference as **Exhibit 1**) are instructive and demonstrate good cause to maintain Exhibits 2, 3, 4, and 5 under seal. With regard to complaint handling, Cook has developed complaint handling protocols and processes that govern the manner in which Cook responds to complaints, the types of information Cook evaluates in response to complaints, and the concerns and factors that drive Cook's decision-making in the complaint handling process. Breedlove Decl. ¶ 12. Cook maintains strict confidentiality with regard to its complaint handling efforts, as well as the underlying processes and protocols for such efforts. *Id.* If information pertaining to Cook's complaint handling processes and protocols, or examples of Cook's execution of such processes and protocols, were publicly disclosed, Cook's competitors would be able to access, and potentially adopt and benefit from Cook's methods, without having to make the investment that Cook was required to make, resulting in an undeserved benefit and a

potential competitive disadvantage to Cook. Breedlove Decl. ¶ 13. Public disclosure of specific complaint analyses may also reveal protected health information of third parties. *Id.*

Additionally, with respect to post-market analysis, Cook undertakes substantial efforts to evaluate the performance of its medical devices (including IVC filters), as well as competitor devices in the industry, post-market. Breedlove Decl. ¶ 8. These include efforts to (among other things) evaluate adverse event reports, both quantitatively and qualitatively; review and internally evaluate peer-reviewed literature about Cook and competitor products; to perform testing on characteristics of Cook and competitor products; and, when there are reported failures, to study and understand how and why Cook or competitor products allegedly failed. *Id.* Cook's methods of assessing its own products, including characteristics of products it may want to improve, could be exploited to Cook's commercial disadvantage and even discourage Cook employees (as well as the employees of other organizations in the medical device industry) from engaging in and/or memorializing such analyses, which could have a negative impact on product development and safety. Breedlove Decl. ¶ 9. Disclosure of Cook's post-market analysis efforts would harm Cook.

Good cause exists to maintain Exhibits 2, 3, 4, and 5 under seal. Cook maintains strict confidentiality over its complaint handling efforts. Further any disclosure of proprietary post-market analysis information would harm Cook because it would "provide a blueprint for competitors." *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at *1 (S.D. Ind. Feb. 2, 2009); *see also Star Scientific*, 204 F.R.D. at 415 (research and data, such as sales techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge"). The disclosure of Cook's confidential complaint handling information and proprietary post-market analysis information would result in competitive harm to Cook. Exhibits 2, 3, 4, and 5 should be sealed.

### B.  Exhibits 1 and 12

Exhibits 1 and 12 contain information related to the medical history, conditions, and treatment of Plaintiff Tonya Brand.  Courts in the Seventh Circuit have routinely recognized that, while parties' medical information may be made public where it is relevant to the claims at issue and/or necessary to the disposition of the case, other information may be kept under seal with good cause. *See Westedt v. Franklin,* 2016 WL 2997504, at *1 (E.D. Wis. May 23, 2016); *Gibson v. Milwaukee Cnty.*, 2015 WL 12964665, at *1 (E.D. Wis. Mar. 26, 2015); *Noe v. Carlos,* 2008 WL 5070463, at *3 (N.D. Ind. Nov. 26, 2008). The good cause inquiry thus requires balancing a party's acknowledged interest in medical privacy, *see Whalen v. Roe*, 429 U.S. 589, 599–600 (1977), against the Court's (and parties') interest in the accurate resolution of the conflict and the public interest in transparency. *Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017).  The documents listed above – Exhibits 1 and 12 – contain private, sensitive medical information about Plaintiff.  Out of an abundance of caution, the Court should permit these documents to be maintained under seal until Plaintiff consents to what should be disclosed.

### V.   CONCLUSION

For all the foregoing reasons, the Cook Defendants respectfully request that the Court issue an Order directing the Clerk to maintain **Exhibit 1 [Dkt. No. 7720-1], Exhibit 2 [Dkt. No. 7720-2], Exhibit 3 [Dkt. No. 7220-3], Exhibit 4 [Dkt. No. 7220-4], Exhibit 5 [Dkt. No. 7220-5], and Exhibit 12 [Dkt. No. 7720-6]** to Plaintiff's Response *under seal*.

Exhibits 2, 3, 4, and 5 are confidential and proprietary business information on internal complaint handling, internal complaint handling documents, and post-market product analysis. There is good cause to seal the documents and to maintain them under seal to prevent public disclosure and competitive harm to the Cook Defendants.

Further, Exhibits 1 and 12 are portions of Plaintiff's medical records. Out of an abundance of caution, these medical records should be maintained under seal to protect Plaintiff's interest in her medical privacy until Plaintiff consents to what should be disclosed.

In accordance with Local Rule 5-11(e)(4), the Cook Defendants have submitted a proposed order maintaining the documents under seal.

Respectfully submitted,

Dated:  March 12, 2018

/s/ Andrea Roberts Pierson
Andrea Roberts Pierson (# 18435-49)
J. Joseph Tanner (# 11856-49)
Nicholas B. Alford (# 31867-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-Mail:  joe.tanner@faegrebd.com
E-Mail:  nicholas.alford@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

US.11686055

- 14 -

## CERTIFICATE OF SERVICE

I hereby certify that on March 12, 2018, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

/s/ Andrea Roberts Pierson

US.11686055