IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No.  1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates to: All Actions

**COOK DEFENDANTS' MOTION
FOR SCREENING ORDER AND BELLWETHER SELECTION PLAN**

For the reasons set forth in more detail below, Cook[1] respectfully moves the Court to adopt the proposed Screening Order and Bellwether Selection Plan ("Proposed Plan"), attached as Exhibit A. The Proposed Plan promotes the Court's goals of (1) trying Product-in-Place/No Injury bellwether cases and (2) ensuring that the cases in the MDL allege a legally cognizable injury.

Product-in-Place/No Injury ("PIP/No Injury")[2] cases as cases where the plaintiff received a Cook filter that remains implanted and no *symptomatic* bodily injury has occurred or, relatedly, where the plaintiff's filter was removed percutaneously without a symptomatic injury or complication occurring while the filter was implanted or during the retrieval procedure. PIP/No Injury cases are the largest single case type in the MDL, making up approximately **one half** of the MDL inventory.  The parties and the Court have been discussing the issue of PIP/No Injury cases since Cook's Motion to select Product-in-Place cases as bellwethers in December of 2017.

---

[1] Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS
[2] Note that, while Product-in-Place and No Injury cases have significant overlap, they are not completely synonymous.  For instance, cases in which a filter was successfully percutaneously removed without complication are No Injury cases, but not Product-in-Place cases.

The Proposed Plan provides a screening mechanism to ensure pending and future filed cases allege a cognizable injury and that cases are properly categorized before the bellwether trial pool is selected. Briefly, the Proposed Plan works as follows. (1) Plaintiffs provide medical records to certify cases into categories. (2) The Court randomly selects a small pool of cases from all PIP/No Injury cases that Plaintiffs do not dismiss. (3) The parties conduct basic medical records discovery and then strike unrepresentative or unbalanced cases. And (4), the Court then choose three cases from the remaining pool for bellwether trials. Those three bellwether trials will help identify the proper contours of "injury" and "no injury" in this MDL, issues about which the parties have significant disagreement and which are a significant barrier to the resolution of this MDL.

## I.     The Evolution of the MDL

As of this filing, there are approximately 4,435[3] cases pending in this MDL, nearly evenly split between 2183 Tulip and 2126 Celect cases, with the remaining 126 cases involving other or unknown filters. When the first bellwethers were selected—*Hill* (defense jury verdict), *Gage* (defense win on summary judgment), and *Brand* (upcoming trial)—review of the PPS/PPF forms and the plaintiffs' responses to CMO-13 suggested that the predominate outcome alleged by the plaintiffs for both Tulip and Celect was IVC perforation. (*See* Cook Defs.' Mem. Regarding the New Disc. Pool & Cook's Proposed Bellwether Trials, at 4, Table 1 (May, 20, 2016) [Dkt. No. 1634].) This is not the case today.

As the Court is aware, Cook analyzed the MDL inventory before the May Status Conference and determined that almost half of all cases were PIP/No Injury cases. Moreover,

---

[3] Although there are roughly 4,435 cases in the MDL, only 4,134 have submitted PPSs. It is important to note that the information available in the PPS is self-reported by plaintiffs. Based on medical records that Cook has reviewed to date, Cook believes that the incidence of the various alleged device failure modes at issue in the MDL are over-stated. Nonetheless, the plaintiffs' self-reporting is the best information currently available on the makeup of the MDL.

since December 2017, "Other" claims have ballooned by nearly a thousand cases from 1,591 to 2,508. That inflation shows the shift away from IVC perforation cases to the current composition, where PIP/No Injury is the largest group of cases in the MDL.

## II.   Plaintiffs' Self-Identified 115 Meritless Cases

At the February 15, 2018, hearing, in response to Cook's challenges regarding the filing of frivolous, no-injury claims, Plaintiffs stated they performed a comprehensive self-review of their respective inventories and presented a list of 115 cases (the "Plaintiffs' 115") that they agreed should be dismissed. They also pledged to no longer file "no injury" cases. Ostensibly, Plaintiffs proposed the Plaintiffs' 115 because those cases were baseless and those plaintiffs could not maintain a cause of action. Cook agrees those cases were baseless and need to be dismissed. But the dismissal of these 115 cases does not resolve Cook's and the Court's concerns about meritless cases in the MDL. Indeed, the evidence from Plaintiffs' allegedly comprehensive self-selection process demonstrates that (1) the Plaintiffs' process was not systematic or principled in terms of the definition or methodology employed and (2) participation in the self-screening by the various plaintiffs' firms with significant inventories was inconsistent at best.

More specifically, a review of Plaintiffs' 115 reveals no coherent basis for dismissal. Plaintiff's 115 included claims ranging from stress and anxiety to migration and perforation. The plaintiffs have not explained what methodology they applied, if any, to select these cases nor have they provided any workable definitions of "injury" and "no injury," and which types of allegations would fit on either side of the "injury" demarcation. Further, the complications, outcomes, and injuries alleged by the Plaintiffs' 115 are different enough that Cook has been unable to understand what methodology, if any, Plaintiffs employed to populate the list or

3

replicate Plaintiffs' self-selections from studying the Plaintiffs' 115. As a result, it is unclear how the Plaintiffs' 115 was selected other than that a few firms, apparently, reviewed their inventories and self-selected some frivolous cases that they previously filed and now wish to dispose of for whatever reason.

Additionally, Plaintiffs have questioned the PIP/No Injury calculations that Cook has made. They represented[4] to the Court that, because they identified the Plaintiffs' 115, it "tells us that we don't have this huge problem with product-in-place cases." Plaintiff's Co-Lead Counsel, Hearing Tr. (Feb. 15, 2018), p. 18:16-23. During the protracted negotiations to arrive at the terms of dismissal for Plaintiffs' 115, Plaintiffs further reiterated that this list represented that the Plaintiffs' 115 "is a fairly accurate figure" and that Plaintiffs' counsel "went into great detail" as part of the self-review process: "There are 115 – 115 of these product-in-place cases, as best we know, with [no] injury." *Id.* at 39:9-15. In other words, Plaintiffs' Co-Lead Counsel represented that Plaintiffs' 115 is effectively a complete list of all the No Injury cases in the MDL.[5] As part of the parties' negotiations over the terms of dismissal for Plaintiffs' 115, Plaintiffs argued that nothing about the selection and dismissal of Plaintiffs' 115 should be applied to any other cases in the MDL. Again, Plaintiffs provided no explanation as to how these 115 cases were different from the thousand-plus other cases that, based on Plaintiffs' own representations in sworn discovery responses, appear to be PIP/No Injury cases.

---

[4] "The list of 115 cases was not pulled out of the air. People went – I trust that the Plaintiffs went back and looked at their docket and looked at their fact sheets and their lawsuits and that this is a fairly accurate figure … we went into great detail with the Plaintiffs' counsel. There are 115 – 115 of these product-in-place cases, as best we know, with no injury." Plaintiff's Co-Lead Counsel, Hearing Tr., p. 39:6-15.

[5] "I believe that there was participation on everybody's part. Is this a complete list? I can't guarantee it but I believe it's pretty close to it. We asked people: Go through your docket, look at your profile sheets, look at your profile forms, look at the lawsuits you filed, look at your medical records, if necessary, tell us if you are filing product-in-place cases with no injury." Plaintiff's Co-Lead Counsel, Hearing Tr. p. 17:18-25.

US.118642763.04

### III.     230 Additional Cases Identified by Cook for Dismissal

Prior to the last hearing and in response to Plaintiffs' claim that the Plaintiffs' 115 were the entire universe of PIP/No Injury cases, Cook easily identified an additional 115 No Injury cases ("Cook's First 115") that warranted immediate dismissal, and provided that list to Plaintiffs in a letter attached as Exhibit B.  Cook's First 115 are primarily cases that had checked "tilt" or "other" as a complication and alleged non-physical injuries such as "fear of injury," "anxiety and depression," and the like.  Perhaps most emblematically, Plaintiff Grimes alleged "FEAR OF THE UNKNOWN AND WHAT COULD HAPPEN GIVEN THAT THE FILTER IS STILL IN MY BODY" (caps in original),[6] which the Court noted in its minute order after the hearing as a concern:  "The court ordered Plaintiffs to review those cases where the only injury is, for example, 'the fear of the unknown,' and to inform Cook of the cases, if any, they will agree to dismiss."  Minute Order Following June 14, 2018, Hearing, Dkt. 8409.

Plaintiffs' 115 are not the only No Injury cases, and Plaintiffs' claims and representations about the MDL inventory are inaccurate.  Indeed, Cook easily identified 115 prior to the last hearing.  Along with this Motion, Cook is sending to Plaintiffs *a second* list of 115 frivolous PIP/No Injury cases, attached as Exhibit C, that should have been screened from filing pursuant to the plaintiffs' Rule 11 obligations ("Cook's Second 115").  Put simply, Cook has doubled and tripled the number of identified PIP/No Injury cases that merit immediate dismissal through the two case lists that it has provided to Plaintiffs.  Cook has thereby demonstrated that Plaintiffs' self-selection of 115 cases was anything but a comprehensive process that produced a "fairly accurate figure" of all the PIP/No Injury cases in the MDL.  *See* Plaintiff's Co-Lead Counsel, Hearing Tr. (Feb. 15, 2018), p. 39:9.  Contrary to Plaintiffs' assertions, the "huge problem with product in place cases" remains.  *Id.* at 18:16-23.

---

[6] Grimes, Joshua, 1:16-cv-02475.

Moreover, Cook's First and Second 115 show that some firms simply did not participate in the self-selection process despite Plaintiffs' leadership's claim that Plaintiffs' self-selection was a thorough process. Indeed, Cook noted in the First 115 and at the last hearing that David Matthews, Curtis Law, Cellino & Barnes, and Bacchus & Schanker did not self-select any cases in Plaintiffs' 115 but they had multiple obvious "no injury" cases in Cook's First 115. *See* Exh. B, Cook's First 115, p. 1. Likewise, Cook has identified in its Second 115 additional cases from these firms and multiple cases from other firms with significant inventories that should be dismissed. When Cook's two lists are combined, the following firms have five or more cases that should be dismissed but did not identify a single case in Plaintiffs' 115: Dave Mathews (18 cases), Babbitt Johnson (40 cases), Curtis Law (31 cases), Cellino & Barnes (10 cases), Bacchus & Schenker (8 cases), Murray Law Firm (8 cases), McGlynn Glisson & Mouton (7 cases), and Miller Law Firm (5 cases). Moreover, Cook identified some obvious No Injury cases even from firms that did disclose cases as part of Plaintiffs' 115, indicating that even for firms that reviewed their inventories, not all meritless cases were identified and disclosed for dismissal. For example, Marc Bern and Wendt Law each disclosed a single case in Plaintiffs' 115, but Cook has respectively identified 13 Marc Bern and 14 Wendt Law No Injury cases in its two lists.

**IV.  Frivolous Claims Have Become the Norm**

Despite it being incumbent under Rule 11 for Plaintiffs to screen their cases prior to filing them, frivolous cases continue to be filed and, because of that, a screening mechanism is needed to cull the MDL inventory of baseless cases and stem further such filings. Examples from the Cook's Second 115 cases stress the continued importance of a screening mechanism because Plaintiffs' self-review and selection simply has not addressed the many meritless cases that

6

remain in the MDL. The five cases highlighted below are yet more examples in additional to those shown to the Court at the last two regular MDL status conferences.

  A. <u>Plaintiff Kimberly Champagne-Hernandez (Ahlers Cooney)</u>

Plaintiff Champagne-Hernandez is one of the many cases in the MDL that has alleged inability to retrieve as the sole injury. More specifically, she checked the "unable to retrieve" box in Paragraph V and only wrote in "device is irretrievable" in Paragraph VII. *See* Excerpts from Plaintiff Champagne-Hernandez's Second Amended PPF, ¶¶ VI, VII, attached as Exhibit D. Instead of dismissing the case after the filter was successfully removed on November 11 2017, Plaintiff Champagne-Hernandez instead amended her PPF and now alleges "other: Device was removed/explanted 11/11/17" as an injury. *See id.*, ¶¶ VI-VII (highlighting in original). To state the obvious, the successful removal of a filter indicated for both permanent and retrievable use is not an injury and the case should be dismissed.

  B. <u>Plaintiff Jaclyn Bravman (Babbitt Johnson)</u>

Like Kimberly Champagne-Hernandez, plaintiff Jaclyn Bravman's case is a typical example of the many cases in the MDL that merely allege their filter is "unable to be retrieved" and claim that status as an injury. Indeed, Plaintiff Bravman's case is one of the 40 cases from the Babbitt Johnson firm included in Cook's Second 115 that checked the "unable to be retrieved" box in Paragraph V and wrote in boilerplate language in lieu of alleging any specific injuries in Paragraph VII.[7] *See* Excerpts from Plaintiff Bravman's PPS, ¶¶ V, VII, attached as Exhibit E. Furthermore, Plaintiff Bravman's PPS notes that she underwent a failed retrieval attempt in 2007. A failed retrieval attempt in and of itself is not an injury because the filter is

---

[7] The boilerplate allegations reads as follows, "Plaintiff has suffered and continues to suffer significant medical expenses, pain and suffering, loss of enjoyment of life, disability, scarring and disfigurement, and other losses. Plaintiff will require ongoing medical care. Plaintiff remains concerned that she will suffer additional injury/and or death because of the retained filter." Exh. E., Excerpts from Bravman PPS, ¶ VII.

7

also indicated for use as a permanent filter. To the extent Plaintiff Bravman (and other plaintiffs with similar factual allegations) claim the failed retrieval attempt as a legally cognizable injury, any viable claim associated with the failed retrieval attempt would be time-barred because it occurred in 2007 and Plaintiff Bravman did not file her case until ten years later in 2017. Accordingly, cases such as Plaintiff Bravman's case should be dismissed.

        C.        <u>Plaintiff Marc Cota (David Matthews)</u>

In his PPS, Plaintiff Marc Cota checked the "unable to retrieve" box in Paragraph V and wrote in boilerplate language about not being "certain which specific symptoms or bodily injuries [he] may have suffered as a result of the Cook IVC Filter" and reserving the right to rely on "the experts that will be retained by my lawyer to determine this information. *See* Excerpts from Plaintiff Cota's PPS, ¶¶ VI, VII, attached as Exhibit F. Setting aside that the boilerplate language and expert objections are improper because CMO-4 requires plaintiffs to provide objection-free responses to each question (*see* CMO-4, as amended, ¶ 1(c), Dkt. 4226), Plaintiff Cota only alleges non-physical injuries: "the IVC Filter is irretrievable. I also experience anxiety, mental anguish and stress about the status of my filter and related injuries." Exh. F, Excerpts from Cota PPS, ¶ VII. Considering that Plaintiff Cota submitted his PPS just over a month ago on May 11, 2018, his case shows that Plaintiffs continue to file cases without screening despite Cook raising the "no injury" issues at every status conference in 2018. A screening order is needed to put a stop to the continued filing of PIP/No Injury cases.

        D.        <u>Plaintiff Carl Jackson (Wendt Law)</u>

Plaintiff Jackson does not allege any complication with his filter or claim any injury other than "[c]ontinued need for anticoagulant therapy," which he wrote in as an "other" outcome in Paragraph V and re-stated as his sole current complaint in Paragraph VII. *See* Excerpts from

8

Plaintiff Jackson's PPS, ¶¶ VI, VII, attached as Exhibit G. Plaintiff Jackson's case is representative of another dozen cases from this firm listed in Cook's Second 115 that only claim anticoagulant therapy as an injury. However, anticoagulants are routinely prescribed to patients at risk of forming blood clots and are a treatment method sometimes employed in conjunction with use of a filter to prevent blood clots from forming and proceeding to the lungs as potentially fatal pulmonary emboli. Thus, a plaintiff's continued course of anticoagulant medication is not an injury attributable to the filter, but indication that the plaintiff continues to be at risk of DVT/PE. The filters that these plaintiffs received were put in place to guard against the risk of PE, and the filters continue to fulfill that role if still implanted. Accordingly, Plaintiff Jackson and other cases like his have not alleged a cognizable injury and their cases should be dismissed.

      E.     <u>Plaintiff Ricky Myers (Baron Budd)</u>

Like the plaintiffs in the preceding examples, Plaintiff Myers only checked the "unable to be retrieve" box in Paragraph V of his PPF and his only complaint in Paragraph VII is: "[t]he filter is unable to be safely removed." (*See* Excerpts from Plaintiff Myers's PPF, ¶¶ VI, VII, attached as Exhibit H.) Setting aside that the mere allegation of inability to retrieve is not an injury because Cook filters are also indicated for permanent use, Plaintiff Myers's claim that the filter cannot be removed is exceedingly suspicious because he states that the outcome was determined by his "attorney" as part of a "legal consultation." *Id.*, ¶ VI. In other words, Plaintiff Myers's counsel substituted its own judgment in lieu of providing information from a medical professional to support the claim. Certification of claimed injuries through medical records is necessary to close loopholes such as the instant one exploited by Plaintiff Myers.

**V.      Proposed Definitions**

Based on the parties discussions with the Court at the MDL status conferences and the Plaintiff's acknowledgments and arguments at those conferences, Cook proposes the following definitions for Undisputed PIP/No Injury cases, which should be immediately dismissed, Disputed PIP/No Injury cases, which should form the bulk of the initial group from which the next bellwethers will be selected, and Bodily Injury cases, which formed the basis for all of the first Bellwether selections and should not be included in the second Bellwether round.  *See* Exh. A, Cook's Proposed Plan, ¶ II.

A. <u>Undisputed PIP/No Injury definition:</u>  An "Undisputed PIP/No Injury" case is defined as a case in which a Cook Gunther Tulip, Celect, or Celect Platinum filter has been placed in the Plaintiff's body and the only injuries alleged are limited to those set forth below.

1. The mere presence of a filter in the body when not occurring in conjunction or association with a Bodily Injury or some characteristic of a Disputed PIP/No Injury case, as defined below.  This includes any case where the injury alleged is presence of a filter, accompanied solely by fear, anxiety, stress, increased risk of some complication that has not actually occurred, and/or some other non-physical complaint.  The filter may be tilted or the plaintiff may allege the inability to retrieve or embedment.

2. Routine puncture marks or insignificant scarring from an implant or retrieval procedure when not occurring in conjunction or association with a Bodily Injury as defined below.

3. Plaintiff's filter was successfully removed percutaneously and there is no indication in the medical records of a Bodily Injury, as defined below, occurring while the filter was in place.  Asymptomatic instances of filter tilting, migration or movement,

10

penetration or perforation, or thrombosis or occlusion or alleged embedment are not considered a Bodily Injury in cases where the filter has been successfully removed percutaneously.

B. <u>Disputed PIP/No Injury definition</u>.  Disputed PIP/No Injury cases are those cases that are not Undisputed PIP/No Injury and also not Bodily Injury cases.  Disputed PIP/No Injury cases explicitly include the following types of cases.

1. The mere presence of clot in a filter in the absence of a separate Bodily Injury as defined below; or

2. Non-symptomatic filter movement or migration, non-symptomatic penetration or perforation, non-symptomatic thrombosis or occlusion, in the absence of a separate Bodily Injury as defined below.

C. <u>Bodily Injury definition</u>.  Plaintiffs allege that certain conditions are injuries caused by an IVC filter.  The definitions of these alleged injuries and whether they constitute compensable injuries remains disputed, but for purposes of the Proposed Plan, an alleged Bodily Injury case is defined to include cases in which medical records demonstrate one or more of the following allegedly caused by the Plaintiff's filter.

1. Symptomatic IVC thrombotic occlusion:  Symptomatic IVC thrombotic occlusion is (i) the presence of an occluding thrombus in the IVC after filter insertion that is documented by ultrasound, CT, MR imaging, venography (collectively, "imaging") or autopsy and (ii) occurring in conjunction with a documented medical condition, bleeding, or pain allegedly caused by the filter;

2. Filter embolization:  Filter embolization is post-deployment movement of the filter or its components to a distant anatomic site completely out of the target zone;

11

  3. Filter fracture:  Filter fracture is any loss of a filter's structural integrity (i.e. breakage or separation) documented by imaging or autopsy;

  4. Symptomatic filter movement or migration:  Symptomatic filter movement or migration is a (i) change in filter position compared with its deployed position (either cranial or caudal) of more than 2 cm as demonstrated on CT, venogram, or other imaging and (ii) associated with suspected or documented injury, bleeding, or pain, allegedly caused by the filter;

  5. Symptomatic filter penetration or perforation:  Symptomatic filter penetration/perforation is a (1) filter strut or anchor extending more than 3 mm outside the wall of the IVC as demonstrated on CT, venogram, or other imaging and (2) associated with suspected or documented injury, bleeding, or pain, allegedly caused by the filter;

  6. Recurrent pulmonary embolism (PE):  Recurrent PE is PE that occurs after filter placement and is documented by pulmonary arteriography, cross-sectional imaging, or significant change in ventilation/perfusion lung scan indicative or recurrent PE, or an autopsy;

  7. Infection; or

  8. Death

**VI. Proposed Plan**

Cook's Proposed Plan includes the following steps:

1. In order to ensure cases are properly categorized, Plaintiffs certify the respective outcomes, complications, and injuries claimed by submitting a specific medical record evincing the claimed complications, outcomes, and injuries.

12

US.118642763.04

2. Using the information provided by Plaintiffs, Cook will prepare a census for the Court of all cases in the MDL and whether they are Undisputed PIP/No Injury, Disputed PIP/No Injury, or Injury cases.

3. The Court will use random selection to identify 24 PIP/No Injury cases for the Bellwether Pool: 16 Tulip and 8 Celect.

4. The parties will exchange all medical records in their respective possession for the randomly selected cases, study those cases, and strike 4 Tulip and 2 Celect cases each.

5. The parties would then submit short briefing on the bellwether appropriateness of the remaining dozen cases (8 Tulip and 4 Celect), and the Court would select three representative cases as the next bellwethers: a Tulip trial, then a Celect trial, and finally another Tulip trial.[8]

Screening cases into the categories defined above and selecting PIP/No Injury cases as Bellwethers is the most effective use of this Court's and the Parties' resources for numerous reasons. As an initial matter, PIP/No Injury cases make up almost half of the MDL, far more than any other individual injury type. And the parties have a significant disagreement over whether these cases even pass muster under Rule 11, let alone their value for any potential settlement. If the plaintiffs are unwilling to dismiss all the PIP/No Injury cases, then the bellwether process becomes the primary and best means of resolving these cases by testing the contours of what constitutes "injury" cases with some potential value and "no injury" cases with no value for the purposes of this MDL.

Further, Plaintiffs' counsel have continued to file PIP/No Injury cases even since they self-identified 115 cases for dismissal (as demonstrated above and at the status conferences in this matter). Moreover, the attorney advertising for IVC filter cases by some plaintiffs' counsel

---

[8] Because the first three bellwethers included two Celect cases (*Hill* and *Brand*) and only one Tulip case (*Gage*), the Plan proposes two Tulip trials and one Celect trial.

explicitly seeks PIP/No Injury cases. For example, in an advertisement posted on the National Injury Help website, titled "Product in Place Lawsuits an Option for IVC Filter Patients with no Complications," the author of the advertisement states that "People who have retrievable IVC filters implanted but haven't noticed any symptoms or complications may still be eligible for an IVC filter claim. These claims are called Product in Place, or PIP," attached as Exhibit I. Another example is an advertisement for a webinar titled "IVC Filter – The Keys to Unlocking Value in Product in Place Cases," attached as Exhibit J.

Consequently, if the parties and the Court have any hope of resolving this MDL, it is in the interest of all to determine the value, if any, of the PIP/No Injury cases sooner rather than later so that the parties will have information on the value of the these cases – which Cook views as meritless and without value – and Plaintiffs – presumably from their advertising and continued filing of such cases – view as holding some value. Cook's Proposed Plan (Exhibit A) outlines a process that would accomplish exactly that through the screening and categorization of injuries and the selection and trial of three bellwether cases on the fact patterns where parties disagree whether a legally cognizable injury has occurred.

Accordingly, Cook urges the Court to adopt the Proposed Plan.

## CONCLUSION

For the foregoing reasons, Cook respectfully request that the Court enter the Proposed Plan, attached as Exhibit A, so that the parties may reliably identify PIP/No Injury cases and establish a PIP/No Injury bellwether process

Dated: June 25, 2018                                 Respectfully submitted,

/s/ J. Stephen Bennett
J. Stephen Bennett (# 22869-02)
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana  46802
Telephone: (260) 424-8000
Facsimile:  (260) 460-1700
E-Mail:  stephen.bennett@faegrebd.com

Andrea Roberts Pierson (# 18435-49)
John T. Schlafer (# 28771-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone: (317) 237-0300
Facsimile:  (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-Mail:  john.schlafer@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

## CERTIFICATE OF SERVICE

I hereby certify that on June 25, 2018, a copy of the foregoing "Cook Defendants' Motion For Screening Order And Bellwether Selection Plan" was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

/s/ J. Stephen Bennett

US.118642763.04