IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE: COOK MEDICAL, INC., IVC
FILTERS MARKETING, SALES
PRACTICES AND PRODUCT LIABILITY
LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL NO. 2570

This Document Relates:

*Brand v. Cook Medical, Inc., et al*
Case No. 1:14-cv-6018-RLY-TAB

**PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO STRIKE DEFENDANTS'
NON-RETAINED EXPERT H. ROBERT SMOUSE, MD**

COMES NOW Tonya Brand, Plaintiff in the above-styled action, by and through undersigned counsel, and hereby respectfully requests that this Court Strike Defendants' Non-Retained Expert H. Robert Smouse, MD, and states as follows:

1. Cook disclosed Dr. Smouse as an expert but did not provide an expert report. Cook characterized Dr. Smouse as a non-retained expert and provided only a summary of Dr. Smouse's anticipated opinions.[1]

2. As discussed in the incorporated memorandum, the vast majority of Dr. Smouse's expected opinions concern matters he was not involved in as a consultant for Cook.

3. Federal law, including decisional law from this Court, requires a report when an expert testifies regarding matters with which he was not involved.

---

[1] Cook Defendants' Amended Rule 26(a)(2)(B) and 26(a)(2)(C) Expert Disclosures attached as Exhibit A

1

4. Plaintiff objects to Cook calling Dr. Smouse under any circumstance because any expert testimony he may give required a report, and any factual testimony he may give is cumulative.

**MEMORANDUM**

**A.   The Law**

The issue here concerns Rule 26(a)(2) and, specifically, whether Dr. Smouse may be deemed a non-retained expert witness, i.e., one who may provide only a summary of opinions pursuant to Rule 26(a)(2)(C). Rule 26(a)(2)(B) defines an expert witness as "one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony."[2] The expert report serves the purpose of putting the opposing party on notice of the expert's proposed testimony so the opposing party may form an appropriate response.[3] The consequence of non-compliance with Rule 26(a)(2)(B) is "exclusion of an expert's testimony ... 'unless the failure was substantially justified or is harmless.' "[4]

Courts have addressed the issue of when an expert may testify without furnishing a report: "The distinguishing characteristic between expert opinions that require a report and those that do not is <u>whether the opinion is based on information the expert witness acquired through percipient observations or whether, as in the case of retained experts, the opinion is based on information provided by others</u> in a manner other than by being a percipient witness to the events in issue."[5] The difference between retained and non-retained experts is that "<u>non-retained experts gain their</u>

---

[2] Rule 26(a)(2)(B); see also *Meyers v. National R.R. Passenger Corp.,* 619 F.3d 729, 734 (7th Cir.2010); *Musser v. Gentiva Health Services,* 356 F.3d 751, 757 (7th Cir.2004).
[3] *Meyers,* 619 F.3d at 734; *Musser,* 356 F.3d at 757–58.
[4] *Meyers,* 619 F.3d at 734 (citing *Gicla v. United States,* 572 F.3d 407, 410 (7th Cir.2009) (quoting Rule 37(c)(1))).
[5] *In re Application of Republic of Ecuador*, 280 F.R.D. 506, 511 (N.D. Cal. 2012) (emphasis added).

2

<u>information through percipient observations, while retained experts gain their information in any other manner</u>."[6]

Hired consultants for clinical and non-clinical studies only qualify as a non-retained expert for opinions based on percipient observations. A treating physician is the most common example of non-retained expert witness because they testify about opinions formed during the course of their treatment of the patient.[7] This is because such opinions are based on scientific, technical, or other specialized knowledge.[8] Courts applying the rule agree that not every treating physician is required to provide an expert report pursuant to Rule 26(a)(2)(B).[9] Whether an expert report is necessary is dictated by the nature of the physician's intended testimony.[10]

In *Downey v. Bob's Disc. Furniture Holdings*, 633 F.3d 1 (1st Cir. 2011), the court permitted a summary disclosure because the expert opinion arose not from "enlistment as an expert" but from the witness's "ground-level involvement in the events giving rise to the litigation."[11] On the other hand, said the *Downey* court, if the expert "draws the opinion from facts supplied by others, in preparation for trial, he reasonably can be viewed as retained or specially employed for that purpose, within the purview of Rule 26(a)(2)(B)," and must therefore

---

[6] *Guarantee Tr. Life Ins. Co. v. Am. Med. & Life Ins. Co.*, 291 F.R.D. 234, 237 (N.D. Ill. 2013) (emphasis added).
[7] *Meyers,* 619 F.3d at 734–35.
[8] *Musser,* 356 F.3d at 751, 757 n. 2.
[9] *Musser,* 356 F.3d at 758, n. 3 ("[A]n individual who serves in the capacity of 'treating physician' (or any analogous position) may … be required to submit a report under Rule 26(a)(2)(B)."); *Kondragunta v. Ace Doran Hauling and Rigging Co.*, 2012 WL 1189493 (NDGa 2013) ("[I]f a physician's opinion regarding causation or any other matter was formed and based on observations made during the course of treatment then the Subsection C report will be required. If, however, the physician's opinion was based on facts gathered outside the course of treatment, or if the physician's testimony will involve the use of hypotheticals, then a full Subsection B report will be required." (citations omitted)).
[10] *Musser,* 356 F.3d at 758 n. 3.
[11] *Downey v. Bob's Disc. Furniture Holdings*, 633 F.3d 1, 6 (1st Cir. 2011).

submit an expert report.[12]  The Seventh Circuit has cited *Downey* favorably,[13] and this Court has relied on *Downey* with respect to a non-retained expert treating physician:

> Whether an expert must provide a complete report under 26(a)(2)(B) or a less extensive summary under 26(a)(2)(C) depends on the expert's relationship to the issues involved in the litigation. Treating physicians, for example, often have firsthand knowledge of the events giving rise to the litigation and typically are not "retained or specially employed to provide testimony." In such cases, the treating physician need only provide a 26(a)(2)(C) summary disclosure. If the treating physician testifies beyond the scope of his observations, however, he is treated as a retained expert.[14]

This Court recognized in *Malibu Media* that "[n]umerous district courts have accepted this [*Downey*] analysis of the distinction between Rule 26(a)(2)(B) and Rule 26(a)(2)(C) expert witnesses" and concluded: "This Court likewise finds the First Circuit's [*Downey*] analysis persuasive and accordingly will consider whether [the expert's] opinion arises 'from his ground-level involvement in the events giving rise to the litigation.'"[15]  The expert in *Malibu Media* was excluded altogether.[16]  Failure to comply with the requirement for a report may "result[] in the exclusion of improperly disclosed witnesses…."[17]

The majority of Dr. Smouse's expert opinions concern events with which he had no "ground-level involvement," and any opinions he may have from "percipient observations" are cumulative and unnecessarily extend the length of the trial.[18]

### B. The Facts

---

[12] *Id.* at 7.
[13] *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 371 (7th Cir. 2017) (quoting *Downey*'s "ground-level involvement" test for determining whether a report is required).
[14] *Martin v. Stoops Buick*, 2016 WL 4088132 at *1 (S.D. Ind. 2016) (citing *Malibu Media, LLC v. Harrison*, 2014 WL 6474065 at *2 (S. D. Ind. 2014) (citing *Downey*, 633 F.3d at 6) (Dinsmore, M.J.); 2014 WL 7005288 (S.D. Ind. 2014) (adopting R&R) (Lawrence, D.J.)).
[15] *Malibu Media*, 2014 WL 6474065 at *2 (Dinsmore, M.J.); 2014 WL 7005288 (S.D. Ind. 2014) (adopting R&R) (Lawrence, D.J.).
[16] *Id.* at *4-5.
[17] *Martin*, 2016 WL 408813 at *3.
[18] *Downey* at 6; "Evidence is 'cumulative' when it adds very little to the probative force of the other evidence in the case … if … admitted … would be outweighed by its contribution to the length of the trial…." *United States v. Williams*, 81 F.3d 1434, 1443 (7th Cir.1996); *see also United States v. Bradley*, 145 F.3d 889, 894 (7th Cir.1998).

B1.   Dr. Smouse's Intended Testimony

Dr. Smouse "is a physician and clinical researcher who has served as a consultant for Cook."[19] Dr. Smouse was involved in various clinical and non-clinical IVC filter studies and has experience with IVC filters in his practice, but how much "ground-level involvement in the events giving rise to the litigation" is impossible to extract from Cook's summary disclosure.[20] As the *Downey* court said, if the expert "draws the opinion from facts supplied by others, in preparation for trial, he reasonably can be viewed as retained or specially employed for that purpose, within the purview of Rule 26(a)(2)(B)," and must therefore submit an expert report.[21] Here, Dr. Smouse has highly technical and scientific information derived from clinical and non-clinical testing that require him to submit a Rule 26(a)(2)(B) report.

B2.   Dr. Smouse's Disclosure

Cook provided a summary disclosure identifying the following opinions (verbatim):

1. His relationship with Cook. Dr. Smouse will testify that, while he has been contracted as a consultant and presenter by Cook on numerous occasions, he has never and would never let his contractual relationships with Cook affect his judgment, the results of any study, or the accuracy of any presentation content.

2. The retrievability of the Gunther Tulip IVC filter. In several studies, Dr. Smouse implanted filters in human patients or served as the principal investigator for the study. Dr. Smouse will testify, based on his personal experiences in both studied and actual patients, that the Tulip filter is a safe device which is retrievable for an extended period after implantation without adverse medical impact to patients. He will further testify that any study limitations did not adversely impact the results of any study and that the studies were, in his opinion, conducted properly in light of their purposes.

3. The use of ovine models for testing of human vascular medical devices, particularly IVC filters. Dr. Smouse will testify that the use of sheep to test the vascular medical devices is well accepted in the field and that sheep provide accurate and predictable results for how medical devices will perform in the human IVC.

---

[19] Exh. A at 20.
[20] *Id.*; *see also Downey* at 6.
[21] *Downey* at 7.

4. The expected compression of a human IVC. Dr. Smouse will testify regarding how IVC compression can be measured, the basis of Dr. Smouse's original opinion to Cook that humans probably experience a maximum of 25 to 30% compression of the IVC, and that Cook's ovine study of IVC compression and the resulting compression rate used to fatigue test filters were appropriate based on his experiences.

5. Cook-sponsored non-clinical studies. Dr. Smouse was the interventionalist for several non-clinical studies sponsored by Cook and authored numerous articles based on results from those studies, including peer-reviewed articles. Dr. Smouse will testify as to the purposes of the various studies, that the use of sheep in these studies was appropriate and indicative of the expected performance in the human IVC, the methods behind his subjective observations as he retrieved and implanted filters in the studies (e.g. retrieval force, retrieval complication), and his opinion that the results of the non-clinical studies indicated that the Celect was safe for both permanent and retrievable indications.

6. The extended retrieval window of the Celect filter. Dr. Smouse will testify that, based on his experience retrieving filters in various animal studies and in human patients, that the Tulip and Celect filters were safely retrievable for extended periods without an adverse medical impact to patients.

7. Filter events without clinical sequelae. Dr. Smouse will testify that, in his experience, tilt, migration, and even penetration without clinical sequelae are not adverse events, are not of particular concern, and do not generally impact patient safety.

8. The "off-label" use of filters. Dr. Smouse will testify that, while he did not personally experience any Cook promotion of the off-label use of Tulip or Celect filters, such off-label use was common in medicine, was at the sole discretion of each patient's physician, and was appropriate, as the physician had determined the benefits outweighed the risks.[22]

B3.   Dr. Souse's "Ground-Level Involvement" at Cook

Dr. Smouse, as Defendants state in the disclosure, has not been deposed, and therefore, none of the summarized opinions allow Plaintiff to divine whether or not he had "ground-level involvement in the events giving rise to the litigation."[23] Defendant's disclosure refers to highly technical and scientific information that requires a report without evidence of his "percipient

---

[22] Exh. A at 20-22.
[23] *Id.*; *see also Downey* at 6.

observations," and therefore, all of his opinions are insufficient for a Rule 26(a)(2)(C) disclosure.[24] Further, his opinion regarding off-label use and the mindset of other doctors is not "based on scientific, technical, or other specialized knowledge;" it is nothing more than an unsubstantiated gratuitous assertion to bolster impermissible evidence that the benefit of filters outweighs their risk because he has knowledge base what specific prescriber believes regarding benefit or risk of the Celect filter, and his opinion is directly contradictory to testimony by Brand's treating physicians.[25]

The noncompliant disclosure prejudices Plaintiff and is not harmless because the eight (8) separate opinions are of such highly scientific and technical matters that his opinions require a report, and there is no reasonable way for Plaintiff to discern which opinions are based on "ground-level involvement in the issues giving rise to the litigation" within the deadlines set forth in the Case Management Order for this trial.[26] Cook's consequence for non-compliance with Rule 26(a)(2)(B) should be Dr. Smouse's exclusion because his disclosure is not substantially justified or harmless.[27] The court excluded the expert in *Malibu Media* altogether because the disclosure was deficient and the deadlines in the case prejudiced the Plaintiff's ability to separate which opinions were subject to a report and which opinions only required a summary disclosure within that case's deadlines.**[28]**

B4. Dr. Smouse's "Ground-Level" Opinions are Cumulative

Dr. Smouse's "ground-level involvement" as a consultant for Cook in clinical and non-clinical studies are insufficient for a Rule 26(a)(2)(C) disclosure because his opinions rely on

---

[24] *Malibu Media*, 2014 WL 6474065 at *4-5; *Downey* at 6-7; *Guarantee Tr. Life Ins. Co*, 291 F.R.D. at 237.
[25] *Musser v. Gentiva Health Services,* 356 F.3d 751, 757 n. 2 (7th Cir.2004).
[26] *Malibu Media* at *5; *see* Exh. A at 20; *see* Doc. 5889-3.
[27] *Meyers,* 619 F.3d at 734 (citing *Gicla v. United States,* 572 F.3d 407, 410 (7th Cir.2009) (quoting Rule 37(c)(1))).
[28] *See Malibu Media* at *4-5.

"facts supplied by others," which would require a report.[29]  Further, his disclosed opinions are all covered by disclosure of Dr. John A. Kaufman, and therefore, his testimony is cumulative and unnecessary. [30]  Even if he has opinions that are admissible, they add "very little to the probative force of the other evidence in the case," and any relevance those opinions may have is outweighed by its admission's contribution to the unnecessary extension of the trial.[31]

### C. Conclusion

For the reasons set forth above, Plaintiff seeks an Order that excludes Dr. Smouse in the entirety because he did not submit a compliant Rule 26(a)(2)(B) report, and whatever testimony that is potentially admissible is cumulative and will lead to an unnecessary extension of the trial.

Respectfully submitted this 5th day of July, 2018.

*/s/ Joseph N. Williams*
Joseph N. Williams, Atty. No. 25874-49
RILEY WILLIAMS & PIATT, LLC
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317) 633-5270
Facsimile: (317) 426-3348
Email:  jwilliams@rwp-law.com
*Liaison Counsel to Plaintiffs' Steering Committee and on behalf of Plaintiffs' Steering Committee*

Michael W. Heaviside, Esq.
HEAVISIDE REED ZAIC, A LAW CORPORATION
910 17th Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 223-1993
mheaviside@hrzlaw.com

---

[29] *Malibu Media*, 2014 WL 6474065 at *5; *Downey* at 6-7.
[30] *See* Exh. A at 19-20; *see also Williams*, 81 F.3d at 1443; *Bradley*, 145 F.3d at 894.
[31] *Williams*, 81 F.3d at 1443.

>Ben C. Martin, Esq.
>THE LAW OFFICES OF BEN C. MARTIN
>3710 Rawlins Street, Suite 1230
>Dallas, TX  75219
>Telephone: (214) 761-6614
>Facsimile: (214) 744-7590
>bmartin@bencmartin.com
>
>David P. Matthews, Esq.
>MATTHEWS AND ASSOCIATES
>2509 Sackett St.
>Houston, TX  77098
>Telephone: (713) 522-5250
>Facsimile: (713) 535-7184
>dmatthews@thematthewslawfirm.com
>
>*Plaintiffs' Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

>*/s/ Joseph N. Williams*
>Joseph N. Williams