IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE: COOK MEDICAL, INC., IVC
FILTERS MARKETING, SALES
PRACTICES AND PRODUCT LIABILITY
LITIGATION                                      Case No. 1:14-ml-2570-RLY-TAB
                                                MDL NO. 2570

This Document Relates:

    *Brand v. Cook Medical, Inc., et al*
    Case No. 1:14-cv-6018-RLY-TAB

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO STRIKE DEFENDANTS' NON-RETAINED EXPERT JOHN A. KAUFMAN, MD

COMES NOW Tonya Brand, Plaintiff in the above-styled action, by and through undersigned counsel, and hereby respectfully requests that this Court Strike Defendant's Non-Retained Expert John A. Kaufman, MD, and states as follows:

1.  Cook disclosed Dr. Kaufman as an expert but did not provide an expert report. Cook characterized Dr. Kaufman as a non-retained expert and provided only a summary of Dr. Kaufman's anticipated opinions.[1]

2.  As discussed in the incorporated memorandum, many of Dr. Kaufman's expected opinions concern matters he was not involved in as a consultant for Cook.

3.  Federal law, including decisional law from this Court, requires a report when an expert testifies regarding matters with which he was not involved.

4.  Plaintiff does not object to Cook calling Dr. Kaufman as a fact witness in its case; but does object to expert testimony on matters with which he had no substantive involvement.

---

[1] Cook Defendants' Amended Rule 26(a)(2)(B) and 26(a)(2)(C) Expert Disclosures attached as Exhibit A.

**MEMORANDUM**

**A.    The Law**

The issue here concerns Rule 26(a)(2)(C) and, specifically, whether/when a consulting

doctor may be deemed a non-retained expert witness, i.e., one who may provide only a summary

of opinions rather than a full report.  The rule requires a report if: (1) the expert is "retained or

specially employed to provide expert testimony" or (2) the expert is "one whose duties as the

party's employee regularly involve giving expert testimony."[2]

Courts have addressed the issue of when an expert who is a former employee or a treating

physician may testify without furnishing a report: "The distinguishing characteristic between

expert opinions that require a report and those that do not is <u>whether the opinion is based on</u>

<u>information the expert witness acquired through percipient observations or whether, as in the</u>

<u>case of retained experts, the opinion is based on information provided by others</u> in a manner

other than by being a percipient witness to the events in issue."[3]  Accordingly, "a former

employee may be a non-retained expert for the purposes of Rule 26(a)(2) <u>if he is a percipient</u>

<u>witness and is testifying based upon his personal knowledge of the facts or data at issue</u> in the

litigation."[4] The difference between retained and non-retained experts is that "<u>non-</u>

<u>retained experts gain their information through percipient observations, while</u>

<u>retained experts gain their information in any other manner</u>."[5]  Hired consultants for clinical and

non-clinical studies are akin to former employees, and therefore, only percipient observations are

satisfied by a Rule 26(a)(2)(C) disclosure.

---

[2] Fed. R. Civ. P. 26(a)(2)(B).
[3] *In re Application of Republic of Ecuador*, 280 F.R.D. 506, 511 (N.D. Cal. 2012) (emphasis added).
[4] *Guarantee Tr. Life Ins. Co. v. Am. Med. & Life Ins. Co.*, 291 F.R.D. 234, 237 (N.D. Ill. 2013) (emphasis added).
[5] *Id.* (citing *United States v. Sierra Pac. Indus.* 2011 WL 2119078 at *4 (E.D. Cal. May 26, 2011).

In *Downey v. Bob's Disc. Furniture Holdings*, 633 F.3d 1 (1st Cir. 2011), the court

permitted a summary disclosure because the expert opinion arose not from "enlistment as an

expert" but from the witness's "ground-level involvement in the events giving rise to the

litigation."[6]   On the other hand, said the *Downey* court, if the expert "draws the opinion from

facts supplied by others, in preparation for trial, he reasonably can be viewed as retained or

specially employed for that purpose, within the purview of Rule 26(a)(2)(B)," and must therefore

submit an expert report.[7]   The Seventh Circuit has cited *Downey* favorably,[8] and this Court has

relied on *Downey* with respect to a non-retained expert treating physician:

> Whether an expert must provide a complete report under 26(a)(2)(B) or a less
> extensive summary under 26(a)(2)(C) depends on the expert's relationship to the
> issues involved in the litigation. Treating physicians, for example, often have
> firsthand knowledge of the events giving rise to the litigation and typically are not
> "retained or specially employed to provide testimony." In such cases, the treating
> physician need only provide a 26(a)(2)(C) summary disclosure. If the treating
> physician testifies beyond the scope of his observations, however, he is treated as a
> retained expert.**[9]**

This Court recognized in *Malibu Media* that "[n]umerous district courts have accepted this

[*Downey*] analysis of the distinction between Rule 26(a)(2)(B) and Rule 26(a)(2)(C) expert

witnesses" and concluded: "This Court likewise finds the First Circuit's [*Downey*] analysis

persuasive and accordingly will consider whether [the expert's] opinion arises 'from his ground-

level involvement in the events giving rise to the litigation.'"[10]   The expert in *Malibu Media* was

---

[6] *Id.* at 6.

[7] *Id.* at 7.

[8] *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 371 (7th Cir. 2017) (quoting *Downey*'s "ground-level involvement" test for determining whether a report is required).

[9] *Martin v. Stoops Buick*, 2016 WL 4088132 at *1 (S.D. Ind. 2016) (citing *Malibu Media, LLC v. Harrison*, 2014 WL 6474065 at *2 (S. D. Ind. 2014) (citing *Downey*, 633 F.3d at 6) (Dinsmore, M.J.); 2014 WL 7005288 (S.D. Ind. 2014) (adopting R&R) (Lawrence, D.J.)).

[10] *Malibu Media*, 2014 WL 6474065 at *2 (Dinsmore, M.J.); 2014 WL 7005288 (S.D. Ind. 2014) (adopting R&R) (Lawrence, D.J.).

excluded altogether.[11]  Failure to comply with the requirement for a report may "result[] in the exclusion of improperly disclosed witnesses…."[12]

As demonstrated below, much of the basis for Dr. Kaufman's disclosed opinions concern events with which he had no "ground-level involvement" while consulting for Cook. Accordingly, that testimony should be excluded based on his failure to provide a report.[13]

**B.     The Facts**

B1.     Dr. Kaufman's Work History

Dr. Kaufman is the current Director of the Dotter Interventional Institute (the "Dotter Institute"), a division of the Oregon Health and Science University School of Medicine ("OHSU").[14]  Cook disclosed that Dr. Kaufman will testify in an upcoming deposition and that all of his opinions in this trial are based on "his educational background, training, and relevant work experience at the Dotter Institute and OHSU."[15] Despite having no deposition in this case, Dr. Kaufman was previously deposed in this litigation, and his testimony illustrates which of his opinions disclosed by Cook are based upon "percipient observations" and "ground-level involvement" in the issues that will be relevant at trial.[16]

B2.     Dr. Kaufman's Disclosure

Cook provided a summary disclosure, of which, the following excerpts from his opinions (verbatim) should be excluded because those opinions required a Rule 26(a)(2)(B) report:

2.  The safety and retrievability of IVC filters.  Dr. Kaufman … will testify, based on his personal experiences in both studies and actual patients, that IVC filters are safe devices that are retrievable for an extended period after implantation without adverse impact to patients.  ….

---

[11] *Id.* at *4-5.

[12] *Martin*, 2016 WL 408813 at *3.

[13] *See* Exh. A. A similar situation occurred in *Malibu Media* and was part of the Court's reasoning in striking the expert altogether. *Malibu Media*, 2014 WL 6474065 at *5.

[14] Exh. A at 19.

[15] *Id.*

[16] Deposition of John A. Kaufman, MD is attached as Exhibit B.

3.   … Dr. Kaufman will testify that the use of sheep to test vascular medical devices is well accepted in the field and that sheep provide accurate and predictable results for how medical devices will perform in the human IVC.

4.   … Dr. Kaufman will testify that, in his experience, Cook filters are at least as safe as, if not safer than, competitor filters.  Further, Cook filters are at least as safe as the Greenfield filter.

6.   … Dr. Kaufman will testify that, in his experience, tilt, migration, and even penetration without clinical sequelae are not adverse events, are not of particular concern, and do not generally impact patient safety.

7.   …. Dr. Kaufman will testify … off-label use of IVC filters was common in medicine, was at the sole discretion of each patient's physician, and was appropriate, as the physician had determined the benefits outweighed the risks.[17]

B3.   Dr. Kaufman's Opinion #2: The safety and retrievability of IVC filters.  Dr. Kaufman … will testify, based on his personal experiences in both studies and actual patients, that IVC filters are safe devices that are retrievable for an extended period after implantation without adverse impact to patients.  ….

At Dr. Kaufman's deposition, counsel inquired into testing on the retrievability of Cook filters.[18]  While Dr. Kaufman relied upon data from testing studies done on IVC filters in formulating his opinions, Dr. Kaufman testified he actually participated in: (1) the initial retrieval trial in 2002-2003[19]; (2) he had fifteen patients in the CIVC post market registry study[20]; and (3) he also had two to three patients in the PRESERVE trial[21].  Despite his participation in some trials and registry studies, Dr. Kaufman testified, "I mean, I have not done any formal testing of Cook …"[22]

---

[17] Exh. A at 18-19.
[18] Exh. B, Kaufman Dep. at 77:3-79:10; 122:22-123:10; 170:19-171:21; 173:18-174:18 & 203:2-205:16.
[19] Exh. B, Kaufman Dep. at 23:11-19.
[20] Exh. B, Kaufman Dep. at 40:20-42:20.
[21] Exh. B, Kaufman Dep. at 44:23-46:9.
[22] Exh. B, Kaufman Dep. at 43:3-4.

On the PREPIC 1 and 2 studies, Dr. Kaufman cannot opine that the benefits of filtration of permanent filters translates to retrievable filters absent a report.[23] Likewise, Dr. Kaufman lacks the requisite involvement to opine that Cook Celect® ("Celect") filters perforate more than Günther Tulip® ("Tulip") filters.[24] The lack of participation in randomized controlled trials prevents him from discussing, and specifically making generalized opinions, regarding the efficacy and safety of retrievable filters without a report.[25] Finally, his general knowledge and experience in his practice does not meet the standard of the rule for him to opine that filters do not cause clots by themselves.[26]

Simply put, Dr. Kaufman had no direct involvement in the safety of the Celect and should not be permitted to testify on this aspect of his disclosed opinions. His reliance on the PREPIC 1 and 2 permanent filter studies to opine on the safety and efficacy regarding filtration of retrievable IVC filters, including Celect, is not based on "ground-level involvement" and is not even applicable to the Celect.[27] Further, his opinion on why Celect perforates more than the Tulip is not based on "percipient observations;" it is solely his opinion and not based on any testing.[28] In fact, any opinion regarding the efficacy and safety of Cook filters is not based on any randomized controlled trials.[29] The basis for his opinion that caval thrombosis is not from filters causing clots only comes from his stated general knowledge and practice experience.[30]

---

[23] Exh. B, Kaufman Dep. at 77:3-79:10.
[24] Exh. B, Kaufman Dep. at 122:22-123:10.
[25] Exh. B, Kaufman Dep. at 170:19-171:21 & 203:2-205:16.
[26] Exh. B, Kaufman Dep. at 173:18-175:18.
[27] Exh. B, Kaufman Dep. at 77:3-79:10 & 203:2-205:16.
[28] Exh. B., Kaufman Dep. at 122:22-123:10.
[29] Exh. B, Kaufman Dep. at 170:19-171:21.
[30] Exh. B, Kaufman Dep. at 173:18-175:18

Ultimately, his limited involvement in retrievability studies does not support his intent to testify broadly that the Celect or any filter are safe devices that are retrievable for an extended period after implantation without adverse medical impact to patients.

B4.   <u>Dr. Kaufman's Opinion #3</u>: … Dr. Kaufman will testify that the use of sheep to test vascular medical devices is well accepted in the field and that sheep provide accurate and predictable results for how medical devices will perform in the human IVC.

Dr. Kaufman's personal involvement in Cook animal studies was "very, very limited[;]" he only participated in a study on combining a stent with a filter to extend the retrievability window for the Tulip.[31]  The study did not go anywhere, "[w]e were able to detach the filters from his stent, and there was nothing further – that concept never went any further."[32]  He did not participate in the Zargosa study regarding coated filters; he only was aware of the studies in publications.[33]  In fact, in the "perhaps a dozen" animal studies he has participated in during his career, eight or nine of the studies involved permanent filters with only very, very limited experience in Cook studies.[34]  Despite this limited percipient information observed in Cook studies, Dr. Kaufman intends to testify that sheep are appropriate as models to test filters.[35]  He cannot make this opinion absent a report, and therefore, this opinion should be excluded because Dr. Kaufman lacks sufficient "ground level involvement" in animal studies to give these opinions.

B5.   <u>Dr. Kaufman's Opinion #4</u>: … Dr. Kaufman will testify that, in his experience, Cook filters are at least as safe as, if not safer than, competitor filters.  Further, Cook filters are at least as safe as the Greenfield filter.

---

[31] Exh. B, Kaufman Dep. at 35:14-36:19;
[32] Exh. B, Kaufman Dep. at 36:13-19 & 120:14-121:6.
[33] Exh. B, Kaufman Dep. at 121:7-14.
[34] Exh. B, Kaufman Dep. at 259:18-261:12 & 35:20-23.
[35] Exh. B, Kaufman Dep. at 261:4-7.

Plaintiff does not dispute Dr. Kaufman's expertise in IVC filters; however, Dr. Kaufman lacks the required involvement to testify regarding the safety and efficacy of Cook filters, namely Celect, without a report.  His opinion that Cook filters are at least as safe as, if not safer than, competitor filters because Cook filters adverse events are the same as other IVC filters is patently inadmissibly without a report.[36] His opinion that there is a decrease in pulmonary embolism with the use of permanent filters is not based on his personal involvement in the studies and is not related to Cook retrievable filters, so this opinion is impermissible absent a report.[37]  Dr. Kaufman cannot rely on the PREPIC 1 and 2 studies to testify the data on the efficacy of filtration in permanent filters translates to retrievable filters because he did not have the requisite involvement in those studies.[38] The only portion of Dr. Kaufman's opinions that has the foundation to satisfy the summary disclosure requirement is the study he authored on the safety of the retrieval procedure for the Tulip; however, that study is irrelevant to this case and should be excluded.[39]

> B6.  <u>Dr. Kaufman's Opinion #6</u>: … Dr. Kaufman will testify that, in his experience, tilt, migration, and even penetration without clinical sequelae are not adverse events, are not of particular concern, and do not generally impact patient safety.

This portion of his opinions should be excluded in its entirety absent a report.  Dr. Kaufman's own pilot study had a patient whose device migrated into the right atrium, and Dr. Kaufman testified he considered this to be a serious event despite the patient being completely asymptomatic.[40] Despite this admission, he wants to opine that asymptomatic patients are not a concern and that only failures involving symptomatic patients are of clinical significance.[41]  This

---

[36] Exh. B, Kaufman Dep. at 148:12-149:10 & 308:13-309:19.
[37] Exh. B, Kaufman Dep. at 66:12-68:11.
[38] Exh. B, Kaufman Dep. at 77:3-79:10.
[39] Exh. B, Kaufman Dep. at 249:16-254:24.
[40] Exh. B, Kaufman Dep. at 82:5-83:19
[41] Exh. B, Kaufman Dep. at 305:20-308:12.

is based upon a panel review of Cook filters held in August of 2016 where the panel only reviewed data summaries of the filter performance.[42]  Dr. Kaufman lacks the requisite involvement to give these opinions without a report.

> B7.    Dr. Kaufman's Opinion #7: …. Dr. Kaufman will testify … off-label use of IVC filters was common in medicine, was at the sole discretion of each patient's physician, and was appropriate, as the physician had determined the benefits outweighed the risks.

Dr. Kaufman testified he taught physicians on off-label retrieval techniques and details those techniques; however, he did not present any testimony on the off-label use of IVC filters.[43] The basis for his opinion that off-label use of IVC filters is an ethical and conscionable decision for physicians is not expert testimony from percipient involvement in the development of filters; it is opinion testimony from a consulting doctor for Cook.[44] Further, this opinion is not "based on scientific, technical, or other specialized knowledge;" it is nothing more than an unsubstantiated gratuitous assertion to state that the physicians have determined that the benefit outweighs the risk when he knows nothing about the knowledge base of any specific prescriber regarding benefit or risk, and particularly Brand's treating physicians who have testified contrary to this opinion.[45]

## C.    Conclusion

For the reasons set forth above, Plaintiff seeks an Order that limits impermissible testimony from Dr. Kaufman which required a report compliant with Rule 26(a)(2)(B), which he did not submit.

---

[42] Exh. B, Kaufman Dep. at 27:6-21.
[43] Exh. B, Kaufman Dep. at 262:18-266:1; 345:23-347:24.
[44] Exh. B, Kaufman Dep. at 320:12-321:14.
[45] *Musser v. Gentiva Health Services,* 356 F.3d 751, 757 n. 2 (7th Cir.2004).

Respectfully submitted this 5th day of July, 2018.

*/s/ Joseph N. Williams*
Joseph N. Williams, Atty. No. 25874-49
RILEY WILLIAMS & PIATT, LLC
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317) 633-5270
Facsimile: (317) 426-3348
Email:  jwilliams@rwp-law.com
*Liaison Counsel to Plaintiffs' Steering Committee and on behalf of Plaintiffs' Steering Committee*

Michael W. Heaviside, Esq.
HEAVISIDE REED ZAIC, A LAW CORPORATION
910 17th Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 223-1993
mheaviside@hrzlaw.com

Ben C. Martin, Esq.
THE LAW OFFICES OF BEN C. MARTIN
3710 Rawlins Street, Suite 1230
Dallas, TX  75219
Telephone: (214) 761-6614
Facsimile: (214) 744-7590
bmartin@bencmartin.com

David P. Matthews, Esq.
MATTHEWS AND ASSOCIATES
2509 Sackett St.
Houston, TX  77098
Telephone: (713) 522-5250
Facsimile: (713) 535-7184
dmatthews@thematthewslawfirm.com

*Plaintiffs' Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

*/s/ Joseph N. Williams*
Joseph N. Williams