IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE: COOK MEDICAL, INC., IVC
FILTERS MARKETING, SALES
PRACTICES AND PRODUCT LIABILITY
LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL NO. 2570

This Document Relates:

Brand v. Cook Medical, Inc., et al
Case No. 1:14-cv-6018-RLY-TAB

**PLAINTIFF TONYA BRAND'S RESPONSE TO COOK DEFENDANTS'
MOTION TO STRIKE SPECIFIC REBUTTAL OPINIONS**

COMES NOW Tonya Brand, Plaintiff in the above-styled action, by and through the
undersigned counsel, and files her Response to the Cook Defendants' Motion to Strike Specific
Rebuttal Opinions (Doc. 8461), and states as follows:

Cook's motion should be denied because each of Plaintiff Tonya Brand's rebuttal expert
reports constitutes proper rebuttal opinion and was timely served.  As explained more fully
below, Cook has misstated the "background" facts and appears to be counting on the Court to
condone the practice of a lawyer who asks her opposing counsel questions about when he might
file something in the future and then takes advantage of the lawyer being nice enough to provide
her with his best guess. There was no agreement to limit the filing of any report, and Plaintiff has
fully complied with the Federal Rules in serving her rebuttal expert reports.

**BACKGROUND**

Plaintiff timely served four rebuttal expert reports by June 18, 2018, the agreed deadline
for rebuttal expert reports.  *Def. Exhibit A [emails of 6/9/18-6/11/18 between B. Martin and A.*

*Pearson]*. In advance of serving Plaintiff with all of Cook's expert reports, Cook's counsel repeatedly asked Plaintiff's counsel whether there would be rebuttal expert reports on various topics.  Without entering into a formal agreement, Plaintiff's counsel did his best to provide answers to these questions, though no rule required him to do so.  Cook now seeks to turn these good faith attempts at cooperation by Plaintiff into binding agreements, despite the fact that Plaintiff's counsel was obviously not in a position to commit without having been served with the entirety of Cook's expert reports.

Specifically, on June 5, 2018, Plaintiff's counsel represented that he "did not expect that Dr. Gordon will be issuing a rebuttal report."  *Def. Exhibit D [email from B. Martin to A. Pearson]*. At that time, Plaintiff had not yet been served with Cook's engineering expert report because Cook had asked for (and Plaintiff had agreed to) an extension on that report. Cook served Dr. Robertson's engineering report on June 6, 2018, (by agreement) one week after the deadline.

On June 10, in response to additional questioning from Cook's counsel, Plaintiff's counsel responded that he anticipated having a rebuttal report from Dr. Krumholz and possibly in response to Cook's engineering expert report.  *Def. Exhibit A [emails of 6/9/18-6/11/18 between B. Martin and A. Pearson]*.  At the time, Plaintiff's counsel was still reading and digesting Dr. Robertson's recently served report.  Ultimately, two of Plaintiff's four rebuttal reports – those of Dr. Gordon and Dr. McMeeking – solely responded to the "engineering" report of Dr. Robertson. Although Plaintiff had not anticipated having Dr. Gordon issue a rebuttal report, this became necessary because Dr. Robertson's late-served "engineering" report opines on radiology issues, which is Dr. Gordon's field of expertise.  Because Dr. Gordon's deposition had been scheduled for June 12, Plaintiff served Dr. Gordon's rebuttal report on June 11, *one week prior to the*

*agreed deadline for rebuttal expert reports and only two business days after having been served with Dr. Robertson's report.*[1]

Cook also complains regarding the rebuttal report of psychiatrist Dr. Kan.  In the context of attempting to schedule the deposition of Dr. Leventhal, Cook's psychiatric expert, Cook asked whether there would be a rebuttal report on that topic in light of the dates being considered for Dr. Leventhal's deposition.  Cook's counsel explained that a rebuttal report on Mrs. Brand's "emotional condition/depression/anxiety" was "the only other thing that could throw off the Leventhal schedule." No other defense expert was mentioned in reference to this topic. Plaintiff's counsel responded in part to Cook's questioning: "A rebuttal report [i]f any is issued, will not affect the defense expert deponents scheduled on or before June 13th." Ultimately, this proved to be correct because Plaintiff's counsel decided not to depose Dr. Leventhal. Thus, any alleged prejudice of Cook's experts being unable to prepare for deposition or respond at deposition to Dr. Kan's opinions is without basis because Cook's expert on this topic was not and will not be deposed at all.

In summary, there was no surprise regarding the rebuttal report of Dr. Krumholz, which was disclosed in advance and anticipated by Cook's counsel.  Dr. McMeeking's rebuttal report was timely filed and responds to the late-served engineering report of Dr. Robertson.  Dr. Gordon's rebuttal report was served one week *early* and responds to the late-served, non-engineering opinions of Dr. Robertson contained in his "engineering" report. And there is no prejudice to Cook regarding Dr. Kan's rebuttal report because Plaintiff did not depose Cook's

---

[1] All of this was explained to Cook's counsel in an early morning email (12:03 AM) send on June 11:  "Andrea: Prior to receiving Dr. Robertson's engineering report I told you Dr. Gordon would not be preparing a rebuttal report. The Robertson report, however, contains opinions on imaging; therefore we will have Dr. Gordon provide a short rebuttal report on imaging rebutting the Robertson report.  We will get you that report by today/tomorrow June 11 so you can have it for his deposition even though it is not due until the 18th."  Def. Exhibit H.

psychiatric expert at all.  For these reasons and as further explained below, Cook's motion should be denied.

## ARGUMENT

### A.  Dr. Kan

Dr. Kan's psychiatric expert rebuttal report responds to the conclusions of Cook's psychiatric expert Dr. Leventhal and thus constitutes proper rebuttal testimony.  *Bowman v. Int'l Bus. Mach. Corp*., No. 1:11-cv-0593,  2013 WL 1857192, at *8 (S.D. Ind. May 2, 2013) (holding that "Magistrate Judge should have left the remaining parts that fairly respond to the opposing party's experts") (citing *Cage v. City of Chicago*, No. 09-C-3078, 2012 WL 5557410 (N.D. Ill. Nov. 14, 2012)) .  Plaintiff agrees with Cook that the "'proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party.'"  Def. Motion at 5 (citing *Bowman*, 2013 WL 1857192, at *7).

Dr. Kan's report contradicts, impeaches or defuses Dr. Leventhal's report as follows: After review of the same medical records and deposition testimony as Dr. Leventhal,

- Dr. Kan concludes that given her course of treatment, Tonya Brand's fears related to the failure of her Celect IVC filter are reasonable, justified, serious and significant; in contrast, Dr. Leventhal found that Mrs. Brand "repeatedly engages in excessive heathcare-seeking behaviors"; that she "appears to meet the criteria for several psychiatric disorders … that appeared long before the placement of the vena cava filter"; and there is a "rich record suggesting a sharply contrasting situation" with respect to her "fears  that the remaining filter parts will migrate and cause damage if she moves or exerts herself."  *Def. Exhibit B, Report of Dr. Kan, at 2-3; Def. Exhibit C, Report of Dr. Leventhal, at 13, 17 & 19.*

- Dr. Kan concludes that Mrs. Brand has been compliant with her physicians in their treatment of her back pain, whereas Dr. Leventhal questions Mrs. Brand for allegedly "repeatedly engag[ing] in excessive heathcare-seeking behaviors," including going "to the emergency room for 'moderate' back pain lasting two weeks even though she was already receiving treatment for this symptom" by her physicians.  *Def. Exhibit B, Report of Dr. Kan, at 3; Def. Exhibit C, Report of Dr. Leventhal, at 13.*

- Dr. Kan, who is Board-certified in Psychiatry and Addiction Medicine and is the current President of the California Society of Addiction Medicine, found that there is insufficient evidence to conclude that Mrs. Brand has abused or misused her pain medicine or to diagnose her with any addiction to any prescription medication; whereas Dr. Leventhal offers the opinion that Mrs. Brand's differential includes Substance-Related and Addictive Disorders. *Def. Exhibit B, Report of Dr. Kan, at 3; Def. Exhibit C, Report of Dr. Leventhal, at 10, 15-16.*

- Dr. Kan directly criticizes Dr. Leventhal for failing to make any diagnosis of Ms. Brand within reasonable medical probability. *Def. Exhibit B, Report of Dr. Kan, at 3.*

- Dr. Kan concludes that Mrs. Brand's psychiatric symptoms associated with 9 specific disorders alleged to exist have been aggravated by the failure of her filter; in contrast, Dr. Leventhal found that Mrs. Brand "repeatedly engages in excessive heathcare-seeking behaviors"; that she "appears to meet the criteria for several psychiatric disorders … that appeared long before the placement of the vena cava filter"; and there is a "rich record suggesting a sharply contrasting situation" with respect to her "fears that the remaining filter parts will migrate and cause damage if she moves or exerts herself." *Def. Exhibit B, Report of Dr. Kan, at 3; Def. Exhibit C, Report of Dr. Leventhal, at 13, 17 & 19.*

Cook's reliance on *Bowman* is misplaced because in that case, the experts' rebuttal reports substantively changed methodologies in an attempt to account for noted deficiencies, a circumstance not at issue here.[2]  In contrast, Dr. Kan's report, consistent with the Federal Rules,

---

[2] At least one court has distinguished *Bowman* on this basis, describing *Bowman* as

> a class action case in which the plaintiffs served the defendants with two expert reports discussing the viability of using "electronic databases" to identify potential class members and to quantify economic damages resulting from the termination of Medicaid benefits. *Id*. at *1.  After the defendants served its expert reports highlighting flaws in the plaintiff's expert's analysis and methodology, the plaintiff's belatedly served the defendants with its expert's "reply reports" over a month after class expert discovery had closed.  *Id*. The "reply reports" responded to the defendant's expert's reports by introducing an entirely new methodology for identifying class members, discussing the use of a software program never before mentioned in earlier reports, and revealing a new measure of damages. *Id*. at 6. In affirming the magistrate judge's decision to strike the reply reports as improper rebuttal, the district court found that the reports "contained new analyses and arguments," noting that "[a] rebuttal report is not the time to change methodologies to account for noted deficiencies; instead it is to respond to criticisms of methodologies." *Id*. at 7.

*Haskins v. First Am. Title Ins. Co.*, No. 10-5044, 2013 WL 5410531, at *5 (D. N.J. Sept. 26, 2013).

"is intended solely to contradict or rebut evidence on the same subject matter" contained in the report of Cook's expert Dr. Leventhal.  FED. R. CIV. P. 26(a)(2)(D)(ii).

Cook makes misleading arguments regarding the basis for Dr. Kan's opinions. For example, Cook asserts that Dr. Kan did not offer a rationale for his opinion that Mrs. Brand's fears related to her failed Celect filter are serious and significant.  However, Dr. Kan explained that "Mrs. Brand suffers reasonable, significant and justified fears and anxiety as a direct consequence of having pulled a piece of fractured Cook Celect IVC filter from her body; an unsuccessful closed retrieval of the fractured Cook Celect IVC Filter; a partially successful open retrieval of the fractured Cook Celect IVC Filter; and the fact that portions of the fractured Cook Celect IVC Filter remain in her body to this day."  *Def. Exhibit B, Report of Dr. Kan, at 3.*

Cook argues that Plaintiff was under an obligation to produce a psychiatric expert report in her case in chief if she wanted to call such an expert at trial.  However, Plaintiff is not required to offer expert psychiatric testimony to support her case in chief with regard to mental anguish and emotional distress.

Contrary to Cook's assertions, Plaintiff did not know that Cook was going to produce a psychiatric expert report, or what opinions that expert would offer, until Plaintiff was served with Dr. Leventhal's report.  Cook argues that Plaintiff should have been tipped off by Cook's request for a psychiatric IME.  Though Cook initially requested a psychological examination it did not seek a court order requesting any such examination and none was ever scheduled. *See correspondence from the Cook Defendants dated January 23, 2018 and May 7, 2018, attached hereto as Plaintiff's Exhibit. A.*  Cook ultimately abandoned this request and Mrs. Brand in fact did not have a psychiatric IME.  The Federal Rules do not require Plaintiffs' counsel to read

defense counsel's minds as to which types of experts they will call, and include the same batch of experts in their case-in-chief reports.

Cook complains that Dr. Kan's rebuttal report prevented it from adequately preparing its experts for deposition; however, Plaintiff chose not to depose Cook's psychiatrist so there is no prejudice. Cook has not identified any expert who required Dr. Kan's deposition before being deposed. Cook never asked for Dr. Kan's deposition. If Cook wanted to depose Dr. Kan before certain experts were deposed, it could have made this request to Plaintiff's counsel, but did not do so. In short, Cook's complaints about Dr. Kan are unfounded because neither party chose to take the deposition of either side's expert on this subject. The harm Cook claims appears to have been conjured up for the sole purpose of creating a basis to oppose a perfectly timely filed rebuttal report.

In summary, Tonya Brand will be prejudiced by not being able to rebut Cook's psychiatrist. Plaintiff has no intention of calling Dr. Kan to testify unless Cook calls its psychiatrist Dr. Leventhal. This demonstrates that Dr. Kan truly is a rebuttal expert and should be permitted to testify as such.

**B. Dr. Krumholz**

Dr. Harlan Krumholz, an expert in epidemiology, the role of the FDA in the subject matter of this litigation, medical research, issues related to Cook's actions regarding the safety signals being raised as to the Celect, and the safety and efficacy of medical devices and IVC filters including the Cook Celect, wrote a rebuttal report to the opinions of several experts of defendants, including Dr. Christy Foreman, Cook's FDA expert. Dr. Krumholz's report was timely served on June 18, and Cook does not claim surprise with respect to this report.

As with Drs. Kan and Gordon, Cook complains that Dr. Krumholz's rebuttal report is not truly rebuttal in nature.  Ironically, in the first full paragraph on page 10 of its motion, Cook complains that Dr. Krumholz references opinions already given in his initial report, and then complains in the same paragraph that he cites to a new reference. This demonstrates that there is no way to please Cook. Referencing the prior report is unacceptable and referring to new sources is unacceptable. Under Cook's standard, there can be no rebuttal reports.

Cook challenges only one opinion in Dr. Krumholz's report: namely, his rebuttal to Ms. Foreman's opinions regarding mislabeling and misbranding.     It is not suggested by Cook that the mislabeling and misbranding subject of the Krumholz rebuttal report was addressed in his original report.  It claims just the opposite—that it is responsive to the Foreman defense report.

The Federal Rules essentially define a rebuttal expert as one who presents "evidence intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)…". Dr. Foreman was offered by the defense as a retained expert under Rule 26(a)(2)(B) and Dr. Krumholz, though also a retained expert under the same rule, is offering contradictory evidence as to the Foreman opinions raised by her as to mislabeling and misbranding.  The section of the Krumholz rebuttal report  begins, "With respect to the suggestion that the labeling for the Celect is adequate I would first point to…" Dr. Krumholz then gives his opinions contradicting some of those mislabeling and misbranding opinions offered by defense FDA expert Foreman.

All of Dr. Krumholz' rebuttal opinions take their footing in the misbranding and mislabeling provisions of  21 U.S.C subs. 352 (a) False or Misleading Label and the Device Labeling Guidance Memo #G91-1 (the Blue Book Memo). They all deal with the instructions for use for the Celect and their inadequacy, falsity or lack of warnings related to the OUS study

results, misstatements about retrieval, the relative safety of its predicate, lack of proven efficacy, and the extent and progression of perforations, and fracture. They are all rebuttal in nature.

Cook also adds that it is confused about what to do about the rebuttal report on these topics and that it has been prejudiced by this opinion because Ms. Foreman could not respond to it in her written report; but of course she can respond to it at her deposition, which will be taken on July 17, 2018, over four weeks after Dr. Krumholz's rebuttal report was served.

### C. Dr. Gordon

As explained in the Background section above, Dr. Gordon's report was served one week early and is a response to medical opinions provided by Cook's engineering expert in his late-served report. Dr. Gordon would not have even considered serving a rebuttal report if Dr. Robertson, *an engineer*, had not included opinions on radiological imaging, when that subject is *not engineering* and Dr. Robertson is *not a radiologist*. Medical opinions of engineer Robertson that Dr. Gordon addressed in his rebuttal report include:

- Dr. Robertson interpreted imaging to offer the opinion that Ms. Brand's filter was placed inappropriately against a bone spur. *Def. Exhibit G, Gordon Rebuttal Report, at 1*. Dr. Robertson is not a radiologist or a doctor. Dr. Gordon reviewed and attached imaging of Tonya Brand to rebut Dr. Robertson's opinion.

- Dr. Robertson again interpreted imaging to offer the opinion that Ms. Brand's filter was placed inappropriately in the suprarenal rather than infrarenal position. *Def. Exhibit G, Gordon Rebuttal Report, at 4*. Dr. Gordon reviewed and attached imaging of Tonya Brand to rebut Dr. Robertson's opinion.

- Dr. Robertson interpreted medical imaging to offer the opinion that on 4/17/09 and 5/2/09 Mrs. Brand's Celect filter had reached its fully expanded configuration. *Def. Exhibit G, Gordon Rebuttal Report, at 6*. Dr. Gordon reviewed and attached imaging of Tonya Brand to rebut Dr. Robertson's opinion.

- Dr. Robertson offered an opinion based on the alleged fact that the P3 leg got caught in the right renal vein. Dr. Gorgon countered that there is no evidence based on imaging that this occurred. *Def. Exhibit G, Gordon Rebuttal Report, at 7.*

- Dr. Robertson again interpreted imaging to offer the opinion that Mrs. Brand's P1 fragment has not moved since 3/20/2010. *Def. Exhibit G, Gordon Rebuttal Report, at 9.* Dr. Gordon reviewed and attached imaging of Tonya Brand to rebut Dr. Robertson's opinion.

When Plaintiff's counsel initially represented that Dr. Gordon would not provide a rebuttal report, he did not know that Cook's engineering expert would be offering medical opinions and/or opinions based on an interpretation of radiological imaging. Those opinions will be the subject of a future *Daubert* motion, but in the meantime Plaintiff had her radiologist rebut these newly disclosed medical opinions four days (two business days) after receiving Dr. Robertson's report. If Cook had not asked for an extension on their engineering expert's report, and/or if Cook had not inserted medical opinions into its engineer's report, the Court would not have to address this issue. To the extent the timing of Dr. Gordon's report created a dilemma for Cook, it is a dilemma of Cook's own making. To the extent the Court is inclined to allow Cook to reopen Dr. Gordon's deposition, which Plaintiff opposes, this should not be at Plaintiff's expense nor should it be in Indianapolis, given Cook's role in creating the scheduling issue.

Cook seeks to strike only one opinion of Dr. Gordon: that the Tulip filter, if used in Mrs. Brand, would not have fractured.  Cook's Tulip filter was identified by Dr. Gordon in his original, case-in-chief expert report as a safer alternative design.  *Def. Exhibit L, Gordon Report, at 2, 12, 44.*  In fact, Dr. Gordon discussed in his original report the superiority of the Tulip as compared to the Celect in terms of the risk of perforation and of resulting tilt, fracture and migration, *id.* at 2, 13, 15, and he identified the Tulip as a safer alternative design specifically for Tonya Brand.  *Id.* at 44.  He discussed the fact that the removal of the Tulip's perforation limiters resulted in multiple additional long term risks and complications.  *Id.* at 2.  In response, Dr.

Robertson offered the opinion that the Tulip might not have changed the outcome for Tonya

Brand (i.e., it might not have been safer for her), and Dr. Gordon offered a rebuttal opinion based

on his review of the radiological imaging. *Def. Exhibit G, Gordon Rebuttal Report, at 12*. That

Plaintiff contends that the Tulip is a safer alternative design, both for Tonya Brand and generally,

was disclosed in Plaintiff's case-in-chief expert reports.   Contrary to Cook's allegations, this is

not "an entirely new opinion" and there is no surprise. Dr. Gordon's report is proper rebuttal in

direct response to Cook's engineering report.

WHEREFORE, the Plaintiff, Tonya Brand, respectfully requests the Court deny the Cook

Defendants' Motion to Strike Specific Rebuttal Opinions (Doc No. 8461) in its entirety.

Dated: July 11, 2018                                    Respectfully submitted


                                                        */s/ Joseph N. Williams*
                                                        Joseph N. Williams, Atty. No. 25874-49
                                                        RILEY WILLIAMS & PIATT, LLC
                                                        301 Massachusetts Avenue
                                                        Indianapolis, IN 46204
                                                        Telephone: (317) 633-5270
                                                        Facsimile: (317) 426-3348
                                                        Email:  jwilliams@rwp-law.com

                                                        *Liaison Counsel to Plaintiffs' Steering
                                                        Committee and on behalf of Plaintiffs'
                                                        Steering Committee*

                                                        Ben C. Martin, Esq.
                                                        THE LAW OFFICES OF BEN C.
                                                        MARTIN
                                                        3710 Rawlins Street, Suite 1230
                                                        Dallas, TX  75219
                                                        Telephone: (214) 761-6614
                                                        Facsimile: (214) 744-7590
                                                        bmartin@bencmartin.com

David P. Matthews, Esq.
MATTHEWS AND ASSOCIATES
2509 Sackett St.
Houston, TX  77098
Telephone: (713) 522-5250
Facsimile: (713) 535-7184
dmatthews@thematthewslawfirm.com


Michael W. Heaviside, Esq.
HEAVISIDE REED ZAIC, A LAW
CORPORATION
910 17th Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 223-1993
mheaviside@hrzlaw.com

*Plaintiffs' Co-Lead Counsel*


## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.


*/s/ Ben C. Martin*
Ben C. Martin