IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE: COOK MEDICAL, INC., IVC
FILTERS MARKETING, SALES
PRACTICES AND PRODUCT LIABILITY
LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL NO. 2570

This Document Relates:

*Brand v. Cook Medical, Inc., et al*
Case No. 1:14-cv-6018-RLY-TAB

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO EXCLUDE IMPERMISSIBLE EXPERT TESTIMONY OF MARK RHEUDASIL, MD

COMES NOW Tonya Brand ("Brand"), Plaintiff in the above-styled action, by and through undersigned counsel, and hereby respectfully requests that this Court Exclude Impermissible Expert Testimony of Mark Rheudasil, MD, and states as follows:

1. Cook disclosed Dr. Rheudasil, one of Brand's treating physicians, as a non-retained expert, but Cook did not provide an expert report to support any of his testimony not directly related to her treatment as his patient.[1]

2. As discussed in the incorporated memorandum, most of the summarized opinions Cook designated from Dr. Rheudasil's deposition testimony concern matters unrelated to his treatment of Brand.[2]

---

[1] Cook Defendants' Amended Rule 26(a)(2)(B) and 26(a)(2)(C) Expert Disclosures attached as Exhibit A
[2] Deposition of Mark Rheudasil, MD attached as Exhibit B; Cook Defendants' Affirmative Deposition Designations attached as Exhibit C.

1

3. Federal law, including decisional law from this Court, requires a report when a treating physician testifies about opinions that were not formed during the course of their treatment of the patient.

4. Plaintiff does not object to Cook calling Dr. Rheudasil as a fact witness in its case but does object to any expert testimony not limited to his observations during her treatment.

**MEMORANDUM**

**A.    The Law**

The issue here concerns Rule 26(a)(2) and, specifically, which of Dr. Rheudasil's opinions disclosed by Cook may be deemed opinions by a non-retained expert witness, i.e., one who may provide only a summary of opinions pursuant to Rule 26(a)(2)(C).  Rule 26(a)(2)(C) defines an expert witness as "one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony."[3] The expert report serves the purpose of putting the opposing party on notice of the expert's proposed testimony so the opposing party may form an appropriate response.[4] All other experts that are not retained or specially employed must provide a summary disclosure in accordance with Rule 26(a)(2)(C).[5]

The difference between retained and non-retained experts is that "non-retained experts gain their information through percipient observations, while retained experts gain their information in any other manner."[6]  A treating physician is the primary example of a non-retained expert because they testify about opinions formed during the course of their treatment of the patient.[7]

---

[3] Fed. R. Civ. P. 26(a)(2)(B); see also *Meyers v. National R.R. Passenger Corp.,* 619 F.3d 729, 734 (7th Cir.2010); *Musser v. Gentiva Health Services,* 356 F.3d 751, 757 (7th Cir.2004).
[4] *Meyers,* 619 F.3d at 734; *Musser,* 356 F.3d at 757–58.
[5] Fed. R. Civ. P. 26(a)(2)(C).
[6] *Guarantee Tr. Life Ins. Co. v. Am. Med. & Life Ins. Co.*, 291 F.R.D. 234, 237 (N.D. Ill. 2013) (emphasis added).
[7] *Meyers,* 619 F.3d at 734–35.

This is because such opinions are based on scientific, technical, or other specialized knowledge.[8] Courts applying the rule agree that not every treating physician is required to provide an expert report pursuant to Rule 26(a)(2)(B).[9] The court in *Meyers v. National R.R. Passenger Corp.*, 619 F.3d at 734-35—controlling law on this issue in the Seventh Circuit—wrote:

> [A] treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, *but who did not make that determination in the course of providing treatment,* should be deemed to be one "retained or specially employed to provide expert testimony in the case," and thus is required to submit an expert report in accordance with Rule 26(a)(2).[10]

In, *Martin v. Stoops Buick*, 2016 WL 4088132 (S.D. Ind. 2016), this Court addressed the adequacy of the disclosure of treating physicians and relied upon *Meyers*, and other decisional authority, in deciding that the doctors' treatment was subject to a Rule 26(a)(2)(C) disclosure but the additional information the plaintiff disclosed required a report pursuant to Rule 26(a)(2)(B), holding as follows:

> Whether an expert must provide a complete report under 26(a)(2)(B) or a less extensive summary under 26(a)(2)(C) depends on the expert's relationship to the issues involved in the litigation. <u>Treating physicians, for example, often have firsthand knowledge of the events giving rise to the litigation and typically are not "retained or specially employed to provide testimony." In such cases, the treating physician need only provide a 26(a)(2)(C) summary disclosure. If the treating physician testifies beyond the scope of his observations, however, he is treated as a retained expert.</u>[11]

---

[8] *Musser,* 356 F.3d at 751, 757 n. 2.
[9] *Musser,* 356 F.3d at 758, n. 3 ("[A]n individual who serves in the capacity of 'treating physician' (or any analogous position) may … be required to submit a report under Rule 26(a)(2)(B)."); *Kondragunta v. Ace Doran Hauling and Rigging Co.*, 2012 WL 1189493 (NDGa 2013) (Carnes, J.E.) ("[I]f a physician's opinion regarding causation or any other matter was formed and based on observations made during the course of treatment then the Subsection C report will be required. If, however, the physician's opinion was based on facts gathered outside the course of treatment, or if the physician's testimony will involve the use of hypotheticals, then a full Subsection B report will be required." (citations omitted)).
[10] *Id.*
[11] *Id* at *1 & 4 (citing *Malibu Media, LLC v. Harrison*, 2014 WL 6474065 at *2 (S. D. Ind. 2014) (citing *Downey v. Bob's Disc. Furniture Holdings*, 633 F.3d 1, 6-7 (1st Cir. 2011) (Dinsmore, M.J.); 2014 WL 7005288 (S.D. Ind. 2014) (adopting R&R) (Lawrence, D.J.) (emphasis added); (citing *Guarantee* 291 F.R.D. at 237).

In *Coleman v. Am. Family Mut. Ins. Co.*, 274 F.R.D. 641 (N.D. Ind. 2011), the court reconciles *Meyers* with the 2010 Rule 26 amendments to clarify the distinction between an expert retained to testify and one who will testify for reasons independent of trial preparation, finding that the treating physicians only have to file a summary report pursuant to Rule 26(a)(2)(C) when giving a causation opinion formulated during treatment of the patient.[12] The court's holding in *Coleman* merely qualified *Meyers* following the 2010 Amendment in finding the opinions of treating physicians formed during the course of providing treatment to the plaintiff only required a summary disclosure in compliance with Rule(a)(2)(C).[13] In fact, the court in *Coleman* concedes "[p]hysicians who intend to offer testimony regarding causation of the plaintiff's injuries often go beyond the scope of treatment, requiring the physician to submit a complete expert report."[14] Accordingly, any opinions offered by a treating physician that are not formulated in the course of treatment require a compliant Rule 26(a)(2)(B) report.

Finally, and perhaps most persuasively, this issue came up in In re Zimmer Nexgen Knee Implant Prod. Liab. Litig., 2015 WL 3799534 (N.D. Ill. June 17, 2015).  In this MDL bellwether case, the court addressed the opinions of the plaintiff's treating surgeon who initially did the knee replacement that implanted the Zimmer NexGen LPS–Flex Gender Solutions Female knee implants in each knee.[15]  The doctor was deposed as a fact witness, but both sides solicited testimony on a wide range of topics beyond his treatment of the patient.[16]  Following the

---

[12] *Id.* at 644–46
[13] *Coleman* at 645 ("Because the amendment to Rule 26 attempts to clarify the distinction between an expert retained to testify and one who will testify for reasons independent of trial preparation, the court finds that the amendment overcomes the holding in *Meyers* as far as the physicians at hand are concerned because of the purpose for which they were first sought"); *Martin* at 2; *Meyers* at 734–35; *Meyers* at 734-35 (A physician who did reach his determination in the course of providing treatment is required to submit a report).
[14] *Coleman,* 274 F.R.D. at 644.
[15] *Id.* at *1.
[16] *Id.* at *2.

4

deposition, the defense hired an expert to criticize the technique of the plaintiff's surgeon.[17] The doctor then submitted a letter rebutting Zimmer's disclosed criticism, causing the defense to object to the nature and sufficiency of the doctor's disclosure and report.[18] The court found that any opinions that exceeded his treatment of the plaintiff required a report, excluded impermissible expert testimony, and held that any of his opinions regarding the subject knee implant and causation that were formed during the treatment of the patient were permissible with a summary disclosure compliant with the rule.[19]

Accordingly, all of the disclosed opinions that were solicited from Dr. Rheudasil that were not formed during his course of treating Brand must be excluded because Dr. Rheudasil has not been "retained or specially employed" by Cook to provide this testimony, and Dr. Rheudasil has not submitted a report.

**B.     The Facts**

   B1.     <u>Dr. Rheudasil's Permissible and Impermissible Testimony</u>

Dr. Rheudasil is the vascular surgeon in Atlanta, Georgia who prescribed, implanted and retrieved the subject Cook Celect® ("Celect") IVC filter that fractured inside Brand's vena cava.[20] Dr. Rheudasil is qualified to testify as a fact witness and non-retained expert for matters involving his first-hand knowledge of Brand's treatment and the failure of her filter.[21] Many of Cooks' various other disclosed opinions are based on facts gathered outside the course of Rheudasil's treatment of Brand.[22] According to *Meyers*, none of Rheudasil's testimony not based

---

[17] *Id.*
[18] *Id.* at *2-3.
[19] *Id.* at *3 & *4-5 (citing *Meyers* at 734-35).
[20] Exh. B, Rheudasil Dep. at 9:13-21 & 32:9-18.
[21] Exh. A at 4-7; see also *Martin* at *1 & *4 (citations omitted).
[22] *Id.*

during the course of his treatment of Brand is admissible because Cook did not provide a Rule 26(a)(2)(B) report for those opinions. [23]

> B2. Dr. Rheudasil's Inadmissible Opinions Based on Facts Gathered Outside the Course of Treatment

The impermissible testimony without a report fall into three categories: (1) Dr. Rheudasil's opinions regarding the safety and efficacy of IVC filters generally and Cook filters specifically; (2) Dr. Rheudasil's testimony regarding other patients and his experience with IVC filters; and (3) Dr. Rheudasil's testimony discussing the risks and benefits of IVC filters. Cook' summary disclosure of their designated opinions stated (verbatim) can be grouped as follows:

(1) *Safety and Efficacy*:

6. He has implanted hundreds of IVC filters over approximately 30 years, has used and is generally familiar with almost all filter brands and types, and believes that filters are safe and effective for patients.

9. IVC filters reduce the rate of pulmonary embolism ("PE") based on information in the medical literature and his experience using IVC filters for 30 years with his patients.

18. All IVC filters perforate to some extent, perforation is nearly always asymptomatic and not clinically significant, and he is concerned only with clinically significant filter outcomes.

22. The benefits to Mrs. Brand of using the IVC filter outweighed the risks.

27. Mrs. Brand's experience was a rare case in which a patient experienced a known complication that can occur with any IVC filter.

31. Out of hundreds and hundreds of filter patients, he has never seen a Celect filter fracture.

34. Nothing about Mrs. Brand's experience caused him to change his decision to use the Celect filter. [24]

---

[23] *Meyers* at 734-35.
[24] Exh. A at 4-7.

6

*(2) Unrelated Treatment and Use of IVC Filters*

7. The procedures he has co-performed with Dr. Morrison, … and the consultations, services, and assistance that he provides Dr. Morrison, including (but not limited to) vascular care, exposure and closure of surgical site.

11. His treatment of and care for patients who have a [Deep Vein Thrombosis ("DVT")] DVT or are at risk of DVT.

18. All IVC filters perforate to some extent, perforation is nearly always asymptomatic and not clinically significant, and he is concerned only with clinically significant filter outcomes.

19. He has used IVC filters made by numerous manufacturers, including Cook.

23. His discussion with patients about the risks of the IVC filters.

25. His discussion with patients about the removal of their IVC filters …

31. Out of hundreds and hundreds of filter patients, he has never seen a Celect filter fracture.

32. Filters made by other manufacturers have fractured.

33. He implanted the Celect IVC filter before and after Mrs. Brand's surgery and retains confidence in the filter. Nothing about Mrs. Brand's experience with the filter caused him to stop using the Celect for his subsequent patients.

42. All products and medical devices that he has used in his practice as a vascular surgeon, including IVC filters, have some risks and rate of complication.

43. All surgeries and other medical procedures have some risks and rates of complication. [25]

*(3) Risks and Benefits of IVC Filters*

10. DVT and PE pose serious and potentially fatal risks if untreated, and he has had a patient die from PE.

13. Certain factors increase a patient's risk of developing DVT and PE, including (but not limited to) age, obesity, previous DVT/PE, undergoing surgical procedures, use of certain medications, and abnormal vein conditions, among others.

---

[25] *Id.*

7

18. All IVC filters perforate to some extent, perforation is nearly always asymptomatic and not clinically significant, and he is concerned only with clinically significant filter outcomes.

22. The benefits to Mrs. Brand of using the IVC filter outweighed the risks.

23. Mrs. Brand's experience was a rare case in which a patient experienced a known complication that can occur with any IVC filter.

27. He implanted the Celect IVC filter before and after Mrs. Brand's surgery and retains confidence in the filter. Nothing about Mrs. Brand's experience with the filter caused him to stop using the Celect for his subsequent patients.

42. All products and medical devices that he has used in his practice as a vascular surgeon, including IVC filters, have some risks and rate of complication.

43. All surgeries and other medical procedures have some risks and rates of complication.[26]

B3.  Dr. Rheudasil's Opinions Regarding the Safety and Efficacy of IVC Filters

Dr. Rheudasil generally believes all filters are roughly equal in their capability to catch clots and in pulmonary embolus protection.[27] Dr. Rheudasil makes his decision regarding which filter to use based mostly on the ease of deployment, the simplicity in retrieving the filter, and ultimately by which filters are available to him at any given hospital.[28] He only mentioned the efficacy of filters being important after prompting because he considers all filters generally equal in clot trapping capability.[29] His opinions on the efficacy and safety of filters are based on his experience as a vascular surgeon and were not formed during his treatment of Brand.[30]

Rheudasil testified he had confidence in the safety and efficacy of Celect following Brand's filter fracture, but Brand's experience did make him "a little more enthusiastic about filter

---

[26] *Id*.
[27] Exh. B, Rheudasil Dep. at 25:20-26:9
[28] Exh. B, Rheudasil, Dep. at 24:22-25:19.
[29] Exh. B, Rheudasil, Dep. at 25:20-26:9 & 56:16-23.
[30] Exh. B, Rheudasil Dep. at 27:9-17.

8

retrieval."[31]  This is the only testimony about the efficacy and safety of Celect that was based on his observations while treating Brand.  Any other testimony regarding the safety and efficacy of Celect and filters generally is not permissible without a report.

To wit, Dr. Rheudasil's opinion that all filters perforate to some extent and what the clinical significance and/or insignificance of filter perforations and migrations are to a patient cannot be admitted absent a report.[32]  His opinions on the risk posed by the filter fragments retained in her body was not formed solely from his treatment and is impermissible opinion testimony.[33] Cook also cannot have him testify Brand's experience with Celect was a known complication for all filters and what she experienced was a rare occurrence.[34]  Finally, he cannot opine regarding the effectiveness of Celect in protecting from PE absent a report.[35]   None of these opinions were formed as a result of or during his treatment of Brand.

    B4.   Dr. Rheudasil's Opinions Regarding Other Patients and IVC/Cook Filters

Dr. Rheudasil's experience in vascular surgery and the use of filters in other patients qualifies him as a non-retained expert, but he cannot testify or give opinions about the use of filters in vascular surgery without a report.  None of Dr. Rheudasil's testimony reviewing the risks associated with vascular surgery and medical devices in general are based upon percipient observations treating Brand.[36] The general risk factors for patients to develop DVT and PE are not specific to his opinions developed during the course of treating Brand.[37] Finally, Dr.

---

[31] Exh. B, Rheudasil Dep. at 97:15-98:6.
[32] Exh. B, Rheudasil Dep. at 199:20-201:15 (This is example was not designated by Cook but is applicable to the Rule 26(a)(2)(C) Disclosure # 18).
[33] Exh. B, Rheudasil Dep. at 192:24-196:9
[34] Exh. B, Rheudasil Dep. at 205:20-206:1.
[35] Exh. B, Rheudasil, Dep. at 23:7; 25:20-25 & 56:16-23 (Cook's Rule 26(a)(2)(C) disclosure # 9 refers to Rheudasil Dep. at 208:10-215:24: scientific literature supports his opinions on efficacy and safety but has not done any clinical testing or case studies in his patients to substantiate the opinion).
[36] Exh. B, Rheudasil Dep. at 18:12-20:22.
[37] Exh. B, Rheudasil Dep. at 20:23-23:25 & 30:21-31:6.

Rheudasil's experience with IVC filters and his treatment of other patients, including the procedures he has performed with Dr. Morrison, are unrelated to his observations germane to Brand's filter placement, fracture, migration and retrieval efforts.[38]

    B4.    <u>Dr. Rheudasil's Opinions Regarding Risks/Benefits of Celect and IVC Filters</u>

Dr. Rheudasil's testimony regarding any risk-benefit analysis must be limited to what information he had or relied upon in deciding to implant the Celect filter in Brand prior to her spine surgery. His opinions about risks associated with surgery and the use of medical devices are not treatment related.[39] His testimony pertaining to the risk factors associated with DVT and PE was not developed from his observations treating Brand.[40] And finally, his opinions regarding the the risks and benefits of IVC filters, and Cook Celect in particular, are not percipient observations developed during his treatment of Brand.[41] Thus, all of these opinions must be excluded because he has not provided a report that meets the requirements for any of these opinions under the federal rules.

---

[38] Exh. B, Rheudasil Dep. at 24:1-27:17(His experience with IVC filters, including other manufacturers, what goes into his decision to use a filter, and what is important to him in selecting the right filter to use); 33:10-18 (Has performed 20-30 co-operations with Dr. Morrison); 34:6-38:15 (His opinion on why it was Dr. Morrison's routine practice to order a filter in anterior exposure spine surgery because a patient die due a PE during a surgery he performed); 46:14-48:3 (Use of anti-coagulation medicine is not preferred in anterior exposure lower spine surgery due to increased bleeding risk that comes with the prolonged period of bed rest following the procedure); 54:6-56:21 (Use of Celect filters after Brand and his opinion on the importance of deployability and retrievability) & 97:22-99:13 (His continued use of IVC filters, including Cook filters).

[39] Exh. B, Rheudasil Dep. at 18:12-23:18.

[40] Exh. B, Rheudasil Dep. at 36:12-38:6 (His testimony that DVT and PE pose serious and potentially fatal risks if untreated, and he has had a patient die from PE); 46:14-48:3 (Certain factors increase a patient's risk of developing DVT and PE, including age, obesity, previous DVT/PE, undergoing surgical procedures, use of certain medications, and abnormal vein conditions, among others).

[41] Exh. B, Rheudasil Dep. at 54:6-56:23 (Nothing about Mrs. Brand's experience with the filter caused him to stop using the Celect for his subsequent patients); 97:15-99:13 (He has implanted the Celect IVC filter before and after Brand's surgery and did not lose confidence in the filter); 59:23-64:2, 97:15-99 & (All IVC filters perforate to some extent, perforation is nearly always asymptomatic and not clinically significant, and he is concerned only with clinically significant filter outcomes); & 192:24-206:1 (Mrs. Brand's experience was a rare case in which a patient experienced a known complication that can occur with any IVC filter and that the remaining fragments posed little risk to her).

**C.     Conclusion**

For the reasons set forth above, Plaintiff seeks an Order that excludes any testimony from Dr. Rheudasil that did not arise from his treatment of Brand because he did not submit a compliant Rule 26(a)(2)(B) report.

Date: July 16, 2018                                                          Respectfully submitted,


                                                                             */s/ Joseph N. Williams*
                                                                             Joseph N. Williams, Atty. No. 25874-49
                                                                             RILEY WILLIAMS & PIATT, LLC
                                                                             301 Massachusetts Avenue
                                                                             Indianapolis, IN 46204
                                                                             Telephone: (317) 633-5270
                                                                             Facsimile: (317) 426-3348
                                                                             Email:  jwilliams@rwp-law.com
                                                                             *Liaison Counsel to Plaintiffs' Steering Committee*

                                                                             Michael W. Heaviside, Esq.
                                                                             HEAVISIDE REED ZAIC, A LAW CORPORATION
                                                                             910 17th Street, NW, Suite 800
                                                                             Washington, DC 20006
                                                                             Telephone: (202) 223-1993
                                                                             mheaviside@hrzlaw.com

                                                                             Ben C. Martin, Esq.
                                                                             THE LAW OFFICES OF BEN C. MARTIN
                                                                             3710 Rawlins Street, Suite 1230
                                                                             Dallas, TX  75219
                                                                             Telephone: (214) 761-6614
                                                                             Facsimile: (214) 744-7590
                                                                             bmartin@bencmartin.com

David P. Matthews, Esq.
MATTHEWS AND ASSOCIATES
2509 Sackett St.
Houston, TX  77098
Telephone: (713) 522-5250
Facsimile: (713) 535-7184
dmatthews@thematthewslawfirm.com
*Plaintiffs' Co-Lead Counsel*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on July 16, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

*/s/ Joseph N. Williams*
Joseph N. Williams