**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND                Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION                 MDL No. 2570

_____

This Document Relates to:

   *Brand v. Cook Medical, Inc. et al.,*
   Case No. 1:14-cv-06018-RLY-TAB

_____

### THE COOK DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE CASE-SPECIFIC EXPERT OPINIONS OF MICHAEL C. FISHBEIN, M.D.

The Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical
Incorporated), and William Cook Europe ApS (collectively "Cook" or "the Cook Defendants"),
hereby move this Court, pursuant to Federal Rule of Evidence 702, to exclude the case-specific
testimony of Michael C. Fishbein, M.D., Plaintiff's pathology expert. Dr. Fishbein's proposed
case-specific expert testimony fails to meet the standards for admission of expert testimony
under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its
progeny. More specifically, Dr. Fishbein explained at his deposition that pathologists make
diagnoses through laboratory review of tissue samples and slides. He did not review either for
Ms. Brand, but nonetheless issued opinions in his report about the causes of Ms. Brand's alleged
injuries in this case. These case-specific opinions should be excluded because they were not
developed under the diagnosis methods followed in pathology, are not derived from Dr.
Fishbein's expertise as a pathologist, and are not helpful for the jury. Moreover, this Court
*previously excluded* Dr. Fishbein's case-specific opinions in the first two bellwether trials in this

MDL: *Hill* and *Gage*.  *See* Entry for September 25, 2017 [Dkt. 6541], attached as **Exhibit A**.

The Court ruled that Dr. Fishbein could opine about:

> (1) the structure and function of the vena cava; (2) how perforations, penetration and tenting are determinable by pathology; (3) the cellular-level occurrences that accompany vascular injuries; (4) the healing process and tissue response following vascular damage; (5) the histological evidence from Cook's animal studies; and (6) how the placement of IVC filters results in a predictable series of pathological changes that are not benign.

*Id.*  The same ruling is appropriate here.

## I.       Legal Standard for Admission of Expert Testimony

The Seventh Circuit employs a three-step analysis in its application of the *Daubert* standard: (1) the expert's reasoning or methodology underlying the testimony must be scientifically reliable; (2) the witness must be qualified as an expert by knowledge, skill, experience, training, or education; and (3) the testimony must assist the trier of fact to understand evidence or to determine a fact in issue.  *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007).  The party proffering the expert must show these factors by a "preponderance of proof."  *United States v. Allen*, 207 F. Supp.2d 856, 869 (N.D. Ind. 2002).

## II.      Dr. Fishbein's Case-Specific Opinions

The bulk of Dr. Fishbein's expert report and proposed expert testimony in this litigation is focused on general pathologic principles, his review of animal studies performed on the Cook IVC filters, and the opinions he applied to that review.  Cook is not challenging Dr. Fishbein's general opinions as part of this Motion.

However, Dr. Fishbein included a three-page section at the end of his report in which he proffered several case-specific opinions about Ms. Brand.  *See* Excerpts from Expert Report of Michael C. Fishbein, M.D., April 29, 2018 ("Fishbein Report"), pp. 27-29, attached as

US.118769231.07

Exhibit B.  In this section, Dr. Fishbein opines that Ms. Brand "suffered major complications from her Celect filter." *Id.* at 28.  He details that a strut "actually eroded through her soft tissues and skin"; that "[o]ne strut fractured and a fragment eroded through the IVC into the retroperitoneal tissues anterior to the spine while one fragment of a fractured strut lodged in her right psoas muscle"; that "[t]wo struts perforated through the IVC and caused extensive retroperitoneal adhesions . . . necessitating extensive open surgery for removal of the filter"; and that the "pains that Ms. Brand suffered and continues to suffer[] were temporally and spatially related to the complications associated with the IVC filter rather than any of the other musculoskeletal conditions of Ms. Brand." *Id.* at 28-29.  Dr. Fishbein should not be permitted to offer any of these opinions at trial.

### III.    None of Dr. Fishbein's Case-Specific Opinions Are Admissible Under *Daubert.*

The Cook Defendants challenge all of Dr. Fishbein's case-specific opinions.  While Dr. Fishbein's experience and education as a pathologist may qualify him to offer many of his opinions, he did not perform any pathological or other appropriate analysis in forming them. Further, Dr. Fishbein is simply not qualified to offer to the jury many of these case-specific opinions.  In any case, none of Dr. Fishbein's case-specific opinions are necessary because other experts can and will appropriately offer such opinions.

### A.    Dr. Fishbein Did Not Employ a Reliable Methodology in Forming His Case-Specific Opinions.

In analyzing an expert's methodology, the Court considers whether "the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist." *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996).  The proponent of expert testimony must "explain the methodologies and principles supporting the opinion" to prove that the opinion is admissible.  *Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010); *see*

US.118769231.07

*also Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).  An expert's work will be admissible only to the extent that it "is reasoned, uses the methods of the discipline, and is founded on data." *Lang v. Kohl's Food Stores, Inc.*, 217 F. 3d 919, 924 (7th Cir. 2000); *see also Peoples State Bank v. Stifel, Nicolaus & Co., Inc.*, 2013 WL 1024917, at *4 (S.D. Ind. 2013); *In re Zimmer Nexgen Knee Implant Prod. Liab. Litig.*, 218 F. Supp.3d 700, 712 (N.D. Ill. 2016) (excluding opinions of an expert that did not explain why his opinions were reliable because "[a]n expert who supplies nothing but a bottom line supplies nothing of value" (internal citations omitted)).  Identifying an accepted methodology does not end the inquiry under *Daubert*.  The "expert still must faithfully apply the method to the facts at hand" and must "rely on 'facts or data,' as opposed to subjective impressions."  *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765, 772 (7th Cir. 2014).

*Daubert* requires exclusion of Dr. Fishbein's case-specific opinions because Dr. Fishbein did not employ a reliable methodology accepted in pathology—or, any methodology at all—in forming his case-specific opinions.

### 1.    Pathology is the science of laboratory analysis.

Pathology is the science of the causes and effects of disease, and it primarily encompasses the branch of medicine that deals with the laboratory examination of samples for diagnostic or forensic purposes.  Dr. Fishbein is an expert in "[g]eneral pathology, autopsy pathology, and cardiovascular pathology."  *See* Excerpts from Deposition of Michael Fishbein, M.D. in *Hill* and *Gage* ("Fishbein Dep. I")[1], 25:8–9, attached as **Exhibit C**.  He considers his

---

[1] At his deposition in *Brand*, Dr. Fishbein confirmed the accuracy of his prior testimony from his deposition in *Hill* and *Gage*, and he stated that it would be fair to continue to rely on that testimony.  *See* Excerpts from Deposition of Michael Fishbein, M.D. in *Brand* ("Fishbein Dep. III"), 9:2-15, attached as **Exhibit D**.

specialty to be "anatomical pathology," and he defines and describes the work of an anatomical pathologist as:

> I would call clinical or patient-related work, and that **consists of doing autopsies**, maybe doing some cytology, **which is looking at cells on a slide**, and I think what most anatomic pathologists spend their time doing is **looking at biopsies from living patients. So someone has a lump somewhere, it's taken out and sent to pathology and the pathologist studies it and makes a diagnosis.**

Ex. C, Fishbein Dep. I, 60:21–61:4 (emphasis added).  A pathologist does not examine living patients directly, but instead consults with a clinician and makes diagnoses by analyzing the patient's tissue samples in a laboratory setting.  *Id.* at 64:4–25.  Dr. Fishbein explained his work as a pathologist at his deposition:

> Q:   So [for example] you will get some tissue and you will say this is cancerous and that will be a diagnosis?
>
> A:   Right. Even though the patient may think that it's the surgeon who is making the diagnosis, it's actually the pathologist who is making the diagnosis.

*Id*. at 64:19–24.

In sum, pathology, as it is generally understood (and confirmed by Dr. Fishbein in his own words) is the study of the causes of disease through laboratory analysis of tissue samples and slides.  Therefore, an expert opinion in the field of pathology needs to be derived from review and analysis of pathology—*i.e.*, tissues samples and slides.

> **2.   Dr. Fishbein's case-specific opinions were not derived under a reliable methodology required in the field of pathology because he did not review any slides or tissue samples of Ms. Brand.**

With respect to Ms. Brand, Dr. Fishbein did not review or perform any legitimate pathological analysis.  He confirmed at his deposition that he did not review any samples or slides taken from her:

US.118769231.07

> Q:   So did you actually review tissues from Ms. Brand?
>
> A:   Just the filter.  There were no tissues actually. There is a photograph of the filter that has tissue on it that I was provided recently but that's all I have in terms of tissue.

Excerpts from Deposition of Michael Fishbein, M.D. in *Brand* ("Fishbein Dep. III"), at 72:14-20, attached as **Exhibit D**. Nonetheless, Dr. Fishbein has proffered expert opinions regarding Ms. Brand; namely, that Ms. Brand's filter "eroded" through tissues and skin, that "extensive retroperitoneal adhesions" necessitated immediate removal of the filter, and that all of Ms. Brand's current and past pain was caused by her filter.  *See* Ex. B, Fishbein Report at 28-29; *supra* Section II (summarizing Dr. Fishbein's case-specific opinions).  Dr. Fishbein developed these opinions solely from reviewing medical records, expert reports, and depositions, and a two-hour phone conference with Ms. Brand and Drs. Gordon and Litsky—not from reviewing her pathology.  *See* Ex. B, Fishbein Report at 27; Ex. D, Fishbein Dep. III, 74:7-10; 81:25-82:17.[2]

Seventh Circuit case law makes clear "that experts' work is admissible only to the extent it . . . uses the methods of the discipline."  *Lang*, 217 F.3d at 924; *see also Peoples State Bank*, 2013 WL 1024917, at *4; *Loeffel Steel Prod., Inc. v. Delta Brands, Inc.*, 372 F. Supp. 2d 1104, 1111 (N.D. Ill. 2005) ("The expert must employ in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." (citing *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999))).  Dr. Fishbein did not use the methods of his discipline in offering his case-specific opinions as to Ms. Brand.

---

[2] Dr. Fishbein cited in his report eleven articles that he characterized as "support[ing] [his] opinions regarding Tonya Brand." Ex. B, Fishbein Report at 29-31.  However, Dr. Fishbein admitted at his deposition that none of these articles relate to tissue samples, and, consequently, they do not involve pathological issues.  Ex. D, Fishbein Dep. III, 160:1-9.  Further, none of these articles were published in pathology journals, and they were all published *after* March 2009—the date of Ms. Brand's filter implant.  *Id.* at 160:10-12; 160:19-21.  As such, the articles cited by Dr. Fishbein are improper support for improper opinions.

US.118769231.07

Under remarkably similar circumstances, the United States District Court for the Western District of Virginia *twice* excluded the case-specific testimony of the plaintiffs' pathologist in the surgical mesh MDLs.  As the Court explained, the pathologist's testimony was barred under *Daubert* in two separate cases because there was no indication in his report that he "review[ed] any pathology." *Winebarger v. Boston Scientific Corp.*, at *32 (S.D. W.Va. Apr. 24, 2015) (excluding pathologist's case-specific opinions because he "did not review any pathology" nor did he examine plaintiff's "explanted mesh or perform[] a physical examination."); *see also Carroll v. Boston Scientific Corp.*, 2016 WL 2939523, at *11 (S.D. W.Va. 2016) (excluding the same pathologist in a different case because "there [was] no evidence that [he] examined the plaintiff's explanted mesh, performed a physical examination, or otherwise conducted a differential diagnosis").

This case calls for the same result.  By his own admission, pathology requires review of slides and tissue samples, and Dr. Fishbein reviewed no such materials in offering his case-specific opinions as to Ms. Brand.  In this sense, the problem is not his expertise or qualifications as a pathologist; but rather the fact that his work on these cases was not pathology. *Rosen*, 78 F.3d at 318 (noting that trial courts as gatekeepers under *Daubert* must ensure "the evidence is genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist"). Without pathological support, Dr. Fishbein's opinions that Ms. Brand's filter "eroded" through tissue and that multiple perforations caused "extensive retroperitoneal adhesions" that necessitated extensive open surgery for removal of the filter are mere speculation at best.  These case-specific opinions regarding Ms. Brand should be excluded because they are not grounded in reliable pathological methodology.

**3. Dr. Fishbein did not properly perform a differential diagnosis of Ms. Brand's pain.**

As noted above, Dr. Fishbein attempts to opine on issues outside the areas of his expertise—namely, the cause of Ms. Brand's alleged past and present pain—and, in doing so, strays much too far from any proper expert role. However, even if he was qualified to offer such opinions, Dr. Fishbein's own testimony reveals that these opinions are entirely unfounded. This is because Dr. Fishbein failed to undertake a legitimate differential diagnosis in arriving at these opinions.

A differential diagnosis is "a process by which a physician determines the cause of a patient's symptoms by first determining, or 'ruling-in,' all plausible causes for the patient's symptoms and then eliminating each of these potential causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely." *Ervin v. Johnson & Johnson, Inc.*, No. 2:04-cv-0205-JDT-WGH, 2006 U.S. Dist. LEXIS 35829, at *16 (S.D. Ind. 2006), *aff'd*, 492 F.3d 901 (7th Cir. 2007). This practice has garnered widespread acceptance in the medical community, and many courts have also recognized the technique as valid and reliable. *Id.* However, this is not to say that every purported differential diagnosis will be accepted as such—the legitimacy of an expert's differential diagnosis is a case-by-case determination. "[A]n expert's use of differential diagnosis is reliable and valid *only if* the expert applied the technique in a manner which is also reliable." *Id.* at *19 (emphasis added). Dr. Fishbein did not conduct a legitimate differential diagnosis in this case.

With respect to his opinion as to Ms. Brand's periodic thigh pain, Dr. Fishbein claims that he "informally" performed a differential diagnosis:

> Q:   So did you perform a differential diagnosis?
>
> A:   Well, I looked through the medical record and I did not see that she had any kind of injury other than this at that site.

8

> Q:    But are you comfortable saying you actually did the work
>       of performing a differential diagnosis, whereby I mean you
>       ruled in every possible cause and then through
>       methodology determined what those potential causes were,
>       and then through a methodology went through and
>       eliminated all the potential causes except for the strut?  Did
>       you do that?
>
> A:    **I didn't do that formally, but I did that informally in
>       my own head, yes.**

Ex. D, Fishbein Dep. III, 17:1-14 (emphasis added).  When pressed as to the other potential

causes of pain that he considered, Dr. Fishbein cited ambiguous "other trauma in that area" and a

vague "neurologic condition." *Id.* at 17:15-21.  He agreed in his deposition that "intermittent

pain can certainly be caused by a nerve issue from the spine," but discounted that Ms. Brand's

spinal condition could be the cause of her pain because he did not recall Ms. Brand describing

her pain as "radiating" (even though he admitted not recalling how she described her pain at all).

*Id.* at 18:6-19.  Further, in reaching this differential diagnosis, Dr. Fishbein did not personally

examine Ms. Brand's thigh, review any reports of tissue injury at her thigh, or review any

medical record references to pain in her thigh following the removal of the strut.  *Id.* at 21:17-

22:9. Nor did he lay out his differential diagnosis for Ms. Brand's thigh pain in his expert report.

   With respect to Ms. Brand's abdominal pain, Dr. Fishbein similarly opined that her filter

was "more likely than not" the cause.  *Id.* at 26:2-8.  Regarding his differential diagnosis on this

issue, he stated the following:

> Q:    Okay. Were you able to review her other causes of
>       abdominal pain?
>
> A:    Yes.
>
>               [. . .]
>
> Q:    Did you rule all of those other causes out?

> A:   No.
>
> Q:   Okay.  So you didn't do a differential diagnosis?
>
> A:   No, I did a differential diagnosis.  But I don't – I can't say I can absolutely rule out all of the other possibilities that she had.
>
> Q:   So how do you come to the conclusion it's more likely than not? Scientifically, help me understand.
>
> A:   Yes, because **it's a change and it's temporally related.** And I know that placement of a filter can result in abdominal pain.  That's well documented in the literature. So based on those factors, I think it's more likely than not the placement of the filter was causing her pain.

*Id.* at 26:14-27:11 (emphasis added).   In his (mental) differential diagnosis of Ms. Brand's abdominal pain, he did not deign to consider whether Ms. Brand's anterior lumbar interbody fusion surgery—a six-hour major spinal surgery that took place immediately following the placement of her filter—could have caused the pain of which she complained.  *Id.* at 24:17-29:14; 39:21-41:13.  Though he admits that he cannot rule out all of the other potential causes for this pain, he hangs his hat on the temporal relationship between filter placement and alleged pain onset to support his opinion, without any scientifically physiological explanation of how this could be (or how the six-hour anterior lumbar interbody fusion surgery could *not* be).

The Seventh Circuit has already ruled that a temporal relationship alone does not provide adequate support for an expert's opinion on causation.  In *Ervin*, 492 F.3d at 904-5, it affirmed a district court's determination that an expert "had no reliable basis for his expert opinion.  [This expert] could not point to any epidemiological data supporting his [differential diagnosis], and he was not able to articulate any scientifically physiological explanation as to how [a specific prescription drug] would cause arterial thrombosis."   The appellate court found that the "mere

US.118769231.07

existence of a temporal relationship between taking a medication and the onset of symptoms does not show a sufficient causal relationship." *Id.* Dr. Fishbein employs this same faulty logic in opining that Ms. Brand's abdominal pain was "more likely than not" caused by her filter due exclusively to the temporal relationship between the filter placement and the alleged onset of this pain.

Because Dr. Fishbein is opining outside his area of expertise, without a proper differential diagnosis, his case-specific testimony on Ms. Brand's pain should be barred from trial.

**B.    Dr. Fishbein Is Not Qualified To Offer Many of His Case-Specific Opinions**

Dr. Fishbein presents a classic example of an expert with experience in a specific field who tries to opine beyond his identified expertise. As this Court has noted, "merely possessing a medical degree does not qualify a [doctor] as an expert in all medical related fields." *Higgins v. Koch Dev. Corp.*, 997 F. Supp. 2d 924, 931 (S.D. Ind. 2014) (internal quotations omitted). The key question is not whether the expert is qualified in general, but whether the expert's qualifications provide sufficient foundation for an opinion on a particular topic. *See Gayton v. McCoy*, 593 F.3d 610, 617-18 (7th Cir. 2010).

The Court must look at each of the expert's conclusions and determine whether the expert has adequate education, skill, and training to reach that conclusion. *Id.* at 617 (finding a general practice physician unqualified to testify about heart disease drugs because he lacked specialized knowledge of cardiology and pharmacology); *see also Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002) (finding surgeon not competent to testify to diagnostic radiology opinions and that he would be, at best, just parroting the opinion of an expert in radiology). Courts exclude expert testimony where the expert's conclusions are rooted in medical knowledge and training the expert does not have. *Jones v. Lincoln Elec. Co.*, 188 F.3d

11

709, 723-24 (7th Cir. 1999).  Here, although Dr. Fishbein may be an experienced pathologist, he is not qualified to give some of the opinions he offers about Ms. Brand: for example, her need for "extensive open surgery," and the causes of her past and present pain.  Ex. B, Fishbein Report at 28-29.

### 1.    Dr. Fishbein is not qualified to opine that Ms. Brand needed "extensive open surgery."

Dr. Fishbein has opined that "extensive open surgery" was required for the removal of Ms. Brand's filter.  Ex. B, Fishbein Report at 28.  However, he has admitted under oath that he, as a pathologist, is *not* the correct person to determine whether a filter should be removed.

> Q:    And, Dr. Fishbein, as a pathologist, you aren't the one that makes – you do not make determinations about whether or not a filter should be removed, correct?
>
> A:    Correct.
>
> Q:    You – patients don't come to you and ask should I take my filter out or leave it in, correct?
>
> A:    Correct.
>
> Q:    They would go to a vascular surgeon for that or an interventional radiologist, correct?
>
> A:    Yes.
>
> [. . .]
>
> Q.    And those are the specialties that would make the decisions about whether or not a filter needed to be removed or not, correct?
>
> A.    Yes.

Excerpts from Deposition of Michael Fishbein, M.D. in *Pavlock* ("Fishbein Dep. II"), 96:21-97:7; 97:16-19, attached as **Exhibit E**.  By his own admission, then, Dr. Fishbein is not qualified

to opine that "extensive open surgery" was required for the removal of Ms. Brand's filter.  *Cf.* Ex. B, Fishbein Report at 28.

        **2.**       **Dr. Fishbein is not qualified to opine as to the causes of Ms. Brand's past and present pain.**

Dr. Fishbein further opines that Ms. Brand suffered and continues to suffer nondescript pain in various regions of her body—specifically her abdomen and thigh—because of her filter. Ex. D, Fishbein Dep. III, 13:12-14:1; 25:1-26:8; Ex. B, Fishbein Report at 28-29.[3]  But, as Dr. Fishbein again acknowledges, pain is not something about which a pathologist can appropriately opine as an expert witness.  During his deposition in this case, Dr. Fishbein blatantly admitted that diagnosing (or even performing a differential diagnosis on potential causes of) abdominal pain is not within the normal ambient of what a pathologist does.  Ex. D, Fishbein Dep. III, 71:1-5.  He likewise admits that pathologists are not in a position to *treat* abdominal pain either:

> Q:     Okay. So Dr. Fishbein, can I ask: In all of Ms. Brand's medical treatment, did she ever go to a pathologist for a diagnosis on her abdominal pain?
>
> A:     No.
>
> Q:     Why not?
>
> A:     We don't treat people for pain.
>
> Q:     Who does?
>
> A:     A lot of different people do.
>
> Q:     And what specialties do those doctors have?
>
> A:     It could be any specialty.
>
> Q:     But it wouldn't be –

---

[3] Notably, another of Plaintiff's expert witnesses, Dr. Gordon, withdrew similar opinions in the midst of his deposition because he determined he no longer held those opinions to a reasonable degree of medical certainty.

US.118769231.07

> A:     It wouldn't be pathology –
>
> Q:     – pathology?
>
> A:     – no.

*Id.* at 69:12-25.

Although diagnosis and treatment of patients' abdominal pain is off the table for pathologists, Dr. Fishbein further opines—without having seen any tissue to support this opinion—that Ms. Brand continues to suffer periodic pain in her thigh from a strut that was removed seven years ago:

> Q:     [Y]ou've never done that in your clinical practice? You don't evaluate a patient's symptomatology to determine whether or not it's related to other issues they might be experiencing?
>
> A:     No.  We do that, we do clinical pathologic correlation, but we do it in regards to usually pathology that we see.  So often it's at autopsy; or, if it's a tumor, you know, related to the spine or brain or something like that, we do correlation.
>
> Q:     That would be a correlation between a tissue sample and symptomology expressed to some other medical provider?
>
> A:     Yes.
>
> Q:     Were there any tissue samples reviewed by you in relation to her thigh pain?
>
> A:     No.
>
> Q:     So was there any pathological work done with respect to Ms. Brand's thigh?
>
> A:     Not specifically, no.

*Id.* at 20:14-21:7. While pathologic correlation would be entirely within Dr. Fishbein's wheelhouse, there is no tissue in this case on which he can base his causal diagnosis of Ms.

14

Brand's past and present pain.  As such, Dr. Fishbein is not qualified to offer any of his opinions with respect to Ms. Brand's pain.

## IV.    Dr. Fishbein's Case-Specific Opinions Would Not Assist the Jury.

The Court should also exclude Dr. Fishbein's case-specific testimony because it would not be helpful to the jury.  When analyzing the relevance of proposed expert testimony, courts must consider whether the testimony will assist the trier of fact with its analysis of the issues. *See Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).

To the extent Plaintiff intends to offer Dr. Fishbein's testimony to interpret Ms. Brand's medical records and/or to establish that her filter perforated, fractured, or caused her pain, Dr. Fishbein's testimony will not be useful or necessary to the jury because his areas of expertise do not include interpretation of imaging studies and reports, nor do they extend to his diagnosis and treatment of pain in living patients.   Ex. C, Fishbein Dep. I, 63:16-24, 239:10-13; Ex. D, Fishbein Dep. III, 69:12-25.  Moreover, the testimony that Dr. Fishbein purports to offer as to Ms. Brand will be cumulative and duplicative of the testimony offered at trial by other experts and the treating physicians.  Dr. Fishbein's testimony on matters outside his expertise would be unnecessary and cumulative of testimony of other witnesses, and otherwise unhelpful for the jury to resolve any factual issue requiring expert testimony that is at issue in this case.  *See* Fed. R. Evid. 702(a); 2011 Advisory Committee Note to Fed. R. Evid. 403 (noting that exclusion of evidence for reasons such as "waste of time, all find ample support in the authorities.").

## CONCLUSION

For the reasons stated above, the Cook Defendants urge the Court to grant their Motion to Exclude Case-Specific Opinions of Michael C. Fishbein, M.D., Plaintiff's pathology expert, and to bar him from offering any case-specific opinions in the upcoming trial.  Here, as in *Hill* and *Gage*, Dr. Fishbein's case-specific opinions do not stem from areas where Dr. Fishbein holds

US.118769231.07

expertise, were not derived under methods required in pathology, and, ultimately, will not be helpful to the jury to resolve the factual issues before it in this trial.

Respectfully submitted,

Dated: July 20, 2018

*/s/ Andrea Roberts Pierson*
Andrea Roberts Pierson (# 18435-49)
J. Joseph Tanner (# 11856-49)
Nicholas B. Alford (# 31867-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-Mail:  joe.tanner@faegrebd.com
E-Mail:  nicholas.alford@faegrebd.com

*Counsel for the Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 20, 2018, a copy of the foregoing **THE COOK DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE CASE-SPECIFIC EXPERT OPINIONS OF MICHAEL C. FISHBEIN, M.D.** was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.  Lead Counsel for Defendants will serve any non-CM/ECF registered parties.

*/s/ Andrea Roberts Pierson*

17

US.118769231.07