UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

This Document Relates to:

*Brand v. Cook Medical, Inc. et al.,*
Case No. 1:14-cv-06018-RLY-TAB

**COOK DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION
TO EXCLUDE TESTIMONY OF JAMES CARLSON, Ph.D.**

Plaintiff has designated former Cook employee Dr. James Carlson as an unretained expert witness in this case and has affirmatively designated specific portions of Dr. Carlson's deposition testimony that she intends to use at trial.[1] (*See* Plaintiff's Designation of Experts and Opinion Testimony, p. 13, attached as **Exhibit A**; Plaintiff's Proposed Deposition Designations for Jim Carlson, attached as **Exhibit B**.) Dr. Carlson is a metallurgist—someone who is experienced in the study of materials. He is not a physician and has no formal coursework in human anatomy beyond high school biology; he is not a biomedical engineer, biostatistician, or an epidemiologist; he is not a mechanical engineer and was not involved in the design or design testing for any Cook IVC filter, and he did not examine Plaintiff Tonya Brand's filter. Nevertheless, Plaintiff has designated Dr. Carlson to testify about the multiple topics related to IVC filter design, the human anatomy, and tilt and perforation issues.

---

[1] Plaintiff provided the Cook Defendants with her affirmative deposition designations for Dr. Carlson on July 3, 2018. The Cook Defendants intend to submit separate objections to Plaintiff's deposition designations by the agreed deadline to do so and hereby incorporate by reference all of their forthcoming objections.

The Court should exclude Dr. Carlson's designated testimony on all of these topics for three reasons. <u>First</u>, Dr. Carlson does not have the necessary expertise, qualifications, or experience to testify on these topics. Instead, as a metallurgist, Dr. Carlson has experience in materials science and fracture analysis of metals from a materials perspective. Dr. Carlson himself made clear when he responded to Plaintiff's attorney's questions on these topics that the topics fell outside of his materials science expertise and his job responsibilities at Cook. <u>Second</u>, Dr. Carlson's testimony is unreliable. Nothing in the testimony that Plaintiff has designated demonstrates that Dr. Carlson used any methodology at all in arriving at the views stated in his testimony, much less that he employed a reliable methodology. Indeed, Dr. Carlson's lack of methodology highlights and reinforces the inadequacy of his qualifications to testify on these topics. <u>Third</u>, Dr. Carlson did not examine or evaluate Plaintiff Tonya Brand's filter, and any testimony about his evaluation of a handful of fractured Cook IVC filters (and related complaint files) involving patients <u>other than Ms. Brand</u> is irrelevant to this case and would not assist the jury. Moreover, the probative value of any such testimony is substantially outweighed by the danger of unfair prejudice, misleading the jury, wasting time, or needlessly presenting cumulative evidence.

The Cook Defendants therefore respectfully ask the Court to exclude Dr. Carlson's testimony on the topics listed above.

**ARGUMENT**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and the Supreme Court's decision *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and the cases that follow it. These cases establish a three-step inquiry: (1) the expert must be qualified by knowledge, skill, experience, training, or education; (2) the expert's

testimony must be based on sufficient facts or data, as well as reliable principles and methods, and the expert must have reliably applied those principles and methods to the facts of the case; and (3) the proposed expert testimony must assist the trier of fact to understand the evidence or determine a fact at issue in the case.  *See* FED. R. EVID. 702; *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007).  The proponent of the expert testimony has the burden of establishing admissibility by a preponderance of the evidence.  *Lewis v. CITGO Petrol. Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).  Here, the offered "expert testimony" of Dr. Carlson fails at all three steps.

Specifically, Plaintiff has designated Dr. Carlson to testify about the following topics as to which the Cook Defendants object on *Daubert* grounds:

- Dr. Carlson's role in performing failure analysis or evaluations of fractured Cook IVC filters and "attempts to determine why some Cook IVC filters fractured," including "the actual evaluations he made" and his "authored reports evaluating fractures";

- Dr. Carlson's role "in attempting to prevent filters from fracturing in the future";

- Dr. Carlson's knowledge about "[the] incidence of—and relation between--tilt, perforation, and fracture. Forces/stresses placed upon the filter by tilt and perforation, cyclic fatigue";

- Dr. Carlson's knowledge about "Design aspects / Development / Testing of the Celect filter, particularly with respect to forces/stresses placed upon it by tilt and perforation, cyclic fatigue";

- Dr. Carlson's knowledge about "Design aspects / development of the Celect Platinum"; and

- Dr. Carlson's knowledge about "Changes Cook could have made to reduce rate of perforation."

(*See* Ex. A, p. 13.)[2]

---

[2] Plaintiff has also designated Dr. Carlson to testify about "how fractured filters are evaluated by Cook" and "materials (e.g., Elgiloy) used in the manufacture of the Celect filter." (*Id.*) The Cook Defendants do not object on *Daubert* grounds to Plaintiff's designations of Dr. Carlson's testimony on these issues, but reserve their right to object to these designations on other grounds.

"[A] former employee may [only] be a non-retained expert for the purposes of Rule 26(a)(2) if he is a percipient witness and is testifying based upon his personal knowledge of the facts or data at issue in the litigation." *See* Dkt. 6916, *Hill* Order on Plaintiff's Motion to Exclude the Testimony of Cook's Non-Retained Expert Brian Choules, Ph.D. (quoting *Guarantee Tr. Life Ins. Co. v. Am. Med. & Life Ins. Co.*, 291 F.R.D. 234, 237 (N.D. Ill. 2013)). "If he testifies beyond the scope of his observation, however, he is treated as a retained expert and must provide a written report pursuant to Rule 26(a)(2)(B)." *Id.* (citing *Martin v. Stoops Buick*, 2016 WL 4088132, at *1 (S.D. Ind. 2016). As in *Hill*, Plaintiff has again moved to exclude or strike certain opinions of non-retained expert and former Cook engineer Brian Choules, which Plaintiffs claim concern events exceeding the scope of his personal knowledge as a percipient witness and because he did not provide a written report. *See* Dkts. 6516, 8501. Yet, Plaintiff herself elicited and has designated extensive testimony from Dr. Carlson concerning topics beyond his personal knowledge and observation as a percipient witness and without providing an expert report. By Plaintiff's own argument, Dr. Carlson's testimony must be excluded.[3]

### I. As a Metallurgist, Dr. Carlson Is Unqualified To Testify About IVC Filter Design, The Human Anatomy, And Tilt Or Perforation Issues.

Dr. Carlson is not qualified to offer expert opinions or testimony concerning IVC filter

---

[3] To the extent that Plaintiff argues that Dr. Carlson's testimony should be admissible as a statement by a party-opponent, this argument is wrong because Dr. Carlson left his employment with Cook nearly four years ago and is no longer an employee with Cook. (Excerpts from Deposition of James Carlson, Ph.D. (June 22, 2017) at 27:1-5, attached as **Exhibit C**.) However, even in cases where the expert testimony at issue comes from an employee of a party-opponent, that testimony must still comply with *Daubert* and its progeny. See *Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756, 763 (7th Cir. 2003) ("The plaintiff has made no argument why admissions should always be free from the requirements of Rule 701(c), Rule 702 and *Daubert*. And in this particular case, we see no good reason why unqualified and unreliable scientific knowledge should be exempted from the expert evidence rules simply because the speaker is an employee of a party-opponent."); FED. R. EVID. 701 advisory committee note, 2000 Amendments ("Rule 701 has been amended [to include subsection (c)] to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing."). For the reasons explained in this brief, Dr. Carlson's testimony fails to comply with the requirements set forth in *Daubert* and its progeny.

design, human anatomy, tilt, or perforation, topics that comprise the great majority of his designated testimony. "A district judge should assure himself, before admitting expert testimony, that the expert knows whereof he speaks." *Bammerlin v. Navistar Int'l Transp. Corp.,* 30 F.3d 898, 901 (7th Cir. 1994). That is to say, the expert has to be "qualified," in other words, whether "by knowledge, skill, experience, training, or education." FED. R. EVID. 702. While Dr. Carlson may be an experienced metallurgist, he is not qualified to testify on these designated matters in this case.

As a metallurgist with experience in materials science, Dr. Carlson's role with respect to Cook IVC filters was limited to three discrete areas: (1) developing the material specification for the Elgiloy metal used in manufacturing filter's wires; (2) assisting in resolving manufacturing or production related issues for the Celect IVC filter; and (3) performing failure analysis on fractured Cook IVC filters from a materials science perspective only. Excerpts from Deposition of James Carlson, Ph.D. (June 22, 2017) at 49:8-50:14, attached as **Exhibit C**. In performing metallurgical failure analysis on a filter fracture, Dr. Carlson made clear that it was not within his responsibility or expertise to determine the root cause for the filter fracture:

> Q.  So far in the reports we've read, we've discussed regarding the cause of various filter fragments, I haven't seen any reference to the doctor's placement. If that was determined to be the cause, would it be in the report?
> A.  My report as the metallurgist?
> Q.  Yeah, the report on the root cause of the problem.
> A.  **Well, that was kind of out of my level of responsibility. I was responsible to deal with the fractography and then report those findings up the -- the ladder**.

Ex. C at 52:6-15; 124:3-14 (emphasis added).

Without a doubt, Dr. Carlson's own testimony disqualifies him from offering testimony on the topics designated by Plaintiff. Specifically:

5

- He is not a physician and has no formal coursework in human anatomy beyond high school biology;[4]

- He is not a biomedical engineer;[5]

- He is not a biostatistician or an epidemiologist;[6]

- He has not examined Plaintiff Tonya Brand's filter;[7]

- He is a metallurgist with expertise in materials science, and therefore unqualified to comment on medical and design issues such as tilt or perforation;[8]

- He is not an expert in finite element analysis;[9]

- He is not a mechanical engineer, and is therefore unqualified to comment on mechanical design issues;[10] and

- He is unqualified to comment on the amount of force the Celect or any IVC filter is designed to withstand related to tilt or perforation.[11]

Notably, Dr. Carlson was *not* involved in designing the Celect IVC filter or any other Cook IVC filter. Ex. C at 82:5-13. Indeed, Dr. Carlson agreed that medical device design and root cause analysis related to filter fractures requires specialized knowledge and expertise concerning a product's design and its interaction with the human anatomy. Ex. D at 286:1-23. This is specialized knowledge and expertise that Dr. Carlson simply does not have, which he admitted consistently when asked repeatedly by Plaintiff about tilt, fracture, and perforation:

> Q. Okay. And how much tilting is required such that the stress will result in fracture?
> A. **I don't -- I'm a metallurgist. I couldn't really comment on that.**

****

---

[4] Ex. C at 25:10-16; Excerpts from Deposition of James Carlson, Ph.D. (August 25, 2017) at 434:5-6, attached as **Exhibit D**.
[5] Ex. C at 26:19-21; Ex. D at 434:3-4.
[6] Ex. D at 452:22-453:2.
[7] Ex. C at 61:5-11.
[8] Ex. C at 77:3-6, 113:2-8.
[9] Ex. D at 383:8-14.
[10] Ex. C at 81:19-22.
[11] Ex. C at 97:13-22.

| | |
|---|---|
| Q. | Was the Celect filter designed to withstand the forces that would occur when the filter tilts and perforates the IVC?<br>MR. BENNETT: Objection; asked and answered.<br>BY MS. BAUGHMAN: |
| Q. | If you know. |
| A. | **Well, that's out of my area of expertise, and I would like to respectfully decline answering the question because I'm a metallurgist and not a mechanical engineer.** |

****

| | |
|---|---|
| Q. | Why does the filter tilt? |
| A. | **Well, again, I'm a metallurgist and not a medical doctor.** |
| Q. | I understand that. But you -- you were involved in trying to figure out why these filters were fracturing, right? |
| A. | **Right. And, again, speaking as a metallurgist and not a medical doctor for the court and this record**, one of the reasons why these filters were tilted was they weren't placed properly by the doctor. |

****

| | |
|---|---|
| Q. | What other reasons are there for a Cook Celect filter tilting? |
| A. | Well, I mean --<br>MR. BENNETT: Objection; lacks foundation.<br>BY THE WITNESS: |
| A. | **Yeah, that's out of my realm of expertise.** |

****

| | |
|---|---|
| Q. | What about tilt, do you know which is more likely to tilt, the Tulip or the Celect?<br>MR. BENNETT: Objection; foundation.<br>BY THE WITNESS: |
| A. | **No. Again, I'm a metallurgist and not a medical doctor.** |

Ex. C at 77:3-4; 97:13-22; 112:1-11; 113:2-8; 153:19-24 (emphasis added).

Dr. Carlson's own testimony sums up the matter well. He lacks the necessary qualifications to testify about IVC filter design, the human anatomy, and tilt or perforation issues, and the Court should exclude his testimony on those issues. *See, e.g.*, *Ancho v. Pentek Corp.*, 157 F.3d 512, 517-19 (7th Cir. 1998) ("Just as a qualified and board certified heart

7

surgeon does not possess sufficient knowledge of orthopaedic medicine to render an expert opinion on spine surgery, likewise we agree with the trial court's ruling that a mechanical engineer … lacks qualifications to give expert testimony about plant reconfiguration"); *Botnick v. Zimmer, Inc.*, 484 F. Supp. 2d 715, 719-20 (N.D. Ohio 2007) (finding that a mechanical engineer lacked the qualifications necessary to testify as to the bone plate device at issue); *Krueger v. Johnson & Johnson Prof'l, Inc.*, 160 F. Supp. 2d 1026, 1031-32 (S.D. Iowa 2001) (finding that a metallurgist with an engineering degree was not qualified to testify about the cervical plate device at issue because he had "no experience in the design of medical implants or any other medical devices" and had "never been involved in the testing of a medical device to be used inside the body"), *aff'd*, 66 Fed. App'x 661 (8th Cir. 2003) (per curiam).

**II.     Dr. Carlson's Testimony About IVC Filter Design, The Human Anatomy, And Tilt Or Perforation Issues Is Unreliable.**

The Court should also exclude Dr. Carlson's testimony concerning filter design, human anatomy, tilt, and perforation because that testimony is not based on any reliable methodology, or indeed any methodology at all.  When analyzing an expert's methodology, a court is to consider whether the evidence is genuinely scientific, as opposed to being unscientific speculation offered by a genuine scientist.  *Rosen v. Ciba-Geigy Corp.*, 78 F.3d 316, 318 (7th Cir. 1996).  An expert's work will be admissible only to the extent that it is reasoned, uses methods of the discipline, and is founded on data.  *Lang v. Kohl's Food Stores, Inc.*, 217 F. 3d 919, 924 (7th Cir. 2000).

Here, consistent with Dr. Carlson's lack of qualifications, his proposed testimony about IVC filter design, the human anatomy, and tilt or perforation issues lacks any scientific or medical foundation.  Nothing in the testimony that Plaintiff has designated demonstrates or even suggests that Dr. Carlson used any methodology at all in arriving at the views he states, much

less that he employed a reliable methodology. The offered testimony consists almost entirely of conclusory statements by Plaintiff's attorney followed by agreement by Dr. Carlson. Plaintiff did not ask Dr. Carlson to identify any basis for any of his statements, and nothing in the designated testimony suggests he has any basis.

For example, Plaintiff has designated Dr. Carlson's testimony about the "incidence" of "tilt, perforation, and fracture" as part of his purported "expert" testimony. *See* Ex. A, p. 13. However, Dr. Carlson's testimony clearly demonstrates that any views or opinions he has were not based on any data or analysis of the adverse event rates or the fracture rates for Cook IVC filters. Specifically:

- He did not analyze every Cook IVC filter that fractured during his employment with Cook;[12]

- He does not have in his possession nor did he attempt to analyze the data on how often Cook IVC filters fracture;[13] and

- His job responsibilities did not include keeping track of adverse event or fracture rates for Cook IVC filters.[14]

Plaintiff also has designated Dr. Carlson's testimony about what she characterizes as "Design aspects / Development / Testing of the Celect filter," "Design aspects/ development of the Celect Platinum," and "Changes Cook could have made to reduce rate of perforation" as purported "expert" testimony. *See* Ex. A, p. 13. But Dr. Carlson was not involved in any design or bench testing for Cook IVC filters, and he agreed that product design and testing is outside his area of expertise as a metallurgist. Specifically:

- He was not responsible for creating the mechanical design of any Cook IVC filter;[15]

---

[12] Ex. C at 52:20-24; Ex. D at 453:18-454:6.
[13] Ex. C at 53:23-54:2; Ex. D at 453:18-454:6.
[14] Ex. D at 453:3-12; 453:18-454:6.
[15] Ex. C at 82:14-83:9.

9

- He was not involved in the design for the Celect IVC filter and was only involved from a materials perspective with regard to the process used to form the legs;[16]

- He was not involved in the design testing, such as the finite element analysis and failure mode effects analysis, for the Celect IVC filter because mechanical design issues are out of Dr. Carlson's area of expertise and were handled by mechanical engineers at Cook;[17]

- He was not involved in evaluating how much force the metal for the Celect IVC filter could withstand before it would fracture because that was handled by the finite element analysis and bench testing teams during the design process;[18]

- He was not involved in trying to determine possible causes for perforation or penetration;[19] and

- He was only involved from a materials point of view with respect to the development of the Celect Platinum IVC filter.[20]

Plaintiff has further designated Dr. Carlson's testimony about "[the] relation between--tilt, perforation, and fracture" and "[the] [f]orces/stresses placed upon the filter by tilt and perforation, cyclic fatigue" as purported "expert" testimony. *See* Ex. A, p. 13. But again, as cited above, Dr. Carlson's testimony makes clear that his views about "[the] relation between--tilt, perforation, and fracture" and "[the] [f]orces/stresses placed upon the filter by tilt and perforation, cyclic fatigue" are outside his area of expertise as a metallurgist and not based on any appropriate methodology or research. Likewise, Dr. Carlson was not involved in analyzing tilt or perforation in Cook IVC filters nor was he involved in comparing Cook IVC filters to competitor IVC filters. Ex. C at 108:12-16; 124:22-125:4.

In short, the views stated in Dr. Carlson's testimony are not based on any methodology at all, much less a reliable methodology. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data

---

[16] Ex. C at 82:5-13.
[17] Ex. C at 76:8-15; 81:5-82:4; 135:7-10.
[18] Ex. C at 83:10-16.
[19] Ex. C at 123:5-22.
[20] Ex. C at 126:21-24.

only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  A court is entitled to conclude "that there is simply too great an analytical gap between the data and the opinion proffered." *Id*. Dr. Carlson's supposed "expert" testimony does not meet the Rule 702 standard and should be excluded.

**III.    Dr. Carlson's Testimony About His Evaluation Of Fractured Cook IVC Filters Is Irrelevant To *Brand* And Unfairly Prejudicial.**

Finally, the Court should exclude the testimony of Dr. Carlson on the issues listed above because the testimony will not assist the jury but will only unfairly prejudice Cook. For an expert's testimony to be admissible, the expert must "help the trier of fact to understand the evidence or to determine a fact in issue . . . ." FED. R. EVID. 702(a). This requirement includes the element of relevance. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (internal quotations marks and citation omitted). The proffered testimony must be "sufficiently tied to the facts of the case" such that it will actually aid the jury. *Id*. (same). This is *Daubert*'s requirement of "fit." *Id*.

During his deposition, Plaintiff questioned Dr. Carlson at length about the handful of filter fractures (and related complaint files) that he evaluated, and she has affirmatively designated much of that testimony. *See* Ex. A, p. 13 (referencing his "attempts to determine why some Cook IVC filters fractured," including "the actual evaluations he made" and his "authored reports evaluating filter fractures"). Presumably, the purpose of designating significant amounts of testimony about a handful of fracture complaints involving patients <u>other than Ms. Brand</u> is to mislead the jury by distorting evidence as to the incidence of fracture, which is very low.

This testimony is irrelevant to Brand and will not help the jury because Dr. Carlson did not examine or evaluate her fractured filter. During his deposition, Dr. Carlson was specifically asked whether he examined Ms. Brand's filter, and he confirmed that, to the best of his

11

knowledge, he did not analyze any Cook IVC filters at issue in lawsuits filed against the Cook Defendants:

> Q. **Were you -- to the best of your knowledge, have you been involved in analyzing any of the filters of patients who have filed a lawsuit against Cook?**
> A. **That's a good question. As far as I know, to the best of my ability, I have not been involved in looking at any of those filters.**
> Q. And when you analyzed a filter, a Cook filter that fractured, did you know the name of the patient?
> A. No. All that information was protected because of HIPAA.
> Q. **Okay. So, if I asked you a particular patient's name, I'm going to throw one out, Tanya Brand, do you know whether you analyzed her filter?**
> A. **No, ma'am.**

Ex. C at 61:5-20 (emphasis added). The failure analysis that Dr. Carlson performed of fractured Cook IVC filters implanted in other patients is irrelevant to Ms. Brand's case because the circumstances for every patient are different, and Plaintiff can make no showing that the other fractures that Dr. Carlson analyzed were substantially similar to the fracture that occurred in her filter. *See Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1268-69 (7th Cir. 1988) (upholding exclusion of evidence of other accidents where offering party had not demonstrated sufficient similarity to accident at issue).

Any conclusions Plaintiff might urge the jury to draw from Dr. Carlson's analysis of other fracture complaints would be speculative at best.[21] Dr. Carlson acknowledged this himself during this deposition:

> Q. How much force is placed on the filter when it's tilted like [what] happened in this situation?
> A. **Well, I think every situation is different. It's patient-dependent based on their anatomy, how much -- how heavy they are, probably some gender differences too. And it's also subject to different situations that**

---

[21] In *Hill*, the Court granted in part the Cook Defendants' motion in limine to bar testimony or evidence of complaint files, ruling that Plaintiff could not offer individual complaint files into evidence. *See* Dkt. 6850. The Cook Defendants intend to ask the Court for this same ruling in *Brand*, which would likewise bar Plaintiff from playing Dr. Carlson's testimony about individual complaints.

12

> **the vena cava filter is subjected to like if a patient falls or has been subjected to an impact. So, it's really kind of speculative to answer a question based on a wide different variety of scenarios.**

Ex. C, 141:12-24 (emphasis added). The Court should exclude Dr. Carlson's testimony about his evaluation of unrelated filter fractures as irrelevant and unhelpful to the jury. *See* FED. R. EVID. 401, 402, 702(a).

The Court should also exclude Dr. Carlson's testimony about his evaluation of unrelated filter fractures because its probative value is substantially outweighed by a danger of unfair prejudice, misleading the jury, wasting time, or needlessly presenting cumulative evidence. *See* FED. R. EVID. 403. As an initial matter, Dr. Carlson's testimony demonstrates that he evaluated filter fractures involving other patients no more than a handful of times. *See* Ex. C at 52:6-19. His proposed testimony about filter fractures unrelated to Ms. Brand would also be confusing to the jurors, leading them to falsely conclude that these other fracture complaints have some relevance to Ms. Brand's claims, and would unnecessarily prolong the trial by forcing Cook to offer rebuttal testimony and evidence on fracture complaints that have nothing to do with this case. Moreover, Plaintiff has already designated two retained engineering experts, Drs. Alan Litsky and Robert McMeeking, to testify and offer opinions in Ms. Brand's case. Dr. Carlson's testimony is therefore unnecessary and would waste the Court's and the jury's time. These elements substantially outweigh any arguable probative value the testimony might have, requiring exclusion. *See* FED. R. EVID. 403.

Finally, the unfair prejudice of Dr. Carlson's testimony is magnified by his status as a former Cook employee. That status can only make it seem to the jury as if a Cook representative is *admitting* unflattering scientific and medical facts, an impression that Plaintiff clearly intends and will doubtlessly do everything she can to emphasize. Given the utter absence of

qualification or methodology for this testimony, as described above, the admission of ex-employee Dr. Carlson's testimony on these issues would be unfair to Cook and unduly prejudicial.

## CONCLUSION

For these reasons, the Court should exclude the testimony of James Carlson, Ph.D., on the issues listed above from the trial in this action.

Respectfully submitted,

Dated: July 20, 2018

*/s/ Andrea Roberts Pierson*
Andrea Roberts Pierson (# 18435-49)
John T. Schlafer (# 28771-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
Email:  andrea.pierson@faegrebd.com
Email:  john.schlafer@faegrebd.com

James Stephen Bennett (# 22869-02)
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana 46802
Telephone: (260) 424-8000
Facsimile: (260) 460-1700
stephen.bennett@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2018, a copy of the foregoing was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Co-Counsel for Defendants will serve any non-CM/ECF registered parties.

/s/ *Andrea Roberts Pierson*