IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE: COOK MEDICAL, INC., IVC
FILTERS MARKETING, SALES
PRACTICES AND PRODUCT LIABILITY
LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL NO. 2570

This Document Relates:

    *Brand v. Cook Medical, Inc., et al*
    Case No. 1:14-cv-6018-RLY-TAB

## **PLAINTIFF'S BRIEF IN SUPPORT OF MOTION TO EXCLUDE OR LIMIT THE EXPERT TESTIMONY OF MARK RHEUDASIL, MD**

COMES NOW Tonya Brand ("Brand"), Plaintiff in the above-styled action, by and through undersigned counsel, and submits her Brief in Support of Motion to Exclude or Limit the Expert Testimony of Mark Rheudasil, MD, and states as follows:

## **INTRODUCTION AND RELIEF SOUGHT**

1. Dr. Rheudasil was Brand's treating physician who implanted her Cook Celect® ("Celect") IVC filter prior to spine surgery.[1]

2. Cook disclosed Dr. Rheudasil to testify as a non-retained expert who will opine, in part, IVC filters are safe and effective medical devices that prevent pulmonary embolism ("PE").[2]

3. Cook did not submit a Rule 26(a)(2)(B) report for these opinions, and these opinions were not formed during the course of his treatment of Brand.[3]

---

[1] Deposition of Mark Rheudasil, MD attached as Exhibit A.
[2] Cook Defendants' Amended Rule 26(a)(2)(B) and 26(a)(2)(C) Expert Disclosures attached as Exhibit B.
[3] Plaintiff also hereby incorporates by reference her Brief in Support of Motion to Exclude Impermissible Expert Testimony of Mark Rheudasil, MD which states his testimony must be limited solely to his opinions formed in the course of his treatment because he did not provide an expert report. (*See* Doc. 8553).

4.  As discussed below, Dr. Rheudasil's deposition testimony does not establish his opinions are supported by any reliable methodology that will be helpful to the jury.

5.  Plaintiff does not object to Cook calling Dr. Rheudasil as a fact witness but does object to any impermissible expert testimony not limited to his observations during her treatment.

## MEMORANDUM

### A.  Legal Standard

This Court is familiar with the *Daubert* standard.[4]  In evaluating the testimony of Cook's experts under Federal Rule of Evidence 702, this Court must determine whether it is "reliable" and "relevant."[5] Specifically, (1) the expert must be qualified by knowledge, skill, experience, training, or education; (2) the proposed expert testimony must assist the trier of fact in determining a relevant fact at issue in the case; (3) the expert's testimony must be based on sufficient facts or data and reliable principles and methods; and (4) the expert must have reliably applied the principles and methods to the facts of the case.[6]

The proponent of the evidence has the burden of showing an expert's testimony to be relevant and reliable.[7]  To satisfy the reliability requirement, the expert must be qualified in the relevant field, and his opinion must be based on a sound methodology.[8]  The Court should "rule out subjective belief or speculation."[9]  Thus, an expert's work is admissible "only to the extent it

---

[4] *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); *see, e.g.*, *McCauley v. Nucor Corp.*, 2007 WL 2316463, at *1–2 (S.D. Ind. Aug. 10, 2007) (Baker, M.J.) (discussing *Daubert* standard); *Griffin v. Foley*, No. 3:05-CV-0015 RLY-WGH, 2006 WL 6886657, at *1–2 (S.D. Ind. Dec. 11, 2006) (Young, J.) (same).

[5] *Lees v. Carthage Coll.*, 714 F.3d 516, 521 (7th Cir. 2013).

[6] *Lees v. Carthage College*, 714 F.3d 516, 521-22 (7th Cir. 2013) (citations omitted). *See also Lapsley v. Xtek, Inc.*, 689 F.3d 802, 809 (7th Cir. 2012) ("Rule 702 requires that expert testimony be relevant, reliable, and have a factual basis—requirements that must be met before the jury is allowed to hear and perhaps be persuaded by the expert testimony.").

[7] *Bickel v. Pfizer, Inc.*, 431 F. Supp. 2d 918, 92 (N.D. Ind. May 19, 2006).

[8] *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).

[9] *The Peoples Bank v. Stifel, Nicolaus & Co.*, 2013 WL 1024917 (S.D. Ind. Mar. 14, 2013).

is reasoned, uses the methods of the discipline, and is founded on data."[10]  An expert's "failure to

explain his methodology," permits the court to "conclude that the report offer[s] 'nothing of

value to the judicial process.'"[11] Moreover, while Rule 703 allows for an expert to consider

hearsay in forming his opinion, the rule does not allow an expert to substitute others' opinions

for their own.[12] Finally, "[t]he touchstone of admissibility under Rule 702 is helpfulness to the

jury."[13]

Here, any of Dr. Rheudasil's testimony regarding the safety and efficacy of IVC filters or

Celect in particular would not assist the jury and should be excluded because his testimony is based

solely on his experience as a treating physician and is not based upon a reliable methodology

applied to scientific data available to him in making his opinions.

### B.  Relevant Background Facts

Dr. Rheudasil is the vascular surgeon that implanted Brand's Celect filter.[14]  Dr. Rheudasil

relies solely upon his training and experience as a medical doctor in forming his opinions that

IVC filters, and specifically Cook filters, are safe and effective devices that protect patients from

pulmonary embolism ("PE").[15]  Dr. Rheudasil did not provide a Rule 26(a)(2)(B) report

providing how his experience as a medical doctor qualifies him to provide any opinions

---

[10] *Lang v. Kohl's Food Stores, Inc*., 217 F.3d 919, 924 (7th Cir. 2000).

[11] *Minix v. Canarecci,* 597 F.3d 824, 835 (7th Cir. 2010) (quoting *Wendler,* 521 F.3d at 791). *See also Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc.,* 521 F.3d 790, 791 (7th Cir. 2008) ("An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process.")

[12] *Loeffel Steel Products, Inc. v. Delta Brand, Inc*., 387 F. Supp. 2d 794, 808 (N.D. Ill. July 22, 2005) ("while Rule 703 was intended to liberalize the rules relating to expert testimony and the bases on which that testimony could be based, it was not intended to abolish the hearsay rule and to allow a witness, under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion.").

[13] *United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991), *amended on unrelated grounds*, 957 F.2d 301 (7th Cir. 1992).

[14] Exh. A, Rheudasil Dep. at 9:13-21 & 32:9-18.

[15] Exh. A, Rheudasil Dep. at 27:9-17 & 57:25-58:5.

regarding IVC filters that are not directly related to his treatment of Brand.[16] In fact, Rheudasil

testified his testimony is limited to his treatment and that he has no opinion on the causation of

her filter failure:

> Q.  Is your knowledge of what Mrs. Brand's condition and her experience with her
>      vena cava filter limited to that period of time?
> A.  Yes.
> …
> Q.  Do you have an opinion as to the cause of her fracture?
> A.  I do not.[17]

Dr. Rheudasil also testified that he does not base any of his opinions regarding his choice to

use filters on anything other than his experience and training as a medical doctor in vascular

surgery:

> Q.  When you are looking at the benefits of a filter before you choose it, are you relying
>      on your experience, your education and your training?
> A.  Yes.
> Q.  Are you relying on anything else when you determine what factors are important to
>      you in choosing a filter?
> A.  Not really.[18]

This basis for his decision included Brand:

> Q.  Dr. Rheudasil, in choosing Mrs. Brand's vena cava filter, did you rely on your medical
>      education, training and experience?
> A.  Sure
> Q.  Did you rely on anything else?
> A.  No.[19]

Dr. Rheudasil also cited no reliable methodology that would help the jury understand how

IVC filters are safe and effective.[20] He admits he did not rely upon any specific authoritative

---

[16] Exh. B.
[17] Exh. A, Rheudasil Dep. at 12:4-7 & 13:1-3.
[18] Exh. A, Rheudasil Dep. at 27:9-17
[19] Exh. A, Rheudasil Dep. at 57:25-58:5.
[20] Exh. B at 4-7.

4

scientific research and that he has not performed any studies in his clinic to determine the

effectiveness of IVC filters in protecting at-risk patients from PE.[21]

Dr. Rheudasil generally believes all filters are roughly equal in their capability to catch clots

and in pulmonary embolus protection.[22]  His opinions on the efficacy and safety of filters are

based on his experience as a vascular surgeon and were not formed during his treatment of

Brand.[23] Other than his experience implanting and retrieving filters for over thirty years, his

testimony is bereft of any reliable methodology for his opinions on filter efficacy.  He could not

point to one instance where he had scientific proof an IVC filter prevented a PE:

> Q. Have you ever … kept a study yourself, and I'm just talking about even a simple as looking at the number of patients that you have had -- that you have placed filters in and looking at the results of whether or not pulmonary emboli were prevented, have you ever performed your own study on your own patients?
> A. No.
> Q. And have you ever performed a study on your own patients as to the incidence of pulmonary embolus after the placement of a Cook Celect filter?
> A. No.
> Q. Do you know -- and I understand -- well, I think I know what your answer is going to be, but let me ask this:  Are you aware -- are you aware of any article, scientific peer-reviewed article, and I would just ask if you know of one that supports that a Cook Celect filter reduces the risk of death from pulmonary embolus?
> …
> A. No.
> Q. And you don't track all your patients for the results of the placement of a Cook Celect filter, would that be true?
> A. True. [24]

In addition to filter efficacy, Dr. Rheudasil's testimony that all filters perforate to some

extent and that most filter perforations and migrations are clinically insignificant to a patient is

---

[21] Exh. A, Rheudasil Dep. at 210:8-215:24.
[22] Exh. A, Rheudasil Dep. at 25:20-26:9
[23] Exh. A, Rheudasil Dep. at 27:9-17.
[24] Exh. A, Rheudasil Dep. at 214:25-215:24.

not based upon any scientific data.[25]  Further, his opinions on the risk posed by the filter fragments retained in Brand's body was not formed solely from his treatment and is impermissible opinion testimony.[26] He also cites no support that Brand's experience with Celect was a known complication for all filters and what she experienced was a rare occurrence.[27] All Dr. Rheudasil can point to upon cross examination regarding his basis for these opinions is his personal experience and nonspecific medical journals that have been published since the 1980s.

### C.  Analysis: Dr. Rheudasil's Testimony Unrelated to His Treatment of Brand Does Not Meet the *Daubert* Standard and Should Not Be Presented to the Jury.

Even if Cook had submitted a Rule 26(a)(2)(B) report for Dr. Rheudasil's opinions unrelated to Brand's treatment, Cook cannot meet its burden of establishing that his testimony would be helpful to the jury and is based on anything other than his subjective belief and speculation. Cook must show that each non-treatment opinion of Dr. Rheudasil's that it wants to admit is "reasoned, uses the methods of the discipline, and is founded on data."[28] Rule 702 explicitly requires that expert testimony be "based on sufficient facts or data."[29]

"In the quantitative sense, sufficient facts or data means that the expert considered sufficient data to employ the methodology; an opinion about an average gross sales price, for example, could not be reliably supported by evidence relating to sales to only one customer because a single observation does not provide a sufficient basis for calculating an average."[30] To be "qualitatively" adequate, "an expert must employ 'those kinds of facts or data' on which experts

---

[25] Exh. A, Rheudasil Dep. at 199:20-201:15, 208:14-209:4 & 210:8-19 (This is example was not designated by Cook but is applicable to the Rule 26(a)(2)(C) Disclosure # 18).
[26] Exh. A, Rheudasil Dep. at 192:24-196:9
[27] Exh. A, Rheudasil Dep. at 205:20-206:1.
[28] *Lang*, 217 F.3d at 924.
[29] Fed. R. Evid. 702.
[30] *Gopalratnam v. Hewlett-Packard Co*., 877 F.3d 771, 781 (7th Cir. 2017) (quoting *Manpower, Inc. v. Ins. Co. of Pa*., 732 F.3d 796, 808 (7th Cir. 2013) (further citations omitted.)).

in the field would reasonably rely."[31]  Where an expert cannot point to studies, records, or data on which he based his opinion, then that opinion is properly excluded because it is "not well-grounded in the scientific method."[32]

As the Supreme Court noted, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."[33]  An expert "who invokes 'my expertise' rather than analytic strategies widely used by specialists is not an expert as Rule 702 defines that term."[34]  Rather, the Seventh Circuit has reiterated: "[a]n expert who supplies nothing but a bottom line supplies nothing of value to the judicial process."[35]  Dr. Rheudasil's status as a treating physician does not exempt him from this standard.[36]

The summary of the facts *supra* indicate that Dr. Rheudasil's non-treatment related testimony will not be helpful to the jury because he fails to explain his methodology or to base his opinion on sufficient facts and data, and therefore, this Court should conclude that these opinions offer "nothing of value to the judicial process."[37]  His opinions on safety and efficacy are nothing more than subjective speculation based on his experience as a vascular surgeon and not based upon qualified opinion formed from reliable methodology.[38] Dr. Rheudasil's testimony regarding

---

[31] *Gopalratnam,* at 781 (quoting *Manpower,* at 809).

[32] *Porter v. Whitehall Labs., Inc*., 9 F.3d 607, 614 (7th Cir. 1993).

[33] *Gen. Elec. v. Joiner*, 522 U.S. 136, 146 (1997); *see also, e.g*., *Stachon v. Woodward*, No. 2:12-CV-440, 2015 WL 5692109, at *6 (N.D. Ind. Sept. 28, 2015) ("Neese's confirmation that he gave his opinions to a reasonable degree of scientific certainty is insufficient.") (citing *Gen. Elec*., at 146).

[34] *Zenith Elec. Corp. v. WH–T Broad. Corp*., 395 F.3d 416, 419 (7th Cir. 2005); *see also U.S. v. Mamah*, 332 F.3d 475, 478 (7th Cir. 2003) ("The court is not obligated to admit testimony just because it is given by an expert.").

[35] *Zenith Elec. Corp*., 395 F.3d at 419 (collecting cases of reiteration).

[36] *See, e.g*., *Higgins v. Koch Dev. Corp.,* 794 F.3d 697, 705 (7th Cir. 2015) (affirming exclusion of physician on issue of causation, reasoning that experience diagnosing and treating a condition does not make a doctor qualified to assess its genesis, and noting that the proponent of the testimony failed to put forth evidence that the doctor has particularized experience and training).

[37] *Wendler,* 521 F.3d at 791.

[38] Exh. A, Rheudasil Dep. at 27:9-17 & 57:25-58:5.

7

any risk-benefit analysis must also be limited to what information he had or relied upon in deciding to implant the Celect filter in Brand prior to her spine surgery.  His opinions regarding the risks and benefits of IVC filters, and of the Cook Celect in particular, are not percipient observations developed during his treatment of Brand, and he performed no scientific testing or analysis using reliable methods to form an opinion that would support his subjective and speculative conclusions.[39]  Thus, his opinions should be limited to those involving Brand's treatment.

## C.    Conclusion

For the reasons set forth above, Plaintiff seeks an Order that excludes any testimony from Dr. Rheudasil that does not meet the requirements of Federal Rule of Evidence 702 and *Daubert,* including but not limited to his opinions on the safety and efficacy of IVC filters generally and the Celect in particular.

Respectfully submitted this 20th day of July, 2018.

*/s/ Joseph N. Williams*
Joseph N. Williams, Atty. No. 25874-49
RILEY WILLIAMS & PIATT, LLC
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317) 633-5270
Facsimile: (317) 426-3348
Email:  jwilliams@rwp-law.com
*Liaison Counsel to Plaintiffs' Steering Committee*

---

[39] Exh. A, Rheudasil Dep. at 54:6-56:23 (Nothing about Mrs. Brand's experience with the filter caused him to stop using the Celect for his subsequent patients); 97:15-99:13 (He has implanted the Celect IVC filter before and after Brand's surgery and did not lose confidence in the filter); 59:23-64:2,  97:15-99 & (All IVC filters perforate to some extent, perforation is nearly always asymptomatic and not clinically significant, and he is concerned only with clinically significant filter outcomes); 192:24-206:1 (Mrs. Brand's experience was a rare case in which a patient experienced a known complication that can occur with any IVC filter and that the remaining fragments posed little risk to her); 214:25-215:24 (He performed no testing in his practice to support his conclusions).

Michael W. Heaviside, Esq.
HEAVISIDE REED ZAIC, A LAW
CORPORATION
910 17th Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 223-1993
mheaviside@hrzlaw.com

Ben C. Martin, Esq.
THE LAW OFFICES OF BEN C.
MARTIN
3710 Rawlins Street, Suite 1230
Dallas, TX  75219
Telephone: (214) 761-6614
Facsimile: (214) 744-7590
bmartin@bencmartin.com

David P. Matthews, Esq.
MATTHEWS AND ASSOCIATES
2509 Sackett St.
Houston, TX  77098
Telephone: (713) 522-5250
Facsimile: (713) 535-7184
dmatthews@thematthewslawfirm.com
*Plaintiffs' Co-Lead Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

*/s/ Ben C. Martin*_____
Ben C. Martin