IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

_____

This Document Relates to Plaintiff

*Tonya Brand*
No. 1:14-cv-06018-RLY-TAB

_____

## COOK DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE EXPERT OPINIONS OF DR. ALAN LITSKY

Plaintiff seeks to pile on medical and engineering testimony by offering unqualified, cumulative opinions through Dr. Alan Litsky in addition to her other medical and engineering opinions offered by other experts. The Court should exclude Dr. Litsky's expert testimony in this case for three independent reasons.

First, Dr. Litsky is not qualified to opine regarding IVC filters. He is a professor of orthopedics and biomedical engineering who has spent most of his career working in orthopedics and dealing with orthopedic devices. Excerpts from Deposition of Alan S. Litsky, M.D., Sc.D. in *Brand* ("Litsky Dep. II"), dated May 22, 2018 at 10:1-14, attached as Exhibit A. He did not deal with IVC filters at all before he became involved in a state-court lawsuit against Cook[1]—a lawsuit in which the Texas state court excluded his testimony before trial earlier this year. In short, Dr. Litsky has the wrong expertise for this case.

---

[1] *Pavlock v. Cook*, Cause No. 2017-03885 (Harris County Texas, 80th Judicial District).

Second, Dr. Litsky's opinions are duplicative of the opinions of three of the plaintiff's other experts: Drs. Robert McMeeking, Gregory Gordon, and Harlan Krumholtz. Thus, Dr. Litsky's testimony would be needlessly cumulative and would not help the jury—an essential requirement for the admission of expert testimony.

Third, some of Dr. Litsky's opinions are irrelevant. For example, he opines that the Celect's design makes it especially susceptible to fracturing at the cap. But it is undisputed that Brand's filter did not fracture at or near the cap. Dr. Litsky also opines on the scanning-electron-microscope images in his report, but his opinions on these images are irrelevant because he concedes that the surface markings that he observed had nothing to do with Brand's fracture. Ex. A, Litsky Dep. II at 110:11-114:14. Irrelevant opinions will not help the jury to determine a fact at issue, and thus should be excluded under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny.

## ARGUMENT

### I. Dr. Litsky Is Not Qualified To Testify Regarding the Design of IVC Filters.

Ms. Brand has the burden to establish admissibility of Dr. Litsky's opinions by a preponderance of the evidence. *Lewis v. CITGO Petrol. Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). In determining an expert's qualifications, the Seventh Circuit has repeatedly reminded litigants that it is not enough for an expert to be generally qualified in an area: the expert must be qualified to answer the <u>specific</u> question that he or she is venturing to answer. *See, e.g.*, *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010). A district court therefore must look individually at each specific conclusion drawn by the expert. *Id*. Expert testimony must be excluded where the expert's conclusions are rooted in knowledge and training that the expert does not have. *See Hall v. Flannery*, 840 F.3d 922, 930 (7th. Cir. 2016) (citing cases). This is true for both doctors and

engineers. As this Court has noted, "simply possessing a medical degree does not qualify [a doctor] as an expert in all medical fields." *Higgins v. Koch Dev. Corp.*, No. 3:11-cv-81-RLY-WGH, 2013 WL 6238650, at *3 (S.D. Ind. Dec. 3, 2013). The key question is not whether an expert is qualified <u>in general</u>, but whether the expert's qualifications provide sufficient foundation for an opinion on a <u>specific</u> topic. *See, e.g.*, *Gayton*, 593 F.3d at 617-18. In sum, the expert must have the <u>right kind</u> of expertise—expertise that is <u>specific</u> to the subject matter. Expertise at a high level of generality will not do.

On these standards, Dr. Litsky lacks the qualifications necessary to offer his opinions here. He has no specialized knowledge about or experience with IVC filters or their use,[2] outside of whatever knowledge he picked up working on this case and the prior state-court case from which he was excluded. More specifically:

- He does not work with IVC filters outside of litigation. Ex. A, Litsky Dep. II at 12:5-7, 14:13-15:25.

- Before this case and the state-court case, he did not hold himself out as an expert on the placement or retrieval of IVC filters or on the risks and benefits of using IVC filters. *Id.* at 16:1-16; Excerpts from Deposition of Alan S. Litsky, M.D., Sc.D. in *Pavlock (Texas State Court)* ("Litsky Dep. I"), dated February 9, 2018, at 27:24-28:17, 32:3-24, 34:1-20, attached as Exhibit B.

- He does not prescribe IVC filters. Ex. B, Litsky Dep. I at 308:6-7.

- He has never had to decide whether a patient needed an IVC filter. *Id.* at 308:17-21.

- He does not place IVC filters. Ex. A, Litsky Dep. II at 15:13-20; Ex. B, Litsky Dep. I at 308:4-5.

- He has never retrieved IVC filters. *Id.* at 32:18-24.

---

[2] Dr. Litsky testified that he may have observed placement of an IVC filter during his residency in the 1980s, but that is obviously not relevant experience for this case.

- He has never published any articles or given any presentations on the IVC or IVC filters other than for purposes of litigation. Ex. A, Litsky Dep. II at 12:25-13:5; Ex. B, Litsky Dep. I at 21:14-23; 28:7-17.

- He has never designed an IVC filter, or indeed any other device for the vascular system. Ex. A, Litsky Dep. II at 14:13-19

- He has never done any consulting work for any company in the IVC filter industry on IVC filters.  Ex. B, Litsky Dep. I at 25:12-21.

- He has never been involved in any testing relating to the IVC or of IVC filters. Ex. A, Litsky Dep. II at 8:20-23; 15:8-12; 44:12-25 Nor has he ever published any work involving IVC filters or the vena cava. *Id*. at 12:25—13:5.

- He has never performed a failure analysis on an IVC filter generally, and has not examined the issue of perforation of the IVC by IVC filters specifically. *Id.* at 47:23-48:2; Ex. B, Litsky Dep. I at 306:11-308:3

- He has never examined any IVC filters other than Cook's IVC filters. Ex. A, Litsky Dep. II at 39:14-18.

- He has not treated vascular conditions, the very conditions that IVC filters are designed to treat. Ex. B, Litsky Dep. I at 30:5-13; 31:3-32:14; 308:4-21

The fact that Dr. Litsky has had no experience with IVC filters outside of litigation is particularly important. On remand from the Supreme Court in *Daubert*, the Ninth Circuit observed that "[o]ne very significant fact to be considered is whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995). The Ninth Circuit emphasized that it could "not ignore the fact that a scientist's normal workplace is the lab or the field, not the courtroom or the lawyer's office," and that "experts whose findings flow from existing research are less likely to have been biased toward a particular conclusion by the promise of remuneration." *Id.* When the Rules of Evidence were

revised in 2000, the Advisory Committee quoted the first passage above in explaining how Rule 702 should be applied. Fed. R. Evid. 702 Advisory Committee Notes, 2000 Amendments.

Dr. Litsky's training, experience, and teaching have been in <u>orthopedics</u>, and his research has focused on "hard tissues" such as bone (he concedes that the IVC is not a "hard tissue") for "orthopedic, dental, [and] veterinary applications." Ex. A, Litsky Dep. II at 9:14-10:14; Ex. B, Litsky Dep. I at 17:14-25, 20:10-23; 26:2-16; 28:3-23; 305:5-7, 306:3-21. He simply has the wrong expertise to testify about IVC filters—or even more generally about vascular diseases and their treatment, for that matter. Therefore, all his opinions are inadmissible, and the Court should exclude them in their entirety under Rule 702.

## II. Dr. Litsky's Opinions Regarding the Design of the Celect IVC Filter Are Duplicative of the Opinions of Three of the Plaintiff's Other Experts.

Even if the Court decides that Dr. Litsky is qualified to offer his opinions in this case, the Court then must decide whether to exclude his testimony because its probative value is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403; *see also Krik v. Exxon Mobil Corp.*, 870 F.3d 669, 674 (7th Cir. 2017). Dr. Litsky's testimony is entirely duplicative of other experts that plaintiff plans to call at trial, so the Court should exclude his testimony on that independent ground.

Dr. Litsky concluded that the Celect was defectively designed because it does not have a "perforation limiter," and that its design accounts for its alleged failure in Ms. Brand's case. Ex. A, Litsky Dep. II at 151:2—152:15. He further opines that the published version of the OUS study underrepresented the Celect's perforation rate and that he performed a differential diagnosis on Ms. Brand. *Id.* at 168:8-20; Expert Report of Alan Litsky, M.D., Sc.D. dated April

5

30, 2018, at pg. 15 ("Litsky Rept."), attached as Exhibit C. But all these opinions duplicate opinions offered by the Plaintiff's other experts.

### A. Dr. Litsky Is Cumulative of Dr. McMeeking.

Dr. Robert McMeeking, plaintiff's lead engineering expert, also proposes to testify, just as Dr. Litsky proposes, that the Celect is defective for the very same reason that Dr. Litsky offers—*i.e.*, because it lacked "perforation limiters." Excerpts from the Expert Report of Robert McMeeking, PhD., dated April 30, 2018, at pg. 4-5, 51 ("McMeeking Rept."), attached as Exhibit D. Dr. McMeeking bases his opinions generally on the same literature and documents that Dr. Litsky bases his opinions on (*compare* Ex. C, Litsky Report at Ex. 1 (Litsky Reliance List) *with* Ex. D, McMeeking Report at Appendix 3 (McMeeking Reliance List). Dr. Litsky acknowledges that he and Dr. McMeeking share the same opinion about the Celect:

> Q. Are you relying on any of the work or conclusions or analysis of Dr. McMeeking for your opinions in this case?
> A. His analysis and mine are kind of complementary in the sense that he did all the analytical stuff and looked at things from a very theoretical point of views…So we've talked about that. He's explained to me what he's done
> I could not reproduce his equations. I can follow them as he explains what's going on. And independently looking from his approach and from mine, we reached *the same conclusions*.
> \* \* \*
> A. We were running on parallel tracks and got to *the same place*[.]

Ex. A, Litsky Dep. II at 157:24-158:14; 159:1-2 (emphasis added, objection omitted). Allowing Dr. Litsky to testify about his design-defect theories would be needlessly cumulative of what Dr. McMeeking already plans to say.

### B. Dr. Litsky Is Cumulative of Dr. Gordon.

Likewise, Dr. Litsky's medical-imaging testimony would be cumulative of Dr. Gregory Gordon's proposed testimony. Dr. Gordon is an interventional radiologist who specializes in the

6

examination of medical imaging and reviewed Ms. Brand's medical imaging and the OUS study imaging. Excerpts from the Expert Report of Gregory Gordon, M.D., dated April 30, 2018, at pg. 1 ("Gordon Rept."), attached as Exhibit E. Dr. Litsky acknowledged in his deposition that Dr. Gordon has the expertise with interpreting imaging and experience with filters. Ex. A, Litsky Dep. II at 32:16-23. Dr. Litsky himself is not an interventional radiologist or an expert on interventional radiology. *Id.* at 16:11-16, Ex. B, Litsky Dep. I at 30:19-31:2. Because of this, he admits that he must defer to radiologists like Dr. Gordon when it comes to reviewing medical imaging:

> Q. Would you consider a radiologist to be more qualified and have a better capacity to read and interpret CT images[?]
> A. Certainly I think the guys who do it every day for a living would do it better than I would.

*Id.* at 33:8-13 (objection omitted). In fact, Dr. Litsky admitted that he is particularly relying on Dr. Gordon's opinions about Ms. Brand's medical imaging:

> Q. Did you rely on his reading and interpretation of the CT images or the other images that he was showing to you for purposes of your report?
> A. Yes.
> Q. So you're not lending your own reading or interpretation to the imaging?
> A. No.

*Id.* at 67:2-8. And, what's more, one of the bases for Dr. Litsky's opinion that the Celect's filter is defective is Dr. Gordon's opinions about the OUS study:

> Q. Do you know whether the OUS study showed any perforations, given that definition?
> A. I think that what they reported and what independent investigators have found looking at the same images and the same data are different. I think they reported that they didn't see anything, when experts for both sides in this case, Dr. Timperman and *Dr. Gordon*, saw significant numbers of penetrations.

7

*Id.* at 169:25-170:7 (emphasis added). Dr. Litsky's image-related opinions add nothing to the case beyond what Dr. Gordon already intends to say, and Dr. Gordon is clearly more qualified as an interventional radiologist to discuss these imaging opinions than Dr. Litsky.

Dr. Litsky's opinion relating to the differential diagnosis he claims to have performed is also cumulative of Dr. Gordon's opinions. Dr. Litsky's differential diagnosis purports to determine that the allegedly defective design of the Celect caused Ms. Brand's filter to perforate, tilt, and fracture. Ex. C, Litsky Expert Rept. at pg. 15. Dr. Gordon comes to the same conclusion. Ex. E, Gordon Brand Rept. at pg. 16. Unlike Dr. Gordon, who is a currently practicing interventional radiologist, Dr. Litsky has not performed a clinical differential diagnosis in nearly 30 years. Ex. A, Litsky Dep., 55:12-21;187:16-188:1. Therefore, not only are Dr. Litsky's differential-diagnosis opinions cumulative, he is not qualified to offer them in the first place.

### C. Dr. Litsky Is Cumulative of Dr. Krumholz.

Finally, Dr. Litsky's opinions on the OUS study also parrot those of Dr. Harlan Krumholz. Both Dr. Litsky and Dr. Krumholz opine that the OUS study was defective. *Compare* Ex. C, Litsky Expert Rept at pg. 17 *with* Excerpts from the Expert Report of Harlan Krumholz, M.D., SM, dated April 30, 2018, at pg. 8-11 ("Krumholz Rept."), attached as Exhibit F. Dr. Litsky acknowledged reading and "simultaneously" developing his opinions with Dr. Krumholz. He suggested he "would be in the same place" with or without Dr. Krumholz's analysis and effectively acknowledged the similarity of the two opinions on this subject. Ex. A, Litsky Dep. II at 160:22-161:20. As such, Dr. Litsky's opinions on the OUS study and other literature would simply be cumulative of testimony from other plaintiff's experts and thus not helpful to the jury (especially given his lack of qualifications to speak to such matters).

In short, Dr. Litsky's proposed testimony substantially overlaps with the testimony of three other experts. His opinions add no value to this case and should be excluded under Rule 403 for this additional, independent reason.

### III. Dr. Litsky's Opinions Regarding His Examinations of Exemplar Filters and Ms. Brand's Filter Are Not Relevant to This Case and Therefore Would Be Unhelpful to the Jury.

All evidence, including expert evidence, must be relevant to be admissible. *See* FED. R. EVID. 401 & 402. Evidence that has no relationship to any of the issues in the case is unhelpful to a jury and is therefore irrelevant. *See United States v. Brown*, 871 F.3d 532, 534 (7th Cir. 2017). Based on Dr. Litsky's own admissions, many of his opinions are irrelevant in this case.

Dr. Litsky examined the surfaces of exemplar Celect filters and Ms. Brand's fractured filter. Ex. C, Litsky Rept. at 5-12. He says that he found a few imperfections on the surfaces of some Celect filters, and determined that Ms. Brand's filter suffered both fatigue fractures and damage from Dr. Rheudasil cutting the legs as part of the removal procedure. *Id*. But these points are entirely irrelevant to the disputed issues in this case, for several reasons. First, Dr. Litsky admitted at his deposition that the microscopic surface defects on the Celect did not cause Ms. Brand's filter to fail. Ex. A, Litsky Dep. II at 110:11-114:14. Second, he simply states that the fractures were due to fatigue, which is not in debate. Third, he states that the cut surfaces were due to Dr. Rheudasil's removal procedure, but that too is not in debate and is already contained in the procedure records; Litsky need not testify to it. *Id.* at 69:25-70:8. All this testimony is therefore irrelevant by Dr. Litsky's own admission, and the Court should exclude it.

### CONCLUSION

Given his lack of qualifications and the overlap between his opinions and the Plaintiff's other experts, and consistent with the state-court ruling in Texas in the *Pavlock* case, this Court

should not permit Dr. Litsky to testify at trial here. He does not meet Rule 702 standards. Thus, the Cook Defendants respectfully ask the Court to exclude the opinions and testimony of Dr. Alan Litsky entirely. In the alternative, if the Court allows Dr. Litsky to testify at trial, the Court should preclude him from giving any testimony and offering any opinions relating to the topics of the Celect's susceptibility to fracture, any differential diagnosis, or any study, including the OUS study.

Respectfully submitted,

/s/ Charles F. Webber
Charles F. Webber (# 215247)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 S. 7th Street
Minneapolis, Minnesota  55402
Telephone:  (612) 766-7000
Facsimile:   (612) 766-1600
E-Mail:  chuck.webber@faegrebd.com

Andrea Roberts Pierson (# 18435-49)
John T. Schlafer (# 28771-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-Mail:  john.schlafer@faegrebd.com

          James Stephen Bennett (# 22869-02)
          FAEGRE BAKER DANIELS LLP
          110 W. Berry Street, Suite 2400
          Fort Wayne, Indiana  46802
          Telephone: (260) 424-8000
          Facsimile: (260) 460-1700
          stephen.bennett@faegrebd.com

*Counsel for the Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

## CERTIFICATE OF SERVICE

I hereby certify that on July 20, 2018, a copy of the foregoing was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.  Lead Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

          /s/ Charles F. Webber

US.118767241.06