**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND          Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION           MDL No. 2570

_____

This Document Relates to:

    *Brand v. Cook Medical, Inc. et al.,*
    Case No. 1:14-cv-06018-RLY-TAB

_____

**THE COOK DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO**
**EXCLUDE SPECIFIC TREATING PHYSICIAN TESTIMONY**

    The Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical

Incorporated), and William Cook Europe ApS (collectively "Cook" or "the Cook Defendants"),

hereby move this Court, pursuant to Federal Rule of Evidence 702, to exclude certain testimony

of Drs. Mark Rheudasil and Thomas Morrison, two of Plaintiff's treating physicians. Dr.

Rheudasil is the vascular surgeon who inserted and retrieved the Celect inferior vena cava

("IVC") filter by which Plaintiff alleges she was injured. Dr. Morrison is the neurosurgeon who

performed a six-hour anterior lumbar interbody fusion ("ALIF") procedure immediately after Dr.

Rheudasil inserted the filter and provided exposure (i.e., moved the IVC and other abdominal

contents aside to gain access to the spine through Plaintiff's abdomen). These treaters have

proffered certain opinions that fail to meet the standards for admission of expert testimony under

Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its

progeny. For this reason, and those described below, these opinions should be excluded.

**I.      Legal Standard for Admission of Expert Testimony**

    "Expert testimony is designated as such by its reliance on 'scientific, technical, or other

specialized knowledge.'"  *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757 n.2 (7th Cir. 2004) (citing Fed. R. Evid. 702).  As such, the Seventh Circuit does not distinguish treating physicians from other experts when the treating physician is offering opinions based on "scientific, technical, or other specialized knowledge."  *Id.*  In its application of the *Daubert* standard, the Seventh Circuit employs a three-step analysis: (1) the expert's reasoning or methodology underlying the testimony must be scientifically reliable; (2) the witness must be qualified as an expert by knowledge, skill, experience, training, or education; and (3) the testimony must assist the trier of fact to understand evidence or to determine a fact in issue. *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007).  The party proffering the expert must show these factors by a "preponderance of proof."  *United States v. Allen*, 207 F. Supp.2d 856, 869 (N.D. Ind. 2002).

Cook notes that the bulk of Dr. Rheudasil's and Dr. Morrison's disclosed opinions and proposed testimony in this litigation is properly focused on their respective decisions and treatment relating to Ms. Brand.  Cook is not challenging these proper opinions and testimony as a part of this Motion.  However, Plaintiff has identified certain opinions by both Dr. Rheudasil and Dr. Morrison in her expert disclosure that these witnesses are not qualified to offer and/or have not used reliable methodology to derive.

## II.    Dr. Rheudasil's Inadmissible Opinions

Dr. Rheudasil offers inadmissible opinions in two categories.  First, he opines on the cause(s) of Plaintiff's filter failure.  Second, he opines that filter perforation leads to filter fracture.  For the following reasons, he cannot be allowed to offer either opinion.

### A.    Dr. Rheudasil Cannot Opine on Causation.

Dr. Rheudasil was asked at his deposition whether there was "anything [he] did that caused or contributed to this filter failure."  Excerpts from Deposition of Mark Rheudasil, dated

2

February 28, 2018 ("Rheudasil Dep."), at 170:22-23, attached as **Exhibit A**; *see also* Excerpts from Plaintiff's Rule 26(a)(2)(C) Disclosures ("Plaintiff's Disclosure"), pp. 3-5, attached as **Exhibit B**.  Over appropriate objection, he responded "No."[1]  *Id.* at 170:24-25.  Before he is allowed to opine on what did or did not cause Plaintiff's filter to fail, though, Dr. Rheudasil "must withstand *Daubert* scrutiny" like any other witness who seeks to proffer expert testimony.  *Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 704 (7th Cir. 2015).  Among other things, that means that 1) he must be qualified as an expert by knowledge, skill, experience, training, or education; and 2) his opinions must be based on scientifically reliable reasoning or methodology.  *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007).  The proponent of an expert witness—here, the Plaintiff—has the burden under Rule 702 to establish admissibility by a preponderance of the evidence.  *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

As to qualifications, Dr. Rheudasil's status as an experienced vascular surgeon who inserted the IVC filter in Plaintiff does not qualify him to opine on what <u>caused</u> the filter to fail.  *Higgins*, 794 F.3d at 704-05 (7th Cir. 2015) (finding a board-certified treating pulmonologist with twenty years of experience not qualified to opine on etiology of diseases she had diagnosed in the plaintiff).  Dr. Rheudasil testified that he had never seen anything like Plaintiff's filter failure in his 30-year career.  Rheudasil Dep. at 98:20-23.  He had also never seen a Celect filter fracture before Plaintiff's did.  *Id.* at 99:3-5.  Like the pulmonologist who was excluded as a causation expert in *Higgins*, Dr. Rheudasil has never treated a patient whose filter failed like Plaintiff's and has thus never had occasion to consider a cause for it.  Nor did he study the issue so as to close the gap on his lack of experience: he testified that he did not do any research or

---

[1] By raising this motion, the Cook Defendants do not imply that Dr. Rheudasil was negligent in his treatment of Ms. Brand, only that he is not well-positioned under *Daubert* to opine on this issue.

tests to determine the cause of her filter fracture.  Rheudasil Dep. at 12:8-16.  Plaintiff cannot establish that Dr. Rheudasil is qualified to opine on causation in this case.

As to methodology, an expert must systematically consider and rule out alternate causes in order to give a reliable, scientifically valid, admissible opinion regarding causation.  *Higgins*, 794 F.3d at 705 (citing *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010)).  Here, Dr. Rheudasil's only commentary on causation was that he had done nothing to cause or contribute to Plaintiff's filter failure.  Rheudasil Dep. at 170:22-25.  At no time did he provide an alternate explanation for the filter's perforation, fracture, or any other problem experienced by Plaintiff.  On the contrary, he affirmatively noted that he does not know what caused the filter to fracture and has no opinion on that subject.  Rheudasil Dep. at 12:17-20; 13:1-3.  Plaintiff cannot establish that Dr. Rheudasil considered any alternate causes at all, let alone that he systematically ruled in and ruled out all possible causes.  His opinion that he did not cause or contribute to the filter's failure is thus inadmissible.  *Higgins*, 794 F.3d at 705.

Because Dr. Rheudasil is not qualified to opine on the cause(s) of Plaintiff's filter failure and has not systematically considered and ruled out possible causes, his opinions on causation are inadmissible.

> **B.     Dr. Rheudasil Cannot Opine on Perforation's Relationship to Fracture.**

Dr. Rheudasil also opined that filter perforation leads to filter fracture.  Rheudasil Dep. at 161:1-2; 200:13-14; 201:5-6.  However, he never suggests that this opinion finds any support in medical literature;[2] on the contrary, he once included that claim in the middle of a statement he described as "my personal opinion," for which he didn't "want to quote literature."  *See* Rheudasil Dep. at 199:20-201:7.  His "personal opinion" is not based on scientific data regarding

---

[2] It is worth noting that Plaintiff's expert, Dr. Gordon, made this same claim in his report but admitted at deposition that he could not support it from the literature.  This is detailed in the concurrently filed motion to exclude Dr. Gordon's testimony.

his patients: he does not systematically track his patients, *see* Rheudasil Dep. at 215:21-24, and would not know whether fracture was statistically more prevalent in those with perforation. His opinion is grounded in nothing more than his anecdotal observations, which by themselves are unreliable and inadmissible. *See, e.g.*, *Chapman v. Maytag Corp.*, 297 F.3d 682, 688 (7th Cir. 2002) ("Personal observation is not a substitute for scientific methodology and is insufficient to satisfy *Daubert's* most significant guidepost."); *Clark v. Takata Corp.*, 192 F.3d 750, 758-59 (7th Cir. 1999) (expert opinion testimony excluded where the opinion was based solely on that expert's "experience"). Thus, Dr. Rheudasil should not be permitted to offer the opinion that perforation leads to fracture.

**III.    Dr. Morrison's Unsubstantiated Opinions Are Inadmissible Under *Daubert.***

Dr. Morrison is a neurosurgeon who does not claim to have expertise regarding IVC filters. Nevertheless, he too opines on the causes of Plaintiff's filter failure. He is simply not qualified to offer the opinions described in Section II. Even if he was qualified, though, he failed to employ a reliable (or any) methodology in forming these opinions. As such, they should be precluded from use at trial.

**A.    Dr. Morrison Is Not Qualified To Discuss Issues Pertaining to IVC Filters.**

Cook does not question Dr. Morrison's qualifications as a neurosurgeon to perform and discuss Ms. Brand's ALIF. However, as this Court has noted, "merely possessing a medical degree does not qualify a [doctor] as an expert in all medical related fields." *Higgins v. Koch Dev. Corp.*, 997 F.Supp.2d 924, 931 (S.D. Ind. 2014) (internal quotations omitted). The key question is not whether the expert is qualified in general, but whether the expert's qualifications provide sufficient foundation for an opinion on a particular topic. *See Gayton v. McCoy*, 593 F.3d 610, 617-18 (7th Cir. 2010).

Dr. Morrison repeatedly testified that he is not an expert regarding IVC filters. Excerpts from Deposition of Thomas Morrison, dated January 30, 2018 ("Morrison Dep."), at 98:20-99:19, attached as **Exhibit C**. Indeed, Dr. Morrison spent a significant amount of time during his deposition discounting his own filter expertise. He stressed that he does not personally use filters in his neurosurgery practice. *Id.* at 50:17-22. He underscored his unfamiliarity with the medical literature on filters. *Id.* at 51:1-3. He highlighted that he is "ignorant" about the various brands of filters and their respective complaint rates. *Id.* at 17:18-18:5. He emphasized that he is not an expert in filters, filter design, or filter failure rates. *Id.* at 98:24-99:19. He is not even familiar with the risk factors for which an IVC filter might be placed. *Id.* at 52:6-21.

All of that being so, it is clear that Dr. Morrison is not qualified to discuss issues pertaining to IVC filters.

 **B. Dr. Morrison Is Not Qualified To Opine as to the Causes of Ms. Brand's Alleged Filter Complications.**

Despite his lack of qualifications, Dr. Morrison has opined—and Plaintiff apparently intends to elicit at trial—that neither her bone spurs or osteophytes caused Ms. Brand's filter to perforate her IVC and/or fracture. Morrison Dep. 92:8-14, 92:23-93:6, 93:8-21, 93:23-94:9; Plaintiff's Disclosure, p. 6. Like Dr. Rheudasil, he also opined that the ALIF surgery did not cause the filter failure. *Id.* at 19:3-13. As with Dr. Rheudasil, though, Dr. Morrison cannot sidestep the requirements of *Daubert* merely because he is a treating physician. *Higgins*, 794 F.3d at 704. And like Dr. Rheudasil, Dr. Morrison is not qualified to opine on causation and has failed to use a reliable methodology.

In addition to his general lack of qualification regarding IVC filters, Dr. Morrison admits that he has never researched the effects of bone spurs or osteophytes on filters. *Id.* 101:21-23. In fact, Dr. Morrison does not even know what sorts of things can cause filters to perforate or

6

fracture.  *Id.* at 101:17-20.  He is not qualified to say whether osteophytes, bone spurs, or surgery <u>can</u> cause perforations or fractures, let alone whether they <u>did</u> cause Plaintiff's filter failure.

Dr. Morrison's methodology is similarly deficient.  As noted above, an expert must systematically consider and rule out alternate causes in order to give a reliable, scientifically valid, admissible opinion regarding causation.  *Higgins*, 794 F.3d at 705 (citing *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010)).  However, Dr. Morrison (like Dr. Rheudasil) never discusses any cause(s) of Plaintiff's filter failure other than the surgery and the osteophytes or bone spurs.  Moreover, he uses unscientific reasoning to rule out those two causes.  His lone rationale for ruling out osteophytes/bone spurs is that he believes they are present in 100% of the population over 20 years old.  Morrison Dep. 99:20-100:16; 91:17-92:7; 92:16-22.  However, he does not address the fact that Plaintiff had numerous osteophytes and that one of them was immediately adjacent to the filter's leg on post-operative images.  *See id.* at 74:2-76:2.  In any event, the fact that a potential cause may be widespread in the population does not mean that it is automatically ruled out.  Dr. Morrison similarly shortchanges the analysis on whether the surgery affected the filter, merely noting that he was operating at L4-5 and the filter was <u>two vertebrae away</u> (at L2-3) and that "it would be like saying – you know, a mile away kind of had anything to do with it."  *Id.* at 99:20-101:10.  He does not cite any literature or even anecdotal evidence to support his claim that a surgery two vertebrae away cannot impact a filter.  Moreover, his argument ignores that Dr. Rheudasil had to pull the vena cava itself aside in order to give Dr. Morrison access to the spine.  *Id.* at 46:25-47:12.  Dr. Morrison does not perform exposures and <u>was not even in the room</u> when Dr. Rheudasil exposed Plaintiff's spine, *id.* at 45:10-16; 68:20-69:13, so he does not even have eyewitness testimony to offer on how the exposure might have impacted the filter.

7

Plaintiff cannot establish that Dr. Morrison is qualified or that he has considered any alternate causes at all, let alone that he systematically ruled in and ruled out all possible causes. He cannot be allowed to offer testimony on what did or did not cause Plaintiff's filter to fail. *Higgins*, 794 F.3d at 705.

### C. Dr. Morrison Is Not Qualified To Opine as to the Efficacy of Ms. Brand's Filter.

Dr. Morrison also opined that Ms. Brand never developed a deep vein thrombosis and that her filter never caught a clot, i.e., that there is no evidence it had occasion to perform the job for which it was deployed.  Morrison Dep. at 98:1-12; 104:18-25; *see also* Plaintiff's Disclosure at 6.  Again, though, he is grossly unqualified to discuss any aspect of filters.  There is absolutely no reason to believe he would recognize subtle signs of a DVT or clot even if he saw them. Moreover, he concedes that he never investigated whether Plaintiff's filter caught a clot and never asked anyone to do so.  Morrison Dep. at 102:13-23.  Thus, he has not employed any methodology at all in offering that opinion.  Dr. Morrison was not looking for DVT or clot, is not an expert who would recognize any subtle signs of one when he saw them, and has never even asked someone qualified (e.g., Dr. Rheudasil) to look into it.  Plaintiff cannot be allowed to present his testimony on this point and mislead the jury into thinking Dr. Morrison knows "whereof he speaks."

### CONCLUSION

For the reasons stated above, the Cook Defendants urge the Court to grant their Motion To Exclude Specific Treating Physician Testimony, and to bar the opinions described herein from the upcoming trial.  Dr. Rheudasil's and Dr. Morrison's opinions on matters of causation and efficacy of the filter do not stem from areas where they hold expertise and were not derived under reliable methods.

US.118997992.01

Respectfully submitted,

Dated: July 21, 2018

*/s/ Andrea Roberts Pierson*

Andrea Roberts Pierson (# 18435-49)
J. Joseph Tanner (# 11856-49)
Nicholas B. Alford (# 31867-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-Mail:  joe.tanner@faegrebd.com
E-Mail:  nicholas.alford@faegrebd.com

*Counsel for the Defendants, Cook Incorporated,*
*Cook Medical LLC (f/k/a Cook Medical*
*Incorporated), and William Cook Europe ApS*

9

US.118997992.01

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 21, 2018, a copy of the foregoing was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.  Lead Counsel for Defendants will serve any non-CM/ECF registered parties.

*/s/ Andrea Roberts Pierson*

US.118997992.01