UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND            Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS   LIABILITY LITIGATION                 MDL No. 2570

_____

This Document Relates to Plaintiff
       Tonya Brand
       Civil Case No. 1:14-cv-06018-RLY-TAB

_____


**<u>COOK DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO BIFURCATE</u>**

The Cook Defendants[1] respectfully ask this Court to separate the compensatory damages

from the punitive damages phase of this trial, using the same jury.

 For similar reasons as led the Court to order bifurcation in the *Hill* case,[2] the Cook

Defendants submit that matters of efficient case administration and fairness call for bifurcation

of this trial into two phases:  one phase dedicated to the determination of liability on Ms. Brand's

compensatory damages claims (defective design and failure to warn) and a second phase

dedicated to the question of liability for and amount of punitive damages.  Bifurcation will

streamline this trial and prevent undue prejudice to the Cook Defendants.  It will enable the jury

to focus on the evidence relevant to the individual claims in an orderly way.  It permits the Court

to reserve the question of choice of law for punitive damages unless and until necessary.  And it

presents no prejudice to Mrs. Brand who maintains a full and fair opportunity to try her claims.

_____

[1] The Cook Defendants in this matter are Cook Incorporated, Cook Medical LLC f/k/a Cook
Medical Incorporated, and William Cook Europe APS.  All references to the "Cook Defendants"
refer to all three entities unless otherwise noted.
[2] This memorandum has been updated as appropriate from the memorandum filed in support of
the motion to bifurcate in *Hill*, but relies on very similar arguments and analysis.

I.      **Standard**

Federal Rule of Civil Procedure 42(b) permits a district court to order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims "for convenience, to avoid prejudice, or to expedite and economize."  The court may separate issues for trial if the separation will prevent prejudice to a party or promote judicial economy.  *Chlopek v. Federal Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007); *Houseman v. United States Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999).  If just one of these criteria is met, the district court may order bifurcation if doing so will not prejudice the non-moving party or violate the Seventh Amendment.[3]  *Cholpek*, 499 F.3d at 700; *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000).  The decision to bifurcate is within the district court's discretion, and its decision will be overturned only upon a clear showing of abuse.  *Houseman*, 171 F.3d at 1121; *McLaughlin v. State Farm*, 30 F.3d 861, 870 (7th Cir. 1994).

The present case presents multiple grounds for bifurcation:  bifurcation will promote judicial economy; it will expedite proceedings; it will prevent unfair prejudice to the Cook Defendants, and it will not prejudice Mrs. Brand.  This is a well-trodden path, and courts have often adopted bifurcation to promote just such convenience and economy.  *See, e.g.*, *Cholpek*, 499 F.3d at 700; *Krocka*, 203 F.3d at 516; *Houseman*, 171 F.3d at 1121; *Vandersteen v. Kelly*, No. 07 C 5632, 2010 WL 659327, at *2-3 (N.D. Ill. Feb. 23, 2010) (collecting cases where courts bifurcated compensatory and punitive damages).  Indeed, this Court reached the same conclusion in opting to bifurcate the *Hill* trial.

---

[3] Because the Cook Defendants propose that the same jury hear the compensatory and punitive damages phases, there is no risk of violating the Seventh Amendment's prohibition on re-examination.

As in *Hill*, the status of this case as an MDL bellwether gives additional weight to the arguments for bifurcation.  If this case proceeds to trial, a fair and orderly presentation of the issues to the jury is essential, not only to serve the interests of the individual litigants in this case but also to maintain the value of the case as a bellwether.  Other courts hearing MDL bellwether cases have used bifurcation to prevent prejudice to defendants.  *See, e.g.*, *In re Actos (Pioglitazone) Products Liability Litigation*, 2014 WL 5461859 at *1 n.6 (W.D. La. October 27, 2014); *see also In re Diet Drugs Products Liab. Litigation*, 369 F.3d 293, 318 (3d Cir. 2004) (suggesting district court consider bifurcation).  Similarly, because the *Brand* case is only the third bellwether in this MDL, targeted compensatory and punitive damages phases are particularly important.  As discussed below, even viewed as a single case, the likelihood of prejudice to the Cook Defendants stemming from a single-phase trial is high.  The significance of that prejudice is augmented by the intent to use this case as one of the bellwethers for hundreds of cases in this MDL.

## II.     Bifurcation of punitive damages will promote judicial economy and sound management.

Based on the anticipated evidence and the law applicable to this case, a bifurcated approach to Mrs. Brand's punitive damages will be most efficient.

### A. As in *Hill*, the evidence relevant to punitive damages is different from the evidence relevant to the liability theories and may properly be reserved until necessary, which will focus and shorten the trial.

Just as in *Hill*, Mrs. Brand rests on claims that the Cook Defendants failed to warn and that the Cook product is defective, both of which require highly technical expert testimony.  Assuming arguendo that the Court permits either or both these claims to go to trial, much of the relevant evidence will consist of the testimony of the treating physicians and expert opinions on warnings and design issues.

It is both feasible and helpful to separate the evidence related to these primary liability theories from the evidence Mrs. Brand may seek to introduce on the issue of punitive damages. The two bodies of evidence do not meaningfully overlap.  In particular, the product liability theories that Mrs. Brand seeks to present do not primarily depend on inquiry into the Cook Defendants' conduct, but on expert evidence of whether a design defect existed and whether physicians were adequately warned of the risk Mrs. Brand encountered.

In contrast, to obtain punitive damages, Plaintiff must present evidence that defendants acted with malice, fraud, gross negligence, or oppressiveness that was not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing." *Gresser v. Dow Chem. Co., Inc.*, 989 N.E.2d 339, 349 (Ind. Ct. App. 2013); *see also* Ga. Code Ann. § 51-12-5.1(b) (noting that punitive damages may be awarded only if "it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.").  These misconduct standards (and the evidence the plaintiff might claim support them) simply are not relevant to the questions of whether a design defect existed or the physician was inadequately warned.  When different legal theories apply, bifurcation of liability phases is appropriate.  *See, e.g.*, *Jackson v. County of Los Angeles*, 29 F. App'x 430, 435-36 (9th Cir. 2001) (holding that bifurcation of liability phases is appropriate when each liability phase depends on a distinct theory); *see generally Hydrite Chem. Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 891 (7th Cir. 1995) ("The judge can bifurcate (or for that matter trifurcate, or slice even more finely) a case at whatever point will minimize the overlap in evidence between the segmented phases or otherwise promote economy and accuracy

in adjudication.").[4]  And courts have bifurcated the punitive damages question because the primary liability theories of product defect and failure to warn do not implicate inquiry into corporate conduct.  *See, e.g.*, *Emerick v United States Suzuki Motor Corp.*, 750 F.2d 19, 22 (3d Cir. 1984) (approving bifurcation of punitive damages in failure-to-warn and product-defect case involving motorcycle kickstand); *see also Scheufler v. General Host Corp.*, 895 F. Supp. 1411, 1414-15 (D. Kan. 1995) (discussing the different evidence needed for actual and punitive damages in deciding to bifurcate the two damages phases).

Here are a few examples of evidence that is irrelevant to the claims for compensatory damages but which Plaintiff might attempt to introduce with respect to her request for punitive damages:[5]

(1) All documents that post-date Mrs. Brand's filter being placed on March 19, 2009.

(2) Marketing documents.

(3) Communications and documents relating to unrelated products.

(4) Evidence of "subsequent remedial measures," including evidence related to the Celect Platinum.[6]

(5) Financial worth evidence.

---

[4] *See also Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 474 (5th Cir. 1986) (holding bifurcation of punitive and compensatory damages in asbestos personal injury trial was proper, given the difference in purpose between punitive and compensatory damages); *Vandersteen*, 2010 WL 659327, at *2 (contrasting purposes of compensatory and punitive damages in deciding to bifurcate).

[5] The Cook Defendants reserve their right to object to the admissibility of any such evidence, and some or all of the items mentioned above may be part of the Cook Defendants' motions in limine.

[6] Cook sought FDA clearance for the Celect Platinum on June 1, 2012, and the FDA cleared the device on July 3, 2012.  *See* Platinum 510(k) FDA Record, Summary, at 4, *available at* https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpmn/pmn.cfm?ID=K121629 (last accessed July 22, 2018).

As in *Hill*, many of these documents (or specific documents within one or more of these categories) will be the subject of forthcoming motions in limine.  However, regardless of the rulings on those motions, these and similar categories of evidence have no bearing on Mrs. Brand's failure-to-warn and product-defect claims and should not be introduced with respect to her claims for compensatory damages.

For example, documents that post-date Mrs. Brand's March 19, 2009 filter placement can have no bearing on her claim of failure to warn, which hinges on content in the label.  The label could not possibly have been affected by information contained in scientific literature or internal company emails that post-date her filter placement.  If admissible at all, such evidence could only be offered to show the Cook Defendants' conduct somehow warrants punitive damages.  Conversely, the Cook Defendants may seek to introduce evidence of good manufacturing and quality assurance practices that post-date Mrs. Brand's filter placement in response to her claim for punitive damages to show its attention to these issues, such as Clinical Evaluation Reports ("CERs") and Corrective and Preventive Actions ("CAPAs").  Those documents would not be relevant to the compensatory phase.

Evidence concerning the Celect Platinum presents similar concerns.  Mrs. Brand would be prevented from offering evidence concerning the Celect Platinum design under Rule 407 as a subsequent remedial measure, but the Cook Defendants may themselves wish to offer evidence related to that design to refute Mrs. Brand's punitive damages claim, and specifically to show that their conduct was not willful and wanton.  Unless the compensatory and punitive claims are bifurcated for trial, the Cook Defendants will be unfairly placed on the horns of a dilemma, forced to decide whether to prejudice their defense against Plaintiff's compensatory damages claim to defend against her punitive damages claim.  Bifurcation resolves these concerns,

eliminates the need for limiting instructions to the jury (which could be quite confusing and potentially ineffective), and likely shortens trial time required for the initial phase.

All told, this is a significant amount of information—multiple years-worth of additional documents and additional witnesses necessary to put such information into context—that would only need to be presented if Mrs. Brand met the high burden of having the question of liability for punitive damages submitted to the jury (which the Cook Defendants submit she cannot do in any event).

Likewise, the *damages* aspects of Mrs. Brand's compensatory and punitive damages claims are based on distinct and non-overlapping evidence. The focus of compensatory damages is on making the plaintiff whole, and Mrs. Brand's evidence concerning compensatory damages will necessarily focus on the extent of her injuries, medical expenses she incurred, the need for future medical care, and the like. In contrast, Mrs. Brand will presumably seek to support her request for punitive damages by offering financial information about the resources of the Cook Defendants (as well as potential evidence of alleged "bad" character or conduct). The financial circumstances of the defendants do not affect the issues of warnings provided with the product or the design of it. *See, e.g.*, *Ely v. Cabot Oil & Gas Corp.*, No. 3:09-CV-2284, 2016 WL 454817, at *6 (M.D. Penn. Feb. 5, 2016) (recognizing conditional relevance of financial evidence and bifurcating request for punitive damages until liability and compensatory damages verdict and court determines whether evidence justifies submitting punitive damages claim to jury).

Pragmatic reasons support bifurcation as well. Separating the two phases will allow the jury to better focus on the measure of damages. *See* Steven S. Gensler, *Bifurcation Unbound*, 75 Wash. L. Rev. 705, 706-07 (July 2000) (describing how bifurcation assists jury decision-making by ordering and simplifying the litigants' presentations and limiting the number of issues the jury

must address at one time).  Furthermore, as noted, some of the evidence Plaintiff wishes to rely

on to support her request for punitive damages will be the subject of motions in limine, and

bifurcation of trial may permit the Court to defer resolving certain motions unless and until the

evidentiary issue actually arises.

Bifurcation also separates two different standards of proof that the jury will be asked to

consider.  Under both Georgia and Indiana law, an award of punitive damages requires proof by

clear and convincing evidence.  *See Gresser*, 989 N.E.2d at 22; Ga. Code Ann. § 51-12-5.1(b).

If the claims are not bifurcated, the Court will need to instruct the jury on both standards of

proof, creating the substantial risk that the jury would either apply the lower preponderance

standard to the request for punitive-damages or the higher clear and convincing evidence

standard to Plaintiff's liability theories.

If the jury ultimately rejects Mrs. Brand's failure-to-warn and product-defect claims,

separating the presentation of her request for punitive damages will have the most salutary effect

of substantially shortening the trial.  In other words, the evidence both sides would present

relevant only to punitive damages would not even need to be presented *unless* a compensatory

verdict for Mrs. Brand justifies such presentation.  *See, e.g.*, *Emerick*, 750 F.2d at 22 (approving

bifurcation in part because "the trial court correctly noted that the Emericks were not entitled to

submit the issue of punitive damages to the jury until they first established Suzuki's liability for

compensatory damages").  Especially given the complexity of evidence involved in the primary

liability theories, this bifurcated approach offers economy of time and resources.  It also reserves

potentially difficult evidentiary gatekeeper decisions this Court may need to make—and the trial

time related to such objections and responses—until such decisions are clearly necessary.

**B.  The Court can defer any choice of law analysis until necessary with respect to the issue of punitive damages.**

If the Court bifurcates the question of punitive damages from the resolution of Mrs. Brand's claims for compensatory damages, it also can avoid undertaking a choice of law analysis as to what law applies to the punitive damages request.  While Cook acknowledges that Georgia law applies to Mrs. Brand's claim for compensatory damages, Cook generally urges this Court to apply Indiana law to the issue of punitive damages as a matter of uniformity in this MDL and under the "significant relationship" approach in Restatement (Second) of Conflict of Laws (1971).  Under the "significant relationship" approach detailed in the Restatement, courts must determine which state—regarding each particular issue—has the most significant relationship to the occurrence and the parties.  In undertaking that analysis, courts examine the Section 145 contacts in light of the general principles stated in Section 6.[7]

As discussed at length in the *Hill* brief, Indiana is the state in which most all of the conduct relevant to the question of punitive damages occurred:  Indiana is the site of the Cook Defendants' corporate headquarters, where they held meetings, oversaw studies, and made their

---

[7] The Section 145 contacts include "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145(2) (1971). "These contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.* The section 6 general principles include

> (a) the needs of the interstate and international systems,
> (b) the relevant policies of the forum,
> (c) the relevant policies of other interested states and the relative
> interests of those states in the determination of the particular issue,
> (d) the protection of justified expectations,
> (e) the basic policies underlying the particular field of law,
> (f) certainty, predictability and uniformity of result, and
> (g) ease in the determination and application of the law to be
> applied.

*Id.* § 6(2).

marketing, labeling, sales, and product design decisions.  It also has a special interest in regulating corporations headquartered in the state, particularly on a question of whether and to what extent the company is subject to punitive damages.  Indiana therefore has the most significant relationship regarding these issues and the question of deterrence, and, under the Restatement approach, Indiana law should apply to Ms. Brand's request for punitive damages. Cook acknowledges that Georgia decided 13 years ago not to follow the Restatement approach but submits this case present grounds to revisit that issue.  *Cf. Dowis v. Mud Slingers, Inc.*, 621 S.E.2d 413, 419 (Ga. 2005).

In any event, bifurcation offers a big advantage on this choice of law issue:  If the Court bifurcates the determination of punitive damages from liability and compensatory damages, the Court may avoid the need to decide choice of law in the first phase of the trial and may never need to make a determination at all.  The jury may find no liability for compensatory damages, or the Court may determine that the evidence is insufficient to justify a second trial phase addressing punitive damages.  In either event, the punitive damages claim would not go forward, and the Court would not need to address which state's law would have governed that claim.

If the request for punitive damages proceeds to jury resolution and there is *any* question about the correct law to apply to it, bifurcation is a prudent choice.  Notably, another district court in the Seventh Circuit has specifically suggested bifurcation of punitive damages for this very reason:  "[P]rudence suggests that the Court should consider structuring the trial to attempt to preserve the choice-of-law issue for appellate review.  The Court therefore proposes to bifurcate the issue of punitive damages from the issues of liability and compensatory damages." *Smith v. I-Flow Corp.*, 753 F. Supp. 2d 744, 749 (N.D. Ill. 2010).  The Cook Defendants ask this Court to follow the same pragmatic approach.

**III.    Bifurcation of punitive damages will prevent unfair prejudice to the Cook Defendants.**

Besides conserving judicial resources and potentially expediting trial, bifurcation of the compensatory and punitive claims will prevent unfair prejudice to the Cook Defendants.  As noted above, certain evidence potentially relevant to the request for punitive damages is irrelevant to Plaintiff's liability claim and associated calculation of compensatory damages, and that evidence would unfairly infect the jury's deliberations if the two claims were tried together. As discussed in the summary judgment brief, the evidence on which Plaintiff bases her punitive damages claim is insufficient as a matter of law to support that claim under the heightened standards that both Indiana and Georgia impose for such a punitive award.  But if the Court disagrees and allows the punitive-damage claim to go to the jury, the Court should be especially wary of the serious risk of unfair prejudice to the Cook Defendants and should protect against that risk by ordering a phased trial.

**A.  Certain non-financial evidence would be unfairly prejudicial to the Cook Defendants if presented before a liability determination.**

The Cook Defendants anticipate that Plaintiff may seek to introduce in support of her punitive damages claim certain evidence that is wholly irrelevant to the liability and compensatory issues here and would be inadmissible as to those claims.  However, if the compensatory and punitive claims are not bifurcated—even with proper jury instructions in place—the jury might nevertheless consider such evidence in determining liability and compensatory damages, resulting in unfair prejudice to the Cook Defendants.  *See Emerick*, 750 F.2d at 22 (upholding trial court's decision to bifurcate punitive damages where defendant's conduct was irrelevant to product liability theory and allowing evidence of defendant's conduct would have confused the jury and prejudiced the defendant); *Vandersteen*, 2010 WL 659327, at

*2 (concluding that defendant's risk of prejudice if compensatory and punitive damages were not addressed separately was real and there was no reason for the court to take the risk); *Scheufler*, 985 F. Supp. at 1414 (noting that, without bifurcation, jury could improperly consider evidence relevant only to punitive damages during its determination of actual damages).[8]

As discussed in Section II.A, a significant amount of evidence related to product development and knowledge of the Cook Defendants is potentially relevant to Plaintiff's punitive damage claim but clearly irrelevant to her compensatory damage claim.  Asking jurors to somehow separately consider these categories of information, as they would be required to do— yet make simultaneous determinations of liability for compensatory and punitive damages—asks too much in a case already fraught with complexity and nuance.  Moreover, the Cook Defendants plan to move to exclude a significant amount of this evidence, including evidence of company documents and scientific literature that post-dates Mrs. Brand's implant, because the information is not relevant to compensatory damages, and Mrs. Brand is not entitled to punitive damages based on the undisputed evidence in this case.  Bifurcating the question of liability for compensatory damages from the question of liability for punitive damages is the only realistic way that the Court can protect the Cook Defendants from undue prejudice stemming from this evidence.

---

[8] Courts have also recognized that evidence relevant to the damages phase (such as the extent of the plaintiff's injuries) can be unfairly prejudicial when introduced during the liability phase. *See Chlopek*, 499 F.3d at 701 (upholding district court's decision to bifurcate liability and damages phases of trial where evidence related to plaintiff's injury was irrelevant to liability phase and was likely to cloud the issues and prejudice the defendant if presented); *Miller v. New Jersey Transit Auth. Rail Operations*, 160 F.R.D. 37, 42 (D. N.J. 1995) (noting that the "complexity of the case and the severity of Plaintiff's injuries would prejudice the Defendants so severely if issues of liability and damages were not bifurcated that the Defendants would not receive a fair trial").

**B.  Evidence of the Cook Defendants' financial position would be unfairly prejudicial if presented before a liability determination.**

Plainly, evidence of corporate wealth is not relevant to the question of liability on Plaintiff's failure-to-warn and design-defect theories.  If the compensatory and punitive phases are not separated, however, jurors will hear evidence related to the Cook Defendants' net worth while they are considering the merits of Plaintiff's claims for compensatory damages.  This juxtaposition would be fundamentally unfair to the Cook Defendants, and jury instructions cannot prevent that prejudice.  Courts have frequently bifurcated compensatory and punitive damage claims to prevent just this prejudice:  the jury's knowledge of the defendant's financial condition when determining liability and setting a compensatory award.  *See, e.g.*, *Jones v. Cargill, Inc.*, 490 F. Supp. 2d 978, 988 (N.D. Iowa 2007) (deeming bifurcation of punitive damages phase appropriate and noting that "[b]ifuration of trial into separate phases to consider punitive damages apart from liability avoids the potential that evidence pertinent to punitive damages, such as the financial status of Defendant, will improperly prejudice the jury's determination of liability"); *Collens v. City of New York*, 222 F.R.D. 249, 254 (S.D.N.Y. 2004) (stating "issues of punitive damages should normally be bifurcated from issues of liability so that proof of wealth is not admitted at the trial on liability and compensatory damages"); *North Dakota Fair Hous. Council, Inc. v. Allen*, 298 F. Supp. 2d 897, 899 (D. N. D. 2004) (granting motion to bifurcate punitive damages phase from liability and compensatory damages phase because "[e]vidence of the defendants' net worth, although relevant to issues concerning the claim for punitive damages, can have an adverse effect on jury deliberations concerning liability and compensatory damages").  And at least one federal appellate court has stated that bifurcation of punitive damages is the "preferred method" for accommodating the various interests when evidence of the defendant's financial condition is to be presented.  *Smith v. Lightning Bolt*

*Prods.*, 861 F.2d 363, 373-74 (2d Cir. 1988).  Reflecting the same policy, approximately 14 states statutorily provide for bifurcation of compensatory and punitive damages claims.  *See, e.g.*, Minn. Stat. § 549.20, subd. 4 (2016) (requiring bifurcation of compensatory and punitive claims on request of any party and barring evidence of defendant's financial condition in compensatory phase).

Here, the Cook Defendants are among Indiana's largest employers.  Plaintiffs have received certain financial documents in production including income statements, balance sheets, and annual reports from the Cook Defendants.  None of this evidence bears on the Cook Defendants' liability for compensatory damages.  If this extraneous evidence is presented before the determination of liability and compensatory damages, it is certainly possible and even likely that the information would improperly affect the jury's determination of the appropriate amount of compensatory damages.  As the U.S. Supreme Court noted in *Honda Motor Company v. Oberg*, "presentation of evidence of a defendant's net worth creates the potential that juries will use their verdicts to express biases against big businesses[.]"  512 U.S. 415, 432 (1994).  This consideration weighs heavily in favor of bifurcation.  *See State Farm Fire & Cas. Co. v. Woods*, 896 F. Supp. 658, 660 (E.D. Tex. 1995) (bifurcation is "wisest course" where defendant could be severely prejudiced by presentation of evidence of its net worth during the calculation of actual damages).  Bifurcation is simply imperative to avoid jury confusion and risk of unfair prejudice to the Cook Defendants.  *See Hall v. Babcock & Wilcox Co.*, 69 F. Supp. 2d 716, 733 (W.D. Pa. 1999) (granting defendants' motion for a new trial so separate trials on compensatory and punitive damages claims could be held to avoid prejudice to the defendants).

Indeed, given the magnitude of the interest at stake for the Cook Defendants and the potential for unfair prejudice in a single-phase trial, the need for bifurcation of punitive damages

in this case goes beyond the typical considerations of judicial economy and avoidance of prejudice and compels the conclusion that the Cook Defendants have a due process right to bifurcation under the Fourteenth Amendment.  Punitive damage awards imposed arbitrarily without proper procedural safeguards violate due process protections.  *Honda*, 512 U.S. at 432.  In this case, the procedural safeguard necessary to prevent an arbitrary award of punitive damages is a bifurcated trial.

Under *Connecticut v. Doehr*,[9] when a party makes a due process challenge to a state's role in a property deprivation, the inquiry is as follows:

> [F]irst, consideration of the private interest that will be affected by the prejudgment measure; second, an examination of the risk of erroneous deprivation through the procedures under attack and the probable value of additional or alternative safeguards; and third, in contrast to *Mathews*, principal attention to the interest of the party seeking the prejudgment remedy, with, nonetheless, due regard for any ancillary interest the government may have in providing the procedure or foregoing the added burden of providing greater protections.

501 U.S. 1, 11 (1991).

As to the first consideration—the private interest affected by the decision to bifurcate—the Cook Defendants certainly have a substantial private interest at stake:  the potential punitive damages award.  On the second consideration—the risk of erroneous deprivation through a unitary trial and the probable value of a bifurcated trial—as described above, many courts and state legislatures have acknowledged the risk of a jury erroneously considering evidence of a defendant's net worth when determining liability and calculating compensatory damages, and

---

[9] The *Doehr* case modifies the existing *Mathews v. Eldridge* test as it applies to cases involving private litigants.  *See Mathews v. Eldridge*, 424 U.S. 319 (1976).

noted the efficacy of a bifurcated trial in resolving that risk.  In this case, ordering bifurcation would prevent unfair prejudice to the Cook Defendants, satisfying the second requirement.

The third requirement—balancing the interests of the party seeking bifurcation with the burden bifurcation would impose on the government—is satisfied as well.  As discussed in Section II, a two-phase trial in front of a single jury is likely to conserve the government's resources rather than create a burden, and the government's interest in holding a fair proceeding far outweighs any procedural inconvenience that might occur.  Because bifurcation of the punitive phase would prevent unfair prejudice to the Cook Defendants and would not be overly burdensome to the government, the Cook Defendants are entitled to bifurcation as a matter of due process.

Moreover, the financial documents, which are only relevant to punitive damages, are highly confidential and entitled to special protection, as this Court has recognized.  *See generally* March 15, 2017 Order on Discovery of Cook Group, Inc.'s Financial Information, No. 4108, at 2.  Given the highly confidential nature of this information, the information should be subject to public disclosure during trial only if absolutely necessary, i.e., only after Mrs. Brand has first met her burden of proving that liability exists on the failure-to-warn or product-defect claims and this Court has determined, based on the even higher standard of proof required for punitive damages, that the jury should consider the issue.  *Cf. Indus. Metalicas Marva, Inc. v. Lausell*, 172 F.R.D. 1, 8-9 (D. P.R. 1997) (approving bifurcation of liability and damages (including discovery) in infringement case in part because of concerns over defendant's confidential documents).

In sum, the prejudice to the Cook Defendants stemming from having irrelevant and prejudicial evidence spilled into a single-phase trial would *alone* be sufficient reason to grant

bifurcation.  Combined with the other factors discussed throughout this Memorandum, the need for bifurcation is compelling.

### IV.      Mrs. Brand is not prejudiced by bifurcation.

Finally, bifurcation of the liability and compensatory damages claims from the punitive damages request will not prejudice Mrs. Brand at all, let alone unfairly prejudice her.  Under the Cook Defendants' proposal, if Mrs. Brand proves one or more of her claims for compensatory damages and the Court finds the evidence sufficient to create a jury question on punitive damages, then she gains the full opportunity to present and argue her case for punitive damages to the jury.  She cannot reasonably contend that she should be able to present evidence relevant to punitive damages before the jury determines liability:  A plaintiff does not suffer prejudice by not being allowed to present evidence irrelevant to the issue at hand.  *See, e.g.*, *Chlopek*, 499 F.3d at 70; *Krocka*, 203 F.3d at 516.

### V.      At minimum, the Court should bifurcate the amount of punitive damages.

The Court, alternatively, could choose to bifurcate the determination of the amount of punitive damages into a separate phase.  Indeed, under Georgia law, trial courts are required to separate the jury's determination of the *amount* of punitive damages from the issue of punitive damages *liability*.  O.C.G.A. § 51-12-5.1(d) provides:

> (1) ... In any case in which punitive damages are claimed, the trier of fact shall first resolve from the evidence produced at trial whether an award of punitive damages shall be made. This finding shall be made specially through an appropriate form of verdict, along with the other required findings.

> (2) If it is found that punitive damages are to be awarded, the trial shall immediately be recommenced in order to receive such evidence as is relevant to a decision regarding what amount of damages will be sufficient to deter, penalize, or punish the defendant in light of the circumstances of the case.

District courts sitting in diversity follow this statute and bifurcate the amount of punitive damages into a separate phase of trial.  *See, e.g.*, *Cooper v. Marten Transp., Ltd.*, No. 1:10-CV-3044-AT, 2014 WL 11517830, at *7 & n.11 (N.D. Ga. May 23, 2014) (quoting O.C.G.A. § 51-12-5.1(d)); *Gaddy v. Amer. Interstate. Ins. Co.*, No. 1:14-cv-1928-WSD, 2018 WL 1478134, at *3 (Mar. 27, 2018) ("Because this is a diversity case and Plaintiff has asserted a claim for punitive damages, the Court finds that, should the jury in the first phase determine that Plaintiff is entitled to punitive damages, the Court must bifurcate the trial to allow for separate consideration of the amount of punitive damages that Plaintiff should be awarded.").  Moreover, as the Georgia Supreme Court has recognized, trifurcation is sometimes appropriate under O.C.G.A. § 51-12-5.1(d) and would be appropriate for this case:  "[C]ourts must conduct either bifurcated or trifurcated trials under the statute . . . . Under the trifurcated trial, the jury would determine liability and the amount of compensatory damages in the first phase, liability for punitive damages in the second phase, and the amount of punitive damages in the third phase." *Webster v. Boyett*, 496 S.E.2d 459, 461 (1998).  While trifurcated cases are the exception, this is a case that would warrant exceptional treatment.  *See In re Bendectin Litigation*, 857 F.2d 290, 314-16 (6th Cir. 1988) (upholding trifurcated products liability trial against drug manufacturer).

When the question of the amount of punitive damages is separated from other issues in the trial, evidence relevant only to the amount of punitive damages—in particular, evidence as to defendant's financial status—is reserved for that phase.  *See, e.g.*, *Galack v. PTS of Amer., LLC*, No. 4:13-CV-0288-HLM, 2015 WL 11578452, at *3 (N.D. Ga. Sept. 9, 2015).  This Court could adopt a similar approach under Federal Rule of Civil Procedure 42(b).

## VI.  Conclusion

Bifurcating the punitive damages phase of trial offers several advantages in the interests of prudent trial management—enhancing efficiency and deferring resolution of various issues until necessary.  It also protects against prejudice to the Cook Defendants and presents no prejudice to Mrs. Brand.  For the reasons detailed above, the Cook Defendants ask this Court to bifurcate the compensatory and punitive damages claims and to try those claims in a phased trial to the same jury as it opted to do in the *Hill* case.  At minimum, the Court should bifurcate determination of the *amount* of punitive damages and evidence related thereto from the other issues at trial.

Dated: July 23, 2018                     Respectfully submitted,


                                         /s/ Andrea Roberts Pierson
                                         Andrea Roberts Pierson
                                         J. Joseph Tanner
                                         John T. Schlafer
                                         FAEGRE BAKER DANIELS LLP
                                         300 North Meridian Street, Suite 2700
                                         Indianapolis, Indiana  46204
                                         Telephone:      (317) 237-0300
                                         Facsimile:      (317) 237-1000
                                         andrea.pierson@faegrebd.com
                                         joe.tanner@faegrebd.com
                                         john.schlafer@faegrebd.com

                                         James Stephen Bennett
                                         FAEGRE BAKER DANIELS LLP
                                         110 W. Berry Street, Suite 2400
                                         Fort Wayne, Indiana  46802
                                         Telephone:      (260) 424-8000
                                         Facsimile:      (260) 460-1700
                                         stephen.bennett@faegrebd.com

                                         *Attorneys for Defendants Cook Incorporated, Cook
                                         Medical LLC f/k/a Cook Medical Incorporated,
                                         William Cook Europe APS*


### CERTIFICATE OF SERVICE

I hereby certify that on July 23, 2018, a copy of the was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.  Lead Co-Counsel for Defendants will serve any non-CM/ECF registered parties.

                                         /s/Andrea Roberts Pierson

US.118749538.01