**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND          Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION           MDL No. 2570

_____

This Document Relates to the Following Actions only:

    Tonya Brand – 1:14-cv-06018-RLY-TAB

_____

**THE COOK DEFENDANTS' RESPONSE TO PLAINTIFF'S**
**MOTIONS TO EXCLUDE "IMPERMISSIBLE" TESTIMONY OF**
**DR. MARK RHEUDASIL, DR. THOMAS MORRISON,**
**DR. SCOTT KELLER, DR. PHU THAI, AND DR. RICHARD REISMAN**

Plaintiff has filed a series of cookie-cutter motions seeking to exclude portions of the

deposition testimony of her treating physicians Dr. Mark Rheudasil [Dkt. 8552, 8553],[1] Dr.

Thomas J. Morrison III [Dkt. 8548, 8549], Dr. Scott Keller [Dkt. 8592, 8593], Dr. Phu B. Thai

[Dkt. 8565, 8567], and Dr. Richard Reisman [Dkt. 8571, 8572].  All of these motions contend

that Plaintiff's treating doctors are somehow actually experts retained by Cook, and Plaintiff

argues in each that the Court should exclude the doctors' testimony because Cook disclosed the

doctors' opinions through a Rule 26(a)(2)(C) summary rather than through a Rule 26(a)(2)(B)

report.

As a threshold matter, the Court should address Plaintiff's objections to Cook's

designations of the treating doctors' depositions when it addresses all the deposition

designations, as the Court did in the _Hill_ case.  Addressing the treating doctor designations at that

_____

[1] Plaintiff also filed a separate motion raising a _Daubert_ challenge to some of Dr. Rheudasil's testimony.  See Dkt.
8622.  Because that motion raises different issues than the group of motions listed above, Cook will address it in a
separate response.

time will enable the Court to make its rulings with with an accurate and complete picture of what the contested testimony is and the context in which it arises.  However, should the Court determine instead to address Plaintiff's objections now, Cook provides the following response.  Because these five motions all recite the same legal analysis *verbatim*, Cook will address all five motions together.

Plaintiff's argument in these motions rests on a mistaken and unduly narrow reading of Rule 26(a)(2) and a mischaracterization of the case law applying that Rule.  Rule 26(a)(2) permits non-retained experts like treating physicians to testify fully about the circumstances, preexisting knowledge, and risk-benefit considerations that went into the treatment of a patient without the need for a formal expert report.    Treating physicians also may testify as fact witnesses about experiences, information learned, and opinions reached in their medical practice after treatment of a patient concludes without the necessity of a written report.  Rule 26(a)(2)(B) requires formal signed reports *only* from experts who offer *additional*, *post*-treatment opinions formed at the request of a party *for the purpose of litigation*.  Cook's disclosures and designations of the treating doctors' testimony include no such opinions.  Moreover, even if the Court were to adopt Plaintiff's narrow view of the permissible scope of a non-retained expert's testimony, the passages to which Plaintiff objects fall within even that restrictive definition.  The Court should deny Plaintiff's motions.

## ARGUMENT

The Cook Defendants urge the Court to deny Plaintiff's motion to exclude what she calls "impermissible" testimony of her own treating physicians Drs. Rheudasil, Morrison, Keller, Thai, and Reisman.  Plaintiff asks the Court to exclude this highly relevant testimony from the doctors who actually treated her simply because she does not like some of the things her doctors

2

have to say.  Plaintiff would instead have the jury hear only from her own paid experts, whose testimony (not surprisingly) she likes better.  Most prominently, Plaintiff wants the jury to hear that her retained experts think the filters were a bad idea, without the context of the actual risks and benefits unique to Plaintiff's specific health conditions that influenced her doctors' real-world treatment decisions.  Nothing in Rule 26 supports the exclusion of this testimony, and the Court should deny Plaintiff's motion and let the jury hear *all* of the facts relating to Plaintiff's own doctors' decisions to implant or retrieve her filters.

**I.       Rule 26(a)(2)(B) Does Not Require Cook to Provide Formal Expert Reports From Treating Physicians Whom Cook Did Not Retain or Employ to Prepare New Opinions for Litigation.**

Plaintiff bases her motion to strike or exclude on Federal Rule of Civil Procedure 26(a)(2), which imposes disclosure requirements for expert testimony.  The Rule defines different standards for expert disclosure depending on the nature of the expert.  For an expert retained by a party to provide expert testimony in the litigation, the party must provide a formal expert report containing detailed information.  For other experts, including treating physicians, the party need only identify the subject matter of the testimony and provide a summary of the facts and opinions.  The language of the Rule provides in relevant part:

> **(B)** *Witnesses Who Must Provide a Written Report*.  Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness--*if the witness is one retained or specially employed to provide expert testimony in the case*….[2] The report must contain:
>
> > **(i)** a complete statement of all opinions the witness will express and the basis and reasons for them;
> > **(ii)** the facts or data considered by the witness in forming them;
> > **(iii)** any exhibits that will be used to summarize or support them;
> > **(iv)** the witness's qualifications, including a list of all publications authored in the previous 10 years;

---

[2] Rule 26(a)(2)(B) also requires a formal report if the expert is "one whose duties as the party's employee regularly involve giving expert testimony."  Plaintiff does not claim that any of Plaintiff's treating doctors is a Cook employee.

(**v**) a list of all other cases in which, during the previous 4 years, the
witness testified as an expert at trial or by deposition; and

(**vi**) a statement of the compensation to be paid for the study and testimony
in the case.

(**C**) *Witnesses Who Do Not Provide a Written Report*. Unless otherwise
stipulated or ordered by the court, if the witness is not required to provide a written
report, this disclosure must state:

(**i**) the subject matter on which the witness is expected to present evidence
under Federal Rule of Evidence 702, 703, or 705; and

(**ii**) a summary of the facts and opinions to which the witness is expected to
testify.

Fed. R. Civ. P. 26(a)(2) (emphasis added).

Plaintiff argues that her own treating physicians are actually Cook's "retained experts"
under Rule 26(a)(2)(B) (at least as to some of their opinions) and that Cook was therefore
required to provide a formal report concerning their intended testimony.  (Plaintiff does not
explain how such reports would have been possible; for example, how Cook could have
compelled Plaintiff's doctors to prepare or sign such reports.)  Because Cook did not provide
formal Rule 26(a)(2)(B) reports for these treating physicians, Plaintiff argues, the Court should
exclude the treating physicians' opinion testimony.  *See, e.g.*, Dkt. 8553 at 1-2.[3]  Plaintiff does
not dispute that the summaries that Cook provided for these treating doctors are adequate under
Rule 26(a)1)(C).

The Court should deny Plaintiff's motions on several grounds.  First, Plaintiff admits that
Cook did not employ or specially retain her treating physicians in this case, putting the doctors'
testimony outside the scope of Rule 26(a)(2)(B).  Second, even apart from Plaintiff's concession,
the undisputed evidence establishes that Cook did not in fact "retain or specially employ" any of
Plaintiff's treating physicians to prepare opinions or provide expert testimony in this case.  Third,

---

[3] Because all of Plaintiff's motions make the same arguments word-for-word, all citations to Plaintiff's arguments
will be to the Rheudasil motion, Dkt. 8553, unless otherwise noted.

none of the challenged testimony involves new opinions the doctors formed for purposes of litigation.

**A.    Plaintiff concedes that Cook did not "specially retain or employ" Plaintiff's treating physicians to provide expert testimony in this case.**

The Court should deny Plaintiff's motions because Plaintiff acknowledges that her five treating doctors have ***not*** in fact been "specially retained or employed" by Cook to provide expert testimony, and Rule 26(a)(2)(B) and its requirement of a formal report therefore does not apply.  Plaintiff argues in each of her five motions:

> [A]ll of the disclosed opinions that were solicited from Dr. Rheudasil that were not formed during his course of treating Brand must be excluded because ***Dr. Rheudasil has not been "retained or specially employed" by Cook to provide this testimony***, and Dr. Rheudasil has not submitted a report.

Dkt. 8553 at 5 (emphasis added); *see also* Dkt. 8549 at 5 ("Dr. Morrison has not been 'retained or specially employed' by Cook to provide this testimony"); Dkt. 8567 at 5 ("Dr. Thai has not been 'retained or specially employed' by Cook to provide this testimony"); Dkt. 8572 at 5 ("Dr. Reisman has not been 'retained or specially employed' by Cook to provide this testimony"); Dkt. 8593 at 5 ("Dr. Keller has not been 'retained or specially employed' by Cook to provide this testimony").

Plaintiff's admission that Cook did not retain her treating doctors as experts undermines her argument for exclusion.  As quoted above, Rule 26(a)(2)(B) applies only "if the witness is one retained or specially employed to provide expert testimony in the case."  Here, given Plaintiff's admission that Cook did ***not*** "retain or specially employ" any of these doctors, Rule 26(a)(2)(B) by its own terms does not apply, and no report is required.  The Rule did not oblige Cook to provide formal expert reports for the treating doctors, and the omission of such reports does not limit the testimony that those doctors may offer at trial.  The Court should therefore deny Plaintiff's motions.

US.118948848.04

**B.     Cook did not "specially retain or employ" Plaintiff's treating physicians to provide expert testimony in this litigation.**

Even without Plaintiff's admissions, the record here establishes beyond doubt that Cook did not "retain or specially employ" any of Plaintiff's treating doctors to provide expert testimony in the case, and Rule 26(a)(2)(B) therefore does not apply.   None of the opinions at issue resulted from Cook asking any of Plaintiff's treating doctors to review additional materials or to form new opinions for the litigation beyond the opinions the doctors already had.  Given these undisputed facts, Rule 26(a)(2)(B) does not apply, and the lack of a formal Rule 26(a)(2)(B) report does not require the exclusion of any of these doctors' testimony.

Rule 26(a)(2) permits non-retained experts like Plaintiff's treating physicians to testify fully about all the aspects of their treatment of Plaintiff—including their own previous experience with the Celect filter and other facts that influenced that treatment—without the need to prepare a formal report.  The Rule requires such reports *only* from experts who offer *additional*, *post*-treatment opinions formed at the request of a party *for the purpose of litigation*, which the treating doctors here did not do.  The cases that Plaintiff cites in her motion expressly recognize this rule:

> The distinction between retained and non-retained experts arises most often in the context of physicians and other healthcare providers. *See* [*Coleman v. Am. Family Mut. Ins. Co.*, 274 F.R.D. 641, 645 (N.D. Ind. 2011)](*citing* Fed. R. Civ. P. 26 advisory committee's note).  In the case of physicians, the designation of retained or non-retained is generally determined by the reason the physician was sought. *Id.* at 645. **A physician sought only for treatment is not "retained for the purposes of litigation," and even if the treating physician will offer an opinion on causation, the physician may not be retained within the meaning of Rule 26 as long as she was not retained expressly to review materials and form such an opinion.** *Id.* at 645.

*Guar. Trust Life Ins. Co. v. Am. Med. & Life Ins. Co.*, 291 F.R.D. 234, 236-237 (N.D. Ill. 2013) (emphasis added).  Another of Plaintiff's cited cases notes the same distinction:

US.118948848.04

Thus, as an example, a "treating physician" is a 26(a)(2)(C) witness because he is a "percipient witness" who has firsthand knowledge of the events giving rise to the litigation; on the other hand, a physician recruited for the purpose of giving testimony—rather than treatment—is a 26(a)(2)(B) witness because he has no such firsthand involvement in the events giving rise to the ligation. *Id.* Put differently, *the treating physician is a 26(a)(2)(C) witness because his opinion arises "from his ground-level involvement in the events giving rise to the ligation," and not because of his "enlistment" as an expert*. *Id.*

*Malibu Media, LLC v. Harrison*, 2014 WL 6474065 at *2 (S. D. Ind. 2014) (emphasis added)

(quoting *Downey v. Bob's Disc. Furniture Holdings, Inc.,* 633 F.3d 1, 6 (1st Cir. 2011)).

Here, Plaintiff does not and cannot deny (1) that each of her treating physicians was "recruited" by her for purposes of treating her, and (2) that each of those physicians had actual "ground-level involvement" in that treatment.  Plaintiff does not suggest that Cook retained any of her doctors to review materials and form the expert opinions at issue or that Cook "enlisted" any of them as its expert to offer such opinions, and she certainly provides no evidence to support any such claim.  Absent such a showing, Rule 26(a)(2)(B) does not apply, and the Court should deny Plaintiff's motion.

## C.   Plaintiff's narrow view of expert testimony permitted under Rule 26(a)(2)(C) is inconsistent with controlling case law.

Instead of applying this established method of distinguishing between the testimony of a Rule 26(a)(2)(B) retained expert and that of a Rule 26(a)(2)(C) non-retained expert, Plaintiff urges a much narrower rule that would bar any non-retained expert from offering "any expert testimony not limited to his observations during [Plaintiff's] treatment."  Dkt. 8553 at 2.  The Court should reject Plaintiff's proposed narrow standard for multiple reasons.

### 1.   Plaintiff's proposal is inconsistent with the structure and language of Rule 26(a)(2).

Plaintiff's argument ignores the structure of Rule 26(a)(2).  The way that Rule 26(a)(2) is set up, a party must provide a formal report for any expert who falls within the definition of

US.118948848.04

subsection (B)—that is, any expert who is "retained or specially employed to provide expert testimony in the case." For any expert who does ***not*** fall within the definition in subsection (B), however, a party need provide only a summary of the anticipated testimony. *See* Fed. R. Civ. P. 26(a)(2)(C) (addressing disclosure requirement "if the witness is not required to provide a written report"). In other words, subsection (B) imposes a specific disclosure requirement for a defined group of experts, and subsection (C) imposes a lesser disclosure requirement for any expert that does not fall within subsection (B)'s definition.

Nothing in either subsection (B) or subsection (C) requires the exclusion of a treating doctor's knowledge or opinions simply because the knowledge was acquired or the opinions were formed before the doctor began treating a particular patient, as long as those facts and opinions do not result from requests aimed at litigation. If you are an expert witness who has been retained to offer new opinions at trial, you are covered by Rule 26(a)(2)(B); if you are any other kind of expert witness, you are covered by Rule 26(a)(2)(C). Plaintiff's motions ignore the structure of Rule 26(a)(2).

> **2.      The case law does not support Plaintiff's proposed reading of Rule 26(a)(2).**

Nothing in the case law supports Plaintiff's restrictive view of Rule 26(a)(2)(C). Although several cases mention testimony about what a non-retained expert has "observed," *see, e.g., Guar. Trust*, 291 F.R.D. at 237, these are descriptions, not requirements. As the committee comments to Rule 26 remark, the most common type of non-retained expert witness is a treating physician, *see* Rule 26 adv. comm. comments to 2010 amendments, and such physicians nearly always talk about their observations. But Plaintiff cites no case law that has ever held that a treating physician must provide a formal Rule 26(a)(2)(B) report simply because the doctor may

intend to testify to a fact or opinion that is not based on the doctor's observation during the course of a patient's treatment, as Plaintiff urges here.

Of the eight cases Plaintiff cites in her motions, only three actually hold that some or all of an expert's proposed testimony requires a formal Rule 26(a)(2)(B) report, and all of those holdings rest on new work that the experts performed on behalf of parties for purposes of litigation, not on non-litigation-related opinions that were not based on observations during the events underlying the action.

First, in *Meyers v. AMTRAK*, 619 F.3d 729, 735 (7th Cir. 2010),[4] the Seventh Circuit addressed whether the pre-2010-amendment version of Rule 29(a)(2) (which lacked subsection (C)), required a treating doctor who intended to opine on the cause of the plaintiff's injuries to provide a formal Rule 26(a)(2)(B) report. The court noted that the doctor had not formed an opinion about the cause of the plaintiff's injuries during his treatment of the plaintiff, *see id.* at 732, but had "prepared letters with opinions as to the causation of [plaintiff's] injuries at the request of [plaintiff's] attorney, specifically for the purpose of litigation," *id.* at 735. In other words, the doctor had been "specially retained or employed" by the plaintiff's attorney "to provide expert testimony in the case," and thus fell within the scope of Rule 26(a)(2)(B). The *Meyers* decision does not suggest that Rule 26(a)(2)(B) required a formal

---

[4] This Court has been of two minds concerning whether the Seventh Circuit's holding in the *Meyers* case survived the later amendments to Rule 26(a)(2), which added subdivision (a)(2)(C). Some decisions have commented that the amendment of the Rule superseded the holding in *Meyers*. *See, e.g., Williams v. Thorntons Inc.*, 2018 U.S. Dist. LEXIS 68510, *3 n.1 (S.D. Ind. 2018) (concluding that *Meyers'* reasoning "does not apply" to the amended version of Rule 26(a)(2), "which fills the gap created by the previous version of the Rule's failure to address the disclosure requirements for unretained expert witnesses, such as treating physicians"); *Valentine v. CSX Trans.*, 2011 WL 7784120 at *3-4 (S.D. Ind. May 10, 2011) (observing committee notes on Rule 26(a)(2)(C) (stating physicians are an example of experts not required to provide written reports) are at odds with the holding in *Meyers*). Other decisions have concluded that the *Meyers* holding is still good law. *See, e.g., Slabaugh v. LG Elec. USA, Inc.*, 2015 WL 1396606 (S.D. Ind. Mar. 26, 2015) (finding the addition of Rule 26(a)(2)(C) "does not disturb the holding in *Meyers*"). *See also Higgins v. Koch Dev. Corp.*, 997 F. Supp. 2d 924, 929 (S. D. Ind. 2014) (stating "[i]t is unclear whether [*Meyers*] is superseded by the 2010 amendment to Rule 26, which added subpart (a)(2)(C) and is applicable to expert witnesses who do not fall under the report requirement"). Even assuming that *Meyers* is still good law, however, the *Meyers* holding does *not* support Plaintiff's narrow reading of Rule 26(a)(2)(C), for the reasons discussed in the text.

report because the doctor's causation opinion was not based on his observations during his treatment of the plaintiff.  *See id*. at 734-35.  On the contrary, the doctor's new causation opinion presumably ***was*** based on what he had previously observed in treating the plaintiff, but his testimony was nevertheless within the scope of Rule 26(a)(2)(B) because the doctor had been retained to form the opinion for the litigation.

Similarly, in *Malibu Media, LLC v. Harrison*, 2014 WL 6474065 at *3 (S. D. Ind. 2014), the court addressed whether an expert offered to provide general testimony regarding issues raised in a patent infringement case was a Rule 26(a)(2)(B) retained expert or a 26(a)(2)(C) non-retained expert.  *Id*. at *3-*4.  The court concluded that the witness was a Rule 26(a)(2)(B) retained expert based on (1) the absence of any showing that the expert was involved in the case's underlying events and (2) the expert's formation of his opinions over a year after those events made him.  The court therefore excluded his testimony for lack of an adequate expert report.  *Id*. at *7-*8.  Again, the decision rested on the fact and timing of the expert's involvement with the underlying events, not on what he had observed during those events.

Finally, in *In re Zimmer Nexgen Knee Implant Prod. Liab. Litig.*, 2015 WL 3799534 at *4 (N.D. Ill. June 17, 2015), the plaintiff sought to introduce the opinion testimony of her treating physician on a number of topics.  Rather than inquire into whether the opinions reflected the doctor's personal observations, as Plaintiff here proposes, Dkt. 8553 at 2, the *Zimmer* court addressed the ***timing*** of the opinions:  which opinions were formed before or during the plaintiff's treatment, and were therefore divorced from any litigation influences, and which were formed after treatment, for the purpose of testimony at trial?  *Id.* at *5 ("[T]he question the court must answer is which of his opinions were formed during his treatment, and which after.").

US.118948848.04

The court concluded that the doctor had formed opinions about (1) the particular forces and stresses at work on the knee, (2) the adequacy of the defendant's testing, and (3) whether the design of the knee caused the plaintiff's knee to loosen *after* his treatment of the plaintiff *in the course of the litigation*, and therefore barred those opinions based on nondisclosure under Rule 26(a)(2)(B).  *Id.* at *4, *9.  However, the court concluded that because the doctor's opinions about the alignment of the plaintiff's implants, the doctor's cementing technique, and the doctor's elimination of several possible causes of plaintiff's loosening were formed *during* the doctor's treatment of the plaintiff, he was permitted to testify to those opinions at trial *notwithstanding* the lack of a Rule 26(a)(1)(B) report.  *Id.* at *5-*8.  Significantly, the court held that the opinions were outside the scope of Rule 26(a)(2)(B) even though the doctor did not actually *reveal* those opinions until a rebuttal report served in the litigation in response to the defendant's expert disclosure.  *See id.* at *2-*3.  Despite this late disclosure, the court concluded that the opinions had actually been *formed* outside the context of the litigation, and were thus exempt from Rule 26(a)(2)(B)'s requirements.  *See id.* at *5-*8 ("the court agrees with Plaintiff that Dr. Klein, as part of his treatment, did rule out certain causes and may testify regarding how he arrived at those conclusions").

The other decisions Plaintiff cites support the broader reading of Rule 26(a)(2)(C), each holding that the treating doctor was a ***non***-retained expert because the doctor's testimony rested on the doctor's pre-litigation knowledge and opinions relating to the treatment of the plaintiff. *See Coleman v. Am. Family Mut. Ins. Co.*, 274 F.R.D. 641, 645 (N.D. Ind. 2011) (granting motion to compel Rule 26(a)(2)(C) summary expert reports for treating physicians, noting: "It would be difficult to conclude that the treating physicians identified here were retained for the express purpose of giving expert testimony. … Nothing in the record suggests that the treating

physicians were sought for any purpose except treatment."); *Valentine v. CSX Trans.*, 2011 WL 7784120 at *3-4 (S.D. Ind. May 10, 2011) (finding no formal report was required because treating physician formed opinions in course of providing treatment rather than in anticipation of litigation); *see also Guar. Trust Life Ins. Co. v. Am. Med. & Life Ins. Co.*, 291 F.R.D. 234, 236-237 (N.D. Ill. 2013) (concluding that expert former CFO "was sought … for his knowledge of the transactions between [defendant] and [plaintiff], not for the purpose of reviewing new materials expressly for litigation" and holding that "that he was not retained for the purposes of litigation, and therefore only a summary disclosure was required").[5]

Of particular note on this point is Plaintiff's citation to this Court's decision in *Martin v. Stoops Buick, Inc.*, 2016 WL 4088132.  *See* Dkt. 8553 at 3.  In *Martin*, the defendant argued that a treating physician the plaintiff had designated as a non-retained expert was in fact a *retained* expert, citing facts that would seem far more compelling than those Plaintiff can offer here:

- The doctor had filed an expert report;
- The doctor first saw the plaintiff as a patient four months after the litigation began;
- The doctor provided an opinion regarding how the termination of her employment and the litigation had affected her;
- the doctor included in his report his hourly rate for deposition and trial testimony; and
- Plaintiff objected to the disclosure of the doctor's file based on work product protection.

*Id.* at *4.  Despite these facts, the court concluded that the doctor was *not* a retained expert and did not need to produce a full report:

---

[5] Plaintiff's citation to *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004), is inapposite to this motion.  The issue in *Musser* was whether a party could elicit expert testimony from people he had disclosed as witnesses but not as *expert* witnesses.  *See id.* at 758 ("even treating physicians and treating nurses must be designated as experts if they are to provide expert testimony").  The court's decision did not turn on any distinction between retained and non-retained experts.

Finally, although the court in *Kondragunta v. Ace Doran Hauling and Rigging Co.*, 2012 WL 1189493 (N.D. Ga 2013), described the distinction between the retained and non-retained expert requirements, it did not apply that standard to the treating doctors but instead gave the plaintiff additional time to determine what sort of reports were required and to submit them. *See id.* at *13.

US.118948848.04

Based on the record as a whole, the court finds the facts tip in favor of finding Dr. Borders is a non-retained treating physician because he indisputably *treated* Plaintiff for over a year. Retained experts do not treat the litigant for whom they provide expert testimony.

*Id.* at *4 (emphasis by court).

In sum, every one of the cases that Plaintiff cites in supposed support of her narrow reading of Rule 26(a)(2)(C) undermines her argument, and instead supports the conclusion that Cook has properly identified Plaintiff's treating doctors as non-retained experts. Plaintiff's motions fail to cite a ***single*** case from ***any*** jurisdiction that has ever granted the relief she seeks here: to exclude based on Rule 26(a)(2)(B) the testimony of a treating physician about the knowledge, opinions, and decisions the doctor employed during the treatment of a patient. The Court should deny Plaintiff's motions.

> 3.    **Plaintiff's her own disclosures and designations of her treating physicians undermine her proposed reading of Rule 26(a)(2).**

The narrow reading of Rule 26(a)(2)(C) that Plaintiff would have the Court apply to Cook's Rule 26(a)(2)(C) disclosures of her treating physicians is also flatly inconsistent with her own Rule 26(a)(2)(C) disclosures for the same treating doctors. Plaintiff's disclosures describe exactly the same type of physician knowledge, opinion, and judgments that Plaintiff objects to in Cook's disclosure.

Perhaps the most glaring example of this contradiction arises in Plaintiff's treatment of Dr. Rheudasil's risk-benefit analyses. Plaintiff asks the Court to bar Cook from offering Dr. Rheudasil's opinion that "[t]he benefits to Mrs. Brand of using the IVC filter outweighed the risks," Dkt. 8553 (quoting Cook disclosures), yet she has disclosed her own intention to present Dr. Rheudasil's opinion that "believed the risk of continuing the attempted retrieval outweighed risk of leaving the filter in place." Bellwether Plaintiff Brand's Designation of Experts and

US.118948848.04

Opinion Testimony at 4, attached as Ex. A.  Risk-benefit analysis is either part of a patient's treatment or it is not—Plaintiff cannot have it both ways.

The parties' respective disclosures for Dr. Rheudasil offer many other examples of Plaintiff's inconsistent treatment of expert testimony.  Plaintiff objects to three specific categories she identifies in Cook's disclosure for Dr. Rheudasil: "(1) Dr. Rheudasil's opinions regarding the safety and efficacy of IVC filters generally and Cook filters specifically; (2) Dr. Rheudasil's testimony regarding other patients and his experience with IVC filters; and (3) Dr. Rheudasil's testimony discussing the risks and benefits of IVC filters."  Dkt. 8553 at 6.  Yet Plaintiff's own disclosures for Dr. Rheudasil unmistakably identify testimony within these very same categories:

- **Safety and efficacy.**

Plaintiff discloses testimony by Dr. Rheudasil concerning:

- "He considered the Tulip and Celect to be equally safe and if he thought one filter had a greater perforation risk than others he would not use it."

- "He does not use the Celect filter anymore."

- "He expects the IFU to be truthful."

- **Unrelated treatment and Use of IVC filters.**

Plaintiff discloses testimony by Dr. Rheudasil concerning:

- "His believes the majority of retrievable filters are not retrieved and are left in the body long term."

- "Her case made him more enthusiastic about filter retrieval."

- "He does not track all of his patients for the results of placing a Celect filter."

- "A retrieval normally takes about 15 minutes."

US.118948848.04

- **Risks and benefits of IVC filters.**

Plaintiff discloses testimony by Dr. Rheudasil concerning:

  o "He considers every commercially available filter equivalent in terms of their PE protection."

  o "He cannot guarantee that other Celect filters he has p[l]aced have not fractured."

  o "Long term filters are associated with an increased risk of thrombosis and the risk of clot."

Bellwether Plaintiff Brand's Designation of Experts and Opinion Testimony at 3-5.  Plaintiff disclosed similar safety, general IVC, and risk/benefit opinions for her other treating physicians. *See id.* at 5-7 (Morrison), 7-8 (Keller), 8-10 (Reisman), and 10-12 (Thai).

Plaintiff's disclosures of these treating doctor opinions state the testimony Plaintiff intends to present to the jury in her case-in-chief; they are not responsive, they are not conditional, and they are not counter-designations.  And they are precisely the same type of treatment-related opinions that Plaintiff asks the Court to strike from Cook's designations.  The Court should treat goose and gander the same, and should reject Plaintiff's effort to prevent Cook from offering the same type of testimony that she intends to offer herself.

### 4. Plaintiff claims no prejudice and no inadequate notice from Cook's Rule 26(a)(2)(C) disclosures of her treating doctors.

The Court should deny Plaintiff's motions because Plaintiff cannot and does not claim that she is not on full notice of her treating doctors' expert opinions, or that she has suffered any prejudice as a result of Cook disclosure of those opinions under Rule 26(a)(2)(C) rather than under Rule 26(a)(2)(B).

US.118948848.04

As the Seventh Circuit has repeatedly noted, "[t]he purpose of the [Rule 26(a)(2)(B)] report is to provide adequate notice of the substance of the expert's forthcoming testimony and to give the opposing party time to prepare for a response." *Meyers v. AMTRAK*, 619 F.3d 729, 734 (7th Cir. 2010) (citing *Walsh v. Chez*, 583 F.3d 990, 993 (7th Cir. 2009) and *Jenkins v. Bartlett*, 487 F.3d 482, 487 (7th Cir. 2007)).  Here, Plaintiff has full notice of the expert testimony of all of her treating doctors that Cook expects to present at trial, and she does not claim otherwise.

Plaintiff knows every opinion of every treating doctor that Cook may offer at trial.  The parties will present those doctors' opinions at trial through their depositions taken in this case. Plaintiff's attorneys attended and participated in those depositions, obtained copies of the transcripts, and are fully aware of their contents; Plaintiff herself has designated from those same transcripts herself.  *See* Plaintiff's designations from Rheudasil's deposition, Dkt. 8554-1 through 8554-7.  Indeed, Plaintiff and her attorneys have had more access than Cook to these treating doctors during the litigation, talking with them and meeting them before their respective depositions.  *See*, e.g., Dkt. 8574-7, Reisman Dep. at 240:7-12 (noting Plaintiff's attorneys' meeting with Dr. Reisman at his house the night before his deposition).  In addition, not only has Cook disclosed the general subject matter and substance of the treating doctors' expert testimony in its expert disclosures under Rule 26(a)(2)(C), Cook has also provided Plaintiff with the exact pages and lines of the doctors' depositions that Cook intends to present in its case in chief.

Given these facts, Plaintiff does not and cannot claim any prejudice from the form of Cook's disclosure of Dr. Rheudasil's testimony and opinions.  Plaintiff in fact knows every word of Dr. Rheudasil's testimony that Cook could *possibly* offer at trial, and knows exactly which of those words Cook *actually* intends to offer.  The goal of "adequate notice" has been fulfilled, Plaintiff has suffered no prejudice, and the Court should reject Plaintiff's request to exclude

US.118948848.04

portions of Dr. Rheudasil's expert testimony based on a contrived technical violation of Rule 26(a)(2). *See In re Zimmer*, 2015 WL 3799534 at *5 (denying Rule 26(a)(2)(B) motion to exclude expert opinions of treating physician, noting "those opinions were presented in his deposition upon questioning about his treatment of [plaintiff], and Zimmer is therefore not prejudiced by their admission in this context."); *see also Ballinger v. Casey's General Store, Inc.*, 2012 WL 1099823 (S.D. Ind. Mar. 29, 2012) ("expert testimony should not be excluded if the lack of disclosure is substantially justified or harmless," citing Fed. R. Civ. P. 37(c)(1)).

## II. Even Under Plaintiff's Proposed Narrow Reading of Rule 26(a)(2), Plaintiff's Treating Physicians' Testimony Constitutes Proper Testimony of a Non-Retained Expert.

Even disregarding Rule 26(a)(2)(B)'s threshold premise that its requirements apply only to retained experts offering new opinions for trial, the case law applying Rule 26(a)(2)(C) uniformly recognizes that a treating physician may testify concerning *all* aspects of a patient's treatment, including the reasons for the treatment decisions and the doctors risk-benefit analyses and the knowledge and opinions underlying the doctor's treatment decisions.

A treating doctor's testimony is not limited, as Plaintiff argues, solely to the doctor's "observations during her treatment."  Dkt 8553 at 2.   To responsibly weigh the risks and benefits of placing an IVC filter in Plaintiff and make intelligent recommendations and decisions, Plaintiff's doctors necessarily relied on their existing experience with filters and their knowledge and opinions concerning the risks and benefits of IVC filters, both generally and with respect to the Cook Celect and Tulip filters specifically.  This knowledge and experience bear directly on *why* the doctors prescribed or placed the filters in Plaintiff, and why or when the physicians attempted (or did not attempt) to retrieve Plaintiff's filter.  If a doctor is considering implanting a medical device, you want the doctor to ask a number of important questions before making a decision:  whether the device is safe, whether the device is effective, whether the

17

medical literature supports the use of the device, whether one type or brand of the device is as good as others, whether the benefits of using the device outweigh the risks, whether complications are likely to be harmful or affect the effectiveness of the device, and whether the device could save your life.  Yet Plaintiff's motion asks the Court to exclude the treating doctors' testimony about how they answered these precise questions in determining Plaintiff's treatment.

The very cases Plaintiff cites in her motions make clear that treating doctors may testify not only to what they *observed* in the course of treatment, but also to what they **did** and **why** they did it.  For example:

> When a treating physician testifies about his observation, diagnosis and treatment of a patient, the physician is testifying ***about what he saw and did and why he did it***, even though the physician's treatment and his testimony about that treatment are based on his specialized knowledge and training. As expressed by the Seventh Circuit in *Musser,* a treating physician is "providing testimony because of [his] involvement in the facts of the case . . . ." [*Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757 (7th Cir. 2004)]. When a treating physician limits his testimony to his observation, diagnosis and treatment, there is no need for a Rule 26(a)(2)(B) report.

*Griffith v. Northeast Ill. Reg'l Commuter R.R. Corp*., 233 F.R.D. 513, 518 (N.D. Ill. 2006) (emphasis added).

Consistent with this, courts have painted with a broad brush when defining the scope of treating doctors' testimony about patient treatment, permitting any testimony that "relates to," "pertains to," is "intertwined with," or is "tethered to" the treatment.  *See, e.g., In re Motion of Frank Lynch to Quash Subpoena,* No. 1:17-mc-00022-RLY-TAB (S.D. Ind. May 12, 2017), Filing No. 15, at ECF 307 ("intertwined with information…which pertains to" the plaintiff's treatment"); *Fielden v. CSX Transp., Inc.*, 482 F.3d 866, 871 (6th Cir. 2007) (stating that treating physician often testifies "within a permissive core on issues pertaining to treatment, based on what he or she learned through actual treatment and from the plaintiff's records up to and

US.118948848.04

including that treatment"); *In re Zimmer Nexgen Knee Implant Prod. Liab. Litig.*, 2015 WL 3799534 at *4 (noting doctors' opinions "are sufficiently related to his treatment of [plaintiff] and may be offered without compliance with Rule 26(a)(2)(B)"); *id.* at *7 (permitting testimony where doctor's "opinions about his cementing technique are likewise tethered to his treatment of" plaintiff); *cf. also id.* at *6 (holding Rule 26(a)(2)(B) does not require separate expert report to disclose post-treatment opinions that "help explain and elaborate on his observations and opinions originally formed during the course of [plaintiff's] treatment").

Here, all of the treating physician opinions and testimony that Plaintiff asks the Court to exclude relate to and are intertwined with the doctors' treatment of Plaintiff, and thus fall within the subject matter permitted by Rule 26(a)(2)(C). Plaintiff's motions present somewhat fragmented descriptions and citations concerning specific objections, they mischaracterize Cook's disclosures (particularly the motions relating to Drs. Keller and Reisman), and the citations provided sometimes do not support the discussion in the text. As noted above, if the Court concludes that it needs to address the individual passages Plaintiff cites notwithstanding the broad deficiencies in Plaintiff's motions discussed above, Cook urges the Court to do so in the context of ruling on the parties' specific designations, where the Court can get an accurate and complete picture of what the contested testimony is and the context in which it arises. To the extent that the Court wishes to deal with specific objections in the present motions, Cook offers the following discussion of Plaintiff's objections as best as Cook can discern them from the motions.

### A.    Dr. Rheudasil

Plaintiff asks the Court to exclude large portions of the testimony of Dr. Rheudasil, the physician who placed and retrieved Plaintiff's filter. Dr. Rheudasil was first contacted by Dr. Morrison (the spinal surgeon who performed Plaintiff's 2009 spinal fusion surgery) in February

of 2009.  [Dkt. 8554-2, Rheudasil Dep. at 32:1–33:9]  Mrs. Brand's last office visit with Dr.

Rheudasil was in November of 2015 [Dkt. 8554-3, Rheudasil Dep. at 94:11 – 95:7], but she

continues to seek medical treatment from him and has done so recently as November 10, 2017.

Dr. Rheudasil testified that Plaintiff had called him prior to his deposition seeking medical

intervention in the form of a CT scan, making clear that Plaintiff presently considers Dr.

Rheudasil to be her treating physician.  Dkt. 8554-7, Rheudasil Dep. at 194:16-24]

     As noted above, Plaintiff has grouped her objections to Dr. Rheudasil's testimony into

three categories:  Safety and Efficacy, Unrelated Treatment and Use of IVC Filters, and Risk-

Benefit Analysis.  *See* Dkt. 8553 at 3-10.  Each of these categories relates to and is unavoidably

intertwined with Dr. Rheudasil's treatment of Plaintiff, and none of this testimony requires a

Rule 26(a)(2)(B) report.

     *Safety and efficacy.*  Plaintiff argues that the Court should exclude all of Dr. Rheudasil's

opinions about the safety and efficacy of the Celect filter because the opinions "are based on his

experience as a vascular surgeon and were not formed during his treatment of Brand."  Dkt. 8553

at 8.  But Dr. Rheudasil's existing views concerning the safety and efficacy of IVC filters in

general and the Celect filter in particular are inseparable from his treatment of Plaintiff; indeed,

that knowledge and those opinions formed the basis for his treatment of Plaintiff, and in

particular for his decision to place a Celect filter in Plaintiff.  Indeed, Cook's attorney made

certain at the deposition that Dr. Rheudasil specifically limited his testimony to his knowledge

and views at the time made the decision to place Plaintiff's filter.  One example:

> Q. [Cook attorney] Okay. Dr. Rheudasil, I want to talk for just a second about the things that can cause a patient to be at an increased risk of DVT. When I'm asking these questions, I'm specifically focused on the knowledge that you had during the period of time that you treated Mrs. Brand. If at any point in time, I ask you about something that you have only learned in the last 12 or months or so, let me know that.

Dkt. 8554-1, Rheudasil Dep. at 27:18-28:1.  In fact, Dr. Rheudasil repeatedly affirmed that the treatment decisions he made regarding the placement of Plaintiff's IVC filter in 2009, his attempt to retrieve the IVC filter in 2011 and 2015, and his ongoing recommendations for the care and treatment of Plaintiff after her October 2015 retrieval surgery were all based on the knowledge, experience, and training he amassed about IVC filters generally, and the Celect specifically, up to those points.  *See, e.g.,* Dkt. 8554-1, 8554-2, Rheudasil Dep. at 27:9-13, 57:25-58:5.  Dr. Rheudasil's contemporaneous knowledge and opinions concerning the safety and effectiveness of the Celect filter was crucial to his treatment of Plaintiff and cannot be separated from that treatment.  The testimony falls within the scope of Rule 26(a)(2)(C), and the Court should reject Plaintiff's motion to exclude it.  *See In re Zimmer Nexgen Knee Implant Prod. Liab. Litig.*, 2015 WL 3799534 at *4.

　　*"Unrelated Treatment and Use of IVC Filters."*  Plaintiff similarly argues that the Court should exclude Dr. Rheudasil's testimony about his experience with PE, DVT, and IVC filters generally because "[t]he general risk factors for patients to develop DVT and PE are not specific to his opinions developed during the course of treating Brand" and "Rheudasil's experience with IVC filters and his treatment of other patients, including the procedures he has performed with Dr. Morrison, are unrelated to his observations germane to Brand's filter placement, fracture, migration and retrieval efforts."  Dkt. 8553 at 9-10.  But again, this testimony concerns the personal experience that informed and formed the basis for Dr. Rheudasil's treatment of Plaintiff.  Dr. Rheudasil's extensive history of addressing the risks of DVTs and PEs and his long

US.118948848.04

experience with placing IVC filters is unavoidably intertwined with his treatment decisions for Plaintiff; indeed, that history and experience is doubtless the reason that Plaintiff was referred to him.  His knowledge (for example) that all filters present risks of complications, his experience in placing numerous of Celect filters without a fracture, and his opinion that all filters have perforations that are normally asymptomatic and clinically insignificant all influenced his decision to place Plaintiff's Celect filter.  In addition, Dr. Rheudasil learned in June 2011 that Plaintiff's Celect filter was perforating the wall of the vena cava and had fractured, and he elected to leave the filter in place until October 2015, based on his knowledge and understanding of the risks and benefits of the filter.  Dkt. 8554-3, Rheudasil Dep. at 63:22–64:2, 79:1-25, 843-13.  Dr. Rheudasil also refused Plaintiff's requests for additional screening – including a request for treatment in November 2017 – based on his medical experience.  His testimony regarding information learned and opinions developed during his ongoing treatment of Plaintiff is fact witness testimony, which falls within the scope of Rule 26(a)(2)(C), and the Court should reject Plaintiff's motion to exclude it.  *See In re Zimmer Nexgen Knee Implant Prod. Liab. Litig.*, 2015 WL 3799534 at *4.

*Risks and Benefits of IVC Filters.*  Once again, Plaintiff argues that the Court should exclude this testimony because Dr. Rheudasil's "testimony pertaining to the risk factors associated with DVT and PE was not developed from his observations treating" Plaintiff and "his opinions regarding the the [sic] risks and benefits of IVC filters, and Cook Celect in particular, are not percipient observations developed during his treatment of" Plaintiff.  Dkt. 8553 at 10. This is perhaps the most puzzling of the categories Plaintiff seeks to exclude.  This argument not only seeks to exclude the factors Dr. Rheudasil weighed in his treatment decisions for Plaintiff, it seeks to exclude **the treatment decisions themselves**.  Like any physician, Dr. Rheudasil based

his treatment decisions on his balancing of the possible risks of the procedure versus the likely benefits of the procedure.  All of the testimony that Plaintiff asks the Court to exclude in this category—including the serious risks of DVTs and PEs and the risks of perforation and other complications from filters—goes directly to the risk-benefit analysis involved in Dr. Rheudasil's treatment decisions for Plaintiff.  Indeed, Plaintiff even seeks to exclude Dr. Rheudasil's ultimate opinion: "The benefits to Mrs. Brand of using the IVC filter outweighed the risks."  Dkt. 8553 at 8.  This testimony is so intertwined with Plaintiff's treatment that without it, no one could possibly understand either the treatment itself or the reasons behind the treatment.  This testimony falls within the scope of Rule 26(a)(2)(C), and the Court should reject Plaintiff's motion to exclude it.  *See In re Zimmer Nexgen Knee Implant Prod. Liab. Litig.*, 2015 WL 3799534 at *4.

### B.    Dr. Morrison

Plaintiff moves to exclude certain treatment-related opinions and testimony of Dr. Thomas Morrison, the neurosurgeon who performed Plaintiff's L4-S1 lumbar fusion surgery in which Cook's IVC filter was placed.   [Dkt. 8550-1, Morrison Dep. at 9:10-15, 18:6-11] Specifically, Plaintiff seeks to exclude Dr. Morrison's testimony and opinions concerning (1) symptoms Plaintiff did not discuss during her visits at Dr. Morrison's office, (2) the informed-consent process, (3) behavior of bone spurs over time, (4) risk of pulmonary embolism ("PE") from spinal surgery, (5) observation of PE-related death of past spinal surgery patient, (6) risks of anticoagulation during a lumbar fusion surgery, (7) risk inherent in all medical devices, (8) never having read instructions or literature on Cook's IVC filters, and (9) his understanding of risks and benefits of IVC filters from medical training and practice.  Dkt 8553 at 6-7.  Plaintiff

argues that these opinions "are based on facts gathered outside the scope of Dr. Morrison's treatment" of Plaintiff. [6]

All this testimony pertains to and is closely tethered to Dr. Morrison's treatment decisions. For example, a doctor necessarily relies on a patient's description of symptoms in determining a course of treatment, and Plaintiff's failure to describe certain symptoms to Dr. Morrison are thus as significant to his treatment decisions as the symptoms she did describe. *See* Dkt. 8550-2, Morrison Dep. at 29-34.

The remaining testimony that Plaintiff seeks to exclude all involve facts or opinions that Dr. Morrison would have necessarily relied on in treating Plaintiff and provide necessary context for the manner of that treatment. For example, although Dr. Morrison did not specifically remember his conversation with Plaintiff about the risks of the spinal surgery, his testimony about the informed consent process that he followed with all of his patients in 2009, including Plaintiff, certainly relates to his treatment of her. Dkt. 8550-3, Morrison Dep. at 63:8 – 65:6. (By analogy, Plaintiff intends to have Dr. Rheudasil testify that he reads IFUs that come with IVC filters, even though he cannot actually recall reading the Celect IFU. *See* Bellwether Plaintiff Brand's Designation of Experts and Opinion Testimony at 4.)

The other opinions, highlighting experiences and knowledge Dr. Morrison has gained concerning the risks of anticoagulation, PE, spinal surgeries, and medical devices, informed his treatment of Plaintiff. Dr. Morrison explained that in his experience, all medical devices can fail. Dkt. 8550-2, Morrison Dep. at 55:22-23. Regarding the spinal devices he uses, Dr. Morrison testified that "you're kind of weighing the risk of how poor the patient is doing. And if we use these implants to fix that problem, what's the sequelae if they break and what's—what's

---

[6] Plaintiff also argues that some of Dr. Morrison's opinions are based on facts outside his area of expertise, Dkt. 8549 at 6, but she never identifies those opinions or provides any support this argument.

US.118948848.04

kind of that cost-benefit analysis?  And that's what determines whether it's a good idea or a bad idea."  *Id.* at 56:6-11.  His knowledge of various risks of anticoagulation, PE-related complications during spinal surgery, and medical devices informed how Dr. Morrison worked with Dr. Rheudasil to perform Plaintiff's lumbar fusion surgery.

As with Dr. Rheudasil, the Morrison's opinions that Plaintiff seeks to exclude guided the doctor's treatment decisions and are intimately intertwined with those treatment decisions.  The testimony falls within the scope of Rule 26(a)(2)(C), and the Court should reject Plaintiff's motion to exclude it.  *See In re Zimmer Nexgen Knee Implant Prod. Liab. Litig.*, 2015 WL 3799534 at *4.

### C.    Dr. Keller

Dr. Keller is a doctor of osteopathy who was Plaintiff's family physician for about twenty years.  Plaintiff asks the Court to exclude certain testimony of Dr. Scott Keller on the ground that the testimony "is based on facts gathered outside the scope of Dr. Keller's treatment."  Dkt. 8593 at 5.  The passages Plaintiff seeks to exclude consists of Dr. Keller's testimony based on Plaintiff's medical records concerning her emergency room visits, other visits to other doctors, Plaintiff's prescription for and use of diazepam, its link to Plaintiff's abdominal pain, and doctors' advice to get off such opioid medications.  See Dkt. 8593 at 5-6.

All of the testimony Plaintiff seeks to exclude relate to Dr. Keller's treatment of Plaintiff and come from medical records from his practice.  Although some of the testimony relates to medical records that Dr. Keller did not create, they are all medical records that Dr. Keller reviewed and relied on in his treatment of Plaintiff.  As discussed above, Dr. Keller may testify about the what and why of Plaintiff's treatment, and is not limited to his own personal percipient observations in his testimony.  His testimony is sufficiently "tethered to" Dr. Keller's treatment

US.118948848.04

to fall within the scope of Rule 26(a)(2)(C).  *See In re Zimmer Nexgen Knee Implant Prod. Liab. Litig.*, 2015 WL 3799534 at *7.

### D.   Dr. Thai

Plaintiff asks the Court to exclude certain testimony by Dr. Phu Thai, an internal medicine doctor who was Plaintiff's primary care doctor from 2008-2012.  Specifically, Plaintiff asks the Court to exclude Dr. Thai's testimony about IVC filters and pulmonary embolism because his opinions "are based on facts gathered outside the scope of treatment."  Dkt. 8567 at 5.

As above, the testimony at issue relates to Dr. Thai's treatment of Plaintiff.  For example, Plaintiff would exclude Dr. Thai's testimony concerning "[t]he reasons he refers patients for placement of an IVC filter."  Although Plaintiff asserts that Dr. Thai "can only speculate as to the risks and benefits of the device in a patient," Dkt. 8567 at 6 & n.27 (citing Thai Dep. at 14:22-15:10), the deposition pages Plaintiff cites provide no support for this assertion; on the contrary, the passage consists of Dr. Thai actually discussing the risks and benefits of the filter. As to Dr. Thai's testimony concerning that things that Plaintiff failed to tell him about her symptoms and her treatment by other doctors—including the fact of her IVC filter placement, the attempted removal, and the metal in her thigh—certainly goes to Plaintiff's claim of damages and her own forthrightness and diligence in providing Dr. Thai with information he needed for her treatment.  Plaintiff claims great pain, anxiety and depression associated with her filter from 2009 to the present, and the observations and information she provided to her physicians in that same timeframe—and those she omitted—are relevant fact-based testimony.

The testimony falls within the scope of Rule 26(a)(2)(C), and the Court should reject Plaintiff's motion to exclude it.  *See In re Zimmer Nexgen Knee Implant Prod. Liab. Litig.*, 2015 WL 3799534 at *4.

### E.     Dr. Reisman

Plaintiff has suffered from chronic pain, primarily related to a back injury, continuously since at least 2003.  However, Plaintiff asks the Court to exclude certain testimony by Dr. Richard Reisman, a pain management doctor (now retired) who treated Plaintiff's chronic pain from November 2001 to December 2006, and briefly from September 4, 2015 to November 17, 2015. Specifically, Plaintiff asks the Court to exclude Dr. Reisman's testimony about why patients like her are referred for pain management, the risks associated with certain medications prescribed to Plaintiff, the depression and anxiety that generally result from chronic pain (and from which Plaintiff suffered), and his practice's policies and procedures (which were applicable to all patients including Plaintiff).  As grounds for exclusion, Plaintiff again rests on her assertion that the testimony is "based on facts gathered outside the scope of Dr. Reisman's treatment." Dkt. 8572 at 5-6.

Once again, Plaintiff's focus is too narrow.  Dr. Reisman did not acquire his general knowledge of the need for pain management, drug risks, the results of chronic pain, or his office's procedures as a result of his treatment of Plaintiff, but he undoubtedly used that knowledge and experience in treating Plaintiff, and Plaintiff does not argue otherwise.  He evaluated her need for pain management based on his experience, assessed the risk of various treatments based on his knowledge, assessed Plaintiff's state of mind based on his existing opinions, and treated Plaintiff using the existing policies and procedures of his practice.  All of this testimony relates to Plaintiff's treatment, and it is properly within the scope of Rule 26(a)(2)(C).  *See In re Zimmer Nexgen Knee Implant Prod. Liab. Litig.*, 2015 WL 3799534 at *4.

US.118948848.04

## CONCLUSION

For the reasons set forth above, the Court should deny Plaintiff's motions to exclude portions of the deposition testimony of her treating physicians Dr. Mark Rheudasil, Dr. Thomas J. Morrison III, Dr. Scott Keller, Dr. Phu B. Thai, and Dr. Richard Reisman.

Respectfully submitted,

Dated: July 30, 2018

/s/ *Andrea Roberts Pierson*
Andrea Roberts Pierson (# 18435-49)
John T. Schlafer (# 28771-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone: (317) 237-0300
Facsimile:  (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-Mail:  john.schlafer@faegrebd.com

James Stephen Bennett
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana  46802
Telephone:  (260) 424-8000
Facsimile:  (260) 460-1700
E-Mail:   stephen.bennett@faegrebd.com

*Counsel for the Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

US.118948848.04

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 30, 2018, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.  Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

/s/ *Andrea Roberts Pierson*

US.118948848.04