IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB MDL No. 2570 |

This Document Relates to Plaintiff:

> Tonya Brand
> Civil Case No. 1:14-cv-06018-RLY-TAB

## Plaintiff's Brief in Opposition to Cook's Motion to Exclude the Expert Testimony of Robert W. Johnson

Plaintiff Tonya Brand, by counsel, respectfully provides the following brief in opposition to Cook's motion to exclude the expert testimony of Robert W. Johnson:

## Introduction

Plaintiff retained Robert W. Johnson to provide testimony regarding Cook's financial circumstances — a relevant consideration for punitive damages under either Indiana or Georgia law.[1] Johnson reviewed the data Cook agreed to produce and arrived at an opinion on the net worth of Cook, Inc., Cook Medical, Inc., and William Cook Europe. His calculation was based upon the well-recognized method of using balance sheets to subtract liabilities from assets.

---

[1] Johnson was assisted in his report by a Senior Economist at Robert W. Johnson & Associates, James A. Mills. Johnson, however, will testify, and this brief, therefore, discusses only Johnson.

While the math involved is not overly complex, explanation requires expertise to assist the jury. Indeed, this is the very conclusion Judge Herndon reached in the *Yaz* litigation when Bayer attempted to strike Johnson's net worth testimony. Judge Herndon denied Bayer's motion there, and this Court should follow suit.

## Factual Background

### A. The qualifications of Robert W. Johnson.

Robert Johnson is an economist with more than thirty-five years of experience as a forensic economist.[2] He received an MBA from Stanford University School of Business and has continued his education in economics with post-graduate training.[3] Since 1981, Johnson has provided forensic economic analyses and expert testimony in over 200 trials and depositions.[4] Johnson is also the President of Robert W. Johnson & Associates, which has provided economic analyses for civil litigants since 1988.[5]

Cook does not challenge Johnson's qualifications.[6]

### B. Johnson's report and opinions.

Johnson was retained to "frame, in economic terms, the financial condition of the Cook entities (Cook, Inc., Cook Medical, Inc., William Cook Europe, APS and Cook

---

[2] *See* Johnson *Curriculum Vitae* [Dkt. 8661-2 at 5.]

[3] *See id.* [Dkt. 8661-2 at 5.]

[4] *See id.* [Dkt. 8661-2 at 5, 12-20; Dkt. 8661-3 at 2-5.]

[5] *See id.* [Dkt. 8661-2 at 5.]

[6] *See generally, Cook Defendants' Memorandum in Support of Motion to Exclude Expert Opinions of Robert W. Johnson and James A. Mills*, [Dkt. 8659 at 4, n.3.]

Group, Inc.)."[7] He reviewed balance sheets and income statements from Cook, Inc. and Cook Medical, Inc., and annual reports coupled with currency exchange rate data for William Cook Europe.[8] Cook Group, Inc. produced no data and, therefore, Johnson did not provide any opinions relating to that entity.[9]

Given the limitations on the data Cook agreed to produce, Johnson was only able to provide an opinion as to the "equity" (i.e., net worth) of the three Cook entities.[10, 11] Johnson provided these figures for each year the Cook entities provided financial data.[12]

Should the jury find evidence sufficient to warrant punitive damages, Johnson will provide the information he was able to glean from the financials the Cook entities provided, which includes not just net worth, but also cash on hand, research and development expenditures, profit by year, and pre-tax income. This data will provide the jury with a financial picture of the Cook entities for consideration in assessing the total amount of punitive damages.

---

[7] Johnson Report [Dkt. 8661-1 at 2.]

[8] *Id*. [Dkt. 8661-1 at 2.]

[9] *Id*. [Dkt. 8661-1 at 2.]

[10] *Id*. [Dkt. 8661-1 at 11 (Cook, Inc.); Dkt. 8661-1 at 18 (Cook Medical, Inc.); Dkt. 866-2 at 24 (William Cook Europe).]

[11] At Johnson's request, Plaintiffs sought additional data in a motion to compel, which Magistrate Baker denied. Plaintiffs filed a Rule 72(a) objection to the Magistrate's order, which this Court overruled. [*See* Dkt. 4437.]

[12] *See* Johnson Report [Dkt. 8661-1 at 11 (Cook, Inc.); Dkt. 8661-1 at 18 (Cook Medical, Inc.); Dkt. 866-2 at 24 (William Cook Europe).]

# Argument

The Seventh Circuit applies a three-step analysis when determining whether a witness can testify as an expert: (1) is the witness qualified by knowledge, skill, experience, training or education; (2) is the witness's reasoning or methodology reliable; and, (3) whether the witness's testimony will help the trier of fact. *E.g., In re: Yasmin & Yaz Mktg., Sales Practices & Prods. Liab. Litig.*, MDL 2100, 2011 U.S. Dist. LEXIS 145988, **17-21 (S.D. Ill. Dec. 16, 2011) (denying motion to exclude Johnson's opinions on net worth).

It is not this Court's role to determine whether an expert is credible or whether his opinions are correct; that job is left to the jury after cross-examination. *Id*. at *20 (citation omitted). Usually, the rejection of expert testimony is the exception rather than the rule. Fed. R. Evid. 702, advisory committee's note (2000).

## 1. Cook's financial condition is relevant to punitive damages.

Before turning to the meat of Johnson's opinions, one issue must be quickly addressed: Cook claims its financial condition is irrelevant — even in the context of punitive damages.[13] Cook is incorrect. Whether the issue is analyzed under Indiana law (Cook's domicile) or Georgia (Brand's domicile), the result is the same: Cook's financial condition is an issue for the jury to consider when determining the amount of punitive damages.

---

[13] *Cook Defendants' Memorandum in Support of Motion to Exclude Expert Opinions of Robert W. Johnson and James A. Mills* [Dkt. 8659 at 5 (generally); *id*. at 5, n.4 (punitive damages).]

Under Indiana law, "evidence of the financial condition of the defendant is admissible and may be considered by the jury in determining the amount of punitive and exemplary damages." *E.g., Riverside Ins. Co. v. Pedigo*, 430 N.E.2d 796, 808 (Ind. Ct. App. 1982). *See also Stroud v. Lints*, 790 N.E.2d 440, 446 (Ind. 2003). The same is true in Georgia. *E.g.*, *Holland v. Caviness*, 737 S.E.2d 669, 671 (Ga. 2013) (citing Ga. Code Ann. § 51-12-5.1).

Cook cites three opinions that it contends support the notion that a defendants' finances have no bearing on punitive damages; none of these opinions analyze the question under Indiana or Georgia law, however.[14] The primary opinion Cook relies upon, *Zazu Designs v. L'Oreal, S.A.*, 979 F.2d 499, 508-09 (7th Cir. 1992), involved trademark infringement under the Lanham Act (the other two opinions were district court decisions relying upon *Zazu*). Given that *Zazu* analyzed punitive damages under **federal** law, it simply has no application to this case, which arises under **state** law. In fact, one of three cases Cook cites expressly recognized that fact. *See Pivot Point Int'l v. Charlene Prods.*, 932 F. Supp. 220, 223 (N.D. Ill. 1996) (allowing plaintiff to make a showing as to why defendant's financial condition would be relevant under **state** law).

Cook's financial condition is relevant under either Indiana law or Georgia law, and Cook's suggestion to the contrary should be rejected.

---

[14] *Id*. at 5, n.4.

**2. Johnson's methodology is sound.**

Johnson plans to testify on what he has determined to be the Cook entities' net worth. This was expressly set forth for each of the relevant entities in his report (labelled as "equity").[15]

In *Sanders v. Jackson*, 209 F.3d 998 (7th Cir. 2000), the Circuit Court held that "net worth" is the "balance sheet net worth" or "book value net worth," meaning the balance sheet value of assets minus liabilities. *Id*. at 1002-03. Or, as Johnson states in his report: "Net worth gives a current financial snapshot. It indicates only the **extent to which the entity's assets are worth more than the claims on those assets**."[16] Johnson then used Defendants' balance sheets (for Cook, Inc. and Cook Medical, Inc.) and Annual Reports (for William Cook Europe) to determine what each entity's assets were after subtracting liabilities.[17] To be sure, calculation of net worth is not an overly complicated endeavor, but the methodology employed here is based upon the financials Cook provided and is reliable.

Cook also attacks Johnson's methodology claiming that William Cook Europe's Annual Reports were produced in Danish Krone, and Johnson provides no information "about how and when any currency conversion was made."[18] The problem with

---

[15] *See* Johnson Report [Dkt. 8661-1 at 11 (Cook, Inc.); Dkt. 8661-1 at 18 (Cook Medical, Inc.); Dkt. 866-2 at 24 (William Cook Europe).]

[16] *Id.* [Dkt. 8661-1 at 6.]

[17] *See id.* [Dkt. 8661-1 at 11 (Cook, Inc.); Dkt. 8661-1 at 18 (Cook Medical, Inc.); Dkt. 866-2 at 24 (William Cook Europe).]

[18] *Cook Defendants' Memorandum in Support of Motion to Exclude Expert Opinions of Robert W. Johnson and James A. Mills*, [Dkt. 8659 at 4, n.3.]

this attack is that Johnson could not have been clearer in his report: for his William Cook Europe analysis, he reviewed and applied the "Currency exchange rate data provided by the U.S. Federal Reserve and the U.S. Internal Revenue Service."[19] If Cook believes the exchange rates provided by the Federal Reserve and IRS are flawed for some reason, they are free to challenge those rates during cross-examination. But it's no reason to exclude his opinions.

Finally, Cook's argument that Johnson "conceded" he can't render any opinions takes Johnson's statement out of context. Johnson surely conceded that he could not provide a "complete opinion as to the financial condition of these entities," but he never conceded he was unable to opine on the entities' net worth; in fact, he did just that. Johnson's concession was simply an attempt to explain that a complete picture of the entities' financial circumstances would be impossible without the additional data that Cook refused to provide. Because of this absence of data, he was not able to opine, for example, on whether the entities were profitable, whether they could satisfy a particular punitive damage award **currently**, or would a particular award force the companies to lay off employees.[20] But he is able to opine on net worth – a relevant consideration for a jury deliberating on punitive damages. *See supra* at Argument § 1. *See also infra* at Argument § 3.

---

[19] Johnson Report [Dkt. 8661-1 at 4.]

[20] *Id.* [Dkt. 8661-1 at 6.]

Johnson performed what everyone recognizes as a reliable method for determining net worth: he used the balance sheets and annual reports to subtract liabilities from assets. His methodology is sound and Cook's motion should be denied.

### 3. Johnson's testimony will assist the jury in determining the amount of punitive damages.

An expert's testimony must assist the jury in understanding the evidence or determining a fact in issue; in other words, the expert must "testify to something more than what is 'obvious to the layperson' in order to be of any particular assistance to the jury." *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001) (quotation omitted).

If this trial proceeds to a punitive damages phase, Cook's net worth is admissible: "Where a plaintiff makes a prima facie showing of a right to recover punitive damages, evidence of the defendant's financial worth is admissible." *Tolliver v. Mathas*, 538 N.E.2d 971, 977 (Ind. Ct. App. 1989). *See also Floyd v. First Union Nat'l Bank*, 417 S.E.2d 725, 728 (Ga. Ct. App. 1992). In determining the amount of punitive damages, the net worth of the defendant is critical to ensure the objective of such damages is honored:

> Current law recognizes that punitive damages may serve the societal objective of deterring similar conduct by the defendant or others by way of example. For that reason, if punitive damages are appropriate, the wealth of the defendant has for many years been held relevant to a determination of the appropriate amount.

*Stroud*, 790 N.E.2d at 445 (Indiana law) (citation omitted).

It's true that determining net worth is not as complicated as working through a differential diagnosis, but as Judge Herndon held in the *Yaz* litigation: "Although concededly comprehensible, the Court finds Johnson's report assists the trier of fact in its analysis of issues relevant to the dispute," specifically the issue of the defendant's "wealth." *In re: Yaz*, 2011 U.S. Dist. LEXIS 145988, at *24. The *Yaz* court went further: "[T]o allow the jury to assess Bayer's wealth with any level of accuracy, an expert is required to determine Bayer's total wealth and explain his findings in a manner helpful to the trier of fact." *Id.*

Not only did Judge Herndon find that Johnson's net worth analysis would be helpful on its own, he saw great utility in Johnson's summary of the financial information provided: "Clearly, it is generally more helpful to the trier of fact and efficient for the Court to present voluminous information in the form of a summary. However, the jury requires someone in the possession of the necessary knowledge and expertise to explain the relevant summaries and charts." *Id.*, at **23-24 (relying upon Fed. R. Evid. 1006). In the same way that Johnson's report was found to aid the jury in the *Yaz* litigation, his report is helpful here.

The Cook entities produced what both Cook and Magistrate Judge Baker described as a "vast amount of financial information."[21] To help the jury in sorting through this information, Johnson has prepared a series of slides summarizing the information he was able to glean from Cook's production. Johnson's summaries, along

---

[21] *E.g., Cook Defendants' Response in Opposition to Plaintiffs' Objections and Appeal from Magistrate Tim A. Baker's Order Sustaining Defendants' Objection to Production of Net Worth Documents* [Dkt. 4318 at 2.]

with his expertise, will assist the jury in assessing Cook's net worth for purposes of a punitive damages analysis. Cook's arguments related to whether Johnson will assist the jury should be rejected.

## Conclusion

Johnson is qualified to render opinions on net worth; Cook doesn't suggest otherwise. He employed a well-recognized methodology to determine each entities' net worth: subtracting liabilities from assets based upon the balance sheets Cook provided. His opinions will help the jury evaluate the amount of punitive damages by allowing them to take into account the entities' wealth when setting an appropriate figure. For these and the foregoing reasons, Cook's motion to exclude the testimony of Robert W. Johnson should be denied.

Respectfully Submitted,

/s/ *Joseph N. Williams*
Joseph N. Williams, Atty. No. 25874-49
RILEY WILLIAMS & PIATT, LLC
301 Massachusetts Avenue, Suite 300
Indianapolis, IN 46204
(317) 633-5270
Fax: (317) 426-3348
jwilliams@rwp-law.com

*Liaison Counsel to Plaintiffs' Steering Committee and on behalf of Plaintiffs' Steering Committee*

/s/ *Michael W. Heaviside*
Michael W. Heaviside, Esq.
Heaviside Reed Zaic, A Law Corporation
910 17th Street NW, Suite 800
Washington, DC 20006
(202) 233-1993
mheaviside@hrzlaw.com

/s/ *Ben C. Martin*

Ben C. Martin, Esq.
The Law Office of Ben C. Martin
3710 Rawlin Street, Suite 1230
Dallas, TX 75219
(214) 761-6614
Fax: (214) 74407590
bmartin@bencmartin.

/s/ *David P. Matthews*

David P. Matthews, Esq.
Matthew and Associates
2509 Sackett St.
Houston, TX 77098
(713) 522-5250
Fax: (713) 535-7184
dmatthews@thematthewslawfirm.com

*Plaintiffs' Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of August, 2018, a copy of the foregoing was served electronically and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.

/s/ *Joseph N. Williams*

Joseph N. Williams