UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

---

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

---

This Document Relates to the Following Actions only:

Brand v. Cook Medical, Inc., et al.
No. 1:14-cv-06016-RLY-TAB

---

### COOK DEFENDANTS' OPPOSITION TO PLAINTIFF TONYA BRAND'S MOTION TO EXCLUDE THE TESTIMONY OF SCOTT ROBERTSON, Ph.D.

Dr. Scott Robertson offers three opinions in this case. Plaintiff challenges only one of them: his Opinion No. 2 that the Celect filter design is "not defective, and the benefits or utility of the desig[n] far outweigh [its] risks."[1]

Plaintiff's counsel made the same motion to exclude Opinion 2 in the *Hill* case on virtually the same grounds, and the Court denied the motion, holding that "Dr. Robertson's testimony is relevant, reliable, and will assist the jury with the facts at issue in this case."[2] Plaintiff's argument is no better in this case, so the Court should deny the motion again.

### Discussion

**I.    Dr. Robertson is qualified to offer Opinion 2**

Plaintiff argues that Dr. Robertson cannot offer Opinion 2 because he "is not qualified to offer an opinion on the medical benefits of Cook's IVC filters."[3] (Plaintiff does not challenge Dr. Robertson's qualifications to opine on the risks of Cook's filters.) But Dr. Robertson is not

---

[1] *See* Dkt. 8679 ("Motion") at 1-2; Dkt. 8679-1 at 21.
[2] *Hill v. Cook, et al.*, No.: 1:14-ML-02570, Dkt. 6969.
[3] Motion at 3.

1

opining about benefits from a medical perspective, he is opining on them from an engineering perspective. And his engineering opinions about risks and benefits are well-founded on his training and extensive experience designing and developing an IVC filter as well as other medical devices, which required him to understand and balance the engineering risks and benefits of the filter every day. Thus, he is well qualified to offer the opinion that plaintiff challenges. *See Loudermill v. Dow Chemical Co.*, 863 F.2d 566, 569 (8th Cir. 1988) (admitting expert's testimony relating injuries, despite the expert's lack of medical experience, because he had "considerable academic and practical knowledge in the field of toxicology").

Plaintiff relies on cases involving engineering experts who attempted to offer medical-causation opinions as opposed to engineering opinions, and admitted having no qualifications to offer such opinions. *See In re Zimmer NexGen Knee Implant Prod. Liab. Lit.*, 2015 WL 5145546, at *10 (N.D. Ill. Aug. 31, 2015) (precluding expert testimony about "clinical risk-benefit analysis" in device case where the proposed expert admitted being unqualified to offer such testimony because clinical risk-benefit analysis was outside the scope of his practice); *In re Rezulin Prod. Liab Lit.*, 309 F.Supp.2d 531, 560 (S.D. N.Y. 2004) (precluding expert testimony on evaluation of "risks versus benefits" in prescription-drug case where the proposed expert admitted being unqualified due to "lack of familiarity with [prescription drug's] alleged benefits in treating diabetes… .").

## II.     Opinion 2 is based on a sound and reliable methodology.

Plaintiff also challenges the methodology supporting Dr. Robertson's risk-benefit analysis. But Dr. Robertson's methodology of combining his personal experience with designing an IVC filter with an analysis of available published data regarding IVC filters, peer-reviewed literature, Cook's testing records, Cook's engineering documents, the opinions and testimony of

other experts, and the depositions of Cook employees is a valid methodology that is accepted by the courts. *See, e.g., Tucker v. SmithKline Beecham Corp.*, 701 F. Supp. 2d 1040, 1062-63 (S.D. Ind. 2010) (Hamilton, J., sitting by designation) (expert's review of experimental, statistical or other scientific data gathered by others was sufficient methodology to admit opinion); *Walker v. Consolidated Rail Corp.*, 111 F. Supp. 2d 1016, 1017 (N.D. Ind. 2000) (same). Moreover, Dr. Robertson's methodology was drawn from one used in a peer-reviewed article.[4] Plaintiff's arguments boil down to attacks on the weight of Dr. Robertson's opinion, and not its admissibility. Thus, there is no basis to exclude Dr. Robertson's testimony on this ground.

Plaintiff first contends that Dr. Robertson failed to provide "any data or studies demonstrating whether, or the extent to which, pulmonary embolism is actually prevented by Cook's filters" and failed to perform an adequate review of the literature.[5] Plaintiff is wrong. As he explained in his expert report and at his depositions, Dr. Robertson identified the primary performance benefit of an IVC filter to be its ability to capture clots.[6] Dr. Robertson relied on clot-trapping studies and publications that tested numerous clot sizes (including individual clots and a cascade of clots) and both tilted and untilted filters.[7] These studies demonstrated that IVC filters are effective in preventing pulmonary embolism. Plaintiff's complaint about the adequacy of Dr. Robertson's review of literature amounts to an insistence that he should have weighed

---

[4] Dkt. 5941; Dkt. 6526-2 ("Robertson Dep. Vol. I") at 435:6-437:21. *See also* Morales, et al., "Decision analysis of retrievable inferior vena cava filters in patients without pulmonary embolism," J. Vasc. Surgery, Vol. 1, No. 4, pp. 376-84 (Oct. 2013) at Dkt. 5941-2.
[5] Motion at 4-5.
[6] Dkt. 8679-1 at 13-33 & E1; Robertson Dep. Vol. I at 51:8-19; 246:14-247:11; 426:7-17; 445:17-446:6; 447:23-448:14.
[7] Dkt. 8679-1 at 23, 27; Robertson Dep. Vol. I at 249:7-18, 298:10-23; Deposition of Scott W. Robertson dated March 21, 2018, ("Robertson March 2018 Dep."), at 45:5-50:2 attached as Exhibit A.

plaintiff's preferred literature more heavily. But that is quibbling with the merits of his opinion, which is something that plaintiff can do on cross-examination; it is not an admissibility issue.

Plaintiff then argues that Dr. Robertson "conceded that he would not be offering an opinion at trial regarding whether or not the Celect filter is efficacious in decreasing the risk of developing a pulmonary embolism."[8] Not so. Dr. Robertson told counsel that "[i]f you're talking about medical efficacy, no, I do not plan to render that opinion."[9] Dr. Robertson understands that he is not a medical doctor, and he appropriately is refraining from opining as if he were. But he is a biomedical engineer, so he can and will testify about the benefits and ability of the Celect IVC filter to catch blood clots from biomedical-design and engineering perspectives. Moreover, in concluding that the Celect IVC filter is not defective, Dr. Robertson properly based his opinion in part on other experts' opinions that demonstrate the medical efficacy of IVC filters in general, and the Celect filter in particular. He is entitled to rely on opinions of medical experts that support his engineering opinions without parroting those opinions on the stand. *See* FED. R. EVID. 703, 1972 Advisory Committee's Note; *Dura Auto. Sys. of Ind. v. CTS Corp.*, 285 F.3d 609, 613 (7th Cir. 2002) ("[I]t is common in technical fields for an expert to base an opinion in part on what a different expert believes on the basis of expert knowledge not possessed by the first expert").

Plaintiff also criticizes Dr. Robertson for not attempting to quantify the precise number of Cook IVC filters (out of the hundreds of thousands that have been implanted in patients) that "actually prevented a pulmonary embolism."[10] But the Court rejected that very argument in *Hill*, explaining that "Dr. Robertson's inability to quantify the number of Cook IVC filters which have

---

[8] Motion at 5 (emphasis omitted).
[9] Dkt. 8679-4 at 199:4-9 (emphasis added).
[10] Motion at 5.

actually prevented pulmonary embolism from the hundreds of thousands that have been successfully implanted in patients does not warrant the exclusion of his testimony. Rather, it goes to the weight of his testimony."[11] *See also Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 762 (7th Cir. 2010) (criticisms of the quality of an expert's opinions go to the appropriate weight that should be given, rather than its admissibility). Plaintiff does not even identify (or claim there exists) a methodology by which someone could make that determination. At bottom, her complaint on this ground is actually that there is no "filter registry" in the United States that captures all relevant data and outcomes regarding every single filter implanted in a patient. But that fact does not render expert testimony inadmissible—indeed, it makes expert testimony all the more necessary to help a jury understand the benefit side of the risk-benefit analysis.

Plaintiff then turns to Dr. Robertson's reliance on Cook's clot-trapping study to demonstrate efficacy, arguing that "this is a method that is used to compare one filter to another, but it has not been validated in terms of relevance to human patients."[12] Plaintiff bases her argument on an assertion that "[m]ultiple Cook scientists have conceded that this laboratory experiment does not and cannot provide information about whether pulmonary emboli are prevented in human patients."[13] That is simply untrue. Dr. Choules specifically testified that while "no bench test is ever absolutely perfect in predicting what happens in vivo," Cook's clot-trapping study "is the best that you can do without actually doing clinical work."[14] And Mr. Molgaard-Nielsen testified that the clot-trapping study "gives us some numbers, some idea of the filter, how it works, and that's why it's in the testing report itself."[15] Regardless, plaintiff's

---

[11] *Hill v. Cook, et al.*, No.: 1:14-ML-02570, Dkt. 6969 at 8.
[12] Motion at 6.
[13] *Id.*
[14] Dkt. 8679-9 (Choules Dep.), 139:11-15.
[15] Dkt. 8679-10 (Molgaard Nielsen Dep.), 346:9-18.

criticism of the clot-trapping study goes to the weight, not admissibility, of Dr. Robertson's testimony. *See, e.g., Smith*, 215 F.3d at 719 ("The question of whether the expert is credible or whether his or her theories are correct given the circumstances is a factual one that is left for the jury to determine after opposing counsel has been provided the opportunity to cross-examine the expert regarding his conclusions and the facts on which they are based."); *Metavante*, 619 F.3d at 762 (criticisms of the quality of an expert's opinions go to weight, rather than admissibility).

In addition, Dr. Robertson does not base his opinion solely on Cook's clot-trapping studies. He also relies upon a published scientific article that addresses all IVC filters in a single publication and performs a risk-benefit analysis of IVC filters in general and shows that the benefits outweighed the risk over the time period that was examined.[16] Dr. Robertson further cites the PREPIC I study, a randomized clinical trial that demonstrates that IVC filters are capable of preventing pulmonary embolism.[17] Dr. Robertson correlated those results with the bench-top experiments performed by researchers, which demonstrated that the clot-trapping ability of Cook's filters was the same as or superior to other filters that were used in the PREPIC I study.[18] Dr. Robertson also spoke with key opinion leaders, took surveys of key opinion leaders, and listened to an advisory board consisting of medical doctors during the development of his Teneo IVC filter.[19] All of this informed his opinions about the benefits of IVC filters.[20] And as part of his work in developing the Teneo IVC filter, he reviewed several articles

---

[16] Dkt. 5941-2, Morales, et al., "Decision analysis of retrievable inferior vena cava filters in patients without pulmonary embolism," J. Vasc. Surgery, Vol. 1, No. 4, pp. 376-84 (Oct. 2013) ("Morales, et al. (2013)"); Robertson Dep. Vol. I at 251:1-23; Robertson March 2018 Dep., at 45:11-46:3; 46:18-47:14; 50:11-22; 119:11-23.

[17] Robertson Dep. Vol. I at 239:15-240:22, 242:1-12; 243:17-244:7; Robertson March 2018 Dep., at 45:11-46:3; 50:11-22; 119:11-23.

[18] Dkt. 8679-1, p. 23, Dkt. 8679-2, p. 27; Robertson Dep. Vol. I at 242:1-12; 243:17-246:8; 253:9-17; 254:16-255:7.

[19] Robertson Dep. Vol. I at 215:14-216:5.

[20] *Id.*

(included in his current expert report) and other items that were available in the 2009 to 2011 time period, which further informed him on the benefits of IVC filters preventing pulmonary embolism.[21] And Dr. Robertson reviewed and relied on the testimony of plaintiff's treating vascular surgeon, who agreed that IVC filters are safe and effective in preventing pulmonary embolism.[22] All of these sources are appropriate for Dr. Robertson to rely on in forming his opinion about the benefits of IVC filters. And they demonstrate that he is not relying solely on Cook's own clot-trapping study.

Next is plaintiff's criticism of Dr. Robertson and Dr. Fryzek for relying on Cook's internal complaint records "as if they are a reflection of the occurrence rate in the real world."[23] She similarly criticizes Dr. Robertson for not knowing "what percent of adverse events from Cook filters are not reported to Cook" or what she dubs the "real world complication rates" of the Celect.[24] But again these beefs: 1) are grounded on the absence of a comprehensive U.S. filter registry (*i.e.*, nobody can know the exact "real-world" complaint rate); and 2) points to make on cross examination. And again plaintiff cannot point to any reliable methodology that would allow anyone to perform such a task. She asserts that Dr. Robertson and Dr. Fryzek "ignor[ed]" peer-reviewed literature that she appears to insist shows the "real-world" complaint rate, but they do not ignore that literature, they simply observe that there is peer-reviewed literature that conforms with Cook's complaint records, and they contest plaintiff's claim that her preferred literature represents the "real world" any more than Cook's actual complaint data. As the Court saw in *Hill*, the published literature points in different directions. Dr. Robertson's

---

[21] Robertson Dep. Vol. I at 214:20-215:5.
[22] Dkt. 8679-2, pp. C1-9, Dkt. 8679-3, pp. C10-18; F1-33; Dkt. 8674-1, Rheudasil Dep., at 208:14-209:3 ("There are thousands of articles that support the fact that IVC filters reduce the incidence of pulmonary emboli. * * * I mean, it's – it's a well-accepted medical fact.").
[23] *Id.*
[24] *Id.*

7

decision not to adopt plaintiff's preferred literature is not a reason for exclusion of his testimony, it is a reason to present his testimony and let the jury decide which view is the stronger.

Plaintiff also points out that Dr. Robertson is not an epidemiologist, and claims that his reliance on epidemiology expert Dr. Jon Fryzek's analysis of complaint data and complication rates is cumulative.[25] But the law is clear that Dr. Robertson may rely on Dr. Fryzek's analysis to support his own opinions.[26] *See* FED. R. EVID. 703, 1972 Advisory Committee's Note; *Dura Auto.*, 285 F.3d at 613 ("it is common in technical fields for an expert to base an opinion in part on what a different expert believes on the basis of expert knowledge not possessed by the first expert… ."). Dr. Robertson has no intention of repeating Dr. Fryzek's opinion on the stand; he simply relies on it to support his opinion, and may offer an explanation of why.

Plaintiff's final complaint is that Dr. Robertson did not factor into his risk-benefit analysis the risk of thromboembolic disease, citing a single article discussing that risk in connection with filters manufactured by Bard.[27] But thromboembolic disease plays no role in this case; there is no allegation that plaintiff ever experienced it. Thus, Dr. Robertson's consideration of the risk of thromboembolic disease is irrelevant, and at best for plaintiff is a topic for cross.

## Conclusion

The Court should deny plaintiff's motion to exclude Dr. Scott Robertson's Opinion 2.

---

[25] Motion at 7.
[26] For the reasons that will explained in the Cook Defendants' opposition to Plaintiff's *Daubert* motion to exclude Dr. Fryzek's opinions, the Cook Defendants respectfully submit that Dr. Fryzek's opinions are reliable and admissible.  The Cook Defendants hereby incorporate by reference its forthcoming opposition to Plaintiff's *Daubert* motion to exclude Dr. Fryzek's opinions, as if fully set forth herein.
[27] Motion at 7.

Respectfully submitted,

Dated: August 6, 2018                    /s/ *Andrea Pierson*
                                         Andrea Roberts Pierson (# 18435-49)
                                         FAEGRE BAKER DANIELS LLP
                                         300 North Meridian Street, Suite 2700
                                         Indianapolis, Indiana 46204
                                         Telephone: (317) 237-0300
                                         Facsimile:  (317) 237-1000
                                         E-Mail:  andrea.pierson@faegrebd.com
                                         E-Mail:  john.schlafer@faegrebd.com

                                         Counsel for Defendants Cook Incorporated,
                                         Cook Medical LLC (f/k/a Cook Medical
                                         Incorporated), and William Cook Europe ApS

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 6, 2018, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.  Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

/s/ *Andrea Pierson*