# **EXHIBIT E**

```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF INDIANA
                       INDIANAPOLIS DIVISION


IN RE: COOK MEDICAL, INC.,        )
IVC FILTERS MARKETING, SALES      ) Cause No.
PRACTICES AND LIABILITY,          ) 1:14-ML-2570- RLY-TAB
LITIGATION                        ) Indianapolis, Indiana
                                  ) October 12, 2017
                                  ) 10:03 a.m.
                                  )
```

**Before the Honorable
RICHARD L. YOUNG**

OFFICIAL REPORTER'S TRANSCRIPT OF
STATUS CONFERENCE


**For Plaintiffs:**               David P. Matthews, Esq.
                                  MATTHEWS & ASSOCIATES
                                  2905 Sackett Street
                                  Houston, TX  77098


                                  Ben C. Martin, Esq.
                                  LAW OFFICES OF BEN C. MARTIN
                                  3710 Rawlins Street, Suite 1230
                                  Dallas, TX  75219


                                  Joseph N. Williams, Esq.
                                  RILEY WILLIAMS & PIATT, LLC
                                  301 Massachusetts Avenue
                                  Indianapolis, IN  46204


                                  Michael W. Heaviside, Esq.
                                  HEAVISIDE REED ZAIC
                                  910 17th Street NW, Suite 800
                                  Washington, D.C.  20006

```
                              Matthew D. Schultz, Esq.
                              LEVIN PAPANTONIO THOMAS MITCHELL
                              RAFFERTY & PROCTOR PA
                              316 S. Baylen Street, Suite 600
                              Pensacola, FL  32502

                              Laura Baughman, Esq.
                              BARON & BUDD
                              3102 Oak Lawn Avenue
                              Dallas, Texas  75219


For Defendants:               Andrea Roberts Pierson, Esq.
                              John T. Schlafer, Esq.
                              Anna Rutigliano, Esq.
                              Victoria Calhoon, Esq.
                              FAEGRE BAKER DANIELS, LLP
                              300 N. Meridian St., Suite 2700
                              Indianapolis, IN  46204


                              Charles F. Webber, Esq.
                              Bruce G. Jones, Esq.
                              FAEGRE BAKER DANIELS LLP
                              90 S. 7th Street
                              Minneapolis, MN  55402


                              John Joseph Tanner, Esq.
                              BAKER & DANIELS
                              300 N. Meridian Street
                              Indianapolis, IN  46204

                              Abigail M. Butler, Esq.
                              James Stephen Bennett, Esq.
                              FAEGRE BAKER & DANIELS LLP
                              111 E. Wayne Street, Suite 800
                              Fort Wayne IN  46802

Court Reporter:               Margaret A. Techert
                              United States District Court
                              101 NW Martin Luther King Blvd.
                              Evansville, Indiana  47708


            PROCEEDINGS TAKEN BY MACHINE SHORTHAND
      TRANSCRIPT CREATED BY COMPUTER-AIDED TRANSCRIPTION
```

1   what they call reptile questions are rules that comport with
2   Cook's internal policies and procedures and what a reasonable
3   company does.
4           So when we ask questions, which they may accuse of
5   being reptile questions:  Miss so-and-so, does the company
6   have the responsibility to disclose the risks -- the safety
7   risks of your product?  And they say yes and confirm that
8   that's a rule, well, that's something the jury can take back
9   when they're deliberating and think okay; wel, the company
10  confirmed that a reasonable company would do this.  Let's
11  match it up with the evidence and see if Cook actually
12  followed that rule.
13          This word reasonable is amorphous.  What these
14  questions do in asking company witnesses, what are your
15  responsibilities to do, they flesh out for the jury what
16  reasonableness means.  So I'm not going to take much more time
17  than that.  I mean, I just --
18          THE COURT:  All right.
19          MR. WILLIAMS:  Be prohibited from engaging in
20  reptile tactics does us no guidance and should be denied.  If
21  they have an issue, they can object.
22          THE COURT:  Questioning, of course, will be
23  certainly about what this case is about, the facts of this
24  case.  There will be no misstatements as to the law.  You'll
25  be called out on that.

```
 1                MR. WILLIAMS:  Absolutely.
 2                THE COURT:  Both sides will be called on that.  We
 3    all know that's not proper.  We're not trying to anger the
 4    jurors.  Not trying to make them happy either.  I mean,
 5    it's -- we're just going to talk about the facts and the law
 6    of the case.  And if you stray from that, you'll be called out
 7    on it.
 8                MR. WILLIAMS:  There will be an objection and the
 9    Court will rule.
10                THE COURT:  Plain and simple.  I'll tell the jurors
11    they'll need to disregard that.  I know that doesn't -- the
12    bell has been rung many times in that situation but if you
13    start doing it often and I have to admonish -- jurors are not
14    going to like that.  I'm not going to like it either and
15    sanctions will come down pretty hard.
16                MR. WILLIAMS:  Thank you, Your Honor.
17                THE COURT:  That should take care of that.
18                MR. TANNER:  And I appreciate that, Your Honor; and
19    I just want to make --
20                THE COURT:  But they're -- plaintiffs are allowed to
21    talk about their case and reasonable, not reasonable.
22                MR. TANNER:  Absolutely.  But we do not want to or
23    like to object in opening statement.  But letting people know
24    if we see safety rule up there, that's going to be an
25    objection right off the bat unless it's barred.
```

1    THE COURT: I'm sure the plaintiffs and defense will
2 prepare their opening statements with all these concerns in
3 mind.  I'm not worried about that.  Mr. Williams is right;
4 reptile is pretty vague here.  I know you've outlined 30
5 questions here but I'm going to -- I'll grant this with the
6 understanding of what I've just said here.  We all know we're
7 not going to talk about a law that doesn't apply here.  We're
8 not going to talk about facts that aren't going to be
9 introduced into evidence.
10    MR. WILLIAMS: We're not going to be talking about
11 facts that are not introduced into evidence, Your Honor; but
12 I'm concerned if this order gets granted because it places us
13 at great risk.  The underlying purpose of tort law is to keep
14 people safe.
15    THE COURT: Right.
16    MR. WILLIAMS: And if we talk about something being
17 safe, I don't want somebody from Cook jump up and say, "Your
18 Honor, he just violated a motion in limine.  We got a
19 mistrial."  And so I would feel much more comfortable if the
20 motion was denied and then it's just taken up objection by
21 objection with, if we step over the line, which none of us
22 intend to do, Your Honor will come down on us.  We understand
23 that.  But what we don't want to do is risk having to try this
24 case again because there's an order with an amorphous
25 standard.

1                MR. TANNER:  They need to stick to what the law is
2     and what the facts are.
3                THE COURT:  Mr. Williams has indicated to me he'll
4     do that.
5                MR. TANNER:  Okay.
6                THE COURT:  If it make you feel a little more
7     comfortable, Mr. Williams, I'll go ahead and change my ruling
8     on that.  I'll deny it but with the understanding of how we
9     present.
10               MR. WILLIAMS:  I understand, Your Honor.
11               THE COURT:  No. 7.
12               MS. PIERSON:  Thank you, Your Honor.  Just one point
13    of clarification.  I think I heard you say earlier that motion
14    5 on the PMA process was withdrawn.  And just so our record is
15    clear, it is not withdrawn but the plaintiffs have stipulated
16    that they don't intend to offer such evidence at trial.
17               THE COURT:  All right.  Very good.
18               MS. PIERSON:  Thank you.  With respect to motion in
19    limine No. 7, I think I can be pretty brief, Your Honor.  It
20    is to bar any evidence or argument concerning alleged
21    promotion by Cook of use of IVC filters for off-label uses.
22    Say two things.  First, there is not evidence of that nature.
23    The plaintiffs don't have any evidence that they can point to
24    of communications outside the company where we're suggesting
25    to some doctor that they ought to be using these products for

1  something beyond the cases for use.
2             But second, even if there were such evidence that
3  existed, Your Honor's ruling on the failure to warn issue
4  really takes care of this issue.  And we know from Dr. Zuzga's
5  testimony, who is very clear, as we mentioned in our papers.
6  He did not receive anything from Cook.  He did not read
7  anything from Cook.  He received the IFU.  He didn't read it
8  but there was nothing else.  He expressly said -- and
9  Dr. Lynch, the retrieving physician, both expressly said no
10 one ever promoted to them the use of the product beyond the
11 indications of the use.  We think this ought to be a pretty
12 easy and simple issue.
13            THE COURT:  Thank you.  Mr. Williams?
14            MR. WILLIAMS:  Mr. Matthews is going to handle this
15 one.
16            MR. MATTHEWS:  David Matthews for the plaintiffs.
17 Just a clarification.  We do not anticipate arguing off-label
18 use.
19            THE COURT:  Which I didn't know about it.
20            MR. MATTHEWS:  Just to point out, though, I assume
21 the defendants are not going to bring up in the middle of the
22 trial this was an off-label use because if that happens, then
23 we must respond, just so the Court understands.
24            THE COURT:  That would open up the door.
25            MR. MATTHEWS:  I think it would.  So we don't have

1  any problem with this.

2          MS. PIERSON:  May I address that issue?  The
3  plaintiffs have connected these issues and they really are not
4  connected at all.  The product has indications for use,
5  specific indications in the instructions for use.  Dr. Kessler
6  will be opining about whether the product was adulterated or
7  not, and he'll talk about the indications for use for the
8  product.  So the fact that Dr. Zuzga, whether he did or didn't
9  choose it, to use a product beyond the indications for use,
10 that was his choice and his choice alone.  It wasn't based on
11 anything that anybody from Cook or anyplace else told him.  It
12 was his decision and we asked him that question very, very
13 clearly.

14         So -- and plaintiff's medical expert,
15 Dr. Marmureanu, says that Dr. Zuzga used the product when it
16 was medically unnecessary.  Those are his words.  So this
17 whole notion that off-label promotion, which by the way,
18 again, we did not promote the product off-label.  They don't
19 have any external documents to suggest that Cook ever promoted
20 for any use beyond the indication.  But even if Cook had,
21 hypothetically speaking, it would not matter or be relevant in
22 this case because Dr. Zuzga has expressly said nobody ever
23 promoted it to him that way.  It was his decision alone to use
24 this product off-label.

25         MR. MATTHEWS:  Two things, Judge.  This is really an

1   objective standard.  This is not Dr. Zuzga's standard.  In
2   other words, would this doctor have used this product had he
3   known?  But bigger than that -- I just want to be clear on
4   this -- there is a great amount of information that there was
5   off-label promotion of this product and that includes in the
6   state of Florida.  And Dr. Marmureanu is the doctor -- the
7   orthopedic doctor that actually prescribed or ordered this
8   particular filter.  Again, we do not anticipate bringing this
9   up but if it's brought up by the defendants, we would approach
10  the bench.  We won't bring it up in opening.
11             THE COURT:  We'll address it at that time.
12             MR. MATTHEWS:  All right.  Thank you.
13             MS. PIERSON:  Your Honor, with respect to motion in
14  limine No. 10, we think the plaintiffs have a good point in
15  part.  We agree that a blanket exclusion is inappropriate
16  right now as it relates to communications with foreign
17  regulatory authorities and the like, and we'll withdraw the
18  motion as to that issue.  But there were four specific pieces
19  of evidence that we would ask Your Honor to consider.  Three
20  of them were attached to our motion.  A fourth -- May I
21  approach, Your Honor?
22             THE COURT:  You may.
23             MS. PIERSON:  The four specific documents we'd like
24  you to take a look at in advance, they're communications by
25  the Australian government or European government or Canadian