# EXHIBIT  D

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION
_____

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

This Document Relates:
*Brand v. Cook Medical, Inc., et al.*
Case No. 1:14-cv-06018-RLY-TAB

_____

## BELLWETHER PLAINTIFF BRAND'S DESIGNATION OF EXPERTS AND OPINION TESTIMONY

In compliance with the Court's Case Management Orders and Rule 26 of the Federal Rules of Civil Procedure, Plaintiff Tonya Brand designates the following. The reports and Rule 26 requirements for the retained experts that are not served herewith are being served via separate electronic transmissions.

**I.      COOK DEFENDANTS' RULE 26(a)(2)(B) DISCLOSURES:**

Plaintiff Tonya Brand discloses the following retained expert witnesses pursuant to Federal Rule of Civil Procedure 26(a)(2)(B). Plaintiff certifies that expert reports, in compliance with Rule 26(a)(2)(B), have been served for each of these persons upon Defendants' counsel.

**Rebecca A. Betensky, PhD**
Department of Biostatistics, Massachusetts General Hospital & Co-Director, Data Management and Statistics Core, Massachusetts Alzheimer's Disease Research Center & Professor of Biostatistics, Harvard T. H. Chan School of Public Health
Massachusetts General Hospital
16th Street
Building 114, Suite 2011
Charlestown, MA 02129
617-432-2821
Available deposition dates:  June 25, 26, 27 in Charlestown, MA

1

**Michael Claude Fishbein, MD**
UCLA Medical Center, Santa Monica
Dept. of Pathology and Laboratory Medicine
10833 Le Conte Ave.
Los Angeles, CA 90095
310-825-9731
Available deposition dates:  May 15, 16, 18; June 4 ,5, 6 in Los Angeles, CA

**Gregory I. Gordon, M.D.**
986099 Nebraska Medical Center
Omaha, NE 68198-6099
402-639-8170
Available deposition dates: May 11 in Dallas at the Law Offices of Baron & Budd, P.C.

**Robert W. Johnson, MBA**
and co-expert
**James A. Mills**
Robert W. Johnson & Associates
4984 El Camino Real, Ste. 210
Los Altos, CA 94022
800-541-7435
Available deposition dates:  May 9 at 2 PM in Los Altos, CA

**Harlan Krumholz, M.D.**
Yale School of Medicine
1 Church St.
New Haven, CT 06519
203-764-5885
Available deposition dates:  June 28 in New Haven

**Alan Litsky, PhD**
Associate Professor, Biomedical Engineering, Orthopedics
Ohio State University
292 Bevis Hall
1080 Carmack Road
Columbus, OH 43210
614-292-5238
Available deposition dates:  May 22 or June 5 in Dallas at the Law Offices of Baron & Budd, P.C.

**Robert McMeeking, PhD**
Professor of Mechanical Engineering,
Tony Evans Professor of Structural Materials,
Department of Mechanical Engineering & Materials Department,
Engineering II, Room 2361A
University of California Santa Barbara

2

Santa Barbara CA 93106-5070
805-893-8434
Available deposition dates:  June 1 or June 8 in Santa Barbara, CA


**II.      COOK DEFENDANTS' RULE 26(a)(2)(C) DISCLOSURES:**

Plaintiff Tonya Brand intends to offer opinion testimony, as outlined below, from the following individuals who have not been retained as experts:


**1.      Mark Rheudasil, M.D.**
         Vascular Institute of Georgia
         5669 Peachtree Dunwoody Road
         Atlanta, GA
         (404) 851 - 7001

Specialty: Vascular surgeon
Curriculum vitae is attached as Exhibit 2 to his deposition.

Dr. Rheudasil may be called to testify live or by deposition in accordance with his medical records of Mrs. Brand and his February 28, 2018 deposition (and exhibits thereto), regarding his medical treatment of Tonya Brand and his opinions concerning Tonya Brand and IVC filters.  Specifically, Dr. Rheudasil may testify about the following facts and opinions:

- Mrs. Brand's filter was properly placed.

- He considers every commercially available filter equivalent in terms of their PE protection.

- He tells his patients placing an IVC filter is an insurance policy

- He placed the filter in Mrs. Brand as a prophylactic measure to try to reduce, minimize her risk for a pulmonary embolism.

- He does not recall his discussion with Mrs. Brand regarding the risks and benefits of the IVC filter.

- He is not sure if he intended to remove Mrs. Brand IVC filter and does not recall what he his discussion was about retrieving the filter.

- His believes the majority of retrievable filters are not retrieved and are left in the body long term.

- He decided to try to remove the after the piece came out of her thigh and  an x-ray confirmed the fracture.

- He could not retrieve the filter because he could not engage to hook.

- He left the filter in place as he was concern further attempts to remove it could result in additional fractures.

- Her case made him more enthusiastic about filter retrieval.

- He cannot guarantee that other Celect filters he has paced have not fractured.

- He does not track all of his patients for the results of placing a Celect filter.

- He discussed Mrs. Brand's case with Cook representatives including Darrell Talbert.  Cook thought the filter should be retrieved.

- He removed the filter because he did not whether it could cause medical problems in the future.  The fragments could go anywhere in the body and he was concerned it could migrate to her heart and potentially cause death.

- He does not use the Celect filter anymore.

- He reads the IFUs that come with filters and he had read the Celect IFU prior to the Brand surgery and the portion that says "optional retrieval".  He used the Cook retrieval set and other types of snares to try to remove the filter

- He expects the IFU to be truthful.

- A retrieval normally takes about 15 minutes but he worked on Mrs. Brand for 2 hours.  He believed the risk of continuing the attempted retrieval outweighed risk of leaving the filter in place.

- In July 2015, he and Mrs Brand decided together to remove the filter because they had objective evidence that there were ongoing issues with fragment movement and her knew she was nervous about it.

- The struts of the filter were penetrating the caval wall.

- He makes the decision as to whether to place a IVC filter, not Dr. Morrison.

- He considered the Tulip and Celect to be equally safe and if he thought one filter had a greater perforation risk than others he would not use it.

- Cook never told him the Celect was less safe than the Tulip .

4

- He would not have chosen the Celect filter if he knew the safety risks did not justify it or if he thought safety features had been removed from the Celect.

- He knows the IFU says that a clinical trial had been performed and that there were no perforations . It would potentially be important to him to know if there were actually multiple perforations in that study and he would want to know if there was a significant perforation risk.  If there were unreported perforations, it could affect his risk benefit analysis.

-  Long term filters are associated with an increased risk of thrombosis and the risk of clot.

- He has no scientific proof that placement of Cook Celect filter would have prevented the PE that Dr. Morrison's patent experienced or would hav prevented that patient's death.

This disclosure is intended to summarize the facts and opinions to which Dr. Rheudasil is expected to testify in compliance with Rule 26(a)(2)(C), and does not limit his ability to testify as to anything contained in his medical records or his deposition.

This treating physician's opinions are based on his education, training, and experience and personal examination and care of Mrs. Brand.  For greater detail, please see the medical records and deposition testimony from this treating health care provider.

**2.     Thomas Morrison, III, M.D.**
        Polaris Spine & Neurosurgery Center
        1150 Hammond Dr Ste 400
        Atlanta, GA 30328
        (404) 256 - 2633
Specialty:  Neurosurgery
Plaintiffs do not have Dr. Morrison's curriculum vitae.  Dr. Morrison received his  M.D. from Emory University School of Medicine and trained as a neurosurgeon through a fellowship at Northwestern University.

Dr. Morrison may be called to testify live or by deposition in accordance with his medical records of Mrs. Brand and his January 30, 2018 deposition (and exhibits thereto), regarding his medical treatment of Tonya Brand and his opinions concerning Tonya Brand and IVC filters. Specifically, Dr. Morrison may testify about the following facts and opinions:

- He referred Mrs. Brand to Dr. Rheudasil because she was going to be opening her during the spine, she had be through prior abdominal surgeries and he wanted Dr. Rheudasil's input on the surgical approach to use.

- Dr. Morrison does not have any expertise regarding complications or failure rates for filters.

- Dr. Morrison did not have anything to do with the selection of the filter.

- Dr. Rheudasil made the decision to place the IVC filter.

- Dr. Morrison does not think that the procedure they performed had an effect on the filter.

- Dr. Morrison thought referral to pain management might alleviate the symptoms in her back and they did not have physiatrist in their group to give injections.  The pain management could help settle her symptoms, make her more functional, more active and get back to a more normal life.

- Dr. Moss referred her to Dr. Morrison and Dr. Moss is a pain management physician.  Dr. Morrison was just sending her back for further evaluation.

- Dr. Morrison uses a retroperitoneal surgical approach and has Dr. Rheudasil, a vacular surgeon, open the patient to expose the spine.  That is why he had Mrs. Brand consult with Dr. Rheudasil before the back surgery.

- He is not an expert on how to avoid PEs after back surgery or with regard to all the options available to avoid a PE after back surgery.
- During his treatment of Mrs. Brand he has never had any reason to doubt her indications of pain or her level of pain.

- Bone spurs and osteophytes are a common occurrence in his line of work. Everyone has them unless they are under 20. He has never heard of bone spurs or ostephytes causing a filter to perforate, penetrate, fracture or migrate.

- He does not think that the bone spurs or osteophytes cause the filter to in this case.  He cannot see any reason why they would.

- He does not think the manipulating things in her retroperitoneal space caused her filter to fail.

- His understanding of what it means to when someone consents to a procedure is what is going to happen today in that procedure.  When people are signing a consent he does not think that they are expecting to have problems many years down the road.

- To his knowledge, Mrs. Brand did not  develop a DVT or clot as result of the surgery he performed nor did the filter catch a clot and his review of the records did not reveal anything to suggest the filter caught a clot.

- Dr. Morrison does not consider himself and expert as to efficacy of IVC filters, the failure rates of IVC filters, the design of cook filters, the subject of

pulmonary embolism, the risks and benefits of Cook IVC filters or the subject of IVC filters generally.

- The reasons why his believes his procedure did not cause the filter to fail as stated in his deposition testimony. This disclosure is intended to summarize the facts and opinions to which Dr. Morrison is expected to testify in compliance with Rule 26(a)(2)(C), and does not limit his ability to testify as to anything contained in his medical records or his deposition.

This disclosure is intended to summarize the facts and opinions to which Dr. Morrison is expected to testify in compliance with Rule 26(a)(2)(C), and does not limit his ability to testify as to anything contained in his medical records or his deposition.

This treating physician's opinions are based on his education, training, and experience and personal examination and care of Mrs. Brand. For greater detail, please see the medical records and deposition testimony from this treating health care provider.

    **3.**    **Scott Keller, D.O.**
Mountain East Family Medicine
4120 Five Forks Trickum Rd SW #105,
Lilburn, GA 30047
(770) 921-6900
Specialty: Family Medicine
Plaintiffs do not have Dr. Keller's curriculum vitae. Dr. Keller received his Doctorate of Osteopathic Medicine from West Virginia School of Osteopathic Medicine He completed his residence at South Point Hospital and is board certified in Family Practice.

Dr. Keller may be called to testify live or by deposition in accordance with his medical records of Mrs. Brand and his April 20, 2018 deposition (and exhibits thereto), regarding his medical treatment of Tonya Brand and his opinions concerning Tonya Brand and IVC filters. Specifically, Dr. Keller may testify about the following facts and opinions:

- He has treated Brand for over 20 years including 2014 to the present and there is nothing during that time period that Mrs. Brand did that would have affected her IVC filter or the open surgery she had to remove it.

- He has never trained with filters and does not know the risks or benefits of filters.

- He did not prescribe the filter and was not involved in its placement of any retrievals.

- The FDA approved dosage for diazepam in adults for anxiety is 2 to 10 mg from 2 to 4xs a day. Drs. Dean, Campbell, and Kawamura all used an approved dose. Dr. Frantz and his office prescribed diazepam 5mg to be taken 3xs per day for anxiety. That prescription was continued by Dr. Reisman, Dr. Smith or Dr. Setty.

- He does not know what symptomatology is associated with a perforated, fractured filter with filter struts in the body.

- A pain management specialist can prescribe valium for long term daily use.

- The prescription for 1 tablet every 3 days is a computer error.  The proper prescription is 1 tablet 3xs per day.

- The pain management specialists are the experts regarding her valium prescriptions not him.

- He is not an expert on the effects of a migrating IVC filter fragment or the symptoms produced in Brand from the perforation fracture or pieces of the filter remaining in her body.

- A stabbing pain in the abdomen is consistent with a foreign object in the body like a broken off piece of filter.  Oriegn objects can give you abdominal pain.

- Mrs. Brand is a complaint patient who always shows appropriate behavior.

This disclosure is intended to summarize the facts and opinions to which Dr. Keller is expected to testify in compliance with Rule 26(a)(2)(C), and does not limit his ability to testify as to anything contained in his medical records or his deposition.

This treating physician's opinions are based on his education, training, and experience and personal examination and care of Mrs. Brand.  For greater detail, please see the medical records and deposition testimony from this treating health care provider

**4.     Richard Reisman, M.D.**
        050 Bennett Rd.
        Grayson, GA 30017

Specialty: Anesthesia and Pain Management
Plaintiffs do not have Dr. Reisman's curriculum vitae.  Dr. Reisman received his  M.D. from New York Medical College and completed a residency in anesthesia.  He completed a pain fellowship at Brigham and Women's Hospital and is board certified in anesthesiology and pain medicine.
        .
        Dr. Reisman may be called to testify live or by deposition in accordance with his medical records of Mrs. Brand and his of February 22, 2018 deposition (and exhibits thereto), regarding his medical treatment of Tonya Brand and his opinions concerning Tonya Brand and IVC filters.  Specifically, Dr. Reisman may testify about the following facts and opinions:

- In November of 2015 Mrs. Brand had complaints of incisional pain and he did not think it would be unusual to complain about incisional pain.

- He did not find the frequency of her phone calls to his office between 2001 and 2006  and in the 2 months period in2015 to be surprising.

- It is normal for patients to call him multiple times and they do not call in for MRIs and injections for recreation. There is an anatomical relationship between her pain and the MRI results.

- Mrs. Brand did not appear on his radar as a drug seeker.

- Mrs. Brand never violated the opioid agreement she signed and was never discharged from his practice.

- He did not over prescribe pain medications to Mrs. Brand.

- The noted about her husband not understanding and that she complains too much is something he sees often with chronic pain patients.

- There are a number of exhibits to his deposition that were provided by Cook, like 7 and 8 and Dr. Reisman may address their accuracy and his interpretations of the exhibits.

-  He never sent her for psychological evaluation because he did not think it was necessary.  The problems with her spine were causing legitimate pain.

- Mrs. Brand had abdominal post-surgical pain and incisional after the open retrieval procedure.

- You cannot make a determination of Methamphetamine and methadone use based on a quick urine screen done in a clinic.  The results must be sent for mass spectroscopy confirmation. It is not uncommon  to see false positives.  Defense counsel never said the confirmatory tests were done when they met with him about his deposition, however the Plaintiff's attorneys did present the confirmation results to him and they showed the methadone and methamphetamine results were negative and the screen was a false positive.

- The mass spectroscopy reports confirm clinic results were false positives, she was not using methamphetamine or methadone.

- After speaking with defense counsel, he was concerned Mrs. Brand was using illegal drugs and it wasn't until plaintiff's counsel showed him the mass spectroscopy results days later that he saw the screen as false was false positive and he was happy to learn this.

- The mass spectroscopy results were not included in the records sent to him by defense counsel and defense counsel never told him the results.

9

- He has never known Ms. Brand to misrepresent her pain in order to get drugs.

- Defendants' attorneys' conversation with him included questions about all the drugs she was prescribed and if they could create a positive drug screen for methamphetamine. They would not.  Plaintiff's counsels showed him both of the test results in their conversation.

- Mrs. Brand's statements made in Mrs. Brand's disability applications would not have changed his treatment of Mrs. Brand.

This disclosure is intended to summarize the facts and opinions to which Dr. Reisman is expected to testify in compliance with Rule 26(a)(2)(C), and does not limit his ability to testify as to anything contained in his medical records or his deposition.

This treating physician's opinions are based on his education, training, and experience and personal examination and care of Mrs. Brand.  For greater detail, please see the medical records and deposition testimony from this treating health care provider.

5.    **Phu Thai, MD**
      3650 Steve Reynolds Blvd.
      Duluth, GA 30096
      404/365-0966

Specialty: Internal Medicine
Plaintiffs do not have Dr. Thai's curriculum vitae.  Dr. Thai received his M.D. from Emory University School of Medicine.  He is board certified in Internal Medicine.

Dr. Thai may be called to testify live or by deposition in accordance with his medical records of Mrs. Brand and his April 4, 2018 (and exhibits thereto), regarding his medical treatment of Tonya Brand and his opinions concerning Tonya Brand and IVC filters.  Specifically, Dr. Thai may testify about the following facts and opinions:

- He does not know the difference between brands or models of IVC filters or what their features are.  Hs is not the right guy to ask about the risks and benefits of IVC filters.

- He has never placed or retrieved  and IVC filter.

- The CT Scan in the Emergency department April 17, 2009 did not explain the cause of her pain. At this time he was not aware she had an IVC filter.

- He did not speak to Ms. Brand about her use of narcotics on July 7, 2009 because she was in pain management.  He does not manage her pain because you do not want more than one provider to manage the pain medications.

- In his experience it is not unusual for patients to request specific tests.  As a primary care doctor he has people request tests all the time.

- He did not prescribe the IVC filter for Mrs. Brand and he was not involved in her July 2011 retrieval attempt.

- He has never treated Mrs. Brand for a PE or DVT and at no point in time when he treated her did he believe her to be at risk for pulmonary embolus.

- He is not an expert on PE, the efficacy of IVC filters, or the efficacy of any brand or model of IVC filter called a Cook Celect.

- He has never assisted in the placement of a filter and sends people to others to determine the indications for use of filters.  .

- He has never prescribed and OVC filter for any patient.

- He has not researched IVC filters or been made aware of any information on Cook Celect filters or any studies that have been done.

- He does not recall when he became aware she had an IVC filter and can say he even saw the reference there being an IVC filter in place in one of the  x-ray reports discussed in his deposition.

- None of the decision making processes he made while he was her primary care physician were based upon the placement of the IVC filter.

- He is not an expert on IVC filters in anyway.

- Just because a condition is listed on the problem list updated does not mean it is a current or acute issue being treated at the time of the visit.

- His reference to stopping narcotic pain medicine on April 21, 2009 was in in context of her abdominal complaint, he meant for her to temporarily stop.  He was not intending to say she should get for all pain medicine for good,  Peole have legitimate pain and she  because she sees and pain clinic that is managing her chronic pain.

- He found Mrs. Brand to be that followed his advice.

- He found she was compliant with her pain medicine meaning she took it as prescribed. She never asked her to refill her prescriptions for more than what given to her.  The note he wrote when she fell and mentioned she did not want any prescription of pain medications was his attempt to tell the people reading his note she's not seeking pain medication  she is here to figure out what is wrong with her back.

11

- His understanding of tolerance to narcotic pain medication is that you get used to it. If you take the medication for legitimate pain your body can get used to a certain dose.

- If a patient becomes tolerant to a medication the pain management clinic will adjust the dose.

- A patient can have chronic abdominal pain and acute abdominal pain at the same time from a different source.

- Based on his review of the records Mrs. Brand's diabetes is controlled by her diet.

- If he had a patient who was noncompliant with pain medication he would contact the pain management clinic and discuss it with her doctor. He never felt it necessary to contact Tonya Brand's pain management doctors and say she was a drug seeker.

- He sees no record of noncompliant behavior with respect to her pain medication.

- He did not report to Cook any complication with an IVC filter, but he did not know that she had a complication with an IVC filter.

- He has never been made aware by any physician that Tonya Brand was a drug seeker.

This disclosure is intended to summarize the facts and opinions to which Dr. Keller is expected to testify in compliance with Rule 26(a)(2)(C), and does not limit his ability to testify as to anything contained in his medical records or his deposition.

This treating physician's opinions are based on his education, training, and experience and personal examination and care of Mrs. Brand. For greater detail, please see the medical records and deposition testimony from this treating health care provider

6.     **Dennis Griffin, M.D.**
       4501 S. Franklin
       Englewood, Co 80113
       Specialty: Diagnostic and Interventional Radiologist

Dr. Griffin is a consultant for the Cook Defendants who prepared a written report regarding Mr. Brand. The facts and opinions to which Dr. Griffin is expected to testify are those set forth in his depositions of April 10, 2018 (and exhibits thereto) as well as his written reports regarding Tonya Brand.

7.     **Paul C. Timperman, M.D.**
       Specialty: Interventional Radiology

Dr. Timperman is a consultant for the Cook Defendants who prepared a written report regarding Mr. Brand. The facts and opinions to which Dr. Timperman is expected to testify are those set forth in his depositions of April 18, 2018 (and exhibits thereto) as well as his written reports regarding Tonya Brand.

**8.    Jim Carlson, Ph.D.**
Specialty: Metallurgist

Dr. Carlson is a former senior metallurgist at Cook  Dr. Carlson's  opinions are based on his educational background, training, and relevant work experience. The facts and opinions to which Dr. Carlson is expected to testify are those set forth in his depositions of June 22, 2017 and September 14, 2017 (and exhibits thereto). Dr. Carlson is expected to testify, in the following areas:

- Dr. Carlson is a former employee of Cook

- Testimony about how fractured filters are evaluated by Cook.

- Including testimony about his own role in conducting those evaluations.

- Including testimony about the actual evaluations he made. Conducting chemical and metallurgical analysis, attempts to determine why some Cook IVC filters fractured.  authored reports evaluating filter fractures. Root cause analysis.

- Role in attempting to prevent filters from fracturing in the future.

- Authored reports evaluating fractures.

- Knowledge about incidence of—and relation between--tilt, perforation, and fracture. Forces/stresses placed upon the filter by tilt and perforation, cyclic fatigue.

- Design aspects / Development / Testing of the Celect filter, particularly with respect to forces/stresses placed upon it by tilt and perforation, cyclic fatigue.

- Design aspects / development of the Celect Platinum

- Changes Cook could have made to reduce rate of perforation.

- Testimony about materials (e.g., Elgiloy) used in the manufacture of Celect filter

**9.    Brian D. Choules, Ph.D.**
1805 W. Kelly Dr.
Prescott, AZ  86305

Dr. Choules is the former Technical Director (2006-2016) and Pre-clinical Bench Testing Manager (1998-2004).  His education and experience are detailed in his deposition taken on July 22, 2016.  Dr. Choules's opinions are based on his educational background, training, and relevant work experience at MED and CRI.  The facts and opinions to which Dr. Choules is expected to testify are those set forth in his depositions of July 22, 2016, and September 14, 2017 (and exhibits thereto).  Dr. Choules is expected to testify, only to the extent he was personally involved, in the following areas:

- The design, development, and testing timeline for Tulip, Celect, and Celect Platinum.

- The design control procedure, specification, and design inputs for Tulip, Celect, and Celect Platinum, including all design verification activities.

- All bench tests, animal tests, and FEA simulations for Tulip, Celect, and Celect Platinum.

- FEA and other Cook test methods, including set up test protocols, and interpretation of test results and end points.

- Facts concerning the design procedures and design files for the products in question.

- Analyzing fracture and filter behavior for Tulip, Celect, and Celect Platinum, and whether these designs are safe and effective and not prone to fracture.

**10.     Jennifer Brown, Ph. D.**
**         Cook Research, Incorporated**
         1 Geddes Way
         West Lafayette, IN 47906

Dr. Brown is the Director of Regulatory Affairs at Cook Research Incorporated ("CRI"). She began working at MED Institute ("MED"), which is now known as CRI, in August 2007, and prior to commencing work in her current role, she held the roles of regulatory scientist and scientific communications scientist, as well as the Director of Regulatory Science, at MED and CRI.  Dr. Brown's opinions are based on her educational background, training, and relevant work experience at MED and CRI.  Dr. Brown may be called to testify in accordance with her April 21, 2017,  May 8, 2017 and September 19. 2017 depositions (and exhibits thereto), as well as the following:

- Whether Cook's instructions for use for the Tulip, Celect, and Cook retrieval kits appropriately and accurately describe the potential adverse events with those products and the clinical studies described therein.

14

- Whether Cook's use of the descriptions in the "Potential Adverse Events" section of the instructions for use properly warned physicians of the risks associated with use of the products.

- Whether Cook's description of the Clinical Studies in the instructions for use was appropriate and adequately informed physicians about the studies.

- Whether Cook has appropriately communicated with FDA regarding potential changes to its IFUs.

**11.   John A. Kaufman, M.D.**
Dotter Interventional Institute
3181 SW Sam Jackson Park Rd.
Portland, OR  97239

Dr. Kaufman is the current Director of the Dotter Interventional Institute (the "Dotter Institute"), a division of the Oregon Health and Science University School of Medicine ("OHSU"). Dr. Kaufman's opinions are based on his educational background, training, and relevant work experience at the Dotter Institute and OHSU.  The facts and opinions to which Dr. Kaufman is expected to testify are those that are  set forth in his deposition, of August 02,2017 (and exhibits thereto).

Dr. Kaufman is a consultant for the Cook Defendants his deposition has been taken in this litigation and the testimony to be presented will be consistent with the testimony given at his deposition.

Very truly yours,

*/s/ Ben C. Martin*
Ben C. Martin, Esq.
The Law Office of Ben C. Martin
3710 Rawlins St Suite #1230
Dallas, TX 75219
Telephone: (214) 761-6614
Facsimile: (214) 744-7590
Email: bmartin@bencmartin.com
Plaintiffs' Co-Lead Counsel

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 30, 2018, a copy of **BELLWETHER PLAINTIFF BRAND'S DESIGNATION OF EXPERTS AND OPINION TESTIMONY** was served on counsel of record listed below by electronic mail:

| | |
|---|---|
| Andrea Roberts Pierson<br>andrea.pierson@FaegreBD.com<br>J. Joseph Tanner<br>joe.tanner@FaegreBD.com<br>John T. Schlafer<br>john.schlafer@FaegreBD.com<br>**Faegre Baker Daniels**<br>300 N. Meredian Street, Suite 2700<br>Indianapolis, IN 46204 | J. Stephen Bennett<br>stephen.bennett@FaegreBD.com<br>Abigail M. Butler<br>abigail.butler@FaegreBD.com<br>**Faegre Baker Daniels**<br>10 W. Berry Street, Suite 2400<br>Fort Wayne, Indiana 46802 |

Date: <u>April 30, 2018</u>

*/s/ Ben C. Martin*
Ben C. Martin, Esq.
The Law Office of Ben C. Martin
3710 Rawlins St Suite #1230
Dallas, TX 75219
Telephone: (214) 761-6614
Facsimile: (214) 744-7590
Email: bmartin@bencmartin.com
*Plaintiffs' Co-Lead Counsel*

# EXHIBIT A

**Exhibit A – Brand List of Medical Providers**

Plaintiff may seek to introduce opinion testimony as reflected in the medical records of the following:


Dean, Kenyatta, DO/Kaiser Permanente – Georgia Region, including imaging
3495 Piedmont Road, NE
Atlanta, GA 30305
404/364-7206

Dekalb Gastroenterology Associates, LLC
2675 North Decatur Road, Suite 506
Decatur, GA 30033
404/299-1679

Dekalb Medical Center
2701 North Decatur Rd
Decatur, GA 30033
404/501-1000

Eastside Medical Center, including imaging
1700 Medical Way
Snellville, GA 30078
770/979-0200

Emory St. Joseph Hospital, including imaging
5665 Peachtree Dunwood Rd NE
Atlanta, GA 30342
678/843-7001

Gwinnett Medical Center, including imaging
1000 Medical Center Blvd
Lawrenceville, GA 30046
678/312-1000

Kaiser Permanente, including imaging
3495 Piedmont RD NE
Atlanta, GA 30305
404/364-7000

Kaiser Permanent Glenlake Comprehensive Specialty Center
20 Glenlake Pkwy NE
Atlanta, GA 30328
800/611-1811

Kamean, Jeffrie, MD
2675 N. Decature Road, Suite 305
Decatur, GA 30033
404/299--8320


Keller, Scott, MD
4120 Five Forks Trickum Rd SW
#105
Lilburn, GA 30047
770/921-6900


Krebs, Henry, MD
600 Parkway North
Newna, GA 30265
678/582-9959


Kukler, B Mark, MD
763 Old Norcross Rd
Lawrenceville, GA 30046
678/985-2000


Levin, Keith, MD
601 Professional Drive
Lawrenceville, GA 30046
770/995-0400


Morrison, Thomas, MD
Polaris Spine & Neurosurgery Center
1150 E. Hammond Drive
Suite 400
Atlanta, GA
404/256-2633


Northside Hospital/Snellville Imaging
1608 Tree Lane, Bldg D, Suite 400
Snellville, GA 30078
770/985-9040

Northside Hospital – Atlanta, including imaging
1000 Johnson Ferry Rd
Atlanta, GA 30342
404/851-8000

Northside Meridian Radiology
5445 Meridian Mark Rd
Atlanta, GA 30342
404/459-1875

Reisman, Richard MD
575 Professional Drive
Lawrenceville, GA 30046
770/963-9905

Resurgens Orthopaedics - Lawrenceville
758 Old Norcross Road, Suite 100
Lawrenceville, GA 30046
770/962-4300

Rheudasil, Mark, MD
5673 Peachtree Dunwoody Rd
Suite 625
Atlanta, GA 30342
678/843-5450

Richard, Robert, MD
1000 Medical Center Blvd
Lawrenceville, GA 30046
678/312-6200

Setty, Gurudatt, MD
1000 Medical Center Blvd
Lawrenceville, GA 30046
770/963-9905

Northside Hospital
1000 Johnson Ferry Rd
Atlanta, GA 30342
404/851-8000

Thai, Phu, MD/Kaiser Permanente – Georgia Region
3495 Piedmont Road, NE, Bldg 11
Atlanta, GA 30305
770/931-6012

Vascular Institute of Georgia
5669 Peachtree Dunwoody Road
Atlanta, GA 30342
404/256-0404

Vergis, Lois, MS, RD, LD, CDE
1000 Medical Center Blvd NW
Lawrenceville, GA 30046
678/4117