# EXHIBIT T

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

This Document Relates to Plaintiff

*Tonya Brand*
No. 1:14-cv-06018-RLY-TAB

## **AFFIDAVIT**

I, Steven M. Kurtz, do declare and state the following:

1.  I am over 18 years of age and competent to testify to the matters set forth in this declaration.

2.  I have been asked to review records related to the chain of custody of Ms. Brand's filter and fragments. The circumstances associated with the preservation, handling, and chain of custody of the retrieved device and fragment did not meet generally accepted scientific procedures and international standards.

3.  In particular, at the time of removal and for a period of time thereafter, the explanted filter and fragments and the fragment allegedly removed by Ms. Brand four years before were not photo-documented, packaged, stored, and chain of custody maintained in accordance with the guidelines of international standards and CMO #1 and CMO #14.

4.  I have appropriate expertise and qualifications to reach these conclusions as detailed below.

US.119085867.01

**Background & Qualifications**

5.  Beginning in 1995, I have worked at Exponent, Inc., where I currently hold the positions of Corporate Vice President, Director of the Biomedical Engineering practice and Principal.

6.  Concurrently, I also serve as a part-time Research Professor and Director of the Implant Research Center at Drexel University's School of Biomedical Engineering, Science, and Health Systems. At Drexel University, I supervise a multi-institutional hip, knee, spine, and cardiovascular implant retrieval program. My retrieval research has been supported by the National Institutes of Health (NIH) as well as the Food and Drug Administration (FDA).

7.  As part of my academic research, I routinely analyze explanted medical devices to evaluate the clinical, patient, and implant factors associated with their reasons for revision. My research activities have also emphasized the real-world clinical performance of medical devices as assessed by national health care databases and mechanical behavior of synthetic biomaterials.

8.  I have been actively involved in the design, research, development, and validation of new technologies and designs for the medical device industry.

9.  I also collaborate with the FDA on research projects of mutual interest, all of which involve my expertise in medical device and tissue retrieval and analysis.

10. I am currently active in several professional societies, including the American Society for Testing and Materials. I served as a delegate representing the United States at International Standards Organization (ISO) Technical Committee on Implants for Surgery (TC 150) between 2000 and 2009.

11. At ASTM, I have also served as the co-chair for the Workshop on Retrieval Analysis of Implants, Tissues and Fluids in 2015; as well as the co-chair for the Symposium on

Beyond the Implant: Retrieval Analysis Methods for Implant Surveillance in 2017. In 2015, I received the Patrick Liang Award from ASTM for my contributions to field of Medical and Surgical Materials and Devices. This is the highest level of recognition that is available to ASTM Committee F04, and it is awarded annually to currently active individuals within the committee who have made particularly outstanding contributions to the work of the committee in developing standards for medical and surgical materials and devices (http://www.astm.org/MEMBERSHIP/filtrexx40.cgi?-P+AC+78+awards.frm).

12.     I have edited eight books and written over 240 journal articles and 500 conference abstracts, the majority of which are related to the clinical performance of implanted medical devices. I am the founding editor of three educational websites. My CV is attached as an appendix to this declaration.

**Cook Celect™ IVC Filter**

11.     Inferior vena cava (IVC) filters emerged in the 1970s as a preventative measure to capture migrating venous thromboemboli (VTE), or blood clots, and prevent them from entering the lungs and becoming pulmonary emboli (PE).

12.     The Cook Celect™ device, at issue in this case, is one such IVC filter. The device is a conical shape comprised of eight Conichrome arms and four legs which are attached to a retrieval hook through a cylindrical sleeve (MDL2570_0944275). Conichrome is a cobalt-chromium-nickel-molybdenum-iron alloy (Rajasekhar A, Streiff MB. Vena cava filters for management of venous thromboembolism: a clinical review. Blood Rev 2013;27:225-241).

**International Standard Practice for Device and Tissue Retrieval Analysis**

13.     ASTM F561 describes an internationally accepted standard practice for retrieval and analysis of medical devices, and associated tissues and fluids (ASTM F561-13: Standard

3

Practice for Retrieval and Analysis of Medical Devices, and Associated Tissues and Fluids, https://www.astm.org/Standards/F561.htm, Accessed: August 1, 2018). As a member of ASTM F04, I have been involved in the development of this standard practice, which aims "to provide guidance in preventing damage to the associated specimens which could obscure the investigational results, and in gathering data at the proper time and circumstance to validate the study" (ASTM F561-13, p. 1).

14. The standard practice emphasizes that the recommended practices "should be applied in accordance with […] legal requirements regarding the handling and analysis of retrieved implants and excised tissues, especially with regard to handling devices which may become involved in litigation" (ASTM F561-13, p. 1).

15. Specifically, the internationally accepted standard practice outlined in ASTM F561 describes the appropriate minimum information to be collected and maintained to ensure device traceability. Some of these minimum requirements include date of implantation, date of explantation, location of device implantation and removal, device identification (manufacturer's name and device catalogue number), device lot and serial number, and intraoperative photographs (ASTM F561-13, p. 5).

16. In addition, a Stage I Analysis of the implant components "should be conducted routinely on all retrieved devices" (ASTM F561-13, p. 13).

17. A Stage I examination consists of, but is not limited to, a documented chain of device custody, a written description of the device, a macroscopic examination (either with the unaided eye or a stereo-microscope), and sketches or photographs of the current state of the retrieval (ASTM F561-13, p. 13).

4

**Deposition Testimony of Ms. Brand**

18. I have reviewed deposition testimony from Ms. Brand. According to Ms. Brand, in June of 2011, she removed a piece of metal from her right leg (Deposition of Tonya Brand, taken on June 16, 2017, pp. 24-25, ll. 24-25 and 1-6). Ms. Brand alleges that she taped the piece of metal to a piece of paper, which she placed in an envelope and kept in her nightstand for more than a year (Brand Dep., pp. 25-26, ll. 11-25 and 1-24). She testifies to then transferring the envelope and its contents to a safety deposit box (Brand Dep., pp. 26, ll. 9-24).

19. Shortly after the body of filter was explanted in 2015, Ms. Brand was given custody of the retrieved pieces, which she kept in a container in her nightstand (Brand Dep., pp. 33, ll. 4-19).

20. According to Ms. Brand, the envelope and its contents remained in the safety deposit box until less than one week prior to her December 2015 deposition, at which point she transferred it back to her nightstand drawer (Brand Dep., pp. 27-28, ll. 22-25 and 1-8).

21. Ms. Brand then brought the filter and fragments to her December 2015 deposition. She returned home with the filter and fragments, and soon after shipped them to a third party (Brand Dep., pp. 28, 34).

**Protocols in This Case**

22. MDL 2570 Case Management Order (CMO) #1 (filed February 20, 2015, (Pathology and Medical Device Protocol) – Document 243; Amended CMO #1 (Pathology and Medical Device Protocol) – Document 1662; Second Amended CMO #1 (Pathology and Medical Device Protocol) – Document 4225) describes protocols for the preservation and handling of retrieved or explanted medical devices to be entered in MDL 2570. The order describes that within 24 hours of receipt of information that an explantation procedure has been

5

scheduled, the Plaintiff's Counsel has a responsibility to disclose the procedure to Cook's Counsel and provide the explanting Facility with instructions regarding the collection, preservation, and documentation of the Material. In addition, the order directs that for Materials already possessed by Plaintiffs, information regarding its existence and present location, as well as documentation (photographs, video, etc.) of said Materials shall be provided to Cook's Counsel within 7 days of the order being entered.

23.     Materials shall then be documented on a chain of custody forms provided to Cook's Counsel upon disposition to Cook's designee.

24.     MDL 2570 Case Management Order #14 (CMO #14: Supplemental Preservation, Inspection, and Testing Protocol – Document 1663, filed May 24, 2016) supplements the provisions of CMO #1 and any amended versions thereof, and describes protocols for the preservation, inspection, and testing of explanted filters (or fragments thereof) and any biological material on, in, or attached to the filter. The order describes standards for packing and shipping Filters and Attached Tissue, intake by testing/inspection laboratories, sterilization and tissue removal, and return of Filters.

**Chain of Custody**

25.     According to Ms. Brand, she removed a fragment of the filter from her thigh on June 17, 2011, and from then until December 10, 2015, the fragment was in her exclusive possession and control (Plaintiff Tonya Brand's Objections and Responses to Defendants' First Set of Requests for Admissions, pp. 5-6). Ms. Brand alleges that for several years during this timeframe, the fragment was held in a Wells Fargo safety deposit box in Snellville, Georgia (Brand Dep., pp. 27-28, ll. 22-25 and 1-8; Plaintiff Tonya Brand's Objections and Responses to Defendants' Fourth Set of Request for Production, p. 3). Wells Fargo, however, does not

6

maintain access records relating to the box, and therefore, no documents relating to this storage exist (Plaintiff Tonya Brand's Objections and Responses to Defendants' Fourth Set of Request for Production, p. 3).

26. The remainder of the filter (body and two fragments) was retrieved on October 22, 2015 by Dr. James Mark Rheudasil and a gross examination was documented on the following day by Dr. C. Blake Hutchinson (Emory St. Joseph's Hospital Records, pp 000002-000005). Soon thereafter, the explanted filter was given to Ms. Brand, which she stored in a container in her nightstand (Brand Dep., p. 33, ll. 4-19). According to Ms. Brand, she retrieved the fragment removed from her leg from the safety deposit box less than one week prior to her December 2015 deposition, at which point she transferred it back to her nightstand where the explanted filter was kept (Brand Dep., pp. 27-28, ll. 22-25 and 1-8).

27. On December 10, 2015, Tonya Brand brought both the explanted filter and the fragment removed from her leg to her deposition, where Cook's counsel viewed the items (Plaintiff Tonya Brand's Objections and Responses to Defendants' First Set of Requests for Admissions, p. 5). Ms. Brand brought the materials home after the deposition and on January 15, 2016, she released the materials to Steelgate, Inc. via FedEx shipment (Response to Request for Production Nos. 5, 6 & 7; Brand Dep., p. 29, ll. 10-25).

28. Steelgate received the shipment on January 18, 2016. Thereafter, Suncoast Pathology received the samples on December 20, 2016 (Response to Request for Production Nos. 5, 6 & 7). Suncoast imaged and weighed the explant pieces, softened and fixed the tissue in 10% neutral buffered formalin, removed tissue from the explant, cleaned the explant in Cidex, and finally weighed the explant pieces. The removed tissue was labeled in unique jars containing

formalin. The explant pieces were placed into jars of 10% formalin. The materials were returned to Steelgate on January 10 and 11, 2017 (Response to Request for Production Nos. 5, 6 & 7).

29. Following their return to Steelgate and prior to my inspection on May 18, 2018, the samples were received by Matthews & Associates (January 13, 2017), redacted (redacted), Matthews & Associates (March 27, 2017), redacted (redacted), redacted (redacted), Matthews & Associates (July 11, 2017), Faegre Baker Daniels (September 6, 2017), Fathom Engineering (September 8, 2017), Faegre Baker Daniels (December 13, 2017), Exponent (January 2, 2018), Faegre Baker Daniels (February 14, 2018), Exponent (May 18, 2018) (Response to Request for Production Nos. 5, 6 & 7; Chain of Custody Form Received with Shipment from Faegre Baker Daniels, LLP).

30. On January 25, 2017, Alan S. Litsky performed an examination of the explant. The explant was ultrasonically cleaned in ethanol prior to scanning electron microscopy and energy dispersive spectroscopy.

**Exponent Inspection**

31. On May 15, 2018, I performed a gross, non-destructive inspection of Ms. Brand's explanted Cook Celect™ IVC filter and fragments in accordance with CMO #14 (Supplemental Preservation, Inspection, and Testing Protocol: Document 1663). The explant was photographically documented for reference purposes only (Figure 1), and no nondestructive testing or high magnification, scanning electron microscopy imaging was performed.

8



Figure 1.  Optical microscope image of Ms. Brand's explanted Cook Celect™ IVC filter and fragments. The fragment which is alleged to have been removed from Ms. Brand's thigh is on the far left.

32.   The explant was received in two jars, one which contained the fragment that was alleged to have been removed from Ms. Brand's thigh, and a second jar which contained the body of the filter and two additional fragments. The materials were then re-packaged as received in accordance with CMO #14.

33.   I was able to confirm that the device and tissues, as of the date of my inspection, was packaged, stored, and chain of custody maintained in accordance with the guidelines of ASTM F561 and CMO #14.

**Summary and Conclusions**

34.   The goal of retrieval analysis is to scientifically interpret changes in the implants and periprosthetic tissues around implants after they are removed from the human body. However, for these analyses to be conducted in a rigorous, reliable, and scientific manner, the explanted device and tissues must be stored in a controlled environment upon removal from the body with confidence that they have not been altered physically or chemically since the time they were explanted.

9

US.119085867.01

35. In this case, the fragment that was alleged to have been removed from Ms. Brand's leg in June 2011 was not appropriately stored, photo-documented, or professionally examined for almost 5 years after the incident is reported to have taken place.

36. The filter (body and two fragments), retrieved on October 22, 2015, was also not appropriately stored, photo-documented, or professionally examined for nearly three months after retrieval.

37. Under these circumstances, the information obtained from analyzing this device cannot be relied upon with scientific certainty. The condition of the filter when it was removed from the body cannot be confirmed with certainty from the fragmented components because of its inappropriate storage and disposition after explantation.

38. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: August 6, 2018   _____
Steven M. Kurtz, Ph.D.

Respectfully submitted,

Dated: _____, 2018

_____
Jane Dall Wilson (# 24142-71)
Andrea Roberts Pierson (# 18435-49)
John T. Schlafer (# 28771-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
Email: jane.wilson@faegrebd.com
Email:  andrea.pierson@faegrebd.com
Email:  john.schlafer@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

## CERTIFICATE OF SERVICE

I hereby certify that on _____, 2018, a copy of the foregoing was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.  Lead Co-Counsel for Defendants will serve any non-CM/ECF registered parties.

/s/ _____

US.119010381.01

11