**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

IN RE: COOK MEDICAL, INC., IVC
FILTERS MARKETING, SALES PRACTICES
AND PRODUCT LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

This Document Relates to:
*Brand*; Case No.: 1:14-cv-06018-RLY-TAB

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE
COOK DEFENDANTS' MOTION TO BIFURCATE**

COMES NOW Plaintiff Tonya Brand and files her response to the Cook Defendants' ("Cook") Motion to Bifurcate, and in support thereof, respectfully shows the Court as follows:

**I.      INTRODUCTION**

Ignoring black letter Georgia law, Cook refiled its Motion to Bifurcate from the *Hill* case – a motion that has almost no relevance to the law and facts of the *Brand* case. In its motion, Cook asks that the compensatory damage and punitive damage portions of the case be segregated into separate trial phases using the same jury. Specifically, in contravention of Georgia law, Cook requests a first phase limited to liability and compensatory damages and a second phase addressing both entitlement to and the amount of punitive damages.

In contrast, under Georgia law "the trier of fact shall first resolve from the evidence produced at trial whether an award of punitive damages shall be made." O.C.G.A. § 51-12-5.1(d)(1). "If it is found that punitive damages are to be awarded, the trial shall immediately be recommenced in order ***to receive such evidence as is relevant to a decision regarding what amount of damages will be sufficient***. . . ." *Id*. at § 51-12-5.1(d)(2)[emphasis supplied].

1

The law is so clear-cut on this issue that the parties in the recently tried *Booker* case in the Bard IVC Filter MDL – a case like *Brand* where the plaintiff was a Georgia resident – *stipulated* to bifurcation consistent with Georgia's statute.  The Court's order on the parties' joint stipulation reads: "The trial of this case will be conducted in two phases: determining liability, compensatory damages, and whether punitive damages should be awarded in the first phase of trial and, if necessary, determining the amount of punitive damages in the second phase following the procedures set out in Georgia's state statute on punitive damages – O.C.G.A. § 51-12-5.1(d)."  *In re: Bard IVC Filters Products Liability Litigation*, Case No. MDL15-2641-PHX DGC, Order (D. Az. Feb. 12, 2018), attached hereto as Exhibit A.  Mrs. Brand urges the Court to follow the lead of the Bard MDL and follow Georgia law here.

Cook has not (and cannot) satisfy its burden to compel bifurcation in contravention of Georgia law, or the even higher burden for trifurcation, nor has it shown that its proposal regarding bifurcation or trifurcation will promote judicial economy or efficiency in this trial. Cook's motion is deficient in a number of ways:

- Cook misstates Ms. Brand's claims and the basis for those claims.  It repeatedly argues that the only issues at trial are design defect and failure to warn. (Def. Memo. at 1, 3, 4, 6, 7, 8, 12, 13, & 16.)  Cook never mentions Plaintiff's negligence claim. Unlike *Hill*, under Georgia law, Mrs. Brand is permitted to submit negligence to the jury in this product liability case.[1]  Negligence focuses on whether Cook's conduct was reasonable.  All of the evidence proving negligence is evidence that also informs the jury's determination of entitlement to punitive damages.

- Cook ignores Georgia law.  For example, Cook contends that "documents that post-date Mrs. Brand's March 19, 2009 filter placement can have no bearing on

---

[1] Georgia law recognizes separate and distinct claims for negligence and strict liability for both design defect and failure to warn in product liability cases.  *See Cason v. C.R. Bard*, 2015 WL 9913809; *In re Mentor Corp. ObTape Transobturator Sling Prod. Liab. Litig*., 711 F. Supp. 2d 1348, 1364 (M.D. Ga. 2010).  Plaintiff claims that Cook was negligent in the design of the Celect filter and in the adequacy of the warning that accompanied it.  Both of these claims sound in both negligence and strict liability, and therefore Plaintiff may present both claims under each theory to the jury.  *See Persinger v. Step By Step Infant Dev. Ctr*., 253 Ga. App. 768, 769 (2002).

her claim of failure to warn, which hinges on content in the label." (Def. Memo. at 6) However, under Georgia law, Cook had a continuing duty to warn of dangers arising from its product after sale, including a duty to previous purchasers. *See Chrysler Corp. v. Batten*, 264 Ga. 723,724,450 S.E.2d 208, 211 (1994); *Ford Motor Co. v. Reese*, 300 Ga.App.82, 684 S.E.2d 279, 284 (2009).

- Independent of the negligence claim, evidence of Cook's conduct is relevant to Ms. Brand's design defect and failure to warn claims. For example, evidence that Cook knew of the dangers of the Celect's design and failed to warn and failed to employ an alternative design constitutes evidence of Cook's conduct that is relevant to failure to warn, design defect, negligence, and punitive damages.

- In its motion, Cook repeatedly cites the Court's bifurcation decision in *Hill*, but at the time the Court reached that decision, Ms. Hill only had a design defect claim; negligence and failure to warn were no longer at issue. In contrast, Mrs. Brand has negligence, failure to warn and design defect causes of action.

- Cook proposes a novel form of bifurcation (segregating entitlement to punitive damages from the compensatory phase) that is inconsistent with Georgia's punitive damages statute. O.C.G.A. § 51-12-5.1. The vast majority of the cases cited by Cook did not involve bifurcation of this sort. Many did not involve punitive damages at all, and one case that did involve punitive damages merely bifurcated the *amount* of punitive damages in a second trial phase, which is consistent with Georgia law.[2]

- It would be inefficient, and perhaps impossible, to parse out evidence of negligence, failure to warn, and product defect from evidence of reprehensibility (i.e., entitlement to punitive damages). The inordinate number of side bars with the Court that would be required to discuss each document and each question to determine whether they are relevant to negligence/failure to warn/product defect, entitlement to punitive damages, and/or amount of punitive damages would introduce an extreme and unnecessary amount of delay to the trial.

- Cook's fear that it will be prejudiced if the jury hears evidence of Cook's financial position (*i.e.*, net worth) is addressed by Georgia law, which provides that the amount of punitive damages will be determined in a separate phase. Meanwhile the prejudice to Plaintiff if Cook's bifurcation motion is granted – including the expense of having to recall witnesses during two (or three) separate trial phases, the unavoidable delay occasioned by disputes over evidence, and jury disinterest and confusion after sitting through repetitive evidence presented in two or three trial phases – cannot easily be cured.

---

[2] *In re Actos (Pioglitzaone) Prods. Liab. Litig.*, 2014 WL 5461859 at *8 (W.D. La. Oct. 27, 2014) ("After the close of the evidence at trial, this Court instructed the jury on the law applicable to their determination of whether punitive damages should be awarded…. Only after the jury had found in the affirmative as to both Defendants did the second phase of the trial begin, during which the jury was to determine the amount of punitive damages.")

For these reasons, Plaintiff respectfully requests that Georgia law be followed and that Cook's motion be denied.

## II.     ARGUMENT AND AUTHORITIES

### A.  Legal Standard

There is no presumption in favor of bifurcation. *Trinity Homes, LLC v. Regent Ins. Co.*, No. 1:04-cv-1920JDTWTL, 2006 WL 753125, at *2 (S.D. Ind. Mar. 20, 2006). The "normal procedure is to try compensatory and punitive damage claims together …." *Smith v. PH Mortgage Corp.*, 2015 WL 4256532, at *5-7 (N.D. Ind. July 14, 2015) (citing *McLaughlin v. State Farm Mut. Auto. Ins. Co.*, 30 F.3d 861 (7th Cir. 1994)). Bifurcation is the exception to the rule that all issues in a case should be tried together. *Keyes Fibre Co. v. Packaging Corp. of Am.*, 763 F. Supp. 374, 375 (N.D. Ill. 1991).

A district court may bifurcate issues for trial in furtherance of convenience, to avoid prejudice, or to economize and expedite a trial. Fed. R. Civ. P. 42(b). Bifurcation may be appropriate if the party seeking it shows that doing so: (1) serves the interests of judicial economy, (2) does not unfairly prejudice the non-moving party, and (3) does not violate the Seventh Amendment. *Krocka v. City of Chicago*, 203 F.3d 507, 517 (7th Cir. 2000). The party seeking bifurcation has the burden of proving judicial economy would be served and that the opposing party would not be prejudiced by separate trial. *Ralzar v. Am. Family Ins. Co.*, No. 2:08-cv-241, 2009 WL 1543524, at *2 (N.D. Ind. June 2, 2009); *Montgomery v. Am. Family Ins. Co.*, No. 3:09-cv-00545, 2010 WL 1936085, at *2 (N.D. Ind. May 11, 2010).

Bifurcation is not the preferred method of proceeding in a lawsuit, especially where issues and evidence supporting them may overlap and one must "carve at the joint" to bifurcate issues. *Hydrite Chemical Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 890 (7th Cir. 1995); *see*

*also State of Ala. V. Blue Bird Body Co.*, 573 F.2d 309, 318 (5th Cir. 1978) (bifurcation should be reserved for issues that are "so distinct and separable from the others that a trial of it alone may be had without injustice"). When there is a significant overlap of issues, management of trial is not served by bifurcation. *McLaughlin v. State Farm Mut. Auto. Ins. Co.*, 30 F.3d 861 (7th Cir. 1994). To divide a trial into two different issues to be heard separately can be a recipe for disaster. *Hydrite Chemical Co.*, 47 F.3d at 890. Bifurcation is also expensive for the court and the parties. *Jones v. Travco Ins. Co.*, 2014 WL 1404726, at *2 (S.D. Ind. April 9, 2014). Although Cook argues that "courts have often adopted bifurcation to promote just such convenience and economy," (Def. Memo. at 2), the vast majority of the cases it cites for this proposition did not bifurcate the trial in the manner Cook seeks here.[3] Without these benefits, bifurcation should be denied.

In this case, Plaintiff acknowledges that Georgia law specifically provides for bifurcation, but the statute limits the second phase solely to a determination of the amount of punitive damages. O.C.G.A. § 51-12-5.1(d)(1) & (2). Georgia law does not require nor support Cook's request that the evidence needed to support entitlement to punitive damages be excluded from the liability phase of the trial. In fact, the Georgia statute specifically states such evidence will be presented

---

[3] *See Chlopek*, 499 F.3d at 697 (bifurcating compensatory liability and damages—no punitive issue); *Krocka* 203 F.3d at 516 (same); *Houseman*, 171 F.3d at 1121 (same); *Vandersteen*, 2010 WL 659327 at *2-3 (damages-only trial bifurcating punitive liability because no liability evidence would be presented in compensatory phase); *In re Actos*, 2014 WL 5461859 at *8 (bifurcating *amount* of punitive damages but trying *entitlement* to punitive damages in compensatory phase). Cook cites two other cases that bifurcate punitive damages where "primary liability theories of product defect and failure to warn do not implicate inquiry into corporate conduct." (Def. Memo. at 4.) These two cases are inapposite because Mrs. Brand's negligence claim is all about "corporate conduct." Only one of these two cases bifurcated punitive damages in the peculiar manner suggested by Cook, and it was a pollution/nuisance case, not a products liability case. *See Emerick*, 750 F.2d at 22 (bifurcating compensatory liability from all damages and all punitive damage issues); *Scheufler*, 895 F. Supp. 1411 at 1413 (trial court order bifurcating all punitive issues from compensatory issues where there is no overlap of issues). Cook also cites two other inapposite cases. *Gresser*, 29 Fed. Appx. at 435-36 (unpublished opinion in an excessive force case segregating punitive damages from individual and municipal liability issues where each phase "did depend on a distinct theory [of liability]"); *Hydrite Chem.* 47 F.3d at 889 (bifurcating compensatory liability and damages—no punitive issue).

in the first phase along with the liability case: "the trier of fact shall first resolve from the evidence produced at trial whether an award of punitive damages shall be made." *Id.* at § 51-12-5.1(d)(1). There is no benefit to excluding evidence that would support a jury finding in favor of punitive damages from the first phase of the trial, and thus Cook's request for bifurcation should be denied and the court should only bifurcate the issue of the amount of punitive damages in compliance with Georgia law.

  **B. Bifurcation of the Evidence Regarding Entitlement to Punitive Damages Will Not Serve the Interest of Judicial Economy.**

    **1. There is substantial overlap between the evidence supporting general liability and causation and the evidence supporting punitive damages.**

Issues of liability and punitive damages are closely intertwined in this case. When the evidence substantially overlaps, "the normal procedure is to try compensatory and punitive damage claims together with appropriate instructions to make clear to the jury the difference in the clear and convincing evidence required for the award of punitive damages." *Hangarter v. Provident Life and Acc. Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) (citing *McLaughlin v. State Farm Mut. Auto Ins. Co.*, 30 F.3d 861, 871 (7th Cir. 1994)). This is of course the normal procedure under Georgia law. O.C.G.A. § 51-12-5.1.

Bifurcation of the issues related to liability based on negligence, product defect and failure to warn from punitive damage liability is not convenient, expeditious or economical if evidence goes to multiple issues in the case as it would therefore necessitate the duplication of evidence in multiple trials. Efficiency is served when evidence on multiple issues is presented once. *Keyes*, 763 F. Supp. at 375; *Creek v. Village of Westhaven*, 1991 WL 203792, at *1 (N.D. Ill., October 1, 1991) (bifurcation of trial on liability and damages inappropriate because issues were closely intermingled); *Welcker v. Smithkline Beckman*, 746 F. Supp. 576, 583 (E.D. Pa.

1990) (denying bifurcation of liability and damages: "[B]ifurcation would probably result in duplicative testimony, rather than a saving of time."). Cook's proposal would unnecessarily lengthen the trial and require duplicative evidence in separate phases.

Cook contends that the evidence Plaintiff needs to bring her design defect and failure to warn claims does not "primarily depend on inquiry into the Cook Defendants' conduct." (Def. Memo. at 4). This is incorrect. First, Cook overlooks Plaintiff's negligence claim. The jury's negligence determination is based on the reasonableness of Cook's conduct.[4] The jury's determination on entitlement to punitive damages depends on the reprehensibility of the very same conduct: "Evidence of actual harm to nonparties can help to show that *the conduct that harmed the plaintiff* also posed a substantial risk of harm to the general public, *and so was particularly reprehensible*. *Philip Morris USA v. Williams*, 549 U.S. 346, 355 (2007) (emphasis added); *see also id.* at 354 (holding that potential harm is relevant to establishing punitive damages so long as it "was harm potentially caused *the plaintiff*") (emphasis in original). For Plaintiff to succeed on her negligence claim, she must show evidence of duty, breach of duty, and causation. Thus, evidence relating to Cook's conduct bears directly on whether Cook breached its duty of care in the design and development of the product and/or through the warnings given.

Independently, evidence of Cook's knowledge and subsequent conduct, or lack thereof, is also relevant to Mrs. Brand's failure to warn and design defect claims. Specifically, Cook knew that the Celect filter posed increased risks of perforation, including progressive perforation, and that perforation can lead to fracture, as occurred in Mrs. Brand's case. Not only did Cook sell this product with knowledge of an unaddressed defect and fail to adequately warn of same, but it

---

[4] Georgia Pattern Jury Instruction § 60.010 Ordinary negligence means the absence of or the failure to use that degree of care that is used by ordinarily careful persons under the same or similar circumstances.")

7

made misrepresentations regarding these dangers in the publication of its Celect clinical trial and in its Instructions for Use. All the while, Cook was covertly redesigning the Celect to address its problems with perforation.

Under Georgia law, Cook had a continuing duty to warn of dangers such as perforation and fracture arising from its product after sale or distribution, and that duty was owed to both previous and future purchasers of the product. *See Chrysler Corp. v. Batten*, 264 Ga. 723, 724, 450 S.E.2d 208, 211 (1994) (holding that a duty to warn may arise "from a manufacturer's post-sale knowledge acquired months, years or even decades after the date the of the first sale of the product."); *see also Ford Motor Co. v. Reese*, 300 Ga.App.82, 684 S.E.2d 279, 284 (2009) ("it is true that Georgia law imposes a continuing duty upon manufacturers to warn of a danger arising from a product after its sale or distribution."). This duty is particularly relevant to the *Brand* case because it is undisputed that her filter did not fracture for at least one year after it was implanted, and it continued to fracture in different places over time. Had Cook adequately warned at any time before any of the fractures, harm to Tonya Brand could have been avoided. Therefore, evidence regarding Cook's conduct and knowledge before and after Mrs. Brand's implant – including internal communications, representations made in promotion and marketing, multiple prior and subsequent incidents, and the peer reviewed literature – is relevant to Mrs. Brand's failure to warn and negligence causes of action. The jury might also consider Cook's continued failures to warn and to correct its affirmative misrepresentations regarding the known dangers of its filter sufficiently reprehensible to support an award of punitive damages. Thus, under Georgia law as applied to the facts of this case, there is a significant overlap of evidence supporting *both* compensatory liability and entitlement to punitive damages.

The jury may also find that Cook's choice to market the Celect without adequate testing, without correcting its design to address a known defect (the lack of a perforation limiter), and without proper post-market surveillance constitutes negligence and merits punitive damages. On these issues, like the ones discussed above, there is no clear divide between the evidence establishing Cook's liability and the evidence showing reprehensible conduct. In short, Cook's entire course of conduct relating to perforation problems with the Celect serves as the foundation for compensatory liability and for entitlement to punitive damages.

Oddly, Cook claims that it "will be unfairly placed on the horns of a dilemma" if its bifurcation proposal is denied because it might want to introduce evidence regarding the Celect Platinum to show that its conduct was not willful or wanton. (Def. Mem. at 6.) But in 2012 Cook claimed to the FDA and to practicing doctors that the Celect was redesigned as Celect Platinum *only* to add "radiopaque markers" enhancing its visibility on imaging. (Exhibit B, Cook IVCF 005732, at 005734.) Cook, its experts and its litigation counsel repeatedly assert that these markers were *not* added to fix the Celect's perforation problem. Based on these representations, Cook has no dilemma as this design change would have no bearing on its punitive damages liability.

Independently, if the Platinum re-design was intended to address perforation (as Plaintiff claims), Cook was working on this within months of Celect's clearance as a permanent filter in the U.S. and before it had been cleared as a retrievable device. By the time of Mrs. Brand's implant, Cook had testing under its belt for the Celect Platinum. A jury may well deem it negligent to keep the Celect on the market and to conceal the Celect's perforation problem while working to design a fix for it. The very existence of the Platinum redesign effort corroborates Cook's failure to warn, and the fact that Cook mischaracterized the purpose for the redesign

9

shows it was not a mere mistake.  Again, this is evidence that certainly is relevant on the punitive damages question, but its relevant is not limited to that issue.

Contrary to Cook's suggestion, scientific literature post-dating Mrs. Brand's implant is not relevant for the sole purpose that Cook's conduct "warrants punitive damages." (Def. Memo. at 6.)  It is relevant to show that it took doctors years to figure out and eventually publish what Cook knew long before Mrs. Brand received a Celect filter.  It is evidence of Cook's failure to act as a reasonably careful company would act; that is, evidence of negligence and a breach of its duty to provide proper post-sale warnings. It is also evidence that the Celect filter provides no benefit in the risk/benefit analysis relevant to design defect under Georgia law because nowhere in the peer reviewed literature – before or after Mrs. Brand's implant – is there proof that the Celect filter prevents pulmonary embolism or reduces  mortality.

Communications and "documents pertaining to unrelated products" are not categorically irrelevant in the compensatory phase.  Cook cites no example of any such evidence and does not identify the unrelated products it is referring to, but a good example would involve its comparative marketing efforts.  Cook marketed the Celect by urging doctors to compare Celect's adverse event reports in the FDA's MAUDE database to its competitors' products while Cook admits it breached its obligation to report Celect adverse events occurring outside the U.S. to MAUDE.  Cook thus not only failed to warn regarding the extent of Celect's perforation issues; it actively misled physicians in this regard.  This is evidence of unreasonable conduct.  The mere happenstance that this probative evidence refers to "unrelated products" does not render it irrelevant.  Evidence regarding "unrelated products" is also relevant to state of the art and alternative design issues related to Plaintiff's design defect claim.

If any or all of this evidence were indeed relevant only to punitive damage issues, its introduction during the compensatory phase would nevertheless be appropriate if accompanied by limiting instructions. The use of instructions promotes judicial efficiency and conserves resources. To the extent that Cook is concerned that the evidence relating "solely" to punitive damages spans multiple years and would require calling multiple witnesses, that fear is unwarranted. Plaintiff intends to present a clear, concise trial to the Court and jury.

Cook's proposed solution is to effectively conduct two liability trials. Clearly the use of limiting instructions is more efficient and jurors are presumed to follow all such instructions. *United States v. Garvey*, 693 F.3d 722, 726 (7th Cir. 2012) ("[J]urors are presumed to follow limiting and curative instructions unless the matter improperly before them is so powerfully incriminating that they cannot reasonably be expected to put it out of their minds.") (quoting *United States v. Smith*, 308 F.3d 726 (7th Cir. 2002)).

In reviewing the same issues in another medical device MDL, the Northern District of Texas denied bifurcation due to overlap of the evidence. *In re: DePuy Orthpaedics, Inc. Pinnacle Hip Implant Products Liability Litigation*, *relating to* Case No. 3:11-cv-01941, Order (N.D. Texas Jan. 8, 2016), attached hereto as Exhibit C. Similarly, the substantial overlap of evidence, combined with the mandates of Georgia law, justifies denial of Cook's bifurcation scheme here.

### 2. Bifurcation of the evidence as to compensatory and punitive liability will cause delay by creating additional evidentiary disputes.

Bifurcation of any portion of the trial except for the amount of punitive damages will cause delays by creating disputes which would not exist if all other issues were tried together. Bifurcation, by definition, creates the potential for the parties to argue about what evidence should or should not be a part of the various trials. This is especially true given that the parties

11

are already in dispute over much of the evidence planned for trial. *Trading Technologies Int'l v. Espeed, Inc.*, 431 F. Supp. 2d. 834, 840 (N.D. Ill 2006) ("Given the nature of this case thus far, we would not be surprised if the parties engaged in extensive motion practice wrangling over whether certain pieces of discovery were applicable to the liability case or the willfulness/damages case"). Creating mini-trials over each email or other internal corporate document does not make for an efficient trial.

### 3. The theoretical possibility that a punitive damage trial may not be necessary does not create an efficiency benefit warranting bifurcation.

Cook raises the speculative possibility that Plaintiff may not reach the punitive damage phase of a bifurcated trial as an efficiency benefit thereby warranting bifurcation. Yet, no court has adopted a "likelihood of success on the merits" test for determining whether bifurcation would save time and court resources. If a defendant's mere possibility of success in defeating the liability claim were enough to establish an efficiency benefit to bifurcated trials, every trial would involve a separate punitive damage proceeding and bifurcation would be the rule, and not the exception. As noted above, the reverse is true. *Stachton v. Woodward*, 2015 WL 7963144, at *2 (N.D. Ind. 2015) (single trial best serves judicial economy because it is uncertain if defendant would prevail on liability due to number of factual disputes; defendant's possibility of success on liability claim does not warrant bifurcation).

### 4. The mere presence of a conflict of law issue does not necessitate bifurcation of the evidence regarding compensatory and punitive liability.

Although Cook "stresses" to the Court it need not decide the choice of law issue at this point, it devotes roughly two pages to arguing why Indiana law should apply based on the false premise that the choice of law standard in this case is a "significant relationship" analysis when Georgia law requires application of the *lex loci delecti* approach to choice of law. This Court is

12

no stranger to the choice of law standards that apply to this multi-district cause of action, having previously ruled that: "[w]here the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have applied if there had been no change of venue. A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms." *Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S. Ct. 805, 11 L. Ed. 2d 954 (1964)." *In Re Cook Med. Inc.*, 2017 U.S. Dist. LEXIS 82761 (1:14-ml-02570-RLY-TAB MDL No. 2570, May 31, 2017) at *4. "'It would be an odd result to subject the plaintiffs to [Indiana] law simply because they took advantage of the direct filing procedure- a procedure that provides benefits to all parties and preserves judicial resources.'" *Id. citing, In re Bausch & Lomb, Inc.,* 2007 U.S. Dist. LEXIS 76657 (2:06-c-v-2716 DNC-MDL No. 1785, October 11, 2007)].

On December 2, 2014, Tonya Brand's product liability lawsuit against Cook was transferred by the United States Judicial Panel on Multi-District Litigation from the United States District Court – Northern District of Georgia (Atlanta division) to the United States District Court Southern District of Indiana for inclusion in the MDL No. 2570.  Mrs. Brand is a life-long resident of the State of Georgia, and the Celect filter that caused her injury was implanted and later removed in Georgia.

For purpose of conducting a choice of law analysis, Georgia's punitive damages statute is substantive law.  In *Mirapex Prods. Liab. Litigation*, 2007 U.S. Dist. LEXIS 104547 (November 11, 2007), the court specifically considered whether the punitive damages laws of California, Florida, Georgia, Ohio, Louisiana,  Massachusetts, Minnesota, New Jersey, Pennsylvania, Texas, Virginia and Wisconsin were substantive or procedural and determined that punitive damages laws in multi-district litigation are substantive for choice of law purposes. *Id.* at *4, 10-12. The court also found, " . . . it would be constitutional to apply the punitive damages laws of the

plaintiffs' respective states as each state has an interest in enforcing its laws in a case where the injury happened in that state to one of its residents." *Id*. at *4.

There is a conflict between the Georgia punitive damage statute and the Indiana punitive damage statute.  For example, although the Indiana statute does not require bifurcation as to the amount of punitive damages to be awarded, Georgia law does. *See* Burns Ind. Code Ann. § 34-51-3-1 *et seq*. and O.G.C.A. § 51-12-5.1(d)(1).  In addition, Indiana places a cap on all punitive damage recoveries, while Georgia law states "[i]n a tort case in which the cause of action arises from product liability, there shall be no limitation regarding the amount which may be awarded as punitive damages." *See* Burns Ind. Code Ann.  § 34-51-3-4 and O.G.C.A. § 51-12-5.1 (e)(1).

In light of the conflict in the substantive law of Georgia and Indiana, the Court looks to the choice of law principles of the State of Georgia.  As this Court previously held,

> Georgia employs the *lex loci delecti* approach to choice of law in tort cases, which 'requires application of the substantive law of the place where the tort or wrong occurred.' *McCarthy v. Yamaha Motor Mfg. Corp.*, 994 F. Supp. 2d 1329, 1332 (N.D. Ga. 2014) (*quoting Carroll Fulmer Logistics Corp. v. Hines*, 309 Ga. App. 695, 710 S.E.2d 888, 890 (Ga. Ct. App. 2011)). This is the place where the claimed injury was suffered, not the place where the tortious act was committed. *Id.*

*In re Cook Med., Inc.,* 2017 U.S. Dist. LEXIS at *5.

Application of Georgia's choice of law approach to the facts of this case requires application of Georgia's punitive damages statute here.  Specifically, because Georgia is the place where Tonya Brand's filter was implanted, where it fractured, and where it was retrieved, Georgia law applies to this case.  Under Georgia law, "the trier of fact shall first resolve from the evidence produced at trial whether an award of punitive damages shall be made" and if so, "the trial shall immediately be recommenced in order to receive such evidence as is relevant to a

decision regarding what amount of damages will be sufficient . . . ." O.G.C.A. § 51-12-5.1(d)(1) & (2).

In its memorandum, Cook alludes to the concept of "trifurcation" that was discussed by the Georgia Supreme Court in *Webster v. Boyett*, 496 S.E.2d 459 (1998),[5] but such a procedure is the rare exception under Georgia law. *Webster,* 469 S.E.2d at 463-64 ("It is the rare case where, due to the complexity of the issues or evidence, the trial court should divide the trial into three separate phases.). Trifurcation is not warranted here for the reasons noted by the Georgia Supreme Court in *Webster* – namely, it would result in massive inefficiency:

> First, although not completely devoid of purpose, a third phase expends limited judicial resources by requiring the judge and jury to hear evidence and render a verdict in three separate proceedings. Second, the liability issues, witnesses, and evidence on both compensatory and punitive damages often may not differ substantially, thus eliminating the desire for two separate phases on liability.

*Id.; see also In re Mentor Corp. Obtape Transorbitur Sling Products Liab. Litigation*, 2010 U.S. Dist. LEXIS 49601, at *15-17 (M.D. Ga., MDL Docket No. 2004; 4:08-MD-2004 (CDL), May 18, 2010) (denying request for trifurcation for efficiency reasons).[6]  The number of side bar conversations and rulings that would be required to determine whether each witness, each question, and each document is relevant to phase 1, 2 or 3 of the trial is mind-boggling. Given

---

[5] "Trifurcation" is the concept that "the jury decides the issue of liability for compensatory damages, the propriety of punitive damages, and the amount of punitive damages in three separate phases." *Webster*, 496 S.E.2d at 462.

[6] In anticipation of Cook attempting to argue that this opinion also would support an argument that the Defendants do not have a continuing duty to warn a purchaser after the sale of its product, Plaintiff would refer to Judge Land's subsequent opinion in *In re Mentor Corp. Obtape Transorbitur Sling Products Liab. Litigation,* 2010 U.S. Dist. LEXIS 52628 ( M.D. Ga., MDL Docket No. 2004; 4:08-MD-2004 (CDL), May 28, 2010) in which the court reversed itself on the issue and held: "Based on the foregoing, the Court concludes that under Georgia law a manufacturer has a continuing duty to warn of a danger arising from a product after its sale or distribution and that this duty is owed both to future purchasers of the product and previous purchasers. Any of the Court's previous rulings on this issue to the contrary are hereby vacated."

the substantial overlap in issues discussed above, most evidence and witnesses would appear in multiple phases. There is no justification for employing this rare procedure in this case.[7]

### C. Application of Georgia Law is Not Unfairly Prejudicial to Cook.

Cook seems to forget that all evidence admitted at trial in an adversarial system is prejudicial towards one party or the other. The burden is on Cook to show that the effect would be "unduly" prejudicial. Cook has failed to meet that burden here.

#### 1. Certain non-financial evidence is not unfairly prejudicial and such evidence is necessary for Plaintiff to present her case.

As discussed above, the evidence supporting Tonya Brand's entitlement to punitive damages overlaps with the evidence Plaintiff will introduce to establish liability for compensatory damages. Attempting to parse out the relatively small portion of evidence which relates solely to punitive damages (if any exists) would require continued objections, side bar discussions, and possible motion practice. Nothing could be more inefficient.

The better practice, and one routinely used by courts, is to address the limited purpose for which certain evidence may be considered through a jury instruction. Federal courts, including this one, have stated as much. *Cardiac Pacemakers, Inc. v. St. Jude Med.*, 2001 WL 699856, at *2 (S.D. Ind. 2001) (agreeing that potential confusion can be remedied by good lawyering,

---

[7] The different burdens of proof for compensatory and punitive damages do not compel a different result, as this Court previously held:

> [I]t is not uncommon for a jury to hear a case involving both punitive and compensatory damages. The jury will be instructed as to the differing burdens of proof, and both parties may tender instructions explaining the different burdens. As stated in *McLaughlin*, '[s]ince the evidence usually overlaps substantially, the normal procedure is to try compensatory and punitive claims together with appropriate instructions to make clear to the jury the difference in the clear and convincing evidence required for the award of punitive damages.' *McLauglin* at 871. The Court is confident in jurors' ability to understand and decide the issues when given appropriate instructions.

*Williamson v. Progressive Northern Ins. Co.*, 2007 WL 2176561, at *2 (S.D. Ind. 2007).

16

cautionary warnings, limiting instructions, or special verdict forms) (citing *Real v. Bun-O-Matic, Corp.*, 195 F.R.D. 618, 624-25 (N.D. Ill. 2000)); *see also In re Heparin Prods. Liab. Litig.*, 2011 WL 1097637, at *4 (N.D. Ohio 2011) (finding any potential for prejudice to defendants can be avoided with appropriate limiting instructions); *Hamm v. American Home Prods. Corp.*, 888 F. Supp. 1037, 1039 (1995) ("any concerns about potential prejudice to the defendant may be directly addressed, and the prejudiced cured, with appropriate limiting instructions") (citing *Brown v. Advantage Engineering*, 732 F. Supp. 1163, 1171 (N.D. Ga. 1990)).

Cook also seemingly suggests that juries are incapable of understanding and abiding by court instructions.  However, "[j]uries in both civil and criminal cases are presumed to be able to follow instructions even when they are told to separate issues much more difficult to separate than liability vs. damages." *Wilson v. Sundstrand Corp.*, WL 2187838 at *1 (N.D. Ill. 2003); *see also Barton v. Chicago & Northwestern Transp. Co.*, 757 N.E.2d 533 (1st Dist. 2001) (demonstrating jury instructions sufficient to address punitive vs. compensatory damages in lawsuit).  "To say that the jury may be confused amounts to nothing more than an unfounded speculation that the jurors would disregard clear instructions of the court in arriving at their verdict." *Opper v. United States*, 348 U.S. 84, 95 (1954).  *See also Balzer v. Am. Family Ins. Co.*, 2009 WL 1543524 (N.D. Ind. 2009) (mere speculation is an inadequate basis upon which the court should grant a separate trial).  Thus, neither bifurcation nor trifurcation should be granted on these grounds.

**2.   Admission of Cook's financial information is not unfairly prejudicial.**

Cook's concerns about potential prejudice stemming from introduction of evidence of its net worth are addressed by Georgia's punitive damages statute, which provides a second phase for determination of the amount of punitive damages.  Unless Cook opens to the door to such

17

evidence in the first phase by seeking to paint a picture of Cook as a mom-and-pop, homegrown, local company, Plaintiff agrees with Cook that evidence of the net worth of Cook would be properly introduced only in the second phase of the trial.

Cook claims to have a due process right to a bifurcated trial. Georgia law provides for bifurcation of the amount of punitive damages. O.C.G.A. § 51-12-5.1(d). Nowhere in Cook's motion does it explain how the Georgia punitive damages statute violates its alleged due process rights (probably because Cook cut and pasted from its *Hill* brief). For this reason, and for the reasons set forth in Ms. Hill's response to Cook's Motion to Bifurcate,[8] Cook has failed to establish a violation of due process here.

### D. Bifurcation of the Compensatory and Punitive Liability Issues Would Unfairly Prejudice Plaintiff.

For all the foregoing reasons, Tonya Brand will be prejudiced by not having all of her claims against Cook tried at one time. There is a substantial and inevitable overlap in the evidence to be presented in the liability and punitive damage phases of this case. If the presentation of evidence is split over two or three trial phases, the parties and the Court will have to spend considerable resources deciphering which evidence can or cannot be used in the first phase. Plaintiff will also have to recall her expert witnesses - costing her an enormous expense in money and time. Additionally, the risk of jury indifference or confusion is heightened when jurors are asked to sit through two or three trials on the same evidence. Bifurcating this trial in the manner suggested by Cook would needlessly complicate and lengthen the prosecution of Plaintiff's claims (and the entire trial); thus, resulting in prejudice to Plaintiff.

---

[8] Docket No. 6090, at pages 15-16.

### III. CONCLUSION

Plaintiff asks the Court to deny Cook's motion and instead apply Georgia law so that only the issue of the *amount* of punitive damages to be awarded will be bifurcated. Plaintiff asks that the Court allow evidence supporting all other issues to be presented in the first trial phase; and, if the jury decides that Cook's behavior is so reprehensible as to warrant punitive damages, that the jury be asked to determine the amount of any punitive damage award in a second phase to commence immediately after a verdict.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that Cook's Motion to Bifurcate be denied, and for such other and further relief, either at law or in equity, to which Plaintiff has shown or will show herself justly entitled.

Dated: August 29, 2018.                                Respectfully Submitted,

*/s/ Ben C. Martin*
Ben C. Martin, Esq.
The Law Office of Ben C. Martin
3710 Rawlins Street, Suite #1230
Dallas, TX 75219
Telephone: (214) 761-6614
Facsimile: (214) 744-7590
Email: bmartin@bencmartin.com
*Plaintiffs' Co-Lead Counsel*


*/s/ Joseph N. Williams*
Joseph N. Williams, Atty. No. 25874-49
Riley Williams & Piatt, LLC
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317) 633-5270
Facsimile: (317) 426-3348
Email: jwilliams@rwp-law.com
*Liaison Counsel to Plaintiffs Steering Committee
and on behalf of Plaintiffs Steering Committee*

*/s/ Michael W. Heaviside*
Michael W. Heaviside, Esq.
Heaviside Reed Zaic, A Law Corporation
910 17th Street NW, Suite 800
Washington, DC 20006
Telephone: (202) 233-1993
Email: mheaviside@hrzlaw.com
*Plaintiffs' Co-Lead Counsel*

*/s/ David P. Matthews*
David P. Matthews, Esq.
Matthew and Associates
2509 Sackett St.
Houston, TX 77098
Telephone: (713) 522-5250
Facsimile: (713) 535-7184
Email: dmatthews@thematthewslawfirm.com
*Plaintiffs' Co-Lead Counsel*

**CERTIFICATE OF SERVICE**

    I hereby certify that on August 29, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

*/s/ Ben C. Martin*
Ben C. Martin