# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION _ | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates to Plaintiff

*Tonya Brand*
No. 1:14-cv-06018-RLY-TAB

## COOK DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF MOTION TO EXCLUDE EXPERT OPINIONS OF DR. GREGORY GORDON OR, ALTERNATIVELY, MOTION FOR RELIEF PURSUANT TO RULE 37(c)

Defendants Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS (collectively, "Cook" or the "Cook Defendants") submit this Notice of Supplemental Authority in support of their motion to exclude expert opinions of Plaintiff's interventional radiology expert Gregory Gordon, M.D., *see* Dkt. 8630, 8635.  In the alternative, Cook moves to strike Dr. Gordon's proposed testimony as a discovery sanction under Rule 37(c).  Both alternatives are based on Dr. Gordon's wholesale changes in his expert opinions between the issuance of his reports and the taking of his deposition and on Judge Magnus-Stinson's recent decision in *Webster v. Ctr. for Diagnostic Imaging, Inc.,* 2018 U.S. Dist. LEXIS 78018, *13-*26, 2018 WL 2136451.

As addressed in Cook's original motion, Dr. Gordon's reversals of his opinions at his deposition demonstrate the fundamental unreliability of his methodology in reaching those

1

opinions. *See* Dkt. 8635 at 21-22. At the same time, however, Dr. Gordon's radical departure at his deposition from the opinions he expressed in his written report means that his report failed to comply with the expert disclosure requirements of Rule 26(a)(2)(B) and justify the sanction of exclusion under Rule 37(c).

Chief Judge Magnus-Stinson recently addressed a similar situation and concluded that an expert's deposition testimony contradicting the opinions he expressed in his report undermined compliance with Rule 26(a)(2)(B)'s disclosure requirements and required exclusion. *See Webster v. Center for Diagnostic Imaging, Inc.*, No. 1:16-cv-02677 (S.D. Ind. May 9, 2018). (Cook only recently became aware of this unpublished decision, or it would have combined its request for relief under Rule 37 with its *Daubert* motion.)

Here, like the expert in *Webster*, Dr. Gordon intends to offer testimony that was not disclosed in his Rule 26 report, and in fact contradicts the opinions disclosed in his Rule 26 report. Specifically, a comparison of Dr. Gordon's report and his deposition testimony reveals the following contradictions:

| DR. GORDON'S REPORT[1] | DR. GORDON'S DEPOSITION TESTIMONY[2] |
|---|---|
| **Past Injuries Caused By the Filter** | |
| <ul><li>"[P]rolonged pain."</li><li>"*6 years of suffering*" and "[y]ears of hospital visits, radiation exposure and cancer risk"</li><li>"*Essentially every movement can cause pain*."</li><li>Chronic pain that "to a reasonable degree of medical certainty [is] the cause of all of her new symptomatology since placement and removal"</li></ul> | "I think at retrospect here and **as a correction to my report, I said I thought beyond a reasonable doubt that I thought the pain was there. Now, when I -- I've never examined the patient. I don't know her longitudinal situation and she has other morbidities and she's had pain beforehand. I don't think I can say with the 51 percent degree of certainty that this is exactly what caused her pain**. . . ." Deposition at 330:1-12. |

---

[1] All references to "Report" are to Dr. Gordon's April 30, 2018 Report, already in the Court record at Dkt. 8664-1.

[2] All references to "Deposition" are to Dr. Gordon's June 12, 2018 deposition, the relevant excerpts of which are already in the Court record at Dkt. 8664-3.

| | |
|---|---|
| <ul><li>*Pain when breathing*</li><li>Chronic abdominal pain/upper and lower quadrant pain</li><li>Hip pain</li><li>Chronic back pain</li><li>Leg pain</li><li>Thigh pain</li><li>Adhesion pain</li><li>"[C]ontinuous poking and slow migration along several painful nerve beds"</li><li>Pain caused by filter perforation contacting "the edge of a disc, lumbar spine or visceral nerve fiber."</li><li>"[N]ew pain" misdiagnosed as "kidney stones, appendicitis, urinary tract infection, constipation and everything else accept (sic) pain associated with the filter."</li><li>"[S]ignificant symptoms, anguish, stress"</li><li>*[T]he constant emotional strain of having a continuous time bomb inside her*</li></ul> Report at 19, 23, 41, 44-46. | . . . .<br>"Q. [A]ny other opinions that are **contained in your report about other leg pain, thigh pain, hip pain, whatever those are, none of that can be said to a reasonable degree of medical certainty?**<br>   A. **That is correct**." Deposition at 333:1-5.<br>. . . .<br>   "Q. It was your opinion in your report that Mrs. Brand would live with continuous pain, pin pricks on her nerves for the rest of her life, correct?<br>   A. Yes.<br>   Q. And at the time that you wrote your report you believed that was caused by the fragments that are left in her body, correct?<br>   A. **I think it's a possibility but, again, as I mentioned, I don't think I can say with a degree of medical certainty anymore**.<br>   Q. **Are you also for today then withdrawing your opinion that Mrs. Brand's retained filter fragments are causing her any type of pain or injury?**<br>   A. **I cannot say with a medical degree of certainty that it is causing her pain and injury**." Deposition at 338:14-339:3.<br>. . . .<br>   "Q. **Your opinion that she has -- Mrs. Brand suffered from prolonged pain caused by the fractured filter, you're withdrawing that opinion, correct?**<br>   A. **Yes, ma'am**." Deposition at 360:13-16.<br>. . . .<br>   "Q. **Whether the two pieces that remain in Mrs. Brand's body have caused her an injury or not, that's not something you can say to a reasonable degree of medical certainty, correct**?<br>   A**. Correct**." Deposition at 363:16-20. |
| | "Q. As it relates to the -- the opinions you intend to offer at the trial of this case, **are you withdrawing all of your opinions that relate to Mrs. Brand's pain or injury from her filter other than the three that you mentioned earlier: thigh pain in her groin at the time that it came out, the 2011** |

3

| | |
|---|---|
| | procedure and pain related to the open procedure and the four to six weeks after?<br>    A. **Yes, ma'am.**<br>    Q. All other opinions are withdrawn?<br>    A. **All other opinions regarding her pain are withdrawn**.<br>    Q. Okay. **Are there any other medical conditions that you attribute -- that Mrs. Brand has or had that you attribute to her filter perforation or fracture**?<br>    A. **None that I can say with a degree of medical certainty**." Deposition at 339:4-19. |
| | ". . . Now, besides that though, like on top of that, though when I look back into all of the medical records and realize she has right lower-quadrant pain, she has had other sources of pain, I think I probably -- maybe again being my first time I ever wrote a report I -- I thought that that was the likely source. Now, I can -- I think I should step back in this a little bit and say although I think that this is quite a possible source of her pain, **I can't say with 51 percent certainty that that's the source of her pain**." Deposition at 330:19-331:3. |
| | "[W]hy I've withdrawn and changed things is as I've reviewed things further – and, again, my mistake, this is the first time I've written this – to a degree of medical probable certainty, et cetera, 51 percent, I can't say that.  She has other reasons for pain and I don't think I'm able to prove one way or the other.  Do I have suspicion? Yes, but I can't say**.**" Deposition at 336:24-337:6, |
| | "Q. **Your -- your opinion with respect to Mrs. Brand's emotional distress, anxiety and depression, you've not tried to separate out whether the primary causes are pre-existing conditions or some other social factor in her life, correct?**<br>    A. I can't separate them.<br>    Q. And you've not tried to do that, have you? |

4

| | |
|---|---|
| | A. **I have not tried to do that, no, ma'am**." Deposition at 362:1-8. |
| **Past Medical Expenses** | |
| "The medical bills listed in Exhibit 3 are reasonable and necessary and were incurred in connection with the failure of Mrs. Brand's Celect filter."  Report at 44 & Exhibit 3 (including multiple bills for "ER visit for abdominal pain," bill for EGD for abdominal pain in July 2012, bill for gastric emptying image study in September 2016, one year after removal of filter). | "Q. Okay. You offer the opinion on page 44 of your report that Mrs. Brand's medical expenses were reasonable and necessary, including itemization of the same. **Is it accurate to say that you cannot say that to a reasonable degree of medical certainty and you are withdrawing that opinion**? <br> A. **I am** -- I'm with -- I think it has to be altered so I am -- I'm -- the exhibit that I gave with the expenses I think would have to be altered to include the three specific areas I discussed above." Deposition at 358:2-13. |
| **Future Medical Complications and Expenses** | |
| "Mrs. Brand is still at risk for multiple future complications," including:<br><br>• "[L]ifelong pain and suffering"<br>• "[C]ontinuous pain/pin pricks on her nerves for the rest of her life."<br>• "[M]ore invasive and risky surgery."<br>• "Higher risk for future DVT and/or IVC stenosis"<br>• "[F]uture bleeding and additional surgery to remove the retained foreign bodies."<br>• Additional surgery, "possibility of embolization to the heart"<br>• "[L]ong term potential for future bleeding, either from perforation of a lumbar vein or artery, or a retroperitoneal bleed form the right psoas muscle"<br>• Post-operative hernia<br>• "Known morbidity and injury secondary to the defective filter"<br>Report at 44-45. | "Q. It was your opinion in your report that Mrs. Brand would live with continuous pain, pin pricks on her nerves for the rest of her life, correct? <br> A. Yes. <br> Q. And at the time that you wrote your report you believed that was caused by the fragments that are left in her body, correct? <br> A. I think it's a possibility but, again, as I mentioned, **I don't think I can say with a degree of medical certainty anymore**. <br> Q. **Are you also for today then withdrawing your opinion that Mrs. Brand's retained filter fragments are causing her any type of pain or injury?** <br> A. **I cannot say with a medical degree of certainty that it is causing her pain and injury.** <br> Q. **As it relates to the -- the opinions you intend to offer at the trial of this case, are you withdrawing all of your opinions that relate to Mrs. Brand's pain or injury from her filter other than the three that you mentioned earlier: thigh pain in her groin at the time that it came out, the 2011 procedure and pain related to the open procedure and the four to six weeks after**? <br> A. **Yes, ma'am.** <br> Q. **All other opinions are withdrawn?** |

5

| | |
|---|---|
| | A. **All other opinions regarding her pain are withdrawn**." Deposition at 338:14-339:19. |
| • Past and future unnecessary radiation | "**Q. As you sit here today, Dr. Gordon, are you able to say what images Mrs. Brand had as a consequence of the perforation or fracture of her filter to a reasonable degree of medical certainty?** **A. No, I can't separate those out.** Q. As you sit here today, are you able to tell us how much unnecessary radiation she received or how likely it is that she'll have some future consequence of that to a reasonable degree of medical certainty? A. At this meeting, no, but I'm, again, happy to go through the exact radiation -- the cases that I believe that she -- that were related to the filter and add up the dosing there and then trying to give you an estimate. **But, again, it's difficult to separate with all -- with her other illnesses**. **Q. You haven't done that work, correct?** **A. No, ma'am, I have not**." Deposition at 364:14-365:5. |
| **The Greenfield Filter is a Safer Alternative Design** | |
| "At the time of placement of Ms. Brand's filter several other filters were safer, including the Tulip, if a retrievable filter was needed, and the Greenfield if a permanent filter was required."  Report at 12. | ". . . I didn't come here studying all of the Greenfield filters."  Deposition at 161:8-9. . . . . "Again, I didn't study the Greenfield here. I'm here talking about the Celect filter." Deposition at 161:19-20. . . . . ". . . I can't be any more specific. I haven't looked at the data. I didn't look at any -- I mean, I did not study the Greenfield filter." Deposition at 162:5-7. . . . . ". . . But as -- again, as I said, as I concentrated on the Cook Celect so I'm going to be a little bit, forgive me, ignorant or vague on the -- the detailed data I can give you about the Greenfield filter."  Deposition at 162:17-22. |

6

Dr. Gordon's wholesale modification of key opinions during his deposition violates Fed. R. Civ. P. 26(a)(2), which requires a complete statement of all opinions the retained expert will provide.  Cook was never informed of Dr. Gordon's new, altered, or changed opinions at any time before his deposition.  A Rule 26 report cannot be supplemented with subsequent deposition testimony because doing so would undermine the purpose of the rule.  Pursuant to Federal Rule of Civil Procedure 26, the disclosure of an expert's proposed testimony must be "accompanied by a written report" that must contain the following:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). If a party fails to provide information required by Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The purpose of the report is to set forth the substance of the direct examination." *Jenkins v. Bartlett*, 487 F.3d 482, 487 (7th Cir. 2007) (citations omitted).  Rule 26 also permits an opposing party to "depose any person who has been identified as an expert whose opinions may be presented at trial," but "the deposition may be conducted only after the report is provided." Fed. R. Civ. P. 26(b)(4)(A).

Here, as detailed above, Dr. Gordon's deposition testimony fundamentally changed the opinions offered in his *Brand* report in multiple substantial respects.  These contractions require the exclusion of Dr. Gordon's testimony because they undermine the very purpose requiring a

pre-deposition expert report: to permit the informed questioning of the expert about the reported opinions in the expert's deposition. As Judge Magnus-Stinson noted in *Webster*, modification at deposition of key opinions central to the expert's testimony warrants exclusion of the expert's opinions in their entirety. Such dramatic departure from the proffered report

> undercuts the very purpose behind Rule 26 reports — to set forth the substance of his direct examination and to relieve parties from the time and expense of discovering expert opinions. Due to the contradictions between [the expert's] Rule 26 report and his subsequent deposition testimony, the report failed to provide the Websters with the disclosure contemplated by Rule 26.

2018 U.S. Dist. LEXIS 78018 at *25; *see also Hess v. Ameristep*, 2008 U.S. Dist. LEXIS 93895, 2008 WL 4936726, at *3 (C.D. Ill. Nov. 17, 2008) (holding that need to spend deposition to discover expert's opinions as well as to explore them undercut the "primary goal of Rule 26(a)(2)" — "to relieve parties from the time and expense of discovering expert opinions.").

Plaintiff's violation of Rule 26(a)(2)(B)'s expert disclosure requirements requires the exclusion of Dr. Gordon's proposed testimony in its entirety. "[T]he sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998). Plaintiff can make no showing of justification or lack of harm here; on the contrary, Dr. Gordon's reversals of his opinions has cost Cook both time and money by forcing it to prepare to defend against allegations and opinions that Plaintiff has now abandoned. The Court should bar Dr. Gordon from testifying. *See Webster*, 2018 U.S. Dist. LEXIS 78018, *13-

\*26, 2018 WL 2136451; *see also Salgado*, 150 F.3d at 742 (noting that district court is "not required to fire a warning shot.").

Respectfully submitted,

*/s/ Andrea Roberts Pierson*
Andrea Roberts Pierson (# 18435-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
E-Mail: andrea.pierson@faegrebd.com

James Stephen Bennett (# 22869-02)
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana  46802
Telephone: (260) 424-8000
Facsimile: (260) 460-1700
stephen.bennett@faegrebd.com

*Counsel for the Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2018, a copy of the foregoing was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

/s/ Andrea Roberts Pierson

US.116898996.05