UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

—————————————————————

| | |
|---|---|
| IN RE: COOK MEDICAL, INC. IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS   LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB MDL No. 2570 |

—————————————————————

This Document Relates to Plaintiff
    Tonya Brand
    Civil Case No. 1:14-cv-06018-RLY-TAB

—————————————————————

## COOK DEFENDANTS' REPLY IN SUPPORT OF MOTION TO BIFURCATE

As this Court previously decided in the *Hill* case, bifurcation is appropriate and desirable in this bellwether trial as a matter of prudent trial management.  The Court will save time and resources (and avoid undue prejudice to the Cook Defendants) by reserving the question of liability for punitive damages for a second phase of trial, which would occur only if the jury returns a verdict of liability on Plaintiff's claims for compensatory damages.  In addition, the Court and parties will be better informed in this multi-district litigation bellwether trial process by a trial with separate compensatory and punitive phases.

### I.    Just as in the *Hill* Case, Bifurcated Proceedings Make Sense.

The Cook Defendants encourage this Court to follow the trial procedure it adopted for *Hill*, *i.e.*, bifurcating the trial for an initial determination of liability for compensatory damages and a second proceeding, *if necessary*, to determine liability for and the amount of punitive damages. Such a structure has substantial potential benefits for this case in terms of convenience, expedience, and economy; benefits that the Court and the parties realized in the *Hill* case, where the finding of no liability for compensatory damages prevented the need to introduce evidence

and argument relevant to punitive damages.  Plaintiff takes exception to the suggestion that this Court should structure the trial as it did in *Hill*, but Plaintiff's objections are unfounded. Contrary to Plaintiff's argument, the claims in this case and the claims in the prior *Hill* case are substantially similar.  Likewise, nothing in Georgia law restrains this Court's discretion under Federal Rule of Civil Procedure 42(b) to structure the trial proceedings as it finds appropriate in the interests of convenience, expedience, economy, and avoiding prejudice.

### A.  The Claims in this Case Are Substantially Similar to the Claims in the *Hill* Case.

This case presents essentially the same claims presented in the *Hill* case, where the parties previously briefed the question of bifurcation.  Like Ms. Hill, Ms. Brand asserts design-defect and failure-to-warn claims under negligence and strict-liability theories.[1]  *See* Dkt. 6514, Reply in Support of Motion To Bifurcate [*Hill*], at 4.  Ms. Hill opposed bifurcation by arguing that she had a negligence claim regarding "whether Cook's conduct was reasonably careful." Dkt. 6090, Response in Opposition to Motion To Bifurcate [*Hill*], at 2.  Likewise here, Ms. Brand implies she has a general "negligence claim," suggesting (erroneously) that "Cook never mentions Plaintiff's negligence claim."  Plaintiff's Memo. in Opposition to the Cook Defendants' Motion To Bifurcate ("Opp. Memo."), at 2.  Thus, although Ms. Brand tries to suggest that the circumstances are somehow different than they were in *Hill*, she follows exactly the same approach as Ms. Hill in opposing bifurcation based on a purported negligence claim.[2]

---

[1] To preview the subject of future briefing, under Georgia law, the negligent-design-defect and strict-liability-design-defect claims are merged and cannot be treated separately in the jury instructions. Thus, the Cook Defendants will submit that the same treatment is appropriate and necessary with respect to both claims should they remain part of the case for trial.

[2] For reasons discussed in Cook's summary-judgment briefing, Ms. Brand does not have a freestanding negligence claim under Georgia law (just as Ms. Hill did not have such a claim).

**B.  The Court Retains Discretion Under Rule 42(b) To Structure the Trial as Appropriate**.

As Plaintiff herself acknowledges in stating the legal standard, under Federal Rule of Civil Procedure 42(b), "[a] district court may bifurcate issues for trial in furtherance of convenience, to avoid prejudice, or to economize and expedite a trial."  Opp. Memo. at 4 (citing Fed. R. Civ. P. 42(b)).  Only one of these criteria is needed for bifurcation.  *See Berry v. Deloney*, 28 F.3d 604, 610 (7th Cir.1994).  This is the only controlling guideline for the Court, and it is broad in its grant of discretion: "Federal Rule 42(b) is sweeping in its terms and allows the district court, in its discretion, to grant a separate trial of any kind of issue in any kind of case."  § 2389 Separate Trials—Particular Cases, 9A Fed. Prac. & Proc. Civ. (3d ed.).  Nothing in Georgia state law invalidates the discretion granted to the Court by the Federal Rules of Civil Procedure.  Moreover, bifurcation is is particularly appropriate in the MDL context as the Court designs the best procedure for a bellwether trial designed to inform the parties and Court on multiple issues.  *See* Trial, Ann. Manual Complex Lit. § 22.93 (4th ed.) ("In pursuing . . . test case trials, the judge may conduct a unitary trial, bifurcate liability and damages, or create other helpful trial structures.").

Plaintiff incorrectly suggests in her opening sentence that Cook "[i]gnor[ed] black letter law" in filing its motion for bifurcation based on the procedure adopted for *Hill*.  Opp. Memo. at 1.  Plaintiff is mistaken.  In their opening memorandum, the Cook Defendants both quoted and discussed Georgia's statute addressing bifurcation.  Bifurcation Memo. at 17-18.  Indeed, the Cook Defendants urged the Court *at minimum* to bifurcate the amount of punitive damages as reflected in the Georgia statute, but ultimately urged the Court to do as it did in *Hill* and adopt an approach that allows for bifurcation of evidence relevant to punitive damages and net worth.  *Id.*

3

at 18.[3]

In sum, the Court should do as it did in *Hill* and bifurcate the determination of punitive damages and the amount from the compensatory damages phase.  Plaintiff's argument that Georgia statute O.C.G.A. § 51-12-5.1(d) dictates that only the *amount* of punitive damages may be separated from questions of liability is unavailing even under the Georgia law that Plaintiff invokes, much less in this proceeding governed by the Federal Rules of Civil Procedure.

## II.        Bifurcation of Punitive Liability Has Support in the Case Law.

As Ms. Hill did, Ms. Brand contends that the bifurcation proposed by the Cook Defendants is "novel."  Compare Opp. Memo. at 3 with Dkt. 6090, Response in Opposition to Motion To Bifurcate [*Hill*], at 2. But there is ample support for the method of bifurcation proposed by the Cook Defendants, including, of course, this Court's prior decision in Ms. Hill's case.  As the Cook Defendants have previously explained, in cases structurally similar to this one (involving numerous plaintiffs or a representative plaintiff claiming an injury against a corporate defendant), courts regularly bifurcate the punitive-damages phase.  For example, in *Scheufler v. General Host Corp.*, 895 F. Supp. 1411, 1413-14 (D. Kan. 1995), involving a pollution claim by a group of landowners against the owner of a salt plant, the court carefully considered and discussed at length the option of bifurcating the punitive damages phase and ultimately concluded that bifurcation of punitive damages would be conducive to judicial economy and

---

[3] The Georgia Supreme Court has also recognized that alternative trial structures might be appropriate in extraordinary cases, including trifurcated proceedings that separate the determination of liability from the determinate of punitive damages just as the Cook Defendants propose here.  *See Webster v. Boyett*, 496 S.E.2d 459, 461 (Ga. 1998) ("Under the trifurcated trial, the jury would determine liability and the amount of compensatory damages in the first phase, liability for punitive damages in the second phase, and the amount of punitive damages in the third phase.").  The Cook Defendants cited *Webster* in the opening memorandum as further support for their bifurcation request, and although trifurcation as outlined in *Webster* would be acceptable if the Court deemed it appropriate, the Cook Defendants are requesting only bifurcation.

efficiency, would reduce confusion, and would prevent possible prejudice to the defendant. In another case with a similar factual pattern—a class action by consumers of diet drugs against a pharmaceutical company—the Third Circuit suggested that the district court consider a bifurcated trial. *In re Diet Drugs Products Liab. Litigation*, 369 F.3d 293, 318 (3d Cir. 2004). And, as noted, in the *Webster* case, the Georgia Supreme Court acknowledged that it might be appropriate to split the question of liability for punitive damages from the determination of amount of punitive damages, even if so doing created a trifurcated proceeding. *Webster*, 496 S.E.2d at 461.

Moreover, courts have not hesitated to adopt even "novel" methods like trifurcation in appropriate cases. *See In re Bendectin Litig.*, 857 F.2d 290, 296 (6th Cir. 1988) (upholding trifurcated procedure where "[r]ather than bifurcating the trial on issues of liability and damages, the court instead decided to trifurcate the case, or bifurcate the liability question into liability and causation"). The method of bifurcation is committed to the sound discretion of the Court under Rule 42(b), whether "novel" or (as in this case) not.

### III.   Judicial Economy Is Served by Bifurcation of the Question of Punitive Damages.

As Plaintiff's brief makes clear, she intends to try to introduce at trial a raft of evidence that is irrelevant to liability, including but not limited to:

- "Internal communications," "promotion and marketing" documents, "subsequent incidents" and "peer reviewed literature" generated "before and *after* Mrs. Brand's implant."  Opp. Memo. at 8 (emphasis added).

- "Scientific literature *post-dating* Mrs. Brand's implant."  Opp. Memo. at 10 (emphasis added).

- "Communications and 'documents pertaining to unrelated products.'"  Opp. Memo. at

10.

- Sales and income information for all Cook Defendants named in this proceeding.

If she is permitted to do so during the initial phase of trial, Cook—in turn—would be forced to introduce evidence of:

- Communications with health care professionals about unrelated patients who benefited from Cook's IVC filters.

- Communications and documents related to other products.

- Witnesses and documents necessary to put into context internal documents introduced by Plaintiff.

- Evidence of subsequent remedial measures.

- Evidence of the Cook Defendants' good works, charity, and community involvement.

- Evidence of each of the Cook Defendants' net worth.

While Cook's pending motions in limine argue that much of Plaintiff's proposed evidence is irrelevant and inadmissible for *any* purpose, all of this evidence is certainly irrelevant to Plaintiff's claims for compensatory damages. Critically with respect to Plaintiff's proposed evidence, what is relevant is the Cook Defendants' state of knowledge *at the time Ms. Brand's filter was manufactured* (and certainly no later than the date on which it was implanted). *See, e.g.*, GAJICIV 62.650, Georgia Suggested Pattern Jury Instructions – Civil 62.650 Strict Liability; Design Defect; Risk-Utility Test and Factors (6) (directing jurors deciding reasonableness of manufacturer's design to consider "the technology available when the product was manufactured…"); *see also Banks v. ICI Americas, Inc.*, 264 Ga. 732, 450 S.E.2d 671 (Ga. 1994).

Plaintiff tries to avoid this benchmark for the state of knowledge by invoking what she

calls a "continuing duty to warn" in relation to her failure to warn claim.  *See* Opp. Memo. at 8

(relying on "continuing duty to warn" to suggest that "there is a significant overlap of evidence"

on liability and compensatory-damages issues and entitlement to punitive damages).  That

argument also fails for several reasons: (1) Georgia law does not recognize a "continuing duty to

warn" under the circumstances here; (2) Plaintiff has not properly asserted any claim based on

such a duty even if it did exist; and (3) she has identified no expert evidence from which the

Court or a jury could conclude (a) the extent of such a duty, (b) the breach of such a duty by the

Cook Defendants, or (c) any causal link between any such breach and Plaintiff's claimed

injuries.  Most significantly, there is no evidence in the record to suggest that any alleged post-

sale warning would have changed Ms. Brand's medical treatment by Dr. Mark Rheudasil in any

respect.  Plaintiff cannot bootstrap evidence that is (at most) relevant to her punitive-damages

claim into her liability case through a claim of "continuing duty to warn."[4]

      In suggesting evidentiary overlap, Plaintiff makes certain other suggestions irrelevant to

the question of liability, misleading to the jury, and unfairly prejudicial to Cook.  Specifically:

     (1) that a 2012 communication with the FDA regarding the Celect Platinum was

        misleading;

     (2) that the Cook Defendants breached an obligation to report international adverse

        events; and

     (3) that the existence of the Platinum re-design effort corroborates a failure to warn.

Opp. Memo. at 9-10.  Ms. Hill made similar arguments in opposing bifurcation in her case; each

of which reinforce the need for bifurcation.  The first two items do not affect the elements of

either a strict-liability-design-defect claim or a failure-to-warn claim related to the *Celect*, which

---

[4] This issue will be addressed thoroughly in the Cook Defendants' summary judgment briefing, which is incorporated here.

should be the focus of the compensatory-damages claims.  And as to the Platinum re-design effort, Rule 407 will bar such evidence as a subsequent remedial measure based on public policy: Plaintiff cannot suggest that the existence of a redesign evidences a failure to warn.[5]  Indeed, as in *Hill*, bifurcating punitive damages will permit the Court to defer such potentially difficult evidentiary decisions unless and until necessary in a punitive-damages.  In *Hill*, the Court never had to get there, and the Cook Defendants believe the same will be true in this case.

Like Ms. Hill, Ms. Brand suggests that limiting instructions may be used in the liability phase to deal with evidence that is relevant only to punitive damages.  Opp. Memo. at 11.  While limiting instructions certainly should be given any time evidence is admitted for a limited purpose, the Court well knows that they have the potential to confuse the jury and consume trial time, often do little to cure the prejudice that they are often aimed at eliminating, and have the potential to make that effect even worse.  As a practical matter, it is difficult if not impossible to determine how limiting instructions would work here.  Plaintiff intends to rely on a slew of evidence that the Cook Defendants believe is relevant at most only to her punitive-damages claim.  She offers no concrete suggestions as to how and when limiting instructions would be delivered, or how they could avoid prejudice to the Cook Defendants; on the contrary, such instructions could easily *create* unfair prejudice by drawing even more attention to the evidence.  If the trial can be structured in a way to avoid prejudice caused by evidence that is inadmissible on the topic of liability and avoid consuming precious trial time with distracting interruptions of multiple limiting instructions, that will serve the judicial interest of effective and efficient trial management and avoid potential prejudice.

---

[5] Cook addresses this and other Rule 407 issues in its Memorandum in Support of the Renewed Motions in Limine.

As the Court concluded in *Hill*, bifurcation will not create a series of mini-trials and is informative to the Court and parties in this bellwether process.  Plaintiff suggests that bifurcation would lead to inefficiencies due to arguments over which phase various pieces of evidence may be presented.  Opp. Memo. at 11-12.  But that never happened in *Hill*.  And by the time of trial, this Court will have considered and resolved the Cook Defendants' motion for summary judgment, motions in limine, and *Daubert* motions.  As in *Hill*, the Court's rulings on these pending motions will clarify what evidence may be presented for what purposes, and there is low risk of extensive debate at trial.  And as noted above, this sequencing may also streamline the relevant evidence depending on which of Plaintiff's claims survive to trial.

When Ms. Brand is properly limited to the claims and theories that her evidence permits her to pursue under Georgia law, the risk of overlapping evidence is quite low.  Coupled with the possibility that the jury may return a verdict of no liability on compensatory damages, as it did in *Hill*, the circumstances here offer substantial justification for a bifurcated trial segregating the issue of liability for compensatory damages from the issue of liability for and amount of punitive damages.

Bifurcation will also protect the integrity of the proceeding and mitigate the risk of reversible error based on an inconsistent verdict.  While juries certainly can understand complex evidence and follow jury instructions, the Court can also structure the trial to help the jury and minimize the risk of inconsistent verdicts (*e.g.*, the jury finding no negligent failure to warn or design defect yet still awarding punitive damages).  The jury in a Florida products-liability case, *Consolidated Aluminum Corporation v. Braun*, 447 So.2d 391 (Fla. Dist. Ct. App. 1984), made just such an error.  It found the defendant ladder manufacturer negligent in causing the plaintiff's injury, while at the same time finding no defect in the defendant's ladder.  *Id.* at 392.  The

reviewing court found this impossible on the theories litigated—the defendant could not have been negligent if the product contained no defect—and reversed and remanded. *Id*. Bifurcating the trial so that the issue of punitive damages is submitted to the jury only if the jury determines Plaintiff is entitled to compensatory damages on a negligence basis prevents the risk of such an inconsistency.

Moreover, while Plaintiff claims that "no court has adopted a 'likelihood of success on the merits' test" to determine whether bifurcation is appropriate, Opp. Memo. at 12, a number of district courts, including others in the Seventh Circuit, have properly factored into bifurcation decisions the possibility that a finding of no liability (or some other determinative conclusion) in an initial phase could reduce the overall time and resources required by a case. *See, e.g.*, *Comiskey v. United States*, No. 89 C 8195, 1992 WL 296374, at *2 (N.D. Ill. Oct. 14, 1992) ("This court finds that defendant has met its burden of demonstrating that bifurcation is warranted because there is sufficient evidence that bifurcation will encourage convenience, efficiency, and judicial economy. As previously noted, a finding in favor of defendant on the liability issue would preclude plaintiff from recovering any damages. There may be no need for the court to review any damages evidence. In light of this fact, bifurcation is particularly appropriate.").[6]

The status of Ms. Brand's case as an MDL bellwether trial also weighs in favor of

---

[6] *See also, e.g.*, *Ortega v. United States*, No. 16 C 5475, 2017 WL 3841632, at *3 (N.D. Ill. Aug. 31, 2017) ("A finding of no liability would eliminate the need for this testimony and the accompanying written evidence, potentially saving judicial resources."); *Fetzer v. Wal-Mart Stores, Inc.*, No. 13-CV-9312, 2016 WL 6833912, at *4 (N.D. Ill. Nov. 21, 2016) (noting that "should liability be determined in favor of Defendant, bifurcation would completely eliminate the testimony of four expert witnesses (those that solely project [the plaintiff's] future damages) and significantly reduce the testimony of at least nine others (the medical experts)" and further commenting that "because the same jury will be utilized for both liability and damage phases, bifurcated findings in favor of Plaintiffs are unlikely to take significantly longer than a singular proceeding").

bifurcation.  One purpose of bellwether trials in mass-tort litigation is to provide the parties with some indication of the merits of claims and defenses in the eyes of jurors.  To best accomplish this, bellwether trials should be as free of distracting and confounding factors as possible. Bifurcation of compensatory and punitive-damages phases helps accomplish this by minimizing the chances that jurors will allow their decisions on the claims and defenses presented by the compensatory claims to be influenced by evidence that relates only to punitive damages. Bifurcation thus allows the bellwether trial to better serve its representative purpose.

Finally, bifurcation of the question of punitive damages until after a liability finding for compensatory damages will permit the Court to defer or even avoid having to perform the choice of law analysis for punitive damages (a point that the Cook Defendants emphasized in the opening motion).

### IV.    Bifurcation of Punitive Damages Will Prevent Unfair Prejudice to the Cook Defendants and Will Not Prejudice Ms. Brand.

Bifurcation presents an easy and sensible opportunity for this Court to eliminate unfair prejudice to the Cook Defendants while simultaneously preserving Plaintiff's right to a trial.

Plaintiff suggests again that undue prejudice to the Cook Defendants can be cured by limiting instructions.  Opp. Memo. at 17.  But why risk undue prejudice when a simple procedural tool is available that *eliminates* the unfair prejudice and likely enhances juror understanding and judicial economy to boot?  One court addressed this exact problem in granting a defendant's motion for bifurcation:

> To be sure, the Court could instruct the jury to consider evidence of drug use by Mr. Kelly only as to the punitive damages claim, and we presume the jury would endeavor to follow that instruction. But, we see no reason to take the risk that a jury might fail to do so, if the cost to judicial efficiency from bifurcation is minimal.

*Vandersteen v. Kelly,* No. 07 C 5632, 2010 WL 659327, at *2 (N.D. Ill. Feb. 23, 2010).

Like Ms. Hill, Ms. Brand claims that she will be prejudiced by bifurcation because there will be a significant overlap in the evidence.  Opp. Memo. at 18.  As discussed above, bifurcation will cause no significant overlap, because evidence will be properly limited to the purposes for which it may legitimately be introduced.  Also like Ms. Hill, Ms. Brand suggests that her expert witnesses would have to be recalled, but she does not explain that assertion in any detail,[7] and does nothing to substantiate her suggestion that that would involve "enormous expense in money and time."  *See* Opp. Memo. at 18. Again, nothing of this sort happened in the *Hill* trial, where bifurcation worked smoothly and served its intended purpose.

Notably, although a two-phase trial can be handled in a way to minimize any prejudice to Plaintiff, the reverse is not true:  there is no practical way to assure that a single-phase trial does not lead to unfair prejudice to the Cook Defendants so significant as to require a new trial.  *See Hall v. Babcock & Wilcox Co.*, 69 F. Supp.2d 716, 733 (W.D. Pa. 1999).  In *Hall*, a case in which plaintiffs sued a nuclear facility for causing their cancers, after the first, single-phase trial resulted in a jury verdict for the plaintiffs, the court granted defendants' motion for a new trial to hold separate trials for compensatory and punitive damages, *even though separate trials would inconvenience plaintiffs and require witnesses to be called twice*.  *Id*.  The court concluded that the plaintiffs' inconvenience was outweighed by the prejudice suffered by the defendants if the evidence related to punitive damages was included in the liability and compensatory damages phase.  *Id*.

---

[7] Note further that the Cook Defendants have renewed the motion in limine regarding Plaintiff's experts and other witnesses reading from company documents.  Dkt. 8889, Cook Defendants' Memo in Support of Renewed Motions in Limine, at 59-62.  It seems highly doubtful that Plaintiff's experts are relevant for purposes of addressing the evidence Plaintiff identified in her response as relevant to punitive damages.

Relatedly, proceeding with a single-phase trial when bifurcation is an option exposes the Cook Defendants to an unconstitutional level of risk of erroneous deprivation of their property under *Connecticut v. Doehr*, 501 U.S. 1 (1991).  The Court need not take on this risk given that bifurcation is a sensible and prudent case management tool for this case.

**V.     At Minimum, the Court Should Bifurcate the Amount of Punitive Damages from the Remainder of the Trial.**

Ultimately, Plaintiff and the Cook Defendants agree that a bifurcated proceeding is appropriate at least as to the *amount* of punitive damages.  *See* Opp. Memo. at 18.  Bifurcation on this basis will further protect information about the Cook Defendants' financial status— information the Court has already held to be highly confidential—until it is necessary for the jury to consider it.  *See Ely v. Cabot Oil & Gas Corp.*, No. 3:09-CV-2284, 2016 WL 454817 (M.D. Pa. Feb. 5, 2016), at *6 (sequencing environmental damage trial so that evidence of defendant's finances introduced only when ripe for the jury's consideration).  As discussed above, the Cook Defendants ask the Court to bifurcate the question of liability for punitive damages from the question of liability for compensatory damages as ordered in *Hill*.  But, in the alternative, and at the very least, the Court should bifurcate the jury's determination of the *amount* of punitive damages from the remainder of the trial.

**VI.     Conclusion**

For the reasons set forth in this reply and in the Cook Defendants' opening Memorandum in Support of the Motion To Bifurcate, the Cook Defendants respectfully ask the Court to separate the question of liability for punitive damages from the question of liability for compensatory damages.

Dated: September 12, 2018                    Respectfully submitted,


                                             /s/ Andrea Roberts Pierson
                                             Andrea Roberts Pierson
                                             J. Joseph Tanner
                                             FAEGRE BAKER DANIELS LLP
                                             300 North Meridian Street, Suite 2700
                                             Indianapolis, Indiana  46204
                                             Telephone:          (317) 237-0300
                                             Facsimile:          (317) 237-1000
                                             andrea.pierson@faegrebd.com
                                             joe.tanner@faegrebd.com

                                             James Stephen Bennett
                                             FAEGRE BAKER DANIELS LLP
                                             110 W. Berry Street, Suite 2400
                                             Fort Wayne, Indiana  46802
                                             Telephone:          (260) 424-8000
                                             Facsimile:          (260) 460-1700
                                             stephen.bennett@faegrebd.com

                                             *Attorneys for Defendants Cook Incorporated, Cook
                                             Medical LLC f/k/a Cook Medical Incorporated,
                                             William Cook Europe APS*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 12, 2018, a copy of the was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.  Lead Co-Counsel for Defendants will serve any non-CM/ECF registered parties.

/s/Andrea Roberts Pierson

US.119821703.04