IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates to Plaintiff

*Tonya Brand*
No. 1:14-cv-06018-RLY-TAB

**COOK DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION TO EXCLUDE THE TESTIMONY OF
COOK DEFENDANTS' EXPERT DR. TIMOTHY MORRIS**

Defendants Cook Incorporated, Cook Medical LLC f/k/a Cook Medical Incorporated, and William Cook Europe APS (collectively, "Cook" or the "Cook Defendants") hereby oppose Plaintiff's Motion to Exclude the Testimony of Cook Defendants' Expert Dr. Timothy Morris ("the Motion" or "Plaintiff's Motion"). Dkt. 8647. Plaintiff's Motion rests exclusively on arguments that either misstate Dr. Morris's opinion or go to its *weight* rather than its *admissibility*. For those reasons, as further explained in this memorandum, Plaintiff's Motion should be denied.

## ARGUMENT

Though Plaintiff's Motion is styled as a motion to exclude Dr. Morris altogether, Plaintiff's Memorandum in Support of the Motion lists only four specific areas of Dr. Morris's testimony that are contested: 1) why IVC filters are used,[1] 2) whether the placement of IVC

---

[1] This corresponds to the title of Section 11 of his report. Dkt. 8650-1, Expert Report of Timothy Morris, M.D. ("Morris Rept.") at 14-20.

filters improves the mortality of some patients with PE,[2] 3) whether the Celect IVC filter in particular prevents PE and saves lives; and 4) whether Plaintiff avoided "a PE and DVT as a result of her filter."[3] Dkt. 8650, Brief at 1. Dr. Morris offers a great deal of additional opinions that are not challenged by Plaintiff, and, therefore, there is no basis for the motion to exclude his testimony in its entirety.

As to the opinions Plaintiff challenges, she offers no argument regarding the first two opinions she cites. In contrast, Dr. Morris's discussion of those two opinions alone consumes over seven pages of his report and cites extensive published literature in support. Dkt. 8650-1, Morris Rept. at 14-20, 21-22. Plaintiff's Motion and Memorandum in Support do not address those points at all.

Plaintiff's Memorandum is focused exclusively on Dr. Morris's specific opinions as to the Celect filter and her experience with it. Dkt. 8650. Plaintiff first attacks Dr. Morris's qualifications in passing, then goes on to claim that he cannot point to any studies[4] that support the efficacy of the Celect filter in particular. Finally, Plaintiff misinterprets Dr. Morris's opinion on her individual case and then attacks the straw man she has set up. *Id.* These arguments are refuted in detail below.

### A. Dr. Morris Is Qualified To Offer Expert Testimony on the Efficacy of IVC Filters.

Plaintiff begins her Memorandum with a brief, undeveloped attack on Dr. Morris's qualifications. Specifically, she claims that Dr. Morris does not insert IVC filters or choose

---

[2] This corresponds to Section 13 of Dr. Morris's report. Morris Rept. at 21-22.
[3] This is a misquotation of Dr. Morris's opinion that Plaintiff "avoided the occurrence of PE and DVT." Dkt. 8650-3, Morris Rept. at Appendix A, p. 8. Neither Dr. Morris nor any other expert in this case for either side will suggest that filters prevent deep vein thromboses, or DVTs, from <u>occurring</u>. Rather, filters prevent DVTs <u>from migrating</u> to the lungs and becoming pulmonary emboli, or PE.
[4] Plaintiff suggests that there is an "absence of studies specifically on this device." *E.g.*, Dkt. 8650, Brief at 3. As will become clear, she actually means to say "absence of <u>randomized controlled studies</u> specifically involving the Celect filter." She and her experts know very well that there are a great number of published <u>studies</u> involving the Celect.

which specific filter his patients should receive.  Dkt. 8650, Brief at 3.  Apparently, her argument is that Dr. Morris does not choose specific filters as part of his clinical practice and therefore should not be allowed to compare specific filters from the literature.  But if that is true, then Plaintiff's own expert, Dr. Krumholz, is likewise unqualified: not only does he not choose specific filters for his patients, *he does not even prescribe them*.  Dkt. 8642-2, Deposition of Harlan M. Krumholz, M.D., taken June 28, 2018 ("Krumholz Dep.") at 67:10-24.  In contrast, Dr. Morris's clinical practice centers around treating patients with deep venous thrombosis (DVT) and pulmonary embolism (PE), including prescribing IVC filters.  Dkt. 8650-4, Deposition of Timothy Morris, M.D., taken June 20, 2018 ("Morris Dep.") at 8:3-19; 9:5-9.  Moreover, Dr. Morris has spent his entire career focusing on DVT and PE and has published original research on the transition between the two, written review chapters in pulmonology textbooks which included opinions on IVC filters, and given presentations to the American Thoracic Society and American College of Chest Physicians regarding PE and IVC filter data.  *Id.* at 11:11-12:7; *see also* Dkt. 8650-1, Morris Rept. at 1-2.  An expert can be qualified "by knowledge, skill, experience, training, or education," not merely by specific clinical experience.  *See* Fed. R. Evid. 702.  Obviously, Dr. Morris's peers consider him an expert on DVT, PE, and the efficacy of IVC filters, notwithstanding the fact that he prescribes (but does not place) them.  Again, if Dr. Morris's lack of clinical experience prevents him from opining on specific filters, then Plaintiff's expert Dr. Krumholz is even less qualified.

One further point must be addressed: Plaintiff attempts to portray Dr. Morris as ignorant of varying filters by quoting a portion of his deposition out of context.  Specifically, she notes that Dr. Morris could not say whether there was a clinically relevant difference between the Celect filter and the filters used in the Rosner *et al.* 2004 study, which he cites in his report.  Dkt.

8650, Brief at 4.  She conveniently ignores that a comparison was impossible because the Rosner study *did not specify which filters were used.*  Dkt. 8650-4, Morris Dep. at 43:19-44:13. Dr. Morris was simply declining Plaintiff's counsel's invitation to speculate.

### B. Dr. Morris's Opinion That the Celect IVC Filter Is Effective Is Admissible.

Plaintiff spends the bulk of her Memorandum attacking Dr. Morris's opinion that the Celect IVC filter is effective in reducing the incidence of PE.  Her essential argument is that his opinion is offered "in the absence of studies specifically on this device."  *E.g.,* Dkt. 8650, Brief at 3; *see also id.* at 4.  This is untrue, and Plaintiff knows it: Dr. Morris's report cites numerous peer-reviewed, published studies specifically addressing the Celect and reporting PE rates for it. *E.g.,* Dkt. 8650-1, Morris Rept. at 26 (reporting PE rates from multiple studies specifically focused on the Celect filter).  At deposition, he was forced to reiterate those very same points and essentially read his report to Plaintiff's counsel on the record, specifically explaining that these were studies focused on the Celect in particular and also reported PE rates (or the absence of PE) following the placement of the Celect.  Dkt. 8650-4, Morris Dep. at 76:12-82:1 (attempting to comprehensively answer Plaintiff's counsel's demand for "the entirety of your support" that the Celect reduces the risk of PE); *see especially id. at* 80:12-81:17 (discussing studies specifically focused on the Celect filter).  Plaintiff attempts to skirt this reality by playing at semantics, suggesting that Dr. Morris could not identify, on the spot at deposition and without the aid of a computer, a sentence in a published article specifically saying that the Celect is effective in reducing PE risk.  Dkt. 8650, Brief at 4.[5]  But, as Dr. Morris noted, it is irrelevant whether the authors specifically highlighted that fact in a sentence in the discussion section: the data speaks for itself, and that is what he relies upon.  Dkt. 8650-4, Morris Dep. at 98:21-99:24.

---

[5] She characterizes this as Dr. Morris's response to questioning by Cook's counsel.  A full reading of the quoted question shows that the question was asked in clarification of earlier questioning on the topic by Plaintiff's counsel.

Ultimately, Plaintiff backtracks from her claim that there are no studies on the Celect in general and takes issue with the lack of *randomized controlled trials* (RCTs) on the Celect. Dkt. 8650, Brief at 5. She argues that Cook's epidemiology expert, Dr. Fryzek, believes that randomized controlled trials are necessary to prove efficacy or causality. *Id.* at 5 & n.7. Even if that characterization of Dr. Fryzek's opinion were fair, which it is not,[6] Dr. Morris would be free to disagree. If an expert's opinion became inadmissible simply because another expert disagreed, then experts would never be permitted to testify on contested points.

Moreover, as Plaintiff well knows, Dr. Morris has more than adequately explained why Celect-specific RCTs have not been done and why they are not necessary. First, he explains by analogy that there has only ever been one RCT, conducted decades earlier, that compared PE rates in patients who were given anticoagulants to a control group. Dkt. 8650-4, Morris Dep. at 60:11-62:11. Because that initial study showed that anticoagulants significantly reduced death by PE, the study could never be done in the same way to test new anticoagulants that have since been invented; it would be unethical to include a true control group that received no anticoagulant at all, because withholding the anticoagulant that was proven effective in the first RCT would effectively withhold a known, lifesaving treatment and render treatment below the standard of care. *Id.* Thus, the medical community has used extrapolations and comparisons of data rather than insisting on performing such an unethical study to test new anticoagulants. *Id.*

For the same reason, Dr. Morris has explained that the medical community has long viewed it unethical to conduct an RCT on an IVC filter in which anticoagulants are withheld from patients who can tolerate them. Thus, the precise test that Plaintiff demands cannot possibly be performed; she received a filter because she was unable to receive anticoagulation and her physicians feared she would develop a deadly PE. Dkt. 8650, Brief at 5; Dkt. 8650-3,

---

[6] The Cook Defendants take up this argument further in responding to Plaintiff's *Daubert* challenge to Dr. Fryzek.

Morris Rept. at Appendix A, p. 7.  Nevertheless, at least one RCT (in which all participants received anticoagulation) has shown that IVC filters do significantly reduce the incidence of PE. Dkt. 8650-1, Morris Rept. at 18 & n.9 (citing Decousus *et al.*'s 1998 publication).  And, as with anticoagulants, the medical community has extrapolated data by comparing PE rates for new filters to PE rates while using anticoagulants (which are known to reduce PE) or other filters that have been proven effective in reducing PE (e.g., through the aforementioned RCT).  Dkt. 8650-4, Morris Dep. at 91:25-92:14.

Thus, Dr. Morris's discussion of individual published rates of PE in patients who had received a Celect filter is the industry-standard means of proving efficacy for any particular filter.  Moreover, Dr. Morris does not stop at merely quoting several studies of the Celect in particular.  He also cites several meta-analyses, in which the authors reviewed literature and aggregated data for various filters and compared PE rates for various filters.  For example, he cites Jia *et al.*'s 2018 review in noting that filters as a group have a PE rate of 2.1%, which is comparable to PE rates observed with other forms of therapy.  Dkt. 8650-1, Morris Rept. at 22 & n.100.  That same review reported a Celect PE rate of just 1.6%, indicating that it had a lower PE rate than filters at large (which in turn performed similarly to anticoagulants, which have been proven effective).  Dkt. 8650-4, Morris Dep. at 79:1-80:6. He noted that Angel *et al.*'s 2011 review gave similar results and the same conclusion.  Dkt. 8650-4, Morris Dep. at 52:7-53:1; 78:1-25 (collectively noting that the Celect's PE rate was found to be below the rate for filters overall and comparable to anticoagulation); Dkt, 8650-1, Morris Rept. at 27 & n.115.

Having glossed over the considerable support that Dr. Morris offers using industry-standard reasoning, Plaintiff finally attacks Dr. Morris's "anecdotal evidence" of being unable to recall a patient dying with a Celect filter in place.  Dkt. 8650, Brief at 5-6.  Plaintiff claims that

this is due to his "lack of practical experience with the Cook Celect filter." *Id.* Again, though, if Dr. Morris's opinions on the Celect are undermined by a "lack of practical experience," then Plaintiff's expert Dr. Krumholz (who cannot recall ever having even *prescribed* a filter for his patients, let alone choosing a particular model or inserting it) is clearly unable to offer his opinions on the Celect. Moreover, Dr. Morris is a nationally and internationally recognized expert who has been consulted countless times to discuss difficult cases of PE, including the use of IVC filters as treatment, dating back to 1987. Dkt. 8650-4, Morris Dep. at 85:21-87:6. The fact that Dr. Morris cannot recall ever hearing of someone experiencing a fatal PE with a Celect filter in place is thus circumstantial evidence in favor of the Celect's efficacy. Plaintiff remains free to question the weight that should be given to that fact, but this by no means undermines Dr. Morris's well-supported opinion that the Celect in particular is effective in preventing PE.

Plaintiff's Memorandum errs in claiming there are no studies suggesting the Celect is effective. Dkt. 8650, Brief at 3-6. Dr. Morris cited a slew of studies in both his report and his deposition. Dkt. 8650-1, 8650-4. His methodology in interpreting the data in those studies is the same approach the medical community has used for years to deem individual anticoagulants and IVC filters effective. Plaintiff's quarrel over the lack of an RCT that would be unethical to conduct is a matter for the jury, not a *Daubert* motion.

   **C.** **Dr. Morris's Opinion That the Celect IVC Filter Offered Plaintiff a Benefit Is Admissible.**

Plaintiff concludes by attacking Dr. Morris's opinion that Plaintiff avoided the occurrence of PE and DVT. As Plaintiff's Memorandum itself notes, Dr. Morris does *not* opine that Plaintiff suffered a DVT and that her filter caught a clot, thereby preventing a PE. Dkt. 8650-3, Morris Rept. at Appendix A, p. 8. On the contrary, his opinion is that she did *not* in fact "suffer from PE or DVT as a result of her high-risk complicated spinal operation." *Id.* "As such,

7

there is no evidence that her IVC filter failed to do what it was intended to do." *Id.* Nevertheless, Plaintiff spends the better part of three pages of her Memorandum attacking an opinion that she admits Dr. Morris *is not offering*. Dkt. 8650, Brief at 6-8. In doing so, she misses Dr. Morris's point: that the Celect filter in general has a proven benefit in protecting against PE,[7] that it was appropriate to place it in Plaintiff to offer her that protection,[8] *and that there is no evidence it failed to do its job in Plaintiff's particular case*. He is not saying the filter actually caught a clot and prevented a PE in Plaintiff; he is saying that there is no evidence it failed to do so in her case and thus provided her with *less* protection than it does for patients at large. This is important, in as much as Plaintiff has elsewhere argued that the Celect filter offered her no "protection" and thus no individual benefit.[9] This is not an irrelevant or semantic opinion by Dr. Morris: it is his opinion that Plaintiff *is not an exception* to the general rule that the Celect offers protection from PE.

To be clear: Plaintiff explicitly and correctly notes that Dr. Morris is *not* claiming Plaintiff's filter actually caught a clot and prevented PE in her case. Nevertheless, she spends three pages accusing him of speculating because he fails to support a claim that he is *not* making. Plaintiff cites absolutely no foundational deficiencies or methodological issues with Dr. Morris's actual opinion, namely that there is no evidence the Celect failed to do its job in Plaintiff's individual case. The Court should deny Plaintiff's Motion.

---

[7] Plaintiff attacks this prong of the analysis, as discussed above. As noted, her attack is meritless.
[8] Plaintiff never addresses this opinion, which spans pages 5-8 of Appendix A of Dr. Morris's report. Dkt. 8650-3.
[9] For example, Plaintiff raises this argument in her *Daubert* challenge to Dr. Gillespie. Dkt. 8615 at 5 *et seq.*

## **CONCLUSION**

For the reasons stated above, the Cook Defendants respectfully request that the Court deny Plaintiff's Motion in its entirety. Dr. Morris is well qualified to give the opinions Plaintiff attacks. His report and deposition testimony establish that he used familiar, reliable methodology. He based his decisions on extensive medical literature that he overtly cites in his report and referenced at his deposition, which he applied using industry-standard methodology. Dr. Morris's testimony should not be limited. Plaintiff's Motion should be denied.

Dated: September 13, 2018

Respectfully submitted,

/s/ Andrea Roberts Pierson
Andrea Roberts Pierson (#18435-49)
Jessica Benson Cox (#26259-49)
Victoria R. Calhoon (#28492-49)
Anna C. Rutigliano (#32743-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, IN   46204
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
andrea.pierson@faegrebd.com
jessica.cox@faegrebd.com
victoria.calhoon@faegrebd.com
anna.rutigliano@faegrebd.com


Charles Webber (#215247)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402
Telephone: (612) 766-8719
Facsimile: (612) 766-1600
chuck.webber@faegrebd.com

*Counsel for the Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 13, 2018, a copy of the foregoing was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.  Lead Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

                                            /s/ Andrea Roberts Pierson