UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND               Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION                MDL No. 2570
_____

This Document Relates to Plaintiff

    *Brand v. Cook Medical, Inc. et al.,*
    No. 1:14-cv-06018-RLY-TAB
_____

## THE COOK DEFENDANTS' RESPONSE TO PLAINTIFF'S *DAUBERT* MOTION TO EXCLUDE "IMPERMISSIBLE" TESTIMONY OF DR. MARK RHEUDASIL

The Court should deny Plaintiff's "Motion to Exclude or Limit the Expert Testimony of Mark Rheudasil, MD," Dkt. 8621, 8622.[1] Under both Rule 702 and the *Daubert* line of cases, Dr. Rheudasil's 30 years of training and experience in placing and retrieving IVC filters provide a solid foundation for his opinions concerning the safety and efficacy of such filters and their risks and benefits. Indeed, this is exactly the same training and experience on which Dr. Rheudasil relied in making his real-life treatment decisions for Plaintiff Tonya Brand. Moreover, Plaintiff's own disclosure of the expert testimony by Dr. Rheudasil that she intends to offer at trial belies her motion, as it includes opinions that rest on the same decades of experience that support the opinions Cook seeks to offer. Plaintiff offers no sound reason to exclude Dr. Rheudasil's testimony on his experience with and knowledge of the risks and benefits or the safety and efficacy of IVC filters, and the Court should deny Plaintiff's motion.

---

[1] Plaintiff has filed a separate motion challenging some of Dr. Rheudasil's opinions based on the disclosure requirements of Rule 26(b)(2), *see* Dkt. 8552, 8553, and incorporates that motion in the current motion by reference. *See* Dkt. 8622 at 1 n.3. Cook likewise incorporates its response to that motion, which appears in a combined submission that addresses all of Plaintiff's motions raising the same Rule 26(b)(2)(B) objection to the testimony of her treating physicians. *See* Dkt. 8736.

1

## BACKGROUND

Dr. Mark Rheudasil is a vascular surgeon who placed and removed Plaintiff's Celect IVC filter. He graduated from the University of Texas Southwestern Medical School in 1983, and completed an internship, residency, and fellowship in vascular surgery at Emory University Affiliated Hospitals in Atlanta, Georgia, between 1983 and 1989. Ex. A, Rheudasil CV. He practiced as a vascular surgeon at East Texas Vascular Associates in Tyler, Texas, from 1989 to 1991 and at Vascular Surgery, P.C./Vascular Institute of Georgia from 1991 to 2011. Since 2011, he has practiced as a vascular surgeon in the Division of Vascular Surgery at St. Joseph's Hospital Medical Group/The Emory Clinic in Atlanta. *Id.* He is board certified in General Vascular Surgery and is a Registered Vascular Technologist. *Id.* He is a fellow of the American College of Surgeons, and he is a member of the Society for Vascular Surgery and multiple other organizations of vascular surgeons. He has served as Chair of the Department of Surgery at Saint Joseph's Hospital since 2006.

As Dr. Rheudasil described his field, "[v]ascular surgery takes care of problems associated with blood vessels, typically outside of the heart and brain." Dkt. 8554-1, Deposition of Mark Rheudasil, M.D., taken February 28, 2018 ("Rheudasil Dep.") at 14:24-15:1. Dr. Rheudasil began placing IVC filters in the late 1980s, and he has placed IVC filters made by many manufacturers, including Cook. *Id.* at 24:1-21. He has placed and retrieved hundreds of IVC filters over the years, including over 50 Celect filters. Dkt. 8554-2, Rheudasil Dep. at 54:13-18; Dkt. 8554-4, Rheudasil Dep. at 98:24-99:2; Dkt. 8554-2, Rheudasil Dep. at 54:1-12. He has placed filters at the request of Plaintiff's spinal surgeon, Dr. Timothy Morrison, eight to ten times a year for the last 15-20 years (*i.e.*, 120 to 200 times). Dkt. 8554-2, Rheudasil Dep. at 34:6-19.

Dr. Rheudasil treated Mrs. Brand from February 2009 through November 2015. Dkt. 8554-2, Rheudasil Dep. at 32:1-8; *id.* at 41:16-22; Dkt 8554-3, Rheudasil Dep. at 94:11-95:7. He assessed her risk for pulmonary embolism prior to her 2009 spinal fusion surgery (Dkt. 8554-1, Rheudasil Dep. at 30:21-31:6; Dkt. 8554-2, Rheudasil Dep. at 46:8-22); he prescribed and placed her IVC filter (Dkt. 8554, Rheudasil Dep. at 32:9-15); he participated in her 2009 spinal fusion surgery (*id.* at 33:25-3405); and he treated Mrs. Brand for her complications following her 2011 filter fracture (Dkt. 8554-3, Rheudasil Dep. at 75:13-85:3). Dr. Rheudasil also performed Plaintiff's 2015 open removal procedure and provided her follow up care. Dkt. 8554-2, Rheudasil Dep. at 32:16-18; Dkt. 8554-3, Rheudasil Dep. at 93:17-95:7. Mrs. Brand has sought Dr. Rheudasil's advice and care on multiple occasions post-operatively since 2015, and she sought to consult him as recently as November of last year. Dkt. 8554-3, Rheudasil Dep. at 94:11-95:16; Ex. B, St. Joseph Hosp. 2185-2186.

## ARGUMENT

The Court should deny Plaintiff's *Daubert*-based motion to limit the trial testimony of her treating physician, Dr. Mark Rheudasil. As a threshold matter, Dr. Rheudasil will appear in the *Brand* trial by deposition only, and the parties will submit the proffered testimony for the Court's review at the appropriate time. The Court should address challenges to the testimony of Dr. Rheudasil in that context, as it did in *Hill*. *See* Ex. C, *Hill* Tr. at 1870:17-21 (11/1/17).

Turning to the merits, although Plaintiff's motion never specifically describes the relief she is seeking,[2] the motion focuses generally on Dr. Rheudasil's "opinions on the safety and efficacy of IVC filters generally and the Celect in particular," Dkt. 8622 at 8. Plaintiff's

---

[2] Plaintiff's motion "object[s] to any impermissible expert testimony not limited to his observations during her treatment," Dkt. 8621 at 1, and her memorandum asks for "an Order that excludes any testimony from Dr. Rheudasil that does not meet the requirements of Federal Rule of Evidence 702 and *Daubert*," Dkt. 8622 at 8. These descriptions are not particularly helpful, akin to asking the Court to exclude all evidence that is inadmissible.

3

objection to that testimony is not well-founded under Rule 702 and *Daubert*.[3]  Dr. Rheudasil's opinions concerning the risks and benefits of IVC filters generally and the Celect filter in particular formed the core of Dr. Rheudasil's treatment decisions for Plaintiff, and the opinions have as sound a foundation now as they did when Dr. Rheudasil relied on them in treating her. *Daubert* case law expressly recognizes that experts may testify based on their experience without the need for elaborate methodologies or independent scientific support.

Finally, the Court should deny Plaintiff's motion because Plaintiff herself proposes to offer expert opinions from Dr. Rheudasil that rest on the same foundation of training and experience that support the opinions Cook has disclosed, belying her claim that the testimony somehow lacks a reliable basis.

### 1. The Training and Experience on Which Dr. Rheudasil Based His Treatment Decisions for Plaintiff Provide an Adequate Basis for Dr. Rheudasil to Testify About Those Decisions.

Dr. Rheudasil's decades of training and experience with IVC filters earned him the trust and confidence both of Plaintiff's spinal surgeon Dr. Morrison and of Plaintiff herself, and that experience formed the basis for Dr. Rheudasil's evaluation and treatment of Plaintiff, including his placement and retrieval of Plaintiff's Celect IVC filter.  Plaintiff has asserted no claim against Dr. Rheudasil for his treatment of her, and she does not contend that he lacked a reliable basis or foundation for evaluating her need for an IVC filter, recommending the placement of her Celect filter, or placing and retrieving that filter.  Yet Plaintiff now argues that Dr. Rheudasil lacks a

---

[3] Although Plaintiff's memo primarily discusses *Daubert*'s requirement of a reliable methodology, she also makes passing references to other grounds for exclusion, including lack of qualification, *see* Dkt. 8622 at 2-3, 7 ("His opinions on safety and efficacy are… not based upon qualified opinion formed from reliable methodology") and lack of helpfulness to the jury, *see id.* at 4, 6 ("Cook cannot meet its burden of establishing that his testimony would be helpful to the jury").  Plaintiff offers no support for these other grounds, and they cannot justify exclusion.  Plaintiff cannot and does not dispute that a vascular surgeon with 30 years of experience in placing and removing IVC filters is qualified to testify about filters' safety and efficacy.  And testimony about the safety and efficacy of IVC filters will certainly be helpful to a jury in a case in which the safety of Plaintiff's filter is the central issue.  The only *Daubert* issue properly raised in Plaintiff's motion is the basis of Dr. Rheudasil's opinions.

reliable basis or methodology to tell a jury about exactly the same risks and benefits of IVC filters on which he based his treatment decisions. The Court should reject Plaintiff's argument.

The 30 years of training and experience on which Dr. Rheudasil based his evaluation and treatment of Plaintiff necessarily provide a sufficient basis for Dr. Rheudasil to testify about those topics at trial. A critical part of Dr. Rheudasil's treatment of Plaintiff involved weighing the risks and benefits of placing an IVC filter and making a treatment recommendation to Plaintiff based on that evaluation. Dr. Rheudasil's knowledge of those risks and benefits of the Celect IVC filter came from Dr. Rheudasil's medical education and training, his 30 years of experience with IVC filters, and his review of literature regarding IVC filters. Dkt 8554-1, Rheudasil Dep. at 13:15-18; Dkt. 8554-3, Rheudasil Dep. at 63:17-64:8

Indeed, in the *Hill* case, this Court permitted Plaintiff Hill's treating doctors to testify concerning the reasons for their treatment decisions, including their belief in the efficacy of IVC filters, based on their training and experience with IVC filters. *See* Ex. C, *Hill* Tr. at 1870:17-21 (11/1/17) ("The guidance from the Court, of course, as I've said, he can testify -- he has to testify as to what went into his decision making in prescribing a filter for Mrs. Hill"); *see also id.* at 1867:5-7 ("Certainly he'd be able to testify as to what went into his decision making in prescribing a Cook Celect filter or a filter for Mrs. Hill."). Dr. Rheudasil has a sound and reliable basis to tell the jury about the opinions on which he based Plaintiff's treatment decisions.

Dr. Rheudasil's training and experience are likewise sufficient foundation for the specific opinions Plaintiff cites in her motion. *See* Dkt. 8622 at 8 n.39. Dr. Rheudasil's training and extensive experience with IVC filters provide clear bases for testimony regarding multiple facts and opinions, including but not limited to:

5

- His belief that Plaintiff was an appropriate candidate for an IVC filter,

- Plaintiff's risk factors for PE,

- The risk/benefit profile for IVC filters, including the Celect,

- His continued use of the Celect despite Plaintiff's filter experience,

- His conclusion that all IVC filters perforate to some extent but that most perforations are asymptomatic and clinically insignificant,

- His experience with IVC filters, including his belief that Plaintiff experienced a rare instance of a known risk of filters, and

- His view that the remaining fragments pose little risk to Plaintiff.

*See id.* Moreover, Plaintiff's objection to Dr. Rheudasil's testimony that he continues to use Celect filters and has confidence in them despite knowledge of Plaintiff's precise complication, Dkt. 8622 at 8 n.39 (citing Rheudasil Dep. at 54:6-56:23, 97:15-99), ignores the Court's overruling of identical objections to just such testimony in the *Hill* trial. *See Hill* Tr. at 1944:3-6 (11/1/17) (ruling treating doctor's testimony that "I continue to prescribe filters to this day" is "relevant").

Plaintiff's attempt to imply that Dr. Rheudasil lives in some remote stone tower with no access to current medical knowledge is belied by the doctor's own testimony. Just three pages before the passage Plaintiff quotes on page 5 of her memo, Dr. Rheudasil makes clear that although he bases his treatment decisions on his training and experience, he keeps up on the medical literature and is fully aware of the many articles supporting the efficacy of IVC filters:

> Q.   If an epidemiologist has knowledge of the scientific literature regarding IVC filters and their efficacy, would you not defer to them in the determination as to whether or not IVC filters as a -- as a group …of medical devices prevent pulmonary embolus.
> A.   I probably would not. As I say, there is not hundreds; ***there's probably thousands of articles supporting the use of IVC filters.***

6

>   \*\*\*
>   Q.    … As we sit here today, can you point to a single piece of -- one single piece of medical literature, and let's talk about level-one studies, can you point to any level-one study that IVC filters, as a whole, prevent -- excuse me, reduce the risk of pulmonary embolus?
>   \*\*\*
>   Q.    (By Mr. Martin) One single one.
>   A.    I can't give you a name. ***I mean, literally this has been standard medical knowledge since the mid '80s. So this -- this has been thousands of papers on this subject.***
>   Q.    (By Mr. Martin) Okay. And so -- and you have read those thousands of papers?
>   A.    I'm aware -- ***I'm aware of the content of the literature.***
>   Q.    Okay. Well, tell us the content of the literature. This is an important question.
>   A.    Content of the literature is that, in appropriate patients, IVC filters reduce the incidence of pulmonary embolus.
>   Q.    Which -- when you say "appropriate patients," what patients are you talking about in your definition of appropriate patients that it reduces the risk of a pulmonary embolus?
>   A.    Patients with classic indications for filter or patients that have -- that are thought to be high risk for PE.

Dkt. 8554-7, Rheudasil Dep. at 209:9-211:10 (emphasis added).

In context presented here, Dr. Rheudasil's experience not only provides a *sufficient* basis for an expert opinion, it provides the ***quintessential*** sound basis for an expert opinion. Courts consistently hold that experts should form their expert opinions for litigation in the same way they form opinions in their everyday work in their specialized fields. *See, e.g., Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) (noting that the trial court must ensure that the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field"). Here, the opinions that Dr. Rheudasil expressed in his deposition about the risks and benefits of the Celect not only rest on the same basis of training and experience that Dr. Rheudasil uses in his everyday practice, they are the ***very same opinions*** that he ***actually*** formed in his everyday practice. Plaintiff's argument that Dr. Rheudasil lacks an

adequate foundation for the opinions that formed his treatment decisions is untenable, and the Court should reject it.

### 2. *Daubert* Permits Treating Physicians to Offer Expert Opinions Based On Their Experience.

Even ignoring Plaintiff's own reliance on Dr. Rheudasil's years of experience for his treatment of her, Dr. Rheudasil's opinions concerning the safety and efficacy and the risks and benefits of IVC filters satisfy the *Daubert* and Rule 702 standard for admissibility, including the requirement that the opinions rest on a sound medical or scientific basis. *Daubert* and Rule 702 permit a witness to give expert testimony based on the witness's training and experience. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). "[A] court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether the expert is qualified to render an opinion in a given area." *Id.* *See also* Fed. R. Evid. 702 ("a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise"). In addition, as one of the cases cited in Plaintiff's motion notes, "because there are 'many different kinds of experts, and many different kinds of expertise,' the reliability analysis should be geared toward the precise sort of testimony at issue and not any fixed evaluative factors." *Lees v. Carthage Coll.,* 714 F.3d 516, 521 (7th Cir. 2013) (quoting *Kumho Tire Co. Ltd. v. Carmichael,* 526 U.S. 137, 150 (1999)).

This Court has recognized this principle and has admitted expert testimony based on a witness's experience on multiple occasions. For example, the Court permitted a plastic surgeon who had treated scores of dog bites to offer an expert opinion about the severity of the plaintiff's dog-bite injury, despite challenges to both his qualifications and his methodology:

8

> Common sense dictates that Dr. Villanustre's "methodology" is based on his own personal experience and on-the-job training. In the Court's view, this "methodology" is, in *Daubert* phraseology, "reliable." *See* Fed. R. Evid. 702. Perhaps more importantly, under these relatively uncomplicated circumstances, it is worth mentioning that "[t]he inquiry envisaged by Rule 702 is a flexible one, and a strict application of the Daubert factors is not always warranted, especially when the expert relies on his experience in the relevant field." *Tober v. Graco Children's Products., Inc.*, 2004 WL 1987239, at *11 (S.D. Ind. July 28, 2004). In the end, the Court is persuaded that Dr. Villanustre is perfectly capable, based upon his own personal knowledge, to testify about the severity of Thomas's injuries as compared to other dog bite injuries he has seen.

*Thomas v. Brinker*, 2012 U.S. Dist. LEXIS 2554, *8-9 (S.D. Ind. Jan. 9, 2012).

Such admission of expert testimony based on witness experience is both logical and necessary as a practical matter, especially with respect to the testimony of treating physicians. Although Plaintiff correctly points out that Dr. Rheudasil has not conducted any formal studies on IVC filters or read every article on the devices, those facts do not undermine the bases for his opinions – 30 years of treating patients at risk of PE and placing hundreds of IVC filters. Most treating physicians, like Dr. Rheudasil, do not spend time conducting studies, writing papers, or performing relative-risk analyses. They treat patients in real life and, in doing so, make observations and gain experiences that are both valid and useful. A practicing physician does not start over with every patient, but necessarily brings the knowledge and experience of years or decades to every treatment decision. Again, just as the physician uses that experience and knowledge in treating patients, the physician may rely on that same experience and knowledge in testifying in court. *See Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000) (holding one of the factors considered under *Daubert* is whether expert opinion was formed using "the methods of the discipline"). Under the law of this circuit and this district, Dr. Rheudasil's extensive training and experience provides a solid and more-than-adequate foundation for his opinions about the risks and benefits of IVC filters.

US.119074586.06

### 3. The Case Law Plaintiff Cites Does Not Support Exclusion of the Treating Doctor's Testimony.

The cases Plaintiff cites in her motion do not support the exclusion of Dr. Rheudasil's experience-based opinions because they involve wholly different kinds of expert testimony that require much different types of foundation. For example, in *Wendler & Ezra, P.C. v. American Intern. Group, Inc.*, 521 F.3d 790 (2008), the Seventh Circuit affirmed the exclusion of an expert's affidavit purporting to identify the source of an allegedly defamatory electronic bulletin board posting. The court based its decision on the fact that the expert's affidavit "does not say what software he used, what data he fed it, what results it produced, and how alternative explanations (including spoofing) were ruled out." *Id.* at 791. Of course, tracking down the unique source of a specific computer posting requires a much different methodology than evaluating the safety and efficacy of a medical device the physician has used for over 30 years, and the result in *Wendler* in no way undercuts the foundation of Dr. Rheudasil's opinions. *Compare also Lang*, 217 F.3d at 924 (affirming exclusion of expert economic expert who supposedly used a specific job evaluation system but did not explain how the system worked, what inputs were used, or what outputs were obtained). Unlike the experts in *Wendler* and *Lang*, Dr. Rheudasil's opinions are not mere "ipse dixit," offering "nothing but a bottom line." *Id.* at 791. They are the reflection of 30 years of hands-on experience, and they are admissible as non-retained expert testimony. As this Court has stated, again in a decision Plaintiff herself cites:

> Because [the expert] relies principally on his twenty-five years of experience in the industry, the *Daubert* factors are not very helpful here. *See* [*Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999))] (stating *"Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case"). … As a result, [the expert's] Report cannot be solely evaluated by the *Daubert* factors, but instead "the relevant reliability concerns...focus upon personal knowledge or experience." *Kumho,* 526 U.S. at 150.

10

*The Peoples State Bank v. Stifel, Nicolaus & Co., Inc.*, No. 1:10–cv–1640–RLY–TAB, 2013 WL 1024917 at *5 (S.D. Ind.).

### 4. Plaintiff's Motion Is Inconsistent with Her Own Expert Designations of Dr. Rheudasil.

Plaintiff's motion to Dr. Rheudasil's opinions is also undermined by her own expert disclosures of the opinions she plans to elicit from Dr. Rheudasil. Like Cook's disclosures, Plaintiff's disclosures and designations propose to offer Dr. Rheudasil's testimony concerning a number of facts and opinions arising from his 30 years of training and experience, testimony that is not based on any study, article, or statistical analysis. For example, Plaintiff has disclosed Dr. Rheudasil as an expert to testify to the following opinions:

- "He considers every commercially available filter equivalent in terms of their PE protection."
- "He placed the filter in Mrs. Brand as a prophylactic measure to try to reduce, minimize [*sic*] her risk for a pulmonary embolism."
- "His [*sic*] believes the majority of retrievable filters are not retrieved and are left in the body long term."
- "He cannot guarantee that other Celect filters he has paced [*sic*] have not fractured."
- "He removed the filter because he did not whether [*sic*] it could cause medical problems in the future. The fragments could go anywhere in the body and he was concerned it could migrate to her heart and potentially cause death."
- "A retrieval normally takes about 15 minutes but he worked on Mrs. Brand for 2 hours. He believed the risk of continuing the attempted retrieval outweighed risk [*sic*] of leaving the filter in place."
- "He considered the Tulip and Celect to be equally safe."
- "Long term filters are associated with an increased risk of thrombosis and the risk of clot."

Dkt. 8737-1 at 3-5, Bellwether Plaintiff Brand's Designation of Experts and Opinion Testimony.

In other words, Plaintiff intends to elicit from Dr. Rheudasil testimony concerning the experience, knowledge, and opinions that he applied in determining the appropriate treatment for Plaintiff — the same type of testimony Plaintiff asks the Court to bar Cook from introducing. Plaintiff cannot have it both ways, asking the Court to admit Dr. Rheudasil's experienced-based

11

opinions that she likes, but to exclude the opinions that she does not. Dr. Rheudasil's opinions about the risks and benefits of IVC filters and the Celect filter rest on a solid foundation, and the Court should deny Plaintiff's motion to exclude them.

## CONCLUSION

For the reasons set forth above, the Court should deny Plaintiff's motion to bar Plaintiff's treating physician Dr. Mark Rheudasil from testifying to the facts and opinions about the safety and efficacy on which he based his treatment decisions for Plaintiff.

Respectfully submitted,

Dated: September 14, 2018

/s/ *Andrea Roberts Pierson*
Andrea Roberts Pierson (#18435-49)
Jessica Benson Cox (#26259-49)
Victoria R. Calhoon (#28492-49)
Anna C. Rutigliano (#32743-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Telephone: (317) 237-0300
Facsimile:   (317) 237-1000
andrea.pierson@faegrebd.com
jessica.cox@faegrebd.com
victoria.calhoon@faegrebd.com
anna.rutigliano@faegrebd.com

*Counsel for the Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2018, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

/s/ *Andrea Roberts Pierson*