UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND              Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION               MDL No. 2570
_____

This Document Relates to:

    *Brand v. Cook Medical, Inc. et al.*,
    Case No. 1:14-cv-06018-RLY-TAB
_____

**THE COOK DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE OR LIMIT THE EXPERT TESTIMONY OF RENU VIRMANI, M.D.**

The Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS (collectively "Cook" or "the Cook Defendants"), submit this opposition in response to Plaintiff's Motion to Exclude or Limit the Expert Testimony of Renu Virmani, M.D. at Dkt. 8636, and respectfully urge the Court to deny Plaintiff's request to limit or exclude the challenged testimony for the reasons set forth below.

**I.    INTRODUCTION**

Plaintiff challenges three of Dr. Virmani's opinions: (1) filters "function to trap clots;" (2) "[s]mall clots are not concerning," while large clots "more likely are being caught in the filter on their way from the pelvic and leg veins;" and (3) "the Celect and Tulip[] are not inherently thrombogenic." *See* Expert Report of Renu Virmani, M.D. ("Virmani Report"), at 31-32, at Dkt. 8639-6. Plaintiff claims that these specific opinions should be excluded because they are, in a nutshell, unreliable. Plaintiff's Memorandum in Support of Motion to Exclude or Limit the Testimony of Renu Virmani, M.D. ("Plaintiff's Brief"), Dkt. 8639. As explained below,

Plaintiff's criticisms about Dr. Virmani's opinions lack merit, and the Court should deny her Motion in its entirety.

**II.   ARGUMENT**

In its application of the *Daubert* standard, the Seventh Circuit employs a three-step analysis: (1) the witness must be qualified as an expert by knowledge, skill, experience, training, or education; (2) the expert's reasoning or methodology underlying the testimony must be scientifically reliable; and (3) the testimony must assist the trier of fact to understand evidence or to determine a fact in issue. *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007).

Plaintiff purports to challenge Dr. Virmani's opinions on clot trapping and thrombogenicity under all three prongs of the *Daubert* standard.[1] However, her arguments are misplaced: they distort Dr. Virmani's robust qualifications and they misstate the facts upon which she bases her opinions. Plaintiff's unsound arguments are neither proper nor able to withstand scrutiny under the *Daubert* standard.

**A.   Dr. Virmani Is Qualified to Opine on Clot Trapping and Thrombogenicity.**

Plaintiff argues that, as a pathologist, Dr. Virmani should not be able to opine on the "hematological and clinical course for filter patients." Dkt. 8639, Plaintiff's Brief. Federal Rule of Evidence 702 dictates that an expert may be qualified by "knowledge, skill, experience, training, or education." While Dr. Virmani may not have been formally trained as a hematologist, her knowledge, skill, and experience qualify her to opine on both a filter's clot-trapping function and thrombogenicity (*i.e.*, tendency to produce coagulation). Indeed, the

---

[1] Though she claims that Dr. Virmani's opinions are not relevant—in other words, that they would not assist "the trier of fact in understanding the evidence or in determining a fact in issue," *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 924 (7th Cir. 2000)—Plaintiff does not address why this is the case. As such, the Cook Defendants have not addressed this claim in their response.

2

US.119214747.02

Seventh Circuit has decided that "a court should consider a proposed expert's *full range of practical experience* as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area," *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) (emphasis added), and Dr. Virmani's academic and practical experience with respect to the vascular system is unmatched.

Dr. Virmani is a world-renowned cardiovascular pathologist, who has devoted the last forty years of her career to furthering the understanding of human disease.[2] *See* Dkt. 8639-6, Virmani Report, at 1. To this aim, she founded a non-profit organization that "provides consultation, histology, and diagnostic services to promote discoveries that advance the diagnosis, treatment, and management of cardiovascular diseases," and this organization "possesses one of the largest and most comprehensive repositories of diseased human tissue" in the world. *Id.* As a board-certified physician in anatomic pathology, Dr. Virmani has performed countless autopsies throughout her career. *See* Deposition of Renu Virmani, M.D. (August 8, 2017) ("Virmani Dep."), at 18:15-25, Dkt. 8639-2. Although she has also spent a large portion of her career developing and performing animal studies on cardiovascular medical devices, she is not merely an "animal pathologist," as Plaintiff repeatedly represents in her Motion; she is also an expert on human anatomy and cardiovascular pathology (and, therefore, relatedly blood clotting and pulmonary embolism). *See generally,* Dkt. 8639-6, Virmani Report.

In her work to better understand how medical devices interact with the cardiovascular system, she has consulted with every major medical device manufacturer about vascular devices (*i.e.*, how they work and how they should be tested), including three manufacturers with respect

---

[2] Plaintiff inaccurately claims in her Motion that Dr. Virmani "has not worked with a patient in the entirety of her career." Dkt. 8639, Plaintiff's Brief. On the contrary, Dr. Virmani has performed countless autopsies throughout her career and regularly examines tissue from patients around the world. Moreover, the vast majority of her research has involved patients in a clinical setting. *See* Curriculum Vitae of Dr. Renu Virmani, ("Virmani CV") Dkt. 8639-6 thru 10.

to their vena cava filters. *Id.* at 1-2. Moreover, Dr. Virmani has authored more than 700 publications in peer-reviewed journals and delivered more than 800 presentations globally. *Id.* at 1. She is an editorial review board member for many peer-reviewed journals, including *Atherosclerosis, Thrombosis and Vascular Biology*. Dkt. 8639-7, Virmani CV at 10. Indeed, a cursory glance of her curriculum vitae indicates that she has done extensive research on thrombosis, which is *clotting of the blood* in the circulatory system. Dkt. 8639-6 thru 10, Virmani CV.

Dr. Virmani further confirmed in her deposition that she knows about clotting as it relates to vascular devices, and that she has presented and written on coagulation (also known as *clotting*) many times over throughout her career. Dkt. 8639-2, Virmani Dep. at 64:3-21. This is all to say that the majority of Dr. Virmani's work over the last forty years has involved understanding clotting and the interaction between medical devices and the vascular system—topics that provide particular insight to the opinions Plaintiff wants to exclude.

Further, with respect to the three opinions at issue, Dr. Virmani explained in her deposition that they are more related to *healing* than hematology, and healing is certainly in her wheelhouse. *See* Dkt. 8639-3, Virmani Dep., 200:9-201:9. Even the clot-trapping function of filters relates to healing, and this is something with which Dr. Virmani has a lot of experience:

> Q: So, these are that the filter functions to trap clots is an opinion given as a pathologist?
>
> A: Absolutely. If you have a clot, how does it heal? I've seen filters with clots on them and that they – **the clots organize over time and they shrink in size. I've seen all that.**
>
> Q: Based on all of the pathological specimens you've reviewed in this case, what among those gives you any basis to assert whether Cook filters function to trap clots?

4

> A:   This is the studies you can do with this. You can do trapping of – you know, **I've done filter work, a lot of filter work for carotid, for aortic valve, for example, and you can trap all that clot, actually, in the filter.**

*Id.* at 201:4-18 (emphasis added).

Despite her pertinent experience, Plaintiff discusses at length the fact that Dr. Virmani is not—and has never purported to be—an expert in clot-trapping or hematology. Indeed, the Cook Defendants agree that Dr. Virmani would never attempt to opine on clot-trapping or efficacy studies that she has not reviewed, nor would she attempt to diagnose or treat living patients with blood disorders. However, her extensive experience objectively qualifies Dr. Virmani to opine on the function of medical devices in the vascular system, how animal studies support their intended function, as well as their thrombogenic potential. Regardless of whether these opinions might also fall in the realm of hematology, "[t]he fact that an expert may not be a specialist in the field that concerns [her] opinion typically goes to the weight to be placed on that opinion, not its admissibility." *Hall v. Flannery*, 840 F.3d 922, 929 (7th Cir. 2016). Given her extensive experience, Plaintiff's criticisms go at most to weight, not admissibility.

**B.   Dr. Virmani's Opinions Are Reliable, as They Were Formed Through Her Experience and Research as a Pathologist, Her Observations of Pathology Slides, and Correlations to the Published Literature.**

Plaintiff argues that, even if Dr. Virmani were qualified to offer her opinions on clot trapping and thrombogenicity, her opinions are unreliable. Plaintiff makes clear that she does not think that Dr. Virmani—as an "animal pathologist"—should be able to opine on these topics because she did not properly elucidate her methodology or cite any "competent evidence supporting her opinions." Dkt. 8639, Plaintiff's Brief. Again, Plaintiff's arguments fall short.

Plaintiff specifically claims that "[t]his is not an instance where a pathologist has reviewed pathological specimens and correlates her conclusions to the clinical literature." Dkt.

US.119214747.02

8639, Plaintiff's Brief. In support of this proposition, Plaintiff cites *Wise v. C.R. Bard, Inc.*, 2015 WL 570070 at *4 (S.D. W. Va. Feb. 11, 2015), in which a pathologist's testimony was permitted because he "reviewed pathological slides, compared his observations to published medical literature, and provided diagnostic interpretations of what he saw." Contrary to Plaintiff's claims, that is *exactly* what Dr. Virmani did here. She reviewed slides from multiple animal studies that Cook conducted on its IVC filters, performed a systematic review of the literature published on IVC filters in humans and in animals, and provided detailed interpretations of what she saw in a 36-page report replete with 13 figures specifically demonstrating the same. *See generally,* Dkt. 8639-6, Virmani Report.

When the plaintiff in *Wise* argued—as Plaintiff does here—that the defendant's pathologist was unreliable because he did not cite any peer-reviewed literature in reaching his opinions, the court looked to the pathologist's report and accompanying materials, determining that "he relied on dozens of studies and articles in reaching his opinions" *Wise,* 2015 WL 570070 at *4. The same can be said here, as Dr. Virmani performed a systematic literature review of all articles related to vena cava filters in both humans and animal studies, and specifically referenced nearly three dozen of these articles as footnotes or internal citations in her 36-page report. *See* Dkt. 8639-6, Virmani Report; Dkt. 8639-2, Virmani Dep., 15:8-12. Moreover, Dr. Virmani coupled the raw data she reviewed in this case (histologic slides from animal studies) with what she learned from the published literature on vena cava filters, and, like the pathologist in *Wise*, relied on her experience as a pathologist in forming her opinions.[3]

---

[3] For example, with respect to her opinion that "[s]mall clots are not concerning," while large clots "more likely are being caught in the filter on their way from the pelvic and leg veins," Dkt. 8639-6, Virmani Report, at 31-32, Dr. Virmani stated in her deposition that "when you do autopsies, you often see patients who are dying of pulmonary emboli. They're usually large clots. And those that get small clots, they go to smaller branches and usually don't result in infarcts or sudden death or anything. So, unless over time a huge number of small clots continue to be given off, then it's a different story because you could get pulmonary hypertension from those." Dkt. 8639-3, Virmani Dep., 206:24-207:10.

6

For example, with respect to her opinion about the inherent thrombogenicity of Cook's filters (or how likely it would be for a Cook filter to *cause* a clot), Dr. Virmani explained in her deposition that she based her opinion on her review of animal study slides, and what she then saw in the published literature about Cook filters in humans. She stated "[w]e didn't see any clot formation that occurred [in Cook's long-term animal studies], even after 180 days, and beyond 365 days. So, if [the filters] were still thrombogenic, we should have seen some." Dkt. 8639-3, Virmani Dep., 204:5-8. Based on this data, as well as her knowledge of animal studies she performed with other filters, and her review of the relevant medical literature,[4] Dr. Virmani was able to conclude that "the Celect and Tulip[] are not inherently thrombogenic." Dkt. 8639-6, Virmani Report, at 31-32. Reviewing pathology slides, and relating it to published literature, is exactly what the court in *Wise* found to be a reliable methodology, and the same result should apply here. *Wise,* 2015 WL 570070 at *4; *see also Eve v. Sandoz Pharm. Corp.*, IP 98-1429-C-Y/S, 2001 U.S. Dist. LEXIS 4531, *72-74 (S.D. Ind. March 7, 2001) (finding animal study evidence to be "scientifically reliable" under *Daubert* because there were "good grounds" to extrapolate from animals to humans, such as published studies in peer-reviewed journals).

Dr. Virmani's review of countless pathology slides from Cook's animal studies, an exhaustive search of published medical literature, and her own background with performing animal testing of IVC filters, and work diagnosing anomalies in human cardiovascular tissue, both during life and at autopsy, inform Dr. Virmani's opinions on filter clot-trapping and thrombogenicity, and should therefore deem them admissible at trial.

## CONCLUSION

---

[4] Indeed, the medical literature on which Dr. Virmani relies supports the efficacy of filters. *See*, *e.g.*, Ex. A, Doody et al. JMIRO 2009;53:64-68, at 67 ("The results of our study support the efficacy of the Cook Celect filter . . . .").

For the reasons stated above, the Cook Defendants urge the Court to deny Plaintiff's Motion to Exclude or Limit the Expert Testimony of Renu Virmani, M.D., and to allow the opinions described in her expert report in the upcoming trial.

Respectfully submitted,

Dated: September 14, 2018

*/s/ Andrea Roberts Pierson*
Andrea Roberts Pierson (# 18435-49)
J. Joseph Tanner (# 11856-49)
Nicholas B. Alford (# 31867-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-Mail:  joe.tanner@faegrebd.com
E-Mail:  nicholas.alford@faegrebd.com

*Counsel for the Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2018, a copy of the foregoing was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Counsel for Defendants will serve any non-CM/ECF registered parties.

*/s/ Andrea Roberts Pierson*