# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION _____ | ) ) ) ) ) ) | 1:14-ml-02570-RLY-TAB MDL No. 2570 |
| This Document Relates to: Elizabeth Jane Hill, 1:14-cv-6016-RLY-TAB _____ | ) ) ) ) ) | |

**ENTRY ON THE COOK DEFENDANTS' MOTION TO EXCLUDE EXPERT OPINIONS OF DR. ROBERT McMEEKING**

Plaintiff, Elizabeth Jane Hill, offers the testimony of Dr. Robert McMeeking, who is a professor of mechanical engineering and materials science at the University of California, Santa Barbara ("UCSB"). He calculated the loads and stresses on the primary legs of the Cook Defendants' IVC filters and used that information to assess the likelihood of tilting, vena cava perforation and fatigue failure of the filter. In formulating his opinion, he reviewed Cook's internal documents, including engineering drawings and FEA analysis (finite element analysis), and performed his own theoretical mathematical analysis. He concludes that the Cook Defendants' IVC filters, including the Celect IVC filter at issue in this case, have deficient designs that lead to instability, tilting, perforation of the IVC, and fatigue failure. (*See generally* Expert Report of Dr. Robert McMeeking). The Cook Defendants move to exclude his testimony for three reasons: (1)

1

he is not qualified to give an opinion on IVC filters, (2) his opinions are unreliable, and (3) his opinions will not assist the jury in determining a fact in issue. For the reasons explained below, the court **DENIES** the Motion.

I.   **Standard for Expert Testimony**

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence and the principles announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Specifically, (1) the expert must be qualified by knowledge, skill, experience, training, or education; (2) the proposed expert testimony must assist the trier of fact in determining a relevant fact at issue in the case; (3) the expert's testimony must be based on sufficient facts or data and reliable principles and methods; and (4) the expert must have reliably applied the principles and methods to the facts of the case. *Lees v. Carthage College*, 714 F.3d 516, 521-22 (7th Cir. 2013) (citations omitted). *See also Lapsley v. Xtek, Inc.*, 689 F.3d 802, 809 (7th Cir. 2012) ("Rule 702 requires that expert testimony be relevant, reliable, and have a factual basis—requirements that must be met before the jury is allowed to hear and perhaps be persuaded by the expert testimony."). As the proponent of the expert testimony at issue, the plaintiff has the burden of demonstrating the expert's admissibility. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

II.   **Discussion**

The Cook Defendants first argue Dr. McMeeking is not qualified to testify that their IVC filters are defective because he has never given an opinion on IVC filters outside of this litigation. The court does not agree. Dr. McMeeking is a Tony Evans

2

Professor of Structural Materials and Distinguished Professor of Mechanical Engineering at the UCSB. (Expert Report at 1). For over forty-five years, Dr. McMeeking has "performed extensive research into problems of mechanical failure in a wide range of structural components, including biomedical implants." (*Id.*). His particular expertise is the analysis of mechanical, structural, and materials behavior and their implications for fracture, fatigue, tissue penetration, and implant stability. (*Id.*).

Dr. McMeeking has testified both formally and informally before the U.S. Food and Drug Administration on his engineering assessments of medical implants, including issues pertaining to *in vivo* loading, stress/strain analysis, fatigue, fracture, and endurance. (*Id.* at 2; Deposition of Dr. Robert McMeeking at 298). Over the past 31 years, he has served as a paid outside consultant to approximately ten different leading medical device companies. (McMeeking Dep. at 21-22, 301). In this role, he has provided analyses and advice on the functionality, design, reliability and manufacturing of a broad range of devices, including heart valves, stents, and other biomedical implants. (McMeeking Report at 2). As Cook's expert, Dr. Robertson testified, the design of heart valves and stents, like that of IVC filters, requires consideration of the risks of migration, fatigue, and perforation. (Deposition of Dr. Scott Robertson at 42, 44). In fact, according to Dr. Robertson, stents and heart valves "are some of the most complicated systems out there to design." (*Id.* at 425-26). Accordingly, the court finds Dr. McMeeking is qualified to give an opinion regarding the design of the Celect IVC filter.

Second, the Cook Defendants challenge the reliability of Dr. McMeeking's opinions. Factors the court may consider in determining the reliability of an expert's

3

opinion include: whether the expert's technique or theory has been tested; whether technique or theory has been subject to peer review and publication; the known or potential rate of error of the technique or theory when applied; the existence and maintenance of standards and controls; and whether the technique or theory has been generally accepted in the scientific community. *Daubert*, 509 U.S. at 593-94. The test of reliability is a flexible one; therefore, "no single factor is either required in the analysis or dispositive as to its outcome." *Smith*, 215 F.3d at 719. Here, the Cook Defendants challenge Dr. McMeeking's opinions because they have never been published or subjected to peer review.

In formulating his opinion, Dr. McMeeking relied on his "engineering and scientific knowledge of design and analysis of engineering components to both analyze and assess the various models of Cook IVC filters." (Expert Report at 5). The quantitative methods he used, carried out analytically by geometric, algebraic, and calculus methodologies, were informed by engineering drawings of Cook IVC filters and by information regarding the properties of the material of which they are composed. (*Id.*). This is the same method he teaches his engineering students and employs when testifying before the FDA and consulting for medical device companies. (*Id.*; McMeeking Dep. at 300-303). The fact that his opinions have not been subject to peer review or publication "does not cast doubt on the reliability of his analytical technique" because his opinions are based on well-known engineering principles and mathematical calculations. *See Smith v. Ford Motor Co.*, 215 F.3d 713, 720 (7th Cir. 2000) (noting if an engineer "was merely applying well-established engineering techniques to the

particular materials at issue in [the] case, then his failure to submit those techniques to peer review establishes nothing about their reliability").

The Cook Defendants also criticize Dr. McMeeking because he performed his mathematical calculations by hand rather than using a computer model (*i.e.*, FEA or finite element analysis). Dr. McMeeking testified that "there's no difference between the results you get by computer and the results you get on a piece of paper." (McMeeking Dep. at 90). "In other words, a finite element calculation with the extended analysis would give you essentially, well, to within what we call numerical error[,] the same results." (*Id.* at 93). Even the Cook Defendants' expert, Dr. Robertson, acknowledged that "[a]nalytical mathematical calculations are the fundamentals that are behind finite element modeling." (Deposition of Dr. Scott Robertson at 75-76). Moreover, as part of his methodology, Dr. McMeeking reviewed, analyzed, and relied upon the computer finite element modeling performed both by Cook's consultants and by Dr. John LaDisa. (Expert Report at 11, 23-24; McMeeking Dep. at 86-87, 89-93, 116, 283-86). Dr. McMeeking's choice to perform his own mathematical calculations and to review the FEA work of others is permissible under *Daubert*. *Baugh v. Cuprum S.A. de C.V.*, 845 F.3d 838, 843-45 (7th Cir. 2017) (holding mechanical engineer's methodology on alternative design opinion was reliable and admissible where he used "centuries-old mathematics principles").

Lastly, the Cook Defendants argue Dr. McMeeking's opinions will not be helpful to the jury for two reasons: (1) his opinions rest on counterfactual assumptions and (2) his theories are inconsistent with what actually happened in this case.

5

Case 1:14-ml-02570-RLY-TAB   Document 9186-1   Filed 09/14/18   Page 7 of 8 PageID #:
59902
Case 1:14-ml-02570-RLY-TAB   Document 6917   Filed 10/19/17   Page 6 of 7 PageID #: 38312

In his calculations, Dr. McMeeking assumed that the wall of the vena cava is rigid (*Id.* at 96). Dr. McMeeking explained that even though the wall of the IVC is not rigid, "you have to think in terms of interaction with the vena cava with whatever is around the vena cava." (*Id.*). He continued, "I did not assume that the vena cava wall is rigid. I assumed the vena cava and the tissues around the vena cava are rigid and constrain the way that the wall of the vena cava can respond to the presence of the filter. And I did my calculations accordingly." (*Id.* at 97).

He also assumed that the interior of the IVC is a frictionless surface. (*Id.* at 98-99, 286-87). Dr. McMeeking explained that he assumed friction-free conditions between the leg of the filter and the wall of the vena cava because "it is my assessment that the contact can be lubricated by the presence of blood lying between the leg and the wall vena cava, especially shortly after implantation, before the blood has time to get out of the way between the contact point of the leg to the vena cava." (*Id*. at 98).

The court finds the assumptions made by Dr. McMeeking are appropriate for purposes of his mathematical analysis. Any disagreement with Dr. McMeeking's assumptions is a matter for cross-examination. *Manpower, Inc. v. Insurance Co. of Pennsylvania*, 732 F.3d 796, 808 (7th Cir. 2013) ("These precedents teach that arguments about how the selection of data inputs affect the merits of the conclusions produced by an accepted methodology should normally be left to the jury.").

With respect to Dr. McMeeking's theoretical analysis, the court finds his opinion is not inconsistent with the facts of the case. Indeed, he testified that he did not perform calculations using inputs from Plaintiff. (McMeeking Dep. at 205-07, 306-08). Instead,

he focused on the worst-case scenarios with respect to many of the calculations in his report, just as he does in his consulting work with medical device companies. (McMeeking Dep. at 304). He explained that worst-case conditions are relevant "[b]ecause one must know the worst-case conditions so that they can be taken into account when considering what is an appropriate design for a large population of patients who are going to receive the implant." (*Id.* at 305). Therefore, the Cook Defendants' argument is rejected.

### III. Conclusion

The court finds Dr. McMeeking's opinions are relevant to Plaintiff's strict liability design defect claim and therefore will assist the jury in rendering a decision in this case. The court further finds Dr. McMeeking's opinions are based on a reliable methodology. Therefore, the Cook Defendants' Motion to Exclude Expert Opinions of Dr. Robert McMeeking (Filing No. 5678) is **DENIED**.

**SO ORDERED** this 19th day of October 2017.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.