# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

This Document Relates to:
All Actions

### DECLARATION OF MARK BREEDLOVE

I, Mark Breedlove, do declare and state the following:

1. I am the Vice President and Global Business Unit Leader of Peripheral Intervention at Cook Medical LLC ("Cook"). I have been an employee of Cook since June 13, 1994.

2. All statements in this Declaration are based on my personal knowledge and understanding, based on information that I have acquired in my experience working at Cook, or based on information that I obtained through review of Cook records or conversations with other Cook personnel who have personal knowledge.

3. Cook is a family-owned business that manufactures, markets and distributes a wide variety of medical device products, including but not limited to Inferior Vena Cava ("IVC") filters.

4. Cook operates within a highly competitive medical device industry. In the United States and the world, there are numerous other companies that manufacture competing medical devices in the same clinical areas as Cook, including but not limited to competing IVC filters.

US.110755811.02

5. In order to succeed in this competitive market, Cook continuously strives to optimize its product line and business operations. As part of this effort, Cook invests substantial time, money and resources into both planning and execution of, among other things, its research and development, regulatory affairs, sales and marketing, public relations, and post-market product analysis practices. Cook considers the conduct and the results of these efforts to be proprietary and valuable to the organization.

6. **Research and Development.** In order to succeed in the medical device industry, and in order to provide physicians with the best technology available, Cook invests substantial resources into research and development, including with regard to Cook's IVC filter technology. Cook offers a competitive line of products, but is continuously looking for ways to improve upon those products to allow better options to physicians, and to differentiate its products from competitor organizations when it sees an opportunity. Cook maintains confidentiality over its research and development ideas, efforts, and results, and considers such information to be proprietary to the company.

7. If information pertaining Cook's research and development measures is made public, Cook's competitors would be able to access and benefit from Cook's internal work product, without having to make the investment that Cook was required to make, and the value of the research and development for Cook would be diminished. This would likely result in competitive harm to the organization, both domestically and globally.

8. **Post-Market Product Analysis.** In order to ensure its products are performing well in the field for physicians and patients, Cook undertakes substantial efforts to evaluate the performance of its medical devices (including IVC filters), as well as other competitor devices in the industry, post-market. This includes efforts to, among other things, evaluate adverse event

reports, both quantitatively and qualitatively; review and internally evaluate peer-reviewed literature about Cook and/or competitor products; to perform testing on characteristics of Cook and/or competitor products; and, when there are reported failures, to study and understand how and why Cook and/or competitor products allegedly failed. Such efforts provide valuable information that Cook relies upon in other business operations, including, for example, research and development, sales and marketing, and regulatory affairs.

9. If information pertaining to Cook's post-market product analyses (of Cook and/or competitor products) is publicly disclosed, Cook's competitors would be able to access and benefit from Cook's internal work product, without having to make the investment that Cook was required to make, and the value of Cook's efforts would be diminished. It would also reveal Cook's internal assessment of its own products, including characteristics of its products that Cook may want to improve upon, which, in the hands of Cook's competitors, could be exploited to Cook's disadvantage in the industry and among Cook's customer base. This would cause commercial harm to Cook, and discourage Cook employees (as well as the employees of other organizations in the medical device industry) from engaging in and/or memorializing such analyses, which could have a negative impact on product development and safety.

10. **Regulatory Affairs.** Cook's manufacture, marketing, and distribution of medical devices (including IVC filters) is regulated by various regulatory bodies around the world, including the Food and Drug Administration ("FDA") in the United States, and Cook is required to comply and demonstrate compliance with regulations and requirements imposed by those regulatory bodies. Cook invests substantial time and resources in developing regulatory strategies that ensure regulatory compliance in what Cook deems to be the best and most efficient ways possible. Cook maintains confidentiality with regard to its interactions with the

agencies that regulate Cook, including the FDA, as well as the methods and strategies it employs in planning for regulatory submissions, responding to regulatory inquiries, and other aspects of regulatory affairs, because such information is the product of great investment and provides commercial and competitive benefits for Cook.

11. If information pertaining to Cook's confidential regulatory agency interactions, regulatory compliance methods and strategies, or other confidential regulatory affairs practices is publicly disclosed, Cook's competitors would be able to access, and potentially adopt and benefit from Cook's methods and strategies, without having to make the investment that Cook was required to make, resulting in an undeserved benefit to Cook's competitors, to Cook's detriment. It could also reveal Cook's product development strategies, and internal business philosophies, goals and objectives, which, if divulged to competitors, would likely lead to a competitive disadvantage for Cook.

12. **Complaint Handling.** Cook is subject to adverse event reporting requirements by FDA and other regulatory agencies worldwide. To comply with these requirements in the best and most efficient way possible, Cook has developed complaint handling protocols and processes that govern, among other things, the manner in which Cook is to respond to complaints, the types of information Cook evaluates in response to complaints, and the concerns and factors that drive Cook's decision-making in the complaint handling process. Cook maintains confidentiality with regard to its complaint handling efforts, as well as the underlying processes and protocols for such efforts, because this information is the product of internal investment and the rigor and efficiency of Cook's practices contribute to Cook's competitive success.

13. If information pertaining to Cook's complaint handling processes and protocols, or examples of Cook's execution of such processes and protocols, were publicly disclosed, Cook's competitors would be able to access, and potentially adopt and benefit from Cook's methods, without having to make the investment that Cook was required to make, resulting in an undeserved benefit and a potential competitive disadvantage to Cook. Public disclosure of specific complaint analyses may also reveal protected health information of third parties.

14. **Sales, Marketing, and Public Relations.** The medical device industry, including the IVC Filter market in particular, is highly competitive. Many companies offer products that compete directly with Cook's product line. In order to succeed in this environment, Cook commits substantial time, internal resources, and money to optimize its sales and marketing techniques, and to maintain positive public perceptions through public relations. For example, Cook routinely conducts analyses of the IVC Filter market and how its products fit into that market; compares the performance of its product line to that of competitor products; and develops key messaging for use with potential customers, and the public, to promote the organization, the product line, or both. While the final product of Cook's efforts may ultimately be make public, Cook's internal deliberations, drafts, ideas, and otherwise non-final product are kept in confidence, and are considered proprietary to Cook.

15. If information pertaining to Cook's sales, marketing, and/or public relations practices were publicly disclosed, Cook's competitors would be able to access, and potentially adopt and benefit from Cook's internal methods and strategies, and/or the product of Cook's efforts, without having to make the investment that Cook was required to make. For example, it may reveal the fruits of Cook's internal research and evaluation of the market, and of both Cook and competitor products, which Cook considers proprietary and sensitive, and which exist only

by virtue of Cook's investment. Competitors could potentially adopt this information for their own use, or else use it against Cook in the marketplace. Public disclosure may also reveal sales, marketing and public relations techniques that were considered but not adopted, potentially allowing competitors to obtain and misuse such information in the market to Cook's detriment. It may also reveal internal product development strategies, and internal business philosophies, goals and objectives, which, if divulged to competitors, would likely lead to other competitive disadvantages for Cook.

16. It is my understanding based on information provided to me by Cook marketing professionals that the journal advertisement labeled CookMDL2570_048563 is a draft. Cook's marketing staff have found no record of the advertisement being placed and no copy archived in Cook's digital asset management system.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: May 1, 2017

Mark Breedlove