**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND                    Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION                     MDL No. 2570

_____

This Document Relates to:

    *Brand v. Cook Medical, Inc. et al.,*
    Case No. 1:14-cv-06018-RLY-TAB

_____

**THE COOK DEFENDANTS' RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE OR LIMIT ARGUMENT AND**
**EVIDENCE REGARDING THE SURGEON GENERAL'S CALL TO ACTION**

      In 2008, the United States Surgeon General's office issued a publication entitled "The

Surgeon General's Call to Action to Prevent Deep Vein Thrombosis and Pulmonary Embolism,"

a 42-page publication that assembled and summarized a broad body of information about deep-

vein thrombosis (DVT) and pulmonary embolism (PE). The Call to Action described DVT and

PE as major public-health problems, and discussed the role of IVC filters in preventing PE. The

Surgeon General stated that IVC filters "have been used with success in a variety of patients."

      In a case where one of Plaintiff's main arguments will be that the risks of IVC filters

outweigh their benefits—indeed, that there are <u>no</u> benefits to IVC filters—evidence that the

Surgeon General of the United States[1] stated that IVC filters "have been used with success in a

variety of patients" and are a viable "preventive therapy option" is relevant. It certainly makes a

fact at issue (i.e., whether IVC filters provide <u>any</u> benefit) at least a bit more probable than it

would be without that evidence. Thus, it is relevant under Rules 401 and 402.

_____

[1] Technically, the Call to Action was issued by an *acting* Surgeon General, but that is an irrelevant
distinction that Cook will disregard going forward.

US.119293685.04

Plaintiff complains that admission of the Surgeon General's Call to Action would cause her prejudice. If that is so, it is only because the evidence is *persuasive*, not because it is *unfairly* prejudicial. All persuasive evidence is prejudicial to the other side's case; that is the whole point of introducing evidence. And the U.S. Surgeon General's publication is not barred by the hearsay rules for two reasons: 1) it is a public record under Rule 803(8), and 2) it is offered at least in part for its effect on its audience, and thus is not hearsay in the first place under Rule 801(c)(2).

The Call to Action is admissible. The Court should deny Plaintiff's motion to exclude it.

## **BACKGROUND**

In 2008, the Office of the United States Surgeon General issued "The Surgeon General's Call to Action to Prevent Deep Vein Thrombosis and Pulmonary Embolism." Ex. A, The Surgeon General's Call to Action ("Call to Action"), 2000, U.S. Dept. of Health and Human Services. In a nutshell, the Call to Action assembles and summarizes a broad body of information about the nature and extent of DVT and PE, and describes them as major public-health problems. *See generally id.* The Call to Action details the current methods of treating and preventing DVT and PE and the gaps in those methods, and issues a "call to action" to communities, the health care system, governments, and policymakers to work together in partnership to address the problem and reduce the public health risk. *Id.* The Surgeon General states in his introduction:

> This first "Call to Action to Prevent Deep Vein Thrombosis (DVT) and Pulmonary Embolism (PE)," provides vital information on critical health problems that cause enormous health consequences and numerous deaths in our country. Estimates suggest that at least 350,000, and as many as 600,000, Americans each year contract DVT/PE, and at least 100,000 deaths are thought to be related to these diseases each year. Many of those who survive have complications that have a serious and negative impact on the quality of their lives. Without the joint efforts of all stakeholders, including clinicians and families, the problem will only worsen as the population ages.

*Id.* at 3. This call to action expressly mentions IVC filters as a "preventative therapy" for PEs.

For example, under the heading "Reducing the Risk for DVT/ PE," the Call to Action states:

> Another preventive therapy option is the use of a permanent or retrievable
> implantable filter in the vena cava. These filters act like miniature umbrellas with
> holes that can trap blood clots—and thus prevent PE—without stopping the flow
> of blood. They have been used with success in a variety of patients, including
> those whose anticoagulation therapy must be stopped due to the need for urgent
> surgery, patients undergoing bariatric surgery, and patients who suffer multiple
> injuries from a motor vehicle accident. It is important to note, however, that these
> filters do not prevent DVT. Rather, they are designed to help prevent PE in those
> who are at high risk of DVT.

*Id.* at 19. And in its final recommendations, the report proposes that doctors "[i]nvestigate the

role of inferior vena caval (IVC) filters as a primary means of preventing PE, and research the

risks and benefits related to permanent versus retrievable placement of IVC filters." *Id.* at 31.

## ARGUMENT

The Call to Action is relevant under Rule 401 and 402, not unduly prejudicial under Rule

403, and not barred by the hearsay rules. Thus, it is admissible, and the Court should deny

Plaintiff's motion to exclude it.

## I.  The Surgeon General's Call to Action is Relevant to Plaintiff's Claims

Under Georgia law, the jury will apply a risk-benefit analysis to determine whether the

Celect IVC filter is defective in its design.  *See Banks v. ICI Americas, Inc.*, 450 S.E.2d 671, 675

(Ga. 1994). Plaintiff will argue that the Celect filter has <u>no</u> benefit, such that <u>any</u> risk renders it

defective. *See* Dkt. 8869 at 9. As a fallback, Plaintiff will argue that the risks outweigh the

benefits. Thus, the existence and extent of the filter's benefits are within the core of this case.

The Call to Action is directly relevant to the benefit side of the risk-benefit analysis. Far

from being a "distraction," as Plaintiff suggests, the Call to Action states that the PEs that the

Celect filter was designed to reduce are a serious problem that affects hundreds of thousands of

Americans each year and killed at least 100,000 patients at the time of publication, showing the

scope of the PE problem that the Celect filter was designed to address.  Ex. A at 3.  The Call to Action also discusses the inadequacy of the then-current state of medicine to address the PE problem and the need for additional study and improved solutions.  Ex. A at 5.  The report calls for actions to reduce the risk of these diseases, and notes that IVC filters are one option for the prevention of pulmonary emboli.  Ex. A at 19.  And the character of the publication—a Call to Action by the Surgeon General—supports the inference that the publication and its contents were publicized and well known in the medical community and among medical-device manufacturers.

It is hard to seriously argue that a publication of the United States Government that demonstrates the need for treatments such as IVC filters to reduce PEs, the limited number of alternative treatments, and the success of the filters in reducing PEs is "irrelevant" to the question whether filters have benefits and whether those benefits outweigh filters' risks.  If a jury were to agree with the Surgeon General's assessment in the Call to Action, that would make it at least a little more probable that the jury would reject Plaintiff's argument that Celect has no benefits, and decide that the benefits outweigh the risks. And that is the very definition of relevance under Rule 401. *See, e.g., Jackson v. Virginia*, 443 U.S. 307, 320 (1979) (evidence is relevant if it tends to make any proposition "slightly more probable than it would be without the evidence").

The Call to Action is also relevant to Plaintiff's failure-to-warn claims because it demonstrates the medical community's knowledge and understanding of both PE and the utility of IVC filters in reducing PE. The state of medical knowledge bears on both whether a manufacturer has a duty to warn and whether the absence of a warning caused a particular injury. *See, e.g., Bishop v. Farhat*, 489 S.E.2d 323, 328 (Ga. Ct. App. 1997) (general state of medical knowledge bears on whether manufacturer has duty to warn of particular risk); *see also Dietz v.*

4

*Smithkline Beecham Corp.*, 598 F.3d 812, 816 (11th Cir. 2010) (affirming summary judgment under Georgia law where doctor knew of risks at issue and nevertheless went ahead with prescription); *Wheat v. Sofamor, S.N.C.*, 46 F. Supp. 2d 1351, 1363 (N.D. Ga. 1999) (collecting similar cases under Georgia law). The existence and broad distribution of the information in the Call to Action thus bears on the knowledge available to doctors in treating patients and in making their own risk-benefit analyses in treatment decisions. The evidence makes it at least slightly more probable that a jury would find that Plaintiff's implanting doctor knew of risks with the filter when he used it, so the evidence is relevant.

The Call to Action is also relevant to Plaintiff's negligence claims. The Call to Action's highlighting of the seriousness of the threat of DVTs and PEs and the urgent need for treatments to reduce their incidence bears directly on whether Cook exercised "reasonable care" under the circumstances in designing the Celect and drafting of the Celect IFU

Judge David Campbell in the *In re Bard IVC Filter Product Liability Litigation* MDL rejected plaintiffs' motion similar to exclude the Surgeon General's Call to Action, noting that the Call to Action was relevant to plaintiffs' defective-design claims and negligence claims, as well as the risk-benefit analysis:[2]

> Plaintiffs contend that the [Call to Action] is irrelevant and confusing, and any probative value is substantially outweighed by the danger of unfair prejudice [and] that the report constitutes inadmissible hearsay. ... Defendants argue that the report is admissible under the public records hearsay exception, is relevant, not prejudicial, and will not confuse the jury. … The Court agrees with Defendants. **The Call to Action report is relevant to the design defect and negligence claims.** With respect to the design defect claim, the jury must consider not only whether there was a reasonable alternative design for the Bard filter, but also whether Bard's failure to adopt that design rendered the filter "not reasonably safe." … The jury thus will be required to make a reasonableness determination with respect to the filter's safety. Similarly, in deciding Plaintiff's negligence

---

[2] The *Hyde* case in the Bard MDL was governed by Wisconsin law, which, like Georgia law, employs a risk-benefit analysis for design-defect claims. See *In re Bard IVC Filter Product Liability Litigation (Lisa Hyde)*, No. MDL 15-02641-PHX-DGC, Dkt. 10075 at 5 n.3 (D. Ariz. Sept. 7, 2018).

claim, the jury will be required to decide whether Defendants acted reasonably in designing and releasing the filter. In making this determination, the jury may employ a risk-benefit analysis. * * * **The Call to Action report is relevant to the risk-benefit analysis because it explains the benefits of IVC filters.** It notes that deep vein thrombosis and pulmonary emboli are major public health problems, contributing to at least 100,000 deaths per year. * * * The report calls for actions to reduce the risk of these diseases, and notes that IVC filters are one option for the prevention of pulmonary emboli. … The report plainly is probative of whether the benefits of Bard filters, when weighed against their risks, render Bard's actions unreasonable or the filter "not reasonably safe."

*In re Bard IVC Filters Prod. Liab. Litig.,* No. CV-16-00893-PHX-DGC, 2018 WL 4279833, at

\*4-\*5 (D. Ariz. Sept. 7, 2018) (emphasis added, record citations omitted).

Because the Call to Action is relevant, it is admissible under Rule 401 and 402, so the Court should deny Plaintiff's motion to exclude it as irrelevant.

## II.   The Surgeon General's Call to Action Will Not Unfairly Prejudice Plaintiff

Plaintiff asserts that Call to Action will mislead the jury and unfairly prejudice her, so it should be excluded under Rule 403.  She claims that Cook's strategy in the *Hill* trial "was both to tell the jury that Cook acted at the direction of the Surgeon General *and* to tell the jury that the Surgeon General thinks that what Cook is selling is necessary and traps blood clots."  Dkt. 8869 at 4 (emphasis by Plaintiff).  She argues that if the Court admits the evidence, "the jury will be confused and misled into believing that the federal government in some way sides with Cook," and think that "the United States Surgeon General somehow compelled or condoned actions of consequence here." *Id.* at 1 & 2.

But Plaintiff is simply wrong about what Cook did in the *Hill* trial and what it will do in this case.  Cook did nothing in *Hill* to represent or even imply that the Call to Action meant that the federal government approved of Cook's actions or its products. A review of Plaintiff's quotation from Cook's opening in *Hill* (Dkt. 8869 at 3-4) reveals that Cook's discussion of the Call to Action, while of course emphasizing the elements favorable to Cook, was fair, factual,

US.119293685.04

and not at all inflammatory, and never claimed that the Surgeon General had blessed Cook's products. *Ad hominem* arguments and use of loaded terms to describe one's opponent are not appropriate (as one of Plaintiff's attorneys himself recently told the Court), and more importantly do not change what actually happened in *Hill*. And Cook has no plans to make such arguments or insinuations in this case either.

Again, Judge Campbell in the *In re Bard IVC Filters Prod. Liab. Litig.* MDL addressed and flatly rejected a nearly identical argument raised by plaintiffs there, finding the argument unsupported by the record:

> The record does not support Plaintiffs' assertion that Defendants argued during the first two bellwether trials that "Bard acted at the direction of the Surgeon General" and "the Surgeon General considers Bard's IVC filters necessary" to treat pulmonary emboli. Doc. 12097 at 2. If Plaintiffs believe that Defendants are improperly implying the imprimatur of the Surgeon General, they may object at trial. *See id.* But the Court cannot conclude that admission of the Call to Action report will confuse the jury or unfairly prejudice Plaintiffs.

*In re Bard IVC Filters Prod. Liab. Litig.*, No. CV-16-00893-PHX-DGC, 2018 WL 4279833, at *5 (D. Ariz. Sept. 7, 2018). This Court should rule likewise.

## III.    The Hearsay Rules Do Not Bar the Surgeon General's Call to Action.

Plaintiff's final argument is that the Call to Action is inadmissible hearsay. Dkt. 8869 at 8-9. That is wrong for two reasons: 1) even if it were hearsay, it falls within the public-records exception of Rule 803(8), and 2) it is not hearsay in the first place for most of the purposes for which Cook will offer it.

### A.    The Call to Action is a public record under Rule 803(8).

Even assuming for the moment that the Call to Action were hearsay, it is admissible because it falls within the public-records exception to the hearsay rule. Rule 803(8) provides:

US.119293685.04

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
>     ***
>
>  (8) Public Records. A record or statement of a public office if:
>
>     (A) it sets out:
>
>         (i) the office's activities;
>
>         (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
>
>         (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
>
>     (B)    the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

Fed. R. Evid. 803(8). The Call to Action falls within this exception. It states that it was prompted by a Surgeon General's workshop on DVT and PE, explains "the office's activities" in conducting the workshop, and contains factual findings that emerged from "the office's activities" in conducting a legally authorized investigation into DVTs and PEs. Ex. A at 3 & 5.

Plaintiff's only argument on this issue is a pair of bald assertions that the publication "is not a record or report of the activities of the Surgeon General's Office" and that "the report was not based on a public official's first-hand observation of an event." Dkt. 8869 at 8-9. But Plaintiff cites no facts to support these assertions and does not explain her conclusory statements. The only support she offers is *Philip Morris USA, Inc. v. Pollari*, 228 So. 3d 115, 130 (Fla. Ct. App. 2017). But *Pollari* applied *Florida's* Rule 803(8), which is substantially different from Federal Rule 803(8). *See Lee v. Dep't of Health & Rehabilitative Servs.*, 698 So. 2d 1194, 1201 (Fla. 1997) (noting difference between Florida and federal rule). Plaintiff offers no authority under the federal rule that supports her argument.

In fact, other federal cases reject Plaintiff's argument. In particular, Judge Campbell in the *In re Bard IVC Filters Prod. Liab. Litig.* MDL rejected a virtually identical hearsay objection

US.119293685.04

to the Call to Action that also relied on *Pollari*, holding that the publication was clearly within the public-records exception:

> The report falls within the public records hearsay exception. Fed. R. Evid. 803(8). Plaintiffs' citation of [*Pollari*] does not help their position. *Pollari* found that Surgeon General reports satisfy Federal Rule of Evidence 803(8)(A)(iii) as records of factual findings from authorized investigations, but excluded the reports because Florida law did not follow the federal rule. *Id.* Other cases have admitted Surgeon General reports under Rule 803(8).

*In re Bard IVC Filter Product Liability Litigation (Lisa Hyde)*, No. MDL 15-02641-PHX-DGC, 2018 WL 4279833, at *3 (D. Ariz. Sept. 7, 2018) (citations and footnote omitted). The court cited *Boerner v. Brown & Williamson Tobacco Co.*, 394 F.3d 594, 600 (8th Cir. 2005), in which the Eighth Circuit held that Surgeon General reports are "properly admitted under the public records exception, inasmuch as they were prepared pursuant to a legal obligation." *See also Marsee v. U.S. Tobacco Co.*, 639 F. Supp. 466, 470 (W.D. Okla. 1986) (admitting Surgeon General's Advisory Committee report offered by **plaintiffs**), *aff'd* 866 F.2d 319 (10th Cir. 1989).

Plaintiff also argues that Rule 803(8) does not apply because "it lacks trustworthiness for the purposes for which Cook will use it here." Dkt. 8869 at 9. That is a nonstarter. First, as discussed above, "the purposes for which Cook will use" the Call to Action include the publication's effect on the knowledge and opinions of the medical community and the context for evaluating the reasonableness of Cook's conduct, issues that Plaintiff does not address in any way. Second, Plaintiff's only explanation of why this report by the United States Surgeon General is so "untrustworthy" that it cannot be admitted as evidence is her assertion that she has evidence to contradict it:

> Cook will use the call to action document to prove the truth of out-of-court statements asserted in it, and to do so in a way that would be unfairly prejudicial. As quoted above, Cook used the Surgeon General's statements in the last trial to argue that filters were needed to save a hundred thousand lives a year. Mrs. Brand has amassed evidence, in *Daubert* motions and other motions *in limine* filed in

9

this case, that the Cook Celect filter and retrievable filters do not save lives or capture blood clots; therefore, the call to action is an untrustworthy source to prove otherwise.

Dkt. 8869 at 9. Aside from being wrong about Cook's use of the Call to Action in *Hill* (discussed above), Plaintiff's claim that she has evidence contradicting the Surgeon General does not make the report *inadmissible* or *hearsay* any more than any other dispute over the truth of evidence does not mean that the evidence is inadmissible or hearsay.  The whole point of a trial is for the jury to resolve disputes over the truth of evidence. And Plaintiff's claim that she can contradict the Call to Action does not render it untrustworthy or deny it the benefit of the public-records exception to the hearsay rule because the exception has nothing to do with veracity. The exception does not require the evidence to be true or magically render it true, it simply provides that the evidence is not barred as hearsay.  It goes to the jurors, who may credit it or not as they wish.

In any event, Surgeon General reports are sufficiently reliable that "federal judges have taken *judicial notice* of the Surgeon General's reports pursuant to Fed. Rule of Evid. 201…." *Hicks v. Corrections Corp. of America*, No. CV08-0687, 2009 WL 2969768, at *6 n.6 (W.D. La. Sept. 11, 2009) (emphasis added, citing cases); *see also U.S. v. Sauls*, 981 F. Supp. 909, 920 (D. Md. 1997) ("Surgeon General's Reports … are reliable.").

Because the Call to Action is a public record under Rule 803(8), it is admissible even assuming that it is hearsay in the first instance.

**B.     The Call to Action is not hearsay in the first place.**

But the Call to Action is *not* hearsay, at least for many of the purposes for which Cook will offer it. Hearsay is an out-of-court statement that is offered "to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c)(2).  Although Cook relies on some of the Call to

Action's statements for their truth, much of the probative value of the publication has little or nothing to do with its truth.   As discussed above, the state of the medical community's knowledge and understanding about (1) the risk of DVT and PEs and (2) the use of filters to treat PEs forms the context for Cook's designing and marketing the Celect filter and drafting its IFU. The Call to Action is evidence of that context—and that is so regardless whether its statements are true.  Statements offered for such reasons other than their truth are not hearsay in the first place, and thus not barred by the hearsay rule.  *See, e.g., Talmage v. Harris*, 486 F.3d 968, 975 (7th Cir. 2007) (expert appraisal reports containing estimates of fire loss were not hearsay where offered to show insurer's state of mind).  Indeed, Plaintiff's own motion demonstrates Cook's use of the Call to Action to show the understanding of the medical community, noting:

> In the last trial, Cook used the call to action as an excuse to argue what "physicians have talked about and our health institutes have talked about for many years," and what "many other important institutes" allegedly said. *See* Ex. 1, Hill TT229:4 – 230:8 (quoted above).

Dkt 8869 at 8.  The Call to Action is not hearsay, and the Court should deny Plaintiff's motion on that ground.

## **CONCLUSION**

For the reasons set forth above, the Cook Defendants urge the Court to deny Plaintiff's motion to exclude the Surgeon General's Call to Action from evidence in this action.

US.119293685.04

Respectfully submitted,

Dated: September 19, 2018            /s/ Andrea Roberts Pierson
                                     Andrea Roberts Pierson (# 18435-49)
                                     Jessica Benson Cox (# 26259-49)
                                     FAEGRE BAKER DANIELS LLP
                                     300 North Meridian Street, Suite 2700
                                     Indianapolis, Indiana 46204
                                     Telephone:  (317) 237-0300
                                     Facsimile:  (317) 237-1000
                                     Email:  andrea.pierson@faegrebd.com
                                     Email:  jessica.cox@faegrebd.com

                                     Charles Webber (# 215247)
                                     Bruce Jones (# 179553)
                                     FAEGRE BAKER DANIELS LLP
                                     2200 Wells Fargo Center
                                     90 South Seventh Street
                                     Minneapolis, MN 55402
                                     Telephone: (612) 766-8719
                                     Facsimile: (612) 766-1600
                                     Email:  chuck.webber@faegrebd.com
                                     Email:  bruce.jones@faegrebd.com

                                     *Counsel for the Defendants, Cook Incorporated,
                                     Cook Medical LLC (f/k/a Cook Medical
                                     Incorporated), and William Cook Europe ApS*

US.119293685.04

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 19, 2018, a copy of the foregoing was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.  Lead Counsel for Defendants will serve any non-CM/ECF registered parties.

*/s/ Andrea Roberts Pierson*

US.119293685.04