UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

This Document Relates to:

*Brand v. Cook Medical, Inc. et al.,*
Case No. 1:14-cv-06018-RLY-TAB

**THE COOK DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE OR LIMIT ARGUMENT AND
EVIDENCE THAT RETRIEVABLE AND/OR CELECT AND/OR IVC FILTERS
GENERALLY SAVE LIVES OR CAPTURE BLOOD CLOTS**

**I.   PLAINTIFF'S PURPORTED "MOTION IN LIMINE" IS IN FACT AN UNTIMELY AND IMPROPER MOTION FOR PARTIAL SUMMARY JUDGMENT.**

As a threshold matter, Plaintiff's motion to exclude any evidence that Celect IVC filters catch blood clots and save lives is not a motion in limine at all, but a thinly disguised motion for partial summary judgment. Like several of the motions in Plaintiff's Omnibus Motions in Limine ("Plaintiff's Omnibus"),[1] Plaintiff's present motion effectively asks the Court to rule before trial that Cook will be unable at trial to present any evidence supporting the benefits of IVC filter use. The motion thus does not ask the Court to exclude testimony based on the rules of evidence; it asks the Court to legally foreclose Cook from rebutting the element of Plaintiff's claim requiring her to prove that the risks of the Celect filter outweighed its benefits. In effect, Plaintiff argues that Cook can present no genuine issue of material fact on the benefits of IVC

---

[1] *See, e.g.,* Dkt. 8873, Plaintiff's Omnibus, MILs 2, 3.

US.119293744.08

filters and that Plaintiff is therefore entitled to prevail on that issue as a matter of law—the definition of a partial summary judgment. *See* Fed. R. Civ. P. 56(a).

Courts in this Circuit have uniformly rejected such attempts to obtain *de facto* partial summary judgment under the guise of a motion in limine. A court in the Northern District of Indiana addressed just such a motion earlier this year and rejected it as improper, holding:

> The defendants move to bar any evidence or argument of a conspiracy among the defendants. They first argue that the evidence is insufficient to establish a conspiracy, either between Stryker and Mr. Stovall or between Stryker and CrossLink, so Zimmer should be barred from pursuing those arguments at trial. *That argument is misplaced in the context of a motion in limine.* Conspiracy is one of Zimmer's theories for holding the defendants liable for the claims asserted in this case. If the defendants believe the evidence is insufficient to support such a theory, that could have been raised through a motion for summary judgment, or could be raised through a motion for judgment as a matter of law at trial. *A motion in limine is not a proper vehicle for deciding whether the evidence is sufficient to support a plaintiff's claim, so the Court will not entertain this argument at this stage.*

*Zimmer, Inc. v. Howmedica Osteonics Corp.*, No. 3:14-CV-152 JD, 2018 WL 1062681, at *1-5 (N.D. Ind. Feb. 27, 2018) (emphasis added). A plethora of other courts have reached the same conclusion.[2]

This Court should likewise reject Plaintiff's attempt to bar Cook's evidence of the benefits of IVC filters, and specifically evidence of those filters' abilities to catch blood clots and

---

[2] *See, e.g., Newman ex rel. Newman v. McNeil Consumer Healthcare*, 2013 WL 4460011 (N.D. Ill.) ("The motion, which does not seek to bar specific inadmissible evidence but rather any evidence relating to the relief sought from [defendant], is in fact a motion for summary judgment in the guise of a motion *in limine* and is therefore denied."); *Simstad v. Scheub*, No. 2:07-CV-407 JVB, 2014 WL 6674596, at *4 (N.D. Ind. Nov. 25, 2014) ("…Defendants are seeking a dispositive ruling on a claim through a motion in limine. Clearly, a motion for summary judgment or a directed verdict is a more appropriate venue to seek a dispositive ruling on a claim."); *Duncan v. Fleetwood Motor Homes of Indiana, Inc.*, No. 1:06-CV-42, 2008 WL 2413170, at *6 (N.D. Ind. June 12, 2008) ("…Fleetwood's request to bar any allegations of willfulness is premature at this stage of the proceedings. Essentially, Fleetwood is requesting that the Court enter a directed verdict on the issue of willful conduct before Duncan even presents its evidence in this case.); *Dowe v. Nat'l R.R. Passenger Corp.*, No. 01 C 5808, 2004 WL 887410, at *11 (N.D. Ill. Apr. 26, 2004) (denying defendant's motion in limine where the defendant sought to eliminate claims "[u]nder the guise of a motion in limine" rather than through a timely motion for summary judgment).

save lives, through the improper vehicle of a motion in limine. Plaintiff could have moved for summary judgment on this issue, but she chose not to; she cannot belatedly avoid that decision under the camouflage of a motion in limine. Plaintiff may not foreclose the Cook Defendants' ability to offer evidence of those benefits by means of a motion in limine. *See Zimmer, Inc. v. Howmedica Osteonics Corp.*, 2018 WL 1062681, at *2 ("If Stryker believes that the evidence introduced at trial is insufficient to support this claim, it may make an appropriate motion at trial, but these arguments are wholly unfounded and misplaced as a motion in limine.").

## II. SUBSTANTIAL ADMISSIBLE EVIDENCE SUPPORTS THE CONCLUSION THAT IVC FILTERS GENERALLY AND CELECT IVC FILTERS SPECIFICALLY CATCH BLOOD CLOTS AND SAVE LIVES.

Even if the Court were to reach the merits of Plaintiff's *de facto* partial summary motion, the Court should deny the motion on its merits. Under Georgia's risk-utility analysis of strict-liability and negligent design defect claims, Plaintiff bears the burden of proving to the jury that "the risk of the product" outweighs "the utility or benefit derived from the product." *See Banks v. ICI Americas, Inc.*, 450 S.E.2d 671, 673-74 (Ga. 1994). Plaintiff's present motion, however, presents only her own side of that issue, either ignoring Cook's evidence to the contrary or incorrectly assuming that the Court has some basis to exclude Cook's evidence. Plaintiff's motion utterly fails to establish as a matter of law that IVC filters do not provide the benefits of capturing clots and saving lives, and the Court should permit Cook to present the substantial evidence that demonstrates that those benefits exist.

### A. Plaintiff's evidence about the benefits of IVC filters does not entitle her to partial summary judgment and does not require the exclusion of opposing testimony.

Nowhere is the summary judgment character of Plaintiff's motion more transparent than in her discussion of Dr. Krumholz's and Dr. Fryzek's opinions, Plaintiff's Memorandum in Support of Motion in Limine to Exclude or Limit Argument and Evidence that Retrievable

and/or Celect and/or IVC Filters Generally Save Lives or Capture Blood Clots ("Plaintiff's Brief"), Dkt. 8865 at 4-10.  In this seven-page stretch, Plaintiff cites no Rule of evidence or case law and offers no evidentiary analysis; she simply argues the evidence.  She recounts testimony and other evidence that she claims supports her assertion that IVC filters do not catch blood clots or save lives, and ignores all of the evidence that weighs against that assertion, claiming that it does not exist.  The existence of evidence favoring one party is not a basis for barring the opposing party from presenting evidence to the contrary.  *See Estate of Gee ex rel. Beeman v. Bloomington Hosp.*, No. 1:06-CV-00094-TWP, 2012 WL 639517, at *3 (S.D. Ind. Feb. 27, 2012) (citing *Cobige v. City of Chicago,* 651 F.3d 780, 784 (7th Cir. 2011)).  The jury gets to hear both sides' evidence and decide for itself.

Moreover, even assuming that one side's presentation of evidence on an issue could somehow foreclose the other side from presenting opposing evidence, the evidence Plaintiff offers here would not in fact make a showing that is sufficient to justify such exclusion. Plaintiff's argument depends largely on the testimony of her expert, Dr. Krumholz, but that testimony fails to conclusively establish the facts Plaintiff urges for several reasons.

First, as detailed in Cook Defendants' Memorandum in Support of Motion to Exclude the Testimony of Dr. Harlan Krumholz ("Krumholz Brief"), Dkt 8633, Dr. Krumholz is wholly unqualified to opine concerning IVC filters.  He is not an engineer, a pathologist, a vascular surgeon, an interventional radiologist, or an interventional cardiologist. He has never designed an IVC filter, placed an IVC filter, retrieved an IVC filter, or managed a patient with any type of complication from an IVC filter. *Id.* at 1.  Second, Dr. Krumholz's methodology is unsound.  He abandons the standards and methods that govern his profession and gives conclusions inconsistent with his own published work.  *See Id*. at 2.  He relies on arbitrary classifications, and

he vacillates between different standards of proof he applies to demonstrate efficacy, safety, causation, and comparative effectiveness.  *Id*.  This inconsistent approach produces contradictory, unreliable, and ultimately non-credible results.

For these reasons, the Court may exclude some or all of Dr. Krumholz's testimony on which Plaintiff's motion relies, or, even if the Court admits the testimony, the jury may well find him not to be credible, either for the reasons detailed above or for some other reason.  Dr. Krumholz's testimony does not provide an adequate foundation for a grant of partial summary judgment on any issue, much less an issue on which Plaintiff has the burden of proof.

Plaintiff's motion also severely mischaracterizes the testimony of Cook's epidemiology expert Dr. Jon Fryzek with respect to randomized controlled studies and ignores Dr. Fryzek's qualifications of his comments.  Plaintiff asserts that Dr. Fryzek "has opined at great length that randomized controlled trials are necessary to determine whether a medical device can be said to have caused a certain outcome."  Dkt 8865, Plaintiff's Brief at 8.  What Dr. Fryzek's report *actually* says, however, is:

> Randomized controlled trials are *typically* conducted in order to understand the efficacy of a treatment in relation to a comparison group.  In choosing a comparison group, researchers must consider *ethical standards* particularly in terms of the current standard of care.  At a minimum, *clinical trial patients should be offered the standard of care for their disease*."

Expert Report of Jon P. Fryzek, MPH PhD (Fryzek Rpt."), Dkt. 8628-2, at p. 6-7, ¶ 25 (emphasis added).  This statement does not mean that the *only* way to prove efficacy is through such trials, and makes clear that such trial are not always ethically possible.  And Plaintiff cites no authority for her apparent assertion that randomized controlled studies are the *only* type of evidence admissible to prove the effectiveness of a medical device.

In sum, the evidence Plaintiff cites in support of her motion for partial summary judgment/motion in limine would be insufficient to support her assertions about IVC filters

catching clots and saving lives even if that evidence were uncontradicted, and requires denial of her motion.  As discussed in the following section, however, the evidence is far from uncontradicted.

>    B.  **Cook can offer substantial evidence that IVC filters generally and Cook Celect IVC filters specifically catch clots and save lives.**

Plaintiff's argument that Cook can present no evidence that IVC filters catch clots and save lives is belied by the substantial evidence that Cook has marshalled that IVC filters actually *do* catch clots and save lives.  Despite her attorneys' undeniable knowledge of this evidence from the *Hill* and *Pavlock* trials, Plaintiff's motion ignores this evidence completely.

The Court itself heard a considerable body of such evidence in the *Hill* trial, and will doubtless recall much of it.  For present purposes, Cook offers the following *non-comprehensive* list of some of the evidence Cook will present at trial to show that IVC filters catch blood clots and save lives:

>    1.  **Medical articles.[3]**
>
>       a.   Ex. A, Behnood Bikdeli, MD et al., *Inferior Vena Cava Filters to Prevent Pulmonary Embolism: Systematic Review and Meta-Analysis*, 70(13) J. Am. C. Cardiology 1587-97 (2017).  Plaintiff's own expert, Dr. Krumholz, coauthored this meta-analysis of the published literature on IVC filters and found that "use of IVC filters across various indications is associated with reduced risk of subsequent PE." *Id.* at 1593.  Notably, he reported to his peers that there was a

---

[3] Plaintiff's motion cites several medical articles that she claims demonstrate that IVC filters provide no benefit.  *See* Dkt. 8865, Plaintiff's Brief at 5-6.  Cook takes issue with Plaintiff's interpretation of those articles and with her failure to note several critical distinguishing factors that make the studies inapposite to this case.  Given that this is *not* a proper motion for summary judgment and the only issue in the present motion is the existence of evidence *supporting* the benefits of IVC filters, however, Cook will leave those issues to be addressed at trial as necessary.

6

statistically significant effect on PE-related mortality "in the study subgroup most similar to guideline-recommended indications (i.e., those with contraindication to anticoagulation and recurrent events despite adequate anticoagulation)."  *Id.*  Indeed, among patients who had PE and could not take anticoagulants, or for whom anticoagulants had failed, Dr. Krumholz found that those without filters died of PE *five times as frequently* as those who received filters.[4]

   b. Ex. B, Luis F. Angel, MD et al., *Systematic Review of the Use of Retrievable Inferior Vena Cava Filters*, 22 J. Vasc. Interv. Radiol. 1522-30 (2011).  This systematic literature review investigated how often patients with filters reported having a PE after filter placement (or "breakthrough PE"), and compared these rates between different filter designs.  They found that the Celect had a lower breakthrough PE rate than the other filters included in the study:

**Table 3. Inferior Vena Cava Filter Benefits: Frequency of Pulmonary Embolism by Filter Type (Literature Review)**

| Filter Type | Studies Reporting Pulmonary Embolism/Total No. Studies | No. Patients with Inferior Vena Cava Filter | No. Patients with Pulmonary Embolism |
|---|---|---|---|
| ALN | 3/3 | 738 | 5 (0.7%) |
| Celect | 3/3 | 283 | 3 (1.1%) |
| G2 | 1/5 | 265 | 9 (3.4%) |
| Optease | 4/7 | 487 | 8 (1.6%) |
| Option | 1/1 | 100 | 4 (4%) |
| Recovery | 2/3 | 103 | 1 (1%) |
| Tulip | 7/8 | 1,509 | 14 (0.9%) |
| Total | 21/30 | 3,485 | 44 (1.3%) |

  2. **Clot-trapping studies.**  Bench studies of the Celect filter have repeatedly demonstrated that the filter catches blood clots.  *See, e.g.*, Ex. C, R.W. Gunther et al.,

---

[4] Specifically, Dr. Krumholz's article noted "reduced rates of PE-related mortality (OR: 0.20. . .)."  This means that the rate of PE-related mortality for filter patients divided by the rate for non-filter patients was 0.20.  *See, e.g.,* definition of "odds ratio (OR)" at https://en.wikipedia.org/wiki/Odds_ratio; *see also* Expert Report of Timothy A. Morris, MD FACCP ("Morris Rpt."), Dkt. 8650-1 at 15-16 (explaining that the odds ratio of 0.20 equates to an 80% reduction in the odds of suffering PE-related mortality).  Thus, the rate of PE-related death among patients who had no filter was five times the rate of patients who received a filter.

*New Optional IVC Filter for Percutaneous Retrieval – In Vitro Evaluation of Embolus Capturing Efficiency*, 177 Fortschr. Rontgenstr. 632-36 (2005), at 635 ("the overall mean capture efficiency of the Cook Celect filter was 91.6%," including > 95% capture rate of clots 5 x 10 mm or greater); *see also* Ex. D, O. Doody et al., *Initial Experience in 115 Patients with the Retrievable Cook Celect Vena Cava Filter*, 53 J. Med. Imaging & Radiation Oncology 64-68 (2009), at 67 (citing clot-trapping studies as further support of the study's results proving "the efficiency of the Cook Celect filter in the prevention of pulmonary emboli").

3. **Retained experts' testimony**. Cook's retained experts offer opinions that IVC filters capture clots, based both on personal experience and on the medical literature.

   a. Dr. David Gillespie stated in his report and his deposition that he has personally witnessed IVC filters capture clots:

   > Moreover, my clinical experience confirms what I know from my formal education and review of the medical literature. I have seen patients die from PE, so I know the disease to be serious. I have also used filters in my patients, and I have personally seen them capture clot during thrombolysis. I do not see my patients with filters dying from PE. My patients that I have seen die from PE- on the operating room table- are ones that have *not* had filters in place.

Expert Report of David Gillespie, MD, FACS, RVT, DMCC ("Gillespie Rpt."), Dkt. 8615-1 at 6; *see also* Deposition of David Gillespie, MD, FACS, RVT, DMCC ("Gillespie Dep."), Dkt. 8615-2 at 57:1-58:18 ("I did a case last week, you know, where I do thrombolysis and I see patients' filters catch clot."). Dr. Gillespie also opines that Plaintiff's own Celect IVC filter in fact protected her from PEs. *See* Dkt. 8615-1, Gillespie Rpt., at 32 ("The filter provided protection from PE. There is no evidence in the records or imaging that Mrs. Brand ever suffered from PE while the filter was in place."); *see also* Deposition of Mark Rheudasil, MD, ("Rheudasil Dep."), Dkt 8623-3 at 84:3-21;

8

Dkt. 8623-6 at 189:10-191:8 (noting filter still provided benefits to Plaintiff years after placement).

      b.    Dr. Timothy Morris's report cites and discusses a medical article that noted the capture of clots by filters as detected on CT scans. *See* Dkt. 8650-1, Morris Rpt. at 25 ("Routine abdominal CT scans one month after insertion disclosed thromboemboli captured by the filters in eight patients and IVC thrombosis in two.") (citing Ex. E, De Gregorio, et al., Retrieval of Gunther Tulip optional vena cava filters 30 days after implantation: a prospective clinical study. *J Vasc Interv Radiol* 2006;17:1781-9).

4.    **Plaintiff's treating doctor's testimony.**  Plaintiff's own placing physician Dr. Mark Rheudasil testified that IVC filters capture clots and reduce PEs, and that that benefit is why he places filters in patients. He testified:

> Q. What is a vena cava filter?
> A. It's a mechanical device placed in the vena cava, the main vein of the body that is designed to catch, basically, any -- catch a clot of any significant size that would be moving toward the heart and lungs to try to minimize what is a pulmonary embolus.
>     \*\*\*
> Q. Is the filter's ability to catch blood clots a factor that you consider in choosing filters
> for your patients?
> A. Well, not particularly related to the brand of the filter. I think all filters are of roughly equal capability in that regard. … But in general terms, I consider almost every available, commercially available filter equivalent in terms of their pulmonary embolus protection.

Dkt. 8623-1, Rheudasil Dep. at 23:19-25, 25:20-26:9.  Notably, Dr. Rheudasil also testified that Plaintiff's filter continued to provide her protection for years after it tilted and fractured. *Id.* at Dkt. 8623-3 at 84:3-21.  He noted in an October 29, 2012 progress note (more than a year after the decision to allow the filter to remain in place because it

9

was providing ongoing benefit) that her filter was providing welcome protection as she approached a knee replacement surgery that posed a high risk for recurrent thrombosis. Ex. F, Dr. Mark Rheudasil 10/29/2012 Progress Note ("Dr. Rheudasil 10-12"); *see also* Dkt. 8623-6, Rheudasil Dep. at 189:10-191:8 (confirming this interpretation of his note).

Even the limited evidence listed above would be sufficient to defeat Plaintiff's *de facto* partial summary judgment motion, and it is certainly enough to defeat Plaintiff's motion to exclude any evidence that the Celect catches clots and saves lives. Indeed, Judge David Campbell rejected a similar motion by the plaintiff the *In re Bard IVC Filter Product Liability Litigation* MDL, holding that under the same Georgia law that applies here, evidence similar to the evidence outlined above was "directly relevant" to defending against Plaintiff's claims:

> **D. Plaintiffs' MIL No. 3 (IVC filters as "lifesaving" devices).**
> Plaintiffs seek to preclude Defendants from putting on a "filters saves lives" defense, or from describing Bard filters as "lifesaving" or "life-extending." Doc. 9867. Plaintiffs state that IVC filters are designed to prevent blood clots from reaching the heart and lungs and any other presumed benefit is "speculative." *Id.* at 2. But preventing blood clots from reaching the heart and lungs saves lives. Defendants cite statistics showing that some 300,000 people die each year from pulmonary embolisms. … Plaintiffs' own expert has testified that the purpose of IVC filters is to prevent pulmonary embolisms, and in this sense the filters can be lifesaving devices. ….
> Georgia law, which applies in this case, includes a risk-utility analysis for design defect claims. This analysis involves balancing "the risks inherent in a product design" against "the utility or benefit derived from the product." *Banks v. ICI Ams., Inc.*, 450 S.E.2d 671, 673 (Ga. 1994). *Evidence concerning the benefits of IVC filters is directly relevant to this analysis*. Plaintiffs' motion in limine (Doc. 9867) is **denied**.

*In re Bard IVC Filters Prod. Liab. Litig.*, No. CV-16-00474-PHX-DGC, 2018 WL 1109554, at *4–5 (D. Ariz. Mar. 1, 2018) (emphasis added).

In sum, contrary to Plaintiff's assertion, Cook has identified a large body of evidence that IVC filters generally and Celect IVC filters in particular capture blood clots and save lives. This evidence not only exists, it is critical to the jury's balancing of the risks and benefits of the

10

product, as required by Georgia law. *See Banks*, 450 S.E.2d at 673-74. Plaintiff offers no basis for the Court to exclude such evidence, much less any basis supported by the rules of evidence.

### III. PLAINTIFF'S OTHER ARGUMENTS DO NOT JUSTIFY EXCLUSION OF COOK'S EVIDENCE THAT IVC FILTERS CATCH CLOTS AND SAVE LIVES.

Plaintiff briefly offers several additional arguments to try to justify exclusion of evidence that IVC filters capture clots and save lives, but none of them is persuasive.

#### A. Admission of evidence that IVC filters are effective would not unfairly prejudice Plaintiff.

Plaintiff argues that admission of evidence of IVC filter effectiveness "will be unfairly prejudicial to Mrs. Brand." Dkt 8865, Plaintiff's Brief at 10. Plaintiff then spends a page and a half quoting and citing Cook references to the efficacy of IVC filters from the *Hill* trial, but she never explains why the prejudice from this evidence and argument is somehow "unfair." She argues only that "it is proper to exclude an argument that is flatly incorrect." *Id.* at 12. As discussed above, however, the argument that IVC filters provide health benefits is not "flatly wrong," it is supported by substantial evidence.[5] Although Cook believes that this evidence supporting filters' benefits is persuasive, all persuasive evidence is prejudicial to the other side's case; that is the whole point of introducing evidence. Plaintiff cannot establish that this persuasive evidence would be *unfairly prejudicial* or that the unfair prejudice would outweigh the considerable probative value. *See* Fed. R. Evid. 403.

#### B. Plaintiff's claim that she did not benefit from her Celect IVC filter does not require exclusion of evidence to the contrary.

---

[5] The case Plaintiff cites on this point, *United States v. Hook*, 195 F.3d 299 (7th Cir. 1999), is inapposite. In *Hook*, the court excluded the defendant's argument that a plan was not subject to ERISA because the court concluded that "Defendant's conclusions were wrong as a matter of law." *Id.* at 309. The decision had nothing to do with barring argument based on legitimate factual disputes.

11

Plaintiff argues that the benefits of the IVC filter "has nothing to do with Mrs. Brand" and is therefore inadmissible because "[s]he received no benefit" from her filter. This argument is flawed for several reasons. Dkt. 8865, Plaintiff's Brief at 13. First, of course, Cook will introduce evidence that Plaintiff *did* receive benefits from her Celect filter. As Dr. Gillespie stated in his report: "The filter provided protection from PE. There is no evidence in the records or imaging that Mrs. Brand ever suffered from PE while the filter was in place." Dkt. 8615-1, Gillespie. Rpt. at 32. Plaintiff's allegation that she did not receive any benefit from the filter but was injured by it is simply a restatement of Plaintiff's claims in this action, and Plaintiff's mere assertion of those claims does not bar Cook from offering evidence to dispute them. On the contrary, the substance of Plaintiff's claims is what makes the contrary evidence relevant and admissible.

More fundamentally, Georgia's risk-benefit analysis is necessarily performed prospectively, weighing *potential* risks against *potential* benefits as of the time of the decision to place the filter, not retrospectively as Plaintiff appears to urge. Indeed, Plaintiff's proposed rule would lead to absurd results. If the rule were that risk is weighed against benefit retrospectively, after a risk has actually come about, then *every* risk that *actually* came about would *necessarily* outweigh the benefits that did not. That is nonsensical: no one would say that the benefits of airbags or seatbelts outweigh the risks only if an accident occurs. The benefit of a prophylactic protective device like a seatbelt or an IVC filter is to reduce the risk of injury *if* an accident occurs or a clot forms and moves. Plaintiff cites no authority to support her purely retrospective approach to Georgia's risk-benefit analysis.

    **C.**    **Cook is permitted to defend its product and itself against Plaintiff's attacks.**

12

Plaintiff's argument that Cook should not be permitted to "brag" about itself or its products (Dkt. 8865, Plaintiff's Brief at 13) is difficult to understand.  Plaintiff claims that Cook's Celect IVC filter is a bad product that does not work; Cook is certainly entitled to offer evidence that it is a good product that does work.  The remainder of Plaintiff's argument is essentially a repetition of MIL 10 in Plaintiff's Omnibus motion (Dkt. 8873, Plaintiff's Omnibus at 38-40) and Cook incorporates its response to that motion rather than repeating it here.  Dkt. 9245, The Cook Defendants' Response in Opposition to Plaintiff's Omnibus Motions in Limine.

> D. **Plaintiff's Daubert motion to exclude Dr. Gillespie's testimony, even if it were granted, does not justify the exclusion of other testimony and evidence of the benefits of IVC filters.**

Plaintiff argues that evidence of the benefits of IVC filters is inadmissible "because no data or methodology support such conclusions," Dkt. 8865, Plaintiff's Brief at 13 & n.13 (citing Plaintiff's Motion and Memorandum in Support of Motion to Exclude or Limit the Expert Testimony of David Gillespie, M.D., filed herein on July 20, 2018).  In other words, according to Plaintiff, because Dr. Gillespie's testimony should be excluded, Cook should not be permitted to offer other evidence of the benefits of IVC filters.  This argument ignores the testimony of other experts on this issue, including (as discussed above) Dr. Morris and Dr. Rheudasil.  In addition, Dr. Gillespie's testimony *is* admissible, and Cook incorporates by reference to the extent necessary its response to Plaintiff's motion to exclude Dr. Gillespie, which appears at Dkt. 9173.

> E. **Plaintiff's attempt to distinguish FDA-cleared and off-label uses of IVC filters does not justify the exclusion of evidence that IVC filters are effective.**

Plaintiff argues that Cook "should be prohibited from making any argument or inference supporting purported filter benefits where evidence of such benefits is based on individuals in a different medical category than Mrs. Brand," which she defines as "patients who received an IVC filter for an FDA *approved* use" on the ground that such evidence is irrelevant.  Dkt 8865,

13

Plaintiff's Brief at 14-15 (emphasis by Plaintiff).  This is really a disguised relevance objection: Plaintiff is asserting that the evidence of the benefits of IVC filters to patients receiving them for indications listed on the filter IFUs (that is, indications that the FDA cleared Cook to put on its label through the 510(k) process) is irrelevant to patients who received filters for indications *not* listed on the IFU.  This argument faces a host of problems.

At the threshold, Plaintiff's motion gives no clue as to exactly what evidence she seeks to exclude under this argument.  What evidence that Cook might offer does Plaintiff claim "is based on individuals in a different medical category than Mrs. Brand"?  Plaintiff does not identify a single medical article, a single line of an expert report, or a single Cook document that she contends falls within the scope of her argument.  If the Court were to grant Plaintiff's motion, what would be excluded, and how would either the Court or the parties know?  Plaintiff's motion is simply too vague for Cook to make meaningful response or for the Court to make a meaningful ruling.

Assuming Plaintiff's motion were not impossibly vague, her argument fails because it directly contradicts the argument she makes in "Plaintiff's Motion in Limine Regarding the FDA's 510(K) Clearance of the Celect IVC Filter and Its 'Low Complaint Rate' and to Exclude or Limit the Expert Testimony of Christy Foreman, MBE," Dkt. 8701 (hereafter "FDA motion").  In her FDA motion, Plaintiff argues that "the FDA's clearance of a medical device pursuant to the 510(k) process does not provide reasonable assurance of the device's safety and efficacy" and that, as a consequence, "the safety and efficacy of the Cook filter itself was not approved by the FDA."  Dkt. 8701, FDA Motion at 2, 9.  Based on these assertions, Plaintiff asks the Court to

> prohibit Cook from, in the presence of the jury, making any reference to or offering any evidence regarding the Cook Celect IVC's "approval" by the FDA or its 510(k) clearance by the FDA or anything about the FDA 510(k) process,

14

> including offering any expert testimony regarding same by [Dr. Christy] Foreman…

Dkt 8701, FDA Motion at 16.[6]

Despite arguing in the FDA motion that FDA has not approved the Celect IVC filter for *any* uses, however, Plaintiff's argument here is premised on the assertion that FDA *has* in fact "approved" the Celect for certain uses and not others. Plaintiff even stresses the FDA's *approval* of the Celect for certain uses:

> Any alleged benefit bestowed upon patients who received an IVC filter for an FDA *approved* use has no bearing on Mrs. Brand's case. Patients who receive a filter for a use approved by the FDA cannot be equated with Mrs. Brand, who had no history of pulmonary embolism, and who received the filter as an off-label implantation.

Dkt. 8865, Plaintiff's Brief at 14 (emphasis by Plaintiff). This contradiction is not merely semantic but patent: Plaintiff argues that the FDA did not consider the efficacy of the Cook filter, Dkt. 8701, FDA Motion at 9, yet Plaintiff also relies on the premise that "the filter may have benefitted people with a need for it (according to the FDA cleared indicated use category)." Dkt. 8865, Plaintiff's Brief at 14. Plaintiff cannot now try to create categories of Celect patients based on an FDA-based finding of benefit where her own FDA motion unequivocally maintains that the FDA has made *no finding* that the Celect provides *any* benefits. Plaintiff cannot have it both ways.

Even assuming that Plaintiff could somehow reconcile her irreconcilable positions, Plaintiff offers no analysis supporting her assertion that patients who receive IVC filters for "FDA approved" uses receive materially different benefits from those filters than patients who

---

[6] Although plaintiff Hill brought a similar motion in her case and the Court excluded evidence related to the 510k process in *Hill* (Ex. G, September 25, 2017 Motions Hearing Transcript at 270-271) a different result is warranted here, as Cook explains in its response to Plaintiff's motion. *See* Cook Defendants' Response to Plaintiff's Motion in Limine Regarding the FDA's 510(k) Clearance of the Celect IVC Filter and its "Low Complaint Rate" and to Exclude or Limit the Expert Testimony of Christy Foreman, MBE, Dkt. 9062.

15

receive filters for uses that are not listed on the Celect label but whose doctors nevertheless decide that the filters are necessary. Plaintiff's assertion that her IVC placement for an "off-label" use puts her in "a different medical category" that renders opposing evidence irrelevant is purely Plaintiff's fabrication; she cites no authority and no explanation for categorizing IVC filter patients in this way. Indeed, Plaintiff's own experts Dr. Gordon and Dr. Krumholz rely on multiple medical studies that include patients outside the FDA's indications for use. *See, e.g.,* Expert Report of Gregory I. Gordon, MD ("Gordon Rpt.") Dkt. 8664-1 at 12, 13, 15, (relying on, *inter alia*, Ex. H, PREPIC study (Prevention du Risque d'Embolie Pulmonaire par Interruption Cave Study Group. *N Engl J Med*. 1998;338:409-415)); Expert Report of Harlan M. Krumholtz, MD SM ("Krumholz Rpt.") Dkt. 8642-1 at 175. Regardless of whether an IVC filter is placed for an on-label or an off-label use, the purpose is the same: to capture blood clots headed to the lungs, and thereby to reduce the likelihood of potentially fatal pulmonary embolism. This reduction in risk is a benefit that flows to every IVC filter patient, regardless of whether the FDA has specifically approved its use in certain Plaintiff-defined patient groups. Indeed, that reduction in risk is the very benefit that leads doctors to prescribe IVC filters for off-label uses like Plaintiff's. Plaintiff's attempt to place herself in a different "category" from patients who received filters for FDA-approved uses lacks legal or logical support, and the Court should reject it. The benefits are the benefits—catching clots and reducing the likelihood of PEs and consequent injury or death. Plaintiff offers no basis on which to limit evidence of those benefits to patients with "FDA approved" uses.

      **F.    The "substantial similarity" requirement does not apply to evidence of benefits of products.**

Plaintiff finally tries to save her argument by urging an analogy to cases that apply the requirement of "substantial similarity." Those cases hold that evidence of other accidents

16

involving a product is inadmissible to prove a defect in the product unless the other accidents occurred under circumstances substantially similar to the accident at issue in the case. *See* Dkt. 8865, Plaintiff's Brief at 14-15 (collecting cases). The requirement arises from judicial recognition that "the jury is invited to infer from the presence of other accidents (1) that a dangerous condition existed (2) which caused the accident." *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1269 (7th Cir.1988).

Cook is aware of no case law adopting or endorsing Plaintiff's extension of the "substantial similarity" requirement to evidence that a product provides benefits instead of causing accidents, and Plaintiff's motion cites none. Indeed, such an application would make no sense: evidence of the broad benefits of a product to all users does not raise the same dangers as permitting a jury to infer a causal defect in a product based on one or a few other accident involving the same product. Why would a reduction in risk enjoyed by *every* user of the product need to be proven only through evidence of a reduction in the risk in "substantially similar" circumstances"?

Even if Plaintiff could somehow import the "substantial similarity" requirement into the present context, evidence of the benefits of IVC filters would meet that requirement. Every IVC filter has the same use—placement in the inferior vena cava—and every IVC filter has the same purpose—reduction of the risk of PE. Plaintiff points to no other aspect of IVC filter use that is material to the evidence at issue: whether IVC filters catch clots and save lives.

## CONCLUSION

For the reasons set forth above, Cook urges the Court to deny Plaintiff Tonya Brand's Motion in Limine to Exclude or Limit Argument and Evidence that Retrievable and/or Celect and/or IVC Filters Generally Save Lives or Capture Blood Clots.

Respectfully submitted,

Dated: September 24, 2018

*/s/ Andrea Roberts Pierson*
Andrea Roberts Pierson (# 18435-49)
Jessica Cox (# 26259-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
Email:  andrea.pierson@faegrebd.com
Email:  jessica.cox@faegrebd.com

Charles Webber (# 215247)
Bruce Jones (# 179553)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-8719
Facsimile: (612) 766-1600
Email:  chuck.webber@faegrebd.com
Email:  bruce.jones@faegrebd.com

*Counsel for the Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2018, a copy of the foregoing was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Counsel for Defendants will serve any non-CM/ECF registered parties.

*/s/ Andrea Roberts Pierson*
