# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates to Plaintiff

>   *Tonya Brand*
>   No. 1:14-cv-06018-RLY-TAB

### COOK DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY RELATED TO DEFENDANTS' TESTIFYING EXPERT DAVID GILLESPIE, M.D.

Defendants Cook Incorporated, Cook Medical LLC f/k/a Cook Medical Incorporated, and William Cook Europe ApS (collectively, "Cook" or the "Cook Defendants") hereby oppose Plaintiff's Motion to Compel Discovery Related to Defendants' Testifying Expert David Gillespie, M.D. ("the Motion" or "Plaintiff's Motion").

The facts are simple.  Dr. Gillespie authored a report, signed that report, and testified under oath that the report contained *his* opinions and thoughts about Plaintiff's case.  Counsel for Cook provided Plaintiff a copy of that report, a complete listing of *all* the materials reviewed by Dr. Gillespie, and copies of each and every invoice Dr. Gillespie generated related to his work on this matter.

Now Plaintiff has asked for more: for copies of Dr. Gillespie's draft reports and *all* communications between Dr. Gillespie and counsel.  The majority of the requested materials are

clearly protected from disclosure by Federal Rule of Civil Procedure 26(b)(4)(B) and (C) (hereinafter "Rule 26(b)(4)(B)" and "Rule 26(b)(4)(C)").  Plaintiff's Motion misconstrues deposition testimony and related evidence to suggest that Dr. Gillespie did not author his report, and it argues this somehow waives the protection afforded to draft reports and related communications under Rule 26(b)(4)(B) and Rule 26(b)(4)(C).  Even assuming *arguendo* that Plaintiff's assertions were true – and they are not -- authorship of a report does not impact the discoverability of drafts and communications afforded protection by Rule 26(b)(4)(B) and Rule 26(b)(4)(C).  Plaintiff's request for protected communications and draft reports (and related depositions of counsel for Cook) should be denied.

Additionally, Plaintiff's request to compel the production of communications between counsel and Dr. Gillespie that may not be protected by Rule 26(b)(4)(C) are frankly puzzling to Cook given the parties' prior agreement regarding the scope of expert discovery and practice in this MDL.  Specifically, at the outset of expert discovery in the bellwether cases on June 20, 2017, lead counsel for the parties – David Matthews and Andrea Pierson – agreed that all communications between experts and counsel in the MDL would be protected from discovery. Affidavit of Andrea Roberts Pierson, attached as **Exhibit A**.  As such, for the entirety of discovery and trial of the bellwether matters (*Hill*, *Gage*, and *Brand*), the parties have withheld communications between counsel and experts pursuant to the parties' agreement – even those that might arguably fall outside the protection of Rule 26(b)(4)(C).  *See id.*; *see also, e.g.*, Cook Defendants' Responses and Objections to Schedule A to the Notice of Deposition of Jon P. Fryzik [sic], dated July 5, 2017, at Response to Request No. 3, attached as **Exhibit B** ("As to attorney communications . . . the parties have agreed not to produce these communications with

experts."). Rather, each party has produced only their experts' final reports, reliance lists outlining all materials provided to each expert, and copies of the experts' invoicing.

Here, Cook has provided Plaintiff with a complete list of all materials reviewed by Dr. Gillespie and each and every invoice submitted by Dr. Gillespie, as has been the parties' practice for all expert witnesses disclosed to date in the MDL and all bellwether cases, including *Brand*. Absent the parties' prior agreement, most (if not all) experts in this case *for both parties* would owe additional discovery. Plaintiff should not be permitted to "undo" the agreement reached by the parties' lead counsel now, some 15 months after it was reached.

## RELEVANT FACTUAL BACKGROUND

### A. Dr. Gillespie's Report Is a Complete and Accurate Statement of His Opinions in This Case.

As will be shown below, Plaintiff would not be entitled to the relief she seeks even if her allegations regarding the preparation of Dr. Gillespie's report were true. Dr. Gillespie unambiguously testified that his report comprises his thoughts and opinions, not counsel's. Deposition of David L. Gillespie, M.D., dated July 7, 2018 ("Gillespie Dep.") [Dkt. No. 8615-2] at 18:3 ("I told them what to write" during in-person meeting at which clerical support was provided); 333:4-8 (confirming that his report contains "all of the thoughts and opinions" that *he* reached in this case).

At no time did Dr. Gillespie distance himself from the opinions included in his report; on the contrary, he repeatedly affirmed that he wrote the report. *See, e.g.*, *id.* at 69:18-21, 172:8-12, 207:2-6, 221:8-16, 252:12-19, 254:7-12 (discussing what "I wrote," affirming Plaintiff's questions about what "you wrote," and describing his thinking as he wrote his report). Plaintiff is correct that Dr. Gillespie received *clerical* support from counsel when writing his report, as he does not have a personal secretary. Gillespie Dep. at 332:12-22. However, there is absolutely

nothing untoward about that practice. This is openly acknowledged in a case cited by Plaintiff – *Johnson v. City of Rockford*. 2018 WL 1508482, at *4 n.1 (N.D. Ill. March 27, 2018) ("Without doubt, counsel can assist in the preparation of the expert report."). Indeed, courts have specifically approved counsel's typing of a report for an expert who did not have a secretary – which is precisely what the deposition quotes cited by Plaintiff show happened here. *See id.* (citing *Paliwoda v. Showman*, No. 12-2740, 2013 WL 5938027, at *4 (D. Kan. Nov. 6, 2013)).

Finally, Plaintiff criticizes Dr. Gillespie's work without clean hands. Her own medical expert, Dr. Gregory Gordon, included an entire table in his written report that he testified "was handed to me" by counsel and consisted of data "selected by the lawyers" without his input. Deposition of Gregory I. Gordon, M.D., dated June 12, 2018 ("Gordon Dep.") [Dkt. No. 9172-1] at 256:17-257:6; 262:3-24.[1]

As Cook explains below, Dr. Gillespie's thoughts and opinions within his final report are discoverable; the other materials that Plaintiff seeks are not.

### B. Dr. Gillespie's Invoices Support Considerable Work on His Report.

There is no dispute here that Cook has produced each and every invoice submitted by Dr. Gillespie that relates to his work on the Brand matter to date.[2] Those invoices outline that Dr. Gillespie spent 89.5 hours reviewing medical records, depositions, and literature to prepare to write his report, and an additional 29 hours drafting and revising his expert report.

---

[1] Likewise, Plaintiff's key expert in the *Hill* case – Dr. David Kessler, former commissioner of the FDA – spent *22 days* with Plaintiff's counsel researching, writing, and refining his report. *See* 9/25/17 Hearing Transcript [Dkt. 6851] at 96:7-12.

[2] Due to a clerical error, only a subset of Dr. Gillespie's billing records was brought to his Saturday deposition. Gillespie Dep. at 19:21-20:17. Defense counsel apologized on the record and promised to remedy the error. *Id.* at 20:1-6; 117:21-24, 339:2-16. As Plaintiff admits, the complete set of billing records was produced to Plaintiff's counsel shortly thereafter.

Plaintiff is also correct that two separate invoices were produced for Dr. Gillespie's work for May 17, 2018, through June 1, 2018 (the "May Invoice") [Dkt. No. 9217-7]. As emails between Cook's counsel and Dr. Gillespie make clear, counsel for Cook received the May Invoice on June 4, 2018 (over a month before Dr. Gillespie's July 7, 2018 deposition), and upon review was unclear about the activity described therein. *See* Email with attachment from Dr. Gillespie to Jessica Benson Cox, dated June 5, 2018, attached as **Exhibit C**. Notably, it appeared as if Dr. Gillespie had confused the term "deposition" for "report" throughout,[3] thus, counsel for Cook asked him to clarify his time entries. For example, the entry for May 19, 2018 on the May Invoice noted 6.5 hours for "working on writing my deposition." As a result, Dr. Gillespie revised the descriptions of his time entries in a version of the May Invoice provided the next day, June 5, 2018, and still over a month prior to the deposition. Nowhere did he actually adjust any of the amounts of time billed for work on this matter. *Compare* Gillespie Dep. At Exhibit 4 [Dkt. No. 9217-6] *with* the May Invoice(correcting the description of entries but making no changes to time billed). In short, there is no merit to Plaintiff's claim that defense counsel or Dr. Gillespie edited his invoice to make it seem he had spent more time on his report in response to Plaintiff's allegations. The edits were made before Plaintiff made those allegations, simply because the first version was erroneous and needed clarification.

### C. Dr. Gillespie's Deposition Testimony Does Not Support a Need for Any Additional Discovery.

Plaintiff also cites extensive deposition testimony by Dr. Gillespie, most of which has nothing to do with authorship of his report and is thus irrelevant. *See* Memorandum in Support of Plaintiff's Motion to Compel Discovery Related to Defendants' Testifying Expert Dr. David

---

[3] Dr. Gillespie, a non-lawyer, also confused the terms "deposition" and "report" at his deposition. See Errata to Deposition of David L. Gillespie, MD, dated 8/10/2018 ("Gillespie Errata") [Dkt. No. 9175-2] (Dr. Gillespie's errata, correcting his use of the term "deposition" to "report" in four locations).

Gillespie (Pl.'s Mem.") [Dkt. No. 9216] at 5-7 (collecting allegedly nonresponsive answers to questions unrelated to the report).[4]  She also cites a number of quotations that suggest Dr. Gillespie "does not know his report," but he explicitly noted that he merely wanted to be specific.  *See id.* at 4-5.[5]  Plaintiff's expert, Dr. Krumholz, likewise wanted to be specific in his deposition just one week earlier - and in fact he became significantly agitated during the deposition if a question wasn't specifically tied to a page of his report.  Deposition of Harlan M. Krumholz, M.D., dated June 28, 2018 [Dkt. No. 8632-2] at 36:9-25 ("Ma'am, if you haven't prepared your questions sufficiently to be able to direct me to where exactly in my report you're referring, please don't put that on me.")  Counsel did so, and Cook's experts were entitled to the same courtesy.

---

[4] Close inspection of these passages in context shows that Dr. Gillespie was not nonresponsive at all.  However, these are not treated in depth herein because they have nothing to do with Dr. Gillespie's report and are thus irrelevant to this Motion.

[5] As a threshold matter, it should be noted that Dr. Gillespie was referring to an electronic version of his report at deposition that was hyperlinked to the sources he cited in an effort to speed the deposition along.  *See* Gillespie Dep. at 14:16-22.  Dr. Gillespie was only unfamiliar with *that version* of his report, which led to some technical delays.  *See, e.g., id.* at 202:9-14, 250:15-18.  That said, Plaintiff's misuse of individual quotations is addressed in turn:

- Her first citation, Gillespie Dep. at 68:12-24, merely captures *defense counsel's* request that plaintiff's counsel point to a specific portion of the report.  Dr. Gillespie specifically rebuffed counsel's suggestion that he did not know his own report.
- Her second citation, Gillespie Dep. at 71:19-23, is taken out of context.  Plaintiff's counsel had previously directed Dr. Gillespie to comments on page 30 of his report.  *Id.* at 69:11-15.  In the course of responding, Dr. Gillespie left that page and moved to Figure 8.  *Id.* at 71:5.  Plaintiff's counsel then returned to the question about the comments on page 30.  *Id.* at 71:6-21.  The portion that Plaintiff now cites merely captures Dr. Gillespie's request to be directed back to the page Plaintiff's counsel had specifically referenced earlier.
- Her third citation, Gillespie Dep. at 147:16-23, merely captures Plaintiff's counsel's impatience while waiting on Dr. Gillespie to search his report for a citation to some article that would support a very specific proposition.  This proves only that Dr. Gillespie does not have his entire report, footnotes and all, committed to photographic memory.
- Her fourth citation, Gillespie Dep. at 207:2-6, merely shows that Dr. Gillespie could not recall the specific medical record he was referencing in a comment that he specifically said, "I wrote."  This says nothing about his familiarity with his report.
- Her fifth and final citation on this point, Gillespie Dep. at 222:5-9, is merely Plaintiff's counsel's taunting of Dr. Gillespie while he struggled to find a specific radiological image he wanted to discuss.  *See id.* at 221:17-222:12.  He knew exactly what image he wanted; he just had difficulty finding the electronic version of a paper document that Plaintiff's counsel was referencing.

Plaintiff does cite a few quotations that appear to indicate Dr. Gillespie spent very little time writing his report, but these stem from a simple misunderstanding. Plaintiff's counsel transitioned from asking Dr. Gillespie how many times he met with counsel *to prepare for deposition* to asking how many times he had with counsel *to write the report*, and Dr. Gillespie did not notice that Plaintiff's counsel had changed the question. *Compare* Gillespie Dep. at 14:4-14 (questioning about his deposition preparation) *with id.* at 18:8-19 (responding to questioning about his report by referring to his prior testimony about deposition preparation). Dr. Gillespie's subsequent testimony and errata make clear that he spent considerably more time authoring his report than the confusion at his deposition might suggest, as is further corroborated by the invoicing produced to date. *See* Gillespie Dep. at 20:9-17; Gillespie Errata, at entries for pages 17-19).

## ARGUMENT

I. **Plaintiff Is Not Entitled to Draft Reports and Communications of Dr. Gillespie.**

Drafts of an expert report are not discoverable. Fed. R. Civ. P. 26(b)(4)(B). Nor are communications between counsel and an expert witness discoverable, except to the extent that they relate to compensation for the expert's study or testimony, identify facts or data supplied by counsel and considered by the expert, or identify assumptions provided by counsel and relied on by the expert. Fed. R. Civ. P. 26(b)(4)(C). Notwithstanding these clear and unambiguous rules, Plaintiff argues that she is entitled to drafts of Dr. Gillespie's report and *all* of his communications with counsel because she alleges that Dr. Gillespie did not write his report. She is mistaken: authorship of an expert's report has nothing whatsoever to do with the work product protection conveyed by Rule 26(b)(4)(B) and Rule 26(b)(4)(C).

As explained above, Dr. Gillespie wrote his own report.[6] Even if he had not authored any part of it, though, Rule 26(b)(4)(B) and Rule 26(b)(4)(C) would continue to apply work product protection to draft reports and communications in exactly the same way. *See United States Commodity Futures Trading Comm'n v. Newell*, 301 F.R.D. 348, 352 (N.D. Ill. 2014); *United States ex rel. Wall v. Vista Hospice Care*, 319 F.R.D. 498, 510 (N.D. Tex. 2016). As *Newell* explained, an inquiry into authorship of a report would require disclosure of precisely the sort of information that Rule 26(b)(4)(B) and Rule 26(b)(4)(C) were enacted to protect. 301 F.R.D. at 352. Thus, *Newell* rejected the argument that authorship impacts discoverability as being inconsistent with the purpose of the 2010 Amendments to Rule 26 (the "2010 Amendments"). *Vista Hospice Care*, which Plaintiff inexplicably cites as *support* for her position, cited *Newell* in holding that the work product protection of Rule 26(b)(4)(B) and Rule 26(b)(4)(C) is *not* waived even when an attorney has written the *entirety* of an expert's report. 319 F.R.D. at 510.

Plaintiff relies on *Johnson* for the proposition that "[w]hen counsel takes over the expert's function, it cannot be fairly said that the report was 'prepared' by the expert – and the work product doctrine does not apply." 2018 WL 1508482, at *4 n.1 (citing *Bekaert Corp. v. City of Dyersburg*, 256 F.R.D. 573, 578 (W.D. Tenn. 2009)). However, the *Johnson* court explicitly acknowledged that that statement was mere dicta. *Johnson*, 2018 WL 1508482, at *4 & n.1 (providing the court's would-be ruling to a question that is admittedly not presented). Indeed, it is part of a footnote that cites over a dozen cases and analyzes none of them. That lack of analysis led the *Johnson* court to overlook a critical flaw in this statement: the quote on which Plaintiff relies is drawn from *Bekaert Corp.*, a case decided in 2009, prior to the 2010

---

[6] The fact that counsel provided clerical assistance does not alter this fact. *See Johnson v. City of Rockford*, 2018 WL 1508482, at *4 n.1 (N.D. Ill. March 27, 2018) ("Without doubt, counsel can assist in the preparation of the expert report."). Courts have specifically approved counsel's typing of a report for an expert who did not have a secretary. *See id.* (citing *Paliwoda v. Showman*, 2013 WL 5938027, at *4 (D. Kan. Nov. 6, 2013)).

Amendments that expressly extended the current broad protections of Rule 26(b)(4)(B) and Rule 26(b)(4)(C). *See Newell*, 301 F.R.D. at 350-51. As *Newell* explained at length, the very purpose of the 2010 Amendments was to "*change* the law about discovery regarding drafts of expert reports and counsel's communication with the expert." *Id.* at 352 (emphasis in original). Thus, the pre-2010 statement of law on which Plaintiff relies is no longer a correct statement.

One further point of clarification is in order. Plaintiff cites out of context several portions of *Vista Hospice Care* that hold draft reports discoverable, but *only if they are themselves communications that meet one of the exceptions listed in Rule 26(b)(4)(C)(i)-(iii)*. 319 F.R.D. 508. As discussed above, *Vista Hospice Care* most certainly does *not* hold that authorship of an expert's report impacts discoverability of draft reports or communications. It merely declines to apply heightened protection to facts, data, or assumptions that are communicated to an expert by way of a draft report. Critically, *Vista Hospice Care* expressly explained that those portions of draft reports that do more than identify facts, data, or assumptions are *not* discoverable. 319 F.R.D. at 508-509. In short, communications are discoverable under Rule 26(b)(4)(C) whether they are in the form of a draft or not; however, a draft that is discoverable on that basis should be heavily redacted such that it ends up looking something like a reliance list (which has already been produced by Dr. Gillespie in this case).

In summary: the protections of the current Rule 26(b)(4)(B) and Rule 26(b)(4)(C) are not waived regardless of how much or how little of a report an expert has personally written. Dr. Gillespie wrote his report, but that is not something on which the Court needs to rule in order to decide this Motion. Rule 26(b)(4)(B) and Rule 26(b)(4)(C) apply to Dr. Gillespie's drafts and communications exactly as they do to any other expert in this case who has generated a report. The question of precisely what is due from the experts in this case is taken up below, in response

to Plaintiff's demand for further production in response to Request No. 3 (which tracks the language of Rule 26(b)(4)(C)).

**II.     Plaintiff Has Never Properly Requested the Identity of the Person(s) Who Provided Clerical Support for Dr. Gillespie's Report.**

Plaintiff cites *Johnson* for the proposition that the identity of persons who assisted in drafting an expert's report is discoverable. Pl.'s Mem. at 14. However, it is inapplicable here because Plaintiff has never sought the identity of the typist(s) of Dr. Gillespie's report through discovery. In *Johnson*, the movant had requested the identity of a report's typist at deposition. *Johnson*, 2018 WL 1508482, at *3. The responding party objected and instructed the witness not to answer. *Id.* Because the court felt the objection was improper, the responding party was ordered to provide the information that had been asked. Here, though, Plaintiff never asked the identity of the typist(s) or the person(s) who provided Dr. Gillespie with clerical support via written discovery or oral questioning at deposition. There is therefore no discovery request on this issue to which this Court could order Cook and/or Dr. Gillespie to respond.

Even if Plaintiff had made a proper request, it should be denied. Discovery of the identity of a person who provided clerical support (or even more pervasive assistance) can only lead to the sort of argument over authorship that was explicitly forbidden by *Newell* and *Vista Hospice Care*. Plaintiff cites no case to the contrary other than *Johnson*, a non-published, non-binding case on a very narrow issue that was wrongly decided. The only issue presented was "whether the [responding party] should be forced to identify who typed those portions of [the expert's] report that he admittedly did not type." *Id.* at *4. In answering that question, the court stressed that the report in question was not a draft but a final report that was disclosed to the opposing party. *Id.* at *5. The court's obvious implication is that the work product protection had been waived when the document in question was disclosed. However, that reasoning does

10

violence to the work product protection afforded to drafts and communications under Rule 26(b)(4)(B) and Rule 26(b)(4)(C): ever since computers replaced typewriters, the typist of a final report *is* the typist of the drafts that led to the final report.  The *Johnson* court appears to have understood this and felt the need to justify its holding in light of *Newell* and *Vista Hospice Care*. *See Johnson*, 2018 WL 1508482, at *5-6.  The court cited both *Newell* and *Vista Hospice Care* as authorizing discovery of *facts, data, and assumptions* communicated via draft reports, while failing to recognize that both cases rejected a request for other information about the *drafting process itself* as contrary to the purpose and policy of Rule 26(b)(4)(B) and Rule 26(b)(4)(C). *Compare id. with Newell*, 301 F.R.D. at 352; *Vista Hospice Care*, 319 F.R.D. at 510.  *Johnson*'s failure to appreciate *Newell*'s reasoning is further underscored by its reliance on a 2005 case as authorizing cross-examination of an expert regarding the drafting process – despite *Newell*'s detailed explanation of how the 2010 Amendments were specifically meant to *change* the outcome of earlier cases on the subject.  *Id.* at *7 (citing *Fid. Nat. Title Ins. Co. v. Intercounty Nat. Title Ins. Co.*, 412 F.3d 745, 750 (7th Cir. 2005)).  In short: *Johnson* is flatly inconsistent with *Newell*, *Vista Hospice Care*, and the purpose and policy of the 2010 Amendments.  It should be rejected as erroneous and non-binding authority.

    **III.**    **No Further Response to Request Nos. 3, 5, and 6 Is Due Under the Parties' Agreement to Narrow Discovery.**

Plaintiff facially demands further response to Request Nos. 3, 5, and 6 attached to her deposition notice to Dr. Gillespie.  However, Cook's response to Request No. 5 explicitly notes that there are no responsive documents.  Cook's Response and Objections to Plaintiff's Notice to Take the Videotaped Oral Deposition of Defense Expert David Gillespie, MD with Schedule A Request for Documents [Dkt. No. 9217-3].  Cook's response to Request No. 6 promised to

11

produce responsive documents at the deposition (which they were). *Id.* at Request No. 6. Perhaps this is why Plaintiff does not treat these requests in any depth in her Motion.

As to Request No. 3, Plaintiff correctly notes that documents that would normally be discoverable under Rule 26(b)(4)(C) have been withheld in this case. That is because the parties have agreed not to exchange communications between counsel and expert witnesses. Other documents have been withheld by *both* parties as to *all* expert witnesses in response to this very same language. For example, Cook included the following request for production in its deposition notices of Plaintiff's expert Gregory Gordon, M.D.:

> 3. Any correspondence, e- mails, or other communications between yourself and any third party that pertain to this litigation and the issues related to it. Correspondence, e- mails, or other communications with the attorneys for Plaintiffs shall be produced if and only if those communications:
> a. Relate to compensation for your study or testimony;
> b. Identify facts or data that Plaintiffs' attorneys provided and that you considered in forming your opinions expressed in your report; or
> c. Identify assumptions Plaintiffs' attorneys provided and that you relied upon in forming your opinions. See Fed. R. Civ. P. 26(b)(4)(C).

First Amended Notice of Video Deposition of Gregory I. Gordon, M.D. at Request No. 3, attached as **Exhibit D**. Note that this is essentially the same language Plaintiff used in her request of Dr. Gillespie. *Compare id. with* Notice to Take the Videotaped Oral Deposition of Defense Expert David Gillespie, MD [Dkt. No. 9217-2] at Request No. 3. In responding to that identical request, Plaintiff made the very same work product objection that she now faults Cook for making:

> Response: Plaintiff objects to this request as it is vague and overbroad. The Plaintiff objects to the request as it exceeds the scope of permissible discovery and seeks materials which are protected work product pursuant to Fed. R. Civ. P. 26(3)(A) & (B) and (b)(4)(B) & (C). Subject to and without waiving this objection, Plaintiff responds as follows: None.

Plaintiff's Response to Amended Notice of Video Deposition of Gregory I. Gordon, M.D., dated June 7, 2018, at Response to Request No. 3, attached as **Exhibit E**. Notably, Plaintiff then

denied the existence of any discoverable documents whatsoever – she did not even cite to a reliance list, as Cook did, to identify the documents that her counsel provided to Dr. Gordon and which he considered.  But that is patently untrue if there is no agreement: Dr. Gordon admittedly relied on facts, data, and assumptions from counsel in writing his report.  Indeed, an entire exhibit of his written report was prepared exclusively by counsel and included in his report, despite that he did not know its origin.  Gordon Dep. at 256:22-257:6; 262:3-24 (noting that he did not prepare Exhibit 2 of his report himself, but it was "a sheet that was handed to me" and was "selected by the lawyers").

Dr. Gordon is by no means exceptional in this regard.  For example, Plaintiff's experts Drs. Fishbein and Krumholz answered the same question in exactly the same way, by citing work product protection under Rule 26(b)(4)(B) and Rule 26(b)(4)(C) and then denying the existence of any discoverable documents.  Response to Notice of Video Deposition of Michael C. Fishbein, MD, dated May 30, 2018, attached as **Exhibit F**; Response to Notice of Video Deposition of Harlan Krumholz, MD, dated June 21, 2018, attached as **Exhibit G**.  These omissions demonstrate Plaintiff's repeated reliance on the parties' agreement to narrow expert discovery.

**IV.     Plaintiff Is Not Entitled to Re-Depose Dr. Gillespie or Depose the Typist(s) of His Report.**

As a clear afterthought, Plaintiff's Conclusion "requests that the Court order Defendants to produce Dr. Gillespie and all authors and typists of his report for deposition within a reasonable time after production of the aforementioned documents." Pl's Mem. at 17-18.  This request is not preceded by any argument whatsoever and should be summarily rejected.  She provides neither a legal justification for such discovery nor a description of the topic(s) to be addressed at any such depositions.  As to Dr. Gillespie, she fails to explain why she should be provided a second deposition when she has already had a full and fair opportunity to question

13

him at length.  As to the "typists of his report," she asks this Court to compel production of witnesses for deposition on unspecified topics, after the close of discovery, when she is not even entitled to know their identities (see above).  This subtle demand for wholly unjustified and unspecified relief should be denied.

## V. Plaintiff Should Not Be Awarded Reasonable Expenses or Attorney's Fees.

Finally, Plaintiff asks the Court to award her reasonable expenses and attorney's fees under Federal Rule of Civil Procedure 37(a)(5)(A).  However, expenses and fees are available only if a motion is granted or if the requested discovery is provided after the filing of a motion.  As set forth herein, the Motion should be denied in its entirety.

Moreover, the Court "must not order [sanctions]" if Cook's "nondisclosure, response, or objection was substantially justified" or "other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii).  Cook has not withheld any documents or discovery to which Plaintiff even arguably is entitled except for communications that are due under Rule 26(b)(4)(C).  As to those documents, Cook has withheld them only pursuant to an agreement between the parties that has spared extensive motion practice to this point.  Even if the Court orders further discovery despite the parties' mutually beneficial agreement, Cook's justification for withholding document is substantially justified, and imposing sanctions would be unjust.

## CONCLUSION

For the reasons stated above, the Cook Defendants respectfully request that the Court deny Plaintiff's Motion in its entirety. Dr. Gillespie wrote his report, but the Court need not decide that issue because it has no bearing whatsoever on what is discoverable under Rule 26(b)(4)(B) and Rule 26(b)(4)(C).  Documents and information relating to Dr. Gillespie are no more discoverable than those relating to any other reporting expert in this case.

Cook agrees that Dr. Gillespie, like Plaintiff's experts in this case, has withheld documents that would otherwise be discoverable under Rule 26(b)(4)(C) pursuant to an agreement between the parties' lead counsel that was reached more than a year ago.  Because of that agreement, though, neither Dr. Gillespie nor Plaintiff's experts owe further discovery. Thus, Plaintiff's Motion should be denied.

Even if the Motion is not denied in its entirety, though, Plaintiff's request for expenses and attorney's fees should be denied because Cook has clearly acted with substantial justification in demanding that Plaintiff honor the parties' agreement.

Respectfully submitted,

/s/ Andrea Roberts Pierson
Andrea Roberts Pierson (# 18435-49)
Jessica Benson Cox (# 26259-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-Mail:  jessica.cox@faegrebd.com

James Stephen Bennett (# 22869-02)
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana  46802
Telephone: (260) 424-8000
Facsimile: (260) 460-1700
stephen.bennett@faegrebd.com

*Counsel for the Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2018 a copy of the foregoing was filed electronically and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

/s/ Andrea Roberts Pierson