**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND                Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION                                   MDL No. 2570

_____

This Document Relates to the Following Actions only:

*Brand v. Cook Medical, Inc. et al.*,
Case No. 1:140cv006018-RLY-TAB

_____

**COOK DEFENDANTS' REPLY TO MOTION TO EXCLUDE
EXPERT OPINIONS OF DR. REBECCA BETENSKY**

This is a case about whether Cook's Celect filter is defectively designed. Plaintiff concedes that Dr. Rebecca Betensky's testimony cannot be used to establish defective design. But she knows that a lay jury would certainly <u>believe</u> (incorrectly) that it can be. Thus, Plaintiff strives to get the evidence admitted. The argument that she has settled on—that Dr. Betensky's testimony will help support a <u>different</u> expert's testimony on an <u>unrelated</u> subject—is a non sequitur. Not only would the testimony not help the jurors, as Rule 702(a) requires, it would confuse the jury and leave them to assume that the conclusion to be drawn from the testimony is the very conclusion that Dr. Betensky says <u>cannot</u> be drawn from her opinions. The Court therefore should exclude Dr. Betensky's opinions under Rule 702.

**I.     Dr. Betensky's Testimony Comparing the Perforation Rates of Celect and Tulip Is Inadmissible Because It Would Not Be Helpful to the Jury under Rule 702(a) and Would Be Far More Unfairly Prejudicial Than Probative Under Rule 403.**

Plaintiff goes to lengths to make Dr. Betensky's opinions look very technical and "science-y," when in fact they are quite simple. Dr. Betensky takes Cook's own internal records and merely observes the ratios of reported perforation rates for Celect to the rates for Tulip over certain time periods. For example, if Celect had a perforation rate of 0.15% for a particular time period and Tulip had a perforation rate of 0.03% for the same time period, Dr. Betensky observes that the ratio of 0.15 to 0.03 is 5. She did no independent calculations of those rates, but simply compared them to one another through division.

Where things get troublesome is when one asks why these ratios are relevant. It turns out that they are relevant only if the jury uses them in a manner that Dr. Betensky herself testified would be <u>wrong</u>, which would be to "prove" the Celect's design was the cause of the difference. Thus, the evidence should not be admitted.

**A.   The testimony would not help the jury, as Rule 702(a) requires.**

One's initial reaction is that if Celect perforates 5 times more than Tulip, it must be due to its different design. But Dr. Betensky specifically testified that she <u>is not</u> saying that—indeed, that she <u>cannot</u> say that based on the data she is reviewing. She testified that her calculations cannot be used to show that the Celect's design caused it to perforate more frequently (albeit still rarely—0.15% is 15 out of every 10,000) than the Tulip. *See* Deposition of Rebecca Betensky, PhD, dated April 21, 2017 ("Betensky April Dep.") at 204:21-205:8 at Dkt. 8609-2. This is because, as Dr. Betensky admits, her analysis does not account for potential alternative causes of the Celect's perforation rate, otherwise known as "confounders." *See id.* at 202:9-203:5. And Plaintiff concedes this point, as she must. She says that "[e]vidence of [the] Celect's increased perforation rate is not offered to prove some technical defect in the design of the Celect filter." Pls.' Resp. Br. at 2-3 at Dkt. 9189.

2

If (as Dr. Betensky testified and Plaintiff concedes) the evidence cannot be used to support a defect claim, the question is why it is relevant—and how it would help the jury decide a relevant issue—<u>at all</u>. Plaintiff's answer: it will "support the opinions of Dr. Krumholz that the OUS study 'had a flawed design, was poorly conducted, had poor outcome assessment, contained selective and misleading reporting, withheld critically important information, and misrepresented data, among other serious issues.'" *Id*. at 3.

This makes no sense. There is no logical connection between Dr. Betensky's calculations of incidence of perforation based on Cook's internal documents and Dr. Krumholz's opinions about how a specific study was conducted. Dr. Betensky's comparison of perforation rates for the Celect and Tulip over certain time periods has no bearing on the OUS study, and in fact is derived from different data sets altogether. The disconnect is apparent when one looks at the structure of Dr. Betensky's report. The first nine pages are almost exclusively concerned with her calculations of the ratios of perforation rates from Cook's documents. *See* Ex. A, Expert Report of Rebecca Betensky. PhD, dated April 30, 2018, ("Betensky Rept.") at Dkt. 8609-1.  The last four pages, on the other hand, focus almost exclusively on her analysis of OUS study data. *Id.* Dr. Betensky's report does not allege that the two sections are related, and Plaintiff never explains how Dr. Betensky's analyses comparing perforation rates for the Celect to the Tulip over certain periods of time has any relation to the conduct of the OUS study. That is because no logical explanation exists.

With a concession that Dr. Betensky's calculations are not relevant to the central question of design defect, and no sensible explanation of how the calculations somehow support Dr. Krumholz's opinions about the conduct of the OUS study, Plaintiff is left with no legitimate reason to offer Dr. Betensky's calculations.

Let us be honest about what Plaintiff is really after: she wants the jury to reach the very conclusion that Dr. Betensky says the jury <u>cannot</u> reach based on her calculations—*i.e.*, that the Celect's design causes it to perforate more frequently than the Tulip. This is apparent from her argument in support of offering the evidence notwithstanding its lack of relevance to any legitimate issue. She argues that the testimony should come in because the jury "should be alarmed by the differences between Celect and Tulip perforation rates." That is precisely the problem that Cook is highlighting here. The only reason for the jury to be "alarmed" by the differences in perforation rates would be if the differences were a result of the <u>design</u> of the Celect filter. But Dr. Betensky said that is the very conclusion that <u>cannot</u> be drawn from her calculations.

Expert testimony that invites the jury to draw a conclusion the expert herself says the jury cannot legitimately draw from her opinions obviously would not help the jury "understand the evidence" or "determine a fact in issue." Fed. R. Evid. 702(a). The Court should therefore exclude these opinions from trial.

### B. The testimony would be more unfairly prejudicial than probative under Rule 403.

For the same reasons, Dr. Betensky's testimony about comparative perforation rates should be excluded under Rule 403. The only way the evidence would be relevant would be if it were misinterpreted by the jury. Thus, any probative value is substantially outweighed by the danger that it will "unfair[ly] prejudice" Cook, "confus[e] the issues," and "mislead[] the jury." Fed. R. Evid. 403. The temptation to draw the inference that the design of the Celect is the cause of the higher perforation rate would be irresistible. As discussed above, even Plaintiff herself succumbs to that temptation, despite her own expert's warning not to.

Plaintiff tacitly acknowledges as much by suggesting that the Court should give a limiting instruction. Pls.' Resp. Br. at 3, 10-11 at Dkt. 9189. But "'[t]he naive assumption that prejudicial effects can be overcome by instructions to the jury" is one that "all practicing lawyers know to be unmitigated fiction.'" *Bruton v. United States*, 391 U.S. 123, 129 (1968) (quoting *Krulewitch v. United States*, 336 U.S. 440, 453 (1949) (Jackson, J., concurring)). Limiting instructions are not a cure-all for dealing with prejudicial evidence. *See* Fed. R. Evid. 105, Advisory Committee Notes (1972). And it is not a cure-all here. The solution to dealing with evidence like this isn't to let it in but tell the jurors that they cannot draw the only conclusion that Plaintiff wants them to draw from it; the solution is not to allow the evidence in the first place. Rule 403 would be a dead letter otherwise.

## II. Dr. Betensky's Methodology Is Unreliable Because It Depends on Data Cherry-Picked by a Biased Source.

Plaintiff quibbles with Cook over the source of Dr. Betensky's data, but it is a useless quibble. Plaintiff says that Dr. Betensky got the data not from Plaintiff's counsel, but from Dr. Krumholz's research assistant (one of Plaintiff's paid experts). Pls.' Resp. Br. at 7 at Dkt. 9189. Plaintiff misses the point. Whatever the exact source of Dr. Betensky's information, the point is that the information was cherry-picked by someone with an interest to select only the cherries that favor Plaintiff. And because Dr. Betensky did not review the underlying data, she had no way of knowing whether what Dr. Krumholz's research assistant gave her was complete or representative. *See* Betensky April Dep. at 55:5-14, 138:15-21 at Dkt. 8609-2. Given the importance of the accuracy of the underlying data to her analysis, at a minimum it would have been prudent for her to examine the adverse-event and case reports herself. *See St. Louis Equal Hous. Opportunity Council v. Gordon A. Gundaker Real Estate Co.*, 130 F. Supp. 2d 1074, 1088 (E.D. Mo. 2001)

(excluding expert opinion where an expert statistician failed to review the underlying data for accuracy). She did not do that.

Plaintiff also complains that Cook cited testimony from Dr. Betensky's deposition in the *Hill* case, rather than this case. *See* Pls.' Resp. Br. at 7 at Dkt. 9189. The reason for that is simple: the comparison of perforation rates in Dr. Betensky's *Brand* report are virtually identical to her odds ratio opinions in her *Hill* report (the main difference is that Dr. Betensky corrected some errors in her *Hill* report). *Compare* Dkt. 8609-1 (Dr. Betensky's *Brand* Report) *with* Dkt. 5672-1 (Dr. Betensky's *Hill* Report). Dr. Betensky essentially admits as much. *See* Deposition of Rebecca Betensky, PhD, dated July 2, 2018, (Betensky July Dep.") at 22:5-23:8 (attached hereto as Exhibit A). Because Cook already deposed Dr. Betensky on her perforation-rate-comparison calculations in *Hill*, Cook used the deposition in this case to focus on Dr. Betensky's new opinions relating to the OUS study. Cook felt it would be a waste of everyone's time to re-depose Dr. Betensky on opinions that Cook had already had an opportunity to explore (Plaintiff's counsel undoubtedly would have objected if Cook had done otherwise). Rather than re-ask every question, Cook simply asked Dr. Betensky whether she read her prior (*i.e.*, *Hill*) deposition, which she had, and whether she had anything she wanted to clarify or change from that deposition. *Id.* at 23:9-29:7. Although Dr. Betensky offered a few clarifications in relation to her prior deposition testimony, none of those clarifications affected the portions of the *Hill* deposition that Cook cited, nor does Plaintiff allege that they did. Plaintiff's complaint on this issue is an unfounded distraction and irrelevant to the merits of Cook's motion.

**III.  Plaintiff Fails To Explain How Dr. Betensky's Comparison of Different People's Assessment of Perforations in the OUS Study Based on Different Definitions of Perforation Will Help the Jury Under Rule 702(a).**

The other opinion of Dr. Betensky's that Plaintiff wants to offer is that three sets of people—one of Plaintiff's other experts, a former Cook employee, and the doctors who conducted the OUS study—reached different conclusions about the number of perforations in the OUS study. That is utterly unhelpful, for three reasons.

The first is that it is *obvious* that those three sets of people counted perforations differently: one needs only to *look at their counts* to see that they are different. The jury does not need an expert to help them with that. *See Ancho v. Pentek Corp.*, 157 F.3d 512, 519 (7th Cir. 1998) (expert's testimony would not assist the jury and should be excluded where the expert does not "testify to something more than what is 'obvious to the layperson'").

The second reason is also related to obviousness: the *reason* why the three sets of people reached different counts is that they *applied different definitions of perforation* and *used different methods of measurement*. It is quite unsurprising that people applying different definitions of a phenomenon and using different methods of measuring the phenomenon (one of which the Court has already said is totally unreliable, as discussed in the next paragraph) will arrive at different conclusions about how often it occurs. Again, the jury does not need Dr. Betensky to point this out to them. *See* Fed. R. Evid. 702(a) (requiring that an expert opinion be helpful); *Ancho*, 157 F.3d at 519.

Third, the Court has already affirmatively excluded evidence of one person's (Dr. Timperman's) measurements because they were unreliable (recall that Plaintiff's counsel had Dr. Timperman use hand-marked measurements on a business card to do scientific measurements). *See* Status Conference Transcript dated, Sept. 14, 2017, at 26:8-24 at Dkt. 8607-1. Although Plaintiff denies she is attempting to skirt the Court's prior ruling, *see* Pls.' Resp. Br. at 14 at Dkt. 9189, Dr. Betensky's comparisons obviously rely on Dr. Timperman's previously excluded

assessments. Experts obviously cannot base their opinions on unreliable data. *See, e.g.*, *In re TMI Litigation*, 193 F.3d 613, 697 (3d Cir. 1999) ("If the data underlying the expert's opinion are so unreliable that no reasonable expert could base an opinion on them, the opinion resting on that data must be excluded."); *State Farm Fire & Cas. Co. v. Electrolux Home Products, Inc.*, 980 F. Supp. 2d 1031, 1048 (N.D. Ind. 2013) (same). Consequently, Dr. Betensky's opinion in this regard is not only based on invalid data, it is also a back-door attempt to sneak previously excluded evidence into trial, which the Court should reject.

Plaintiff contends that Dr. Betensky's testimony will be helpful because she will tell the jury that the difference in perforation assessments between the three sets of people is "statistically significant." Pls.' Resp. Br. at 3, 13-14 at Dkt. 9189. "Statistically significant" means simply that we "are very sure that the difference is real (i.e., it didn't happen by fluke). It doesn't mean that the difference is large or important." https://www.statpac.com/surveys/statistical-significance.htm. Cook has no intention of disputing that the differences in the three groups' assessments are "statistically significant," precisely because Cook fully agrees that it was no "fluke" that the three of them came to different assessments: they were using different definitions and different measurement methods (including one that was obviously unreliable), so not only is it not a "fluke," it is entirely *expected* that they would arrive at different counts. If all parties agree on something, there is no need for expert testimony on the subject.

Plaintiff also argues (as she did with respect to the perforation-rate-comparison testimony) that Dr. Betensky's testimony on this score will help the jury see "the implications of those disagreements [in perforation counts] for Dr. Krumholz's opinions as to the failings of the OUS study." Pls.' Resp. Br. at 3, 13-14 at Dkt. 9189. But Plaintiff does not bother to explain exactly *how* Dr. Betensky's opinions would illuminate something about Dr. Krumholz's opinions that Dr.

8

Krumholz himself cannot illuminate. Plaintiff says that Dr. Betensky's "expert quantification" will have implications for Dr. Krumholz's opinions, but she never identifies those implications, much less why they would be helpful to a jury. Similarly, Plaintiff states that "the jury needs to be told, through Dr. Krumholz and based upon Dr. Betensky's expert opinion, the *nonobvious significance* of the relevant disagreement" between the people assessing OUS study data for perforations. Pls.' Resp. Br. at 14 at Dkt. 9189 (emphasis in original). But Plaintiff never elaborates on the "nonobvious significance" that she mentions. In sum, Plaintiff offers only conclusory statements and no analysis of why Dr. Betensky should be permitted to testify as proposed.

As the Court is well-aware, the proponent of an expert "bears the burden of demonstrating that the expert's testimony would satisfy the *Daubert* standard." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). "[T]he proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence." Fed. R. Evid. 702 Advisory Committee Notes (2000 Amend.). Because Plaintiff has provided the Court with no basis to conclude that Dr. Betensky's opinions would be helpful, Plaintiff has not met the *Daubert* standard.

## CONCLUSION

Cook respectfully asks the Court to exclude the opinions of Dr. Rebecca Betensky from trial.

Dated:  October 8, 2018                             Respectfully submitted,


/s/ Andrea Roberts Pierson
Andrea Roberts Pierson (# 18435-49)
Victoria R. Calhoon (# 28492-49)
Anna C. Rutigliano (# 32743-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
andrea.pierson@faegrebd.com
victoria.calhoon@faegrebd.com
anna.rutigliano@faegrebd.com

Charles F. Webber (Minn. # 215247)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-8719
Facsimile: (612) 766-1600
chuck.webber@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2018, a copy of the foregoing **COOK DEFENDANTS' REPLY TO MOTION TO EXCLUDE EXPERT OPINIONS OF DR. REBECCA BETENSKY** was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Counsel for Defendants will serve any non-CM/ECF registered parties.

/s/ *Andrea Roberts Pierson*