IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

This Document Relates to Plaintiff

*Tonya Brand*
No. 1:14-cv-06018-RLY-TAB

## COOK DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE EXPERT OPINIONS OF ROBERT W. JOHNSON AND JAMES A. MILLS

Plaintiff's experts Robert W. Johnson and James A. Mills (collectively "Johnson") concede that they cannot render an expert analysis on the only subject that they were asked to analyze, thus leaving them to present simple mathematical calculations based on undisputed facts as if they were the result of expert analysis. A party cannot use an expert witness to give simple facts a veneer of "expertness" in the jury's eyes. The facts should be introduced as factual evidence normally is: through fact witnesses. Thus, Johnson should not be permitted to testify at trial because his report contains no analysis of the Cook Defendants' current financial condition[1] and therefore his testimony cannot aid the jury as Rule 702(a) requires.

---

[1] The parties appear to agree that the Cook Defendants' financial condition has no relevance to Plaintiff's claim or the Cook Defendants' defenses thereto and thus is implicated – at most – only during a punitive damages phase at trial. Cook Defendants' Memorandum in Support of Motion to Exclude Expert Opinions of Robert W. Johnson and James A. Mills, Dkt. 8659 at 5; Plaintiff's Brief in Opposition to Cook's Motion to Exclude the Expert Testimony of Robert W. Johnson (Plaintiff's Brief"), Dkt. 8850 at 4.

### I.     Johnson did not "determine" the Cook Defendants' net worth.

Try as Plaintiff might to de-emphasize it, Johnson did in fact disclaim doing the precise analysis that he was retained to do. *See* Dkt. 8850, Plaintiff's Brief at 7. Johnson opens his letter by stating "My primary task was to frame, in economic terms, the financial condition of the Cook entities . . . ." Exhibits Submitted Under Seal with Cook Defendants' Memorandum in Support of Motion to Exclude Expert Opinions of Robert W. Johnson and James A. Mills ("Cook's Exhibits"), Dkt. 8661-1 at 2 and 4. Just two pages later, however, he admits that "we are unable, at this time, to render a complete opinion as to the financial condition of these entities . . . ." *Id.* at 6.

Plaintiff makes two primary arguments to try to avoid the consequences of this admission. First, Plaintiff contends that Johnson's concession as to his lack of analysis did not extend to a net-worth calculation. Dkt. 8850, Plaintiff's Brief at 7. But nothing in Johnson's report suggests that his disclaimer was limited in this way. Indeed, Johnson's own report undermines Plaintiff's attempt to limit Johnson's broad disclaimer after the fact; it lacks any analysis of a net-worth calculation and does not suggest that he has performed such a calculation. Plaintiff cites case law – not Johnson's report – to describe how net-worth computations are performed. Dkt. 8850, Plaintiff's Brief at 6. Johnson's failure to identify any methodology himself further underscores that he did not in fact use any methodology and did not perform any calculations.

Next, Plaintiff claims – incorrectly – that Johnson not only computed each of the Cook Defendants' "equity" or "net worth," he relied on a "well-recognized method" to do so. Dkt. 8850, Plaintiff's Brief at 1 and 3. This purported "sound" methodology was in fact nothing more than simple subtraction—in Johnson's own words, "using balance sheets to subtract liabilities

from assets." *Id*. At 1. Subtraction alone would not justify the need for expert testimony, but Johnson did not even do that much. Instead, he "cut and pasted" the figure (which had <u>already been calculated</u>) from the Cook Defendants' financials. Specifically, he parroted the "total equity" line from the balance sheets for the U.S. entities and the "equity" line from WCE's annual report.[2] *Compare* Dkt. 8661-1, Cook's Exhibits at 11, 18, 24 *with* WCE Annual Report excerpt, Cook, Inc. Balance Sheet excerpt, Cook Medical, Inc. Balance Sheet excerpt (attached hereto as Exhibits A-C). "When an expert's proffered opinion merely parrots information provided to him by a party, that opinion is generally excluded." *King-Indiana Forge, Inc. v. Millennium Forge, Inc.*, 1:07-cv-341-SEB-DML, 2009 WL 3187685, at *2 (S.D. Ind. Sept. 20, 2009).

With respect to WCE, Plaintiff takes issue with the Cook Defendants' concerns regarding Johnson's treatment of financials reported in Danish krone. Dkt. 8850, Plaintiff's Brief at 6-7. Yet Johnson's report says only "Currency and exchange rate data provided by the U.S. Federal Reserve and the U.S. Internal Revenue Service." He does not disclose the date of the exchange rate he applied, and he does not disclose whether or which figures on the annual reports were combined to create the categories on his slides. For example, Johnson has a slide that purportedly reflects "net sales," but there is no "net sales" (or even just "sales") category in the annual report. Dkt. 8661-1, Cook's Exhibits at 22. The same problem arises with his "cash on hand", "cash flow", "capital expenditures", and "audit and accounting fees" slides. *Id.* at 25-26; *Id.* at 2-4. Johnson does not explain what information those slides capture and why he displayed it in that manner.

---

[2] It does appear that Johnson rounded the numbers on the financial statements into simplified form on his PowerPoint slides, the way one might round $1,934,700 to $2 million. Plaintiff does not argue that such rounding justifies expert testimony.

Johnson's failure to describe any methodology related to his purported analysis of WCE (or anything else) is dispositive. *Webber v. Butner*, No. 11-6-CV-01169-TWP-DML, 2017 WL 6508879, at *5 (S.D. Ind. Dec. 20, 2017) (excluding testimony of expert who provided no methodology or calculations underlying opinions).

**II.     The information Johnson "was able to glean" is on the face of the Cook Defendants' financials.**

Plaintiff similarly exaggerates Johnson's analysis of other categories of financial information, suggesting that he will provide the jury with information about the Cook Defendants' "cash on hand, research and development expenditures, profit by year, and pre-tax income." Dkt. 8850, Plaintiff's Brief at 3. Again, all of these categories appear on the face of the financial documents; Johnson has no information beyond the figures themselves and has done no analysis. He cannot provide any help to the jury regarding numbers he has merely seen on a page and copied into his report. *See Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 420 (7th Cir. 2005) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert").

**III.    *Yaz* is distinguishable.**

Plaintiff heavily touts the fact that Johnson was allowed to opine about Bayer's net worth in the *Yaz* litigation in 2011. Dkt. 8850, Plaintiff's Brief at 2, 9. But the *Yaz* court's decision does not fully describe the content of Johnson's report in that case, so this Court cannot determine if that report was more comprehensive than Johnson's report here. In fact, the *Yaz* decision strongly suggests the report in that case was more comprehensive. For example, the ruling makes no reference to similar disclaimers in that case that Johnson was "unable" to render an opinion. *In re Yaz Litig.*, 2011 U.S. Dist. LEXIS 145988, at *24 (S.D. Ill. Dec. 16, 2011). The

4

reasonable inference is that Johnson included no such disclaimers in that case, but instead actually did expert analysis.

The *Yaz* court also limited its analysis to whether Johnson's opinion would assist the trier of fact.  *Id*. at *21.  The court accepted his methodology for two critical reasons that are absent here:  Johnson apparently (1) stated <u>how</u> he computed Bayer's net worth, (2) performed actual computations. *Id.* at * 21 n.7, 22.  Here, Johnson did neither.  *Yaz* is therefore distinguishable and does not support the admission of Johnson's proposed testimony here.

## CONCLUSION

For the reasons stated above, the Cook Defendants respectfully ask the Court to exclude from the trial in this action the testimony of Plaintiff's experts Robert Johnson and James Mills.

Respectfully submitted,

/s/*Andrea Roberts Pierson*
Andrea Roberts Pierson (# 18435-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com

James Stephen Bennett (# 22869-02)
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana  46802
Telephone: (260) 424-8000
Facsimile: (260) 460-1700
stephen.bennett@faegrebd.com

*Counsel for the Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 8, 2018, a copy of the foregoing was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.  Lead Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

/s/*Andrea Roberts Pierson*

US.120109876.04