UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND             Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS   LIABILITY LITIGATION                        MDL No. 2570

This Document Relates Only to the Following Case:

Tonya Brand – 1:14-cv-06018-RLY-TAB

**REPLY IN SUPPORT OF COOK DEFENDANTS' MOTION
TO EXCLUDE TESTIMONY OF JAMES CARLSON, Ph.D.**

Plaintiff's response to the Cook Defendants' motion to exclude the testimony of former Cook employee and metallurgist Dr. James Carlson fails to address the *Daubert* objections the Cook Defendants raised on a number of topics. Specifically, Plaintiff offers no response to Cook's objections to Dr. Carlson's proposed testimony concerning:

- Dr. Carlson's role "in attempting to prevent filters from fracturing in the future";
- Dr. Carlson's knowledge about "[d]esign aspects / Development / Testing of the Celect filter, particularly with respect to forces/stresses placed upon it by tilt and perforation, cyclic fatigue";
- Dr. Carlson's knowledge about "[d]esign aspects / development of the Celect Platinum";
- Dr. Carlson's knowledge about "[c]hanges Cook could have made to reduce rate of perforation"; and
- Dr. Carlson's knowledge about "[the] incidence of . . . tilt, perforation, and fracture. Forces/stresses placed upon the filter by tilt and perforation, cyclic fatigue."

*See* Plaintiff's Opposition to Cook Defendants' Motion to Exclude Expert Opinions of James Carlson, Ph.D. ("Plaintiff Opposition"), Dkt. 9140, *passim*; Plaintiff's Designation of Experts and Opinion Testimony, Dkt. 8618-1, Ex. A, p. 13. Plaintiff's failure to address the Cook Defendants' objections to these topics waives any opposition to the objections, and the Court should therefore exclude all testimony from Dr. Carlson regarding these topics.

The entirety of Plaintiff's opposition brief attempts to defend and justify Dr. Carlson's opinions regarding "the relationship between tilt, perforation, and fracture," opinions that relate to a handful of evaluations that Dr. Carlson performed on fractured Cook IVC filters involving patients other than Ms. Brand. (*See* Plaintiff Opposition, Dkt. 9140, *passim*.)  As Plaintiff describes it, "the purpose of Dr. Carlson's testimony is to establish the relationship between tilt, perforation, and fracture that Dr. Carlson identified through his analyses," and that "there is a relationship between tilt, perforation, and fracture is a fact that would obviously assist the jury in determining whether the Celect is defective." (Plaintiff Opposition, Dkt. 9140, pp. 6-7.)  Plaintiff disclosed no Rule 26(a)(2)(B) report for Dr. Carlson.

The opinions from Dr. Carlson that Plaintiff seeks to offer regarding the relationship between tilt, perforation, and fracture primarily concern medical and design issues.  But Plaintiff does not dispute:

- That Dr. Carlson is not a physician, a biomedical engineer, a biostatistician, an epidemiologist, or a mechanical engineer;
- That he had no formal coursework in human anatomy beyond high school biology;
- That he was not involved in the design or design testing for any Cook IVC filter; or
- That he did not examine Plaintiff Tonya Brand's filter.

The Court should exclude Dr. Carlson's testimony regarding his evaluation of a handful of fractured Cook IVC filters and his opinions regarding the relationship between tilt, perforation, and fracture. His opinions are not based in any relevant expertise, are not the product of a reliable methodology, and would not be helpful to the jury.

I.  **Dr. Carlson's Testimony and Opinions Regarding the Relationship Between Tilt, Perforation, and Fracture Go Well Beyond His Perceptions Based on His Ground-Level Involvement as a Former Cook Employee and Metallurgist.**

Plaintiff contends that "Dr. Carlson's opinions all directly relate to his ground-level involvement while at Cook" and "Dr. Carlson's testimony is entirely based on his experience as Cook's senior metallurgist and his examination of fractured filters." (Plaintiff Opposition, Dkt. 9140, p. 13.) Plaintiff is simply wrong.

As a metallurgist with experience in materials science, Dr. Carlson's role with respect to Cook IVC filters was limited to three discrete areas: (1) developing the material specification for the Elgiloy metal used in manufacturing filter's wires; (2) assisting in resolving manufacturing or production-related issues for the Celect IVC filter; and (3) performing failure analysis on a handful of fractured Cook IVC filter complaints from a materials science perspective only. (Deposition of James Carlson, Ph.D. ("Carlson Dep. I"), June 22, 2017, Dkt. 8620-1, at 49:8-50:14.) Contrary to Plaintiff's assertions that Dr. Carlson's opinions "all directly relate to his ground-level involvement while at Cook" and are "based on his experience as Cook's senior metallurgist and his examination of fractured filters," Dr. Carlson made clear that determining the root cause for the filter fracture was not within his responsibility or expertise:

> Q. So far in the reports we've read, we've discussed regarding the cause of various filter fragments, I haven't seen any reference to the doctor's placement. If that was determined to be the cause, would it be in the report?
> A. My report as the metallurgist?
> Q. Yeah, the report on the root cause of the problem.
> A. **Well, that was kind of out of my level of responsibility. I was responsible to deal with the fractography and then report those findings up the -- the ladder**.

(Carlson Dep. I, Dkt. 8620-1, at 52:6-15; 124:3-14 (emphasis added).) Dr. Carlson was not involved in analyzing tilt or perforation in Cook IVC filters or in designing the Celect IVC filter

3

or any other Cook IVC filter. (*Id*. at 82:5-13; 108:12-16; 124:22-125:4.)  Accordingly, Dr. Carlson's testimony and opinions regarding the relationship between tilt, perforation, and fracture go well beyond his ground-level involvement in his role as a former Cook employee and metallurgist.

As this Court recognized in *Hill*, "[a] former employee may [only] be a non-retained expert for the purposes of Rule 26(a)(2) if he is a percipient witness and is testifying based upon his personal knowledge of the facts or data at issue in the litigation." (*See* Dkt. 6916, *Hill* Order on Plaintiff's Motion to Exclude the Testimony of Cook's Non-Retained Expert Brian Choules, Ph.D. (quoting *Guarantee Tr. Life Ins. Co. v. Am. Med. & Life Ins. Co.*, 291 F.R.D. 234, 237 (N.D. Ill. 2013).) "If he testifies beyond the scope of his observation, however, he is treated as a retained expert and must provide a written report pursuant to Rule 26(a)(2)(B)." (*Id*. (citing *Martin v. Stoops Buick*, 2016 WL 4088132, at *1 (S.D. Ind. 2016).)

Because Dr. Carlson's testimony and opinions regarding "the relationship between tilt, perforation, and fracture" go well beyond his personal knowledge and involvement as a former Cook employee and metallurgist, Plaintiff's summary disclosure is inadequate. Plaintiff was required to provide a written report pursuant to Rule 26(a)(2)(B), but failed to do so. As a result, Dr. Carlson's testimony should be excluded for that reason alone. However, even if the Court finds Plaintiff's summary disclosure to be adequate, Dr. Carlson's opinions must still be excluded under *Daubert* as explained below.

**II.   Dr. Carlson Is Not Qualified to Testify or to Offer Opinions Regarding the Relationship Between Tilt, Perforation, and Fracture.**

Dr. Carlson is a metallurgist with experience in materials science and fracture analysis of metals from a materials perspective only. (*See* Plaintiff Opposition, Dkt. 9140, p. 3 ("Dr. Carlson is a metallurgist--'an engineer that has dedicated his career [and] education to the understanding

of metallic elements and/or alloys…that encompasses everything from the melting of the material all the way through its final finished form.").)  Indeed, Plaintiff concedes that "Dr. Carlson is not a physician, biomedical engineer, biostatistician, epidemiologist, mechanical engineer, or expert in finite element analysis or human anatomy." (*Id*. at 4-5.)  Plaintiff further concedes that "Plaintiff has not designated Dr. Carlson as a non-retained expert because he is a filter design engineer, anatomical specialist, or any of the other myriad things he is not." (*Id*. at 10.)

According to Plaintiff, "none of the areas for which Plaintiff has designated Dr. Carlson as an expert require Dr. Carlson to be a physician, epidemiologist, and so forth." (*Id*. at 5.) Plaintiff claims Dr. Carlson is qualified to testify about the relationship between tilt, perforation, and fracture because of his "direct experience at Cook as a metallurgist." (*Id.* at 4.)  But Dr. Carlson's own testimony contradicts this claim, making clear that his views about "the relationship between tilt, perforation, and fracture" are outside his area of expertise as a metallurgist.  Dr. Carlson testified:

> Q. Okay. And how much tilting is required such that the stress will result in fracture?
> A. **I don't -- I'm a metallurgist. I couldn't really comment on that.**
>
> ****
>
> Q. Was the Celect filter designed to withstand the forces that would occur when the filter tilts and perforates the IVC?
> MR. BENNETT: Objection; asked and answered.
> BY MS. BAUGHMAN:
> Q. If you know.
> A. **Well, that's out of my area of expertise, and I would like to respectfully decline answering the question because I'm a metallurgist and not a mechanical engineer.**
>
> ****
>
> Q. Why does the filter tilt?

5

| | | |
|---|---|---|
| A. | **Well, again, I'm a metallurgist and not a medical doctor.** | |
| Q. | I understand that. But you -- you were involved in trying to figure out why these filters were fracturing, right? | |
| A. | **Right. And, again, speaking as a metallurgist and not a medical doctor for the court and this record**, one of the reasons why these filters were tilted was they weren't placed properly by the doctor. | |

****

| | |
|---|---|
| Q. | What other reasons are there for a Cook Celect filter tilting? |
| A. | Well, I mean -- |
| | MR. BENNETT: Objection; lacks foundation. |
| | BY THE WITNESS: |
| A. | **Yeah, that's out of my realm of expertise.** |

****

| | |
|---|---|
| Q. | What about tilt, do you know which is more likely to tilt, the Tulip or the Celect? |
| | MR. BENNETT: Objection; foundation. |
| | BY THE WITNESS: |
| A. | **No. Again, I'm a metallurgist and not a medical doctor.** |

(Carlson Dep. I, Dkt. 8620-1, at 77:3-6; 97:13-22; 112:1-11; 113:2-8; 153:19-24 (emphasis added).) Dr. Carlson agreed that medical device design and root cause analysis related to filter fractures require specialized knowledge and expertise concerning a product's design and its interaction with the human anatomy. (Deposition of James Carlson, Ph.D. ("Carlson Dep. II'"), August 25, 2017, Dkt. 8620-2 at 286:1-23.) As Plaintiff admits, Dr. Carlson does not have this specialized knowledge and expertise.

Dr. Carlson lacks the qualifications to testify or offer opinions regarding the relationship between tilt, perforation, and fracture, and the Court should exclude his testimony on this issue.

**III.   Dr. Carlson's Testimony and Opinions Regarding the Relationship Between Tilt, Perforation, and Fracture Are Unreliable.**

Plaintiff contends that Dr. Carlson employed a reliable methodology in "repeatedly recogniz[ing] that tilt, perforation, and fracture are interrelated adverse-event phenomena."

(Plaintiff Opposition, Dkt. 9140, pp. 8-9.) However, the "methodology" that Plaintiff refers the Court to is the process that Dr. Carlson used to individually evaluate a handful of filter fracture complaints from a metallurgical perspective. (*Id*.) Plaintiff cannot and does not point to any methodology used by Dr. Carlson to form his opinions regarding whether there is a general relationship between tilt, perforation, and fracture with respect to Celect IVC filters. That is because Dr. Carlson's opinions are not based on any methodology at all.

Instead, Plaintiff attempts to extrapolate a general relationship between tilt, perforation, and fracture based on the handful of filter fracture complaints that Dr. Carlson evaluated. Indeed, Plaintiff repeatedly asserts that Dr. Carlson's testimony is relevant "in determining whether the Celect is defective" and "to show that the Celect has a design defect… ." (*Id.* at pp. 6, 7.) However, Dr. Carlson's limited evaluation of filter fractures evaluations does not allow for such a broad or general conclusion regarding the existence of a relationship between tilt, perforation, and fracture with respect to Celect IVC filters. Dr. Carlson admitted this himself:

> Q. **Previously Plaintiff's counsel asked you questions about a handful of complaints or reports you analyzed involving fractured Celect IVC filter wires. Do you remember that?**
> MS. BAUGHMAN: Objection; leading and form.
> BY THE WITNESS:
> A. **Yes.**
> BY MR. BENNETT:
> Q. Do you recall testifying about a possible pattern between the tilt, perforation and fracture in those complaints?
> MS. BAUGHMAN: Objection; form.
> BY THE WITNESS:
> A. Yes. I'd like to clarify for the Court that --
> BY MR. BENNETT:
> Q. Let me -- let me ask you a question first.
> A. Okay.
> Q. **When you used the word "pattern" during your previous testimony, what did you mean?**
> A. **I meant that in the very few fractures that I looked at over my ten-year career, which was actually less than ten, we observed a set of**

| | | |
|---|---|---|
| | | **identical -- identifiable characteristics in the fracture process, such as tilt, perforation and fracture.  They didn't always occur.** |
| Q. | | **Were you using the word "pattern" to describe a -- a general pattern with the IVC filters?** |
| | | MS. BAUGHMAN:  Objection; form. |
| | | BY THE WITNESS: |
| A. | | **No.  It was just a rarely identified event.** |
| | | BY MR. BENNETT: |
| Q. | | And you were talking about those handful of cases? |
| A. | | Right. |
| | | MS. BAUGHMAN:  Objection; leading. |
| | | BY THE WITNESS: |
| A. | | Less than ten cases that I looked at. |

****

BY MR. BENNETT:
Q. **So does tilt, in -- in your experience, always lead to perforation?**
MS. BAUGHMAN:  Objection; foundation.
BY THE WITNESS:
A. **No.**
BY MR. BENNETT:
Q. **In your experience, does perforation always lead to fracture?**
MS. BAUGHMAN:  Objection; leading, foundation, form.
BY THE WITNESS:
A. **No, it doesn't.**

(Carlson Dep. II, pp. 436:6-437:20; 438:20-439:7, attached hereto as **Exhibit 1**.)  Notably, Plaintiff's counsel lodged a foundation objection to Dr. Carlson's testimony regarding whether there existed a general pattern or relationship between tilt, perforation and fracture.  Plaintiff's response here does an about-face and urges that Mr. Carlson's testimony is admissible "to establish the relationship between tilt, perforation, and fracture" and "to show that the Celect has a design defect, especially given the relationship between tilt, perforation, and fracture." (Plaintiff Opposition, Dkt. 9140, pp. 7-8.)  In fact, Dr. Carlson's opinions regarding the relationship between tilt, perforation, and fracture are not based on any methodology at all.

Moreover, Dr. Carlson's testimony demonstrates that any views or opinions he has are not based on any data or analysis of the adverse event rates or the fracture rates for Cook IVC filters. Specifically:

- He did not analyze every Cook IVC filter that fractured during his employment with Cook;[1]

- He does not have in his possession nor did he attempt to analyze the data on how often Cook IVC filters fracture;[2]

- His job responsibilities did not include keeping track of adverse event or fracture rates for Cook IVC filters;[3]

- He was not involved in evaluating how much force the metal for the Celect IVC filter could withstand before it would fracture; that evaluation was handled by the finite element analysis and bench testing teams during the design process;[4]

- He was not involved in trying to determine possible causes for perforation or penetration;[5] and

- He was not involved in analyzing tilt or perforation in Cook IVC filters.

(Carlson Dep. I, Dkt. 8620-1, at 108:12-16; 124:22-125:4.) In short, the views stated in Dr. Carlson's testimony are not based on any methodology at all, much less a reliable one. Dr. Carlson's supposed "expert" testimony does not meet the Rule 702 standard and should be excluded.

**IV.    Dr. Carlson's Testimony and Opinions Regarding the Relationship Between Tilt, Perforation, and Fracture Are Irrelevant to *Brand* and Unfairly Prejudicial.**

Plaintiff contends that "Dr. Carlson's testimony is relevant to show that the Celect has a design defect, especially given the relationship between tilt, perforation, and fracture." (Plaintiff Opposition, Dkt. 9140, pp. 6-7.) Plaintiff is wrong, and Dr. Carlson's testimony at issue would

---

[1] Carlson Dep. I, Dkt. 8620-1, at 52:20-24; Carlson Dep. II, Dkt. 8620-2, at 453:18-454:6.
[2] Carlson Dep. I, Dkt. 8620-1, at 53:23-54:2; Carlson Dep. II, Dkt. 8620-2, at 453:18-454:6.
[3] Carlson Dep. II, Dkt. 8620-2, at 453:3-12; 453:18-454:6.
[4] Carlson Dep. I, Dkt. 8620-1, at 83:10-16.
[5] Carlson Dep. I, Dkt. 8620-1, at 123:5-22.

9

not assist the jury in deciding that or any other issue.

As an initial matter, Dr. Carlson did not examine or evaluate Plaintiff Tonya Brand's fractured filter. (Carlson Dep. I, Dkt. 8620-1, at 61:5-20.) The failure analysis work that Dr. Carlson performed was of fractured Cook IVC filters implanted in a handful of other patients. This work is irrelevant to Ms. Brand's case because the circumstances for every patient are different, and Plaintiff makes no showing that the other fractures that Dr. Carlson analyzed were substantially similar to the fracture that occurred in Plaintiff's filter. *See Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1268-69 (7th Cir. 1988) (upholding exclusion of evidence of other accidents where offering party had not demonstrated sufficient similarity to accident at issue). Plaintiff contends that "the filters that Dr. Carlson analyzed have several key facts in common with Tonya Brand's filter: they are all Cook Celect filters, and they all tilted and/or perforated, and then fractured...." (Plaintiff Opposition, Dkt. 9140, p. 7.) However, the mere fact that the other complaints that Dr. Carlson evaluated involved fractured Celect IVC filters is simply not enough to demonstrate substantial similarity to the fracture that occurred in Plaintiff's filter.[6] Specifically, Plaintiff fails to demonstrate that the other fractures Dr. Carlson analyzed were implanted in patients similar to Tonya Brand, under similar circumstances, remained in vivo for similar durations of time before fracturing, and fractured in similar locations on the filters. *See, e.g., Nachtsheim v. Beech Aircraft Corp.,* 847 F.2d 1261, 1268 (7th Cir.1988); *see also Ross v. Black & Decker, Inc.,* 977 F.2d 1178, 1185 (7th Cir.1992). ("[B]efore such evidence will be admitted, the proponent must show that the other accidents occurred under *substantially similar circumstances.*" (emphasis in original)).

---

[6] Moreover, the Court in *Hill* granted in part the Cook Defendants' motion in limine to bar testimony or evidence of complaint files, ruling that Plaintiff could not offer individual complaint files into evidence. *See* Court's Order on Cook Defendants' Omnibus Motions in Limine, Dkt. 6850. The Cook Defendants intend to ask the Court for that same ruling in *Brand*, which would bar Plaintiff from playing Dr. Carlson's testimony about individual complaints.

In light of this, any conclusions a jury might draw from Dr. Carlson's analysis of other fracture complaints would be speculative at best, a fact that Dr. Carlson himself noted. (Carlson Dep. I, Dkt. 8620-1, 141:12-24.)  The Court should exclude Dr. Carlson's opinions regarding the relationship between tilt, perforation, and fracture and his testimony about his evaluation of unrelated filter fractures as irrelevant and unhelpful to the jury.  *See* FED. R. EVID. 401, 402, 702(a).

Plaintiff also maintains that danger of unfair prejudice, misleading the jury, wasting time, or needlessly presenting cumulative evidence does not outweigh the probative value of Dr. Carlson's testimony regarding the relationship between tilt, perforation, and fracture. *See* FED. R. EVID. 403.  Once again, Plaintiff is wrong.  Specifically, Plaintiff contends that "the point of Dr. Carlson's testimony…is to establish the relationship between tilt, perforation, and fracture–not necessarily the rates of those adverse events" and "not to litigate the minutiae of complaints not at issue in this case." (Plaintiff Opposition, Dkt. 9140, p. 7.)  However, Dr. Carlson's own testimony (which Plaintiff made a foundation objection to) makes clear that he believes there is no general pattern or relationship with Cook IVC filters involving tilt, perforation and fracture. (Ex. 1 at 436:6-437:20; 438:20-439:7.)  In Dr. Carlson's words, "[i]t was just a rarely identified event."  (Ex. 1 at 437:12-13.)

Plaintiff's attempt to use Dr. Carlson's testimony "to establish the relationship between tilt, perforation, and fracture" would therefore be extremely misleading and prejudicial because it overtly misstates his opinions.  To the extent that Plaintiff believes there is general relationship between tilt, perforation, and fracture with respect to Celect IVC filters, Plaintiff should rely on her engineering experts to support that theory, not Dr. Carlson's unreliable opinions.

Plaintiff's obvious and only purpose in designating a significant volume of testimony from Dr. Carlson about a handful of fracture complaints involving patients other than Ms. Brand is to mislead and confuse the jury into concluding that the incidence of fracture is much higher than it actually is.  Dr. Carlson's proposed testimony about filter fractures unrelated to Ms. Brand would be confusing to the jurors, leading them to falsely infer that these other fracture complaints have some relevance to Ms. Brand's claims, and would unnecessarily prolong the trial by forcing Cook to offer rebuttal testimony and evidence on fracture complaints that have nothing to do with this case.

Finally, the unfair prejudice of Dr. Carlson's testimony is magnified by Dr. Carlson's status as a former Cook employee. Given the utter absence of qualification or methodology for this testimony, as described above, the admission of ex-employee Dr. Carlson's testimony on these issues would be unfair to Cook and unduly prejudicial.

**V.   Dr. Carlson's Testimony Must Comply With *Daubert* Even If His Testimony Is Deemed a Statement By a Party-Opponent.**

Plaintiff spends the last section of her opposition brief explaining why she believes Dr. Carlson's testimony is not hearsay and should be admissible as an opponent-party statement despite the fact that Dr. Carlson is a former Cook employee.  (Plaintiff Opposition, Dkt. 9140, pp. 13-14.)  The Cook Defendants agree with Plaintiff that "these motion papers are not the proper place to address hearsay arguments," and the Cook Defendants will submit separate objections to Plaintiff's deposition designations for Dr. Carlson by the agreed deadline to do so and hereby incorporate by reference all of their forthcoming objections. (*Id*. at 13.)  However, the law is clear that even in cases where the expert testimony at issue comes from an employee of a party-opponent, that testimony must still comply with *Daubert* and its progeny.  *See Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756, 763 (7th Cir. 2003) ("The plaintiff has made no

argument why admissions should always be free from the requirements of Rule 701(c), Rule 702 and *Daubert*. And in this particular case, we see no good reason why unqualified and unreliable scientific knowledge should be exempted from the expert evidence rules simply because the speaker is an employee of a party-opponent."); FED. R. EVID. 701 advisory committee note, 2000 Amendments ("Rule 701 has been amended [to include subsection (c)] to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing."). For the reasons explained in the Cook Defendants' initial motion, memorandum in support, and this reply brief, Dr. Carlson's testimony fails to comply with the requirements set forth in *Daubert* and its progeny and must be excluded.

## CONCLUSION

The Court should exclude the testimony of James Carlson, Ph.D., on the issues listed above from the trial in this action.

Respectfully submitted,

Dated: October 8, 2018

*/s/ Andrea Roberts Pierson*
Andrea Roberts Pierson (# 18435-49)
Jessica Benson Cox (#26259-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
Email:  andrea.pierson@faegrebd.com
Email:  jessica.cox@faegrebd.com

James Stephen Bennett (# 22869-02)
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana 46802
Telephone: (260) 424-8000
Facsimile: (260) 460-1700
stephen.bennett@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 8, 2018, a copy of the foregoing was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Co-Counsel for Defendants will serve any non-CM/ECF registered parties.

                                                         */s/ Andrea Roberts Pierson*