# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION


| | |
|---|---|
| IN RE: COOK MEDICAL, INC., | ) |
| IVC FILTERS MARKETING, SALES | ) Cause No. |
| PRACTICES AND LIABILITY, | ) 1:14-ML-2570-RLY-TAB |
| LITIGATION | ) Indianapolis, Indiana |
| | ) **July 24,** 2018 |
| | ) 5:24 p.m. |
| | ) |


**Before the Honorable**
**RICHARD L. YOUNG**

OFFICIAL REPORTER'S TRANSCRIPT OF
STATUS CONFERENCE




**For Plaintiffs:**                              Ben C. Martin, Esq.
                                                LAW OFFICES OF BEN C. MARTIN
                                                3710 Rawlis St., Suite 1230
                                                Dallas, TX   75219


                                                Joseph N. Williams, Esq.
                                                RILEY WILLIAMS & PIATT, LLC
                                                301 Massachusetts Avenue
                                                Indianapolis, IN   46204


                                                Michael W. Heaviside, Esq.
                                                HEAVISIDE REED ZAIC
                                                910 17th Street NW, Suite 800
                                                Washington, D.C.   20006

For **Defendants:**                Andrea Roberts Pierson, Esq.
                                   Jessica Benson Cox, Esq.
                                   FAEGRE BAKER DANIELS LLP
                                   300 N. Meridian St., Suite 2700
                                   Indianapolis, IN  46204


                                   Charles F. Webber, Esq.
                                   FAEGRE BAKER DANIELS LLP
                                   90 S. 7th Street
                                   Minneapolis, MN  55402


                                   J. Stephen Bennett, Esq.
                                   BAKER & DANIELS LLP
                                   111 E. Wayne Street, Suite 800
                                   Fort Wayne IN  46802


Court Reporter:                    Margaret A. Techert
                                   United States District Court
                                   101 NW Martin Luther King Blvd.
                                   Evansville, Indiana  47708


              PROCEEDINGS TAKEN BY MACHINE SHORTHAND
          TRANSCRIPT CREATED BY COMPUTER-AIDED TRANSCRIPTION

```
 1                        (In open court.)

 2            THE CLERK:  All rise.

 3            THE COURT:  I apologize for the delay.  It's just

 4   one of those days.  In any event, we're here today in re:

 5   Cook Medical, Inc., IVC Filers Marketing, Sales Practivces and

 6   Product Liability Litigation, docket number 2570.  The parties

 7   are here.  Joe Williams, Ben Martin and Mike Heaviside are

 8   here for the plaintiff.  Jessica Cox, Andrea Pierson, Chuck

 9   Webber and Steve Bennett are here for the defense, and we're

10   here for our monthly status.

11            Tina, the courtroom deputy, informs me that you have

12   been able to -- during the wait here, you have been able to

13   talk and maybe have some resolution of some of these issues

14   that are listed on the agenda; and then we're certainly here

15   as long as you need us to be here for any other matters that

16   need to be taken care of here today.

17            Mr. Williams, you wish to start us off here?

18            MR. WILLIAMS:  Sure, Your Honor.  As we were

19   meeting, we thought -- and I spoke with Ms. Pierson, rather

20   than keep the Court and the Court staff here for an

21   extraordinarily long time, we thought we could just deal with

22   a couple of issues today that are of a bit of an immediate

23   nature.

24            THE COURT:  Sure.

25            MR. WILLIAMS:  The remainder of them I think we can
```

```
 1   handle by a telephone hearing at the Court's convenience.  The
 2   first issue, actually Mr. Martin is going to address, is our
 3   motion to exclude, strike, Dr. Uberoi, the witness in London,
 4   whose deposition is tentatively scheduled for August 3rd
 5   across over in England.
 6              THE COURT:  Mr. Martin, how are you?
 7              MR. MARTIN:  I'm great, Your Honor.  Good afternoon.
 8              THE COURT:  Good afternoon.
 9              MR. MARTIN:  This should be fairly short, I think,
10   for both sides.  So Roman Uberoi is an expert, has been
11   suggested and has been designated as an expert on behalf of
12   Cook.  Dr. Uberoi is an interventional radiologist.
13   Dr. Uberoi is in London, which I think has some relevance
14   here.  Dr. Uberoi, other than the treating physicians -- I
15   could be corrected, but I believe other than the treating
16   physicians in the case, and maybe a couple that we also object
17   to on other grounds, but Dr. Uberoi is the only doctor or
18   expert who has not -- is not really a treater, who they did
19   not file an expert report for.
20              So, in other words, Dr. Rheudasil, the implanting
21   physician, Cook didn't file an expert report for but he's a
22   treating physician; and the law is pretty clear that a
23   treating physician can talk about things within their purview
24   that directly relate to their --
25              THE COURT:  What they did.
```

```
1            MR. MARTIN:  What they did, right.

2            THE COURT:  Exactly.

3            MR. MARTIN:  Dr. Uberoi, he is a stranger to this

4   case insofar as he's not a treating physician.  He's not -- he

5   is a stranger to the case save and except for one thing and

6   one thing only with respect to this case, and I would argue

7   that it's not with respect to this case.  It's with respect to

8   something outside; and that is, that the Court has -- recalls

9   the OUS study, which is a clinical trial that really brought

10   the -- ultimately brought this filter to the market, and the

11   OUS study then turned into the Lyon publication; and the Lyon

12   publication was a published article in the latter part of 2009

13   and the Lyon publication -- Lyon publication was simply the

14   published portion of the study that was the OUS study.  There

15   we go.

16            The only connection with this case that Dr. Uberoi

17   has -- he's not a treating physician.  He's anything but a

18   person who happened to be an author, one of the authors -- and

19   I believe there were nine of them, if I'm not mistaken.  I

20   could be corrected.  Nine authors or so in the Lyon

21   publication, Uberoi is one of them.  He's an interventional

22   radiologist.

23            And the second thing is -- the only other connection

24   he would have with anything related to this case is that he

25   was one of the -- I guess my understanding today is, from a
```

1 principal investigator of the case, he was one of the

2 interventional radiologists who actually had some of these

3 patients in the study.  That's it.  And we think that the law

4 is that that is not enough for Cook to not provide an expert

5 report.  There's no reason that they couldn't have provided an

6 expert report.  He fits the definition of a retained expert.

7          If I could, Your Honor.  This is -- this is my

8 PowerPoint.  Dr. Uberoi's designation and this was without --

9 without any sort of -- I guess this designation is without

10 anything except what they had put in their paperwork and no

11 report.

12          Four things Uberoi's designated for, the OUS study

13 in the Lyon publication.  I just told the Court the entirety

14 of his knowledge about that and what he did.  Has nothing to

15 do with her specific case.  He has nothing to do with her case

16 insofar as the fact that she had a fractured filter and the

17 fact that the filter caused her damages; and if you look at

18 that aspect of the case, he is a stranger to her case.  He

19 wouldn't know Tonya Brand from anybody until this case, and

20 they brought -- evidently brought Tonya Brand's case to him

21 for an opinion.  They should have provided a report.

22          No. 2, participation in other studies.  That he's

23 going to testify to participation in other studies.  The

24 closest thing they get to anything related to Tonya Brand's

25 fracture is the OUS study and Lyon publication.  I've already

1  made my argument there, Your Honor.  Participation in other

2  studies.

3          Retrievability.  He can testify as to retrievability

4  and performance of IVC filters.  He's going to testify that

5  the Celect is retrievable and has a low complication rate.

6          3 and 4, those are things that he's -- those are

7  expert witness opinions.  Participation in other studies,

8  whether it's the British Journal Registry article or whether

9  it's any article, I don't think it's proper for them to bring

10  an expert to trial, who has not given a report, and say he's

11  going to talk about his participation in other studies.  All

12  I'm saying is had he given us a report, then he would probably

13  be able to testify and I'd not be filing Daubert motions or

14  something like that, but we certainly wouldn't be filing a

15  motion to strike his testimony.

16          The other reason, Your Honor, is that he should not

17  be allowed -- we should not have to go to London to take this

18  guy's deposition.  I showed the Court the four things he said

19  he's going to testify to.  We turn over here and -- he says

20  he's going to testify that safety and efficacy of IVC filter.

21  I'm going to get specifics so I'm not misstating it.

22          He's going to testify the Celect is retrievable, has

23  a low complication rate, and the retrievability and

24  performance of IVC filters.  Look at this, Your Honor.  They

25  have six experts who are going to talk about efficacy.  Six

1   experts who efficacy is in their report; Dr. Gillespie,

2   Morris, Robertson, Dr. Virmani, Dr. Foreman, five of them,

3   excuse me, plus Dr. Uberoi.

4          Low complication rate.  There's Uberoi talking about

5   low complications.  Dr. Fryzek, Dr. Robertson, Dr. Morris,

6   Dr. Gillespie, Dr. Foreman, all of them.  We deposed them all.

7   They talk about complication rate.  And finally, that the IVC

8   filters and the Celect, most perforations are asymptomatic;

9   Gillespie, Morris, Foreman, Virmani, and now they want Uberoi

10  to be their fifth.

11         Your Honor, I'll tell the Court that I have asked

12  that Cook take down -- the Court may -- the Court may recall

13  last year about this same time, the lawyers for Cook asking

14  this Court to make us, make the Plaintiffs pull down either

15  some of their experts or part of what some of their experts

16  have to say because it's cumulative.  I don't know if the

17  Court remembers that or not.  I believe -- I believe the Court

18  does.  And guess what?

19         THE COURT:  Makes sense I would do that.

20         MR. MARTIN:  And guess what?  We did.  We pulled

21  experts down completely and we pulled -- and we pulled, at the

22  request and actually at the demand of Cook, we pulled down the

23  cumulative testimony.  We've tried to ask Cook to do the same

24  thing and they have refused and the answer is, we are not

25  going to pull down anybody and we're not going to pull down

1    anybody's testimony in any part.

2            Therefore, we've been taking depositions and we

3    have -- we're taking one more doctor.  We've taken all the

4    cumulative testimony and that's what we're dealing with.  So

5    No. 1, OUS and Lyon publication, that's -- I understand that

6    it's part of what Cook based its -- its placement of the

7    filter on the market and probably its clearance on the market

8    for retrievability was this OUS study.  I get it.

9            But Dr. Uberoi doesn't know Ms. Brand.  Second,

10   third and fourth is what we showed on the paperwork just a few

11   minutes ago that this is nothing but a retained expert without

12   a -- without a report and there's no reason.  We still don't

13   know why there's no report.  And finally, it's -- everything

14   he says other than the OUS -- other than the OUS, everything

15   he says is cumulative and we will be approaching the Court

16   with a cumulative motion, just about like the defense had last

17   time; and we haven't yet filed one but I think it's time at

18   this point to suggest that we certainly don't need to be

19   flying to London for somebody to -- for the sixth time, to

20   talk about efficacy, low complication rate, and the safety and

21   efficacy of IVC filters, which is exactly what they're wanting

22   him to do.

23           THE COURT:  Thank you, Mr. Martin.

24           MR. MARTIN:  We would ask, Your Honor, if the Court

25   does -- if the Court does indeed order that we take this

```
1    deposition, we would certainly want the Court to consider that
2    possibly the expenses to get over there next week, which is
3    the deposition would be taking place next Thursday -- I think
4    a week from Thursday or Friday, and we would suggest to the
5    Court that we would hope that we would not need to go there or
6    have to go there but that certainly maybe the Court would
7    think about that aspect if, in fact, the Court orders --
8    orders the deposition to be taken place.  Thank you.
9               THE COURT:  Ms. Cox.
10              MS. COX:  Hi.  I will be brief and slow.  Mr. Martin
11   raises an issue about cumulative testimony.  That wasn't
12   actually in the brief.  They mentioned the cumulative nature
13   of Dr. Uberoi's testimony was a concern because he was talking
14   about the OUS study and they had mentioned --
15              THE COURT:  You've got five doctors talking about
16   efficacy and low complications.  Do you really need a sixth?
17              MS. COX:  And my point on that is if he's going to
18   file a motion about that, that's something we do need to have
19   a discussion about, but we weren't prepared to talk about
20   today and seems like a separate issue.  I can tell you
21   flipping back to what we intend to talk to Dr. Uberoi about.
22              THE COURT:  I can tell you if it's cumulative
23   testimony, if that's what's going to be presented by
24   Dr. Uberoi, then you'll have to take him down.  It's the same
25   thing that happened with the Plaintiffs.
```

1           MS. COX:  Correct.

2           THE COURT:  It's just -- we're not going to go for

3    days and days and the jury hearing the same testimony from the

4    same -- from several different witnesses.  They hate that.

5           MS. COX:  I agree.

6           THE COURT:  It's unnecessary.

7           MS. COX:  I a hundred percent agree.  So if we talk

8    about the four things in Dr. Uberoi's designation, basically

9    Dr. Uberoi was a participant in the OUS study.  The OUS study

10   is what we heard a lot about at the Hill trial.  It's

11   something that their experts point to as showing was something

12   that should have discovered a defect, and that the defect in

13   the filter caused an injury to Mrs. Brand.

14           Dr. Uberoi is the only person on the Plaintiffs'

15   witness list or the Defendants' witness list that was actually

16   involved in the study.  They've deposed marketing people about

17   the study.  They deposed other people at Cook that had

18   tangential relationships to the study but no one's ever talked

19   to anyone involved in the study.

20           So we don't think this testimony is cumulative at

21   all or we wouldn't be wasting anyone's time.  No one has ever

22   talked to anyone who actually participated.  He's an

23   interventional radiologist.  He's the one that actually did

24   the testing on the Celect filter in the OUS study and that's

25   the testimony that we're seeking in this case.

1    He actually didn't do a report because if you've

2 read the Plaintiffs' briefing, if you are a fact witness who

3 happens to be an expert, you are considered a non-retained

4 expert and you don't have to do a report.  Dr. Uberoi isn't

5 going to be testifying on anything besides stuff that he has

6 firsthand knowledge of, things that he did, testing he did on

7 the Celect filter prior to the litigation ever being filed.

8    He's not going to be talking about Mrs. Brand.  He's

9 going to be talking about the tests that he actually did on

10 the Celect filter, the OUS study.  He actually did another big

11 test study on lots of different filters.  The British Registry

12 that we heard a little bit about last time was the only

13 registry that we have in England that studies filters.  He's

14 the one that put all that together.  So everything that he's

15 going to be talking about is it's fact -- it's fact testimony

16 but he happens to be an expert.  So he wasn't necessarily

17 required to do a report.

18    In fact, it would have been improper to do a report

19 because he wasn't specifically retained for the litigation.

20 We didn't give him information about Mrs. Brand and he's not

21 coming in to just talk about:  Oh, I think filters are great

22 or oh, I think filters work.  We have an expert for that.

23 We've already named Dr. Gillespie.  We named people who are

24 going to be talking about general issues about safety and

25 efficacy of a Celect filter.  We're going to take a fact

witness deposition and he happens to be an expert.

THE COURT:  His testimony will focus only on the OUS study?

MS. COX:  His testimony will focus on the work he has done on the Celect filter and other IVC filters prior to the start of this litigation.  So the OUS study and his work in the British Registry, and any filter related testing and publications he's done prior to start of the litigation.  It's not going to be hypotheticals about Mrs. Brand or anything that we've given him outside of the context of things he knew before the litigation.  So we're going to be very focused.

And in our summary disclosure per the rule, we wanted to make sure we had the context set out of anything that he might say per the rule, a summary disclosure; and just like the Downey case and the Malibu Media cases, if someone is a fact witness that happens to be an expert, they can give expert testimony.  We had to set out the context of why he's an expert.  Why would he have been the one actually testing the Cook Celect filter in the OUS study.

So we might have to do a little bit of background.  How did you come to be a tester of the Celect?  Like a little bit of leeway on the background would be appreciated, but we don't intend to belabor the issues.  We have experts to talk about safety and efficacy.  We need fact testimony.  We need to show the jury why he was credentialed enough to actually be

1   testing the filter.  But beyond that, I think any cumulative

2   arguments about it being cumulative are something that we can

3   take up after we have the deposition.

4            And in terms of the expense that Mr. Martin raised,

5   we -- unfortunately, Dr. Uberoi isn't willing to come here for

6   the deposition but we've asked him to come to our London

7   office, and we've offered to Plaintiffs' counsel to do a video

8   conference.  They would only have to go to our office in

9   Indianapolis and I would be happy to like personally make the

10  arrangements if they want to send the exhibits or whatever,

11  but I'm happy to set up so they can participate by video

12  conference to help defray some expense.

13           THE COURT:  Okay.

14           MR. MARTIN:  Thank you.  May I approach, Your Honor?

15           THE COURT:  You may.

16           MR. MARTIN:  Here's my concern, Your Honor.  My

17  concern is -- and I wrote down, when the Court was asking

18  counsel about kind of the cumulative testimony, I wrote down:

19  And he's going to testify as to any of his filter related

20  publications and work, or something pretty close to that.  I

21  was writing fast.

22           All right.  That leads to everything, anything

23  related to his filter related publications and work.  This

24  deposition, if it goes, and if the Court's ruling is that he

25  can't get into efficacy or retrievability performance of IVC

1  filters and all that stuff, if that truly is going to be the

2  Court's ruling, then if we --

3  THE COURT:  He can get into those areas but the

4  other docs can.  They can have two or three of these witnesses

5  testify about retrievability and low complication rate but

6  only five.

7  MR. MARTIN:  So what I've done, Your Honor, is I've

8  provided the Court -- had my office this afternoon go through

9  each of their expert reports so I could make certain that I

10 was being accurate with the Court to tell the Court which

11 expert has talked about efficacy, which expert has talked

12 about safety, and then there's some overlap of safety and

13 efficacy.  That's what overlap means.  And they were not able

14 to actually complete this because there were a lot more

15 opinions and a lot more experts -- or some more expertise.

16 Gillespie, Morris, Robertson and Virmani, they got

17 to four out of the six of them and Fryzek.  So they got to

18 five out of the six of them, Your Honor.  And here's -- the

19 Court can see the very specific -- specific things in their

20 reports that confirm exactly what I said about the cumulative

21 nature of their testimony in their reports.

22 Here's the position we're kind of put in is, we're

23 going to fly to London, I guess, if, in fact, that's what

24 happens and we'll --

25 THE COURT:  If the deposition is going to go, what's

```
 1   wrong with doing the video -- doing a video dep?

 2             MR. MARTIN:  Actually, we could do -- we could do a

 3   video deposition from here, Your Honor, but this is going to

 4   be an important witness and I think that -- I mean, I think

 5   that we'd want to be there for this witness so we can -- we

 6   participated in one other deposition by video of a witness

 7   that was in Copenhagen in this case, and it was just a little

 8   bit more difficult to take the deposition you wanted to take

 9   and it's just not the same being there and --

10             THE COURT:  I understand that but how much

11   different?

12             MR. MARTIN:  It's important enough to where I would

13   spend my own dime to do it, if it's going to be taken over

14   there.  The actual -- the actual cost of it and the efforts to

15   it, Your Honor, is less important to me than the actual -- the

16   actual deposition being taken, given the fact that I think

17   they ought to --

18             THE COURT:  You indicated it's all cumulative except

19   for the OUS study.  My understanding is that's what the

20   deposition is going to be about is the OUS study.

21             MR. MARTIN:  Actually -- actually, Dr. Morris --

22   actually, I took the deposition of Dr. Morris and he talked

23   about the OUS study in his deposition.  Probably spent, I

24   don't know how many pages of his deposition.

25             THE COURT:  Did he participate in that?
```

1          MR. MARTIN:  He didn't participate.

2          THE COURT:  But this doctor participated in the OUS

3    study.

4          MR. MARTIN:  There are actually two authors of that

5    study who have been deposed already; Jen Brown was an author

6    of the study and she was actually the one that drafted -- that

7    was a principal drafter of the study.  Jen Brown's deposition

8    has been taken a couple of times.  We've also taken the

9    deposition of Bill Vorhees.  Dr. Vorhees was also an author of

10   the study.  So this will be the third witness out of the eight

11   or nine that are on -- as authors of that study that will have

12   been deposed if Dr. Uberoi testifies.

13         So if -- Your Honor, I'll sit down in a second.  My

14   only suggestion is this.  That if -- if the deposition is

15   taken, if that deposition is allowed to go forward, then could

16   we have an order that restricts what Dr. Uberoi is allowed to

17   testify to?  Again, it's not any different than what we were

18   asked to do last year, and the only difference is that we were

19   asked to do it and we pulled experts down before they all had

20   to give their depositions.  We've taken a bunch of depositions

21   of a bunch of experts who have talked about the same thing.

22         If Dr. Uberoi is going to be allowed to testify --

23   and Your Honor, yes, the answer is as far as cumulative

24   testimony, other than Dr. Morris and Dr. Brown talking about

25   the OUS study, and other than Dr. Vorhees, there's only been

```
 1   three -- there have only been three witnesses deposed in this

 2   case who have talked about the -- about the OUS study.  Dr.

 3   Uberoi will be, I guess, the third or the fourth.  So -- but

 4   if he's allowed to testify about the OUS study, could we have

 5   an order -- my request would be simply that we have an order

 6   that he not be able to get into efficacy, low complication

 7   rate, safety of IVC filters, the things that these other

 8   experts have testified to, and that the Court can see on this

 9   page -- on these pages is accurate as being pulled right off

10   of their reports.

11              THE COURT:  Thank you.

12              MR. MARTIN:  We can make some suggestions to the

13   Court in an order as to how we think it ought to be -- ought

14   to be put together.

15              MS. COX:  I'll be very brief.  I think this is a

16   separate issue.  The cumulative nature of the testimony, we're

17   not at trial yet and no one wants this trial to go longer than

18   it needs to be, and no one's intending to put on witness after

19   witness to talk about the same exact thing.  We want to go to

20   England.  We're going to do this deposition once.  No one has

21   taken the deposition of anyone actually involved in this

22   study.

23              Plaintiffs have chosen to take the deposition of

24   three Cook employees to find out about what happened after the

25   study.  We want to find out what happened during the study.
```

So Cook's entitled to take a deposition to find out what happened during the study.  What happens at trial, what gets played at trial, this we've never seen.  This is an appropriate subject for a meet and confer.  I would like to talk to Mr. Martin.  I've never seen this.  This wasn't in a briefing.  Where he thinks there's a cumulative nature of expert testimony, we need to have a phone call and need to work it out like adults; and then we'll come back to the Court for some guidance before trial if we need it.  But no one wants this trial to go on longer than it needs to.

          THE COURT:  Seems to me that Dr. Uberoi would be the only witness who participated in the study and so he would -- that would be appropriate -- an appropriate area for his testimony.  However, I don't know if he needs to go into low complication rates or efficacy or those types.  I guess -- in his deposition, I guess he can.  If you're over there, I guess he can; but whether it's allowed at trial is hugely another thing.

          And if it's cumulative, more than likely it would not be allowed at trial.  But I think if he's the only participant in the OUS study and the other folks just testify about the study, what their knowledge is of the study, I think that's an area that can be -- he can testify to.

          MR. MARTIN:  One point of clarification, if I could, Your Honor.

 1          THE COURT:   Sure.

 2          MR. MARTIN:   The other folks that did participate

 3    and are authors on the study, whose depositions have been

 4    taken, are Jen Brown and Dr. Vorhees, who are Cook employees

 5    but they are actually authors on the study.   Their name

 6    appears on the study.   I just wanted to clarify that, if the

 7    Court had any question about that.

 8          And they both were asked -- Jen Brown was asked

 9    extensively, lots more extensively than Dr. Uberoi probably

10    will be asked, about her involvement in the study, her

11    involvement in writing the study, her different drafts.   It's

12    not about just asking about the OUS study after it was done.

13    We're talking about what was going on during the process.   So

14    that's for a bit of clarification.

15          THE COURT:   You're saying Dr. Brown participated

16    like Dr. Uberoi?

17          MR. MARTIN:   Dr. Brown participated in lots more

18    detail than did Dr. Uberoi.   She wrote the study.   I mean,

19    there's -- Cook does not -- Cook -- she wrote the Lyon

20    publication, and there's several drafts with metadata to

21    support it.   Cook is not denying that their own Dr. Brown

22    wrote the Lyon publication that was based upon the OUS study.

23    The only difference is that Dr. Brown did not have patients in

24    the study or, you know, didn't put -- put patients -- she was

25    not a clinical investigator but she worked for Cook.   So

1   there's more involvement with Dr. Brown.

2          THE COURT:   Uberoi wrote the clinical part of the

3   study?

4          MR. MARTIN:   She wrote the clinical.   She wrote

5   every bit of the study.

6          THE COURT:   I thought you said that she didn't

7   participate in the clinical.

8          MR. MARTIN:   She didn't participate as far as having

9   patients in it.

10         THE COURT:   Right.

11         MR. MARTIN:   Dr. Uberoi was -- Dr. Uberoi had like

12  you've got clinical investigators -- several clinical

13  investigators in the different parts of the world that had

14  patients in the study.   All he was is he happened to be a

15  clinical investigator who had some patients who participated

16  in the study.   As far as writing the -- as authorship of this

17  study, the principal author of the study of the publication --

18  the Lyon publication and the study itself with final review

19  and final draft, every one of them, that's Jen Brown.   Nobody

20  has the knowledge of OUS and the Lyon publication more than

21  Jen Brown, who is one -- and is shown on the study as being

22  the author.

23         One other -- one other thing, Your Honor.   Well, I

24  don't know that there's -- I don't know that there's an answer

25  but the truth of the matter is that this will be another

1  person if -- if we take it, he'll be another person, another

2  expert in this case without a report.  That's the problem, is

3  he ought not to be able to be asked about -- we don't think.

4  He's certainly -- if his deposition is taken about the OUS

5  study, he ought not to be able because he didn't provide a

6  report.  That's really the point.  He didn't provide a report.

7  Therefore, he can't testify -- shouldn't be able to testify,

8  according to current law, that -- as to what -- as to expert

9  opinions.

10         Talk about the OUS study and talk about the Lyon

11  publication, which has at least arguably something to do with

12  this particular -- the ground level involvement in something

13  having to do with the case.  But if they go here with him

14  being able to talk about the performance of IVC filters and

15  the low complication rate and the performance of filters and

16  the safety of filters, that is really way more than he should

17  be allowed to even testify to in deposition because they

18  didn't give us a report.

19         You know what?  There's an argument to be made.

20  I'll admit there's an argument to be made that he should be

21  able to testify about his participation in the OUS study and

22  the Lyon publication.

23         THE COURT:  That's my understanding of what they

24  want to do.

25         MR. MARTIN:  It scares me -- it scared me when they

1    suggested that they want him to be able to talk about any of

2    his publications and going into anything having to do with any

3    of his publications because his publications talk about the

4    safety and efficacy of the IVC filter.  That's my only fear,

5    Your Honor.  There is an argument to be made that the OUS

6    study and Lyon publication is something that at least has to

7    arguably do with this case and if he's allowed to testify as

8    to those things, then we'll be there.  Thank you.

9          MS. COX:  I just want to clear it up so there's no

10   confusion.  Cook did the OUS study on the Celect filter where

11   there were several clinical investigators, doctors who

12   enrolled patients and actually did the study.  Dr. Brown

13   didn't even work for Cook when the study was being conducted.

14   She came in after and helped write the results, a portion of

15   the results that later became the Lyon publication.  So she

16   was a principal author of the results, but she did not

17   actually participate in the study in any way.  We never talked

18   to anyone who participated in the study.

19         THE COURT:  That's my understanding.

20         MS. COX:  Okay.  Just wanted to make sure that that

21   was clear.

22         THE COURT:  That's the reason I'm going to let it go

23   forward on that particular area.

24         MS. COX:  And then the other -- the other thing I

25   just wanted to make sure, we have to give context for his --

1   why he is an expert, why he participated in this study but he

2   also did another study on the Cook Celect filter prior to

3   litigation, and that was the Uberoi registry; and that's

4   another test that he did on the Celect filter which we intend

5   to ask him about.  It's factual -- factually based.  He's an

6   expert that participated in it.  It preceded the litigation

7   and that was an area of inquiry that was in his disclosure.

8   Those are two separate tests that he did on the Celect filter

9   that we will be inquiring about during the deposition.  That

10  was clearly articulated in the disclosure.

11          THE COURT:  Does he have a report on that?

12          MS. COX:  He has a publication.  That's what we're

13  talking about.  He did a report on the Celect filter.  So that

14  will be an another area of inquiry.  It's factually based.  He

15  participated in it.  He happens to be an expert who did

16  testing on the Celect and we'll being asking about that as

17  well.

18          MR. MARTIN:  No, he didn't do a report.  That's the

19  point.  I think the Court was asking, did he do a report on

20  that publication or did he do a report on his work in another

21  case?  This is the other studies part of it.

22          To answer the Court's question if there was any

23  confusion, no; Dr. Uberoi didn't give us a report at all.  So

24  that's the answer to the Court's question about:  Well, did he

25  give a report?  No.  He wrote some publications.

1          And I would suggest to the Court, the very fact of

2   what counsel had just said, that he wrote this publication

3   before this case ever started, before Brand ever existed as a

4   lawsuit, is proof that he is serving as an expert in that area

5   as -- should be a retained expert who didn't give a report.

6   Because again, he's not talking about stuff that happened to

7   Tonya Brand and he's not talking about stuff that happened to

8   the clinical trial that Cook sponsored.

9          Now they want -- now it's being suggested that to

10  clarify, I think counsel said:  Well, Judge, we want to get

11  into other studies he's done.  He's probably written a hundred

12  studies.  He probably read a hundred articles.  So that's the

13  point.  OUS and the Lyon publication are arguably okay; but

14  other studies that he participated in either before or after

15  Ms. Brand had her fracture, that's not -- he should have

16  provided a report and didn't do it.

17         If they want him to talk about his expertise or

18  expertise in publications and talk about publications that

19  deal with -- I can promise they're going to want to get into

20  publications for him to talk about the retrievability and

21  performance of IVC filters.  And I just want there to be some

22  clarification and some -- in some order, essentially, Your

23  Honor, that OUS study and the Lyon publication is all this

24  man, who didn't provide a report, should be able to talk about

25  in this case because he's an expert, he didn't provide a

1    report.  There's an exception No. 1.  Thank you.

2         MS. COX:  And per the rule, an expert that's

3    retained, that has no prior knowledge of anything to do with

4    the litigation, that's recruited and paid, has to give a

5    report.  But someone who does something before the litigation

6    that happens to be an expert, that's relevant to the

7    litigation -- and here I think their claim is that the Celect

8    is defective, he did a study on the Celect to see if it was

9    defective.  It happened before the lawsuit.  He's not relying

10   on that information from anyone else and he happens to be an

11   expert.  So per the rule and the law of Downey and Malibu

12   Media, he wasn't required to give a report.  We have the

13   publication that the reported his testing and that's what

14   we're going to be asking about.

15        THE COURT:  On No. 2 there on Mr. Martin's

16   PowerPoint, he's got other studies in quotes there.  I mean,

17   you can't just put that out there, other studies.

18        MS. COX:  So how about I do my own PowerPoint?  And

19   from their brief, if you want to look on the ELMO, this was

20   our disclosure.  Dr. Uberoi will testify about the findings,

21   conclusions and other relevant aspects of various studies of

22   IVC filters in which he has participated.  This includes the

23   reports from the British Society of IVC Filter Registry

24   published in 2011 and 2013 as corrected.

25        So we don't intend to spend hours and hours talking

1   about every publication Dr. Uberoi has written.  We want to

2   know about his work that he has done on the Celect filter.

3   The Celect filter that's at issue in this case.  We want to

4   know about the facts and his expert opinions about the work he

5   did on the Celect filter, which include the OUS study and

6   looking at analyzing the British Registry, which is pretty

7   much the biggest collection of data that we have on the Celect

8   filter outside of the United States.

9           MR. MARTIN:  Your Honor, as Mr. -- as Joe reminded

10  me, the point of other publications that they're talking

11  about, the point of having him talk about the British

12  Registry, which is just another publication of his, that's all

13  it is.  The point is for them to bolster the efficacy.  So

14  they're going to talk about the British Registry which has --

15  which was done before Brand's case was ever filed, and it's

16  just -- they should have provided a report, if they wanted to

17  have him talk about what I think I heard, which is essentially

18  that he's going to talk about the British Registry so that he

19  can talk about the safety and efficacy of IVC filters and the

20  Celect filter.

21          So I would suggest, Your Honor, that the limitation,

22  if the Court moves -- allows this to move forward is the

23  limitation he can't talk about other studies.  He can talk

24  about the OUS study and Lyon publication.  And it's sounding

25  to me like we're going to get there at this deposition and

1  it's going to go way past the OUS study and the Lyon

2  publication to him talking about other studies.  I don't care

3  if it's one other study.  It's still not right.  And so they

4  want to pick one study for him to talk about the British

5  Registry, what it means, aren't IVC filters retrievable from

6  your study, Dr. Uberoi?  Aren't IVC filters safe?  Aren't they

7  efficacious?

8          And I simply want the Court to -- ask the Court to

9  provide guidance and the guidance being talk about -- he can

10  talk about the OUS study and the Lyon publication and his

11  experience.  He can talk about his experience.  He can mention

12  that he's participated in another study.

13          But getting into the details of another study that

14  has nothing to do with Ms. Brand is -- has nothing to do with

15  Cook as far as the specifics of it being the Cook sponsored

16  study that has the obvious -- obviously the import of being a

17  clinical trial that leads to its clearance.  That's different.

18          They like the British Registry study.  Okay.  Give

19  me a report and then we wouldn't have this -- we wouldn't have

20  this hearing.  I suggest that we focus on the OUS study and

21  Lyon publication or else this is just going to be -- this is

22  just going to be a bolster of their discussion of

23  retrievability, safety, efficacy, the performance of the

24  filter, low complication rate.  Thank you.

25          MS. COX:  And Your Honor, I think we -- we need this

1  fact testimony.  We would like his testimony on the areas that

2  we disclosed to counsel.  We have lots of cases in this

3  litigation.  I think no one wants to go to London more than

4  once.  I say we do the deposition and if there's things they

5  think is inappropriate or cumulative, we cross that bridge

6  once we get the testimony; but I don't see any reason why,

7  when we've clearly outlined the very specific things we're

8  going to talk to him about, that we shouldn't just ask him and

9  then fight about what comes in later.

10          THE COURT:  All right.  Dr. Uberoi will testify

11  about the OUS study and the Lyon publication.  He can testify

12  about the British Registry and if that testimony tends to be

13  cumulative, we'll strike it.

14          MS. PIERSON:  Next issue?

15          THE COURT:  Okay.

16          MS. PIERSON:  Good evening, Judge.  Thanks for your

17  time.  I'm not exactly sure where we are on the agenda.  So if

18  you don't mind, we'll address the motion to strike specific

19  rebuttal reports.

20          We filed a motion to strike certain rebuttal reports

21  that were filed by the -- served by the Plaintiffs.  And

22  Judge, you may recall that back in April of last year, when we

23  were determining the schedule for the Brand case, we talked

24  about rebuttal reports from the Plaintiffs' expert and I

25  expressed some concern that rebuttal reports are permitted in