# EXHIBIT E

```
                    Confidential - Pursuant to Protective Order

  1                  IN THE UNITED STATES DISTRICT COURT
                        SOUTHERN DISTRICT OF INDIANA
  2                         INDIANAPOLIS DIVISION

  3

        -----------------------------   )
  4     IN RE:  COOK MEDICAL, INC.      )
        IVC FILTERS MARKETING, SALES    )   Case No.
  5     PRACTICES AND PRODUCTS          )   1:14-ml-2570-
        LIABILITY LITIGATION            )   RLY-TAB
  6     -----------------------------   )
        This Document Relates to:       )   MDL No. 2570
  7     All Actions                     )
        -----------------------------   )
  8

  9

 10       CONFIDENTIAL - PURSUANT TO PROTECTIVE ORDER

 11

 12              VIDEOTAPED DEPOSITION OF

 13
                    RAMAN UBEROI, M.D.
 14

 15
                       August 3, 2018
 16

 17

 18

 19

 20

 21

 22

 23

 24

 25
```

Confidential - Pursuant to Protective Order

1    The videotaped deposition of RAMAN UBEROI, M.D.,

2    called by the Plaintiffs for examination, taken

3    pursuant to the Federal Rules of Civil Procedure of

4    the United States District Courts pertaining to the

5    taking of depositions, taken before PAMELA HENLEY,

6    Court Reporter, at the offices of Faegre Baker

7    Daniels LLP, 7 Pilgrims Street, London on August 3,

8    2018, commencing at 10:19 a.m.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Confidential - Pursuant to Protective Order

```
 1   APPEARANCES:
 2   ON BEHALF OF THE PLAINTIFFS:
 3        BARON & BUDD, P.C.
 4        3102 Oak Lawn Avenue, Suite 1100
 5        Dallas, Texas  75219-4281
 6        214-521-3605
 7        BY:  LAURA J. BAUGHMAN, ESQ.
                  lbaughman@baronbudd.com
 8
 9        LAW OFFICES OF BEN C. MARTIN, LLP
          3710 Rawlins Street
10        Dallas, Texas 75219
          (214) 761-6614
11        BY:  BEN C. MARTIN, ESQ.
                  bmartin@bencmartin.com
12
13
14   ON BEHALF OF THE DEFENDANTS:
15        FAEGRE BAKER DANIELS LLP
          300 North Meridian Street, Suite 2700
16        Indianapolis, Indiana  46204-1750
          317-237-0300
17        BY:  JESSICA BENSON COX, ESQ.
                  jessica.cox@FaegreBD.com
18             ERIC M. FRIEDMAN, ESQ.
                  eric.friedman@FaegreBD.com
19
20
21
22   VIDEOTAPED BY:  DARNELL BROWN
23   REPORTED BY:  PAMELA HENLEY
24
25
```

Confidential - Pursuant to Protective Order

 1     A.    I'd need to look at it.  I'm sorry.
 2  It's kind of -- I say again it was just for a bit
 3  of background, so I haven't really kind of studied
 4  it in detail.  It was just to give me some
 5  information because --
 6     Q.    And all of these documents you reviewed
 7  for today, the data summary, the final report, the
 8  paper, were provided to you by Cook's lawyers, is
 9  that correct?
10     A.    Yes, they were.
11     Q.    Are you being paid for your time to
12  review documents and meet with Cook's lawyers?
13     A.    So, I was told I would be compensated
14  for my time for coming today and for yesterday and
15  also in the time that I need to spend looking at
16  the background and the paperwork for this.
17     Q.    And who is compensating you for your
18  time to do all that?
19     A.    It's through Cook's lawyers, so I assume
20  Cook.
21     Q.    And what hourly rate or what rate are
22  you charging Cook for your time?
23     A.    I was advised it was going to be it was
24  £500 or dollars.  I'm not quite sure.  But I think
25  it's £500 per hour for the preparation and then for

Confidential - Pursuant to Protective Order

```
 1   today I think it's 1,000.
 2        Q.    £1,000 per hour for today?
 3        A.    Yeah.
 4        Q.    And just for the jury, because I'm not
 5   sure they're going to understand.  £1,000 would be
 6   how many dollars, approximately, if you know?
 7        A.    At the current rate?
 8        Q.    Yes.
 9        A.    Again, I'd have to guess.
10        MR. MARTIN:  1,300.
11        THE WITNESS:  Oh, there you go.
12   BY MS. BAUGHMAN:
13        Q.    Does 1,300 sound right?
14        A.    1,300.
15        Q.    Does that sound about right to you?
16   Yes?
17        MS. COX:  I'll say.  We can check that later,
18   but if that's what Ben says on the computer --
19        MR. MARTIN:  As of --
20        THE WITNESS:  He's doing it on the computer
21   live, okay.
22        MS. COX:  -- we'll accept that.
23   BY MS. BAUGHMAN:
24        Q.    Does that sound correct to you, Doctor,
25   that £1000 --
```

```
 1       A.    Yeah, that's probably about right.

 2       Q.    -- is approximately $1300 per hour?

 3       A.    Yes.

 4             (Clarification by the reporter.)

 5  BY MS. BAUGHMAN:

 6       Q.    Dr. Uberoi, does it sound correct to you

 7  that £1000 is approximately $1,300 per hour?

 8       A.    Yes.

 9       Q.    Okay.  And that's the rate that you're

10  charging for your testimony here today, correct?

11       A.    Yes.

12       Q.    And that will be paid by Cook's counsel,

13  correct?

14       A.    Yes.

15       Q.    Okay.  We've talked about a meeting that

16  you had with Cook's lawyers, phone calls that

17  you've had and some documents you've reviewed.

18             Did you do anything else to prepare for

19  your deposition here today?

20       A.    I am not sure what you mean.

21       Q.    Did you read any other documents?  Did

22  you talk to anyone besides the individuals we've

23  talked about?

24       A.    Oh, I see. I haven't spoken to anybody

25  else.  I didn't think that would be appropriate at
```

Confidential - Pursuant to Protective Order

```
 1   those documents with Cook's lawyers?
 2        A.   Yesterday.  I don't know when this was
 3   sent but I'm afraid -- I don't know if it was sent
 4   to me or to my office or -- but I hadn't received
 5   it.
 6        Q.   All right.  So, let's just go through
 7   these requests and you can tell me --
 8        A.   Okay.
 9        Q.   -- since I haven't obviously had a
10   chance to look at the thumb drive, I want to get us
11   into what -- of what you've produced --
12        A.   Okay.
13        Q.   -- what you were able to locate.  Okay?
14             So, the first request, we asked for any
15   billing records regarding any work you've done
16   related to this litigation or any other IVC filter
17   litigation for Cook.
18             Have you submitted any bills to Cook
19   yet?
20        A.   No, I haven't.
21        Q.   And did Cook pay you for your time to do
22   the correction to your previous publication?
23        A.   No.
24        Q.   What they're paying for is your work
25   related to the Tonya Brand case.  Is that correct?
```

Confidential - Pursuant to Protective Order

 1          MS. COX:  Object to form.

 2     BY THE WITNESS:

 3          A.    No, it's really just to come and talk

 4     about my role in IVC filters and the study that we

 5     undertook.  I don't know very much about Tonya

 6     Brand or very little other than this is an ongoing

 7     case that you are undertaking against Cook.

 8                So, as far as I'm aware, I'm not

 9     commenting on the Tonya Brand or I'm not prepared

10     to comment on the Tonya Brand case specifically.

11     BY MS. BAUGHMAN:

12          Q.    So, do you know who Tonya Brand is?

13          A.    I'm aware that she had a filter placed

14     and that as a sequence of this, there is a

15     litigation underway.  But specifics of it, I can't

16     really get into.

17          Q.    So, obviously, you've never met Tonya,

18     correct?

19          A.    No, I haven't.

20          Q.    And did you read any of her medical

21     records?

22          A.    I might have seen some of the report

23     comments on it, but I haven't seen her specific

24     medical records.

25          Q.    What report on Ms. Brand did you see?

Confidential - Pursuant to Protective Order

```
 1   compensated for the time you spent going

 2   through those documents when you weren't able

 3   to treat patients?

 4        A.    Yes.

 5        Q.    And will you be asking to be

 6   compensated for the time you're spending to

 7   talk to the jury here today?

 8        A.    Yes.

 9        Q.    Dr. Uberoi, you had

10   conversations on the phone and an in-person

11   meeting with counsel for Cook before this

12   deposition, correct?

13        A.    I did.

14        Q.    Did you ever meet with

15   plaintiff's counsel?

16        A.    No.

17        Q.    Why not?

18        A.    I wasn't asked.

19        Q.    Did they ever call you?

20        A.    No.

21        Q.    Did they ever e-mail you?

22        A.    No.

23        Q.    Did they ask to meet with you?

24        A.    No.

25        Q.    Did -- would you have met with
```

Confidential - Pursuant to Protective Order

```
 1   them if they had called?
 2        A.    Yes, of course.
 3        Q.    Do you find it odd that they
 4   didn't want to talk to you?
 5             MS. BAUGHMAN:  Objection.
 6        Form.
 7             THE WITNESS:  I -- I don't know
 8        how these procedures work, but if they
 9        had asked me, I would have happily
10        spoken to them.
11   BY MS. COX:
12        Q.    We talked -- you talked a
13   little bit with counsel for plaintiff about
14   your relationship and past experience with
15   Cook.
16             Tell me, you worked on the OUS
17   study, which was a Cook-sponsored study,
18   correct?
19        A.    That's correct.
20        Q.    Did you receive any money
21   directly from your work in that study?
22        A.    No, I didn't.
23        Q.    Have you actually ever received
24   direct money from Cook?
25        A.    No.
```