UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This document relates to: Brand (No. 1:14-cv-06018-RLY-TAB)

**PLATINFF'S BRIEF IN SUPPORT OF PLAINTIFF'S OMNIBUS MOTION TO EXCLUDE PORTIONS OF DEFENDANTS' DEPOSITION TESTIMONY**

COMES NOW Tonya Brand, Plaintiff in the above-styled action, by and through undersigned counsel, and submits her brief in support of Plaintiff's motion to exclude portions of Defendants' deposition testimony, and would respectfully show the Court the following:

## MEMORANDUM

### A. The Law

The issue before the Court is whether Cook's witnesses may submit errata sheets which substantively change or contradict testimony provided during deposition. The starting point in this analysis is Rule 30 of the Federal Rules of Civil Procedure which provides in relevant part:

> On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which to review the transcript or recording; and if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

> Fed. R. Civ. P. 30(e), *internal formatting omitted*.

Although FRCP 30(e) permits changes in form or substance "a change of substance which actually contradicts the transcript is impermissible unless it can plausibly be represented as the

correction of an error in transcription[.]" *Thorn v. Sundstrand Aerospace Corp.*, 207 F.3d 383, 389 (7th Cir. 2000).

In *Thorn*, a business was questioned during deposition about the criteria it used for eliminating product lines. In response, the business (Sunstrand) indicated the decision was made based on "which people… we feel have the longest-term potential for those whose product lines we were eliminating." *Id*. at 388. Plaintiff pointed to this language as evidence of age-discrimination, suggesting that the reference to "longest-term potential" was a synonym for "youngest."

In an attempt to undercut plaintiff's argument, the business submitted an errata sheet which changed the relevant testimony as follows:

| Deposition Testimony | Errata Sheet Testimony |
|---|---|
| "which people… we feel have the longest-term potential for those whose product lines we were eliminating." | "which people… **were associated with the products that had the longest–term potential versus** those whose product lines we were eliminating." *Id*. |

The reason given for the errata change was that the deposition testimony was "garbled." The court agreed the original testimony was unclear, but it rejected defendant's contention that the errata sheet merely clarified an error in transcription. "Had [the business] said that 'for' was really 'versus,' it is possible that he might have been correcting an error in transcription. But it is unreasonable to suppose that he remembered that he had said '*were associated with the products that had the longest–term potential versus*' rather than '*did we feel have the longest-term potential for*.'" *Id*. at 388–89 (emphasis added).

The ruling in *Thorn* makes clear that errata changes cannot alter the meaning of testimony given under oath. "If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination." *Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992).

B.  **The Facts**

**Plaintiff Tonya Brand**

This case involves a Celect inferior vena cava ("IVC") filter that was inserted into Plaintiff by vascular surgeon Mark Rheudasil, M.D. on March 19, 2009. The first imaging of Plaintiff's IVC following the March 19, 2009 spinal surgery is CT imaging taken three weeks later, on April 10, 2009. Those images show that Plaintiff's IVC filter was perforating her IVC wall in multiple places. The filter subsequently fractured in multiple places, and one of the fragments emerged from Plaintiff's right thigh on or about June 17, 2011.

Dr. Rheudasil attempted to retrieve the filter percutaneously on July 14, 2011 but was unsuccessful. The filter was left in place until October 22, 2015, at which time Dr. Rheudasil removed it through open surgery.

After suit was filed, plaintiff deposed each of the individuals identified in the incorporated motion. Thereafter, each deponent submitted errata sheets which attempt to insert additional opinions into the record or substantively change/contradict sworn deposition testimony. A summary of these changes is provided below.

**Dr. David Gillespie**

Dr. Gillespie is Cook's interventional radiology expert. His deposition was taken on July 7, 2018, and his errata sheet was certified on August 10, 2018 — 34 days after the deposition.

I.  How many times did Dr. Gillespie meet with Cook's lawyers when drafting his expert report?

| Page/Line # | Original Text | Errata Text | Reason Given |
|---|---|---|---|
| P18, lines 15-19 | Q. Okay. When did you write your report, or when did you work with Cook's lawyers to write your report? | Q. Okay. When did you write your report, or when did you work with Cook's lawyers to write your report? | Clarification |

| | A. Over the last -- you know, the times that I told you that we met. | A. Over the last -- you know, the times that I told you that we met. *I also met with counsel on several other occasions and spent time writing and editing the report on my own, without counsel present.* | |

This change goes well beyond the mere correction of a transcription error. The amount of input Cook's lawyers had on Dr. Gillespie export report is a matter of great concern. Earlier in his deposition Dr. Gillespie testified that he met with Cook's attorneys two times for a total of 12 hours "to write the report."[1] However, Dr. Gillespie's errata sheet indicates there were "several other occasions" on which he met with Cook's attorneys. This is precisely the type of change which contradicts the deposition transcript and is therefore prohibited by *Thorn*.

    II.    <u>What methodology did Dr. Gillespie use to form his expert opinions?</u>

| Page/Line # | Original Text | Errata Text | Reason Given |
|---|---|---|---|
| P36, line 17-19 | Q. Is there a specific methodology you followed in order to reach your opinions?<br><br>A. No. | Q. Is there a specific methodology you followed in order to reach your opinions?<br><br>A. No **single overarching methodology; I used the various methodologies detailed in my report.** | Clarification |

Again, Dr. Gillespie's errata sheet contradicts his sworn testimony. During deposition Dr. Gillespie indicated there was no specific methodology relied upon to reach his opinions, but his errata sheet attempts to contradict this testimony by suggesting there were multiple methodologies at play. As the court is doubtless aware, methodology is a key concern in *Daubert* rulings, and Defendant cannot make such a substantive change in an errata sheet.

### Dr. Jon Fryzek, PhD

Dr. Fryzek is Cook's epidemiologist and "low complaint" witness. His deposition was taken on July 11, 2018, and his errata sheet was certified on August 17, 2018 — 37 days after his deposition.

---

[1] Gillespie Depo, p18 20:25, p19 1:12.

I. <u>Was Dr. Fryzek aware of an FDA study on the safety of medical devices?</u>

| Page/Line # | Original Text | Errata Text | Reason Given |
|---|---|---|---|
| P107, lines 23-25<br><br>P 108, lines 1-5 | Q. Okay. Are you aware of a study by the FDA Center for Devices and Radiologic Health entitled "Ensuring the Safety of Marketed Medical Devices," which concluded that the underreporting rate from medical devices, generally, is approximately 86 percent?<br><br>MS. CALHOON: Object to form.<br><br>A. I have no knowledge of this, so ... | Q. Okay. Are you aware of a study by the FDA Center for Devices and Radiologic Health entitled "Ensuring the Safety of Marketed Medical Devices," which concluded that the underreporting rate from medical devices, generally, is approximately 86 percent?<br><br>MS. CALHOON: Object to form.<br><br>A. I had no knowledge of this *at the time of my deposition but I've since looked at the report from the FDA. The findings mentioned by Mr. Heaviside and that are in the FDA report come from a sparse scientific meeting abstract containing very little information on the study's methodology and that never resulted in a published article. The types of medical devices the authors of the abstract studied are not mentioned. Therefore, it is not appropriate to assume that these findings are applicable to IVC filters. Further, the NIS database contains diagnostic codes that may apply to preexisting events or conditions, meaning that a diagnostic code may exist in the database but there was no new event to report, and the database is based on hospitalizations and not patients meaning that the same patient could be in the database multiple times. These facts limit the conclusions the authors could make, which may explain why the abstract was not published as a peer-reviewed manuscript.* | Clarification |

It may be true that Dr. Fryzek learned of this FDA report after his deposition, but that was not the question asked of him. An errata sheet is not a second bite at the apple. Deponents cannot use errata sheets as a means of introducing additional testimony into the record.

II. <u>Did Dr. Fryzek's report include analysis of "confidence intervals?"</u>

| Page/Line # | Original Text | Errata Text | Reason Given |
|---|---|---|---|
| P 112, lines 7-17 | Q. Did you see any adjustment for confidence intervals? | Q. Did you see any adjustment for confidence intervals? | Clarification |

|  | A. I don't understand the question.<br><br>Q. Did you use confidence intervals in your report regarding your results?<br>A. We calculated proportions. I'm not sure what a confidence interval –<br><br>Q. You don't know what a confidence interval is? You don't know –<br>A. No, I'm not sure in this context. | A. I don't understand the question.<br><br>Q. Did you use confidence intervals in your report regarding your results?<br>A. We calculated proportions. I'm not sure what a confidence interval –<br><br>Q. You don't know what a confidence interval is? You don't know –<br>A: ***When the complaint rate is extremely close to zero, such as is the case here, a confidence interval wouldn't add a lot of additional information other than that the proportion is very low. The best estimate is the actual proportion calculated."*** |  |

The original testimony suggests Dr. Fryzek either didn't know what a confidence interval was, or that he failed to perform a confidence interval analysis. The errata change suggests Dr. Fryzek intentionally chose not to perform a confidence interval analysis because he determined it was not necessary given the low complaint rate. This is more than a clarification, it is a substantive change in his answer.

### **Dr. Timothy Morris, M.D.**

Dr. Morris is Cook's pulmonology expert. His deposition was held on June 20, 2018, and his errata sheet was submitted on July 30, 2018 — 41 days after his deposition.

I. <u>Does Dr. Morris believe the use of an "anterior approach" increases the risk of pulmonary embolism?</u>

| Page/Line # | Original Text | Errata Text | Reason Given |
|---|---|---|---|
| P 23, line 13 | Q Okay. So there -- so just in looking at your -- at your answer, you got a patient who had high risk for PE from her patient characteristics, and her patient characteristic was that she was destined to get a lumbar surgery from an anterior approach. True?<br><br>MS. COX: Object to form.<br><br>THE WITNESS: Yes. | Q Okay. So there -- so just in looking at your -- at your answer, you got a patient who had high risk for PE from her patient characteristics, and her patient characteristic was that she was destined to get a lumbar surgery from an anterior approach. True?<br><br>MS. COX: Object to form.<br><br>THE WITNESS: Yes, *that was one of her characteristics.* | Clarification |

Dr. Morris' deposition testimony admits that patients such as Tonya Brand (i.e. those with a high risk of pulmonary embolism), are "destined to get lumbar surgery" using an anterior approach. The errata sheet answer changes the context of Dr. Morris' response to make it appear as if he's agreeing that Ms. Brand had a high risk of needing lumbar surgery, but not that the use of an anterior approach would increase this risk. This type of substantive change is not permitted on an errata sheet.

### **Lykke Iversen**

Lykke Iversen is the Manager of Postmarket Quality Engineering for William Cook Europe. Mr. Iversen's deposition was taken on April 26, 2018, and his errata sheet was certified on June 12, 2018 — 32 days after the deposition.

I.  How does William Cook Europe define an IVC "perforation?"

| Page/Line # | Original Text | Errata Text | Reason Given |
|---|---|---|---|
| P91, Lines 1-14 | Q. Right. And it says that William Cook Europe's investigation procedures related to images have changed since he came. Correct?<br><br>A. Since -- when we did the first investigation here and until the second, yeah, that's correct.<br><br>Q. And the change was using that greater than 3 millimeter definition?<br>A. That is what he -- we didn't ask him to do that, but that is what he thinks is correct I believe. That's why we do it. | Q. Right. And it says that William Cook Europe's investigation procedures related to images have changed since he came. Correct?<br><br>A. Since -- when we did the first investigation here and until the second, yeah, that's correct.<br><br>Q. And the change was using that greater than 3 millimeter definition?<br>A. ***No. The change in the process was having a radiologist to review the imaging, not using the 3 mm definition. The 3 mm definition was just what the radiologist used during his review.*** | "Clarification to show what I meant." |

Mr. Iversen's deposition testimony indicates it was William Cook Europe's standard procedure to use a 3mm definition of perforation. The errata sheet answer suggests the 3mm definition was not standard. This is a substantive change in Mr. Iversen's sworn testimony and should be excluded.

## Tamara Clemmer

Mr. Clemmer is a District Manager for Cook Medical. Ms. Clemmer's deposition was taken on June 15, 2017, and her errata sheet was certified on August 1, 2017 — 47 days after her deposition.

I.  Is the IVC Celect Filter still on the market?

| Page/Line # | Original Text | Errata Text | Reason Given |
|---|---|---|---|
| P112, line 18 to p113, line 6 | Q. I understand that the Cook Celect filter is no longer on the market in the United States of America. I mean, we -we both will have that understanding during the deposition. You understand that. And so when I ask about the placement of a Celect filter, this obviously would be when they were being placed; right?<br><br>A. Understood, yes. | I understand that the Cook Celect filter is no longer on the market in the United States of America. I mean, we -we both will have that understanding during the deposition. You understand that. And so when I ask about the placement of a Celect filter, this obviously would be when they were being placed; right?<br><br>A. Understood, yes. ***Since the Platinum introduction, they are sold in only certain kits, but are on the market.*** | Clarification |

Ms. Clemmer's deposition testimony unequivocally states that the Celect Filter is no longer on the market. The errata sheet states the exact opposite and claims the Celect is still on the market.

C.  **Summary of Requested Exclusions**

Plaintiff asks this Court to exclude the following testimony from Cook's experts and lay witnesses.

Dr. David Gillespie

1) Dr. Gillespie's testimony that he met with Cook's lawyers on more than 2 occasions for a total of 12 hours.
2) Dr. Gillespie's testimony that he used a specific methodology to reach his opinions expressed in his expert report.

Dr. Jon Fryzek

1) Dr. Fryzek's testimony that he was aware of a study by the FDA Center for Devices and Radiologic Health titled "Ensuring the Safety of Marketed Medical Devices."
2) Dr. Fryzek's testimony that his work on this case included an analysis of "confidence intervals."

Dr. Morris

1) Dr. Morris' testimony suggesting he believes the use of an "anterior approach" has no effect on the risk of pulmonary embolisms.

Lykke Iversen

1) Mr. Iversen's testimony suggesting William Cook Europe defines an IVC "perforation" using anything other than a 3mm definition.

Tamara Clemmer

1) Ms. Clemmer's testimony suggesting the IVC Celect Filter is still on the market.

## CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that the Court exclude portions of testimony for Dr. David Gillespie, Dr. Jon Fryzek, Dr. Timothy Morris, Lyyke Iversen and Tamara Clemmer. Each of these individuals submitted errata sheets which attempt to insert additional testimony into the record, or substantively change/contradict testimony given during deposition.

Dated: October 19, 2018

                                                                          Respectfully Submitted,

*/s/ Joseph N. Williams*_____
Joseph N. Williams, Atty. No. 25874-49
Riley Williams & Piatt, LLC
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317) 633-5270
Facsimile: (317) 426-3348
Email: jwilliams@rwp-law.com

*Liaison Counsel to Plaintiffs' Steering Committee and on behalf of Plaintiffs' Steering Committee*


*/s/ Michael W. Heaviside*_____
Michael W. Heaviside, Esq.
Heaviside Reed Zaic, A Law Corporation
910 17th Street NW, Suite 800
Washington, DC 20006
Telephone: (202) 233-1993
Email: mheaviside@hrzlaw.com

*/s/ Ben C. Martin*_____
Ben C. Martin, Esq.
The Law Office of Ben C. Martin
3710 Rawlin Street, Suite 1230
Dallas, TX 75219
Telephone: (214) 761-6614
Facsimile: (214) 74407590
Email: bmartin@bencmartin.com

*/s/ David P. Matthews*_____
David P. Matthews, Esq.
Matthew and Associates
2509 Sackett St.
Houston, TX 77098
Telephone: (713) 522-5250
Facsimile: (713) 535-7184
Email: dmatthews@thematthewslawfirm.com

*Plaintiffs' Co-Lead Counsel*

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 19, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

      */s/ Ben C. Martin*
      Ben C. Martin