# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

_____

This Document Relates to the Following Actions only:

*Brand v. Cook Medical, Inc. et al.,*
Case No. 1:14-cv-06018-RLY-TAB

_____

## COOK'S RESPONSE TO PLAINTIFF'S MOTION TO QUASH THE NOTICE OF VIDEO DEPOSITION OF AAKRITI GUPTA, M.D.

### I.    INTRODUCTION

The Cook Defendants (collectively, "Cook")[1] urge the Court to deny Plaintiff's Motion to Quash the Notice of Video Deposition of Aakriti Gupta, M.D. ("Dr. Gupta") (Dkt. 9463) because exceptional circumstances exist to require Dr. Gupta's deposition and document production.

As Cook explained in its Response to Plaintiff's Motion to Quash the Notice of Video Deposition of Behnood Bikdeli, M.D. (Dkt. 9396) (the "Dr. Bikdeli Response"), at the deposition of Plaintiff's epidemiology expert, Dr. Harlan Krumholz ("Dr. Krumholz"), Cook learned about the substantial collaboration between Dr. Krumholz and two of his research assistants, Dr. Behnood Bikdeli ("Dr. Bikdeli") and Dr. Gupta, to formulate his opinions and draft his expert report. Drs. Bikdeli and Gupta were so integral to Dr. Krumholz's work on his expert report in this matter that Plaintiff's counsel insisted they be permitted to attend Dr. Krumholz's deposition

---

[1] Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS.

1

to provide assistance in responding to Cook's questions about Dr. Krumholz's lengthy expert report.[2] In fact, Dr. Gupta repeatedly directed Dr. Krumholz to his opinions in his expert report.

When asked about compensation for Drs. Bikdeli and Gupta for work they had done in this matter, Dr. Krumholz admitted that Plaintiff had separate payment agreements in place with Drs. Bikdeli and Gupta. Moreover, in the "Conflict of Interest Disclosures" section of an article published in the fall of this year on an unrelated topic, Dr. Gupta disclosed that she had been compensated by Matthews and Associates[3] for personal fees. This is noteworthy because Matthews and Associates is Plaintiffs' Co-Lead Counsel in this MDL and was the *lead* counsel in a Texas state court case ("Pavlock") from this MDL tried earlier this year wherein Dr. Krumholz was Plaintiff's epidemiological expert. During his deposition, Dr. Krumholz testified that it is hard to distinguish between his work in Pavlock and his work in this case, because his work in this case was derived from his work in the Texas case.[4] Moreover, any work done by Dr. Gupta to aid Dr. Krumholz in the formulation of his expert opinions included in his expert report in this case may have been paid for by Matthews and Associates. The Case Management Order ("CMO") in this MDL establishing Common Benefit Fees and the Common Expense Fund, (Dkt. 1246), indicates that "shared costs are costs incurred for the common benefit of all plaintiffs" and shared costs include "generic expert witness and consultant fees and expenses" *and* "research by outside

---

[2] Dr. Krumholz's expert report was over 170 pages and included over 130 footnotes. (*See* Krumholz Report, Dkt. 8642-1).

[3] David P. Matthews, an Attorney at Matthews and Associates, is Plaintiffs' Co-Lead Counsel in MDL 2570. He shares this title and role with Ben C. Martin, Law Offices of Ben C. Martin, and Michael W. Heaviside, Heaviside Reed Zaic. (Dkt. 8845).

[4] *See* Krumholz Depo at 26:2-26:18. (Q. When it says "preparing expert reports," is that for Pavlock or for Brand? A. So it's primarily Pavlock, but then -- and I'd have to remember when the Brand report was submitted. But, again, this was mostly ramping up to the trial that was going to be very soon after this invoice was submitted. And so -- I mean, I'm happy to help, and I want to try to give you the answer that is appropriate here, but it's just hard to parse. For sure a lot of the information that was relevant to the Pavlock case is relevant to the Brand case, especially with regard to sort of foundational information. But that effort was to build towards that trial, the efforts of this trial. I'm not sure what the implications are of the split but some of this time was certainly relevant to and may have even been directly related to Brand.).

third-party vendors/consultants/attorneys[.]" Thus, it is highly probable that Dr. Krumholz's entire expert report is considered a generic expert report as defined by the aforementioned CMO, because it has been used by Plaintiffs for the common benefit of multiple pieces of litigation in this MDL, and any fees associated with his expert report, including fees associated with Dr. Gupta's research assistance, are arguably a common benefit expense among Plaintiffs' Co-Lead Counsel and can be paid for by any member of Plaintiffs' Co-Lead Counsel. If Dr. Gupta views the compensation she has received from Plaintiff's Co-Lead Counsel in this MDL as significant enough to disclose as a conflict of interest in a national, peer-reviewed publication, then Cook should be permitted to depose Dr. Gupta and discover invoices related to her work in this matter.[5]

Furthermore, Dr. Krumholz has admitted that he had written communications with Dr. Gupta while working to formulate his opinions in this matter, and that there are notes, drafts, and raw data of publications and literature searches on which Dr. Krumholz relied that, under the legal analysis fully briefed in the Dr. Bikdeli Response, are discoverable (but have not yet been produced).

All in all, exceptional circumstances exist for the requested discovery because Dr. Gupta, like Dr. Bikdeli, was a "seamless collaborator" who worked "hand-in-glove" with Dr. Krumholz, and the "fruits of their labor are indivisible." *See Herman v. Marine Midland Bank*, 207 F.R.D. 26, 31 (W.D.N.Y. 2002); *Derrickson v. Circuit City Stores, Inc.*, No. DKC 95-3296, 1999 WL 1456538 (D. Md. Mar. 19, 1999); *see also Long Term Capital Holdings, et al., v. United States*, No. 01-CV-1290(JBA), 2003 WL 21269586 (D. Conn. May 6, 2003); *Estate of Manship v. United States*, No. CV 04-C-91-M2, 2008 WL 11351590 (M.D. La. Mar. 10, 2008). Under these

---

[5] Dr. Krumholz was the supervising author on the article and did not disclose the payments he had received from Plaintiff's counsel. (*See infra* article entitled, "Association of Racial and Socioeconomic Disparities With Outcomes Among Patients Hospitalized With Acute Myocardial Infarction, Heart Failure, and Pneumonia," authored by N. Downing, et al., Exhibit A).

circumstances, a deposition is warranted to ascertain Dr. Gupta's participation in the preparation, drafting, editing, and/or revising of Dr. Krumholz's opinions and report, and any meetings, phone calls, or other communications between Drs. Gupta and Krumholz. Similarly, document discovery of Dr. Gupta's invoices, written communications, notes, drafts, and raw data of publications and literature searches should also be permitted.

## II.  FACTS AND BACKGROUND

1. On June 28, 2018,[6] Cook deposed Dr. Krumholz. When Dr. Krumholz arrived at his deposition with Drs. Bikdeli and Gupta in tow, Cook learned about the nature of the substantial collaboration with his research assistants Drs. Bikdeli and Gupta:

> Q. And when you say 'they've acted as research assistants,' tell us what you -- what you mean?
>
> A. My understanding of a research assistant is someone who, under the direction of a senior investigator or a senior member of the faculty, or a senior individual, assists in the development of research. And so what that would mean is that they were available to do literature reviews to assist me in obtaining articles and helping me to summarize information and providing the information that would put me in a stronger position to be able to do the work that I had to do. And would also enable me to delegate tasks that I felt that they could handle, and that would enable me to spend less time on the case so that the work could be completed, but that I wouldn't have to be spending the entire time on the case.

(6/28/18 Deposition of Harlan Krumholz, M.D. ("Krumholz Depo.") at 9:5-10:7 (Dkt. 8642-2)).

2. Indeed, Dr. Krumholz testified that his expert report was a "team effort" of "all three of us." (*Id*. at 152:9-14). For instance,

> Q. Now, throughout your report that we marked as Exhibit 1 there are references like we reviewed, we considered; who's the 'we'?

---

[6] Expert discovery closed on June 29, 2018. Thus, Plaintiff's argument that Cook delayed in seeking discovery related to Dr. Gupta is without merit because Cook only learned on June 28, 2018, about the extent of Dr. Krumholz's collaboration with Drs. Bikdeli and Gupta.

4

A. I suppose it should have said I with my research assistants supporting me, but in the course of writing this it was probably represented as we, but it meant myself and my research assistants.

\* \* \*

Q. Did anyone help you write your report?

A. No. . . . Aside from my assistants.

(*Id*. at 47:21-48:2; 48:20-23).

3. This substantial collaboration is borne out in one particular example where Dr. Krumholz testified about the creation of a nearly six page, single-spaced table summarizing "Some Important Events Related to Cook Celect Filters":

Q. Did you create that table?

A. Under my supervision.

Q. And who created the table?

A. It's combination of me and Aakriti and – Aakriti Gupta and Behnood Bikdeli.

Q. Dr. Krumholz, the documents that are identified in the table, who – who told you what documents to include?

A. Those were documents that – this is our report, so we – we weren't handed a table and – or told to include any documents. I dare say that there wasn't one document that was included in the report that somebody said to me you must include this in the report.

Q. Did someone give to you a group of documents or identification for documents and say these are documents that may be interesting to you?

A. I don't remember that we were pointed in a direction. Again, the -- the way that we were able to be alerted that things were interesting were, again, a methodology, it's called in common parlance, a snowball technique where, you know, you're kind of – you'll see one document, it mentions another document. You see one report, it mentions another report. You – you're kind of beginning to develop your sense of what's important by what you've discovered on your own, but also by what other people are pointing to as being of interest. So – but we're independently trying to validate what it is

5

>   that we want to do. So what it is that the lawyers did was give us access to a trove of documents, but we were able – I mean, and there were a lot of them, and so – you know, like I said, I tried to look at as many as I could, but I think I looked at them all. But in order – this – remember, we've been working on this for a year. I mean, this has been a long period of going through this kind of document, so this – I'm very proud of this. This represents our own synthesis of documents that make the case.
>
>   * * *
>
>   Q. On the portions of the documents that are quoted in table one, are those portions that you selected or someone else selected?
>
>   A. This was, again, a team effort because the amount of work here to produce this required all three of us, and so this is a team effort.
>
>   Q. Okay. No one outside of you and your – your research fellows told you what to put in this table; fair enough?
>
>   A. Not that I'm aware.

(*Id*. at 150:3-151:20; 152:9-18).

   4.   Dr. Gupta also directed Dr. Krumholz to places in his expert report during his deposition. For instance:

>   Q. Someone else see where it's on this page?
>
>   A. I don't see it.
>
>   A. Yeah
>
>   Q. Do you see it? You can say?
>
>   A. Page 29.
>
>   * * *
>
>   A. [Dr. Gupta], feel free to fast forward me to the conclusions, if that's okay.
>
>   Q. That's fine.
>
>   A. Rather than have me take more time.
>
>   Q. You mean, the page number?

  A.  Yeah. I think right here, 141.

  A.  138.

  \* \* \*

  Q.  [Dr. Gupta], you know what page I'm looking for?

  A.  170.

(*Id.* at 166:16-21; 171:23-172:8; 276:10-12).

  5.  Drs. Bikdeli and Gupta's sole purposes for attending Dr. Krumholz's deposition were to assist Dr. Krumholz in finding relevant opinions in his report. (*See* Affidavit of Andrea Roberts Pierson, at ¶ 7 (Dkt. 9396-3)).

  6.  Dr. Krumholz's invoice (for work performed from June 2017 through March 2018) confirms that he only spent 20 hours drafting his extensive report dated April 30, 2018, spanning 179 pages and over 130 footnotes, including a myriad of charts, tables, and data analyses. (*See* Dr. Krumholz's April 28, 2018, Invoice at 5 (Dkt. 9175-1); Dr. Krumholz's Expert Report ("Dr. Krumholz's Report") (Dkt. 8642-1)).

  7.  Dr. Krumholz testified that between March 2018 and his June 28, 2018 deposition, he spent "somewhere between 50 and 100 hours" more time. (Krumholz Depo. at 11:17-22). Thus, even if all 50 to 100 hours were applied to drafting his April 30, 2018 report (which certainly is not the case), at most, he spent between 70 and 120 hours on his expert report.

  8.  During his deposition, Dr. Krumholz also confirmed that only Drs. Bikdeli and Gupta were present when he was conducting his psychical exam of Plaintiff. (Krumholz Depo. at 294:23-295:7). This testimony demonstrates how closely Drs. Bikdeli and Gupta worked with him on this matter.

  9.  Dr. Krumholz further confirmed that there were phone conferences and emails with Drs. Bikdeli and Gupta to formulate his opinions and report. (*Id.* at 21:11-21).

10. Finally, Dr. Krumholz confirmed that Drs. Bikdeli and Gupta have been compensated directly by Plaintiff's counsel, but that he hasn't "been involved in that." (*Id.* at 10:13-22). Accordingly, Cook requested production of Drs. Bikdeli's and Gupta's invoices during Dr. Krumholz's deposition. (*Id.*).

11. On July 17, 2018, Cook wrote to Plaintiff again requesting Drs. Bikdeli's and Gupta's invoices, as well as their written communications with Dr. Krumholz. (*See* 7/17/18 Letter, Dkt. 9396-4).

12. On July 29, 2018, Plaintiff objected to producing Drs. Bikdeli's and Gupta's invoices and communications. (*See* 7/29/18 Email, Dkt. 9396-5).

13. After the parties' meet and confer efforts were exhausted (as described in the Dr. Bikdeli Response at ¶¶ 13 - 19), on September 20, 2018, Cook served its Notice of Video Deposition for Dr. Gupta (the "Dr. Gupta Notice"), including, among other things, a request to produce her billing records and communications with Dr. Krumholz. (*See* Pl. Memo. in Supp. of Mot. Quash, at Exhibit B, Dkt. 9464-2).[7]

14. On October 19, 2018, Plaintiff filed her Motion to Quash the Dr. Gupta Notice (*See* Pl. Mot. Quash, Dkt. 9463). In turn, Cook is filing this Response to Plaintiff's Motion to Quash the Dr. Gupta Notice.

---

[7] Plaintiff's argument that Cook never met and conferred on the topic of Dr. Gupta's deposition is not true. Dr. Gupta was always part of the parties' meet and confer conversations.

8

## II.     ARGUMENT

As fully analyzed in the Dr. Bikdeli Response (Dkt. 9396),[8] due to the substantial collaboration between Drs. Krumholz and Gupta, exceptional circumstances exist for Cook to take deposition and document discovery of Dr. Gupta, including her invoices, written communications, notes, drafts, and raw data of publications and literature searches. Thus, contrary, to Plaintiff's argument in her Motion to Quash, Dr. Gupta's deposition and document discovery would not be unduly burdensome or a waste of time or money. (*See* Pl. Memo. in Supp. of Mot. Quash, Dkt. 9464).

Thus, as explained in the Dr. Bikdeli Response, this case is like *Herman*, *Derrickson*, *Long Term Capital Holdings, et al.,* and *Estate of Manship.* (*See Herman v. Marine Midland Bank*, 207 F.R.D. 26, 31 (W.D.N.Y. 2002), *Derrickson v. Circuit City Stores, Inc.*, No. DKC 95-3296, 1999 WL 1456538 (D. Md. Mar. 19, 1999), *Long Term Capital Holdings, et al., v. United States*, No. 01-CV-1290(JBA), 2003 WL 21269586 (D. Conn. May 6, 2003), and *Estate of Manship v. United States*, No. CV 04-C-91-M2, 2008 WL 11351590 (M.D. La. Mar. 10, 2008)). And, the Court should permit the requested discovery.

## III.     CONCLUSION

Considering the substantial collaboration between Drs. Krumholz and Gupta, Cook should be permitted to take the deposition and conduct document discovery of Dr. Gupta's invoices, written communications, notes, drafts, and raw data of publications and literature searches. Plaintiff's Motion to Quash should be denied as a result.

---

[8] For efficiency, Cook incorporates herein the Dr. Bikdeli Response, rather than restate that legal analysis, as it equally applies to Dr. Gupta.

Respectfully submitted,

Dated: November 1, 2018  /s/ *Jessica Benson Cox*
Andrea Roberts Pierson (# 18435-49)
Andrew L. Campbell (#25516-49)
Jessica Benson Cox (#26259-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
E-Mail: andrea.pierson@faegrebd.com
E-Mail: andrew.campbell@faegrebd.com
E-Mail: jessica.cox@faegrebd.com

Charles F. Webber (# 215247)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 S. 7th Street
Minneapolis, Minnesota 55402
Telephone: (612) 766-7000
Facsimile: (612) 766-1600
E-Mail: chuck.webber@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 1, 2018, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Co-Counsel for Plaintiff will serve any non-CM/ECF registered parties.

/s/ *Jessica Benson Cox*