# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND              Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS   LIABILITY LITIGATION             MDL No. 2570

_____

This Document Relates to:

    *Brand v. Cook Medical, Inc. et al.,*
    Case No. 1:14-cv-06018-RLY-TAB

_____

**THE COOK DEFENDANTS' REPLY MEMORANDUM REGARDING PLAINTIFF'S
RESPONSE IN SUPPORT OF NEW FAILURE TO WARN CLAIM**

Despite the considerable space the parties have devoted to the existence and content of a

"continuing duty to warn" under Georgia law, the Court can in fact dispose of the issue quite

simply.  Even assuming *arguendo* that (1)  a continuing duty to warn exists under Georgia law in

the form that Plaintiff claims, and (2) Cook breached the duty, Plaintiff claim nevertheless fails

as a matter of law because she has no evidence to support the essential requirement of

*causation—i.e.*, that Cook's alleged breach of the duty caused the injury that she suffered.

Plaintiff elicited *absolutely no* testimony from Dr. Rheudasil that he would have taken a different

course if Cook had given him some unspecified additional warning after he placed the filter.

None.  The Court therefore can and should grant Cook's motion for summary judgment on

Plaintiff's duty-to-warn claim despite her supplemental arguments to the contrary in her recently

filed supplemental brief (Dkt. 9500).

"Plaintiff's Response To New Post-Sale Warning Argument In The Cook Defendants'

Reply In Support Of Motion For Summary Judgment" also presents multiple other problems.

Beyond causation, the response fails to rebut the three other reasons that Cook previously cited

US.120755811.04

for rejecting the claim:  (1) Plaintiff did not sufficiently plead such a claim and never asserted it prior to filing her summary judgment response, (2) the claim is a disguised "failure-to-recall" claim that is impermissible under Georgia law, and (3) Plaintiff lacks the expert testimony required to support such a claim.  And her current response creates a brand-new problem: it asserts for the first time yet *another* theory of liability against Cook, based on a claimed assumed duty arising from Cook's investigation of Plaintiff's complaint and communication with Dr. Rheudasil about the complaint.  Not only has Plaintiff never pled that new theory, she offers no legal analysis or evidence to support it.

In short, Plaintiff's new response adds nothing to her previous arguments to the Court except further confirmation that Cook is entitled to summary judgment on her failure-to-warn claim.

### A.      Plaintiff can point to no evidence that a post-sale warning would have prevented or reduced her injuries.

The Court need not even address most of the arguments Plaintiff raises in her response because of one glaring and dispositive gap in Plaintiff's evidence:  even assuming that Cook had a post-sale duty to warn along the lines that Plaintiff argues and breached that duty, she offers no evidence of any kind that any additional post-sale warning by Cook would have altered her doctor's conduct or reduced her injuries.  Put simply, she wholly neglected to ask Dr. Rheudasil *any* questions whatsoever about whether he would have done something different if he had received a post-sale warning of the kind that Plaintiff insists Cook should have given him.  That lack of evidence alone is fatal to any claim of a post-sale duty to warn, and by itself justifies summary judgment on that claim.

US.120755811.04

### 1.      Georgia law requires evidence of causation in failure-to-warn claims.

In a single paragraph citing only a single case, Plaintiff argues that Georgia law does not require evidence of causation, only proof of a warning that provides sufficient information to permit the reader to make an informed decision on the risk. *See* Dkt. 9590 at 7 (citing *Watkins v. Ford Motor Co.*, 190 F.3d 1213, 1219 (11th Cir. 1999)).  Plaintiff is mistaken.  To prevail on any failure-to-warn claim under Georgia law, a plaintiff "must present evidence supporting a reasonable inference that the warning provided by the defendant would prevent the injury." *See, e.g., Dietz v. Smithkline Beecham Corp.,* 598 F.3d 812, 816 (11th Cir. 2010).  This burden of proof borne by the plaintiff is not ambiguous:  "A breach of a duty to warn, … must … be the cause of the injury about which the plaintiff complains, and the plaintiff must present evidence supporting a reasonable inference that the warning provided by the defendant would prevent the injury."  *R & R Insulation Servs. v. Royal Indem. Co.*, 307 Ga. App. 419, 427, 705 S.E.2d 223, 233 (Ga. App. 2010).[1]

Plaintiff errs in relying on *Watkins* because *Watkins* was a very different case that involved very different issues.  *Watkins'* central issue was whether Georgia's statute of repose

---

[1] This requirement is also reflected in Georgia's Suggested Pattern Jury Instructions, which define "proximate cause" as "that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred."  Ga. S.P.J.I. 60.200 (Torts; Proximate Cause; Definition).  *See also id.* ("When I use the expression 'proximate cause,' I mean a cause that, in the natural or ordinary course of events, produced the plaintiff's injury.").
  The requirement is also compelled by the numerous Georgia cases holding that a claim of inadequate warning based on the content of the warning fails as a matter of law in the absence of evidence that the user read the warning and would have followed a different warning.  *See, e.g., Thornton v. E.I. Du Pont De Nemours & Co.*, 22 F.3d 284, 290 (11th Cir. 1994) (applying Georgia law, holding that plaintiff "was contributorily negligent by failing to read the warning, therefore, any insufficiency in the warning label is not the proximate cause of his injuries."); *Wilson Foods Corp. v. Turner*, 218 Ga. App. 74, 75, 460 S.E.2d 532, 534 (Ga. App. 1995) ("failure to read instructions or printed warnings will prevent a plaintiff from recovering on a claim grounded on failure to provide adequate warning of the product's potential risk.").

US.120755811.04

barred plaintiff's failure-to-warn claim; the Eleventh Circuit held that it did not and reversed the district court's contrary conclusion.  Along the way, Ford argued that a warning that its Bronco II SUV was unstable and had a tendency to roll over at low speeds would not prevent an accident "*once a user made the decision to drive the Bronco II*."  *Watkins*, 190 F.3d at 1219 (emphasis added). Whether true or not, Ford's argument missed the point: an instability warning might have prevented the accident by *deterring the plaintiff from buying the Bronco in the first place*.  Based on this possibility, the Eleventh Circuit rejected Ford's argument, citing § 10 of the RESTATEMENT (THIRD) OF TORTS for the proposition that "warnings are required to protect the interest of those reasonably foreseeable users or consumers who would, based on their own reasonable assessments of the risks and benefits, *decline product use or consumption*" (emphasis added).

Nowhere in *Watkins* did the Eleventh Circuit suggest that Georgia has dropped the element of causation from in failure-to-warn claims.  Indeed, 11 years after *Watkins*, the Eleventh Circuit itself held in a *medical products* case (which *Watkins* was not) to prevail on a failure-to-warn claim under Georgia law, "the plaintiff must demonstrate that the deficient warning *proximately caused the alleged injury*."  *Dietz v. Smithkline Beecham Corp.,* 598 F.3d 812, 816 (11th Cir. 2010) (emphasis added).  And as the cases cited at the beginning of this section show, Georgia courts' post-*Watkins* decisions have continued to hold that a Plaintiff "must present evidence supporting a reasonable inference that the warning provided by the defendant *would prevent the injury*." *Georgia Cas. & Sur. Co.*, 318 Ga. App. at 626, 734 N.E.2d at 420-21.  No one but Plaintiff reads *Watkins* as holding that a plaintiff need not prove that an alleged fail to warn caused an injury.

US.120755811.04

In sum, Georgia law requires a plaintiff asserting a failure-to-warn claim to prove that an additional or different warning would have prevented her injuries.

> **2.      Plaintiff offers no evidence that an additional post-sale warning would have prevented her injuries.**

Plaintiff fails as a matter of law to satisfy this causation element of her claim; specifically, she has offered no evidence that would permit a jury to conclude that any additional post-sale warning by Cook would have prevented any of her injuries.  Although Plaintiff spends two pages trying to piece together bits of testimony and expert opinion to create the impression that some additional warning from Cook would have caused Dr. Rheudasil to remove Plaintiff's filter earlier and thus prevent some of her injuries, all of that evidence combined amounts to nothing more than an invitation for the jury to speculate about what Dr. Rheudasil *might have done*.  Plaintiff deposed Dr. Rheudasil and had every opportunity to ask him *directly* whether a post-sale warning would have changed his treatment of Plaintiff, *but her attorneys asked no questions on the subject and Dr. Rheudasil said absolutely nothing about it*.  If anything, Dr. Rheudasil's deposition testimony cited in Cook's reply memo[2] (Dkt. 9371 at 10-14, 50-42) makes clear that -- as a vascular surgeon with over 30 years of experience placing and retrieving implantable medical products including IVC filters -- his treatment decisions before, during, and after Plaintiff's filter placement and fracture were based exclusively on his education and 30 years of experience in vascular surgery.

Plaintiff does not deny that neither Dr. Rheudasil or any other treating physician testified that they would *actually* have removed Plaintiff's filter earlier (or otherwise changed her

---

[2] As previously noted, Plaintiff likewise fails to specify what any such warning should have stated; when it should have been given; or in what form it should have been given.  *See* Dkt. 9371 at 48-50.  These are key elements to any claim of failure-to-warn, and without these details neither the Court nor jury can properly consider whether there was a defect in the design of the existing warnings.

5

treatment) had Cook provided them with any additional warnings *after* Dr. Rheudasil placed Plaintiff's filter.  Likewise, Plaintiff does not deny that no testimony or report from any of her experts opines that any additional warning from Cook would have compelled Dr. Rheudasil to remove the filter earlier or would have prevented any of her injuries.

Lacking any actual evidence, Plaintiff strains instead to squeeze possible inferences out of Dr. Rheudasil's testimony and her experts' reports, and tries to gloss over the holes in her evidence through attorney argument such as "it is almost certain that" and "would likely have caused." Dkt. 9590 at 8-9.  But this is all speculation, an attempt to create an impression of what decisions Dr. Rheudasil *would* have made based solely on possibility and conjecture to try to avoid the consequences of failing to actually *ask* Dr. Rheudasil those questions.  Moreover, Plaintiff's argument rests heavily on her assertion about Dr. Rheudasil's supposed "testimony that he would not have used the Celect in the first place if adequately warned," Dkt. 9590 at 8, but she cites no actual testimony to support her assertion.   And Plaintiff fails even to acknowledge the undisputed evidence that undercuts her conjecture about Dr. Rheudasil's post-placement treatment of her, including (1) Dr. Rheudasil testified that his decision not to further attempt to retrieve Plaintiff's filter after his percutaneous attempt in 2011 was based in part on his belief that the Celect continued to provide benefits to Plaintiff between 2011 and 2015, *despite his knowledge that her filter had fractured and fragments had embolized in June 2011*, and (2) two FDA Safety Communications to physicians during the time that Plaintiff's filter was in place (provided in 2010 and 2014) urged prompt removal of retrievable IVC filters when the risk of pulmonary embolism had passed, and Dr. Rheudasil did not change his course of treatment of Plaintiff   *See* Dkt. 9371 at 50-51 (citing evidence).   Plaintiff's argument is speculation and nothing more.

6

The Georgia Court of Appeals addressed a similar effort to fabricate an inference of causation in *Niles v. Bd. of Regents*, 473 S.E.2d 173 (Ga. App. 1996).  In *Niles*, the plaintiff student sued his college for injuries he suffered when a metal canister of chemicals he was cleaning exploded, claiming that the college should have warned him about the possibility of such an explosion, either in written form or through a training course.  *Id.* at 175.  The court rejected the plaintiff's claim on the ground (inter alia) that the plaintiff had offered no evidence that the warnings he suggested would in fact have prevented his injuries:

> Even if [defendants] had a duty to warn [plaintiff] of this danger by hand-delivering him copies of "material safety data sheets," by reducing the cleaning procedure to writing, or by giving him a laboratory safety course, as he suggests, *no evidence supports a reasonable inference that this action would have prevented the accident.*

*Niles*, 473 S.E.2d at 176 (emphasis added).  The court emphasized in particular the need for a reasonable basis for an inference of causation, as opposed to mere speculation:

> "An inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility." (Citation and punctuation omitted.) *Derry v. Clements*, 197 Ga. App. 173, 174 (397 S.E.2d 594) (1990). "The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains *one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant*."

*Id.* (some citations omitted, emphasis added).  The Georgia Court of Appeals reaffirmed that holding just a few years ago in *R & R Insulation Services, Inc. v. Royal Indem Co.*, 705 S.E.2d 223, 233 (Ga. App. 2010). *See also* Ga. Code Ann. § 51-12-8 ("If the damage incurred by the plaintiff is only the … possible result of a tortious act …, such damage is too remote to be the basis of recovery against the wrongdoer.").

7

US.120755811.04

Likewise here, Plaintiff can only speculate and offer conjecture about what might have happened had Cook issued a post-sale warning. She never got that evidence directly from "the horse's mouth": Dr. Rheudasil. She has thus failed create a genuine issue of material fact on the proximate-causation element of any post-sale warning claim, and the claim fails as a matter of law.

**B.      Plaintiff failed to adequately plead a post-sale duty to warn claim.**

Beyond causation, Plaintiff's post-sale failure-to-warn claim fails for multiple other reasons as well.  As a threshold matter, there is no post-sale duty to warn claim properly before the Court because Plaintiff failed to properly plead such a claim in this matter in the first place.[3] Notably, Plaintiff's response cites no law and provides no analysis concerning what constitutes the adequate pleading of a claim under the federal rules.  Although the standard in Rule 8 is generous, it nevertheless sets a floor for pleadings, requiring a plaintiff to identify some factual support for the claims asserted in order to survive a motion to dismiss.  The Supreme Court, the Seventh Circuit, and this Court have all made clear that simple conclusory allegations do not suffice under this standard:

> "[A]lthough the complaint's factual allegations are accepted as true at the pleading stage, allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion. Accordingly, '[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice.'"

*Boyd v. Evansville Hous. Auth.*, No. 3:12-CV-00199-RLY, 2013 WL 5771191, at *2 (S.D. Ind. Oct. 24, 2013) (quoting *McReynolds v. Merrill Lynch & Co.,* 694 F.3d 873, 885 (7th Cir.2012) and *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009)).  *See also Benson v. Cady,* 761 F.2d 335, 338

---

[3] Plaintiff does not claim that she plead a claim for breach of a duty in her Amended Short Form Complaint, merely noting that her Short Form Complaint incorporated the Master Complaint by reference.  *See* Dkt. 9590 at 2 n.1.  As noted in Cook's original reply, the Master Complaint asserts the existence of a continuing duty to warn, but never claims that Cook breached that duty or that any such breach caused any injury.  *See* Dkt. 9371 at 45-46.

(7th Cir. 1985) (holding plaintiff "must 'set out sufficient factual matter to outline the elements of his cause of action or claim, proof of which is essential to his recovery'"). Plaintiff's allegations in the Master Complaint fail to assert *any* factual basis for a claim of breach of a post-sale duty to warn, much less allegations adequate under *Iqbal* and *Twombly*.

Plaintiff points to eight specific paragraphs in the Master Complaint that she claims "plead breach by Cook of a post-implantation duty to warn." Dkt, 9590 at 1-2. But Plaintiff cites nothing in any of these paragraphs that even generally alleges any facts supporting either the existence of such a post-sale duty here or the breach of that duty, and in fact they contain no such factual allegations. On the contrary, many of these paragraphs allege facts and duties to warn that are explicitly and necessarily ***pre***-sale. *See, e.g.*, Master Complaint (Dkt. 213) ¶ 5 (alleging Cook filters "are unreasonably dangerous and not *accompanied by adequate warnings* about its [sic] danger"); (alleging Cook filters "were widely *advertised and promoted* by the Defendants as safe and effective treatment"); ¶ 50 (claiming "Defendants failed to provide sufficient warnings and instructions that would have put Plaintiffs and the general public on notice of the dangers and adverse effects *caused by implantation* of the Cook Filters"); 56 (alleging "these risks and dangers were known or knowable *at the times of distribution and implantation* in Plaintiffs") (all emphases added).

Doubtless realizing that none of the factual allegations would support a theory of a breach of a post-sale duty to warn, Plaintiff instead relies entirely on the recitation in each of the cited paragraphs of the phrase "at all times relevant hereto." Dkt. 9590 at 1-2. Plaintiff argues that, because Georgia law permits claims for breach of a post-sale duty to warn under some circumstances, her use of the "times relevant" language was sufficient to give notice that she was asserting such a claim. But Plaintiff misses the point: the issue is not whether Georgia law

9

might have permitted the claim had Plaintiff asserted it, but whether Plaintiff has *actually* pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The "relevant times" language on which Plaintiff relies provides no basis for such an inference. As a result, the legal claim of breach of a post-sale duty to warn is not properly before the Court and cannot be presented to the jury. And given that the pleading was not *legally* sufficient, it certainly was not sufficient to put Cook on notice that Cook needed to move for summary judgment on Plaintiff's "stealth" claim.

Moreover, Plaintiff's argument based on the "relevant times" language is irredeemably circular. Plaintiff argues that she pleaded a breach of a post-sale duty to warn because she alleged that Cook failed to warn "at all relevant times," and then argues that "all relevant times" must include times after the sale because she asserted a post-sale duty to warn. If Plaintiff intended to assert the breach of a post-sale duty to warn, she was obligated to allege facts that would support such a claim, and she failed to do so.

Plaintiff also argues that because Cook knew that Georgia law permitted a claim for breach of a post-sale duty to warn, "Cook should have known that Ms. Brand pled a breach of its post-sale duty to warn." But again, the issue is not what Cook should have guessed Plaintiff wanted or intended to plead, it is what Plaintiff *actually* pleaded, and Plaintiff did not plead either a claim for a breach of a post-sale duty to warn or any facts to support such a claim. Plaintiff pleaded (in merely one line of the Master Complaint) only the existence of a continuing duty to warn, *see* Dkt 213 ¶ 60, but she *did not* plead a *breach* of that duty, an *injury* as a result of such a breach, or any *facts supporting any element* of such a claim. Pointing to a singular reference to the existence of a duty in the Master Complaint applicable to all cases in this multi-district litigation is an insufficient substitute for actually asserting a legal claim.

10

Finally, Plaintiff insists that Cook must have known that she was asserting a claim for breach of a post-sale duty to warn because Cook moved in limine to exclude evidence relating to such a duty. Dkt. 9590 at 3. But parties often move to exclude evidence precisely because the evidence does not relate to a claim properly at issue. *See, e.g.*, Dkt. 8994 at 38-44 (Cook's motion to exclude evidence of communications "misleading" FDA because no such claim exists), 64-68 (Cook's motion to exclude testimony about injuries about which Plaintiff's experts had disavowed support). Perhaps more importantly, Plaintiff wholly ignores the fact that in the very motion in limine she cites, Cook pointed out that she *neither asserted nor supported* any claim that she was injured by Cook's breach of any post-sale duty to warn:

> As a threshold matter, Plaintiff has not asserted that she suffered any injuries as a result of any such post-retrieval failure to warn, and the evidence thus is not relevant. In addition, she has identified no expert who will testify to any such failure or any resulting injury, and any evidence or argument thus could not as a matter of law support such a claim.

Dkt. 8889 at 39. Plaintiff cannot claim that Cook's motion constitutes an admission that she asserted a claim when the motion itself expressly denies that she did so.

In sum, Plaintiff cannot defeat summary judgment by alleging Cook somehow waived its right to move for summary judgment on a claim she has not properly pleaded, and that was not an issue in the case until she filed her response to summary judgment. *See Perry v. Noll*, No. 117CV00216TWPDML, 2018 WL 3729133, at *2 (S.D. Ind. Aug. 6, 2018). Where a plaintiff raises a legal theory for the first time in response to a motion for summary judgment, a defendant cannot be said to have waived its right to seek relief under Rule 56. *Id.*

C.      **Plaintiff's post-sale failure-to-warn claim is premised on a "duty to recall," which Georgia does not recognize and Plaintiff fails to support with evidence.**

Plaintiff's response barely addresses the additional problem that her supposed claim for post-sale failure to warn is a *de facto* claim of a "duty to recall" that is impermissible under

11

Georgia law.  *See Reese*, 684 S.E.2d 279 283-84 (Ga. App. 2009).  Her only response on this

point is an assertion that the *Reese* case "meant 'recall' in the traditional sense of buying back

the products."  Dkt. 9590 at 3-4.  But Plaintiff is mistaken; the *Reese* case never mentions the

manufacturer "buying back" the product.

Plaintiff notably fails to address the *Reese* decision's discussion of "recalls" of products

governed by federal safety regulations, like the Celect filter here.  The court noted that although

special circumstances may exist where a federal agency requires a manufacturer to recall such a

product, where the plaintiff offers no evidence that "any statute or administrative regulation

*required* a recall, or that any other special circumstances existed that warranted the imposition of

a duty to recall," Georgia law does not impose a duty to recall.  *Id.* (emphasis added).

This is the situation here.  Plaintiff's allegations about Cook's supposed failure to

adequately communicate new post-sale knowledge falls squarely within the scope of the FDA's

recall power.  Plaintiff does not deny that (1) that post-sale communications by medical device

manufacturers to the health care industry are heavily regulated,[4] (2) that when such

communications address health risks associated with a product, the communications may be

deemed "corrections" to the labeling of the device,[5] (3) that such "corrections" are a type of

"recall,"[6] or (4) that the Celect has never been the subject of an FDA recall.

Plaintiff's purported claim of breach of a post-sale duty-to-warn are claims based on a

"duty to recall" that does not exist, so that claim fails as a matter of law.

---

[4] *See, e.g.*, 21 C.F.R. §§ 7.40-7.59 (outlining regulatory guidance governing voluntary recalls and corrections).

[5] *See* 21 C.F.R. § 7.3 ("Correction means … relabeling… of a product without its physical removal to some other location.").

[6] *See* 21 C.F.R. §§ 7.3, 7.40 ("[r]ecall means a firm's removal or correction of a marketed product").

12

### D.      Plaintiff has no expert evidence demonstrating Cook breached any post-sale duty to warn

Plaintiff's effort to retroactively reshape her experts' opinions to fit a post-sale duty-to-warn theory fail.

The passages from Dr. Gordon's report that Plaintiff quotes, *see* Dkt 9590 at 4-5, have nothing to do with post-sale warnings. The first two paragraphs expressly address claimed deficiencies in the IFU, which is necessarily *pre*-implant. Although the third quoted paragraph mentions disclosure of information in "a 'dear doctor' letter, product pamphlet or through its sales representatives," *id.* at 5, all of these types of communications can occur prior to and after the sale of a medical product. Nothing in the single sentence cited in Dr. Gordon's report even remotely suggests that Dr. Gordon is saying that Cook had a *post*-sale duty to warn. Indeed, the second sentence of this third paragraph makes clear Dr. Gordon's opinion addresses presale conduct; he states that "[o]n the contrary, Cook *downplayed* the risks and *promoted* the safety of the Celect filter as both a retrievable and permanent device," *id.* (emphasis added)—actions that would necessarily occur before the sale and implantation of the filter. The only risk he talks about in any of these paragraphs is the lack of a "perforation limiter," which he claims Cook should have warned about *before* Plaintiff's filter placement. Finally, Dr. Gordon's summary of his warning opinions in his report and deposition focused entirely on the IFU and give no hint of any opinion about post-sale warnings.[7]

---

[7] The summary states in its entirety:

> In summary, Cook's warning is inadequate because **the IFU** does not warn of the lack of a perforation limiter, the increased danger caused by same, progressive perforation, and/or the need to closely monitor for perforation (and fracture), and because **the IFU** misrepresents and downplays the risk of perforation (and subsequent fracture) in discussions of the OUS study and otherwise (there is no warning re fracture at all and perforation is classified as a potential adverse event instead of a known complication). The warning is particularly inadequate in light of the fact that Cook **markets the Celect** as safe for

13

Plaintiff also invokes what she calls her "other warnings expert,"[8] Dr. Krumholz, to try to generate an expert opinion concerning a post-sale failure to warn.  Plaintiff argues that because Dr. Krumholz relied on information after Plaintiff's filter placement as the basis for his opinions—opinions that focused on criticism of the Celect's *design*, not its warnings—that reliance "makes clear" that he intended to criticize Cook's post-sale warnings.   But Dr. Krumholz's report never says that or anything like it; indeed, in 325 pages, his report never even mentions the word "warnings" at all (other than in citing the titles of articles).

Moreover, Plaintiff's response does not identify any risk newly identified after Plaintiff's filter placement that Dr. Gordon or Dr. Krumholz claims Cook should have warned about.  Plaintiff's experts did not merely fail to state the *specific* language of post-sale warnings Cook should have given, as Plaintiff argues, *see* Dkt. 5950 at 7; they failed to suggest *even in general terms* what additional information Cook was supposed to have provided to doctors *after* implantation or when and how it should have been provided.  *See Nolley v. Greenlee Testron, Inc.*, 2007 WL 5369405, at *6 (N.D. Ga.).

---

permanent use, lulling doctors into a false sense of security. Internal Cook documents recommend the Tulip over the Celect for permanent use, but this was not conveyed to doctors. **The IFU** gives a false sense of safety by reporting on a subset of OUS patients regarding high rates of successful retrieval rates and no complications, which has been shown to be incorrect. The **retrieval rates listed** give a false sense of safety when the OUS study did not address safety, and falsified complication and perforation rates.
Dkt. 9154-2 at 16 (emphases added).

[8] Dkt. 9590 at 5.  Plaintiff did not originally identify Dr. Krumholz, a cardiologist and health care researcher, as an expert on the topic of warnings for vascular surgeons and interventional radiologists placing IVC filters.  Indeed, as noted in Cook's *Daubert* motion, Dr. Krumholz has never placed or retrieved a filter, has never prescribed a filter, and has never treated a patient related to an IVC filter post-placement.  *See* Dkt. 8633 at 27.  Dr. Krumholz unexpectedly became a "warnings expert" in response to Cook's summary judgment motion as Plaintiff tried to fill some of the gaps that Dr. Gordon left.

14

If Dr. Gordon or Dr. Krumholz believed that Cook had an obligation to warn doctors about a particular newly discovered risk of the Celect that might be relevant to post-implantation care of patients, they were certainly free to include such opinions in their report. They did not do so, and no amount of linguistic contortion can "make clear" opinions that do not exist. Plaintiff cannot now recharacterize what her experts said to fit a new failure-to-warn theory that they did not address.

**E.    Plaintiff's new claim based on an "assumed duty" fails as a matter of law for multiple reasons.**

Finally, Plaintiff's effort to add yet *another* new claim based on *another* new duty she alleges Cook voluntarily "assumed" fails for multiple legal and factual reasons. In attempting to generate an inference that Dr. Rheudasil would have removed Plaintiff's Celect IVC filter if Cook had provided additional warnings (despite the lack of testimony from Dr. Rheudasil to that effect), Plaintiff argues that Cook's communication with Dr. Rheudasil after Plaintiff's complaint was registered in July 2011 constituted the voluntary assumption of an additional duty to Plaintiff to "investigate and advise Dr. Rheudasil regarding Ms. Brand." This claim fails for several reasons.

First, Plaintiff has never pleaded or even alluded to any claim based on such an "assumed duty." It does not appear in her short-form complaint or the Master Complaint it incorporates. It does not even appear in her first summary-judgment response. And neither Dr. Gordon's or Dr. Krumholz's report mentions it. Plaintiff certainly cannot defeat summary judgment by relying on a claim she raised for the first time in a *second* response to Cook's summary-judgment motion. *See Perry v. Noll*, No. 117CV00216TWPDML, 2018 WL 3729133, at *2 (S.D. Ind. Aug. 6, 2018).

15

Second, contrary to Plaintiff's assertion, her Exhibits D and E do *not* support the proposition that "Cook knew of and sent articles describing alternative retrieval methods to doctors following unsuccessful attempts, but it did not send them to Dr. Rheudasil." Dkt. 9590. The exhibits show only that Cook knew about certain articles and *contemplated* sending them to doctors; they do not suggest that Cook actually sent the articles to other doctors, much less that Cook sent them to other doctors and excluded Dr. Rheudasil.

Third, Plaintiff cites no evidence that Dr. Rheudasil actually needed specific advice about retrievals from Cook.  On the contrary, Dr. Rheudasil's testimony establishes that he already knew that some doctors specialized in complicated retrievals and did not need Cook's advice on that point.  *See* Rheudasil Dep. at 121:12-23 ("I don't think Cook told me that.  I think I knew that probably already.").  And he undisputedly knew about and had tried alternative retrieval techniques himself, including in his first attempt to retrieve Plaintiff's filter.  *See id.* at 122:19-123:18.

Fourth, Dr. Rheudasil's testimony makes clear that he did not *in fact* rely on any information from Cook in deciding to leave Plaintiff's filter in after his initial failed retrieval attempt.  Given the complications and his view that the filter was still providing some benefit, Dr. Rheudasil made the decision to leave it in place.  The decision was Dr. Rheudasil's alone, as "captain of the ship," as he testified.  *Id.* at 84:3-85:4.

Fifth, once again, Plaintiff's assertion that some additional information from Cook would have altered Dr. Rheudasil's care of Plaintiff or would have prevented her claimed injuries is wholly speculative.  Plaintiff never asked Dr. Rheudasil whether or how his post-placement care of Plaintiff would have changed with any additional information from Cook, despite every

16

opportunity to do so at his deposition.  Plaintiff cannot now rely on speculation to substitute for a

theoretical answer to the question she decided not to ask.

In sum, Plaintiff's new claim based on a supposed "assumed duty" by Cook is

unsustainable, and cannot prevent summary judgment.

## CONCLUSION

For the reasons set forth above and in Cook's original and reply memoranda, the Cook

Defendants are entitled to summary judgment on all of Plaintiff's failure-to-warn claims in this

case.


Respectfully submitted,

Dated: November 14, 2018            /s/ Andrea Roberts Pierson
                                    Andrea Roberts Pierson (# 18435-49)
                                    Jessica Benson Cox (# 26259-49)
                                    FAEGRE BAKER DANIELS LLP
                                    300 North Meridian Street, Suite 2700
                                    Indianapolis, Indiana 46204
                                    Telephone:  (317) 237-0300
                                    Facsimile:  (317) 237-1000
                                    Email:  andrea.pierson@faegrebd.com
                                    Email:  jessica.cox@faegrebd.com

                                    Charles Webber (# 215247)
                                    Bruce Jones (# 179553)
                                    FAEGRE BAKER DANIELS LLP
                                    2200 Wells Fargo Center
                                    90 South Seventh Street
                                    Minneapolis, MN 55402
                                    Telephone: (612) 766-8719
                                    Facsimile: (612) 766-1600
                                    Email:  chuck.webber@faegrebd.com
                                    Email:  bruce.jones@faegrebd.com

                                    *Counsel for the Defendants, Cook Incorporated,*
                                    *Cook Medical LLC (f/k/a Cook Medical*
                                    *Incorporated), and William Cook Europe ApS*

17

US.120755811.04

## CERTIFICATE OF SERVICE

I hereby certify that on November 16, 2018, a copy of the foregoing **THE COOK DEFENDANTS' REPLY MEMORANDUM REGARDING PLAINTIFF'S RESPONSE IN SUPPORT OF NEW FAILURE TO WARN CLAIM** was filed electronically and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.  Lead Co-Counsel for Defendants will serve any non-CM/ECF registered parties.

*/s/  Andrea Roberts Pierson*

US.120755811.04