## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

---

IN RE COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

---

This Document Relates to the following
    16 Bird's Nest Cases:

*Henry Austin*, 1:18-cv-01313
*Robert Davis*, 1:18-cv-01375
*Elizabeth Duffy*, 1:17-cv-00254
*Brent Fichtner*, 1:18-cv-00286
*Juanita Heard*, 1:17-cv-04592
*Ernest Muhammad*, 1:17-cv-03542
*Jimmie Nixon*, 1:17-cv-04693
*Ivan Ortiz*, 1:17-cv-01802
*Herman Purvis*, 1:17-cv-02556
*Annette Sales-Orr*, 1:16-cv-02636
*Dorothy Stroech*, 1:17-cv-03543
*Mary Thomas (GA)*,1:16-cv-035521
*William Wendt*, 1:18-cv-03283
*Antoinette Williams*, 1:18-cv-00248
*Marie Wilson*, 1:17-cv-03337

---

## COOK DEFENDANTS' MEMORANDUM IN SUPPORT OF
## MOTION FOR JUDGMENT ON THE PLEADINGS BASED ON
## <u>FEDERAL PREEMPTION IN BIRD'S NEST FILTER CASES</u>

Defendants Cook Incorporated, Cook Medical LLC (*f/k/a* Cook Medical Incorporated),

and William Cook Europe ApS (collectively, "Cook" or the "Cook Defendants") move this

Court pursuant to Federal Rule of Civil Procedure 12(c) to dismiss with prejudice all claims

brought by 16 plaintiffs against the Bird's Nest Filter (the "Bird's Nest Plaintiffs") because their

claims are barred by federal preemption.[1]   The Bird's Nest Plaintiffs are listed with their

respective case numbers, lead counsel, and docket cites to their individual short-form complaints

in the table attached as **Exhibit A**.

## I.   INTRODUCTION

At least 16 of the Plaintiffs in this MDL base their claims on the placement of Bird's Nest

filters in their IVCs.   The Food and Drug Administration ("FDA") approved the sale of the

Bird's Nest filter pursuant to a pre-market approval ("PMA") application initially granted on

April 26, 1989.   *See* Bird's Nest PMA Letter, attached as **Exhibit B**.[23]   The Bird's Nest PMA

remains in effect today.

As the Court is aware from previous motions, Cook has argued in this MDL that federal

law preempts Plaintiffs' Celect- and Tulip-based claims based on the contemporary statutory and

regulatory framework and the specific nature of the 510(k) regulatory process that the FDA

undertook regarding its Celect and Tulip filters, imposing device-specific requirements that

would preempt claims against those filters.[4]   The Bird's Nest filter, however, was approved by

FDA through the PMA process, and claims based on the Bird's Nest filter are therefore

preempted under the traditional, narrower reading of preemption case law that Plaintiffs'

leadership has urged the Court to adopt.[5]   Except in very narrow circumstances not applicable

---

[1]   As noted below in paragraph 9 of the Background section, Plaintiff Jimmie Nixon was implanted with a Bird's Nest filter in 2004 and a Tulip filter in 2011.   *See* Nixon Complaint, 1:17-cv-04693, Dkt. 1, ¶¶ 10–11.   With respect to his case only, Cook limits this Motion to the claims based on the Bird's Nest Filter, and does not in this Motion move for dismissal of Plaintiff Nixon's claims based on his Tulip filter.

[2]   The Court may take judicial notice of the Bird's Nest's PMA status.   *See supra* Section III.

[3]   Cook reserves the right to assert any other dispositive issues such as statutes of limitation and repose that may be applicable in these cases if they are not dismissed on preemption grounds.

[4]   *See* Dkts. 5727 & 8668 (Cook's preemption motions in the *Hill, Gage*, and *Brand cases*).

[5]   *See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment Based on Federal Preemption (*Brand*), Dkt. 8834, pp. 3, 16; *Hill* Motions Hearing Tr. (Sept. 25, 2017), p. 148:1-6 (Plaintiffs' argument on preemption).

here, that narrower reading of the Supreme Court's preemption doctrine holds that state tort law claims against a PMA medical device are pre-empted by the Medical Device Amendments ("MDA"), 20 U.S.C. § 360c, et seq., to the Federal Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, et seq. *See generally Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008) (express preemption); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001) (implied preemption).

The Bird's Nest Plaintiffs allege claims sounding in strict liability, negligence, implied and express warranties, state consumer protection statutes, and ancillary claims derivative of these primary claims. *See generally* Exhibit A (listing docket cites to the Bird's Nest Plaintiffs' short-form complaints). These traditional state tort and product liability causes of action are expressly preempted because they would impose requirements that are different from, and in addition to, device-specific requirements the FDA imposed when it granted the PMA for the Bird's Nest filter. The claims are also impliedly preempted under *Buckman* to the extent they are premised on violations of federal regulations, because sole authority to enforce alleged violations of the FDCA rests with the FDA. *See* 21 U.S.C. § 337(a) (enforcement "shall be by and in the name of the United States.") In other words, there is no private right of action to enforce alleged violations of FDA regulations.

Although the *Riegel* court left a narrow gap for plaintiffs to potentially bring state law claims that run "parallel" to federal regulations and thus survive preemption, the Bird's Nest Plaintiffs have not pled any such parallel claims. Plaintiffs' Master Consolidated Complaint for Individual Claims ("Master Complaint"), Dkt. 213, is focused on 510(k) filters and does not mention the Bird's Nest, much less allege parallel claims regarding that filter that could survive preemption. And although the short-form complaint form permits plaintiffs to plead additional

US.120327689

"other" claims and assert additional factual allegations, the Bird's Nest Plaintiffs do not assert any additional claims or allege any additional facts on which a parallel claim could potentially be premised.  Accordingly, the Bird's Nest Plaintiffs' claims are preempted by federal law, and the Court should dismiss these cases with prejudice for failure to state a viable claim.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The PMA for the Bird's Nest Filter

1.      Cook applied for premarket approval of the Bird's Nest filter on July 10, 1985, and FDA granted the PMA four years later, on April 26, 1989.  *See* Ex. B, Bird's Nest PMA Letter.

2.      At the time Cook submitted its application for the Bird's Nest PMA, IVC filters were Class III devices.  *See* 45 Fed. Reg 7,973 (February 5, 1980).  IVC Filters were subsequently down-classified to Class II.  *See* 65 Fed. Reg 17,144 (March 31, 2000).

3.      The Bird's Nest PMA has been supplemented nine times, most recently in 2006.[6] The PMA approval remains in effect, as supplemented, to this day.

### B.    The Bird's Nest Plaintiffs and their Claims

4.      Plaintiffs' Master Complaint does not mention the Bird's Nest.  It summarizes the litigation and products at issue as:

> [Plaintiffs'] allegations, claims and theories of recovery relate to the Defendants' design, manufacture, sale, testing, marketing, labeling, advertising, promotion, and/or distribution of its unsafe medical devices known as [Gunther Tulip Mreye, Gunther Tulip Vena Cava Filter, Cook Celect Vena Cava Filter, and the Cook Celect Platinum] hereinafter "Cook IVC Filters" or "Cook's IVC Filters."

---

[6]    *See* FDA, *Premarket Approval (PMA) Search: Cook Bird's Nest Vena Cava Filter*, PMA Number P850049, available at https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfPMA/pma.cfm?id=P850049 (FDA website information on the Bird's Nest PMA and links to information on supplemental PMA submissions S001- S009) (last updated October 15, 2018) (accessed October 19 2018).

US.120327689

Master Complaint, Dkt. 213, ¶ 1; *see also id.*, ¶ 22 ("Cook's products at issue in this matter include the [same four filters listed above]").

5.      The Master Complaint also alleges that "the Cook Filters" [as defined above] are 510(k) products. *See id.*, ¶ 30. There is no mention of the Bird's Nest and no acknowledgement that it is a PMA filter.

6.      The Master Complaint further alleges generally that Cook violated a myriad list of FDA regulations. *See id.*, ¶¶ 89–92.

7.      In their individual short-form complaints incorporating the Master Complaint, each Plaintiff identified the filter(s) at issue by checking the appropriate box in Paragraph 10 of the short-form complaint form. The checkbox list includes the four filters listed in the Master Complaint (Gunther Tulip Mreye, Gunther Tulip Vena Cava Filter, Cook Celect Vena Cava Filter, and the Cook Celect Platinum) and also provides an "other" field. The Bird's Nest Plaintiffs each filed a short-form complaint and wrote in the Bird's Nest as the filter at issue. *See* Ex. A. (listing docket cites).

8.      Individual Plaintiffs assert specific legal claims against the Cook Defendants by checking in Paragraph 14 of the short-form complaint specific causes of action from the Master Complaint. Below the eleven counts pled in the Master Complaint, the short-form complaint form includes an "other" field where a Plaintiff may allege additional claims and provides blank lines for the Plaintiff to "state the facts supporting this ['other'] Count…." *See id.* All the Bird's Nest Plaintiffs left the "other" field blank. *See id.*

9.      Bird's Nest Plaintiff Jimmie Nixon alleges that he received two filters: the Bird's Nest in 2004 and the Tulip in 2011. *See Nixon* Complaint, 1:17-cv-04693, Dkt. 1, ¶¶ 10–11. Thus, Cook limits the underlying Motion to Plaintiff Nixon's claims against the Bird's Nest

US.120327689

filter, and does not encompass any claims Plaintiff Nixon may have with respect to the Tulip filter.

10.     Bird's Nest Plaintiff Annette Sales-Orr's strict liability claims were previously dismissed on statute of repose grounds.  *See* Entry on Motion for Judgment on the Pleadings Based on the Statute of Repose, Dkt. 4918, pp. 7–8, 15–16.  As part of the underlying Motion, Cook moves to dismiss the remaining claims in her case.

11.     On January 24, 2018, counsel for Cook e-mailed counsel in the ten Bird's Nest cases that were pending at that time.  The email explained that the Bird's Nest filter was a PMA device, asked counsel to review and voluntarily dismiss these cases, and stated that Cook otherwise intended to move the Court to dismiss these cases on preemption grounds.  *See* Email from A. Pierson to Bird's Nest Plaintiffs' Counsel, attached as **Exhibit C**.

12.     That same day, counsel for Bird's Nest Plaintiff Sales-Orr sent a response email rejecting the dismissal request, noting the parallel claim exception, and asking Cook to "reconsider whether these individual cases present the proper forum to present this issue to the Court."  *See* Email from J. Crone to A. Pierson, attached as **Exhibit D**.

13.     None of these Plaintiffs dismissed their claims pursuant to Cook's request.  All ten cases listed in Cook's email remain pending and are subject to the underlying Motion. *Compare* Ex. A & Ex. C.[7]

14.     Since Cook's e-mail, six additional Plaintiffs have filed cases designating the Bird's Nest as the IVC filter at issue, bringing the total to the 16 cases listed in Exhibit A.

---

[7]   The case of Plaintiff William Wendt was dismissed by the Court on September 26, 2018 due to failure to timely file a PPS.  *See* Dkt. 7709, Order on the Cook Defendants' Motion to Dismiss.  The case was refiled on October 25, 2018 and is currently pending under case number 1:18-cv-03283.

US.120327689

### III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings after the parties have filed the Complaint and Answer.   Fed. R. Civ. P. 12(c); *N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). The standard for judgment on the pleadings under Rule 12(c) is the same as the standard under Rule 12(b)(6):  the moving defendant must show that the plaintiff has failed to state a claim that is plausible on its face.  *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   A claim is not facially plausible unless "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court may grant a Rule 12(c) motion if "the plaintiff cannot prove any facts that would support his claim for relief."  *N. Indiana Gun & Outdoor Shows*, 163 F.3d at 452.  The Court must "accept the plaintiff['s] well-pled facts as true and construe reasonable inferences in [the plaintiff's] favor."  *Tierney v. Advocate Health & Hosps. Corp.*, 797 F.3d 449, 451 (7th Cir. 2015).   The Court need not accept the plaintiff's legal conclusions.  *Id.*; *see also Rogers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 197 (7th Cir. 1985).

When ruling on motions to dismiss in medical device preemption cases, courts may (and routinely do) take judicial notice of a product's PMA status.  *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2001) ("[W]e hold that it was appropriate for the court to take judicial notice, under Rule 12(b)(6) of the PMA FDA granted to Stryker for marketing its [medical device].");  *Aaron v. Medtronic, Inc.*, 209 F. Supp. 3d 994, 1014 (S.D. Ohio 2016) ("Th[e] Court may take judicial notice of [defendant's] receipt of PMA from the FDA….");  *Hawkins v. Medtronic, Inc.*,

US.120327689

62 F. Supp. 3d 1144, 1151 (E.D. Cal. 2014) (taking judicial notice of letter granting PMA status for subject medical device on 12(b)(6) motion); *Sons v. Medtronic, Inc.*, 915 F. Supp. 2d 776, 781 (W.D. La. 2013) (taking judicial notice of PMA information on FDA website regarding Class III medical device).

## IV.     ARGUMENT

**A.     The Bird's Nest underwent FDA's rigorous PMA review process.**

### 1.     FDA's PMA process is a rigorous federal safety and effectiveness review.

The FDA regulates the sale of prescription medical devices pursuant to the MDA. Congress enacted the MDA in 1976 to expand the authority of the FDA to regulate medical devices while also encouraging the research and development of medical device technology. *See generally* H.R. Rep. No. 94-853.  In discharging its responsibilities under the MDA, the FDA divides medical devices into three categories based on potential health risk posed to the public. *See* 21 U.S.C. § 360c(a)(1).  "Class I devices are those that present no unreasonable risk of illness or injury and therefore require only general manufacturing controls; Control II devices are those possessing a greater potential dangerousness and thus warranting more stringent controls; Class III devices 'presen[t] a potential unreasonable risk of illness or injury" and therefore incur the FDA's strictest regulation."  *Buckman*, 531 U.S. at 344 (quoting 21 U.S.C. § 360c(a)(1)(C)(ii)(II).  Examples of Class I devices include elastic bandages and examination gloves, examples of Class II devices include powered wheelchairs and surgical drapes, and examples of Class III devices include most implantable devices such as replacement heart valves, cerebella stimulators, and pacemakers.  *See Riegel*, 552 U.S. at 317 (internal citations to federal regulations and FDA website links omitted).

US.120327689

Before a Class III device may be brought to market, the manufacturer must provide the FDA with "'reasonable assurance' that the device is both 'safe … [and] effective under the conditions of use prescribed, recommended, or suggested in the proposed labeling thereof.'" *Buckman*, 531 U.S. at 344 (citing 21 U.S.C. §§ 360e(d)(2)(A)-(B)).  One method for providing the FDA with "reasonable assurance" that a device is safe and effective is the PMA process.  FDA review of a PMA application is a rigorous process, requiring substantial time and energy; indeed, the FDA spends on average 1,200 hours reviewing a PMA application.  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 477 (1996).  The criteria the FDA uses to assess the safety and efficacy of a device is exacting.  *See Buckman*, 531 U.S. at 343–47 (describing PMA process).

A PMA application includes detailed information about the device's design, manufacture, and labeling, including: "a full statement of the components, ingredients, and properties and of the principle or principles of operation, of such device," 21 U.S.C. § 360e(c)(1)(B); samples of the device when predictable, *id.* at § 360(c)(1)(E); and "specimens of the labeling proposed to be used for such device," *id.* at § 360(c)(1)(F).  Once approved, a PMA medical device may not be "manufactured, packaged, stored, distributed, or advertised in a manner that is inconsistent with any conditions to approval specified in the PMA approval order."  21 C.F.R. § 814.80.  Further, a manufacturer of a PMA device must seek FDA permission to make "any change to a device subject to an approved application ... that affects safety or effectiveness" of the device.  21 U.S.C. § 360e(d)(5)(A)(i).  To make such a change, the manufacturer must seek supplemental approval and "an evaluation similar to the initial application occurs."  *Warstler v. Medtronic, Inc.,* 238 F. Supp. 3d 978, 982 (N.D. Ohio 2017).

## 2.      The Bird's Nest Filter is a PMA device.

FDA approved the sale of the Bird's Nest filter pursuant to a PMA application granted on April 26, 1989.  *See* Ex. B, Bird's Nest PMA Letter.  The PMA letter is a government document

whose authenticity cannot be reasonably questioned, and courts regularly take judicial notice of the PMA letter and other information available on the FDA's website to confirm a product's PMA status. *See Funk*, 631 F.3d at 783; *Aaron*, 209 F. Supp. 3d at 1014; *Hawkins*, 62 F. Supp. 3d at 1151; *Sons v. Medtronic, Inc.*, 915 F. Supp. at 781 (W.D. La. 2013).

Publicly available information on the FDA's website confirms that FDA received Cook's application for premarket approval of the Bird's Nest on July 10, 1985, and that the PMA was granted on April 26, 1989, the date of the letter.[8]  Consistent with *Lohr*, the nearly four years between initial submission and approval shows the "rigorous" federal review FDA applied to the Bird's Nest before it permitted the filter to reach the market.  *See Lohr*, 518 U.S. at 477 (describing the exacting nature of the PMA review process as "rigorous").  The FDA website further confirms that the Bird's Nest PMA has been supplemented nine times, most recently in 2006.[9]  *See e.g., Warstler*, 238 F. Supp. at 982 (noting that "an evaluation similar to the initial application occurs" whenever a PMA is supplemented).  The Bird's Nest PMA, as supplemented, remains in effect today.

**B.     The Bird's Nest Plaintiffs' claims are expressly preempted because they seek to impose different and additional requirements on Cook from requirements imposed by FDA when it granted the PMA for the Bird's Nest.**

Federal law preempts state law product liability claims against medical devices like the Bird's Nest approved through the PMA process.  Prior to 1976, the introduction of new medical devices to the marketplace was a matter left largely for the states to regulate as they saw fit.  *See Riegel*, 552 U.S. at 315.  In 1976, Congress passed the MDA, which "swept back some state obligations and imposed a regime of detailed federal oversight."  *Id.* at 316.  As part of that regime, Congress enacted an express preemption provision in the MDA for medical devices:

---

[8]     *See supra* n. 6 (summarizing location of information on FDA website, which is available at https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfPMA/pma.cfm?id=P850049).

[9]     *See id.* (links to FDA information on Bird's Nest supplemental PMA submissions S001- S009).

> [N]o state or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement –
>
> (1)     Which is different from, or in addition to, any requirement applicable under this chapter to the device, and
>
> (2)     Which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a).  Federal preemption is a doctrine that stems directly from the Supremacy Clause of the United States Constitution.  U.S. Const. art. VI, cl. 2 ("the Laws of the United States ... shall be the supreme Law of the Land ... anything in the Constitution or Laws of any State to the Contrary notwithstanding").  Therefore, state laws that conflict with federal laws are preempted and "without effect."  *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (citing *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981)).

In *Riegel*, the seminal case on preemption in the MDA context, the Supreme Court established a two-pronged test for determining whether preemption applies to a lawsuit raising state law claims involving medical devices.  552 U.S. at 321–23.  First, the trial court must determine whether the federal government has established requirements applicable to the device in question.  *Id.* at 321–22.  This prong is automatically satisfied when – as here – the FDA authorizes commercial distribution of a Class III medical device through the PMA process.  *Id.* at 321–23.  As confirmed by the Bird's Nest PMA Letter and the information on FDA's website summarized in the previous section, the Bird's Nest filter is a PMA device and the Court may take judicial notice of that fact.  *See, e.g., See Funk*, 631 F.3d at 783 ("[W]e hold that it was appropriate for the court to take judicial notice, under Rule 12(b)(6) of the PMA FDA granted to Stryker for marketing its [medical device].").

Second, the trial court must decide whether plaintiffs' state law claims are based on requirements with respect to the device that are "different from, or in addition to, the federal

US.120327689

[requirements], and that relate to safety and effectiveness." *Riegel*, 552 U.S. at 321–22. Duties under state tort law that do *not* impose different or additional requirements run "parallel" to the federal duties and are not preempted. *Id.* at 330 (citing § 260k(a)(1)). Here, the Bird's Nest Plaintiffs' short-form complaints allege traditional state tort law and product-liability claims sounding in strict liability, negligence, breach of warranties, and state consumer protection claims, and incorporate by reference the Plaintiffs' Master Complaint, Dkt. 213, where the allegations for these causes of actions are generally pled.

All of the Bird's Nest Plaintiffs' claims, regardless of legal theory, suffer from the same fatal flaw: as part of their prima facie claims, they necessarily assert that Cook should have done something different than what FDA required. When FDA granted the PMA for the Bird's Nest Filter, it required that the Bird's Nest be manufactured according to the approved design and packaged with the approved warnings that the FDA had deemed safe and effective. *See* Ex. B, Bird's Nest PMA Letter (listing requirements and approval conditions of the PMA grant). That PMA remains in effect, as supplemented, to this day. *See supra* Section IV.A.2. Cook would violate federal regulations if it "manufactured, packaged, stored, distributed, or advertised in a manner that is inconsistent with any conditions to approval specified in the PMA approval order." 21 C.F.R. § 814.80.

As a result, the Bird's Nest Plaintiffs' claims are expressly pre-empted because a "fact-finder could find liability even if the manufacturer had completely complied with FDA regulations." *Wolicki-Gables v. Arrow Int'l*, 634 F.3d 1296, 1301 (11th Cir. 2011); *see also Warstler*, 238 F. Supp. 3d at 987 ("[A] state-law claim that would require a medical device to have a design *different from that approved by the FDA through the PMA process is a frontal attack on the risk/benefit analysis that led the FDA to approve the device [in the first place]*")

- 12 -

(quoting *Caplinger v. Medtronic, Inc.*, 921 F. Supp. 2d 1206, 1222 (W.D. Okla. 2013) (emphasis in original), *aff'd*, 784 F.3d 1335 (10th Cir. 2015)).  Simply put, Cook would be in violation of FDA requirements, *see* 21 C.F.R. § 814.80, had it designed or manufactured the Bird's Nest Filter differently, or provided different warnings, as the Bird's Nest Plaintiffs' claims necessarily assert Cook should have done.

When state law imposes requirements different or additional to federal requirements, the state law claims, such as all the Bird's Nest Plaintiffs' claims here, are expressly preempted and must be dismissed.  *See McCutcheon v. Zimmer Holdings, Inc.*, 586 F. Supp. 3d 917, 921–22 (N.D. Ill. 2008) (dismissing entire complaint with prejudice and noting that federal preemption "doom[ed] [plaintiff's] common-law claims"); *Warstler*, 238 F. Supp. 3d at 992 (dismissing plaintiff's claims, including strict liability claims, express and implied warranty claims and various negligence claims, on PMA preemption grounds); *Aaron*, 209 F. Supp. 3d at 1016 (finding that plaintiffs' claims "represent an attempt to use state law to violate the regulatory monopoly on medical devices which was granted to the FDA" and dismissing plaintiff's product liability, negligence, and warranty claims on preemption grounds); *Walker v. Medtronic, Inc.*, 670 F.3d 569, 581 (4th Cir. 2012) ("Because [the pump] was undisputedly designed, manufactured, and distributed in compliance with the FDA premarket approval, and [plaintiff's] common law claims exceed or differ from, rather than parallel, federal requirements, we hold that each of her specific claims for negligence, strict liability and breach of warranty is preempted.")

Indeed, the District of Minnesota sitting as an MDL court dismissed the master complaint in a medical device MDL because the device at issue was a PMA device.  *See In re Medtronic, Inc. Sprint Fidelis Leads Prod. Liab. Litig.*, 592 F. Supp. 2d 1147, 1165–66 (D. Minn. 2009).

- 13 -

The ruling effectively ended the entire mass tort, with the court dismissing all 21 of plaintiffs' claims because they were either preempted or derivative of preempted claims. *See id.* The court specifically noted that "express-warranty claims are preempted for the same reason as the implied warranty claims," and that ancillary claims such as loss of consortium and unjust enrichment were derivative of preempted claims and thus also preempted. *See id.* at 1164–65. The court also held that misrepresentation claims and claims premised on state consumer protection statutes were preempted. *Id.* at 1165. The Court concluded by stating:

> [T]he Court recognizes that at least some Plaintiffs have suffered injuries from using [the device] and the Court is not unsympathetic to their plight. But Plaintiffs assert claims for which the Court simply cannot provide a remedy … Plaintiffs' remedy, therefore, lies with Congress, and not with the Court (or any other court).

*Id.* at 1166.

Because the FDA has specifically determined that the Bird's Nest is safe and effective through the PMA grant, express federal preemption prevents the Bird's Nest Plaintiffs from questioning that determination through state tort law.

**C.    The Bird's Nest Plaintiffs' claims are also impliedly preempted because the Supreme Court has held that only the FDA has power to enforce alleged violations of federal regulations, not private parties through private causes of action.**

To the extent the Bird's Nest Plaintiffs may claim to premise their cases on alleged violations of federal regulations, such claims would be impliedly preempted under *Buckman*, the Supreme Court's seminal decision on implied preemption in the medical device context.

The FDCA provides that all actions to enforce FDA requirements "shall be by and in the name of the United States." 21 U.S.C. § 337(a). The Supreme Court has construed § 337(a) as impliedly preempting private causes of action "for noncompliance with medical device provisions." *Buckman*, 531 U.S. at 349; *see also Aaron*, 209 F. Supp. 3d at 1002 ("As an

- 14 -

US.120327689

alternative to private tort suits, Congress granted the FDA extensive authority to police device manufacturers ....") (citing *Buckman*, 531 U.S. at 349).

Here, Plaintiffs' Master Complaint makes general allegations about Cook's compliance with medical device reporting requirements, including adverse-event reporting. *See* Master Complaint, Dkt. 213, ¶¶ 89–92. To the extent the Bird's Nest Plaintiffs seek to rely on these portions of the Master Complaint for their claims, such claims are impliedly preempted. As the Northern District of Ohio explained in *Aaron*:

> Any tort claim based on an alleged failure to submit adverse-event reports to the FDA 'would not be relying on traditional state tort law which had predated' the FDCA because no duty to submit reports to the FDA would exist absent the FDA and the FDCA. Since 'the existence of these federal enactments' is therefore 'a critical element' of any such claims, those claims are impliedly preempted.

*Aaron*, 209 F. Supp. 3d 994, 1010 (quoting *Buckman*, 531 U.S. at 353 and holding that plaintiffs' failure to warn claim, negligence, and misrepresentation claims were impliedly preempted because they were premised on allegations regarding adverse event reporting). Similarly, the Middle District of Florida found a failure-to-warn claim was impliedly preempted because a state failure-to-warn duty is limited to information required to be provided to the learned intermediary but "the MDA requires manufacturers to provide reports of adverse events associated with a medical device to the FDA; and the information contained in these reports may or may not reach physicians." *Marmol v. St. Jude Med. Ctr.*, 132 F. Supp. 3d 1359, 1369 (M.D. Fla. 2015) (holding plaintiff's failure to warn claim was impliedly preempted because it "premised upon an FDA-reporting requirement that is not paralleled by a Florida-law duty").

As these examples illustrate, the Bird's Nest Plaintiffs cannot premise their claims on violations of federal regulations because enforcement of alleged violations of FDA regulations is exclusively a matter for FDA. *See* 21 U.S.C. § 337(a) (requiring that all enforcement actions of

- 15 -

FDCA "shall be by and in the name of the United States"); *McClelland*, 944 F. Supp. 2d at 1200–01 (holding that claims premised on violations of FDA regulations regarding adverse incidents were impliedly preempted as a thinly veiled attempt to "recast a claim for violation of the FDCA as a state-law negligence claim."); *Cupek v. Medtronic, Inc.*, 405 F.3d 421 (6th Cir. 2005) (affirming trial court's dismissal on implied preemption grounds of negligence per se claim alleging violations of PMA conditions).

Simply put, there is no private right of action to enforce violations of FDA regulations, and the Bird's Nest Plaintiffs' claims are preempted to the extent they seek to do that here. *See In re Darvocet, Darvon, & Prophyxlphene Prods. Liab. Litig.*, 756 F.3d 546, 553 (6th Cir. 2012) (holding "negligence claims" premised on a "a violation of the FDCA" were impliedly preempted "because the FDA has the exclusive power to enforce the FDCA" and therefore there is "no private right of action to enforce the statute"); *Aaron*, 209 F. Supp. 3d at 1002 (same).

**D.     Plaintiffs have not pled parallel claims and therefore the parallel claim exception therefore does not apply here.**

The Bird's Nest Plaintiffs have failed to assert any claims of "parallel" state and federal duties that might allow them to avoid federal preemption.  Courts have noted that the combined effects of express and implied preemption under *Riegel* and *Buckman* respectively preempt almost all state law causes of action based on a PMA device:

> *Riegel* and *Buckman* create a narrow gap through which a plaintiffs' state-law claim must fit if it is to escape express or implied preemption.  The plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*).

*McClelland v. Medtronic, Inc.*, 944 F. Supp. 2d 1193, 1200 (M.D. Fla. 2013) (quoting *In re Medtronic, Inc., Sprint Fidelis Leads Prod. Liab. Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010)); *see also Sprint Fidelis Leads*, 592 F. Supp. 2d at 1661 ("When Sections 337(a) and 360k(a) – as

- 16 -

construed in *Buckman* and *Riegel*, respectively – are read together, nearly all types of claims concerning FDA-approved medical devices are preempted.").

Although the combined effects of *Riegel* and *Buckman* leave a "narrow gap" for state tort law claims that run parallel to federal regulations, the Bird's Nest Plaintiffs have not pled parallel claims that could survive preemption. Put differently, there is nothing in the Master Complaint or the Bird's Nest Plaintiffs' individual short-form complaints that could anchor a parallel claim against the Bird's Nest filter.

**1.      Plaintiffs' Master Complaint does not plead parallel claims relating to the Bird's Nest.**

Plaintiffs' Master Complaint never mentions the Bird's Nest Filter. The Master Complaint states:

> [Plaintiffs'] allegations, claims and theories of recovery relate to the Defendants' design, manufacture, sale, testing, marketing, labeling, advertising, promotion, and/or distribution of its unsafe medical devices known as [Gunther Tulip Mreye, Gunther Tulip Vena Cava Filter, Cook Celect Vena Cava Filter, and the Cook Celect Platinum] hereinafter "Cook IVC Filters" or "Cook's IVC Filters."

Master Complaint, Dkt. 213, ¶ 1; *see also id.*, ¶ 22 ("Cook's products at issue in this matter include the Gunther Tulip Myere, Gunther Tulip Vena Cava Filter, Cook Celect Vena Cava Filter and the Celect Platinum…."). There is no mention of the Bird's Nest Filter in these two paragraphs or anywhere else in the Master Complaint.

The Master Complaint also alleges that Cook "sought [FDA] approval to market the Cook Filters and/or its components under Section 510(k) of the Medical Device Amendment[s to the FDCA]." *Id.*, ¶ 30. However, as noted above, the Bird's Nest is a PMA filter, so Plaintiffs' general liability theories expressly premised on 510(k) filters do not apply to the Bird's Nest. Indeed, the Master Complaint concedes "the difference between the 510(k) process and the more rigorous 'premarket approval' process" and cites case law that supports Cook's argument that the

Bird's Nest cases are preempted. *See id.*, ¶¶ 31–32. The Master Complaint therefore does not assert any claims against the Bird's Nest, much less parallel claims that could fit through the "narrow gap" that may survive preemption. Accordingly, the Bird's Nest Plaintiffs cannot derive a parallel claim from cross-referencing the Master Complaint.

      **2.**      **The Bird's Nest Plaintiffs have not plead parallel claims in their Short-Form Complaints.**

Although the template short-form complaint permits Plaintiffs to allege additional "other" claims and provides space to write in "the facts supporting this 'other' Count," the Bird's Nest Plaintiffs have not alleged any additional claims or facts in support thereof. *See id.* Their short-form complaints merely write in "Bird's Nest" in the paragraph identifying the filter, and provide the basic jurisdictional facts and information on the procedure at issue (i.e. placement date, hospital, and physician).

Because none of the Bird's Nest Plaintiffs raises any specific allegations in the short-form complaints, they necessarily have not identified any parallel state-law claim based on the Bird's Nest that could fit through the "narrow gap" in the Supreme Court's preemption doctrine.

      **3.**      **Plaintiffs' leadership has acknowledged that FDA imposes device-specific requirements for PMA devices.**

Finally, the Court should take note that the MDL Plaintiffs' leadership has acknowledged the high bar that federal preemption doctrine imposes on claims involving PMA devices. Most recently, in their response to the preemption motion Cook filed in the *Brand* case, Plaintiffs' Lead counsel stated:

> [F]ederal requirements are neither imposed nor created during the FDA's 510(k) pre-market notification review process, as opposed to the review FDA undertakes when examining a pre-market approval (PMA) submission for which preemption has been found by some courts to apply…

Dkt. 8834 at 3; *see also id.* at 16 ("510(k) review does not establish federal requirements like PMA approval does").  When the substantively equivalent motion was heard in the *Hill* case, counsel from Plaintiffs' Executive Committee acknowledged as part of her argument that it "would be a completely different treatment under the current standing law, if we were actually here on a PMA case."  *Hill* Motions Hearing Tr. (Sept. 25, 2017), p. 148:1–6, attached as **Exhibit E**.

With respect to the Bird's Nest Plaintiffs, Cook is indeed "here on a PMA case," and as Plaintiffs' leadership acknowledged, that fact compels "a completely different treatment under the current standing law"—namely, the PMA for the Bird's Nest filter imposes device-specific federal requirements.  Federal law preempts the Bird's Nest Plaintiffs' claims.

## CONCLUSION

For the reasons stated above, the Cook Defendants respectfully request that the court dismiss with prejudice the cases filed by the Bird's Nest Plaintiffs listed in **Exhibit A** because their claims are barred by federal preemption.[10]

Respectfully submitted,

FAEGRE BAKER DANIELS LLP

Dated: November 21, 2018

*/s/ Andrea Roberts Pierson*
Andrea Roberts Pierson (# 18435-49)
Jessica Benson Cox (# 26259-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:   (317) 237-1000
Email:  andrea.pierson@faegrebd.com
Email:  jessica.cox@faegrebd.com

---

[10] As noted above, with respect to Bird's Nest Plaintiff Jimmie Nixon, the Cook Defendants' request is limited to his claims involving the Bird's Nest filter.

US.120327689

Bruce Jones (# 179553)
Charles Webber (# 215247)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota  55402
Telephone: (612) 766-8719
Facsimile:  (612) 766-1600
Email:  bruce.jones@faegrebd.com
Email:  chuck.webber@faegrebd.com

*Counsel for the Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2018, a copy of the foregoing COOK DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS BASED ON FEDERAL PREEMPTION IN BIRD'S NEST FILTER CASES was filed electronically, and notice of the filing will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.  Lead Counsel for Defendants will serve any non-CM/ECF registered parties.

*/s/ Andrea Roberts Pierson*

US.120327689