IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates to:

*Brand v. Cook Medical, Inc. et al.,*
Case No. 1:14-cv-6018-RLY-TAB

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S DECEMBER 5, 2018 GRANT OF SUMMARY JUDGMENT ON PLAINTIFF'S FAILURE TO WARN CLAIMS**

Plaintiff Tonya Brand respectfully moves the Court to reconsider its grant of summary judgment on Plaintiff's failure to warn claims. Plaintiff is mindful of the standard for such motions, and does not bring this one lightly. But Plaintiff maintains that the Court committed clear error here, by invading the province of the jury.

The evidence presented by Plaintiff is sufficient to raise a fact issue on causation as to Plaintiff's failure to warn claims, because it is sufficient to allow the factfinder to determine that the warning was inadequate and that Dr. Rheudasil would not have used the Celect filter had an adequate warning been given. It is not the doctor's view of the underlying documents, but rather his response to an adequate warning, that is relevant to the causation inquiry. Plaintiff urges the Court to revisit this issue so that justice may be done.

**A. The evidence is sufficient to raise a fact issue concerning adequacy of the warning because both Plaintiff's experts and Cook's own documents demonstrated that the Celect filter was far more likely to cause perforation and fracture than the Tulip filter.**

The Court ruled that Dr. Rheudasil's response to hypothetical questions failed to support the element of causation, because Dr. Rheudasil was not provided the underlying documents to see if he would have interpreted them as Plaintiff does. But a treating physician would not look at the underlying

documentation that justifies warnings. Rather, the treater must rely on the warnings as provided. The testimony of Plaintiff's experts and Cook's own internal records would allow the factfinder to conclude that Cook's warnings were inadequate.

To illustrate with one significant example, Plaintiff's expert Dr. Krumholz relied on a Cook comparison table to conclude that "for relatively similar number of sales, reported complaints for Celect were dramatically higher" and "there are clinically and statistically significantly higher rates of reported perforation, migration, and retrieval difficulties with Celect, compared with Tulip." Krumholz Rep. at 119, Ex. A to Krumholz Dec., Ex. 2 to App. Specifically, the table shows that 28 fractures were reported for Tulip while 105 were reported for Celect—3.75 times more incidents of fracture. Tulip had 40 cases of penetration reported, while Celect had 165—over four times as many incidents of penetration. *Id.* Cook's own documents show that Celect had a complaint rate for penetration/perforation that was 17.5 times higher than Tulip. Exhibits 43-45. This evidence shows substantial differences in the risks associated with Celect and Tulip that should have been included in the IFU. Plaintiff's expert Dr. Gordon testified that Cook should have warned that Celect's lack of a perforation limiter increased the risk of perforation, tilt and fracture. Gordon Dep. at 158:17-159:11, Ex. 14 to App.

"Whether a warning is legally sufficient depends upon the language used and the impression that such language is calculated to make upon the mind of the average user of the product." *Thornton v. E.I. Du Pont De Nemours & Co.*, 22 F.3d 284, 289 (11th Cir. 1994). An adequate warning "must provide a complete disclosure of the existence and extent of the risk involved." *Id*. Where the warning given fails to include information that the product has greater risks than other similar products, the adequacy of the warning must be left to the jury. *See In re Mentor Corp. ObTape Transobturator Sling Prod. Liab. Litig.*, 711 F. Supp. 2d 1348, 1377–78 (M.D. Ga. 2010) (finding a fact issue "as to whether ObTape had a greater propensity to cause erosions and infections than other suburethral sling products" or "whether ObTape was associated with more severe complications than the other products"). Even when a warning is adequate for one product, it may not be adequate for a similar product that carries somewhat greater risks. *Watkins v. Ford Motor Co*., 190 F.3d 1213, 1220 (11th Cir. 1999)("What may be an adequate warning for one product is not

necessarily adequate for the next. It was, of course, precisely because of the Bronco II's greater propensity to rollover that a reasonable fact finder could conclude that Ford was required to provide a more detailed warning for this vehicle"). The Celect filter and the Tulip filter do not carry the same risk of perforation and fracture, and the warning given should not have given the impression that they did.

      **B. The evidence is sufficient to raise a fact issue that the inadequate warning caused Ms. Brand's injury because Dr. Rheudasil would have chosen another filter.**

Once the inadequacy of the warning is established, then the question of causation arises: how would the treating physician have responded to adequate warnings? It is on this question that Dr. Rheudasil's answers to hypothetical questions are very telling and support the conclusion that the inadequate warning caused Ms. Brand's injury. Dr. Rheudasil's general awareness of risks associated with IVC filters did not provide him with the information he needed to distinguish between the risks of the Celect and Tulip filters. Dr. Rheudasil did not know that Cook had removed the performation limiters from the Tulip to make the Celect, that 83% of Celect filters perforate, and that the Celect had perforation rates 18 times higher and fracture rates six times higher than the Tulip because Cook did not disclose these facts. Ex. 7, 8, 9, 11 and 55 to App; Rheudasil Dep. at 152:24-153:4, Ex. 1 to App. Dr. Rheudasil testified that, had he been made aware of a material difference between the safety of the Celect and Tulip filters, he would have used the safer filter:

    Q.    If you had been made aware by Cook of any material differences in safety between the Celect and the Tulip, would you have disclosed those differences to your patient, Tonya Brand?

    A.    No, I would have just used the safer filter.

    Q.    Okay. If safety features had been removed from a prior generation filter by Cook, then, and the new filter was the Celect, … is that something you would disclose to the patient?

    A.    No, once again, if I thought significant safety features had been removed, I would choose another filter.

Rheusadil Dep. at 157:21-158:14, Ex. 1 to App.

Finally, and critically, there is a fact issue about whether placing this information in the Celect IFU would have caused Dr. Rheudasil to choose the Tulip filter, because the evidence raises a fact issue as to

3

whether Dr. Rheudasil did read the Celect IFU before implanting the Celect filter. *Dr. Rheudasil testified that it is his usual practice to read IFUs before he implants medical devices, and he has no reason to believe that he did not read the Celect IFU sometime before implanting Ms. Brand's Celect filter*—even if he did not do so immediately before the implantation. Rheudasil Dep. at 147:24-148:4, Ex. 1 to App. This constitutes some evidence, more than a scintilla, that Dr. Rheudasil did read and was influenced by the Celect IFU before implanting the Celect filter in Ms. Brand.

Testimony far more equivocal than this has been found to raise a fact issue for the jury. *See Weilbrenner v. Teva Pharm. USA, Inc.*, 696 F. Supp. 2d 1329, 1343 (M.D. Ga. 2010)(finding fact issue when doctor believed he had read the package insert prior to prescribing drug, but could not specifically remember doing so); *In re Stand 'N Seal Prods. Liab. Litig.*, 2009 U.S. Dist. LEXIS 63540, at *20, 2009 WL 2145911 (N.D. Ga. July 15, 2009)(finding fact issue when doctor testified that he "probably" read insert but did not "specifically remember" and he "believe[d]" he did not could not say that he "did for sure"); *Statka v. Johnson & Johnson*, 2011 U.S. Dist. LEXIS 148892, at *11 (D. Minn. Dec. 28, 2011)(finding a fact issue when doctor testified that she did not remember reading the insert in 2006, but she did not testify that she had never read it). Certainly, the jury could properly have found that Dr. Rheudasil read the IFU given his testimony. It is here that the Court erred, because it resolved, against Plaintiff, a clear inference that the jury could have drawn for Plaintiff.

C.  Conclusion

In light of this evidence, viewed in the light most favorable to Plaintiff, the question of causation should be left to the jury. Plaintiff thus respectfully asks the Court to reconsider its ruling in this regard.

This 11th day of December, 2018.

                                        Respectfully Submitted,

                                        */s/ Joseph N. Williams*
                                        Joseph N. Williams, Atty. No. 25874-49
                                        Riley Williams & Piatt, LLC
                                        301 Massachusetts Avenue
                                        Indianapolis, IN 46204
                                        Telephone: (317) 633-5270
                                        Facsimile: (317) 426-3348
                                        Email: jwilliams@rwp-law.com

                                        *Liaison Counsel to Plaintiffs' Steering Committee and on behalf of Plaintiffs' Steering Committee*

                                        */s/ Michael W. Heaviside*
                                        Michael W. Heaviside, Esq.
                                        Heaviside Reed Zaic, A Law Corporation
                                        910 17th Street NW, Suite 800
                                        Washington, DC 20006
                                        Telephone: (202) 233-1993
                                        Email: mheaviside@hrzlaw.com

                                        */s/ Ben C. Martin*
                                        Ben C. Martin, Esq.
                                        The Law Office of Ben C. Martin
                                        3710 Rawlin Street, Suite 1230
                                        Dallas, TX 75219
                                        Telephone: (214) 761-6614
                                        Facsimile: (214) 74407590
                                        Email: bmartin@bencmartin.

                                        */s/ David P. Matthews*
                                        David P. Matthews, Esq.
                                        Matthew and Associates
                                        2509 Sackett St.
                                        Houston, TX 77098
                                        Telephone: (713) 522-5250
                                        Facsimile: (713) 535-7184
                                        Email: dmatthews@thematthewslawfirm.com
                                        *Plaintiffs' Co-Lead Counsel*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 11th day of December, 2018, a copy of the foregoing was served electronically and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.

                                                */s/ Ben C. Martin*
                                                Ben C. Martin