**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

This Document Relates to:

*Daniella Barrera*
Case No. 1:17-cv-03179-RLY-TAB

*John Brandes*
Case No. 1:17-cv-03129-RLY-TAB

*James M. Estes*
Case No. 1:17-cv-03780-RLY-TAB

*Hani Ghaith*
Case No. 1:18-cv-00896-RLY-TAB

*David Hare*
Case No. 1:17-cv-02067-RLY-TAB

*Nancy Rhines*
Case No. 1:17-cv-00852-RLY-TAB

*Jankie Sammy*
Case No. 1:17-cv-00887-RLY-TAB

*Diane M. Vlna*
Case No. 1:17-cv-02689-JMS-DML

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO TRANSFER VENUE**

"[I]t is hard to imagine a more appropriate forum than that of where the Defendants made, marketed and sold the product and where the Defendant is headquartered"—the Southern District of Indiana. **Exhibit 1**, Pls.' Memo. in Supp. of Mot. for Trans. & Coordination or Consolidation

Under 28 U.S.C. §1407, at p. 8. That's what the plaintiffs claimed when they moved to create this MDL. Now they want out of the MDL, and out of the Southern District of Indiana, asking the Court to transfer their cases to the districts in which they live—eight different districts in total—and all "[p]ursuant to 28 U.S.C. section 1404(a)." Dkt. 9602, Mot. to Trans. p. 1. That statute provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). But the plaintiffs' request is not about convenience of the parties or the witnesses, and it's certainly not about justice; indeed, the plaintiffs make almost no effort at all demonstrate the statutory criteria are satisfied here. Their request is instead about drowning Cook in a sea of lawsuits spread from one coast to the other—lawsuits that will proceed on different tracks, according to different procedures and different case management plans, and that will result in different rulings on similar issues by courts with no institutional knowledge of these cases. This is exactly the procedural morass that the MDL was intended to prevent.

With only one bellwether case tried so far, these cases are nowhere near ready to be transferred anywhere. The Court only recently entered a screening order and bellwether selection plan. Dkt. 9322 (Oct. 2, 2018). Plaintiffs' motion to transfer is nothing more than a request to make an end-run around that order. ***No cases*** should be transferred until that plan has had time to play out.

Plaintiffs' motion should be denied.

## ARGUMENT

For transfer to be appropriate under section 1404(a), the moving party must establish that: (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice. *Berry Plastics Corp. v. Protecto Wrap Co.*, No. 3:12-CV-73-

RLY-WGH, 2013 WL 772871, at *5 (S.D. Ind. Feb. 28, 2013). As to the third requirement, the plaintiffs must show, "by reference to ***particular*** circumstances," not merely that transfer would be more convenient, but "***clearly*** more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986) (emphasis added); *accord Elanco Animal Health, a Div. of Eli Lilly & Co. v. Archer Daniels Midland Co. Animal Health & Nutrition Div.*, No. 1:08-CV-00386-RLY-TAB, 2008 WL 4099882, at *2 (S.D. Ind. Sept. 4, 2008). "[M]ere speculation without supporting evidence" is insufficient to support transfer. *Everroad v. Scott Truck Sys., Inc.*, No. 1:06-CV-770-RLY-WTL, 2007 WL 3287115, at *1 (S.D. Ind. Nov. 6, 2007). "The court will not order a transfer unless the moving party gets beyond the language of the statute and justifies a change in forum." 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, ET AL., FEDERAL PRACTICE & PROCEDURE § 3847 (4th ed. Westlaw ver. 2018) (hereafter "WRIGHT & MILLER")

Plaintiffs make no meaningful attempt to satisfy any of the relevant transfer criteria here. At only three pages of text, their motion is conclusory, it rests on speculation about the benefits of transfer, and it is almost entirely unsupported by any evidence.

## I. Plaintiffs Have Failed to Demonstrate All Eight Proposed Transferee Districts Can Exercise Personal Jurisdiction Over All of the Defendants.

Plaintiffs claim transfer is appropriate "because jurisdiction is proper for each Plaintiff in the proposed transferee district . . . ." Dkt. 9602, Mot. to Trans. p. 4. This argument completely misunderstands the statutory criteria.

Transfer does not depend on whether the transferee district would have jurisdiction over each of the plaintiffs. Instead, "[i]n suits against multiple defendants, transfer is proper only to a district in which all of them"—that is, all of the ***defendants***—"are subject to personal jurisdiction and in which venue is proper for an action against all of them." 15 WRIGHT & MILLER § 3845. The Cook defendants have asserted lack of personal jurisdiction as an affirmative defense in all of

these cases. Dkt. 8180, Defs.' Am. Ans. p. 23. Nevertheless, Plaintiffs have made no effort at all to demonstrate—as is their burden and their burden alone, *see Berry Plastics Corp.*, No. 3:12-CV-73-RLY-WGH, 2013 WL 772871, at *5—that jurisdiction and venue are proper as to any of the defendants, let alone all of them.

For this reason alone, Plaintiffs' motion should be denied. *See*, *e.g.*, *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 106 (10th Cir. 2012) (affirming denial of transfer where plaintiffs failed to demonstrate the transferee district had jurisdiction over the defendants).

**II. Plaintiffs Have Failed to Demonstrate the Eight Proposed Transferee Districts Are Clearly More Convenient Than the Southern District of Indiana.**

In evaluating the convenience of transfer under section 1404(a), the Court considers the private interests of the parties. *Rapier v. Capital One Auto Fin., Inc.*, No. 1:07-CV-0798RLY-WTL, 2007 WL 3102148, at *2 (S.D. Ind. Oct. 22, 2007). These include: "(1) plaintiff's choice of forum, (2) the situs of material events, (3) the relative ease of access to sources of proof in each forum including the court's power to compel the appearance of unwilling witnesses at trial and the costs of obtaining the attendance of witnesses, [and] (4) convenience to the parties—specifically, their respective residences and abilities to bear the expense of trial in a particular forum." *Id.* (quoting *Von Holdt v. Husky Injection Molding Sys., Ltd.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995)). Plaintiffs have failed to demonstrate that any of these factors ***clearly*** favor transfer. *See Coffey*, 796 F.2d at 219–20.

1. A plaintiff's choice of forum is generally entitled to deference, *Alcon Mfg., Ltd. v. Apotex, Inc.*, No. 1:06-CV-1642-RLY-TAB, 2007 WL 854026, at *2 (S.D. Ind. Mar. 14, 2007), and the plaintiffs here ***chose*** the Southern District of Indiana. Their cases weren't transferred here by the JPML. Plaintiffs directly filed them here, in the Southern District. And they did so, importantly, without a direct-filing order. A direct-filing order provides that plaintiffs may file their

cases directly in the MDL court without having to file them first in their home districts only to be transferred to the MDL. *See*, *e.g.*, *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 903–04 (E.D. La. 2007). A direct-filing order also typically provides that upon completion of pretrial proceedings, the MDL court will transfer direct-filed cases to an appropriate jurisdiction. *See*, *e.g.*, *id*. Here, without filing their cases pursuant to a direct-filing order, the plaintiffs had no guarantee their cases would be transferred to their home districts later. They took this chance knowingly, and therefore they can hardly complain if their cases are not transferred to their home districts now.

At any rate, "when [a] plaintiff sues outside of his home forum," as all of the plaintiffs here have, "that choice is given less weight, and the location of defendant's residence becomes more important in determining the convenience of the parties." *Alcon Mfg., Ltd*, No. 1:06-CV-1642-RLY-TAB, 2007 WL 854026, at *2. Cook of course is headquartered in Indiana. *In re: Cook Med., Inc., IVC Filters Mktg., Sales Practices & Prods. Liab. Litig.*, 53 F. Supp. 3d 1379, 1381 (U.S. Jud. Pan. Mult. Lit. 2014).

So however one looks at it, whether from the plaintiffs' perspective or the defendants', this factor favors keeping the case here, in the Southern District.

2. The Southern District of Indiana is also the situs of events material to these cases. As Plaintiffs themselves have alleged in their master complaint: "A substantial amount of activity giving rise to the claims occurred in this District, and Defendants may be found within this District." Dkt. 213, Master Compl. ¶ 28. It may well be that the filters were implanted by doctors at hospitals in other districts, but these cases aren't medical malpractice cases; they're product liability cases, making Cook's world headquarters—"the center of the accused activity"—the preferred forum. *See In re Recombinant DNA Tech. Patent & Contract Litig.*, No. MDL DOCKET 912,

1994 WL 270712, at *31 (S.D. Ind. Dec. 22, 1993) (quoting *S.C. Johnson & Son, Inc. v. Gillette Co.*, 571 F. Supp. 1185, 1187 (N.D. Ill. 1983)). This factor therefore also favors keeping the case in Indiana.

3. Plaintiffs likewise have conceded that "[t]he evidence necessary in these matters will be found in th[is] district," and that "[m]any and perhaps most of the corporate witnesses and documents will be located in the district . . . ." **Exhibit 1**, Pls.' Memo. in Supp. of Mot. for Trans. & Coordination or Consolidation Under 28 U.S.C. §1407, at p. 8. Courts often consider the relative convenience of the witnesses as the most significant of the relevant factors. *See Berry Plastics*, No. 3:12–cv–73–RLY–WGH, 2013 WL 772871, at *6. In evaluating this factor, courts examine the "residence of the witnesses, the cost of obtaining their attendance, the nature of their potential testimony, and the availability of compulsory process for nonparty witnesses." *Id*. (quoting *Utley v. N. Am. Van Lines, Inc.*, No. IP 02–0249–C–T/K, 2002 WL 31431482, at *2 (S.D. Ind. Oct. 3, 2002)). "This analysis is not merely a numbers game: what is significant is the substance and materiality of potential witnesses' testimony." *Id*. (quoting *Somers v. Flash Tech. Corp. of Am.*, No. IP 455–CB/S, 2000 WL 1280314, at *3 (S.D. Ind. Aug. 25, 2000)).

Plaintiffs provide no evidence at all on "the substance and materiality" of the potential witnesses' testimony in these cases; they make no effort to pinpoint who precisely they would call at trial, what they would say, or where exactly they're from. "If the moving party merely has made a general allegation that necessary witnesses are located in the transferee forum, without identifying them and providing sufficient information to permit the district court to determine what and how important their testimony will be, the motion to transfer should be denied." 15 WRIGHT & MILLER § 3851; *see also Relational, LLC v. TDMK, LLC*, No. 07 C 4449, 2008 WL 2704757, at *2 (N.D. Ill. July 7, 2008) (The movant "forfeits his claims of witness inconvenience by failing to

specifically identify any witnesses or the general relevance of their testimony."). And, again, while it may be that the medical witnesses are in the plaintiffs' home states, this doesn't help them. Not only are these cases not primarily about the quality of medical care the plaintiffs received—the "paramount issues concern[] the design, manufacture, testing, and marketing of . . . Cook's IVC filter," *In re: Cook Med., Inc.*, 53 F. Supp. 3d at 1380 (internal quotation marks and citation omitted)—at best for the plaintiffs all transfer would do is shift the inconvenience of attending an out-of-state trial from a small troupe of side players (the medical witnesses) to a larger troupe of critical players (Cook employees). When witnesses will have to travel either way, whether the case stays or goes, the law does not favor transfer. *See*, *e.g.*, *Berry Plastics Corp.*, No. 3:12-CV-73-RLY-WGH, 2013 WL 772871, at *6; *Elanco Animal Health*, No. 1:08-CV-00386-RLY-TA, 2008 WL 4099882, at *4; *Rapier*, No. 1:07-CV-0798RLYWTL, 2007 WL 3102148, at *4; *Alcon Mfg., Ltd.*, No. 1:06-CV-1642-RLY-TAB, 2007 WL 854026, at *3. At all events, even giving Plaintiffs the benefit of the doubt about the importance of their home-state medical witnesses, Plaintiffs cannot reasonably dispute that testimony from witnesses who made, marketed, and sold the products at issue—many of whom are in Indiana—is of any ***lesser*** importance than the testimony Plaintiffs would offer from any healthcare provider. And this does not even account for the parties' expert witnesses, who hail from all over the country, and who will almost certainly be inconvenienced no matter where these cases are litigated. *See Goodman-Manaster & Co. v. Kamerdin*, No. 85 C 07423, 1986 WL 3036, at *5 (N.D. Ill. Feb. 27, 1986) (noting the location of experts should be considered in making a transfer determination).

If the live witness list from the one bellwether case to be tried so far—*Hill*—is any indication of who will be called to testify in these cases, it only tends to confirm transfer would merely shift the inconvenience from one set of parties and witnesses to another:

***Hill* — Live Witnesses**

**PLAINTIFF'S LIVE WITNESSES**

| Witness | Role | Location |
|---|---|---|
| Dr. David Kessler | Expert | California |
| Dr. Michael Fishbein | Expert | California |
| Dr. James Gardner | Cook employee | Indiana |
| Bruce Fleck | Cook employee | Indiana |
| Dr. Robert McMeeking | Expert | California/Scotland |
| Per Hendrickson | Cook employee | Denmark |
| Darrell Talbert | Cook employee | Indiana |
| Dr. Alexander Marmureanu | Expert | California |
| Henrik Gyllun | Cook employee | Denmark |
| Russell Hill | Plaintiff's husband | Florida |
| Elizabeth Hill | Plaintiff | Florida |

**DEFENDANTS' LIVE WITNESSES**

| Witness | Role | Location |
|---|---|---|
| Dr. Jon Fryzek | Expert | Maryland |
| Mark Breedlove | Cook employee | Indiana |
| Dr. Timothy Morris | Expert | California |
| Dr. Renu Virmani | Expert | Maryland |
| Harold Pellerite | Expert | Maryland |
| Dr. Anthony Venbrux | Expert | D.C. |

| | | |
|---|---|---|
| Dr. Scott Robertson | Expert | California |
| Dr. Todd Baron | Expert | North Carolina |

As for ease of access to the relevant documents, records can easily be copied and sent from one location to another, *Rapier*, No. 1:07-CV-0798-RLY-WTL, 2007 WL 3102148, at *3, and in fact already have been, as the out-of-state plaintiffs with the help of their out-of-state counsel have produced their medical records to in-state defense counsel. This factor therefore doesn't weigh for or against either side. *See id*.

At bottom, then, the relative ease of access to sources of proof—both as to witnesses and documents—counsels against transfer. At most, this factor is a wash, and a wash doesn't favor shipping a case to another district, *see Berry Plastics Corp.*, No. 3:12-CV-73-RLY-WGH, 2013 WL 772871, at *6, let alone eight cases to eight different districts.

4. Finally, as for the convenience of the parties, the plaintiffs "have failed to provide the court with any evidence demonstrating that they would be unable to bear the expense of trial or that financial hardship would result if they were required to litigate this case outside their home forums." *Rapier*, No. 1:07-CV-0798-RLY-WTL, 2007 WL 3102148, at *3. After all, it was the plaintiffs who chose to sue in Indiana in the first place, so they can hardly complain about the expense of trying their cases here—an expense they aren't personally bearing anyway. As with the non-party witnesses, all transfer would do is to shift whatever inconvenience there is for one set of individuals to another, which does not justify transfer. 15 WRIGHT & MILLER § 3848. "Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964).

### III. Plaintiffs Have Failed to Demonstrate the Interests of Justice Favor Transferring These Cases to Eight Different Districts

The final factor the Court considers is "the interest of justice," which "embraces traditional notions of judicial economy, rather than the private interests of the litigants and their witnesses." *Berry Plastics*, No. 3:12–cv–73–RLY–WGH, 2013 WL 772871, at *7 (quoting *Law Bulletin Publ'g, Co. v. LRP Publ'ns, Inc.*, 992 F. Supp. 1014, 1019 (N.D. Ill. 1998)). This factor focuses on the (1) the transferee forum's familiarity with the governing law, (2) the local interest in deciding local controversies at home and (3) the congestion in the alternative courts. *Id*. In evaluating these factors, it is important to remember "[t]he 'interests of justice' favors consolidated litigation." *Kendall U.S.A., Inc. v. Cent. Printing Co.*, 666 F. Supp. 1264, 1269 (N.D. Ind. 1987) (citing *Van Dusen,* 376 U.S. at 643–46; *F.T.C. v. MacArthur,* 532 F.2d 1135 (7th Cir.1976)). This is so because consolidated litigation "facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoid[s] duplicitous litigation and inconsistent results." *Keene v. McKesson Corp.*, No. 12-CV-05924-JST, 2015 WL 9257949, at *4 (N.D. Cal. Dec. 17, 2015) (quoting *Puri v. Hearthside Food Sols.*, No. CV 11-8675-JFW, 2011 WL 6257182, at *3 (C.D. Cal. Dec. 13, 2011)). That was the whole point of creating the MDL in the first place: because centralization would "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary." *In re: Cook Med., Inc.*, 53 F. Supp. 3d at 1380. "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [section] 1404(a) was designed to prevent." *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960).

This all strongly suggests that scattering these cases to the four winds, as Plaintiffs would have this Court do, would not serve the interests of justice. This Court has become intimately

familiar with the highly technical engineering and medical issues at stake in this litigation and as a result would resolve them more efficiently than would several disparate courts, avoiding the unnecessary duplication of efforts by different judges in different jurisdictions, as well as the attendant danger of inconsistent results.

1. The fact that Plaintiffs' product liability claims may be governed by their home-states' laws does not counsel in favor of transferring these cases. First of all, there is no reason to believe other products liability laws are so complex that this Court could not properly apply them without difficulty. *See*, *e.g.*, *Bates v. J.C. Penney Co.*, 624 F. Supp. 226, 228 (W.D.N.C. 1985) (saying this about Florida product liability law). This Court has already proved more than competent to apply the product liability laws of other states, as "federal judges routinely apply the law of a State other than the State in which they sit." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 67 (2013).

Second of all, Plaintiffs engage in no choice-of-law analysis, assuming that their home states' product liability laws will govern. But even if we accept that assumption as correct, those are not the only laws potentially at issue in this case. As the Cook Defendants have previously argued, Plaintiffs' punitive damages claims are governed by Indiana law, and not the law that governs the product liability claims. Dkt. 5861, Defs.' Memo. in Supp. of Mot to Bifurcate pp. 9-14. Although the Court has not yet resolved this issue, if it ultimately agrees with Defendants that Indiana law governs part of the case, it would make this factor neutral, and thus one that does not favor transfer. *See Kendall U.S.A., Inc.*, 666 F. Supp. at 1269 (concluding this factor was neutral when both Indiana and Ohio law applied).

2. The local interests in this case do not favor either party. Plaintiffs' home states "ha[ve] an interest in protecting [their] citizens and maintaining [their] public policies while Indiana has

similar interests in overseeing the conduct of Indiana corporations." *Berry Plastics Corp.*, No. 3:12-CV-73-RLY-WGH, 2013 WL 772871, at *7.

3. Finally, as to congestion in the alternative courts, this factor is not particularly useful to the analysis given the way in which MDL cases are litigated and tried. But assuming its application makes sense, a review of the Federal Court Management statistics (reproduced below) demonstrates that one transferee district has a noticeable difference in median time from filing to trial, and no court has a significant difference in median time from filing to disposition.[1] These types of discrepancies are insufficient to warrant transfer. *See Berry Plastics*, No. 3:12-CV-73-RLY-WGH, 2013 WL 772871, at *7 (holding that although the median time from filing to disposition and from filing to trial were slightly faster in the transferee district, this discrepancy was not sufficient to warrant transfer). To the contrary, "the fact that the other cases arising from the transaction or event are in the same district from which transfer of the action is sought obviously is an argument ***against*** transfer." 15 WRIGHT & MILLER § 3854 (emphasis added).

| Court | Median Time from Filing to Trial | Median Time from Filing to Disposition |
|---|---|---|
| Southern District of Indiana | 24.5 | 7.8 |
| Northern District of Illinois | 36.3 | 7.5 |
| Northern District of California | 29.7 | 7 |
| Northern District of Alabama | 35.5 | 10.6 |
| Northern District of Georgia | 24.8 | 6.6 |
| Eastern District of Virginia | 12.8 | 5.2 |
| District of Connecticut | 37.9 | 10.2 |
| Western District of New York | 62.2 | 11.3 |
| Southern District of Texas | 20.4 | 7.8 |

[1] U.S. District Courts—Combined Civil and Criminal: Federal Court Management Statistics—Comparison Within Circuit, http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0630.2018.pdf (last accessed Dec. 9, 2018).

**IV. Section 1407 Provides No Support For Plaintiffs' Motion to Transfer Because They Chose to File Their Cases in the MDL Directly.**

The Supreme Court has held that the Judicial Panel on Multidistrict Litigation must remand for trial cases transferred from one jurisdiction to an MDL pursuant 28 U.S.C. § 1407(a). *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998). "Nothing in that decision, however, precludes the transferee judge from presiding over cases that litigants filed in the transferee district originally . . . ." FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION p. 463, § 22.93 (4th ed. 2004), *available at* https://public.resource.org/scribd/8763868.pdf (last accessed Dec. 9, 2018). Given "these MDL cases were direct-filed and thus, not subject to the JPML remand process," as Plaintiffs concede, Dkt. 9602, Mot. to Trans. p. 3, the JPML has no authority to remand pursuant to section 1407. Plaintiffs nonetheless urge this Court to transfer their cases (instead of remanding them) "pursuant to 28 U.S.C. section 1404(a)" based on section 1407's "maturity" standard, which, they say, holds that "MDL cases are mature and appropriate to remand for trial once common fact and expert discovery has been completed, *Daubert* motions for non-case specific experts have been resolved, and non-case-specific dispositive motions have been ruled on." *Id*. (citing *In re Bard IVC Filters Prods Liab. Litig.*, MDL 15-02641-PHX-DGC, 2018 WL 4279834 (D. Ariz. Sept. 7, 2018)). "[T]here is no reason that the same standard regarding maturity of the cases should not apply" here, as to direct-filed cases, Plaintiffs claim. *Id*.

Plaintiffs provide no authority for this argument. None. In acting on a motion to transfer venue, "the District Judge has a broad discretion, but in exercising this discretion he is limited in his consideration to the three factors specifically mentioned in § 1404(a), and he may not properly be governed in his decision by any other factor or consideration." *Chicago, R. I. & P. R. Co. v. Igoe*, 220 F.2d 299, 302 (7th Cir. 1955). To apply a different set of criteria would be to violate binding precedent, not to mention the language of the controlling statute.

But even assuming the maturity standard were the governing standard, Plaintiffs' cases do not meet that standard, because, in short, the Court's recent bellwether selection plan has not yet had a chance to play out. *See* Dkt. 9322. "Litigation is generally considered mature if through previous cases (1) discovery has been thorough, producing a consensus that the available important information has been provided, (2) a number of verdicts have been received indicating the value of claims, and (3) plaintiffs' contentions have been shown to have merit." MANUAL FOR COMPLEX LITIGATION p. 359, § 22.314. "In a typical mature mass tort, little or no new evidence is likely, appellate review of novel legal issues has been completed, and a full cycle of trial strategies has been explored." *Id*.

1. In spite of Plaintiffs' claim that common discovery is complete, *see* Dkt. 9602, Mot. to Trans. p. 4, their counsel is currently seeking new and duplicative requests for depositions of common company fact witnesses in state court litigation. For instance, although Dr. Jennifer Brown has been deposed on three separate occasions already, a plaintiff in a state court case pending in Monroe County, Indiana, recently requested a fourth deposition. **Exhibit 2**, Jennifer Brown Notice of Dep.[2] Similarly, despite having already exceeded this Court's limit on common fact witness depositions, Plaintiffs' counsel with cases in the MDL as well as in state court are seeking at least eight additional common fact witness depositions.[3]

---

[2] Other requests for duplicative depositions include second depositions of William Voorhees and Lykke Iverson. **Exhibit 3**, William Voorhees Notice of Dep.; **Exhibit 4**, August 3, 2017 Correspondence Requesting Deps. of Company Witnesses.

[3] In addition to the common company witnesses already deposed in the MDL, plaintiffs in state court litigation are seeking the depositions of Jim Alexander, Neal Fearnot, Rob Lyles, Line Larsen, Rikke Sorensen, Donna Deckard, Marianne Hoy, and Lissi Walmann. **Exhibit 4**, August 3, 2017 Correspondence Requesting Deps. of Company Witnesses; **Exhibit 5**, Notices of Deps. for Jim Alexander, Neal Fearnot, Rob Lyles, Line Larsen, and Rikke Sorensen.

2. There has been only one bellwether trial so far—*Hill*. And like the upcoming trial in *Brand*, that case concerned only the Celect. Not a single Tulip case has gone to trial yet.[4] The parties therefore do not yet have a good understanding of the value of Plaintiffs' claims, if any. "The purpose of adopting a bellwether approach is to assess the values of the claims at issue, develop a relevant body of law, and in doing so to provide guidance to parties pursuing settlement." *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, No. 00 MDL 1898 (SAS), 2010 WL 1328249, at *4 (S.D.N.Y. Apr. 5, 2010) (citing in part THE MANUAL FOR COMPLEX LITIGATION §§ 20.132 & 22.135). Even under section 1407, "[f]ew cases are remanded for trial; most multidistrict litigation is settled in the transferee court. As a transferee judge, it is advisable to make the most of this opportunity and facilitate the settlement of the federal and any related state cases." MANUAL FOR COMPLEX LITIGATION p. 223, § 20.132. Transferring these cases now, with just one bellwether in the bag, would only serve to frustrate this purpose. This Court has the best understanding of Plaintiffs' cases of any court by far, and so long as they remain centralized, it possesses "a greater ability to facilitate global settlement." *Id*. In fact, this Court has already suggested that absent a global settlement, cases filed directly in the MDL will remain there indefinitely. *See* **Exhibit 6**, Tr. of Sept. 20, 2018 Status Conference at 42:16-20.

3. Plaintiffs also have not yet established their claims have any merit. *Hill* resulted in a defense verdict, and the one case a plaintiff has won, *Pavlock*, was tried in another jurisdiction, in state court, and is currently on appeal.

4. One final point: the cases Plaintiffs cite in favor of applying the maturity standard do not support their argument. Not only did those cases involve lawsuits that were not directly filed

[4] *Ghaith*, *Sammy*, *Brandes*, and *Estes* are all Tulip cases. The other cases involve the Celect: *Hare*, *Rhines*, *Vlna*, and *Barrera*.

in the MDL, they are distinguishable on their facts. In *In re TMJ Implants Products Liability Litigation*, the MDL court granted the defendant's motion to dismiss the plaintiff's products liability claims and recommended that her remaining medical malpractice claims be remanded to the transferor court. 872 F. Supp. 1019, 1038–39 (D. Minn. 1995). The court reasoned that conducting discovery on the plaintiff's remaining claims would be more efficient in the transferor district because (1) the plaintiff (who did not oppose remand) no longer shared causes of action with the other plaintiffs; (2) her remaining claims were only asserted against one related set of defendants; and (3) the defendants were not a party to any other cases in the consolidated action. *See id.* at 1034-35, 1038-39. The same cannot be said about Plaintiffs' cases here. Plaintiffs share seven counts with practically every other MDL plaintiff. Defendants are parties to every case in the MDL. And no claim in the MDL is asserted exclusively against any one of the defendants.

Plaintiffs reliance on the decision in the *Bard* MDL is equally misplaced. The parties there had already engaged in case-specific discovery. *In re Bard IVC Filters Prods. Liab. Litig.,* No. MDL 15-02641-PHX-DGC, 2018 WL 4279834, at *4-5 (D. Ariz. Sept. 7, 2018). What's more, each case in the Bard MDL continued to be governed by the complaints and answers filed in the various transferor courts, rather than by a master complaint as here. *Id.* at *4. Because the transferor courts in *Bard* were already familiar with the parties, subject matter, and case-specific discovery in each case, remanding those cases imposed little burden on the courts receiving the cases and comported with section 1407(a)'s purpose of promoting convenience and efficiency. *See* 28 U.S.C. 1407(a). Unlike the MDL court in *Bard*, Plaintiffs cases were originally filed in this Court, and this Court is therefore the only court familiar with Plaintiffs' cases. Plaintiffs initiated suit in this District rather than in their home states, they incorporated the Master Complaint into their pleadings, and no discovery has been conducted outside the MDL. Contrary to what Plaintiffs'

claim, "taking the case-specific depositions before remand seems more consistent with the MDL process." *In re Biomet M2A Magnum Hip Implant Prods. Liab. Litig.*, No. 3:12-MD-2391, 2018 WL 776776, at *4 (N.D. Ind. Feb. 8, 2018) (quoting the that court's scheduling order).

**CONCLUSION**

Plaintiffs have failed to carry their burden to show that these cases should be transferred pursuant to section 1404(a). Their motion should be denied.

Dated: December 14, 2018

Respectfully submitted,

*/s/ Andrea Roberts Pierson*

Andrea Roberts Pierson (# 18435-49)
J. Joseph Tanner (# 11856-49)
Nicholas B. Alford (# 31867-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
E-Mail: andrea.pierson@faegrebd.com
E-Mail: joe.tanner@faegrebd.com
E-Mail: nicholas.alford@faegrebd.com

*Counsel for the Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 14, 2018, a copy of the foregoing was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Counsel for Defendants will serve any non-CM/ECF registered parties.

*/s/ Andrea Roberts Pierson*