UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION _____ This Document Relates to: Tonya Brand, 1:14-cv-06018-RLY-TAB _____ | 1:14-ml-02570-RLY-TAB MDL No. 2570 |

## ENTRY ON THE COOK DEFENDANT'S MOTION TO EXCLUDE EXPERT OPINIONS OF DR. GREGORY GORDON

Plaintiff offers the testimony of Dr. Gregory Gordon, a board-certified interventional and diagnostic radiologist. In his Expert Report, Dr. Gordon opines[1] that: (1) the design of the Celect is defective because it lacks a perforation limiter; (2) the Celect filter caused Plaintiff injuries; and (3) the Outside the United States ("OUS") clinical study images, which he personally reviewed, showed that nearly all of the Celect filters in the OUS study perforated the IVC wall. Cook moves to exclude Dr. Gordon's testimony on a multitude of grounds. For the reasons explained below, Cook's motion is **GRANTED in part and DENIED in part**.

---

[1] Dr. Gordon also opined that Cook failed to adequately warn physicians, in the Celect IFU, of the risk of perforation, tilt, and fracture arising from the lack of a perforation limiter. Because the court granted Cook's motion for summary judgment on Plaintiff's failure to warn claim, the court need not address this opinion.

1

**I.     Background**

Dr. Gordon has practiced radiology for approximately twenty years with full time appointments in both academic and private practice. (Filing No. 6444-1, Expert Report of Dr. Gregory Gordon at 1). He has implanted and retrieved both the Celect and Tulip filters manufactured by Cook, and the Greenfield filter manufactured by Boston Scientific. (*See*, e.g., Filing No. 8664-3, Deposition of Dr. Gregory Gordon ("Gordon Dep.") at 130-31). He recently reduced his clinical practice to focus on a medical device company he started 6 years ago, Radux Devices. (*Id.*). Radux sells the Stand Tall sheath extender, a Class 1 product. (*Id.* at 57-58).

**II.    Standard for Expert Testimony**

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence and the principles announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Specifically, (1) the expert must be qualified by knowledge, skill, experience, training, or education; (2) the proposed expert testimony must assist the trier of fact in determining a relevant fact at issue in the case; (3) the expert's testimony must be based on sufficient facts or data and reliable principles and methods; and (4) the expert must have reliably applied the principles and methods to the facts of the case. *Lees v. Carthage College*, 714 F.3d 516, 521-22 (7th Cir. 2013); *see also Lapsley v. Xtek, Inc.*, 689 F.3d 802, 809 (7th Cir. 2012) ("Rule 702 requires that expert testimony be relevant, reliable, and have a factual basis—requirements that must be met before the jury is allowed to hear and perhaps be persuaded by the expert testimony."). As the proponent of the expert testimony at issue, Plaintiff has the burden

of demonstrating the expert's admissibility. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

**III. Discussion**

    **A. Design Opinion**

Dr. Gordon testified that the Tulip and Greenfield filters are superior to the Celect because they have perforation limiting features.[2] In support of his opinion, Dr. Gordon relied on Cook internal documents, clinical studies, and Cook's OUS study which, Plaintiff contends, shows that the Celect perforates often. (Expert Report at 2-3, 5-7). Cook moves to exclude his design opinion because he is not qualified to give an *engineering* opinion.

A perforation limiter is a specific piece of a filter's hardware. An opinion on a perforation limiter, therefore, requires an engineering background. Dr. Gordon, however, is not an engineer, biomedical engineer, metallurgist, or materials scientist. (Gordon Dep. at 49-50). He has never designed an IVC filter nor conducted a clinical trial related to an IVC filter. (*Id.* at 50). And he has never published any articles or presented to his peers on the design of an IVC filter. (*Id.* at 113, 115-16).

The materials he relies on do not support his opinion that the Celect filter perforates at a high rate because it lacks a perforation limiter. He derived his opinion on the Tulip from Cook internal documents, and he derived his opinion on the Greenfield

---

[2] The perforation-limiting feature of the Tulip is the "petals" that surround the main struts. (Gordon Dep. at 159). The perforation-limiting feature of the Greenfield is a set of twisted "feet" that disperse the pressure points of the filter. (*Id.* at 159-61).

3

filter from "reading review articles on IVC filtration." (Expert Report at 2; Gordon Dep. at 162; *see also id.* at 62 (testifying he "did not study the Greenfield filter")). His review of the clinical literature and the venograms from the OUS study fail to fill in the gaps, as neither address perforation limiters or the risks and benefits of perforation limiters.

The court therefore finds that Dr. Gordon may be qualified to opine on IVC filters from a clinical perspective, but he is not qualified to testify about the filters' engineering design and how a change in that design—i.e., the addition of perforation limiters—may affect their performance. Accordingly, Cook's motion to exclude Dr. Gordon's design opinion is **GRANTED**.

    **B.**    **Causation**

Differential diagnosis is an acceptable methodology for an expert to render an opinion on causation. *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010). "[E]xpert opinions employing a differential diagnosis must be based on scientifically valid decisions as to which potential cause should be 'ruled in' and 'ruled out.'" *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 903 (7th Cir. 2007). The goal of a differential diagnosis is to identify the most probable "ruled in" cause of a medical problem. *Id.* Here, Dr. Gordon "ruled in" and "ruled out" five potential causes other than the defect of the filter. They are: (1) manipulation and harm to the IVC and the Celect filter during Plaintiff's March 2009 anterior lumbar interbody fusion ("ALIF") surgery; (2) morbidity of the patient; (3) osteophytes and spondylosis of the spine; (4) normal physiological activity; and (5) a motor vehicle accident in April 2011. (Expert Report at 42-43). He

concluded that Plaintiff's injuries were caused by the defective design and function of the Celect filter.  (*Id.* at 42).

### 1. Qualifications

Cook argues Dr. Gordon is not qualified to rule in or rule out potential causes of Plaintiff's alleged injuries because: (1) he is not a surgeon or vascular surgeon (Gordon Dep. at 24); (2) he has never performed an exposure for a spine surgery like the surgery Plaintiff underwent (*id.* at 25); (3) he has never cut open a human IVC either to retrieve an IVC filter through an open surgical procedure like Plaintiff's or for any other reason (*id.* at 24); and (4) he lacks the education and experience to opine on Plaintiff's pre-existing spinal conditions or how an exposure during surgery might affect an IVC filter.

"[S]imply because a doctor has a medical degree does not make him qualified to opine on all medical subjects."  *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010). That said, a medical doctor is competent to testify about problems that a specialist would typically treat if the doctor's qualifications provide a sufficient foundation to answer the question posed.  *Id.* (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994)).

As an interventional and diagnostic radiologist, Dr. Gordon has implanted IVC filters, including the Celect and Tulip, over his twenty-year career and as such, he is familiar with the anatomy of the IVC, its location to surrounding organs and the spine, and reading radiological images.  In addition, he is a medical doctor familiar with reading and interpreting medical records.  The court therefore finds Dr. Gordon is qualified to rule in and rule out potential causes of Plaintiff's alleged injuries.

## 2.     Methodology

In his differential diagnosis, Dr. Gordon eliminated manipulation and harm to the IVC from the spinal fusion for two reasons.  First, fluoroscopic images post-surgery showed the surgery took place 6-8 cm. below the level of filter placement.  (Expert Report at 42).  Second, follow-up images demonstrated the filter to be in a good position with the exception of early perforation.  (*Id.*).

Dr. Gordon eliminated the morbidity of Plaintiff because she did not have any conditions which would preclude healing.  In addition, she was cleared for surgery.  (*Id.*).

Dr. Gordon eliminated osteophytes and spondylosis of the spine because those conditions are extremely common in patients, particularly those who present for the type of surgery Plaintiff had.  (*Id.*).  To eliminate those issues would be to exclude nearly all patients who would undergo fusion surgery.  (*Id.*).  While the filter likely had contact with Plaintiff's osteophyte, that contact occurred only because the filter perforated through the cava wall.  (*Id.*).

Dr. Gordon eliminated normal physiologic activity like respiration and cough because there "is no way to prevent normal physical activity in a patient." (*Id.* at 43).  To include normal physiologic activity as a cause would exclude all patients from Celect placement.  (*Id.*).

He eliminated Plaintiff's 2011 car wreck because, by the time of the accident, the filter had already perforated and fractured.  (*Id.*).

Cook asserts Dr. Gordon's differential diagnosis is unreliable because: (1) he failed to consider filter malposition as a potential cause; (2) failed to consider the location

6

of the osteophyte and its role in the filter's perforation; and (3) failed to consider the abnormal (as opposed to normal) physiological activity[3] that Plaintiff actually experienced (appendicitis, urinary tract infection, constipation, etc.). The court finds any flaws in Dr. Gordon's methodology may be explored at trial. *Taylor v. Union Pacific R.R. Co.*, 1:09-cv-123-GPM, 2010 WL 3724283, at *7 (S.D. Ill. 2010) (noting in general, the failure of an expert to consider and rule out all possible causes of an injury goes to the weight of the evidence, not its admissibility)) (quoting *Figueroa v. Boston Scientific Corp.*, 254 F.Supp.2d 361, 366 (S.D.N.Y. 2003) ("[T]o the extent that . . . physicians do not fully consider and rule out all possible causes, such deficiencies generally go to the weight of the evidence, not admissibility, and weighing the evidence is a function for the jury.")); *see also In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*, 218 F.Supp.3d 700, 716 (N.D. Ill. 2016) ("[A]n expert need not consider *every* possible cause.") (emphasis in original)).

### 3. Opinion on Pain

In his Expert Report, Dr. Gordon opines: "Chronic pain and abdominal pain is not unexpected, and likely, to a reasonable degree of medical certainty, the cause of all of her new symptomatology since placement and removal." (Expert Report at 45). He also opines that "the location of the foreign bodies is likely to cause lifelong pain and suffering," and she "will live with continuous pain/pin pricks on her nerves for the rest of her life." (*Id.*). At his deposition, he modified his opinion after reviewing her medical

---

[3] Cook's expert, Dr. David Gillespie, did not consider Plaintiff's physiological activity either.

records again and finding she had "other sources of pain." (Gordon Dep. at 330-31). In his current opinion, he limits the filter-related pain she suffered to three discrete instances: (1) the emergence of a filter fragment through her right thigh-groin in 2011; (2) the retrieval attempt in 2011; and (3) the retrieval surgery and post-operative recovery time in 2015. (*Id.*). He will not testify to any other prolonged or lifetime pain associated with the filter. (*Id.* at 334 ("Long term, I cannot say.")).

Cook argues Dr. Gordon's "radical departure" at his deposition from the opinions set forth in his Expert Report require the exclusion of his testimony. In support of its argument, Cook cites *Webster v. Ctr. for Diagnostic Imaging, Inc.*, 1:16-cv-2677-JMS-DML, 2018 WL 2136451 (S.D. Ind. May 9, 2018). There, the court excluded an expert's testimony because the opinions expressed in his expert report were inconsistent with his deposition testimony—so much so that the court concluded the expert failed to provide the plaintiffs with a Rule 26 disclosure. *Id.* at *8. Here, however, Dr. Gordon withdrew some of his opinions on the pain Plaintiff experienced as a consequence of the filter failure. This is permissible. *See Large v. Mobile Tool Int'l, Inc.*, No. 1:02-cv-177, 2008 WL 3091258, at *4 (N.D. Ind. Aug. 5, 2008) (ruling defendant may cross examine plaintiff's expert over his withdrawn liability opinion).

  **C. OUS Study**

Dr. Gordon analyzed all of the OUS radiological images. (Gordon Dep. at 177). He opined that over 90% of the Celect filters in that study perforated the IVC wall but Cook's OUS Investigators reported in 2005 that there were no perforations. (*See* Expert Report at 9-10, Table 15). The reason for this discrepancy, Dr. Gordon explains, is

because the OUS investigators used a narrow definition of perforation[4] that is outside the industry[5] norm. (*Id.* at 5-7). By manipulating the definition of perforation, Cook underreported the perforation findings to physicians and the FDA.

Cook argues Dr. Gordon is not qualified to offer his opinions. The court finds otherwise. As a board-certified interventional radiologist who has implanted and explanted IVC filters, he is familiar with the common and excepted uses of the term "perforation"; he also cited relevant literature establishing the accepted definitions. As such, he is qualified.

Cook also argues Dr. Gordon's opinions on the inconsistent definitions of perforation identified in OUS-related documents should be excluded because they rely on definitions set forth in a table he "copied" from Dr. Krumholz's Expert Report. An expert may rely on information, documents, and summaries created by others—including other experts. *See Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 589 (7th Cir. 2000). Moreover, Dr. Gordon double-checked the definitions used in the table against the definitions he identified from the documents in his possession. (Gordon Dep. at 176-77). Dr. Gordon may testify to such because he has knowledge of the data and knowledge of the definitions. His inclusion of Dr. Krumholz's table does not undermine his opinion.

---

[4] The definition Cook used in the 2005 OUS study is "protrusion of filter struts through the wall of the IVC *causing hemorrhage or hematoma*." (*Id.* at 6, Table 7) (emphasis added).

[5] His report states that the ">3mm outside the cava wall" definition is accepted by the American College of Radiology (ACR), the Society of Interventional Radiology (SIR), and the Cardiovascular and Interventional Radiology Society (CIRSE). Cook argues SIR has never defined perforation. This issue may be addressed on cross examination.

## IV. Conclusion

Dr. Gordon may testify about causation, the OUS study definitions, and the OUS study imaging. He may not testify about the design of the Celect filter. Accordingly, Cook's Motion to Exclude Expert Opinions of Dr. Gregory Gordon (Filing No. 8630) is **GRANTED in part** and **DENIED in part**.

**SO ORDERED** this 18th day of December 2018.

                                                  RICHARD L. YOUNG, JUDGE
                                                  United States District Court
                                                  Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.