UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND                    Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS   LIABILITY LITIGATION                   MDL No. 2570

_____

This Document Relates to Plaintiff
    *Brand v. Cook Medical, Inc. et al.,*
    Case No. 1:14-cv-06018-RLY-TAB

_____

## COOK'S MOTION TO ADOPT TRIAL PROCEDURES

    Every trial involves a number of logistical "nuts and bolts." The parties conferred in an effort to reach agreement on some of them for the trial in this case (if such a trial occurs). They reached agreement on some, but not on others. Cook believes that it would be helpful to get these procedures in place before any trial, and therefore moves the Court to adopt the following procedures. Cook indicates the procedures on which the parties agree (subject, of course, to review by plaintiff to confirm agreement), and the parties' respective positions on the ones to which they were not able to agree.

    1.    The parties shall exchange electronic copies of their trial exhibits by December 28, 2018.  Hard copies of exhibits will be exchanged at trial when the exhibit is introduced.

    **Not agreed.** The sheer number of documents that Cook has produced in these cases, and the fact that plaintiffs have used different versions of the same document from time to time and often omit attachments from e-mails (or, conversely, the e-mail that accompanies an attachment) makes it necessary for the parties to know precisely which documents are on the other's exhibit list. Exchanging hard copies of exhibits at trial when the exhibit is introduced would seem

completely non-controversial, and standard operating procedure in trials. This process was agreed upon and utilized by the parties in both Cook IVC filter trials.

    2.    Each side shall have 35 minutes for voir dire, and 60 minutes for opening statements.

**Not agreed.** Cook believes that these are the time limits that the Court established in the Hill trial last year (*see* October 16, 2017, Transcript at 108-109) and that those time limits should be used again. Plaintiff wishes to have 60 minutes per side for voir dire and 80 minutes per side for opening statements.

    3.    Each party shall narrow their "may-call" witness list to 10 witnesses by December 21.

**Not agreed.** In two trials involving the Celect, plaintiffs have called a total of 5 Cook employees as witnesses (4 in the *Hill* case and one in the *Pavlock* case). Yet Plaintiff here lists **31** Cook employees on her witness list—8 as "will-call" and **23** as "may-call" witnesses. Her complete will-call list consists of 22 witnesses, and her may-call list consists of 39, for a total of 61 potential witnesses.

There is obviously no chance that Plaintiff will call 61 witnesses—including 31 Cook employees—in her case. Elizabeth Hill and Jeffrey Pavlock each called a grand total of 11 witnesses in their respective cases. Yet Plaintiff is currently requiring Cook to keep 31 of its employees "on call" for the duration of Plaintiff's case on the off chance that she decides to call them. In Hill, a number of Cook employees either came over to the United States or blocked out

large amounts of their calendar because they were on the "will-call" list, only to never be called to testify at trial.

It is an understatement to say that keeping 31 employees "on call" for the duration of the trial is overly burdensome. Cook therefore has proposed that <u>both</u> parties narrow their "may-call" lists to 10 witnesses, so that everyone may be free from the dilemma of choosing between: a) keeping dozens of witnesses "on call" for the duration of the trial, or b) taking the chance of releasing witnesses who are unlikely to be called, only to have the other side call them unexpectedly and not being in a position to produce them. Cook simply wants to minimize the "hassle factor" on both sides, and respectfully submits that the Court's (and Cook's) desire for the jury to hear live testimony where possible should not become a weapon to require Cook witnesses to be away from home and/or to unnecessarily force Cook to expend resources preparing employees for trial who will never be called.

Plaintiff has declined to narrow her "may-call" list before trial.

4. The parties shall not refer to or argue, or adduce any evidence of or attempt to adduce any evidence of, the other party's failure to call any witness equally available to both parties.

**Agreed.**

5. Plaintiff will notify the Cook Defendants of the witnesses for the first day of trial by 5:00 p.m. Eastern time on Friday, January 11, 2019. By noon Eastern time on each day of trial, the parties shall notify each other of the witnesses to be called on the following trial day. If no trial is to be held on Friday, the parties will notify each other by Friday at noon Eastern time

(rather than Thursday at 1:00 p.m. noon time) of the witnesses to be called the following Monday.

**Not agreed.** Plaintiff proposed a 3:00 p.m. deadline to notify the other side of witnesses to be called the following day, but Cook believes that noon is necessary because several of the witnesses whom plaintiff wishes to call are located in Bloomington, Indiana, and would need some time to make arrangements to get up to Indianapolis to get situated and be ready to testify the next day. Cook recalls that in the Hill trial, the Court required the parties to disclose the identity of witnesses at noon the day before they would be called, and that it worked well.

6. By 7:00 p.m. Eastern each evening, the parties will notify each other of the exhibits they reasonably anticipate they may use on direct examination the following trial day. If no trial is to be held the next day, no notice of exhibits need be given until 7:00 p.m. the evening before the next trial day.

**Not agreed.** The Court required this procedure in the Hill trial and it seemed to work. Cook requested that Plaintiff narrow her exhibit list, but she declined. Cook believes that it is especially necessary with respect to expert witnesses, many of whom have hundreds and hundreds of "considered materials" listed in their expert reports, making it impossible to discern what they might rely on as actual exhibits at trial. Plaintiff's counsel object to this procedure on the ground that they do not believe it worked well in the Hill case.

7. By 9:00 a.m. on Friday, January 11, 2019, Plaintiff will notify the Cook Defendants which witnesses residing in Denmark she intends to call to testify during the week of January 14. By Friday, January 18, Plaintiff will notify the Cook Defendants which witnesses

residing in Denmark she intends to call to testify during the week of January 21. In no event, however, shall any witness residing in Denmark be called to testify on less than four calendar days' notice. As an example, if Plaintiff wishes to call a witness who resides in Denmark to testify on Monday, January 21, she must notify Cook of that fact no later than 9:00 a.m. on Thursday, January 17.

**Not agreed.** The parties followed this process in Hill. Cook has requested four days' notice to bring witnesses over from Denmark because of the lengthy travel and time change involved (Denmark is six hours ahead of Indianapolis on the clock, so a request at 9:00 a.m. Indianapolis time on a Friday is made at 3:00 p.m. Denmark time). Notifying Cook less than 24 hours before plaintiff wants a witness from Denmark is obviously impracticable. Plaintiff opposes this suggestion.

8. Any party who wishes to call a witness from the "may-call" witness list must give the other party 48 hours' notice, unless that witness's testimony will be presented by deposition.

**Not agreed.** Each side's "may-call" witness list is very long, making it impracticable for either side to have all of its "may-call" witnesses on hold to appear at a moment's notice if the other side calls them to testify. Cook submits that 48 hours' notice for such witnesses is the minimum necessary to ensure that the witness can make arrangements to get to Indianapolis and be ready to testify.

Plaintiff has not objected to this procedure per se, but has tied her agreement to this procedure to Cook agreeing that all documents in its files will be deemed authentic, business records for hearsay-exception purposes, and having adequate foundation to be admitted. Cook has repeatedly offered to stipulate to authenticity for any documents produced from its files, but

cannot stipulate that all such documents fall within the business-records exception or that <u>any</u> witness in the company has foundation to testify about <u>any</u> document in the company's records, as the plaintiff requests. (Cook has already provided to Plaintiff its position on the authenticity and business-records exception for 200 of Plaintiff's exhibits.) Again, Plaintiff has plenty of latitude to call the witnesses on her will-call list and proposed 10 may-call witnesses under Cook's proposal. The proposal avoids unfair surprise and gamesmanship.

9. Plaintiff will give Cook 24 hours' notice that she intends to rest in her case in chief. Within five hours after receiving such notice, Cook will inform Plaintiff of the first witness it intends to call in its case in chief.

**Agreed?** Cook has not heard any objection from plaintiff to this proposal (but has not heard affirmative agreement either), and therefore assumes that it is agreeable. (The parties followed this procedure in Hill.)

10. Christian Schoenberg shall serve as a Danish translator, should a translator be required. Each party will cover Mr. Schoenberg's travel costs and fees incurred during that party's respective case in chief or rebuttal.

**Agreed.** The parties will work with Mr. Schoenberg on availability and the party calling the witness who requires translation will foot the bill for his services.

11. The parties shall exchange any exhibits, computer simulations, or animations to be shown to the jury during opening statement by noon Eastern time on Saturday, January 12, 2019. (This does not include argument outlines, timelines, and the like.) Any objections to any

such material shall be lodged with the other party by noon Eastern time on Sunday, January 13. The parties shall exchange any animations or computer simulations to be used on direct examination by 5:00 p.m. Eastern time the day before the animation or simulation will be used. Demonstrative aids and documents used on cross-examination need not be exchanged beforehand.

**Not agreed.** In Hill, the parties shared such information the night before opening statements and immediately before a witness was called to the stand.  Here, Cook initially proposed 24 hours' notice for such material, and plaintiff responded by proposing five days' notice. Five days' advance notice is simply impracticable under the circumstances.

12.     With respect to expert witnesses, neither party will offer evidence of the specific dollar amount paid to any of the other party's experts for the expert's work in this case, but may put in evidence the expert's hourly rate for work in this case.

**Not agreed.**  The Court has ruled that other Cook lawsuits will not be mentioned at trial. This creates an issue regarding expert compensation, as each expert's total compensation may reflect work done on more than one case involving Cook. In the *Hill* case, plaintiff's counsel expressed concern that the jury might well wonder why Dr. Kessler was paid $500,000 to work on a single case in which the plaintiff was making a (according to counsel) "modest" damages demand. That is a decent observation, and apportioning experts' fees has only gotten more complicated and subjective as time has gone on. Cook believes that it will be easier to obey the Court's ruling if the parties refer only to experts' hourly rates, rather than total compensation, for work done on this case.  In addition, both sides will be spared the need to provide one another with up-to-date invoices for expert payments as of the time of trial.

Plaintiff has rejected Cook's proposal. Cook assumes that Plaintiff would prefer to introduce evidence of total amounts paid to each expert. If that is the way the Court wishes to proceed, Cook proposes that the parties exchange up-to-date invoices for <u>all</u> work performed by expert witnesses no later than January 4, 2019. (Naturally, any party intending to question an expert about compensation must take care to do so in a way that does not reveal or imply the existence of other lawsuits against Cook, and witnesses should be advised of the Court's in limine rulings.)

13.     If either party impeaches a witness using deposition or trial testimony from another lawsuit, the questioning party shall not refer to the other lawsuit by name or refer to or suggest the existence of another lawsuit, but shall refer to the testimony in question as "prior testimony," or "earlier testimony."

**Agreed**.  Cook believes that the parties have agreed on this method of complying with the Court's order *in limine* barring reference to other lawsuits against Cook.

## Conclusion

Cook respectfully asks the Court to adopt the proposed trial procedures set forth above at the upcoming trial in this matter.

Dated: December 18, 2018						Respectfully submitted,

*/s/ Charles F. Webber*
Andrea Roberts Pierson (# 18435-49)
Jessica Cox (# 26259-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
Email:  andrea.pierson@faegrebd.com
Email:  jessica.cox@faegrebd.com

Charles Webber (Minn. # 215247)
Bruce Jones (Minn. # 179553)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-8719
Facsimile: (612) 766-1600
Email:  chuck.webber@faegrebd.com
Email:  bruce.jones@faegrebd.com

Counsel for Defendants
Cook Incorporated, Cook Medical LLC
(f/k/a Cook Medical Incorporated) and
William Cook Europe ApS

## CERTIFICATE OF SERVICE

      I hereby certify that on December 18, 2018, a copy of the foregoing **COOK'S MOTION TO ADOPT TRIAL PROCEDURES** was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.  Lead Co-Counsel for Defendants will serve any non-CM/ECF registered parties.

                                             /s/ *Charles F. Webber*