UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC ) <br> FILTERS MARKETING, SALES ) <br> PRACTICES AND PRODUCT ) <br> LIABILITY LITIGATION ) <br> _____ ) <br> ) <br> This Document Relates to: ) <br> ) <br> Tonya Brand, ) <br> 1:14-cv-06018-RLY-TAB ) <br> _____ ) | 1:14-ml-02570-RLY-TAB <br> MDL No. 2570 |

**ENTRY ON THE COOK DEFENDANTS' MOTION TO EXCLUDE EXPERT OPINIONS OF DR. REBECCA BETENSKY**

Plaintiff, Tonya Brand, offers the testimony of Dr. Rebecca Betensky, Ph.D., a biostatistician. Cook moves to exclude her opinions concerning: (1) her comparison of perforation rates for the Celect and Tulip filters over certain time periods, and (2) her opinion that Dr. Gordon (Plaintiff's expert diagnostic and interventional radiologist), Dr. Timperman (a radiologist and former Cook employee), and the researchers who conducted the Outside the United States ("OUS") study "counted the number of perforations in the study in a statistically significantly different way." (Filing No. 8608, Motion at 1). Cook contends Dr. Betensky's first opinion is based on "cherry-picked" information from Plaintiff's counsel, and her second opinion is "useless" and would be unhelpful to a jury. For the reasons set forth below, the court **DENIES** Cook's motion.

1

**I.     Background**

Dr. Betensky is a Professor of Biostatistics at Harvard University. She calculated odds ratios for perforations of the Celect versus the Tulip based on Cook's adverse event reports and sales data. (Expert Report at 1-9). An "odds ratio" compares the incidence of Event A to the incidence of Event B and expresses the result as a ratio. She determined that the risk of perforation is significantly higher for the Celect than the Tulip. (*Id.* at 8). Dr. Betensky's odds ratios are offered to support Dr. Krumholz's opinion that the OUS study was flawed. (*See* Filing No. 8642-1, Expert Report of Dr. Harlan Krumholz at 9).

In addition, Dr. Betensky was asked to estimate the frequency of Celect perforations from the OUS study patients using four different definitions of perforation. (Expert Report at 11-12). The definitions are: (1) strut protrusion outside the IVC (definition from the Lyon study); (2) >3mm outside the IVC wall; (3) >5mm outside the IVC wall; and (4) protrusion plus bleeding/hematoma (OUS protocol definition). (*Id.* at 10). The results of her analysis reflect that Dr. Gordon and Dr. Timperman found far more incidences of perforation at retrieval using the first three definitions of perforation than Cook's investigators. (*Id.* at 11, 16 (Table 5)).

Lastly, Dr. Betensky compared the frequency of Celect perforations in the OUS study between Dr. Gordon, Dr. Timperman, and Cook's investigators. (*Id.* at 12). She found "there are no instances of agreement . . . between Cook's raters and Drs. Timperman and Gordon, and in some cases there is statistically significant evidence of differences between Cook and Drs. Timperman and Gordon in the overall frequencies of detection of perforation." (*Id.* at 13).

## II. Standard for Expert Testimony

Expert testimony is admissible under Federal Rule of Evidence 702 if: (1) the expert is qualified by knowledge, skill, experience, training, or education; (2) the proposed expert testimony will assist the trier of fact in determining a relevant fact at issue in the case; (3) the expert's testimony is based on sufficient facts or data and reliable principles and methods; and (4) the expert reliably applied the principles and methods to the facts of the case. *Lees v. Carthage Coll.*, 714 F.3d 516, 521-22 (7th Cir. 2013) (citations omitted); *see also Lapsley v. Xtek, Inc.*, 689 F.3d 802, 809 (7th Cir. 2012) ("Rule 702 requires that expert testimony be relevant, reliable, and have a factual basis—requirements that must be met before the jury is allowed to hear and perhaps be persuaded by the expert testimony."). As the proponent of the expert testimony at issue, the plaintiff has the burden of demonstrating the expert's admissibility by a preponderance of the evidence. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

## III. Discussion

### A. Dr. Betensky's Odds-Ratio Opinions

Cook challenges the reliability of Dr. Betensky's odds-ratio opinions because, it contends, the underlying data was hand-picked by Plaintiff's counsel. The information she relied upon was Cook's adverse event reports and sales data—*Cook's data*—which was provided to her by Dr. Behnood Bikdeli, Dr. Krumholz's research assistant. (Filing No. 9291-1, Deposition of Dr. Rebecca Betensky at 144). Cook's own expert, Dr. Frysek, performed a similar analysis using complaints as the numerator and filter sales as

3

the denominator to compare complaint proportions for the Celect and Tulip filters as reflected in Table 2 of his Report. (Filing No. 8628-2, Expert Report of Jon Fryzek at 30, Table 2). Cook's objection to the foundation for her testimony is overruled.

Cook also moves to exclude her odds-ratio opinions due to a fear that the jury may be misled into thinking the odds-ratios establish causation—*i.e.*, that any difference in the incidence of perforation of Celect filters and Tulip filters is due to the filters' designs—and that anyone using her data to establish causation would be misusing the data. (Betensky Dep. at 204-05). This is because, as Dr. Betensky explains, her analysis does not account or control for such factors as physician experience, patient age, medical indications for filter use, contraindications for anticoagulant drugs, hospital- and surgeon-related factors, and patient-specific factors. (*Id.* at 194-95, 202-03).

Cook's concerns do not require the exclusion of Dr. Betensky's testimony. Cook is free to clarify, through cross examination of Dr. Betensky, that she is not opining on why the Celect perforates more frequently than the Tulip, she is only testifying that it does. The jury can give her testimony the weight it feels appropriate in light of all the evidence.

Finally, Cook argues the probative value of her testimony is outweighed by the danger of unfair prejudice because the odds ratios Dr. Betensky calculates are seriously misleading. For example, Dr. Betensky calculates an odds ratio of 9.48 for the 2007-2009 time period. (Expert Report at 7). This means that, in that time period, 9.48 times more perforations were reported for the Celect than the Tulip. The actual number of Celect perforations, however, was 17 out of 19,322 sales, or 0.088%. (*Id.* at 14, Table 3).

4

While the court understands Cook's concern, the remedy is not the exclusion of her testimony. Instead, Cook may cross examine Dr. Betensky on the numbers reported in her Expert Report and may counter her opinion with the opinion of its own expert, Dr. Fryzek.

### B.     Comparisons of the Frequency of Perforations in the OUS Study

Next, Cook challenges Dr. Betensky's comparison data between Dr. Gordon, Dr. Timperman, and Cook's investigators regarding the frequency of perforation in the OUS study. She contends Dr. Betensky's conclusion—that the three reached different results—is obvious because they applied different definitions of perforation. The importance of the opinion, Plaintiff responds, is her quantification of the agreement, or lack thereof, between Dr. Gordon, Dr. Timperman, and Cook's investigators regarding the identification of perforations in the OUS study for inclusion in Dr. Krumholz's Expert Report. (*See* Krumholz Expert Report at 86, Table 14). Dr. Krumholz used that information to bolster his opinion regarding the failings of the OUS study. Her opinion, therefore, does carry some weight, and is admissible.

## IV.     Conclusion

Dr. Betensky's opinions are relevant, reliable, and will assist the jury in determining a fact in issue.  Accordingly, the Cook Defendants' Motion to Exclude the Opinions of Dr. Rebecca Betensky (Filing No. 8606) is **DENIED**.


**SO ORDERED** this 19th day of December 2018.

RICHARD L. YOUNG, JUDGE<br>
United States District Court<br>
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.