## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

IN RE COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

This Document Relates to:

*Henry Austin*, 1:18-cv-01313
*Robert Davis*, 1:18-cv-01375
*Elizabeth Duffy*, 1:17-cv-00254
*Brent Fichtner*, 1:18-cv-00286
*Juanita Heard*, 1:17-cv-04592
*Ernest Muhammad*, 1:17-cv-03542
*Jimmie Nixon*, 1:17-cv-04693
*Ivan Ortiz*, 1:17-cv-01802
*Herman Purvis*, 1:17-cv-02556
*Annette Sales-Orr*, 1:16-cv-02636
*Dorothy Stroech*, 1:17-cv-03543
*Mary Thomas (GA)*, 1:16-cv-035521
*William Wendt*, 1:18-cv-03283
*Marie Wilson*, 1:17-cv-03337

## PLAINTIFFS' OPPOSITION TO COOK DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS BASED UPON FEDERAL PREEMPTION

Plaintiffs, identified above, hereby submit this opposition to the Cook Defendants' Motion

for Judgment on the Pleadings Based on Federal Preemption in Bird's Nest Filter Cases (DN

9644).

## INTRODUCTION

The central question presented by the Cook Defendants' motion to dismiss is whether

federal law preempts state-law tort claims against a manufacturer of a medical device where the

Plaintiffs allege "parallel claims" as permitted under the United States Supreme Court's decisions

in *Medtronic v. Lohr,* 518 U.S. 470 (1996) and *Riegel v. Medtronic, Inc.,* 552 U.S. 312 (2008). The answer is no.

The United States Supreme Court has clearly stated that claims for injuries under state law are not expressly preempted by the Medical Device Amendments ("MDA") when the state law claims parallel federal requirements for medical devices. *Riegel,* 552 U.S. 312. Courts addressing the issue in the years since *Riegel*, have agreed that such state-law "parallel claims" are not preempted. *See, e.g. Bausch v. Stryker Corp.,* 630 F.3d 546, 549 (7th Cir. 2010), cert. denied, 132 S. Ct. 498 (2011); *Hughes v. Boston Scientific, Corp.,* 631 F.3d 762 (5th Cir. 2011); *Stengel v. Medtronic, Inc.,* 704 F.3d 1224, 2013 WL 106144 (9th Cir2013) (ruling en banc that the MDA does not preempt a state tort claim in which the state law duty of care "parallels" a federal law duty imposed by the MDA). Because Plaintiffs' claims under state law do not "differ from" or "add to" the requirements imposed on the Cook Defendants by federal law, they are not subject to the MDA's express preemption provision.

Nor are Plaintiffs' claims impliedly preempted pursuant to the Supreme Court's opinion in *Buckman Co. v. Plaintiffs' Legal Comm.,* 531 U.S. 341 (2001). *Buckman* does not prohibit traditional state-law causes of action that impose liability for conduct that also violates federal law. All of the Plaintiffs' claims are traditional state-law causes of action. Plaintiffs do not allege any *Buckman*-style "fraud-on-the-FDA" type claims. Consequently, *Buckman* does not apply to impliedly preempt Plaintiffs' claims.

Furthermore, the Cook Defendants imply that Plaintiffs were required to plead around preemption, which is an affirmative defense. In doing so, they ignore clear Seventh Circuit case law which conclusively states that a plaintiff does *not* have to anticipate and plead around affirmative defenses, including preemption. However, should this Court deem it appropriate,

2

Plaintiffs respectfully request leave to amend to more fully plead non-preempted claims. In addition, Plaintiffs are also requesting discovery before any such substantive (and possibly, dispositive) preemption decision is made, which is also consistent with Seventh Circuit precedent.

For these reasons, and as more fully explained herein, Plaintiffs respectfully request that this Court deny Cook's Motion for Judgment on the Pleadings, and if necessary, permit Plaintiffs to amend their short-form complaints to allege "parallel" claims consistent with Supreme Court and Seventh Circuit jurisprudence.

## I.   BACKGROUND

In 1976, Congress enacted the Medical Device Amendment (MDA) to extend the coverage of the Food, Drug & Cosmetic Act (FDCA) to medical devices.[1]  The MDA includes an express preemption clause. 21 U.S.C. § 360k(a). This clause preempts any state-law "requirement" with respect to a particular medical device "(1) which is different from, or in addition to, any requirement applicable under this chapter to the device and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter." *Id.*

The Supreme Court's caselaw proves that the scope of the MDA's preemption clause is limited.  In both *Lohr* and *Riegel v. Medtronic, Inc.*, 552 US 312 (2008), the Court was *clear* that

---

[1] The MDA "classifies medical devices in three categories based on the risk that they pose to the public." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 476 (1996). "Class III devices 'presen[t] a potential unreasonable risk of illness or injury' and therefore incur the FDA's strictest regulation." *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 344 (2001) (quoting 21 U.S.C. § 360c(a)(1)(C)(ii)(II)). "Before a new Class III device may be introduced to the market, the manufacturer must provide the FDA with a 'reasonable assurance' that the device is both safe and effective." *Lohr*, 518 U.S. at 477 (citing 21 U.S.C. § 360e(d)(2)).  Class III devices that were not grandfathered in (or which cannot be approved through the §510k process described below) must be approved through the "premarket approval" or "PMA" process, and this approval process is a substantial one. *Lohr*, 518 US at 477.  Medical devices may also be approved through the less rigorous "premarket notification" process also knowing as the § 510k process. For this type of approval, the FDA simply asks whether the device is "substantially equivalent" to a pre-existing approved device and, if so, permits it to be marketed without further regulatory analysis. *Lohr*, 518 US at 478-79.

express preemption only applies to state law claims where compliance with federal law was not challenged. On the other hand, "the Court's opinions in *Lohr* and *Riegel* expressly left the door open for state law claims based on violations of federal law." *Bausch v. Stryker Corp.*, 630 F.3d 546, 551 (7th Cir. 2010).

Each of the cases subject to this Motion involve a Plaintiff who was implanted with a Cook Bird's Nest vena cava filter. Cook's Bird's Nest filter was originally approved pursuant to the pre-market (PMA) approval process in 1989 as a "Class III" medical device.  Class III devices are those used "in supporting or sustaining human life or for use which is of substantial importance in preventing impairment of human health," or which "present[] a potential unreasonable risk of illness or injury." 21 USC § 360c(a)(1)(C).  In 2000, the FDA down-classified all IVC filters from Class III devices to Class II devices.  As Class II devices, IVC filters require less review and can be approved through the less rigorous 510k process.[2] And in fact, in February 2008, Cook Defendants secured a 510k device modification related to the Bird's Nest Vena Cava filter.[3]

## II.    STANDARD OF REVIEW

Motions for judgment on the pleadings are government by Rule 12(c). Rule 12(c) motions are reviewed under the same standard as Rule 12(b)(6) motions to dismiss. *Piscotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). In reviewing a motion to dismiss under Rule 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. Cb Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010).

---

[2] *See* https://www.fda.gov/downloads/MedicalDevices/DeviceRegulationandGuidance/GuidanceDocuments/ucm073777.pdf, the FDA's guidance document on submitting 510k applications for IVC filters.
[3] *See* https://www.accessdata.fda.gov/cdrh_docs/pdf7/K073528.pdf, for the Bird's Nest 510k Summary, granted on February 27, 2008.

To survive a motion to dismiss, a complaint must provide a "short and plain statement of the claim, giving the defendant "fair notice of what the claim is and the grounds upon which it rests" and showing that the pleader is entitled to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 550, 555 (2007). A pleading is adequate if it contains factual allegations sufficient to raise the possibility of relief above the "speculative level" assuming that all of the allegations in the complaint are true. *Id.* at 569 n. 14. A court should grant a Rule 12(c) motion only when it appears beyond a reasonable doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates there are no material issues of fact to be resolved. *Brunt v. Serv. Employees Int'l Union*, 284 F.3d 718, 719 (7th Cir. 2002).

Importantly there is a "basic presumption against pre-emption." *Bates v. Dow Agrosciences, LLC*, 544 U.S. 431, 449 (2005). Parties seeking preemption protection must overcome a considerable burden. "The presumption against preemption is heightened 'where federal law is said to bar state action in fields of traditional state regulation.'" *Riegel*, 552 U.S. at 334 (quoting *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)). "Federal laws containing a preemption clause do not automatically escape the presumption against preemption." *Id.* When a statutory preemption clause is subject to more than one plausible interpretation, courts usually "accept the reading that disfavors pre-emption." *Bates*, 544 U.S. at 449. This presumption is particularly strong in tort cases like this one because the states have historically enjoyed broad powers to protect the "lives, limbs, health, comfort, and quiet of all persons." *Slaughter House Cases*, 16 Wall 36, 62 (1873); *Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 907 (2000).

Preemption is also an affirmative defense. *Bausch*, 630 F.3d at 561. Pleadings need not anticipate or attempt to circumvent affirmative defenses, *including preemption. Id.* at 561 (citing

5

*Gomez v. Toledo,* 446 U.S. 635, 640 (1980)). So, a complaint will only be dismissed on the basis of an affirmative defense only when the plaintiff pleads herself out of court. *Xechem, Inc. v. Bristol-Myers Squibb Co.,* 372 F.3d 899, 901 (7th Cir. 2004). "A complaint need not 'specify the precise defect or the specific federal regulatory requirements that were allegedly violated' in order to state a claim that avoids preemption at the pleading stage." *Fisk v. Medtronic, Inc.,* 2017 WL 4247983, *5 (N.D. Ind. 2017) (quoting *Bausch,* 630 F.3d at 560). Further, "it follows that a complaint need not trace the injury to such a violation in particular." *Id.* at *5.

Simply stated, Cook Defendants bear the burden of showing this Court that no facts could be alleged which would allow Plaintiffs' claims survive. Because the Cook Defendants have not, and cannot, meet this burden (particularly without Plaintiffs having been granted an opportunity to conduct discovery or a chance to amend their complaints), the Cook Defendants' motion for judgment on the pleadings should be denied.

## III.   A DISTINCT PREEMPTION ANALYSIS FOR EACH NAMED PLAINTIFF IS PREMATURE AT THIS TIME.

The Cook Defendants' Motion involves fifteen different Plaintiffs with distinct state laws governing their claims. [4] Claims that invoke multiple state law analysis as is required by *Buckman Co. v. Plaintiffs' Leg. Comm..* 531 U.S. 341 (2001). The Cook Defendant's motion overlooks the individualized choice-of-law analyses and variations in controlling state laws that must be addressed before dismissing each Plaintiffs claims.

Indeed, the preemption analysis contains two steps: (1) whether the federal government has established any requirements applicable to the device in question; and (2) whether a plaintiff's

---

[4] The state laws at issue include: Alabama (Austin); Oklahoma (Davis); Arkansas (Duffy); New York (Fichtner and Ortiz); Florida (Franklin); Texas (Heard and Stroech); Mississippi (Muhammad); California (Nixon); Maryland (Purvis); Tennessee (Sales-Orr); Georgia (Thomas); Delaware (Wendt); and North Carolina (Wilson). One case previously subject to this motion, Antionette Williams, has been dismissed.

state-law claims are parallel to the federal requirements. *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 321 (2008). This *necessarily* requires an examination of the various state-law claims and their underlying duties. Here, Plaintiffs make numerous state claims for negligence, failure to warn, negligence per se, breach of express and implied warranties, and deceptive and unfair trade practices violations under various different state statutes.

In *In re: Zofran (Ondansetron) Products Liab. Litig.*, a multi-district litigation arising out of the claims that the use of Zofran by pregnant women caused birth defects, Judge Saylor noted that when plaintiffs' claims are not preempted under *Wyeth v. Levine* then *Buckman* requires a state law analysis for each claim to determine if it suffers from implied preemption. *See* 2016 WL 287056, at \*4 (D. Mass. Jan. 22, 2016).

Just recently, in the Bard IVC Filter MDL currently pending in the District of Arizona, Judge Campbell denied the defendant's motion for summary judgment because "[t]he [multiple] claims asserted by Plaintiffs involve the law of 50 states - laws this Court must apply in this MDL," and defendant did "not discuss the specific law of any particular state," but "instead summarize[d] general state law duties and assert[ed] that those duties impose requirement that are preempted." See *In re: Bard IVC Filters Product Liability*, No. 2; 15-md-DGC, Dkt. No. 8872, at 22 (D. Ariz. Nov. 22, 2017). Judge Campbell determined "[s]uch conclusory assertions are insufficient to meet the 'careful comparison' required by *Lohr*," and denied the defendant's motion based on its "fail[ure] to show any state law claim is expressly preempted by federal requirements." *Id.*

Asking this Court to plunge into a distinct preemption analysis for each of the 15 Plaintiffs should be a task that this Court is unwilling to undertake at this time. In fact, such an analysis should be left to the transferor courts after these cases have been remanded. *In re Nuvaring Products Liab. Litig.*, 2009 WL 4825170, at \*2 (E.D. Mo. 2009) ("case-specific rulings are neither

the purpose, nor the forte, of a court presiding over a multi-district litigation."); see also *In re Phenylpropanolamine Products Liab. Litig.*, MDL 1407, 2004 WL 2034587, at *1 (W.D. Wash. 2004) (finding that adjudication of summary judgment motions pertaining to state law claims would slow down the MDL process, thereby deferring state law dispositive motions to the transferor court); *In re: Zofran (Ondansetron) Products Liab. Litig.*, 2016 WL 287056, at *1 (D. Mass. 2016).

As stated above, Plaintiffs have made various state law claims. These claims are based on the laws of the states in which jurisdiction was proper at the time of filing. Dismissing all of the Plaintiffs' claims without individual analysis as the Cook Defendants have suggested would be in contradiction to *Riegel*. 552 U.S. 312, 321 (2008).

Cook Defendant's motion would subject this Court to state law analysis on all 15 Plaintiffs. State law analysis should be performed by the transferor court, which has had years of experience ruling on state laws in which it sets. *In re Nuvaring Products Liab. Litig.*, 2009 WL 4825170, at *2, *In re Phenylpropanolamine Products Liab. Litig.*, MDL 1407, 2004 WL 2034587, at *1. This Court should be unwilling to acquiesce to the Cook Defendant's requests and deny Cook's Motion.

## IV.    PLAINTIFF CAN PLEAD CLAIMS THAT ARE NOT EXPRESSLY PREEMPTED.

Should this Court determine a case-specific preemption analysis is appropriate now, all Plaintiffs subject to this motion can, nevertheless, adequately plead non-preempted claims. Preemption does *not* afford a medical device manufacturer wholesale immunity from liability. As the Supreme Court has repeatedly held, violations of state law claims that parallel federal requirements are not preempted. *See Riegel*, 552 U.S. at 312; *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 476 (1996). In pleading parallel state law claims, a plaintiff's only burden is to put forth facts that make the claim plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007);

8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Detailed allegations are not required to avoid preemption at the pleading stage. *See Bausch v. Stryker Corp.*, 630 F.3d 546, 558 (7th Cir. 2010).

The Seventh Circuit has expressly adopted a *limited* reading of the Medical Device Amendment's express preemption clause:

> Medical device manufacturers who subject their Class III devices to the rigorous premarket approval process are protected by federal law from civil liability so long as they *comply* with federal law. That protection does not apply where the patient can prove that she was hurt by the manufacturer's *violation* of federal law.

*Id.* at 540-50 (emphasis in original); *see also Id.* at 549 ("The idea that Congress would have granted civil immunity to medical device manufacturers for their violations of federal law that hurt patients is, to say the least, counterintuitive").  The Seventh Circuit uses a three-criteria test to determine whether state law claims are preempted: "(1) there must be a 'requirement' that a state 'establish[es] or continue[s] in effect, with respect to a device intended for human use'; (2) there must be a relevant federal requirement under the FDCA applicable to the device at issue;[5] and (3) the state 'requirement' must be 'different from, or in addition to,' the federal requirement." *McMullen v. Medtronic, Inc.*, 421 F.3d 482, 487 (7th Cir. 2005) (quoting 21 USC § 360k(a), the MDA's express preemption clause). Stated another way, state law claims based upon violations of federal law (*a.k.a.*, "parallel" claims) survive preemption.

The Seventh Circuit's test for preemption is not satisfied in the case at bar.  To be clear: 1) Plaintiffs' claims are all grounded in traditional state tort law premised on violations of federal law; 2) Plaintiffs are not alleging "fraud on the FDA," as contemplated by *Buckman Co. v. Pl.'s*

---

[5] Defendants dedicate a portion to their brief to pointing out that Lead Counsel for Plaintiffs has conceded that the PMA process imposes federal requirements upon device manufacturers. Plaintiffs are not contesting that the §510k process is distinct from the PMA process, nor that the PMA process may impose "requirements" upon device manufacturers.  However, this is not the dispositive factor for purposes of this motion. Rather, the central issue is whether Plaintiffs can plead "parallel" state law claims that do not "add to" or "differ from" those federal requirements, which as addressed herein, supports that Plaintiffs' claims survive.

*Legal Comm.*, 531 U.S. 341 (2001); 3) Plaintiffs are not attempting to enforce any federal regulations; and 4) Plaintiffs are not seeking to impose requirements in addition to or different from federal requirements.  For these reasons, Plaintiffs' claims are not expressly or impliedly preempted.

### A.      Plaintiffs' Failure to Warn Claims Are Not Preempted.

#### (1)      The Cook Defendants Have a Federal and State Law Duty Not to "Misbrand" Their Devices or sell "Misbranded" Devices.

Failure to warn claims survive preemption where they are premised upon a state law duty that "parallels" federal requirements. Here, device manufacturers of PMA approved products (like the Cook Defendants) are **not** permitted to sell "misbranded" medical devices. 21 U.S.C. §331 (expressly prohibiting the sale of misbranded devices). Among other necessary **federal requirements**, a device is misbranded if, *inter alia*, (a) "its labeling is false or misleading in any particular;" (f) "unless its labeling bears (a) adequate directions for use; and (2) such adequate warnings against use ... where its use may be dangerous to health ... as are necessary for the protection of users;" (j) "if it is dangerous to health when used in the ... manner ... prescribed, recommended, or suggested in the labeling thereof;" or (q) "its advertising is false or misleading in any particular." 21 U.S.C. §352(a), (f), (j), (q).  Furthermore, PMA device manufacturers are permitted to comply with such requirements by submitting a PMA supplement and enhancing the safety of the device through updated labeling *prior to any FDA approval of the supplement. See* 21 CFR 814.39(d).

Specifically, the Cook Defendants were expressly permitted to update their labeling without prior FDA approval regarding the following, and this was **required** in order to avoid running afoul of federal regulations concerning misbranded drugs:

(i) Labeling changes that add or strengthen a contraindication, warning, precaution, or information about an adverse reaction for which there is reasonable evidence of a causal association.

(ii) Labeling changes that add or strengthen an instruction that is intended to enhance the safe use of the device.

(iii) Labeling changes that delete misleading, false, or unsupported indications.

21 CFR 814.39(d)(2)(i)-(iii).

The Supreme Court agrees, "[w]e also note that the agency permits manufacturers of devices that have received PMA to make certain labeling, quality control, and manufacturing changes which would 'enhance[] the safety of the device or the safety in the use of the device' without prior FDA approval." *Lohr*, 518 U.S. at 498 (1996) (quoting 21 CFR 814.39(d)). Defendants' own PMA letter (attached as Exhibit B to their MJP, DN 9645-2), explicitly states, "[b]efore making any change affecting the safety or effectiveness of the device, submit a PMA supplement for review and approval by FDA *unless the change is of a type for which a 'Special PMA Supplement-Changes Being Effected' is permitted under 21 CFR 814.39(d)*…" (emphasis added). Thus, Cook Defendants knew they could, and in fact were expressly permitted by the FDA to make such changes unilaterally in order to comply with their ongoing federal and state law duties to adequately warn and not to sell misbranded devices.[6] Cook Defendants bore a duty under federal law to provide adequate warnings regarding the Bird's Nest filter.

---

[6] Both *McGookin v. Guidant Corp.*, 942 N.E.2d 831 (Ind. Ct. App. 2011) and *McMullen v. Medtronic, Inc.*, 421 F.3d 482 (7th Cir. 2005) addressed a device manufacturer's ability to make labeling change to strengthen warnings pursuant to 21 CFR 814.39(d). And both concluded that while the federal regulation *permitted* a device maker to unilaterally strengthen its labeling, it did not *require* it. Hence, both courts found state law duties which would require such a change to be preempted by the MDA's express preemption clause. Plaintiffs' claims here, however, are distinguishable as, unlike the plaintiffs in either the *McGookin* or *McMullen* case, Plaintiffs have alleged the Cook Defendants were *required* by federal law to update their labeling in order to comply with their duties to not sell misbranded products. Section 21 CFR 814.39(d) simply provides the mechanism whereby Cook could have accomplished this without prior FDA approval. Neither *McGookin* nor *McMullen* addressed the device maker's obligations under federal misbranding regulations. *McMullen*, however, does suggest that *if* such a duty to issue additional warnings was imposed by federal law, the case would have resulted in a different outcome. *See McMullen*, 421 F.3d at 489.

*Bates v. Dow Agrosciences L.L.C.*, 544 U.S. 431 (U.S. 2005) is binding authority in this case. The U.S. Supreme Court in *Bates* interpreted the expressed preemption provision of the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), and recognized that the "parallel requirements" preemption provisions under FIFRA were directly comparable to that announced in *Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) for medical devices. *Id.* at 447. *Bates* also held that parallel claims for fraud and failure to warn may be based on an alleged "misbranding" violation under FIFRA. "Private remedies that enforce federal misbranding requirements would seem to aid, rather than hinder, the functioning of FIFRA." *Bates*, 544 U.S. at 451. *Bates* further explained:

> Thus, a state-law labeling requirement is not pre-empted by § 136v(b) if it is equivalent to, and fully consistent with, FIFRA's misbranding provisions. Petitioners argue that their claims based on fraud and failure to warn are not preempted because these common-law duties are equivalent to FIFRA's requirements that a pesticide label not contain "false or misleading" statements, § 136(q)(1)(A), or inadequate instructions or warnings. §§ 136(q)(1)(F), (G). *We agree with petitioners insofar as we hold that state law need not explicitly incorporate FIFRA's standards as an element of a cause of action in order to survive preemption.*

*Bates*, 544 U.S. at 447 (emphasis added).

The only question remaining is whether there is a parallel state law duty existing here that does not add requirements or differ from Cook's federal duty not to misbrand its devices.[7] Product

---

[7] For ease of reference, Plaintiff is addressing Indiana law, but all of the possible state laws as issue here likewise support an independent state law duty to warn. *See* Alabama: *Gurley By and Through Gurley v. Am. Honda Motor Co., Inc.*, 505 So. 2d 358, 361 (Ala. 1987) (recognizing manufacturer is under a duty to provide reasonable warnings regarding the dangerous propensities of a product if the product is dangerous when put to its intended use); Arkansas: *Hill v. Searle Labs.*, 884 F.2d 1064, 1070 (8th Cir. 1989) (manufacturer has duty to warn of dangers inherent in its product and this can extend to third parties like physicians); California: *Coleman v. Medtronic, Inc.*, 223 Cal.App.4th 413, 428–29, 167 Cal.Rptr.3d 300 (2014) (holding that California imposes a state tort duty to warn on manufactures, and this includes to report adverse events to the FDA as a parallel state law duty to federal law); Delaware: *Ramsey v. Georgia Southern University Advanced Development Center*, 189 A.3d 1255, 1271-72 (manufacturer has a duty to warn of the dangers inherent in its products) (Del. 2018); Florida: *Scheman-Gonzalez v. Saber Mfg. Co.*, 816 So.2d 1133, 1139 (Fla. Ct. App. 2002) (manufacturer has duty to warn of dangerous propensities of its products); Georgia: *Chrysler Corp. v. Batten*, 264 Fa. 723, 724 (Ga. 1994) (manufacturer has a general duty to warn of the dangers of its products); Maryland: *Williams v. Smith & Nephew, Inc.* (123 F.Supp.3d 733, 742 (D. Md. 2015) (Maryland has a "parallel" duty to warn, including to warn a third party like the FDA); Mississippi: *Hughes v. Boston Scientific Corp.*, 631 F.3d 762, 775-76 (5th Cir. 2011) (negligence claim premised on a failure to report adverse events was consistent with a parallel duty to warn under Mississippi state law); New York: *Glucksman v. Halsey Drug Co., Inc.*, 553

liability claims are governed by the Indiana Product Liability Act. Pursuant to Ind. Cod. §34-20-4-2, product manufacturers must provide "reasonable warnings of danger" about their products. Indiana places a duty to provide adequate warnings on product manufacturers to protect consumers. *See, e.g.*, *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 521 (7th Cir. 2003).[8] This state-law duty is clearly consistent with the federal duty to provide adequate warnings for use of drugs or devices as necessary to protect consumers.

Furthermore, as 21 CFR 814.39(d) provides a mechanism by which the Cook Defendants could have complied with both their state and federal duties to adequately warn *without* having to first obtain FDA approval. Because the Cook Defendants violated federal requirements by distributing a misbranded device that did not adequately warn patients, they can be held to account for their inactions under the parallel state law product liability laws at issue here.

**(2)    Cook Defendants Had Federal and State Law Duties to Adequately Report Adverse Events to the FDA.**

---

N.Y.S.2d 724, 726 (N.Y. App. Div. 1st Dept. 1990) ("The manufacturer of a prescription drug has a duty to warn of all potential dangers which it knows or should know, and must take such steps as are reasonably necessary to bring that knowledge to the attention of the medical profession"); North Carolina: *Morgan v. Cavalier Acquisition Corp.*, 111 N.C.App. 520, 529 (N.C. Ct. App. 1993) (it is well established under North Carolina law that a manufacturer owes a duty to warn); Oklahoma: *Edwards v. Basel Pharm.*, 933 P.2d 298, 300 (Okla. 1997)(recognizing state law requires a manufacturer to warn consumers of known dangers associated with the use of its product); Tennessee: *Nye v. Bayer Cropscience, Inc.*, 347 S.W.3d 686 (Tenn. 2011) (manufacturer owes a duty to warn of the dangers of its products and this can in some circumstances be fulfilled by warning third parties like the learned intermediary doctrine) ; Texas: *Centocor, Inc. v. Hamilton*, 372 S.W.3d 140, 153–54 (Tex. 2012) (recognizing general duty of manufacturer to provide an adequate warning to users of its product if it knows or should know of any potential harm that may result from the use of its product).

[8] *See also*, Ind. Code 16-42-3-4, which defines a misbranded drug or device nearly identically as 21 USC § 352; Ind. Code 25-26-14-21.5 which also prohibits the sale of misbranded devices. Many other state laws at issue similarly have enacted state-food, drug and cosmetic acts which have statutes tracking similar language regarding misbranded drugs and devices. Arkansas: Ark. Code 20-56-211 (defining misbranded drugs and devices), Ark. Code 20-56-215 (misbranding or manufacture or sale of misbranded devices prohibited); California: Cal. Health and Safety Code § 111330-111510 (defining misbranded drugs and devices and prohibiting the sale thereof); Florida: Fla. Stat. § 499.007 (defining misbranded drugs and devices), § 499.005 (prohibiting the manufacture and sale of misbranded drugs and devices); Georgia: O.C.G.A. § 26-3-8 (defining misbranded drugs and devices), § 26-3-3 (sale or manufacture prohibited); Maryland: Maryland Code § 21-27 (defining misbranded drugs and devices); § 21-247-261 (prohibited acts); New York: New York Code § 6811 (making it unlawful to misbrand or manufacture or sell a misbranded drug or device); North Carolina: N.C. Code § 106-134 (defining misbranded drugs and devices); § 106-122 (prohibiting the manufacture or sale of misbranded devices); Oklahoma: 63 Ok Stat § 63-1-1409 (defining misbranded drugs and devices); §63-1-1402 (prohibiting the sale thereof); Tennessee: 2010 Tenn. Code § 53-1-109 (defining misbranded drugs and devices), §53-1-103 (prohibiting the sale of misbranded drugs and devices); Texas: Tex. FDCA § 431.112 (defining misbranded drugs and devices, § 431.021 (prohibiting the sale of misbranded drugs and devices).

Plaintiffs' failure to warn claim is not only based upon Defendants' failure to comply with federal misbranding requirements, but also upon their failure to properly report adverse events to the FDA. These requirements are derived from (1) the Medical Device Reporting (MDR) regulations, (2) the Bird's Nest PMA conditions for approval, and (3) federal law.

First, the MDR regulations impose a federal duty upon the Cook Defendants to "report deaths and serious injuries that a device has or may have caused or contributed to, establish and maintain adverse event files, and submit summary annual reports" of these Adverse Events and Device Defect reports to the FDA. 21 CFR § 803.1. "These reports help [the FDA] to protect the public health by helping to ensure that devices are not adulterated or misbranded and are safe and effective for their intended use." *Id.* The Cook Defendants failed to timely and accurately report to the FDA these adverse events reasonably associated with the use of their medical device, the Bird's Nest Vena Cava filter. The Cook Defendants' failure to report was in violation of their duties under the PMA, FDCA and various federal regulations (*see e.g.* 21 C.F.R. § 803.1-.58, 21 CFR § 814.82).

Class III devices, such as the Bird's Nest filter, are required to go through the PMA process to provide reasonable assurance of their safety and effectiveness. The federal government has established requirements applicable to these devices in part because the PMA process established specific requirements applicable to the device, including Defendants' duties under the "Conditions for Approval" to the Bird's Nest PMA to timely report adverse events. These Conditions for Approval require manufacturers, like Cook Defendants, to take the steps to change their labeling under such circumstances in order to assure that the devices "are not adulterated or misbranded and are safe and effective for their intended use."

14

Second, the FDA may impose post-approval requirements, including a "[c]ontinuing evaluation and periodic reporting on the safety, effectiveness, and reliability of the device for its intended use." See 21 CFR § 84.82. The FDA did impose these post-approval requirements in the Bird's Nest PMA, which stated that the in order for the FDA to be continually assured of the safety and effectiveness of the device, an "Adverse Reaction Report" or "Device Defect Report" should be filed within 10 days of the Cook Defendants receiving knowledge or information of, in part, "[a]ny adverse reaction, side effect, injury, toxicity, or sensitivity reaction that is attributable to the device and: a. has not been addressed by the device's labeling; or b. has been addressed by the device's labeling but is occurring with unexpected severity or frequency." *See* Exhibit B to MJP (DN9645-2).

Finally, under federal law, a medical device manufacturer has a continuing duty to monitor their product after premarket approval and to discover and report to the FDA any complaints about the product's performance and any adverse health consequences of which it became aware and that are or may be attributable to the product. Cook Defendants had continuing duties under 21 C.F.R. §§ 820.198, 820.300, 820.700 & 820.100 to discover, investigate and respond to Adverse Events. The Defendants also had a duty to report new clinical investigations and/or scientific studies under 21 C.F.R. § 814.84(b)(2) (*see also* Exhibit B to MJP, the Bird's Nest PMA's conditions for approval, requiring reporting of the same (DN9645-2)). This includes information the manufacturer receives or otherwise becomes aware of, from any source, that reasonably suggests that a device may have caused or contributed to death or serious injury; or has malfunctioned in a manner that would likely "cause or contribute to a death or serious injury" if it recurred. 21 C.F.R. § 803.50(a); *see also* 21 U.S.C. § 360i(a) (further detailing post approval reporting requirements).

Here, Plaintiffs can sufficiently plead that the Cook Defendants failed to comply with these federal requirements with respect to their Bird's Nest IVC filter (or for all of their IVC filters for that matter). In fact, this Court has already addressed Cook's failure to report adverse events regarding its IVC filters in the context of a discovery dispute. In April 2016, Cook moved for a protective order barring Plaintiffs from discovery related to its failure to report foreign adverse events to the FDA. *See* DN 1329 (Cook's Motion for Protective Order). In Plaintiffs' opposition,[9] which is hereby incorporated by reference, Plaintiffs identified numerous pieces of evidence showing Cook did *not* submit foreign adverse events to the FDA concerning its Celect and Gunther Tulip filters.[10] This pattern of underreporting supports a plausible failure to warn claim premised upon Cook's failure to adequately inform the FDA of adverse events associated with its IVC filter products, in plain violation of federal law and the Bird's Nest conditional PMA requirements. Magistrate Judge Tim A. Baker concluded that "discovery revealed that Cook only reported device complaints to the FDA (and therefore to MAUDE) for filters marketed in the United States and withheld complaints for the same products marketed outside the country." See *In re: Cook Medical, Inc.*, 2016 WL 2854169, *1 (S.D. Ind. 2016) (DN 1511). Judge Baker also agreed with Plaintiffs that the requested discovery was relevant to their claims. This is bolstered even more here, where the Bird's Nest Plaintiffs must rely upon violations of federal law and "parallel" state law duties to assert non-preempted claims.

---

[9] *See* DN 1367 with Exhibits 1-4. Plaintiffs filed the full motion under seal since it attached evidence subject to a pre-existing protective order prohibiting the disclosure of confidential information.
[10] To avoid having to file this Opposition under seal, Plaintiffs have decided against summarizing the evidence referenced herein, but direct the Court to review the opposition to Cook's Motion for a Protective Order along with its accompanying exhibits filed as DN 1367. Additionally, while the prior discovery dispute focused on underreporting adverse events concerning the Celect and Gunther Tulip filters, Plaintiffs have no reason to assume Cook's pattern of underreporting was limited to only those models. Discovery in this MDL has been limited to these models and there was simply no reason to address underreporting concerning any other type of IVC filter model in Plaintiffs' opposition to the protective order, even if it existed at the time, which it did not considering the limits on discovery.

Multiple circuit courts with opinions on failure to warn cases within the scope of MDA preemption have held that failure to warn claims based on failure to report adverse events are not preempted. *Hughes v. Boston Scientific Corp.*, 631 F.3d 762, 770-71 (5th Cir. 2011) (holding that a manufacturer violated its duty to warn under state law by failing to accurately report serious injuries as required by federal law); *Stengel v. Medtronic, Inc.*, 704 F.3d 1224, 1232-33 (9th Cir. 2013), cert. denied, (holding that a claim for negligence alleging that a manufacturer breached its federal law duty to warn the FDA of adverse events was not preempted where state law recognized a claim for failure to warn third parties such as FDA). These cases are consistent with the Seventh Circuit's approach in *Bausch* in that they hold a parallel state law claim premised on a defendant's violation of federal law will survive preemption. *See Hughes*, 631 F.3d at 770 ("Hughes's failure to warn claim is comparable to the negligent failure to warn claim in *Lohr* and the negligent manufacturing claims in *Gomez, Howard,* and *Bausch.* These authorities make clear that Hughes's claim is not expressly preempted to the extent she asserts that Boston Scientific violated the state duty to warn by failing to accurately report serious injuries and malfunctions of the HTA device as required by the FDA's MDR regulations."); *Stengel*, 704 F.3d at 1233 ("In holding that the Stengels' failure-to-warn claim is not preempted, we join the Fifth and Seventh Circuits, which reached the same conclusion with respect to comparable state-law claims in *Hughes* and *Bausch*.").

In an even more recent case, the Northern District of Indiana expressly agreed with *Hughes* and *Stengel* that such a claim is not preempted and furthermore, that a duty to report to third parties like the FDA is consistent with Indiana state law. In *Fisk v. Medtronic, Inc.*, 2017 WL 4247983 (N.D. Ind. 2017), the plaintiff brought suit over an alleged implantable pain pump, a Class III device approved under the PMA process. *Id*. at *1. Similar to many of Plaintiffs' claims at issue

17

here, the plaintiff in *Fisk* brought typical state law products liability claims including manufacturing defect, failure to warn, negligence, breach of express and implied warranties, and negligent misrepresentation. *Id.* at \*2.

After concluding that the manufacturing defect claim survived, the *Fisk* court turned to the plaintiff's failure to warn claim, which she based upon allegations that the defendant manufacturer failed to report adverse events to the FDA. The court held that "Indiana law does impose a duty to warn, and as just noted, that duty will sometimes require the manufacture[r] to provide the information to third parties rather than the end users themselves." *Fisk*, 2017 WL 4247983 at \*6 (citing *Nat. Gas Odorizing, Inc. v. Downs*, 685 N.E.2d 155, 163 (Ind. Ct. App. 1997) and *Phelps v. Sherwood Med. Indus.*, 836 F.2d 296, 303 (7th Cir. 1987)). In addition, an earlier Northern District of Indiana court had come to the same conclusion. *McAfee v. Medtronic, Inc.*, 2015 WL 3617755, \*5 (N.D. Ind. 2015) ("Mr. McAfee has stated plausible claims for relief under state law based on an alleged failure to warn the FDA..."). *Fisk*, 2017 WL 4247983 at \*6. Moreover, Medtronic's argument that the claim was preempted because state law was not "identical" to the federal duty to report was not convincing, as Plaintiff's theory of liability was limited to the defendant's failure to report *to the FDA. Id.*

Plaintiffs here can similarly plead a failure to warn claim premised upon Cook Defendants' failure to properly report adverse events to the FDA—which both federal and state law demanded. Because such a claim is consistent with the Seventh Circuit's preemption analysis—among other circuit courts'—this Motion should be denied, especially where Plaintiffs have not been afforded any opportunity to conduct discovery.  Should this Court require it, Plaintiffs respectfully request leave to more further detail allegations related to Cook Defendants' underreporting in their SFCs (see section VII).

**B.      Plaintiffs' Breach of Warranty Claims are Not Preempted.**

A warranty is a promise voluntarily made—the "requirement[s] imposed by an express warranty claim are not imposed under State law, but rather imposed by the warrantor." *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 525 (1992) (holding breach of express warranty not preempted). Many courts have found that express warranties exist outside the FDCA, founded in traditional state law. See, e.g., *Houston v. Medtronic, Inc.*, 957 F.Supp.2d 1166 (C.D. Cal 2013); *Beavers–Gabriel v. Medtronic, Inc.*, 15 F.Supp.3d 1021 (D. Haw. 2014); *Schouest v. Medtronic, Inc.*, 13 F.Supp.3d 692 (S.D. Tex. 2014); *Arvizu v. Medtronic, Inc.*, 41 F.Supp.3d 783 (D. Ariz. 2014); *Brady v. Medtronic, Inc.*, 2014 U.S. Dist. LEXIS 52151, at *23 (S.D. Fla. 2014) ("a state law requirement that holds manufacturers to voluntary warranties…does not require something 'different from or in addition to' federal requirements. Moreover, [a] claim for breach of express warranty would exist in the absence of the FDCA and MDA. It is therefore not preempted"). In *Mitchell v. Collagen Corp.*, the Seventh Circuit expressly declined to hold express warranty claims were preempted, holding, "…such warranties arise from the representation of the parties and are made as the basis of the bargain between them. A state judgment based on the breach of an express representation by one of the parties does not necessarily interfere with the operation of the PMA, and therefore we cannot say that such a cause of action is preempted."  126 F.3d 902, 915 (7th Cir. 1997).

19

Similarly, the Southern District of Indiana in *Hofts v. Howmedica Osteonics Corp.*, 597 F.Supp.2d 830 (S.D. Ind. 2009) concluded that *both* breach of express warranty claims and breach of implied warranty claims are not preempted. *Hofts* involved a defective artificial hip implant. Following *Mitchell*, the *Hofts* Court agreed that breach of express warranty claims would not interfere with the operation of the PMA. *Id.* at 839 ("He contends only that the device implanted in his hip should fit the description on that label. He claims that the Trident did not live up to the FDA-approved promises contained in its label and that he was harmed as a result.").

At the pleading stage, the *Hofts* court also refused to dismiss the plaintiff's breach of implied warranties of fitness for a particular purpose and merchantability claim, concluding that the defendant failed to show that such a claim "rest[ed] on allegations about standards other than those permitted by the FDA." *Id.* at 840.[11]  Noting that federal regulations under 21 CFR § 808.1(d)(1) limit the scope of preemption and *explicitly* sought to preserve breach of warranty claims, the court "decline[d] to reject all reliance on the regulation for guidance on Hofts' implied warranty claims at the pleading stage." *Id.* at 840, fn. 3. In other words, despite the *Riegel* Court's criticism of that statute, the fact that the high court did not expressly rule on its application and that fact the statute expressly aimed to preserve breach of implied warranty claims, resulted in the *Hofts* court's decision to permit the claim to move forward. Numerous other courts have permitted breach of implied warranty claims to go forward, so long as they are premised upon a violation of federal requirements consistent with the Supreme Court's "parallel" claim doctrine. *See Bass v. Stryker Corp.*, 669 F.3d 501, 517 (5th Cir. 2012); *Gelber v. Stryker Corp.*, 788 F.Supp.2d 145, 166

---

[11] Similarly, and as with *each* claim Cook says is preempted in its Motion, the Cook Defendants here have failed to identify which of Plaintiffs' allegations would impose additional requirements above and beyond what federal law already requires Cook to do.

(S.D.N.Y. 2011); *Kallal v. Ciba Vision Corp.*, 2010 WL 2330365 (N.D. Ill. 2010); *Riddell v. Howmedica Osteonics Corp.*, 2015 WL 5167039, *8, fn 3 (S.D. Miss. 2015) (agreeing with *Bass*).

Because warranty claims do not concern the breach of a promise pertaining to safety or effectiveness required by the FDA, but rather a voluntary contractual promise made by the defendant, separate and apart from any FDA requirements, a determination of warranty claims does not "require a finder of fact to challenge or usurp the FDA's conclusions of safety and effectiveness." *Cline v. Advanced Neuromodulation Sys.*, 914 F. Supp. 2d 1290, 1298 (N.D. Ga. 2012). FDA regulations also clearly state that warranty claims are not preempted because they are state laws of general applicability, not specifically developed with respect to medical devices. *See* 21 C.F.R. § 808.1(d)(1): "Exemptions from Federal Preemption of State and Local Medical Device Requirements" (such claims are "not 'requirements applicable to a device' within the meaning of section [360k(a)]"). Thus, express preemption does not apply. [12]

Here, Plaintiffs have adequately alleged both express and implied warranty claims, premised not only upon the FDA-approved labeling, but also in marketing and advertising and other statements of fact made to physicians, patients and the public at large related to  Cook Defendants' IVC filters, including the Bird's Nest filter. At all relevant times, Cook Defendants advertised to physicians and the general public, including Plaintiffs, that its Bird's Nest filters were fit for the ordinary purpose and were free from defects in material and design. Cook Defendants made affirmative representations regarding the reliability, safety, and trusted nature of its Bird's

---

[12] Under Ind. Code 26-1-2-313:
(1) Express warranties by the seller are created as follows:
    (a) any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
    (b) any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
    (c) any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

Nest filters sold to Plaintiffs. Plaintiffs adequately allege that they relied on these representations and relied on Cook Defendants to disclose the defective nature of its Bird's Nest filters because they allege that these representations were material to their decision to undergo the implantation procedure. *See* Master Consolidated Complaint, ¶¶ 93-99 (breach of express warranty); ¶¶ 100-111 (breach of implied warranties).

### C.    Negligence Per Se Claims are Not Preempted Where Federal Law Creates the Standard of Care

A Class III device that fails to meet the PMA requirements after marketing is misbranded and/or adulterated under § 351 (f) of the Federal Food, Drug and Cosmetic Act ("FDCA"). Under 21 U.S.C. § 352 and Ind. Code 16-42-3-4, a device is "misbranded" if its labeling is false or misleading in any particular (among other things). The Bird's Nest filter was manufactured, labeled, distributed, and/or advertised in a manner that is inconsistent with the Conditions for Approval specified in its conditional PMA approval. The Cook Defendants also concealed reports of adverse events, in violation of federal law, the PMA, and parallel state law. Further, these defendants (1) failed to appropriately respond to adverse incident reports, which strongly indicated the Bird's Nest filter was malfunctioning or otherwise not performing as it should, which was to remain permanently in Plaintiffs' inferior vena cavas, and (2) continued to place the Bird's Nest filter into the stream of interstate commerce when they knew, or should have known, that the filter was malfunctioning or otherwise not performing as intended. Accurate and timely reporting of adverse events helps to ensure that devices are not adulterated or misbranded and are safe and effective for their intended use. The defendants failed to comply with the PMA and other federal requirements, thus making the Bird's Nest filter "misbranded" and extra-regulatory. Plaintiffs are not suing to enforce federal law based on the misbranded status of the Bird's Nest device, but are instead suing on parallel state claims, which allow a state cause of action for damages due to Cook

Defendants' failure to warn the FDA, Plaintiffs, and Plaintiffs' physicians of the misbranded condition of the device.

The Northern District of Indiana, agreeing with an earlier opinion from the Eastern District of Wisconsin, expressly found a plaintiff could assert a negligence per se claim based on violations of the FDCA. *See Menges v. DePuy MoTech, Inc.*, 61 F.Supp.2d 817, 829 (N.D. Ind. 1999). Many courts agree that a federal duty can establish the standard of care for a state law negligence per se claim. Hence, the claim is not impliedly preempted as it merely supplies the standard of care, but not the basis of the claim itself, which instead relies upon state law. *See Stanton ex rel. Brooks v. Astra Pharmaceutical Prods, Inc.*, 718 F.2d 553, 565 (3d Cir. 1983) (failure to comply with FDA regulations constituted negligence per se under Pennsylvania law); *Grove Fresh Distribs., Inc. v. Flavor Fresh Foods, Inc.*, 720 F.Supp. 714, 716 (N.D. Ill. 1989) (FDA regulation can be used to establish the standard of care or duty which defendants failed to meet); *Howard v. Zimmer, Inc.*, 299 P.3d 463 (Okla. 2013) (federal regulations can form the basis of a negligence per se claim under Oklahoma law); *Coleman v. Medtronic, Inc.*, 223 Cal.App.4th 413 (Cal. Ct. App. 2014) (California recognizes violations of federal law for the purposes of a state law negligence per se claim); *Bass v. Stryker Corp.*, 669 F.3d 501, 514 (5th Cir. 2012) (tort claims predicated upon FDCA violations permitted under Texas law). These cases are in line with Indiana law regarding negligence per se claims, which states that "[n]egligence per se under state tort law can be premised on the violation of a federal statute, with the statute providing the standard of conduct and state common law furnishing the other elements of the tort." *Moore v. Hamilton Southeastern School District*, 2013 WL 4607228, *10 (S.D. Ind. 2013).

Here, the Cook Defendants' failure to comply with PMA requirements, among other federal regulations, demonstrate a violation of the standard of care for a state-law negligence per se claim. Therefore, Cook Defendants' Motion should be denied.

**D.      Consumer Fraud and Deceptive Trade Practices Act Claims are Not Preempted Where Plaintiff Alleges A Violation of Parallel Federal Law.**

Similarly, Plaintiffs' claims for violation of state consumer protection statutes are also not preempted, because again, these claims do not rely upon state duties that "add to" or are "different from" the federal duties Cook Defendants already owed. As the *Hofts* court found, unless Cook Defendants can point to the ways in which Plaintiffs' claims allegedly seek to impose new or additional requirements upon them, their motion should be denied. *Hofts*, 597 F.Supp.2d at 840. Especially when § 808.1(d)(1) expressly embodies the intent that such claims should specifically *not* be preempted. *Id*.

Numerous courts agree that where deceptive, misleading and fraudulent marketing and advertising conduct is alleged, it survives preemption because it is premised upon voluntary communication made by the device manufacturer to medical professionals or to the public, rather than anything mandated by the FDA (since, in fact, false and misleading conduct is necessarily prohibited by the FDA). *See McCormick v. Medtronic, Inc.*, 219 Md.App. 485, 518-29 (Md. Ct. App. 2014); *Schouest v. Medtronic, Inc.*, 13 F.Supp.3d 692, 708 (S.D. Tex. 2014); *Bass*, 669 F.3d at 517-18 (allowing a DTPA claim to go forward to the extent it is premised upon a failure to comply with federal law, similar to a breach of implied warranty claim).

Here, Plaintiffs have alleged Cook Defendants made various false, untrue and misleading statements regarding its IVC filters, and that Cook affirmatively misrepresented its products in violation of state consumer protection laws. *See* Master Consolidated Complaint, ¶¶ 112-166. Under the Seventh Circuit's pleading standard, which *does not* require Plaintiffs to plead

specifically to avoid a preemption defense, this is enough.  However, to the extent that this Court requires Plaintiffs to plead more facts regarding the Cook Defendants' failure to comply with federal law to sufficiently state such a claim, Plaintiff respectfully request leave to amend as requested in Section VII.

## V.   THE SUPREME COURT'S *BUCKMAN* DECISION DOES NOT IMPLIEDLY PREEMPT PLAINTIFFS' PARALLEL CLAIMS.

The Cook Defendants make the alternative argument that, even if Plaintiffs' state law claims are not expressly preempted (which they are not), they should nevertheless be dismissed as impliedly preempted under *Buckman*.[13]  Not so.  *Buckman* holds only that private actions *to enforce FDA regulations* are preempted. Plaintiffs are not suing to enforce an FDA requirement. Plaintiffs are suing under the theory that the Cook Defendants failures to avoid selling a misbranded product and to report adverse events to the FDA violated Cook's duty to adequately warn consumers.[14]  In addition, Plaintiffs are suing under a breach of warranty theory that is based on a contractual promise that exists outside of the FDCA.  And Plaintiffs assert a negligence per se claim under state law which looks to federal regulations merely to inform the standard of care. Because Plaintiff's state-law-based claims could exist independently of any federal requirement, the claims are not impliedly preempted.

### A.   *Buckman* is distinguishable from the case at bar.

The facts, claims, and rationale in *Buckman* are distinguishable from this case. *Buckman Co. v. Plaintiffs' Legal Committee,* 531 U.S. 341, 352 (2001).  In *Buckman,* the patients suffered

---

[13] This argument forces the Cook Defendants into a curious position. That is, after arguing throughout the bulk of its motion that the Supreme Court requires claims to be "parallel" if they are to escape express preemption, Cook Defendants then argue that the exception to preemption enunciated by *Riegel* in 2008 (i.e. the parallel claim exception) is itself preempted by the earlier 2001 *Buckman* decision. The Cook Defendants fail to offer any explanation why the *Riegel* Court would go through the trouble of creating an illusory exception. That is because no explanation is necessary: *Buckman* does not apply to preempt a parallel claim brought under state law.

[14] This is in addition to Plaintiffs' breach of warranty and consumer protection act claims, which exist outside of the federal regulatory scheme to begin with.

injuries attributable to the implantation of orthopedic bone screws in their spines. After settling their claims against the bone screw manufacturer, the patients proceeded solely against a regulatory consultant that made fraudulent representations to the FDA during the FDA approval process.  It is significant that the sole cause of action at issue in *Buckman* was a claim for "fraud-on-the-FDA" – a claim which requires proof that the FDA was defrauded as one of its essential elements.  Not surprisingly, when considering solely a fraud-on-the-FDA claim, the Supreme Court held that the claim was impliedly preempted because it interfered with the FDA's discretion about whether and how to exercise its federal enforcement authority.  *Buckman,* 531 U.S. at 350-53.

Importantly, *Buckman* specifically distinguished "fraud-on-the-agency" claims from claims based on state tort law principles.  *Buckman,* 531 U.S. at 352-53.  In particular, the fraud-on-the-FDA claims in *Buckman* were contrasted with the state tort law claims asserted against device manufacturers in *Medtronic v. Lohr,* 518 U.S. 470, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). The Supreme Court noted that the claims in *Lohr* arose from the manufacturer's alleged failures to use reasonable care and not solely from its violation of FDCA requirements.   The *Buckman* Court also noted that the state law claims in *Lohr* did not exist solely because of the FDCA disclosure requirements.  The same is true of Plaintiffs' claims in this case.

**B.      Numerous courts, including the Seventh Circuit, have held that state-law based claims premised on conduct violating the FDCA are not impliedly preempted.**

Numerous federal courts have held (or noted in dicta) that state law claims premised on conduct that also violates the Food, Drug and Cosmetics Act are not impliedly preempted.  Most

instructive among these, is the decision of the Court of Appeals for the Seventh Circuit in *Bausch v. Stryker Corp.,* which is binding on this Court.[15]  630 F.3d 546, 549 (7th Cir. 2010).

In *Bausch,* the plaintiff asserted state law-based negligence and product liability claims premised on allegations that the defendant had manufactured a hip replacement device in violation of federal law. *Bausch,* 630 F.3d at 549. The defendant in *Bausch,* like the Cook Defendants here, argued that the federal regulations on which the plaintiff's claims were based could only be enforced by the Federal Government.  The Seventh Circuit rejected this argument saying:

> [T]he plaintiff claims breach of a well-recognized duty owed to her under state law – the duty of a manufacturer to use due care in manufacturing a medical device.  She may do so as long as she can show that she was harmed by a violation of applicable federal law. ***Her claim is not impliedly preempted by federal law.***

*Bausch,* 630 F.3d at 558 (emphasis added). This holding from *Bausch* is controlling in the present case.

District Courts in the Seventh Circuit have followed the precedent set in *Bausch* and declined to hold similar claims impliedly preempted. *E.g. Gravitt v. Mentor Worldwide, LLC,* 289 F. Supp. 3d 877, 891 (N.D. Ill. 2018) (claims that manufacturer of breast implant underreported tendency of implants to rupture were not impliedly preempted); *Garross v. Medtronic, Inc.,* 77 F.Supp.3d 809, 816 (E.D. Wis. 2015) (state law negligence, products liability and breach of warranty claims based on off-label promotion were not impliedly preempted); *Marvin v. Zydus Pharmaceuticals (USA) Inc.,* 203 F.Supp.3d 985 (W.D. Wis. 2016) (state law tort claims against

---

[15] On issues of federal law (such as preemption), this Court is bound by the Supreme Court's rulings and by Seventh Circuit opinions. *In re Korean Air Lines Disaster,* 829 F.2d 1171, 1176 (D.C. Cir. 1987) ("Binding precedent for all [federal courts] is set only by the Supreme Court, and for the district courts within a circuit, only by the court of appeals for that circuit.").  Thus, this Court is required to apply the Seventh Circuit's *Bausch* ruling to preemption issues.

pharmaceutical company based on alleged failures to warn are not impliedly preempted); *Tillman v. Smith & Nephew, Inc.,* 12 C 4977, 2013 WL 3776973, at *4 (N.D. Ill. July 18, 2013); *Elmore v. Smith & Nephew, Inc.,* 12 C 8347, 2013 WL 1707956, at *4 (N.D. Ill. Apr. 19, 2013); *In re Testosterone Replacement Therapy Products Liab. Litig. Coordinated Pretrial Proceedings,* 14 C 1748, 2017 WL 1836443, at *7 (N.D. Ill. May 8, 2017); *Laverty v. Smith & Nephew, Inc.,* 197 F. Supp. 3d 1026, 1035 (N.D. Ill. 2016)

 The Seventh Circuit's view that *Buckman* does not preempt a claim arising under state law is shared by the Fifth, Sixth and Ninth Circuits, has been recognized in dicta by the Third Circuit, and has been applied by numerous district courts. See *Hughes v. Boston Scientific Corp.*, 631 F.3d. 762, 775-776 (5th Cir. Jan. 21, 2011) (holding state law failure to warn claim was neither expressly nor impliedly preempted)); *Stengel v. Medtronic Inc,,* 2013 WL 106144 (9th Cir. Jan. 10, 2013)(en banc)(holding *Buckman* did not impliedly preempt stat law failure to warn claims predicated on alleged regulatory violations); *McClellan v. I–Flow Corp.,* 776 F.3d 1035, 1041 (9th Cir. 2015); *In re Orthopedic Bone Screw Products Liability Litigation,* 193 F.3d 781, 791 (3d Cir.1999) (affirming dismissal of state law negligence claims alleging conspiracy to violate the Federal Food, Drug, and Cosmetic Act but noting in dicta that some courts have allowed plaintiffs to use federal statutory violations to prove liability for separate state tort claim); *Eidson v. Medtronic, Inc.,* 40 F. Supp. 3d 1202, 1232 (N.D. Cal. 2014)(claims based on failure to report adverse events to the FDA are neither expressly nor impliedly preempted); *Ramirez v. Medtronic, Inc.,* 961 F.Supp.2d 977, 1002 (D.Ariz. 2013)(refusing to dismiss failure-to-warn claim based on defendants failure to report adverse events involving Infuse to FDA).

 While ignoring the controlling opinion in *Bausch*, Cook cites to a non-controlling opinion from the Sixth Circuit. The Sixth Circuit case, *Cupek v. Medtronic,* does not support a finding of

implied preemption in this case. First, the claims in *Cupek* are materially different from Plaintiffs'
claims in this case. 405 F.3d 421, 423-424, cert denied, 546 U.S. 935 (2005). In *Cupek,* the
plaintiffs did not allege that the manufacturer's conduct violated an independent state law duty;
instead, Cupek's theory appears to be that they were entitled to recover based on the
manufacturer's violation of federal requirements. Indeed, a subsequent decision out of the Sixth
Circuit, holding that a failure–to–warn claim escaped implied preemption because it was based on
an "independent state duty," reinforces the view that *Cupek* found claims preempted because they
were dependent on the MDA and not state law duties. *Fulgenzi v. PLIVA, Inc.,* 711 F.3d 578, 586–
87 (6th Cir. 2013)(failure to warn claim based on defendant's violation of federal duty to include
an updated warning in its labeling of drug not impliedly preempted because claim based on
traditional state tort law principles). Thus, while the claims in *Cupek* fit the narrow type that
*Buckman* forbids, even the Sixth Circuit precedent that the Cook Defendants cite supports the view
that *Cupek* is distinguishable from the state-law based claims Plaintiffs assert here.

Like the Seventh Circuit held in *Bausch,* Plaintiffs' claims here are not impliedly preempted
because they are based – not solely on violations of FDCA or MDA regulations – but on state
common-law duties of care that exist independently of the FDA regulations.[16] Indeed, the duties
to warn on which Plaintiffs' base their claims are so broadly recognized as to be reflected in the
Restatement of Torts. *See* Restatement (Second) of Torts § 388 (1995)(2018 Update)(requiring
one who supplies a product to "exercise reasonable care to inform them of its dangerous condition
or of the facts which make it likely to be dangerous."). That the Cook Defendants' conduct, which
violates state law, also violates FDA requirements is relevant only to demonstrate that Plaintiffs'

---

[16] Each of the states whose substantive laws are applicable to Plaintiff's claims recognize a duty on the part of
manufacturers to warn of dangers with the products they manufacture, see fn 5 above.

state-law claims parallel the federal requirements. Plaintiffs' causes of action, however, arise entirely under state law and exist independently of federal law.  As such, they are not impliedly preempted.

## VI.    DISCOVERY IS NEEDED PRIOR TO A SUBSTANTIVE PREEMPTION RULING.

Plaintiffs alleging state-law parallel claims based on conduct that violates the FDCA are often at a disadvantage.  That is because the information and agreements demonstrating violations are often confidential and available only to the defendant and the FDA.  The Seventh Circuit has recognized this information discrepancy and advised courts to "keep in mind that much of the product-specific information...needed to investigate [a medical device claim] fully is kept confidential by federal law." *Bausch*, 630 F.3d at 555.  In particular, the Seventh Circuit rejected the argument that plaintiffs must cite concrete, device specific federal requirements to survive a preemption challenge and held that formal discovery was necessary to allow the plaintiff to determine the specific bases for her claim.  *Id.*; *see also Burgos v. Satiety, Inc.,* 10-CV-2680 JG RLM, 2011 WL 1327684, at *4 (E.D.N.Y. Apr. 5, 2011)(allowing limited discovery to determine whether stomach stapling device comported with its IDE).   If the Cook Defendants' motion to dismiss is not denied outright, Plaintiffs request, and should be granted, the opportunity to conduct limited discovery prior to a ruling on Cook's preemption arguments.

## VII.    ALTERNATIVELY, PLAINTIFFS RESPECTFULLY REQUEST LEAVE TO AMEND.

A complaint must only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). There are no special pleading requirements for product liability claims in general, or for class III medical device claims. The federal standard of notice pleading applies as longs as the plaintiff alleges facts sufficient to meet the plausibility

standard applied in *Twombly. Bausch,* 630 F.3d at 558.  This simply requires pleading sufficient factual matter, accepted as true to "state a claim for relief that is plausible on its face. A claim is 'plausible on its face' when the plaintiff pleads factual content that allows the court to draw reasonable influence that the defendant is liable for the misconduct alleged." *Bell Atlantic Corp. v. Twombly,* 550 U.S.544, 556, 570127 S. Cr. 1955, 167 L.Ed.2d 959 (2007).

The Cook Defendants ask that Plaintiffs be required to plead that the injuries they sustained resulted not just from a defect in general, but from a defect caused by a violation of federal requirements in order to state a claim that is not preempted. In doing so, they ignore clear Seventh Circuit case law which conclusively states a plaintiff's pleading does not have to anticipate or circumvent affirmative defenses, *including* preemption.  Because "preemption is an affirmative defense, the complaint does not need to supply these additional allegations to confront this second layer of analysis." *Fisk,* 2017 WL 4247983.

Seventh Circuit precedent, which is binding on this Court, holds that plaintiffs do not have the burden at the pleading stage of establishing that a claim is not preempted. Plaintiffs are not required to "specify the precise defect or the specific federal regulatory requirements that were allegedly violated" in order to state a claim that avoids dismissal on preemption grounds at this stage. *Bausch,* 630 F.3d at 560-62. "It follows that a complaint need not trace the injury to such a violation in particular." *Fisk,* 2017 WL 4247983.

However, should this Court deem it appropriate, Plaintiffs respectfully request leave to amend to more fully plead non-preempted claims. [17]  Per Rule 15(a), "the court should freely give

---

[17] Should amended pleadings be required, Plaintiffs are prepared to allege a plethora of additional facts to sufficiently assert non-preempted claims in accordance with Seventh Circuit guidance on the applicable pleading standard. Plaintiffs attach a sample set of proposed allegations (as Exhibit 1) that they each intend to assert, among others, should this Court grant Plaintiffs leave to amend.

leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). While a court may deny a motion for leave to file an amended complaint, such denials are disfavored. *Bausch,* 630 F.3d at 562. In addition, Plaintiffs are also requesting discovery before any such substantive (and possibly, dispositive) preemption decision is made, which is also consistent with Seventh Circuit precedent.

## CONCLUSION

For a myriad of reasons, Cook Defendants' Motion should be denied. Not only would determination of this Motion require specific analysis of the various state laws at issue, something the Cook Defendants failed to do in their briefing, but Plaintiffs' claims are not expressly or impliedly preempted under well-established Supreme Court and Seventh Circuit case law. Alternatively, should this Court deem it necessary, Plaintiffs respectfully request leave to amend to more fully detail the facts supporting their non-preempted claims and request limited discovery in order to be able to do so.

Respectfully submitted,

**MATTHEWS & ASSOCIATES**

*/s/ David P. Matthews*
David P. Matthews (Texas Bar No.: 13206200)
dmatthews@thematthewslawfirm.com
Julie L. Rhoades (Texas Bar No. 16811710)
jrhoades@thematthewslawfirm.com
2509 Sackett St.
Houston, TX 77098
P: 713.522.5250
F: 713.535.7184

**FREESE & GOSS, PLLC**
Tim K. Goss (Texas Bar No. 08222660)
tim@freeseandgoss.com

Rich Freese (Pro Hac Vice to be filed)
rich@freeseandgoss.com
3500 Maple Ave., Ste. 1100
Dallas, TX  75219
P:  214.761.6610
F:  214.761.6688

**_Counsel for Plaintiffs_**

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2018, a copy of the foregoing was served electronically and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to the CM/ECF participants registered to receive service in this matter. Parties may access the filing through the Court's system.

_/s/ David P. Matthews_