# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC, IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates to Plaintiff(s)
_Herman Purvis_

Civil Case # __1:17-cv-2556__

**[PROPOSED] AMENDED SHORT FORM COMPLAINT**

COMES NOW the Plaintiff(s) named below, and for Complaint against the Defendants named below, incorporate The Master Complaint in MDL No. 2570 by reference (Document 213). Plaintiff(s) further show the court as follows:

1. Plaintiff/Deceased Party:

    _Herman Purvis_

2. Spousal Plaintiff/Deceased Party's spouse or other party making loss of consortium claim:

    _N/A_

3. Other Plaintiff and capacity (i.e., administrator, executor, guardian, conservator):

    _N/A_

4. Plaintiff's/Deceased Party's state of residence at the time of implant:

    _Maryland_

1

5. Plaintiff's/Deceased Party's state of residence at the time of injury:

    Maryland

6. Plaintiff's/Deceased Party's current state of residence:

    Maryland

7. District Court and Division in which venue would be proper absent direct filing:

    District of Maryland, Northern Division

8. Defendants (Check Defendants against whom Complaint is made):

    ☒ Cook Incorporated

    ☒ Cook Medical LLC

    ☒ William Cook Europe ApS

9. Basis of Jurisdiction:

    ☒ Diversity of Citizenship

    ☐ Other: _____

    a. Paragraphs in Master Complaint upon which venue and jurisdiction lie:

    Paragraphs 6-28

    b. Other allegations of jurisdiction and venue:

<u>N/A</u>

10. Defendants' Inferior Vena Cava Filter(s) about which Plaintiff(s) is making a claim (Check applicable Inferior Vena Cava Filters):

    - ☐ Günther Tulip® Vena Cava Filter
    - ☐ Cook Celect® Vena Cava Filter
    - ☐ Gunther Tulip Mreye
    - ☐ Cook Celect Platinum
    - X  Other: <u>Cook Bird's Nest Vena Cava Filter</u>
    - ☐

11. Date of Implantation as to each product:

    <u>8/17/1994</u>

12. Hospital(s) where Plaintiff was implanted (including City and State):

    <u>John Hopkin's Hospital, Baltimore, MD</u>

13. Implanting Physician(s):

    <u>Unknown at this time</u>

14. Counts in the Master Complaint brought by Plaintiff(s):

☒ Count I: Strict Products Liability – Failure to Warn

☒ Count II: Strict Products Liability – Design Defect

☒ Count III: Negligence

☒ Count IV: Negligence Per Se

☒ Count V: Breach of Express Warranty

☒ Count VI: Breach of Implied Warranty

☒ Count VII: Violations of Applicable <u>Maryland</u> (insert State) Law Prohibiting Consumer Fraud and Unfair and Deceptive Trade Practices

☐ Count VIII: Loss of Consortium

☐ Count IX: Wrongful Death

☐ Count X: Survival

☒ Count XI: Punitive Damages

☐ Other: _____ (please state the facts supporting this Count in the space, immediately below)

☐ Other: _____ (please state the facts supporting this Count in the space, immediately below)

<u>Please see attached Exhibit A for additional allegations supporting Plaintiff's claims</u> _____

_____

_____

4

15. Attorney for Plaintiff(s):

   A. Layne Stackhouse

16. Address and bar information for Attorney for Plaintiff(s):

   A. Layne Stackhouse (KY #94038), Shrader & Associates, L.L.P., 3900 Essex Lane, Suite 390, Houston, TX 77027

       Respectfully submitted,

       **SHRADER & ASSOCIATES, L.L.P.**

       */s/ A. Layne Stackhouse*
       A. Layne Stackhouse (KY# 94038)
       3900 Essex Lane, Suite 390
       Houston, TX 77027
       T: (713) 782-0000
       F: (713) 571-9605
       layne@shraderlaw.com

       *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on December 19 2018, a copy of the foregoing was served electronically and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to the CM/ECF participants registered to receive service in this matter. Parties may access the filing through the Court's system.

             */s/ A. Layne Stackhouse*

**Exhibit A**

Additional Factual Allegations Supporting Plaintiff's Claims:

1. The Bird's Nest Vena Cava Filter was approved through the Premarket Approval process. Premarket Approval ("PMA") is the FDA process of scientific and regulatory review to evaluate the safety and effectiveness of Class III medical devices based on the information available at the time. *See* 21 U.S.C. § 360(e); 21 C.F.R. § 814.3(e).

2. Under 21 C.F.R. § 814.20, a PMA and/or PMA Supplement application must provide:

   a. proposed indications for use;

   b. device description including the manufacturing process;

   c. any marketing history;

   d. summary of studies (including non-clinical laboratory studies, clinical investigation involving human subjects, and conclusions from the study that address benefit and risk considerations);

   e. each of the functional components or ingredients of the device;

   f. methods used in manufacturing the device, including compliance with current good manufacturing practices; and

   g. any other data or information relevant to an evaluation of the safety and effectiveness of the device known or that should reasonably be known to the manufacturer from any source, foreign or domestic, including information derived from investigations other than those proposed in the application and from commercial marketing experience.

3. The Bird's Nest filter PMA was granted on April 26, 1989.

4. IVC Filters, including the Bird's Nest filter, was subsequently down-classified from a Class III device to a Class II devices in 2000. *See* 65 Fed. Reg. 17, 144 (March 31, 2000).

5. On or about February 27, 2008, the Cook Defendants' were granted a § 510k supplement to their Bird's Nest filter. *See* https://www.accessdata.fda.gov/cdrh_docs/pdf7/K073528.pdf, for the Bird's Nest 510k Summary, granted on February 27, 2008.

6. The FDA's PMA was granted with several "conditions of approval" including, but not limited to, the following:

> a. Before making any change affecting the safety and effectiveness of the device, submit a PMA supplement for review and approval by FDA unless the change is of a type for which a "Special PMA Supplement-Changes Being Effected" is permitted under 21 CFR 814.39(d) or accordance with 21 CFR 814.39(e) that an alternate submission is permitted.
>
> b. Continued approval of this PMA is contingent upon the submission of postapproval reports required under 21 CFR 814.84 at intervals of 1 year from the date of approval of the original PMA....
>
> c. The postapproval report shall indicate the beginning and ending date of the period covered by the report and shall include the following information required by 21 CFR 814.84:
>> (1) Identification of changes described in 21 CFR 814.39(a) and changes required to be reported to FDA under 21 CFR 814.39(b).
>>
>> (2) Bibliography and summary of the following information not previously submitted as part of the PMA and that is known to or reasonably should be known to the applicant:
>>> (a) unpublished reports of data from any clinical investigations or nonclinical laboratory studies involving the device or related devices ("related" devices include devices which are the same or substantially similar to the applicant's device); and
>>>
>>> (b) reports in the scientific literature concerning the device.
>
> ...
> d. As provided by 21 CFR 814.82(a)(9), FDA has determined that in order to provide continued reasonable assurance of the safety and effectiveness of the device, the applicant shall submit <u>3 copies</u> of a written report identified as an "<u>Adverse Reaction Report</u>" or "<u>Device Defect Report</u>", as applicable, to the Food and Drug Administration, Center for Devices and Radiological Health, 8757 Georgia Avenue, Silver Spring, Maryland 20910 <u>within 10 days</u> after applicant receives or has knowledge of information concerning:
>> (1) A mixup of the devices or its labeling with another article.
>>
>> (2) Any adverse reaction, side effect, injury, toxicity, or sensitivity reaction that is attributable to the device and
>>> (a) has not been addressed by the device's labeling or
>>> (b) has been addressed by the device's labeling, but is occurring with unexpected severity or frequency.
>>
>> (3) Any significant chemical, physical or other change or deterioration in the device or any failure of the device to meet the specifications established in the approved PMA that <u>could not</u> cause or contribute to death or serious injury. but <u>are not</u>

correctable by adjustments or other maintenance procedures described in the approved labeling. The report shall include a discussion of the applicant's assessment of the change, deterioration or failure and any proposed or implemented corrective action by the applicant. When such events are correctable by adjustments or other maintenance procedures described in the approved labeling, all such events known to the applicant shall be included in the Annual Report described under "Postapproval Reports" above unless specified otherwise in the conditions of approval to this PMA. This postapproval report shall appropriately categorize these events and include the number of reported and otherwise known instances of each category during the reporting period. Additional information regarding the events discussed above shall be submitted by the applicant when determined by FDA to be necessary to provide continued reasonable assurance of the safety and effectiveness of the device for its intended use.

e. The Medical Device Reporting (MDR) Regulation became effective on December 13, 1984, and requires that all manufacturers and importers of medical devices, including in vitro diagnostic devices, report to the FDA whenever they receive or otherwise become aware of information that reasonably suggests that one of its marketed devices (1) may have caused or contributed to a death or serious injury or (2) has malfunctioned and that the device or any other device marketed by the manufacturer or importer would be likely to cause or contribute to a death or serious injury if the malfunction were to reoccur.

....

See PMA No. P850049, https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfPMA/pma.cfm?id=P850049.

7. In addition to the duties the Cook Defendants had regarding its Bird's Nest filters under the "Conditions for Approval" laid out in the PMA approval letter, Cook Defendants had a number of *continuing* responsibilities required under federal law regarding their filters. The FDA's initial approval of a device label amounts to a finding by the FDA that the label is adequate for purposes of gaining initial approval to market the device. It does not represent a finding by the FDA that the label can never be deemed inadequate after approval as new safety information from the real world experience with the device becomes available to the manufacturer. Sound reasons support these principles: there are products, such as the Bird's Nest filter, for which evidence of the device's defects comes to light only after the device is used in real patients.

8. After the Bird's Nest filter received pre-market approval, Defendants were at all times responsible for maintaining the labeling of the Bird's Nest filter in light of the most current risk information obtained from the real world clinical experience with the device. There is no federal requirement that a manufacturer maintain its original warning language in the face of new safety information. Nor does federal law give device manufacturers a right to market their device using the label originally approved by the FDA when new post-market information bearing on the safety of the device comes to light. To the contrary, the FDCA required Defendants not to sell a device that was accompanied by an inadequate warning or had a label that was false or misleading in any respect, 21 U.S.C. § 352(a), (f)(2), because such a deficient warning rendered the device "misbranded" under 21 U.S.C. § 331, as well as applicable state Food, Drug, and Cosmetic Laws <u>See</u> 2010 Maryland Code § 21, 201, <u>et seq.</u>

9. Defendants had the ability under federal law, and the duty under state and federal law, to directly warn healthcare providers and consumers by unilaterally updating the labeling of the Bird's Nest filter to reflect newly acquired safety information without advance approval by the FDA. 21 C.F.R. § 814.39(d) and CPMA Order, Conditions of Approval. The options available to Defendants included:

> a. labeling changes that add or strengthen a contraindication, warning, precaution, or information about an adverse reaction for which there is reasonable evidence of a causal association;
>
> b. labeling changes that add or strengthen an instruction that is intended to enhance the safe use of the device;
>
> c. labeling changes that ensure it is not misleading, false, or contains unsupported indications; and
>
> d. changes in quality controls or manufacturing process that add a new specification or test method, or otherwise provide additional assurance of purity, identity, strength, or reliability of the device.

10. Defendants breached their duties under federal law and state law, including <u>Maryland</u> law, to maintain labeling that: (a) added warnings about the adverse reactions alleged herein for which there was reasonable evidence of a causal association; (b) added instructions for use that would enhance the safe use of the device; and (c) added descriptions of adverse events to ensure that the labeling was not false or misleading.

11. Defendants post-approval obligations under federal law also included duties to:

> a. report to the FDA information suggesting that one of the Manufacturer's devices may have caused or contributed to a death or serious injury, or has malfunctioned and would be likely to cause death or serious injury if the malfunction were to recur, and conduct an investigation of each event and evaluate the cause of the event, 21 C.F.R. §§ 803.50, et seq.;
>
> b. monitor the product after pre-market approval and discover and report to the FDA any complaints about the product's performance and any adverse health consequences of which it became aware and that are or may be attributable to the product, 21 C.F.R. §§ 814, et seq.;
>
> c. submit a PMA Supplement for any change in Manufacturing Site, 21 C.F.R. §§ 814.39, et seq.;
>
> d. establish and maintain quality system requirements to ensure that quality requirements are met, 21 C.F.R. § 820.20, et seq.;
>
> e. establish and maintain procedures for validating the device design, including testing of production units under actual or simulated use conditions, creation of a risk plan, and conducting risk analyses, 21 C.F.R. §§ 820.30, et seq.;
>
> f. document all Corrective Action and Preventative Actions taken by the Manufacturer to address non-conformance and other internal quality control issues, 21 C.F.R. §§ 820.100, et seq.;
>
> g. establish internal procedures for reviewing complaints and event reports, 21 C.F.R. § 820.198 and §§ 820.100, et seq.;
>
> h. establish Quality Management System ("QMS") procedures to assess potential causes of non-conforming products and other quality problems, 21 C.F.R. §§ 820.70, et seq. and 21 C.F.R. §§ 820.90, et seq.;
>
> i. report on Post Approval Studies in a timely fashion, 21 C.F.R. §§ 814.80, et seq.; and

    j. advertise the device accurately and truthfully, 21 C.F.R. §§ 801, et seq.

11. Among other necessary federal requirements, a device is misbranded if, *inter alia*, (a) "its labeling is false or misleading in any particular;" (f) "unless its labeling bears (a) adequate directions for use; and (2) such adequate warnings against use ... where its use may be dangerous to health ... as are necessary for the protection of users;" (j) "if it is dangerous to health when used in the ... manner ... prescribed, recommended, or suggested in the labeling thereof;" or (q) "its advertising is false or misleading in any particular." 21 U.S.C. §352(a), (f), (j), (q).

12. Had Defendants fulfilled these obligations in a timely fashion, which federal and state law required them to do, Plaintiffs' injuries would not have occurred. Defendants failed to do so.

13. The claims in this case concern Defendants' duties that arose after premarket approval of Bird's Nest filter, when Defendants learned of new information bearing on the safety of its device. Defendants breached these duties to take reasonable steps to prevent foreseeable and intended risks, including to the Plaintiffs.

14. Under state law, including <u>Maryland</u> law, Defendants had a duty to exercise reasonable care in adequately warning Plaintiffs and/or Plaintiffs' physicians about the dangers of the Bird's Nest filter that were known or knowable to Defendants at the time of distribution. Under both federal and state law, Defendants also have a post-market duty to monitor and report adverse events and risks associated with the device.

15. Despite having knowledge and possession of evidence that showed the use of the Bird's Nest filter was dangerous and likely to place users' health at serious risk, Defendants failed to disclose and warn of the health hazards and risks associated with the Bird's Nest filter. Instead, Defendants marketed, advertised, and promoted the Bird's Nest filter while failing to monitor, warn, or

otherwise ensure the safety and efficacy of its users in violation of state law, including Maryland law, and FDA regulations.

16. The FDCA requires medical device manufacturers like Defendants to maintain and submit information as required by FDA regulation, 21 U.S.C. § 360i, including submitting Adverse Reaction Reports, 21 C.F.R. § 803.50, and establishing internal procedures for reviewing complaints and event reports, 21 C.F.R. § 820.198(a). Specifically, 21 C.F.R. § 803.50 requires a manufacturer to report information no later than 30 days after it is received, from any source, if that information suggests that the device may have contributed to a serious injury or has malfunctioned and the malfunction would be likely to contribute to a serious injury if it were to recur.

17. The FDA publishes the adverse events and MDRs in a public, searchable database called MAUDE and updates the report monthly with "all reports received prior to the update." The general public, including physicians and patients, may use the MAUDE database to obtain safety data on medical devices. *See* http://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfMAUDE/search.cfm.

18. Defendants had a duty under state law, including Maryland law, to exercise reasonable care in warning Plaintiffs and/or Plaintiffs' physicians about the dangers of the Bird's Nest filter that were known or knowable to Defendants at the time of distribution. Defendants also had an obligation and the ability under federal regulations to maintain labeling that provided adequate warnings about risks and instructions for use; to conduct prompt, accurate and thorough post-market surveillance; to take action to ensure that the device can be used safely in accordance with the instructions; and to ensure that any labeling, warranties, or representations Defendants made were

not false or misleading in any respect. Defendants' conduct here failed to meet these federal obligations and violated state law, including <u>Maryland</u> law.

19. Furthermore, Defendants made voluntary affirmative statements and material omissions in promoting, marketing, selling, and/or otherwise in advertising its Bird's Nest filters. Defendants expressly and impliedly warranted its Bird's Nest filters in a false and misleading manner, as the devices did not conform to the Bird's Nest labeling, or to the voluntary, affirmative promises of safety and effectiveness that Defendants made in promoting these devices to Plaintiffs, Plaintiffs' physicians, and to the public and medical community at large.

20. Defendants violated both their federal and "parallel" state law duties to warn, to not affirmatively misrepresent the safety and effectiveness of their Bird's Nest filter cases, and to timely report adverse events to third parties like the FDA regarding reports related to Bird's Nest filters.

21. Defendants violated both their federal and "parallel" state law duties to *not* misbrand their products and to *not* manufacture or sell misbranded devices. The Bird's Nest filters were, in fact, "misbranded" pursuant to 21 U.S.C. §352(a), (f), (j), (q), and applicable state law equivalents, including the state law duty requiring manufacturers to adequately warn about the dangers of their products, at the time they were sold to Plaintiffs and implanted in Plaintiffs' bodies. Therefore, Defendants were in violation of both state and federal law.

22. Defendants also violated both their federal and "parallel" state law duties to timely and adequately report adverse events to the FDA—which was specifically required under their Bird's Nest filter PMA "Conditions for Approval", among other federal requirements. Defendants, in fact, did fail to report adverse events to the FDA. Had they had complied with these duties, Plaintiffs and/or Plaintiffs' physicians would not have chosen the Bird's Nest filter.

23. Defendants likewise breach their express and implied warranties existing independently from federal law under applicable state law, in that the Bird's Nest devices did not conform to the promises of safety and effectiveness voluntarily made by Defendants in advertising and otherwise promoting their Bird's Nest filter products to consumers, doctors, and the public and medical community at large.

24. State law, as well as federal law Defendants were required to follow, mandates that any warranty statements must be truthful, accurate, and not be misleading. However, Defendants made warranty statements regarding their Bird's Nest filters that were misleading, were not truthful and were not accurate with respect to the safety and effectiveness of the filters.

25. Similarly, Defendants engaged in a serious of deceptive and unfair trade practices, misleading Plaintiffs, their physicians, the public and the medical community at large and in violation of state consumer protection statutes.

26. Plaintiffs and their physicians relied upon Defendants' misrepresentations, omissions, and affirmative falsehoods regarding their Bird's Nest filters in deciding to have the Bird's Nest filters placed. Had Defendants not engaged in a pattern of negligent and intentional conduct alleged herein, Plaintiffs and/or their physicians would not have chosen to place the Bird's Nest filters in Plaintiffs. Therefore, Defendants' illegal and negligent conduct was the proximate cause of Plaintiffs' injuries alleged herein.