IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates to:

*Brand v. Cook Medical, Inc. et al.,*
Case No. 1:14-cv-6018-RLY-TAB

---

**PLAINTIFF'S RESPONSE TO COOK DEFENDANTS' SUPPLEMENTAL SUBMISSION IN LIGHT OF SUMMARY JUDGMENT ON FAILURE TO WARN CLAIMS**

## TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS ............................................................................................................ i

TABLE OF AUTHORITIES................................................................................................ ii

INTRODUCTION ............................................................................................................1

ARGUMENT AND AUTHORITIES ............................................................................................2

    A.  In General, Under Georgia Law, Evidence Relevant to Failure to Warn Is Also Relevant to Design Defect.....................................................................................................2

    B.  Because Cook Pleads the Restatement Comment k Affirmative Defense, All Evidence Relating to Warnings Is Relevant to Design Defect...........................................................7

    C.  In General, Under Georgia Law, Evidence of Failure to Warn Is Also Relevant to Liability for Punitive Damages. ...................................................................................8

    D.  The Court's Grant of Summary Judgment on Failure to Warn Provides No Basis for the Court to Grant Any of Cook's Previously Decided and Renewed Motions in Limine.....10

        Cook MIL 2.........................................................................................................11

        Cook MIL 3.........................................................................................................12

        Cook MIL 4.........................................................................................................12

        Cook MIL 8.........................................................................................................14

        Cook MIL 10.......................................................................................................14

        Cook MIL 20.......................................................................................................14

        Cook MIL 24.......................................................................................................15

        Cook MIL 29.......................................................................................................15

        Cook MIL 30.......................................................................................................16

    E.  The Court's Grant of Summary Judgment on Failure to Warn Provides No Basis for the Court to Grant Any of Cook's New Motions in Limine..................................................16

        Cook MIL 36.......................................................................................................16

        Cook MIL 37.......................................................................................................17

        Cook MIL 38.......................................................................................................17

        Cook MIL 39.......................................................................................................18

    F.  The Court's Orders Have Mooted Cook's Vague Request to Exclude Warning-Related Opinions of Drs. Gordon and Krumholz, Which Request the Court Would Have Denied in Any Case. ..........................................................................................................18

CONCLUSION...............................................................................................................19

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Banks v. ICI Ams., Inc.*
    264 Ga. 732 (1994)..................................................................................*passim*

*Bartlett v. Mut. Pharmaceutical Co., Inc.*,
    760 F. Supp. 2d 220 (D.N.H. 2011), rev'd on other grounds, 133 S. Ct. 2466
    (2013) ...............................................................................................5, 6, 8

*Booker v. C.R. Bard, Inc.*,
    2018 WL 1109554 (D. Ariz. Mar. 1, 2018)..........................................................11

*Booker v. Johnson & Johnson*,
    54 F. Supp. 3d 868 (N.D. Ohio 2014) ..............................................................6-7

*Bryant v. Hoffman-La Roche, Inc.*,
    585 S.E.2d 723 (Ga. Ct. App. 2003) .........................................................3, 4, 7, 8

*Carballo-Rodriguez v. Clark Equip. Co., Inc.*,
    147 F. Supp. 2d 66 (D.P.R. 2001)..................................................................13

*Cason v. C.R. Bard, Inc.*,
    2015 WL 9913809 (N.D. Ga. Feb. 9, 2015) ........................................................9

*Chrysler Corp. v. Batten*,
    264 Ga. 723 (1994)...................................................................................2

*Cicchillo v. A Best Prods. Co.*,
    2002 WL 42963 (Ohio Ct. App. Jan. 10, 2002)...............................................16, 17

*Cisson v. C.R. Bard, Inc.*,
    2013 WL 5700513 (S.D. W. Va. Oct. 18, 2013) ............................................8, 15

*Cunningham v. Smithkline Beecham*,
    255 R.R.D. 474, 479 (N.D. Ind. 2009) .............................................................9

*Ford Motor Co. v. Ammerman*,
    705 N.E.2d 539 (Ind. App. 1999)...................................................................9

*In re C.R. Bard, Inc.*,
    810 F.3d 913 (4th Cir. 2016) ........................................................................6

*In re Cook Med., Inc., IVC Filter Marketing, Sales Practices & Prod. Liab. Litig.*,
    2016 WL 22854169 (S.D. Ind. May 12, 2016) ....................................................11

*In re Ethicon, Inc.*,
    2014 WL 457554 (S.D. W. Va. Feb. 3, 2014) ..................................................6, 7

**Cases**                                                                                      **Page(s)**

*In re Fosamex Prods. Liab. Litig.,*
   924 F. Supp. 2d 477 (S.D.N.Y. 2013) .................................................................4

*In re Tylenol (Acetaminophen) Marketing, sales & Prod. Liab. Litig.,* 181 F.
   Supp. 3d 278, 289-90(E.D. Pa.2016) .........................................................11

*In re Yasmin and Yaz Marketing, Sales Practices and PMF Prods. Liab. Litig.,*
   2011 WL 6740391 (S.D. Ill. Dec. 22, 2011) ...............................................9, 11

*Jones v. Bard,*
   2018 WL 1256768 .........................................................................................9

*Jones v. C.R. Bard, Inc.,*
   2008 WL 1256768 (D. Ariz. Mar. 12, 2018) ...............................................8

*Kramer v. Ford Motor Co.,*
   2016 WL 827746 (D. Minn. Feb. 29, 2016) ...............................................13

*Sapp v. Morrison Bros. Co.,*
   295 S.W.3d 470 (Mo. Ct. App. 2009) ........................................................4

*Schmidt v. Duo-Fast Corp.,*
   1995 WL 648471 (E.D. Pa. Oct. 30, 1995) ................................................13

*Spangler v. Sears, Roebuck & Co.,*
   752 F. Supp. 1437 (S.D. Ind. 1990) ...........................................................9

*Trickett v. Adv. Neuromodulation Sys., Inc.,*
   542 F. Supp. 2d 1338 (S.D. Ga. 2008) .......................................................7

*Urena v. Biro Mfg. Co.,*
   114 F.3d 359 (2d Cir. 1997) .......................................................................4

*Weilbrenner v. Teva Pharmaceuticals USA, Inc.,*
   696 F. Supp. 2d 1329 (M.D. Ga. 2010) ......................................................8-9

*Whalen v. CSX Transp., Inc.,*
   2017 WL 4075200 (S.D.N.Y. Sept. 13, 2017)............................................4

*Woods v. A.R.E. Accessories, LLC,*
   2018 WL 2354925 (Ga. App. May 24, 2018)..............................................2

**Statutes**

Ga. Code Ann. § 51-12-5.1(b) .........................................................................8

**Page(s)**

**Regulations**

21 C.F.R. § 801.4 ................................................................................................ 14

**Other Authorities**

Georgia Suggested Pattern Jury Instructions, Vol. 1: Civil Cases, 5th ed. § 62.660 .................. 3, 6

Restatement (Second) of Torts § 402A, comment k ................................................. 7,8

## INTRODUCTION

Cook claims that, *ipso facto*, because the Court granted summary judgment on the *causation* element of Mrs. Brand's failure to warn claims, it should severely limit the evidence it admits at trial, grant numerous of Cook's motions in limine and exclude numerous undefined opinions of Mrs. Brand's experts. Cook Defendants' Supplemental Submission in Light of Summary Judgment on Failure to Warn Claims (Dkt. 9728) ("Submission").[1] Cook reasons that since the evidence and opinions it seeks to exclude are supposedly relevant only to Mrs. Brand's failure to warn claims, they cannot possibly remain admissible. However, its fundamental premise that the evidence and opinions in issue are relevant only to Mrs. Brand's failure to warn claims is wrong, requiring rejection by the Court of the relief Cook requests.

The Court only granted summary judgment on causation. Dkt. 9696. It did not hold that Cook had no pre-sale and post-sale duties to warn. *Id.* In fact, it recognized that Cook had such duties. *Id.* at 4-7. And, it did not hold that Mrs. Brand failed to present genuine issues of material fact as to Cook's breaches of those duties. *Id.* So, to the extent that Georgia law makes evidence and opinions of Cook's breaches of those duties relevant to Mrs. Brand's design defect claims and to her entitlement to punitive damages, such evidence and opinions remain admissible. Crucially, Georgia law does exactly that, both generally and as to the specific evidence and opinions that Cook seeks to exclude. Indeed, Cook pleads an affirmative defense to design defect that requires it to prove that the Celect "was accompanied with *proper* instructions and *warnings*," which indisputably makes relevant evidence regarding Cook's inadequate warnings.

---

[1] Cook devotes much of its trial brief to the same meritless argument about the supposedly narrow scope of evidence that will be relevant and admissible at trial. Dkt. 9768 at 1-7.

**ARGUMENT AND AUTHORITIES**

Georgia law makes evidence of Cook's inadequate warnings and failures to adequately communicate its warnings relevant and admissible as to both Mrs. Brand's design defect claims and her entitlement to punitive damages. Such evidence is relevant to her design defect claims because: (1) the Georgia Supreme Court has specifically stated that the "efficacy of warnings" is a relevant factor for the jury to consider under Georgia's risk-utility test for design defect claims; and (2) Cook has pled an affirmative defense to Mrs. Brand's design defect claims that necessarily puts the adequacy of its warnings in issue. And, such evidence is relevant to Ms. Brand's entitlement to punitive damages, because Georgia law provides that the necessary willful misconduct, wantonness or entire want of care showing conscious indifference to consequences can be demonstrated by proving that a manufacturer knew of the existence of a design defect in its product and the unreasonable danger posed by that defect but took no action to fix the problem by modifying the product or warning about the danger.

**A.    In General, Under Georgia Law, Evidence Relevant to Failure to Warn Is Also Relevant to Design Defect.**

Both sides agree that Cook had to design the Celect so that it was "reasonably safe for intended or foreseeable uses." *Woods v. A.R.E. Accessories, LLC*, 2018 WL 2354925, at *2 (Ga. App. May 24, 2018) (quoting *Chrysler Corp. v. Batten*, 264 Ga. 723, 724 (1994)) ("A manufacturer has a duty to exercise reasonable care in the manufacture and design of its products 'so as to make products that are reasonably safe for intended or foreseeable uses.'"). Both sides agree that the Celect's intended and foreseeable use was placement in patients with a high risk of developing blood clots in the legs (DVT) to prevent Pulmonary Embolism (PE) by catching such clots.

Both sides also agree that Georgia adopted a risk-utility balancing test for design defect claims like Mrs. Brand's in *Banks v. ICI Ams., Inc.* 264 Ga. 732 (1994). This test incorporates

negligence principles and the "concept of 'reasonableness,' i.e., whether the manufacturer acted reasonably in choosing a particular product design[.]" *Id.* at 734. The manufacturer's reasonableness is decided by the jury balancing the risks of the product's design against its utility utilizing multiple non-exhaustive factors, not all of which need to be present to determine a product defective.[2] *Id.* at 736. While relevant, "a manufacturer's proof of compliance with industry-wide practices, state of the art, or federal regulations does not eliminate conclusively its liability for its design of allegedly defective products." *Id.* at 736 fn. 6.

Significantly, both *Banks* and the relevant Georgia Suggested Pattern Jury Charge Instruction list as one of the factors relevant to the risk-utility test "the avoidability of the danger, considering the user's knowledge of the product, publicity surrounding the danger, *the effectiveness of warnings*, and common knowledge or the expectation of danger." *Id.* (emphasis added); Georgia Suggested Pattern Jury Instructions, Vol. 1: Civil Cases, 5th ed. § 62.660. (Strict Liability; Design Defect; Risk-Utility Test and Factors) (emphasis added). Because the Georgia Supreme Court made the "*effectiveness of [Cook's] warnings*" one of the factors a jury must consider in deciding whether the Celect had a design defect, evidence that would have been relevant to her failure to warn claims is equally relevant to her design defect claims.

For example, in *Bryant v. Hoffman-La Roche, Inc.*, a prescription drug case, the Georgia Court of Appeals held that expert testimony regarding the inadequacy of the warnings contained in the drug's package insert constituted part of the evidence which raised a genuine issue of material fact as to the plaintiff's design defect claim. 585 S.E.2d 723, 730 (Ga. Ct. App. 2003).

---

[2] These factors include: "the usefulness of the product; the gravity and severity of the danger posed by the design; the likelihood of that danger; *the avoidability of the danger, i.e., the user's knowledge of the product, publicity surrounding the danger, or the efficacy of warnings*, as well as common knowledge and the expectation of danger; the user's ability to avoid danger; the state of the art at the time the product is manufactured; the ability to eliminate danger without impairing the usefulness of the product or making it too expensive; and the feasibility of spreading the loss in the setting of the product's price or by purchasing insurance." *Id.* at 736 fn. 6 (emphasis added).

The court found the same evidence raised a fact issue as to the plaintiff's failure to warn claims. *Id.* So, the court found evidence of the defendant's inadequate warnings relevant and admissible to both the plaintiff's failure to warn and design defect claims.

Other courts agree. *See Sapp v. Morrison Bros. Co.*, 295 S.W.3d 470, 483 (Mo. Ct. App. 2009) (holding evidence of communications concerning product risks and necessary responsive actions (i.e., warnings) relevant to failure to warn, design defect and punitive damages claims). Indeed, several courts have held not only that evidence of the inadequacy of the defendant's warning or of the failure of the defendant to adequately communicate its warning is relevant to both failure to warn and design defect claims, but that proof that an additional or different warning could have been added to the product can, by itself, constitute sufficient evidence of a reasonable and feasible alternative design. *Urena v. Biro Mfg. Co.*, 114 F.3d 359, 365 (2d Cir. 1997) ("Urena has met that burden…of showing that an alternative design was feasible and safer" by providing "testimony that Biro could have added a sticker or other warning to the machine…."); *Whalen v. CSX Transp., Inc.*, 2017 WL 4075200, at \*6 (S.D.N.Y. Sept. 13, 2017) (holding evidence that written warnings could have been stored in a plastic sleeve attached to the chair constituted proof of a reasonable alternative design and noting that "[c]ourts applying New York law have held that additional or different warnings or instructions may constitute a reasonable alternative design."); *In re Fosamex Prods. Liab. Litig.*, 924 F. Supp. 2d 477, 485 (S.D.N.Y. 2013) (holding that proof that a different label could have been added to the outside of the prescription drug's label raised a genuine issue of material fact as to the existence of a feasible alternative design in a learned intermediary state).

Cook may argue in response that if a court has dismissed or granted judgment on a plaintiff's failure to warn claim that the "*effectiveness of warnings*" factor is somehow no longer

4

part of the risk-utility test for design defect claims because that was "subsumed" within the failure

to warn claims. Besides making no logical sense, that argument is incompatible with the Georgia

Supreme Court's adoption in *Banks* of the risk-utility test and its articulation therein of the

"*effectiveness of warnings*" as a relevant factor in that risk-utility test given that the Court

dismissed the plaintiff's failure to warn claims in that case based on federal preemption. 264 Ga.

at 737 (emphasis added).

Specifically, despite dismissing the failure to warn claims, the Georgia Supreme Court said

that "for the benefit of bench and bar [including, of course, the court of appeals on remand] we

have set forth in the accompanying footnote a non-exhaustive list of general factors [to use in risk-

benefit analysis]," which factors included "*effectiveness of warnings*." *Id.* at 736. Surely, after

having dismissed the failure to warn claims, the Georgia Supreme Court would have instructed the

court of appeals on remand (and the general bench and bar) that because of that dismissal, the

"*effectiveness of warnings*" factor would not apply in that case if that is what it intended. It did no

such thing, demonstrating that the "*effectiveness of warnings*' factor must be considered in

connection with design defect claims regardless of whether the plaintiff also be allowed to present

failure to warn claims.

A decision by the District Court of New Hampshire pursuant to New Hampshire's virtually

identical risk-utility test further confirms this reasoning. *Bartlett v. Mut. Pharmaceutical Co., Inc.*,

760 F. Supp. 2d 220, 230-31 & 243 (D.N.H. 2011), rev'd on other grounds, 133 S. Ct. 2466 (2013)

(holding federal law preempted the design defect claims). After granting summary judgment

against the plaintiff on her failure to warn claims based on lack of causation because the doctor

admittedly never read the drug's warning[3] (760 F. Supp. 2d at 229), the court held that "warning-

---

[3] New Hampshire obviously having adopted the learned intermediary rule.

related evidence" could be admitted in connection with the plaintiff's design defect claims based on the "efficacy of warning" factor of the risk-utility test. *Id.* at 230-31. The factual parallel to this case is obvious.

Cook may cite *In re Ethicon, Inc.*, 2014 WL 457554, at *4-6 (S.D. W. Va. Feb. 3, 2014) as a contrary authority, but the Court should not find persuasive either of that court's reasons for excluding warning-related evidence in connection with Texas-law design defect claims. First, because the Texas factor referred to "the *user's* anticipated awareness" including based on "the existence of suitable warnings," the court found that allowing evidence of inadequate warnings would circumvent the learned intermediary rule. *Id.* at *4 (emphasis added). In other words, the court held that the term "user" in the Texas version of the factor only referred to the patient and not to the doctor. *Id.* When the plaintiff argued that "user" referred in this context to the doctor and cited an older Texas case in support, the court rejected the argument not because the argument had no merit, but rather only because the cited Texas decision pre-dated the adoption of the risk-utility test in Texas. *Id.*

This reason makes no logical sense and is incompatible with well-established Georgia law. Initially, for purposes of products and their warnings, the "user" necessarily refers to whoever the law deems to be the "user," and the learned intermediary rule makes the doctor the "user" of prescription drugs and medical devices and their warnings. Further, in *Banks,* the Georgia Supreme Court did not indicate different factors would apply in such cases,[4] and multiple Georgia-law cases have applied the *Banks* factors without modification to prescription drug and medical device cases despite Georgia following the learned intermediary rule. *See, e.g., In re C.R. Bard, Inc.*, 810 F.3d 913, 920 (4th Cir. 2016) (medical device); *Booker v. Johnson & Johnson*, 54 F. Supp. 3d 868, 873

---

[4] Nor does Georgia Suggested Pattern Jury Instructions, Vol. 1: Civil Cases, 5th ed. § 62.660. (Strict Liability; Design Defect; Risk-Utility Test and Factors) differentiate between drug and medical device cases and other cases.

N.D. Ohio 2014) (medical device); *Trickett v. Adv. Neuromodulation Sys., Inc.*, 542 F. Supp. 2d 1338, 1347 (S.D. Ga. 2008) (medical device); *Bryant*, 585 S.E.2d at 730 (drug).

Second, citing to Texas cases, the *Ethicon* court found that the *"effectiveness of warnings"* factor applies only where the warning addresses a safer method or manner of using the product and not where the warning serves only to warn a physician of risks that might cause the physician to choose an alternative treatment. 2014 WL 457544, at *5. This reason is likewise incompatible with Georgia law. *Banks* references the *"effectiveness of warnings"* as part of the larger "avoidability of danger" factor, and one way of avoiding the danger of a product is using an alternative product. Further, as just discussed, Georgia courts have applied *Banks* unmodified in medical device and drug cases where the effect of the warning would be to cause the doctor to choose an alternative treatment rather than make use of the device or drug safer.

Finally, the Court may ask what type of evidence is relevant to the *"effectiveness of warnings."* The answer is exactly the same type of evidence that would be relevant to failure to warn claims: evidence that the warnings were inadequate or were not properly communicated. *Bryant*, 585 S.E.2d at 730.

**B.    Because Cook Pleads the Restatement Comment k Affirmative Defense, All Evidence Relating to Warnings Is Relevant to Design Defect.**

In paragraph 35 of the "Cook Defendants' Further Answers" section of its Amended Answer of Cook Defendants' to Plaintiffs' Master Consolidated Complaint for Individual Claims (Dkt. 8180) ("Answer"), Cook pleads "Plaintiffs' Claims are barred because the IVC filter at issue is an unavoidably unsafe product, Cook Defendants properly prepared the filter, and the filter was *"accompanied with proper instructions and warnings."* Answer at 22 (emphasis added). This defense comes from the Restatement (Second) of Torts § 402A, comment k. *Bryant*, 585 S.E.2d at 726.

7

Georgia treats this defense as an affirmative defense to design defect (and not to failure to warn) as to which the defendant has the burden to prove all of its elements, including that the product contains adequate warnings. *Id.* at 728. Accordingly, despite obtaining summary judgment on Ms. Brand's failure to warn claims, by pleading this affirmative defense, Cook has placed the adequacy of its warnings for the Celect into issue, making all warning-related evidence relevant and admissible as to Mrs. Brand's design defect claims. *Bartlett,* 760 F. Supp. 2d at 243 (holding that the defendant's pleading of the Comment k affirmative defense made evidence of the warning's inadequacy undisputedly relevant and admissible).

## C.    In General, Under Georgia Law, Evidence of Failure to Warn Is Also Relevant to Liability for Punitive Damages.

"Under Georgia law, punitive damages may be awarded only where the defendant's actions 'showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care that would raise the presumption of conscious indifference to consequences.' Ga. Code Ann. § 51-12-5.1(b)." *Jones v. C.R. Bard, Inc.*, 2008 WL 1256768, at * 9 (D. Ariz. Mar. 12, 2018). Pursuant to this standard, "[n]umerous Georgia cases have held that punitive damages are available where a manufacturer knows that its product is potentially dangerous and chooses to do *nothing* to make it safer or to warn consumers." *Cisson v. C.R. Bard, Inc.*, 2013 WL 5700513, at *13 (S.D. W. Va. Oct. 18, 2013) (citations omitted).   Doing nothing means neither modifying the product to eliminate the defect nor warning about the dangers posed by the defect.

So, in *Cisson*, the court held that just evidence that Bard knew of the potential dangers of making the pelvic mesh out of polypropylene and conducted no tests on its safety required denial of summary judgment on punitive damages under Georgia law. *Id.*, at *13-14. And, in *Weilbrenner*, the court held that evidence that Teva knew of the risks of the minocycline causing pseudotumor cerebri in adolescent females but did not warn about it required denial of summary

8

judgment on punitive damages under Georgia law. 696 F. Supp. 2d 1329, 1344 M.D. Ga. 2010). And, notably, two courts rejected summary judgment on punitive damages under Georgia law where plaintiffs injured by IVC filters put on evidence that the filters were failing at higher rates than competitor filters and/or another filter made by the same manufacturer and failed to correct the problem or warn about it in the IFU or elsewhere. *Jones v. C.R. Bard, Inc.,* 2018 WL 1256768, at *9-10; *Cason v. C.R. Bard, Inc.,* 2015 WL 9913809, at *6 (N.D. Ga. Feb. 9, 2015).

Indiana law similarly allows for the imposition of punitive damages where a manufacturer knew the dangers of its product and sold the product without fixing it or warning of its danger. *See Cunningham v. Smithkline Beecham,* 255 R.R.D. 474, 479 (N.D. Ind. 2009); *Spangler v. Sears, Roebuck & Co.*, 752 F. Supp. 1437, 1444-48 (S.D. Ind. 1990); *Ford Motor Co. v. Ammerman*, 705 N.E.2d 539, 555-557 (Ind. App. 1999).

The fact that this Court granted summary judgment on the causation element of Mrs. Brand's failure to warn claims in no way lessens the relevance of Cook's knowing refusal to warn about or fix a known design defect to Cook's liability for punitive damages. Punitive damages should be awarded against Cook for such conduct not because its failure to warn Mrs. Brand's doctor injured her, but because its conduct in knowingly exposing Mrs. Brand and thousands of other patients to a product defective in part because of the lack of an effective warning deserves punishment. Significantly, awarding punitive damages based on "general misconduct that applies to others as well [as the plaintiff], such as failure to properly warn…does not violate any of [Cook's] due process claims or other constitutional claims…." *In re Yasmin and Yaz Marketing, Sales Practices and PMF Prods. Liab. Litig. ('Yaz Litig."),* 2011 WL 6740391, at *3 (S.D. Ill. Dec. 22, 2011).

Finally, the analysis above demonstrates the complete impracticability of Cook's request to bifurcate the trial between its liability for compensatory damages and its liability for punitive damages. The evidence relevant to both is exactly the same: evidence of the existence of a design defect in the Celect, Cook's knowledge of the defect, Cook's refusal to fix the defect, and its refusal to warn of the defect.

**D.    The Court's Grant of Summary Judgment on Failure to Warn Provides No Basis for the Court to Grant Any of Cook's Previously Decided and Renewed Motions in Limine.**

In its Submission at pages 3-4, Cook takes one sentence each from Mrs. Brand's responses to seven of its nine previously decided and renewed motions in limine and falsely infers based on that one sentence that Mrs. Brand argues that the subject of the motion in limine is relevant only to her failure to warn claims. As to two of those nine MIL responses, Cook merely claims in a parenthetical that "failure to warn is only argument." *Id.* at 4. As to eight of those nine MILs, Mrs. Brand actually argues in her responses that the subject of the motion in limine is also relevant to her design defect claims and/or her entitlement to punitive damages. *See* Plaintiffs' Responses to the Cook Defendants' Omnibus Motions *in Limine* (Previously Decided and Renewed) and Authority in Support (Dkt. 9261) Nos. 2, 3, 4, 8, 10, 20, 24, 29 & 30. Furthermore, as set forth above, and regardless of what she argued in Dkt. 9261, all evidence that would have been relevant to Mrs. Brand's failure to warn claims is also relevant to her design defect claims and her entitlement to punitive damages from Cook.

Cook's one-sentence arguments constitute unfair gamesmanship. At best, they hope the Court will reflexively agree without serious consideration of each MIL. More likely, they know their arguments will not change the Court's rulings, but they force Mrs. Brand's attorneys to spend considerable time and effort preparing thoughtful responses to their one sentence arguments less than 30 days before trial, interrupting counsel's trial preparation. Furthermore, they are made in

10

bad faith, because they either infer or directly state that Mrs. Brand argued the subject matters are relevant only to failure to warn when that is undeniably false.

**Cook MIL 2.**

This MIL requests the Court to exclude evidence and argument that Cook misrepresented information to and withheld information from the FDA and violated FDA reporting requirements related to adverse events. Dkt. 8889 at 54729-31. Mrs. Brand argued that Cook's misrepresentations and omissions to the FDA, including its failure to report adverse events, is relevant to her design defect claims in a number of respects, including Cook's lack of compliance with governmental regulations. Dkt 9261 at 5-11. She cited two cases in support, including an earlier decision by this Court in this case. *Id.* at 8-9 (citing *In re Cook Med., Inc., IVC Filter Marketing, Sales Practices & Prod. Liab. Litig.*, 2016 WL 22854169, at *2 (S.D. Ind. May 12, 2016) (this Court holding such evidence relevant to Georgia-law design defect claims and learned intermediary rule); *In re Tylenol (Acetaminophen) Marketing, sales & Prod. Liab. Litig.*, 181 F. Supp. 3d 278, 289 -90 (E.D. Pa. 2016) (holding pre-market and post-market fraud on FDA relevant to both design defect and failure to warn claims).

This Court and the Eastern District of Pennsylvania are not alone, as other courts have also held such evidence relevant to design defect claims. *See, e.g., Booker v. C.R. Bard, Inc.*, 2018 WL 1109554, at *2 (D. Ariz. Mar. 1, 2018) (holding it only fair that in response to evidence from the defendant that it dutifully tracked and reported problems to the FDA the plaintiff could put on evidence that the defendant did not fully communicate problems to the FDA). Further, courts have held that a defendant's failure to provide complete information to the FDA is relevant and admissible as to the defendant's liability for punitive damages. *See, e.g., Yaz Litig.*, 2011 WL 6740391, at *3.

11

In response to Cook's MIL 2, Mrs. Brand also pointed out that Cook had argued that the entire FDA post-market surveillance and regulatory scheme and its supposed compliance with it is relevant to design defect and admissible in its response to the motion to exclude Foreman (Dkt. 9062 at 8) *Id.* This Court agreed in its entry regarding that motion. Dkt. 9769 at 3. So, given the relevance of Cook's incomplete and fraudulent communications to Mrs. Brand's design defect and punitive damages claims, nothing about the Court's summary judgment on failure to warn supports it granting Cook's MIL 2.

**Cook MIL 3.**

This MIL requests the Court to exclude from evidence the 522 Order. Dkt. 8889 at 547231-34. The 522 Order was, of course, issued as part of the FDA's post-market surveillance and regulatory scheme which Cook argued (and this Court agreed) is relevant to Mrs. Brand's design defect claims, so it should be admissible for that reason alone. Further, Mrs. Brand noted that Cook will argue that the FDA's lack of action against the Celect using one of its post-market enforcement mechanisms demonstrates that nothing must be wrong with it. Dkt. 9261 at 13. Mrs. Brand argued that basic fairness dictates that she should be able to respond to this by putting the 522 Order into evidence and arguing that it shows that the FDA still had safety concerns about the Celect and all IVC filters years later, which concerns it was trying to study, such that no finding by the FDA that IVC filters in general or the Celect specifically was safe can reasonably be inferred from its inaction. Given the 522 Order's relevance to design defect, the Court's summary judgment on failure to warn does not support it granting Cook's MIL 3.

**Cook MIL 4.**

This MIL seeks to exclude from evidence Cook's complaint files and any testimony concerning those files, including references to them in internal company communications and

expert reliance materials. Dkt. 8889 at 547234-41. Mrs. Brand responded that the Court had properly found those complaint files relevant to design defect and admissible in *Hill* via a Rule 1006 summary and that a limited number of sufficiently similar individual complaints should also be admissible and/or can be referenced in internal company documents or expert testimony. Dkt. 9261 at 14 & 17-18.

Significantly, many courts have ruled that sufficiently similar complaints and other evidence of sufficiently similar incidents are relevant to design defect claims and admissible. *See, e.g., Kramer v. Ford Motor Co.*, 2016 WL 827746, at *17 (D. Minn. Feb. 29, 2016) (holding relevant to design defect and thus admissible an expert's testimony regarding his summary of complaints of unintended acceleration from Ford's database (much like Cook's Trackwise database of complaints in this case), as well as the summary and the complaints themselves); *Carballo-Rodriquez v. Clark Equip. Co., Inc.*, 147 F. Supp. 2d 66, 73-74 (D.P.R. 2001) (holding relevant to design defect and thus admissible service reports and telephone logs regarding incidents similar to the incident that injured the plaintiffs); *Schmidt v. Duo-Fast Corp.*, 1995 WL 648471, at *1 (E.D. Pa. Oct. 30, 1995) (holding reports of 35 similar accidents relevant to design defect and thus admissible).

In addition, to the extent the complaints help establish the existence of a defect which Cook refused to fix or warn about, they are also relevant to Mrs. Brand's punitive damages claim. Because the complaints are relevant to Mrs. Brand's design defect and punitive damages claims, nothing about the Court's summary judgment on failure to warn supports it granting Cook's MIL 4.

13

**Cook MIL 8.**

This MIL seeks to exclude evidence or argument that 21 C.F.R. § 801.4 required Cook to warn about off-label uses or retrieval methods. Dkt. 8889 at 54753-55. As such, it falls within the general rule that warning-related evidence is relevant to Mrs. Brand's design defect claims and her entitlement to punitive damages.

**Cook MIL 10.**

With this MIL, Cook seeks to exclude four specific communications with regulatory agencies outside the United States. Dkt. 8889 at 54757-60. In response, Mrs. Brand argued that such evidence is relevant to notice, knowledge, scienter and state of the art and, thus, relevant to her design defect and punitive damages claims. Dkt 9261 at 30-32. In support, she cited five different drug cases where the courts denied similar motions in limine. Given this, nothing about the Court's summary judgment on failure to warn supports it granting Cook's MIL 10.

**Cook MIL 20.**

With this MIL, Cooks seeks to bar Mrs. Brand from "discussing" Cook's ethics or ethical duties. Dkt. 8889 at 54782-85. In response, Mrs. Brand argued that she should be allowed to question company employees about and introduce evidence of company ethical standards and rules, and she cited in support numerous cases holding that a company's breach of its standards and rules is relevant to whether it was negligent, including negligence in product design. Dkt. 9261 at 67-68.

Mrs. Brand also pointed out that during the *Hill* trial the jury heard multiple Cook witnesses offer testimony about the virtues of Cook and its mission and its employees from its founding through the present, and she argued that she should be able to counter that testimony by questioning those witnesses regarding Cook's ethics and ethical duties. Of course, to the extent this character

14

evidence is admissible, it is relevant to all of Mrs. Brand's claims, including her design defect and punitive damages claims. Accordingly, the Court's summary judgment on failure to warn does not support it granting Cook's MIL 20.

**Cook MIL 24.**

This MIL seeks to exclude from evidence Cook's February 9, 2006 Executive Summary. Dkt. 8889 at 54786-87. Mrs. Brand responded by explaining the relevance of the document to her design defect claims *without ever mentioning her failure to warn claims*. Thus, the Court's summary judgment on failure to warn does not support it granting Cook's MIL 24, and Cook's argument is simply frivolous.

**Cook MIL 29.**

This MIL seeks to exclude from evidence the "Lyon Publication," the only publication of Cook's only clinical study of the Celect filter, the so-called "OUS" or "outside the United States" study.[5] Dkt. 8889 at 54792-99. Mrs. Brand responded in part with extensive arguments as to how the Lyon Publication is relevant to her design defect claims. Dkt. 9261 at 94-95. The Court apparently agreed, ordering that two of Mrs. Brand's experts, Drs. Krumholz and Betensky, may testify regarding the OUS study. Dkt. 9771 at 10-14 & 21; Dkt. 9778 at 1-6.

Of course, those experts' opinions which the Court held admissible demonstrate that Cook lied about the risks of the Celect in the Lyon Study and, thus, lied about them to its readers, the vascular surgeons and interventional radiologists who implant IVC filters. So, Cook went far beyond merely failing to disclose the risks of the Celect and affirmatively hid them by misrepresenting them. Significantly, evidence that a defendant affirmatively hid the dangers of its product support the award of punitive damages. *See Cisson*, 2013 WL 5700513, at *13-14 (holding

---

[5] The Lyon study was published in the most preeminent journal for interventional radiologists, the Journal of Vascular and Interventional Radiology.

evidence that Bard hid that it was purchasing a product not safe to use in the human body for that purpose supported the jury's award of punitive damages); *Cicchillo v. A Best Prods. Co.*, 2002 WL 42963, at *5-6 (Ohio Ct. App. Jan. 10, 2002) (holding defendant's attempt to hide its knowledge of the dangers of asbestos by destroying internal documents evidencing such knowledge was relevant and admissible to prove the defendant's malice and potential liability for punitive damages).

Given all of this, the Court's summary judgment on failure to warn does not support it granting Cook's MIL 29.

### Cook MIL 30.

This MIL seeks to exclude from evidence the Alexander email. Dkt. 8889 at 54799-806. The Alexander email relates to the submission of the Lyon Study for publication in the Journal of Vascular and Interventional Radiology. Thus, it is relevant to Mrs. Brand's design defect and punitive damages claims and unaffected by the Court's summary judgment on failure to warn for the same reasons as the Lyon Study.

### E.    The Court's Grant of Summary Judgment on Failure to Warn Provides No Basis for the Court to Grant Any of Cook's New Motions in Limine.

Cook frivolously and in bad faith directly states or infers that Mrs. Brand responded to three MILs by discussing the relevance of their subject matters only in connection with failure to warn when that is undeniably false. As to the fourth, Cook previously only argued federal preemption (not relevance).

### Cook MIL 36.

MIL 36 seeks to exclude from evidence Cook's Single Complaint Form for Mrs. Brand and Cook's handling of same. Dkt. 8894 at 55042-44. Mrs. Brand responded that this is relevant to her design defect and punitive damages claims because its discussion of prior similar events of

16

perforation and fracture and of the failure mechanism (perforation causes fracture) evidences the existence of a defect in the Celect, Cook's knowledge of same and Cook' deliberate decision not to take any action in response to that knowledge. Dkt. 9263 at 26 & 29. Of course, that is all relevant to both Mrs. Brand's design defect and punitive damages claims. She also explained how it will serve to impeach Cook witnesses, including its experts, who will tell a story different from what Cook told in this pre-litigation report of its investigation. *Id.* at 26 & 28. Given this, the Court's summary judgment on failure to warn does not support it granting Cook's MIL 36.

**Cook MIL 37.**

This MIL seeks to exclude evidence or argument related to confidentiality designations. Dkt. 8894 at 55053-59. Mrs. Brand agreed, with one exception: that her experts, some of whom are academic scholars and prolific authors, should be able to explain that Cook's designation of documents as confidential prevents them from publishing what they have discovered therein about the complications of the Celect filter and Cook's lies about the results of the OUS study in the Celect IFU and the Lyon Study. Dkt. 9263 at 31. This is necessary so that the jury does not wrongly conclude that either (a) this information was already available to the medical community during the relevant time periods, or (b) Mrs. Brand's experts do not really believe their opinions or they would have published them. *Id.* Mrs. Brand explained that this is relevant to both her design defect and failure to warn claims. *Id.* Accordingly, the Court's summary judgment on failure to warn does not support it granting Cook's MIL 37.

**Cook MIL 38.**

This MIL seeks to exclude all evidence regarding information Cook failed to provide to the medical community, including the frequency of specific risks. Dkt. 8894 at 55053-59. This falls within the general rule that Cook's knowledge of the Celect's defects and failure to either fix

17

them or provide effective warnings of them is relevant to both her design defect and punitive damages claims. Consistent with this, Mrs. Brand responded that "[t]he pertinent risks of the Celect…are relevant to both design defect and failure to warn." Dkt. 9263 at 33. Given this, the Court's summary judgment on failure to warn does not support it granting Cook's MIL 38.

### Cook MIL 39.

This MIL seeks to exclude evidence and argument that Cook submitted inadequate and misleading information to the FDA regarding the IFU based on federal preemption. Dkt. 8894 at 55059-66. As to why the Court's summary judgment on failure to warn does not support it granting Cook's MIL 39, Mrs. Brand refers the Court to her general arguments as to why failure to warn evidence is also relevant to her design defect and punitive damages claims and also to her response to Cook's MIL 2 which addresses the same basic subject of misleading the FDA. Indeed, Cook's lying to the FDA in connection with it obtaining clearance of a device it knew to be defective constitutes a perfect example of "willful misconduct, malice, fraud wantonness and oppression."

**F.      The Court's Orders Have Mooted Cook's Vague Request to Exclude Warning-Related Opinions of Drs. Gordon and Krumholz, Which Request the Court Would Have Denied in Any Case.**

In its Submission at 4-5, Cook argues the Court's summary judgment on failure to warn requires it to exclude all opinions offered by Drs. Gordon and Krumholz "that relate to Cook's product warnings or to actual or constructive company knowledge" and it listed 11 very short bullet points vaguely describing opinions that supposedly fall within those broad categories, many of which dovetail with its MILs. Initially, Cook is so vague as to what opinions it seeks to exclude that the Court could not possibly enter an order in its favor. Further, the suggestion that "actual or constructive company knowledge" is not relevant to Mrs. Brand's design defect and punitive damages claims is quite simply absurd and overreaching. And, Mrs. Brand has explained

convincingly why "Cook's product warnings" are relevant to her design defect and punitive damages claims.

In any case, the Court has recently mooted Cook's requested relief. After granting summary judgment on failure to warn on December 5, 2018, this Court denied almost entirely Cook's motions to exclude the opinions of Drs. Gordon and Krumholz. Dkts. 9970 & 9971 (12/18/18). Presumably, the Court so ruled entirely mindful of its previous rulings.

## CONCLUSION

The Court should determine that its grant of summary judgment on failure to warn changes virtually nothing as to what evidence is relevant and admissible in this case. Further, in ruling on the outstanding MILs, it should find its grant of summary judgment completely irrelevant. Finally, it should find it has no reason to revisit its denials of the motions to exclude opinions of Drs. Gordon and Krumholz.

Dated: December 21, 2018.                    Respectfully Submitted,

*/s/ Ben C. Martin*
Ben C. Martin, Esq.
The Law Office of Ben C. Martin
3710 Rawlins Street, Suite #1230
Dallas, TX 75219
Telephone: (214) 761-6614
Facsimile: (214) 744-7590
Email: bmartin@bencmartin.com
*Plaintiffs' Co-Lead Counsel*

*/s/ Joseph N. Williams*
Joseph N. Williams, Atty. No. 25874-49
Riley Williams & Piatt, LLC
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317) 633-5270
Facsimile: (317) 426-3348
Email: jwilliams@rwp-law.com
*Liaison Counsel to Plaintiffs Steering Committee
and on behalf of Plaintiffs Steering Committee*

19

*/s/ Michael W. Heaviside*
Michael W. Heaviside, Esq.
Heaviside Reed Zaic, A Law Corporation
910 17th Street NW, Suite 800
Washington, DC 20006
Telephone: (202) 233-1993
Email: mheaviside@hrzlaw.com
*Plaintiffs' Co-Lead Counsel*

*/s/ David P. Matthews*
David P. Matthews, Esq.
Matthew and Associates
2509 Sackett St.
Houston, TX 77098
Telephone: (713) 522-5250
Facsimile: (713) 535-7184
Email: dmatthews@thematthewslawfirm.com

*Plaintiffs' Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on December 21, 2018, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

*/s/ Ben C. Martin*
Ben C. Martin

20