**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND                    Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION                                    MDL No. 2570

_____

This Document Relates to Plaintiff

    *Tonya Brand*
    No. 1:14-cv-06018-RLY-TAB

_____

**COOK DEFENDANTS' REPLY MEMORANDUM REGARDING**
**PLAINTIFF'S ARGUMENT FOR ADMISSION OF**
**FAILURE-TO-WARN EVIDENCE ON DESIGN-DEFECT CLAIMS**

# TABLE OF CONTENTS

Page

ARGUMENT ................................................................................................................. 2

   A.   The Court Has Already Held that the Undisputed Facts Establish that Any Inadequacy in Cook's Warnings Did Not Cause Plaintiff's Injuries, Foreclosing Any Reliance on Warnings Evidence in Plaintiff's Design-Defect Claim. ....................... 3

   B.   The "Efficacy of Warnings" Is Merely a Component of the Banks Factor Concerning "the Avoidability of the Danger." ................................................................. 4

   C.   The "Efficacy of Warnings" Refers to Whether a Warning Would Have the Power to Reduce a Risk Created by a Product's Design, Not Whether Any Particular Warning Actually Reduced that Risk. ............................................................................. 10

   D.   Plaintiff Overlooks the Banks Court's Admonition that Not All the Banks Factors Apply in Every Case. ....................................................................................................... 12

   E.   Plaintiff's Proposed Warnings Evidence Would Be Confusing, Misleading, Wasteful, and Unfairly Prejudicial to Cook. ...................................................................... 15

   F.   Cook Does Not Assert Restatement (Second) of Torts Section 402A, comment k as an Affirmative Defense in this Case. ........................................................................... 17

   G.   Evidence Concerning Cook's Conduct With Respect to Warnings is Not Admissible to Support a Claim for Punitive Damages Based on a Design Defect........... 18

   H.   Even Assuming Warning Evidence were Otherwise Admissible, the Only Warning Evidence that Could Be Relevant is Evidence Predating the Manufacture of Plaintiff's Celect Filter. ................................................................................................ 19

CONCLUSION............................................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Carter v. Johns–Manville Sales Corp.*,
   557 F.Supp. 1317 (E.D.Tex.1983) ........................................................................7

*Castillo v. Estelle*,
   504 F.2d 1243 (5th Cir. 1974) ..............................................................................11

*Scheinberg v. Merck & Co., Inc. (In re Fosamax Prods. Liab. Litig.)*,
   924 F. Supp. 2d 477 (S,D,N,Y. 2013)....................................................................9

*United States v. Burke*,
   781 F.2d 1234 (7th Cir. 1985) ..............................................................................18

*Urena v. Biro Mfg. Co.*,
   114 F.3d 359 (2d Cir. 1997)....................................................................................9

*Weilbrenner v. Teva Pharmaceuticals USA, Inc.*,
   696 F. Supp. 2d 1329 (M.D. Ga. 2010) ................................................................19

*Whalen v. CSX Transp., Inc.*,
   2017 WL 4075200 (S.D.N.Y. Sept. 13, 2017)........................................................9

**STATE CASES**

*Am. Tobacco Co., Inc. v. Grinnell*,
   951 S.W.2d 420 (Tex.1997)....................................................................................7

*Atlanta Obstetrics, etc., Group v. Coleman*,
   398 S.E.2d 16 (1990) ..............................................................................................3

*Banks v. ICI Americas*,
   450 S.E.2d 671 (Ga. 1994)............................................................................ passim

*Benefit Support, Inc. v. Hall County*,
   637 S.E.2d 763 (2006) ..........................................................................................18

*Bryant v. Hoffmann-La Roche, Inc.*,
   585 S.E.2d 723 (Ga. App. 2003)................................................................... passim

*In re Ethicon, Inc.*,
   2014 WL 457544 (S.D.W.V. 2014).......................................................1, 7, 8, 17

*Kelley v. Hedwin Corp.*,
   308 Ga.App. 509, 707 S.E.2d 895 (Ga. App., 2011) ............................................19

*Lewis v. Meredith Corp.*,
    667 S.E.2d 716 (Ga. App. 2008) ........................................................................18

*O'Brien v. Muskin Corp.*,
    463 A.2d 298 (N.J, 1983) ..................................................................................19

*State v. Gordon*,
    668 So.2d 462 (La. App. 1996), *writ granted on other grounds*, 672 So.2d 669
    (La. 1996) ...........................................................................................................11

*Wolff v. Middlebrooks*,
    568 S.E.2d 88 (2002) .........................................................................................19

*Zeagler v. Norfolk S. Ry. Co.*,
    730 S.E.2d 657 (Ga. App. 2012) ..........................................................................3

**RULES**

Fed. R. Evid. 401 ......................................................................................................18

Fed. R. Evid. 403 ................................................................................................15, 17

**OTHER AUTHORITIES**

Black's Law Dictionary (7th ed. 1999) ......................................................................5

Black's Law Dictionary (10th ed. 2014) ....................................................................3

Georgia Pattern Jury Instructions § 62.650 ...............................................................5

https://en.oxforddictionaries.com/definition/efficacy .............................................11

https://www.dictionary.com/browse/effectiveness ..................................................11

https://www.merriam-webster.com/dictionary/effective .........................................11

, https://www.merriam-webster.com/dictionary/efficacy .........................................11

Oxford English Dictionary,
    http://www.oed.com/view/Entry/90670?rskey=30NWQg&result=1#eid10704
    08 ...........................................................................................................................5

Restatement (Second) of Torts, § 402A, Comment ............................................3, 9, 17

Restatement (Second) of Torts § 402A, Comment k ...............................................17

Restatement (Third) of Torts: Products Liability § 2 ..........................................14, 15

Plaintiff's failure-to-warn claims are gone.  Cook moved for summary judgment on Plaintiff's warning claims, and the Court dismissed them.  *See* Dkt. 9696, Entry on Cook Defs.' Mot. for Summ. J. on Pl.'s Failure to Warn Claims.   Plaintiff moved for reconsideration of that summary judgment, and the Court denied Plaintiff's motion.  *See* Dkt. 9808, Order on the Plaintiff's Motion to Reconsider the Court's December 5, 2018 Grant of Summary Judgment on Plaintiff's Failure to Warn Claims.

Despite these rejections, Plaintiff tries yet again to resurrect her warning claims by arguing that evidence of what she calls "Cook's inadequate warnings and failure to communicate its warnings" is somehow relevant to her claims for design defect and punitive damages.  *See* Dkt. 9809; *see also* Dkt. 9765 at 7 (Plaintiff's Trial Brief).  In essence, Plaintiff argues that she is entitled to try indirectly the warning claims that the Court has already held as a matter of law she cannot try directly.

There are at least six reasons why the Court should reject Plaintiff's argument, but the three simplest are these:

1)    The Court has already held on summary judgment that Plaintiff has no evidence that Cook's alleged failure to warn caused her any damage, so evidence of alleged failure to warn cannot support *any* claim in this case.

2)    The only federal court Cook is aware of that has considered the precise argument that Plaintiff raises here squarely rejected that argument on multiple grounds.  *See In re Ethicon, Inc.*, 2014 WL 457544 (S.D.W.V. 2014).

3)    Plaintiff's warning evidence has nothing to do with permitting doctors to more safely use the Celect filter as designed, the issue addressed in *Banks v. ICI Americas*, 450 S.E.2d 671 (Ga. 1994), but merely argues that Cook should have warned doctors that the Celect was too dangerous to use at all.

Plaintiff's suggestion that the Court allow the jury to hear Plaintiff's proposed warning evidence as party of her design-defect case would allow Plaintiff to make an end run around the Court's summary judgment ruling.  Worse, it would confuse the jury about the nature of the defect at issue here—which is exactly what Plaintiff wants.  This case is now a design-defect case, and only a design-defect case.  The Celect's warnings are irrelevant, and Plaintiff's claim that she may argue the warnings were insufficient to support her design claim is wrong.

## ARGUMENT

Plaintiff's argument for the admission of her warnings evidence fails for a wide array of reasons:

- As the Court has already held, the undisputed evidence establishes that Plaintiff's treating doctor did not rely on Cook's warnings, so even assuming the evidence were theoretically relevant to a design-defect case under *Banks,* no alleged inadequacy in those warnings could have caused Plaintiff's injuries.

- Plaintiff's proposed warning evidence does not relate to the "avoidability of danger," the *Banks* factor of which warnings are a part.

- Plaintiff's proposed warning evidence does not relate to the "efficacy of warnings," that is, the capability of warnings to reduce the risk of using the as-designed product.

- Contrary to Plaintiff's assertion, the application of every *Banks* factor is not required in every case; the *Banks* court made clear that the factors it enumerated were *not* "applicable under every factual circumstance."

- Any arguable probative value of Plaintiff's warnings evidence is substantially outweighed by the danger of confusing and misleading the jury, by the needless

expenditure of judicial, attorney and juror time and resources, and by the unfair prejudice to Cook.

- Cook does not assert in this action the affirmative defense based on Restatement (Second) of Torts, section 402A, comment k, so that defense cannot justify admission of warnings evidence.

- Plaintiff's warnings evidence is not admissible to support her claim for punitive damages because the Court has dismissed her failure-to-warn claim.

- Even assuming some warning evidence were relevant to and admissible on Plaintiff's design-defect claim, that evidence would be limited to the period prior to the manufacture of Plaintiff's Celect filter.

### A. The Court Has Already Held that the Undisputed Facts Establish that Any Inadequacy in Cook's Warnings Did Not Cause Plaintiff's Injuries, Foreclosing Any Reliance on Warnings Evidence in Plaintiff's Design-Defect Claim.

At the threshold, Plaintiff's argument fails because, as the Court has already held, the undisputed evidence establishes that there is no causal link between Cook's warnings and her doctor's conduct or her own injuries.

Recovery based on design defect requires a plaintiff to "prove that the defendant's negligence was both the 'cause in fact' and the 'proximate cause' of [the] injury." *See Atlanta Obstetrics, etc., Group v. Coleman,* 398 S.E.2d 16, 17 (1990). "Cause in fact" requires that the defect or negligence at issue be "[t]he cause without which the event could not have occurred." Black's Law Dictionary (10th ed. 2014) (equating "cause in fact" with "but for" cause); *see also Zeagler v. Norfolk S. Ry. Co.*, 730 S.E.2d 657, 661 (Ga. App. 2012) (failure to provide particular training to employee is a cause-in-fact of injuries if the training would have avoided the injury or reduced the injuries ). Similarly, "[p]roximate cause means that cause which, in a natural and

continuous sequence, produces an event, and without which cause such event would not have occurred." (Georgia Council of Superior Court Judges, Suggested Pattern Jury Instruction 60.200 (2016) (hereafter "GSPJI").)

Here, the Court has already ruled based on the undisputed evidence that Plaintiff's treating doctor did not rely in any way on any warnings or instructions from Cook in selecting and placing the Celect IVC filter in Plaintiff, meaning that any claimed inadequacy in those warnings could not have caused Plaintiff's injuries.  Dkt. 9696 at 6-7 (describing Dr. Rheudasil's testimony on this issue as "devastating" and granting summary judgment).  Logically, if a doctor did not rely on warnings or instructions from the manufacturer is selecting or using a medical device, then the adequacy of those warnings cannot be a factor in determining whether the medical device had a design defect that caused a plaintiff's injury, and evidence concerning such warnings is not relevant or admissible.  Just as the *Banks* factor of "the product's utility for multiple uses" has no relevance to a design-defect claim involving a single-use product, so the "effectiveness of warnings" (as Plaintiff puts it) has no relevance to a design-defect claim involving a product whose warnings undisputedly played no role in the ultimate use of the product.  A design defect that depends on the "effectiveness" of warnings on which no one relied cannot logically be a defect without which the injury "would not have occurred."  GSPJT 60.200 (2016).

Plaintiff's argument that her legally foreclosed failure-to-warn claim can nevertheless somehow support her design-defect claim is merely another attempt to avoid the Court's summary judgment on her warnings claims.  Evidence of warnings is inadmissible to support Plaintiff's design claim.

**B. The "Efficacy of Warnings" Is Merely a Component of the *Banks* Factor Concerning "the Avoidability of the Danger."**

Plaintiff errs in asserting that the "efficacy of warnings" is a separate factor in the *Banks* risk-benefit analysis.  *See* Dkt. 9809 at 3.  In fact, "efficacy of warnings" is only a possible component of the *Banks* court's "avoidability of the danger" factor.  The *Banks* decision describes as a possible factor in the risk-benefit analysis in a design-defect claim:

> the avoidability of the danger, i.e., the user's knowledge of the product, publicity surrounding the danger, or *the efficacy of warnings*, as well as common knowledge and the expectation of danger.

*Banks*, 450 S.E.2d at 675 n.6 (emphasis added).  The court's use of the abbreviation "i.e." means "that is to say" or "in other words."  *See* Black's Law Dictionary at 748 (7th ed. 1999) (from Latin *id est*); Oxford English Dictionary, http://www.oed.com/view/Entry/90670?rskey=30NWQg&result=1#eid1070408.[1]  Thus, in using the abbreviation "i.e.," the *Banks* court makes clear its intention that "the efficacy of warnings" and the other items following that abbreviation are a *reiteration* of the "avoidability of the danger" factor, and are not separate or independent factors.  Under the *Banks* court's language, then, warnings are relevant to a design-defect claim only where a warning about a particular risk created by a design feature could "avoid the danger" that that risk would come about.

For example, designing a ladder to be 10 feet tall may make the ladder more useful, but it may also increase the risk of instability when a user stands on the top steps.  A warning on the second step down that says "Caution—Do Not Stand on or Above This Step" can reduce or eliminate the risk created by the design by apprising the user of the danger of such conduct.  In the medical context, a manufacturer may design a drug or a medical device to provide certain

---

[1] Plaintiff's response alters this critical language in several places, substituting the word "considering" for the abbreviation "i.e." in her attempted quotation from *Banks*.  *See* Dkt. 9809 at 3 ("the avoidability of the danger, considering…the effectiveness of warnings," mistakenly citing *Banks*, 450 S.E.2d at 736 n.6).  Plaintiff may have found her "considering" language in Georgia Suggested Pattern Jury Instructions section 62.650, which uses that phrasing.  But although pattern instructions may be useful, they may not alter or overrule the specific language the Georgia Supreme Court actually used in *Banks*.

benefits, but that design may also pose unique risks to certain specific portions of the patient population (e.g., pregnant women, patients who have certain allergies, obese patients, etc.). *See, e.g., Bryant v. Hoffmann-La Roche, Inc.*, 585 S.E.2d 723, 730 (Ga. App. 2003) (noting that drug at issue induced slowing of heart rate, making it a "poor choice" for patient susceptible to specific type of abnormal heart rhythm). A warning that the drug or device is to be used only in a particular way or only in a particular patient population may reduce or ameliorate the risks of the product's design by assuring that the product is used in the proper way and for suitable patients. *See generally id.*[2] This is the "avoidability of the danger" addressed in *Banks*.

Plaintiff's proposed warning evidence here is entirely different in nature, and it has nothing to do with enabling a doctor to "avoid the danger" of the as-designed Celect filter by employing a particular medical technique or by limiting its use to a particular group of patients. Plaintiff does not claim to have evidence that some additional instruction or warning would have enabled a doctor to place the Celect filter in her body more safely or to use some technique that would have compensated for the design features of the Celect of which she complains. On the contrary, Plaintiff's whole warning argument is that Cook should have provided additional information that would have made doctors decide *not to use the Celect filter at all*.[3] Such a warning has nothing to do with the avoiding the danger of using the Celect filter as designed.

---

[2] The Celect IFU contained several warnings or instructions of this type. *See, e.g.*, Dkt. 8657-1 at 4 (Cook IFU "Contraindications" suggesting Celect should not be used when IVC diameter is less than 15 mm or more than 30 mm or when patient is at risk of septic embolism).

[3] *See* Dkt. 9146 at 13 ("when Dr. Rheudasil chose the Celect for Ms. Brand, he was not aware the Tulip was a safer filter, because the risk of perforation and fracture was significantly higher for the Celect than the Tulip."); *id*. at 16 ("Those are risks any doctors would want to know when making a risk/benefit analysis prior to deciding which filter to implant and risks that Dr. Rheudasil said would cause him not to use the Celect."); Dkt. 9726 at 3 (arguing that "there is a fact issue about whether placing this information in the Celect IFU would have caused Dr. Rheudasil to choose the Tulip filter" instead of the Celect).

The Southern District of West Virginia considered and rejected the very argument Plaintiff makes here in *In re Ethicon, Inc.*, 2014 WL 457544 (S.D.W.V. 2014).  The plaintiffs in *Ethicon* sued the manufacturer of a surgical mesh product (called "TVT") for personal injuries, asserting theories of design defect and failure to warn, and the court granted summary judgment on the failure-to-warn claims.  *Id.* at *3.  Like Plaintiff here, the *Ethicon* plaintiffs argued that their experts' opinions about the adequacy of Ethicon's warnings was nevertheless relevant and admissible to their design-defect and punitive-damages claims.  *Id.* at *3 & n.2.  And like Plaintiff here, the Ethicon plaintiff's pointed to the risk-utility test for design defect (in that case under Texas law) and cited authority that the factors for the risk-utility test included "the existence of suitable warnings or instructions."  *Id.* at *3 (quoting *Am. Tobacco Co., Inc. v. Grinnell,* 951 S.W.2d 420, 432 (Tex.1997)).

The *Ethicon* court rejected the plaintiff's argument on multiple grounds, most significantly here on the ground that "warnings are simply not applicable to this particular design defect claim."  *Id.* at *4.  The court noted that the plaintiffs did not claim that any additional warnings or instructions would have permitted doctors to use the product more safely; instead, the *Ethicon* plaintiffs simply argued—like Plaintiff here—that additional information would have discouraged doctors from using the product *at all*.  The court held that the presence or absence of such a "don't use this design" warning had nothing to do with the plaintiffs' design-defect claims:

> The warning in this case does not address a safe *method* or *manner* of using the TVT.  Instead, the warning's only function is to *inform* users of the TVT's risks so that they may choose to take it or leave it.  In a design defect case, "whether the product contained a warning and the nature of the warning are relevant to the issue of whether the product was unreasonably dangerous.  A warning that alerted users to the dangers involved in using the product and instructed them in how to avoid those dangers could significantly reduce those dangers without impairing the utility of the product to society." *Carter v. Johns–Manville Sales Corp.,* 557 F.Supp. 1317, 1320 (E.D.Tex.1983).  There is no way

that the TVT's design can be used in a *safer* manner by following the warning.  A physician simply implants the device or chooses an alternative treatment.

*Id.* at \*5 (all emphasis by the *Ethicon* court).

Likewise here, Plaintiff's proposed warning evidence does not suggest that Cook could have done anything to "alert[] users to the dangers involved in using the product" or "instruct[] them in how to avoid those dangers" so as to "significantly reduce those dangers without impairing the utility of the product to society."  Instead, Plaintiff's proposed warning *presumes* both that a design defect exists and that that defect is so serious that the product should not be used at all.  In effect, Plaintiff wants to use evidence that Cook did not warn doctors that the Celect IVC filter was defectively designed to prove that the Celect IVC filter was defectively designed.  This case simply does not involve any warning evidence that goes to the "avoidability of the danger" of any feature of the Celect IVC filter.  For that reason, Plaintiff's warning evidence is irrelevant to her design-defect claim and inadmissible at trial.

The sole Georgia case Plaintiff cites for her argument, *Bryant v. Hoffmann-La Roche, Inc.*, 585 S.E.2d 723 (Ga. App. 2003), is inapposite here for several reasons.  Most prominently, the plaintiff in *Bryant* did not claim that the design of the pharmaceutical at issue was so defective that doctors should not use it at all; he claimed instead that the manufacturer had failed to warn that the medication was a "poor choice" for a particular group of patients, specifically those susceptible to a particular type of abnormal heart rhythm.  *See id.* at 730.  This type of contraindication for a specific patient population may indeed go to the "avoidability of the danger" under *Banks* by identifying a group of patients in whom the medication should not be used, and would thus allow the safe use of the product as designed in other groups while reducing the overall risk that the product would cause injury.  In contrast here, as noted above,

Plaintiff's proposed warning evidence suggests no warning or instruction that Cook could have provided that Plaintiff contends would have permitted the safe use of the Celect as designed.

Two other features also distinguish the *Bryant* case from the situation here. First, the defendant in *Bryant* had raised an affirmative defense under Restatement (Second) of Torts section 402A, comment k, which has a warnings element. *Id.* at 726-27 (noting that "Comment k, by its own terms, provides protection against strict liability only where the product is 'properly prepared, and accompanied by proper directions and warning.'"). As discussed in section F below, Cook does not assert comment k as an affirmative defense in Plaintiff Brand's case,[4] so the "proper directions and warnings" element of the comment k defense does not apply here. Second, the *Bryant* case involved a viable failure-to-warn claim that survived summary judgment, *id.* at 730, so the warnings evidence in *Bryant* was clearly relevant to that claim. Here, of course, the Court has already granted summary judgment on Plaintiff's failure-to-warn claims. The *Bryant* case does not support the admission of warnings evidence on Plaintiff's design-defect claim.[5]

---

[4] *See* 585 S.E.2d at 728 ("Comment k serves as an affirmative defense")

[5] The other cases Plaintiff cites in her response likewise provide no support for her argument. Most importantly, none of them involves Georgia law or applies *Banks'* risk-benefit factors for design defect. They all apply New York law, under which design defect includes elements of consumer contemplation and unreasonable dangerousness. *See Urena v. Biro Mfg. Co.*, 114 F.3d 359, 363 (2d Cir. 1997); *Whalen v. CSX Transp., Inc.*, 2017 WL 4075200 at *3 (S.D.N.Y. Sept. 13, 2017); *Scheinberg v. Merck & Co., Inc. (In re Fosamax Prods. Liab. Litig.)*, 924 F. Supp. 2d 477, 485 (S,D,N,Y. 2013). Moreover, even assuming those cases applied the correct state's law, all of them—like *Bryant*—involved claims that the defendant failed to provide warnings about how to safely operate or use the product *as designed*, not warnings that the product was so dangerous that it should not be used at all. *See, e.g., Urena*, 114 F.3d at 365 (noting evidence that defendant "failed to provide adequate instructions and warnings concerning the need to use the safety plate"); *Whalen*, 2017 WL 4075200 at *6 (noting evidence that defendant failed to provide adequate instructions about how to operate chair as designed); *Scheinberg*, 924 F. Supp. 2d at 485 (noting testimony that plaintiff "would have needed to stop taking [drug] at least six months before her tooth extraction" to avoid osteonecrosis of the jaw).

It is also worth noting that taking Plaintiff's argument to its logical conclusion, a defendant facing both design and failure-to-warn claims would *never* be able to get a true summary judgment on the failure-to-warn because (according to Plaintiff) the *Banks* decision always allows a plaintiff to pull the adequacy of warnings back into the case through the design-defect claim.  As discussed above, *Bryant* does not support such a result, nor for that matter does the *Banks* decision itself.  *Banks* involved claims against the manufacturer of a rodenticide that poisoned a child, including a design claim that the pellets should have contained a foul-tasting chemical and a warning claim that the labeling should have better warned customers.  450 S.W.2d at 672.  The court dismissed the warning claim as preempted by federal law.  *Id.* at 676.  On the design claim, the court adopted a new risk-utility test for design defect and remanded the case for a new trial applying the new standard.  *Id.* at 675-76.  Other than the mention of the phrase in footnote 6, the decision neither discusses nor applies the "efficacy of warnings" in the context of a design-defect claim, and certainly does not suggest that a plaintiff could revive an otherwise barred warning claim through the risk-utility analysis.

## C. The "Efficacy of Warnings" Refers to Whether a Warning Would Have the Power to Reduce a Risk Created by a Product's Design, Not Whether Any Particular Warning Actually Reduced that Risk.

Even assuming for the sake of argument that Plaintiff's proposed warnings evidence somehow related to the "avoidability of the danger" of the Celect filter as designed, Plaintiff's argument nevertheless fails because she misreads the scope of "efficacy of warnings" in the *Banks* factors.  Plaintiff's response consistently alters the phrase "*efficacy* of warnings"—the phrase the *Banks* court *actually* used—to the phrase "effectiveness of warnings," a phrase the *Banks* court did *not* use.  *See Banks,* 450 S.E.2d at 675 n.6.  Plaintiff even alters this language twice in what her memorandum presents as direct quotations from the *Banks* case.  *See* Dkt. 9809 at 3, 5 (both erroneously quoting *Banks* as using the phrase "effectiveness of warnings").

10

The terms "efficacy of warnings" and "effectiveness of warnings" have different meanings, and the meaning of the "efficacy" phrase the *Banks* court actually used does not support Plaintiff's argument.  In a nutshell, efficacy is the *capacity* of an item to create an effect; effectiveness is the degree to which the item actually *produces* that effect.

"Efficacy" refers the power or capacity to produce an effect; in this instance, the capacity or power of a warning to produce the effect of avoiding or reducing the incidence of a design-related risk.  *See, e.g.,* https://www.merriam-webster.com/dictionary/efficacy (defining "efficacy" as "the power to produce an effect").[6]  In contrast, the word "effectiveness" refers to whether a particular element (a warning, an ingredient, a tire pump, etc.) actually *produces* the desired effect.  *See* https://www.merriam-webster.com/dictionary/effective ("producing a decided, decisive, or desired effect.").[7]  The *Banks* court unquestionably knew the difference between efficacy and effectiveness, as it used forms of both in the same opinion with different meanings.  *Banks*, 450 S.E.2d at 675 (discussing "the availability of an effective substitute for the product which meets the same need but is safer").

Thus, in using the phrase "efficacy of warnings," the *Banks* decision refers to whether a warning has the *capacity* to avoid the risk introduced by the design, *not* whether a specific defendant's warning was actually *adequate* to warn a particular user about the risk.  For example, the "efficacy" of a warning label on the upper step of a ladder addresses whether such a label has the *capacity* to lessen the risk introduced by designing the ladder to a particular height,

---

[6] *See also*  https://en.oxforddictionaries.com/definition/efficacy ("The ability to produce a desired or intended result."); *cf. also State v. Gordon*, 668 So.2d 462, 464 (La. App. 1996) (in interpreting forgery statute, "[e]fficacy is defined as the '[p]ower or capacity to produce the desired effect' or the 'ability to achieve results,'" quoting *The American Heritage Dictionary of the English Language* (New York 1973)), *writ granted on other grounds*, 672 So.2d 669 (La. 1996).

[7] *See also* https://www.dictionary.com/browse/effectiveness ("adequate to accomplish a purpose; producing the intended or expected result:"); *cf. Castillo v. Estelle*, 504 F.2d 1243, 1245 (5th Cir. 1974) ("'effectiveness' [of counsel] is not a matter of professional competence alone").

and looks at whether the change in conduct suggested by the warning could lessen the risk.  In contrast, the "effectiveness" of such a label addresses whether the particular label used *actually* lessened that risk, looking at such things as the content and wording of the label, the size of the label, the color of the type, etc.  By altering the *Banks* court's language from "efficacy" to "effectiveness," Plaintiff tries to justify an argument that all of her evidence concerning the supposed inadequacy of the Cook IFU is relevant and admissible.  This argument fails.

In the present case, the issue under the "efficacy of warnings" language the *Banks* court actually used is whether an additional warning would have had the power or capacity to reduce the risk introduced by the Celect's design, and ***not*** whether the specific warning that Cook gave ***actually*** reduced the risk.  As discussed above, the warnings evidence Plaintiff seeks to offer on her design-defect claim does not address the power of additional warnings or instructions to permit the safer use of the Celect filter.  The only power that Plaintiff claims that additional warnings would have had would have been to discourage doctors from using the Celect filter at all.  That is not what the *Banks* court contemplated by the "efficacy of warnings" in the context of product design.

Moreover, Plaintiff's proposed interpretation—that she can use evidence that the Celect's warnings were inadequate to prove that the Celect was defectively designed—converts her design-defect claim into a *de facto* failure-to-warn claim, a claim the Court has already dismissed.

### D.  Plaintiff Overlooks the *Banks* Court's Admonition that Not All the *Banks* Factors Apply in Every Case.

Part of Plaintiff's error in trying to force the square peg of her warnings evidence into the round hole of the design issues in this case arises from her apparent belief that every jury in every case must consider every topic listed in footnote 6 of the *Banks* decision, including the

12

"efficacy of warnings."  *See Banks v. ICI Americas*, 450 S.E.2d 671, 675 n.6  (Ga. 1994).

Plaintiff argues that the Georgia Supreme Court held in *Banks* that "the effectiveness of

warnings" is "one of the factors a jury ***must*** consider in deciding whether the Celect had a design

defect."  Dkt. 9809 at 3 (emphasis added).  The *Banks* court in fact held no such thing.

Although Georgia law permits juries to consider a number of factors in determining

whether a product is defectively designed, all those factors come under a single umbrella: the

risk-utility test.  The factors are not ends unto themselves; they are relevant only so far as they

serve a purpose, and that purpose is to help the jury in any particular case "balance[e] the risks

inherent in a product design against the utility of the product so designed."  *Banks*, 450 S.E.2d at

674.  Consistent with this focus on the underlying inquiry into risk-utility, the *Banks* court

explicitly noted that the possible factors for a risk-benefit analysis were just that:  *possible*

factors.  The court made clear that the footnote 6 list was neither comprehensive nor compulsory,

and that it included factors that would not be applicable in every case:

> We recognize that in setting forth a test under the risk-utility analysis for the determination whether a manufacturer should be liable for an entire product line, **no finite set of factors can be considered comprehensive or applicable under every factual circumstance**, since such matters must **necessarily vary according to the unique facts of each case**. Such diverse matters as competing cost trade-offs, the idiosyncrasies of individual corporate management styles, and federal and other regulatory restrictions can enter into a consideration of the reasonableness of a manufacturer's tactical market decisions, product development and research/testing demands, the decision-making process. However, for the benefit of bench and bar, we have set forth in the accompanying footnote **a non-exhaustive list of general factors** derived from numerous sources.

*Banks*, 450 S.E.2d at 675 (emphases added).  For example, both footnote 6 in *Banks* and the

Georgia jury instruction based on *Banks* include as risk-utility factors "the appearance and

aesthetic attractiveness of the product" and "the product's utility for multiple uses."  But these

factors obviously have no bearing on Plaintiff's design-defect claim here; the filter's aesthetics

are wholly irrelevant to Plaintiff's claim, and the filter is undisputedly a single-purpose, single-use product.

Plaintiff also overlooks the lack of fit between a design-defect claim that involves a medical device and the blind application of the *Banks* factors she urges. The idea that the efficacy of warnings is relevant at all to the risk-utility test comes from Section 2 of the Restatement (Third) of Torts: Products Liability. *See Bryant v. Hoffmann-La Roche, Inc.*, 585 S.E.2d 723, 732 (Ga. Ct. App. 2003) (Andrews, P.J., concurring specially) ("In *Banks,* the Supreme Court of Georgia adopted a new risk-utility analysis test for design-defect cases based on the test set forth in § 2 of Restatement (Third) of Torts: Products Liability (the Restatement Third)."); Restatement Third § 2 cmt. *f* (listing factors that may be considered in the risk-utility analysis including the product's warnings).

But the Restatement Third contains a whole separate section—Section 6—that applies exclusively to medical devices and pharmaceuticals. Subsection (c) of Section 6 states:

> A prescription drug or medical device is not reasonably safe due to defective design if the foreseeable risks of harm posed by the drug or medical device are sufficiently great in relation to its foreseeable therapeutic benefits that reasonable health-care providers, knowing of such foreseeable risks and therapeutic benefits, would not prescribe the drug or medical device for any class of patients.

Thus, under Section 6, a medical device is defectively designed *only* when it provides no net benefit to any class of patients. Restatement Third § 6 cmt. *b*. "Accordingly"—and this is key— "Subsection (c) imposes a more rigorous test for defect than does § 2(b), **which does not apply to prescription drugs and medical devices**." *Id*. cmt. *b* (emphasis added); *see also Bryant*, 585 S.E.2d at 733 (Andrews, P.J. concurring specially) ("The Restatement Third finds the risk-utility analysis set forth in § 2 *unworkable* for the unique issues presented by prescription drug [and medical device] design defect claims and sets out a separate test for prescription drugs [and medical devices] in § 6(c)." (emphasis added)).

14

This Section 2/Section 6 dichotomy is significant here because it shows that the Restatement's drafters never contemplated that Section 2's risk-utility test and its reference to the efficacy of warnings as a factor—which *Banks* adopted—would be used in medical device cases.[8]   Thus, Plaintiff's argument that the Court should uncritically apply all of the Section 2/*Banks* risk-factors simply because this is a design-defect case is not only inconsistent with *Banks*'s admonition that not all the factors apply "under every factual circumstance," 450 S.E.2d at 675, it is inconsistent with the very structure of the Restatement Third, which the Georgia Supreme Court relied heavily on in adopting the risk-utility test in *Banks*.   Contrary to Plaintiff's one-size-fits-all argument, the Court must consider whether the "efficacy of warnings" factor *actually* applies to the design-defect claim Plaintiff asserts here.

In sum, the need for case-specific evaluation of whether the *Banks* factors apply, emphasized by the *Banks* court itself, reinforces the conclusion that the "efficacy of warnings" simply does not fit the design-defect analysis for the reasons discussed in sections A, B, and C above.

### E.  Plaintiff's Proposed Warnings Evidence Would Be Confusing, Misleading, Wasteful, and Unfairly Prejudicial to Cook.

Even assuming for the sake of argument that Plaintiff could demonstrate that her warnings evidence actually had some relevance to her design-defect claim despite all the arguments above, the Court should nevertheless exclude the warnings evidence under Rule 403 because such evidence would be confusing and misleading to the jury, would unnecessarily prolong the trial, and would unfairly prejudice Cook.   These concerns outweigh any arguable probative value the evidence might have.

---

[8] The fact that the Georgia Court of Appeals declined to adopt Section 6, *see Bryant*, 585 S.E.2d at 728, does not undercut the point that the Restatement Section 2 from which the *Banks* court drew its risk-benefit factors regarded medical devices as unsuited to Section 2 analysis.

First, the introduction of warning evidence, especially in the volume that Plaintiff apparently contemplates, would unavoidably confuse and mislead the jury.  This case no longer had a failure-to-warn claim, but the introduction of evidence about warnings and their alleged inadequacy could only invite the jury to find against Cook based on just such an absent claim.  No possible instruction could prevent or cure this confusion; a jury could not possibly avoid viewing evidence about the effectiveness of Cook's warnings as relating to whether Cook should be responsible for the effectiveness of its warnings.  Indeed, one must struggle to imagine how jury instructions could possibly be framed to tell jurors how they could and could not use this warnings evidence.  For example, the jury would have to be instructed about the learned intermediary doctrine to properly understand the "effectiveness of warnings," but that doctrine is framed in terms of duty, and the Court has already held that any claimed breach by Cook of a duty to warn did not cause Plaintiff's injuries.  Any suggestion that the jury would or could limit the jury's consideration of warnings evidence to a design-defect claim alone is unrealistic, and amounts to no more than wishful thinking.

Second, allowing evidence concerning warnings would substantially increase the length of the trial and would waste the time and resources of the Court, the parties, and the jury.  Plaintiff's argument would effectively require both sides to present their *entire* cases on failure to warn—expert testimony, historical documents, company witnesses, and even all the evidence about lack of causation that led the Court to dismiss the warning claims in its earlier Order.  Any scant probative value this evidence might have would be substantially outweighed by the enormous amount of time the Court would need to invest in the presentation of this evidence.

Finally, the admission of the warnings evidence would cause unfair prejudice to Cook that far outweighs any arguable probative value.  In addition to the unfair and unavoidable suggestion that the case involves a failure-to-warn claim that it does not, the admission of the

warnings evidence would permit Plaintiff to try to spin documents and testimony about warnings to try to disparage Cook and its conduct when that evidence has nothing to do with the design claim actually before the Court.   The Court need look no further than Plaintiff's motion to reconsider its summary judgment ruling to see the type of denigrating characterization of Cook that she intends to present, *see* Dkt. 9726 at 2-4, all regarding a claim that is not even in the case.

The *Ethicon* court cited just these kinds of Rule 403 concerns as an alternative ground for its exclusion of such warnings evidence in a similar situation:

> Third, I would exclude this evidence under Federal Rule of Evidence 403. Admitting evidence of inadequate warnings poses a substantial risk of confusing and misleading the jury into believing that there is a failure to warn claim. Yet the probative value of this evidence is scant because the plaintiffs no longer have such a claim, they cannot show that an inadequate warning caused Ms. Lewis's injuries, and the warning does not relate to using the TVT in a safe manner.

2014 WL 457544 at *6.   This Court should hold likewise and exclude the proposed warnings evidence under Rule 403.

### F. Cook Does Not Assert Restatement (Second) of Torts Section 402A, comment k as an Affirmative Defense in this Case.

Plaintiff also argues that warnings evidence is relevant because the Cook Defendants pleaded an affirmative defense in their Answer to Plaintiffs' Master Complaint based on Restatement (Second) of Torts section 402A, comment k.   *See* Dkt. 9809 at 7.   Because comment k mentions warnings, Plaintiff argues, evidence about warnings must be relevant.

But this is not a comment k case, and the Cook Defendants are not asserting a comment k affirmative defense here.   As the Court is well aware, Cook's Answer to Plaintiffs' Master Complaint (like the Master Complaint itself) is an intentionally over-inclusive document that recites all the affirmative defenses that Cook might need to raise in any of the MDL cases.[9]   In

---

[9] This deliberate overbreadth serves the speed and efficiency of the MDL system by drastically simplifying the task of pleading and reducing the amount of work the parties and the Court must

the present case, Cook does not assert a comment k defense.  Cook intentionally did not submit a proposed comment k jury instruction, *see generally* Dkt. 9720, and Cook does not intend to request such an instruction at trial.  Because Cook is not asserting the comment k defense, Plaintiff cannot rely on the warnings element of comment k to support the relevance of warnings evidence.  *See* Fed. R. Evid. 401 ("Evidence is relevant if …the fact is of consequence in determining the action."); *United States v. Burke*, 781 F.2d 1234, 1243 (7th Cir. 1985) ("the question in each case is whether prior conduct makes more or less likely the existence of some fact that matters").

### G. Evidence Concerning Cook's Conduct With Respect to Warnings is Not Admissible to Support a Claim for Punitive Damages Based on a Design Defect.

Plaintiff also argues that her warning evidence is admissible because it is relevant to her claim for punitive damages, correctly pointing out that punitive damages may be awarded for claims involving failure to warn.  *See* Dkt. 9809 at 8-9.  But Plaintiff's premise *assumes* the existence of a viable underlying failure-to-warn claim.  If the underlying claim fails, the punitive damages claim based on it fails as well.  *See, e.g.*, *Lewis v. Meredith Corp.*, 667 S.E.2d 716, 719 (Ga. App. 2008) ("Under Georgia law, a plaintiff cannot recover punitive damages when the underlying tort claim fails.") (citing *Benefit Support, Inc. v. Hall County*, 637 S.E.2d 763 (2006)).  A plaintiff cannot base a claim for punitive damages on just any unrelated conduct to which the plaintiff may claim is wrongful; the conduct must be related to the claim on which the underlying compensatory award is based.  Plaintiff's own citations bear this out.  See

---

perform.  The inclusion of an affirmative defense in Cook's Answer to the Master Complaint of course does not mean that Cook asserts that affirmative defense in *every* MDL case, or in any *particular* MDL case.  For example, Cook's Answer to the Master Complaint asserts that plaintiffs' claims are barred by accord and satisfaction, that plaintiffs are not the real parties in interest, and that the statute of repose forecloses plaintiffs' claims, *see* Dkt. 8180 ¶¶ 23, 26, 34, but Cook obviously does not assert any of those defenses in the *Brand* case, and evidence that relates to them is not relevant.

*Weilbrenner v. Teva Pharmaceuticals USA , Inc.,* 696 F. Supp. 2d 1329, 1344 (M.D. Ga. 2010) (denying summary judgment on punitive damages based on evidence sufficient to deny summary judgment on failure-to-warn claim).

Here, Plaintiff no longer has an underlying failure-to-warn claim; the Court has dismissed it. *See* Dkt. 9696. Absent a legally viable underlying claim of failure to warn, evidence relating to failure to warn is inadmissible to support punitive damages. *See Wolff v. Middlebrooks*, 568 S.E.2d 88, 91 (2002) ("If the jury based its award of punitive damages on the underlying claim for which there could be no liability, there could likewise be no recovery for punitive damages.").

### H. Even Assuming Warning Evidence were Otherwise Admissible, the Only Warning Evidence that Could Be Relevant is Evidence Predating the Manufacture of Plaintiff's Celect Filter.

Finally, even assuming for the sake of argument that evidence of Cook's allegedly inadequate warnings were otherwise relevant, any such evidence would be admissible only if it relates to events that predate the November 27, 2008, manufacture of Plaintiff's Celect IVC filter.

The risk-benefit evaluation contemplated by the *Banks* decision necessarily looks to the state of the art at the time the product in question was designed and manufactured. *See, e.g., Banks*, 450 S.E.2d at 675 (holding relevant factor is "the state of the art at the time the product is manufactured"); *see also O'Brien v. Muskin Corp.*, 463 A.2d 298, 305 (N.J, 1983) (cited by Banks) ("The 'state-of-the-art' refers to the existing level of technological expertise and scientific knowledge relevant to a particular industry at the time a product is designed."); *Kelley v. Hedwin Corp.*, 308 Ga.App. 509, 707 S.E.2d 895 (Ga. App., 2011) ("The record contains other evidence of the utility of the design, which, among other things, was state of the art when designed…"). Thus, should the Court conclude that the efficacy of warnings or the avoidability

of danger has some bearing on the design of the product, the information concerning the warnings must have existed at the time the product was designed, or at the latest at the time it was manufactured.  Logically, information known or developed only after a product is designed cannot be a factor in determining whether it was defectively designed.

Here, Plaintiff Brand's Celect filter was manufactured on November 27, 2008.  Dkt. 9767 ¶ 3.  Therefore, should the Court reject Cook's arguments above and determine to admit some warnings evidence, the Court should limit that evidence to documents and events predating November 27, 2008.

## CONCLUSION

For these reasons, the Cook Defendants urge the Court to reject Plaintiff's argument and to exclude at trial any evidence concerning the claimed inadequacy of Cook's warnings and instructions for the Celect IVC filter.

Respectfully submitted,

Dated: January 4, 2019

/s/ Andrea Roberts Pierson
Andrea Roberts Pierson (# 18435-49)
Jessica Benson Cox (# 26259-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
Email:  andrea.pierson@faegrebd.com
Email:  jessica.cox@faegrebd.com

Charles Webber (MN # 215247)
Bruce Jones (MN # 179553)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-8719
Facsimile: (612) 766-1600
Email:  chuck.webber@faegrebd.com
Email:  bruce.jones@faegrebd.com

*Counsel for the Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

21

**CERTIFICATE OF SERVICE**

I hereby certify that on January 4, 2019, a copy of the foregoing **COOK DEFENDANTS' REPLY MEMORANDUM REGARDING PLAINTIFF'S ARGUMENT FOR ADMISSION OF FAILURE-TO-WARN EVIDENCE ON DESIGN DEFECT CLAIMS** was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.  Lead Counsel for Defendants will serve any non-CM/ECF registered parties.

/s/ Andrea Roberts Pierson