UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION _____ This Document Relates to: Tonya Brand, 1:14-cv-06018-RLY-TAB _____ | 1:14-ml-02570-RLY-TAB MDL No. 2570 |

### ENTRY ON THE COOK DEFENDANTS' MOTION TO EXCLUDE EXPERT OPINIONS OF DR. ROBERT McMEEKING

Plaintiff, Tonya Brand, offers the testimony of Dr. Robert McMeeking, who is a professor of mechanical engineering and materials science at the University of California, Santa Barbara. He opines that the Cook Defendants' IVC filters, including the Celect IVC filter at issue in this case, have deficient designs that lead to instability, tilting, perforation of the IVC, and fatigue failure. (Expert Report at 69 ("It is my opinion that both the Tulip and the Celect filters have deficient designs that make it probable that they will suffer tilting, perforation of the vena cava wall, and fracture caused by fatigue due to expansion and contraction of the vena cava diameter.")). In addition, he opines that the Tulip filter and the addition of primary leg extenders to the Celect filter were two independent safer alternative designs. (*Id.* at 1). And he opines it is more probable than not that the deficient design of the Celect caused Plaintiff's filter to perforate and

1

fracture.  (*See* Filing No. 8655-2, Deposition of Dr. McMeeking at 24).  The Cook Defendants move to exclude[1] his testimony because his opinions are unreliable and will not assist the jury in determining a fact in issue.  For the reasons explained below, the court **DENIES** the Motion.

I.   **Standard for Expert Testimony**

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence and the principles announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).  Specifically, (1) the expert must be qualified by knowledge, skill, experience, training, or education; (2) the proposed expert testimony must assist the trier of fact in determining a relevant fact at issue in the case; (3) the expert's testimony must be based on sufficient facts or data and reliable principles and methods; and (4) the expert must have reliably applied the principles and methods to the facts of the case.  *Lees v. Carthage Coll.*, 714 F.3d 516, 521-22 (7th Cir. 2013) (citations omitted); *see also Lapsley v. Xtek, Inc.*, 689 F.3d 802, 809 (7th Cir. 2012) ("Rule 702 requires that expert testimony be relevant, reliable, and have a factual basis— requirements that must be met before the jury is allowed to hear and perhaps be persuaded by the expert testimony.").  As the proponent of the expert testimony at issue,

---

[1] Some of the arguments raised by Cook were rejected in the court's Entry on the Cook Defendants' Motion to Exclude Expert Opinions of Dr. Robert McMeeking in the *Hill* bellwether.  (Filing No. 6971).  For example, Cook challenges Dr. McMeeking's qualifications and the fact that his opinions have never been peer-reviewed.  The court declines to revisit the court's previous rulings.

the plaintiff has the burden of demonstrating the expert's admissibility. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

**II.    Discussion**

    **A.    Fracture Analysis**

Cook challenges Dr. McMeeking's fatigue analysis because it is based on worst-case assumptions and "not real world conditions, or even real world <u>probabilities</u>." (Filing No. 8654, Motion at 4) (emphasis in original). For example, he measured stress levels 2 millimeters below the cap of the filter; he assumed Valsalva (compression of the IVC during events such as coughing) reduces the diameter of the IVC by 80%; (3) he assumed Valsalva will compress the IVC filter the same amount with a filter and without a filter; (4) he assumed that there is a 40-millimeter span between the legs of the IVC filter; and (5) he assumed two IVC sizes of 15 millimeters and 30 millimeters wide. (*See* Filing No. 8655-2, Deposition of Dr. McMeeking at 111-12, 143-49).

Dr. McMeeking, with the assistance of Dr. Attila Kossa, ran multiple computerized finite element analyses ("FEA") of the Celect filter to confirm his mathematical calculations. (Expert Report at 77-83; McMeeking Dep. at 236-37). He conceded, however, that different assumptions—at least for a few—were built into the FEA simulations than were built into the mathematical calculations. (McMeeking Dep. at 237-245).

Georgia law imposes a duty on a manufacturer to make products reasonably safe for intended or foreseeable uses. *Chrysler Corp. v. Batten*, 450 S.E.2d 208, 211 (Ga. 1994). Yet, Cook argues, Dr. McMeeking testified he does not know whether there is

anyone, including Plaintiff, for whom all five of these worst-case scenarios exist. (McMeeking Dep. at 149, 152-53). Thus, according to Cook, his fracture opinions are not based on "real world" foreseeable conditions and are, therefore, irrelevant under Georgia law. (Motion at 6 ("Dr. McMeeking's opinion is essentially that the Celect probably would not survive in idiosyncratic conditions. That is irrelevant and unhelpful to the jury in deciding the issue of defect in this case.")).

As an initial matter, Dr. McMeeking opined that the occurrence of the worst-case conditions would not "be very rare." (*Id.* at 84 ("Q: Do you know how often the worst-case conditions that you're talking about that lead you to that conclusion actually occur in human beings? A: No, I do not. Q: You would expect it to be very rare, right? A: I would expect it not to be very rare . . . .")). He used worst-case assumptions "[b]ecause that's standard methodology for carrying out engineering assessments and engineering design." (McMeeking Dep. at 276). He explained "it is very difficult to assess how often worst-case conditions will arise, and in those circumstances, as is often advised in guidance documents for engineers . . . erring on the side of conservativeness is the appropriate thing to do." (*Id.* at 280-81; *see also id.* at 280 ("I know of no source of data on how often the worst-case conditions would arise for filters.")). In addition, Dr. McMeeking testified that in his non-litigation consulting work for medical device companies, he almost always analyzes worst-case scenarios.[2] (*Id.* at 18, 182, 277). Most

---

[2] Cook's expert, Dr. Scott Robertson, agreed that it is important to consider the worst-case respiratory and diaphragmatic movements, including Valsalva, into account when designing an IVC filter. (Filing No. 9185-4, Deposition of Scott Robertson in *Hill* at 391-92).

4

importantly, Dr. McMeeking testified he performed a worst-case analysis on the Celect filter because in 1999, the FDA directed medical device companies to perform worst-case safety analyses of IVC filters before bringing them to market. (*Id.* at 276-78, 282-85).

In the end, Cook's arguments about the correctness of the assumptions Dr. McMeeking used in his worst-case analysis or FEA calculations "are really about the correctness of his conclusions, not the reliability of his methodology." *See In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*, 14-cv-5696, 2017 WL 1196990, at *22 (N.D. Ill. March 31, 2017) (citing *Manpower, Inc. v. Ins. Co. of Penn.*, 732 F.3d 796, 808 (7th Cir. 2013) ("[A]rguments about how the selection of data inputs affect the merits of the conclusions produced by an accepted methodology should normally be left to the jury.")). The court therefore finds Dr. McMeeking's fracture analysis is relevant and will assist the jury because it is a reliable consideration for a design defect analysis.

### B.     Safer Alternative Design

Cook next challenges Dr. McMeeking's safer-alternative design opinions, arguing they are "prototypical 'junk science.'" (Filing No. 9356, Reply at 7). Cook claims he performed "no testing—physical or mathematical—to determine whether his proposed alternative designs would actually: 1) perforate or fracture less often, and 2) otherwise work as well as the Celect." (*Id.* at 6).

With respect to the leg extenders, Dr. McMeeking "did some mathematical calculations for some of [the alternative designs], such as the extended leg, for example, in terms of the pressure that it would apply to the wall of the vena cava compared to a leg

5

without an extension." (*Id.* at 182-83). In addition, he relied on Cook internal documents, bench tests, animal tests, and limited clinical experience with the Celect Platinum, which added such primary leg extenders. (Expert Report at 59-64).

Cook faults Dr. McMeeking because he could not quantify by how much perforation limiters would have reduced the probability of fatigue *fracture*. (*Id.* at 225 ("Q: Do you know how much it would have limited the probability of fatigue fracture? A: Other than it being substantial, I don't have an exact figure."))). Based on his mathematical calculations regarding the pressure on the IVC with and without a leg extender, he "assessed that it would perforate to a less significant extent"; therefore, he "made the assessment that the fracture rate would be reduced, and to the extent that the other perforation limiters worked successfully, they would also reduce the rate at which fatigue fracture occurs." (*Id.* at 183).

Regarding the Tulip filter, Dr. McMeeking offers the opinion that the Tulip's "petals" act as "perforation limiters." (Expert Report at 4-5). "Since perforation increases the likelihood of fatigue failure in Cook filters, the Celect filter will probably have higher overall rates of failure by fatigue fracture." (*Id.* at 5). His opinions rest on Cook's own documents and very specific mathematical calculations. (*Id.* at 5-6, 49-51, 53-59).

In the context of an engineer's evaluation of safer alternative design, mathematical calculations like those Dr. McMeeking performed are an acceptable form of test under Rule 702. *Lapsley*, 689 F.3d at 815 (noting in the context of an engineer's safer alternative design analysis, mathematical models are "a perfectly acceptable form of test"

6

under Rule 702). The fact that he performed no mathematical tests to determine fatigue fracture does not render his opinion unreliable, as "Rule 702 and *Daubert* do not require that an expert conduct 'testing' or 'analysis' in support of each and every opinion being offered." *Bonilla v. Rexon Indus. Corp.*, No. 1:13-cv-01830-SEB-MJD, 2015 WL 10792026, at * 8 (S.D. Ind. Aug. 19, 2015). Indeed, testing is not required so long as the expert "adhere[s] to the same standards of intellectual rigor that are demanded in their professional work. This objective can be accomplished in a number of different ways, including through the review of experimental, statistical, or other scientific data generated by others in the field." *Cummins v. Lyle Indus.*, 93 F.3d 362, 369 (7th Cir. 1996).

Dr. McMeeking's alternative design analysis meets this standard. In his consulting work for medical device companies, Dr. McMeeking does the same type of mathematical calculations he did for this case, and he critically assesses the company's bench tests and FEA results. (Filing No. 9185, Deposition of Dr. McMeeking in *Hill*, at 301-03 (when consulting, Dr. McMeeking does not perform his own bench testing of FEA)). And here, Dr. McMeeking bases his safer alternative design changes[3] on his mathematical calculations and on his review of Cook's testing data. (*Id.* at 64-65, 67-68, 281-82). The court therefore finds Dr. McMeeking's safer alternative design opinion is sufficiently reliable under Rule 702.

---

[3] Notably, the use of perforation limiters as a design is nothing new; it has been on the market for years and was eventually employed by Cook. (Robertson *Hill* Dep. at 367-370; McMeeking *Hill* Dep. at 67, 294 (testifying Cook considered perforation limiters years before the Celect Platinum was cleared by the FDA).

### III. Conclusion

The court finds Dr. McMeeking's design defect opinions are relevant, reliable, and will be helpful to the jury in determining whether Cook is liable. Accordingly, the Cook Defendants' Motion to Exclude Expert Opinions of Robert McMeeking, Ph.D. (Filing No. 8648) is **DENIED**.

**SO ORDERED** this 7th day of January 2019.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.