**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

_____

IN RE COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND      Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION      MDL No. 2570

_____

This Document Relates to 14 Bird's Nest Cases:

*Annette Sales-Orr*, 1:16-cv-02636
*Mary Thomas (GA)*, 1:16-cv-03521
*Elizabeth Duffy*, 1:17-cv-00254
*Ivan Ortiz*, 1:17-cv-01802
*Herman Purvis*, 1:17-cv-02556
*Marie Wilson*, 1:17-cv-03337
*Ernest Muhammad*, 1:17-cv-03542
*Dorothy Stroech*, 1:17-cv-03543
*Juanita Heard*, 1:17-cv-04592
*Jimmie Nixon*, 1:17-cv-04693
*Brent Fichtner*, 1:18-cv-00286
*Henry Austin*, 1:18-cv-01313
*Robert Davis*, 1:18-cv-01375
*William Wendt*, 1:18-cv-03283

_____

**COOK DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS
<u>BASED ON FEDERAL PREEMPTION IN BIRD'S NEST FILTER CASES</u>**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................iii

INTRODUCTION .................................................................................................................. 1

ARGUMENT ......................................................................................................................... 2

    I.    The complaint should be dismissed because the plaintiffs have failed to plead a plausible claim—indeed, any claim—against Cook relating to the Bird's Nest filter. ...................................................................................................2

    II.    The plaintiffs should not be permitted to replead because their proposed amended complaint does not and cannot cure the problems with their master complaint.............................................................................................................3

        A.    Plaintiffs' design defect claims are preempted and should be dismissed with prejudice................................................................... 5

        B.    Plaintiffs' manufacturing defect claims are preempted and should be dismissed with prejudice................................................................... 6

        C.    Plaintiffs' warning claims are preempted and should be dismissed with prejudice................................................................................ 7

            1.    Plaintiffs' misbranding-based warning claims are categorically preempted and should be dismissed with prejudice.......................................................................................... 8

            2.    Plaintiffs' warning claims based on Cook's alleged failure to report adverse events are also categorically preempted and should be dismissed with prejudice. ........................................... 11

                a.    Plaintiffs do not allege facts that would allow the Court to conclude reasonably that Cook failed to make adverse-event reports with respect to the Bird's Nest. ........................................................................11

                b.    Plaintiffs' failure-to-report claims are categorically preempted as an attempt to privately enforce federal law..............................................................................12

                c.    Plaintiffs have failed to identify a parallel state-law duty to warn the FDA save for California. ........................13

        D.    Plaintiffs' warranty claims are preempted and should be dismissed with prejudice................................................................ 19

            1.    Plaintiffs' implied warranty claims are preempted and should be dismissed with prejudice. ........................... 19

            2.    Plaintiffs' express warranty claims are preempted and should be dismissed with prejudice. ........................... 22

i

E.   Plaintiffs' negligence per se claims are preempted and should be dismissed with prejudice.............................................................................. 24

F.   Plaintiffs' consumer protection claims are preempted and should be dismissed with prejudice.............................................................................. 28

G.   Plaintiffs' remaining claims for punitive damages should be dismissed with prejudice as derivative of Plaintiffs' other claims. .......... 30

III.   The Court should not allow the plaintiffs to conduct further discovery before ruling on the question of preemption. ...................................................................30

CONCLUSION..................................................................................................................... 31

CERTIFICATE OF SERVICE ............................................................................................. 32

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aaron v. Medtronic, Inc.*,
   209 F. Supp. 3d 994 (S.D. Ohio 2016), *appeal dismissed* .................................................15, 23

*Anguiano v. E.I. DuPont de Nemours & Co.*,
   808 F. Supp. 719 (D. Ariz. 1992), *aff'd*, 44 F.3d 806 (9th Cir.1995).....................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................................4, 21

*Babayev v. Medtronic, Inc.*,
   228 F. Supp. 3d 192 (E.D.N.Y. 2017), *appeal dismissed* .......................................................21

*Baker v. Smith & Nephew Richards, Inc.*,
   No. 95-58737, 1999 WL 811334 (Tex. Dist. Ct. June 7, 1999) *aff'd sub nom.*,
   *McMahon v. Smith & Nephew Richards, Inc.*, No. 14-99-00616-CV ...............................25, 26

*In re Bard IVC Filters Prods. Liab. Litig.*,
   No. CV-16-00474-PHX-DGC, 2017 WL 5625548 (D. Ariz. Nov. 22, 2017).........................27

*Bausch v. Stryker Corp.*,
   630 F.3d 546 (7th Cir. 2010) ......................................................................................3, 4, 6, 30

*Beavers-Gabriel v. Medtronic, Inc.*,
   15 F. Supp. 3d 1021 (D. Haw. 2014) ....................................................................................30

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................................4, 12

*Blinn v. Smith & Nephew Richards, Inc.*,
   55 F. Supp. 2d 1353 (M.D. Fla. 1999)...................................................................................24

*Boatmen's Trust Co. v. St. Paul Fire & Marine Ins. Co.*,
   995 F. Supp. 956 (Ark. Dist. Ct. 1998)............................................................................18, 19

*Bray v. Marriott Int'l*,
   158 F. Supp. 3d 441 (D. Md. 2016).......................................................................................28

*Buckman Co. v. Plaintiffs' Legal Committee*,
   531 U.S. 341 (2001).................................................................3, 4, 7, 11, 12, 13, 16, 17, 27

*Burrell v. Bayer Corp.*,
   260 F. Supp. 3d 485 (W.D.N.C. 2017), *appeal pending* .......................................................21

*Busby v. Quail Creek Golf & Country Club*,
   885 P.2d 1326 (Okla. 1994)..............................................................................28

*Byers v. Standard Concrete Prods. Co.*,
   151 S.E.2d 38 (N.C. 1966)..........................................................................27, 28

*Caplinger v. Medtronic, Inc.*,
   921 F. Supp. 2d 1206 (W.D. Okla. 2013), *aff'd,* 784 F.3d 1335 (10th Cir. 2015) .................22

*Casey v. Russell*,
   188 Cal. Rptr. 18 (Cal. Ct. App. 1982) ...................................................................26

*Cent. Anesthesia Assocs. P.C. v. Worthy*,
   325 S.E.2d 819 (Ga. Ct. App. 1984), *aff'd,* 333 S.E.2d 829 (Ga. 1985) ...............................28

*Cent. Okla. Pipeline, Inc. v. Hawk Field Servs., LLC*,
   400 S.W.3d 701 (Ark. 2012)........................................................................25, 26

*Coleman v. Medtronic, Inc.*,
   167 Cal. Rptr. 3d 300 (Cal. Ct. App. 2014), *dismissed, remanded, and ordered
   published sub nom.*, *Coleman v. Medtronic*, 331 P.3d 178 (Cal. 2014) ...........................13, 18

*Conklin v. Medtronic, Inc.*,
   No. CV-17-0322-PR, --- P.3d ---, 2018 WL 6613311 (Ariz. Dec. 18, 2018)....................17, 18

*In re Cook Med., Inc., IVC Filters Mktg., Sales Practices & Prods. Liab. Litig.*,
   No. 1:14-CV-06016-RLY-TAB, 2017 WL 6816861 (S.D. Ind. May 17, 2017)....................24

*Costine v. BAC Home Loans*,
   946 F. Supp. 2d 1224 (N.D. Ala. 2013)...................................................................27

*De La Paz v. Bayer Healthcare LLC*,
   159 F. Supp. 3d 1085 (N.D. Cal. 2016) ..................................................................28

*Factors, Etc., Inc. v. Pro Arts Inc.*,
   652 F.2d 278 (2d Cir. 1981)...............................................................................16

*Felger v. Smith & Nephew, Inc.*,
   222 F. Supp. 3d 746 (D. Alaska 2016) ..............................................................29, 30

*Friedlander v. HMS–PEP Prods., Inc.*,
   485 S.E.2d 240 (Ga. Ct. App. 1997)......................................................................27

*Garcia v. City of Chicago*,
   24 F.3d 966 (7th Cir. 1994) .................................................................................3

*Haynes v. Cyberonics, Inc.*,
   No. 1:09-CV-2700-JEC, 2011 WL 3903238 (N.D. Ga. Sept. 6, 2011)......................22, 23, 24

*Horowitz v. Stryker Corp.*,
   613 F. Supp. 2d 271 (E.D.N.Y. 2009) ...................................................................22

*Houston v. Medtronic, Inc.*,
   957 F. Supp. 2d 1166 (C.D. Cal. 2013) .................................................................28

*Howard v. Zimmer, Inc.*,
   299 P.3d 463 (Okla. 2013)....................................................................................13

*Hughes v. Boston Sci. Corp.*,
   631 F.3d 762 (5th Cir. 2011) ................................................................................15

*Johnson v. Enriquez*,
   460 S.W.3d 669 (Tex. Ct. App. – El Paso 2015)..................................................28

*Joseph v. Bozzuto Mgmt. Co.*,
   918 A.2d 1230 (Md. Ct. App. 2007).....................................................................26

*Kapps v. Biosense Webster, Inc.*,
   813 F. Supp. 2d 1128 (D. Minn. 2011)............................................................26, 27

*Kubicki v. Medtronic, Inc.*,
   293 F. Supp. 3d 129 (D.D.C. 2018) ..................................................................14, 15

*Lexington Ins. Co. v. Rugg & Knopp, Inc.*,
   165 F.3d 1087 (7th Cir. 1999) ..........................................................................15, 16

*Lockhart v. Loosen*,
   943 P.2d 1074 (Okla. 1997) ..................................................................................26

*Marmol v. St. Jude Med. Ctr.*,
   132 F. Supp. 3d 1359 (M.D. Fla. 2015).................................................................14

*Marsh v. Genentech, Inc.*,
   693 F.3d 546 (6th Cir. 2012) ............................................................................13, 16

*Martin v. Herzog*,
   126 N.E. 814 (N.Y. 1920)......................................................................................26

*McAfee v. Medtronic, Inc.*,
   No. 1:12-CV-417 RLM, 2015 WL 3617755 (N.D. Ind. June 4, 2015) ........4, 14, 21

*McClelland v. Medtronic, Inc.*,
   No. 6:11–CV–1444–ORL–36, 2012 WL 5077401 (M.D. Fla. Sept. 27, 2012) .....24

*McGookin v. Guidant Corp.*,
   942 N.E.2d 831 (Ind. Ct. App. 2011)....................................................................10

*McMullen v. Medtronic, Inc.*,
 421 F.3d 482 (7th Cir. 2005) ........................................................................8, 9, 10, 11, 14

*Medina v. Michelin N. Am., Inc.*,
 No. 05-16-00794-CV, 2018 WL 580263 (Tex. Ct. App. – Dallas Jan. 29, 2018)...................19

*In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*,
 592 F. Supp. 2d 1147 (D. Minn. 2009)..........................................................................23, 28

*In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*,
 623 F.3d 1200 (8th Cir. 2010) ..................................................................3, 4, 12, 13, 16, 23

*Medtronic, Inc. v. Lohr*,
 518 U.S. 470 (1996)..............................................................................................3, 4, 14, 25

*Metz v. Wyeth LLC*,
 872 F. Supp. 2d 1335 (M.D. Fla. Sept. 27, 2012)...............................................................24

*Miller v. E.I. DuPont de Nemours & Co.*,
 880 F. Supp. 474 (S.D. Miss. 1994)...................................................................................25

*Mink v. Smith & Nephew, Inc.*,
 860 F.3d 1319 (11th Cir. 2017) .............................................................................12, 13, 16

*Mitaro v. Medtronic, Inc.*,
 23 Misc.3d 1122(A), (N.Y. Sup. Ct. 2009), *aff'd,* 900 N.Y.S.2d 899 (N.Y. App.
 Div. 2010) ........................................................................................................................27

*Mitchell v. Collagen Corp.*,
 126 F.3d 902 (7th Cir. 1997) .........................................................................5, 19, 22, 23, 29

*Mohr v. DaimlerChrysler Corp.*,
 No. W2006–01382–COA–R3–CV, 2008 WL 4613584 (Tenn. Ct. App. Oct. 14,
 2008) ................................................................................................................................19

*Murray v. O & A Exp., Inc.*,
 630 S.W.2d 633 (Tex. 1982)...............................................................................................26

*Murthy v. N. Sinha Corp.*,
 644 So. 2d 983 (Fla. 1994)..................................................................................................24

*N.Y. Stock Exch., Inc. v. Sloan*,
 394 F. Supp. 1303 (S.D.N.Y. 1975)....................................................................................24

*New Haverford P'ship v. Stroot*,
 772 A.2d 792 (Del. 2001) ..................................................................................................28

*Noah v. Gen. Motors Corp.*,
    882 So. 2d 235 (Miss. Ct. App. 2004) ................................................................19

*Norabuena v. Medtronic, Inc.*,
    86 N.E.3d 1198 (Ill. App. Ct. 2017), *appeal dismissed* ..........................................14

*Osburn v. Danek Med., Inc.*,
    520 S.E.2d 88 (N.C. Ct. App. 1999), *aff'd*, 530 S.E.2d 54 (N.C. 2000) (per curiam)............27

*Papasan v. Allain*,
    478 U.S. 265 (1986).................................................................................................4

*Parker Bldg. Servs. Co. v. Lightsey ex rel. Lightsey*,
    925 So. 2d 927 (Ala. 2005)...................................................................................26

*Pearsall v. Medtronics, Inc.*,
    147 F. Supp. 3d 188 (E.D.N.Y. 2015) .................................................................18

*Quiroz v. Seventh Ave. Ctr.*,
    45 Cal. Rptr. 3d 222 (Cal. Ct. App. 2006) .........................................................28

*Rains v. Bend of the River*,
    124 S.W.3d 580 (Tenn. Ct. App. 2003) ..........................................................26, 28

*Riegel v. Medtronic, Inc.*,
    552 U.S. 312 (2008)...........................................................3, 4, 5, 6, 11, 22, 23

*Riley v. Cordis Corp.*,
    625 F. Supp. 2d 769 (D. Min. 2009).....................................................................27

*Rodriguez v. Am. Med. Sys., Inc.*,
    597 F. App'x 226 (5th Cir. 2014) .........................................................................29

*Sammons v. Ridgeway*,
    293 A.2d 547 (Del. 1972) ......................................................................................26

*Sampaio v. Atl.-Heydt, LLC*,
    294 F. Supp. 2d 466 (S.D.N.Y. 2003)..................................................................28

*Shannon v. Wilson*,
    947 S.W.2d 349 (Ark. 1997)................................................................................28

*Shaw v. Republic Drill Corp.*,
    810 F.2d 149 (7th Cir. 1987) (per curiam)..........................................................15

*Skye v. Maersk Line Corp.*,
    No. 11-21589-CIV, 2011 WL 4528305 (S.D. Fla. Sept. 28, 2011).......................28

*Smith v. DaimlerChrysler Corp.*,
No. CIV.A. 94C-12-002JEB, 2002 WL 31814534 (Del. Super. Ct. Nov. 20, 2002) .............19

*Spier v. Coloplast Corp.*,
121 F. Supp. 3d 809 (E.D. Tenn. 2015)...................................................................................22

*Steinberg v. Luedtke Trucking, Inc.*,
No. 4:17-CV-9, 2018 WL 3233341 (E.D. Tenn. July 2, 2018) .............................................25

*Stengel v. Medtronic Inc.*,
704 F.3d 1224 (9th Cir. 2013) (en banc) ..................................................................15, 16, 17

*Stengel v. Medtronic Inc.*,
676 F.3d 1159 (9th Cir. 2012) ........................................................................................16, 17

*In re Tenn. Valley Auth. Ash Spill Litig.*,
No. 3:09-CV-009, 2012 WL 3647704 (E.D. Tenn. Aug. 23, 2012).......................................25

*Todd v. Societe Bic, S.A.*,
21 F.3d 1402 (7th Cir. 1994) (en banc) ...........................................................................15, 16

*Turner v. Westhampton Ct., L.L.C.*,
903 So. 2d 82 (Ala. 2004).......................................................................................................19

*Williams ex rel. Raymond v. Wal-Mart Stores E., L.P.*,
99 So. 3d 112 (Miss. 2012).............................................................................................26, 28

*Williams v. Smith & Nephew, Inc.*,
123 F. Supp. 3d 733 (D. Md. 2015)............................................................................15, 21, 22

*Wolicki-Gables v. Doctors Same Day Surgery Ctr., Ltd.*,
216 So. 3d 665 (Fla. Dist. Ct. App. 2017), *cert. denied* .......................................................18

*Yosowitz v. Covidien LP*,
182 F. Supp. 3d 683 (S.D. Tex. 2016) ...................................................................................21

*Young v. Blytheville Sch. Dist.*,
425 S.W.3d 865 (Ark. Ct. App. 2013) ...................................................................................25

## STATUTES

21 U.S.C. § 337.....................................................................................................12, 18, 24

21 U.S.C. § 360k.............................................................................................3, 4, 5, 8, 11

## RULES

Fed. R. Civ. P. 8.................................................................................................................4

Fed. R. Civ. P. 9 ..........................................................................................................28

**REGULATIONS**

21 C.F.R. § 808.1 ........................................................................................................11

21 C.F.R. § 814.39 ....................................................................................................9, 10

21 C.F.R. § 814.80 ......................................................................................................29

**OTHER AUTHORITIES**

65 C.J.S. *Negligence* § 135 (Westlaw 2019) .............................................................28

5 CHARLES WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216
    (3d ed. 2004) ........................................................................................................12

RESTATEMENT (SECOND) OF TORTS § 286 (1965) .......................................................26

RESTATEMENT (THIRD) OF TORTS: PRODS. LIAB. § 6 (1998) .................................17, 18

**INTRODUCTION**

All of the plaintiffs' claims are preempted. Unlike the Tulip and Celect, the Bird's Nest filter went through what the Supreme Court has characterized as a "rigorous" premarket approval process. As such, the Bird's Nest's design, manufacture, and labelling have all been specifically approved by the Food and Drug Administration. The consequence of this approval is that, under governing Supreme Court and Seventh Circuit precedent, to assert a valid claim against the Cook Defendants, the plaintiffs must allege, at the very least, a plausible (1) violation of a federal requirement and (2) a state-law claim that parallels it. They haven't done so; indeed, they can't do so.

Plaintiffs make no argument at all defending their design and manufacturing defect claims. As for their failure-to-warn claims, they are of two varieties, and both are preempted. The first variety is based on the premise that Cook failed to update its labeling and so ran afoul of the federal misbranding laws. But the Seventh Circuit has already held that a device maker has no unilateral obligation under federal law to supplement an FDA-approved label. Plaintiff's second variety of warning claim is based on the premise that Cook failed to properly report adverse events relating to its filter. But besides being impliedly preempted as an improper private attempt to enforce FDA reporting regulations, Plaintiffs have identified only one state that has expressly recognized a parallel state-law duty to warn the FDA—California; the other states whose laws are alleged to be at issue have not. Finally, as for the remainder of the plaintiffs' claims (breach of warranty, negligence per se, and consumer fraud), besides invading the government's exclusive role in enforcing the federal medical device laws, they all are preempted as attempts to hold Cook liable, not for violating federal law, but for *complying* with it. That kind of claim cannot survive no matter what

its label is. And because no amended pleading or additional discovery will change any of this, the plaintiffs' complaints should be dismissed with prejudice.[1]

## ARGUMENT

**I.      The complaint should be dismissed because the plaintiffs have failed to plead a plausible claim—indeed, any claim—against Cook relating to the Bird's Nest filter.**

Plaintiffs do not make a single allegation in their master complaint as to the Bird's Nest filter. Not even one. Indeed, in the very first paragraph, they make clear that their allegations, claims, and theories all relate to the Tulip and Celect:

> The allegations, claims and theories of recovery relate to the Defendants' design, manufacture, sale, testing, marketing, labeling, advertising, promotion and/or distribution of its unsafe medical devices known as [Gunther Tulip Mreye, Gunther Tulip Vena Cava Filter, Cook Celect Vena Cava Filter, and Cook Celect Platinum] hereinafter "Cook IVC Filters" or "Cook's IVC Filters."

Dkt. 213, Master Compl. ¶ 1 (brackets in original); *see also id*. ¶ 22 ("Cook's products at issue in this matter include the Gunther Tulip Mreye, Gunther Tulip Vena Cava Filter, Cook Celect Vena Cava Filter, and the Cook Celect Platinum . . . .").

And while the short form complaints at least mention that the plaintiffs received the Bird's Nest, those complaints contain no specific allegations about the filter; the only allegations of any substance are in the master complaint, and they all relate to the Tulip and Celect.

It should go without saying that to plead a plausible claim for *product* liability, a plaintiff, at the very least, must plead a claim as to the *product* at issue. The plaintiffs didn't do that here, and they don't contend otherwise. Their complaints should be dismissed for this reason alone.

---

[1] Plaintiffs argue the Court should hold off on ruling on Cook's motion and let their home districts address preemption instead. Not only would that delay indefinitely resolution of a critical threshold issue in these cases, and potentially subject Cook to conflicting rulings (something the MDL is designed to avoid), it ignores the fact that these plaintiffs *chose* to file their cases in the Southern District of Indiana. These cases weren't transferred here; Plaintiffs directly filed them here. Having voluntarily subjected themselves to the jurisdiction of this Court, they can hardly claim now (credibly, anyway) that the Court shouldn't exercise that jurisdiction by resolving this motion.

**II.     The plaintiffs should not be permitted to replead because their proposed amended complaint does not and cannot cure the problems with their master complaint.**

Cook acknowledges that a plaintiff usually should get a chance to replead when his or her complaint is dismissed for failure to state claim. *See Bausch v. Stryker Corp.,* 630 F.3d 546, 562 (7th Cir. 2010). The problem with allowing the plaintiffs an opportunity to replead here, however, is that their proposed amended complaint *also* fails to state a claim on which relief can be granted, and Plaintiffs can't even hope to replead a claim that does. "A district court does not abuse its discretion in denying leave to amend if the proposed repleading would be futile . . . ." *Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994). And here it would be futile, because all of Plaintiffs' claims are preempted by federal law. *See id.* ("[F]utile repleadings include . . . failing to state a valid theory of liability and the inability to survive a motion to dismiss." (internal citation and punctuation omitted)).

As a general matter, a State may not impose with respect to a medical device any "requirement" that is "different from" or "in addition to" any "requirement" imposed by federal law. 21 U.S.C. § 360k(a). In applying the Supreme Court cases that have interpreted this language, and in particular *Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996); *Buckman Co. v. Plaintiffs' Legal Committee,* 531 U.S. 341 (2001); and *Riegel v. Medtronic, Inc.,* 552 U.S. 312 (2008), the Seventh Circuit has held that "[m]edical device manufacturers who subject their Class III devices to the rigorous premarket approval [PMA] process," as Cook did with the Bird's Nest, "are protected by federal law from civil liability so long as they *comply* with federal law," but not necessarily when they commit a "*violation* of federal law." *Bausch*, 630 F.3d at 550 (emphasis in original). This creates a "narrow gap" through which a plaintiff's state-law claim must fit if it is to escape preemption. *Bausch*, 630 at 554 (quoting *In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010)). The plaintiff must be suing for conduct that *violates* the

3

Medical Device Amendments to the Food, Drug, and Cosmetic Act (or else his or her claim is expressly preempted by Section 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA (as such a claim would be impliedly preempted). *Sprint Fidelis*, 623 F.3d at 1204.

"While [a plaintiff] isn't required to allege a violation of a 'concrete, devise-specific' federal regulation to avoid preemption at this stage of the proceedings, *Bausch v. Stryker Corp.,* 630 F.3d at 554–556, Federal Rule of Civil Procedure 8(a)(2) 'demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *McAfee v. Medtronic, Inc.*, No. 1:12-CV-417 RLM, 2015 WL 3617755, at *6 (N.D. Ind. June 4, 2015) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)), *reconsidered on other grounds*, 2016 WL 2588807 (May 5, 2016). "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (internal citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570) (internal citation omitted). In addition, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain,* 478 U.S. 265, 286 (1986). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

Under this standard, whether looking at the current master complaint or the proposed amended short form complaint, Plaintiffs do not allege claims that squeeze through the "narrow gap" left by the Supreme Court's decisions in *Lohr*, *Buckman*, and *Riegel*.

A.  **Plaintiffs' design defect claims are preempted and should be dismissed with prejudice.**

"Approval by the FDA constitutes approval of the product's design, testing, intended use, manufacturing methods, performance standards and labeling. The FDA's determination is specific to the product." *Mitchell v. Collagen Corp.*, 126 F.3d 902, 913 (7th Cir. 1997). Therefore, "[a] . . . judgment premised on a contrary determination . . . would constitute a requirement 'different from, or in addition to,' the standard required by federal authority." *Id.* (quoting 21 U.S.C. § 360k(a)).

Nowhere in their master complaint are we told in what way the Bird's Nest deviated from federal standards governing the product's design; indeed, Plaintiffs do not even mouth the words, "the Bird's Nest violates federal design standards." And their proposed amended complaint doesn't add anything to the allegations that they *have* made on design defect; its allegations focus solely on the *statements* Cook made (or allegedly failed to make) about the Bird's Nest, and not on the product's design. *See* Dkt. 9780-1, Proposed Am. Short Form Compl., Ex. A. As pled, then, their design defect claim can only be taken to allege that the Bird's Nest is defectively designed *notwithstanding* its adherence to federal design standards. This is the very type of claim that is preempted under federal law. *See Riegel*, 552 U.S. at 330.

Apparently recognizing this, Plaintiffs make no argument at all that their design defect claims should not be dismissed as preempted. None. Nor do they cite a single case where a design defect claim regarding a PMA device has been found to survive preemption. Their response is limited to their claims for (1) failure to warn, (2) breach of warranty, (3) negligence per se (which is not really an independent claim at all, as will be discussed later), and (4) state consumer protection violations. *See* Dkt. 9780, Pls.' Resp. pp. 10-25. This is consistent with Plaintiffs' decision to

make additional allegations as to only these claims in their proposed amended short form com-

plaint. *See* Dkt. 9780-1, Proposed Am. Short Form Compl., Ex. A.

So at the very least, even if Plaintiffs are allowed to replead in other respects, they should

not be allowed to replead a claim for design defect, and Counts II (Strict Products Liability –

Design Defect) and III (Negligence) of their master complaint should be dismissed with prejudice

accordingly.

### B. Plaintiffs' manufacturing defect claims are preempted and should be dismissed with prejudice.

Plaintiffs likewise make no argument that their manufacturing defect claims are not

preempted. Again—*none*. And indeed nowhere in their master complaint do they allege facts that

would allow the Court to reasonably conclude that Cook violated federal manufacturing standards

with respect to the Bird's Nest filters they received. *Compare Bausch*, 630 F.3d at 558-559 (Plain-

tiff alleged, among other things, that "[s]ix days before [her] surgery, . . . the FDA issued a letter

to defendants . . . warning that the Trident was 'adulterated due to manufacturing methods . . . not

in conformity with industry and regulatory standards.' A device, bearing the same catalogue num-

ber as the device allegedly not in compliance with regulations, was then implanted in Bausch's

body the next week. The device in Bausch's body failed and the same device was later recalled."

(quoting plaintiff's original complaint)). At best for them, they allege that their filters were defec-

tively manufactured *in spite of* Cook's compliance with federal law, and, once again, that kind of

claim just cannot survive federal preemption analysis. *See Riegel*, 552 U.S. at 330.

What's more, like with their design defect claims, Plaintiffs make no effort to shore up

their manufacturing defect claims in their proposed amended complaint. *See* Dkt. 9780-1, Pro-

posed Am. Short Form Compl., Ex. A. Just like the plaintiffs in the bellwether cases of *Hill*, *Gage*,

and *Brand*, the plaintiffs here have effectively abandoned their claims of manufacturing defect.

Therefore, as with their design defect claims, even if Plaintiffs are allowed to replead in part, they should not be allowed to replead in whole, and to attempt to restate a claim for manufacturing defect. To the extent Count III (Negligence) alleges such a claim, it should be dismissed with prejudice.

**C.   Plaintiffs' warning claims are preempted and should be dismissed with prejudice.**

Plaintiffs pin their warning claims on two sets of federal laws: (1) the laws against "misbranding" and (2) the laws governing post-sale reports of "adverse events." *See* 9780, Pls.' Resp. pp. 10-18. Both types of warning claims are categorically preempted for a PMA device like the Birds Nest.

As to Plaintiffs' misbranding-based warning claims, the Seventh Circuit has already made clear that there is no federal requirement to update or supplement a medical device's FDA-approved labelling. Without such a requirement, a device manufacturer cannot be in violation of the federal laws against misbranding for *not* updating its label. And without a violation of federal law, Plaintiffs cannot state a failure-to-warn claim that is not preempted.

As for Plaintiffs' warning claims based on Cook's alleged failure to report adverse events, in the first place, Plaintiffs claim only that they "can" sufficiently allege such a claim as to the Bird's Nest, not that they *have*. Dkt. 9780, Pls.' Resp. 16. In the second, this type of claim is nothing more than an attempt to enforce FDA regulations, not state law, and under *Buckman*, such a claim is impliedly preempted. And in the third place, at best for Plaintiffs, these claims can survive only to the extent applicable state law recognizes a "parallel" duty to warn the Food and Drug Administration about potential issues with a medical device, and Plaintiffs have identified only one state (out of the 13 whose laws they say are at issue here) that has recognized such a duty: California. Therefore, at the very most, only the plaintiff whose claims are plausibly governed by the substantive law of this single state should be allowed to replead his warnings claims (Nixon),

7

and then *only* to the extent his claims are based on an alleged failure to report adverse events to the FDA; for again, his misbranding-based warning claims are categorically preempted.

> **1.   Plaintiffs' misbranding-based warning claims are categorically preempted and should be dismissed with prejudice.**

Cook does not understand the plaintiffs to be attacking directly the Bird's Nest's warnings as of the time those warnings were originally approved by the FDA; in other words, those original warnings are not what plaintiffs say made the filter "misbranded." If that were the foundation of Plaintiffs' misbranding-based warnings claims, it would amount to nothing less than a foursquare challenge to the adequacy of federal law, which, as even the plaintiffs' brief seems to acknowledge, would be preempted. "A claim that a manufacturer failed to provide an adequate warning at the time of sale would be based on the assertion that the manufacturer should have provided a different warning than the one approved by the FDA. Such a state-law claim would impose a requirement that was different from, or in addition to, the applicable federal requirements and would be preempted." *McMullen v. Medtronic, Inc.*, 421 F.3d 482, 488 (7th Cir. 2005).

What Plaintiffs are doing instead is attacking Cook's FDA-approved warnings *indirectly*, by claiming the Bird's Nest *became* misbranded when Cook did not unilaterally "supplement" or "update" the original warnings based on information Cook acquired after the PMA process. Bearing in mind that, for there to be a valid parallel state-law claim, the claim must be based on a violation of a federal "requirement," 21 U.S.C. § 360k(a)(1); *McMullen*, 421 F.3d at 487, the question becomes this: is a medical device manufacturer *required* to supplement, unilaterally, a device's warnings based on new information it receives about the product after it has been approved by the FDA? The answer is clearly no.

As Plaintiffs themselves say several times, Cook was "permitted" to change unilaterally the Bird's Nest's warnings, and then only to a certain extent. Dkt. 9780, Pls.' Resp. pp. 10-11; *see*

8

*also* 21 C.F.R. § 814.39(a)(2) (generally requiring the manufacturer to obtain FDA approval "before" making any "[l]abeling changes"). The regulation governing unilateral labeling supplements uses this very word—"permitted":

> (d)(1) After FDA approves a PMA, any change described in paragraph (d)(2) of this section to reflect newly acquired information that enhances the safety of the device or the safety in the use of the device *may* be placed into effect by the applicant prior to the receipt under § 814.17 of a written FDA order approving the PMA supplement provided that [certain conditions not relevant here are met]. * * * *

> (2) The following changes are ***permitted*** by paragraph (d)(1) of this section:
>   (i) Labeling changes that add or strengthen a contraindication, warning, precaution, or information about an adverse reaction for which there is reasonable evidence of a causal association.
>   (ii) Labeling changes that add or strengthen an instruction that is intended to enhance the safe use of the device.
>   (iii) Labeling changes that delete misleading, false, or unsupported indications.
>   . . . .

21 C.F.R. § 814.39(d) (emphasis added).

Nowhere does this regulation say that a medical device manufacturer is "required" to make labeling changes, or that a manufacturer "must" or "shall" supplement its warnings based on newly acquired information. Rather, the regulation says that a device manufacturer "may" supplement its warnings and that it is "permitted" to make certain labeling changes without FDA approval. A device manufacturer doesn't violate a law by not doing something the law doesn't require it to do in the first place.

The Seventh Circuit dealt with this issue in *McMullen*. As here, the plaintiff did not take issue with the product's warnings as originally approved; instead, "he claim[ed] that Medtronic violated a *post-sale* duty to warn, under which it was required to provide an additional warning in light of [a subsequent] report." 421 F.3d at 488 (emphasis in original). But as the court noted, the regulation governing labeling supplements does not impose a "duty" to issue additional warnings; it merely "permits" manufacturers to enhance their warnings. *Id*. at 489 (citing 21 C.F.R. § 814.39).

9

"Where a federal requirement permits a course of conduct and the state makes it obligatory, the state's requirement is in addition to the federal requirement and thus is preempted. Because § 814.39 permits, but does not require, a manufacturer to provide interim supplemental warnings pending approval by the FDA, a common-law duty to provide such a warning imposes an additional obligation." *Id.*

Following *McMullen*, the Indiana Court of Appeals came to the same conclusion, noting the case for preemption "could not be clearer." *McGookin v. Guidant Corp.*, 942 N.E.2d 831, 838 (Ind. Ct. App. 2011). The plaintiffs there, like the plaintiffs here and in *McMullen*, argued a device manufacturer "should be liable for its failure to add warnings that are permitted, but not required, by federal law." *Id.* "We cannot imagine a plainer example of an attempt to impose a standard of care in addition to the FDA's specific federal requirements," the court wrote. *Id.* (citing *McMullen*, 42 F.3d at 489).

That Plaintiffs say they have "alleged" Cook was required to update its labelling "in order to comply their duties to not sell misbranded products"—where in their complaint they have made this allegation they do not say, *see* Dkt. 9780, Pls.' Resp. p. 11 n.6—doesn't make it so. And in fact it isn't so, as *McMullen* and *McGookin* make clear enough. Besides, Plaintiffs' argument makes no sense. The labeling that came with the product was the labeling the FDA required. To argue the filter later became misbranded is to argue the product's FDA-approved labeling, which the FDA has never ordered to be updated, became inadequate—an argument that is squarely preempted. *See McMullen*, 421 F.3d at 488. And even assuming Cook was "permitted" to supplement unilaterally its warnings later, the law didn't require it to do so, and that's the point: there is no federal law that *requires* a device manufacturer to update unilaterally its original labeling, either to comply with the laws against misbranding or any other federal law.

10

Indeed, according to a federal regulation designed to provide guidance on the MDA's preemption statute, 21 U.S.C. § 360k, "adulteration *and misbranding claims* are pre-empted when they 'ha[ve] the effect of establishing a substantive requirement for a specific device, e.g., a specific labeling requirement' that is 'different from, or in addition to,' a federal requirement." *Riegel*, 552 U.S. at 329 (quoting 21 C.F.R. § 808.1(d)(6)(ii)) (emphasis added). "*Surely*," the Supreme Court has observed, "*this means that the MDA would pre-empt a jury determination that the FDA-approved labeling for a [medical device] violated a state common-law requirement for additional warnings*." *Id*. (emphasis added). Without saying it, that is exactly what the plaintiffs are seeking: a jury verdict that Cook's warnings—as approved and required by the FDA—violate state laws requiring additional warnings. That kind of claim cannot go forward under the MDA. *See McMullen*, 421 F.3d at 488. It therefore should be dismissed with prejudice.

**2.    Plaintiffs' warning claims based on Cook's alleged failure to report adverse events are also categorically preempted and should be dismissed with prejudice.**

Federal law also preempts the second basis for the plaintiffs' warning claims: that Cook "failed to timely and accurately report to the FDA . . . adverse events reasonably associated with the use of their medical device." Dkt. 9780, Pls.' Resp. p. 14. There are at least three problems with these claims: (1) they are speculative, (2) they are categorically preempted under *Buckman*, and (3) with only one exception, there is no parallel state-law claim.

**a.    Plaintiffs do not allege facts that would allow the Court to conclude reasonably that Cook failed to make adverse-event reports with respect to the Bird's Nest.**

The first problem Plaintiffs run into is that nowhere in their master complaint do they allege that Cook failed to report adverse events with respect to the Bird's Nest. At best for them, and construing their master complaint generously, they make this allegation only as to the Tulip and Celect. *See* Dkt. 213, Master Compl. ¶¶ 1, 22. And while Plaintiffs say they "have no reason to

11

*assume* Cook's [alleged] pattern of underreporting was limited to only those models," Dkt. 9780, Pls.' Resp. p. 16 n.10 (emphasis added), they plead no *facts*, as they must, to support that "assum[ption]." *See Twombly*, 550 U.S. at 555. They offer only that—an assumption, that is, a "naked assertion"—which will not suffice. *See id.* at 557. For a complaint must do more than merely create "a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 Charles Wright & Arthur Miller, Federal Practice and Procedure § 1216, pp. 235–236 (3d ed. 2004)). It must plead "factual allegations" that "raise a right to relief *above* the speculative level." *Id.* (emphasis added). And the plaintiffs' complaint does not do that.

> **b.   Plaintiffs' failure-to-report claims are categorically preempted as an attempt to privately enforce federal law.**

The second problem with Plaintiffs' warnings claims based on Cook's alleged failure to report adverse events is that they are impliedly preempted under Supreme Court precedent. The plaintiffs in *Sprint Fidelis* also alleged that a medical device manufacturer "failed to provide the FDA with sufficient information and did not timely file adverse event reports, as required by federal regulations." 623 F.3d at 1205. But the court saw right through this allegation: "these claims are simply an attempt by private parties to enforce the MDA, claims foreclosed by § 337(a) as construed in *Buckman*." *Id.* at 1205-06 (internal citation omitted).

The Eleventh Circuit has agreed:

> [Plaintiff's] theory relies on his allegation that S&N "failed to adequately investigate adverse events and complaints and failed to properly report these issues to the FDA." Because this theory of liability is based on a duty to file a report with the FDA, it is very much like the "fraud-on-the FDA" claim the Supreme Court held was impliedly preempted in *Buckman*. In both cases, a plaintiff alleged a manufacturer failed to tell the FDA those things required by federal law. And here, like *Buckman*, we conclude that federal law preempts these claims insofar as S&N's duty is owed to the FDA and [Plaintiff's] theory of liability is not one that state tort law has traditionally occupied.

*Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1330 (11th Cir. 2017).

The Sixth Circuit has also agreed:

> [Plaintiff] alleges that Genentech failed to submit updated safety information to the FDA as required of all applicants by FDA Form 356h and generally applicable FDA regulations, and thus relies on "federal enactments [a]s a critical element in [her] case." *Buckman,* 531 U.S. at 353. Moreover, this alleged wrong was perpetrated upon the agency, and thus implicates the "inherently federal" relationship described in *Buckman. Id.* at 34. Finally, [Plaintiff's] suit would require a court to rule on the adequacy of Genentech's post-marketing disclosures to the FDA, which is the kind of "inter-branch[ ]meddling" that concerned the Court in *Buckman,* . . . [and] would both usurp the agency's role and go beyond the court's institutional expertise.

*Marsh v. Genentech, Inc.*, 693 F.3d 546, 553–54 (6th Cir. 2012) (some internal citations omitted).

Plaintiffs' failure-to-report claims here are preempted just the same as the plaintiffs' failure-to-report claims in *Sprint Fidelis*, *Mink*, and *Marsh*. For this reason, too, these claims should be dismissed.

### c.   Plaintiffs have failed to identify a parallel state-law duty to warn the FDA save for California.

The third problem with Plaintiffs' failure-to-report claims is that, while they have identified a federal requirement to report certain adverse events to the FDA, with only one exception, they have not identified a "parallel" *state* requirement to do so. It appears that, of the states whose laws are alleged to be at issue here, only California has expressly recognized a parallel state-law cause of action for failure to report adverse events to the FDA. *Coleman v. Medtronic, Inc*., 167 Cal. Rptr. 3d 300, 314-15 (Cal. Ct. App. 2014), *dismissed, remanded, and ordered published sub nom.*, *Coleman v. Medtronic*, 331 P.3d 178 (Cal. 2014).[2] The other states have not.

To assert a claim that is not preempted, Plaintiffs must identify not only a federal requirement that the device maker allegedly violated, but a state-law requirement that "parallels" it. *See*

---

[2] Oklahoma has expressly recognized that state-law claims for negligence per se may be based on violations of FDA requirements, *Howard v. Zimmer, Inc.*, 299 P.3d 463, 467-68 (Okla. 2013), but it appears the only claim at issue in that case was a claim for manufacturing defect, not failure to warn, *see id*. at 466 ("[Plaintiff] asserted that the implant was unsuccessful because Sulzer left oily residue on the implant in violation of federal regulations.").

13

*Lohr,* 518 U.S. at 495. For a state requirement to be "parallel" to a federal requirement, "the plain-tiff must show that the requirements are '*genuinely* equivalent.'" *McMullen,* 421 F.3d at 489 (em-phasis in original) (citation omitted). By its very nature, the inquiry into whether such a require-ment exists "is dependent upon state-specific law." *Marmol v. St. Jude Med. Ctr.*, 132 F. Supp. 3d 1359, 1369 (M.D. Fla. 2015) ("Plaintiff has not provided the Court with any *Florida* law which recognizes a duty to warn an agency such as the FDA." (emphasis in original)); *cf. McAfee*, No. 1:12-cv-417, 2015 WL 3617755, at *5 ("*If* . . . the state-law failure to warn claims are premised on Medtronic's failure to file adverse event reports with the FDA *and the duty to warn extends to third parties like the FDA under Indiana law*, the state regulation/requirement would parallel, ra-ther than add to, the federal requirement, and wouldn't be preempted under the Medical Devices Amendments." (emphasis added)).

To be sure, Plaintiffs have identified caselaw in certain other states that recognize a *generic* duty to warn third parties, such as learned intermediaries. *See* Dkt. 9780, Pls.' Resp. 12-13 n.7. But as the Illinois Appellate Court has said about its own caselaw on the learned intermediary doctrine, "this [duty] is not synonymous with an affirmative duty to warn a federal regulatory body." *Norabuena v. Medtronic, Inc.*, 86 N.E.3d 1198, 1207 (Ill. App. Ct. 2017), *appeal dismissed*. A state-law requirement to warn a physician is not, in other words, "*genuinely* equivalent" with a federal requirement to warn the FDA. *See Kubicki v. Medtronic, Inc.*, 293 F. Supp. 3d 129, 183-84 (D.D.C. 2018) ("[T]he state claim and the federal claim must be *genuinely*—as  opposed to effectively—equivalent. That is, if Plaintiffs' core contention is that the state common law was violated because Medtronic failed to warn consumers of device-related risks upon learning new adverse information, then the federal requirement that such a claim actually parallels is a duty to warn *consumers* of device-related risks in light of new adverse events (i.e., the duty to update

14

product labels post-approval), *not* the C.F.R.'s requirement that manufacturers report such events *to the FDA*." (emphasis in original)); *Aaron v. Medtronic, Inc.*, 209 F. Supp. 3d 994, 1005 (S.D. Ohio 2016) ("[T]he federal duty *to report certain information to the FDA* is not 'identical,' and thus not parallel, to the state-law duty *to provide warnings to patients or their physicians*." (internal citation and underlining omitted) (emphasis in original)), *appeal dismissed*.

Some federal courts have held that a generic state-law duty to warn consumers or third parties encompasses a specific duty to warn the FDA. *See Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1233 (9th Cir. 2013) (en banc) (Arizona law); *Hughes v. Boston Sci. Corp.*, 631 F.3d 762, 769-74 (5th Cir. 2011) (Mississippi law); *Williams v. Smith & Nephew, Inc.*, 123 F. Supp. 3d 733, 742-43 (D. Md. 2015) (Maryland law). But whatever the circuit law might be in those jurisdictions, in our own circuit, the Court of Appeals has cautioned against such judicial adventurism, admonishing the district courts to "proceed with caution" when making pronouncements about state law. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1092 (7th Cir. 1999). This reluctance to speculate on the trajectory of state law state applies with "special force" to a plaintiff in a diversity case, such as the ones here, who have chosen to litigate their state-law claims in federal court. *Shaw v. Republic Drill Corp.*, 810 F.2d 149, 150 (7th Cir. 1987) (per curiam). "When given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability, [courts] should choose the narrower and more reasonable path (at least until the [state] Supreme Court tells us differently)." *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1412 (7th Cir. 1994) (en banc). This is because "it is rarely possible, given the difficulty in making 'Erie Guesses,' to provide, in any principled fashion, a great deal of meaningful guidance for the resolution of future cases." *Id.* at 1416 (Ripple, J., dissenting on other grounds) (internal footnotes omitted). What's more, "federal court pronouncements on the content of state law inherently

15

involve a significant intrusion on the prerogative of the state courts to control that development." *Id*. at 1416-17. "Such pronouncements risk 'interrupting . . . the orderly development and authoritative exposition of state law . . . .'" *Lexington Ins. Co.*, 165 F.3d at 1092-93 (quoting *Factors, Etc., Inc. v. Pro Arts Inc.*, 652 F.2d 278, 282 (2d Cir. 1981)). "Accordingly, when a federal court must make predictions about how the highest state court would decide a case in the absence of caselaw directly on point, conservatism is in order in relying on the practice of other jurisdictions, even in analogous cases. . . . [A] federal court must be careful to avoid the temptation to impose upon a state what it, or other jurisdictions, might consider to be wise policy." *Id*. at 1093.

Exhibit A for why it is that federal courts should leave the expansion of state law to the state courts is the Ninth Circuit's en banc decision in *Stengel v. Medtronic Inc.*, 704 F.3d 1224 (9th Cir. 2013), a case Plaintiffs heavily lean on in their brief. The plaintiffs in *Stengel* made the same claim there that the plaintiffs make here: that a medical device manufacturer "was under a continuing [state-law] duty to monitor the product after premarket approval and to discover and report to the FDA any complaints about the product's performance and any adverse health consequences of which it became aware and that are or may be attributable to the product." 676 F.3d 1159, 1163 (9th Cir. 2012) (panel opinion). At the panel stage, as in *Sprint Fidelis*, *Mink*, and *Marsh* mentioned above, the court held there was no meaningful distinction between the plaintiffs' failure-to-warn claims and the "fraud-on-the-FDA" claims held to be preempted in *Buckman. Id*. at 1164. In addition, the court noted, the federal regulations that Medtronic was alleged to have violated—the same regulations that Cook is alleged to have violated—impose detailed reporting requirements with respect to a broad category of information, and Arizona law contained no parallel requirement. *Id*. at 1164-65. Thus, the Stengels' failure-to-warn claims, to the extent they survived express

16

preemption, existed solely by virtue of the FDCA disclosure requirements and were, therefore, impliedly preempted. *Id*. at 1165.

The en banc court took a different view. 704 F.3d 1224 (9th Cir. 2013). Instead of proceeding cautiously in applying state law and declining to hold that Arizona's general duty to warn encompassed a specific duty to warn the FDA, as the panel had, the court en banc decided to push Arizona law beyond its established boundaries. Arizona law "contemplates" a warning to a third party such as the FDA, the court wrote. *Id*. at 1233. As proof, the court pointed to another *federal* decision, not a state decision, which recognized "a warning to a third party satisfies a manufacturer's duty if, given the nature of the warning and the relationship of the third party, there is 'reasonable assurance that the information will reach those whose safety depends on their having it.'" *Id*. (quoting *Anguiano v. E.I. DuPont de Nemours & Co.,* 808 F. Supp. 719, 723 (D. Ariz. 1992), *aff'd*, 44 F.3d 806 (9th Cir.1995)).

Just last December, the Arizona Supreme Court held the Ninth Circuit got Arizona law all wrong. *Conklin v. Medtronic, Inc.*, No. CV-17-0322-PR, --- P.3d ---, 2018 WL 6613311, at *6-7 (Ariz. Dec. 18, 2018). *Stengel*, the court said, is based on "unsupported premises." *Id*. at *6. "Arizona law would recognize a claim for a failure to provide an adequate warning to the patient directly or through certain third parties (including health care providers), but established law does not recognize a claim merely for failing to provide something like adverse event reports (which may not qualify as 'warnings' under Arizona law) to a government agency that has no obligation to relay the information to the patient." *Id*. The learned intermediary doctrine "does not permit (or require) a manufacturer to warn any and all third parties." *Id*. at *5. Rather, as applied to prescription drug and medical device manufacturers in Arizona, the doctrine extends *only* to "prescribing and other health-care providers." *Id*. (quoting Restatement (Third) of Torts: Prods. Liab. §

17

6(d)(1) (1998)). "The FDA is not a health care provider and does not prescribe anything for pa-tients." *Id*. "Accordingly," the court wrote, "even if we assume that adverse event reports may constitute relevant warnings, Arizona law does not permit a manufacturer to satisfy its duty to warn end-user consumers by submitting adverse event reports to the FDA. And conversely, a man-ufacturer does not breach its duty to warn end users under Arizona law by failing to submit adverse event reports to the FDA." *Id*. Therefore, as the original Ninth Circuit panel held in hewing to a modest understanding of Arizona law, "[b]ecause only federal law, not state law, imposes a duty on Medtronic to submit adverse event reports to the FDA, [Plaintiff's] failure-to-warn claim is impliedly preempted under 21 U.S.C. § 337(a). Absent an independent state law duty to submit adverse event reports to the FDA, [Plaintiff's] failure-to-warn claim, at bottom, is an attempt to enforce a federal law requirement." *Id*. (internal citation omitted).

Likewise here, taking Plaintiffs' representations of state law at face value, they have iden-tified only one *state* court that has recognized a *state*-law duty to warn the FDA of adverse events: the California Court of Appeals. *See* Dkt. 9780, Pls.' Resp. pp. 12-13 n.7 (citing *Coleman v. Med-tronic, Inc*., 167 Cal. Rptr. 3d 300 (Cal. Ct. App. 2014)). In fact, in some of the jurisdictions at issue, there are decisions stating either:

**(a)** that there is no parallel state-law duty to warn the FDA, *see Wolicki-Gables v. Doctors Same Day Surgery Ctr., Ltd.*, 216 So. 3d 665, 673 (Fla. Dist. Ct. App. 2017), *cert. denied*;

**(b)** that the relevant state has not *recognized* a parallel state-law duty to warn the FDA, *see Pearsall v. Medtronics, Inc.*, 147 F. Supp. 3d 188, 201-02 (E.D.N.Y. 2015) (New York law); or, more broadly,

**(c)** that there is no post-sale duty to warn, or that the relevant state has not recognized such a duty, *see Boatmen's Trust Co. v. St. Paul Fire & Marine Ins. Co.*, 995 F. Supp. 956, 962 (Ark.

18

Dist. Ct. 1998) (Arkansas law); *Smith v. DaimlerChrysler Corp.*, No. CIV.A. 94C-12-002JEB, 2002 WL 31814534, at *5 (Del. Super. Ct. Nov. 20, 2002); *Noah v. Gen. Motors Corp.*, 882 So. 2d 235, 239 (Miss. Ct. App. 2004); *Mohr v. DaimlerChrysler Corp.*, No. W2006–01382–COA– R3–CV, 2008 WL 4613584, at *19 (Tenn. Ct. App. Oct. 14, 2008); *Medina v. Michelin N. Am., Inc.*, No. 05-16-00794-CV, 2018 WL 580263, at *5 (Tex. Ct. App. – Dallas Jan. 29, 2018); *cf. Turner v. Westhampton Ct., L.L.C.*, 903 So. 2d 82, 90 (Ala. 2004) ("Central to both theories of a failure-to-warn claim [under Alabama law] is the absence of a warning *accompanying the sale* of a 'product.'" (emphasis added)).

Accordingly, if for whatever reason the Court allows any of the plaintiffs to replead this warnings-based claim, and it ought not based on the first two arguments in this section, it should, at the very most, allow only the plaintiff to replead whose claims are plausibly governed by California law (Nixon). *See* Dkt. 9780, Pls.' Resp. p. 6 n.4. None of the other plaintiffs can plausibly state a warnings-based claim under the theory that Cook failed to report adverse events.

### D. Plaintiffs' warranty claims are preempted and should be dismissed with prejudice.

Plaintiffs' warranty claims, both implied and express, are also preempted. Besides containing conclusory allegations, and failing to allege expressly that Cook violated federal law, both types of warranty claims do not parallel federal law. Instead, they conflict with federal law, challenging the adequacy of FDA safety standards for the manufacture and design of medical devices.

#### 1. Plaintiffs' implied warranty claims are preempted and should be dismissed with prejudice.

The Seventh Circuit has held that implied warranty claims are preempted to the extent they rest on allegations about standards "other than those permitted by the FDA." *Mitchell*, 126 F.3d at 915. Plaintiffs' implied warranty claims *do* rest on such allegations, at least in part. According to

19

the master complaint, Cook warranted that its filters were of "merchantable quality, safe and fit" for use, and that Cook breached these implied warranties in the following ways:

a. Defendants failed to provide the warning or instruction and/or an adequate warning or instruction which a manufacturer exercising *reasonable care* would have provided concerning that risk, in light of the likelihood that its Cook IVC Filters would cause harm;

* * * *

c. Defendants manufactured and/or sold their Cook IVC Filters which were more dangerous *than an ordinary consumer would expect* when used in an intended or reasonably foreseeable manner, and *the foreseeable risks associated with the Cook Filters' design or formulation exceeded the benefits associated with that design*. These defects existed at the time the products left the Defendants' control; and

Dkt. 213, Master Compl. ¶¶ 103-04 (emphasis added). These allegations plainly rest on standards "other than those permitted by the FDA." They rest on the standard of "reasonable care" and what "an ordinary consumer would expect," as well as on the risk-utility test.

As for the remaining allegations, they are nothing but boilerplate:

b. Defendants manufactured and/or sold their Cook IVC Filters and said filters did not conform to representations made by the Defendants when they left the Defendants' control;

* * * *

d. Defendants manufactured and/or sold their Cook IVC Filters when they deviated in a material way from the design specifications, formulas or performance standards or from otherwise identical units manufactured to the same design specifications, formulas, or performance standards, and these defects existed at the time the products left the Defendants' control.

*Id*. ¶ 104. "Further," the plaintiffs' allege, "Defendants' marketing of their Cook IVC Filters was false and/or misleading." *Id*. ¶ 105.

Given that the design, manufacturing, and representations about a medical device are all prescribed by the FDA, in what ways did Cook deviate not just from state design, manufacturing, representational requirements, but from parallel *federal* design, manufacturing, and

20

representational requirements? Plaintiffs do not explain. Granted, Plaintiffs allege violations of federal law in their negligence per se count, but the relevant allegations are entirely conclusory, doing barely more than listing a series of statutory and regulatory violations. As for Cook's supposed "representations" and "marketing," they say, for example, that (1) Cook violated the FDCA "in making statements and/or representations via word, design, device or any combination therefore failing to reveal material facts with respect to the consequences that may result from the use of Cook IVC Filters to which the labeling and advertising relates"; and that (2) Cook violated federal regulations "in misleading consumers and patients by concealing material facts in light of representations made regarding safety and efficacy of its Cook IVC filters." Dkt. 213, Master Compl. ¶ 91(b), (c). And as for Cook's manufacturing practices, Plaintiffs merely say Cook violated federal regulations "by failing to maintain adequate quality systems regulation including, but not limited to, instituting effective correct and preventative actions[.]" *Id.* ¶ 91(g). These are nothing more than "the-defendant-unlawfully-harmed-me accusation[s]," *see McAfee*, No. 1:12-CV-417 RLM, 2015 WL 3617755, at *6 (quoting *Iqbal*, 556 U.S. at 678), requiring dismissal, *see, e.g.*, *Babayev v. Medtronic, Inc.*, 228 F. Supp. 3d 192, 216 (E.D.N.Y. 2017) (dismissing as conclusory implied warranty claims based on allegations the product was defective and adulterated), *appeal dismissed*; *Yosowitz v. Covidien LP*, 182 F. Supp. 3d 683, 697 (S.D. Tex. 2016) (similar).

At all events, when it comes to Class III medical devices, the FDA, not the states, determines what is of "merchantable quality, safe and fit" for use. A judgement based on state law thus would improperly impose safety requirements that are different from, or in addition to, those required by federal law. *See, e.g.*, *Burrell v. Bayer Corp.*, 260 F. Supp. 3d 485, 494 (W.D.N.C. 2017) (North Carolina implied warranty claims preempted), *appeal pending*; *Williams v. Smith & Nephew, Inc.*, 123 F. Supp. 3d 733, 742 (D. Md. 2015) (Maryland implied warranty claims

preempted); *Spier v. Coloplast Corp.*, 121 F. Supp. 3d 809, 817–18 (E.D. Tenn. 2015) (Tennessee implied warranty claims preempted); *Caplinger v. Medtronic, Inc.*, 921 F. Supp. 2d 1206, 1222 (W.D. Okla. 2013) (Oklahoma implied warranty claims preempted), *aff'd,* 784 F.3d 1335 (10th Cir. 2015) (Gorsuch, J.); *Haynes v. Cyberonics, Inc.*, No. 1:09-CV-2700-JEC, 2011 WL 3903238, at *9 (N.D. Ga. Sept. 6, 2011) (Georgia implied warranty claims preempted); *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 284–85 (E.D.N.Y. 2009) (New York implied warranty claims preempted).

Count VI of Plaintiffs' master complaint (Breach of Implied Warranty) therefore should be dismissed with prejudice.

### 2. Plaintiffs' express warranty claims are preempted and should be dismissed with prejudice.

According to the Seventh Circuit, "a state judgment based on the breach of an express representation by one of the parties does not *necessarily* interfere with the operation of the PMA [process] . . . ." *Mitchell*, 126 F.3d at 915 (emphasis added). Here, however, Plaintiffs' express warranty claims *would* interfere with federal law. As even the plaintiffs acknowledge, for an express warranty claim to survive, it must be "premised upon a violation of federal requirements . . . ." Dkt. 9780, Pls.' Resp. p. 20. Plaintiffs' express warranty claims are *not* premised on Cook's "violation" of federal requirements. They are premised instead on the notion that Cook is liable for breach of express warranty *notwithstanding* Cook's *compliance* with federal requirements. Such claims cannot survive. *See Riegel*, 552 U.S. at 330.

According to the plaintiffs, the Cook Defendants "breached their express warranties[] *in that* the filters:

a. were *designed* in such a manner so as to be prone to a unreasonably high incident of fracture, perforation of vessels and organs, and/or migration;

22

b. were *designed* in such a manner so as to result in a unreasonably high incident of injury to the organs of its purchaser; and

c. were *manufactured* in such a manner so that the exterior surface of the Cook Filters were inadequately, improperly and inappropriately *designed* causing the device to weaken and fail."

Dkt. 213, Master Compl. ¶ 96 (emphasis added).

As *Mitchell* notes, federal law, not state law, dictates the "manner" in which medical devices are to be "designed" and "manufactured," 126 F.3d at 915, and, as discussed earlier, Plaintiffs do not argue anywhere in their brief that the Bird's Nest failed to comply with federal standards in this regard. So their design and manufacturing defect claims, and thus their express warranty claims (which mirror their design and manufacturing defect claims), can only be taken as an attempt to impose "different" or "additional" design and manufacturing standards on Cook. "Simply put, claims such as these, which 'require[ ] a manufacturer's [device] to be safer . . . than the model the FDA has approved,' necessarily 'disrupt[ ] the federal scheme' and must be preempted." *In re Medtronic, Inc. Sprint Fidelis Leads Prods. Liab. Litig.*, 592 F. Supp. 2d 1147, 1164 (D. Minn. 2009) (quoting *Riegel,* 552 U.S. at 325)) (holding express warranty claims were preempted because they would require a jury to find the product was "unsafe"), *aff'd*, 623 F.3d 1200, 1208 (8th Cir. 2010) ("To succeed on the express warranty claim asserted in this case, Plaintiffs must persuade a jury that Sprint Fidelis Leads were not safe and effective, a finding that would be contrary to the FDA's approval of the PMA Supplement."); *see also Aaron*, 209 F. Supp. 3d at 1008 ("For Plaintiffs to prevail on this [express warranty] claim, a jury would need to find that Infuse was *not* safe and effective" as labeled. But that would conflict with the FDA's conclusive determination in granting premarket approval that there is a reasonable assurance of the device's 'safety and effectiveness." (internal quotation marks and citations omitted) (emphasis in original)); *Haynes v. Cyberonics, Inc.*, No. 1:09–CV–2700–JEC, 2011 WL 3903238, at *8–9 (N.D. Ga. Sept. 6, 2011)

("In order to prove that defendant breached this [express] warranty, plaintiff would need to show that the stimulator was not safe: a finding that would directly conflict with the FDA's premarket approval of the device as reasonably safe and effective.").

Thus, Count V of Plaintiffs' master complaint (Breach of Express Warranty) should be dismissed with prejudice as well.

### E.  Plaintiffs' negligence per se claims are preempted and should be dismissed with prejudice.

In *Hill*, this Court rejected the notion that a plaintiff may pursue a negligence per se claim for violations of the FDCA and its implementing regulations:

> Under Florida law, the violation of a statute gives rise to civil liability under the theory of negligence *per se* only if the statute indicates an intent to create a private cause of action. *Murthy v. N. Sinha Corp.*, 644 So. 2d 983, 985 (Fla. 1994). The FDCA expressly provides that all actions to enforce the Act "shall be by and in the name of the United States." 21 U.S.C. § 337(a). "This language evidences legislative intent to prohibit a private right of action for a violation of the FDCA." *McClelland v. Medtronic, Inc.*, No. 6:11–CV–1444–ORL–36, 2012 WL 5077401, at *5 (M.D. Fla. Sept. 27, 2012); *Blinn v. Smith & Nephew Richards, Inc.*, 55 F. Supp. 2d 1353, 1361 (M.D. Fla. 1999) (same). Accordingly, Plaintiff's negligence *per se* claim based on violations of the FDCA or the FDA's implementing regulations may not go forward. *McClelland*, 2012 WL 5077401, at *5; *Metz v. Wyeth LLC*, 872 F. Supp. 2d 1335, 1343 (M.D. Fla. Sept. 27, 2012) ("Florida law does not recognize a claim based upon a theory of negligence per se for an alleged violation of the FDCA."); *Blinn,* 55 F. Supp. 2d at 1361 ("A Plaintiff cannot use a negligence *per se* claim to create a private cause of action for Defendant's alleged violations of the FDCA."). The Cook Defendants' Motion to Dismiss Count IV is therefore **GRANTED**.

*In re Cook Med., Inc., IVC Filters Mktg., Sales Practices & Prods. Liab. Litig.*, No. 1:14-CV-06016-RLY-TAB, 2017 WL 6816861, at *1 (S.D. Ind. May 17, 2017).

What is true in Florida is no less true in other states. For "[i]t would be anomalous to hold that the statute provides greater relief indirectly than it provides directly . . . ." *N.Y. Stock Exch., Inc. v. Sloan*, 394 F. Supp. 1303, 1316 (S.D.N.Y. 1975) (declining to allow a tort claim to go forward based on violations of the Securities Exchange Act of 1934). And thus, as in Florida,

several courts have declined to allow a state-law negligence per se claim to proceed based on alleged violations of a statute that provides no private right of action. *See*, *e.g.*, *Cent. Okla. Pipeline, Inc. v. Hawk Field Servs., LLC*, 400 S.W.3d 701, 712 (Ark. 2012) (declining to allowing a negligence per se claim to go forward based on the violation of a statute that did not allow a private cause of action); *Young v. Blytheville Sch. Dist.*, 425 S.W.3d 865, 871-72 (Ark. Ct. App. 2013) (affirming dismissal of negligence action where statute alleged to have been violated did not expressly create a private right of action); *Miller v. E.I. DuPont de Nemours & Co.*, 880 F. Supp. 474, 480 (S.D. Miss. 1994) ("This court concludes that since Congress did not intend to create a private right of action under FIFRA [the Federal Insecticide, Fungicide, and Rodenticide Act], then any alleged violation of that statute by defendant cannot provide a basis for a negligence per se claim.") (Mississippi law); *Steinberg v. Luedtke Trucking, Inc.*, No. 4:17-CV-9, 2018 WL 3233341, at *4 (E.D. Tenn. July 2, 2018) ("Although a violation of a regulation is a possible ground for application of the negligence per se doctrine under Tennessee law the regulation must expressly grant[ ] [a party] a private right of action for negligence per se." (internal quotation marks and citations omitted)); *In re Tenn. Valley Auth. Ash Spill Litig.*, No. 3:09-CV-009, 2012 WL 3647704, at *58-59 (E.D. Tenn. Aug. 23, 2012) (dismissing action for negligence per se where no private right of action under federal environmental statutes) (Tennessee law); *Baker v. Smith & Nephew Richards, Inc.*, No. 95-58737, 1999 WL 811334, at *17 (Tex. Dist. Ct. June 7, 1999) ("Under [the plaintiff's suggested interpretation of [*Lohr*], any alleged violation of the FDCA would automatically be actionable as a state law tort. This suggested interpretation of [*Lohr*] would render meaningless the Congressional prohibition on private rights of action. It would also effectively rewrite the product liability laws of all fifty states, a result there is no showing Congress intended."), *aff'd sub nom.*, *McMahon v. Smith & Nephew Richards, Inc.*, No. 14-99-00616-CV, 2000 WL 991697

(Tex. Ct. App. – Houston July 20, 2000); *see also* RESTATEMENT (SECOND) OF TORTS § 286 cmt.

*d* (1965) (stating that where the statute does not provide a private right of action, "the court is

under no compulsion to accept it as defining any standard of conduct for purposes of a tort action").

As the District of Minnesota has explained:

> negligence per se is a form of ordinary negligence that results from violation of a statute. That is, negligence per se substitutes a statutory standard of care for the ordinary prudent person standard of care, such that a violation of a statute (or an ordinance or regulation adopted under statutory authority) is conclusive evidence of duty and breach. In a typical negligence case, the plaintiff seeks to hold the defendant liable because the defendant acted carelessly. In a negligence per se case, the plaintiff seeks to hold the defendant liable because the defendant violated a statute.

*Kapps v. Biosense Webster, Inc.*, 813 F. Supp. 2d 1128, 1151–52 (D. Minn. 2011) (internal quota-

tion marks and citations omitted). Although the court was talking about Minnesota's law of negli-

gence per se, likewise could be said of the doctrine of negligence of per se in the states at issue

here.[3] "And *that* is why a claim of negligence per se cannot be based on a violation of the FDCA."

*Id*. at 1152 (emphasis added).

---

[3] *Parker Bldg. Servs. Co. v. Lightsey ex rel. Lightsey*, 925 So. 2d 927, 931 (Ala. 2005) ("Proof of a violation of the statute is proof of negligence."); *Cent. Okla. Pipeline, Inc. v. Hawk Field Servs., LLC*, 400 S.W.3d 701, 712 (Ark. 2012) (noting the violation of a statute is evidence of negligence); *Casey v. Russell*, 188 Cal. Rptr. 18, 20 (Cal. Ct. App. 1982) ("Essentially, application of the doctrine of negligence per se means that the court has adopted the conduct prescribed by the statute as the standard of care for a reasonable person in the circumstances. In such a case, a violation of the statute is presumed to be negligence." (internal citations omitted)); *Sammons v. Ridgeway*, 293 A.2d 547, 549 (Del. 1972) ("It has been long settled in this State that the violation of a statute or ordinance enacted for the safety of others is negligence in law or negligence per se." (citing cases)); *Joseph v. Bozzuto Mgmt. Co.*, 918 A.2d 1230, 1239 (Md. Ct. App. 2007) ("There is, to be sure, a legal principle that the violation of a statute or regulation may sometimes be evidence of negligence."); *Williams ex rel. Raymond v. Wal-Mart Stores E., L.P.*, 99 So. 3d 112, 116 (Miss. 2012) ("The effect of declaring conduct negligent per se is to render the conduct negligent as a matter of law." (citation omitted)); *Martin v. Herzog*, 126 N.E. 814, 815 (N.Y. 1920) (Cardozo, J.) ("We think the unexcused omission of the statutory signals is more than some evidence of negligence. It *is* negligence in itself." (emphasis in original)); *Byers v. Standard Concrete Prods. Co.*, 151 S.E.2d 38, 40 (N.C. 1966) ("[T]he general rule in North Carolina is that the violation of a statute or ordinance that imposes upon a person a specific duty for the protection of others constitutes negligence Per se. The basis of the rule seems to be that the statute prescribes the standard of care, and the standard fixed by the Legislature is absolute. Upon proof of breach of the statute, negligence is proven." (internal citation omitted)); *Lockhart v. Loosen*, 943 P.2d 1074, 1078 (Okla. 1997) ("A statute's violation is deemed negligence *per se* if [certain elements are established]."); *Rains v. Bend of the River*, 124 S.W.3d 580, 590 (Tenn. Ct. App. 2003) ("The effect of declaring conduct negligent per se is to render the conduct negligent as a matter of law."); *Murray v. O & A Exp., Inc.*, 630 S.W.2d 633, 636 (Tex. 1982) ("The unexcused violation of a penal statute constitutes negligence as a matter of law if such statute was designed to prevent injuries to a class of persons to which the injured party belongs.").

As the *Kapps* court went on to explain*, to avoid preemption under *Buckman,* a state-law tort claim must be premised on "the type of conduct that would traditionally give rise to liability under state law—and that would give rise to liability under state law *even if the FDCA had never been enacted.*" *Id*. (quoting *Riley v. Cordis Corp.*, 625 F. Supp. 2d 769, 777 (D. Min. 2009) (emphasis in original)). In other words, a plaintiff must rely "on traditional state tort law which . . . predated the federal enactments in question." *Buckman*, 531 U.S. at 353. A negligence per se claim that is predicated on an alleged violation of the FDCA is, by definition, a claim that would give rise to liability under state law *only* because of the FDCA's enactment. *Riley*, 625 F. Supp. 2d at 777. Such a claim is preempted under *Buckman. See id.*; *see also In re Bard IVC Filters Prods. Liab. Litig.*, No. CV-16-00474-PHX-DGC, 2017 WL 5625548, at *9 (D. Ariz. Nov. 22, 2017) ("The Court will grant summary judgment on Plaintiff's negligence per se claim because allowing the claim to go forward would authorize an impermissible action to enforce provisions of the FDCA and its implementing regulations."); *Friedlander v. HMS–PEP Prods., Inc.,* 485 S.E.2d 240, 242 (Ga. Ct. App. 1997) ("[T]he [FDCA] provides that all proceedings for enforcement must be brought by the United States, or, in certain circumstances, by a State."); *Mitaro v. Medtronic, Inc.,* 23 Misc.3d 1122(A), at *4-5 (N.Y. Sup. Ct. 2009), *aff'd,* 900 N.Y.S.2d 899 (N.Y. App. Div. 2010) (negligence per se claim preempted under statute providing that all proceedings to enforce or to restrain violations of the FDCA are brought by the United States); *Osburn v. Danek Med., Inc.,* 520 S.E.2d 88, 92-93 (N.C. Ct. App. 1999) (violation of FDA regulation or requirements does not create private right of action), *aff'd*, 530 S.E.2d 54 (N.C. 2000) (per curiam).

In any event, negligence per se is not an independent cause of action[4], and so it must rise or fall not on its own, but with Plaintiffs' other negligence claims. As already explained, Plaintiffs'

_____

[4] *See Costine v. BAC Home Loans*, 946 F. Supp. 2d 1224, 1233 (N.D. Ala. 2013) ("[T]here is no Alabama tort cause of action known as negligence per se. Rather, negligence per se is merely a subsidiary doctrine of negligence whereby

claims for design defect, manufacturing defect, and failure to warn, which are incorporated into Plaintiffs' negligence per se count, all fail as preempted. Plaintiffs' negligence per se "claim" therefore should fail as preempted, too. *See, e.g.*, *Sprint Fidelis*, 592 F. Supp. 2d at 1163 (dismissing plaintiff's negligence per se claim because the plaintiff's other claims were preempted).

### F. Plaintiffs' consumer protection claims are preempted and should be dismissed with prejudice.

The first problem with Plaintiffs' fraud-based consumer protection claims is that they are not pled with the particularity required by Federal Rule of Civil Procedure 9(b). Plaintiffs make only the most general of allegations about Cook's conduct, *see, e.g.*, Dkt. 213, Master Compl. ¶ 116, and for this reason alone their complaint should be dismissed, *see, e.g.*, *De La Paz v. Bayer Healthcare LLC*, 159 F. Supp. 3d 1085, 1099 (N.D. Cal. 2016) (dismissing similar claims for lack of specificity); *Houston v. Medtronic, Inc.*, 957 F. Supp. 2d 1166, 1180 (C.D. Cal. 2013) (same).

---

a party is considered negligent as a matter of law because it acted in violation of a statute which was designed to prevent the type of harm that occurred."); *Quiroz v. Seventh Ave. Ctr.*, 45 Cal. Rptr. 3d 222, 244 (Cal. Ct. App. 2006) ("[T]o apply negligence per se is not to state an independent cause of action. The doctrine does not provide a private right of action for violation of a statute. Instead, it operates to establish a presumption of negligence for which the statute serves the subsidiary function of providing evidence of an element of a preexisting common law cause of action." (internal citations omitted)); *New Haverford P'ship v. Stroot*, 772 A.2d 792, 798 (Del. 2001) (characterizing negligence per se claims as "duplicative" of an ordinary negligence claim); *Skye v. Maersk Line Corp.*, No. 11-21589-CIV, 2011 WL 4528305, at *2 (S.D. Fla. Sept. 28, 2011) ("Courts tend to disfavor pleading negligence *per se* as a separate claim because it is not deemed to be independent from general negligence."); *Bray v. Marriott Int'l*, 158 F. Supp. 3d 441, 445 (D. Md. 2016) ("[T]here is no cause of action for negligence per se under Maryland law, and to the extent Bray alleges one, it is dismissed."); *Williams ex rel. Raymond v. Wal-Mart Stores E., L.P.*, 99 So. 3d 112, 116 (Miss. 2012) ("The negligence per se doctrine does not create a new cause of action." (citation omitted)); *Rains v. Bend of the River*, 124 S.W.3d 580, 589 (Tenn. Ct. App. 2003) ("The negligence per se doctrine does not create a new cause of action."); *Johnson v. Enriquez*, 460 S.W.3d 669, 673 (Tex. Ct. App. – El Paso 2015) ("Negligence *per se* is not a separate cause of action independent of a common-law negligence cause of action."); *cf. Shannon v. Wilson*, 947 S.W.2d 349, 356-57 (Ark. 1997) (holding duty of care in a negligence action was stablished by statue); *Cent. Anesthesia Assocs. P.C. v. Worthy*, 325 S.E.2d 819, 823 (Ga. Ct. App. 1984), *aff'd*, 333 S.E.2d 829 (Ga. 1985) ("It is well-settled that Georgia law allows the adoption of a statute as a standard of conduct so that its violation becomes negligence per se."); *Sampaio v. Atl.-Heydt, LLC*, 294 F. Supp. 2d 466, 469-70 (S.D.N.Y. 2003) ("Under some circumstances, a statute or regulation may provide the Court with the relevant standard of care" in a negligence action under New York law.); *Byers v. Standard Concrete Prod. Co.*, 151 S.E.2d 38, 40 (N.C. 1966) (stating that under the doctrine of negligence per se, "the statute prescribes the standard of care" in a negligence action); *Busby v. Quail Creek Golf & Country Club*, 885 P.2d 1326, 1329 (Okla. 1994) ("When courts adopt the statutory standard for a cause of action for negligence, the violation of the statute is said to be negligence *per se*."); *see also* 65 C.J.S. *Negligence* § 135 (Westlaw 2019) ("The doctrine of negligence per se is not a separate cause of action but creates an evidentiary presumption that affects the standard of care in a cause of action for negligence.").

But even setting that problem aside, the larger problem with these claims is that the allegations Plaintiffs *do* make are based on Cook's supposed representations about its filters—representations, that as has already been discussed, are governed by federal law. Federal regulations prohibit a device from being labeled, as well as advertised, in a manner inconsistent with the FDA's premarket approval. *See* 21 C.F.R. § 814.80 ("A device may not be manufactured, packaged, stored, labeled, distributed, or advertised in a manner that is inconsistent with any conditions to approval specified in the PMA approval order for the device."). And, as has also already been discussed, the only place in their complaint where Plaintiffs allege a *violation* of federal law in this regard is in their negligence per se count, which is wholly conclusory, and therefore insufficient to plead a parallel state claim. *See, e.g., Rodriguez v. Am. Med. Sys., Inc.*, 597 F. App'x 226, 230 (5th Cir. 2014) ("[Plaintiff] fails to allege whether or how AMS's marketing materials deviated from FDA-approved requirements. Therefore, he fails to plead a parallel DTPA [Deceptive Trade Practices Act] claim."). As the Seventh Circuit has held, "[t]o the extent that [a plaintiff's] allegation is based on the labeling of the product in conformity with the PMA requirements of the FDA, the claim is preempted for the same reasons that similar misbranding and mislabeling claims are preempted. The sufficiency of this information has been approved explicitly by the FDA." *Mitchell*, 126 F.3d at 914.

Count VII of Plaintiffs' master complaint (Violation of Applicable State Law Prohibiting Consumer Fraud and Unfair and Deceptive Trade Practices) therefore should be dismissed with prejudice. *See, e.g., Felger v. Smith & Nephew, Inc.*, 222 F. Supp. 3d 746, 756 (D. Alaska 2016) ("[A]mendment would be futile as it is not possible that [plaintiff] could plead a UTPA [Unfair Trade Practices Act] claim that survives preemption.").

29

**G. Plaintiffs' remaining claims for punitive damages should be dismissed with prejudice as derivative of Plaintiffs' other claims.**

The plaintiffs' "claims" for punitive damages are derivative of Plaintiffs' other claims. *See, e.g.*, *Beavers-Gabriel v. Medtronic, Inc.*, 15 F. Supp. 3d 1021, 1043 (D. Haw. 2014) ("[P]unitive damages is a remedy, and not a substantive claim for relief."); *Felger*, 222 F. Supp. 3d at 756 (same). Count XI of Plaintiffs' master complaint (Punitive Damages) therefore should be dismissed with prejudice as well.

**III. The Court should not allow the plaintiffs to conduct further discovery before ruling on the question of preemption.**

Besides ignoring the fact that they have already conducted extensive and searching company discovery, receiving over a million pages of documents and taking 25 company witness depositions in the process, Plaintiffs fail to explain how still *more* discovery would help them plead claims that are not preempted, or what "limited discovery" they would need. Indeed, Plaintiffs' argument for additional discovery is self-defeating because they acknowledge obtaining discovery on adverse event reporting topics when discovery was open, and Plaintiffs have no explanation as to why they did not collect at that time whatever additional discovery on this topic they allege was needed with respect to the Bird's Nest filter. *See* Dkt. 9780, Pls.' Resp. pp. 15-16.

Moreover, in *Bausch*, while the Seventh Circuit suggested that discovery may sometimes be appropriate to allow a plaintiff to plead with more specificity, it did so only in the context of determining "whether the problem is a design problem or a manufacturing problem." 630 F.3d at 560-61. That's not the issue here; indeed, Plaintiffs do not even argue that their design and manufacturing claims are not preempted. Nor is the problem, generally, that Plaintiffs don't have enough information to plead a plausible claim. The problem is that they *can't* plead a plausible claim; all of their claims are preempted, and no amount of discovery is going to change that. As with their alternative request to amend, then, Plaintiffs' request for discovery should be denied.

## CONCLUSION

For the foregoing reasons, the claims of the Bird's Nest Plaintiffs should be dismissed with prejudice.

Respectfully submitted,

FAEGRE BAKER DANIELS LLP

Dated: January 9, 2019

*/s/ Andrea Roberts Pierson*
Andrea Roberts Pierson (# 18435-49)
Jessica Benson Cox (# 26259-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:   (317) 237-1000
Email:  andrea.pierson@faegrebd.com
Email:  jessica.cox@faegrebd.com

Bruce Jones (# 179553)
Charles Webber (# 215247)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota  55402
Telephone: (612) 766-8719
Facsimile:  (612) 766-1600
Email:  bruce.jones@faegrebd.com
Email:  chuck.webber@faegrebd.com

*Counsel for the Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2019, a copy of the foregoing COOK DEFENDANTS'

REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS BASED ON

FEDERAL PREEMPTION IN BIRD'S NEST FILTER CASES was filed electronically, and no-

tice of the filing will be sent to all parties by operation of the Court's electronic filing system to

CM/ECF participants registered to receive service in this matter.  Parties may access this filing

through the Court's system.  Lead Counsel for Defendants will serve any non-CM/ECF registered

parties.


_/s/ Andrea Roberts Pierson_

32

US.121460989.03