**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates to:

*Brand v. Cook Medical, Inc. et al.*,
Case No. 1:14-cv-6018-RLY-TAB

**PLAINTIFF'S BRIEF REGARDING WARNINGS EVIDENCE ADMISSIBLE
IN A DESIGN DEFECT CLAIM UNDER GEORGIA LAW**

Plaintiff Tonya Brand offers this brief to assist the Court in determining what warnings evidence is admissible in a design defect case under Georgia law. At the hearing on January 9, 2019, the Court indicated that it had questions about whether the relevant warnings evidence under *Banks v. ICI Americas, Inc.*, 264 Ga. 732 (1994) includes only evidence of warnings evidence related to the individual user—*e.g.*, whether a warning to this particular user have been effective—or warnings to the reasonable user or the public more generally—*e.g.*, whether a warning would have been effective if given to a reasonable user. In its order following the hearing, the Court indicated that it was taking the matter under advisement. Careful examination of the *Banks* factors demonstrate that the factors include warnings evidence both as to the individual user and as to the reasonable user or users (doctors) more broadly.

## ARGUMENT

The *Banks* factors include:

1) the usefulness of the product;

1

2)        the gravity and severity of the danger posed by the design;

3)        the likelihood of that danger;

4)        *the avoidability of the danger, i.e.,*

       a.     *the user's knowledge of the product,*

       b.     *publicity surrounding the danger, or*

       c.     *the efficacy of warnings, as well as*

       d.     *common knowledge and the expectation of danger;*

5)        *the user's ability to avoid danger;*

5)        the state of the art at the time the product is manufactured;

6)        the ability to eliminate danger without impairing the usefulness of the product or making it too expensive; and

7)        the feasibility of spreading the loss in the setting of the product's price or by purchasing insurance.

*Banks*, 264 Ga. at 736 n.6 (emphasis added).

Factors 4 and 5 both involve the question of whether the danger can be avoided—one from the perspective of an individual user (factor 5), and one from the perspective of the reasonable user or users (doctors in general) (factor 4). If this were not so, the two factors would be duplicative. Just as the courts must, when interpreting a statute of a contract, give meaning to all of the words, so should the Court give meaning to the wording of the factors and their differences. *See Arby's Rest. Grp., Inc. v. McRae*, 292 Ga. 243, 245, 734 S.E.2d 55, 57 (2012)("when interpreting a statute courts must give meaning and intent to all words"); *Brooke v. Phillips Petroleum Co.*, 113 Ga. App. 742, 744, 149 S.E.2d 511, 513–14 (1966)("In ascertaining the intent, 'that construction will be favored which gives meaning and effect to all of the terms of the contract over that which

nullifies and renders meaningless a part of the language therein contained'"). Because the two factors are both included and written differently, they must mean different things: that is, "avoidability of the harm" cannot mean the same thing as "the user's ability to avoid danger."

Similarly, the subfactors under avoidability of the harm must all be given meaning. While "the user's knowledge of the product" appears to be a reference to the individual user, "publicity surrounding the danger" and "common knowledge and the expectation of danger" seem to refer to the knowledge of a broader group or users—doctors in general.

Much attention has been given by the parties to the term "the efficacy of warnings." Defendants would have the Court believe that the phrase refers to how effective a warning to the individual user would be. However, that question seems to be addressed through subfactor 1, "the user's knowledge of the product," so that 'the efficacy of warnings" must mean something else.

Plaintiff's counsel has looked at the use of this phrase by courts around the country and has found that the phrase does not refer to the effectiveness of the warning to an individual user, but rather the effect a warning would be expected to have on the reasonable user, a group, or the public at large. *See*, *e.g.*, *Glittenberg v. Doughboy Recreational Indus., Inc.*, 436 Mich. 673, 702, 462 N.W.2d 348, 361 (1990), *on reh'g sub nom. Glittenberg v. Doughboy Recreational Indus.*, 441 Mich. 379, 491 N.W.2d 208 (1992)("We remain largely uninformed regarding such crucial questions as the efficacy of warnings against diving when they are provided"); *Union Carbide Corp. v. Nix, Jr.*, 142 So. 3d 374, 381 (Miss. 2014)("Ziegler admitted that he had not obtained any peer-reviewed articles on warnings, the testing of warnings, or the efficacy of warnings."); *Large v. Mobile Tool Int'l, Inc.*, No. 1:02CV177, 2007 WL 4580034, at *7 (N.D. Ind. Dec. 27, 2007) ("[Expert] never worked for an aerial-lift manufacturer, and has never conducted any studies to determine the efficacy of warnings or operator's manuals on people who do not read manuals or

warning decals."); *Bunch v. Hoffinger Indus., Inc.*, 123 Cal. App. 4th 1278, 1287, 20 Cal. Rptr. 3d 780, 787 (2004)(expert "testified concerning the efficacy of warnings on children"); *Teson v. Dir. of Revenue, State of Mo.*, 937 S.W.2d 195, 198 (Mo. 1996)("courts must measure the efficacy of warnings to drunk driving arrestees who refuse to submit to a chemical test"); *Mazda Motor of Am., Inc. v. Rogowski*, 105 Md. App. 318, 331, 659 A.2d 391, 397 (1995)("the giving of unnecessary warnings should be avoided because the presence of superfluous warnings seriously detracts from the efficacy of warnings that are needed"); *Dreyer v. Exel Indus.*, S.A., No. 05-10285-BC, 2008 WL 11355535, at *9 (E.D. Mich. June 10, 2008)("Courts consider the adequacy, accuracy, and efficacy of warnings for the safe use of a product in assessing whether they meet the standard of care."); *Suarez v. W.M. Barr & Co., Inc.*, No. 13 C 4569, 2015 WL 6407441, at *5 (N.D. Ill. Oct. 20, 2015), *aff'd in part, rev'd in part*, 842 F.3d 513 (7th Cir. 2016)("Although Laughery concluded that the warnings on the Goof Off label were inadequate, he did so based on his learned opinion regarding the efficacy of warnings"); *In re Seroquel Products Liab. Litig.*, No. 6:06-MD-1769-ORL-22D, 2009 WL 3806436, at *10-11 (M.D. Fla. July 20, 2009)(finding that Dr. Plunkett is qualified to offer opinions about labeling and efficacy of warnings); *Bennie v. Compaq Computer Corp.*, No. 00-2235-CIV, 2002 WL 34714567, at *5 (S.D. Fla. Oct. 21, 2002)("Plaintiff has failed to demonstrate that Dr. Pugh is qualified to testify regarding warnings, let alone the efficacy of warnings on keyboards."); *Kinser v. Gehl Co.*, 184 F.3d 1259, 1273 (10th Cir. 1999), *abrogated by Weisgram v. Marley Co.*, 528 U.S. 440, 120 S. Ct. 1011, 145 L. Ed. 2d 958 (2000)("Plaintiff advanced sufficient evidence suggesting that, if Gehl had evaluated the efficacy of warnings on its 1870 baler …, the company would have learned of the excessive dangers posed by the 1870 baler's design and the availability of ameliorative devices."); *Drury v. Am. Honda Motor Co.*, 93-1414 (La. App. 1 Cir. 12/22/94), 659 So. 2d 738, 745, *writ denied*, 95-

1012 (La. 6/23/95), 660 So. 2d 437(manufacturers agreed to affix warnings to its products and "evaluate the efficacy of warnings and labels"); *Zen Magnets, LLC v. United States of Am. Consumer Prod. Safety Comm'n*, No. 17-CV-02645-RBJ, 2018 WL 2938326, at *14 (D. Colo. June 12, 2018)("his mind was irrevocably closed on a key factual question of the efficacy of warnings or marketing."). The Restatement Third of Torts also refers to efficacy of warnings in general terms: "requiring warnings of obvious or generally known risks could reduce the efficacy of warnings generally." Rest.3d Torts, Products Liability, § 2, com. j, p. 31.

Thus, while some of the *Banks* factors address the perception and knowledge of the individual user—in this case, Dr. Rheudasil—other factors, including "the efficacy of warnings," must be evaluated for their effect on the reasonable user or the pool or users—doctors in general.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully urges the Court to admit evidence concerning warnings—and the effect they would have on the reasonable user or users—at the trial of this case.

Dated January 13, 2019.                    Respectfully Submitted,

*/s/ Joseph N. Williams*_____
Joseph N. Williams, Atty. No. 25874-49
Riley Williams & Piatt, LLC
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317) 633-5270
Facsimile: (317) 426-3348
Email: jwilliams@rwp-law.com

*Liaison Counsel to Plaintiffs' Steering Committee
and on behalf of Plaintiffs' Steering Committee*

*/s/ Michael W. Heaviside*_____
Michael W. Heaviside, Esq.
Heaviside Reed Zaic, A Law Corporation
910 17th Street NW, Suite 800

5

        Washington, DC 20006
Telephone: (202) 233-1993
Email: mheaviside@hrzlaw.com

*/s/ Ben C. Martin*_____
Ben C. Martin, Esq.
The Law Office of Ben C. Martin
3710 Rawlins Street, Suite 1230
Dallas, TX 75219
Telephone: (214) 761-6614
Facsimile: (214) 74407590
Email: bmartin@bencmartin.com

*/s/ David P. Matthews*_____
David P. Matthews, Esq.
Matthew and Associates
2509 Sackett St.
Houston, TX 77098
Telephone: (713) 522-5250
Facsimile: (713) 535-7184

*Plaintiffs' Co-Lead Counsel*

## CERTIFICATE OF SERVICE

    I hereby certify that on January 13, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

        */s/ Ben C. Martin*_____
Ben C. Martin