UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates to:

*Brand v. Cook Medical, Inc. et al.,*
Case No. 1:14-cv-06018-RLY-TAB

**THE COOK DEFENDANTS' BRIEF
IN SUPPORT OF PLAINTIFF'S MOTION TO
MAINTAIN DOCUMENTS UNDER SEAL [DKT. NO. 8646]**

**I.   INTRODUCTION**

Plaintiff has filed **Plaintiff's Memorandum in Support of Motion to Exclude or Limit the Testimony of Renu Virmani, M.D. [Dkt. No. 8639]** *under seal.* Plaintiff also has submitted as supporting exhibits various documents designated as "Company Confidential" or "Confidential" by the Cook Defendants[1], pursuant to Case Management Order #8 (Stipulated Protective Order on Confidential Information). In accordance with Local Rules 5-11(d)(1) and 5-11(d)(2)(A)(ii), Plaintiff filed these confidential documents specifically, **Plaintiff's Memorandum and Exhibits A, B, and C** – *under seal.* Finally, Plaintiff has filed Plaintiff's Motion to Maintain Documents Under Seal [Dkt. No. 8646].

The Cook Defendants submit this Brief in Support of Plaintiff's Motion to Maintain Documents Under Seal and respectfully request that the Clerk of this Court maintain these documents ***under seal***.

---

[1] The Cook Defendants in this matter are Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS (collectively, the "Cook Defendants" or "Cook").

US.120546925

The Clerk should maintain **Plaintiff's Memorandum in Support of Motion to Exclude or Limit the Testimony of Renu Virmani, M.D. [Dkt. No. 8639]** and **Plaintiff's Exhibits A, B, and C thereto –** *under seal* because there is good cause for sealing the documents. The documents contain Cook confidential, proprietary, and sensitive internal company information on trade secrets, product research and development, post-market product analysis, sales, marketing, and public relations, regulatory affairs, complaint handling, internal corporate structure and business operations, or confidential financial information. Accordingly, there is good cause to seal the documents to prevent public disclosure of the Cook Defendants' confidential business information and competitive harm to the Cook Defendants.

**II.    THE APPLICABLE LEGAL STANDARD**

1. Under Federal Rule of Civil Procedure 26(c)(1)(G), the court may, "for good cause," enter an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." *See also Baxter International, Inc. v. Abbott Laboratories*, 297 F.3d 544, 546 (7th Cir. 2002) (documents that "meet the definition of trade secret or other categories of bona fide long-term confidentiality" may be sealed). Likewise, private health information should be maintained under seal at least until consent by the patient is obtained. *See generally Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017).

2. **Trade Secrets –** Indiana has generally adopted the definition of trade secret found in the Uniform Trade Secret Act.[2] *See, e.g.*, *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 414

---

[2] The presence of Cook's headquarters in Indiana justified the application of Indiana trade secret law to the issues here, because Indiana is the state where Cook would feel any injury or harm. *See, e.g.*, *Micro Data Base Sys., Inc. v. Dharma Sys., Inc.*, 148 F.3d 649 (7th Cir. 1998) (applying Indiana choice-of-law principles in a trade-secret case and holding that New Hampshire substantive law governed because the entity holding the trade secrets was headquartered there).

(S.D. Ind. 2001).[3] Under this standard, a protectable trade secret has four characteristics: (1) information; (2) that possesses independent economic value; (3) that is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (4) is the subject of efforts to maintain its secrecy that are reasonable under the circumstances. *See, e.g.*, *Hamilton v. State Farm Mut. Auto Ins. Co.*, 204 F.R.D. 420, 423 (S.D. Ind. 2001); *Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 759 N.E.2d 239, 245–46 (Ind. Ct. App. 2001); *Burk v. Heritage Food Serv. Equip., Inc.*, 737 N.E.2d 803, 813 (Ind. Ct. App. 2000).

3. Other confidential business or commercial information that does not technically fit the definition of trade secret is similarly entitled to the same level of protection as trade secrets if its disclosure would be harmful physically or economically. *See Chaib v. GEO Grp., Inc.*, 2014 WL 4794194, at *1–3 (S.D. Ind. Sept. 24, 2014); *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at *1 (S.D. Ind. Feb. 2, 2009) (finding that protection is required where disclosure of certain proprietary information would "provide a blueprint for competitors").

4. **Research and Development** – Federal courts, including this court, have consistently held that product development, research, and testing documents and information are entitled to protection from disclosure as confidential and proprietary business information. Such information constitutes confidential business information because "a competitor's access to [a company's] research and development . . . present[s] potential dangers and may lead to a windfall to the discovering party." *Star Scientific,* 204 F.R.D. at 416 (S.D. Ind. 2001) (Baker, J.); *see also United States ex rel. Long v. GSD&M Idea City LLC*, 2014 WL 12648520, at *2 (N.D. Tex. Jan. 3, 2014) ("[I]nformation in which the producing party has a commercial interest,

---

[3] The Indiana Uniform Trade Secret Act is identical to the Uniform Trade Secrets Act, 1(4), 14 U.L.A. 438 (1985).

such as . . . research data, . . . has been found to constitute confidential commercial information."); *Kowalsky v. Hewlett-Packard Co.*, 2012 WL 892427, at *2 (N.D. Cal. Mar. 14, 2012) (exhibits were "sealable in their entirety because they contain[ed] HP's confidential product testing and evaluation process"); *cf. Andrx Pharm., LLC v. GlaxoSmithKline, PLC,* 236 F.R.D. 583, 586 (S.D. Fla. 2006) ("Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information." (citation omitted)), *affirmed,* 2006 WL 2403942 (S.D. Fla. 2006).

5. **Post-Market Product Analysis** – Similarly, post-market product analysis is also entitled to protection from disclosure as confidential and proprietary business information. Disclosure of such proprietary post-market analysis information is harmful because it would "provide a blueprint for competitors." *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at *1 (S.D. Ind. Feb. 2, 2009); *see also Star Scientific*, 204 F.R.D. at 415 (research and data, such as sales techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge").

6. **Sales, Marketing, and Public Relations –** Confidential marketing plans or sales strategies have been held to constitute protectable trade secrets or protected confidential business information. *See, e.g.*, *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1270 (7th Cir. 1995) (trade secret material for sports drink includes information regarding the pricing, distribution and marketing of the drink and not just the drink formula); *Star Scientific*, 204 F.R.D. at 415 (research and data, such as sales techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge"); *Burk v. Heritage Serv. Equip.*, 737 N.E.2d 803, 814 (Ind. Ct. App. 2000) (finding that employee unfairly used marketing information and sales strategies in breach of the Indiana trade secrets clause); *see*

*also Brunswick Corp. v. Jones*, 784 F.2d 271 (7th Cir. 1986) (confidential marketing strategies held protectable); *AGS Capital Corp., Inc. v. Prod. Action Intern., LLC*, 884 N.E.2d 294, 311 (Ind. Ct. App. 2008) (stolen information related to marketing strategy would "put [a company's competitors] at a severe disadvantage"). Good cause exists to maintain the confidentiality of such strategic plans and analysis when disclosure of that information would reveal the company's "response to changing market situations and competitive threats within the marketplace, and could therefore give a competitor insight into '[the company's] internal thinking'" and when publicizing this material "would allow [the company]'s competitors the benefit of this information without incurring the effort or expense." *Bradburn Parent/Teacher Store, Inc. v. 3M*, 2004 WL 1146665, at *4 (E.D. Pa. May 19, 2004) (citation omitted).

7. **Regulatory Affairs** – Courts have held that information related to regulatory compliance and/or submission efforts and strategies constitutes confidential business information. *See, e.g.*, *Bayer Healthcare, LLC v. Norbrook Labs., Ltd.*, 2009 WL 3444938, at *1 (E.D. Wisc. Oct. 23, 2009) (good cause existed to seal deposition testimony and internal company emails containing proprietary commercial information and strategy related to an FDA filing). Such proprietary information, like confidential information regarding pricing and sales, is confidential because "the information is created to enhance [companies'] business and give them a competitive edge". *Star Scientific*, 204 F.R.D. at 415.

8. **Complaint Handling** – Internal complaint handling procedures and materials constitute trade secrets in Indiana if they contain (1) information; (2) that derives independent economic value; (3) is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (4) is the subject of efforts reasonable under the circumstances to maintain its secrecy. *Zemco Mfg., Inc. v. Navistar*

*Intern. Transp. Corp.*, 759 N.E.2d 239, 245-46 (Ind. Ct. App. 2001); *see also, e.g., Hamilton v. State Farm Mut. Auto. Ins. Co.*, 204 F.R.D. 420, 423-24 (S.D. Ind. 2001); *Rep. Servs. Inc. v. Liberty Mut. Ins. Cos.*, 2006 WL 1635655, at *5 (E.D. Ken. June 9, 2006) (concluding that claims handling and training materials "had economic value to [defendant] due to (1) their confidential nature, (2) the time, effort, and expense [defendant] invested in creating these materials, (3) the evolutionary process surrounding the development of these materials, (4) the competitive nature of the [industry's] business, and (5) the fact that competitors in [that] industry do not disclose information about their claims handling policies and procedures to one another.").

9. **Internal Information on Corporate Structure and Business Operations –** Courts also have determined that information about a corporation's internal business operations and corporate structure is confidential and proprietary and, therefore, entitled to protection from public disclosure. *E.g., True Health Chiropractic, Inc. v. McKesson Corporation,* 2015 WL 3409721 (USDC N.D. Cal.) (May 27, 2015) at *4 (granting motion to seal confidential and proprietary information about the defendant's internal business operations and corporate structure).

10. **Confidential Financial Information –** Similarly, Courts have determined that highly-sensitive and confidential information including financial records, production records, manufacturing records, sales records, customer information, and vendor information is entitled to protection from public disclosure. *See e.g., ABRO Indus., Inc. v. 1 New Trade, Inc.*, 2015 WL 13655677 (USDC N.D. Ind.) (Sept. 16, 2015) at *3 (granting plaintiff's motion for a protective order with respect to confidential information about its financial records, sales, customers, and pricing).

11. **Communications with Consulting Experts –** Federal Rule of Civil Procedure 26(b)(4)(D) protects against an opposing party's discovery of facts and/or opinions of "consulting experts" who are retained in anticipation of litigation and not expected to testify at trial. Furthermore, Federal Rule of Civil Procedure 26(b)(3) protects from discovery documents and tangible things that are prepared in anticipation of litigation by a party's consultant.

12. **Medical Privacy –** With respect to medical information, courts in the Seventh Circuit have routinely recognized that, while parties' medical information may be made public where it is relevant to the claims at issue and/or necessary to the disposition of the case, other information may be kept under seal with good cause. *See Westedt v. Franklin,* 2016 WL 2997504, at *1 (E.D. Wis. May 23, 2016); *Gibson v. Milwaukee Cnty.*, 2015 WL 12964665, at *1 (E.D. Wis. Mar. 26, 2015); *Noe v. Carlos,* 2008 WL 5070463, at *3 (N.D. Ind. Nov. 26, 2008). The good cause inquiry thus requires balancing a party's acknowledged interest in medical privacy, *see Whalen v. Roe*, 429 U.S. 589, 599–600 (1977), against the Court's (and parties') interest in the accurate resolution of the conflict and the public interest in transparency. *Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017). Private health information should be maintained under seal at least until consent by the patient is obtained. *See generally id.* at *3.

13. The "good cause" standard under Rule 26(c) "requires a balancing of the potential harm to the litigants' interests against the public's right to obtain information concerning judicial proceedings." *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 415-16 (S.D. Ind. 2001) (Baker, J.); *see also Felling v. Knight*, 211 F.R.D. 552, 554 (S.D. Ind. 2003) ("The rule essentially operates to balance the public's interest in open proceedings against an individual's private interest in avoiding annoyance, embarrassment, oppression, or undue burden or expense.") (Baker, J.).

US.120546925

Consistent with the doctrine discussed earlier, however, "the presumption of public access 'applies only to the materials that formed the basis of the parties' dispute and the district court's resolution'; other materials that may have crept into the record are not subject to the presumption." *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013) (citing *Baxter Int'l*, 297 F.3d at 548)).

### III. THE CONFIDENTIAL DOCUMENTS AT ISSUE THAT SHOULD BE MAINTAINED UNDER SEAL

**Exhibit A [Dkt. Nos. 8639-2 to 8639-5]** is the transcript of the Deposition of Renu Virmani, M.D. (taken on August 8, 2017). Dr. Virmani's deposition has been designated as "Confidential." Portions of Dr. Virmani's deposition reference and discuss Cook's preclinical (animal) IVC filter studies VCA1, VCA2, VCA3, and VCOB, and August 2016 IVC Filter Data Summary. As discussed below, Cook's preclinical filter studies and the IVC Filter Data Summary constitute confidential and proprietary business and commercial information regarding product research, development, and testing, complaint handling, and post-market product analysis. Cook has designated this internal information and documents as "Company Confidential."

**Exhibit B [Dkt. Nos. 8639-6 to 8639-13]** is the Expert Report of Renu Virmani, M.D. (dated May 29, 2018). Cook has designated and marked Dr. Virmani's expert report: "Confidential." Among other things, Dr. Virmani's expert report references and discusses Cook's preclinical (animal) IVC filter studies VCA1, VCA2, VCA3, and VCOB, which are confidential and proprietary product research, development, and testing documents and information. Cook has designated and stamped each of these preclinical (animal) studies referenced in Dr. Virmani's expert report as "Company Confidential" pursuant to Case Management Order #8.

Dr. Virmani's expert report also references and discusses Cook's August 2016 IVC Filter Data Summary.  The IVC Filter Data Summary is a comprehensive summary of: 1) available data from Cook's in-house complaint database associated with Cook IVC filters; 2) an up-to-date summary of all manufacturers' IVC filter complaint data as reported to the FDA (assessed from the FDA's Manufacturer and User Facility Device Experience (MAUDE) database); and 3) a systematic search of literature pertaining to the effectiveness of IVC filters in preventing PE and the potential risks posed by Cook IVC filters.  As such, the IVC Filter Data Summary is a confidential and proprietary Cook complaint handling and post-market product analysis document.  Like the preclinical studies referenced above, Cook has designated and stamped the IVC Filter Data Summary as "Company Confidential."

**Exhibit C [Dkt. No. 8639-14]** is excerpts from the trial transcript in the case *Pavlock v. Wong, et al.* in the District Court of Harris County, Texas, on May 17, 2018.  Specifically, **Exhibit C [Dkt. No. 8639-14]** is page 88, lines 1 through 25, of Dr. Virmani's trial testimony.  In this portion of her testimony, Dr. Virmani testifies, in part, about her the scope of her work as a pathologist.  Plaintiff has filed **Exhibit C [Dkt. No. 8639-14]** *under seal*.  It does not appear that Cook's confidential business or commercial information or confidential patient medical information are disclosed in this portion of Dr. Virmani's trial testimony in the *Pavlock* matter.  Nevertheless, out of an abundance of caution, Cook defers to Plaintiff and her decision to treat this information as confidential and file it under seal.

**Plaintiff's Memorandum in Support of Motion to Exclude or Limit the Testimony of Renu Virmani, M.D. [Dkt. No. 8639]** references, cites, or quotes from Cook's internal documents referenced in Exhibits A and B.  Plaintiff's Memorandum also references, cites, or quotes from Exhibit C.  Exhibits A and B refer to internal Cook internal documents and contain

confidential information regarding product research, development, and testing, complaint handling, and post-market product analysis.

### IV.   THERE IS GOOD CAUSE TO MAINTAIN THE DOCUMENTS UNDER SEAL

Good cause exists to maintain Exhibits A and B under seal. Both documents reference and discuss Cook's preclinical (animal) IVC filter studies VCA1, VCA2, VCA3, and VCOB, and Cook's IVC Filter Data Summary. The preclinical studies are confidential and proprietary product research, development, and testing documents and information. The IVC Filter Data Summary, which includes information on Cook's in-house complaint database associated with Cook IVC filters, manufacturers' IVC filter complaint data as reported to the FDA, and a search of literature pertaining to the effectiveness of IVC filters in preventing PE and the potential risks of Cook IVC filters, is a confidential and proprietary complaint handling and post-market product analysis document. Cook has designated the preclinical studies and IVC Filter Data Summary as "Company Confidential." Cook would face competitive and economic harm if information about its preclinical studies and its IVC Filter Data Summary as set forth in Exhibits A and B (or otherwise) were publicly disclosed. Exhibits A and B should remain sealed to prevent public disclosure of Cook's proprietary and confidential business and commercial information.

As the Cook Defendants more fully demonstrated in their May 1, 2017 letter to Magistrate Judge Tim A. Baker and the supporting Declaration of Mark Breedlove (attached for reference as **Exhibit 1**), Cook invests substantial resources into product research, development, and testing, including with regard to Cook's IVC filter technology. Breedlove Decl. ¶ 6. Cook maintains strict confidentiality over its research and development ideas, efforts, and results, and considers such information to be proprietary to the company. *Id*. Disclosure of such information

would result in competitive harm to Cook and could "lead to a windfall to the discovering party." *Star Scientific*, 204 F.R.D. at 416; Breedlove Decl. ¶ 7.

With respect to their references and discussion of Cook's preclinical (animal) IVC filter studies, Exhibits A and B should be maintained under seal to protect Cook's interest in its confidential and proprietary product research, development, and testing information. Cook invests substantial resources into product research, development, and testing and maintains strict confidentiality over its efforts. Breedlove Decl. ¶ 6. The medical device industry, and the IVC Filter market in particular, is highly competitive. *See* Breedlove Decl. ¶¶ 3-5. The disclosure of Cook's confidential research and development information with respect to its IVC filters would result in competitive harm to Cook. Breedlove Decl. ¶ 7. Exhibits A and B which reference such confidential and proprietary information should be and remain sealed.

With respect to Exhibit A's and Exhibit B's references and discussion of Cook's IVC Filter Data Summary, these exhibits should remain under seal in order to protect Cook's interests in its confidential and proprietary complaint handling and post-market product analysis information and documents. Again, Cook's May 1, 2017 letter to Magistrate Judge Tim A. Baker and the supporting Declaration of Mark Breedlove (attached as **Exhibit 1**) are instructive on these issues.

Cook has developed complaint handling protocols and processes that govern the manner in which Cook responds to complaints, the types of information Cook evaluates in response to complaints, and the concerns and factors that drive Cook's decision-making in the complaint handling process. Breedlove Decl. ¶ 12. Cook maintains strict confidentiality with regard to its complaint handling efforts, as well as the underlying processes and protocols for such efforts. *Id*. Public dissemination of such information would harm Cook's competitive position by revealing

US.120546925

the internal procedures Cook developed for processing customer complaints in an accurate and efficient manner. Breedlove Decl. ¶ 13.

Further, Cook undertakes substantial efforts to evaluate the performance of its medical devices (including IVC filters), as well as competitor devices in the industry, post-market. Breedlove Decl. ¶ 8. These include efforts to (among other things) evaluate adverse event reports, both quantitatively and qualitatively; review and internally evaluate peer-reviewed literature about Cook and competitor products; to perform testing on characteristics of Cook and competitor products; and, when there are reported failures, to study and understand how and why Cook or competitor products allegedly failed. *Id.* If publicly disclosed, Cook's methods of assessing its own products, including characteristics of products it may want to improve, could be exploited to Cook's commercial disadvantage and even discourage Cook employees (as well as the employees of other organizations in the medical device industry) from engaging in and/or memorializing such analyses, which could have a negative impact on product development and safety. Breedlove Decl. ¶ 9. Disclosure of Cook's proprietary post-market product analysis set forth in the IVC Filter Data Summary, which is referenced and discussed in Exhibits A and B, would also harm Cook because it would "provide a blueprint for competitors." *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at *1 (S.D. Ind. Feb. 2, 2009); *see also Star Scientific*, 204 F.R.D. at 415 (research and data, such as sales techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge"). Exhibits A and B should be maintained under seal for good cause in order to protect Cook from competitive harm.

US.120546925

Additionally, as stated above, out of an abundance of caution, Cook defers to Plaintiff and her decision to treat Exhibit C – page 88, lines 1 through 25, of Dr. Virmani's trial testimony in the *Pavlock* matter -  as confidential and file it under seal.

Finally, good cause exists to maintain **Plaintiff's Memorandum in Support of Motion to Exclude or Limit the Testimony of Renu Virmani, M.D. [Dkt. No. 8639]** under seal because it relies on, references, cites, or quotes from Cook's internal documents referenced Exhibits A and B as well as from Exhibit C.  Exhibits A and B contain Cook confidential information regarding product research, development, and testing, complaint handling, and post-market product analysis.  Plaintiff's Memorandum should be maintained under seal to protect Cook's interest in its confidential and proprietary business and commercial information.

V.  **CONCLUSION**

For all the foregoing reasons, the Cook Defendants respectfully request that the Court issue an Order directing the Clerk to maintain **Plaintiff's Memorandum in Support of Motion to Exclude or Limit the Testimony of Renu Virmani, M.D. [Dkt. No. 8639] and Exhibit A [Dkt. Nos. 8639-2 to 8639-5], Exhibit B [Dkt. Nos. 8639-6 to 8639-13], and Exhibit C [Dkt. No. 8639-14] thereto *under seal*.**  The documents contain Cook confidential, proprietary, and sensitive internal company information on product research, development, and testing, complaint handling, and post-market product analysis.  There is good cause to seal the documents to prevent public disclosure and competitive harm to the Cook Defendants.

In accordance with Local Rule 5-11(e)(4), the Cook Defendants have submitted a proposed order maintaining the documents under seal.

Respectfully submitted,

Dated: January 14, 2019        /s/ Andrea Roberts Pierson
Andrea Roberts Pierson (# 18435-49)
J. Joseph Tanner (# 11856-49)
Nicholas B. Alford (# 31867-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:   (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-Mail:  joe.tanner@faegrebd.com
E-Mail:  nicholas.alford@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

US.120546925

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2019, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

/s/ Andrea Roberts Pierson

US.120546925