**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

This Document Relates to Plaintiff

    *Tonya Brand*
    No. 1:14-cv-06018-RLY-TAB

**COOK DEFENDANTS' MEMORANDUM REGARDING
PLAINTIFF'S "OPENING THE DOOR" ARGUMENT REGARDING
FAILURE-TO-WARN EVIDENCE ON DESIGN-DEFECT CLAIMS**

At the pretrial hearing last week, Plaintiff's attorneys argued vigorously that they should be permitted to introduce evidence concerning the adequacy of Cook's warning notwithstanding the Court's grant of summary judgment on Plaintiff's failure-to-warn claim. The Court's ruling rejecting this argument was direct and unambiguous:

> This case, as I've indicated on many occasions, is not a failure to warn case. That's gone. It is a design case. And the Court believes and rules that any warnings evidence, failure to warn, or efficacy of warnings would cause confusion to the jurors in this case, and the Court will not -- not allow that evidence to come in.

1/15/19 Tr. at 13:6-11. The Court was correct that it had made this statement many times—in its Order granting summary judgment, its Order denying reconsideration, and in its oral rulings at status conferences and the pretrial conference. *See* Brand Dkt. 274.[1]

---

[1] Plaintiff filed her motion in the separate docket relating to her case, rather than the MDL docket in which most *Brand* filings have been made.

Notwithstanding this clear direction, Plaintiff has tried yet again to circumvent the Court's rulings, this time by arguing that Cook somehow "opened the door" to "some warnings evidence" by describing Dr. Rheudasil's expected testimony in Cook's opening statement. Plaintiff's argument fails for multiple reasons.[2]

1.　Plaintiff's motion/bench brief does not quote the specific passages that she claims "opened the door" to warnings evidence, but merely lists citations in a footnote. Dkt. 174 at 1 n.1. Examination of the actual passages cited reveals they are innocuous and did nothing to open any door. The first three passages Plaintiff cites read:

> These are doctors. They know our medical conditions and our history. They have medical training. They are in the very best position to weigh exactly how great the risk of PE is for their patients in comparison to the filter's known risks.

1/14/19 Tr. at 256:11-15.

> The evidence in this case from both sides – from doctors, from engineers, from scientists -- it will prove **that, first, the risks of IVC filters were well understood by doctors and, second, doctors are willing to accept those** risks to protect their patients from pulmonary embolism.

*Id*. at 257:3-4 (highlighted language is the passage cited by Plaintiff; remainder provided for intelligibility).

> There's no doctor in this case who will tell you that the Celect and every other filter on the market has a known risk of fracture.

*Id*. at 301:22-24. Nothing in any of these passages does anything to open the door to evidence about the supposed inadequacy of Cook's warnings or the Celect IFU; they merely comment on the "common knowledge" of doctors concerning the risks of filters generally, an issue that Plaintiff acknowledges as one of the *Banks* factors. Brand Dkt. 274 at 1.

---

[2] Cook has already addressed many of these issues in its previous submissions, in particular in Cook Defendants' Reply Memorandum Regarding Plaintiff's Argument For Admission Of Failure-To-Warn Evidence On Design-Defect Claims (Dkt. 9861). Cook incorporates those arguments by reference instead of repeating them again here, and uses this response to address only the specific arguments raised in Plaintiff's latest submission.

2

2.      Plaintiff's motion/bench brief also cites several passages concerning Dr. Rheudasil's personal knowledge of the risks of filters:

> You will hear from Mrs. Brand's doctor directly, that he had a usual practice of warning patients of the risks of IVC filters at the time that he placed Mrs. Brand's filter and that Mrs. Brand actually signed consent forms before she got her filter that warned of the risk of complications, including things that are unforeseen, all the way up to deaths.

9/14/2019 Tr. at 289:8-14,

> He will explain that he knew all of the risks that come with IVC filters when he placed the Celect, including the risk that the Celect could perforate or fracture.

Id. at 292:7-9.

> First, listen carefully to the doctor who treated Mrs. Brand, Dr. Rheudasil. He's not a paid expert by either side. He knows the risks and benefits of preventing PE and he weighed those against the risks of her IVC filter.

Id. at 301:19-22.  In addition, Plaintiff's attorneys sent an email to Tina Doyle at 6:15 p.m. on January 15, 2019, that identified three additional similar passages (without citation):

> "You'll hear Dr. Rheudasil say that he'd used the Celect many, many times before he placed Mrs. Brand's IVC filter and that **he continued to use the Celect even after her filter fractured. That's how confident he was in the technology**."

> "The risk of perforation doesn't change his mind when he says that the benefits of protecting a patient from dying of PE outweigh any of the risks, including the risks with the Celect."

> "He will explain that he knew all of the risks that come with IVC filters when he placed the Celect, including the risk that the Celect would perforate or fracture."

(highlighting in original).

Again, none of these statements opens the door to evidence about the supposed inadequacy of Cook's warnings; none of them even **mentions** warnings, the Cook IFU, or other communications from Cook.  Instead, these were simple, accurate statements of what Dr. Rheudasil will testify based on Cook's designations from Dr. Rheudasil's deposition testimony

(1) to which Plaintiff did not object or (2) on which the Court overruled Plaintiff's objections—both **notwithstanding** the grant of summary judgment on Plaintiff's failure to warn claim.

For example, Cook's statement in opening that Dr. Rheudasil would testify that he continued to use Celect filters even after Plaintiff's issue arose—which Plaintiff claimed "opened the door" to warning evidence—is based on Cook's designation of lines 97:15-18 of Dr. Rheudasil's deposition: "Following Mrs. Brand's 2011 filter fracture, did you continue to use the Celect filter for your patients?" A: I believe so." *See* Dkt. 8674-1. Plaintiff objected to that designation, and at the January 8, 2019 hearing, the Court overruled that objection. *See* 1/9/2019 Tr. at 144:3-6 ("97 line 15 to 98 line ten, show that is overruled. Defendant was still treating Ms. Brand. Also goes to knowledge of the risk."). Cook's opening merely accurately described the coming Rheudasil testimony that the Court had already approved, and had approved despite the absence of a warnings claim. It did not "open the door."

Similarly, Cook's statements in opening about Dr. Rheudasil's knowledge of the risks of IVC filters and his view that the benefits of IVC filters outweigh risks including perforation are based on Dr. Rheudasil's deposition testimony on those topics. *See* Rheudasil Dep. at 61:17-62:9, 63:17-64:6, 85:5-19 (Dkt. 8674-1). Cook designated these passages of Dr. Rheudasil's deposition to be presented at trial, and Plaintiff raised no objection to them. Plaintiff cannot now claim that Cook has "opened the door" to warnings evidence simply by describing testimony to which Plaintiff did not object despite the summary judgment against her on warnings.

3. Plaintiff's memo also argues that opened the door by creating the "impression" that the broad medical community knew generally about the risks of filters. *See* Brand Dkt. at 1 ("Cook's counsel gave the impression that doctors knew everything they needed to know to use the Celect filter safely and effectively"). But this "impression" is not controversial, it is an undisputed fact. Plaintiff's own expert Dr. Gordon confirmed it: "Dr. Gordon, my question is:

4

In the general medical community in 2009 were physicians aware that filters generally can tilt, migrate, perforate, fracture, be difficult to retrieve, cause bleeding and death? A: Yes." Gordon Tr. at 152:6-11 (Dkt. 8664-3). Cook's introduction of agreed facts concerning general medical knowledge does nothing to open the door to evidence concerning whether the Celect's specific warnings and instructions were adequate—which is the subject of the Dr. Gordon testimony she quotes and apparently proposes to offer.

4. Plaintiff's "open the door" argument also does not get around the causation issue. As Dr. Rheudasil testified and as the Court has held, Dr. Rheudasil did not rely on the Celect IFU or any other information from Cook in treating Plaintiff, so testimony about whether Cook's warnings and instructions were adequate is necessarily irrelevant to her claim that she was injured by a design defect. Logically, if a doctor did not rely on warnings or instructions from the manufacturer is selecting or using a medical device, then the adequacy of those warnings cannot be a factor in determining whether the medical device had a design defect that caused a plaintiff's injury, and evidence concerning such warnings is not relevant or admissible. A design defect that depends on the "effectiveness" of warnings on which no one relied cannot logically be a defect without which the injury "would not have occurred." GSPJT 60.200 (2016). Put another way, an "impression" that doctors generally and Dr. Rheudasil specifically knew about the risks of filters cannot prejudice Plaintiff because the lack of causation prevents Plaintiff from basing any claim on any contrary impression.

5. Beyond her quotation of Dr. Gordon and her vague citation to Dr. Krumholz, Plaintiff never provides specifics of the "some evidence about warnings" that she wants to introduce based on Cook's opening. If experience is any guide, Cook anticipates that Plaintiff's attorneys would view any ruling that Cook's opening statement had "opened of the door" as *carte blanche* to try to bring up and offer any "warning evidence" they can whenever they can.

5

This would invite even more sidebars about what "warning evidence" is permitted during the testimony of both Plaintiff's experts and Cook's employees, lengthen the trial, and confuse the jury.

In sum, Cook's opening statement did not open any door to warnings evidence, it merely offered accurate comments about evidence that the Court has already agreed to admit. Plaintiff's current brief is just one more effort to divert this case from her design claim to the irrelevant issue of warnings. As one of the cases Plaintiff cites puts it, the warnings evidence Plaintiff wants to offer "would not correct any false impression, but rather divert the case into a lengthy side issue and result in undue prejudice to" defendant. *United States v. Lawson*, 2010 WL 186386 (E.D. Kan. Jan. 8, 2010).

## CONCLUSION

For these reasons, the Cook Defendants urge the Court to again reject Plaintiff's argument and to exclude at trial any evidence concerning the claimed inadequacy of Cook's warnings and instructions for the Celect IVC filter.

Respectfully submitted,

Dated: January 15, 2019

/s/ Andrea Roberts Pierson
Andrea Roberts Pierson (# 18435-49)
Jessica Benson Cox (# 26259-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
Email:  andrea.pierson@faegrebd.com
Email:  jessica.cox@faegrebd.com

Charles Webber (MN # 215247)
Bruce Jones (MN # 179553)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402

Telephone: (612) 766-8719
Facsimile: (612) 766-1600
Email:  chuck.webber@faegrebd.com
Email:  bruce.jones@faegrebd.com

*Counsel for the Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2019, a copy of the foregoing document was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Counsel for Defendants will serve any non-CM/ECF registered parties.

/s/ Andrea Roberts Pierson