# Exhibit B



**Douglas B. King**
*Doug.King@WoodenMcLaughlin.com*

January 20, 2017

**VIA EMAIL ONLY**
Ben C. Martin, Esq. (bmartin@bencmartin.com)

  Re: MDL 2570: Discovery Issues, Your 11/24/16 Letter

Dear Ben:

  I write to respond to your 11-page letter of November 24, 2016 (an extra copy of which is attached for your convenience), in light of developments and activities since November 24, including our long conference call of Monday afternoon, January 16, 2017.

  While we did not discuss this on Monday, January 16, 2017, I wanted to respond in writing to your complaints on pages 1 and 2 of your November 24 letter that we have not complied with Federal Rules of Civil Procedure with regard to our objections to your discovery requests. You repeated your assertions to that effect in your email to my colleague John Babione of November 28, 2016, at 9:23 p.m., and again in your email to me of December 5, 2016, at 8:52 p.m. As I wrote you in an email on December 6, 2016, we disagree with your assertions in this regard.

  In our 80-page Cook's Objections and Responses to Plaintiffs' Master Set of Request for Production of Documents served April 15, 2015 ("Response to Master RFPs") and in our 96-page Cook's Objections and Answers to Plaintiffs' Master Set of Interrogatories, also served April 15, 2015 ("Answers to Master Interrogatories"), we set forth numerous objections and responses that we believe are self-explanatory. We stand on those objections.

  Similarly, in our Cook's Objections and Responses to Plaintiffs' Second Master Set of Requests for Production of Documents, served June 13, 2016 ("Response to Second Master RFPs"), and in our Cook's Objections and Responses to Plaintiffs' Third Request for Production of Documents, served May 31, 2016 ("Response to Third RFPs"), we stated objections and responses that are consistent with the Federal Rules of Civil Procedures, and we therefore stand on those objections.

  In my email to you of Tuesday, December 6, 2016, 1:45 p.m., I responded to your email of December 5, 2016, 8:52 p.m., in which you asked us to withdraw our objections to your

# wooden mclaughlin

Ben C. Martin, Esq.
January 20, 2017
Page 2

discovery requests. Copies of my email of December 6 and yours of December 5 are attached. I have not seen a reply to my December 6 email.

Please note that the version of Rule 34(b)(2), which governs Responses and Objections to Rule 34 Requests for Production, which existed when we served our Response to Master RFPs on April 15, 2015, is different than Rule 34(b)(2) as it exists today. The version of Rule 34 that was in effect at that time required less detail for objections to discovery requests than does the current version of that Rule. Most important to the arguments made by you on page 2 of your November 24 letter, and repeated in your emails to my colleague John Babione and me of November 28 and December 5, 2016, respectively, regarding the ESI and documents produced and you and other plaintiffs' counsel prior to December 1, 2015, Rule 34(b)(2)(C) did not **then** require us to "state whether any responsive materials are being withheld on the basis of [the] objection," as Rule 34(b)(2)(C) now requires. The text of Rule 34(b)(2) that was in effect until December 1, 2015, stated as follows:

> (B) Responding to Each Item. For each item or category, the response must either state that inspection and related activities will be permitted as a requested or state an objection to the request, including the reasons.
>
> (C) Objections. An objection to part of a request must specify the part and permit inspection of the rest.

Effective December 1, 2015, Rule 34(b)(2) was amended and expanded to read as follows:

> (B) Responding to Each Item. For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons. The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection. The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response.
>
> (C) Objections. **An objection must state whether any responsive materials are being withheld on the basis of that objection**. An objection to part of a request must specify the part and permit inspection of the rest. (Emphasis added)

Therefore, regarding your assertions that our discovery responses in 2015 somehow violated the Federal Rules of Civil Procedure, the version of the Rules **then** in effect controls. By that standard, Cook committed no violation of the Federal Rules.



Ben C. Martin, Esq.
January 20, 2017
Page 3

     Further, all of our written discovery responses should be read in the context of rulings by the Court that were in place at the time. For example, all of the written responses to plaintiffs' discovery requests, as described above, were served **after** Magistrate Judge Baker entered his Order on February 12, 2015 Telephonic Status Conference, filed February 20, 2015 (Dkt. 244) (the "2/12/15 Order"), in which he stated that "[s]earch terms shall not exceed 20, which shall include more restrictive anchor terms, and shall be limited to 25 custodians. Bird's Nest and Celect Platinum shall **not** be among the search terms, given that these devices are not at issue in this litigation." (2/20/15 Order, ¶ 1, p. 1; emphasis added.)

     I quote the above paragraph from Judge Baker's 2/20/15 Order and call to your attention the attached communications between my partner Jim Boyers and a number of your colleagues on the plaintiffs' side of March 18, 2015, and March 20, 2015, including the spreadsheets of agreed search and anchor terms. You will note that Jim wrote Troy Brenes on March 20, with copies to John Dalimonte, Jeff Gibson and Takena Thompson, as those four lawyers were then taking the lead for the plaintiffs in developing the ESI protocol that was eventually adopted by the Court as part of what became Case Management Order #11 (Electronically Stored Information and Document Production Protocol), entered July 10, 2015, as Dkt. 521 ("CMO #11"). CMO #11 should also be read in the context of rulings construing it and Fed. R. Civ. Pro. 34 by Magistrate Judge Baker in his Order on Proposed ESI Order in Denmark ESI, filed July 10, 2015, as Dkt. 522 (the "7/10/15 Order"), and District Judge Young's Entry on Plaintiffs' Objection to Magistrate Judge's Order on Electronically Stored Information and Document Production Protocol – Denmark ESI, filed September 14, 2015, as Dkt. 649 (the "9/14/05 Order").

     For example, you complain about not having been provided documents concerning the VISTA physician education training program in paragraph 2 on page 3 of your 11-page letter. However, "VISTA" was not a search term that was agreed upon (see the correspondence of March 20 and 27, 2015, cited above), as we have pointed out to you in a number of telephone conference calls about discovery issues since your letter of November 24, 2016. Nonetheless, as we pointed out most recently in our call this past Monday, we have produced more than 1,500 documents concerning the VISTA program as part of the custodian files of Dennis L. Windsor, Bruce Fleck and Darrell Talbert, and, on or about January 6, 2017, Jim Smith. As I recall, while we were on the call on Monday, your colleague Jason Voelke did a quick word search on your database of the documents we have produced and reported finding about 1,600 documents containing the word "VISTA."

     Thus, while we have already produced quite a few documents regarding the VISTA program, we were never specifically requested to produce documents concerning VISTA, as VISTA was not a search term. Forcing us to go back to our clients and search their documents and ESI, from which we have already produced to you over 1,000,000 pages of materials (to give you an idea of how much ESI we searched and collected), and search for documents concerning VISTA to produce to you now, in addition to the over 1,500 documents already produced, would



Ben C. Martin, Esq.
January 20, 2017
Page 4

constitute a substantial burden that is not proportionate to the needs of this case under Federal Rule of Civil Procedure 26(b)(1).

I also quote above the first paragraph of Judge Baker's 2/20/15 Order because I wanted to call to your attention the second sentence of it, in which Judge Baker specifically ruled that Bird's Nest and "Celect Platinum" are **not** to be among the search term because those devices were not at issue in the litigation at that time.

Thus, you knew that we would not be producing documents concerning the Celect Platinum or Bird's Nest filter based on Judge Baker's 2/20/15 Order. In fact, our Response to Master RFPs made that clear when we defined the "Products at Issue" in paragraph 14 of that Response, on pp. 3-4, that, for purposes of the 52,130 pages of documents being produced therewith, we did not include documents regarding Bird's Nest or Platinum.

As you know, as of this writing, we have produced 200,417 documents, consisting 1,076,211 Bates-stamp numbered pages (a page count which is low, as one bates-stamp number is assigned to a multi-slide Power Point produced in native format, or a multi-page Excel spreadsheet produced in native format) and 182.72 GB of data, which we have produced in a series of rolling productions beginning in 2015 and as recently as January 6, 2017, with more to come on January 20, 2017, as indicated in our Cook Defendants' Memorandum Explaining Production of Complaint Files sent to you at 5:33 p.m. on Tuesday, January 17, 2017 (the "Memo re Complaint Files"). Based on our productions of documents and ESI to date, and the supplemental productions coming to you today and on January 27, 2017 (see below), we have complied fully with our obligations under Federal Rules of Civil Procedure 26 and 34. We stand on those productions and our objections as stated in the documents as described above.

Turning now to the 39 enumerated paragraphs on pages 3 to 11 of your letter, I will address each in turn and explain our position as to each of your requests for production, or your complaints with the productions made thus far. The statements of our position are updated, where applicable, by our conversation of Monday, January 16, 2017.

1.      In paragraph 1 on page 3 of your November 24 letter, you ask for a "date certain by when [we] plan [ ] to complete the rolling production of documents." As I told you on Monday, we believe that our rolling production of documents responsive to your many discovery requests is complete as of this writing, subject to the following exceptions.

First, as you know, on January 6, 2017, pursuant to the directions of Magistrate Judge Baker at the discovery conferences held on November 10, 2016, and December 12, 2016, and his Order Following December 12, 2016, Discovery Conference, entered on December 16, 2016 as Document 3245 (the "12/16/16 Order"), we produced 1,031 complaint files, in addition to the 494 complaint files previously produced in 2015. Further, as noted in the Memo re Complaint



Ben C. Martin, Esq.
January 20, 2017
Page 5

**wooden mclaughlin**

Files, we are producing 13 more jBase complaint files on January 20, 2017, and our clients are still looking for one missing CINC jBase complaint file.

Thus, the first exception to our statement that our rolling production is complete has to do with the complaint files. Specifically, we are in the process of producing three more of them and will produce one more if our clients find it. Further, we recognize that you may contend that our production of complaint files as of Friday, January 20, 2017, may not be sufficient and that you may ask Judge Baker to order us to produce still more of the complaint files. If you do so, and he agrees with you, that would be a further production we would make.

A second exception, in addition to the complaint files, is that, as you know, on November 4, 2016, Magistrate Judge Baker ruled, which he later confirmed in his Discovery Order filed November 15, 2016, as Document 3069 (the "11/15/16 Order"), that we should produce six additional custodian files, but that the files should not be governed by the European Union Privacy Directive or need to be translated in English. As we discussed on Monday, January 16, 2017, in response to the 11/15/16 Order, you identified two additional custodian files, the custodian file of Jim Smith, which was produced on or about January 6, 2017, and the custodian file of Brian Bates.

As my partner Jim Boyers explained to you this past Monday, most of Mr. Bates' custodian file was produced on January 6, 2017, along with Mr. Smith's custodian file, but a portion of his custodian file which was on a laptop in storage is still being searched, and there may be documents to be produced after that review has been completed.

In any event, the second exception to our statement that the rolling production is complete would be the production of any additional custodian files which you request, up to the four you are now allowed by Magistrate Judge Baker in his 11/15/16 Order.

Third, as described below and as we discussed on Monday, if the Court determines that we should have to produce documents or ESI concerning the Celect Platinum, or concerning the VISTA physician education programs beyond which we have already produced, or concerning incomplete and ongoing clinical trials (as discussed below), that would be additional productions we would have to make.

Fourth, there may be additional documents that will be produced based upon our discussions of Monday, January 16, and as discussed below. Any such documents would be additional documents or ESI we would produce.

Subject to the four exceptions outlined above, we consider that our production of documents and ESI is complete as of this writing.

Ben C. Martin, Esq.
January 20, 2017
Page 6

 **wooden mclaughlin**

2.      In paragraph 2 of your letter (p. 3 of 11), you request production of documents relating to Cook's VISTA program for physician education and support. With regard to the VISTA Program, the members of the training team are identified on the second page of the document previously produced as CookMDL2570_0688947, and the program itself is generally described on the fourth to the last slide in the Power Point presentation that was produced as part of the Cook PE Prevention/IVC Filter Overview of December 9, 2013, CookMDL2570_0371681.

As explained above and in our January 16, 2017, conference call, we have not been previously requested to produce VISTA education documents, and VISTA was not a search term. As also mentioned above, we have produced over 1,500 VISTA documents already, including 246 from Darrell Talbert's custodian file, 179 from Dennis Windsor's custodian file, 368 from Bruce Fleck's custodian file, and 51 from Jim Smith's custodian file. While "only" 51 documents in Jim Smith's file explicitly mentioned VISTA, almost all of the 145 files produced from Jim Smith's custodian file dealt with physician training.

We believe that requiring us to go back to our clients to ask them to provide us with documents concerning VISTA, under the circumstances described above, would not be proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues and whether the burden and because the burden and expense of the proposed discovery outweighs its likely benefit.

For example, at the moment all of us are focusing on the trial preparations in the three bellwether trial cases. To our knowledge, none of the physicians involved in the three bellwether trials attended any VISTA education training programs. If it turns out when they are deposed that they say they did, we would produce anything that they saw or were shown if, in fact, they testify that they attended a VISTA program.

3.      In paragraph 3 of your letter, you requested that we produce the "Knowledge Matters" binder, and the CD within it, plus the "Cook Code-Book," the "Anatomy Handouts," and the "Rapid Review of Anatomy Book" and the "SIR Interventional Radiology Sourcebook."

As I indicated when we spoke on Monday, those portions of the Knowledge Matters binder which relate to vena cava filters are being produced and should be a part of the production being made on January 27, 2017. One exception is that the CD that was in the binder we were given was corrupt, and we have contacted the client to see if the CD that was in the binder contains anything other than the paper that is in the Knowledge Matters binder. If so, we will get you a copy of that CD, and review what is on it and determine what, if any, of it should be produced.

Case 1:14-ml-02570-RLY-TAB   Document 9951-2   Filed 01/16/19   Page 8 of 16 PageID #: 66983



Ben C. Martin, Esq.
January 20, 2017
Page 7

  As to the other four specific items mentioned in Jim Matthews' memorandum and requested in your Item 3, we have asked the client about these and will get back to you.

  4. As we discussed on Monday, the Power Point presentation requested in paragraph 4 on page 3 of 11 of your November 24 letter has been produced.  The Power Point was produced in native format and the 25 separate slides that comprise it were collectively assigned Bates number CookMDL2570_0735934.  I recognize that the Power Point to which I refer has a slightly different name than the one you cite in your letter, and shows its only author to be Bruce Fleck, without Jim Matthews being identified.  However, it is our understanding that the one we produced as 0735934 is substantively the same as the one you request, and is the only such Power Point that still exists.  That 25-slide Power Point is CookMDL2570_0735934, and was Deposition Exhibit 347 at the deposition of Arne Molgaard-Nielsen on July 14, 2016.

  As to "assessment forms," those forms were not part of Cook's Power Point presentation itself, but were created by a third-party vendor, Brainshark, Inc., as explained in the attached email of Jim Matthews, page CookMDL2570_0427911-912.  It is our understanding that those assessment forms no longer exist.  But, we have asked our client, and if they are able to locate any, they will be produced.

  5. All organizational documents or charts depicting the structure and the parties involved in Cook's Peripheral Intervention Strategic Business Unit (your Request, ¶ 5) that existed as of the time of the deposition of Mark Breedlove, as our corporate representative to the organization and structure of the companies, which was taken January 16, 2015, by Laura Smith and John Dalimonte on behalf of all plaintiffs, were produced prior to the taking of that deposition or at the deposition.  As you did not raise this as an issue in our call on January 16, 2017, we presume you agree that this request of yours is no longer an issue.

  6. In paragraph 6, you request production of all scripts and actual recordings of the "Venous Drive-Thru" podcasts.  Many of the draft and final podcast transcripts have been produced.  Those that have not been produced are duplicative.  We have at least one audio file that was produced.  We are consulting with our clients to confirm that we have produced all of the podcasts and similar audio recordings that exist.  If we learn that any relevant and responsive podcasts or audio recordings exist that we did not produce, we will let you know.

  7-8. In paragraphs 7 and 8 of your November 24 letter, you request the "complete Concur database" and the "complete IRIS database."  Both databases cover many areas of Cook far beyond those relevant to IVC Filters.  The Concur Database tracks expense reporting for employees.  In connection with Defendant Fact Sheets in the discovery pool cases, Cook has produced exports from the Concur Database and the IRIS Database specific to those cases.  It has also done so in the Bellwether cases that were not part of the original discovery pool.  To require us to produce the "complete" Concur and IRIS databases, and all documents related to the use of them, would be unduly burdensome, not proportional to the needs of the case and would

Ben C. Martin, Esq.
January 20, 2017
Page 8



**wooden mclaughlin**

implicate huge volumes of data that would not be responsive to any request for production made in this case, because they are used by other SBUs dealing with other unrelated products and contain important proprietary information about Cook's relationships with its customers.

9.   In paragraph 9, you request "all insurance policies and endorsements for coverage periods after 10/1/14 to the present." All insurance policies that cover claims for inferior vena cava filters at issue in this litigation have been produced, with one exception, which will be produced, as there is just one such policy that has not yet been produced at this point.

We object to producing insurance policies that do not apply to the vena cava filter claims at issue in this litigation. Those insurance policies would not be discoverable under Federal Rule of Civil Procedure 26(a)(1)(A)(iv), which requires only the production of insurance agreements under which an insurance business may be liable to satisfy all or part of a possible judgment in this action, or to indemnify or reimburse payments made to satisfy that judgment.

10.   As I explained to you in our conference call this past Monday, we do not believe that any documents that relate to H. Bob Smouse, M.D., have been withheld, or redacted in part, on grounds of privilege. You indicated that you would provide us with copies of documents relating to Dr. Smouse which you claim were inappropriately redacted. When you do so, we will respond accordingly.

11.   In paragraph 11, you request CDs made for sales representatives to deliver to physicians and health care professionals. Any CDs, or documents that would have been contained on them, have been previously produced. As we discussed on Monday, January 16, you indicated that you would provide us with examples of documents describing or referring to such CDs so that we can track down any such CDs, as I told you on Monday that, to the best of our knowledge, no CDs were created to provide to physicians.

12-13.   In paragraphs 12 and 13, you requested the production a total of 157 modules used to train sales representatives. Following up on our discussion of last Friday, January 13, 2017, in confirmation of prior discussions and exchanges of emails, 29 training modules are being produced in their native format today, Friday, January 20, 2017. You can view the constituent parts of the SCORM files using a standard issue browser, *e.g.* Explorer, Chrome, etc. However, using such a standard-issue browser may well prompt annoying errors. For the best appearance and usability, you should get a SCORM player/viewer. For reference, the SCORM file format is the industry standard for e-learning materials. Based on our discussions of last Friday and Monday, we understand that the production of these training modules will satisfy your Request Nos. 12 and 13. Therefore, we consider your requests 12 and 13 resolved.

14.   Paragraph 14 requests data from the Global Product File. There is a huge amount of information in the Global Product File that has no relevance to this litigation. We do not know that we are required to provide all of the information that you are requesting in paragraph



Ben C. Martin, Esq.
January 20, 2017
Page 9

14, specifically with respect to the Günther Tethered Filter or the Celect Platinum Filter. Information from the Global Product File would be pulled into TrackWise. Therefore, any IVC Filter information in the Global Product File appears in the 1,538 complaint files we have now produced (494 in 2015; 1,031 on 1/6/17; and 13 on 1/20/17). Producing the entire Global Product File is unreasonable, but we will provide a list of all Global Product File model numbers, and Referenced Part Numbers or RPNs, for IVC Filters. As we discussed on Monday, we will check to make sure that all RPNs have been provided to you. If they have not been, we will generate a list of those RPNs and provide them to you.

15. On Monday, you clarified your Request No. 15 by saying that what you want are balance sheets or financial statements for William Cook Europe ApS, Cook Incorporated and Cook Medical LLC, that are subsequent to those ending in 2015, which were the last ones produced. We indicated that we would check with our client to see if there are any later or subsequent financial reports. If so, we will produce them to you. If there are no more recent financial reports to produce to you, we will consider this request number 15 resolved.

16. You request part numbers or RPNs for any and all IVC filters manufactured, sold or tested from 1992 on. We are checking on additional RPNs as indicated above in response to your request number 14. However, we do not see how information as to the stainless steel version of the Gunther Tulip filter, which was never sold in this country, or the tethered or temporary version of the Gunther filter, which was never sold in this country, or the basket Gunther, which was never sold in this country, is relevant to this litigation, as all of your plaintiffs received Gunther Tulips or Celect filters in this country. As you recall, we defined the RPNs at issue in this MDL in our April 10, 2015, Response to Master RFPs described above, and did not include those three devices never sold in the U.S., without objection from you.

17, 19, 29, 31, 39. All of these requests seek the production of complaint files. As noted above, we believe we have satisfied your request for the production of complaint files consistent with our obligations under Fed. R. Civ. Pro. 26(b)(1), as explained in my prior correspondence to you regarding complaint files, my letter to Ms. Scheehle of January 6, 2017, and our Memo re Complaint Files of January 17, 2017. Therefore, as stated in that Memo, we regard your multiple requests for the production of complaint files to have been satisfied by our productions of such files through Friday, January 20, 2017, and the production of the one missing CINC jBase complaint file, if it is found. If you disagree, let us know.

18. It is our understanding that the accurate numbers are really IGTF-30 and IGTF-30-Celect. These are really the internal model numbers for the filters themselves, not for finished products or sets that are marketed. The Work Orders for Gage in Hill for instances are titled "RPN IGTF-30" and "RPN IGTF-30-Celect." These Work Orders represent the records for creating the actual filters and not the filter set. We have checked the WCE manufacturing records dating back to 1995 and found no record of a manufactured and sold IVC Filter set under



Ben C. Martin, Esq.
January 20, 2017
Page 10

a RPN of IGTF-30 or IGTCFS-30.  Complaint files are maintained under the completed set such as IGTCFS-65-FEM, not the individual filter RPNs.

20.     We believe that this request goes beyond the scope of appropriate discovery because it addresses the Günther temporary Inferior Vena Cava Filter, which was only marketed in Europe and which is not at issue in any claim at issue in MDL 2570.  The filter in the article is a Gunther temporary or tethered filter, which was never sold in the country and is **not** a Gunther Tulip filter.  Nowhere in the article does it say Tulip.  The description of the device is that of a tethered filter.  The email from Arne to Anja Høj that was produced refers to a Gunther Basket which, again, was never sold in this country, and is not a Gunther Tulip filter.

21.     We are in the process of investigating your request for product complaints and RPN numbers for the Tulip filters that were the subject of clinical studies included as appendices to Cook's 1998 and 2000 510k submissions.  We will investigate this further and let you know what we learn from that investigation.

22.     You request our identification of tables, charts or similar documents that identify the filter complaints which were reported to FDA pursuant to 21 CFR Part 803.  To the best of our knowledge, as we told you in our conference on January 16, 2017, no one document exists that lists all of the TrackWise and jBase filter complaints that were reported to FDA pursuant to 21 CFR Part 803.  However, the 1,538 complaint files that we will have produced to you by the end of today, January 20, 2017, disclose which of those complaints generated Medical Device Reports ("MDRs") under 21 CFR Part 803.  In addition, there are three documents that identify which complaints generated MDRs.  The first was the Cook Incorporated ("CINC") jBase Flat File, previously produced and Bate-stamped CookMDL2570_1021830.  The second is a William Cook Europe ApS ("WCE") jBase complaint Flat File being produced today.  The third is an export from the TrackWise database that will be produced on or before next Friday, January 27, 2017.  When this last production occurs on January 27, 2017, this should resolve your request.

23.     We have produced privilege logs in accordance with CMO #10 that we believe satisfy our obligations under the Federal Rules of Civil Procedure.  If you believe that documents have been redacted based on privilege which should not have been, based on the context, let us know what those documents are and we will discuss it further with you.

24.     You have requested in paragraph 24 of your November 24 letter that each document that has been withheld or redacted based on proprietary content, ongoing clinical studies and Celect Platinum be produced in unredacted form.  I respond to each issue separately below.

First, as to "proprietary," no document has been withheld or redacted solely because the entire document, if withheld, or the redacted portion of a produced document, was "proprietary."  While the Document Specific Codes on the slip sheets for some redacted documents in some



Ben C. Martin, Esq.
January 20, 2017
Page 11

instances cited "proprietary," "NR" or "non-responsive" has been cited as well, meaning that the redacted information is not responsive to any of the plaintiffs' requests for production or is not relevant to any party's claim or defense and proportional to the needs of the case under Fed. R. Civ. Pro. 26(b)(1), in addition to being proprietary commercial information.

Second, as to "Celect Platinum," we explained above why information on this device has not been produced, based on the 2/12/15 Order of Judge Baker, when it was not also coupled with information on the Celect.

Third, information as to clinical studies has been withheld or redacted because it relates to ongoing clinical studies, specifically the CIVC or PRESERVE studies. At least two reasons exist why information on the CIVC and PRESERVE ongoing clinical trials has not been produced.

First, the timing of those studies means they are not relevant to the cases now being discovered and worked up for trial, i.e., the three bellwether trial cases of *Hill*, *Gage* and *Brand*. In those three cases, Cook's filters were implanted on November 17, 2010 (*Hill*), April 25, 2011 (*Gage*), and March 19, 2009 (*Brand*). Per https://clinicaltrials.gov/ct/show, the CIVC study, NCT02046096, did not begin until January of 2014, and the PRESERVE study, NCT02381509, did not start until October of 2015. Thus, whatever is learned in those two clinical trials could not have had an impact on the decisions of the physicians and plaintiffs to implant filters years earlier, or be evidence of a failure to warn those physicians. *See, e.g., Coras v. The Coleman Co.*, 2005 U.S. Dist. LEXIS 45880, *19 (S.D. Fla. 2005) ("To establish a strict liability failure to warn a plaintiff must prove that the defendant did not adequately warn of a particular risk … known or knowable … at the time of manufacture.").

Second, neither ongoing clinical trial is scheduled to be completed until 2019, and the primary completion date for final data collection for the primary outcome being measured in the CIVC study will not be until October of 2017, with the same date for PRESERVE not being until May of 2019. *See* https://clinicaltrials.gov/ct/show NCT0204696 (for CIVC) and NCT02381509 (for PRESERVE). In short, whatever data has been collected to date in those two clinical trials are preliminary and, therefore, potentially misleading.

As the Seventh Circuit held in *Dow Chemical Co. v. Allen*, 672 F.2d 1262, 1278 (7th Cir. 1982), the production of raw research data, far in advance of the time that relevant and probative results could be expected, should not be compelled over the non-frivolous objections of the researchers, because such data are inherently unreliable and potentially misleading, as they are raw research data from which conclusions cannot yet be drawn. *See also In Re Snyder*, 115 F.R.D. 211 (Ariz. 1987); *R.J. Reynolds Tobacco Co.*, 518 N.Y.S. 729 (N.Y. Sup. Ct. 1987); Joe S. Cecil, *Judicially Compelled Disclosure of Research Data*, I Cts., Health, Sci. & L. 434 (1991); Mark Labaton, Note, *Discovery and Testimony of Unretained Experts: Creating a Clear and E Equitable Standard to Govern Compliance With Subpoenas*, 1987 Duke L.J. 140; Frederick H.



Ben C. Martin, Esq.
January 20, 2017
Page 12

**wooden mclaughlin**

Boness & John F. Cordes, Note, *The Researcher-Subject Relationship: The Need For Protection and a Model Statute*, 62 Geo. L.J. 243 (1973).

     25.    With regard to your request in paragraph 25 for the production of "unredacted copies" of the 36 documents specifically listed in paragraph 25, we have looked for the 36 documents cited in your paragraph 25. To begin with, please note that, in your letter, you used the same Bates number for three separate items, the documents identified in paragraphs gg., hh., and ii., Cook MDL2570_0319188, but you describe that same document differently in each of those three subparagraphs of your paragraph 25. As a result, we cannot be sure which of the 36 documents with the file name that you are referring to has the correct Bates number. It appears to us that subparagraph ii. does not correctly cite to a document we produced, as we cannot find a document with that Bates number that matches your description.

     We have reviewed your request that we produce complete, un-redacted documents listed in the other subparagraphs to paragraph 25, a. – z., and aa. - hh. At this point, we can respond as follows:

     We will not produce un-redacted copies of the 9 documents listed in paragraphs h., j., k.--n., s., ff., and gg., as all deal with the CIVC and PRESERVE ongoing clinical studies, which we believe are non-responsive, not relevant and not discoverable, as explained in our response to paragraph 24. of your letter above.

     On the other hand, we will produce complete and un-redacted copies of the 11 documents listed in subparagraphs t.--z. and aa.--dd. On closer examination of these documents, it appears that they were erroneously coded by one of our Danish reviewers as being related to ongoing clinical studies. In fact, they relate to a completed clinical study, one of the studies conducted by the Zaragosa group in Spain, and they therefore will be produced.

     We will also produce an un-redacted copy of the document identified in subparagraph r. It was erroneously coded by a Danish reviewer as related to ongoing clinical studies, whereas it in fact relates to a published study by Dr. Kuo.

     We will also produce an un-redacted copy of the document in subparagraph q. It was erroneously coded by a Danish reviewer as related to an ongoing clinical study, whereas it is the report of the completed MED study comparing the penetration rates for the Celect and what became the Celect Platinum. That MED study has already been produced as CookMDL2570_0805629.

     We will also produce an unredacted version of the document identified in subparagraph o., as it was erroneously coded by a Danish reviewer as related to ongoing clinical studies, whereas in fact it is related to a completed study for a CAPA.

Ben C. Martin, Esq.
January 20, 2017
Page 13

**wooden mclaughlin**

We will not produce an un-redacted copy of the document in subparagraph jj., as we had to redact portions of it to comply with the EU Data Privacy Directive.

We will not produce un-redacted copies of the 6 documents listed in subparagraphs a.--c. and e.--g., as the redacted portions deal with devices not related to any issues in these cases, and thus not to any issues in this litigation. The devices to which those documents relate were either under consideration at the time but were never made or produced, or they are not otherwise involved in these cases. Therefore, the proprietary commercial information in the redacted portions of these documents far outweighs any evidentiary value. Consequently, the redacted information is not discoverable under Fed. R. Civ. Pro. 26(b)(1).

Still under consideration by us and the client are the 5 documents identified in subparagraphs d., i., p., ee., and hh. We will let you know whether we will agree to produce complete and un-redacted copies of these documents.

26.  With regard to this request, we believe that all such documents have been produced, and that your request is therefore resolved.

27.  Mary Beth Stepanek is the founder and is/was president for Accelerated Clinical Research, which deal with research projects in Mexico and Latin America. She appears to have advised MED Institute on the details of getting the 2008 Celect study approved by Mexican authorities, as evidenced by the correspondence found in CookMDL2570_0399042. It appears that any documents involving her that were in a selected custodian file that hit on search terms were reviewed and produced if relevant.

28.  With respect to Request No. 28, we have identified data sources known as the CAPA Database and the CAPA Old Database maintained by WCE. We were pointed directly to CAPA files related to those two data sources. Before that, they used two other databases that we were pointed to on specific filter issues. We have produced all the CAPA files to which we were directed to by the clients at WCE as of the time we collected documents and ESI from WCE in July of 2015. We are discussing with our client whether any CAPAs initiated subsequent to that collection date are responsive to any discovery requests and are discoverable under Fed. R. Civ. Pro. 26(b).

30.  Request No. 30 refers to scanned paper complaint files. In general, scanned paper does not have a true "file path." We are double-checking these Bates numbers to make sure that the 23 documents you identify are scanned paper files and that there is, therefore, no file path. If we find that, as we suspect, these are all scanned paper complaint files, then there is no file path information exists that we could produce.

31.  We have investigated your request No. 31 and have determined that one CD of imaging exists for four of the five complaints you identified, and that an email with attached

Ben C. Martin, Esq.
January 20, 2017
Page 14

**wooden mclaughlin**

imaging exists for the fifth complaint. All such materials will be produced on or before January 27, 2017, one week from today.

32. This request deals with files that are .FMEA files, which require special software to be opened and reviewed. We do not believe it is Cook's obligation to provide software to make those files accessible when they have been produced in native format. We believe it is up to the Plaintiffs to obtain a license to use that software in order to examine the materials. We did determine that roughly 600 .FMEA files out of roughly 3,000 had not been produced in native format. On Monday, November 28, 2016, we produced those in native format. The six hundred that had been slipsheeted were duplicates of the .FMEA files of the 2,400 already produced.

33. With respect to this request, we produced the documents that were misidentified as junk files in connection with a supplemental production on Monday, November 28, 2016.

34. Request No. 34 has incorrect information to the extent that it suggests that we did not provide necessary executable files required to open and view the contents of the CDs. In some instances, we did not provide the executable files, but they are not necessary to view DICOM files if you have a DICOM viewer, which is easy to obtain and use. In fact, it is our understanding, from our discussions this past Monday and from other parts of your November 24 letter, that several of your colleagues have downloaded DICOM viewers into their computers. As we told you on Monday, January 16, 2017, we have produced all imaging studies in the form that the clients received them from the hospital or other health care providers which sent those imaging studies to our clients. If some of those images are not viewable through DICOM, it is because the images as received by our clients were not viewable through DICOM.

35. Request No. 35 falls into this same category. We believe that, in cases in which we received DICOM files because that is what the clients received, they have been produced in that format. In the instances where we produced a PDF or TIF of a DICOM image, it is because that is how the image was stored in the media that we obtained from the clients. One exception is that we had to produce several DICOMs as TIFFs in order to comply with the EU Data Privacy Directive. The native cannot be redacted, and without a redaction, it cannot leave the European Union.

36. With respect to this request, we are confident that we have previously produced all imaging studies that exist for the animal studies to which you refer.

37. With respect to this request, we were not asked for the actual histologic slides of the sheep tissue from the animal studies at issue until fairly recently. We are checking with the client to see what histology from the sheep studies still exists.

38. Request No. 38 is duplicative of previous requests. We believe that our production on Monday, November 28, 2016, addressed and resolved this issue.



Ben C. Martin, Esq.
January 20, 2017
Page 15

39.    As we told you on Monday, on January 16, 2017, all complaint files in which a death was reported to the relevant Cook company, and which also involve an inferior vena cava filter, have been or are being produced, regardless of whether there is any information in that complaint file somehow attributing the death to the filter.

This letter is intended to confirm and narrow our positions as to your requests in your letter of November 24, 2016, in light of subsequent developments, including our call of this past Monday, January 16, 2017. We look forward to receiving your list of the matters that you and your fellow plaintiffs' lawyers consider still to be at issue and worthy of the consideration by Magistrate Judge Baker.

Let me know if you have questions or comments.

Very truly yours,

Douglas B. King

DBK/cgb
Enclosures
cc:    David P. Matthews, Esq. (dmatthews@thematthewslawfirm.com)
       Michael W. Heaviside, Esq. (mheaviside@hrzlaw.com)
       Joseph N. Williams, Esq. (jwilliams@rwp-law.com)
       Matt Schultz, Esq. (mschultz@levinlaw.com)
       Mark Chavez, Esq. (mchavez@thematthewslawfirm.com)
       Andrea Roberts Pierson, Esq.
       JMB
       RJS
       KRJ
       Cook IVCF Team

1678876-1 (10909-0412)