**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND            Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION             MDL No. 2570

_____

This Document Relates to:

    *Brand v. Cook Medical, Inc. et al.,*
    Case No. 1:14-cv-06018-RLY-TAB

_____

**THE COOK DEFENDANTS' BRIEF**
**IN SUPPORT OF PLAINTIFF'S MOTION TO**
**MAINTAIN DOCUMENTS UNDER SEAL [DKT. NO. 8887]**

**I.      INTRODUCTION**

    Plaintiff has filed **Plaintiff's Omnibus Motions *in Limine* and Authority in Support
[Dkt. No. 8873] *under seal.*** Plaintiff also has submitted as supporting exhibits various
documents - including documents designated as "Company Confidential" or "Confidential" by
the Cook Defendants[1], pursuant to Case Management Order #8 (Stipulated Protective Order on
Confidential Information). In accordance with Local Rules 5-11(d)(1) and 5-11(d)(2)(A)(ii),
Plaintiff filed these documents specifically, **Plaintiff's Exhibits A through HH** – *under seal.*
Finally, Plaintiff has filed Plaintiff's Motion to Maintain Documents Under Seal [Dkt. No.
8887].

    The Cook Defendants submit this Brief in Support of Plaintiff's Motion to Maintain
Documents Under Seal and respectfully request that the Clerk of this Court maintain these
documents ***under seal***.

_____

[1]  The Cook Defendants in this matter are Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical
Incorporated), and William Cook Europe ApS (collectively, the "Cook Defendants" or "Cook").

The Clerk should maintain **Plaintiff's Omnibus Motions *in Limine* and Authority in Support [Dkt. No. 8873] and Exhibits A through I, K through N, P through Z, and BB through HH thereto *under seal*** because there is good cause for sealing the documents. The documents contain Cook confidential, proprietary, and sensitive internal company information on trade secrets, product research and development, post-market product analysis, sales, marketing, and public relations, regulatory affairs, or complaint handling. The documents also contain private, sensitive medical information regarding Plaintiff Mrs. Brand. Accordingly, there is good cause to seal the documents to prevent public disclosure of the Cook Defendants' confidential business information and competitive harm to the Cook Defendants, and to protect Mrs. Brand's interest in her medical privacy.

## II.     THE APPLICABLE LEGAL STANDARD

1.      Under Federal Rule of Civil Procedure 26(c)(1)(G), the court may, "for good cause," enter an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." *See also Baxter International, Inc. v. Abbott Laboratories*, 297 F.3d 544, 546 (7th Cir. 2002) (documents that "meet the definition of trade secret or other categories of bona fide long-term confidentiality" may be sealed). Likewise, private health information should be maintained under seal at least until consent by the patient is obtained. *See generally Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017).

2.      **Trade Secrets –** Indiana has generally adopted the definition of trade secret found in the Uniform Trade Secret Act.[2] *See, e.g., Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 414

---

[2]   The presence of Cook's headquarters in Indiana justified the application of Indiana trade secret law to the issues here, because Indiana is the state where Cook would feel any injury or harm. *See, e.g., Micro Data Base Sys., Inc. v. Dharma Sys., Inc.,* 148 F.3d 649 (7th Cir. 1998) (applying Indiana

US.121614762

(S.D. Ind. 2001).[3] Under this standard, a protectable trade secret has four characteristics: (1) information; (2) that possesses independent economic value; (3) that is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (4) is the subject of efforts to maintain its secrecy that are reasonable under the circumstances. *See, e.g.*, *Hamilton v. State Farm Mut. Auto Ins. Co.*, 204 F.R.D. 420, 423 (S.D. Ind. 2001); *Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 759 N.E.2d 239, 245–46 (Ind. Ct. App. 2001); *Burk v. Heritage Food Serv. Equip., Inc.*, 737 N.E.2d 803, 813 (Ind. Ct. App. 2000).

3.      Other confidential business or commercial information that does not technically fit the definition of trade secret is similarly entitled to the same level of protection as trade secrets if its disclosure would be harmful physically or economically. *See Chaib v. GEO Grp., Inc.*, 2014 WL 4794194, at *1–3 (S.D. Ind. Sept. 24, 2014); *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at *1 (S.D. Ind. Feb. 2, 2009) (finding that protection is required where disclosure of certain proprietary information would "provide a blueprint for competitors").

4.      **Research and Development –** Federal courts, including this court, have consistently held that product development, research, and testing documents and information are entitled to protection from disclosure as confidential and proprietary business information.  Such information constitutes confidential business information because "a competitor's access to [a company's] research and development . . . present[s] potential dangers and may lead to a windfall to the discovering party."  *Star Scientific,* 204 F.R.D. at 416 (S.D. Ind. 2001) (Baker, J.); *see also United States ex rel. Long v. GSD&M Idea City LLC*, 2014 WL 12648520, at *2

---

choice-of-law principles in a trade-secret case and holding that New Hampshire substantive law governed because the entity holding the trade secrets was headquartered there).

[3]   The Indiana Uniform Trade Secret Act is identical to the Uniform Trade Secrets Act, 1(4), 14 U.L.A. 438 (1985).

(N.D. Tex. Jan. 3, 2014) ("[I]nformation in which the producing party has a commercial interest, such as . . . research data, . . . has been found to constitute confidential commercial information."); *Kowalsky v. Hewlett-Packard Co.*, 2012 WL 892427, at *2 (N.D. Cal. Mar. 14, 2012) (exhibits were "sealable in their entirety because they contain[ed] HP's confidential product testing and evaluation process"); *cf. Andrx Pharm., LLC v. GlaxoSmithKline, PLC,* 236 F.R.D. 583, 586 (S.D. Fla. 2006) ("Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information." (citation omitted)), *affirmed,* 2006 WL 2403942 (S.D. Fla. 2006).

5. **Post-Market Product Analysis** – Similarly, post-market product analysis is also entitled to protection from disclosure as confidential and proprietary business information. Disclosure of such proprietary post-market analysis information is harmful because it would "provide a blueprint for competitors." *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at *1 (S.D. Ind. Feb. 2, 2009); *see also Star Scientific*, 204 F.R.D. at 415 (research and data, such as sales techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge").

6. **Sales, Marketing, and Public Relations** – Confidential marketing plans or sales strategies have been held to constitute protectable trade secrets or protected confidential business information. *See, e.g.*, *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1270 (7th Cir. 1995) (trade secret material for sports drink includes information regarding the pricing, distribution and marketing of the drink and not just the drink formula); *Star Scientific*, 204 F.R.D. at 415 (research and data, such as sales techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge"); *Burk v. Heritage Serv. Equip.*, 737 N.E.2d 803, 814 (Ind. Ct. App. 2000) (finding that employee unfairly

- 4 -

used marketing information and sales strategies in breach of the Indiana trade secrets clause); *see also Brunswick Corp. v. Jones*, 784 F.2d 271 (7th Cir. 1986) (confidential marketing strategies held protectable); *AGS Capital Corp., Inc. v. Prod. Action Intern., LLC*, 884 N.E.2d 294, 311 (Ind. Ct. App. 2008) (stolen information related to marketing strategy would "put [a company's competitors] at a severe disadvantage").  Good cause exists to maintain the confidentiality of such strategic plans and analysis when disclosure of that information would reveal the company's "response to changing market situations and competitive threats within the marketplace, and could therefore give a competitor insight into '[the company's] internal thinking'" and when publicizing this material "would allow [the company]'s competitors the benefit of this information without incurring the effort or expense." *Bradburn Parent/Teacher Store, Inc. v. 3M*, 2004 WL 1146665, at *4 (E.D. Pa. May 19, 2004) (citation omitted).

7.     **Regulatory Affairs –** Courts have held that information related to regulatory compliance and/or submission efforts and strategies constitutes confidential business information. *See, e.g.*, *Bayer Healthcare, LLC v. Norbrook Labs., Ltd.*, 2009 WL 3444938, at *1 (E.D. Wisc. Oct. 23, 2009) (good cause existed to seal deposition testimony and internal company emails containing proprietary commercial information and strategy related to an FDA filing).  Such proprietary information, like confidential information regarding pricing and sales, is confidential because "the information is created to enhance [companies'] business and give them a competitive edge". *Star Scientific*, 204 F.R.D. at 415.

8.     **Complaint Handling –** Internal complaint handling procedures and materials constitute trade secrets in Indiana if they contain (1) information; (2) that derives independent economic value; (3) is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (4) is the subject of

- 5 -

efforts reasonable under the circumstances to maintain its secrecy. *Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 759 N.E.2d 239, 245-46 (Ind. Ct. App. 2001); *see also, e.g.*, *Hamilton v. State Farm Mut. Auto. Ins. Co.*, 204 F.R.D. 420, 423-24 (S.D. Ind. 2001); *Rep. Servs. Inc. v. Liberty Mut. Ins. Cos.*, 2006 WL 1635655, at *5 (E.D. Ken. June 9, 2006) (concluding that claims handling and training materials "had economic value to [defendant] due to (1) their confidential nature, (2) the time, effort, and expense [defendant] invested in creating these materials, (3) the evolutionary process surrounding the development of these materials, (4) the competitive nature of the [industry's] business, and (5) the fact that competitors in [that] industry do not disclose information about their claims handling policies and procedures to one another.").

9.      **Internal Information on Corporate Structure and Business Operations –** Courts also have determined that information about a corporation's internal business operations and corporate structure is confidential and proprietary and, therefore, entitled to protection from public disclosure. *E.g., True Health Chiropractic, Inc. v. McKesson Corporation,* 2015 WL 3409721 (USDC N.D. Cal.) (May 27, 2015) at *4 (granting motion to seal confidential and proprietary information about the defendant's internal business operations and corporate structure).

10.      **Confidential Financial Information –** Similarly, Courts have determined that highly-sensitive and confidential information including financial records, production records, manufacturing records, sales records, customer information, and vendor information is entitled to protection from public disclosure. *See e.g., ABRO Indus., Inc. v. 1 New Trade, Inc.*, 2015 WL 13655677 (USDC N.D. Ind.) (Sept. 16, 2015) at *3 (granting plaintiff's motion for a protective

- 6 -

order with respect to confidential information about its financial records, sales, customers, and pricing).

11. **Communications with Consulting Experts –** Federal Rule of Civil Procedure 26(b)(4)(D) protects against an opposing party's discovery of facts and/or opinions of "consulting experts" who are retained in anticipation of litigation and not expected to testify at trial. Furthermore, Federal Rule of Civil Procedure 26(b)(3) protects from discovery documents and tangible things that are prepared in anticipation of litigation by a party's consultant.

12. **Medical Privacy –** With respect to medical information, courts in the Seventh Circuit have routinely recognized that, while parties' medical information may be made public where it is relevant to the claims at issue and/or necessary to the disposition of the case, other information may be kept under seal with good cause. *See Westedt v. Franklin,* 2016 WL 2997504, at *1 (E.D. Wis. May 23, 2016); *Gibson v. Milwaukee Cnty.*, 2015 WL 12964665, at *1 (E.D. Wis. Mar. 26, 2015); *Noe v. Carlos,* 2008 WL 5070463, at *3 (N.D. Ind. Nov. 26, 2008). The good cause inquiry thus requires balancing a party's acknowledged interest in medical privacy, *see Whalen v. Roe*, 429 U.S. 589, 599–600 (1977), against the Court's (and parties') interest in the accurate resolution of the conflict and the public interest in transparency. *Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017). Private health information should be maintained under seal at least until consent by the patient is obtained. *See generally id.* at *3.

13. The "good cause" standard under Rule 26(c) "requires a balancing of the potential harm to the litigants' interests against the public's right to obtain information concerning judicial proceedings." *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 415-16 (S.D. Ind. 2001) (Baker, J.); *see also Felling v. Knight*, 211 F.R.D. 552, 554 (S.D. Ind. 2003) ("The rule essentially operates

- 7 -

to balance the public's interest in open proceedings against an individual's private interest in avoiding annoyance, embarrassment, oppression, or undue burden or expense.") (Baker, J.). Consistent with the doctrine discussed earlier, however, "the presumption of public access 'applies only to the materials that formed the basis of the parties' dispute and the district court's resolution'; other materials that may have crept into the record are not subject to the presumption." *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013) (citing *Baxter Int'l*, 297 F.3d at 548)).

### III. THE CONFIDENTIAL DOCUMENTS AT ISSUE THAT SHOULD BE MAINTAINED UNDER SEAL

**Exhibit A [Dkt. No. 8874-1]** is a compilation of excerpts from the deposition transcript of Dr. Dennis Griffin, occurring on April 10, 2018. As part of his testimony, Dr. Griffin discusses Mrs. Brand's medical conditions. Dr. Griffin also testifies concerning complaint handling documents produced by Cook marked "Company Confidential" and his involvement in Cook's case review. This deposition transcript is also designated and stamped: "Confidential – Subject to Protective Order." Based on the foregoing, this transcript should be maintained under seal for good cause since it contains confidential complaint handling and medical privacy information.

**Exhibit B [Dkt. No. 8874-2]** is excerpts from the report of Cook consultant, Dr. Dennis Griffin, dated June 29, 2014, concerning Mrs. Brand's case. In his report Dr. Griffin discusses and displays images related to Mrs. Brand's medical conditions. This report was produced by Cook and marked "Company Confidential," and portions of the report were also included in complaint handling documents produced by Cook marked "Company Confidential." Based on the foregoing, this report should be maintained under seal for good cause since it contains confidential complaint handling and medical privacy information.

US.121614762

**Exhibit C [Dkt. No. 8874-3]** is a compilation of excerpts from the deposition transcript of Dr. Paul Timperman, occurring on April 18, 2018.  Dr. Timperman serves as a consultant for Cook analyzing consumer complaints.  As part of his testimony, Dr. Timperman discusses Mrs. Brand's medical conditions.  This deposition transcript is designated and stamped: "Confidential – Subject to Protective Order."  Based on the foregoing, this transcript should be maintained under seal for good cause since it contains confidential complaint handling and medical privacy information.

**Exhibit D [Dkt. No. 8874-4]** is excerpts from the report of Dr. Paul Timperman dated June 29, 2014, concerning Mrs. Brand's case.  In his report Dr. Timperman discusses and displays images related to Mrs. Brand's medical conditions.  This report was prepared as part of Cook's complaint handling and review of Mrs. Brand's complaint; and was produced by Cook and marked "Company Confidential."  Based on the foregoing, this report should be maintained under seal for good cause since it contains confidential complaint handling and medical privacy information.

**Exhibit E [Dkt. No. 8874-5]** is a compilation of excerpts from the deposition transcript of Dr. Mark Rheudasil, occurring on February 28, 2018.  As part of his testimony, Dr. Rheudasil discusses Mrs. Brand's medical conditions and his treatments thereof.  This deposition transcript is designated and stamped: "Confidential – Subject to Protective Order." Thus, this transcript should be maintained under seal for good cause since it contains medical privacy information.

**Exhibit F [Dkt. No. 8874-6]** is excerpts from the deposition transcript of Thomas Morrison, MD, occurring on January 30, 2018.  As part of his testimony, Dr. Morrison discusses Mrs. Brand's medical conditions and his treatments thereof.  This deposition transcript is

- 9 -

designated and stamped: "Confidential – Subject to Protective Order." Thus, this transcript should be maintained under seal for good cause since it contains medical privacy information.

**Exhibit G [Dkt. No. 8874-7]** is excerpts from the Expert Report of David Gillespie, MD (dated May 30, 2018). Dr. Gillespie's report references and discusses in detail Mrs. Brand's medical history, conditions, and treatment. Therefore, this information should be maintained under seal to protect Plaintiff's medical privacy. Dr. Gillespie's report also includes information related to post-market product analysis and complaint handling from documents produced by Cook marked "Confidential – Subject to Protective Order." As such, Dr. Gillespie's report should be maintained under seal for good cause since it contains post-market analysis and complaint handling.

**Exhibit H [Dkt. No. 8874-8]** is excerpts from the deposition transcript of David Gillespie, MD, occurring on July 7, 2018. As part of his testimony, Dr. Gillespie offers opinions related to the medical conditions of Mrs. Brand. Dr. Gillespie also testifies concerning post-market product analysis and complaint handling documents produced by Cook marked "Company Confidential." This deposition transcript is also designated and stamped: "Confidential – Subject to Protective Order." Based on the foregoing, this transcript should be maintained under seal for good cause since it contains confidential post-market product analysis confidential complaint handling information and medical privacy information.

**Exhibit I [Dkt. No. 8874-9]** is excerpts from the deposition transcript of Scott W. Robertson, MD, occurring on July 13, 2018. As part of his testimony, Dr. Robertson discusses Mrs. Brand's medical conditions. This deposition transcript is designated and stamped: "Confidential – Subject to Protective Order." Thus, this transcript should be maintained under seal for good cause since it contains medical privacy information.

US.121614762

Exhibit J [Dkt. No. 8874-10] is the Celect Instructions for Use ("IFU"). This document is publicly available and is not subject to confidentiality.

Exhibit K [Dkt. No. 8876-1] is a compilation of two confidential email communications; one between Cook's Director of Research Arne Mølgaard-Nielsen at William Cook Europe ("WCE") and Dr. Jörg Neuerburg; the other between Arne Mølgaard-Nielsen and Dr. Rolf Günther. Both discussing the design characteristics of Celect. These document were produced at CookMDL2570_0783696 and CookMDL2570_0765319. Both were designated and stamped: "Company Confidential." Based on the foregoing, these communications should be maintained under seal for good cause since they contain trade secrets and product development information.

Exhibit L [Dkt. No. 8878] is a compilation of internal emails, internal company documents, and project evaluations relating to the Celect. These documents were produced at CookMDL2570_0134955 and were designated and stamped: "Company Confidential." Thus, these documents should be maintained under seal for good cause since they contain trade secrets, post-market product analysis, and complaint handling.

Exhibit M [Dkt. No. 8876-2] is an internal company memorandum titled, "Executive Summary: Cook Celect Filter" and contains a summary of the Zaragoza University study. This is an internal memorandum that includes information related to post-market product analysis and complaint handling. It also constitutes a product development document and is entitled to protection from disclosure as confidential and proprietary business information. This document was produced natively by CookMDL2570_0481025, with its slip sheet designated and stamped "Company Confidential." Thus, this document should be maintained under seal for good cause since it contains confidential and proprietary business information.

- 11 -

**Exhibit N [Dkt. No. 8876-3]** is a compilation of confidential email communications from Cook's Clinical Research Department regarding a Clinical Evidence Report for the Celect filter. These documents include information related to post-market product analysis and complaint handling.  They also constitute product development documents and are entitled to protection from disclosure as confidential and proprietary business information.  The documents produced at CookMDL2570_0454070 and CookMDL2570_0850856 were designated and stamped: "Company Confidential." The document produced at CookMDL2570_0454965 was produced natively, with its slip sheet designated and stamped, "Company Confidential Attorneys' Eyes Only."  Thus, these documents should be maintained under seal for good cause since they contain post-market analysis and confidential and proprietary business information.

**Exhibit O [Dkt. No. 8876-4]** is the Laborda, *et al.* article titled, "Laparoscopic Demonstration of Vena Cava Wall Penetration by Inferior Vena Cava Filters in an Ovine Model. This article was produced at CookMDL2570_0799754. This document is publicly available and is not subject to confidentiality.

**Exhibit P [Dkt. No. 8876-5]** is a spreadsheet of data reported from investigators during the Cook OUS Registry. It contains information related to post-market product analysis and complaint handling. This document was produced natively at CookMDL2570_1276027, with its slip sheet designated and stamped, "Company Confidential."  Thus, this document should be maintained under seal for good cause since it contains post-market analysis and confidential and proprietary business information.

**Exhibit Q [Dkt No. 8876-6]** is an excerpt from the July 14, 2017 deposition transcript of Henrik Gyllun, Director of Quality Assurance for WCE.  Mr. Gyllum's deposition transcript has been designated "Confidential – Subject to Protective Order."  In the excerpt, Mr. Gyllun is

questioned regarding the development and design of the Cook Celect Filter.   Over Cook's Counsel's objections, he is also questioned as to causes of perforation.  This excerpt should be maintained under seal for good cause because it contains confidential and proprietary business information regarding product research and development.

**Exhibit R [Dkt. No. 8876-7]** is a compilation of emails between Tony Yoder, Jennifer Brown, and Scott Yoder regarding post-market product complaints. This document was produced at CookMDL2570_0412417 and was stamped, "Company Confidential."  Thus, these emails should be maintained under seal for good cause because they contain confidential  post-market product analysis and complaint handling information.

**Exhibit S [Dkt. No, 8876-7]** is a document drafted by Arne Mølgaard-Nielsen, Director of Research, summarizing post-market complaints of the Celect. This document was produced natively at CookMDL2570_0601063, with its slip sheet designated and stamped, "Company Confidential."  As such this document should be maintained under seal for good cause because it contains confidential post-market product analysis and complaint handling information.

**Exhibit T [Dkt. No. 8876-8]** is the Expert Report of John P. Fryzek, Ph.D, dated May 30, 2018.  Dr. Fryzek's report includes detailed information related to post-market product analysis and complaint handling from multiple documents produced by Cook that are marked "Confidential – Subject to Protective Order."  As such, Dr. Gillespie's report should be maintained under seal for good cause as confidential and proprietary business information.

**Exhibit U [Dkt. No. 8881]** is the Expert Report of Timothy A. Morris, MD, dated May 24, 2018.  Dr. Morris' report references and discusses in detail Mrs. Brand's medical history, conditions, and treatment.  Therefore, this information should be maintained under seal to protect Plaintiff's medical privacy.  Dr. Morris' report also includes information related to post-market

US.121614762

product analysis and complaint handling from documents produced by Cook marked "Confidential – Subject to Protective Order."  As such, Dr. Morris' report should be maintained under seal for good cause since it contains confidential post-market product analysis and complaint handling information and medical privacy information.

Exhibit V [Dkt. No. 8885-1] is the Expert Report of Scott W. Robertson, Ph.D., dated June 6, 2018. Dr. Robertson's report references and discusses in detail Mrs. Brand's medical history, conditions, and treatment.  Therefore, this information should be maintained under seal to protect Plaintiff's medical privacy.  Dr. Robertson's report also includes information related to post-market product analysis and complaint handling from documents produced by Cook marked "Confidential – Subject to Protective Order."  As such, Dr. Robertson's report should be maintained under seal for good cause since it contains confidential complaint handling and medical privacy information.

Exhibit W [Dkt. No. 8879-1] is a compilation of excerpts from the deposition transcript of Dr. Scott W. Robertson, occurring on August 17, 2017.  As part of his testimony, Dr. Robertson discusses his opinions regarding the construction of the Cook Celect filter.  Further, this deposition transcript is designated and stamped: "Confidential – Subject to Protective Order." As such this transcript should be maintained under seal for good cause as post-market product analysis information.

Exhibit X [Dkt. No. 8879-2] is a compilation of excerpts from the deposition transcript of Jennifer Brown, Ph.D, occurring on September 19, 2017.  Dr. Brown discusses the Cook Data Summary, communications with regulators, and post-market analysis of the Celect. Further, this deposition transcript is designated and stamped: "Confidential – Subject to Protective Order." As

- 14 -

US.121614762

such, this transcript should be maintained under seal for good cause as post-market product analysis and regulatory affairs information.

**Exhibit Y [Dkt. No. 8879-3]** is a compilation of excerpts from the deposition transcript of Timothy Morris, MD, occurring on June 20, 2018. Dr. Morris discusses the post-market testing being done by Cook.  Further, this deposition transcript is designated and stamped: "Confidential – Subject to Protective Order." As such, this transcript should be maintained under seal for good cause as post-market product analysis.

**Exhibit Z [Dkt. No. 8879-4]** is a compilation of excerpts from the deposition transcript of Arne Molgaard-Nielsen, occurring on October 5, 2016. Mr. Molgaard-Nielsen is the former Director of Research at William Cook Europe, and his testimony contains detailed information concerning product design and development of Cook filters.  This deposition transcript is designated and stamped: "Confidential – Subject to Protective Order." Thus, this transcript should be maintained under seal for good cause since it contains confidential and proprietary business information concerning product development.

**Exhibit AA [Dkt. No. 8879-5]** is the Lyon *et al.* publication titled, *Short- and Long-term Retrievability of the Celect Vena Cava Filter: Results from a Multi-institutional Registry,* J Vasc Interv Radiol 2009; 20:1441-1448.  It is a publicly available document and therefore not subject to confidentiality.

**Exhibit BB [Dkt. No. 8879-6]** is an internal email communication and attachment from Bruce Fleck of Cook Medical Inc, to the North American sales representative team regarding the discontinuation of sales of the Celect filter.  This document was produced at CookMDL2570_0693298 and was designated and stamped, "Company Confidential." As such,

US.121614762

this document should be maintained under seal for good cause because it contains sales, marketing, and public relations information.

**Exhibit CC [Dkt. No. 8879-7]** is a compilation of various witnesses' testimony given in the *Hill* trial. It contains information concerning research and development, post-market product analysis, and interactions with regulators. Therefore, it should be maintained under seal for good cause because it contains confidential and proprietary business information.

**Exhibit DD [Dkt. No. 8885-2]** is Cook Defendants' Amended Rule 26(a)(2)(B) and 26(a)(2)(C) Expert Disclosures file June 6, 2018.  Plaintiff has elected to file this document under seal.  This filing contains not only a list of all consulting experts but also contains descriptions of their expected testimony. Further, the testifying experts relied upon and will testify regarding Cook documents marked "Company Confidential."  They also will testify as to Mrs. Brand's medical history and conditions.  Cook defers to Plaintiff's election to file this document under seal.  It should be maintained under seal for good cause because it contains Cook confidential business and commercial information and Ms. Brand's medical privacy information.

**Exhibit EE [Dkt. No. 8882-1]** is a report of Cook expert, Bennett Leventhal, M.D., dated May 28, 2018, concerning Mrs. Brand's case.  In his report, Dr. Leventhal discusses Mrs. Brand's medical conditions in great detail.  This report was produced by Cook and marked "Confidential," and portions of the report relay on and reference complaint handling and other documents produced by Cook marked "Company Confidential."  Based on the foregoing, this report should be maintained under seal for good cause since it contains confidential complaint handling and medical privacy information.

US.121614762

**Exhibit FF [Dkt. No. 8882-2]** is a report of Cook expert, Michael Ferrante, M.D., dated May 29, 2018.  In his report, Dr. Ferrante discusses Mrs. Brand's medical conditions in great detail.  This report was produced by Cook and marked "Confidential," and portions of the report relay on and reference other documents produced by Cook marked "Company Confidential" related to complaint handling. Based on the foregoing, this report should be maintained under seal for good cause since it contains confidential complaint handling and medical privacy information.

**Exhibit GG [Dkt. No. 8884]** is the expert report of Renu Virmani, M.D., dated May 29, 2018. In the report, Dr. Virmani relied up and discusses multiple Cook documents containing clinical and post-market data which were produced by Cook marked "Company Confidential."  Based on the foregoing, this report should be maintained under seal for good cause since it contains post-market product analysis and complaint handling information.

**Exhibit HH [Dkt. No. 8879-8]** is excerpts from the deposition testimony of Tonya Brand, occurring on December 10, 2015.  It contains Ms. Brand's private medical information. This testimony should be maintained under seal out of an abundance of caution for good cause since it contains medical privacy information.

Finally, **Plaintiff's Omnibus Motions *in Limine* and Authority in Support [Dkt. No. 8873]** relies on or references the Cook confidential business and commercial information contained in the exhibits discussed above and filed under seal.  **Plaintiff's Omnibus Motions in Limine and Authority in Support [Dkt. No. 8873]** also relies on or references the medical privacy information contained in the exhibits discussed about and filed under seal by Mrs. Brand and which she has not consented to releasing publicly.

- 17 -

## IV.    THERE IS GOOD CAUSE TO MAINTAIN THE DOCUMENTS UNDER SEAL

Good cause exists to maintain **Exhibits A, B, C, D, G, H, K, L, M, N, P, Q, R, S, T, U, V, W, X, Y, Z, BB, CC, DD, EE, FF, and GG** *under seal.*   The documents contain Cook confidential business and commercial information, and the Cook Defendants would face competitive and economic harm if such materials were made publicly available.   The documents contain and constitute confidential, proprietary, and sensitive internal company information on trade secrets, product research and development, post-market product analysis, sales, marketing, and public relations, regulatory affairs, or complaint handling information.   The documents should not be disclosed to the public.

The Cook Defendants' May 1, 2017 letter to Magistrate Baker and the Declaration of Mark Breedlove (attached here for reference as **Exhibit 1**) are instructive and demonstrate good cause to maintain **Exhibits A, B, C, D, G, H, K, L, M, N, P, Q, R, S, T, U, V, W, X, Y, Z, BB, CC, DD, EE, FF, and GG** *under seal.*   Cook invests substantial resources into product research, development, and testing, including with regard to Cook's IVC filter technology. Breedlove Decl. ¶ 6.   Cook maintains strict confidentiality over its research and development ideas, efforts, and results, and considers such information to be proprietary to the company.  *Id*. And disclosure of such information would therefore result in competitive harm to Cook and could "lead to a windfall to the discovering party." *Star Scientific*, 204 F.R.D. at 416; Breedlove Decl. ¶¶ 6-7.   Likewise, Cook invests considerable resources in, derives commercial advantage from, and maintains strict confidentiality over, its post-market product analysis, its sales, marketing, and public relations information, its regulatory affairs strategies and information, and its complaint handling procedures.  *Id.* at ¶¶ 8-15.   Disclosure of Cook's non-public post-market product analysis, its sales, marketing, and public relations information, its regulatory affairs efforts and strategies, and its complaint handling procedures and information would likewise

- 18 -

cause competitive harm to Cook. Breedlove Decl. ¶¶ 8-15; *see EEOC v. Abbott Labs., Inc.*, 2012 WL 3842460, at *2-3 (E.D. Wis. Sept. 5, 2012).

In sum, good cause exists to maintain **Exhibits A, B, C, D, G, H, K, L, M, N, P, Q, R, S, T, U, V, W, X, Y, Z, BB, CC, DD, EE, FF, and GG** *under seal.*  Cook's trade secrets, product research and development, post-market product analysis, sales, marketing, and public relations, regulatory affairs, and complaint handling information are confidential and proprietary.  The disclosure of such information and documents would result in competitive harm to Cook.  **Exhibits A, B, C, D, G, H, K, L, M, N, P, Q, R, S, T, U, V, W, X, Y, Z, BB, CC, DD, EE, FF, and GG** should be sealed.

Further, good cause exists to maintain **Exhibits A, B, C, D, E, F, G, H, I, U, V, DD, EE, FF, and HH** *under seal* because the documents contain private, sensitive, and confidential medical information regarding Mrs. Brand.

As set forth above, courts in the Seventh Circuit have routinely recognized that, while parties' medical information may be made public where it is relevant to the claims at issue and/or necessary to the disposition of the case, other information may be kept under seal with good cause. *See Westedt,* 2016 WL 2997504, at *1; *Gibson,* 2015 WL 12964665, at *1; *Noe,* 2008 WL 5070463, at *3.  The good cause inquiry thus requires balancing a party's acknowledged interest in medical privacy, *see Whalen,* 429 U.S. at 599–600, against the Court's (and parties') interest in the accurate resolution of the conflict and the public interest in transparency. *Cole,* 2017 WL 2929523, at *3.  Private health information should be maintained under seal at least until consent by the patient is obtained. *See generally id.* at *3.

**Exhibits A, B, C, D, E, F, G, H, I, U, V, DD, EE, FF, and HH** contain private, sensitive, and confidential medical information regarding Mrs. Brand.  Plaintiff's medical and

- 19 -

psychiatric history, conditions, and treatment are highly relevant to the issues in this case. However, out of an abundance of caution, the Court should permit these documents to be filed under seal until Plaintiff consents to what should be disclosed.

Finally, good cause exists to maintain **Plaintiff's Omnibus Motions *in Limine* and Authority in Support [Dkt. No. 8873]** *under seal* because it relies on or references the Cook confidential business and commercial information contained in the exhibits discussed above and filed under seal.  Plaintiff's Omnibus Motions *in Limine* should be maintained under seal to protect Cook's interest in its confidential and proprietary business and commercial information. Good cause also exists to seal **Plaintiff's Omnibus Motions *in Limine* and Authority in Support [Dkt. No. 8873]** because it discusses and contains private, sensitive, and confidential medical information regarding Mrs. Brand which she has not consented to releasing publicly and which, out of an abundance of caution, should remain sealed.

## V.   CONCLUSION

For all the foregoing reasons, the Cook Defendants respectfully request that the Court issue an Order directing the Clerk to maintain **Plaintiff's Omnibus Motions *in Limine* and Authority in Support [Dkt. No. 8873] and Exhibits A through I, K through N, P through Z, and BB through HH thereto** *under seal*.   The documents contain Cook confidential, proprietary, and sensitive internal company information on trade secrets, product research and development, post-market product analysis, sales, marketing, and public relations, regulatory affairs, or complaint handling.  There is good cause to seal the documents to prevent public disclosure and competitive harm to the Cook Defendants.  The documents also contain private, sensitive medical information regarding Mrs. Brand.  Accordingly, there is good cause to seal

US.121614762

these documents out of an abundance of caution to protect Mrs. Brand's interest in her medical privacy.

In accordance with Local Rule 5-11(e)(4), the Cook Defendants have submitted a proposed order maintaining the documents under seal.

Respectfully submitted,


Dated: January 18, 2019

/s/ Andrea Roberts Pierson
Andrea Roberts Pierson (# 18435-49)
J. Joseph Tanner (# 11856-49)
Nicholas B. Alford (# 31867-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:   (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-Mail:  joe.tanner@faegrebd.com
E-Mail:  nicholas.alford@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

- 21 -

US.121614762

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 18, 2019, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.  Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

/s/ Andrea Roberts Pierson

US.121614762