**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates to Plaintiff

*Tonya Brand*
No. 1:14-cv-06018-RLY-TAB

**COOK DEFENDANTS' BENCH BRIEF REGARDING
EXCLUSION OF MAUDE AND AER REPORTING**

Plaintiff's attorneys have challenged yet again the Court's exclusion of testimony and exhibits concerning Adverse Event Reports for IVC filters and the FDA's MAUDE database of such AERs. The Court has already ruled on this issue multiple times, yet Plaintiff's attorneys and expert witnesses keep raising the issue in front of the jury, apparently oblivious to the Court's repeated rulings.

The Court's rulings should mean something, and should not be subject to challenge over and over again without some cause. But nothing has changed—Plaintiff's claims are still the same as they were when the trial started. Cook urges the Court to once again reject Plaintiff's attempt to present this irrelevant, confusing, and unfairly prejudicial evidence.

    A.    **The Court has Already Repeatedly Excluded Testimony Concerning AERs and the MAUDE Database.**

As it did in the *Hill* trial, the Court in this trial has repeatedly excluded testimony and evidence concerning AERs and the MAUDE database. In *Hill*, the Court granted Cook's identical motion in limine before trial, stating:

> I believe No. 2 was requested, and we'll show that granted. I find no relevance to design. There's no fraud on the FDA claim and preempted by *Buckman*.

Hill Trial Tr. at 165:12-14 (October 23, 2017).

Although the Court took MIL 2 under advisement before the *Brand* trial rather than granting it immediately, *see* Dkt. 9634, the Court sustained Cook's objection to AER and MAUDE evidence multiple times when the issue arose at trial. In particular, during the testimony of Dr. Krumholz, Plaintiff's attorney repeatedly tried to elicit such testimony, Cook repeatedly objected, and the Court repeatedly sustained the objections. For example, Cook objected following this exchange in which Dr. Krumholz unilaterally brought up the MAUDE database:

> [Dr. Krumholz]  Since you asked me about fracture rates, the fracture rates are higher for the Celect filter than they are for, say, the Tulip filter.
> Q    And how do you know that?
> A    Based on information from Cook's -- Cook's reports and information from the MAUDE registry, which is the registry that the FDA uses for people to submit complaints and concerns.

Tr. at 372:14-21. Cook's attorney pointed out that AERs and the MAUDE data were the subject of a pending motion in limine and should not have been raised without consulting the Court; Plaintiff's attorney said that she did not remember the motion in limine and confirmed that in any event she had not instructed the witness not to mention the subject, claiming that "I just assumed if [the Court] hadn't granted it, I could ask a question about it." Tr. at 373:14-374:25. The exchange ended with the Court's rejection of the MAUDE/AER testimony:

> MS. PIERSON: But if the witness is going to talk about adverse event reporting on the MAUDE database, we made a substantive objection to that --
> THE COURT: He's not going to. We're going to move on.
> MS. PIERSON: Thank you.

Tr. at 375:1-6. Plaintiff's attorney clearly understood the Court's ruling, because shortly thereafter she specifically limited her question to Dr. Krumholz to prevent the witness from

going into the topic.  Tr. at 377:6-7 ("Q What kind of work have you done investigating the issue of underreporting? Without talking about MAUDE if you can.").

Despite this, Plaintiff's attorney later claimed that she did not recall the Court's ruling and again attempted to elicit testimony from Dr. Krumholz about reporting to FDA, prompting this exchange and the Court sustaining the objection again:

> MS. PIERSON: If I may respond, Your Honor.  This morning, **you ruled on motion in limine 2 when we raised the issue with you of the question of FDA reporting** and that this isn't a case about FDA reporting. And it can't be, under *Buckman* case, about FDA reporting. So they can't attack underreporting to the FDA or use that as an -- it's hard to hear.
> They can't -- they can't, Your Honor, attack Cook or the FDA process related to reporting to the FDA pursuant to your ruling this morning about adverse event reports. If they want to ask about complaint handling, are complaints to Cook underreported, that's okay. That's fair game. But your ruling this morning was that things about reporting to the FDA, are things underreported to the FDA, that that's excluded.
> MS. BAUGHMAN: I'm sorry. **I don't remember – I don't think you ruled -- I don't recall that. I don't think there's been a ruling on motion in limine 2. And when we raised, you let me ask the questions.**
> This book isn't limited to MAUDE. MAUDE isn't even mentioned here or -- and it talks generally about the system and the system of reporting with medical devices … and that it's flawed and broken.
> And Dr. Krumholz has already testified that, in fact, this covers more than that. And he's testified that there's a problem with complaint reporting. And you can't -- you can't count on that. In fact, Your Honor already said --
> THE COURT: He's already testified -- right? -- regarding the complaint system is underreporting?
> MS. PIERSON: He's already testified about underreporting to Cook.
> MS. BAUGHMAN: This is an authoritative source to back up what he's saying. That's all.
> MS. PIERSON: It doesn't matter.
> THE COURT: **Objection sustained.**

512:11-513:21 (emphasis added).

Despite the Court's reiteration of its ruling, Dr. Krumholz unilaterally brought the issue up once again and the Court again sustained the objection:

> [Dr. Krumholz]  It's voluntary reporting. It means that a doctor has to – or a nurse or healthcare institution has to see something, and then they have to take the time to fill out a bunch of forms that they're going to send to the FDA.
> And I can tell you, I didn't have one class on this in medical school.

3

>   MS. PIERSON: Your Honor -- I apologize, Dr. Krumholz. I didn't mean to interrupt you. This is a motion in limine that we just discussed.
>   THE COURT: Move on.
>   MS. PIERSON: We'd object.
>   THE COURT: Sustained.

Tr. 376:17-377:4.

The same objection arose yet again on the second day of Dr. Krumholz's testimony, and Plaintiff's attorney again said that she did not recall the Court's ruling:

>   MS. BAUGHMAN: I should have asked you this earlier. **I don't think you've ruled on this MAUDE issue.** This is a peer-reviewed article that he's cited in his report that analyzes the MAUDE database. And I know it's going to draw an objection. So before I even show it to the jury, I wanted to see. **I don't think you've ruled on it, so I think it's fair game.** But it is one -- it is a pending motion in limine.
>   THE COURT: Motion in limine.
>   MS. PIERSON: **This is the motion in limine that you ruled on yesterday morning from the bench,** Judge. Remember the MAUDE database is the database of adverse event reports to the FDA.
>   THE COURT: Right, right, right.
>   MS. PIERSON: That's where they're cataloged. So you've already ruled on this. We can't go into that.
>   MS. BAUGHMAN: **See, I must have just missed that. Maybe I wasn't in the courtroom at the time.** But this is a published peer-reviewed article analyzing that data. And it seems -- and he considered it for his opinions.
>   It seems like he ought to be able to explain why it was or wasn't important to him. And cross-examination can take care of any issues related to the MAUDE database. It's not about individual complaints; it's about a summary from years of period of time of what's going on with this filter as compared to the other filters.
>   MS. PIERSON: **This is what you already ruled on yesterday, Judge.** There's no fraud on the FDA claim in this case. And --
>   MS. BAUGHMAN: It has nothing to do with that.
>   MS. PIERSON: -- and we've continued to hit that topic over and over again.
>   MS. BAUGHMAN: I'm sorry. This has nothing to do with fraud on the FDA, nothing at all. It has to do with whether this device is defective. And if there are substantially more reports of fracture and perforation regarding this filter compared to other filters, that's evidence that this device is defective. It has nothing to do with fraud on the FDA, nothing at all.
>   MS. PIERSON: This witness has testified already by deposition that he did no comparative effectiveness evaluation of this device compared to any other, that he doesn't know the difference between the rates of fracture or anything else for this product other than maybe the Tulip. And his opinions on the Tulip were based on MAUDE data. You've excluded this.
>   THE COURT: **Right. I've already excluded this.**

4

Tr. 661:18-663:12 (emphasis added).

Yet again, despite these repeated exclusions (or perhaps because of them), Dr. Krumholz repeatedly tried to inject the MAUDE and FDA data into his answers to unrelated questions during Cook's cross examination, and the Court repeatedly granted Cook's requests to strike that testimony:

> Q … What safety signals … did you identify for the Tulip?
> A No, no, the Tulip was a comparator. It was the prior one. We weren't studying whether -- we studied it in relationship to the Celect.
> So when we're comparing it to the Celect, we are looking at everything that's reported about the Tulip **in MAUDE, in the FDA database**.
> MS. PIERSON: Your Honor, we'd move to strike.
> THE COURT: Stricken.

Tr. at 875:10-20 (emphasis added).

> Q You also have not done a systematic review of the literature on fracture, have you?
> A A systematic review of the literature -- we did a – we did a detailed review of fracture in Celect compared with others. I'm not sure exactly what kind of study you're asking me about, whether we studied fracture -- the information we have on fracture in our report represents **all the fractures that are reported to the FDA through the MAUDE database**. I think that's the most comprehensive knowledge of fracture in -- in at least the federal regulatory agency.
> MS. PIERSON: Your Honor, we'd move to strike the last answer.
> THE COURT: Show it stricken.

Tr. 876:20-877:7 (emphasis added).

Cook anticipates that Plaintiff intends that the testimony of Plaintiff's expert Dr. Gordon will mirror the testimony of Dr. Krumholz, and that it will involve the same attempts by counsel to elicit testimony about the AERs and the MAUDE database and the same unsolicited comments on those topics by Plaintiff's witness. Cook urges the Court to admonish Plaintiff's counsel not to ask questions they know full well fall within this restricted area and to instruct their witness Dr. Gordon not to bring up these issues on his own. This is the only way the

5

testimony of Dr. Gordon can progress efficiently without the need for frequent sustained objections by Cook based on **rulings the Court has already made**.

### B. The Same Grounds Continue to Justify Exclusion of the AER and MAUDE Database Evidence.

The same grounds that have prompted the Court to consistently exclude evidence concerning AERs and the MAUDE database here and in *Hill* still apply, and Plaintiff has offered nothing to justify the Court reversing its ruling. Such evidence is inadmissible because (1) it is preempted by the *Buckman* doctrine established by the United States Supreme Court, (2) it is impermissible character evidence, and (3) any probative value is substantially outweighed by the danger of unfair prejudice and jury confusion.

As to the *Buckman* preemption issue, Plaintiff has acknowledged that she asserts no claim based on fraud on the FDA. Tr. 414:21-22 ("We do not have a claim, nor are we making a claim, a cause of action for fraud on the FDA."). Absent such a claim, evidence concerning Cook's reporting to FDA is irrelevant and inadmissible. *See*, *e.g.*, *In re Trasylol Prods. Liab. Litig.*, 763 F. Supp. 2d 1312, 1331 (S.D. Fla. May 10, 2010) ("evidence or testimony that Bayer failed to adequately or timely provide information to the FDA pursuant to FDA reporting obligations that run to the FDA. . . is generally irrelevant to Plaintiffs' state law claims and thus inadmissible").

Moreover, although compliance with governmental standards may be relevant to determining whether the design is defective under the *Banks* case, those standards must relate to the product's design, and not its warnings or other irrelevant information, including:

- adverse event reporting to the United States Food and Drug Administration,
- complaint handling information,
- information provided or allegedly not provided to the FDA,
- alleged concealment of facts or information,
- alleged notice or knowledge of a defect, and
- motive or "bad company" evidence.

6

Plaintiff's efforts to introduce testimony about AERs and the MAUDE database involve nearly all these irrelevant areas.

The Court should also exclude such evidence because its likely prejudicial effect substantially outweighs any arguable probative value. *See* Fed. R. Evid. 403. For the reasons discussed above, this evidence has no probative value and does nothing to make any fact of consequence to this action more or less likely. *See* Fed. R. Evid. 401. But even assuming for the sake of argument that the evidence has some probative value, the prejudicial effect of portraying Cook as a company that supposedly fails to follow FDA regulations is obvious and powerful. Indeed, the evidence at issue is essentially character evidence of the type prohibited by Federal Rule of Evidence 404. The evidence will also confuse the jury with useless information and waste time by making Cook explain and offer context for each category of evidence. *See* Fed. R. Evid 403. The Court should exclude it. *See, e.g., Baker v. Smith & Nephew Richards, Inc.*, No. 95-cv-58737, 1999 WL 811334 at *22 (Tex. D. Ct. 1997) (concluding that "the interjection of these FDA regulatory issues would only serve to confuse the actual products liability issues to be tried").

    **C.**    **Plaintiff's Attempt to Shift the Focus to a Comparison of Celect and Tulip Complication Rates Does Not Make the AERs and MAUDE Database Relevant.**

Cook anticipates that Plaintiff will try to argue that she is not offering the AERs and MAUDE database to show any underreporting or bad character on the part of Cook, but instead to offer a comparison of fracture and other complication rates of Celect and Tulip filters. This argument fails for several reasons.

First, like Plaintiff's other arguments on this issue, the Court has already rejected this argument. Plaintiff raised this same argument repeatedly in arguing that Dr. Krumholz should be permitted to testify about the AERs and the MAUDE database. *See, e.g.,* Tr. at 662:15-17 ("it's

7

about a summary from years of period of time of what's going on with this filter as compared to the other filters."); 663:1-4 ("if there are substantially more reports of fracture and perforation regarding this filter compared to other filters, that's evidence that this device is defective"). As discussed above in Section A, the Court rejected the argument, and nothing has changed since.

Second, Dr. Gordon cannot offer opinions comparing the fracture rates of Celect and Tulip filters based on any study of the AERs or MAUDE database because he can offer no foundation for such testimony. On the contrary, Dr. Gordon has affirmatively disavowed doing any such comparative study of Celect and Tulip, and in fact denies the existence of any such studies comparing the fracture rate of the Celect with any other filters:

> Q. Have you done any studies to compare the rate of fracture between the Celect and any other filter?
> A. **No. I am not aware of a study that's been done that compares the fracture rates.**
> Q. Have you done any animal testing or animal studies to determine the rate of fracture between the Celect and any other filter?
> A. Well, **I haven't done any IVC studies** so all of these questions would be no.

Gordon Dep. at 200:1-9 (Dkt. 9172-1) (emphasis added).[1] Cook's attorney later confirmed that Dr. Gordon had indeed omitted any opinions comparing Celect and Tulip fracture rates from his report:

> Q. …Can we agree, Dr. Gordon, that your report does not contain any comparative rate information specific to fracture for the Celect in comparison to the Tulip, the Greenfield or any other filter?

---

[1] Dr. Gordon likewise disavowed making any comparisons between the Celect and other filters concerning efficacy factors such as clot-trapping ability or recurrent PE:
> Q. Your report doesn't contain any opinions about the clot-trapping ability of other filters compared to the Celect?
> A. That is correct.
> Q. Your report doesn't contain any opinions about rates of recurrent PE with the Celect versus any other filter?
>
> A. Yeah, that -- I didn't go into those specifics, no, I did not.

Gordon Dep. at 228:19-229:2 (Dkt. 9172-1).

8

   A. Specifically to the fracture, no.

*Id*. at 232:1-5.

  This testimony forecloses Dr. Gordon from offering any testimony purporting to compare fracture or other complication rates for the Celect and the Tulip. By his own admission, Dr. Gordon has done no comparison of the fracture rates of the Celect and Tulip filters, and in fact did no studies at all of IVC filters, comparative or otherwise. But without a study that he either conducted or relied on, Dr. Gordon has no methodology to support any opinion comparing Celect and Tulip fracture or other complication rates, and thus no basis for any testimony comparing those rates, whether based on MAUDE data or anything else.

  Third, whatever Dr. Gordon's view, the MAUDE database itself makes clear that its data **cannot be used** to make the kind of comparisons or conclusions that Dr. Gordon intends to offer. The front page of the website cautions:

- **MDR data alone cannot be used to** establish rates of events, evaluate a change in event rates over time or **compare event rates between devices**. The number of reports cannot be interpreted or used in isolation **to reach conclusions about the existence, severity, or frequency of problems associated with devices**.
- Confirming whether a device **actually caused a specific event can be difficult** based solely on information provided in a given report. Establishing a cause-and-effect relationship **is especially difficult** if circumstances surrounding the event have not been verified or if the device in question has not been directly evaluated.
\*\*\*
- Submission of a medical device report and the FDA's release of that information **is not necessarily an admission that a product**, user facility, importer, distributor, manufacturer, or medical personnel **caused or contributed to the event**.

https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfmaude/search.cfm (emphasis added, site last consulted 1/21/2019). The Celect and Tulip data in the MAUDE database thus lacks either the sufficient scientific foundation or the substantial similarity to Plaintiff's situation needed to support an expert opinion comparing complication rates of the Celect and Tulip filters. Dr. Gordon's report offers nothing to suggest otherwise.

9

Finally, Plaintiff's proposed use of the AERs and MAUDE data to compare Celect and Tulip complication rates flatly contradicts a central premise of Plaintiff's case as she presented it through Dr. Krumholz. Plaintiff wants Dr. Gordon to support a comparison between the complication rates of the Celect and Tulip filters based on AERs and the MAUDE database. But as the Court will recall, Dr. Krumholz repeatedly and vocally rejected collections of complaints and case reports—like the MAUDE database—as a basis for comparing the risks and benefits of filters, claiming that such collections unavoidably suffered from fatal underreporting and lack of follow-up and thus failed to reflect "real world" data. *See. e.g.,* Tr. at 881:14-17 (Dr. Krumholz: "A. It would be correct to say that, in this MAUDE database or in this Cook complaint database, that that's the numbers that are being reported to them. It would be incorrect to suggest that that's what's going on out in the real world."). Indeed, Dr. Krumholz frequently went well beyond the questions asked of him to criticize reliance on such data on these grounds.[2] And in his deposition, Dr. Gordon himself offered the same criticism of the very MAUDE database on which he now wants to base an opinion:

> Q. Is there any study in your report that -- that compares rates of fracture with the Celect with any other product?
> A. In my report, no, ma'am, but again -- except the MAUDE database which -- which describes that but, again, **the gross under-reporting** and -- I mean, and again this would be my personal experience -- when I wrote a letter to Cook themselves about my problem not having a response, what's the point of ever doing it again?

Gordon Dep. at 280:25-281:9 (emphasis added).

---

[2] For example:
> Q   You would agree with me, wouldn't you, sir, that they are two of the filters with the lowest complication rate in this [British] registry of more than 1400 patients?
> A   I'm telling you that, when you lose half of the patients, you can't depend -- this is on patients that they were able to follow over time with inconsistent imaging. I am just saying that I don't find this -- this isn't a study that provides systematic, high-quality information about the relative effectiveness or safety of the device.

Tr. at 892:17-25.

In sum, Plaintiff now tries to justify Dr. Gordon's testimony about AERs and the MAUDE database based on an untested analysis that is flatly inconsistent with Dr. Krumholz's strident testimony. This analytical contortion merely demonstrates once again that Plaintiff's real purpose here is not to present scientific evidence but to attack Cook's character by suggesting that Cook underreported information to the FDA.

## CONCLUSION

For these reasons, the Cook Defendants urge the Court to again reject Plaintiff's argument and to exclude at trial any evidence of MAUDE data concerning the Celect or any other IVC filter.

Respectfully submitted,

Dated: January 24, 2019

/s/ Andrea Roberts Pierson
Andrea Roberts Pierson (# 18435-49)
Jessica Benson Cox (# 26259-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
Email:  andrea.pierson@faegrebd.com
Email:  jessica.cox@faegrebd.com

Charles Webber (MN # 215247)
Bruce Jones (MN # 179553)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-8719
Facsimile: (612) 766-1600
Email:  chuck.webber@faegrebd.com
Email:  bruce.jones@faegrebd.com

*Counsel for the Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2019, a copy of the foregoing document was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Counsel for Defendants will serve any non-CM/ECF registered parties.

/s/ Andrea Roberts Pierson