**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND          Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION           MDL No. 2570

This Document Relates to:

    *Brand v. Cook Medical, Inc. et al.,*
    Case No. 1:14-cv-06018-RLY-TAB

**THE COOK DEFENDANTS' BRIEF**
**IN SUPPORT OF PLAINTIFF'S MOTION TO**
**MAINTAIN DOCUMENTS UNDER SEAL [DKT. NO. 9183]**

## I.    INTRODUCTION

Plaintiff has filed **Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment [Dkt. No. 9146].** Plaintiff also has submitted as supporting exhibits various documents – including documents designated as "Company Confidential" or "Confidential" by the Cook Defendants[1], pursuant to Case Management Order #8 (Stipulated Protective Order on Confidential Information). In accordance with Local Rules 5-11(d)(1) and 5-11(d)(2)(A)(ii), Plaintiff filed these documents specifically, **Plaintiff's Exhibits A-F and Exhibits 1-61 – *under seal.*** Finally, Plaintiff has filed Plaintiff's Motion to Maintain Documents Under Seal [Dkt. No. 9183].

The Cook Defendants submit this Brief in Support of Plaintiff's Motion to Maintain Documents Under Seal and respectfully request that the Clerk of this Court maintain the documents ***under seal***. Specifically, Cook requests that the Exhibits discussed below as well as

---

[1]    The Cook Defendants in this matter are Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS (collectively, the "Cook Defendants" or "Cook").

**Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment [Dkt. No. 9146]** be maintained *under seal.*  Plaintiff apparently did not file her Memorandum in Opposition under seal, but it should be filed and maintained under seal for the reasons discussed below.

The Clerk should maintain **Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment [Dkt. No. 9146] and Exhibits A, C-F, 1-6, 8-24, 33-39, 41-48, 50-58, and 61 thereto** *under seal* because there is good cause for sealing the documents. The documents contain Cook confidential, proprietary, and sensitive internal company information on trade secrets, product research and development, post-market product analysis, sales, marketing, and public relations, regulatory affairs, or complaint handling.  The documents also contain private, sensitive medical information regarding Plaintiff Mrs. Brand.  Accordingly, there is good cause to seal the documents to prevent public disclosure of the Cook Defendants' confidential business information and competitive harm to the Cook Defendants, and to protect Mrs. Brand's interest in her medical privacy.

## II.    THE APPLICABLE LEGAL STANDARD

1.      Under Federal Rule of Civil Procedure 26(c)(1)(G), the court may, "for good cause," enter an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."  *See also Baxter International, Inc. v. Abbott Laboratories*, 297 F.3d 544, 546 (7th Cir. 2002) (documents that "meet the definition of trade secret or other categories of bona fide long-term confidentiality" may be sealed).  Likewise, private health information should be maintained under seal at least until consent by the patient is obtained. *See generally Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017).

US.121724062

2. **Trade Secrets** – Indiana has generally adopted the definition of trade secret found in the Uniform Trade Secret Act.[2] *See, e.g.*, *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 414 (S.D. Ind. 2001).[3] Under this standard, a protectable trade secret has four characteristics: (1) information; (2) that possesses independent economic value; (3) that is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (4) is the subject of efforts to maintain its secrecy that are reasonable under the circumstances. *See, e.g.*, *Hamilton v. State Farm Mut. Auto Ins. Co.*, 204 F.R.D. 420, 423 (S.D. Ind. 2001); *Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 759 N.E.2d 239, 245–46 (Ind. Ct. App. 2001); *Burk v. Heritage Food Serv. Equip., Inc.*, 737 N.E.2d 803, 813 (Ind. Ct. App. 2000).

3. Other confidential business or commercial information that does not technically fit the definition of trade secret is similarly entitled to the same level of protection as trade secrets if its disclosure would be harmful physically or economically. *See Chaib v. GEO Grp., Inc.*, 2014 WL 4794194, at *1–3 (S.D. Ind. Sept. 24, 2014); *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at *1 (S.D. Ind. Feb. 2, 2009) (finding that protection is required where disclosure of certain proprietary information would "provide a blueprint for competitors").

4. **Research and Development** – Federal courts, including this court, have consistently held that product development, research, and testing documents and information are entitled to protection from disclosure as confidential and proprietary business information.  Such information constitutes confidential business information because "a competitor's access to [a

---

[2]   The presence of Cook's headquarters in Indiana justified the application of Indiana trade secret law to the issues here, because Indiana is the state where Cook would feel any injury or harm. *See, e.g.*, *Micro Data Base Sys., Inc. v. Dharma Sys., Inc.*, 148 F.3d 649 (7th Cir. 1998) (applying Indiana choice-of-law principles in a trade-secret case and holding that New Hampshire substantive law governed because the entity holding the trade secrets was headquartered there).

[3]   The Indiana Uniform Trade Secret Act is identical to the Uniform Trade Secrets Act, 1(4), 14 U.L.A. 438 (1985).

company's] research and development . . . present[s] potential dangers and may lead to a windfall to the discovering party." *Star Scientific,* 204 F.R.D. at 416 (S.D. Ind. 2001) (Baker, J.); *see also United States ex rel. Long v. GSD&M Idea City LLC*, 2014 WL 12648520, at *2 (N.D. Tex. Jan. 3, 2014) ("[I]nformation in which the producing party has a commercial interest, such as . . . research data, . . . has been found to constitute confidential commercial information."); *Kowalsky v. Hewlett-Packard Co.*, 2012 WL 892427, at *2 (N.D. Cal. Mar. 14, 2012) (exhibits were "sealable in their entirety because they contain[ed] HP's confidential product testing and evaluation process"); *cf. Andrx Pharm., LLC v. GlaxoSmithKline, PLC,* 236 F.R.D. 583, 586 (S.D. Fla. 2006) ("Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information." (citation omitted)), *affirmed,* 2006 WL 2403942 (S.D. Fla. 2006).

5.    **Post-Market Product Analysis** – Similarly, post-market product analysis is also entitled to protection from disclosure as confidential and proprietary business information. Disclosure of such proprietary post-market analysis information is harmful because it would "provide a blueprint for competitors." *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at *1 (S.D. Ind. Feb. 2, 2009); *see also Star Scientific*, 204 F.R.D. at 415 (research and data, such as sales techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge").

6.    **Sales, Marketing, and Public Relations** – Confidential marketing plans or sales strategies have been held to constitute protectable trade secrets or protected confidential business information.  *See, e.g.*, *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1270 (7th Cir. 1995) (trade secret material for sports drink includes information regarding the pricing, distribution and marketing of the drink and not just the drink formula); *Star Scientific*, 204 F.R.D. at 415

(research and data, such as sales techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge"); *Burk v. Heritage Serv. Equip.*, 737 N.E.2d 803, 814 (Ind. Ct. App. 2000) (finding that employee unfairly used marketing information and sales strategies in breach of the Indiana trade secrets clause); *see also Brunswick Corp. v. Jones*, 784 F.2d 271 (7th Cir. 1986) (confidential marketing strategies held protectable); *AGS Capital Corp., Inc. v. Prod. Action Intern., LLC*, 884 N.E.2d 294, 311 (Ind. Ct. App. 2008) (stolen information related to marketing strategy would "put [a company's competitors] at a severe disadvantage").   Good cause exists to maintain the confidentiality of such strategic plans and analysis when disclosure of that information would reveal the company's "response to changing market situations and competitive threats within the marketplace, and could therefore give a competitor insight into '[the company's] internal thinking'" and when publicizing this material "would allow [the company]'s competitors the benefit of this information without incurring the effort or expense." *Bradburn Parent/Teacher Store, Inc. v. 3M*, 2004 WL 1146665, at \*4 (E.D. Pa. May 19, 2004) (citation omitted).

7.    **Regulatory Affairs** – Courts have held that information related to regulatory compliance and/or submission efforts and strategies constitutes confidential business information. *See, e.g.*, *Bayer Healthcare, LLC v. Norbrook Labs., Ltd.*, 2009 WL 3444938, at \*1 (E.D. Wisc. Oct. 23, 2009) (good cause existed to seal deposition testimony and internal company emails containing proprietary commercial information and strategy related to an FDA filing).   Such proprietary information, like confidential information regarding pricing and sales, is confidential because "the information is created to enhance [companies'] business and give them a competitive edge".   *Star Scientific*, 204 F.R.D. at 415.

US.121724062

8.      **Complaint Handling** – Internal complaint handling procedures and materials constitute trade secrets in Indiana if they contain (1) information; (2) that derives independent economic value; (3) is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (4) is the subject of efforts reasonable under the circumstances to maintain its secrecy. *Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 759 N.E.2d 239, 245-46 (Ind. Ct. App. 2001); *see also, e.g.*, *Hamilton v. State Farm Mut. Auto. Ins. Co.*, 204 F.R.D. 420, 423-24 (S.D. Ind. 2001); *Rep. Servs. Inc. v. Liberty Mut. Ins. Cos.*, 2006 WL 1635655, at *5 (E.D. Ken. June 9, 2006) (concluding that claims handling and training materials "had economic value to [defendant] due to (1) their confidential nature, (2) the time, effort, and expense [defendant] invested in creating these materials, (3) the evolutionary process surrounding the development of these materials, (4) the competitive nature of the [industry's] business, and (5) the fact that competitors in [that] industry do not disclose information about their claims handling policies and procedures to one another.").

9.      **Internal Information on Corporate Structure and Business Operations** – Courts also have determined that information about a corporation's internal business operations and corporate structure is confidential and proprietary and, therefore, entitled to protection from public disclosure. *E.g., True Health Chiropractic, Inc. v. McKesson Corporation,* 2015 WL 3409721 (USDC N.D. Cal.) (May 27, 2015) at *4 (granting motion to seal confidential and proprietary information about the defendant's internal business operations and corporate structure).

10.     **Confidential Financial Information** – Similarly, Courts have determined that highly-sensitive and confidential information including financial records, production records,

- 6 -

manufacturing records, sales records, customer information, and vendor information is entitled to protection from public disclosure. *See e.g., ABRO Indus., Inc. v. 1 New Trade, Inc.*, 2015 WL 13655677 (USDC N.D. Ind.) (Sept. 16, 2015) at *3 (granting plaintiff's motion for a protective order with respect to confidential information about its financial records, sales, customers, and pricing).

11.     **Communications with Consulting Experts –**  Federal Rule of Civil Procedure 26(b)(4)(D) protects against an opposing party's discovery of facts and/or opinions of "consulting experts" who are retained in anticipation of litigation and not expected to testify at trial.  Furthermore, Federal Rule of Civil Procedure 26(b)(3) protects from discovery documents and tangible things that are prepared in anticipation of litigation by a party's consultant.

12.     **Medical Privacy –** With respect to medical information, courts in the Seventh Circuit have routinely recognized that, while parties' medical information may be made public where it is relevant to the claims at issue and/or necessary to the disposition of the case, other information may be kept under seal with good cause. *See Westedt v. Franklin,* 2016 WL 2997504, at *1 (E.D. Wis. May 23, 2016); *Gibson v. Milwaukee Cnty.*, 2015 WL 12964665, at *1 (E.D. Wis. Mar. 26, 2015); *Noe v. Carlos,* 2008 WL 5070463, at *3 (N.D. Ind. Nov. 26, 2008). The good cause inquiry thus requires balancing a party's acknowledged interest in medical privacy, *see Whalen v. Roe*, 429 U.S. 589, 599–600 (1977), against the Court's (and parties') interest in the accurate resolution of the conflict and the public interest in transparency. *Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017). Private health information should be maintained under seal at least until consent by the patient is obtained. *See generally id.* at *3.

US.121724062

13.     The "good cause" standard under Rule 26(c) "requires a balancing of the potential harm to the litigants' interests against the public's right to obtain information concerning judicial proceedings." *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 415-16 (S.D. Ind. 2001) (Baker, J.); *see also Felling v. Knight*, 211 F.R.D. 552, 554 (S.D. Ind. 2003) ("The rule essentially operates to balance the public's interest in open proceedings against an individual's private interest in avoiding annoyance, embarrassment, oppression, or undue burden or expense.") (Baker, J.). Consistent with the doctrine discussed earlier, however, "the presumption of public access 'applies only to the materials that formed the basis of the parties' dispute and the district court's resolution'; other materials that may have crept into the record are not subject to the presumption." *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013) (citing *Baxter Int'l*, 297 F.3d at 548)).

## III.    THE CONFIDENTIAL DOCUMENTS AT ISSUE THAT SHOULD BE MAINTAINED UNDER SEAL

**Exhibit A [Dkt. No. 9147-1]** is an excerpt from the deposition transcripts of Per Hendrickson, Product Design Engineer for William Cook Europe (WCE), occurring on June 15, 2016.  As part of his testimony, Mr. Hendrickson provides details about discussions had during the development of the Cook Celect filter.  This deposition transcript is also designated and stamped: "Confidential – Subject to Protective Order."  Based on the foregoing, this transcript should be maintained under seal for good cause since it contains confidential research and development information.

**Exhibit B [Dkt. No. 9147-2]** is a medical journal article authored by Arifa Sadaf, *et al*, and titled, "Significant Caval Penetration by the Celect Inferior Vena Cava Filter: Attributable to Filter Design?"  This is a publicly available article and is therefore not subject to confidentiality.

**Exhibit C [Dkt. No. 9147-3]** is a compilation of emails between multiple individuals, including Jim Gardner, Director of Reimbursement for Cook Incorporated, Dr. Martin Devitt, Medical Science Officer for Cook Australia, April Lavender, Senior Vice President for Regulatory Affairs at Cook Incorporated, and Bruce Fleck, Senior Marketing Manager for Cook Medical.  This compilation discusses post-market and complaint handling related to the Celect filter.  It also discuss medical responses and interpretations to research. These emails were produced at CookMDL2570_0380941 and marked and stamped, "Company Confidential." Based on the foregoing, this compilation should be maintained under seal for good cause since it contains confidential research and development and post-market product analysis, and complaint handling information.

**Exhibit D [Dkt. No. 9147-4]** is a compilation of an email from Bruce Fleck, Senior Marketing Manager for Cook Medical to various individuals; as well as, brainstorming notes and an internal power point.  This compilation of documents not only includes internal marketing and development documents, but it also includes brainstorming notes from an internal research and development meeting.  The email was produced at CookMDL2570_0490785 and marked and stamped, "Company Confidential."  The brainstorming notes and power point were produced in native format with a slip sheet designated and stamped "Company Confidential."  Based on the foregoing, this compilation should be maintained under seal for good cause since it contains confidential research and development and post-market product analysis information.

**Exhibit E [Dkt. No. 9147-5]** is the peer review questions and responses to a journal article. It contains explanations for various issues raised by the authors' peers.  This document was produced in native format at CookMDL2570_0390657, with is slip sheet designated and

stamped, "Company Confidential." Based on the foregoing, this document should be maintained under seal for good cause since it contains confidential complaint handling information.

**Exhibit F [Dkt. No. 9147-6]** is an excerpt from the Cook Medical Outside the United States Protocol. The excerpt contains definitions utilized in the protocol to guide investigators in the study. This document was produced in native format at CookMDL2570_0200926, with its slip sheet designated and stamped, "Company Confidential." Based on the foregoing, this document should be maintained under seal for good cause since it contains confidential research and development information.

**Exhibit 1 [Dkt. No. 9149-1]** is a compilation of excerpts from the deposition transcript of Dr. Mark Rheudasil, occurring on February 28, 2018. As part of his testimony, Dr. Rheudasil discusses Mrs. Brand's medical conditions and his treatments thereof. This deposition transcript is designated and stamped: "Confidential – Subject to Protective Order." Based on the foregoing, this document should be maintained under seal for good cause since it contains medical privacy information.

**Exhibit 2 [Dkt. No. 9149-2]** is the declaration of Harlan M. Krumholz, M.D. and **Exhibit 2-A [Dkt. No. 9149-3]** is his report dated April 2018. In his declaration, Dr. Krumholz's summarizes the topics he covers in his report; which include details about Mrs. Brand's medical conditions, Cook research and development, and Cook post-market product analysis, complaint handling. Based on the foregoing, the declaration and report should be maintained under seal for good cause since they contain research and development, post-market product analysis, complaint handling, and medical privacy information.

**Exhibit 3 [Dkt. No. 9151-1]** is a compilation of emails between Jennifer Brown, Cook's Clinical and Regulatory Specialist, and two other Cook employees. In the emails, the Cook

employees discuss complaints related to the Celect and Mrs. Brand's experience with the Celect. This document was produced at CookMDL2570_0412417 with the designation and stamp, "Company Confidential." Based on the foregoing, these emails should be maintained under seal for good cause since they contain post-market product analysis, complaint handling, and medical privacy information.

Exhibit 4 [Dkt. No. 9151-2] is an email exchange between Cook's Director of Research Arne Mølgaard-Nielsen and another Cook Employee discussing the development of the Cook Celect.  This document was produced at CookMDL2570_0783696. It was designated and stamped: "Company Confidential." Based on the foregoing, this email communication should be maintained under seal for good cause since it contains confidential research and development information.

Exhibit 5 [Dkt. No. 9151-3] is an email from Senior Product Manager, Bruce Fleck discussing the registration of the Cook Celect in Australia.  This document was produced at CookMDL2570_0450320. It was designated and stamped: "Company Confidential." Based on the foregoing, this email communication should be maintained under seal for good cause since it contains confidential regulatory affairs information.

Exhibit 6 [Dkt. No. 9151-4] is notes from an executive review held on the Cook Celect Filter by various Cook employees. Its topics include product release options, market overview, and sales options. This document was produced in its native format at CookMDL2570_0735199. Its slip sheet was designated and stamped, "Company Confidential." Based on the foregoing, this document should be maintained under seal for good cause since it contains confidential sales, marketing and public relations information.

**Exhibit 7 [Dkt. No. 9151-5]** is the Laborda, *et al* article titled, "Laparoscopic Demonstration of Vena Cava Wall Penetration by Inferior Vena Cava Filters in an Ovine Model. This article was produced at CookMDL2570_0799754. This document is publicly available and is not subject to confidentiality.

**Exhibit 8 [Dkt. No. 9151-6]** is an email exchange with Lykes Iversen, Cook Medical's Quality Engineer.  It contains information about complaints related to the Tulip and Celect. This document was produced at CookMDL2570_0459834. It was designated and stamped, "Company Confidential."  Based on the foregoing, this email exchange should be maintained under seal for good cause since it contains confidential post-market product analysis and complaint handling information.

**Exhibit 9 [Dkt. No. 9151-7]** is the attachment to the email referenced at Exhibit 8 [Dkt. No. 9151-6] above. This document was produced at CookMDL2570_0459835 and has been designated Confidential. It contains sales information and data related to alleged perforations. Based on the foregoing, this document should be maintained under seal for good cause since it contains confidential post-market product analysis and complaint handling information.

**Exhibit 10 [Dkt. No. 9151-8]** is an internal Cook document providing talking points to the representative team regarding Cook Celect. It contains potential concerns and suggestions for responses. This document was produced at CookMDL2570_0729943 and has been designated Confidential. Based on the foregoing, this document should be maintained under seal for good cause since it contains confidential sales, marketing and public relations information and complaint handling informaition.

**Exhibit 11 [Dkt. No. 9151-9]** is an internal Cook document discussing the options for modification to the Cook Celect Filter; presenting test results; and contemplating the

- 12 -

implications of each potential change. This document was produced natively at CookMDL2570_0484885. Its slip sheet was designated and stamped, "Company Confidential." Based on the foregoing, this document should be maintained under seal for good cause since it contains confidential research and development information.

**Exhibit 12 [Dkt. No. 9151-10]** is a compilation of excerpts from the deposition transcript of Tamara Clemmer, occurring on June 15, 2017. Mrs. Clemmer is the District Sales Manager for Cook. In this transcript she shares information about the Celect filter and communications with physicians about the filter. This deposition transcript is designated and stamped: "Confidential – Subject to Protective Order." Based on the foregoing, this transcript should be maintained under seal for good cause since it contains confidential sales, marketing, and public relations information.

**Exhibit 13 [Dkt. No. 9151-11]** is a compilation of excerpts from the deposition transcript of Jesper Thyregod, Director of Engineering for William Cook Europe, occurring on June 1, 2016. Mr. Thyregod testifies regarding internal considerations for modifications to the Celect filter after being placed on the market and after obtaining regulatory approvals. This deposition transcript is designated and stamped: "Confidential – Subject to Protective Order." Based on the foregoing, this transcript should be maintained under seal for good cause since it contains confidential regulatory affairs and post-market product analysis information.

**Exhibit 14 [Dkt. No. 9151-12]** is a compilation of excerpts from the deposition transcript of Gregory Gordon, M.D., occurring on June 12, 2018. Dr. Gordon's testimony includes references to Mrs. Brand's medical conditions and her experience with the Celect filter. This deposition transcript is designated and stamped: "Confidential – Subject to Protective Order."

- 13 -

Based on the foregoing, this transcript should be maintained under seal for good cause since it contains medical privacy information

**Exhibit 15 [Dkt. No. 9151-13]** is spreadsheet data from the Cook Outside the United States Registry Study. It contains medical interpretations from site investigators. This document was produced natively at CookMDL2570_1276027. Its slip sheet was designated and marked, "Company Confidential." Based on the foregoing, this document should be maintained under seal for good cause since it contains confidential post-market product analysis and medical privacy information.

**Exhibit 16 [Dkt. No. 9153-1]** is a handwritten note to the Celect file from Bill Voorhees, Cook Inc.'s Vice President and Chief Science Officer.  In his note to file, Mr. Voorhees documented his communications with the FDA regarding the Celect filter.  This document was produced at CookMDL2570_0064892.  It was designated and stamped, "Confidential."  Based on the foregoing, this document should be maintained under seal for good cause since it contains confidential regulatory affairs information.

**Exhibit 17 [Dkt. No. 9158]** is a letter and report from Cook Incorporated to the FDA, dated February 26, 2007.  The document contains complaint data, as well as clinical study and regulatory data. This document was produced at Cook IVCF_003878.  It was designated and stamped, "Company Confidential."  Based on the foregoing, this document should be maintained under seal for good cause since it contains confidential research and development, post-market product analysis and regulatory affairs information.

**Exhibit 18 [Dkt. No. 9153-2]** is a letter from the Food and Drug Administration to Cook Incorporated regarding regulatory approval of the Cook Celect Filter.  This document was

produced at Cook IVCF_004157.  Based on the foregoing, this document should be maintained under seal for good cause since it contains regulatory affairs information.

Exhibit 19 [Dkt. No. 9153-3] is a compilation of emails from various Cook personnel, including Bill Voorhees, Cook Inc.'s Vice President and Chief Science Officer and Anita Kvistgaard, Cook Medical's Quality Regulations Supervisor.  The emails discuss post-market complaints and testing being done on the filters. These emails were produced at CookMDL2570_0409795.  They were designated and marked, "Company Confidential." Based on the foregoing, these emails should be maintained under seal for good cause since they contain confidential post-market product analysis and complaint handling information.

Exhibit 20 [Dkt. No. 9153-4] is a compilation of emails from various Cook personnel, including Jennifer Brown, Cook's Clinical and Regulatory Specialist, James Gardner, Cooks Director Reimbursement, and April Lavender, Cooks Senior Vice President of Regulatory Affairs.  The emails discuss regulatory approval and the relevant 510(k) guidance.  These emails were produced at CookMDL2570_0402856.  They were designated and marked, "Company Confidential." Based on the foregoing, these emails should be maintained under seal for good cause since they contain confidential regulatory affairs information.

Exhibit 21 [Dkt. No. 9153-5] is a compilation of emails from various Cook personnel, including Jennifer Brown, Cook's Clinical and Regulatory Specialist and Darrell Talbert, Cook's Global Project Manager.  The emails discuss the drafts of the instructions for use for the Celect filter including adverse event data and clinical event data.  These emails were produced at CookMDL2570_0416442.  They were designated and marked, "Company Confidential." Based on the foregoing, these emails should be maintained under seal for good cause since they contain confidential research and development information.

US.121724062

**Exhibit 22 [Dkt. No. 9153-6]** is a power point presentation titled, "Cook Inferior Vena Cava Filters with permanent and retrievable indications: Cook Celect/Celect Platinum and Gunther Tulip." The presentation includes clinical study data and regulatory background.  This document was produced at CookMDL2570_0835306.  It is designated and stamped, "Company Confidential."  Based on the foregoing, this document should be maintained under seal for good cause since it contains confidential regulatory affairs and research and development information.

**Exhibit 23 [Dkt. No. 9154-1]** is the declaration of Gregory Gordon, M.D., dated September 11, 2018.  Included are, **Exhibit 23-A [Dkt. No. 9154-2]** and **Exhibit 23-B [Dkt. No. 9154-3]**, which contain Dr. Gordon's Report and Rebuttal respectively.  These documents contain details about Mrs. Brand's medical conditions and experience with the Celect filter. Based on the foregoing, these documents should be maintained under seal for good cause since they contain medical privacy information.

**Exhibit 24 [Dkt. No. 9155-1]** is an email from Arne Molgaard-Nielsen, Research Manager for William Cook Europe.  In the email Mr. Nielsen explains the internal workings of the vena cava and how the filter will react in such a setting.  This document was produced at CookMDL2570_0776519.  It was designated and stamped, "Company Confidential."  Based on the foregoing, this document should be maintained under seal for good cause since it contains confidential research and development information.

**Exhibit 25 [Dkt. No. 9155-2]** is the Cook Celect Filter Set for the Jugular Vein Approach Instructions For Use.  This document was produced at CookMDL2570_0161696.  This document is publicly available and not subject to confidentiality.

- 16 -

**Exhibit 26 [Dkt. No. 9159-1]** is the Cook Celect Filter Set for the Femoral Vein Approach Instructions For Use. This document was produced at CookMDL2570_0161684. This document is publicly available and not subject to confidentiality.

**Exhibit 27 [Dkt. No. 9159-2]** is the Cook Celect Filter Set for the Femoral and Jugular Vein Approach Instructions For Use. This document was produced at CookMDL2570_0161707. This document is publicly available and not subject to confidentiality.

**Exhibit 28 [Dkt. No. 9159-3]** is the Cook Celect Filter Set for the Femoral and Jugular Vein Approach Instructions For Use. This document was produced at CookMDL2570_0165984. This document is publicly available and not subject to confidentiality.

**Exhibit 29 [Dkt. No. 9159-4]** is the Cook Celect Filter Set for the Femoral Vein Approach Instructions For Use. This document was produced at CookMDL2570_0012338. This document is publicly available and not subject to confidentiality.

**Exhibit 30 [Dkt. No. 9159-5]** is the Cook Celect Filter Set for the Femoral Vein Approach Instructions For Use. This document was produced at CookMDL2570_0012350. This document is publicly available and not subject to confidentiality.

**Exhibit 31 [Dkt. No. 9159-6]** is the Cook Celect Filter Set for the Jugular Vein Approach Instructions For Use. This document was produced at CookMDL2570_0012362. This document is publicly available and not subject to confidentiality.

**Exhibit 32 [Dkt. No. 9159-7]** is the Cook Celect Filter Set for the Femoral and Jugular Vein Approach Instructions For Use. This document was produced at CookMDL2570_0445420. This document is publicly available and not subject to confidentiality.

**Exhibit 33 [Dkt. No. 9159-8]** is an internal memorandum from Cook's Director of Research, Arne Mølgaard-Nielsen of William Cook Europe. The document includes

US.121724062

specifications, test results, and drawings related to the Cook Celect Filter.  This document was produced natively by CookMDL2570_0601063, with its slip sheet designated and stamped "Company Confidential." Based on the foregoing, this document should be maintained under seal for good cause since it contains confidential research and development information.

**Exhibit 34 [Dkt. No. 9160]** is an internal power point presented by Brian Choules, Cook's Director of Non-clinical Testing.   The presentation includes specifications, test results, and images related to the Cook Celect Filter.   This document was produced natively by CookMDL2570_0405122, with its slip sheet designated and stamped "Company Confidential."  Based on the foregoing, this document should be maintained under seal for good cause since it contains confidential research and development information.

**Exhibit 35 [Dkt. No. 9161-1]** This document was produced at CookMDL2570_0144641 is an internal document titled, "Quality Engineering Risk Assessment." It includes potential failure modes and an assessment of the risks related to those failure modes.  This document was produced natively by CookMDL2570_0144641, with its slip sheet designated and stamped "Company Confidential." Based on the foregoing, this document should be maintained under seal for good cause since it contains confidential research and development information.

**Exhibit 36 [Dkt. No. 9161-2]** is a compilation of confidential email communications involving Cook's Director of Research Arne Mølgaard-Nielsen from William Cook Europe. They discuss Cook's internal failure mode analysis and results. These emails were produced at CookMDL2570_0805597. They were designated and stamped: "Company Confidential." Based on the foregoing, these communications should be maintained under seal for good cause since they contain confidential research and development information.

US.121724062

**Exhibit 37 [Dkt. No. 9161-3]** is a compilation of confidential email communications involving Cook's Global Project Manager for Peripheral Intervention, Darrell Talbert.  The emails discuss post-market complaint handling related to filter fracture. These emails were produced at CookMDL2570_0733001. They were designated and stamped: "Company Confidential." Based on the foregoing, these communications should be maintained under seal for good cause since they contain confidential post-market product analysis and complaint handling information.

**Exhibit 38 [Dkt. No. 9176]** is the deposition transcript of Harlan M. Krumholz, M.D., occurring on June 28, 2018.  As part of his testimony, Dr. Krumholz discusses Mrs. Brand's medical conditions.  This deposition transcript is also designated and stamped: "Confidential – Subject to Protective Order."  Based on the foregoing, this transcript should be maintained under seal for good cause since it contains confidential complaint handling and medical privacy information.

**Exhibit 39 [Dkt. No. 9180]** is an internal power point presented by Cook's Director of Research Arne Mølgaard-Nielsen from William Cook Europe.   The presentation includes complaint data, test results, and images related to the Cook Celect Filter.  This document was produced natively by CookMDL2570_0601062, with its slip sheet designated and stamped "Company Confidential."  Based on the foregoing, this document should be maintained under seal for good cause since it contains confidential research and development, post-market product analysis, and complaint handling information.

**Exhibit 40 [Dkt. No. 9178-1]** is the De Gregorio, *et al* article titled, "A Comparative Study of the Force Needed to Disengage Implanted Gunther Tulip versus Celect Optional Inferior Vena Cava Filters form the Caval Wall in an *ex-vivo* Ovine Model."  This article was

produced at CookMDL2570_0596478. This document is publicly available and is not subject to confidentiality.

**Exhibit 41 [Dkt. No. 9162-1]** is an email from Dr. Rolf Gunther to Cook's Director of Research Arne Mølgaard-Nielsen from William Cook Europe.  The email explains testing data related to perforations of the Celect filter. The email was produced at CookMDL2570_0779775. It was designated and stamped: "Company Confidential." Based on the foregoing, this email should be maintained under seal for good cause since it contains confidential research and development information.

**Exhibit 42 [Dkt. No. 9162-2]** is a compilation of excerpts from the deposition transcript of Thomas Roberts, occurring on May 20, 2016.  As part of his testimony, Mr. Roberts discusses Cook's handling of complaints related to its products.  This deposition transcript is designated and stamped: "Confidential – Subject to Protective Order." As such this transcript should be maintained under seal for good cause as confidential post-market product analysis and complaint handling information.

**Exhibit 43 [Dkt. No. 9162-3]** is a compilation of emails from various Cook personnel, including Bill Voorhees, Cook Inc.'s Vice President and Chief Science Officer.  The emails discuss post-market product analysis and complaint handling These emails were produced at CookMDL2570_0465794.  They were designated and marked, "Company Confidential." Based on the foregoing, these emails should be maintained under seal for good cause since they contain confidential post-market product analysis and complaint handling information.

**Exhibit 44 [Dkt. No. 9163-1]** is internal test results.  It contains perforation and penetration data from internal testing.  This document was produced natively by CookMDL2570_0465797, with its slip sheet designated and stamped "Company

Confidential." Based on the foregoing, this document should be maintained under seal for good cause since it contains confidential research and development information.

Exhibit 45 [Dkt. No. 9163-2] is the metadata and spreadsheet for internal testing results. The spreadsheet contains testing data for both the Celect and the Tulip filters. This document was produced natively by CookMDL2570_0465798, with its slip sheet designated and stamped "Company Confidential.". Based on the foregoing, this document should be maintained under seal for good cause since it contains confidential research and development information.

Exhibit 46 [Dkt. No. 9163-3] is the metadata and spreadsheet for FDA Reported Adverse Events. The spreadsheet is an internal compilation of data reported to the FDA regarding adverse events. This document was produced natively by CookMDL2570_1300899, with its slip sheet designated and stamped "Company Confidential.". Based on the foregoing, this document should be maintained under seal for good cause since it contains confidential post-market product analysis information.

Exhibit 47 [Dkt. No. 9163-4] is a compilation of confidential email communications involving Cook's Global Project Manager for Peripheral Intervention, Darrell Talbert and Cook's Product Specialist for Venous Therapies, Bruce Fleck. The emails contain a discussion about potential causes for an adverse event. These emails were produced at CookMDL2570_0726286. They were designated and stamped: "Company Confidential." Based on the foregoing, these communications should be maintained under seal for good cause since they contain confidential post-market product analysis and complaint handling information.

Exhibit 48 [Dkt. No. 9178-2] is the Single Complaint Report for Mrs. Brand. It contains details regarding Cook's handling of Mrs. Brand's filter, as well as, Mrs. Brand's medical information. This document was produced at CookMDL2570_0100590. It was designated and

stamped, "Company Confidential."  Based on the foregoing, this document should be maintained under seal for good cause since it contains confidential medical privacy, post-market product analysis, and complaint handling.

Exhibit 49 [Dkt. No. ????] is described by Plaintiff as: FDA Guidance "Labeling: Regulatory Requirements for Medical Devices" (1989) at 4-5. However, this Exhibit does not appear to have been filed by Plaintiff.  Nevertheless, the document titled, "Labeling: Regulatory Requirements for Medical Devices" is a publicly available document and therefore, not subject to confidentiality.

Exhibit 50 [Dkt. No. 9165-1] is the declaration of Robert M. McMeeking, Ph.D.; Exhibit 50-A [Dkt. No. 9166] is Dr. McMeeking's Expert Report titled, "Mechanical analysis of Cook inferior vena cava filters", dated April 2018; Exhibit 50-B [Dkt. No. 9165-2] is dated June 17, 2018 and is Dr. McMeeking's rebuttal to Dr. Scott Robertson's, "Evaluation of Cook Medical Gunther Tulip and Celect IVC Filter Designs,"; and Exhibit 50-C [Dkt. No. 9165-3] is a document titled, "Guidance for Cardiovascular Intravascular Filter 510(k) Submissions," issued by the FDA on November 26, 1999.  The compilation of documents that make up Exhibit 50 contain details about Cook's handing of complaints, as well as, details about Mrs. Brand's medical conditions. Based on the foregoing, this compilation of document should be maintained under seal for good cause since it contains confidential complaint handling and medical privacy information.

Exhibit 51 [Dkt. No. 9167-1] is a compilation of excerpts from the deposition transcript of Robert M. McMeeking, Ph.D., occurring on June 8, 2018. As part of his testimony, Dr. McMeeking discusses Mrs. Brand's medical conditions.  This deposition transcript is designated and stamped: "Confidential – Subject to Protective Order."  Based on the foregoing, this

transcript should be maintained under seal for good cause since it contains medical privacy information.

Exhibit 52 [Dkt. No. 9167-2] is a compilation of excerpts from the deposition transcript of Cook engineer, James Carlson, occurring on June 22, 2017.  As part of his testimony, Mr. Carlson discusses Cook's handling of complaints and post-market product analysis related to the Cook Celect.  This deposition transcript is designated and stamped: "Confidential – Subject to Protective Order."  Based on the foregoing, this transcript should be maintained under seal for good cause since it contains confidential post-market product analysis and complaint handling information. .

Exhibit 53 [Dkt. No. 9167-3] is a compilation of excerpts from the deposition transcript of Brian Choules, of the Cook Research and Development Department, occurring on June 22, 2016.  As part of his testimony, Mr. Choules discusses Cook's research and development, as well as Cook's handling of complaints and post-market product analysis.  This deposition transcript is designated and stamped: "Confidential – Subject to Protective Order."  Based on the foregoing, this transcript should be maintained under seal for good cause since it contains confidential research and development, post-market product analysis and complaint handling information.

Exhibit 54 [Dkt. No. 9167-4] is the metadata and confidential research and development considerations for modifications to the Cook Celect filter. This document was produced natively by CookMDL2570_0484885, with its slip sheet designated and stamped "Company Confidential."  Based on the foregoing, this document should be maintained under seal for good cause since it contains confidential post-market product analysis and research and development information.

US.121724062

**Exhibit 55 [Dkt. No. 9167-5]** is the internal document titled, "Cook Medical IVC Filter Data Summary," dated August 2016. This summary contains internal filter research and complaint data. This document was produced at CookMDL2570_1276605. It is designated and labeled, "Company Confidential." Based on the foregoing, this document should be maintained under seal for good cause since it contains confidential post-market product analysis and complaint handling information.

**Exhibit 56 [Dkt. No. 9179]** is a compilation of internal Cook emails from and to various Cook employees discussing the handling of complaints related to the Celect filter. These documents were produced at CookMDL2570_0197378. They were designated and stamped, "Company Confidential." Based on the foregoing, these emails should be maintained under seal for good cause since they contain confidential post-market product analysis and complaint handling information.

**Exhibit 57 [Dkt. No. 9178-3]** is a compilation of excerpts from the deposition transcript of Paul Timperman, occurring on April 18, 2018. As part of his testimony, Mr. Timperman discusses Mrs. Brand's medical conditions. This deposition transcript is also designated and stamped: "Confidential – Subject to Protective Order." Based on the foregoing, this transcript should be maintained under seal for good cause since it contains medical privacy information.

**Exhibit 58 [Dkt. No. 9168-1]** is an email from Cook's Director of Research, Arne Mølgaard-Nielsen to Dr. Rolf Gunther. The email analyzes testing and market data. The email was produced at CookMDL2570_0765319. It was designated and stamped: "Company Confidential." Based on the foregoing, this email should be maintained under seal for good cause since it contains confidential post-market product analysis information.

US.121724062

Exhibit 59 [Dkt. No. 9168-2] is the Lyon *et al* article/publication titled, Short- and Long-term Retrievability of the Celect Vena Cava Filter: Results from a Multi-institutional Registry. It is a publicly available document and therefore not subject to confidentiality.

Exhibit 60 [Dkt. No. 9181-1] is the Declaration of Lead Counsel, Ben C. Martin attesting to "true and correct copies" of documents produced by Cook.  It should not be subject to confidentiality and sealing.

Exhibit 61 [Dkt. No. 9168-3] is an email and Executive Summary distributed by Line Hedegaard, Larsen, from Cook's Clinical Research Department at William Cook Europe, Aps. It provides testing data and complaint information for both the Tulip and Celect filters.   This document was produced at CookMDL2570_0455053.  It was designated and marked, "Company Confidential – Attorneys' Eyes Only." Based on the foregoing, this document should be maintained under seal for good cause since it contains confidential post-market product analysis and research and development information.

Finally, **Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment [Dkt. No. 9146]** relies on or references the Cook confidential business and commercial information contained in the exhibits discussed above and filed under seal. **Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment [Dkt. No. 9146]** also relies on or references the medical privacy information contained in the exhibits discussed above and filed under seal by Mrs. Brand and which she has not consented to releasing publicly.

## IV.    THERE IS GOOD CAUSE TO MAINTAIN THE DOCUMENTS UNDER SEAL

Good cause exists to maintain **Plaintiff's Exhibits A, C-F, 2-6, 8-13, 15-22, 24, 33-39, 41-48, 50, 52-56, 58, and 61** *under seal.*  The documents contain Cook confidential business and commercial information, and the Cook Defendants would face competitive and economic

harm if such materials were made publicly available.  The documents contain and constitute confidential, proprietary, and sensitive internal company information on trade secrets, product research and development, post-market product analysis, sales, marketing, and public relations, regulatory affairs, or complaint handling information.  The documents should not be disclosed to the public.

The Cook Defendants' May 1, 2017 letter to Magistrate Baker and the Declaration of Mark Breedlove (attached here for reference as **Exhibit 1**) are instructive and demonstrate good cause to maintain **Plaintiff's Exhibits A, C-F, 2-6, 8-13, 15-22, 24, 33-39, 41-48, 50, 52-56, 58, and 61 *under seal.***  Cook invests substantial resources into product research, development, and testing, including with regard to Cook's IVC filter technology.  Breedlove Decl. ¶ 6.  Cook maintains strict confidentiality over its research and development ideas, efforts, and results, and considers such information to be proprietary to the company.  *Id*.  And disclosure of such information would therefore result in competitive harm to Cook and could "lead to a windfall to the discovering party." *Star Scientific*, 204 F.R.D. at 416; Breedlove Decl. ¶¶ 6-7.  Likewise, Cook invests considerable resources in, derives commercial advantage from, and maintains strict confidentiality over, its post-market product analysis, its sales, marketing, and public relations information, its regulatory affairs strategies and information, and its complaint handling procedures. *Id.* at ¶¶ 8-15.  Disclosure of Cook's non-public post-market product analysis, its sales, marketing, and public relations information, its regulatory affairs efforts and strategies, and its complaint handling procedures and information would likewise cause competitive harm to Cook. Breedlove Decl. ¶¶ 8-15; *see EEOC v. Abbott Labs., Inc.*, 2012 WL 3842460, at *2-3 (E.D. Wis. Sept. 5, 2012).

US.121724062

In sum, good cause exists to maintain **Plaintiff's Exhibits A, C-F, 2-6, 8-13, 15-22, 24, 33-39, 41-48, 50, 52-56, 58, and 61** *under seal.*   Cook's trade secrets, product research and development, post-market product analysis, sales, marketing, and public relations, regulatory affairs, and complaint handling information are confidential and proprietary.  The disclosure of such information and documents would result in competitive harm to Cook.  **Plaintiff's Exhibits A, C-F, 2-6, 8-13, 15-22, 24, 33-39, 41-48, 50, 52-56, 58, and 61** should be sealed.

Further, good cause exists to maintain **Plaintiff's Exhibits 1-3, 14-15, 23, 38, 48, 50-51, and 57** *under seal* because the documents contain private, sensitive, and confidential medical information regarding Mrs. Brand.

As set forth above, courts in the Seventh Circuit have routinely recognized that, while parties' medical information may be made public where it is relevant to the claims at issue and/or necessary to the disposition of the case, other information may be kept under seal with good cause. *See Westedt,* 2016 WL 2997504, at *1; *Gibson,* 2015 WL 12964665, at *1; *Noe,* 2008 WL 5070463, at *3.  The good cause inquiry thus requires balancing a party's acknowledged interest in medical privacy, *see Whalen,* 429 U.S. at 599–600, against the Court's (and parties') interest in the accurate resolution of the conflict and the public interest in transparency. *Cole,* 2017 WL 2929523, at *3.  Private health information should be maintained under seal at least until consent by the patient is obtained. *See generally id.* at *3.

**Plaintiff's Exhibits 1-3, 14-15, 23, 38, 48, 50-51, and 57** contain private, sensitive, and confidential medical information regarding Mrs. Brand.  Plaintiff's medical and psychiatric history, conditions, and treatment are highly relevant to the issues in this case.  However, out of an abundance of caution, the Court should permit these documents to be filed under seal until Plaintiff consents to what should be disclosed.

- 27 -

Finally, good cause exists to file and maintain **Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment [Dkt. No. 9146]** *under seal* because it relies on or references the Cook confidential business and commercial information contained in the exhibits discussed above and filed under seal.  Plaintiff's Memorandum in Opposition should be filed and maintained under seal to protect Cook's interest in its confidential and proprietary business and commercial information.  Good cause also exists to seal **Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment [Dkt. No. 9146]** because it discusses and contains private, sensitive, and confidential medical information regarding Mrs. Brand which she has not consented to releasing publicly and which, out of an abundance of caution, should remain sealed.

## V.      CONCLUSION

For all the foregoing reasons, the Cook Defendants respectfully request that the Court issue an Order directing the Clerk to maintain **Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment [Dkt. No. 9146] and Plaintiff's Exhibits A, C-F, 1-6, 8-24, 33-39, 41-48, 50-58, and 61 thereto** *under seal*.  The documents contain Cook confidential, proprietary, and sensitive internal company information on trade secrets, product research and development, post-market product analysis, sales, marketing, and public relations, regulatory affairs, or complaint handling.  There is good cause to seal the documents to prevent public disclosure and competitive harm to the Cook Defendants.  The documents also contain private, sensitive medical information regarding Mrs. Brand.  Accordingly, there is good cause to seal these documents out of an abundance of caution to protect Mrs. Brand's interest in her medical privacy.

- 28 -

US.121724062

In accordance with Local Rule 5-11(e)(4), the Cook Defendants have submitted a proposed order maintaining the documents under seal.

Respectfully submitted,


Dated: January 28, 2019

/s/ Andrea Roberts Pierson
Andrea Roberts Pierson (# 18435-49)
J. Joseph Tanner (# 11856-49)
Nicholas B. Alford (# 31867-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
E-Mail:  andrea.pierson@faegrebd.com
E-Mail:  joe.tanner@faegrebd.com
E-Mail:  nicholas.alford@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

- 29 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 28, 2019, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.  Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

/s/ Andrea Roberts Pierson

- 30 -