UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

This Document Relates to the Following Action only:

*Brand v. Cook Medical, Inc. et al.,*
Case No. 1:14-cv-06018-RLY-TAB

## THE COOK DEFENDANTS' RESPONSE TO PLAINTIFF'S PROPOSED JURY INSTRUCTION CONCERNING "EGGSHELL SKULL" DOCTRINE

Defendants Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS (collectively, the "Cook Defendants" or "Cook") submit the following opposition to Plaintiff's Proposed Instruction concerning the eggshell plaintiff. *See also* Dkt. 9718 (Special Request to Charge No. 11).

### ARGUMENT

Plaintiff asks the Court to instruct the jury that its damages award should include any aggravation or worsening of a pre-existing medical condition that was caused by Cook's negligence and/or strict liability. Plaintiff's argument is based on the "eggshell skull" rule, which posits that a tortfeasor takes a plaintiff in whatever condition he finds him. Plaintiff's argument, however, fails for at least four independent reasons:

1. The rule does not apply in a design defect context.

2. The eggshell skull rule is a principle of damages, not causation.

3. Plaintiff does not claim that her IVC filter aggravated any existing medical condition or provoked any latent condition.

4. The circumstances surrounding Plaintiff's IVC filter implantation undercut any application of the rule.

Any one of these four reasons justifies denial of Plaintiff's motion.

**1.   The eggshell skull rule does not apply in the design defect context.**

As a threshold matter, Cook has found no Georgia case applying the eggshell skull rule in a design defect case, or even in a product case. All of the cases Cook can discover, including those Plaintiff cites, involved straightforward negligence personal injury claims or intentional torts. *See Coleman v. Atlanta Obstetrics & Gynecology Group, P.A.*, 390 S.E.2d 856 (Ga. Ct. App. 1990) (medical malpractice);[1] *AT Systems Southeast, Inc. v. Carnes*, 613 S.E.2d 150, 151 (Ga. Ct. App. 2005) (bringing claims against an armored truck operator for injuries sustained in a car accident); *Binns v. Metropolitan Atlanta Rapid Transit Authority*, 308 S.E.2d 674, 675 (Ga. Ct. App. 1983) (bringing claims against a public transport operator for injuries sustained while riding on a bus); *Whatley v. Henry*, 16 S.E.2d 214, 214 (Ga. Ct. App. 1941) (claiming negligent driving); *Bray v. Latham*, 8 S.E. 64, 64 (Ga. 1888) (claiming arson against a landlord).

Plaintiff offers no analysis or authority suggesting any reason for the Court to extend the doctrine from the context of these cases, which focus on the conduct of the defendant, to the design defect context, which focuses on the characteristics of the product under a risk-utility analysis. *See Ogletree v. Navistar Int'l Transp. Corp.*, 500 S.E.2d 570, 572 (Ga. 1998) ("[T]he

---

[1] The Georgia Court of Appeals decision in *Coleman* on which Plaintiff relies is no longer good law, having been superseded by a subsequent Georgia Supreme Court decision. *See Coleman v. Atlanta Obstetrics & Gynecology Group, P.A.,* 390 S.E.2d 856 (Ga. Ct. App. 1990), *superseded on appeal sub nom. Atlanta Obstetrics & Gynecology Group v. Coleman*, 398 S.E.2d 16 (Ga. 1990).

- 3 -

distinction between negligence and strict liability is not significant for purposes of the risk-utility analysis," which governs the determination of whether a product is defectively designed.); *see also* Georgia Suggested Pattern Jury Instructions – Civil 62.650 ("To determine whether a product suffers from a design defect, you must balance the inherent risk of harm in a product design against the utility or benefits of that product design.").

### 2. The eggshell skull rule is a principle of damages, not causation.

Plaintiff mistakenly asks the Court to treat the "eggshell skull" rule as if it were a causation doctrine instead of a damages rule. For example, the proposed instruction asks the Court to instruct the jury: "To cause a condition, or to aggravate it or make it worse, is an injury for which damages are available." The eggshell skull rule addresses whether a hypersensitive plaintiff may recover all the ***damages*** that flow from a particular act of negligence, even if an ordinary victim of that negligence would not have suffered damages to the same extent. The rule does ***not*** address whether the tortious act actually caused any injury or damages in the first place. Indeed, the aggravation of pre-existing conditions is addressed in *Georgia Law of Damages*, § 4.5 (2018-2019 ed.), which states that "The defendant cannot complain that his negligently inflicted injury would in a normal person cause less injury than it does in a person already impaired."

Thus, the rule is focused on the extent of the plaintiffs' injuries, not whether the negligence at issue *caused* the injuries, as Plaintiff's instruction suggests. Indeed, nothing in the "eggshell rule" prevents the jury here from considering whether Plaintiff's existing physical condition was a supervening or intervening cause of the perforation of her filter.

### 3. Plaintiff does not claim that her Celect IVC filter aggravated her existing injuries.

By its terms, the rule applies only when the damages resulting from a negligent act include the aggravation of an existing injury or sickness, and provides that a plaintiff may recover damages for the full extent of his or her injuries, including damages for the aggravated or newly activated condition. As courts applying Georgia law have stated the rule: "It is well established that recovery may be had for aggravation of a pre-existing condition or disease." *Binns*, 308 S.E.2d at 676.

Consistent with these statements, Georgia courts have applied the rule *only* to the aggravation of an *existing* condition. *See Coleman*, 390 S.E.2d at 858 (congenital heart defect contributed to stroke plaintiff suffered as a result of taking hormone injection); *Whatley*, 16 S.E.2d at 218 (new injury activated dormant syphilitic malady); *Binns*, 308 S.E.2d at 677 (bus accident, where plaintiff was dragged by a bus and hit his head on pavement, aggravated head injury that plaintiff incurred while serving in the army); *Bray*, 8 S.E. at 66 (plaintiff's "displacement of the womb" condition escalated into prolapsus uteri).

Here, the "existing condition" that Plaintiff seeks to bar the jury from considering is presumably Plaintiff's degenerative disk disease. But Plaintiff does not claim that the perforation or fracture of her Cook IVC filter aggravated her degenerative disk disease in any way or that they activated any dormant condition. Indeed, the damages Plaintiff seeks arise directly from the perforation and fracture of the filter; Plaintiff does not claim that her filter aggravated any existing condition. Thus, the eggshell skull rule thus does not apply here.

### 4. The unique circumstances of Plaintiff's IVC filter implantation make the "eggshell skull" rule inapplicable here.

Finally, the "eggshell skull" rule does not apply here because this is a unique situation where Plaintiff's underlying conditions actually led to implantation of the IVC filter, the very product on which the Plaintiff now bases her claim for damages. Plaintiff's treating physicians, Dr. Morrison and Dr. Rheudasil, specifically considered Plaintiff's pre-existing conditions and made the conscious medical decision to place the IVC filter *because of those conditions*.

Where the eggshell skull rule applies, the plaintiff claims that the defendant's negligence aggravated an unrelated, preexisting condition. For example, in *AT* Systems, 613 S.E.2d at 153, the Court found that the plaintiff's obesity and circulatory problems would "complicate" plaintiff's recovery from her injuries, thereby invoking the eggshell skull rule. But the plaintiff in *AT Systems* did not experience the car accident *because* of her obesity and circulatory problems.

In contrast here, Plaintiff received her Celect IVC filter *because of* her underlying conditions. The IVC filter was placed *because* Plaintiff was facing a "big spine surgery," was overweight, had a history of DVT, had a history of multiple abdominal surgeries that would complicate the spinal surgery, and would be on bed rest or have limited mobility following the surgery, which increases the risks of DVT. Indeed, the degenerative disk disease was the ***very condition that these doctors were treating*** when they used the IVC filter.

In other words, this was not a situation where Cook could "take the plaintiff as it found her." Cook did not "find her" at all; Plaintiff's own doctors made an independent decision to use the Celect IVC filter, not only despite but ***because of*** Plaintiff's known degenerative disk disease. This was not a situation where a manufacturer simply put a product on a shelf and left consumers to fend for themselves. Dr. Rheudasil has testified that his use of the Celect IVC

filter in Plaintiff was the result of a careful risk-benefit analysis by two treating physicians whom Plaintiff agrees were in the best position to judge Plaintiff's physical condition and needs. Under these circumstances, the rule cannot logically apply.

## CONCLUSION

For the reasons discussed above, Cook urges the Court to deny Plaintiff's Proposed Jury Instruction concerning the "eggshell skull" rule.

Respectfully submitted,

Dated: January 31, 2019

*/s/ Andrea Roberts Pierson*
Andrea Roberts Pierson (# 18435-49)
Jessica Benson Cox (# 26259-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
Email:  andrea.pierson@faegrebd.com
Email:  jessica.cox@faegrebd.com

Charles Webber (MN # 215247)
Bruce Jones (MN # 179553)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-8719
Facsimile: (612) 766-1600
Email:  chuck.webber@faegrebd.com
Email:  bruce.jones@faegrebd.com

*Counsel for the Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

US.121519005.02

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2019, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

/s/ *Andrea Pierson*