**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

---

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

---

This Document Relates to:

*Brand v. Cook Medical, Inc. et al.,*
Case No. 1:14-cv-6018-RLY-TAB

---

**PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

Pursuant to Fed. R. Civ. P. 50(a), Plaintiff Tonya Brand moves this Court for judgment as

a matter of law on the issue of assumption of the risk. Defendants, who have the burden of proof

on this issue, has not presented sufficient evidence to allow a reasonable jury to find that Ms. Brand

assumed all risks of harm from the Celect IVC filter by signing the informed consent form.

**STATEMENT OF FACTS**

At trial, Cook presented evidence of two informed consent forms. DX 6193 and DX 6126.

None of these forms, nor the testimony concerning informed consent, establish that Ms. Brand

voluntarily assumed the risk of injury from use of the Celect IVC filter.

First, Cook showed Ms. Brand signed a general consent form for her first lumbar surgery

dated February 23, 2004, years before she consented to the implantation of the Celect IVC filter.

Tr. 2618:3-17. In that consent form, she was informed that "any surgery less than 3 percent of the

time included things like death, deep vein thrombosis, stroke, blood loss." Tr. at 2618:20-25. With

regard to spinal surgery specifically, she was warned of things "like pain, numbness or weakness,

recurrence of symptoms, bowel or bladder changes, spinal fluid leak." Tr. at 2619:1-6. Nothing in the 2004 consent form for lumbar surgery had anything to do with her IVC filter implantation five years later.

Cook solicited testimony that Ms. Brand wanted to have the 2009 back surgery. Tr. at 2636:10-11. Of course, if she hadn't wanted the surgery, she would never have had it. The fact that she wanted back surgery says nothing about whether she understood the risks of the Celect IVC filter. Cook also solicited testimony that Ms. Brand wanted to avoid pulmonary embolism. Tr. at 2637:20-2638:1. That fact seems obvious, but again, it sheds no light at all on whether she understood the risks of the Celect IVC filter.

Cook then admitted Ms. Brand's consent form for the implantation of the Celect IVC filter. Tr. at 2639:10-25; DX 6126. Ms. Brand signed the firm at 7:00 a.m. the morning of her surgery. Tr. at 2640:2-9. The consent form notes that "there is a material risk that the patient may suffer infection, allergic reaction, severe loss of blood or loss of function of any limb or organ, paralysis or partial paralysis, paraplegia or quadraplegia, disfiguring scar, brain damage, cardiac arrest, or even death." Tr. at 2640:17-2641:5; DX 6126. But the consent form did not inform Ms. Brand that she would be implanted with the Celect filter. Tr. at 2701:4-10. Dr. Rheudasil also testified that he did not believe he informed Ms. Brand that she would be receiving a Celect IVC filter. Court Exhibit D-6 at 14 (59:8-12). The form provided no warning of perforation, fracture, or migration of the filter or its fragments—the complications experienced by Ms. Brand. DX 6126.

Again, Dr. Rheudasil testified that he did not believe he informed Ms. Brand that she would be receiving a Celect IVC filter. Court Exhibit D-6 at 14 (59:8-12). Dr. Rheudasil could not have informed Ms. Brand of the differences between the risk profiles for the Celect and the Tulip because, as he testified, he "kn[e]w of no complications unique to the Celect filter." Court Exhibit

2

D-6 at 16 (63:8-9). He considers them "roughly equivalent in terms of their risk analysis." *Id.* at

34 (201:23-202:4); *see also* Court Exhibit P-5 at 14 (177:25-178:4, 154:9-14). Dr. Rheudasil

agreed that it was his "impression … that Mrs. Brand understood the risks and benefits of her

surgery and her vena cava filter and elected to proceed." Court Exhibit D-6 at 18 (73:11-14). He

knew that she was provided a consent form, but he did not remember the consent form or its

contents. *Id.* at 16 (66:3-8).

Dr. Rheudasil testified that he was aware of the risk of migration or movement

embolization of filter fragments, although he suggested he did not generally talk to patients about

this risk: Dr. Rheudasil said, "if I was going to talk to a patient about migration or movement I

would probably have been more likely to talk about the filter, itself." Court Exhibit D-6 at 15-16

(62:18-21).

Ms. Brand agreed to a general statement that Dr. Rheudasil "explained to [her] the risks of

the filter, talked to [her] a little bit about it." Tr. at 2638:22-2639:1. She was not asked and did not

testify about *what* specific risks she was informed of.

## LEGAL STANDARD

In the Seventh Circuit, the "federal standard of review governs the adjudication of a motion

for a judgment as a matter of law." *Deimer v. Cincinnati Sub-Zero Prod., Inc.*, 58 F.3d 341, 343

(7th Cir. 1995). That standard is established by Fed. R. Civ. P. 50, which provides that, "[i]f a

party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury

would not have a legally sufficient evidentiary basis to find for the party on that issue, the court

may resolve the issue against the party." Fed. R. Civ. P. 50(a)(1)(A).

## ARGUMENT AND AUTHORITIES

**I.      Defendants Bear the Burden of Proof on Assumption of the Risk.**

"The burden of proof generally lies upon the party who is asserting or affirming a fact and to the existence of whose case or defense the proof of such fact is essential. If a negation or negative affirmation is essential to a party's case or defense, the proof of such negation or negative affirmation lies on the party so affirming it." O.C.G.A. § 24–4–1. In this case, Defendants bear the burden of proof on both intervening cause and assumption of the risk. Specifically, Defendants have the burden of proof on the affirmative defense of assumption of the risk. *Vaughn v. Pleasent*, 266 Ga. 862, 864, 471 S.E.2d 866, 868 (1996); *Carlson v. BRGA Assocs., LLC*, 82 F. Supp. 3d 1333, 1337 (S.D. Ga. 2015). Cook cannot meet its burden on the assumption of the risk defense.

## II.   The Evidence Does Not Support Submission of the Affirmative Defense of Assumption of the Risk.

"In Georgia, a defendant asserting an assumption of the risk defense must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed h[er]self to those risks." *Vaughn v. Pleasent*, 266 Ga. 862, 864, 471 S.E.2d 866, 868 (1996). "Assumption of risk means the plaintiff is fully aware of the dangerous defect or condition caused by defendant's negligence but freely chooses to proceed nonetheless." *Yamaha Motor Corp., U.S.A. v. McTaggart*, 313 Ga. App. 103, 105, 720 S.E.2d 217, 219 (2011) (quoting *Cotton v. Bowen*, 241 Ga. App. 543, 544, 524 S.E.2d 737 (1999)). To succeed on an assumption of the risk defense, the defendant must "prove[ ] that the plaintiff 'without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not.'" *Muldovan v. McEachern*, 271 Ga. 805, 807, 523 S.E.2d 566 (1999).

"Knowledge of the risk is the watchword of assumption of risk, and means both actual and subjective knowledge on the plaintiff's part." *Muldovan*, 271 Ga. at 808, 523 S.E.2d at 569 (quoting *Vaughn v. Pleasent*, 266 Ga. 862, 864, 471 S.E.2d 866 (1996)). The plaintiff must have

4

actual, subjective knowledge of "the specific, particular risk of harm associated with the activity or condition that proximately causes injury." *Muldovan*, 271 Ga. at 808, 523 S.E.2d at 569. Knowledge of "general, non-specific risks that might be associated with such conditions or activities" is insufficient. *Yamaha*, 313 Ga. App. at 106, 720 S.E.2d at 219 (citing *Hillman v. Carlton Co.*, 240 Ga. App. 432, 434(1), 522 S.E.2d 681 (1999)).  Instead, the defendant must establish that the plaintiff gave her consent "to take h[er] chances of injury from a known risk arising from what the defendant [did] or le[ft] undone." *Vaughn*, 266 Ga. at 864, 471 S.E.2d 866 (citing Prosser, Law of Torts, p. 440 (4th ed. 1971)). The standard is not that of the reasonable person, but instead "is 'a subjective one, geared to the particular plaintiff and h[er] situation.'" *Muldovan*, 271 Ga. at 808, 523 S.E.2d at 569 (quoting *Beringause v. Fogleman Truck Lines*, 200 Ga.App. 822, 824, 409 S.E.2d 524 (1991)).

For example, in *Cotton v. Bowen*, 241 Ga. App. 543, 543–44, 524 S.E.2d 737, 738–39 (1999), a pressman was accustomed to webbing a press by sticking his hands between the rollers. The press was sent out for modification, however, and the rollers were placed closer together. When the plaintiff put his arm between the new, closer-set rollers, his arm caught and he was injured. The Georgia court of appeals held that "there must be some evidence that [the plaintiff] was aware that the new rollers had been placed closer together, that he understood the risk of inserting his arm between the new rollers, and that he decided to take the risk of his arm being crushed." *Id.* The plaintiff's knowledge "of the general risk of placing his arm between the rollers … was insufficient to support a jury charge on assumption of the risk." *Id.*

The undisputed evidence is that Ms. Brand's consent form for placement of an IVC filter makes no mention of the risk of perforation, fracture or migration. *See* DX 6126. It does not inform her of the fact that she is being implanted with a Celect IVC filter, and Dr. Rheudasil does not

5

believe he would have told her that she was being implanted with a Celect IVC filter. Dr. Rheudasil was unaware of any differences in safety between the Celect and the Tulip filter, and so he could not have shared those facts with Ms. Brand. Dr. Rheudasil suggested that he did not generally discuss the risk of migration with his patients. The strongest piece of evidence for Cook is that Dr. Rheudasil had the impression that Ms. Brand was aware of the risks. His impression is not enough to establish the elements of Cook's defense, however. This scant evidence is insufficient to raise a fact issue for the jury that Ms. Brand had actual, subjective risk of the specific dangers posed by the defective product. A general understanding of the risks is insufficient to raise a jury question on the issue. For that reason, Cook's affirmative defense of assumption of the risk must fail and should not be presented to the jury.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully urges the Court to grant judgment as a matter of law on Cook's defense of assumption of the risk.

Dated January 31, 2019.

Respectfully Submitted,

/s/ Joseph N. Williams
Joseph N. Williams, Atty. No. 25874-49
Riley Williams & Piatt, LLC
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317) 633-5270
Facsimile: (317) 426-3348
Email: jwilliams@rwp-law.com

*Liaison Counsel to Plaintiffs' Steering Committee and on behalf of Plaintiffs' Steering Committee*

/s/ Michael W. Heaviside
Michael W. Heaviside, Esq.
Heaviside Reed Zaic, A Law Corporation

910 17th Street NW, Suite 800
Washington, DC 20006
Telephone: (202) 233-1993
Email: mheaviside@hrzlaw.com

*/s/ Ben C. Martin*
Ben C. Martin, Esq.
The Law Office of Ben C. Martin
3710 Rawlins Street, Suite 1230
Dallas, TX 75219
Telephone: (214) 761-6614
Facsimile: (214) 74407590
Email: bmartin@bencmartin.com

*/s/ David P. Matthews*
David P. Matthews, Esq.
Matthew and Associates
2509 Sackett St.
Houston, TX 77098
Telephone: (713) 522-5250
Facsimile: (713) 535-7184

*Plaintiffs' Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

*/s/ Ben C. Martin*
Ben C. Martin