**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

This Document Relates to:

*Brand v. Cook Medical, Inc. et al.,*
Case No. 1:14-cv-06018-RLY-TAB

**THE COOK DEFENDANTS' BENCH BRIEF ON
<u>PUNITIVE DAMAGES EVIDENCE</u>**

After the jury returned its liability verdict, Plaintiff's counsel told the Court that "we could put on, certainly, our evidence [regarding punitive damages] within – within an hour or less…." (Trial Tr. 4385, attached as Exhibit 1.)  The Court stated, "I don't know what other – what other evidence would be out there other than financial," to which Plaintiff's counsel reiterated that "there may be a little bit of evidence, as indicated.  Short, certainly." (*Id*. at 4387-88.)

Communications with Plaintiff's counsel over the weekend have indicated that they plan to present much more than "a little bit of evidence" that will be "[s]hort" and presented "within an hour or less."  Instead, they have suggested a far more wide-ranging evidentiary presentation, including at least three witnesses—William Vorhees, Jennifer Brown, and Mark Breedlove—that will require Cook to call witnesses to respond to the evidence that it appears Plaintiff plans to present.  Thus, it appears likely to take far more than a single day as the Court suggested to the jury. (*Id*. at 4390 ("And I believe we'll conclude all our proceedings, then, on Tuesday in this matter."))

-1-

Moreover, Plaintiff has identified documents she plans to present that go beyond what the law allows—Celect Platinum filter, Instructions for Use (including warnings), Jennifer Brown's notes in preparation for deposition, evidence that Plaintiff did not offer (but could have) in the merits phase, and evidence that is unrelated to the conduct in designing the Celect filter.

It is unquestionable that state and federal law limit the scope of punitive-damages evidence in this case in three key ways:

1. The evidence must relate to Cook's conduct in the design of the Celect.
2. Cook's conduct must predate the date that the Celect filter was designed or (at the very latest) manufactured.
3. The evidence must not invite the jury to punish Cook for harm suffered by nonparties (*i.e.*, other patients or plaintiffs who have the Celect or any other Cook filter).

As mentioned, the parties have stipulated to the net worth of the three named defendants: Cook Incorporated, Cook Medical LLC, and William Cook Europe ApS. Both this Court and Magistrate Judge Baker have ruled that this is the only evidence of net worth that is admissible. Despite that, Plaintiff has demanded financial information for Cook Group Inc. and a host of other related entities that are not parties to this lawsuit. The Court should stand by its earlier ruling and exclude that evidence for the reasons outlined in Cook's contemporaneously filed brief regarding Cook Group Inc.'s financial condition.

1. **PLAINTIFF'S EVIDENCE MUST RELATE TO COOK'S CONDUCT AND THE SPECIFIC CLAIM THAT PLAINTIFF TRIED TO THE JURY—AN ALLEGED DESIGN DEFECT IN THE CELECT FILTER**

The evidence admissible on Plaintiff's punitive damage claim must relate to conduct relevant to the single substantive claim in this case: design defect. Plaintiff argues against any such limit, effectively seeking to use evidence unrelated to design defect (*e.g.*, evidence from Plaintiff's dismissed failure-to-warn claim) to support a standalone claim for punitive damages.

(*See* Plaintiff's Trial Br. p. 28 ("[E]ven though the Court found that Cook's failures to warn did not cause Mrs. Brand's injuries, Georgia law makes those failures by Cook to warn . . . relevant to its liability for punitive damages (and thus admissible).")[1]  But both state law and the United States Constitution bar Plaintiff from building a case for punitive damages based on conduct this Court has determined does not state a claim for liability, let alone aggravated liability.

      A.      **Due Process Requires that an Award of Punitive Damages Be Based on Conduct Related to the Underlying Award of Compensatory Damages**

The Due Process clause of the United States Constitution limits the range of evidence that may "serve as the basis for punitive damages." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003); *see also Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007).[2] Courts must be careful to weed out evidence of a "defendant's dissimilar acts, independent from the acts upon which liability was premised." *Id.*  A defendant's conduct may be considered only where the plaintiff has established a "nexus" between the wrongful conduct and "the specific harm suffered by the plaintiff." *Campbell*, 538 U.S. at 422 (emphasis added).  To satisfy due process, punitive damages must be based on "conduct that harmed the plaintiff," not unrelated conduct intended only to paint the defendant as "an unsavory individual or business." *Id*. at 423.  Accordingly, evidence that has no nexus to defective design—such as failure-to-warn evidence—is "independent from the acts upon which liability was premised" and "may not serve

---

[1] Plaintiff has elsewhere described the type of evidence she intends to introduce. *See* Dkt. 9146 at 13 ("[W]hen Dr. Rheudasil chose the Celect for Ms. Brand, he was not aware the Tulip was a safer filter, because the risk of perforation and fracture was significantly higher for the Celect than the Tulip."); *id*. at 16 ("Those are risks any doctors would want to know when making a risk/benefit analysis prior to deciding which filter to implant and risks that Dr. Rheudasil said would cause him not to use the Celect."); Dkt. 9726 at 3 (arguing that "there is a fact issue about whether placing this information in the Celect IFU would have caused Dr. Rheudasil to choose the Tulip filter" instead of the Celect).

[2] While *Campbell* and *Philip Morris* address jury instructions, both also speak quite specifically to evidentiary issues.  *See, e.g., Philip Morris*, 549 U.S. at 357 (noting "[i]n particular, . . . that where the risk of that misunderstanding is a significant one—because, for instance, of the sort of evidence that was introduced at trial or the kinds of argument the plaintiff made to the jury—a court, upon request, must protect against that risk"); *Campbell*, 538 U.S. at 422 (holding that the "Utah courts erred in relying upon [certain] evidence").  Due process protects a defendant throughout the entire litigation process, against prejudicial evidentiary admissions just the same as against prejudicial jury instructions.

-3-

as the basis for punitive damages." *Id.* at 422. Federal due process, therefore, limits punitive damages evidence to conduct that has a nexus to the design of the Celect filter.[3]

### B. State Law Also Requires that an Award of Punitive Damages Be Based on Conduct Related to the Underlying Award of Compensatory Damages

In Indiana,[4] a claim for punitive damages cannot stand alone. *Crabtree ex rel. Kemp v. Estate of Crabtree*, 837 N.E.2d 135, 138 (Ind. 2005) ("There is no freestanding claim for punitive damages apart from the underlying cause of action."). Punitive damages "piggy backs" on an underlying tort claim and only arises when liability on that claim is found. 1 John J. Kircher & Christine M. Wiseman, Punitive Damages: Law and Practice § 6.16 (2nd ed. 2018). Although punitive damages provide a remedy for aggravated wrongful conduct that goes <u>beyond</u> the conduct justifying an award of compensatory damages, that aggravated conduct must still relate to the underlying compensation award. Put differently, punitive damages must be based on conduct that proximately caused Plaintiff's loss.

Caselaw confirms that conduct justifying punitive damages must be a proximate cause of the plaintiff's loss. *See Purnick v. C.R. England, Inc.*, 269 F.3d 851, 853 (7th Cir. 2001) (affirming trial court's standard of requiring "clear and convincing evidence of proximate cause"

---

[3] Cook also notes that the Federal Rules of Evidence reinforce the fairness of this understanding. Here, Rule 401 limits punitive damages evidence to design-related conduct. Evidence is relevant if it makes a fact that is of consequence in determining the action more or less probable. Fed. R. Evid. 401. Non-design evidence, such as warnings evidence, is not a part of this action and, thus, is no longer "of consequence." Because punitive damages is a remedy that builds on an underlying claim—here, Plaintiff's design defect claim—relevance is inextricably tied to that underlying claim. Cook did not have to defend itself against a failure-to-warn claim (or any other non-design claim) during the liability and compensatory damages phase, so it should not have to do so during the punitive damages phase.

[4] The Court correctly determined that Indiana law governs the punitive damages question. (*See* Trial Tr. at 4388, attached as Exhibit 1.) That said, Georgia law also limits punitive-damages evidence to conduct related to the underlying award of compensatory damages. Georgia does not recognize standalone punitive-damages claims, *Thysis, Inc. v. Chemron Corp.*, 2011 WL 13162410, at *5 (N.D. Ga. Aug. 25, 2011), and evidence supporting an award of punitive damages must be based only on the conduct giving rise to the underlying claim permitting a plaintiff to seek punitive damages in the first place. *See Wolff v. Middlebrooks*, 568 S.E.2d 88, 91 (Ga. Ct. App. 2002) (reversing award of punitive damages because it was unclear whether "the jury based its award of punitive damages on the underlying claim for which there could be no [punitive damages] liability").

to prove punitive damages).[5]  This requirement is well-established in the punitive damages context.  *Saucedo ex rel. Sinaloa v. Salvation Army*, 24 P.3d 1274, 1279 (Ariz. Ct. App. 2001) (collecting cases in support of the proposition that "the conduct giving rise to punitive damages must be a proximate cause of the harm inflicted").  Cook's conduct unrelated to the design of the Celect did not cause Plaintiff's loss, and any such evidence must be excluded.

This conclusion also makes sense given the nature and purpose of punitive damages.  Punitive damages punish aggravated conduct for which there is existing liability.  "Successful pursuit of a cause of action for compensatory damages is a prerequisite to an award of punitive damages."  *Crabtree*, 837 N.E.2d at 137–38.  The importance of a prerequisite cause of action cannot be understated.  Often, parties plead punitive damages but find such damages are not recoverable as a matter of law because their suit lacked a proper prerequisite cause of action.  *See, e.g., Miller Brewing Co. v. Best Beers of Bloomington, Inc.*, 608 N.E.2d 975, 981 (Ind. 1993) (affirming dismissal of punitive damages claim because "punitive damages are not allowed in a breach of contract").

**2.   EVIDENCE OF COOK'S CONDUCT POST-DATING THE DESIGN OF THE CELECT—APRIL 20, 2007—OR (AT THE VERY LATEST) THE DATE PLAINTIFF'S CELECT FILTER WAS MANUFACTURED—NOVEMBER 28, 2008—IS INADMISSIBLE**

Because Cook's liability for punitive damages must be premised solely on conduct related to the way in which Cook designed the Celect filter, evidence relevant to punitive damages is necessarily limited to the period during which the product was designed, which certainly cannot post-date the manufacture of the product.  Here, all testimony in the trial

---

[5] Another court put it well: "Can punitive damages be awarded for conduct that, though related to the transaction underlying a plaintiff's recovery for actual damages, did not cause or contribute to the plaintiff's loss.  Logic and analogous precedent persuade us that the answer must be 'no.'"  *Kehl v. Econ. Fire & Cas. Co.*, 433 N.W.2d 279, 280 (Wis. Ct. App. 1988).

-5-

confirms that the product's design was completed by April 20, 2007 (the date the Celect filter was cleared for marketing in the U.S. by the FDA). Plaintiff's Trial Brief makes clear that she intends to offer post-design and post-manufacture evidence relating to Cook's alleged failure to warn. *See* Dkt. 9765 at 28. The Court should reject such evidence.

The Supreme Court has emphasized a court's role in ensuring juries "ask the right question, not the wrong one." *Philip Morris*, 549 U.S. at 355. The right question in a design defect action does not involve "the use of the product," but instead involves "balanc[ing] the risks inherent in a product design against the utility of the product so designed." *Jones v. NordicTrack, Inc.*, 550 S.E.2d 101, 102 (Ga. 2001) (emphasis added); *Banks v. ICI Americas, Inc.*, 450 S.E.2d 671, 674–75 (Ga. 1994). In turn, the "right question" for the jury here is whether, in the design phase, Cook consciously disregarded risks of the Celect filter.

This conclusion is apparent in *Chrysler Grp., LLC v. Walden*, 792 S.E.2d 754 (Ga. Ct. App. 2016).[6] In upholding an award based on a design defect claim, the *Walden* court noted the existence of:

> evidence that before this Grand Cherokee was manufactured and sold, Chrysler knew that locating fuel tanks midship provided safety benefits, that it was possible to locate the fuel tank in the 1999 Grand Cherokee midship, and, most significantly, that Chrysler knew that gas tanks in 1999 Grand Cherokees were vulnerable and would be crushed in rear impacts.

*Id.* at 761 (emphasis added). Based on that evidence, the court held that "a jury might legitimately conclude that from facts which Chrysler knew, it should have realized that there was a strong probability that harm may result, even though it hoped or even expected that its conduct may prove harmless." *Id.* (cleaned up) (quotation and citation omitted). Thus, Plaintiff may

---

[6] *Walden* did not involve punitive damages because it was a wrongful death case, but the plaintiff's claims required the defendant to act with "a reckless or wanton disregard for human life," a very similar showing as that required for punitive damages. 792 S.E.2d at 760.

support her claim for punitive damages <u>only</u> with evidence addressing Cook's conduct and knowledge <u>before</u> the design of the product was completed.

**3.    EVIDENCE TENDING TO PUNISH COOK FOR INJURIES TO NONPARTIES IS INADMISSIBLE OR, AT MOST, SEVERELY CONSTRAINED BY TIME AND SIMILARITY**

The Supreme Court has made clear that due process does not permit a jury to "punish a defendant for injury that it inflicts upon nonparties." *Philip Morris*, 549 U.S. at 353. Here, that includes other plaintiffs with Celect filter lawsuits. And although the jury may consider harm to nonparties in determining reprehensibility, even that consideration is severely constrained.

First, cases across jurisdictions recognize that evidence of other injuries ceases to be relevant to the determination of punitive damages after the defendant's tortious conduct with respect to the plaintiff in the case at issue—here, that means only evidence of injuries suffered before the date of design or (at most) manufacture is admissible. *Campbell*, 538 U.S. at 423 (holding that in determining reprehensibility, "courts must ensure the conduct in question replicates the *prior* transgressions" (emphasis added)). Indiana courts have addressed this head-on and do not permit the admission of evidence related to subsequent incidents.[7] *See Wohlwend v. Edwards*, 796 N.E.2d 781, 787 (Ind. Ct. App. 2003) (explaining that allowing jury to punish a defendant for "subsequent conduct would detach the propriety and/or amount of punitive damages from the compensatory damages due the plaintiffs," which "would be violative of the

---

[7] Georgia products liability cases likewise limit evidence to *past* incidents. *See, e.g,, Ray v. Ford Motor Co.*, 514 S.E.2d 227, 230 (Ga. Ct. App. 1999) (affirming trial court ruling that plaintiff had not established substantial similarity as to "two separate groups of prior incidents drawn from the Ford database" that plaintiff sought to introduce); *Ford Motor Co. v. Stubblefield*, 319 S.E.2d 470, 482 (Ga. Ct. App. 1984) (noting "that the same evidence which authorized the verdict for punitive damages—that Ford had actual knowledge before the sale of the automobile of a condition presenting a danger to users—also authorized the jury to find that Ford acted in bad faith in placing such a vehicle in the channels of commerce"); *Barger v. Garden Way, Inc.*, 499 S.E.2d 737, 742 (Ga. Ct. App. 1998) (remanding to trial court to consider "new evidence indicating defendant knew of prior instances whereby a user's hand was pulled into the discharge chute").

spirit of Indiana common and statutory law and the Due Process Clause of the Fourteenth Amendment"). Other courts across the country agree.[8]

Importantly, this law precludes Plaintiff from mentioning lawsuits or complaints of others that occurred after the date Plaintiff's Celect filter was designed (April 2007) or (at latest) manufactured (November 2008). Of course, there would have been no complaints or lawsuits before the Celect finished its design, and the first Celect lawsuit was not filed until November 1, 2010. (*Snyder v. Cook Medical Inc., et al.*, 1:10-cv-01385.) Such evidence is not relevant to show whether Cook acted with conscious disregard in designing the Celect filter. Moreover, this limits Plaintiff's counsel from making references to unrelated cases, something he improperly did repeatedly in closing arguments. (*See, e.g.,* Trial Tr. at 4360, 4364, attached at Exhibit 1.) This is not permissible in the punitive damages phase either, and the Court should instruct Plaintiff's counsel accordingly.

Furthermore, Plaintiff must demonstrate that the earlier injuries resulting from that prior conduct are <u>substantially similar</u> to her injury. *See Westray v. Wright*, 834 N.E.2d 173, 181 (Ind. Ct. App. 2005) (requiring evidence that prior incidents used to justify a punitive damages award "involved <u>substantially similar</u> conduct or circumstances to this case") (emphasis added). This means that Plaintiff must provide evidence detailing "how" the earlier injuries occurred. *See*

---

[8] *See also Burke v. Deere & Co.*, 6 F.3d 497, 507 (8th Cir. 1993) ("Because any 'bad conduct' by [the defendant] for which punitive damages might be assessed must have occurred at or before the [date the defective product was retrofit], the evidence of post-retrofit conduct was wholly irrelevant to the punitive damages issue."); *Horrillo v. Cook Inc.*, 2014 WL 8186705, at *3–4 (S.D. Fla. June 6, 2014) (holding, in a case involving a failure-to-warn claim, that evidence of four strokes that occurred after plaintiff's procedure and "any labeling changes that may have been made to the stent following the decedent's May 31, 2007 procedure are inadmissible" as irrelevant); *Klawer v. SDI Residual Assets LLC*, 2012 WL 13001298, at *5 (C.D. Cal. Mar. 26, 2012) (granting summary judgment against plaintiff, in a case involving a failure-to-warn claim, on his punitive damages claim because plaintiff "buil[t] his case for punitive damages mainly on actions SMI took after Plaintiff's surgery" and because "SMI's conduct after Plaintiff's surgery should not be considered to determine whether Plaintiff is entitled to have punitive damages"); *Thomas v. American Cystoscope Makers, Inc.*, 414 F. Supp. 255 (E.D. Pa. 1976) (excluding evidence of defendant's conduct after plaintiff's cornea suffered an electrical burn by a medical instrument in the midst of a surgery).

*Juarez v. Menard, Inc.*, 366 F.3d 479, 483 (7th Cir. 2004).[9]  Throughout trial, Plaintiff has referred to a chart listing patient deaths associated with Cook's filters.  (*See* PX-1913).  Not only does the severity of those incidents make them dissimilar from Plaintiff's case but, as noted in the chart, those complaints were all received long after the Celect filter completed design in April 2007, and Plaintiff has presented no evidence that any incident occurred before that date.  (*See id.* (noting that the complaints were all received between October 1, 2008, and June 10, 2016)).  Even if the date of manufacture were applied—November 28, 2008—Plaintiff has offered no proof that these incidents occurred before that date, and her use of the chart should be circumscribed in the punitive phase as a result.

The Supreme Court has instructed lower courts to be proactive in protecting defendants against the risk of a jury misunderstanding the proper scope of punitive damages, noting specifically the concern of improper "evidence [being] introduced at trial."  *Philip Morris*, 549 U.S. at 357.  The limitations discussed above are necessary protections for any defendant facing a claim for punitive damages.  Each of these limitations protects Cook from "arbitrary punishments, . . . that reflect not an application of law but a decisionmaker's caprice."  *Id.* at 352 (internal quotations and citations omitted).

---

[9] Under Georgia law, the test is more onerous.  A plaintiff must demonstrate that prior incidents resulting from a defendant's prior conduct are substantially similar to her injury.  *In re Mentor Corp. Obtape Transobturator Sling Prod. Liab. Litig.*, 2015 WL 7863032, at *1 (M.D. Ga. Dec. 3, 2015) (requiring plaintiff, who sought punitive damages, to "file a brief on substantially similar incidents explaining what injuries the Plaintiff has and why the other incidents they seek to introduce are substantially similar to the Plaintiff's injuries").  "The showing of substantial similarity must include a showing of similarity as to causation."  *Cooper Tire & Rubber Co. v. Crosby*, 543 S.E.2d 21, 23–24 (Ga. 2001) (explaining that the substantial similarity applies to punitive damages).  Without a showing of substantial similarity, "the evidence is irrelevant as a matter of law."  *Stovall v. DaimlerChrysler Motors Corp.*, 608 S.E.2d 245, 247 (Ga. Ct. App. 2004).

4.  **THE PARTIES STIPULATED TO THE NET WORTH OF THE NAMED DEFENDANTS, AND THE FINANCIAL CONDITION OF COOK GROUP INC. SHOULD NOT BE PERMITTED**

At the January 9, 2018, pretrial conference the parties confirmed that "we have an agreement as to the three named Defendants so that neither side needs to be thinking about or worrying about what evidence would be put on in a punitive [damages] phase that involves the financial condition of the three named defendants." (Jan. 9, 2019, Hearing Tr. at 76-78 (specifically, 78:18-22) attached as Exhibit 2; *see also* Feb. 1, 2018, Trial Tr. at 4387, attached as Exhibit 1.) Accordingly, any evidence beyond what is encompassed by the stipulation regarding the financial condition of the three named defendants is unnecessary. Moreover, for the reasons outlined in Cook's contemporaneously filed brief regarding Cook Group Inc.'s financial condition, evidence related to the net worth of Cook Group Inc. or any other affiliates should be excluded as well.

## CONCLUSION

"Punitive damages are a powerful weapon" that "have a devastating potential for harm." *Campbell*, 538 U.S. at 417 (citation and quotation omitted). Consequently, the Constitution "obligates" courts to provide defendants with procedural protections. *Philip Morris*, 549 U.S. at 357. Cook therefore respectfully requests the Court to exclude evidence that (1) is unrelated to Cook's conduct during the design phase of the Celect; (2) involves Cook's conduct after the Celect filter's design was completed on April 20, 2007, or at a maximum, the date of manufacture on November 28, 2008; (3) invites the jury to punish Cook for harm suffered by nonparties; or (4) that relates to the financial condition of the three named defendants, as well as Cook Group Inc. and any other affiliate.

                                      Respectfully submitted,

Dated: February 4, 2019                /s/ *Andrea Roberts Pierson*
                                      Andrea Roberts Pierson (# 18435-49)
                                      Jessica Benson Cox (# 26259-49)
                                      FAEGRE BAKER DANIELS LLP
                                      300 North Meridian Street, Suite 2700
                                      Indianapolis, Indiana 46204
                                      Telephone:  (317) 237-0300
                                      Facsimile:  (317) 237-1000
                                      Email:  andrea.pierson@faegrebd.com
                                      Email:  jessica.cox@faegrebd.com

                                      Charles Webber (MN # 215247)
                                      Bruce Jones (MN # 179553)
                                      FAEGRE BAKER DANIELS LLP
                                      2200 Wells Fargo Center
                                      90 South Seventh Street
                                      Minneapolis, MN 55402
                                      Telephone: (612) 766-8719
                                      Facsimile: (612) 766-1600
                                      Email:  chuck.webber@faegrebd.com
                                      Email:  bruce.jones@faegrebd.com

                                      *Counsel for the Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2019, a copy of the foregoing **THE COOK DEFENDANTS' BENCH BRIEF ON PUNITIVE DAMAGES EVIDENCE** was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Counsel for Defendants will serve any non-CM/ECF registered parties.

/s/ Andrea Roberts Pierson

US.121463036.13