# Exhibit 1

```
 1                   UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF INDIANA
 2                       INDIANAPOLIS DIVISION

 3

 4  IN RE: COOK MEDICAL, INC.,      )
    IVC FILTERS MARKETING, SALES    ) Cause No.
 5  PRACTICES AND LIABILITY,        ) 1:14-ML-2570-RLY-TAB
    LITIGATION                      ) Indianapolis, Indiana
 6                                  ) February 1, 2019
                                    ) 8:25 a.m.
 7                                  )

 8

 9

10                     Before the Honorable
                        RICHARD L. YOUNG
11
                   OFFICIAL REPORTER'S TRANSCRIPT OF
12                     JURY TRIAL - VOLUME 14

13

14  For Plaintiffs:
                              Ben C. Martin, Esq.
15                            Law Offices of Ben C. Martin
                              3710 Rawlins Street, Suite 1230
16                            Dallas, TX   75219

17

18                            Joseph N. Williams, Esq.
                              Riley Williams and Piatt, LLC
19                            301 Massachusetts Ave., Ste 300
                              Indianapolis, IN   46204

20

21                            Denman H. Heard, Esq.
                              Heard Law Firm, PLLC
22                            2925 Richmond Ave., Suite 15
                              Houston, TX   77098

23

24

25
```

```
 1
 2                              Laura Baughman, Esq.
                                Baron & Budd
 3                              3102 Oak Lawn Avenue
                                Dallas, TX  75219
 4
 5                              Michael W. Heaviside, Esq.
                                Heaviside Reed Zaic
 6                              910 17th Street NW, Suite 800
                                Washington, D.C.  20006
 7
 8
 9                              Misty A. Farris, Esq.
                                Fears Nachawati
10                              5473 Blair Road
                                Dallas, TX  75231
11
12
13
    For Defendants:             Andrea Roberts Pierson, Esq.
14                              Jessica Benson Cox, Esq.
                                Charles F. Webber, Esq.
15                              Kip McDonald, Esq.
                                Bruce G. Jones, Esq.
16                              Faegre Baker Daniels, LLP
                                300 N. Meridian St., Suite 2700
17                              Indianapolis, IN  46204
18
19
20
21  Court Reporter:             Margaret A. Techert
                                United States District Court
22                              101 NW Martin Luther King Blvd.
                                Evansville, Indiana  47708
23
24          PROCEEDINGS TAKEN BY MACHINE SHORTHAND
        TRANSCRIPT CREATED BY COMPUTER-AIDED TRANSCRIPTION
25
```

1  testimony.  Each of you will remember that that was not
2  Dr. Krumholz's testimony; that was a slide created by the
3  lawyer and attributed to Dr. Krumholz.
4         The other interesting thing about what we just heard
5  is the second-to-last slide, science slide, that was just
6  shown to you was a slide from the British Registry that you've
7  heard about from the defendants this entire time.
8         Why is that important?  Y'all heard all about the
9  facts of the British Registry and what it is and all that, but
10 it just struck me, when they brought Dr. Uberoi, why are
11 lawyers helping their expert witnesses rewrite it -- rewrite
12 scientific journals?  It's absolutely wrong.
13        It's absolutely wrong.  I think he's left now.
14 Dr. Fryzek has been here this entire closing argument.  Why?
15 Why has he been here?  He's the same witness that this law
16 firm has hired to testify that metal-on-metal medical hip
17 implants just work fine and don't hurt anybody.  He's the same
18 expert that the lawyers hired in the welding rod litigation to
19 say that welding rod fumes don't cause Parkinson's, even
20 though we know that they do.
21        He's the same expert that was hired in that
22 litigation who the federal judge in Ohio had to kick his
23 report out of court because it was unreliable and the lawyers
24 had participated in writing it.  Lawyers writing science
25 again.  The same man.  He's been here the whole closing

1  witnesses was critical of this yesterday.  But these numbers,
2  those aren't our numbers, those aren't the lawyers' numbers,
3  those are Ms. Iversen's numbers.  Okay?  And she agreed that
4  this chart was correct based upon the numbers that they found.
5  And those are just reports, right?  And this is really, really
6  important, right?
7            Because this is what -- can I borrow this?
8            MR. WEBBER:  Sure.
9            MR. HEARD:  Thanks.
10           This is what medical device companies do.  What they
11 do is they keep complaint rates.  And when they come to court
12 because their product is defective, they can say, "Wait, we
13 have a complaint rate.  These are people who have made a
14 complaint that has made it all the way to our company."
15           In every single case, every single case, no matter
16 how bad the product is, the complaint rate is going to be low.
17 And the reason is because they take products that have what we
18 call latency, a time between the implant and when somebody in
19 the future is going to discover that there's a problem with
20 it, whether it's a defective hip, whether it's a defective
21 knee, or whether it's an IVC filter or a mesh product.
22           Whatever it is, they know that there's a period of
23 time called a latency that the product isn't going to be
24 discovered to have failed.  Because you never discover it
25 until you notice the health problems and the symptoms.

1         THE COURT: Show jury's polled. It is indeed a
2  unanimous verdict.
3         Members of the jury, you kept me up late tonight.
4  So that is your verdict. And I want to thank you very much
5  for your service. I'm going to have you go back into the jury
6  room just for a few minutes while I conduct a few matters out
7  here, and then I'll bring you back out here shortly. But
8  we'll get you home shortly. Thank you very much.
9         (Jury exited the courtroom at this time.)
10        THE COURT: Please be seated.
11        Okay. Verdict has been returned. There is a motion
12 for summary judgment that's been filed on the punitive damages
13 claim I've had under advisement. I assume that the parties
14 want to address that at some point in time as well. But we
15 need to figure out how we're going to proceed on here today.
16 I don't want to argue that tonight, quite frankly. I don't
17 think you all want to do that either.
18        My thought would be to bring them back maybe on
19 Monday afternoon to begin proceedings. We could have
20 argument. And then, assuming that that motion would be
21 denied, we'd proceed on with punitive damages.
22        Mr. Martin or Mr. Heard, how do you wish to proceed
23 on that? Is most of your evidence in already on that issue or
24 how -- how would you plan to proceed?
25        MR. MARTIN: Yes, Your Honor. We believe -- we've

1  looked at this, and I think we could put on, certainly, our
2  evidence within -- within an hour or less, and we can marshal
3  that all up this weekend and have a good efficient approach to
4  that on Monday or whenever the Court so chooses.
5           THE COURT:  Ms. Pierson.
6           MS. PIERSON:  Your Honor, we'd like to argue the
7  motion on summary judgment on punitive damages first, if we
8  could.  And if it's possible to get a decision from Your Honor
9  first, that would be our preference.
10          We'll do this whenever Your Honor thinks it's
11 appropriate, obviously, but if we had the ability to present
12 evidence on Tuesday as opposed to Monday, that would
13 certainly -- in light of the fact that it's midnight on Friday
14 night, we've got several people from out of town here for the
15 weekend.  We'd prefer to do it on Tuesday if that's a
16 possibility.
17          THE COURT:  Would anybody have any concern if I went
18 back and talked to the jurors just for a moment to determine
19 what their preference would be?
20          MR. HEARD:  None at all.
21          MR. WILLIAMS:  No.
22          THE COURT:  They're not going to be happy.  Reminds
23 me of my old state court days when we used to have them come
24 back on a habitual offender charge.  They figure that they're
25 done.  Well, wait a second; have to come back on this.

```
 1              So let me talk to them and see what their --
 2    certainly, I'm not going to talk to them about any of the
 3    merits, just procedure as to how we're going to proceed and
 4    let them know that we're going to do that.  Okay.
 5              (A recess was taken at this time.)
 6              THE COURT:  Please be seated.  They've agreed that
 7    Tuesday morning would be a good time for them to come back.
 8    That will give them an opportunity for Monday to check in with
 9    employers, and we need to provide them some additional
10    information that they can take back to their employers so they
11    know.  We'll come back then on Tuesday at 8:00 and proceed on
12    with the next phase of the trial.
13              Anybody have anything else that we need to talk
14    about?
15              MS. PIERSON:  So, Judge, can we argue the motion for
16    summary judgment on Monday then, or you want to do that first
17    thing Tuesday morning?  Or what's your preference?
18              THE COURT:  Let's do that first thing Tuesday
19    morning.  Why don't we do that.
20              MS. PIERSON:  Can we do our directed verdict on
21    Tuesday morning too?
22              THE COURT:  Right.  Yeah, we can do all that on
23    Tuesday morning.  That would be good.
24              MS. PIERSON:  You may not recall it, Judge, but when
25    we were together for the motion in limine hearing, we put on
```

1  the record that the parties had reached an agreement to a
2  stipulation as to net worth for the three named defendants in
3  lieu of -- the plaintiffs had disclosed a couple of experts on
4  that topic.  We filed a *Daubert* motion.
5          So the way we agreed to resolve that was by a
6  stipulation.  We've agreed to the form of it.  We just haven't
7  shared the numbers for that with the plaintiffs yet, but we'll
8  do that over the weekend, between now and Tuesday.
9          THE COURT:  If we put all that on paper, that would
10 be great.
11         MS. PIERSON:  That sounds good.  It would be helpful
12 to know what the Court sees as the scope of the evidence, if
13 possible, between now and then.  And we prepared a bench brief
14 on that point -- or a motion that we'll file with the Court
15 over the weekend so that we can talk about that and get an
16 idea of what each side might expect to present in terms of
17 scope.
18         THE COURT:  All right.  I don't know what other --
19 what other evidence would be out there other than financial.
20         MS. PIERSON:  Hard to imagine.
21         THE COURT:  Hard to imagine, yeah.  But, certainly,
22 I'm open to whatever -- whatever suggestions you might have
23 that are -- that are out there.
24         Mr. Martin.
25         MR. MARTIN:  Yes, sir.  Again, we've discussed there

1  may be a little bit of evidence, as indicated.  Short,
2  certainly.  Thank you.
3          THE COURT:  All right.  And then, of course, any
4  proposed instructions would be helpful as well on that.  If
5  you can get those to me Monday sometime, that would be good.
6          MR. MARTIN:  Certainly.
7          THE COURT:  That would be good.
8          MR. WILLIAMS:  Your Honor, forgive me because I was
9  gone for most of November, but did we ever decide what
10  substantive law would apply to the punitive phase?
11          THE COURT:  We're using Indiana.
12          MR. WILLIAMS:  Okay.
13          THE COURT:  Anything else?
14          MS. PIERSON:  No, sir.
15          MR. MARTIN:  Nothing from the plaintiff.  Thank you,
16  sir.
17          THE COURT:  You all look tired.  What's wrong?
18          MR. MARTIN:  You want a list?
19          MR. HEARD:  Judge, just to make sure for the
20  record -- and I apologize because, as you know, this is my
21  first time in Indiana Federal Court -- but do we need to go
22  ahead and make a motion to -- for the Court to receive and
23  accept the verdict into the record of the Court?
24          THE COURT:  No.  It's already made the record.
25          MR. HEARD:  Thank you.

```
 1              THE COURT:  All right.  Anything -- anything else we
 2  need to talk about?
 3              MR. MARTIN:  Nothing from us, Your Honor.  Thank
 4  you.
 5              MS. PIERSON:  Nothing else, Your Honor.  Thank you.
 6              THE COURT:  Very good.
 7              If you need anything, touch base with Amy.  Tina, I
 8  think, will be back in action when we come back here as well.
 9  So we'll provide all that to you.
10              Again, thank you very much.  You're all doing the
11  work that you need to be doing representing your clients, and
12  it's gratifying for me to watch you do it.  So we'll see you
13  next Tuesday.
14              THE CLERK:  All rise.
15              THE COURT:  If you need a copy of the verdict form,
16  we can provide that to you.
17              MR. HEARD:  Thank you, Judge.
18              THE COURT:  I got to bring the jurors back in and
19  thank them.
20              MS. PIERSON:  Judge, at some point, once we get
21  beyond the next phase, we'd like to poll the jurors too.
22              THE COURT:  Oh, yeah.  Absolutely.  Well, they've
23  already have been polled.  You mean talk to them?
24              MS. PIERSON:  Yeah, talk to them.  That's what I
25  mean.
```

```
 1                    THE COURT:  We'll do it just like we did last time.
 2                    MS. PIERSON:  Thank you, Judge.
 3                    (Jury entered the courtroom at this time.)
 4                    THE COURT:  Please be seated.  Okay.  As I indicated
 5      to you, we have a next phase of the trial, and we'll begin
 6      back here on Tuesday.  We have some matters early Tuesday
 7      morning that we need to take care of.  So if you could be here
 8      at 9:00 o'clock on Tuesday.  Give you a little extra time.
 9      9:00 on Tuesday morning, and we'll continue on.  ==And I believe
10      we'll conclude all our proceedings, then, on Tuesday in this
11      matter==.
12                    Again, thank you so much for your service on behalf
13      of the Court and the parties.  You folks have done a
14      wonderful -- a wonderful performance in serving as jurors.
15      Very dedicated group, considering the weather that we've had,
16      the length of the trial.  You're going to be -- you're going
17      to be one of my examples when I start talking to people over
18      the next several years about juries.  I'm going to say, "You
19      know, once back in 2019, I had a three-week trial in the
20      middle of the winter in Indianapolis, and these people showed
21      up every day."  And so we can hopefully use that as a good
22      example for people in the future.
23                    Travel safe.  We'll see you on Tuesday.  Have a good
24      weekend.  I wish the Colts were in the Super Bowl -- actually,
25      I wish the Packers were in the Super Bowl, but Colts would be
```