**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

---

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

---

This Document Relates to:

   *Brand v. Cook Medical, Inc. et al.,*
   Case No. 1:14-cv-06018-RLY-TAB

---

**COOK DEFENDANTS' BENCH BRIEF REGARDING EVIDENCE OF**
**COOK GROUP, INC.'S FINANCIAL CONDITION**

Both this Court and the Magistrate Judge have clearly ruled that evidence of the financial condition of Cook Group, Inc. is irrelevant to the punitive-damages issue in this case and thus inadmissible. (Dkt. 4437 at 5; Dkt. 4108 at 3.) Despite that, Plaintiff's counsel have continued to demand financial information for non-parties in this case—and only yesterday (Sunday, February 3) dramatically increased the scope of their demand far beyond Cook Group, Inc. by requesting net worth information for the following entities:

   Cook Group Incorporated,
   Cook Group Europe ApS, CI, CGI,
   CMI Real Estate Holdings, LLC,
   Cook Canton, LLC,
   Cook Shared Services Incorporated,
   CGI Real Estate Holdings, LLC,
   Cook Nederland BV, APS,
   Cook Europe Finance BV,
   Cook Denmark Holdings ApS,
   Cook Denmark International ApS,
   Cook Sweden Finance AB,
   Cook Sweden Holding AB,
   Cook Nederland Holding Cooperatief U.A., and

US.121499176.08

        Cook Medical Technologies, Medical Engineering and Development Institute Incorporated

All of this is simply another effort (like the repeated attacks at trial on the Court's failure-to-warn ruling) to attack one of this Court's rulings that has been settled for a long time now. The Court should firmly reject this gambit and stand by its earlier ruling under Fed. R. Evid. 401, 402, and 403 that the only financial information that is relevant in the punitive-damages phase is financial information pertaining to the three named defendants in this case, and no others.

**A.    As This Court Has Already Ruled, Evidence Regarding The Financial Condition Of Cook Group, Inc. (Or Any Other Cook Entity) Is Irrelevant To Plaintiff's Punitive-Damages Demand From The Cook Defendants**

      Based on representations by her counsel, Plaintiff wishes to offer evidence in the punitive-damages phase of the trial concerning the net worth of multiple non-party Cook entities, along with the net worth of the three actual Cook Defendants. Plaintiff intends to use such evidence to suggest to the jury that the aggregate worth of multiple non-defendant Cook entities is the relevant financial condition to consider when assessing punitive damages. As it has already ruled in this case, the Court should bar such evidence as irrelevant and inadmissible because none of these entities are defendants in this lawsuit. Although Cook Group, Inc. is the Cook Defendants' parent company, both the previous orders of this Court and controlling law hold that evidence related to the parent company's financial condition is irrelevant to a claim for punitive damages against a subsidiary.

      The Court has already <u>twice</u> rejected arguments that the financial condition of Cook Group, Inc. is somehow relevant to plaintiffs' claims in the MDL. Plaintiffs argued that language in CMO 3 that committed Cook Group, Inc. to satisfy any judgment against the three named Cook Defendants entitled plaintiffs to seek discovery of financial information from Cook

Group, Inc.[1] Magistrate Judge Baker disagreed, holding that "[t]hese CMO provisions do not mandate disclosure of Cook Group, Inc.'s financial information" and commenting: "To require Cook Group, Inc., a privately held company, to fling open its books for Plaintiffs' inspection simply goes too far." *See* Order On Discovery Of Cook Group, Inc.'s Financial Information, Dkt. 4108, at 3.

Plaintiff challenged Magistrate Judge Baker's decision in this Court, arguing that her expert witness needed information regarding the financial condition of Cook Group, Inc. to calculate the Cook Defendants' net worth for punitive-damage purposes. *See* Dkt. 4230. The Court rejected Plaintiff's arguments and upheld Magistrate Judge Baker's decision. *See* Order On Plaintiffs' Objections And Appeal From Magistrate Tim A. Baker's Order Sustaining Defendants' Objections to Production Of Net Worth Documents, Dkt. 4437. The Court stated:

> Contrary to Plaintiffs' interpretation of paragraph (i), this provision does not make non-party Cook Group, Inc.'s financial information and net worth automatically discoverable for purposes of their punitive damages claims against the Cook Defendants. . . . It does not mean that Cook Group, Inc. "stands in the shoes of" the Cook Defendants for purposes of assessing the Cook Defendants' liability for either compensatory or punitive damages. Indeed, <u>paragraph (m) of CMO 3 confirms that Cook Group, Inc. is not a proper party, and that its financial information is not relevant or discoverable in this litigation</u>."

*Id.* at 5 (emphasis added). The Court should stand by that ruling.

As for authority for the Court's ruling, it turns out that one of the leading cases in the country on this issue is *Cap Gemini America, Inc. v. Judd*, 597 N.E.2d 1272 (Ind. Ct. App. 1992), and it squarely supports this Court's earlier analysis. In that case, the district court allowed the plaintiff to introduce evidence of the wealth of the parent corporation of the named defendant, and the jury awarded significant punitive damages. The Indiana Court of Appeals

---

[1] The specific language on which plaintiffs relied was: "The Additional Cook Entities shall stand in the shoes of the Cook Defendants solely for the purpose of making financial payment and/or satisfying any judgment, including, but not limited to, judgment for punitive damages." Dkt. 353 at 3.

3

reversed that decision, stating simply: "A verdict for punitive damages against a defendant based on the wealth of someone else is plain error." *Cap Gemini*, 597 N.E.2d at 1286. The court explained:

> Generally, <u>evidence of the wealth of the parent corporation is irrelevant and inadmissible in assessing punitive damages against a subsidiary corporation</u>. Financial documents regarding the wealth of a parent corporation are admissible if the subsidiary was merely an instrumentality of the parent corporation. Judd does not argue that CGA was a mere instrumentality of CGS, nor did the trial court so hold. Although CGA is a wholly owned subsidiary of CGS, <u>the corporate form will not be disregarded solely because a corporation is the parent of another</u>. Where no showing is made that the corporate veil should be pierced because the subsidiary was simply an alter ego or mere instrument of the parent, <u>the wealth of the parent corporation cannot be considered for any purpose</u>. * * * The trial court admitted the [evidence of the parent's financial status] although no argument was made for piercing the corporate veil. The error was not harmless where the court relied upon the [evidence] to determine punitive damages. * * * We agree with CGA that the trial court erred in admitting the report and that the punitive damages award must be reversed on this additional ground.

*Id.* at 1286 (emphasis added, citations omitted). A treatise on personal-injury damages has cited *Cap Gemini* as stating the general rule on this subject. 1 Stein on Personal Injury Damages Treatise § 4.58 n. 73 (3d ed., database accessed February 3, 2019) ("[I]ntroduction of the wealth of a parent corporation is improper in a suit against a subsidiary corporation where the two are operated as separate entities and the subsidiary is not a 'mere instrumentality' of the parent.") (emphasis added). And the Missouri Court of Appeals recently cited *Cap Gemini* along with other authorities as the general rule in *Berger v. Copeland Corporation, LLC*, 505 S.W.2d 337, 342 n.5 (Mo. Ct. App. 2016) (collecting authorities).

This reflects the fact that Indiana law takes seriously the longstanding rule that parent companies are separate and legally distinct entities from their subsidiaries, and that the liabilities of each must be considered separately. "[D]istinct corporations, even parent and subsidiary corporations, are presumed separate." *Greater Hammond Comm. Serv., Inc. v. Mutka*, 735 N.E.2d 780 (Ind. 2000) (citing *McQuade v. Draw Tite, Inc.*, 659 N.E.2d 1016, 1020 (Ind.1995)).

4

As in *Cap Gemini*, Plaintiff has made no allegation in this case, either in the Master Complaint or otherwise, that Cook Group, Inc. was or is the alter ego of any of the three named Cook Defendants, or that there is any basis for piercing the corporate veil. *See* Dkt. 688 (Brand Short Form complaint), 213 (Master Consolidated Complaint for Individual Claims). Because there is no ground on which the financial condition of Cook Group, Inc. or any other corporate entity is relevant to Plaintiff's request for punitive damages from the three Cook Defendants, the evidence is irrelevant, prejudicial, and inadmissible under Rule 401, 402, and 403.

This is fully consistent with the purpose of punitive damages, which is to punish the wrongdoer <u>defendant</u>. *See, e.g. Sims v. Pappas,* 73 N.E.3d 700, 706 (Ind. 2017); *Carroll v. Statesman Ins. Co.*, 509 N.E.2d 825, 827 (Ind. 1987). The Cook Defendants recognize that a defendant's financial condition may be relevant to a claim for punitive damages. But there are only three defendants in this case; neither Cook Group, Inc. nor any of the other entities listed on Plaintiff's recent demand are defendants in this action. Plaintiff has no basis for a punitive-damages award from any of these entities. *See, e.g., Yost v. Wabash College,* 3 N.E.3d 509, 514 (Ind. 2014) (a request for punitive damages is not a cause of action).

Disregarding both the Court's prior rulings on the issue and controlling law, Plaintiff now argues that because the Cook Defendants are subsidiaries of Cook Group, Inc., evidence regarding the financial condition of parent Cook Group, Inc. and <u>all other affiliates</u> of the three Cook Defendants is relevant to her punitive-damages demand against the three Cook Defendants. But Plaintiff offers nothing that would overcome the legal analysis set forth above or that would justify the Court's reconsideration of the Court's prior rulings on the issue. And although the Court has not yet had occasion to expressly consider Plaintiff's latest request for the net worth of 13 additional Cook affiliates, the rationale in the Court's earlier orders aptly applies to them as

well. Indeed, there is even <u>less</u> of a basis to hold sister corporations liable for one another's obligations than there is to hold a parent corporation liable for its subsidiaries' debts. The Court has already correctly ruled that Plaintiff cannot do the latter, so she certainly cannot do the former.

In a February 3, 2019, email to Cook's counsel, Plaintiff's counsel asserted that "there is authority to support the contention that insurance coverage for punitive damage awards is relevant and admissible evidence to rebut a defendant's assertion that a punitive damages award would impact its finances." Plaintiff's email failed to identify any of this supposed authority, and her attempted analogy of the CMO 3 indemnity agreement to insurance fails to support her argument for several basic reasons.

First, with a few narrow exceptions not applicable here, evidence of liability insurance is clearly inadmissible in tort cases. Fed. R. Evid. 411; *Duke's GMC, Inc. v. Erskine*, 447 N.E.2d 118, 1120 (Ind. App. 1983); *Osborne v. Wenger*, 572 N.E.2d 1343, 1345 (Ind. App. 1991). Thus, her analogy to insurance coverage actually <u>defeats</u> her argument; it does not support it.

Second, there is a key difference between an insurance policy that covers punitive damages and the indemnity provision in CMO 3 on which Plaintiff bases her argument. An insurance company that provides coverage for punitive damage promises to pay some or all of those punitive damages if they are assessed. Such a payment would relieve the defendant of the financial impact of those punitive damages and would thus reduce or eliminate the "punishment" on the defendant imposed by the damages, undercutting the purpose of punitive damages. But the situation under the provision of CMO 3 is much different. The provision does not provide that the other Cook entities will pay any punitive damage award and relieve the named Cook defendants from any obligation to do so; it provides that the other Cook entities are obligated to

pay a judgment for compensatory or punitive damages assessed against the Cook Defendants based on their own wealth <u>only if the named Cook Defendants are unable to do so</u>. The provision at issue reads:

> The Additional Cook Entities shall stand in the shoes of the Cook Defendants <u>solely</u> for the purpose of making a financial payment and/or satisfying any judgment, including, but not limited to, judgment for punitive damages, against any or all of the Cook Defendants <u>in the event that, for any reason whatsoever, the Cook Defendants are financially unable to satisfy any final judgment, including, but not limited to, judgment for punitive damages</u>, against them and/or to satisfy any financial obligation agreed to by them pursuant to the terms of any settlement agreement to which any or all of the Cook Defendants are a party.

Dkt. 353 at 3 (paragraph *i*) (emphasis added); *see also id.* at 4 (paragraph j) (discussing entry of judgment against other Cook entities in the event of "a failure on the part of the Cook Defendants to satisfy said judgment…for any reason within 60 days from the time the judgment becomes final"). Thus, unlike insurance for punitive damages, the CMO3 provision does not relieve the Cook Defendants from liability for punitive damages and could not undercut the punitive effect of such damages on the Cook Defendants. It makes the other Cook entities <u>guarantors</u> of the three Cook Defendants' liability, not <u>insurers</u> of that liability. And the Cook Defendants are aware of no authority that the financial wherewithal of a guarantor is relevant in a punitive-damages proceeding.

Finally, the purposes of an insurance policy covering punitive damages and the CMO 3 provision are entirely different. An insurance policy is intended to protect the insured <u>defendant</u> by relieving it of some or all of the obligation to pay a punitive damages award; it benefits the plaintiff, if at all, only indirectly. The provision in CMO 3, however, was intended to benefit the <u>plaintiffs</u> in the MDL: it gives them additional sources to look to for payment of judgments, including judgments of punitive damages, should the named Cook Defendants be unable to pay. Indeed, this provision benefits <u>only</u> the plaintiffs; the Cook Defendants do not benefit because

they are still obligated to pay any punitive award, and the other Cook entities do not benefit because they are now potentially obligated to pay judgments for which they otherwise were not liable.  In sum, Plaintiff's effort to analogize the CMO 3 provision to an insurance policy fails and does not justify either the disclosure or the admission of financial information about non-party Cook entities.

Financial information concerning non-parties Cook Group, Inc., and the other Cook entities demanded by Plaintiff is irrelevant to Plaintiff's punitive-damages request under Fed. R. Evid. 401 and 402, and the Court should reject Plaintiff's attempt to discover and to present that information to the jury in support of her request for punitive damages.

**B.    The Prejudice To The Cook Defendants Of Evidence Regarding The Financial Condition Of Cook Group, Inc. Substantially Outweighs Its Probative Value**

Even assuming for the sake of argument that the financial condition of Cook Group, Inc. or the other Cook entities were somehow relevant to Plaintiff's punitive-damages request, the prejudicial impact of this evidence would substantially outweigh any arguable probative value under Fed. R. Evid. 403.  Indeed, Plaintiff's motivation in presenting such evidence to the jury is very simple: to provide the jury with the appearance of a deeper pocket in the hopes of rendering a larger punitive award. This prejudice played out in *Ramada Hotel Operating Co. v. Shaffer*, 576 N.E.2d 1264 (Ind. Ct. App. 1991), where the Indiana Court of Appeals actually reversed a jury's punitive-damage award because it found the admission of evidence regarding the parent company's finances "affected the substantial rights of the defendant." *Id.* at 1271 ("This was prejudicial to the [the defendant] because the net worth evidence the jury used to calculate the award should not have been admitted against it.")  Thus, even if the Court finds evidence of Cook Group's (or other Cook entities') financial condition to be somehow relevant to Plaintiff's

8

punitive damages, which it is not, the Court should exclude such evidence as unduly prejudicial under Rule 403.

**C.     The Parties Have Already Stipulated To The Named Defendants' Net Worth**

To avoid a needless presentation of evidence to the jury about the Cook Defendants' financial condition, the parties reached an agreement before trial to stipulate to the net worth of each of the named defendants. (*See* Jan. 9, 2019 Tr. at 78:18-22, attached as Exhibit 1; *see also* Feb. 1, 2019 Tr. at 4386:24-4387:8 attached as Exhibit 2). For the reasons set forth in this brief, that is the only financial evidence that the jury may appropriately consider with respect to punitive damages. Limiting the evidence consistent with the parties' existing agreement will also contribute to the efficiency of the remaining proceedings, as Plaintiff's counsel represented to the Court after the jury's liability verdict came in.  (Feb. 1, 2019 Tr. at 4385 ("we could put on, certainly, our evidence [regarding punitive damages] within – within an hour or less….").)

## CONCLUSION

The Cook Defendants respectfully urge the Court to enter an order excluding from the punitive-damages phase of this trial any testimony, evidence, or argument concerning the financial condition of Cook Group, Inc. or any other entity that is not one of the three named defendants in this action.

Respectfully submitted,

Dated: February 4, 2019

/s/ *Andrea Roberts Pierson*
Andrea Roberts Pierson (# 18435-49)
Jessica Benson Cox (# 26259-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
Email:  andrea.pierson@faegrebd.com
Email:  jessica.cox@faegrebd.com

Charles Webber (MN # 215247)
Bruce Jones (MN # 179553)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-8719
Facsimile: (612) 766-1600
Email:  chuck.webber@faegrebd.com
Email:  bruce.jones@faegrebd.com

*Counsel for the Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 4, 2019, a copy of the foregoing was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Counsel for Defendants will serve any non-CM/ECF registered parties.

*/s/ Andrea Roberts Pierson*