# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

This Document Relates to Plaintiff

*Tonya Brand*
No. 1:14-cv-06018-RLY-TAB

## COOK DEFENDANTS' BENCH BRIEF REGARDING PLAINTIFF'S ATTORNEYS' REPEATED VIOLATION OF COURT ORDERS CONCERNING EVIDENCE

Cook submits this bench brief to summarize and address the myriad times in this trial when Plaintiff's attorneys have violated this Court's rulings on motions in limine, stipulations, and various other evidentiary rulings, all to the severe and unfair prejudice of the Cook Defendants. Inasmuch as the Court's previous orders did not dissuade Plaintiff's attorneys from engaging in this prohibited conduct, it is perhaps wishful thinking to suppose that an order from the Court to obey the Court's previous orders will affect their behavior.

However, given the gravity of the situation and the intentional disregard of the Court's orders, particularly in the rebuttal phase of closing arguments at a time when Plaintiff's counsel knew well that Cook could not respond, Cook respectfully submits that the Court should take action to stem this barrage of prohibited and prejudicial comments in advance.  Cook therefore asks the Court once again to order and admonish Plaintiff's attorneys to obey the Court's rulings concerning what is and is not proper questioning and argument.

## ARGUMENT

Cook recognizes that just as no trial is perfect, no attorney is perfect, and that attorneys will occasionally and inadvertently elicit testimony or make an argument before the jury that encroaches or technically violates a motion-in-limine order or evidentiary ruling. This submission is not about those occasional lapses. It is instead about a series of violations of the Court's evidentiary rulings by Plaintiff's attorneys that is so flagrant, so frequent, and so systematic that it can only have been deliberate. As noted below, this conduct was particularly egregious in the rebuttal portion Plaintiff's closing argument, when Plaintiff's attorney knew that Cook would have no opportunity to respond to his prohibited attacks. The Court should not permit this to happen again in the punitive-damages phase of the trial.

A sampling of Plaintiff's attorneys' arguments and conduct in violation of the Court's rulings includes:

### 1. Pretrial stipulations re evidentiary issues

Plaintiff's attorneys frequently made wholly improper comments on how evidence was admitted. For example, Plaintiff's attorney argued in rebuttal that "It took a lot of work to get that document [notes of an FDA phone call] into evidence, but we got it in," Tr. at 4363:19-21, clearly trying to imply that Cook had improperly tried to keep evidence from the jury. And this just minutes after the Court had advised the jury, right in front of Plaintiff's attorneys, that:

> During the course of the trial, it often becomes the duty of trial -- duty of counsel to make objections and for me to rule on them in accordance with the law. The fact that objections are made or opposed should not influence you in any way.

Tr. at 4249:18-22.

The parties also stipulated before trial to an Order on Trial Procedures, which the Court adopted and which included the following provision:

2

> **The parties shall not refer to or argue, or adduce any evidence of or attempt to adduce any evidence of, the other party's failure to call any witness equally available to both parties.**

Dkt. at 1 (emphasis added). Plaintiff's attorney directly violated this Order in his rebuttal closing, directly accusing Cook of failing to bring certain witnesses because those witnesses could not have defended Cook:

> Now, when you want to rewrite history, then, when it's your product and you're called upon to account for the defect of a product that you've made, you bring people to answer the bell. You bring the people who are involved with the design to answer the defective design questions.
> We brought you those people. Who did they bring? A slew of experts and the best salesman in the company. A slew of experts and the best salesman in the company. That was their defense.

Tr. at 4367:16-24. And again:

> Not one engineer did they bring. . . And when I asked Mr. Breedlove about the details of the Celect and the design issues involved in the Celect, he didn't know the answers. So why didn't they bring somebody that they had control over –

Tr. at 4368:6-9. When Cook objected to this violation, the Court told the Plaintiff's attorney to "Go ahead," signaling that other objections to Plaintiff's attorney's argument would not be welcome. Plaintiff's attorney further said "This is somebody they had control over. I'm asking about their control." Tr. at 4368:11-22.

### 2. MIL 27 – Order barring references to other mass torts/lawsuits

Cook moved in limine to bar Plaintiff from referring to any other mass torts. In response, Plaintiff represented to the Court that "Plaintiff has no intention of introducing evidence or arguments regarding lawsuits, claims or investigations of other medical devices or drugs because that evidence would be hearsay and unduly prejudicial." Dkt. 9261 at 84. Yet at trial, Plaintiff did just that, repeatedly. Most blatantly, Plaintiff's attorney directly invoked other current mass torts in his rebuttal closing and analogized them to this case:

3

> In every single case, every single case, no matter how bad the product is, the complaint rate is going to be low. And the reason is because they take products that have what we call latency, a time between the implant and when somebody in the future is going to discovery that there's a problem with it, **whether it's a defective hip, whether it's a defective knee, or whether it's an IVC filter or a mesh product**.

Tr. at 4364:15-21 (emphasis added); *see also* Tr. at 4634:10-14 ("This is what medical device companies do. . . And when they come to court because their product is defective, they can say 'Wait, we have a complaint rate.'").

Plaintiff's attorneys also highlighted other mass-tort litigation in their rebuttal treatment of Dr. Fryzek, conflating the metal-on-metal hip-implant and welding-rod litigation that Dr. Fryzek worked on to imply that Cook's current law firm had somehow been involved in preparing Dr. Fryzek's reports in prior litigation:

- Dr. Fryzek is the witness that "this law firm" hired to testify about metal-on-metal hips.
- He is the witness that "the lawyers" hired to testify about the welding rod litigation.
- He is the expert whose report was kicked out because "the lawyers had participated in writing it."

Tr. at 4360:8-25. Coming as it did just after Plaintiff's attorney accused Cook's attorneys of rewriting the British Registry, this was clearly intended to imply that Cook's attorneys were somehow involved in the welding-rod decision, which of course they were not. Moreover, given that the Court excluded testimony on the other court's decision – which was not a *Daubert* motion or an exclusion of any report or statement by Dr. Fryzek – the inference lacked any good faith basis.

Plaintiff's counsel then topped it off in closing rebuttal by asserting that Dr. Fryzek is "same expert that the lawyers hired in the welding rod litigation to say that welding rod fumes don't cause Parkinson's, even though we know that they do." Tr. at 4360:17-20. Plaintiff's

4

attorney made these assertions about the welding-rod mass tort despite the lack of any evidence that (1) Dr. Fryzek even addressed the issue of causation in that litigation, or (2) welding rods in fact cause Parkinson's disease.

### 3. Representation the Plaintiff would not comment on size or financial condition of Cook

Cook moved the Court to exclude any evidence or argument concerning the size or financial condition of Cook and Plaintiff agreed as to the compensatory phase of the trial. In response, Plaintiff stated: "absent Cook opening the door, Brand agrees that Defendants' financial condition should not be admitted during the first phase of the trial." Dkt. 9261 at 65. Notwithstanding this assurance, Plaintiff's rebuttal closing highlighted Cook's finances and profits:

> And they ended up making hundreds of millions of dollars off the sales of this product based on their own projections of numbers what it cost to make the product, what the sales price would be, and the number they've ended up selling, hundreds of millions of dollars.

Tr. at 4369:14-20. In the same argument, Plaintiff's counsel also pejoratively referred to Cook as a "multinational conglomerate," both a clear violation of what Plaintiff had represented and inflammatory rhetoric about companies that Plaintiff's attorney well knew are not defendants in the case. Tr. at 4372:14.

### 4. Court's order regarding references to Celect being withdrawn, recalled, discontinued

Before trial, Cook moved to bar Plaintiff from offering evidence that the Celect was still on the market, and Plaintiff moved to bar Cook from implying that the Celect was still on the market. The Court essentially granted both parties relief, making clear that neither party could elicit testimony that suggested either that the Celect was still on the market or that it had been removed from the market. Notwithstanding this ruling, Plaintiff's attorney argued in rebuttal that

5

Dr. Rheudasil's testimony that he had stopped buying the Celect somehow implied that he had found something wrong with it, all while showing the Celect sales chart:

> Dr. Rheudasil, it doesn't look like he's been buying it since 2015. And the FDA – when they say the FDA has not recalled this product, who needs to recall a product that nobody even, looks like, cares about buying anymore?

Tr. at 4366:11-14 (while showing the sales chart). The only possible purpose of this argument was to mislead the jury.

### 5. **Plaintiff's use of "reptile tactics"**

Cook moved in limine to exclude Plaintiff's "reptile tactics," tactics that invite the jury to decide issues based on emotional considerations rather than the factors dictated by the law. Plaintiff's rebuttal here was overloaded with such reptile tactics:

- Plaintiff's attorney's comments in rebuttal closing that since World War II:

    our country has spent billions of dollars on defense so that we'd be free from the fear of foreign aggression. We've spent billions of dollars on medical research to be free from the fear of disease, and on and on and on. And I always find it interesting that it's only when we get to the courthouse in front of citizens of a community like this fine community that we hear somehow freedom from fear should come cheap.

    Tr. at 4373:17-25. This argument of course had nothing to do with Plaintiff or her injuries and everything to do with trying to "tug" up the damages number based on emotional appeal and florid accusations against all defendants generally.

- Plaintiff repeatedly and improperly lumped Cook's defense based on its complaint rate with other companies that have complaint rates, directly asserting (and without any evidence at trial on the topic, to boot) that complaint rates are simply a "gimmick" that all defendants use:

    In every single case, every single case, no matter how bad the product is, the complaint rate is going to be low. And the reason is because they take products that have what we

> call latency, a time between the implant and when somebody in the future is going to discover that there's a problem with it, whether it's a defective hip, whether it's a defective knee, or whether it's an IVC filter or a mesh product.
> Whatever it is, they know that there's a period of time called a latency that the product isn't going to be discovered to have failed. Because you never discover it until you notice the health problems and the symptoms.
> And then they come to the Court and they say, "Man, we couldn't have possibly known about any of this."

Tr. at 4364:15-4365:2.

- Plaintiff's attorney openly appealed to prejudice and emotion by trying to paint Cook as a huge and heartless corporation:

  > So what happened is they get two deaths. This is why I asked Mr. Breedlove that important question. "When Mr. Cook, who you spoke about so favorably -- and, yes, by all accounts, Mr. Cook was a good man. But when he was in charge and the basket filter killed one person, he yanked it off the market."
  > My exact question to him -- to Mr. Breedlove. And that was his answer, "I've heard that, yes. That's what happened."
  > Here, fast forward, Mr. Cook is no longer around. They're this multinational conglomerate of all these companies all over the world doing business, thousands of employees selling thousands of medical device products. And they can't figure out whether they have the right glue to test their product? And their product has killed two people before it ever makes it to market?
  > And guess what the response is? Today's president, the Cook of today, after it kills two people, is keep the foot firmly planted on the gas pedal.

  Tr. at 4372:4-22. Plaintiff's counsel had absolutely no foundation or good faith basis for to suggest that Mr. Hawkins is Cook's president today (he is not) or that any email sent by him was in response to reports of any patient death (it was not).

- Finally, Plaintiff's attorneys openly argued that the jury should base its damages decision on some sort of "accounting" for behavior or "repayment of a debt" rather than on the injuries Plaintiff actually suffered:

  > You have the power to tell a company that, when they make decisions that takes something away from another human being, they have to account for those decisions.

  Tr. at 4304:4-7.

7

It's not an award. It is the repayment of a debt. And in our community, when you have a debt, you have to pay it. And the way that you force Cook to pay that debt is you write $10 million and your foreperson signs it; and Cook repays that debt.

Tr. at 4304:11-15.

### 6. Order barring evidence and comment about other lawsuits and claims against Cook.

The Court granted Cook's motion to exclude evidence and comment about other lawsuits and claims against Cook. *See* Dkt. 9634. Despite this clear ruling, Plaintiff's attorneys referred to other lawsuits involving Cook filters in the jury's presence throughout the trial. For example:

- In apparently trying to impeach Henrik Gyllun, Plaintiff's attorney unilaterally and unnecessarily commented about "His trial testimony. There have been two trials." Tr. at 2447:10-11. And this occurred despite the parties' agreement to a specific process to impeaching witnesses with testimony from another lawsuit.

- In attempting to impeach Cook's expert Dr. Morris with information about his payments from Cook, Plaintiff's attorney stated before the jury that "you have written a report for Cook before…," talking about payments for his work on other cases. Tr. at 3671:22-3672:6. And this occurred despite countless on-the-record discussions with the Court that the parties were only to offer evidence about payments in this case.

- In what was not even impeachment, Plaintiff's attorney questioned Cook expert Dr. Virmani by using her reports from the *Hill* and *Gage* cases, with "Two other cases" boldly displayed on the screen for the jury. Despite repeated requests and objections, Plaintiff's counsel substantially delayed removing the image from the screen. Tr. at 3504:7-3505:3.

      **7.**      **<u>Order that parties may not show jury exhibits that have not been admitted.</u>**

Throughout the trial, the Court made clear that the attorneys were not to display to the jury exhibits that had not been admitted into evidence. Yet in his rebuttal closing, Plaintiff's attorney did just that. As the Court's exhibit list will confirm, Plaintiff's exhibit PX 1227, entitled "Celect evaluations, anticipated sequence of perforation and tilting of a filter that has perforated the caval wall," was never admitted into evidence, and indeed was not even offered. *See* Tr. at 4120:5-7 (Plaintiff's attorney: "PX 1227 has been referenced, but it was never offered and is not being offered."). Yet in his rebuttal closing, Plaintiff's attorney both showed the unadmitted document to the jury and highlighted its contents:

> And then you'll remember that we showed -- I showed you, in 2010, when Dr. McMeeking was on the stand, that he wrote the diagram. He prepared this diagram that illustrates the cascading effect. Let's look at the front page so you can see.
> It's an April 2010 document, Celect evaluation, anticipated sequence of perforation and tilting of a filter that has perforated the caval wall. So it's specifically about the Celect in 2010, and he's talking and illustrating how this filter tilts and perforates.
> So if his -- if his concerns had been assuaged by all of this, why is he still writing diagrams and memos about the cascading effect problem years after the fact?

Tr. at 4283-4284:19.

And this was not the first time Plaintiff's attorneys had shown the jury this unadmitted document. During the direct examination of Dr. McMeeking, another Plaintiff's attorney showed it to the jury, wrongly stating that it had already been admitted. Tr. at 2096:5-6 ("I'm handing you what's marked as PX 1227, which I believe is already in evidence."). She then proceeded to walk Dr. McMeeking through a prolonged line-by-line discussion of the documents, at each stage pointing out to the jury the quoted language from the unadmitted document. *See* Tr. at 2096:8-2105:9.

## CONCLUSION

Plaintiff's counsel must stop treating this Court's orders as mere suggestions, to be ignored on whim or subjected to endless attempts to overturn them.  Cook respectfully asks the Court to admonish Plaintiff's counsel that further violations of its orders will not be tolerated, and will be subject to an admonition in the presence of the jury and any other appropriate sanction if such violations occur.

Respectfully submitted,

Dated: February 4, 2019

/s/ *Andrea Roberts Pierson*
Andrea Roberts Pierson (# 18435-49)
Jessica Benson Cox (# 26259-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
Email:  andrea.pierson@faegrebd.com
Email:  jessica.cox@faegrebd.com

Charles Webber (MN # 215247)
Bruce Jones (MN # 179553)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766-8719
Facsimile: (612) 766-1600
Email:  chuck.webber@faegrebd.com
Email:  bruce.jones@faegrebd.com

*Counsel for the Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2019, a copy of the foregoing document was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Counsel for Defendants will serve any non-CM/ECF registered parties.

/s/ Andrea Roberts Pierson