**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND               Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION                MDL No. 2570

This Document Relates to:

    *Brand v. Cook Medical, Inc. et al.,*
    Case No. 1:14-cv-06018-RLY-TAB

**THE COOK DEFENDANTS' BRIEF**
**IN SUPPORT OF PLAINTIFF'S MOTION TO**
**MAINTAIN DOCUMENTS UNDER SEAL [DKT. NO. 9264]**

**I.      INTRODUCTION**

Plaintiff has filed **Plaintiff's Responses to the Cook Defendants' Omnibus Motions in
Limine (New) and Authority in Support [Dkt. No. 9263]** *under seal.* Plaintiff also has
submitted as supporting exhibits various documents – including documents designated as
"Company Confidential" or "Confidential" by the Cook Defendants[1], pursuant to Case
Management Order #8 (Stipulated Protective Order on Confidential Information). In accordance
with Local Rules 5-11(d)(1) and 5-11(d)(2)(A)(ii), Plaintiff filed these documents specifically,
**Plaintiff's Exhibits 1-48** – *under seal.* Finally, Plaintiff has filed Plaintiff's Motion to
Maintain Documents Under Seal [Dkt. No. 9264].

The Cook Defendants submit this Brief in Support of Plaintiff's Motion to Maintain
Documents Under Seal and respectfully request that the Clerk of this Court maintain the
documents ***under seal***.

---

[1]   The Cook Defendants in this matter are Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical
Incorporated), and William Cook Europe ApS (collectively, the "Cook Defendants" or "Cook").

The Clerk should maintain **Plaintiff's Responses to the Cook Defendants' Omnibus Motions in Limine (New) and Authority in Support [Dkt. No. 9263] and Exhibits 1-22 and 24-48 thereto** *under seal* because there is good cause for sealing the documents. The documents contain Cook confidential, proprietary, and sensitive internal company information on trade secrets, product research and development, post-market product analysis, sales, marketing, and public relations, regulatory affairs, or complaint handling. The documents also contain private, sensitive medical information regarding Plaintiff Mrs. Brand. Accordingly, there is good cause to seal the documents to prevent public disclosure of the Cook Defendants' confidential business information and competitive harm to the Cook Defendants, and to protect Mrs. Brand's interest in her medical privacy.

## II. THE APPLICABLE LEGAL STANDARD

1. Under Federal Rule of Civil Procedure 26(c)(1)(G), the court may, "for good cause," enter an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." *See also Baxter International, Inc. v. Abbott Laboratories*, 297 F.3d 544, 546 (7th Cir. 2002) (documents that "meet the definition of trade secret or other categories of bona fide long-term confidentiality" may be sealed). Likewise, private health information should be maintained under seal at least until consent by the patient is obtained. *See generally Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017).

2. **Trade Secrets –** Indiana has generally adopted the definition of trade secret found in the Uniform Trade Secret Act.[2] *See, e.g., Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 414

---

[2]  The presence of Cook's headquarters in Indiana justified the application of Indiana trade secret law to the issues here, because Indiana is the state where Cook would feel any injury or harm. *See, e.g., Micro Data Base Sys., Inc. v. Dharma Sys., Inc.,* 148 F.3d 649 (7th Cir. 1998) (applying Indiana

US.121737641

(S.D. Ind. 2001).[3]  Under this standard, a protectable trade secret has four characteristics: (1) information; (2) that possesses independent economic value; (3) that is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (4) is the subject of efforts to maintain its secrecy that are reasonable under the circumstances.  *See, e.g.*, *Hamilton v. State Farm Mut. Auto Ins. Co.*, 204 F.R.D. 420, 423 (S.D. Ind. 2001); *Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 759 N.E.2d 239, 245-46 (Ind. Ct. App. 2001); *Burk v. Heritage Food Serv. Equip., Inc.*, 737 N.E.2d 803, 813 (Ind. Ct. App. 2000).

3.     Other confidential business or commercial information that does not technically fit the definition of trade secret is similarly entitled to the same level of protection as trade secrets if its disclosure would be harmful physically or economically.  *See Chaib v. GEO Grp., Inc.*, 2014 WL 4794194, at *1–3 (S.D. Ind. Sept. 24, 2014); *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at *1 (S.D. Ind. Feb. 2, 2009) (finding that protection is required where disclosure of certain proprietary information would "provide a blueprint for competitors").

4.     **Research and Development** – Federal courts, including this court, have consistently held that product development, research, and testing documents and information are entitled to protection from disclosure as confidential and proprietary business information.  Such information constitutes confidential business information because "a competitor's access to [a company's] research and development . . . present[s] potential dangers and may lead to a windfall to the discovering party."  *Star Scientific,* 204 F.R.D. at 416 (S.D. Ind. 2001) (Baker, J.); *see also United States ex rel. Long v. GSD&M Idea City LLC*, 2014 WL 12648520, at *2

choice-of-law principles in a trade-secret case and holding that New Hampshire substantive law governed because the entity holding the trade secrets was headquartered there).
[3]  The Indiana Uniform Trade Secret Act is identical to the Uniform Trade Secrets Act, 1(4), 14 U.L.A. 438 (1985).

US.121737641

(N.D. Tex. Jan. 3, 2014) ("[I]nformation in which the producing party has a commercial interest, such as . . . research data, . . . has been found to constitute confidential commercial information."); *Kowalsky v. Hewlett-Packard Co.*, 2012 WL 892427, at *2 (N.D. Cal. Mar. 14, 2012) (exhibits were "sealable in their entirety because they contain[ed] HP's confidential product testing and evaluation process"); *cf. Andrx Pharm., LLC v. GlaxoSmithKline, PLC,* 236 F.R.D. 583, 586 (S.D. Fla. 2006) ("Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information." (citation omitted)), *affirmed,* 2006 WL 2403942 (S.D. Fla. 2006).

5.      **Post-Market Product Analysis** – Similarly, post-market product analysis is also entitled to protection from disclosure as confidential and proprietary business information. Disclosure of such proprietary post-market analysis information is harmful because it would "provide a blueprint for competitors." *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at *1 (S.D. Ind. Feb. 2, 2009); *see also Star Scientific*, 204 F.R.D. at 415 (research and data, such as sales techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge").

6.      **Sales, Marketing, and Public Relations** – Confidential marketing plans or sales strategies have been held to constitute protectable trade secrets or protected confidential business information. *See, e.g.*, *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1270 (7th Cir. 1995) (trade secret material for sports drink includes information regarding the pricing, distribution and marketing of the drink and not just the drink formula); *Star Scientific*, 204 F.R.D. at 415 (research and data, such as sales techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge"); *Burk v. Heritage Serv. Equip.*, 737 N.E.2d 803, 814 (Ind. Ct. App. 2000) (finding that employee unfairly

- 4 -

used marketing information and sales strategies in breach of the Indiana trade secrets clause); *see also Brunswick Corp. v. Jones*, 784 F.2d 271 (7th Cir. 1986) (confidential marketing strategies held protectable); *AGS Capital Corp., Inc. v. Prod. Action Intern., LLC*, 884 N.E.2d 294, 311 (Ind. Ct. App. 2008) (stolen information related to marketing strategy would "put [a company's competitors] at a severe disadvantage").  Good cause exists to maintain the confidentiality of such strategic plans and analysis when disclosure of that information would reveal the company's "response to changing market situations and competitive threats within the marketplace, and could therefore give a competitor insight into '[the company's] internal thinking'" and when publicizing this material "would allow [the company]'s competitors the benefit of this information without incurring the effort or expense." *Bradburn Parent/Teacher Store, Inc. v. 3M*, 2004 WL 1146665, at *4 (E.D. Pa. May 19, 2004) (citation omitted).

7.    **Regulatory Affairs –** Courts have held that information related to regulatory compliance and/or submission efforts and strategies constitutes confidential business information. *See, e.g.*, *Bayer Healthcare, LLC v. Norbrook Labs., Ltd.*, 2009 WL 3444938, at *1 (E.D. Wisc. Oct. 23, 2009) (good cause existed to seal deposition testimony and internal company emails containing proprietary commercial information and strategy related to an FDA filing).  Such proprietary information, like confidential information regarding pricing and sales, is confidential because "the information is created to enhance [companies'] business and give them a competitive edge". *Star Scientific*, 204 F.R.D. at 415.

8.    **Complaint Handling –** Internal complaint handling procedures and materials constitute trade secrets in Indiana if they contain (1) information; (2) that derives independent economic value; (3) is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (4) is the subject of

- 5 -

efforts reasonable under the circumstances to maintain its secrecy.  *Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 759 N.E.2d 239, 245-46 (Ind. Ct. App. 2001); *see also, e.g.*, *Hamilton v. State Farm Mut. Auto. Ins. Co.*, 204 F.R.D. 420, 423-24 (S.D. Ind. 2001); *Rep. Servs. Inc. v. Liberty Mut. Ins. Cos.*, 2006 WL 1635655, at *5 (E.D. Ken. June 9, 2006) (concluding that claims handling and training materials "had economic value to [defendant] due to (1) their confidential nature, (2) the time, effort, and expense [defendant] invested in creating these materials, (3) the evolutionary process surrounding the development of these materials, (4) the competitive nature of the [industry's] business, and (5) the fact that competitors in [that] industry do not disclose information about their claims handling policies and procedures to one another.").

9.     **Internal Information on Corporate Structure and Business Operations** – Courts also have determined that information about a corporation's internal business operations and corporate structure is confidential and proprietary and, therefore, entitled to protection from public disclosure.  *E.g., True Health Chiropractic, Inc. v. McKesson Corporation,* 2015 WL 3409721 (USDC N.D. Cal.) (May 27, 2015) at *4 (granting motion to seal confidential and proprietary information about the defendant's internal business operations and corporate structure).

10.    **Confidential Financial Information** – Similarly, Courts have determined that highly-sensitive and confidential information including financial records, production records, manufacturing records, sales records, customer information, and vendor information is entitled to protection from public disclosure.  *See e.g., ABRO Indus., Inc. v. 1 New Trade, Inc.*, 2015 WL 13655677 (USDC N.D. Ind.) (Sept. 16, 2015) at *3 (granting plaintiff's motion for a

US.121737641

protective order with respect to confidential information about its financial records, sales, customers, and pricing).

11.     **Communications with Consulting Experts** – Federal Rule of Civil Procedure 26(b)(4)(D) protects against an opposing party's discovery of facts and/or opinions of "consulting experts" who are retained in anticipation of litigation and not expected to testify at trial.  Furthermore, Federal Rule of Civil Procedure 26(b)(3) protects from discovery documents and tangible things that are prepared in anticipation of litigation by a party's consultant.

12.     **Medical Privacy** – With respect to medical information, courts in the Seventh Circuit have routinely recognized that, while parties' medical information may be made public where it is relevant to the claims at issue and/or necessary to the disposition of the case, other information may be kept under seal with good cause.  *See Westedt v. Franklin,* 2016 WL 2997504, at *1 (E.D. Wis. May 23, 2016); *Gibson v. Milwaukee Cnty.*, 2015 WL 12964665, at *1 (E.D. Wis. Mar. 26, 2015); *Noe v. Carlos,* 2008 WL 5070463, at *3 (N.D. Ind. Nov. 26, 2008).  The good cause inquiry thus requires balancing a party's acknowledged interest in medical privacy, *see Whalen v. Roe*, 429 U.S. 589, 599–600 (1977), against the Court's (and parties') interest in the accurate resolution of the conflict and the public interest in transparency.  *Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017).  Private health information should be maintained under seal at least until consent by the patient is obtained.  *See generally id.* at *3.

13.     The "good cause" standard under Rule 26(c) "requires a balancing of the potential harm to the litigants' interests against the public's right to obtain information concerning judicial proceedings."  *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 415-16 (S.D. Ind. 2001) (Baker, J.); *see also Felling v. Knight*, 211 F.R.D. 552, 554 (S.D. Ind. 2003) ("The rule essentially

US.121737641

operates to balance the public's interest in open proceedings against an individual's private interest in avoiding annoyance, embarrassment, oppression, or undue burden or expense.") (Baker, J.).  Consistent with the doctrine discussed earlier, however, "the presumption of public access 'applies only to the materials that formed the basis of the parties' dispute and the district court's resolution'; other materials that may have crept into the record are not subject to the presumption." *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013) (citing *Baxter Int'l*, 297 F.3d at 548)).

## III.   THE CONFIDENTIAL DOCUMENTS AT ISSUE THAT SHOULD BE MAINTAINED UNDER SEAL

**Exhibit 1 [Dkt. No. 9276-1]** – Exhibit 58 to the 4/10/2018 deposition of Bruce Fleck is an internal email communication and attachment from Cook employee, Bruce Fleck.  The email was sent to the North American sales representative team and described Cook's discontinuation of sales of the Celect filter in North America.   This document was produced at CookMDL2570_0693298 and was designated and stamped, "Company Confidential."  Based on the foregoing, this document should be maintained under seal for good cause since it contains sales, marketing, and public relations information.

**Exhibit 2 [Dkt. No. 9276-2]** is excerpts from the deposition of Cook employee, Meg Senker Donley, occurring on March 9, 2018.   In her role as District Manager for Cook, Ms. Donley has, and she provides to the court in her deposition testimony, detailed information relating to Cook's sales practices.   Her deposition transcript is designated and stamped, "Confidential – Subject to Protective Order."  Based on the foregoing, these transcript excerpts should be maintained under seal for good cause since they contain sales, marketing, and public relations information.

US.121737641

**Exhibit 3 [Dkt. No. 9276-3]** is an excerpt from the deposition transcript of Cook employee, Tamara Clemmer, occurring on June 15, 2017.  Ms. Clemmer is a District Sales Manager for Cook.  In her testimony, Ms. Clemmer provides information about the Celect filter and her communications with physicians about the use and efficacy of the filter.  This deposition transcript is designated and stamped, "Confidential – Subject to Protective Order."  Based on the foregoing, this transcript should be maintained under seal for good cause since it contains sales, marketing, and public relations information.

**Exhibit 4 [Dkt. No. 9276-4]** is a letter from Cook Medical to the FDA, dated June 1, 2012.  The letter discusses post-market surveillance activities related to Cook's Celect filter.  The document was produced at Cook IVCF 005099 and was designated and stamped, "Company Confidential."  Based on the foregoing, this document should be maintained under seal for good cause since it contains regulatory affairs information.

**Exhibit 5 [Dkt. No. 9276-5]**, although described by Plaintiff as "Deposition of Fleck," is actually Exhibit 58 to Mr. Bruce Fleck's 4/10/2018 deposition.  The exhibit is an internal email communication and attachment from Cook employee, Mr. Fleck, to the North American sales representative team about Cook's discontinuation of sales of the Celect filter in North America.  This document was produced at CookMDL2570_0693298 and was designated and stamped, "Company Confidential."  As such, this document should be maintained under seal for good cause because it contains sales, marketing, and public relations information.

**Exhibit 6 [Dkt. No. 9277-1]** is a compilation of excerpts from the transcript of the *Pavlock* trial.  The excerpts contain information relating to Mr. Pavlock's medical conditions and his experience with the Cook filter.  Based on the foregoing, this transcript should be maintained under seal for good cause since it contains medical privacy information relating to Mr. Pavlock.

- 9 -

**Exhibit 7 [Dkt. No. 9279-1]** is a compilation of excerpts from the deposition transcript of Gregory Gordon, M.D., occurring on January 4, 2018.  Dr. Gordon's testimony includes a discussion about testing and studies for IVC filters.  This deposition transcript is designated and stamped, "Confidential – Subject to Protective Order."  Based on the foregoing, this transcript should be maintained under seal for good cause since it contains research and development information.

**Exhibit 8 [Dkt. No. 9277-2]** is a compilation of excerpts from the deposition transcript of Gregory Gordon, M.D., occurring on June 12, 2018.  Dr. Gordon's testimony includes a discussion about animal studies for Cook filters.  This deposition transcript is designated and stamped, "Confidential – Subject to Protective Order."  Based on the foregoing, this transcript should be maintained under seal for good cause since it contains research and development information.

**Exhibit 9 [Dkt. No. 9277-3]** is a compilation of excerpts from the expert report of Dr. Greg Gordon, dated April 30, 2018.  In his report, Dr. Gordon goes into great detail about testing data, clinical investigations, and complaint handling of IVC filters.  Based on the foregoing, these documents should be maintained under seal for good cause since they contain research and development, post-market product analysis, and complaint handling information.

**Exhibit 10 [Dkt. No. 9277-4]** are excerpts from the deposition of James Carlson, Ph.D., occurring on June 22, 2017.  Dr. Carlson testifies concerning Cook's product development, manufacturing, and testing.  Dr. Carlson's deposition transcript is designated and stamped, "Confidential – Subject to Protective Order."  Based on the foregoing, this document should be maintained under seal for good cause since it contains research and development information.

Exhibit 11 [Dkt. No. 9288-1] is an internal email exchange between Cook employees.  It discusses considerations for a new filter design.  This document was produced by Cook at CookMDL2570_0765339-40 and was designated and stamped, "Company Confidential."  Based on the foregoing, this document should be maintained under seal for good cause since it contains research and development information.

Exhibit 12 [Dkt. No. 9288-2] is an internal email communication between Cook employee, Arne Mølgaard-Nielsen, and Dr. Rolf Günther.  The email discusses the design characteristics of the Celect filter.  This document was produced at CookMDL2570_0765319 and was designated and stamped, "Company Confidential."  Based on the foregoing, this communication should be maintained under seal for good cause since it contains research and development information.

Exhibit 13 [Dkt. No. 9288-3] is an internal draft document prepared by Cook employee, Brian Choules.  Mr. Choules is the Director of Non-Clinical Testing.  The document is a draft of responses contemplated for submission to the FDA.  This document was produced natively at CookMDL2570_0421290, with its slip sheet designated and stamped, "Company Confidential."  Based on the foregoing, this document should be maintained under seal for good cause since it contains research and development and regulatory affairs information.

Exhibit 14 [Dkt. No. 9288-4] is excerpts from the deposition of Cook employee, Per Hendrickson, occurring on June 15, 2016.  Mr. Hendrickson is the Product Design Engineer for William Cook Europe.  As part of his testimony, Mr. Hendrickson provides details about discussions during the development of the Cook Celect filter.  This deposition transcript is designated and stamped, "Confidential – Subject to Protective Order."  Based on the foregoing,

this transcript should be maintained under seal for good cause since it contains research and development information.

Exhibit 15 [Dkt. No. 9288-5] is excerpts from the deposition of Cook employee, Mark Frye, occurring on June 30, 2016.  Mr. Frye is an Engineering Manager for Cook.  As part of his testimony, Mr. Frye discusses the specifications for and design of the Celect filter.  This deposition transcript is designated and stamped, "Confidential – Subject to Protective Order." Based on the foregoing, this transcript should be maintained under seal for good cause since it contains research and development information.

Exhibit 16 [Dkt. No. 9288-6] is excerpts from the deposition of Cook employee, Brian Choules, occurring on June 22, 2016.  Mr. Choules is in Cook's Research and Development Department.  As part of his testimony, Mr. Choules discusses Cook's research and development processes, as well as processes relating to Cook's handling of complaints and post-market product analysis.  This deposition transcript is designated and stamped, "Confidential – Subject to Protective Order."  Based on the foregoing, the deposition excerpts should be maintained under seal for good cause since they contain research and development, post-market product analysis, and complaint handling information.

Exhibit 17 [Dkt. No. 9289-1] is a Procedure Note from the medical records of Mrs. Tonya Brand.  Based on the foregoing, this document should be maintained under seal for good cause since it contains medical privacy information regarding Mrs. Brand.

Exhibit 18 [Dkt. No. 9289-2] is excerpts from the deposition of Dr. Mark Rheudasil, occurring on February 28, 2018, as well as Exhibit 20 from Dr. Rheudasil's deposition.  The testimony relates to Dr. Rheudasil's treatment of Mrs. Brand; and the exhibit relates to the handling of Mrs. Brand's complaint by Cook.  Based on the foregoing, these excerpts and the

exhibit should be maintained under seal for good cause since they contain medical privacy information regarding Mrs. Brand as well as complaint handling information.

**Exhibit 19 [Dkt. No. 9289-3]** is excerpts from the deposition transcript of Dr. Paul Timperman, occurring on May 3, 2017.  As part of his testimony, Dr. Timperman discusses Mrs. Brand's medical conditions and the handling of Mrs. Brand's complaint.. This deposition transcript is designated and stamped, "Confidential – Subject to Protective Order."  Based on the foregoing, this transcript should be maintained under seal for good cause since it contains confidential complaint handling information and medical privacy information regarding Mrs. Brand.

**Exhibit 20** *[Dkt. No. ????]* Plaintiff's describe Exhibit 20, as "Cook expert Morris deposition at 202 10-15."  However, this exhibit does not appear to have been filed by Plaintiff and no document docket number has be assigned to it.  Regardless, the transcript of Dr. Timothy Morris's deposition, occurring on June 20, 2018, contains testimony relating to filter testing, complaint handling, and medical records.  Based on the foregoing, this transcript should be maintained under seal for good cause since it contains research and development, complaint handling, and medical privacy information.

**Exhibit 21 [Dkt. No. 9289-5]** is excerpts from the deposition of Gregory Gordon, M.D., occurring on June 12, 2018.  Dr. Gordon's testimony includes references to Celect testing and Mrs. Brand's experience with the Celect filter.  This deposition transcript is designated and stamped, "Confidential – Subject to Protective Order."  Based on the foregoing, this transcript should be maintained under seal for good cause since it contains research and development, and medical privacy information.

US.121737641

**Exhibit 22 [Dkt. No. 9289-6]** is an excerpt from the deposition of Raman Uberoi, M.D., occurring on August 3, 2018.  As part of his testimony, Mr. Uberoi discusses data compiled during Cook's *Outside the United States* study; which was a registry study gathering information relating to patient experiences with the Celect filter.  This deposition transcript is designated and stamped, "Confidential – Subject to Protective Order."  Based on the foregoing, this transcript should be maintained under seal for good cause since it contains research and development and post-market product analysis information.

**Exhibit 23 [Dkt. No. 9289-7]** is the Lyon *et al.* publication titled, Short- and Long-term Retrievability of the Celect Vena Cava Filter: Results from a Multi-institutional Registry.  It is a publicly available document and therefore not subject to confidentiality.

**Exhibit 24 [Dkt. No. 9289-8]** is a compilation of two of Cook's internal "Single Complaint Reports."  The reports contain medical information and data collected as part of Cook's complaint handling process.  The documents were produced at CookMDL2570_0100622 and CookMDL2570_0743748.  Both were designated and stamped, "Company Confidential."  Based on the foregoing, these documents should be maintained under seal for good cause since they contain medical privacy and complaint handling information.

**Exhibit 25 [Dkt. No. 9272-1]** is a Cook internal "Single Complaint Report."  The report contains medical information and data collected as part of Cook's complaint handling process.  Although Plaintiff lists this exhibit as being produced at CookMDL2570_0100617, the report was actually produced at CookMDL2570_0100608 through CookMDL2570_0100626.  Regardless, the document is designated and stamped, "Company Confidential."  Based on the foregoing, it should be maintained under seal for good cause since it contains medical privacy and complaint handling information.

- 14 -

**Exhibit 26 [Dkt. No. 9272-2]** is a Cook internal "Single Complaint Reports." The report contains medical information and data collected as part of Cook's complaint handling process. Although Plaintiff lists this exhibit as being produced at CookMDL2570_0100599, the report was actually produced at CookMDL2570_0100590 through CookMDL2570_0100606. Regardless, the document is designated and stamped, "Company Confidential." Based on the foregoing, it should be maintained under seal for good cause since it contains medical privacy and complaint handling information.

**Exhibit 27 [Dkt. No. 9272-3]** is Exhibit 20 to the deposition of Dr. Mark Rheudasil, occurring on February 28, 2018. The exhibit is an internal company email relating to Cook's handling of Mrs. Brand's complaint. The document was produced at CookMDL2570_0074640 and was designated and stamped, "Company Confidential." Based on the foregoing, this document should be maintained under seal for good cause since it contains complaint handling information.

**Exhibit 28 [Dkt. No. 9272-4]** is the Expert Report on Efficacy and Safety of Celect Inferior Vena Cava (IVC) Filters by Harlan Krumholz MD, dated April 2018. In his report, Dr. Krumholz's provides his opinions regarding Mrs. Brand's medical conditions, Cook's research and development, Cook's post-market product analysis, and Cook's complaint handling. Based on the foregoing, these excerpts should be maintained under seal for good cause since they contain research and development, post-market product analysis, complaint handling, and medical privacy information.

**Exhibit 29 [Dkt. No. 9272-5]** is a compilation of two of Cook's internal Single Complaint Reports. Both reports contain medical information and data collected as part of Cook's complaint handling process. Although Plaintiff lists the documents for this exhibit as

- 15 -

being produced at CookMDL2570_0100622 and CookMDL2570_0743748, the reports were actually produced at CookMDL2570_0100608 and CookMDL2570_0743733, respectively. Regardless, the documents are designated and stamped, "Company Confidential." Based on the foregoing, these documents should be maintained under seal for good cause since they contain medical privacy and complaint handling information.

**Exhibit 30 [Dkt. No. 9272-6]** is a compilation of emails between various Cook employees. The emails discuss and contemplate changes to the Celect IFUs for the purpose of obtaining FDA approval. These emails were produced at CookMDL2570_0402856 and designated and stamped, "Company Confidential." Based on the foregoing, these emails should be maintained under seal for good cause since they contain regulatory affairs information.

**Exhibit 31 [Dkt. No. 9272-7]** is excerpts from the deposition of Harlan Krumholz, M.D., occurring on June 28, 2018. Dr. Krumholz's testimony includes references to Celect testing and Mrs. Brand's experience with the Celect filter. This deposition transcript is designated and stamped, "Confidential – Subject to Protective Order." Based on the foregoing, this transcript should be maintained under seal for good cause since it contains research and development and medical privacy information.

**Exhibit 32 [Dkt. No. 9272-8]** is the Declaration and Rebuttal report of Harlan Krumholz M.D., dated June 18, 2018. In his rebuttal report, Dr. Krumholz provides his (rebuttal) opinions relating to, among other things, the 510(k) process, Cook's OUS study, perforation, clinical reports, and IVC literature. Mrs. Brand's medical conditions, Cook's research and development, Cook's post-market product analysis, and Cook's complaint handling. Based on the foregoing, these excerpts should be maintained under seal for good cause since they contain regulatory affairs, research and development, and post-market product analysis information.

- 16 -

**Exhibit 33 [Dkt. No. 9272-9]** is a compilation of excerpts from the rebuttal expert report of Dr. Gregory Gordon, dated June 11, 2018.  In these excerpts, Dr. Gordon provides his opinions relating to Mrs. Brand's medical conditions, Cook's research and development, Cook's post-market product analysis, and Cook's complaint handling.  Based on the foregoing, these excerpts should be maintained under seal for good cause since they contain research and development, post-market product analysis, complaint handling, and medical privacy information.

**Exhibit 34 [Dkt. No. 9272-10]** is an excerpt from the deposition of Christy Foreman, MBE, occurring on July 17, 2018.  Ms. Foreman testifies regarding Cook's 510(k) submission of clinical data related to the Cook Celect filter.  This deposition transcript is designated and stamped, "Confidential – Subject to Protective Order."  Based on the foregoing, this transcript should be maintained under seal for good cause since it contains research and development, and regulatory affairs information.

**Exhibit 35 [Dkt. No. 9273-1]** is a medical record of an office visit to Dr. Keith Levine by Mrs. Tonya Brand, dated June 16, 2011.  Based on the foregoing, this medical record should be maintained under seal for good cause since it contains medical privacy information regarding Mrs. Brand.

**Exhibit 36 [Dkt. No. 9279-2]** is a compilation of excerpts from the deposition of Mrs. Tonya Brand, occurring on June 16, 2017.  As part of her testimony, Mrs. Brand discusses her medical conditions.  This deposition transcript is also designated and stamped, "Confidential – Subject to Protective Order."  Based on the foregoing, this transcript should be maintained under seal for good cause since it contains medical privacy information.

US.121737641

**Exhibit 37 [Dkt. No. 9279-3]** is a compilation of excerpts from the deposition of Mrs. Tonya Brand, occurring on December 10, 2015, as well as an exhibit from Mrs. Brand's deposition.  As part of her testimony, Mrs. Brand discusses her medical conditions, and the exhibit is photograph of Mrs. Brand's abdomen.  The deposition transcript does not appear to be designated and stamped, "Confidential – Subject to Protective Order."  Nevertheless, based on the foregoing, this transcript and exhibit should be maintained under seal for good cause since they contain medical privacy information.

**Exhibit 38 [Dkt. Nos. 9273-2 – 9273-3, and 9290-1]** is the Operative Report of Emory St. Joseph's Hospital of Atlanta for Mrs. Tonya Brand, dated October 22, 2015.  Based on the foregoing, this record should be maintained under seal for good cause since it contains medical privacy information.

**Exhibit 39 [Dkt. No. 9290-2]** is the Pathology Report of Emory St. Joseph's Hospital of Atlanta for Mrs. Tonya Brand, dated October 22, 2015, and electronically signed by C. Blake Hutchinson, M.D.  Based on the foregoing, this record should be maintained under seal for good cause since it contains medical privacy information.

**Exhibit 40 [Dkt. No. 9290-3]** is the Certificate of Authenticity from Emory St. Joseph's Hospital of Atlanta relating to Mrs. Tonya Brand's medical records.  Plaintiff' filed this exhibit under seal.  Based on the foregoing, this record should be maintained under seal for good cause out of an abundance of caution since it contains medical privacy information.

**Exhibit 41 [Dkt. Nos. 9273-4 and 9290-4]** is the Affidavit of Steven M. Kurtz, dated August 6, 2018.  In his affidavit, Mr. Kurtz discusses Mrs. Brand's medical experience with the Celect filter and the handling of Mrs. Brand's Celect filter fragments.  Based on the foregoing,

this record should be maintained under seal for good cause and out of an abundance of caution since it contains medical privacy information.

Exhibit 42 [Dkt. Nos. 9273-5 and 9209-5] is the Pathology Report of Emory St. Joseph's Hospital of Atlanta for Mrs. Tonya Brand, dated October 22, 2015, and electronically signed by C. Blake Hutchinson, M.D.  Based on the foregoing, this record should be maintained under seal for good cause since it contains medical privacy information.

Exhibit 43 [Dkt. Nos. 9273-6 and 9290-6] is a medical record of Mrs. Tonya Brand and diagram addressing, in part, Mrs. Brand's complaints of pain.  The record was apparently prepared by William Edward Turton, M.D.  Based on the foregoing, this medical record should be maintained under seal for good cause since it contains medical privacy information.

Exhibit 44 [Dkt. No. 9279-4] is a compilation of excerpts from the deposition of Dr. Dennis Griffin, occurring on April 10, 2018.  As part of his testimony, Dr. Griffin discusses Mrs. Brand's medical conditions.  This deposition transcript is also designated and stamped, "Confidential – Subject to Protective Order."  Based on the foregoing, this transcript should be maintained under seal for good cause since it contains medical privacy information.

Exhibit 45 [Dkt. No. 9274-1] although Plaintiff describes Exhibit 45 as "Single Complaint Report," the document filed as Exhibit 45 is actually the Final Surgical Pathology Report of Emory St. Joseph's Hospital of Atlanta for Mrs. Tonya Brand, dated October 23, 2015, and electronically signed by C. Blake Hutchinson, M.D.  Based on the foregoing, this record should be maintained under seal for good cause since it contains medical privacy information.

Exhibit 46 [Dkt. Nos. 9273-7 and 9290-7] is an email and attachment from Cook employee, Bruce Fleck, dated July 29, 2003.  Mr. Fleck is a Product Manager for Cook.  In the email and attachment, Mr. Fleck presents market data regarding Cook filters and addresses

concerns regarding the filters.  The email was produced at CookMDL2570_1272123 and was designated and stamped, "Company Confidential."  The attachment was produced in native format at CookMDL2570_1272124 and its slip sheet was designated and stamped, "Company Confidential."  Based on the foregoing, these documents should be maintained under seal for good cause since they contain post-market product analysis, complaint handling, and sales, marketing, and public relations information.

**Exhibit 47 [Dkt. Nos. 9273-8 and 9290-8]** is an internal memorandum from Cook employee, Bruce Fleck.  Mr. Fleck is a Product Manager for Cook.  This memorandum is directed to Cook's Diagnostic and Interventional Representatives.  The memorandum contains information about complaints received for the Cook Tulip filter and Cook's competitors' filters.  The memorandum was produced at CookMDL2570_1300843 and was designated and stamped, "Company Confidential."  Based on the foregoing, this document should be maintained under seal for good cause since it contains post-market product analysis, complaint handling, and sales, marketing, and public relations information.

**Exhibit 48 [Dkt. No. 9275-1]** is a Cook internal power point related to selling and marketing the Cook Tulip filter.  It contains data on market share, product specifications, and potential adverse events.    The power point was product in native format at CookMDL2570_0730076 and its slip sheet was designated and stamped, "Company Confidential."  Based on the foregoing, this presentation should be maintained under seal for good cause since it contains sales, marketing, and public relations information, as well as research and development information.

Finally, **Plaintiff's Responses to the Cook Defendants' Omnibus Motions in Limine (New) and Authority in Support [Dkt. No. 9263]** relies on or references the Cook confidential

- 20 -

business and commercial information contained in the exhibits discussed above and filed under seal. **Plaintiff's Responses to the Cook Defendants' Omnibus Motions in Limine (New) and Authority in Support [Dkt. No. 9263]** also relies on or references the medical privacy information contained in the exhibits discussed above and filed under seal by Mrs. Brand and which she has not consented to releasing publicly.

## IV.   THERE IS GOOD CAUSE TO MAINTAIN THE DOCUMENTS UNDER SEAL

Good cause exists to maintain **Plaintiff's Exhibits 1-5, 7-16, 18-22, 24-34, and 46-48** *under seal.* The documents contain Cook confidential business and commercial information, and the Cook Defendants would face competitive and economic harm if such materials were made publicly available. The documents contain and constitute confidential, proprietary, and sensitive internal company information on trade secrets, product research and development, post-market product analysis, sales, marketing, and public relations, regulatory affairs, or complaint handling information. The documents should not be disclosed to the public.

The Cook Defendants' May 1, 2017 letter to Magistrate Baker and the Declaration of Mark Breedlove (attached here for reference as **Exhibit 1**) are instructive and demonstrate good cause to maintain **Plaintiff's Exhibits 1-5, 7-16, 18-22, 24-34, and 46-48** *under seal.* Cook invests substantial resources into product research, development, and testing, including with regard to Cook's IVC filter technology. Breedlove Decl. ¶ 6. Cook maintains strict confidentiality over its research and development ideas, efforts, and results, and considers such information to be proprietary to the company. *Id*. And disclosure of such information would therefore result in competitive harm to Cook and could "lead to a windfall to the discovering party." *Star Scientific*, 204 F.R.D. at 416; Breedlove Decl. ¶¶ 6-7. Likewise, Cook invests considerable resources in, derives commercial advantage from, and maintains strict confidentiality over, its post-market product analysis, its sales, marketing, and public relations

US.121737641

information, its regulatory affairs strategies and information, and its complaint handling procedures. *Id.* at ¶¶ 8-15. Disclosure of Cook's non-public post-market product analysis, its sales, marketing, and public relations information, its regulatory affairs efforts and strategies, and its complaint handling procedures and information would likewise cause competitive harm to Cook. Breedlove Decl. ¶¶ 8-15; *see EEOC v. Abbott Labs., Inc.*, 2012 WL 3842460, at *2-3 (E.D. Wis. Sept. 5, 2012).

In sum, good cause exists to maintain **Plaintiff's Exhibits 1-5, 7-16, 18-22, 24-34, and 46-48** *under seal.* Cook's trade secrets, product research and development, post-market product analysis, sales, marketing, and public relations, regulatory affairs, and complaint handling information are confidential and proprietary. The disclosure of such information and documents would result in competitive harm to Cook. **Plaintiff's Exhibits 1-5, 7-16, 18-22, 24-34, and 46-48** should be sealed.

Further, good cause exists to maintain **Plaintiff's Exhibits 6, 17-21, 24-26, 28-29, 31, 33, and 35-45** *under seal* because the documents contain private, sensitive, and confidential medical information regarding Mrs. Brand or other patients.

As set forth above, courts in the Seventh Circuit have routinely recognized that, while parties' medical information may be made public where it is relevant to the claims at issue and/or necessary to the disposition of the case, other information may be kept under seal with good cause. *See Westedt,* 2016 WL 2997504, at *1; *Gibson,* 2015 WL 12964665, at *1; *Noe,* 2008 WL 5070463, at *3. The good cause inquiry thus requires balancing a party's acknowledged interest in medical privacy, *see Whalen,* 429 U.S. at 599–600, against the Court's (and parties') interest in the accurate resolution of the conflict and the public interest in

- 22 -

transparency.  *Cole,* 2017 WL 2929523, at \*3.  Private health information should be maintained under seal at least until consent by the patient is obtained. *See generally id.* at \*3.

**Plaintiff's Exhibits 6, 17-21, 24-26, 28-29, 31, 33, and 35-45** contain private, sensitive, and confidential medical information regarding Mrs. Brand or other patients. Plaintiff Mrs. Brand's medical and psychiatric history, conditions, and treatment are highly relevant to the issues in this case.  However, out of an abundance of caution, the Court should permit these documents to be filed under seal until Plaintiff consents to what should be disclosed.

Finally, good cause exists to maintain **Plaintiff's Responses to the Cook Defendants' Omnibus Motions in Limine (New) and Authority in Support [Dkt. No. 9263]** *under seal* because it relies on or references the Cook confidential business and commercial information contained in the exhibits discussed above and filed under seal.  Plaintiff's Responses should be maintained under seal to protect Cook's interest in its confidential and proprietary business and commercial information.  Good cause also exists to seal **Plaintiff's Responses to the Cook Defendants' Omnibus Motions in Limine (New) and Authority in Support [Dkt. No. 9263]** because it discusses and contains private, sensitive, and confidential medical information regarding Mrs. Brand which she has not consented to releasing publicly and which, out of an abundance of caution, should remain sealed.  Plaintiff's Responses also should be sealed because it references, discusses, or contains private, sensitive, and confidential medical information of other patients.

V.     **CONCLUSION**

For all the foregoing reasons, the Cook Defendants respectfully request that the Court issue an Order directing the Clerk to maintain **Plaintiff's Responses to the Cook Defendants' Omnibus Motions in Limine (New) and Authority in Support [Dkt. No. 9263] and**

US.121737641

**Plaintiff's Exhibits 1-22 and 24-48 thereto** *under seal*.  The documents contain Cook confidential, proprietary, and sensitive internal company information on trade secrets, product research and development, post-market product analysis, sales, marketing, and public relations, regulatory affairs, or complaint handling.  There is good cause to seal the documents to prevent public disclosure and competitive harm to the Cook Defendants.  The documents also contain private, sensitive medical information regarding Mrs. Brand and other patients.  Accordingly, there is good cause to seal these documents out of an abundance of caution to protect Mrs. Brand's interest in her medical privacy as well as the medical privacy of other patients.

In accordance with Local Rule 5-11(e)(4), the Cook Defendants have submitted a proposed order maintaining the documents under seal.

Respectfully submitted,

Dated: April 10, 2019

/s/ Andrea Roberts Pierson
Andrea Roberts Pierson (# 18435-49)
J. Joseph Tanner (# 11856-49)
Nicholas B. Alford (# 31867-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
E-Mail: andrea.pierson@faegrebd.com
E-Mail: joe.tanner@faegrebd.com
E-Mail: nicholas.alford@faegrebd.com

*Counsel for the defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

- 24 -

US.121737641

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 10, 2019, a copy of the foregoing was served electronically, and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

/s/ Andrea Roberts Pierson

US.121737641