IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |
| This Document Relates to All Actions | |

### RESPONSE OF MARC J. BERN & PARTNERS LLP IN OPPOSITION TO PLAINTIFFS' STEERING COMMITTEE (PSC)'S MOTION TO AMEND THE MARCH 16, 2016 ORDER ON RULES, POLICIES, PROCEDURES, GUIDELINES RELATING TO ESTABLISHING COMMON BENEFIT FEE AND EXPENSE FUND

Comes now, Marc J. Bern & Partners LLP ("MJB") on its own behalf and as a firm representing hundreds of clients who would be negatively impacted by the Plaintiffs Steering Committee's ("PSC") request to substantially increase the 8% common benefit fund assessment to a 14% assessment, and opposes the PSC's motion to amend the March 16, 2016 Order on Rules, Policies, Procedures, Guidelines Relating to Establishing Common Benefit Fee and Expense Fund to provide for an increase in the assessments for common benefits attorneys' fees and costs, from a total of eight percent (six percent for attorney's fees and two percent for costs) to a total of fourteen percent (nine percent for fees and five percent for costs) ("Plaintiff's Motion"). MJB files this Response in Opposition to PSC's Motion, and respectfully shows the Court the following:

### INTRODUCTION

The law firm of Marc J. Bern & Partners LLP represents over 200 clients whose cases are filed and pending in the United States District Court, Southern District of Indiana, in the *In Re*

1

*Cook IVC Filters Marketing, Sales Practices and Products Liability Litigation*, multidistrict litigation number 2570 ("this MDL"). MJB acted in reliance on the representations of the PSC, memorialized in the March 16, 2016 order on Rules, Policies, Procedures, Guidelines Relating to Establishing Common Benefit Fee and Expense Fund ("March 16, 2016 Order") that "the [common benefit fee and cost] assessment amount is 8%" and that the assessment "***shall not be altered***" when filing each of its clients' cases related to injuries caused by Cook IVC filters in this MDL. March 16, 2016 Order [Doc. No. 1246, p. 14], attached as Exhibit A. MJB relied heavily in the representations made in the March 16, 2016 Order in assessing its clients' litigation choices, its expenditures on their cases, and in its decisions regarding resolution of these cases.

The PSC now requests that this Court modify the March 16, 2016 Order and **almost double** the common benefit assessment from a total of 8% (6% for fees and 2% for costs) to a total of 14% (9% for fees and 5% for costs). The requested assessment increase will drastically and negatively impact all plaintiffs with cases pending in this MDL, including MJB's clients. Most importantly, the requested assessment increase is excessive and quite simply unwarranted. The current 8% assessment is adequate, and because the PSC has not shown that a 14% assessment is necessary for the advancement of the litigation, Plaintiff's Motion to modify the March 16, 2016 Order should be denied.

### A. MJB Reasonably Relied on the March 16, 2016 Order, Which Mandates that the Assessment "Shall Not" Be Altered.

MJB is currently in the process of resolving more than two hundred of its Cook IVC filter cases pending in this MDL. As such, MJB has reasonably relied upon the representation by the PSC, memorialized in the March 16, 2016 Order, that the common benefit assessment was 6% and that it *would not* be altered.  the March 16, 2016 Order's assessment provision states that "the assessment amount is 8%, which includes 6% for attorneys' fees and 2% for expenses. "The

assessment represents a holdback (*In re Zyprexa Prods. Liab. Litig.*, 267 F.Supp.2d 256 (E.D.N.Y. 2006)) ***and shall not be altered.***" the March 16, 2016 Order [Doc. 1246, p. 10] (emphasis added). A sudden increase in the common benefit assessment now is not allowed by the March 16, 2016 and will otherwise cause irreparable damage to our clients given MJB's reliance on the March 16, 2016 Order if it is allowed.

### B.  The PSC Has Not Shown That an Increase in the Assessment is Necessary.

Despite the unambiguous language in the March 16, 2016 disallowing any alteration of the assessment, if any assessment increase is contemplated, the burden is on the PSC to demonstrate that any common benefit increase is required to reasonably and adequately advance the litigation. Having failed to make this showing, the PSC's request must be denied.

The common benefit assessment may not be increased more than 8%, and the PSC sufficiently demonstrates that any such increase is **necessary** to adequately advance the litigation. Pursuant to the Participation Agreement executed between participating attorneys and the PSC, participating attorneys will not support a common benefit assessment in excess of 8% "unless it should become apparent that fees in excess of 6% or costs and expenses in excess of 2% *are required to reasonably and adequately advance the litigation." See* the March 16, 2016 Order, attached as Exhibit A [Doc. 1246] (emphasis added).

Here, the PSC has not made an adequate or conclusive showing that could support the need for an assessment increase above 8%. The PSC has failed to submit any evidence that the current 8% assessment is inadequate. The PSC's motion alleges that a modification is needed because "participating counsel have submitted their contemporaneously recorded time, in excess of 75,000 hours to Co-Lead Counsel." No time records have been produced.

The PSC has not argued, let alone demonstrated, *why* an assessment increase over 8% is necessary. A recital and listing of work that the PSC had previously completed under the 8% assessment does not show that an assessment increase is required to advance the litigation in the future, let alone a ***substantial*** increase above what March 16, 2016 Order already provides. The work that the PSC describes as a "massive collective undertaking" likewise fails to demonstrate how the current 8% assessment is inadequate to cover any required costs, or why an increase is necessary. *See* Plaintiff's Motion at p. 3.

While MJB appreciates the work the PSC has done, this statement does not justify or support the PSC's claim that a substantial increase in the common benefit assessment is needed. The PSC's claims "review of millions of pages of Cook documents; taking/defending 140 corporate, case-specific and expert depositions; identification and preparation of numerous experts and expert reports; appearance at 58 status conferences; negotiation of multiple discovery disputes and Case Management Orders; extensive briefing and argument of over 100 motions *in limine*; briefing and argument of more than 50 Daubert motions and dozens of other dispositive motions, including a motion based on preemption related to 510(k)-cleared devices that resulted in additional expert fees and expenses" are all to be expected in litigating in an MDL proceeding. Plaintiff's Motion at p. 3.

The PSC asserts that it had to litigate three bellwether trials but offers no reason why it did not expect to litigate bellwether trials from the infancy of this MDL – bellwether trials are common practice in any MDL. Preparing for a Bellwether trial is not a justifiable reason for an increase in the assessment in advancement of litigation. Conducting a series of bellwether trials is part of the normal course of MDL litigation and is well within the PSC's expectations when the original 8% assessment were set.

Certainly, all work cited was expected from the outset. Indeed, motion practice, document review, depositions, expert reports, and procuring testimony are all expected when litigating (in an MDL proceeding or otherwise). Nothing that the PSC states indicated they went beyond and above what is normally expected of a Plaintiff Steering Committee in an MDL. The PSC has not demonstrated any extraordinary situation that would require an increase in funds. Nor does the PSC show that the original 8% assessment is inadequate to cover these actions and all future actions. By all indications the MDL has been proceeding in the expected manner. The fact that the number of hours and cost will grow as a litigation proceeds is expected of any litigation. The PSC will be justly compensated for its work from the 8% assessment from potentially 6,000 cases.

Vague language and undetailed claims of additional workload does not provide the court with an accurate assessment of whether an assessment increase is needed. The March 16, 2016 Order mandates that any increase of the common benefit assessment over 8% requires a showing that additional funds ***are required to reasonably and adequately advance the litigation***. Here, the PSC fails to demonstrate *why* any increase in the assessment is needed to do just that: reasonably and adequately advance the litigation.

### C. The Current 8% Assessment is More than Reasonable and Adequate.

The PSC did not put forth any evidence to show that the current 8% assessment is not adequate or reasonable to advance this litigation. Indeed, the PSC does not even offer any reason to explain why the current 8% assessment is inadequate to achieve this purpose. This especially true when one looks at the different Common Benefit Assessment involved in other litigations. *See, e.g.*, *In re Baycol Prods. Liab. Litig.,* MDL 1431 (PTO 25) (6% assessment in MDL consisting of 1,253 actions); *In re Rezulin Prods. Liab. Litig.,* 2002 WL 441342 (S.D.N.Y. 2002) (PTO 67) (6% assessment in MDL consisting of "hundreds" of actions); *In re*

*Phenylpropanolamine (PPA) Prods. Liab. Litig.,* MDL 1407 (Amended CMO 8) (4% assessment in MDL consisting of 900 actions); *In re Silicone Gel Breast Implants Prod. Liab. Litig.,* MDL 926 (PTO 13 and 13A) (4% assessment in MDL consisting of 1,778 actions); *In re Baush & Lomb Contact Lens Solution Prods. Liab. Litig.,* MDL 1785 (PTO 15) (6% assessment in MDL consisting of over 400 actions). In none of these smaller MDLs does the common benefit assessment reach the March 16, 2016 Order's 8% assessment, let alone exceed it.

The substantial increase in the number of plaintiffs in this MDL underscores the fact that an assessment increase over 8% is neither warranted nor justified. PSC admits that when the March 16, 2016 Order was entered, it was estimated that this MDL would be comprised of approximately 1,000 plaintiffs. When first advocating for an 8% assessment, the PSC cited the relatively small (1,000 plaintiff) size of the MDL as a reason that the 8% assessment would be adequate.  Plaintiff's Motion at p. 2. According to the PSC, the Cook IVC MDL warranted a the 8% assessment because "it was expected that this MDL would be smaller [than it currently is]." Plaintiff's Motion at p. 2. Indeed, where there are a large number of plaintiffs, a smaller percentage assessment can provide the same actual amount as a larger percentage assessment applied to a smaller number of plaintiffs.

As of March 15, 2019, the PSC represents that the MDL includes nearly 6,000 active cases. Plaintiff's Motion at p. 2. Using the PSC's own logic, the fact that the number of plaintiffs in this MDL has increased nearly six-fold should allow the costs of litigation to be spread more broadly and the per-plaintiff assessment to go *down.* At a minimum, a six-fold increase in the number of plaintiffs from whom assessments will be collected should suffice to cover litigation fees and costs without the need for assessments to increase.  The PSC originally argued for a 8% assessment because they ***underestimated*** the size of the MDL, and implied that the larger

6

postposed assessment was required because the MDL was expected to only contain 1000 plaintiffs. Now that the number of plaintiffs has increased substantially, the PSC now contradicts its previous stance in asking for a larger assessment despite a larger MDL. Logically the increase in plaintiffs in this MDL would allow the costs of litigation to be spread more broadly and the per-plaintiff assessment to go *down.* In no way should an increase in Plaintiffs in the MDL justify an increase in assessment.

Any claims that such funds are not adequate for litigation at this time, as the cases in this MDL are now in the late stages of the litigation, especially ***without any supporting evidence or showing*** that an assessment increase is necessary "to reasonably and adequately advance the litigation" should be disregarded – or, at the very least, very carefully examined.

### D. A Common Benefit Assessment Increase Will Stifle Settlement Efforts.

As previously stated, MJB relied heavily on the March 16, 2016 Order's representation of the Common Benefit Agreement of 8%. MJB is currently in advanced stages of negotiations with Cook to try to resolve these cases. The increased assessment is excessive and unwarranted in all cases and is particularly unfair and burdensome when applied to cases that are near settlement under a reasonable expectation that the common benefit assessment would by 8%. MJB requests that their clients who will soon enter, a settlement term sheet should be excluded from any increase in the common benefit assessment above 8%.

### CONCLUSION

Plaintiff's Motion seeks a substantial increase in the common benefit assessment – from 8% to 14% - but fails to show why an assessment increase over 8% is necessary to reasonably and adequately advance this litigation. Thus, for the reasons stated herein, MJB requests that this Court deny this motion. Alternatively, if the March 16, 2016 Order is modified to increase the

common benefit assessment, MJB requests that any of its clients who (it is anticipated) will resolve their cases be excluded from any increase in the common benefit assessment above 8%. The undersigned also requests any other and further relief to which MJB and/or its clients may be justly entitled.

Date:   April 26, 2019              Respectfully submitted,
                                    MARC J. BERN & PARTNERS LLP

                                    /s/ Debra J. Humphrey
                                    Debra J. Humphrey
                                    One Grand Central Place
                                    60 East 42nd Street, Suite 950
                                    New York, NY 10165
                                    Tel: (212) 702-5000
                                    Fax: (212) 818-0164
                                    Email: dhumphrey@bernllp.com

                                    *Counsel for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of April 2019, I electronically transmitted the foregoing document, RESPONSE OF MARC J. BERN & PARTNERS LLP IN OPPOSITION TO PLAINTIFF'S MOTION to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel of record.

/s/ Debra J. Humphrey