**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB

MDL No. 2570

This Document Relates to:

*Brand v. Cook Medical, Inc., et al.,*
Case No. 1:14-cv-6018-RLY-TAB

**PLAINTIFF TONYA BRAND'S RESPONSE TO THE COOK DEFENDANTS'
OBJECTIONS TO PLAINTIFF'S AMENDED BILL OF COSTS**

**I.**
**INTRODUCTION**

Cook's Objection to Plaintiff Tonya Brand's ("Plaintiff" or "Ms. Brand") Bill of Costs unreasonably and arbitrarily attempts to reduce Brand's taxable total to $90,627.25. Cook's unreasonableness – and pettiness – is highlighted by its objection to Ms. Brand's $21.51 expense request for service of the Complaint, even though this taxable item is obviously necessary to commence the case and well below the allowable $65.00 fee customarily charged by the U.S. Marshal. Cook also objected in one way or another to the transcript costs for almost all 51 deposition witnesses – including the entire cost of the deposition of Plaintiff Tonya Brand and Cook's primary expert Dr. Harlan Krumholz (who testified at trial for three days). Cook even objected to all but $433.51 of Ms. Brand's exemplification costs, even though such costs are plainly recoverable – and Cook itself presented numerous demonstrative exhibits, animations, and graphics to the jury. In Section II, Plaintiff describes in detail each of the costs Plaintiff is legally

entitled to recover. In the few instances where Cook's objection had any legal merit, Plaintiff has conceded those costs. The total amount of costs now sought by Plaintiff is $332,585.82.[1]

Cook's objection is mostly an erroneous attempt to shift its burden away from the "heavy" and "strong" statutory presumption in favor of cost recovery for the prevailing party.   In this instance, Ms. Brand is the prevailing party.  The Cook Defendants are the losing parties.  Pursuant to Federal Rule of Civil Procedure 54(d), 28 U.S.C. § 1920, and the law of the Seventh Circuit, Ms. Brand is entitled to recover her reasonable and necessary costs.

Federal Rule of Civil Procedure 54(d) states:  "Unless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party."  Fed. R. Civ. P. 54(d).  28 U.S.C. § 1920 lists the allowable costs:

(1)  Fees of the clerk and marshal;

(2)  Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;

(3)  Fees and disbursements for printing and witnesses;

(4)  Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;

(5)  Docket fees under section 1923 or this title;

(6)  Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

"Taxing costs against a losing party requires two inquiries: (1) whether the cost imposed on the losing party is recoverable and (2) if so, whether the amount assessed for that item was

---

[1] For the Court's convenience, Plaintiff has attached a spreadsheet comparing Ms. Brand's initial request for costs, her updated request for costs, and Cook's proposed costs. The spreadsheet is attached as Exhibit A.

reasonable." *Halasa v. ITT Educational Services, Inc.,* 2012 WL 639520, at *2 (S.D. Ind. Feb. 27, 2012). Completing the Bill of Costs Form AO 133, signing a Declaration, and providing the Court with the relevant invoices all suffice to demonstrate reasonableness. *See Halasa v. ITT Educational Services, Inc.,* 2012 WL 639520, at *2; *Capps v. Drake,* 2017 WL 1178254, at *2 (S.D. Ill. March 30, 2017).

"There is a heavy presumption in favor of awarding costs to the prevailing party." *Majeske v. City of Chicago,* 218 F.3d 816, 824 (7th Cir. 2000). "The presumption in favor of awarding costs to the prevailing party is difficult to overcome, and the district court's discretion is narrowly confined – the court must award costs unless it states good reasons for denying them." *Weeks v. Samsung Heavy Indus. Co., Ltd.,* 126 F.3d 926, 945 (7th Cir. 1997) (citing *Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co.,* 954 F.2d 219, 222 (7th Cir. 1988). "Generally, only misconduct by the prevailing party worthy of a penalty or the losing party's inability to pay will suffice to justify denying costs." *Id.* It is undisputed that neither of those exceptions exist in this case.

## II.
## COSTS

### A.     Fees of the Clerk: $400

Cook did not object. The Court should tax costs of $400.

### B.     Witness Fees: $1,482.24

Cook did not object. The Court should tax costs of $1,482.24.[2]

---

[2] The individual costs are: $535.84 for Dr. Harlan Krumholz; $204.28 for Dr. Michael Fishbein; $370.56 for Dr. Gregory Gordon; and $370.56 for Dr. Robert McMeeking.

**C.** **Compensation of Interpreters and Costs of Special Interpretation Services under 28 U.S.C. 1828:  $11,426.65**

Cook did not reference this line item in its 37-page Objection.  Cook either does not object or has waived any objection to this cost.  It was necessary for Plaintiff to hire interpreters because a number of witnesses were not native English speakers.  The Court should tax costs of $11,426.65.

**D.** **Fees for Service of the Summons and Complaint:  $21.51**

Cook's objection to this charge is frivolous.  "The Seventh Circuit permits the prevailing party to recover service costs that do not exceed the marshal's fees, no matter who actually effected service."  *Capps,* 2017 WL 1178254, at *3, quoting *Collins v. Gorman,* 96 F.3d 1057, 1060 (7th Cir. 1996).  In this case, the service cost is only $21.51, well below the marshal's fee of $65.  Therefore, Ms. Brand's cost request is reasonable.

Moreover, it strains credulity for Cook to argue that the Service cost is not necessary.  Obviously, Ms. Brand had to serve the Cook Defendants.  Moreover, as previously discussed, Plaintiff's counsel signed the Bill of Costs form and a Declaration under penalty of perjury that the Service cost was reasonable and necessary.  The Bill of Costs Form AO 133 and Declaration are sufficient to prove cost recovery.  *See Halasa,* 2012 WL 639520, at *2; *Capps,* 2017 WL 1178254, at *2.  Therefore, the Court should award Plaintiff this cost totaling $21.51.

**E.** **Trial Transcripts:  $27,811.02**

"A court may tax as costs the 'fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case . . . includ[ing] trial transcripts. . .'"  *Capps,* 2017 WL 1178254, at *4, quoting *Majeske v. City of Chicago,* 218 F.3d 816, 825 (7th Cir. 2000).  The cost of daily trial transcripts may be recovered where the trial is lengthy and complex.  *Id.*  Other considerations include: "(1) whether a daily transcript was necessary to minimize disagreement over the testimony of witnesses, (2) whether proposed findings of fact

were required, (3) whether the case involved expert witnesses whose cross-examination required knowledge of the exact wording of their previous testimony or that of any other witness, (4) the size of the claim, and (5) the importance of witness credibility." *Id.*, quoting *Lewis v. City of Chicago,* 2012 WL 6720411, at *7 (N.D. Ill. Dec. 21, 2012).

This complex and lengthy trial started on January 14, 2019 and ended on February 5, 2019. Twenty witnesses testified live at trial, including numerous experts. Knowledge of the transcript was necessary to effectively cross-examine these medical and scientific experts and to test their credibility. Similarly, the transcript was necessary to prepare Plaintiff's witnesses for their own testimony. Another nine witnesses testified via video deposition. The trial transcript was also necessary for the numerous motions argued to the Court during trial, along with post-trial motions. Finally, the size of the claim was substantial – as demonstrated by the jury's award of $3 million to Ms. Brand. Cook's conclusory objection to this cost item is without legal foundation, and the Court should award Plaintiff $27,811.02 in costs for obtaining the trial transcript.

### F.    Hearing Transcripts:  $992.70

This item consists of three hearing transcripts. The September 25, 2017 hearing included *Daubert* motions and the preemption issue. The cost of the transcript for that hearing was $262.80. The October 22 and 23, 2018 hearing was for additional *Daubert* motions. The cost of the transcript for that hearing was $468.90. The November 13, 2018 hearing was for motions in limine. The cost of the transcript for that hearing was $261.00.

As stated in the Declaration of Ben C. Martin, these hearing transcripts were necessary for trial preparation and to ensure compliance with the Court's orders. The transcripts regarding *Daubert* motions were necessary to prepare cross-examination and to ensure the proper scope of

testimony for each expert witness.  The transcripts regarding the motions in limine were necessary to track the Court's evidentiary rulings with precision.

Cook has failed to overcome the "heavy presumption" in favor of taxing the hearing transcript costs.  Cook provides no reason why the costs are unnecessary.  Additionally, Cook does not provide any evidence that the cost of these hearing transcripts is somehow excessive.  Therefore, the Court should award Plaintiff a total of $992.70 for the cost to obtain the three pretrial hearing transcripts.

### G.   Deposition Transcript Costs:  $125,305.15

The cost of video depositions and printed transcripts are both recoverable under 28 U.S.C. § 1920(2).  *Little v. Mitsubishi Motors North America, Inc.,* 514 F.3d 699, 702 (7th Cir. 2008); *Halasa v. ITT Educational Services, Inc.,* 2012 WL 639520, at *2 (S.D. Ind. Feb. 27, 2012); *Patel v. Menard, Inc.,* 2012 WL 1365434, at *3 (S.D. Ind. April 19, 2012).  The Seventh Circuit also allows a prevailing party to recover a deposition attendance fee for a court reporter, if the district court finds the fee to be reasonable.  *Held v. Held,* 137 F.3d 998, 1012 (7th Cir. 1998); *Patel,* 2012 WL 1365434, at *3.  "[A] video recorder's attendance is likewise compensable."  *Patel,* 2012 WL 1365434, at *3.

Contrary to Cook's incorrect argument, a deposition does not need to be introduced into evidence at trial for the prevailing party to recover its costs.  "It is well established in the Seventh Circuit that 'the expenses of discovery depositions shown to be reasonably necessary to the case are recoverable even if the depositions are not used as evidence at trial.'"  *Capps v. Drake,* 2017 WL 1178254, at *2, quoting *State of Ill. V. Sangamo Const. Co.,* 657 F.2d 855, 867 (7th Cir. 1981).  "The generally accepted view, and the one adopted by this [Seventh] [C]ircuit, is that introduction of a deposition at trial is not a prerequisite for finding that it was necessary to take the deposition."

*Hudson v. Nabisco Brands, Inc.,* 758 F.2d 1237, 1243 (7th Cir. 1985), overruled on other grounds, *Provident Bank v. Manor Steel Corp.,* 882 F.2d 258 (7th Cir. 1989).

The prevailing party is not required to provide a lengthy explanation as to why each deposition transcript is reasonable and necessary. The Bill of Costs Form AO 133 filed by counsel under penalty of perjury suffices to demonstrate the reasonableness and necessity of a deposition. *Halasa v. ITT Educational Services, Inc.,* 2012 WL 639520 at *2. In the *ITT* case, Halasa argued that ITT could not recover any of its deposition costs because it "fail[ed] to provide any statement regarding the necessity of the depositions." *Id.* The district court rejected Halasa's objection based on the Bill of Costs form presented by ITT.

> In fact, the Bill of Costs form used by ITT (and preferred by the Court), AO Form 133, requires counsel to certify under penalty of perjury that the costs listed are 'correct and were necessarily incurred in the action.' The opposing party, of course, has the opportunity to dispute the necessity of a particular item, but Halasa does not argue that any of the depositions *actually* were unnecessary, but only that ITT has not *demonstrated* their reasonableness. In the absence of any suggestion that a particular deposition transcript purchase was unreasonable, the Court declines to require ITT to do more than complete the declaration required by the form and provide the relevant invoices, which it has done.

*Id.* (emphasis in original).

That is the exact situation in Ms. Brand's case. Counsel for Ms. Brand filled out Southern District of Indiana Bill of Costs Form AO 133 and declared "under penalty of perjury that the foregoing costs are correct and were necessarily incurred in this action and that the services for which the fees have been charged were actually and necessarily performed." Similar to *Halasa*, Cook does not argue that any of the specific depositions were not actually necessary. Instead, Cook improperly attempts to shift the burden to Ms. Brand by complaining that she has not demonstrated the necessity of the various depositions. As the *ITT* case teaches, Cook's novel theory is not the law, and the Form AO 133 filled out by Plaintiff's counsel meets the requirement

for necessity.  In any event, Plaintiff has submitted a detailed description as to why copies of each deposition were necessary.

Additionally, the Seventh Circuit has held that "most transcripts of video-recorded depositions" will be "necessarily obtained for use in the case." *Little,* 514 F.3d at 702.  This is because "Federal Rule of Civil Procedure 26(a)(3)(A)(ii) requires any party intending to use deposition testimony at trial to 'provide to the other parties and promptly file' a transcript of the pertinent parts of the deposition if it was not recorded stenographically." *Id.* "Similarly, Rule 32(c) provides that 'a party must provide a transcript of any deposition testimony the party offers' at hearing or trial." *Id.*  Finally, Cook does not point to a single deposition video or transcript that it did not order.  It is hypocritical for Cook to order all deposition transcripts and videos, and then complain that Ms. Brand should not have done the same.

Cook also argues that the Court should limit the amount recovered for deposition transcripts to the rate established by the Judicial Conference of the United States at $3.65 per page. However, "there is no rule in the Southern District of Indiana that establishes the Judicial Conference rate as the maximum taxable rate." *Halasa v. ITT Educational Services, Inc.,* 2012 WL 639520, at *3.  Cook is really asking the Court to apply *Northern District of Illinois* Local Rule 54.1(b), which is inapplicable to this case.  ('If in taxing costs the clerk finds that a transcript or deposition was necessarily obtained, the costs of the transcript or deposition shall not exceed the regular copy rate as established by the Judicial Conference of the United States and in effect at the time the transcript or deposition was filed unless some other rate was previously provided by order of court.').") *Id.* quoting Northern District of Illinois Local Rule 54.1(b).[3]  Importantly,

---

[3] In their Objection, the Cook Defendants place heavy reliance on *Berry Plastics Corp. v. Intertape Polymer Corp.,* 2017 WL 167829 (S.D. Ind. January 17, 2017) for the proposition that a cost award for transcripts should be limited to the Judicial Conference rate.  The *Berry Plastics* opinion cites to *Cengr v. Fusibond Piping Sys., Inc.,* 135 F.3d 445,

even in the Northern District of Illinois, courts tax full costs for depositions arranged by the losing party, because the prevailing party had no control over the price charged. *Engate, Inc. v. Esquire Deposition Svcs., LLC,* 2006 WL 695650, at *2 (N.D. Ill. March 13, 2006) citing *Haroco, Inc. v. Am. Nat. Ban k & Trust,* 38 F.3d 1429, 1441 (7th Cir. 1994). Finally, courts often award actual transcript costs in a complex medical case, such as Ms. Brand's. This is because it is only natural for the court reporters to spend extra time preparing transcripts in a case involving "unfamiliar medical terms." *Halasa v. ITT Educational Services, Inc.,* 2012 WL 639520, at *4. Therefore, the Court should award Ms. Brand her actual costs for deposition copies.[4]

Nonetheless, should the Court wish to apply the Judicial Conference rate of $3.65 per page and eliminate the appearance fee to depositions noticed by Plaintiff, the total cost of the depositions drops only from $125,305.15 to $115,862.40 – a difference of $9,442.75. The Judicial Conference rate would likewise reduce the total Bill of Costs from $332,585.82 to $323,143.07.[5]

Ms. Brand does agree with the Cook Defendants that extra costs such as rough drafts, expedited transcripts, ASCII discs, and extra work on DVDs are generally not recoverable. Plaintiff has eliminated each of these charges from the deposition transcript portion of its Bill of Costs. Plaintiff is only seeking recover for the cost of the video depositions, the cost of the printed

---

456 (7th Cir. 1998). *Cengr,* however, was a case emanating from the Northern District of Illinois, which applied N.D. Ill. Local Rule 45(b) in effect at that time.

[4] Cook's argument that Ms. Brand should not be allowed most deposition costs due to "no proof of pages" is also without merit. As discussed, there is no rule in the Southern District of Indiana requiring a page count. In any event, for all depositions taken by counsel for Ms. Brand, the number of pages is listed right on the invoice from court reporting agency Golkow! Plaintiff utilized these page counts from the Golkow invoices to calculate deposition costs using the Judicial Conference rate. Finally, for those depositions noticed by Cook, application of the Judicial Conference rate is incorrect – even in the Northern District of Illinois – because Ms. Brand had no control over the prices charged by Cook's court reporting agency. *See Engate, Inc. v. Esquire Deposition Svcs., LLC,* 2006 WL 695650, at *2 (N.D. Ill. March 13, 2006) citing *Haroco, Inc. v. Am. Nat. Bank & Trust,* 38 F.3d 1429, 1441 (7th Cir. 1994)

[5] For the Court's convenience, Plaintiff has provided its deposition costs pursuant to the Judicial Conference rate in the spreadsheet attached as Exhibit A.

transcripts, and the court reporter appearance fee.  For the Court's convenience, the reduced cost for each deposition may be found on Plaintiff's spreadsheet attached as Exhibit A.

Though Plaintiff believes it has already satisfied the requirements for deposition cost recovery under Rule 54, the Seventh Circuit, 28 U.S.C. § 1920, and Form AO 133, out of an abundance of caution, Plaintiff provides the following additional description for each deposition.

### G.1.    Dr. Rebecca Betensky: $1,155.40

Cook noticed the video deposition of Dr. Rebecca Betensky and used its own court reporting service, Veritext Legal Solutions ("Veritext").  Dr. Betensky is a Harvard statistician retained by Ms. Brand who opined on the statistical significance of the OUS study.  The expert analysis provided by Dr. Betensky was relied upon by Dr. Harlan Krumholz in forming his opinions.  Dr. Krumholz further testified about Dr. Betensky's work.  Again, Cook took the deposition of Dr. Betensky.  Ms. Brand needed copies of this deposition for preparation of its own experts, for use in pre-trial *Daubert* motions, and for cross-examination of Cook's experts.

### G.2.    Scott Blanchard: $3,698.70

Blanchard is the Director of Global Infrastructure and Information Security for Cook.  He testified about Cook's document retention policies and corporate structure.  Blanchard's testimony included information concerning spoliation of evidence.  His deposition was necessary at the time it was taken, which is the legal threshold for recovery.  *See Endress,* 922 F.Supp. at 161 (Cost of deposition which appeared to be reasonably necessary at time taken taxed even if not used at trial); *Capps,* 2017 WL 1178254, at *2 ("Expenses of discovery depositions shown to be reasonably necessary to the case are recoverable even if the depositions are not used as evidence at trial.").

### G.3.    Allen Brand: $98.20

Cook noticed the deposition of Allen Brand and used its own court reporting service, Veritext.  Plaintiff needed the transcript because it was unknown how or if Cook would use the deposition at trial.

### G.4.    Tonya Brand: $1,270.60

Tonya Brand is the Plaintiff in this case.  Cook noticed the deposition of Ms. Brand and used its own court reporting service, Veritext.  Counsel for Ms. Brand needed the transcript and the video because, obviously, Cook intended to use the deposition to cross-examine Ms. Brand at trial.  Ms. Brand also needed the transcript and video for trial preparation and for witness rehabilitation at trial.  Ms. Brand's deposition was also relied upon by Plaintiff's experts.  Moreover, any attorney who does not obtain the transcript of her own client would be committing malpractice.

### G.5.    Tyler Brand: $634.70

Cook noticed the deposition of Tyler Brand and used its own court reporting service, Veritext.  Tyler Brand pulled the IVC filter from Tonya Brand's leg.  Tyler Brand's deposition testimony was relied upon by experts.  Additionally, Plaintiff's counsel needed copies of Tyler Brand's deposition because it was not known whether or how Cook would use the transcript at trial.

### G.6.    Mark Breedlove: $2,456.25

Mr. Breedlove is a Cook corporate representative who testified at trial as a live witness.  Ms. Brand needed copies of Breedlove's deposition both for trial preparation and for cross-examination at trial.

### G.7.    Dr. Jennifer Brown:  $5,168.80

Dr. Brown is the Cook Director of Regulatory Affairs and Regulatory Science who wrote the pivotal Lyon study on IVC filters, which was a key part of the trial.  Dr. Brown was in charge of the Lyon study authorship.  Her deposition was used at trial, thereby rendering copies of these depositions reasonable and necessary.  Additionally, Dr. Brown's deposition testimony was relied upon by both Plaintiff and Cook expert witnesses.

### G.8.    James Carlson:  $4,116.80

Carlson is a Senior Metallurgist for Cook.  He analyzed fractured IVC filters for Cook. Plaintiff played the video deposition of Carlson at trial, thereby rendering copies of the Carlson deposition reasonable and necessary.

### G.9,    Dr. Brian Choules:  $4,165.30

Choules is a Ph.D engineer employed by Cook.  Dr. Choules was director of non-clinical testing for Cook and oversaw bench testing for the Celect filter and other products. Plaintiff expert Dr. McMeeking relied on the testimony of Dr. Choules in forming his opinions and expert testimony.  As the Court may recall, the deposition of Dr. Choules had been designated to be played at trial, but counsel for Ms. Brand agreed to pull down the testimony in an effort to conserve time.  Cook recognizes it was necessary to obtain copies of these depositions by submitting a cost proposal nearly identical to Plaintiff's.

### G.10.  Jacob Clausen:  $390.00

Clausen is an engineer employed by Cook.  This deposition was taken by video conference, because at the time of the deposition, Mr. Clausen was located in Europe.  The deposition of Mr. Clausen was relied upon by experts for both Cook and Ms. Brand, including, Dr. McMeeking.

### G.11.   Tamara Clemmer:  $1,500.50

Clemmer was the Cook sales representative who called on Dr. Rheudasil, one of Ms. Brand's treating physicians.  At the time of this deposition, it was necessary for Ms. Brand to discover information about the interaction between Clemmer and Dr. Rheudasil, including what she told Dr. Rheudasil about the IVC filter type implanted in Ms. Brand (Dr. Rheudasil was Ms. Brand's vascular surgeon).  Clemmer also testified about the responsibilities and corporate policies concerning Cook sales representatives.  Copies of Clemmer's deposition were also necessary for use in response to Cook's Motion in Limine.

### G.12.   Meg Senker Donley:  $1,774.20

Donley was a Cook sales representative to the facility where Ms. Brand's IVC filter was implanted, and she testified about Cook's interactions with Dr. Rheudasil.  At the time of the deposition, it was necessary for Ms. Brand to discover information about the interaction between Donley and Dr. Rheudasil, including what she told Dr. Rheudasil about the IVC filter type implanted in Ms. Brand.  Copies of Senker's deposition were also necessary for use in response to Cook's Motion in Limine.

### G.13.   Dr. Michael Ferrante:  $960.00

Dr. Ferrante was hired by Cook and designated by Cook as a testifying expert witness. This transcript was necessary because counsel for Ms. Brand did not know which of Cook's designated testifying experts Cook would actually call to testify live or via deposition at trial. Thus, the cost of the deposition of Dr. Ferrante was necessary for trial preparation.  Dr. Ferrante's deposition was also necessary because it was the subject of pre-trial motions.

### G.14. Dr. Michael Fishbein: $719.20

Cook noticed the deposition of Dr. Fishbein and used its own court reporting service, Veritext. Dr. Fishbein is Plaintiff's expert pathologist regarding the Cook animal study. Plaintiff needed copies of this deposition to effectively prepare Dr. Fishbein for cross-examination at trial. It is frivolous for Cook to object in total to the cost of an expert witness deposition noticed and taken by Cook.

### G.15. Bruce Fleck: $4,829.20

Bruce Fleck was Cook's Project Manager for IVC filters. He was the head of marketing of the Celect IVC filter during the relevant time period. Fleck was one of the most important figures in Ms. Brand's case, and his deposition was necessary at the time it was taken. His deposition testimony was relied upon by numerous experts in this case. As the Court may recall, to shorten the trial and for efficiency purposes, counsel for Ms. Brand and Cook entered into an agreement whereby certain documents and emails would be admitted into evidence so that Mr. Fleck would not testify at the trial. Cook recognizes it was necessary to obtain copies of these depositions by submitting a cost proposal nearly identical to Plaintiff's.

### G.16. Dr. Christy Foreman: $3,390.75

Dr. Foreman was Cook's FDA expert who testified at trial. Plaintiff needed copies of this deposition for trial preparation and cross-examination.

### G.17. Mark Frye: $2,633.10

Frye was the project leader for the Celect filter in the United States. He helped design the Celect Filter. His deposition was necessary because it was relied upon by Plaintiff's expert Dr. McMeeking. Cook recognizes it was necessary to obtain copies of these depositions by submitting a cost proposal nearly identical to Plaintiff's.

### G.18.   Dr. Jon Fryzek:  $1,431.55

Dr. Fryzek was Cook's expert epidemiologist who testified at trial.  Copies of Dr. Fryzek's deposition were necessary for trial preparation and for cross-examination.  Cook and Plaintiff agree on the deposition cost for Dr. Fryzek.

### G.19.   Dr. James Gardner:  $1,518.30

Dr. Gardner was Cook's medical science officer who acknowledged that IVC filters have no proven efficacy.  Dr. Gardner's emails were critical to Plaintiff's case, and a number of his emails were admitted into evidence at trial.  Dr. Gardner's deposition testimony and his emails were relied upon by Plaintiff's experts.

### G.20.   Dr. David Gillespie:  $2,838.75

Dr. Gillespie was Cook's vascular surgeon expert witness who testified at trial.  Copies of Dr. Gillespie's deposition were necessary for trial preparation and for cross-examination.

### G.21.   Dr. Gregory Gordon:   $2,092.00

Cook noticed the deposition of Dr. Gordon and used its own court reporting service, Veritext.  Dr. Gordon was Plaintiff's radiologist who testified live at trial.  His deposition was necessary for trial preparation.  It is difficult to understand how Cook could object in total to the cost of an expert witness deposition noticed and taken by Cook – especially since this witness testified at trial.[6]

### G.22   Dr. Dennis Griffin:   $2,538.00

Dr. Griffin was Cook's interventional radiologist and reviewed Ms. Brand's radiology films.  After reviewing Ms. Brand's radiology films, Dr. Griffin wrote a report at the request of Cook.  Dr. Griffin's findings were relied upon by multiple experts in the case, including Dr.

---

[6] As an aside, it is internally inconsistent for Cook to object to some deposition costs because the witness did not testify at trial, and at the same time object to other deposition costs when the witness did testify at trial.

Krumholz and Dr. Gordon.  Dr. Griffin's depositions were necessary for trial preparation and preparation of these expert witnesses.

### G.23.  Henrick Gyllun: $2,661.10

Gyllun worked in quality assurance for William Cook Europe.  Gyllun testified live at trial concerning Cook's claims handling process.  Plaintiff needed copies of this deposition for trial preparation and cross-examination.

### G.24.  Rita Harden: $2,619.90

 Ms. Harden worked in Cook's quality assurance department in the United States.  She helped explain Cook's complaint handling process.  Ms. Harden's testimony was relied upon by multiple expert witnesses and necessary for trial preparation.

### G.25.  Kem Hawkins: $2,332.50

Hawkins was a former Cook President and author of the "keep the foot to the gas pedal" email, which was admitted at trial.  Cook told Plaintiff's counsel that they intended to call Hawkins as a witness at trial.  Thus, the Hawkins deposition was necessary for trial and cross-examination preparation.  Cook recognizes it was necessary to obtain copies of these depositions by submitting a cost proposal nearly identical to Plaintiff's.

### G.26.  Theodore Heise: $2,463.75

Heise was Cook's U.S. Director of Regulatory Affairs.  As the Court may recall, Heise was a key figure and witness in this case.  For the sake of efficiency, Plaintiff agreed not to call Heise as a live witness, but instead offered into evidence documents and emails authored by Heise. Heise's deposition was necessary for trial preparation and cross-examination of other witnesses called by Cook.  Cook recognizes it was necessary to obtain copies of these depositions by submitting a cost proposal nearly identical to Plaintiff's.

### G.27. Per Hendricksen: $2,523.15

Hendricksen was the project leader for the Celect IVC filter at William Cook Europe. He is the holder of the patent for the Celect filter. Hendricksen testified live at trial, and his emails were admitted into evidence. Copies of Hendricksen's deposition were necessary for trial preparation.

### G.28. James Bernard Hunt: $1,598.05

Hunt is Associate General Counsel for Cook and testified regarding Cook's document retention policies and the authenticity of certain documents. His deposition was necessary at the time it was taken in an effort for Plaintiff to determine the scope of documents in the case and to determine Cook's document retention policies. Plaintiff also used copies of Hunt's deposition for cross-examination and trial preparation. *See Endress,* 922 F.Supp. at 161 (Cost of deposition which appeared to be reasonably necessary at time taken taxed even if not used at trial); *Capps,* 2017 WL 1178254, at *2 ("expenses of discovery depositions shown to be reasonably necessary to the case are recoverable even if the depositions are not used as evidence at trial.").

### G.29. Lyke Sylow Iversen: $2,360.00

Ms. Iversen was involved in complaint handling at William Cook Europe and wrote portions of Ms. Brand's complaint report. Iversen testified live at trial concerning the methodology of claims handling by William Cook Europe. Copies of her deposition were necessary for trial preparation and cross-examination.

### G.30. Anna Jessen: $2,592.10

Jessen worked in the Regulatory Affairs department at William Cook Europe and was instrumental in complaint handling. Her deposition was necessary when taken to determine

Cook's complaint handling policies. Apparently, Cook agrees that Jessen's deposition was necessary when taken, because Cook has submitted an allowable cost for this deposition.

### G.31. Dr. John Kaufman: $2,842.90

Dr. Kaufman is an interventional radiologist from the Dotter Institute designated as a non-retained expert by Cook. Dr. Kaufman was on Cook's witness list and his deposition was taken in anticipation of his testimony at trial. Thus, copies of his deposition were necessary to prepare for trial and for cross-examination, and this deposition was necessary when taken. Cook recognizes it was necessary to obtain copies of this deposition by submitting a cost proposal nearly identical to Plaintiff's.

### G.32 Dr. Scott Keller: $337.50

Dr. Keller was one of Tonya Brand's treating physicians. Cook noticed the deposition of Dr. Keller and used its own court reporting service, Veritext. Plaintiff needed the transcript because it was unknown how or if Cook would use the deposition at trial. In fact, Cook named Dr. Keller as a witness and designated his deposition testimony for trial.

### G.33. Dr. Harlan Krumholz: $1,807.75

Dr. Krumholz was Plaintiff's expert who testified live at trial for three days. Cook noticed the deposition of Dr. Krumholz and used its own reporting service, Veritex. Copies of Dr. Krumholz's deposition were necessary for witness preparation and for trial preparation. It strains credulity to think that Cook would object to deposition copies of one of Plaintiff's main expert witnesses. Further, it is hard to imagine how Cook would expect Plaintiff's counsel to prepare for trial without these important deposition transcripts.

### G.34.   April Lavender:  $3,302.50

Ms. Lavender was involved in Cook's U.S. Department of Regulatory affairs, and she testified concerning the 510(k) process by which the Celect IVC filter was cleared by the FDA. Lavender's deposition was necessary at the time it was taken, as Cook recognizes by submitting an allowable cost for her deposition.

### G.35.   Dr. Alan Litsky:  $982.15

Cook noticed the deposition of Dr. Alan Litsky and used its own court reporting service, Veritext.  Plaintiff needed copies of the transcript because it was unknown how or if Cook would use the deposition at trial.  Dr. Litsky served as Plaintiff's expert physician/engineer.  He is a biomechanical engineer at Ohio State University.  Dr. Litsky examined Tonya Brand's IVC filter under an electron microscope.  His deposition was relied upon by several experts, including Dr. McMeeking.

### G.36.   Dr. Robert McMeeking:  $2,471.50

Cook noticed the deposition of Dr. McMeeking and used its own court reporting service, Veritext.  Dr. McMeeking is Plaintiff's expert mechanical engineer.  He testified live at trial. Cook and Plaintiff agree that the allowable cost for Dr. McMeeking's deposition is $2,471.50.

### G.37.   Dr. Timothy Morris:  $1,944.50

Dr. Morris was Cook's expert pulmonologist who testified at trial.  Copies of his deposition were necessary for trial preparation and cross-examination.

### G.38.   Dr. Thomas Morrison:  $976.50

Dr. Morrison was Tonya Brand's back surgeon.  Dr. Morrison's deposition was played at trial.  The Court may recall that Plaintiff's counsel was prepared to call Dr. Morrison as a live

witness at trial, and counsel for Cook objected.   Copies of Dr. Morrison's deposition were necessary for trial.

### G.39.   Arne Molgaard -Nielson:  $4,342.30

Molgaard-Nielson was William Cook Europe's Director of Research and was directly involved in the development of the Celect filter.   Cook wanted to call Molgaard-Nielson as a live witness at trial, but then stated that he was unavailable.   Fortunately, Plaintiff's counsel had obtained copies of the depositions, and played them at trial.   Thus, copies of these depositions were necessary for trial preparation and trial presentation.

### G.40.   Mette Neiendam Nielson:  $2,301.25

Neiendam-Nielson was one of the heads of Regulatory Affairs for William Cook Europe. In her deposition testimony, she discussed how Cook intentionally falsified categories of complaints regarding the IVC filter.   Her deposition was necessary at the time it was taken, as Cook acknowledges by submitting its own cost proposal regarding copies of this deposition.

### G.41.   Dr. Richard Reisman:  $1,844.55

Dr. Reisman was one of Tonya Brand's treating physicians.   Cook noticed the deposition of Dr. Reisman and used its own court reporting service, Veritext.   Plaintiff needed the transcript because it was unknown how or if Cook would use the deposition at trial.   In fact, Cook named Dr. Reisman as a witness and designated his deposition testimony for trial.

### G.42.   Dr. Kenneth Renkins:  $1,152.50

Dr. Renkins is a spinal surgeon retained by Cook and designated by Cook as a testifying expert in this case.   Dr. Renkins testified live at trial.   Copies of his deposition were necessary for trial preparation and cross-examination.

### G.43.   Dr. Mark Rheudasil: $1,710.60

Dr. Rheudasil was the physician who implanted Tonya Brand's IVC filter.  Cook noticed the deposition of Dr. Rheudasil and used its own court reporting service, Veritext.  In fact, Cook played Dr. Rheudasil's deposition at trial, thereby rendering copies of his deposition necessary. Incredibly, Cook has objected to Plaintiff's recovery of any costs related to Dr. Rheudasil's deposition.  This serves to further illustrate the unreasonableness of Cook's objection.

### G.44.   Tom Roberts: $2,806.70

Roberts is a Cook employee in charge of quality assurance and compliance in the United States.  Cook called on Roberts to testify live at trial.  Plaintiff needed copies of his deposition to prepare for trial and for use during cross-examination.

### G.45.   Dr. Scott Robertson: $6,283.30

Dr. Robertson is a Cook design engineer who testified live at trial.  Copies of his deposition were necessary for trial preparation and cross-examination.

### G.46.   Darrel Talbert: $5,990.00

Talbert testified as a Cook corporate representative.  He replaced Bruce Fleck as Project Manager for Cook IVC filters.  Talbert testified live at trial.  Plaintiff's counsel needed copies of Talbert's depositions for cross-examination and trial preparation.

### G.47.   Dr. Phu Thai: $1,189.75

Dr. Thai is a treating physician for Tonya Brand.  Cook noticed the deposition of Dr. Thai and used its own court reporting service, Veritext.  Plaintiff needed the transcript because it was unknown how or if Cook would use the deposition at trial.  In fact, Cook named Dr. Thai as a witness and designated his deposition testimony for trial.

### G.48.   Jesper Thyregod:  $2,847.70

Thyregod is a Cook engineer.  Several testifying experts relied upon his testimony and documents in formulating their opinions and testimony for trial.  Cook acknowledges the necessity of these depositions by submitting its own cost proposal for Mr. Thyregod's testimony.

### G.49.   Dr. Paul Timperman:  $4,714.85

Dr. Timperman is an intervention radiologist retained by Cook.  He generated opinions as to how Tonya Brand's IVC filter broke inside her body.  Dr. Timperman's depositions were played at trial, and were therefore necessary.

### G.50.   Dr. Raman Uberoi:  $4,813.80

Cook designated Dr. Uberoi as a non-retained testifying expert.  Dr. Uberoi was an author of the Lyon study, a participating physician in the OUS study, and he oversaw the British Registry. Counsel for Ms. Brand was forced to travel to London to take Dr. Uberoi's deposition.   Dr. Uberoi's deposition was played at trial.   Copies of his deposition were necessary for trial preparation and numerous motions.

### G.51   William Voorhees:  $2,111.70

Voohees is a Cook employee who oversaw product testing on the Celect IVC filter and other Cook products.  Cook called Voorhees to testify as a live witness at trial.  Plaintiff needed copies of the Voorhees deposition to prepare for trial and for use during cross-examination.

### H.      Exemplification and Copying Costs:  $165,146.55

The expenses of copying materials reasonably necessary for use in a case are recoverable costs under 28 U.S.C. § 1920(4)." *M.T. Bank Co. v. Milton Bradley Co.,* 945 F.2d 1404, 1410 (7th Cir. 1991).  One court in the Southern District of Indiana has described this cost recovery threshold as "modest." *Patel v. Menard, Inc.,* 2012 WL 1365434, at *4 (S.D. Ind. April 19, 2012).  Contrary

to Cook's Objection, "[t]here is no requirement that a party seeking to recover the costs of photocopies must specifically state what papers were copied, why they were copied, and how they were used in the case; rather the party must only 'provide the best breakdown obtainable from retained records." *Patel v. Menard, Inc.,* 2012 WL 1365434, at *4, quoting *Northbrook Excess & Surplus Ins. Co. v. Proctor & Gamble Co.,* 924 F.2d 633, 642-43 (7th Cir. 1991); *see also Halasa v. ITT Educational Services, Inc.,* 2012 WL 639520, at *4 (S.D. Ind. Feb. 27, 2012).   A party seeking cost recovery for copies is not required to submit a description "so detailed as to make it impossible economically to recover photocopying costs." *Northbrook,* 924 F.2d at 643.

Likewise, within the Seventh Circuit, costs associated with the production of demonstrative exhibits are taxable.   *Endress & Hauser, Inc. v. Hawk Measurement Sys. Pty., Ltd.,* 922 F.Supp. 158, 162 (S.D. Ind. 1996).   "Costs for the copying and collating of exhibits and *graphics charges* fall squarely within [the language of Section 1920(2)]." *Haroco, Inc. v. American National Bank and Trust Co. of Chicago,* 38 F.3d 1429, 1441 (7th Cir. 1994) (emphasis added); *Endress,* 922 F.Supp. at 162.   Thus, there is no doubt that Ms. Brand may recover her costs for exhibits and graphics utilized to aid the jury and the Court.

Ms. Brand agrees with Cook that costs related to airfare, hotels and other travel costs are generally not recoverable.   Plaintiff also agrees that costs for a copying machine and shredding services are not recoverable.   Ms. Brand has subtracted the costs for these items from its original submission to the Court.   Ms. Brand is no longer seeking $5,090.51 for the cost of renting printers from Van Ausdall and Farrar, Inc.; $870.00 for shredding services from Van Ausdall and Farrar, Inc.; $199.48 for printer toner; and $14,513.17 from Platinum Intelligent Data Solutions for deposition and expert report notebooks.   The new dollar totals contained in this Response reflect the subtraction of these expenses.

### H.1.    Courtroom Pixels:  $44,421.64

Courtroom Pixels attended the trial and provided the PowerPoint Presentations for the jury and the Court.  These presentations included graphics for Counsel's opening statement and closing argument.  Courtroom Pixels also prepared graphics for experts, such as Dr. Gregory Gordon and Dr. Harland Krumholz.

Importantly, as the Court is well aware, the Cook Defendants had their own graphics technician providing PowerPoint Presentations to the Court and the jury.  It is highly disingenuous for Cook to complain that Plaintiff's graphics presentations were somehow unreasonable or unnecessary.

As previously mentioned, Ms. Brand has deducted from her prior submission various travel costs and other nonrecoverable expenses.  This reduces the taxable costs for Courtroom Pixels from $50,613.37 to $44,421.64.  The Court should award Ms. Brand $44,421.64.

### H.2.    Courtroom Concepts:  $71,897.00

Courtroom Concepts developed and produced the animations played to the jury and the Court at trial.  These animations were necessary to illustrate for the jury and the Court how the Cook IVC filter failed inside Tonya Brand's body, thereby causing her painful injuries.

The Court may recall that the Cook Defendants played numerous animations at trial, which Plaintiff believes cost many hundreds of thousands of dollars.  Plaintiff's animations total a mere fraction of that cost.  Moreover, it would be incredibly unbalanced for the Cook Defendants to play their numerous animations while not allowing Ms. Brand to play any of her own.  It is intellectually dishonest for the Cook Defendants to complain about these costs, when the Cook Defendants found it reasonable and necessary to produce their own animations at considerably higher cost.

Ms. Brand has deducted from her previous submission amounts related to travel and other non-taxable costs.  This reduces the taxable amount for Courtroom Concepts from $75,587.00 to $71,897.00.  The Court should award Ms. Brand $71,897.00.

### H.3.    Van Ausdall and Farrar, Inc.:  $16,586.08

Van Ausdall and Farrar, Inc. ("Van Ausdall") produced all of the blowups and enlargements of demonstrative exhibits for trial.  The work performed by Van Ausdall included various charts, along with enlargements of documents from the Cook Defendants' document production.  Counsel for Ms. Brand used Van Ausdall's work to simplify complex subjects for the jury.  Again, the Cook Defendants utilized the same strategy in their presentations to the jury and the Court.  Therefore, it is difficult to understand how the Cook Defendants can argue with a straight face that these enlargements are not reasonable, necessary, and therefore, taxable costs.

Moreover, as previously discussed, the Seventh Circuit has held squarely that costs for demonstrative exhibits and graphics are taxable within 28 U.S.C. 1920(3).  *See Haroco, Inc. v. American National Bank and Trust Co. of Chicago,* 38 F.3d 1429, 1441 (7th Cir. 1994).  Therefore, the Court should aware Ms. Brand $16,586.08.

### H.4.    Elite Document Technology:  $29,892.02

Elite Document Technology made copies of printed transcripts for Plaintiff's use in the jury trial.  Plaintiff necessarily had to provide one copy of the deposition to each witness, one copy of the deposition to the Cook Defendants, and one copy of the deposition to the Court.  The deposition copies were necessary for cross-examination, impeachment, and witness preparation.  Moreover, counsel for Ms. Brand did not know which witnesses the Cook Defendants would actually call to testify at trial.  Therefore, counsel for Ms. Brand needed copies of each printed transcript to be prepared for any eventuality.

**H.5.    Medical Records:  $2,349.81**

Plaintiff incurred the following costs in connection with obtaining her medical records:

HIM Quality Solutions $197.75;  MRO $235.76;  CARS $244.19;  Ciox Health $2.49;  Lexitas $1,549.97;  Noble Research Corporation $119.65.

Plaintiff had previously submitted receipts for HIM Quality Systems, Inc. and MRO.  Cook did not object to those costs.  Plaintiff attaches as Exhibit B the invoices for the remaining vendors who furnished copies of medical records.

**CONCLUSION**

In accordance with Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920, the Court should award Plaintiff Tonya Brand costs totaling $332,585.82.

Dated: May 10, 2019            By:        */s/ Ben C. Martin*_____
                                          Ben C. Martin, Esq.
                                          The Law Office of Ben C. Martin
                                          3710 Rawlin Street, Suite 1230
                                          Dallas, TX 75219
                                          Telephone: (214) 761-6614
                                          Facsimile: (214) 74407590
                                          Email: bmartin@bencmartin.com

**COUNSEL FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on May 10, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

*/s/ Ben C. Martin*_____
Ben C. Martin