IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE:  COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB MDL No. 2570 |

This Document Relates to All Actions

## Plaintiffs' Steering Committee's Bench Brief on *Lexecon* and the Bellwether Selection Process

As the Court is now aware, no Category 5 or 6 plaintiffs have executed an express *Lexecon* waiver or otherwise intentionally waived the requirement that at the close of pretrial proceedings the MDL court remand their cases to their originating jurisdictions for trial.  The Plaintiffs' Steering Committee ("PSC") anticipates that Cook will oppose Plaintiffs' choice to try their cases in the transferor jurisdictions or the designated place of proper venue set forth in the Court-approved short form complaint by seizing upon the direct-filed status of many Plaintiffs' cases.  It is anticipated that Cook will posit that *Lexecon* is inapplicable to direct-filed cases, that waivers are unnecessary, and that this Court may proceed to try any direct-filed case regardless of Plaintiffs' wishes.  As shown by this bench brief, filed by the PSC to inform the Court regarding the law and authorities impacting the *Lexecon* rights of Plaintiffs whose cases were direct-filed into the MDL, Cook is wrong.

# Law and Analysis

## A. Section 1407's Requirement that Cases Be Remanded for Trial is Mandatory.

The MDL system was created by an Act of Congress (i.e., 28 U.S.C. § 1407) and its powers are limited by that statute. The express language of the MDL statute provides that cases "**shall be remanded** by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated." 28 U.S.C. § 1407(a)(emphasis added).  In *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach,* the Supreme Court recognized that the language of Section 1407 is mandatory and "creates an obligation impervious to judicial discretion." 523 U.S. 26, 35 (1998) (quotation omitted).  As a result, the Court went on to forbid the once common practice of MDL courts "self-transferring" cases for trial.  *Id.*

## B. By Filing Complaints Directly In the MDL *With Express Statements Preserving Their Lexecon Rights,* Plaintiffs Did Not Clearly and Unambiguously Waive their *Lexecon* Objections.

Cook is anticipated to argue that direct filing a case in the Southern District of Indiana implies an intent to waive *Lexecon* rights. One thing is clear: "a *Lexecon* waiver must be clear and unambiguous." *In re DePuy Orthopaedics, Inc.*, 870 F.3d 345, 351 (5th Cir. 2017). It is one thing to say that a party is allowed to knowingly and voluntarily waive its right to remand and consent to trial in the MDL court.  It is a wholly different thing, however, to **infer** a waiver and consent from mere conduct.

And it requires yet another leap beyond that to infer a clear and unambiguous *Lexecon* waiver from direct filing **in the face of express language in Plaintiffs' complaints preserving their *Lexecon* rights**.

Judge Fallon, drawing upon his experience in the Vioxx and Propulsid MDLs, noted that a direct-filed-plaintiff can "potentially preserve his *Lexecon* objection by making a notation of such in his complaint." Eldon E. Fallon, et al., *Bellwether Trials in Multidistrict Litigation*, 82 Tulane L. Rev. 2323, 2357 n.116 (2008). Judge Fallon explained that direct filing provides a considerable convenience for all involved when compared to the traditional practice of filing a case in its home venue and then waiting out the conditional transfer process. To allow the parties to enjoy this convenience, but still maintain the plaintiffs' ability to try their cases at home, Judge Fallon suggests that plaintiffs including language preserving a *Lexecon* objection in their complaints. Plaintiffs followed Judge Fallon's suggestion here.

Plaintiffs' Master Complaint states:

> 27.   For purposes of remand and trial, venue is proper pursuant to 28 U.S.C. § 1391 in the federal judicial district of each Plaintiff's state of residence.

[Filing No. 213, at ECF p. 1055.] This language is specifically incorporated into every short form complaint by reference. [*See, e.g.,* Filing No. 214, at ECF p. 1087.]

To further support the fact that Plaintiffs never intended direct filing to be a waiver of their *Lexecon* rights, the short form complaint included a statement specif-

ically identifying the "district court and division in which venue would be proper absent direct filing" and the "paragraphs in Master Complaint upon which venue and jurisdiction lie." [*Id*.]

By way of example, Plaintiff Stephen Armstrong (a Category 6 Tulip case) provided the following in his short form complaint:

7. District Court and Division in which venue would be proper absent direct filing: Michigan Western District Court, Kalamazoo

8. Defendants (Check Defendants against whom Complaint is made):

☑ Cook Incorporated

☑ Cook Medical LLC

☑ William Cook Europe ApS

9. Basis of Jurisdiction:

☑ Diversity of Citizenship

☐ Other: _____

a. Paragraphs in Master Complaint upon which venue and jurisdiction lie: Venue: Paragraph 27

Subject Matter Jurisdiction: Paragraph 23

Personal Jurisdiction: Paragraphs 24 and 26

[Civil Case No. 1:17-cv-4515, Filing No. 1, at ECF p. 2 (highlighting added).][1]

---

[1] Again, paragraph 27 of the Master Complaint states that venue is appropriate for trial in the "federal judicial district of each Plaintiff's state of residence." [Filing No. 213, at

Plaintiff Edwin Fort, IV (a Category 6 Celect case)—again, by way of example—similarly preserved his *Lexecon* rights with specific language regarding his home venue:

7.   ==District Court and Division in which venue would be proper absent direct filing:==

==United States District Court for the Eastern District of Pennsylvania==


8.   Defendant (Check Defendants against whom Complaint is made):

☒   Cook Incorporated

☒   Cook Medical LLC

☒   William Cook Europe ApS

9.   Basis of Jurisdiction

☒   Diversity of Citizenship


a.  Paragraphs in Master Complaint upon which venue and jurisdiction lie:

Paragraphs 1 through 8;11 of the Master Complaint.

b.  ==Other allegations of jurisdiction and venue==

==A substantial portion of the events leading to Plaintiff's injuries arose in Pennsylvania==

==making venue proper.==

ECF p. 1055.] A complete copy of Mr. Armstrong's short form complaint is attached as **Exhibit A.**

[Civil Case No. 1:18-cv-290, Filing No. 1, at ECF p. 2 (highlighting added).][2] Given that a *Lexecon* waiver "must be clear and unambiguous," *In re DePuy Orthopaedics, Inc.*, 870 F.3d at 351, Messrs. Armstrong and Fort (and others like them) unequivo-cally preserved their *Lexecon* objection by stating that venue was proper in their "home" venues.

## C. This Court Has Previously Recognized the *Lexecon* Rights of Direct-Filed Plaintiffs.

If Plaintiffs' express preservation of their *Lexecon* rights weren't enough, this Court recognized in CMO #5 that **every** case had *Lexecon* rights that had to be waived before any case could be tried as a bellwether. [*See* Filing No. 355, at ECF p. 1752.] CMO #5 (specifically its amendment at Filing No. 355) created a bellwether selection process that began with the creation of a discovery pool. Recognizing that the cases—including direct-filed cases—could not sit as a bellwether trial unless *Lexecon* objections had been waived, the Court required such waivers be confirmed by Plaintiffs for **all** the discovery pool cases – regardless of whether the case arrived at the MDL court by way of transfer or direct filing:[3]

> C.    **Waiver of Lexecon is confirmed by Plaintiffs for the Discovery Pool cases only. Nothing in this Case Management Order or otherwise shall indicate a waiver of Lexecon as to the remaining cases.**

[ *Id.*, at ECF p. 1752.]

---

[2] A complete copy of Mr. Fort's short form complaint is attached as **Exhibit B.**

[3] As part of the bellwether selection process that generated the *Hill, Gage,* and *Brand* cases, MDL leadership obtained *Lexecon* waivers for those cases only. By Court order, how-ever, these waivers "shall not indicate a waiver of *Lexecon* as to the remaining cases." [*Id.*]

To ensure clarity, CMO #5 specifically states that it applies to the following:

> (1) All cases transferred to this court by the Judicial Panel on Multidistrict Litigation, including those cases identified in the original Transfer Order and those subsequently transferred as tag along actions; **and**

> (2) **All cases directly filed** or removed to this MDL.

[*Id.*, at ECF p. 1748 (emphasis added).] If the Court did not believe that direct-filed cases were subject to Section 1407's requirement that they be remanded to their originating jurisdictions for trial, there would have been no reason to require *Lexecon* waivers from direct-filed Plaintiffs.

## C. The Seventh Circuit Has Recognized that Direct-Filed Cases Have an Originating Jurisdiction.

The notion that direct-filed cases are differently situated than transferred cases is a fiction. This court should not be deemed to be the "transferor court" simply by virtue of the fact that actions were directly filed **into the MDL** in this district. Plaintiffs direct filed their actions **in MDL 2570** to eliminate the expense and delay associated with the transfer of cases filed in other federal district courts. The direct filing of actions in MDL 2570 was solely for the purposes of consolidated discovery and pretrial proceedings as provided by Section 1407.

Courts have already begun moving away from the contrived notion that just because a case was filed directly into the MDL (and therefore had no transferor court), it has no originating forum other than the MDL court. For instance, it used to be that conflict of law determinations were made using the choice-of-law rules of the transferor forum for transferred cases and the choice-of-law rules of the MDL court for

7

direct filed cases. But more recent cases have taken the view that the substantive law of direct-filed cases is to be determined by the choice-of-law rules of the state where the claim originated.[4]

The Seventh Circuit has adopted the modern view and holds that foreign cases filed directly in a district court as a part of ongoing MDL are to be treated as having originated outside of that district. *Dobbs v. DePuy Orthopedics, Inc.,* 842 F.3d 1045 (7th Cir. 2016) ("[D]istrict courts in our circuit have taken that approach:  foreign cases filed directly in a district court as part of an ongoing multidistrict litigation are treated as having originated outside of that district.  We ratify that approach here … ." ). *See also In re Watson Fentanyl Patch Prods. Liab. Litig.,* 977 F. Supp. 2d 885,

---

[4] *E.g., In re Watson Fentanyl Patch Prods. Liab. Litig.,* MDL No. 2732, 2013 WL 4564927, at *2 (N.D. Ill. Aug. 27, 2013) ("Indeed, the prevailing rule in this situation is that in a case that was directly filed in the MDL transferee court but that originated elsewhere, the law (including the choice of law rules) that applies is the law of the state where the case originated."); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.,* 2011 WL 1375011, at *6 ("[T]he Court concludes that the better approach is to treat foreign direct filed cases as if they were transferred from a judicial district sitting in the state where the case originated."); *Wahl v. Gen. Elec. Co.,* No. 3:13–CV–0329, 2013 WL 604818, at *4 (M.D. Tenn. Nov. 14, 2013) ("Most of the courts that have considered this peculiar procedural posture have stated that it is appropriate to apply the choice of law rules of the 'originating' jurisdiction (i.e., where the case would have [been] brought but for the CMO permitting direct filing), rather than the choice of law rules of the MDL Court."). *In re Bausch & Lomb Inc. Contacts Lens Solution Prods. Liab. Litig.,* MDL No. 1785, 2007 WL 3046682, at *3 (D.S.C. Oct. 11, 2007) (noting that "it would be an odd result to subject plaintiffs to [the law of the MDL forum] simply because they took advantage of the direct filing procedure—a procedure that provides benefits to all parties and preserves judicial resources"); *In re Avandia Mktg, Sales Practices & Prods. Liab. Litig.,* No. 07–MD–01871, 2012 WL 3205620, at *2 (E.D. Pa. Aug. 7, 2010) ("The Court has concluded, as have other MDL courts, that such cases should be governed by the law of the states where Plaintiffs received treatment and prescriptions for Avandia. This ruling will promote uniform treatment between those Plaintiffs whose cases were transferred into the MDL from their home states and those Plaintiffs who filed directly in the MDL."); *In re Fresenius Granuflo/NaturaLyte Dialysate Products Liability Litigation,* 76 F. Supp. 3d 294 (D. Mass. 2015).

888–89 (N.D. Ill. 2013); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.,* No. 3:09–MD–02100–DRH, 2011 WL 1375011, at *5 (S.D. Ill. Apr. 12, 2011).

It would be inconsistent for the Court to recognize that direct-filed cases have an "originating" jurisdiction for purposes of choice-of-law determinations while clinging to the fallacy that direct-filed cases have no "originating" jurisdiction[5] for purposes of recognizing a *Lexecon* right to remand.

## Conclusion

The Court is not asked to determine whether the mere act of direct filing a case into an MDL can ever serve to waive a Plaintiff's *Lexecon* rights. The question before the Court is whether direct filing into an MDL serves as clear and unambiguous *Lexecon* waiver where: (1) Plaintiffs included an assertion of *Lexecon* rights in the Short Form and Master Complaints, and (2) the *Lexecon* rights of direct-filed Plaintiffs had been previously acknowledged by Court order. Plaintiffs were clear; they asserted their *Lexecon* rights at the time the complaints were filed. The Court was clear; it recognized those rights.  Those rights should not be cast aside.

---

[5] Courts have taken two different approaches to determining the "originating" jurisdiction for direct-filed cases: (1) focusing on the place the drug/device was prescribed or implanted, or (2) focusing on the court designated by the plaintiff as the place of proper venue. In a recent products liability case, the Seventh Circuit applied the latter view.  *Dobbs v. DePuy Orthopedics, Inc.,* 842 F.3d 1045 (7th Cir. 2016) (noting that the case was filed in Ohio only because the MDL was located there and that the plaintiff's complaint indicated that the Northern District of Illinois as the appropriate venue when opting to apply Illinois' choice of law rules).

Respectfully submitted,

/s/ *Joseph N. Williams*

Joseph N. Williams, Atty. No. 25874-49
RILEY WILLIAMS & PIATT, LLC
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317) 633-5270
Facsimile: (317) 426-3348
Email:        jwilliams@rwp-law.com

*Liaison Counsel to Plaintiffs Steering Committee and on behalf of Plaintiffs Steering Committee*

/s/ *Michael W. Heaviside*

Michael W. Heaviside, Esq.
HEAVISIDE REED ZAIC, A LAW CORPORATION
910 17th Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 223-1993
mheaviside@hrzlaw.com

/s/ *Ben C. Martin*

Ben C. Martin, Esq.
MARTIN BAUGHMAN, PLLC
3710 Rawlins Street, Suite 1230
Dallas, TX 75219
Telephone: (214) 761-6614
Facsimile: (214) 744-7590
bmartin@martinbaughman.com

/s/ *David P. Matthews*

David P. Matthews, Esq.
MATTHEWS AND ASSOCIATES
2509 Sackett St.
Houston, TX  77098
Telephone: (713) 522-5250
Facsimile: (713) 535-7184
dmatthews@thematthewslawfirm.com

*Plaintiffs' Co-Lead Counsel*

### <u>Certificate of Service</u>

I hereby certify that on May 20, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL. Notice will be served on any non-CM/ECF registered parties by first class U.S. Mail, postage prepaid.

/s/ *Joseph N. Williams*
Joseph N. Williams