**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND          Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION            MDL No. 2570

This Document Relates to All Bellwether-Pool
Eligible Cases (i.e. Category 5 and 6 Cases)

**COOK DEFENDANTS' RESPONSE TO PLAINTIFFS'**
**BENCH BRIEF CONCERNING APPLICATION OF *LEXECON***

For well over a year, the Court and the parties have been working toward the selection of

three bellwether trials from Categories 5 and 6 – two "product-in-place"/no injury groups of

cases.  Plaintiffs have known of this Court's intent to do so since February 2018.[1]  Plaintiffs and

their Steering Committee ostensibly have been on board with these efforts, at a minimum, since

the Court entered its October 2, 2018 Order on The Cook Defendant's Motion for Screening

Order and Bellwether Selection Plan (Dkt. 9322).  In fact, just two weeks ago, the PSC sought

and obtained a brief delay in the bellwether selection process based on their representation that

they were committed to implementing the Court's Bellwether Selection Plan.  *See, e.g.,* May 9,

2019 Tr. at 35:23-24 ("***We're not trying to game the system***") (emphasis added).  The PSC

repeatedly assured this Court that with a brief delay they would work to secure *Lexecon* waivers

from the more than 1,400 plaintiffs in the Court's Categories 5 and 6, assuring the following:

---

[1]  *See* Feb. 5, 2018 Tr. at 53:7-16 ("We really need to address the product-in-place cases here somehow. Otherwise we're not going to be able to make much progress… If you come up with a proposal that we try two or three -- two or three product-in-place cases in the next year or two, I'll be happy -- happy to do that.")

> ***And we want to get to trials, too; and to get to these trials***, we have to make sure that the cases that are being selected for the discovery pool are ready to go; and the last thing we want to do is have Your Honor pick 24 cases today and find out that there are some issue two months down the road and have to start over. ***We can get rid of all of that concern if we're just given a couple of weeks, three weeks to talk to these plaintiffs' lawyers*** and figure out whether or not all of this is accurate.

May 9, 2019 Tr. at 36:6-19, 37:12-38:2 (emphasis added).   The PSC members present at the Court's May 9 status conference offered no hint that they intended to recommend to all lawyers in this MDL a global strategy to refuse to waive *Lexecon* in an effort to derail this Court's Bellwether Selection Plan.

On May 20, 2019, the PSC notified the Court of their intent to globally refuse to "waive *Lexecon*" for any case.[2]   The PSC also submitted a bench brief suggesting that Plaintiffs who originally filed their cases in this district – a proper venue for numerous Category 5 and 6 cases – are somehow entitled to "remand" of their cases to other districts that they now say they prefer. Plaintiffs' new position and arguments – offered without explanation as to the change – would of course torpedo the Court's bellwether process; a process that Cook and the Court have been working toward for more than *eight* months and one in which the Court and parties have invested thousands of hours of work.

Setting aside for the moment the implausible "unanimous refusal" asserted in Plaintiffs' bench brief, Plaintiffs' reliance on a supposed right to remand under the *Lexecon* decisions fails as a matter of law.   *Lexecon* rights exist solely by virtue of a transfer pursuant to 28 U.S.C. § 1407(a).   The vast majority of Category 5 and 6 Plaintiffs filed their cases in this proper venue, and thus have no right under *Lexecon* or 28 U.S.C. section 1407(a) to trial in a nonexistent "originating district."   This conclusion is supported by the Judicial Panel on Multidistrict

---

[2]   *See* May 20, 2019 Email from J. Williams to T. Doyle and A. Holtz (notifying the Court that "no plaintiff is willing to waive" *Lexecon*), attached as **Exhibit A**.

US.123216450

Litigation (JPML), by decisions from other district courts, by this Court's comments in earlier hearings, and even by Plaintiffs' own motion to remand. Plaintiffs urged the JPML to create this MDL – suggesting that bellwether trials were essential. Plaintiffs should not now be permitted to use gamesmanship to avoid trials of cases *they filed* in a venue *they requested* and one that *they argued was proper.*

Plaintiffs' actions are an overt attempt to ignore the Court's authority to select and try representative bellwether cases. The PSC's strategy of asserting a global refusal to waive alleged *Lexecon* rights for more than 1,400 cases threatens to derail the Court's entire Bellwether Selection Plan and is pure gamesmanship. The Court should reject these disingenuous and bad-faith tactics in the strongest terms, choose its Bellwether Discovery Pool consistent with CMO-25's Bellwether Selection Plan, and amend CMO-25 to add provisions that encourage cooperation with the Court's Bellwether Selection Plan.

## ARGUMENT

### I.   *Lexecon* Does Not Apply to Cases Filed in the Proper Venue

Plaintiffs' bench brief concerning "*Lexecon* and the Bellwether Selection Process," Dkt. 10715, fundamentally misunderstands both 28 U.S.C. section 1407 and the Supreme Court's application of that statute in *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998). By their terms, section 1407 and *Lexecon* apply *only* to cases that have been *transferred* to an MDL court by the JPML, as numerous courts and the JPML have made clear. In the Cook MDL, numerous Category 5 and 6 cases were *not* transferred by the JPML pursuant to section 1407, but were instead originally and properly filed in this Court. Although the parties may one day differ about whether the cases should be transferred to another venue pursuant to section 1404, section 1407 and *Lexecon* simply ***do not apply*** to those cases. As this Court noted during the April 2019 status conference (among others), not one of

US.123216450

those cases can be "remanded…to the district court from which it was transferred," 28 U.S.C. § 1407(a), because none of them were transferred from any other district court. Plaintiffs' invocation of "the *Lexecon* rights of Plaintiffs whose cases were direct-filed into the MDL," Dkt. 10715 at 1, relies on "rights" that do not in fact exist. This conclusion is supported by the language of section 1407(a), by the *Lexecon* decision itself, by the JPML, by numerous federal courts that have considered the issue, by this Court in previous discussions with the parties' attorneys, and even by Plaintiffs' own statements in their pending motion to remand.

**A.**   **Section 1407(a) and *Lexecon* do not apply to cases that were originally filed in this District rather than being transferred by the JPML.**

Contrary to Plaintiffs' assertion, numerous Category 5 and 6 Plaintiffs do not have and have never had any rights pursuant to section 1407 or *Lexecon* because their actions were not transferred to this district pursuant to section 1407. Both the language of section 1407 and the Supreme Court's interpretation of that section in *Lexecon* make that clear.  Section 1407 states in relevant part:

> When civil actions involving one or more common questions of fact are ***pending in different districts, such actions may be transferred*** to any district for coordinated or consolidated pretrial proceedings.  … Each action ***so transferred*** shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated.

28 U.S.C. § 1407(a) (emphases added).  The remand obligation in the second quoted sentence, by its plain language, applies only to actions "so transferred," that is, actions transferred from another district under the authority granted in the first quoted sentence.  Indeed, the section's use of the term "remand" dictates this meaning; a case cannot be "remanded" to a court where it was never pending.  *See* Black's Law Dictionary (10th ed. 2014) (defining verb "remand" as "[t]o send (a case or claim) ***back to the court or tribunal from which it came*** for some further action" (emphasis added)).  This Court noted as

much during the April 2019 status conference.  *See* April 29 Tr. at 59:17-18 ("Sounds like a lot of these cases I'd be transferring these cases to myself.").[3]

The Supreme Court's holding in *Lexecon* is entirely consistent with this unambiguous statutory language.  In *Lexecon*, the Supreme Court addressed the question of whether an MDL court could assign a JPML-transferred case to itself for trial under section 1404(a), the general "Change of Venue" statute.  *See* 523 U.S. at 40-41.  The Court ruled that an MDL court has no such power, holding that the "shall" language of section 1407(a) mandating remand of transferred cases for trial absent an agreement by both parties to waive venue.  The Court quoted and relied on the "so transferred" language in its explanation of its analysis:

> "***Each action so transferred*** shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated." § 1407(a) (proviso without application here omitted).
>
> The Panel's instruction comes in terms of the mandatory "shall," which normally creates an obligation impervious to judicial discretion.  …. In the absence of any indication that there might be circumstances in which ***a transferred case*** would be neither "terminated" nor subject to the remand obligation, then, the statutory instruction stands flatly at odds with reading the phrase "coordinated or consolidated pretrial proceedings" so broadly as to reach its literal limits, allowing a transferee court's self-assignment to trump the provision imposing the Panel's remand duty. If we do our job of reading the statute whole, we have to give effect to this plain command…..

523 U.S. at 35 (emphasis added, citations omitted).  Nothing in the *Lexecon* decision suggests that section 1407(a) is applicable to *non*-transferred cases originally filed in the MDL court, and the *Lexecon* decision certainly does not grant such plaintiffs any "right" to transfer from a proper venue they selected themselves to a remote venue they may later decide they prefer for trial.

---

[3]  This is a straightforward question of statutory interpretation.  And, when the text of a statute is unambiguous like section 1407 here, the Court need not go any further.  *See BedRoc Ltd., LLC v. U.S.,* 541 U.S 176, 183 (2004) ("[O]ur inquiry begins with the statutory text, and ends there as well if the text is unambiguous."); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 433 (1999) ("This court's review of respondents' claims begins with the statutes' language.  Where that language provides a clear answer, it ends there as well.") (internal citations omitted).

US.123216450

In sum, both the plain language of section 1407(a) and the holding in *Lexecon* limit the right to request remand for trial solely to "transferred" cases that were at one time "pending in different districts." 28 U.S.C. § 1407(a). The "*Lexecon* rights" Plaintiffs attempt to invoke in their bench brief simply do not arise in non-transferred cases. *See, e.g., In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 2012 WL 1580761, at *1 n. 2 (E.D. La. May 4, 2012) ("***Because these are direct filings*** rather than tag-alongs transferred to this Court by the Judicial Panel, ***it does not appear that the Supreme Court's ruling in Lexecon ... is implicated by this Court's direct transfer of these cases***.") (emphasis added); *In re New England Compounding Pharm., Inc.*, 2016 WL 6127261, at *3, 5 (D. Mass Oct. 18, 2016) (suggesting remand in transferred cases and holding that several of the actions at issue "were directly filed in this District, and ***therefore are not subject to § 1407***") (emphasis added); *see also e.g., In re Fosamax Prods. Liab. Litig.*, 2011 WL 1584584, at *1 (S.D.N.Y. Apr. 27, 2011) ("[A] transferee court lacks authority to conduct a trial of an MDL member case not originally filed in the transferee court without the consent of the parties.") (emphasis added); *In re Zimmer Durom Hip Cup Prods. Liab. Litig.*, 2015 WL 5164772, at *3 (D.N.J. Sept. 1, 2015) (same comment as *In re Fosamax*).

In this MDL, numerous Category 5 and 6 cases were originally filed in this proper venue, while others were transferred by the JPML from other districts to this district. Cook does not contest that for cases transferred to this MDL by the JPML, pursuant to section 1407, Plaintiffs possess a *Lexecon* right unless otherwise waived. However, Plaintiffs in cases not transferred pursuant to section 1407 possess no "*Lexecon* rights" as a matter of law. Those Plaintiffs chose to file their cases in this Court; the cases are properly venued in this Court; and neither section 1407 nor *Lexecon* prevents the Court from trying any of those cases in this district or from selecting any of them as bellwethers.

US.123216450

**B.**     **The JPML recognizes that an MDL court may try cases originally filed in the MDL court.**

A broad range of authority supports the conclusion that an MDL court may try cases that were originally filed in that court and were not transferred to it.  Most prominently, ***the JPML itself*** has explained that (1) its obligation to remand cases for trial applies *only* to cases transferred pursuant to section 1407, and (2) that a district court handling an MDL may preside over a trial in any case originally filed in that court.  In *In re Gerber Probiotic Prods. Marketing and Sales Practices Litig.*, a plaintiff had moved to create an MDL for 10 cases pending in four district courts, and the JPML held that centralization was not necessary.  899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012).  In discussing the *Lexecon* decision and the difference between sections 1404 and 1407, the JPML explained that MDL courts like this Court here possess jurisdiction – including the ability to conduct trials – for cases filed in its own district:

> [T]ransferee courts are limited to conducting bellwether trials (or any other trial or post-trial proceedings) in those actions over which the transferee court has jurisdictions outside the multidistrict context, either ***because the action was filed directly with the transferee court*** or because the parties waived their right to remand to the transferor court.

*Id.* at 1380 n. 4 (emphasis added).

The JPML has explained that an MDL district court has two sources of cases for bellwether trials: (1) cases that were filed in that court to begin with, and (2) cases transferred pursuant to section 1407 where the parties waive *Lexecon*, thus permitting trial in a district where venue would otherwise not be appropriate.  *Id.*  Here, Plaintiffs' across-the-board refusal to waive *Lexecon* prevents the Court from conducting trials of any cases in the second category – i.e. transferred cases.  But Plaintiffs' blanket *Lexecon* refusal has no effect on the Court's first source of bellwether cases because waiver is not necessary to set for trial cases that were originally filed here.  Because those cases were originally

- 7 -

filed here, the Court has "jurisdiction [over them] outside the multidistrict context." *In re Gerber*, 899 F. Supp. 2d at 1380.

This result is also compelled by the JPML's observation that section 1407 "'obligates the Panel to remand any pending case to its originating court'" after MDL pretrial proceedings are concluded. *Id.* at 1380 (quoting *Lexecon*, 523 U.S. at 34). In other words, the JPML (not the district court) transfers the cases to the transferee court for MDL proceedings for trial, and the JPML transfers them back to where they came from at the conclusion of those proceedings absent the parties' waiver of *Lexecon*.[4] Here, the JPML did not transfer the majority of the pending Category 5 and 6 cases to this Court, and neither the obligation on the JPML to remand those cases back to some originating district court for trial, nor the *Lexecon* right to waive venue to permit trial in the MDL court, ever attached. Again, because the cases were filed in this Court, this Court is free to manage its docket accordingly, including setting any of the cases filed in this Court for trial at the Court's sole discretion.

**C.    Other MDL courts have noted and exercised their authority to preside over trials of cases filed in their own Districts.**

As noted above, other MDL courts that have addressed this issue have uniformly concluded that they have the authority try the cases originally filed in their districts. *Notably, Plaintiffs' bench brief cites no court that has ever accepted their argument to the contrary.*

Because the JPML typically appoints an MDL judge in a district the cases at issue are already concentrated, virtually all MDLs will have some cases that originate in the MDL court. *See In re Gerber*, 899 F. Supp. 2d at 1380 ("The Panel often considers the location of the majority (or significant minority) of pending actions…."). With respect to cases that originate in the MDL courts, MDL courts

---

[4]    In practice, the transferee court may recommend remand to the JPML at the appropriate time, but the transferee court cannot remand cases on its own. *See e.g., Solis v. Lincoln Elec. Co.*, 2006 WL 266530 (N.D. Ohio Feb. 1, 2006), at *1 n.1 ("Because the MDL Panel usually awaits a suggestion of remand from the transferee court, however, [the court] uses shorthand terminology and refers to 'remand by the transferee court,' rather than 'a suggestion for remand by the transferee court the MDL Panel.")

US.123216450

have noted that they have complete authority to preside over those cases, including the ability to set them for bellwether trials.  For example, the District of Massachusetts explained that it "ordered parties to actions that were not originally filed in Massachusetts to tell the Court whether they would consent to a trial before the MDL Court," but the court had no need to request such consent from plaintiffs who directly filed in the MDL court because those cases are not "subject to §1407."  *In re New England Compounding Pharm., Inc.*, 2016 WL 6127261, at *5 (suggesting remand in transferred cases and holding that several of the actions at issue "were directly filed in this District, and therefore are not subject to § 1407"); *see also e.g., In re FEMA Trailers*, 2012 WL 1580761, at *1 n. 2; *In re Fosamax*, 2011 WL 1584584, at *1; *In re Zimmer Durom Hip Cup*, 2015 WL 5164772, at *3.

In contrast, Plaintiffs cite no case that has ever adopted their argument that an MDL court lacks the power to try cases originally filed in its own district.  Plaintiffs argue only by analogy, but the cases they cite are inapposite to the *Lexecon* issue they urge here for at least two reasons.  First, as Plaintiffs' bench brief acknowledges, all of the decisions on which Plaintiffs rely addressed choice-of-law issues,[5] not issues of waiver under *Lexecon*.  But as the *Lexecon* decision itself makes clear, the right to remand that Plaintiffs urge here is solely a matter of statutory interpretation, and the *Lexecon* holding relies solely on the "shall be remanded" language in section 1407(a).  *See* 523 U.S. at 35.  None of the decisions Plaintiffs cite for their choice-of-law holdings rely either on this remand language or on any

---

[5]   *See Dobbs v. DePuy Orthopedics, Inc.*, 842 F.3d 1045 (7th Cir. 2016)*; In re Watson Fentanyl Patch Prods. Liab. Litig.,* MDL No. 2732, 2013 WL 4564927, at *2 (N.D. Ill. Aug. 27, 2013); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, 2011 WL 1375011, at *6; *In re Bausch & Lomb Inc. Contacts Lens Solution Prods. Liab. Litig.,* MDL No. 1785, 2007 WL 3046682, at *3 (D.S.C. Oct. 11, 2007); *In re Avandia Mktg, Sales Practices & Prods. Liab. Litig.,* No. 07–MD–01871, 2012 WL 3205620, at *2 (E.D. Pa. Aug. 7, 2010); *In re Fresenius Granuflo/NaturaLyte Dialysate Products Liability Litigation,* 76 F. Supp. 3d 294 (D. Mass. 2015).
    Plaintiffs' citation to *Wahl v. Gen. Elec. Co.,* No. 3:13–CV–0329, 2013 WL 604818 (M.D. Tenn. Nov. 14, 2013), appears to contain an error regarding the WL number provided, but the docket number is correct.

other provision of section 1407(a).  The choice-of-law decisions Plaintiffs cite simply have no bearing on the *Lexecon* argument Plaintiffs urge here.  *See In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 489 F. Supp. 2d 932, 934-36 (D. Minn. 2007) ("[T]he Court concludes that the … waiving *Lexecon* requirements do not impact the applicable choice-of-laws rules.").

Second, the cases Plaintiffs cite all involved an agreement between the parties, which has been approved by court order, and which specifically *created* a right (1) to file in a jurisdiction that would not otherwise be a proper venue, and (2) to seek transfer after pretrial proceedings concluded to a proper venue (*i.e.*, a district other than the MDL court's district).[6]  As discussed in detail in section II below, Plaintiffs here did not request, Cook did not agree to, and the Court did not enter any order creating such venue rights for cases filed in this Court.  Thus, even assuming the choice-of-law holdings were arguably analogous to the statutory *Lexecon* issues here, those choice-of-law decisions rested on agreed orders that have no analog in the present litigation.

> **D.**     **Secondary authorities agree that an MDL court can always try cases filed in its District.**

Other authorities support the conclusion that an MDL court may try non-transferred cases that were originally filed in the MDL court, including the law review article by Judge Fallon on which Plaintiffs rely in their bench brief.  See Dkt. 10715 at 2 (citing Fallon, et al., *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2336).  Both Judge Fallon and the Manual on Complex Litigation stress the importance of a broad bellwether pool of cases to choose from as a prerequisite to selecting meaningful, representative bellwether trials.  *See* Fallon , 82 Tul. L. Rev. at 2357 (explaining

---

[6]  *See* CMO-2, *In re DePuy Orthopaedics, Inc. ASR Hip Implant Prods.*, MDL-2197, N.D. Ohio Cause No. 1:10-md-02197-DAK, p. 2, attached as **Exhibit B** (copy of direct-filing order in the underlying MDL from which *Dobbs*, 842 F.3d 1045 originated); *In re Watson Fentanyl Patch.*, 2013 WL 4564927, at *1; *In re Yasmin & Yaz (Drospirenone)*, 2011 WL 1375011, at *4 n.2; *In re Bausch & Lomb Inc.*, 2007 WL 3046682, at *3 n.1; *In re Avandia Mktg, Sales Practices & Prods. Liab. Litig.*, No. 07-MD-01871, 2012 WL 3205620, at *2 (E.D. Pa. Aug. 7, 2010); *In re Fresenius Granuflo*, 76 F. Supp. 3d at 299; Memorandum Opinion in *Wahl*, M.D. Tenn. Case No. 3:13-cv-0329, Dkt. 69 at 7, attached as **Exhibit C**.

- 10 -

that "as a predicate for meaningful bellwether trials, the parties must be willing to waive their objections as to cases" that are not from court's home district and that "[e]ncouragement by the transferee court can be helpful in securing waivers."); Manual for Complex Litigation, Fourth, § 11.61 ("Consider whether to pursue alternatives that would allow a transferee judge to obtain authority (e.g. by action of the parties …) to retain a role that is consistent with *Lexecon*.").

A situation where parties raise *Lexecon* issues in significant numbers threatens to derail case management plans designed to select representative bellwether trials. In those instances, Judge Fallon explains that the MDL court should set cases for trial that originated in the transferee court and that are thus not subject to the *Lexecon* issue. 82 Tul L. Rev. at 2357, n. 117. Judge Fallon notes:

> **A case filed directly into the MDL, whether by a citizen of the state in which the MDL sits or by a citizen of another jurisdiction, vests the transferee court with complete authority over every aspect of that case. This is because the transferee court is no longer cognizable as the transferee court under 28 U.S.C. § 1407, but is technically the forum court.**

*Id.* at 2356-57 (emphasis added). For "cases filed directly into the MDL by nonresident plaintiffs, the defendant, and only the defendant, must waive its sustainable venue and venue-related objections." *Id.* at 2358. Judge Fallon recommends that judges "faced with obstinate attorneys refusing to provide consent" for cases transferred by the JPML under section 1407 may "unilaterally set[] cases filed into the MDL by citizens of the forum state for trial." *Id.* at 2357.

In this MDL, the Southern District of Indiana is a proper venue based on the residence of all the Cook Defendants in the State of Indiana.[7] Thus, *Lexecon* does not apply to the non-transferred cases because Plaintiffs filed the cases in the Southern District of Indiana, and venue in this district is proper

---

[7]   Contrary to the typical experience of a transferee court that would have full jurisdiction of the cases from its forum state, the Court does not have subject matter jurisdiction over cases filed by Indiana plaintiffs because the Cook Defendants are solely based in Indiana, meaning there is no diversity jurisdiction between Indiana plaintiffs and the Cook Defendants. At the same time, cases filed by plaintiffs from any other state are properly venued and may be tried here, meaning the Court is not limited to cases from the forum state like a typical MDL court would be.

in every case.  Accordingly, the Court is free to pick bellwethers from the large pool of non-transferred Category 5 and 6 cases, notwithstanding Plaintiffs' refusal to "waive *Lexecon*."

      **E.**      **This Court has noted repeatedly that it has full authority to preside over all aspects of these cases because they were filed in this proper venue.**

Closer to home, this Court has itself noted on multiple occasions that (1) the cases filed in this district are ultimately this Court's responsibility, and (2) this Court has full authority to preside over them and try them.  Specifically, whenever the issue of transfer and/or remand has been discussed in the MDL with respect to cases filed in this District, the Court has observed that the cases originated on its docket and remand under section 1407 is not possible.

For example, in discussing a motion to transfer filed in 15 pending cases, the Court noted at the April 29, 2019, hearing that "[t]hese 15, the home district is here" and therefore that it "[s]ounds like a lot of these cases I'd be transferring these cases to myself."  April 29, 2019 Hearing Tr., p. 59:5, 17-18.  This is consistent with the Court's comments from a year ago.  *See* May 2, 2018 Tr. at 17:9-23 ("I have to remand these to myself, I guess.").  The Court has intuitively and correctly inferred that section 1407(a) and any attendant rights to transfer for trial are not at issue in these non-transferred cases.  As the Court noted, remand to the "home jurisdiction" in this context would produce the pointless exhibition of "remanding" the cases from the MDL to the general docket of the Southern District of Indiana.  *See* Fallon, 82 Tul. L. Rev. at 2357 (explaining that for cases filed in its home district the "transferee court is no longer cognizable as the transferee court under 28 U.S.C. § 1407, but is technically the forum court.")

      **F.**      **Plaintiffs acknowledge in their pending Motion for Remand and Transfer that cases filed in the Southern District of Indiana are not subject to remand under Section 1407.**

Finally, Plaintiffs themselves have recognized that section 1407(a) does not apply to cases filed in this district in their Motion to Remand and Transfer Venue.  Specifically, Plaintiffs introduced their

US.123216450

arguments by conceding the distinction between cases filed outside the Southern District of Indiana and transferred to the MDL pursuant to section 1407 and cases originally filed in the MDL.  *See* Pls. Memo. of Law in Supp. of Mot. to Remand and Transfer Venue, Dkt. 10439 at 4.  Plaintiffs argue that section 1407 "mandates that the Court remand all transferred cases to their respective transferor courts."  *Id.* at 4.  As to cases originally filed in this district, however, Plaintiffs urge the Court to use section *1404(a)* to "transfer such cases to the venue chosen by each respective Plaintiff [in the individual short-form complaint]."  *Id.* at 4-5.  Plaintiffs' attorneys repeated and emphasized this distinction at the April 2019 status conference.  See April 29, 2019 Tr. at 37:4-8 ("One of the items on the agenda which Mr. Matthews had began to talk about – or talked a little bit about were the motions for – *he designated them as being motions for remand.  Officially they're motions to transfer venue.*") (emphasis added); *see also id.* at 44:15-16 ("THE COURT: So these motions are not remand motions; they're actually transfer motions.").

Plaintiffs' remand motion thus recognizes the distinction between the mandatory *remand* of transferred cases under section 1407(a) and the discretionary *transfer* of cases filed in this district under section 1404(a).  In light of this distinction, the *Lexecon* holding cannot apply to the cases filed in this district because the "*Lexecon* right" relies on the mandatory remand provision of section 1407(a), which Plaintiffs agree in their remand motion does not apply to non-transferred cases.  This is exactly the point Cook has urged above, and it directly contradicts the *Lexecon* argument Plaintiffs now make in their bench brief.

## II.   Plaintiffs Err in Relying on "Direct Filing" Authority to Fabricate a *Lexecon* Right to Remand

To get around the plain language of section 1407(a) and to manufacture a "*Lexecon* right" to remand for trial, Plaintiffs' bench brief attempts to characterize the cases Plaintiffs originally filed in the Southern District of Indiana as "direct filed" cases.  Plaintiffs misunderstand and misuse that term.

- 13 -

As used in the MDL context, a "direct filed" case is a case in which the parties have agreed and the court has ordered that (1) cases may be filed in a district in which venue would not normally be proper, but (2) the parties reserve the right to seek transfer for trial to a proper venue pursuant to Section 1404 once pretrial proceedings in the MDL have been completed.  *See, e.g., In re Vioxx Prod. Liab. Litig.*, 478 F. Supp. 2d 897, 903–04 (E.D. La. 2007) (noting the parties' waiver of venue objections and ordering that "a plaintiff may now file any such complaint against Merck directly in the Eastern District of Louisiana, rather than in a federal district court affording proper venue."); Vioxx MDL Pretrial Order No. 11, pp. 1-2, attached as **Exhibit D**.  The situation in the Cook MDL differs from this "direct filing" situation in at least two material ways.

First, Plaintiffs' filing of IVC filter actions against Cook in the Southern District of Indiana presents no issue of improper venue and no need for Cook to waive a venue objection.  As all parties agree, venue is in fact proper in this district.  Under 28 U.S.C. section 1391(b)(1), "[a] civil action may be brought in … a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  Here, as Plaintiffs themselves allege in their Master Complaint, the Cook Defendants are based in the Southern District of Indiana.  *See* Master Consolidated Complaint, Dkt. 213, ¶¶ 9-20 (allegations regarding Cook Defendants' incorporation and business operations in Indiana).[8]  Thus, as Plaintiffs assert, "[a] substantial amount of activity giving rise to the claims occurred in this District, and Defendants may be found within this District.  Therefore, venue is proper in this jurisdiction under 28 U.S.C. §1391."  Dkt. 213 at 8, ¶ 28.  Plaintiffs' filings thus are not "direct filings" in MDL nomenclature because they are not intended to

---

[8]   The only MDL defendant that is not based in Indiana is William Cook Europe, which is based in Denmark.  Under another section of the venue statute, the citizenship of that entity is disregarded and the Cook Defendants are considered to all be from Indiana for venue purposes.  *See* 28 U.S.C. § 1391(c)(3) ("[A] defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants.").

- 14 -

avoid venue issues; they are simply ordinary filings of actions in a district where venue is undisputedly proper. *Compare* Bard MDL, 2:15-md—02641-DGC, Dkt. 364, Master Complaint, ¶¶ 11-12 (noting in Arizona-venued MDL that defendant Bard, Inc. is incorporated in Delaware and resides in New Jersey).[9]

Second, unlike MDL courts like *Vioxx* and *Bard* that include an order addressing "direct filing," the parties did not agree and this Court has not ordered that "direct filing" by foreign plaintiffs in this proper venue includes an automatic right to seek transfer to any other proper venue for trial pursuant to Section 1404. Cook never agreed to such an order, and indeed Plaintiffs never asked the Court to enter such an order. There can be no "direct filing" right without agreement between the parties and an order creating such a right; there can be only proper original filing in a district where venue is proper, as occurred here, and such original filing offers no basis for remand under section 1407(a) or any attendant *Lexecon* right.

Plaintiffs' attempt to invoke "direct filing" as a basis for a *Lexecon* objection thus fails, and the Court is free to conduct trials of cases in this proper venue if selected as bellwethers.

### A. Plaintiffs' reliance on contradictory language in their Complaints does not create a non-existent *Lexecon* right.

Plaintiffs' bench brief asserts that Plaintiffs somehow unilaterally "preserved" a *Lexecon* right, even in the absence of a direct filing order, based on Paragraph 27 of the Master Complaint and

---

[9]   Likewise, the defendants in the mesh MDLs that Plaintiffs have referenced in this Litigation were not residents of West Virginia, meaning that the MDL venue in the District of West Virginia was not a proper venue under Section 1391(a) in all cases as the Southern District of Indiana is here. *See e.g., In re C.R. Bard, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2187, Master Complaint, ¶¶ 3-7 (alleging that Bard is from New Jersey and the other defendants are foreign corporations), available at https://www.wvsd.uscourts.gov/MDL/2187/pdfs/FinalMasterComplaint.pdf; *In re Ethicon, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2327, Master Complaint, ¶¶ 3-5 (alleging that defendants are from New Jersey and Puerto Rico), available at https://www.wvsd.uscourts.gov/MDL/ethicon/pdfs/FinalMasterComplaint.pdf; *In re Am. Med. Sys., Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, MDL No. 2325, Master Complaint, ¶¶ 2-6 (alleging that defendants were incorporated in Delaware and based in Pennsylvania), available at https://www.wvsd.uscourts.gov/MDL/amsinc/pdfs/FinalMasterComplaint.pdf.

US.123216450

Paragraph 7 of the short-from complaint. *See* Dkt. 10715 at 2-5. This argument lacks either factual or legal support. As an initial matter, allegations in a complaint cannot create a venue right that *never existed*. *See* 28 U.S.C. § 1407(a); *Lexecon*, 523 U.S. at 35. In addition, allegations in a complaint are neither an agreement between the parties nor an order from the Court creating a right to seek transfer for trial pursuant to Section 1404.

Ultimately, even were the Court to try to interpret the intent of Plaintiffs in the Master Complaint in the manner Plaintiffs urge, the Court could not do so because the Master Complaint provisions Plaintiffs cite for their claimed "preservation" are contradicted by other portions of that same Master Complaint. While Paragraph 27 alleges that venue is proper "in the federal judicial district of each Plaintiff's state of residence," the very next paragraph alleges that "[a] substantial amount of activity giving rise to the claims occurred in this District, and Defendants may be found in this District. ***Therefore, venue is proper in this jurisdiction under 28 U.S.C. §1391***." *Compare* Master Complaint Dkt. 213, ¶ 27 *with id.*, ¶ 28 (emphasis added). Moreover, Plaintiffs lauded this District as the proper venue when they moved to create this MDL: "***[I]t is hard to imagine a more appropriate forum than that of where the Defendants made, marketed and sold the product and where the Defendant is headquartered***" – i.e. the Southern District of Indiana. *See* Pls.' Memo. in Supp. of Mot. for Trans. & Coordination or Consolidation Under 28 U.S.C. §1407, at p. 8 (emphasis added), attached as **Exhibit E**. In light of these contradictory statements, Plaintiffs' brief, bare allegation that venue would have been proper in a district other than the Southern District of Indiana is hardly a clear invocation of supposed "*Lexecon* rights."

Second, even assuming for the sake of argument that Plaintiffs' complaints were clear in their intent to create a right to see a transfer to another venue for trial, Plaintiffs cannot unilaterally create such rights without a court order or stipulation. Plaintiffs' attempt to rely on

- 16 -

Judge Fallon's article for support on this point takes his statements out of context.  Although Judge Fallon did contemplate that "an individual plaintiff could potentially preserve his *Lexecon* objection by making a notation of such in his complaint," Plaintiffs omit Judge Fallon's explanation and conclusion on the issue, which immediately follows the passage Plaintiffs quote in their bench brief:

> While this alternative appears attractive, it may not be effective.  Although there is no case law on the subject, ***it is doubtful that a litigant can unilaterally place conditions on a court order.  Without an order allowing direct filing by a nonresident plaintiff, such plaintiffs have no right to file directly into the MDL.***  This right is the sole product of the transferee court's order, although it is conceivable that a plaintiff could file in an action directly into the MDL, despite improper venue, and just hope that its filing is not challenged on venue grounds.  Thus, ***if a transferee court does not acknowledge a plaintiff's right to preserve his Lexecon objection or affirmatively permit such preservation, a plaintiff may not have that right at all.***

Fallon, et al., 82 Tul. L. Rev. at 2357, n. 117 (emphasis added).  Thus, not only does Judge Fallon's article fail to support Plaintiffs' argument, his statements are consistent with Cook's view that Plaintiffs cannot create a unilateral and automatic "*Lexecon* right" where none exists in the absence of a section 1407 transfer.  Similarly, as Judge Fallon notes, Plaintiffs cannot "unilaterally" create such a right without a court order.  *Id.*[10]

---

[10] The only difference between Judge Fallon's discussion and this MDL is that the Cook Defendants' presence in Indiana makes the Southern District of Indiana a proper venue for all the cases, based on a different section of the venue statute.  This distinction does not assist Plaintiffs, however, because it merely demonstrates that Plaintiffs chose to file in a proper venue instead of taking a risk that venue would be challenged.  The practical effect of that distinction is that this Court has many more properly-venued cases to choose from for bellwether trial than Judge Fallon would have had in the Vioxx MDL if he was left to only choose from Louisiana plaintiffs.  *Id.* at 2353 (noting "only roughly 350 cases had been filed directly into the Eastern District of Louisiana by Louisiana citizens" while more than 6,000 had been transferred in two years).  Indeed, transferring all the cases to Plaintiffs' newly preferred districts would quite possibly create problems with personal jurisdiction in those districts.  "In suits against multiple defendants, transfer is proper only to a district in which all of them [the defendants] are subject to personal jurisdiction and in which venue is proper for an action against all of them."  15 Wright & Miller § 3845.  The Cook Defendants have asserted lack of personal jurisdiction as an affirmative defense in all of these cases.  *See* Dkt. 8180, Defs. Am. Ans. p. 23.

- 17 -

### III.     Plaintiffs' Gamesmanship Should Not Be Permitted

Courts disfavor *Lexecon* gamesmanship and have taken steps to discourage it by treating refusals to waive *Lexecon* as strikes in bellwether selection plans.  Indeed, this Court noted it would not tolerate such gamesmanship just two weeks ago, which is precisely what the PSC attempts here.  *See* May 9, 2019 Tr. at 28:1-9 ("I mean, it's obvious what can be done by either side here….I'm not going to waste my time with that.")

The PSC's repeated assurances to this Court that they were interested in identifying and trying additional representative cases for trial now ring hollow.  At numerous points in this litigation, Plaintiffs lead this Court and Cook to believe that *Lexecon* was not an issue in the Bellwether Discovery Pool cases.  From (1) filing cases in this Court without seeking Cook's consent or the Court's approval to create a new right to seek transfer for trial to another venue; to (2) failing to raise any *Lexecon* concern in February 2018 when the Court first stated an intent to try product-in-place bellwethers; to (3) failing to object based on *Lexecon* at *any time* to the Court's October 2, 2018 Bellwether Selection Plan; to (4) participating in the Bellwether Selection Plan's categorization process between October 2018 and April 2019 – an essential step to get to Category 5 and 6 trials; to (5) failing to object to *Lexecon* language in Cook's proposed Bellwether Selection Plan provided to Plaintiffs a week before the April 29, 2019 hearing; to (6) failing to move to amend or raise *any* objection to the Court's Bellwether Selection Plan (Dkt. 10599) based on *Lexecon* at any time prior to the May 9, 2019 status conference – each of these instances led the Court and Cook to believe there were no objections under *Lexecon* to the Court's selection of discovery pool cases.

Even now, a careful reading of Plaintiffs' bench brief reveals that – contrary to their representations to the Court just two weeks ago – the PSC did not actively seek *Lexecon* waivers to effectuate the Court's Bellwether Selection Plan following the May 9 status conference.  The

US.123216450

PSC's bench brief never actually represents that all of the Category 5 and 6 Plaintiffs have affirmatively refused to waive their claimed rights under *Lexecon*.  The brief makes only the carefully worded statement that "no Category 5 or 6 plaintiffs have executed an express Lexecon waiver or otherwise intentionally waived the requirement that…the MDL court remand their cases to their originating [sic] districts for trial."  Dkt. 10715 at 1.  The brief does not assert that all 1,446 of these Plaintiffs were asked and refused to consent to trial in this Court; indeed, it does not even assert that any of them have even been asked their preference on the question. Multiple individual plaintiffs' lawyers have represented to Cook's counsel that ***they weren't even asked*** by the PSC about individual case waivers, and the global refusal to waive is a "***PSC strategy decision***."

Moreover, the 25 attorneys on the PSC control over 2177 cases in the MDL; if the PSC attorneys wanted to effectuate this Court's Bellwether Selection Plan by seeking individual waivers as they requested that the Court give them additional time to do during the May 9 status conference, Cook has no doubt they could do so.  Instead of making any good faith effort to obtain or even inquire about *Lexecon* waivers, however, the PSC has adopted a global obstructionist strategy that tries to ***imply*** without foundation that all 1,446 Category 5 and 6 Plaintiffs possess *Lexecon* rights and have ***actually*** refused trials in this Court – neither of which are accurate.  For this reason, Cook files simultaneously its Motion for Entry of Amended Bellwether Plan, which discourages gamesmanship by either side and is consistent with the orders entered by a number of other MDL courts. *See* Zimmer NexGen MDL CMO-10, ¶ 4 ("Should any party refuse to waive *Lexecon,* such a refusal will constitute one of the six strikes for the side; or, in the alternative, the opposing side will be entitled to another strike…"), attached as **Exhibit F**; Zimmer Metal Reaction MDL Order No. 19, ¶ 13 (adopting similar

- 19 -

provision to ensure "Plaintiffs are not incentivized to use *Lexecon* waivers to remove cases Plaintiffs deem unfavorable from bellwether consideration."), attached as **Exhibit G.**

In sum, the Court should reject Plaintiffs' disingenuous and bad-faith tactics in the strongest terms and choose its Bellwether Discovery Pool consistent with CMO-25's Bellwether Selection Plan because *Lexecon* does not apply for the vast majority of Category 5 and 6 cases. If any cases that were transferred by the JPML are selected by the random draw, the Court should order those Plaintiffs to report to the Court directly and in person on their willingness to have their cases tried in this Court. Pursuant to the terms of proposed Amended CMO-25, any refusals at that point to waive *Lexecon* should be deemed one of Plaintiffs' strikes.

## CONCLUSION

For the foregoing reasons, the Court should proceed with the selection of the Discovery Pool Cases pursuant to CMO-25, and further should require any individual plaintiff's lawyer who represents a Discovery Pool plaintiff transferred to this Court pursuant to Section 1407 by the JPML to seek a *Lexecon* waiver.[11]

Respectfully submitted,


Dated:  May 23, 2019                          /s/ Andrea Roberts Pierson
                                              Andrea Roberts Pierson (# 18435-49)
                                              FAEGRE BAKER DANIELS LLP
                                              300 North Meridian Street, Suite 2700
                                              Indianapolis, Indiana 46204
                                              Telephone:     (317) 237-0300
                                              Facsimile:     (317) 237-1000
                                              Andrea.Pierson@FaegreBD.com

---

[11]  *See* Defendants' Motion for Entry of Amended Bellwether Plan, filed simultaneously.

US.123216450

James Stephen Bennett (# 22869-02)
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana 46802
Telephone:     (260) 424-8000
Facsimile:      (260) 460-1700
Stephen.Bennett@FaegreBD.com

*Counsel for the Defendants, Cook Incorporated,
Cook Medical LLC (f/k/a Cook Medical
Incorporated), and William Cook Europe ApS*

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2019, a copy of the foregoing Cook Defendants'
Response to Plaintiffs' Bench Brief Concerning Application of *Lexecon* was filed electronically
and notice of the filing of this document will be sent to all parties by operation of the Court's
electronic filing system to CM/ECF participants registered to receive service in this matter.
Parties may access this filing through the Court's system.  Lead Co-Counsel for Plaintiffs will
serve any non-CM/ECF registered parties.

/s/ Andrea Roberts Pierson

- 21 -

US.123216450