# EXHIBIT G

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4-1-19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

| | |
|---|---|
| IN RE: ZIMMER M/L TAPER HIP PROSTHESIS OR M/L TAPER HIP PROSTHESIS WITH KINECTIV TECHNOLOGY AND VERSYS FEMORAL HEAD PRODUCTS LIABILITY LITIGATION | MDL NO. 2859<br><br>18-md-2859-PAC<br>18-mc-2859-PAC |
| *This Document Relates to All Cases* | ORDER NO. 19 |

------------------------------------------------------------x

## ORDER GOVERNING THE BELLWETHER SELECTION AND PROCESS

### I. APPLICABILITY AND SCOPE OF THIS ORDER

1. This order sets forth the Court's instructions regarding the bellwether selections and process in MDL No. 2859.

2. The Bellwether Trial Pool is defined as MDL cases that will proceed with individual case-specific work-up and trial.

3. In October 2018, the United States Judicial Panel on Multidistrict Litigation ("JPML") began transferring actions for personal injury and wrongful death claims against the Zimmer Defendants[1] ("Zimmer") for alleged defect in the Zimmer M/L Taper Hip Prosthesis ("M/L Taper") or the M/L Taper Hip Prosthesis with Kinectiv Technology ("Kinectiv"), when either femoral stem is paired with the VerSys Hip System Femoral Head ("VerSys femoral head"). At the conclusion of these pretrial proceedings, the JPML must remand these personal injury cases back to the originating/transferor courts across the country. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34 (1998) (noting that 28 U.S.C. § 1407 "obligates the Panel to remand any pending case to its originating court when, at the latest, []

---

[1] Zimmer, Inc.; Zimmer US, Inc.; and Zimmer Biomet Holdings, Inc.

pretrial proceedings have run their course"). The originating courts will then face the prospect of trying (or settling) these cases involving similar claims.

4. Before reaching that point in this proceeding, the Court is tasked with identifying and implementing processes and tools to manage the litigation in an effective, efficient, and just manner. Lawyers and courts recognize that bellwether or test trials may be important case management tools in a multidistrict proceeding involving numerous individual claims. Indeed, this Court has held that "bellwether trial[s] [] allow[] a court and jury to give the major arguments of both parties due consideration without facing the daunting prospect of resolving every issue in every action." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, No. 00-1898, MDL No. 1358 (SAS), 2007 WL 1791258, at *2 (S.D.N.Y. June 15, 2007); *see also, e.g., In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997) ("The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar.").

5. The purpose of a "bellwether" or "representative" case is to "enhance and accelerate both the MDL process itself and the global resolutions that often emerge from that process." Fallon, et al., *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2325 (2008) (18-md-2859 Dkt. 13-4). In other words, bellwether cases should be "representative" of the overarching issues within the overall MDL to aid the development of the parties' disputes and put a value on the litigation. *See In Re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, No. 09-2967, 2009 WL 3418128, at *3 (E.D. La. Oct. 14, 2009), *aff'd sub nom. In re FEMA Trailer Formaldahyde Prod. Liab. Litig.*, 628 F.3d 157 (5th Cir. 2010) (finding one of "the principal goals of the bellwether process" is to select a plaintiff or plaintiffs "who can truly be

representative of the whole mass of plaintiffs in the MDL"). Thus, bellwether cases are those "that can illustrate and inform the parties and the Court of important issues in the litigation, which necessarily means they are of value to individual Plaintiffs and the case as a whole for a variety of reasons." *In re: Guidant Corp. Implantable Defibrillators Prod. Liab. Litig.*, No. MDL 05-1708 DWFAJB, 2006 WL 409200, at *1 (D. Minn. Jan. 31, 2006).[2] "A bellwether trial is most effective when it can accurately inform future trends and effectuate an actual culmination to the litigation." Fallon, *supra* at 2344. Bellwether trials also provide the parties with an opportunity to develop litigation frameworks that can be used in cases remanded to the originating courts.

6. The parties are directed to participate in the bellwether process in good faith and in accordance with these principles.

7. Additionally, in tandem with a bellwether trial process, other MDLs have successfully employed a bellwether mediation process. *See In re: Stryker Rejuvenate and ABG II Hip Implant Prod. Liab. Litig.*, MDL No. 2441 (D. Minn.). The Parties are encouraged to meet and confer on this process and advise the Court by **November 1, 2019** if a bellwether mediation process will be advantageous to the resolution of this litigation.

## II. IDENTIFICATION OF BELLWETHER SELECTION POOL

8. The Bellwether Selection Pool is divided into two categories depending on the product.

---

[2] *See also* Manual for Complex Litigation (Fourth) § 22.315 (2004) ("Test cases should produce a sufficient number of representative verdicts and settlements to enable the parties and the court to determine the nature and strength of the claims, whether they can be fairly developed and litigated on a group basis, and what range of values the cases may have if resolution is attempted on a group basis. *The more representative the test cases, the more reliable the information about similar cases will be.*" (emphasis added)).

3

>    Category One: Plaintiffs implanted with a Zimmer M/L Taper with Kinectiv Technology femoral stem and VerSys femoral head.
>
>    Category Two: Plaintiffs implanted with a Zimmer M/L Taper femoral stem and VerSys femoral head.

9. To be eligible for inclusion in the Bellwether Selection Pool, a claim must satisfy the following criteria:

>    a. Plaintiff must have undergone a revision surgery.
>
>    b. Plaintiff's complaint must have been filed by **April 30, 2019**. Plaintiffs' leadership (the PEC and PSC) will engage in good faith efforts, consistent with their obligations outlined in Paragraph 6 above, to get cases of known eligible clients filed before this deadline.
>
>    c. By **July 1, 2019**, Plaintiff must have submitted a Plaintiff Preliminary Disclosure ("PPD") form and Plaintiff Fact Sheet ("PFS") pursuant to Order No. ___ (18-md-2859 Dkt No. ___), or had deadlines to do so by that date. The PPD and PFS shall be considered to be interrogatory answers and responses to requests for production under the Federal Rules of Civil Procedure, and will be governed by the standards applicable to written discovery under the Federal Rules of Civil Procedure. Accordingly, the Zimmer Defendants' use of the PPD and PFS is in lieu of interrogatories and other written discovery devices that they would otherwise have propounded, without prejudice to the Zimmer Defendants' right to propound additional discovery as part of the bellwether trial program, in cases selected for trial, or upon remand of a case to its transferor court.
>
>    d. Bilateral revision surgeries: Plaintiffs who underwent bilateral revision surgeries are eligible for the Bellwether Trial Pool.

## III. SELECTION OF THE INITIAL BELLWETHER TRIAL CASES

10. The Manual for Complex Litigation notes that if bellwether trials "are to produce reliable information about other mass tort cases, the specific plaintiffs and their claims should be representative of the range of cases." Manual For Complex Litigation (Fourth) § 22.315 (Federal Judicial Center 2004); Rothstein, et al., *Managing Multidistrict Litigation in Products Liability Cases: A Pocket Guide for Transferee Judges*, at 44 (Federal Judicial Center 2011) ("If bellwether trials are to produce reliable information about the other cases in the MDL, the specific plaintiffs and their claims should be representative of the range of cases.").

11. For this bellwether plan to succeed, the cases selected as trial candidates must constitute a representative sampling of cases in this proceeding. To that end, the parties will exercise good faith throughout the bellwether process to avoid the selection of cases presenting unique or idiosyncratic facts or law that would render the results of these cases unenlightening.

### A. METHOD FOR BELLWETHER TRIAL CASE SELECTION.

12. Allowing the parties to each select their own cases at the outset of the bellwether process will result in bellwether trials in only the cases that the parties find most favorable to their respective sides, rather than cases of average and representative merit (*see* the Court's initial experience in *In re NexGen Knee Implant Prods. Liab. Litig.*, MDL No. 2272). Therefore, the Court will instead use a bellwether selection process involving: (1) random selection of an initial pool of potential cases; (2) strikes by the parties to remove the most unrepresentative cases from the initial pool; and (3) ultimately, Court selection of the bellwethers from the remaining cases. At a status conference to be scheduled in September of 2019, the Court will use a random selection process to identify 8 cases from Category One and 8 cases from Category Two. By 5 PM ET on a date 16 days after the status conference at which random selection occurs, each party will file a Notice of Bellwether Strikes in which they strike 2 cases from Category One and

5

2 cases from Category Two. Then, on a date 10 days after the parties exercise their strikes, the parties will file briefs with the Court on the propriety of the remaining 8 cases (assuming the parties do not strike the same cases) for bellwether trial. Based on the parties' briefing, the Court will select 2 cases from each Category for final workup and trial.

### B. *LEXECON* WAIVER.

13. Any Plaintiff selected through the random selection process for bellwether consideration who wishes to assert a *Lexecon* objection to his/her case being tried by the Court must file an objection in writing within 10 days following random selection. If no objection is filed by the deadline, a Plaintiff will be deemed to have waived any objection to having his or her case tried in the MDL district. For every *Lexecon* objection asserted by a Plaintiff, the PEC will have the option of that objection acting as one of the PEC's strikes, or of giving the Zimmer Defendants an additional strike, so that Plaintiffs are not incentivized to use *Lexecon* waivers to remove cases Plaintiffs deem unfavorable from bellwether consideration. The PEC will file a Notice with the Court stating whether they will classify the *Lexecon* waiver as one of their strikes, or provide the Zimmer Defendants with an additional strike, within 3 days of any Plaintiff filing a *Lexecon* objection.

14. In exchange for the protections set forth in the paragraph above, the Zimmer Defendants have agreed to waive *Lexecon* for all cases identified for inclusion in the Bellwether Selection Pool prior to selection occurring.

15. *Lexecon* objections other than those for claims tried in the Court under the bellwether trial plan are preserved. Thus, if a claim in the Bellwether Trial Pool is not selected for trial, then the Court will restore the rights of the Plaintiff and the Zimmer Defendants in that claim to object to venue and jurisdiction in the Southern District of New York for purposes of trial.

### C.  AMENDED COMPLAINTS AND ANSWERS.

16. Consistent with MDL Order No. 9, Section II.7, a Plaintiff selected for the Bellwether Trial Pool will have **thirty (30) days** after notice of selection for workup and trial to amend their complaint, if necessary, without leave of the Court. Similarly, consistent with MDL Order No. 9, Section III.3, without leave of Court, Zimmer Defendants will have **sixty (60)** days after selection of the Bellwether Trial Pool to file a Motion to Dismiss in any individual action selected for bellwether trial, or to file case-specific, amended Answers to add affirmative defenses and to respond to new allegations contained in any amended Complaint filed by a Plaintiff.

### D.  SETTLEMENT OR DISMISSAL OF BELLWETHER TRIAL POOL CASES.

17. If a bellwether trial case is settled or dismissed prior to trial, the parties shall meet and confer to discuss whether the case should be replaced and, if so, how. The parties should include that issue on their proposed agenda for a status conference at the appropriate time.

### E.  CASE-SPECIFIC FACT DISCOVERY.

18. Case-specific discovery of Plaintiffs selected as a Bellwether Trial Case will commence on the date the Court selects the four cases that will be worked up for trial. Among other things, case-specific fact discovery may consist of (a) a deposition of Plaintiff; (b) depositions of treating physicians or medical providers; (c) depositions of Zimmer sales representatives, sales managers, and/or regional/district managers; (d) depositions of fact witnesses to the incident that is the subject of the claim. Case-specific fact discovery of Plaintiffs in the Bellwether Trial Pool shall conclude no later than **120 days** after the date the Court selects the four cases.

7

## IV. EXPERT DISCOVERY FOR INITIAL BELLWETHER TRIAL CASES

19. Expert discovery for the Initial Bellwether Trial Cases shall proceed as follows:

  a. The PEC shall disclose expert witnesses and submit any reports required under Fed. R. Civ. P. 26(a)(2)(B) on or before **February 7, 2020**; and

  b. Counsel for the Zimmer Defendants shall disclose expert witnesses and submit any reports required under Fed. R. Civ. P. 26(a)(2)(B) on or before **March 20, 2020**.

  c. Pursuant to F.R.C.P. 26(b)(4), "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial." All expert discovery for the first Bellwether Trial Case (MDL Bellwether Trial # 1") shall be completed by no later than **May 22, 2020**.

## V. SCHEDULING THE INITIAL BELLWETHER TRIAL CASES

20. By **5:00 p.m. ET on February 3, 2020**, the PEC and counsel for the Zimmer Defendants shall each submit letter briefs proposing the order of trials, whether either party intends to propose a multi-plaintiff trial, and setting forth the parties' supporting rationales for their proposed orders. The Court will then designate the order of the Initial Bellwether Trial Cases and, if necessary, rule on the issue of multi-plaintiff trials.

21. MDL Bellwether Trial #1 will start on **September 14, 2020**. The parties shall submit any *Daubert* motions and any dispositive motions for MDL Bellwether Trial #1 by **June 19, 2020**. Any opposition to a *Daubert* or dispositive motion shall be filed by **July 17, 2020**; any reply shall be filed by **August 4, 2020**. The parties will submit any motions *in limine* for MDL Bellwether Trial #1 by **June 26, 2020**, with oppositions filed by **July 24, 2020**, and any reply filed by **August 11, 2020**.

22. The Court is aware that *Noto v. Zimmer, Inc. et al.*, 17-CA-006630 (Fla.), is currently scheduled for trial in Hillsborough County, Florida on July 1, 2019; and *Polesovsky v.*

8

*Zimmer, Inc. et al.*, OCN-L-1049-17, is currently scheduled for trial in Ocean County, New Jersey on August 8, 2019. Additionally, the Court is aware of three trials scheduled for trial in Multnomah County, Oregon: (1) *Cole v. Zimmer, Inc. et al.*, 17CV02295, trial scheduled to begin July 8, 2019; (2) *Barkley, et al. v. Zimmer, Inc. et al.*, 17CV15419, trial scheduled to begin August 5, 2019; and, (3) *Miller v. Zimmer, Inc. et al.*, 17CV56419, trial scheduled to begin September 9, 2019. All of these actions involve the Zimmer M/L Taper Hip Prosthesis with Kinectiv® Technology. If a state court in a Related or Coordinated Action schedules a trial to commence in 2020, the parties shall immediately notify the Court. The Court will then coordinate with the applicable state courts and, if warranted, work with the state court as necessary to coordinate trial dates.

## VI. DEADLINES FOR THE BELLWETHER PROCESS

23. The deadlines set forth above are as follows:

| Event | Date |
|---|---|
| Court to randomly select cases for bellwether consideration at status conference: | September ___, 2019 |
| Deadline for Plaintiffs with cases randomly selected for bellwether process to file *Lexecon* objections: | 10 days after date of random selection |
| Deadline for PEC to identify whether *Lexecon* objections will count as a PEC strike, or give Zimmer Defendants' an additional strike: | 13 days after date of random selection |
| Deadline for parties to file Notices of Bellwether Strikes: | 16 days after date of random selection, at 5PM ET |
| Deadline for parties to file briefs on which cases the Court should select for four bellwether trials: | 10 days after filing of Notices of Bellwether Strikes |

9

| Event | Date |
|---|---|
| Commencement of case-specific fact discovery for Bellwether trial pool: | The date the Bellwether trial pool cases are selected by the Court |
| Closure of case-specific fact discovery for Bellwether trial pool: | 120 days after the date Bellwether trial pool cases are selected by the Court |
| Deadline to notify Court of proposed Bellwether Mediation Process: | November 1, 2019 |
| Deadline for the parties to submit letter briefs proposing the order of Initial Bellwether Trials: | February 3, 2020 at 5 PM ET |
| Deadline for Plaintiffs' expert disclosures for Initial Bellwether Trial Pool cases: | February 7, 2020 |
| Deadline for Zimmer Defendants' expert disclosures for Initial Bellwether Trial Pool cases: | March 20, 2020 |
| Closure of expert discovery for MDL Bellwether Trial #1: | May 22, 2020 |
| Dispositive and *Daubert* motion deadline for MDL Bellwether Trial #1: | June 19, 2020 |
| Deadline for motions *in limine* for MDL Bellwether Trial #1: | June 26, 2020 |
| Response to dispositive and *Daubert* motions due: | July 17, 2020 |
| Oppositions to motions *in limine* due: | July 24, 2020 |
| Reply to dispositive and *Daubert* motions due: | August 4, 2020 |
| Reply to motions *in limine* due: | August 11, 2020 |

| Event | Date |
|---|---|
| MDL Bellwether Trial #1 start date: | September 14, 2020 |

SO ORDERED,

Date: _April_, _1_, 2019

_____
Paul A. Crotty
United States District Judge

11