IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE: COOK MEDICAL, INC., IVC
FILTERS MARKETING, SALES
PRACTICES AND PRODUCT LIABILITY
LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL NO. 2570

This Document Relates to:

*Brand v. Cook Medical, Inc., et al*
Case No. 1:14-cv-6018-RLY-TAB

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO THE COOK
DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR NEW TRIAL**

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

I.     Standard of Review……………………………………………………………...2

       A.  Admission of Evidence………………………………………………………...2

       B.  Attorney Misconduct…………………………………………………………...3

II.    The Court's admission of PX-1913 provides no basis for granting a new trial………4

       A.  The Court did not err in admitting PX-1913 into evidence……………………...5

            1.  How Mrs. Brand used PX-1913 and the objections to it Cook made on
                the record……………………………………………………………………5

            2.  Substantial similarity/relevance…………………………………………....8

            3.  Hearsay within hearsay……………………………………………………8

            4.  Rule 403…………………………………………………………………....9

       B.  Even if erroneous, the admission of PX-1913 did not have a
           substantial and injurious effect or influence on the determination
           of the jury…………………………………………………………………..10

III.   The Court correctly admitted Dr. Gordon's differential diagnosis
       of the cause of Mrs. Brand's injuries…………………………………………..11

       A.  Qualifications……………………………………………………………11

       B.  Methodology……………………………………………………………12

IV.    The Court properly admitted the testimony of Dr. Harlan Krumholz –
       after much briefing and argument – and nothing in that testimony
       warrants a new trial for Cook…………………………………………………..13

       A.  Dr. Krumholz's reliance on Cook documents was legally and
           scientifically proper and was necessary to present the jury with
           the bases for Dr. Krumholz's opinions…………………………………15

**PAGE**

    B.  Dr. Krumholz's opinions on the efficacy and safety of the Celect filter and the Tulip constituting a safer alternative rest on a reliable methodology……………………………………………………………………..21

    C.  Dr. Krumholz's based his causation testimony on a differential diagnosis —which the Court approved before trial— not engineering principles…………22

    D.  The Court correctly admitted Dr. Krumholz's testimony that the defective design of her Celect filter caused her injuries…………………………24

    E.  The Court correctly admitted Dr. Krumholz's testimony regarding the OUS Study……………………………………………………………………25

V.    Cook waived any error in the submission of Mrs. Brand's future damages to the jury, and the Court committed no such error in any event…………..26

    A.  Cook waived any error by the Court in submitting Mrs. Brand's future damages to the jury………………………………………………………..26

        1.  Cook had to, but did not, properly object to Instruction No. 29 on damages and thereby waived any claim of error warranting a new trial……………………………………………………………………27

        2.  Cook had to, but did not, properly object to the verdict form that did not distinguish between past and future damages and thereby waived any claim of error warranting a new trial……………………………29

    B.  In any event, the Court did not err in instructing the jury it could award future damages to Mrs. Brand…………………………………………………30

        1.  Under Georgia law, the Court properly instructed the jury it could consider Mrs. Brand's future mental anguish based on her undisputed physical injuries and regardless of the potential for future filter fragment movement……………………………………………………………31

        2.  The Court did not err in allowing Dr. Gordon to testify regarding filter fragment movement, if such testimony was even necessary………………...34

VI.    Mrs. Brand's counsel did not engage in misconduct, and any mistakes they made in no way justify a new trial……………………………………………………35

ii

**PAGE**

    A.  Mrs. Brand's counsel did not engage in any misconduct by bringing up the existence of other lawsuits against Cook, and any mistakes they made in no way justify a new trial……………………………………………....36

    B.  Mrs. Brand's counsel did not engage in misconduct by engaging in "inappropriate questioning," and any mistakes they made in no way justify a new trial……………………………………………………………42

CONCLUSION…………………………………………………………………....47

CERTIFICATE OF SERVICE……………………………………………………49

# **TABLE OF AUTHORITIES**

<u>**CASES**</u>                                                                                          <u>**PAGE(S)**</u>

*Aidini v. Cotsco Wholesale Corp.*,
    2017 WL 10775082 (D. Nev., April 12, 2017)……………………………..……….42

*Banks v. ICI Americas, Inc.*,
    450 S.E.2d 671 (Ga. 1994)…………………………………………………..5, 17,44

*Boyd v. Orkin Exterminating Co.*,
    381 S.E.2d 295 (Ga. App. 1989)………………………………………………33

*BP Amoco Chem. Co.*,
    697 F. Supp. 2d at 1037……………………………………………………….2

*Bunch v. Pac. Cycle, Inc.*,
    2015 WL 11622952 (N.D. Ga. Apr. 27, 2015 )…………………………………...42

*Cameron v. Werner Enterprises, Inc.*,
    2016 WL 3030181 (S.D. Miss. May 25, 2016)……………………………………..42

*Cerabio LLC v. Wright Med. Tech., Inc.*,
    410 F.3d 981 (7th Cir. 2005)…………………………………………………2, 14

*Christmas v. City of Chicago*,
    682 F.3d 632 (7th Cir. 2012)……………………………………………………3

*Chrysler Corp. v. Batten*,
    450 S.E.2d 208 (1994)……………………………………………………………4

*Cure v. Intuitive Surgical Inc.*,
    705 Fed.App.'x 826 (11th Cir. 2017)………………………………..…………..32

*Dimaso v. Ford Motor Co.*,
    2003 WL 22850075 (Ga. Super. Ct., Cobb Cty., Oct. 21, 2003)………………………..43

*Falk v. Paluch*,
    168 F.R.D. 8 (N.D. Ill. 1995)…………………………………………………..3

*Fox v. Hayes*,
    600 F.3d 819 (7th Cir. 2010)……………………………………………….....29

*Gillis v. Murphy-Brown, LLC*,
    2018 WL 5926605 (E.D.N.C. Nov. 13, 2018)…………………………………….42

## CASES                                                                PAGE(S)

*Goldberg v. 401 N. Wabash Venture LLC*,
    2013 U.S. Dist. LEXIS 119963 (N.D. Ill. Aug. 23, 2013)……………..……………2, 3

*Golden Isles Cruise Line, Inc. v. Lowie*,
    __S.E.2d__, 2019 WL 1907909 (Ga. App. April 29, 2018)……………………………43

*Guerts v. Barth*,
    892 F.2d 622 (7th Cir. 1989)………………………………………………………..28

*Hammer v. Residential Credit Sols., Inc.*,
    2015 U.S. Dist. LEXIS 162636 (N.D. Ill. Dec. 3, 2015)…………………………………2

*In Re: Fosamax Products Liability Litigation*,
    742 F. Supp. 2d 460 (S.D.N.Y. 2010) …………………..……………………………4

*Hensley v. Methodist Healthcare Hosps.*,
    2015 WL 5076982 (W.D. Tenn. Aug. 27, 2015)………………………………….…42

*Holbrooks v. State*,
    126 Ga. App. 569 (1972))……………………………………………………........43

*Jabat, Inc. v. Smith*,
    201 F.3d 852 (7th Cir. 2000)………………………………………………………27

*Johnson v. Am. Nat'l Red Cross*,
    578 S.E.2d 106 (Ga. 2003)…………………………………………………………33

*Lee v. State Farm Mut. Automobile Ins. Co.*,
    533 S.E.2d 82, 85-86 (Ga. 2000)…………………………………………………31

*Mankey v. Bennet*,
    38 F.3d 353…………………………………………………………………28, 29

*Mary Beth G. v. City of Chicago*,
    73 F.2d 1263 (7th Cir. 1983)………………………………………………………43

*McFarland v. Tricam Ind., Inc.*,
    2015 WL 3442027 (N.D. Ill. May 28, 2015)……………………………………….41

*Milksis v. Howard*,
    106 F.3d 754 (7th Cir. 1997)……………………………………………………..3

**CASES**                                                                                      **PAGE(S)**

*Nachtsheim v. Beech Aircraft Corp.*,
    847 F.2d 1261(7th Cir 1988)……………………………………….……8

*Naimat v. Shelbyville Bottling Co.*,
    524 S.E.2d 749 (Ga. App. 1999))……………………………………………43

*Pappas v. Middle Earth Condo. Ass'n*,
    963 F.3d 534 (2d Cir. 1992)…………………………………………………..3

*Pierce v. Chi. Rail Link, LLC*,
    2006 U.S. Dist. LEXIS 84885 (N.D. Ill. Nov. 20, 2006)…………………………..2

*Pfizer Inc. v. Teva Pharm. USA, Inc.*,
    461 F. Supp. 2d 271 (D.N.J. 2006)……………………………………………15, 16

*Sanchez v. City of Chicago*,
    700 F.3d 919 (7th Cir. 2012))……………………………………………………42

*Shick v. Ill. Dep't of Human Servs.*,
    307 F.3d 605 (7th Cir. 2002)…………………………………………………..2

*Shirrell v. Billing*,
    2018 WL 7252824 (S.D. Ill. May 11, 2018)……………………………………42

*Stubbs v. Hamon*,
    487 S.E.2d 91 (Ga. App. 1997)…………………….....................................................33

*Soltys v. Costello*,
    520 F.3d 737 (7th Cir. 2008)……………………………………………………41

*Thorncreek Apts. III, LLC v. Mick*,
    886 F.3d 626, 635 (7th Cir. 2018)……………………………………………36

*U.S. v. Blount*,
    502 F.3d 674 (7th Cir. 2007)……………………………………………………45

*U.S. v. Haldar*,
    751 F.3d 450 (7th Cir. 2014)……………………………………………………45

*U.S. v. Heron*,
    2011 U.S. Dist. LEXIS 121965 (S.D. Ill. Oct. 21, 2011)…………………….………2

**CASES**                                                                                    **PAGE(S)**

*U.S. v. McKinney*,
    954 F.2d 471 (7th Cir. 1992)……………………………………….………..41

*U.S. v. TDC Mgmt. Corp., Inc.*,
    827 F.3d 1127 (D.C. Cir. 2016)……………………………………………15

*Venson v. Altamirano*,
    749 F.3d 641 (7th Cir. 2014)…………………………………………………4

*Walden v. Maryland Cas. Co.*,
    2018 WL 6445549 (D. Mont. Dec. 10, 2018)…………………………………...42

*Warnock v. Sandford*,
    825 S.E.2d 922 (Ga. App. 2019)…………………………………….…..31

*Whiting v. Westray*,
    294 F.3d 943 (7th Cir. 2002)…………………………………………...3

*Wilson v. City of Chicago*,
    2013 U.S. Dist. LEXIS 9495, 2013 WL 268468, at *5 (N.D. Ill. Jan. 24, 2013)…...2, 27

*Wolk v. Churchill*,
    696 F.2d 621 (8th. Cir.1982)………………………………………....29

*Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Products Liab. Litig.*,
    2011 WL 6740363 (S.D. Ill. Dec. 22, 2011)…………………………………15,16


**RULES**                                                                                    **PAGE(S)**

Fed. R. Civ.P. 61…………………………………………………………………..3

Fed. R. Evid. 103(a)(1)…………………………………………….……………...……3

Fed. R. Evid. 403……………………………………………………...…………9,10

Fed. R. Evid. 702……………………………………………………………….…2

Fed. R. Evid 801 (c )(2) ……………………………………………………………9

Fed. R. Evid 801 (d)(2)(B)…………………………………………....……………9

**RULES** **PAGE(S)**

Fed. R. Evid 801 (d)(2)(D)……………………………………..…………………………9

Fed. R. Evid 804 (b)(3)(A)……………..…………………………………………………9

**OTHER AUTHORITIES** **PAGE(S)**

Georgia Suggested Pattern Jury Instructions –Civil § 65.503…………………….……..33

9C Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure
§ 2558 (3d ed., April 2019……………………………………………………………30

COMES NOW Tonya Brand ("Mrs. Brand"), Plaintiff in the above-styled action, by and through undersigned counsel, and hereby files Plaintiff's Memorandum in Opposition to the Cook Defendants' Memorandum in Support of Motion for New Trial, and states as follows:

In The Cook Defendants' Memorandum in Support of Motion for New Trial ("MNT")[1], Cook requests a new trial based on the Court's alleged errors in admitting four categories of evidence [2]and the alleged misconduct of Mrs. Brand's counsel during trial. Cook face a very strong presumption against granting a new trial for these reasons, and it has not even come close to rebutting it.

Cook has not shown that the Court's admission of any of the four categories of evidence constitutes an "extraordinary situation" as required to obtain a new trial in the Seventh Circuit. First, as to all but a portion of one of the four, it fails to even demonstrate that the Court erred in admitting the evidence. Second, as to all four, Cook seeks only to rehash pre-trial evidentiary rulings by the Court, some of which the Court made multiple times.

Third, as to the fourth category, Dr. Krumholz's testimony about internal Cook documents, the Court properly allowed such testimony generally, and it corrected a few isolated inadmissible statements of Dr. Krumholz by sustaining objections to them. Those isolated statements which the Court disallowed on the record in front of the jury in no conceivable way had a substantial and injurious influence on the jury's verdict. And, the jury's verdict is in no way inconsistent with substantial justice.

---

[1] Dkt.10297.
[2] Admission of PX-193, admission of Dr. Gordon's differential diagnosis testimony, admission of various testimony of Dr. Krumholz and admission of Mrs. Brand's fear of future injury.

1

Cook has failed to show any attorney misconduct, much less the insidious plot it concocts whereby Mrs. Brand's counsel supposedly repeatedly interjected improper topics into the trial to poison the jury's collective mind. Cook's argument would do any conspiracy theorist proud. And, its argument neglects that in most instances it failed to object, waiving its complaints. Certainly, no conduct cited by Cook conceivably prejudiced the jury to the point of damaging Cook's substantial rights or caused an unjust verdict.

## I.   Standard of Review.

A.    Admission of evidence.

"A new trial will be granted in the event of an error in the admission of evidence *only* 'in extraordinary situations.'"[3] Thus, even if the Court's rulings are erroneous, "a new trial is warranted only if the error has a substantial and injurious effect or influence on the determination of a jury, and the result is inconsistent with substantial justice.'"[4] Further, the established practice in the Seventh Circuit is that a party seeking a new trial must do more than merely reassert its pre-trial evidentiary positions.[5] As the Northern District of Illinois explained in *Goldberg*, a new trial

---

[3] *Hammer v. Residential Credit Sols., Inc.*, No. 13 C 6397, 2015 U.S. Dist. LEXIS 162636, at *92 (N.D. Ill. Dec. 3, 2015) (quoting *Shick v. Ill. Dep't of Human Servs.*, 307 F.3d 605, 611 (7th Cir. 2002)).

[4] *Cerabio LLC v. Wright Med. Tech., Inc.*, 410 F.3d 981, 994 (7th Cir. 2005) (internal citation omitted).

[5] *See, e.g., Goldberg v. 401 N. Wabash Venture LLC*, No. 09 C 6455, 2013 U.S. Dist. LEXIS 119963, at *71-72 (N.D. Ill. Aug. 23, 2013) (denying motion for new trial where moving party "merely rehashe[d] arguments she previously made in support of five motions *in limine*, which the Court rejected.") (citing *Wilson v. City of Chicago*, No. 07 CV 1682, 2013 U.S. Dist. LEXIS 9495, 2013 WL 268468, at *5 (N.D. Ill. Jan. 24, 2013)) (refusing to grant a new trial based on a purportedly erroneous motion *in limine* ruling); *BP Amoco Chem. Co.*, 697 F. Supp. 2d at 1037 (same); *see also U.S. v. Heron*, No. 06-CR-30068-WDS, 2011 U.S. Dist. LEXIS 121965, at *5-6 (S.D. Ill. Oct. 21, 2011) (denying new trial where the court admitted expert testimony under *Daubert* and Fed. R. Evid. 702, finding that the defendant "ha[d] not raised any new basis for a finding of error, and the Court remain[ed] persuaded that it was appropriate to allow this testimony at trial[.]"); *Pierce v. Chi. Rail Link, LLC*, No. 03 C 7524, 2006 U.S. Dist. LEXIS 84885, at *14-

is not warranted when "[r]ather than provide the Court with any new evidence" of why its pre-trial rulings were in error, the movant "merely rehashes arguments [it] made in support of [pre-trial] motions."[6]

Of course, "[a] party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and: (1) if the ruling admits evidence, a party, on the record: (A) timely objects or moves to strike: and (B) states the specific ground, unless it was apparent from the context…."[7] "By failing to object [to testimony] [Defendants] may not raise the issue for the first time in a motion for a new trial or on appeal." [8]

B. Attorney Misconduct.

"Obviously, not all misconduct of counsel taints a verdict to such a degree as to warrant a new trial." *Pappas v. Middle Earth Condo. Ass'n*, 963 F.3d 534, 540 (2d Cir. 1992). Thus, "[t]o obtain a new trial on attorney misconduct grounds, the defendants must show both that the misconduct occurred and that it prejudiced their case." *Whiting v. Westray,* 294 F.3d 943, 944 (7th Cir. 2002). "The misconduct prejudices a party if it affects the party's 'substantial right.' FED.R.CIV.P. 61. If not, any wrongdoing is merely harmless error. *Id.*" *Falk v. Paluch*, 168 F.R.D. 8, 9 (N.D. Ill. 1995). In the Seventh Circuit, attorney misconduct in the form of improper comments or argument during closing "rarely rise to the level of reversible error." *Milksis v. Howard*, 106 F.3d 754, 761 (7th Cir. 1997).

---

15 (N.D. Ill. Nov. 20, 2006) (finding that there was sufficient evidence to permit expert testimony, and reaffirming the admissibility thereof).

6 *Goldberg,* 09 C 6455, 2013 U.S. Dist. LEXIS 119963, at *71 (N.D. Ill. Aug. 23, 2013).

7 Fed. R. Evid 103(a)(1).

8 *Christmas v. City of Chicago*, 682 F.3d 632, 640 (7th Cir. 2012).

3

Whether misconduct prejudice's a party's substantial rights should be considered by the court in the context of the trial as a whole under the totality of the circumstances, including the nature of the conduct, its relevancy to the real issues before the jury, and the manner in which the parties and the court dealt with the conduct. *In re Fosamex Prods. Liab. Litig.*, 742 F. Supp. 2d 460, 477 (S.D.N.Y. 2010).  Of course, complaints regarding attorney misconduct are waived if the misconduct is not objected to at the time it occurs. *Venson v. Altamirano*, 749 F.3d 641, 657 (7th Cir. 2014).

**II.    The Court's admission of PX-1913 provides no basis for granting a new trial.**

PX-1913 is an email among Cook employees and an outside Cook consulting physician that attaches a summary of Cook's conclusions regarding complaints about all of its filters associated with deaths from October 1, 2008 to June 10, 2016. Of the 26 listed complaints, 19 involved the Celect.[9] As to some, Cook's conclusion was that the cause of death could not be determined. As to others, it concluded the filter did not cause the death. And, as to some Cook concluded the filter caused the death. Critically, as to two of the cases, patients 65484 and 104779, Cook concluded that perforation of the vena cava by the filter caused the death. Of course, Mrs. Brand's very serious injuries also resulted from her Celect filter perforating her vena cava.

In order for the Court to evaluate Cook's arguments about PX-1913, it must keep in mind what the document actually says, how Mrs. Brand referenced it during trial and the purposes for which Mrs. Brand used it. And, those uses must be considered in the context of Georgia law, which focuses on whether a manufacturer used reasonable care in the design of its product[10] and mandates

---

[9] Before displaying any part of PX-1913 to the jury, Mrs. Brand redacted all references to the MDL, and she redacted the entries regarding the seven non-Celect filters before it was given to the jury for its deliberations.

[10] *Chrysler Corp. v. Batten*, 450 S.E.2d 208 (1994).

4

that juries decide design defect cases using a risk/utility test that includes as a factor the gravity and severity of the danger posed by the design.[11]

In particular, the Court will see that Mrs. Brand spent little time discussing PX-1913, accurately characterized it, and used it for purposes relevant under Georgia law and not for the purpose of unfairly flaming the jury. This stands in stark contrast to Cook's overstated and melodramatic description of the role PX-1913 played during trial.[12]

In that context, the Court should conclude it did err in admitting PX-1913 into evidence. Further, it should conclude that even if did err, the admission of PX-1913 did not have a substantial and injurious effect or influence on the determination of the jury.

A.    The Court did not err in admitting PX-1913 into evidence.

1.   How Mrs. Brand used PX-1913 and the objections to it Cook made on the record.

After extensive objections by Cook and Cook taking Dr. Krumholz on voir dire,[13] the Court invited Cook to cross examine Dr. Krumholz based on the substance of its objections and admitted PX-1913 into evidence, stating "[i]t's probative on the issue of risk utility," "it's a summary" and that Cook's objections, "[go] to its weight, not admissibility."[14] Mrs. Brand then questioned Dr. Krumholz about PX-1913 for perhaps five minutes.[15]

Dr. Krumholz first accurately described the document.[16] He then made clear that he was not telling the jury that each of the deaths was caused by a Cook filter, but rather that all of the deaths other than the suicide were suspicious and this constituted a bell ringing about safety to

---

[11] *Banks v. ICI Americas, Inc.*, 450 S.E.2d 671, 674 n.6 (Ga. 1994).
[12] MNT at 2-8.
[13] Tr. Vol. 2, 494:12-503:4.
[14] Tr. Vol. 2, 496: 20-21; 503:5-8.
[15] Tr. Vol. 2, 503:15-508.
[16] Tr. Vol. 2, 503:15-24.

Cook.[17] This relates to the reasonableness of Cook's conduct in connection with the Celect, making it relevant and admissible. Dr. Krumolz then discussed a few of the individual complaints, focusing on patients 65484 and 104779, the ones Cook determined in the summary had been killed by Celect perforations.[18] This, of course, is directly relevant to the gravity and severity of the perforation danger posed by the Celect-death. In fairness, Dr Krumholz even told the jury that the perforation suffered by patient 104799 could have been either the dominant or contributory cause of the patient's death.[19] Despite the Court's invitation, Cook did not cross-examine Dr. Krumholz regarding PX-1319, apparently deciding it was not particularly significant in the context of Dr. Krumholz's actual testimony.

Mrs. Brand next attempted to question Defendant's expert, Dr. Voorhies, regarding PX-1913, but the Court refused to allow her to do so on the basis that he had not previously seen the document.[20] However, even in the absence of having seen this internal Cook document, Dr. Voorhies admitted that deaths have been associated with the Celect filter, demonstrating the gravity and severity of the danger it poses. [21]

The third and final witness with whom Mrs. Brand brought up PX-1913 was Cook's Director of Sales, Mark Breedlove. Mrs. Brand took Mr. Breedlove through several of the complaints, noting some where Cook said the cause of death was unknown or not caused by the filter, one of the two identified as dying from perforation, patient 1044779, and noting one possible additional case of perforation-caused death, patient 21808 ("retroperitoneal hematoma and

---

[17] Tr. Vol. 2, 503:25-504:9.
[18] Tr. Vol. 2: 504:10-508:8.
[19] Tr. Vol. 2, 506:9-16.
[20] Tr. Vol. 9, 2738:2741:19.
[21] Tr. Vol. 9, 2739:14-17.

hemorrhage due to multiple perforations of inferior Vena Cava by prongs of caval filter").[22] This served again to show the gravity and severity of the danger posed by Celect perforations. The entire questioning of Mr. Breedlove about PX-1913 could only have taken five to ten minutes.

Demonstrating the relative lack of significance Mrs. Brand and, necessarily, the jury attributed to PX-1913 is that her counsel mentioned it in closing only twice, certainly spending less than a minute on it. The first time, in the context of arguing risk benefit and specifically the danger posed by perforation,[23] Mrs. Brand noted that PX-1913 referred to 18 deaths, "some of which, there's no doubt were caused by the Celect filter," and he specifically described the two deaths which the document itself and Dr Krumholz attributed to Celect perforation, patients 65484 and 104779.[24] That argument was relevant, accurate and entirely proper and made without objection by Cook

The second mention of PX-1913 by Mrs. Brand's counsel during closing was simply a mistake and also made without objection by Cook. He referenced the exhibit and then discussed something different: the two deaths caused by the Celect during the OUS Study.[25]

Before the Court admitted PX-1913 into evidence and before Mrs. Brand ever had the opportunity to question Dr. Krumholz or anyone else about it, Cook made three objections to its admission in toto: (1) that the complaints discussed in it by Cook were not sufficiently similar to Mrs. Brand's case (essentially a relevancy objection), (2) the complaints discussed in it constitute hearsay within hearsay, and (3) Rule 403.[26] Prior to Mrs. Brand questioning Mr. Breedlove

---

[22] Tr. Vol. 10, 3008:24-3019:1.
[23] Tr. Vol. 14:14-17.
[24] Tr. Vol. 14, 4287:2-11.
[25] Tr. Vol. 14, 4371:16-23.
[26] Tr. Vol. Vol. 2, 494:12-496:23; 502:2-503:11.

7

regarding PX-1913, Cook reargued the same objections and added lack of foundation even though that objection had already been waived by Cook's failure to make it before the Court admitted the exhibit and allowed its publication to the jury.[27] Cook failed to renew its objection to admission of the exhibit when Mrs. Brand's counsel mentioned it during closing or to object at the time that counsel mischaracterized the document or otherwise referred to it improperly. Cook never objected to specific parts of the exhibit and asked the Court for their redaction prior to its admission and publication to the jury.

2. Substantial similarity/relevance.

PX-1913 does not fall under the substantial similarity rule because Mrs. Brand did not use it for any of the purposes that require evidence of other accidents to be substantially similar to the accident in issue: to show notice to Cook of the damages of the Celect's design defects, the existence of the design defects or that the design defects caused her injuries.[28] Rather, she merely used it to show the gravity and severity of Celect perforations.

In any case, Mrs. Brand spent the majority of the time in regard to PX-1913 questioning witnesses about the two deaths caused by perforations, substantially similar to the perforation that injured Mrs. Brand. If Cook contended that all of the other Celect deaths referenced in the exhibit should have been redacted, it should have asked the Court for that relief. Having failed to do so, it waived the objection as to the other deaths.

3. Hearsay within hearsay.

The deaths described in PX-1913 were not offered for the truths of the matters asserted in the document about them: the cause of death could not be determined for some, the Celect did not

---

[27] Tr. Vol. 10, 2922:21-2925:8.

[28] *See Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1268 (7th 1988).

cause the death of others and the Celect did cause some of the deaths. Rather, Mrs. Brand offered them to show that Celect perforation posed a severe danger-death. Accordingly, the statements regarding the deaths do not constitute hearsay under Fed. R. Evid. 801(c)(2).

The statements also constituted statements made by Cook's agents or employees on a matter within the scope of that relationship and while it existed and/or statements that Cook manifested that it adopted or believed to be true, and they were offered against Cook. So, again, they do not constitute hearsay, this time pursuant Fed. R. Evid. 801(d)(2)(B) and/or (D).

Finally, if necessary, the statements fall within the exception to hearsay for statement against interest pursuant to Fed. R. Evid. 804 (b)(3)(A). They were against Cook's interest because they have so great a tendency to expose Cook to civil liability.

4.  Rule 403.

It bears starting with the standard for excluding evidence set by Rule 403: the probative value of the relevant evidence must be "*substantially outweighed* by the danger of…*unfair prejudice*…[or] *misleading* the jury…." Fed. R. Evid. 403 (emphasis added). Cook apparently claims that the document itself or one statement by Dr. Krumholz that all the deaths were suspicious could have misled the jury into believing that all the listed deaths were caused by the Celect and this created unfair prejudice that substantially outweighed the probative value that Celect perforations could cause death.[29] The facts simply do not bear this out.

The exhibit itself, published to the jury and available to it during its deliberations, specifically states Cook's findings that the filter had caused some deaths, had not caused some and that the cause could not be determined for others. Further, this was expressly highlighted for the

---

[29] MNT at 6-8.

jury during the questioning of Dr. Krumholz and Mr. Breedlove. And, Mrs. Brand's counsel in closing said that the Celect had caused some of the deaths and specifically described only the two as to which Cook had made that finding. Nothing whatsoever supports that the jury was misled or led into unfair prejudice at all, much less to an extent that it substantially outweighed the probative value of PX-1913.

The Court should also consider this exhibit in the greater context of the evidence at trial. As Cook itself wrote in The Cook Defendants' Memorandum in Support of Motion for Judgment as Matter of Law about the gravity and severity of the danger posed by the Celect, "[t]he parties and all the experts agree that a fracture may pose serious risks, including embolization to other organs and potentially death."[30] In the context of the overwhelming evidence the jury heard that Celect filter perforations could cause death by leading to fractures or otherwise, PX-1913 constituted a mere side note about gravity and severity discussed in front of the jury for at most 10 to 20 minutes out of a three week trial. It could not conceivably have unfairly prejudiced the jury against Cook.

B.  Even if erroneous, the admission of PX-1913 did not have a substantial and injurious effect or influence on the determination of the jury.

This analysis is much like the Rule 403 analysis. The jury only heard about PX-1913 for about 10 to 20 minutes out of a three-week trial. Mrs. Brand's counsel spent less than a minute discussing it in closing with no objection by Cook. The document itself specifies that only some deaths it discusses were caused by the Celect, and this was highlighted during the testimony of Dr. Krumholz and Mr. Breedlove.

---

[30] Dkt. 10295 at 28.

10

Mrs. Brand only used PX-1913 to demonstrate that Celect perforations could cause death, something which Cook never disputed. Indeed, as Cook admits, the parties and all the experts agreed on this. Dr. Krumholz testified at far greater length that a Harvard committee had found that two patients in Cook's own OUS study were killed by their Celect filters.[31] The other unchallenged evidence that the Celect could and did kill people completely overwhelmed PX-1913.

Under these facts, no one could reasonably conclude that PX-1913 had a substantial and injurious influence on the jury. The most reasonable conclusion is that the jury spent not a moment focusing upon it.

**III.    The Court correctly admitted Dr. Gordon's differential diagnosis of the cause of Mrs. Brand's injuries.**

A.    Qualifications.

Cook repeats the exact same arguments regarding Dr. Gordon's qualifications it made before trial.[32] Before trial, the Court held:

> As an interventional and diagnostic radiologist, Dr. Gordon has implanted IVC filters, including the Celect and Tulip, over his twenty-year career and as such, he is familiar with the anatomy of the IVC, its location to surrounding organs and the spine, and reading radiological images. In addition, he is a medical doctor familiar with reading and interpreting medical records. The court therefore finds Dr. Gordon is qualified to rule in and rule out potential causes of Plaintiff's alleged injuries.[33]

Dr. Gordon's qualifications have not changed since the Court made this ruling, so Cook merely rehashes the exact same argument. That does not provide a basis for a new trial in the Seventh Circuit.

---

[31] Tr. Vol. 2, 549:7-21; 588:24-589:10; Vol.3, 948:2-17; Vol. 4, 1023:7-1024:3.
[32] Compare Dkt. 8635 at 23-25 and Dkt. 10297 at 9-11.
[33] Dkt. 9770 at 5.

B.      Methodology.

Again, Cook repeats the same arguments that it made pre-trial: that Dr. Gordon failed to adequately "rule out" Mrs. Brand's exposure/spinal surgeries and her osteophyte/spondylosis as alternative causes of her injuries.[34] Pre-trial, the Court held that these perceived "flaws in Dr. Gordon's testimony may be explored at trial," and he denied Cook's motion to exclude his opinions on causation."[35] He also held in denying Cook's summary judgment motion on causation that Dr. Gordon had offered admissible testimony on the issue that raised a genuine issue of material fact.[36] Cook points to no differences between Dr. Gordon's trial testimony and his report and deposition testimony as a basis for the Court to reconsider its prior ruling. Rather, it simply rehashes its prior rejected arguments, which does not provide a basis for a new trial in the Seventh Circuit.

In any case, Cook waived any and all objections to Dr. Gordon's differential diagnosis that the Celect's design defects caused Mrs. Brand's perforation and fracture by soliciting such testimony from him:

> Q [Ms. Pierson] Your approach was rule those [possible causes of Mrs. Brand's perforation and fracture] out one by one and, if you could rule out all of the medical causes, then that left you with the conclusion that it was *the filter's fault*, correct?
> A Yes, ma'am.[37]

Cook cannot excuse this waiver by claiming its counsel only repeated what Dr. Gordon had already testified to, because he had not done so based upon a Cook objection.[38] Rather, he had previously only testified that the source of the pain coming out of Mrs. Brand's thigh was the fracture of the

---

[34] Dkt. 8635 at 26-29 with Dkt. 10297 at 12-15.
[35] Dkt. 9770 at 7 & 10.
[36] Dkt. 9947 at 3.
[37] Tr. Vol. 7, 1991:5-8 (emphasis added.
[38] Tr. Vol. 6, 1799:13-17.

IVC filter secondary to perforation without attributing the perforation and fracture to the filter's design.[39]

Finally, although unnecessary, in her contemporaneously-filed Plaintiff's Memorandum in Opposition to the Cook Defendants' Memorandum in Support of Motion for Judgment as a Matter of Law at 6-7 & 14-26, Mrs. Brand explains in great detail why Dr. Gordon's differential diagnosis was not only admissible but more than sufficient to support the jury's verdict. In short, the Court committed no error whatsoever in admitting Dr. Griffin's causation testimony, much less one than would justify a new trial.

## IV.   The Court properly admitted the testimony of Dr. Harlan Krumholz—after much briefing and argument—and nothing in that testimony warrants a new trial for Cook.

As previously explained, a new trial will be granted in the event of an error in the admission of evidence *only* in extraordinary situations. As to Dr. Krumholz, Cook demonstrates no extraordinary situation. Rather, it merely makes arguments that the Court considered—and rejected—prior to trial on multiple occasions.[40] Dr. Krumholz's live testimony, rather than creating error, actually served to demonstrate why the Court correctly rejected Cook's voluminous *Daubert* challenges and *in limine* motions. Mrs. Brand and Cook questioned Dr. Krumholz in great detail about his methodology and the basis for his opinions.[41] And, Dr. Krumholz's testimony at trial was consistent with his Rule 26 report and deposition testimony.

Far from presenting the type of "extraordinary situation" that would warrant a new trial, Cook merely attempts to rehash settled issues such as Dr. Krumholz's ability to rely on Cook internal documents, his methodology for assessing the safety of the Celect, and the quality of his

---

[39] Tr. Vol. 6, 1999:19-25.
[40] Dkt. 8631, 8633.
[41] *See, e.g.*, Vol. 1, pp. 535:2-16, 552:19-553:8; Vol. 2, 747:13-748:19, 796:8-23, 815:5-25.

13

differential diagnosis.[42] At bottom, Cook's position is that a new trial is warranted because Dr. Krumholz should not have been allowed to testify in the first place. Mrs. Brand respectfully suggests that the Court got it right the first time and that nothing revealed at trial exposes any error by the Court. The Court should therefore reject Cook's request for a new trial.

In Cook's pre-trial *Daubert* motion to exclude Dr. Krumholz's testimony, Cook criticized (1) Dr. Krumholz's reliance on internal Cook documents,[43] (2) Dr. Krumholz's opinions on Cook's "state of mind" and "motives,"[44] (3) Dr. Krumholz's methodology for assessing safety and effectiveness,[45] (4) Dr. Krumholz's competence to assess the OUS study,[46] and (5) Dr. Krumholz's competence to assess whether the filter defects caused Mrs. Brand's injuries.[47] The Court considered and rejected each of these challenges.[48] And yet Cook now asks the Court for a new trial based on exactly the same arguments.

There are two critical differences between then and now—each of which cuts in Mrs. Brand's favor. First, the burden on Cook is much higher now—at the motion for new trial phase—as Cook must show not only that the Court was wrong but also that the error was "substantial and injurious" and that "the result is inconsistent with substantial justice."[49] Second, Dr. Krumholz's live testimony on direct and Cook's many hours of cross-examination reveal that the Court correctly denied Cook's *Daubert* motion and that Cook's lingering quibbles go to the weight of Dr. Krumholz's testimony and not its admissibility.

---

[42] MNT at 16-29.
[43] Dkt. 8663, p. 4.
[44] Dkt. 8663, p. 9.
[45] Dkt. 8663, p. 10.
[46] Dkt. 8663, p. 20.
[47] Dk.t 8663, p. 26.
[48] *See, generally*, Dkt. 9771.
[49] *Cerabio*, 410 F.3d at 994 (internal citation omitted).

14

A.     Dr. Krumholz's reliance on Cook documents was legally and scientifically proper and was necessary to present the jury with the bases for Dr. Krumholz's opinions.

Cook's first renewed attack on Dr. Krumholz is its argument that his reliance on and reference to internal Cook documents was improper.[50] This attack fails because Dr. Krumholz's treatment of internal Cook documents was not only proper, it was necessary for the jury to understand the bases for his opinions and to credit his testimony.

It is proper for an expert to apply his or her knowledge and experience to information learned through internal company documents.[51] And, in relaying the expert's opinions to the jury, the expert *must* refer to the source documents.[52] Reference to internal company documents is not only proper, it is necessary to adequately explain the expert's testimony to the jury. The great bulk of the pre-market testing of the Celect filter was controlled by Cook. Dr. Krumholz—and any expert—therefore *had* to rely on internal company documents to fully analyze the Celect's safety and effectiveness. Preventing Dr. Krumholz from showing the jury the very documents on which he relied to form his opinions would have undercut the very foundation of those opinions. The Court was therefore correct in permitting Dr. Krumholz to discuss those documents with the jury.

Allowing an expert to refer during testimony to what the expert has reviewed in reaching his or her conclusions is supported by substantial case law. In the *Yaz* litigation, the MDL court permitted a Bayer scientist to give opinions based in part on consultations with internal Bayer personnel and on review of Bayer's internal reports.[53] In litigation against Teva Pharmaceuticals involving significant volume of FDA documents, the defendant argued—as Cook has here—that

---

[50] Dkt. 10297, p. 17.
[51] *See U.S. v. TDC Mgmt. Corp., Inc.*, 827 F.3d 1127, 1133–34 (D.C. Cir. 2016).
[52] S*ee, e.g., Pfizer Inc. v. Teva Pharm. USA, Inc.*, 461 F. Supp. 2d 271, 278–79 (D.N.J. 2006).
[53] *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Products Liab. Litig.*, 3:09-CV-10012-DRH, 2011 WL 6740363, at **5-6 (S.D. Ill. Dec. 22, 2011)

an expert's opinions were improper because they "merely recite[d] FDA documents."[54] The court disagreed, noting the unworkability of restricting experts from showing the documents on which they rely.[55] The *Teva Pharmaceuticals* court acknowledged that the expert cited, quoted, and discussed many FDA records as part of his opinions and explained that "such citations are *proper*—and indeed *necessary*—in order to set forth the basis for [the expert's] ultimate conclusions."[56] Like the courts in *Yaz* and *Teva Pharmaceuticals,* the Court was correct in permitting Dr. Krumholz to refer to the documents he analyzed both to explain and substantiate his opinions.

The supposed prejudice to Cook of allowing Dr. Krumholz to discuss Cook documents during his testimony is that documents harmful to Cook's case were allegedly unfairly emphasized by Dr. Krumholz. But that argument rests on the false premises that Dr. Krumholz contributed no analysis to the documents about which he testified and that they concerned matters about which he had no expertise to offer the jury. Before trial, the Court considered Dr. Krumholz's use of company documents in forming his opinion and found "[Dr. Krumholz] appropriately used Cook internal documents and analyzed them based on his experience as an epidemiologist, cardiologist, internist, and public health expert in forming his opinions in this case."[57] Thus, the Court has already ruled that Dr. Krumholz's substantive reliance on and analysis of internal Cook documents (1) was proper given his expertise, and (2) was used "in forming his opinions." Given that Dr. Krumholz properly based his opinions on internal Cook documents, it was also proper for him to discuss and analyze those documents at trial to demonstrate the bases for his opinions.

---

[54] *Pfizer Inc. v. Teva Pharm. USA, Inc.*, 461 F. Supp. 2d 271, 278–79 (D.N.J. 2006).
[55] *Id.*
[56] *Id.* (emphasis added).
[57] Dkt. 9771, p. 20

16

Of course, Cook's argument paints with a very broad brush even though evidentiary objections must necessarily be considered on an individualized basis. Cook only gives four examples of Dr. Krumholz's supposedly improper discussion of Cook documents-presumably its best four examples.[58] Accordingly, if the Court finds that Cook did not preserve error as to those examples by proper objection or that it properly denied those objections or that they did not affect Cook's substantial rights when considered in the totality of the trial, it can not only reject those four examples as a basis for a new trial, it can reject Cook's argument in its entirety.

Cook gives as its first example Dr. Krumholz saying in connection with a FDA document regarding the VCA-1 animal study: "[The FDA] sort of are concerned that's what's being reported [in VCA-1] isn't the full story."[59] Cook neglects to inform the Court that it objected to this statement and the Court sustained the objection.[60] This statement would be relevant to the accuracy of the information that Cook provided to the FDA, which is relevant to one of the nine *Banks* risk utility factors, and is a tiny part of the testimony that the jury heard regarding the VCA-1 animal study and Cook's truthfulness in providing information to the FDA. Given that, and given the Court sustained an objection to it, the argument that it affected Cook's substantial rights is preposterous.

The exact same thing is true of the second example. After highlighting key language in a Cook executive summary, Dr, Krumolz said about what the authors were saying: "They're certainly saying, 'This doesn't in any way reassure us. This doesn't take off the hook.'"[61] Again, Cook fails to inform the Court that it objected to this statement and that the Court sustained the

---

[58] MNT pp. 18-19.
[59] MNT p. 19 (citing Tr. Vol. 2 at 430:5-14).
[60] Tr. Vol. 2, p. 430: 15-18.
[61] MNT at 19 (citing Tr. Vol. 2 at 450:21-451:8).

17

objection.[62] Given that the jury heard the actual words of the executive summary, heard more testimony about it, had the entire document available to review and that the Court sustained the objection, it is not reasonable to believe this so influenced the jury as to prejudice Cook's substantial rights.

The third example is that when asked if a Cook document was limited to the topic of migration, Dr. Krumholz stated: "But my goodness, if this is just about migration, they've got bigger problems than migration."[63] This time Cook not only fails to tell the Court that it object to this statement and the Court sustained the objection, but also that the Court admonished Dr. Krumholz, "[p]lease, Doctor, just answer the question," to which Dr. Krumholz responded, "I'm sorry."[64] The Court obviously sustained the objection because it was non-responsive. The jury heard a mountain of evidence that, in fact, Cook had bigger problems with the Celect filter than migration—perforation and fracture. Given the Court's sustaining of the objection and admonishment and given the answer was perfectly true, no reasonable person could conclude Cook's substantial rights were prejudiced.

The fourth objection is to Dr. Krumholz declaring about the OUS study that it "is one of the worst safety studies I've ever seen" on the basis that he was supposedly not qualified to opine regarding the quality of such studies.[65] Cook failed to object to the statement, waiving any complaint about it. Further, the Court previously held Dr. Krumholz qualified to offer opinions on the OUS Study.[66] In short, this statement offers no possible basis for granting a new trial.

---

[62] Tr. Vol. 2, p. 450: 9-12.
[63] MNT at 19 (citing Tr. Vol. 2 at 453:19-25).
[64] Tr. Vol. 2, p. 454:1-4.
[65] MNT at 19 (citing Tr. Vol. 2 at 522:15-18; Vol. 3 at 824:22-825:17).
[66] Dkt. 9771 at 11-12.

18

Looking at these examples and any similar instances that allegedly exist in the context of the trial as a whole dispels any possible argument that Cook's substantial rights were prejudiced. Cook was free to present its own competing interpretations of the documents that hurt its case—and it did so. Cook's counsel cross examined Dr. Krumholz for hours. During that cross examination, Cook explored both Dr. Krumholz's expertise and his analysis of Cook's internal documents. In particular, Cook questioned Dr. Krumholz about the OUS study and his ability to interpret it,[67] the VCA-1 study and Cook's explanation for it,[68] and the Cook Executive Summary that Cook claimed was only about migration.[69]

Cook also put on witnesses who tried to refute Dr. Krumholz's opinions and explain away the harmful documents. The three documents Cook refers to in its Motion for New Trial as being unfairly prejudicial to Cook are (1) the OUS study, (2) the Cook Executive Summary, and (3) the VCA-1 animal study. During the trial, Dr. Bill Voorhees testified about the OUS study and the VCA-1 animal study documents and attempted to undercut Dr. Krumholz's opinions by disputing the nature of what these documents say.[70] And in Cook's case, it called a corporate representative, Mark Breedlove, who was free to testify about all those documents.[71]

Cook also asks for a new trial because the Court—according to Cook—permitted Dr. Krumholz to "opine on Cook's state of mind or motives."[72] While it claims Dr. Krumholz did this "frequently," Cook cites in support only a single exchange in which Dr. Krumholz, when asked

---

[67] *See* generally Krumholz testimony, Vol. 3, p. 865 and following.
[68] *See* Krumholz testimony, Vol. 3, p. 1038 and following.
[69] *See* Krumholz testimony, Vol. 4, p. 1035:6 – 1036:5.
[70] See Voorhees testimony, Vol 9, p. 2790:22 – 2800:17 (VCA-1); p. 2805:9 – 2809:20 (OUS patients).
[71] *See generally* Breedlove testimony, Vol. 10, p. 2939.
[72] Dkt. 10297, p. 21

whether Cook "accurately" disclosed certain information to the FDA, responded that Cook "did not truthfully disclose" the information.[73] Whether something is "truthful"-true or false-is an objective issue and says nothing about Cook's state of mind in offering the false information. Even if the distinction between truthfulness and accuracy somehow invaded the territory of Cook's state of mind, this testimony was met with an objection that was sustained.[74] The Court instructed Mrs. Brand's counsel to "rephrase [her] question"—which she did.[75] Dr. Krumholz then clarified his testimony.[76] Under the circumstances, this hardly constitutes prejudicial error

Before trial this Court held:

Cook claims Dr. Krumholz merely "regurgitates" Cook internal documents and improperly uses those documents as a means to testify on Cook's state of mind. Based on a review of Dr. Krumholz's Expert Report, the court finds he appropriately used Cook internal documents and analyzed them based on his experience as an epidemiologist, cardiologist, internist, and public health expert in forming his opinions in this case. Cook's objection is therefore overruled.[77]

Cook has not identified any way in which Dr. Krumholz's trial testimony did not overwhelmingly fall within this ruling. Four instances where Dr. Krumholz uttered single objectionable sentences to which Cook objected and the Court sustained the objections hardly prejudiced Cook's substantial rights. Cook's argument simply rehashes it rejected pre-trial arguments, and in the Seventh Circuit that cannot justify a new trial.

---

[73] *Id.* citing Krumholz testimony, Vol. __, p. 636:12-15.
[74] Tr. Vol. 3, p. 636:12-21.
[75] *Id.* at 636:20 – 637:1.
[76] *Id.* at 637:2-4.
[77] Dkt. 9771 at 20.

20

B.      Dr. Krumholz's opinions on the efficacy and safety of the Celect filter and the Tulip constituting a safer alternative rest on a reliable methodology.

Cook argues that because Dr. Krumholz offered opinions on the efficacy and safety of the Celect filter and the Tulip constituting a safer alternative after testifying about the lack of good studies on these issues, that he somehow "abandoned the principles and methods of his profession" and had "testified that the data was inadequate to allow an expert to reach a sound opinion concerning relative effectiveness."[78] Dr. Krumholz did no such thing. As Cook admits, he based his opinions on the multiple studies that do exist (albeit not necessarily of the highest quality), his systematic review of the literature, the MAUDE database and Cook's internal documents.[79] Crucially, Dr. Krumholz never testified that this combination of information was incompatible with the principles and methods of his profession or inadequate to render his opinions. Given this, his methodology does not justify a new trial.

Indeed, this is just a regurgitation of the arguments Cook made before trial.[80] The Court, in its pre-trial Daubert ruling, disagreed with Cook and found that Dr. Krumholz's methodology was reliable. The Court explained that "Dr. Krumholz cited Cook internal documents and peer-reviewed literature which support his opinion[s] . . . . Any disagreements Cook may have with his opinions—*i.e.*, that there is insufficient data to allow a scientific researcher like him to conclude that one filter is more or less effective than another—may be addressed on cross-examination."[81]

This is exactly what occurred at trial. During cross-examination of Dr. Krumholz, Cook attempted to address a purported discrepancy between the various studies Dr. Krumholz relied

---

[78] MNT at 22.
[79] MNT at 22-23 (citing Tr. Vol. 3 at 766:10-18.
[80] Dkt. 8633, p. 10.
[81] Dkt. 9771, p. 6-7.

on.[82] Cook also questioned Dr. Krumholz at length about the various studies he relied on and questioned him on why he did *not* rely on other studies.[83]

In short, this argument also falls within the Seventh Circuit's rule that repeating evidentiary objections overruled pre-trial virtually never presents an extraordinary situation requiring a new trial.

C.   Dr. Krumholz's based his causation testimony on a differential diagnosis—which the Court approved before trial— not engineering principles.

The Court held before trial in ruling on Cook's motion to exclude his testimony that Dr. Krumholz, a medical doctor, had used the differential diagnosis methodology in reaching his opinion that more likely than not the defective design of the Celect filter caused Mrs. Brand's injury, that he was qualified to offer the opinion, that it was a legally accepted methodology and that Dr. Krumholz had properly applied the methodology.[84] In denying summary judgment, the Court again held Dr. Krumholz had offered an admissible opinion which adequately addressed the issue of causation.[85]

At trial, Dr. Krumholz, a medical doctor, again used differential diagnosis or etiology, to form his opinion that design defects in the Celect proximately caused Mrs. Brand's Celect to perforate and fracture resulting in her injuries.[86] As a basis for his differential diagnosis, Dr. Krumholz reviewed Tonya Brand's medical records (including the operative reports and

---

[82] See e.g. Krumholz testimony, Vol. 3, p.788:1-11 (questioning Dr. Krumholz about his selection of the eleven systematic review studies out of 2000 initially screened studies).

[83] See e.g. Krumholz testimony, Vol. 3 p. 854:18-860:17 (discussing the relative merits of single-case reports with other types of published medical literature).

[84] Dkt. 9771, p. 14-18.

[85] Dkt 9947 at 3.

[86] Tr. Vol. 3, 730:23-751:3; 747:10-748:12; 763:15-18; Vol. 4, 1133:11-15; 1140:14-1141:7; 1141:22-25

depositions of her treating physicians-Drs. Rheudasil and Morrison), peer reviewed literature, Cook's internal documents,  complaint data on the Celect and other filters, the reports of Drs Timperman and Griffin, interventional radiologists hired by Cook as consulting experts, and anything else he thought was in any way relevant to the issue of causation.[87] The materials he relied upon constitute more than a sufficient basis for a reliable differential diagnosis, given that review of medical records alone will suffice, as this Court previously held.[88]

Apparently trying to avoid the futility of repeating its twice-rejected attacks on Dr. Krumholz's differential diagnosis, Cook attempts a sleight-of-hand. It characterizes Dr. Krumholz's causation opinion as being based impermissibly on engineering principles as to which he is not an expert despite his extensive description of how he based his causation opinion on his differential diagnosis.[89] Cook's mischaracterization of the basis for Dr. Krumholz's causation opinion alone requires rejection of a new trial on this basis.

But the Court can also find that Cook not only waived any error in this regard, it *created* it. The testimony where Dr. Krumholz initially offered his causation opinion (quoted by Cook in the MNT at 24) was objected to by Cook on the ground that Dr. Krumholz is not an engineer and the Court *sustained* the objection.[90] Apparently, in the heat of the moment, the Court temporarily forgot Dr. Krumholz based his causation opinion on a differential diagnosis and not engineering principles and that it had twice before held that opinion admissible. Nevertheless, had Cook's counsel not cross-examined Dr. Krumholz, Mrs. Brand might have had to rely only on Drs. Gordon and McMeeking for causation.

---

[87] Vol. 3, 747:10-18; 752:17-753:2; 756:20-757:8.
[88] Doc. 9771 at 16 (citations omitted).
[89] MNT at 23-24.
[90] Tr. Vol. 3, pp. 763:15-764:10.

23

But she did cross-examine Dr. Krumholz, and she solicited the causation opinion from him:

Q (Ms. Pierson) You said, when Ms. Baughman was questioning you, that
you'd ruled in possible causes of Mrs. Brand's perforation and
then you ruled out potential causes until you were left with
only one, correct?
A As a -- as a principal cause.
Q And, in your report, you reached the conclusion that
you're able to rule out all possible causes *except for the
filter's design*, correct?
A Correct.[91]

Having solicited the opinion of which it complains, Cook cannot now request a new trial based

upon it.

D.      The Court correctly admitted Dr. Krumholz's testimony that the defective design of her
        Celect filter caused her injuries.

Correctly not believing the Court would believe its sleight of hand engineering opinion

argument regarding Dr. Krumholz's causation opinion, Cook proceeded to attack Dr. Krumholz's

differential diagnosis head on, attacking both his qualifications to render it and the reliability of

his methodology.[92] Of course, as previously noted, the Court rejected these arguments *twice* before

trial, and rehashed arguments do not provide a basis for a new trial in the Seventh Circuit. Of

course, nothing could possibly have changed about Dr. Krumholz's qualifications since the Court's

rulings, and Cook cites no startling testimony from Dr. Krumholz at trial that renders the Court's

prior decisions inapplicable to his trial testimony.

Further, as explained previously, Cook cannot complain of the Court's admission of Dr.

Krumholz's causation opinion given that it solicited it. No more clear case of waiver has ever

existed. Finally, Mrs. Brand refers the Court to her contemporaneously-filed Plaintiff's

_____

[91] Tr. Vol. 4, 1133:11-15; 1141:22-25 (emphasis added).
[92] MNT at 25-29.

Memorandum in Opposition to the Cook Defendants' Memorandum in Support of Motion for Judgment as a Matter of Law at 6-7 & 14-26 for a detailed discussion of the reliability of Dr. Krumholz's differential diagnosis, including how he reliably "ruled out" her exposure and spinal surgeries as alternative causes of her injuries. In short, the Court committed no error whatsoever in admitting Dr. Krumholz's causation testimony, much less one that would justify a new trial.

E.      The Court correctly admitted Dr. Krumholz's testimony regarding the OUS Study.

In addition to attacking Dr. Krumholz's opinions regarding the OUS study based on his reliance on Cook internal documents, defeated above, Cook attacks Dr. Krumholz's qualifications to give that testimony.[93] The Court, however, rejected that attack prior to trial, "[h]e [Dr. Krumholz] is qualified to criticize Cook's definition of perforation."[94] Nothing has changed about his qualifications that could possibly cause the Court to change its prior ruling. As a rehash of a rejected pre-trial objection, Cook's argument does not possibly provide a basis for a new trial.

*** 

Cook cannot take no for an answer. It asked the Court to exclude Dr. Krumholz on exactly these grounds, and the Court said "no." It asked the Court to grant it summary judgment while pressing the exact same claims against Dr. Krumholz, and the Court said "no." Unfortunately, the Court is forced to do so again because of the MNT, which presents no basis for the Court to reconsider its prior rulings.

_____

[93] MNT at 24-25.
[94] Dkt. 9771 at 11.

25

**V.     Cook waived any error in the submission of Mrs. Brand's future damages to the jury, and the Court committed no such error in any event.**

Cook argues that "the jury should not have been permitted to consider Plaintiff's claims of future fear [,]" and that "because the jury's award of damages was a single figure, including both permissible categories of past damages and impermissible damages for future fear, the only remedy is a new trial on the entire question of Plaintiff's damages."[95]  This complaint is utterly meritless.  But the Court need not address it at all, for Cook waived any error in this regard.

A.     Cook waived any error by the Court in submitting Mrs. Brand's future damages to the jury.

Under Fed. R. Civ. Proc. 51(c)(1), "[a] party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection."  And under subsection (d)(1), of course, an "error in an instruction actually given" may only be assigned if the party "properly objected."  This Rule is fatal to Cook for two reasons: (1) it failed to properly object to Final Instruction No. 29, which allowed the jury to award past and future damages to Mrs. Brand[96], and (2) it failed to object *at all* to the jury verdict form, which asked the jury to award one lump sum damages amount undifferentiated in any way[97]; indeed, it *solicited* the Court to do this.

Before looking separately at each instance of waiver by Cook, it is critical that the Court recognize that a new trial will only be necessary if *both* the instruction and the verdict form were in error.  If just the instruction had been in error, but the verdict form had differentiated between past and future damages, a new trial would not be necessary. The Court could just grant judgment

---

[95] MNT at 30.
[96] Dkt. 100055 at 34-35.
[97] Dkt. 10058 at 2.

as a matter of law on the award of future damages. Thus, under Rule 51, to preserve error sufficient to justify a new trial under Rule 59, Cook had to properly object to both the instruction and the verdict form or waive its claim to a new trial.

1. Cook had to, but did not, properly object to Instruction No. 29 on damages and thereby waived any claim of error warranting a new trial.

In *Jabat, Inc. v. Smith*,[98] the Seventh Circuit held in identical circumstances that a party claiming the evidence did not support the jury's award of future damages had to object to the instruction allowing the award of both past and future damages or waive its claim of error:

> By failing to object to this instruction when it was tendered, we find that Jabat has waived its objection to the award of future lost income.
>
> A party waives an argument on appeal if that argument relates to a jury instruction it failed to object to. *Heritage Commons Partners v. Village of Summit*, 935 F.2d 1489, 1492 (7th Cir. 1991). See also *Wilson v. Kelkhoff*, 86 F.3d 1438, 1442-43 (7th Cir. 1996). Here, the argument advanced by Jabat (that Smith could not recover future damages because they were too remote and speculative), is an indirect challenge to Instruction No. 8. Such an argument, once waived, cannot be brought on appeal. *Bogan v. Stroud*, 958 F.2d 180, 181-84 (7th Cir. 1992) reh'g den.; *Sims v. Mulcahy*, 902 F.2d 524, 533-36 (7th Cir. 1990), cert. denied, 498 U.S. 897, 111 S.Ct. 249, 112 L.Ed.2d 207 (1990).
>
> 'When parties do not object to jury instructions, these instructions generally become the law of the case." *Geldermann, Inc. v. Financial Management Consultants, Inc.*, 27 F.3d 307, 312 (7th Cir. 1988) (en banc), cert denied, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988). Once the law of the case is settled, the parties can only argue that the jury did not properly apply the instructions to the

---

[98] 201 F.3d 852 (7th Cir. 2000).

> facts. *Will v. Comprehensive Accounting Corp.*, 776 F.2d 665, 675 (7th Cir. 1985), cert. denied, 475 U.S. 1129, 106 S.Ct. 1659, 90 L.Ed.2d 201 (1986). By permitting an instruction to be given which clearly authorized the jury to award damages beyond the trial date, Jabat waived its right to claim that such damages could not be awarded.[99]

Cook, of course, will respond that it did object to Instruction No. 9 on this basis. However, it did not "on the record, stat[e] distinctly…the grounds for the objection" as required by Rule 51 (c)(1). The only ground it stated was "[w]e think those are unsupported by the record, and we object to these being given."[100] On at least two occasions, the Seventh Circuit has held similar objections insufficient under Rule 51.

For example, in *Guerts v. Barth*, the plaintiff objected to an instruction on sudden emergency on the grounds that "I don't feel that the perquisites for the giving of such an instruction are available in this case…."[101] The Seventh Circuit held that "[s]ince no specific evidentiary deficiencies were identified in this case to support the objection to the giving of the sudden emergency doctrine instruction, Guerts' sole basis for appeal is accordingly waived and the judgment of the district court is accordingly affirmed."[102] Of course, saying an instruction is "unsupported by the record" no more identifies "specific evidentiary deficiencies" than saying "I don't feel that the perquisites for the giving of such an instruction are available in this case…."

In *Mankey v .Bennet*, the defendant objected to the failure to give a mitigation of damages instruction on the basis that "…there are facts in the case which justified the giving of [the]

---

[99] *Id.* at 857.
[100] Tr. Vol. 14, 4380:2-3.
[101] 892 F.2d 622, 624 (7th Cir. 1989).
[102] *Id.* at 624-25.

28

instruction…"[103] The Seventh Circuit held that "… the grounds stated are wholly inadequate to preserve the matter for appeal " because they "give not a clue as to the…factual basis for the instruction…."[104] Likewise, saying  an instruction is "unsupported by the record" gives not a clue as to why.

The Seventh Circuit is not the only court to reject objections like Cook's as insufficient. In *Wolk v. Churchill,* the Eight Circuit held inadequate an objection to a fraud instruction that merely stated "a submissible case [had not] been made on fraud."[105] Again, saying an instruction is "unsupported by the record" is no better at distinctly stating the grounds for the objection than "a submissible case [had not] been made on fraud."

In short, Cook did not even come close to properly objecting to Instruction No. 29. Thus, it waived its objection and any claim to a new trial.

2.   Cook had to, but did not, properly object to the verdict form that did not distinguish between past and future damages and thereby waived any claim of error warranting a new trial.

In *Fox v. Hayes*, the defendants claimed that the plaintiff was not entitled to punitive damages on one of his claims and that because the punitive damage awards on the verdict form were not tethered to the specific claims, there was no way to tell how much the jury had awarded on each claim, entitling them to a new trial.[106] Of course, that sounds exactly like Cook's argument here. And, the Seventh Circuit held that because the defendants never objected to the verdict form, they waived their claim for a new trial.[107] Similarly, Cook did not object to the verdict form in

---

[103] 38 F.3d 353, 361 (7th Cir. 1994).
[104] *Id.*
[105] 696 F.2d 621 (8th Cir. 1982).
[106] 600 F.3d 819, 846-47 (7th Cir. 2010).
[107] *Id.* at 847.

this case, waiving its new trial claim. Again, even if Instruction No. 29 was in error, if the verdict form had separated past and future damages, no new trial would be required.

To make matters worse, Cook solicited the Court to give the allegedly improper verdict form. The Court will recall that it supplied the parties with a proposed verdict form on January 29, 2019, via an e-mail from Ms. Doyle, attached hereto as Exhibit A. That verdict form contained seven lines for damages findings (past medical expenses, future medical expenses, past pain and suffering, future pain and suffering, past mental anguish, future mental anguish, and disfigurement). Then, at the informal charge conference, which was not transcribed, Cook opposed this method of submitting damages and argued for only a single, global damages question as it had previously proposed to the Court.[108] Cook prevailed in this regard, and the question was changed to require a single, overall finding of damages. It should go without saying that "a party who requests a jury instruction [or verdict form] cannot complain if the instruction [or verdict form], or one substantially like it, is given by the trial judge."[109] Since Cook requested the single damages verdict form it now attacks, it waived this asserted error entirely.

B.     In any event, the Court did not err in instructing the jury it could award future damages to Mrs. Brand.

In view of the plain waiver demonstrated above, the Court need not address the question of whether it erred in instructing the jury that it could consider future mental anguish. However, if the Court considers the merits, it should reject Cook's arguments for two reasons. First, under Georgia law, based on Mrs. Brand's undisputed physical injuries (the metal fragment exiting her

---

[108] Dkt. 9720 at 79.

[109] 9C Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 2558 (3d ed., April 2019 update) (citations omitted).

thigh and her open retrieval surgery), the Court properly instructed the jury it could award her future mental anguish damages, and this is true regardless of whether she proved the metal fragments remaining in her body could move in the future. Second, if necessary, the Court properly admitted Dr. Gordon's testimony regarding fragment movement.

1. Under Georgia law, the Court properly instructed the jury it could consider Mrs. Brand's future mental anguish based on her undisputed physical injuries and regardless of the potential for future filter fragment movement.

Georgia law allows any plaintiff to introduce evidence of mental injury as long as he or she also suffered a physical injury. The argument that Mrs. Brand cannot recover for the mental anguish she will suffered in the future because her physical pain from the filter fragment exiting her thigh and the open retrieval has ceased is a cramped and incorrect reading of Georgia law. Read properly, Cook's cases in fact support Mrs. Brand's claim to recover for the mental anguish she suffered in the past and will suffer in the future as a result of her injuries

Georgia follows the impact rule, and this rule has three elements: (1) a physical impact to the plaintiff; (2) the physical impact causes physical injury to the plaintiff; and (3) the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress.[110] Plaintiff's mental anguish is of course related to the physical injury caused by the filter failure. Because there was a physical injury, her mental anguish claims are legitimate, and they cannot be limited because

---

[110] In *Lee v. State Farm Mut. Automobile Ins. Co.*, 533 S.E.2d 82, 85-86 (Ga. 2000), the Georgia Supreme Court extended the impact rule to allow a claim for the negligent infliction of emotional distress from witnessing the mortal injury of a child or close family member. *Id.* Bridget Lee and her daughter were in a car wreck that resulted in physical injuries to both of them, and Ms. Lee also suffered emotional distress from witnessing her daughter suffer and die within the hour. *Id.* at 584. Georgia law prior to this did not allow a plaintiff to recover emotional distress damages for witnessing the suffering and death of a loved one. Lee expanded the impact rule to allow for these claims, not to create some limited on the length of time after a physical injury a person can recover for mental anguish. *See also Warnock v. Sandford*, 825 S.E.2d 922, 925 (Ga. App. 2019).

the traumatic injuries happened in the past. There is no temporal ratio required between when the injury occurs and how long a plaintiff may suffer. In light of the evidence of Mrs. Brand's physical injuries from the filter fragment exiting her thigh and the open retrieval and the direct link from them to her mental anguish, the Court under Georgia law properly instructed the jury that it was up to them to determine whether Mrs. Brand was injured and for how long.

In the face of this Georgia law, Cook creates a red herring. Ignoring the previous physical injuries and the very real ongoing mental anguish they caused, Cook looks only to whether the fragments remaining in her body independently constitute a physical injury sufficient to justify future mental anguish damages in the absence of proof they will move in the future (which, by the way, Dr. Gordon supplied), and that is what the cases it cites address. They do not purport to put a time limit on how long after physical injuries like Mrs. Brand's (filter exiting her thigh and open retrieval surgery) a plaintiff can recover from resulting mental anguish. That is a question of fact for a jury.

In *Cure v. Intuitive Surgical Inc.*, cited by Cook, the court found that the plaintiffs offered only vague, conclusory statements in support of their claim for medical monitoring.[111] The plaintiffs in *Cure* sought class certification, alleging that particulates from heart surgery instruments left metal shavings in their brains and claiming that they "suffered and will continue to suffer physical, neurological, and mental effects," as well as lost wages, and would have to shoulder "the cost of medical expenses related to care necessary to address those effects."[112] The Eleventh Circuit held that under Georgia law the asymptomatic presence of the metal particles in

---

[111] 705 Fed. App'x 826 (11th Cir. 2017).
[112] *Id.* at 827.

the plaintiffs' brains by themselves did not constitute a legally sufficient physical injury.[113] Mrs. Brand, however, does not have to rely upon the metal fragments remaining in her body for physical injury (although they should be considered as such) because she did suffer undeniable physical injury.

In *Boyd v. Orkin Exterminating Co.*, the court held that elevated blood levels of a toxin were not, in and of themselves, an injury that would support a claim for the "increased risk of cancer" to which plaintiff had been exposed.[114]  Similarly, in *Johnson v. Am. Nat'l. Red Cross*, the Georgia Supreme Court held only that plaintiff could not recover from mental anguish for fear of contracting AIDS, without any evidence that she had actually been exposed to HIV during a blood transfusion.[115]

In this case, by contrast, unlike *Boyd* and *Johnson*, Mrs. Brand *has already sustained* a physical injury caused by the Celect's defects: the exiting from her thigh of the metal fragment and her open retrieval surgery, and  Georgia law lets the jury decide "[i]f you find that plaintiff's pain and suffering will continue into the future, you should award damages for such pain and suffering as you believe plaintiff will endure." See Georgia Suggested Pattern Jury Instructions – Civil § 65.503.  Trial courts in Georgia routinely allow juries to consider future mental anguish in car wreck cases where the physical pain from the accident has ceased. The measure of damages for pain and suffering is within the enlightened conscience of the jurors.[116]

---

[113] *Id.* at 828.
[114] 381 S.E.2d 295, 298 (Ga. App. 1989).
[115] 578 S.E.2d 106, 110 (Ga. 2003).
[116] *Stubbs v. Hamon*, 487 S.E.2d 91, 93 (Ga. App. 1997)

2. The Court did not err in allowing Dr. Gordon to testify regarding filter fragment movement, if such testimony was even necessary.

First, Cook did not properly preserve any complaint that Dr. Gordon did not set forth this opinion in his rebuttal report. At page 33 of the MNT, Cook cites a statement of plaintiff's counsel, who thought that the opinion was in Dr. Gordon's original report.[117]

The entire exchange is as follows:

THE COURT: Let's go. We'll see how the testimony.

MS. PIERSON: Sorry, Your Honor. The last opinion was the filter fragments have moved. That was the one that we asked for a ruling on, new opinion in his rebuttal report.

MS. BAUGHMAN: Your Honor, he opined about that in his original report. I'm trying to find that in here because this is a new – this wasn't briefed in their – on their rebuttal motion. But I'm pretty sure I can find it, given enough time.

MR. HEARD: He's already ruled on that.

MS. BAUGHMAN: I'm sorry. I think you already ruled on it. I apologize.

THE COURT: Okay. Ready for the jury.[118]

It is thus clear that defense counsel herself believed the opinion *was* in the rebuttal report.

As to Cook's claim of error because Dr. Gordon set forth the opinion in his rebuttal report rather than his original report, Cook does not explain how this could have made any difference at trial. All Cook claims is that this "prevented Cook from effectively deposing Dr. Gordon about this opinion or preparing to rebut it at trial."[119] But no specific reason is given for any such

---

[117] Defendant's memorandum at 33, n.16; Trial Tr. Vol. 6, 1584:2-9
[118] Tr. Vol. 6, 1584:2-13
[119] MNT at 35.

34

inability. The Court should be skeptical of any claims by Cook's very able counsel that they were somehow not prepared at his deposition to deal with everything Dr. Gordon had to say. More importantly, Cook does not explain why during the long interval between Dr. Gordon's deposition and trial its able counsel could not have adequately prepared to cross examine him about this issue at trial. Moreover, the Court is of course aware that Cook put forward plenty of its own contrary evidence.  Cook lists some of this evidence itself.[120]  The jury simply chose to believe Dr. Gordon on this point.

Since Cook does not even attempt to articulate any specific way at trial in which its ability to cross-examine Dr. Gordon, or to counter his opinion, was hampered – let alone in a manner that caused the rendition of an improper verdict – this argument should be rejected summarily. The Court should not overturn a jury verdict on a technical gotcha that had no effect whatsoever on Cook's ability to defend itself.

## VI.    Mrs. Brand's counsel did not engage in misconduct, and any mistakes they made in no way justify a new trial

Cook's final ground for a new trial is utterly baseless and should not have been raised. Cook argues melodramatically that "two major issues of misconduct" "infected the proceedings" and "gr[ew] into a tree that the Court … ruled is impermissible and that the jurors should not know about or be thinking about." [121]  A review of the portions of the transcript cited by Cook quickly shows, however, that Mrs. Brand's counsel engaged in no misconduct and that any inadvertent

---

[120] MNT at 35, n.17.
[121] MNT at 39.

35

violations of limine or other rulings by the Court did not prejudice Cook by affecting its substantial rights.  Defendant's regrettable motion on this score should be denied summarily.

A.       Mrs. Brand's counsel did not engage in any misconduct by bringing up the existence of other lawsuits against Cook, and any mistakes they made in no way justify a new trial.

Cook first complains that counsel referred to other lawsuits on "multiple occasions," despite the Court's having ruled such references generally inadmissible.  The actual examples cited by Cook, however, demonstrate no misconduct and no prejudice to Cook's substantial rights.

As a threshold matter, the Court will recall that it granted Cook's motion in limine to exclude evidence of other lawsuits on the basis that such evidence would reflect unfairly on Cook. If Cook felt that Mrs. Brand's counsel was presenting evidence for this purpose – which it plainly was not – in violation of the Court's necessarily preliminary limine order, Cook had to object at trial or waive any error.[122]  As shown below, Cook did not object to most of the testimony of which it now complains.

Cook first cites an exchange between plaintiff's counsel and defense counsel during the examination of Cook employee Henrik Gyllun.  Here is the entire exchange:

|  |  |
|---|---|
| MR. HEAVISIDE: | So you testified previously that during the 13 or 14 years preceding 2008 that Tulip had 22 – excuse me – complaints of perforation. And that's at the most distant trial. |
| MR. WEBBER: | I was going to ask for the page number, because I'm not going to be able to find it.  It was a 350-page deposition of the guy.  So I just need to know the page number. |

_____

[122] *Thorncreek Apts. III, LLC v. Mick*, 886 F.3d 626, 635 (7th Cir. 2018).

| | |
|---|---|
| MR. HEAVISIDE: | His trial testimony.  There have been two trials.  How would you like – |
| MR. WEBBER: | No, we're not going to discuss that. But I need to know what you're referring to in order to check it out. |
| MR. HEAVISIDE: | If I give you the person's name and page, will that be helpful to you? |
| MR. WEBBER: | I'm sorry to ask for sidebar again Your Honor.  This isn't something we're supposed to be discussing in the presence of the jury.  I apologize. |
| | (Beginning of bench conference record.) |
| MR. WEBBER: | Mike, you can't talk about other cases in here. The judge has already ruled on that. |
| MR. HEAVISIDE: | I understand.  But there's two transcripts, and I just wanted to know how you want me to – how do you want me to do it? |
| THE COURT: | Is it a deposition? |
| MR. HEAVISIDE: | Trial.  Two trial testimony. |
| THE COURT: | He's testified at trial? |
| MR. HEAVISIDE: | Twice. |
| MR. WEBBER: | This is what we did with Dr. McMeeking.  We just numbered them.   We referred to them as Tabs 1 through 6.  So do you want to just give me – we can just assign a number to it.  Do you want to call it his deposition 1, his trial testimony 2, and this one 3? |
| THE COURT: | Hill will be 1. |
| MR. HEAVISIDE: | Pavlock 2. |
| THE COURT: | Pavlock will be 2. |
| | (End of bench conference.) |
| MR. WEBBER: | Go ahead. I'll find what I need.[123] |

---

[123] Trial Tr. Vol. 8 at 2447:2 – 48:14.

Clearly, Mrs. Brand's counsel only mentioned a second trial as part of an exchange about how to locate and refer to Mr. Gyllun's prior trial testimony and not for any nefarious purpose. Defense counsel asked for a sidebar conference so that the discussion could occur outside the jury's presence, and he stated that the fact of earlier trials should not be discussed before the jury. Plaintiff's counsel stated that he understood, but he asked the obvious question: "But there's two transcripts, and I just wanted to know how you want me to – how do you want me to do it?" The Court then asked if the previous testimony at issue was at deposition or trial, and plaintiff's counsel stated that the witness had testified twice at earlier trials, and a system for referring to the prior testimony was agreed upon. No objection was ever made by Cook's counsel, and no further mention of the witness' prior testimony having taken place at a trial occurred.

This innocent exchange does not come close to constituting attorney misconduct. Even if it did, Cook failed to object to the violation of the order in limine, waiving any error. And, certainly, the passing reference to another, unspecified trial in this context did not affect Cook's substantial rights.

Cook then states that "plaintiff's counsel or witness purposefully injected other lawsuits, specifically mass torts, including Vioxx, metal–on–metal hips, and pelvic mesh litigation." Even if this were true, Cook doesn't explain how references to other cases not involving IVC filters could possibly prejudice its substantial rights. Of course, they could not do so.

Examination of the asserted instances of such "injection" show they are merely the sort of passing references to expert witness qualifications seen in every products liability trial:

1.      Trial Tr. Vol. 2, 359:1-6

    Q:    And have you ever testified for a defendant in a case like this?

> A:      Not exactly like this, but I'd say maybe of the three major cases I've been involved in, one was for plaintiffs in Vioxx.  And Merck was a defendant.  I was on the plaintiff side.

This is the excerpt quoted by Cook. It neglects to quote the very next lines, however, reflecting that defense counsel asked permission to approach, and the Court simply said, "No. Sustained.  Let's move on."  Plaintiff's counsel then moved to a new topic.[124]

### 2.      Trial Tr. Vol. 2, 361:14-17

This is a statement by plaintiff's expert Dr. Krumholz that "this is sort of what attracts me. It's what attracted me to Vioxx, the idea that there are things behind the curtain that need to come out and people need to talk about and understand."  Cook's counsel then asked for a sidebar conference and objected that this statement violated an earlier order on Cook's motion in limine to exclude references to other mass tort suits – even those having nothing to do with filters or with Cook.

Plaintiffs' counsel responded that the expert "needs to be able to testify as to what he's done."  The Court then ruled that "[h]e can testify on his history, but I want to now start getting in.  I'm going to declare him as an expert and the we need to move on."[125]  Next, the Court explained to the jury the function of expert witnesses, and concluded by stating that "Dr. Kumholz is here today to testify as an expert."[126] The Court thus accepted plaintiffs' counsel's explanations for the limited references to Dr. Krumholz's past work and found nothing nefarious about it.  The reference was fleeting and entirely appropriate and necessary.  Cook's counsel made no further

---

[124] Tr. Vol. 2, 359:7-14.
[125] Trial Tr. Vol. 2, 361:21-362:8.
[126] Trial Tr. Vol. 2, 363:11-363:18.

complaint about it, and Cook can hardly claim to be prejudiced by a brief, standard discussion of an expert's prior work.

> 3.      Trial Tr. Vol. 13, 4192:12 – 4194:2

This was testimony by *Cook's* expert, Dr. Fryzek, on cross-examination, concerning his work for defendants in other mass tort cases. *Cook made no objection,* so any complaint about this testimony was obviously waived. Moreover, Cook itself elicited testimony from Dr. Fryzek about his work in prior litigation[127]:

> Q:      It's my understanding that you have testified as an expert before, correct?
> A:      I have, yeah.
> Q.      And I should have asked you this earlier, but can you explain to the jury about how much of your time is spent doing consulting work on medical devices and medications versus participating in some kind of a litigation matter.
> A.      Yes. So litigation is something I don't do very often. Maybe – over the      past year, maybe 10, 15 percent of my time. So just a bit.

> 4.      Trial Tr. Vol. 13, 4199:2-4

This was a clarification that in one of the earlier cases previously referred to, Dr. Fryzek worked with defense counsel's firm, but not with defense counsel herself. Cook did not object to this innocuous statement, waiving any error.

> 5.      Trial Tr. Vol. 13, 4200:10-12

This was another short exchange concerning previously-discussed litigation work. Again, Cook did not object.

> 6.      Trial Tr. Vol. 14, 4360:13-17

---

[127] Trial Tr. Vol. 13, 4143:20-4144:4.

This was a very brief reference in closing argument to Dr. Fryzek's previous litigation work. The important part of the argument, not quoted by Cook, came two sentences later: Mrs. Brand's counsel reminded the jury that Dr. Fryzek's report had been excluded by the judge overseeing the welding-rod MDL litigation because it was unreliable and because lawyers had participated in writing it.[128] That constituted a perfectly proper attack on the expert's credibility, and. accordingly, Cook did not object to it.

*** 

Cook does not even suggest, let alone demonstrate, how these isolated snippets of testimony could possibly have resulted in an erroneous verdict. It is impossible to see how this could be so, given that Cook itself broached the topic of work done in prior cases with its expert. Moreover, as the Court is well aware, experts in products liability cases very frequently have past experience in similar kinds of litigation, and it is commonplace for that work to be described or probed on direct or cross-examination.

In any event, Cook did not object to most of the asserted examples, so any error or prejudice in respect of those examples was thus waived, and Cook does not claim (nor could it) that they constitute plain error.[129] On the one occasion Cook did object, the Court sustained the objection. The Court, had of course, instructed the jury that if an objection is sustained, the jury is to ignore the question and not guess what the answer might have been.[130] This instruction is presumed to have been followed, and as such no error can be found in connection with this exchange.[131]

---

[128] Tr. Vol. 14, 4360: 18-24.
[129] *U.S. v. McKinney*, 954F.2d 471, 475 (7th Cir. 1992).
[130] Trial Tr. Vol. 1, 201:4-18.
[131] *Soltys v. Costello*, 520 F.3d 737, 744 (7th Cir. 2008) ("The court's instructions to the jury to disregard issues for which objections had been sustained likewise negated any possible prejudice to [plaintiffs]."); *McFarland v. Tricam Ind., Inc.*, 2015 WL 3442027, *7 (N.D. Ill. May 28, 2015)

41

B.     Mrs. Brand's counsel did not engage in misconduct by engaging in "inappropriate questioning**,"** and any mistakes they made in no way justify a new trial.


Cook asserts a confusing complaint that plaintiff's counsel "inappropriately questioned witnesses about evidence and subjects that the Court had clearly ruled were inadmissible at trial."[132]   The first part of this diffuse discussion is Cook's criticism of the so-called "reptile theory."

Cook cites a few cases in which courts have granted motions in limine against "reptile theory" kinds of arguments.   It suffices to say that more rulings could be cited denying such motions.   Recently another district court in this circuit stated that "[d]efendants' motion in limine to preclude reptile theory trial tactics by plaintiffs and their counsel … is DENIED as unintelligible, unnecessary, speculative, overbroad, and downright bizarre.   Rule 401 will govern the admissibility of evidence.[133]

---

("without more, simply making objections that were sustained in front of a jury that was instructed to disregard such questions and any stricken answers does not warrant a new trial.") (citing *Sanchez v. City of Chicago*, 700 F.3d 919, 932 (7th Cir. 2012)).

[132] MNT at 41.

[133] *Shirrell v. Billing*, 2018 WL 7252824, *2 (S.D. Ill. May 11, 2018).   *See also, e.g. Walden v. Maryland Cas. Co.*, 2018 WL 6445549, *3 (D. Mont. Dec. 10, 2018) ("The Court denies the motion as to the so-called reptile theory.   The Court will not categorically prohibit a form of trial strategy, particularly given the absence of any reason to believe that reptile theory is likely to rear its head here (or that the Court would be able to identify it if it did)."); *Gillis v. Murphy-Brown, LLC*, 2018 WL 5926605, *3 (E.D.N.C. Nov. 13, 2018) (denying motion in limine and lamenting "unnecessarily inflammatory language surrounding the 'Reptile Theory.'"); *Hensley v. Methodist Healthcare Hosps.*, 2015 WL 5076982, *5 (W.D. Tenn. Aug. 27, 2015) (denying "reptile Theory" motion because "defendants have again not identified the specific evidence that is sought to be excluded"); *Cameron v. Werner Enterprises, Inc.*, 2016 WL 3030181, *5 (S.D. Miss. May 25, 2016) (declining to issue ruling on motion based on "reptile theory" because it was too "hypothetical"); *Bunch v. Pac. Cycle, Inc.*, 2015 WL 11622952, *2 (N.D. Ga. Apr. 27, 2015 )(rejecting reptile theory motion because it was "overbroad"); *Aidini v. Cotsco Wholesale Corp.*, 2017 WL 10775082, *1 (D. Nev., April 12, 2017) ("Costco's arguments about the reptilian theory fail.   Federal courts have hissed at motions based on this theory that seek a broad prospective order untethered to any specific statements the other side will make.") (footnote omitted).

Moreover, it is entirely appropriate to appeal to the jury as the "conscience of the community."  Georgia law recognizes the function of the jury as precisely that. For instance, just last month, the Georgia Court of Appeals found no error in a plaintiff's counsel's statement that "I hope – I don't wish any ill will on anybody, of course, but I hope that some of you had some pain in your life so you know the value of pain.  I hope that some of you have suffered injustice in your life."[134]   There the asserted error was that the quoted statement violated the prohibition against "Golden Rule" arguments, but the reasoning applies equally to "reptile theory" complaints.

As a Georgia trial court held, "it is not improper to argue that the jury is the conscience of the community."[135]   The Seventh Circuit also recognizes that "[t]he jury is the collective conscience of the community …."[136]  This natural role forecloses defendant's vague complaints here.

The "reptile" theme Cook challenges here is that plaintiffs' lawyers are supposed to focus on "safety rules," in an effort to "convince jurors that any violation of a 'safety rule' will lead to great danger."[137]  The one and only example that Cook gives of Mrs. Brand's counsel's supposedly improper use of "safety rules" is that "[plaintiff]'s counsel … labeled (or had their witnesses label) the 'petals' of the Tulip filter as a 'safety device' no fewer than 30 times in front of the jury."[138] These excerpts are listed in footnote 20, at pp. 42-43, of the MNT.

---

[134] *Golden Isles Cruise Line, Inc. v. Lowie*, __S.E.2d__, 2019 WL 1907909, *8 (Ga. App. April 29, 2018) (citing *Naimat v. Shelbyville Bottling Co.*, 524 S.E.2d 749 (Ga. App. 1999)).

[135] *Dimaso v. Ford Motor Co*., 2003 WL 22850075, *1 (Ga. Super. Ct., Cobb Cty., Oct. 21, 2003) (citing *Holbrooks v. State*, 126 Ga. App. 569, 572 (1972)).

[136] *Mary Beth G. v. City of Chicago*, 73 F.2d 1263, 1276 (7th Cir. 1983).

[137] MNT at 42.

[138] MNT at 42 (emphasis is Cook's)

43

It is difficult to put in words just how meritless and shameless this argument is. As Cook well knows, in Georgia "the reasonableness of choosing from among the various alternative product designs and adopting the *safest* one if it is feasible is considered the "heart" of design defect cases."[139] As the Court well remembers, Mrs. Brand proposed the Tulip as a feasible, *safer* alternative design that was *safer* because it had the petals which acted as perforation limiters. So, naturally and correctly, Mrs. Brand's counsel and witnesses referred to the petals as *safety devices*. They did so not in an attempt to inject reptilian "safety rules" into the trial, but rather to comply with Georgia law on design defect.

In any event, however, *Cook did not register a single objection in any of the 27 instances referred to in its footnote.* Any complaints in this regard were thus waived.[140]

Cook concludes by stating that the real "subject of this discussion" is "the intentional disregarding of court rulings and orders" in hopes of "planting seeds" in the jury's mind.[141]  Cook cites as its one and only example of this the supposed  repeated references to "warnings" in violation of the Court's limine ruling based on the Court's failure to warn summary judgment, and Cook cites in support eight questions of, or answers by, Dr. Krumholz, at p. 45 of the MNT, presumably its strongest examples. Cook is wrong for several reasons.

First, Cook says that "[e]ach of these questions or statements drew an objection, and each objection was sustained."[142]  But two of the eight questions or statements were not objected to at

---

[139] *Banks*, 450 S.E.2d at 674.
[140] In one instance, defense counsel requested a sidebar conference, and made a brief argument as to a different contention – not that discussion of "safety features" was improper but that the features were only "concepts" at the time being discussed.  The Court suggested that defense counsel cross-examine the witness on that score, and the bench conference ended.  Tr. Vol. 7, 2160:5-15.
[141] MNT at 44.
[142] MNT at 45.

all.  See the statements of Dr. Krumholz that "I have not published a warning to doctors not to use IVC filters,"[143] and his statement that "[n]o one's warning about" the effect of osteophytes."[144] As to this last statement, defense counsel, who was cross-examining Dr. Krumholz, stated "that's not my question, sir," but she made no contention that his statement was violative of any order in limine, and made no objection of any kind.

Equally important, in neither case did Dr. Krumholz reference any warnings that Cook allegedly should have given, which was the subject of the Court's limine order. Further, in neither instance did the questioner seek to elicit *anything* about warnings from Dr. Krumholz and a witness slipping up on a limine topic does not constitute attorney misconduct.

Second, in two of Cook's remaining six examples, Cook simply objected on grounds that the question called for speculation, and not because it concerned any off-limits topic: Dr. Krumholz's testimony that he was not critical of Dr. Rheudasil, "[g]iven what he could know[,]"[145] and counsel's question about whether Dr. Rheudasil had 'access to Cook's internal documents and data in terms of what they know" in March 2009.[146] An objection on one basis does not preserve a complaint that the testimony or questioning is improper for another reason.[147]

Again, the answer and the question do not go to what Cook should allegedly have included in the Instructions for Use, the heart of the Court's limine, and they were not made for the purpose of skirting the order. After having heard from Dr. Krumholz that the Celect had not been proven to save lives and was a dangerous filter, the jury would naturally wonder whether Dr. Rheudasil

---

[143] Tr. Vol. 3, 794:9-10.
[144] Tr. Vol. 4, 1165:24.
[145] Tr. Vol. 3, 764:24.
[146] Tr. Vol. 3, 766:3-5.
[147] *U.S. v. Haldar*, 751 F.3d 450, 458(7th Cir. 2014); *U.S. v. Blount*, 502 F.3d 674, 677-78 (7th Cir. 2007).

had committed malpractice by using the Celect, and this question and answer merely had the purpose of explaining why Dr. Krumholz believed that Dr. Rheudasil had not committed malpractice by using the Celect. That, of course, is a perfectly proper motive and thing to do.

As to the remaining four examples, as Cook acknowledges, its objections were sustained. As the jury is presumed to follow the Court's instructions concerning objections that were sustained, no prejudice inured to Cook in respect of any of these scattered instances of questioning or testimony.

Further, two of them were instances of Dr. Krumholz making statements as part of long answers that were not solicited by Mrs. Brand's counsel and beyond her counsel's control. For example, counsel asked Dr. Krumholz what he considered in reaching the opinion that the risks of the Celect outweighed any benefits it allegedly had, [148] and at the end of a long answer he stated "[a]nd if they had been telling everyone get this thing out immediately, that would be one thing."[149] Not only did Mrs. Brand's counsel not solicit or condone that statemen, after the Court sustained Cook's objection, she told him "[j]ust try to answer--."[150]

Similarly, counsel for Mrs. Brand asked Dr. Krumholz how he was able to "rule out" Mrs. Brand's osteophyte as a cause of her filter fracture and in cataloging the things he considered, Dr. Krumholz forgot and included "the instructions for use."[151] And, again, far from soliciting or condoning Dr. Krumholz's slipup, after Cook's objection was sustained, Mrs. Brand's counsel told him "[y]ou can finish—without mentioning that topic, that particular document."[152]

---

[148] Tr. Vol. 3, 729:16-21.
[149] Tr. Vol. 3, 730:10-12.
[150] Tr. Vol. 3, 730:19.
[151] Tr. Vol. 3, 761:4-13.
[152] Tr. Vol. 3, 761:19-20.

46

So, of Cook's eight best examples, only two represent questions that arguably violated the Court's limine ruling, and the Court sustained objections to both. As the Court well knows, in virtually every trial, especially three-week trials, counsel asks at least a couple of questions that violate orders in limine and no one suggests, as Cook does here, that it was done as part of some insidious plot to plant improper seeds in the jury's mind that will grow into an injurious tree despite the Court sustaining objections and instructing the jury to disregard the improper question and any answers they elicit.

Cook's allegations of attorney misconduct are simply baseless. And, Cook comes nowhere close to demonstrating that any slipups by Mrs. Brand's counsel or witnesses prejudiced its substantial rights.

### Conclusion

For the foregoing reasons, the Court should deny a new trial to Cook and grant Mrs. Brand all the relief to which she may be justly entitled.

May 24, 2019                                        Respectfully submitted,


                                                   */s/ Joseph N. Williams*
                                                   Joseph N. Williams, Atty. No. 25874-49
                                                   RILEY WILLIAMS & PIATT, LLC
                                                   301 Massachusetts Avenue
                                                   Indianapolis, IN 46204
                                                   Telephone: (317) 633-5270
                                                   Facsimile: (317) 426-3348
                                                   Email:  jwilliams@rwp-law.com

                                                   *Liaison Counsel to*
                                                   *Plaintiffs' Steering Committee*

                                                   Michael W. Heaviside, Esq.
                                                   HEAVISIDE REED ZAIC,
                                                   A LAW CORPORATION
                                                   910 17th Street, NW, Suite 800
                                                   Washington, DC 20006
                                                   Telephone: (202) 223-1993
                                                   mheaviside@hrzlaw.com

                                                   Ben C. Martin, Esq.
                                                   MARTIN BAUGHMAN, PLLC
                                                   3710 Rawlins Street, Suite 1230
                                                   Dallas, TX  75219
                                                   Telephone: (214) 761-6614
                                                   Facsimile: (214) 744-7590
                                                   bmartin@martinbaughman.com

                                                   David P. Matthews, Esq.
                                                   MATTHEWS AND ASSOCIATES
                                                   2509 Sackett St.
                                                   Houston, TX  77098
                                                   Telephone: (713) 522-5250
                                                   Facsimile: (713) 535-7184
                                                   dmatthews@thematthewslawfirm.com


                                                   *Plaintiffs' Co-Lead Counsel*

48

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 24, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.


<u>*/s/ Ben C. Martin*</u>
Ben C. Martin