## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

_____

IN RE COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

_____

This Document Relates to 64 Category 2 Cases
Pending as of May 24, 2019 That Have Not Stipulated
To Dismiss Voluntarily (*See* Exhibit A)[1]

_____

### COOK DEFENDANTS' MEMORANDUM
### IN SUPPORT OF JUDGMENT ON THE PLEADINGS
### IN CATEGORY 2 CASES FOR FAILURE TO STATE A CLAIM

For over a year now, this Court has worked to address the problems posed by Product-in-Place ("PIP") and/or "No Injury" cases. These efforts led to the Court's Order requiring case categorization (Dkt. 9322), as implemented by subsequent orders (Dkts. 9638, 9956). Pursuant to these Orders, hundreds of plaintiffs self-designated their cases as Category 2, certifying that they are alleging "only non-physical injuries, such as worry, stress, or fear of future injury." *Id.*, p. 2 (defining categories).

In early April, Cook[2] reached out to Plaintiffs' leadership to request the voluntary dismissal of these cases (with an express safeguarding of their ability to re-file in the MDL in the event of a symptomatic, physical injury in the future). *See* April 4, 2019, Letter from S. Bennett

---

[1]   The motion is limited to Plaintiffs that have claimed Category 2 as their "highest" category of injury and whose cases were pending as of May 24, 2019. To the extent additional claims are categorized solely as Category 2 after the filing of this Motion, Cook Cook will address those cases at a later time.

[2]   The defendants are Cook Incorporated, Cook Medical LLC (*f/k/a* Cook Medical Incorporated), and William Cook Europe ApS and are referred to collectively herein as "Cook" or the "Cook Defendants."

to J. Williams, attached as **Exhibit B** (exhibits to letter omitted).  Since that time, around 283 of these plaintiffs have agreed to voluntarily dismiss their cases.[3]  There are, however, 65 Category 2 plaintiffs who did not voluntarily dismiss their cases by the Court's May 20, 2019 deadline.  *See* Order [Setting Procedures and Deadlines Regarding Dismissal of Category 2] Cases, Dkt. 10632.[4]

On May 25, 2019, Cook's counsel circulated this list of cases to Plaintiffs' Lead Counsel, informing Plaintiffs that Cook intended to seek dismissal of these cases absent agreement to dismiss.  *See* May 24, 2019, Email from J. Cox to B. Martin and J. Williams, attached as **Exhibit C**.  Cook asked Plaintiffs' Lead Counsel for any changes or additions to the list.  Cook's counsel received a request to re-categorize in one case prior to the filing of this motion; that case was removed from Exhibit A, which is limited to 64 cases.

Cook therefore asks the Court (1) to enter all currently pending stipulations to dismiss Category 2 cases; and (2) to dismiss the 65 remaining Category 2 cases outlined on **Exhibit A** to this motion for failure to state a legally cognizable claim.  Longstanding tort law principles establish that, with limited exceptions not relevant here, a plaintiff cannot sue for emotional distress damages unless there is an accompanying physical injury.  In the medical-product context, courts have repeatedly rejected emotional distress claims absent physical injury, including in IVC filter cases.  For example, the Southern District of New York last year

---

[3]     The Court has already entered dismissals in approximately 102 of these cases, and there are 25 separate stipulations to dismiss currently pending that comprise approximately another 188 cases.  Cook asks the Court to enter those stipulated dismissals.  *See* Dkts. 10688, 107012, 10705, 10708-10, 10713, 10716, 10718, 10722, 10728-29, 10731, 10735, 10737-38, 10747, 10752-53, 10844-10848.

[4]     Cook is filing this motion on May 28, 2019 as the deadline fell on Memorial Day.  Cook intends to file any reply memorandum a day earlier than the reply would otherwise be due so that the motion may be fully briefed and presented for the Court's attention at the June 13, 2019 general MDL hearing.

US.122916663

dismissed an IVC filter case alleging a tilted filter for failure to state a legally cognizable injury. The court stated that even "accepting that the likely tilt is an actual tilt, no more is said about it than that it may lead to a series of actual injuries." *Perez v. B. Braun Med., Inc.*, 2018 WL 2316334, at *5 (S.D.N.Y. May 9, 2018). *Perez* follows a long line of cases from around the country rejecting product claims in the absence of a present physical injury and product defect, including DES and asbestos "fear of cancer" cases and "ticking time bomb" pacemaker and heart valve cases.

To the extent that Category 2 Plaintiffs also assert non-tort claims sounding in warranty and state consumer protection statutes, those claims fail as a matter of law for other reasons. Finally, loss of consortium and punitive damage claims by Category 2 Plaintiffs are derivative and fail because the Plaintiffs' substantive claims fail.

The Court should therefore dismiss these Plaintiffs' actions for failure to state any legally cognizable claim. The dismissals should be with prejudice to all claims made by the Category 2 Plaintiffs to date in their short-form complaints and their PPS and Categorization Forms. In the event any of these Plaintiff *actually* experience filter-related physical injuries in the future, they should be permitted to re-file their case in the Southern District of Indiana only within the applicable statute of limitations period (i.e., the same process in the Category 2 stipulations that are pending before the Court and that the Court adopted when it dismissed 95 Category 2 Cases (Dkt. 10632)).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings after the parties have filed the Complaint and Answer. Fed. R. Civ. P. 12(c); *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). The standard for judgment on the pleadings under Rule 12(c) is the same as the standard under Rule 12(b)(6): the plaintiff must state a claim that is plausible on its face. *Lodholtz v. York Risk*

*Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   A claim is not facially plausible unless "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court will grant a Rule 12(c) motion if "the plaintiff cannot prove any facts that would support his claim for relief."  *N. Indiana Gun & Outdoor Shows, Inc.*, 163 F.3d at 452. The Court must "accept the plaintiff['s] well-pled facts as true and construe reasonable inferences in [the plaintiff's] favor." *Tierney v. Advocate Health & Hosps. Corp.*, 797 F.3d 449, 451 (7th Cir. 2015).  The Court need not accept the plaintiff's legal conclusions.  *Id.*; *see also Rodgers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 197 (7th Cir. 1985).[5]

---

[5]    As noted in the text and motion title, Cook brings this motion as a motion to dismiss under Rule 12(c).  Although the motion relies on the Plaintiffs' categorization forms, which are not formally part of the Plaintiffs' complaints, Seventh Circuit authority permits the Court to take judicial notice of these categorization forms because they reflect facts that cannot be reasonably disputed, namely the scope of Plaintiffs' claims of injury in forms that Plaintiffs' own counsel filled out.  *See e.g., Amin Ijbara Equity Corp., Vill. of Oak Lawn*, 860 F.3d 489, 494 n. 2 (7th Cir. 2017) (citing Fed. R. Evid. 201).

In addition, because the categorization forms essentially provide information that would have been included in the Plaintiffs' complaints but for the MDL-specific short-form procedure, Cook believes that the Court may also take judicial notice of the categorization forms because they are implied by and integral to the allegations in Plaintiffs' Complaints.  *See, e.g., Venture Assocs. Corp. v. Zenith Data Sys. Corp*, 987 F.2d 429, 431 (7th Cir. 1993) (court addressing motion to dismiss may consider letters of intent to sell goods that were referenced in complaint); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cit. 1994) (considering agreement referenced in complaint).  In other words, Plaintiffs' Master Complaint makes general allegations about complications and injuries allegedly caused by Cook filters, and the categorization form supplies the case-specific information about what individual Plaintiffs are alleging occurred with respect to their individual cases.  Those allegations necessarily would have been included in a well-pleaded standalone complaint.  Should the Court decline to take judicial notice of the categorization forms, Cook urges the Court in the alternative to convert this motion to a summary judgment motion so that it may consider the categorization forms and their confirmation that the Plaintiffs in Exhibit A have self-categorized as Category 2.  *See* Fed. R. Civ. P. 12(d); *Progress Dev. Corp. v. Mitchell*, 286 F.2d 222, 232 (7th Cir. 1961) ("a motion to dismiss may be treated as one for summary judgment").

US.122916663

The definition and scope of liability in tort are questions of state law and are governed by the applicable substantive law. *Shady Grove Orthopedic Assocs., PA v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) ("It is a long-recognized principle that federal courts sitting in diversity apply state substantive law and federal procedural law.").[6]

## ARGUMENT

**I.**   **Category 2 Plaintiffs Fail to State Legally Cognizable Personal Injury Tort Claims Because They Do Not Claim to Have Suffered from Any Physical Injury or Product Defect.**

Plaintiffs' personal injury tort claims (Counts I – IV) must be dismissed for failure to state legally cognizable injuries. By self-definition, Plaintiffs in Category 2 cases have not experienced any physical injuries. Under both longstanding tort law principles and modern precedent in medical product cases, including IVC filter cases, a plaintiff cannot sustain a claim for emotional distress damages for fear of *future* injury absent any *present* physical injury.

**A.**   **Under Traditional Tort Law Principles, Infliction of Emotional Distress Without Physical Injury Is Not A Legally Cognizable Tort.**

Setting aside intentional "outrage" torts not at issue here, the traditional common law rule is that a plaintiff cannot sue for emotional distress damages based on a defective product or negligent conduct absent some accompanying physical injury caused by the defendant. *See*

---

[6]   The Court need not conduct a complex choice-of-law analysis for each case because the outcome is the same under the laws of all the states whose laws could arguably apply. The Category 2 cases are not legally cognizable under the law of any state because the Plaintiffs have not experienced product failure and are not claiming any underlying physical injury. *See e.g., Simon v. United States*, 805 N.E.2d 798, 801 (Ind. 2004) (explaining that the Court's first step on a choice-of-law analysis is to determine if there is a "true conflict between the laws of the two states."). Here, there may be immaterial nuanced differences in state law, but no "true conflict" because the Category 2 cases would not be cognizable under Indiana law or the substantive laws of any of the states where they reside. Nonetheless, Cook has collectively included in Sections I and II case law from the Plaintiffs' various home states.

Prosser & Keeton, *Torts* § 30 at 165 (5th ed. 1984) ("The threat of future harm, not yet realized, is not enough.").  Restatement (Second) of Torts provides in pertinent part that:

> If the **actor's conduct** is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it **results in such emotional disturbance alone**, without bodily harm or other compensable damages, **the actor is not liable for such emotional disturbance**.

Restatement (Second) of Torts § 313 (1965) (emphasis added).  For example, the Indiana Supreme Court has explained that "the requirement that there must be some physical impact on the plaintiff before recovery for mental trauma will be allowed … has been the rule in Indiana for nearly one hundred years, and it has it[s] origins in England." *Shuamber v. Henderson*, 579 N.E.2d 452, 454 (Ind. 1991).  As courts have explained, the rule is a necessary safeguard against meritless and frivolous claims.  *See Bruscato v. O'Brien*, 705 S.E.2d 275, 280 (Ga. Ct. App. 2010) (explaining that there are "three policy reasons traditionally given…for denying recovery for emotional distress unrelated to physical injuries"—(1) concern about inundating courts with emotional distress claims; (2) concern for fraudulent claims; and (3) the "difficulty in proving the causal connection between the defendant's negligent conduct and claimed damages of emotional distress.").

Courts throughout the country have adopted some version of this basic principle: an impact-causing physical injury or a physical manifestation of injury is required before a plaintiff may claim emotional distress damages.[7]  *See e.g., Reynolds v. State Farm Mut. Auto. Ins. Co.*, 611 So.2d 1294, 1295-96 (Fla. Dist. Ct. App. 1992) ("The impact rule is the long-standing rule that a plaintiff must suffer a physical impact before recovering for emotional distress caused by the negligence of another...the emotional distress suffered must flow from physical injuries the

---

[7]    Some states do not even go this far, instead categorically rejecting *any* cause of action premised on negligent infliction of emotional distress.  *See Mechs. Lumber Co. v. Smith*, 752 S.W.2d 763, 765 (Ark. 1988).

US.122916663

plaintiff sustained in an impact."); *Olivero v. Lowe*, 995 P.2d 1023, 1026 (Nev. 2000) ("a physical impact must have occurred or ... proof of serous emotional distress causing physical injury or illness must be presented."); *Anderson v. Scheffler*, 752 P.2d 667, 669 (Kan. 1988) ("There may be no recovery in Kansas for emotional distress unless that distress results in physical impact: an actual physical injury to the plaintiff."); *Moresi v. State*, 567 So.2d 1081, 1095 (La. 1990) (tracking Restatement); *Daley c. LaCroix*, 179 N.W.2d 390, 395 (Mich. 1970) ("where a definitive and objective physical injury is produced as a result of emotional distress proximately caused by defendant's negligent conduct"); *Houston v. Texaco, Inc.*, 538 A.2d 502, 504 (Pa. Super Ct. 1988) ("except in limited circumstances, a claimant may not recover damages for negligently inflicted emotional distress in the absence of a physical manifestation of the emotional distress allegedly suffered."); *Wilson v. Gen Motors Acceptance Corp.*, 883 So.2d 56, 65 (Miss. 2004) ("a plaintiff therefore may not recover emotional distress damages resulting from ordinary negligence without providing some sort of physical manifestation of injury or demonstrable physical harm."); *Evans v. Twin Falls Cty.*, 796 P.2d 87, 95 (Idaho 1990) (explaining that Idaho law requires "both an allegation and proof that a party claiming negligent infliction of emotional distress suffered a physical injury."); *Hammond v. Cent. Lane Comm. Ctr.*, 816 P.2d 593, 598 (Okla. 1991) (en banc) (declining to abandon the physical impact rule); *Cuevas v. United States*, 2018 WL 1399910, at *10 (D. Colo Mar. 19, 2018) ("negligence is not actionable in Colorado unless it results in physical damage to persons or property; fear of possible future injuries from a latently-dangerous condition do not suffice.") (internal citation omitted); *Hughes v. Moore*, 197 S.E.2d 214, 219 (Va. 1973) ("where conduct is merely negligent…and physical impact is lacking, there can be no recovery for emotional disturbance alone."); *Andersen v. BYU*, 879 F. Supp. 1124, 1130 (D. Utah 1995), *aff'd* 89 F.3d 849 (10th Cir.

- 7 -

1996) (explaining that Utah law "requires that there be some physical illness to recover for negligent infliction of emotional distress."); *Sacco v. High Country Indep. Press, Inc.*, 896 P.2d 411, 428 (Mont. 1995).[8]

Here, the Plaintiffs at issue here have self-identified their cases as involving only Category 2 claims, that is, claims alleging "only non-physical injuries, such as worry, stress, or fear of future injury." These Plaintiffs selected Category 2 based on counsel's thorough and certified review of their medical records. *See* Dkt. 9322 p. 2 (defining categories in initial order); Dkt. 9638, Order Regarding Case Categorization and Census (adopting Categorization Form and including definition in Form). If these Plaintiffs had claims of any physical injury or even of an alleged asymptomatic filter complication, they would have categorized themselves in a category higher than Category 2. *See* Categorization Form, Dkt. 9638-1, Instruction No. 2 (permitting plaintiffs to select multiple categories so long as each selection is supported by a specific medical record and explaining that only the "'highest' alleged category will be considered for purposes of the census ordered by the Court.").[9]

---

[8] Although some courts in these states have recognized exceptions to this rule, those exceptions are limited to narrow circumstances not alleged here. The primary exception is the bystander exception, which permits recovery for emotional distress resulting from witnessing physical harm to someone else, usually a close family member. *See e.g., Keck v. Jackson*, 593 P.2d 668, 670 (Ariz. 1979) ("the emotional distress must result from witnessing an injury to a person with whom the plaintiff has a close personal relationship, either by consanguinity or otherwise."). Other exceptions recognized in some jurisdictions include claims by family members suing morticians for negligent mishandling of a corpse, *Chesher v. Neyer*, 392 F. Supp. 2d 939 (S.D. Ohio 2005), and negligent misdiagnosis of a sexually transmitted disease, *Molien v. Kaiser Found. Hosp.*, 616 P.2d 813 (Ca. 1980). These cases arose in unique circumstances that ensured the claimed emotional distress was likely both sincere and severe, overcoming the risks of speculativeness.

[9] The great majority of these Category 2 Plaintiffs also submitted a filter placement record as their only supporting medical record – a record that merely demonstrates that the Plaintiffs received Cook IVC filters that presumably remain in their bodies, and does not suggest that any physician actually documented any injuries of any kind, physical or emotional.

Because these Plaintiffs concede that they have not suffered any physical injury, they present pure PIP/No Injury claims, and their actions must be dismissed for failure to state a legally cognizable personal injury claim.

**B.     Courts Have Repeatedly Rejected Fear Claims Regarding Implanted Medical Products, Including in IVC Filter Cases.**

Because the physical injury requirement is an overarching rule of tort law, courts have consistently rejected emotional distress and fear-based claims in the specific context of medical product litigation. These courts have noted the risk of frivolous claims in the medical drug and device space, as this Court has witnessed in this very MDL.[10]

1.     IVC Filter Cases

Most material to the present MDL, courts have rejected IVC filter claims that allege no physical injury. Last year, in what appears to have been the first case addressing "no injury" in the IVC filter context, a judge in the Southern District of New York **held that fear of injury from an IVC filter is not a cognizable injury**. *See Perez*, 2018 WL 2316334. In *Perez*, the plaintiff received an IVC filter and alleged that a CT scan subsequently showed the filter was tilted. The plaintiff alleged pain and sought economic and psychological damages, as well as "substantial medical costs and expenses" for her care and treatment. The plaintiff claimed various unspecified physical injuries: "sustained serious personal injuries," "serious personal injuries, "severe injuries," "loss of enjoyment of life, disability, and other losses." She also alleged she was at a greater risk of future injury because of

---

[10]     Of note, every jurisdiction in the country requires medical causation in medical product liability cases to be proven with expert testimony because of the complexity of the causation issues involved, even where an injury has clearly occurred and the material issues are product defect and causation. *See* Peter A. Meyer & Eldin Hasic, *Oh Expert, Where Art Thou?*, ABA Section of Litigation, Mass Torts (November 1, 2018), published online at https://www.americanbar.org/groups/litigation/committees/mass-torts/articles/2018/oh-expert-where-art-thou/ (50-state survey on expert testimony requirement regarding medical causation in complex medical device cases). Cases such as the Category 2 here lack a cognizable symptomatic physical injury, the *prerequisite* to even attempting to prove complicated medical causation issues.

the IVC filter.  The defendants moved to dismiss, arguing that the complaint did not adequately allege that the plaintiff had presently suffered any cognizable injury.  *Id.* at 3.  The court granted the motion and dismissed the case, holding that "[a] threat of future harm is insufficient to impose liability against a defendant in a tort context." *Id.*  Addressing the tilt claims, the court said "as a characteristic throughout the complaint[], she assumes that the tilt is the injury.  But, accepting that the likely tilt is an actual tilt, no more is said about it than that it may lead to a series of actual injuries." *Id.* at 5.  In sum, the court held fear of injury and tilt are not cognizable injuries.  *Id.*

The Category 2 cases at issue in this Motion have self-designated and certified that they are only claiming emotional distress and fear-based claims.  As the *Perez* court explained, these are speculative claims of "[a] threat of future harm [that] is insufficient to impose liability against a defendant in a tort context." *Id.* at 5.

2.   DES Cases

In the 1970s and 1980s, litigation arose regarding diethlsibestrol (DES), a synthetic estrogen, after it was linked to cancer in daughters of women that used the product.  Courts in DES cases rejected mere "fear of cancer"/risk of exposure claims as insufficient to state actionable injuries.  As the Northern District of Illinois explained in one of the first DES decisions:

> Clearly, one of the essential elements in a claim for strict liability is physical injury to the plaintiff.  The closest the complaint comes to alleging physical injury is the allegation of a "risk" of cancer.  **The mere fact of risk without any accompanying physical injury is insufficient to state a claim for strict products liability.**  Likewise, the plaintiffs may not rely on injury to their children to state a claim for relief for themselves, even though they allege mental anxiety and emotional distress as a consequence of the injury to their children.

*Mink v. Univ. of Chicago*, 460 F. Supp. 713, 716 (N.D. Ill. 1978) (emphasis added, internal citations omitted); *see also Payton v. Abbott Labs.*, 437 N.E.2d 171, 180 (Mass. 1982) (holding "that when recovery is sought for negligent, rather than intentional or reckless, infliction of emotional

US.122916663

distress, evidence must be introduced that the plaintiff has suffered physical harm" because this rule "will serve to limit frivolous suits and those in which only bad manners or mere hurt feelings are involved, and will provide a reasonable safeguard against false claims."); *Plummer v. Abbott Labs.*, 568 F. Supp. 920, 925 (D.R.I. 1983).

3.   Fear of Cancer Cases

Since the DES litigation, courts have also rejected fear-of-cancer claims in other contexts, such as asbestos litigation.  *See e.g., DeStories v. City of Phoenix*, 744 P.2d 705 (Az. Ct. App. 1987) ("In our opinion, the view that mere ingestion of toxic substance constitutes sufficient physical harm on which to base a claim for damage for mental anguish goes beyond the reach of current Arizona case law.").   Indeed, an Ohio appellate "decline[d] to extend the rule permitting recovery for severe emotional distress caused by a fear of a statistical chance of harm, in those cases where the plaintiff has incurred a contemporaneous physical injury, to the situation at hand, where the plaintiff did not suffer an injury" because "no court has allowed recovery for apprehension of a risk of harm in a case such as the one at bar, where the plaintiff has not suffered any injury whatsoever."  *Williams v. Warren Gen. Hosp.*, 684 N.E.2d 730, 733 (Ohio Ct. App. 1996) (case involving ovarian cancer misdiagnosis); *Sopha v. Owens-Corning Fiberglass Corp.*, 601 N.W.2d 627, 634 (Wis. 1999) (explaining that plaintiff could not recover any damages before the year he was diagnosed with mesothelioma because "[i]n Wisconsin a claimant cannot recover for speculative or conjectural damages) (internal citations omitted).

In a particularly enlightening example, a trial court in Connecticut addressed summary judgment motions brought against 10 plaintiffs chosen as "test plaintiffs" in an asbestos litigation comprised of 109 plaintiffs spread across 15 separate cases.  *Goodall v. United Illuminating*, 1998 WL 914274, at *1 (Conn. Super. Ct. Dec. 15, 1998).   The Court noted that, "[w]ith the exception of one

- 11 -

plaintiff, plaintiffs' claims for emotional distress arise solely from the fear of a future asbestos-related illness or disease." *Id.* at *2.  After surveying Connecticut law, cases from other states, the Restatement (including its definitions of "injury, "harm," and "physical harm,"), the *Goodall* court granted summary judgment in all 10 cases, stating:  "Because there has been no showing that these plaintiffs have suffered compensable harm, there can be no cause of action regardless of whether such conduct could be classified as negligent, reckless, or intentional.  A breach of standard of care is immaterial if there are no compensable injuries." *Id.* at *12 (citing *Barrett v. Danbury Hosp.*, 654 A.2d 748, 753 (Conn. 1995)).

### 4.    Heart Valve and Pacemaker Cases

Media reports of potential malfunctions in pacemakers and heart valves in the late 1980s and early 1990s led to the filing of claims premised on plaintiffs' fears that their devices might fail and cause serious injury or death sometime in the future.  Courts have consistently held that actions premised solely on fear of future injury failed to state legally cognizable claims.  For example, a plaintiff claimed "that a 'time bomb' has been implanted in his heart, [causing him] fears that it will explode at any time," echoing the extensive IVC filter advertising by Plaintiffs' counsel promoting this litigation.  *Lauterbach v. Shiley, Inc.*, 1991 WL 148137, at *1 (S.D. Tex. Mar. 29, 1991).  The court dismissed the case, noting that the plaintiff was only alleging fear, worry, and the like, and holding "[t]here is no cause of action under Texas law where a plaintiff's product is and has been functioning without incident. Texas law does not recognize a claim seeking to recover for alleged concern or anxiety that a functioning product might fail at some future unknown time." *Id.* at *9.

Another heart valve plaintiff had "watched the television program '20/20' which contained a segment on [his] valve … [and] discussed incidents of failure or malfunction of the valve.

- 12 -

[The plaintiff] claim[ed] he ha[d] suffered severe psychic and emotional injuries upon learning the prosthetic valve has potential defects." *Brinkman v. Shiley, Inc.*, 732 F. Supp. 33, 33 (M.D. Pa 1989), aff'd 902 F.2d 1558 (3d Cir. 1989).   The court dismissed the case based on the lack of any present injury, agreeing with the defendant that it was "preposterous [for plaintiff] to suggest that a manufacturer of a product which is obviously intended to save ... lives ... deliberately engaged in conduct specifically calculated to cause emotional distress to some particular person." *Id.* at 34-35.   *See also Rall v. Medtronic, Inc.*, 1986 WL 22271, at *2 (D. Nev. Oct. 15, 1986); *Hagepanos v. Shiley, Inc.*, 1988 WL 35752, at *1 (4th Cir. Apr. 18, 1988) (unpublished) (rejecting the "contention that [plaintiff] may recover because he seeks damages not for future injury, but for the present fear that the future injury will occur.   By characterizing his claim as one arising from present distress, plaintiff attempts to evade the Maryland rule by way of semantics."); *Kent v. Shiley, Inc.*, 1989 WL 88307, at *4 (D. Or. Jan. 24, 1989); *Sill v. Shiley, Inc.*, 735 F. Supp. 337, 340 (W.D. Mo. June 1, 1989); *Willett v. Baxter Int'l, Inc.*, 929 F.2d 1094, 1099-1100 (5th Cir. 1991) (Louisiana law); *Murphy v. Shiley, Inc.*, 1991 WL 135505, at *1 (9th Cir. 1991) (Washington law, unpublished); *Walus v. Pfizer, Inc.*, 812 F. Supp. 41, 45 (D.N.J. 1993) (dismissing case and request for additional discovery because "plaintiffs' emotional distress is related to the contents of a television show and not from a defective prosthetic valve.") (citing *Brinkman*, 732 F. Supp. at 35); *Pfizer, Inc. v. Farsian*, 682 So. 2d 405, 407 (Ala. 1996) ("Under Alabama law, [plaintiff's] fear that his valve could fail in the future is not, without more, a legal injury sufficient to support his claim"); *Wood v. Wyeth-Ayerst Labs.*, 82 S.W.3d 849 (Ky. 2002) (alleged increased risk of heart disease from use of pharmaceutical drug not a sufficient injury).

US.122916663

5.    Other Cases

This basic principle that plaintiffs cannot bring claims in medical product cases absent a present physical injury has been applied to a variety of other products.  *See, e.g., Eike v. Allergan, Inc.*, 850 F.3d 315, 318 (7th Cir. 2017) (affirming dismissal of class action alleging eye drops could have been designed more efficiently because "that a seller does not sell the product that you want, or at the price you'd like to pay, is not an actionable injury; it is just a regret.") (claims analyzed under Illinois and Missouri law); *Martin v. Am. Med. Sys., Inc.*, 1995 WL 680630, at *5-6 (S.D. Ind. Oct. 25, 1995) (risk of penile implant failure is not a sufficient injury to create standing for class members that did not experience failure, nor is it a sufficient injury under state law); *Cure v. Intuitive Surg. Inc.*, 705 F. App'x 826 (11th Cir. 2017) (holding that under Georgia law, mere presence of metal shavings from medical device in the body does not constitute a legally cognizable injury); *Friedman v. Merck & Co.*, 131 Cal. Rptr. 2d 885, 909 (Cal. App. 2003) (risk of emotional injury from vegan's exposure to animal products in test for tuberculosis is not sufficient injury); *Ball v. Joy Mfg. Co.*, 755 F. Supp. 1344, 1368 n. 17 (S.D. W. Va. 1990) (in a case applying West Virginia and Virginia substantive law, the court commented that "claims for increased risk of contracting future illnesses have been disallowed by courts because plaintiffs have failed to demonstrate that they have suffered a present injury….it is clear in such cases, whether explicitly or implicitly, that the mere exposure does not itself constitute a present injury."); *Miller v. Willbanks*, 8. S.W.3d 607, 614 (Tenn. 1999) (recognizing "that legitimate concerns of fraudulent and trivial claims are implicated when a plaintiff brings an action for a purely mental injury.").

In sum, from the DES and heart valve litigation in the 1980s to IVC filter litigation today, courts have repeatedly rejected as legally insufficient claims of emotional distress and fear of future injury in the absence of present physical injury.  The Category 2 cases here suffer from the same legal

- 14 -

flaw.  The Court should therefore dismiss all the personal injury tort claims alleged by these Plaintiffs, specifically their Strict Liability claims (Counts I-II) and their Negligence and Negligence Per Se claims (Counts III-IV).

## II.    Category 2 Plaintiffs' Non-Tort Claims Also Fail as a Matter of Law.

Although Plaintiffs' Master Complaint asserts and Plaintiffs' short-form Complaints adopt some non-tort-based claims, all those claims likewise fail as a matter of law.

### A.    Plaintiffs' Express Warranty Claims Fails Because, as the Court Has Previously Ruled, the Master Complaint Fails to State Sufficient Allegations to Support This Claim.

Plaintiffs' express warranty claims (Count V) fail because neither the Master Complaint nor the short-form Complaint alleges any express warranties about the performance of Cook's IVC filters.

The Court has already addressed this issue in the context of Texas-based Plaintiff Emily Apple's express warranty claim and held that the Master Complaint and that plaintiff's short-form complaint failed to sustain a claim for express warranty, noting that "the omission of her specific warranty allegations is fatal."  *See* Court's Entry on Motion for Judgment on the Pleadings Based on the Statute of Repose, Dkt. 4918, pp. 13-14 (rejecting Plaintiff Apple's express warranty arguments).   The Court also held that "even if she had included such allegations in her Short Form Complaint, her claim would not survive" because she failed to allege who made the alleged verbal warranty or claim that she relied on the Cook written materials.  *Id.*  In the *Brand* case, Plaintiff Brand did not even attempt to defend her express warranty claim, and the Court readily granted Cook summary judgment on the claim.  *See* Entry on Defendants' Motion for Summary Judgment, Dkt. 9696.

- 15 -

Because the general assertions in the Master Complaint cannot sustain a claim for express warranty and, as far as Cook can determine, the Category 2 Plaintiffs have not asserted case-specific express warranty allegations in their short-form complaints,[11] Cook urges the Court to dismiss the Category 2 Plaintiffs' express-warranty claims.

## B.   Category 2 Plaintiffs Cannot as a Matter of Law Establish Implied Warranty Claims, Either in Tort or in Contract.

Cook is also entitled to dismissal of the Category 2 Plaintiffs' claims based on implied warranty (Count VI), whether those warranties are claimed to arise from tort or contract.  To the extent they arise in tort, implied warranty claims fail for the same reasons as Plaintiffs' other tort claims—the lack of any claim of physical injury, as discussed above.  *See, e.g.*, 2 Dan D. Dobbs, Paul T. Hayden, and Ellen M. Bublick, *The Law of Torts* § 390 (2d ed. 2018) (noting that no court has adopted a duty for an actor to exercise reasonable care where the actor's conduct creates a risk of emotional harm); Prosser & Keeton, *Torts* § 30 at 165 (5th ed. 1984) ("The threat of future harm, not yet realized, is not enough."); *Perez*, 2018 WL 2316334, at *5 (explaining reasons underlying court's dismissal plaintiff's implied warranty claims in IVC filter case with no injury because "threat of future harm is 'insufficient to impose liability' because plaintiff 'must sustain injury or damage before being able to recover' to protect 'court dockets from being clogged with frivolous and unfounded claims.'") (quoting *Caronia v. Phillip Morris, USA, Inc.*, 5 N.E.3d 11, 14 (N.Y. 2013)).

---

[11]   Cook notes that Plaintiff Apple attempted to support her express warranty claim against Cook's motion by citing the Cook Patient Guide and an alleged oral warranty, but the Court nevertheless found her express warranty claim inadequate as plead.  *See* Dkt. 4918 at 14-15. Here, the Category 2 Plaintiffs do not allege even those insufficient grounds for an express warranty claim, and *a fortiori* fail as a matter of law.

US.122916663

On the contract side, any contractually based implied-warranty claim by a Category 2 Plaintiff fails as a matter of law because a plaintiff cannot recover emotional distress damages under contract law absent physical injury:

> The general rule is that damages "damages for mental anguish are limited to cases in which there has been a personal physical injury or where the defendant acted willfully, wantonly, recklessly or intentionally caused the mental anguish. **Thus, recovery for mental anguish is not, as a general rule, allowed in actions for breach of contract;** the courts evidently believe that the mental suffering which accompanies a breach of contract is too remote for compensation."

*Maere v. Churchill*, 452 N.E.2d 694, 697 (Ill. Ct. App. 1983) (quoting 22 Am. Jur. 2d, Damages, § 196 (2d Ed. 1965) (emphasis added); *see also Fava v. Liberty Mut. Ins. Corp.*, 338 F. Supp. 3d 1217, 1224 (D.N.M. 2018) ("Plaintiffs offer nothing to show that they can recover emotional distress damages as a category of consequential damages, nor do they offer any legal support for the recovery of emotional distress damages under a contract theory."); Restatement (Second) of Contracts § 353 (1981) ("Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind of serious emotional disturbance was a particularly likely result.").

Additionally, to succeed on a theory of implied warranty of merchantability or other type of implied warranty, Plaintiffs would have to show the product is not merchantable or that the goods were not as warranted.  Here, Category 2 Plaintiffs have certified in their Categorization Forms that they are merely PIP cases alleging emotional distress injuries, conceding that their Cook IVC filters have not failed.  Given this concession, Category 2 Plaintiffs cannot establish that their filters were not merchantable or were unfit for their use; if a Category 2 Plaintiff had experienced a symptomatic perforation, migration, or other event that the Master Complaint claims arises from a defect or negligence, that Plaintiff's case would have been categorized into a "higher" category, *i.e.*, Categories 4-7.  Put another way, a plaintiff may not recover for the mere

*fear* of breach of warranty that causes physical injury; that would lead back to the same problem analyzed above with respect to Plaintiffs' traditional tort and product liability claims.

### C.    Plaintiffs' Consumer Fraud Claims Fail Because They Are Not Plead With The Particularity Required By Federal Rule of Civil Procedure 9(b).

The Category 2 Plaintiffs' fraud-based consumer protection claims (Count VII) fail as a matter of law because Plaintiffs did not plead them with the particularity required by Fed. R. Civ. P. 9(b).  Federal case law makes clear that plaintiffs in federal court on diversity grounds must plead their fraud-based consumer-protection claims with particularity.  That is, "when fraud is alleged, it must be done with particularity and plead the who, what, when, where, and how of the alleged fraud."  *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992); *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 155 F. Supp. 2d 1069, 1109 (S.D. Ind. 2001) (dismissing plaintiffs' claims under Michigan and Tennessee consumer protection statutes for failure to meet the heightened pleading requirements of Rule 9(b), including failure to allege "individual reliance").  Under the Seventh Circuit's case law on Rule 9, a plaintiff must allege at least the specific circumstances of the alleged fraud – the who, what, and how – to meet the particularity requirement.  *See, e.g., Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 669 (7th Cir. 2008) (affirming dismissal under Rule 9 where "the complaint failed to plead with particularity the who, when and how of the alleged frauds, all of which are required by Rule 9(b) for allegations of fraud").

Here, Plaintiffs' Master Complaint makes only the most general of allegations about Cook's allegedly fraudulent conduct:

> Defendants misrepresented the alleged benefits and characteristics of Cook's IVC Filters; suppressed, omitted, concealed, and failed to disclose material information concerning known adverse effects of Cook's IVC Filters; misrepresented the quality and efficacy of Cook's IVC Filters as compared to much lower-cost alternatives; misrepresented and advertised that Cook's IVC

- 18 -

> Filters were of a particular standard, quality, or grade that they were not; misrepresented Cook's IVC Filters in such a manner that later, on disclosure of the true facts, there was a likelihood that Plaintiffs would have opted for an alternative IVC Filter or method of preventing pulmonary emboli.

Dkt. 213, ¶ 116.  These allegations contain no allegations of the who, what, or how of the alleged misrepresentations, and thus fail to meet Rule 9's particularity requirement.   None of the Category 2 Plaintiffs' short-form complaints provide any additional or more specific allegations; they simply adopt the Master Complaint's vague allegations.   Because the Category 2 Plaintiffs have offered only vague, general allegations in support of their consumer fraud claims, those claims fail as a matter of law, and the Court should dismiss them.  *E.g., Windy City Metal*, 536 F.3d at 669.

### D.    Plaintiffs' Derivative Claim for Loss of Consortium and Punitive Damages Fail Because They Cannot Stand on Their Own.

Finally, Plaintiffs' claims for loss of consortium (Count VIII) and punitive damages (Count XI) fail as a matter of law because they are derivative claims that cannot stand on their own.[12]  *See, e.g., Remmers v. Remington Hotel Corp.*, 56 F. Supp. 2d 1046, 1058-59 (S.D. Ind. 1999) ("Under Indiana law, loss of consortium claims are derivative from the spouse's underlying claim, in that, if the underlying claim cannot be proven, then the loss of consortium claim fails."); *Weaver v. Ethicon, Inc.*, 2017 WL 680725, at *9 (S.D. Cal. Feb. 21, 2017), *aff'd*, 737 F. App'x 315 (9th Cir. 2018) (holding that in a medical device case, loss of consortium and punitive damages claims are derivative of substantive law claims and "since the Court dismisses all causes of action, the loss of consortium claim and punitive damages based on these claims

---

[12]     This brief omits discussion of Counts IX and X of the Master Complaint, which plead claims of wrongful death and survival.   Such claims by definition are not asserted by or applicable to the Category 2 Plaintiffs who are the subject of this motion.   Moreover, Cook has reviewed available information and is not aware of any Category 2 Plaintiff having asserted wrongful death and/or survival claims.   To the extent any Plaintiff subject to the Motion would have done so, the claim has been abandoned by not categorizing as Category 7(j).

US.122916663

also fail."); *DeGrate v. Exec. Imprints, Inc.*, 261 S.W.3d 402, 412 (Tex. Ct. App. – Tyler Div. 2008) ("When a loss of consortium is derived from an injury to the spouse, the claim is derivative and thus, must fail if the injured spouse's claims against the defendant fails."); *Benavides v. Cty. of Wilson*, 955 F.2d 968, 975 (5th Cir. 1992) (finding that summary judgment against non-derivative claim also barred the derivative loss of consortium claim); *Aoyagi v. Straub Clinic & Hosp., Inc.*, 140 F. Supp. 3d 1043, 1062 (D. Haw. 2015) ("[T]his claim must fail because punitive damages are derivative in nature and cannot form an independent claim."); *Bernard v. Town of Lebanon, Maine*, 2017 WL 1232406, at *1 (D. Me. Apr. 3, 2017) ("the Court dismisses the punitive damages claim because punitive damages are a remedy, not a standalone count.").

In the MDL context, the District of Minnesota dismissed loss of consortium claims and unjust enrichment claims as derivative when it dismissed the entire master complaint in an MDL involving a PMA device due to federal preemption:

> Claims such as loss of consortium … do not appear to fit neatly into any of the aforementioned categories.  Nevertheless, the Court agrees with Medtronic that any claims in the Complaint not addressed above are derivative of Plaintiffs' other claims and hence cannot stand.

*In re Medtronic, Inc. Sprint Fidelis Leads Prod. Liab. Litig.*, 592 F. Supp. 2d 1147, 1165 (D. Minn. 2009), *aff'd*, 623 F.3d 1200 (8th Cir. 2010).

Here, as discussed above, all of the Category 2 Plaintiffs' substantive claims fail as a matter of law, and the derivative loss of consortium and punitive damages claims fail along with those substantive claims.  This has been confirmed by numerous courts throughout the country, as exemplified by the diverse group of cases cited here from Indiana, California, Texas, Hawaii, and Maine.  *See e.g., Remmers*, 56 F. Supp. 2d at 1058-59; *Weaver*, 2017 WL 680725, at *9 *DeGrate*, 261 S.W.3d at 412 ("When a loss of consortium is derived from an injury to the

spouse, the claim is derivative and thus, must fail if the injured spouse's claims against the defendant fails."); *Benavides*, 955 F.2d at 975; *Aoyagi*, 140 F. Supp. 3d at 1062; *Bernard*, 2017 WL 1232406, at *1; *In re Sprint Fidelis*, 592 F. Supp. 2d at 165.

Accordingly, the Court should dismiss those derivative claims as well.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the Category 2 cases in their entirety. The dismissal should be with prejudice as to all claims, injuries, complications, and outcomes alleged in Plaintiffs' short-form complaints, PPS forms, and Categorization Forms to date.

With respect to re-filing in the event of a future injury, the Court should allow re-filing only in the Southern District of Indiana within the applicable statute of limitations period (i.e. (i.e., the same process in the Category 2 stipulated dismissals that are pending before the Court and that the Court adopted when it dismissed 95 Category 2 Cases (Dkt. 10632)).  As part of its Order, the Court should also discourage Plaintiffs from filing any Category 2 cases in the future as they are inherently meritless as demonstrated by the authorities cited herein.

Respectfully submitted,


Dated:  May 28, 2019

/s/ *Andrea Roberts Pierson*
Andrea Roberts Pierson (# 18435-49)
Jessica Benson Cox (#26259-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204-1750
Telephone:     (317) 237-0300
Facsimile:      (317) 237-1000
Andrea.Pierson@FaegreBD.com
Jessica.Cox@FaegreBD.com

US.122916663

James Stephen Bennett (# 22869-02)
FAEGRE BAKER DANIELS LLP
110 West Berry Street, Suite 2400
Fort Wayne, Indiana  46802-2322
Telephone:     (260) 424-8000
Facsimile:     (260) 460-1700
Stephen.Bennett@FaegreBD.com

*Counsel for the Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2019, a copy of the foregoing Cook Defendants' Memorandum In Support Of Judgment On The Pleadings In Category 2 Cases For Failure To State A Claim was filed electronically and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.  Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

/s/ *Andrea Roberts Pierson*

- 22 -

US.122916663