UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC. IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates Only to the Following Cases:

James R. Cunningham, 1:16-cv-02279
Belinda Sue Halley, 1:17-cv-00971
Betty Parker (Estate), 1:17-cv-02715
Marvin Trepus, 1:18-cv-00412

### DEFENDANTS' OMNIBUS OPPOSITION TO MOTIONS TO RECONSIDER DISMISSALS OF THEIR CASES FILED BY FOUR PLAINTIFFS REPRESENTED BY BRUERA LAW FIRM

The Court should deny the four motions to reconsider filed by Bruera Law Firm on behalf of Plaintiffs Cunningham, Halley, Parker, and Trepus. (Dkts. 10642-45).[1] On May 8, 2019, pursuant to the Court's Categorization and Screening Order, the Court dismissed Plaintiffs' cases along with dozens of other cases because they either did not comply with the Categorization and Screening Order at all (the "Exhibit A" cases) or did not provide any medical records in support of their categorizations (the "Exhibit B" cases). *See* Order on the Cook Defendants' Second Amended Motion to Dismiss (the "Order"), Dkt. 10622 (listing these four Plaintiffs in "Exhibit A"). Plaintiffs now asks the Court (1) to reconsider the Court's Order on grounds that counsel was unaware of the requirement to categorize due to "ECF notifications

---

[1] Because the four Plaintiffs filed nearly identical briefs citing the same authority and are represented by the same firm, the Cook Defendants are responding to all four motions through this single opposition. When referring to all four Plaintiffs collectively, Cook uses the general term "Plaintiffs." When referring to the Plaintiffs individually, Cook respectively uses the terms Plaintiff Halley, Plaintiff Parker, Plaintiff Trepus, and Plaintiff Cunningham.

[going] to Counsel's spam filter," *see* Dkts. 10642-45 at 1, and (2) permit them to belatedly categorize based on the categorization forms attached as exhibits to their motions.

Cook urges the Court to deny Plaintiffs' motions to reconsider the Order dismissing their cases for three reasons. First, the Court's Order permits re-entry into the MDL only under limited circumstances not applicable here – the occurrence of a future injury. Second, although Plaintiffs style their motions as "motion[s] to reconsider," given the present posture, the proper procedural vehicle for the relief Plaintiffs seek is Rule 60(b), which is an extraordinary remedy reserved for extraordinary circumstances absent here. Under Rule 60(b), mere failure on the part of counsel to stay diligent and monitor a docket is not the kind of extraordinary situation that would justify relief from the Order. Indeed, notice regarding categorization was provided to Plaintiffs on no fewer than 10 occasions over a seven-month period, rendering any failure to be aware of the categorization requirement facially unreasonable and the "spam blocker" explanation proffered by Plaintiffs unavailing because courts reject such trivial excuses.

Finally, vacation of the dismissals would be futile in the cases filed by Plaintiffs Halley and Plaintiff Trepus because their claims fail for other reasons. Plaintiff Halley included with her motion a Case Categorization Form selecting Category 1, Dkt. 10644-2, but all the Category 1 cases were "subject to immediate dismissal" under the Categorization and Screening Order (Dkt. 9322) and were dismissed with prejudice on May 1, 2019. *See* Dkt. 10588. Moreover, all the medical records provided are dated January 21 and 22, 2010 and indicate her filter was removed. Thus, if Plaintiff Halley ever had a cognizable claim, it would have been long-time barred by the time she filed her Complaint over seven years later on March 31, 2017.

Similarly, Plaintiff Trepus seeks to categorize as Category 4 on the basis of an alleged "IVC filter strut remain[ing] embedded in body," Dkt. 10645-2, but the medical record provided

with his Categorization Form states that there was "[n]o suspicious retained radiopaque foreign body in the duodenum" and that the "IVC filter has been removed." Dkt. 10645-2 at 8. Accordingly, Plaintiff Trepus should have categorized as Category 1 because the records provided disprove the Category 4 claim and demonstrate that filter has been removed.

**I.   Plaintiffs Are Not Entitled to Reentry in the MDL Based on The Terms of The Order**

As an initial matter, Plaintiffs are barred from re-entry into the MDL based on the terms of the Order itself. Specifically, the Court's Order states:

> **No plaintiff** listed in Exhibit A or Exhibit B, however, **may refile his or her if the future claim is based solely on one of the injuries, complications, or outcomes identified by the plaintiff in his or her individual case in this court**. To the extent that an allegedly cognizable injury occurs in the future, the case may be refiled in MDL 2570 under this Order on the basis of the future injury.

Order, Dkt. 10622 at 2 (emphasis added). Thus, the order permits cases dismissed under the Order to re-file in some limited circumstances – development of a future injury – but otherwise does not permit reentry into the MDL.

Here, all the Plaintiffs concede that the Categorization Forms attached as exhibits to their motions are based on information that was already known, and are not new injury claims. *See* Dkts. 10642-45 at 1 (alleging that "the information sought within the categorization form was previously provided" through PFS/PPS and medical records). Accordingly, the Order precludes Plaintiffs from re-litigating these claims.

**II.   Plaintiffs Are Not Entitled to the Extraordinary Relief Provided By Rule 60(b)**

    **A.   The Proper Procedural Vehicle to Address Plaintiffs' Motions is Rule 60(b)**

Although Plaintiffs request relief under both Rule 60(b) and Rule 59(e), the proper procedural vehicle to address their request is Rule 60(b), which governs requests to vacate an order. "Rule 60(b) provides for extraordinary relief and may be invoked only upon a showing of

- 3 -

exceptional circumstances." *Flett v. W. A. Alexander & Co.*, 302 F.2d 321, 323 (7th Cir. 1962) (collecting cases from Second, Third, and Seventh Circuits); *Dickerson v. Bd. of Educ. of Ford Heights, Ill.*, 32 F.3d 1114, 1116 (7th Cir. 1994) ("[I]t is well-established that Rule 60(b) relief is an extraordinary remedy and is granted only in exceptional circumstances.") (internal citations omitted). Because Rule 60(b) is an extraordinary remedy, "[n]either ignorance nor carelessness on the part of the litigant or his attorney provide grounds for relief under Rule 60(b)(1)." *Lomas & Nettleton Co. v. Wisely*, 884 F.2d 965, 967 (7th Cir. 1989). Accordingly, "some justification for the error beyond failure to exercise due care must be shown." *Dave Kohel Agency, Inc. v. Redshaw, Inc.*, 149 F.R.D. 171, 173 (E.D. Wisc. 1993) (citing *Lomas*, 884 F.2d at 967 and *W. Transp. Co. v. E.I. DuPont de Neumors & Co.*, 682 F.2d 1233, 1236 (7th Cir. 1982). Additionally, "a lawyer's errors are imputed to the client for the purpose of [the analysis]." *Moje v. Fed. Hockey League, LLC*, 792 F.3d 756,758 (7th Cir. 2015). Indeed, even in situations where a lawyer's actions may be negligent or worse, the errors are imputed to the party (under principles of agency law) rather than burdening the opposing party in litigation. *See United States v. 7108 W. Grand Av., Chicago, Ill.*, 15 F.3d 632, 634 (7th Cir. 1994). Nor can a party avoid this result by attributing the fault to some lower level actor in the lawyer's office, like whoever set the spam filter mentioned in Plaintiffs' motions. *See, e.g., Lombardo v. United States,* 860 F.3d 547, 552 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 1032 (2018).

Plaintiffs specify in their motions that they are being brought under Rule 60(b)(1) due to alleged inadvertent failure on the part of their counsel to comply with the Court's Categorization Orders. *See* 10642-45 at 4. "The determination of whether a party's neglect is excusable is 'at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'" *Knapp v. Evgeros, Inc.*, 322 F.R.D. 312, 315 (N.D. Ill. 2017) (quoting *Pioneer Inv.*

*Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 395 (1993)); *see also Raymond v. Ameritech Corp.*, 442 F.3d 600, 606 (7th Cir. 2006) ("We have held that *Pioneer* applies whenever 'excusable neglect' appears in the federal procedural rules."). When analyzing Rule 60(b) claims premised on excusable neglect, "the most important consideration is 'the reason for the delay'" and if the moving party cannot "demonstrate 'genuine ambiguity or confusion about the scope or application of the rules or some other good reason for missing the deadline,' [the party] cannot establish excusable neglect, regardless of how short the delay was or how little it prejudiced the opposing party." *Knapp*, 322 F.R.D. at 320 (quoting *Satkar Hospitality v. Fox Television Holdings,* 767 F.3d 701, 707 (7th Cir. 2014)).[2]

### B. Plaintiffs' Complete Failure To Monitor The Docket Is Not Reasonable And Does Not Justify Extraordinary Relief Under Rule 60(b)

Plaintiffs argue that their counsel was unaware of the requirement to categorize due to allegedly "ECF notifications [going] to Counsel's spam filter" and thus that their "failure to comply with the Court's order was inadvertent," and attach an affidavit from the technology company that manages counsel's email system. Dkts. 10642-45 at 1. Plaintiffs also argue that

---

[2] Plaintiffs cite Rule 59(e) as a claimed alternate source of relief, but Rule 59(e) does not apply here. Rule 59(e) "allows a court to amend a judgment only if the petitioner can demonstrate a manifest error of law or present newly discovered evidence." *Egonwan v. Cook Cnty. Sherriff's Dep't*, 602 F.2d 845, 852 (7th Cir. 2010). "Motions under Rule 59(e) cannot be used to introduce evidence that could have been presented earlier." *Id.* Nor can Rule 59(e) be used as "a vehicle for a party to undo its own procedural failures." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996).

Here, Plaintiffs' request for relief is not premised on any new case law or newly discovered evidence, but on their claim that their attorney was not aware of the requirement to categorize and thus failed to do so in the time available. *See* Dkt. 10674 at 2. Such concerns are the purview of Rule 60(b), not 59(e). *See e.g., Moro*, 91 F.3d 872, 876 ("holding that Rule 59(e) is not "a vehicle for a party to undo its procedural failures."). In any event, Cook notes that Rule 59(e) is also a high bar that Plaintiff cannot meet. *See e.g., Caisse Nationale de Credit Agricole v CBI Indus.,* 90 F.3d 1264, 1270 (7th Cir. 1996) ("A party moving for reconsideration pursuant to Rule 59(e) bears a heavy burden of establishing that the court should reverse its prior judgment.").

- 5 -

counsel learned about the categorization requirement after being notified by "another Plaintiff law firm that her cases had been dismissed per the Court's Order" and that their counsel did not "receive[] a call from Plaintiff's Steering Committee informing her of the Motion to Dismiss." *Id.* at 2.

Plaintiffs fail to establish any "good reason for missing the deadline." An MDL Plaintiff's attorney has a duty to monitor both the individual case docket and the master MDL docket, and a failure to monitor both dockets is facially unreasonable.  On the home page of the Cook Filter MDL, this Court has provided substantial background information to parties and their counsel regarding MDL 2570.  In particular, the site includes a copy of the General Order Regarding Notice Procedure (Dkt. 2771), which explains that because of the size of the MDL, the Court had to discontinue for technical reasons the practice of "spreading" filings and orders to all individual cases.  *Id.*  The Order expressly notes that the Clerk's Office has been adding any "attorney who filed a Notice of Appearance in a member case at the time when the new complaint is filed to the service list of the master case" and that counsel in the individual cases receives service of filings on the master docket without having to enter an appearance.  *Id.* at 2.  The Court's homepage for the MDL also includes a copy of the Amended Order Establishing Policies and Procedures, Dkt. 3309, which governs service of documents in the MDL.  The Order provides in pertinent part that "[a]ll counsel of record shall register for electronic filing, as required by Local Rule 5-3" and that "[r]egistered counsel of record will be served electronically with all orders issued by the Court and all filings made by the parties."

These Orders gave Plaintiffs' attorneys clear notice of the filing and service procedures in the MDL and of what dockets attorneys and their support staff should track for relevant filings.  Moreover, the Cook Defendants repeatedly communicated with the Plaintiffs Steering

US.123296061

Committee and Court between January and April 2019 and made clear that non-compliant cases would be dismissed. *See, e.g.*, April 4, 2019 Letter from S. Bennett to J. Williams (Dkt. 10857-2). Presumably the PSC shared that information with the larger group of plaintiffs' counsel in this MDL.[3] Plaintiffs do not dispute that Cook properly served Plaintiff by filing electronically in the master docket or that ECF notices were sent to all counsel that registered for electronic service as required by the Court. Simply put, Plaintiffs have no reasonable explanation for failing to be aware of the categorization process and consequences for noncompliance under the Court's Categorization and Screening Order.

Moreover, Plaintiffs' counsel has experience in other MDLs and, respectfully, knew her obligation to keep abreast of developments on the master docket of an MDL and to request updates and clarifications from Plaintiffs' leadership as needed. *See Pioneer*, 507 U.S. at 395 (holding that courts may take into "account of all relevant circumstances surrounding the party's omission"); *Raymond*, 442 F.3d at 606 (adopting *Pioneer* approach to Rule 60(b)(1) issues). Specifically, Plaintiffs' counsel advertises on her web site under a heading titled "Our Mass Tort Litigations" that the firm represents plaintiffs in 13 other MDLs.[4] As counsel is actively evaluating cases for filing in over a dozen MDLs, there can be no excuse for their failure to ignore this litigation for over seven months.

Finally, even assuming for the sake of argument that an experienced MDL attorney could justify a court's indulgence for missing an obscure or isolated deadline or docket entry, no even marginally diligent counsel could possibly have been unaware of the categorization requirement

---

[3] Although Plaintiffs argue that the PSC did not **call** their counsel, the motions tellingly do not mention if the PSC communicated with their counsel by **other** means, such as e-mail. Cook's understanding based on the PSC's representations is that that they shared the list of cases subject to dismissal with counsel in individual cases by email.
[4] *See* Bruera Law Firm, "Our Mass Tort Litigations," available at https://www.brueralaw.com/ (accessed May 29, 2019).

- 7 -

in the Cook Filter MDL.  As the Court is well aware, the categorization process was the culmination of months of work and was addressed across multiple meet-and-confer sessions with Plaintiffs' leadership and multiple docket entries.  In fact, individual MDL Plaintiffs and their attorneys were appraised of categorization on **no fewer than <u>10</u> separate occasions**:

- **October 2, 2018**:  Court enters its Order on [Cook's] Motion for Screening Order and Bellwether Selection Plan (Dkt. 9322).  In the Order, the Court defines the categories and orders categorization for all cases, with deadlines and format to be determined at the next conference.
- **November 12, 2018**:  The Court enters the parties' proposed order regarding categorization and the census (Dkt. 9600).  The order includes the Categorization Form to be used and sets a December 22, 2018, deadline for Plaintiffs to categorize.
- **November 21, 2018:**  After the parties moved to amend the order adopted as Dkt. 9600, the Court enters Parties' Order Regarding Case Categorization and Census that again includes the Categorization Form and reiterates the December 22, 2018 deadline to categorize.  *See* Dkt. 9638.
- **January 8, 2019:**  During the *Brand* trial, Cook's counsel provides an update to the Court regarding categorization.  Court directs that Plaintiffs will have until January 15, 2019 to complete categorization.  *See* Dkt. 9875 (entry memorializing hearing).
- **January 14, 2019:**  The Court enters its Order Regarding Plaintiffs' Failure to Produce Case Categorization Forms (Dkt. 9907), extending the deadline to categorize to January 31, 2019, and providing that failure to categorize would lead to dismissal.
- **January 17, 2019:**  The Court amends a technical issue regarding the Order Regarding Plaintiffs' Failure to Produce Case Categorization Forms (Dkt. 9907), again confirming January 31, 2019 as the categorization deadline and re-iterating that failure to categorize would lead to dismissal.  *See* Dkt. 9956.
- **February 5, 2019:**  Cook files its Motion to Dismiss cases that were noncompliant with the Court's Categorization Order (Dkt. 10063).  The Motion to Dismiss included Plaintiffs on Exhibit A (10063-1).
- **February 18, 2019:**  Cook files its Amended Motion to Dismiss (Dkt. 10182). The Amended Motion to Dismiss includes Plaintiffs on Exhibit A (10182-1 at 1).
- **February 21, 2019:**  Cook files its Second Amended Motion to Dismiss (Dkt. 10211). The Second Amended Motion to Dismiss again includes Plaintiffs on Exhibit A (10211-1).
- **March 14, 2019:**  Cook files a reply in support of the Motion to Dismiss (Dkt. 10307).
- **April 4, 2019:**  Cook's counsel sends a letter to Plaintiffs' leadership asking for entry of dismissal in the remaining noncompliant Exhibit A and Exhibit B cases.  Updated Exhibit A and B lists are provided with the letter (*see* Dkt. 10857-2 (copy of letter).  Plaintiffs' leadership's repeatedly represented to the Court that these lists were shared with counsel in individual cases.

There is no legitimate excuse for Plaintiffs' attorney's clear failure to comply with the Categorization and Screening Order given the 10 times notice was provided of the categorization requirement and the risk of dismissal.  Any minimal diligence over the 7-month period between the Court initially ordering categorization on October 2, 2018 until its entry of dismissal in the noncompliant cases on May 8, 2019, would have appraised Plaintiffs' counsel of the requirement to categorize.  Under these facts, Plaintiffs' neglect was undeniably unreasonable and cannot be excused under Rule 60(b).  As discussed above, Rule 60(b) relief is an extraordinary remedy and mere mistake on the part of counsel due to "carelessness" or "failure to exercise due care" is not sufficient to obtain such exceptional relief.  *See Dickerson*, 32 F.3d at 1116; *Lomas*, 884 F.2d at 967; *Dave Kohel Agency*, 149 F.R.D. at 173; *Knapp*, 322 F.R.D. at 320.

With respect to Plaintiffs' argument that the "Orders were blocked by an e-mail spam filter, the argument is suspicious and unpersuasive.  Plaintiffs acknowledge "[c]ounsel had been receiving some notices from the Court *prior to and after* this incident." *Id.* (emphasis added).  In their motions and the accompanying affidavit from the IT company, there is no explanation why the spam filter blocked only certain ECF notices from the Court nor is there explanation of which ECF notices Plaintiffs' counsel did not receive or the time period during which the spam filter was malfunctioning in this regard.  As noted above, the situation here does not involve only one or two ECF entries, but ***nine*** separate instances where Plaintiffs were appraised of categorization through filings and entries on the master docket plus the letter that Cook sent to Plaintiffs' leadership that they have represented was shared with counsel in individual cases.

In any event, several courts have held that missing docket notices due to use of a spam filter is not excusable neglect because counsel has a duty to put protocols in place that prevent the kind of issues that allegedly occurred here, including periodic independent monitoring of the

- 9 -

docket. *See Onwucheckwe v. Okeke*, 404 F. App'x 911, 912 (5th Cir. 2010) ("Even if the district court credited the claim that email setting deflected the notice away from counsel's inbox, it was not an abuse of discretion to conclude that sending court communications to the spam folder is inexcusable neglect."); *Crocker v. Child Dev. Sch., Inc.*, 2011 WL 4501560, at *5 (M.D. Ala Sept. 29, 2011) ("Mr. Wiley's evidence on the cause for the delay is the digital age equivalent of 'the dog ate my homework'….[the] evidence demonstrates that these [email] difficulties were entirely self-created….An inability to manage an office e-mail system to properly receive notices of filing does not qualify as excusable neglect."); *Emerald Coast Util. Auth. v. Bear Marcus Pointe, LLC*, 227 So.2d 752, 757 (Fl. Ct. App. 2017) (holding that "[c]ounsel has a duty to have sufficient procedures and protocols in place to ensure timely notice of appealable orders.  This includes use of an email spam filter *with adequate safeguards* and *independent monitoring of the court's electronic docket.*") (emphasis added).  A modicum of docket monitoring during the preceding seven-month period would have appraised Plaintiffs' counsel of the Court's requirements regarding categorization.

In sum, Plaintiffs have failed to provide a reasonable or excusable explanation for their failure to categorize – the initial December 22, 2018 deadline was effectively extended four months through end of April, and notice regarding the requirement to categorize was provided through multiple means over a seven-month period.  Rule 60(b) relief is an "extraordinary remedy [reserved for] exceptional circumstances," *Dickerson*, 32 F.3d at 1116, and as the *Lomas* and *Dave Kohel Agency* cases make clear, mere mistake on the part of counsel due to "carelessness" or "failure to exercise due care" is not sufficient to obtain such an exceptional remedy.  Simply put, errors of counsel (such as the error here regarding the spam filter) are

imputed to the party by operation of agency law and are not to be borne by the opposing party – i.e., the Cook Defendants.  *See Moje*, 792 F.3d at 758; *7108 W. Grand Av.*, 15 F.3d at 634.

Plaintiffs thus have failed to establish that their cases qualify for relief under Rule 60(b), and the Court should deny their motions to vacate the dismissal. *See Dickerson*, 32 F.3d at 1116; *Lomas*, 884 F.2d at 967; *Dave Kohel Agency*, 149 F.R.D. at 173; *Knapp*, 322 F.R.D. at 320.

### III. Vacating the Dismissal of Plaintiff Halley's and Plaintiff Trepus's Cases Would Be Futile Because Their Claims Fail for Other Reasons

Finally, the Court should not vacate the dismissal of Plaintiff Halley and Plaintiff Trepus's cases in the independent grounds that vacating those dismissals would be futile because those cases fail to state a claim as a matter of law.

#### A. Plaintiff Halley's Case Would Have Been Dismissed As Category 1 And Any Claims She Had Are Long Time-Barred By Applicable Oklahoma Law

Plaintiff Halley included with her Motion a Case Categorization Form selecting Category 1, Dkt. 10644-2.  As the Court is aware, all the Category 1 cases were "subject to immediate dismissal" under the initial Categorization Order (Dkt. 9322) and were dismissed with prejudice on May 1, 2019. *See* Order Dismissing Category 1 Cases, Dkt. 10588.  In other words, if Plaintiff Halley had timely categorized her case, Cook would have included her in the list of cases that were dismissed as Category 1 and her case would have been dismissed with prejudice, albeit pursuant to a different order that was entered a week earlier.

Moreover, vacation of the dismissal of Plaintiff Halley's case would also be futile because any claims that Plaintiff Halley had would be time-barred by over five years.  All the medical records that Plaintiff Halley provided with her proposed categorization are dated January 21 and 22, 2010.  *See* Dkt. 10644-2.  In particular, the records show that on January 22, 2010, Plaintiff Halley underwent a "[v]ery difficult but successful filter removal," and that '[t]he

filter appea[ed] to be tilted." *Id.* at 7.  Per her short-form complaint filed on March 30, 2017, Plaintiff Halley indicates that she received her filter in Oklahoma, that her alleged injuries occurred in Oklahoma, and that she currently continues to reside in Oklahoma.  *Halley* Dkt. 1, ¶¶ 4-6.  Oklahoma has a two-year statute of limitations for personal injury claims.  Okla. Stat. Ann. Tit. 12, § 95; *see also e.g., Liddell v. Bd. of Com'rs of Cnty. of Cleveland*, 46 P.3d 715, 718 (Okla. 2002) (explaining that under the statute, "personal injury actions in [Oklahoma] must be brought within two (2) years after the cause of action accrues"—that is, "two years after [the plaintiff] knew, or should have known" of his claimed injuries.").

Thus, the Category 1 claims that Plaintiff Halley was pursuing would presumably be governed by Oklahoma substantive law and would have been long time-barred because of the seven-year gap between the events noted in the medical records—the basis of Plaintiff Halley's claims—and the filing of the complaint.  Put differently, to the extent Plaintiff Halley had viable claims attributable to the "[v]ery difficult retrieval" she underwent, the claims would have expired in 2012 pursuant to Oklahoma's 2-year statute of limitations, a full five years before she filed her complaint.

> **B.   The Supporting Medical Records That Plaintiff Trepus Provided Establish That the Filter Was Removed Without Retained Fragments; Therefore, Plaintiff Trepus Has No Viable Claim and Vacation of His Dismissal Would Be Futile**

Plaintiff Trepus seeks to categorize as Category 4 on the basis of an alleged "IVC filter strut remain[ing] embedded in body," Dkt. 10645-2, but the medical record provided with the Categorization Form not only fails to support but contradicts that allegation.  The record states that there was "[n]o suspicious retained radiopaque foreign body in the duodenum" and that the "IVC filter has been removed."  Dkt. 10645-2 at 8.  In other words, the only medical records Plaintiff Trepus provided with the Categorization Form in support of the Category 4 claim

disprove the existence of a Category 4 claim. Based on the information provided, which indicates that his filter was removed intact without retained fragments, Plaintiff Trepus, at best, would have been another Category 1 case that would have been dismissed as part of the Order Dismissing Category 1 Cases, Dkt. 10588.

Accordingly, it would be futile to permit Plaintiff Halley and Plaintiff Trepus to re-file their dismissed cases.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motions to vacate the dismissal of their cases. Plaintiffs are not entitled to the extraordinary relief requested. Moreover, granting the relief would be futile in the cases of Plaintiffs Halley and Trepus because their claims fail for other reasons.

Respectfully submitted,

Dated: May 30, 2019

*/s/ Andrea Roberts Pierson*
Andrea Roberts Pierson (# 18435-49)
Jessica Benson Cox (# 26259-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:   (317) 237-1000
Email:  andrea.pierson@faegrebd.com
Email:  jessica.cox@faegrebd.com

Bruce Jones (MN # 179553)
Charles Webber (MN # 215247)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota  55402
Telephone:  (612) 766-8719
Facsimile:   (612) 766-1600
Email:  bruce.jones@faegrebd.com
Email:  chuck.webber@faegrebd.com

*Counsel for the Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2019, a copy of the foregoing DEFENDANTS' OMNIBUS OPPOSITION TO MOTION TO RECONSIDER DISMISSALS OF THEIR CASES FILED BY FOUR PLAINTIFFS REPRESENTED BY BRUERA LAW FIRM was filed electronically and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.  Lead Co-Counsel for Defendants will serve any non-CM/ECF registered parties.


/s/ Andrea Roberts Pierson

US.123296061