UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND          Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION               MDL No. 2570

_____

This Document Relates Only to the Following Cases:

Daris Cremeans, 1:17-cv-00455
Barbie L. Kratochvil, 1:17-cv-00457
Sheila Stafford, 1:17-cv-00458
Saleea Shockley, 1:17-cv-2611

_____

**DEFENDANTS' OMNIBUS OPPOSITION TO
MOTIONS TO RECONSIDER DISMISSALS OF THEIR CASES
FILED BY FOUR PLAINTIFFS REPRESENTED BY SILL LAW FIRM**

The Court should deny the four motions to reconsider filed by Sill Law Firm on behalf of

Plaintiffs Cremeans, Kratochvil, Stafford, and Shockley.  (Dkts. 10723-26).[1]  On May 8, 2019,

pursuant to the Court's Categorization and Screening Order, the Court dismissed Plaintiffs' cases

along with dozens of other cases because they either did not comply with the Categorization and

Screening Order at all (the "Exhibit A" cases) or did not provide any medical records in support

of their categorizations (the "Exhibit B" cases).  *See* Order on the Cook Defendants' Second

Amended Motion to Dismiss (the "Order"), Dkt. 10622 (listing these four Plaintiffs in "Exhibit

A").  Plaintiffs now ask the Court (1) to reconsider the Court's Order on grounds that paralegals

in Plaintiffs' counsel's office "inadvertently neglected to review the recent filings in this IVC

_____

[1]     Because the four Plaintiffs filed nearly identical briefs citing the same authority and are represented by the same firm, the Cook Defendants are responding to all four motions through this single opposition.  When referring to all four Plaintiffs collectively, Cook uses the general term "Plaintiffs."  When referring to the Plaintiffs individually, Cook respectively uses the terms Plaintiff Cremeans, Kratochvil, Stafford, and Shockley.

litigation" and "had a misunderstanding regarding" their responsibilities to monitor the docket, causing the firm to miss critical deadlines regarding the categorization, *see* Dkts. 10723-26 at 3, and (2) permit them to belatedly categorize based on the categorization forms attached as exhibits to their motions.

Cook urges the Court to deny Plaintiffs' motions to reconsider the Order dismissing their cases for four reasons.  First, the Court did not give these Plaintiffs an additional 15 days to categorize as they claim; therefore, the categorization forms they submitted after their cases were dismissed are not timely.  Second, the Court's Order permits re-entry into the MDL only under limited circumstances not applicable here – the occurrence of a future injury.  Third, although Plaintiffs style their motions as "motion[s] to reconsider," given the present posture, the proper procedural vehicle for the relief Plaintiffs seek is Rule 60(b), which is an extraordinary remedy reserved for extraordinary circumstances absent here.  Under Rule 60(b), mere failure on the part of counsel to stay diligent and monitor a docket is not the kind of extraordinary situation that would justify relief from the Order.  Indeed, notice regarding categorization was provided to Plaintiffs on no fewer than 10 occasions over a seven-month period, rendering any failure to be aware of the categorization requirement facially unreasonable.

Finally, vacation of the dismissals would be futile because three of the four Plaintiffs have failed to comply with the Categorization and Screening Order's mandate to provide a "specific medical record" in support of their belated categorizations, instead each submitting a document dump of 60-plus pages.  Such tactics frustrate the very purpose of the categorization process by attempting to impermissibly shift responsibility from Plaintiffs to identify and support a specific claim(s), if any, to assigning burden to Cook to guess what Plaintiffs might be claiming and whether those claims have any merit.  Accordingly, this document-dumping practice is "not

- 2 -

permitted and shall be treated as a non-compliance with the Court's Order."  Dkt 9638-1, Case Categorization Form, Instruction No. 3. Thus, Plaintiffs Cremeans, Kratochvil, and Stafford remain noncompliant and it would be futile to permit them to re-file their cases, because they likely would have been dismissed as noncompliant on other grounds.

Moreover, even were the Court to look past the document-dumping issue, all three of these Plaintiffs' claims fail as a matter of law for other reasons.  Plaintiff Kratochvil claims Category 4 but there is no indication in the records she provided that a physician has stated that the filter cannot or should not be removed.  On the contrary, the records indicate Plaintiff Kratochvil is noncompliant with anticoagulation medication, which is a strong indication that her medical providers continue to believe that her filter should be retained long term.  Further, Plaintiff Stafford's and Plaintiff Cremeans's claims are time-barred by applicable statutes of limitations from their home states.

**I.     The Court Did Not Give These Plaintiffs A 15-Day Extension; Therefore, Their Submission of Categorization Forms After Dismissal Is Not Timely Or A Cure For The Noncompliance That Led To Their Dismissals**

Plaintiffs first argue that this Court on May 7, 2019 "revised its order providing plaintiffs an additional 15 days, or no later than May 22, 2019, to submit" categorization forms and supporting records and they have "complied with the Court's order on May 16, 2019 by submitting [categorization forms] and previously provided medical records as directed by the Court."  Dkts. 10723-26 at 2.

Plaintiffs are mistaken because the Court did not give them another extension.  On May 7, 2019, the Court issued its Revised Second Amended Order Regarding Case Categorizations to "streamline the case categorization procedure."  Dkt. 10617 at 2.  Because there was some confusion earlier as to whether plaintiffs that had filed their cases after November 14, 2018 would

- 3 -

be required to categorize, the Court confirmed that they would have to categorize and ordered plaintiffs in such *later-filed cases* to categorize "15 within days." *Id.* In the same Order, the Court stated that the "[t]he cases listed in Exhibit A [i.e. including these 4 Plaintiffs' cases] and B shall be dismissed by separate order" – i.e. Order Dkt. No. 10622. If the Court had intended to give these Plaintiffs, who had filed their cases before November 2018, another extension, then the Court would have said so in the May 7, 2019 order. Instead, the Court dismissed all the Exhibit A and Exhibit B cases, including these four Plaintiffs' cases.

## II.     Plaintiffs Are Not Entitled to Reentry in the MDL Based on The Terms of The Order

Plaintiffs are also barred from re-entry into the MDL based on the terms of the Order itself. Specifically, the Court's Order states:

> **No plaintiff** listed in Exhibit A or Exhibit B, however, **may refile his or her if the future claim is based solely on one of the injuries, complications, or outcomes identified by the plaintiff in his or her individual case in this court**. To the extent that an allegedly cognizable injury occurs in the future, the case may be refiled in MDL 2570 under this Order on the basis of the future injury.

Order, Dkt. 10622 at 2 (emphasis added). Thus, the order permits cases dismissed under the Order to re-file in some limited circumstances – development of a future injury – but otherwise does not permit reentry into the MDL.

Here, all the Plaintiffs concede that the Categorization Forms attached as exhibits to their motions are based on information that was already known, and are not new injury claims. *See* Dkts. 10723-26 at 1 (alleging that "the information sought within the categorization form was previously provided" through PFS/PPS and medical records). Accordingly, the Order precludes Plaintiffs from re-litigating these claims.

US.123350934

III.    **Plaintiffs Are Not Entitled to the Extraordinary Relief Provided By Rule 60(b)**

A.    **The Proper Procedural Vehicle to Address Plaintiffs' Motions is Rule 60(b)**

Although Plaintiffs request relief under both Rule 60(b) and Rule 59(e), the proper procedural vehicle to address their request is Rule 60(b), which governs requests to vacate an order. "Rule 60(b) provides for extraordinary relief and may be invoked only upon a showing of exceptional circumstances." *Flett v. W. A. Alexander & Co.*, 302 F.2d 321, 323 (7th Cir. 1962) (collecting cases from Second, Third, and Seventh Circuits); *Dickerson v. Bd. of Educ. of Ford Heights, Ill.*, 32 F.3d 1114, 1116 (7th Cir. 1994) ("[I]t is well-established that Rule 60(b) relief is an extraordinary remedy and is granted only in exceptional circumstances.") (internal citations omitted). Because Rule 60(b) is an extraordinary remedy, "[n]either ignorance nor carelessness on the part of the litigant or his attorney provide grounds for relief under Rule 60(b)(1)." *Lomas & Nettleton Co. v. Wisely*, 884 F.2d 965, 967 (7th Cir. 1989). Accordingly, "some justification for the error beyond failure to exercise due care must be shown." *Dave Kohel Agency, Inc. v. Redshaw, Inc.*, 149 F.R.D. 171, 173 (E.D. Wisc. 1993) (citing *Lomas*, 884 F.2d at 967 and *W. Transp. Co. v. E.I. DuPont de Neumors & Co.*, 682 F.2d 1233, 1236 (7th Cir. 1982). Additionally, "a lawyer's errors are imputed to the client for the purpose of [the analysis]." *Moje v. Fed. Hockey League, LLC*, 792 F.3d 756,758 (7th Cir. 2015). Indeed, even in situations where a lawyer's actions may be negligent or worse, the errors are imputed to the party (under principles of agency law) rather than burdening the opposing party in litigation. *See United States v. 7108 W. Grand Av., Chicago, Ill.*, 15 F.3d 632, 634 (7th Cir. 1994). Nor can a party avoid this result by attributing the fault to some lower level actor in the lawyer's office, such as the two paralegals mentioned in Plaintiffs' motions. *See, e.g., Lombardo v. United States,* 860 F.3d 547, 552 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 1032 (2018).

US.123350934

Plaintiffs specify in their motions that they are being brought under Rule 60(b)(1) due to alleged inadvertent and excusable neglect on the part of their counsel's office to comply with the Court's Categorization Orders.  *See* 10723-26 at 4.  "The determination of whether a party's neglect is excusable is 'at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'"  *Knapp v. Evgeros, Inc.*, 322 F.R.D. 312, 315 (N.D. Ill. 2017) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 395 (1993)); *see also Raymond v. Ameritech Corp.*, 442 F.3d 600, 606 (7th Cir. 2006) ("We have held that *Pioneer* applies whenever 'excusable neglect' appears in the federal procedural rules.").  When analyzing Rule 60(b) claims premised on excusable neglect, "the most important consideration is 'the reason for the delay'" and if the moving party cannot "demonstrate 'genuine ambiguity or confusion about the scope or application of the rules or some other good reason for missing the deadline,' [the party] cannot establish excusable neglect, regardless of how short the delay was or how little it prejudiced the opposing party."  *Knapp*, 322 F.R.D. at 320 (quoting *Satkar Hospitality v. Fox Television Holdings,* 767 F.3d 701, 707 (7th Cir. 2014)).[2]

---

[2]     Plaintiffs cite Rule 59(e) as a claimed alternate source of relief, but Rule 59(e) does not apply here.  Rule 59(e) "allows a court to amend a judgment only if the petitioner can demonstrate a manifest error of law or present newly discovered evidence."  *Egonwan v. Cook Cnty. Sherriff's Dep't*, 602 F.2d 845, 852 (7th Cir. 2010).  "Motions under Rule 59(e) cannot be used to introduce evidence that could have been presented earlier."  *Id.*  Nor can Rule 59(e) be used as "a vehicle for a party to undo its own procedural failures."  *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996).

Here, Plaintiffs' request for relief is not premised on any new case law or newly discovered evidence, but on their claim that their attorney was not aware of the requirement to categorize and thus failed to do so in the time available.  *See* Dkt. 10674 at 2.  Such concerns are the purview of Rule 60(b), not 59(e).  *See e.g., Moro*, 91 F.3d 872, 876 ("holding that Rule 59(e) is not "a vehicle for a party to undo its procedural failures.").  In any event, Cook notes that Rule 59(e) is also a high bar that Plaintiff cannot meet.  *See e.g., Caisse Nationale de Credit Agricole v CBI Indus.,* 90 F.3d 1264, 1270 (7th Cir. 1996) ("A party moving for reconsideration pursuant to Rule 59(e) bears a heavy burden of establishing that the court should reverse its prior judgment.").

- 6 -

**B.**     **Plaintiffs' Complete Failure To Monitor The Docket Is Not Reasonable And Does Not Justify Extraordinary Relief Under Rule 60(b)**

Plaintiffs argue that their counsel was unaware of the requirement to categorize due to allegedly inadvertent and excusable neglect that caused counsel to miss the categorization deadlines.  Specifically, Plaintiffs argue that the paralegal in their counsel's office "who was overseeing and monitoring the IVC filings, created an email Rule for MDL ECF notifications that caused all notifications to be automatically sent to a subfolder where they could be reviewed all together on a periodic basis" and that in December 2018 when these "responsibilities [were transferred to a newly hired paralegal]" this second paralegal misunderstood her duties and "inadvertently neglected to review the recent filings in this IVC litigation," causing the firm to "miss[] the initial December 22, 2018" categorization deadline.  Dkts. 10723-26 at 2-3 (Plaintiffs' motions also attach affidavits from the two paralegals as exhibits).  Plaintiffs also argue that their counsel never "receive[] a call from Plaintiff's Steering Committee informing them of the Motion to Dismiss."  *Id.* at 2.

Plaintiffs fail to establish any "good reason for missing the deadline." An MDL Plaintiff's attorney has a duty to monitor both the individual case docket and the master MDL docket, and a failure to monitor both dockets is facially unreasonable.  On the home page of the Cook Filter MDL, this Court has provided substantial background information to parties and their counsel regarding MDL 2570.  In particular, the site includes a copy of the General Order Regarding Notice Procedure (Dkt. 2771), which explains that because of the size of the MDL, the Court had to discontinue for technical reasons the practice of "spreading" filings and orders to all individual cases.  *Id.*  The Order expressly notes that the Clerk's Office has been adding any "attorney who filed a Notice of Appearance in a member case at the time when the new complaint is filed to the service list of the master case" and that counsel in the individual cases receives service of filings

- 7 -

on the master docket without having to enter an appearance. *Id.* at 2. The Court's homepage for the MDL also includes a copy of the Amended Order Establishing Policies and Procedures, Dkt. 3309, which governs service of documents in the MDL.  The Order provides in pertinent part that "[a]ll counsel of record shall register for electronic filing, as required by Local Rule 5-3" and that "[r]egistered counsel of record will be served electronically with all orders issued by the Court and all filings made by the parties."

These Orders gave Plaintiffs' attorneys clear notice of the filing and service procedures in the MDL and of what dockets attorneys and their support staff should track for relevant filings. Moreover, the Cook Defendants repeatedly communicated with the Plaintiffs Steering Committee and Court between January and April 2019 and made clear that non-compliant cases would be dismissed. *See, e.g.*, April 4, 2019 Letter from S. Bennett to J. Williams (Dkt. 10857-2). Presumably the PSC shared that information with the larger group of plaintiffs' counsel in this MDL.[3]  Plaintiffs do not dispute that Cook properly served Plaintiff by filing electronically in the master docket or that ECF notices were sent to all counsel that registered for electronic service as required by the Court.  Simply put, Plaintiffs have no reasonable explanation for failing to be aware of the categorization process and consequences for noncompliance under the Court's Categorization and Screening Order.

Moreover, Plaintiffs' counsel has experience in other MDLs and, respectfully, knew their obligation to keep abreast of developments on the master docket of an MDL and to request updates

---

[3]     Although Plaintiffs argue that the PSC did not ***call*** their counsel, the motions tellingly do not mention if the PSC communicated with their counsel by ***other*** means, such as e-mail.  Cook's understanding based on the PSC's representations is that that they shared the list of cases subject to dismissal with counsel in individual cases by email.  Indeed, one of the other plaintiffs seeking to vacate the same Order attached as an exhibit an affidavit from Plaintiff's Co-Lead Counsel which explains that the Plaintiffs' Leadership communicated with Plaintiffs' counsel by email. *See* 10885-1, ¶¶ 3-5.

US.123350934

and clarifications from Plaintiffs' leadership as needed.  *See Pioneer*, 507 U.S. at 395 (holding that courts may take into "account of all relevant circumstances surrounding the party's omission"); *Raymond*, 442 F.3d at 606 (adopting *Pioneer* approach to Rule 60(b)(1) issues).  Specifically, Plaintiffs' counsel advertises on their web site under a heading titled "Cases We Handle" that the firm represents plaintiffs regarding five different medical devices and 11 different pharmaceutical products, nearly all of which appear to be subject of MDLs.[4]  As counsel is actively evaluating cases for filing in over a dozen MDLs, there can be no excuse for their failure to ignore this litigation for over seven months.

Finally, even assuming for the sake of argument that an experienced MDL attorney could justify a court's indulgence for missing an obscure or isolated deadline or docket entry, no even marginally diligent counsel could possibly have been unaware of the categorization requirement in the Cook Filter MDL.  As the Court knows, the categorization process was the culmination of months of work and was addressed across multiple meet-and-confer sessions with Plaintiffs' leadership and multiple docket entries.  In fact, individual MDL Plaintiffs and their attorneys were appraised of categorization on **no fewer than 10 separate occasions**:

- **October 2, 2018**:  Court enters its Order on [Cook's] Motion for Screening Order and Bellwether Selection Plan (Dkt. 9322).  In the Order, the Court defines the categories and orders categorization for all cases, with deadlines and format to be determined at the next conference.
- **November 12, 2018**:  The Court enters the parties' proposed order regarding categorization and the census (Dkt. 9600).  The order includes the Categorization Form to be used and sets a December 22, 2018, deadline for Plaintiffs to categorize.
- **November 21, 2018:**  After the parties moved to amend the order adopted as Dkt. 9600, the Court enters Parties' Order Regarding Case Categorization and Census that again includes the Categorization Form and reiterates the December 22, 2018 deadline to categorize.  *See* Dkt. 9638.

---

[4]     *See* Sill Law Firm, "Cases We Handle" tab, available online at http://www.fulmersill.com/defective-medical-devices (last accessed June 1, 2019).  Counsel's personal bio also indicates experience in leadership committees of two MDLs.

US.123350934

- **January 8, 2019:**  During the *Brand* trial, Cook's counsel provides an update to the Court regarding categorization.  Court directs that Plaintiffs will have until January 15, 2019 to complete categorization.  *See* Dkt. 9875 (entry memorializing hearing).
- **January 14, 2019:**  The Court enters its Order Regarding Plaintiffs' Failure to Produce Case Categorization Forms (Dkt. 9907), extending the deadline to categorize to January 31, 2019, and providing that failure to categorize would lead to dismissal.
- **January 17, 2019:**  The Court amends a technical issue regarding the Order Regarding Plaintiffs' Failure to Produce Case Categorization Forms (Dkt. 9907), again confirming January 31, 2019 as the categorization deadline and re-iterating that failure to categorize would lead to dismissal.  *See* Dkt. 9956.
- **February 5, 2019:**  Cook files its Motion to Dismiss cases that were noncompliant with the Court's Categorization Order (Dkt. 10063).  The Motion to Dismiss included Plaintiffs on Exhibit A (10063-1).
- **February 18, 2019:**  Cook files its Amended Motion to Dismiss (Dkt. 10182). The Amended Motion to Dismiss includes Plaintiffs on Exhibit A (10182-1 at 1).
- **February 21, 2019:**  Cook files its Second Amended Motion to Dismiss (Dkt. 10211). The Second Amended Motion to Dismiss again includes Plaintiffs on Exhibit A (10211-1).
- **March 14, 2019:**  Cook files a reply in support of the Motion to Dismiss (Dkt. 10307).
- **April 4, 2019:**  Cook's counsel sends a letter to Plaintiffs' leadership asking for entry of dismissal in the remaining noncompliant Exhibit A and Exhibit B cases.  Updated Exhibit A and B lists are provided with the letter (*see* Dkt. 10857-2 (copy of letter). Plaintiffs' leadership's repeatedly represented to the Court that these lists were shared with counsel in individual cases.

There is no legitimate excuse for Plaintiffs' attorney's clear failure to comply with the Categorization and Screening Order given the 10 times notice was provided of the categorization requirement and the risk of dismissal.  Any minimal diligence over the 7-month period between the Court initially ordering categorization on October 2, 2018 until its entry of dismissal in the noncompliant cases on May 8, 2019, would have appraised Plaintiffs' counsel of the requirement to categorize.  Under these facts, Plaintiffs' neglect was undeniably unreasonable and cannot be excused under Rule 60(b).  As discussed above, Rule 60(b) relief is an extraordinary remedy and mere mistake on the part of counsel due to "carelessness" or "failure to exercise due care" is not sufficient to obtain such exceptional relief.  *See Dickerson*, 32 F.3d at 1116; *Lomas*, 884 F.2d at 967; *Dave Kohel Agency*, 149 F.R.D. at 173; *Knapp*, 322 F.R.D. at 320.  That Plaintiffs primarily lay blame for these failures on two paralegals in counsel's office is of no consequence because

US.123350934

counsel has a responsibility to train, manage, supervise, and properly instruct their staff and thus failure of staff are borne by counsel and the firm. *See e.g.,* ABA, Model Rules of Prof. Resp. § 5.3; *Matter of Galbasani*, 786 P.2d 971, 975 (Az. 1990) (en banc) (analyzing Arizona's adopted version of Model Rule 5.3 and holding "it does mandate an independent duty of supervision."); *Lombardo*, 860 F.3d at 554 (denying 60(b) relief in case where counsel had relied on '"a trusted paralegal' instead of researching and calculating the deadline himself.")

In sum, Plaintiffs have failed to provide a reasonable or excusable explanation for their failure to categorize – the initial December 22, 2018 deadline was effectively extended four months through end of April, and notice regarding the requirement to categorize was provided through multiple means over a seven-month period. Rule 60(b) relief is an "extraordinary remedy [reserved for] exceptional circumstances," *Dickerson*, 32 F.3d at 1116, and as the *Lomas* and *Dave Kohel Agency* cases make clear, mere mistake on the part of counsel due to "carelessness" or "failure to exercise due care" is not sufficient to obtain such an exceptional remedy. Simply put, errors of counsel are imputed to the party by operation of agency law and are not to be borne by the opposing party – i.e., the Cook Defendants. *See Moje*, 792 F.3d at 758; *7108 W. Grand Av.*, 15 F.3d at 634.

Plaintiffs thus have failed to establish that their cases qualify for relief under Rule 60(b), and the Court should deny their motions to vacate the dismissals. *See Dickerson*, 32 F.3d at 1116; *Lomas*, 884 F.2d at 967; *Dave Kohel Agency*, 149 F.R.D. at 173; *Knapp*, 322 F.R.D. at 320.

## IV. Vacating the Dismissals Would Be Futile Because Three Plaintiffs' Claims Fail for Other Reasons

Finally, the Court should not vacate the dismissals because three of the four Plaintiffs submitted in excess of 50 pages of medical records apiece. Per the express instructions outlined on the Case Categorization Form, such document-dumping practices are "not permitted and shall

US.123350934

be treated as a non-compliance with the Court's Order," making any effort to re-open Plaintiffs' cases futile because they would have been dismissed as noncompliant on other grounds.   In addition, Plaintiff Kratochvil's Category 4 claim is wholly unsupported by the records she provided and Plaintiff Stafford's and Plaintiff Cremeans's claims are time-barred by multiple years under the applicable statutes of limitations of their home states.

**A.    Three of the Four Plaintiffs Submitted Document Dumps That Are Not Permitted And Treated As Noncompliance By The Court's Categorization Orders**

In pertinent part, the Case Categorization Form provides that "each category selected <u>must</u> be supported by attaching <u>specific medical record(s)</u> confirming the injury/complication/category selected, with the relevant line or portion highlighted.  Submission of an entire medical file, or references to previously produced records are also not permitted and shall be treated as a non-compliance with the Court's Order."  Dkt. 9638-1, Case Categorization Form, Instruction No. 3 (emphasis in original).

Plaintiffs Cremeans, Kratochvil, and Stafford failed to follow this key instruction and therefore remain noncompliant.  Specifically, these Plaintiffs have impermissibly 1) provided "references to previously produced records," *see* Dkts. 10723-26 at 1 (Plaintiffs stating in their motions that they are producing "medical records for a second time that were previously submitted with [the PPF/PPS])," and (2) submitted what appear to be the "entire medical file[s]" in their possession, instead of specific, highlighted records:

- Plaintiff Cremeans submitted 74 pages of medical records.  A reference to a "stroke" was circled on one of the pages.

- Plaintiff Kratochvil submitted 67 pages of medical records.  No portion of this large batch of records was circled or highlighted.

- Plaintiff Stafford submitted 162 pages of medical records.  Again, no portion of this batch of record was circled or highlighted.

- 12 -

As stated in the Case Categorization Form that the Court approved and required counsel in each case to certify that the "specific medical record(s) attached, and submission of this form…that the outcome, complication, or injury represented in Section D is the proper categorization for [each] Plaintiff's case."  Dkt. 9638-1, ¶ E.

In other words, a central tenet of categorization was certification by Plaintiffs' counsel of claimed injuries and complications in a manner readily verifiable by Cook's counsel.  The categorization process did not contemplate general collection and production of medical records, which Plaintiffs are separately obligated to provide through the PPS process under CMO-4, as amended.  Document dumping is treated as noncompliance because such tactics frustrate the very purpose of the categorization process by impermissibly shifting responsibility from Plaintiffs to identify and support specific claim(s), if any, attempting to shift that burden on Cook to guess what Plaintiffs might be claiming and whether those claims have any merit.   Because the manner of these Plaintiffs' post-dismissal belated categorizations does not change that these Plaintiffs would still leave them noncompliant, it would be futile to permit them to re-file their cases.  *See* Dkt. 10622 (dismissing noncompliant "Exhibit B" cases due to failure to provide records in addition to the "Exhibit A" cases such as the four Plaintiffs here that were dismissed for failing to categorize).

### B.  Plaintiff Kratochvil's Category 4 Claim Is Not Supported By The Records Provided

Even were the Court to set aside the failure to timely categorize and the procedural failure to provide specific, highlighted records, permitting Plaintiff Kratochvil to re-file would still be futile because the records she provided do not support the chosen categorization.  Specifically, Plaintiff Kratochvil submitted a Case Categorization Form selecting Category 4 and describing the claim as:  "High Risk retrieval due to possible perforation, bleeding, nephrotoxicity and contrast allergy."  *See* Kratochvil Categorization Form, attached as **Exhibit A**.  Cook has reviewed the

- 13 -

67 pages of records that Plaintiff Kratochvil submitted and they do not support this claim. On the contrary, there is no record demonstrating the allegation counsel made in the form. The records provided only demonstrate that as of July 9, 2015, Plaintiff Kratochvil still had an IVC filter in place that was put in 2012, but the records provided do not indicate that there was any attempt to remove the filter or statement *from a physician* that it cannot be removed. Instead, one of the record submitted just indicated Plaintiff herself said she does not want the filter removed when her physician discussed removal in 2012 based on her relatively young age, but there is no accompanying medical determination that it cannot be removed. *See* Kratochvil Medical Record Excerpts, attached as **Exhibit B**. Moreover, the records further indicate Plaintiff Kratochvil has been noncompliant with anticoagulation medication, which is a strong indication that her medical providers continue to believe that her filter should be retained long term and further disproves her Category 4 claim.

As such, Plaintiff Kratochvil has failed to support her Category 4 claim rendering futile any attempt to vacate the dismissal of her case.

### C. Plaintiff Stafford's Case Is Long Time-Barred By Applicable Oklahoma Law

Vacation of the dismissal of Plaintiff Stafford's case would also be futile because any claims that Plaintiff Stafford had regarding the failed retrieval attempt became time-barred almost six years before filing under Oklahoma law.[5]

Oklahoma has a two-year statute of limitations for personal injury claims. Okla. Stat. Ann. Tit. 12, § 95; *see also e.g., Liddell v. Bd. of Com'rs of Cnty. of Cleveland*, 46 P.3d 715, 718 (Okla.

---

[5]   Per her short-form complaint filed on February 13, 2017, Plaintiff Stafford indicates that she received her filter in Oklahoma, that her alleged injuries occurred in Oklahoma, and that she currently continues to reside in Oklahoma. *Stafford* Dkt. 1, ¶¶ 4-6. As Plaintiff Stafford has no connection to other states, Oklahoma substantive law applies.

US.123350934

2002) (explaining that under the statute, "personal injury actions in [Oklahoma] must be brought within two (2) years after the cause of action accrues"—that is, "two years after [the plaintiff] knew, or should have known" of his claimed injuries.").  Moreover, "[a]s a general rule, mere ignorance of the existence of a cause of action or the facts constituting a cause of action on the part of the plaintiff will not toll the running of limitations." *Williams v. Borden, Inc.*, 637 F.2d 731, 735 (10th Cir. 1980) (citing *Knudson v. Weeks*, 394 F. Supp. 963, 971 (W.D. Okla. 1975) and *Moore v. Delivery Serv., Inc.* 618 P.2d 408 (Okla. Ct. Civ. App. 1980).  In medical malpractice cases involving foreign objects being left in a patient's body, the statute of limitations begins to run when the "patient learns, or in the exercise of reasonable care and diligence should have learned, of the presence of the object." *Williams*, 647 F.2d at 734; *Seitz v. Jones*, 370 P.2d 300 (Okla. 1961).

Plaintiff Stafford's belated Case Categorization Form claims Category 5 and states "Attempted retrieval without success associated with subendothelial extension of the retrieval hook at the superior aspect of the inferior vena cava filter medially."  *See* Stafford Case Categorization Form, attached as **Exhibit C**.  The 168 pages of record that she submitted are all dated March 24, 2009 and earlier, and the record that Plaintiff's counsel appears to be referring to in the categorization form is among those dated March 24, 2009.  *See* Stafford March 24, 2009 Filter Removal Attempt Record, attached as **Exhibit D**.  Specifically, this record indicates that radiologist Dr. Geoffrey Day attempted to remove Plaintiff Stafford's filter at Bailey Medical Center, that the IVC filter is "noted in good position but with superior tip and retrieval hook not in communication with flowing contrast within the lumen" and concluded that the "attempted endovascular retrieval" was "[u]nsuccessful." *Id.*

- 15 -

Based on this record and on Plaintiff Stafford's own characterization of her claim, the claim is time-barred as a matter of law:

- The accrual date for Plaintiff Stafford's claim that her filter cannot be retrieved is necessarily March 24, 2009, the date her physician unsuccessfully attempted to remove the filter during a medical procedure

- Plaintiff Stafford did not file her action until February 13, 2017, almost eight years later, well beyond the two-year statute of limitations.

Plaintiff Stafford knew that her filter could not be removed – the substance of her claim – on the date of her failed filter retrieval attempt procedure, and the statute of limitations began to run on that date. Indeed, in a closely analogous situation involving foreign-object medical malpractice actions, courts applying Oklahoma law have consistently held that the claim begins to accrue when the patient learns that the objects has been left in his or her body. *Williams*, 647 F.2d at 734; *Seitz*, 370 P.2d 300. Here, the claim is not directed against the health care provider but against the manufacturer of the device regarding a failed retrieval attempt. The claim, however, must accrue at that same time: when the patient learns that the device will remain in her body. And, Plaintiff Stafford knew that as of March 24, 2009, when she underwent a procedure to remove it, but the retrieval procedure was unsuccessful.

Moreover, several courts have explained that in cases involving plaintiffs undergoing a surgical procedure to remove and/or replace a medical device, the accrual date cannot logically be any later than the date of the second surgery or procedure. *See e.g., Shepherd v. Danek Med, Inc.* 1999 WL 1129705, at *1 (S.D. Tex. Aug. 13, 1999) ("[A]ny arguable application of the 'discovery rule would terminate upon removal of the System."); *Porter v. Danek Med. Inc.*, 1999 WL 1117090, at *1 (S.D. Tex. Aug. 16, 1999) (same); *Neuhauser v. A. H. Robins Co.*, 573 F. Supp. 8, 9 (S.D. Ind. 1983) ("[T]he plaintiff's cause of action must be said to have accrued no later than

- 16 -

June 1978, when her last gynecological surgery was performed … the time to file suit expired in 1980, well before plaintiff's filing in October 1981.").

As the Court knows, Cook IVC filters are designed for permanent use, and filter irretrievability in and of itself is not a compensable injury.  But even assuming for the sake of argument that irretrievability alone *were* a compensable injury, as Plaintiff Stafford claims, that "injury" undeniably occurred and was within her actual and constructive knowledge on March 24, 2009, the date of the failed retrieval surgery, and her cause of action accrued on that date.  Put simply, Plaintiff knew or should have known that her filter could not be removed on the date she underwent an unsuccessful medical procedure to try and remove it.  Plaintiff's commencement of the action on February 13, 2017 is thus nearly six years beyond the statute of limitations for her personal injury claims.  *See Shepherd*, 1999 WL 1129705, at *1; *Porter*, 1999 WL 1117090, at *1; *Neuhauser v. A. H. Robins Co.*, 573 F. Supp. at 9.

### D.    Plaintiff Cremeans's Case Is Time-Barred By Over a Year Under Applicable Ohio Law

Finally, it would be futile to vacate dismissal of Plaintiff Cremeans's case because his claims are time-barred by the applicable 2-year statute of limitations under Ohio law, because his stroke – the only claimed injury in his belated categorization – occurred in October 2013 but he did not file his action until February 2017.[6]

Ohio has adopted a products liability statute called the Ohio Products Liability Act (the "OPLA").  In pertinent part, the OPLA provides that "it is intended to abrogate all common law

---

[6]      Per his short-form complaint filed on February 13, 2017, Plaintiff Cremeans indicates that he received his filter in Ohio, that his alleged injuries occurred in Ohio, and that he currently continues to reside in Ohio.  *Cremeans* Dkt. 1, ¶¶ 4-6.  As Plaintiff Cremeans has no connection to other states, Ohio substantive law applies whether the Indiana or Ohio choice-of-law rules are used.

product liability causes of action" and that "an action for bodily injury or injuring personal property shall be brought within two years after the cause of action accrues."  OPLA, Ohio Rev. Code §§ 2307.71(B), 2305.10(A); *see also e.g., Miles v. Raymond Corp.*, 612 F. Supp. 2d 913, 918 (N.D. Ohio 2009) ("In light of the Ohio General Assembly's unequivocal textual pronouncement that the OPLA, as amended, is 'intended to abrogate all common law product liability causes of action,' if the negligence claims asserted by Plaintiffs are…'product liability claims' they are preempted.") (dismissing common law claims pled in complaint on a motion for judgment on the pleadings). As all the claims asserted by Plaintiffs' Master Complaint, Dkt. 213, are directed toward alleged defects and deficiencies in the performance of Cook's IVC filters, all the claims Plaintiff Cremeans was pursuing through her short-form complaint before the Court dismissed her case fell under the ambit of the OPLA.

Regarding the two-year statute of limitations, the OPLA provides specifically in the context of medical devices in section 2305.10(B)(1) that:

> A cause of action for bodily injury … caused by exposure to … ethical medical devices accrues upon the date on which the plaintiff is informed by competent medical authority that the plaintiff has an injury that is related to the exposure, or upon the date on which by the exercise of reasonable diligence the plaintiff should have known that the plaintiff has an injury that is related to the exposure, whichever date occurs first.

"'Under Ohio law, there is no meaningful distinction between a claim 'arising' and 'accruing.' Indeed, those concepts are synonymous, as the Ohio Supreme Court unequivocally stated….[in *Browning*]." *In re E.I. Du Pont De Nemours and Co. C-8 Personal Injury Litig.*, 2015 WL 10936122, at *4 (S.D. Ohio Sept. 8, 2015) (quoting *Musgrave v. Berg, Inc.*, 2011 WL 5299489, *4 (S.D. Ohio Nov. 4, 2011) and *Browning v. Burt*, 613 N.E.2d 993, 1004 (Ohio 1993)).  Thus, Ohio courts apply the same analysis regarding trigger dates when the statute of limitations arises in different contexts.  Thus, arguments that "a cause of action 'arises' at one time (when an injury

is discovered, according to Plaintiffs) but 'accrues' at a later time (when a competent medical professional informs the plaintiff of the relation between his or her injury and a medical device), is incorrect as a matter of law." *Musgrave*, 2011 WL 5299489, at *4 (granting in part defendant's motion for reconsideration).

Thus, the statute of limitation is triggered when the plaintiff knew or in the exercise of reasonable injury should have known of the injury. *See e.g., Dunlap v. Medtronic, Inc.*, 47 F. Supp. 2d 888, 890 (N.D. Ohio 1999) (dismissing plaintiff's claims as both time-barred and preempted under federal law). Ohio recognizes the discovery rule, but its application and "purpose behind this rule" are limited to cases where "'the injury complained of may not manifest itself immediately, and therefore, it would be unfair to preclude a person from asserting a claim when discovery comes so far after the negligent act.'" *Id.* (quoting *Columbus Bd. of Ed. V. Armstrong World Indus., Inc.*, 627 N.E.2d 1033, 1037 (Ohio 1933)). Moreover, Ohio law "acknowledges the 'cognizable event' rule, which allows for the accrual of an action (1) when the injured party became aware, or should have become aware, of the extent and seriousness of his condition; (2) whether the injured party was aware, or should have been aware, that such condition was related to a specific medical service previously rendered him; and (3) whether such condition would put a reasonable person on notice of need for further inquiry as to the cause of such condition," which depends on the circumstances of each case. *Dunlap*, 47 F. Supp. 2d at 890 (citing *Hershberger v. Akron City Hosp.*, 516 N.E.2d (1987) and *Rose v Women's Health Clinic*, 630 N.E.2d 760 (1992)).

Based on Plaintiff Cremeans's own Case Categorization Form and the supporting medical records he submitted, his claim is time-barred as a matter of law:

- In his Case Categorization Form, Plaintiff Cremeans selected Category 7 and wrote in "stroke" as the claimed injury in subcategory 7(g) (DVT/other blood clots). The

US.123350934

supporting records indicate that Plaintiff Cremeans was hospitalized for this stroke on October 7, 2013.  *See* Cremeans Case Categorization Form attached as **Exhibit E** and Cremeans October 7, 2013 Medical Record Regarding Stroke attached as **Exhibit F**.

- The accrual date for Plaintiff Cremeans's claim that his IVC filter caused the stroke is therefore necessarily October 7, 2013, the date he was hospitalized and consulted with Dr. Borges regarding the stroke.

- Plaintiff Cremeans did not file his action until February 13, 2017, about three-and-a-half years later, well beyond the two-year statute of limitations.

Plaintiff Cremeans thus knew that he had suffered a stroke – the substance of his claim – on the date he was hospitalized for the stroke, and the statute of limitations began to run on that date.  A stroke occurs when blood flow to the brain is cutoff.  Because a stroke is a serious and potentially life-threatening medical event, it is not the kind of "injury complained of [that] may not manifest itself immediately" and thus the discovery rule does not apply to extend the accrual date beyond the date of the stroke.  *Dunlap v. Medtronic, Inc.*, 47 F. Supp. 2d at 890 (quoting *Columbus Bd. of Ed.*, 627 N.E.2d at 1037).

On the contrary, Plaintiff knew when the stroke occurred in 2013 that he had a filter in his body and he had suffered a stroke – a major injury due to lack of blood flow to the brain.  Thus, he was "aware, or should have become aware, of the extent and seriousness of his condition" in was on "notice of need for further inquiry as to the cause of such condition" and had two years to determine whether the filter in any respect was the cause of the blood flow issues that led to the stroke.  *Dunlap*, 47 F. Supp. 2d at 890.  Put differently, all the materials Plaintiff submitted indicate that his claim arose and is indeed entirely premised on the 2013 stroke.  His claim is therefore time-barred as a matter of law because Ohio courts reject arguments that "a cause of action 'arises' at one time … but 'accrues' at a later time ... [because such argument] is incorrect as a matter of law."  *Musgrave*, 2011 WL 5299489, at *4; *see also In re E.I. Du Pont De Nemours and Co. C-8 Personal Injury Litig.*, 2015 WL 10936122, at *4; *Browning v. Burt*, 613 N.E.2d at 1004.

- 20 -

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motions to vacate the dismissal of their cases.  Plaintiffs are not entitled to the extraordinary relief requested.  Moreover, granting the relief would be futile in the cases of Plaintiffs Kratochvil, Stafford, and Cremeans because their claims fail for other reasons.

Respectfully submitted,


Dated: June 3, 2019

*/s/ Andrea Roberts Pierson*
Andrea Roberts Pierson (# 18435-49)
Jessica Benson Cox (# 26259-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
Email:  andrea.pierson@faegrebd.com
Email:  jessica.cox@faegrebd.com

Bruce Jones (MN # 179553)
Charles Webber (MN # 215247)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota  55402
Telephone:  (612) 766-8719
Facsimile:  (612) 766-1600
Email:  bruce.jones@faegrebd.com
Email:  chuck.webber@faegrebd.com

*Counsel for the Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

US.123350934

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 3, 2019, a copy of the foregoing DEFENDANTS' OMNIBUS OPPOSITION TO MOTION TO RECONSIDER DISMISSALS OF THEIR CASES FILED BY FOUR PLAINTIFFS REPRESENTED BY SILL LAW FIRM was filed electronically and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.  Lead Co-Counsel for Defendants will serve any non-CM/ECF registered parties.

*/s/ Andrea Roberts Pierson*

US.123350934