**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |
| This Document Relates to All Actions | |

**COOK DEFENDANTS' REPLY IN SUPPORT OF A CASE MANAGEMENT**
**ORDER REGARDING COORDINATION WITH STATE COURT LITIGATION**

**INTRODUCTION**

In their Response, Plaintiffs claim that they "want to try as many cases as possible, as soon as possible, in as many forums as possible, and each individual Plaintiff of course wants his or her day in court sooner rather than later." (Dkt. No. 10653, at 8). Yet, when recently given a chance to pick new bellwethers for trial, Plaintiffs threw up as many roadblocks as possible to avoid picking and trying cases. Plaintiffs are steadfastly pressing a few of their favorite, hand-picked state court cases, but simultaneously seeking to avoid picking and trying new bellwether cases. This apparent strategy creates undue delays in the MDL, diverts precious resources, and frustrates the MDL process. Coordination with state courts, while not a cure-all, can reduce the likelihood of unnecessary delays, inefficiencies, and frustrations. Cook, therefore, requests that the Court enter Cook's Proposed Case Management Order Regarding Coordination with State Court Litigation. At a minimum, Cook requests that the Court periodically send impartial letters to state courts informing them of this Court's past accomplishments with respect to its management of this MDL and of this Court's future intentions with respect to bellwether trial and hearing dates.

1

# ARGUMENT

Plaintiffs oppose Cook's Proposed Case Management Order Regarding Coordination with State Court Litigation on three grounds: They claim that (1) it is unnecessary, (2) this Court previously denied a similar request, and (3) the relief it seeks would violate due process rights and principles of federalism. (*See* Dkt. No. 10653, at 1). Cook addresses each objection in detail below.

### I. The Proper Question Is Whether Cook's Proposed Coordination Order Is Helpful (It Is) And Whether It Promotes Efficiencies (It Does)

Plaintiffs argue that the relief Cook seeks is unnecessary because the same relief can be achieved by alternative means. In particular, Plaintiffs argue that because Cook is capable of informing state courts of the status of the MDL, there is no need for the MDL court to do so. (*See* Dkt. No. 10653, at 2). Plaintiffs, however, miss the point: Cook does not dispute that it can inform individual state courts of proceedings in the MDL; what Cook disputes is whether this is the most *effective* way to provide information to state courts and to promote coordination with other courts to avoid unnecessary delays and inefficiencies. It is not.

First, leaving it to Cook to provide state courts with an assessment of the MDL would mean that state courts would never get an impartial assessment of the status of this litigation from the MDL Court's perspective. As a party-litigant, Cook's assessment would, by definition, be partial. In cases where counsel for a state court plaintiff is not an active participant in the MDL, this may also mean that the state court will only ever hear Cook's version. Due to Cook's partiality, state courts would almost certainly be more skeptical of Cook's assessment than they would be of an impartial assessment from this Court. Consequently, a state court judge may be inclined to give less weight to issues in the MDL when making decisions about how to manage his or her docket than he or she might otherwise be had the information come from this Court.

Second, and relatedly, assessments from a party-litigant are more likely to be controverted by the opposing side than an impartial assessment from this Court. Thus, to the extent that an impartial assessment from this Court can help avoid unnecessary disputes, this Court's assessment would promote efficiency and conserve judicial resources by circumventing and reducing the likelihood of unnecessary disputes.

Third, leaving it to Cook to communicate with state courts about the status of the MDL does nothing to facilitate or promote collegiality and communication between and amongst courts. One benefit of direct communications from this Court is that the communications would likely be seen as invitations to enter into a dialogue with this Court. Status reports from Cook, on the other hand, would carry no such invitation and would do nothing to promote collegiality between and amongst the courts. As many complex litigation guides attest, the benefits of cooperation and open communication between and amongst courts are bountiful. *See, e.g.*, Bolch Judicial Institute, Duke Law School, Guidelines and Best Practices for Large and Mass-Tort MDLs, 81 (2018, 2d ed.), *available at* https://judicialstudies.duke.edu/wp-content/uploads/2018/09/MDL-2nd-Edition-2018-For-Posting.pdf ("Effective coordination between the federal and state courts in a MDL action promotes cooperation in scheduling hearings, conducting and completing discovery, facilitates efficient distribution of and access to discovery work product, avoids inconsistent federal and state rulings on discovery and privilege issues, if possible, and fosters communication and cooperation among litigants and courts that may facilitate just an inexpensive determination.").

Plaintiffs also suggest that communication between this Court and state courts is unnecessary because this Court's website already provides adequate information to state courts. (*See, e.g.*, Dkt. No. 10653, at 2). While this Court's website is certainly very helpful, a letter to state courts explaining the contents of the website would make the website *even more helpful*. The

fact that a helpful website exists does not mean that efforts should not be taken to enhance its helpfulness. Moreover, recent confusion emanating from the ranks of Plaintiffs' counsel in the form of multiple motions to vacate illustrate the limits of the Court's website. As these motions to vacate make clear, individual counsel for Plaintiffs are having trouble keeping up with the events, deadlines, and status of the MDL. If these Plaintiffs' counsel cannot adequately stay up-to-date, then Plaintiffs cannot fairly expect state courts to keep abreast of the MDL's status simply by periodically checking a website.

Finally, it bears reiterating that state court coordination with an MDL court is not a novel concept. Indeed, it is a widely recognized best practice. *See id.* at 81-92; *see also* Fed. Judicial Ctr., Manual for Complex Litigation (Fourth), 230 (2004) ("State and federal judges, faced with the lack of comprehensive statutory scheme, have undertaken innovative efforts to coordinate parallel or related litigation so as to reduce costs, delays, and duplication of effort that often stem from such dispersed litigation."); J.P.M.L. & Fed. Judicial Ctr., Ten Steps to Better Case management: A Guide for Multidistrict Litigation Transferee Judges, 6 (2d ed., 2014) (noting that "[c]oordination with state judges can be very important" and that MDL judges should "[t]ake it upon [themselves] to reach out to [their] state court colleagues").

Given this practice is so widely accepted, Cook is perplexed by Plaintiffs' intransigence on this issue. As one guide to complex litigation notes, "there will rarely be a well-founded objection" to communications between the MDL judge and state court judges. *See* Bolch Judicial Institute, Duke Law School, Guidelines and Best Practices for Large and Mass-Tort MDLs, 84 (2018, 2d ed.). Given Plaintiffs' concession that the relief Cook seeks can already be lawfully achieved by less efficient means, (*see* Dkt. No. 10653, at 2), the legal basis of Plaintiffs' objection is all the more mystifying.

## II. New Circumstances Have Created An Opportunity For Coordination.

Plaintiffs repeatedly point out that this Court denied a similar motion and should therefore do so again here. (*See* Dkt. No. 10653, at 1, 3-5). It is true that this Court denied a similar motion and Cook dutifully informed the Court of this at the April 29, 2019 Status Conference when it renewed its motion for a state court coordination order. *See* Trans. (April 29, 2019), at 72:15-73:23 ("You denied my request for it a couple of years ago . . . ."). The Court, however, did not foreclose opportunities to address the issue of coordination again. Indeed, in the Court's Order, the Court indicated that it would "address specific coordination matters as they arise in this litigation." *See* Order on the Cook Defendants' Case Management Order Regarding Coordination with State Court Litigation (Oct. 17, 2016) (Dkt. No. 2824).

Since Cook first raised this issue more than two years ago, a lot has happened. Significantly, the Court has chosen a bellwether plan requiring Plaintiffs to try categories of cases that they apparently would rather not try. As a result, Plaintiffs have tried to delay and unwind the progress of the MDL by seeking remand, venue transfer, and the wholesale avoidance of new bellwether trials, while at the same time pressing steadfastly to advance their favorite, handpicked state court cases. This tactical development merits closer coordination with state courts to ensure that the judicial process is not being manipulated in a way that creates unnecessary delays and inefficiencies, both in this MDL and in state court proceedings.

For example, although the parties appear to agree that trial preservation depositions would make sense for certain expert witnesses so they do not have to testify live in every trial, *see, e.g.*, Trans. (April 29, 2019), at 50:1-10 ("MR. MATTHEWS: . . . I would suggest to this Court that we put in the can, so to speak, the experts in deposition where we are then prepared, upon remand, to try cases in different jurisdictions with expert deposition testimony already taken in the MDL that

can be used."), Plaintiffs are nevertheless attempting to use state court procedural hurdles to limit Cook's ability to do exactly this. (*See* Dkt. No. 10653, at 3-4 ("[I]t would be improper to cross notice an expert deposition (as Cook recently tried to do) in state court cases that have not yet reached the expert discovery stage or in states where expert depositions are not allowed (e.g., Pennsylvania)".)). While it may be true that the procedural laws of some states may present insurmountable hurdles, other state's procedural laws will present no such hurdles, and cross noticing of depositions in those states should proceed without objection. Moreover, even where hurdles exist, coordination with state courts will increase the likelihood that a just, efficient, and equitable solution will be found. Doing nothing, as Plaintiffs propose, only makes matters worse.

For these reasons, Cook therefore respectfully requests that the Court reconsider its prior ruling in light of these new circumstances.

### III. Cook's Proposed Order Does Not Violate Due Process Or Any Principle Of Federalism And It Is Fair To All Parties

Finally, Plaintiffs argue that "the relief Cook seeks violates or threatens to violate the due process rights of state court plaintiffs and comity between state and federal courts." (Dkt. No. 10653, at 1). Plaintiffs' argument, however, rests on a mischaracterization of the relief Cook seeks. Cook is **not** asking the Court to exercise (or attempt to exercise) **any** authority over **any** state court. Rather, Cook is simply asking the Court to communicate with state courts about its accomplishments and future intentions so that the courts can work together to avoid scheduling conflicts, take advantage of opportunities to avoid duplicative efforts wherever possible, and make informed case management decisions. State courts will always be free to ignore these communications and to manage their dockets in whatever manner they deem appropriate. The mere dissemination of information in no way threatens due process or any principle of federalism. Nor is the dissemination of information to state courts inherently unfair to either party. Plaintiffs'

unfounded objections on this ground rest on a fundamental mischaracterization of the relief Cook seeks.

## CONCLUSION

Cook respectfully requests that the Court enter Cook's Proposed Case Management Order Regarding Coordination with State Court Litigation and/or send an impartial letter to state courts summarizing (1) the status of common fact discovery conducted in this MDL, (2) the content of any discovery-related case management orders entered by this Court, and (3) the process and status of this Court's bellwether selection process, including a calendar of expected trial and hearing dates so that state courts may take advantage of these opportunities to learn about the litigation.

Dated: June 10, 2019

Respectfully submitted,

/s/ Andrea Roberts Pierson
Andrea Roberts Pierson (# 18435-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Telephone:   (317) 237-0300
Facsimile:   (317) 237-1000
Andrea.Pierson@FaegreBD.com

James Stephen Bennett (# 22869-02)
FAEGRE BAKER DANIELS LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana 46802
Telephone:   (260) 424-8000
Facsimile:   (260) 460-1700
Stephen.Bennett@FaegreBD.com

*Counsel for the Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 10, 2019, a copy of the foregoing Cook Defendants' Reply in Support of a Case Management Order Regarding Coordination with State Court Litigation was filed electronically and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.  Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

/s/ Andrea Roberts Pierson

US.123450473.02