IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC. IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTSLIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates to the following Actions:

1:17-cv-00455 – DARIS CREMEANS
1:17-cv-00457 – BARBIE LYNN KRATOCHVIL
1:17-cv-00458 – SHEILA STAFFORD
1:17-cv-02611 – SALEEA SHOCKLEY

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTIONS FOR RECONSIDERATION OF THE COURT'S ORDER DISMISSING PLAINTIFFS' CLAIMS FOR FAILURE TO SUBMIT CASE CATEGORIZATION FORM**

Plaintiffs have moved for relief under Rule 59(e) as well as 60(b). With respect to Rule 59(e), on May 7, 2019, all plaintiffs who were not in compliance with the January 31 deadline were given 15 additional days to comply; however, Plaintiffs' cases were dismissed before this extended deadline. With respect to Rule 60(b), Plaintiffs' failure to comply with the original case categorization deadline was inadvertent and in good faith, a mistake shared by many plaintiffs, and one that has not prejudiced the Defendants. Therefore, equitable factors would require the Court to reinstate Plaintiffs' cases.

This is indeed the equitable result considering the fact that for reasons that are presently undetermined, Plaintiffs' counsel was not included in the recipients list of e-mails sent to all attorneys representing plaintiffs in this MDL by the PSC. **Had Plaintiffs' counsel not been excluded from such e-mail list that alerted all plaintiffs' counsel to the upcoming categorization deadlines on January 8, 2019, this whole situation would have been avoided and Plaintiffs' rights would not have been so severely jeopardized.**

1

**I.	THE PLAIN LANGUAGE OF THE MAY 7, 2019 ORDER GRANTED PLAINTIFFS AN ADDITIONAL 15 DAYS TO COMPLETE THE CASE CATEGORIZATION PROCESS.**

On May 7, 2019, this Court issued its Revised Second Amended Order Regarding Case Categorization Forms. Dkt. No. 10617.  The Court noted that "many Plaintiffs" had failed to meet the December 22 deadline, and thus extended the case categorization deadline to January 31, 2019. *Id.*  The Court noted that many plaintiffs continued to submit categorization forms subsequent to Defendants' Second Amended Motion to Dismiss. *Id*. The Court then provided that: (1) dismissals of the cases in Exhibits A and B to Defendants' Second Amended Motion to Dismiss would occur through separate order, and (2) all Plaintiffs who had yet to comply with the January 31 deadline were "ORDERED to categorize their cases using the form provided in Filing No. 9638-1, supported by specific medical documentation, and to submit the same to the Cook Defendants and Plaintiffs' Leadership, within 15 days of the date of this Order." *Id*.  The plain language of the Court's order allows an extension for "[a]ll Plaintiffs who have not complied with the January 31 deadline. . . ." *Id.*   Plaintiffs timely complied with the plain language of the May 7, 2019 order and submitted the required forms and documentation prior to this new deadline.  Defendants note in their Omnibus Opposition to Motions to Reconsider Dismissals filed by Plaintiffs (hereinafter "Opposition") that statements made regarding the order might limit its application only to plaintiffs filing after November 14, 2018.  However, Plaintiffs' counsel would have had no knowledge of these circumstances, nor does this limitation appear in the express language of the order.  Plaintiffs submit that dismissal of Plaintiffs' cases, in effect with prejudice as they would not be able to refile their cases in the absence of new injury, conflicts with the Court's May 2, 2019 order allowing Plaintiffs 15 days to comply with the case categorization procedure, and its May 7, 2019 order granting Plaintiffs until May 22, 2019 to accomplish that.  Therefore, this dismissal should be vacated under Federal Rules of Civil Procedure 59(e) and 60(b).

**II.     PLAINTIFFS' COUNSEL'S INADVERTENT ACTIONS ARE EXCUSABLE UNDER RULE 60(b).**

The excusable neglect standard under Rule 60(b)(1) is an equitable standard. The purpose for this rule is to prevent cases to be decided by dismissals as a result of missed deadlines. *Newgen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016). Such judgments are generally disfavored. This is because it is an underlying principal of the Federal Rules of Civil Procedure that cases should be decided on the merits instead of technicalities. *Rodriguez v. Village Green Realty, LLC*, 788 F.3d 31, 47 (2d Cir. 2015). Here, the dismissal of Plaintiffs' cases, which is in effect with prejudice due to the requirement for the occurrence of a future injury for re-filing, is due to the type of technical failure that falls squarely within the ambit of 60(b)(1).

**A. Defendants Rely on Case Law that Has Been Superseded by the Supreme Court.**

For clarification, Defendants rely on case law before 1993 in support of their position that excusable neglect under 60(b)(1) cannot include negligence. However, in *Pioneer Inv. Services Co v. Brunswick Assoc's Ltd. P'ship*, 507 U.S. 380 (1993), the Supreme Court adopted a "flexible understanding" of Rule 60(b)(1) that "encompass[es] situations in which the failure to comply with a filing deadline is attributable to negligence." *Id.* at 394; *see also Tate v. Riverboat Services, Inc.*, 305 F. Supp. 2d 916, 919-22 (N.D. Ind. 2004) (finding excusable neglect where there was genuine confusion about deadlines where multiple similar cases were pending, there was little prejudice to the non-movants, and the movant had acted inadvertently, in good faith). Defendants rely on cases superseded by the *Pioneer* decision in essentially conflating the 60(b)(1) standard with a due-care standard.

Fed. R. Civ. P. 60(b) provides that the Court has discretion to reinstate each Plaintiff's case for the reasons of: "(1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b)(1) & (6). Trial

on the merits is strongly favored over default judgments, especially "where the default has not been willful." *A.F. Dormeyer Co. v. M.J. Sales & Distributing Co.*, 461 F.2d 40, 43 (7th Cir. 1972).

Excusable neglect is an equitable doctrine without precise definition. *Pioneer*, 507 U.S. at 395. Factors that may be considered include the impact of the delay on the judicial proceedings, the prejudice to the non-moving party, and whether the movant acted in good faith. *Id.* In *A.F. Dormeyer*, counsel had erroneously operated under the local rules with which he was familiar, instead of that of the applicable court, and in doing so failed to file a responsive pleading. There the district court entered a default judgment, and later denied a motion to vacate the judgment. The Seventh Circuit reversed, finding counsel's error to constitute excusable neglect. *Dormeyer*, 461 F.2d at 43. The same result is warranted here.

**B. The Error Was Inadvertent and Made in Good Faith.**

Plaintiffs' counsel missed the original case categorization deadline inadvertently and in good faith. Once discovered, Plaintiffs' counsel acted expeditiously to comply with the case categorization procedure, as well as to file the present Motion. Plaintiffs' counsel did so before the May 22, 2019 deadline. The expeditious manner in which Plaintiffs' counsel acted in addressing the inadvertent noncompliance with categorization order further supports that this error was made in good faith.

In Defendants' words in their Second Amended Motion to Dismiss, "many plaintiffs" failed to meet the original deadline. Dkt. No. 10211 at 1-2. As of March 14, 2019, 336 cases had still failed to comply with the categorization order, per Defendants' reply brief. Dkt. No. 10307. Many plaintiffs have found themselves in the same or similar circumstances as Plaintiffs here. This would seem to be paradigmatic circumstances for this Court to reinstate Plaintiffs' cases under Rule 60(b)(1).

Defendants argue that any diligent counsel should have easily discovered the deadline due to, for example, the order on Defendants' motion for a screening order and bellwether selection plan. However, this entry contained no deadlines. Dkt. No. 9322. Defendants argue that what seems to have been oral statements made to the Court during a different plaintiff's trial should have plainly put Plaintiffs on notice of a deadline. That docket entry reads, in its entirety:

> The parties appear for the motions hearing set this date. Plaintiffs appear by Ben Martin, Joe Williams. Mike Heaviside, Roger Mandel, Laura Baughman, Misty Farris and Denman Heard; Defendants appear by Andrea Pierson, Chuck Webber, Jessica Cox, Ryan Hurley Kip McDonald, Bruce Jones and Anna Rutigliano. The court hears argument from the counsel. Court is adjourned until 9:00 a.m. tomorrow.

Dkt. No. 9875. Defendants have exaggerated the notice-providing qualities of this entry.

Defendants characterize Plaintiffs' counsel as "not even marginally diligent." However, as explained in the Plaintiffs' Reconsideration Motion, while the buck rightly stops with the counsel, the failure to timely comply with the Court's categorization order was due to an unexpected failure of communication among the law firm staff in charge of monitoring the Court's docket. As the Defendants point out, Plaintiffs' counsel has represented a large number of plaintiffs in similar, large MDL procedures, without ever failing to meet courts' deadlines, especially one with such dire consequences for the Plaintiffs' rights. This was simply an inadvertent and undiscovered communication failure, made in good faith and without any intent to disregard the Court-ordered process, and expeditiously addressed when discovered.

**C. Plaintiffs' Counsel Was Not Included in the Communications by the PSC Leadership.**

The result of the inadvertent failure in communication among Plaintiffs' counsel's staff members was gravely aggravated by the fact that **Plaintiffs' counsel has now determined that she, and others at the Sill Law Group, were not included in any communications by the PSC Leadership** and did not receive the e-mail communications sent by the Lead Counsel with regard

5

to the categorization process.[1]  Copies of several e-mails sent by the PSC to a list of plaintiff attorneys in the case have now been obtained from another law firm and show that neither Plaintiffs' counsel, nor any other person from Sill Law Group, was included in these e-mails. *See* **Exhibit 1**.  Most critically**,** an e-mail entitled **"IMPORTANT Message Regarding Categorization Forms – Cook IVC Filter, MDL 2570"** sent out to attorneys representing plaintiffs in this MDL by Christina Guerra on January 8, 2019 and attached here as **Exhibit 2**, was never received by either Plaintiffs' counsel, nor anyone else from the Sill Law Group, as they were not among the recipients of this and similar e-mails sent out by the PSC.  The reason for this omission is presently unknown[2], and Plaintiffs' counsel has now informed the PSC of the problem and has received their latest e-mail dated June 8, 2019.  *See* **Exhibit 4**.  However, had Plaintiffs' counsel received the communication noted above (**Exhibit 2**), this situation would have been discovered and the problem remedied in a timely fashion, protecting the rights of these Plaintiffs and eliminating the need for asking for this equitable remedy.

   **D. Plaintiffs' Submission of Categorization Forms Was Made in Compliance with The Court's "Second Amended Order Regarding Case Categorization Forms."**

The Court's Second Amended Order Regarding Case Categorization Forms, issued on May 2, 2019 and vacated on May 7, 2019, states as follows:

> To streamline the case categorization procedure, the court hereby **AMENDS** the court's Categorization Order (Filing No. 9322) as follows:

---

[1] Defendants imply that Plaintiffs' counsel's statement regarding not receiving a call from the PSC regarding the categorization process deadlines could be read to mean that council received such communication by other means, including e-mail. Opposition at 8 n3. That conjecture is clearly false. Ironically, it was Defendants' Opposition that cued Plaintiffs' counsel to the existence of the PSC e-mail communications and prompted further inquiry in that regard.

[2] The recent e-mail from the PSC leadership, dated June 8, 2019, indicates that the problem with e-mails might have been due to the large number of recipients of those e-mails. *See* **Exhibit 3**. However, an inspection of the recipients' list shows that neither Plaintiffs' counsel, nor anyone else from her office, was included in that list in the earlier communications (**Exhibit 1**).

> • All Plaintiffs who have not complied with the January 31 deadline are **ORDERED** to categorize their cases using the form provided in Filing No. 9638-1, supported by specific medical documentation, and to submit the same to the Cook Defendants and Plaintiffs' Leadership, within **15 days** of the date of this Order.

Dkt. No. 10595.

Plaintiffs' Counsel learned of the failure of the intra-office communication regarding the Categorization Forms on May 15, 2019, and immediately prepared and submitted the corresponding Forms for each Plaintiff on May 16, 2019.  Thus, Plaintiffs are not only in compliance with the Court Order of May 7, 2019, Dkt. No. 10617, they are also in compliance with the May 2, 2019 order of the Court, further demonstrating that Plaintiffs have acted in good faith with regard to addressing any deficiency in a diligent and timely manner.

### E. There Has Been No Prejudice to Defendants.

Defendants have sustained no prejudice whatsoever by Plaintiffs' late submission.  That is why Defendants do not argue or show that they have sustained any prejudice in their Opposition brief.  Defendants were in possession of their own census of the cases "using information previously provided by the Plaintiffs," and submitted the Census to the Court on February 22, 2019.  Case Management Order No. 25, May 2, 2019, Dkt. No. 10599.  Thus, Defendants had access to all the records they needed to obtain that information.

Moreover, Defendants received Plaintiffs' submission on May 16, 2019, before the extended May 22, 2019 deadline that, according to the May 7, 2019 order, extended the deadline for "[a]ll Plaintiffs who ha[d] not complied with the January 31 deadline[.]" Dkt. No. 10617.  If Plaintiffs' submission on May 17, 2019 was one of many received before the May 22, 2019 deadline, it is difficult to imagine how Defendants could be prejudiced by the timing of Plaintiffs' submission.

### F. The Delay, compared with the De Facto April Deadline, Has Been Short.

Defendants' response indicates that, practically speaking, the deadline was extended "through the end of April[.]" Opposition at 6. Plaintiffs' submissions were tendered less than three weeks later. Therefore, for all practical purposes, the delay is short. The timing of the submission, presumably one of many received before the May 22, 2019 deadline, will not materially affect the judicial proceedings. That further demonstrates and emphasizes that Defendants have not suffered any real prejudice as a result of the short delay in submission of the categorization information.

All this shows that the occurrence at issue, while preventable, was not due to any bad faith disregard for the Court orders and the process laid down by it. It was an inadvertent oversight and the unfortunate product of unforeseen circumstances working synergistically to place Plaintiffs at an extremely disadvantageous position. It has not caused Defendants any prejudice, while endangering Plaintiffs' right to recovery for the injuries they have suffered. Equity requires a reconsideration of this Court's dismissal order and the re-instatement of Plaintiffs' cases.

### III. PLAINTIFFS' CLAIMS ARE VIABLE AND SHOULD BE REINSTATED.

Defendants' claim that reconsideration of dismissal of Plaintiffs' cases would be futile is devoid of merit. Contrary to Cook's assertion, no document dumping has taken place here and Plaintiffs' medical records were submitted in compliance with the Court's order. Moreover, Defendants' claims regarding the running of statute of limitation on Plaintiffs, Daris Cremeans and Sheila Stafford are without foundation. Moreover, Plaintiff Barbie Kratochvil's categorization status is supported by records and Defendants' claim in that regard is meritless.

### A. Plaintiffs Submitted Appropriate Records in Support of Their Categorization Status.

Defendants' claims regarding noncompliance of the Plaintiffs' submitted medical records in support of their injury categorization are simply frivolous. Each of the named Plaintiffs, in compliance with the Court's order, submitted records which specifically supported the injury in question. Contrary to Defendants' claim, in neither case the entire medical record was provided. As Defendants must be aware, based on the previous production of the medical records per CMO-4, the entire medical records of each of these Plaintiffs consist of hundreds of pages of records from a number of different healthcare providers and facilities.[3] In each case, only the records from the healthcare provider documenting the injury were submitted in support of each Plaintiff's individual Categorization Form. Nothing in this submission runs afoul of the Court's order in that regard. While the records may not have been highlighted due to the fact that once the failure to timely submit the Categorization Form was discovered on May 15, 2019, every effort was made to submit them at the *earliest possible time*, the records had undergone "optical character recognition" (OCR). That feature, along with the specification of the claimed injury on the Plaintiff's individual Categorization Form would make locating the reference to the injury by Defendants almost instantaneous. Similarly, as Defendants admit, the "references to previously produced records," were made in the Motion to Reconsider and not the Categorization Form. Opposition at 12. Defendants' assertions in this regard are misleading, trivial, and simply meritless.

---

[3] Mr. Cremeans' complete medical records are over 700 pages, retrieved from 3 different medical facilities; Ms. Stafford's records are 275 pages, retrieved from 3 medical facilities; and Ms. Kratochvil has close to 500 pages of medical records retrieved from 4 medical facilities. The provided records were only a small and representative fraction of the complete set of medical records in each case.

9

### B. Plaintiff Kratochvil's Categorization Status Is Irrelevant to the Dismissal Issue.

Defendants' challenge to Ms. Kratochvil's selected injury category is irrelevant to the issue of reinstatement of the Plaintiff's case and contrary to this Court's guidance in its instructions with regard Case Categorization Submission. Dkt. No. 9638-1. As a part of those instructions, the Court explicitly stated, "[t]his Case Category Submission is for the purpose of complying with the Court's Order on the Cook Defendant's Motion for Screening Order and Bellwether Selection Plan only and is not admissible and ***is not to be considered relevant for any other purpose.***" *Id*. (emphasis added). Defendants' attempt to take advantage of the submitted Categorization Form in support of their attempt to have the present case dismissed is in direct opposition to the Court's admonition in that regard.

Moreover, contrary to Defendants' claim, it was after being counseled by her physician that attempts at removal of the IVC filter could lead to perforation of the vein and life-threatening bleeding that Ms. Kratocvil decided against its removal, especially considering the fact that she has young, dependent children she is raising. Defendants cannot use the Categorization process to have cases dismissed without further discovery is in violation of Plaintiff's right to due process.

### C. Plaintiff Sheila Stafford's Action Is Not Time-Barred.

Plaintiff Sheila Stafford's claims against Defendants are not time-barred. While Ms. Stafford was aware that the attempt at removal of her IVC filter was unsuccessful in March of 2009, it was not until she saw an advertisement campaign regarding IVC filter injuries in late 2015 that she became aware that the failure of retrieval was due to the defective product design and the negligent action of Defendants. See **Exhibit 5**. As the Supreme Court of Oklahoma has acknowledged regarding statute of limitations, "Oklahoma follows the discovery rule." *Woods v. Prestwick House, Inc.*, 247 P.3d 1183, 1189-90 (2011). Thus, the statute of limitation in the

10

present case was tolled by the discovery rule until Ms. Stafford discovered that her injuries were due to Defendants' negligent actions.

Under Oklahoma law, the discovery rule extends the accrual of a cause of action until the plaintiff knows, or should have known, not just of the injury, **but also** of its cause. "The discovery rule is an equitable principle which shields a plaintiff from the accrual of a cause of action until he discovers, or by the exercise of reasonable diligence should have discovered that he may have an *actionable* claim." *Lancaster v. Hale*, 152 P.3d 890, 892 (2007). "Where applicable, the discovery rule tolls the limitations period until a plaintiff learns of an injury and, through prudent investigation, **can obtain sufficient facts to state a cause of action**." *Lavender v. Craig Gen. Hosp.*, 308 P.3d 1071, 1076 (2013) (emphasis added).

The Tenth Circuit has accordingly observed that, "the statute of limitations . . . does not begin to run until the plaintiff knows, or as a reasonably prudent person should know, that he has the condition for which his action is brought **and that the defendant caused it**." *Williams v. Borden, Inc.*, 637 F.2d 731, 735 (10th Cir. 1980) (emphasis added). Thus, the mere knowledge of the injury was not sufficient to trigger the running of statute of limitation, as Defendants falsely claim. It was only when Ms. Stafford became aware of the link between her injury and Defendants' negligence that the running of the limitation period was triggered.

Moreover, under Oklahoma law, "[t]he question of when [a plaintiff] possessed sufficient information to trigger the running of the statute of limitations **is one of fact**." *Hawk Wing v. Lorton*, 2011 OK 42, ¶ 18, 261 P.3d 1122, 1127 (quoting *Gallagher v. Enid Reg'l Hosp.*, 910 P.2d 984, 986 (1995) (internal quotations omitted) (emphasis added)). "[W]hether plaintiffs have used diligence in discovery, or should, as reasonably prudent persons have been put on inquiry and investigation from what they heard, or knew, was a question to be determined in the trial court, on

the basis of the facts and circumstances of the particular case." *Id*. (internal quotations omitted); *see also Redwine v. Baptist Med. Ctr. of Oklahoma, Inc.*, 679 P.2d 1293, 1295 (1983) ("Whether plaintiff exercised 'reasonable diligence' in ascertaining the cause of her husband's death is a question of fact to be determined by the jury."). Thus, even if there is a possible question as to when Sheila Stafford knew, or should have known, of the accrual of her causes of action, that question, per Oklahoma law, is a question of fact to be determined by the jury.

**D. Plaintiff Daris Cremeans' Action Is not Time-Barred.**

Defendants claim that under Ohio law Mr. Cremeans' action is time-barred because his injury (stroke) occurred in October 2013 and his action was filed in 2017. Opposition at 17. That is not so. While Mr. Cremeans suffered his injury in 2013, it was not until late November 2015 that he found out, via an IVC filter television advertisement to which he responded, that his injury was caused by the negligent action of the manufacturer of his IVC filter. See **Exhibit 5**. Subsequently he brought an action against the Defendants within the two-year statute of limitation of the discovery of his cause of action.

Ohio law recognizes the "discovery rule" in the context of statute of limitation under Ohio Products Liability Act § 2305.10. *See O'Stricker v. Jim Walter Corp.*, 447 N.E.2d 727, 732 (1983). However, contrary to Defendants' claim, the mere discovery of the injury by a plaintiff does not trigger the statute of limitation or the discovery rule. In *O'Stricker*, the Ohio Supreme Court adopted a discovery rule with respect to bodily injuries, and held that, "[w]hen an injury does not manifest itself immediately, the cause of action does not arise until the plaintiff knows or, by the exercise of reasonable diligence should have known, that **he had been injured by the conduct of defendant**, for purposes of the statute of limitations contained in R.C. 2305.10." *Id*. at paragraph 2 of the syllabus.

"This 'discovery rule,' as articulated by the Supreme Court in *O'Stricker, supra,* is a two-pronged rule requiring both **prongs** to be satisfied before the statute of limitations begins to run. First, a plaintiff must know or reasonably should have known that he has been injured; and second, a plaintiff must know or reasonably should have known that his injury was proximately caused by conduct of the defendant." *Viock v. Stowe-Woodward Co.* 13 Ohio App. 3d 7, 12 (1983) (emphasis in original). "While <u>O'Stricker</u> involved exposure to asbestos products, the [Ohio] Supreme Court, in the syllabus, did not limit application of the discovery rule under R.C. 2305.10 to injuries caused by exposure to asbestos products but, instead, adopted a general rule applicable to all bodily injury cases. *Barker v. A. H. Robins Co.*, 1985 WL 9826, at *3 (Ohio Ct. App. Jan. 17, 1985).

Thus, in Ohio, a cause of action subject to the discovery rule does not accrue until discovery that the plaintiff's injury was caused *by the conduct of the defendant*. *O'Stricker*, 447 N.E.2d 727; *see also*, *Ault v. Jasko*, 70 Ohio St.3d 114, 115-16 (1994) ("The discovery rule generally provides that a cause of action does not arise until the plaintiff knows or, by the exercise of reasonable diligence should have known, that he or she has been injured by the conduct of the defendant."); *Norgard v. Brush Wellman, Inc.*, 95 Ohio St.3d 163 (2002), syllabus ("A cause of action based upon an employee intentional tort accrues when the employee discovers, or by the exercise of reasonable diligence should have discovered, the workplace injury and the wrongful conduct of the employer").

Defendants argue that, "the statute of limitation is triggered when the plaintiff knew or in the exercise of reasonable injury [*sic*] should have known of the injury." Opposition at 19. However, as the Ohio Court of Appeals explained in *Barker*, a case involving permanent bodily injuries caused by the use of an IUD manufactured by the defendant,

> The word "injury," however, has distinct meanings, one being physical injury and another being legal injury. . . . Injury has been defined in 1 Restatement of the Law,

13

> Torts 2d § 7 as simply "the invasion of any legally protected interest of another." However, in Comment a. to § 7 of the Restatement it is stated, "the meaning of the word 'injury,' as here defined, differs from the sense in which the word 'injury' is often used, to indicate that **the invasion of the interest in question has been caused by conduct of such a character as to make it tortious**." . . . Tying the discovery rule to discovery of the legal injury (rather than discovery of the physical injury either through manifestation or causation) places the rule in the proper perspective and provides proper protection to the injured person who is not required to commence his action until he knows or should have known **he has a cause of action to bring**.

1985 WL 9826 at *5 (emphasis added); *see also Meeker v. Am. Torque Rod of Ohio, Inc.*, 607 N.E.2d 874, 877 (1992) ("the relevant standard for the discovery rule in this area [product liability] is plaintiff's knowledge of the legal injury committed by defendant."). Thus, contrary to Defendants' claim, Daris Cremeans' mere knowledge of his stroke in 2013, in the absence of any knowledge of his cause of action against Defendant, did not trigger the running of the statute of limitation. Accordingly, Mr. Cremeans' action is not time-barred.

**E. Defendants Are Equitably Estopped from Asserting a Statute of Limitation Defense.**

Even if Defendants' assertions regarding the limitations period applicable to Plaintiffs' claims are considered valid, which they should not, Defendants are equitably estopped from asserting any limitations defense by virtue of their fraudulent concealment of the risks associated with its IVC filters. "[A] party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period." *Bomba v. W.L. Belvidere, Inc.*, 579 F.2d 1067, 1070 (7th Cir.1978). Both Ohio and Oklahoma law recognize the doctrine of equitable estoppel. *See Helman v. EPL Prolong, Inc.,* 743 N.E.2d 484, 495 (2000) ("Under Ohio law, the doctrine of equitable estoppel may be employed to prohibit the inequitable use of the statute of limitations."); *see also, Johnson v. State,* 96 P.2d 313, 315 (1939) (The doctrine of equitable estoppel may be invoked when the defendant, "previously by deception or any violation of duty toward plaintiff,

14

caused him to subject his claim to the statutory bar, he must be charged with having wrongfully obtained an advantage which the court will not allow him to hold.").

As noted in Plaintiffs' Master Complaint, Defendants have actively concealed the risks associated with their IVC filters from Plaintiffs and Plaintiffs' healthcare providers through their affirmative misrepresentations and omissions. As a result, Plaintiffs were unaware, and could not have reasonably known or have learned through reasonable diligence, that they had been exposed to those risks, and that those risks were the result of Defendants' acts, omissions, and misrepresentations. Thus, no limitations period ought to accrue until Plaintiffs knew or reasonably should have known of some causal connection between their being implanted with a Cook IVC filter and the injury they suffered as a result. The accrual and running of any applicable statute of limitations have been tolled by reason of Defendants' fraudulent concealment.

## CONCLUSION

Due to the good faith inadvertence of Plaintiffs' counsel's error, the lack of communication received from the PSC by Plaintiffs' counsel, the lack of any prejudice to Defendants, and the common nature of this error, which appears to have been widely shared by well over one hundred plaintiffs in the same position, Plaintiffs respectfully request this Court to vacate its dismissal, which in effect is a dismissal with prejudice, and reinstate Plaintiffs' cases.

Dated: June 10, 2019    Respectfully Submitted,

**SILL LAW GROUP PLLC**

By: ___*/s/ Katie Griffin*___
    Katie Griffin (OK Bar No. 30829)
    1101 N. Broadway Ave., Suite 102
    Oklahoma City, Oklahoma 73103
    Email: katie@sill-law.com
    Tel: (405) 509-6300
    Fax: (405) 509-6268

*Attorneys for Plaintiffs*

15

## CERTIFICATE OF SERVICE

    I hereby certify that on June 10, 2019, a copy of the foregoing was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

        /s/ Katie Griffin

        Katie Griffin