# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

---

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

---

This Document Relates to All Cases

---

## COOK DEFENDANTS' RESPONSE TO
## PLAINTIFFS' MOTION TO REMAND AND TRANSFER VENUE

Andrea Roberts Pierson (# 18435-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204-1750
Telephone:     (317) 237-0300
Facsimile:      (317) 237-1000
Andrea.Pierson@FaegreBD.com

James Stephen Bennett (# 22869-02)
FAEGRE BAKER DANIELS LLP
110 West Berry Street, Suite 2400
Fort Wayne, Indiana 46802-2322
Telephone:     (260) 424-8000
Facsimile:      (260) 460-1700
Stephen.Bennett@FaegreBD.com

*Counsel for the Defendants, Cook Incorporated,
Cook Medical LLC (f/k/a Cook Medical
Incorporated), and William Cook Europe ApS*

# TABLE OF CONTENTS

**Page No.**

INTRODUCTION……………………………………………………………………………………..1

ARGUMENT ........................................................................................................... 3

I.    The Obligation to Remand Cases at the Conclusion of Pretrial Proceedings Only Applies to the Cases Transferred to this Court by the JPML Under Section 1407. .......... 3

    A.    Section 1407 does not apply to cases that were originally filed in this District. ....................................................................................................... 4

    B.    Secondary authorities agree that an MDL court has jurisdiction to try cases originally filed in its district. ................................................................. 8

    C.    This Court has noted repeatedly that it has full authority to preside over all aspects of cases originally filed in this district and has nowhere to "remand" them. ...................................................................................... 10

    D.    Plaintiffs improperly rely on "direct filing" authority in an attempt to create a right to remand that does not exist by statute. ............................... 11

II.    Plaintiffs' Request to Transfer Cases Originally Filed in this District Should Be Denied Under Section 1404 Because the Relevant Factors Strongly Weigh in Favor of this Court Retaining Venue. ................................................................... 16

    A.    Plaintiffs have failed to establish that proposed transferee districts throughout the country can exercise personal jurisdiction over all of the defendants. ...................................................................................... 17

    B.    Plaintiffs have failed to demonstrate that proposed transferee districts throughout the country are clearly more convenient forum than this Court......... 18

    C.    Plaintiffs have failed to demonstrate the interests of justice favor transferring these cases to proposed transferee districts throughout the country.............. 23

    D.    The interests of justice further strongly favor keeping the cases centralized before this Court instead of creating various mini-MDLs around the country. ................................................................................................. 26

III.    Remand and Transfer, As Applicable to Individual Cases, Are Premature Because There Are Numerous Common Pretrial Tasks to Complete, Including Trying More Bellwethers Under the Court's New Bellwether Plan and Screening Protocol............................................................................................................. 28

    A.    The pretrial work of an MDL court includes much more common work than presiding over company discovery as Plaintiffs narrowly suggest, and encompasses efforts to dispose of meritless cases and resolve cases with merit ............................................................................................... 29

    B.    The Court should continue with its new plan to try more bellwether cases ......... 35

    C.    This MDL is still on track for timely completion. ................................... 38

CONCLUSION................................................................................................... 39

# TABLE OF AUTHORITIES

**Page No.**

**FEDERAL CASES**

*Alcon Mfg., Ltd. v. Apotex, Inc.*,
   2007 WL 854026 (S.D. Ind. Mar. 14, 2007)................................................18, 19, 21

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
   571 U.S. 49 (2013)..........................................................................................25

*Bates v. J.C. Penney Co.*,
   624 F. Supp. 226 (W.D.N.C. 1985) ...............................................................24

*Berry Plastics Corp. v. Protecto Wrap Co.*,
   2013 WL 772871 (S.D. Ind. Feb. 28, 2013) ......................................... passim

*Chicago, R. I. & P. R. Co. v. Igoe*,
   220 F.2d 299 (7th Cir. 1955) .........................................................................29

*Coffey v. Van Dorn Iron Works*,
   796 F.2d 217 (7th Cir. 1986) ...................................................................16, 18

*Cont'l Grain Co. v. The FBL-585*,
   364 U.S. 19 (1960)..........................................................................................24

*DeLaventura v. Columbia Acorn Trust*,
   417 F. Supp. 2d 147 (D. Mass. 2006) ............................................................30

*Depianti v. Jan-Pro Franchising Int'l, Inc.*,
   2016 WL 4771056 (D. Mass Sept. 13, 2016) ................................................19

*Dzik v. Bayer Corp.*,
   846 F.3d 211 (7th Cir. 2017) .........................................................................27

*Elanco Animal Health, a Div. of Eli Lilly & Co. v. Archer Daniels Midland Co.
   Animal Health & Nutrition Div.*,
   2008 WL 4099882 (S.D. Ind. Sept. 4, 2008) ...........................................16, 21

*Everroad v. Scott Truck Sys., Inc.*,
   2007 WL 3287115 (S.D. Ind. Nov. 6, 2007) ................................................16

*F.T.C. v. MacArthur*,
   532 F.2d 1135 (7th Cir. 1976) .......................................................................23

*Freeman v. Wyeth*,
   764 F.3d 806 (8th Cir. 2014) .........................................................................28

US.123392922

*Goodman-Manaster & Co. v. Kamerdin*,
  1986 WL 3036 (N.D. Ill. Feb. 27, 1986) ..............................................22

*Grynberg v. Ivanhoe Energy, Inc.*,
  490 F. App'x 86 (10th Cir. 2012) ..........................................................18

*Hughes Aircraft Co. v. Jacobson*,
  525 U.S. 432 (1999) ................................................................................5

*In re Chevron U.S.A., Inc.*,
  109 F.3d 1016 (5th Cir. 1997) ................................................................35

*In re Cook Med., Inc.*, *IVC Filter Marketing, Sales Practices, and Prod. Liab.*
  *Litig.*, 53 F. Supp. 3d 1379 (J.P.M.L. 2014) ...................................21, 24

*In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*,
  628 F.3d 157 (5th Cir. 2010) ..................................................................27

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,
  2012 WL 1580761 (E.D. La. May 4, 2012).............................................7

*In re Fosamax Prods. Liab. Litig.*,
  2011 WL 1584584 (S.D.N.Y. Apr. 27, 2011)..........................................7

*In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*,
  496 F.3d 863 (8th Cir. 2007) ..................................................................28

*In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*,
  2016 WL 46704827 (M.D. Ga. Sept. 7, 2016) ........................................34

*In re MTBE Prods. Liab. Litig.*,
  2007 WL 1791258 (S.D.N.Y. June 15, 2007) .........................................35

*In re New England Compounding Pharm., Inc.*,
  2016 WL 6127261 (D. Mass Oct. 18, 2016).............................................7

*In re Norplant Contraceptive Prods. Liab. Litig.*,
  946 F. Supp. 3 (E.D. Tex. 1996).............................................................7

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*,
  910 F. Supp. 2d 891 (E.D. La. 2012), *aff'd sub nom. In re Deepwater Horizon*,
  739 F.3d 790 (5th Cir. 2014) ..................................................................7

*In re Phenylpropanolamine Prods. Liab. Litig.*,
  460 F.3d 1217 (9th Cir. 2006).................................................................28

*In re Plumbing Fixture Cases*,
  298 F. Supp. 484 (J.P.M.L. 1968)..........................................................30

- iii -

*In re Prempro Prods. Liab. Litig.*,
2008 WL 1970244 (E.D. Ark. May 7, 2008)..........................................................8

*In re Recombinant DNA Tech. Patent & Contract Litig.*,
1994 WL 270712 (S.D. Ind. Dec. 22, 1993)........................................................20

*In re Vioxx Prods. Liab. Litig.*,
478 F. Supp. 2d 897 (E.D. La. 2007)............................................................ passim

*James v. Daley & Lewis*,
406 F. Supp. 645 (D. Del. 1976)........................................................................19

*Keene v. McKesson Corp.*,
2015 WL 9257949 (N.D. Cal. Dec. 17, 2015).....................................................24

*Kendall U.S.A., Inc. v. Cent. Printing Co.*,
666 F. Supp. 1264 (N.D. Ind. 1987) ...................................................................23

*Law Bulletin Publ'g, Co. v. LRP Publ'ns, Inc.*,
992 F. Supp. 1014 (N.D. Ill. 1998) .....................................................................23

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
523 U.S. 26 (1998).................................................................................... passim

*Lore v. Lone Pine Corp.*,
1986 WL 637507 (N.J. Super. Law Div. Nov. 18, 1986).....................................31

*Muzumdar v. Wellness International Network, Ltd.*,
438 F.3d 759 (7th Cir. 2006) .........................................................................14, 15

*Paper Express, Ltd. v. Pfankuch Maschinen GmbH*,
972 F.2d 753 (7th Cir. 1992) .........................................................................14, 15

*Puri v. Hearthside Food Sols.*,
2011 WL 6257182 (C.D. Cal. Dec. 13, 2011) .....................................................24

*Rapier v. Capital One Auto Fin., Inc.*,
2007 WL 3102148 (S.D. Ind. Oct. 22, 2007)  ....................................18, 21, 22, 23

*Relational, LLC v. TDMK, LLC*,
2008 WL 2704757 (N.D. Ill. July 7, 2008).........................................................21

*S.C. Johnson & Son, Inc. v. Gillette Co.*,
571 F. Supp. 1185 (N.D. Ill. 1983) .....................................................................20

*Samaan v. St. Joseph Hosp.*,
685 F. Supp. 2d 163 (D. Me. 2010) .....................................................................19

US.123392922

*Solis v. Lincoln Elec. Co.*,
    2006 WL 266530 (N.D. Ohio Feb. 1, 2006) ....................................................8

*Somers v. Flash Tech. Corp. of Am.*,
    2000 WL 1280314 (S.D. Ind. Aug. 25, 2000) ...............................................20

*Utley v. N. Am. Van Lines, Inc.*,
    2002 WL 31431482 (S.D. Ind. Oct. 3, 2002) ...............................................20

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ....................................................................................23

*Von Holdt v. Husky Injection Molding Sys., Ltd.*,
    887 F. Supp. 185 (N.D. Ill. 1995) ................................................................18

*Warner-Lambert Co. v. Apotex. Corp.*,
    2001 WL 854854 (N.D. Ill. July 27, 2001) ...................................................19

**STATUTES**

28 U.S.C. § 1391 ..................................................................................11, 12, 13

28 U.S.C. § 1404 ................................................................................... passim

28 U.S.C. § 1407 ................................................................................... passim

**RULES**

FED.R.CIV.P. 8(b)(5) ....................................................................................13

FED.R.CIV.P. 9(b) ........................................................................................33

FED.R.CIV.P. 11 .....................................................................................33, 38

S.D. IND. L. R. 40-1 ....................................................................................10

**OTHER AUTHORITIES**

DUKE LAW SCHOOL BOLCH JUDICIAL INSTITUTE, MDL STANDARDS AND BEST
    PRACTICES 17 (2D ED. 2018), *available at* https://judicialstudies.duke.edu/wp-
    content/uploads/2018/09/MDL-2nd-Edition-2018-For-Posting.pdf; .......................9

Black's Law Dictionary (10th ed. 2014) ........................................................5

CHARLES ALAN WRIGHT, ARTHUR R. MILLER, ET AL., FEDERAL PRACTICE &
    PROCEDURE § 3847 (4th ed. Westlaw ver. 2019) ............................................ passim

Eldon E. Fallon, et al., *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L.
    Rev. 2323 (2008) .......................................................................... passim

FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION (4th ed. 2004),
*available at* https://public.resource.org/scribd/8763868.pdf ...............................................9, 32

U.S. District Courts – Combined Civil and Criminal: Federal Court Management
Statistics—Comparison Within Circuit, *available at*
https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2018.pdf...................26

JPML & Federal Judicial Center, *Ten Steps to Better Case Management, a Guide
for Multidistrict Litigation Transferee Judges*, *available at*
https://www.fjc.gov/sites/default/files/2014/Ten-Steps-MDL-Judges-2D.pdf............30, 31, 34

US.123392922

## INTRODUCTION

"[I]t is hard to imagine a more appropriate forum than that of where the Defendants made, marketed and sold the product and where the Defendant is headquartered"—the Southern District of Indiana.  Pls.' Memo. in Supp. of Mot. for Trans. & Coordination or Consolidation Under 28 U.S.C. §1407, p. 8, attached as **Exhibit A**.  That's what Plaintiffs claimed when they moved to create this MDL.  Now they want out of the MDL, and out of the Southern District of Indiana, asking the Court to remand (pursuant to 28 U.S.C. § 1407 and *Lexecon*) and transfer (pursuant to 28 U.S.C. 1404(a)) all pending cases to the districts in which they live—practically every federal district in the country.  *See* Dkt. 10439, Pl. Br. at 1-2.  Needless to say, were their motion granted, it would torpedo the Court's efforts to try more representative bellwether cases among the chosen 1,400 Category 5 and 6 cases.

Plaintiffs' motion should be denied for three reasons.  <u>First</u>, the obligation to "remand" cases at the conclusion of MDL proceedings under *Lexecon* applies ***only*** to cases that were first filed in a different district and then transferred to this Court by the JPML.  In this MDL, the vast majority of cases were originally filed here and are properly venued here (because the Cook Defendants are residents here).  There is thus no obligation—indeed, there is no ability—to "remand" these any-where, for they are already in their originating venue.  Moreover, there is no direct-filing order in this MDL that would allow the Court to treat the cases filed originally in the Southern District of Indiana as if they were first filed elsewhere, and thus to send them off to another district for trial.

<u>Second</u>, with respect to Plaintiffs' request to "transfer" (as opposed to "remand") cases originally filed here, the plaintiffs' request is not about "convenience of the parties and witnesses," and it's certainly not about the "the interest of justice."  28 U.S.C. § 1404(a).  Indeed, Plaintiffs make almost no effort at all to demonstrate the statutory criteria are satisfied here.  Their request

US.123392922

is instead about drowning Cook in a sea of lawsuits spread from one coast to the other—lawsuits that will proceed on different tracks, according to different procedures and case management plans, and that will result in different rulings on similar issues by courts with no institutional knowledge of these cases.  In fact, there are cases pending in the MDL from all 50 states, and mass transfer would create the unfathomable logistical nightmare of creating dozens of mini-MDLs in various federal courts around the country.  This is exactly the procedural morass that the JPML sought to avoid when it created this MDL.

Third and finally, setting aside for a moment that remand is only available for the cases that were transferred here by the JPML, and that mass transfer under section 1404(a) would produce nothing but chaos, both remand and transfer are not appropriate at this time because the Cook MDL is neither a "mature" mass tort nor are its member cases "trial ready" and "ripe" for remand. While company discovery is closed (notwithstanding Plaintiffs' efforts to collect more common discovery through the guise of case-specific discovery in state court cases), "pretrial proceedings" are much broader than collecting company documents and deposing company witnesses.  Indeed, "pretrial proceedings" properly include case screening measures, dispositive motions, and resolution efforts with the encouragement of the MDL court after additional bellwethers.  Cook has identified additional screening measures and various dispositive issues that will affect large groups of cases in this MDL.  The Court should permit Cook to present those motions in the coming months so that they are ruled upon before any serious consideration is given to remand or transfer. That would ensure that cases that should be dismissed are not sent to other districts under the guise of being "trial ready."  Moreover, the Court has just recently adopted its new Bellwether Plan (CMO-25) and should proceed, as intended, with trying more cases under that plan.  The two cases tried thus far were both Celect cases.  As this Court concluded in October 2018, trials of Tulip

US.123392922

cases and "product in place" cases will provide additional information to the parties about the merits of their theories and case values in the areas where parties' evaluations are furthest apart. That, along with the culling of meritless cases, may permit the Court to revisit efforts to resolve this MDL on a global level.

In short, the Court should stay the course, with more screening and bellwethers.

## ARGUMENT

## I.   The Obligation to Remand Cases at the Conclusion of Pretrial Proceedings Only Applies to the Cases Transferred to this Court by the JPML Under Section 1407.

Plaintiffs argue "the time is ripe to remand all transferred cases back to their original transferor courts, and to transfer all direct-filed cases to the venues pleaded in each Plaintiff's [short-form complaint]." Pl. Br. at 2. They're wrong. But before discussing why they're wrong, it is first necessary to establish the differences between "transfer" and "remand," and to address which types of cases are subject to which procedure. Remand and transfer are procedural vehicles governed by different statutes, apply to different types of cases, and impose different obligations on an MDL court. Imprecise use of these terms conflates the two concepts, though they are far from interchangeable.

As Plaintiffs themselves tacitly acknowledge, the obligation to "remand" cases for trial applies to cases that have been "transferred" to this Court; indeed, they ask for "remand [of] all **_transferred_** cases." Pl. Br. at 2 (emphasis added). Plaintiffs' attorneys repeated and emphasized this distinction at the April status conference. _See_ April 29, 2019 Tr. at 37:4-8 ("One of the items on the agenda which Mr. Matthews had began to talk about—or talked a little bit about were the motions for—he designated them as being motions for remand. Officially they're motions to transfer venue."); _id._ at 44:15-16 ("THE COURT:   So these motions are not remand motions; they're actually transfer motions.").

What Plaintiffs ignore, however, is that the obligation to remand **_applies only to cases transferred to this Court by the JPML_**. _See_ 28 U.S.C. § 1407(a); _Lexecon Inc. v. Milberg Weiss Bershad_

*Hynes & Lerach*, 523 U.S. 26 (1998).  Out of the 5,000-plus cases in the Cook MDL, the vast majority were **not** transferred to this Court by the JPML, but were instead originally and properly filed in this Court.  Although the parties differ about the propriety and timing of transferring those cases to another venue pursuant to 28 U.S.C. § 1404(a) (the general venue transfer statute), section 1407 and *Lexecon* simply do not apply to this vast group of cases.  As this Court noted during the April 2019 status conference (among others), not one of those originally filed cases can be "remanded . . . to the district court from which it was transferred," 28 U.S.C. § 1407(a), because none of them were transferred to this Court to begin with.  *See* April 29, 2019 Tr. at 59:5, 17-18.  To the extent Plaintiffs ask the Court for a suggestion of remand in any case they originally filed in this Court, Plaintiffs are relying on an obligation to remand that does not in fact exist.  This conclusion is compelled by the plain language of section 1407(a), by *Lexecon*, by JPML caselaw, by the decisions of other federal courts, and by secondary authorities.

### A. Section 1407 does not apply to cases that were originally filed in this District.

Contrary to what Plaintiffs claim, there is no obligation to "remand" cases that plaintiffs themselves originally filed in this district.  The relevant statute, 28 U.S.C. § 1407, makes that clear. In particular, Section 1407(a) states (with emphasis):

> When civil actions involving one or more common questions of fact are **pending in different districts**, **such actions may be transferred** to any district for coordinated or consolidated pretrial proceedings.  **Such transfers shall be made by the judicial panel on multidistrict litigation** authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.  **Each action so transferred** *shall be remanded* by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated . . . .

Thus the obligation to remand, by its plain language, applies only to actions "so transferred" —that is, actions transferred to an MDL "by the judicial panel on multidistrict litigation."  That means cases **not** "so transferred"—such as the many cases originally filed in this Court – are **not** subject to section 1407's

remand obligation. These latter cases might, depending on whether the plaintiffs establish certain criteria, be "transferred" to another district, *see* 28 U.S.C. § 1404(a), a question we take up later, but they can't be "remanded"; for there is no court to remand them to. The definition of the word "remand" confirms as much. *See* Black's Law Dictionary (10th ed. 2014) (defining the verb "remand" as "[t]o send (a case or claim) ***back to the court or tribunal from which it came*** for some further action" (emphasis added)). This Court has made this fact clear as well. *See e.g.,* April 29 Tr. at 59:17-18 ("Sounds like a lot of these cases I'd be transferring these cases to myself."). Under hornbook principles of statutory interpretation, analysis begins with the text, and, in instances like this one, "[w]here that language provides a clear answer, it ends there as well." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 433 (1999).

The Supreme Court's decision in *Lexecon* is consistent with this unambiguous statutory language. The question there was whether an MDL court could assign a JPML-transferred case to itself for trial under section 1404(a). *See* 523 U.S. at 40-41. The Court ruled that an MDL court has no such power, holding that section 1407(a) mandates "remand" of "transferred" cases to the districts where they were first filed for trial absent an agreement by both parties to waive venue:

> The Panel's instruction comes in terms of the mandatory "shall," which normally creates an obligation impervious to judicial discretion. . . . In the absence of any indication that there might be circumstances in which a transferred case would be neither "terminated" nor subject to the remand obligation, then, the statutory instruction stands flatly at odds with reading the phrase "coordinated or consolidated pretrial proceedings" so broadly as to reach its literal limits, allowing a transferee court's self-assignment to trump the provision imposing the Panel's remand duty. If we do our job of reading the statute whole, we have to give effect to this plain command.

523 U.S. at 35 (citations omitted). Nowhere in this language, or in any other passage in *Lexecon*, is it even suggested section 1407(a) applies to cases originally filed in the MDL court – cases that, in other words, the JPML never "transferred" to the MDL. As the Supreme Court noted in *Lexecon*, the "proper venue for resolving issue[s]" outside the plain language of section 1407 "remains the floor of Congress." 523 U.S. at 41.

A broad range of authority supports the conclusion that an MDL court cannot remand cases that were not transferred to it by the JPML, including the JPML's own caselaw.  In the *Gerber Probiotic Products Marketing and Sales Practices Litigation*, a plaintiff moved to create an MDL for 10 cases pending in four districts, but the JPML held that centralization was unnecessary.  899 F. Supp. 2d 1378, 1379 (J.P.M.L. 2012).  In discussing *Lexecon* and the difference between sections 1404 and 1407, the JPML explained that MDL courts (like this Court here) possess complete jurisdiction over cases filed in their own districts, including jurisdiction to hold trials:

> [T]ransferee courts are limited to conducting bellwether trials (or any other trial or post-trial proceedings) in those actions over which the transferee court has jurisdictions outside the multidistrict context, either ***because the action was filed directly with the transferee court*** or because the parties waived their right to remand to the transferor court.  Thus, even if a litigation is likely to be centralized by the Panel, Section 1404 transfer by transferor courts—*before* centralization—can result in a larger pool of potential bellwether cases for the transferee court.

*Id.* at 1380 n.4 (bold emphasis added).

The Seventh Circuit has spoken on the issue and reached the same conclusion.  In the *African-American Slave Descendants Litigation*, the JPML transferred 10 suits to an MDL in the Northern District of Illinois that were brought by plaintiffs from "around the country . . . ."  471 F.3d 754, 756 (7th Cir. 2006).  After the MDL was created, the plaintiffs "filed a consolidated complaint, and since venue in Chicago was proper and in any event not objected to by the parties," the Seventh Circuit held that "the district court was unquestionably authorized, notwithstanding [*Lexecon*] to determine the merits of the suit."  *Id.* (internal citations omitted).

Indeed, the Cook Defendants' research indicates that every district court to have faced the issue of whether section 1407 applies to cases originally filed in the MDL court has concluded it does not.  *See In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 897, 903-04 (E.D. La. 2007) ("As noted, the three cases that are the subject of the instant motion were filed directly in this district pursuant to Pretrial

Order No. 11 [*i.e.*, the Vioxx MDL direct filing order] by citizens who do not reside in Louisiana, as were approximately 2,000 other cases.  This MDL Court technically has complete authority over every aspect of these cases, limited only by the provisions of Pretrial Order No. 11."); *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 2012 WL 1580761, at *1 n.2 (E.D. La. May 4, 2012) ("Because these are direct filings rather than tag-alongs transferred to this Court by the Judicial Panel, it does not appear that the Supreme Court's ruling in *Lexecon* . . . is implicated . . . ."); *In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on Apr. 20, 2010*, 910 F. Supp. 2d 891, 963 (E.D. La. 2012), *aff'd sub nom.  In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) ("To begin with, the Court's resolution of pre-trial motions does not constitute a "trial proceeding" that the Court may not conduct under [*Lexecon*]. . . .  And regardless, the Court is not acting pursuant to 28 U.S.C. § 1407 with respect to this Settlement, as the [plaintiff's] complaint was filed directly in this district."); *see also In re Fosamax Prods. Liab. Litig.*, 2011 WL 1584584, at *1 (S.D.N.Y. Apr. 27, 2011) ("[A] transferee court lacks authority to conduct a trial of an MDL member case not originally filed in the transferee court without the consent of the parties.").

In particular, some district courts have expressly commented that remand is not available for cases filed in the MDL and that the only procedural vehicle to change venue for those cases is a fact-intensive transfer analysis under section 1404(a), the general change-of-venue statute.  *See In re New England Compounding Pharm., Inc.*, 2016 WL 6127261, at *3, 5 (D. Mass Oct. 18, 2016) (remanding transferred cases and retaining full jurisdiction over several cases at issue because they "were directly filed in this District, and therefore are not subject to § 1407"); *In re Norplant Contraceptive Prods. Liab. Litig.*, 946 F. Supp. 3, 4 (E.D. Tex. 1996) ("If a party avoids the need for an MDL transfer order by filing directly in this court, the court is unable to rely on § 1407 for the efficient remand of such case to the proper venue after pretrial proceedings are concluded.  Instead, the court is

forced to engage in the more burdensome task of relying on 28 U.S.C. § 1404(a) in evaluating the need for a change of venue."); *In re Prempro Prods. Liab. Litig.*, 2008 WL 1970244, at *1 (E.D. Ark. May 7, 2008) ("This case involves only non-Arkansas Plaintiffs, and was directly filed in the Eastern District of Arkansas.  By filing directly in [the MDL court], rather than in what would otherwise be a more appropriate venue, Plaintiffs not only bypass the multidistrict litigation statute providing for transfer and later remand, but also threaten to burden this court with unnecessary transfer decisions under § 1404(a).").

In this MDL, the vast majority of cases were originally filed in this district.  With respect to those cases that were transferred here, section 1407's remand obligation applies—but not yet—because they are not yet ripe for remand (*see* Section III below).[1]  With respect to the remaining cases – the large majority of cases that were originally filed here—section 1407's remand obligation does ***not*** apply; those cases may be sent to another district for trial, if at all, only under section 1404(a).  In Sections II and III below, Cook explains why Plaintiffs have failed to establish, as is their burden, that "transfer" of these cases is appropriate.  Again, because the cases were filed in this Court, this Court is free to manage its docket as it wishes, including setting any of these cases for trial here at the Court's sole discretion.

## B.    Secondary authorities agree that an MDL court has jurisdiction to try cases originally filed in its district.

Multiple other authorities support the conclusion that an MDL court has no obligation to remand for trial cases that were originally filed in the MDL court, including a law review article by veteran MDL Judge Eldon Fallon, who issued the *Vioxx* ruling cited above.  *See* Eldon E. Fallon, et al., *Bellwether*

---

[1]    In practice, the transferee court may recommend remand to the JPML at the appropriate time, but the transferee court cannot remand cases on its own.  *See, e.g.*, *Solis v. Lincoln Elec. Co.*, 2006 WL 266530, at *1 n.1 (N.D. Ohio Feb. 1, 2006) ("Because the MDL Panel usually awaits a suggestion of remand from the transferee court, however, [the court] uses shorthand terminology and refers to 'remand by the transferee court,' rather than 'a suggestion for remand by the transferee court the MDL Panel.'").

US.123392922

*Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323 (2008).[2]  In a section discussing bellwether selection and *Lexecon* issues related to transferred cases, Judge Fallon has explained that an MDL court has complete jurisdiction over originally filed cases.  *Id*. at 2357 n.117.  Judge Fallon notes:

> ***A case filed directly into the MDL***, whether by a citizen of the state in which the MDL sits or by a citizen of another jurisdiction, ***vests the transferee court with complete authority over every aspect of that case***.  This is because the transferee court is no longer cognizable as the transferee court under 28 U.S.C. § 1407, but is technically the forum court.

*Id.* at 2356-57 (emphasis added).  For "cases filed directly into the MDL by nonresident plaintiffs, the defendant, and only the defendant, must waive its sustainable venue and venue-related objections."  *Id.* at 2358.  Judge Fallon recommends that judges "faced with obstinate attorneys refusing to provide consent" for cases transferred by the JPML under section 1407 may "unilaterally set[] cases filed into the MDL by citizens of the forum state for trial."  *Id.* at 2357.

Additionally, the MANUAL FOR COMPLEX LITIGATION notes that "[n]othing in [*Lexecon*] . . . precludes the transferee judge from presiding over cases that litigants filed in the transferee district originally."  FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION p. 463, § 22.93 (4th ed. 2004), *available at* https://public.resource.org/scribd/8763868.pdf (all Internet materials last accessed June 10, 2019).  Likewise, the DUKE LAW MANUAL—a compilation of best practices for MDLs developed in consultation with both plaintiff and defense mass tort lawyers (some of whom have cases in this MDL)—notes that "a transferee judge may only conduct trials of cases originally filed in that court."  DUKE LAW SCHOOL BOLCH JUDICIAL INSTITUTE, MDL STANDARDS AND BEST PRACTICES 17 (2D ED. 2018), *available at* https://judicialstudies.duke.edu/wp-content/uploads/2018/09/MDL-2nd-Edition-2018-For-Posting.pdf; *see also id.*

---

[2]     Judge Fallon presided over the *Xarelto*, *Chinese Drywall*, *Vioxx*, and *Propulsid* MDLs, and has developed pioneering practices that other MDL courts and counsel have consulted for guidance.

("Often, some subset of the cases pending in a MDL proceeding will qualify [for trial in the forum court].") (hereafter, DUKE LAW MANUAL).

**C.   This Court has noted repeatedly that it has full authority to preside over all aspects of cases originally filed in this district and has nowhere to "remand" them.**

Closer to home, this Court has itself noted on multiple occasions that it has full authority to try cases originally filed in this district.  Specifically, whenever the issue of transfer or remand has been discussed with respect to cases filed in this district, the Court has observed that these cases originated here and thus "remanding" them under section 1407 is impossible.

For example, in discussing a motion to transfer filed in 15 pending cases, the Court noted a month ago that for "[t]hese 15, the home district is here" and, therefore, that it "[s]ounds like a lot of these cases I'd be transferring these cases to myself."  April 29, 2019 Tr. at 59:5, 17-18.  This is consistent with the Court's comments from last year.  *See* May 2, 2018 Tr. at 17:9-23 ("I have to remand these to myself, I guess.").  The Court has intuitively and correctly recognized that section 1407(a) and any attendant rights to transfer for trial are not at issue in these non-transferred cases.  As the Court noted, remand to the "home jurisdiction" in this context would entail the pointless exercise of "remanding" the cases from the MDL to the general docket of the Southern District of Indiana.  *See* Fallon, 82 Tul. L. Rev. at 2357 (explaining that for cases filed in its home district the "transferee court is no longer cognizable as the transferee court under 28 U.S.C. § 1407, but is technically the forum court").  Obviously, that would be an absurdity.  This Court is free to continue managing these as it best sees fit, including assigning them to the same judge under Local Rule 40-1, as the Clerk of the Court has been doing thus far.  S.D. Ind. L. R. 40-1(e) ("When the court determines that two cases are related, the case filed later may, in the court's discretion, be transferred to the judicial officer handling the earlier-filed case.").

US.123392922

**D.      Plaintiffs improperly rely on "direct filing" authority in an attempt to create a right to remand that does not exist by statute.**

To get around the plain language of section 1407(a), and to manufacture a "*Lexecon* right" to remand for trial that does not otherwise exist, Plaintiffs have argued that cases Plaintiffs originally filed in the Southern District of Indiana are "direct filed" cases with reserved *Lexecon* rights.  *See* Dkts. 10715; 10901.  Again, Plaintiffs are wrong.

As used in the MDL context, a "direct filed" case is (1) a case in which the parties have agreed, and the court has ordered, may be filed directly in the MDL (which, unlike here, is usually in a district where venue would normally not lie); but (2) the parties reserve the right to obtain transfer for trial to a proper venue pursuant to section 1404(a) once pretrial proceedings in the MDL have been completed. For example, in the *Vioxx Products Liability Litigation*, 478 F. Supp. 2d 897, 903-04 (E.D. La. 2007) presided over by Judge Fallon, the parties entered into an express agreement to waive any venue objections, and the court ordered that "a plaintiff may now file any such complaint against Merck directly in the Eastern District of Louisiana, rather than in a federal district court affording proper venue."  Vioxx MDL Pretrial Order No. 11, pp. 1-2, attached as **Exhibit B**.  In addition, the parties agreed, and the court ordered, that at the end of pretrial proceedings, "direct-filed" cases would be transferred to their "home districts" pursuant to section 1404(a).  *Id.* at 2 (stating agreement is contingent on understanding that the court "will transfer [cases] to a federal district court of proper venue, as defined in 28 U.S.C. § 1391, based on the recommendations of the parties [in each] case.").

The Cook MDL differs from the Vioxx MDL (and most other MDLs) in at least two material ways.  First, venue is proper in this Court for all IVC filter actions and, therefore, there has never been a need for the Cook Defendants to waive venue in any action.  Under 28 U.S.C. section 1391(b)(1), "[a] civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."  Here, as Plaintiffs themselves allege in

- 11 -

their master complaint, the Cook Defendants are based in the Southern District of Indiana. *See* Dkt. 213, ¶¶ 9-20 (allegations regarding Cook Defendants' incorporation and business operations in Indiana).[3] Thus, as Plaintiffs assert, "[a] substantial amount of activity giving rise to the claims occurred in this District, and Defendants may be found within this District. Therefore, venue is proper in this jurisdiction under 28 U.S.C. §1391." *Id.* at ¶ 28. Plaintiffs' filings thus are not "direct filings" in MDL nomenclature; they are simply ordinary filings of actions in a district where venue is unquestionably proper. *Compare*, *e.g.*, Bard MDL, 2:15-md-02641-DGC, Dkt. 364, Bard Master Compl., ¶¶ 11-12 (noting in an Arizona-venued MDL that defendant Bard, Inc. is incorporated in Delaware and resides in New Jersey); *see also* Dkt. 10786 at 15 n.9 (Cook citing master complaints and explaining in its *Lexecon* bench brief that District of West Virginia was not a proper venue in any of the mesh MDLs housed there because the defendants were not residents of that particular district").

Second, and perhaps even more importantly, unlike in the Vioxx and Bard MDLs, where there was an order in place addressing "direct filing," there is no direct-filing order here. This Court has ***never*** entered an order providing a procedure for direct filing by foreign plaintiffs, let alone an order that provides an automatic right to obtain transfer to another venue for trial. Indeed, Cook never agreed to such an order, and Plaintiffs never asked the Court to enter such an order. Instead, Plaintiffs unilaterally chose to file their cases here, and so now, absent them affirmatively demonstrating, with evidence, that their cases should, "[f]or the convenience of parties and witnesses, in the interest of justice," be transferred elsewhere, 28 U.S.C. § 1404(a), those cases must be tried here, if they are to be tried at all.

---

[3]      The only MDL defendant that is not based in Indiana is William Cook Europe, which is based in Denmark. But under another section of the venue statute, the citizenship of that entity is disregarded. *See* 28 U.S.C. § 1391(c)(3) ("[A] defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants.").

Plaintiffs' *Lexecon* briefs assert that Plaintiffs somehow unilaterally "preserved" a right to try their cases in their "home districts," even in the absence of a direct-filing order, based on paragraph 27 of the master complaint and paragraph 7 of the short-from complaint. *See* Dkt. 10715 at 2-5. Once again, they are wrong.

Paragraph 27 of Plaintiffs' master complaint alleges that, "[f]or purposes of remand and trial, venue is proper pursuant to 28 U.S.C. § 1391 in the federal judicial district of each Plaintiff's state of residence." And paragraph 7 of the short-form complaint alleges the "District Court and Division in which venue would be proper absent direct filing," with Plaintiffs typically, but not exclusively, filling in the blank with the name of the federal district where they reside. On their face, these allegations represent neither an agreement to transfer venue for trial nor an order directing transfer of venue for trial. They are just that—*allegations* in a complaint. In fact, the Cook Defendants have denied both allegations. *See* Dkt. 8180, Defs.' Am. Ans. ¶ 27 (stating Cook Defendants lack knowledge or information sufficient to form a belief about the truth of Plaintiffs' claim that venue is proper in their home districts, which "has the effect of a denial" under Fed. Riv. Civ. P. 8(b)(5)); Notice of Agreement, Dkt. 318, ¶ 4 (noting Cook's appearance in a case alone "serve[s] as a general denial of the allegations contained in the Short Form Complaint").

At all events, even accepting for sake of argument that these allegations are somehow evidence of a right to transfer for trial, there are contradictory allegations that point even more strongly the other way. While paragraph 27 alleges that venue is proper "in the federal judicial district of each Plaintiff's state of residence," the very next paragraph alleges that "[a] substantial amount of activity giving rise to the claims occurred in this District, and Defendants may be found in this District. *Therefore, venue is proper in this jurisdiction under 28 U.S.C. §1391.*" Master Compl., Dkt. 213, ¶ 28 (emphasis added). As the Plaintiffs themselves noted when they moved to create this MDL: "*[I]t is hard to imagine a*

- 13 -

*more appropriate forum than that of where the Defendants made, marketed and sold the product and where the Defendant is headquartered*." *See* Ex. A at 8 (emphasis added). This is hardly strong evidence that Plaintiffs who originally filed their cases here have a right, as they claim, to try their cases in another district.

The other problem with Plaintiffs' argument is that, again, there is no court order or stipulation giving Plaintiffs a right to transfer for trial. Plaintiffs' attempt to rely on Judge Fallon's article for support on this point takes his statements out of context. Although Judge Fallon did contemplate that "an individual plaintiff could potentially preserve his *Lexecon* objection by making a notation of such in his complaint," Plaintiffs omit his explanation and conclusion on the issue, which immediately follows the passage Plaintiffs quote in their bench brief:

> While this alternative appears attractive, it may not be effective. Although there is no case law on the subject, *it is doubtful that a litigant can unilaterally place conditions on a court order. Without an order allowing direct filing by a nonresident plaintiff, such plaintiffs have no right to file directly into the MDL.* This right is the sole product of the transferee court's order, although it is conceivable that a plaintiff could file in an action directly into the MDL, despite improper venue, and just hope that its filing is not challenged on venue grounds. Thus, *if a transferee court does not acknowledge a plaintiff's right to preserve his Lexecon objection or affirmatively permit such preservation, a plaintiff may not have that right at all.*

Fallon, 82 Tul. L. Rev. at 2357, n. 117 (emphasis added). Thus, not only does Judge Fallon's article not support Plaintiffs' argument, his statements are consistent with Cook's view that Plaintiffs cannot create a unilateral and automatic "*Lexecon* right" where none exists by statute.

Moreover, that Plaintiffs cannot unilaterally create an automatic right to remand or transfer is clear from the Seventh Circuit's caselaw on forum selection clauses in contracts. In *Muzumdar v. Wellness International Network, Ltd.*, 438 F.3d 759 (7th Cir. 2006), the Seventh Circuit noted that, "where venue is specified with mandatory or obligatory language, the clause shall be enforced; where only jurisdiction is specified, the clause will generally not be enforced unless there

- 14 -

is some further language indicating the parties' intent to make venue exclusive." *Id.* at 762.  Similarly, in *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753 (7th Cir. 1992), the Seventh Circuit found a forum-selection clause mandatory and enforceable when it provided that "all disputes . . . shall be filed" in the named forum, "manifest[ing] an intent to make venue compulsory and exclusive." *Id.* at 756.  Non-mandatory forum-selection language indicates only that venue would be permissible in the named forum.  *See id.*

Nothing in the short-form complaint resembles the mandatory and obligatory contractual language found to be enforceable in *Muzumdar* or *Paper Express*.  After all, the short-form complaint is a pleading; it's not a contract or an order of this Court.  The Cook Defendants never agreed that this language would operate as a forum selection clause, and thus allow plaintiffs who chose to file in the Southern District of Indiana—an unquestionably proper venue—to try their cases elsewhere.  As the Southern District of New York, sitting as an MDL court in the *LIBOR-Based Financial Instruments Antitrust Litigation*, held: "[a] plaintiff may not unilaterally change venue by the device of amending its complaint, but instead must move for a change of venue."  2015 WL 6243526, at *21 (S.D.N.Y. Oct. 20, 2015).  The plaintiffs in that litigation had attempted to avoid personal jurisdiction problems by "fil[ing] an amended complaint purporting to assert venue and personal jurisdiction in [the MDL court]," as opposed to the transferor court, but the court's holding categorically rejected that maneuver.

\* \* \* \* \*

In sum, the remand "obligation" in section 1407, as interpreted by *Lexecon*, applies only to cases transferred to this district by the JPML.  It has never applied to cases that the plaintiffs chose to file here as an original matter. It just happens that there are many more originally filed cases here that cannot be remanded than in a typical MDL because (1) many Plaintiffs chose to

- 15 -

file their cases in this forum without any guaranty that they would be transferred to their home districts for trial, and (2) this Court is a proper venue in all cases based on the Cook Defendants' residence in this district.  Accordingly, the Court has full jurisdiction over all originally filed cases, it can preside over them to their conclusion (including trial), and it has no obligation (or ability) to "remand" them.

## II.   Plaintiffs' Request to Transfer Cases Originally Filed in this District Should Be Denied Under Section 1404 Because the Relevant Factors Strongly Weigh in Favor of this Court Retaining Venue.

As just discussed, cases that were originally filed in the Southern District cannot be "remanded" under section 1407.  Accordingly, the proper procedural vehicle to address Plaintiffs' request for trial in another district as to these cases is 28 U.S.C. § 1404(a).  *See* Pl. Br. at 2.

For transfer to be appropriate under section 1404(a), the moving party must establish that: (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice.  *Berry Plastics Corp. v. Protecto Wrap Co.*, 2013 WL 772871, at *5 (S.D. Ind. Feb. 28, 2013).  As to the third requirement, the plaintiffs must show, "by reference to ***particular*** circumstances," not merely that transfer would be more convenient, but "***clearly*** more convenient."  *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986) (emphasis added); *accord Elanco Animal Health, a Div. of Eli Lilly & Co. v. Archer Daniels Midland Co. Animal Health & Nutrition Div.*, 2008 WL 4099882, at *2 (S.D. Ind. Sept. 4, 2008).  "[M]ere speculation without supporting evidence" is insufficient to support transfer.  *Everroad v. Scott Truck Sys., Inc.*, 2007 WL 3287115, at *1 (S.D. Ind. Nov. 6, 2007).  "The court will not order a transfer unless the moving party gets beyond the language of the statute and justifies a change in forum." 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, ET AL., FEDERAL PRACTICE & PROCEDURE § 3847 (4th ed. Westlaw ver. 2019) (hereafter "WRIGHT & MILLER").

- 16 -

Plaintiffs make no meaningful attempt to satisfy any of the relevant transfer criteria here. Asking the Court to transfer some 5,000 cases in only nine pages of text, Plaintiffs' motion is conclusory, based on generalizations, devoid of case-specific analysis of the relevant facts, speculative about the benefits of transfer, and almost entirely unsupported by any evidence.

### A.    Plaintiffs have failed to establish that proposed transferee districts throughout the country can exercise personal jurisdiction over all of the defendants.

Plaintiffs claim that "[a]bsent the MDL" every plaintiff that originally filed his or her case in this Court "would have filed his or her case in the venue listed" in paragraph 7 of the short-from complaint, and ask the Court to "honor each Plaintiff's choice of venue." Ignoring the fact that Plaintiffs' "choice of venue" was the Southern District of Indiana, their argument completely misunderstands the statutory criteria. As this MDL holds over 5,000 cases, Plaintiffs are literally asking the Court to transfer a case to every district court in the country.[4]

Transfer does not depend on whether the transferee district would have jurisdiction over plaintiffs. Instead, "[i]n suits against multiple defendants, transfer is proper only to a district in which all of them" —that is, all of the ***defendants***—"are subject to personal jurisdiction and in which venue is proper for an action against all of them." 15 WRIGHT & MILLER § 3845. The Cook Defendants have asserted lack of personal jurisdiction as an affirmative defense in every case. Dkt. 8180, Defs.' Am. Ans. p. 23.[5]   Nevertheless, Plaintiffs have made no effort at all to

---

[4]    Based on MDL data as of May 24, 2019, Cook identified pending cases filed by plaintiffs residing in all 50 states, as well as Washington D.C. and Puerto Rico. Even the least populous five states have multiple plaintiffs: Wyoming (18 cases), Vermont (4), Alaska (8), North Dakota (2), and South Dakota (14).

[5]    Relatedly, Cook only admitted that they "reside in the Southern District of Indiana and are headquartered in Bloomington," and that they "regularly do business in the State of Indiana." *Id.*, ¶ 24. Cook denied the remainder of the allegations in this paragraph, which alleged that "Defendants are present and doing business within this state and have continuous and systematic contacts in every state in the United States of America, including Plaintiffs' states of residence." Dkt. 213, Master Compl., ¶ 24.

demonstrate—as is their burden and their burden alone, *see Berry Plastics Corp.*, 2013 WL 772871, at *5—that jurisdiction and venue are proper as to any of the defendants in any proposed transfer, let alone all 5,000-plus of them.  As there are cases filed by plaintiffs from every state, and beyond, Plaintiffs would have to establish that personal jurisdiction and venue are proper in practically every federal district nationwide, which is an exceedingly tall order—an order they have not even tried to fill.

For this reason alone, Plaintiffs' motion should be denied.  *See*, *e.g.*, *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 106 (10th Cir. 2012) (affirming denial of transfer where plaintiffs failed to demonstrate the transferee district had jurisdiction over the defendants).

### B.     Plaintiffs have failed to demonstrate that proposed transferee districts throughout the country are clearly more convenient forum than this Court.

In evaluating the convenience of transfer under section 1404(a), the Court considers the private interests of the parties.  *Rapier v. Capital One Auto Fin., Inc.*, 2007 WL 3102148, at *2 (S.D. Ind. Oct. 22, 2007).  These include:  "(1) plaintiff's choice of forum, (2) the situs of material events, (3) the relative ease of access to sources of proof in each forum including the court's power to compel the appearance of unwilling witnesses at trial and the costs of obtaining the attendance of witnesses, [and] (4) convenience to the parties—specifically, their respective residences and abilities to bear the expense of trial in a particular forum."  *Id.* (quoting *Von Holdt v. Husky Injection Molding Sys., Ltd.,* 887 F. Supp. 185, 188 (N.D. Ill. 1995)).  Plaintiffs have failed to demonstrate that any of these factors ***clearly*** favor transfer.  *See Coffey*, 796 F.2d at 219-20.

1.     A plaintiff's choice of forum is generally entitled to deference, *Alcon Mfg., Ltd. v. Apotex, Inc.*, 2007 WL 854026, at *2 (S.D. Ind. Mar. 14, 2007), and Plaintiffs overwhelmingly ***chose*** the Southern District of Indiana.  Except for a relatively small subset of cases, their cases weren't transferred here by the JPML.  Plaintiffs directly filed them here, in the Southern District.

- 18 -

And they did so, importantly, without a direct-filing order.  As we discussed earlier, a direct-filing order provides that plaintiffs may file their cases directly in the MDL court without having to file them first in their home districts only to be transferred to the MDL.  *See*, *e.g.*, *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 903–04 (E.D. La. 2007).  A direct-filing order also typically provides that upon completion of pretrial proceedings, the MDL court will transfer direct-filed cases to an appropriate jurisdiction.  *See*, *e.g.*, *id.*  Here, without filing their cases pursuant to a direct-filing order, the plaintiffs had no guarantee their cases would be transferred to their "home districts" later.  They took this chance knowingly, and therefore they can hardly complain if their cases are not transferred to their home districts now.

Moreover, motions to transfer are typically filed by defendants.  The deference courts give to a plaintiff's choice of forum is reduced when the plaintiff seeks to change a venue that the plaintiff chose in the first place.  *See Depianti v. Jan-Pro Franchising Int'l, Inc.*, 2016 WL 4771056, at *3 (D. Mass Sept. 13, 2016) ("The presumption carries less weight when a plaintiff files a case in one forum and subsequently seeks to transfer it to another."); *Samaan v. St. Joseph Hosp.*, 685 F. Supp. 2d 163, 168 (D. Me. 2010) (denying transfer where plaintiff failed to explain reasoning for desired changed in forum); *Warner-Lambert Co. v. Apotex. Corp.*, 2001 WL 854854, at *2 (N.D. Ill. July 27, 2001) (holding that because the plaintiff chose "the forum in the first place" he  had the burden to "demonstrate a change in circumstances that has occurred since the filing of the action which warrant a change of venue."); *James v. Daley & Lewis*, 406 F. Supp. 645, 648 (D. Del. 1976) (also requiring the plaintiff to demonstrate "change in circumstances since the filing of his suit").

At any rate, "when [a] plaintiff sues outside of his home forum," as most of the Plaintiffs have done here, "that choice is given less weight, and the location of defendant's residence

- 19 -

becomes more important in determining the convenience of the parties." *Alcon Mfg., Ltd*, 2007 WL 854026, at *2.  Cook of course is headquartered in Indiana.  *See* Defs. Am. Ans., Dkt. 8080, ¶ 24.  So however one looks at it, whether from the plaintiffs' perspective or the defendants', this factor favors keeping the case here, in the Southern District.

      2.      The Southern District of Indiana is also the situs of events material to these cases. As Plaintiffs themselves have alleged in their master complaint:  "A substantial amount of activity giving rise to the claims occurred in this District, and Defendants may be found within this District."  Master Compl., Dkt. 213, ¶ 28.  It may well be that the filters were placed by doctors at hospitals in other districts, but these cases aren't medical malpractice cases; they're product liability cases, making Cook's world headquarters—"the center of the accused activity"—the preferred forum.  *See In re Recombinant DNA Tech. Patent & Contract Litig.*, 1994 WL 270712, at *31 (S.D. Ind. Dec. 22, 1993) (quoting *S.C. Johnson & Son, Inc. v. Gillette Co.*, 571 F. Supp. 1185, 1187 (N.D. Ill. 1983)).  This factor therefore also favors keeping the cases in Indiana.

      3.      When they moved to create the MDL, Plaintiffs likewise conceded that "[t]he evidence necessary in these matters will be found in th[is] district," and that "[m]any and perhaps most of the corporate witnesses and documents will be located in the district . . . ."  Ex. A. at 8. Courts often consider the relative convenience of the witnesses as the most significant of the relevant factors.  *See Berry Plastics*, 2013 WL 772871, at *6.  In evaluating this factor, courts examine the "residence of the witnesses, the cost of obtaining their attendance, the nature of their potential testimony, and the availability of compulsory process for nonparty witnesses."  *Id*. (quoting *Utley v. N. Am. Van Lines, Inc.*, 2002 WL 31431482, at *2 (S.D. Ind. Oct. 3, 2002)).  "This analysis is not merely a numbers game: what is significant is the substance and materiality of potential

US.123392922

witnesses' testimony." *Id.* (quoting *Somers v. Flash Tech. Corp. of Am.*, 2000 WL 1280314, at *3 (S.D. Ind. Aug. 25, 2000)).

Plaintiffs provide no evidence at all on "the substance and materiality" of the potential witnesses' testimony in these cases; they make no effort to pinpoint who precisely they would call at trial, what they would say, or where exactly they're from.  Though some witnesses would be shared across cases, this is inherently a case-specific inquiry that Plaintiff do not—and, indeed, cannot—establish in their global motion.  "If the moving party merely has made a general allegation that necessary witnesses are located in the transferee forum, without identifying them and providing sufficient information to permit the district court to determine what and how important their testimony will be, the motion to transfer should be denied."  15 WRIGHT & MILLER § 3851; *see also Relational, LLC v. TDMK, LLC*, 2008 WL 2704757, at *2 (N.D. Ill. July 7, 2008) (The movant "forfeits his claims of witness inconvenience by failing to specifically identify any witnesses or the general relevance of their testimony.").  And, again, while it may be that the medical witnesses are in Plaintiffs' home states, this doesn't help them.  Not only are these cases not primarily about the quality of medical care the plaintiffs received—the "paramount issues concern[] the design, manufacture, testing, and marketing of . . . Cook's IVC filter," *In re Cook Med., Inc., IVC Filter Marketing, Sales Practices, and Prod. Liab. Litig.*, 53 F. Supp. 3d 1379, 1380 (J.P.M.L. 2014) (internal markings and citation omitted).  Thus, the transfer of all cases would accomplish nothing more than shifting the inconvenience of attending an out-of-state trial from a small troupe of side players (the medical witnesses) to a larger troupe of critical players (Cook employees).

When witnesses will have to travel either way, whether the case stays or goes, the law does not favor transfer.  *See*, *e.g.*, *Berry Plastics Corp.*, 2013 WL 772871, at *6; *Elanco Animal Health*, 2008 WL 4099882, at *4; *Rapier*, 2007 WL 3102148, at *4; *Alcon Mfg., Ltd.*, 2007 WL 854026,

at *3.  At all events, even giving Plaintiffs the benefit of the doubt about the importance of their home-state medical witnesses, Plaintiffs cannot reasonably dispute that testimony from witnesses who made, marketed, and sold the products at issue—many of whom are in Indiana—is of any *lesser* importance than the testimony Plaintiffs would offer from any healthcare provider.  And this does not even account for Cook's Danish witnesses or the parties' expert witnesses, who hail from all over the country, and who will almost certainly be inconvenienced no matter where these cases are litigated.  *See Goodman-Manaster & Co. v. Kamerdin*, 1986 WL 3036, at *5 (N.D. Ill. Feb. 27, 1986) (noting the location of experts should be considered in a transfer analysis).

If the live witness list from the *Hill* trial is any indication of who will be called to testify in these cases, it only tends to confirm transfer would merely shift the inconvenience from one set of parties and witnesses to another.  *See Hill* Combined Live Witness List, attached as **Exhibit C** (noting that four Indiana-based Cook witnesses testified live and also that there were more California-based experts that flew in for the trial than witnesses from Florida, Plaintiff Hill's home state).  As the Court may recall, the experience in the *Brand* case was essentially the same, with numerous witnesses called on both sides and experts flying in from all over the country.  Nonetheless, the highest concentration of witnesses was again from Indiana.  As with the *Hill* case, Plaintiff Brand's treaters testified by clips from their video depositions that were played for the jury and were not called live, as has become commonplace in personal injury products liability cases.

As for ease of access to the relevant documents, records can easily be copied and sent from one location to another, *Rapier*, 2007 WL 3102148, at *3, and in fact already have been, as the out-of-state plaintiffs with the help of their out-of-state counsel have produced their medical records to in-state defense counsel.  This factor doesn't weigh for or against either side.  *See id*.

At bottom, then, the relative ease of access to sources of proof – both as to witnesses and documents—counsels against transfer.  At most, this factor is a wash, and a wash doesn't favor shipping a case to another district, *see Berry Plastics Corp.*, 2013 WL 772871, at *6, let alone 5,000-plus cases to nearly all, if not all, 94 federal districts.

        4.      Finally, as for the convenience of the parties, the plaintiffs "have failed to provide the court with any evidence demonstrating that they would be unable to bear the expense of trial or that financial hardship would result if they were required to litigate this case outside their home forums." *Rapier*, 2007 WL 3102148, at *3.  After all, it was Plaintiffs who chose to sue in Indiana in the first place, so they can hardly complain about the expense of trying their cases here—an expense they aren't personally bearing anyway.  *Cf.* Dkt. 9099, Order Setting Settlement Conference and Related Deadlines (requiring all stakeholders to attend global settlement conference in person, including representatives of Plaintiffs' third-party funders).  As with the non-party witnesses, all transfer would do is to shift whatever inconvenience there is for one set of individuals to another, which does not justify transfer.  15 WRIGHT & MILLER § 3848.  "Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient."  *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964).

**C.**    **Plaintiffs have failed to demonstrate the interests of justice favor transferring these cases to proposed transferee districts throughout the country.**

The Court also considers "the interest of justice," which "embraces traditional notions of judicial economy, rather than the private interests of the litigants and their witnesses." *Berry Plastics*, 2013 WL 772871, at *7 (quoting *Law Bulletin Publ'g, Co. v. LRP Publ'ns, Inc.*, 992 F. Supp. 1014, 1019 (N.D. Ill. 1998)).  This factor focuses on the (1) the transferee forum's familiarity with the governing law, (2) the local interest in deciding local controversies at home, and (3) the congestion in the alternative courts.  *Id.*  In evaluating these factors, it is important to remember "[t]he

'interests of justice' favors consolidated litigation." *Kendall U.S.A., Inc. v. Cent. Printing Co.*, 666 F. Supp. 1264, 1269 (N.D. Ind. 1987) (citing *Van Dusen,* 376 U.S. at 643-46; *F.T.C. v. Mac-Arthur,* 532 F.2d 1135 (7th Cir. 1976)).  This is so because consolidated litigation "facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoid[s] duplicitous litigation and inconsistent results."  *Keene v. McKesson Corp.*, 2015 WL 9257949, at *4 (N.D. Cal. Dec. 17, 2015) (quoting *Puri v. Hearthside Food Sols.*, 2011 WL 6257182, at *3 (C.D. Cal. Dec. 13, 2011)).  That was the whole point of creating the MDL in the first place:  because centralization would "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary."  *In re Cook Med., Inc.*, 53 F. Supp. 3d at 1380.  "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [section] 1404(a) was designed to prevent."  *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960).

This all strongly suggests that scattering these cases to the four winds, as Plaintiffs would have this Court do, would not serve the interests of justice.  This Court has become intimately familiar with the highly technical engineering and medical issues at stake in this litigation and as a result would resolve them more efficiently than would several disparate courts, avoiding the unnecessary duplication of efforts by different judges in different jurisdictions, as well as the attendant danger of inconsistent results.

1.      The fact that Plaintiffs' product liability claims may be governed by their home-states' laws does not counsel in favor of transferring these cases.  First of all, there is no reason to believe other products liability laws are so complex that this Court could not properly apply them without difficulty.  *See*, *e.g.*, *Bates v. J.C. Penney Co.*, 624 F. Supp. 226, 228 (W.D.N.C. 1985)

- 24 -

(saying this about Florida product liability law).  This Court has already proved more than competent to apply the product liability laws of other states, as "federal judges routinely apply the law of a State other than the State in which they sit." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 67 (2013).  In this very MDL, the Court has already applied the full spectrum of Florida and Georgia product liability and tort law in the *Hill* and *Brand* bellwethers, respectively; Illinois statute-of-limitations law in *Gage* (Dkt.7715); Texas, Tennessee, and Georgia statute-of-repose laws; and Texas express-warranty law (Dkt. 4918).

Second of all, Plaintiffs engage in no choice-of-law analysis, assuming that their home states' product liability laws will govern.  But even if we accept that assumption as correct, those laws do not necessarily govern all issue in these cases.  On the contrary, in *Brand* the Court determined that Plaintiffs' punitive damages claims are governed by Indiana law, and not Georgia law, which governed the product-liability claims.  *See Brand* Feb. 1, 2019, Trial Tr. at 4388:8-14.  That some issues in the cases are governed by Indiana substantive law nullifies any perceived perception that Plaintiffs' home federal districts would be better equipped to apply the governing substantive law.  In any event, as noted above, this Court like other MDL courts before it has applied the substantive laws of several states already and can continue to do so as necessary.

2.     The local interests in this case do not favor either party.  Plaintiffs' home states "ha[ve] an interest in protecting [their] citizens and maintaining [their] public policies while Indiana has similar interests in overseeing the conduct of Indiana corporations." *Berry Plastics Corp.*, 2013 WL 772871, at *7.

3.     Finally, as to congestion in the alternative courts, this factor is not particularly useful to the analysis given the way in which MDL cases are litigated and tried.  Nonetheless, a review of the Federal Court Management statistics demonstrates that the Southern District of Indiana is

US.123392922

roughly in the top-third of district courts in median time moving cases from filing to trial, and from filing to disposition.[6]  In particular, the median time from filing to trial in the Southern District of Indiana for civil cases as of December 2018 was 25.9 months, while the median time from filing to disposition was 8.2 months.  *See id.*  This placed the Southern District of Indiana as the 27th quickest court for a civil case to reach trial and 35th quickest to marshal a case through disposition, out of the 94 federal district courts.  *See id.*  Thus, while some cases would be transferred to courts with potentially shorter lengths of time toward trial or disposition, roughly two-thirds of the cases would be transferred to courts with slower moving dockets based on these statistics.  These types of discrepancies are insufficient to warrant transfer.  *See Berry Plastics*, 2013 WL 772871, at *7 (holding that although the median time from filing to disposition and from filing to trial were slightly faster in the transferee district, this discrepancy was not sufficient to warrant transfer).  In any event, the data slightly favor retaining the cases here and "the fact that the other cases arising from the transaction or event are in the same district from which transfer of the action is sought obviously is [also] an argument ***against*** transfer."  15 WRIGHT & MILLER § 3854 (emphasis added).

**D.    The interests of justice further strongly favor keeping the cases central-ized before this Court instead of creating various mini-MDLs around the country.**

Finally, Plaintiffs' attempt to transfer all cases by a global motion is inherently problematic because they fail to provide the Court with any tangible evidence in support of their argument for transfer, resorting to general assumptions, such as that "[t]he remaining case-specific discovery can be more efficiently handled in the venue where the Cook product was implanted," and that "all

---

[6]     U.S. District Courts – Combined Civil and Criminal: Federal Court Management Statistics—Comparison Within Circuit, *available at* https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2018.pdf.  Although this report is not numbered, the statistics for the Southern District of Indiana are located on the 51st page of the PDF.

or the majority of the nonparty case-specific witnesses (primarily treating physicians) reside or practice." Pl. Br. at 8. While that is potentially true in the vacuum of an individual case, it is far more convenient to keep the cases centralized here before this Court (which has become experienced in this litigation) than it is to create dozens of mini-MDLs by shipping the cases all over the country. Indeed, based on the May 24, 2019 data, there are 427 cases in the MDL filed by residents of California, 409 filed by Floridians, 350 by Texans, 347 by Pennsylvanians, 221 by New Yorkers, as well as 387, 249, and 192 by our neighbors in Ohio, Michigan, and Illinois, respectively. Since most of these cases were originally filed in this Court, transferring them *en masse* as Plaintiffs ask would result in sending more than a hundred cases to some districts in these large, highly populous states.

In recent years, a body of appellate law has developed acknowledging the propriety of an MDL court to consider MDL-specific circumstances and the MDL itself as a factor when addressing factor tests on issues presented in individual cases. For example, as the Fifth Circuit noted in the *FEMA Trailers* litigation when it addressed whether a motion to dismiss without prejudice should be converted to one with prejudice:

> We do not speculate on whether the motion[] . . . to dismiss without prejudice might have had some merit had this been ordinary two-party litigation. The challenge to case administration arose here from the court's obligation to manage thousands of claims against numerous defendants in an efficient and expeditious manner that would best serve justice for both plaintiffs and defendants. ***That multiparty background heavily influenced the trial court and permeates this court's review.***

*In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 628 F.3d 157, 161 (5th Cir. 2010) (emphasis added). Several circuit courts of appeal, including the Seventh Circuit, have noted that the unique considerations inherent to the MDL process, for example, permit MDL courts to enforce their discovery orders, including dismissing cases, to ensure efficient management and resolution of the litigation at large. *See Dzik v. Bayer Corp.*, 846 F.3d 211, 216 (7th Cir. 2017) (holding that the

- 27 -

discretion afforded to MDL courts "extends to dismissing individual suits for noncompliance with the court's orders, including discovery orders"); *Freeman v. Wyeth*, 764 F.3d 806, 810 (8th Cir. 2014) (holding that case-specific "interest[s] must be weighed against the unique problems an MDL judge faces, especially when the MDL litigation involves hundreds of attorneys representing thousands of clients . . ." (quoting *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 867 (8th Cir. 2007)); *In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217, 1231 (9th Cir. 2006) (applying same idea in the discovery context).

Here, it is appropriate for the Court as part of its "interests of justice" analysis to consider the MDL itself and its organizing, centralizing force as a preferred alternative to transferring cases to literally every corner of the country.  As the *FEMA Trailers* court explained, this is not "ordinary two-party litigation," and the propriety of a global motion to transfer 5,000-plus cases cannot be addressed without considering the logistical nightmare that would be created by transferring all cases.  Because it is a no-brainer that it is more efficient and orderly to stay the course in this Court instead of creating dozens of mini-MDLs around the country, the Court should deny Plaintiffs' request to transfer all cases.

**III.     Remand and Transfer, As Applicable to Individual Cases, Are Premature Because There Are Numerous Common Pretrial Tasks to Complete, Including Trying More Bellwethers Under the Court's New Bellwether Plan and Screening Protocol.**

In their brief, Plaintiffs claim that "[a]ll pretrial proceedings in this MDL are over" because in their view "[a]ll common fact discovery and expert discovery have been completed," and the "Court has ruled on numerous *Daubert* motions and [Cook's] preemption [motion]."  Pl. Br. at 1.[7] Once more, Plaintiffs are wrong both legally and factually.

---

[7]     Cook notes that Plaintiffs omit the fact that they have been seeking additional discovery and depositions in the parallel state court litigation.  While styled as case-specific discovery for those cases, the substance of much of that discovery is akin to additional common discovery.

First off, the Court has no obligation to transfer the originally filed cases for the reasons discussed above.  The only law Plaintiffs cite for the proposition that this "ripeness" standard applies to transferred cases are examples of other MDLs that have transferred direct-filed cases at or near the conclusion of pretrial proceedings.  *See* Pl. Br. at 7.  But those are all examples of MDLs that (1) were venued in a place that was not necessarily proper in all cases like the Southern District here, and (2) had direct-filing orders that contemplated automatic transfer at the conclusion of pretrial proceedings.  But setting those issues aside, "the District Judge [in ruling on a motion to transfer] has a broad discretion, but in exercising this discretion he is limited in his consideration to the three factors specifically mentioned in § 1404(a), and he may not properly be governed in his decision by any other factor or consideration."  *Chicago, R. I. & P. R. Co. v. Igoe*, 220 F.2d 299, 302 (7th Cir. 1955).  To apply a different set of criteria—such as whether the case is "ripe" for transfer—would be to violate binding precedent, not to mention the language of the controlling statute.

In any event, in an MDL, "pretrial proceedings" are much broader than Plaintiffs suggest, as they encompass a host of additional tasks common to all or large subsets of cases that have not been finished.  Moreover, the Court has not tried any Tulip or "product-in-place"/disputed injury cases, as both *Hill* and *Brand* were Celect cases.  In short, Plaintiffs' motion to remand and transfer should be denied because the common pretrial work of this MDL court is far from complete.

A.     **The pretrial work of an MDL court includes much more common work than presiding over company discovery as Plaintiffs narrowly suggest, and encompasses efforts to dispose of meritless cases and resolve cases with merit.**

The statutory grant of jurisdiction for multidistrict litigation allows civil actions involving one or more common questions of fact to be transferred to a single district court before a single judge for "coordinated or consolidated pretrial proceedings."  28 U.S.C. § 1407; *see also*

*DeLaventura v. Columbia Acorn Trust*, 417 F. Supp. 2d 147, 148 (D. Mass. 2006) ("Since all 94 district courts follow identical rules concerning discovery and trial preparation, one excellent innovation in civil practice is the idea that a single judge might manage a number of 'related' cases, getting them all ready for trial in a uniform manner and returning the 'trial-ready' cases from whence they came [i.e. the transferor courts] for trials before local juries.").

Contrary to the narrow view expressed in Plaintiffs' motion for remand and transfer, the plain English meaning of the term "pretrial, as an adjective [quite literally], means before trial" and, thus, "all judicial proceedings before trial are pretrial proceedings." *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 494 (J.P.M.L. 1968). In the medical device product liability context here, that includes *Daubert* and summary judgment proceedings. The MDL court's authority to manage the consolidated cases is "'broad' and it necessarily encompasses issuing pretrial orders, resolving pretrial motions (including discovery motions, motions to amend, motions to dismiss, motions for summary judgment and motions for class certification, and attempting to facilitate settlement." Fallon, 82 Tul L. Rev. at 2328 (citing *In re Plumbing Fixture Cases*, 298 F. Supp. at 494). Remand is premature if these tasks have not all been completed, because an MDL court should remand only "trial-ready cases." *DeLaventura*, 417 F. Supp. 2d at 148. The JPML agrees, advising MDL judges that "[y]our ultimate responsibility is to resolve pretrial issues in a timely and expeditious manner. This responsibility certainly includes resolution of jurisdictional issues, important evidentiary disputes, class certification issues, and, perhaps most important, motions to dismiss and for summary judgment." JPML & Federal Judicial Center, *Ten Steps to Better Case Management, a Guide for Multidistrict Litigation Transferee Judges* § X(a)  (2d ed. 2014), available at https://www.fjc.gov/sites/default/files/2014/Ten-Steps-MDL-Judges-2D.pdf.

Moreover, the DUKE LAW MANUAL prescribes several guidelines and best practices that highlight the need to complete various tasks that have not yet been fully realized in this Court. Specifically, the DUKE LAW MANUAL recommends:

- Best Practice 1B(iii):  "The transferee judge should give priority to deciding issues broadly applicable to multiple claimants in the MDL." (p. 5);

- Guideline 14:  "The transferee judge should endeavor to use the MDL forum to resolve or streamline the litigation before remand to the district courts." (p. 94);

- Best Practice 14A:  "Remand of remaining cases to transferee courts should not begin until the court has taken steps:  (1) to preside over discovery, *decide on motions, and conduct such trials that are needed to position the cases for potential resolution*; (2) to *explore and consider all possibilities for resolution of the cases*; and (3) to pre- pare cases that do not resolve for trial in the transferor courts." (p. 94 (emphasis added));

- Best Practice 14B:  "In most situations, the time to raise settlement will be after suffi- cient time has passed to ensure a degree of certainty about both the nature and scope of the claims at issue."[8] (p. 95);

- Best Practice 14B(i):  "The court is usually uniquely situated to play a role in facilitat- ing settlement discussions." (p. 97);

- Best Practice 14D(i):  "In preparation for remand, *the court should consider using Lone Pine proceedings or other methods to cull meritless cases and ensure that only the viable cases may ultimately be eligible for remand*." (p. 104 (emphasis added));[9]

- Best Practice 14E(ii):  "The transferee judge should consider how, in the context of the specific litigation, remand procedures may minimize the burdens on the transferor courts and litigants after cases are transferred and remanded."

---

[8]     As the Court is aware, filings in the Cook MDL are rarely ever under 100 cases a month. Moreover, in recent months, filings have been at a higher pace harkening back to the filing levels in 2015 and 2016.

[9]     As the DUKE LAW MANUAL explains, "*Lone Pine* orders require each plaintiff in a mass tort case to submit a report setting forth evidence sufficient to document the basis for his or her personal-injury claims." *Id.* at 104 (citing *Lore v. Lone Pine Corp.*, 1986 WL 637507 (N.J. Super. Law Div. Nov. 18, 1986)).  The DUKE LAW MANUAL notes that MDL "courts are increasingly using *Lone Pine* orders to screen meritless cases . . . ." *Id.* at 95.

As judged against these recommendations, this MDL's work is not yet complete, and contrary to Plaintiffs' claims, the cases are far from being "trial-ready."[10]  Indeed, the Court has only recently entered its Case Categorization and Screening Order (Dkt. 9322) to begin screening meritless cases.  As demonstrated by the Court's recent orders dismissing noncompliant cases (Dkt. 10622), Category 1 cases (Dkt. 10588), and the pending motion on Category 2 cases (Dkts. 10856-57),[11] the categorization process is helping to cull the MDL of some of its most deficient cases.  This process has just started, however.  And there are many other issues affecting large groups of cases that the Cook Defendants intend to present to the Court over the coming months.  Per the best practices recommended by the DUKE LAW and COMPLEX LITIGATION MANUALS, these are all issues the Court should review and rule upon before even considering remand and transfer.  In no particular order, those issues include (among others):

- **Whether certain cases are barred by the applicable statute of repose.**  There are over 700 cases in the MDL that were filed more than 10 years after the date of placement.  Several states, including Indiana where the development and marketing of the IVC filters was centered, have statutes of repose that categorically bar product liability claims after a certain time, typically 10 years.  Moreover, the relative percentage of these cases is growing, because Plaintiffs keep filing cases involving filters sold in the early and mid-2000s.  The Court has already dismissed several cases barred by the statute of repose (Dkt. 4918), and Cook intends to raise the issue again in many other cases.  These motion(s) will require complex choice-of-law analys(es) and would be best addressed by this Court, instead of risking inconsistent rulings by dozens of courts upon remand or transfer.

- **Whether certain cases are barred by the applicable statute of limitations.**  In similar fashion, Cook estimates that a significant number of MDL cases are time-barred by the applicable statute of limitations.  For example, Cook prevailed on the statute of limitations

---

[10]      Similarly, the MANUAL FOR COMPLEX LITIGATION provides that "Litigation is generally considered mature if through previous cases (1) discovery has been thorough, producing a consensus that the available important information has been provided, (2) a number of verdicts have been received indicating the value of claims, and (3) plaintiffs' contentions have been shown to have merit."  MANUAL FOR COMPLEX LITIGATION p. 359, § 22.314.  "In a typical mature mass tort, little or no new evidence is likely, appellate review of novel legal issues has been completed, and a full cycle of trial strategies has been explored."  *Id.*  Under this definition, the Cook MDL cannot be considered a "mature mass tort" for the reasons discussed in this Section.

[11]      There are also over 25 pending stipulations to dismiss roughly 200 Category 2 cases.

- 32 -

under Illinois law in the *Gage* bellwether (Dkt. 7715), and Cook is opposing multiple motions to vacate and/or cases dismissed as noncompliant with categorization because the belated records provided are facially time-barred in some cases. These examples are not outliers. Cook intends to move for dismissal of time-barred cases over the coming months. Again, it makes more sense for this Court to deal with these issues.

- **Whether certain cases should be dismissed for lack of subject matter jurisdiction.** There are some cases filed by Indiana residents that lack diversity jurisdiction but have not yet been dismissed. This is obviously an issue this Court, and not another, should address.

- **Whether certain cases should be dismissed because the plaintiffs suffered no injury.** Cook's review of the categorization forms and records indicates, for example, that many claimed "perforations" may not meet the scientific community's understanding and definition of that phenomenon. Input from medical professionals will likely be necessary to verify perforation claims where the parties' respective counsel disagree on what the records show. Given that the Court ordered categorization in the first place, it should continue to preside over any further developments in that process. This would help ensure that only viable, trial-ready cases are remanded at the conclusion of proceedings.

- **Whether certain cases should be dismissed for failure to plead with particularity.** In its pending motion to dismiss Category 2 claims (Dkts. 10856-57), Cook has argued that Plaintiffs have not pled their state consumer protection claims with the particularity required by Rule 9(b). This is a common, threshold issue in all cases that this Court should resolve before remanding any cases.

- **Whether certain warranty claims fail as a matter of law.** Most states have a four-year statute of limitations for warranty claims that is triggered by the sale or delivery of the product. Cook's analysis indicates that about 70% of the cases were filed more than four years after the placement of the product (logically, the latest possible sale or delivery date), indicating that the vast majority of these claims are time-barred. Moreover, Cook prevailed on the warranty claims in *Gage* by demonstrating that the warranty period was contractually reduced to one-year and a day (Dkt. 7809), which only increases the likelihood that most warranty claims are time-barred. Warranty claims in some states may be abrogated by other claims or may require pre-suit notice or privity. Whether requirements such as timeliness, notice, and privity are met is, again, an issue this Court is best positioned to address.

These issues are usually avoided in standalone cases if counsel adheres to their duty to screen out meritless claims. *See* Fed. R. Civ. P. 11(b). The unintended but all-too-common consequence of centralization in an MDL court, and the adoption of streamlined filing procedures that go along with that centralization, is that plaintiffs' counsel are incentivized to set aside their typical case-screening duties by the prospect of a global settlement. As one recent MDL court explained:

US.123392922

"Some lawyers seem to think that their cases will be swept into the MDL where a global settlement will be reached, allowing them to obtain a recovery without the individual merit of their case being scrutinized as closely as it would if it proceeds as a separate, individual action." *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, 2016 WL 46704827, at *1 (M.D. Ga. Sept. 7, 2016). This MDL has been particularly plagued by such behavior, as the Court recognized by entering its recent Categorization and Screening Order (Dkt. 9322), as implemented by other orders, including the new Bellwether Plan (CMO-25). Thus, as the best practices in the DUKE LAW MANUAL indicate, case-screening efforts are necessary before remand or transfer become appropriate, if they are appropriate at all.

Whether Cook ultimately prevails on the motions mentioned above or not, they should be briefed and heard in this Court before any serious consideration is given to mass remand and transfer of cases. Cook called for and participated in the October 2018 settlement conference in good faith. That conference confirmed that serious settlement negotiations were not yet possible because Plaintiffs were demanding significant amounts to resolve, for example, asymptomatic product-in-place claims. The categorization and motion practice discussed here can help cull the MDL of meritless cases to a point where revisiting global resolution talks may become fruitful. In any event, the common tasks outlined here are all "pretrial" tasks yet to be done under a common sense understanding of that term as its used in section 1407. *See* JPML, *Ten Steps to Better Case Management* at § X(a) (explaining that an MDL court's "perhaps most important" responsibility is resolving "motions to dismiss and for summary judgment").

Moreover, Plaintiffs themselves agreed these steps would be necessary and their leadership participated in developing the categorization framework. As Plaintiffs said in their brief on the issue: "These non-symptomatic injury cases, failed retrieval cases, irretrievable filter cases, and

anticoagulation cases [which they agreed had significant numbers] will need to be tested (through motions to dismiss and for summary judgment) and tried . . . to determine whether they involve valid and compensable injuries." Pl. Resp. to Cook Defs. Mot. for Screening Order and Bellwether Selection Plan, Dkt. 8591 at 2.

Remand therefore should not be considered until these tasks are complete.

**B.    The Court should continue with its new plan to try more bellwether cases.**

To gauge valuation of cases and assess their merits, modern MDL practice requires several trials of representative cases.  Trials of bellwether cases "allow[] a court and jury to give the major arguments of both parties due consideration without facing the daunting prospect of resolving every issue in every action," thereby permitting the parties to evaluate the "handful of crucial issues on which the litigation primarily turns."  *In re MTBE Prods. Liab. Litig.*, 2007 WL 1791258, at *2 (S.D.N.Y. June 15, 2007); *see also* Fallon, 82 Tul. L. Rev. at 2338 ("Bellwether trials thus assist in the maturation of any given dispute by providing an opportunity for coordinating counsel to organize the products of pretrial common discovery, evaluate the strengths and weaknesses of their arguments and evidence, and understand the risks and costs associated with the litigation."). Judge Fallon accomplished this goal in the Vioxx and Propulsid MDLs by "limit[ing] the attorneys' focus to approximately four to five variables" that were key to those litigations.  *Id.* at 2346. This Court, through the Categorization and Screening Order has done the same by dividing the cases into seven categories and identifying Category 5 and Category 6 cases as the case types where bellwether trials are most necessary.  Armed with information about potential "value of the cases as reflected by the jury verdicts" rendered in the bellwether trials, *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997), the parties and the Court can determine whether resolution of the wider litigation is attainable in the MDL Court itself, thus eliminating the need to remand

- 35 -

and try hundreds of cases at enormous expense and inefficiency. The verdicts are necessary because they provide "guidance on how similar claims may fare before subsequent juries." Fallon, 82 Tulane L. Rev. at 2338.

Here, the Court has tried only two bellwether cases, and those two cases are representative of only a relatively small proportion of the MDL caseload as a whole. Both of those cases involved the Celect and were, under the terminology of the categorization process that the Court subsequently adopted, Category 7 cases. The *Hill* case involved claimed injuries to the duodenum, which is a more serious medical symptomology than the majority of alleged perforation claims, which are largely limited to claims of caval perforation only or do not involve perforation of adjacent structures to the extent seen in *Hill*. Similarly, *Brand* involved open removal surgery, which is perhaps the most serious injury claim in this litigation but also one of the rarest case types in the MDL.

Therefore, the parties need more trials to figure out the value of more types of cases. Indeed, the Court agreed and that was the impetus behind its adoption of the new Bellwether Plan. As the Court said over a year ago, "[w]e really need to address the product-in-place cases here somehow." Feb. 5, 2018 Tr. at 53:7-16. This, according to the Court, required trial of "two or three product-in-place cases," in addition to *Hill* and *Brand*, for a total of at least four bellwethers. *Id*. Judge Fallon notes in his article that "serious settlement discussions" began in the Vioxx MDL with the court's encouragement only after ***six*** bellwether trials in the MDL and several state court trials. Fallon, 82 Tul. L. Rev. at 2336. Yet, as of this filing, Plaintiffs are attempting to use *Lexecon* to block efforts to work up for trial the Category 5 and 6 "product-in-place" cases that the Court determined needed to be tried and that they themselves said had to be tried to ascertain their value. *See* Dkt. 8591 at 2 (plaintiffs' briefing regarding the bellwether plan stating that asymptomatic and

- 36 -

irretrievable filter claims needed to be tested through motion practice and trials to determine their value).  The Court should reject Plaintiffs' attempt at abandoning the Bellwether Plan that they agreed was necessary and helped develop.

Nor can resolution be attempted when the parties, as here, have significant differences not just on liability theories and defenses, and the accompanying disputes over causation, but on whether the medical phenomena presented even constitute legally cognizable or compensable injuries.  For example, consider Category 5 cases where Plaintiffs claim an injury on the basis of a failed retrieval attempt.  Plaintiffs view that as a compensable injury.  Cook does not.  Its filters are permanent filters with an option for retrieval; Cook does not guarantee retrieval, and, regardless, it is a medical fact that likelihood of retrieval decreases over time.  This dispute can only be resolved through bellwether trials.  This would allow the Court to weigh in on the relevant *Daubert* issues and for juries to weigh in on the relevant liability and damages issues.

The Court has also not tried any Tulip cases either.  Although the ratio of Tulip to Celect cases has been approximately equal throughout the litigation, and there are some 2,700 Tulip cases currently pending, the one Tulip case that was supposed to be tried (*Gage*) was resolved on summary judgment on statute-of-limitation grounds.  As such, the Court never had the opportunity to rule on all of the *Daubert* issues in a Tulip case, and the parties have yet to see how a jury would assess liability issues in the context of a Tulip case.  The current Bellwether Plan addresses this by requiring two Tulip trials and one more Celect trial, *see* CMO-25, ¶ 11, and the plan should be given time to play out.

While the MDL offers the possibility of global resolution, serious settlement efforts cannot occur without enough information about how juries would address liability and damages issues if the cases were actually tried.

- 37 -

### C.      This MDL is still on track for timely completion.

In their brief, Plaintiffs note that the MDL has been pending for 4.5 years.  Pl. Br. at 4.  But the delays and lack of bellwether trials that have plagued this MDL are Plaintiffs' own doing, not the Court's, and not Cook's.  Categorization and "product-in-place" trials would not be necessary if Plaintiffs were adhering to Rule 11's mandate to pursue only meritorious cases.  And in any event, despite the delays caused by Plaintiffs' onslaught of filing "no injury" cases without screening, the length of this litigation is still in line with other MDLs of its kind.  In fact, focusing just on active product liability MDLs, there are 31 currently pending MDLs with earlier origination dates than the Cook Filter MDL.[12]

The reality is that complex litigation of this kind takes a long time to resolve.  Furthermore, though Plaintiffs complain about the prejudice incurred in delayed resolution of this MDL, that prejudice is not borne by Plaintiffs alone; Cook's time and resources have been wasted litigating numerous meritless cases that likely never would have been filed as standalone cases or even as MDL cases if Plaintiffs' counsel paid greater attentions to their obligations under Rule 11.  In sum, Plaintiffs' counsel imposed the very prejudicial delays on Cook that they now complain are suffered by their clients, and they now cite that self-created delay in their attempt to avoid the bellwether process and secure premature remand and transfer of all cases.  The parties and the Court cannot recapture time and resources that were wasted by Plaintiffs' poor screening.  But the proper response is not to complain about the waste and alleged inefficiencies and then exponentially increase them through mass remand and transfer of 5,000-plus cases.  The proper response is to

---

[12]     *See* JPML, "Pending MDLs By Docket Type", Statistical Report, MDL Statistics Report, available at https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_Type-May-15-2019.pdf.

- 38 -

proceed with the sound plan the Court has developed to deal with these issues:  categorization, screening, and more bellwethers.

Indeed, that is the only path forward.  As this Court has already suggested, absent a global settlement, cases filed directly in the MDL will remain here indefinitely.  *See* Sept. 20, 2018 Hearing Tr. at 42:16-20.

## CONCLUSION

Plaintiffs' motion to remand and transfer venue should be denied.

Respectfully submitted,


Dated:  June 10, 2019

/s/ Andrea Roberts Pierson
Andrea Roberts Pierson (# 18435-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204-1750
Telephone:     (317) 237-0300
Facsimile:      (317) 237-1000
Andrea.Pierson@FaegreBD.com

James Stephen Bennett (# 22869-02)
FAEGRE BAKER DANIELS LLP
110 West Berry Street, Suite 2400
Fort Wayne, Indiana 46802-2322
Telephone:     (260) 424-8000
Facsimile:      (260) 460-1700
Stephen.Bennett@FaegreBD.com

*Counsel for the Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

- 39 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 10, 2019, a copy of the foregoing was filed electronically and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.  Lead Co-Counsel for Plaintiffs will serve any non-CM/ECF registered parties.

/s/ Andrea Roberts Pierson

US.123392922