UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC. IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates Only to the Following Cases:

| | |
|---|---|
| Amanda Contreras, 1:16-cv-02693 | Kristi Craft, 1:17-cv-04200 |
| John F. Irving, 1:16-cv-03468 | Perry Sylvain, 1:17-cv-04339 |
| Robin Peacock, 1:17-cv-00159 | Larry Vaughan, Jr., 1:17-cv-04340 |
| Bonnie Elazab, 1:17-cv-00417 | James Cooper, 1:17-cv-04345 |
| Frank Okolish, 1:17-cv-00800 | Maureen Foley, 1:17-cv-06074 |
| Pamela Beard, 1:17-cv-01559 | Teresa Walker, 1:18-cv-00516 |
| Joshua Craig, 1:17-cv-01697 | Arthur Schermerhorn, 1:18-cv-00647 |
| Rose McNally, 1:17-cv-01853 | Galen Schatzman, 1:18-cv-01833 |
| Sandy Smith, 1:17-cv-01854 | Lillian Pezzotti, 1:18-cv-02326 |
| Stephanie Flietstra, 1:17-cv-02239 | Berkley Cullum, 1:18-cv-02739 |
| Jada Baker, 1:17-cv-02435 | Raymond Hedlund, 1:18-cv-03403 |
| Betty Bain, 1:17-cv-03085 | Beth Reese, 1:18-cv-03520 |
| Alma Rodriguez, 1:17-cv-04171 | Christine Kay, 1:18-cv-06089 |

**DEFENDANTS' OMNIBUS OPPOSITION TO
MOTIONS TO RECONSIDER DISMISSALS OF THEIR
CASES FILED BY TWENTY-SIX PLAINTIFFS**

On May 8, 2019, pursuant to the Court's Categorization and Screening Order, the Court dismissed dozens of plaintiffs' cases. *See* Order on the Cook Defendants' Second Amended Motion to Dismiss (the "Order"), Dkt. 10622. In the weeks since, numerous plaintiffs have filed motions to reconsider and/or vacate the dismissals of their cases. Initially, the Cook Defendants responded to each of these motions on a firm-by-firm basis.[1] However, as more and more plaintiffs have filed motions to reconsider and/or vacate, it has become overly burdensome for Cook to respond to each motion individually. Moreover, because all of plaintiffs' motions raise

---

[1] Cook will provide a listing of the motions that have been fully briefed as part of the Parties' agenda for the next hearing.

similar arguments, separate responses will not be particularly helpful to the Court. Accordingly, Cook now files this omnibus response in opposition to the remaining 26 motions for reconsideration and/or vacation filed by the plaintiffs identified in the caption (hereinafter "Plaintiffs").[2] Further, to the extent appropriate, Cook respectfully asks the Court to accept this omnibus response as a response to any other motions to reconsider the Order filed by plaintiffs subsequent to this filing. To the extent a subsequent filing requires a case-specific individual response, the Cook Defendants will address that through a supplemental filing.

The Court should deny the motions to reconsider filed by Plaintiffs. The Court dismissed Plaintiffs' cases on May 8, 2019 because they either did not comply with the Categorization and Screening Order at all (the "Exhibit A" cases) or did not provide any medical records in support of their categorizations (the "Exhibit B" cases). *See* Order on the Cook Defendants' Second Amended Motion to Dismiss (the "Order"), Dkt. 10622. Plaintiffs now ask the Court to reconsider and/or vacate its Order dismissing their cases on grounds of excusable neglect. They offer a number of excuses for their failure to comply with the Court's Categorization Order, all of which boil down to their attorneys' failure to monitor the docket.

Cook urges the Court to deny Plaintiffs' motions to reconsider the Order dismissing their cases for three reasons. First, the Court's Order permits re-entry into the MDL only under limited circumstances not applicable here – the occurrence of a future injury. Second, although most of the Plaintiffs style their motions as "motion[s] to reconsider," the proper procedural vehicle for the relief Plaintiffs seek in the present posture is Rule 60(b), which is an extraordinary remedy reserved for extraordinary circumstances absent here. Under Rule 60(b), mere failure on the part of counsel to stay diligent and monitor a docket is not the kind of

---

[2] Those motions appear at Docket Nos. 10703, 10885, 10923-26, 10939, 10979, 10981, 10997, 10999-11001, 11003-04, 11006-07, 11130, 11151, 11154, 11157, and 11171.

extraordinary situation that would justify relief from the Order. Indeed, notice regarding categorization was provided to Plaintiffs on no fewer than 10 occasions over a seven-month period, rendering any failure to be aware of the categorization requirement facially unreasonable. Finally, vacation of the dismissals would be futile in, at least, the cases filed by Plaintiffs Schatzman, Cooper, Rodriguez, McNally, and Smith because their claims are time-barred under applicable state laws.

**I.  The Court Did Not Give Plaintiffs a 15-Day Extension as Some Plaintiffs Assert; Therefore, Their Submissions of Categorization Forms After Dismissal Is Not Timely and Does Not Cure The Noncompliance That Led to Their Dismissals**

The Plaintiffs represented by Bighorn Law argue that this Court on May 7, 2019 "revised its order providing plaintiffs an additional 15 days, or no later than May 22, 2019, to submit" categorization forms and supporting records and they have "complied with the Court's order on May 16, 2019 by submitting [categorization forms] and previously provided medical records as directed by the Court." Dkts. 10997; 10999-11007 at 2-3.

Plaintiffs are mistaken because the Court did not give them an extension. On May 7, 2019, the Court issued a Revised Second Amended Order Regarding Case Categorizations (the "May Order") to "streamline the case categorization procedure." Dkt. 10617 at 2. Because there was some confusion as to whether plaintiffs who had filed their cases after November 14, 2018 would be required to categorize, the Court ordered plaintiffs in such cases to categorize "within 15 days." *Id.* In the May Order, the Court stated that "[t]he cases listed in Exhibit A [i.e. including these 4 Plaintiffs' cases] and B shall be dismissed by separate order" – i.e. Order Dkt. No. 10622. If the Court had any intention to give another extension to these already-listed Plaintiffs, who had filed their cases before November 2018, the Court would have said so in the May Order. Instead, the Court dismissed all the Exhibit A and Exhibit B cases, including these

- 3 -

Plaintiffs' cases. Plaintiffs cannot rely on the unrelated May 7 extension to justify or cure their failures to timely categorize.

## II. Plaintiffs Are Not Entitled to Reentry in the MDL Based on The Terms of The Order

Plaintiffs are barred from re-entry into the MDL based on the terms of the Order itself. Specifically, the Court's Order states:

> **No plaintiff** listed in Exhibit A or Exhibit B, however, **may refile his or her if the future claim is based solely on one of the injuries, complications, or outcomes identified by the plaintiff in his or her individual case in this court**. To the extent that an allegedly cognizable injury occurs in the future, the case may be refiled in MDL 2570 under this Order on the basis of the future injury.

Order, Dkt. 10622 at 2 (emphasis added). Thus, the order permits cases dismissed under the Order to re-file in some limited circumstances – development of a future injury – but otherwise does not permit reentry into the MDL.

Here, Plaintiffs' claims are undisputedly based on information that was already known and are not new injury claims. Accordingly, the Order precludes Plaintiffs from reentering the MDL.

## III. Plaintiffs Are Not Entitled to the Extraordinary Relief Provided by Rule 60(b)

### A. The Proper Procedural Vehicle to Address Plaintiffs' Motions is Rule 60(b)

Although Plaintiffs request relief under both Rule 60(b) and Rule 59(e), the proper procedural vehicle to address their request is Rule 60(b), which governs requests to vacate an order. "Rule 60(b) provides for extraordinary relief and may be invoked only upon a showing of exceptional circumstances." *Flett v. W. A. Alexander & Co.*, 302 F.2d 321, 323 (7th Cir. 1962) (collecting cases from Second, Third, and Seventh Circuits); *Dickerson v. Bd. of Educ. of Ford Heights, Ill.*, 32 F.3d 1114, 1116 (7th Cir. 1994) ("[I]t is well-established that Rule 60(b) relief is an extraordinary remedy and is granted only in exceptional circumstances.") (internal citations

- 4 -

omitted).  Because Rule 60(b) is an extraordinary remedy, "[n]either ignorance nor carelessness on the part of the litigant or his attorney provide grounds for relief under Rule 60(b)(1)." *Lomas & Nettleton Co. v. Wisely*, 884 F.2d 965, 967 (7th Cir. 1989).  Accordingly, "some justification for the error beyond failure to exercise due care must be shown."  *Dave Kohel Agency, Inc. v. Redshaw, Inc.*, 149 F.R.D. 171, 173 (E.D. Wisc. 1993) (citing *Lomas*, 884 F.2d at 967 and *W. Transp. Co. v. E.I. DuPont de Neumors & Co.*, 682 F.2d 1233, 1236 (7th Cir. 1982)).  Additionally, "a lawyer's errors are imputed to the client for the purpose of [the analysis]." *Moje v. Fed. Hockey League, LLC*, 792 F.3d 756,758 (7th Cir. 2015).  Indeed, even in situations where a lawyer's actions may be negligent or worse, the errors are imputed to the party (under principles of agency law) rather than burdening the opposing party in litigation.  *See United States v. 7108 W. Grand Av., Chicago, Ill.*, 15 F.3d 632, 634 (7th Cir. 1994).  Nor can a party avoid this result by attributing the fault to some lower level actor – such as a paralegal – in the lawyer's office.  *See, e.g., Lombardo v. United States,* 860 F.3d 547, 552 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 1032 (2018).

      Plaintiffs specify in their motions that they are being brought under Rule 60(b)(1) due to alleged inadvertent failure on the part of their counsel to comply with the Court's Categorization Orders.  "The determination of whether a party's neglect is excusable is 'at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission.'"  *Knapp v. Evgeros, Inc.*, 322 F.R.D. 312, 315 (N.D. Ill. 2017) (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 395 (1993)); *see also Raymond v. Ameritech Corp.*, 442 F.3d 600, 606 (7th Cir. 2006) ("We have held that *Pioneer* applies whenever 'excusable neglect' appears in the federal procedural rules.").  When analyzing Rule 60(b) claims premised on excusable neglect, "the most important consideration is 'the reason for the delay'" and if the

US.123560906

moving party cannot "demonstrate 'genuine ambiguity or confusion about the scope or application of the rules or some other good reason for missing the deadline,' [the party] cannot establish excusable neglect, regardless of how short the delay was or how little it prejudiced the opposing party." *Knapp*, 322 F.R.D. at 320 (quoting *Satkar Hospitality v. Fox Television Holdings,* 767 F.3d 701, 707 (7th Cir. 2014)).[3]

### B. Plaintiffs' Complete Failure to Monitor The Docket Is Not Reasonable And Does Not Justify Extraordinary Relief Under Rule 60(b)

Plaintiffs raise a number of arguments in support of their motions for reconsideration and/or vacation, all of which boil down to their attorneys' ignorance of the categorization requirement and failure to monitor the docket. Several Plaintiffs' motions blame paralegals for these failings, asserting that a paralegal inadvertently had all ECF email notifications transferred into a subfolder where they could not be reviewed. Others blame their ignorance of the categorization requirement on ECF notices being filtered into a spam folder. Some plaintiffs blame the Plaintiff's Steering Committee for failing to inform them of the categorization

---

[3] Plaintiffs cite Rule 59(e) as a claimed alternate source of relief, but Rule 59(e) does not apply here. Rule 59(e) "allows a court to amend a judgment only if the petitioner can demonstrate a manifest error of law or present newly discovered evidence." *Egonwan v. Cook Cnty. Sherriff's Dep't*, 602 F.2d 845, 852 (7th Cir. 2010). "Motions under Rule 59(e) cannot be used to introduce evidence that could have been presented earlier." *Id.* Nor can Rule 59(e) be used as "a vehicle for a party to undo its own procedural failures." *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996).

Here, Plaintiffs' requests for relief are not premised on any new case law or newly discovered evidence, but on their claim that their attorneys were not aware of the requirement to categorize and thus failed to do so in the time available. *See* Dkt. 10674 at 2. Such concerns are the purview of Rule 60(b), not 59(e). *See e.g., Moro*, 91 F.3d 872, 876 ("holding that Rule 59(e) is not "a vehicle for a party to undo its procedural failures."). In any event, Cook notes that Rule 59(e) is also a high bar that Plaintiff cannot meet. *See e.g., Caisse Nationale de Credit Agricole v CBI Indus.,* 90 F.3d 1264, 1270 (7th Cir. 1996) ("A party moving for reconsideration pursuant to Rule 59(e) bears a heavy burden of establishing that the court should reverse its prior judgment.").

requirement and Defendants' Motion to Dismiss, and several even mistakenly believed that Plaintiff's Steering Committee was responsible for categorizing every plaintiff's case.

None of these explanations establishes any "good reason for missing the deadline." *Knapp*, 322 F.R.D. at 320. An MDL Plaintiff's attorney has a duty to monitor both the individual case docket and the master MDL docket, and a failure to monitor both dockets is facially unreasonable. On the home page of the Cook Filter MDL, this Court has provided substantial background information to parties and their counsel regarding MDL 2570. In particular, the site includes a copy of the General Order Regarding Notice Procedure (Dkt. 2771), which explains that because of the size of the MDL, the Court had to discontinue for technical reasons the practice of "spreading" filings and orders to all individual cases. *Id.* The Order expressly notes that the Clerk's Office has been adding any "attorney who filed a Notice of Appearance in a member case at the time when the new complaint is filed to the service list of the master case" and that counsel in the individual cases receives service of filings on the master docket without having to enter an appearance. *Id.* at 2. The Court's homepage for the MDL also includes a copy of the Amended Order Establishing Policies and Procedures, Dkt. 3309, which governs service of documents in the MDL. The Order provides in pertinent part that "[a]ll counsel of record shall register for electronic filing, as required by Local Rule 5-3" and that "[r]egistered counsel of record will be served electronically with all orders issued by the Court and all filings made by the parties."

These Orders gave Plaintiffs' attorneys clear notice of the filing and service procedures in the MDL and of what dockets attorneys and their support staff should track for relevant filings. Moreover, the Cook Defendants repeatedly communicated with the Plaintiffs Steering Committee and Court between January and April 2019 and made clear that non-compliant cases

would be dismissed. *See, e.g.*, April 4, 2019 Letter from S. Bennett to J. Williams (Dkt. 10857-2). Presumably the PSC shared that information with the larger group of plaintiffs' counsel in this MDL. Plaintiffs do not dispute that Cook properly served Plaintiff by filing electronically in the master docket or that ECF notices were sent to all counsel that registered for electronic service as required by the Court. Simply put, Plaintiffs have no reasonable explanation for failing to be aware of the categorization process and consequences for noncompliance under the Court's Categorization and Screening Order.

Finally, even assuming for the sake of argument that Plaintiffs' attorneys could justify a court's indulgence for missing an obscure or isolated deadline or docket entry, no even marginally diligent counsel could possibly have been unaware of the categorization requirement in the Cook Filter MDL. As the Court is well aware, the categorization process was the culmination of months of work and was addressed across multiple meet-and-confer sessions with Plaintiffs' leadership and multiple docket entries. In fact, individual MDL Plaintiffs and their attorneys were appraised of categorization on **no fewer than 10 separate occasions**:

- **October 2, 2018**: Court enters its Order on [Cook's] Motion for Screening Order and Bellwether Selection Plan (Dkt. 9322). In the Order, the Court defines the categories and orders categorization for all cases, with deadlines and format to be determined at the next conference.
- **November 12, 2018**: The Court enters the parties' proposed order regarding categorization and the census (Dkt. 9600). The order includes the Categorization Form to be used and sets a December 22, 2018, deadline for Plaintiffs to categorize.
- **November 21, 2018:** After the parties moved to amend the order adopted as Dkt. 9600, the Court enters Parties' Order Regarding Case Categorization and Census that again includes the Categorization Form and reiterates the December 22, 2018 deadline to categorize. *See* Dkt. 9638.
- **January 8, 2019:** During the *Brand* trial, Cook's counsel provides an update to the Court regarding categorization. Court directs that Plaintiffs will have until January 15, 2019 to complete categorization. *See* Dkt. 9875 (entry memorializing hearing).
- **January 14, 2019:** The Court enters its Order Regarding Plaintiffs' Failure to Produce Case Categorization Forms (Dkt. 9907), extending the deadline to categorize to January 31, 2019, and providing that failure to categorize would lead to dismissal.

- **January 17, 2019:**  The Court amends a technical issue regarding the Order Regarding Plaintiffs' Failure to Produce Case Categorization Forms (Dkt. 9907), again confirming January 31, 2019 as the categorization deadline and re-iterating that failure to categorize would lead to dismissal.  *See* Dkt. 9956.
- **February 5, 2019:**  Cook files its Motion to Dismiss cases that were noncompliant with the Court's Categorization Order (Dkt. 10063).  The Motion to Dismiss included Plaintiffs on Exhibit A (10063-1).
- **February 18, 2019:**  Cook files its Amended Motion to Dismiss (Dkt. 10182). The Amended Motion to Dismiss includes Plaintiffs on Exhibit A (10182-1 at 1).
- **February 21, 2019:**  Cook files its Second Amended Motion to Dismiss (Dkt. 10211). The Second Amended Motion to Dismiss again includes Plaintiffs on Exhibit A (10211-1).
- **March 14, 2019:**  Cook files a reply in support of the Motion to Dismiss (Dkt. 10307).
- **April 4, 2019:**  Cook's counsel sends a letter to Plaintiffs' leadership asking for entry of dismissal in the remaining noncompliant Exhibit A and Exhibit B cases.  Updated Exhibit A and B lists are provided with the letter (*see* Dkt. 10857-2 (copy of letter).  Plaintiffs' leadership's repeatedly represented to the Court that these lists were shared with counsel in individual cases.

There is no legitimate excuse for Plaintiffs' attorneys' failure to comply with the Categorization and Screening Order given the 10 notices of the categorization requirement and the risk of dismissal.  Any minimal diligence over the seven-month period between the Court initially ordering categorization on October 2, 2018 and its entry of dismissal in the noncompliant cases on May 8, 2019, would have appraised Plaintiffs' attorneys of the requirement to categorize.  Under these facts, Plaintiffs' neglect was undeniably unreasonable and cannot be excused under Rule 60(b).  As discussed above, Rule 60(b) relief is an extraordinary remedy and mere mistake on the part of counsel due to "carelessness" or "failure to exercise due care" is not sufficient to obtain such exceptional relief.  *See Dickerson*, 32 F.3d at 1116; *Lomas*, 884 F.2d at 967; *Dave Kohel Agency*, 149 F.R.D. at 173; *Knapp*, 322 F.R.D. at 320.

Plaintiffs also cannot escape the consequences of their failure to comply with the Categorization and Screening Order by attempting to shift blame to a paralegal or other

subordinate. Counsel has a responsibility to train, manage, supervise, and properly instruct their staff, and thus failure of staff are borne by counsel and the firm. *See e.g.,* ABA, Model Rules of Prof. Resp. § 5.3; *Matter of Galbasani*, 786 P.2d 971, 975 (Az. 1990) (en banc) (analyzing Arizona's adopted version of Model Rule 5.3 and holding "it does mandate an independent duty of supervision."); *see also Lombardo,* 860 F.3d at 554 (denying 60(b) relief in case where counsel had relied on a "trusted paralegal" instead of researching and calculating the deadline himself).

Plaintiffs' various excuses related to email errors and spam filters likewise do not establish excusable neglect because counsel has a duty to put protocols in place, including periodic independent monitoring of the docket, that prevent the kind of issues that allegedly occurred here. *See Onwucheckwe v. Okeke*, 404 F. App'x 911, 912 (5th Cir. 2010) ("Even if the district court credited the claim that email setting deflected the notice away from counsel's inbox, it was not an abuse of discretion to conclude that sending court communications to the spam folder is inexcusable neglect."); *Crocker v. Child Dev. Sch., Inc.*, 2011 WL 4501560, at *5 (M.D. Ala Sept. 29, 2011) ("Mr. Wiley's evidence on the cause for the delay is the digital age equivalent of 'the dog ate my homework'….[the] evidence demonstrates that these [email] difficulties were entirely self-created….An inability to manage an office e-mail system to properly receive notices of filing does not qualify as excusable neglect."); *Emerald Coast Util. Auth. v. Bear Marcus Pointe, LLC*, 227 So.2d 752, 757 (Fl. Ct. App. 2017) (holding that "[c]ounsel has a duty to have sufficient procedures and protocols in place to ensure timely notice of appealable orders. This includes use of an email spam filter *with adequate safeguards* and *independent monitoring of the court's electronic docket.*") (emphasis added). A modicum of

docket monitoring during the preceding seven months would have appraised Plaintiffs' attorneys of the Court's requirements regarding categorization.

In sum, Plaintiffs have failed to provide a reasonable or excusable explanation for their failure to categorize – the initial December 22, 2018 deadline was effectively extended four months through end of April, and notice regarding the requirement to categorize was provided through multiple means over a seven-month period.  Rule 60(b) relief is an "extraordinary remedy [reserved for] exceptional circumstances," *Dickerson*, 32 F.3d at 1116, and as the *Lomas* and *Dave Kohel Agency* cases make clear, mere mistake on the part of counsel due to "carelessness" or "failure to exercise due care" is not sufficient to obtain such an exceptional remedy.  Simply put, errors of counsel are imputed to the party by operation of agency law and are not to be borne by the opposing party – i.e., the Cook Defendants.  *See Moje*, 792 F.3d at 758; *7108 W. Grand Av.*, 15 F.3d at 634.

Plaintiffs thus have failed to establish that their cases qualify for relief under Rule 60(b), and the Court should deny their motions to vacate the dismissal. *See Dickerson*, 32 F.3d at 1116; *Lomas*, 884 F.2d at 967; *Dave Kohel Agency*, 149 F.R.D. at 173; *Knapp*, 322 F.R.D. at 320.

### IV. Multiple Plaintiffs' Claims Are Time-Barred as a Matter of Law and Vacating the Dismissal of Their Actions Would Be Futile

Even if the Court were inclined to excuse or overlook Plaintiffs Schatzman, Cooper, Rodriguez, McNally, and Smith's failure to categorize their cases, the Court should nevertheless deny their motions to reconsider its order of dismissal because they are time-barred and vacating the dismissals would thus be futile.[4]  *Beshear v. Weinzapfel*, 474 F.2d 127, 132 (7th Cir. 1973)

---

[4] The Cook Defendants do not address the timeliness of Plaintiffs' warranty claims in detail, instead focusing on Plaintiffs' product liability claims.  However, most jurisdictions have adopted the U.C.C.'s four-year statute of limitations for warranty claims.  *See* U.C.C. § 2-725(1).  Each of these plaintiffs filed their complaint more than four years after

(noting the "salutary rule that a 60(b) motion should be buttressed by a showing of the existence of a meritorious claim or defense").

### A.     Plaintiff Schatzman's Claims Are Time-Barred Under Arkansas Law

The medical records Plaintiff Schatzman (1:18-cv-01833) provided in support of his belated categorization date back to June 6, 2013.  Plaintiff Schatzman filed his short-form complaint on June 15, 2018.  *See Schatzman* Dkt. 1.

Per his short-form complaint, Plaintiff Schatzman has resided in Arkansas at all relevant times and had his filter placed in Arkansas.  *Id.* passim.  Thus, his claims would be governed by Arkansas substantive law.

Under Arkansas law, product liability actions must be commenced within three years after the date on which the death, injury, or damage occurred.  Ark. Code Ann. § 16-116-203.  The statute of limitations "does not commence running until the plaintiff knew or, by the exercise of reasonable diligence, should have discovered the causal connection between the product and the injuries suffered."  *Martin v. Arthur*, 3 S.W.3d 684, 690 (1999).

Plaintiff Schatzman became aware of his injuries and any alleged causal relationship with his filter on June 6, 2013, at the latest.  *See* Schatzman Medical Records, attached as Exhibit 1.  Indeed, his physician specifically notes therein that perforation and bleeding were noted and that he "discussed with the patient" the removal of the filter.  *Id.*  Thus, Arkansas' three-year statute of limitations for product liability claims expired on June 6, 2016, and Plaintiff Schatzman failed to file his complaint until June 15, 2018.  His claims are therefore time-barred by more than two

---

discovering their alleged injuries.  Thus, any warranty claims they assert are also time-barred and may also fail for failure to meet other potentially applicable state-law requirements such as privity and pre-suit notice.

years.  *Shelter Ins. Co. v. Arnold*, 940 S.W.2d 505, 507 (1997).  Accordingly, it would be futile to reinstate Plaintiff Schatzman's case.

      **B.**     **Plaintiff Cooper's Claims Are Time-Barred Under Oregon Law**

The medical records Plaintiff Cooper (1:17-cv-04345) submitted in support of his categorization are from over a decade ago – May 9, 2006.  Plaintiff Cooper filed his short-form complaint on November 21, 2017.  *See* Cooper Dkt. 1.

Per his short-form complaint, Plaintiff Cooper has resided in Oregon at all relevant times and had his filter placed in Oregon.  *Id*., passim.  Thus, his claims would be governed by Oregon substantive law.

Under Oregon law, a product liability lawsuit for personal injury or property damage must be commenced no later than two years after the plaintiff discovered, or reasonably should have discovered, the injury and the causal relationship between the injury and the product at issue or between the injury and the conduct of the manufacturer.  Or. Rev. Stat. § 30.905.

Plaintiff Cooper became aware of his injuries and any alleged causal relationship with his filter on May 9, 2006, at the latest.  *See* Cooper Medical Records, attached as Exhibit 2.  More specifically, Plaintiff Cooper underwent a failed retrieval attempt on May 9, 2006, with the physician "determin[ing] that further attempts to engage the filter would be potentially hazardous and the procedure was [therefore] terminated."  *Id.*  As the Cook Defendants have pointed out in individual responses involving failed retrievals, *see e.g.,* Dkt. 10919 at 16, a failed retrieval claim logically must accrue on the date of the procedure because Plaintiff of course knows that he underwent the unsuccessful procedure.  Thus, Oregon's two-year statute of limitations expired on May 9, 2008, and Plaintiff Cooper failed to file his complaint until November 21, 2017.  His

claims are therefore time-barred by more than nine years. *Kambury v. DaimlerChrysler Corp.*, 50 P.3d 1163, 1164 (2002).

Separately, all of Plaintiff Cooper's claims fail because they are also barred by the Oregon statute of repose.[5] Oregon law provides for a 10-year statute of repose to all claims sounding in product liability:

> (1) **A product liability civil action for personal injury** or property damage must be commenced before the later of:
> (a) **Ten years after the date on which the product was first purchased** for use or consumption; or
>
> (b) The expiration of any statute of repose for an equivalent civil action in the state in which the product was manufactured, or, if the product was manufactured in a foreign country, the expiration of any statute of repose for an equivalent civil action in the state into which the product was imported.

Or. Rev. Stat § 30.905 (emphasis added). "Product liability civil action" is statutorily defined as:

> As used in the [Oregon product liability statute], 'product liability actions' means a civil action brought against a manufacturer, distributor, seller or lessor of a product for damages for personal injury, death or property damage arising out of:

---

[5] The Oregon statute of repose contains a "look away" provision in 30.905(1)(b), which provides plaintiffs the benefit of a potentially longer repose period under certain conditions. Specifically, a plaintiff may file the claim before "[t]he expiration of any statute of repose for an equivalent civil action in the state in which the product was manufactured, or, if the product was manufactured in a foreign country, the expiration of any statute of repose for an equivalent civil action in the state into which the product was imported." Or. Rev. Stat. § 30.905(1)(b). Cook's IVC filters are manufactured abroad in Denmark and imported into the United States through Cook's Indiana-based operations, so the Oregon statute requires the Court to analyze the Indiana statute of repose.

Similar to Oregon, Indiana's statute of repose provides that "a product liability action must be commenced … within ten (10) years after the delivery of the product to the initial user or consumer." Ind. Code § 34-20-3-1(b). The Indiana statute provides an exception for actions that accrue sometime between the eight and tenth years after product delivery: "However, if the cause of action accrues at least eight (8) years but less than ten (10) years after the initial delivery, the action may be commenced at any time within two (2) years after the cause of action accrues." *Id.* The claim here accrued in 2006, which was well before the eighth full year after the sale so all of Plaintiff Cooper's claim would be foreclosed by the Indiana statute of repose as well.

- 14 -

>    (1)  Any design, inspection, testing, manufacturing or other defect in a product;
>    (2) Any failure to warn regarding a product; or
>    (3) Any failure to properly instruct in the use of a product

*Id.*, § 30.900.  The statute broadly "'embraces all theories a plaintiff can claim in an action based on a product defect' including, for example, negligence, strict liability, breach of warranty, and fraudulent misrepresentation." *Simonsen v. Ford Motor Co.*, 102 P.3d 710, 715 (Or. Ct. App. 2004) (quoting *Kambury*, 60 P.3d 1103; *see also Philpott v. A.H. Robins Co., Inc.*, 710 F.2d 1422 (9th Cir. 1983) (cited with approval in *Kambury* and *Simonsen*).

The Oregon Court of Appeals has explained that the statute repose applies to all product-related personal injury claims brought under any theory so long as the "gravamen of those allegations falls squarely within the ambit of" this tripartite definition of a product liability claim:

> [P]laintiff's two breach of warranty claims both allege the same eight particular [allegations]. Those particulars assert that implied and express warranties were breached by defendant's alleged defective product design and manufacture and by defendant's alleged failure to inspect, test, and warn of the Festiva's defects. Thus, the gravamen of those allegations falls squarely within the ambit of ORS 30.900, rendering them subject to ORS 30.905(1).  Consequently, the trial court properly dismissed those claims as being barred by the statute of ultimate repose.

*Simonsen*, 102 P.3d at 715.  Here, all the claims Plaintiff Cooper incorporated from Plaintiffs' Master Complaint sound in alleged inadequacies in the design of the filters and the accompanying warnings and alleged warranties, meaning that all the claims are "within the ambit" of the statute of repose.

Here, Plaintiff Cooper received his filter on March 20, 2006.  *See Cooper* Dkt. 1, ¶ 11. The statutory trigger date – the date of purchase for first use or consumption – could not have been any later than the filter placement date.  Because Plaintiff Cooper received his filter about 11.5 years before he filed his case, all his claims are also barred by the Oregon statute of repose.

Accordingly, it would be futile to reinstate Plaintiff Cooper's case because it is time-barred both by the statute of limitations and the statute of repose.

### C. Plaintiff Rodriguez's Claims Are Time-Barred Under Nevada Law

The medical records Plaintiff Rodriguez (1:17-cv-04171) submitted in support of her categorization date back to 2012. Plaintiff Rodriguez filed her short-form complaint on November 9, 2017. *See* Rodriguez Dkt. 1.

Per her short-form complaint, Plaintiff Rodriguez has resided in Nevada at all relevant times and had her filter implanted in Nevada. *Id*. passim. Thus, her claims would be governed by Nevada substantive law.

Under Nevada law, causes of action for personal injuries based on negligence and strict liability must be brought within two years. Nev. Rev. Stat. § 11.190(4)(e). *See also Campos v. New Direction Equip. Co.*, 2009 WL 114193, at *3 (D. Nev. Jan. 16, 2009). Nevada's discovery rule tolls the statute of limitations "until the injured party discovers or reasonably should have discovered facts supporting a cause of action." *Crabb v. Harmon Enterprises, Inc.*, No. 60634, 2014 WL 549834, at *3 (Nev. Feb. 10, 2014).

Plaintiff Rodriguez became aware of the facts supporting her cause of action on April 4, 2012, at the latest. *See* Rodriguez Medical Records, attached as Exhibit 3. Specifically, the records indicate that imaging detected as of March 29, 2012 that struts of Plaintiff Rodriguez's filter were "outside of the lumen of the IVC." *Id.* These findings were provided to her and the March 29 and April 4, 2012 records specifically note that Plaintiff Rodriguez had complained of abdominal pain, thus confirming that she knew of her alleged injuries at that time. Thus, Nevada's two-year statute of limitations expired no later than April 4, 2014, and Plaintiff Rodriguez failed to file her complaint until November 9, 2017. Her claims are therefore time-barred by three-and-a half years. *Campos*, 2014 WL 549834, at *3. Accordingly, it would be futile to reinstate Plaintiff Rodriguez's claims.

US.123560906

### D. Plaintiff McNally's Claims Are Time-Barred Under New York Law

The most recent medical records Plaintiff McNally (1:17-cv-01853) has provided in support of her alleged injuries date back to April 21, 2011. Plaintiff McNally filed her short-form complaint on June 5, 2017. *See* McNally Dkt. 1.

Per her short-form complaint, Plaintiff McNally has resided in New York at all relevant times and had her filter implanted in New York. *Id.* passim. Thus, her claims would be governed by New York law.

Under New York law, personal injury claims sounding in negligence or strict liability are subject to a three-year statute of limitations. N.Y. C.P.L.R. § 214 (1990). *See generally Snyder v. Town Insulation, Inc.*, 615 N.E.2d 999, 1000 (N.Y. 1993). A cause of action accrues when the injury occurs, as New York's discovery rule only applies to latent injuries caused by exposure to a "toxic substance." *Blanco v. AT&T*, 689 N.E.2d 506, 509 (1997)

Plaintiff McNally's alleged injuries occurred, at the very latest, on April 21, 2011. *See* McNally Medical Records, attached as Exhibit 4. Specifically, the records indicate that Plaintiff McNally's filter had migrated but was successfully retrieved on this date with the physician describing the retrieval procedure as a "complete recovery." To the extent, Plaintiff McNally had cognizable claims, they began to accrue, at the latest, when the filter was removed. Thus, New York's three-year statute of limitations expired on April 21, 2014, and Plaintiff McNally failed to file her complaint until June 5, 2017. Her claims are therefore time-barred by more than three years. *Snyder*, 615 N.E.2d at 1000. Accordingly, it would be futile to reinstate Plaintiff McNally's claims.

US.123560906

E.   **Plaintiff Smith's Claims Are Time-Barred Under Virginia Law**

The medical records Plaintiff Smith (1:17-cv-01854) submitted in support of her categorization date back to March 25, 2011. Plaintiff Smith filed her short-form complaint on June 5, 2017. *See* Smith Dkt. 1.

Per her short-form complaint, Plaintiff Smith has resided in Virginia at all relevant times and had her filter implanted in Virginia. *Id.* passim. Thus, her claims would be governed by Virginia law.

Under Virginia law, "every action for personal injuries, whatever theory of recovery . . . shall be brought within two years after the cause of action accrues." *Casey v. Merck & Co.*, 722 S.E.2d 842, 844 (2012) (citing Va. Code Ann. § 8.01-243(A)). In product liability actions for injury resulting from implantation of a medical device, a cause of action accrues "when the person knew or should have known of the injury and its causal connection to the device." Va. Code Ann. § 8.01-249(9).

Plaintiff Smith became aware of her injuries and any alleged causal connection to her filter on March 25, 2011. *See* Smith Medical Records, Attached as Exhibit 5. Specifically, the medical records indicate that she underwent a failed retrieval procedure on this date with the physician noting: "unsuccessful retrieval. [f]ilter tip adjacent to cava wall." *Id.* As with other failed retrieval cases that the Cook Defendants have briefed individually, the statute of limitations logically could not have accrued any later than the date of the failed retrieval procedure because Plaintiff Smith knew she underwent this procedure. Thus, Virginia's two-year statute of limitations expired on March 25, 2013, and Plaintiff Smith failed to file her complaint until June 5, 2017. Her claims are therefore time-barred by more than four years. *Casey*, 722 S.E.2d at 844. Accordingly, it would be futile to reinstate Plaintiff Smith's claims.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motions to vacate the dismissal of their cases. Plaintiffs are not entitled to the extraordinary relief requested. Moreover, granting the relief would be futile in the cases of Plaintiffs Schatzman, Cooper, Rodriguez, McNally, and Smith because their claims are time-barred under the substantive law of their home states.

Respectfully submitted,

Dated: June 20, 2019

*/s/ Andrea Roberts Pierson*
Andrea Roberts Pierson (# 18435-49)
Jessica Benson Cox (# 26259-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
Email: andrea.pierson@faegrebd.com
Email: jessica.cox@faegrebd.com

Bruce Jones (MN # 179553)
Charles Webber (MN # 215247)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Telephone: (612) 766-8719
Facsimile: (612) 766-1600
Email: bruce.jones@faegrebd.com
Email: chuck.webber@faegrebd.com

*Counsel for the Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

- 20 -

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 20, 2019, a copy of the foregoing was filed electronically and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system. Lead Co-Counsel for Defendants will serve any non-CM/ECF registered parties.

/s/ *Andrea Roberts Pierson*