**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

_____

IN RE COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND           Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION            MDL No. 2570

_____

149 Cases From Five States Listed in Exhibit A

_____

**COOK DEFENDANTS' MEMORANDUM IN SUPPORT OF
OMNIBUS MOTION FOR SUMMARY JUDGMENT BASED ON
APPLICABLE STATUTE OF LIMITATIONS FROM FIVE STATES**

The Cook Defendants[1] ask the Court to dismiss the 149 cases filed by the plaintiffs listed

in the attached **Exhibit A** because they are time-barred pursuant to applicable statutes of

limitation in their home states.  The motion applies to 12 Alabama Plaintiffs, 7 Idaho Plaintiffs,

40 Michigan Plaintiffs, 59 Texas Plaintiffs, and 31 Virginia Plaintiffs.[2]

As the Court has seen firsthand, Plaintiffs have spent millions of dollars on advertising

for claims against Cook and other filter manufacturers, and the accompanying flurry of filings

has ballooned this MDL to over 5,000 cases.  In many instances, this overarching focus on

building inventory has come with little regard for the substantive merit of the underlying claims,

as demonstrated by the proliferation of "no injury" cases on the Court's docket and the

widespread failure to recognize and observe applicable statutes of limitation.  For example, Cook

prevailed in the *Gage* bellwether on summary judgment because the claims in that case were

_____

[1]    As used in this memorandum, "Cook" and "the Cook Defendants" refer to Defendants
Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook
Europe ApS.

[2]    The 149 plaintiffs listed in Exhibit A are referred to collectively as "Plaintiffs."   As
necessary, they are referred to individually by their names (i.e. "Plaintiff Boone") and in groups
by their home state by adding the state to the term Plaintiffs (i.e. the "Alabama Plaintiffs").

time-barred, a bar that should have been plain to a plaintiff's attorney screening the case.  *See* Orders, Dkts. 7715 & 7809.  Similarly, the Court dismissed Plaintiff Valerie Graham's claims because they accrued under Kansas law at the time of her retrieval procedure, and she did not file her lawsuit until two years after the statute of limitations on her claims expired.  *See* Entry on the Cook Defendants' Motion of Summary Judgment, Dkt. 164.  Most recently, Cook has noted that about a quarter of the cases with pending motions to reconsider and/or vacate are time-barred under applicable state law.  *See, e.g.,* Cook's Omnibus Opposition, Dkt. 11189 (arguing that five cases are time-barred).

Most standalone cases avoid issues of timeliness because the Federal Rules incent counsel to heed these issues:  pleading requirements require plaintiffs to set forth a plausible claim for relief with sufficient factual background, and Rule 11 imposes a duty on counsel not to pursue meritless claims.  *See generally* Fed. R. Civ. P. 8, 9 & 11.  In an MDL, however, individual pleading requirements are loosened, and the filing of time-barred cases unfortunately becomes commonplace because many counsel file cases – often on behalf of online clients from far-flung states – without adequate attention to the applicable statutes of limitations.  The premise behind this "park and ride" strategy is to park the case on the docket of the MDL and ride out the litigation in the hope that a global settlement occurs before anyone digs under the surface to test the merits of the case.  As one recent MDL court explained:  "Some lawyers seem to think that their cases will be swept into the MDL where a global settlement will be reached, allowing them to obtain a recovery without the individual merit of their case being scrutinized as closely as it would if it proceeds as a separate, individual action."  *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, 2016 WL 46704827, at *1 (M.D. Ga. Sept. 7, 2016).

US.124019312

Widespread failure to abide by applicable statutes of limitation forces the Court and the parties to devote attention to time-barred cases that should never have been filed, straining resources and wasting time for the Court, the defendants, and plaintiffs who timely-asserted claims.  Such failure also makes a global resolution more difficult, because plaintiffs' attorneys demand significant sums to settle time-barred cases that defendants have no choice but to value at zero.  For reasons such as these, the JPML considers resolution of dispositive motions to be the MDL court's "perhaps most important" task.[3]

When Cook has raised timeliness concerns in this MDL, Plaintiffs' attorneys' response has generally been to invoke the discovery rule or to downplay such concerns as "premature" and/or "factual" issues.  But such responses threaten to let the exceptions swallow the rule, to the point of making the statute of limitations meaningless in every case that does not actually go to trial.  Docket management is of paramount importance in an MDL, and the proliferation of time-barred cases is a considerable strain on moving this litigation forward in an orderly manner.[4] Cook thus urges the Court to intervene on these issues now and to call the necessary balls and strikes. Addressing this issue through omnibus motion practice will promote orderly docket

---

[3]     *See* JPML & Federal Judicial Center, *Ten Steps to Better Case Management, a Guide for Multidistrict Litigation Transferee Judges* § X(a) (2d ed. 2014), available at https://www.fjc.gov/sites/default/files/2014/Ten-Steps-MDL-Judges-2D.pdf.

[4]     Numerous courts have stressed the importance of docket management in an MDL, and that is particularly important in a large MDL like this one.  *See e.g., Dzik v. Bayer Corp.*, 846 F.3d 211, 216 (7th Cir. 2017) ("District courts handling complex, multidistrict litigation must be given wide latitude with regard to case management in order to achieve efficiency.") (internal citations omitted); *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 628 F.3d 157, 161 (5th Cir. 2010) ("The challenge to case administration arose here from the court's obligation to manage thousands of claims against numerous defendants in an efficient and expeditious manner that would best serve justice for both plaintiffs and defendants. That multiparty background heavily influenced the trial court and permeates this court's review"); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 867 (8th Cir. 2007) ("MDL courts must be given greater discretion to organize, coordinate and adjudicate its proceedings, including the dismissal of cases for failure to comply with its orders") (internal citations omitted).

US.124019312

management and encourage counsel to heed the statute of limitations *before* filing, as the Federal Rules require and as attorneys routinely do in standalone cases.

Accordingly, Cook asks the Court to begin addressing the statute of limitations issues in this MDL by tackling the issue under the law of five states. Legislatures and courts in Alabama, Idaho, Michigan, and Virginia have rejected invitations to create loose discovery rule exceptions. In these four states, a claim accrues for statute-of-limitations purposes when the claimed injury occurs. Because Plaintiffs have identified their claimed injuries in their categorization forms, compliance with the statute of limitations in cases subject to the laws of these four states can be readily determined by comparing the dates of the medical records Plaintiffs submitted to support categorization with the dates the actions were commenced. And although Texas has a limited discovery rule, Texas courts have held in the medical device context that discovery of an injury on imaging objectively serves to trigger the statute of limitations, and that in any event the statute of limitations logically cannot start any later than upon removal of the device. Under these standards, the statute of limitations for Texas Plaintiffs' claims also began to accrue on the dates reflected in the medical records submitted in support of categorization. In the 149 cases subject to this motion, Plaintiffs have failed to commence their actions within the respective statutory periods, and their tort claims fail as a matter of law.

Because these Plaintiffs' non-tort claims also fail as a matter of law for other reasons, the Cook Defendants are entitled to summary judgment in these cases.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      On October 2, 2018, the Court entered its Categorization and Screening Order, Dkt. 9322, ordering all MDL plaintiffs to categorize their cases in one of seven categories and to support those selections with specific medical records.

US.124019312

2.      Through subsequent orders, the Court set deadlines (and later gave multiple extensions) and adopted the form that plaintiffs were required to use.  *See* Orders, Dkts. 9638, 9907 & 10617.   In pertinent part, the Case Categorization Form (Dkt. 9638-1) stated that "plaintiff[s] may select more than one of the seven categories outlined in the Categorization Form, with the understanding that only the 'highest' alleged category will be considered for purposes of the census ordered by the Court" and that "each category alleged requires a specific medical record."  *See* Dkt. 9638-1.

3.      The Categorization Form further required that counsel certify that "the categorization is based on a review of the available medical records including imaging reports and records" and that "submission of the specific medical record(s) … are counsel's certification that the outcome, complication, or injury represented in [the Form] is the proper categorization for Plaintiff's case to the best of counsel's knowledge and belief.").  *Id.* at 4.

4.      All Plaintiffs listed in Exhibit A have provided Categorization Forms and supporting records, and they are categorized in the census in Categories 3 to 7.  Category 1 cases were subject to immediate dismissal under the Categorization and Screening Order and were subsequently dismissed (Dkt. 10588), and nearly all Category 2 cases have also been dismissed as a result of voluntary dismissals and motion practice.

5.      Due to the number of cases subject to this motion, the Cook Defendants have reviewed Plaintiffs' short-form complaints, Categorization Forms, and supporting medical records, and summarized the relevant information from those materials in Exhibit A.[5]

---

[5]      *See* Fed. R. Evid. 1006 (permitting parties to submit evidence through summaries and charts when the information is otherwise cumbersome to present to the Court).

US.124019312

6.      Exhibit A provides the following information for all 149 Plaintiffs' cases:

- Plaintiff's Name;

- Plaintiff's Case Number;

- Plaintiff's Home State (as denoted by the state of current residence and state of alleged injury in the Plaintiff's complaint);

- The placement date for Plaintiff's filter;

- The Plaintiff's highest category in the census;

- A short description of the categories selected in each Plaintiff's Categorization Form, along with the dates on the specific medical record(s) submitted in support of those claims;[6] and

- The filing date of Plaintiff's case.

7.      Of the 149 cases at issue here, 148 Plaintiffs represent in their complaints that they reside in Alabama, Idaho, Michigan, Texas, or Virginia and allege that their injuries occurred in their home states.  Although Plaintiff Sandra Jackson left the state-specific fields of her short-form complaint blank, all available records indicate that she is from Virginia and underwent all her relevant medical care in Virginia.[7]

8.      In each of the cases on Exhibit A involving Plaintiffs from Alabama, Idaho, Texas, and Virginia, the date on which each Plaintiff first filed his or her lawsuit is more than

---

[6]      As this motion applies to 149 cases, it would have been impractical for the Cook Defendants to attach the Case Categorization Forms and supporting records submitted by all these Plaintiffs as part of the categorization process.  Because these forms and records were submitted by Plaintiffs' attorneys, Cook does not believe there will be any dispute as to their contents.  To the extent there is any dispute, Cook will address those concerns on reply.

[7]      Cook anticipates that Plaintiffs will maintain that the law of their home states will govern their claims, the position the Plaintiffs took in the *Hill*, *Gage*, and *Brand* cases.  Thus, to avoid the need for complex choice-of-law analyses, the Cook Defendants have streamlined this motion by limiting the motion to cases where the Plaintiffs' states of residence and states of alleged injury – as alleged by Plaintiffs in Paragraph 6 of their short-form complaints – are the same.

two years after the date of the injury that Plaintiff relies on in the medical record(s) the Plaintiff submitted as evidence of injury with that Plaintiff's categorization form.

9.     In each of the cases on Exhibit A involving Plaintiffs from Michigan, the date on which each Plaintiff filed his or her action is more than three years after the date of the injury that Plaintiff relies on in the medical record(s) that the Plaintiff submitted as evidence of injury with that Plaintiff's categorization form.

10.     As part of summary judgment briefing on the warranty claim in the *Gage* case, the Cook Defendants submitted the Affidavit of Kevin Brines and a copy of the "Cook Invoice Terms and Conditions."  *See* Cook Defendants' Memorandum in Support of Its Second and Renewed Motion for Summary Judgment, Dkt. 7805, pp. 17-18 (Brines Affidavit), p. 28 (copy of terms and conditions).  Mr. Brines explained in his Affidavit that it "is the ordinary business practice of Cook" to include the terms and conditions as part of every filter sale.  *Id.* at 18, ¶ 5. He also identified the terms and conditions in effect at the time of Mr. Gage's filter sale in April 2011.  *See id.*  Those terms and conditions include the following relevant provisions: (1) an Indiana choice-of-law rules provision, (2) disclaimer of implied warranties, and (3) reduction of the statute of limitations on implied warranties to one year and one day, as permitted by the Indiana UCC. *See id.* at 28.

11.     With respect to Plaintiffs from the three states that recognize independent breach of warranty claims in the personal injury context – Alabama, Michigan, and Texas –  there are 11 Plaintiffs who filed their claims within four years of the date of the filter placement procedures: Michigan Plaintiffs Diondrae Boone, George Hubert, and Walter Simpson; and Texas Plaintiffs Audra Boggs, Jasmine Bowen, Marcella Brady, Justin Gonzalez, Salvador Lozano, Sharon Sharp, Tracy Tapp, and Estate of Annette Weaver.  *See* Exhibit A.  However, all 11 of these

- 7 -

Plaintiffs received their filters after April 2011, and their filters were accompanied by the "Cook Invoice Terms and Conditions" that reduced the limitations period for claims of breach-of-warranty claims to one year and one day.  *See* Exhibit A (listing placement dates); Dkt. 7805, pp. 17-18, 28.

## **STANDARD OF REVIEW**

"[S]ummary judgment procedure is governed by federal law" and "[f]ederal law defines the standard for evaluating the sufficiency of the evidence."  *Maroules v. Jumbo, Inc.*, 452 F.3d 639, 645 (7th Cir. 2006).  "A district court should grant summary judgment only if the pleadings, depositions, answers to interrogatories, admissions, and affidavits 'show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Miller v. A.H. Robins Co.*, 766 F.3d 1102, 1104 (7th Cir. 1985) (quoting Fed. R. Civ. P. 56).  In evaluating a motion for summary judgment, the court must view the facts and make all reasonable inferences that flow from them in a light most favorable to the non-moving party.  *Zillak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003).

Whether a claim has been brought within the relevant period of limitations presents an issue of state law.  *See In re Bridgestone/Firestone Inc. ATX ATXII, Wilderness Tires Prod. Liab. Litig.*, 2002 WL 31689264, at *2 (S.D. Ind. Nov. 20, 2002) ("As a court sitting in diversity, we must look to state law in deciding all matters of substance, including the operation of the relevant statutes of limitations.") (citing *Horbach v. Kaczmarek*, 288 F.3d 969, 976 (7th Cir. 2002)).

As noted above, this motion assumes the applicability of the law of the Plaintiffs' respective home states, the position Plaintiffs have taken in the bellwether cases.

US.124019312

## ARGUMENT

I.    **Plaintiffs' Personal Injury Claims Are Time-Barred by The Applicable Statute of Limitations in Their Homes States And There Are No Applicable Discovery Rule Exceptions To Save Them From Dismissal.**

Cook is entitled to summary judgment on Plaintiffs' personal injury tort claims (Counts I – IV and the wrongful death and survivorship claims in Counts IX – X to the extent applicable) because the applicable statutes of limitation bar those claims as a matter of law.  Specifically, the Alabama, Idaho, Virginia, and Texas Plaintiffs failed to file their cases within the two-year statute of limitations in their home states, and the Michigan Plaintiffs failed to file their cases within the three-year statute of limitation imposed by that state.  The objective approach to statutes of limitations issues taken by the courts of these five states precludes as a matter of law any argument that these Plaintiffs' claims accrued at any point after the dates listed in Exhibit A.

A.    **Alabama**

Alabama imposes a two-year statute of limitations on personal injury claims.  *See* Ala. Stat § 6-2-38.  The Alabama Supreme Court has repeatedly rejected invitations to recognize the discovery rule as an exception to this limitation.  *See Moon v. Harco Drugs, Inc.*, 435 So.2d 218, 220 (Ala. 1983) ("This Court has repeatedly held that a cause of action accrues when the injury occurs, and in so doing, this Court has refused to accept the so-called 'discovery rule.'") (internal citation omitted); *Payton v. Monsanto Co.*, 801 So. 2d 829, 835 (Ala. 2001) ("The fact that a plaintiff discovers damage for the first time outside the limitations period does not save the plaintiff, because this Court has declined to apply a 'discovery rule.'").  Thus, "'the statute of limitations begins to run in favor of the party liable from the time the cause of action 'accrues.' The cause of action 'accrues' as soon as the party in whose favor it arises is entitled to maintain

US.124019312

an action thereon."'  *Moon*, 435 So.2d at 220 (quoting *Garrett v. Raytheon Co.*, 358 So.3d 516, 519 (Ala. 1979)).

Alabama permits an exception in the context of a "continuous tort," defined as "a defendant's repeated tortious conduct which [] repeatedly and continuous injure[s] a plaintiff" as "when an employer exposes its employee on a continuing basis to harmful substances and conditions," rock quarry blasting cases, or well contamination cases.  *Moon*, 435 So.2d at 220-21 (collecting cases, internal citations omitted).  The continuous tort exception, however, does not apply in cases involving implantable medical devices like the IVC filter.  *See, e.g., Haynie v. Howmedica Osteonics Corp.*, 137 F. Supp. 2d 1292 (S.D. Ala. 2000).  In *Haynie,* the plaintiff asked the court to apply the continuous tort exception on grounds that the "tibial insert in [his] knee implant underwent a continuous delamination process after it was implanted and that this process was the cause of [his] pain."  *Id.* at 1295.  The court rejected that argument, holding that "it takes more than a continuous injury to satisfy the continuous tort theory.  The tortious conduct itself must also be repeated.  Here the alleged tortious conduct was a single occurrence, the defective, negligent, or wanton design or manufacture of the knee implant."  *Id.*

Here, the medical records Plaintiffs submitted in support of their categorizations demonstrate that the 12 Alabama Plaintiffs' claimed injuries occurred more than two years before they commenced their respective actions.  *See* Exhibit A (cases nos. 1 – 12).  Accordingly, the Alabama statute of limitations bars their claims, and Cook is entitled to summary judgment as a matter of law.  *Moon*, 435 So.2d at 220; *Payton*, 801 So. 2d at 835; *Haynie*, 137 F. Supp. 2d at 1295.

US.124019312

### B.      Idaho

Idaho imposes a two-year statute of limitations on personal injury claims, and that statute provides that the cause of action subject to the statute "shall be deemed to have accrued as of the time of the occurrence, act or omission complained of."   Idaho Code Ann. § 5-219(4).   Like Alabama, the Idaho Supreme Court has rejected invitations to recognize discovery rule exceptions.   *Theriault v. A.H. Robins Co., Inc.*, 698 P.2d 365, 370-71 (Idaho 1985) ("Theriault asks this Court to engraft a discovery exception to the statute of limitations . . . .   This we decline to do . . . .   Since the 1971 amendment, in deference to the legislative policy expressed therein, this Court has consistently refused to create additional discovery exceptions.").

The medical records the seven Idaho Plaintiffs submitted with their Categorizations Forms demonstrate that their claims accrued more than two years before they commenced their respective actions, and thus outside Idaho's two-year statute of limitations.   *See* Exhibit A (cases nos. 13 – 19).   The Cook Defendants are therefore entitled to judgment on those claims as a matter of applicable Idaho law.   *See* Idaho Code Ann. § 5-219(4); *Theriault*, 698 P.2d at 370-71.

### C.      Michigan

Michigan imposes a three-year statute of limitations on personal injury claims.   *See* Mich. Comp. Laws. Ann. § 600.5805(10) ("The period of limitations is 3 years after the time of the death or injury for all actions to recover damages for the death of a person, or for injury to a person or property.").   Michigan courts have rejected a discovery rule to toll this statute, and the statute of limitations is triggered when the alleged defects in the product at issue harm the plaintiff.   *See Trentadue v. Buckler Lawn Sprinkler Co.*, 738 N.W.2d 664, 672 (Mich. 2007) ("[C]ourts may not employ an extrastatutory discovery rule to toll accrual."); *Tice v. Zimmer Holdings, Inc.*, 2015 WL 4392985, at *5 (W.D. Mich. July 15, 2015) ("*Trentadue* makes clear

that the accrual date for Plaintiffs' claims is not tied to their knowledge of the harm . . . .  [T]he claims accrued when the alleged defects in the Devices harmed Plaintiff.  This must have occurred *before* Mr. Tice or his physicians determined that he needed corrective surgery, and may have occurred before he was even aware that the Devices were causing problems.") (emphasis in original).

Here, the medical records Plaintiffs submitted in support of their categorizations demonstrate that the 40 Michigan Plaintiffs' claimed injuries occurred more than three years before they commenced their respective actions.  *See* Exhibit A (cases nos. 20 – 59).  Accordingly, the Michigan statute of limitations bars their claims, and Cook is entitled to summary judgment as a matter of law.  *See Trentadue*, 738 N.W.2d at 672; *Tice*, 2015 WL 4392985, at *5.

### D.    Texas

Texas imposes a two-year statute of limitations on personal injury claims.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003; *see also Bell v. Showa Denko K.K.*, 899 S.W.2d 749, 753 (Tex. Ct. App. 1995) ("For the purposes of this section, negligence claims normally accrue when the duty of ordinary care is breached and strict liability claims generally accrue on the date of the injury."); *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015) ("[A] cause of action generally accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred.").

Although Texas has a limited discovery rule, the rule only applies in cases where "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable."  *Comput Assocs. Int'l v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996); *see also Pavich v. Zimmer, Inc.*, 157 F.3d 903 (5th Cir. 1998) (summary table) (describing the

US.124019312

Texas discovery rule as "very limited").  Texas courts interpreting the statute of limitations and the discovery rule have made clear that the statute of limitations is analyzed from an objective perspective, and discovery of the complication on medical imaging serves as an objective trigger for the statute of limitations through which the plaintiff is presumed to know that his or her claims have accrued.  *See Pavich*, 157 F.3d 903 (holding that plaintiff's cause of action accrued under Texas law on the day x-rays verified fractures in the implanted spinal rods and dismissing claims as untimely); *Brandau v. Howmedica Osteonics Corp.*, 439 F. App'x 317, 322 (5th Cir 2011) (applying *Pavich* rule and finding claims timely because x-ray demonstrating that knee prosthesis was loose was taken within two years of filing); *Rosman v. Zimmer Dental, Inc.*, 2018 WL 2335358, at *2 (S.D. Tex. Mar. 1, 2018) (holding that plaintiff "acquired the knowledge he needed to discover that he had a cause of action" on the date that "x-rays revealed the fractured dental implant," and dismissing the case as untimely because it was filed "more than four months after the two-year statute of limitations had expired.").

Courts applying Texas law have also repeatedly held that in the context of implantable prescription medical devices, the accrual date for the statute of limitations logically cannot be any later than the date of the revision surgery to remove the device.  *See Shepherd v. Danek Med.,* 1999 WL 1129705, at *1 (S.D. Tex. Aug. 13, 1999) ("[A]ny arguable application of the 'discovery rule' would terminate upon removal of the System."); *Porter v. Danek Med. Inc.*, 1999 WL 1117090, at *1 (S.D. Tex. Aug. 16, 1999) (same as *Shepherd*); *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, 2016 WL 1493534, at *4 (M.D. Ga. Apr. 14, 2016) (MDL court granting summary judgment in two Texas cases on statute of limitations grounds because "both Plaintiffs knew or should have known that they suffered some injuries

US.124019312

related to the ObTape by the time of their revision surgeries, and that is when their claims accrued.").[8]

These cases establish objective markers for determining the timeliness of the filter claims asserted by the Texas Plaintiffs here.   Filter complications and alleged injuries such as perforation, migration, occlusion, fracture, and occurrence of post-placement DVT/PE are not necessarily observable under the naked eye, but they are "objectively verifiable" by medical imaging and/or physician examination.  Therefore, just like the spinal-rod fracture in *Pavich*, the dental-implant fracture in *Rosman*, and the knee-implant loosening in *Brandou*, filter claims accrue under Texas law when the complication and/or injury complained of is demonstrated on imaging or otherwise diagnosed in medical records.  *See Pavich*, 157 F.3d 903; *Brandau*, 439 F. App'x at 322; *Rosman*, 2018 WL 2335358, at *2.

Moreover, although the need for a filter's retrieval or the fact of a filter's irretrievability may be diagnosed *before* a filter retrieval procedure is scheduled, retrievability-based claims (i.e., Category 4 unable to retrieve claims; Category 5 failed retrieval, complex retrieval, and difficult retrieval claims; and Category 7(k) open removal claims) accrue under Texas law *at the latest* on the date of the retrieval procedure or the physician's recommendation that filter removal cannot and/or should not be attempted, as memorialized in records.   *See Shepherd*, 1999 WL 1129705, at *1 (holding that claims accrued no later than the date of the revision surgery); *Porter*, 1999 WL 1117090, at *1 (same); *In re Mentor Corp*, 2016 WL 1493534, at *4 (same).

---

[8]      This Court reached the same conclusion under Kansas law when it granted summary judgment in Plaintiff Valerie Griffiths's case early on in the MDL.  *See* Dkt. 164 ("The injuries described in her Complaint . . . were known to her immediately after her September 9 surgery. The limitations period, therefore, expired on or about September 10, 2013, nearly two years before she filed her Complaint.").

US.124019312

Applying this caselaw here, the personal injury claims of the 59 Texas Plaintiffs are time-barred because the medical records they submitted with their Categorization Forms show that their claimed injuries occurred more than two years before they commenced their respective cases.  *See* Exhibit A (cases nos. 60 – 118).  The Cook Defendants are therefore entitled to summary judgment on these Plaintiffs' claims.

### E.    Virginia

Virginia imposes a two-year statute of limitations on personal injury claims.  *See* Va. Code Ann. § 8.01-230 ("In every action for which a limitation period is prescribed, the right of action shall be deemed to accrue and the prescribed limitation shall begin to run from the date the injury is sustained and in the case of injury to the person or damage to property."); *Smith v. Danek Med.*, 47 F. Supp. 2d 698, 701 (W.D. Va. 1998) ("Under Virginia law, the limitation period begins to run when the injury, no matter how slight, is sustained and regardless of whether more substantial injuries occur later…").   And like the first three states discussed above, "Virginia does not follow a 'discovery rule' in applying the statute of limitations . . . .   The statute of limitations begins to run at the date of injury even if no diagnosis was made or communicated to the plaintiff until later."  *Id.* (internal citations omitted); *see also Joyce v. A.C. & S, Inc.*, 591 F. Supp. 449, 452 (W.D. Va. 1984) (explaining that Virginia courts have "rejected any rule which would commence the running of the statute of limitations on the date of discovery of the injury, or on the date when the injury should have been discovered by in the exercise of reasonable diligence . . . .   Rather, if expert medical testimony demonstrates that the injury – the damage – occurred before the time when the disease manifested itself by symptoms, such as pain, discomfort, or impairment of functions, the statute begins to run from the earlier date.").

US.124019312

Here, the medical records Plaintiffs submitted in support of their categorizations demonstrate that the 31 Virginia Plaintiffs' claimed injuries occurred more than two years before they commenced their respective actions. *See* Exhibit A (cases nos. 119 – 149). Accordingly, the Virginia statute of limitations bars their claims, and Cook is entitled to summary judgment as a matter of law. Accordingly, the Court should grant summary judgment in Cook's favor in these cases. *See* Va. Code Ann. § 8.01-230; *Smith*, 47 F. Supp. 2d at 701; *Joyce*, 591 F. Supp. at 452.

## II.     Plaintiffs' Non-Tort Claims Also Fail as a Matter of Law.

Although Plaintiffs' Master Complaint asserts and Plaintiffs' short-form Complaints adopt some non-tort-based claims, all those claims likewise fail as a matter of law. These ancillary claims thus do not preclude entry of summary judgment in Cook's favor in these cases.

### A.     Plaintiffs' Express Warranty Claims Fails Because, as the Court Has Previously Ruled, the Master Complaint Fails to State Sufficient Allegations to Support This Claim.

Plaintiffs' express warranty claims (Count V) fail because neither the Master Complaint nor the short-form complaints allege any express warranties about the performance of Cook's IVC filters.

The Court has already addressed this issue in the context of Texas-based Plaintiff Emily Apple's express warranty claim, holding that the Master Complaint and plaintiff's short-form complaint failed to sustain a claim for express warranty and noting that "the omission of her specific warranty allegations is fatal." *See* Court's Entry on Motion for Judgment on the Pleadings Based on the Statute of Repose, Dkt. 4918, pp. 13-14 (rejecting Plaintiff Apple's express warranty arguments). The Court also held that "even if she had included such allegations in her Short Form Complaint, her claim would not survive" because she failed to

US.124019312

allege who made the alleged verbal warranty or claim that she relied on the Cook written materials. *Id.* In the *Brand* case, Plaintiff Brand did not even attempt to defend her express warranty claim, and the Court readily granted Cook summary judgment on the claim. *See* Entry on Defendants' Motion for Summary Judgment, Dkt. 9696.

Because the general assertions in the Master Complaint cannot sustain a claim for express warranty and, as far as Cook can determine, Plaintiffs have not asserted case-specific express warranty allegations in their individual complaints,[9] Cook is entitled to dismissal of Plaintiffs' express-warranty claims.

### B.   Plaintiffs' Implied Warranty Claims Fail as a Matter of Law Because of Merger in Idaho and Virginia and Lack of Timeliness Under the Reduced One-Year-and-One-Day Limitations Period.

Plaintiffs' implied warranty claims (Count VI) fail as a matter of law in all 149 of the cases at issue here.  Regarding the Idaho and Virginia Plaintiffs, state law merges their implied warranty claims into the product liability claims for statute of limitations purposes, and those claims are time-barred for the reasons stated above in Sections I.B. and I.E respectively.  With respect to claims brought by Plaintiffs from the other three states, their implied warranty claims are untimely because implied warranties arise out of the sale of the filter and, as the Court ruled in the *Gage* bellwether, the statute of limitations for implied warranties was reduced as a condition of sale to one year and one day.  As this one year and one day period (as measured from the delivery of the filters) is *shorter* than the two-to-three-year personal injury statutes of

---

[9]      Cook notes that Plaintiff Apple attempted to support her express warranty claim against Cook's motion by citing the Cook Patient Guide and an alleged oral warranty, but the Court nevertheless found her express warranty claim inadequate as plead.  *See* Dkt. 4918 at 14-15.  Here, the Plaintiffs do not allege even those insufficient grounds for an express warranty claim, and *a fortiori* fail as a matter of law.

US.124019312

limitation in these states (discussed above), these Plaintiffs' implied breach of warranty claims are likewise time-barred.

        1.      **The Idaho and Virginia Plaintiffs' implied warranty claims are merged with their time-barred product liability claims.**

The Idaho Supreme Court has explained that "[t]he UCC's warranty provisions were not meant to govern cases such as this one where there is no privity of contract between the plaintiff and the defendant, and the plaintiff does not qualify as a third party beneficiary of the seller's warranty . . . ." *Oats v. Nissan Motor Corp.*, 879 P.2d 1095, 1102 (Idaho 1994). Put differently, Idaho retains the privity requirement for warranty claims, and "when a plaintiff brings a non-privity breach of warranty action against a manufacturer or seller to recover for personal injuries allegedly sustained as a result of a defective product, that action is one for strict liability in tort, governed by the provisions of the [Idaho Product Liability Reform Act]." *Id.* at 1105 (holding that plaintiff's "warranty action to recover for personal injuries is essentially a strict liability claim in tort, and it should be governed by the provisions of the IPLRA, including the IPLRA's statute of limitations, rather than the provisions of the UCC.").

Similarly, the Virginia statute of limitations governing warranty claims merges the statute of limitations for implied warranty claims premised on personal injury with the general personal injury statute analyzed above. The statute provides in pertinent part that "as to any action to which § 8.2-725 of the Uniform Commercial Code is applicable, the section shall be controlling except that in product liability actions for injury and for injury to property, other than the property subject to the contract, the limitation prescribed in § 8.01-243 shall apply." *See* Va. Code Ann. § 8.01-246. The general two-year personal injury confirms its application to warranty claims: "Unless otherwise provided in this section or by other statute, *every action for personal injuries, whatever the theory of recovery*, and every action for damages resulting from

fraud, *shall be brought within two years after the cause of action accrues*."  Va. Code Ann. § 8.01-243 (emphasis added).

For these reasons, the Idaho and Virginia Plaintiffs cannot maintain independent breach-of-warranty claims, and the applicable statute of limitations is the general personal injury statute of limitations respectively analyzed in Sections I.B. and I.E. above.  *See Oats*, 879 P.2d at 1105; Va. Code Ann. §§ 8.01-243, 246.  As discussed above, the Idaho and Virginia Plaintiffs failed to commence their actions within the two years required by those statutes.

> **2.    Plaintiffs' implied breach of warranty claims are time-barred under the contractual one year and one day statute of limitations.**

Alabama, Michigan, and Texas have all adopted the presumptive 4-year statute of limitations for breach of warranty claims arising under the UCC, as measured from the date of sale or delivery of the product.  *See* Ala. Stat § 7-2-725(1); Mich. Comp. Laws Ann. § 440.2725; Tex. Bus. & Com. Code Ann. § 2.725.  As the Court can readily see by comparing the filter placement dates – logically, the latest possible delivery or sale date for the filters – to the filing dates, the implied warranty claims are time-barred for nearly all Plaintiffs listed in Exhibit A. For example, the first two Plaintiffs in the list – Plaintiffs Anderson-Kuhn and Davidson – received their filters in 2010 and 2007 respectively, but they did not file their actions until 2016, approximately six and nine years later.  *See* Exhibit A (cases nos. 1 – 2).  In fact, all of the Alabama Plaintiffs, 37 of the 40 Michigan Plaintiffs, and 51 of the 59 Texas Plaintiffs filed their claims more than four years after the placement date of their filters, and their claims would be time-barred under those statutes.  *See id.*[10]

---

[10]    The only 11 Plaintiffs who commenced their actions *within* four years of the placement date alleged in the complaint are Michigan Plaintiffs Diondrae Boone (10.2.2015), George Hubert (9.19.2013) and Walter Simpson (11.26.2014); and Texas Plaintiffs Audra Boggs (5.14.2014), Jasmine Bowen (1.15.2014), Marcella Brady (3.13.2013), Justin Gonzalez

As the Court may recall from the *Gage* bellwether, however, Cook's filters are sold to hospitals with a "Cook Invoice Terms and Conditions," terms that include a choice-of-law provision applying Indiana law, disavow the existence of any implied breach of warranties, and reduce the limitations period for any warranty claims to one year and one day, as permitted under Indiana's UCC. *See* Ind. Code § 26-1-2-725; Cook Defendants' Memorandum in Support of Its Second and Renewed Motion for Summary Judgment, Dkt. 7805, pp. 2-4, 5-9 (discussing the terms and conditions and attaching affidavit of Kevin Brines (*id.* at 17-18) and a copy of the terms and conditions (*id.* at 28), among other exhibits). In his affidavit, Mr. Brines states that including the terms and conditions "is the ordinary business practice of Cook" for filter sales. Dkt. 7805 at 18, ¶ 5. Mr. Brines also identified the terms and conditions in effect at the time of Mr. Gage's filter sale in April 2011. *See id.* After oral argument on these issues, the Court granted summary judgment on the implied warranty claim in the *Gage* case (the last remaining claim) and dismissed the case. *See* Order on Cook's Second and Renewed Motion for Summary Judgment, Dkt. 7809.

The 11 Plaintiffs from these states who filed their cases within the presumptive four-year statute of limitations all received their filters in May 2011 or later (indeed, all but one of them received their filters in 2013 or later). *See* SUMF, ¶ 11; *supra* n. 7 (listing these 11 Plaintiffs and their placement dates). Because all these Plaintiffs received their filters after May 2011 and Cook has included the Cook Invoice Terms and Conditions since at least April 2011, the contractual limitation period of one year and one day applies to these Plaintiffs' claims, and they are time-barred under that provision. Accordingly, the Cook Defendants are entitled to summary judgment on all implied warranty claims in these cases.

---

(2.21.2013), Salvador Lozano (12.2.2014), Sharon Sharp (12.12.2013), Tracy Tapp (3.28.2016), and Estate of Annette Weaver (5.10.2011).

US.124019312

**C.     Plaintiffs' Consumer Fraud Claims Fail Because They Are Not Plead With The Particularity Required By Federal Rule of Civil Procedure 9(b).**

Plaintiffs' fraud-based consumer protection claims (Count VII) fail as a matter of law because Plaintiffs failed to plead them with the particularity required by Fed. R. Civ. P. 9(b). Federal case law makes clear that plaintiffs in federal court on diversity grounds must plead their fraud-based consumer-protection claims with particularity.  That is, "when fraud is alleged, it must be done with particularity and plead the who, what, when, where, and how of the alleged fraud."  *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992); *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 155 F. Supp. 2d 1069, 1109 (S.D. Ind. 2001) (dismissing claims under Michigan and Tennessee consumer protection statutes for failure to meet the heightened pleading requirements of Rule 9(b), including failure to allege "individual reliance").

This Court has not yet needed to rule on this issue because all the bellwether Plaintiffs whose cases have approached trial have voluntarily abandoned their consumer fraud claims. Cook briefed the issue in the context of motion practice on the Category 2 cases, but those cases were likewise dismissed without substantive opposition on the Rule 9 issue regarding the consumer protection claims.

Federal courts in all five of the states at issue here have held that claims under those states' consumer protection and consumer fraud statutes sound in fraud and must be pled with particularity under Fed. R. Civ. P. 9(b).  For example, in Alabama, the Alabama Deceptive Trade Practices Act (ADTPA) "is a statutory substitute for fraud claims in the specific circumstances set forth in [the statute]," *Phillips v. Hobby Lobby Stores, Inc.*, 2018 WL 4635746, at *8 (N.D. Ala Sept. 27, 2018), and "[p]ursuant to Rule 9(b) of the Alabama Rules of Civil Procedure and Rule 9(b) of the Federal Rules of Civil Procedure, fraud must be averred with particularity,"

- 21 -

*Waldrup v. Hartford Life Ins. Co.*, 598 F. Supp. 2d 1219, 1227 (N.D. Ala 2008). *See also Holmes v. Behr Process Corp.*, 2015 WL 7252662, at *2 (N.D. Ala. Nov. 17, 2015) (holding that while plaintiff on the third attempt had "state[d] these claims with more particularity than in her earlier efforts, each [claim still failed] to state a claim that meets the Rule 9(b) standard or the ADTPA standard.").

Federal courts in Idaho, Michigan, Texas, and Virginia have likewise held that those states' consumer protection claims sound in fraud and must be pled with particularity, and courts have regularly dismissed such claims when plaintiffs fail to do so. *See Gibson v. Credit Suisse AG*, 2012 WL 1253007, at *2 (D. Idaho Mar. 30, 2012) ("In addressing the Consumer Protection Act Claim, the Report acknowledged that fraud claims must be plead with a certain level of specificity and particularity.") (internal citation omitted); *Tuttle v. Treasure Valley Marine, Inc.*, 2016 WL, 3198230, at *2 (D. Idaho June 8, 2016) ("As discussed above, allegations involving fraud, such as this [Idaho Consumer Protection Act claim], must be accompanied by the 'who, what, when, where, and how' of the misconduct charged."); *Home Owners Ins. Co. v. ADT LLC*, 109 F. Supp. 3d 1000, 1009 (E.D. Mich. 2015) ("Because Plaintiff's claim for violation of the MCPA does not meet Rule 9(b)'s heightened pleading requirements, this claim will be dismissed."); *Peacock v. AARP, Inc.*, 181 F. Supp. 3d 430, 435 (S.D. Tex. 2016) ("Claims alleging violations of the Texas Insurance Code and the DTPA and those asserting fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation are subject to the requirements of Rule 9(b)") (citing *Frith v. Guardian Life Ins. Co. of Am.,* 9 F. Supp. 2d 734, 742 (S.D.Tex.1998)); *BHR Recovery Communities, Inc. v. Top Seek, LLC*, 355 F. Supp. 3d 416, 424 (E.D. Va. 2018) ("As a claim sounding in fraud, Federal Rule of Civil Procedure 9(b) requires plaintiffs to plead VCPA claims with particularity."); *Fravel v. Ford Motor Co.,*

US.124019312

973 F. Supp. 2d 651, 656 (W.D. Va. 2013) (same holding as *BHR Recovery Communities, Inc.* and further noting that "[f]ailure to comply with Rule 9b's pleading standard is treated as a failure to state a claim under Rule 12(b)(6).") (internal citation omitted).

Here, Plaintiffs' Master Complaint makes only the most general of allegations about Cook's allegedly fraudulent conduct:

> Defendants misrepresented the alleged benefits and characteristics of Cook's IVC Filters; suppressed, omitted, concealed, and failed to disclose material information concerning known adverse effects of Cook's IVC Filters; misrepresented the quality and efficacy of Cook's IVC Filters as compared to much lower-cost alternatives; misrepresented and advertised that Cook's IVC Filters were of a particular standard, quality, or grade that they were not; misrepresented Cook's IVC Filters in such a manner that later, on disclosure of the true facts, there was a likelihood that Plaintiffs would have opted for an alternative IVC Filter or method of preventing pulmonary emboli.

Dkt. 213, ¶ 116. These allegations contain no allegations of the who, what, or how of the alleged misrepresentations, and thus fail to meet Rule 9's particularity requirement. None of the Plaintiffs' short-form complaints provides any additional or more specific allegations; they simply adopt the Master Complaint's vague allegations. Because Plaintiffs have offered only vague, general allegations in support of their consumer fraud claims, those claims fail as a matter of law, and the Court should grant summary judgment in Cook's favor on these claims. *See Holmes*, 2015 WL 7252662, at *2; *Gibson*, 2012 WL 1253007, at *2; *Tuttle*, 2016 WL, 3198230, at *2; *Home Owners Ins. Co.*, 109 F. Supp. 3d at 1009; *Peacock*, 181 F. Supp. 3d at 435; *BHR Recovery Communities, Inc.*, 355 F. Supp. 3d at 424; *Fravel*, 973 F. Supp. 2d at 656.

### D.    Plaintiffs' Derivative Claim for Loss of Consortium and Punitive Damages Fail Because They Cannot Stand on Their Own.

Finally, Plaintiffs' claims for loss of consortium (Count VIII) and punitive damages (Count XI) fail as a matter of law because they are derivative claims that cannot stand on their own. *See e.g., Flying J Fish Farm v. Peoples Bank of Greensboro*, 12 So. 3d 1185, 1196 (Ala.

2008) ("A loss-of-consortium claim is derivative of the claims of the injured spouse.  Therefore, [the wife's] claim must fail if [the husband's] claims fail."); *Runcorn v. Shearer Lumber Prods., Inc.*, 690 P.2d 389, 394 (Idaho 1984) ("The claim for loss of consortium is a wholly derivative cause of action contingent upon a third party's tortious injury to a spouse."); *DeGrate v. Exec. Imprints, Inc.*, 261 S.W.3d 402, 412 (Tex. Ct. App. – Tyler Div. 2008) ("When a loss of consortium is derived from an injury to the spouse, the claim is derivative and thus, must fail if the injured spouse's claims against the defendant fails."); *Benavides v. Cty. of Wilson*, 955 F.2d 968, 975 (5th Cir. 1992) (finding that summary judgment against non-derivative claim also barred the derivative loss of consortium claim).

In the MDL context, the District of Minnesota dismissed loss of consortium claims as derivative when it dismissed the entire master complaint in an MDL involving a PMA device due to federal preemption:

> Claims such as loss of consortium … do not appear to fit neatly into any of the aforementioned categories.  Nevertheless, the Court agrees with Medtronic that any claims in the Complaint not addressed above are derivative of Plaintiffs' other claims and hence cannot stand.

*In re Medtronic, Inc. Sprint Fidelis Leads Prod. Liab. Litig.*, 592 F. Supp. 2d 1147, 1165 (D. Minn. 2009), *aff'd*, 623 F.3d 1200 (8th Cir. 2010).

Here, as discussed above, all of the Plaintiffs' substantive claims fail as a matter of law, and the derivative loss of consortium and punitive damages claims fail along with those substantive claims.  *See e.g., Flying J Fish Farm*, 12 So. 3d at 1196; *Runcorn*, 690 P.2d at 394; *DeGrate*, 261 S.W.3d at 412; *Benavides*, 955 F.2d at 975; *In re Sprint Fidelis Leads*, 592 F. Supp. 2d at 1165.  Accordingly, the Cook Defendants are also entitled to summary judgment on these derivative claims.

US.124019312

## CONCLUSION

For the foregoing reasons, the Cook Defendants are entitled to summary judgment on the claims brought by these 149 Plaintiffs.  The terms of dismissal should be the same as those recently used for the dismissal of Category 1 and Category 2 cases:

(1)    In cases where the filter has been removed, the dismissal should be with prejudice.

(2)    In cases where the filter remains placed in the plaintiff's body, the dismissal should be with prejudice as to all claims, injuries, complications, and outcomes alleged in Plaintiffs' short-form complaints, PPS forms, and Categorization Forms to date.  With respect to re-filing in the event of a future injury, the Court should allow re-filing only in the Southern District of Indiana within the applicable statute of limitations period.

Respectfully submitted,

Dated:  August 2, 2019

/s/ *Andrea Roberts Pierson*
Andrea Roberts Pierson (# 18435-49)
Jessica Benson Cox (#26259-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204-1750
Telephone:    (317) 237-0300
Facsimile:    (317) 237-1000
Andrea.Pierson@FaegreBD.com
Jessica.Cox@FaegreBD.com

James Stephen Bennett (# 22869-02)
FAEGRE BAKER DANIELS LLP
110 West Berry Street, Suite 2400
Fort Wayne, Indiana  46802-2322
Telephone:    (260) 424-8000
Facsimile:    (260) 460-1700
Stephen.Bennett@FaegreBD.com

*Counsel for the Defendants Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

- 25 -

US.124019312

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 2, 2019, a copy of the foregoing brief was filed electronically and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.


<u>/s/ *Andrea Roberts Pierson*</u>

US.124019312

- 26 -