UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |
| This Document Relates to All Actions | |

### COOK DEFENDANTS' MEMORANDUM REGARDING PROPOSED BELLWETHER POOL TRIALS

**I.   INTRODUCTION**

Of the cases remaining in the Bellwether Pool, two cases are not representative of Category 5 and 6 cases – *Ervin* and *Miller* – and will not provide the parties and Court with information that would be useful in this larger MDL litigation.

**II.   THE CASES SELECTED FOR BELLWETHER TRIALS MUST BE REPRESENTATIVE OF THE MDL AND PROVIDE USEFUL INFORMATION NOT OBTAINED FROM THE PRIOR BELLWETHER TRIALS**

As the Court recognized in its 2016 First Bellwether Pool Order, bellwether trials are intended "to provide meaningful information and experience to everyone involved in the litigation.[1]" The goal of the bellwether trial process is to test the strengths and weaknesses of the theories that permeate the majority of cases in an MDL and to establish representative settlement values for categories of cases found within the MDL. Bellwether Trials, at 2325. "[A] case may take on 'bellwether' qualities . . . when it is selected for trial because it involves facts, claims, or

---

[1] Fallon, E.E., Grabill, J.T., and Wynne, R.P., Proceedings of the Tulane Law Review Symposium: The Problem of Multidistrict Litigation: Bellwether Trials in Multidistrict Litigation, 82 Tul. L. Rev. 2323, 2332 (June 2008) (hereinafter, "Bellwether Trials").

US.124205879.03

defenses that are similar to the facts, claims, and defenses presented in a wider group of related cases." Bellwether Trials, at 2332.

In the First Bellwether Pool Order, the Court strove to ensure the selected bellwether trial cases were representative of the MDL as a whole, avoiding trials of "outlier" cases. *See* First Bellwether Trial Order at p. 1 (stating "[t]he more representative the Bellwether cases, the more reliable the information obtained at trial will be"). That goal or representativeness remains for the second set of bellwether trials. *See* Amended Case Management Order # 25 (Bellwether Selection Plan Protocol) [Docket No. 11388], at p.3 ("The [C]ourt will select three *representative* cases as the next bellwether trials: two Tulip cases and a Celect case.") (emphasis added).

### A. The Court Should Not Select Cases Alleging Complications or Physical Symptoms

The Court restricted the cases considered for this second Bellwether Pool to Category 5 and 6 cases, and not Category 7 cases (cases with physical symptomatology), to permit the Court and the parties to learn more about those cases in which plaintiffs do ***not*** allege physical symptoms like pain or complications attributable to their IVC filters.[2] As noted in Cook's prior Motion for Screening Order and Bellwether Selection Plan ("Cook Motion") [Docket No. 8449], product-in-place/no injury cases are the largest case type in the MDL, making up approximately one half of the MDL inventory. *See* Cook Motion at pp. 1-2. Selecting such cases as the next three bellwether trials will help identify the proper limits of "injury" and "no injury" in this

---

[2] Category 5 cases are defined in the case categorization submissions as those cases "where the plaintiff has undergone one or more failed retrieval procedures and [] cases where plaintiff's filter was retrieved but required the use of a non-routine, complicated retrieval method" other than an open removal procedure. Category 6 cases are defined as those cases "where plaintiff alleges non-symptomatic filter movement, migration, penetration, perforation, thrombosis, occlusion, or the presence of the clot in the filter that has not produced physical symptoms or complications."

2

MDL, an issue that has hindered the MDL's resolution. The Court has already tried claims involving organ perforation, complicated retrieval, fracture, and open surgical removal in the *Hill* and *Brand* trials. And, as the Court previously noted, this second round of bellwether trials are to be selected from the Category 5 or 6 pool of cases. Order on the Cook Defendants' Motion for Screening Order and Bellwether Selection Plan [Docket No. 9322], at p.4.

    **B.**    **The Court Should Select Bellwether Cases with the Most Common Injury Types**

Within Categories 5 and 6, the most frequently alleged injuries for both the Gunther Tulip and the Celect are: *Perforation*, *Unable to be Retrieved*, and *Tilt*. *See* Table 1 below. Cases involving these alleged failure modes will therefore be the most representative of Categories 5 and 6, and those cases will provide the most valuable information for the greatest number of MDL plaintiffs.

**Table 1. MDL 2570 Statistics on Category 5 and 6 Cases** [3]

| Category 5 & 6 | Totals | Perforation | Unable to be Retrieved | Tilt | Organ Perforation | Migration | Thrombosis |
|---|---|---|---|---|---|---|---|
| Total Günther Tulip & Celect Cases[4] | 1658 | 903 (54%) | 763 (46%) | 747 (45%) | 210 (13%) | 179 (11%) | 34 (2%) |
| Günther Tulip | 909 (55%) | 485 (53%) | 431 (47%) | 383 (42%) | 110 (12%) | 80 (9%) | 19 (2%) |
| Celect | 749 (32%) | 418 (56%) | 332 (44%) | 364 (49%) | 100 (13%) | 99 (13%) | 15 (2%) |

---

[3] The information available to judge common injuries and theories within this MDL is based on self-reporting by the Plaintiffs in the PPF/PFS. Table 1 was compiled from 1658 Tulip or Celect cases where a PPF/PFS was served as of July 22, 2019.

[4] This table does not include Category 5 and 6 Celect Platinum cases, Günther Basket cases, or cases where insufficient information was provided to identify the product at issue.

C.   **The Court Should Select Cases Involving Filters That Remain *In Vivo***

The *Hill* and *Brand* trials both involved retrieval attempts of the plaintiffs' IVC filters within three years of placement and ultimate filter removals within six years of placement. For the second set of bellwether trials, the Court should select cases where the plaintiff's IVC filter remained *in vivo* for an extended period of time or remains *in vivo*. Plaintiffs alleged damages in these cases include allegations of anxiety, stress, or a need for continued monitoring of the IVC filter. By selecting such cases for bellwether trials, the Court would have the opportunity to analyze the legal viability of such claims and, if necessary, a jury would have the opportunity to hear and resolve such claims and Cook's defenses to them.

III.   **BELLWETHER POOL CASES TO BE CONSIDERED BY THE COURT**

Of the seven remaining cases in the bellwether pool,[5] two Celect cases (*Burrage* and *Forrester*) and two Tulip cases (*Johnson* and *McDermitt*) best fall within this Court's criteria for representativeness. Cook urges the Court to select the three as the next bellwether trials from these four cases.

A.   **The Tulip Cases:  *Ervin, Harris, Johnson, McDermitt***

This Court should choose the *Johnson* and *McDermitt* cases as the two Tulip bellwether trials as these representative cases allege injuries most common to a majority of the Category 5 and 6 cases. The *Ervin* case, on the other hand, is not representative because it is not a true Category 5 or 6 case as plaintiff contends she experienced pain with their alleged injuries.

1.   ***Ervin* is Not A Representative Tulip Case**

a)   **Hilda Ervin** –*Pain/Discomfort, Migration, Unable to Retrieve*

---

[5] On July 11, 2019, the parties appeared before the Court and exercised their strikes and the remaining Bellwether Pool of seven cases remained.

4

The Court should decline to select Ms. Hilda Ervin's case for a bellwether trial because she alleges pain and has an unrepresentative injury. Ms. Ervin's Tulip filter was placed on December 3, 2011, after diagnosis with a lower leg deep vein thrombosis and pulmonary embolism following foot surgery. As with the plaintiffs in *Hill* and *Brand*, Ms. Ervin's physician attempted to remove her IVC filter within three years of placement, on September 17, 2012, but was unsuccessful. Ms. Ervin now alleges her IVC filter migrated and is unable to be retrieved. She also specifically attributes "pain" to her Tulip IVC filter.

Ms. Ervin's case is not appropriate for this Bellwether Pool given that she associates pain and medical symptoms related to her IVC filter. Though Ms. Ervin reports her case as being Category 5, it should more appropriately be recognized as a Category 7 case because she is unequivocally alleging "medical symptoms, conditions or complications caused by one or more of the following conditions[, i.e. migration]." Specifically, her amended Plaintiff Profile Sheet ("PPS") states that she attributes the physical symptoms of pain and discomfort with her Tulip IVC filter. One of the purposes of this current bellwether selection was specifically to analyze those cases where plaintiffs ***were not*** alleging physical symptoms or complications associated with their IVC filters. If this case had been properly categorized as a Category 7 case, as it should have been, it would never have been eligible for this Bellwether Pool.

Even looking past this case's miscategorization, the *Ervin* case is not representative. Ms. Ervin's main allegation is that her Tulip filter migrated, a rare injury type reported in just 9% of Category 5 and 6 Tulip cases. Ms. Ervin's allegations of pain and medical symptoms, combined with her uncommon injury allegation of migration cause her case to be inappropriate as a bellwether trial.

5

    **2.**    **Representative Cases**

    *a)*    **James A. Johnson** – *Perforation, Tilt, Filter Remains In Vivo*

Mr. James A. Johnson's is a representative case for this Court to select for a Tulip bellwether trial because:

(1) he has representative injuries;

(2) he alleges no pain from perforation or tilt; and

(3) his filter remains *in vivo*.

Mr. Johnson was 59 years old when his Tulip filter was placed January 9, 2007, following findings of upper extremity and lower extremity deep vein thrombosis and inability to anticoagulate because of a pituitary tumor. Mr. Johnson claims his IVC filter tilted and perforated his vena cava. Mr. Johnson additionally alleges the continued presence of his IVC filter is causing him stress and anxiety.

The perforation Mr. Johnsons alleges is the injury alleged in 54% of Category 5 and 6 cases, and the tilt he alleges is an injury alleged in 45% of Category 5 and 6 cases. The common nature of the injuries alleged, combined with Mr. Johnson's IVC filter's *in vivo* time of over 12 years, would provide valuable information to the parties and the Court that are transferable to numerous other MDL cases.

    *b)*    **David McDermitt** – *Perforation, Filter Remains In Vivo*

Like the *Johnson* case, David McDermitt's case should also be chosen as one of the two Tulip cases set as a bellwether trial because:

(1) he alleges a common injury;

(2) he alleges no pain associated with his injury; and

(3) his filter remains *in vivo*.

6

Mr. McDermitt's Tulip IVC filter was placed at Indiana University Health Methodist Hospital on January 8, 2007.  The filter was placed following diagnosis of abdominal bleeding, left leg deep vein thrombosis, and a finding that Mr. McDermitt was a poor candidate for anticoagulation. Mr. McDermitt's Tulip IVC filter remains *in vivo,* and has for over 11 years.  Mr. McDermitt contends that his Tulip IVC filter perforated, that his IVC filter requires constant medical monitoring, and that he lives with daily fear that his Tulip IVC filter will malfunction.

Mr. McDermitt's case is representative and appropriate for the Court's selection as a Tulip bellwether trial.  His case exemplifies several allegations that need to be analyzed by the Court and (if necessary) weighed by a jury:  a long *in vivo* time and common injury allegations of asymptomatic perforation, fear, and need for continuous medical monitoring.  In addition, Mr. McDermitt's IVC filter implant procedure at a hospital in Indianapolis, Indiana, would make for easier access to key case witnesses and information.

    *c)*  **Dorian Harris** –*Perforation, Unable to Retrieve*

Ms. Dorian Harris is a Category 6 case.  Ms. Harris self-reported her case as a Category 6 in her Categorization Form Submission, listing her injuries under Category 6 as asymptomatic perforation, and she lists "unable to be retrieved" as an additional injury under Category 4.  Her Tulip filter has been *in vivo* since 2009.  While not as representative as the *Johnson* and *McDermitt* cases, *Harris* appears to be a Category 6 based on her Categorization Form and the limited records available to date.

  **B.**  **The Celect Cases:  *Burrage*, *Forrester*, *Miller***

    **1.**  ***David Miller* Is Not Representative**

Mr. Miller's case is not an appropriate Bellwether case selection for several reasons:

 (1) his alleged injury of thrombosis is uncommon and not representative; and

7

   (2) he claims a unique physical symptom associated with alleged injuries.

Mr. David Miller had his Celect filter placed at age 61, following a finding of extensive bilateral pulmonary emboli in his lungs.  Mr. Miller alleges that his Celect filter subsequently perforated; however, he also contends in his PPS that his filter caused post-filter thrombosis and "[o]nset of vertigo, anxiety, and loss of physical activity," including "[l]ifting, shoveling snow, [and] moving furniture."

  The combination of the symptomatic perforation alleged by Mr. Miller, and the relative rarity of post-filter thrombosis as an alleged injury (2% of Category 5 and 6 cases) means that the Miller case would not provide as much or as useful information as either *Burrage* or *Forrester*, in which the allegations focus on asymptomatic perforation and anxiety and fear from the filter's *in vivo* time.

    **2.**   **Representative Cases**

     *a)*   **Eddie Burrage** – *Perforation*, *Filter In Vivo*

  Mr. Eddie Burrage is a representative case that would further the goals of the bellwether process for several reasons:

  (1) he alleges the most common injury type for a Celect case; and

  (2) his filter remains *in vivo*.

  Mr. Burrage had his Celect filter placed at age 58 after experiencing deep vein thrombosis in his right leg and extensive bilateral pulmonary embolism while on anti-coagulation medicine.  Mr. Burrage alleges that his filter subsequently perforated his vena cava, causing stress and anxiety, and that his filter has remained *in vivo* for six years.  Mr. Burrage's alleged injury of perforation is representative of 54% of the MDL Category 5 and 6 cases that involve the Celect.  Because he alleges the most common failure mode reported for Celect cases in

8

Categories 5 and 6, and because his filter remains *in vivo*, Mr. Burrage's case is representative of others in these two categories and would be an appropriate bellwether selection.

### b) **Stephen Forrester** – *Perforation, Unable to Retrieve*

Mr. Stephen Forrester is another representative case that would further the goals of this Bellwether process because, like Mr. Burrage:

(1) he has the most common injury type alleged for perforation and unable to retrieve; and

(2) his filter remains *in vivo*.

Mr. Forrester was 49 years old at the time his Celect filter was placed following a motor vehicle accident. His doctors prescribed a filter for protection from venous thromboembolism, as prolonged immobilization was expected (from a spinal injury), and a subarachnoid hemorrhage prevented traditional anti-coagulation medication.

Mr. Forrester's allegation of the two most common alleged injuries, perforation and unable to be retrieved,[6] and his IVC filter's *in vivo* time of eight years would make Mr. Forrester's case appropriate for bellwether selection.

## IV. CONCLUSION

Based on the foregoing, Cook proposes that the Court select either *Burrage* or *Forrester* as the one Celect bellwether trial and *Johnson* and *McDermitt* as the two Tulip bellwether trials, and grant it all other proper relief.

---

[6] Mr. Forrester's perforation and unable to be retrieved allegations account for 56% and 44% of the Category 5 and 6 cases involving the Celect, respectively.

Respectfully submitted,

Dated:  August 13, 2019 /s/*Andrea Roberts Pierson*
Andrea Roberts Pierson (# 18435-49)
Jessica Benson Cox (#26259-49)
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana 46204-1750
Telephone: (317) 237-0300
Facsimile: (317) 237-1000
Andrea.Pierson@FaegreBD.com
Jessica.Cox@FaegreBD.com

James Stephen Bennett (# 22869-02)
FAEGRE BAKER DANIELS LLP
110 West Berry Street, Suite 2400
Fort Wayne, Indiana  46802-2322
Telephone: (260) 424-8000
Facsimile: (260) 460-1700
Stephen.Bennett@FaegreBD.com

*Counsel for the Defendants Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 13, 2019, a copy of the foregoing was filed electronically and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.

/s/*Andrea Roberts Pierson*