UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB MDL No. 2570 |

This document relates to:
144 Cases From Five States Listed in Exhibit A

**COOK DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
RENEWED OMNIBUS MOTION FOR SUMMARY JUDGMENT
<u>BASED ON APPLICABLE STATUTE OF LIMITATIONS</u>**

The Cook Defendants[1] move for summary judgment with respect to the 144 cases filed by the

plaintiffs listed in **Exhibit A** and ask the Court to enter judgment in those cases because they were not

timely filed.[2]  The motion applies to 12 Alabama Plaintiffs, 7 Idaho Plaintiffs, 40 Michigan Plaintiffs, 57

Texas Plaintiffs, and 28 Virginia Plaintiffs.[3]

Section I of this brief addresses a procedural issue; Section II analyzes the Indiana statute of limi-

tations that bars Plaintiffs' personal injury claims; Section III analyzes in the alternative the statute of limi-

tations of Plaintiffs' home states (which would also bar Plaintiffs claims if they applied); and Section IV

explains the reasons Plaintiffs' other claims also fail as a matter of law.

<u>INTRODUCTION AND SUMMARY</u>

As the Court has seen firsthand, Plaintiffs overarching focus on building inventory has come with

little regard for the merit of the underlying claims, as demonstrated by the proliferation of "no injury" cas-

---

[1]     As used in this memorandum, "Cook" and "the Cook Defendants" refer to Defendants Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS.

[2]     Save for five cases that were excluded for case-specific reasons, these 144 Plaintiffs were all subject to Cook's original motion that was filed on August 2, 2019 (Dkts. 11502-03) and withdrawn on September 4, 2019 (Dkt. 11711).

[3]     The 144 plaintiffs listed in Exhibit A are referred to collectively as "Plaintiffs."  As necessary, they are referred to individually by their names (e.g., "Plaintiff Boone") and in groups by their home state by adding the state to the term Plaintiffs (e.g., the "Alabama Plaintiffs").

es on the Court's docket and also a widespread failure to recognize and observe applicable statutes of limitation. For example, Cook prevailed in the *Gage* bellwether on summary judgment because the claims in that case were time-barred, a bar that should have been plain when the case was first evaluated. *See* Orders, Dkts. 7715 & 7809. Similarly, the Court dismissed Plaintiff Valerie Graham's claims because they accrued at the time of her retrieval procedure, and she file her lawsuit two years too late. *See* Entry on the Cook Defendants' Motion of Summary Judgment, *Graham* (1:15-cv-00764), Dkt. 164. More recently, Cook has noted that that it would be futile to reinstate about a quarter of the cases with pending motions to reconsider and/or vacate because their claims are time-barred. *See, e.g.,* Cook's Omnibus Opposition, Dkt. 11189 (arguing that five cases are time-barred under the law of Plaintiffs' home states). The cases at issue in this motion represent 15-20% of all the cases from those states pending in the MDL.[4]

Most standalone cases avoid issues of timeliness because the Federal Rules incent counsel to heed these issues: pleading requirements require plaintiffs to set forth a plausible claim for relief with sufficient factual background, and Rule 11 imposes a duty on counsel not to pursue meritless claims. *See generally* Fed. R. Civ. P. 8, 9 & 11. In an MDL, however, individual pleading requirements are loosened, and the filing of time-barred cases unfortunately can become commonplace when counsel file cases – often on behalf of online clients from far-flung states – without adequate attention to the applicable statutes of limitations. The premise behind this "park and ride" strategy is to park the case on the docket of the MDL and ride out the litigation in the hope that a global settlement occurs before anyone digs under the surface to test the merits of the case. As one recent MDL court explained: "Some lawyers seem to think that their cases will be swept into the MDL where a global settlement will be reached, allowing them to obtain a recovery without the individual merit of their case being scrutinized as closely as it

---

[4]        Cook selected the cases for the motion based on the MDL inventory as it existed in July 2019. The 149 cases included in the original motion represented 13% of all Alabama cases (12 of 92), 19.4% of Idaho cases (7 out of 36), 16.2% of Michigan cases (40 out of 246), 17.8% of Texas cases (49 out of 330), and 20.3% Virginia cases pending in the MDL at that time.

US.124539042

would if it proceeds as a separate, individual action." *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, 2016 WL 4705807, at *1 (M.D. Ga. Sept. 7, 2016).

Extensive failure to abide by applicable statutes of limitation forces the Court and the parties to devote attention to time-barred cases that should never have been filed, straining resources and wasting time for the Court, the defendants, and plaintiffs who timely-asserted claims. Such failure also makes a global resolution more difficult, because the pool of cases considered includes significant numbers of cases that, on the merits, have no value. For reasons such as these, the JPML considers resolution of dispositive motions to be the MDL court's "perhaps most important" task.[5]

When Cook has raised timeliness concerns in this MDL, the response has generally been to invoke the discovery rule or to downplay such concerns as "premature" and/or "factual" issues. But such responses threaten to let the exceptions swallow the rule, to the point of making the statute of limitations meaningless in every case that does not actually go to trial. Docket management is of paramount importance in an MDL, and the proliferation of time-barred cases is a considerable strain on moving this litigation forward in an orderly manner.[6] Cook thus urges the Court to intervene on these issues now and to call the necessary balls and strikes. Addressing this issue through omnibus motion practice will pro-

---

[5]     *See* JPML & Federal Judicial Center, *Ten Steps to Better Case Management, a Guide for Multidistrict Litigation Transferee Judges* § X(a) (2d ed. 2014), available at https://www.fjc.gov/sites/default/files/2014/Ten-Steps-MDL-Judges-2D.pdf.

[6]     Many courts have stressed the importance of docket management in an MDL, and that is particularly important in a large MDL like this one. *See e.g., Dzik v. Bayer Corp.*, 846 F.3d 211, 216 (7th Cir. 2017) ("District courts handling complex, multidistrict litigation must be given wide latitude with regard to case management in order to achieve efficiency.") (internal citations omitted); *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 628 F.3d 157, 161 (5th Cir. 2010) ("The challenge to case administration arose here from the court's obligation to manage thousands of claims against numerous defendants in an efficient and expeditious manner that would best serve justice for both plaintiffs and defendants. That multiparty background heavily influenced the trial court and permeates this court's review"); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 867 (8th Cir. 2007) ("MDL courts must be given greater discretion to organize, coordinate and adjudicate its proceedings, including the dismissal of cases for failure to comply with its orders") (internal citations omitted).

US.124539042

mote orderly docket management and encourage counsel to heed the statute of limitations *before* filing, as the Federal Rules require and as attorneys routinely do in standalone cases.  Simply put, Cook should not be forced to take hundreds of costly, unnecessary depositions to "discover" facts that are plain for all to see.  Accordingly, Cook asks the Court to begin addressing the statute of limitations issues in this MDL in these 144 cases.

Federal courts apply forum law on substantive issues, including choice-of-law rules, and MDL courts apply the choice-of-law rules of the state where the case originated.  All of the cases at issue in this motion originated here in the Southern District of Indiana.  Thus, Indiana choice-of-law rules apply.[7] While Indiana maintains a presumption in favor of *lexi loci delicti* on substantive matters where Indiana law conflicts with the laws of other states at issue, it is well-settled Indiana law that the statute of limitations is procedural in nature and therefore forum law – that is, Indiana law – controls.

Although Indiana courts recognize a discovery rule, it is quite limited.  Plaintiffs' claims begin to accrue as a matter law when the plaintiff has enough information at his or her disposal to discover through ordinary diligence that the plaintiff has an injury related to a product. Events such as a doctor's diagnosis of the condition at issue or confirmation of a product malfunction on imaging objectively serve to trigger the statute of limitations because evidence of such information confirms Plaintiffs had enough information to discover their claimed injuries, and their failure to file within the limitations period bars their claims.  Moreover, courts applying Indiana law have confirmed on multiple occasions that the statute of limitations logically cannot start any later than upon a corrective medical procedure or removal of the medical device.  Finally, Indiana courts have categorically rejected efforts to define the trigger date in terms of knowledge of the legal cause and applicable legal theory.  Under these standards, the statute of limitations for Plaintiffs' claims began to accrue on the dates reflected in the medical records they submit-

---

[7]     The plaintiff's home state choice-of-law rules apply in cases transferred from other federal districts, but there are no such cases among the 144 cases subject to this motion.

ted in support of categorization.  In the 144 cases subject to this motion, those records confirm that Plaintiffs had enough factual information to discover the basis of their claims more than two years before filing, and their claims fail as a matter of law because they did not file within that period.

Even if Indiana law did not apply to these cases, Cook nevertheless would be entitled to summary judgment in these cases.  Legislatures and courts in Alabama, Idaho, Michigan, and Virginia have rejected invitations to create loose discovery-rule exceptions.  In these four states, a claim accrues for statute-of-limitations purposes when the claimed injury occurs.  Because Plaintiffs have identified their claimed injuries in their categorization forms, compliance with the statute of limitations in cases subject to the laws of these four states can be readily determined by comparing the dates of the medical records Plaintiffs submitted to support categorization with the dates the actions were commenced.  And although Texas (like Indiana) has a limited discovery rule, Texas courts have held in the medical device context that discovery of an injury on imaging objectively serves to trigger the statute of limitations, and that in any event the statute of limitations logically cannot start any later than upon removal of the device.  Thus, in the 144 cases subject to this motion, Plaintiffs have failed to commence their actions within the respective statutory periods, and their tort claims fail as a matter of law, whether the timeliness of their claims is analyzed under Indiana law or the law of their home states.

Because these Plaintiffs' non-tort claims also fail as a matter of law for other reasons, the Cook Defendants are entitled to summary judgment in these cases.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      On October 2, 2018, the Court entered its Categorization and Screening Order, Dkt. 9322, ordering all MDL plaintiffs to categorize their cases in one of seven categories and to support those selections with specific medical records.

US.124539042

2.      Through subsequent orders, the Court set deadlines (and later gave multiple extensions) and adopted the form that plaintiffs were required to use. *See* Orders, Dkts. 9638, 9907 & 10617.  In pertinent part, the Case Categorization Form (Dkt. 9638-1) stated that "plaintiff[s] may select more than one of the seven categories outlined in the Categorization Form, with the understanding that only the 'highest' alleged category will be considered for purposes of the census ordered by the Court" and that "each category alleged requires a specific medical record." *See* Dkt. 9638-1.

3.      The Categorization Form further required that counsel certify that "the categorization is based on a review of the available medical records including imaging reports and records" and that "submission of the specific medical record(s) … are counsel's certification that the outcome, complication, or injury represented in [the Form] is the proper categorization for Plaintiff's case to the best of counsel's knowledge and belief.". *Id.* at 4.

4.      All Plaintiffs listed in Exhibit A have provided Categorization Forms and supporting records, and they are categorized in the census in Categories 3 to 7.  Category 1 cases were subject to immediate dismissal under the Categorization and Screening Order and were subsequently dismissed (Dkt. 10588), and nearly all Category 2 cases have also been dismissed as a result of voluntary dismissals and motion practice.[8]

5.      Due to the number of cases subject to this motion, the Cook Defendants have reviewed Plaintiffs' short-form complaints, Categorization Forms, and supporting medical records, and summarized the relevant information from those materials in Exhibit A.[9]

---

[8]      The Court confirmed that the information in the categorization forms and supporting records may be used for summary judgment purposes when it denied PSC's motion to strike Cook's original motion for summary judgment.  *See* Entry on the August 20, 2019 Status Conference, Dkt. 11602 (denying PSC's motion to strike and setting briefing schedule).

[9]      *See* Fed. R. Evid. 1006 (permitting parties to submit evidence through summaries and charts when the information is otherwise cumbersome to present to the Court).

US.124539042

6.      Exhibit A provides the following information for all 144 Plaintiffs' cases:

- Plaintiff's Name;

- Plaintiff's Case Number;

- Plaintiff's Home State (as denoted by the state of current residence and state of alleged injury in the Plaintiff's complaint);

- The placement date for Plaintiff's filter;

- The Plaintiff's highest category in the census;

- A short description of the categories selected in each Plaintiff's Categorization Form, along with the dates on the specific medical record(s) submitted in support of those claims;[10] and

- The filing date of Plaintiff's case.

7.      Of the 144 cases at issue here, 143 Plaintiffs represent in their complaints that they reside in Alabama, Idaho, Michigan, Texas, or Virginia and allege that their injuries occurred in their home states.  Although Plaintiff Sandra Jackson left the state-specific fields of her short-form complaint blank, all available records indicate that she is from Virginia and underwent all her relevant medical care in Virginia.[11]  Additionally, all 144 Plaintiffs filed their cases in this Court; none of them were transferred from other districts by the JPML.

8.      In each of the cases on Exhibit A involving Plaintiffs from Alabama, Idaho, Texas, and Virginia, the date on which each Plaintiff first filed his or her lawsuit is more than two years after the date of the injury that Plaintiff relies on in the medical record(s) the Plaintiff submitted as evidence of injury with that Plaintiff's categorization form.

---

[10]     As this motion applies to 144 cases, it would have been impractical for the Cook Defendants to attach the Case Categorization Forms and supporting records submitted by all these Plaintiffs as part of the categorization process.  Because these forms and records were submitted by Plaintiffs' attorneys, Cook does not believe there will be any dispute as to their contents.  To the extent there is any dispute, Cook will address those concerns on reply.

[11]     The Cook Defendants have limited this to cases where the Plaintiffs' states of residence and states of alleged injury – as alleged by Plaintiffs in Paragraph 6 of their short-form complaints – are the same.  Thus, the choice-of-law issues presented by this motion are limited to determining whether the issue is controlled by Indiana law or the law of Plaintiffs' home states.

9.      In each of the cases on Exhibit A involving Plaintiffs from Michigan, the date on which each Plaintiff filed his or her action is more than three years after the date of the injury that Plaintiff relies on in the medical record(s) that the Plaintiff submitted as evidence of injury with that Plaintiff's categorization form.

10.     With respect to the 28 Virginia Plaintiffs subject to the motion, the dates in Exhibit A indicate that their claims accrued before July 1, 2016.

11.     As part of summary judgment briefing on the warranty claim in the *Gage* case, the Cook Defendants submitted the Affidavit of Kevin Brines and a copy of the "Cook Invoice Terms and Conditions."  *See* Cook Defendants' Memorandum in Support of Its Second and Renewed Motion for Summary Judgment, Dkt. 7805, pp. 17-18 (Brines Affidavit), p. 28 (copy of terms and conditions).  Mr. Brines explained in his Affidavit that it "is the ordinary business practice of Cook" to include the terms and conditions as part of every filter sale.  *Id.* at 18, ¶ 5.  He also identified the terms and conditions in effect at the time of Mr. Gage's filter sale in April 2011.  *See id.*  Those terms and conditions include the following relevant provisions: (1) an Indiana choice-of-law rules provision, (2) disclaimer of implied warranties, and (3) reduction of the statute of limitations on implied warranties to one year and one day, as permitted by the Indiana UCC.  *See id.* at 28.

12.     With respect to Plaintiffs from the three states that recognize independent breach of warranty claims in the personal injury context – Alabama, Michigan, and Texas –  there are 10 Plaintiffs who filed their claims within four years of the date of the filter placement procedures:  Michigan Plaintiffs Diondrae Boone, George Hubert, and Walter Simpson; and Texas Plaintiffs Audra Boggs, Jasmine Bowen, Marcella Brady, Justin Gonzalez, Salvador Lozano, Sharon Sharp, and Estate of Annette Weaver.  *See* Exhibit A.  However, all 10 of these Plaintiffs received their filters after April 2011, and their filters were accompanied by the "Cook Invoice Terms and Conditions" that reduced the limitations period for claims

of breach-of-warranty claims to one year and one day.  *See* Exhibit A (listing placement dates); Dkt. 7805, pp. 17-18, 28.

## STANDARD OF REVIEW

"[S]ummary judgment procedure is governed by federal law" and "[f]ederal law defines the standard for evaluating the sufficiency of the evidence." *Maroules v. Jumbo, Inc.*, 452 F.3d 639, 645 (7th Cir. 2006).  "A district court should grant summary judgment only if the pleadings, depositions, answers to interrogatories, admissions, and affidavits 'show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Miller v. A.H. Robins Co.*, 766 F.2d 1102, 1104 (7th Cir. 1985) (quoting Fed. R. Civ. P. 56).  In evaluating a motion for summary judgment, the court must view the facts and make all reasonable inferences that flow from them in a light most favorable to the non-moving party. *Zillak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003).

Whether a claim has been brought within the relevant period of limitations presents an issue of state law.  *See In re Bridgestone/Firestone Inc. ATX ATXII, Wilderness Tires Prod. Liab. Litig.*, 2002 WL 31689264, at *2 (S.D. Ind. Nov. 20, 2002) ("As a court sitting in diversity, we must look to state law in deciding all matters of substance, including the operation of the relevant statutes of limitations.") (citing *Horbach v. Kaczmarek*, 288 F.3d 969, 976 (7th Cir. 2002)).

## ARGUMENT

I.    **Indiana Law Applies to Plaintiffs' Claims Because Plaintiffs Originally Filed Their Cases in This Court And Statute of Limitations Are Procedural Under Indiana Law**

A.    **Indiana Choice-of-Law Rules Apply to These Cases Because They Were Originally Filed in this Court**

Federal courts apply forum choice-of-law rules to determine the applicable substantive law.  *See e.g., Couch v. Wilco Life Ins. Co.*, 363 F. Supp. 3d 886, 893 (S.D. Ind. 2019) ("A federal court sitting in diversity, as this Court does, must apply the choice of law provisions of the forum state."); *Shifrin v. Lib-*

US.124539042

*erty Mut. Ins.*, 991 F. Supp. 2d 1022, 1034 (S.D. Ind. 2014) ("A federal court sitting in diversity must apply the choice of law provisions of the forum state."); *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006) ("Federal courts sitting in diversity apply the choice-of-law rules of the forum state to determine the applicable substantive law.") (citing *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir. 2000), and *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).

In an MDL, courts apply the choice-of-law rules of the state where the case "originated": "the prevailing rule in this situation that in a case that was directly filed in the MDL transferee court but that originated elsewhere, the law (including the choice of law rules) that applies is the law of the state where the case originated." *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 977 F. Supp. 2d 885, 888 (N.D. Ill. 2013) (citing *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*, 2011 WL 1375011, at *5 (S.D. Ill. Apr. 12, 2011)); *In re Eli Lilly & Co., Prozac Prods. Liab. Litig.*, 789 F. Supp. 1448, 1450 (S.D. Ind. 1992) (citing 15 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 3866 (1986) (collecting cases)).

Here, the Court addressed the question of case origination as part of its rulings regarding the applicability of *Lexecon* to the current round of bellwether cases. As the Court explained it has **"complete authority over cases originally filed in this court, just as it would over any other cases originally filed in this district."** Entry for June 13, 2019, Dkt. 11131 (emphasis added). Because a large majority of the MDL cases, including all 144 cases subject to this motion, were originally filed in this court, these cases "originated" here in the Southern District.[12] Accordingly, forum choice-of-law rules -- Indiana -- apply to these

---

[12]     In the minority of cases that originated elsewhere and were transferred to this Court by the JPML, the proper procedure is to apply the choice-of-law rules of the state where the transferor court sits. That provision is not applicable here because all the cases subject to this motion were originally filed in the Southern District.

US.124539042

Plaintiffs' cases.  *Couch*, 363 F. Supp. 3d at 893; *Shifrin*, 991 F. Supp. 2d at 1034; *Tanner*, 433 F.3d at 915 (7th Cir. 2006); *Klaxon Co.*, 313 U.S. at 496.

### B.   Indiana Statue of Limitations Govern Plaintiffs' Claims Because Statutes of Limitation Are Procedural Under Indiana Law

Indiana was a traditional *lexi loci delicti* state and its current approach to choice-of-law rules retains a *lex loci* presumption "that the law of the place of the tort applies because in a 'large number of cases, the place of the tort will be significant and the place with the most contacts.'"  *Simon v. U.S.*, 805 NE.2d 798, 805 (Ind. 2014) (quoting *Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind. 1987)). Under well-settled Indiana law, however, statute of limitations are ***procedural*** in nature.  Thus, Indiana courts apply Indiana statutes of limitation when choice of law issues arise in that context, because "[a] statute of limitations is a procedural constraint on when suit may be filed."  *Smither v. Asset Acceptance, LLC*, 919 N.E.2d 1153, 1158 (emphasis added) (citing *Kissel v. Rosenbaum*, 579 N.E.2d 1322, 1326-27 (Ind. Ct. App. 1991)); *see also Lee v. Estate of Cain*, 476 N.E.2d 922, 924 (Ind. Ct. App. 1985) ("It is well settled that the law of the forum state governs in procedural matters and the limitations statutes, being procedural in nature, fall within the rule."); *Horvath v. Davidson*, 264 N.E.2d 328, 332 (Ind. Ct. App. 1970) ("If an action is barred by the statute of limitations of the forum, no action can be maintained though the action is not barred in the state where the cause of actions arose.").

This Court and its sister court in the Northern District have held on many occasions that forum law applies to choice-of-law issues and requires application of Indiana statute of limitations:  "'Because in Indiana statutes of limitations are procedural in nature, Indiana choice-of-law rules state that the statute of limitations of the forum state, Indiana, will apply.'"  *Bitler Inv. Venture II, LLC, v. Marathon Ashland Petroleum, LLC*, 779 F. Supp. 2d 858, 889 (N.D. Ind. 2011) (quoting *Autocephalous Greek–Orthodox Church of Cyprus v. Goldberg & Feldman Fine Arts, Inc.*, 717 F. Supp. 1374, 1385 (S.D. Ind. 1989), *aff'd*, 917 F.2d 278 (7th Cir. 1990); *see also McLaughlin Equip. Co. v. Servaas*, 2004 WL 1629603, at

*46 (S.D. Ind. Feb. 18, 2004) ("The court concludes that it must apply Indiana's choice of law rules including its statute of limitations to McLaughlin's state law claims, even though another state's substantive law governs those claims.  To the extent McLaughlin suggests that the court should apply the statute of limitations of a different state because the substantive law governing its claims are supplied by that state, it is simply incorrect.") (internal citations omitted); *Bailey v. Skipperliner Indus, Inc.*, 278 F. Supp. 2d 945, 952 (N.D. Ind. 2003) ("Because Indiana treats statutes of limitations as procedural, this Court, sitting in diversity, is compelled to do so as well.  This Court therefore declines Plaintiffs' invitation to alter current Indiana law and hold that statutes of limitation are substantive with regard to contract actions.").

Because all 144 Plaintiffs originally filed their cases here, forum choice-of-law rule apply and the applicable statutes of limitations to their cases are Indiana statues of limitations.

## II.    Plaintiffs' Personal Injury Claims Are Time-Barred by The Applicable Indiana Two-Year Statute of Limitations, And There Are No Applicable Discovery-Rule Exceptions To Save Them From Dismissal, Because Their Claims Accrued No Later Than The Dates of Their Categorization Medical Records

Cook is entitled to summary judgment on Plaintiffs' personal injury tort claims (Counts I – IV and the wrongful death and survivorship claims in Counts IX – X to the extent applicable) because the applicable statutes of limitation bar those claims as a matter of law.

Indiana imposes a two-year statute of limitations on product liability claims.  *See* Ind. Code § 34-20-3-1 ("a product liability action must be commenced . . . within two (2) years after the cause of action accrues").  "[T]he statute does not define the term "accrues.'"  *In re Mirena IUD Prods. Liab. Litig. (Truitt)*, 29 F. Supp. 3d 345, 352 (S.D.N.Y. 2014) (analyzing Indiana statute of limitations law).

To determine the accrual date, Indiana courts have adopted a limited discovery rule, holding that the statute of limitations "'begins to run from the date that the plaintiff knew or should have discovered that she suffered an injury or impingement, and that it was caused by the product or act of another.'" *Nelson v. Sandoz Pharms. Corp.,* 288 F.3d 954, 966 (7th Cir. 2002) (quoting *Degussa Corp. v. Mullens,* 744

N.E.2d 407, 410 (Ind. 2001)).  To determine when a reasonably diligent plaintiff should have discovered the claimed injury, Indiana courts ask "whether a reasonable person in the [plaintiff's] position . . . possessing the information [plaintiff] did when [she] did, could have discovered through the exercise of ordinary diligence that the product [caused her harm]."  *Horn v. A.O. Smith Corp.,* 50 F.3d 1365, 1370 (7th Cir. 1995) (applying Indiana law).  At this point, the law "contemplate[s] that persons armed with these indices have a fair opportunity to investigate available sources of relevant information and to decide whether to bring their claims in court within the time limitations in the statute."  *Barnes v. A.H. Robins Co.*, 476 N.E.2d 84, 87–88 (Ind. 1985).

Over the years, courts interpreting the Indiana statute of limitations and the associated discovery rule have made clear that the accrual date is analyzed from an objective perspective, and that diagnosis of the complication or injury at issue by a physician or its discovery on medical imaging are events that objectively trigger the statute of limitations, at which point the plaintiff is presumed to know that his or her claims have accrued.  *See Nelson*, 288 F.3d at 966 ("[T]he plaintiff's suspicion, standing alone, about the source of her injury is [generally] insufficient to trigger the onset of the limitations period …[, but] the limitations period will begin to run when a physician there is a 'reasonable' possibility, if not a probability that a specific product caused the plaintiff's injury.") (quoting *Degussa*, 744 N.E.2d at 411)); *In re Mirena IUD Prods. Liab. Litig. (Truitt)*, 29 F. Supp. 3d at 352 (analyzing case under statute of limitations laws of both Indiana and Texas and holding in an IUD case that the statute of limitations was triggered "at the latest, when Plaintiff learned that the Mirena perforated her uterus and would have to be removed"); *Cossman v. DaimlerChrysler Corp.*, 108 Cal. App. 4th 370, 380 (2003) (holding under Indiana law that the cause of action accrued when the plaintiff was diagnosed with mesothelioma even though doctors "'couldn't figure out where' she had contracted the disease"); *Withers v. Sterling Drug, Inc.*, 319 F. Supp.

878, 881 (S.D. Ind. 1970) (holding in a pharmaceutical drug case that "plaintiff's cause of action accrued when she discovered her injury, not when she learned that her injuries were permanent").

Furthermore, courts applying Indiana law have held in the medical device context that while the accrual date is the date of the injury, the accrual date logically cannot be any later than the date of a procedure to correct and/or remove the device. *In re Mirena IUD Prods. Liab. Litig. (Truitt)* stands for this proposition, as noted in the passage quoted above, as does this Court's decision in *Neuhauser v. A.H. Robins Co.*, 573. F. Supp. 8 (S.D. Ind. 1983). *Neuhauser* was a Dalkon Shield IUD case involving a plaintiff who received the device in 1972, and then became pregnant with the device in place in January 1974. *Id.* at 9. The pregnancy resulted in a miscarriage and removal of the device in June 1974. *Id.* The plaintiff had further problems, later diagnosed as carcinoma of the cervix, that prompted additional surgeries, including the removal of her fallopian tubes and ovaries in 1978, but she did not file her case until 1981. *Id.* at 9-10. This Court explained that:

> In Indiana a cause of action accrues at the time when both legal injury and damage have occurred, resulting in liability. In this case that time is June 1974, when the plaintiff's pregnancy, which began while the Dalkon Shield was in place, was aborted. The record indicates that the plaintiff's gynecologist-obstetrician informed her when she became pregnant in January that the presence of the Dalkon Shield could cause problems—that if it were removed immediately it could precipitate a miscarriage, but if left in, the Shield could adversely affect the pregnancy in any event. Those fears were realized when the plaintiff suffered her miscarriage in June. Under Indiana's two year statute of limitations, the time within which to file suit expired in June 1976.

*Id.* at 9. Likewise, the Indiana Court of Appeals held in *Wojcik v. Almase* that product liability claims with respect to a broken implantable catheter accrued when the device was removed, not when plaintiff sought subsequent treatment that noted a retained fragment. *See* 451 N.E.2d 336, 342 (Ind. Ct. App. 1983) (holding that because "the catheter was inserted and removed between June 26 and September 21, 1978, it would have broken off during that time. Thus, even accepting all of [plaintiff's] allegations as true, including his relation back argument, his original complaint was filed more than two years after his cause of action accrued.").

- 14 -

As the *Mirena* court noted while discussing migration and perforation of the uterus by an IUD, "when an IUD is found somewhere in a woman's body where it is not supposed to be—here, Plaintiff's abdomen—and surgery is required to remove it, a diligent individual would know, at the very least, that there was a 'reasonable possibility' that the IUD harmed her and she should therefore make further inquiry to determine her legal rights." *In re Mirena IUD Prods. Liab. Litig. (Truitt)*, 29 F. Supp. 3d at 352.

Moreover, both this Court and the Bard Filter MDL court have rejected arguments that IVC filter claims could accrue after the removal of the filter.  First, this Court granted summary judgment in Plaintiff Valerie Graham's case early on in the MDL because "[t]he injuries described in her Complaint . . . were known to her immediately after her September 9 surgery.  The limitations period, therefore, expired on or about September 10, 2013, nearly two years before she filed her Complaint."[13] *Graham* (1:15-cv-00764) Dkt. 164.  Likewise, the Bard Filter MDL court granted summary judgment in a bellwether case under Nebraska law that involved tilt, perforation, and an unsuccessful retrieval attempted:  "Discovery refers to the fact that one knows of the existence of an injury . . . and not that one knows who or what may have caused the injury.  It is not necessary that a plaintiff have knowledge of the exact nature or source of the problem, but only that a problem existed."  *In re Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 3957737, at *4 (D. Ariz. Aug. 17, 2018).  As evinced by the cases analyzed above, Indiana and Nebraska law are similar in their focus on the general factual underpinnings of the claimed injury to trigger the plaintiff's duty to investigate his or her claims further.

Finally, Indiana courts have categorically rejected the arguments several counsel for these Plaintiffs advanced during meet-and-confer discussions regarding the timeliness of these cases that the statute

---

[13]     *Graham* was briefed and decided prior to this Court's June 13, 2019 ruling on *Lexecon*, that it has "complete authority over cases originally filed in this court, just as it would over any other cases originally filed in this district."  Entry for June 13, 2019, Dkt. 11131.  As a consequence, Kansas law was applied in *Graham*.  The result would be no different were the motion filed today, given that Kansas and Indiana (and also Illinois in the *Gage* case) all have two-year statute of limitations for personal injury actions.  *Compare* Kan. Stat. § 60-514 *and* Ill. Comp. Stat. § 5/13-202 *with* Ind. Code § 34-11-2-4.

of limitations does not begin to accrue until the plaintiff learns of the legal cause and/or legal theory applicable to his or her claims. While that may be so in a few states, the argument does not hold water under Indiana law: "[A] plaintiff need not 'uncover the legal theory for holding a defendant liable for the action to accrue. Rather, the plaintiff must only be aware that the defendant caused him injury.'" *In re Mirena IUD Prods. Liab. Litig. (Truitt)*, 29 F. Supp. 3d at 352 (quoting *Frey v. Bank One,* 91 F.3d 45, 47 (7th Cir. 1996) (applying Indiana law)); *see also Perryman v. Motorist Mut. Ins. Co.,* 846 N.E.2d 683, 689 (Ind. Ct. App. 2006) ("[T]he discovery rule does not mandate that plaintiffs know with precision the legal injury that has been suffered, but merely anticipates that a plaintiff be possessed of sufficient information to cause him to inquire further in order to determine whether a legal wrong has occurred."). Indeed, the *Neuhauser* case categorically rejected plaintiff's argument that "her cause of action did not accrue until she discovered the causal connection between her injury and the Dalkon Shield . . . when she was informed of a report on the television program '60 Minutes' describing the dangers of the Dalkon Shield." 573 F. Supp. at 9. As discussed above, this Court instead held that the plaintiff's injuries accrued years earlier. *Id.* at 10 ("The record establishes that the plaintiff knew as early as 1974 that the Dalkon Shield probably caused her miscarriage.").

These cases establish objective markers for determining the timeliness of the filter claims asserted by Plaintiffs here. Filter complications and alleged injuries such as perforation, migration, occlusion, fracture, and occurrence of post-placement DVT/PE are not necessarily observable with the naked eye, but they are diagnosable by medical imaging and/or physician examination. Therefore, just like the fractured catheter in *Wojcik*, the IUD migration and perforation in the *Truitt* Mirena IUD case, and the mesothelioma in *Cossman*, these Plaintiffs' IVC filter claims begin to accrue under Indiana law when the complication and/or injury complained of is demonstrated on imaging or otherwise diagnosed in medical records. *See Wojcik*, 451 N.E.2d at 342 (holding that plaintiff's claims accrued on the date of the fracture of the

US.124539042

catheter and not on the subsequent discovery on imaging of the broken fragment); *In re Mirena IUD Prods. Liab. Litig. (Truitt)*, 29 F. Supp. 3d at 352; *Cossman*, 108 Cal. App. 4th at 380 (claims regarding asbestos-related mesothelioma accrued when plaintiff was diagnosed with the disease); *Withers*, 319 F. Supp. at 881 (holding that "plaintiff's cause of action accrued when she discovered her injury, not when she learned that her injuries were permanent").

Moreover, although the need for a filter's retrieval or the fact of a filter's irretrievability may be diagnosed *before* a filter retrieval procedure is scheduled, retrievability-based claims (i.e., Category 4 unable-to-retrieve claims; Category 5 failed retrieval, complex retrieval, and difficult retrieval claims; and Category 7(k) open-removal claims) accrue under Indiana law *at the latest* on the date of the retrieval procedure or the physician's recommendation that filter removal cannot and/or should not be attempted, as memorialized in records. *See Neuhauser*, 573. F. Supp. at 9-10 (holding that plaintiff's claims accrued in 1974 when plaintiff suffered a miscarriage and had the device removed, not when she saw a 60 Minutes episode about the dangers of the device seven years later in 1981); *Wojcik*, 451 N.E.2d at 342 (holding that plaintiff's claims accrued on the date his catheter fractured and that the catheter could not have fractured any later than the date it was removed); *In re Mirena IUD Prods. Liab. Litig. (Truitt)*, 29 F. Supp. 3d at 352 (holding that the statute of limitations was triggered "at the latest, when Plaintiff learned that the Mirena [IUD] perforated her uterus and would have to be removed"); *see also Graham* (1:15-cv-00764) Dkt. 164 (this Court's prior ruling holding in IVC filter context that claims accrued immediately after failed retrieval attempt); *In re Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 3957737, at *4.

Applying this caselaw here, the personal injury claims of these 144 Plaintiffs are time-barred. The medical records they submitted with their Categorization Forms show that their claimed injuries occurred more than two years before they commenced their respective cases. *See* Exhibit A. The Cook Defendants are therefore entitled to summary judgment on these Plaintiffs' personal injury claims.

US.124539042

III.   **In the Alternative, Plaintiffs' Personal Injury Claims Are Time-Barred by The Applicable Statute of Limitations in Their Homes States And There Are No Applicable Discovery Rule Exceptions To Save Them From Dismissal.**

In the alternative, if the Court instead decides that the statute of limitations laws of Plaintiffs' home states control here, Cook is still entitled to summary judgment on Plaintiffs' personal injury tort claims because the applicable statutes of limitation bar those claims as a matter of law.  Specifically, the Alabama, Idaho, Virginia, and Texas Plaintiffs failed to file their cases within the two-year statute of limitations in their home states, and the Michigan Plaintiffs failed to file their cases within the three-year statute of limitation imposed by that state.  The objective approach to statutes of limitations issues taken by the courts of these five states precludes as a matter of law any argument that these Plaintiffs' claims accrued at any point after the dates listed in Exhibit A.

A.   **Alabama**

Alabama imposes a two-year statute of limitations on personal injury claims.  *See* Ala. Code § 6-2-38.  The Alabama Supreme Court has repeatedly rejected invitations to recognize the discovery rule as an exception to this limitation.  *See Moon v. Harco Drugs, Inc.*, 435 So.2d 218, 220 (Ala. 1983) ("This Court has repeatedly held that a cause of action accrues when the injury occurs, and in so doing, this Court has refused to accept the so-called 'discovery rule.'") (internal citation omitted); *Payton v. Monsanto Co.*, 801 So. 2d 829, 835 (Ala. 2001) ("The fact that a plaintiff discovers damage for the first time outside the limitations period does not save the plaintiff, because this Court has declined to apply a 'discovery rule.'").  Thus, "'the statute of limitations begins to run in favor of the party liable from the time the cause of action 'accrues.'  The cause of action 'accrues' as soon as the party in whose favor it arises is entitled to maintain an action thereon.'"  *Moon*, 435 So.2d at 220 (internal citations omitted).

Alabama permits an exception in the context of a "continuous tort," defined as "a defendant's repeated tortious conduct which [] repeatedly and continuous injure[s] a plaintiff" as "when an employer

exposes its employee on a continuing basis to harmful substances and conditions," rock quarry blasting cases, or well contamination cases. *Id.* at 220-21 (collecting cases, internal citations omitted). The continuous tort exception, however, does not apply in cases involving implantable medical devices like the IVC filter. *See, e.g., Haynie v. Howmedica Osteonics Corp.*, 137 F. Supp. 2d 1292 (S.D. Ala. 2000), *aff'd sub nom.*, 253 F.3d 712 (11th Cir. 2001). In *Haynie,* the plaintiff asked the court to apply the continuous tort exception on grounds that the "tibial insert in [his] knee implant underwent a continuous delamination process after it was implanted and that this process was the cause of [his] pain." *Id.* at 1295. The court rejected that argument, holding that "it takes more than a continuous injury to satisfy the continuous tort theory. The tortious conduct itself must also be repeated. Here the alleged tortious conduct was a single occurrence, the defective, negligent, or wanton design or manufacture of the knee implant." *Id.*

Here, the medical records Plaintiffs submitted in support of their categorizations demonstrate that the 12 Alabama Plaintiffs' claimed injuries occurred more than two years before they commenced their respective actions. *See* Exhibit A (cases nos. 1 – 12). Accordingly, if the Alabama statute of limitations applies, it bars these Plaintiffs' claims, and Cook is entitled to summary judgment as a matter of law. *Moon*, 435 So.2d at 220; *Payton*, 801 So. 2d at 835; *Haynie*, 137 F. Supp. 2d at 1295.

### B.      Idaho

Idaho imposes a two-year statute of limitations on personal injury claims, and that statute provides that the cause of action subject to the statute "shall be deemed to have accrued as of the time of the occurrence, act or omission complained of." Idaho Code Ann. § 5-219(4). Like Alabama, the Idaho Supreme Court has rejected invitations to recognize discovery rule exceptions. *Theriault v. A.H. Robins Co., Inc.*, 698 P.2d 365, 370-71 (Idaho 1985) ("Theriault asks this Court to engraft a discovery exception to the statute of limitations . . . . This we decline to do . . . . Since the 1971 amendment, in deference to the leg-

islative policy expressed therein, this Court has consistently refused to create additional discovery exceptions.").

The medical records the seven Idaho Plaintiffs submitted with their Categorizations Forms demonstrate that their claims accrued more than two years before they commenced their respective actions, and thus outside Idaho's two-year statute of limitations. *See* Exhibit A (cases nos. 13 – 19). The Cook Defendants are therefore entitled to judgment on those claims as a matter of law if the Court determines that Idaho law governs the statute of limitations issue. *See* Idaho Code Ann. § 5-219(4); *Theriault*, 698 P.2d at 370-71.

### C.      Michigan

Michigan imposes a three-year statute of limitations on personal injury claims. *See* Mich. Comp. Laws. Ann. § 600.5805(10) ("The period of limitations is 3 years after the time of the death or injury for all actions to recover damages for the death of a person, or for injury to a person or property."). Michigan courts have rejected a discovery rule to toll this statute, and the statute of limitations is triggered when the alleged defects in the product at issue harm the plaintiff. *See Trentadue v. Buckler Lawn Sprinkler Co.*, 738 N.W.2d 664, 672 (Mich. 2007) ("[C]ourts may not employ an extrastatutory discovery rule to toll accrual."); *Tice v. Zimmer Holdings, Inc.*, 2015 WL 4392985, at *5 (W.D. Mich. July 15, 2015) ("*Trentadue* makes clear that the accrual date for Plaintiffs' claims is not tied to their knowledge of the harm . . . . [T]he claims accrued when the alleged defects in the Devices harmed Plaintiff. This must have occurred *before* Mr. Tice or his physicians determined that he needed corrective surgery, and may have occurred before he was even aware that the Devices were causing problems.") (emphasis in original).

Here, the medical records Plaintiffs submitted in support of their categorizations demonstrate that the 40 Michigan Plaintiffs' claimed injuries occurred more than three years before they commenced their respective actions. *See* Exhibit A (cases nos. 20 – 59). Accordingly, these claims would be time-barred

- 20 -

under the Michigan statute of limitations in addition to the Indiana statute, and Cook is entitled to summary judgment as a matter of law. *See Trentadue*, 738 N.W.2d at 672; *Tice*, 2015 WL 4392985, at \*5.

### D.      Texas

Texas imposes a two-year statute of limitations on personal injury claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003; *see also Bell v. Showa Denko K.K.*, 899 S.W.2d 749, 753 (Tex. Ct. App. 1995) ("For the purposes of this section, negligence claims normally accrue when the duty of ordinary care is breached and strict liability claims generally accrue on the date of the injury."); *Valdez v. Hollenbeck*, 465 S.W.3d 217, 229 (Tex. 2015) ("[A] cause of action generally accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred.").

Although Texas has a limited discovery rule, the rule only applies in cases where "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Computer Assocs. Int'l v. Altai, Inc.*, 918 S.W.2d 453, 456 (Tex. 1996); *see also Pavich v. Zimmer, Inc.*, 157 F.3d 903 (5th Cir. 1998) (summary table) (describing the Texas discovery rule as "very limited"); *Coody v. A.H. Robins Co.*, 696 S.W.2d 154, 156 (Tex. Ct. App. 1985) ("The discovery rule speaks only of discovery of the injury. It does not operate to toll the running of the limitation period until such time as plaintiff discovers all of the elements of a cause of action."). The Texas discovery rule is similar to the narrow discovery rule in Indiana analyzed in Section II. *See In re Mirena IUD Prods. Liab. Litig. (Truitt)*, 29 F. Supp. 3d at 356 ("Plaintiff's reading of the law, however, sets too high a bar under both Texas and Indiana law, neither of which requires a plaintiff to discover what cause of action she can assert.").

As with Indiana, Texas courts interpreting the statute of limitations and the discovery rule have made clear that the statute of limitations is analyzed from an objective perspective, and discovery of the complication on medical imaging serves as an objective trigger for the statute of limitations through

US.124539042

which the plaintiff is presumed to know that his or her claims have accrued. *See Pavich*, 157 F.3d 903 (holding that plaintiff's cause of action accrued under Texas law on the day x-rays verified fractures in the implanted spinal rods and dismissing claims as untimely); *Brandau v. Howmedica Osteonics Corp.*, 439 F. App'x 317, 322 (5th Cir 2011) (applying *Pavich* rule and finding claims timely because x-ray demonstrating that knee prosthesis was loose was taken within two years of filing); *Rosman v. Zimmer Dental, Inc.*, 2018 WL 2335358, at *2 (S.D. Tex. Mar. 1, 2018) (holding that plaintiff "acquired the knowledge he needed to discover that he had a cause of action" on the date that "x-rays revealed the fractured dental implant," and dismissing the case as untimely because it was filed "more than four months after the two-year statute of limitations had expired.").

Courts applying Texas law have also repeatedly held that in the context of implantable prescription medical devices, the accrual date for the statute of limitations logically cannot be any later than the date of the revision surgery to remove the device. *See Shepherd v. Danek Med.,* 1999 WL 1129705, at *1 (S.D. Tex. Aug. 13, 1999) ("[A]ny arguable application of the 'discovery rule' would terminate upon removal of the System."); *Porter v. Danek Med. Inc.*, 1999 WL 1117090, at *1 (S.D. Tex. Aug. 16, 1999) (same as *Shepherd*); *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, 2016 WL 1493534, at *4 (M.D. Ga. Apr. 14, 2016) (MDL court granting summary judgment in two Texas cases on statute of limitations grounds because "both Plaintiffs knew or should have known that they suffered some injuries related to the ObTape by the time of their revision surgeries, and that is when their claims accrued.").

These cases establish objective markers for determining the timeliness of the filter claims asserted by the Texas Plaintiffs here. Again, filter complications and alleged injuries are not necessarily observable under the naked eye, but they are "objectively verifiable" by medical imaging and/or physician examination. Therefore, just like the spinal-rod fracture in *Pavich*, the dental-implant fracture in *Rosman*, and

- 22 -

the knee-implant loosening in *Brandou*, filter claims accrue under Texas law when the complication and/or injury complained of is demonstrated on imaging or otherwise diagnosed in medical records. *See Pavich*, 157 F.3d 903; *Brandau*, 439 F. App'x at 322; *Rosman*, 2018 WL 2335358, at *2. Moreover, although the need for a filter's retrieval or the fact of a filter's irretrievability may be diagnosed *before* a filter retrieval procedure is scheduled, retrievability-based claims must accrue under Texas law (like Indiana) *at the latest* on the date of the retrieval procedure or the physician's recommendation that filter removal cannot and/or should not be attempted, as memorialized in records. *See Shepherd,* 1999 WL 1129705, at *1 (holding that claims accrued no later than the date of the revision surgery); *Porter*, 1999 WL 1117090, at *1 (same); *In re Mentor Corp*, 2016 WL 1493534, at *4 (same).

Applying this caselaw here, the personal injury claims of the 57 Texas Plaintiffs are time-barred because the medical records they submitted with their Categorization Forms show that their claimed injuries occurred more than two years before they commenced their respective cases. *See* Exhibit A (cases nos. 60 – 116). The Cook Defendants are therefore entitled to summary judgment on these Plaintiffs' claims, even if the Court determines that Texas law applies to the statute of limitations issue.

### E. Virginia

Virginia imposes a two-year statute of limitations on personal injury claims. *See* Va. Code Ann. § 8.01-230 ("In every action for which a limitation period is prescribed, the right of action shall be deemed to accrue and the prescribed limitation shall begin to run from the date the injury is sustained and in the case of injury to the person or damage to property."); *Smith v. Danek Med.*, 47 F. Supp. 2d 698, 701 (W.D. Va. 1998) ("Under Virginia law, the limitation period begins to run when the injury, no matter how slight, is sustained and regardless of whether more substantial injuries occur later…"). And like the first three states discussed above, "Virginia does not follow a 'discovery rule' in applying the statute of limitations . . . . The statute of limitations begins to run at the date of injury even if no diagnosis was made or commu-

nicated to the plaintiff until later." *Id.* (internal citations omitted); *see also Joyce v. A.C. & S, Inc.*, 591 F. Supp. 449, 452 (W.D. Va. 1984) (explaining that Virginia courts have "rejected any rule which would commence the running of the statute of limitations on the date of discovery of the injury, or on the date when the injury should have been discovered by in the exercise of reasonable diligence . . . .  Rather, if expert medical testimony demonstrates that the injury – the damage – occurred before the time when the disease manifested itself by symptoms, such as pain, discomfort, or impairment of functions, the statute begins to run from the earlier date.").

Here, the medical records Plaintiffs submitted in support of their categorizations demonstrate that the 28 Virginia Plaintiffs' claimed injuries occurred more than two years before they commenced their respective actions.  *See* Exhibit A (cases nos. 117 – 144).[14] Therefore, the Virginia statute of limitations bars their claims, and Cook is entitled to summary judgment as a matter of law.  Accordingly, the Court should grant summary judgment in Cook's favor in these cases.  *See* Va. Code Ann. § 8.01-230; *Smith*, 47 F. Supp. 2d at 701; *Joyce*, 591 F. Supp. at 452.

## IV.   Plaintiffs' Non-Tort Claims Also Fail as a Matter of Law

Although Plaintiffs' Master Complaint asserts and Plaintiffs' short-form Complaints adopt some non-tort-based claims, all those claims likewise fail as a matter of law.  These ancillary claims thus do not preclude entry of summary judgment in Cook's favor in these cases.

---

[14]     To the extent Plaintiffs intend to argue – as some indicated that they would after the filing of Cook's original motion – that Virginia law applies and that a new Virginia statute provides for a discovery rule that saves their claims, the statutory provision Plaintiffs have in mind – Va. Code Ann. § 8.01-249(9) (2016) – did not take effect until July 1, 2016, and there is no indication in the text of that statute that the Virginia Legislature intended it to apply retroactively.  *See id.*; *see also e.g., Foster v. Smithfield Packing Co., Inc.*, 390 S.E.2d 511, 514 (Va. Ct. App. 1990) (explaining that "retroactive effect [to a statute] will not be given in the absence of clear, explicit and unequivocal intent to the contrary.").  Because the dates listed in Exhibit A confirm that the claims of the 28 Virginia Plaintiffs accrued before July 1, 2016, this statute does not save their claims from dismissal, even if Virginia statute of limitations law applied.

A.    **Plaintiffs' Express Warranty Claims Fails Because, as the Court Has Previously
Ruled, the Master Complaint Fails to State Sufficient Allegations to Support This
Claim**

Plaintiffs' express warranty claims (Count V) fail because neither the Master Complaint nor the

short-form complaints allege any express warranties about the performance of Cook's IVC filters.

The Court has already addressed this issue in the context of Texas-based Plaintiff Emily Apple's

express warranty claim, holding that the Master Complaint and plaintiff's short-form complaint failed to

sustain a claim for express warranty and noting that "the omission of her specific warranty allegations is

fatal." *See* Court's Entry on Motion for Judgment on the Pleadings Based on the Statute of Repose, Dkt.

4918, pp. 13-14 (rejecting Plaintiff Apple's express warranty arguments).  The Court also held that "even

if she had included such allegations in her Short Form Complaint, her claim would not survive" because

she failed to allege who made the alleged verbal warranty or claim that she relied on the Cook written

materials.  *Id.*   In the *Brand* case, Plaintiff Brand did not even attempt to defend her express warranty

claim, and the Court readily granted Cook summary judgment on the claim.  *See* Entry on Defendants'

Motion for Summary Judgment, Dkt. 9696.

Because the general assertions in the Master Complaint cannot sustain a claim for express war-

ranty and, as far as Cook can determine, Plaintiffs have not asserted case-specific express warranty allega-

tions in their individual complaints,[15] Cook is entitled to dismissal of Plaintiffs' express-warranty claims.

B.    **Plaintiffs' Implied Warranty Claims Fail as a Matter of Law Under Both Indiana
Law and Plaintiffs' Home State Laws**

Under Indiana law, implied warranty claims sounding in personal injury are merged into product

liability claims and governed by the two-year statute of limitations for product liability claims.  Because

---

[15]    Cook notes that Plaintiff Apple attempted to support her express warranty claim against Cook's
motion by citing the Cook Patient Guide and an alleged oral warranty, but the Court nevertheless found
her express warranty claim inadequate as plead.  *See* Dkt. 4918 at 14-15.  Here, Plaintiffs do not allege
even those insufficient grounds for an express warranty claim, and *a fortiori* fail as a matter of law.

Indiana statute of limitations apply to Plaintiffs' claims and the applicable statute of limitations for implied

warranty claims reverts to the Indiana two-year statute of limitations, Plaintiffs' implied warranty claims

(Count VI) fail for the reasons discussed above in Section II.

Alternatively, if Plaintiffs' implied warranty claims are governed by the laws of their home states,

those claims still fail as a matter of law.  Regarding the Idaho and Virginia Plaintiffs, those two states'

laws – like Indiana – merge their implied warranty claims into the product liability claims, rendering

those claims time-barred for the reasons analyzed above in Sections III.B. and III.E, respectively.  With

respect to claims brought by Plaintiffs from the other three states, their implied warranty claims are un-

timely because implied warranties arise out of the sale of the filter and, as the Court ruled in the *Gage*

bellwether, the statute of limitations for implied warranties was reduced as a condition of sale to one year

and one day.  As this one year and one day period (as measured from the delivery of the filters) is *shorter*

than the two-to-three-year personal injury statutes of limitation in these states (discussed above), these

Plaintiffs' implied breach of warranty claims are likewise time-barred.

> **1.    Implied breach of warranty claims are merged into product liability claims under Indiana law and are governed by the two-year statute of limitations analyzed in Section II**

As this Court recently explained, "the Indiana Supreme Court has recognized that "several federal

district courts and other panels of the [Indiana] Court of Appeals have held that tort-based breach of war-

ranty claims have been subsumed into the [Indiana Product Liability Act].'"  *Bagby v. Gen. Motors, LLC*,

2018 WL 2388595, at *1 (S.D. Ind. May 25, 2018) (Young, J.) (quoting *Kovach v. Midwest*, 913 N.E.2d

193, 197 (Ind. 2009)); *see also Cavender v. Medtronic, Inc.*, 2017 WL 1365354, at *6 (N.D. Ind. Apr. 14,

2017) ("[W]hen the claim, as here, is for tortious personal injury, the breach of warranty claim is sub-

sumed by the IPLA."); *Lyons v. Leatt Corp.*, 2015 WL 7016469, at *3 (N.D. Ind. Nov. 10, 2015) (same).

As such, the applicable statute of limitations on Plaintiffs' claim for implied breach of warranty is the two-

year statute of limitations for product liability claims analyzed above in Section II.  *See Bagby*, 2018 WL 2388595, at *1 (finding that the plaintiff sought "damages in tort related to physical harm" and therefore that "his breach of warranty claim is subsumed by the IPLA and is time-barred [under its two-year statute of limitations].").  Because none of the Plaintiffs filed their claims within two years of the accrual of their claims under that statute, their implied warranty claims fail as a matter of law.

In the alternative, Indiana courts draw a distinction for contract-based breach of implied warranty claims; those claims arise under Indiana's Uniform Commercial Code and are governed by the presumptive 4-year statute of limitations under that statute.  *See Bagby*, 2018 WL 2388595, at *1 (citing *Lyons*, 2015 WL 7016469 at *3 and *Atkinson v. P&G-Clairol, Inc.*, 813 F. Supp. 2d 1021, 1027 (N.D. Ind. 2011)).  Cook, however, is not aware of any Plaintiff alleging that their implied breach of warranty claims arise in contract and this Court explained in *Bagby* that when a plaintiff seeks compensation for physical injuries, the "breach of warranty is subsumed by the IPLA and is time-barred [if filed outside the two-year period]."  *Bagby*, 2018 WL 2388595, at *1.  To the extent any Plaintiff seeks to advance that contract-based argument here, it would fail for lack of privity because "a claim for breach of the implied warranty of merchantability under the UCC operates between a buyer and a seller."  *Id* at 2.  Generally speaking, Cook filters are sold by Cook to hospitals for use by physicians for their patients, not directly to patients.

### 2.    Alternatively, the Idaho and Virginia Plaintiffs' implied warranty claims are merged with their time-barred product liability claims

If the Court determines that the breach of warranty claims are governed by the statutes of limitations of Plaintiffs' home state laws, the Idaho and Virginia Plaintiffs' claims would fail for the same reason because those two states have also merged implied warranty claims with product liability claims.

The Idaho Supreme Court has explained that "[t]he UCC's warranty provisions were not meant to govern cases such as this one where there is no privity of contract between the plaintiff and the defendant, and the plaintiff does not qualify as a third party beneficiary of the seller's warranty . . . ."  *Oats v.*

*Nissan Motor Corp.*, 879 P.2d 1095, 1102 (Idaho 1994).  Put differently, Idaho retains the privity requirement for warranty claims, and "when a plaintiff brings a non-privity breach of warranty action against a manufacturer or seller to recover for personal injuries allegedly sustained as a result of a defective product, that action is one for strict liability in tort, governed by the provisions of the [Idaho Product Liability Reform Act]."  *Id.* at 1105 (holding that plaintiff's "warranty action to recover for personal injuries is essentially a strict liability claim in tort, and it should be governed by the provisions of the IPLRA, including the IPLRA's statute of limitations, rather than the provisions of the UCC.").

Similarly, the Virginia statute of limitations governing warranty claims merges the statute of limitations for implied warranty claims premised on personal injury with the general personal injury statute analyzed above.  The statute provides in pertinent part that "as to any action to which § 8.2-725 of the Uniform Commercial Code is applicable, the section shall be controlling except that in product liability actions for injury and for injury to property, other than the property subject to the contract, the limitation prescribed in § 8.01-243 shall apply."  *See* Va. Code Ann. § 8.01-246.  The general two-year personal injury confirms its application to warranty claims:  "Unless otherwise provided in this section or by other statute, *every action for personal injuries, whatever the theory of recovery*, and every action for damages resulting from fraud, *shall be brought within two years after the cause of action accrues*."  Va. Code Ann. § 8.01-243 (emphasis added).

For these reasons, the Idaho and Virginia Plaintiffs cannot maintain independent breach-of-warranty claims, and if Plaintiffs' home state law applies, the applicable statute of limitations would be the general personal injury statute of limitations respectively analyzed in Sections III.B. and III.E. above. *See Oats*, 879 P.2d at 1105; Va. Code Ann. §§ 8.01-243, 246.  As discussed above, the Idaho and Virginia Plaintiffs failed to commence their actions within the two years required by the Indiana statute of limitations and, alternatively, by the statutes of limitations in their homes states that are also two years.

- 28 -

**3.  Alternatively, Alabama, Michigan, and Texas Plaintiffs' implied breach of warranty claims are time-barred under the contractual one year and one day statute of limitations.**

Alternatively, if statute of limitations for warranty claims from the Plaintiffs' home states applied, the Alabama, Michigan, and Texas Plaintiffs' claims would still fail for other reasons.  Namely, these three states have all adopted the presumptive 4-year statute of limitations for breach of warranty claims arising under the UCC, as measured from the date of sale or delivery of the product.  *See* Ala. Code § 7-2-725(1); Mich. Comp. Laws Ann. § 440.2725; Tex. Bus. & Com. Code Ann. § 2.725.  As the Court can readily see by comparing the filter placement dates – logically, the latest possible delivery or sale date for the filters – to the filing dates, the implied warranty claims are time-barred for nearly all Plaintiffs listed in Exhibit A. For example, the first two Plaintiffs in the list – Plaintiffs Anderson-Kuhn and Davidson – received their filters in 2010 and 2007 respectively, but they did not file their actions until 2016, approximately six and nine years later.  *See* Exhibit A (cases nos. 1 – 2).  In fact, all of the Alabama Plaintiffs, 37 of the 40 Michigan Plaintiffs, and 51 of the 57 Texas Plaintiffs filed their claims more than four years after the placement date of their filters, and their claims would be time-barred under those statutes.  *See id.*[16]

As the Court may recall from the *Gage* bellwether, however, Cook's filters are sold to hospitals with a "Cook Invoice Terms and Conditions," terms that include a choice-of-law provision applying Indiana law, disavow the existence of any implied breach of warranties, and reduce the limitations period for any warranty claims to one year and one day, as permitted under Indiana's UCC.  *See* Ind. Code § 26-1-2-725; Cook Defendants' Memorandum in Support of Its Second and Renewed Motion for Summary Judgment, Dkt. 7805, pp. 2-4, 5-9 (discussing the terms and conditions and attaching affidavit of Kevin

---

[16]    The only 10 Plaintiffs who commenced their actions *within* four years of the placement date alleged in the complaint are Michigan Plaintiffs Diondrae Boone (10.2.2015), George Hubert (9.19.2013) and Walter Simpson (11.26.2014); and Texas Plaintiffs Audra Boggs (5.14.2014), Jasmine Bowen (1.15.2014), Marcella Brady (3.13.2013), Justin Gonzalez (2.21.2013), Salvador Lozano (12.2.2014), Sharon Sharp (12.12.2013), and Estate of Annette Weaver (5.10.2011).

Brines (*id.* at 17-18) and a copy of the terms and conditions (*id.* at 28), among other exhibits). In his affidavit, Mr. Brines states that including the terms and conditions "is the ordinary business practice of Cook" for filter sales. Dkt. 7805 at 18, ¶ 5. Mr. Brines also identified the terms and conditions in effect at the time of Mr. Gage's filter sale in April 2011. *See id.* After oral argument on these issues, the Court granted summary judgment on the implied warranty claim in the *Gage* case (the last remaining claim) and dismissed the case. *See* Order on Cook's Second and Renewed Motion for Summary Judgment, Dkt. 7809.

The 10 Plaintiffs from these states who filed their cases within the presumptive four-year statute of limitations all received their filters in May 2011 or later (indeed, all but one of them received their filters in 2013 or later). *See* SUMF, ¶ 12; *supra* n. 15 (listing these 10 Plaintiffs and their placement dates). Because all these Plaintiffs received their filters after May 2011 and Cook has included the Cook Invoice Terms and Conditions since at least April 2011, the contractual limitation period of one year and one day applies to these Plaintiffs' claims, and they are time-barred under that provision. Accordingly, the Cook Defendants are entitled to summary judgment on all implied warranty claims in these cases.

### C.   Plaintiffs' Consumer Fraud Claims Fail Because They Are Not Plead With The Particularity Required By Federal Rule of Civil Procedure 9(b)

Plaintiffs' fraud-based consumer protection claims (Count VII) fail as a matter of law because Plaintiffs failed to plead them with the particularity required by Fed. R. Civ. P. 9(b). Federal case law makes clear that plaintiffs in federal court on diversity grounds must plead their fraud-based consumer-protection claims with particularity. That is, "when fraud is alleged, it must be done with particularity and plead the who, what, when, where, and how of the alleged fraud." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992); *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 155 F. Supp. 2d 1069, 1109 (S.D. Ind. 2001) (dismissing claims under Michigan and Tennessee consumer protection statutes for failure to meet the heightened pleading requirements of Rule 9(b), including failure to allege "individual reliance").

- 30 -

This Court has not yet needed to rule on this issue because all the bellwether Plaintiffs whose cases have approached trial have voluntarily abandoned their consumer fraud claims. Cook briefed the issue in the context of motion practice on the Category 2 cases, but those cases were likewise dismissed without substantive opposition on the Rule 9 issue regarding the consumer protection claims.

Federal courts in all five of the states at issue here have held that claims under those states' consumer protection and consumer fraud statutes sound in fraud and must be pled with particularity under Fed. R. Civ. P. 9(b). For example, in Alabama, the Alabama Deceptive Trade Practices Act (ADTPA) "is a statutory substitute for fraud claims in the specific circumstances set forth in [the statute]," *Phillips v. Hobby Lobby Stores, Inc.*, 2018 WL 4635734, at *8 (N.D. Ala Sept. 27, 2018), and "[p]ursuant to Rule 9(b) of the Alabama Rules of Civil Procedure and Rule 9(b) of the Federal Rules of Civil Procedure, fraud must be averred with particularity," *Waldrup v. Hartford Life Ins. Co.*, 598 F. Supp. 2d 1219, 1227 (N.D. Ala 2008). *See also Holmes v. Behr Process Corp.*, 2015 WL 7252662, at *2 (N.D. Ala. Nov. 17, 2015) (holding that while plaintiff on the third attempt had "state[d] these claims with more particularity than in her earlier efforts, each [claim still failed] to state a claim that meets the Rule 9(b) standard or the ADTPA standard.").

Federal courts in Idaho, Michigan, Texas, and Virginia have likewise held that those states' consumer protection claims sound in fraud and must be pled with particularity, and courts have regularly dismissed such claims when plaintiffs fail to do so. *See Gibson v. Credit Suisse AG*, 2012 WL 1253007, at *2 (D. Idaho Mar. 30, 2012) ("In addressing the Consumer Protection Act Claim, the Report acknowledged that fraud claims must be plead with a certain level of specificity and particularity.") (internal citation omitted); *Tuttle v. Treasure Valley Marine, Inc.*, 2016 WL, 3198230, at *2 (D. Idaho June 8, 2016) ("As discussed above, allegations involving fraud, such as this [Idaho Consumer Protection Act claim], must be accompanied by the 'who, what, when, where, and how' of the misconduct charged."); *Home*

- 31 -

*Owners Ins. Co. v. ADT LLC*, 109 F. Supp. 3d 1000, 1009 (E.D. Mich. 2015) ("Because Plaintiff's claim for violation of the MCPA does not meet Rule 9(b)'s heightened pleading requirements, this claim will be dismissed."); *Peacock v. AARP, Inc.*, 181 F. Supp. 3d 430, 435 (S.D. Tex. 2016) ("Claims alleging violations of the Texas Insurance Code and the DTPA and those asserting fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation are subject to the requirements of Rule 9(b)") (citing *Frith v. Guardian Life Ins. Co. of Am.,* 9 F. Supp. 2d 734, 742 (S.D.Tex.1998)); *BHR Recovery Communities, Inc. v. Top Seek, LLC*, 355 F. Supp. 3d 416, 424 (E.D. Va. 2018) ("As a claim sounding in fraud, Federal Rule of Civil Procedure 9(b) requires plaintiffs to plead VCPA claims with particularity.").

Here, Plaintiffs' Master Complaint makes only the most general of allegations about Cook's allegedly fraudulent conduct:

> Defendants misrepresented the alleged benefits and characteristics of Cook's IVC Filters; suppressed, omitted, concealed, and failed to disclose material information concerning known adverse effects of Cook's IVC Filters; misrepresented the quality and efficacy of Cook's IVC Filters as compared to much lower-cost alternatives; misrepresented and advertised that Cook's IVC Filters were of a particular standard, quality, or grade that they were not; misrepresented Cook's IVC Filters in such a manner that later, on disclosure of the true facts, there was a likelihood that Plaintiffs would have opted for an alternative IVC Filter or method of preventing pulmonary emboli.

Dkt. 213, ¶ 116. These allegations contain no allegations of the who, what, or how of the alleged misrepresentations, and thus fail to meet Rule 9's particularity requirement. None of the Plaintiffs' short-form complaints provides any additional or more specific allegations; they simply adopt the Master Complaint's vague allegations. Because Plaintiffs have offered only vague, general allegations in support of their consumer fraud claims, those claims fail as a matter of law, and the Court should grant summary judgment in Cook's favor on these claims. *See Holmes*, 2015 WL 7252662, at *2; *Gibson*, 2012 WL 1253007, at *2; *Tuttle*, 2016 WL, 3198230, at *2; *Home Owners Ins. Co.*, 109 F. Supp. 3d at 1009; *Peacock*, 181 F. Supp. 3d at 435; *BHR Recovery Communities, Inc.*, 355 F. Supp. 3d at 424.

- 32 -

**D.**     **Plaintiffs' Derivative Claim for Loss of Consortium and Punitive Damages Fail Because They Cannot Stand on Their Own**

Finally, Plaintiffs' claims for loss of consortium (Count VIII) and punitive damages (Count XI) fail as a matter of law because they are derivative claims that cannot stand on their own. *See e.g., Flying J Fish Farm v. Peoples Bank of Greensboro*, 12 So. 3d 1185, 1196 (Ala. 2008) ("A loss-of-consortium claim is derivative of the claims of the injured spouse.  Therefore, [the wife's] claim must fail if [the husband's] claims fail."); *Runcorn v. Shearer Lumber Prods., Inc.*, 690 P.2d 324, 329 (Idaho 1984) ("The claim for loss of consortium is a wholly derivative cause of action contingent upon a third party's tortious injury to a spouse."); *DeGrate v. Exec. Imprints, Inc.*, 261 S.W.3d 402, 412 (Tex. Ct. App. – Tyler Div. 2008) ("When a loss of consortium is derived from an injury to the spouse, the claim is derivative and thus, must fail if the injured spouse's claims against the defendant fails."); *Benavides v. Cty. of Wilson*, 955 F.2d 968, 975 (5th Cir. 1992) (finding that summary judgment against non-derivative claim also barred the derivative loss of consortium claim).

In the MDL context, the District of Minnesota dismissed loss of consortium claims as derivative when it dismissed the entire master complaint in an MDL involving a PMA device due to federal preemption:

> Claims such as loss of consortium … do not appear to fit neatly into any of the aforementioned categories.  Nevertheless, the Court agrees with Medtronic that any claims in the Complaint not addressed above are derivative of Plaintiffs' other claims and hence cannot stand.

*In re Medtronic, Inc. Sprint Fidelis Leads Prod. Liab. Litig.*, 592 F. Supp. 2d 1147, 1165 (D. Minn. 2009), *aff'd*, 623 F.3d 1200 (8th Cir. 2010).

Here, as discussed above, all of the Plaintiffs' substantive claims fail as a matter of law, and the derivative loss of consortium and punitive damages claims fail along with those substantive claims.  *See e.g., Flying J Fish Farm*, 12 So. 3d at 1196; *Runcorn*, 690 P.2d at 329; *DeGrate*, 261 S.W.3d at 412; *Be-*

*navides*, 955 F.2d at 975; *In re Sprint Fidelis Leads*, 592 F. Supp. 2d at 1165.  Accordingly, the Cook Defendants are also entitled to summary judgment on these derivative claims.

## CONCLUSION

For the foregoing reasons, the Cook Defendants are entitled to summary judgment on the claims brought by these 144 Plaintiffs, regardless of whether the timeliness of their personal injury claims is governed by Indiana law or the law of their home states.  The terms of dismissal should be the same as those recently used for the dismissal of Category 1 and Category 2 cases:

(1)     In cases where the filter has been removed, the dismissal should be with prejudice.

(2)     In cases where the filter remains placed in the plaintiff's body, the dismissal should be with prejudice as to all claims, injuries, complications, and outcomes alleged in Plaintiffs' short-form complaints, PPS forms, and Categorization Forms to date.  With respect to re-filing in the event of a future injury, the Court should allow re-filing only in the Southern District of Indiana within the applicable statute of limitations period.

Respectfully Submitted,

Dated:  September 5, 2019

/s/ *Andrea Roberts Pierson*
Andrea Roberts Pierson, Co-Lead Counsel
Jessica Benson Cox
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2500
Indianapolis, Indiana 46204
Telephone:     (317) 237-0300
Andrea.Pierson@FaegreBD.com
Jessica.Cox@FaegreBD.com

James Stephen Bennett, Co-Lead Counsel
FAEGRE BAKER DANIELS LLP
110 West Berry Street, Suite 2400
Fort Wayne, Indiana 46802
Telephone:     (260) 424-8000
Stephen.Bennett@FaegreBD.com

*Attorneys for the Defendants Cook Incorporated, Cook Medical LLC, and William Cook Europe ApS*

- 34 -

US.124539042

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 5, 2019, a copy of the foregoing **COOK DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR RENEWED OMNIBUS MOTION FOR SUMMARY JUDGMENT BASED ON APPLICABLE STATUTE OF LIMITATIONS** was filed electronically and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.

*/s/ Andrea Roberts Pierson*

US.124539042