UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB MDL No. 2570 |
| This document relates to: 26 Cases Listed in Exhibit A | |

**COOK DEFENDANTS' MEMORANDUM IN SUPPORT OF
OMNIBUS MOTION FOR SUMMARY JUDGMENT
BASED ON STATUTE OF LIMITATIONS**

The Cook Defendants[1] move the Court for summary judgment in to the 26 cases filed by the plaintiffs listed in **Exhibit A**. Because these cases were originally filed in this district, the Southern District of Indiana, Indiana's two-year statute of limitations applies to the claims. These Plaintiffs, however, failed to commence their actions within two years after they underwent surgical "open retrieval" procedures, which was the latest possible point at which their causes of action accrued. Plaintiffs' non-tort claims also fail as a matter of law, and Cook is therefore entitled to summary judgment on all of these Plaintiffs' claims.

**INTRODUCTION**

This motion is another step in Cook's effort to eliminate from this MDL the large body of cases that assert claims that are either legally untenable or indisputably barred as a matter of law. In the present motion, all of the cases involve open retrievals,[2] and all of these Plaintiffs' product liability claims are barred by the applicable statute of limitations—a fact that should have been obvious when Plaintiffs' attorneys first evaluated the cases. *See, e.g.,* Orders, Dkts. 7715, 7809,

---

[1]   As used in this memorandum, "Cook" and "the Cook Defendants" refer to Defendants Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS.
[2]   The 26 plaintiffs listed in Exhibit A are referred to collectively as "Plaintiffs." As necessary, they are referred to individually by their names (e.g., "Plaintiff Thomas").

Entry on the Cook Defendants' Motion of Summary Judgment, *Graham* (1:15-cv-00764), Dkt. 164 (all granting summary judgment based on statutes of limitation).

As Cook has noted before, docket management through the elimination of large groups of meritless cases is one of the Court's most important charges in overseeing this MDL. *See* Dkt. 11726 at 1-3 (citing, inter alia, *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, 2016 WL 4705807, at *1 (M.D. Ga. Sept. 7, 2016)). As Cook has also observed, the proliferation of time-barred cases like those at issue here is a considerable obstacle to moving this litigation forward in an orderly manner. The Court should intervene in these cases now, and neither Cook nor the Court should be forced to expend resources on discovery or case-specific motion practice where the undisputed facts available right now show that the statute of limitations bars these Plaintiffs' product liability claims. Because these Plaintiffs' non-tort claims also fail as a matter of law for various reasons, the Cook Defendants are entitled to summary judgment in these cases.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. All of the Plaintiffs listed on Exhibit A underwent surgical procedures or "open retrievals" to remove their IVC filters. Due to the number of cases subject to this motion, the Cook Defendants have reviewed Plaintiffs' short-form complaints, Categorization Forms, and supporting medical records, and summarized the relevant information from those materials in Exhibit A.[3] See Affidavit of Eldin Hasic, attached as Exhibit A, and accompanying chart.

---

[3] *See* Fed. R. Evid. 1006 (permitting parties to submit evidence through summaries and charts when the information is otherwise cumbersome to present to the Court). The Court has confirmed that the information in the categorization forms and supporting records may be used for limited summary judgment purposes. *See* Entry on the August 20, 2019 Status Conference, Dkt. 11602 (denying PSC's motion to strike and setting briefing schedule).

2. Exhibit A provides the following information for all the listed Plaintiffs' cases:

- Plaintiff's Name;

- Plaintiff's Case Number;

- A short description of the categories selected in each Plaintiff's Categorization Form, along with the dates on the specific medical record(s) submitted in support of those claims;

- The date of Plaintiff's open removal procedure, based on the medical records submitted by Plaintiff,[4] and

- The date on which the Plaintiff filed the case in this Court.

3. In each of the cases on Exhibit A, the date on which the Plaintiff filed his or her action is more than two years after the date of the open removal procedure reflected in the medical record(s) that the Plaintiff submitted as evidence of injury with that Plaintiff's categorization form.

4. All of the cases listed in Exhibit were originally filed in the United States District Court for the Southern District of Indiana.

## STANDARD OF REVIEW

"[S]ummary judgment procedure is governed by federal law" and "[f]ederal law defines the standard for evaluating the sufficiency of the evidence." *Maroules v. Jumbo, Inc.*, 452 F.3d 639, 645 (7th Cir. 2006). "A district court should grant summary judgment only if the pleadings, depositions, answers to interrogatories, admissions, and affidavits 'show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

---

[4] Because these records were submitted by Plaintiffs' attorneys, Cook does not believe there will be any dispute as to their contents. To the extent there is any dispute, Cook will address those concerns on reply, and is happy to provide further records to the Court upon request.

law." *Miller v. A.H. Robins Co.*, 766 F.2d 1102, 1104 (7th Cir. 1985) (quoting Fed. R. Civ. P. 56). In evaluating a motion for summary judgment, the court must view the facts and make all reasonable inferences that flow from them in a light most favorable to the non-moving party. *Zillak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003).

Whether a claim has been brought within the relevant period of limitations presents an issue of state law. *See In re Bridgestone/Firestone Inc. ATX ATXII, Wilderness Tires Prod. Liab. Litig.*, 2002 WL 31689264, at *2 (S.D. Ind. Nov. 20, 2002) ("As a court sitting in diversity, we must look to state law in deciding all matters of substance, including the operation of the relevant statutes of limitations.") (citing *Horbach v. Kaczmarek*, 288 F.3d 969, 976 (7th Cir. 2002)).

## ARGUMENT

I. **Indiana Law Applies to Plaintiffs' Claims Because Plaintiffs Originally Filed Their Cases in This Court and Statute of Limitations Are Procedural Under Indiana Law**

Indiana's two-year statute of limitations applies to all of Plaintiffs' product liability claims.

    A. **Indiana Choice-of-Law Rules Apply to These Cases Because They Were Originally Filed in this Court**

Federal courts apply forum choice-of-law rules to determine the applicable state law. *See e.g., Couch v. Wilco Life Ins. Co.*, 363 F. Supp. 3d 886, 893 (S.D. Ind. 2019) ("A federal court sitting in diversity, as this Court does, must apply the choice of law provisions of the forum state."); *Shifrin v. Liberty Mut. Ins.*, 991 F. Supp. 2d 1022, 1034 (S.D. Ind. 2014) ("A federal court sitting in diversity must apply the choice of law provisions of the forum state."); *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006) ("Federal courts sitting in diversity apply the choice-of-law rules of the forum state to determine the applicable substantive law.") (citing *Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir. 2000), and *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).

In the context of an MDL, a court applies the choice-of-law rules of the state where the case "originated." *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 977 F. Supp. 2d 885, 888 (N.D. Ill. 2013) (citing *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*, 2011 WL 1375011, at *5 (S.D. Ill. Apr. 12, 2011)) ("the law (including the choice of law rules) that applies in the MDL context is the law of the state where the case originated."); *In re Eli Lilly & Co., Prozac Prods. Liab. Litig.*, 789 F. Supp. 1448, 1450 (S.D. Ind. 1992) (citing 15 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 3866 (1986) (collecting cases)).

All 26 of the cases at issue here were originally filed in this Court. See Exhibit A. The Court already addressed the question of "case origination" in its rulings regarding the applicability of *Lexecon* to the current round of bellwether cases. As the Court explained, it has "complete authority over cases originally filed in this court, just as it would over any other cases **originally filed in this district**." Entry for June 13, 2019, Dkt. 11131 (emphasis added). Because all 26 cases here were originally filed in this Court, these cases "originated" here, and the choice-of-law rules of the forum state of Indiana apply. *Couch*, 363 F. Supp. 3d at 893; *Shifrin*, 991 F. Supp. 2d at 1034; *Tanner*, 433 F.3d at 915 (7th Cir. 2006); *Klaxon Co.*, 313 U.S. at 496.

**B.   Indiana Statue of Limitations Govern Plaintiffs' Claims Because Statutes of Limitation Are Procedural Under Indiana Law**

Under Indiana choice-of-law rules, Indiana's statute of limitations applies to these Plaintiffs' claims. On substantive issues, Indiana was a traditional *lexi loci delicti* state, and its current choice-of-law rules retain a *lex loci* presumption "that the law of the place of the tort applies because in a 'large number of cases, the place of the tort will be significant and the place with the most contacts.'" *Simon v. U.S.*, 805 NE.2d 798, 805 (Ind. 2014) (quoting *Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind. 1987)). Under well-settled Indiana law, however, statutes of limitations are **procedural** in nature, not substantive. As a consequence, when choice-

- 5 -

of-law issues arise, Indiana courts apply Indiana's statutes of limitation because "[a] statute of limitations is a procedural constraint on when suit may be filed." *Smither v. Asset Acceptance, LLC*, 919 N.E.2d 1153, 1158 (Ind. Ct. App. 2010) (emphasis added) (citing *Kissel v. Rosenbaum*, 579 N.E.2d 1322, 1326-27 (Ind. Ct. App. 1991)); *see also Lee v. Estate of Cain*, 476 N.E.2d 922, 924 (Ind. Ct. App. 1985) ("It is well settled that the law of the forum state governs in procedural matters and the limitations statutes, being procedural in nature, fall within the rule."); *Horvath v. Davidson*, 264 N.E.2d 328, 332 (Ind. Ct. App. 1970) ("If an action is barred by the statute of limitations of the forum, no action can be maintained though the action is not barred in the state where the cause of actions arose.").

This Court and its sister court in the Northern District have repeatedly confirmed this conclusion, holding that forum law governs choice-of-law issues and requires the court to apply Indiana's statutes of limitations to state-law-based cases commenced in the two districts: "'Because in Indiana statutes of limitations are procedural in nature, Indiana choice-of-law rules state that the statute of limitations of the forum state, Indiana, will apply.'" *Bitler Inv. Venture II, LLC, v. Marathon Ashland Petroleum, LLC*, 779 F. Supp. 2d 858, 889 (N.D. Ind. 2011) (quoting *Autocephalous Greek–Orthodox Church of Cyprus v. Goldberg & Feldman Fine Arts, Inc.*, 717 F. Supp. 1374, 1385 (S.D. Ind. 1989), *aff'd*, 917 F.2d 278 (7th Cir. 1990); *see also McLaughlin Equip. Co. v. Servaas*, 2004 WL 1629603, at *46 (S.D. Ind. Feb. 18, 2004) ("The court concludes that it must apply Indiana's choice of law rules including its statute of limitations to McLaughlin's state law claims, even though another state's substantive law governs those claims. To the extent McLaughlin suggests that the court should apply the statute of limitations of a different state because the substantive law governing its claims are supplied by that state, it is simply incorrect.") (internal citations omitted); *Bailey v. Skipperliner Indus, Inc.*, 278 F. Supp. 2d 945, 952 (N.D. Ind. 2003) ("Because Indiana treats statutes of limitations as procedural, this

Court, sitting in diversity, is compelled to do so as well. This Court therefore declines Plaintiffs' invitation to alter current Indiana law and hold that statutes of limitation are substantive with regard to contract actions."). Indiana's statute of limitations therefore applies to all 26 of the cases here.

**II.    Plaintiffs' Personal Injury Claims Are Time-Barred by The Applicable Indiana Two-Year Statute of Limitations.**

Cook is entitled to summary judgment on Plaintiffs' personal injury tort claims (Counts I – IV and Count VI[5]) because the statute of limitation bars the claims as a matter of law.

Indiana imposes a two-year statute of limitations on product liability claims. *See* Ind. Code § 34-20-3-1 ("a product liability action must be commenced . . . within two (2) years after the cause of action accrues"). This limitation "applies in any product liability action in which the theory of liability is negligence or strict liability in tort." *Id.*

Although "the statute does not define the term "accrues,'" *In re Mirena IUD Prods. Liab. Litig. (Truitt)*, 29 F. Supp. 3d 345, 352 (S.D.N.Y. 2014) (analyzing Indiana statute of limitations law), Indiana courts have adopted a limited discovery rule to determine the accrual date, holding that the statute of limitations "'begins to run from the date that the plaintiff knew or should have discovered that she suffered an injury or impingement, and that it was caused by the product or act of another.'" *Nelson v. Sandoz Pharms. Corp.,* 288 F.3d 954, 966 (7th Cir. 2002) (quoting *Degussa Corp. v. Mullens,* 744 N.E.2d 407, 410 (Ind. 2001)). To determine when a reasonably diligent plaintiff should have discovered the claimed injury, Indiana courts ask "whether a reasonable person in the [plaintiff's] position . . . possessing the information [plaintiff] did when

---

[5]    Indiana law treats implied warranty claims claiming personal injury as product liability claims and applies the product liability statute of limitations to such claims. *See* Ind. Code § 34-20-1-1; *see also B & B Paint Corp. v. Shrock Mfg., Inc.*, 568 N.E.2d 1017, 1019 (Ind. Ct. App. 1991) (noting that action for negligence or strict liability couched in terms of breach of warranty under the UCC is nevertheless subject to product liability statute of limitations).

[she] did, could have discovered through the exercise of ordinary diligence that the product [caused her harm]." *Horn v. A.O. Smith Corp.*, 50 F.3d 1365, 1370 (7th Cir. 1995) (applying Indiana law). At that point, the law "contemplate[s] that persons armed with these indices have a fair opportunity to investigate available sources of relevant information and to decide whether to bring their claims in court within the time limitations in the statute." *Barnes v. A.H. Robins Co.*, 476 N.E.2d 84, 87–88 (Ind. 1985).

Over the years, courts interpreting the Indiana statute of limitations and the associated discovery rule have made clear that the accrual date is analyzed from an objective perspective, and that diagnosis of the complication or injury at issue by a physician or its discovery on medical imaging objectively triggers the statute of limitations, at which point the plaintiff is presumed to know that his or her claims have accrued. *See Nelson*, 288 F.3d at 966 ("[T]he plaintiff's suspicion, standing alone, about the source of her injury is [generally] insufficient to trigger the onset of the limitations period …[, but] the limitations period will begin to run when a physician there is a 'reasonable' possibility, if not a probability that a specific product caused the plaintiff's injury.") (quoting *Degussa*, 744 N.E.2d at 411)); *In re Mirena IUD Prods. Liab. Litig. (Truitt)*, 29 F. Supp. 3d at 352 (analyzing case under statute of limitations laws of both Indiana and Texas and holding in an IUD case that the statute of limitations was triggered "at the latest, when Plaintiff learned that the Mirena perforated her uterus and would have to be removed"); *Cossman v. DaimlerChrysler Corp.*, 108 Cal. App. 4th 370, 380 (2003) (holding under Indiana law that the cause of action accrued when the plaintiff was diagnosed with mesothelioma even though doctors "'couldn't figure out where' she had contracted the disease"); *Withers v. Sterling Drug, Inc.*, 319 F. Supp. 878, 881 (S.D. Ind. 1970) (holding in a pharmaceutical drug case that "plaintiff's cause of action accrued when she discovered her injury, not when she learned that her injuries were permanent").

In medical device cases like these, courts applying Indiana law hold that the accrual date is the date of the injury, and that that date logically cannot be any later than the date of a procedure to correct and/or remove the device. *See In re Mirena IUD Prods. Liab. Litig. (Truitt)*, 29 F. Supp. 3d at 352 (applying both Indiana and Texas law). In addressing migration and perforation of the uterus by an IUD, the *Mirena* court held that "when an IUD is found somewhere in a woman's body where it is not supposed to be—here, Plaintiff's abdomen—and surgery is required to remove it, a diligent individual would know, at the very least, that there was a 'reasonable possibility' that the IUD harmed her and she should therefore make further inquiry to determine her legal rights." *Id.*

This Court reached the same conclusion in *Neuhauser v. A.H. Robins Co.*, 573. F. Supp. 8 (S.D. Ind. 1983). The *Neuhauser* plaintiff received a Dalkon IUD shield in 1972 and became pregnant with the device in place in January 1974. *Id.* at 9. The pregnancy resulted in a miscarriage and removal of the device in June 1974. *Id.* The plaintiff had further problems, later diagnosed as carcinoma of the cervix, that prompted additional surgeries, including the removal of her fallopian tubes and ovaries in 1978, but she did not file her case until 1981. *Id.* at 9-10. This Court found the claim time-barred, explaining that:

> In Indiana a cause of action accrues at the time when both legal injury and damage have occurred, resulting in liability. In this case that time is June 1974, when the plaintiff's pregnancy, which began while the Dalkon Shield was in place, was aborted. The record indicates that the plaintiff's gynecologist-obstetrician informed her when she became pregnant in January that the presence of the Dalkon Shield could cause problems—that if it were removed immediately it could precipitate a miscarriage, but if left in, the Shield could adversely affect the pregnancy in any event. Those fears were realized when the plaintiff suffered her miscarriage in June. Under Indiana's two year statute of limitations, the time within which to file suit expired in June 1976.

*Id.* at 9. The Indiana Court of Appeals has held likewise, ruling that product liability claims based on a broken implantable catheter accrued when the device was removed, not when plaintiff

sought subsequent treatment that noted a retained fragment.  *See Wojcik v. Almase*, 451 N.E.2d 336, 342 (Ind. Ct. App. 1983) (holding that because "the catheter was inserted and removed between June 26 and September 21, 1978, it would have broken off during that time.  Thus, even accepting all of [plaintiff's] allegations as true, including his relation back argument, his original complaint was filed more than two years after his cause of action accrued.").[6]

The Plaintiffs' claims here have exactly the kind of objective marker of accrual that these cases recognized:  an open surgical procedure to remove the IVC filter at issue.  Such a surgical procedure to remove an IVC filter is sufficient was a matter of Indiana law to alert a plaintiff of a "reasonable possibility" that the IVC filter was the cause of the Plaintiff's injuries and that the Plaintiff should make further inquiries about any legal rights related to those injuries.  *See Wojcik,* 451 N.E.2d at 342.  These Plaintiffs' IVC filter claims thus accrued as a matter of Indiana law on the dates of their respective open removal procedures.  *See Wojcik*, 451 N.E.2d at 342 (holding that plaintiff's claims accrued on the date of the fracture of the catheter and not on the subsequent discovery on imaging of the broken fragment); *In re Mirena IUD Prods. Liab. Litig. (Truitt)*, 29 F. Supp. 3d at 352; *Cossman*, 108 Cal. App. 4th at 380 (claims regarding asbestos-

---

[6]    Indiana courts have categorically rejected the argument that the Indiana statute of limitations does not begin to run until the plaintiff learns of the legal cause and/or legal theory applicable to his or her claims.  Although a few states arguably take that view, Indiana does not: "[A] plaintiff need not 'uncover the legal theory for holding a defendant liable for the action to accrue.  Rather, the plaintiff must only be aware that the defendant caused him injury.'"  *In re Mirena IUD Prods. Liab. Litig. (Truitt)*, 29 F. Supp. 3d at 352 (quoting *Frey v. Bank One,* 91 F.3d 45, 47 (7th Cir. 1996) (applying Indiana law)); *see also Perryman v. Motorist Mut. Ins. Co.,* 846 N.E.2d 683, 689 (Ind. Ct. App. 2006) ("[T]he discovery rule does not mandate that plaintiffs know with precision the legal injury that has been suffered, but merely anticipates that a plaintiff be possessed of sufficient information to cause him to inquire further in order to determine whether a legal wrong has occurred.").  Indeed, the *Neuhauser* case categorically rejected plaintiff's argument that "her cause of action did not accrue until she discovered the causal connection between her injury and the Dalkon Shield . . . when she was informed of a report on the television program '60 Minutes' describing the dangers of the Dalkon Shield."  573 F. Supp. at 9.  As discussed above, this Court instead held that the plaintiff's injuries accrued years earlier.  *Id.* at 10 ("The record establishes that the plaintiff knew as early as 1974 that the Dalkon Shield probably caused her miscarriage.").

related mesothelioma accrued when plaintiff was diagnosed with the disease); *Withers*, 319 F. Supp. at 881 (holding that "plaintiff's cause of action accrued when she discovered her injury, not when she learned that her injuries were permanent").

Indeed, both this Court and the Bard Filter MDL court have rejected arguments that IVC filter claims could accrue at a point *after* removal of the filter.  This Court granted summary judgment in Plaintiff Valerie Graham's case early on in the MDL because "[t]he injuries described in her Complaint … were known to her immediately after her September 9 surgery. The limitations period, therefore, expired on or about September 10, 2013, nearly two years before she filed her Complaint."[7]  *Graham* (1:15-cv-00764) Dkt. 164.  The Bard Filter MDL court likewise granted summary judgment under Nebraska law in a bellwether case that involved tilt, perforation, and an unsuccessful retrieval attempt, stating: "Discovery refers to the fact that one knows of the existence of an injury . . . and not that one knows who or what may have caused the injury.  It is not necessary that a plaintiff have knowledge of the exact nature or source of the problem, but only that a problem existed."  *In re Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 3957737, at *4 (D. Ariz. Aug. 17, 2018).  Indiana and Nebraska law are similar in their focus on the general factual underpinnings of the claimed injury to trigger the plaintiff's duty to investigate his or her claims further.

The 26 plaintiffs listed on Exhibit A filed suit against Cook in this Court, claiming they were injured by having to undergo a surgical procedure to remove their IVC filters.  The law in Indiana is clear—these Plaintiffs were required to commence their lawsuit within two years of

---

[7]     *Graham* was briefed and decided prior to this Court's June 13, 2019 ruling on *Lexecon*, that it has "complete authority over cases originally filed in this court, just as it would over any other cases originally filed in this district."  Entry for June 13, 2019, Dkt. 11131.  As a consequence, Kansas law was applied in *Graham*.  The result would be no different were the motion filed today, given that Kansas and Indiana (and also Illinois in the *Gage* case) all have two-year statute of limitations for personal injury actions.  *Compare* Kan. Stat. § 60-514 *and* Ill. Comp. Stat. § 5/13-202 *with* Ind. Code § 34-11-2-4.

the surgeries that necessarily manifested the injuries in which they base their claims. They did not commence their actions within two years, and the Cook Defendants are therefore entitled to summary judgment on Plaintiffs' product liability claims.

### III.   Plaintiffs' Non-Tort Claims Also Fail as a Matter of Law

Although Plaintiffs' Master Complaint asserts and Plaintiffs' short-form Complaints adopt some non-tort-based claims, those claims likewise fail as a matter of law and do not preclude entry of summary judgment in Cook's favor in these cases.[8]

#### A.   Plaintiffs' Express Warranty Claims Fails Because, as the Court Has Previously Ruled, the Master Complaint Fails to State Sufficient Allegations to Support This Claim

Plaintiffs' express warranty claims (Count V) fail because neither the Master Complaint nor the short-form complaints allege any express warranties about the performance of Cook's IVC filters.

The Court has already addressed this issue in the context of Texas-based Plaintiff Emily Apple's express warranty claim, holding that the Master Complaint and plaintiff's short-form complaint failed to sustain a claim for express warranty and noting that "the omission of her specific warranty allegations is fatal." *See* Court's Entry on Motion for Judgment on the Pleadings Based on the Statute of Repose, Dkt. 4918, pp. 13-14 (rejecting Plaintiff Apple's express warranty arguments). The Court also held that "even if she had included such allegations in her Short Form Complaint, her claim would not survive" because she failed to

---

[8] None of these 26 Plaintiffs asserts claims of wrongful death or survivorship, counts IX and X, so Cook does not address those counts here.

allege who made the alleged verbal warranty or claim that she relied on the Cook written materials. *Id.*[9]

Because the general assertions in the Master Complaint cannot sustain a claim for express warranty and, as far as Cook can determine, Plaintiffs have not asserted case-specific express warranty allegations in their individual complaints,[10] Cook is entitled to dismissal of Plaintiffs' express-warranty claims.

### B. Plaintiffs' Consumer Fraud Claims Fail Because They Are Not Plead With The Particularity Required By Federal Rule of Civil Procedure 9(b)

Plaintiffs' fraud-based consumer protection claims (Count VII) fail as a matter of law because Plaintiffs failed to plead them with the particularity required by Fed. R. Civ. P. 9(b). Federal case law makes clear that plaintiffs in federal court on diversity grounds must plead their fraud-based consumer-protection claims with particularity. That is, "when fraud is alleged, it must be done with particularity and plead the who, what, when, where, and how of the alleged fraud." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011) (applying Rule 9's particularity requirement to claim under Illinois Consumer Fraud and Deceptive Business Practices Act); *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 155 F. Supp. 2d 1069, 1109 (S.D. Ind. 2001) (dismissing claims under Michigan and Tennessee consumer protection statutes for failure to meet the heightened pleading requirements of Rule

---

[9] Indeed, in the *Brand* case, Plaintiff Brand did not even attempt to defend her express warranty claim, and the Court readily granted Cook summary judgment on the claim. *See* Entry on Defendants' Motion for Summary Judgment, Dkt. 9696, p. 2.

[10] Cook notes that in an earlier motion, Plaintiff Apple attempted to support her express warranty claim against Cook's motion by citing the Cook Patient Guide and an alleged oral warranty, but the Court nevertheless found her express warranty claim inadequate as plead. *See* Dkt. 4918 at 14-15. Here, Plaintiffs do not allege even those insufficient grounds for an express warranty claim, and *a fortiori* fail as a matter of law.

9(b), including failure to allege "individual reliance"). Federal district courts around the country impose the same requirement.[11]

Here, Plaintiffs' Master Complaint makes only the most general of allegations about Cook's allegedly fraudulent conduct:

> Defendants misrepresented the alleged benefits and characteristics of Cook's IVC Filters; suppressed, omitted, concealed, and failed to disclose material information concerning known adverse effects of Cook's IVC Filters; misrepresented the quality and efficacy of Cook's IVC Filters as compared to much lower-cost alternatives; misrepresented and advertised that Cook's IVC Filters were of a particular standard, quality, or grade that they were not; misrepresented Cook's IVC Filters in such a manner that later, on disclosure of the true facts, there was a likelihood that Plaintiffs would have opted for an alternative IVC Filter or method of preventing pulmonary emboli.

Dkt. 213, ¶ 116. These allegations contain no allegations of the who, what, or how of the alleged misrepresentations, and thus fail to meet Rule 9's particularity requirement. None of the Plaintiffs' short-form complaints provides any additional or more specific allegations; they simply adopt the Master Complaint's vague allegations. Because Plaintiffs have offered only vague, general allegations in support of their consumer fraud claims, those claims fail as a matter of law, and the Court should grant summary judgment in Cook's favor on these claims. *See Holmes*, 2015 WL 7252662, at *2; *Gibson*, 2012 WL 1253007, at *2; *Tuttle*, 2016 WL, 3198230,

---

[11] *See, e.g., Holmes v. Behr Process Corp.*, 2015 WL 7252662, at *2 (N.D. Ala. Nov. 17, 2015); *Gibson v. Credit Suisse AG*, 2012 WL 1253007, at *2 (D. Idaho Mar. 30, 2012); *Tuttle v. Treasure Valley Marine, Inc.*, 2016 WL, 3198230, at *2 (D. Idaho June 8, 2016) ("As discussed above, allegations involving fraud, such as this [Idaho Consumer Protection Act claim], must be accompanied by the 'who, what, when, where, and how' of the misconduct charged."); *Home Owners Ins. Co. v. ADT LLC*, 109 F. Supp. 3d 1000, 1009 (E.D. Mich. 2015) ("Because Plaintiff's claim for violation of the MCPA does not meet Rule 9(b)'s heightened pleading requirements, this claim will be dismissed."); *Peacock v. AARP, Inc.*, 181 F. Supp. 3d 430, 435 (S.D. Tex. 2016) ("Claims alleging violations of the Texas Insurance Code and the DTPA and those asserting fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation are subject to the requirements of Rule 9(b)") (citing *Frith v. Guardian Life Ins. Co. of Am.,* 9 F. Supp. 2d 734, 742 (S.D.Tex.1998)); *BHR Recovery Communities, Inc. v. Top Seek, LLC*, 355 F. Supp. 3d 416, 424 (E.D. Va. 2018) ("As a claim sounding in fraud, Federal Rule of Civil Procedure 9(b) requires plaintiffs to plead VCPA claims with particularity.").

at *2; *Home Owners Ins. Co.*, 109 F. Supp. 3d at 1009; *Peacock*, 181 F. Supp. 3d at 435; *BHR Recovery Communities, Inc.*, 355 F. Supp. 3d at 424.

      C.    **Plaintiffs' Derivative Claim for Loss of Consortium and Punitive Damages Fail Because They Cannot Stand on Their Own**

Finally, Plaintiffs' claims for loss of consortium (Count VIII) and punitive damages (Count XI) fail as a matter of law because they are derivative claims that cannot stand on their own. "[A] cause of action for loss of consortium derives its viability from the validity of the claim of the injured spouse against the wrongdoer." *Miller v. Cent. Indiana Cmty. Found., Inc.*, 11 N.E.3d 944, 963 (Ind. Ct. App. 2014) (quoting *Bd. of Comm'rs of Cass Cnty. v. Nevitt*, 448 N.E.2d 333, 341 (Ind.Ct.App.1983)). *See also Flying J Fish Farm v. Peoples Bank of Greensboro*, 12 So. 3d 1185, 1196 (Ala. 2008) ("A loss-of-consortium claim is derivative of the claims of the injured spouse. Therefore, [the wife's] claim must fail if [the husband's] claims fail."); *Runcorn v. Shearer Lumber Prods., Inc.*, 690 P.2d 324, 329 (Idaho 1984) ("The claim for loss of consortium is a wholly derivative cause of action contingent upon a third party's tortious injury to a spouse."); *DeGrate v. Exec. Imprints, Inc.*, 261 S.W.3d 402, 412 (Tex. Ct. App. – Tyler Div. 2008) ("When a loss of consortium is derived from an injury to the spouse, the claim is derivative and thus, must fail if the injured spouse's claims against the defendant fails."); *Benavides v. Cty. of Wilson*, 955 F.2d 968, 975 (5th Cir. 1992) (finding that summary judgment against non-derivative claim also barred the derivative loss of consortium claim).

In the MDL context, the District of Minnesota dismissed loss of consortium claims as derivative when it dismissed the entire master complaint in an MDL involving a PMA device due to federal preemption:

> Claims such as loss of consortium … do not appear to fit neatly into any of the aforementioned categories. Nevertheless, the Court agrees with Medtronic that any claims in the Complaint not addressed above are derivative of Plaintiffs' other claims and hence cannot stand.

*In re Medtronic, Inc. Sprint Fidelis Leads Prod. Liab. Litig.*, 592 F. Supp. 2d 1147, 1165 (D. Minn. 2009), *aff'd*, 623 F.3d 1200 (8th Cir. 2010).

Here, as discussed above, all of the Plaintiffs' substantive claims fail as a matter of law, and the derivative loss of consortium and punitive damages claims fail along with those substantive claims. *See e.g., Flying J Fish Farm*, 12 So. 3d at 1196; *Runcorn*, 690 P.2d at 329; *DeGrate*, 261 S.W.3d at 412; *Benavides*, 955 F.2d at 975; *In re Sprint Fidelis Leads*, 592 F. Supp. 2d at 1165. Accordingly, the Cook Defendants are also entitled to summary judgment on these derivative claims.

## **CONCLUSION**

For the foregoing reasons, the Cook Defendants are entitled to summary judgment on the claims brought by these 26 Plaintiffs.

Respectfully Submitted,

Dated: October 1, 2019

/s/ *Andrea Roberts Pierson*
Andrea Roberts Pierson, Co-Lead Counsel
Jessica Benson Cox
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2500
Indianapolis, Indiana 46204
Telephone:   (317) 237-0300
Andrea.Pierson@FaegreBD.com
Jessica.Cox@FaegreBD.com

James Stephen Bennett, Co-Lead Counsel
FAEGRE BAKER DANIELS LLP
110 West Berry Street, Suite 2400
Fort Wayne, Indiana 46802
Telephone:   (260) 424-8000
Stephen.Bennett@FaegreBD.com

*Attorneys for the Defendants Cook Incorporated, Cook Medical LLC, and William Cook Europe ApS*

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2019, a copy of the foregoing **COOK DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR RENEWED OMNIBUS MOTION FOR SUMMARY JUDGMENT BASED ON APPLICABLE STATUTE OF LIMITATIONS** was filed electronically and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.

/s/ *Andrea Roberts Pierson*