# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

_____

IN RE COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

_____

This Document Relates to 46 Category 6 and 7 Cases
(Listed in Exhibit A by Cause Number Order)

_____

## COOK DEFENDANTS' MEMORANDUM IN SUPPORT OF
## OMNIBUS MOTION FOR SUMMARY JUDGMENT
## IN 46 MISCATEGORIZED NO INJURY CASES

The Cook Defendants[1] move for summary judgment with respect to the 46 cases filed by

the plaintiffs listed in **Exhibit A** and ask the Court to enter judgment in those cases because the

Categorization Forms and supporting records they submitted fail to demonstrate that any legally

cognizable injury occurred in those cases.  This motion covers a non-exhaustive list of three

types of "no injury" cases:  (1) 27 cases where the only claimed complication is tilt, which is not

a cognizable injury under applicable case law and the Court's categorization framework (the

"Tilt-Only Cases"); (2) ten cases where the medical records submitted demonstrate only that the

Plaintiff received a filter and do not support any of the claimed complications/injuries selected in

the accompanying Case Categorization Form (the "Placement-Only Cases"); and (3) nine cases

where the medical records demonstrate that the filter was successfully removed percutaneously

on the first attempt without indication of any legally cognizable injury occurring while the filter

_____

[1]    As used in this memorandum, "Cook" and "the Cook Defendants" refer to Defendants
Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook
Europe ApS.

was in the Plaintiff's body or in connection with the retrieval process (the "Successfully Removed Filter Cases").[2]

## <u>INTRODUCTION AND SUMMARY</u>

The proliferation of "no injury" and "product-in-place" cases on this Court's docket prompted the case categorization and screening measures ordered by the Court last year. Pursuant to the Court's October 2, 2018 Case Categorization and Screening Order (Dkt. 9322), Plaintiffs categorized their cases in the seven categories created by the Court.  In some cases, however, the medical record(s) submitted in support of the chosen categorization offer no support for the claim made.  By this Motion, Cook draws the Court's attention to the issue of miscategorized "no injury" cases and asks the Court to dismiss these cases as part of a larger effort to cull this MDL of procedurally and/or substantively meritless claims.

The 46 cases here are cases in which there is no cognizable injury, whether measured by operation of the Court's categorization framework or under longstanding principles of tort law that damages cannot be recovered in the absence of a symptomatic physical injury.  First, the 27 Tilt-Only Cases fail to raise a legally cognizable injury because tilt is not an injury—mere tilt of an IVC filter is, at best, a precursor to a potential future complication that may or may not materialize, which itself may or may not lead to symptomatic actual injuries.  Such mere tilt is not a legally cognizable claim, as the Southern District of New York recognized in the *Perez* case.  *See Perez v. B. Braun Med., Inc.*, 2018 WL 2316334, at *5 (S.D.N.Y. May 9, 2018) (explaining that even if "accepting that the likely tilt is an actual tilt, no more is said about it than that it may lead to a series of actual injuries.").  Indeed, the Court's categorization framework

---

[2]    Two cases that would otherwise be Tilt-Only Cases are included and counted among the Successfully Removed Filter Cases for purposes of this motion.  Additionally, the *McGee* case is also part of Cook's pending omnibus motion for summary judgment on statute of limitations grounds because it is time-barred based on its removal date.  *See* Dkts. 11725-26.

US.123867262

itself recognizes that standalone tilt is not a legally cognizable injury and the categories adopted by the Court have no place for a claim of mere tilt.

The ten Placement-Only Cases likewise fail to demonstrate a legally cognizable injury. Although these Plaintiffs allege in their categorization forms that they have experienced complications and/or injuries from their filters, they failed to submit supporting medical records that demonstrate anything more that the fact that they received Cook IVC filters that presumably remain in place.

Finally, Plaintiffs in the nine Successfully Removed Filter Cases also fail to demonstrate any legally cognizable injury. On the contrary, the records they submitted show that their filters have been successfully removed without complication on the first routine, percutaneous removal attempt. As such, these are cases that should have categorized as Category 1 and would have been dismissed by the Court in May 2019. *See* Case Categorization and Screening Order, Dkt. 9322 (ordering that Category 1 cases will be "subject to immediate dismissal"); Dkt. 10617 (dismissing Category 1 Cases).

Because these Plaintiffs' non-tort claims also fail as a matter of law, Cook is entitled to summary judgment in these 46 cases.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     On October 2, 2018, the Court entered its Categorization and Screening Order, Dkt. 9322, ordering all MDL plaintiffs to categorize their cases in one of seven categories and to support those selections with specific medical records.

2.     Through subsequent orders, the Court set deadlines (and later gave multiple extensions) and adopted the form that plaintiffs were required to use. *See* Orders, Dkts. 9638, 9907 & 10617. In pertinent part, the Case Categorization Form (Dkt. 9638-1) stated that

US.123867262

"plaintiff[s] may select more than one of the seven categories outlined in the Categorization Form, with the understanding that only the 'highest' alleged category will be considered for purposes of the census ordered by the Court" and that "each category alleged requires a specific medical record." *See* Dkt. 9638-1.

3.      The Case Categorization Form further required that counsel certify that "the categorization is based on a review of the available medical records including imaging reports and records" and that "submission of the specific medical record(s) … are counsel's certification that the outcome, complication, or injury represented in [the Form] is the proper categorization for Plaintiff's case to the best of counsel's knowledge and belief." *Id.* at 4.

4.      With respect to categories relevant to the motion here:

   a.      The Court did not create a category specific to tilt claims.  Tilt is not mentioned as one of the applicable case types in the definition of Category 6 nor is it one of the various subcategories that are part of Category 7. *See generally id.*

   b.      Category 1 cases were defined as cases where the "IVC filter was successfully removed on the first, routine, percutaneous retrieval attempt and no physical symptom or filter complication was alleged during the time the filter was in place or in connection with the retrieval process."   Case Categorization and Screening Order, Dkt. 9322, p. 1-2.  Such cases are "subject to immediate dismissal." *Id.* at 3.

5.      All Plaintiffs listed in Exhibit A have provided Categorization Forms and supporting records, and they are categorized in the census in Categories 6 and 7.[3]

---

[3]      The Court has confirmed that the information in the Case Categorization Forms and supporting records may be used for this limited purpose in motion practice.  *See* Entry on the August 20, 2019 Status Conference, Dkt. 11602 (denying PSC's motion to strike).

US.123867262

6.      Category 1 cases were subject to immediate dismissal under the Categorization and Screening Order and were subsequently dismissed (Dkt. 10588), and nearly all Category 2 cases have also been dismissed as a result of voluntary dismissals and motion practice.

7.      Due to the number of cases subject to this motion, the Cook Defendants have reviewed Plaintiffs' short-form complaints, Categorization Forms, and supporting medical records, and summarized the relevant information from those materials in Exhibit A.[4]

8.      Exhibit A provides the following information for all 46 Plaintiffs' cases:

- Plaintiff's name;
- Plaintiff's case number;
- Plaintiff's home state (as denoted by the state of current residence alleged in the Plaintiff's complaint);
- Plaintiff's highest category in the census;
- The case type grounds on which Cook seeks dismissal (i.e. status as a Tilt Only, Placement Only, and/or Successfully Removed Filter Case); and
- A short description and/or quote of the key language from the specific medical record(s) submitted in support of those claims (the "Description in Record" column).[5]

9.      As summarized in the "Description in Record" column, each of the 46 Plaintiffs here has failed to submit a medical record in support of a legally cognizable injury.  More specifically:

a.      Plaintiffs in the 27 Tilt-Only Cases have only submitted records demonstrating that their filters have tilted;

---

[4]      *See* Fed. R. Evid. 1006 (permitting parties to submit evidence through summaries and charts when the information is otherwise cumbersome to present to the Court).

[5]      As this motion applies to 46 cases, it would have been impractical for the Cook Defendants to attach the Case Categorization Forms and supporting records submitted by all these Plaintiffs as part of the categorization process.  Because these forms and records were submitted by Plaintiffs' attorneys, Cook does not believe there will be any dispute as to their contents.  To the extent there is any dispute, Cook will address those concerns on reply.

b.    Plaintiffs in the ten Placement-Only Cases submitted records demonstrating only that they received a filter that may still be in place; and

c.    Plaintiffs in the nine Successfully Removed Filter Cases have submitted records that demonstrate that their filters were removed percutaneously on the first attempt without issue, with no indication of any symptomatic injury occurring while their filters were in place.

## STANDARD OF REVIEW

"[S]ummary judgment procedure is governed by federal law" and "[f]ederal law defines the standard for evaluating the sufficiency of the evidence." *Maroules v. Jumbo, Inc.*, 452 F.3d 639, 645 (7th Cir. 2006). "A district court should grant summary judgment only if the pleadings, depositions, answers to interrogatories, admissions, and affidavits 'show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Miller v. A.H. Robins Co.*, 766 F.2d 1102, 1104 (7th Cir. 1985) (quoting Fed. R. Civ. P. 56). In evaluating a motion for summary judgment, the court must view the facts and make all reasonable inferences that flow from them in a light most favorable to the non-moving party. *Zillak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003).

The definition and scope of liability in tort are questions of state law and are governed by the applicable substantive law. *Shady Grove Orthopedic Assocs., PA v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) ("It is a long-recognized principle that federal courts sitting in diversity apply state substantive law and federal procedural law.").[6]

---

[6]    The Court need not conduct a complex choice-of-law analysis for each case because the outcome is the same under the laws of all the states whose laws could arguably apply. These 46 cases are not legally cognizable under the law of any state because the Plaintiffs have not

US.123867262

## ARGUMENT

I.  **Plaintiffs Fail to State Legally Cognizable Personal Injury Tort Claims Because They Have Not Suffered from Any Present Physical Injury.**

Plaintiffs' personal injury tort claims (Counts I – IV) must be dismissed for failure to state legally cognizable injuries.  Under both longstanding tort law principles and modern precedent in medical product cases, including IVC filter cases, a plaintiff cannot sustain a claim for emotional distress damages for fear of *future* injury absent any *present* physical injury.  Specifically:

- Plaintiffs in the Tilt Only and Placement-Only Cases have submitted records in support of categorization that only demonstrate that an IVC filter has been placed in their bodies and that it may have tilted, but mere tilt and/or general presence of a filter in a Plaintiff's body is not a legally sufficient injury.  Accordingly, Cook is entitled to summary judgment in these cases, under the same terms of dismissal that the Court has employed over the last several months for Category 2 cases, among others.

- Plaintiffs in the Successfully Removed Filter Cases have submitted records that (1) demonstrate that their filters have been successfully removed percutaneously on the first attempt and (2) there is no indication in the records submit that a symptomatic physical injury occurred while the filter was in their bodies or in connection with the retrieval process.  As such, the Successful Removal Plaintiffs have not suffered any injury and their cases should be dismissed with prejudice.  Indeed, they should have

---

experienced any underlying physical injury.  *See e.g., Simon v. United States*, 805 N.E.2d 798, 801 (Ind. 2004) (explaining that the Court's first step on a choice-of-law analysis is to determine if there is a "true conflict between the laws of the two states.").  Here, there may be immaterial nuanced differences in state law, but no "true conflict" because these would not be cognizable under Indiana law or the substantive laws of any of the states where they reside.

US.123867262

categorized their cases as Category 1, but they escaped immediate dismissal by incorrectly categorized their cases as a higher category.

## A.    Mere Tilt Is Not a Legally Cognizable Injury

As the Court is aware from previous briefing and hearings, the Southern District of New York **held last year that mere tilt of an IVC filter is not a legally sufficient injury**.  *See Perez*, 2018 WL 2316334.  In *Perez*, the plaintiff received an IVC filter and alleged that a CT scan subsequently showed the filter was tilted.  The plaintiff alleged pain and sought economic and psychological damages, as well as "substantial medical costs and expenses" for her care and treatment.  The plaintiff claimed various unspecified physical injuries: "sustained serious personal injuries," "severe injuries," "loss of enjoyment of life, disability, and other losses."  She also alleged she was at a greater risk of future injury because of the IVC filter.  The defendants moved to dismiss, arguing that the complaint did not adequately allege that the plaintiff had presently suffered any cognizable injury.  *Id*. at 3.  The court granted the motion and dismissed the case, holding that "[a] threat of future harm is insufficient to impose liability against a defendant in a tort context."  *Id*.  Addressing the tilt claims, the court said "**as a characteristic throughout the complaint[], she assumes that the tilt is the injury.  But, accepting that the likely tilt is an actual tilt, no more is said about it than that it may lead to a series of actual injuries**."[7]  *Id*. at 5 (emphasis added).  In sum, the court held fear of injury and tilt are not cognizable injuries.  *Id*.

When the parties in this MDL briefed the contours of the categorization framework and current bellwether plan, Cook argued that cases involving mere tilt are among several distinct

---

[7]    As with the *Perez* case, it is questionable in at least some of the Tilt Cases whether those Plaintiffs could meet the medical definition of a tilt, because the general medical definition of tilt requires 15 or more degrees of lateral tilt and the descriptions summarized in Exhibit A note several cases where the alleged tilt was less than 15 degrees.  *See generally* Exhibit A.

US.123867262

"no injury" case types that should be dismissed.  In response, the PSC in their brief argued that

tilt cases were *potential* injuries, tacitly acknowledging that mere filter tilt is not a *present*,

physical injury.  Notably, the PSC argued in their brief that "blood clots, numbness, shortness of

breath, and the need for anticoagulation. . . . [constitute] a bodily injury," but did not make that

same argument for tilt or for successful removal cases.  *See* Pls.' Response to Cook Defs.' Mot.

for Screening Order and Bellwether Selection Plan, Dkt. 8591, p. 11.  Instead, the PSC argued

that "tilt is an early stage complication in the progressive IV [sic] filter injury process."  *Id.*  But

an alleged prerequisite to an undefined future injury is not a legally sufficient injury on its own

accord.  *See Perez*, 2018 WL 2316334, at 5.  Moreover, although the PSC proposed six

categories for classifying the MDL inventory, it did not propose *any* distinct category or

subcategory for mere tilt cases.  *See* Pls.' Response to Cook Defs.' Mot. for Screening Order and

Bellwether Selection Plan, Dkt. 8591, p. 11.  Accordingly, when the Court issued the Case

Categorization and Screening Order (which includes some elements and definitions from both

Cook's and PSC's proposals), the Court did not create a separate category or subcategory for

mere tilt cases.  *See generally* Case Categorization and Screening Orders, Dkt. 9322 (ordering

categorization); Dkt. 9638 (adopting Case Categorization Form and specific requirements and

instructions).

     As the Court has seen, mere tilt cases were primarily categorized as Category 2 (to the

extent they categorized at all), and those cases were largely dismissed through a combination of

voluntary dismissals and motion practice.[8]  Plaintiffs in the Tilt-Only Cases here, however,

categorized their cases as Category 6 or Category 7, thus falling outside the ambit of earlier

---

[8]    Plaintiffs continue to categorize as Category 2 despite these dismissals, and Cook has
raised that issue as part of a separate dispositive motion to dismiss 42 additional Category 2
cases.  *See* Dkt. 11687-88.

US.123867262

motion practice targeted at Category 2 cases.  Review of these Plaintiffs' Categorizations Forms and supporting medical records confirms that they are miscategorized, because tilt is not a recognized category under the categorization framework.  Mere tilt is not recognized in any of the subcategories in Category 7, and Category 6 is reserved for "non-symptomatic filter movement, migration, penetration, perforation, thrombosis, occlusion or the presence of a clot in the filter that not produced physical symptoms or complications."  *Id.*  Neither Category 6 nor Category 7 include tilt cases in their definitions.  *See id.*

In sum, the categorization framework adopted by the Court – with substantial input from the PSC regarding category types and definitions – provides no place for mere tilt cases, because mere tilt is not a legally cognizable injury, as explained by the *Perez* case.  *See Perez*, 2018 WL 2316334, at 5; Case Categorization and Screening Order, Dkt. 9322 (no category for tilt).  The reasoning of the *Perez* court is a straightforward application of longstanding principles of tort law.  *See e.g.,* Prosser & Keeton, *Torts* § 30 at 165 (5th ed. 1984) ("The threat of future harm, not yet realized, is not enough."); Restatement (Second) of Torts § 313 (1965) ("If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance to another, and it results in such emotional disturbance alone, without bodily harm or other compensable damages, the actor is not liable for such emotional disturbance").[9]  Simply put, a tilted filter, without more, is not a physical injury to the Plaintiff because it does not

---

[9]     Of note, every jurisdiction in the country requires medical causation in medical product liability cases to be proven with expert testimony because of the complexity of the causation issues involved, even where an injury has clearly occurred and the material issues are product defect and causation.  *See* Peter A. Meyer & Eldin Hasic, *Oh Expert, Where Art Thou?*, ABA Section of Litigation, Mass Torts (November 1, 2018), published online at https://www.americanbar.org/groups/litigation/committees/mass-torts/articles/2018/oh-expert-where-art-thou/ (50-state survey on expert testimony requirement regarding medical causation in complex medical device cases).  Plaintiffs in the Tilt Only and Placement-Only Cases here lack a cognizable symptomatic physical injury, the prerequisite to even *attempting* to prove complicated medical causation issues.

"injure" the Plaintiff's vena cava, even in the abstract sense.  Indeed, if it did so, these Plaintiffs would have submitted records demonstrating conditions such as embedment or perforation and would have described their claims in the categorization forms accordingly.[10]

In any event, Cook provided law from more than 20 states as part of its Category 2 briefing demonstrating that physical injury is required to maintain a cause of action in tort, either generally or specifically in the medical product context.  No Category 2 Plaintiff managed to contradict the case law Cook compiled to save their claim, and very few even tried.  *See* Cook Defs.' Memo. in Support of Judgment on the Pleadings in Category 2 Cases for Failure to State a Claim ("Cook's Category 2 Brief"), Dkt. 10857, pp. 5-15.  The case law cited in Cook's Category 2 Brief covers most of the states in which these 46 Plaintiffs reside and demonstrates that Cook is entitled to summary judgment in these Tilt-Only Cases as a matter of law, without need to specifically address choice-of-law issues.  *See id.*[11]  With respect to the five states where some of the Plaintiffs here reside that were not at issue in the Category 2 briefing, courts in four of those states have also confirmed that physical injury is a prerequisite to recovery in tort, and the fifth—Arkansas—does not recognize a cause of action for negligent infliction of emotional distress at all.  *See Mechs. Lumber Co. v. Smith*, 752 S.W.2d 763, 765 (Ark. 1988) ("[A] claim of negligent infliction of emotional distress is not recognized in Arkansas."); *S. Ins. Co. Lowenberg*

---

[10]     As the Court is aware, Cook's position is that compensable injuries are limited to only certain subcategories of Category 7.  The parties will address their disputes about Category 6 and other case types through the next round of bellwether trials and other motions.

[11]     Specifically, Cook's Category 2 Brief provides case law from Indiana and 21 state and federal courts where these Plaintiffs reside.  *See* Cook's Category 2 Brief at 5-15 (citing and quoting case law from Arizona, California, Florida, Idaho, Maryland, Massachusetts, Michigan, Mississippi, Missouri, Nevada, New Jersey, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Tennessee, Texas, Utah, Virginia and West Virginia.  For California law, *see also Khan v. Shiley, Inc.*, 217 Cal. App. 3d 848, 856 (Ca. Ct. App. 4th 1990) ("Contrary to plaintiffs' assertion, Khan is not the quintessential direct victim as contemplated by *Molien*. . . .  Indeed, she has not yet been victimized.  In the absence of product malfunction, Khan cannot establish defendants breached any duty owed to her.").

*v. CJG Enters., Inc.*, 2017 WL 3449610, *5 (S.D. Iowa May 12, 2017) (explaining that lack of personal injury or physical damage beyond the defective product itself can be fatal for tort claims . . . ."); *Engler v. Ill. Farmers Ins. Co.*, 706 N.W.2d 764, 765 (Minn. 2005) (holding that demonstration of "severe emotional distress with attendant physical manifestations" is required under Minnesota law to recover for emotional distress damages); *Strickland v. Madden*, 448 S.E.2d 581, 584 (S.C. Ct. App. 1994) (holding that plaintiff South Carolina law requires a "bodily injury [] proximately caused by [the plaintiff's] emotional trauma [to] recover for such trauma as an element of damages."); *Corsi v. Farm*, 2013 WL 11330880, *4 n.5 (D. Wy. Oct. 11, 2013) (noting that Restatement (Second) of Torts requires showing of physical harm and suggesting its application in Wyoming).

In sum, mere filter tilt is not a legally cognizable injury, and the Court should therefore dismiss all the personal injury tort claims alleged by Plaintiffs in the Tilt-Only Cases, specifically their Strict Liability claims (Counts I-II), their Negligence and Negligence Per Se claims (Counts III-IV), and their Wrongful Death and Survivorship (Counts X-XI) claims to the extent applicable.[12]

## B.   Plaintiffs' Claims in Placement-Only Cases Fail as a Matter of Law.

Like the Tilt-Only Plaintiffs, the Plaintiffs in the Placement-Only Cases cannot show that they have suffered any legally cognizable injuries.  As set forth in the "Description of Record"

---

[12]   The Estate of Plaintiff Isiah County only categorized the case as a Category 6 tilt case, but they also submitted a death certificate listing PE as the cause of death without selecting Category 7j (death) or 7g (recurrent PE).  *See* Exhibit A (table entry no. 39).  Cook understands this categorization to mean the Estate of Plaintiff County is only pursuing the tilt claim and has therefore included the case in this motion.  To the extent the Estate of Plaintiff County intended to pursue other claims, all claims would be time-barred because the Texas-issued certificate of death is dated June 12, 2012, but the case was not filed until October 5, 2018, over six years later.  *See* Cook Defendants' Memo. in Support of Their Renewed Omnibus Motion for Summary Judgment Based on the Applicable Statute of Limitations, Dkt. 11726 (analyzing choice-of-law and the two-year statute of limitations for tort claims in both Indiana and Texas, among other states).

US.123867262

column in Exhibit A, the Plaintiffs in the ten Placement-Only Cases have submitted records that demonstrate *only* that they received a Cook filter and that the filter presumably remains in place in their bodies.  To the extent these Plaintiffs submitted any records in addition to the placement records, those records fail to establish that any legally cognizable physical injury occurred as a result of the filter.  Without evidence of a legally cognizable bodily injury, these Plaintiffs' claims cannot proceed; a physical injury is required to anchor any claim of damages that they could pursue.  *See supra* Section II.A. (incorporating by reference and citing case law from Indiana and Plaintiffs' home states regarding the physical injury requirement).[13]

The Placement-Only Plaintiffs allege various complications and injuries as part of their categorization forms, but allegations alone cannot suffice to meet the requirements of the Case Categorization and Screening Order and survive dismissal.  In fact, the Case Categorization and Screening Order expressly required Plaintiffs to provide a "specific medical record" in support of each claimed injury.  *See* Case Categorization Form, Dkt. 9638-1, Instructions Nos. 2-3 (explaining that plaintiffs may select multiple categories but "that each category alleged requires a specific medical record.").  By alleging injuries and complications in their categorizations forms but failing to support those allegations with any medical records demonstrating those sequalae, Plaintiffs in the Placement-Only Cases have not complied with the Case Categorization and Screening Order and have failed to demonstrate that any legally cognizable injury occurred in their cases.

---

[13]     Plaintiffs Cynthia Hall and Barbara Fuller submitted records of PE/DVT, but the description and date of service for those records demonstrate only that these two Plaintiffs received filters as part of their hospitalizations for PE, not that they experienced recurrent PE after filter placement.  *See* Exhibit A (table entries nos. 17 & 43).  For obvious reasons, an instance of PE that prompts the placement of the filter in the first place cannot be a "recurrent" instance of PE.

Accordingly, the Cook Defendants are entitled to summary judgment on the tort claims (Counts I-IV) in the Placement-Only Cases.

### C.   Cook Is Entitled to Dismissal With Prejudice Of the Tort Claims in the Successful Removal Cases.

Under the terms of the Case Categorization and Screening Order, Category 1 cases were defined as cases where the "IVC filter was successfully removed on the first, routine, percutaneous retrieval attempt and no physical symptom or filter complication was alleged during the time the filter was in place or in connection with the retrieval process." Dkt. 9322, p. 1-2. Such cases are "subject to immediate dismissal" under the Case Screening and Categorization Order, *id.* at 3, and they were dismissed by the Court in May 2019, *see* Dkt. 10617 (order dismissing 27 Category 1 cases). As part of their briefing regarding the categorization framework, the PSC conceded that these cases were "no injury": "It is Plaintiffs' position that *only* cases falling within category 1 may fairly be considered non-injury cases." *See* Pls.' Response to Cook Defs.' Mot. for Screening Order and Bellwether Selection Plan, Dkt. 8591, p. 15 (emphasis in original).

Here, the Plaintiffs in the nine Successful Removal Filter Cases categorized their cases as either Category 6 or 7, but review of the records they submitted in support of categorization shows that their filters were successfully removed. *See* Exhibit A. Moreover, there is no indication in the records submitted that these Plaintiffs suffered any symptomatic bodily injury attributable to the filter while their filters were in place or any injury as part of the routine and successful percutaneous removal. Simply put, there is no indication in any of the records they submitted in support of categorization that any legally cognizable injury occurred. In short, these nine Successfully Removal Filter Cases are miscategorized; they should have been categorized

US.123867262

as Category 1 pursuant to the Court's Case Categorization and Screening Order and would have been dismissed with other Category 1 cases in May (*see* Dkt. 10617).

Accordingly, Cook is entitled to summary judgment in the nine Successful Removal Cases, and the terms of dismissal should be with prejudice.  No future injury can occur because the filters have been retrieved without issue.

## II.    Plaintiffs' Non-Tort Claims Also Fail as a Matter of Law.

Although Plaintiffs' Master Complaint asserts and Plaintiffs' short-form Complaints adopt some non-tort-based claims, those claims likewise fail as a matter of law.

### A.    Plaintiffs' Express Warranty Claims Fails Because, as the Court Has Previously Ruled, the Master Complaint Fails to State Sufficient Allegations to Support This Claim.

Plaintiffs' express warranty claims (Count V) fail because neither the Master Complaint nor the short-form Complaint alleges any express warranties about the performance of Cook's IVC filters.

The Court has already addressed this issue in the context of Texas-based Plaintiff Emily Apple's express warranty claim and held that the Master Complaint and that plaintiff's short-form complaint failed to sustain a claim for express warranty, noting that "the omission of her specific warranty allegations is fatal."  *See* Court's Entry on Motion for Judgment on the Pleadings Based on the Statute of Repose, Dkt. 4918, pp. 13-14 (rejecting Plaintiff Apple's express warranty arguments).  The Court also held that "even if she had included such allegations in her Short Form Complaint, her claim would not survive" because she failed to allege who made the alleged verbal warranty or claim that she relied on the Cook written materials.  *Id.*  In the *Brand* case, Plaintiff Brand did not even attempt to defend her express

US.123867262

warranty claim, and the Court readily granted Cook summary judgment on the claim. *See* Entry on Defendants' Motion for Summary Judgment, Dkt. 9696, p. 2.

Because the general assertions in the Master Complaint cannot sustain a claim for express warranty and, as far as Cook can determine, the 46 Plaintiffs here have not asserted case-specific express warranty allegations in their short-form complaints,[14] Cook urges the Court to dismiss these Plaintiffs' express-warranty claims.

### B.   Plaintiffs Cannot as a Matter of Law Establish Implied Warranty Claims, Either in Tort or in Contract.

Cook is also entitled to dismissal of the Plaintiffs' claims based on implied warranty (Count VI), whether those warranties are claimed to arise from tort or contract.  To the extent they arise in tort, implied warranty claims fail for the same reasons as Plaintiffs' other tort claims—the lack of any claim of physical injury, as discussed above.  *See, e.g.*, 2 Dan D. Dobbs, Paul T. Hayden, and Ellen M. Bublick, *The Law of Torts* § 390 (2d ed. 2018) (noting that no court has adopted a duty for an actor to exercise reasonable care where the actor's conduct creates a risk of emotional harm); Prosser & Keeton, *Torts* § 30 at 165 (5th ed. 1984) ("The threat of future harm, not yet realized, is not enough."); *Perez*, 2018 WL 2316334, at *5 (explaining reasons underlying court's dismissal plaintiff's implied warranty claims in IVC filter case with no injury because "threat of future harm is 'insufficient to impose liability' because plaintiff 'must sustain injury or damage before being able to recover' to protect 'court dockets from being clogged with frivolous and unfounded claims.'") (quoting *Caronia v. Phillip Morris, USA, Inc.*, 5 N.E.3d 11, 14 (N.Y. 2013)).

---

[14]   Cook notes that Plaintiff Apple attempted to support her express warranty claim against Cook's motion by citing the Cook Patient Guide and an alleged oral warranty, but the Court nevertheless found her express warranty claim inadequate as plead.  *See* Dkt. 4918 at 14-15. Here, the Plaintiffs do not allege even those insufficient grounds for an express warranty claim, and *a fortiori* fail as a matter of law.

US.123867262

On the contract side, any contractually based implied-warranty claim fails as a matter of law to the extent pursued by the Plaintiffs here because a plaintiff cannot recover emotional distress damages under contract law absent physical injury:

> The general rule is that damages "damages for mental anguish are limited to cases in which there has been a personal physical injury or where the defendant acted willfully, wantonly, recklessly or intentionally caused the mental anguish. **Thus, recovery for mental anguish is not, as a general rule, allowed in actions for breach of contract;** the courts evidently believe that the mental suffering which accompanies a breach of contract is too remote for compensation."

*Maere v. Churchill*, 452 N.E.2d 694, 697 (Ill. Ct. App. 1983) (quoting 22 Am. Jur. 2d, Damages, § 196 (2d Ed. 1965) (emphasis added); *see also Fava v. Liberty Mut. Ins. Corp.*, 338 F. Supp. 3d 1217, 1224 (D.N.M. 2018) ("Plaintiffs offer nothing to show that they can recover emotional distress damages as a category of consequential damages, nor do they offer any legal support for the recovery of emotional distress damages under a contract theory."); Restatement (Second) of Contracts § 353 (1981) ("Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind of serious emotional disturbance was a particularly likely result.").

### C.   Plaintiffs' Consumer Fraud Claims Fail Because They Are Not Plead With The Particularity Required By Federal Rule of Civil Procedure 9(b).

Plaintiffs' fraud-based consumer protection claims (Count VII) fail as a matter of law because Plaintiffs failed to plead them with the particularity required by Fed. R. Civ. P. 9(b). Federal case law makes clear that plaintiffs in federal court on diversity grounds must plead their fraud-based consumer-protection claims with particularity.  That is, "when fraud is alleged, it must be done with particularity and plead the who, what, when, where, and how of the alleged fraud."  *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.,* 631 F.3d 436, 442 (7th Cir.

- 17 -

2011) (applying Rule 9's particularity requirement to claim under Illinois Consumer Fraud and Deceptive Business Practices Act); *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 155 F. Supp. 2d 1069, 1109 (S.D. Ind. 2001) (dismissing claims under Michigan and Tennessee consumer protection statutes for failure to meet the heightened pleading requirements of Rule 9(b), including failure to allege "individual reliance").   Federal district courts around the country impose the same requirement.[15]

Here, Plaintiffs' Master Complaint makes only the most general of allegations about Cook's allegedly fraudulent conduct:

> Defendants misrepresented the alleged benefits and characteristics of Cook's IVC Filters; suppressed, omitted, concealed, and failed to disclose material information concerning known adverse effects of Cook's IVC Filters; misrepresented the quality and efficacy of Cook's IVC Filters as compared to much lower-cost alternatives; misrepresented and advertised that Cook's IVC Filters were of a particular standard, quality, or grade that they were not; misrepresented Cook's IVC Filters in such a manner that later, on disclosure of the true facts, there was a likelihood that Plaintiffs would have opted for an alternative IVC Filter or method of preventing pulmonary emboli.

Dkt. 213, ¶ 116.   These allegations contain no allegations of the who, what, or how of the alleged misrepresentations, and thus fail to meet Rule 9's particularity requirement.   None of the Plaintiffs' short-form complaints provides any additional or more specific allegations; they

---

[15]   *See, e.g., Holmes v. Behr Process Corp.*, 2015 WL 7252662, at *2 (N.D. Ala. Nov. 17, 2015); *Gibson v. Credit Suisse AG*, 2012 WL 1253007, at *2 (D. Idaho Mar. 30, 2012); *Tuttle v. Treasure Valley Marine, Inc.*, 2016 WL, 3198230, at *2 (D. Idaho June 8, 2016) ("As discussed above, allegations involving fraud, such as this [Idaho Consumer Protection Act claim], must be accompanied by the 'who, what, when, where, and how' of the misconduct charged."); *Home Owners Ins. Co. v. ADT LLC*, 109 F. Supp. 3d 1000, 1009 (E.D. Mich. 2015) ("Because Plaintiff's claim for violation of the MCPA does not meet Rule 9(b)'s heightened pleading requirements, this claim will be dismissed."); *Peacock v. AARP, Inc.*, 181 F. Supp. 3d 430, 435 (S.D. Tex. 2016) ("Claims alleging violations of the Texas Insurance Code and the DTPA and those asserting fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation are subject to the requirements of Rule 9(b)") (citing *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D.Tex.1998)); *BHR Recovery Communities, Inc. v. Top Seek, LLC*, 355 F. Supp. 3d 416, 424 (E.D. Va. 2018) ("As a claim sounding in fraud, Federal Rule of Civil Procedure 9(b) requires plaintiffs to plead VCPA claims with particularity.").

US.123867262

simply adopt the Master Complaint's vague allegations.  Because Plaintiffs have offered only vague, general allegations in support of their consumer fraud claims, those claims fail as a matter of law, and the Court should grant summary judgment in Cook's favor on these claims.  *See Holmes*, 2015 WL 7252662, at *2; *Gibson*, 2012 WL 1253007, at *2; *Tuttle*, 2016 WL, 3198230, at *2; *Home Owners Ins. Co.*, 109 F. Supp. 3d at 1009; *Peacock*, 181 F. Supp. 3d at 435; *BHR Recovery Communities, Inc.*, 355 F. Supp. 3d at 424.

    **D.**    **Plaintiffs' Derivative Claims for Loss of Consortium and Punitive Damages Fail Because They Cannot Stand on Their Own.**

Finally, Plaintiffs' claims for loss of consortium (Count VIII) and punitive damages (Count XI) fail as a matter of law because they are derivative claims that cannot stand on their own.  "[A] cause of action for loss of consortium derives its viability from the validity of the claim of the injured spouse against the wrongdoer."  *Miller v. Cent. Indiana Cmty. Found., Inc.*, 11 N.E.3d 944, 963 (Ind. Ct. App. 2014) (quoting *Bd. of Comm'rs of Cass Cnty. v. Nevitt*, 448 N.E.2d 333, 341 (Ind.Ct.App.1983)).  *See also Flying J Fish Farm v. Peoples Bank of Greensboro*, 12 So. 3d 1185, 1196 (Ala. 2008) ("A loss-of-consortium claim is derivative of the claims of the injured spouse.  Therefore, [the wife's] claim must fail if [the husband's] claims fail."); *Runcorn v. Shearer Lumber Prods., Inc.*, 690 P.2d 324, 329 (Idaho 1984) ("The claim for loss of consortium is a wholly derivative cause of action contingent upon a third party's tortious injury to a spouse."); *DeGrate v. Exec. Imprints, Inc.*, 261 S.W.3d 402, 412 (Tex. Ct. App. – Tyler Div. 2008) ("When a loss of consortium is derived from an injury to the spouse, the claim is derivative and thus, must fail if the injured spouse's claims against the defendant fails."); *Benavides v. Cty. of Wilson*, 955 F.2d 968, 975 (5th Cir. 1992) (finding that summary judgment against non-derivative claim also barred the derivative loss of consortium claim).

US.123867262

In the MDL context, the District of Minnesota dismissed loss of consortium claims as derivative when it dismissed the entire master complaint in an MDL involving a PMA device due to federal preemption:

> Claims such as loss of consortium … do not appear to fit neatly into any of the aforementioned categories.  Nevertheless, the Court agrees with Medtronic that any claims in the Complaint not addressed above are derivative of Plaintiffs' other claims and hence cannot stand.

*In re Medtronic, Inc. Sprint Fidelis Leads Prod. Liab. Litig.*, 592 F. Supp. 2d 1147, 1165 (D. Minn. 2009), *aff'd*, 623 F.3d 1200 (8th Cir. 2010).

Here, as discussed above, all of the Plaintiffs' substantive claims fail as a matter of law, and the derivative loss of consortium and punitive damages claims fail along with those substantive claims.  *See e.g., Flying J Fish Farm*, 12 So. 3d at 1196; *Runcorn*, 690 P.2d at 353; *DeGrate*, 261 S.W.3d at 412; *Benavides*, 955 F.2d at 975; *In re Sprint Fidelis Leads*, 592 F. Supp. 2d at 1165.  Accordingly, the Cook Defendants are also entitled to summary judgment on these derivative claims.

## **CONCLUSION**

For the foregoing reasons, the Cook Defendants are entitled to summary judgment on the claims brought by these 46 Plaintiffs.  The terms of dismissal should be the same as those recently used for the dismissal of Category 1 and Category 2 cases:

(1)     In the nine Successfully Removed Filter Cases, the dismissal should be with prejudice.

(2)     In the 27 Tilt Only and ten Placement-Only Cases where it appears that the filter remains placed in the Plaintiff's body, the dismissal should be with prejudice as to all claims, injuries, complications, and outcomes alleged in Plaintiffs' short-form complaints, PPS forms, and Categorization Forms to date.  With respect to re-filing in the event of a future injury, the

Court should allow re-filing only in the Southern District of Indiana within the applicable statute of limitations period.

Respectfully Submitted,

Dated:  October 1, 2019

/s/ *Andrea Roberts Pierson*
Andrea Roberts Pierson, Co-Lead Counsel
Jessica Benson Cox
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2500
Indianapolis, Indiana 46204
Telephone:     (317) 237-0300
Andrea.Pierson@FaegreBD.com
Jessica.Cox@FaegreBD.com

James Stephen Bennett, Co-Lead Counsel
FAEGRE BAKER DANIELS LLP
110 West Berry Street, Suite 2400
Fort Wayne, Indiana 46802
Telephone:     (260) 424-8000
Stephen.Bennett@FaegreBD.com

*Attorneys for the Defendants Cook Incorporated,*
*Cook Medical LLC, and William Cook Europe ApS*

- 21 -

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2019, a copy of the foregoing **COOK DEFENDANTS' MEMORANDUM IN SUPPORT OF OMNIBUS MOTION FOR SUMMARY JUDGMENT IN 46 MISCATEGORIZED NO INJURY CASES** was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.

*/s/ Andrea Roberts Pierson*

US.123867262