IN THE UNITED STATES DISTRICT COURT
SOUTHERNG DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB MDL No. 2570 |

Beverly Frost v. Cook et al; 1:17-cv-2742

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' OMNIBUS MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Plaintiff, Beverly Frost, by and through her counsel, and respectfully requests that this Court deny Cook Defendants' Motion for Summary Judgment on multiple grounds. First, Indiana choice of law rules do not apply to the Plaintiff's case, nor does the Indiana statute of limitations, but rather Michigan law applies. Second, Plaintiff's personal injury claim is not barred by the Michigan statute of limitations, nor would it be barred under the statute of limitations of Indiana. Third, there is a material dispute in this case as to when the Plaintiff's statute of limitations began to run; therefore, summary judgment is not appropriate. Forth, contrary to arguments made by the defendants, the Plaintiff's consumer fraud claims are sufficiently plead to satisfy Rule 9(b) of the Federal Rules of Civil Procedure. Lastly, Cook is attempting to use the Case Category Submission as grounds for dismissal when the agreement between the parties clearly stated otherwise. For the foregoing reasons, Plaintiff requests the Court to deny the Defendants' Motion for Summary Judgment.

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

1. The Plaintiff, Beverly Frost, was implanted with a Cook Gunther Tulip Vena Cava Filter on February 10, 2006 at Bronson Methodist Hospital in Kalamazoo, Michigan.

1

2. On May 1, 2006, she returned to the same hospital to comply with standard procedure of having the Cook Filter removed. The surgeon located the device but determined that removal of the device could cause Plaintiff harm and made the decision not to remove it. The removal was deemed "unsuccessful."

3. At this time, the Plaintiff had no reason to know she sustained any kind of injury as a result of the filter.

4. During subsequent years, the Plaintiff suffered chest pain and shortness of breath, but never attributed these symptoms as possibly being related to the filter.

5. In or about 2016, the Plaintiff began to think that the IVC filter in which she was implanted was defective and perhaps that is why it could not be removed in 2006. See Affidavit of Beverly Frost. **Exhibit A**.

6. On August 11, 2017, the Plaintiff filed her case in the Cook Medical IVC Filter MDL (MDL No. 2570) in the Southern District of Indiana.

7. On October 2, 2018, the Court entered its Categorization and Screening Order, Doc. 9322, ordering all MDL plaintiffs to categorize their cases in one of seven categories and to support those selections with specific medical records.

8. The Case Categorization Form expressly states that the "Case Category Submission is for the purpose of complying with the Court's Order on the Cook Defendant's Motion for Screening Order and Bellwether Selection Plan only and is not admissible and is not to be considered relevant for any other purpose."

9. In this Plaintiff's Case Categorization Form, she is categorized as a Category 5 case because the Plaintiff underwent a failed retrieval surgery on May 1, 2006. **Exhibit B**.

10. Cook has not taken a single deposition in this case or served any interrogatories in this case

or reviewed all of Plaintiff's medical records.

## STANDARD OF REVIEW

"[S]ummary judgment procedure is governed by federal law" and "[f]ederal law defines the standard for evaluating the sufficiency of the evidence." *Maroules v. Jumbo, Inc.*, 452 F.3d 639, 645 (7th Cir. 2006). A "court should grant summary judgment only if the pleadings, depositions, answers to interrogatories, admissions, and affidavits 'show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Miller v. A.H. Robins Co.*, 766 F.3d 1102, 1104 (7th Cir. 1985) (quoting Fed. R. Civ. P. 56). In evaluating a motion for summary judgment, the Court must view the facts and make all reasonable inferences that flow from them in a light most favorable to the non-moving party. *Zillak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003).

Whether a claim has been brought within the relevant period of limitations presents an issue of state law. See *In re Bridgestone/Firestone Inc. ATX ATXII, Wilderness Tires Prod. Liab. Litig.*, 2002 WL 31689264, at *2 (S.D. Ind. Nov. 20, 2002). "As a court sitting in diversity, we must look to state law in deciding all matters of substance, including the operation of the relevant statute of limitations." *Id.*, citing *Horbach v. Kaczmarek*, 288 F.3d 969, 976 (7th Cir. 2002).

## ARGUMENT

**I.   Indiana choice of law rules do not apply to the Plaintiff's case, nor does the Indiana Statute of Limitations, but rather Michigan law applies.**

The defense contends that Indiana choice of law rules apply to the Plaintiff's claim because Ms. Frost originally filed her claim in an Indiana court. In their memorandum in support of their motion for summary judgment, the defendants argue that "[i]n an MDL, courts apply the choice-of-law rules of the state where the case "originated."" They further assert that because this case "was originally filed in this court," this case ""originated" here in the Southern District;" therefore,

3

Indiana choice of law rules apply. The defense has, however, misinterpreted the Court's ruling in *Hayes*. *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 977 F.Supp.2d 885 (N.D. Ill. 2013).

In *Hayes*, the injured party "was an Ohio resident who died in Ohio. The fentanyl patch that allegedly caused his death was prescribed, purchased, and applied in Ohio." *Id.*, at 886. The case was filed by his estate in the Northern District of Illinois and then transferred to the MDL in the same district. The Court in *Hayes* noted that while the "usual rule" is that "a federal district court sitting in diversity applies the forum state's choice of law rules," the plaintiffs' case had "no connection with Illinois other than the fortuity that the JPML authorized an MDL proceeding to take place" there. *Id.*, at 888. "Illinois [was] essentially an artificial forum created for purposes of convenience and efficiency." *Id*. The Court held that "[g]iven these circumstances, it would not make a great deal of sense to apply Illinois law in this case, or even Illinois choice of law rules." *Id*. The Court ruled that in situations such as the *Hayes* case, to determine where a case "originated" and which state law is to be applied, one must look at "the state where the plaintiff purchased and was prescribed the subject [product]." *Id*. The Court specified that "a direct-filed case in an MDL proceeding is considered to have originated in the state where the plaintiff purchased and used the prescribed product." *Id.*, at 889. In Hayes, given that the injured party was prescribed, purchased, and applied the product in Ohio, Ohio law applied. *Id.*, at 888.

The same rule applies in the case at hand. The sole reason that Ms. Frost's case was filed in Indiana is because this is where the MDL for this litigation was established, which was done so with the "sole purpose to maximize convenience and save the parties' and judicial resources." *Id.*, at 888. Other than the fact that the MDL for Cook IVC filter litigation was placed in Indiana, the Plaintiff's case has no connection with Indiana. Just as in *Hayes*, it would not make a great deal of sense to apply Indiana law in this case, or even Indiana choice of law rules. This case "originated"

4

in the state where Ms. Frost purchased and was prescribed and implanted with the IVC filter, Michigan. Further, Michigan law applies, including Michigan's statute of limitations.

**II.     The Plaintiff's personal injury claim is not barred by the Michigan statute of limitations nor is it barred under the statute of limitations of Indiana; therefore, the Defendants' Motion for Summary Judgment should be denied.**

The Plaintiff's personal injury claim is not barred by the Michigan statute of limitations given that there was a discovery rule in place at the time of the Plaintiff's failed removal surgery; therefore, the Defendants' Motion for Summary Judgment should be denied. Michigan law provides for a three-year statute of limitations on personal injury claims. *See* Mich. Comp. Laws. Ann. § 600.5805(10) ("The period of limitations is 3 years after the time of the death or injury for all actions to recover damages for the death of a person, or for injury to a person or property."). Until the decision of *Trentadue v. Buckler Lawn Sprinkler Co.* in July of 2007, Michigan long upheld the common law discovery rule that allowed for extra-statutory tolling of limitations. *See Trentadue v. Buckler Lawn Sprinkler Co.*, 479 Mich. 378, 391 (2007) (ruling during a wrongful death case that "[c]ourts may not employ an extra-statutory discovery rule to toll accrual."). *Trentadue* sought to overrule all prior precedent, and despite strong dissenting opinion, attempted to retroactively and ubiquitously apply its decision to all personal injury cases. See *In re Avandia Mkt., Sales Prac. and Prod. Liab. Litig.*, MDL No. 1871, 2014 WL 2011239, at *6 (E.D. Pa. May 16, 2014) (calling into doubt the validity of retroactive application of *Trentadue's* no tolling decision, particularly for medical malpractice and products liability cases). The court justified its opinion to retroactively apply *Trentadue* in assuming that "by its nature, the discovery rule does not create expectation or reliance interests." *Peter v. Stryker Orthopaedics, Inc.*, 581 F.Supp.2d 813, 817 (N.D. Ind. 2008) (quoting *Trentadue*, 479 Mich at 393). However, a "plaintiff does not decide to postpone asserting a claim because he relies on the availability of extrastatutory

5

discovery-based tolling. To the contrary, discovery-based tolling is a retroactive mechanism for relief to be used only when a plaintiff could not anticipate his claims." Id.

*Trentadue,* as a wrongful death action, distinguishes itself from the Plaintiff's product liability case. At the time of the victim's death in 1986, the Plaintiff in *Trentadue* did not have enough evidence to bring her claim. In 2002, she discovered new evidence that would give her sufficient grounds to finally file her claim. She relied on the discovery rule to admit the claim, arguing that the statutory limitation clock should start to tick not from the time of the victim's death, but from the moment she discovered enough evidence to file a claim. This was an incorrect application of the discovery rule, because the "injury" was not discovered at a later date. The injury, namely the victim's death, was obvious and known to the Plaintiff from the moment it occurred sixteen years prior. Accordingly, the Michigan court properly ruled that the discovery rule could not be used to toll the statute of limitations for the sake of discovering enough evidence to go to trial. However, the court was mistaken in using this one case to justify retroactively removing the discovery rule from all personal injury cases.

Wrongful death claims are inherently different to products liability and medical malpractice claims, because in wrongful death, the injury of death is always obvious and apparent. Meanwhile, defects in products and internal maladies can often go hidden and undetected for years before they are discovered. *See Max v. Gross*, 906 F.Supp.2d 802, 810 (N.D. Ind. 2012) (citing *TRW, Inc. v. Andrews*, 534, U.S. 19, 20 (2001) ("[S]ome types of injuries—fraud, concealment, latent disease, and medical malpractice—simply "cry out" for the application of the discovery rule."). Therefore, a retroactive application of *Trentadue* ignores Plaintiffs, such as the Plaintiff in the case at hand, who suffer from discreet injuries that may not present symptoms until years later.

In this case, the Plaintiff, Ms. Frost, had a Cook Gunther Tulip Vena Cava Filter implanted

6

on February 10, 2006 at Bronson Methodist Hospital in Kalamazoo, Michigan. On May 1, 2006, she returned to the same hospital to comply with standard procedure of having the Cook filter removed. The surgeon of this procedure located the device and found that it was still adhered to the vena cava. The Cook filter had grown into and fused with her artery. Using his medical discretion, the surgeon determined that a further attempt to remove the device could cause Plaintiff grave harm. The removal surgery was deemed "unsuccessful" and the surgeon was forced to close up his patient, Plaintiff, with the Cook filter still inside her.

Plaintiff's May 2006 surgery occurred prior to the *Trentadue* decision. At this time, the discovery rule was still applicable in Michigan. The Plaintiff's surgeon used his expert discretion in deciding to leave the Cook filter inside the Plaintiff's artery. The Plaintiff should have been able to rely on current Michigan law at the time: that if future complications ever arose from the leftover Cook filter, she would be able to bring a claim upon their discovery under the discovery rule. In future years, the Plaintiff would go on to experience symptoms such as chest pains and shortness of breath. Further, she did not realize until approximately 2016 that she actually sustained an injury by the very fact that the filter could not be removed. The Plaintiff, as an average lay citizen, could not have reasonably been expected to anticipate or be up-to-date on the change to Michigan legislation when *Trentadue* was decided in 2007. *Trentadue*, in seeking retroactive application, effectively curtailed or eliminated valid claims like Plaintiff's that would arise in the future by setting the start timer for their limitations to an earlier and unknown time of injury.

Thus, Cases such as *Peter v. Stryker* challenge the validity of *Trentadue*, by arguing that, if a Plaintiff suffered an injury prior to 2007 and could not have known prior to 2007 that the Michigan Supreme Court would later reject use of the discovery rule, it would be unfair to apply *Trentadue* to the Plaintiff's claim. *Peter*, at 818. *Peter* goes on further to say that, "[i]n addressing

7

whether its decision violated due process, the *Trentadue* Court suggested that rejection of the discovery rule would constitute a violation if it extinguished existing causes of action." *Id.* (citing *Trentadue,* 479 Mich. at 402-03). In light of the above, Michigan's discovery rule in effect in 2006 was not retroactively abolished, and the Plaintiff's claim was tolled until she discovered that she suffered an injury or impingement caused by the Cook filter.

Alternatively, if this Court should determine that Indiana law does apply, rather than Michigan law, the Plaintiff's case is also not barred under the statute of limitations of Indiana. The defense argues in its motion that Indiana choice-of-law rules apply because, in an MDL, courts apply the choice-of-law rules of the state where the case "originated."  the case was originally filed in Indiana. Indiana imposes a two-year statute of limitations on product liability claims. Indiana Code specifies that "a product liability action must be commenced…within two (2) years after the cause of action accrues." *See* Ind. Code § 34-20-3-1. Further, to determine the accrual date, Indiana courts have adopted a discovery rule holding that the statute of limitations "begins to run from the date that the plaintiff knew of should have discovered that she suffered an injury or impingement, and that it was caused by the product or act of another." *Degussa Corp. v. Mullens*, 744 N.E.2d 407, 410 (Ind. 2001). To determine when the plaintiff should have discovered that she suffered an injury, Indiana courts look at "whether a reasonable person in the [plaintiff's] position…possessing the information [plaintiff] did…could have discovered through the exercise of ordinary diligence that the product [caused her harm]." Horn v. A.O. Smith Corp., 50 F.3d 1365, 1370 (7th Cir. 1995) (applying Indiana law). As the defense points out, over the years the Indiana statute of limitations has been interpreted so that the accrual date is analyzed from an objective perspective, and that diagnosis of a complication or injury by a physician or the discovery of an injury on medical imaging are events that objectively trigger the statute of limitations.

In this case, the Plaintiff was informed that the filter was not able to be removed, but she was never specifically diagnosed with a particular complication or injury at the time. The cases relied upon by the defense in support of their argument that a cause of action accrued because the Plaintiff knew or should have known that she suffered an injury are not analogous to the case at hand. In *Cossman*, the Court held that the Plaintiff's cause of action accrued when she learned that the Mirena perforated her uterus and would have to be removed. *Cossman v. DaimlerChrysler Corp.*, 108 Cal. App. 4th 370, 380 (2003). In the *Wojak* case, the Court held that the product liability claim with respect to a broken implantable catheter accrued when the device was removed. *Wojak v. Almase*, 451 N.E.2d 336, 342 (Ind. Ct. App. 1983). Further, the cases addressed in the Bard filter MDL and cited by the defense here have distinctions from the present case. The Bard Filter MDL court granted summary judgment in a bellwether case that involved a tilt, perforation, and an unsuccessful retrieval attempted. In Ms. Frost's case, however, she was never diagnosed with any tilt or perforation to give her reason to suspect at the time of her unsuccessful retrieval that she sustained an injury.

Moreover, the defense has identified "objective markers" for determining the timeliness of filter claims. "Filter complications and alleged injuries such as perforation, migration, occlusion, fracture, and occurrence of post-placement DVT/PE are not necessarily observable with the naked eye, but they are diagnosable by medical imaging and/or physician examination." None of these "objective markers" are present in Ms. Frost's case. As such, the defense has failed to present sufficient evidence to show that Ms. Frost knew or had reason to know that she sustained an injury to trigger the accrual of her claim. Therefore, in accordance with the *Peter* case and Michigan law prior to the *Trentadue*, the discovery rule applies here tolling the Plaintiff's statute of limitations until approximately 2016 when she began to think she may have been injured as a result of the

filter.

**III.     There is a material dispute in this case as to when the Plaintiff's Statute of Limitations began to run; therefore, summary judgment is not appropriate.**

Regardless of whether Indiana or Michigan law governs this Plaintiff's claim, there is a material dispute here as to *when* the Plaintiff's statute of limitations began to run; therefore, summary judgment is not appropriate and this Court should dismiss the defendants' motion. Traditionally, "the determination of when the statute of limitations begins to run 'is ordinarily a question of fact for the jury.'" *Johnstone v. Wabick*, 207 F. Supp. 2d 824, 827 (N.D. Ill. 2002) (citing *Witherell v. Weimer*, 421 N.E.2d 869, 874 (Ill. 1981)). *See also H. Hirschfield Sons, Co. v. Colt Industries Operating Corp.*, 107 Mich. App. 720, 725 (1981) (finding that discrepancies on which authority should control the accrual of statute of limitations is a question of law.) Consequently, if Michigan law applies, a fact-finding jury must determine whether *Trentadue* retroactively caused Plaintiff's claim to start accruing at the time of an unknown injury or whether Plaintiff's claim was tolled under Michigan's pre-*Trentadue* discovery rule. In the alternate, if Indiana law applies, the finder of fact must determine whether the Plaintiff had sufficient knowledge to trigger the accrual of her claim prior to 2016. Because this issue remains a genuine dispute of material fact, summary judgment would be improper. Therefore, the Court should deny the defendants' motion.

**IV.     Plaintiff's Consumer Fraud Claims are Sufficiently Plead to Satisfy the Particularity Required by Federal Rule of Civil Procedure 9(b).**

Contrary to arguments made by the defendants, the Plaintiff has sufficiently plead her claim with the particularity required under FRCP9(b). FRCP 9(b) states that, "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." In the Seventh Circuit, this particularity has been defined as the "who, what, when, where, and how

10

of the alleged fraud." *Uni\*Quality, Inc. v. Infotronx, Inc.,* 974 F.2d 918, 923 (7th Cir. 1992). "There are no cases applying the Seventh Circuit's interpretation of Rule 9(b) to the […] MCPA [Michigan Consumer Protection Act]. *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 155 F. Supp. 2d 1069, 1109 (S.D. Ind. 2001).

Cook contends that the Master Complaint contains, "no allegations of the who, what, or how of the alleged misrepresentations." Given that Master Complaint contains five pages documenting every instance of fraud state by state, the "where" is not in dispute. Similarly, knowing the relevant time frame of the suit, Cook does not contest the particularity of "when" the fraud occurred.

As to "who" committed consumer fraud, the defendants are clearly named in Paragraph 113 of the Master Complaint. Master Consolidated Compl. 26. To spare the Court redundancy, the Cook Defendants are not relisted under Count VII with the same multi-page meticulousness as at the start of the Master Complaint. Nevertheless, Cook Defendants promulgated the faulty product, and they have been so named.

As for "what" is being alleged, Paragraph 114 and 115 cite, "unfair, unconscionable, deceptive, fraudulent and misleading acts or practices in violation of all states' consumer protection laws." *Id*. The intention of the Master Complaint is to expedite court proceedings by consolidating the individual experiences of all the Plaintiffs of the MDL into a comprehensive yet succinct complaint. If Plaintiffs submitted individual accounts of every fraudulent interaction with more particularity than given above, the Court would have to wade through thousands of pages of filings. Similarly, if the Master Complaint were to include instances of more precise particularity, the Complaint would no longer serve to represent the masses, but only the particular circumstances of a select few.

11

Finally, Cook's argument against particularity pleadings reflects the same struggle the Seventh Circuit has had in applying and defining the meaning of "particularity." It seems that particularity is governed less by a hardline test and more by "you know it when you see it." The Master Complaint clearly states "how" Cook allegedly defrauded Plaintiffs. It states that Cook engaged in "false, untrue and misleading promotion […that…] induced Plaintiffs to purchase […] Cook's IVC Filters" and "misrepresented the alleged benefits and characteristics of Cook's IVC Filters." Master Consolidated Compl. 26. The Master Complaint details how Cook specifically "misrepresented the quality and efficacy of Cook's IVC Filters as compared to much lower-cost alternatives" and how they "advertised that Cook's IVC Filters were of a particular standard, quality, or grade that they were not." Master Consolidated Compl. 26. Additionally, it makes a note of the fact that such information was so misrepresented that on disclosure of the truth, Plaintiffs would have likely opted for an alternative filter. The FRCP 9(b) simply asks for particularity, the Seventh Circuit merely asks for a description of "how" Cook allegedly committed consumer fraud. With no case law demonstrating the Seventh Circuit's definition of "how," the Plaintiff maintains that the Master Complaint's aforementioned reply sufficiently answers that question.

Additionally, Cook lumps together case law for Idaho, Michigan, Texas, and Virginia even when each states' authority's attention to defining FRCP 9(b) differs. This Plaintiff is only concerned with the governing law of Michigan, but Cook only cites one Michigan case in favor of leaning heavily on Idaho and Texas law to support their argument. Cook's citations lack any definitive rule because they all amount to the same two conclusions: (1) that if Plaintiff does not sufficiently plead particularity, their claim will not meet the FRCP 9(b) requirements and (2) the courts have yet to establish a clear rule on what that particularity *is*.

Cook also singles out Michigan as a state that has rejected claims for the failure to state "individual reliance." However, the case they cite as authority allowed for Plaintiffs of the MDL to submit amendments to supplement the Master Complaint with their individual experiences. Furthermore, individual reliance is not an issue that can be determined by law, but rather by fact-finders. *See Freeman v. Massachusetts Mut. Life Ins. Co.*, 27 Mich. App. 572, 580 (1970) (finding that the degree to which Plaintiff relied on specific statements by Defendant is a question of fact for the jury). The extent to which Plaintiff personally relied on consumer protection claims cannot be known from an improperly used Case Categorization Form and a Master Complaint meant to encompass the experience of thousands of individuals. Consequently, this issue cannot be judged summarily.

In conclusion, Cook may argue ambiguity in the Master Complaint, but it is difficult not to be ambiguous, when the relevant courts in question have given equally vague guidance on how particularity should be plead. Further, Cook is simply incorrect in suggesting that there are "*no* allegations of the who, what, or how." Plaintiff has sufficiently plead all elements of particularity in agreement with FRCP 9(b) and therefore the Court should not dismiss Plaintiffs' claims of consumer fraud and unfair and deceptive trade practices.

V.  **The Court Should Deny Cook's Omnibus Motion for Summary Judgment Because Its Claims Rely Wholly and Erroneously on Limited Purpose Case Categorization Forms.**

Cook's Omnibus Motion for Summary Judgment exceeds the scope of intended purposes envisioned for the Plaintiffs' Case Categorization Forms ("CCFs"). When Cook requested an order requiring CCFs, it did so with the express intent of "properly categoriz[ing] cases and draw[ing] bellwether cases from those categories." Filing No. 8913, ECF No. 55986. These CCFs expressly reflected this limited purpose by stating that Plaintiff submissions are, "for the purpose of

complying with the Court's Order on the Cook Defendant's Motion for Screening Order and Bellwether Selection Plan *only.*" *E.g.,* Filing No. 9638-1, ECF No. 64997-64998 (emphasis added). Furthermore, they asserted that Plaintiff submissions are "not admissible and [are] not to be considered relevant for any other purpose." Id.

Though Cook touted these limitations in many prior submissions to the Court, Cook chose to omit all such language in its Motion and Brief. Considering that the bellwether selections are now all but complete, the Case Categorization Forms have fulfilled their limited purpose. Any further attempt on Cook's part to now extend that purpose would be improper. Nevertheless, Cook submits a Motion that relies *solely* on these CCFs to request a strike on 149 claims. *See, e.g.,* Filing No. 11503, ECF No. 85145-85149. Even despite the fact that the Court has already ordered that Cook's supporting evidence is inadmissible and irrelevant. *See* Filing No. 9638-1, ECF No. 64997-64998 (quoted *supra* at ¶ 2). If the evidence would not be admissible at trial, it cannot stand as support, especially as *sole* support, for Summary Judgment. *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016).

Finally, by submitting an Omnibus Motion for Summary Judgment, Cook is hardly achieving its purported goal of lifting the burden of the courts. In seeking to wipe out 149 claims, Cook has only served to add 149 Responses in Opposition to the docket. Therefore, before concerning itself with claims of timeliness, the Court should simply DENY Cook's Motion for inadmissibly using the CCFs as sole support.

**VI.    The Plaintiff's Punitive Damages Should Not Be Dismissed Because Plaintiff's Claim Stands on Its Own.**

While the Plaintiff acknowledges that claims for loss and consortium and punitive damages are derivative, this Opposition to the Defendants' motion for summary judgment demonstrates why her claims remain valid. Plaintiff is making no claim for the loss of consortium. However,

Plaintiff argues that so long as she maintains a genuine claim, her rights to punitive damages should not be dismissed.

**VII.  If Summary Judgment is Granted with Unqualified Prejudice, then Plaintiff Will Be Denied Her Right to a Potential Future Claim in Her Home State of Michigan.**

As it reads, the defendants' Motion for Summary Judgment could bar Plaintiff from ever taking up a future suit in her home state. Cook requests that their Omnibus Motion for Summary Judgment be decided "*with prejudice* as to all claims, injuries, complications, and outcomes alleged in Plaintiff's short-form complains, PPS forms, and Categorization Forms to date" and that "the Court should allow re-filing *only* in the Southern District of Indiana within the applicable statute of limitations period." (emphasis added). Id. 25.

Plaintiff has not had her Cook Filter removed, primarily because it has lodged itself into her artery in such a way that removal could cause egregious damage to her health. She has had to accept that she will likely have to live with the pain and discomfort from this device for the rest of her life. Should her condition worsen, or new injuries arise, Cook would have Plaintiff travel to the Southern District of Indiana to have her case heard. Such travel would be an undue burden on anyone, but particularly for Plaintiff who would likely be suffering debilitating health conditions.

It is unreasonable to prevent Plaintiff from being able to bring a valid claim in her state or residence, where the device was implanted, where she suffered her initial injuries, and where she would likely continue to suffer any future injuries. Likewise, Michigan courts have a greater interest in protecting their own residents from medical malpractice and consumer fraud than does the state of Indiana. For this reason, the Court should not permit Cook's Omnibus Motion of Summary Judgment so long as it contains such constraining language.

## CONCLUSION

For the forgoing reasons, the Plaintiff respectfully requests that this Court deny Cook's Motion for Summary Judgment and grant the Plaintiff any relief that this Court deems appropriate.

| | |
|---|---|
| October 3, 2019 | /s/ Julie E. Lamkin<br>Julie E. Lamkin, MA BBO# 680482<br>Law Offices of Jeffrey S. Glassman<br>One International Place, Suite 1810<br>Boston, MA 02110<br>Phone:  (617) 367-2900<br>Fax:  (617) 722-9999<br>jlamkin@jeffreysglassman.com<br>Attorney for Plaintiff |

**CERTIFICATE OF SERVICE**

    I hereby certify that on October 3, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to the CM/ECF participants registered to receive service in this MDL.

/s/ Julie E. Lamkin
Julie E. Lamkin