# EXHIBIT B

PLAINTIFF'S EXHIBIT
PX-1099

**To:** lavender@cook-inc.com[lavender@cook-inc.com]; tbrine@cook-inc.com[tbrine@cook-inc.com]; Jacob Lund Clausen[j.clausen@cook-wce.com]; Jesper Thyregod[j.thyregod@cook-wce.com]; Per Hendriksen[p.hendriksen@cook-wce.com]; Tina Hybertz Andersen[T.Andersen2@cook-wce.com]; Voorhees@medinst.com[Voorhees@medinst.com]
**Cc:** Rikke A. Sørensen[r.soerensen@cook-wce.com]
**From:** Line Hedegaard Larsen
**Sent:** Thur 2/9/2006 9:20:11 AM
**Importance:** Normal
**Subject:** Executive Summary Celect Filter
**Received:** Thur 2/9/2006 9:20:11 AM

Executive-Summary-Celect 510k-060209.doc

Dear All,

As agreed on the videoconference on January 23, please find the enclosed executive summary of the safety concerns with the Celect Filter.

Looking forward to discuss the issues with you again on Monday February 13.

Best Regards,

Line

_____

Line Hedegaard Larsen, MSc. Pharm
Clinical Research Department
William Cook Europe Aps
Sandet 6
Dk-4632 Bjæverskov
Denmark
Direct phone +45 56 86 88 33
Email: l.larsen@cook-wce.com


Confidentiality Notice: This e-mail and any attachments are private and confidential and are the property of the sender. The information contained herein is privileged and is intended only for the use of the named addressee(s).  If you are not the intended addressee, be advised that any unauthorized disclosure, copying, distribution or action in reliance on this material is strictly prohibited. If you have received this email in error, please notify us immediately by return email.

Company Confidential Attorneys' Eyes Only                    CookMDL2570_0455053

Document Produced Natively

Company Confidential Attorneys' Eyes Only	CookMDL2570_0455054

## Executive Summary: Cook Celect Filter

*Introduction:*

A thorough literature review and a risk analysis of the design of the Cook Celect Filter have been prepared by WCE. The risk analysis and the clinical evaluation have identified some safety concerns associated with the new design of the Filter.

In the Celect Filter, the elongated secondary wire loop "the tulip petals" that surrounds the primary legs of the Tulip Filter has been removed. One of the primary complications associated with the existing Tulip Filter is in-growth of the "tulip petals", the in-growth of the "tulip petals" makes it difficult to retrieve the Tulip Filter after implantation. By removing the "tulip petals" in the Celect Filter, the risk of in-growth will be reduced and would thus improve the likelihood of better retrievability of the Celect Filter. Because the "tulip petals" have been removed from the design of the Celect Filter, the long-term migration history of the Tulip Filter does not reflect the long-term migration of the Celect Filter and can, therefore, not be transferred because the primary endpoint of in-growth for the Celect Filter has been changed compared to that of the Tulip. Due to removal of the loops, the Celect Filter may increase the risk of migration during use compared to the Tulip.

When this project was initiated, the question was raised, which commercially available filter would be most appropriate to use for comparison. The similarity of the Celect and the Recovery resulted in references to the Recovery as well as the Tulip. One of the major complications seen with the Recovery Filter is migration. Because the Celect Filter and the Recovery Filter have similarities in their designs, the migration experienced with the Recovery must be taken into consideration when considering safety concerns for the Celect Filter.

A suitable animal or *in-vitro* model to verify this has been discussed for the last 3 years here at WCE, and no solution has been found yet.

*Conclusion from Clinical Evaluation and Comments from Competent Authorities:*

The clinical evaluation of the Celect Filter concluded that a clinical investigation is considered necessary to demonstrate safety and performance in humans in conformity with the requirements of the characteristics and performance referred to in sections 1 and 3 of the MDD 93/42/EEC. The post-meeting letter received from Lloyds (December 20, 2004) also supports the conclusion made in the clinical evaluation. The following was mentioned in the letter from Lloyds,

"Without further detailed analysis, it was my conclusion that the new filter would be unlikely to fulfil the conformity assessment requirements unless some supportive human clinical data is established"

*Clinical Investigation and Justification for 6 Months' Follow-up*

Looking at the literature covering implantation of stents, the estimated time to reach complete embedding in the vessel wall is approximately 3 months. (Phillips-Huges et al (1996); JVIR; 7:321-333). Although a stent is not directly comparable to a filter, we have evaluated that the data is relevant for a filter as well due to the fact that the vessel reaction to an implant is expected to be comparable whether the implant is a stent or a filter.

February 9, 2006                                                                 Page 1 of 4

To account for 3 months' implantation and to ensure a safety margin, we feel that 6 months' follow-up is justified. The 6 months' follow-up is also an accepted follow-up period for permanent implants in general.

Furthermore, we expect to be needing data on retrievals for up to 6-12 months to be able to support our retrieval claim:

Comments received from the MHRA when obtaining the approval for the clinical study was the following, "we are concerned that the manufacturer is planning to make claims of retrieval at any time based only on 6 months' follow-up data. The Competent Authority is of the opinion that further long-term data will be required to support this claim by means of an adequate post-market study."

*Zaragoza Animal Study*

Despite the conclusion of the clinical evaluation, a lot of work has been put into obtaining a pre-clinical model that would be able to clarify the identified safety issues. The Zaragoza animal study was worked out to investigate whether it could be verified that the force needed to pull out the Celect and the Tulip was comparable based on the theory that only the primary legs are required to prevent the Filter from migrating.

| Subject | Animal ID: | Force 240 gf and 1 min. | Force 380 gf and 1 min. | Max force at disintegration [gf] | Note |
|---|---|---|---|---|---|
| Tulip 1 | 1592 | OK | NA[1] | 510 | 1) Legs fell out during adjustment.<br>- Legs outside the wall |
| Tulip 2 | 1597 | NA[2] | NA | 260 | 2) Legs fell out during adjustment.<br>- Filter deformed at the beginning<br>- Partially opened in the neointima around the free legs<br>- Neointimal hyperplasia nearly occluded the vena cava lumen. |
| Tulip 3 | 0951 | NA | NA | NA | - Handling error during set-up of test<br>- Circumferential stenosis |
| Tulip 4 | 0984 | OK | OK | 550 | - A small clot of thrombus in the top of the filter |
| Tulip 5 | 8889 | OK | OK | 1000 | - Tilted more than 20 degrees<br>- A small clot at the top of the filter<br>- Global vena cava stenosis<br>- Important fibrosis around the hook. The hook was outside the wall. |
| Tulip 6 | 8581 | OK | OK | 1340 | - Tilted 0-10 degrees |

| Subject | Animal ID: | Force 240 gf and 1 min. | Force 380 gf and 1 min. | Disintegration [gf] | |
|---|---|---|---|---|---|
| Celect 1 | 1592 | NA | NA | NA | - Handling error during set-up of test<br>- Tilted 0-10 degrees<br>- Legs outside the wall |
| Celect 2 | 1597 | NA | NA | NA | - Handling error during set-up of test<br>- Legs outside the wall<br>- Remodeling of the initial position |
| Celect 3 | 0951 | OK | OK[3] | 730 | 3) 360 gf in 1 min. |

February 9, 2006                                    Page 2 of 4

| | | | | | |
|---|---|---|---|---|---|
| | | | | | - All legs outside the wall |
| Celect 4 | 0984 | OK | NA[4)] | 730 | 4) Leg fell out during adjustment.<br>- Tilted 10-20 degrees<br>- One leg was rotated<br>- Filter had been repositioned |
| Celect 5 | 8889 | OK | OK | 960 | - Global vena cava stenosis<br>- Legs outside the wall |
| Celect 6 | 8581 | OK | OK | 1130 | - Tilted 0-10 degrees<br>- One leg was bent (wrong procedure) |

**Tulip**

4 measurements at 240 g, 3 at 380 g and a max. force between 260-1340 g

**Celect**

4 measurements of 240 g, 3 at 380 g and a max force between 730-1130 g

Of the four valid measurements of the Celect, one was of a filter that had been repositioned during the 30 days of implantation and, therefore, this value is not comparable to the other numbers.

The value for the legs being pulled out during handling is not usable as the unknown factors interfering during handling are too many for the data to be used. As more legs were pulled out of the Tulip early during handling rather than of the Celect, the average max. force for the two filters does not provide us with a value that we can use for any conclusions. The data does not indicate that the filters are different, and they do not indicate that they are comparable either due to the low sample size.

The value stating the correct acceptance criteria for the gram quantity has not been determined. The use of 240 g has not been validated.

The use of a pull force test to clarify the risk of migration of a Vena Cava Filter is questionable due to the complex physiological and anatomical nature of the vena cava. We have not been able to obtain sufficient data to support the applicability to clarify migration of this model.

Therefore, the result of this test is not considered to provide any new knowledge when compared to the conclusions of the clinical evaluation.

*Other Relevant Input from Competent Authorities and Notified Bodies*

Recently, the WCE Clinical Research Department attended a one-day course about clinical evidence. The speakers at the course were all representatives of the various Notified Bodies and Competent Authorities, and one of the take-home messages from the course was that one of the ten biggest mistakes made by the companies when performing a clinical investigation is the following:

The company agrees with the competent authorities to include a certain number of patients and to follow the included patients for a certain number of weeks. Then after initiation of the study, the company wants to CE mark after including fewer patients than originally agreed upon with the competent authorities, and the patients are not being followed for the certain number of weeks as originally agreed upon with the competent authorities. If this is not clearly defined in the protocol, this would be considered a major protocol deviation and is thus not recommended by the competent authorities.

*Conclusion*

The risk analysis and the clinical evaluation have identified some safety concerns associated with the new design of the filter. The literature has been reviewed extensively, and discussions have been going on for the past 3 years. However, to date it has not been possible to find any clear evidence of the existing available data that could clarify and justify the safety risks identified. If you can provide some new evidence or inputs which can clarify these safety concerns, we would be happy to take these inputs into considerations.


Rikke A. Sørensen & Line Hedegaard Larsen
Clinical Research Department, WCE