**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

_____

IN RE COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

_____

**This document relates to:**

**Janice Ball v. Cook Incorporated, et al.
Case No. 1:17-cv-01320**

_____

**PLAINTIFF JANICE BALL'S RESPONSE TO COOK DEFENDANTS'
RENEWED OMNIBUS MOTION FOR SUMMARY JUDGMENT
<u>BASED ON APPLICABLE STATUTE OF LIMITATIONS FROM FIVE STATES</u>**

COMES NOW Plaintiff Janice Ball, by and through her undersigned counsel, and offers this Response to the Defendants' Renewed Omnibus Motion for Summary Judgment Based On Applicable Statute Of Limitations From Five States (Doc. 11725) and the Memorandum In Support of that motion (Doc. 11726):

<u>**INTRODUCTION**</u>

Defendants filed this motion for summary judgment to dispose of 144 cases pending in this MDL—one of which is Plaintiff Janice Ball's case—alleging that these cases were filed outside of the statute of limitations. Defendants' only evidence to support this motion consists of a chart, listing the dates of Ms. Ball's attempted and successful removal of her IVC filter.

Defendants' evidence in support of summary judgment is not admissible. Defendants' chart consists of information taken from this Court's Categorization Form, (*See* Doc. 9638-1), a form that the parties stipulated would not be admissible for any purpose other than categorization of the cases in this MDL. Furthermore, Defendants do not provide sufficient foundation to authenticate

the chart. The only "foundation" provided for the chart is a statement in Defendants' memorandum that explains how it was compiled. But statements of counsel do not constitute evidence. This falls far short of the foundation necessary to admit a summary to prove the contents of the summary. Defendants also attempt to submit terms and conditions that allegedly accompanied these IVC filters when they were sold to demonstrate a contractual limitation of the statute of limitations. Defendants failed to properly authenticate these terms and conditions. Because Defendants' motion is supported by inadmissible evidence, it must be denied.

Defendants argue that Ms. Ball's complaint is untimely under Indiana law. Under Indiana law, the statute of limitations would not begin running until Ms. Ball discovered that her injuries were caused by the tortious activity of the Defendants—here, the defective design and manufacture of Defendants' IVC filter. Defendants' chart contains only the dates of Ms. Ball's removal procedures—it contains absolutely no information regarding when Ms. Ball discovered that her difficult removal procedures, and other injuries, were caused by the IVC filter's design and manufacture. Defendants improperly conflate the timing of Ms. Ball's injuries with when she discovered their cause. Having failed to present any facts regarding when Ms. Ball discovered the cause of her injuries, there remains a genuine dispute of fact as to when the applicable statute of limitations would have expired. Summary judgment must be denied.

Ms. Ball's complaint is timely under Michigan law as well. Under Michigan law, the statute of limitations generally begins running at the time of the injury. However, Michigan law allows for its statute of limitations to be extended if a defendant fraudulently conceals the existence of a claim or a person's liability for it. The Defendants have admitted to the existence of certain articles that link Defendants' IVC filters to an array of injuries. Defendants also knew that these IVC filters could perforate patients' veins and were aware of other serious safety concerns. Defendants

2

actively concealed this information from the public and the FDA. A jury could conclude that this evidence put Defendants on notice of their liability for these injuries and that Defendants fraudulently concealed their liability for Ms. Ball's injuries by remaining silent on the issue. Defendants present no evidence indicating that this fact is beyond dispute. Having failed to demonstrate that they are entitled to judgment as a matter of law, Defendants' motion must be denied.

Defendants also argue that some of Ms. Ball's "non-tort" claims are inadequately pled. As described below, the Master Complaint contains over 200 paragraphs of allegations, across 39 pages. Such an exhaustive document almost certainly contains sufficient factual allegations.

Defendants further allege that Ms. Ball's implied warranty claims are barred by the statute of limitations. Whether this issue is analyzed under either Indiana or Michigan law, Ms. Ball's action is timely.

## PLAINTIFF JANICE BALL'S RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Undisputed.

2. Undisputed.

3. Undisputed.

4. Disputed:

   a. Plaintiff Janice Ball disputes footnote 8 of this paragraph, stating that this Court's order denying the PSC's motion to strike the use of the categorization form represents a holding that such evidence is proper in summary judgment. It appears that the Court denied the PSC's motion to strike on purely procedural grounds. This Court's local rules state that "[t]he court disfavors collateral motions—such as motions to strike— in the summary judgment process. Any

dispute over the admissibility or effect of evidence must be raised through an objection within a party's brief." S.D. Ind. L.R. 56-1(i). That being the case, this is a live controversy between the parties.

b. To the extent that Defendant's evidence depends on the Case Categorization Form, it is inadmissible. The Case Categorization form states:

> This Case Category Submission is for the purpose of complying with the Court's Order on the Cook Defendant's Motion for Screening Order and Bellwether Selection Plan only and **is not admissible and is not to be considered relevant for any other purpose.**

(Doc. 9638-1, pp. 1-2, ¶ 4) (emphasis added). This stipulation controls in summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(A).

c. Defendants have provided an insufficient foundation for their chart that allegedly summarizes the relevant injury evidence. The only foundation provided is this statement, provided in Defendants' brief: "the Cook Defendants have reviewed Plaintiffs' short-form complaints, Categorization Forms, and supporting medical records, and summarized the relevant information from those materials in Exhibit A." (Doc. 11726, p. 6, ¶ 5). This is not contained in an affidavit, declaration, or other sworn statement—this appears to be nothing more than a statement of Defendants' counsel. But statements of counsel are not evidence. *See Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). Having failed to provide a sufficient foundation for Exhibit A, it cannot be considered in summary judgment.

d. The remainder of this paragraph cites to the docket, which speaks for itself, and is not in genuine dispute.

5. Disputed:

    a.  Ms. Ball incorporates her response to Paragraph 4, above.

6. Disputed:

    a.  Ms. Ball incorporates her response to Paragraph 4, above.

7. As relevant to Ms. Ball, undisputed.

8. Disputed. This paragraph is not relevant to Ms. Ball.

9. Disputed.

    a.  Ms. Ball incorporates her response to Paragraph 4, above.

10. Disputed. This paragraph is not relevant to Ms. Ball.

11. Disputed.

    a.  The affidavit cited does not confirm that these terms and conditions relate to the IVC filter that was implanted into Janice Ball or are otherwise enforceable against her. As such, the terms and conditions cited have not been properly authenticated. *See* F.R.E. 901(a). The affidavit cited also cannot serve as a business records affidavit because it fails to satisfy the requirements of F.R.E. 803(6) and 902(11).

    b.  Ms. Ball's implied-warranty claims are not governed by the Uniform Commercial Code. As such these terms and conditions are not effective to limit any applicable statute of limitations. (*See* Section IV.B of the Argument, *infra*).

12. Disputed

    a.  Ms. Ball incorporates her response to Paragraphs 4 and 11, above.

## **STATEMENT OF MATERIAL FACTS IN DISPUTE**

1.     Plaintiff Janice Ball incorporates herein by reference the factual disputes referenced above.

2.     The Case Categorization form, referenced above, states:

This Case Category Submission is for the purpose of complying with the Court's Order on the Cook Defendant's Motion for Screening Order and Bellwether Selection Plan only and **is not admissible and is not to be considered relevant for any other purpose.**

(Doc. 9638-1, pp. 1-2, ¶ 4) (emphasis added).

3.     Janice Ball's Cook IVC filter was designed to be implanted temporarily and to be removed. (**Master Complaint, ¶ 35, Doc. 21; admitted in Amended Answer, ¶ 35, Doc. 8180; Declaration of Plaintiff Janice Ball, Exhibit 1 at ¶ 3**).

4.     The plan of care for Janice Ball was to have her IVC filter removed within six months of it being implanted. (**Exhibit 1 at ¶ 3).**

5.     Janice Ball did not suspect that her injuries and corrective procedures were caused by the Cook IVC filter's design or manufacture until she saw legal advertisements on television for litigation related to Cook's IVC filters. This would have occurred sometime between January 1, 2016 and mid-April of 2016. (**Exhibit 1 at ¶¶ 5-9**).

6.     After learning of the possible connection between her injuries and the Cook IVC filter, Ms. Ball promptly consulted with her counsel in April of 2016. (**Exhibit 1 at ¶¶ 5-9**).

7.     Plaintiff Janice Ball is not a medical or engineering expert. She has no knowledge of the construction, design, or manufacture of the Defendants' IVC filter. (**Exhibit 1 at ¶¶ 14-15**).

8.     None of Ms. Ball's physicians told her that her injuries or procedures were caused by the IVC filter's design or manufacture. (**Exhibit 1 at ¶¶ 11-13**).

9. Ms. Ball never received any warnings that her IVC filter could perforate her veins or tilt in such a manner as to make its removal difficult and subject to multiple procedures. (**Exhibit 1 at ¶ 6**).

10. Even assuming that Defendants' evidence is admissible, it demonstrates only the dates of Janice Ball's attempted and successful removal of her IVC filter. It contains no evidence of when Ms. Ball discovered her injuries, their cause, the cause of her multiple procedures, her claims, or Defendants' liability for those claims. (**Exhibit A of Defendants' Motion, Doc. 11725-1**).

11. Before Janice Ball received her IVC filter, Defendants knew of several incidents where their IVC filters were perforating through the veins of patients who had received them and withheld this information from the public and the FDA. Defendants attempted to conceal the dangers of these devices by misrepresenting that studies they performed had zero perforations, knowing full well that such perforations were happening. They further knew of serious "safety concerns" with the Cook Celect IVC filter long before Ms. Ball received her IVC filter, and never disclosed these dangers. (**Trial testimony of Dr. Harlan M. Krumholz, M.D. in the _Bland_ trial, Exhibit 2, at 440, 451-52, 456, 629-31; Expert Report of Dr. Harlan M. Krumholz, M.D., Exhibit 3; Plaintiff's Exhibit 1841 in the _Bland_ trial, attached as labeled; Exhibit 1 at ¶ 6**). As referenced in Dr. Krumholz' report:

> Cook has been similarly aware of the safety concerns with Cook Celect filters for many years. Cook had the opportunity to disclose relevant medical and scientific information related to Cook Celect filters. However, they have chosen to minimize the concerns, "put the foot firmly planted on the gas pedal", withhold relevant information from patients and physicians, and at times mischaracterize or report false information with respect to safety of Cook Celect filters. The result was availability of a device that exposed patients to risks unknown or underappreciated by them and by their treating practitioners. Cook continued to promote the Cook Celect filters (including for off-label use) and continued to minimize the legitimate concerns that were emerging by "managing perceptiosn (sic) internally and

externally", selling the "fear factor", or false reassurance of "safety and efficacy" of the Cook Celect filter, while in fact they were aware of both the dearth of evidence for efficacy, and increasing concerns for safety.

**(Exhibit 3 at 142)**.

12.    Numerous studies that were published before Ms. Ball had her IVC filter implanted demonstrate the dangerous and defective nature of this device. **(Doc. 21, ¶¶ 39-40, 42-43; admitted in the Amended Answer, Doc. 8180, ¶¶ 39-40, 42-43)**.

## STANDARD OF REVIEW

A party is entitled to summary judgment only if that party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must support its motion with materials in the record that would be admissible in evidence. Fed. R. Civ. P. 56(c)(1), (2), (4); *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016). The moving party carries the burden of demonstrating the "absence of a genuine issue of material fact" and entitlement to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A motion for summary judgment is generally only appropriate when the non-moving party has had "adequate time for discovery." *Celotex*, 477 U.S. at 322; *see also Jefferson v. Chattanooga Pub. Co.*, 375 F.3d 461, 463 (6th Cir. 2004).

A motion for summary judgment based on the passing of the statute of limitations:

is appropriate only if (1) the statute of limitations has run, thereby barring plaintiff's claim as a matter of law, and (2) there exist no genuine issues of material fact regarding the time at which plaintiff's claim has accrued and the application of the statute to plaintiff's claim which may be resolved in plaintiff's favor.

*Yorger v. Pittsburgh Corning Corp.*, 733 F.2d 1215, 1219 (7th Cir. 1984). The facts, and all inferences that can be drawn therefrom, are viewed in a light most favorable to the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 651, 134 S. Ct. 1861, 188 L. Ed. 2d 895 (2014); *Yoger*, 733

F.2d at 1218-19. In responding to a motion for summary judgment based on the alleged passing of the statute of limitations, the plaintiff need only "present facts raising a genuine issue in order to avoid the statute of limitations." *Avery v. Mapco Gas Prod.*, Inc., 848 F. Supp. 1388, 1393 (N.D. Ind. 1991), aff'd, 18 F.3d 448 (7th Cir. 1994).

Simply put, if a jury could disagree with the Defendants, summary judgment must be denied.

## ARGUMENT

**I.     Defendants' Motion Must Be Denied Because It Relies On Inadmissible Evidence.**

A party moving for summary judgment can support their motion only with admissible evidence. Fed. R. Civ. P. 56(c)(2); *Cairel*, 821 F.3d at 830. Because Defendants' motion is based entirely on inadmissible evidence, *all* material facts remain in dispute and judgment cannot be rendered as a matter of law against Ms. Ball.

### A.     The Case Categorization Form Stipulates That It Is Not Admissible.

The entirety of Defendants' motion is premised on the Categorization Forms that each plaintiff was required to use to place their cases within one of seven categories, and their related subcategories. (***See*** **Doc. 9638-1; Doc. 11725, Ex. A;** *See* **Defendants' SOF 1-6, 8-9, 12, Doc. 11726**).

However, none of this information is admissible in evidence. The Categorization Form stipulates:

> This Case Category Submission is for the purpose of complying with the Court's Order on the Cook Defendant's Motion for Screening Order and Bellwether Selection Plan only and **is not admissible and is not to be considered relevant for any other purpose.**
>
> **(Doc. 9638-1, pp. 1-2, ¶ 4)** (emphasis added).

Because this information is inadmissible in evidence, it cannot support summary judgment in this matter.

### B.     Defendants Have Not Provided Sufficient Foundation To Support Exhibit A Of Their Motion.

Evidence used in summary judgment—including a summary to prove its content under Federal Rule of Evidence 1006—must be properly authenticated. *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 382 (7th Cir. 2008); *see also* F.R.E. 901(a). To use such a summary as evidence, "the proponent must lay a proper foundation as to the admissibility of the material that is summarized and show that the summary is accurate." *Judson Atkinson Candies*, 529 F.3d at 382 (quoting *Needham v. White Labs., Inc.*, 639 F.2d 394, 403 (7th Cir. 1981)). Such foundation is generally accomplished with testimony. *See Needham v. White Labs., Inc.*, 639 F.2d 394, 403 (7th Cir. 1981); *See Fagiola v. Nat'l Gypsum Co. AC & S.*, 906 F.2d 53, 57 (2d Cir. 1990) ("A summary must of course be based on foundation testimony connecting it with the underlying evidence summarized.") A motion for summary judgment is properly denied if it is supported by an unauthenticated summary. *Bannum, Inc. v. United States*, 59 Fed. Cl. 241, 244-45 (2003).

The only foundation that Defendants provide for their Exhibit A—a chart showing dates of attempted and successful removals of the IVC filters, and other procedure dates—is this statement, contained in Defendants' brief:

> [T]he Cook Defendants have reviewed Plaintiffs' short-form complaints, Categorization Forms, and supporting medical records, and summarized the relevant information from those materials in Exhibit A.

**(Doc. 11726 at 6, ¶ 5)**. This statement is not contained in an affidavit, declaration, or other sworn statement—as such it does not appear to be foundation testimony at all, but rather a statement of Defendants' counsel. But statements of counsel do not constitute evidence. *See* Fed. R. Civ. P.

56(c)(1)(A); *See Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006). Defendants do not provide any testimony to demonstrate that the materials summarized would, themselves, be admissible, or that the summary is accurate. A complete failure to provide such foundation renders this chart inadmissible. *Judson Atkinson Candies*, 529 F.3d at 382. Having failed to provide sufficient foundation for Exhibit A, it cannot be considered in summary judgment.

## C. Defendants Have Not Properly Authenticated The Terms and Conditions.

Defendants seek to offer a contractual limitation contained within terms and conditions that allegedly accompanied Ms. Ball's IVC filter.[1] **(Doc. 11726 at 8-9) (citing Doc. 7805 at 17, 18, 28)**. However, the affidavit offered in support of those terms and conditions does not state that such terms and conditions were provided with Janice Ball's IVC filter. It only references Plaintiff Arthur Gage. **(Doc. 7805 at 17-18)**. Defendants offer no evidence indicating that such terms and conditions would be enforceable against her. As such, Defendants have failed to authenticate those terms and conditions as being relevant to Ms. Ball's case. F.R.E. 901(a).

Defendants cannot attempt to use that affidavit as a business records affidavit. Such an affidavit must satisfy F.R.E. 803(6). F.R.E. 903(11). A record is admissible under that rule only if the following is satisfied:

> (A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> (C) making the record was a regular practice of that activity;
>
> (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

---

[1] As explained in Section IV.B, *infra*, this contractual limitation would be ineffective against Ms. Ball.

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

F.R.E. 803(6). The affidavit does not satisfy any of these requirements. That being the case, it cannot be used as a business records affidavit to support the terms and conditions.

A party moving for summary judgment can support their motion only with admissible evidence. Fed. R. Civ. P. 56(c)(2); *Cairel*, 821 F.3d at 830. Because Defendants' motion is based entirely on inadmissible evidence, *all* material facts remain in dispute and judgment cannot be rendered as a matter of law against Ms. Ball. The motion must be denied.

## II.  Defendants Have Failed To Demonstrate That Janice Ball's Complaint Is Untimely Under Indiana Law.

Defendants argue that Ms. Ball's action is untimely under Indiana law. (Doc. 11726 at 9-17).[2] Under Indiana law, a product liability action based on negligence or strict liability must be brought:

(1) within two (2) years after the cause of action accrues; or
(2) within ten (10) years after the delivery of the product to the initial user or consumer.

However, if the cause of action accrues at least eight (8) years but less than ten (10) years after that initial delivery, the action may be commenced at any time within two (2) years after the cause of action accrues.

Ind. Code § 34-20-3-1(b).

Under Indiana's discovery rule, the statute of limitations **does not begin to run until "the plaintiff knew or should have discovered that she suffered an injury or impingement, and that it was caused by the product or act of another."** *Degussa Corp. v. Mullens*, 744 N.E.2d 407, 410 (Ind. 2001). This discovery rule applies to all tort claims, not just toxic tort claims where the injury would manifest itself in the future. *Wehling v. Citizens Nat. Bank*, 586 N.E.2d 840, 842

---

[2] Ms. Ball cites to the Plaintiff Steering Committee's separate response to Defendants' Motion, regarding choice-of-law analysis.

(Ind. 1992). Under this discovery rule, the statute of limitations will not begin running until "plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained **as a result of the tortious act of another**." *Id.* at 843. **"[A] plaintiff's mere suspicion or speculation that another's product caused the injuries is insufficient to trigger the statute.**" *Degussa Corp.*, 744 N.E.2d at 410 (citing *Evenson v. Osmose Wood Preserving Co. of Am.*, 899 F.2d 701, 705 (7th Cir. 1990)). The Indiana Supreme Court described the discovery rule as follows:

> The discovery rule provides that the statute of limitations in this type of cause runs from the date the negligence was or should have been discovered. The rule is based on the reasoning that it is inconsistent with our system of jurisprudence to require a claimant to bring his cause of action in a limited period in which, even with due diligence, he could not be aware a cause of action exists.

*Barnes v. A.H. Robins Co., Inc.*, 476 N.E.2d 84, 86 (Ind. 1985). The discovery rule is most relevant "when the act, seemingly innocent, causes changes so subtle and latent" that a Plaintiff cannot reasonably be expected to discover her cause of action. *Id.*

Here, Ms. Ball did not even *suspect* that her condition was the result of the IVC filter's design or manufacture until early 2016—less than two years before she filed suit. **(Plaintiff's SOMF 5)**. Even so, such suspicion, alone, is not enough to begin the running of the Indiana statute of limitations. In order for that statute to begin running, she must have possessed some evidence from which she could have ascertained "a reasonable possibility that [her] injury was caused by" the filter's design or manufacture. *Evenson v. Osmose Wood Preserving Co. of Am.*, 899 F.2d 701, 705 (7th Cir. 1990); *Degussa Corp.*, 744 N.E.2d at 411.

Ms. Ball is not a medical or engineering expert, and she possesses no knowledge of the design or manufacture of the IVC filter that was implanted inside of her. **(Plaintiff's SOMF 7)**. As such, any suspicion she may have had that her injuries were caused by the IVC filter's design

or manufacture could not be sufficient to start the statute of limitations. *See Evenson*, 899 F.2d at 704-05 (**"mere suspicion possessed by . . . a layperson without technical or medical knowledge" is insufficient to begin Indiana's statute of limitations**).

Defendants argue that, under Indiana law, "diagnosis of the complication or injury at issue by a physician or its discovery on medical imaging are events that objectively trigger the statute of limitations . . ." (**Doc. 11726, p. 13**). This is a misstatement of Indiana law. In fact, a plaintiff's cause of action may not accrue even if she *is* diagnosed with a condition that could be caused by the product at issue. In *Degussa*, the plaintiff was diagnosed with chronic airflow obstruction and her physicians *told her* that it was possible that her condition was caused by chemical exposures at work, but they could not be sure. The Indiana Supreme Court held that:

> Circumstances where a physician tells a patient that a product or act is one of several "possible" causes of an injury present a **complex of factually and legally relevant questions** about how the physician conveyed the information to the patient and what emphasis the physician placed on the potentially tortious cause over other causes.
>
> . . . .
>
> [Plaintiff] merely suspected that work products had something to do with her illness and **[her doctor] said nothing to confirm, deny, or even strengthen her suspicions**.

744 N.E.2d at 411 (emphasis added). For these reasons, the Court held that summary judgment for the defendants was inappropriate. *Id.* at 411-12, 414.

*Degussa* stands for the proposition that a medical diagnosis, without any knowledge as to the *cause* of the injury, is insufficient to start the Indiana statute of limitations. Defendants supply no evidence to indicate when, or even if, Ms. Ball ascertained the cause of her injuries and procedures. Defendants submit an unauthenticated chart, filled with the dates of the attempted and successful removal of Ms. Ball's IVC filter. **But the Defendants have offered NO evidence of when Ms. Ball discovered that the <u>IVC filter's design or manufacture caused</u> these injuries**

**and the need for these medical procedures**. Defendants offer no evidence that Ms. Ball's physicians told her that the IVC filter's design had anything to do with her condition. In fact, they *didn't* say such things to her. **(Plaintiff's SOMF 8)**. Without this evidence, Defendants cannot possibly demonstrate that Ms. Ball's action is untimely. Ms. Ball is not a medical or engineering expert. **(Plaintiff's SOMF 7).** She cannot possibly be expected to suspect, much less know, that the filter's design was the reason that she suffered her injuries. Defendants offer nothing to show otherwise.

Contrary to Defendants' argument, there are no "objective triggers" of the statute of limitations under Indiana law. This is a "complex of factually and legally relevant questions." *Degussa*, 744 N.E.2d at 411. The questions of fact that Ms. Ball has raised sail far beyond a "genuine dispute" as to when the statute of limitations allegedly ran. *See* Fed. R. Civ. P. 56(a). That is sufficient to defeat summary judgment. *Yorger*, 733 F.2d at 1219; *Avery*, 848 F. Supp. at 1393.

Defendants also argue that, under Indiana law, "the accrual date is the date of injury" and that this "accrual date logically cannot be any later than the date of a procedure to correct and/or remove the device." **(Doc. 11726, p. 14)**. But under *Degussa*, this cannot be the case. In that case, knowing of the injury and being notified of a *possible link* to a product was insufficient to begin the statute of limitations. *Degussa*, 744 N.E.2d at 409-11. So an injury, without evidence that the Plaintiff knew or had reason to know that the product's design or manufacture caused that injury, is insufficient to begin the Indiana statute of limitations. The cases that Defendants cite for this proposition are either no longer controlling or are distinguishable.

Defendants cite this Court's decision in *Neuhauser v. A.H. Robins Co.*, Inc., 573 F. Supp. 8 (S.D. Ind. 1983). That case is of no precedential value, as it was decided before the Indiana

Supreme Court recognized the discovery rule and expanded it to all tort claims. *Barnes v. A.H. Robins Co., Inc.*, 476 N.E.2d 84, 84-88 (Ind. 1985) (recognizing the discovery rule); *Wehling v. Citizens Nat. Bank*, 586 N.E.2d 840, 842 (Ind. 1992) ("Although it is true that *Barnes* involved a question of the accrual date of a claim of disease from toxic exposure . . . the reasoning . . . logically applies to all tort claims."). Ironically, *Barnes* was a certified question from the *Neuhauser* case that Defendants cite. *Barnes*, 476 N.E.2d at 84-85, 88. As such, the discovery rule was never at issue in that case. *Neuhauser*, 573 F. Supp. at 10 ("Indiana courts have not ruled directly on whether a 'discovery' rule . . . applies in a medical products liability case such as this.").

Defendants also cite *Wojcik v. Almase*, 451 N.E.2d 336 (Ind. App. 1983). Again, this case was decided before Indiana recognized the discovery rule and expanded it to all tort claims. It was decided under the assumption that no such discovery rule would apply. *Id.* at 342 (holding that the statute began "on the date [the catheter] broke off in his body, not on the date its presence was discovered by x-ray."). That case is not controlling law.

The Defendants' citations to prior rulings in this MDL and the Bard Filter MDL are of no value. None of those cases involved Indiana law. Defendants cite no authority indicating that the same analysis would apply. (*See* **Doc. 11726, p. 15**).

Defendants cite *Withers v. Sterling Drug, Inc.*, 319 F. Supp. 878 (1970). Again, this case was decided before Indiana recognized its current discovery rule. As such, its precedential value is limited. Furthermore, the case is distinguishable. In *Withers*, the plaintiff's specialist specifically *told her* that her eye condition was caused by her use of the manufacturer's drug. *Id.* at 879-80. Defendants cite no evidence of Ms. Ball possessing similar information, and in fact she did not. **(Plaintiff's SOMF 8)**. Furthermore, *Withers*' central holding is in line with Ms. Ball's argument. The *Withers* court held that the plaintiff's action accrued when "the plaintiff was fully aware of

the fact that the alleged wrongdoer, the defendant, accomplished an injury to the person of the plaintiff for which the law allowed indemnity in the form of damages." *Id.* at 881. Similarly, the statute of limitations in this case could not have run any sooner than her realization that her injuries and procedures were caused by the tortious activity of the Defendants—here, the design and manufacture of her IVC filter.

Defendants cite *Cossman v. DaimlerChrysler Corp.*, 108 Cal. App. 4th 370 (2003). This California, mesothelioma case is distinguishable. In *Cossman*, the plaintiff was told not only that she had mesothelioma, but that "it was caused by exposure to asbestos." *Id.* at 379. Plaintiffs do not cite *any* facts, let alone similar facts, indicating that Plaintiff possessed any knowledge as to the cause of her injuries and procedures. In fact, she had none prior to seeing advertisements on television. **(Plaintiff's SOMF 5, 8)**.

Defendants cite *Perryman v. Motorist Mut. Ins. Co.*, 846 N.E.2d 683 (Ind. App. 2006). That case involved a breach-of-contract claim. *Id.* at 687-88. As such, it has limited, if any, value. In that case, the plaintiff argued that the statute of limitations began running when the plaintiff discovered a change in the law. *Id.* at 688. The Court held that the "discovery rule only postpones the statute of limitations by belated discovery of key facts and not by delayed discovery of legal theories." *Id.* at 689. But Ms. Ball is not claiming that the statute of limitations began running with the discovery of a legal theory—her statute began running when she discovered that her injuries, and medical procedures, were caused by the IVC filter's design and manufacture. These are facts, not legal theories.

The Defendants also cite *In re Mirena IUD Products Liability Litigation (Truitt)*, 29 F. Supp. 3d 345 (S.D.N.Y. 2014). That case involved an intrauterine device ("IUD") that was found in the abdomen of the plaintiff and perforated her uterus. It also caused her cervix to thin and

caused the formation of ovarian cysts. *Id.* at 348-49. This case is distinguishable. First, in *Truitt*, the plaintiff's physician specifically told the plaintiff that "the Mirena had caused her cervix to thin and the ovarian cysts to form." *Id.* at 348-49. Here, Defendants present no evidence that Ms. Ball's physicians told her that the IVC filter was the cause for her injuries and procedures—and in fact they did not. **(Plaintiff's SOMF 8)**. In *Truitt*, the district court held that plaintiff's statute of limitations began running at the time that the IUDs perforated the uterus because, *inter alia*, the IUD is now found "somewhere in a woman's body where it is not supposed to be—here Plaintiff's abdomen." *Id.* at 354. But here, Defendants present no evidence that Ms. Ball suffered such an unusual injury that she would have been alerted to something tortious occurring. Defendants' evidence, even if admissible, demonstrates only that Ms. Ball had her IVC filter removed. But it was planned to be removed anyway. **(Plaintiff's SOMF 3, 4)**. Ms. Ball's filter was inserted into the IVC, and it was removed from the IVC. There is no evidence—admissible or otherwise—to indicate that Ms. Ball would have been alerted to something tortious occurring merely because she had her IVC filter removed. Also, the IUD in *Truitt* was designed to be in place for five years. *Id.* at 348. But Ms. Ball's IVC filter was a temporary device, designed to be taken out soon after implantation. **(Plaintiff's SOMF 3, 4)**. This is significant because a failure in the Mirena IUD so soon after implantation may have been an obvious sign of an injury, but the removal of an IVC filter that was designed to be removed anyway does not create the same sense of urgency that would lead a reasonable person to believe that an "injury" occurred.

Applying the holding in *Mirena* to this case would effectively destroy the reasoning and policy behind Indiana's discovery rule. It would require Ms. Ball to file suit the moment she discovered she was injured, whether she knew it was caused by the IVC filter's design and manufacture or not. That is contrary to Indiana law. It should be recalled that *Barnes*, the case that

recognized the discovery rule, was also a case involving an intrauterine device. 476 N.E.2d at 84 (Dalkon Shield). It would seem incongruent to suggest that Indiana would adopt an expansive discovery rule in the context of a medical device, yet have the outcome of that rule be no different than the outcome of Indiana's prior rule—which was that the statute accrues when the fact of damage is ascertainable. 476 N.E.2d at 86-88. In discussing this rule, the *Barnes* court stated the following about the discovery rule:

> The discovery rule provides that the statute of limitations in this type of cause runs from the date the negligence was or should have been discovered. The rule is based on the reasoning that it is inconsistent with our system of jurisprudence to require a claimant to bring his cause of action in a limited period in which, even with due diligence, he could not be aware a cause of action exists.

476 N.E.2d at 86. The discovery rule is most relevant "when the act, seemingly innocent, causes changes so subtle and latent" that a Plaintiff cannot reasonably be expected to discover her cause of action. *Id.* Again, Ms. Ball could not have known that she suffered an "injury"—let alone that the IVC filter's design and manufacture caused it—until she saw advertisements on television indicating that such problems with the IVC filter were not normal and that the design and manufacture of the IVC filter was to blame for these problems.

*Miller v. A.H. Robins Co., Inc.*, 766 F.2d 1102 (7th Cir. 1985) (applying Indiana law) is instructive. *Miller* was decided months after *Barnes* was decided, and involved a Dalkon Shield IUD as well. The Court noted that the plaintiff knew of her injury when she was hospitalized, but she discovered the cause of her injury only when her doctor told her, unambiguously, that the IUD was the cause of her injury. *Id.* at 1103-05.[3] *Miller* contradicts the holding in *Truitt* that the injury itself would have been enough for the Indiana statute of limitations to run. It's temporal proximity

---

[3] The Court in *Miller* likely would have granted summary judgment if the case had been heard today, in light of the Indiana Supreme Court's holding in *Degussa* that merely being told of a "possible" cause of an injury is insufficient to start the statute of limitations. 744 N.E.2d at 411-12.

to *Barnes*, and of course its connection to this Circuit, make its authority on this point more persuasive.

*Horn v. A.O. Smith Corp.*, 50 F.3d 1365 (7th Cir. 1995) (applying Indiana law) is also instructive. That case involved summary judgment that was granted to lessors of Harvestore silos to farmers. The plaintiff farmers alleged that the lessors fraudulently misrepresented that the silos were sealed to oxygen, so as to virtually eliminate spoilage of their feed. *Id.* at 1368-69. The Seventh Circuit confirmed that this is a "fact-specific . . . inquiry" and cannot be decided as a matter of law unless the facts are undisputed. *Id.* at 1370. The court noted that, under Indiana law, the court conducts an objective inquiry into whether the plaintiff, knowing what she did, when she did, "in the exercise of ordinary diligence, could have discovered" that the product was the cause of the plaintiff's harm. *Id.* The court then made an important note about the meaning of "causation" in this context: **"In making this assessment, we are mindful that [the injury] may be the result of a multitude of factors and that it may be difficult for a [plaintiff] to isolate the precise cause of those problems."** *Id.* at 1370 n.9. As such, the court noted that, for some of the plaintiffs, they "apparently made no connection between the various problems on their farm and the Harvestore silos" **until they met with their attorneys.** *Id.* at 1373. This was notwithstanding the fact that these plaintiffs had not consulted counsel until *ten years* after the initial damage was done to their crops and herd. *Id.* at 1372. This was because, after years of questioning the lessor of the silo, "they did not suspect that the Harvestore silo itself was the source of the problem." *Id.* at 1773. The court further noted, "Because they had no previous experience with Harvestore silos, the [plaintiffs] believed what their Harvestore dealer told them." *Id.* Because of the conflicting facts as to when the claim accrued, the court held that "the accrual question in their case **does not lend itself to summary judgment, but should be resolved by a jury after a trial**." *Id.* at 1374.

20

The same is true of Ms. Ball's case. Ms. Ball could not have objectively discovered that the cause of her injuries and procedures was the design and manufacture of the IVC filter itself until she learned of it on television. She is not an engineer. She is not a medical expert. She is a consumer. She could not have used the information she had available to her to search for a claim—because her physicians told her *nothing* as to the cause of her injuries. **(Plaintiff's SOMF 8, 9)**. Like the plaintiffs in *Horn* trusting the opinions of the lessors, Ms. Ball reposed her trust in the opinions of her doctors. No reasonable person in her position could have isolated the design and manufacture of the IVC filter *itself* as the cause of her injuries until Ms. Ball objectively learned of the connection on television. **(Plaintiff's SOMF 5)**. After this discovery, she promptly consulted with counsel and filed suit soon thereafter. **(Plaintiff's SOMF 6).** The parties have presented conflicting evidence that leads to different conclusions as to when Ms. Ball's claim accrued. That being the case, this Court cannot resolve the question on summary judgment. Only a jury can resolve this question, after trial. *Id.* at 1374.

*Nelson v. Sandoz Pharmaceuticals Corp.*, 288 F.3d 954 (7th Cir. 2002) (applying Indiana law) is similar to Ms. Ball's case. In that case, the Seventh Circuit reversed summary judgment that the trial court granted to the defendant drug manufacturer for injuries caused by one of its drugs. *Id.* at 967-69. The court noted that the plaintiff's doctor initially noted a possible link between her stroke and the medication, but later backtracked on that assessment, finding no correlation between the two. *Id.* The court in that case noted that "Indiana courts recognize that when application of the statute of limitations rests upon questions of fact, **any factual dispute must be resolved by a jury**." *Id.* at 964 n.9. Similarly, Ms. Ball's physicians never indicated to her that her injuries and corrective procedures were caused by the IVC filter's design and

manufacture, as opposed to routine removal of the device or some other biological mechanism.

**(Plaintiff's SOMF 8).**

*Slater v. Biomet, Inc.*, 244 F. Supp. 3d 803 (N.D. Ind. 2017) (applying North Carolina law) is also instructive. That case involved a defective metal hip implant that caused metallosis. *Id.* at 808. The plaintiff subsequently had four revision surgeries as a result of this implant. *Id.* The plaintiff did not know that the hip implant had failed until she saw an attorney advertisement. *Id.* at 809. In denying summary judgment to the manufacturer, the court stated as follows, regarding the accrual of plaintiff's claim:

> Medical claims often involve a more complex trigger. Especially in the medical field, **plaintiffs may lack the expertise to know whether the ill effects they have suffered are a result of someone's wrongdoing, or merely an unexpected result, or inevitable or unforeseeable risk of their treatment**. … Revision surgery within months of a hip implant could, without additional information, mean medical malpractice, a problem with the device, an unpreventable infection, or any other inevitable or unforeseeable risk of treatment.
>
> In medical situations, where causation of an injury is unknown, the action accrues when both the injury and its cause have been (or should have been) discovered. **Where the injury and causation are known, but not that there has been any wrongdoing, the action is held to accrue when the plaintiff discovered, or by due diligence should have discovered, the wrongdoing**.

*Id.* at 809 (citations and quotations omitted; emphasis added). The court held:

> **Biomet might prevail on its statute of limitations defense, but not on summary judgment. There's a genuine issue of material fact as to when Ms. Slater knew or should've known of the alleged wrongdoing, the failure of the implant. Her knowledge that something was wrong, with the complexities of medical treatment, might not have been enough to put her on inquiry notice as to the failure of the device itself.**

*Id.* This analysis should guide this Court's decision in Ms. Ball's case. The wrongdoing in this case was the failure of Ms. Ball's IVC filter. Like the analysis in *Slater*, the relevant question is when Ms. Ball learned that her IVC filter's wrongful design and manufacture was to blame for her injuries and procedures. Like *Slater*, the fact that Ms. Ball did not learn of this wrongdoing until

she saw an attorney advertisement **was enough to present a genuine dispute of material fact and defeat summary judgment**. And like *Slater*, the fact that a defective, complex medical device caused Ms. Ball's injuries militates against summary judgment because Ms. Ball does not possess the expertise to know that her injuries and procedures were the result of a defective IVC filter, as opposed to events that occur with the *normal* operation of an IVC filter. **(Plaintiff's SOMF 7).**

The central question is: **could a jury disagree with the Defendants?** If so, then summary judgment must be denied. Under controlling Indiana and Seventh Circuit precedent, if Ms. Ball presents any question of fact regarding the timing of her discovery of her cause of action, then **the jury** must decide that question. This Court cannot decide the issue on summary judgment.

## III.   Defendants Have Failed to Demonstrate That Janice Ball's Complaint Is Untimely Under Michigan Law.

Defendants argue, in the alternative, that Ms. Ball's claim is barred by the Michigan statute of limitations. **(Doc. 11726 at 18, 20-21)**. Michigan law generally requires that product liability actions be filed within three years of the action accruing—which is generally when the plaintiff is injured. Mich. Comp. Laws Ann. § 600.5805(12);[4] *see Trentadue v. Buckler Lawn Sprinkler Co.*, 738 N.W.2d 664, 670 (Mich. 2007). Ms. Ball filed her complaint on April 26, 2017. **(Doc. 4551)**. Defendants argue that Ms. Ball should have filed her action within three years of the dates of injury listed in their unauthenticated chart—which Defendants assert are the failed retrieval of the IVC filter on October 17, 2012 and the successful retrieval on November 19, 2012. **(Doc. 11725-1 ("Exhibit A"), Entry No. 21 of chart; Doc. 11726, pp. 20-21)**.

The crux of Defendants' argument is that Michigan law does not provide any mechanism for allowing suit to be filed beyond three years from the date of injury. That is not the case.

---

[4] Defendants cite the general, personal-injury statute of limitations in their memorandum, Mich. Comp. Laws Ann. § 600.5805(10). (Doc. 11726 at 20).

Michigan law will extend the time for bringing suit if the defendant "fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim." Mich. Comp. Laws Ann. § 600.5855; *see also Trentadue*, 738 N.W.2d at 405 (recognizing this exception to the general rule). In such a circumstance, the Plaintiff may bring the suit "at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations." *Id*.

Numerous studies that were published before Ms. Ball had her IVC filter implanted demonstrate the dangerous and defective nature of this device. **(Plaintiff's SOMF 12)**. Defendants attempted to conceal the dangers of these devices by misrepresenting that studies they performed had zero perforations, knowing full well that such perforations were happening. **(Plaintiff's SOMF 11)**. Defendants further knew of a long history of severe safety concerns regarding these IVC filters. **(Plaintiff's SOMF 11).** Notwithstanding this knowledge, Defendants did not provide any warning whatsoever that perforations and other injuries occur or that they are due to these IVC filters. **(Plaintiff's SOMF 9, 11)**. By hiding this information, Defendants were concealing all information upon which Ms. Ball could have acted to discover that she had a claim and that the Defendants were the liable parties. Such concealment was fraudulent. Pursuant to Mich. Comp. Laws Ann. § 600.5855, Ms. Ball had until at least sometime in early 2018 to file suit. She filed suit on April 26, 2017. This action is timely.

Defendants' evidence, in addition to being inadmissible, doesn't even touch on the subject of when Ms. Ball discovered her injury, its cause, the claim, or Defendants' liability. Therefore, Defendants have failed to demonstrate the lack of a factual dispute. Defendants carry the burden

to demonstrate the lack of a factual dispute. *Celotex*, 477 U.S. at 323. Having failed to do so, the Court cannot grant summary judgment. Fed. R. Civ. P. 56(a); *Yorger*, 733 F.2d at 1219.

Whether Defendants fraudulently concealed this claim or their liability for it is a disputed fact. This fact question must be resolved by a jury. Defendants' motion for summary judgment must be denied.

## IV.  Ms. Ball's Non-Tort Claims Are Timely and Survive Summary Judgment

### A.  Plaintiffs Have Sufficiently Pled Breach of Express Warranty

Defendants seek summary judgment on Count V of the Master Consolidated Complaint for Individual Claims—Breach of Express Warranty. In support of their argument, Defendants do not cite any facts—let alone demonstrate that such facts are not in genuine dispute. This alone is fatal to Defendants' motion. Fed. R. Civ. P. 56(a). Defendants also cite absolutely no legal authority in support of this motion. Ms. Ball quite simply has nothing to respond to.

Defendants' motion is tantamount to a motion for judgment on the pleadings, claiming that Count V fails to state a claim. In ruling on such a motion, the Court must assume that the Complaint's allegations are true and draw all inferences from them in favor of Ms. Ball. *Hentosh v. Herman M. Finch Univ. of Health Scis./The Chicago Med. Sch.*, 167 F.3d 1170, 1173 (7th Cir. 1999).

The Master Complaint is 39 pages long and contains over 200 paragraphs of allegations. Such an exhaustive documents almost certainly contains sufficient factual allegations. Count V incorporates all the allegations of the Complaint. **(Doc. 21, ¶ 93)**. The Master Complaint makes several allegations that can support an express-warranty claim. Among them are the following:

> ¶ 38:   "At all times relevant hereto, the Cook Filters were widely advertised and promoted by the Defendants as safe and effective treatment for prevention of recurrent

pulmonary embolism via placement in the vena cava. At all times relevant hereto, Defendants knew its Cook Filters were defective and knew that defect was attributable to the design's failure to withstand the normal anatomical and physiological loading cycles exerted in vivo."

¶ 45:   "At all times relevant hereto, the Defendants continued to promote the Cook Filter as safe and effective even when inadequate clinical trials had been performed to support long or short to safety and/or efficacy."

¶ 55:   "Information provided by Cook to the medical community and to consumers concerning the safety and efficacy of its IVC Filters did not accurately reflect the serious and potentially fatal adverse events Plaintiffs could suffer."

¶ 95:   "At the time and place of sale, distribution and supply of the Cook IVC Filters to Plaintiffs (and to other consumer and the medical community), the Defendants expressly represented and warranted in their marketing materials, both written and orally, and in the IFUs, that the Cook IVC Filters were safe, well-tolerated, efficacious, and fit for their intended purpose and were of marketable quality, that they did not produce any unwarned-of dangerous side effects, and that they were adequately tested."

¶ 96:   Describing the numerous breaches of these express warranties.

The entire master complaint is replete with allegations of the damage that these breaches have caused. These allegations, taken as true, are more than enough to support a claim for breach of express warranty.

**B. Ms. Ball's Claim For Breach of Implied Warranty Is Timely And Survives Summary Judgment.**

**1. Ms. Ball's Implied-Warranty Claim Is Timely Under Indiana Law.**

As demonstrated above, Ms. Ball's complaint is timely under Indiana law, even assuming that this claim is merged into a products-liability claim under Indiana law, as alleged by Defendants. (Section II, *supra*).[5]

Contrary to Defendants' argument, Indiana has never held that a claim for breach of implied warranty is merged into tort claims and cannot be alleged separately. *Kovach v. Caligor Midwest*, 913 N.E.2d 193, 197 (Ind. 2009) ("We therefore do not resolve the relationship between the PLA and the UCC today."). In fact, the Indiana Supreme Court has left that question open, to the point of assuming that they *are* separate claims. See *id.* ("To the extent they are separate theories …"). As such, Ms. Ball is free to assert this as a separate claim.

Also contrary to Defendants' argument, Indiana has abolished the requirement of privity for claims of breach of implied warranty. *Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947, 953-59 (Ind. 2005) (citing in support, *inter alia*, *Lane v. Barringer*, 407 N.E.2d 1173, 1175 (Ind. Ct. App. 1980); *Dagley v. Armstrong Rubber Co.*, 344 F.2d 245, 252 (7th Cir. 1965); *Neofes v. Robertshaw Controls Co.*, 409 F. Supp. 1376, 1379 (S.D. Ind. 1976); *Filler v. Rayex Corp.*, 435 F.2d 336, 337-38 (7th Cir. 1970); *Karczewski v. Ford Motor Co.*, 382 F. Supp. 1346, 1352 (N.D. Ind. 1974)). As such, privity is no barrier to this claim.

### 2. Ms. Ball's Implied-Warranty Claim Is Timely Under Michigan Law.

The Michigan Supreme Court has held that implied warranty claims between a consumer and a manufacturer are generally not governed by the Uniform Commercial Code ("UCC")—as such the general tort statutes of limitation will apply. *Parish v. B. F. Goodrich Co.*, 235 N.W.2d 570, 573 (Mich. 1975); *Southgate Cmty. Sch. Dist. v. W. Side Const. Co.*, 247 N.W.2d 884, 886 (Mich. 1976), holding modified by *Neibarger v. Universal Cooperatives, Inc.*, 486 N.W.2d 612

---

[5] Of course, the claim in question depends on which choice-of-law rules are applied. Ms. Ball cites to the Plaintiff Steering Committee's separate response to Defendants' Motion, regarding choice-of-law analysis.

(Mich. 1992). This includes any applicable discovery rules. *See Larson v. Johns-Manville Sales Corp.*, 399 N.W.2d 1, 5 (Mich. 1986) ("statutory discovery rule" applies to breach of warranty claims). As demonstrated above, this claim is timely under Michigan law. (*See* Section III, *supra*). Because these implied warranties are not governed by the UCC, the UCC's statute allowing reduction of the statute of limitations does not apply to these claims. *Southgate*, 247 N.W.2d at 886-87. Therefore, any such contractual limitation would be ineffective against Ms. Ball.

### C.  The Master Complaint Sufficiently Pleads Consumer Fraud.

Defendants claim that Plaintiffs have failed to adequately plead Count VII of the Master Complaint—their consumer fraud claims. As applicable to Ms. Ball, that would be violations of the Michigan Consumer Protection Act. To state such a claim, a complaint need only allege what statements or omissions occurred, and the timeframe when they would have occurred—there is no requirement to demonstrate that such statements or omissions are actionable. *Midwest Commerce Banking Co. v. Elkhart City Ctr.*, 4 F.3d 521, 523-24 (7th Cir. 1993).

Defendants cite to a single paragraph of the Master Complaint, arguing that it contains the sole allegations of fraud. **(Doc. 11726 at 32) (citing ¶ 116)**. But Count VII incorporates all the allegations of the Complaint. **(Doc. 21 at ¶ 112)**. The Master Complaint is replete with allegations of the fraud that Defendants have perpetrated.

The Master Complaint alleges that Defendants: falsely advertised the safe and effective nature of the IVC filters, notwithstanding *several* studies—pled as to the specific dates of their publication—demonstrating the defective nature of these products; that Defendants specifically advertised the filters' conichrome construction because it "reduces the risk of fracture," and that such statement was not true;  that Defendants failed to disclose these defects, notwithstanding that they knew of these defects or should have known of them; that Defendants continued to promote

28

their products as safe while knowing that they had insufficient data to support their assertions; that Defendants concealed these risks; and that Plaintiffs suffered damages as  result. (*See* **Doc. 21 at ¶¶ 38-64, 105, 112-120, 139, 186-194**).

These allegations are voluminous. The publications establish a timeframe when Defendants should have known of these risks and failed to disclose them, and should have known that their statements were false. Under Seventh Circuit precedent, that is sufficient to state a claim.

## V.   Conclusion

Defendants have the burden to establish that no factual dispute exists as to precisely when the statute of limitations accrued and expired, entitling them to summary judgment. If such a factual question exists, this Court cannot grant summary judgment to Defendants.

Defendants' sole evidence to support summary judgment is a chart with no foundation for its admission. Even if such evidence was admissible, it contains only the dates of Ms. Ball's attempted and successful removal of her IVC filter. It contains absolutely no evidence of when Ms. Ball discovered that she was injured, the cause of those injuries, the cause of her difficult removal procedures, her claims, and that Defendants were liable for those claims. Without such evidence, Defendants cannot possibly demonstrate when Ms. Ball's claims accrued or expired. At the very least, this leaves a factual dispute that can only be determined by a jury after trial. This Court cannot decide the issue on summary judgment.

Defendants present no evidence to counter Ms. Ball's argument that Defendants fraudulently concealed her claim and their liability for it. Without such evidence, this leaves yet another factual dispute that can only be resolved by a jury after trial, and not on summary judgment.

The 39-page, 200-paragraph Master Complaint is replete with detailed factual allegations to support Ms. Ball's claim for breach of express warranty and violations of Michigan's Consumer Protection Act. Her implied-warranty claims are also timely.

Ms. Ball need not demonstrate that she would win in order to defeat Defendants' motion—she need only demonstrate that she *could* win. As demonstrated above, a jury could disagree with the Defendants. For that reason, the Court must deny Defendants' Motion for Summary Judgment.

Respectfully Submitted,

**PETERSON & ASSOCIATES, P.C.**

*/s/ David M. Peterson*
David M. Peterson                    #32229
dmp@petersonlawfirm.com
801 W. 47th Street, Suite 107
Kansas City, Missouri 64112
Phone: (816) 531-4440
Fax: (816) 531-0660
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 3, 2019, the foregoing was filed with this Court and the CM/ECF system thereafter will serve all counsel of record with notice of the same.

*/s/ David M. Peterson*
David M. Peterson

K:\Active Cases\JVC FILTERS\Cook MDL\MSJ\Ball-Response to Cook Defendants' Renewed Omnibus MSJ based on SOL.docx