UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB MDL No. 2570 |

This Document Relates to Plaintiff(s)

James Buell and Darina Buell

Civil Case # <u>1:17-cv-516</u>

### PLAINTIFF JAMES BUELL'S RESPONSE MEMORANDUM IN OPPOSITION TO THE COOK DEFENDANTS' OMNIBUS MOTION FOR SUMMARY JUDGMENT BASED ON APPLICABLE STATUTE OF LIMITATIONS

Plaintiff James Buell submits this response memorandum in opposition to the Cook Defendants' Renewed Omnibus Motion for Summary Judgment Based on Applicable Statute of Limitations.

### STATEMENT OF FACTS

On November 22, 2008, Mr. Buell had a Cook Tulip filter implanted in Round Rock Texas. Only ten weeks later, on February 6, 2009, Mr. Buell presented for surgery for the removal of his IVC filter. As per the instructions for use, Mr. Buell's surgeon attempted to use a snare to engage the hook at the top of Mr. Buell's filter, however, the surgeon discovered that the distal aspects of the filter's struts were embedded within the wall of Mr. Buell's vena cava. As a result, Mr. Buell's surgeon was forced to abandon the retrieval procedure and leave the embedded filter in place. Mr. Buell's operative note states, "The IVC filter struts were incorporated into the IVC wall such that the filter could not be retrieved at ten weeks post-

1

placement...Conversion to a permanent filter should not result in significant increased risks to the patient." (Plaintiff's Operative Report, attached as Exhibit A).

As of 2009, Cook continued to market its IVC filters as removable, safe and efficacious devices. (Compl. ¶ 38) ("[T]he Cook Filters were widely advertised and promoted by the Defendants as safe and effective treatment for prevention of recurrent pulmonary embolism via placement in the vena cava.") Yet, Cook failed to inform physicians that IVC filters could become embedded in a patient's tissue and conventionally unremovable if left in for even short periods of time. Despite internal knowledge and knowledge of the medical literature, Cook further failed to inform doctors and patients like Mr. Buell and his physician, that IVC filters have not actually been shown to be efficacious and lacked scientific support. (*See* Decousus, Herve, et al. *A Clinical Trial of Vena Caval Filters in the Prevention of Pulmonary Embolism in Patients with Proximal Deep-Vein Thrombosis*. Vol. 338. New England Journal of Medicine, 409 (1998), attached as Exhibit B). Cook never informed these treaters that they never performed studies for efficacy or safety. In fact, Cook never advised that they were aware that there was little to no evidence that supported the efficacy of these devices. In fact, the studies and the knowledge of Cook show just the opposite—filters do not prevent PE and in fact promote blood clots[1]. Further, the longer the filters are in place the more they embed, perforate, migrate and fracture.

It was not until Mr. Buell saw an advertisement on television around July 2015 that he possessed some knowledge that that his embedded filter and failed filter removal could be related to the design of filter and the misrepresentations of the manufacturer. Further, he was unaware

---

[1] The evidence has become overwhelming that there is little to no efficacy with these filters and instead they are actually pro-thrombotic. (Ho, Kwok M. *A Multicenter Trial of Vena Cava Filters in Severely Injured Patients*. New England Journal of Medicine (2019), attached as Exhibit C).

until at least that time, that the Tulip filter that remained inside him did not possess the ability to protect him and carried greater risks of embedment, perforation, migration, fracture and even death than were represented. Mr. Buell's case was filed on February 17, 2017, well within the two years provided under Texas law to file a case under the fraudulent concealment exception.

## ARGUMENT

**Plaintiff's Claims Are Not Time-Barred by The Texas Statute of Limitations, Based on Both The Fraudulent Concealment Exception and The Discovery Rule.**

### A.  Texas's Fraudulent Concealment Exception Tolled Plaintiff's Claims

In Texas, a cause of action does not accrue until the injury reasonably could have been discovered. *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 65 (Tex. 2011). Correspondingly, a defendant's fraudulent concealment of the facts giving rise to the plaintiff's cause of action tolls the statute of limitations, but only "until the fraud is discovered or could have been discovered with reasonable diligence." *Id*. at 67. Because fraud vitiates whatever it touches, limitations period applicable to claim of fraud does not start to run until the fraud is discovered or the exercise of reasonable diligence would discover it. *Hooks v. Samson Lone Star, Limited Partnership*, 457 S.W.3d 52, 57 (Tex. 2015).

To establish fraudulent concealment, a plaintiff must prove: (1) "the existence of the underlying tort," (2) "the defendant's [actual] knowledge of the tort" and the facts allegedly concealed, (3) "the defendant's use of deception [with intent] to conceal the tort," and (4) "the plaintiff's reasonable reliance on the [defendant's] deception." *Malone v. Sewell*, 168 S.W.3d 243, 251 (Tex. App.—Fort Worth 2005, pet. denied); *Earle v. Ratliff*, 998 S.W.2d 882, 887 (Tex. 1999) ("health-care provider actually knew a wrong occurred, had a fixed purpose to conceal the wrong, and did conceal the wrong from the patient."). A plaintiff who asserts fraudulent

concealment to avoid summary judgment on limitations grounds must raise a fact issue that would support this assertion. *Id*. at 888.

Here, the fact issue raised by Plaintiff's fraudulent concealment claim is clear: the Cook Defendants hid the true safety profile from physicians throughout the country, including Plaintiff's own implanting surgeon. As early as 2007, the Cook Defendants' own Medical Science Officer, James Gardner, expressed his concern in internal emails: **"my greatest concern at the moment is that payers are going to take a good, hard look at IVC filter placement and whether any clinical evidence exists to demonstrate it really saves or improves patient outcomes in other ways."** (Email from James Gardner to Rob Lyles, CookMDL2570_0427098, attached as Exhibit D). Further, Cook's Medical Science Officer, Mr. Gardner, again expressed similar concern in January 2008, six months prior to Plaintiff's implantation surgery when he stated: **"there's not a lot of clinical evidence that demonstrates these filters actually improve patient outcomes."** (Email from James Gardener to William Voorhees, CookMDL2570_0380878, attached as Exhibit E) (emphasis added).

Despite Cook's knowledge to the contrary, Mr. Buell's surgeon was further not informed that "Conversion to a permanent filter should not result in significant increased risks to patient" was an untrue statement. (Plaintiff's Operative Report, attached as Exhibit A). This knowledge from the Cook Defendants is evidenced by another internal email from the company's Medical Science Officer, Mr. Gardner, which included the following admission: **"there has been an increased recognition that many of the retrievable filters are never retrieved, and over the long-term IVC filters can have some complications."** (Email from James Gardner to Tom Connaughton, CookMDL2570_405333, attached as Exhibit F).

Further, Mr. Buell's surgeon was not informed by Cook of the lack of efficacy associated with the Cook filter he implanted. As of 2009 (through the present), Cook continued to market its IVC filters as safe and effective devices. (Compl. ¶ 38), despite the fact that the company knew there was "**not a lot of clinical evidence that demonstrates these filters actually improve patient outcomes.**" (Email from James Gardener to William Voorhees, CookMDL2570_0380878, attached as Exhibit E). Cook also failed to inform physicians that IVC filters could become embedded in a patient's tissue if left in for extended periods of time.  (*See* Email from James Gardner to Tom Connaughton, CookMDL2570_405333, attached as Exhibit F) ("[T]here is an increased recognition that many of the retrievable filters are never retrieved.") Cook further failed to inform doctors and patients like Mr. Buell and his physician, that IVC filters have not actually been shown to be efficacious. (*See* Decousus, Herve, et al. *A Clinical Trial of Vena Caval Filters in the Prevention of Pulmonary Embolism in Patients with Proximal Deep-Vein Thrombosis*. Vol. 338. New England Journal of Medicine, 409 (1998), attached as Exhibit B).

Again, to establish fraudulent concealment in the present case, Mr. Buell must prove: (1) "the existence of the underlying tort," (2) "the defendant's [actual] knowledge of the tort" and the facts allegedly concealed, (3) "the defendant's use of deception [with intent] to conceal the tort," and (4) "the plaintiff's reasonable reliance on the [defendant's] deception." *Malone*, 168 S.W.3d at 251.

First, the existence of underlying torts is clear: the negligence and fraud on the part of the Cook Defendants. Second, the Cook Defendants had actual knowledge of their negligence and misrepresentations: (1) In selling a medical device inserted into a patient's body as a "removable filter" that often could not be removed. (2) In representing this device "improved patient

outcomes" where Cook had no long term studies or evidence to support its efficacy despite the greater risks that had been disclosed). This information was known to Cook at the time of Mr. Buell's implantation and attempted retrieval surgeries, yet concealed from Mr. Buell's surgeon and the rest of the medical community. Third, the Cook Defendants used deception to conceal the fact that the Cook Tulip filter implanted into Mr. Buell may not be removable without an open surgery and further used deception to conceal the fact that this filter posed significant risk of injury to Mr. Buell if converted to a permanent filter. Finally, Mr. Buell, by and through his surgeon, reasonably and detrimentally relied on Cook's deception. This is evidenced by the surgeon's surprise during surgery that the filter was embedded after only 10 weeks and the doctor's statement in the records that "Conversion to a permanent filter should not result in significant increased risks to the patient."

It was not until Mr. Buell saw an advertisement on television around July 2015 that he realized that his failed removal could have been related to the defects of the filter.  Accordingly, based on the fraudulent concealment exception to the Texas statute of limitations, Mr. Buell's filing date of February 17, 2017 was timely and is not barred by the statute of limitations.

### B.  Plaintiff's Claim Was Timely Based on Texas's Discovery Rule

Normally a cause of action accrues, for statute of limitations purposes, when a wrongful act causes some legal injury, but accrual may be deferred if the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable. *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006). "An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence." *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734–35 (Tex. 2001). This legal question is decided on a categorical rather than case-specific basis; the focus is on whether a type of injury

rather than a particular injury was discoverable. *Id*. at 736; *Apex Towing Co. v. Tolin*, 41 S.W.3d 118, 122 (Tex. 2001). Limitations periods generally begin to run when the cause of action accrues, which means when facts have come into existence that authorize a claimant to seek a judicial remedy. *Id*. at 119.

Here, Mr. Buell's original implantation surgery occurred on November 22, 2008 and his failed removal surgery occurred on February 6, 2009. However, it was not until July 2015—when Mr. Buell saw an advertisement on television—that he realized his failed removal could have been related to the design flaws of the filter. Nor could he have recognized until at least that time, the misrepresentations made by Cook about safety and efficacy. Mr. Buell exercised the level of due diligence required by *Wagner*, as he worked with his surgeon to implant and attempt removal of the Cook Tulip filter with the understanding that his surgeon had all of the information from the Cook Defendants regarding the safety and efficacy of the Cook Tulip filter.. Accordingly, based upon the Texas discovery rule, Mr. Buell had until July 2017 to file initiate a timely lawsuit. As such, Mr. Buell's February 17, 2017 filing date was well within Texas's statute of limitations, and the Cook Defendants Motion for Summary Judgment Based on Applicable Statute of Limitations should be denied.

## **CONCLUSION**

For the foregoing reasons, Plaintiff James Buell respectfully requests that the Court deny the Cook Defendants' Motion for Summary Judgment Based on Applicable Statute of Limitations.

Respectfully submitted,

Dated: October 3, 2019

By: */s/ Stuart Goldenberg*
GOLDENBERGLAW, PLLC
Stuart Goldenberg (#158719)
800 LaSalle Ave Ste 2150

Minneapolis, MN 55402
Direct Phone: 612-335-9960
Fax: 612-367-8107
Admitted Pro Hac Vice

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFIY that on this 03 Day of October, 2019, I electronically filed the

foregoing with the Clerk of Court by using the CM/ECF System for filing and service to all

parties/counsel registered to receive copies in this case.

By: <u>*/s/ Stuart Goldenberg*</u>
GOLDENBERGLAW, PLLC
Stuart Goldenberg (#158719)
800 LaSalle Ave Ste 2150
Minneapolis, MN 55402
Direct Phone: 612-335-9960
Fax: 612-367-8107
Admitted Pro Hac Vice

*Counsel for Plaintiff*
