IN THE UNITED STATES DISTRICT
COURT SOUTHERN DISTRICT OF
INDIANA INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC, IVC FILTERS MARKETING, SALES PRACTICES AND TAB PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-MDL No. 2570 |

This Document Relates to Plaintiff:
MARIA A. IBARRA

Civil Case #   1:17-cv-03363-RLY-TAB

**PLAINTIFF MARIA IBARRA'S RESPONSE TO THE COOK DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT BASED ON STATUTE OF LIMITATIONS**

COMES NOW, Maria Ibarra ("Plaintiff") and files this response to Defendants Cook Incorporated, Cook Medical LLC (f/k/a Book Medical Incorporated) and William Cook Europe ApS (hereinafter "the Cook Defendants" or "Defendants") Motion for Summary Judgment Based on Statute of Limitations and would show unto the Court as follows:

**I.    INTRODUCTION & SUMMARY**

The Cook Defendants have filed a Motion for Summary Judgment asserting that the Plaintiff's claims are barred by the statutes of limitations in Texas and Indiana. Under the discovery rules of those States, however, Plaintiff's claims against Defendants are deferred until discovery of an injury or complication associated with her Gunther Tulip® IVC filter (hereinafter, "IVC filter"). Plaintiff did not discover that the tines of her IVC filter had punctured through her inferior vena cava and made contact (or near contact) with her small bowel, aorta, and renal artery branch until August 22, 2019 when she received the radiology imaging report for previously performed abdominal CT scan. Because Plaintiff did not discover these complications/injuries associated with her IVC filter until August 22, 2019, she is well

1

within the statute of limitations governing the assertion of claims arising out of such injuries. For these reasons, set forth more fully below, Defendants' Motion for Summary Judgment should be denied.

## II.  FACTUAL & PROCEDURAL BACKGROUND

As the Court is well-aware, this is a product liability case arising out of the surgical placement of a Guther Tulip® IVC filter in Plaintiff's inferior vena cava.  The IVC filter implanted in Plaintiff was designed, manufactured and marketed by the Cook Defendants. Plaintiff's IVC filter was initially placed on January 6, 2012 by Dr. Michael Decandia, M.D. for treatment of deep vein thrombosis secondary to major bowel surgery.  *See*, Declaration of Maria Ibarra, attached hereto as Exhibit A, ¶ 3; Plaintiff's Knapp Medical Center Records, **(excerpted)**, attached hereto as Exhibit B, Bates No. 000001.  After three months of anticoagulation treatment, Plaintiff was referred back to Dr. Decandia for IVC filter retrieval.  *See*, Exhibit B, Bates No. 000001.  On April 18, 2012, Dr. Decandia attempted retrieval of the IVC filter, however, a possible "filling defect" at the tip of the filter – suggestive of a blood clot – was noted in radiograph imaging.  *See*, Exhibit A, ¶ 4; Exhibit B, Bates Nos. 000001-000002.  Later that day, the presence of the clot was confirmed via a pelvic and abdominal CT; however, no other problems or complications with the filter were noted. *See*, Exhibit B, Bates Nos. 000001 and 000003.  At that point, attempts at filter retrieval were aborted pending additional anticoagulation therapy.  *See*, Exhibit B, Bates No. 000004.  October 4, 2012, Dr. Decandia once again attempted IVC filter retrieval but was unsuccessful. *See*, Exhibit A, ¶ 5; Exhibit B, Bates No. 000005.  Dr. Decandia attributed his failure to retrieve the device as most probably due to "long term residence in the inferior vena cava." See, Exhibit B, Bates No. 000005.  No further attempts at filter retrieval were made. See, Exhibit A, ¶ 5.  No other complications associated with the filter were

2

noted.

After seeing a television ad in early April, 2016, Plaintiff became concerned that the failure to retrieve the IVC filter may be due to a defect with the product. Id., ¶ 6. Plaintiff contacted and retained counsel on or about April 16, 2016. Id., ¶ 6. Plaintiff filed suit against Defendants in MDL 2570 on September 21, 2017 alleging, among other things, strict product liability, negligence and breach of warranty. At the time of the filing of Plaintiff's Complaint, the only complication associated with the IVC filter of which she was aware was that it could not be removed from her body. Id., ¶ 6. Plaintiff was otherwise unaware of any adverse outcomes or problems that attributable to the IVC filter. Id., ¶ 6. On October 13, 2017, Plaintiff's counsel uploaded a completed Plaintiff Profile Sheet to the DaegreBD Secure online portal. The sole adverse outcome attributed to the IVC filter identified in Plaintiff's Profile Sheet was "Device Unable to Be Retrieved." See, Declaration of John W. Pate, attached hereto as Exhibit C, ¶ 4.

On April 5, 2019 – four months prior to the filing of Cook's Motion for Summary Judgment – Plaintiff underwent a CT scan of her abdomen at McAllen North Imaging to determine the status of the filter. See, Exhibit A, ¶ 7. The results of the imaging were detailed in an imaging report first provided to Plaintiff on August 22, 2019. See, Exhibit A, ¶ 7; Exhibit C, ¶ 3; McAllen North Imaging Report, attached hereto as Exhibit D. The report revealed the following (previously unknown) complications and problems relating to the IVC filter:

- All four tines (prongs) of the IVC filter implanted in Plaintiff are protruding through the wall of her inferior vena cava approximately 3 to 4 mm;

- The anterior tine of the IVC filter is making contact with second portion of Plaintiff's small bowel;

- The left posterior tine of the IVC filter is protruding outside the Plaintiff's inferior vena cava at a point that is just posterior to the aorta;

- The right tine of the IVC filter is nearly contacting a branch of Plaintiff's right renal artery;

- The right posterior tine of the IVC filter is projecting outside of Plaintiff's inferior vena cava into the retroperitoneal space.

*See*, Exhibit D.

Prior to receiving this imaging report, Plaintiff was unaware that all four of the tines comprising her IVC filter tines had perforated through the wall of her inferior vena cava approximately 3 to 4 mm; Plaintiff was unaware that the anterior tine of her IVC filter was in contact with a portion of her small bowel; Plaintiff was unaware that the left posterior tine protrudes outside the IVC wall just posterior to the aorta; Plaintiff was unaware that the right tine nearly contacts a right renal artery branch and, finally, Plaintiff was unaware that the right posterior tine extends into the retroperitoneal space.  See, Exhibit A, ¶ 8.  Plaintiff first learned of these complications on August 22, 2019.  Id.  On August 29, 2019, Plaintiff submitted an amendment to Plaintiff Profile Form through the online portal identifying each of these newly discovered injuries, detailed above, as adverse outcomes attributable to her IVC filter device. On October 3, 2019, Plaintiff submitted an amended Case Categorization Form also identifying these new complications.  See, Exhibit C, ¶ 5.

### III. ARGUMENT & AUTHORITIES

#### A. Standard of Review

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in a light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Initially, the movant bears the burden of presenting the basis for the motion and the elements of the causes of action upon which the nonmovant will

be unable to establish a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to come forward with specific facts showing there is a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

    **B.**    **The Court's Analysis of the Statute of Limitations under Texas Law.**

            **1.**    **Texas' Statute of Limitations Govern Plaintiff's Claims because Plaintiff's Claims "originated" in Texas.**

Defendants' original omnibus motion for summary judgment filed on August 2, 2019 argued that Plaintiff's claims are barred by the applicable statute of limitations of her home state of Texas. Defendants amended their motion on September 5, arguing instead that since Plaintiff's suit was filed directly in the MDL, Indiana law applies. Plaintiff hereby adopts and incorporates by reference the Response of Plaintiff's Steering Committee to the Defendants' Renewed Omnibus Motion. Plaintiff is a Texas resident who received surgical placement of her IVC filter at a Texas medical facility. *See*, <u>Exhibit A</u>, ¶¶ 3, 9. Plaintiff has resided in Texas continuously since the placement of her IVC filter. Id., ¶ 9. Plaintiff has undergone imaging procedures at facilities located in Texas and has suffered complications associated with her IVC filter while living in Texas. Id., ¶¶ 7, 9. Plaintiff has also been made aware of such complications while living in Texas. Id., ¶ 9. For these reasons, Plaintiff's claims "originated" in Texas and Texas law governs the Court's analysis as to whether the statute of limitations operates to bar those claims.

            **2.**    **Texas' statute of limitations and application of the "discovery rule."**

In Texas, a two-year statute of limitations governs personal injury actions. *See* Tex. Civ.

Prac. & Rem. Code Ann. § 16.003(a) (Vernon 1986). For purposes of the application of statutes of limitations, a cause of action generally accrues when the wrongful act causes an injury, regardless when the plaintiff learns of the injury. *Moreno v. Sterling Drug Co.,* 787 S.W.2d 351, 356 (Tex. 1990). The discovery rule operates as an exception to statutes of limitations. *Computer Assoc. Int'l., Inc. v. Altai, Inc.,* 918 S.W. 453, 455 (Tex. 1996). When applied, it defers the accrual of a cause of action. *S.V. v. R.V.,* 933 S.W. 1, 4 (Tex. 1996). The rule is a judicially constructed test used to determine when a plaintiff's cause of action accrued. *Weaver v. Witt,* 561 S.W. 792, 794 (Tex.1977). Under the discovery rule such an action accrues, not when the injury becomes certain, but when the claimant should have known of the facts giving rise to the cause of action. *Computer Assoc. Int'l., Inc.,* 918 S.W.2d at 455.

The discovery rule exception applies in cases where "evidence of the injury is objectively verifiable and the nature of the injury incurred is inherently undiscoverable." *Murphy v. Campbell,* 964 S.W.2d 265, 270 (Tex. 1997). The requirement that an injury be "objectively verifiable," means that the presence of the injury and the producing wrongful act cannot be disputed. *See S.V.,* 933 S.W.2d at 7 (explaining cases where the court considered "objectively verifiable"). An injury is "inherently undiscoverable" if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence. *Via Net v. TIG Ins. Co.,* 211 S.W.3d 310, 313–314 (Tex.2006) (quoting *Wagner & Brown, Ltd. v. Horwood,* 58 S.W.3d 732, 734–35 (Tex.2001)). Whether an injury is inherently undiscoverable "is decided on a categorical rather than case-specific basis." *Id.* at 314. This means that Courts "do not determine when a particular injury was actually discovered in a particular case, but rather whether that case is of the type to which the discovery rule applies." *Apex Towing Co. v. Tolin,* 41 S.W.3d 118, 122 (Tex.2001) (citing *S.V.,* 933 S.W.2d at 6).

### 3. Application of the Texas discovery rule to cases involving surgically implanted medical devices.

As noted by Defendants, Texas courts interpreting the statute of limitations and applying the discovery rule have repeatedly found that discovery of a complication associated with a surgically implanted medical device serves as an objective trigger for statute of limitations purposes. For instance, in *Pavich v. Zimmer, Inc*., 157 F.3d 903 (5th Cir. 1997), the plaintiff brought product liability and negligence claims against a medical device manufacturer alleging that metal rods surgically implanted in his spine fractured and caused injury. The district court granted summary judgment for the defendant based on the statute of limitations. The Fifth Circuit affirmed, but held that the discovery rule applied and concluded that the plaintiff's cause of action accrued on the date in which the plaintiff's physician reviewed preliminary intravenous pyelogram imaging and "attributed [plaintiff's] pain to probable breaks in the Harrington rods." *Id*. at *3. In its determination, the Court held that plaintiff's injuries arising out of the spinal rods was both "objectively verifiable" and "inherently undiscoverable."

> We agree that the discovery rule exception is properly applied to the case before us. The nature of [plaintiff's] injury is inherently undiscoverable. There was no sudden trauma that caused the onset of his increased pain. The broken rods were not visible to the naked eye, nor were the breaks readily discernable through palpation. … [H]is injury is also objectively identifiable; x-rays clearly showed the breaks in the rods.

*Id*.

Another Fifth Circuit case, *Brandau v. Howmedica Osteonics Corp*., 439 Fed.Appx 317 (2011), held that the discovery rule applies in a product liability action against the manufacturer of another medical device – an allegedly defective knee prosthesis – because the alleged injury was both objectively verifiable and inherently undiscoverable. As in *Pavich*, the Court held that the discovery rule applied to plaintiff's case and that her cause of action did not accrue until she

7

received an x-ray showing that a component of the device had come loose along with a diagnosis from her doctor that it was the cause of her pain.[1] *Id*. at 321.  In its reasoning, the Court cites to numerous other Fifth Circuit opinions applying the discovery rule to claims arising out of injuries attributable to surgically implanted medical devices. *See, e.g., Porterfield v. Ethicon, Inc.,* 183 F.3d 464, 467 (applying the discovery rule to a products liability claim when plaintiff suffered problems resulting from surgically implanted mesh); *Woodruff v. A.H. Robins Co.,* 742 F.2d 228, 229 (5th Cir.1984) (applying the discovery rule to a products liability claim where plaintiff suffered complications from a defective IUD); *Mann v. A.H. Robins Co.,* 741 F.2d 79, 79–81 (5th Cir.1984) (also applying the discovery rule to a products liability claim where plaintiff suffered complications from a defective IUD); *see also*, *Kosman v. Zimmer Dental, Inc*., 2018 WL 2335358, at *2 (S.D. Tex. Mar. 1, 2018) (holding that plaintiff's cause of action against the manufacturer of a defective dental implant accrued on the date in which x-rays revealed that the implant had fractured.)  In each instance, application of the discovery rule will operate to defer limitations until the plaintiff discovers the injury and its cause, typically through the objective identification by a medical professional and/or through medical imaging.  Defendants forthrightly acknowledge as much, admitting that IVC filter claims such as those alleged by Plaintiff "accrue under Texas law <u>when the complication and/or injury complained of is demonstrated on imaging or otherwise diagnosed in the medical records</u>." Def. Ren. Mot. at p. 23 (emphasis added).  Notably, the Texas Supreme Court has also observed that when more than one separate disease process results from exposure to a particular product, <u>statutes of limitations</u>

8

---

[1] Notably, the Court in *Brandau* also stressed that the determination of whether the injury and its cause are "inherently undiscoverable" is not a case-specific determination but, instead, based upon whether a claimant's injury falls into the <u>category</u> of injuries that have been identified as "inherently undiscoverable" under Texas law. *Id*. at 322.

may run separately for each distinct disease and, thus, the discovery rule does not preclude a plaintiff from recovering for damages for every disease that manifests itself as a result of the exposure. *Child v. Haussecker*, 974 S.W.2d 31 (Tex. 1998); *see also*, *Pustejovsky v. Rapid-American Corp*., 35 S.W. 3d 643, 653 (Tex. 2000) (Applying a variant of the "separate accrual" rule, the Court held that "a person who sues on or settles a claim for a[n] asbestos-related disease with one defendant is not precluded from a subsequent action against another defendant for a distinct asbestos-related condition. The diagnosis of the [distinct] asbestos-related condition creates a new cause of action, and the statute of limitations governing the [distinct] condition begins when a plaintiff's symptoms manifest themselves to a degree or for a duration that would put a reasonable person on notice that he or she suffers from some injury [and] that the injury is work-related.").

### 4. The discovery rule applies to Plaintiff's claims against Defendants.

Plaintiff claims are based upon injury alleged to be attributable to, among other things, the negligent and defective design of (and defective warnings accompanying) a surgically implanted medical device, namely, the IVC filter. It is undisputed that the nature of Plaintiff's injuries is objectively verifiable through diagnostic studies like the CT scan that was performed on April 4, 2019. Furthermore, Plaintiff's injuries arising out of the IVC filter are inherently undiscoverable. Like broken spinal support rods, a defective knee prosthesis or a fractured dental implant, the perforations of Plaintiff's inferior vena cava by the IVC filter – as well as the current proximity of the filter tines to her aorta, renal artery, small bowel and retroperitoneal space – are not readily discernable through sight or touch. For this reason, the discovery rule applies to Plaintiff's claims and operates to defer the accrual of her claims until such time as she is notified through her physician (or other medical diagnostic confirmation) of a complication or injury

9

attributable to her IVC device.

### 5. Plaintiff's claims against Defendants accrued on August 22, 2019 and are not barred by the governing statute of limitations.

Applying the Texas discovery rule, Plaintiff's claims are not barred by governing statute of limitations, which does not expire until August 22, 2021. The first diagnostic confirmation of complications and injuries related to Plaintiff's IVC filter (other than those solely related solely to the issue of retrievability) occurred on August 22, 2019 when the imaging report related to her April 5, 2019 abdominal CT was provided to Plaintiff. As noted above, those complications included perforation of all four IVC tines through Plaintiff's inferior vena cava by 3-4 mm, three of which made contact or near contact with several of Plaintiff's internal organs including her aorta, renal arterial branch and small bowel. *See*, Exhibit D. Plaintiff does not know when these conditions developed. *See*, Exhibit A, ¶ 8. Plaintiff had received no medical diagnosis, opinion, or diagnostic finding pertaining to such complications until receiving a copy of this imaging report. Id. Further, Defendants have no summary judgment evidence that medical imaging conducted prior to August 22, 2019 would have led Plaintiff to discover the newly uncovered complications with the IVC filter. See, *Childs v. Haussecker*, 974 S.W.2d 31 (Tex. 1998) (summary judgment denied because defendants failed to offer evidence that Plaintiff could have earlier discovered earlier he had a work-related injury through a more diligent investigation.) For these reasons, Plaintiff's claims against Defendants arising out of her newly discovered complications and injuries accrued on August 22, 2019, well within Texas' two-year statute of limitations to bring such claims. Plaintiff has identified those adverse outcomes to Defendant in the amendments to "Section V" of her most recently submitted Plaintiff Profile Form and, further, has provided a copy of the radiology report to Defendants. Since Plaintiff's claims arising out of the IVC complications first revealed from

her April 5, 2019 abdominal CT are not barred by Texas' statute of limitations and such claims have been asserted in this case, Defendants' request for summary judgment of Plaintiff Maria Ibarra's claims should be denied.

### C. The Court's limitations analysis under Indiana Law.

As noted previously, after filing a motion for summary judgment claiming that Texas law applied, Defendants amended their motion to argue that Indiana law governed instead. The distinction is of little consequence here since Texas and Indiana discovery rules are substantially similar and both would operate to preclude summary dismissal of Plaintiff's claims; nonetheless, Defendant's argument that Indiana law applies is without merit for the reasons set forth in the Plaintiff Steering Committee's Response to that renewed Motion, which Plaintiff hereby fully incorporates by reference thereto. Yet, even if the Court were to determine that Indiana is controlling in this case, Defendants' request for summary judgment relief should still be denied.

#### 1. Indiana's statute of limitations and application of the discovery rule.

In most respects, the Indiana and Texas statutes of limitations/discovery rules are identical. As in Texas, Indiana requires a plaintiff to commence her product liability suit "within two years after the cause of action accrues." Ind. Code § 33-1-1.5-5. Also as in Texas, Indiana has adopted a discovery rule under which the statute of limitations "begins to run on the date that the plaintiff knew or should have discovered that she suffered an injury or impingement and that it was caused by the product or act of another." *Degusse Corp. v. Mullens*, 744 N.E.2d 407, 410 (Ind. 2001). Indiana courts recognize that the date upon which a plaintiff discovers facts which, in the exercise of ordinary diligence, should lead to the discovery of causation and resulting injury, is often a question of fact. *Van Dusen v. Stotts,* 712 N.E.2d 491, 499 (Ind.1999). A plaintiff's suspicion about the source of injury is generally insufficient to trigger the onset of the limitations. *Id*. at 499;

11

*See* also, *Evenson v. Osmose Wood Preserving Co. of Am., Inc.,* 899 F.2d 701, 705 (7th Cir.1990). However, the limitations period will begin to run when a physician suggests there is a "reasonable possibility, if not a probability" that a specific product caused an injury. *Degussa Corp.,* 744 N.E.2d at 411; *Van Dusen,* 712 N.E.2d at 499.

### 2. Application of the Indiana discovery rule to cases involving drugs and implanted medical devices.

Like Texas, Indiana courts interpreting the statute of limitations and applying the discovery rule have held that discovery of an injury or complication associated with a surgically implanted medical device or pharmaceutical drug product triggers the statute of limitations. For instance, in *In re. Mirena IUD Products Liability Litigation (Truitt)*, 29 F.Supp. 3d 345 (S.D.N.Y 2014), the plaintiff sought and obtained insertion of an IUD device for contraception. Approximately two years later, the plaintiff began experiencing nausea and vomiting and consulted her physician. Subsequent testing revealed that the IUD device had perforated her uterus, migrated into her abdomen and required surgical removal. The plaintiff filed suit against the manufacturer of the device alleging negligence and strict product liability. The defendants moved for dismissal asserting that plaintiff's case was barred by the statute of limitations. Applying Indiana's discovery rule, the court held that the statute of limitations for plaintiff's claims was triggered, at the latest, when her physicians advised her that the IUD device had perforated her uterus and would have to be removed. *Id*. at *354. Acquiring knowledge of these facts was deemed sufficient to trigger the statute of limitations because, according to the Court, "when an IUD is found somewhere in a woman's body where it is not supposed to be—here, Plaintiff's abdomen—and surgery is required to remove it, a diligent individual would know, at the very least, that there was a 'reasonable possibility,' that the IUD harmed her and she should therefore make further inquiry to determine her legal rights. *Id*; *see also*, *Cossman v. DaimlerChrysler Corp.,* 108 Cal.App.4th

370, 133 Cal.Rptr.2d 376, 380 (2003) (under Indiana law, products liability "cause of action accrued ... when doctors told [plaintiff] that [plaintiff] suffered from mesothelioma that was likely caused by exposure to asbestos"); *Withers v. Sterling Drug, Inc.*, 319 F. Supp. 878 (S.D. Ind. 1970) (action by consumer against drug manufacturer to recover for eye injury suffered as a result of drug's use accrued on the date in which consumer was advised by specialist that her eye difficulty was caused by use of the drug).  Once again, these cases demonstrate that, like the discovery rule in Texas, the discovery rule in Indiana will defer accrual of claims arising out of latent injuries or complications attributable to pharmaceutical drugs or implanted medical devices until such time as the plaintiff discovers the injury and its relationship to the product.  Defendants acknowledge as much in admitting that Plaintiff's IVC filter claims "accrue under Indiana law <u>when the complication and/or injury complained of is demonstrated on imaging or otherwise diagnosed in the medical records</u>." Def. Ren. Mot. at p. 16 (emphasis added).

### 3. Plaintiff's claims against Defendants accrued on August 22, 2019 and are not barred by the governing statute of limitations.

Applying the Indiana discovery rule, Plaintiff's claims are not barred by governing statute of limitations, which does not expire until <u>August 22, 2021</u>.  As noted above, the first diagnostic confirmation of complications and injuries related to Plaintiff's IVC filter (other than those solely related solely to the issue of retrievability) occurred on August 22, 2019 when the imaging report related to her April 5, 2019 abdominal CT was provided to Plaintiff.  Also as noted, Plaintiff does not know when these conditions developed and had received no medical confirmation of their existence until receiving a copy of the subject imaging report.  *See*, <u>Exhibit A</u>, ¶ 8.  For these reasons, even if the Court were to determine Indiana law governed in this case, Plaintiff's claims accrued well within Indiana's two-year statute of limitations.  Since Plaintiff's claims arising out

of the IVC complications first revealed from her April 5, 2019 abdominal CT are not barred by Indiana's statute of limitations, Defendants' request for summary judgment should be denied.

### IV.     CONCLUSION & PRAYER

Under either the Texas or Indiana discovery rule, Plaintiff's cause of action against Defendants is deferred until actual discovery of an injury or complication associated with her IVC filter.  Plaintiff did not discover that the tines of her IVC filter had punctured through her inferior vena cava and made contact (or near contact) with her small bowel, aorta, and renal artery branch until August 22, 2019, the date on which she received the imaging report for previously performed abdominal CT scan.  Nor was Plaintiff previously aware that one of the tines of the IVC filter had entered her retroperitoneal space.  Because Plaintiff did not discover such complications/injuries associated with her IVC filter until August 22, 2019, she is well within the statute of limitations to bring claims arising out of those injuries and complications against Defendants.  For these reasons, set forth more fully above, Defendants' Motion for Summary Judgment of Plaintiff claims based on the statute of limitations should be denied.

DATED:  October 3, 2017

Respectfully submitted,

*/s/Charles W. Miller, Esq.*
Charles W. Miller
***HEYGOOD, ORR & PEARSON***
6363 North State Highway 161, Suite 450
Irving, Texas 75038
Phone:  214-237-9001
Fax:  214-237-9002
charles@hop-law.com
***Counsel for Plaintiff***

**CERTIFICATE OF SERVICE**

I hereby certify that on October 3, 2019, a copy of the foregoing was served electronically and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.

*/s/ Charles W. Miller*