IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

---

IN RE: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

---

This Document Relates to Plaintiff(s):
LORETTA SCOTT
Civil Case #1:19-cv-01586-RLY-TAB

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' RENEWED
OMNIBUS MOTION FOR SUMMARY JUDGMENT BASED ON APPLICABLE
STATUTE OF LIMITATIONS FROM FIVE STATES**

---

Plaintiff Loretta Scott files this Response in Opposition to Cook Defendants' Renewed

Omnibus Motion for Summary Judgment Based on Applicable Statute of Limitations from Five

States (Doc. 11725).  Ms. Scott respectfully asks this Court to deny Defendants' Motion for

multiple reasons.  First, under choice of law rules, Indiana law does not apply.  Second, Plaintiff's

claims are not time barred under the laws of this jurisdiction or the laws of her home state

Michigan. Third, Defendants cannot support its assertions factually because they are not entitled

to simply rely upon the Case Category Submission as grounds for dismissal.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      Plaintiff was implanted with the Cook Gunther Tulip IVC filter on January 18, 2008.

Short Form Complaint, 2 ¶ 10, 3 ¶ 11 (Doc. 1).

2.      Plaintiff's implant surgery was in Michigan.  *Id.* at 3 ¶ 12.  At the time of the implant

surgery Plaintiff resided in Michigan, and Plaintiff currently resides in Michigan.  *Id.* at 2 ¶¶ 5-6.

1

3.       Plaintiff was injured by the Cook IVC filter on January 22, 2019, when a CT Scan documented that the medial struts extended beyond the margins of the IVC and that the IVC filter was tilted.  CT Scan, Jan. 22, 2019 (attached as Exhibit 1).

4.       Plaintiff filed her Short Form Complaint against Cook on April 19, 2019.

5.       Cook has not taken a single deposition, served any interrogatories, or reviewed all of Plaintiff's medical records.  *See generally* Defendant's Memorandum, Doc. 11726.

### RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS

Cook's statement of undisputed facts, as alleged in its memorandum of law in support of this Motion, does not support summary judgment. *See* Doc. 11726, at 5-9. In response to Cook's statement of undisputed facts, Plaintiff states the following:

1.       On October 2, 2018, the Court entered its Categorization and Screening Order, Doc. 9322, ordering all MDL plaintiffs to categorize their cases in one of seven categories and to support those selections with specific medical records.

**RESPONSE:** Plaintiff objects to the extent this statement is irrelevant to statute of limitations defense in this instant matter. Otherwise, subject to and without waiver of said objections, Plaintiff admits.

2.       Through subsequent orders, the Court set deadlines (and later gave multiple extensions) and adopted the form that plaintiffs were required to use. *See* Orders, Docs. 9638, 9907 & 10617.  In pertinent part, the Case Categorization From (Doc. 9638-1) stated that "plaintiff[s] may select more than one of the seven categories outlined in the Categorization Form, with the understanding that only the 'highest' alleged category will be considered for purposes of the census ordered by the Court" and that "each category alleged requires a specific medical record." *See* Doc. 9638-1.

2

**RESPONSE:** Plaintiff objects to the extent this statement is irrelevant to statute of limitations defense in this instant matter. Otherwise, subject to and without waiver of said objections, Plaintiff admits.

3.     The Categorization Form further required that counsel certify that "the categorization is based on a review of the available medical records including imaging reports and records" and that "submission of the specific medical record(s) … are counsel's certification that the outcome, complication, or injury represented in [the Form] is the proper categorization for Plaintiff's case to the best of counsel's knowledge and belief." *Id.* at 4.

**RESPONSE:** Plaintiff objects to the extent this statement is irrelevant to statute of limitations defense in this instant matter. Otherwise, subject to and without waiver of said objections, Plaintiff admits.

4.     All Plaintiffs listed in Exhibit A have provided Categorization Forms and supporting records, and they are categorized in the census in Categories 3 to 7. Category 1 cases were subject to immediate dismissal under the Categorization and Screen Order and were subsequently dismissed (Doc. 10588), and nearly all Category 2 cases have also been dismissed as a result of voluntary dismissals and motion practice.

**RESPONSE:** Plaintiff objects to the extent this statement is irrelevant to statute of limitations defense in this instant matter. Otherwise, subject to and without waiver of said objections, Plaintiff is unable to admit or deny, and therefore denies.

5.     Due to the number of cases subject to this motion, the Cook Defendants have reviewed Plaintiffs' short-form complaints, Categorization Forms, and supporting medical records, and summarized the relevant information from those materials in Exhibit A.

**RESPONSE:** Plaintiff objects to the extent this statement is irrelevant to statute of limitations defense in this instant matter. Otherwise, subject to and without waiver of said objections, Plaintiff is unable to admit or deny, and therefore denies.

6.      Exhibit A provides the following information for all 144 Plaintiffs' cases:

• Plaintiff's Name;

• Plaintiff's Case Number;

• Plaintiff's Home State (as denoted by the state of current residence and state of alleged injury in the Plaintiff's filter;

• The Plaintiff's highest category in the census;

• A short description of the categories selected in each Plaintiff's Categorization Form, along with the dates on the specific medical record(s) submitted in support of those claim; and

• The filing date of Plaintiff's case.

**RESPONSE:** Plaintiff objects to the extent this statement is irrelevant to statute of limitations defense in this instant matter. Otherwise, subject to and without waiver of said objections, Plaintiff is unable to admit or deny, and therefore denies.

7.      Of the 144 cases at issue here, 143 Plaintiffs represent in their complaints that they reside in Alabama, Idaho, Michigan, Texas, or Virginia and allege that their injuries occurred in their home states. Although Plaintiff Sandra Jackson left the state-specific fields of her short-form complaint blank, all available records indicate that she is from Virginia and underwent all her relevant medical care in Virginia.11 Additionally, all 144 Plaintiffs filed their cases in this Court; none of them were transferred from other districts by the JPML.

**RESPONSE:** Plaintiff objects to the extent this statement is irrelevant to statute of limitations defense in this instant matter. Otherwise, subject to and without waiver of said objections, Plaintiff is unable to admit or deny, and therefore denies.

8.    In each of the cases on Exhibit A involving Plaintiffs from Alabama, Idaho, Texas and Virginia, the date on which each Plaintiff first filed his or her lawsuit is more than two years after the date of the injury that Plaintiff relies on in the medical record(s) the Plaintiff submitted as evidence of injury with that Plaintiff's categorization form.

**RESPONSE:** Plaintiff objects to the extent this statement is irrelevant to statute of limitations defense in this instant matter. Otherwise, subject to and without waiver of said objections, Plaintiff is unable to admit or deny, and therefore denies.

9.    In each of the cases on Exhibit A involving Plaintiffs from Michigan, the date on which each Plaintiff filed his or her action is more than three years after the date of the injury that Plaintiff relies on in the medical record(s) that the Plaintiff submitted as evidence of injury with that Plaintiff's categorization form.

**RESPONSE:** Plaintiff objects to the extent this statement is irrelevant to statute of limitations defense in this instant matter. Otherwise, subject to and without waiver of said objections, Plaintiff is unable to admit or deny, and therefore denies.  Further, Plaintiff possesses no information regarding any of the other plaintiffs or cases referenced in Defendants' Motion and attached exhibits.  Plaintiff specifically denies that her case was filed more than three years after the date of her 2019 injury.

10.    With respect to the 28 Virginia Plaintiffs subject to the motion, the dates in Exhibit A indicate that their claims accrued before July 1, 2016.

**RESPONSE:** Plaintiff objects to the extent this statement is irrelevant to statute of limitations defense in this instant matter and to this individual plaintiff. Otherwise, subject to and without waiver of said objections, Plaintiff is unable to admit or deny, and therefore denies.

11.     As part of summary judgment briefing on the warranty claim in the Gage case, the Cook Defendants submitted the Affidavit of Kevin brines and a copy of the "Cook Defendants' Memorandum in Support of Its Second and Renewed Motion for Summary Judgment, Doc. 7805, pp. 17-18 (Brines Affidavit), p. 28 (copy of terms and conditions). Mr. Brines explained in his Affidavit that it "is the ordinary business practice of Cook" to include the terms and conditions as part of ever filter sale. *Id.* at 18, 5. He also identified the terms and conditions in effect at the time of Mr. Gage's filter sale in April 2011. *See id.* Those terms and conditions include the following relevant provisions: (1) an Indiana choice-of-law rules provision, (2) disclaimer of implied warranties, and (3) reduction of the statue of limitations on implied warranties to one year and one day, as permitted by the Indiana UCC. *See id.* at 28.

**RESPONSE:** Plaintiff objects to the extent this statement is irrelevant to statute of limitations defense in this instant matter and calls for a legal conclusion to which no response is required. Otherwise, subject to and without waiver of said objections, Plaintiff is unable to admit or deny, and therefore denies.

12.     With respect to Plaintiffs from the three states that recognize independent breach of warranty claims in the personal injury context – Alabama, Michigan, and Texas – there are 10 Plaintiffs who filed their claims within four years of the date of the filter placement procedures: Michigan Plaintiffs Diondrae Boone, George Hubert, and Walter Simpson; and Texas Plaintiffs Audra Boggs, Jasmine Bowen, Marcella Brady, Justin Gonzalez, Salvador Lozano, Sharon Sharp, and Estate of Annette Weaver. *See* Exhibit A. However, all 10 of these Plaintiffs received

6

their filters after April 2011, and their filters were accompanied by the "Cook Invoice Terms and Conditions" that reduced the limitations period for claims of breach-of-warranty claims to one year and one day. *See* Exhibit A (listing placement dates); Doc. 7805, pp. 17-18, 28.

**RESPONSE:** Plaintiff objects to the extent this statement is irrelevant to statute of limitations defense in this instant matter and calls for a legal conclusion to which no response is required. Otherwise, subject to and without waiver of said objections, Plaintiff is unable to admit or deny, and therefore denies.

## STANDARD OF REVIEW

"A district court should grant summary judgment only if the pleadings, depositions, answers to interrogatories, admissions, and affidavits 'show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Miller v. A.H. Robins Co.*, 766 F.2d 1102, 1104 (7th Cir. 1985) (quoting Fed. R. Civ. P. 56(c)).  In evaluating a motion for summary judgment, the court must view the facts and make all reasonable inferences that flow from them in a light most favorable to the non-moving party. *Ziliak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003).

Whether a claim has been brought within the relevant period of limitations presents an issue of state law. *See In re Bridgestone/Firestone Inc. ATX ATXII, Wilderness Tires Prod. Liab. Litig.*, 2002 WL 31689264, at *2 (S.D. Ind. Nov. 20, 2002) ("As a court sitting in diversity, we must look to state law in deciding all matters of substance, including the operation of the relevant statutes of limitations.") (citing *Horbach v. Kaczmarek*, 288 F.3d 969, 976 (7th Cir. 2002)). This Court previously ruled that it would treat foreign direct filed cases as if they were transferred from the judicial district sitting in the state where the case originated. *See In re*

*Cook Medical, Inc.*, 1:14-ml-02570-RLY-TAB, MDL No. 2570, 2017 WL 2362003, *2 (citing *In re Yasmin*, No. 3:09-md-2100-DRH-PMF, MDL No. 2100, 2011 U.S. Dist. LEXIS 39820, at *18, 2011 WL 1344534 (S.D. Ill. April 11, 2011)).  The Southern District of Illinois held that "the best approach is to treat foreign direct filed cases as if they were transferred from the judicial district sitting in the state where the case originated." *In re Yasmin*, No. 3:09-md-2100-DRH-PMF, MDL No. 2100, 2011 U.S. Dist. LEXIS 39820, at *18 (S.D. Ill. April 11, 2011). This Court adopted this approach, "as it is in keeping with the rule that the transferee court applies the law of the state in which the transferor court is located." *In re Cook Medical, Inc.* (citing *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) ("[W]here the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have applied if there had been no change of venue. A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms.")).  The Court further noted, "it would be an odd result to subject plaintiffs to [Indiana] law simply because they took advantage of the direct filing procedure—a procedure that provides benefits to all parties and preserves judicial resources." *Id.* (quoting *In re Bausch & Lomb, Inc.*, Nos. 2:06-cv-2659-DCN and 2:06-cv-2716-DCN, MDL No. 1785, 2007 WL 3046682, at *3 (D.S.C. Oct. 11, 2007)).

Plaintiff further incorporates by reference the brief filed by the Plaintiffs' Steering Committee to demonstrate how Indiana's choice of law rules and Indiana law do not apply to the cases at issue. *See*, e.g., *Dobbs v. DePuy Orthopedics, Inc.,* 842 F.3d 1045, 1048 (7th Cir. 2016); *In re Watson Fentanyl Patch Prods. Liab. Litig.,* 977 F.Supp.2d 885, 888-89 (N.D. Ill. 2013) *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices and Prods. Liab. Litig.,* 2011 WL 1375011, at *5 (S.D. Ill. April 12, 2011).

Because this case originated in Michigan, the Western District of Michigan is considered the Transferor Court for choice of law purposes. *See id.* Accordingly, the Michigan statute of limitations applies.

## ARGUMENT

**I.    Ms. Scott Filed Her Claims Within the Applicable Statute of Limitations.**

In its Motion, Cook incorrectly asserts that Plaintiff filed her case "more than three years after the date of the injury." Cook Defendants' Memorandum in Support of Their Renewed Omnibus Motion for Summary Judgment Based on Applicable Statute of Limitations, 8 ¶ 9 (Doc. 11726) (hereinafter "Memorandum"). Cook's general omnibus Motion does not address the actual medical records in this case or specifically Ms. Scott. In support of its Motion, Cook references a spreadsheet that *Cook created* and which contains *incorrect and unsupported allegations*. Cook does not present *any* actual evidence to support its Motion.

As demonstrated by the CT Scan attached to this Response, in addition to her original injury related to the inability to remove her filter, Ms. Scott was also injured in January 2019 when the her CT Scan reflected that the Cook IVC filter struts extended beyond its margins and when the filter tilted. Cook ignores this evidence. Cook has presented no evidence suggesting that Plaintiff suffered these injuries any earlier than January 2019. Plaintiff promptly filed her case three months after suffering these injuries. Accordingly, Plaintiff's action and all of her claims are timely here, regardless of whether the Court applies the Michigan or Indiana statute of limitations.

Defendants' Motion as directed to Ms. Scott is based solely on Defendants' contention that her action accrued in 2008. That, however, is not Plaintiff's claim as she suffered an additional and distinct injury in January 2019. No evidence exists to demonstrate that the filter

struts extended beyond its margins or was tilted *prior to 2019*.  The only undisputed fact is that Ms. Scott had an image on January 22, 2019, which showed that the struts of the Cook IVC filter extended beyond their margins and that the filter was tilted.  For purposes of Defendants' Motion, the date of injury is January 22, 2019 – well within two years of Ms. Scott's filing date.

Accordingly, the evidence viewed in the light most favorable to Ms. Scott is that she suffered an injury due to filter failure on January 22, 2019.  Defendants have not presented any evidence – admissible or otherwise – that the filter had failed prior to that date.  Ms. Scott's claims are timely, and Cook's Motion should be denied.

## II.     Ms. Scott's Claims Do Not Fail As a Matter of Law.

In the context of this Motion for Summary Judgment, Defendant confusingly makes flawed arguments tantamount to a challenge to the sufficiency of Plaintiffs' claims. *See* Doc. 11726, at 24-34. This is not appropriate in the context of this Motion. Defendant did not file a motion pursuant to Rule 12(b)(6) or Rule 12(c) and therefore waived its challenges as to the sufficiency of Plaintiff's claims. Furthermore, even if Defendant's arguments are deemed proper in the context of this Motion for Summary Judgment, this Motion should be denied as premature as discovery is ongoing.

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A Rule 12(c) motion is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Lodholtz v. York Risk Servs. Grp.*, 778 F.3d 635, 639 (7th Cir. 2015). To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For purposes of ruling on the Defendant's Motion, the Court should accept Plaintiffs' well-pleaded factual allegations as true and construe all reasonable inferences in her favor. *See Tierney v. Advocate Health & Hosps. Corp.*, 797 F.3d 449, 451 (7th Cir. 2015).

  **A.  Ms. Scott Sufficiently Pleaded a Claim For Breach of Express Warranty.**

  The Court need not address Cook's remaining arguments, as the entire Motion fails to address the 2019 CT Scan evidence.  Nonetheless, Ms. Scott's breach of express warranty claim is timely and supported under applicable Michigan law.

  In Michigan, an "express warranty is created by a seller by setting forth a promise or affirmation, description, or sample with the intent that the goods will conform." *Scott v. Illinois Tool Works, Inc.*, 217 Mich. App. 35, 42 (Mich. Ct. App. 1996).  An express warranty can be created when "A description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."  Mich. Comp. Laws Ann. 440.2313(1)(b).

  The Gunther Tulip Vena Cava Filter Patient Guide on page 6 claims that "the Gunther Tulip Vena Cava Filter is often used as a permanently implanted device."   (attached hereto as Exhibit 2 page 6). The guide further states that "the Gunther Tulip Vena Cava Filter is safe and effective as either a permanent or temporary device."  The company expressly warranted in writing that the device is safe and approved to be used as a permanent device.  In its Motion, Cook does not deny that an express warranty was created here.

  The breach of warranty occurred here in January 2019.  "A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance

the cause of action accrues **when the breach is or should have been discovered**."  Mich. Comp.

Laws Ann. § 440.2725(2) (emphasis added).  A warranty extends to future performance when it

expressly defies the future period to which it applies.  *Grosse Pointe Law Firm, PC v. Jaguar*

*Land Rover North America, LLC*, 894 N.W.2d 700, 703 (Mich. App. 2016).  Here, Cook's

express warranty states that the IVC filter is *safe* for *permanent* use.  Cook's product was sold to

Ms. Scott with the expectation that it would be permanently implanted in her body, such that the

warranty necessarily extended to future performance.  No reasonable patient would choose to

have a product permanently implanted in her body if the manufacturer did not provide such

assurances.  In its Motion, Cook does not argue that the express warranty does not extend to

future performance.

Other than erroneously arguing that Ms. Scott's warranty claims are untimely, Cook does

not directly challenge Ms. Scott's claim for breach of express warranty.  Cook references the

Court's ruling in the Emily Apple case where the Court concluded that the plaintiff had not

established a breach of warranty claim *under Texas law*.  *See* Memorandum at 25.  Here,

however, Cook provides no legal authority or analysis regarding the requirements for a breach of

express or implied warranty *under Michigan law*.  The Court's holding under Texas law is not

controlling for a Michigan plaintiff, and Cook fails to actually challenge the claim here.

Ms. Scott's claim for express warranty is timely and sufficient.  Cook's Motion should be

denied.

### B.    Ms. Scott Sufficiently Pleaded a Claim For Breach of Implied Warranty.

Ms. Scott has adequately alleged a claim for breach of implied warranty.  "Implied

warranty claims do not require the plaintiff to specify the type of defect alleged: the mere

showing that something went wrong consistent with the existence of a defect is sufficient." *Fleck*

*v. Titan Tire Corp*, 177 F. Supp. 2d 605, 621 (E.D. Mich. 2001); *see also Curry v. Meijer, Inc.*, 780 N.W. 2d 603, 606 (Mich. App. 2009) (noting that plaintiff is not required "to establish negligence to recover under a breach of implied warranty theory") (citing *Piercefield v. Remington Arms Co., Inc.*, 133 N.W. 2d 129 (Mich. 1965)).

The Master Complaint establishes a number of defects present in the Cook IVC filters, and the January 2019 CT Scan establishes that "something went wrong." *See Fleck*, 177 F. Supp. 2d at 621. Accordingly, Ms. Scott has sufficiently alleged a claim for breach of implied warranty. In its Motion, Cook does not directly challenge the sufficiency of Ms. Scott's claim for breach of implied warranty.

Instead, Cook refers to evidence presented in the *Gage* bellwether case where the plaintiff was implanted with a Cook IVC filter in 2011. *See* Memorandum at 29-30. In that case, Cook submitted evidence that a terms and conditions sheet was included with the purchase of the product *in 2011*. Here, Cook has presented no evidence that the terms and conditions were included with its IVC filters *in 2008* when Ms. Scott purchased the product and had it implanted or what those terms and conditions were.

Further, even if Cook had presented some evidence here – which it has not – Cook's attempt to limit the implied warranty would be unconscionable and unenforceable. Michigan courts have discussed whether a limitation is unconscionable:

> The examination of a contract for unconscionability involves inquiries for both procedural and substantive unconscionability. Accordingly, there is a two pronged test for determining whether a contract is unenforceable as unconscionable, which is stated as follows: (1) What is the relative bargaining power of the parties, their relative economic strength, the alternative sources of supply, in a word, what are their options?; (2) Is the challenged term substantively reasonable? Reasonableness is the primary consideration.

*Hubscher & Son, Inc v. Storey*, 578 N.W. 2d 701, 703 (Mich. App. 1998) (internal citations and quotations omitted). Here, Cook's purported attempt to limit the warranty to one year for a

13

medical device permanently implanted in a patient's body is both procedurally and substantively unconscionable.  As Ms. Scott was forced to undergo a procedure due to her deteriorating health, she did not have the option of choosing another device or foregoing the purchase of Cook's product.  She therefore had no bargaining power in this transaction such that the *absolute* limitation of the warranty would be procedurally unconscionable.  Regarding the second inquiry, the limitation would be substantively unreasonable because it would completely remove the warranty for a medical device that was permanently implanted in a person's body.

### C.    Ms. Scott's Consumer Fraud Claims Are Viable.

As discussed above, Ms. Scott timely filed all of her claims, including the consumer fraud claim, within months of suffering an injury in 2019.  Defendant cites *Home Owners Ins. Co. v. ADT LLC*, 109 F.Supp.3d 1000, 1009 (E.D. Mich. 2015) in support of its argument challenging Plaintiff's consumer fraud claim, but fails to provide sufficient context of its argument. *See* Doc. 11726, at 31-32. Defendant fails to specify if this ruling was entered in a motion for summary judgment or entered in a Rule 12(b)(6) or 12(c) motion. Thereafter, Defendant confusingly challenges Plaintiffs' Master Complaint which is inappropriate within the parameters of a case-specific challenge.  Defendants have failed to establish that summary judgment is appropriate on this claim.

### D.    Ms. Scott's Punitive Damages Claim Is Viable.

To the extent Plaintiff's punitive damages claim is derivative in nature, Defendant's Motion as to this claim should be denied since all of Plaintiff's claims survive.  In addition, Michigan recognizes exemplary damages are appropriate for the same sort of conduct that has been held to give rise to punitive damages in states where punitive damages are allowed.  *See Yamaha Motor Corp., U.S.A. v. Tri-City Motors & Sports, Inc.*, 171 Mich. App. 260, 281 (Ct.

App. Mich. 1988) ("Generally, exemplary damages are recoverable in damage actions which are based upon tortious acts involving malice, fraud, insult, or wanton and reckless disregard of the plaintiff's rights. Such damages are compensatory, not punitive, in nature."); *see also, Cooley v. Lincoln Elec. Co.*, 776 F.Supp.2d 511, 522 (In MDL products liability action, MDL judge noted that "if the Court finds the evidence sufficient to sustain a punitive damages award under one state's law, that conclusion normally would compel a similar finding under the law of any other state with the same or less strict legal standards for an award of punitive damages."). The facts here are sufficient to give rise to exemplary and punitive damages under Michigan law.

## III.    Defendants' Fraudulent Concealment Defeats Its Statute of Limitations Defense.

In addition, Plaintiff has alleged fraudulent conduct on the part of Cook. Plaintiff's Master Complaint in this case contains numerous allegations that the Cook Defendants had knowledge of the defects with its IVC Filters yet failed to warn doctors and patients. *See* Master Complaint at ¶¶ 3, 4, 46, 50, 52, 55, 56, 57, 58, 77, 81-88, 91, 95, 103-106, 113-120.  Moreover, the tolling provision included in the Master Complaint at ¶¶195-200 support Plaintiff's claims that Cook's withholding of pertinent information prevented Plaintiff from discovering the cause of her injuries.  This doctrine estops a defendant from utilizing the statute of limitations as a defense when they have committed fraud:

> The doctrine of fraudulent concealment operates to estop a defendant from asserting a statute of limitations defense when that person, by deception or a violation of a duty, has concealed material facts from the plaintiff thereby preventing discovery of a wrong. Thus, equitable estoppel can arise either from active efforts to conceal the malpractice or from failure to disclose material information when a fiduciary or confidential relationship exists between the physician and patient. The physician's failure to disclose that which he knows, or in the exercise of reasonable care should have known, constitutes constructive fraud.

15

*Hughes v. Glaese*, 659 N.E.2d 516, 518 (Ind. 1995); *see also, Hospital Corp. v. Hiland*, 547 N.E.2d 869, 873 (Ind. App. 1989); *Cacdac v. Hiland*, 561 N.E.2d 758 (Ind. 1990); *Van Dusen v. Stotts*, 712 N.E.2d 491 (Ind. 1999). When the concealment is active, the period of estoppel is not affected by the date of termination of the relationship but continues for a reasonable time after "the plaintiff *discovers the alleged malpractice or discovers information* which in the exercise of reasonable diligence would lead to discovery of the malpractice." *Hughes*, 659 N.E.2d at 518 (emphasis added, citation omitted).

Allegations of Cook's fraud have been proffered since the onset of this litigation. For example, Plaintiffs' Master Complaint contains the following averments:

44. While not inclusive of all medical studies published during the relevant time period, the above references show that the Defendants *failed to disclose* to physicians, patients and/or Plaintiffs that its Cook Filters were subject to breakage, tilt, inability of removal, and migration even though they knew or should have known the same was true.

45. At all times relevant hereto, the Defendants continued to promote the Cook Filter as safe and effective even when inadequate clinical trials had been performed to support long or short to safety and/or efficacy.

scientifically knowable dangers and risks associated with the Cook Filters, as aforesaid.

. . .

114. Defendants engaged in *unfair, unconscionable, deceptive, fraudulent and misleading* acts or practices in violation of all states' consumer protection laws, identified below.

115. Through its *false, untrue and misleading* promotion of Cook's IVC Filters, Defendants induced Plaintiffs to purchase and/or pay for the purchase of Cook's IVC Filters.

116. Defendants *misrepresented the alleged benefits and characteristics of Cook's IVC Filters; suppressed, omitted, concealed, and failed to disclose* material information concerning known adverse effects of Cook's IVC Filters; misrepresented the quality and efficacy of Cook's IVC Filters as compared to much lower-cost alternatives; misrepresented and advertised that Cook's IVC Filters were of a particular standard, quality, or grade that they were not; misrepresented

16

Cook's IVC Filters in such a manner that later, on disclosure of the true facts, there was a likelihood that Plaintiffs would have opted for an alternative IVC Filter or method of preventing pulmonary emboli.

117. Defendants' conduct created a likelihood of, and in fact caused, confusion and misunderstanding. Defendants' conduct *misled, deceived*, and damaged Plaintiffs, and Defendants' fraudulent, *misleading, and deceptive* conduct was perpetrated with an intent that Plaintiffs rely on said conduct by purchasing and/or paying for purchases of Cook's Filters. Moreover, Defendants knowingly took advantage of Plaintiffs, who were reasonably unable to protect their interests due to ignorance of the harmful adverse effects of Cook's IVC Filters.

118. Defendants' conduct was *willful, outrageous, immoral, unethical, oppressive, unscrupulous, unconscionable,* and substantially injurious to Plaintiffs and offends the public conscience.

Doc. 213 Filed 01/30/15 (emphasis added). These averments were supported with evidence

disclosed at the Brand trial that began January 15, 2019 (1:14-ML-2570). For example:

My personal opinion is, if the new is not considered safe, the current should be stopped, based on theoretical calculations and testing.

We are trying to get some knowledge of the movement of a cava with an implanted filter, but nobody seems to have a dynamic evaluation.

To me it is very important that we at WCE can have the same conclusion as what was send to the FDA.

We do not want to hide that the filter broke at a test at a clinical relevant diameter, but to use the result to prove the safety….

Trial Exhibit PX-1148 (attached hereto as Exhibit 3).

… the Celect Filter may increase the risk of migration during use compared to the Tulip.

. . .

"Without further detailed analysis, it was my conclusion that the new filter would be unlikely to fulfil the conformity assessment requirements unless some supportive human clinical data is established"

. . .

The risk analysis and the clinical evaluation have identified some safety concerns associated with the new design of the filter. The literature has been reviewed extensively, and discussions have been going on for the past 3 years. However, to

date it has not been possible to find any clear evidence of the existing available data that could clarify and justify the safety risks identified. If you can provide some new evidence or inputs which can clarify these safety concerns, we would be happy to take these inputs into considerations [sic].

Trial Exhibit PX-1099 (attached hereto as Exhibit 4).

Q Now, you told this jury a couple of days ago, essentially, that you believed the email message that attached this manuscript, that it was an effort by upper management -- by upper management to hide a picture of the sheep aorta that had perforated, correct?

A And that was my opinion.

January 17, 2019 Trial Testimony of Harlan M. Krumholz, M.D., 1079:23 – 1080:3 (attached hereto as Exhibit 5).

Q -- can you explain -- you've already explained the concordance between Dr. Timperman and Dr. Gordon. There's obviously a discrepancy -- well, first of all, there's a big discrepancy between what Cook told the FDA and what all three of these sets of doctors found. Would you agree?

A That's true.

January 15, 2019 Trial Testimony of Harlan M. Krumholz, M.D., 577:18-23 (attached hereto as Exhibit 5).

A They concluded that such a trial would be feasible, that in their -- based on what they found, they said, yeah, this went around the block. We think there's no reason to think it can't work. You could do it.

Q So did Cook then sponsor or conduct a larger randomized-control trial on the Celect after they determined it was feasible?

A Not that I'm aware.

January 16, 2019 Trial Testimony of Harlan M. Krumholz, M.D., 709:2-9 (attached hereto as Exhibit 5).

Let's just put on the screen for a moment Plaintiff's Exhibit 1841.

This is a document we discussed yesterday regarding the observations -- a summary of observations from the OUS clinical investigators, including observations of 8, 6, 10, 5, and greater than 3 millimeters outside the IVC. In this letter from April of

18

2007, did Cook disclose this information regarding these struts outside the wall from the OUS study to the FDA?

A They did not.

Q Are you aware, based on your review of the communications between Cook and the FDA, of any communication at any time where Cook revealed to the FDA that there were these multiple struts outside the wall between 3 and 10 millimeters?

A I'm not aware of any communication in which they told the FDA that there had been these penetrations described by their site investigators.

January 16, 2019 Trial Testimony of Harlan M. Krumholz, M.D., 630:19 – 631:10 (attached hereto as Exhibit 5).

A No, it's not possible to make an informed decision because some of the key information was not in the public domain.

Q Known to Cook, but not disclosed?

A That's right.

January 16, 2019 Trial Testimony of Harlan M. Krumholz, M.D., 954:23 – 955:1 (attached hereto as Exhibit 5).

Q In the 2009 time frame, did doctors know the dangers that the Celect posed in terms of perforation and -- perforation? Was that disclosed by Cook?

A No.

Q Was there publicity in 2009 to put doctors on alert that the Celect filter had this tendency to perforate the vena cava –

A No.

Q -- at a high rate?

A No.

January 16, 2019 Trial Testimony of Harlan M. Krumholz, M.D., 955:18 – 956:2 (attached hereto as Exhibit 5).

Q Have you read the final reported of OUS?

A Yes, sir.

Q Does it show fracture --

A No, sir.

Q -- that particular filter?

A It doesn't mention any fracture, sir.

Q Did they disclose that?

A No, sir.

January 22, 2019 Trial Testimony of Gregory I. Gordon, M.D., 1674:25 – 1675:7 (attached

hereto as Exhibit 5). These documents and portions of trial testimony are just a mere smattering

of evidence showing Cook committed fraud upon the medical community.

Michigan law supports a claim for fraudulent concealment to toll the statute of

limitations, allowing a plaintiff to bring an action within two years of when the claim was or

should have been discovered:

> If a person who is or may be liable for any claim fraudulently conceals the existence
> of the claim or the identity of any person who is liable for the claim, the action may
> be commenced at any time within two years after the person who is entitled to bring
> the action discovers, or should have discovered, the existence of the claim or the
> identity of the person who is liable for the claim.

Mich. Comp. Laws Ann. 600.5855. Thus, under Michigan law relating to products liability, a

cause of action accrues when a plaintiff discovers, or should discover through reasonable

diligence, the possible cause of action. *Roseville Plaza Ltd. Partnership v. U.S. Gypsum Co.*, 31

F.3d 397 (C.A.6 (MI),1994). "[F]raudulent concealment means employment of artifice, planned

to prevent inquiry or escape investigation, and mislead or hinder acquirement of information

disclosing a right of action." *De Haan v. Winter*, 241 N.W. 923 (Mich. 1932). Cook is guilty of

fraudulent concealment.

**IV.**      **Cook Cannot Rely on the Case Categorization Form.**

Cook is moving for summary judgment on an affirmative defense and therefore carries the initial burden of production to prove its assertion with the types of record evidence listed in Federal Rule of Civil Procedure 56(c)(1). Because Cook failed to support its allegation with admissible record evidence, it is procedurally improper and must therefore be denied. *See* F.R.C.P. 56(c)(1)(B) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence").

Federal Rule of Civil Procedure 56 imposes an initial burden of production on the party moving for summary judgment. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party bears the burden of persuasion on an issue at trial, it must "lay out the elements of the claim, cite the facts which it believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *Hotel 71 Mezz Lender LLC v. National Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015). Where the moving party fails to meet its strict burden, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992). The statute of limitations is an affirmative defense, and the party asserting an affirmative defense bears the burden to prove that defense. *See McLaughlin Equip. Co. v. Newcourt Credit Group, Inc.*, 2004 U.S Dist. LEXIS 13939, *11-12 (S.D. Ind. Feb. 18, 2004) (noting the statute of limitations is an affirmative defense for which the defendant bears the burden of proof). In the present case, Cook maintains the burden of proof as to its statute of limitations defense. Federal Rule of Civil Procedure 56 requires Cook to support its factual assertion by pointing to materials in the record. Fed. R. Civ. Proc. 56 (c).

The only evidence Cook introduced in support of its Motion for Summary Judgment is an incomplete summary of Plaintiff's Case Categorization Form. Importantly, the Case Categorization Form is not admissible and is not to be considered for any purpose other than complying with the Court's screening order and bellwether selection plan. *See* Case Categorization Form, Doc. 9638-1 (emphasis added). Accordingly, the Case Categorization Form is not evidence and should not be considered by the Court in ruling on the Motion for Summary Judgment.

Because Cook has failed to introduce any admissible record evidence it has failed to meet its burden of production under Fed. R. Civ. Proc. 56 and its Motion must therefore be denied.

## V.    Cook's Motion for Summary Judgment is Premature.

Cook's Motion for Summary should be denied as premature. In the present case, CMO 4 prevented the parties from conducting fact specific discovery beyond the Plaintiff Profile Form and the Defendant Profile Form. *See* Third Amended CMO 4, Doc. 4226 at ¶2(c). As a general rule, a party must be given some opportunity to conduct discovery before the Court rules on a motion for summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery"); *Costello Porter v. Providers Fidelity Life Ins.*, 958 F.2d 836, 839 (8th Cir. 1992) ("Summary Judgment is inappropriate until [the non-movant] has had an adequate opportunity to conduct discovery"); *Columbia Ins. Co. v. Integrated Stealth Tech., Inc.*, 16-CV-3091, 2017 WL 2766435, at *2 (C.D. Ill. June 26, 2017) (holding that Defendant's Motion for Summary Judgment is premature because plaintiff had little opportunity to conduct fact discovery and plaintiff intended to retain an expert); *Vaughn v. United States SBA*, 65 F.3d 1322 at n.1 (6th Cir. 1995) ("[A] defendant's motion for summary judgment pursuant to FRCP 56(b) ordinarily

cannot be considered until plaintiff has had some opportunity to conduct discovery.").

      Plaintiff respectfully requests that the Motion for Summary Judgment be denied until Plaintiff's counsel has had an opportunity to conduct limited case-specific discovery. Federal Rule of Civil Procedure 56(d), authorizes this Court to deny a Motion for Summary Judgment as premature when Plaintiff has not had adequate time to complete discovery.  Additional discovery will allow Plaintiff's counsel to further develop facts support fraudulent concealment allegations; facts supporting when Plaintiff was injured; and facts supporting when Plaintiff's IVC filter failed.

## **CONCLUSION**

      For the forgoing reasons, Plaintiff respectfully requests that this Court deny Cook's Motion for Summary Judgment and grant Plaintiff any relief that this Court deems appropriate.

**DATED:** October 3, 2019

                                      Respectfully submitted,

                                      *s/ Gregory D. Bentley*
                                      Gregory D. Bentley, Esq.
                                      **ZONIES LAW LLC**
                                        1700 Lincoln St., Suite 2400
                                      Denver, CO  80203
                                      (720) 464-5300
                                      gbentley@zonieslaw.com

                                      *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing was filed and served on this 3rd day of October, 2019, using the CM/ECF system, which will serve as notification of such filings on counsel for all parties.

*s/ Gregory D. Bentley*
Gregory D. Bentley