IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

IN RE: COOK MEDICAL, INC, IVC FILTERS
MARKETING, SALES PRACTICES AND                    Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION                                      MDL No. 2570
_____

This Document Relates to Plaintiffs:

Derek A. Tyson and Clara Johnson Tyson

Civil Case # 1:19-cv-1979

---

**TYSON PLAINTIFFS' RESPONSE TO COOK DEFENDANTS' RENEWED
OMNIBUS MOTION FOR SUMMARY JUDGMENT BASED ON APPLICABLE
STATUTE OF LIMITATIONS FROM FIVE STATES**

---

Plaintiffs Derek A. Tyson and Clara Johnson Tyson respectfully ask this Court to deny the Renewed Omnibus Motion for Summary Judgment based on the Michigan statute of limitations advanced by Defendants Cook Incorporated, Cook Medical LLC, and William Cook Europe ApS (Dkt. 11725). In response to the Omnibus Motion, Plaintiffs incorporate by reference the arguments already presented by the other individual member plaintiffs in response to the Cook Defendants' Omnibus Motion, specifically the Michigan state-law-specific arguments of other Michigan-based plaintiffs in this MDL, and also incorporate by reference the Plaintiffs' Steering Committee's response memorandum in opposition to the Cook Defendants' Omnibus Motion. Plaintiffs Derek A. Tyson and Clara Johnson Tyson likewise advance arguments of their own in opposition to the present Omnibus Motion, provided herein. This Response memorandum is supported by the Declaration of Wes S. Larsen filed concurrently herewith.

## I.  STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

1.     On March 25, 2015, lead counsel for all plaintiffs in this MDL and counsel for the Cook Defendants issued the parties' Notice of Agreement, which instructed that all cases filed after March 25, 2015 comply with the short form complaint attached thereto. MDL 2570 Dkt. 318.

2.     Individual Plaintiffs Derek A. Tyson and Clara Johnson Tyson (hereinafter "Tyson Plaintiffs") complied with this Notice and filed their completed short form complaint on May 17, 2019. *See* Declaration of Wes S. Larsen (hereinafter "Larsen Decl."), Ex. A (the Tyson Plaintiffs' Short Form Complaint); *see also* INSD Case No. 19-cv-1979, Dkt. 1. The Tyson Plaintiffs are residents of the State of Michigan, and the facts giving rise to their claims occurred in Michigan. Larsen Decl, Ex. A. The Tyson Plaintiffs allege that Plaintiff Derek A. Tyson was implanted with a Cook Günther Tulip® Vena Cava Filter on April 21, 2007, which filter subsequently caused injury to Plaintiff. *Id.; see also id.*, Ex. C (Plaintiff Derek A. Tyson's Plaintiff Profile Sheet).

3.     The Cook Defendants provided terms and conditions in inferior vena cava (IVC) filter sales after April 2011 that included (1) an Indiana choice-of-law provision, (2) disclaimer of implied warranties, and (3) reduction of the statute of limitations on implied warranties to one year and one day, as permitted by the Indiana Uniform Commercial Code. Cook's Mem. Sppt. Renewed Omnibus Mot. S. Jdgmt., MDL 2570 Dkt. 11726, p. 8, ¶ 11.

4.     On October 2, 2018, this Court entered its Categorization and Screening Order, ordering all MDL plaintiffs to categorize their cases in one of seven categories, and to support those selections with specific medical records. MDL 2570 Dkt. 9322.

5.     On November 21, 2018, the Court adopted the parties' proposed Categorization Form and ordered all MDL plaintiffs to use the Categorization Form to comply with the Court's

Categorization and Screening Order. MDL 2570 Dkt. 9638. The Tyson Plaintiffs did so on June 12, 2019. Larsen Decl., Ex. B (Plaintiff Derek A. Tyson's Categorization Form).

6.     The Case Categorization Submission Instructions accompanying both the Categorization Form and the Court's November 21, 2018 Order expressly states that the "Case Category Submission is for the purpose of complying with the Court's Order on the Cook Defendant's Motion for Screening Order and Bellwether Selection Plan only and is not admissible and is not to be considered relevant for any other purpose." MDL 2570 Dkt. 9638-1, ¶ 4.

## II.  STATEMENT OF MATERIAL FACTS IN DISPUTE

1.     The Categorization Form that the Tyson Plaintiffs were ordered to complete included requests for dates of filter placement and dates of specific medical records in support of claims, but the Categorization Form did not indicate a request for the date on which Plaintiffs claim accrued for purposes of Mich. Comp. Laws § 600.5827, the statute governing accrual of personal injury claims in Michigan. *See* Larsen Decl., Ex. B (Plaintiff Derek A. Tyson's Categorization Form).

2.     The date on which the Tyson Plaintiffs filed their cause of action is more than three years after the date of the initial injury, but is less than three years since the latest instance of tortious conduct by Defendants against the Tyson Plaintiffs, and the Tyson Plaintiffs' personal injury claims therefore accrued less than three years ago. *See id.*; *see also* Larsen Decl., Ex. A (the Tyson Plaintiffs' Short Form Complaint).

3.     Plaintiff Derek A. Tyson's implantation of an IVC filter was for the predominant purpose of providing a service (medical treatment) and not for the sale of a good. *See* Larsen Decl.,

Ex. D (April 21, 2007 implantation operative report). Plaintiff was not in privity of contract with the Cook Defendants. *Id.*

4.      Although the Cook Defendants included terms and conditions in IVC filter sales after April 2011, they have not produced any evidence to prove that it was the practice of the Cook Defendants to include terms and conditions in the sale of their IVC filters in 2007, when Plaintiff Derek A. Tyson had his particular Cook Günther Tulip® Vena Cava Filter implanted. *Id.* The Defendants have also not proven that if they did include terms and conditions with their IVC filters, such items contained the same provisions submitted into evidence regarding the 2011 terms and conditions.

5.      Plaintiff Derek A. Tyson's medical records for the implantation of the IVC filter do not include the terms and conditions for the Cook IVC filter, and there is no mention in the records of any person or entity providing the terms and conditions to the Tyson Plaintiffs. *See* Larsen Decl., ¶ 5 and Ex. D (April 21, 2007 implantation operative report).

6.      At all times material hereto up until the present, Defendants have advertised their IVC filters, including the Günther Tulip® Vena Cava Filter, as effective at preventing further blood clots, and as easy to retrieve.[1]

## III.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the movant can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "The moving party always bears the initial responsibility to identify the

---

[1]  *See* Medical, Cook. n.d. Gunther Tulip Vena Cava Filter: Retrieval. Accessed October 3, 2019. https://www.cookmedical.com/products/di_gtrs_webds/. For a link to the subject video itself, please see https://f1.media.brightcove.com/12/309212793001/309212793001_661853764001_Tulip-PhysExp-Retrieval.mp4?pubId=309212793001&videoId=661822040001.

portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Hutchison v. Fitzgerald Equip. Co., Inc.*, 910 F.3d 1016, 1021 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court shall consider evidence "in the light most favorable to the non-moving party . . ." and draw "all reasonable inferences from that evidence in favor of the party opposing summary judgment," but "may consider only admissible evidence in assessing a motion for summary judgment." *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018) (citing *Feliberty v. Kemper Corp.*, 98 F.3d 274, 276–77 (7th Cir. 1996); *Parker v. Four Seasons Hotels, Ltd*, 845 F.3d 807, 812 n. 3 (7th Cir. 2017) (citing *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009)).

Whether a plaintiff has brought a claim within the applicable period of limitations is an issue of state law. *See In Re Bridgestone/Firestone Inc. ATX ATXII, Wilderness Tires Prod. Liab. Litig.*, 2002 WL 31689264, at *2 (S.D. Ind. Nov. 20, 2002) ("As a court sitting in diversity, we must look to state law in deciding all matters of substance, including the operation of the relevant statutes of limitations.") (citing *Horbach v. Kaczmarek*, 288 F.3d 969, 976 (7th Cir. 2002)).

## IV.  DISCUSSION

### A.  The Court Must Apply Michigan Law to the Tyson Plaintiffs' Claims Because Plaintiffs' Claims Originated in Michigan and Michigan Has an Interest in Applying its Own Laws.

#### 1.  *Michigan Choice of Law Rules Apply to the Tyson Plaintiffs' Claims Because the Claims Originated in Michigan.*

Defendants assert that this Court must apply Indiana law to all elements of the Tyson Plaintiffs' claims. In the process of doing so, Defendants' briefing cites correct law, then misapplies that law to the facts and the statements of the Court.

Ordinarily, federal courts exercising diversity jurisdiction over a case apply the substantive law of the forum in which they sit. *Med. Protective Co. of Fort Wayne, Indiana v. Am. Int'l*

*Specialty Lines Ins. Co.*, 911 F.3d 438, 445 (7th Cir. 2018) (citing *Koransky, Bouwer & Poracky, P.C. v. Bar Plan Mut. Ins. Co.*, 712 F.3d 336, 341 (7th Cir. 2013)). For the purposes of this analysis, choice-of-law rules are substantive, so the Court would apply the choice-of-law rules of Indiana in a non-MDL case filed in the Southern Federal District of Indiana.

In the context of an MDL however, it is more "appropriate to treat a foreign direct-filed case as if it had been filed in the state where the plaintiff purchased and was prescribed the subject product." *Slater v. Biomet*, 244 F. Supp. 3d 803, 808 (N.D. Ind. 2017) (relating to MDL 2391) (citing *In re Watson Fentanyl Patch Prods. Liability Litig.*, 977 F.Supp.2d 885, 888 (N.D. Ill. 2013) (MDL 2372). This means applying the procedural and substantive law, including the choice-of-law rules, of that same originating state. *See id.* (applying North Carolina's choice-of-law provisions to a medical device MDL case in the Northern Federal District of Indiana where the plaintiff prescribed, purchased, and was implanted with the medical device in North Carolina); *see also Dobbs v. DePuy Orthopedics, Inc.*, 842 F.3d 1045, 1049 (7th Cir. 2016) (relating to MDL 2197) (internal citations omitted) ("In fact, district courts in our circuit have taken that approach: foreign cases filed directly in a district court as a part of ongoing multidistrict litigation are treated as having originated outside of that district. We ratify that approach here . . . .").

The Defendants here conflate the concept of where the case "originated" with where the case was "originally filed." In support of their argument, the Cook Defendants suggest that the Court's statement that it has "complete authority over cases originally filed in this court, just as it would over any other case originally filed in this district" (Entry for June 13, 2019 (MDL 2570 Dkt. 11131)) means that because these cases "were originally filed in this court, these cases 'originated' here in the Southern District." Cook's Mem. Sppt. Renewed Omnibus Mot. S. Jdgmt., MDL 2570 Dkt. 11726, p. 10.

Yet a careful reading of the Plaintiffs' Steering Committee Bench Brief on *Lexecon* and the Bellwether Selection Process (MDL 2570 Dkt. 10715) and the resulting Entry by the Court reveals that this Court's conclusion about its authority over cases "originally filed" in this jurisdiction occurs in relation to its ability to try bellwether cases to finality, and is <u>not</u> a discussion of where the "cases originated" for choice-of-law purposes. *See* Entry for June 13, 2019 at 2 (MDL 2570 Dkt. 11131) ("[T]he court has complete authority over cases *originally filed* in this court, just as it would over any other case originally filed in this district. This complete authority includes the authority to try such cases.") (emphasis added). The Cook Defendants' interpretation of this Court's Entry Order differs significantly from the 7th Circuit's use of the term "originated," which instead emphasizes where the claim accrued, or the injury occurred. *See Dobbs*, 842 F.3d at 1049; *see also Slater*, 244 F. Supp. 3d at 808.

Accordingly, 7th Circuit precedent controls, and this Court must apply the choice-of-law rules of the state in which the Tyson Plaintiffs' claims originated. As Plaintiff Derek A. Tyson was prescribed and implanted with the Günther Tulip® Vena Cava Filter in Michigan, Plaintiff's claims and the derivative claims of Plaintiff Clara Johnson Tyson "originated" in Michigan, and Michigan's choice-of-law rules apply to the Tyson Plaintiffs' claims. *See* Larsen Decl., Ex. A (the Tyson Plaintiffs' Short Form Complaint).

The Tyson Plaintiffs also hereby incorporate the Plaintiffs' Steering Committee's choice of law arguments offered in the PSC's response memorandum to the Cook Defendants' Omnibus Motion as well.

**2. Under Michigan's Choice-of-Law Rules, Michigan would Apply its Own Laws to the Tyson Plaintiffs' Claims Because the Material Facts Relating to Plaintiffs' Injuries Transpired in Michigan.**

Michigan utilizes a number of different choice-of-law provisions depending on the relevant area of law. For the purposes of the Tyson Plaintiffs' claims, however, these-choice-of law provisions uniformly conclude that Michigan law should be the applicable law governing both the substantive law for, and statutes of limitations of, the Tyson Plaintiffs' claims.

a. Tort Claims

For the purposes of the Tyson Plaintiffs' tort claims, Michigan law applies because Michigan employs its own law "unless there is a rational reason to displace it." *Atlas Techs., LLC v. Levine*, 268 F. Supp. 3d 950, 961 (E.D. Mich. 2017) (citing *Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 693 (6th Cir. 2013)).

To determine whether there is cause for using another state's law, Michigan courts perform a two-step analysis: (1) The foreign state must have an interest in having its law applied; and (2) if the foreign state does have an interest, then it must be determined whether Michigan's interests mandate that Michigan law be applied regardless. *Atlas*, 268 F. Supp. at 961 (quoting *Sutherland v. Kennington Truck Serv., Ltd.*, 454 Mich. 274, 286, 562 N.W.2d 466, 471 (1997)).

Indiana law might have application to an individual case filed in federal court in Indiana, as Defendants Cook Medical LLC and Cook Incorporated both maintain a primary place of business within Indiana. Yet regardless of this fact, Michigan's interests mandate that its laws be applied to the Tyson Plaintiffs' tort claims.  Michigan's interests in this matter stem from the conduct causing the injury, and the harm resulting from the injury occurring within the geography

of the state, as well as from an interest in providing a forum and recourse of law for citizens residing in Michigan.[2]

The Eastern Federal District of Michigan recently faced a similar choice-of-law situation in *Johnson v. Doodson Ins. Brokerage of Texas, LLC*, 1 F. Supp. 3d 776 (E.D. Mich. 2014), and determined that the location of injury was paramount in determining which state's law applied:

> This case involves a Texas defendant and a Pennsylvania plaintiff. Plaintiff's current suit relies on Defendant's alleged failure to procure the proper insurance for NPS. Defendant procured (or failed to procure) insurance for NPS from its place of business in Texas. Thus, the "injury" here—the negligent procurement of insurance—must have occurred in Texas.

> "Michigan law recognizes the place where the injury was sustained as the place of the wrong; the place where the last event necessary to create liability occurred." *Standard Fire Ins. Co. v. Ford Motor Co.,* 723 F.3d 690, 698 (6th Cir. 2013), *citing Sutherland,* 454 Mich.App. 274, 562 N.W.2d at 468; *see also Burney v. P.V. Holding Corp.,* 218 Mich.App. 167, 174, 553 N.W.2d 657 (1996) ("Accordingly, under *Olmstead,* Alabama has an interest in having its law applied because one of the parties is a citizen of the state where the wrong occurred."). "The injury state always has an interest in conduct within its borders." *Olmstead,* 428 Mich. at 28, 400 N.W.2d 292. Because Texas is the location where the "injury" occurred, and Texas has an interest in regulating the conduct of insurance companies within its borders, this Court finds that Texas does have an interest in having its law applied to this case.

*Johnson v. Doodson Ins. Brokerage of Texas, LLC*, 1 F. Supp. 3d 776, 784 (E.D. Mich. 2014),

*aff'd sub nom. Johnson v. Doodson Ins. Brokerage, LLC*, 793 F.3d 674 (6th Cir. 2015).

In light of the *Johnson* case, Michigan's interests are significant here given that the Tyson Plaintiffs' injuries occurred in Michigan, and it is therefore necessary to apply Michigan law to the Plaintiffs' tort claims. *See id.; see also Lim v. Miller Parking Co.*, 560 B.R. 688, 705 (E.D. Mich. 2016) (Michigan courts "use another state's law [only] where the other state has a significant interest and Michigan has only a minimal interest in the matter."). This analysis also applies to

---

[2] *See* Larsen Decl., Exs. A (the Tyson Plaintiffs' Short Form Complaint) and C (Plaintiff Derek A. Tyson's Plaintiff Profile Sheet).

Plaintiff Derek A. Tyson's Michigan Consumer Protection Act claim as it sounds in fraud, and claims with "elements of fraud" are "akin to an action in tort for choice-of-law purposes." *Johnson*, 1 F. Supp. 3d 776 at 784, (citing *Muglia v. Kaumagraph Corp.*, 64 F.3d 663, 1995 WL 492933 *4 (6th Cir.1995) (table)). And Plaintiff Derek A. Tyson's breach of implied warranty claim is also governed by this analysis, as it is a product liability claim pursuant to the Michigan Consumer Protection Act. *See* Mich. Comp. Laws. § 445.903.

### b.  Contract Claims

Even if the Court should determine that the Tyson Plaintiffs' breach of implied warranties claim sounds in contract, Michigan law is still applicable to these claims. While Defendants have argued that it was their practice to include an Indiana choice-of-law provision in their terms and conditions for IVC filter sales after April 2011, <u>they have not produced evidence that this was their practice back in 2007 when Plaintiff Derek A. Tyson received their product</u>, and have not produced evidence that Derek A. Tyson was specifically in privity of contract with them; that he was given a set of terms and conditions in 2007; or that any terms and conditions he may have been given contained such terms. In the absence of such evidence, the Court must apply Michigan's choice-of-law rules to determine the appropriate law to apply.

Michigan utilizes the "most significant relationship" test to determine which forum's law to apply to a contract claim. *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 448 Mich. 113, 122, 528 N.W.2d 698, 702 (1995). In applying this test, courts must consider several factors, including the "place of contracting, place of negotiation, place of performance, location of the subject-matter of the contract, and place of incorporation of the parties." *Allied Mech. Servs., Inc. v. Nat'l Fire &*

*Marine Ins. Co.*, 259 F. Supp. 3d 725, 729 (W.D. Mich. 2017) (discussing *Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 302 (6th Cir. 2008)).

As to the Tyson Plaintiffs' contract claims, to the extent that a putative contract does exist, Michigan law governs because the weight of the factors leans in Michigan's favor. Although the Cook Defendants are incorporated in Indiana or abroad, the place of contracting, negotiation, and performance of the putative contract was clearly Michigan (the place of implantation), and the location of the subject matter of the contract (i.e., the specific Günther Tulip® Vena Cava Filter implanted in Plaintiff Derek A. Tyson) is also Michigan, which is where the Tysons have resided since before the time of implantation to the present. *See* Larsen Decl., Ex. C (Plaintiff Derek A. Tyson's Plaintiff Profile Sheet). Accordingly, Michigan law should apply to all of the Tyson Plaintiffs' contract claims.


 c. <u>Statute of Limitations</u>

As for the appropriate statute of limitations to apply to the Tyson Plaintiffs' claims, Michigan law again governs because the injury occurred and accrued within the State of Michigan. The choice-of-law question for statutes of limitation inquiries in Michigan is resolved by Mich. Comp. Laws § 600.5861 (1978), the so-called "Borrowing Statute," which provides in relevant part that "[a]n action based upon a cause of action accruing without this state shall not be commenced after the expiration of the statute of limitations of either this state or the place without this state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of this state the statute of limitations of this state shall apply." Mich. Comp. Laws § 600.5861 (1978).

An analysis under this statute "necessarily requires a determination of where and when the action accrued." *CMACO Auto. Sys., Inc. v. Wanxiang Am. Corp.*, 589 F.3d 235, 243 (6th Cir. 2009). Yet in situations where the plaintiff is a Michigan resident and the elements that give rise to the claim occur in Michigan, this analysis can be side-stepped and Michigan law will control. *See id.* at 244 (quoting *Scherer v. Hellstrom*, 270 Mich. App. 458, 462, 716 N.W.2d 307, __ (2006)) ("Giving these words used in Michigan's borrowing statute their plain meaning, it is clear that the borrowing statute applies only if an action accrued without any essential facts giving rise to the cause of action occurring in Michigan.").

In the Tyson Plaintiffs' case, each of the Plaintiffs' claims possesses essential elements that occurred within Michigan. For Plaintiffs' tort claims, as stated above, the conduct giving rise to the injury and the harm stemming from the injury both occurred in Michigan. For Plaintiffs' contract claim, in the event this Court deems to classify the claim as such, any contractual obligation between the parties was signed, executed, and performed in Michigan, and the breach of contractual duties occurred there as well. Because these essential facts giving rise to the Tyson Plaintiffs' claims occurred in Michigan, Plaintiffs' claims accrued in Michigan and Michigan's respective statutes of limitations apply.

**B.** **Plaintiffs' Personal Injury Claims are Not Time-Barred by the Applicable Statute of Limitations in Michigan.**

Defendants argue that Plaintiff Derek A. Tyson's personal injury claims, namely his claims for products liability and negligence, are time-barred as of three years from an unknown date prior to when he first attributed his injuries to the Günther Tulip® Vena Cava Filter, and that there is no discovery statute available to toll his claims. Cook's Mem. Sppt. Renewed Omnibus Mot. S.

Page 12

Jdgmt., MDL 2570 Dkt. 11726, p. 20. In so asserting, Defendants display a misunderstanding of the limitation of actions in the State of Michigan.

Defendants are correct in asserting that the period in which a plaintiff may bring a claim for general personal injury or for products liability in Michigan is three years, and that there is no "extrastatutory (sic) discovery rule" in Michigan which acts to toll said claims. *See* Michigan Comp. Laws §§ 600.5805(2) & 600.5805(12); *Trentadue v. Buckler Lawn Sprinkler*, 479 Mich. 378, 391-92, 738 N.W.2d 664, 672 (2007). With that said, Defendants misstate when a cause of action for personal injury accrues under Michigan law. Relying on an unpublished Western Federal District of Michigan case, Defendants assert that a plaintiff is harmed and his claim accrues before he or his physicians determine that corrective surgery is required, and may even occur before a plaintiff is aware that the device is causing harm. Cook's Mem. Sppt. Renewed Omnibus Mot. S. Jdgmt., MDL 2570 Dkt. 11726, p. 20. This unbinding assertion goes against the weight of authority in Michigan.

Under Michigan state law, an action accrues and the limitations period begins to run "at the time the wrong upon which the claim is based was done regardless of the time when damage results." Mich. Comp. Laws § 600.5827. For the purposes of interpreting this statute, a wrong occurs "when the plaintiff is harmed rather than when the defendant acted." *Boyle v. Gen. Motors Corp.*, 468 Mich. 226, 231 n. 5, 661 N.W.2d 557, 560 (2003) (citing *Stephens v. Dixon*, 449 Mich. 531, 534–535, 536 N.W.2d 755 (1995)). In conjunction with this doctrine, Michigan also employs the "continuing-wrongful-acts" doctrine, such that in situations where a defendant is continuing to commit wrongs against a plaintiff "the period of limitation will not run until the wrong is abated; therefore, a separate cause of action can accrue each day that the defendant's tortious conduct continues." *Horvath v. Delida*, 213 Mich. App. 620, 626–27, 540 N.W.2d 760, 763 (1995) (citing

*Oakwood Homeowners Ass'n, Inc. v. Ford Motor Co.*, 77 Mich. App. 197, 220, n. 7, 258 N.W.2d 475 (1977)). Thus, contrary to the argument advanced by the Cook Defendants here, a plaintiff's claim does not accrue prior to a plaintiff's awareness that a device is causing harm, and may even continue to accrue afterward, so long as the defendant continues to engage in tortious acts.

In the present case, Defendants have continued to engage in tortious breaches of duty to the Tyson Plaintiffs. Even after Plaintiff Derek A. Tyson first attributed his injuries to the Günther Tulip® Vena Cava Filter, the Cook Defendants did not warn Mr. Tyson of the risks of the IVC filter and the difficulty of its removal, despite their superior knowledge to the contrary. Not only did Defendants not warn Plaintiff of the risks posed by the Günther Tulip® filter and the difficulty of retrieving the device, but they have continued to promote their device as effective at preventing further blood clots and as easy to retrieve from a patient to the very present.[3] Furthermore, the Günther Tulip® filter device at issue remains implanted in Plaintiff Derek A. Tyson and continues to cause injury to him. *See* Larsen Decl., Ex. C (Plaintiff Derek A. Tyson's Plaintiff Profile Sheet). Because of these continuing wrongful acts, the Tyson Plaintiffs' personal injury claims have been continuously accruing, and as such have been brought within the applicable Michigan statute of limitations. The Court should therefore deny Defendants' Omnibus Motion for summary judgment as to the Tyson Plaintiffs' personal injury claims.

In the alternative, should the Court not be convinced that Plaintiff Derek A. Tyson's injury has continuously accrued up to the present, "the date of accrual of a cause of action for statute of limitations purposes is a question of fact for the jury." *Florists' Transworld Delivery, Inc. v. Fleurop-Interflora*, 261 F. Supp. 2d 837, 852 (E.D. Mich. 2003) (citing *Waltzer v. Transidyne Gen.*

---

[3] *See* Footnote 1, *supra*.

*Corp.*, 697 F.2d 130, 133 (6th Cir.1983)). Thus, the Tyson Plaintiffs should be allowed to present their claims to a jury for determination of the date of accrual of Plaintiffs' complained injuries.

**C. The Tyson Plaintiffs' Consumer Fraud Claim <u>Does Not Fail</u> Because it was Pled with a Level of Particularity in Conformity with the Federal Rules of Civil Procedure, Agreed to by the Parties, And Ordered and Approved by this Court.**

Relying on Federal Rule of Civil Procedure (hereinafter "F.R.C.P.") 9(b), Defendants argue that the Tyson Plaintiffs' Michigan Consumer Protection Act claim should be dismissed because the Plaintiffs failed to plead the claim with particularity. Defendants' argument fails due to the Defendants' flawed reading of F.R.C.P. 9(b). Furthermore, Defendants' proposed remedies to any perceived deficiencies ignore applicable court precedent and fail to apply Rule 9(b) *in pari materia* with the remainder of Title III of the Federal Rules of Civil Procedure, particularly Rules 8 and 15.

Although the Cook Defendants are correct in arguing that a plaintiff pleading a claim sounding in fraud must "state with particularity the circumstances constituting fraud or mistake," F.R.C.P. Rule 9(b), this requirement must be reconciled with F.R.C.P. Rule 8(a)'s "short and plain statement" requirement. *See McQueen v. Woodstream Corp.*, 244 F.R.D. 26, 34 (D.D.C. 2007); *see also Picture Lake Campground, Inc. v. Holiday Inns, Inc.*, 497 F. Supp. 858, 866–67 (E.D. Va. 1980); *see also In Re Commonwealth Oil/Tesoro Petro. Corp. Securities Litig.*, 467 F. Supp. 227, 250 (W.D. Tex. 1979) (MDL No. 347). Together, these requirements necessitate that a court strike a balance between demanding enough particularity to put the defendant on notice of the precise misconduct complained of, while not bogging down a complaint such that fraud effectively cannot be pled. *See Pleading Fraud With Particularity—Extent of Requirement*, 5A Fed. Prac. & Proc. Civ. (Wright & Milller) § 1298. This principle is especially true in cases of corporate or business fraud, where "plaintiffs cannot be expected to have knowledge of all the details which undergird

the alleged fraudulent scheme." *In re Catfish Antitrust Litig.*, 826 F. Supp. 1019, 1029 (N.D. Miss. 1993) (citing *Michaels Bldg. Co. v. Ameritrust Co.*, 848 F.2d 674, 680 (6th Cir. 1988)); *Pleading Fraud With Particularity—Extent of Requirement*, 5A Fed. Prac. & Proc. Civ. (Wright & Milller) § 1298.

Reconciliation with F.R.C.P. Rule 8 is important and necessary because the purpose of F.R.C.P. Rule 9(b) is to "inform a defendant of the act of which the plaintiff complains and to enable him to prepare an effective response and defense." *In Re Commonwealth Tesoro*, 467 F. Supp. at 250. Rule 9(b) is not meant to be a means by which defendants may make "sophistical claims of ignorance" in order to stymie meritorious claims. *Id.* at 251. Accordingly, if it is "apparent that even though plaintiffs' pleadings are vague, the defendants do in fact have notice of the matters of which plaintiffs complain, a strict application of Rule 9(b) can serve no purpose." *Id.*

Reconciliation is particularly important within the realm of multidistrict litigation. In an MDL, district courts are "given wide latitude with regard to case management in order to achieve efficiency." *Dzik v. Bayer Corp.*, 846 F.3d 211, 216 (7th Cir. 2017) (quoting *In Re Asbestos Prods. Liab. Litig. (No. VI)*, 718 F.3d 236, 243, 246–48 (3rd Cir. 2013)). Where a district court issues a pre-trial order and an individual fails to comply with said order, this discretion "extends to dismissing individual suits for noncompliance . . . ." *Dzik*, 846 F.3d at 216 (quoting *In Re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 867–68 (8th Cir. 2007). Where an MDL court exercises this discretion by issuing an order governing the content and form of complaints arising under "tag-along" jurisdiction, reconciliation is necessary because the parties are thereafter at the mercy of the court's discretion, especially where the order specifically notes the penalties for failure to comply.

In the case at bar, this Court issued such an order when it approved the parties' proposed Case Management Plan on November 25, 2014, and ordered the creation of a short form complaint, with noncompliance punishable by contempt of court, dismissal, or default. *See* Case Management Plan of November 12, 2014 (MDL 2570 Dkt. 19) *and* November 25, 2014 Order Approving Case Management Plan (MDL 2570 Dkt. 51). Lead counsel for the parties subsequently filed a Notice of Agreement on March 25, 2015 that mandated the use of the specific short form complaint attached therein by all cases subsequently filed in the MDL. *See* MDL 2570 Dkt. 318. In light of these filing requirements, the Tyson Plaintiffs were and remain caught in a quagmire which has deprived them of the opportunity to make their case, and the Cook Defendants now seek to use this quagmire against the Tyson Plaintiffs regarding the Plaintiffs' fraud claim.

In this conundrum, Plaintiffs' only option has been to file suit in the Southern District of Indiana and to conform their allegations to the mandated short form complaint. Filing a nonconforming complaint is not a realistic option, as such a move would not only be contrary to the purpose of MDLs, which is to "manage thousands of claims against numerous defendants in an efficient and expeditious manner . . . ," but would be in defiance of this Court's Order, potentially risking sanctions, dismissal, and default of the Plaintiffs' case. *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 628 F.3d 157, 161 (5th. Cir. 2010). Due to the JPML's transfer order (MDL 2570 Dkt. 1) and this Court's Notice to All Counsel regarding the opening of this MDL (MDL 2570 Dkts. 3 and 6), Plaintiffs also are not able to bring this claim in other federal districts or their home district, as the case will then be transferred back to the Southern District of Indiana, and they will be forced to conform to the short form complaint requirement regardless. Accordingly, Plaintiffs' only option has been to comply with the Court's Order and hope for the best, a stance which is now under attack by the Cook Defendants here.

Furthermore, it is counterproductive and highly prejudicial for Defendants to now assert that the Tyson Plaintiffs have failed to plead their claim with particularity when, at the order of the Court, the Cook Defendants participated in and ratified the form and content of the short form complaint used by the Tysons. *See* MDL 2570 Dkt. 318; *see also* Larsen Decl., Ex. A (the Tyson Plaintiffs' Short Form Complaint). In doing so, the Cook Defendants have had both ample notice of the acts for which Plaintiffs are bringing their claims and sufficient opportunity to prepare a defense or else request a more definite statement. Defendants have also effectively waived all arguments regarding pleading with specificity in agreeing to the general terms of the mandated short form complaint.

Given the Tyson Plaintiffs' scrupulous compliance with the orders of the Court and mandates of lead counsel for the parties, and in light of the purposes of multidistrict litigation and F.R.C.P. Rule 9(b), as well as Plaintiffs' complete lack of opportunity or option to plead their Michigan Consumer Protection Act claim with greater particularity heretofore, this Court should deny Defendants' Omnibus Motion for summary judgment in regards to the Tyson Plaintiffs' Michigan Consumer Protection Act claim in the interest of justice.

Finally, even if this Court should be persuaded by the Cook Defendants' arguments, dismissal with prejudice is not the appropriate remedy for failing to plead with particularity. This is because "the artless drafting of a complaint should not allow for the artful dodging of a claim." *In re Commonwealth Oil*, 467 F. Supp. at 251 (citing *Morse v. Peat, Marwick, Mitchell and Co.*, Fed. Sec. L. Rev. P 95, 492 (S.D.N.Y. 1976)).[4]

---

[4] Cf. *Ross v. A.H. Robins Co.*, 607 F.2d 545, 547 (2d Cir. 1979) ("[B]ecause we are hesitant to preclude the prosecution of a possibly meritorious claim because of defects in the pleadings, we believe that the plaintiffs should be afforded an additional, albeit final opportunity, to conform the pleadings to Rule 9(b)"); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1435 (3d Cir. 1997).

Almost universally, the federal judiciary has held that where a plaintiff fails to plead fraud with particularity, they should be given the opportunity to amend their pleading in order to remedy the defect unless the plaintiff acted in bad faith, has previously amended their complaint, or the amendment would be futile. *Warkel v. Cummins Engine Co.*, 1995 WL 405423, 6 (S.D. Ind.).[5] Further, where a district court fails to give a plaintiff an opportunity to amend, the United States Supreme Court has held such failure to be an "abuse of [that] discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962).[6]

Accordingly, this Court should deny Defendants' Motion for summary judgment as to this claim, or in the alternative should provide leave to the Tyson Plaintiffs to amend their complaint to replead their Michigan Consumer Protection Act fraud claim with particularity.

## D. The Tyson Plaintiffs' Alleged Failure to State Sufficient Allegations to Support Their Express Warranty and Michigan Consumer Protection Act Claims is Excusable.

The Cook Defendants ask that this Court grant them summary judgment as to Plaintiff Derek A. Tyson's Breach of Implied Warranty claim, asserting that it is time-barred under Mich.

---

[5] *See also Foman v. Davis*, 371 U.S. 178, 181–82, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962) (citing *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80(1957)) ('The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.'); *N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 16 (1st Cir. 2009); *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986) (citing *2A J. Moore & J. Lucas, Moore's Federal Practice*, ¶ 9.03 at 9–34 (2d ed. 1986)) ("complaints dismissed under Rule 9(b) are "almost always" dismissed with leave to amend"); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1435 (3d Cir. 1997); *Madison River Mgmt. Co. v. Bus. Mgmt. Software Corp.*, 351 F. Supp. 2d 436, 448 (M.D.N.C. 2005); *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n. 6 (5th Cir. 2000) ("although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so."); *Remmes v. Int'l Flavors & Fragrances, Inc.*, 389 F. Supp. 2d 1080, 1090 (N.D. Iowa 2005); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003); Consequences of Failing to Plead Fraud or Mistake With Particularity, *5A Fed. Prac. & Proc. Civ. (Wright & Miller)* § 1300 (4th ed. 2019) ("The result is that in most instances, when a motion based on a lack of sufficient particularity under Rule 9(b) is granted, regardless of whether it is coupled with a motion to dismiss, it will be with leave to amend the deficient pleading").

[6] *See also Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001); *Estate of Axelrod v. Flannery*, 476 F. Supp. 2d 188, 197 (D. Conn. 2007); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003).

Comp. Laws § 440.2725, the statute of limitations contained within section 2 of the Michigan Uniform Commercial Code (UCC) governing the sale of goods. It is inappropriate to apply the Michigan UCC to Plaintiff Derek A. Tyson's Breach of Implied Warranty claim because there was no privity of contract between Plaintiff Tyson and the Cook Defendants. Furthermore, and as argued above, the predominant purpose of any transaction Plaintiff entered into was a service, and not the sale of a good. Defendants have produced no evidence of a contract between Plaintiff Derek A. Tyson and the Cook Defendants, and a perusal of Plaintiff's medical records for the implantation of the IVC filter shows that the records contain no mention of a transaction between Plaintiff and the Cook Defendants. Larsen Decl., Ex. D (April 21, 2007 implantation operative report). The Defendants' argument therefore fails.

### 1. It is Inappropriate to Apply the UCC to Plaintiffs' Claim Because Michigan Courts have Held the UCC to be Inconsistent with Consumer Actions.

The Court should also not apply the Michigan UCC to the Tyson Plaintiffs' Breach of Implied Warranties claim, because Michigan courts have held the UCC to be inconsistent with consumer actions. *See Neibarger v. Universal Cooperatives, Inc.*, 439 Mich. 512, 522–23, 486 N.W.2d 612, 616 (1992) (quoting *Parish v. B.F. Goodrich Co.*, 395 Mich. 271, 278, 235 N.W.2d 570 (1975)) ("The provisions of UCC § 2–725 (a warranty is breached upon tender of delivery), while entirely satisfactory in a commercial setting, are inconsistent with principles developed by the Courts in consumer actions against manufacturers for personal injury") (internal parenthetical in original).

**2.    The UCC Does Not Govern the Tyson Plaintiffs' Breach of Implied Warranties Claim Because the Predominant Purpose of Any Alleged Transaction between the Parties was Not the Sale of a Good.**

Even if a transaction between Plaintiff Derek A. Tyson and the Cook Defendants did occur, the Michigan UCC does not apply because the predominant purpose of any such transaction was not the sale of a good. The UCC only applies to sales of goods. *See* Mich. Comp. Laws § 440.2102; *Neibarger v. Universal Cooperatives, Inc.*, 439 Mich. 512, 519, 486 N.W.2d 612, 614–15 (1992). Conversely, the UCC is inapplicable to services. *See* Mich. Comp. Laws § 440.2102. Where the purpose of a transaction is mixed or unclear, "Michigan courts apply the predominant factor test." *Home Ins. Co. v. Detroit Fire Extinguisher Co.*, 212 Mich. App. 522, 527, 538 N.W.2d 424, 427 (1995) (citing *McFadden v. Imus*, 192 Mich. App. 629, 632, 481 N.W.2d 812 (1992)). Under this test, a court

> should examine the purpose of the dealings between the parties. If the purchaser's ultimate goal is to acquire a product, the contract should be considered a transaction in goods, even though service is incidentally required. Conversely, if the purchaser's ultimate goal is to procure a service, the contract is not governed by the UCC, even though goods are incidentally required in the provision of this service.

*Id.* (quoting *Neibarger v. Universal Cooperatives, Inc.*, 439 Mich. 512, 536, 486 N.W.2d 612 (1992).

In the present case, the purpose of Plaintiff Derek A. Tyson's implantation of the Cook IVC filter was not for the reason of purchasing an IVC filter. Rather, it was a medical device implanted in the course of receiving medical treatment for the prevention of pulmonary emboli. Accordingly, the predominant purpose of Plaintiff Tyson's implantation was <u>not</u> the sale of a good, but the receipt of a medical service, and the UCC does not apply to his claim.

Finally, even if the Court determines that the UCC does apply, the Code does not abrogate Plaintiffs' Michigan Consumer Protection Act claim for Breach of Implied Warranty. *See* Mich. Comp. Laws § 440.2102 ("nor does this article impair or repeal any statute regulating sales to

consumers, farmers or other specified classes of buyers"); *Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1131 (6th Cir. 1995) ("the contract statute of limitations will apply only where the promise that the plaintiff seeks to enforce is express, not implied by law").

> **3.   *Under the Michigan Consumer Protection Act, Plaintiff Derek A. Tyson has Properly Brought a Claim within the Specified Period of Limitations because Plaintiff has Brought his Claim Prior to Expiration of the Applicable Statute.***

Plaintiff Derek A. Tyson has met the requirements to properly bring his claim under the Michigan Consumer Protection Act ("MCPA"). Whether or not the Court finds a transaction to have occurred between Plaintiff and the Cook Defendants is inconsequential to this analysis. If a transaction occurred, the MCPA still applies to Plaintiff's claim, as discussed *supra*. Conversely, the absence of an agreement between Plaintiff and the Cook Defendants is not fatal to Plaintiff's claim because "[t]he MCPA does not require a 'transaction' between the parties." *DIRECTV, Inc. v. Cavanaugh*, 321 F. Supp. 2d 825, 838 (E.D. Mich. 2003). More generally, "there is no requirement that consumer goods be sold or purchased in order to constitute trade or commerce, although a sale of consumer goods or services is an example of conduct constituting trade or commerce." *Id.* (internal quotations omitted).

As to which statute of limitations should apply, the MCPA contains its own statute of limitations for claims brought under the Act. An MCPA claim must be brought not "more than 6 years after the occurrence of the method, act, or practice which is the subject of the action nor more than 1 year after the last payment in a transaction involving the method, act, or practice which is the subject of the action, whichever period of time ends at a later date." Mich. Comp. Laws § 445.911.

In the present case, Plaintiff Derek A. Tyson has brought his claim within six years of the act or practice being promoted by Defendants. At all times since Plaintiff Derek A. Tyson had his

Günther Tulip® IVC filter implanted, Defendants have continued to advertise the Günther Tulip® as effective at preventing blood clots and as safe and easy to retrieve,[7] when the evidence (and the significant multitude of plaintiffs in this very MDL) tends to demonstrate that Defendants' representation is false or misleading. Accordingly, the Tyson Plaintiffs' Breach of Implied Warranties claim has been brought within the applicable statutory period.

Additionally, while the Cook Defendants have presented evidence that Cook "has included the Cook Invoice Terms and Conditions since at least April 2011," the Defendants have not proven that this was the practice of Defendants in 2007, when Plaintiff Derek A. Tyson was implanted with the subject Cook IVC filter, and they have likewise not proven that Plaintiff Derek A. Tyson was presented with a copy of said terms and conditions. Cook's Mem. Sppt. Renewed Omnibus Mot. S. Jdgmt., MDL 2570 Dkt. 11726, p. 8, ¶ 11. Defendants have not met their burden of proving that they in any way limited the duration of Plaintiff Derek A. Tyson's implied warranty claims. The Court should therefore apply the six-year statute of limitations specified in Mich. Comp. Laws § 445.911(7) to the Tyson Plaintiffs' implied warranty claim, and should deny Defendants' Omnibus Motion for summary judgment as to said claim.

### E. The Tyson Plaintiffs' Loss of Consortium and Punitive Damages Claims Succeed Because They are Derivative of the Plaintiffs' Succeeding Substantive Claims.

As shown above, because genuine issues of material fact exist and the Tyson Plaintiffs' substantive claims do not fail as a matter of law, the Tyson Plaintiffs' derivative Loss of Consortium and Punitive Damages claims likewise do not fail. Accordingly, the Cook Defendants' Omnibus Motion for summary judgment should be denied as to these claims as well.

---

[7] *See* Footnote 1, *supra*.

## V.  <u>CONCLUSION</u>

For the foregoing reasons, the Tyson Plaintiffs request that this Court deny the Cook Defendants' Renewed Omnibus Motion for Summary Judgment as to all of the Tyson Plaintiffs' claims, and in the alternative grant leave to the Tyson Plaintiffs to amend their Complaint to plead their Michigan Consumer Protection Act claim with specificity.

DATED this 3rd day of October, 2019.

Respectfully Submitted,

JAMES, VERNON & WEEKS, P.A.

Wes S. Larsen
1626 Lincoln Way
Coeur d'Alene, ID 83814
Ph: (208) 667-0683
Fax: (208) 664-1684
Email: wes@jvwlaw.net

Attorney for Plaintiffs Derek A. Tyson
and Clara Johnson Tyson

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 3, 2019, a copy of the foregoing was served electronically and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.

Wes S. Larsen