UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB MDL No. 2570 |

This document relates to:
Earline Pitts Case Number: 1:17-cv-03992

**PLAINTIFF'S OPPOSITION TO COOK DEFENDANTS'
RENEWED OMNIBUS MOTION FOR SUMMARY JUDGMENT
BASED ON APPLICABLE STATUTE OF LIMITATIONS**

## INTRODUCTION AND SUMMARY

The Cook Defendants' motion for summary judgment in the above-referenced case should be denied in its entirety because its sole argument – that no discovery rule is applicable in this Virginia resident Plaintiff's case – is applicable is incorrect. Such a misinterpretation (or perhaps lazy) of the applicable law is fatal. Plaintiff's claims were timely filed pursuant to the discovery rule no matter which state's law applies – Indiana or Virginia. Thus, this Court must deny the Cook Defendant's motion in its entirety as to Plaintiff Earline Pitts.

## COUNTER-STATEMENT OF FACTS

The complaint in this matter was filed on October 31, 2017. Dkt. 1 (Case 1:17-cv-03992). Plaintiff Earline Pitts is a Virginia resident (Id. at page 1 paragraphs 4-5) whose Cook Gunther Tulip® Vena Cava Filter was implanted in Virginia (Id. at page 3, paragraphs 10-12) and whose injuries of post-implant pulmonary embolism ("PE") was diagnosed in May 2015 at Mary Washington Hospital in Fredericksburg, Virginia. See Case Categorization Form, attached hereto

1

as **Exhibit 1**. However, Plaintiff did not know and had no reason to know that her injuries from the implantation of the medical device – the Cook Gunther Tulip® Vena Cava Filter – resulted from or arose as a result of this device's implantation until many months later, at the earliest, December 2015, and well within two years of the filing of the complaint in this matter.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant also "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, (1986). "A district court should grant summary judgment only if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Miller v. A.H. Robbins Co.,* 766 F.2d 1102, 1104 (7th Cir. 1985). When considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Zillak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003).

## ARGUMENT

### I.   Choice of Law.

Plaintiff in the above-referenced matter hereby adopts by reference and incorporates the Response to Reneewed Omnibus Motion for Summary Judgment herein, and re-states: Cook's simplistic statement that Indiana choice of law rules and Indiana law apply merely because Plaintiffs' filed their claims directly in this MDL court ignores Seventh Circuit precedent and is legally incorrect. In the Seventh Circuit, it is black letter law that for choice of law analysis,

"[F]oreign cases filed directly in a district court as part of an ongoing multidistrict litigation are treated as having originated <u>outside</u> of that district." *Dobbs v. DePuy Orthopedics, Inc.,* 842 F.3d 1045, 1048 (7th Cir. 2016) (emphasis added), citing with approval *In re Watson Fentanyl Patch Prods. Liab. Litig.,* 977 F.Supp.2d 885, 888-89 (N.D. Ill. 2013) (in direct filed product liability case, MDL court applied the law of the state where the Plaintiff purchased and used the prescribed product, <u>not</u> the MDL forum); *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices and Prods. Liab. Litig.,* 2011 WL 1375011, at *5 (S.D. Ill. April 12, 2011) (similarly applying the law of the state where Plaintiff purchased and used the product rather than the MDL forum in foreign direct filed cases). Tellingly, Cook's Motion for Summary Judgment ignores the Seventh Circuit's holding in *Dobbs.*[1] The Court should reject Cook's erroneous choice of law argument, refuse to apply Indiana law to foreign direct filed cases, and deny Cook's Motion for Summary Judgment.

In *Dobbs v. DePuy Orthopedics, Inc.,* 842 F.3d 1045 (7th Cir. 2016), an Illinois plaintiff direct filed his case in the Northern District of Ohio MDL. The case was later transferred from the Ohio MDL to the Northern District of Illinois. The Seventh Circuit held that the case originated in Illinois and that Illinois choice of law rules applied. *Id.* at 1048.

> Dobbs's claim . . . was filed in the Northern District of Ohio only because the DePuy multidistrict litigation was already in progress there. Dobbs's complaint stated that the Northern District of Illinois was the appropriate venue absent the multidistrict litigation. That advises treating the Northern District of Illinois as the original venue.

> In fact, district courts in our circuit have taken that approach: <u>foreign cases filed directly in a district court as part of ongoing multidistrict litigation are treated as having originated outside of that district.</u> *E.g. In re Watson Fentanyl Patch Prods. Liab. Litig.,* 977 F.Supp. 2d 885, 888-89 (N.D. Ill. 2013); *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.,* No. 3:09-MD-02100-DRH, 2011 WL 1375011, at *5 (S.D. Ill. Apr. 12, 2011). <u>We ratify that approach here and apply Illinois's choice-of-law rules.</u>

---

[1] Cook's Motion for Summary Judgment does cite the *Watson Fentanyl* and *Yasmin* cases. But those MDL court rulings actually support Plaintiffs' position and reject Cook's argument. The Court should rule likewise. For further discussion, please see *infra* at page 7.

*Dobbs,* 842 F.3d at 1048 (emphasis added).

The *Watson Fentanyl* decision – cited with approval by the Seventh Circuit in *Dobbs* – involved a case filed directly in the MDL court in the Northern District of Illinois.  *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 977 F.Supp. 2d at 886.  The case concerned an Ohio resident, who died in Ohio after using a fentanyl patch that was prescribed, purchased, and applied in Ohio.  The Northern District of Illinois MDL court applied Ohio law and rejected attempts to apply Illinois law, or even Illinois' choice of law rules.

> "[T]he prevailing rule in this situation is that in a case that was directly filed in the MDL transferee court but that originated elsewhere, the law (including choice of law rules) that applies is the law of the state where the case originated.  *See e.g. In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Prods. Liab. Litig.*, MDL No. 2100, No. 3:09-md-02100-DRH-PMF, 2011 WL 1375011, at *5 (S.D. Ill. April 12, 2011); *In re Bausch & Lomb Inc. Contacts Lens Solution Prods. Liab. Litig.* MDL No. 1785, 2007 WL 3046682, at *3 (D.S.C. Oct. 11, 2007) (noting that 'it would be an odd result to subject plaintiffs to [the law of the MDL forum] simply because they took advantage of the direct filing procedure – a procedure that provides benefits to all parties and preserves judicial resources').  The Court agrees with the cases just cited and concludes that the choice of law rules that apply are those of the state where the case originated.

*In re Watson Fentanyl Patch Prods. Liab. Litig.*, 977 F.Supp. 2d at 888.

The *Watson Fentanyl* MDL court then went on to analyze the meaning of the term "originated."  The conclusion: "<u>a direct-filed case in an MDL proceeding is considered to have originated in the state where the plaintiff purchased and used the prescribed product</u>.  That is how the place of filing is determined in [the] overwhelming majority of product liability cases, and it is a reasonable approach to determining the choice of law issue that has been presented.  *Id.* at 889

(emphasis added).   Because the Plaintiff prescribed and used the fentanyl patch at his Ohio residence, the Illinois MDL court ruled that Ohio law should apply to this foreign direct filed case.[2]

*In re Yasmin* – cited with approval by both the *Dobbs* and *Watson Fentanyl* courts – involved numerous cases that originated outside of that court's judicial district and that were filed directly in the Southern District of Illinois MDL.  Similar to Cook's faulty reasoning, the *Yasmin* plaintiffs argued that because the court was sitting in diversity in Illinois, Illinois was the proper forum and Illinois choice of law principals should control.  *Id.* Judge Herndon rejected that argument and emphasized in bold type:  **"Illinois choice of law principals do not control simply because this MDL Court is sitting in diversity in Illinois."**  *Id*.  (emphasis in original).  The MDL court reasoned that "direct filing orders are beneficial to both parties because they streamline the litigation and help eliminate the judicial inefficiency involved in the MDL transfer process."  *Id.*  Judge Herndon further wrote:

> "The Court concludes that the better approach is to treat foreign direct filed cases as if they were transferred from a judicial district sitting in the state where the case originated.  For purposes of this analysis, the Court considers the originating state to be the state where the plaintiff purchased and was prescribed the subject drug.  Thus, for a foreign direct filed member action involving a plaintiff that purchased and was prescribed the subject drug in Tennessee, the Court will treat that plaintiff's claims as if they were transferred to this MDL from a district court in Tennessee."

*Id.,* at *6.  *See also In re Fresenius Granuflo/Naturalyte Dialysate Products Liability Litigation,* 76 F.Supp. 3d 294, 303 (D. Mass. 2015) ("The home forum designation of the direct filing plaintiffs is the best evidence I have of what these plaintiffs would have done absent direct filing. Just as Mississippi plaintiffs would have had a choice between at least two proper forums in the absence of direct filing, so too do they have such an option with the direct filing procedure.  I will

---

[2] Similar to the approach taken by the Seventh Circuit, the *Watson Fentanyl* MDL court also noted that it could have applied California choice of law rules, because Plaintiffs' complaint suggested that they would have filed their lawsuit in California.  But even applying California choice of law rules, the Illinois MDL court concluded that Ohio law should apply and <u>not</u> the law of the MDL forum.  *Id.* at 889-90.

therefore consider the forum that the direct filing plaintiffs designated on their short form complaints as the originating forum for the choice of law analysis."); *Wahl v. General Electric Co.,* 983 F.Supp. 2d 937, 943 (M.D. Tenn. 2013) ("Most of the courts that have considered this peculiar procedural posture have stated that it is appropriate to apply choice of law rules of the 'originating' jurisdiction [i.e. where the case would have been brought but for the CMO permitting direct filing], rather than the choice of law rules of the MDL Court. These courts have generally reasoned that the direct filing procedure is simply designed to promote judicial economy and conserve the parties' resources, not to alter the choice of law rules."); *In re Avandia Marketing, Sales Practices and Prods Liability Litig.,* 2012 WL 3205620, at *2 (E.D. Pa. August 7, 2012) ("The Court has concluded, as have other MDL courts, that such [direct filed] cases should be governed by the law of the states where Plaintiffs received treatment and prescriptions for Avandia. This ruling will promote uniform treatment between those Plaintiffs whose cases were transferred into the MDL from their home states and those who filed directly into the MDL.").

Thus, the Court has two different approaches for examining the choice of law issue for direct filed cases in this MDL: (1) focus on the court designated by the plaintiff in the Short Form Complaint as the place of proper venue as discussed in the *Dobbs, In re Fresenius Granuflo/Naturalyte, Dialysate Product Liability Litigation,* and *Wahl* cases; or (2) focus on the place where the plaintiff received the IVC filter prescription and treatment as held in the *In re Watson Fentanyl, In re Yasmin*, and *In re Avandia* cases. Importantly, under both approaches, neither Indiana choice of law rules nor Indiana law apply to these cases. It is undisputed that the foreign direct filed Plaintiffs' Short Form Complaints unambiguously listed venue choices at locations outside of Indiana. Moreover, Plaintiff purchased and was prescribed her IVC filter

outside of Indiana.[3]  Therefore, the Court should reject Cook's attempt to apply Indiana law and deny Cook's Motion for Summary Judgment on Limitations.

**II.      Plaintiff's claims survive under Indiana law.**

Should this Court apply Indiana law for statute of limitations purposes, Plaintiff's claims are not barred. Cook Defendants' own cited authority for Indiana's discovery rule and its application to the statute of limitations supports Plaintiff's position here: the statute of limitations here did not and could not have accrued until, at the earliest, December 2015. Thus, her claims, which were brought via the filing of the complaint in October 2017, is well within the two-year statute of limitations prescribed by Indiana law.

To hammer this point home, Plaintiff recites the same argument made by the Cook Defendants in its motion for summary judgment below to show that the application of the discovery rule mandates that Plaintiff could not have known of the causal relationship of her alleged injures – post-implant PE – with the medical device implanted.

> *Indiana courts have adopted a limited discovery rule, holding that the statute of limitations '"begins to run from the date that the plaintiff knew or should have discovered that she suffered an injury or impingement, and that it was caused by the product or act of another."' Nelson v. Sandoz Pharms. Corp., 288 F.3d 954, 966 (7th Cir. 2002) (quoting Degussa Corp. v. Mullens, 744N.E.2d 407, 410 (Ind. 2001)). To determine when a reasonably diligent plaintiff should have discovered the claimed injury, Indiana courts ask "whether a reasonable person in the [plaintiff's] position . . . possessing the information [plaintiff] did when [she] did, could have discovered through the exercise of ordinary diligence that the product*

---

[3] No doubt, in most cases, the venue designated by a particular Plaintiff in the Short Form Complaint will be the same place where the Plaintiff received his or her IVC filter and treatment.

*[caused her harm]." Horn v. A.O. Smith Corp., 50 F.3d 1365, 1370 (7ᵗʰ Cir. 1995) (applying Indiana law). At this point, the law "contemplate[s] that persons armed with these indices have a fair opportunity to investigate available sources of relevant information and to decide whether to bring their claims in court within the time limitations in the statute." Barnes v. A.H. Robins Co., 476 N.E.2d 84, 87–88 (Ind. 1985).*

*Over the years, courts interpreting the Indiana statute of limitations and the associated discovery rule have made clear that the accrual date is analyzed from an objective perspective, and that diagnosis of the complication or injury at issue by a physician or its discovery on medical imaging are events that objectively trigger the statute of limitations, at which point the plaintiff is presumed to know that his or her claims have accrued. See Nelson, 288 F.3d at 966 ("[T]he plaintiff's suspicion, standing alone, about the source of her injury is [generally] insufficient to trigger the onset of the limitations period …[, but] the limitations period will begin to run when a physician there is a 'reasonable' possibility, if not a probability that a specific product caused the plaintiff's injury.") (quoting Degussa, 744 N.E.2d at 411)); In re Mirena IUD Prods. Liab. Litig. (Truitt), 29 F. Supp. 3d at 352 (analyzing case under statute of limitations laws of both Indiana and Texas and holding in an IUD case that the statute of limitations was triggered "at the latest, when Plaintiff learned that the Mirena perforated her uterus and would have to be removed"); Cossman v. DaimlerChrysler Corp., 108 Cal. App. 4th 370, 380 (2003) (holding under Indiana law that the cause of action accrued when the plaintiff was diagnosed with mesothelioma even though doctors "'couldn't figure*

*out where' she had contracted the disease"); Withers v. Sterling Drug, Inc., 319 F. Supp878, 881 (S.D. Ind. 1970) (holding in a pharmaceutical drug case that "plaintiff's cause of action accrued when she discovered her injury, not when she learned that her injuries were permanent").*

Furthermore, courts applying Indiana law have held in the medical device context that while the accrual date is the date of the injury, **the accrual date logically cannot be any later than the date of a procedure to correct and/or remove the device**. In re Mirena IUD Prods. Liab. Litig. (Truitt) stands for this proposition, as noted in the passage quoted above, as does this Court's decision in Neuhauser v. A.H. Robins Co., 573. F. Supp. 8 (S.D. Ind. 1983). Neuhauser was a Dalkon Shield IUD case involving a plaintiff who received the device in 1972, and then became pregnant with the device in place in January 1974. Id. at 9. The pregnancy resulted in a miscarriage and removal of the device in June 1974. Id. The plaintiff had further problems, later diagnosed as carcinoma of the cervix, that prompted additional surgeries, including the removal of her fallopian tubes and ovaries in 1978, but she did not file her case until 1981. Id. at 9-10. This Court explained that:

> In Indiana a cause of action accrues at the time when both legal injury and damage have occurred, resulting in liability. In this case that time is June 1974, when the plaintiff's pregnancy, which began while the Dalkon Shield was in place, was aborted. The record indicates that the plaintiff's gynecologist-obstetrician informed her when she became pregnant in January that the presence of the Dalkon Shield could cause problems— that if it were removed immediately it could precipitate a miscarriage, but if left in, the Shield could adversely affect the pregnancy in any event. Those fears were realized when the plaintiff suffered her miscarriage in June. Under Indiana's two year statute of limitations, the time within which to file suit expired in June 1976.

*Id. at 9. Likewise, the Indiana Court of Appeals held in Wojcik v. Almase that product liability claims with respect to a broken implantable catheter accrued when the device was removed, not when plaintiff sought subsequent treatment that noted a retained fragment. See 451 N.E.2d 336, 342 (Ind. Ct. App. 1983) (holding that because "the catheter was inserted and removed between June 26 and September 21, 1978, it would have broken off during that time. Thus, even accepting all of [plaintiff's] allegations as true, including his relation back argument, his original complaint was filed more than two years after his cause of action accrued.").*

*As the Mirena court noted while discussing migration and perforation of the uterus by an IUD, "when an IUD is found somewhere in a woman's body where it is not supposed to be—here, Plaintiff's abdomen—and surgery is required to remove it, a diligent individual would know, at the very least, that there was a 'reasonable possibility' that the IUD harmed her and she should therefore make further inquiry to determine her legal rights." In re Mirena IUD Prods. Liab. Litig. (Truitt), 29 F. Supp. 3d at 352.*

*Moreover, both this Court and the Bard Filter MDL court have rejected arguments that IVC filter claims could accrue after the removal of the filter. First, this Court granted summary judgment in Plaintiff Valerie Graham's case early on in the MDL because "[t]he injuries described in her Complaint . . . were known to her immediately after her September 9 surgery. The limitations period, therefore, expired on or about September 10, 2013, nearly two years before she filed her Complaint." 13 Graham (1:15-cv-00764) Dkt. 164. Likewise, the Bard Filter MDL court granted summary judgment in a bellwether case under Nebraska law that*

*involved tilt, perforation, and an unsuccessful retrieval attempted: "Discovery refers to the fact that one knows of the existence of an injury . . . and not that one knows who or what may have caused the injury. It is not necessary that a plaintiff have knowledge of the exact nature or source of the problem, but only that a problem existed." In re Bard IVC Filters Prods. Liab. Litig., 2018 WL 3957737, at \*4 (D. Ariz. Aug. 17, 2018). As evinced by the cases analyzed above, Indiana and Nebraska law are similar in their focus on the general factual underpinnings of the claimed injury to trigger the plaintiff's duty to investigate his or her claims further.*

*Finally, Indiana courts have categorically rejected the arguments several counsel for these Plaintiffs advanced during meet-and-confer discussions regarding the timeliness of these cases that the statute of limitations does not begin to accrue until the plaintiff learns of the legal cause and/or legal theory applicable to his or her claims. While that may be so in a few states, the argument does not hold water under Indiana law: "[A] plaintiff need not 'uncover the legal theory for holding a defendant liable for the action to accrue. Rather, the plaintiff must only be aware that the defendant caused him injury."' In re Mirena IUD Prods. Liab. Litig. (Truitt), 29 F. Supp. 3d at 352 (quoting Frey v. Bank One, 91 F.3d 45, 47 (7th Cir. 1996) (applying Indiana law)); see also Perryman v. Motorist Mut. Ins. Co., 846 N.E.2d 683, 689 (Ind. Ct. App. 2006) ("[T]he discovery rule does not mandate that plaintiffs know with precision the legal injury that has been suffered, but merely anticipates that a plaintiff be possessed of sufficient information to cause him to inquire further in order to determine whether a legal wrong has occurred."). Indeed, the Neuhauser case categorically rejected plaintiff's argument that "her*

*cause of action did not accrue until she discovered the causal connection between her injury and the Dalkon Shield . . . when she was informed of a report on the television program '60 Minutes' describing the dangers of the Dalkon Shield." 573 F. Supp. at 9. As discussed above, this Court instead held that the plaintiff's injuries accrued years earlier. Id. at 10 ("The record establishes that the plaintiff knew as early as 1974 that the Dalkon Shield probably caused her miscarriage.").*

*These cases establish objective markers for determining the timeliness of the filter claims asserted by Plaintiffs here. Filter complications and alleged injuries such as perforation, migration, occlusion, fracture, and occurrence of post-placement DVT/PE are not necessarily observable with the naked eye, but they are diagnosable by medical imaging and/or physician examination. Therefore, just like the fractured catheter in Wojcik, the IUD migration and perforation in the Truitt Mirena IUD case, and the mesothelioma in Cossman, these Plaintiffs' IVC filter claims begin to accrue under Indiana law when the complication and/or injury complained of is demonstrated on imaging or otherwise diagnosed in medical records. See Wojcik, 451 N.E.2d at 342 (holding that plaintiff's claims accrued on the date of the fracture of the catheter and not on the subsequent discovery on imaging of the broken fragment); In re Mirena IUD Prods. Liab. Litig. (Truitt), 29 F. Supp. 3d at 352; Cossman, 108 Cal. App. 4th at 380 (claims regarding asbestos-related mesothelioma accrued when plaintiff was diagnosed with the disease); Withers, 319 F. Supp. at 881 (holding that "plaintiff's cause of action accrued when she discovered her injury, not when she learned that her injuries were permanent").*

*Moreover, although the need for a filter's retrieval or the fact of a filter's irretrievability may be diagnosed before a filter retrieval procedure is scheduled, retrievability-based claims (i.e., Category 4 unable- to-retrieve claims; Category 5 failed retrieval, complex retrieval, and difficult retrieval claims; and Category 7(k) open-removal claims) accrue under Indiana law at the latest on the date of the retrieval procedure or the physician's recommendation that filter removal cannot and/or should not be attempted, as memorialized in records. See Neuhauser, 573. F. Supp. at 9-10 (holding that plaintiff's claims accrued in 1974 when plaintiff suffered a miscarriage and had the device removed, not when she saw a 60 Minutes episode about the dangers of the device seven years later in 1981); Wojcik, 451 N.E.2d at 342 (holding that plaintiff's claims accrued on the date his catheter fractured and that the catheter could not have fractured any later than the date it was removed); In re Mirena IUD Prods. Liab. Litig. (Truitt), 29 F. Supp. 3d at 352 (holding that the statute of limitations was triggered "at the latest, when Plaintiff learned that the Mirena [IUD] perforated her uterus and would have to be removed"); see also Graham (1:15-cv-00764) Dkt. 164 (this Court's prior ruling holding in IVC filter context that claims accrued immediately after failed retrieval attempt); In re Bard IVC Filters Prods. Liab. Litig., 2018 WL 3957737, at \*4.*

The arguments put forth by Cook Defendants are flawed for various reasons, but in this specific case, they are ***wholly and embarrassingly inapposite***. Applying this caselaw here, the personal injury claims of Plaintiff Earline Pitts are **NOT** time-barred. Plaintiff did not undergo any procedure for the retrieval or removal of the medical device implanted into her body. Instead, Plaintiff suffered from a post-implant pulmonary embolism ("PE"), which was diagnosed in May

2015. See Exhibit 1. However, Plaintiff did not know and had no reason to know that her injuries from the implantation of the medical device – the Cook Gunther Tulip® Vena Cava Filter – resulted from or arose as a result of this device's implantation until many months later, and within two years of the filing of the complaint in this matter. Plaintiff's post-implant PE is not in and of itself an objective standpoint by which a reasonable person in Plaintiff's position possesses the information that she could have discovered that the PE was related to or perhaps caused by the defective Cook IVC filter implanted in her body.

The Cook Defendants have advanced many examples purportedly showing how the statute should have started running at the time of the diagnosis of the alleged injury here, but none of those examples comes close to showing it is entitled to judgment as a matter of law. Indeed, the Cook Defendants have not put forth any admissible evidence in support of its flawed motion for this Court to even consider. The Cook Defendants are not simply not entitled to summary judgment on **any** of Plaintiff's claims under Indiana law.

### III.    Plaintiff's claims survive under Virginia law.

Under Virginia law, every action for personal injury shall be brought within two years after the cause of action accrues.  Va. Code Sec. 8.01-243 (A).  While the general rule is that Virginia does not follow a discovery rule unless there is a statutory exception, a statutory exception was enacted for cases exactly like the one at issue here, in which a medical device was implanted causing injuries, in 2016. Effective July 1, 2016, Virginia enacted a statutory exception for medical device cases.  "In products liability actions against parties other than health care providers…for injury to the person resulting from or arising as a result of the implantation of any medical device, [the cause of action shall be deemed to accrue] when the person knew or should have

known of the injury and its causal connection to the device." *Id.* Va. Code Section 8.01-249, at 8.01-249 (9) (2016 Supp.).

Cook Defendants have completely ignored the binding authoritative statute as amended in 2016, which now allows for the application of the discovery rule for cases arising from the implantation of a medical device. In fact, the Cook Defendants have not put forth any admissible evidence in support of its flawed motion for this Court to even consider. The Cook Defendants, having failed to meet their burden to prove that no triable issues of material facts exist here, are not entitled to summary judgment on **any** of Plaintiff's claims under Virginia law. Having not met their burden, this motion must fail.

## **CONCLUSION**

For the foregoing reasons, the motion for summary judgment as to Plaintiff Earline Pitts must be denied in its entirety.

Dated: October 3, 3019

/s/ Debra J. Humphrey
Debra J. Humphrey
Marc J. Bern & Partners LLP
One Grand Central Place
60 East 42nd Street, Suite 950
New York, New York 10165
Tel: (212) 702-5000
dhumphrey@bernllp.com

Attorneys for Plaintiff(s)

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 3, 2019 a copy of this pleading was served on counsel of

record listed below by electronic mail and first-class U.S. Mail:

| | |
|---|---|
| Andrea Roberts Pierson<br>andrea.pierson@FaegreBD.com<br>Victoria R. Calhoon<br>victoria.calhoon@gaegrebd.com<br>Anna C. Rutigliano<br>anna.rutigliano@gaegrebd.com<br>**Faegre Baker Daniels LLP**<br>300 N. Meredian Street, Suite 2700<br>Indianapolis, IN 46204 | Charles Webber<br>chuck.webber@faegrebd.com<br>**Faegre Baker Daniels LLP**<br>2200 Wells Fargo Center<br>90 South Seventh Street<br>Minneapolis, MN 55402 |

*/s/ Debra J. Humphrey*
Debra J. Humphrey