IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **IN RE COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | Case No. 1:14-ml-2570-RYL-TAB<br>MDL No. 2570 |
| **This Document Relates To:**<br>_____<br>**Curtis Shields**<br>_____ | 1:18-cv-1379 |

**PLAINTIFF'S OPPOSITION TO COOK MEDICAL INC.'S
OMNIBUS MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Plaintiff Curtis Shields in the above styled cause ("Plaintiff") and submits the following combined response and memorandum of law in opposition to Cook Medical Inc.'s ("Cook") Omnibus Motion for Summary Judgment. For the reasons stated below, Plaintiffs respectfully request the Court to deny Cook's summary judgment motion.

**INTRODUCTION**

This is an action against Defendant Cook for the injuries that have resulted from its defective product known as an IVC Filter. The IVC Filter that Cook manufactured and sold to Plaintiffs is a medically implantable device that is placed inside of the patient's vein to prevent blood clots from moving through their blood and into their lungs. However, as illustrated through the various pleadings and other documents filed in these cases, Cook's IVC Filter is defective and has caused hundreds if not thousands of plaintiffs and others to suffer serious medically complicated injuries. Many of these plaintiffs will continue to suffer damages for the rest of their life, and some even face death as a result of the IVC Filter's defect. Cook, in an attempt to sweep the rug out from hundreds of plaintiffs' feet, filed an Omnibus Motion for Summary Judgment seeking judgment as a matter of law on claims asserted by hundreds of plaintiffs from various states purporting to ground its argument on the applicable statute of limitations. Cook's omnibus motion seeks to rid the claims of plaintiffs from Alabama, Idaho, Michigan, Texas, and Virginia.

1

(Cook's Memo in Support of Omnibus Motion for Summary Judgment, at p. 1). Simply put, Cook's motion is grossly premature, as discovery has barely commenced, and several genuine questions of material fact remain unanswered.

Cook's motion for summary judgment should be denied first and foremost because Cook does not support the factual contentions in its motion with admissible evidence, which is required to meet its initial burden. Further, under Virginia Law, which applies in this case, a material issue as to when Plaintiff discovered the causal connection between the Cook device and his injury remains unanswered. For the reasons set forth below, Plaintiffs respectfully request this Court to deny Cook's motion for summary judgment.

## STATEMENT OF MATERIAL FACTS IN DISPUTE

Ultimately, the factual dispute that is central to Cook's motion is the date upon which Plaintiff Curtis Shields's claims accrued, thereby triggering the applicable statutes of limitations for those claims. As argued herein, that issue should be determined after discovery, at which time Mr. Shields will be able to present a complete argument, supported by the necessary evidence, as to why the claim accrued at a particular time. Given that this brief focuses mostly on legal issues and the need for more discovery, there is not a long statement of case-related facts. However, certain facts related to the course of this litigation are central to this Court's ruling as to Cook's premature summary judgment motion.

On October 2, 2018, the Court entered its Categorization and Screening Order, Dkt. No. 9322, ordering all MDL plaintiffs to categorize their cases in one of seven categories and to support those selections with specific medical records. The Case Categorization form expressly states that the "Case Category Submission is for the purpose of complying with the Court's Order on the Cook Defendant's Motion for Screening Order and Bellwether Selection Plan only and **is not admissible** and is not to be considered relevant for any other purpose." (Dkt. No. 9638-1, at ECF p. 64997-64998). In asking for an order requiring the Case Categorization Forms, Cook explicitly represented that the "goal" was "to properly categorize cases and draw bellwether cases from those categories." (Dkt. No. 8913, at ECF p. 55986).

No case-specific discovery has occurred in this matter. Specifically, Cook has not taken Mr. Shields's deposition in any capacity regarding this litigation. (*See generally* Defendant's Memorandum, Doc. No. 11726). Cook has not taken the deposition of Plaintiff's treating physicians, implanting physician, or any other physician charged with his care related to his IVC filter. (*See id.*).

## CHOICE OF LAW

Cook's simplistic statement that Indiana choice-of-law rules and Indiana law apply merely because Plaintiffs' filed their claims directly in this MDL Court ignores Seventh Circuit precedent and is legally incorrect. In the Seventh Circuit, it is black letter law that for choice of law analysis, "[f]oreign cases filed directly in a district court as part of an ongoing multidistrict litigation are treated as having originated **outside** of that district." *Dobbs v. DePuy Orthopedics, Inc.,* 842 F.3d 1045, 1048 (7th Cir. 2016) (emphasis added), citing with approval *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 977 F. Supp. 2d 885, 888-89 (N.D. Ill. 2013) (in direct filed product liability case, MDL court applied the law of the state where the plaintiff purchased and used the prescribed product, **not** the MDL forum); *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices and Prods. Liab. Litig.*, 2011 WL 1375011, at *5 (S.D. Ill. April 12, 2011) (similarly applying the law of the state where the plaintiff purchased and used the product, rather than the MDL forum, in direct-filed cases). Tellingly, Cook's Motion for Summary Judgment ignores the Seventh Circuit's holding in *Dobbs*.[1] The Court should reject Cook's erroneous choice of law argument, refuse to apply Indiana law to foreign direct filed cases, and deny Cook's Motion for Summary Judgment.

---

[1] Cook's Motion for Summary Judgment does cite the *Watson Fentanyl* and *Yasmin* cases. But those MDL court rulings actually support Plaintiffs' position and reject Cook's argument. The Court should rule likewise. For further discussion, please see *infra* at page 7.

**I.     For Choice of Law Analysis, Seventh Circuit Precedent Holds that Foreign Cases Filed Directly in an MDL Court Are Treated as Having Originated Outside of the MDL District.   Therefore, Neither Indiana Choice of Law Rules Nor Indiana Law Apply to these Plaintiffs.**

In *Dobbs*, an Illinois plaintiff direct-filed his case into an MDL in the Northern District of Ohio.  The case was later transferred from the Ohio MDL to the Northern District of Illinois.  The Seventh Circuit held that the case originated in Illinois and that Illinois choice-of-law rules applied. *Id.* at 1048.

> Dobbs's claim . . . was filed in the Northern District of Ohio only because the DePuy multidistrict litigation was already in progress there.  Dobbs's complaint stated that the Northern District of Illinois was the appropriate venue absent the multidistrict litigation.  That advises treating the Northern District of Illinois as the original venue.
>
> In fact, district courts in our circuit have taken that approach:  **foreign cases filed directly in a district court as part of ongoing multidistrict litigation are treated as having originated outside of that district.** *E.g. In re Watson Fentanyl Patch Prods. Liab. Litig.*, 977 F. Supp. 2d 885, 888-89 (N.D. Ill. 2013); *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 3:09-MD-02100-DRH, 2011 WL 1375011, at *5 (S.D. Ill. Apr. 12, 2011).  **We ratify that approach here and apply Illinois's choice-of-law rules.**

*Dobbs*, 842 F.3d at 1048 (emphasis added).

The *Watson Fentanyl* decision – cited with approval by the Seventh Circuit in *Dobbs* – involved a case filed directly in the MDL court in the Northern District of Illinois. *In re Watson Fentanyl*, 977 F. Supp. 2d at 886. The case concerned an Ohio resident, who died in Ohio after using a fentanyl patch that was prescribed, purchased, and applied in Ohio. The MDL court applied Ohio law and rejected attempts to apply Illinois law or Illinois' choice-of-law rules.

> "[T]he prevailing rule in this situation is that in a case that was directly filed in the MDL transferee court but that originated elsewhere, the law (including choice of law rules) that applies is the law of the state where the case originated.  *See e.g. In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Prods. Liab. Litig.*, MDL No. 2100, No. 3:09-md-02100-DRH-PMF, 2011 WL 1375011, at *5 (S.D. Ill. April 12, 2011); *In re Bausch & Lomb Inc. Contacts Lens Solution Prods. Liab. Litig*. MDL No. 1785, 2007 WL 3046682, at *3 (D.S.C. Oct. 11, 2007) (noting that 'it would be an odd result to subject plaintiffs to [the law of the MDL

4

forum] simply because they took advantage of the direct filing procedure – a procedure that provides benefits to all parties and preserves judicial resources'). The Court agrees with the cases just cited and concludes that the choice of law rules that apply are those of the state where the case originated.

*In re Watson Fentanyl*, 977 F. Supp. 2d at 888.

The court then analyzed the term "originated." The conclusion: "a direct-filed case in an MDL proceeding is considered to have originated **in the state where the plaintiff purchased and used the prescribed product**. That is how the place of filing is determined in [the] overwhelming majority of product liability cases, and it is a reasonable approach to determining the choice of law issue that has been presented." *Id.* at 889 (emphasis added). Because the Plaintiff prescribed and used the fentanyl patch at his Ohio residence, the Illinois MDL court ruled that Ohio law should apply to this foreign direct-filed case.[2]

*In re Yasmin* – cited with approval by both the *Dobbs* and *Watson Fentanyl* courts – involved numerous cases that originated outside of that court's judicial district and that were filed directly in the Southern District of Illinois MDL. Similar to Cook's faulty reasoning, the *Yasmin* plaintiffs argued that because the court was sitting in diversity in Illinois, Illinois was the proper forum and Illinois choice-of-law principles should control. *In re Yasmin*, 2011 WL 1375011, at *5. Judge Herndon rejected that argument and emphasized in bold type: **"Illinois choice of law principals do not control simply because this MDL Court is sitting in diversity in Illinois."** *Id*. (emphasis in original). The MDL court reasoned that "direct filing orders are beneficial to both parties because they streamline the litigation and help eliminate the judicial inefficiency involved in the MDL transfer process." *Id.* Judge Herndon further wrote:

---

[2] Similar to the approach taken by the Seventh Circuit, the *Watson Fentanyl* MDL court also noted that it could have applied California choice-of-law rules, because the plaintiffs' complaint suggested that they would have filed their lawsuit in California. But even applying California choice of law rules, the Illinois MDL court concluded that Ohio law should apply and not the law of the MDL forum. *Id.* at 889-90.

5

> The Court concludes that the better approach is to treat foreign direct filed cases as if they were transferred from a judicial district sitting in the state where the case originated. For purposes of this analysis, the Court considers the originating state to be the state where the plaintiff purchased and was prescribed the subject drug. Thus, for a foreign direct filed member action involving a plaintiff that purchased and was prescribed the subject drug in Tennessee, the Court will treat that plaintiff's claims as if they were transferred to this MDL from a district court in Tennessee.

*Id.,* at *6. *See also In re Fresenius Granuflo/Naturalyte Dialysate Products Liability Litigation,* 76 F. Supp. 3d 294, 303 (D. Mass. 2015) ("The home forum designation of the direct filing plaintiffs is the best evidence I have of what these plaintiffs would have done absent direct filing. Just as Mississippi plaintiffs would have had a choice between at least two proper forums in the absence of direct filing, so too do they have such an option with the direct filing procedure. I will therefore consider the forum that the direct filing plaintiffs designated on their short form complaints as the originating forum for the choice of law analysis."); *Wahl v. General Electric Co.,* 983 F. Supp. 2d 937, 943 (M.D. Tenn. 2013) ("Most of the courts that have considered this peculiar procedural posture have stated that it is appropriate to apply choice of law rules of the 'originating' jurisdiction [i.e. where the case would have been brought but for the CMO permitting direct filing], rather than the choice of law rules of the MDL Court. These courts have generally reasoned that the direct filing procedure is simply designed to promote judicial economy and conserve the parties' resources, not to alter the choice of law rules."); *In re Avandia Marketing, Sales Practices and Prods Liability Litig.,* 2012 WL 3205620, at *2 (E.D. Pa. August 7, 2012) ("The Court has concluded, as have other MDL courts, that such [direct filed] cases should be governed by the law of the states where Plaintiffs received treatment and prescriptions for Avandia. This ruling will promote uniform treatment between those Plaintiffs whose cases were transferred into the MDL from their home states and those who filed directly into the MDL.").

Thus, the Court has two different approaches for examining the choice-of-law issue for direct-filed cases in this MDL: (1) focus on the court designated by the plaintiff in the Short Form Complaint as the place of proper venue, as discussed in the *Dobbs, In re Fresenius Granuflo/Naturalyte, Dialysate Product Liability Litigation,* and *Wahl* cases; or (2) focus on the place where the plaintiff received the IVC filter prescription and treatment, as held in the *In re Watson Fentanyl, In re Yasmin*, and *In re Avandia* cases. Either way, neither Indiana choice-of-law rules nor Indiana substantive law applies to these cases. It is undisputed that the foreign direct-filed Plaintiffs' Short Form Complaints unambiguously listed venue choices at locations outside of Indiana. Moreover, all 144 of the Plaintiffs subjected to this Motion purchased and were prescribed their IVC filters outside of Indiana.[3] Therefore, the Court should reject Cook's attempt to apply Indiana law and deny Cook's Motion for Summary Judgment on Limitations.

## II. Cook's Motion for Summary Judgment Ignores Seventh Circuit Case Law and Distorts the Meaning of the Term "Originated."

Tellingly, Cook omits from its brief any discussion of the Seventh Circuit's *Dobbs* case. No doubt this is because the Seventh Circuit's black letter holding completely contradicts Cook's argument. In fact, most of the cases cited by Cook stand for the extremely general proposition that federal courts sitting in diversity apply forum choice-of-law rules to determine substantive law. (*See* Cook's Motion for Summary Judgment at 9-10). These cases, however, are irrelevant because they do not pertain to foreign direct-filed cases in an MDL – or have anything to do with an MDL, for that matter.

Cook does cite the *In re Watson Fentanyl* and *In re Yasmin* cases. (*See* Cook Motion for Summary Judgment at 10). Cook even cites *In re Watson Fentanyl* for the proposition that "the

---

[3] No doubt, in most cases, the venue designated by a particular Plaintiff in the Short Form Complaint will be the same place where the Plaintiff received his or her IVC filter and treatment.

7

prevailing rule in this situation is that in a case that was directly filed in the MDL transferee court but that originated elsewhere, the law (including the choice of law rules) that applies is the law of the state where the case originated." (*See id.*, citing *In re Watson Fentanyl*, 977 F. Supp. 2d at 888 (citing *In re Yasmin*, 2011 WL 1375011, at *5)). Thus, Cook's Motion for Summary Judgment completely supports Plaintiffs' position that Indiana law and Indiana choice-of-law rules **do not** apply to these 144 foreign direct-filed cases.

In a desperate effort to make an end-run around this well-established body of law, Cook engages in a game of legal gymnastics to twist the meaning of the term "originate." First, Cook ignores the fact that the *Watson Fentanyl* and *Yasmin* MDL courts both ruled that the law of the MDL forum **does not** apply to foreign direct-filed cases. Second, Cook conveniently omits any discussion as to how these MDL courts came to their respective conclusions.

Instead, Cook distorts the Court's *Lexecon* order regarding **jurisdiction** over cases directly filed in this Court. But **jurisdiction** is not the same as choice of law. As Cook knows, the Court did not address any choice-of-law issues in its *Lexecon* ruling. Moreover, the Court has never been presented with the choice-of-law issue for cases directly filed in the MDL, and the parties have never fully briefed the issue for the Court until now. Therefore, Cook's argument concerning the meaning of the term "originated" is both factually and legally incorrect. The Court should reject Cook's attempt to apply Indiana law and deny Cook's Motion for Summary Judgment.

For choice of law analysis, the law of the Seventh Circuit is that "foreign cases filed directly in a district court as part of ongoing multidistrict litigation are treated as having originated outside of that district." *Dobbs*, 842 F.3d at 1048.  The Court should reject Cook's

attempt to apply Indiana choice of law rules and Indiana law to these 144 foreign direct filed Plaintiffs.

## STANDARD OF REVIEW

This Court's subject-matter jurisdiction is based on the parties' diversity of citizenship; therefore, procedural matters are controlled by federal law and substantive issues are governed by state law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Under federal procedural law, summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he substantive law will identify which facts are material" and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *See id.* A court's function is not to weigh the evidence to determine the truth of the matter, but to determine whether a genuine issue of fact exists for trial. *See id.* at 249. A genuine issue exists if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party. *See id.* When assessing the sufficiency of the evidence in favor of the nonmoving party, the court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." *Zillak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003).

**ARGUMENT AND AUTHORITIES**

I. **Cook has Failed to Meet its Burden on Summary Judgment because it cannot Provide any Admissible Evidence to Show the Absence of a Genuine Issue of Material Fact.**

The first question the Court should consider is whether Cook has met its initial burden on summary judgment. The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323-24 (quotations omitted). Only if that initial burden is met by the moving party does the burden shift "to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding 'the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1537 (10th Cir. 1995) (quoting *Celotex*, 477 U.S. at 322). The moving party must cite admissible evidence to support its fact positions. See *id.*; *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016) (summary judgment evidence must be admissible at trial).

As noted above, Cook's motion seeks judgment as a matter of law on claims asserted by hundreds of plaintiffs from various states, and purports to ground its argument on the applicable statutes of limitations. However, Cook fails to provide a factual basis for its arguments. That is, Cook provides **no admissible evidence** to support its position as to the timing of the relevant events. In fact, Cook explicitly agreed that the information it has used to support its claims **would not** be admissible at trial. (Filing No. 8913, at ECF p. 55986; Filing No. 938-1, at ECF p. 64997-64998.) When Cook requested an order requiring the Case Categorization Forms, it told the Court that the "goal" was "to properly categorize cases and draw bellwether cases from those

categories." (Filing No. 8913, at ECF p. 55986.) Further, the Forms themselves specifically state that they are "not admissible and [are] not to be considered relevant for any other purpose." (Filing No. 938-1, at ECF p. 64997-64998.) Despite the fact that the Court has already decided that the only evidence Cook has to support its summary judgment motion is inadmissible and irrelevant, Cook still attempts to conclusively state that the medical records establish that the date each plaintiff filed suit was beyond the limiting period governing their claims. (Cook's Memo in Support of Omnibus Motion for Summary Judgment, at p. 14-16). However, under Rule 56, merely pointing to the inadmissible forms produced by Plaintiffs is insufficient to establish that Cook is entitled to judgment as a matter of law on dozens of claims. Cook's failure to meet its initial burden on summary judgment is sufficient basis for this Court to deny its motion for summary judgment as to Mr. Shields—and as to every other case.

## II. Contrary to Cook's assertions, Virginia law includes applicable discovery provisions, so fact questions remain as to the date of accrual, and this Court should allow discovery on that issue.

Even if the Court were to somehow conclude that Cook's motion met its burden, despite being supported by absolutely no admissible evidence, this Court should deny summary judgment because Cook's representation of Virginia law is inaccurate, and there are fact issues to be decided once discovery has taken place.

### A. Under Virginia Law, Fact Questions Remain as to the Application of the Statute of Limitations to Plaintiff's Tort Claims and, Therefore, the Motion for Summary Judgment Should be Denied.

Genuine issues of material fact remain unanswered as to whether Mr. Shields filed his personal injury claims against Defendant Cook within Virginia's Statute of Limitations. Cook's entire argument for summary judgment is based on a misunderstanding of Virginia law, as Virginia does, in fact, recognize a discovery rule under § 8.01–249(9). Va. Code § 8.01-249. Cook asks this Court to prematurely grant its motion based on its own conclusion as to the

11

discovery rule, unsupported by any evidence. Accordingly, this Court should deny Cook's Motion for Summary Judgment and allow Mr. Shields's claims to proceed to discovery.

### 1. Contrary to Cook's assertion, Virginia does recognize a discovery rule.

Virginia imposes a two-year statute of limitations on claims for personal injuries. *See* Va. Code § 8.01-230. Under Virginia law, the limitations period begins to run when the injury is sustained. *Smith v. Danek Med., Inc.*, 47 F. Supp. 2d 698, 701 (W.D. Va. 1998). And, at one time, Virginia law did not have a "discovery rule" in applying the statute of limitations." *See Joyce v. A.C. & S., Inc.*, 591 F. Supp. 449, 454 (W.D. Va. 1984).  But equally true is the fact that "[i]n 1995, the General Assembly … [added] subsection 4 to Code § 8.01–249, which contains exceptions to the accrual rule set forth in Code § 8.01–230 for certain causes of action." *Kiser v. A.W. Chesterton Co.*, 736 S.E.2d 910, 915 (Va. 2013). In so doing, "the General Assembly instituted a discovery rule for the accrual of actions based on exposure to asbestos." *Id.* at 920.

In addressing that particular discovery rule, the Virginia Supreme Court recognized that while "a statute of limitations usually commences to run when injury is incurred as a result of a wrongful act[,] …. the General Assembly carved out an exception to this principle for asbestos exposure causes of action." *Kiser*, 736 S.E.2d at 916. The Court noted that in recognizing "the inequity of applying" § 8.01–230 to latent disease cases, the General Assembly enacted the more equitable discovery rule. The Court said that "[w]hile the discovery rule contained in [subsection four] represents an exception to the general rule embodied in § 8.01–230 ... § 8.01–249 follows Virginia law." *Id*. at 919 (internal citation and brackets omitted).

Thus, although § 8.01–249(4) applies only to asbestos-related cases, § 8.01–249 "lists discovery rules applicable to the commencement of the running of the statute of limitations for the specific categories of claims listed in the statute." *Kiser*, 736 S.E.2d at 921.  In other words, Virginia has long recognized an exception to its general rule that the limitations period begins running at the time of injury in particular "causes of action" specifically addressed in § 8.01–249. In doing so, the General Assembly aligned Virginia with the jurisdictions that had already adopted discovery rules. *See Wilson v. Johns-Manville Sales Corp.*, 684 F.2d 111 (D.C. Cir.

1982); *Fearson v. Johns-Manville*, 525 F. Supp. 671 (D.D.C. 1981); *Pierce v. Johns-Manville Sales Corp.*, 464 A.2d. 1020 (Md. 1983).

### 2. Section 8.01–249(9) provides when the statute of limitations commences in Virginia for product liability personal injury actions stemming from an implantable medical device.

In 2016, the General Assembly added subsection nine to § 8.01–249. Section 8.01–249(9) provides, in pertinent part, that a "cause of action shall be deemed to accrue … [i]n products liability actions … for injury to the person resulting from or arising as a result of the implantation of any medical device, when the person knew or should have known of the injury and its causal connection to the device." Va. Code § 8.01-249(9) (2016). The language of the statute is plain and unambiguous. The particular "cause of action" addressed in subsection nine is "for injury to the person resulting from … the implantation of any medical device … ." Va. Code § 8.01-249(9). And such causes of action accrue "when the person knew or should have known of the injury and its causal connection to the device." *Id.*

As with the enactment of § 8.01-249(4), the enactment of § 8.01-249(9) created a discovery rule for the accrual of actions based on injuries resulting from implanted medical devices. Indeed, by its very text, § 8.01-249(9) confers an exception to the traditional rule of accrual. Instead, the cause of action accrues, and thus the statute of limitations begins to run, when the injury and its causal connection to the device are discovered or should have been discovered in the exercise of reasonable diligence. More importantly, § 8.01-249(9) aligns Virginia with the jurisdictions that have already adopted discovery rules in similar cases involving the implantation of medical devices. *See S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996) (applying the discovery rule); *Hovey v. Cook Inc.*, 97 F. Supp. 3d 836, 842 (S.D. W. Va. 2015) (same; applying Texas law); *see also Michals v. Baxter Healthcare Corp.*, 289 F.3d 402, 406 (6th Cir. 2002) (applying Kentucky law) (noting that the "discovery rule" is a means by which to identify the accrual of a cause of action when an injury is not readily ascertainable or discoverable).

When the legislature amends a statute, "[i]t must be presumed ... that in making the amendment the legislature acted with full knowledge of, and in reference to, the existing law upon the same subject and the construction placed upon it by the courts." *City of Richmond v. Sutherland*, 77 S.E. 470, 472 (Va. 1913). The other subsections within § 8.01-249 "begin[] by identifying a specific cause of action and then defining the particular point at which that action accrues." *Kiser*, 736 S.E.2d at 918. Each subsection shares this grammatical structure. And, as noted in *Kiser*, "§ 8.01–249 … contains exceptions to the accrual rule set forth in Code § 8.01–230 for certain causes of action." *Id.* at 915. This clearly and plainly illustrates the General Assembly's intent to create a discovery rule in the specific context of product-liability actions for injuries stemming from the implantation of a defective medical device.

### 3. The Virginia statute of limitations does not bar Plaintiffs' claims.

Cook's argument is based on a misunderstanding of Virginia law and, therefore, is unavailing. Specifically, Cook argues that Virginia Code permits an injured party only two years from the slightest injury to file suit. (Defendant's Motion for Summary Judgment, at pp. 15-16). But as noted above, § 8.01-230 is inapposite. Instead, § 8.01-249(9) dictates when Plaintiffs' cause of action accrues. Moreover, Defendant's reliance on *Smith v. Danek Med.*, 47 F. Supp. 2d 698 (W.D. Va. 1998) and *Joyce v. A.C. & S., Inc.*, 591 F. Supp. 449 (W.D. Va.1984) is misplaced, as those cases were decided well before § 8.01-249(9) was enacted. As of 2016, Virginia Code permits injured parties to call upon the discovery rule seek redress when, as in this case, a defendant's medically implanted device is defective and results in bodily injury. *See* Va. Code § 8.01-249(9).

Here, Plaintiff's injuries resulted from the implant of Cook's medical device and, therefore, § 8.01-249(9) is applicable to Plaintiff's statute of limitations inquiry. However, it is unclear as to when Plaintiff discovered, or should have discovered, the causal connection between his injury and Cook's defective medical device. Although the date of injury is perhaps ascertainable from the medical records, that is not the end of the inquiry under Virginia's discovery rule. As explained above, Plaintiff Shields must also have discovered, or should have

14

discovered through exercising reasonable diligence, **the causal connection** between his injury and Cook's defective medical device. Va. Code § 8.01-249(9).

Cook has argued that the Virginia discovery rule, effective as of July 1, 2016, does not apply in this case because such application would be "retroactive" and "[e]xhibit A confirms that the claims of the 28 Virginia Plaintiffs accrued before July 1, 2016." (*See* MSJ at p. 24, n. 14.) First, Cook ties the date at which the statute applies to the date of accrual, which only serves to emphasize yet another fact question in this case. The question of whether the statute applies—that is, when the claims accrued—requires the court to address factual questions that still remain unanswered, such as when the plaintiffs discovered the causal connection between the Cook device and their injuries. Again, there is no admissible evidence as to any dates, and even if the Court uses the information in the charts, that information fails to establish that Plaintiff's claims **accrued** before 2016, as the charts reveal nothing about Mr. Shields's knowledge. Discovery is needed to establish when Mr. Shields discovered, or should have discovered, the causal connection between Cook's device and his injuries. Second, Cook cites no case law addressing whether the accrual date would even be the date to use in determining retroactivity. Clearly this case was filed long after Va. Code § 8.01-249(9) became established last—the filing date is May 4, 2018—so the Court should conclude that applying the statute to this case would not be a "retroactive" application of the statute at all.

The only case cited by Cook involves the workers' compensation statutes and stands only for the proposition that a statute will not be applied retroactively absent legislative intent. (*See* Cook Br. at p. 24 n.14, citing *Foster v. Smithfield Packing Co.*, 390 S.E.2d 511, 514 (Va. Ct. App. 1990)). A more apposite case, demonstrating that statute-of-limitations issues are determined from the time of filing, is *Hurdle v. Prinz*, 235 S.E.2d 354 (Va. 1977). In *Hurdle*, the question revolved around the legislature's lowering of the "age of majority" from 21 to 18. The key question was, if a plaintiff's claim accrued while the plaintiff was a minor and while the legal age of majority was 21, but then the plaintiff filed suit after the legal age was changed to 18, did the plaintiff have two years from the age of 21 or from the age of 18 to file suit? *Id.* at

355. In applying the statute from age 18, the Supreme Court of Virginia took the approach that the timing rules are measured from the time of filing, not from the time of accrual. The court specifically held that it was not a retroactive application of the statute. *Id.* at 357.

Similarly, it would not be a retroactive application of the statute to apply the discovery rule to Mr. Shields's claims. As discussed above, Virginia had recognized some form of discovery rule long before Mr. Shields was injured, and then Virginia installed a discovery rule specific to this case nearly two years before he filed the suit. This Court, therefore, should conclude that the accrual of the statute-of-limitations for Mr. Shields's tort claims presents a question of fact, to be answered after discovery and, eventually, trial.

In the immediate case, discovery is needed to determine the point at which Mr. Shields discovered the causal connection between the Cook device and his injury. Discovery will help to reveal when he made that discovery, how he made that discovery, and whether he should have made it sooner. Discovery will also help to reveal whether Cook withheld material information from physicians, the general public, and/or its own sales force, thereby causing any delay in Mr. Shields's ability to discovery Cook's role in his injuries and file this lawsuit. (*See* Affidavit of David C. DeGreeff, attached as Exhibit A).

As noted throughout, Cook offers no facts to buttress its arguments, other than pointing to a limited number of medical records, and has attached no evidence. Cook has not taken a single case-specific deposition, served a single interrogatory on Mr. Simmons, or even reviewed all of Plaintiff's medical records. This Court should deny the Motion for Summary Judgment and allow discovery to proceed in this case and the other cases affected by Cook's motion.

### III. Application to Non-Tort Claims
#### a. Express Warranty Claims

Plaintiff does not intend to proceed based on a theory of breach of express warranty.

#### b. Implied Warranty Claims

16

Just as the Court should deny Cook's motion for summary judgment as to the Plaintiff's personal injury claims, it should also deny the motion as to the Plaintiff's implied warranty claim. Cook first argues that under Indiana law, which does not apply in this case, the implied warranty claims of all plaintiffs' merge into the product liability claims and are therefore also time-barred by the Indiana statute of limitations. But as explained above, Indiana law does not apply here, so clearly that argument fails.

Alternatively, Cook states that the same argument applies under Virginia law. However, Cook's analysis demonstrates nothing more than that a claim for breach of implied warranty must be filed within two years of accrual. (*See* Cook Br. at 28). For reasons already described, the time of accrual cannot be determined from the evidence submitted by Cook—because there is none—and this Court should permit discovery before ruling on whether the statute of limitations ran before this case was filed.

### c. Consumer Fraud Claims

Plaintiff's Master Complaint in this case contains numerous allegations that the Cook Defendants had knowledge of the defects with its IVC Filters yet failed to warn doctors and patients. *See* Master Complaint at ¶¶ 3, 4, 46, 50, 52, 55, 56, 57, 58, 77, 81-88, 91, 95, 103-106, 113-120 (continued in Plaintiff's SFC at ¶ 14). Moreover, the tolling provisions included in the Master Complaint at ¶¶ 195-200 support Plaintiff's claims that Cook's withholding of pertinent information prevented Plaintiff from discovering the cause of her injuries. These provisions satisfy the applicable pleading requirements.

Alternatively, if the Court concludes otherwise, it should not dismiss the fraud claims of all 144 Plaintiffs based on an alleged pleading deficiency for which the individual Plaintiffs were not responsible. This Court should permit amendment in the event that the Court deems the current pleading to be insufficient.

      **d. Plaintiff's Request for Punitive Damages Survives Because it is Not a Stand Alone Claim but Rather Derivative of the Claims Supported in this Response.**

    To the extent the Court denies Cook's motion with respect to the arguments made above, it should also deny Cook's argument seeking judgment as a matter of law on Plaintiff's derivative request for punitive damages. Cook fails to identify any bases for disposing of the derivative requests for punitive damages other than its bald assertion that, because Plaintiff's substantive claims fail (which they do not), they cannot be maintained as stand-alone claims. While it is true punitive damage requests are not standalone claims, Plaintiffs have demonstrated that there are a genuine issues of material facts with respect to their personal injury tort claims. Therefore, the Court should deny Cook's argument that Plaintiff's request for punitive damages also fail as a matter of law.

## CONCLUSION

    For the reasons stated herein, Plaintiffs respectfully request that the Court deny Cook's Motion for Summary Judgment. In addition, Plaintiffs request all other and further relief as the Court deems just and proper.

Dated: October 4, 2019

Respectfully submitted,

*/s/ David C. DeGreeff*
Thomas P. Cartmell    MO #45366
Jeffrey M. Kuntz    MO #52371
David C. DeGreeff    MO #55019
WAGSTAFF & CARTMELL LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
816-701-1100
tcartmell@wcllp.com
jkuntz@wcllp.com
ddegreeff@wcllp.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of October, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

*/s/ David C. DeGreeff*
Thomas P. Cartmell         MO #45366
Jeffrey M. Kuntz           MO #52371
David DeGreeff             MO #55019
WAGSTAFF & CARTMELL LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
