EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| **IN RE COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | **Case No. 1:14-ml-2570-RYL-TAB** |
| | **MDL No. 2570** |

**This Document Relates To:**

_____

| | |
|---|---|
| **Marcus Simmons** | **1:18-cv-212** |

_____

## PLAINTIFFS' OPPOSITION TO COOK MEDICAL INC.'S
## OMNIBUS MOTION FOR SUMMARY JUDGMENT

COMES NOW, Plaintiff Marcus Simmons in the above styled cause ("Plaintiff") and submits the following combined response and memorandum of law in opposition to Cook Medical Inc.'s ("Cook") Omnibus Motion for Summary Judgment. For the reasons stated below, Plaintiffs respectfully request the Court to deny Cook's summary judgment motion.

## INTRODUCTION

This is an action against Defendant Cook for the injuries that have resulted from its defective product known as an IVC Filter. The IVC Filter that Cook manufactured and sold to Plaintiffs is a medically implantable device that is placed inside of the patient's vein to prevent blood clots from moving through their blood and into their lungs. However, as illustrated through the various pleadings and other documents filed in these cases, Cook's IVC Filter is defective and has caused hundreds if not thousands of plaintiffs and others to suffer serious medically complicated injuries. Many of these plaintiffs will continue to suffer damages for the rest of their life, and some even face death as a result of the IVC Filter's defect. Cook, in an attempt to sweep the rug out from hundreds of plaintiffs' feet, filed an Omnibus Motion for Summary Judgment seeking judgment as a matter of law on claims asserted by dozens of plaintiffs from various states, purporting to ground its argument on the applicable statute of limitations. Cook's omnibus

motion seeks to rid the claims of plaintiffs from Alabama, Idaho, Michigan, Texas, and Virginia. (Cook's Memo in Support of Omnibus Motion for Summary Judgment, at p. 1). Simply put, Cook's motion is grossly premature, as discovery has barely commenced, and several genuine questions of material fact remain unanswered.

Cook's motion for summary judgment should be denied first and foremost because Cook does not support the factual contentions in its motion with admissible evidence, which is required to meet its initial burden. Further, under Texas Law, which applies in this case, a material issue as to when Plaintiff discovered the causal connection between the Cook device and his injury remains unanswered. For the reasons set forth below, Plaintiffs respectfully request this Court to deny Cook's motion for summary judgment.

## STATEMENT OF MATERIAL FACTS IN DISPUTE

Ultimately, the factual dispute that is central to Cook's motion is the date upon which Plaintiff Marcus Simmons's claims accrued, thereby triggering the applicable statutes of limitations for those claims. As argued herein, that issue should be determined after discovery, at which time Mr. Simmons will be able to present a complete argument, supported by the necessary evidence, as to why the claim accrued at a particular time. Given that this brief focuses mostly on legal issues and the need for more discovery, there is not a long statement of case-related facts. However, certain facts related to the course of this litigation are central to this Court's ruling as to Cook's premature summary judgment motion.

On October 2, 2018, the Court entered its Categorization and Screening Order, Dkt. No. 9322, ordering all MDL plaintiffs to categorize their cases in one of seven categories and to support those selections with specific medical records. The Case Categorization form expressly states that the "Case Category Submission is for the purpose of complying with the Court's Order on the Cook Defendant's Motion for Screening Order and Bellwether Selection Plan only and **is not admissible** and is not to be considered relevant for any other purpose." (Dkt. No. 9638-1, at ECF p. 64997-64998). In asking for an order requiring the Case Categorization Forms,

Cook explicitly represented that the "goal" was "to properly categorize cases and draw
bellwether cases from those categories." (Dkt. No. 8913, at ECF p. 55986).

No case-specific discovery has occurred in this matter. Specifically, Cook has not taken
Mr. Simmons's deposition in any capacity regarding this litigation. (*See generally* Defendant's
Memorandum, Doc. No. 11726). Cook has not taken the deposition of Plaintiff's treating
physicians, implanting physician, or any other physician charged with his care related to his IVC
filter. (*See id.*).

## CHOICE OF LAW

Cook's simplistic statement that Indiana choice-of-law rules and Indiana law apply
merely because Plaintiffs' filed their claims directly in this MDL Court ignores Seventh Circuit
precedent and is legally incorrect. In the Seventh Circuit, it is black letter law that for choice of
law analysis, "[f]oreign cases filed directly in a district court as part of an ongoing multidistrict
litigation are treated as having originated **outside** of that district." *Dobbs v. DePuy Orthopedics,
Inc.,* 842 F.3d 1045, 1048 (7th Cir. 2016) (emphasis added), citing with approval *In re Watson
Fentanyl Patch Prods. Liab. Litig.*, 977 F. Supp. 2d 885, 888-89 (N.D. Ill. 2013) (in direct filed
product liability case, MDL court applied the law of the state where the plaintiff purchased and
used the prescribed product, **not** the MDL forum); *In re Yasmin and Yaz (Drospirenone) Mktg.,
Sales Practices and Prods. Liab. Litig.*, 2011 WL 1375011, at *5 (S.D. Ill. April 12, 2011)
(similarly applying the law of the state where the plaintiff purchased and used the product, rather
than the MDL forum, in direct-filed cases). Tellingly, Cook's Motion for Summary Judgment
ignores the Seventh Circuit's holding in *Dobbs*.[1] The Court should reject Cook's erroneous

---

[1] Cook's Motion for Summary Judgment does cite the *Watson Fentanyl* and *Yasmin* cases. But those
MDL court rulings actually support Plaintiffs' position and reject Cook's argument. The Court should
rule likewise. For further discussion, please see *infra* at page 7.

choice of law argument, refuse to apply Indiana law to foreign direct filed cases, and deny

Cook's Motion for Summary Judgment.

**I.**   **For Choice of Law Analysis, Seventh Circuit Precedent Holds that Foreign Cases Filed Directly in an MDL Court Are Treated as Having Originated Outside of the MDL District.   Therefore, Neither Indiana Choice of Law Rules Nor Indiana Law Apply to these Plaintiffs.**

In *Dobbs*, an Illinois plaintiff direct-filed his case into an MDL in the Northern District of

Ohio.  The case was later transferred from the Ohio MDL to the Northern District of Illinois.

The Seventh Circuit held that the case originated in Illinois and that Illinois choice-of-law rules

applied. *Id.* at 1048.

> Dobbs's claim . . . was filed in the Northern District of Ohio only because the DePuy multidistrict litigation was already in progress there.  Dobbs's complaint stated that the Northern District of Illinois was the appropriate venue absent the multidistrict litigation.  That advises treating the Northern District of Illinois as the original venue.
>
> In fact, district courts in our circuit have taken that approach:  **foreign cases filed directly in a district court as part of ongoing multidistrict litigation are treated as having originated outside of that district.**  *E.g. In re Watson Fentanyl Patch Prods. Liab. Litig*., 977 F. Supp. 2d 885, 888-89 (N.D. Ill. 2013); *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig*., No. 3:09-MD-02100-DRH, 2011 WL 1375011, at *5 (S.D. Ill. Apr. 12, 2011).  **We ratify that approach here and apply Illinois's choice-of-law rules.**

*Dobbs*, 842 F.3d at 1048 (emphasis added).

The *Watson Fentanyl* decision – cited with approval by the Seventh Circuit in *Dobbs* –

involved a case filed directly in the MDL court in the Northern District of Illinois. *In re Watson*

*Fentanyl*, 977 F. Supp. 2d at 886. The case concerned an Ohio resident, who died in Ohio after

using a fentanyl patch that was prescribed, purchased, and applied in Ohio. The MDL court

applied Ohio law and rejected attempts to apply Illinois law or Illinois' choice-of-law rules.

> "[T]he prevailing rule in this situation is that in a case that was directly filed in the MDL transferee court but that originated elsewhere, the law (including choice of law rules) that applies is the law of the state where the case originated.  *See e.g. In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Prods. Liab.*

Litig., MDL No. 2100, No. 3:09-md-02100-DRH-PMF, 2011 WL 1375011, at *5 (S.D. Ill. April 12, 2011); *In re Bausch & Lomb Inc. Contacts Lens Solution Prods. Liab. Litig*. MDL No. 1785, 2007 WL 3046682, at *3 (D.S.C. Oct. 11, 2007) (noting that 'it would be an odd result to subject plaintiffs to [the law of the MDL forum] simply because they took advantage of the direct filing procedure – a procedure that provides benefits to all parties and preserves judicial resources'). The Court agrees with the cases just cited and concludes that the choice of law rules that apply are those of the state where the case originated.

*In re Watson Fentanyl*, 977 F. Supp. 2d at 888.

The court then analyzed the term "originated." The conclusion: "a direct-filed case in an MDL proceeding is considered to have originated **in the state where the plaintiff purchased and used the prescribed product**. That is how the place of filing is determined in [the] overwhelming majority of product liability cases, and it is a reasonable approach to determining the choice of law issue that has been presented." *Id.* at 889 (emphasis added). Because the Plaintiff prescribed and used the fentanyl patch at his Ohio residence, the Illinois MDL court ruled that Ohio law should apply to this foreign direct-filed case.[2]

*In re Yasmin* – cited with approval by both the *Dobbs* and *Watson Fentanyl* courts – involved numerous cases that originated outside of that court's judicial district and that were filed directly in the Southern District of Illinois MDL. Similar to Cook's faulty reasoning, the *Yasmin* plaintiffs argued that because the court was sitting in diversity in Illinois, Illinois was the proper forum and Illinois choice-of-law principles should control. *In re Yasmin*, 2011 WL 1375011, at *5. Judge Herndon rejected that argument and emphasized in bold type: **"Illinois choice of law principals do not control simply because this MDL Court is sitting in diversity in Illinois."** *Id*. (emphasis in original). The MDL court reasoned that "direct filing

---

[2] Similar to the approach taken by the Seventh Circuit, the *Watson Fentanyl* MDL court also noted that it could have applied California choice-of-law rules, because the plaintiffs' complaint suggested that they would have filed their lawsuit in California. But even applying California choice of law rules, the Illinois MDL court concluded that Ohio law should apply and <u>not</u> the law of the MDL forum. *Id.* at 889-90.

Case 1:14-ml-02570-RLY-TAB  Document 12090-2  Filed 10/04/19  Page 6 of 20 PageID #:
Case 1:18-cv-06521-RLY-TAB  Document 1190-2  Filed 10/03/19  Page 6 of 20 PageID #:
89726

orders are beneficial to both parties because they streamline the litigation and help eliminate the

judicial inefficiency involved in the MDL transfer process." *Id.* Judge Herndon further wrote:

> The Court concludes that the better approach is to treat foreign direct filed cases as
> if they were transferred from a judicial district sitting in the state where the case
> originated.  For purposes of this analysis, the Court considers the originating state
> to be the state where the plaintiff purchased and was prescribed the subject drug.
> Thus, for a foreign direct filed member action involving a plaintiff that purchased
> and was prescribed the subject drug in Tennessee, the Court will treat that plaintiff's
> claims as if they were transferred to this MDL from a district court in Tennessee.

*Id.,* at *6.  *See also In re Fresenius Granuflo/Naturalyte Dialysate Products Liability Litigation,*

76 F. Supp. 3d 294, 303 (D. Mass. 2015) ("The home forum designation of the direct filing

plaintiffs is the best evidence I have of what these plaintiffs would have done absent direct filing.

Just as Mississippi plaintiffs would have had a choice between at least two proper forums in the

absence of direct filing, so too do they have such an option with the direct filing procedure. I will

therefore consider the forum that the direct filing plaintiffs designated on their short form

complaints as the originating forum for the choice of law analysis."); *Wahl v. General Electric*

*Co.,* 983 F. Supp. 2d 937, 943 (M.D. Tenn. 2013) ("Most of the courts that have considered this

peculiar procedural posture have stated that it is appropriate to apply choice of law rules of the

'originating' jurisdiction [i.e. where the case would have been brought but for the CMO

permitting direct filing], rather than the choice of law rules of the MDL Court. These courts have

generally reasoned that the direct filing procedure is simply designed to promote judicial

economy and conserve the parties' resources, not to alter the choice of law rules."); *In re*

*Avandia Marketing, Sales Practices and Prods Liability Litig.,* 2012 WL 3205620, at *2 (E.D.

Pa. August 7, 2012) ("The Court has concluded, as have other MDL courts, that such [direct

filed] cases should be governed by the law of the states where Plaintiffs received treatment and

prescriptions for Avandia. This ruling will promote uniform treatment between those Plaintiffs

6

Case 1:14-ml-02570-RLY-TAB   Document 12090-2   Filed 10/04/19   Page 7 of 20 PageID #:
Case 1:18-cv-05202-RLY-TAB   Document 129-1   Filed 10/03/19   Page 7 of 19 PageID #:
89727

whose cases were transferred into the MDL from their home states and those who filed directly into the MDL.").

Thus, the Court has two different approaches for examining the choice-of-law issue for direct-filed cases in this MDL: (1) focus on the court designated by the plaintiff in the Short Form Complaint as the place of proper venue, as discussed in the *Dobbs, In re Fresenius Granuflo/Naturalyte, Dialysate Product Liability Litigation,* and *Wahl* cases; or (2) focus on the place where the plaintiff received the IVC filter prescription and treatment, as held in the *In re Watson Fentanyl, In re Yasmin*, and *In re Avandia* cases. Either way, neither Indiana choice-of-law rules nor Indiana substantive law applies to these cases. It is undisputed that the foreign direct-filed Plaintiffs' Short Form Complaints unambiguously listed venue choices at locations outside of Indiana. Moreover, all 144 of the Plaintiffs subjected to this Motion purchased and were prescribed their IVC filters outside of Indiana.[3] Therefore, the Court should reject Cook's attempt to apply Indiana law and deny Cook's Motion for Summary Judgment on Limitations.

## II.     Cook's Motion for Summary Judgment Ignores Seventh Circuit Case Law and Distorts the Meaning of the Term "Originated."

Tellingly, Cook omits from its brief any discussion of the Seventh Circuit's *Dobbs* case. No doubt this is because the Seventh Circuit's black letter holding completely contradicts Cook's argument. In fact, most of the cases cited by Cook stand for the extremely general proposition that federal courts sitting in diversity apply forum choice-of-law rules to determine substantive law. (*See* Cook's Motion for Summary Judgment at 9-10). These cases, however, are irrelevant because they do not pertain to foreign direct-filed cases in an MDL – or have anything to do with an MDL, for that matter.

---

[3] No doubt, in most cases, the venue designated by a particular Plaintiff in the Short Form Complaint will be the same place where the Plaintiff received his or her IVC filter and treatment.

Cook does cite the *In re Watson Fentanyl* and *In re Yasmin* cases. (*See* Cook Motion for Summary Judgment at 10). Cook even cites *In re Watson Fentanyl* for the proposition that "the prevailing rule in this situation is that in a case that was directly filed in the MDL transferee court but that originated elsewhere, the law (including the choice of law rules) that applies is the law of the state where the case originated." (*See id.*, citing *In re Watson Fentanyl,* 977 F. Supp. 2d at 888 (citing *In re Yasmin*, 2011 WL 1375011, at *5)). Thus, Cook's Motion for Summary Judgment completely supports Plaintiffs' position that Indiana law and Indiana choice-of-law rules **do not** apply to these 144 foreign direct-filed cases.

In a desperate effort to make an end-run around this well-established body of law, Cook engages in a game of legal gymnastics to twist the meaning of the term "originate." First, Cook ignores the fact that the *Watson Fentanyl* and *Yasmin* MDL courts both ruled that the law of the MDL forum **does not** apply to foreign direct-filed cases. Second, Cook conveniently omits any discussion as to how these MDL courts came to their respective conclusions.

Instead, Cook distorts the Court's *Lexecon* order regarding **jurisdiction** over cases directly filed in this Court. But **jurisdiction** is not the same as choice of law. As Cook knows, the Court did not address any choice-of-law issues in its *Lexecon* ruling. Moreover, the Court has never been presented with the choice-of-law issue for cases directly filed in the MDL, and the parties have never fully briefed the issue for the Court until now. Therefore, Cook's argument concerning the meaning of the term "originated" is both factually and legally incorrect. The Court should reject Cook's attempt to apply Indiana law and deny Cook's Motion for Summary Judgment.

For choice of law analysis, the law of the Seventh Circuit is that "foreign cases filed directly in a district court as part of ongoing multidistrict litigation are treated as having

originated outside of that district." *Dobbs*, 842 F.3d at 1048. The Court should reject Cook's

attempt to apply Indiana choice of law rules and Indiana law to these 144 foreign direct filed

Plaintiffs.

## STANDARD OF REVIEW

This Court's subject-matter jurisdiction is based on the parties' diversity of citizenship;

therefore, procedural matters are controlled by federal law and substantive issues are governed

by state law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Under federal procedural law,

summary judgment is only appropriate where "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986). "[T]he substantive law will identify which facts are material" and which are irrelevant.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is material if it is a

legal element of the claim under the applicable substantive law which might affect the outcome

of the case. *See id.* A court's function is not to weigh the evidence to determine the truth of the

matter, but to determine whether a genuine issue of fact exists for trial. *See id.* at 249. A genuine

issue exists if sufficient evidence is presented favoring the nonmoving party for a jury to return a

verdict for that party. *See id.* When assessing the sufficiency of the evidence in favor of the

nonmoving party, the court must view all the evidence, and all factual inferences reasonably

drawn from the evidence, "in the light most favorable to the non-moving party." *Zillak v.

AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003).

# ARGUMENT AND AUTHORITIES

**I.  Cook has Failed to Meet its Burden on Summary Judgment because it cannot Provide any Admissible Evidence to Show the Absence of a Genuine Issue of Material Fact.**

The first question the Court should consider is whether Cook has met its initial burden on summary judgment. The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323-24 (quotations omitted). Only if that initial burden is met by the moving party does the burden shift "to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding 'the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1537 (10th Cir. 1995) (quoting *Celotex*, 477 U.S. at 322). The moving party must cite admissible evidence to support its fact positions. See *id.*; *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016) (summary judgment evidence must be admissible at trial).

As noted above, Cook's motion seeks judgment as a matter of law on claims asserted by hundreds of plaintiffs from various states, and purports to ground its argument on the applicable statutes of limitations. However, Cook fails to provide a factual basis for its arguments. That is, Cook provides **no admissible evidence** to support its position as to the timing of the relevant events. In fact, Cook explicitly agreed that the information it has used to support its claims **would not** be admissible at trial. (Filing No. 8913, at ECF p. 55986; Filing No. 938-1, at ECF p. 64997-64998.) When Cook requested an order requiring the Case Categorization Forms, it told the Court that the "goal" was "to properly categorize cases and draw bellwether cases from those categories." (Filing No. 8913, at ECF p. 55986.) Further, the Forms themselves specifically state

10

that they are "not admissible and [are] not to be considered relevant for any other purpose."
(Filing No. 938-1, at ECF p. 64997-64998.) Despite the fact that the Court has already decided
that the only evidence Cook has to support its summary judgment motion is inadmissible and
irrelevant, Cook still attempts to conclusively state that the medical records establish that the
date each plaintiff filed suit was beyond the limiting period governing their claims. (Cook's
Memo in Support of Omnibus Motion for Summary Judgment, at p. 14-16). However, under
Rule 56, merely pointing to the inadmissible forms produced by Plaintiffs is insufficient to
establish that Cook is entitled to judgment as a matter of law on dozens of claims. Cook's failure
to meet its initial burden on summary judgment is sufficient basis for this Court to deny its
motion for summary judgment as to Mr. Simmons—and as to every other case.

## II. Contrary to Cook's assertions, Texas law includes applicable discovery provisions, so fact questions remain as to the date of accrual, and this Court should allow discovery on that issue.

Even if the Court were to somehow conclude that Cook's motion met its burden, despite
being supported by absolutely no admissible evidence, this Court should deny summary
judgment because Cook's representation of Texas law is inaccurate, and there are fact issues to
be decided once discovery has taken place.

### A. Under Texas law, Plaintiff can call upon the discovery rule because the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable.

Under Texas law, a suit for personal injury must be brought "not later than two years
after the cause of action accrues." Tex. Civ. Prac. & Rem. Code § 16.003(a). "[A] cause of
action generally accrues when the wrongful act causes an injury, regardless when the plaintiff
learns of the injury." *Pavich v. Zimmer, Inc*., 157 F.3d 903 (5th Cir. 1998). But there is an
exception to the general rule. Under Texas's discovery rule, an action does not accrue until the
claimant "knows or, exercising reasonable diligence, should have known of the facts giving rise

11

to the cause of action." *Id.* at 2. "[A]ccrual of a cause of action is deferred … in discovery rule cases in which the alleged wrongful act and resulting injury were inherently undiscoverable at the time they occurred but may be objectively verified." *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996). Thus, to avail oneself of the discovery rule and therefore toll the statute of limitations, two elements must be present – the injury must be inherently undiscoverable and also objectively verifiable.

The inherently undiscoverable element of the discovery rule is present "when the [wrongful act] and [the resulting] injury were unknown to the plaintiff because of their very nature and not because of any fault of the plaintiff, …." *S.V.*, 933 S.W.2d at 6-7. Thus, the nature of the injury, the circumstances in which the injury occurred and the plaintiff's diligence in discovering the injury are relevant to the determination as to whether the discovery rule applies. *Id.* at 7. But the crux of the inquiry is "whether [the case at issue] is of the type to which the discovery rule applies." *Brandau v. Howmedica Osteonics Corp.*, 439 Fed. App'x. 317, 321 (5th Cir. 2011). And courts applying Texas law have "repeatedly held that the discovery rule defers the accrual of injuries resulting from implanted devices." *Id.* at 322; *see also Childs v. Haussecker*, 974 S.W.2d 31, 37 (Tex. 1998) ("[A] latent injury … is the epitome of the type of injury that is often inherently undiscoverable within the applicable limitations period.").

In *Pavich*, for instance, "[the plaintiff] began experiencing increased pain and hearing a popping sound as he moved his back" after a spinal-rod fracture. *Pavich v. Zimmer, Inc.*, 157 F.3d 903 (5th Cir. 1998). The court first found that the discovery rule exception applied because the plaintiff's injury was inherently undiscoverable, and his injury was objectively verifiable. The injury was inherently undiscoverable because "[the plaintiff] was not able to discover that the rods were defective until his pain began." *Id.* The court based its finding on the fact that there was no sudden trauma that caused the onset of the claimant's pain and the defective products causing the injury "were not visible to the naked eye, nor were the breaks readily discernable through palpation." *Id.*; *see also Hovey v. Cook Inc.*, 97 F. Supp. 3d 836, 842

12

(S.D.W. Va. 2015) (applying Texas law) (explaining that because the plaintiff "could not see the implant with her naked eye to observe any defects", the wrongful act and resulting injuries … [fell] into the category of 'inherently undiscoverable' under Texas law, ….").[4]

Similarly, Plaintiff's evidence of injury is objectively verifiable. An injury is objectively verifiable when "[t]he facts upon which liability [is] asserted [is] demonstrated by direct, physical evidence." *S.V.*, 933 S.W.2d at 7. But "even when symptoms do arise that make the fact of injury objectively verifiable, the injury and its etiology are difficult to diagnose and ascertain." *Childs*, 974 S.W.2d at 38. This is because the symptoms associated with inherently undiscoverable injuries do not necessarily ossify but, to the contrary, gradually develop over time. Innumerable factors, such as "the lengthy latency period, the many potential causes of the specific symptoms, and some physicians' lack of education and experience" make it more difficult for a physician, let alone a "blamelessly ignorant plaintiff," to discern the causal connection between the injury and the defective product. *Id.* Here, it is undisputed that the injury is the result of a defect in Cook's IVC Filter.

As a result, the Texas discovery rule applies to this case and "accrual is tolled until the plaintiff discovers or in the exercise of reasonable diligence should have discovered the injury and *that it was likely caused by the wrongful acts of another*." *Hovey*, 97 F. Supp. 3d at 843 (citing *Childs v. Haussecker*, 974 S.W.2d 31, 40 (Tex. 1998)) (emphasis in original).

### 1. A genuine issue of material fact exists as to when Plaintiff knew or should have known of the wrongful act and resulting injury.

The Texas discovery rule operates to toll the limitations period until the plaintiff has knowledge that her physical manifestations (symptoms) are associated with using the defendant's product that is at issue. *See id.* In the context of implanted medical devices, "once a

---

[4] Cook's reliance on *Pavich* is misplaced. The claim in *Pavich* did not accrue when the complications and/or injury complained of is demonstrated on imaging or otherwise diagnosed in medical records. *See* Def. MSJ, at p. 14. Rather, the two-year limitations period began to run the date on which the doctor "attributed [the plaintiff's] pain to probable breaks in the [defective] rods. [And] recommended a consultation and an X-ray to verify the breaks." *Pavich v. Zimmer, Inc.*, 157 F.3d 903 (5th Cir. 1998).

plaintiff learns that she has been harmed and **associates that harm with a potential tortfeasor**

(such as a product manufacturer), she has two years to discover relevant evidence; difficulty in

obtaining a confirming diagnosis during that interval does not toll the two-year period." *Vaught*

*v. Showa Denko K.K.*, 107 F.3d 1137, 1141 (5th Cir. 1997) (emphasis added). Commencement

of the limitations period occurs when the plaintiff's doctor[5] informs the patient either that their

injurious complications are likely being caused by the medical device, or that removal of the

plaintiff's medical device is needed to treat the manifested injurious symptoms. *See Porterfield*

*v. Ethicon*, Inc., 183 F.3d 464, 467 (5th Cir. 1999) (finding that plaintiff's claim accrued when

she became aware that "her physical problems were associated with the mesh, …") (emphasis

added).

For example, as to the question of "when the two-year limitations period began to run,"

the court in *Pavich* "look[ed] to when [the plaintiff] acquired knowledge of facts which, in the

exercise of reasonable diligence, would lead to the discovery of his injury." *Pavich*, 157 F.3d

903 (citation omitted). The court rejected the argument that the limitations period commenced

when "[the plaintiff] began to experience increased pain." *Id*. Rather, the court found that the

plaintiff's "cause of action accrued" on May 12, 1994, when "Dr. Carter's clinical notes on that

date reveal[ed] that he found 'some evidence of probable breaking of the Harrington rods.'" *Id.*

More specifically, the court concluded that the two-year limitations period began to run the date

on which the doctor "attributed [the plaintiff's] pain to probable breaks in the [defective] rods.

[And] recommended a consultation and an X-ray to verify the breaks." *Id*.

Moreover, in *Hovey v. Cook*, the court left the question of when the plaintiff should have

discovered the nature of her injury to the jury. *Hovey*, 97 F. Supp. 3d at 844. The court found

that "[b]ecause none of [the plaintiff's] doctors identified a defect in the Stratasis as the cause of

---

[5] While there may be other ways a plaintiff can causally associate their injury to a medical device's
failure, Cook's argument fails to indicate how Plaintiff could have done so in this case; rather, Cook relies
solely on the limited medical records produced in these cases (none of which it attached to the motion) to
support its argument of disposing Plaintiff's claims under the applicable statute of limitations. As
illustrated throughout, though, the Court should reject Cook's arguments.

her injuries, a jury could find that [the plaintiff] did not possess facts that would lead a reasonable person to further investigate into wrongdoing until 2013, when [the plaintiff] saw an Internet advertisement." *Id.* The court based its decision, in part, on the conversations between the plaintiff and her doctors. It pointed to the doctor's comment to the plaintiff "that a less invasive procedure was available that would allow her to retain the sling and avoid recurrence of incontinence." *Id.* at 833. The court, therefore, concluded that "[the plaintiff] had no facts at this time that would warrant a reasonable person to investigate into the existence of a defect in the Stratasis." *Id.*

In both cases above, the crucial point in determining when the statute of limitations began to run was whether the plaintiff had knowledge of facts which would cause a reasonable person to diligently make inquiry to determine his or her legal rights. And when there is a factual dispute as to when the plaintiff acquired such information, such determination is one for the finder of fact.

In the immediate case, discovery is needed to determine the point at which Mr. Simmons discovered that his injuries were "likely caused by the wrongful acts of another." *Hovey*, 97 F. Supp. 3d at 843. Discovery will help to reveal when he made that discovery, how he made that discovery, and whether he should have made it sooner. Discovery will also help to reveal whether Cook withheld material information from physicians, the general public, and/or its own sales force, thereby causing any delay in Mr. Simmons's ability to discovery Cook's role in his injuries and file this lawsuit. (*See* Affidavit of David C. DeGreeff, attached as Exhibit A). As noted throughout, Cook offers no facts to buttress its arguments, other than pointing to a limited number of medical records, and has attached no evidence. Cook has not taken a single case-specific deposition, served a single interrogatory on Mr. Simmons, or even reviewed all of Plaintiff's medical records. This Court should deny the Motion for Summary Judgment and allow discovery to proceed in this case and the other cases affected by Cook's motion.

### III.  Other Non-Tort Claims

#### a.  Express Warranty Claim

Plaintiff does not intend to proceed based on a theory of breach of express warranty.

#### b.  Implied Warranty Claims

Just as the Court should deny Cook's motion for summary judgment as to the Plaintiff's personal injury claims, it should also deny the motion as to the Plaintiff's implied warranty claim. Cook first argues that under Indiana law, which does not apply in this case, the implied warranty claims of all plaintiffs' merge into the product liability claims and are therefore also time-barred by the Indiana statute of limitations. But as explained above, Indiana law does not apply here, so clearly that argument fails.

Alternatively, Cook states that the same argument applies under Texas law. However, Cook's analysis demonstrates nothing more than that a claim for breach of implied warranty must be filed within four years of the sale or delivery of the product. (*See* Cook Br. at 28). Cook simply ignores the potential application of the discovery rule. In some cases, Texas courts do apply the discovery rule to claims for breach of implied warranty.  *See Baleares Link Exp., S.L. v. GE Engine Servs.-Dallas, LP*, 335 S.W.3d 833, 837 (Tex. App. 2011). Thus, the same analysis as to why the tort claims should go forward applies with equal force to the claim for breach of implied warranty.

For reasons already described, the time of accrual cannot be determined from the evidence submitted by Cook—because there is none—and this Court should permit discovery before ruling on whether the statute of limitations ran before this case was filed.

#### c.  Consumer Fraud Claims

Plaintiff's Master Complaint in this case contains numerous allegations that the Cook Defendants had knowledge of the defects with its IVC Filters yet failed to warn doctors and patients. *See* Master Complaint at ¶¶ 3, 4, 46, 50, 52, 55, 56, 57, 58, 77, 81-88, 91, 95, 103-106, 113-120 (continued in Plaintiff's SFC at ¶ 14). Moreover, the tolling provisions included in the

Master Complaint at ¶¶ 195-200 support Plaintiff's claims that Cook's withholding of pertinent

information prevented Plaintiff from discovering the cause of her injuries. These provisions

satisfy the applicable pleading requirements.

       Alternatively, if the Court concludes otherwise, it should not dismiss the fraud claims of

all 144 Plaintiffs based on an alleged pleading deficiency for which the individual Plaintiffs were

not responsible. This Court should permit amendment in the event that the Court deems the

current pleading to be insufficient.

> ### d.  Plaintiff's Request for Punitive Damages Survives Because it is Not a Stand Alone Claim but Rather Derivative of the Claims Supported in this Response.

       To the extent the Court denies Cook's motion with respect to the arguments made above,

it should also deny Cook's argument seeking judgment as a matter of law on Plaintiff's

derivative request for punitive damages. Cook fails to identify any bases for disposing of the

derivative requests for punitive damages other than its bald assertion that, because Plaintiff's

substantive claims fail (which they do not), they cannot be maintained as standalone claims.

While it is true loss of consortium and punitive damage requests are not standalone claims,

Plaintiffs have demonstrated that there are a genuine issues of material facts with respect to their

personal injury tort claims. Therefore, the Court should deny Cook's argument that Plaintiff's

request for punitive damages also fail as a matter of law.

## CONCLUSION

       For the reasons stated herein, Plaintiffs respectfully request that the Court deny Cook's

Motion for Summary Judgment. In addition, Plaintiffs request all other and further relief as the

Court deems just and proper.

Case 1:14-ml-02570-RLY-TAB Document 12090-2 Filed 10/04/19 Page 18 of 20 PageID #:
Case 1:18-cv-00212-RLY-TAB Document 129 Filed 10/03/19 Page 18 of 18 PageID #:
89738

Dated:  October 3, 2019                     Respectfully submitted,


                                            /s/ David C. DeGreeff
                                            Thomas P. Cartmell        MO #45366
                                            Jeffrey M. Kuntz          MO #52371
                                            David C. DeGreeff         MO #55019
                                            WAGSTAFF & CARTMELL LLP
                                            4740 Grand Avenue, Suite 300
                                            Kansas City, MO 64112
                                            816-701-1100
                                            tcartmell@wcllp.com
                                            jkuntz@wcllp.com
                                            ddegreeff@wcllp.com
                                            *Counsel for Plaintiffs*



## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of October, 2019, I electronically filed the foregoing

document with the Clerk of the Court using the CM/ECF system which will send notification of

such filing to the CM/ECF participants registered to receive service in this MDL.


                                            /s/ David C. DeGreeff
                                            Thomas P. Cartmell        MO #45366
                                            Jeffrey M. Kuntz          MO #52371
                                            David C. DeGreeff         MO #55019
                                            WAGSTAFF & CARTMELL LLP
                                            4740 Grand Avenue, Suite 300
                                            Kansas City, MO 64112

## AFFIDAVIT OF DAVID C. DEGREEFF, ESQ.

STATE OF MISSOURI          )
                                     ) ss
COUNTY OF JACKSON         )

1.      I, David C. DeGreeff, am over the age of 18 and fully competent to testify to the matters stated herein.

2.      I have personal knowledge of the facts stated herein.

3.      I am an attorney at the law firm Wagstaff & Cartmell LLP.  I represent the following Plaintiffs (among others) in the IVC Filter MDL: Steven Land (1:17-cv-2349), Marcus Simmons (1:18-cv-212), and Curtis Shields (1:18-cv-1379).

4.      This affidavit is made pursuant to Rule 56(d).  Additional discovery is needed before those three Plaintiffs can respond adequately to the summary judgment motion filed by Defendant Cook Medical, Inc. ("Cook"), if the Court determines that Cook has met its initial burden on summary judgment (which the above-named Plaintiffs contest), thereby triggering the Plaintiffs' obligation to bring forth contrary evidence.

5.      No case-specific discovery has been done on any of the three above-named cases. Case specific discovery will reveal evidence pertinent to the statute-of-limitations issues raised by Cook's motion, including information about when the Plaintiffs first discovered that Cook's defective product was the source of their injuries, how they made that discovery, and whether other information indicates that they should have made that discovery sooner.

6.      Plaintiffs also need additional discovery as to Cook's role in any delay in these Plaintiffs having the necessary knowledge to bring their claims at an earlier time.  For instance, all Plaintiffs have alleged that Cook fraudulently concealed material information, thereby preventing the Plaintiffs from learning that Cook's product was defective and caused their

injuries. Discovery would likely reveal information about what Cook concealed from these plaintiffs' and their physicians, as well as its own sales force, about the various injuries caused by Cook's IVC filters and the frequency and severity of those injuries.

FURTHER, affiant sayeth naught.

In witness whereof, I have affixed my signature this 3rd day of October, 2019.

David C. DeGreeff, Esq.

Subscribed and sworn to before me, this 3rd day of October, 2019.

Notary Public

My Commission expires:

April 9, 2020

MICHELLE GOLDWASSER
My Commission Expires
April 9, 2020
Jackson County
Commission #12414155

NOTARY PUBLIC
NOTARY SEAL
STATE OF MISSOURI

EXHIBIT A