UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This document relates to:
144 Cases From Five States Listed in Exhibit A

## COOK DEFENDANTS' REPLY MEMORANDUM TO PSC'S RESPONSE TO COOK'S OMNIBUS MOTION FOR SUMMARY JUDGMENT BASED UPON STATUTE OF LIMITATIONS

Cook submits the following reply in support of its omnibus motion for summary judgment in over 100 cases based on the statute of limitations (Dkt. 11725) and in direct reply to the Plaintiff's Steering Committee's Response to that motion (Dkt. 11983).  The PSC's Response focuses solely on the discrete issue of the applicability of Indiana's statute of limitations to these cases, and Cook responds to those arguments here.[1]  ***Notably, nearly a dozen Plaintiffs <u>disagree</u> with the PSC and <u>agree</u> with Cook that Indiana's statute of limitations applies to the cases identified in Cook's omnibus motion for summary judgment***.[2]

The PSC's Response offers just two arguments against the application of Indiana's statute of limitations, neither of which survives examination:

---

[1] Cook has simultaneously filed its omnibus reply memorandum addressing the other issues raised in individual Plaintiffs' case-specific responses.

[2] *See* Dkts. 10953 (Plaintiff Surles's Response), 10955 (Plaintiff Ray's Response), 10956 (Plaintiff Castillo's Response),10957 (Plaintiff Coleman's Response), 11958 (Plaintiff Boatner's Response), 11959 (Plaintiff Loose's Response), 11965 (Plaintiff Devine's Response), 11969 (Plaintiff Bartoletta's Response), 11986 (Plaintiff Horton's Response), 11989 (Plaintiff Hollebeek's Response) & 12010 (Plaintiff Nitz's Response).

1. The PSC argues that some form of judicial estoppel bars Cook from arguing the application of Indiana's choice-of-law rules. But the PSC offers no analysis of the requirements for application of that doctrine, and the circumstances here demonstrate that doctrine is both legally and factually inapplicable.

2. The PSC argues that Plaintiffs' cases are "direct filed" cases and therefore subject to the choice-of-law rules of their home states. But the Court has already ruled in its *Lexecon* decision that cases originally filed in this District (which includes all of the cases at issue here) "originated" in this district and are not "direct-filed" cases (that is, cases treated as if they had originated in another district and had been transferred to this District by the Judicial Panel on Multi-District Litigation pursuant to Section 1407). *See* Entry for Proceedings Held on June 13, 2019, Dkt. 11131, p. 2.

The Court should apply Indiana's statute of limitations to these originally filed cases. Indiana's choice-of-law rules govern cases that originate in this forum, and all of the cases at issue in Cook's omnibus motion for summary judgment originated here, as this Court previously concluded. *See id.* And neither the PSC nor any individual Plaintiff disputes Cook's contention that Indiana's choice-of-law rules treat statutes of limitations as procedural and therefore governed by Indiana law, regardless of what state's law may apply to the merits of a Plaintiff's claims. *See Lee v. Estate of Cain*, 476 N.E.2d 922, 924 (Ind. Ct. App. 1985) ("It is well settled that the law of the forum state governs in procedural matters and the limitations statutes, being procedural in nature, fall within the rule."); Dkt. 11726 at 11-12 (collecting cases). Indiana's statute of limitations therefore applies to these cases.

# ARGUMENT

I. **The *Graham* Summary Judgment Motion Has No Effect on The Application of Indiana's Statute of Limitations.**

The PSC first argues that the Court should reject Cook's argument applying the Indiana statute of limitations to these cases because Cook moved for summary judgment in February 2016 in one case out of the more than 6,000 cases in this MDL—*Graham*—based on the Kansas statute of limitations. Dkt. 11983 at 4-5. Although the PSC offers no authority to support its argument, it claims that the doctrine of judicial estoppel "provides guidance" that suggests that the Court should "reject Cook's contrary position out of hand." *Id.* at 5. The PSC's invocation of judicial estoppel fails for multiple reasons.

Although the PSC's response mentions judicial estoppel, it fails to address what federal law requires for the application of that doctrine.[3] The United States Supreme Court and the Seventh Circuit have delineated the factors that "typically inform the decision whether to apply the doctrine in a particular case." *See e.g., New Hampshire v. Maine,* 532 U.S. 742, 750 (2001). Those factors are:

1. "[A] party's later position must be clearly inconsistent with its earlier position." *New Hampshire,* 532 U.S. at 750–51.

2. "[T]he party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled." *Id.*

---

[3] Federal law governs the application of the doctrine of judicial estoppel in this Court. *See Jarrard v. Cdi Telecommunications, Inc.*, 408 F.3d 905, 914 (7th Cir. 2005) (holding that federal, not state, law governs the doctrine even in diversity cases); *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.,* 179 F.3d 523, 527 n. 1 (7th Cir.1999) (same).

3. "[T]he party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.*

4. [T]he operative facts remain the same in both cases." *Jarrard v. Cdi Telecomm., Inc.*, 408 F.3d 905, 915 (7th Cir. 2005) (citing *Ogden Martin Sys. of Indianapolis, Inc. v. Whiting Corp.,* 179 F.3d 523, 527 (7th Cir.1999)).

Plaintiffs cannot meet *any* of these four factors.

First, Cook's present position is not "clearly inconsistent with its previous position." *New Hampshire,* 532 U.S. at 750–51. In the current motion, Cook maintains that, in an MDL in which *no* direct-filing order has been entered, an MDL court should apply the choice-of-law rules of the state in which each of these cases "originated," in these cases the state of Indiana. Dkt. 11726 at 10 ("courts apply the choice-of-law rules of the state where the case 'originated'"). In contrast, Cook's motion in *Graham* argued that, in an MDL in which a direct-filing order *has* been entered, the court should apply to direct-filed cases the choice-of-law rules of the state from which they presumably would have been transferred had they not been filed under the direct-filing order. Indeed, the very passage from Cook's *Graham* motion that the PSC quotes highlights this distinction:

> When a case based on diversity is part of an MDL *and is directly filed in the MDL forum as the result of a direct filing order*, courts have found that the "better approach is to treat foreign direct filed cases [i.e., cases originating outside of this Court's judicial district but filed directly into the MDL] as if they were transferred from a judicial district sitting in the state where the case originated." *In re Yasmin*, 2011 U.S. Dist. LEXIS 39820, at *15, *18 (S.D. Ill. April 11, 2011.)

PSC Resp. at 4 (Dkt. 11983) (quoting Cook's *Graham* motion, Dkt. 1051) (brackets in original motion, emphasis added).

Cook's present position and its position in *Graham* thus are in no way inconsistent, much less "clearly inconsistent." The motions address two different situations, one in which an MDL court has issued a direct-filing order and one in which it has not. Indeed, Cook's position then and now on the application of law to directly filed cases has not changed. What has changed, however, is the recognition by the Court and the parties that there is in fact ***no direct-filing order*** in this case. *See* Entry for Proceedings Held on June 13, 2019, Dkt. 11131, p. 2. The fact that the parties mistakenly assumed three years ago in one of more than 6,000 cases before this Court that the case had been filed pursuant to a direct-filing order does not alter the character of the position Cook took, nor can such a mere mistake of fact support judicial estoppel. *See, e.g., Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2002) ("judicial estoppel is inappropriate in cases of conduct amounting to nothing more than mistake or inadvertence") (collecting cases); *In re Chambers Dev. Co., Inc.,* 148 F.3d 214, 229 (3d Cir. 1998) ("the doctrine of judicial estoppel does not apply when the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court"). The first factor for application of judicial estoppel therefore does not exist here.

Second, Cook did not "succeed[] in persuading a court to accept" its earlier position. *New Hampshire*, 532 U.S. at 750-51. There was no "persuasion" involved. Cook and Graham both ***assumed*** that Kansas's statute of limitations applied to Graham's claim. *See* Case No. Case 1:15-cv-00764-RLY-TAB, Dkt. 161 at 4, n.1 ("Plaintiff does not disagree with Defendants' application of the substantive law of Kansas as it relates to statute of limitations."). Because the parties had agreed, the Court did not even analyze choice of law in its ruling; it simply applied Kansas law. *See* Dkt. 5575 at 3-6 & n.1 (noting that "The parties agree that Kansas law applies."). Nothing in the parties' application of Kansas law in *Graham* suggests that the Court's

acceptance of Cook's current argument for the application of Indiana law in these cases would create any "perception" that the Court had previously been "misled." *New Hampshire*, 532 U.S. at 750-51; *see also Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 548 (7th Cir. 2014) ("Courts do not apply judicial estoppel for the benefit of the [party] but try to protect courts and creditors from deception and manipulation."). The second factor is thus absent here.

Third, Cook would not "derive an unfair advantage or impose an unfair detriment on" Plaintiffs if the Court adopts Cook's argument here. *New Hampshire*, 532 U.S. at 750-51. Cook gained no unfair advantage through the application of Kansas law in the *Graham* case. The Court granted summary judgment in *Graham* based on Kansas's two-year statute of limitation, concluding that Plaintiff Graham's injury "was reasonably ascertainable soon after her September 9, 2011, surgery." Dkt. 5575 at 3-6. But even if Cook had argued in *Graham* that Indiana's statute of limitations applied, the result in *Graham* would have been the same. Like Kansas, Indiana imposes a two-year statute of limitations on product liability claims, *see* Ind. Code § 34-20-3-1, and, as discussed in Cook's current motion, Indiana has a limited discovery rule that is as strict or stricter than Kansas's. *See* Dkt. 11276 at 12-17. Cook thus gained no advantage from the application of Kansas law in *Graham*, and Plaintiff offers no suggestion of now the correct application of Indiana law to the present cases would create an "unfair detriment" to these Plaintiffs. *See In re Knight–Celotex, LLC*, 695 F.3d 714, 724 (7th Cir. 2012) (affirming denial of judicial estoppel, noting that "nothing in the record suggests that [trustee] stood to derive an unfair advantage or impose an unfair detriment on [petitioner] if not estopped"). Plaintiffs offer no support for the third factor of judicial estoppel.

Fourth, the "operative facts" here are not the same as they were in *Graham*. *Jarrard*, 408 F.3d at 915; *see also* Black's Law Dictionary at 611 (7th ed. 1999) (defining "operative fact" as

US.125012892

"A fact that affects an existing legal relation, esp. a legal claim"). As discussed above, the application of Kansas law in *Graham* rested on a key "operative fact": the parties' mistaken belief that Plaintiff Graham's case was filed under a direct-filing order. That "operative fact" is not true in the present motion: the parties and the Court have all recognized that Plaintiffs did not seek, and the Court did not enter, a direct-filing order in this MDL. *See* Entry for Proceedings Held on June 13, 2019, Dkt. 11131, p. 2 ("There is no direct-filing order entered in this case"). In the absence of such a direct-filing order, the Court made clear in its *Lexecon* Order that cases filed in this District in fact "originated" in this Court. *See id.* ("the court has complete authority over cases originally filed in this court, just as it would over any other case originally filed in this district"). Because both parties incorrectly assumed that *Graham* had been filed pursuant to a direct-filing order, the operative facts are not the same here.

In sum, the PSC errs in arguing that the parties' application of the Kansas statute of limitations in *Graham* somehow entitles the Plaintiffs here to insist on the erroneous application of foreign statutes of limitations to the thousands of cases that originated in this district. Judicial estoppel was never intended to be used to gain such an unfair result, and the PSC cites no authority to suggest otherwise. *See In re Knight–Celotex, LLC*, 695 F.3d at 718 ("It would be inequitable and an improper use of judicial estoppel—an equitable remedy—to permit Knight to reap a huge benefit from an otherwise harmless omission.")

## II.    Plaintiffs' Actions "Originated" in This District and Are Therefore Subject to Indiana's Choice-of-Law Rules.

The PSC also argues that the choice-of-law regimes of Plaintiffs' home states govern here because these cases are part of an MDL. *See generally* PSC Resp., Dkt. 11983. The PSC is mistaken. Numerous Plaintiffs in this litigation chose to file their cases in this District, alleging that venue is proper in this District because the Cook Defendants are "at home" here. *See* Dkt.

- 7 -

213 at 8, ¶ 28 (Master Consolidated Complaint, alleging "venue if proper in this jurisdiction under 28 U.S.C. § 1391"). These Plaintiffs did not file in their home districts and seek transfer from the JPML pursuant to 28 U.S.C. § 1407 (which they could have done), and they did not seek Cook's agreement to and the Court's entry of a direct-filing order (which they also could have done). As a consequence, all of the cases originally filed in this Court (including all the cases at issue in this motion) "originated" in the Southern District of Indiana and are therefore subject to Indiana's choice-of-law rules. Indeed, the Court already resolved the question of where these cases "originated" in its decision on the *Lexecon* issue, where the Court noted the absence of any direct-filing order and concluded that these cases must be treated as any other case "originally filed in this court." Entry for Proceedings Held on June 13, 2019, Dkt. 11131, p. 2.

All of the PSC's arguments and all of the cases the PSC cites in its Response depend on the existence of a direct-filing order, which creates a legal fiction permitting a case filed directly in an MDL court to be treated as if it had originated in the plaintiff's home state and had been transferred to the MDL court. *See, e.g., Dobbs v. Depuy Orthopedics, Inc.*, 842 F.3d 1045, 1049 (7th Cir. 2016). There is no direct-filing order here, and thus no such legal fiction concerning origination. These cases originated in Indiana, and Indiana choice-of-law rules apply to them.

    **A.**     **Plaintiffs' Cases Originated in Indiana and are Therefore Governed by Indiana Choice-of-Law Rules**

In diversity cases, federal courts apply the law of the state in which they sit, including that forum's choice-of-law rules. *See Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006); *Couch v. Wilco Life Ins. Co.*, 363 F. Supp. 3d 886, 893 (S.D. Ind. 2019) ("A federal court sitting in diversity, as this Court does, must apply the choice-of-law provisions of the forum state."); *see also Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941) ("The

conflict of laws rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts.").

Where a diversity case is transferred from the court in which it originated to a court in another state, the transferee court applies the choice-of-law rules of the state in which the transferor court sits. This rule applies both to cases transferred under 28 U.S.C. section 1404(a), the general change-of-venue statute, and to cases transferred to an MDL court pursuant to 28 U.S.C. section 1407. *See e.g., Jaurequi v. John Deere Co.*, 986 F.2d 170, 172 (7th Cir. 1993) ("The district court, as a transferee court sitting in diversity, is obligated to apply the choice-of-law rules followed by the transferor court—in this case, the Texas district court."); *In re Eli Lilly & Co., Prozac Prods. Liab. Litig.*, 789 F. Supp. 1448, 1450 (S.D. Ind. 1992) (involving transfers to MDL court). As the Supreme Court noted:

> [T]he transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under [section] 1404(a) generally should be, with respect to state law, but a change of courtrooms.

*Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).

Here, all of the cases that remain subject to the motion were originally filed here in the Southern District of Indiana—they were not transferred from anywhere else.[4] The cases therefore "originated" in this district, and the rules concerning transferred cases do not apply. Like any diversity case originating in this district, these cases are subject to Indiana's choice-of-law rules. *See Menowitz v. Brown,* 991 F.2d 36, 40 (2d Cir.1993) ("in an MDL proceeding,

---

[4] The case of Annettee Weaver (Estate) was included in Cook's motion in error and has been withdrawn from the motion by agreement of the parties, as noted in Cook's contemporaneously filed omnibus reply to Plaintiffs' case-specific responses. *Weaver* was filed in Texas state court and transferred to this Court by the JPML after removal to federal court. Cook believes that *Weaver* is barred by the Texas statute of limitations, but given the focus of this motion, Cook will raise that issue by separate motion at a later date.

US.125012892

'a transferee court applies the substantive state law, including choice-of-law rules, of the jurisdiction in which the action was filed'") (citing *Van Dusen v. Barrack*, 376 U.S. 612 (1964)); *In re Testosterone Replacement Therapy Products Liability Litigation Coordinated Pretrial Proceedings,* No. 14C1748, 2014 WL 7365872 at *10 (N.D. Ill 2014) ("Because the thirty-nine actions at issue in this motion were filed in the Northern District of Illinois, Illinois choice of law rules govern.").

      **B.**      **This MDL Has No Direct-Filing Order and Therefore No Basis for Treating Cases Originally Filed in this District as Transferred Cases.**

The PSC argues that even though these cases were originally filed in this District, they are nonetheless "foreign cases" and that "foreign cases filed directly in an MDL are treated as having originated <u>outside</u> of the MDL district." Dkt. 11983 at 5 (emphasis by the PSC). But the PSC's argument for the treatment of Plaintiffs' cases as "direct-filed" cases depends on the existence of a direct-filing order that permits such treatment—an order the Court has already stated does not exist here. *See* Entry for Proceedings Held on June 13, 2019, Dkt. 11131, p. 2 ("There is no direct-filing order entered in this case.").

As the PSC correctly observes, some courts have held that an MDL court may enter an agreed "direct filing" order that (1) permits plaintiffs to file their claims directly in the district in which the MDL court is located, notwithstanding ordinary requirements of venue and jurisdiction, and (2) adopts the legal fiction that those cases had been brought in the plaintiffs' home districts and transferred to the MDL court. *See, e.g., Dobbs v. Depuy Orthopedics, Inc.*, 842 F.3d 1045, 1049 (7th Cir. 2016) (citations omitted). Depending on the terms of the direct-filing order, this legal fiction permits the MDL court to treat the direct-filed cases as originating in the plaintiffs' home districts for purposes such as *Lexecon* remands or choice-of-law issues. *See, e.g., In re Yasmin & Yaz (Drospirenone) Mktg. Practices and Prods. Liab. Litig.*, 2011 WL

1375011 at *4 n. 2 (S.D. Ill. Apr. 12, 2011) ("the agreed order entered in this MDL that allows for direct filing expressly states that the parties' agreement to permit direct filing would not impact the choice of law that would otherwise would apply to the direct filed cases").

The PSC's argument based on "direct filing" fails because the present motion includes only cases over which the Court has original jurisdiction. The parties provided the Court with extensive briefing and argument on this issue this past summer, and, as noted above, the Court unambiguously ruled that it has entered no direct-filing order in this MDL that creates the legal fiction of transfer on which the PSC's argument rests: **"[t]here is no direct-filing order entered in this case."** Entry for Proceedings Held on June 13, 2019, Dkt. 11131, p. 2 (emphasis added). This MDL had no need for such an order because, as the Court also observed, **"the parties agree that the Southern District of Indiana is the proper venue under 28 U.S.C. § 1391."** *Id.* Based on these conclusions, the Court held that it "has complete authority over cases originally filed in this court, just as it would over ***any other case originally filed in this district.***" *Id.* (emphasis added). The Court noted that this authority "include[d] the authority to try such cases" filed in this court and that Plaintiffs had no automatic right to "be remanded to the individual's home district for trial." *Id.*

Because the Plaintiffs at issue here filed their cases in this District, the forum's choice-of-law rules apply, just as the forum's choice-of-law rules apply in any other diversity case originally filed in this District. *See, e.g., Couch v. Wilco Life Ins. Co.,* 363 F. Supp. 3d 886, 893 (S.D. Ind. 2019); *Shifrin v. Liberty Mut. Ins.*, 991 F. Supp. 2d 1022, 1034 (S.D. Ind. 2014); *Nickles v. Heleine*, 460 F. Supp. 2d 886, 889 (S.D. Ind. 2005) (all cases from this Court applying forum law to diversity cases originally filed in the Southern District of Indiana). The fact that a case is part of an MDL does not alter that conclusion, at least absent a direct-filing order that

dictates otherwise. *See Menowitz v. Brown,* 991 F.2d 36, 40 (2d Cir. 1993) noting that in an MDL proceeding, "a transferee court applies the substantive state law, including choice-of-law rules, of the jurisdiction in which the action was filed") (citing *Van Dusen v. Barrack,* 376 U.S. 612 (1964)); *In re Testosterone Replacement Therapy Prods. Liab. Litig. Coordinated Pretrial Proceedings*, No. 14 C 1748, 2014 WL 7365872 (N.D. Ill. 2014) ("Because the thirty-nine actions at issue in this motion were filed in the Northern District of Illinois, Illinois choice of law rules govern.").

The PSC offers no authority that would permit an MDL court to treat a case originally filed in the court's own district as a transferred case in the absence of a direct-filing order permitting such treatment. On the contrary, **every case** the PSC cites in its response involves a MDL with a direct-filing order—agreed to by the parties after negotiation and approved by the MDL court—that governs the treatment of direct-filed cases as transferred cases:

- In *Dobbs v. Depuy Orthopedics, Inc.*, 842 F.3d 1045, (7th Cir. 2016), the court noted that the case was filed in the Northern District of Ohio and that the plaintiff is from Illinois. *Id.* at 1049. The *Dobbs* case came from MDL No. 2197, *DePuy Orthopedics, Inc., ASR Hip Implant Prods. Liab. Litig.*, which had a direct-filing order in its CMO-2 (copy attached as **Exhibit A)**. That direct-filing order provided that "[i]n order to eliminate delays associated with transfer of cases in or removed to other federal district courts" the court was permitting direct filing and that "[t]he fact that a case was directly filed in MDL 2197 pursuant to this Order will have no impact on the choice of law to be applied," Exhibit A, pp. 1-2, that is, the court would apply the choice-of-law rules that would apply if the case had been transferred.

- In *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 977 F. Supp. 2d 885, 887 (N.D. Ill. 2013), the court stated that "[t]he present case is one of a handful of cases that originated in other districts but were directly filed here pursuant to an agreed-upon procedure, common in MDL product liability cases, that the Court approved." *Id.* at 887; *see also id.* at 888 (noting that specific case "was filed here ***only*** by virtue of a court-approved direct-filing procedure whose sole purpose was to maximize convenience and save the parties' and judicial resources") (emphasis added).

- In *In re Yasmin & Yaz,* 2011 WL 1375011 at *4, n.2, the court explained that "the agreed order entered in this MDL that allows for direct filing expressly states that the parties' agreement to permit direct filing would not impact the choice of law that would otherwise would apply to the direct filed cases."

- In *In re Fresenius Granuflo/NaturaLyte Dialysate Prods. Liab. Litig.,* 76 F. Supp. 3d 294, 299 (D. Mass 2015), the MDL court explained that its "CMO-7 created a procedure by which plaintiffs could file their cases directly into the MDL without first being transferred through the JPML. . . . all plaintiffs were required to file [a short-form complaint that] contained a check box for whether the plaintiff wanted to choose Massachusetts as the 'home forum,' and a place to write in an alternate district that would be appropriate if the plaintiff did not want to choose Massachusetts."

- In *In re Avandia Mktg, Sales Practices & Prods. Liab. Litig.*, 2012 WL 3205620, at *2 n.18 (E.D. Pa. Aug. 7, 2010) the MDL court explained that the cases at issue were 'direct filed' and that the court was therefore treating them as "if they were filed in the Plaintiffs' home states."

- *Wahl v. Gen. Elec. Co.*, 983 F. Supp. 2d 937 (M.D. Tenn. 2013), was part of an MDL in the Southern District of Ohio and "[a]fter the MDL was created, the MDL [c]ourt issued [a direct-filing order enumerated as CMO-3 that] permitted potential plaintiffs to file actions in the Southern District of Ohio, whether or not jurisdiction or venue was otherwise proper." *Id.* at 940.

Thus, in **every case** the PSC cites, the MDL court had entered an agreed direct-filing order that expressly adopted a legal fiction permitting the court and the parties to treat the case as if it had been filed elsewhere and transferred to the MDL. In contrast here, the Court has already ruled that cases filed by plaintiffs who elected to file in this District are subject to the original jurisdiction of this Court in this proper venue. There is no direct-filing order in this MDL, and therefore no basis on which the Court should treat the cases these Plaintiffs originally filed in this district any differently from any other case that originated in this district.[5] The Court should apply the choice-of-law rules of the forum state of Indiana, and the Indiana statute of limitations that those choice-of-law rules require.

## CONCLUSION

For the foregoing reasons and the reasons detailed in Cook's original memorandum and contemporaneous other reply memorandum, the Cook Defendants are entitled to summary judgment on the claims brought by these Plaintiffs.

---

[5] Several Plaintiffs assert in their individual responses identical arguments that a case "originates" in the state where the device at issue was prescribed and purchased, citing *Miles v. Biomet Orthopedics, LLC,* No. 3:14-CV-1983 RLM-MGG, 2017 WL 1133666 (N.D. Ind. Mar. 26, 2017), and *In re Watson Fentanyl Patch Prod. Liab. Litig.*, 977 F. Supp. 2d 885 (N.D. Ill. 2013). *See* Dkts. 12040 at 6-7, 10245 at 5, 10250 at 5. But again, these Plaintiffs ignore the presence of an order in those cases expressly permitting direct filing of cases. *See Miles,* 2017 WL 1133666, at *5 (addressing treatment of "a foreign direct filed case"); *Watson,* 977 F. Supp. 2d at 888 (noting case "was filed here only by virtue of a court-approved direct-filing procedure").

        Respectfully Submitted,

Dated: October 17, 2019       /s/ *Andrea Roberts Pierson*
Andrea Roberts Pierson, Co-Lead Counsel
Jessica Benson Cox
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2500
Indianapolis, Indiana 46204
Telephone:     (317) 237-0300
Andrea.Pierson@FaegreBD.com
Jessica.Cox@FaegreBD.com

James Stephen Bennett, Co-Lead Counsel
FAEGRE BAKER DANIELS LLP
110 West Berry Street, Suite 2400
Fort Wayne, Indiana 46802
Telephone:     (260) 424-8000
Stephen.Bennett@FaegreBD.com

*Attorneys for the Defendants Cook Incorporated, Cook Medical LLC, and William Cook Europe ApS*

- 16 -

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2019, a copy of the foregoing **COOK DEFENDANTS' REPLY MEMORANDUM TO PSC'S RESPONSE TO COOK'S OMNIBUS MOTION FOR SUMMARY JUDGMENT BASED UPON STATUTE OF LIMITATIONS** was filed electronically and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.

/s/ *Andrea Roberts Pierson*

US.125012892