UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

IN RE COOK MEDICAL, INC., IVC FILTERS          Case No. 1:14-ml-2570-RLY-TAB
MARKETING, SALES PRACTICES AND              MDL No. 2570
PRODUCTS LIABILITY LITIGATION

_____

This document relates to:
144 Cases From Five States Listed in Exhibit A

_____

**COOK DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR
RENEWED OMNIBUS MOTION FOR SUMMARY JUDGMENT
BASED ON APPLICABLE STATUTE OF LIMITATIONS**

# TABLE OF CONTENTS

Page

I.    Cook Withdraws Its Motion as to Four Cases, and 16 Others Should Be Deferred. .......... 1

II.   Cook's Motion for Summary Judgment is Moot as to the Cases That Have Already Been Dismissed. ........................................................................................ 2

III.  Cook is Entitled to Summary Judgment as to Plaintiffs Who Filed No Response to Cook's Motion. ........................................................................................................ 4

IV.   Cook Properly Relied on Plaintiffs' Own Claimed Injuries and Medical Records as Submitted in Their Case Categorizations. ....................................................... 5

V.    Cook's Motion is Timely. .................................................................................... 5

VI.   Plaintiffs Are Not Entitled to Remands of Their Cases for Decisions in Their Home States. ......................................................................................................... 7

VII.  Indiana's Two-Year Statute of Limitations Bars Plaintiffs' Claims. ................................. 8

      A.   Development of the Indiana Discovery Rule and Applicable Standards ............... 8

      B.   Indiana's Statute of Limitations Bars Plaintiffs' Tort Claims. ........................... 11

      C.   Plaintiffs' declarations about their own subjective knowledge do not create a genuine issue of fact. ................................................................................. 16

           1.   Affidavits About Plaintiffs' Subjective Knowledge Fail to Create a Material Issue of Fact Because The Governing Standard Does Not Require Knowledge of a Legal Theory or Legal Causation ................... 16

           2.   Plaintiffs Who Do Not Dispute The Accuracy of Their Medical Records But Feign Knowledge of Their Diagnoses Fail To Raise a Genuine Dispute of Material Fact Because They Could Not Have First "Discovered" Their Injuries After Filing Their Cases ..................... 18

      D.   Plaintiffs' Submission of New Records Does Not Make Their Claims Timely Because These Are Not Legally Separate Injuries .................................. 20

VIII. Plaintiffs' Claims of Fraudulent Concealment and Equitable Tolling Do Not Prevent the Running of the Statute of Limitations Against Them. ................................. 23

      A.   Plaintiffs have not pleaded fraudulent concealment with the particularity required by Rule 9 .................................................................................... 23

           1.   Rule 9 requires Plaintiffs to plead fraudulent concealment with particularity. ........................................................................................ 23

           2.   Plaintiffs have not plead fraudulent concealment with particularity. ....... 24

      B.   Plaintiffs' claim of fraudulent concealment would not toll the statute of limitations on their claims ......................................................................... 25

      C.   Plaintiffs have offered no support for equitable tolling of the statute of limitations. ................................................................................................ 27

IX.   In the Alternative, Plaintiffs' Personal Injury Claims Are Time-Barred by The Applicable Statute of Limitations in Their Homes States And There Are No Applicable Discovery Rule Exceptions To Save Them From Dismissal. ........................ 28

|   |   | A. | Alabama ................................................................................... | 29 |
|   |   | B. | Idaho ...................................................................................... | 30 |
|   |   | C. | Michigan ................................................................................ | 30 |
|   |   | D. | Texas ..................................................................................... | 33 |
|   |   | E. | Virginia ................................................................................. | 36 |

X.   Plaintiffs' Non-Tort Claims Also Fail as a Matter of Law ............................ 37

A.   Plaintiffs' Express Warranty Claims Fails Because, as the Court Has Previously Ruled, the Master Complaint Fails to State Sufficient Allegations to Support This Claim ...................................................... 37

B.   Plaintiffs' Implied Warranty Claims Fail as a Matter of Law Under Both Indiana Law and Plaintiffs' Home State Laws. ................................... 39

C.   Plaintiffs Failed to Plead Their Consumer Fraud Claims with the Particularity Required by Rule 9 ......................................................... 41

D.   Plaintiffs' Derivative Claim for Loss of Consortium and Punitive Damages Fail Because They Cannot Stand on Their Own ................................. 42

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### FEDERAL CASES

*A.I. Credit Corp. v. Hartford Computer Grp., Inc.*,
    847 F. Supp. 588 (N.D. Ill. 1994) ........................................................42

*Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*,
    811 F.3d 866 (7th Cir. 2016) .............................................................11

*Celestine v. Petroleos de Venezuella SA*,
    266 F.3d 343 (5th Cir. 2001) ...............................................................1

*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) ..........................................31

*Dayco Corp. v. Goodyear Tire & Rubber Co.*,
    523 F.2d 389 (6th Cir. 1975) .............................................................24

*Fultz v. Duckworth*,
    962 F.22d 10, 1992 WL 96359 (7th Cir. 1992) .........................11, 13, 18

*Gasperini v. Center for Humanities, Inc.*,
    518 U.S. 415 (1996)..........................................................................31

*GE Capital Commercial, Inc. v. Worthington Nat. Bank*,
    No. 3:09-CV-572-L, 2012 WL 2159185 (N.D. Tex. June 13, 2012), *aff'd in part*, 754
    F.3d 297 (5th Cir. 2014) .....................................................................1

*Iascone ex rel. Iascone v. Conejo Valley Unified Sch. Dist.*,
    15 F. App'x 401 (9th Cir. 2001) ..........................................................1

*In re Avandia Mkt., Sales Prac. and Prod. Liab. Litig.*,
    MDL No. 1871, 2014 WL 2011239 (E.D. Pa. May 16, 2014) ................31

*In re Bard IVC Filters Prods. Liab. Litig.*,
    2018 WL 3957737 (D. Ariz. Aug. 17, 2018)........................................12

*In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*,
    155 F. Supp. 2d 1069 (S.D. Ind. 2001).................................................24

*In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*,
    2016 WL 1493534 (M.D. Ga. Apr. 14, 2016) .......................................35

*In re Mirena IUD Prods. Liab. Litig. (Truitt)*,
    29 F. Supp. 3d 345 (S.D.N.Y. 2014)............................................ passim

*Koch v. Christie's Int'l PLC*,
    785 F. Supp. 2d 105 (S.D.N.Y. 2011), *aff'd*, 699 F.3d 141 (2d Cir. 2012) ............28

*Larson v. Northrop Corp.*,
 21 F.3d 1164 .................................................................................................24

*Leathermon v. Grandview Mem'l Gardens, Inc.*,
 No. 4:07-CV-137-SEB-WGH, 2011 WL 2445980 (S.D. Ind. June 15, 2011) .......................24

*Ledbetter v. Goodyear Tire & Rubber Co.*,
 550 U.S. 618 (2007).........................................................................................21

*McDonald v. Hardy*,
 821 F.3d 882 (7th Cir. 2016) ............................................................................11

*Miller v. A.H. Robins Co. Inc.*,
 766 F.2d 1102 (7th Cir. 1985) ................................................................ passim

*Porter v. Danek Med. Inc.*,
 1999 WL 1117090 (S.D. Tex. Aug. 16, 1999) .....................................................35

*Scott v. Harris*,
 550 U.S. 372 (2007).........................................................................................20

*Semtek Int'l Inc. v. Lockheed Martin Corp.*,
 531 U.S. 497 (2001)...........................................................................................1

*Shepherd v. Danek Med.*,
 1999 WL 1129705 (S.D. Tex. Aug. 13, 1999) .....................................................35

*Smith v. Danek Med.*,
 47 F. Supp. 2d 698 (W.D. Va. 1998) .................................................................37

*Tice v. Zimmer Holdings, Inc.*,
 2015 WL 4392985 (W.D. Mich. July 15, 2015).................................................31

*Uni\*Quality, Inc. v. Infotronx, Inc.*,
 974 F.2d 918 (7th Cir. 1992) .......................................................................24, 41

*Williams Charles Constr. Co., LLC v. Teamsters Local Union 627*,
 827 F.3d 672 (7th Cir. 2016) ............................................................................20

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*,
 536 F.3d 663 (7th Cir. 2008) .......................................................................24, 25

## STATE CASES

*Agar Corp., Inc. v. Electro Circuits Int'l, LLC*,
 580 S.W.3d 136 (Tex. 2019), reh'g denied (Sept. 6, 2019) ................................21

*B. Maher Interests L.P. v. DMAC Constr., Inc.*,
 503 S.W.3d 43 (Tx. Ct. App. – 14th Div. 2016)................................................40

*Barnes v. A.H. Robins Co. Inc.*,
   476 N.E.2d 84 (1985) ........................................................................9, 10, 11, 15

*Boyle v. Gen. Motors Corp.*,
   661 N.W.2d 557 (2003) ....................................................................................32

*Burnett v. Villaneuve*,
   685 N.E.2d 1103 (Ind. Ct. App., 1997) ...........................................................28

*DGB, LLC v Hinds*,
   55 So.2d 218 (Ala. 2010) .................................................................................40

*Doe v. Roman Catholic Archbishop of Archdiocese of Detroit*,
   692 N.W.2d 398 (Mich. Ct. App. 2004) ..........................................................26

*Doe v. United Methodist Church*,
   673 N.E.2d 839 (Ind. Ct. App. 1996) .........................................................11, 15

*Donnella v. Crady*.
   185 N.E.2d 623 (Ind. Ct. App. 1962), trans. denied ......................................28

*Donovan v. Deyerle*,
   8 Va. Cir. 464 (Va. Cir. 1963) .........................................................................27

*Ferguson v, Ferguson*,
   192 S.E. 774 (Va. 1937).....................................................................................36

*Garrett v. Raytheon Co.*,
   368 So.2d 516 (Ala. 1979).................................................................................26

*Guy v. Schuldt*,
   138 N.E. 2d 891 (Ind. 1956) ............................................................................27

*Horvath v. Delida*,
   540 N.W.2d 760 (Mich. Ct. App. 1995) ..........................................................33

*Johnson v. Gorton*,
   495 P.2d 1 (Idaho 1972).....................................................................................27

*Ludwig v. Ford Motor Co.*,
   510 N.E.2d 691 (Ind. Ct. App. 1987)...............................................................26

*Malachowski v. Bank One, Indianapolis*,
   590 N.E.2d 559 (Ind. 1992) ..........................................................................11, 15

*McCoy v. Lamotte Coachlight Corp.*,
   2007 WL 4270659 (Mich. Ct. App. Dec. 6, 2007) ..........................................40

*Moll v. Abbott Lab.*
    444 Mich. 1, 506 N.W.2d 816 (1993) .................................................................31

*Monsanto v. Miller,*
    455 N.E.2d 392 (Ind. Ct. App. 1983) ..............................................................21

*Monte v. Toyota Motor Corp.,*
    No. 220671, 2001 WL 1152901 (Mich. Ct. App. Sept. 28, 2001) .........................39

*Moon v. Harco Drugs, Inc.,*
    435 So.2d 218 (Ala. 1983) ...........................................................................29

*Otis v. Sci. Atlanta, Inc.,*
    612 S.W.2d 665 (Tex. Civ. App. 1981), writ refused ........................................26

*Payton v. Monsanto Co.,*
    801 So.2d 829 (Ala. 2001) ...........................................................................30

*Perryman v. Motorist Mut. Ins. Co.,*
    846 N.E.2d 683 (Ind. Ct. App. 2006) ........................................................10, 17

*Ralphs v. City of Spirit Lake,*
    560 P.2d 1315 (1977) ..................................................................................21

*Riddett v. Virginia Elec. & Power Co.,*
    255 Va. 23, 495 S.E.2d 819 (1998) ...........................................................36, 37

*Rieth-Riley Const. Co., Inc. v. Gibson,*
    923 N.E.2d 472 (Ind. Ct. App. 2010) ........................................................10, 17

*Skibinski v. Lunger,*
    70 Va. Cir. 423, 2006 Va. Cir. LEXIS 158 (2006) .............................................37

*Theriault v. A.H. Robins Co., Inc.,*
    698 P.2d 365 (Idaho 1985) ...........................................................................30

*Trentadue v. Buckler Lawn Sprinkler Co.,*
    738 N.W.2d 664 (Mich. 2007) .............................................................31, 32, 33

*V. Ganz Bulders and Dev. Co. v. Pioneer Lumber, Inc.,*
    59 N.E.3d 1025 (Ind. Ct. App. 2015) ..............................................................19

*Wehling v. Citizens Nat. Bank,*
    586 N.E.2d 840 (Ind. 1992) ...................................................................9, 10, 14

*Wojcik v. Almase,*
    451 N.E.2d 336 (Ind. Ct. App. 1983) ..............................................................12

**STATUTES**

Mich. Comp. Laws § 440.2313(1)(b) ..........................................................38

Mich. Comp. Laws § 600.5855.................................................................33

2016 Va. Acts ch. 353 .............................................................................36

Va. Code § 1-214 ....................................................................................36

Va. Code § 8.01-249 ...............................................................................36

Va.Code § 8.01-259 ................................................................................36

**RULES**

Fed. R. Civ. P. 8 .....................................................................................42

Fed. R. Civ. P. 9 ............................................................................. passim

Fed. R. Civ. P. 33 .....................................................................................6

Fed. R. Civ. P. 34 .....................................................................................6

Fed. R. Civ. P. 56 ..................................................................................1, 7

**OTHER AUTHORITIES**

32 Am. Jur. Proof of Facts 3d 129 ..........................................................26

JPML & Federal Judicial Center, *Ten Steps to Better Case Management, a Guide for Multidistrict Litigation Transferee Judges*, available at https://www.fjc.gov/sites/default/files/2014/Ten-Steps-MDL-Judges-2D.pdf.........................6

Cook submits the following reply in support of its omnibus motion for summary judgment based on the statute of limitations (Dkt. 11725).  This reply memorandum addresses the issues raised in the individual Plaintiff's case-specific responses.[1]  Cook has filed a separate memorandum replying to the Plaintiff's Steering Committee's Response to the present motion (Dkt. 11983), which addresses the discrete issue of the applicability of Indiana's statute of limitations to these cases.  Cook incorporates that reply here as well.  For the reasons stated in these replies and in Cook's original submissions, the Court should grant summary judgment[2] in these cases, with the exceptions noted below.[3]

## I.   Cook Withdraws Its Motion as to Four Cases, and 16 Others Should Be Deferred.

Based on discussions with Plaintiffs' attorneys, Cook withdraws its motion for summary judgment for the following cases:

---

[1] The motion is opposed by many Plaintiffs through individual responses and omnibus responses by firms for their clusters of cases.  *See* Dkts. 11877, 11950, 11953, 11955-61, 11965-66, 11969, 11971-79, 11982, 11986, 11989, 11996, 11998, 12000-12003, 12005, 12007-08, 12010, 12013, 12016-20, 12022-29, 12031-38, 12040, 12042-52, 12054-12058, 12066-67, 12075, 12078-79, 12086, 12089, 12092-93 & 12111-13.

[2] Although Cook's original motion (Dkt. 11725) sought summary judgment in these cases and Cook's original supporting memorandum (Dkt. 11726) argued for summary judgment, both documents inadvertently suggested in their conclusions that some of the cases might be dismissed without prejudice rather than with prejudice.  Dkt. 11725 at 2; Dkt. 11726 at 34.  Consistent with Rule 56, Cook clarifies that it indeed seeks summary judgment in these cases, which necessarily involves a ruling on the merits and a disposition with prejudice.  By definition, "summary judgment is a final adjudication on the merits," *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 350 (5th Cir. 2001), and "an 'adjudication upon the merits' is the opposite of a 'dismissal without prejudice,'" *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001).  The substance of Cook's motion is clear in seeking summary judgment, all the Plaintiffs responded to the motion as seeking summary judgment.  Summary judgment is the relief Cook seeks in all these cases.  *See Iascone ex rel. Iascone v. Conejo Valley Unified Sch. Dist.*, 15 F. App'x 401, 402 (9th Cir. 2001) ("[N]omenclature is not controlling; we look to the substance of the motion in determining how it should be treated."); *GE Capital Commercial, Inc. v. Worthington Nat. Bank*, No. 3:09-CV-572-L, 2012 WL 2159185, at *3 (N.D. Tex. June 13, 2012) ("The better practice, which is in the interest of justice, is to look at or examine the substance and the effect of the motion."), *aff'd in part*, 754 F.3d 297 (5th Cir. 2014).

[3] Cook will prepare an updated "Exhibit A" list of cases where it is requesting summary judgment in advance of the hearing scheduled for October 25, 2019.

| No.[4] | Plaintiff | Case No. | Plaintiff's Counsel |
|---|---|---|---|
| 26 | Collins, Kerri | 1:18-cv-02901 | The Maher Law Firm, P.A. |
| 67 | Boggs, Audra | 1:18-cv-00958 | The Moody Law Firm, Inc. |
| 76 | Carpenter, Sandy | 1:18-cv-00928 | Gallagher & Kennedy, P.A. |
| 115 | Weaver, Annette (Estate) | 1:14-cv-06014 | Lee Murphy Law Firm, G.P. |

Cook reserves the right to renew the present motion or to bring additional motions for summary judgment against these Plaintiffs as the litigation develops.

Further, Cook and the Matthews firm have agreed to an extension for response briefing with respect to their cases. Thus, the issues are not yet ripe with respect to these 16 cases because they have not been fully briefed.

| No. | Plaintiff | Case Number |
|---|---|---|
| 1 | Anderson-Kuhn, Diana | 1:16-cv-00182 |
| 5 | Hrabowski, Adidas (Estate) | 1:18-cv-02662 |
| 8 | Overton, Stephanie | 1:18-cv-00845 |
| 20 | Bak, Brandon Phillip | 1:17-cv-01965 |
| 40 | Hubert, George | 1:17-cv-01939 |
| 64 | Bell, Paul | 1:17-cv-01976 |
| 73 | Butler-King, Teresa | 1:16-cv-01849 |
| 74 | Campbell, Chiquita | 1:17-cv-03181 |
| 80 | Forester, Brent | 1:18-cv-03885 |
| 83 | Gonzalez, Justin | 1:15-cv-01569 |
| 91 | Leslie, Susan | 1:17-cv-03205 |
| 93 | Lozano, Salvador | 1:17-cv-03213 |
| 96 | McCutchin, Judy | 1:17-cv-03219 |
| 113 | Tucker, Ellen | 1:17-cv-03235 |
| 123 | Fletcher, Franklin | 1:18-cv-00644 |
| 128 | Gee, Barbara | 1:17-cv-02058 |

## II.     Cook's Motion for Summary Judgment is Moot as to the Cases That Have Already Been Dismissed.

Several Plaintiffs have agreed to dismiss their cases and some of the stipulations have already been entered by the Court. Accordingly, Cook's motion for summary judgment is moot

---

[4] For each instance where case tables are used in the reply, the cases are ordered in the same rank order as Exhibit A to the opening brief (Dkt. 11726-1), where they were listed alphabetically by home state, then by alphabetically by Plaintiff's surname, and assigned a ranking number.

with respect to the following cases that have already been dismissed or have a stipulation to dismiss pending on the docket:

| No. | Plaintiff | Case Number | Plaintiff's Counsel | Status |
|---|---|---|---|---|
| 9 | Perkins, Mary | 1:19-cv-00132 | Fenstersheib Law Group, P.A. | Dismissed (Dkt. 12082); Granted (Dkt. 12144) |
| 10 | Turner, Sonny | 1:18-cv-01059 | Curtis Law Group | Dismissed (Dkt. 11606); Granted (Dkt. 11647) |
| 25 | Clark, Robert & Andrea | 1:17-cv-01598 | Osborne & Francis Law Firm PLLC | Dismissed (Dkt. 11564); Granted (Dkt. 11947) |
| 43 | Johnson, Ralph and Cynthia | 1:18-cv-02073 | Lieff Cabraser & Heimann & Bernstein, LLP | Dismissed (Dkt. 11919); Granted (Dkt. 11997) |
| 48 | Niemi, Judith | 1:18-cv-02683 | Florin Roebig, P.A. | Dismissed (Dkt. 11617); Granted (Dkt. 11990) |
| 50 | Novak, Leslie Marie | 1:16-cv-02672 | Murphy Law Firm, LLC | Dismissed (Dkt. 11962); Stipulation Pending |
| 59 | Warren, Hezekiah | 1:17-cv-01241 | Sanders Viener Grossman, LLP | Dismissed (Dkt. 11963); Stipulation Pending |
| 61 | Addison, Robert Shelton | 1:16-cv-03522 | Murphy Law Firm, LLC | Dismissed (Dkt. 11981); Stipulation Pending |
| 70 | Brady, Marcella (Estate) | 1:16-cv-02882 | Murphy Law Firm, LLC | Dismissed (Dkt. 12060); Granted (Dkt. 12078) |
| 78 | County, Isiah (Estate) | 1:18-cv-03100 | The Gallagher Law Firm PLLC | Dismissed (Dkt. 12105); Granted (Dkt. 12145) |
| 82 | Francis, Katrina | 1:17-cv-01168 | Murphy Law Firm, LLC | Dismissed (Dkt. 11962); Stipulation Pending |
| 85 | Houck, Louise | 1:17-cv-03886 | Murphy Law Firm, LLC | Dismissed (Dkt. 11962); Stipulation Pending |
| 90 | LeBlanc, Avery | 1:18-cv-01367 | Murphy Law Firm, LLC | Dismissed (Dkt. 11962); Stipulation Pending |
| 114 | Walker, Hattie | 1:18-cv-02931 | Brown & Crouppen P.C. | Dismissed (Dkt. 11744); Granted (Dkt. 11993) |
| 130 | Jeffers, Mark (Estate) | 1:18-cv-02447 | The Gallagher Law Firm PLLC | Dismissed (Dkt. 12106); Granted (Dkt. 12146) |

### III. Cook is Entitled to Summary Judgment as to Plaintiffs Who Filed No Response to Cook's Motion.

Several Plaintiffs have either filed no response to Cook's motion, or filed responses stating that they had no basis for opposing Cook's motion.  Those cases[5] are:

| No. | Plaintiff | Case No. | Plaintiff's attorney | Status |
|-----|-----------|----------|----------------------|--------|
| 6 | Kerr, Aimee | 1:16-cv-02659 | Levin Papantonio Thomas Mitchell Rafferty & Proctor, P.A. | States Plaintiff has no basis for opposing motion (Dkt. 11796) |
| 13 | Cook, Nathaniel | 1:17-cv-03380 | Wilshire Law Firm PLC | Did not file a response |
| 33 | Floyd, Stephan | 1:17-cv-01256 | Sanders Viener | Did not file a response |
| 47 | Miller, Scott | 1:16-cv-02901 | Flint Law Firm, LLC | Did not file a response |
| 58 | Versluis, Scott | 1:17-cv-00266 | Martin Boughman, PLLC | Does not oppose grounds for motion (Dkt. 12075) |
| 62 | Barrett, LaToya | 1:17-cv-00128 | Martin Boughman, PLLC | Does not oppose grounds for motion (Dkt. 12075) |
| 68 | Bothe, Chance | 1:17-cv-03013 | McEwen Law Firm Ltd | Did not file a response |
| 79 | Engelbrecht, Robert | 1:17-cv-02291 | Levin Papantonio Thomas Mitchell Rafferty & Proctor, P.A. | States Plaintiff has no basis for opposing motion (Dkt. 11794) |
| 84 | Greig, Susan | 1:17-cv-00300 | Levin Papantonio Thomas Mitchell Rafferty & Proctor, P.A. | States Plaintiff has no basis for opposing motion (Dkt. 11795) |
| 86 | Hubbard, Derrick and Janice | 1:17-cv-00209 | Crandall & Katt | Did not file a response |
| 129 | Jackson, Sandra | 1:16-cv-01033 | Meshbesher & Spence, Ltd. | Did not file a response |

---

[5] Plaintiffs Barrett and Versluis (both represented by Martin Boughman, PLLC) do not oppose the grounds of the motion but request dismissal on terms that would preserve availability of re-filing in the event of a future injury.  Because these Plaintiffs do not dispute that they failed to commence their actions for the injuries they presently claim within the statutory period, Cook is entitled to summary judgment on those claims.  If these Plaintiffs later develop unrelated injuries they attribute to their filters, they may commence new actions, and the Court can determine at that time the effect of the original summary judgment on the new claims.

Cook is entitled to summary judgment as to all of Plaintiffs' claims in those cases in which Plaintiff filed no response or stated that they had no basis for opposing Cook's motion.

**IV.   Cook Properly Relied on Plaintiffs' Own Claimed Injuries and Medical Records as Submitted in Their Case Categorizations.**

Dozens of Plaintiffs argue that Cook's reliance on information in their categorization forms and the medical records they submitted with those forms as the factual basis for summary judgment is improper.[6]  The Court has already rejected this argument.  As the Court will recall, the PSC moved to strike Cook's original motion for summary judgment based on the statute of limitations in these cases on this same ground, claiming that Cook's motion used the categorization forms and records improperly.  *See* Pls.' Mot. to Strike, Dkt. 11518; *see also* Dkt. 11566 (Cook's response).  The Court denied the PSC's motion to strike and instead set a briefing schedule to address Cook's motion on the merits.  *See* Entry on the August 20, 2019 Status Conference, Dkt. 11602, p. 1.  None of the Plaintiffs' response offers any reason for the Court to reconsider this decision; indeed, Plaintiffs' responses do not even acknowledge that the Court has already decided this issue.  The Cook Defendants incorporate by reference the arguments made in their response to the motion to strike (Dkt. 11566), and ask the Court to reject this effort to undermine its existing ruling.

**V.   Cook's Motion is Timely.**

Many Plaintiffs also claim that Cook's motion for summary judgment is "premature," arguing that case-specific discovery has not been undertaken in these cases, that the Plaintiffs have not been deposed, and the like.  Plaintiffs' legal basis for this objection is unclear; no applicable Local or Federal Rule of Civil Procedure and no Order from this Court bars Cook

---

[6] *See* Dkts. 11877, 11957, 11966, 11998, 12000-01, 12003, 12013, 12016-17, 12023-26, 12028, 12033, 12035, 12037-38, 12041-43, 12049-50, 12055-57, 12066-67, 12092-93 & 12111-13

from moving from summary judgment at this time.  On the contrary, in denying the PSC's motion to strike Cook's original omnibus motion for summary judgment based on the statute of limitations, the Court clearly signaled that it is prepared to address statute of limitations issues on the merits; if it were not, the Court would have had no reason to permit the briefing to go forward.  *See* Entry on the August 20, 2019 Status Conference Dkt. 11602.  Moreover, best practices for MDLs recommend taking up motions for summary judgment and/or motions to dismiss as a means of establishing which cases in the MDL have merit to combat the common tactic by plaintiffs of filing time-barred and otherwise meritless cases—a tactic that is certainly on display here, as both this motion and the now-departed Category 1 and 2 cases demonstrate. *See* JPML & Federal Judicial Center, *Ten Steps to Better Case Management, a Guide for Multidistrict Litigation Transferee Judges* § X(a) (2d ed. 2014), available at https://www.fjc.gov/sites/default/files/2014/Ten-Steps-MDL-Judges-2D.pdf (explaining that resolution of dispositive motions is the transferee court's "perhaps most important task.").

In addition, there **has** been sufficient case-specific discovery in these cases to permit the parties and the Court to address the two narrow factual issues on which the present motion turns: (1) the objective determination of when these Plaintiffs should have known of the injuries they claim and (2) the dates they commenced their actions against Cook.  The PPS/PFS sheets that Plaintiffs must provide (on penalty of having their cases dismissed) function as "interrogatory answers pursuant to Fed. R. Civ. P. 33 and 34 and [are] governed by the standards applicable to written discovery under Fed. R. Civ. P. 26 through 37."   Third Amended Case Management Order No. 4, Dkt. 4226, ¶ 1(c).  The Court also adopted a screening measure that requires all Plaintiffs to categorize their claims, provide "specific medical record(s)" in support of each claimed injury, and certify that their counsel has reviewed the records and that the

categorizations based on "[t]he submission of specific medical record(s) attached and the submission of [the] form . . . is the proper categorization for Plaintiff's case to the best of counsel's knowledge and belief."   Categorization Form, Dkt. 9638-1.   Through the categorization process, each Plaintiff here submitted categorizations forms listing their claimed injuries and medical records they claim support those injuries.   Because the medical records have dates of treatment and have been certified as accurate by counsel, the Court has sufficient facts to apply the objective standard dictated by the laws of both Indiana and the Plaintiffs' home states to determine when the Plaintiffs' causes of action accrued and the clock started running on the limitations periods.   These cases are ripe for adjudication,[7] and those records demonstrate that the cases are time-barred as a matter of law—in many instances, by several years.   *See generally* Cook Defs. Opening Br., Exhibit A, Dkt. 11726-1.

## VI.   Plaintiffs Are Not Entitled to Remands of Their Cases for Decisions in Their Home States.

Several Plaintiffs ask the Court to remand their cases so that the issue can be decided by federal courts in their home states.   *See* Dkts. 12056 (Plaintiff Frey's Response), 12057 (Plaintiff Hayes), 12066 (Plaintiff Driver) & 12067 (Plaintiff Robinson).   But as the Court has already ruled, remand is not available in any of these cases because they were not transferred here by the JPML.   Entry for June 13, 2019, Dkt. 11131, p. 2 ("There is no direct-filing order entered in this case which contemplates that cases filed here directly shall be remanded to the individual plaintiff's home district for trial.").   Whether Plaintiffs' filings were timely is a question for this Court to decide, and the Court has sufficient information to do so.

---

[7]      For the same reasons, the Court should deny two Plaintiffs' motions for additional discovery regarding company documents to investigate their fraudulent concealment arguments that were filed in conjunction with their responses.   *See* Pls. Mot. for Discovery Under Rule 56(d), Dkt. 12052 (omnibus motion filed by Plaintiffs Bennett, Kelly, and Boone).

**VII.    Indiana's Two-Year Statute of Limitations Bars Plaintiffs' Claims.**

Apart from the choice-of-law issues (addressed in Cook's separate reply to the PSC response), many of Plaintiffs' Responses argue that, because Indiana has a discovery rule, an issue of material fact prevents summary judgment on the timeliness of their claims under Indiana law.   Some Plaintiffs take the position that mere existence of the discovery rule precludes summary judgment in these cases at this juncture (which is incorrect for the reasons addressed above in response to arguments that the underlying motion is "premature"), while others argue that Cook relies on distinguishable and/or old Indiana case law, *see e.g.,* Plaintiff Ball's Response, Dkt. 12020 & Plaintiffs' Omnibus Response, Dkt. 12034 (Johnson Law Group's omnibus opposition in four cases).   Plaintiffs are incorrect; the law Cook cites is good law, and Indiana's limited discovery rule does not prevent summary judgment given the undisputed facts here.

**A.    Development of the Indiana Discovery Rule and Applicable Standards**

Plaintiffs err in asserting that Cook's analysis of Indiana's statute of limitations relies on outdated authority.   Plaintiffs ignore the more recent cases Cooks cites for these same holdings, especially *In re Mirena IUD Prods. Liab. Litig. (Truitt)*, 29 F. Supp. 3d 345 (S.D.N.Y. 2014). *Truitt* is a recent and very comprehensive examination of Indiana statute of limitations case law in a nearly analogous factual context:   an implantable contraceptive device that caused perforation and migration, necessitating removal of the device.   The *Truitt* court held that under both Indiana law and Texas law that (1) the plaintiff's cause of action accrued once the device had migrated because "when an IUD is found somewhere in a woman's body where it is not supposed to be . . . there was a 'reasonable possibility' that the IUD harmed her and she should therefore make further inquiry to determine her legal rights" and (2) in any event, that the accrual date cannot possibly be any later than the procedure to remove the device.   *Id.* at 352 (holding

that the claim accrued "at the latest, when Plaintiff learned that the Mirena perforated her uterus and would have to be removed."). Plaintiffs offer no argument why the *reasoning* of the *Truitt* court should not be dispositive of their claims here, and Cook urges the Court to consider the decision carefully.

Plaintiffs' own characterizations of Indiana law regarding the statute of limitations and discovery rule are incorrect. Cook agrees that Indiana courts did not use the term "discovery rule" until *Barnes v. A.H. Robins Co. Inc.*, 476 N.E.2d 84 (1985), but Plaintiffs fail to mention:

> 1. *Barnes* did not overrule any previous cases that Cook cites. In particular, research discloses no hint that either *Barnes* or any other case has ever overruled the *Neuhauser* decision.

> 2. *Barnes* did not alter Indiana law on this issue in a meaningful way, as the Indiana Supreme Court clarified soon after *Barnes.* On the contrary, the Seventh Circuit affirmed summary judgment in another Dalkon Shield IUD case shortly after the Indiana Supreme Court answered the certified question in *Barnes. See Miller v. A.H. Robins Co. Inc.*, 766 F.2d 1102, 1106 (7th Cir. 1985) (holding that had plaintiff exercised the due diligence required by Indiana law, she would have discovered the reference to the IUD in her discharge summary).

The Indiana Supreme Court's adoption of the term "discovery rule" in *Barnes* was not actually a change in the law but a slight clarification in the context of a toxic-tort exposure case that makes no material difference in these cases. In *Wehling v. Citizens Nat. Bank*, 586 N.E.2d 840 (Ind. 1992), the supreme court compared the historical "ascertainment rule" with the "discovery rule" from *Barnes* and held that "that the so-called 'discovery rule' does not significantly differ from the 'ascertainment' rule announced in the [historical] Indiana cases."

*Id.* at 843.   The Indiana Supreme Court in *Wehling* thus "complete[d] the merging of the 'discovery' and 'ascertainment' rules" and held "that the cause of action of a tort claim accrues and the statute of limitations begins to run when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another."   *Id.*[8]   Once a plaintiff has that actual or constructive knowledge, the statute of limitations is triggered because the plaintiff has "a fair opportunity to investigate available sources of relevant information and to decide whether to bring their claims in court within the time limitations in the statute."  *Barnes,* 476 N.E.2d at 88.

In sum, the applicable standard is *objective*, imposing on plaintiffs the duty to investigate whether they have an actionable claim once they have inquiry notice of an injury—i.e. the clock "begins to run when the plaintiff knew or, *in the exercise of ordinary diligence, could have discovered that the injury had been sustained* as a result of [the actions of another person or a product]."  *Id.* (emphasis added).   A plaintiff need only know that the injury occurred and that it was caused by a product to start the clock.   Indiana has repeatedly rejected any requirement that a plaintiff need know of a possible legal theory of recovery—e.g., that a device is "defective"— for the cause of action to accrue.   *See* Cook Opening Br., Dkt. 11726, p. 16 (discussing *Truitt*, *Perryman*, and *Neuhauser*); *see also, e.g., Rieth-Riley Const. Co., Inc. v. Gibson*, 923 N.E.2d 472, 476 (Ind. Ct. App. 2010) (holding that statute of limitations began to run when plaintiff was injured, not when he learned of defendant's employment status because "[t]he discovery rule is not intended to toll the limitation period until optimal litigation conditions can be established.").

---

[8]  To the extent there is a meaningful difference in the applicable standard pre- and post-*Barnes,* that difference arises in the context of protracted exposure toxic tort cases that *Barnes* addressed and similar factual scenarios.   That difference does not apply in the IVC filter setting because there are clear and objective demarcation marks for the insertion of a filter, the removal and attempted removal of a filter, and filter-related complications diagnosed by imaging or otherwise noted in medical records.

In the product liability context, a plaintiff need only know that the product is a ***potential*** cause of the alleged injury to trigger the duty to investigate the possibility of a claim.   The "suggestion that the limitations period begins to run only when a plaintiff knows or should have discovered that the product was *the actual cause*, **rather than a possible or probable cause of the injury** . . . is inconsistent with Indiana law."   *Miller*, 766 F.2d at 1105 (emphasis added, italics in original); *Fultz v. Duckworth*, 962 F.22d 10 (Table), 1992 WL 96359, at *2 (7th Cir. 1992) (applying Indiana law) ("the discovery rule emphasizes knowledge of a potential rather than actual link between the defendants' acts and the injury.").

Finally, under Indiana law, the issue of whether the statute of limitations has been met is an objective determination made by the Court.   *See Doe v. United Methodist Church*, 673 N.E.2d 839, 842 (Ind. Ct. App. 1996) ("The determination of when a cause of action accrues is a question for the court."); *Malachowski v. Bank One, Indianapolis*, 590 N.E.2d 559, 564 (Ind. 1992) ("Courts determine when a cause of action 'accrues'') (both citing *Barnes*, 476 N.E.2d at 85).

**B.      Indiana's Statute of Limitations Bars Plaintiffs' Tort Claims.**

Application of the law set forth above demonstrates that Plaintiffs' claims are time-barred based on objective triggers that started the running of the statute of limitations.[9]  Specifically:

---

[9] Plaintiffs allege that their IVC filters caused them injuries due to findings of penetration, perforation, migration, PE, DVT, occlusion, embedment, and other conditions.  Cook disputes that Plaintiffs' claimed injuries are attributable to their filters or even, in some instances, that these conditions constitute compensable injuries at all.  Nevertheless, Cook recognizes that for the purposes of this motion, the Court must assume that these conditions are compensable injuries attributable to Plaintiffs IVC filters.  *See, e.g., McDonald v. Hardy*, 821 F.3d 882, 888 (7th Cir. 2016) (court addressing motion for summary judgment must "constru[e] the record in the light most favorable to the party opposing summary judgment") (citing *Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 (7th Cir. 2016)).

- Many Plaintiffs raise claims regarding (1) failed and difficult filter-retrieval procedures (i.e. Category 5), and (2) other injuries resulting from filters that were ultimately removed.  Under Indiana law, the **latest** possible statute-of-limitations trigger date for this type of claim is the date of the removal procedure.  It is self-evident and undeniable that a possible cause of an unsuccessful retrieval procedure is the filter itself.  For such claims, multiple cases have held that the statute of limitations must be said to have begun running on the date of the filter retrieval procedure.  *See Neuhauser*, 573. F. Supp. at 9-10 (holding that plaintiff's claims regarding her IUD accrued in 1974 when plaintiff suffered a miscarriage and had the device removed, not when she saw a 60 Minutes episode about the dangers of the device seven years later in 1981); *Wojcik v. Almase*, 451 N.E.2d 336, 342 (Ind. Ct. App. 1983) (holding that plaintiff's claims accrued on the date his catheter fractured and that the catheter could not have fractured any later than the date it was removed); *In re Mirena IUD Prods. Liab. Litig. (Truitt)*, 29 F. Supp. 3d at 352 (holding that the statute of limitations was triggered "at the latest, when Plaintiff learned that the Mirena [IUD] perforated her uterus and would have to be removed").  This Court reached the same conclusion in granting summary judgment based on the Kansas statute of limitations in *Graham*, *see* Dkt. 5575 at 5 ("The injuries described in her Complaint…were known to her immediately after the September 9 surgery."), and as did the Bard MDL court in a case applying Nebraska law.  *See In re Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 3957737, at *4 (D. Ariz. Aug. 17, 2018).

- For the cases raising Category 6 and Category 7 claims involving asymptomatic and symptomatic filter complications such as perforation and migration, the claims likewise begin to accrue when that condition is diagnosed on CT scan or doctor's visit because the condition is intimately connected to the filter—perforation is the phenomenon of the IVC

protruding through the vena cava and migration refers to the filter moving to a location within the body outside of where it is expected to be. *See In re Mirena IUD Prods. Liab. Litig. (Truitt)*, 29 F. Supp. 3d at 352 (holding that claims of migration and perforation of an IUD begin to accrue when the migration or perforation is discovered). Put differently, it is again self-evident that filter migration and IVC perforation are potentially caused by the filter itself because they are conditions that only occur from the interaction of the device with the Plaintiff's body. This fact distinguishes these cases from mesothelioma or pharmaceutical drug cases, where the injury may be a medical condition with many different causes (like cancer) and the plaintiff cannot immediately discern without a physician's opinion that the condition might be caused by exposure or usage of the product. *See Miller*, 766 F.2d at 1105 (explaining that Indiana law does not require plaintiff to have knowledge of "*the actual cause*, rather than a possible or probable cause of the injury" is sufficient to trigger statute of limitations (emphasis in original)); *Fultz*, 962 F.22d 10 (Table) (holding that the Indiana "discovery rule emphasizes knowledge of a potential rather than actual link between the defendants' acts and the injury."). Moreover, these Plaintiffs ***have already received*** the benefit of all the time under the discovery rule between the perforation and/or migration actually occurring in their bodies and that condition being diagnosed upon a doctor's visit or imaging. Cook does not dispute that the discovery rule affords Plaintiffs this time. But once the condition Plaintiff claims as an injury is noted in medical records and imaging when the Plaintiff sees a doctor about the status of the filter, then the clock has started to run, and summary judgment is appropriate when the Plaintiff fails to file within the following two years. *See Miller*, 766 F.2d at 1106 (attributing to the plaintiff knowledge of the information contained in the medical records regarding her hospitalization).

- The fact that some of these Plaintiffs are asymptomatic does not provide a loophole around the statute of limitations.  The Plaintiffs themselves filed these cases alleging that asymptomatic filter complications are legally cognizable and compensable injuries, and their attorneys have certified in the categorization forms that these complications constitute the injuries that the Plaintiffs are pursuing.  The statute of limitations on these claims thus necessarily accrued when those claims were diagnosed because "ascertainability" of damages is intimately linked under Indiana law to the triggering of the statute of limitations.  *Wehling*, 586 N.E.2d at 843 (explaining that the statute of limitations begins to run when the plaintiff's damages are "ascertained or [are] ascertainable by due diligence" and merging this rule with the functionally-equivalent discovery rule).  A Plaintiff therefore cannot claim these complications as the personal injuries for which they seek compensation and at the same time assert that those same complications are not "ascertainable" for purposes of the statute of limitations.  Indiana law requires consistency between these two positions; without it, a massive loophole would render timely for statute of limitations purposes claims that occurred long before filing.

- With respect to Category 7 occlusion claims, occlusion is generally defined as "the blockage or closing of a blood vessel or hollow organ," and defined by this Court in the Categorization Form (Dkt. 9638-1) as having an "occluding thrombus (clot) in the IVC after filter insertion (documented by imaging or autopsy)." The statute of limitations on such a claim (and any claim premised on damage to the vena cava) must also logically accrue on the documenting of such a condition.  No special medical training is required to surmise that one should investigate whether alleged blockage in the vena cava has something to do with the IVC filter that is sitting in place in that organ.

- Several Plaintiffs also claim Category 7 post-placement DVT and/or PE as injuries. A claim that the filter caused subsequent PE/DVT necessarily accrues at the diagnosis of the PE/DVT; at that point the Plaintiff knows (1) a filter is in place, and (2) the Plaintiff is diagnosed with and/or treated for subsequent DVT or PE. The development of DVT/PE is a potentially fatal event that requires hospitalization and treatment. Under Indiana law, product liability claims regarding devices begin to accrue at the time of any hospitalization that occurs to treat the injury allegedly caused by the device. *See Barnes*, 476 N.E.2d at 87 (holding that the "statute of limitations in such causes commences to run from the date the plaintiff knew or should have discovered that she suffered an injury or impingement, and that it was caused by the product or act of another."); *Miller*, 766 F.2d at 1106 (plaintiff's claims regarding her Dalkon IUD began to accrue when she was hospitalized for an infection in 1974, not in 1981 when she claimed she discovered she was infertile); *Neuhauser*, 573. F. Supp. at 9-10 (plaintiff's claims regarding her IUD accrued in 1974 when plaintiff was hospitalized and had a miscarriage, not when she saw a 60 Minutes episode about the dangers of the device seven years later in 1981).

In sum, the statute of limitations in Indiana is triggered by inquiry notice that an injury is caused by the product. In these cases, the undisputed facts establish as a matter of law that Plaintiffs were on constructive notice as of the dates reflected in their medical records that the injuries they now claim were product-related, and their causes of actions necessarily accrued on those dates. Determination of the accrual date is a question for the Court, not the jury. *See United Methodist Church*, 673 N.E.2d at 842; *Malachowski*, 590 N.E.2d at 564; *Barnes*, 476 N.E.2d at 85. These Plaintiffs' personal injury claims are time-barred because they were not filed within two years of their accrual, as demonstrated by comparison of the dates in the categorization medical records and the filing dates in Exhibit A (Dkt. 11726-1).

US.124990717

C.     **Plaintiffs' declarations about their own subjective knowledge do not create a genuine issue of fact.**

Several Plaintiffs have submitted affidavits or declarations asserting that they did not *personally* know of any issues with their Cook IVC filters until some point after the dates of the records they submitted in support of categorization.  They argue their claims would be timely if this later date governed, and they argue that their statements create a genuine issue of material fact preventing summary judgment on the statute of limitations.  These Responses can be grouped in two subcategories:

- Plaintiffs that have provided affidavits or declaration asserting that they did not know they had a claim until they subjectively learned that the device was "defective" (most typically through advertisements by plaintiffs' attorneys promoting this litigation) and/or that the device "caused" the injuries they had experienced, *see* table attached as **Exhibit B** (listing these Plaintiffs' names, case numbers, and quoting statements made in their affidavits and/or declarations).

- Plaintiffs that do not dispute the accuracy of the underlying medical records but argue that they were not given the diagnosis by their doctors until some subsequent visit that would make the claim timely, *see* Dkts. 11953, 11955-57 & 11959.

Neither of these arguments raises an issue of material fact that would preclude summary judgment.

1.     **Affidavits About Plaintiffs' Subjective Knowledge Fail to Create a Material Issue of Fact Because The Governing Standard Does Not Require Knowledge of a Legal Theory or Legal Causation**

As explained above, Indiana has a very limited discovery rule, and Indiana courts have expressly rejected invitations to define the accrual trigger in terms of when a plaintiff gains knowledge of actual causation or legal theories.  In fact, this Court in *Neuhauser* expressly

rejected the suggestion that the claimed injury accrued when the plaintiff saw a 60 Minutes television expose about the Dalkon Shield IUD seven years after being hospitalized for injuries related to her use of the device.  *See* 573 F. Supp. at 9.  The Court concluded instead that the "record establishe[d] that the plaintiff knew as early as 1974 that the Dalkon Shield probably caused her miscarriage." *Id.* at 10.  Likewise here, the relevant issue is Plaintiffs' knowledge of the injury, *not* knowledge of legal theories and/or legal causation.  *Id.* at 9-10; *In re Mirena IUD Prods. Liab. Litig. (Truitt)*, 29 F. Supp. 3d at 352; *Perryman v. Motorist Mut. Ins. Co.,* 846 N.E.2d 683, 689 (Ind. Ct. App. 2006) ("The statute of limitations begins to run from this point [when plaintiff knows injury was potentially caused by the product] and not when advice of counsel is sought or a full blown theory of recovery developed."); *Rieth-Riley Const. Co*, 923 N.E.2d at 476 (all holding that the relevant consideration is plaintiff's factual knowledge of the potential cause, not knowledge of legal theories).

Here, the 36 Plaintiffs listed in Exhibit B make similar claims of belated knowledge that their filters were "defective" and/or "caused" the injuries they had experienced.  Notwithstanding these assertions, the medical records Plaintiffs themselves submitted establish the dates these Plaintiffs knew or should have known of the injuries they now claim in their categorization forms, and no affidavits and declarations can change those facts, and nothing they claim to have learned later alters the fact that the clock began to run when these complications first noted on dates listed in Exhibit A to the opening brief (Dkt. 11726-1).  *See e.g., Perryman*, 846 N.E.2d at 689 (noting that Indiana "law does not require a smoking gun for the statute of limitations to commence") (internal citations omitted); *Fultz*, 962 F.22d 10 (Table), 1992 WL 96359, at *2 ("Receiving confirmation in the September 1988 order of what the appellant had considered an

injury in May 1987 does not give Mr. Fultz the benefit of the longer limitation period. . . .").
Summary judgment is therefore proper with respect to the claims raised by these 36 Plaintiffs.

> **2.      Plaintiffs Who Do Not Dispute The Accuracy of Their Medical Records But Feign Knowledge of Their Diagnoses Fail To Raise a Genuine Dispute of Material Fact Because They Could Not Have First "Discovered" Their Injuries After Filing Their Cases**

Five Plaintiffs (all represented by the same firm) have submitted affidavits acknowledging the accuracy of the underlying medical records they submitted, but claiming that they did not personally learn of those diagnoses until conversations with their physicians sometime later.  Based on these assertions, they argue that their claims are timely based on these new, later dates.  *See* Dkts. 11953, 11955-57 & 11959. These affidavits fail to raise a dispute of material fact because the governing standard for accrual is *objective*, not subjective, as discussed above.  Moreover, ***all*** of these Plaintiffs' claims of ignorance are demonstrably false because the alleged conversations in which these Plaintiffs claim to have learned of their injuries occurred ***after*** the Plaintiffs had already filed their cases asserting those injuries:

- Plaintiff Teresa Loose (Response, Dkt. 11959; Motion Entry No. 45):  Plaintiff Loose does not dispute that her perforation was noted on June 2, 2010 but alleges that she was not told about it until 2017.  Plaintiff Loose, however, filed her case on December 16, 2016.

- Plaintiff Raul Carillo (Response, Dkt. 11956; Motion Entry No. 75):  Plaintiff Carillo does not dispute that a perforation was noted in his medical records dated March 22, 2015, but alleges that he was not given this diagnosis by his physician until April 2019.  Plaintiff Carrillo, however, filed his case on August 17, 2017.

- Plaintiff Gregory Ray (Response, Dkt. 11955; Motion Entry No. 104):  Plaintiff Ray does not dispute that a perforation, occlusion, and migration were noted in his medical records

as part of the same record dated February 3, 2013, but alleges that he was not given this diagnosis "until sometime later after filing the case" without specifying the time frame of this alleged conversation.

- Plaintiff Enoch Surles (Response, Dkt. 11953; Motion Entry No. 109):  Plaintiff Surles acknowledges that a perforation was noted on a medical record dated November 7, 2013 but alleges that he was not given this diagnosis by his physician until April 2019. Plaintiff Surles, however, filed his case on September 1, 2016.

- Plaintiff Dianna Coleman (Response, Dkt. 11957; Motion Entry No. 121):   Plaintiff Coleman acknowledges that a failed retrieval attempt occurred in her case on September 12, 2012 but alleges that she "never informed by any of my doctors or the radiologists interpreting my imaging studies that my filter had failed, tilted, perforated my vena cava, migrated, embolized or fractured."  Dkt. 11957-1, ¶ 5.

Obviously, Plaintiffs could not have commenced their actions based on injuries that they did not yet know existed.  Whatever additional information these Plaintiffs received during subsequent visits with their physicians, they knew of their injuries before filing suit.  They have failed to overcome the *prima facie* case made by Cook that the statute of limitations began to run on the dates listed in Exhibit A (June 2, 2010 for Plaintiff Loose; February 3, 2013 for Plaintiff Ray; March 22, 2015 for Plaintiff Carillo; November 7, 2013 for Plaintiff Surles; and September 12, 2012 for Plaintiff Coleman).  *See e.g., V. Ganz Bulders and Dev. Co. v. Pioneer Lumber, Inc.*, 59 N.E.3d 1025, 1032 (Ind. Ct. App. 2015) (explaining that under Indiana law "[w]hen a statute of limitations defense is asserted, the moving party must first make a prima facie showing that the action was commenced outside the statutory period . . . . [and then] the burden shift[s] to the opponent of the summary judgment motion to establish facts in avoidance of the statute of

limitations defense.''); *see also Miller*, 766 F.2d at 1106 (attributing to the plaintiff knowledge of the information contained in the medical records because had the plaintiff exercised due diligence in investigating the claim, the plaintiff would have discovered medical records confirming the alleged injury). The "disputed" facts these Plaintiffs offer in their affidavits are "blatantly contradicted by the record, so no reasonable jury could believe [them]" and therefore this Court "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.''' *Williams Charles Constr. Co., LLC v. Teamsters Local Union 627*, 827 F.3d 672, 679 (7th Cir. 2016) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). The Court should therefore enter summary judgment with respect to the claims in these five cases.

### D. Plaintiffs' Submission of New Records Does Not Make Their Claims Timely Because These Are Not Legally Separate Injuries

Certain Plaintiffs have submitted new medical records with their Responses, arguing that these new records demonstrate new/additional injuries and that these "new" injuries mean that they timely commenced their actions. For example, Texas Plaintiff Maria Ibarra (Response, Dkt. 12027; Mot. Ex. A. Entry No. 87) was included in the motion based on Category 4 and 5 claims (records submitted were failed retrieval attempts dated 4.18.2012 and 10.4.2012) and an untimely filing date of September 21, 2017, but she is now claiming a new injury based on a perforation record (dated 4.5.2019) attached to her complaint.

Cook is entitled to summary judgment in these cases notwithstanding these new records because these so-called "new" injuries are ***not*** separate claims under Indiana law. On the contrary, the occurrence of further injury or damages does not toll or reset the applicable Indiana statute of limitations. *See Monsanto v. Miller*, 455 N.E.2d 392, 394 (Ind. Ct. App. 1983) ("[I]t is not necessary that the full extent of the damage be known or even ascertainable but only that some ascertainable damage has occurred."); *see also* Ind. Code. §§ 33-1-1.5-5.5.-2 (statutory

provision providing for a "second injury" in the asbestos context expired on July 1, 1994 when the Indiana Legislature declined to extend it); *see also Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 802 (2007) ("The statute of limitations begins to run upon injury . . . and is not tolled by subsequent injuries.").

As the Court is well aware, Plaintiffs in this litigation have repeatedly presented their theories about how IVC filter injuries are "progressive" and that lesser complication flow into more serious ones: "the course of filter injury is a progressive one."  *See* Pls.' Response to Cook Defs.' Mot. for Screening Order and Bellwether Selection Plan, Dkt. 8591, p. 10.   Because Indiana law on statute of limitations does not distinguish between new and subsequent injuries and a central tenet of Plaintiffs' theory in this MDL are that filter complications are related and progress from one another, Plaintiffs can offer no rationale for the Court to separate the "new" claims raised by Plaintiffs such as Plaintiff Ibarra from their previous claims and treat the new claims alone as timely filed.  *See e.g., Monsanto*, 455 N.E.2d at 394.[10]  Simply put, these Plaintiffs had knowledge of claims against Cook arising from their IVC filters as of the dates listed in Exhibit A, and Cook is entitled to summary judgment because they did not file their action within two years of those dates.

---

[10] Nor can these Plaintiffs escape this conclusion by invoking their home states' laws.  Both Idaho and Texas likewise hold that their statutes of limitations begin running when a plaintiff has a compensable injury, regardless of whether the eventual extent of that injury is or can be known. *See, e.g., Ralphs v. City of Spirit Lake*, 560 P.2d 1315, 1317 (1977) ("the applicable statutes begin to run from the occurrence of the wrongful act albeit the full extent of the damages may be unknown or unpredictable at that initial time"); *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 146 (Tex. 2019), reh'g denied (Sept. 6, 2019) ("[T]he discovery of additional damages does not alter the accrual of an earlier tort, nor is there evidence of an underlying tort distinct from those alleged earlier. The purchase orders may show continuing damage to [Plaintiff] from earlier torts, but this does not reset the statute of limitations.").

Finally, Virginia Plaintiff George Southern Jr. (Response, Dkt. 11978; Mot. Ex. A. Entry No. 143) raises a case-specific argument addressing the completeness of the medical images that he submitted to categorize his claim of asymptomatic perforation.  Cook included the case in the present motion because those images were dated July 24, 2014, and the case was not filed until more than four years later, on November 15, 2018.  *See* Exhibit A, Entry No. 143.   In his Response (Dkt. 11978), Plaintiff Southern submits additional records regarding his alleged injury to try to create an issue of fact.  Rather than create a fact issue, however, he simply highlights that his case is also subject to dismissal for failure to comply with the October 2, 2018 order requiring medical proof of an injury.  *See* Categorization and Screening Order, Dkt. 9322; Categorization Form, Dkt. 9638-1.

Specifically, Plaintiff Southern originally submitted a CT image with a circle drawn around the filter, along with lawyer certification that this was proof of an asymptomatic perforation.  Nothing in the submissions, however, confirms or suggests that the person who circled the CT image was a physician trained to identify perforation.  In contrast, the new report Plaintiff Southern submitted to respond to Cook's motion was written by a trained radiologist who actually reviewed the CT images submitted with Southern's CCF form, and that report identifies ***no perforation***.  *See* Dkt. 11978-1 (stating "IVC Filter in place").  Thus, it appears that this report was not omitted from original CCF form in the interest of brevity, as Plaintiff's response suggests, but because it fails to demonstrate the existence of *any* injury attributable to Plaintiff's IVC filter.  Plaintiff Southern thus loses either way:

- If he relies on the newly submitted report as his proof of injury, his claim fails as a matter of law because that report ***shows no injury***, and his claim is subject to dismissal. *See* Categorization and Screening Order, Dkt. 9322; Categorization Form, 9638-1.

- But if he relies on the (unqualified) circling on his original submission as his proof of injury, his claim fails as a matter of law because he did not commence his action within the permitted two years after its accrual.  *See Miller*, 766 F.2d at 1106 (attributing to the plaintiff knowledge of the information contained in the medical records regarding her hospitalization).

### VIII.   Plaintiffs' Claims of Fraudulent Concealment and Equitable Tolling Do Not Prevent the Running of the Statute of Limitations Against Them.

Several Plaintiffs attempt to invoke the doctrines of fraudulent concealment or equitable tolling to escape the statute of limitations bar to their actions.  These arguments fail for several reasons.  Plaintiffs have not plead their claims of fraudulent concealment with the particularity required by Rule 9, and the claims fail as a matter of law in any event because the medical records Plaintiffs themselves submitted establish that Plaintiffs had sufficient information to satisfy the objective standard for the accrual of their causes of action.  As to equitable tolling, Plaintiffs neither plead nor offer evidence of any factual basis for such a finding.

### A.   Plaintiffs have not pleaded fraudulent concealment with the particularity required by Rule 9.

#### 1.   Rule 9 requires Plaintiffs to plead fraudulent concealment with particularity.

Because pleading is procedural, the federal rules govern pleading requirements in federal courts.  "Under F.R.Civ.P. 9(b), the party alleging fraudulent concealment must plead the circumstances giving rise to it with particularity."  *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975); *see also Larson v. Northrop Corp.*, 21 F.3d 1164, 1173 (D.C. Cir. 1994 ("Another requirement is that allegations of fraudulent concealment, which toll the statute of limitations, must meet the requirements of Fed. R. Civ. P. 9(b).").  This Court has itself applied Rule 9's particularity requirement to a plaintiff's claim that fraudulent concealment

tolled a statute of limitations.  *See Leathermon v. Grandview Mem'l Gardens, Inc.*, No. 4:07-CV-137-SEB-WGH, 2011 WL 2445980, at *8–9 (S.D. Ind. June 15, 2011) (imposing Rule 9's particularity requirement to claim that fraudulent concealment tolled statute of limitations and finding requirement met).

Under Rule 9, "when fraud is alleged, it must be done with particularity and plead the who, what, when, where, and how of the alleged fraud." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992); *In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 155 F. Supp. 2d 1069, 1109 (S.D. Ind. 2001) (dismissing plaintiffs' claims under Michigan and Tennessee consumer protection statutes for failure to meet the heightened pleading requirements of Rule 9(b), including failure to allege "individual reliance").  The Seventh Circuit's case law on Rule 9 requires that a plaintiff must allege at least the specific circumstances of the alleged fraud – the who, what, and how – to meet the particularity requirement.  *See, e.g., Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 669 (7th Cir. 2008) (affirming dismissal under Rule 9 where "the complaint failed to plead with particularity the who, when and how of the alleged frauds, all of which are required by Rule 9(b) for allegations of fraud").

### 2.     Plaintiffs have not plead fraudulent concealment with particularity.

Here, Plaintiffs' allegations of fraudulent concealment are vague and non-specific, and they provide none of the detail necessary to state a claim sufficient to toll the statute of limitations.  The relevant section of Plaintiffs' Master Consolidated Complaint alleges:

### TOLLING OF THE LIMITATIONS PERIOD

195. Defendants, through its affirmative misrepresentations and omissions, actively concealed from Plaintiffs and Plaintiffs' healthcare providers the true and significant risks associated with Cook's IVC Filters.

196. As a result of Defendants' actions, Plaintiffs and their prescribing physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiffs had been exposed to the risks identified in this Master Complaint, and that those risks were the result of Defendants' acts, omissions, and misrepresentations.

197. Accordingly, no limitations period ought to accrue until such time as Plaintiffs knew or reasonably should have known of some causal connection between Plaintiffs being implanted with a Cook IVC Filter and the harm Plaintiffs suffered as a result.

198. Additionally, the accrual and running of any applicable statute of limitations have been tolled by reason of Defendants' fraudulent concealment.

Dkt. 213 at 36.

These vague, general allegations fall far short of the particularity required by Rule 9. Plaintiffs do not allege who at Cook concealed information from Plaintiffs or their doctors, what information about any particular Plaintiff's claim Cook allegedly concealed, or how that concealment occurred.  This is at most an allegation of a failure to disclose general information, not a specific allegation of fraudulent concealment of specific information.   It is wholly insufficient under Rule 9, *see Windy City Metal*, 536 F.3d at 669, and cannot support tolling Plaintiffs' statutes of limitations under the doctrine of fraudulent concealment.  *See* Dkt. 5575 (Graham Order, stating "even if the doctrine [of fraudulent concealment] would apply to [Plaintiff's] claims, Graham does not allege any affirmative conduct by the Cook Defendants that was designed to prevent, and did prevent, her from discovering her cause of action").

## B.      Plaintiffs' claim of fraudulent concealment would not toll the statute of limitations on their claims.

Even assuming Plaintiffs had plead claims of fraudulent concealment with sufficient particularity, those claims fail as a matter of law to save Plaintiffs from the statute of limitations. given the undisputed diagnoses detailed in the medical records that Plaintiffs submitted to the Court.

As one treatise explains, fraudulent concealment cannot toll the running of the statute of limitations if the plaintiff nevertheless has sufficient knowledge of the claim to start the statute running:

> Fraudulent concealment can exist only if the plaintiff lacked the requisite knowledge pertinent to its cause of action until the time that the applicable limitations period expired. … Nor may the plaintiff rely on the doctrine of fraudulent concealment simply because its knowledge was somewhat delayed or incomplete. On the contrary, ***the statutory limitations period begins running as soon as the plaintiff has sufficient actual knowledge to be aware of its claim,*** even though it lacks some of the details of its cause of action and does not discover the full enormity of the defendant's wrongdoing until later.

32 Am. Jur. Proof of Facts 3d 129.  Indiana law has adopted this standard.  *See, e.g., Ludwig v. Ford Motor Co.*, 510 N.E.2d 691, 697 (Ind. Ct. App. 1987) (holding plaintiff's early knowledge of problems with trucks foreclosed any claim that defendants had fraudulently concealed facts showing the existence of a cause of action).[11]

Here, as discussed above in Section VII, the medical records establish the dates on which the Plaintiffs had constructive knowledge of the injuries they now claim entitled them to

---

[11] All five of Plaintiffs' home states have likewise held that any fraudulent concealment cannot toll the commencement of the statute of limitations past the time when the plaintiff learned of the injury in question.  *See, e.g., Otis v. Sci. Atlanta, Inc.*, 612 S.W.2d 665, 667 (Tex. Civ. App. 1981), writ refused NRE (May 27, 1981) ("Concealment of one's identity does not toll the statute of limitations when, regardless of the defendant's identity, the plaintiff knows, or reasonably should know, that he has a cause of action."); *Garrett v. Raytheon Co.*, 368 So.2d 516, 521 (Ala. 1979) ("Alabama does recognize that a fraudulent concealment by a defendant tolls the running of the statute until the tort or injury is discovered or could have been discovered by due diligence."); *Doe v. Roman Catholic Archbishop of Archdiocese of Detroit*, 692 N.W.2d 398, 405 (Mich. Ct. App. 2004) ("If there is a known cause of action there can be no fraudulent concealment which will interfere with the operation of the statute, and in this behalf a party will be held to know what he ought to know . . . For a plaintiff to be sufficiently apprised of a cause of action, a plaintiff need only be aware of a possible cause of action.'") (internal citations omitted); *Donovan v. Deyerle*, 8 Va. Cir. 464 (Va. Cir. 1963) ("Recognized in every jurisdiction is the concept that fraudulent concealment by a physician of the existence of the negligent act under some circumstances defers the commencing of the period of limitations until discovery by the patient."); *Johnson v. Gorton*, 495 P.2d 1, 3 (Idaho 1972) ("Fraudulent concealment after *Renner* does toll the statute of limitations in a malpractice action until the plaintiff discovers or should have discovered the injury resulting from negligent treatment.").

recovery from Cook.  Plaintiffs failed to commence their actions within the statutorily required period after that date, and the statute of limitations therefore bars their claims.  The undisputed facts thus establish that Cook could not have fraudulently concealed Plaintiffs' causes of action from Plaintiffs because Plaintiffs already had the knowledge of their injuries necessary to put them on inquiry notice and commence the statute of limitations.   Put differently, to state a claim for fraudulent concealment, the plaintiffs must have lacked "the means of detecting the fraudulent arrangement," but there is no evidence or even allegation here that Cook prevented any Plaintiff from obtaining or discouraged them from requesting their own medical records *Guy v. Schuldt*, 138 N.E. 2d 891, 896 (Ind. 1956) (internal quotation marks and citation omitted).  Without such a scenario, Plaintiffs' invocation of fraudulent concealment is without merit.

**C.      Plaintiffs have offered no support for equitable tolling of the statute of limitations.**

Several Plaintiffs claim that they are entitled to equitable tolling of the statute of limitations applicable to their claims despite the undisputed diagnoses detailed in the medical records that they submitted to the Court.  But the claim of equitable tolling fails for the same reasons their fraudulent concealment claim fails.

Under Indiana law, a claim of equitable estoppel depends on allegations of fraud:

> Equity will estop a party from setting up the statute of limitations as a defense in an action where such party by fraud or other misconduct has prevented a party from commencing his action or induced him to delay the bringing of his action beyond the time allowed by law.

*Burnett v. Villaneuve*, 685 N.E.2d 1103, 1111 (Ind. Ct. App. 1997) (quoting *Donnella v. Crady*, 185 N.E.2d 623, 625 (Ind. Ct. App. 1962), trans. denied).  Indeed, Plaintiffs' Master Complaint based its claim of equitable tolling on the same factual allegations that underlie its fraudulent concealment claim, quoted above.  *See* Dkt. 213 at 36, ¶ 200.  But as discussed above, Plaintiffs have failed to plead these allegations of fraud with the particularity required by Rule 9.  *See, e.g.,*

*Koch v. Christie's Int'l PLC*, 785 F. Supp. 2d 105, 116 (S.D.N.Y. 2011) (holding equitable tolling based on fraudulent concealment for failure to plead facts with specificity), *aff'd*, 699 F.3d 141 (2d Cir. 2012).   As noted above and in Cook's opening papers, this requirement is an overarching issue of federal law and has been applied by federal courts in Indiana as well as the five states where these Plaintiffs reside.

Moreover, equitable tolling can logically only extend until the Plaintiff is actually aware of sufficient facts to be on notice of the need to investigate a possible claim.   And again, as discussed in Section VII above, the undisputed facts here establish that these Plaintiffs were on notice of the injuries they now claim not later than the dates of the medical records they submitted, and were thus on notice to begin investigation of their possible claims.   Equitable tolling does not excuse Plaintiffs' failure to commence their actions within the statute of limitations.

## IX.   In the Alternative, Plaintiffs' Personal Injury Claims Are Time-Barred by The Applicable Statute of Limitations in Their Homes States And There Are No Applicable Discovery Rule Exceptions To Save Them From Dismissal.

In the alternative, if the Court instead decides that the statute of limitations laws of Plaintiffs' home states control here, Cook is still entitled to summary judgment on Plaintiffs' personal injury tort claims because the statutes of limitation of Alabama, Idaho, Virginia, Texas, and Michigan bar Plaintiffs' respective claims.

As discussed above with respect to the Indiana standard, *supra* Section VII, virtually all of the Plaintiffs who try to rely on their home states' statutes of limitations argue that summary judgment is inappropriate or premature because of the existence of factual issues concerning when they knew or should have known about the problems with their IVC filters or the need for discovery to identify such issues.   But as discussed above with respect to the Indiana standard,

those arguments are not relevant here because each of the five states at issue here imposes an objective standard for determining the accrual of an action for statute-of-limitations purposes. Indeed, those objective standards are one of the reasons Cook selected cases from these states for this initial statute-of-limitations motion.  Cook will not repeat the Indiana arguments above on this subject as to each of the states below, but instead incorporates that discussion by reference.

### A.     Alabama

So far as arguments that require additional reply, the Alabama Plaintiffs variously argue that their affidavits and declarations create genuine issues of material fact and that the statute of limitations is tolled by fraudulent concealment and equitable tolling.[12]   As noted in Cook's original motion, Alabama has a strict, objective statute of limitations that runs from the occurrence of the injury and rejects any discovery rule.  *See Moon v. Harco Drugs, Inc.*, 435 So.2d 218, 220 (Ala. 1983) ("This Court has repeatedly held that a cause of action accrues when the injury occurs, and in so doing, this Court has refused to accept the so-called 'discovery rule.'") (internal citation omitted).  Cook's arguments above concerning the futility of affidavits concerning Plaintiffs' knowledge and the claims of fraudulent concealment and equitable tolling apply with even greater force under the Alabama statute of limitations than under Indiana's limited discovery rule, and Cook incorporates them here.  *See Payton v. Monsanto Co.*, 801 So.2d 829, 835 (Ala. 2001) ("The fact that a plaintiff discovers damage for the first time outside the limitations period does not save the plaintiff, because this Court has declined to apply a 'discovery rule.'").

---

[12] Alabama Plaintiff Toney Davidson also argues in her Response (Dkt. 12007) that entry of summary judgment would be premature in her case because her case also has connections to Georgia and Tennessee, and Cook has not briefed the law of those two states.  Plaintiff Davidson's argument fails because Indiana law applies for the reasons discussed in Cook's specific response to the PSC brief and therefore her connections to Georgia, Tennessee (and Alabama, for that matter) are not relevant.

### B.   Idaho

So far as arguments that require additional reply, the Idaho Plaintiffs likewise argue that their affidavits and declarations create genuine issues of material fact and that the statute of limitations is tolled by fraudulent concealment and equitable tolling.  As noted in Cook's original motion, Idaho has a strict, objective statute of limitations that rejects any discovery rule.  Like Alabama, the Idaho Supreme Court has rejected invitations to recognize discovery rule exceptions.  *See, e.g., Theriault v. A.H. Robins Co., Inc.*, 698 P.2d 365, 370-71 (Idaho 1985). Cook's arguments above concerning the futility of affidavits concerning Plaintiffs' knowledge and the claims of fraudulent concealment and equitable tolling apply with even greater force under the Idaho statute of limitations than under Indiana's limited discovery rule, and Cook incorporates them here.  *See id.*

### C.   Michigan

Michigan Plaintiffs likewise argue that their affidavits and declarations create genuine issues of material fact and that the statute of limitations is tolled by fraudulent concealment and equitable tolling, and Cook again incorporates its arguments above on those issues.

In addition, several of the Michigan Plaintiffs have submitted responses arguing that their claims are timely under Michigan's three-year statute of limitations.  Even assuming for the sake of argument that Michigan's statute of limitations applied instead of Indiana's, however, Plaintiffs' arguments would fail and Cook would be entitled to summary judgment.

Several responses by Michigan Plaintiffs challenge Cook's reliance on the Michigan Supreme Court's decision in *Trentadue v. Buckler Lawn Sprinkler Co.*, 738 N.W.2d 664 (Mich. 2007), and its holding that "courts may not employ an extrastatutory discovery rule to toll accrual," *id.* at 672.  One response concedes that the *Trentadue* decision "sought to overrule all prior precedent, and despite strong dissenting opinion, attempted to retroactively and

ubiquitously apply its decision to all personal injury cases." Dkt. 11973 at 5 (citing *In re Avandia Mkt., Sales Prac. and Prod. Liab. Litig.*, MDL No. 1871, 2014 WL 2011239, at *6 (E.D. Pa. May 16, 2014)),[13] but essentially argues that *Trentadue* was wrongly decided, Dkt. 11973 at 6 ("a retroactive application of *Trentadue* ignores Plaintiffs, such as the Plaintiff in the case at hand, who suffer from discreet injuries that may not present symptoms until years later"). But regardless of whether Plaintiffs believe *Trentadue* is good law or bad, it is nevertheless the law of Michigan, and it is not this Court's place to overrule the judgment of the Michigan Supreme Court on an issue of Michigan law. *See e.g., Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996) ("Under the *Erie* doctrine, federal courts sitting in diversity, apply state substantive law and federal procedural law.") (discussing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).[14]

Other Plaintiffs argue that Cook misstates Michigan's standard for the accrual of a cause of action, and that a cause of action accrues "when the plaintiff is harmed." See Dkt. 12054 at 13 (quoting *Boyle v. Gen. Motors Corp.*, 661 N.W.2d 557, 560 n. 5 (2003)); *see also* Dkt. 12049 at 13-14 (Response of Plaintiff Boone); Dkt. 12020 at 23 (Response of Plaintiff Ball). But even assuming this is the correct standard, it does not help these Plaintiffs; on the contrary, it fully

---

[13] *See also* Dkt. 12018 at 3 ("It is not established as a matter of law that Michigan does not recognize a common law discovery rule.") (also citing *In re Avandia Mkt., Sales Prac. and Prod. Liab. Litig.*, MDL No. 1871, 2014 WL 2011239, at *5 n. 63.

[14] One Plaintiff argues that the *Trentadue* holding does not apply here because *Trentadue* was not a product liability case and Michigan courts have applied a discovery rule in products cases. *See* Dkt. 12044 at 5 (citing pre-*Trentadue* decision of *Moll v. Abbott Lab.* 444 Mich. 1, 13, 506 N.W.2d 816 (1993). But as noted above, the *Trentadue* decision was intentionally broad, and subsequent decisions have applied its holding foreclosing the discovery rule in medical device cases like the *Tice* case that Cook analyzed in its opening brief. *See Tice v. Zimmer Holdings, Inc.*, 2015 WL 4392985, at *5 (W.D. Mich. July 15, 2015) ("*Trentadue* makes clear that the accrual date for Plaintiffs' claims is not tied to their knowledge of the harm . . . . [T]he claims accrued when the alleged defects in the Devices harmed Plaintiff.").

supports the grant of summary judgment.  As detailed in Cook's original motion and the accompanying Exhibit A, all of these Plaintiffs identified in their categorization forms the injuries they were claiming and supplied one or more medical records that they claim document that injury.  Each categorization form thus identifies the "harm" that Plaintiff is claiming to have suffered, and the date on the accompanying medical record identifies "when" (at the latest) that harm occurred.  In other words, taken together, these documents establish "when the harm occurred"; the very standard Plaintiff proposes for the accrual of a cause of action under Michigan law.  And as set out in Cook's original moving papers, in every one of the cases before the Court involving a Plaintiff from Michigan, the harm occurred—according to Plaintiffs' own submissions—more than three years before that Plaintiffs commenced their actions.  Thus, even accepting Plaintiffs' standard for the accrual of a cause of action, these Plaintiffs failed to commence their actions within Michigan's three-year statute of limitations, and Cook is entitled to summary judgment.

One response invokes the "continuing-wrongful-acts" doctrine. Dkt 12054 at 14 (Response of Plaintiff Tyson).  But "Michigan appellate courts have applied this doctrine in limited circumstances," where the tortious conduct of the defendant toward the plaintiff has continued over time. *See Horvath v. Delida*, 540 N.W.2d 760, 763 (Mich. Ct. App. 1995) (noting application of doctrine in cases involving trespass, nuisance, and civil rights).  In contrast here, Cook's alleged tortious conduct as to Plaintiff Tyson was undeniably over once it sold the filter to Plaintiff's health care provider.  Plaintiff Tyson's argument that Cook's continued promotion of its filters to the medical community as safe and effective somehow constitutes a "continuing wrong" as to Plaintiff Tyson, *id.*, makes no sense and is offered with no citation to supporting authority.

Finally, some Michigan Plaintiffs note (accurately) that *Trentadue* itself recognizes statutory tolling of the limitations period where a defendant has fraudulently concealed "the existence of the claim or the identity of any person who is liable for the claim."   Dkt. 11989 at 5-6 (quoting Mich. Comp. Laws § 600.5855); *see also* Dkt. 12043 at 10-12 (Response of multiple Plaintiffs, including Michigan Plaintiff Diggers); Dkt. 10218 at 3 (Response of Plaintiff McCrear); Dkt. 12020 at 24 (Response of Plaintiff Ball).   But these statutes cannot save Plaintiffs' claims here because, as discussed in Section VIII above, these Plaintiffs have failed to alleged with the particularity required by Rule 9 that Cook concealed from them the existence of their claims or the identity of anyone liable to them.

### D.     Texas

Some Texas Plaintiffs argue that the statute of limitations is tolled by fraudulent concealment and equitable tolling, and Cook again incorporates its arguments above on those issues.

In addition, like the arguments addressed above under Indiana law, several Texas Plaintiffs argue that their cases raise (or might raise) factual disputes because Texas has a discovery rule.   Even assuming for the sake of argument that Texas's statute of limitations applied instead of Indiana's, Plaintiff's argument would fail because (1) the discovery rule in Texas is "very limited," (2) the statute of limitations begins to run when the plaintiff can determine he or she has been injuries, such as by diagnosis of an condition on an x-ray, and (3) in any event, the statue of limitations must accrue not later than any attempt to remove the device, where such attempt has been made.   *See* Cook's Opening Br. at 21-23.

In addition, for the reasons detailed above in the discussion of Indiana law, these Plaintiffs' claims would be time-barred under Texas law as well.   As the *Truitt* court explained, the discovery rules in Indiana and Texas are similar, and the clock begins to run in both states on

the basis of the same objective triggers.  *See In re Mirena IUD Prods. Liab. Litig. (Truitt)*, 29 F. Supp. 3d at 356 (holding that plaintiff's claims would be untimely under both Indiana and Texas law and explaining that the "[P]laintiff's reading of the law . . . sets too high a bar under both Texas and Indiana law, neither of which requires a plaintiff to discover what cause of action she can assert.").

The only Texas Plaintiffs who even attempt to distinguish the Texas case law that Cook cites have all undergone failed retrieval procedures, and none of them dispute the accuracy of the underlying medical records or submits any additional medical evidence.  *See* Dkt. 12034. Instead, these Plaintiffs argue that their claims are not barred by the Texas "device removal" cases Cook cites because those cases involved plaintiffs with complaints of pre-revision pain, while Plaintiffs characterize their own removal procedures as routine.  *See id.* at 8 ("[T]he cases cited by Cook involve *revisions* of defective medical devices after physical anomalies such as fractures, rather than allegedly routine removal procedures of devices with no apparent structural anomalies.") (emphasis in original, omnibus opposition by Johnson Law Group on behalf of four plaintiffs).

These arguments fail for two reasons.  First, **Plaintiffs themselves** characterized their failed retrieval procedures as an injury; indeed, the PSC argued during the creation of the categorization framework that any pain associated with a failed or difficult removal procedure is a compensable injury and any associated medical expenses incurred are recoverable as damages. *See* Pls.' Resp. to Cook Defs.' Mot. for Screening Order and Bellwether Selection Plan, Dkt. 8591 ("Additionally, any Plaintiff that has undergone an unsuccessful removal surgery has doubtlessly suffered an insult to their body in terms of the unproductive medical procedure.  At a minimum, the expense of the failed retrieval procedure is a damage incurred by the Plaintiff.").

If a failed retrieval attempt is an injury, as the PSC and these Plaintiffs claim, then their causes of action logically must accrue at the latest when the attempt to remove the device is made—just as the Texas device removal cases Cook cites have held.  *See Shepherd v. Danek Med.,* 1999 WL 1129705, at *1 (S.D. Tex. Aug. 13, 1999) ("[A]ny arguable application of the 'discovery rule' would terminate upon removal of the System."); *Porter v. Danek Med. Inc.*, 1999 WL 1117090, at *1 (S.D. Tex. Aug. 16, 1999) (same as *Shepherd*); *see also In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, 2016 WL 1493534, at *4 (M.D. Ga. Apr. 14, 2016) (MDL court granting summary judgment in two Texas cases on statute of limitations grounds because "both Plaintiffs knew or should have known that they suffered some injuries related to the ObTape by the time of their revision surgeries, and that is when their claims accrued.").

Second, the tenor of these Plaintiffs' submissions suggests that they are discounting a failed retrieval attempt as a legally cognizable injury and are focused on subtle, potentially latent other injuries.  But that argument fails because the Plaintiffs who make this specific argument[15] have not categorized any subsequent complications and/or injuries – they only claim injuries based on those noted in their failed retrieval records.  As a result, there is no separate complication that would permit the Court to evaluate whether that complication would give rise to a separate and independent timely injury.  Simply put, the injuries these Plaintiffs actually claim from their removal procedures are time-barred as a matter of law, and Plaintiffs cannot defeat summary judgment based on speculation about different, unspecified injuries separate from the injuries they actually assert.

---

[15]  The only exception is Plaintiff Ibarra, to whom Cook responded above in Section VII.D.

### E.      Virginia

Virginia Plaintiffs also argue that their affidavits and declarations create genuine issues of material fact and that the statute of limitations is tolled by fraudulent concealment and equitable tolling, and Cook again incorporates its arguments above on those issues.

In addition, several of the Virginia Plaintiffs argue that Virginia's statute of limitations *does* have a discovery rule, pointing to a 2016 amendment to Virginia Statute 8.01-249.  *See, e.g.,* Dkt. 11979 at 5-6, Dkt. 12019 at 10, Dkt. 12058 at 14-15.  Even assuming for the sake of argument that Virginia's statute of limitations applied instead of Indiana's, however, the amendment adding a discovery provision to Virginia's statute of limitations does not apply to any of these cases.

The amendment to Virginia Code section 8.01-259 took effect on July 1, 2016.  *See* 2016 Va. Acts ch. 353 (showing approval of amendment on Mar. 11, 2016); Va. Code § 1-214 (providing that laws enacted at regular legislative session take effect on July 1 following adjournment).  Under Virginia law, "amendments to statutes of limitations are presumed to be prospective and not retroactive in their operation, in the absence of a clear legislative intent to the contrary."  *Riddett v. Virginia Elec. & Power Co.*, 255 Va. 23, 29, 495 S.E.2d 819, 822 (1998) (citing *Ferguson v, Ferguson*, 192 S.E. 774, 776 (Va. 1937)).  Virginia cases set this line between prospective and retroactive application of a statute of limitations at the date that a cause of action accrues; if the cause of action has already accrued at the time the amended statute goes into effect, the amendment does not apply to that cause of action.  *See Skibinski v. Lunger*, 70 Va. Cir. 423, 426, 2006 Va. Cir. LEXIS 158, *8 (2006) ("Because the cause of action certainly accrued before the amendment to § 8.01-249 went into effect, the amended version of the statute cannot be applied to the present case."); *see also Riddett*, 495 S.E.2d at 819 (holding that the parties' rights under wrongful death statutes of limitations "became fixed at the time the cause of

action accrued and subsequent amendments do not apply retroactively . . . ," regardless of "whether the amendments are to tolling provisions or statutes of limitation") (citations omitted). Here, nothing either in the language of the 2016 amendment (quoted in full by Plaintiffs in their responses) or in the legislative history of the provision suggests any legislative intent for retroactive effect. Thus, under Virginia law, the 2016 amendment adding a discovery rule applies *only* to causes of action that had not already accrued as of the amendment's effective date of July 1, 2016.

Here, every Virginia Plaintiff's claims accrued prior to July 1, 2016. *See* Dkt. 11726-1, Exhibit A, Entries Nos. 117-144. As detailed in Cook's original motion, according to their own submissions, all of the Virginia Plaintiffs suffered the injuries for which they seek damages prior to July 1, 2016, and their causes of action had therefore accrued (at the latest) as of the dates of those claimed injuries. *See Smith v. Danek Med.,* 47 F. Supp. 2d 698, 701 (W.D. Va. 1998) ("Under Virginia law, the limitation period begins to run when the injury, no matter how slight, is sustained and regardless of whether more substantial injuries occur later…"). Because these cases all have pre-July 1, 2016 accrual dates, the 2016 amendment adding a discovery rule does not apply to these cases. *See Skibinski*, 2006 Va. Cir. LEXIS 158, *8. Thus, even assuming for the sake of argument that Virginia's statute of limitations applied instead of Indiana's, the applicable Virginia statute of limitations bars these Plaintiffs' claims.

## X.     Plaintiffs' Non-Tort Claims Also Fail as a Matter of Law

Plaintiffs' responses fail to create a genuine issue of material fact as to any of Plaintiffs' non-tort claims, and Cook is entitled to summary judgment on those claims.

### A.     Plaintiffs' Express Warranty Claims Fails Because, as the Court Has Previously Ruled, the Master Complaint Fails to State Sufficient Allegations to Support This Claim

Plaintiffs' express warranty claims (Count V) fail because neither the Master Complaint nor the short-form complaints allege any express warranties about the performance of Cook's IVC filters.  Several Plaintiffs contest Cook's argument that Plaintiffs have not sufficiently plead claims of express warranty.[16]  *See* Dkt. 12051 at 11-12 (Response of Plaintiff Scott); Dkt. 12049 at 15-17 (Omnibus Response of Plaintiffs Frank, Bennett, and Boone).[17]  These Plaintiffs have not in fact plead a legally adequate claim for breach of express warranty under Michigan or Virginia law.  As Plaintiffs' response accurately notes, an express warranty may be created where "[a] description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."  Dkt. 12054 at 11 (quoting Mich. Comp. Laws § 440.2313(1)(b)); *see also* Dkt. 12049 at 16.  But neither the Master Consolidated Complaint nor Plaintiffs' Short-Form Complaints make any allegation that any description of goods by Cook was part of the "basis of the bargain" for any doctor's purchase of a Cook IVC filter for any Plaintiff's treatment or that any Plaintiff otherwise relied on the express warranty in any way.  *See* Dkt. 213 at 22-23, ¶¶ 93-99; Complaints, *Boone* (1:19-cv-02047); *Frank* (1:15-cv-01070); *Bennett* (1:18-cv-01148).  Indeed, Plaintiffs do not even claim that they actually *read* the Cook Patient's Guide they quote and cite in their collective response.  As this Court has already held, a failure to allege a critical element like reliance is fatal to a claim of express warranty.  *See* Dkt. 4918 (rejecting express warranty claim on ground that Plaintiff "fails to establish the reliance element because she does not claim that she actually read or relied

---

[16] On the contrary, at least three Plaintiffs have abandoned their express warranty claims as part of their Responses.  *See* Response of Plaintiff Steve Land, Dkt. 12086 at 14) ("Plaintiff does not intend to proceed based on a theory of breach of express warranty."); Response of Plaintiff Marcus Simmons, Dkt. 12089 (same); Response of Plaintiff Curtis Shields (Dkt. 12088) (same).

[17] A second response asserts in a heading that the Plaintiffs' failure to adequately plead express warranty is excusable, but those Plaintiffs never offer any analysis or authority in the body of their response to support their assertion.  *See* Dkt. 12054 at 19 (Response of Tyson Plaintiffs Tyson).

on the Patient Guide's language").   Their express warranty claims therefore fail as a matter of law.  *See Monte v. Toyota Motor Corp.*, No. 220671, 2001 WL 1152901, at *3 (Mich. Ct. App. Sept. 28, 2001) (holding plaintiff's failure to read claimed warranty before leasing vehicle was fatal to breach of express warranty claim).

### B.      Plaintiffs' Implied Warranty Claims Fail as a Matter of Law Under Both Indiana Law and Plaintiffs' Home State Laws.

Plaintiffs' implied warranty claims fail because Indiana choice-of-law rules and the Indiana statute of limitations control here, as detailed in Cook's opening brief and Cook's specific reply to the PSC brief on the choice-of-law issue.  As Cook's original memorandum points out, Indiana law subsumes implied warranty claims as part of the statutory product liability claim, and the general two-year statute of limitations applies no matter how the implied warranty claim is characterized.

Several Plaintiffs nonetheless argue that their implied warranty claims are properly plead and timely under the law of their home states.  *See* Dkts. 11965, 12010, 12020, 12028, 12051, 12054, 12086, and 12089.  These Plaintiffs' arguments can be summarized in two ways:  1) the implied warranty claim has a discovery rule and 2) there are evidentiary issues with Cook's argument that that the statute of limitations was contractually shortened to one year.

With respect to the first argument, Cook has explained in its opening brief that Idaho and Virginia both merge warranty claims with product liability claims, just as Indiana has done. With respect to Michigan and Texas, the presumptive four-year statute of limitations for the breach-of-warranty claims is four years from the date of sale or delivery (neither of which can be later than the placement date) and courts in both states have held that there are no discovery-rule limitations.  *See McCoy v. Lamotte Coachlight Corp.*, 2007 WL 4270659, at *3 (Mich. Ct. App. Dec. 6, 2007) (holding that "the discovery rule does not apply to this cause of action governed by

the UCC Sales, and a breach of warranty occurs when tender of delivery is made."); *B. Maher Interests L.P. v. DMAC Constr., Inc.*, 503 S.W.3d 43, 50 (Tex. Ct. App. – 14th Div. 2016) ("The discovery rule does not apply to breach of warranty claims under Texas UCC, subject to one exception [for express warranties of future performance] that is not germane to this case."). Finally, under Alabama law, the discovery rule only applies to fraud claims, *see DGB, LLC v Hinds*, 55 So.2d 218, 225 (Ala. 2010), and Cook has explained above why the Plaintiffs' fraudulent concealment arguments fail.  Simply put, the statute of limitations on these Plaintiffs' warranty claims started running no later than the date of placement.

With respect to the second argument, some of the Plaintiffs take issue with Cook's argument based on the contractual reduction of the statute of limitations on warranty claims and Cook's reliance on the Brines Affidavit, claiming that Mr. Brines has not been deposed and that they have not had adequate opportunity to conduct discovery with respect to that issue.  The problem with this argument is that it would make no difference in the result.  Even if the Court were to disregard the Brines Affidavit entirely, every Plaintiff who has raised any issue specific to implied warranty received his or her filter well outside the presumptive four-year statute of limitations that would govern.  Specifically, the placement and filing dates for Plaintiffs' raising implied warranty issues are listed in the table below (all information extrapolated from Exhibit A to the opening brief, Dkt. 11726-1):

| No. | Plaintiff | Case No. | State | Placement Date | Filing Date |
|-----|-----------|----------|-------|----------------|-------------|
| 7 | Land, Steven | 1:17-cv-02349 | Alabama | 04/01/2010 | 7/11/2017 |
| 21 | Ball, Janice | 1:17-cv-01320 | Michigan | 09/05/2012 | 4/26/2017 |
| 28 | Devine, Kelly | 1:19-cv-00811 | Michigan | 10/22/2007 | 2/25/2019 |
| 49 | Nitz, Debra Ellen | 1:18-cv-02717 | Michigan | 01/24/2008 | 8/31/2018 |
| 52 | Scott, Loretta | 1:19-cv-01586 | Michigan | 01/18/2008 | 4/19/29019 |
| 57 | Tyson, Derek and Clara Johnson | 1:19-cv-01979 | Michigan | 04/21/2007 | 5/17/2019 |
| 60 | Abbott, Donald | 1:19-cv-00436 | Texas | 10/09/2006 | 1/28/2019 |
| 108 | Simmons, Marcus | 1:18-cv-00212 | Texas | 03/14/2005 | 1/25/2018 |

| 140 | Shields, Curtis | 1:18-cv-01379 | Virginia | 09/18/2013 | 5/4/2018 |

As this table shows, Plaintiff Ball filed her claim about 4 years and 7 months after her filter placement, and all the other Plaintiffs that challenge Cook's argument on the implied-warranty claims filed their cases five or more years after the placement of their filters.  Thus, regardless of what state's law applies, these Plaintiffs' implied warranty claims are time-barred.

**C.    Plaintiffs Failed to Plead Their Consumer Fraud Claims with the Particularity Required by Rule 9.**

Cook is entitled to dismissal of Plaintiffs' claims of consumer fraud based on Plaintiffs' failure to plead those claims with particularity as required by Federal Rule of Civil Procedure 9(b).   As previously noted, "when fraud is alleged, it must be done with particularity and plead the who, what, when, where, and how of the alleged fraud." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992).

Virtually all the Plaintiffs responded on this issue simply by baldly asserting that the current Master Complaint adequately pleads fraud and parroting various general statements from the Master Complaint alleging that Cook had certain knowledge and failed to disclose it.   *See, e.g.* Dkt. 12020 at 28-29.   But nothing in the Master Complaint provides the required "who, what, when, where, and how" this supposed fraud occurred.   These are simply vague, general allegations of the type suitable for Rule 8 notice pleading of common law torts; indeed, some Plaintiffs all but admit that these allegations claim nothing more than a failure to warn.   *See, e.g.,* Dkt. 12089 at 16 ("Plaintiff's Master Complaint in this case contains numerous allegations that the Cook Defendants had knowledge of the defects with its IVC Filters yet failed to warn doctors and patients.").

Rule 9's requirement that fraud be plead with particularity serves several purposes:

"(1) to inform the defendants of the claims against them and to enable them to form an adequate defense; (2) to eliminate the filing of a conclusory complaint as a pretext for using discovery to uncover wrongs; and (3) to protect defendants from unfounded charges of fraud which may injure their reputations." *A.I. Credit Corp. v. Hartford Computer Grp., Inc.*, 847 F. Supp. 588, 597 (N.D. Ill. 1994). Plaintiffs' vague, conclusory allegations of wrongdoing fulfill none of these purposes. The Court should not permit Plaintiffs to heap calumny on Cook through nebulous allegations that Cook has defrauded both the medical community and the patients who ultimately use its products. Plaintiffs had every opportunity in both their Master Complaint and in their Short Form Complaints to allege that some specific Cook employee knowingly made some specific misrepresentation to some specific doctor or patient at some specific time and place. They did not and could not do so, and their consumer fraud claims fail under Rule 9(b).

### D. Plaintiffs' Derivative Claim for Loss of Consortium and Punitive Damages Fail Because They Cannot Stand on Their Own.

No Plaintiff disputes Cook's argument that loss of consortium of punitive damages are derivative claims that fail if the substantive claims from which they derive fail. The disagreement lies with respect to Plaintiffs' arguments that some of their other claims survive summary judgment and thus would save their derivative claims for loss of consortium, where applicable, and for punitive damages. Because Cook is entitled to summary judgment on the Plaintiffs' primary claims for the reasons discussed above, Cook is likewise entitled to summary judgment on these derivative claims because there is no viable claim to serve as an anchor for these derivative claims.

## CONCLUSION

For the foregoing reasons and the reasons detailed in Cook's original memorandum and its reply to the PSC's response, the Cook Defendants are entitled to summary judgment on the

US.124990717

- 42 -

claims brought by these Plaintiffs, regardless of whether the timeliness of their personal injury claims is governed by Indiana law or the law of their home states.

Respectfully Submitted,

Dated:  October 17, 2019

/s/ *Andrea Roberts Pierson*
Andrea Roberts Pierson, Co-Lead Counsel
Jessica Benson Cox
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2500
Indianapolis, Indiana 46204
Telephone:     (317) 237-0300
Andrea.Pierson@FaegreBD.com
Jessica.Cox@FaegreBD.com

James Stephen Bennett, Co-Lead Counsel
FAEGRE BAKER DANIELS LLP
110 West Berry Street, Suite 2400
Fort Wayne, Indiana 46802
Telephone:     (260) 424-8000
Stephen.Bennett@FaegreBD.com

*Attorneys for the Defendants Cook Incorporated, Cook Medical LLC, and William Cook Europe ApS*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 17, 2019, a copy of the foregoing **COOK DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR RENEWED OMNIBUS MOTION FOR SUMMARY JUDGMENT BASED ON APPLICABLE STATUTE OF LIMITATIONS** was filed electronically and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.

*/s/ Andrea Roberts Pierson*