IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |
| This Document Relates to:<br>Deborah Wittig | Case No. 1:18-cv-1081 |

**PLAINTIFF'S OPPOSITION TO THE COOK DEFENDANTS' RENEWED OMNIBUS MOTION FORSUMMARY JUDGMENT ON LIMITATIONS**

COMES NOW, Plaintiff Deborah Wittig in the above styled cause ("Plaintiff") and submits the following response and memorandum of law in opposition to the Cook Defendants'[1] Renewed Omnibus Motion for Summary Judgment and respectfully shows the Court the following:

**INTRODUCTION AND SUMMARY OF ARGUMENT**

This is an action against Cook for injuries that have resulted from its defective product known as an IVC filter. The IVC Filter that Cook manufactured and sold to Plaintiff is a medically implantable device that is placed inside of the patient's vein to prevent blood clots from moving through their blood and into their lungs. However, as illustrated through the various pleadings and other documents filed in this case, Cook's IVC Filter is defective and has caused numerous plaintiffs and others to suffer serious medically complicated injuries. Cook filed its Renewed Omnibus Motion for Summary Judgment seeking judgment as a matter of law on Plaintiff's claim, arguing that Indiana law, including the Indiana statute of limitations should apply. Plaintiff's claim

---

[1] As used in this Response, "Cook" and "Cook Defendants" refer to Defendants Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS.

is based on the implantation, attempted removal, and eventual open surgery to remove her filter in Arizona. All of the events underlying Plaintiff's petition took place in Arizona. Plaintiff filed her claim directly into the MDL in Indiana, but that does not mean Indiana law applies to her case.

Cook's simplistic statement that Indiana choice of law rules and Indiana law apply merely because Plaintiff filed her claims directly in this MDL court ignores Seventh Circuit precedent and is legally incorrect.  In the Seventh Circuit, it is black letter law that for choice of law analysis, "[F]oreign cases filed directly in a district court as part of an ongoing multidistrict litigation are treated as having originated <u>outside</u> of that district." *Dobbs v. DePuy Orthopedics, Inc.,* 842 F.3d 1045, 1048 (7th Cir. 2016) (emphasis added), citing with approval *In re Watson Fentanyl Patch Prods. Liab. Litig.,* 977 F.Supp.2d 885, 888-89 (N.D. Ill. 2013) (in direct filed product liability case, MDL court applied the law of the state where the Plaintiff purchased and used the prescribed product, <u>not</u> the MDL forum); *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices and Prods. Liab. Litig.,* 2011 WL 1375011, at *5 (S.D. Ill. April 12, 2011) (similarly applying the law of the state where Plaintiff purchased and used the product rather than the MDL forum in foreign direct filed cases). Tellingly, Cook's Motion for Summary Judgment ignores the Seventh Circuit's holding in *Dobbs*.[2]  The Court should reject Cook's erroneous choice of law argument, refuse to apply Indiana law to foreign direct filed cases, and deny Cook's Motion for Summary Judgment.

## STATEMENT OF FACTS

Ultimately, the factual dispute that is central to Cook's motion is the date upon which Plaintiff's claims accrued, thereby triggering the applicable statute of limitations for those claims. As argued herein, the issue should be determined after discovery, at which time the facts necessary

---

[2] Cook's Motion for Summary Judgment does cite the *Watson Fentanyl* and *Yasmin* cases.  But those MDL court rulings actually support Plaintiffs' position and reject Cook's argument.  The Court should rule likewise.  For further discussion, please see *infra* at page 7.

00585964-1                                         2

to establish the correct statute of limitations will be known to both parties. This brief focuses primarily on legal issues and we will only provide a short recitation of the relevant facts for Plaintiff's claim. There has been no case specific discovery in this matter, and so our facts are generally limited to the pleadings and form discovery conducted by each Plaintiff as a part of the MDL process.

Plaintiff was implanted with a Cook Celect Vena Cava Filter in Tucson, Arizona. Plaintiff subsequently underwent attempted, unsuccessful removal of the IVC filter and eventual exploratory laparotomy with open removal of the filter in Tucson, Arizona. Cook has not taken the deposition of Plaintiff, Plaintiff's implanting or treating physician, or any other party specific to Plaintiff's case in this matter.

## ARGUMENT

### I.   Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant also "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, (1986). "A district court should grant summary judgment only if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Miller v. A.H. Robbins Co.,* 766 F.2d 1102, 1104 (7th Cir. 1985). When considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Zillak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003).

> **II.    For Choice of Law Analysis, Seventh Circuit Precedent Holds that Foreign Cases Filed Directly in an MDL Court Are Treated as Having Originated <u>Outside</u> of the MDL District.  Therefore, Neither Indiana Choice of Law Rules Nor Indiana Law Apply to these Plaintiffs.**

In *Dobbs v. DePuy Orthopedics, Inc.,* 842 F.3d 1045 (7th Cir. 2016), an Illinois plaintiff direct filed his case in the Northern District of Ohio MDL.  The case was later transferred from the Ohio MDL to the Northern District of Illinois.  The Seventh Circuit held that the case originated in Illinois and that Illinois choice of law rules applied.  *Id.* at 1048.

> Dobbs's claim . . . was filed in the Northern District of Ohio only because the DePuy multidistrict litigation was already in progress there.  Dobbs's complaint stated that the Northern District of Illinois was the appropriate venue absent the multidistrict litigation.  That advises treating the Northern District of Illinois as the original venue.
>
> In fact, district courts in our circuit have taken that approach:  <u>foreign cases filed directly in a district court as part of ongoing multidistrict litigation are treated as having originated outside of that district.</u>  *E.g. In re Watson Fentanyl Patch Prods. Liab. Litig.*, 977 F.Supp. 2d 885, 888-89 (N.D. Ill. 2013); *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 3:09-MD-02100-DRH, 2011 WL 1375011, at *5 (S.D. Ill. Apr. 12, 2011).  <u>We ratify that approach here and apply Illinois's choice-of-law rules</u>.

*Dobbs,* 842 F.3d at 1048 (emphasis added).

The *Watson Fentanyl* decision – cited with approval by the Seventh Circuit in *Dobbs* – involved a case filed directly in the MDL court in the Northern District of Illinois.  *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 977 F.Supp. 2d at 886.  The case concerned an Ohio resident, who died in Ohio after using a fentanyl patch that was prescribed, purchased, and applied in Ohio.  The Northern District of Illinois MDL court applied Ohio law and rejected attempts to apply Illinois law, or even Illinois' choice of law rules.

> "[T]he prevailing rule in this situation is that in a case that was directly filed in the MDL transferee court but that originated elsewhere, the law (including choice of law rules) that applies is the law of the state where the case originated.  *See e.g. In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Prods. Liab. Litig.*, MDL No. 2100, No. 3:09-md-02100-DRH-PMF, 2011 WL 1375011, at *5

>(S.D. Ill. April 12, 2011); *In re Bausch & Lomb Inc. Contacts Lens Solution Prods. Liab. Litig*. MDL No. 1785, 2007 WL 3046682, at *3 (D.S.C. Oct. 11, 2007) (noting that 'it would be an odd result to subject plaintiffs to [the law of the MDL forum] simply because they took advantage of the direct filing procedure – a procedure that provides benefits to all parties and preserves judicial resources'). The Court agrees with the cases just cited and concludes that the choice of law rules that apply are those of the state where the case originated.

*In re Watson Fentanyl Patch Prods. Liab. Litig.*, 977 F.Supp. 2d at 888.

The *Watson Fentanyl* MDL court then went on to analyze the meaning of the term "originated." The conclusion: "<u>a direct-filed case in an MDL proceeding is considered to have originated in the state where the plaintiff purchased and used the prescribed product</u>. That is how the place of filing is determined in [the] overwhelming majority of product liability cases, and it is a reasonable approach to determining the choice of law issue that has been presented. *Id.* at 889 (emphasis added). Because the Plaintiff prescribed and used the fentanyl patch at his Ohio residence, the Illinois MDL court ruled that Ohio law should apply to this foreign direct filed case.[3]

*In re Yasmin* – cited with approval by both the *Dobbs* and *Watson Fentanyl* courts – involved numerous cases that originated outside of that court's judicial district and that were filed directly in the Southern District of Illinois MDL. Similar to Cook's faulty reasoning, the *Yasmin* plaintiffs argued that because the court was sitting in diversity in Illinois, Illinois was the proper forum and Illinois choice of law principals should control. *Id.* Judge Herndon rejected that argument and emphasized in bold type: **"Illinois choice of law principals do not control simply because this MDL Court is sitting in diversity in Illinois."** *Id.* (emphasis in original). The MDL court reasoned that "direct filing orders are beneficial to both parties because they streamline

---

[3] Similar to the approach taken by the Seventh Circuit, the *Watson Fentanyl* MDL court also noted that it could have applied California choice of law rules, because Plaintiffs' complaint suggested that they would have filed their lawsuit in California. But even applying California choice of law rules, the Illinois MDL court concluded that Ohio law should apply and <u>not</u> the law of the MDL forum. *Id.* at 889-90.

the litigation and help eliminate the judicial inefficiency involved in the MDL transfer process."

*Id.* Judge Herndon further wrote:

> "The Court concludes that the better approach is to treat foreign direct filed cases as if they were transferred from a judicial district sitting in the state where the case originated. For purposes of this analysis, the Court considers the originating state to be the state where the plaintiff purchased and was prescribed the subject drug. Thus, for a foreign direct filed member action involving a plaintiff that purchased and was prescribed the subject drug in Tennessee, the Court will treat that plaintiff's claims as if they were transferred to this MDL from a district court in Tennessee."

*Id.,* at *6. *See also In re Fresenius Granuflo/Naturalyte Dialysate Products Liability Litigation,* 76 .F.Supp. 3d 294, 303 (D. Mass. 2015) ("The home forum designation of the direct filing plaintiffs is the best evidence I have of what these plaintiffs would have done absent direct filing. Just as Mississippi plaintiffs would have had a choice between at least two proper forums in the absence of direct filing, so too do they have such an option with the direct filing procedure. I will therefore consider the forum that the direct filing plaintiffs designated on their short form complaints as the originating forum for the choice of law analysis."); *Wahl v. General Electric Co.,* 983 F.Supp. 2d 937, 943 (M.D. Tenn. 2013) ("Most of the courts that have considered this peculiar procedural posture have stated that it is appropriate to apply choice of law rules of the 'originating' jurisdiction [i.e. where the case would have been brought but for the CMO permitting direct filing], rather than the choice of law rules of the MDL Court. These courts have generally reasoned that the direct filing procedure is simply designed to promote judicial economy and conserve the parties' resources, not to alter the choice of law rules."); *In re Avandia Marketing, Sales Practices and Prods Liability Litig.,* 2012 WL 3205620, at *2 (E.D. Pa. August 7, 2012) ("The Court has concluded, as have other MDL courts, that such [direct filed] cases should be governed by the law of the states where Plaintiffs received treatment and prescriptions for Avandia.

This ruling will promote uniform treatment between those Plaintiffs whose cases were transferred into the MDL from their home states and those who filed directly into the MDL.").

Thus, the Court has two different approaches for examining the choice of law issue for direct filed cases in this MDL: (1) focus on the court designated by the plaintiff in the Short Form Complaint as the place of proper venue as discussed in the *Dobbs, In re Fresenius Granuflo/Naturalyte, Dialysate Product Liability Litigation,* and *Wahl* cases; or (2) focus on the place where the plaintiff received the IVC filter prescription and treatment as held in the *In re Watson Fentanyl, In re Yasmin*, and *In re Avandia* cases. Importantly, under both approaches, neither Indiana choice of law rules nor Indiana law apply to these cases. It is undisputed that the foreign direct filed Plaintiffs' Short Form Complaints unambiguously listed venue choices at locations outside of Indiana. Moreover, all 144 of the Plaintiffs subjected to this Motion purchased and were prescribed their IVC filters outside of Indiana.[4] Therefore, the Court should reject Cook's attempt to apply Indiana law and deny Cook's Motion for Summary Judgment on Limitations.

### III. Cook's Motion for Summary Judgment Ignores Seventh Circuit Case Law and Distorts the Meaning of the Term "Originated."

Tellingly, Cook omits from its brief any discussion of the Seventh Circuit's *Dobbs* case. No doubt this is because the Seventh Circuit's black letter holding completely contradicts Cook's argument. In fact, most of the cases cited by Cook stand for the extremely general proposition that federal courts sitting in diversity apply forum choice of law rules to determine substantive law. *See* Cook's Motion for Summary Judgment at 9-10. These cases, however, are irrelevant because

---

[4] No doubt, in most cases, the venue designated by a particular Plaintiff in the Short Form Complaint will be the same place where the Plaintiff received his or her IVC filter and treatment.

they do not pertain to foreign direct filed cases in an MDL – or have anything to do with an MDL for that matter.

Interestingly, Cook does cite the *In re Watson Fentanyl* and *In re Yasmin* cases. *See* Cook Motion for Summary Judgment at 10. Cook even cites *In re Watson Fentanyl* for the proposition that "the prevailing rule in this situation is that in a case that was directly filed in the MDL transferee court but that originated elsewhere, the law (including the choice of law rules) that applies is the law of the state where the case originated." *In re Watson Fentanyl Patch Prods. Liab. Litig.,* 977 F.Supp. 2d at 888 (citing *In re Yasmin & Yaz (Drospirenone) Mktg. Sales Practices & Prod. Liab. Litig.*, 2011 WL 1375011, at *5; Cook Motion for Summary Judgment at 10. Thus, Cook's Motion for Summary Judgment completely supports Plaintiffs' position that Indiana law and Indiana choice of law rules do not apply to these 144 foreign direct filed cases.

In a desperate effort to make an end-run around this well-established body of law, Cook engages in a game of legal gymnastics to twist the meaning of the term "originate." First, Cook ignores the fact that the *Watson Fentanyl* and *Yasmin* MDL courts both ruled that the law of the MDL forum does not apply to foreign direct filed cases. Second, Cook conveniently omits any discussion as to how these MDL courts came to their respective conclusions that the place where the Plaintiff was prescribed and treated determines the applicable law.

Instead, Cook distorts the Court's *Lexecon* order regarding *jurisdiction* over cases directly filed in this Court. But *jurisdiction* is not the same as *choice of law*. As Cook knows, the Court did not address any choice of law issues in its *Lexecon* ruling. Moreover, the Court has never been presented with the choice of law issue for cases directly filed in the MDL, and the parties have never fully briefed the issue for the Court until now. Therefore, Cook's argument concerning the

meaning of the term "originated" is both factually and legally incorrect. The Court should reject Cook's attempt to apply Indiana law and deny Cook's Motion for Summary Judgment.

### IV. Cook has Failed to Meet its Burden on Summary Judgment because it cannot Provide any Admissible Evidence to Show the Absence of a Genuine Issue of Material Fact

The first question the Court should consider is whether Cook has met its initial burden on Summary Judgment. The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323-24 (quotations omitted). Only if that initial burden is met by the moving party does the burden shift "to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding 'the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1537 (10th Cir. 1995) (quoting *Celotex*, 477 U.S. at 322). The moving party must cite admissible evidence to support its fact positions. See *id.*; *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016) (summary judgment evidence must be admissible at trial).

As noted above, Cook's motion seeks judgment as a matter of law on claims asserted by hundreds of plaintiffs from various states, and purports to ground its argument on the applicable statutes of limitation. However, Cook fails to provide a factual basis for its arguments. That is, Cook provides no admissible evidence to support its position as to the timing of the relevant events. In fact, Cook explicitly agreed that the information it has used to support its claims would not be admissible at trial. (Filing No. 8913, at ECF p. 55986; Filing No. 938-1, at ECF p. 64997-64998.) When Cook requested an order requiring the Case Categorization Forms, it told the Court that the "goal" was "to properly categorize cases and draw bellwether cases from those categories." (Filing

00585964-1                                    9

No. 8913, at ECF p. 55986.) Further, the Forms themselves specifically state that they are "not admissible and [are] not to be considered relevant for any other purpose." (Filing No. 938-1, at ECF p. 64997-64998.) Despite the fact that the Court has already decided that the only evidence Cook has to support its summary judgment is inadmissible and irrelevant, Cook still attempts to conclusively state that the medical records establish that the date each plaintiff filed suit was beyond the limiting period governing their claims. (Cook's Memo in Support of Omnibus Motion for Summary Judgment, at p. 3). However, under Rule 56, merely pointing to the inadmissible forms produced by Plaintiff is insufficient to establish that Cook is entitled to judgment as a matter of law on dozens of claims. Cook's failure to meet its initial burden on summary judgment is sufficient basis for this Court to deny its motion for summary judgment as to Plaintiff—and as to every other case.

**V.    Contrary to Cook's assertions, Arizona law includes applicable discovery provisions, so fact questions remain as to the date of accrual, and this Court should allow discovery on that issue.**

Even if the Court were to conclude that Cook's motion met its burden, this Court should deny summary judgment because Arizona law differs from Indiana law and there are fact issues to be decided once discovery has taken place.

**a. Under Arizona law, Plaintiff's claim does not accrue until her discovery of the claim**

Under Arizona law, a suit for personal injury and product liability must be brought "within two years after the cause of action accrues." Arizona Revised Statutes § 15-542. In Arizona, "a cause of action "accrues" when the plaintiff discovers or by the exercise of reasonable diligence should have discovered that he or she has been injured by a particular defendant's negligent conduct. The cause of action does not accrue until the plaintiff knows or should have known of

both the what and who elements of causation." *Lawhon v. LBJ Institutional Supply*, 765 P.2d 1003, 1007 (Ariz. App. 1988).

Arizona's discovery rule is fact specific. Under Arizona law, a Plaintiff's claim also does not accrue until the plaintiff knows of the defendant's negligent conduct. In addition to knowing she has been harmed, the discovery rule in Arizona mandates that the cause of action does not accrue until the Plaintiff knows of the specific conduct by the specific defendant underlying the cause of action. "[A] cause of action . . . accrues when the plaintiff knew or by the reasonable exercise of reasonable diligence should have known of the defendants' conduct and therefore the statute of limitations does not begin to run until that time." *Mayer v. Good Samaritan Hosp.*, 482 P.2d 497, 501 (Ariz. 1971). "Pursuant to the discovery rule, a cause of action does not 'accrue' until a plaintiff discovers or by the exercise of reasonable diligence should have discovered that he or she has been injured by the defendants negligent conduct." *Anson v. American Motors Corp.*, 747 P.2d 581, 584 (Ariz. App. 1987).

In addition to knowing she has been injured, and knowing of the Defendant's negligent conduct, the cause of action in Arizona only accrues when a plaintiff knows the identity of the correct defendant and the causal relationship to the injury. In *Lawhon v. LBJ*, the Arizona Court of Appeals ruled that a plaintiff's wrongful death claim could not be barred as a matter of law until the parties established when the Plaintiff knew the identity of the manufacturer and distributor of a product allegedly responsible for the decedent's death. The court ruled that the cause of action does not necessarily accrue as soon as a Plaintiff becomes aware that she has been harmed, but only after she becomes aware of the identity of the party that has harmed her. *Lawhon*, 765 P.2d at 1007 ("A plaintiff does not have enough information to sue until he knows that he has been

injured, he knows the identity of the maker of the product, and he knows that the product had a causal relation to his injury.").

Thus, in Arizona the discovery rule is very fact specific. Cook cannot simply claim that Plaintiff's cause of action accrued when the filter was removed, and ignore all of the other factors relevant to accrual in Arizona.

### i. A genuine issue of material fact exists as to when Plaintiff knew or should have known of the wrongful act and resulting injury

The Arizona discovery rule operates to toll the limitations period until the plaintiff has knowledge that her physical symptoms are associated with using the defendant's product at issue in this case. In the context of Plaintiff's implanted medical device, the cause of action does not accrue, and the statute of limitations does not begin to run, until Plaintiff knows that Cook defendants specifically were negligent and that the Cook defendants' negligence caused her injuries. Mere knowledge of her injuries or the fact of an open surgery to remove the filter does not establish that Plaintiff knew the identity of the defendants, the negligent conduct of the defendants, or the causal relationship between that conduct and her surgery.

In the immediate case, discovery is needed to determine the point at which Plaintiff discovered that her injuries were caused by the Cook defendants. Discovery will help reveal when she made that discovery, how she made that discovery, and whether she should have made it sooner. Discovery will also help to reveal whether Cook withheld material information from physicians, the general public, and/or its own sales force, thereby causing any delay in Plaintiff's ability to discover Cook's role in his injuries and file this lawsuit. A noted throughout, Cook offers no facts to buttress its arguments, other than pointing to a limited number of medical records, and has attached no evidence. Cook has not taken a single case-specific deposition, served a single

interrogatory on Plaintiff, or even reviewed all of Plaintiff's medical records. This Court should deny the Motion for Summary Judgment and allow discovery to proceed in this case.

## VI. Other Non-Tort Claims

### a. Express Warranty Claim

Plaintiff does not intend to proceed based on a theory of breach of express warranty.

### b. Implied Warranty Claim

Just as the Court should deny Cook's motion for summary judgment as to the Plaintiff's personal injury claims, it should also deny the motion as to the Plaintiff's implied warranty claim. Cook first argues that under Indiana law, which does not apply in this case, the implied warranty claims of all plaintiffs merge into the product liability claims and are therefor also time-barred by the Indiana statute of limitations. But as explained above, Indiana law does not apply here, so clearly that argument fails.

### c. Consumer Fraud Claims

Plaintiff's Master Complaint in this case contains numerous allegations that Cook had knowledge of the defects with its IVC Filters yet failed to warn doctors and patients. *See* Master Complaint at ¶¶ 3, 4, 46, 50, 52, 55, 56, 57, 58, 77, 81-88, 91, 95, 103-106, 113-120 (continued in Plaintiff's SFC at ¶ 14). Moreover, the tolling provisions included in the Master Complaint at ¶¶ 195-200 support Plaintiff's claims that Cook's withholding of pertinent information prevented Plaintiff from discovering the cause of her injuries. These provisions satisfy the applicable pleading requirements.

Alternatively, if the Court concludes otherwise, it should not dismiss the fraud claims of all 144 Plaintiffs based on an alleged pleading deficiency for which the individual Plaintiffs were

not responsible. This Court should permit amendment in the event that the Court deems the current pleading to be insufficient.

### d. Plaintiff's Request for Punitive Damages Survives Because it is Not a Stand Alone Claim but Rather Derivative of the Claims Supported in this Response

To the extent the Court denies Cook's motion with respect to the arguments made above, it should also deny Cook's argument seeking judgment as a matter of law on Plaintiff's derivative request for punitive damages. Cook fails to identify any basis for disposing of the derivative requests for punitive damages other than its bald assertion that, because Plaintiff's substantive claims fail (which they do not), they cannot be maintained as standalone claims. While it is true loss of consortium and punitive damages requests are not standalone claims, Plaintiff has demonstrated there are genuine issues of material facts with respect to their personal injury tort claims. Therefore, the Court should deny Cook's argument that Plaintiff's request for punitive damages also fails as a matter of law.

### CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that the Court deny Cook's Motion for Summary Judgment. In addition, Plaintiff requests all other and further relief as the Court deems just and proper.

Date:  October 25, 2019         */s/ Kirk J. Goza*
Kirk J. Goza, Esq.
Goza & Honnold LLC
9500 Nall Ave. Ste. 400
Overland Park, KS 66207
Telephone: (913) 451-3433
Facsimile: (913) 839-0567
Email: kgoza@gohonlaw.com
**Attorney for Plaintiff**

## CERTIFICATE OF SERVICE

  I hereby certify that on the 25th day of October, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

            */s/ Kirk J. Goza*
            Kirk J. Goza