**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| IN RE: COOK MEDICAL, INC, IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY- TAB MDL No. 2570 |

This Document Relates to:

    1:18-cv-03274-RLY-TAB
    Roy G. Mosier

**PLAINTIFF'S OPPOSITION TO COOK DEFENDANTS'
OMNIBUS MOTION FOR SUMMARY JUDGMENT
IN  46 MISCATEGORIZED NO INJURY CASES**

This case arises from the Cook Defendants' ("Cook") defective design and sale of inferior vena cava ("IVC") filters.  Plaintiff Roy G. Mosier ("Plaintiff" or "Mosier") was implanted with a defective Cook Celect Vena Cava Filter in July 2014. Plaintiff Mosier opposes Cook's Omnibus Motion for Summary Judgment in 46 Miscategorized No Injury Cases (Dkt. 11924) because Cook failed to carry its burden for summary adjudication of Plaintiff's claims. Cook's motion is void of admissible evidence and has not demonstrated an absence of disputed material facts.

Cook's motion is based on nothing more than its non-expert lawyer's highly selective, two-sentence characterization of medical records Plaintiff Mosier provided in support of his Case Categorization Submission form.  However, Cook's lawyer

1

neglected to describe portions of Plaintiff Mosier's medical records showing the filter removal, and attribution of physical harm (e.g. chest pain and shortness of breath) to the filter.  To make matters worse, Cook did not bother to even attempt to prove up its non-expert lawyer's medical opinions by attaching the actual records themselves. Simply put, a lawyer's non-expert, brief, and incomplete characterization of Plaintiff Mosier's records is insufficient to demonstrate a lack of a genuine issue of material fact concerning whether Plaintiff Mosier suffered complications due to his IVC filter. Even if this characterization were sufficient to shift the burden on summary judgment to Plaintiff Mosier, Plaintiff Mosier's medical records and verified Plaintiff Profile Sheet present genuine issues of material fact as to Cook's contention that Plaintiff Mosier's filter caused no injuries.

Accordingly, Plaintiff Mosier respectfully requests that the Court deny Cook's motion for summary judgment.

## STATEMENT OF UNDISPUTED AND DISPUTED MATERIAL FACTS

On October 2, 2018, the Court entered its Order on Cook's Motion for Screening Order and Bellwether Selection Plan ("Case Categorization and Screening Order," Dkt. 9322).  The Court established seven categories of cases, only two of which are relevant to this motion:

- Category 1 – Successful First Removal Without Complication or Physical Injury Cases: Cases where the Plaintiffs' profile sheet and further follow-up shows that the Gunther Tulip or Celect IVC filter was successfully

removed on the first, routine, percutaneous retrieval attempt and no physical symptom or filter complication was alleged during the time the filter was in place or in connection with the retrieval process.

- <u>Category 7 – Symptomatic Injury Cases</u>: Cases where the Plaintiff alleges medical symptoms, conditions or complications caused by one or more of the following conditions: (a) IVC thrombotic occlusion – consisting of an occluding thrombus in the IVC after filter insertion (documented by imaging or autopsy); (b) filter embolization – consisting of post-deployment movement of the filter to a distant anatomic site; (c) filter fracture – consisting of any loss of a filter's structural integrity documented by imaging or autopsy; (d) filter migration – consisting of a change in filter position of more than 2 cm (when compared with its deployed position) and as documented by imaging; (e) penetration or perforation – consisting of a filter strut or anchor extending 3 or more mm outside the wall of the IVC as demonstrated on imaging; (f) recurrent pulmonary embolism (PE) – consisting of PE that occurs after filter placement and is documented by pulmonary arteriography, cross sectional imaging, lung scan, or autopsy; (g) DVT or other blood clot caused by the filter; (h) infection; (i) bleed and (j) death.

Case Categorization and Screening Order at 1–3.

The Case Categorization and Screening Order provides that cases in Category 1 are "subject to immediate dismissal," and "[c]ases in Categories, 2, 3, 4, and 7 remain for motion practice or trial."  Case Categorization and Screening Order at 3.

On October 23, 2018, Plaintiff Mosier filed a Short Form Complaint (Dkt. 1) alleging the following claims: Count I: Strict Products Liability – Failure to Warn; Count II: Strict Products Liability – Design Defect; Count III: Negligence; Count IV: Negligence Per Se; Count V: Breach of Express Warranty; Count VI: Breach of Implied Warranty; Count VII: Violations of Missouri Law Prohibiting Consumer Fraud and Unfair and Deceptive Trade Practices; and Count XI: Punitive Damages.

In his Short Form Complaint, Plaintiff Mosier identified Missouri as his state of residence at the time of implant, at the time of injury, and of current residence. Plaintiff also identified the Western District of Missouri, Springfield as the District Court and Division in which venue would have been proper absent direct filing in the MDL, and incorporated paragraphs 6 through 28 of the Master Consolidated Complaint for Individual Claims ("Master Complaint"). Those paragraphs state in relevant part, as follows:

> 27. For purposes of remand and trial, venue is proper pursuant to 28 U.S.C. § 1391 in the federal judicial district of each Plaintiff's state of residence.
>
> 28. A substantial amount of activity giving rise to the claims occurred in this District and Defendants may be found within this District. Therefore, venue is proper in this jurisdiction under 28 U.S.C. § 1391.

Dkt. 213, Master Complaint at ¶¶ 27, 28.

On or about December 3, 2018, Plaintiff submitted his verified Plaintiff Profile Sheet, executed Medical Authorization forms, and Categorization Form to Cook. Declaration of Graham B. LippSmith ("LippSmith Dec.") ¶ 3. Attached to Plaintiff's Profile Sheet were medical records pertaining to the implant and explant procedures for his IVC filter. LippSmith Dec., Ex. 2. These records indicate that when Plaintiff Mosier was admitted to the hospital for the explant procedure in January 2015, he presented with "[n]oncardiac chest pain [...,] atypical prolonged pain lasting approximately 12 hours" and "shortness of breath." *Id*., Exs. 2, 3. This record also shows that Plaintiff

Mosier experienced anxiety that he may have been having "recurrent symptoms" related to his pulmonary embolism in August 2014. *Id*. Plaintiff further represented that he suffered from depression and anxiety in approximately January 2015 "brought on by the difficult illness and subsequent surgery due to the IVC filter" in his verified Plaintiff Profile Sheet. *Id*., Ex. 2, pp. 5, 8. Plaintiff also indicated that he "was told that the filter was making him sick" at the time of the explant procedure. *Id*. at p. 4.

On December 8, 2018, Plaintiff Mosier passed away. Unapprised of Plaintiff's death at that time, Plaintiff's counsel, Kasdan LippSmith Weber Turner, LLP ("KLWT"), filed a Case Categorization Submission form on behalf of Plaintiff on December 21, 2018. This Case Categorization form designates Plaintiff Mosier's case for Categories 1 and 7, and attaches two pages of the obtained medical records related to his hospital admittance and IVC filter explant surgery from January 23 to 24, 2015. LippSmith Dec., Ex. 3.

When Plaintiff's Categorization Form was submitted, it was done with the understanding that that "[t]his Case Category Submission is for the purpose of complying with the Court's Order on the Cook's Motion for Screening Order and Bellwether Selection Plan only <u>and is not admissible and is not to be considered relevant for any other purpose</u>," pursuant to the form's "Instructions." *Id*., Ex. 3 (emphasis added). On August 20, 2019, the Court affirmed use of the Categorization Form submissions for the limited purpose of motion practice in denying Plaintiffs'

Motion to Strike.  Entry on August 20, 2019 Status Conference, Dkt. 11602.

Plaintiff's counsel filed a Notification of Death as to Plaintiff Mosier on August 9, 2019. (Dkt. 11521).

On October 1, 2019, Cook filed this motion.  Exhibit A to the Motion (Dkt. 11924-1) includes a chart summarizing information for 46 Plaintiffs' cases, consisting of only the following information with no supporting evidence: plaintiff name, lead counsel, home state, highest category claimed, case type grounds for motion, and a brief description from the Plaintiff's medical records.  Cook's lawyer—not an expert physician or other qualified medical professional—deemed Plaintiff to be in the "Successfully Removed Filter" group and provided the following non-expert, inaccurate, and incomplete characterization of Plaintiff Mosier's medical records: "Filter successfully retrieved; no indication of complication occurring during in vivo time."

Cook's lawyer neither quoted from nor bothered to attach Plaintiff Mosier's actual medical records to even attempt to support his non-expert characterization of Plaintiff's conditions. This is likely because Plaintiff Mosier's medical records create genuine issues of material fact on the injuries Plaintiff Mosier's IVC filter caused him.

## <u>STANDARD OF REVIEW</u>

Summary judgment is proper only if the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c); *Bourne Co. v. Hunter Country Club, Inc*., 990 F.2d 934, 938 (7th Cir. 1993). When determining if a genuine issue of material fact exists, all facts must be construed in the light most favorable to the party opposing the motion and the court must draw all inferences in favor of that party. *Smart v. State Farm Ins. Co*., 868 F.2d 929, 931 (7th Cir. 1989).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party makes this initial showing, the burden shifts to the party opposing summary judgment to present specific facts demonstrating a genuine issue for trial. *NLFC, Inc. v. Devcom Mid-America, Inc*., 45 F.3d 231, 234 (7th Cir. 1995).

## ARGUMENT

### I.     Missouri Legal Standards Apply

As a preliminary matter, Cook based its motion on Indiana's substantive law. However, in the Seventh Circuit, foreign direct-filed cases are subject to the choice of law principles of the plaintiff's home forum, not the forum of the MDL court. This Court previously acknowledged the existence of a direct filing order in this lawsuit and adopted the Seventh Circuit's approach to choice of law questions in foreign

directed-filed cases.  Entry on Motion for Judgment on the Pleadings Based on the Statute of Repose, Dkt. 4918, at 3.

Here, Missouri's choice of law principles require that Missouri's substantive law be applied to Plaintiff Mosier's tort and contract claims.  *See Sturgeon v. Allied Prof'ls Ins. Co.*, 344 S.W.3d 205, 211 (Mo. Ct. App. 2011) ("Missouri courts apply the most significant relationship test . . . when resolving choice of law issues."); *Elmore v. Owens Illinois, Inc.*, 673 S.W.2d 434, 436 (Mo. 1984) (adopting the most significant relationship test in tort cases).

## A.    Plaintiffs' Home State Choice of Law Principles Apply.

On February 2, 2016, Cook moved for summary judgment in *Graham v. Cook*, Case No. 1:15-cv-764, arguing, among other things, that the case was time-barred. *See generally* Cook's Brief in Support of Motion for Summary Judgment ("*Graham* MSJ"), Dkt. 1051.  Just like Plaintiff Mosier's case, *Graham* was filed directly in this Court. *See* Master Case List, p. 8.[1]

In a section of the *Graham* MSJ entitled "Choice of Law Analysis," Cook acknowledged that direct-filed cases like *Graham* (and Plaintiff's) are subject to the choice of law principles of their **home** forum:

---

[1] Given that this volume of the Master Case List spans more than 300 pages, Plaintiff does not attach it here. It is located on the Court's website at the following link: https://www.insd.uscourts.gov/sites/insd/files/MDL%202570%20Schedule%20A.pdf (last accessed on October 28, 2019).

> When a case based on diversity is part of an MDL and is directly filed in the MDL forum as the result of a direct filing order, courts have found that the "better approach is to treat foreign direct filed cases [i.e., cases originating outside of this Curt's judicial district but filed directly in to the MDL] as if they were transferred from a judicial district sitting in the state where the case originated." *In re Yasmin*, 2011 U.S. Dist. LEXIS 39820, at *15, *18 (S.D. Ill. April 1, 2011.)

*Graham* MSJ at 5. Cook then went on to apply Kansas law throughout its motion. *Id.*

Cook now relies on the opposite argument, contending that Indiana law applies here. As Justice Ginsburg explained, "judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotations omitted). Judicial estoppel protects the integrity of the judicial process by preventing parties from "playing fast and loose with the courts," and is "intended to prevent improper use of judicial machinery." *Id.* at 750 (internal quotations omitted). Given its prior position on choice of law, the Court should deny Cook's argument that Indiana law applies for this motion.

## B.    Indiana Choice of Law Rules and Indiana Substantive Law Do Not Apply.

In *Dobbs v. Depuy Orthopedics, Inc.,* 842 F.3d 1045 (7th Cir. 2016), a plaintiff from Illinois direct-filed his case in the Northern District of Ohio as part of an MDL. The case was later transferred from the Ohio MDL to the Northern District of Illinois. Despite its direct filing, the Seventh Circuit held that the case originated in Illinois and therefore Illinois choice of law rules applied. *Id.* at 1048.

Dobbs's claim . . . was filed in the Northern District of Ohio only because the DePuy multidistrict litigation was already in progress there. Dobbs's complaint stated that the Northern District of Illinois was the appropriate venue absent the multidistrict litigation. That advises treating the Northern District of Illinois as the original venue.

In fact, district courts in our circuit have taken that approach: **foreign cases filed directly in a district court as part of ongoing multidistrict litigation are treated as having originated outside of that district.** We ratify that approach here and apply Illinois's choice-of-law rules.

*Id.* at 1048 (emphasis added) (citing *In re Watson Fentanyl Patch Prods. Liab. Litig*., 977 F. Supp. 2d 885, 888-89 (N.D. Ill. 2013) ("…a case that was directly filed in the MDL transferee court but that originated elsewhere, the law (including choice of law rules) that applies is the law of the state where the case originated."), and *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig*., No. 3:09-MD-02100-DRH, 2011 WL 1375011, at *5-6 (S.D. Ill. Apr. 12, 2011) ("The Court concludes that the better approach is to treat foreign direct filed cases as if they were transferred from a judicial district sitting in the state where the case originated.  For purposes of this analysis, the Court considers the originating state to be the state where the plaintiff purchased and was prescribed the subject drug.").

Applying choice of law analysis and substantive law of the originating state for direct-filed cases in MDL proceedings is exceedingly common, occurring throughout a wide selection of cases.  *See In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.,* 76 F. Supp. 3d 294, 303 (D. Mass. 2015) ("The home forum designation of the direct filing plaintiffs is the best evidence I have of what these plaintiffs would

have done absent direct filing.  Just as Mississippi plaintiffs would have had a choice between at least two proper forums in the absence of direct filing, so too do they have such an option with the direct filing procedure.  I will therefore consider the forum that the direct filing plaintiffs designated on their short form complaints as the originating forum for the choice of law analysis."); *Wahl v. General Electric Co.,* 983 F. Supp. 2d 937, 943 (M.D. Tenn. 2013) ("Most of the courts that have considered this peculiar procedural posture have stated that it is appropriate to apply choice of law rules of the 'originating' jurisdiction [i.e. where the case would have been brought but for the CMO permitting direct filing], rather than the choice of law rules of the MDL Court.  These courts have generally reasoned that the direct filing procedure is simply designed to promote judicial economy and conserve the parties' resources, not to alter the choice of law rules."); *In re Avandia Marketing, Sales Practices and Prods Liability Litig.,* 2012 WL 3205620, at *2 (E.D. Pa. August 7, 2012) ("The Court has concluded, as have other MDL courts, that such [direct filed] cases should be governed by the law of the states where Plaintiffs received treatment and prescriptions for Avandia.  This ruling will promote uniform treatment between those Plaintiffs whose cases were transferred into the MDL from their home states and those who filed directly into the MDL.").

There are two approaches to examining choice of law issues for direct filed cases in this MDL: (1) focus on the court designated by the plaintiff in the Short Form

Complaint as the place of proper venue as discussed in the *Dobbs, In re Fresenius Granuflo,* and *Wahl* cases (and as Cook has argued); or (2) focus on the place where the plaintiff received the IVC filter prescription and treatment as held in the *In re Watson Fentanyl, In re Yasmin*, and *In re Avandia* cases.  Under both approaches, Indiana choice of law rules and Indiana law do not apply here.  It is undisputed that Plaintiff's Short Form Complaint unambiguously listed a venue choice outside of Indiana, identifying the Western District of Missouri, Springfield as the District Court and Division where venue would have been proper absent direct filing in the MDL. Moreover, Plaintiff was prescribed and implanted with his IVC filter in Missouri, not Indiana.  *Id.*  Indiana law simply does not apply.

Because Plaintiff Mosier was a resident of Missouri at the time of injury, had his IVC filter implanted and explanted in Missouri, and identified a district court in Missouri as the proper venue for his case absent direct filing, Missouri law controls.

Even if Indiana choice of law principles govern, Missouri law controls here. Indiana employs a modified version of the traditional *lexi loci* rule for choice of law questions whereby the court applies the substantive laws of "the state where the last event necessary to make an actor liable for the alleged wrong takes place."  *Simon v. United States*, 805 N.E.2d 798, 804–805 (Ind. 2004) (quoting *Hubbard Mfg. Co. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind. 1987).  The *lexi loci* rule governs unless the state where the tort occurred is an "insignificant contact."  *Id.* at 804.  Again, Plaintiff

Mosier's entire experience with his defective IVC filter—from implant to explant—occurred in Missouri, not Indiana.  Thus, the Court should apply Missouri's law here.

## II.   Cook's Inadmissible Evidence Does Not Contradict Mosier's Medical Records Showing Legally Cognizable Injuries.

Cook has not met its burden of showing that Plaintiff lacks evidence that he suffered injuries due to his IVC filter.

First, the Court should deny Cook's motion outright since Cook entirely based it on non-expert, inadmissible characterizations of Plaintiff's medical conditions by Cook's lawyer.  "To be 'admissible in a summary judgment proceeding, the evidence submitted by a party *in support of* or in opposition to the summary judgment motion must be admissible at trial.'"  *Hunt v. Dart*, 754 F. Supp. 2d 962, 972 (N.D. Ill. 2010) (emphasis added); *see also* Fed. R. Civ. Pro. 56(c)(1); *Bull v. Bd. of Trs. Of Ball State Univ.*, 2012 U.S. Dist. LEXIS 61342, at *1 (S.D. Ind. 2012).  Rather than submit the actual medical records it claims to show an absence of injury, Cook submitted only its non-expert, self-serving, and incomplete characterization of characterization of Plaintiff's medical conditions.  The entirety of Cook's lawyer's characterization is as follows: "Filter successfully retrieved; no indication of complication occurring during in vivo time."  Cook's argument is based on a characterization by its lawyer, not a qualified medical expert and fails to quote from, let alone even specifically cite to or attach, any medical records that might support the lawyer's summary.  Failing to cite to the actual medical records while also relying on them for the basis of its motion

violates the Best Evidence Rule, "and can lead to incomplete and even misleading proposed findings of fact." *Gressel v. Thorpe*, 2017 U.S. Dist. LEXIS 151182, at *4 (W.D. Wis. 2017), citing *Dugan v. R.J. Corman R. Co.*, 344 F.3d 662, 669 (7th Cir. 2003) (ruling best evidence rule violated where the defendant's proposed findings on summary judgment cited to witness summaries of medical records rather than the records, themselves).

Second, had Cook even bothered to attach Plaintiff's medical records, they would have undermined its lawyer's characterizations. Plaintiff's medical records in fact show that Plaintiff suffered injuries because of his filter. Cook's conclusion that there was "no indication of complication occurring during the in vivo time" is false. When Plaintiff Mosier was admitted to the hospital for the explant procedure in January 2015, he presented with "[n]oncardiac chest pain …[,] atypical prolonged pain lasting approximately 12 hours" and "shortness of breath." LippSmith Dec., Exs. 2, 3. These symptoms were recorded while Plaintiff's filter was still in place. This record also shows that Plaintiff Mosier experienced anxiety that he may have been having "recurrent symptoms" related to his pulmonary embolism in August 2014. Plaintiff further represented that he suffered from depression and anxiety in approximately January 2015 "brought on by the difficult illness and subsequent surgery due to the IVC filter" in his verified Plaintiff Profile Sheet. *Id*., Ex. 2, pp. 5, 8. Plaintiff also indicated that he "was told that the filter was making him sick" at the

time of the explant procedure.  *Id*. at p. 4.

Lastly, just Plaintiff's facts do not fit perfectly into the Case Categorization Form categories does not mean that his case should be considered "miscategorized," and therefore dismissed.  The Case Categorization Form asks Plaintiffs to "certify the respective outcomes, complications, and injuries claimed … into one of seven categories outlined by the Court" and provided in the form. *Id.*, Ex. 3, "Instructions." Plaintiff Mosier's Case Categorization form indicates both Category 1 and 7 because those options, though imperfect, best described his case. Category 1 reads:

> Successful First Removal Without Complication or Physical Injury Cases: "Cases where Plaintiffs' profile sheet and further follow-up shows that the Gunther Tulip or Celect IVC filter was successfully removed on the first, routine, percutaneous retrieval attempt and no physical symptom or filter complication was alleged during the time the filter was in place or in connection with the retrieval process."

*Id.* Because Plaintiff's IVC filter was successfully removed on the first attempt, Category 1 was selected. However, he also experienced physical symptoms of chest pain and shortness of breath and was told that the filter was making him sick, so Category 1 does not fully encapsulate Plaintiff's claims. Category 7 reads: "Symptomatic Injury Cases: 'Cases where the Plaintiff alleges medical symptoms, conditions, or complications caused by one or more of the following conditions[.]" *Id.* Category 7 is also an appropriate selection because Plaintiff experienced symptoms or complications because of the filter. Category 2 states that it is for "[c]ases where *only* non-physical injuries … have been alleged (emphasis added)," so it would not have

encapsulated Plaintiff's injuries, which included physical symptoms that he was told were due to the filter. *See id*.  In sum, the Court should not impose the most drastic result—dismissing Plaintiff Mosier's case—just because his symptoms do not fit perfectly into any single Case Categorization Category.

Because Plaintiff's medical records and verified Plaintiff Profile Sheet very clearly show that Plaintiff suffered complications while the filter was in place and experienced physical manifestations of injuries and anxiety as a result, a genuine dispute of material fact exists as to whether Plaintiff Mosier can prove an injury in fact caused by his Cook IVC filter.

## III.   Plaintiff's Non-Tort Claims

### A.   Implied Warranty[2]

Cook's argument that Plaintiff Mosier's implied warranty claim, whether arising from tort or contract, is subject to summary judgment due to a purported lack of physical injury (Motion at pp. 16-17) fails because, as discussed above, Plaintiff suffered physical injuries due to his filter which caused physical manifestations of injuries and acute emotional distress.  Section II, *supra*.  Cook also relies on Indiana case law for the proposition that a plaintiff may not recover emotional distress damages under contract law absent physical injury (Motion at p. 17).  However, as

---

[2] The Court has already ruled that the express warranty allegations in the Master Complaint are not sufficient to state a claim for breach of express warranty independently of specific warranty allegations in a plaintiff's Short Form Complaint. *See* Court's Entry on Motion for Judgment on the Pleadings Based on the Statute of Repose, Dkt. 4918 at 13–14.  Accordingly, Plaintiff does not oppose the motion as to his express warranty claim.

Plaintiff discusses in detail *supra* at Section I, Missouri's substantive law applies to Plaintiff Mosier's case.  *Id.* at 17.

The elements of an implied warranty of merchantability claim in Missouri are: "(1) that a merchant sold goods, (2) which were not 'merchantable' at the time of the sale, (3) injury and damages to the plaintiff or his property (4) which were caused proximately or in fact by the defective nature of the goods, and (5) notice to the seller of the injury."  *Hope v. Nissan N. Am., Inc*., 353 S.W.3d 68, 89-90 (Mo. Ct. App. 2011).  Goods are merchantable if they are "at least fit for the ordinary purposes for which such goods are used."  Mo. Rev. Stat. § 400.2-314(2)(f).  Indiana applies this same standard for merchantability claims.  *See* Ind. Code Ann. § 26-1-2-314(2)(c); *see also Frantz v. Cantrell*, 711 N.E. 2d 856, 859 (Ind. Ct. App. 1999) ("An implied warranty of merchantability is imposed by operation of law for the protection of the buyer and must be liberally construed in favor of the buyer.").

Here, Cook sold goods in the form of the subject IVC filters.  Cook's filters were not merchantable at the time of sale because they were not fit for their ordinary purpose of safely and effectively filtering blood clots (or "thrombi").  Dkt. 213, Master Complaint at ¶ 33.  The filters are defective in that they cannot withstand the normal anatomical and physiological loading cycles exerted *in vivo*. *Id.* at ¶ 38.  The serious risks and complications associated with Cook's filters were chronicled in various medical studies summarized in the Master Complaint.  *Id.* at ¶¶ 39, 43.

Plaintiff Mosier suffered physical injuries that were caused by his filter, such as prolonged chest pain and shortness of breath, and he also reported that his filter was "making him sick" prior to its removal. LippSmith Dec., Exs. 2, 3. These physical symptoms were in addition to the depression and anxiety that Plaintiff Mosier attributed to the illness and subsequent surgery brought on by his IVC filter. *Id*., Ex. 2.

Thus, even assuming the Court finds the Cook lawyer's non-expert and unsupported characterizations of Plaintiff's medical conditions was sufficient to carry its initial burden on this motion, a genuine dispute of material fact exists concerning whether Plaintiff was physically and emotionally injured by Cook's defective and unmerchantable filters. Accordingly, the Court should deny Cook's motion with respect to Plaintiff's implied warranty claim.

**B.     Plaintiff States an Actionable Claim Under the Missouri Merchandising Practices Act.**

The Court should also reject Cook's motion as to "Plaintiffs' fraud-based consumer protection claims (Count VII)."

Plaintiff Mosier alleged that Cook violated the Missouri Merchandising Practices Act ("MMPA"). The elements of an MMPA claim are: (1) the purchase of goods or services, (2) primarily for personal or household purposes; and (3) an ascertainable loss of money or property, (4) as a result of, or caused by, the use or employment by another person of a method, act, or practice declared unlawful under the MMPA. Mo. Rev. Stat. §§ 407.020 and 407.025.1. *See also Murphy v. Stonewall*

*Kitchen, LLC*, 503 S.W.3d 308, 311 (Mo. App. 2016); and Mo. Approved Instructions (Civil) 39.01 (7th ed.).

The focus of the MMPA's statutory scheme is on the defendant's conduct—a consumer's reliance on an unlawful practice is <u>not</u> required to state a claim. *Murphy*, 503 S.W. 3d at 311 (citing *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 774 (Mo. 2007)). The phrase "unlawful practice" under the MMPA is "unrestricted, all-encompassing and exceedingly broad." *See Ports Petroleum Co. v. Nixon*, 37 S.W.3d 237, 240 (Mo. 2001). "For better or worse, the literal words cover every practice imaginable and every unfairness to whatever degree." *Id.*

Under rules promulgated by the Missouri Attorney General, "deception" for the purposes of the MMPA is defined as "any method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression." 15 C.S.R. § 60-9.020(1). Under 15 C.S.R. § 60-9.070(1), "misrepresentation" is defined as "an assertion not in accord with the facts[.]" Proof of deception, fraud, or misrepresentation is not required to show that "unfair practice[s]" have occurred. 15 C.S.R. § 60-8.020(2).

Here, Cook contends that the allegations of fraudulent conduct in the Master Complaint (which are incorporated by reference in Plaintiff's Short Form Complaint) fail to include allegations of the "who, what, or how of the alleged misrepresentations, and thus fail to meet Rule 9's particularity requirement." Motion at 18. In support of

its motion, Cook quotes a single paragraph from the Master Complaint:

> Defendants misrepresented the alleged benefits and characteristics of Cook's IVC Filters; suppressed, omitted, concealed, and failed to disclose material information concerning known adverse effects of Cook's IVC Filters; misrepresented the quality and efficacy of Cook's IVC Filters as compared to much lower-cost alternatives; misrepresented and advertised that Cook's IVC Filters were of a particular standard, quality, or grade that they were not; misrepresented Cook's IVC Filters in such a manner that later, on disclosure of the true facts, there was a likelihood that Plaintiffs would have opted for an alternative IVC Filter or method of preventing pulmonary emboli.

Motion at 18.

However, the Master Complaint also contains the following allegations of

misrepresentations and omissions that all satisfy the requirements for MMPA claims:

> At all times relevant hereto, the Cook Filters were widely advertised and promoted by the Defendants as safe and effective treatment for prevention of recurrent pulmonary embolism via placement in the vena cava.  At all times relevant hereto, Defendants knew its Cook Filters were defective and knew that defect was attributable to the design's failure to withstand the normal anatomical and physiological loading cycles exerted in vivo.

Dkt. 213, Master Complaint at ¶ 38.

> . . . Defendants failed to disclose to physicians, patients and/or Plaintiffs that its Cook Filters were subject to breakage, tilt, inability of removal, and migration even though they knew or should have known the same was true.

> At all times relevant hereto, the Defendants continued to promote the Cook Filter as safe and effective even when inadequate clinical trials had been performed to support long or short to safety and/or efficacy.

> The Defendants concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the Cook Filters, as aforesaid.

*Id.* at ¶¶ 44–46 (referencing medical studies chronicling such complications).  The

Master Complaint also alleges that Cook specifically advertised the "conichrome construction of the filter as a frame which 'reduces the risk of fracture'" even though the failure of the filters was caused, in part, by a design defect causing them to be unable to withstand the normal anatomical and physiological loading cycles exerted *in vivo*." *Id.* "At all times relevant hereto, the Defendants failed to provide sufficient warnings and instructions that would have put Plaintiffs and the general public on notice of the dangers and adverse effects caused by implantation of the Cook Filters." *Id*. at ¶50.

The Master Complaint amply alleges the who, what, and how of Cook's practices that should be considered unlawful under the MMPA.  Under the MMPA, the defendant's conduct is what matters.  Thus, Plaintiff Mosier need not show that he relied on any specific misrepresentation or omission, nor is he required to provide proof of deception, fraud, or misrepresentation.  Cook's misrepresentations of the safety and efficacy of its product, as well as its failing to disclose the serious risks associated with the filters, had a "tendency or capacity to mislead, deceive[,] cheat, or . . . to create a false impression" in consumers, such as Plaintiff Mosier, are sufficient facts to state a claim under the MMPA.

### C.    Punitive Damages

Cook's argument on punitive damages is wholly derivative of the Court's resolution on the substantive, underlying claims.  Motion at 20.  Thus, to the extent

the Court rejects Cook's arguments on the substantive claims at issue here, Plaintiff Mosier also respectfully requests that the Court reject Cook's arguments as to the punitive damage remedies arising from those claims.

## CONCLUSION

For the foregoing reasons and any additional reasons offered prior to or at the hearing on Cook's motion, Plaintiff Mosier respectfully requests that the Court deny Cook's motion in its entirety.

Dated: October 29, 2019

Respectfully submitted,

KASDAN LIPPSMITH WEBER TURNER LLP

*/s/ Graham B. LippSmith*
Graham B. LippSmith
360 East 2nd Street, Suite 300
Los Angeles, CA 90012
Telephone: (213) 254-4800
Fax: (213) 254-4801
glippsmith@klwtlaw.com

*Counsel for Plaintiff Roy G. Mosier*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 29, 2019, a copy of the foregoing

**PLAINTIFF'S OPPOSITION TO COOK DEFENDANTS' OMNIBUS MOTION**

**FOR SUMMARYJUDGMENT IN 46 MISCATEGORIZED NO INJURY CASES**

was filed electronically. Service of this filing will be made on all ECF-registered

counsel by operation of the Court's electronic filing system. Parties may access this

filing through the Court's system.

*/s/ Graham B. LippSmith*
Graham B. LippSmith