IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates to Plaintiff(s):

NICKY MOBLEY
Civil Case No. 1:19-cv-231

**PLAINTIFF NICKY MOBLEY'S RESPONSE IN OPPOSITION TO COOK DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BASED ON STATUTE OF LIMITATIONS**

COMES NOW Plaintiff Nicky Mobley, by and through her attorney of record, and files this response to Cook Defendants' Motion and Memorandum for Summary Judgment based on the Statute of Limitations and shows the Court as follows:

I.  **INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff Nicky Mobley respectfully requests that this Honorable Court deny the Motion for Summary Judgment of Cook Incorporated, Cook Medical, LLC, and William Cook Europe ApS ("Cook") as it applies to her claims. First, under choice of law rules, Indiana law does not apply. Second, Plaintiff's claims are not time barred under the laws of this jurisdiction or the laws of her home state. Third, Cook cannot support their assertions factually because they are not entitled to simply rely upon the Case Category Submission as grounds for dismissal. Plaintiff hereby also incorporates by reference Plaintiff leaderships Opposition to Cook's Motion for Summary Judgment.

1

Cook has not taken a single deposition, served any interrogatories, or reviewed all of the medical records in Ms. Mobley's case, and therefore cannot support its Motion for Summary Judgment with anything other than baseless arguments.

## II. STATEMENT OF UNCONTESTED FACTS

1. On October 2, 2018, the Court entered its Categorization and Screening Order, Dkt. 9322, ordering all MDL plaintiffs to categorize their cases in one of seven categories and to support those selections with specific medical records.

2. The Case Categorization form expressly states that the "Case Category Submission is for the purpose of complying with the Court's Order on Cook's Motion for Screening Order and Bellwether Selection Plan only and is not admissible and is not to be considered relevant for any other purpose."

3. Cook has not taken a single deposition, served any interrogatories, or reviewed all of Ms. Mobley's medical records in the instant matter.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant also "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, (1986). "A district court should grant summary judgment only if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Miller v. A.H. Robbins Co.,* 766 F.2d 1102, 1104 (7th Cir. 1985). When considering a motion for summary judgment, the

court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Zillak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003).

Whether a claim has been brought within the relevant period of limitations presents an issue of state law:

> As a court sitting in diversity, we must look to state law in deciding all matters of substance, including the operation of the relevant statutes of limitations.

*In re Bridgestone/Firestone Inc. ATX ATXII, Wilderness Tires Prod. Liab. Litig.*, 2002 WL 31689264, at *2 (S.D. Ind. Nov. 20, 2002) (citing *Horbach v. Kaczmarek*, 288 F.3d 969, 976 (7th Cir. 2002)). Whether the law that is applied is that of the forum state or that of the originating home states, the Defendants' Motion for Summary Judgment should be denied.

## IV. ARGUMENT

### A. In prior briefing before this Court, Cook conceded that plaintiffs' home state choice of law principles should apply.

On February 2, 2016, Cook moved for summary judgment in *Graham v. Cook*, Case No. 1:15-cv-764, arguing among other things the case was time-barred. [*See generally* Filing No. 1051.] Just like this case, *Graham* was not transferred to this district by the JPMDL; it was directly filed. [*See* Master Case List, p. 8.][1]

---

[1] Given that this volume of the Master Case List spans more than 300 pages, Plaintiff does not attach it here. It is located on the Court's website at the following link: https://www.insd.uscourts.gov/sites/insd/files/MDL%202570%20Schedule%20A.pdf

3

In a section of its *Graham* brief entitled "Choice of Law Analysis," Cook made clear that direct-filed cases like *Graham* are subject to the choice of law principles of their **home** forum, not the forum of the MDL court:

> When a case based on diversity is part of an MDL and is directly filed in the MDL forum as the result of a direct filing order, courts have found that the "better approach is to treat foreign direct filed cases [i.e., cases originating outside of this Court's judicial district but filed directly into the MDL] as if they were transferred from a judicial district sitting in the state where the case originated." *In re Yasmin*, 2011 U.S. Dist. LEXIS 39820, at *15, *18 (S.D. Ill. April 11,

[Filing No. 1051, at ECF p. 4252.] Cook went on: "Applying this law to the present case leads to the application of Kansas law." [*Id*., at ECF p. 4253.]

The doctrine of judicial estoppel provides guidance here. As Justice Ginsburg explained: "judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quotation omitted). Judicial estoppel protects the integrity of the judicial process by preventing parties from "playing fast and loose with the courts," and is "intended to prevent improper use of judicial machinery." *Id*. at 750 (quotations omitted). This is precisely what Cook attempts to do here. Given its prior position on choice of law, the Court should reject Cook's contrary position out of hand.

**B. Seventh Circuit precedent holds that foreign cases filed directly in an MDL are treated as having originated <u>outside</u> of the MDL district. Therefore, neither Indiana choice of law rules nor Indiana law apply to Plaintiff.**

In *Dobbs v. Depuy Orthopedics, Inc.,* 842 F.3d 1045 (7th Cir. 2016), a plaintiff from Illinois direct-filed his case in the Northern District of Ohio as part of an MDL. The case was later transferred from the Ohio MDL to the Northern District of Illinois. Despite its direct filing, the

4

Seventh Circuit held that the case originated in Illinois and therefore Illinois choice of law rules applied. *Id.* at 1048.

> Dobbs's claim . . . was filed in the Northern District of Ohio only because the DePuy multidistrict litigation was already in progress there. Dobbs's complaint stated that the Northern District of Illinois was the appropriate venue absent the multidistrict litigation. That advises treating the Northern District of Illinois as the original venue.
>
> In fact, district courts in our circuit have taken that approach: **foreign cases filed directly in a district court as part of ongoing multidistrict litigation are treated as having originated outside of that district.** We ratify that approach here and apply Illinois's choice-of-law rules.

*Id.* at 1048 (emphasis added) (citing, *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 977 F. Supp. 2d 885, 888-89 (N.D. Ill. 2013), and *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 3:09-MD-02100-DRH, 2011 WL 1375011, at *5 (S.D. Ill. Apr. 12, 2011)).

The *Watson Fentanyl* decision—cited with approval by the Seventh Circuit in *Dobbs*—involved another case filed directly in an MDL court sitting in the Northern District of Illinois. 977 F. Supp. 2d at 886. The case concerned an Ohio resident who died in Ohio after using a fentanyl patch that was prescribed, purchased, and administered in Ohio. The Northern District of Illinois MDL court applied Ohio law and rejected attempts to apply Illinois law — even Illinois' choice of law rules.

> [T]he prevailing rule in this situation is that in a case that was directly filed in the MDL transferee court but that originated elsewhere, the law (including choice of law rules) that applies is the law of the state where the case originated. The Court agrees with the cases just cited and concludes that the choice of law rules that apply are those of the state where the case originated.

*Id.* at 888 (internal citations omitted).

The *Watson Fentanyl* MDL court then went on to analyze the meaning of the term "originated":

5

> **[A] direct-filed case in an MDL proceeding is considered to have originated in the state where the plaintiff purchased and used the prescribed product.** That is how the place of filing is determined in [the] overwhelming majority of product liability cases, and it is a reasonable approach to determining the choice of law issue that has been presented.

*Id.* at 889 (emphasis added). Because the plaintiff was prescribed and used the fentanyl patch at his Ohio residence, the Illinois MDL court ruled that Ohio law should apply to this foreign direct filed case.[2]

*In re Yasmin*—cited with approval by the *Dobbs* and *Watson Fentanyl* courts **and Cook**[3]—involved numerous cases that originated outside of that court's judicial district and that were filed directly in the Southern District of Illinois MDL. Similar to Cook's faulty reasoning, the *Yasmin* plaintiffs argued that because the court was sitting in diversity in Illinois, Illinois was the proper forum and Illinois choice of law principals should control. *Id.* Judge Herndon rejected that argument and emphasized in bold type: **"Illinois choice of law principals do not control simply because this MDL Court is sitting in diversity in Illinois."** *Id*. (emphasis in original). Judge Herndon further wrote:

> The Court concludes that the better approach is to treat foreign direct filed cases as if they were transferred from a judicial district sitting in the state where the case originated. For purposes of this analysis, the Court considers the originating state to be the state where the plaintiff purchased and was prescribed the subject drug. Thus, for a foreign direct filed member action involving a plaintiff that purchased and was prescribed the subject drug in Tennessee, the Court will treat that plaintiff's claims as if they were transferred to this MDL from a district court in Tennessee.

*Id.,* at *6. *See also In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.,* 76 F. Supp. 3d 294, 303 (D. Mass. 2015) ("The home forum designation of the direct filing plaintiffs is the

---

[2] Similar to the approach taken by the Seventh Circuit, the *Watson Fentanyl* MDL court also noted that it could have applied California choice of law rules, because Plaintiffs' complaint suggested that they would have filed their lawsuit in California. But even applying California choice of law rules, the Illinois MDL court concluded that Ohio law should apply and **not** the law of the MDL forum. *Id.* at 889-90.

[3] Filing No. 1051, at ECF p. 4252.

best evidence I have of what these plaintiffs would have done absent direct filing. Just as Mississippi plaintiffs would have had a choice between at least two proper forums in the absence of direct filing, so too do they have such an option with the direct filing procedure. I will therefore consider the forum that the direct filing plaintiffs designated on their short form complaints as the originating forum for the choice of law analysis."); *Wahl v. General Electric Co.,* 983 F.Supp. 2d 937, 943 (M.D. Tenn. 2013) ("Most of the courts that have considered this peculiar procedural posture have stated that it is appropriate to apply choice of law rules of the 'originating' jurisdiction [i.e. where the case would have been brought but for the CMO permitting direct filing], rather than the choice of law rules of the MDL Court. These courts have generally reasoned that the direct filing procedure is simply designed to promote judicial economy and conserve the parties' resources, not to alter the choice of law rules."); *In re Avandia Marketing, Sales Practices and Prods Liability Litig.,* 2012 WL 3205620, at *2 (E.D. Pa. August 7, 2012) ("The Court has concluded, as have other MDL courts, that such [direct filed] cases should be governed by the law of the states where Plaintiffs received treatment and prescriptions for Avandia. This ruling will promote uniform treatment between those Plaintiffs whose cases were transferred into the MDL from their home states and those who filed directly into the MDL.").

Thus, there are two different approaches for examining choice of law issues for direct filed cases in this MDL: (1) focus on the court designated by the plaintiff in the Short Form Complaint as the place of proper venue as discussed in the *Dobbs, In re Fresenius Granuflo,* and *Wahl* cases (and as Cook already argued); or (2) focus on the place where the plaintiff received the IVC filter prescription and treatment as held in the *In re Watson Fentanyl, In re Yasmin*, and *In re Avandia* cases. Under both approaches, neither Indiana choice of law rules nor Indiana law apply to these cases. It is undisputed that Plaintiff's Short Form Complaint unambiguously listed venue

7

choices—just as the plaintiff in *Graham*—at a location outside of Indiana. Specifically, Plaintiff stated that absent direct filing, proper venue would be in the United Stated District Court for the Southern District of Mississippi, Northern Division. (Exhibit A, Plaintiff's Short Form Complaint, p. 2). Moreover, Plaintiff purchased and was prescribed **her** IVC filter outside of Indiana. *Id.* Therefore, the Court should reject Cook's attempt to apply Indiana law.

### C. Plaintiff filed her personal injury claims within Mississippi's three-year statute of limitations.

Plaintiff's lawsuit originated in Mississippi. As such, Mississippi law controls her claims. Mississippi statutory law provides for a three-year statute of limitations for personal injury actions. Miss. Code Ann. §15-1-49. As the Defendants have stated in their Exhibit A, Ms. Mobley's open retrieval was performed on July 26, 2016, and the Plaintiff's Complaint was filed on January 31, 2019, well within the statute of limitations period. Plaintiff has also pleaded a fraud claim, as set forth below.

### D. In the event Indiana law is applied, it would not bar any claims.

Although it is true that Indiana's personal injury statute of limitations is two years, Cook admits that Indiana has a discovery rule:

> To determine when a reasonably diligent plaintiff should have discovered the claimed injury, Indiana courts ask "whether a reasonable person in the [plaintiff's] position . . . possessing the information [plaintiff] did when [she] did, could have discovered through the exercise of ordinary diligence that the product [caused her harm]."

Cook Memorandum of Law, pp. 7-8 (citing *Horn v. A.O. Smith Corp.*, 50 F.3d 1365, 1370 (7th Cir. 1995). Cook claims in its memorandum that this Court should rule on its motion for summary judgement based solely on a limited and select number of medical records. Dck 11922. Medical records that in no way convey any information regarding Plaintiff's knowledge of the causal connection between her injuries and the defective nature of the Cook

8

IVC Filter. What is more, Cook has not taken a single deposition, served a single interrogatory, or even reviewed all of Plaintiff's medical records. Without taking any of those critical discovery steps, Cook, in a motion for summary judgement that includes 26 Plaintiffs and excludes the relevant Mississippi law asks this Court to prematurely grant its motion. Ms. Mobley suffered penetration of IVC filter struts through the caval wall, tilt, and abdominal pain. (Exhibit B, Plaintiff Profile Sheet, p. 4-5). This constituted ongoing injuries that Ms. Mobley was not aware were caused by a defective device. In addition, she had no reason to know "that there was a 'reasonable possibility' that the [product] harmed her and she should therefore make further inquiry to determine her legal rights." *In re Mirena IUD Prods. Liab. Litig. (Truitt)*, 29 F. Supp. 3d 345, 352 (S.D.N.Y. 2014). A plaintiff must "have discovered through the exercise of ordinary diligence that the product [caused her harm]." *Horn v. A.O. Smith Corp.*, 50 F.3d 1365, 1370 (7th Cir. 1995). "Generally, though, the plaintiff's suspicion, standing alone, about the source of her injury is insufficient to trigger the onset of the limitations period." *Nelson v. Sandoz Pharms. Corp.*, 288 F.3d 954, 966 (7th Cir. 2002)(citation omitted). Ms. Mobley had no reason to believe the Cook filter was the cause of her injuries because she did not discover that the device was defective until years later. Cook has the burden in a motion for summary judgment, and at a minimum, the lack of discovery on Ms. Mobley's case is sufficient to demonstrate that Cook has failed to meet its burden.

In addition, Plaintiff has alleged fraudulent conduct on the part of Cook. First, under Indiana law, this doctrine estops a defendant from utilizing the statute of limitations as a defense when they have committed fraud:

> The doctrine of fraudulent concealment operates to estop a defendant from asserting a statute of limitations defense when that person, by deception or a

9

> violation of a duty, has concealed material facts from the plaintiff thereby preventing discovery of a wrong. Thus, equitable estoppel can arise either from active efforts to conceal the malpractice or from failure to disclose material information when a fiduciary or confidential relationship exists between the physician and patient. The physician's failure to disclose that which he knows, or in the exercise of reasonable care should have known, constitutes constructive fraud.

*Hughes v. Glaese*, 659 N.E.2d 516, 518 (Ind. 1995). See also, *Hospital Corp. v. Hiland*, 547 N.E. 2d 869, 873 (Ind.App. 1989); *Cacdac v. Hiland*, 561 N.E.2d 758 (Ind. 1990); *Van Dusen v. Stotts*, 712 N.E.2d 491 (Ind. 1999). When the concealment is active, the period of estoppel is not affected by the date of termination of the relationship but continues for a reasonable time after "*the plaintiff discovers the alleged malpractice* or *discovers information* which in the exercise of reasonable diligence would lead to discovery of the malpractice." 659 N.E.2d at 518 (emphasis added, citation omitted).

Allegations of Cook's fraud have been proffered since the onset of this litigation. For example, the Master Complaint contains the following averments:

> 44. While not inclusive of all medical studies published during the relevant time period, the above references show that the Defendants *failed to disclose* to physicians, patients and/or Plaintiffs that its Cook Filters were subject to breakage, tilt, inability of removal, and migration even though they knew or should have known the same was true.
>
> 45. At all times relevant hereto, the Defendants continued to promote the Cook Filter as safe and effective even when inadequate clinical trials had been performed to support long or short to safety and/or efficacy.
>
> 46. The Defendants *concealed* the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the Cook Filters, as aforesaid.
>
> . . .
>
> 114. Defendants engaged in *unfair, unconscionable, deceptive, fraudulent and misleading* acts or practices in violation of all states' consumer protection laws, identified below.
>
> 115. Through its *false, untrue and misleading* promotion of Cook's IVC Filters, Defendants induced Plaintiffs to purchase and/or pay for the

10

purchase of Cook's IVC Filters.

116. Defendants *misrepresented* the alleged benefits and characteristics of Cook's IVC Filters; *suppressed, omitted, concealed, and failed to disclose* material information concerning known adverse effects of Cook's IVC Filters; *misrepresented* the quality and efficacy of Cook's IVC Filters as compared to much lower-cost alternatives; *misrepresented* and advertised that Cook's IVC Filters were of a particular standard, quality, or grade that they were not; *misrepresented* Cook's IVC Filters in such a manner that later, on disclosure of the true facts, there was a likelihood that Plaintiffs would have opted for an alternative IVC Filter or method of preventing pulmonary emboli.

117. Defendants' conduct created a likelihood of, and in fact caused, confusion and misunderstanding. Defendants' conduct *misled, deceived*, and damaged Plaintiffs, and Defendants' *fraudulent, misleading, and deceptive* conduct was perpetrated with an intent that Plaintiffs rely on said conduct by purchasing and/or paying for purchases of Cook's Filters. Moreover, Defendants knowingly took advantage of Plaintiffs, who were reasonably unable to protect their interests due to ignorance of the harmful adverse effects of Cook's IVC Filters.

118. Defendants' conduct was *willful, outrageous, immoral, unethical, oppressive, unscrupulous, unconscionable,* and substantially injurious to Plaintiffs and offends the public conscience.

Document 213 Filed 01/30/15 (emphasis added). These averments were supported with evidence disclosed at the Brand trial that began January 15, 2019 (1:14-ML-2570). For example:

My personal opinion is, if the new is not considered safe, the current should be stopped, based on theoretical calculations and testing.

We are trying to get some knowledge of the movement of a cava with an implanted filter, but nobody seems to have a dynamic evaluation.

To me it is very important that we at WCE can have the same conclusion as what was send to the FDA.

We do not want to hide that the filter broke at a test at a clinical relevant diameter, but to use the result to prove the safety….

Trial Exhibit PX-1148.

11

> … the Celect Filter may increase the risk of migration during use compared to the Tulip.
>
> . . .
>
> "Without further detailed analysis, it was my conclusion that the new filter would be unlikely to fulfil the conformity assessment requirements unless some supportive human clinical data is established"
>
> . . .
>
> The risk analysis and the clinical evaluation have identified some safety concerns associated with the new design of the filter. The literature has been reviewed extensively, and discussions have been going on for the past 3 years. However, to date it has not been possible to find any clear evidence of the existing available data that could clarify and justify the safety risks identified. If you can provide some new evidence or inputs which can clarify these safety concerns, we would be happy to take these inputs into considerations [sic].

Trial Exhibit PX-1099.

> Q Now, you told this jury a couple of days ago, essentially, that you believed the email message that attached this manuscript, that it was an effort by upper management -- by upper management to hide a picture of the sheep aorta that had perforated, correct?
>
> A And that was my opinion.

January 15, 2019 Trial Testimony of Harlan M. Krumholz, M.D., 1079:23 – 1080:3.

> Q -- can you explain -- you've already explained the concordance between Dr. Timperman and Dr. Gordon. There's obviously a discrepancy -- well, first of all, there's a big discrepancy between what Cook told the FDA and what all three of these sets of doctors found. Would you agree?
>
> A That's true.

Trial Testimony of Harlan M. Krumholz, M.D., 577:18-23.

> A They concluded that such a trial would be feasible, that in their -- based on what they found, they said, yeah, this went around the block. We think there's no reason to think it can't work. You could do it.
>
> Q So did Cook then sponsor or conduct a larger randomized-control trial on the Celect after they determined it was feasible?
>
> A Not that I'm aware.

Trial Testimony of Harlan M. Krumholz, M.D., 709:2-9.

12

>Let's just put on the screen for a moment Plaintiff's Exhibit 1841.
>
>This is a document we discussed yesterday regarding the observations -- a summary of observations from the OUS clinical investigators, including observations of 8, 6, 10, 5, and greater than 3 millimeters outside the IVC. In this letter from April of 2007, did Cook disclose this information regarding these struts outside the wall from the OUS study to the FDA?
>
>A They did not.
>
>Q Are you aware, based on your review of the communications between Cook and the FDA, of any communication at any time where Cook revealed to the FDA that there were these multiple struts outside the wall between 3 and 10 millimeters?
>
>A I'm not aware of any communication in which they told the FDA that there had been these penetrations described by their site investigators.

Trial Testimony of Harlan M. Krumholz, M.D., 630:19 – 631:10.

>A No, it's not possible to make an informed decision because some of the key information was not in the public domain.
>
>Q Known to Cook, but not
>
>disclosed? A That's right.

Trial Testimony of Harlan M. Krumholz, M.D., 954:23 – 955:1.

>Q In the 2009 time frame, did doctors know the dangers that the Celect posed in terms of perforation and -- perforation? Was that disclosed by Cook?
>
>A No.
>
>Q Was there publicity in 2009 to put doctors on alert that the Celect filter had this tendency to perforate the vena cava –
>
>A No.
>
>Q -- at a high rate?
>
>A No.

Trial Testimony of Harlan M. Krumholz, M.D., 955:18 – 956:2.

> Q Have you read the final reported of OUS? A Yes, sir.
>
> Q Does it show fracture -- A No, sir.
>
> Q -- that particular filter?
>
> A It doesn't mention any fracture, sir. Q Did they disclose that?
>
> A No, sir.

January 19, 2019 Trial Testimony of Gregory I. Gordon, M.D., 1674:25 – 1675:7. These documents and portions of trial testimony are just a mere smattering of evidence showing Cook committed fraud upon the medical community.

### E. The law of plaintiff's home state similarly provides for tolling in the event of fraudulent concealment.

Plaintiff Nicky Mobley was a resident of Mississippi at all pertinent times. Residents of Mississippi are protected by the statutory doctrine of fraudulent concealment:

> If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.

Miss. Code. Ann. § 15-1-67. Further, "[f]raudulent concealment of a cause of action tolls its statute of limitations." *Myers v. Guardian Life Ins. Co. of America, Inc.,* 5 F.Supp.2d 423, 431 (N.D.Miss.1998). The fraudulent concealment doctrine "applies to any cause of action." *Id.*

### F. Cook improperly relies upon Categorization Case forms.

Cook cannot rely upon Categorization Case forms to support its Motion for Summary

14

Judgment. These forms clearly state that they are "not admissible and [ ] not to be considered relevant for any other purpose." They are solely "for the purpose of complying with the Court's Order on the Cook Defendant's Motion for Screening Order and Bellwether Selection Plan…." Thus, Cook cannot rely on the Categorization Case forms. No other information is provided to support Cook's assertions regarding the statute of limitations, so this Court should deny the Motion for Summary Judgment.

### V.     CONCLUSION

For the foregoing reasons, Plaintiff Nicky Mobley respectfully requests that this Court deny Cook's Motion for Summary Judgment.

Date:  October 29, 2019                    Respectfully submitted,

**THE POTTS LAW FIRM, LLP**

By: */s/ Nathaniel K. Scearcy*
Nathaniel K. Scearcy, MO #68372
1901 W. 47th Place, Suite 210
Westwood, KS  66205
P: (816) 931-2230
F: (816) 817-0478
Email: nscearcy@potts-law.com

ATTORNEYS FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of October, 2019, a copy of the foregoing was served electronically and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.

*/s/ Nathaniel K. Scearcy*