**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

**IN RE COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION**

**Case No. 1:14-ml-2570-RYL-TAB**
**MDL No. 2570**

**This Document Relates To:**

---

**Clayton Kinsey** **1:17-cv-4414-RLY-TAB**

---

**PLAINTIFF'S OPPOSITION TO COOK MEDICAL INC.'S OMNIBUS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Clayton Kinsey respectfully submits the following memorandum of law in opposition to Cook Medical Inc.'s ("Cook") Motion for Summary Judgment. For the reasons stated below, the Court should deny Cook's summary judgment motion.

## INTRODUCTION

This is an action against Defendant Cook for the injuries that have resulted from its defective product known as an IVC Filter. The IVC Filter that Cook manufactured and sold to Plaintiffs is a medically implantable device that is placed inside of the patient's vein to prevent blood clots from moving through his blood and into his lungs. However, as illustrated through the various pleadings and other documents filed in these cases, Cook's IVC Filter is defective and has caused thousands of plaintiffs and others to suffer serious medically complicated injuries. Many of these plaintiffs will continue to suffer damages for the rest of their life, and some even face death as a result of the IVC Filter's defect. Attempting to sweep the rug out from hundreds of plaintiffs, Cook filed a series of motions for summary judgment, including the one at issue here. Cook also filed an Omnibus motion seeking judgment as a matter of law on claims asserted by dozens of Plaintiffs from various states, based on the applicable statutes of

limitations. Cook's motion is grossly premature, as discovery has barely commenced, and several genuine questions of material fact remain unanswered.

Cook's motion for summary judgment should be denied first and foremost because Cook does not support the factual contentions in its motion with admissible evidence, which is required to meet its initial burden. Second, the Court should deny the motion because the Indiana statute of limitations does not apply to this foreign direct-filed case, and Cook submits no alternative. And third, even if Indiana law did apply, a material issue as to when Plaintiff discovered the causal connection between the Cook device and his injury remains unanswered. For the reasons set forth below, Plaintiff respectfully requests this Court to deny Cook's motion for summary judgment.

## STATEMENT OF MATERIAL FACTS IN DISPUTE

Ultimately, the factual dispute that is central to Cook's motion is the date upon which Mr. Kinsey's claims accrued, thereby triggering the applicable statutes of limitations for those claims. As argued herein, that issue should be determined after discovery, at which time Mr. Kinsey will be able to present a complete argument, supported by the necessary evidence, as to why the claim accrued at a particular time. Given that this brief focuses mostly on legal issues and the need for more discovery, there is not a long statement of case-related facts. However, certain facts related to the course of this litigation are central to this Court's ruling as to Cook's premature summary judgment motion.

Many factual issues pertaining to Mr. Kinsey's discovery of his injury and the causal connection between it and the IVC filter remain in dispute. After an accident in which Mr. Kinsey suffered injuries, including a head injury, Mr. Kinsey was implanted with a Günther Tulip Vena Cava Filter. (Affidavit of Clayton Kinsey, attached hereto as Exhibit A, ¶¶ 3-4.)

Having suffered a head injury and having been through multiple surgeries, Mr. Kinsey did not realize at the time that the Filter had been implanted. (*Id.* at ¶ 5.) After experiencing leg and back pain in March 2013, Mr. Kinsey saw a doctor and was told that his Filter needed to be removed. (*Id.* at ¶¶ 6-7.) Until that moment, Mr. Kinsey was not aware that the Filter remained in his body or that it had been implanted in the first place. (*Id.* at ¶ 8.) Mr. Kinsey's physician told him that the Filter needed to be removed, but Mr. Kinsey did not know why or how the Filter had come to be in a dangerous state. (*Id.* at ¶ 9.) Mr. Kinsey's physician never told him that his injuries, including the removal of the Filter, could have been caused by a defect in the IVC Filter product. (*Id.* at ¶ 10.) It was not until 2016 that Mr. Kinsey learned that the Filter was defective, and that this may have been the reason for his injuries. (*Id.* at ¶ 11.)

On October 2, 2018, the Court entered its Categorization and Screening Order, Dkt. No. 9322, ordering all MDL plaintiffs to categorize their cases in one of seven categories and to support those selections with specific medical records. The Case Categorization form expressly states that the "Case Category Submission is for the purpose of complying with the Court's Order on the Cook Defendant's Motion for Screening Order and Bellwether Selection Plan only and **is not admissible** and is not to be considered relevant for any other purpose." (Dkt. No. 9638-1, at ECF p. 64997-64998). In asking for an order requiring the Case Categorization Forms, Cook explicitly represented that the "goal" was "to properly categorize cases and draw bellwether cases from those categories." (Dkt. No. 8913, at ECF p. 55986).

No case-specific discovery has occurred in this matter. Specifically, Cook has not taken Mr. Kinsey's deposition. (*See generally* Defendant's Memorandum, Doc. No. 11726). Cook has not taken the deposition of Plaintiff's treating physicians, implanting physician, or any other physician charged with his care related to his IVC filter. (*See id.*).

## CHOICE OF LAW

Cook's simplistic statement that Indiana choice-of-law rules and Indiana law apply merely because Plaintiffs' filed their claims directly in this MDL Court ignores Seventh Circuit precedent and is legally incorrect. In the Seventh Circuit, it is black letter law that for choice of law analysis, "[f]oreign cases filed directly in a district court as part of an ongoing multidistrict litigation are treated as having originated **outside** of that district." *Dobbs v. DePuy Orthopedics, Inc.*, 842 F.3d 1045, 1048 (7th Cir. 2016) (emphasis added), citing with approval *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 977 F. Supp. 2d 885, 888-89 (N.D. Ill. 2013) (in direct filed product liability case, MDL court applied the law of the state where the plaintiff purchased and used the prescribed product, **not** the MDL forum); *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices and Prods. Liab. Litig.*, 2011 WL 1375011, at *5 (S.D. Ill. April 12, 2011) (similarly applying the law of the state where the plaintiff purchased and used the product, rather than the MDL forum, in direct-filed cases). Tellingly, Cook's Motion for Summary Judgment ignores the Seventh Circuit's holding in *Dobbs*.[1] The Court should reject Cook's erroneous choice of law argument, refuse to apply Indiana law to foreign direct filed cases, and deny Cook's Motion for Summary Judgment.

### I. For Choice of Law Analysis, Seventh Circuit Precedent Holds that Foreign Cases Filed Directly in an MDL Court Are Treated as Having Originated Outside of the MDL District. Therefore, Neither Indiana Choice of Law Rules Nor Indiana Law Apply to these Plaintiffs.

In *Dobbs*, an Illinois plaintiff direct-filed his case into an MDL in the Northern District of Ohio. The case was later transferred from the Ohio MDL to the Northern District of Illinois.

[1] Cook's Motion for Summary Judgment does cite the *Watson Fentanyl* and *Yasmin* cases. But those MDL court rulings actually support Plaintiffs' position and reject Cook's argument. The Court should rule likewise. For further discussion, please see *infra* at page 7.

The Seventh Circuit held that the case originated in Illinois and that Illinois choice-of-law rules applied. *Id.* at 1048.

> Dobbs's claim . . . was filed in the Northern District of Ohio only because the DePuy multidistrict litigation was already in progress there. Dobbs's complaint stated that the Northern District of Illinois was the appropriate venue absent the multidistrict litigation. That advises treating the Northern District of Illinois as the original venue.
>
> In fact, district courts in our circuit have taken that approach: **foreign cases filed directly in a district court as part of ongoing multidistrict litigation are treated as having originated outside of that district.** *E.g. In re Watson Fentanyl Patch Prods. Liab. Litig.*, 977 F. Supp. 2d 885, 888-89 (N.D. Ill. 2013); *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 3:09-MD-02100-DRH, 2011 WL 1375011, at *5 (S.D. Ill. Apr. 12, 2011). **We ratify that approach here and apply Illinois's choice-of-law rules.**

*Dobbs*, 842 F.3d at 1048 (emphasis added).

The *Watson Fentanyl* decision – cited with approval by the Seventh Circuit in *Dobbs* – involved a case filed directly in the MDL court in the Northern District of Illinois. *In re Watson Fentanyl*, 977 F. Supp. 2d at 886. The case concerned an Ohio resident, who died in Ohio after using a fentanyl patch that was prescribed, purchased, and applied in Ohio. The MDL court applied Ohio law and rejected attempts to apply Illinois law or Illinois' choice-of-law rules.

> "[T]he prevailing rule in this situation is that in a case that was directly filed in the MDL transferee court but that originated elsewhere, the law (including choice of law rules) that applies is the law of the state where the case originated. *See e.g. In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Prods. Liab. Litig.*, MDL No. 2100, No. 3:09-md-02100-DRH-PMF, 2011 WL 1375011, at *5 (S.D. Ill. April 12, 2011); *In re Bausch & Lomb Inc. Contacts Lens Solution Prods. Liab. Litig*. MDL No. 1785, 2007 WL 3046682, at *3 (D.S.C. Oct. 11, 2007) (noting that 'it would be an odd result to subject plaintiffs to [the law of the MDL forum] simply because they took advantage of the direct filing procedure – a procedure that provides benefits to all parties and preserves judicial resources'). The Court agrees with the cases just cited and concludes that the choice of law rules that apply are those of the state where the case originated.

*In re Watson Fentanyl*, 977 F. Supp. 2d at 888.

The court then analyzed the term "originated." The conclusion: "a direct-filed case in an MDL proceeding is considered to have originated **in the state where the plaintiff purchased and used the prescribed product**. That is how the place of filing is determined in [the] overwhelming majority of product liability cases, and it is a reasonable approach to determining the choice of law issue that has been presented." *Id.* at 889 (emphasis added). Because the Plaintiff prescribed and used the fentanyl patch at his Ohio residence, the Illinois MDL court ruled that Ohio law should apply to this foreign direct-filed case.[2]

*In re Yasmin* – cited with approval by both the *Dobbs* and *Watson Fentanyl* courts – involved numerous cases that originated outside of that court's judicial district and that were filed directly in the Southern District of Illinois MDL. Similar to Cook's faulty reasoning, the *Yasmin* plaintiffs argued that because the court was sitting in diversity in Illinois, Illinois was the proper forum and Illinois choice-of-law principles should control. *In re Yasmin*, 2011 WL 1375011, at *5. Judge Herndon rejected that argument and emphasized in bold type: **"Illinois choice of law principals do not control simply because this MDL Court is sitting in diversity in Illinois."** *Id*. (emphasis in original). The MDL court reasoned that "direct filing orders are beneficial to both parties because they streamline the litigation and help eliminate the judicial inefficiency involved in the MDL transfer process." *Id.* Judge Herndon further wrote:

> The Court concludes that the better approach is to treat foreign direct filed cases as if they were transferred from a judicial district sitting in the state where the case originated. For purposes of this analysis, the Court considers the originating state to be the state where the plaintiff purchased and was prescribed the subject drug. Thus, for a foreign direct filed member action involving a plaintiff that purchased and was prescribed the subject drug in Tennessee, the Court will treat that plaintiff's claims as if they were transferred to this MDL from a district court in Tennessee.

[2] Similar to the approach taken by the Seventh Circuit, the *Watson Fentanyl* MDL court also noted that it could have applied California choice-of-law rules, because the plaintiffs' complaint suggested that they would have filed their lawsuit in California. But even applying California choice of law rules, the Illinois MDL court concluded that Ohio law should apply and <u>not</u> the law of the MDL forum. *Id.* at 889-90.

*Id.*, at *6. *See also In re Fresenius Granuflo/Naturalyte Dialysate Products Liability Litigation*, 76 F. Supp. 3d 294, 303 (D. Mass. 2015) ("The home forum designation of the direct filing plaintiffs is the best evidence I have of what these plaintiffs would have done absent direct filing. Just as Mississippi plaintiffs would have had a choice between at least two proper forums in the absence of direct filing, so too do they have such an option with the direct filing procedure. I will therefore consider the forum that the direct filing plaintiffs designated on their short form complaints as the originating forum for the choice of law analysis."); *Wahl v. General Electric Co.*, 983 F. Supp. 2d 937, 943 (M.D. Tenn. 2013) ("Most of the courts that have considered this peculiar procedural posture have stated that it is appropriate to apply choice of law rules of the 'originating' jurisdiction [i.e. where the case would have been brought but for the CMO permitting direct filing], rather than the choice of law rules of the MDL Court. These courts have generally reasoned that the direct filing procedure is simply designed to promote judicial economy and conserve the parties' resources, not to alter the choice of law rules."); *In re Avandia Marketing, Sales Practices and Prods Liability Litig.*, 2012 WL 3205620, at *2 (E.D. Pa. August 7, 2012) ("The Court has concluded, as have other MDL courts, that such [direct filed] cases should be governed by the law of the states where Plaintiffs received treatment and prescriptions for Avandia. This ruling will promote uniform treatment between those Plaintiffs whose cases were transferred into the MDL from their home states and those who filed directly into the MDL.").

Thus, the Court has two different approaches for examining the choice-of-law issue for direct-filed cases in this MDL: (1) focus on the court designated by the plaintiff in the Short Form Complaint as the place of proper venue, as discussed in the *Dobbs, In re Fresenius Granuflo/Naturalyte, Dialysate Product Liability Litigation*, and *Wahl* cases; or (2) focus on the

place where the plaintiff received the IVC filter prescription and treatment, as held in the *In re Watson Fentanyl*, *In re Yasmin*, and *In re Avandia* cases. Either way, neither Indiana choice-of-law rules nor Indiana substantive law applies to these cases. It is undisputed that the foreign direct-filed Plaintiffs' Short Form Complaints unambiguously listed venue choices at locations outside of Indiana. Moreover, the Plaintiff subjected to this Motion purchased and was prescribed his IVC filter outside of Indiana. Specifically, the Plaintiff in this case listed that venue would be proper in Georgia, where he lived at the time of his procedures. (Doc. 1, ¶ 7.) Plaintiff received the IVC prescription and treatment in Alabama. (*Id.* at ¶ 12.) Because the Plaintiff sustained his injuries in Georgia, Plaintiff contends that the Court should focus on the law of designated place of proper venue in the Short Form Complaint and Georgia law should apply on this issue. However, the only other possible state's law that could apply is that of Alabama, the place where Plaintiff received his treatment. In either case, Indiana law should certainly not apply. Therefore, the Court should reject Cook's attempt to apply Indiana law and deny Cook's Motion for Summary Judgment on Limitations.

## II. Cook's Motion for Summary Judgment Ignores Seventh Circuit Case Law and Distorts the Meaning of the Term "Originated."

Tellingly, Cook omits from its brief any discussion of the Seventh Circuit's *Dobbs* case. No doubt this is because the Seventh Circuit's black letter holding completely contradicts Cook's argument. In fact, most of the cases cited by Cook stand for the extremely general proposition that federal courts sitting in diversity apply forum choice-of-law rules to determine substantive law. (*See* Cook's Motion for Summary Judgment at 9-10). These cases, however, are irrelevant because they do not pertain to foreign direct-filed cases in an MDL – or have anything to do with an MDL, for that matter.

Cook does cite the *In re Watson Fentanyl* and *In re Yasmin* cases. (*See* Cook Motion for Summary Judgment at 10). Cook even cites *In re Watson Fentanyl* for the proposition that "the prevailing rule in this situation is that in a case that was directly filed in the MDL transferee court but that originated elsewhere, the law (including the choice of law rules) that applies is the law of the state where the case originated." (*See id.*, citing *In re Watson Fentanyl*, 977 F. Supp. 2d at 888 (citing *In re Yasmin*, 2011 WL 1375011, at *5)). Thus, Cook's Motion for Summary Judgment completely supports Plaintiffs' position that Indiana law and Indiana choice-of-law rules **do not** apply to this foreign direct-filed case.

In a desperate effort to make an end-run around this well-established body of law, Cook engages in a game of legal gymnastics to twist the meaning of the term "originate." First, Cook ignores the fact that the *Watson Fentanyl* and *Yasmin* MDL courts both ruled that the law of the MDL forum **does not** apply to foreign direct-filed cases. Second, Cook conveniently omits any discussion as to how these MDL courts came to their respective conclusions.

Instead, Cook distorts the Court's *Lexecon* order regarding **jurisdiction** over cases directly filed in this Court. But **jurisdiction** is not the same as choice of law. As Cook knows, the Court did not address any choice-of-law issues in its *Lexecon* ruling. Moreover, the Court has never been presented with the choice-of-law issue for cases directly filed in the MDL, and the parties have never fully briefed the issue for the Court until now. Therefore, Cook's argument concerning the meaning of the term "originated" is both factually and legally incorrect. The Court should reject Cook's attempt to apply Indiana law and deny Cook's Motion for Summary Judgment.

For choice of law analysis, the law of the Seventh Circuit is that "foreign cases filed directly in a district court as part of ongoing multidistrict litigation are treated as having

originated outside of that district." *Dobbs*, 842 F.3d at 1048. The Court should reject Cook's attempt to apply Indiana choice of law rules and Indiana law to these 144 foreign direct filed Plaintiffs.

**STANDARD OF REVIEW**

This Court's subject-matter jurisdiction is based on the parties' diversity of citizenship; therefore, procedural matters are controlled by federal law and substantive issues are governed by state law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Under federal procedural law, summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he substantive law will identify which facts are material" and which are irrelevant. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *See id.* A court's function is not to weigh the evidence to determine the truth of the matter, but to determine whether a genuine issue of fact exists for trial. *See id.* at 249. A genuine issue exists if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party. *See id.* When assessing the sufficiency of the evidence in favor of the nonmoving party, the court must view all the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." *Zillak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003).

## ARGUMENT AND AUTHORITIES

### I. Cook has Failed to Meet its Burden on Summary Judgment because it cannot Provide any Admissible Evidence to Show the Absence of a Genuine Issue of Material Fact

The first question the Court should consider is whether Cook has met its initial burden on summary judgment. The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323-24 (quotations omitted). Only if that initial burden is met by the moving party does the burden shift "to the nonmoving party to make a showing sufficient to establish that there is a genuine issue of material fact regarding 'the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Gross v. Burggraf Const. Co.*, 53 F.3d 1531, 1537 (10th Cir. 1995) (quoting *Celotex*, 477 U.S. at 322). The moving party must cite admissible evidence to support its fact positions. See *id*.; *Cairel v. Alderden*, 821 F.3d 823, 830 (7th Cir. 2016) (summary judgment evidence must be admissible at trial).

As noted above, Cook's motion seeks judgment as a matter of law on claims asserted by hundreds of plaintiffs from various states, and purports to ground its argument on the applicable statutes of limitations. However, Cook fails to provide a factual basis for its arguments. That is, Cook provides **no admissible evidence** to support its position as to the timing of the relevant events. In fact, Cook explicitly agreed that the information it has used to support its claims **would not** be admissible at trial. (Filing No. 8913, at ECF p. 55986; Filing No. 938-1, at ECF p. 64997-64998.) When Cook requested an order requiring the Case Categorization Forms, it told the Court that the "goal" was "to properly categorize cases and draw bellwether cases from those

categories." (Filing No. 8913, at ECF p. 55986.) Further, the Forms themselves specifically state that they are "not admissible and [are] not to be considered relevant for any other purpose." (Filing No. 938-1, at ECF p. 64997-64998.) Despite the fact that the Court has already decided that Cook's only summary judgment "evidence" is inadmissible and irrelevant, Cook still attempts to conclusively state that the medical records establish certain events regarding the claims of Mr. Kinsey and others. (Cook's Memo in Support of Omnibus Motion for Summary Judgment, at p. 14-16). However, under Rule 56, merely pointing to the inadmissible forms produced by Plaintiffs is insufficient to establish that Cook is entitled to judgment as a matter of law against Mr. Kinsey. Cook's failure to meet its initial burden on summary judgment is sufficient basis for this Court to deny its motion for summary judgment as to Mr. Kinsey—and as to every other case.

## II. Even if the Defendants could meet their initial burden, and even if Indiana law did apply, the Plaintiff's claims should still go forward because fact questions remains as to when the plaintiff discovered the causal connection between the device and his injuries.

Even if Indiana law did apply on this issue, a fact issue remains as to when the Plaintiff discovered the cause of his injuries, and therefore whether the Indiana Discovery Rule would apply and toll the statute of limitations.[3] The Indiana "discovery rule provides that the statute of

[3] As noted above, Indiana law should not apply in this case. Therefore, because Defendant has not met its burden to show that it is entitled to the summary judgment under any other state's law, the motion for summary judgment should be denied. *See Celotex*, 477 U.S. at 323-24. Although Defendant has not addressed the applicability of other states' statutes of limitations, Defendant believes that Georgia law should apply on this issue, as the Plaintiff was a Georgia resident at the time he suffered his injuries. Under Georgia law, a cause of action accrues – thereby commencing the two-year statute of limitations – when, in the exercise of reasonable diligence, the Plaintiff discovered or should have discovered that: (1) they had been injured; and (2) their injury may have been **caused by the defendant's conduct**. *See Swicegood v. Pliva, Inc.*, No. CIV.A 107CV1671TWT, 2010 WL 1138455, at *2 (N.D. Ga. Mar. 22, 2010) (emphasis added); *Harrison v. Digital Equip. Corp.*, 219 Ga. App. 464, 464, 465 S.E.2d 494, 495 (1995). Here, Mr. Kinsey did not have the means to discover that his injuries were caused by the Defendant's conduct until sometime in 2017—as reflected in the affidavit that is discussed in the primary text. Therefore, Mr. Kinsey's claim would not be barred by the Georgia statute of limitations, and summary judgment should not be granted.

limitations begins to run on a cause of action when 'the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained **as a result of the tortious act** of another.'" *Nelson v. Sandoz Pharm. Corp.*, 288 F.3d 954, 963 (7th Cir. 2002) (quoting *Horn v. A.O. Smith Corp.*, 50 F.3d 1365, 1369 (7th Cir.1995)). Thus, there are two components that the plaintiff must discover: the injury itself, **and its cause**. *Horn.*, 50 F.3d at 1369–70. The court, therefore, considers whether a reasonable person in the position of the plaintiff, "possessing the information they did when they did," would have been on notice that "some right of his has been invaded or that some claim against another party might exist." *Id.* at 1370. The Supreme Court of Indiana has specifically held that where a plaintiff contends that they were unaware of the cause of their injury, and could not have, in the exercise of ordinary diligence, become aware of that cause until some later date, the question of "[w]hether this contention is correct is a question of fact for the factfinder to answer." *Wehling v. Citizens Nat. Bank*, 586 N.E.2d 840, 843 (Ind. 1992). Therefore, "summary judgment premised on the running of the statute of limitations is inappropriate," in such a situation. *Id.*

Further, Indiana law emphasizes that the information given to the Plaintiff by their doctor is important in this analysis. *Degussa Corp. v. Mullens*, 744 N.E.2d 407, 411 (Ind. 2001). Specifically, the Supreme Court of Indiana has stated that "[o]nce a plaintiff's doctor **expressly**

---

Alabama too, has a discovery rule that would apply to Mr. Kinsey's claim, if Alabama law were to apply. Alabama law is clear that when there is even "an *inference* as to whether a plaintiff was defrauded, and if so, when the plaintiff discovered the fraud, the case is **one for the trier of fact**." *Ryan v. Charles Townsend Ford, Inc*., 409 So. 2d 784, 786-87 (Ala. 1981) (emphasis added); *see also Jim Walter Homes, Inc. v. Kendrick*, 810 So.2d 645, 650 (Ala. 2001) (citing *Kindred v. Burlington Northern R.R.*, 742 So.2 2d 155, 157 (Ala. 1999) (issue of when accrual of cause of action occurs is a question of fact to be decided by jury). Ala. Code § 6-2-3 states "[i]n actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action." *Id.* Cook's motion wholly fails to account for its own actions and fraudulent conduct in promoting the use of Cook IVC filters, including affirmative misrepresentation and omissions regarding the efficacy and safety of such products. Because there is an inference of fraud in this case, under Alabama law too, summary judgment is inappropriate at this stage.

**informs** the plaintiff that there is a 'reasonable possibility, if not a probability' that an injury was caused by an act or product, then the statute of limitations begins to run and the issue may become a matter of law." *Id*. (emphasis added). Further the Court noted that "[c]ircumstances where a physician tells a patient that a product or act is one of several 'possible' causes of an injury present a complex of factually and legally relevant questions about how the physician conveyed the information to the patient and **what emphasis the physician placed on the potentially tortious cause** over other causes." *Id.* (emphasis added).

In this case, the question of when Mr. Kinsey had enough information to, through the exercise of reasonable diligence, discover the causal connection between the device and his injuries is one for the fact finder and should not be decided on summary judgment. Mr. Kinsey was not aware that his injuries were caused by the fact that his filter was defective. (Ex. A, ¶¶ 10-11). Nor did he know why or how his filter had come to the point where it needed to be removed. (*Id.* at ¶ 9). Mr. Kinsey has further stated that none of his doctors ever alerted him to the possibility that a defect in the IVC filter caused his injuries. (*Id*. at ¶ 10). In fact, Plaintiff did not even know he had the filter in his body until he learned it needed to be removed. (*Id.* at ¶¶ 5, 8). Instead, there were a number of possible reasons for the removal of Mr. Kinsey's IVC Filter. And, not only did Mr. Kinsey's physicians not emphasize the potentially tortious cause over other causes, they did not inform him of a potentially tortious cause at all. (*Id.* at ¶ 10). The information that Plaintiff had at the time of the removal of the filter did not suggest a possibility that a defect in the filter that would cause one to exercise reasonable diligence to seek out information about a possible claim.

Defendant cites *In re Mirena IUD Prods. Liab. Litig. (Truitt),* 29 F. Supp. 3d 345, 352 (S.D.NY. 2014), to support its argument that the date of removal is the latest date that the statute

of limitations could start to run. That case, importantly, was not decided by an Indiana Court and is not binding in this case. In fact, its reasoning differs significantly from Indiana courts that have addressed this issue. The decisions of Indiana courts, outlined above, instead show that the question of the latest date the statute could begin to run is a fact-intensive question. *See Wehling*, 586 N.E.2d at 843. The Indiana cases cited by Defendant also do not support the analysis in *Mirena* or Defendant's case. For example, in *Neuhauser v. A.H. Robins Co.*, 573. F. Supp. 8, 9-10 (S.D. Ind. 1983), the Plaintiff's doctor expressly told her that the product at issue could cause the harm that Plaintiff suffered, and the court noted that Plaintiff's occupation as a medical laboratory technician in finding that she should have discovered the causal connection between her injury and the product sooner. Neither of those facts exists in this case. Mr. Kinsey is not a medical professional, was not even aware of the filter's presence in his body because of a head injury, and was not informed by his doctors that his injuries could have been caused by a defect in the IVC filter. (Ex. A, ¶¶ 4,5, 10). Further, Defendant's citation to *Wojcik v. Almase*, 451 N.E.2d 336, 342 (Ind. Ct. App. 1983), which clearly states that its conclusion is "for the purposes of the present case only," is similarly unpersuasive. Indiana courts addressing issues of discovery have taken a fact-intensive approach to this issue, focusing on what the physicians represented to the plaintiffs, and what causes were emphasized in those representations. *See Degussa Corp.*, 744 N.E.2d at 411. Disputed questions of fact remain as these questions, and, as such, summary judgment should be denied.

## III. Other Non-Tort Claims

### a. Express Warranty Claim

Plaintiff does not intend to proceed based on a theory of breach of express warranty.

**b. Implied Warranty Claim**

Although Defendant generally states that Plaintiff's non-tort claims should be denied, it makes no specific argument as to Plaintiff's claim for Breach of Implied Warranty. Therefore, because Defendant has not argued that summary judgment is appropriate on this claim, it has not met its initial burden, and its motion should be denied. To the extent that Cook may seek to argue that under Indiana law, which does not apply in this case, the implied warranty claims of all plaintiffs' merge into the product liability claims and are therefore also time-barred by the Indiana statute of limitations, such an argument should be denied, because Indiana law does not apply here. Just as the Court should deny Cook's motion for summary judgment as to the Plaintiff's personal injury claims, it should also allow Plaintiff's implied warranty claim to continue. For reasons already described, the time of accrual cannot be determined from the evidence submitted by Cook—because there is none—and this Court should permit discovery before ruling on whether the statute of limitations ran before this case was filed.

**c. Consumer Fraud Claim**

Plaintiff's Master Complaint in this case contains numerous allegations that the Cook Defendants had knowledge of the defects with its IVC Filters yet failed to warn doctors and patients. (*See* Master Complaint at ¶¶ 3, 4, 46, 50, 52, 55, 56, 57, 58, 77, 81-88, 91, 95, 103-106, 113-120 (continued in Plaintiff's SFC at ¶ 14)). Moreover, the tolling provisions included in the Master Complaint at ¶¶ 195-200 support Plaintiff's claims that Cook's withholding of pertinent information prevented Plaintiff from discovering the cause of her injuries. These provisions satisfy the applicable pleading requirements.

Alternatively, if the Court concludes otherwise, it should not dismiss the fraud claims of all Plaintiffs based on an alleged pleading deficiency for which the individual Plaintiffs were not

responsible. This Court should permit amendment in the event that the Court deems the current pleading to be insufficient.

**d. Plaintiffs' Request for Punitive Damages Survives Because is Not a Stand Alone Claim but Rather Derivative of the Claims Supported in this Response.**

To the extent the Court denies Cook's motion with respect to the arguments made above, it should also deny Cook's argument seeking judgment as a matter of law on Plaintiff's derivative request for punitive damages. Cook fails to identify any bases for disposing of the derivative requests for punitive damages other than its bald assertion that, because Plaintiff's substantive claims fail (which they do not), they cannot be maintained as stand-alone claims. While it is true punitive damage requests are not standalone claims, Plaintiffs have demonstrated that there are a genuine issues of material fact with respect to their personal injury tort claims. Therefore, the Court should deny Cook's argument that Plaintiff's request for punitive damages also fail as a matter of law.

## Conclusion

For the reasons stated herein, Plaintiffs respectfully request that the Court deny Cook's Motion for Summary Judgment. In addition, Plaintiffs request all other and further relief as the Court deems just and proper.

Dated: October 29, 2019

Respectfully submitted,

/s/ David C. DeGreeff
Thomas P. Cartmell MO #45366
Jeffrey M. Kuntz MO #52371
David C. DeGreeff MO #55019
WAGSTAFF & CARTMELL LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
816-701-1100
tcartmell@wcllp.com

jkuntz@wcllp.com
ddegreeff@wcllp.com
*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of October, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

/s/ David C. DeGreeff
Thomas P. Cartmell MO #45366
Jeffrey M. Kuntz MO #52371
David C. DeGreeff MO #55019
WAGSTAFF & CARTMELL LLP
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
816-701-1100
tcartmell@wcllp.com
jkuntz@wcllp.com
ddegreeff@wcllp.com
*Counsel for Plaintiffs*