IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE: COOK MEDICAL, INC., IVC
FILTERS MARKETING, SALES PRACTICES
AND PRODUCT LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

This Document Relates to:

Leslie Diaz v. Cook et al, 1:19-cv-00122

## PLAINTIFF'S RESPONSE IN OPPOSITION TO COOK'S OMNIBUS MOTION FOR SUMMARY JUDGMENT

The above-referenced Plaintiff respectfully asks this Court to deny Cook Incorporated, Cook Medical, LLC, and William Cook Europe ApS ("Cook") Motion for Summary Judgement on three grounds. First, the plaintiff's home state (and not Indiana's) choice of law principles and law apply.  Second, there are genuine issues of material fact that Plaintiff's claims are not time barred under Oregon law.  Third, Cook is again attempting to use the Case Category Submission as grounds for dismissal when the agreement between the parties clearly stated that the "Case Category Submission is for the purpose of complying with the Court's Order on the Cook Defendant's Motion for Screening Order and Bellwether Selection Plan only and is not admissible and is not to be considered relevant for any other purpose."

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. On October 2, 2018, the Court entered its Categorization and Screening Order, [Filing No. 9322], ordering all MDL plaintiffs to categorize their cases in one of seven categories and to support those selections with specific medical records.

2. The Case Categorization form expressly states that the "Case Category

Submission is for the purpose of complying with the Court's Order on the Cook Defendant's Motion for Screening Order and Bellwether Selection Plan only and is not admissible and is not to be considered relevant for any other purpose."

3.      Cook has not taken a single deposition, served any interrogatories, or reviewed all of Plaintiff's medical records.

## STATEMENT OF MATERIAL FACTS THAT REMAIN IN DISPUTE

1.      Plaintiff did not know nor could she have known that her injuries were caused by a defective Cook IVC Filter until late 2018 when she was first informed that her filter was a Cook IVC filter and potentially defective. See Exhibit A. Affidavit of Leslie Diaz.

2.      In late 2018, Plaintiff was told that the IVC Filter that had been implanted in her might be defective.  Before 2018, Plaintiff was not aware of the causal relationship between her injuries and the Cook IVC filter and/or the causal relationship between her injury and the conduct of the manufacturer.  Exhibit A.

3.      In late 2018, Plaintiff became aware that the IVC filter that was implanted in her was manufactured by Cook.  Exhibit A.

4.      Plaintiff underwent a partial removal in 2007; however, a significant portion of the filter remains in Plaintiff, continuing to cause injury to this day.  Exhibit A.

## STANDARD OF REVIEW

"[S]ummary judgment procedure is governed by federal law" and "[f]ederal law defines the standard for evaluating the sufficiency of the evidence." *Maroules v. Jumbo, Inc.*, 452 F.3d 639, 645 (7th Cir. 2006). "A district court should grant summary judgment only if the pleadings, depositions, answers to interrogatories, admissions, and affidavits 'show that there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Miller v. A.H. Robins Co.*, 766 F.3d 1102, 1104 (7th Cir. 1985) (quoting Fed. R. Civ. P. 56). In evaluating a motion for summary judgment, the court must view the facts and make all reasonable inferences that flow from them in a light most favorable to the non-moving party. *Zillak v. AstraZeneca LP*, 324 F.3d 518, 520 (7th Cir. 2003).

Whether a claim has been brought within the relevant period of limitations presents an issue of state law. *See In re Bridgestone/Firestone Inc. ATX ATXII, Wilderness Tires Prod. Liab. Litig.*, 2002 WL 31689264, at *2 (S.D. Ind. Nov. 20, 2002) ("As a court sitting in diversity, we must look to state law in deciding all matters of substance, including the operation of the relevant statutes of limitations.") (citing *Horbach v. Kaczmarek*, 288 F.3d 969, 976 (7th Cir. 2002))

## ARGUMENT

**I.** **For Choice of Law Analysis, Seventh Circuit Precedent Holds that Foreign Cases Filed Directly in an MDL Court Are Treated as Having Originated <u>Outside</u> of the MDL District, and Cook has Previously Conceded to the Same. Therefore, Neither Indiana Choice of Law Rules Nor Indiana Law Apply to these Plaintiffs**

**A. In prior briefing before this Court, Cook conceded that plaintiffs' home state choice of law principles should apply.**

On February 2, 2016, Cook moved for summary judgment in *Graham v. Cook*, Case No. 1:15-cv-764, arguing among other things the case was time-barred. [*See generally* Filing No. 1051.] Just like this case, *Graham* was not transferred to this district by the JPMDL; it was directly filed. [*See* Master Case List, p. 8.][1]

---

[1] Given that this volume of the Master Case List spans more than 300 pages, Plaintiff does not attach it here. It is located on the Court's website at the following link: https://www.insd.uscourts.gov/sites/insd/files/MDL%202570%20Schedule%20A.pdf

In a section of its *Graham* brief entitled "Choice of Law Analysis," Cook made clear that direct-filed cases like *Graham* are subject to the choice of law principles of their **home** forum, not the forum of the MDL court:

> When a case based on diversity is part of an MDL and is directly filed in the MDL forum as the result of a direct filing order, courts have found that the "better approach is to treat foreign direct filed cases [i.e., cases originating outside of this Court's judicial district but filed directly into the MDL] as if they were transferred from a judicial district sitting in the state where the case originated." *In re Yasmin*, 2011 U.S. Dist. LEXIS 39820, at *15, *18 (S.D. Ill. April 11,

[Filing No. 1051, at ECF p. 4252.] Cook went on: "Applying this law to the present case leads to the application of Kansas law." [*Id*., at ECF p. 4253.]

Again, in a section of the *Sales-Orr* brief entitled "Legal Standard for Motion to Dismiss and Choice-of-Law Rules," Cook made the exact same concession on this legal issue. [Filing 4186-1, at ECF p. 9193]. Further, in its Order on the Sales-Orr Motion, this Court stated that "[t]his court adopts this approach, as it is in keeping with the rule that the transferee court applies the law of the state in which the transferor court is located. [Filing No. 4918, at ECF p. 11508].

The doctrine of judicial estoppel provides guidance here. As Justice Ginsburg explained: "judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quotation omitted). Judicial estoppel protects the integrity of the judicial process by preventing parties from "playing fast and loose with the courts," and is "intended to prevent improper use of judicial machinery." *Id*. at 750 (quotations omitted). This is precisely what Cook is attempting to do here. Given its prior concession as to the proper choice of law (home state of the plaintiff), the Court should reject Cook's contrary position out of hand.

**B. Seventh Circuit precedent holds that foreign cases filed directly in an MDL are treated as having originated <u>outside</u> of the MDL district. Therefore, neither Indiana choice of law rules nor Indiana law apply to these Plaintiffs.**

In *Dobbs v. Depuy Orthopedics, Inc.,* 842 F.3d 1045 (7th Cir. 2016), a plaintiff from Illinois direct-filed his case in the Northern District of Ohio as part of an MDL. The case was later transferred from the Ohio MDL to the Northern District of Illinois. Despite its direct filing, the Seventh Circuit held that the case originated in Illinois and therefore Illinois choice of law rules applied. *Id.* at 1048.

> Dobbs's claim . . . was filed in the Northern District of Ohio only because the DePuy multidistrict litigation was already in progress there. Dobbs's complaint stated that the Northern District of Illinois was the appropriate venue absent the multidistrict litigation. That advises treating the Northern District of Illinois as the original venue.
>
> In fact, district courts in our circuit have taken that approach: **foreign cases filed directly in a district court as part of ongoing multidistrict litigation are treated as having originated outside of that district.** We ratify that approach here and apply Illinois's choice-of-law rules.

*Id.* at 1048 (emphasis added) (citing, *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 977 F. Supp. 2d 885, 888-89 (N.D. Ill. 2013), and *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 3:09-MD-02100-DRH, 2011 WL 1375011, at *5 (S.D. Ill. Apr. 12, 2011)).

The *Watson Fentanyl* decision—cited with approval by the Seventh Circuit in *Dobbs*—involved another case filed directly in an MDL court sitting in the Northern District of Illinois. 977 F. Supp. 2d at 886. The case concerned an Ohio resident who died in Ohio after using a fentanyl patch that was prescribed, purchased, and administered in Ohio. The Northern District of Illinois MDL court applied Ohio law and rejected attempts to apply Illinois law — even Illinois' choice of law rules.

> [T]he prevailing rule in this situation is that in a case that was directly filed in the MDL transferee court but that originated elsewhere, the law (including choice of law rules) that applies is the law of the state where the case originated. The Court agrees with the cases just cited and concludes that the choice of law rules that apply are those of the state where the case originated.

*Id.* at 888 (internal citations omitted).

The *Watson Fentanyl* MDL court then went on to analyze the meaning of the term "originated":

> **[A] direct-filed case in an MDL proceeding is considered to have originated in the state where the plaintiff purchased and used the prescribed product.** That is how the place of filing is determined in [the] overwhelming majority of product liability cases, and it is a reasonable approach to determining the choice of law issue that has been presented.

*Id.* at 889 (emphasis added). Because the plaintiff was prescribed and used the fentanyl patch at his Ohio residence, the Illinois MDL court ruled that Ohio law should apply to this foreign direct filed case.[2]

*In re Yasmin*—cited with approval by the *Dobbs* and *Watson Fentanyl* courts **and Cook**[3]—involved numerous cases that originated outside of that court's judicial district and that were filed directly in the Southern District of Illinois MDL. Similar to Cook's faulty reasoning, the *Yasmin* plaintiffs argued that because the court was sitting in diversity in Illinois, Illinois was the proper forum and Illinois choice of law principals should control. *Id.* Judge Herndon rejected that argument and emphasized in bold type:  **"Illinois choice of law principals do not control simply because this MDL Court is sitting in diversity in Illinois."** *Id.* (emphasis in original).  Judge Herndon further wrote:

---

[2] Similar to the approach taken by the Seventh Circuit, the *Watson Fentanyl* MDL court also noted that it could have applied California choice of law rules, because Plaintiffs' complaint suggested that they would have filed their lawsuit in California.  But even applying California choice of law rules, the Illinois MDL court concluded that Ohio law should apply and **not** the law of the MDL forum.  *Id.* at 889-90.

[3] Filing No. 1051, at ECF p. 4252.

> The Court concludes that the better approach is to treat foreign direct filed cases as if they were transferred from a judicial district sitting in the state where the case originated.  For purposes of this analysis, the Court considers the originating state to be the state where the plaintiff purchased and was prescribed the subject drug.  Thus, for a foreign direct filed member action involving a plaintiff that purchased and was prescribed the subject drug in Tennessee, the Court will treat that plaintiff's claims as if they were transferred to this MDL from a district court in Tennessee.

*Id.,* at *6. *See also In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.,* 76 F. Supp. 3d 294, 303 (D. Mass. 2015) ("The home forum designation of the direct filing plaintiffs is the best evidence I have of what these plaintiffs would have done absent direct filing.  Just as Mississippi plaintiffs would have had a choice between at least two proper forums in the absence of direct filing, so too do they have such an option with the direct filing procedure.  I will therefore consider the forum that the direct filing plaintiffs designated on their short form complaints as the originating forum for the choice of law analysis."); *Wahl v. General Electric Co.,* 983 F.Supp. 2d 937, 943 (M.D. Tenn. 2013) ("Most of the courts that have considered this peculiar procedural posture have stated that it is appropriate to apply choice of law rules of the 'originating' jurisdiction [i.e. where the case would have been brought but for the CMO permitting direct filing], rather than the choice of law rules of the MDL Court.  These courts have generally reasoned that the direct filing procedure is simply designed to promote judicial economy and conserve the parties' resources, not to alter the choice of law rules."); *In re Avandia Marketing, Sales Practices and Prods Liability Litig.,* 2012 WL 3205620, at *2 (E.D. Pa. August 7, 2012) ("The Court has concluded, as have other MDL courts, that such [direct filed] cases should be governed by the law of the states where Plaintiffs received treatment and prescriptions for Avandia.  This ruling will promote uniform treatment between those Plaintiffs whose cases were transferred into the MDL from their home states and those who filed directly into the MDL.").

Thus, there are two different approaches for examining choice of law issues for direct filed cases in this MDL: (1) focus on the court designated by the plaintiff in the Short Form Complaint as the place of proper venue as discussed in the *Dobbs, In re Fresenius Granuflo,* and *Wahl* cases (and as Cook already argued); or (2) focus on the place where the plaintiff received the IVC filter prescription and treatment as held in the *In re Watson Fentanyl, In re Yasmin*, and *In re Avandia* cases. Under both approaches, neither Indiana choice of law rules nor Indiana law apply to these cases. It is undisputed that Plaintiff's Short Form Complaint unambiguously listed venue choices—just as the plaintiff in *Graham*—at locations outside of Indiana. See Complaint. **Exhibit B.** Moreover, Plaintiff purchased and was prescribed her IVC filter outside of Indiana. [*Id.*] Therefore, the Court should reject Cook's attempt to apply Indiana law.

## II.     Defendants' Motion for Summary Judgment should be denied because it is premature.

Federal Rule of Civil Procedure 56(c) mandates that motions for summary judgment must be supported by factual contentions found in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). Notably, "Summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery." *Smith v. Amada Machine Tools America, Inc.*, 2017 WL 4418666, at *3 (E.D. Mich. Feb. 8, 2017); *see also Holland v. FCA US LLC*, 656 Fed.Appx. 232, 235 (6th Cir. Aug. 16, 2016) ("A pre-discovery motion for summary judgment is premature, as granting summary judgment absent any opportunity for discovery offends concepts of fundamental fairness."); *El-Shabazz v. Wehrmeyer*, 2019 WL 1675700, at *5 (S. D. Ind. Apr. 17, 2019) ("Thus far, no discovery has taken place, so summary judgment would be premature.").

In the instant case, Cook claims in its memorandum that this Court should rule on its motion for summary judgement based solely on a limited and select number of medical records. [Filing No. 11922, at ECF p. 86619.]  These are medical records that in no way convey any information regarding Plaintiff's knowledge of the causal connection between her injuries and the defective nature of the Cook IVC Filter. What is more, Cook has not taken a single deposition, served a single interrogatory, or even reviewed all of Plaintiff's medical records.  Without taking any of those critical discovery steps, Cook, in a motion for summary judgement that includes 26 Plaintiffs from various states and excludes the relevant state laws asks this Court to prematurely grant its motion. In its sweeping motion, Cook does not even take the time to point the Court to any facts to buttress its arguments. *Roe v. Doe*, 28 F.3d 404, 406 (4th Cir. 1994).  As such, this Court should reject Cook's Motion for Summary Judgment.

### III.    There is a Genuine Issue of Material Fact that Plaintiff filed her Personal Injury Claims within Oregon's Statute of Limitations.

Under Oregon law, "a product liability civil action for personal injury or property damage must be commenced not later than two years after the plaintiff discovers, or reasonably should have discovered, the personal injury or property damage and the causal relationship between the injury or damage and the product, or the causal relationship between the injury or damage and the conduct of the defendant."  O.R.S. § 30.905.

Here, there is a genuine issue of material fact that Plaintiff did not discover until the end of 2018 the causal connection between her injuries and the defective Cook IVC Filter. See **Exhibit A**.  Plaintiff was not aware that the IVC filter implanted in her was manufactured by Cook until late 2018.  On January 14, 2019, Plaintiff filed her complaint against Cook, only months after discovering the causal connection between her injuries and Cook's defective IVC

Filter. See Complaint. **Exhibit B**.  Further, while Plaintiff's IVC filter was partially removed in 2007, a significant portion of the IVC filter remains implanted in Plaintiff, continuing to cause her injury.  See **Exhibit A**.

Moreover, Cook Defendants' actions and fraudulent conduct in promoting the use of the Cook IVC filters, including the affirmative misrepresentation and omissions regarding the efficacy and safety of such products contributed to Plaintiff's inability to discover the defective IVC filter until after late 2018.  Accordingly, Plaintiff had no reason to believe the Cook filter was the cause of her injuries because she did not discover that the device was defective until years later.  **Exhibit A.**  Cook has the burden in a motion for summary judgment, and at a minimum, the lack of discovery on Plaintiff's case is sufficient to demonstrate that Cook has failed to meet its burden.

Allegations of Cook's fraud have been proffered since the onset of this litigation. For example, the Master Complaint contains the following averments:

44. While not inclusive of all medical studies published during the relevant time period, the above references show that the Defendants *failed to disclose* to physicians, patients and/or Plaintiffs that its Cook Filters were subject to breakage, tilt, inability of removal, and migration even though they knew or should have known the same was true.

45. At all times relevant hereto, the Defendants continued to promote the Cook Filter as safe and effective even when inadequate clinical trials had been performed to support long or short to safety and/or efficacy.

46. The Defendants *concealed* the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the Cook Filters, as aforesaid.

…

114. Defendants engaged in *unfair, unconscionable, deceptive, fraudulent and misleading* acts or practices in violation of all states' consumer protection laws, identified below.

115. Through its *false, untrue and misleading* promotion of Cook's IVC Filters, Defendants induced Plaintiffs to purchase and/or pay for the purchase of Cook's IVC Filters.

10

116. Defendants *misrepresented* the alleged benefits and characteristics of Cook's IVC Filters; *suppressed, omitted, concealed, and failed to disclose* material information concerning known adverse effects of Cook's IVC Filters; *misrepresented* the quality and efficacy of Cook's IVC Filters as compared to much lower-cost alternatives; *misrepresented* and advertised that Cook's IVC Filters were of a particular standard, quality, or grade that they were not; *misrepresented* Cook's IVC Filters in such a manner that later, on disclosure of the true facts, there was a likelihood that Plaintiffs would have opted for an alternative IVC Filter or method of preventing pulmonary emboli.

117. Defendants' conduct created a likelihood of, and in fact caused, confusion and misunderstanding. Defendants' conduct *misled, deceived*, and damaged Plaintiffs, and Defendants' *fraudulent, misleading, and deceptive* conduct was perpetrated with an intent that Plaintiffs rely on said conduct by purchasing and/or paying for purchases of Cook's Filters. Moreover, Defendants knowingly took advantage of Plaintiffs, who were reasonably unable to protect their interests due to ignorance of the harmful adverse effects of Cook's IVC Filters.

118. Defendants' conduct was *willful, outrageous, immoral, unethical, oppressive, unscrupulous, unconscionable*, and substantially injurious to Plaintiffs and offends the public conscience.  Document 213 Filed 01/30/15 (emphasis added). These averments were supported with evidence disclosed at the Brand trial that began January 15, 2019 (1:14-ML-2570). For example:

My personal opinion is, if the new is not considered safe, the current should be stopped, based on theoretical calculations and testing.

We are trying to get some knowledge of the movement of a cava with an implanted filter, but nobody seems to have a dynamic evaluation.

To me it is very important that we at WCE can have the same conclusion as what was send to the FDA.

We do not want to hide that the filter broke at a test at a clinical relevant diameter, but to use the result to prove the safety….

Trial Exhibit PX-1148.

… the Celect Filter may increase the risk of migration during use compared to the Tulip.
. . .

"Without further detailed analysis, it was my conclusion that the new filter would be unlikely to fulfil the conformity assessment requirements unless some supportive human clinical data is established"
. . .

11

The risk analysis and the clinical evaluation have identified some safety concerns associated with the new design of the filter. The literature has been reviewed extensively, and discussions have been going on for the past 3 years. However, to date it has not been possible to find any clear evidence of the existing available data that could clarify and justify the safety risks identified. If you can provide some new evidence or inputs which can clarify these safety concerns, we would be happy to take these inputs into considerations [sic].

Trial Exhibit 1099.

Q Now, you told this jury a couple of days ago, essentially, that you believed the email message that attached this manuscript, that it was an effort by upper management -- by upper management to hide a picture of the sheep aorta that had perforated, correct?

A And that was my opinion.

January 15, 2019 Trial Testimony of Harlan M. Krumholz, M.D., 1079:23 – 1080:3.

Q -- can you explain -- you've already explained the concordance between Dr. Timperman and Dr. Gordon. There's obviously a discrepancy -- well, first of all, there's a big discrepancy between what Cook told the FDA and what all three of these sets of doctors found. Would you agree?

A That's true.

Trial Testimony of Harlan M. Krumholz, M.D., 577:18-23.

A They concluded that such a trial would be feasible, that in their -- based on what they found, they said, yeah, this went around the block. We think there's no reason to think it can't work. You could do it.

Q So did Cook then sponsor or conduct a larger randomized-control trial on the Celect after they determined it was feasible?

A Not that I'm aware.

Trial Testimony of Harlan M. Krumholz, M.D., 709:2-9.

Let's just put on the screen for a moment Plaintiff's Exhibit 1841.

This is a document we discussed yesterday regarding the observations -- a summary of observations from the OUS clinical investigators, including observations of 8, 6, 10, 5, and greater than 3 millimeters outside the IVC. In this letter from April of 2007, did Cook disclose this information regarding these struts outside the wall from the OUS study to the FDA?

A They did not.

Q Are you aware, based on your review of the communications between Cook and the FDA, of any communication at any time where Cook revealed to the FDA that there were these multiple struts outside the wall between 3 and 10 millimeters?

A I'm not aware of any communication in which they told the FDA that there had been these penetrations described by their site investigators.

Trial Testimony of Harlan M. Krumholz, M.D., 630:19 – 631:10.

A No, it's not possible to make an informed decision because some of the key information was not in the public domain.

Q Known to Cook, but not disclosed?

A That's right.

Trial Testimony of Harlan M. Krumholz, M.D., 954:23 – 955:1.

Q In the 2009 time frame, did doctors know the dangers that the Celect posed in terms of perforation and -- perforation? Was that disclosed by Cook?

A No.

Q Was there publicity in 2009 to put doctors on alert that the Celect filter had this tendency to perforate the vena cava –

A No.

Q -- at a high rate?
A No.

Trial Testimony of Harlan M. Krumholz, M.D., 955:18 – 956:2.

Q Have you read the final reported of OUS?

A Yes, sir.

Q Does it show fracture --

A No, sir.

Q -- that particular filter?

A It doesn't mention any fracture, sir.

13

Q Did they disclose that?

A No, sir.

January 19, 2019 Trial Testimony of Gregory I. Gordon, M.D., 1674:25 – 1675:7.

These documents and portions of trial testimony are just a mere smattering of evidence showing a genuine issue of material fact that Cook committed fraud upon the medical community. As such, this Court should reject Cook's Motion for Summary Judgment.

**IV.    Plaintiff filed her Personal Injury Claims within Indiana's Statute of Limitations.**

Although it is true that Indiana's personal injury statute of limitations is two years, Cook admits that Indiana has a discovery rule:

> To determine when a reasonably diligent plaintiff should have discovered the claimed injury, Indiana courts ask "whether a reasonable person in the [plaintiff's] position . . . possessing the information [plaintiff] did when [she] did, could have discovered through the exercise of ordinary diligence that the product [caused her harm]."

Cook Defendants' Memorandum in Support of Omnibus Motion for Summary Judgment, [Filing No. 11922, ECF pages 86623-86624] (citing *Horn v. A.O. Smith Corp.*, 50 F.3d 1365, 1370 (7th Cir. 1995).

Plaintiff suffered perforation of the IVC filter struts and had the filter only partially removed, and a significant portion of the IVC filter remains in Plaintiff today, causing continuous harm.  **Exhibit A.** This constituted ongoing injuries that Plaintiff was not aware were caused by a defective device.  In addition, Plaintiff had no reason to know "that there was a 'reasonable possiblity' that the [product] harmed her and she should therefore make further inquiry into her legal rights."  *In re Mirena IUD Prods. Liab. Litig. (Truitt)*, 29 F. Supp. 3d 345, 352 (S.D.N.Y. 2014). A plaintiff must "have discovered through the exercise of ordinary diligence that the product [caused her harm]." *Horn v. A.O. Smith Corp.*, 50 F.3d 1365, 1370 (7th Cir. 1995). "Generally, though, the plaintiff's suspicion, standing alone, about the source of her injury is

14

insufficient to trigger the onset of the limitations period." *Nelson v. Sandoz Pharms. Corp.*, 288 F.3d 954, 966 (7th Cir. 2002)(citation omitted). Plaintiff had no reason to believe the Cook filter was the cause of her injuries because she did not discover that the device was defective until years later. **Exhibit A.** Cook has the burden in a motion for summary judgment, and at a minimum, the lack of discovery on Plaintiff's case is sufficient to demonstrate that Cook has failed to meet its burden.

In addition, Plaintiff has alleged fraudulent conduct on the part of Cook. First, under Indiana law, this doctrine estops a defendant from utilizing the statute of limitations as a defense when they have committed fraud:

> The doctrine of fraudulent concealment operates to estop a defendant from asserting a statute of limitations defense when that person, by deception or a violation of a duty, has concealed material facts from the plaintiff thereby preventing discovery of a wrong. Thus, equitable estoppel can arise either from active efforts to conceal the malpractice or from failure to disclose material information when a fiduciary or confidential relationship exists between the physician and patient. The physician's failure to disclose that which he knows, or in the exercise of reasonable care should have known, constitutes constructive fraud.

*Hughes v. Glaese*, 659 N.E.2d 516, 518 (Ind. 1995). See also, *Hospital Corp. v. Hiland*, 547 N.E.2d 869, 873 (Ind.App. 1989); *Cacdac v. Hiland*, 561 N.E.2d 758 (Ind. 1990); *Van Dusen v. Stotts*, 712 N.E.2d 491 (Ind. 1999). When the concealment is active, the period of estoppel is not affected by the date of termination of the relationship but continues for a reasonable time after "*the plaintiff discovers the alleged malpractice* or *discovers information* which in the exercise of reasonable diligence would lead to discovery of the malpractice." 659 N.E.2d at 518 (emphasis added, citation omitted).

As discussed in detail above, Cook Defendants' actions and fraudulent conduct in promoting the use of the Cook IVC filters, including the affirmative misrepresentation and omissions regarding the efficacy and safety of such products contributed to Plaintiff's inability

to discover the defective IVC filter until after late 2018. As such, this Court should reject Cook's Motion for Summary Judgment.

### V.      Cook's Reliance on the Categorization Form is Misplaced.

Cook cannot use the Categorization Case form as grounds for a Motion for Judgment on the Pleadings. The Categorization Case form clearly states that it "is not admissible and is not to be considered relevant for any other purpose." The "Case Category Submission is for the purpose of complying with the Court's Order on the Cook Defendant's Motion for Screening Order and Bellwether Selection Plan only . . . ." Reliance on the Categorization form is a breach of the party's agreement and such behavior should not be permitted by this Court. Furthermore, Cook cannot point to any information in the Plaintiff Profile Form that Plaintiff knew of the causal connection between her injuries and Cook's defective IVC Filter until the end of 2018.

Because Cook cannot rely on the Categorization form and the PFS does not supply any support for Cook's tortured arguments, this Court should deny the motion.

### CONCLUSION

For choice of law analysis, the law of the Seventh Circuit is that "foreign cases filed directly in a district court as part of ongoing multidistrict litigation are treated as having originated outside of that district." *Dobbs*, 842 F.3d at 1048. As a matter of law, the Court should reject Cook's attempt to apply Indiana choice of law rules and Indiana law to this direct filed Plaintiff. The Court should also deny Cook's Motion for Summary Judgment in its entirety. Alternatively, as there are several genuine issues of material facto, if the Court is not so inclined to deny the Motion outright it should stay its ruling pending further fact discovery.

Date:  October 29, 2019

*/s/ Michael J. Quillin*
Michael J. Quillin
O'Leary, Shelton, Corrigan,
Peterson, Dalton & Quillin, LLC
1034 S. Brentwood Blvd., PH 1-A. 23rd Floor
St. Louis, MO 63117
Telephone: (314) 405-9000
Facsimile: (314) 405-9999
Email: quillin@osclaw.com
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on 29th of October, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notifications of such filing to the CM/ECF participants registered to receive service in this MDL.

*/s/ Michael J. Quillin*
Michael J. Quillin

18