UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

IN RE COOK MEDICAL, INC. IVC FILTERS      Case no. 1:14-ml-2570-RLY-TAB
MARKETING, SALES PRACTICES AND      MDL No. 2570
PRODUCTS LIABILITY LITIGATION

_____

This document relates to:
CASE NO. 1:19-cv-01018- RLY-TAB (BAILEY HOWARTH)

_____

**PLAINTIFF BAILEY HOWARTH'S MEMORANDUM
IN OPPOSITION TO COOK DEFENDANTS' OMNIBUS MOTION
FOR SUMMARY JUDGMENT ON STATUTE
OF LIMITATIONS GROUNDS FOR 26 CASES**

## INTRODUCTION

Plaintiff, Bailey Howarth's approved Short Form Complaint (incorporating The Master Complaint by reference) was direct filed in MDL No. 2570 on 3-13-2019 as permitted in this MDL. See Filed Short Form Complaint filed 3-13-2019 attached hereto as Exhibit "A".

Plaintiff Bailey Howarth had a Gunther Tulip Vena Cava Filter, manufactured by defendant Cook, surgically implanted on 5-31-2006 in New York. See operative report dated 5-31-2006 by Dr. Heena Rajdeo at Westchester Medical Center, Valhalla, NY with Cook IVC filter product identification, attached hereto as Exhibit "B". This same Cook IVC filter was surgically removed in New York on 3-30-2016. See operative report dated 3-30-2016 by Dr. Ralph Clement Darling at Albany Medical Center Hospital, Albany, NY with pathology report, attached hereto as Exhibit "C". The filter was found to have 3 prongs that perforated the vena cava prior to removal. See operative report, Exhibit "C" hereto.

Plaintiff was a resident of the State of New York when this IVC filter was implanted at Westchester Medical Center, which is located in Valhalla, New York. The surgeon who implanted this IVC filter was a surgeon licensed and practicing in New York State. Plaintiff underwent surgical removal of the IVC filter in New York at Albany Medical Center on 3-30-2016. At time of surgical removal, plaintiff was, and still is, a resident of the State of New York.

The cases contained in MDL No. 2570 were either transferred by the Judicial Panel on Multidistrict Litigation (JPML) to this designated Court, were transferred to this Court after being filed in their home districts following the JPML order consolidating this litigation into this MDL Court or were foreign cases direct filed into this MDL as permitted.

Plaintiff, Bailey Howarth filed the mandated Short Form Complaint reciting that plaintiff was a New York resident at the time of implant, at the time of injury and at the time the complaint was filed. Paragraph 7 of the filed Short Form Complaint requests a designation as to which venue would be proper absent direct filing, and plaintiff identified the US District Court, Southern District of New York as that venue. See Short Form Complaint Ex. "A". The basis of jurisdiction identified in plaintiff's filed Short Form Complaint is Diversity of Jurisdiction.

The Cook Defendants now move for summary judgment on statute of limitations grounds to dismiss 26 cases identified on "Exhibit A" attached to their motion. Plaintiff, Bailey Howarth's action is identified as no. 23 in Cook's Exhibit A attached to their instant motion. The Cook Defendants argue that Indiana's 2 year statute of limitations should apply to time bar cases such as plaintiff's complaint that were filed using their longer home state statute of limitations.

Plaintiff, Bailey Howarth, in direct filing her Short Form Complaint has relied upon the prior decisions of this MDL Court in deciding to direct file her action rather than simply file in USDC, Southern District of New York. As will be discussed, this Court has already determined

in statute of limitations decisions, that the originating state for foreign direct filed cases in this MDL is the home state of the plaintiff (New York in the instant case) and not Indiana. It would be prejudicial and inequitable to plaintiff Howarth, as well as other similarly situated foreign direct filed cases, to change the law of the case on this legal issue after having made rulings contrary to Cook Defendants' current position (which is contrary to Cook's position in previous motions).

Plaintiff, Bailey Howarth, case no. 1:14-ml-2570-RLY-TAB opposes the Defendants' motion for summary judgment in all respects.

## <u>STATEMENT OF MATERIAL FACTS IN DISPUTE</u>

1.      It is disputed that plaintiff, Howarth's direct filing of her complaint in this MDL changes its origination venue from the Southern District of New York, as designated in her complaint, to this MDL Court.

2.      It is disputed that plaintiff, Howarth's complaint was not timely filed as a foreign direct filed case from New York, which has a longer statute of limitations than Indiana.

3.      It is disputed that plaintiff, Howarth, waived applicable choice of law to be applied by this MDL Court simply by direct filing her complaint as permitted in MDL No. 2570.

4.      It is disputed that plaintiff, Howarth's complaint filed on 3-13-2019 in this Court is time-barred for statute of limitations purposes for any of the alleged causes of action.

5.      It is disputed that Indiana's 2 year statute of limitation applies to Plaintiff Howarth's foreign direct filed action despite the fact plaintiff Howarth designated the venue as the Southern District of New York absent direct filing.

6.      It is disputed that the Cook Defendants have accurately described their "Exhibit A" list of cases by alleging in paragraph 2 of their "Statement of Undisputed Material Facts" that

"A short description of categories selected in each plaintiff's Categorization Form" was provided in said Exhibit A, when it is absent.

## STATEMENT OF UNDISPUTED FACTS

1. It is undisputed that plaintiff Howarth was a resident of the State of New York when her Cook IVC filter was implanted.

2. It is undisputed that plaintiff Howarth had her Cook IVC filter implanted by a New York licensed surgeon in a New York hospital.

3. It is undisputed that plaintiff Howarth had her same Cook IVC filter surgically removed by a New York licensed surgeon in a New York hospital.

4. It is undisputed that the Cook IVC filter placed into plaintiff Howarth was sold and prescribed in New York and outside of Indiana.

5. It is undisputed that the Cook IVC filter placed into plaintiff Howarth was surgically removed in an open procedure with 3 prongs of said filter having perforated her vena cava.

6. It is undisputed that plaintiff Howarth suffered her Cook IVC filter injury in New York State.

7. It is undisputed that Plaintiff Howarth's designated the venue in her Short Form Complaint as the Southern District of New York.

8. It is undisputed that the Cook Defendants have not taken any deposition, served any interrogatories or reviewed the entirety of the pertinent medical records for plaintiff, Bailey Howarth's individual action.

### The Cook Defendants have failed to meet their burden on summary judgment.

It is well established that a party moving for summary judgment has the burden of proving under federal law, that there is no genuine factual dispute in favor of non-movant. Under

Seventh Circuit law and federal law generally, "Summary judgment is appropriate if there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law." *Driveline Systems, LLC v. Arctic Cat, Inc.,* 936 F3d 576 (7th Cir. 2019) citing *Dunderdale v. United Airlines, Inc.,* 807 F3d 849 (7th Cir. 2015).

The Court must view the evidence, and draw all reasonable inferences, in the light most favorable to the non-moving party without assessing the credibility of witnesses, choosing between competing reasonable inferences and without balancing the relative weight of conflicting evidence. *Driveline Systems, et.al, at 579.*

A party moving for summary judgment must prove to the reviewing Court that the pleadings, depositions, interrogatory answers, admissions and affidavits demonstrate there is no genuine issue of material fact as a matter of law. *Fed. R. Civ. P* 56(c), *Miller v. A.H. Robins Co, Inc.,* 766 F2d 1102 (7th Cir. 1985) at p. 1104.

In this action, the Cook Defendants have failed to support their motion for summary judgment by citations to the factual evidentiary record rather than rely on hearsay declarations in the form of Case Categorization forms, which are not admissible as evidence, nor were intended to be used as such when imposed. This does not pass Rule 56 muster and for this reason alone, Cook's motion must fail.

### The Seventh Circuit Court of Appeals has established and ratified the method of determining the originating Court in direct filed MDL jurisdictions.

In the instant motion to grant summary judgment, the Cook Defendants' allege that because certain actions, such as plaintiff's herein, were direct filed in USDC, Southern District of Indiana as permitted in this MDL, that this Court has already determined it is an "originating Court" that has reserved "complete authority" over a direct filed case. Defendants point to this Court's Entry for June 13, 2019 (See, Document No.11131), in which the Court discusses the

issue of *Lexecon* remands to the individual plaintiff's home district for trial, and states that this Court would be the authority for whether a case is remanded or not. The entire context of the Court's referral to "complete authority" over direct filed cases deals only with the *Lexecon* issue of remand for trial. It is plaintiff's understanding that the Court's finding in its Entry for June 13, 2019 (Document No. 11131) dealt only with *Lexecon* related issues of remand after discovery and did not examine or decide any issue relative to which statute of limitations may apply to a particular case.

For the record and notwithstanding the Court's assertion of "complete authority", there has never been a waiver of *Lexecon* rights to remand by the plaintiff herein.

The Cook Defendants' assert that when there is direct filing of a foreign case into this MDL that Indiana must be the forum state for statute of limitations purposes. However, the flawed logic of the Defendants is underscored by their conspicuous omission of Seventh Circuit and other decisions that legally establish the applicable statute of limitations is governed by the jurisdiction where the case would have been filed absent direct filing into this MDL.

### Seventh Circuit precedent holds that foreign cases filed directly in an MDL are treated as having originated outside of the MDL district.   Therefore, neither Indiana choice of law rules nor Indiana law apply to these Plaintiffs.

In *Dobbs v. Depuy Orthopedics, Inc.,* 842 F.3d 1045 (7th Cir. 2016), a plaintiff from Illinois direct-filed his case in the Northern District of Ohio as part of an MDL. The case was later transferred from the Ohio MDL to the Northern District of Illinois. Despite its direct filing, the Seventh Circuit held that the case originated in Illinois and therefore Illinois choice of law rules applied. *Id.* at 1048.

Dobbs's claim . . . was filed in the Northern District of Ohio only because the DePuy multidistrict litigation was already in progress there. Dobbs's complaint stated that the Northern District of Illinois was the appropriate venue absent the multidistrict litigation. That advises treating the Northern District of Illinois as the original venue.

In fact, district courts in our circuit have taken that approach: **foreign cases filed directly in a district court as part of ongoing multidistrict litigation are treated as having originated outside of that district.** We ratify that approach here and apply Illinois's choice-of-law rules.

*Id.* at 1048 (emphasis added) (citing, *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 977 F. Supp. 2d 885, 888-89 (N.D. Ill. 2013), and *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 3:09-MD-02100-DRH, 2011 WL 1375011, at *5 (S.D. Ill. Apr. 12, 2011)).

Similarly, the *Watson Fentanyl* decision—cited with approval by the Seventh Circuit in *Dobbs*—involved another case filed directly in an MDL court sitting in the Northern District of Illinois. 977 F. Supp. 2d at 886. The case concerned an Ohio resident who died in Ohio after using a fentanyl patch that was prescribed, purchased, and administered in Ohio. The Northern District of Illinois MDL court applied Ohio law and rejected attempts to apply Illinois law — even Illinois' choice of law rules.

[T]he prevailing rule in this situation is that in a case that was directly filed in the MDL transferee court but that originated elsewhere, the law (including choice of law rules) that applies is the law of the state where the case originated. The Court agrees with the cases just cited and concludes that the choice of law rules that apply are those of the state where the case originated.

 *Id.* at 888 (internal citations omitted).

The *Watson Fentanyl* MDL court then went on to analyze the meaning of the term "originated":

> **[A] direct-filed case in an MDL proceeding is considered to have originated in the state where the plaintiff purchased and used the prescribed product.** That is how the place of filing is determined in [the] overwhelming majority of product liability cases, and it is a reasonable approach to determining the choice of law issue that has been presented.

*Id.* at 889 (emphasis added). Because the plaintiff was prescribed and used the fentanyl patch at his Ohio residence, the Illinois MDL court ruled that Ohio law should apply to this *foreign direct filed case*.[1]

In re Yasmin—cited with approval by the *Dobbs* and *Watson Fentanyl* courts **and Cook[2]**—involved numerous cases that originated outside of that court's judicial district and that were filed directly in the Southern District of Illinois MDL. Similar to Cook's faulty reasoning, the *Yasmin* plaintiffs argued that because the court was sitting in diversity in Illinois, Illinois was the proper forum and Illinois choice of law principals should control. *Id.* Judge Herndon rejected that argument and emphasized in bold type: **"Illinois choice of law principals do not control simply because this MDL Court is sitting in diversity in Illinois."** *Id.* (emphasis in original).  Judge Herndon further wrote:

> The Court concludes that the better approach is to treat foreign direct filed cases as if they were transferred from a judicial district sitting in the state where the case originated.  For purposes of this analysis, the Court considers the originating state to be the state where the plaintiff purchased and was prescribed the subject drug.  Thus, for a foreign direct filed member action involving a plaintiff that purchased and was prescribed the subject drug in Tennessee, the Court will treat that plaintiff's claims as if they were transferred to this MDL from a district court in Tennessee.

---

[1] Similar to the approach taken by the Seventh Circuit, the *Watson Fentanyl* MDL court also noted that it could have applied California choice of law rules, because Plaintiffs' complaint suggested that they would have filed their lawsuit in California.  But even applying California choice of law rules, the Illinois MDL court concluded that Ohio law should apply and **not** the law of the MDL forum.  *Id.* at 889-90.

[2] Filing No. 1051, at ECF p. 4252.

*Id.,* at *6. *See also In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.,* 76 F. Supp. 3d 294, 303 (D. Mass. 2015) ("**The home forum designation of the direct filing plaintiffs** is the best evidence I have of what these plaintiffs would have done absent direct filing.  Just as Mississippi plaintiffs would have had a choice between at least two proper forums in the absence of direct filing, so too do they have such an option with the direct filing procedure.  I will therefore consider the forum that the direct filing plaintiffs designated on their short form complaints as the originating forum for the choice of law analysis."); *Wahl v. General Electric Co.,* 983 F.Supp. 2d 937, 943 (M.D. Tenn. 2013) ("Most of the courts that have considered this peculiar procedural posture have stated that it is appropriate to apply choice of law rules of the 'originating' jurisdiction [i.e. where the case would have been brought but for the CMO permitting direct filing], rather than the choice of law rules of the MDL Court.  These courts have generally reasoned that the direct filing procedure is simply designed to promote judicial economy and conserve the parties' resources, not to alter the choice of law rules."); *In re Avandia Marketing, Sales Practices and Prods Liability Litig.,* 2012 WL 3205620, at *2 (E.D. Pa. August 7, 2012) ("The Court has concluded, as have other MDL courts, that such [direct filed] cases should be governed by the law of the states where Plaintiffs received treatment and prescriptions for Avandia.  This ruling will promote uniform treatment between those Plaintiffs whose cases were transferred into the MDL from their home states and those who filed directly into the MDL.").  (Emphasis added).

Thus, there are two different approaches for examining choice of law issues for direct filed cases in this MDL: (1) focus on the court designated by the plaintiff in the Short Form Complaint as the place of proper venue as discussed in the *Dobbs, In re Fresenius Granuflo,* and *Wahl* cases (and as Cook already argued); or (2) focus on the place where the plaintiff received the IVC filter prescription and treatment as held in the *In re Watson Fentanyl, In re Yasmin*, and *In re Avandia*

cases. Under both approaches, neither Indiana choice of law rules nor Indiana law apply to this case. It is undisputed that Plaintiff's Short Form Complaint unambiguously listed venue choices— just as the plaintiff in *Graham*—in another state (New York in the instant action) and *not* Indiana. See, Plaintiff Bailey Howarth's filed Short Form Complaint attached hereto as Exhibit "A" at paragraph 7.

As stated above, Plaintiff Bailey Howarth was and is a New York resident at all times pertinent to her claim. She was prescribed the Cook Gunther Tulip IVC filter via surgical implant in a New York State hospital. Her same IVC filter was surgically removed in a New York State hospital, which establishes the accrual of the injury. The only reason her case is in this Court is due to its designation as an MDL venue for this litigation.  Therefore, the Court should reject Cook's attempt to apply Indiana law to this New York plaintiff.

Plaintiff, Bailey Howarth, specifically chose New York as its home state venue in the Short Form Complaint. As a foreign direct filed case, the <u>true</u> <u>forum</u> state would be New York, NOT Indiana.  Otherwise, the law in *Dobbs, et. al. (and used by this Court in previous decisions)* that a foreign filed case is deemed to originate in its home state established by the Seventh Circuit would not make sense legally or logically.

<u>**In prior briefing before this Court, Cook conceded that plaintiffs'**</u>
<u>**home state choice of law principles should apply.**</u>

On February 2, 2016, Cook moved for summary judgment in *Graham v. Cook*, Case No. 1:15-cv-764, arguing among other things the case was time-barred. [*See generally* Filing No.

1051.] Just like this case, *Graham* was not transferred to this district by the JPMDL; it was directly filed. [*See* Master Case List, p. 8.][3]

In a section of its *Graham* brief entitled "Choice of Law Analysis," Cook made clear that direct-filed cases like *Graham* are subject to the choice of law principles of their **home** forum, not the forum of the MDL court:

> When a case based on diversity is part of an MDL and is directly filed in the MDL forum as the result of a direct filing order, courts have found that the "better approach is to treat foreign direct filed cases [i.e., cases originating outside of this Court's judicial district but filed directly into the MDL] as if they were transferred from a judicial district sitting in the state where the case originated." *In re Yasmin,* 2011 U.S. Dist. LEXIS 39820, at *15, *18 (S.D. Ill. April 2011) (emphasis added) [Filing No. 1051, at ECF p. 4252.] Cook went on to: "Applying this law to the present case leads to the application of Kansas law." [*Id.*, at ECF p. 4253.]

Indeed, **this Court** *applied* Cooks' analysis and applied Kansas law to consider **the statute of limitations applicable** in this direct filed case. See, Entry on the Cook Defendants' Motion for Summary Judgment; Case 1:15-cv-00764-RLY-TAB Document 164 Filed 8-02-17.

The doctrine of judicial estoppel provides guidance here. As Justice Ginsburg explained: "judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quotation omitted). Judicial estoppel protects the integrity of

---

[3] Given that this volume of the Master Case List spans more than 300 pages, Plaintiff does not attach it here. It is located on the Court's website at the following link: https://www.insd.uscourts.gov/sites/insd/files/MDL%202570%20Schedule%20A.pdf

the judicial process by preventing parties from "playing fast and loose with the courts," and is "intended to prevent improper use of judicial machinery." *Id*. at 750 (quotations omitted). This is precisely what Cook attempts to do here. Given its prior position on choice of law, the Court should reject Cook's contrary position out of hand.

### This Court has previously held that cases that originated outside of this Court's judicial district but were directly filed in this MDL are treated as if they were transferred from the judicial district in the state in which the case originated.

Plaintiff, Bailey Howarth, along with the other foreign direct filed cases, have *relied* upon the law of the case as already established by this Court prior to its direct filing of the Short Form Complaint on 3-13-2019. See Short Form Complaint attached as Exhibit "A." It would be prejudicial to foreign direct filed plaintiffs to change the existing law of the case 2 years later after these cases were direct filed.

This Court has already entered an Order in this <u>same</u> MDL on 5-31-2017 in response to the Cook Defendant's previous motion to dismiss certain cases on the statute of repose and stated the following:

> *This motion addresses those Plaintiffs, whose cases originated outside of this court's judicial district but were directly filed in this MDL forum ("foreign direct filed cases"), pursuant to the court's direct filing order. The specific issue raised in the present motion is whether the court should apply the choice-of-law rules of the MDL forum (Indiana) or the choice-of-law rules of the state where the case would have been brought had it not been part of this MDL.*

> *In 2011, the Southern District of Illinois addressed this issue and held that "the best approach is to treat foreign direct filed cases as if they were transferred from the judicial district sitting in the state where the case originated." In re Yasmin, No.*

*3:09-md-2100 DRH-PMF, MDL No. 2100 U.S. Dist. LEXIS 39820 at \*18 (S.D. Ill., April 2100).* **The court adopts this approach, as it is in keeping with the rule that the transferee court applies the law of the state in which the transferor court is located."**

See, Entry on Motion for Judgment on the Pleadings based on the Statute of Repose, Case 1:14-ml-02570 RLY-TAB, Filed 05/31/2017, page 3 of 16 Page ID #:11508, attached as Exhibit "D" hereto.

Indeed, the Cook Defendants argued for this approach in a previous motion to dismiss certain cases to which this Court issued the above Order.     In that previous motion in this <u>same</u> MDL, the Cook Defendants' argued the following:

*As to what state's law applies, court sitting in diversity actions like these apply the substantive law of the state in which the federal court is located. See Hollander v. Brown, 457 F.3d 688 (7th Cir. 2006) (citing Erie Railroad Co. v. Tompkins, 304 U.S. 64, 82 L. Ed. 2d 1188 (1938) and Guaranty Trust v. York, 326 U.S. 99, 89 L. Ed. 2d 2079 (1945).* **Statutes of limitations are substantive matters for purposes of the Erie doctrine, Id.** (emphasis added).

*However, where a case based on diversity is part of an MDL and is directly filed in the MDL forum as the result of a direct filling order, as occurred with the six cases here, courts have found that the "better approach is to treat foreign direct filed cases [i.e. cases originating outside of this Court's judicial district but filed directly into the MDL] as if they were transferred from a judicial district in the state where the case originated. (Citing In re Yasmin, supra).*

See Cook Defendants' Memorandum in Support of Motion for Judgment on the Pleadings Based on Statutes of Repose, Case 1:14 ml-02570-RLY-TAB Document 4186-1 Filed 03/27/2017 Page 2 of 12 Page ID#: 9193.

This Court cannot permit the Cook Defendants to argue opposite sides of the same legal issue in one MDL. They have previously argued (and this Court held) that foreign direct cases are treated as originating from the judicial district in the state where the case originated. The Court has already accepted this legal doctrine as the law of the case in this MDL. Plaintiff, Bailey Howarth had the right to abide by the law found to apply by this Court when it filed its Short Form Complaint in 2019.

Indiana and Seventh Circuit law have not changed since this Court's ruling in 2017. In fact, the Seventh Circuit ratified this very approach in *Dobbs v. Depuy Orthopedics, Inc.,* 842 F.3d 1045 (7th Cir. 2016) which is discussed above.

In plaintiff, Bailey Howarth's foreign direct filed case, the law of the State of New York will apply with respect to the applicable statute of limitations as the originating court is deemed to be New York. Statutes of limitations, similar to statutes of repose are state statutory creations requiring an MDL court to determine choice of law applicable for a foreign direct filed case. There is NO statute of repose issue applicable to plaintiff, Howarth's case. New York State does not have a statute of repose for personal injury, fraud or product liability actions.

## <u>NEW YORK STATE'S STATUTE OF LIMITATIONS LAW</u>

Plaintiff Howarth's designated home venue is the USDC, Southern District of New York, which is a proper venue as plaintiff was at all times a resident of New York and she had the Cook Gunther Tulip IVC filter both implanted in New York and surgically removed in New York. Thus, plaintiff's injury accrued in New York State. But for the direct filing into this Court

permitted by MDL No. 2570, plaintiff would have filed this action in the US District Court for the Southern District of New York, which venue would have transferred this action to this designated MDL venue. Plaintiff herein only asserts state law claims against defendants with jurisdiction based on diversity of citizenship.

Plaintiff's complaint concerns an injury that occurred to a New York resident in New York and is a foreign case directly filed in this MDL Court as permitted in this MDL. Hence the designation of USDC, Southern District of New York as the proper designated venue in the Short Form Complaint, absent direct filing.

New York has a 3 year statute of limitations for personal injury arising out of negligence accruing on the date of injury. See, NY Civil Practice Law and Rules Section 214.

New York's statute of limitations for strict products liability has been deemed to sound in tort and is subject to the same 3 year statute of limitations accruing on date of injury. *Victorson v. Bock Laundry Mach. Co.,* 37 NY2d 395 (1975). Breach of warranty claims in New York sound in contract, and are governed by a 4 year statute of limitations. See, NY UCC Section 2-725(1), *Heller v. US Suzuki Motor Corp.,* 64 NY2d 407 (1985). New York has a consumer fraud and deceptive trade practices cause of action which is statutory and contained in NY General Business Law Section 349. It has been held that this statute is also governed by New York's 3 year statute of limitation accruing at the time the injury occurs. *Gaidon v. Guardian Life Insurance Co. of America,* 96 NY2d 201 (2001).

Plaintiff, Bailey Howarth's action was timely commenced under the statutes of limitation that New York applies to plaintiff's stated causes of action. [4]

### The plaintiff herein has alleged a cause of action for consumer fraud and deceptive business practices under NY General Business Law Section 349.

This particular cause of action is based on a New York statutory, and not common law, remedy. The interpretation of whether a New York cause of action under a specific New York statute is pleaded sufficiently depends on application of New York law.

Plaintiff's Short Form Complaint (attached as Exhibit "A") alleges a violation of New York's consumer fraud and deceptive business practices law which is NY General Business Law Section 349. The Short Form Complaint incorporates the Master Complaint, which specifically references this exact statute in paragraph 148 so there is no doubt or surprise as to which statutory remedy is being invoked.

The Master Complaint under Count VII contains paragraphs 112 – 165 alleging violations of state law prohibiting consumer fraud and deceptive trade practices.

Specifically, paragraph 116 of the Master Complaint alleges as follows:

---

[4] New York also has a savings or tolling provision that is found in NY CPLR Section 205, which provides in pertinent part as follows:

(a) *New action by plaintiff. If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff, or, if the plaintiff dies, and the cause of action survives, his or her executor or administrator, may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action and that service upon defendant is effected within such six-month period. NY CPLR Section 205(a)*

116. *Defendants misrepresented the alleged benefits and characteristics of Cook's IVC Filters; suppressed, omitted, concealed, and failed to disclose material information concerning known adverse effects of Cook's IVC Filters; misrepresented the quality and efficacy of Cook's IVC Filters as compared to much lower-cost alternatives; misrepresented and advertised that Cook's IVC Filters were of a particular standard, quality, or grade that they were not; misrepresented Cook's IVC Filters in such a manner that later, on disclosure of the true facts, there was a likelihood that Plaintiffs would have opted for an alternative IVC Filter or method of preventing pulmonary emboli.*

The Master Complaint under Count VII, paragraph 115 allege as follows:

115. *Through its false, untrue and misleading promotion of Cook's IVC Filters, Defendants induced Plaintiffs to purchase and/or pay for the purchase of Cook's IVC Filters.*

Paragraph 120 of the Master Complaint alleges:

120. *As a result of Defendants' violative conduct in each of the Plaintiffs' respective states, Plaintiffs purchased and/or paid for purchases of Cook IVC Filters that were not made for resale.*

See also the allegations of fraud alleged in Master Complaint paragraphs 44, 45, 46, 114, 116, 117, and 118 all of which are incorporated into this Memorandum.

Thus, the Master Complaint provides more than adequate detail sufficient to maintain this statutory consumer fraud and deceptive business practices cause of action under this New York statutory remedy as well as fraud in general.

New York Courts have recently reviewed the pleading requirements of NY General Business Law Section 349 and have found them to be simple and straightforward, much less than that alleged by defendants in Cooks' instant motion.

In *Ramirez v. Donado Law Firm, PC,* 169 AD3d 940 (App. Div., Second Dept., 2019) the Court set forth a succinct analysis of the pleading and proof requirements of New York's statute:

*General Business Law § 349(a) prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." A cause of action to recover damages for a violation of General Business Law § 349 must "identify consumer-oriented misconduct which is deceptive and materially misleading to a reasonable consumer, and which causes actual damages" (<u>Wilner v. Allstate Ins. Co.</u>, 71 A.D.3d 155, 161– 162, 893 N.Y.S.2d 208; see <u>Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20, 25, 623 N.Y.S.2d 529, 647 N.E.2d 741</u>). Private contract disputes, unique to the parties, do not fall within the ambit of General Business Law § 349 (citations omitted). Here, contrary to the defendants' contention, "in contrast to a private contract dispute, the practices alleged by the plaintiffs were not unique to these parties and involved an extensive marketing scheme that had a broader impact on consumers at large" (<u>De Guaman v. American Hope Group</u>, 163 A.D.3d at 917, 83 N.Y.S.3d 253 [citations and internal quotation marks omitted]; see <u>Gaidon v. Guardian Life Ins. Co. of Am.</u>, 94 N.Y.2d 330, 344, 704 N.Y.S.2d 177, 725 N.E.2d 598. <u>Ramirez</u> at p. 169 AD3d at 942.*

A plain reading of the four corners of the Master Complaint including Count VII demonstrates that plaintiffs have alleged materially misleading acts, that it resulted in costs to the multitude of plaintiffs who purchased or paid for a device that was not intended for resale, which

is an allegation of actual damages that caused injury to each plaintiff and that Cooks' promotion of the IVC filters herein induced the purchase of same and affected each consumer (plaintiff) who purchased/paid for this medical device.

Contrary to Cook Defendants' arguments in their motion that heightened pleading requirements are mandated, New York federal courts have clearly held that New York's General Business Law Sections 349 and 350 are not subject to the pleading with particularity requirements of Fed.R.Civ.P. 9(b). *Dash v. Seagate Technology (U.S.) Holdings, Inc.,* 27 F. Supp. 3d 357 (EDNY, 2014).

The Plaintiff's cause of action set forth in Count VII of the Master and Short Form Complaint has been more than adequately pleaded under applicable New York law.

As to the fraudulent behavior of the Cook Defendants, there is trial testimony by representatives of Cook in bellwether trials that detail the alleged concealment and fraud with respect to all of these IVC filters.

For example, evidence disclosed at the <u>Brand</u> trial that began January 15, 2019 (1:14-ML-2570) is illustrative.  For example:

> My personal opinion is, if the new is not considered safe, the current should be stopped, based on theoretical calculations and testing.
>
> We are trying to get some knowledge of the movement of a cava with an implanted filter, but nobody seems to have a dynamic evaluation.
>
> To me it is very important that we at WCE can have the same conclusion as what was send to the FDA.
>
> We do not want to hide that the filter broke at a test at a clinical relevant diameter, but to use the result to prove the safety….

Trial Exhibit PX-1148.

… the Celect Filter may increase the risk of migration during use compared to the Tulip.

.   .   .

"Without further detailed analysis, it was my conclusion that the new filter would be unlikely to fulfil the conformity assessment requirements unless some supportive human clinical data is established"

.   .   .

The risk analysis and the clinical evaluation have identified some safety concerns associated with the new design of the filter. The literature has been reviewed extensively, and discussions have been going on for the past 3 years. However, to date it has not been possible to find any clear evidence of the existing available data that could clarify and justify the safety risks identified. If you can provide some new evidence or inputs which can clarify these safety concerns, we would be happy to take these inputs into considerations [sic].

Trial Exhibit PX-1099.

Q   Now, you told this jury a couple of days ago, essentially, that you believed the email message that attached this manuscript, that it was an effort by upper management -- by upper management to hide a picture of the sheep aorta that had perforated, correct?

A    And that was my opinion.

January 15, 2019 Trial Testimony of Harlan M. Krumholz, M.D., 1079:23 – 1080:3.

Q   -- can you explain -- you've already explained the concordance between Dr. Timperman and Dr. Gordon. There's obviously a discrepancy -- well, first of all, there's a big discrepancy between what Cook told the FDA and what all three of these sets of doctors found. Would you agree?

A  That's true.

Trial Testimony of Harlan M. Krumholz, M.D., 577:18-23.

A   They concluded that such a trial would be feasible, that in their -- based on what they found, they said, yeah, this went around the block. We think there's no reason to think it can't work. You could do it.

Q   So did Cook then sponsor or conduct a larger randomized-control trial on the Celect after they determined it was feasible?

A   Not that I'm aware.

Trial Testimony of Harlan M. Krumholz, M.D., 709:2-9.

Let's just put on the screen for a moment Plaintiff's Exhibit 1841.

This is a document we discussed yesterday regarding the observations -- a summary of observations from the OUS clinical investigators, including observations of 8, 6, 10, 5, and greater than 3 millimeters outside the IVC. In this letter from April of 2007, did Cook disclose this information regarding these struts outside the wall from the OUS study to the FDA?

A   They did not.

Q   Are you aware, based on your review of the communications between Cook and the FDA, of any communication at any time where Cook revealed to the FDA that there were these multiple struts outside the wall between 3 and 10 millimeters?

A   I'm not aware of any communication in which they told the FDA that there had been these penetrations described by their site investigators.

Trial Testimony of Harlan M. Krumholz, M.D., 630:19 – 631:10.

A   No, it's not possible to make an informed decision because some of

the key information was not in the public domain.

Q   Known to Cook, but not disclosed?

A   That's right.

Trial Testimony of Harlan M. Krumholz, M.D., 954:23 – 955:1.

Q   In the 2009 time frame, did doctors know the dangers that the Celect posed in terms of perforation and -- perforation? Was that disclosed by Cook?

A   No.

Q   Was there publicity in 2009 to put doctors on alert that the Celect filter had this tendency to perforate the vena cava –

A   No.

Q -- at a high rate?

A   No.

Trial Testimony of Harlan M. Krumholz, M.D., 955:18 – 956:2.

Q   Have you read the final reported of

OUS?

A   Yes, sir.

Q   Does it show fracture?

A   No, sir.

Q -- that particular filter?

A   It doesn't mention any fracture, sir.

Q   Did they disclose that?

A   No, sir.

January 19, 2019 Trial Testimony of Gregory I. Gordon, M.D., 1674:25 – 1675:7. These documents and portions of trial testimony are just a mere smattering of evidence showing Cook committed fraud upon the medical community.

### New York's choice of law analysis would apply New York's statute of limitations and tolling laws as the accrual state for a New York resident.

Under the Seventh Circuit's decision in *Dobbs v. Depuy Orthopedics, Inc.,* 842 F.3d 1045 (7th Cir. 2016) and the other authority cited above, the MDL Court must treat plaintiff's foreign claim as having originated in New York. Plaintiff's action is effectively a New York action based in diversity and only direct filed for convenience in this Indiana federal court. Had plaintiff filed the same action at the same time in USDC, Southern District of New York, that Court would have removed this case to the present MDL Court. Under those circumstances, the MDL Court would also have to apply the originating state's law as to statute of limitations and choice of law as it is a federal court sitting in diversity. There is no authority that direct filing by itself changes the foreign claim status of this plaintiff's action.

For instruction as to what a New York federal court would do when considering choice of law to determine statute of limitations, we can look to *Vincent v. The Money Store, et.al,* 915 F. Supp. 2d 553 (USDC, Southern District of NY, 2013).

That case reviews both New York's choice of law statute as it applies to the statute of limitations along with New York's tolling statute.

New York's choice of law statute is found in NY CPLR Section 202. For New York <u>residents</u>, such as plaintiff herein, this statute provides that *"where the cause of action accrued in favor of a <u>resident</u> of the state the time limited by the laws of the state shall apply."* NY CPLR Section 202 (emphasis added).

The plaintiff suffered 3 Grade 2 perforations by the prongs of the Cook IVC filter to her vena cava while a resident of New York, so the injury accrued in New York. There is no dispute to these facts. Attached hereto as Exhibit "B" is the surgical implant operative report from Westchester Medical Center with product identification for the Cook Gunther Tulip Vena Cava filter. Attached as Exhibit "C" is the operative report and pathology report for the surgical removal of this same Cook Gunther Tulip IVC filter. These documents confirm the overwhelming New York connections and Cook IVC filter involved.

The Cook Defendants' memorandum in support of summary judgment already states on page 5, "In the context of an MDL, a court applies the choice -of -law rules of the state where the case "originated." By authority of the Seventh Circuit in Dobbs, this action by a foreign plaintiff directly filed into the MDL Court are *"treated as having originated outside of that district.* 842 F.3d 1049. Cook previously made this exact argument as stated above in another IVC case in *Graham v. Cook*, Case No. 1:15-cv-764 discussed above. Cook should not be permitted to argue different legal theories in different phases of the same MDL.

The Seventh Circuit in *Morgan v. Fennimore,* 429 Fed. Appx. 606 (7th Cir. 2011) applied Indiana's choice of law analysis to a <u>statute of limitations</u> diversity case and analyzed Indiana's choice of law rules as a federal court in diversity. That Court confirmed that Indiana employs a modified *lex loci delicti* analysis (citing *In re Bridgestone/Firestone, Inc.* 288 F3d 1012 (7th Cir. 2002) such that the substantive law of the place of the wrong will usually govern, "unless the state where the tort occurred is an insignificant contact" and thus Indiana looks to the state with the most significant contacts. 429 Fed. Appx. at 609.  In our case, New York is overwhelmingly the state with the most significant contacts.

Accordingly, plaintiff, Bailey Howarth's action must be governed by the law of the State of New York as a foreign direct filed case in this MDL court. Indiana's 2 year statute of limitations does not apply to plaintiff's action.

The cases cited by the Cook Defendants in support of their assertion this MDL court must apply Indiana's statute of limitations are all inapposite and distinguishable. For example, *Smithers v. Asset Acceptance, LLC,* 919 N.E.2d 1158 (Ind. Ct. App. 2010) deals with a credit card agreement choice of law contract provision setting venue in New Hampshire, which the Indiana Court refused to abide under its contract choice of law analysis. That has no bearing on a direct filed MDL action.

Defendants cite contractual choice of law cases and non-MDL cases which are inapplicable in its analysis to the instant actions involving foreign claimants designating home venue in a complaint while direct filing in the appointed MDL. The cases cited by Cook do not apply to the posture of plaintiff's direct filed case. Regardless of whether this Court chooses to remand plaintiff's case for trial to New York or not, the Court must apply New York's law on the substantive law and for determining statute of limitations for a New York resident plaintiff.

To the extent there are other case authorities cited by Cook Defendants' in the instant motion, they are disputed and denied as inapplicable.

Individual plaintiffs such as Bailey Howarth, were required to use the Short Form Complaint incorporating the Master Complaint and were not involved in its drafting and should not be penalized by drafting deficiencies, if any, determined to exist by the Court. Amendments to the Short Form/Master Complaint should be permitted by the direct filing individual defendants if any deficiency in pleading is found by the Court.

*There have been no discovery proceedings* involving Plaintiff Howarth's action prior to the making of this motion by the Cook Defendants therefore making this motion for summary judgment premature.

### Alternatively, even if Indiana's Law is used, Indiana's has a discovery rule that is ignored by the Cook Defendants as to Plaintiff, Howarth.

Indiana has a discovery rule applicable to its two year statute of limitations as set forth in Cook's Memorandum of Law pp. 7-8 (citing *Horn v. A. O. Smith Corp.,* 50 F3d 1365 (7th Cir. 1995). This discovery rule applies to a cause of action in fraud as well as the plaintiff's other causes of action.

The Cook Defendants have only pointed to the date of surgery to remove the IVC filter from plaintiff, Howarth. They have not performed any discovery or depositions in this case and are unable to establish when plaintiff, Howarth first discovered that it was the product defects in her filter that was the actual cause of her injury, which were concealed by Cook. Simply alleging more than two years have passed does not address Indiana's discovery rule applicable to its

statute of limitations. The Cook Defendants' motion fails to meet its burden on its motion for summary judgment and must be denied.

As set forth in *Horn, supra,* at p. 1369, a cause of action for fraud in Indiana is six years from its accrual, which begins to run, "…when the resultant damage of a (tortious) act is susceptible of ascertainment". Indiana's discovery rule requires both discovery of the injury (perhaps when plaintiff's IVC filter was surgically removed) AND ascertainment of causation.

In fact, the Seventh Circuit in *Horn* determined factual issues prevented a dismissal on statute of limitations grounds finding that a jury should decide the issue when the manufacturer was making representations to the end user of the product that the product was safe, when it had information that could be deemed contrary to that. 50 F3d at 1374. There is <u>no</u> evidentiary record established by Cook in plaintiff Howarth's action as to when she learned that it was a concealed defect in her IVC filter that caused her injury.

As referenced above, Indiana's statute of limitations for a fraud cause of action is six (6) years. *See*, Ind. Code Section 34-11-2-7(4). The fraud cause of action accrues when the plaintiff knew or in the exercise of ordinary diligence, should have known, that an injury had been sustained as a result of the tortious acts of a party. *Shafer v. Lambie,* 667 NE2d 226 at 229 (Ct. of Appeals of Ind., 1996).

Accordingly, even under Indiana law the timeliness of the each cause of action cannot be determined on this motion. There are material factual issues in dispute and Cook has failed to establish when plaintiff Bailey Howarth's knew the causal connection between her injuries and the defective nature of the Cook IVC filter. The discovery date cannot be *assumed* to be the day her filter was surgically removed.

**<u>Defendants' Motion for Summary Judgment should be denied because they may not rely on Categorization Forms in support of their arguments.</u>**

The Cook Defendants are improperly relying upon the Categorization Case Form in support of their motion for summary judgment. The instructions for the Categorization Case Form clearly states "This Case Category Submission is for the purpose of complying with the Court's Order on the Cook Defendant's Motion for Screening Order and Bellwether Selection Plan only *and is not admissible and is not to be considered relevant for any other purpose.*" (See Docket Entry 9638-1 at ¶ 4) (emphasis added)

Since the Plaintiff' Howarth's action is timely filed as to each cause of action, the punitive damages cause of action is deemed timely as well. There is no spousal derivative claim asserted by plaintiff Howarth in her complaint.

<u>Conclusion</u>

For all of the above reasons and applicable law, the Plaintiff, Bailey Howarth, submits that the Cook Defendants' omnibus motion for summary judgment on statute of limitations for 26 cases seeking to dismiss this action as time-barred be DENIED in all respects.

Dated: October 29, 2019

         *Respectfully submitted,*

         *<u>/s/ Rosemarie Riddell Bogdan</u>*
         Rosemarie Riddell Bogdan, Esq.
         (NDNY Bar No.: 506409)
         MARTIN, HARDING AND MAZZOTTI, LLP
         Attorneys for Plaintiff, Bailey Howarth
         (Case No. 1:19-cv-01018 RLY-TAB)
         1222 Troy-Schenectady Road
         P.O. Box 15141
         Albany, New York 12212-5141
         Tel: (518) 862-1200
         Email: rrbivccook@1800law1010.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 29th day of October 2019, a copy of the foregoing **Plaintiff Bailey Howarth's Memorandum in Opposition to Cook Defendants' Omnibus Motion for Summary Judgment on Statute of Limitations Grounds for 26 Cases** was electronically filed and notice of the filing of this document will be sent by all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's electronic system.

*/s/Rosemarie Riddell Bogdan, Esq.*