# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE COOK MEDICAL. INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No: 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates to:

Marika Doukas v. Cook *et al*
Case No. 1:16-cv-02822-RLY-TAB

## PLAINTIFF'S RESPONSE AND SUPPORTING MEMORANDUM IN OPPOSITION TO COOK'S OMNIBUS MOTION FOR SUMMARY JUDGMENT

Plaintiff Marika Doukas submits this response and supporting memorandum in opposition to Cook's Omnibus motion for summary judgment.[1] In support, Plaintiff shows the Court the following:

### INTRODUCTION

Cook moved for summary judgment asserting that Plaintiff's claims are time barred. Defendants' Motion should be denied. The Plaintiff's claims are not time barred under New York law and do not warrant a dismissal.

### DEFENDANTS' OMNIBUS MOTION FOR SUMMARY JUDGMENT IS PREMATURE

Defendants' Omnibus Motion for Summary Judgment is premature, as it was filed based upon limited information and before substantive discovery has been conducted. The Federal Rules dictate that the party seeking summary judgment must show that "there is no genuine dispute as

---

[1] Plaintiff incorporates by reference the same as if fully set forth at length "Response of Plaintiffs' Steering Committee To The Cook Defendants' Renewed Omnibus Motion For Summary Judgment On Limitations" and any and all exhibits attached thereto, filed by the Plaintiffs' Steering Committee in this litigation.

to any material fact" before summary judgment can be granted. Fed. R.Civ. P. 56(a). Further, "a district court should grant a summary judgment only if the pleadings, depositions, answers to interrogatories, admissions, and affidavits" show that genuine dispute of facts. *Miller v. A.H. Robins Co.*, 766 F.2d 1102, 1104 (7th Cir. 1985).

Defendants rely upon their review of "Plaintiffs' short-form complaints, Categorization Forms, and supporting medical records." Defs' Br. ¶ 5. As discussed below, the discovery rule applies, and these limited documents Defendants rely upon for their omnibus motion are insufficient to reasonably conclude that there is no genuine dispute of material facts in this case relating to when the statute of limitations accrued. Furthermore, Defendants' omnibus motion is wrongly reliant upon information from Plaintiff's Case Categorization Submission, the form of which clearly states, "is for the purpose of complying with the Court's Order...and is not admissible and is not to be considered relevant for any other purpose." Pl.'s Case Cat. Subm. ¶ 4. Accordingly, Plaintiff objects to consideration of the form because by its own terms it is not admissible and cannot support summary judgment.

Defendants further urge in their omnibus motion that this Court should grant summary judgment now so as to "promote orderly docket management." Defs.' Br. 3. As laudable as Cook's aim may be in assisting the Court with the management of its docket, there is a genuine dispute of material fact by virtue of the discovery rule, which precludes the Court from simply dismissing the case. Docket management is not orderly if it involves the legally improper dismissal of cases.

## STATEMENT OF MATERIAL FACTS

Plaintiff disputes portions of Cook's "undisputed" material facts. Primarily, Plaintiff disputes the date when the injury took place. Defendants misconstrue when the Plaintiff was made aware of her injuries. The Plaintiff is not barred by New York's statute of limitation because the

injury could not have possibly accrued at the time Cook alleges. As will be shown later, Defendant fraudulently concealed material information regarding the IVC filters and prevented Plaintiff from becoming aware of any potential injury caused by the defective device.

Cook marketed its IVC filters as removable, safe and efficacious devices. Compl. ¶ 38. ("[T]he Cook Filters were widely advertised and promoted by the Defendants as safe and effective treatment for prevention of recurrent pulmonary embolism via placement in the vena cava.") Yet, Cook failed to inform physicians that IVC filters could become embedded in a patient's tissue and conventionally unremovable if left in for even short periods of time.  Despite internal knowledge and knowledge of the medical literature, Cook further failed to inform doctors and patients like Plaintiff and the treating physician, that IVC filters have not actually been shown to be efficacious and lacked scientific support.  (*See* Decousus, Herve, et al. *A Clinical Trial of Vena Caval Filters in the Prevention of Pulmonary Embolism in Patients with Proximal Deep-Vein Thrombosis*. Vol. 338. New England Journal of Medicine, 409 (1998). Cook didn't inform treaters that they never performed studies for efficacy or safety. In fact, Cook never advised that they were aware that there was little to no evidence that supported the efficacy of these devices. The studies and the knowledge of Cook show just the opposite—filters do not prevent PE and in fact promote blood clots. Ho, Kwok M. *A Multicenter Trial of Vena Cava Filters in Severely Injured Patients*. New England Journal of Medicine (2019).  Further, the longer the filters are in place the more they embed, perforate, migrate and fracture.

The Defendants knew of several incidents where their IVC filters were perforating through the veins of patients who had received them and withheld this information from the public and the FDA. Defendants attempted to conceal the dangers of these devices by misrepresenting that studies they performed had zero perforations, knowing full well that such perforations were happening.

For example, they knew of serious "safety concerns" with the Cook Celect IVC filter, and never disclosed these dangers. (Trial testimony of Dr. Harlan M. Krumholz, M.D. in the *Bland* trial, **Ex. 1**, at 440, 451-52, 456, 629-31; Expert Report of Dr. Harlan M. Krumholz, M.D., **Ex. 2**; Plaintiff's Exhibit 1841 in the *Bland* trial**)**.  As indicated in Dr. Krumholz' report:

> Cook has been similarly aware of the safety concerns with Cook Celect filters for many years. Cook had the opportunity to disclose relevant medical and scientific information related to Cook Celect filters. However, they have chosen to minimize the concerns, "put the foot firmly planted on the gas pedal", withhold relevant information from patients and physicians, and at times mischaracterize or report false information with respect to safety of Cook Celect filters. The result was availability of a device that exposed patients to risks unknown or underappreciated by them and by their treating practitioners. Cook continued to promote the Cook Celect filters (including for off-label use) and continued to minimize the legitimate concerns that were emerging by "managing perception (sic) internally and externally", selling the "fear factor", or false reassurance of "safety and efficacy" of the Cook Celect filter, while in fact they were aware of both the dearth of evidence for efficacy, and increasing concerns for safety.

**(Ex. 2 at 142).**

There is simply no evidence at all that Plaintiff or her doctor was aware of the information that Cook chose not disclose, and there never will be. Therefore, Plaintiff's claims cannot be barred by the statute of limitations and should survive summary judgment.

## **SUMMARY JUDGMENT STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56(c), a motion for summary judgment may be granted only if the moving party asserts an absence of a genuine issue concerning any material fact. Fed. R. Civ. P. 56(c). All material facts and all inferences, on a motion for summary judgment, are construed in the light most favorable to the non-moving party. *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1313 (7th Cir. 1995). Where there is "no genuine issue as to any material fact, the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, "where the evidentiary matter in support of the motion does not establish

the absence of a genuine issue, summary judgment must be denied…" *Addickes v. S. H. Kress & Co.,* 398 U.S. 144, 159-60 (1970). Additionally, the movant has the ultimate burden of proof. *Celotex Corp.*, 477 U.S. at 330.

## LEGAL ANALYSIS AND ARGUMENT

**I.       New York Law Applies in the MDL Transferee Court.**

Cook asks the Court to incorrectly apply the rules that have routinely been implemented by this Court. Defendants mistakenly assert that Indiana's choice-of-law rules should apply to this case.  Defendants, in their motion for summary judgment, failed to make the distinction in what the court meant in stating "where the case originated." Def's. Mem. In Support of Mot. for Summ. J. 10 ¶2. Other District Courts within this Circuit have made such a distinction and held that a foreign direct-filed case should be treated the same as if it were filed in the state where Plaintiff purchased, or as in the present case, was implanted with the product. *Slater, v. Biomet, Inc*., 244 F.Supp.3d 803*,* 808 (N.D. Ind. 2017). *See also Miles v. Biomet Orthopedics, LLC,* No. 3:14-CV-1983 RLM-MGG, 2017 WL 1133666, at *5 (N.D. Ind. Mar. 26, 2017) (holding that an MDL transferee court applies the choice-of-law rules where, the device in question was prescribed and purchased).

Under New York's choice-of-law analysis, statutes of repose and limitations are not constituted as substantive law. *Educ. Res. Inst., Inc. v. Piazza*, 794 N.Y.S.2d 65, 66 (N.Y. App. Div. 2005). These issues are strictly procedural. New York's statute of limitations holds that a personal injury action based on strict products liability accrues on the date of injury and must be brought within three years. N.Y. Civ. Prac. L. & R. § 214(5) (McKinney).[2]

---

[2] New York law also employs the borrowing statute, found in CPLR § 202, in cases where a "nonresident sues on a cause of action accruing outside New York." The statute requires "the cause of action to be timely under the limitations periods of both New York and the jurisdiction where

Oddly, Cook fails to acknowledge their own previous legal assertions, conceding to home state choice-of-law provisions. **In prior briefing before this Court, Cook conceded that plaintiffs' home state choice of law principles should apply:**

On February 2, 2016, Cook moved for summary judgment in *Graham v. Cook*, Case No. 1:15-cv-764, arguing among other things the case was time-barred. [*See generally* Docket No. 1051.] Just like this case, *Graham* was not transferred to this district by the JPMDL; it was directly filed. [*See* Master Case List, p. 8.]³

In a section of its *Graham* brief entitled "Choice of Law Analysis," Cook made clear that direct-filed cases like *Graham* are subject to the choice of law principles of their **home** forum, not the forum of the MDL court:

> When a case based on diversity is part of an MDL and is directly filed in the MDL forum as the result of a direct filing order, courts have found that the "better approach is to treat foreign direct filed cases [i.e., cases originating outside of this Court's judicial district but filed directly into the MDL] as if they were transferred from a judicial district sitting in the state where the case originated." *In re Yasmin*, 2011 U.S. Dist. LEXIS 39820, at *15, *18 (S.D. Ill. April 11,

[Docket No. 1051, at ECF p. 4252.]. Cook further stated: "Applying this law to the present case leads to the application of Kansas law." [*Id.*, at ECF p. 4253.]

---

the cause of action accrued." *Piazza*, 794 N.Y. S.2d at 66; N.Y. Civ. Prac. L. & R. § 202 (McKinney).  However, in the present case, New York's borrowing statute is inapplicable, as the plaintiff is a resident suing on a cause of action where an injury was incurred inside the state. *Antone v. General Motors Corp., Buick Motor Div.*, 473 N.E.2d 742, 745 (N.Y. 1984).
³ Given that this volume of the Master Case List spans more than 300 pages, Plaintiff does not attach it here. It is located on the Court's website at the following link: https://www.insd.uscourts.gov/sites/insd/files/MDL%202570%20Schedule%20A.pdf

The doctrine of judicial estoppel provides guidance here. As Justice Ginsburg explained: "judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quotation omitted). Judicial estoppel protects the integrity of the judicial process by preventing parties from "playing fast and loose with the courts," and is "intended to prevent improper use of judicial machinery." *Id*. at 750 (quotations omitted). This is precisely what Cook attempts to do here. Given its prior position on choice of law, the Court should reject Cook's contrary position out of hand.

Further, *Aspen American Insurance* provides that in diversity cases, "Indiana's choice of law rules determine the applicable state law…. The general rule for torts is that the law of the state where the injury occurred controls." *Aspen American Ins. Co., v. Interstate Warehousing, Inc.,* 372 F. Supp. 3d 709, 716 (N.D. Ind. 2019). (Citing *Abrams v. McGuireWoods LLP,* 518 B.R. 491, 498-99 (N.D. Ind. 2014). Therefore, New York law should apply.

## II.     In The Event Indiana Law Is Applied, It Would Not Bar Any Claims

Although it is true that Indiana's personal injury statute of limitations is two years, Cook admits that Indiana has a discovery rule:

> To determine when a reasonably diligent plaintiff should have discovered the claimed injury, Indiana courts ask "whether a reasonable person in the [plaintiff's] position . . . possessing the information [plaintiff] did when [she] did, could have discovered through the exercise of ordinary diligence that the product [caused her harm]."

Cook Memorandum of Law, pp. 7-8 (citing *Horn v. A.O. Smith Corp.*, 50 F.3d 1365, 1370 (7th Cir. 1995).

Ms. Doukas had no reason to know "that there was a 'reasonable possibility' that the [product] harmed her and she should therefore make further inquiry to determine her legal rights." *In re Mirena IUD Prods. Liab. Litig. (Truitt)*, 29 F. Supp. 3d 345, 352 (S.D.N.Y. 2014). A plaintiff must "have discovered through the exercise of ordinary diligence that the product [caused her harm]." *Horn v. A.O. Smith Corp.*, 50 F.3d 1365, 1370 (7th Cir. 1995). "Generally, though, the plaintiff's suspicion, standing alone, about the source of her injury is insufficient to trigger the onset of the limitations period." *Nelson v. Sandoz Pharms. Corp.*, 288 F.3d 954, 966 (7th Cir. 2002)(citation omitted). Plaintiff had no reason to believe the Cook filter was the cause of her injuries because she did not discover that the device was defective until years later. Cook has the burden in a motion for summary judgment, and at a minimum, the lack of discovery on Ms. Wilson's case is sufficient to demonstrate that Cook has

failed to meet its burden.

### III. Fraudulent Concealment Tolled Statute of Limitations.

Defendant Cook alleges that Plaintiff's claims are barred by the statute of limitations but fails to account for its fraudulent concealment. Cook violated its duty to make accurate medical device reports regarding adverse events associated with their IVC Filters. Cook failed to notify the FDA and/or the consuming public regarding device safety and efficacy. Exp. Rep. On Eff. And Safety of Cook Celect IVC Fil. 15 ¶ 2. Cook had a duty to disclose information regarding their device's defects and the likelihood of harm it causes as established in clinical trials. *Id*. at ¶ 2, 5 (Describing results of angiography testing of filters). Cook has continued to manufacture and profit from selling their dangerous and defective products. Even after the FDA raised concerns regarding Cook's failure to update their last 510 (K) submission to reflect the increased prevalence of perforations, Cook made reported no new findings. *Id*. at ¶ 6.

"Equitable tolling applies where a defendant's fraudulent conduct results in a plaintiff's lack of knowledge of a cause of action." *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 462. (S.D.N.Y. 2014). Defendant concealed the defectiveness of the IVC filter and its risks at issue thereby causing plaintiff's injuries. Plaintiff was not apprised of any facts to even arguably put them on notice of a possible cause of action until 2015. *See* Declaration of Marika Doukas, **Ex. 3**. In Cook's only major human study, Cook chose to report that there had been no patients who had experienced penetrations or perforations caused by Defendant's IVC filter. **Ex. 2** Exp. Rep. on Eff. and Safety of Cook Celect IVC Fil. 9 ¶ 3. In 2009 Cook redefined perforation to mean any strut protrusion beyond the IVC wall. Despite this much broader definition, Cook still reported zero perforations—a serious misrepresentation of data. *Id.* at 9 ¶1.

Despite various clinical trials which resulted in a finding of inadequacy of the IVC Filter and a substantial risk of harm from IVC Filter implantation, Cook continued to sell and promote their product which was ultimately implanted in Plaintiff's body. Further, Cook Celect IVC filter, which was implanted in plaintiff, almost doubles the risk of perforation of the company's Tulip model, and still nothing new was reported to the FDA on such findings. *Id*. at ¶ 2; Videotaped Dep. of Henrik Gyllun 132.

In September 2006, the FDA questioned Cook about five perforations listed in a CE mark. Cook provided an explanation that those perforations were not actually perforations, and Celect was ultimately cleared by the FDA in April 2007. *Id*. This was deceptive. If the defendant was able to deceive the FDA, Plaintiff too would struggle to discover any reason for concern regarding the IVC filter. Plaintiff is a lay person and could not reasonably be expected to discover the hidden defects of the IVC filter inside her body as the manufacturer did not report the relevant adverse findings or release literature on the clinical trials or defectiveness of the IVC filter. Plaintiff visited

with surgeons and doctors regarding the IVC filter before and after implantation, and none represented to Plaintiff that the device was defective or created a risk of any sort. *See* Declaration of Marika Doukas, **Ex. 3**.

Because the defendant did not meet their duty to disclose the defective nature of the product, Plaintiff was not able to discover the nature of her injury either before implantation or after removal surgery. Plaintiff was neither aware nor told by her surgeon or any other doctor that there might be an injurious defect present in the IVC filter placed inside her body.

Furthermore, if Indiana law applies, the result is the same. Plaintiff has alleged fraudulent conduct on the part of Cook. First, under Indiana law, this doctrine estops a defendant from utilizing the statute of limitations as a defense when they have committed fraud:

> The doctrine of fraudulent concealment operates to estop a defendant from asserting a statute of limitations defense when that person, by deception or a violation of a duty, has concealed material facts from the plaintiff thereby preventing discovery of a wrong. Thus, equitable estoppel can arise either from active efforts to conceal the malpractice or from failure to disclose material information when a fiduciary or confidential relationship exists between the physician and patient. The physician's failure to disclose that which he knows, or in the exercise of reasonable care should have known, constitutes constructive fraud.

*Hughes v. Glaese*, 659 N.E.2d 516, 518 (Ind. 1995). See also, *Hospital Corp. v. Hiland*, 547 N.E.2d 869, 873 (Ind.App. 1989); *Cacdac v. Hiland*, 561 N.E.2d 758 (Ind. 1990); *Van Dusen v. Stotts*, 712 N.E.2d 491 (Ind. 1999). When the concealment is active, the period of estoppel is not affected by the date of termination of the relationship but continues for a reasonable time after "*the plaintiff discovers the alleged malpractice* or *discovers information* which in the exercise of reasonable diligence would lead to discovery of the malpractice." 659 N.E.2d at 518 (emphasis added, citation omitted).

Allegations of Cook's fraud have been proffered since the onset of this litigation. For example, the Master Complaint contains the following averments:

> 44. While not inclusive of all medical studies published during the relevant time period, the above references show that the Defendants *failed to disclose* to physicians, patients and/or Plaintiffs that its Cook Filters were subject to breakage, tilt, inability of removal, and migration even though they knew or should have known the same was true.
>
> 45. At all times relevant hereto, the Defendants continued to promote the Cook Filter as safe and effective even when inadequate clinical trials had been performed to support long or short to safety and/or efficacy.
>
> 46. The Defendants *concealed* the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the Cook Filters, as aforesaid.
>
> . . .
>
> 114. Defendants engaged in *unfair, unconscionable, deceptive, fraudulent and misleading* acts or practices in violation of all states' consumer protection laws, identified below.
>
> 115. Through its *false, untrue and misleading* promotion of Cook's IVC Filters, Defendants induced Plaintiffs to purchase and/or pay for the purchase of Cook's IVC Filters.
>
> 116. Defendants *misrepresented* the alleged benefits and characteristics of Cook's IVC Filters; *suppressed, omitted, concealed, and failed to disclose* material information concerning known adverse effects of Cook's IVC Filters; *misrepresented* the quality and efficacy of Cook's IVC Filters as compared to much lower-cost alternatives; *misrepresented* and advertised that Cook's IVC Filters were of a particular standard, quality, or grade that they were not; *misrepresented* Cook's IVC Filters in such a manner that later, on disclosure of the true facts, there was a likelihood that Plaintiffs would have opted for an alternative IVC Filter or method of preventing pulmonary emboli.
>
> 44. Defendants' conduct created a likelihood of, and in fact caused, confusion and misunderstanding. Defendants' conduct *misled, deceived*, and damaged Plaintiffs, and Defendants' *fraudulent, misleading, and deceptive* conduct was perpetrated with an intent that Plaintiffs rely on said conduct by purchasing and/or paying for purchases of Cook's Filters. Moreover, Defendants knowingly took advantage of Plaintiffs, who were reasonably unable to protect their interests due to ignorance of the harmful adverse effects of Cook's IVC Filters.

> 45. Defendants' conduct was *willful, outrageous, immoral, unethical, oppressive, unscrupulous, unconscionable,* and substantially injurious to Plaintiffs and offends the public conscience.

Document 213 Filed 01/30/15 (emphasis added). These averments were supported with evidence disclosed at the <u>Brand</u> trial that began January 15, 2019 (1:14-ML-2570). For example:

> My personal opinion is, if the new is not considered safe, the current should be stopped, based on theoretical calculations and testing.
>
> We are trying to get some knowledge of the movement of a cava with an implanted filter, but nobody seems to have a dynamic evaluation.
>
> To me it is very important that we at WCE can have the same conclusion as what was send to the FDA.
>
> We do not want to hide that the filter broke at a test at a clinical relevant diameter, but to use the result to prove the safety….

Trial Exhibit PX-1148 (attached hereto as **Ex. 4**).

> … the Celect Filter may increase the risk of migration during use compared to the Tulip.
>
> . . .
>
> "Without further detailed analysis, it was my conclusion that the new filter would be unlikely to fulfil the conformity assessment requirements unless some supportive human clinical data is established"
>
> . . .
>
> The risk analysis and the clinical evaluation have identified some safety concerns associated with the new design of the filter. The literature has been reviewed extensively, and discussions have been going on for the past 3 years. However, to date it has not been possible to find any clear evidence of the existing available data that could clarify and justify the safety risks identified. If you can provide some new evidence or inputs which can clarify these safety concerns, we would be happy to take these inputs into considerations [sic].

Trial Exhibit PX-1099 (attached hereto as **Ex. 5**).

> Q Now, you told this jury a couple of days ago, essentially, that you believed the email message that attached this manuscript, that it was an effort by upper management -- by upper management to hide a picture of the sheep aorta that had perforated, correct?
>
> A And that was my opinion.

January 15, 2019 Trial Testimony of Harlan M. Krumholz, M.D., 1079:23 – 1080:3 (attached hereto as **Ex. 1**).

> Q -- can you explain -- you've already explained the concordance between Dr. Timperman and Dr. Gordon. There's obviously a discrepancy -- well, first of all, there's a big discrepancy between what Cook told the FDA and what all three of these sets of doctors found. Would you agree?
>
> A That's true.

Trial Testimony of Harlan M. Krumholz, M.D., 577:18-23 (attached hereto as **Ex. 1**).

> A They concluded that such a trial would be feasible, that in their -- based on what they found, they said, yeah, this went around the block. We think there's no reason to think it can't work. You could do it.
>
> Q So did Cook then sponsor or conduct a larger randomized-control trial on the Celect after they determined it was feasible?
>
> A Not that I'm aware.

Trial Testimony of Harlan M. Krumholz, M.D., 709:2-9 (attached hereto as **Ex. 1**).

> Let's just put on the screen for a moment Plaintiff's Exhibit 1841.
>
> This is a document we discussed yesterday regarding the observations -- a summary of observations from the OUS clinical investigators, including observations of 8, 6, 10, 5, and greater than 3 millimeters outside the IVC. In this letter from April of 2007, did Cook disclose this information regarding these struts outside the wall from the OUS study to the FDA?
>
> A They did not.
>
> Q Are you aware, based on your review of the communications between Cook and the FDA, of any communication at any time where Cook revealed to the FDA that there were these multiple struts outside the wall between 3 and 10 millimeters?
>
> A I'm not aware of any communication in which they told the FDA that there had been these penetrations described by their site investigators.

Trial Testimony of Harlan M. Krumholz, M.D., 630:19 – 631:10 (attached hereto as **Ex. 1**).

> A No, it's not possible to make an informed decision because some of the key information was not in the public domain.
>
> Q Known to Cook, but not disclosed?
> A That's right.

Trial Testimony of Harlan M. Krumholz, M.D., 954:23 – 955:1 (attached hereto as **Ex. 1**).

>Q In the 2009 time frame, did doctors know the dangers that the Celect posed in terms of perforation and -- perforation? Was that disclosed by Cook?
>A No.
>
>Q Was there publicity in 2009 to put doctors on alert that the Celect filter had this tendency to perforate the vena cava –
>A No.
>
>Q -- at a high rate?
>
>A No.

Trial Testimony of Harlan M. Krumholz, M.D., 955:18 – 956:2 (attached hereto as **Ex. 1**).

>Q Have you read the final reported of OUS?
>A Yes, sir.
>
>Q Does it show fracture -- A
>
>No, sir.
>
>Q -- that particular filter?
>A It doesn't mention any fracture, sir.
>Q Did they disclose that?
>A No, sir.

January 19, 2019 Trial Testimony of Gregory I. Gordon, M.D., 1674:25 – 1675:7 (attached hereto as **Ex. 6**).

### IV. Present Material Issues of Fact Prevents Granting Summary Judgment.

Furthermore, Cooks motion for summary judgment should fail because under New York law, where there is a triable issue of fact that exists as to the adequacy of warnings furnished by a manufacturer, summary judgment should be precluded. *Milazzo v. Premium Technical Serv. Corp.*, 777 N.Y.S.2d 167 (N.Y App. Div. 2004). In the present case, there is a triable issue of fact to whether the warnings, if any, were provided by Cook to physicians, were adequate. Cook was aware that their filters had perforated and/or penetrated as seen on the retrieval venograms. But Cook failed to report any of these issues to the FDA. Exp. Rep. on Eff. and Safety of Cook Celect

IVC Fil. 16 ¶ 2. The material issue of fact is whether Cook adequately, let alone ever, conveyed this information. This information needed to be given to the practitioners or to the patients, through the use of brochures, consumer advertisements, or other marketing materials. The Supreme Court of New York has held, "in all but the most unusual circumstances, the adequacy of a warning is a question of fact to be determined at trial in a products liability case." *Johnson v. UniFirst Corp.*, 935 N.Y.S.2d 763, 765 (N.Y. App. Div. 2011). Defendant has not established, as a matter of law that any of their warnings were adequate, and thus summary judgment should not be granted.

The efficacy of the filters is also a material issue of fact. Beyond the available data, qualified experts have stated the need for further evidence that assesses the efficacy and safety of the IVC filters. Based on the dangerous rates of perforation discovered by the experts, exhibiting the Filters defects, "it is usually for the jury to make the required risk-utility analysis." *Premium Technical Serv. Corp.*, 777 N.Y.S.2d at 588; **Ex. 2** Exp. Rep. on Eff. and Safety of Cook Celect IVC Fil. 141 ¶ 3.

Cook alleges that their filters are safe for use, but their only evidence to the fact of efficacy is the use and marketing of the IVC Filters, for many years. This is by no means sufficient. In contrast to Cook's contention, it has further been determined that "13% of the evaluated filters showed penetration of the caval wall. *Id*. This raises a concern for safety. This material issue of fact raises a question as to whether there was fraudulent concealment on Cook's behalf, and whether the statute of limitations was in effect tolled. Thus, Plaintiff's claims should survive this stage and Defendants motion for summary judgment should be denied.

## **CONCLUSION**

For all of the foregoing, Plaintiff respectfully request that this court deny Defendant Cook's Omnibus Motion for Summary Judgment with respect to Plaintiff Marika Doukas. In addition, Plaintiff request all other and further relief to which they may be justly entitled.

Respectfully submitted,

By: __/s/ Rand P. Nolen__

Rand P. Nolen (Pro Hac Vice)
**FLEMING, NOLEN & JEZ, L.L.P.**
2800 Post Oak Blvd., Suite 4000
Houston, Texas 77056-3109
Telephone:  (713) 621-7944
Facsimile:  (713) 621-9638
Email:  rand_nolen@fleming-law.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2019, a copy of the foregoing was served electronically and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.

__/s/ Rand P. Nolen__

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE COOK MEDICAL. INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No: 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates to:

Marika Doukas v. Cook *et al*
Case No. 1:16-cv-02822-RLY-TAB

## AFFIDAVIT OF RAND P. NOLEN

**STATE OF TEXAS**          §
                            §
**COUNTY OF HARRIS**    §

BEFORE ME, the undersigned authority, personally appeared Rand P. Nolen, who, after being duly sworn, deposed and said:

"My name is Rand P. Nolen. I am over twenty-one (21) years of age. I have never been convicted of a felony or crime of moral turpitude. I am competent to make this affidavit, and the matters herein are within my personal knowledge and are true and correct.

"I am an attorney licensed to practice in the State Bar of Texas, as well as the United States District Courts for the Southern, Western, Northern and Eastern Districts of Texas; United States Court of Appeals for the First, Third, Fifth, Seventh, and Tenth Circuits; United States Court Of Federal Claims; and the United States Supreme Court.

"I am the lawyer representing Marika Doukas the above-entitled cause of action. All exhibits filed in support of Plaintiff's Response And Supporting Memorandum In Opposition To Cook's Omnibus Motion For Summary Judgment are either original documents or are true and correct copies of the original documents:

| Exhibit | Description |
|---|---|
| 1 | *Bland* Trial testimony of Dr. Harlan M. Krumholz, M.D. in the *Bland* trial |
| 2 | Expert Report of Dr. Harlan M. Krumholz, M.D. |
| 3 | Declaration of Marika Doukas |
| 4 | *Bland* Trial Exhibit PX-1148 |
| 5 | *Bland* Trial Exhibit PX-1099 |
| 6 | *Bland* Trial Testimony of Gregory I. Gordon, M.D., |

FURTHER, AFFIANT SAYETH NAUGHT.

_____
Rand P. Nolen

SUBSCRIBED AND SWORN TO BEFORE ME, this 29th day of October, 2019, to certify which witness my hand and official seal.

_____
Notary Public, in and for the State of Texas



PAMELA A. MYERS
Notary ID #383427-5
My Commission Expires
May 09, 2023