IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

---

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

---

This Document Relates to Plaintiff(s):

JOHANNA FIGUEROA
Civil Case No. 1:17-cv-04103-RLY-TAB

---

## PLAINTIFF'S RESPONSE IN OPPOSITION TO THE COOK DEFENDANTS' OMINBUS MOTION FOR SUMMARY JUDGEMENT BASED ON STATUTE OF LIMITATIONS

COMES NOW Plaintiff Johana Figueroa ("Plaintiff"), by and through the undersigned counsel, and files this Response in Opposition to Defendants' Omnibus Motion for Summary Judgment [Dkt. 11921].[1]  The Cook Defendants' Motion should be denied for the following reasons: (1) Seventh Circuit precedent requires application of Plaintiff's home state choice of law rules; (2) the doctrine of judicial estoppel precludes Cook from taking the position that Indiana's choice of law rules apply; (3) Plaintiff's claims are timely based on Colorado's statute of limitations and governing case law; and (4) even if Indiana's choice of law rules apply, there are genuine issues of material fact, which preclude summary judgement.[2]

---

[1]The Defendants are Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe Aps (collectively, "Cook Defendants")

[2]All Exhibits referenced herein are attached to the Declaration of Benjamin A. Bertram in Support of Plaintiff's Opposition to the Cook Defendants' Motion for Summary Judgment.

## STANDARD OF REVIEW

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he substantive law will identify which facts are material" and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *See id.* A court's function is not to weigh the evidence to determine the truth of the matter, but to determine whether a genuine issue of fact exists for trial. *See id.* at 249. A genuine issue exists if sufficient evidence is presented favoring the nonmoving party for a jury to return a verdict for that party. *See id.*

## STATEMENT OF UNDISPUTED FACTS

1.      Plaintiff's Short Form Complaint was filed on November 6, 2017. *See* Short Form Complaint, attached as Exhibit 1 to Declaration of Benjamin A. Bertram ("Bertram Decl.").

2.      Plaintiff was a resident of Colorado at the time she was implanted with a Cook Gunther Tulip Vena Cava Filer. *Id*, at ¶3.

3.      Plaintiff's implant occurred on March 1, 2017, in Westminster, Colorado. *Id.*, at ¶¶11-12.

4.      Plaintiff was a resident of Colorado at the time of her alleged injury. *Id.*, at ¶5.

5.      Plaintiff underwent an open removal procedure in Colorado on July 31, 2007. *See* Plaintiff Profile Sheet ("PPS"), attached as Exhibit 2 to Bertram Decl., at Section IV.

6.      Plaintiff's current state of residence is Colorado. *See* Bertram Decl., Exhibit 1, at ¶6.

## ARGUMENT

I.      **In Prior briefing before this Court, Cook conceded that Plaintiffs' home state choice-of-law principles should apply.**

On February 2, 2016, Cook moved for summary judgment in *Graham v. Cook*, Case No. 1:15-cv-764, arguing among other things the case was time-barred. [*See generally* Filing No. 1051.] Just like this case, *Graham* was not transferred to this district by the JPML; it was directly filed. [*See* Master Case List, p. 8.][3]

In a section of its *Graham* brief entitled "Choice of Law Analysis," Cook made clear that direct-filed cases like *Graham* are subject to the choice of law principles of their **home** forum, not the forum of the MDL court:

> When a case based on diversity is part of an MDL and is directly filed in the MDL forum
> as the result of a direct filing order, courts have found that the "better approach is to treat foreign
> direct filed cases [i.e., cases originating outside of this Court's judicial district but filed directly
> into the MDL] as if they were transferred from a judicial district sitting in the state where the
> case originated." *In re Yasmin*, 2011 U.S. Dist. LEXIS 39820, at \*15, \*18 (S.D. Ill. April 11,

[Filing No. 1051, at ECF p. 4252.] Cook went on: "Applying this law to the present case leads to the application of Kansas law." [*Id*., at ECF p. 4253.]

The Cook Defendants adopted the exact same position when moving for judgment on the pleadings in the cases of *Sales-Orr v. Cook Incorporated et al*, Case No. 1:16-cv-02636, *Fox v. Cook Incorporated, et al*., Case No. 1:17-cv-00255, *Ivy v. Cook Incorporated, et al.*, Case No. 1:16-cv-03319;  *Henderson v. Cook Incorporated, et al.*, Case No. 1:17-cv-00368, *Johnson v.*

---

[3] Given that this volume of the Master Case List spans more than 300 pages, Plaintiff does not attach it here.  It is located on the Court's website at the following link: https://www.insd.uscourts.gov/sites/insd/files/MDL%202570%20Schedule%20A.pdf

*Cook Incorporated, et al.*, Case No. 1:17-cv-00488, and *Apple v. Cook Incorporated, et al.*, Case No. 1:16-cv-03244. [Dkt. 4186]. A copy of Cook's Brief in Support filed on March 27, 2017, is attached hereto as Exhibit 3 to Bertram Decl. When ruling on the Cook Defendants' motions in *Sales-Orr, et al.*, the Court agreed that "the best approach is to treat foreign direct filed cases as if they were transferred from the judicial district sitting in the state where the case originated." (Dkt. 4918, at 3). A copy of the Court's order is attached hereto as Exhibit 4 to Bertram Decl. In each of the cases subject to the Cook Defendants' March 2017 motion, the Court correctly explored the following categories of information: (1) plaintiff's residence at time of implantation; (2) state in which the implant occurred; (3) state where plaintiff's alleged injury occurred; and (4) the residency of the plaintiff at the time of the alleged injury.

Plaintiff's case was directly filed into this MDL approximately six (6) months after this Court ruled on the Cook Defendants' March 2017 motion for judgment on the pleadings. Plaintiff respectfully suggests that she had a reasonable right to rely on this Court's rulings as they pertain to direct filing and choice-of-law. In *Graham*, the Court considered a motion to dismiss based on a statute of limitations defense. In *Sales-Orr, et al.*, the Court was faced with motions for judgment on the pleadings based on statute of repose defenses. Therefore, as of the date Plaintiff filed her complaint, precedent existed in this MDL which specifically indicated that Indiana choice-of-law rules would <u>not</u> apply to direct-filed cases. The Court was correct in *Graham,* and in *Sales-Orr, et al*., and it should employ the same choice-of-law reasoning when deciding the Cook Defendants' current motion for summary judgement.

The doctrine of judicial estoppel provides guidance here. As Justice Ginsburg explained: "judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v.*

4

*Maine*, 532 U.S. 742, 749 (2001) (quotation omitted).  Judicial estoppel protects the integrity of the judicial process by preventing parties from "playing fast and loose with the courts," and is "intended to prevent improper use of judicial machinery." *Id*. at 750 (quotations omitted).  This is precisely what Cook attempts to do here.  Given its prior position on choice-of-law, the Court should reject Cook's contrary position out of hand.

**II.     Seventh Circuit precedent holds that foreign cases filed directly in an MDL are treated as having originated <u>outside</u> of the MDL district.   Therefore, neither Indiana choice of law rules nor Indiana law apply to these Plaintiffs.**

In *Dobbs v. Depuy Orthopedics, Inc.,* 842 F.3d 1045 (7th Cir. 2016), a plaintiff from Illinois direct-filed his case in the Northern District of Ohio as part of an MDL. The case was later transferred from the Ohio MDL to the Northern District of Illinois. Despite its direct filing, the Seventh Circuit held that the case originated in Illinois and therefore Illinois choice of law rules applied. *Id.* at 1048.

> Dobbs's claim . . . was filed in the Northern District of Ohio only because the DePuy multidistrict litigation was already in progress there.  Dobbs's complaint stated that the Northern District of Illinois was the appropriate venue absent the multidistrict litigation. That advises treating the Northern District of Illinois as the original venue.
>
> In fact, district courts in our circuit have taken that approach:  **foreign cases filed directly in a district court as part of ongoing multidistrict litigation are treated as having originated outside of that district.** We ratify that approach here and apply Illinois's choice-of-law rules.

*Id.* at 1048 (emphasis added) (citing, *In re Watson Fentanyl Patch Prods. Liab. Litig*., 977 F. Supp. 2d 885, 888-89 (N.D. Ill. 2013), and *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig*., No. 3:09-MD-02100-DRH, 2011 WL 1375011, at *5 (S.D. Ill. Apr. 12, 2011)).

The *Watson Fentanyl* decision—cited with approval by the Seventh Circuit in *Dobbs*— involved another case filed directly in an MDL court sitting in the Northern District of Illinois.

977 F. Supp. 2d at 886.  The case concerned an Ohio resident who died in Ohio after using a fentanyl patch that was prescribed, purchased, and administered in Ohio. The Northern District of Illinois MDL court applied Ohio law and rejected attempts to apply Illinois law — even Illinois' choice of law rules.

> [T]he prevailing rule in this situation is that in a case that was directly filed in the MDL transferee court but that originated elsewhere, the law (including choice of law rules) that applies is the law of the state where the case originated. The Court agrees with the cases just cited and concludes that the choice of law rules that apply are those of the state where the case originated.

*Id.* at 888 (internal citations omitted).

The *Watson Fentanyl* MDL court then went on to analyze the meaning of the term "originated":

> **[A] direct-filed case in an MDL proceeding is considered to have originated in the state where the plaintiff purchased and used the prescribed product.** That is how the place of filing is determined in [the] overwhelming majority of product liability cases, and it is a reasonable approach to determining the choice of law issue that has been presented.

*Id.* at 889 (emphasis added). Because the plaintiff was prescribed and used the fentanyl patch at his Ohio residence, the Illinois MDL court ruled that Ohio law should apply to this foreign direct filed case.[4]

In re Yasmin—cited with approval by the *Dobbs* and *Watson Fentanyl* courts **and Cook[5]**—involved numerous cases that originated outside of that court's judicial district and that were filed directly in the Southern District of Illinois MDL. Similar to Cook's faulty reasoning, the *Yasmin* plaintiffs argued that because the court was sitting in diversity in Illinois, Illinois was the proper

---

[4] Similar to the approach taken by the Seventh Circuit, the *Watson Fentanyl* MDL court also noted that it could have applied California choice of law rules, because Plaintiffs' complaint suggested that they would have filed their lawsuit in California.  But even applying California choice of law rules, the Illinois MDL court concluded that Ohio law should apply and **not** the law of the MDL forum.  *Id.* at 889-90.
[5] Filing No. 1051, at ECF p. 4252.

forum and Illinois choice of law principals should control. *Id.* Judge Herndon rejected that argument and emphasized in bold type: **"Illinois choice of law principals do not control simply because this MDL Court is sitting in diversity in Illinois."** *Id.* (emphasis in original). Judge Herndon further wrote:

> The Court concludes that the better approach is to treat foreign direct filed cases as if they were transferred from a judicial district sitting in the state where the case originated. For purposes of this analysis, the Court considers the originating state to be the state where the plaintiff purchased and was prescribed the subject drug. Thus, for a foreign direct filed member action involving a plaintiff that purchased and was prescribed the subject drug in Tennessee, the Court will treat that plaintiff's claims as if they were transferred to this MDL from a district court in Tennessee.

*Id.,* at *6. *See also In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.,* 76 F. Supp. 3d 294, 303 (D. Mass. 2015) ("The home forum designation of the direct filing plaintiffs is the best evidence I have of what these plaintiffs would have done absent direct filing. Just as Mississippi plaintiffs would have had a choice between at least two proper forums in the absence of direct filing, so too do they have such an option with the direct filing procedure. I will therefore consider the forum that the direct filing plaintiffs designated on their short form complaints as the originating forum for the choice of law analysis."); *Wahl v. General Electric Co.,* 983 F.Supp. 2d 937, 943 (M.D. Tenn. 2013) ("Most of the courts that have considered this peculiar procedural posture have stated that it is appropriate to apply choice of law rules of the 'originating' jurisdiction [i.e. where the case would have been brought but for the CMO permitting direct filing], rather than the choice of law rules of the MDL Court. These courts have generally reasoned that the direct filing procedure is simply designed to promote judicial economy and conserve the parties' resources, not to alter the choice of law rules."); *In re Avandia Marketing, Sales Practices and Prods Liability Litig.,* 2012 WL 3205620, at *2 (E.D. Pa. August 7, 2012) ("The Court has concluded, as have other MDL courts, that such [direct filed] cases should be governed by the law

of the states where Plaintiffs received treatment and prescriptions for Avandia.  This ruling will promote uniform treatment between those Plaintiffs whose cases were transferred into the MDL from their home states and those who filed directly into the MDL.").

Thus, there are two different approaches for examining choice of law issues for direct filed cases in this MDL: (1) focus on the court designated by the plaintiff in the Short Form Complaint as the place of proper venue as discussed in the *Dobbs, In re Fresenius Granuflo,* and *Wahl* cases (and as Cook already argued); or (2) focus on the place where the plaintiff received the IVC filter prescription and treatment as held in the *In re Watson Fentanyl, In re Yasmin*, and *In re Avandia* cases. Under both approaches, neither Indiana choice of law rules nor Indiana law apply to these cases. It is undisputed that Plaintiff's Short Form Complaint unambiguously listed venue choices—just as the plaintiff in *Graham*—at locations outside of Indiana.  Specifically, Plaintiff's Short Form Complaint listed the United States District Court, District of Colorado.  *See* Bertram Decl., Exhibit 1, at ¶7.  Moreover, Plaintiff purchased and was prescribed her IVC filter outside of Indiana. *Id.*, at ¶¶4-6.  Therefore, the Court should reject Cook's attempt to apply Indiana law.

## III.    The Cook Defendants Motion should be denied because Plaintiff's claims are timely under Colorado law

The weight of authority cited herein demonstrates that Colorado law should apply to Plaintiff's claims.  Colorado applies a two (2) year statute of limitations to claims involving product liability and personal injuries.  *See* Colo. Rev. Stat. Ann. § 13-80-102.

In Colorado, the discovery rule provides that a "cause of action for injury to [a] person ... shall be considered to accrue on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence." § 13-80-108(1), 6A C.R.S. (1987).  A claim for relief "does not accrue until the plaintiff knows, or should know, in the exercise of reasonable diligence, all material facts essential to show the elements of that cause of action." *City of Aurora*

*v. Bechtel Corp.*, 599 F.2d 382, 389 (10th Cir. 1979) (applying Colorado law). The statute of limitations does not begin to run at the mere discovery of a physical process leading to an injury. *Financial Assoc. v. G.E. Johnson Const. Co.*, 723 P.2d 135, 138 (Colo. 1986) (applying the discovery rule to improvement of real property).

Plaintiff has asserted claims in her Short Form Complaint that are properly considered product liability and consumer fraud claims under Colorado law. *See* Bertram Decl., Exhibit 1, at ¶14.  Plaintiff was implanted with a Cook Celect filter in Colorado. *Id.*, at ¶12, *See also*, Exhibit 2, at Section III.   Additionally, Plaintiff's state of residence at the time of her implant and alleged injuries was Colorado.  *Id.,*  Exhibit 1, at ¶¶4-6; *See also* Exhibit 2, at Section II.6.

Plaintiff does not dispute that her open removal surgery occurred on July 31, 2007. Additionally, Plaintiff does not dispute that her Short Form Complaint was filed on November 6, 2017.  Plaintiff is not a legal or medical expert.  *See* Bertram Decl., Exhibit 2, at Sec. III.  Plaintiff's PPS describes a failed percutaneous removal on July 30, 2007, followed by an open removal on July 31, 2007. *Id.*  There are no statements in the PPS describing when Plaintiff linked her injuries to defects specific to the Cook Gunther Tulip filter. *Id.*  Colorado courts have consistently held that a Plaintiff must be in possession of "all material facts essential to show the elements" of the cause of action before accrual.  Additionally, "for purposes of statute of limitations, the time when plaintiff discovered, or through use or reasonable diligence should have discovered, negligent conduct is normally question of fact which must be resolved by trier of fact…" *See Winkler v. Rocky Mountain Conference of United Methodist Church*, 923 P.2d 152 (Colo. App. 1995).

The Cook Defendants argue that Plaintiff's claims accrued on or about July 31, 2007. Plaintiff disputes that the date of her open removal surgery necessarily serves as an accrual date for her claims.  Almost no case-specific discovery has been conducted and, therefore, it remains

9

unclear what (if any) information was conveyed to Plaintiff about the necessity of performing an open removal procedure on July 31, 2007.  As such, Defendants' motion is premature and should be denied.

### IV.    Plaintiff's claims are timely even if Indiana's choice-of-law rules apply.

Indiana has a two-year statute of limitations for product liability actions.  *See* Ind. Code § 33-1-1.5-5.  The statute provides that the action "must be commenced within two (2) years after the cause of action accrues." *Id.*  While the statute is silent as to the meaning of "accrues," Indiana courts have recognized a discovery rule and extended it to apply to all tort claims.  *See Wehling v. Citizens Nat'l Bank*, 586 N.E. 840, 842-843 (Ind. 1992).   Indiana's two-year statute of limitations begins "to run from the date the plaintiff knew or should have discovered that she suffered an injury or impingement, and that it was caused by the product or act of another." *Barnes v. A.H. Robins Co.*, 476 N.E. 2d 84, 87-88 (Ind. 1985).

Plaintiff is not a legal or medical expert.  *See* Bertram Decl., Exhibit 2, at Sec. II.10, III. The Supreme Court of Indiana has recognized that "medical and diagnostic issues" are common between actions for medical malpractice and products liability claims.  *See Degussa Corp. v. Mullens*, 744 N.E. 2d 407, at 410 (Ind. 2011).  The Seventh Circuit has also noted that "while events short of a doctor's diagnosis can provide a plaintiff with evidence of a reasonable possibility that another's product caused his or her injuries, a plaintiff's mere suspicion that another's product caused the injuries is insufficient to trigger the statute. *Evenson v. Osmose Wood Preserving Co. of Am.*, 899 F.2d 701, 705 (7th Cir. 1990) (applying Indiana law).  Here, it is undisputed that Plaintiff had an open retrieval of her Cook Celect filter on July 31, 2007.  However, Plaintiff's ability to understand the nature and extent of her injuries presents complex "factually and legally relevant questions" about how her doctors conveyed information to her and what emphasis her

10

doctors placed on "potentially tortious causes over other causes." *See Degussa Corp.*, 744 N.E.2d 407, at 411.   Because Plaintiff's physicians have not been deposed, it is unclear how much emphasis may have been placed on the filter as being a tortious cause over other factors or comorbid conditions.

**V.      The Cook Defendants' fraudulent concealment defeats its statute of limitations defense**

Plaintiff has alleged fraudulent concealment on the part of the Cook Defendants.  Plaintiff's Master Complaint in this case contains numerous allegations that the Cook Defendants had knowledge of the defects with its IVC Filters yet failed to warn doctors and patients.  *See Master Complaint* at ¶¶3, 4, 46, 50, 52, 55-58, 77, 81-88, 91, 95, 103-106, and 113-120.   A copy of the Master Complaint is attached hereto as Exhibit 4 to Bertram Decl.   Additionally, equitable tolling has been asserted in the Master Complaint at ¶¶195-200 based on Plaintiffs' claims that the Cook Defendants' withholding of pertinent information prevented Plaintiff from discovering the tortious cause of her injuries.   This doctrine estops a defendant from utilizing the statute of limitations as a defense when they have committed fraud.

> The doctrine of fraudulent concealment operates to estop a defendant from asserting a statute of limitations defense when that person, by deception or a violation of a duty, has concealed material facts from the plaintiff thereby preventing discovery of a wrong.   Thus, equitable estoppel can arise from active efforts to conceal the malpractice or from failure to disclose material information when a fiduciary or confidential relationship exists between the physician and patient.  The physician's failure to disclose that which he knows, or in the exercise of reasonable care should have known, constitutes constructive fraud.

*See Hughes v. Glease*, 659 N.E.2d 516, 518 (Ind. 1995); *see also, Hospital Corp. v. Hiland*, 547 N.E. 2d 869, 873 (Ind. App. 1989); *Cacdac v. Hiland*, 561 N.E.2d 758 (Ind. 1990); *Van Dusen v. Stotts*, 712 N.E.2d 491 (Ind.1999).   When the concealment is active, the period of estoppel is not affected by the date of termination of the relationship but continues for a reasonable time after "the

11

plaintiff *discovers the alleged malpractice or discovers information* which in the exercise of reasonable diligence would lead to discovery of the malpractice. *Hughes*, 659 N.E.2d at 518 (emphasis added, citation omitted).

Allegations of the Cook Defendants' fraud have been proffered since the onset of this litigation. For example, Plaintiffs' Master Complaint contains the following averments:

> 44. While not inclusive of all medical studies published during the relevant time period, the above references show that the Defendants *failed to disclose* to physicians, patients, and/or Plaintiffs that its Cook Filters were subject to breakage, tilt, inability of removal, and migration even though they knew or should have known the same was true.
> 45. At all times relevant hereto, the Defendants continued to promote the Cook Filter as safe and effective even when inadequate clinical trials had been performed to support long or short to safety and/or efficacy.
>
> 46. The Defendants *concealed* the known risks and failed to warn of known or scientifically knowable dangers and risks associated with Cook Filters, as aforesaid.
>
> . . .
>
> 114. Defendants engaged in *unfair, unconscionable, deceptive, fraudulent, and misleading* acts or practices in violation of all states' consumer protection laws, identified below.
>
> 115. Through its *false, untrue and misleading* promotion of Cook's IVC Filters, Defendants induced Plaintiffs to purchase and/or pay for the purchase of Cook's IVC filters.
>
> 116. Defendants *misrepresented the alleged benefits and characteristics of Cook's IVC Filters; suppressed, omitted, concealed, and failed to disclose* material information concerning known adverse effects of Cook's IVC Filters; misrepresented the quality and efficacy of Cook's IVC Filters as compared to much lower-cost alternatives; misrepresented and advertised that Cook's IVC Filters were of a particular standard, quality, or grade that they were not; misrepresented Cook's IVC Filters in such a manner that later, on disclosure of the true facts, there was a likelihood that Plaintiffs would have opted for an alternative IVC Filter or method of preventing pulmonary emboli.
>
> 117. Defendants' conduct created a likelihood of, and in fact caused, confusion, and misunderstanding. Defendants' conduct *misled, deceived*, and damaged Plaintiffs, and Defendants' fraudulent, *misleading and deceptive* conduct was perpetrated with an intent that Plaintiffs rely on said conduct by purchasing and/or

paying for purchases of Cook's Filters.  Moreover, Defendants knowingly took advantage of Plaintiffs, who were reasonably unable to protect their interests due to ignorance of the harmful adverse effects of Cook's IVC Filters.

118.  Defendants' conduct was *willful, outrageous, immoral, unethical, oppressive, unscrupulous, unconscionable*, and substantially injurious to Plaintiffs and offends the public conscience.

Doc. 213 Filed 1/30/15 (emphasis added).   These averments were supported with evidence

disclosed at the Brand trial that began January 15, 2019 (1:14-ml-2570).  For example:

My personal opinion is, if the new is not considered safe, the current should be stopped, based on theoretical calculations and testing.

We are trying to get some knowledge of the movement of a cava with an implanted filter, but nobody seems to have a dynamic evaluation.

To me it is very important that we at WCE can have the same conclusion as what was send to the FDA.

We do not want to hide that the filter broke at a test at a clinical relevant diameter, but to use the result to prove the safety…

Trial Exhibit PX-1148, attached hereto as Exhibit 5 to Bertram Decl.

… the Celect Filter may increase the risk of migration during use compared to the Tulip.

…

"Without further detailed analysis, it was my conclusion that the new filter would be unlikely to fulfill the conformity assessment requirements unless some supportive human clinical data is established."

…

The risk analysis and the clinical evaluation have identified some safety concerns associated with the new design of the filter.  The literature has been reviewed extensively, and discussions have been going on for the past 3 years.  However, to date it has not been possible to find any clear evidence of the existing available data that could clarify and justify the safety risks identified.  If you can provide some new evidence or inputs which can clarify these safety concerns, we would be happy to take these inputs into considerations [sic].

Trial Exhibit PX -1099, attached hereto as Exhibit 6 to Bertram Decl.

Q. Now, you told this jury a couple of days ago, essentially, that you believed the email message that attached this manuscript, that it was an effort by upper management – by upper management to hide a picture of the sheep aorta that had perforated, correct?

A. And that was my opinion.

January 17, 2019 Trial Testimony of Harlan M. Krumholz, M.D., 1079:23 – 1080:3, attached hereto as Exhibit 7 to Bertram Decl.

Q. – can you explain – you've already explained the concordance between Dr. Tipperman and Dr. Gordon.  There's obviously a discrepancy – well, first of all, there's a big discrepancy between what cook told the FDA and what all three sets of doctors found. Would you agree?
A. That's true.

January 15, 2019 Trial Testimony of Harlan M. Krumholz, M.D., 577:18-23, attached hereto as Exhibit 7 to Bertram Decl.

A. They concluded that such a trial would be feasible, that in their – based on what they found, they said, yeah, this went around the block.  We think there's no reason to think it can't work. You could do it.

Q. So did Cook then sponsor or conduct a larger randomized-control trial on the Celect after they determined it was feasible?

A. Not that I'm aware.

January 15, 2019 Trial Testimony of Harlan M. Krumholz, M.D., 709:2-9, attached hereto as Exhibit 7 to Bertram Decl.

Let's just put on the screen for a moment Plaintiff's Exhibit 1841.

This is a document we discussed yesterday regarding the observations – a summary of observations from the OUS clinical investigators, including observations of 8, 6, 10, 5, and greater than 3 millimeters outside the IVC.  In this letter from April of 2007, did Cook disclose the information regarding these struts outside the wall from the OUS study to the FDA?

A. They did not.

Q. Are you aware, based on your review of the communications between Cook and the FDA, of any communication at any time where Cook revealed to the FDA that there were these multiple struts outside the wall between 3 and 10 millimeters?

A. I'm not aware of any communication in which they told the FDA that there had been these penetrations described by their site investigators.

January 15, 2019 Trial Testimony of Harlan M. Krumholz, M.D., 630:19 – 631:10, attached hereto as Exhibit 7 to Bertram Decl.

A. No, it's not possible to make an informed decision because some of the key information was not in the public domain.

Q. Known to Cook, but not disclosed?

A. That's right.

January 15, 2019 Trial Testimony of Harlan M. Krumholz, M.D., 954:23 – 955:1, attached hereto as Exhibit 7 to Bertram Decl.

Q. In the 2009 time frame, did doctors know the dangers that the Celect posed in terms of perforation – perforation? Was that disclosed by Cook?

A. No.

Q. Was there publicity in 2009 to put doctors on alert that the Celect filter had this tendency to perforate the vena cava –

A. No.

Q. At a high rate?

A. No.

January 15, 2019 Trial Testimony of Harlan M. Krumholz, M.D., 955:18 – 956:2, attached hereto as Exhibit 7 to Bertram Decl.

Q. Have your read the final reported of OUS?

A. Yes, sir.

Q. Does it show fracture –

A. No, sir.

Q. that particular filter?

A. It doesn't mention any fracture, sir.

Q. Did they disclose that?

15

A. No, sir.

January 22, 2019 Trial Testimony of Gregory I. Gordon, M.D., 1674:25 – 1676:7, attached hereto as Exhibit 7 to Bertram Decl.

The above-described documents and portions of trial testimony are just a mere smattering of evidence showing Cook committed fraud upon the medical community, which would necessarily include the Plaintiff's implanting physician. Because Colorado and Indiana recognize the doctrine of fraudulent concealment, and Plaintiff has produced evidence of fraud and non-disclosure of material information that was known only to Cook, there are genuine issues of material fact that preclude summary judgement.

## CONCLUSION

WHEREFORE, based on the foregoing, Plaintiff respectfully requests that this Court deny the Cook Defendants' Motion for Summary Judgment.

Dated:  October 29, 2019                            Respectfully submitted,

**BERTRAM & GRAF, L.L.C.**

/s/ Benjamin A. Bertram
Benjamin A. Bertram, MO Bar #56945
2345 Grand Boulevard, Suite 1925
Kansas City, MO 64108
Telephone: (816) 523-2205
Facsimile:  (816) 523-8258
benbertram@bertramgraf.com
blair@bertramgraf.com

*Attorney for Plaintiff Diane Smith*

### CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2019, a copy of the foregoing was served electronically and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.

/s/ Benjamin A. Bertram
*Attorney for Plaintiff*