UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

IN RE COOK MEDICAL, INC., IVC FILTERS           Case No. 1:14-ml-2570-RLY-TAB
MARKETING, SALES PRACTICES AND                  MDL No. 2570
PRODUCTS LIABILITY LITIGATION

_____

This document relates to:
26 Cases Listed in Exhibit A to Opening Motion (Dkt. 11921)

_____

**COOK DEFENDANTS' _AMENDED_ REPLY MEMORANDUM IN SUPPORT OF
OMNIBUS MOTION FOR SUMMARY JUDGMENT
BASED ON APPLICABLE STATUTE OF LIMITATIONS**

# TABLE OF CONTENTS

Page

I.    COOK WITHDRAWS ITS MOTION AS TO ONE CASE, AND DECISION IN TWO OTHER CASES SHOULD BE DEFERRED.............................................................. 1

II.    COOK IS ENTITLED TO SUMMARY JUDGMENT AS TO PLAINTIFFS WHO FILED NO RESPONSE TO COOK'S MOTION..................................................... 1

III.    THE COURT HAS ALREADY REJECTED PLAINTIFFS' ARGUMENTS THAT THEIR CLAIMS ARE GOVERNED BY THE STATUTES OF LIMITATIONS OF THEIR HOME STATES, RATHER THAN THE STATUTE OF LIMITATIONS OF INDIANA. ................................................................................. 2

IV.    COOK'S MOTION PROPERLY RELIES ON PLAINTIFFS' OWN CLAIMS OF INJURIES AND MEDICAL RECORDS AS SUBMITTED IN THEIR CASE CATEGORIZATIONS. .................................................................................................... 3

V.    COOK'S MOTION IS TIMELY. ........................................................................................ 4

VI.    INDIANA'S TWO-YEAR STATUTE OF LIMITATIONS BARS PLAINTIFFS' TORT CLAIMS. .............................................................................................................. 6

VII.    PLAINTIFFS' CLAIMS OF FRAUDULENT CONCEALMENT AND EQUITABLE TOLLING DO NOT PREVENT THE RUNNING OF THE STATUTE OF LIMITATIONS AGAINST THEM. ....................................................... 17

    A.    PLAINTIFFS HAVE NOT PLEADED FRAUDULENT CONCEALMENT WITH THE PARTICULARITY REQUIRED BY RULE 9(B)................................................................................................... 18

        1.    RULE 9(B) REQUIRES PLAINTIFFS TO PLEAD FRAUDULENT CONCEALMENT WITH PARTICULARITY. .......... 18

        2.    PLAINTIFFS HAVE NOT PLEAD FRAUDULENT CONCEALMENT WITH PARTICULARITY. ...................................... 19

    B.    PLAINTIFFS' CLAIMS OF FRAUDULENT CONCEALMENT DO NOT ALLEGE CONCEALMENT OF THEIR CAUSES OF ACTION AND THUS CANNOT TOLL THE STATUTE OF LIMITATIONS. ............... 20

    C.    PLAINTIFFS' CLAIM OF FRAUDULENT CONCEALMENT WOULD NOT TOLL THE STATUTE OF LIMITATIONS ON THEIR CLAIMS. ......... 22

VIII.    PLAINTIFFS' OTHER CLAIMS ALSO FAIL AS A MATTER OF LAW.................. 23

    A.    PLAINTIFFS' EXPRESS WARRANTY CLAIMS FAILS BECAUSE, AS THE COURT HAS PREVIOUSLY RULED, THE MASTER COMPLAINT FAILS TO STATE SUFFICIENT ALLEGATIONS TO SUPPORT THIS CLAIM ...................................................................................... 24

    B.    PLAINTIFFS' IMPLIED WARRANTY CLAIMS ARE SUBJECT TO INDIANA'S TWO-YEAR STATUTE OF LIMITATIONS AND THEREFORE FAIL WITH THEIR OTHER TORT CLAIMS. ........................ 25

C.     PLAINTIFFS FAILED TO PLEAD THEIR CONSUMER FRAUD CLAIMS WITH THE PARTICULARITY REQUIRED BY RULE 9(B). ......... 26

D.     PLAINTIFFS' DERIVATIVE CLAIM FOR LOSS OF CONSORTIUM AND PUNITIVE DAMAGES FAIL BECAUSE THEY CANNOT STAND ON THEIR OWN. ................................................................................ 29

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Dayco Corp. v. Goodyear Tire & Rubber Co.*,
    523 F.2d 389 (6th Cir. 1975) ................................................18

*Dobbs v. DePuy Orthopedics, Inc.*,
    842 F.3d 1045 (7th Cir. 2016) ...............................................2

*Evenson v. Osmose Wood Preserving Co. of Am.*,
    899 F.2d 701 (7th Cir. 1990) ................................................15

*Frey v. Bank One*,
    91 F.3d 45 (7th Cir. 1996) ...................................................11

*Hayes v. Multiband EC Corp.*,
    No. 4:13-CV-00167-RLY, 2014 WL 1340679 (S.D. Ind. Apr. 4, 2014) .............11, 12, 13, 23

*Horn v. A.O. Smith Corp.*,
    50 F.3d 1365 (7th Cir. 1995) ................................................7, 21

*In re Bard IVC Filters Prods. Liab. Litig.*,
    2018 WL 3957737 (D. Ariz. Aug. 17, 2018) ................................9

*In re Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*,
    155 F. Supp. 2d 1069 (S.D. Ind. 2001) ...................................18

*In re Mirena IUD Prods. Liab. Litig. (Truitt)*,
    29 F. Supp. 3d 345 (S.D.N.Y. 2014) ..................................8, 12, 14, 15

*Kazmer v. Bayer Healthcare Pharm, Inc.*,
    2007 WL 4148003 (N.D. Ind. Nov. 19, 2007) ..........................11

*Larson v. Northrop Corp.*,
    21 F.3d 1164 (D.C. Cir. 1994) ...............................................18

*Leathermon v. Grandview Mem'l Gardens, Inc.*,
    No. 4:07-CV-137-SEB-WGH, 2011 WL 2445980 (S.D. Ind. June 15, 2011) ........................18

*Marshall v. Hyundai Motor Am.*,
    51 F. Supp. 3d 451 (S.D.N.Y. 2014) ......................................21

*Miller v. A.H. Robins Co.*,
    766 F.2d 1102 (7th Cir. 1985) ...............................................22

*Miller v. Gain Fin., Inc.*,
    995 F.2d 706 (7th Cir. 1993) ................................................27

US.125315158.11

*Nelson v. Sandoz Pharms. Corp.*,
    288 F.3d 954 (7th Cir. 2002) ................................................................13, 14, 15

*Neuhauser v. A.H. Robins Co.*, 573. F. Supp. 8 (S.D. Ind. 1983)...........................8, 12

*Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust v. Walgreen Co.*,
    631 F.3d 436 (7th Cir. 2011) .........................................................................27

*United States ex rel. Berkowitz v. Automation Aids, Inc.*,
    896 F.3d 834 (7th Cir., 2018) ...................................................................18, 26

*United States ex rel. Lusby v. Rolls–Royce Corp.*,
    570 F.3d 849 (7th Cir. 2009) ...........................................................................18

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*,
    536 F.3d 663 (7th Cir. 2008) .........................................................19, 20, 27

STATE CASES

*Alldredge v. Good Samaritan Home, Inc.*,
    9 N.E.3d 1257 (Ind.2014) ...............................................................................20

*B & B Paint Corp. v. Shrock Mfg., Inc.*,
    568 N.E.2d 1017 (Ind. Ct. App. 1991) .............................................................25

*Barnes v. A.H. Robins Co.*,
    476 N.E.2d 84 (Ind. 1985) .......................................................................10, 16

*Burks v. Rushmore*,
    534 N.E.2d 1101 (Ind. 1989) ...........................................................................7

*Burnett v. Villaneuve*,
    685 N.E.2d 1103 (Ind. Ct. App. 1997) .............................................................21

*Cooper Indus., LLC v. City of South Bend*,
    899 N.E.2d 1274 (Ind. 2009) ....................................................................7, 12

*Cossman v. DaimlerChrysler Corp.*,
    108 Cal. App. 4th 370 (2003) ..........................................................................12

*Custom Radio Corp. v. Actuaries & Benefit Consultants, Inc.*,
    998 N.E.2d 263 (Ind. Ct. App. 2013)................................................................15

*Degussa Corp. v. Mullens*,
    744 N.E.2d 407 (Ind. 2001) ..................................................................... passim

*Doe v. Shults–Lewis Child & Family Servs., Inc.*,
    718 N.E.2d 738 (Ind. 1999) .............................................................................20

- iv -

*Doe v. United Methodist Church,*
    673 N.E.2d 839 (Ind. Ct. App. 1996)....................................................................8

*Fager v. Hundt,*
    610 N.E.2d 246 (Ind. 1993) .........................................................................8, 20

*Ludwig v. Ford Motor Co.,*
    510 N.E.2d 691 (Ind. Ct. App. 1987)...................................................................22

*Lyons v. Richmond Cmty. Sch. Corp.,*
    19 N.E.3d 254 (Ind. 2014) ...............................................................................21

*Malachowski v. Bank One, Indianapolis,*
    590 N.E.2d 559 (Ind. 1992) ...............................................................................21

*Martin Oil Mktg. Ltd. v. Katzioris,*
    908 N.E.2d 1183 (Ind. Ct. App. 2009) ................................................................7

*Morgan v. Benner,*
    712 N.E.2d 500 (Ind. Ct. App.1999), *reh'g denied, trans. denied* ...........................6

*Perryman v. Motorist Mut. Ins. Co.,*
    846 N.E.2d 683 (Ind. Ct. App. 2006)...................................................................11

*Rieth-Riley Const. Co. v. Gibson,*
    923 N.E.2d 472 (Ind. Ct. App. 2010)...................................................................17

*Runkle v. Runkle,*
    916 N.E.2d 184 (Ind. Ct. App. 2009)..............................................................6, 15

*Schuchman/Samberg Investments, Inc. v. Hoosier Penn Oil Co. Inc.,*
    58 N.E.3d 241 (Ind. Ct. App. 2016).............................................................7, 8, 16

*Shaum v. McClure,*
    902 N.E.2d 853 (Ind. Ct. App. 2009)...................................................................15

*Wehling v. Citizens Nat'l Bank,*
    586 N.E.2d 840 (Ind. 1992) ...............................................................................16

*Wojcik v. Almase,*
    451 N.E.2d 336 (Ind. Ct. App. 1983)..............................................................8, 11

**STATE STATUTES**

Ind. Code § 34-20-1-1......................................................................................25

Miss. Code § 11-1-63(4)...................................................................................25

Miss. Code § 75-24-5.......................................................................................27

N.Y. Gen. Bus. Law § 349 .................................................................................................27

N.Y. UCC § 2-313 .............................................................................................................25

**RULES**

Federal Rule of Civil Procedure 8 ....................................................................................26

Federal Rule of Civil Procedure 9(b) ........................................................................ passim

**OTHER AUTHORITIES**

32 Am. Jur. Proof of Facts 3d 129 ...................................................................................22

JPML & Federal Judicial Center, *Ten Steps to Better Case Management, a Guide for Multidistrict Litigation Transferee Judges*, found at
https://www.fjc.gov/sites/default/files/2014/Ten-Steps-MDL-Judges-2D.pdf ....................4, 5

US.125315158.11

Plaintiffs filed their actions against Cook more than two years after they underwent *open surgical procedures* involving mid-line abdominal incisions *to surgically remove* their Cook IVC filters.[1]   None of these Plaintiffs disputes the date of their open surgical procedure or the date they commenced their action.   Indiana's statute of limitations therefore bars Plaintiffs' claims as a matter of law.   Plaintiffs' responses to Cook's motion offer no legal basis to deny Cook's motion and identify no material issues fact that would defeat summary judgment.   The Court has already rejected many of Plaintiffs' arguments, and the remainder are inconsistent with Indiana law and federal procedure.   The Court should therefore enter summary judgment for Cook in these cases.

**I.      Cook Withdraws Its Motion as to One Case, and Decision in Two Other Cases Should Be Deferred.**

Cook withdraws its motion for summary judgment in the *Benjamin Auerbach* case, No. 1:17-cv-04218 (case No. 16 on Exhibit A).   The case was dismissed for failure to categorize, *see* Dkt. 10622, and a motion for reconsideration is pending, *see* Dkt. 11340.   Should the Court grant reconsideration and reinstate the case, Cook reserves the right to renew its motion.

In addition, Cook and the Toriseva Law Firm have agreed to an extension for responsive briefing in two cases.   The issues thus are not yet ripe with respect to these two cases because they have not been fully briefed, and decision in these cases should be deferred.

| Case No. on Exhibit A | Plaintiff | Case Number |
|---|---|---|
| 4 | Dunning, Rosemary & Arthur | 1:15-cv-00235 |
| 3 | Keltner, Douglas | 1:15-cv-00102 |

---

[1] Cook submits this Amended Reply to correct potentially misleading clerical errors that appeared in the original motion, Dkt. 12443.

US.125315158.11

II.     **Cook is Entitled to Summary Judgment as to Plaintiffs Who Filed No Response to Cook's Motion.**

In two cases, Plaintiffs have filed no response to Cook's motion.  Those cases are:

| Case No. on Exhibit A | Plaintiff | Case No. | Plaintiff's attorney |
|---|---|---|---|
| 2 | Wells, Marie and Richard | 1:14-cv-00841 | Hovde Dassow & Deets, LLC |
| 1 | Elder, Regina and Thomas | 1:14-cv-00784 | Hovde Dassow & Deets, LLC |

Cook is entitled to summary judgment as to Plaintiffs' claims in those cases in which Plaintiffs filed no response.

III.    **The Court Has Already Rejected Plaintiffs' Arguments that Their Claims Are Governed by the Statutes of Limitations of Their Home States, Rather Than the Statute of Limitations of Indiana.**

Many Plaintiffs argue in their responses that the Court should apply the statutes of limitations of their home states rather than that of Indiana, arguing that Cook is judicially estopped from arguing for the application of Indiana's statute of limitations based on its earlier position in the *Graham* case, *see* Dkts. 12236, 12250, 12267, 12269, 12284, 12295, 12299, 12300, 12301, 12303, 12305, 12306, 12307, and 12309, and/or that their home states' laws apply based on *Dobbs v. DePuy Orthopedics, Inc.,* 842 F.3d 1045 (7th Cir. 2016), and related cases, *see* Dkts. 12229, 12236, 12248, 12250, 12267, 12269, 12284, 12295, 12298, 12299, 12300, 12301, 12303, 12305, 12306, 12307, and 12309.

The Court has already considered and rejected both of Plaintiffs' arguments in an identical context.  In its decision on Cook's previous omnibus motion for summary judgment based on the statute of limitations in other time-barred cases, Dkt. 11725, The Court held:

> After listening to the parties' oral argument, the court finds, under the unique circumstances of this case, that ***judicial estoppel does not bar Cook from arguing the application of Indiana's choice-of-law rules***. The court further finds that ***Indiana law applies***.  The cases at issue were originally filed in the Southern

US.125315158.11

District of Indiana, Indianapolis Division, and are not "direct-filed" cases—i.e., cases treated as if they originated in the plaintiff's home district and had been transferred to this district by the Judicial Panel on Multi-District Litigation pursuant to Section 1407.

Dkt. 12256 at 1-2 (emphasis added).  All Plaintiffs involved in this motion originally filed their actions in the Southern District of Indiana, and Indiana's statute of limitations applies to their claims.[2]

## IV.   Cook's Motion Properly Relies on Plaintiffs' Own Claims of Injuries and Medical Records as Submitted in Their Case Categorizations.

Multiple Plaintiffs argue in their responses that Cook may not rely on Plaintiffs' own Case Categorization Forms (CCF) in its summary judgment motion, arguing that the CCFs were intended only for the bellwether selection process and that Cook's use of them here was improper.  *See* Dkts. 12229, 12236, 12250, 12267, 12284, 12298, 12299, 12300, 12301, 12303, and 12304.  Again, the Court has already rejected this argument.

As the Court will recall, more than two months ago, the Plaintiffs' Steering Committee moved to strike one of Cook's motions for summary judgment in a separate set of cases (Dkt. 11502) based on the statute of limitations on this same ground, claiming that the CCFs were for bellwether selection only and that Cook's motion improperly used the CCFs.  *See* PSC's Mot. to Strike, Dkt. 11518.  In response, Cook pointed out that the Court's orders concerning specific case categories and CCFs for new cases made clear that the CCFs were intended for case-screening purposes as well as bellwether selection, and that Cook was using the CCFs for the precise purpose for which they were intended.  *See* Cook's Reply to PSC's Motion to Strike, Dkt. 11556 at 2-5 (citing, inter alia, the Court's Orders at Dkts. 9322, 10617, 10632, 11377).

---

[2] Should the Court need to refer to Cook's arguments on these two issues, those arguments appear in Cook Defendants' Reply Memorandum to PSC's Response to Cook's Omnibus Motion for Summary Judgment Based Upon Statute of Limitations, Dkt. 12172, and Cook incorporates those arguments here by reference.

Based on these arguments, the Court denied the PSC's motion to strike and instead set a briefing schedule to address that motion on the merits.  *See* Entry on the August 20, 2019 Status Conference, Dkt. 11602, p. 1.

None of the Plaintiffs' responses to the present motion offers any reason for the Court to reconsider this decision; indeed, Plaintiffs' responses do not even acknowledge that the Court has already decided this issue.  The Cook Defendants incorporate by reference the arguments made in their response to the motion to strike (Dkt. 11556) and ask the Court to reject this effort to undermine its existing ruling.

## V.      Cook's Motion is Timely.

Several Plaintiffs argue that Cook's motion is premature, noting that case-specific discovery has not been undertaken in these cases and that Plaintiffs have not been deposed.  *See* Dkts. 12299, 12301, and 12303.

Plaintiffs' legal basis for this objection is unclear; no applicable Local or Federal Rule of Civil Procedure and no Order from this Court bars Cook from moving for summary judgment at this time.  On the contrary, in denying the PSC's motion to strike Cook's first omnibus motion for summary judgment based on the statute of limitations, the Court made clear that it is prepared now to address statute of limitations issues on the merits; if it were not, the Court would have had no reason to permit the briefing to go forward.  *See* Entry on the August 20, 2019 Status Conference (Dkt. 11602).

Moreover, best practices for MDL courts recommend taking up early motions for summary judgment and motions to dismiss as a means of establishing which MDL cases have arguable merit.  *See* JPML & Federal Judicial Center, *Ten Steps to Better Case Management, a Guide for Multidistrict Litigation Transferee Judges* § X(a) (2d ed. 2014), available at

- 4 -

https://www.fjc.gov/sites/default/files/2014/Ten-Steps-MDL-Judges-2D.pdf (explaining that resolution of dispositive motions is the transferee court's "perhaps most important" task). Such rulings help combat the common tactic by plaintiffs of filing time-barred and otherwise meritless cases to be included in global settlements, *see id.*—a tactic that is certainly on display here, as both this motion and the now-departed Category 1 and 2 cases demonstrate.

In fact, sufficient case-specific discovery **has** occurred in these cases to permit the parties and the Court to determine the two undisputed facts on which the present motion turns: (1) the objective determination of when these Plaintiffs knew or should have known of their injuries, and (2) the dates these Plaintiffs commenced their actions against Cook. The PPS/PFS sheets that include the relevant information were provided by Plaintiffs (on penalty of having their cases dismissed) and function as "interrogatory answers pursuant to Fed. R. Civ. P. 33 and 34 and [are] governed by the standards applicable to written discovery under Fed. R. Civ. P. 26 through 37." Third Amended Case Management Order No. 4, Dkt. 4226, ¶ 1(c).

The Court's case categorization screening measure requires all Plaintiffs to categorize their claims, provide "specific medical record(s)" in support of each claimed injury, and certify that their counsel has reviewed the records and that the categorizations based on "[t]he submission of the specific medical record(s) attached, and submission of [the] form … is the proper categorization for Plaintiff's case to the best of counsel's knowledge and belief." Categorization Form, Dkt. 9638-1. Through the categorization process, each Plaintiff here submitted categorizations forms attesting to their claimed injuries and providing the medical records they claim support those alleged injuries. Because these medical records state the dates of Plaintiffs' open retrieval procedures and have been certified as accurate by counsel, the Court has sufficient facts to apply the objective standard dictated by Indiana law to determine when the

US.125315158.11

Plaintiffs' causes of action accrued and the clock started running on the two-year limitation period. ***Importantly, no Plaintiff suggests that Cook has misstated either the date of Plaintiff's open removal surgery or the date on which Plaintiff commenced their action.   The facts at issue are not in dispute.***

These cases are ripe for adjudication, and Plaintiffs' own records demonstrate that the cases are time-barred as a matter of law—in several instances, by several years.  *See generally* Cook Defendants' Memorandum in Support of Omnibus Motion for Summary Judgment Based on Statute Of Limitations, Exhibit A, Dkt. 11922-1 (listing surgery and filing dates).

## VI.   Indiana's Two-Year Statute of Limitations Bars Plaintiffs' Tort Claims.

"In Indiana, statutes of limitation are favored because they afford security against stale claims and promote the peace and welfare of society." *Morgan v. Benner,* 712 N.E.2d 500, 502 (Ind. Ct. App.1999), *reh'g denied, trans. denied.*   "They are enacted upon the presumption that one having a well-founded claim will not delay in enforcing it."  *Id.*   Further, "[t]he defense of a statute of limitation is peculiarly suitable as a basis for summary judgment."  *Id.* at 502–503; *see also Runkle v. Runkle*, 916 N.E.2d 184, 191 (Ind. Ct. App. 2009) (quoting *Morgan*).

Indiana law requires plaintiffs to commence personal injury actions not more than two years after the occurrence of the injury at issue.  Multiple Plaintiffs argue in their responses that although they did not comply with this two-year deadline, their claims are nevertheless timely based on a discovery rule that tolls the statute of limitations.  *See* Dkts. 12229, 12236, 12248, 12250, 12269, 12284, 12295, 12298, 12299, 12300, 12301, 12303, 12304, 12305, 12306, 12307, and 12309.  These arguments all fail.  Plaintiffs' arguments based on other states' discovery rules fail because Indiana law provides the statute of limitations for these cases, as discussed above. Plaintiffs' arguments based on the Indiana discovery rule misunderstand and misapply that rule,

and do not defeat summary judgment.  And Plaintiffs' attempt to avoid the statute of limitations through vague claims of fraudulent concealment fail under Federal Rule 9(b).

> **A. Plaintiffs Open Surgical Procedures to Remove Their IVC Filters Alerted Them as a Matter of Law to the "Reasonable Possibility" that Their Injuries Resulted from Their Filters.**

Plaintiffs' open surgical procedures to remove their IVC filters necessarily established as a matter of law that their filters were a potential cause of their injuries, and thus commenced the running of the statute of limitations.  Indiana law holds that the question of when a cause of action accrues, and thus when the statute of limitation begins to run, is a question of law for the Court.  *See, e.g., Cooper Indus., LLC v. City of South Bend*, 899 N.E.2d 1274, 1280 (Ind. 2009) ("The determination of when a cause of action accrues is generally a question of law."). Only when the material facts are disputed does the issue present a jury question.  *See, e.g., Burks v. Rushmore*, 534 N.E.2d 1101, 1104 (Ind. 1989).

In determining when a cause of action accrues, the Court applies an objective standard. *Schuchman/Samberg Investments, Inc. v. Hoosier Penn Oil Co. Inc.*, 58 N.E.3d 241, 251 (Ind. Ct. App. 2016) ("we must apply an objective standard in determining the accrual date for its claims") (citing *Martin Oil Mktg. Ltd. v. Katzioris,* 908 N.E.2d 1183, 1188 (Ind. Ct. App. 2009)). Under this objective standard, the Court looks to what "a reasonable person in the [plaintiff's] position . . . possessing the information [plaintiff] did when [she] did, ***could have discovered*** through the exercise of ordinary diligence."  *Horn v. A.O. Smith Corp.*, 50 F.3d 1365, 1370 (7th Cir. 1995) (emphasis added).  Given this standard, the declarations Plaintiffs have submitted concerning their *subjective* beliefs and their claims that they lacked *actual* knowledge of

particular facts[3] have no role in the Court's inquiry.  *Doe v. United Methodist Church*, 673 N.E.2d 839, 842 (Ind. Ct. App. 1996) ("our supreme court specifically rejected an application of the discovery rule based upon the subjective perspective of the injured person based on the injured person's actual knowledge") (citing *Fager v. Hundt,* 610 N.E.2d 246, 250-51 (Ind. 1993)); *Schuchman/Samberg*, 58 N.E.3d at 251 (rejecting argument for later accrual date based on what plaintiff "subjectively believed").

In the present motion, there are only two facts material to each case:  the date of Plaintiff's open retrieval procedure and the date that Plaintiff commenced the present action. Cook set out these two dates in Exhibit A to its original motion, and none of Plaintiffs' responses disputes any of them.  As discussed in Cook's original memorandum, the surgical removal of a medical device from a person's body objectively and necessarily establishes a "reasonable possibility" that the device has harmed the person.  *See In re Mirena IUD Prods. Liab. Litig. (Truitt)*, 29 F. Supp. 3d 345, 352 (S.D.N.Y. 2014) (holding cause of action accrued on date of surgical removal of migrated IUD); *Wojcik v. Almase*, 451 N.E.2d 336, 342 (Ind. Ct. App. 1983) (holding that product liability claims based on broken implantable catheter accrued when device was removed, not when plaintiff sought subsequent treatment for retained fragment); *see also Neuhauser v. A.H. Robins Co.*, 573. F. Supp. 8, 9-10 (S.D. Ind. 1983) (holding that information that presence or removal of IUD could cause miscarriage coupled with subsequent miscarriage provided notice of possible link between product and injury and started running of statute of limitations).

---

[3] Dkt. 12298 at 3 (Plaintiff Kinsey) ("It was not until 2016 that Mr. Kinsey learned that the Filter was defective, and that this may have been the reason for his injuries."); Dkt. 12304 at 5 (Plaintiff Giddens) ("the two-year statute of limitations did not begin to run until 2015 when Plaintiff learned about the defects of his previously removed IVC filter and that he had a potential products liability claim")

Also as previously noted, both this Court and the Bard IVC Filter MDL court have already rejected the argument that an IVC filter claim could accrue at a point *after* removal of the filter.  *See* Dkt. 5575 (*Graham,* No. 1:15-cv-00764, granting summary judgment because "[t]he injuries described in her Complaint … were known to her immediately after her September 9 surgery" and the statute of limitations therefore expired two years later); *see also In re Bard IVC Filters Prods. Liab. Litig.*, 2018 WL 3957737, at *4 (D. Ariz. Aug. 17, 2018) ("It is not necessary that a plaintiff have knowledge of the exact nature or source of the problem, but only that a problem existed.") (applying similar Nebraska law).

Here, each of these Plaintiffs had an open surgical procedure to remove an IVC filter. Each Plaintiff claims their injury caused the need to undergo the open surgical procedure, and they seek compensation both for the costs of such surgeries and for the pain that results from them.  *See* Dkt. 213 (Master Consolidated Complaint) at 36 (seeking "[c]ompensatory damages, including without limitation past and future medical expenses [and] past and future pain and suffering").  It is therefore obvious—indeed, it is axiomatic—that the Plaintiff's IVC filter was the potential factual cause of the Plaintiff's need to undergo open surgery to remove the IVC filter.  Any other argument would be absurd.  Objectively and as a matter of law, Plaintiffs were on notice *at the latest* as of the dates of their open removal surgeries of the "reasonable possibility" that they were injured as the result of their IVC filters.  The statute of limitations began to run on that date, and Plaintiffs failed to file their cases within the required two years.

**B.**      **Indiana's discovery rule does not save Plaintiffs' claims.**

As noted above, to determine when a reasonably diligent plaintiff should have discovered the claimed injury, Indiana courts look at "the date the plaintiff knew or should have discovered that she suffered an injury or impingement, and that it was caused by the product or act of

- 9 -

another." *Degussa Corp. v. Mullens*, 744 N.E.2d 407, 410 (Ind. 2001) (quoting *Barnes v. A.H. Robins Co.,* 476 N.E.2d 84, 87-88 (Ind. 1985)).[4]  Multiple Plaintiffs argue that this limited discovery rule saves their untimely-filed claims from Indiana's statute of limitations, offering several variations on the argument.[5]  None of those arguments justifies applying the discovery rule in any of these cases or provides a basis for denying summary judgment.

> **1.   Indiana's discovery rule does not delay accrual of a cause of a product liability action until the plaintiff discovers that the product was defective.**

*No plaintiff suggests they were not injured at least as of the date of their open removal surgery.  No plaintiff denies that they knew of the injury and that it resulted from or was caused by their IVC filter.  Each plaintiff claims that an open removal was required because their filter could not safely be removed percutaneously.  On those facts alone, summary judgment is warranted.*  Instead, several Plaintiffs argue that under Indiana's discovery rule, their causes of action did not accrue and the statute of limitations did not begin to run until they discovered that their IVC filters were defective.   (Cook attaches as Exhibit 1 a chart showing what Plaintiffs made this argument and what they have argued.)  This argument fails because

---

[4] Several Plaintiffs argue that their home states' statutes of limitation or discovery rules save their claims from this statute of limitations bar.  *See* Dkt. 12229 at 10-13 (Arizona discovery rule); Dkt. 12236 (Florida statute of limitations); Dkt. 12248 at 4-5 (Ohio discovery rule); Dkt. 12250 at 8 (South Carolina law); Dkt. 12269 at 9-11 (Mississippi law (Plaintiff Lambert) and New York law (Plaintiff McCormack)); Dkt. 12284 at 8 (Mississippi); Dkt. 12295 at 8 (Florida law); Dkt. 12299 (Oregon); Dkt. 12300 (New York); Dkt. 12301 at 9-14 (Oregon); Dkt. 12303 (Montana); Dkt. 12305 at 9-10 (Iowa); Dkt. 12306 at 8-9 (Connecticut); Dkt. 12307 at 5-7 (New York); Dkt. 12309 at 8-10 (Colorado).  As discussed above, however, the Court has already ruled that the Indiana statute of limitations governs in cases originally filed in this district.  *See* Dkt. 12256 at 1-2.  All of these Plaintiffs originally filed their cases in this district.  Indiana's statute of limitations therefore applies, and statutes and discovery rules from other states cannot save their claims.

[5] Two Plaintiffs generally invoke Indiana's discovery rule as a ground for avoiding the statute of limitations, but they offer no analysis suggesting how it would apply to the facts in their cases. *See* Dkt. 12269 at 12.

US.125315158.11

Indiana law does not require a plaintiff to know that a product is "defective" for a cause of action to accrue and for the statute of limitations to begin running.

Plaintiffs confuse and conflate the discovery of the *injury* for which compensation is sought—confirmed here by the surgical removal of the filter—with the *legal theory* on which the claim for compensation is based—that the filter was defective.  The discovery rule's focus is on a link between the injury and the *product*, not a link between the injury and a *defect* in the product, and the statute begins to run on "the date the plaintiff knew or should have discovered that he suffered an injury that was caused *by the product or act of another*." *Kazmer v. Bayer Healthcare Pharm, Inc.*, 2007 WL 4148003, at *2-3 (N.D. Ind. Nov. 19, 2007) (emphasis added) (citing *Degussa,* 744 N.E.2d at 410).

Consistent with this, "the discovery rule only postpones the statute of limitations by belated discovery of key facts and not by delayed discovery of legal theories."  *Perryman v. Motorist Mut. Ins. Co.*, 846 N.E.2d 683, 689 (Ind. Ct. App. 2006).  As the *Perryman* court noted:

> [T]he discovery rule does not mandate that plaintiffs know with precision the legal injury that has been suffered, but merely anticipates that a plaintiff be possessed of sufficient information to cause him to inquire further in order to determine whether a legal wrong has occurred.

*Id.*; *see also Frey v. Bank One,* 91 F.3d 45, 47 (7th Cir. 1996) ("[A] plaintiff need not uncover the legal theory for holding a defendant liable for the action to accrue.") (applying Indiana law) (emphasis added).

Here, Plaintiffs necessarily knew that they had suffered injuries associated with their IVC filters at the time they had open surgery to remove those IVC filters.  *See Wojcik*, 451 N.E.2d at 342; *see also Hayes v. Multiband EC Corp.*, No. 4:13-CV-00167-RLY, 2014 WL 1340679, at *2 (S.D. Ind. Apr. 4, 2014) ("'for an action to accrue, it is not necessary that the full extent of the damage be known or even ascertainable, but only that some ascertainable damage has

- 11 -

occurred'") (quoting *Cooper Indus., LLC*, 899 N.E.2d at 1280).   Indeed, Plaintiffs' own submissions confirm that they knew before their surgeries that their filters were "the potential cause" of their injuries and therefore had to be removed.  *See, e.g.*, Dkt. 12295 at 2 ("On February 27, 2012 [two days before his surgery] Plaintiff learned for the first time that he had an IVC filter implanted and that *the filter was the potential cause of the abdominal pain.*" (emphasis added)); Dkt 12298 at 3 ("Mr. Kinsey's physician told him that the Filter needed to be removed, but Mr. Kinsey did not know why or how the Filter had come to be in *a dangerous state*.") (emphasis added).

Where a Plaintiff's medical condition necessitated an open surgery to remove the filter, a diligent Plaintiff (in the words of the *Mirena* court) "would know, at the very least, that there was a 'reasonable possibility'" that the filter has caused the Plaintiff injury and the Plaintiff "should therefore make further inquiry to determine [their] legal rights."  *In re Mirena (Truitt)*, 29 F. Supp. 3d at 352.  In contrast, knowledge that the injury was caused by a "defect" in the filter is not necessary to state the statute running.  *E.g.. Neuhauser,* 573. F. Supp. at 9 (rejecting plaintiff's argument that "her cause of action did not accrue until she discovered the causal connection between her injury and the Dalkon Shield"); *see also Degussa Corp.,* 744 N.E.2d at 411 ("a plaintiff need not know with certainty that malpractice caused his injury, to trigger the running of the statutory time period"); *Cossman v. DaimlerChrysler Corp.*, 108 Cal. App. 4th 370, 380 (2003) (holding under Indiana law that the cause of action accrued when the plaintiff was diagnosed with mesothelioma even though doctors "'couldn't figure out where' she had contracted the disease"); *Hayes*, 2014 WL 1340679, at *2 (holding that plaintiff "indisputably knew that some damage had occurred to her by July 1, 2011; pursuant to Indiana law, she did not need to know 'beyond a doubt [the defendant] victimized her.'")

This Court addressed an analogous situation in *Hayes v. Multiband EC Corp.*, 2014 WL 1340679 (S.D. Ind. Apr. 4, 2014).  In *Hayes*, the plaintiff sued a cable service provider for thefts from her home by the provider's employee, and the provider claimed the plaintiff had missed the statute of limitations.  *Id.* at *1-2.  The provider argued that the statute began to run at the latest on July 1, 2011, when the plaintiff identified her items in the employee's possession; the plaintiff argued the statute did not begin to run until the employee plead guilty in December 2011 because the employee's "concealment of his guilt prevented [plaintiff] from knowing with certainty that he was responsible."  *Id.* at *2.  The Court rejected the plaintiff's argument, holding that the plaintiff "indisputably knew that some damage had occurred to her by July 1, 2011; pursuant to Indiana law, she did not need to know 'beyond a doubt [defendant] victimized her.'"  *Id.* Likewise here, Plaintiffs knew on the dates of their open removal surgeries that they had suffered some damage; they did not need to know that the filter had an alleged "defect" or that Cook was allegedly responsible for the statute to start running.

The cases cited by Plaintiffs' responses in supposed support of their argument are readily distinguishable and do not support the application of the discovery rule here.  Several Plaintiffs cite *Nelson v. Sandoz Pharms. Corp.*, 288 F.3d 954, 966 (7th Cir. 2002), for the propositions that "the plaintiff's suspicion, standing alone, about the source of her injury is insufficient to trigger the onset of the limitations period"[6] and that the statute of limitations "begins to run on a cause of action when 'the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another."[7]  But the plaintiff in *Nelson* had **no** reason of **any** kind to associate the lactation-suppression medication

---

[6] Dkt. 12250 at 9; Dkt. 12284 at 9, Dkt. 12236 at 9; Dkt. 12299 at 14-15; Dkt. 12303 at 14-15; Dkt 12307 at 8, Dkt. 12310 at 9.
[7] Dkt. 12298 at 12-13.

US.125315158.11

she had taken to her later stroke—in other words, nothing connected the injury to the product. The situation here is entirely different—there is no question that Plaintiffs here should have connected the IVC filters with the need for their surgical removal.  Indeed, the *Mirena* decision noted this very distinction between the notice provided by the removal of a product and the situation in *Nelson*:

> These conclusions are even more apparent when the facts surrounding Plaintiff's injuries are contrasted with those of the products liability cases cited in the parties' briefs. In these cases, plaintiffs experienced symptoms that were not clearly linked to a particular product or substance, and subsequently consulted physicians who were unable to state whether there was a reasonable possibility that the product caused the plaintiff's ailments. *See, e.g., **Nelson**, **288 F.3d at 966-67*** (doctor's initial suggestion of a causal link between drug and stroke did not trigger statute of limitations where doctor later dismissed possible connection).… Under such circumstances — *i.e.*, when the information from the plaintiff's doctor was not enough to suggest a reasonable possibility that a product caused the plaintiff harm — courts have held that the statute of limitations was not triggered until a plaintiff received more solid evidence of a causal connection between the product and the injury. ...  Where, however, the information provided by the doctor was enough to suggest a reasonable possibility that a product caused a plaintiff's harm, that information was sufficient to trigger the statute of limitations.

*In re Mirena (Truitt)*, 29 F. Supp. 3d at 354 (other citations omitted).  In other words, the present cases do not involve "the plaintiff's suspicion, ***standing alone***, about the source of her injury," *Nelson*, 288 F.3d at 966 (emphasis added).  They involve much more: open surgeries to remove and eliminate a medical problem caused by the presence of the very product at issue here.

The same distinction undermines Plaintiffs' reliance on the *Degussa Corp.* case for their argument that Plaintiff's ability to understand the nature and extent of her injuries presents complex "factually and legally relevant questions" about how her doctors conveyed information to her and what emphasis her doctors placed on a "potentially tortious cause over other causes,"

creating a factual issue.  Dkt 12298 at 14045 at 10 (quoting *Degussa Corp.*, 744 N.E.2d at 411).[8]

But like *Nelson*, *Degussa* involved a latent injury from a toxic exposure, and the plaintiff had no

basis on which to associate her lung damage on exposure to the defendants' products instead of

some other cause.  *Id.* at 409.  In contrast here, Plaintiffs could have had no doubt about the link

between their IVC filters and the need to surgically remove their IVC filters.  *See In re Mirena*,

29 F. Supp. 3d at 354 (distinguishing *Degussa* on same ground as *Nelson*).  Indeed, both

*Degussa* and *Nelson* note that "'events short of a doctor's diagnosis can provide a plaintiff with

evidence of a reasonable possibility that another's' product caused his or her injuries." *Degussa*,

744 N.E.2d at 411 (quoting *Evenson v. Osmose Wood Preserving Co. of Am.*, 899 F.2d 701, 705

(7th Cir. 1990)(applying Indiana law); *Nelson*, 288 F.3d at 964 (same).[9]  As this Court has

already held, an open surgery removing an IVC filter is not a latent injury; it is an obvious, open

injury that starts the statute of limitations running.  Dkt. 5575 (*Graham.* No 1:15-cv-00764,

granting summary judgment because "[t]he injuries described in [Graham's] Complaint … were

known to her immediately after her September 9 surgery.  The limitations period, therefore,

expired on or about September 10, 2013, nearly two years before she filed her Complaint.").

---

[8] *See also* Dkt. 12304 at 4; Dkt. 12306 at 10; Dkt. 12309 at 10-11.

[9] The fact that the ordinary diligence a plaintiff must employ during the limitations period may
include consulting experts like doctors, lawyers, or even surveyors to gain additional information
does not alter the rule that a cause of action accrues and the statute of limitations begins to run
when a plaintiff has information linking a product and an injury.  *See, e.g., Custom Radio Corp.
v. Actuaries & Benefit Consultants, Inc.*, 998 N.E.2d 263, 269 (Ind. Ct. App. 2013) (holding
"causes of action accrued and the statutes of limitation began to run on the date [plaintiff] knew
or, through ordinary diligence, could have discovered that their Welfare Benefit Plans were non-
compliant with subsection 419(A)(f)(6) and that their plan contributions were retroactively
taxable"); *Runkle v. Runkle*, 916 N.E.2d 184, 192 (Ind. Ct. App. 2009) ("we conclude as a matter
of law that she (or her attorney) knew or should have known prior to June 3, 2003, that she had
suffered some sort of injury as a result of Fifth Third Bank's allegedly wrongful actions");
*Shaum v. McClure*, 902 N.E.2d 853, 857 (Ind. Ct. App. 2009) ("We conclude that, in the
exercise of ordinary diligence, the [plaintiffs] should have known of the land dispute and
discovered the survey error in 1997 when [defendant] constructed his residence on the disputed
property.").

One Plaintiff also cites *Wehling v. Citizens Nat'l Bank*, 586 N.E.2d 840, 843 (Ind. 1992) for the proposition that accrual of an action under the discovery rule requires a link between the injury and "the tortious act of another." *See, e.g.,* Dkt. 12304 at 4. But in *Wehling*, the plaintiffs did not argue that they did not know whether their injury had been caused by the tortious act of another, but that they had no reason to suspect they had been injured ***at all*** until they tried to sell their property and discovered it had already been sold. In contrast here, Plaintiffs' open surgical removals are alleged to be an injury, or a treatment necessary because of an injury, that is undeniably linked to their filters. Moreover, both before and after *Wehling*, the Indiana Supreme Court has made clear that the necessary knowledge was the link between the injury and the product or act of another, and not between the injury and a product defect or other specific tortious conduct. *See Barnes v. A.H. Robins Co.,* 476 N.E.2d 84, 87-88 (Ind. 1985) (holding that statute of limitations begins "to run from the date the plaintiff knew or should have discovered that she suffered an injury or impingement, and that it was caused by the product or act of another"); *Degussa Corp. v. Mullens*, 744 N.E.2d 407, 410 (Ind. 2001) (same language, quoting *Barnes*).

In sum, at most, once Plaintiffs had open surgeries to remove their IVC filters, they knew of their injuries and an association with their filters. At that point, they had two years to investigate whether they had the basis to pursue legal claims against Cook and to commence their actions. *See, e.g., Schuchman/Samberg Investments*, 58 N.E.3d at 251 (holding that knowledge site was used for disposal and observation of stained soil was "sufficient to trigger its duty to inquire further in order to determine whether a legal wrong had occurred"). Knowledge of a product defect or other legal theory is not necessary to start the statute running. Simply put, "[t]he discovery rule is not intended to toll the limitation period until optimal litigation

conditions can be established." *Rieth-Riley Const. Co. v. Gibson*, 923 N.E.2d 472, 476 (Ind. Ct. App. 2010).

> ### 2. Indiana's discovery rule does not delay accrual of a cause of a product liability action until the plaintiff discovers the identity of the manufacturer.

Two Plaintiffs suggest that under Indiana's discovery rule, their cause of action did not accrue and the statute of limitations did not begin to run until they discovered that their IVC filters were manufactured by Cook.[10]  Plaintiffs cite no authority for such a rule, and Indiana law holds otherwise.  As discussed above, Indiana's discovery rule turns on the date the plaintiff knew or should have discovered that she suffered an injury and that it was caused by a product. *Degussa Corp.*, 744 N.E.2d at 410.  Nothing in this rule tolls the statute until the plaintiff discovers the identity of the product's manufacturer.  *See Rieth-Riley Const. Co. v. Gibson*, 923 N.E.2d 472, 476 (Ind. Ct. App. 2010) (holding discovery rule does not extend limitations period where indeterminate fact was identity of tortfeasor, not existence of injury).  Moreover, Plaintiffs do not and cannot claim that they could not in the exercise of ordinary diligence have discovered that their filters were manufactured and sold by Cook within the permitted two years by requesting and examining their own medical records.  The discovery rule does not apply.

## VII. Plaintiffs' Claims of Fraudulent Concealment and Equitable Tolling Do Not Prevent the Running of the Statute of Limitations Against Them.

Multiple Plaintiffs argue in their responses that the claims of fraudulent concealment in the Master Consolidated Complaint save their claims from Indiana's statute-of-limitations bar. *See* Dkts. 12229, 12236, 12248, 12250, 12284, 12295, 12299, 12300, 12301, 12304, 12306, 12307, and 12309.  These arguments fail for several reasons.  Plaintiffs have not plead their

---

[10] Dkt. 12299 at 2 ("In late 2018, Plaintiff became aware that the IVC filter that was implanted in her was manufactured by Cook."); Dkt. 12301 at 2 ("In late 2015, Plaintiff became aware that the IVC filter that was implanted in him was manufactured by Cook.").

US.125315158.11

claims of fraudulent concealment with the particularity required by Rule 9(b), they have not

plead that any conduct by Cook prevented them from learning of their injuries, and the claims

fail as a matter of law because the medical records Plaintiffs themselves submitted establish that

Plaintiffs had sufficient information to satisfy the objective standard for the accrual of their

causes of action.

### A. Plaintiffs have not pleaded fraudulent concealment with the particularity required by Rule 9(b).

#### 1. Rule 9(b) requires Plaintiffs to plead fraudulent concealment with particularity.

Because pleading is procedural, the federal rules govern pleading requirements in federal

courts.   "Under F.R.Civ.P. 9(b), the party alleging fraudulent concealment must plead the

circumstances giving rise to it with particularity."  *Dayco Corp. v. Goodyear Tire & Rubber Co.*,

523 F.2d 389, 394 (6th Cir. 1975); *see also Larson v. Northrop Corp.*, 21 F.3d 1164, 1173 (D.C.

Cir. 1994) ("Another requirement is that allegations of fraudulent concealment, which toll the

statute of limitations, must meet the requirements of Fed. R. Civ. P. 9(b).").  This Court has itself

applied Rule 9(b)'s particularity requirement to a plaintiff's claim that fraudulent concealment

tolled a statute of limitations.  *See Leathermon v. Grandview Mem'l Gardens, Inc.*, No. 4:07-CV-

137-SEB-WGH, 2011 WL 2445980, at *8–9 (S.D. Ind. June 15, 2011) (imposing Rule 9(b)'s

particularity requirement to claim that fraudulent concealment tolled statute of limitations and

finding requirement was met).

Under Rule 9(b), when fraud is alleged, "[t]he plaintiff must describe the 'who, what,

when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" *United

States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir., 2018) (quoting

*United States ex rel. Lusby v. Rolls–Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009));  *In re

Bridgestone/Firestone, Inc. Tires Prod. Liab. Litig.*, 155 F. Supp. 2d 1069, 1109 (S.D. Ind. 2001)

US.125315158.11

(dismissing plaintiffs' claims under Michigan and Tennessee consumer protection statutes for failure to meet the heightened pleading requirements of Rule 9(b), including failure to allege "individual reliance"). The Seventh Circuit's case law on Rule 9(b) requires that a plaintiff must allege at least the specific circumstances of the alleged fraud – the who, what, and how – to meet the particularity requirement. *See, e.g., Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 669 (7th Cir. 2008) (affirming dismissal under Rule 9(b) where "the complaint failed to plead with particularity the who, when and how of the alleged frauds, all of which are required by Rule 9(b) for allegations of fraud").

### 2.    Plaintiffs have not plead fraudulent concealment with particularity.

Here, Plaintiffs' allegations of fraudulent concealment are indefinite and non-specific, and they provide none of the detail necessary to state a claim sufficient to toll the statute of limitations. The relevant section of Plaintiffs' Master Consolidated Complaint alleges:

### TOLLING OF THE LIMITATIONS PERIOD

195. Defendants, through its affirmative misrepresentations and omissions, actively concealed from Plaintiffs and Plaintiffs' healthcare providers the true and significant risks associated with Cook's IVC Filters.

196. As a result of Defendants' actions, Plaintiffs and their prescribing physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiffs had been exposed to the risks identified in this Master Complaint, and that those risks were the result of Defendants' acts, omissions, and misrepresentations.

197. Accordingly, no limitations period ought to accrue until such time as Plaintiffs knew or reasonably should have known of some causal connection between Plaintiffs being implanted with a Cook IVC Filter and the harm Plaintiffs suffered as a result.

198. Additionally, the accrual and running of any applicable statute of limitations have been tolled by reason of Defendants' fraudulent concealment.

Dkt. 213 at 36.

These vague, general allegations fall far short of the particularity required by Rule 9(b). Plaintiffs do not allege who at Cook concealed information from Plaintiffs or their doctors, what

specific information Cook allegedly concealed, or how that concealment occurred.  They are at most an allegation of a failure to disclose general information, not a specific allegation of fraudulent concealment of specific information.  They are wholly insufficient under Rule 9(b), *see Windy City Metal*, 536 F.3d at 669, and cannot support tolling Plaintiffs' statutes of limitations under the doctrine of fraudulent concealment.

**B.      Plaintiffs' claims of fraudulent concealment do not allege concealment of their causes of action and thus cannot toll the statute of limitations.**

Even assuming for the sake of argument that Plaintiffs had plead their fraudulent concealment claim with the required particularity, those pleadings cannot justify tolling the statute of limitations on Plaintiffs' claims because they do not relate to the accrual or discovery of Plaintiffs' claims.

Plaintiffs' responses consistently misunderstand and misapply the doctrine of fraudulent concealment.  To invoke fraudulent concealment tolling the statute of limitations under Indiana law, it is not enough for a plaintiff to claim that the defendant concealed information about the dangers of the product at issue and thereby caused the plaintiff's injury; a plaintiff must allege that the defendant fraudulently concealed information ***about the existence of the plaintiff's cause of action itself***.  The Indiana Supreme Court has described this requirement as follows:

> "Fraudulent concealment is an equitable doctrine that operates to estop a defendant from asserting the statute of limitations as a bar to a claim whenever the defendant ... 'has, either by deception or by a violation of duty, ***concealed from the plaintiff material facts thereby preventing the plaintiff from discovering a potential cause of action***.'"  *Doe v. Shults–Lewis Child & Family Servs., Inc.,* 718 N.E.2d 738, 744–45 (Ind.1999) (quoting *Fager v. Hundt,* 610 N.E.2d 246, 251 (Ind.1993)). In such cases, equity will toll the commencement of the applicable time limitation until such time as the plaintiff discovers, or in the exercise of ordinary diligence should discover, the existence of the cause of action. *Id.* The plaintiff then has "a reasonable amount of time" after that date to file his complaint.[2] *Alldredge v. Good Samaritan Home, Inc.,* 9 N.E.3d 1257, 1261 (Ind.2014) (quoting *Shults–Lewis Child & Family Servs.,* 718 N.E.2d at 745).

- 20 -

*Lyons v. Richmond Cmty. Sch. Corp.*, 19 N.E.3d 254, 260 (Ind. 2014) (emphasis added).[11]  "To invoke the doctrine where no fiduciary relationship exists between the parties,[12] … a plaintiff must show that the wrongdoer was not simply silent but committed affirmative acts designed to conceal the cause of action."  *Horn*, 50 F.3d at 1372 (citing, *inter alia*, *Malachowski v. Bank One, Indianapolis,* 590 N.E.2d 559, 563 (Ind. 1992).

Plaintiffs here make no allegation that Cook committed any affirmative act to prevent them from discovering that they had possible causes of action against the company.  Indeed, Plaintiffs do not even allege that Cook *knew* before being sued in these actions that these Plaintiffs *had* causes of action against the company.  Every Plaintiffs' allegations concerning Cook's supposed fraudulent concealment focuses entirely on Cook alleged concealment of information concerning the risks of its products.  *See, e.g.,* Dkt. 213 (Master Consolidated Complaint) at 36, ¶¶ 195-198; Dkt. 12306 at 12-14 (quoting Master Complaint passages and testimony from *Brand* trial that allege Cook failed to disclose risks of filters); Cook's Dkt. 12307 at 11-16 (same); 12300 at 16-22 (same).  As this Court already held in its decision in the *Graham*

---

[11] Equitable tolling, which some Plaintiffs also invoke, imposes the same requirement that a defendant's conduct relate to the plaintiff's knowledge of the existence of a cause of action.  *See Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 462 (S.D.N.Y. 2014) ("Equitable tolling applies where a defendant's fraudulent conduct results in a plaintiff's lack of knowledge of a cause of action.").  Here, Plaintiffs rest their equitable tolling argument on their claim of fraudulent concealment.  *See* Dkt. 213 (Master Consolidated Complaint) at 36, ¶ 199 ("Defendants are equitably estopped from asserting any limitations defense by virtue of their fraudulent concealment"); *see also Burnett v. Villaneuve*, 685 N.E.2d 1103, 1111 (Ind. Ct. App. 1997) (holding that under Indiana law, a claim of equitable estoppel depends on allegations of fraud).  Cook therefore treats the two arguments together.

[12] Plaintiffs here do not allege that Cook had a fiduciary relationship with them (*e.g.*, a doctor-patient relationship) that imposed on Cook an affirmative duty to disclose to Plaintiffs that they might have a cause of action against Cook.  *See Lyons v. Richmond Cmty. Sch. Corp.*, 19 N.E.3d 254, 261 (Ind. 2014) (discussing passive fraudulent concealment, in which the special relationship between the parties imposes a duty on a defendant to disclose an alleged wrongful act to the plaintiff).  Because Plaintiffs make no such allegation, the medical malpractice cases Plaintiffs cite are inapposite.

case, absent allegations of affirmative conduct designed to prevent these Plaintiffs from discovering their causes of action, fraudulent concealment does not toll the statute of limitations and cannot defeat summary judgment.  *See* Dkt. 5575 (Graham Order, stating "even if the doctrine [of fraudulent concealment] could apply to [Plaintiff's] claims, Graham does not allege any affirmative conduct by the Cook Defendants that was designed to prevent, and did prevent, her from discovering her cause of action").

### C. Plaintiffs' claim of fraudulent concealment would not toll the statute of limitations on their claims.

Even assuming Plaintiffs had plead claims of fraudulent concealment with sufficient particularity and that those claims related to Plaintiffs' knowledge of their causes of action, those claims fail as a matter of law to save Plaintiffs from the statute of limitations.

As one treatise explains, fraudulent concealment cannot toll the running of the statute of limitations if the plaintiff nevertheless has sufficient knowledge of the claim to start the statute running:

> Fraudulent concealment can exist only if the plaintiff lacked the requisite knowledge pertinent to its cause of action until the time that the applicable limitations period expired. … Nor may the plaintiff rely on the doctrine of fraudulent concealment simply because its knowledge was somewhat delayed or incomplete. On the contrary, ***the statutory limitations period begins running as soon as the plaintiff has sufficient actual knowledge to be aware of its claim,*** even though it lacks some of the details of its cause of action and does not discover the full enormity of the defendant's wrongdoing until later.

32 Am. Jur. Proof of Facts 3d 129.  Indiana law applies this common-sense standard.  *See, e.g., Ludwig v. Ford Motor Co.*, 510 N.E.2d 691, 697 (Ind. Ct. App. 1987) (holding plaintiff's early knowledge of problems with trucks foreclosed any claim that defendants had fraudulently concealed facts showing the existence of a cause of action).  *See also Miller v. A.H. Robins Co.,* 766 F.2d 1102, 1106 (7th Cir. 1985) ("when a plaintiff learns of information that would lead to

the discovery of the cause of action through diligence, the statute of limitations begins to run, regardless of concealment") (applying Indiana law).

This Court applied this common sense approach to reject a claim of fraudulent concealment in the *Hayes* case.   In *Hayes*, the plaintiff claimed that the cable company's employee's failure to immediately plead guilty "concealed the crime from her," tolling the statute of limitations until he actually plead guilty.  2014 WL 1340679 at \*3.  The Court rejected this argument, noting that the plaintiff herself had reported the crime and confirmed that the items the employee possessed were hers.  *Id.*  The Court therefore concluded that the employee's "denial of responsibility did not hinder [Plaintiff's] ability to investigate her claim."  *Id.*

Similarly here, no conduct by Cook hindered Plaintiffs' ability to investigate whether the IVC filter that there doctors had removed provided any basis for a legal claim against Cook.  On the contrary, as discussed above, Plaintiffs all knew that they had had medically recommended open filter removal surgeries on specific dates, and thus had become aware at least by those dates of the "reasonable possibility" that their filters caused their injuries.  Plaintiffs do not and cannot allege any conduct by Cook that concealed or could have concealed from Plaintiffs the critical fact that their doctors judged their filters to be of sufficient concern to justify surgical removal and performed those surgeries.  Plaintiffs failed to commence their actions within the statutorily required period after that date, and the statute of limitations therefore bars their claims.  The undisputed facts thus establish that Cook could not have fraudulently concealed Plaintiffs' causes of action from Plaintiffs because Plaintiffs already had the knowledge of their injuries necessary to put them on inquiry notice and commence the statute of limitations.

## VIII.   Plaintiffs' Other Claims Also Fail as a Matter of Law

US.125315158.11

Plaintiffs' responses fail to create a genuine issue of material fact as to any of Plaintiffs' other claims, and Cook is entitled to summary judgment on those claims.

## A. Plaintiffs' Express Warranty Claims Fails Because, as the Court Has Previously Ruled, the Master Complaint Fails to State Sufficient Allegations to Support This Claim

The vast majority of Plaintiffs do not contest Cook's entitlement to summary judgment on their express warranty claims, and one Plaintiff even acknowledges that "The Court has already ruled that the express warranty allegations in the Master Complaint are not sufficient to state a claim for breach of express warranty independently of specific warranty allegations in a plaintiff's Short Form Complaint."  Dkt. 12261 at 16 n.2 (citing the Court's decision in *Apple*, Dkt. 4918 at 13-14).  Cook is therefore entitled to summary judgment as to those Plaintiffs' express warranty claims.

Only Plaintiffs McCormack and Lambert oppose Cook's motion for summary judgment on their express warranty claims, arguing that the Court's order in the *Emily Apple* case addressed only whether Plaintiff Apple had properly plead an express warranty of future performance, as required under Texas law to avoid the statute of repose.  *See* Dkt. 12269 at 13. Because these Plaintiffs are not from Texas and Cook has not argued the statute of repose, they argue, the *Apple* holding does not apply here.  *See id.*  What Plaintiffs overlook, however, is that the Court also based its decision in *Apple* on that Plaintiff's failure to allege reliance on the alleged express warranty.   *See* Dkt. 4918 at 15 *(* "Apple fails to establish the reliance element because she does not claim that she actually read or relied on the Patient Guide's language."). That holding applies here as well; neither the Master Complaint nor these Plaintiffs' short-form complaints allege any reliance on any express warranty by Cook.  *See, e.g.,* Dkt. 213 at 22-23 ¶¶ 93-99.  Plaintiffs McCormack and Lambert do not deny that the express warranty claims in

US.125315158.11

their respective home states of New York and Mississippi[13] require the element of reliance, nor could they do so.  *See* N.Y. UCC § 2-313 (providing that affirmation of fact or promise is express warranty only if it "becomes part of the basis of the bargain"); Miss. Code § 11-1-63(4) (requiring proof in express warranty claim that "the claimant justifiably relied" on the warranty in electing to use the product).  The Court's holding in the *Apple* case applies here, and Cook is entitled to summary judgment on Plaintiffs McCormack and Lambert's express warranty claims.

## B.  Plaintiffs' Implied Warranty Claims Are Subject to Indiana's Two-Year Statute of Limitations and Therefore Fail with Their Other Tort Claims.

Other than the general "discovery rule" arguments discussed above, only one Plaintiff contests Cook's entitlement to summary judgment on his claim for breach of implied warranty. *See* Dkt. 12298 at 16 (Plaintiff Kinsey).  Plaintiff Kinsey argues that Cook's motion made no specific argument concerning implied warranty, and therefore has not properly presented the issue.  *See id.*  Plaintiff Kinsey is mistaken; Cook specifically included Plaintiffs' implied warranty claims in its statute-of-limitations argument addressing all of Plaintiffs' tort claims. *See* Dkt. 11922 at 7 n.5.

Plaintiff Kinsey's only other argument is that Indiana law does not apply and that the Court should deny summary judgment on implied warranty just as it should on his other claims. Dkt. 12298 at 16.  But again, the Court has held that the Indiana statute of limitations applies, Dkt. 12256 at 1-2, and Indiana applies the two-year product-liability statute of limitations to personal injury claims based on breach of implied warranty.  *See* Ind. Code § 34-20-1-1; *see also B & B Paint Corp. v. Shrock Mfg., Inc.*, 568 N.E.2d 1017, 1019 (Ind. Ct. App. 1991) (noting that action for negligence or strict liability couched in terms of breach of warranty under the UCC is

---

[13] Cook does not concede that New York and Mississippi law respectively govern the claims of Plaintiffs McCormack and Lambert, but refers to those states' laws because Plaintiffs invoke them in their response.  *See generally* Dkt. 12269.  Cook reserves the right to contest what state's law governs these Plaintiffs' substantive claims.

nevertheless subject to product liability statute of limitations).   Plaintiff Kinsey failed to commence his action within two years of its accrual, and Cook is therefore entitled to summary judgment on his implied warranty claim, just like his other tort claims.

**C.     Plaintiffs Failed to Plead Their Consumer Fraud Claims with the Particularity Required by Rule 9(b).**

Cook is entitled to dismissal of Plaintiffs' claims of statutory consumer fraud because Plaintiffs failed to plead those claims with particularity as required by Federal Rule of Civil Procedure 9(b).   As noted above, a plaintiff alleging fraud must plead the "who, what, when, where, and how" of the fraud. *Berkowitz*, 896 F.3d at 839.

Virtually all the Plaintiffs who responded on this issue baldly asserted that the current Master Complaint adequately pleads fraud, parroting various general statements from the Master Complaint alleging that Cook had certain knowledge and failed to disclose it. *See, e.g.,* Dkt. 12310 at 10-11; Dkt. 12284 at 10-11.   But nothing in the Master Complaint provides the required "who, what, when, where, and how" this supposed fraud occurred.   The passages Plaintiffs cite and quote are simply vague, general allegations of the type suitable for Rule 8 notice pleading of common law torts; indeed, some Plaintiffs all but admit that these allegations claim nothing more than a failure to warn. *See, e.g.,* Dkt. 12309 at 11 ("Plaintiff's Master Complaint in this case contains numerous allegations that the Cook Defendants had knowledge of the defects with its IVC Filters yet failed to warn doctors and patients.").   Plaintiffs' pleadings do not provide the required particularity, and their statutory consumer fraud claims fail under Rule 9(b).[14]

---

[14] A number of Plaintiffs also recite passages from exhibits admitted in the *Brand* trial and testimony by Plaintiff's Brand's expert witnesses in that trial in supposed support of their consumer fraud claims. *See, e.g.,* Dkt. 12310 at 11-13; Dkt. 12284 at 11-14.   These passages do not satisfy Rule 9(b)'s particularity requirement for two reasons.   First, the passages Plaintiffs cite are trial evidence, not pleadings, and thus by definition cannot satisfy Rule 9(b)'s pleading requirement. *See Miller v. Gain Fin., Inc.*, 995 F.2d 706, 709 (7th Cir. 1993) ("In this case, appellants attempted to rely on affidavits for [Rule 9(b)'s] particularity requirement.   We find

Two Plaintiffs claim that Rule 9(b) does not require them to plead fraud with particularity because the state consumer protection statutes under which they assert their claims do not require fraud as an element.  *See* Dkt. 12269 at 12-19 (Plaintiffs McCormack and Lambert).  These Plaintiffs assert that the New York and Mississippi statutes under which they assert their claims **permit** but do not **require** allegations of fraud.  *See id.* at 17 (citing N.Y. Gen. Bus. Law § 349), 18 (citing Miss. Code § 75-24-5).  Therefore, Plaintiffs argue, they need not plead their claims under these statutes with particularity, citing (inter alia) *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663 (7th Cir. 2008) (holding that the plaintiff's claims under Illinois Consumer Fraud Act need not be plead with particularity under Rule 9(b)).

But *Windy City* and the other cases Plaintiffs cite make clear that the courts are looking at the **substance** of the allegations in deciding whether Rule 9(b)'s fraud-particularity requirement applies.  The *Windy City* court held that the plaintiffs did not need to plead their Illinois Consumer Fraud Act Claim with particularity because that plaintiff's specific claim did not in its substance allege fraud, only "an unfair trade practice."  536 F.3d at 669.  In contrast, as Plaintiffs acknowledge, the Seventh Circuit has also held that Rule 9(b) **does** apply to a claim under the same statute where the substance of the plaintiff's claims in that action actually claimed fraud.  *See* Dkt. 12269 at 16 (citing *Pirelli Armstrong Tire Corporation Retiree Medical Benefits Trust v. Walgreen Co.,* 631 F.3d 436, 440 (7th Cir. 2011)).

Thus, as Plaintiffs recognize, the determining factor on the fraud-pleading requirement is the substance of Plaintiffs' claims under the New York and Mississippi statutes; if Plaintiffs in

---

that to be insufficient, since affidavits are not formal pleadings.").  Second, even if Plaintiffs had alleged these passages in their pleadings, they are simply vague, general statements concerning Cook's conduct with respect to its products.  None of the statements or testimony cited even remotely addresses the required "who, what, when, where, and how" of how Cook supposedly intentionally misled the Plaintiffs involved in this motion.

- 27 -

fact base their statutory claims on allegations of fraud, they must plead those allegations with particularity under Rule 9(b).  But Plaintiffs' response never addresses the substance of their own allegations, and it is not difficult to see why.  The allegations in Count VII of the Master Consolidated Complaint, which sets out the allegations underlying Plaintiffs' New York and Mississippi statutory claims, are replete with express allegations of just the kind of fraud and intentional misrepresentation that Rule 9(b) was intended to address:

> 114.    Defendants engaged in unfair, unconscionable, deceptive, *fraudulent* and misleading acts or practices in violation of all states' consumer protection laws, identified below.
> 115.    Through its *false, untrue and misleading promotion* of Cook's IVC Filters, Defendants induced Plaintiffs to purchase and/or pay for the purchase of Cook's IVC Filters.
> 116.    Defendants *misrepresented* the alleged benefits and characteristics of Cook's IVC Filters; *suppressed*, omitted, *concealed*, and failed to disclose material information concerning known adverse effects of Cook's IVC Filters; *misrepresented* the quality and efficacy of Cook's IVC Filters as compared to much lower-cost alternatives; *misrepresented* and advertised that Cook's IVC Filters were of a particular standard, quality, or grade that they were not; misrepresented Cook's IVC Filters in such a manner that later, on disclosure of the true facts, there was a likelihood that Plaintiffs would have opted for an alternative IVC Filter or method of preventing pulmonary emboli.
> 117. Defendants' conduct created a likelihood of, and in fact caused, confusion and misunderstanding. Defendants' conduct misled, deceived, and damaged Plaintiffs, and Defendants' *fraudulent, misleading, and deceptive conduct* was perpetrated with *an intent that Plaintiffs rely on said conduct* by purchasing and/or paying for purchases of Cook's IVC Filters. Moreover, Defendants *knowingly took advantage of Plaintiffs*, who were reasonably unable to protect their interests due to ignorance of the harmful adverse effects of Cook's IVC Filters.
> 118.    Defendants' conduct was *willful, outrageous, immoral, unethical, oppressive, unscrupulous, unconscionable*, and substantially injurious to Plaintiffs and *offends the public conscience*.

Dkt. 213 at 26-27 (emphasis added).  Plaintiffs McCormack and Lambert do not and cannot dispute that these allegations allege fraud.  Thus, even assuming *arguendo* that some sets of allegations under the New York and Mississippi consumer protection statutes would not require pleading with particularity, Rule 9(b)'s particularity requirement clearly applies to the

US.125315158.11

substantive allegations of fraud these Plaintiffs make here.  Because Plaintiffs failed to plead those claims with particularity, Cook is entitled to the dismissal of Plaintiffs' statutory consumer fraud and consumer protection claims.

**D.      Plaintiffs' Derivative Claim for Loss of Consortium and Punitive Damages Fail Because They Cannot Stand on Their Own.**

No Plaintiff disputes Cook's argument that claims for loss of consortium and punitive damages are derivative claims that fail if the substantive claims from which they derive fail. Plaintiffs simply argue that some of their other claims survive summary judgment and thus save their derivative claims for loss of consortium, where applicable, and for punitive damages. Because Cook is entitled to summary judgment on the Plaintiffs' primary claims for the reasons discussed above, Cook is likewise entitled to summary judgment on these derivative claims because there is no viable claim to serve as an anchor for these derivative claims.

## CONCLUSION

For the foregoing reasons and the reasons detailed in Cook's original memorandum, the Cook Defendants are entitled to summary judgment on the claims brought by these Plaintiffs.

Respectfully Submitted,

Dated:  November 12, 2019

/s/ *Andrea Roberts Pierson*
Andrea Roberts Pierson, Co-Lead Counsel
Jessica Benson Cox
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2500
Indianapolis, Indiana 46204
Telephone:    (317) 237-0300
Andrea.Pierson@FaegreBD.com
Jessica.Cox@FaegreBD.com

James Stephen Bennett, Co-Lead Counsel
FAEGRE BAKER DANIELS LLP
110 West Berry Street, Suite 2400
Fort Wayne, Indiana 46802
Telephone:    (260) 424-8000
Stephen.Bennett@FaegreBD.com

- 29 -

*Attorneys for the Defendants Cook Incorporated,*
*Cook Medical LLC, and William Cook Europe ApS*

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 12, 2019, a copy of the foregoing **COOK DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR RENEWED OMNIBUS MOTION FOR SUMMARY JUDGMENT BASED ON APPLICABLE STATUTE OF LIMITATIONS** was filed electronically and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.

*/s/ Andrea Roberts Pierson*

US.125315158.11