UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB MDL No. 2570 |

This document relates to:
   *Luis A. Colon*
   Case No. 1:18-cv-00807-RLY-TAB

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO TRANSFER VENUE

"[I]t is hard to imagine a more appropriate forum than that of where the Defendants made, marketed and sold the product and where the Defendant is headquartered" – the Southern District of Indiana.  Pls.' Memo. in Supp. of Mot. for Trans. & Coordination or Consolidation Under 28 U.S.C. §1407, at p. 8, attached as **Exhibit A**.  That's what the plaintiffs claimed when they moved to create this MDL.  Now they want out of the MDL, and out of the Southern District of Indiana, and have therefore filed yet another motion to transfer on behalf of Plaintiff Luis A. Colon, who *already* unsuccessfully attempted to have his case transferred out of the MDL.  *See* Dkt. 9694, Pls.' Dec. 4, 2018 Mot. To Trans.  The Court denied that motion on June 17, 2019, *see* Dkt. 11138, Order on Pls.' Mot. To Trans, and the Court also rejected the Plaintiffs' underlying argument about "direct filing" that served as the vehicle for the global motion for remand and transfer that Plaintiffs filed around the same time.  Now, *less than six months later*, Plaintiff is asserting the same arguments and again asking the Court to transfer his case out of the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a).

That statute provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  28 U.S.C. § 1404(a).  But Plaintiff's request is not about

US.125830899

convenience of the parties or the witnesses, and it's certainly not about justice.  Plaintiff's request, just like his prior request, is instead part of an effort to frustrate the bellwether trial schedule and docket management measures that this Court has put in place to guide this litigation forward.  Were the Court to transfer this lawsuit that the Plaintiffs have presumably cherrypicked as a test case, it would prompt transfer requests in dozens or even hundreds of other cases creating a web of lawsuits crisscrossing the country from coast to coast – lawsuits that would proceed on different tracks, according to different procedures and different case management plans, and that will result in different rulings on similar issues by courts with no institutional knowledge of these cases.  This is exactly the procedural morass that the MDL was intended to prevent.

Further, Plaintiff's request for transfer is premised on a crucial factual omission that clouds his entire analysis of the factors relevant to a transfer of venue.  Contrary to the representations in his brief about how "it is no secret that the Southern District of Florida has always been Mr. Colon's choice of forum for trial," Dkt. 12514, p. 3, Plaintiff originally filed this case in the Eastern District of Missouri as part of a forum-shopping effort whereby 174 plaintiffs filed a joint complaint in that state (referred to as the *Halinski* case).  The case was then transferred to this Court as part of CTO-33 whereupon each plaintiff, including Plaintiff Colon, filed an individual short-form complaint.  *See* Dkt. 7507 (stating that *Collins* and *Halinski* "shall be severed into individual suits under Federal Rule of Civil Procedure 20 and 21, one Plaintiff per lawsuit.").  Accordingly, Plaintiff's claim that he would have filed the case in the Southern District of Florida absent the MDL is demonstrably false, and that omission further counsels against transfer of this case to the Southern District of Florida when the relevant factors are analyzed.

US.125830899

As the Court held mere months ago, Plaintiff's case is "not ready for transfer." Dkt. 11138, p. 1. The breakdown of the factors falls the same way as it did on the last motion, and therefore Plaintiff's present motion to transfer should be denied.

## ARGUMENT

For transfer to be appropriate under section 1404(a), the moving party must establish that: (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the convenience of the parties, the convenience of the witnesses, and the interest of justice. *Berry Plastics Corp. v. Protecto Wrap Co.*, No. 3:12-CV-73-RLY-WGH, 2013 WL 772871, at *5 (S.D. Ind. Feb. 28, 2013). As to the third requirement, the plaintiffs must show, "by reference to *particular* circumstances," not merely that transfer would be more convenient, but "*clearly* more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986) (emphasis added); *accord Elanco Animal Health, a Div. of Eli Lilly & Co. v. Archer Daniels Midland Co. Animal Health & Nutrition Div.*, No. 1:08-CV-00386-RLY-TAB, 2008 WL 4099882, at *2 (S.D. Ind. Sept. 4, 2008). "[M]ere speculation without supporting evidence" is insufficient to support transfer. *Everroad v. Scott Truck Sys., Inc.*, No. 1:06-CV-770-RLY-WTL, 2007 WL 3287115, at *1 (S.D. Ind. Nov. 6, 2007). "The court will not order a transfer unless the moving party gets beyond the language of the statute and justifies a change in forum." 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, ET AL., FEDERAL PRACTICE & PROCEDURE § 3847 (4th ed. Westlaw ver. 2018) (hereafter "WRIGHT & MILLER")

Plaintiff's motion fails to satisfy any of the relevant transfer criteria here.

## I.     Plaintiff Has Failed to Demonstrate That His Proposed Transferee District Can Exercise Personal Jurisdiction Over All of the Defendants.

Plaintiff claims transfer is appropriate "because jurisdiction and venue are proper in the Southern District of Florida" and "[t]he Cook Defendants are subject to personal jurisdiction in

US.125830899

Florida under the state's long arm statute . . . ."  Dkt. 12514, p. 9.  The initial problem with this argument is that Plaintiff alleges that it has been his desire all along to litigate the case in Florida, but he originally filed this case in Missouri, which is not the proper jurisdiction for the case.  At minimum, venue is not proper in the Eastern District of Missouri because the Cook Defendants are not from there and none of the relevant events took place in Missouri, rendering venue unavailable under both sections 28 U.S.C. § 1391(b)(1) and (b)(2).

Even if the Court were to credit Plaintiff's now-expressed desire to litigate the case in Florida, the bald assertion in Plaintiff's brief about personal jurisdiction and venue being available in the Southern District of Florida are insufficient to meet the statutory criteria.  Under nuts-and-bolts procedure in this area:  "[I]n suits against multiple defendants, transfer is proper only to a district in which all of them" – that is, all of the *defendants* – "are subject to personal jurisdiction and in which venue is proper for an action against all of them."  15 WRIGHT & MILLER § 3845. The Cook Defendants have asserted lack of personal jurisdiction as an affirmative defense in this case through their master answer.  Dkt. 8180, Defs.' Am. Ans. p. 23.  Nevertheless, Plaintiff has made little effort to demonstrate – as is his burden and his burden alone, *see Berry Plastics Corp.*, No. 3:12-CV-73-RLY-WGH, 2013 WL 772871, at *5 – that jurisdiction and venue are proper – in Florida (or Missouri) – as to any of the defendants, let alone all of them.

For this reason alone, Plaintiff's motion should be denied.  *See*, *e.g.*, *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 106 (10th Cir. 2012) (affirming denial of transfer where plaintiffs failed to demonstrate the transferee district had jurisdiction over the defendants).

## II.    Plaintiff Has Failed to Demonstrate the Proposed Transferee District Is Clearly More Convenient Than the Southern District of Indiana.

In evaluating the convenience of transfer under section 1404(a), the Court considers the private interests of the parties.  *Rapier v. Capital One Auto Fin., Inc.*, No. 1:07-CV-

US.125830899

0798RLYWTL, 2007 WL 3102148, at *2 (S.D. Ind. Oct. 22, 2007).  These include: "(1) plaintiff's choice of forum, (2) the situs of material events, (3) the relative ease of access to sources of proof in each forum including the court's power to compel the appearance of unwilling witnesses at trial and the costs of obtaining the attendance of witnesses, [and] (4) convenience to the parties – specifically, their respective residences and abilities to bear the expense of trial in a particular forum."  *Id*. (quoting *Von Holdt v. Husky Injection Molding Sys., Ltd.,* 887 F. Supp. 185, 188 (N.D. Ill. 1995)).  Plaintiff has failed to demonstrate that ***any*** of these factors clearly favor transfer.  *See Coffey*, 796 F.2d at 219–20.

1.      A plaintiff's choice of forum is generally entitled to deference, *Alcon Mfg., Ltd. v. Apotex, Inc.*, No. 1:06-CV-1642-RLY-TAB, 2007 WL 854026, at *2 (S.D. Ind. Mar. 14, 2007), and Plaintiff's motion asserts that "it is no secret that the Southern District of Florida has always been Mr. Colon's choice of forum for trial."  Dkt. 12514, p. 3.

Here, however, Plaintiff's allegation that the Southern District of Florida is his chosen forum is not entitled to any deference, because his entire argument rests on a core factual omission.  Contrary to the representations in his brief, Plaintiff did not originally file this case in the Southern District of Indiana; Plaintiff first filed the case in the Eastern District of Missouri as part of a 174-plaintiff complaint.  Once that multi-plaintiff complaint was transferred here to the Southern District of Indiana (*see* CTO-33, JPML Dkt. 183), those plaintiffs filed individual complaints in compliance with CMO-6.  At that point, Plaintiff filed a short-form complaint alleging that the Southern Districts of Florida and Indiana are both proper venues (*see* Plaintiff Colon's Complaint, ¶ 7 (listing Southern District of Florida as a proper venue) & ¶ 9 (incorporating portion of Plaintiffs' Master Complaint alleging, among other issues, that the Southern District of Indiana is a proper venue)).  Based on this history, Plaintiff chose his venue when he filed the case in

US.125830899

Missouri, not when he subsequently indicated that the case had a connection to Florida once it was already part of the MDL.  Accordingly, Plaintiff should be given no deference to transfer the case to Florida, because he filed the case in Missouri and his actions in doing so speak louder about his choice of forum than the misrepresentations in his brief.  Simply put, the Southern District of Florida is not Plaintiff's chosen forum.

Indeed, courts afford considerably less deference to a plaintiff's choice of forum when the plaintiff's selection is based on other considerations such as forum shopping, instead of filing at home.  *See Comm'nining Agents, Inc. v. Long*, 198 F. Supp. 3d 980, 986 (S.D. Ind. 2016) ("[W]hen the chosen forum is not the plaintiff's residence, the plaintiff's choice is entitled to less deference and the defendant's place of residence becomes more important in determining the convenience of the parties."); *Schumacher v. Principal Life Ins. Co.*, 665 F. Supp. 2d 970, 977 (N.D. Ind. 2009) ("[W]here the plaintiff's chosen forum is not the situs of material events, plaintiff's chosen forum is entitled to less deference.").  Here, the only plausible rationale behind Plaintiff filing the case along with 173 individuals in the Eastern District of Missouri, when the vast majority of those plaintiffs including Plaintiff were not from Missouri, is forum shopping.

2.      The Southern District of Indiana is also the situs of events material to these cases. As Plaintiffs have alleged in their master complaint:  "A substantial amount of activity giving rise to the claims occurred in this District, and Defendants may be found within this District."  Dkt. 213, Master Compl. ¶ 28.  It may well be that Plaintiff received his filter in the Southern District of Florida, but this is not a medical malpractice case; it's a product liability case, making Cook's world headquarters – "the center of the accused activity" – the preferred forum.  *See In re Recombinant DNA Tech. Patent & Contract Litig.*, No. MDL DOCKET 912, 1994 WL 270712, at

*31 (S.D. Ind. Dec. 22, 1993) (quoting *S.C. Johnson & Son, Inc. v. Gillette Co.*, 571 F. Supp. 1185, 1187 (N.D. Ill. 1983)).  This factor therefore also favors keeping the case in Indiana.

  3.  Plaintiff likewise has conceded that "[t]he evidence necessary in these matters will be found in th[is] district," and that "[m]any and perhaps most of the corporate witnesses and documents will be located in the district . . . ."  **Exhibit A**, Pls.' Memo. in Supp. of Mot. for Trans. & Coordination or Consolidation Under 28 U.S.C. §1407, at p. 8.  Courts often consider the relative convenience of the witnesses as the most significant of the relevant factors.  *See Berry Plastics*, No. 3:12–cv–73–RLY–WGH, 2013 WL 772871, at *6.  In evaluating this factor, courts examine the "residence of the witnesses, the cost of obtaining their attendance, the nature of their potential testimony, and the availability of compulsory process for nonparty witnesses." *Id*. (quoting *Utley v. N. Am. Van Lines, Inc.*, No. IP 02–0249–C–T/K, 2002 WL 31431482, at *2 (S.D. Ind. Oct. 3, 2002)).  "This analysis is not merely a numbers game:  what is significant is the substance and materiality of potential witnesses' testimony."  *Id*. (quoting *Somers v. Flash Tech. Corp. of Am.,* No. IP 455–CB/S, 2000 WL 1280314, at *3 (S.D. Ind. Aug. 25, 2000)).

  Plaintiff's argument regarding "substance and materiality" of potential witness testimony is unconvincing.  Essentially, Plaintiff argues that the Southern District of Florida is the most convenient forum for non-party witnesses because his physicians – along with his mother and a sales representative – are located there.  While it may be that the medical witnesses are in Florida, this does not help Plaintiff's argument.  These cases are not primarily about the quality of medical care the plaintiffs received; indeed, the "paramount issues concern[] the design, manufacture, testing, and marketing of  . . . Cook's IVC filter," *In re: Cook Med., Inc.*, 53 F. Supp. 3d at 1380 (internal quotation marks and citation omitted).  At best for Plaintiff, all transfer would do is shift the inconvenience of attending an out-of-state trial from a small troupe of side players (the medical

- 7 -

witnesses) to a much larger troupe of critical players (Cook employees).  When witnesses will have to travel either way, whether the case stays or goes, the law does not favor transfer.  *See*, *e.g.*, *Berry Plastics Corp.*, No. 3:12-CV-73-RLY-WGH, 2013 WL 772871, at *6; *Elanco Animal Health*, No. 1:08-CV-00386-RLY-TA, 2008 WL 4099882, at *4; *Rapier*, No. 1:07-CV-0798RLYWTL, 2007 WL 3102148, at *4; *Alcon Mfg., Ltd.*, No. 1:06-CV-1642-RLY-TAB, 2007 WL 854026, at *3.  Even giving Plaintiff the benefit of the doubt about the importance of his home-state medical witnesses, he cannot reasonably dispute that testimony from witnesses who made, marketed, and sold the products at issue – many of whom are in Indiana – is of any **lesser** importance than the testimony Plaintiff would offer from any healthcare provider.  And this does not even account for the parties' expert witnesses, who hail from all over the country, and who will almost certainly be inconvenienced no matter where these cases are litigated.  *See Goodman-Manaster & Co. v. Kamerdin*, No. 85 C 07423, 1986 WL 3036, at *5 (N.D. Ill. Feb. 27, 1986) (noting the location of experts should be considered in making a transfer determination).

If the live witness lists from the two bellwether cases to be tried so far – *Hill* and *Brand* – are any indication of who will be called to testify in these cases, it only confirms that transfer would merely shift the inconvenience from one set of parties and witnesses to another.  *See* Witnesses Lists attached as **Exhibit B** (composite exhibit listing witnesses that testified live in *Hill* and *Brand* trials).  Indeed, the live witness list for this case will likely be quite similar to the witness list for the *Hill* trial, because both Mr. Colon and Mrs. Hill are Florida residents.  As Exhibit B demonstrates, Florida was just the third most common home for witnesses in the *Hill* trial – more witnesses were from Indiana (Cook employees) and California (many of Plaintiff Hill's experts were from there) than Florida.

As for ease of access to the relevant documents, records can easily be copied and sent from one location to another, *Rapier*, No. 1:07-CV-0798-RLY-WTL, 2007 WL 3102148, at *3, and in fact already have been, as the Florida-based Plaintiff, with the help of his Texas-based counsel, has produced medical records from multiple providers and his PPF/PPS to defense counsel based here in Indiana. In the digital age, this factor does not weigh for or against either side. *See id*.

At bottom, then, the relative ease of access to sources of proof – both as to witnesses and documents – counsels against transfer. At most, this factor is a wash, and a wash does not favor shipping a case to another district, *see Berry Plastics Corp.*, No. 3:12-CV-73-RLY-WGH, 2013 WL 772871, at *6.

4.      Finally, as for the convenience of the parties, Plaintiff has "failed to provide the court with any evidence demonstrating that [he] would be unable to bear the expense of trial or that financial hardship would result if [he] were required to litigate this case outside [his] home forum." *Rapier*, No. 1:07-CV-0798-RLY-WTL, 2007 WL 3102148, at *3. After all, Plaintiff chose to file his case initially in the Eastern District of Missouri, a jurisdiction far away from his home state of Florida – and, indeed, more distant from his home than both Evansville and Indianapolis, where this Court has tried the two MDL trials to date. Thus, Plaintiff can hardly complain about the expense of trying his case here – an expense he isn't personally bearing anyway. As with the non-party witnesses, all transfer would do is to shift whatever inconvenience there is for one set of individuals to another, which does not justify transfer. 15 WRIGHT & MILLER § 3848. "Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964).

- 9 -

### III.     The Interest of Justice and Public Factors Disfavor Transfer.

The final factor the Court considers is "the interest of justice," which "embraces traditional notions of judicial economy, rather than the private interests of the litigants and their witnesses." *Berry Plastics*, No. 3:12–cv–73–RLY–WGH, 2013 WL 772871, at *7 (quoting *Law Bulletin Publ'g, Co. v. LRP Publ'ns, Inc.*, 992 F. Supp. 1014, 1019 (N.D. Ill. 1998)).  This factor focuses on (1) the transferee forum's familiarity with the governing law, (2) the local interest in deciding local controversies at home and (3) the congestion in the alternative courts.  *Id*.  In evaluating these factors, it is important to remember "[t]he 'interests of justice' favors consolidated litigation." *Kendall U.S.A., Inc. v. Cent. Printing Co.*, 666 F. Supp. 1264, 1269 (N.D. Ind. 1987) (citing *Van Dusen*, 376 U.S. at 643–46; *F.T.C. v. MacArthur*, 532 F.2d 1135 (7th Cir.1976)).  This is so because consolidated litigation "facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoid[s] duplicitous litigation and inconsistent results."  *Keene v. McKesson Corp.*, No. 12-CV-05924-JST, 2015 WL 9257949, at *4 (N.D. Cal. Dec. 17, 2015) (quoting *Puri v. Hearthside Food Sols.*, No. CV 11-8675-JFW, 2011 WL 6257182, at *3 (C.D. Cal. Dec. 13, 2011)).  That was the whole point of creating the MDL in the first place:  because centralization would "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary."  *In re: Cook Med., Inc.*, 53 F. Supp. 3d at 1380.  "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [section] 1404(a) was designed to prevent."  *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960).

This all strongly suggests that yanking Plaintiff's case out of this MDL and transferring it to the Southern District of Florida would not serve the interests of justice.  This Court has become intimately familiar with the highly technical engineering and medical issues at stake in this

litigation, and as a result is in a position to resolve these cases, including Plaintiff's, more efficiently than any other jurisdiction.  Transferring Plaintiff's case – and most certainly many others if Plaintiff is successful – would lead to the unnecessary duplication of efforts by different judges in different jurisdictions, as well as the attendant danger of inconsistent results.

1.      The fact that Plaintiff's product liability claims might be governed by Florida law does not counsel in favor of transferring his case.  Contrary to Plaintiff's inapplicable argument under *Dobbs* that the case will be governed by Florida law, Plaintiff filed the case in Missouri, subjecting the case to Missouri choice-of-law rules.  *Van Dusen v. Barack*, 376 U.S. at 639 (in a transferred case, "the transferee district court must be obligated to apply the state law that would have applied if there had been no change of venue."); *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, 155 F. Supp. 2d 1069, 1078 (S.D. Ind. 2001) ("In MDL proceedings, the forum state generally is the state in which the transferor court of each individual action sits; in other words, the transferee court must make an independent choice of law determination for each state from which a case was transferred into the MDL proceeding.").  A federal court in Florida has no advantage in terms of familiarity over this Court in analyzing Missouri choice-of-law rules to determine whether issues in the case are governed by Missouri, Florida, or Indiana law, or some combination thereof.  As this Court previously held when it faced the issue in the *Brand* bellwether, Plaintiffs' punitive damages claims are governed by Indiana law, and not the law that governs the product liability claims.  *See* Brand Trial Transcript, p. 4388, attached as **Exhibit C**.  Thus, because Indiana law governs part of Plaintiff's case, this factor is neutral and does not favor transfer.  *See Kendall U.S.A., Inc.*, 666 F. Supp. at 1269 (concluding this factor was neutral when both Indiana and Ohio law applied).

Even assuming that a choice-of-law analysis under Missouri law to the facts of this case would lead to application of Florida law in at least some respects – an analysis Plaintiff has not attempted to perform – there is no reason to believe Florida products liability law is so complex that this Court could not properly apply it without difficulty. *See*, *e.g.*, *Bates v. J.C. Penney Co.*, 624 F. Supp. 226, 228 (W.D.N.C. 1985) (saying this about Florida product liability law). This Court has already proved more than competent to apply the product liability laws of other states, as "federal judges routinely apply the law of a State other than the State in which they sit." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 67 (2013). Indeed, this Court managed just fine to apply Florida law in the product liability context when it presided over the *Hill* case.

2.      The local interests in this case do not favor either party. Plaintiff's home state "has an interest in protecting its citizens and maintaining its public policies while Indiana has similar interests in overseeing the conduct of Indiana corporations." *Berry Plastics Corp.*, No. 3:12-CV-73-RLY-WGH, 2013 WL 772871, at *7.

3.      Finally, as to congestion in the alternative court, this factor is not particularly useful to the analysis in this case. While the Cook Defendants acknowledge that there is a discrepancy in median resolution time between the Southern District of Indiana and the Southern District of Florida, that fact is of little significance given the nature of this litigation and the way the MDL cases are typically resolved. Moreover, it was the plaintiffs who moved to create this MDL and consolidate their cases in this District because they rightly recognized that doing so would "promote the just and efficient conduct of [the Related] Actions." **Exhibit A**, at p. 3. Now, in an attempt to frustrate this Court's docket management measures and bellwether schedule, and hinder the Cook Defendants' ability to defend this litigation, Plaintiff argues that transfer *out of* the MDL

is necessary to promote efficiency.  To the contrary, "the fact that the other cases arising from the transaction or event are in the same district from which transfer of the action is sought obviously is an argument *against* transfer."  15 WRIGHT & MILLER § 3854 (emphasis added).

**IV.    Transfer of Plaintiff's Case is Premature Because This MDL Court Has Not Completed Its Pretrial Work, and Transfer of Any Individual Case(s), Including Plaintiff's Case, Would Disrupt the Court's Docket Management Plans.**

In his brief, Plaintiff suggests that he has a preserved right to have his case tried in Florida[1] under the "direct filing" and *Dobbs* arguments that the Court is well familiar with by now, as it has rejected these arguments twice at the June and October 2019 hearings.  *See* Dkts. 11131 & 12256 (both ruling that there is no direct-filing order in this MDL).  As a general matter, the Cook Defendants find it unhelpful to the extent Plaintiffs seek to re-litigate those issues yet again.[2]  The Court's rulings on the matter and Cook's position on the issues are well-established, and Cook incorporates its prior briefing here by reference to the extent necessary.  In any event, the "direct filing" and *Dobbs* debates are completely irrelevant here because this case was not originally filed in this Court in the absence of a direct-filing order, but was instead filed in the Eastern District of Missouri and then transferred to this Court by the JPML.

With respect to Plaintiff's argument that the "time is ripe for the Court to transfer Mr. Colon's case to the Southern District of Florida for trial because all pretrial proceedings in this MDL have ended," Pl. Br. at 3, Plaintiff is wrong both legally and factually.  Simply put, Plaintiff is not asking for remand to Missouri, and the Plaintiff cites no law for the proposition that this

---

[1]   Plaintiff has asked for transfer to the Southern District of Florida, not suggestion of remand to the Eastern District of Missouri, and Cook's response is limited to the request to transfer the case under section 1404(a).

[2]   As the Court will recall, the Cook Defendants' master answer served as a general denial of short-form complaints and the Plaintiffs' Master Complaint, so the suggestion that Cook somehow agreed to anything more than that the streamlined short-form complaint procedure could be used in this MDL is inaccurate.

"ripeness" standard applies to transfer of cases under the general change of venue statute.  Under Seventh Circuit precedent, "the District Judge [in ruling on a motion to transfer] has a broad discretion, but in exercising this discretion he is limited in his consideration to the three factors specifically mentioned in § 1404(a), and he may not properly be governed in his decision by any other factor or consideration."  *Chicago, R. I. & P. R. Co. v. Igoe*, 220 F.2d 299, 302 (7th Cir. 1955).  To apply a different set of criteria – such as whether the case is "ripe" for transfer – would contradict binding precedent, not to mention the language of the controlling statute.

That said, an MDL court necessarily employs considerable discretion in the management of its docket and an argument can be made that the timing considerations of whether to transfer a case out of the MDL should be considered as part of the public factors analysis.  When that analysis is made in the context of this MDL, however, it counsels against transferring the case outside of the MDL.

While Plaintiff premises his argument that the case is "ripe" for transfer on the basis that company discovery had concluded and two Celect bellwether trials have been conducted, "pretrial proceedings" in an MDL are much broader than Plaintiff suggests, as they encompass a host of additional tasks common to all or large subsets of cases that have not been finished.  Moreover, while the Court has presided over trials in two Celect cases (*Hill* and *Brand*), the Court's current bellwether trial plan includes one additional Celect trial (*Burrage*) chosen from among the "product-in-place"/disputed injury cases, as well as two Tulip case trials.  In short, Plaintiffs' motion to transfer should be denied because the common pretrial work of this MDL court is far from complete.  Granting transfer at this time would only serve as a frustration to the Court's current bellwether trial and docket management plans.  In fact, these considerations led the Court to ask state courts to coordinate their proceedings with this Court, and transfer of Plaintiff's case

US.125830899

at this time would run contrary to these docket management decisions as this case would necessarily proceed on a separate track and inevitably incentivize other plaintiffs to also seek premature transfer or remand as applicable.

A.     **The pretrial work of an MDL court includes much more common work than presiding over company discovery as Plaintiffs narrowly suggest, and encompasses efforts to dispose of meritless cases and resolve cases with merit.**

The statutory grant of jurisdiction for multidistrict litigation allows civil actions involving one or more common questions of fact to be transferred to a single district court before a single judge for "coordinated or consolidated pretrial proceedings."   28 U.S.C. § 1407; *see also DeLaventura v. Columbia Acorn Trust*, 417 F. Supp. 2d 147, 148 (D. Mass. 2006) ("Since all 94 district courts follow identical rules concerning discovery and trial preparation, one excellent innovation in civil practice is the idea that a single judge might manage a number of 'related' cases, getting them all ready for trial in a uniform manner and returning the 'trial-ready' cases from whence they came [i.e. the transferor courts] for trials before local juries.").

Contrary to the narrow view expressed in Plaintiffs' motion transfer that places inordinate focus on statements from Cook's counsel that company discovery in this MDL has concluded, *see* Pl. Br. (attaching as Exhibit C hearing statements from Cook's counsel that company discovery has closed), the plain English meaning of the term "pretrial, as an adjective [quite literally], means before trial" and, thus, "all judicial proceedings before trial are pretrial proceedings."   *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 494 (J.P.M.L. 1968).   In the medical device product liability context here, that includes *Daubert* and summary judgment proceedings.   The MDL court's authority to manage the consolidated cases is "'broad' and it necessarily encompasses issuing pretrial orders, resolving pretrial motions (including discovery motions, motions to amend, motions to dismiss, motions for summary judgment and motions for class certification, and attempting to facilitate settlement."   Fallon, 82 Tul L. Rev. at 2328 (citing *In re Plumbing Fixture*

- 15 -

*Cases*, 298 F. Supp. at 494).   The JPML agrees, advising MDL judges that "[y]our ultimate responsibility is to resolve pretrial issues in a timely and expeditious manner.  This responsibility certainly includes resolution of jurisdictional issues, important evidentiary disputes, class certification issues, and, perhaps most important, motions to dismiss and for summary judgment." JPML & Federal Judicial Center, *Ten Steps to Better Case Management, a Guide for Multidistrict Litigation Transferee Judges* § X(a)   (2d ed. 2014),   available   at https://www.fjc.gov/sites/default/files/2014/Ten-Steps-MDL-Judges-2D.pdf.

Moreover, the DUKE LAW MANUAL prescribes several guidelines and best practices that highlight the need to complete various tasks that have not yet been fully realized in this Court. Specifically, the DUKE LAW MANUAL recommends:

- Best Practice 1B(iii):  "The transferee judge should give priority to deciding issues broadly applicable to multiple claimants in the MDL." (p. 5);

- Guideline 14:  "The transferee judge should endeavor to use the MDL forum to resolve or streamline the litigation before remand to the district courts." (p. 94);

- Best Practice 14A:  "Remand of remaining cases to transferee courts should not begin until the court has taken steps:  (1) to preside over discovery, ***decide on motions, and conduct such trials that are needed to position the cases for potential resolution***; (2) to ***explore and consider all possibilities for resolution of the cases***; and (3) to prepare cases that do not resolve for trial in the transferor courts." (p. 94 (emphasis added));

- Best Practice 14B:  "In most situations, the time to raise settlement will be after sufficient time has passed to ensure a degree of certainty about both the nature and scope of the claims at issue."[3] (p. 95);

- Best Practice 14B(i):   "The court is usually uniquely situated to play a role in facilitating settlement discussions." (p. 97);

---

[3]   As the Court is aware, filings in the Cook MDL are rarely ever under 100 cases a month. Moreover, in recent months, filings have been at a higher pace harkening back to the filing levels in 2015 and 2016.

US.125830899

- Best Practice 14D(i):  "In preparation for remand, *the court should consider using Lone Pine proceedings or other methods to cull meritless cases and ensure that only the viable cases may ultimately be eligible for remand*." (p. 104 (emphasis added));[4]

- Best Practice 14E(ii):  "The transferee judge should consider how, in the context of the specific litigation, remand procedures may minimize the burdens on the transferor courts and litigants after cases are transferred and remanded."

As judged against these recommendations, this MDL's work is not yet complete, and contrary to Plaintiff's claim, individual cases like his are not ready for transfer.[5]  As demonstrated by the Court's orders from this year dismissing noncompliant cases (Dkt. 10622), Category 1 cases (Dkt. 10588), and Category 2 cases (Dkt. 11131), the categorization process is helping to cull the MDL of some of its most deficient cases.  This process is far from finished, however.  And there are many other issues affecting large groups of cases that the Cook Defendants intend to present to the Court over the coming months, as demonstrated by the two pending omnibus motions for summary judgment based on the statute of limitations and the omnibus motion for summary judgment in miscategorized no-injury cases.  *See* Dkts. 11725-26; 11921-24.  Per the best practices recommended by the DUKE LAW and COMPLEX LITIGATION MANUALS, these are all issues the Court should review and rule upon before considering remand or transfer of cases.  Moreover, the

---

[4]  As the DUKE LAW MANUAL explains, "*Lone Pine* orders require each plaintiff in a mass tort case to submit a report setting forth evidence sufficient to document the basis for his or her personal-injury claims."  *Id.* at 104 (citing *Lore v. Lone Pine Corp.*, 1986 WL 637507 (N.J. Super. Law Div. Nov. 18, 1986)).  The DUKE LAW MANUAL notes that MDL "courts are increasingly using *Lone Pine* orders to screen meritless cases . . . ."  *Id.* at 95.

[5]  Similarly, the MANUAL FOR COMPLEX LITIGATION provides that "Litigation is generally considered mature if through previous cases (1) discovery has been thorough, producing a consensus that the available important information has been provided, (2) a number of verdicts have been received indicating the value of claims, and (3) plaintiffs' contentions have been shown to have merit."  MANUAL FOR COMPLEX LITIGATION p. 359, § 22.314.  "In a typical mature mass tort, little or no new evidence is likely, appellate review of novel legal issues has been completed, and a full cycle of trial strategies has been explored."  *Id*.  Under this definition, the Cook MDL cannot be considered a "mature mass tort" for the reasons discussed in this Section.

US.125830899

Cook Defendants anticipate that many additional cases are time-barred and/or miscategorized and intend to move for summary judgment on those cases once the Court has an opportunity to consider and rule upon the pending motions.  Beyond those motions, Cook anticipates raising by motion multiple other issues that impact large groups of cases, including (among others):

- **Whether certain cases are barred by the applicable statute of repose.**  There are over 800 cases in the MDL that were filed more than 10 years after the date of placement. Several states, including Indiana where the development and marketing of the IVC filters was centered, have statutes of repose that categorically bar product liability claims after a certain time, typically 10 years.  Moreover, the relative percentage of these cases is growing, because Plaintiffs keep filing cases involving filters sold in the early and mid-2000s.  The Court has already dismissed several cases barred by the statute of repose (Dkt. 4918), and Cook intends to raise the issue again in many other cases.  These motion(s) will require complex choice-of-law analys(es) and would be best addressed by this Court.

- **Whether certain cases should be dismissed for lack of subject matter jurisdiction.** There are some cases filed by Indiana residents that lack diversity jurisdiction but have not yet been dismissed.

- **Whether certain cases should be dismissed for failure to plead with particularity.**  As Cook argues in the pending omnibus motions for summary judgment, Plaintiffs have not pled their state consumer protection claims with the particularity required by Rule 9(b). This is a common, threshold issue in all cases that this Court should resolve before considering whether to transfer any case out of the MDL.  It would be inefficient and risk inconsistent rulings if the Court were to transfer this case out of the MDL before this Court has an opportunity to rule on the viability of the consumer fraud claim.

- **Whether certain warranty claims fail as a matter of law.**  Most states have a four-year statute of limitations for warranty claims that is triggered by the sale or delivery of the product.  Cook's analysis indicates that about 70% of the cases were filed more than four years after the placement of the product (logically, the latest possible sale or delivery date), indicating that the vast majority of these claims are time-barred.  Moreover, Cook prevailed on the warranty claims in *Gage* by demonstrating that the warranty period was contractually reduced to one-year and a day (Dkt. 7809), which only increases the likelihood that most warranty claims are time-barred.  Considering that Plaintiff Colon's filter was placed on May 24, 2012, *see* Pl. Compl, ¶ 11, and was originally filed on February 17, 2016, Plaintiff's warranty claims appear to be facially time-barred.  Accordingly, the Court should not transfer Plaintiff Colon's case until it has a chance to address the viability of warranty claims.

These issues are usually avoided in standalone cases if counsel adheres to their duty to screen out meritless claims.  *See* Fed. R. Civ. P. 11(b).  The unintended but all-too-common

US.125830899

consequence of centralization in an MDL court, and the adoption of streamlined filing procedures that go along with that centralization, is that plaintiffs' counsel are incentivized to set aside their typical case-screening duties by the prospect of a global settlement.  As one recent MDL court explained:  "Some lawyers seem to think that their cases will be swept into the MDL where a global settlement will be reached, allowing them to obtain a recovery without the individual merit of their case being scrutinized as closely as it would if it proceeds as a separate, individual action." *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, 2016 WL 46704827, at *1 (M.D. Ga. Sept. 7, 2016).  This MDL has been particularly plagued by such behavior, as the Court recognized by entering its recent Categorization and Screening Order (Dkt. 9322), as implemented by other orders, including the current Bellwether Plan (CMO-25).  Thus, as the best practices in the DUKE LAW MANUAL indicate, case-screening efforts are necessary before remand or transfer of member cases become appropriate, if they are appropriate at all.

Whether Cook ultimately prevails on the motions summarized above or not, they should be briefed and heard in this Court before any serious consideration is given to transfer of cases. Cook called for and participated in the October 2018 settlement conference in good faith.  That conference confirmed that serious settlement negotiations were not yet possible because Plaintiffs were demanding significant amounts to resolve, for example, asymptomatic product-in-place claims.  The categorization and motion practice discussed here can help cull the MDL of meritless cases to a point where revisiting global resolution talks may become fruitful.  In any event, the common tasks outlined here are all "pretrial" tasks yet to be done under a common sense understanding of that term as its used in section 1407.  *See* JPML, *Ten Steps to Better Case Management* at § X(a) (explaining that an MDL court's "perhaps most important" responsibility is resolving "motions to dismiss and for summary judgment").

US.125830899

Moreover, Plaintiffs themselves agreed these steps would be necessary and their leadership – and Plaintiff Colon is represented by Plaintiffs' Co-Lead Counsel – participated in developing the categorization framework.  As Plaintiffs said in their brief on the issue:  "These non-symptomatic injury cases, failed retrieval cases, irretrievable filter cases, and anticoagulation cases [which they agreed had significant numbers] will need to be tested (through motions to dismiss and for summary judgment) and tried . . . to determine whether they involve valid and compensable injuries."  Pl. Resp. to Cook Defs. Mot. for Screening Order and Bellwether Selection Plan, Dkt. 8591 at 2.

Transfer of individual cases such as Plaintiff Colon's case should not be considered before this work is complete, including ruling on the dispositive issues discussed above.  Indeed, a facial overview of Plaintiff Colon's case indicates that at least his consumer fraud and warranty claims are likely to be subject to dismissal when the Court addresses those claims in an omnibus manner, and it is in the interest of efficiency and maintaining consistency for this Court to rule on those issues before making decisions about transferring this or other individual cases.

**B.    The Court should continue with its new plan to try more bellwether cases.**

To gauge valuation of cases and assess their merits, modern MDL practice requires several trials of ***representative*** cases.  Trials of bellwether cases "allow[] a court and jury to give the major arguments of both parties due consideration without facing the daunting prospect of resolving every issue in every action," thereby permitting the parties to evaluate the "handful of crucial issues on which the litigation primarily turns."  *In re MTBE Prods. Liab. Litig.*, 2007 WL 1791258, at *2 (S.D.N.Y. June 15, 2007); *see also* Fallon, 82 Tul. L. Rev. at 2338 ("Bellwether trials thus assist in the maturation of any given dispute by providing an opportunity for coordinating counsel to organize the products of pretrial common discovery, evaluate the strengths and weaknesses of

their arguments and evidence, and understand the risks and costs associated with the litigation."). Judge Fallon accomplished this goal in the Vioxx and Propulsid MDLs by "limit[ing] the attorneys' focus to approximately four to five variables" that were key to those litigations.  *Id.* at 2346.  This Court, through the Categorization and Screening Order, has done the same by dividing the cases into seven categories and identifying Category 5 and Category 6 cases as the case types where bellwether trials are most necessary.  Trial of representative cases can help determine whether resolution of the wider litigation is attainable in the MDL Court itself, thus eliminating the need to remand and try hundreds of cases at enormous expense and inefficiency.

Here, the Court has tried two bellwether cases, and those two cases are representative of only a relatively small proportion of the MDL caseload as a whole.  Both of those cases involved the Celect and were, under the terminology of the categorization process that the Court subsequently adopted, Category 7 cases.  The *Hill* case involved claimed injuries to the duodenum, which is a more serious medical symptomology than the majority of alleged perforation claims, which are largely limited to claims of caval perforation only or do not involve perforation of adjacent structures to the extent seen in *Hill*.  Similarly, *Brand* involved open removal surgery, which is perhaps the most serious injury claim in this litigation but also one of the rarest case types in the MDL.

To address these issues, this Court decided that "[w]e really need to address the product-in-place cases here somehow."  Feb. 5, 2018 Tr. at 53:7-16.  This, according to the Court, required trial of "two or three product-in-place cases," in addition to *Hill* and *Brand*, for a total of at least four bellwethers.   The Court then adopted the current bellwether plan that has yielded two Tulip cases and one more Celect case that are presently being worked up for trial.  Those bellwethers were chosen through a thoughtful selection mechanism that involved randomly selecting a

US.125830899

manageable pool of cases for review, strikes by parties of the most unbalanced cases from their perspectives, and selection by the Court of representative cases in the categories where additional bellwether trials had not taken place and are most needed to move the litigation forward.  Simply put, global resolution cannot be meaningfully attempted when the parties, as here, have significant differences not just on liability theories and defenses, and the accompanying disputes over causation, but on whether the medical phenomena presented even constitute legally cognizable or compensable injuries.  These considerable disagreements can only be resolved through bellwether trials of representative cases where the juries can address the relevant liability and damages issues, with the Court helping to bridge the gap by weighing in on key evidentiary and legal issues, including making *Daubert* rulings.

By contrast, Plaintiffs have requested transfer of Plaintiff Colon's case now for a third time, as part of an effort to try the case as a *de facto* bellwether in a different jurisdiction irrespective of this Court's careful efforts to identify and select *representative* cases through its current bellwether plan.  Plaintiff Colon's case is hardly representative when it has been cherrypicked for individual transfer from among 6,000 cases.  Per his categorization form, Plaintiff Colon's is a Category 7 case that involves a fractured filter with abdominal pain, with a retrained strut after filter removal.  As such, Plaintiff's case involves phenomena that the parties agree constitute an injury.[6]

This Court recently adopted its Case Management Order Regarding Coordination with State Court Litigation (CMO-26, Dkt. 12222, issued October 25, 2019).  As part of that order, the Court sent a letter to the judge presiding over each state court case to inform those judges about this Court's discovery efforts, case management orders, and current bellwether trial plan.  Among

---

[6]  Fracture cases make up less than 10% of the MDL and the *Brand* case also involved a fractured filter with retained fragments.

US.125830899

other things, this Court's state court coordination efforts are intended to ensure efficient prosecution of the three bellwether cases that are presently being worked up and that will be tried in this Court over the next year. Transfer of Plaintiff's case under these circumstances would frustrate the Court's efforts because the case was handpicked for trial by one side and is not representative of the issues where the parties' positions are the most apart.

Moreover, transfer of the case to Florida for trial – and any other case(s) that would make the same request were the Court to grant this motion – would create parallel litigation involving the same parties, witnesses and counsel that would divert time and focus away from the Court's slate of bellwethers, thereby putting at risk the timely and efficient completion of the Court's bellwether plan.  Accordingly, the Court should deny Plaintiff Colon's motion to transfer because the overarching need for the Court to prioritize its current bellwether plan in the interests of the litigation as a whole is just as true as it was six months ago when the Court denied Plaintiff's previous motion to transfer.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff Colon's motion to transfer.  The Court has already denied Plaintiff Colon's first motion to transfer and Plaintiffs' global motion to remand and transfer, and the current balance of the relevant factors does not warrant reconsidering those rulings at this time.

Respectfully Submitted,

Dated:  December 17, 2019

/s/ *Andrea Roberts Pierson*
Andrea Roberts Pierson, Co-Lead Counsel
Jessica Benson Cox
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2500
Indianapolis, Indiana  46204-1750
Telephone: (317) 237-0300
Andrea.Pierson@FaegreBD.com
Jessica.Cox@FaegreBD.com

- 23 -

James Stephen Bennett, Co-Lead Counsel
FAEGRE BAKER DANIELS LLP
110 West Berry Street, Suite 2400
Fort Wayne, Indiana  46802-2322
Telephone: (260) 424-8000
Stephen.Bennett@FaegreBD.com

*Attorneys for Defendants Cook Incorporated,
Cook Medical LLC, and William Cook Europe
ApS*

## CERTIFICATE OF SERVICE

I hereby certify that on December 17, 2019, a copy of the foregoing DEFENDANTS'
RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO TRANSFER VENUE was filed
electronically, and notice of the filing of this document will be sent to all parties by operation of
the Court's electronic filing system to CM/ECF participants registered to receive service in this
matter.  Parties may access this filing through the Court's system.

/s/ *Andrea Roberts Pierson*

US.125830899