IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB MDL NO. 2570 **This document relates to all actions** |

## Plaintiffs' Motion for Reconsideration of the Court's Order Applying Indiana Choice of Law to Direct-Filed Cases

Plaintiffs, through the PSC, respectfully move the Court to reconsider its decision applying Indiana's choice of law principles to all cases filed directly in the MDL.

## Introduction

This case presents an unusual situation. Three times Cook asked the Court to apply the choice of law principles of plaintiffs' home states in cases originally filed in this MDL and each time the Court agreed. Those orders became law of the case. This Court told plaintiffs and their lawyers a direct-filed case would retain the choice of law principles of their home state. It was based on these rulings that thousands of plaintiffs and their counsel direct-filed their cases in this Court, assured that the cases would remain in the MDL without having Indiana's choice of law principles apply.

The Court's October 29, 2019, decision to apply Indiana choice-of-law principles to direct-filed cases demonstrated to each and every one of these plaintiffs and their counsel that they were wrong to rely upon this Court's prior orders. Respectfully, that decision was reversible error.

**First,** the Court erred when it held that because there is no "direct-filing order" in this case, Indiana choice-of-law principles must apply to direct-filed cases. Respectfully, this error was in concluding there must be an explicit direct-filing order that addresses choice of law for the originating state's choice of law principles to apply. The cases cited in Cook's briefing and discussed at oral argument had nothing more before them than what has always existed in this case: a set of CMOs. In fact, in those cases there was less than what existed here because for more than two years this case had both Cook saying and the Court ruling there was both a direct-filing order and that originating states' choice of law principles applied in direct-filed cases.

**Second,** regardless of what the rule truly is, or even what it should be, the fact is the Court held in its May 31, 2017, decision there was a direct-filing order in this case and the "home" choice of law principles applied in direct-filed cases. At a minimum, from that date forward every plaintiff and their counsel was governed by the court's rulings and would have filed their cases accordingly. To now hold that those plaintiffs are stuck with Indiana's choice of law principles is to hold nothing less than plaintiffs and their counsel are not entitled to rely on this Court's decisions. The plaintiffs who filed earlier cases were also charged with knowledge of the court's 2017 opinion and those plaintiffs had no opportunity to take action to protect their own interests after confirmation that choice of law decisions would not be made based on Indiana's choice-of-law rules.

Which state's choice of law principles apply can carry case-dispositive consequences, as Cook already suggests in this MDL. Cook argues Indiana's statute of limitations is "procedural" rather than substantive; in other words, each plaintiff—no matter where they're from, where they were injured, or where their filter was implanted—is subject to Indiana's two-year statute of limitations. Plaintiffs that were timely filed under a three-year statute (e.g., Michigan, Montana, and\or Arkansas), could suddenly be barred by Indiana's statute of limitations even if the case would

have been viable if filed in their home state first. In other words, a plaintiff could lose her right to seek redress for her injuries through nothing more than relying upon this court's prior decisions and orders.[1]

Such a result would be inequitable and constitute reversible error.

## Procedural History

On August 2, 2019, Cook filed an "Omnibus Motion for Summary Judgment Based on Applicable Statute of Limitations From Five States." (Doc. 11501). Cook attacked the claims of 149 plaintiffs from five different states as "time-barred pursuant to the applicable statutes of limitation in **their home states**." (Doc. 11503). Cook withdrew that motion on September 4, 2019 "to address a procedural issue." (Doc. 11711).

The following day, Cook filed a "renewed" motion against the same plaintiffs. (Doc. 11725). The "procedural issue" motivating withdrawal of its original motion was Cook's new position on choice of law — that all direct-filed case were subject to Indiana's choice of law principles and, thus, Indiana's two-year statute of limitations. (Doc. 11726, pp. 10-11).

The PSC responded with the prevailing Circuit rule: the choice-of-law rules of a case's originating jurisdiction apply, and the "originating" jurisdiction for direct-filed cases is that of the "home forum," i.e., the forum in which the case would have been filed but for the availability of direct-filing into an existing MDL.  (Doc. 11983.) At oral argument, the PSC pointed out each of the prior instances in which both Cook

---

[1]  Cook will undoubtedly next ask this Court to apply Indiana's ten-year statute of repose across the board — suddenly converting timely-filed cases to cases that are barred by a statute of repose. These disastrous consequences are the result of nothing more than relying on this Court's prior decision.

and the Court applied the choice of law principles of the "originating" (i.e., not Indiana) jurisdiction in direct-filed cases.

On reply, Cook did not dispute the prevailing rule. Instead, Cook argued that there must be an explicit, stand-alone "direct-filing order" for the prevailing rule to apply. (Doc. 12172.)   Cook then made the following inaccurate claim: "On the contrary, *every case* the PSC cites in its response involves a MDL with a direct-filing order – agreed to by the parties after negotiation and approved by the MDL court – that governs the treatment of direct-filed cases as transferred cases." (p.12) (emphasis Cook's).

Cook continued at the next status conference: "So the form of direct-filing orders is not uniform, but there is one fact that is uniform, and that's that there must be an explicit expressed direct filing order.  That's across all the cases." (Transcript of Oct. 25, 2019 status conference, p. 35.)[2] Cook's position was this: the cases relied upon by the PSC to show prevailing Seventh Circuit law all involve an explicit direct-filing orders "that set[] out the rights that the parties are giving and waiving" by virtue of direct filing. *Id.* at 38.

This is inaccurate.  The MDL courts applying the prevailing rule generally had no explicit direct-filing order that specified the choice-of-law rule to be applied.  They merely had what has existed in the present case since almost its inception: a procedure for filing cases directly into the MDL for the sake of efficiency, and a means by which a plaintiff could designate the "originating" or "home" jurisdiction.

The PSC respectfully submits that Cook's misunderstanding about these cases led the Court into an erroneous ruling. This Court should apply choice-of-law rules of

---

[2] *See also id.* at 39-40 ("[T]here is no court in this entire country that has ever implied a direct-filing order.  Not one."); 38 ("There must be an actual order that this language refers back to that sets out the rights that the parties are giving and waiving by virtue of a direct filing order and that does not exist here."; 49-50 ("The vernacular can't be construed to be a direct filing order of the type that we've shown you other courts adopted.").

the "originating" or "home" forum designated by the plaintiff in direct-filed cases. No statute or rule requires an explicit direct-filing order of the kind upon which Cook insists. Applying the prevailing choice-of-law rule simply advances the principles of efficiency and fairness that justify the creation of an MDL in the first place—and that should be followed here.

# Argument

## I.    Standard of Review.

The Court's order of October 29, 2019 is a non-final, interlocutory order. As such, it may be revisited at any time, and plaintiffs' motion is not subject to the more stringent standards of Rules 59(c) or 60(b). Instead, the Court is free to reconsider the issue at any point to reach the correct result: "Rule 59 is not the right procedural hook for seeking reconsideration of a nonfinal order …. [D]istrict judges may reconsider interlocutory orders at any time before final judgment. *Terry v. Spencer*, 888 F.3d 890, 893 (7th Cir. 2018). "The beneficial aspect of distinguishing between the two methods of relief is readily apparent when the strict standard for granting relief under Rule 60(b) is contrasted with the practically unbridled discretion of a district court to reconsider a previous interlocutory order." *Global Archery Prods., Inc. v. Firgaira*, 2018 WL 3833498, *1 (N.D. Ind. Aug. 13, 2018), quoting *Fisher v. Nat'l R.R. Passenger Corp.*, 152 F.R.D. 145, 149 (S.D. Ind. 1993).

## II.    The Court's Orders and History of this Case Yield Application of the Originating Jurisdiction's Choice of Law Principles.

The record in this case created the same procedural framework as the case law the PSC relied on, applying the choice of law principles from each case's originating jurisdiction. Again, it must be borne in mind that Cook does not dispute this is the

governing rule; Cook simply maintains the governing rule requires an explicit direct-filing order.  But as demonstrated below, Cook is incorrect.

A.    **The Parties and the Court Have Routinely Acknowledged the "Direct Filing" in This MDL of Tag-Along Cases That Originate Elsewhere.**

As the Court is aware, the parties began discussing the expedience of direct filing tag-along cases from other jurisdictions several years ago, shortly after this MDL was formed.  The parties and the Court repeatedly treated this case as one in which a direct-filing order exists:

- **January 2015**: Cook agrees to the Short Form Complaint, which requires plaintiffs to list the following: "District Court and Division in which venue would have been proper absent direct filing." This language arose from arms-length negotiation between the parties, which was acknowledged by the Court in its March 17, 2015, Order. (Doc. 355, p. 3)

- **January 30, 2015**: PSC files Master Complaint, which states: "For purposes of remand and trial, venue is proper pursuant to 28 U.S.C. § 1391 in the federal judicial district of each Plaintiff's state of residence."  This language is specifically incorporated into every short form complaint.

- **April 17, 2015**:  CMO 3 regarding dismissal of additional Cook entities states that "[a]s to cases directly filed in the Southern District after the entry of this Order and the entry of an order in MDL 2570 permitting direct filing, the Short Form Complaints will not name the additional Cook Entities. (Doc. 353, p. 2).

- **April 17, 2015**: CMO 5 specifically states that it applies to the following "All cases transferred to this court by the Judicial Panel on Multidistrict Litigation, including those cases identified in the original Transfer Order and those subsequently transferred as tag along actions; *and all cases directly filed* in or removed to this MDL."[3] (Doc. 355, p.1) (emphasis added)

- **February 2, 2016 ("The Cook Defendants' Brief in Support of Motion for Summary Judgment" in *Graham*)**: Cook argues for application of the

---

[3] CMO 5 further states: "Waiver of Lexecon is confirmed by Plaintiffs for the Discovery Pool cases only. Nothing in this Case Management Order or otherwise shall indicate a waiver of Lexecon as to the remaining cases.

"originating" jurisdiction's choice of law rule to a case in this MDL, on the basis that it was "direct filed": "When a case based on diversity is part of an MDL and is directly filed in the MDL forum as the result of a direct filing order, courts have found that the 'better approach is to treat foreign direct filed cases [i.e., cases originating outside of this Court's jurisdiction but filed directly into the MDL] as if they were transferred from a judicial district sitting in the state wagered the case originated.' *In re Yasmin*, 2011 U.S. Dist. LEXIS 39820, at *15, *18 (S.D. Ill. April 11, 2011)." (Doc. 1051, p.5)

- **March 27, 2017 ("Cook Defendants' Memorandum in Support of Motion for Judgment on the Pleadings Based On Statutes of Repose" in *Sales-Orr*)**: Cook again argues for application of the "originating" jurisdictions' choice of law rule to cases in this MDL, on the basis that they were "direct filed": "However, where a case based on diversity is part of an MDL and is directly filed in the MDL forum as the result of a direct filing order, *as occurred with the six cases here*, courts have found that the 'better approach is to treat foreign direct filed cases [i.e., cases originating outside of this Court's jurisdiction but filed directly into the MDL] as if they were transferred from a judicial district sitting in the state wagered the case originated.' *In re Yasmin*, 2011 U.S. Dist. LEXIS 39820, at *15, *18 (S.D. Ill. April 11, 2011)." (Doc. 4188-1, at ECF p. 9193) (bracketing in original).

- **May 31, 2017 ("Entry on Motion for Judgment on the Pleadings Based on the Statute of Repose" in *Sales-Orr*):** The Court applies the "originating" jurisdiction's choice-of-law rule, referencing a prior "direct filing order" in this proceeding: "This Motion addresses those Plaintiffs, whose cases originated outside of this court's judicial district but were directly filed in this MDL forum ("foreign direct filed cases"), *pursuant to the court's direct filing order*. ... In 2011, the Southern District of Illinois addressed this issue and held that 'the best approach is to treat foreign direct filed cases as if they were transferred from the judicial district sitting in the state where the case originated.' *In re Yasmin*, No. 3:09-md-2100-DRH-PMF, MDL No. 2100, 2011 U.S. Dist. LEXIS 39820, at *18 (S.D. Ill. April 11, 2011). *The court adopts this approach as it is in keeping with the rule that the transferee court applies the law of the state in which the transferor court is located.* ... As noted by a sister district court, 'it would be an odd result to subject plaintiffs to [Indiana] law simply because they took advantage of the direct filing procedure—a procedure that provides benefits to all parties and preserves judicial resources.'" **(**Filing No. 4918, at ECF p. 11508-11509 (citing, *In re Bausch & Lomb, Inc.*, Nos. 2:06-cv-2659-DCN and 2:06-cv-2716-DCN, MDL No. 1785, 2007 WL 3046682, at *3 (D.S.C. Oct. 11, 2007)).

In sum, the record contains multiple case management orders permitting and contemplating the filing of cases directly into this MDL, along with Cook's statements and the Court's ruling regarding the same.

## B.    The Record in Other Similar Cases

Cook told the Court that "***every case*** the PSC cite[d] in its response involved[d] a MDL with a direct-filing order – agreed to by the parties after negotiation and approved by the MDL court – that govern[ed] the treatment of direct-filed cases as transferred cases." (Doc. 12172, p. 12)(emphasis Cook's).  Is this true?

Here are the cases cited by plaintiffs, in the order in which they were addressed by Cook in Doc. 12172, and what was actually in the record of each of them:

1.    *Dobbs v. Depuy Orthopedics, Inc.*, 842 F.3d 1045 (7th Cir. 2016).

The Seventh Circuit did not treat the choice of Illinois law as having been agreed to by the parties in a direct-filing order, nor did it otherwise identify the direct-filing order as a basis for its choice of law ruling.  Rather, it "ratified" the approach of district courts in this circuit that "foreign cases filed directly in a district court as part of an ongoing multidistrict litigation are treated as having originated outside of that district." *Id.* at 1049. Cook produced the original CMO in this case, permitting direct filing and stating merely that "the fact that a case was directly filed … will have no impact on the choice of law to be applied …." Cook argues that under this order, "the court would apply the choice-of-law rules that would apply if the case had

been transferred." But these statements in the CMO do not identify the applicable choice of law. More likely, they mean that, as in the *Yaz* case discussed below, the parties simply reached no agreement at all as to the applicable choice of law rule.

2. *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 977 F.Supp.2d 885 (N.D. Ill. 2013).

In *Watson*, the record contained much *less* about direct filing than appears in the record here: simply a one-sentence reference in a joint status report, and a one-sentence reference in a minute entry. The minute entry contemplating direct-filing does not address choice of law. Nevertheless, the court applied the traditional rule advanced by plaintiffs here, finding it persuasive that "the present case has no connection with Illinois other than the fortuity that the JPML authorized an MDL proceeding to take place here" and that the "sole purpose" of filing it directly in the MDL "was to maximize convenience and save the parties' and judicial resources." 977 F. Supp. 2d at 888.

Even in Cook's description of the case, there was nothing more than an agreement of the parties about using the device of direct filing to save time, and court approval of that procedure. *See* Doc. 12172, p. 13, pointing out that the court had approved a direct-filing procedure. Cook does not contend that the parties had agreed about the resulting choice-of-law rules to be applied. Indeed it does not appear that the parties or the court had given any thought to that issue at all.

Instead, the parties simply submitted a status report to the court indicating that if it was "acceptable" to the court, certain cases would be filed directly in the

MDL.  *Id*. at 887.  Thereafter, "[f]ollowing receipt of the status report, the Court entered an order permitting the parties to file the handful of settled but not-yet-filed cases in this district."  *Id*. (citation omitted).  The joint status report referred to is attached as Exhibit A hereto. It contains nothing about choice-of-law considerations, and nothing further about direct filing at all.  The court's order referred to is simply a minute entry stating that cases "may be filed directly in this district …." *See* minute order attached as Exhibit B.

    3.    *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig*.,    2011 WL 1375011 (S.D. Ill. Apr. 12, 2011).

    In *Yaz*, there was again nothing more than there is here: a CMO allowing direct filing, that made no determination about choice-of-law issues. The agreed order in question (CMO No. 9, *see id*. at *5) merely states that "the fact that a case was filed directly in the MDL Proceedings pursuant to this Order will have no impact on choice of law, including the statute of limitations that otherwise would apply to an individual case had it been filed in another district court and transferred to this Court pursuant to 28 U.S.C. §1407." Exhibit C at 2.  In other words, the parties and court simply made no agreement about choice of law at all. Without such an agreement to guide its analysis, the court settled on what it termed the "better approach," and "treat[ed] foreign direct filed cases as if they were transferred from a judicial district sitting in the state where the case originated."  *Id*. at *6. Thus, the Court determined that the "originating" state would be "the state where the plaintiff purchased and was prescribed the subject drug."  *Id.*

4.    *In re Fresenius Granuflo/Naturalyte Dialysate Prods. Litig.*, 76 F.Supp.3d 294 (D.Mass. 2015).

In *Fresenius*, once again, the MDL court's record contained nothing more than what exists in this case: A CMO that allowed direct filing, and a short form complaint that required a home forum designation, with nothing specified or agreed as to the choice-of-law rules to be applied. Cook says that the MDL court in this case "explained that its 'CMO 7 created a procedure by which plaintiffs could file their cases directly into the MDL without first being transferred through the JPML … all plaintiffs were required to file [a short-form complaint that] contained a check box for whether the plaintiff wanted to choose Massachusetts as the 'home forum,' and a place to write in an alternate district that would be appropriate if the plaintiff did not want to choose Massachusetts.'" This is true as far as it goes.  But it is also important to note that "CMO 7 d[id] not contain the words 'choice of law' and d[id] not expressly require the application of any particular choice of law rule…. CMO 7 also contains detailed language about the home forum designation in the Short Form Complaint." *Id.* at 301-02.  Indeed, the defendant in that case specifically acknowledged that it had not agreed that the short form designation could control the choice of law analysis, but the court nonetheless determined that consistent with the "deference traditionally shown to a plaintiff's choice of forum," the home forum designation on the short form complaint would be treated as the "originating" jurisdiction, because the "home forum designation of the direct filing plaintiffs [in the short form complaint] is the best evidence … of what these plaintiffs would have done absent direct filing." *Id.* at 304;

11

*see also id.* at 303 (noting that "the parties did not agree on a particular choice of law rule").

5.    *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 2012 WL 3205620 (E.D. Pa. Aug. 7, 2012).

The opinion in *Avandia* makes no mention even of a CMO, let alone a direct-filing order. *Avandia* is thus another case in which there was *less* than what exists here.  There, the court simply acknowledged that "[t]he rules of the [JPML] allow cases to be filed directly in this District and made part of the Avandia MDL, which Plaintiffs in these cases did …." *Id.* at *2.  The court then applied the prevailing rule, noting that it would "promote uniform treatment between those plaintiffs whose cases were transferred into the MDL from their home states and those plaintiffs who filed directly into the MDL." *Id.* at *2 (footnotes omitted).

6.    *Wahl v. General Elec. Co.*, 983 F.Supp.2d 937 (M.D. Tenn. 2013).

Once again, all there was in *Wahl* was a CMO permitting direct filing. There was nothing else  that suggested an agreement between the parties or order of the court as to the applicable choice of law rule governing direct-filed cases. Cook quotes language from this case stating that the MDL court "had issued [a direct-filing order enumerated as CMO 3 that] permitted potential plaintiffs to file actions in the Southern District of Ohio, whether or not jurisdiction or venue was otherwise proper." (Doc. 12172, p. 14).  Cook does not even claim that anything about choice of law was stated in this order.

12

In sum, this Court apparently relied upon a substantially skewed presentation of the governing cases. It is not at all true that the cases upon which plaintiffs rely all involved "a direct-filing order – agreed to by the parties after negotiation and approved by the MDL court – that governs the treatment of direct-filed cases as transferred cases." That was simply a misstatement of the controlling law. And since it was made in a reply brief, plaintiffs had no chance to respond.

To the contrary, none of these cases involved anything more than that which has existed in this case for years: an agreement that cases could be direct-filed, that said nothing about choice of law. The prevailing treatment of direct-filed cases as transferred cases, for choice of law purposes, simply does not require the order Cook insists upon. Thus, it was error to treat the direct-filed cases in their MDL as having originated here.

### C.   The Arbitrary Requirement of a Direct-Filing Order Undermines the Policies Justifying an MDL Proceeding and Finds No Support in 42 U.S.C. § 1407 or the JPML's Rules.

Congress authorized the consolidation of cases into a multi-district litigation proceeding to "promote the just and efficient conduct" of actions with common questions of fact. 28 U.S.C. § 1407. But defaulting to the MDL court's choice of law rule, for cases that would otherwise be filed elsewhere, promotes a manifestly *un*just proceeding for hundreds of plaintiffs in this MDL, by permitting different results for plaintiffs from the same state, depending solely upon whether they originally filed their case in this court or first filed elsewhere and were transferred in. Application of Indiana law as advocated by Cook would, in particular, prejudice plaintiffs from

jurisdictions in which their claims would be subject to longer limitations periods, more favorable rules providing for tolling or delayed accrual of the limitations period, and/or longer or less stringent statutes of repose.

Defaulting to the MDL court's choice-of-law rule for cases that would otherwise be filed elsewhere also promotes the *in*efficient conduct of tag-along cases, by requiring tag-along plaintiffs to file first in their originating courts, to protect their right to proceed under the rules of the jurisdiction in which they would otherwise file suit in the absence of an MDL proceeding. Filing elsewhere, in turn, not only burdens the docket of the originating jurisdiction, but also necessitates filing a notice of tag-along action with the Joint Panel on MultiDistrict Litigation, which must then enter a conditional transfer order. *See* JPML Rule 7.1. Upon completion of pre-trial proceedings, such cases cannot be transferred directly to the originating jurisdiction by the MDL court, but must be returned via the mechanism of a conditional remand order by the JPML, generally upon suggestion of the transferee court.  *See* JPML Rule 10.1.  This entire process wastes judicial resources and introduces unnecessary delay and expense for the parties (and in particular, the plaintiffs, who in other jurisdictions may not avail themselves of efficient procedures such as the use of short form complaints, when filing in other jurisdictions).

Cook's arbitrary requirement of a direct-filing order, moreover, finds no basis in the statues or rules governing multidistrict litigation (nor in the relevant conflict of law precedents in the Seventh Circuit, as discussed above).  Neither Title 28, Section 1407 of the United States Code nor the rules adopted by the Joint Panel on Multidistrict

Litigation require entry of a direct-filing order before tag-along cases may be filed in the district court appointed to supervise an MDL.  This is why the "better-reasoned authority…applies the choice-of-law rules of the originating jurisdiction…." *Sanchez v. Boston Scientific Corp.*, 2014 WL 202787, *4 (S.D. W.Va. Jan. 17, 2014).  Section 1407 simply authorizes the transfer of cases to an MDL court for consolidated pre-trial proceedings, *see* 28 U.S.C. § 1407(a), and further authorizes the JPML to "prescribe rules for its business not inconsistent with Acts of Congress and the Federal Rules of Civil Procedure."  28 U.S.C. § 1407(f).  The JPML, in adopting rules for MDL proceedings, opted not to require tag-along cases to first file in their originating district and then apply to the Panel for a transfer order, instead providing simply that "[p]otential tag-along actions filed in the transferee district do not require Panel action," as long as they file in compliance with the MDL court's local rules. *See* JPML Rule 7.2(a).  Such an approach yields obvious administrative efficiencies, as it permits tag-along cases to be filed in the court supervising the MDL without any bureaucratic handling by the JPML or the "originating" district court in which the action would otherwise be filed. A direct-filing order remains useful to clarify the administrative procedures for such filings, such as the proper manner of styling the cases and the availability of short-form complaints, but it does not give tag-along plaintiffs the ability to do anything not already authorized by JMPL Rule 7.2(a).

Adopting the MDL court's choice-of-law rule as the default rule for tag-along cases that have no connection to this jurisdiction apart from the existence of the MDL would improperly allow "the accident of bureaucratic convenience [to] elevate the law

of the MDL forum." *Wahl v. GE*, 786 F.3d 491, 496 (6th Cir. 2015).  Indeed, this approach impermissibly recognizes a *federal* choice-of-law rule, in place of the state choice-of-law rule that would apply in the absence of an MDL proceeding. *Cf. In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.*, 76 F. Supp. 3d at 303-04 (rejecting proposed choice of law rule for direct-filed cases as "tantamount to creating a federal choice of law rule privileging" one of the forums available to the plaintiff in the absence of an MDL over other forums otherwise available to the plaintiff).  In *Klaxon Co. v. Stentor Elec. Mfg. Co.*, the Supreme Court rejected a federal choice of law rule because it would "do violence to the principle of uniformity within a state"—precisely as the choice-of-law ruling here will do, if allowed to stand. 313 U.S. 487, 496, 61 S. Ct. 1020, 1021-22 (1941).

### D.    At a Minimum, the Court Should Modify its Ruling so that Cases Direct-Filed Between May 31, 2017 and Oct. 29, 2019 are Treated as if There had been an Explicit Direct-Filing Order in Place.

Plaintiffs respectfully request that even if the Court denies the relief requested above, it should modify its ruling such that cases filed between May 31, 2017 and Oct. 29, 2019 are treated as if there had been a direct-filing order in place. Cook does not dispute that on May 31, 2017, in its ruling in the Sales-Orr case, the Court referred to its previous "direct filing order" in the case. (Doc. 4918, p. 3). Thus, any plaintiff's counsel who contemplated filing a new case after that date, and had endeavored to familiarize herself with the existing orders in this MDL, would have been fully justified in believing that there was an explicit direct filing order in place. That conscientious plaintiffs' counsel would also have known that the prevailing rule in

16

this circuit is that such a case would have been governed by the choice-of-law rules of the plaintiff's designated originating jurisdiction.

Finally, of course, that counsel would have wished to minimize delays involved by filing in the originating jurisdiction and waiting for the inevitable tag-along process to ensue. Instead, that counsel would have chosen to maximize efficiency for all concerned—both the parties and the federal judicial system as a whole—by direct-filing the case in this Court. And that counsel surely should be entitled to rely on the Court's own words in its order of May 31, 2017.

It is manifestly unfair to treat cases filed in this interim as if the Court had not made the statements it made. And Cook can hardly complain, since it made the same statements. Cook is now at pains to call its own statements "inadvertent" or "mistaken." But even if those descriptions are true, Cook should not be allowed to benefit from its own "mistaken" assertions. To relegate a plaintiff to a dispositively different, shorter limitations period, because that plaintiff relied on the Court's and defendant's statements of record, is unfair in the extreme.

Plaintiffs do not contend that the Court had no power to reconsider its 2017 holding.  But "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages *in the same case.*" *Jarrard v. CDI Telecommunications, Inc.*, 408 F.3d 905, 911-12 (7th Cir. 2005), quoting *Christianson v. Colt Indus. Operating Corp.*, 496 U.S. 800, 815-16 (1988)(emphasis the Seventh Circuit's).  The law-of-the-case doctrine "is a rule of practice based on sound policy that, when an issue is once litigated and decided, that should be the end of the

17

matter." *Jarrard*, supra, 408 F.3d at 912, quoting *Evans v. City of Chicago*, 873 F.2d 1007, 1014 (7th Cir. 1989), in turn quoting *Barrett v. Baylor*, 457 F.2d 119, 123 (7th Cir. 1972).  If the Court reached a different conclusion about the choice-of-law rule for direct-filed cases in 2019, then certainly plaintiffs filing their cases after that ruling would be on notice and governed accordingly.  But between the Court's first ruling and its second ruling, surely plaintiffs should not be penalized for relying on the Court's first ruling.  See, e.g., *Colvin v. Keen*, 900 F.3d 62, 70 (2d Cir. 2018) ("As the Wright and Miller treatise observes, 'if a sound reason for reconsideration could be found, law-of-the-case concerns should require only that reliance on the first ruling be protected, not that reconsideration be prohibited.' " (quoting Charles Alan Wright and Arthur Miller, 18B *Fed. Prac. & Proc.* §4478. 1n. 10 (2d ed. 2018).

On Oct. 29, 2019, the Court stated that there had never been a direct filing order in the case. But for the cases filed prior to that statement, i.e. for cases filed by counsel in the justified belief that there *was* such an order in place, the Court should modify its ruling and treat such cases as if there was a direct-filing order in place just as the Court and Cook said there was.

## CONCLUSION

Wherefore, premises considered, plaintiffs respectfully pray that this Court grant reconsideration of its Oct. 29, 2019 ruling, and hold that cases that were or are direct-filed in this Court are governed by the choice-of-law rule of the "originating" jurisdiction.  Alternatively, plaintiffs respectfully ask that the Court modify its ruling so that tag-along cases filed between May 31, 2017 and October 29, 2019 that identify

other courts as the "District Court and Division in which venue would have been proper absent direct filing" are treated as if a direct-filing order had been entered at the time of their filing, and thus governed by the choice-of-law rule of that jurisdiction.

Respectfully submitted this 2nd day of January, 2020.

*/s/ Joseph N. Williams*
Joseph N. Williams, Atty. No. 25874-49
RILEY WILLIAMS & PIATT, LLC
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317) 633-5270
Facsimile: (317) 426-3348
Email: jwilliams@rwp-law.com
*Liaison Counsel to Plaintiffs' Steering Committee*

Charles S. Siegel
Texas Bar No. 18341875
WATERS, KRAUS, & PAUL, LLP
3141 Hood Street, Suite 700
Dallas, Texas 75219
Telephone: (214) 357-6244
Facsimile: (214) 357-7252
siegel@waterskraus.com

Michael W. Heaviside, Esq.
HEAVISIDE REED ZAIC, A LAW CORPORATION
910 17th Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 223-1993
mheaviside@hrzlaw.com

Ben C. Martin, Esq.
THE LAW OFFICES OF BEN C. MARTIN
3710 Rawlins Street, Suite 1230
Dallas, TX 75219
Telephone: (214) 761-6614
Facsimile: (214) 744-7590
bmartin@bencmartin.com

David P. Matthews, Esq.
MATTHEWS AND ASSOCIATES
2509 Sackett St.
Houston, TX 77098
Telephone: (713) 522-5250
Facsimile: (713) 535-7184
dmatthews@thematthewslawfirm.com

*Plaintiffs' Co-Lead Counsel*

## CERTIFICATE OF SERVICE

The undersigned counsel for Plaintiffs, hereby certifies that a true and correct copy of the foregoing document, was filed with the Court and served on all counsel of record this, the 2nd day of January, 2020, via the Case Management/Electronic Case Filing system (CM/ECF).

*/s/ Joseph N. Williams*
JOSEPH N. WILLIAMS