# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

|  |  |  |
|---|---|---|
| HIGH TECH NATIONAL, LLC<br>    d/b/a HIGH TECH LOCKSMITHS, et al., | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-02489-SEB-MJD |
| | ) | |
| JAY WIENER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON MOTION TO TRANSFER**

This matter is before the Court on Defendants' Joint Motion to Transfer Venue or, in the

Alternative, to Stay This Action [Dkt. 63].  For the reasons set forth below, the Court **GRANTS**

the motion.

## I.  ALLEGATIONS IN THE AMENDED COMPLAINT

The following facts are asserted in the First Amended Complaint [Dkt. 32].

Plaintiff High Tech National, LLC, d/b/a High Tech Locksmiths ("HTL") operates a

mobile automotive locksmith service; Plaintiff Automotive Key Controls, LLC ("AKC")

purchases keys and manages the key inventory for HTL.  "HTL specializes in scenarios in which

there is no key/remote for a vehicle or duplicate keys/remotes are needed" and "has the proper

hardware and software to generate a working key on location."  [*Id.* at 2.]

In 1992, Defendant Jay Wiener founded a company called High Tech Locksmiths in

Miami, Florida.  Wiener also founded a company called Automotive Key Controls, Inc.   In

2013, Wiener sold the assets of High Tech Locksmiths to a company which later became

Plaintiff HTL.  As part of the same deal, Automotive Key Controls, Inc., was sold to another

company; it later became Plaintiff AKC. Wiener served as president and CEO of both HTL and

AKC.

In conjunction with the sale of the two businesses, Wiener entered into an agreement

(hereinafter the "2013 Wiener Agreement") that included the following provisions:

> Employee agrees to keep secret, hold in confidence and not use or disclose,
> except in furtherance of the Company's Business, or authorize or allow anyone
> else to use or disclose, any trade secrets or Confidential Information that
> Employee acquires as a result of employment with Employer.
>
> ***
>
> Employee, therefore, agrees that while he is employed by Employer and for the
> twenty-four (24) month period thereafter, Employee will not, in any manner
> whatsoever and to the greatest extent set forth below:
>
> (1) Directly or indirectly engage in the same or similar Business anywhere in
> the United States, Mexico, or Canada (whether as partner, officer,
> shareholder, advisor, employee or otherwise) or own any interest in, invest
> in, lend to, manage, control, promote, participate in, consult with or
> become employed by, or render services to any other entity engaged in the
> Business anywhere in the United States, Mexico, or Canada. Employee
> shall be free to make investments in the publicly-traded securities of any
> such corporation, provided that such investments do not amount to more
> than five percent (5%) of the outstanding securities of any class of such
> corporation;
>
> (2) Directly or indirectly, on behalf of himself or any entity other than the
> Company (whether as owner, partner, consultant, employee or otherwise)
> accept business or provide or offer to provide any products or services that
> compete with those of the Company or Business for which Employee had
> direct or indirect responsibilities in the last one year of his employment
> with Employer;
>
> (3) Compete with the Company with respect to any product or service for
> which he had responsibility in any state (or comparable foreign political
> subdivision) in which Employee had responsibility in the last two years of
> his employment with Employer;
>
> (4) Directly or indirectly act in any capacity that is in competition with the
> Company's Business and in which disclosure or use of the Company's
> Confidential Information would facilitate or support the performance of

his duties;

(5) Directly or indirectly, on behalf of himself or any entity other than the Company (whether as owner, partner, consultant, employee or otherwise), accept business or provide or offer to provide any products or services offered by the Company to any Person or entity who was a Customer of the Company at the time Employee's employment with Employer ceases; and/or

(6) Directly or indirectly engage in the same Business on behalf of any Persons anywhere within 150 miles from the office(s) of Employer where he worked or provided services.

***

Employee agrees that while he is employed by Employer and for a period of twenty-four (24) months thereafter, Employee shall not directly or indirectly, individually or on behalf of any Person:

(1) accept business from, or solicit, aid or induce any Customer, lender or supplier of the Company with whom Employee had contact during the period of time Employee was employed with the Company, to discontinue the relationship or reduce the amount of business done with the Company, or otherwise interfere with the relationship between the Company and such Customer or Person;

(2) accept business from, or solicit, aid or induce any Customer or Person that was serviced by him or whose name became known to him by virtue of his employment with Employer, to discontinue the relationship or reduce the amount of business done with the Company or otherwise interfere with the relationship between the Company and such Customer or Person;

(3) accept business from, or solicit, aid or induce any Customer, lender or supplier of the Company with whom Employee worked with on behalf of the Company during the last twenty-four (24) months of his employment with the Company, to discontinue the relationship or reduce the amount of business done with the Company, or otherwise interfere with the relationship between the Company and such Customer or Person;

(4) accept business from, or solicit, aid or induce any Customer or Person that was serviced by him or whose name became known to him by virtue of his employment with Employer within the last twelve (12) months of his employment with the Company, to discontinue the relationship or reduce the amount of business done with the Company, or otherwise interfere with the relationship between the Company and such Customer or Person;

3

Case 1:14-ml-02570-RLY-TAB   Document 12617   Filed 01/05/20   Page 2 of 23 PageID #:
92584
Case 1:19-cv-02480-SEB-MJD   Document 1251   Filed 11/26/19   Page 4 of 22 PageID #: 960

(5) accept business from, or solicit, aid or induce any then-current Customer
or Person that was serviced by him, to discontinue the relationship or
reduce the amount of business done with the Company, or otherwise
interfere with the relationship between the Company and such Customer
or Person;

(6) accept business from, solicit, aid or induce any then-current Customer of
the Company that he serviced, to discontinue the relationship or reduce the
amount of business done with the Company;

(7) solicit, aid or induce any then-current employee of the Company to leave
the Company in order to accept employment with or render services for
any other Person; and

(8) Employ or attempt to employ any person then an employee of the
Company.

[Dkt. 32-1.]  In 2015, as a condition of participating in HTL's Long Term Incentive Program,

Wiener signed another non-competition agreement with HTL (the "2015 Wiener Agreement").

That agreement contained the following provisions;

Employee specifically acknowledges that any use of Confidential Information by
persons not employed by Company or who are not authorized by Company to use
the information provides such persons an unfair competitive advantage which
they would not have had without the use of Confidential Information.
                                        ***

Employee recognizes that Company's employees are a valuable resource of
Company. During employment with Company and for 18 months following its
termination (regardless of the reason for the termination), Employee will not,
either alone or in conjunction with any other person or entity, directly or
indirectly solicit, induce, recruit, aid or suggest to any Company employee to
leave the employ of Company, or terminate or violate any contractual or fiduciary
duty owing to Company.

                                        ***

During Employee's employment with Company, and for 12 months following its
termination (regardless of the reason for the termination), Employee will not,
either alone or in conjunction with any other person or entity, directly or
indirectly, have any ownership interest, perform the same job duties, advise, or

have any business relationship with any Competitive Business in any state or territory of the United States in which Company conducts business or Company is actively planning to conduct business (and Employee had access to Confidential Information regarding that planning). Employee acknowledges that Company markets and sells its services and products throughout North America and that it is reasonable to restrict Employee's activities in the foregoing areas during the time periods provided for in this Agreement.

[Dkt. 32-2.]

Defendants Rodisbel Alvarez, David Slinger, Kenneth Garbez, and Juan Moore were employed by HTL as the Director of Information Systems, the Director of Technical Systems, the Vice President of Operations, and a field manager, respectively.  Each of them also executed agreements with HTL that contained confidentiality and non-competition provisions.

Plaintiffs allege that, in 2018, once Wiener had been paid all of the money due to him for the sale of the two companies, and while he was still serving as president and CEO of HTL and AKC, Wiener began to "engage[] in deliberate acts to improperly compete with HTL and AKC and support competing businesses" and recruited Alvarez, Slinger, Garbez, and Moore to join him in these efforts.  One of the specific improper acts alleged by Plaintiffs involves Wiener arranging for HTL to lease five mobile locksmith vehicles equipped with HTL's proprietary equipment to Defendant Steelers Keys, LLC ("Steelers"), a company that allegedly was started by Moore and Wiener (hereinafter referred to as the "Steelers Lease").

Plaintiffs allege in their Amended Complaint that the Steelers Lease is invalid because "Steelers and Moore knew that Wiener lacked the authority to enter into such a lease and that any such lease would be a violation of Wiener's contractual and fiduciary obligations to HTL." [Dkt. 32 at 3.]  Plaintiffs further allege that Wiener has created another business in Miami, Florida, to compete with HTL and hired Alvarez, Singer, and Garbez to work for the new business, all in violation of the various Defendants' agreements with HTL.

5

In their Amended Complaint, Plaintiffs assert claims for (1) breach of contract (six counts), (2) breach of fiduciary duty and the duty of loyalty, (3) tortious interference (three counts), (4) conversion (four counts), (5) violation of the Lanham Act, 15 U.S.C. § 1125, (6) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA") (two counts), (7) violation of the Stored Communications Act, 18 U.S.C. § 2700, *et seq.*, and (8) conspiracy.

## II. PROCEDURAL BACKGROUND

The original complaint in this case was filed by Plaintiffs against Wiener only. On the same day as this suit was filed, June 20, 2019, HTL also filed suit against Steelers in the Southern District of Florida ("First Florida Action"). [*See* Dkt. 64-7 (First Florida Action Complaint).] In the First Florida Action Complaint, HTL alleged, *inter alia*, that the Steelers Lease was not a valid and enforceable agreement and that Steelers' use of the proprietary equipment in the leased vehicles without HTL's consent violated the Defend Trade Secrets Act, 18 U.S.C. § 1836, the CFAA, 18 U.S.C. § 1030, and the Florida Deceptive and Unfair Trade Practices Act, Fl. St. § 501.201, et seq., and constituted unfair competition under the Lanham Act, 15 U.S.C. § 1125. Alternatively, HTL alleged that if the Steelers Lease was found to be valid and enforceable, Steelers had breached it in various ways.

Steelers moved to dismiss the First Florida Action for failure to state a claim. On August 15, 2019, before HTL responded to that motion,[1] Plaintiffs filed their Amended Complaint in

---

[1] Defendants note in their brief that HTL obtained an extension of the deadline to respond to the motion to dismiss "based on an alleged '. . . previously planned business and personal travel for [HTL's] in-house and external counsel,' and external counsel's travel to an upcoming funeral." [Dkt. 64 at 4.] Defendants imply that, given the filing of the amended complaint in this case, counsel's representations in the First Florida Action regarding their travel must have been false. [*See* Dkt. 64 at 3 ("However, despite HTL's counsel's **professed unavailability**, HTL, along with its affiliate, AKC, then amended this Action and filed this FAC on August 15, 2019.").]

6

Case 1:14-mol-02550-RLY-TAB Document 126-1 Filed 01/05/20 Page 2 of 23 PageID #3
Case 1:19-cv-02450-SEB-MJD Document 103-1 Filed 12/20/19 Page 8 of 22 PageID #: 963
92587

this case, in which they added the additional Defendants, including Steelers. The following day, HTL voluntarily dismissed the First Florida Action.

On August 29, 2019, Steelers, Moore, Alvarez, Slinger, Garbez, and Randy Fieler, who worked as a field operations manager for HTL, sued HTL, AKC, and two related parent companies, ADESA, Inc., and Kar Auction Services, Inc., in the Southern District of Florida (hereinafter referred to as the "Steelers Action"). On September 17, 2019, Defendant Wiener filed suit in the Southern District of Florida (hereinafter referred to as the "Wiener Action") against the same defendants as well as David Vignes, who was Wiener's supervisor at HTL and AKC and whom Wiener alleges orchestrated his firing. The defendants in those cases seek declaratory judgment that they are not liable for any of the claims alleged against them in this case. Wiener also asserts a claim against Vignes for tortious interference with his contractual relationship with HTL; the remaining defendants assert various related claims against the defendants in their case. The defendants in those cases have moved to dismiss them or transfer them to this Court. ADESA, Inc., and Kar Auction Services, Inc., also move to dismiss on personal jurisdiction grounds.

---

(emphasis added). Defendants' suggestion is illogical, given the fact that HTL obtained an extension of the deadline in the First Florida Action from August 9, 2019, to August 16, 2019; the requested extension thus was based on HTL's counsel's unavailability prior to August 9th, not during the following week, which is when the Amended Complaint was filed. Defense counsel are admonished that unwarranted attacks on opposing counsel's character are inconsistent with the Standards for Professional Conduct within the Seventh Federal Judicial Circuit, which, pursuant to Local Rule 83-5(e), apply to all attorneys appearing before this court. *See* https://www.insd.uscourts.gov/sites/insd/files/Local%20Rules%209-16-19.pdf at 121 ("We will not, absent good cause, attribute bad motives or improper conduct to other counsel or bring the profession into disrepute by unfounded accusations of impropriety.").

### III.  APPLICABLE LAW

In the instant motion, Defendants argue that this case should be transferred to the

Southern District of Florida pursuant to 28 U.S.C. § 1404(a), which provides:

> For the convenience of parties and witnesses, in the interest of justice, a district
> court may transfer any civil action to any other district or division where it might
> have been brought . . . .

Section 1404 "allow[s] a district court to transfer an action filed in a proper, though not

necessarily convenient, venue to a more convenient district."  *Research Automation, Inc. v.*

*Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010).[2]

> In the typical case not involving a forum-selection clause, a district court
> considering a § 1404(a) motion (or a *forum non conveniens* motion) must evaluate
> both the convenience of the parties and various public-interest considerations.
> Ordinarily, the district court would weigh the relevant factors and decide whether,
> on balance, a transfer would serve "the convenience of parties and witnesses" and
> otherwise promote "the interest of justice."

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 62-63 (2013)

(quoting 28 U.S.C. § 1404(a)) (footnote omitted).  In that typical scenario,

> Factors relating to the parties' private interests include "relative ease of access to
> sources of proof; availability of compulsory process for attendance of unwilling,
> and the cost of obtaining attendance of willing, witnesses; possibility of view of
> premises, if view would be appropriate to the action; and all other practical
> problems that make trial of a case easy, expeditious and inexpensive." *Piper*
> *Aircraft Co. v. Reyno*, 454 U.S. 235, 241, n. 6, 102 S.Ct. 252, 70 L.Ed.2d 419
> (1981) (internal quotation marks omitted). Public-interest factors may include
> "the administrative difficulties flowing from court congestion; the local interest in
> having localized controversies decided at home; [and] the interest in having the
> trial of a diversity case in a forum that is at home with the law." *Ibid.* (internal
> quotation marks omitted).  The Court must also give some weight to the plaintiffs'

_____

[2] For purposes of resolving the instant motion, the Court assumes that venue in this district is
proper.  The Court recognizes that Defendants also have filed a motion to dismiss in which they
argue that this district is an improper venue.  That issue is not before the Court at this time.

choice of forum. See *Norwood v. Kirkpatrick,* 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955).

*Atlantic Marine*, 571 U.S. at 63 n. 6.  The language of § 1404(a)

> guides the court's evaluation of the particular circumstances of each case and is broad enough to allow the court to take into account all factors relevant to convenience and/or the interests of justice.  The statute permits a "flexible and individualized analysis" and affords district courts the opportunity to look beyond a narrow or rigid set of considerations in their determinations.

*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc*., 626 F.3d 973, 978 (7th Cir. 2010)

(quoting *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

This case, however, as discussed in detail below, involves various forum selection clauses that are applicable to some or all of the parties' claims.  With regard to those claims, a different analysis is required.

> The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum.  The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system.  For that reason, and because the overarching consideration under § 1404(a) is whether a transfer would promote the interest of justice, a valid forum-selection clause should be given controlling weight in all but the most exceptional cases.

*In re Mathias*, 867 F.3d 727, 731 (7th Cir. 2017), *cert. denied sub nom. Mathias v. U.S. Dist. Court for Cent. Dist. of Illinois*, 138 S. Ct. 756 (2018) (citing *Atlantic Marine*, 571 U.S. at 63)

(additional citations and internal quotation marks omitted).

> *Atlantic Marine* clarified that "[t]he presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways. First, the plaintiff's choice of forum merits no weight." Second, and relatedly, "a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." The Court explained that a contractual forum-selection clause is an

9

agreed-upon predispute allocation of the plaintiff's "venue privilege" and the parties' respective private interests.  Accordingly, to resolve a transfer motion in this context, "a district court may consider arguments about public-interest factors only."  And because public-interest factors will "rarely defeat" a transfer to the contractually chosen forum, "the practical result is that forum-selection clauses should control except in unusual cases."

*Id.* (quoting *Atlantic Marine*, 571 U.S. at 63, 64).  "Although it is 'conceivable in a particular case' that the district court 'would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause,' such cases will not be common."  *Atlantic Marine*, 571 U.S. at 64 (quoting *Stewart*, 487 U.S. at 31).

In this case, there are numerous forum selection clauses that are potentially relevant to the venue issue in this case.  The Court will examine each of them, in turn, below.

### A.  Wiener and Garbez

The 2015 Wiener Agreement and the agreement between Garbez[3] and HTL both contain the following provision:

> Any action regarding this Agreement or its enforcement or arising from Employee's employment with Company shall be subject to the exclusive jurisdiction of the federal or state courts of Hamilton County, Indiana.  Because of Employee's extensive contacts with Indiana related to employment with Company, employee specifically consents to the exclusive personal jurisdiction in the State or Federal courts of Hamilton County, Indiana and Employee expressly waives any objection based on inconvenient forum or any other objection to venue.

[Dkt. 32-2 at 6; Dkt. 32-5 at 6.]  Plaintiffs argue that this is a mandatory forum selection clause and thus the rule set forth in *Atlantic Marine* applies to the claims against Wiener and Garbez.

---

[3] The Court recognizes that Defendants argue that the forum selection clause in Garbez's agreement is inapplicable to this case because the restrictive covenants in that agreement expired in November 2018.  Because the resolution of that issue ultimately does not affect this ruling, the Court assumes for purposes of this motion that the Defendants are incorrect.

10

Case 1:14-cv-02570-SEB-MJD   Document 105   Filed 11/20/15   Page 11 of 22 PageID #: 1967

In their Reply, Defendants dispute that the provision is a mandatory forum selection clause, arguing:

> The 2015 Agreements state that the "[a]ny action regarding this Agreement . . . shall be subject to the ***exclusive jurisdiction*** of the federal or state courts of Hamilton County, Indiana." 2015 Agreements, pg. 6 (emphasis added). Accordingly, only ***jurisdiction*** is considered exclusive. This is material in the Seventh Circuit. "The law is clear—where venue is specified with mandatory or obligatory language, the clause will be enforced; where ***only jurisdiction*** is specified, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue exclusive." *Parker v. Hostetler*, 2008 WL 346007, at *3 (N.D. Ind. Feb. 6, 2008) (*citing Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992)). Under binding Seventh Circuit law, it is clear that the two 2015 Agreements mandatory ***jurisdiction*** selection clauses cannot be transformed into mandatory ***venue*** selection clauses, despite Plaintiffs' arguments to the contrary.

[Dkt. 84 at 6] (footnote omitted) (emphasis in original). This argument is simply incorrect. While in isolation the language of the quoted sentence appears to support Defendants' argument, in context it is clear that the distinction drawn by the cases cited by Defendants is not whether a clause speaks of jurisdiction or venue; the distinction is whether the clause is written in permissive or mandatory language.

In *Paper Express*, the clause at issue read:

> In all disputes arising out of the contractual relationship, the action shall be filed in the court which has jurisdiction for the principal place of business of the supplier . . . . The supplier also has the right to commence an action against the purchaser at the purchaser's principal place of business.

*Paper Express*, 972 F.2d at 755. The Seventh Circuit noted that "[t]he central issue is whether the clause is permissive or mandatory" and found that it was mandatory. The language from that case quoted by Defendants—"where only jurisdiction is specified, the clause will generally not be enforced unless there is some further language indicating the parties' intent to make venue

11

exclusive"—was meant to distinguish between clauses that stated only an agreement to submit to

the jurisdiction of a particular court, rather than stating that a particular jurisdiction was

mandatory.  That is clear from the cases distinguished by the court in *Paper Express*:

> Paper Express relies on several cases that have interpreted similar clauses as
> permissive.  In *All-Tech Industries, Inc. v. Freitag Elec., GmbH,* No. 87 C 10690,
> 1988 WL 84719, at *2, 1988 U.S. Dist. Lexis 8856, at *5 (N.D. Ill. Aug. 5, 1988),
> the court considered a clause that read "Place of jurisdiction is Bad Segeberg,
> F.R.G." and held it permissive, noting that the clause "does not state that West
> Germany is the exclusive jurisdiction for adjudicating disputes arising under the
> contract; it merely declares a consent to the venue and jurisdiction of a West
> German court if either party is sued there."  In *Pioneer Life Ins. Co. v. Anderson,*
> No. 88 C 20249, 1988 WL 143726, at *1, 1988 U.S. Dist. Lexis 15320, at *5
> (N.D. Ill. Dec. 21, 1988), the court held the clause "Winnebago County, Illinois
> shall be the place of jurisdiction for service and legal purposes" permissive,
> noting that "the clause does not state that Illinois is the 'exclusive' place to bring
> a suit under the contract."

972 F.2d at 756.[4]  The Seventh Circuit did not distinguish the clauses in those cases because they

spoke of jurisdiction, but rather because the language of the clauses did not convey an intent by

the parties that the jurisdiction in question was the only permissible place to bring suit.

---

[4] In addition, the Court notes that the court in *Paper Express* cited *Docksider, Ltd. v. Sea Tech.,
Ltd.*, 875 F.2d 762, 764 (9th Cir. 1989), for the language quoted by the Defendants.  That case
also makes it clear that the relevant question is whether the language used is mandatory, not
whether the clause in question speaks of "jurisdiction":

> When only jurisdiction is specified the clause will generally not be enforced
> without some further language indicating the parties' intent to make jurisdiction
> exclusive.  *See, e.g., Keaty v. Freeport Indonesia, Inc.,* 503 F.2d 955, 956 (5th
> Cir.1974) ("This agreement shall be construed and enforced according to the law
> of the State of New York and the parties submit to the jurisdiction of the courts of
> New York," held permissive and not a mandatory forum selection clause);
> *Manetti–Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509, 511 (9th Cir.1988)
> ("**For any controversy regarding interpretation or fulfillment of the present
> contract, the Court of Florence has sole jurisdiction," enforced**).

*Docksider*, 875 F.2d at 764 (emphasis added).

Defendants also cite to *Brilliant DPI, Inc. v. Konica Minolta Business Solutions U.S.A., Inc.*, 2019 WL 1376017, at *3 (E.D. Wis. Mar. 26, 2019), as supporting their argument that "[f]or the forum selection clause to be truly mandatory, such that *Atlantic Marine* applies and the private § 1404 factors are to be completely disregarded, ***both*** parties must mutually agree to exclusive jurisdiction ***and*** venue." [Dkt. 84 at 7 (emphasis in original).] *Brilliant DPI* involved the following contract clause:

> If the Lessor or its Assignee shall bring any judicial proceeding in relation to any matter arising under the Agreement, the Customer irrevocably agrees that any such matter may be adjudged or determined in any court or courts in the state of the Lessor or its Assignee's principal place of business, or in any court or courts in Customer's state of residence, or in any other court having jurisdiction over the Customer or assets of the Customer, all at the sole election of the Lessor. The Customer hereby irrevocably submits generally and unconditionally to the jurisdiction of any such court so elected by Lessor in rotation [sic] to such matters.

*Brilliant DPI, Inc.*, 2019 WL 1376017, at *2. The court found that clause to be a permissive forum selection clause; however, that holding was not based on the distinction between jurisdiction and venue, but rather on the fact that the language used in the clause was "permissive and [did] not empower CIT to oust jurisdiction in favor of New Jersey when, as here, Brilliant brings suit in another state." *Id.* at *3.

Here, the provisions at issue are clearly and unequivocally mandatory forum selection clauses, as they provide for "exclusive jurisdiction" in Indiana. As such, the analysis set forth in *Atlantic Marine* applies. Thus, with regard to the claims against Wiener and Garbez, transfer to Florida is appropriate only if there are public-interest factors that render this case one of the rare cases in which the mandatory forum selection clause should not be enforced. Those factors are discussed below.

13

Case 1:14-cv-02557-RLY-TAB   Document 126-17-5   Filed 01/05/20   Page 15 of 23 PageID #:
Case 1:14-cv-02480-SEB-MJD   Document 166   Filed 11/26/19   Page 14 of 22 PageID #: 70
92594

**B. Alvarez, Slinger, and Moore**

The employment contracts signed by Defendants Alvarez, Slinger, and Moore each

contained the following provision:

> Venue and Jurisdiction.  Employee agrees that any suit, action or proceeding
> relating in any way to this Agreement or Employee's employment or relationship
> with Employer, may be brought and enforced in a competent court in the State of
> Indiana.

[*See* Dkt. 32-3 at 9 (Alvarez agreement); Dkt. 32-4 at 9 (Slinger agreement); and Dkt. 32-7 at 9

(Moore Agreement).]  This provision does not mandate that suits be filed in Indiana; rather, it is

a permissive forum selection clause.  The parties (and the cases to which they cite) disagree with

regard to how a permissive forum selection clause affects the §1404(a) analysis.

Plaintiffs argue that "this Court should apply the *Atlantic Marine* framework to both

mandatory and permissive clauses."  [Dkt. 78 at 17.]  Only one of the cases cited by Plaintiffs in

support of this argument actually held that the rule set forth in *Atlantic Marine* applied without

regard to whether the applicable forum selection clause was permissive or mandatory.[5]  *See*

*United Am. Healthcare Corp. v. Backs*, 997 F. Supp. 2d 741, 750 (E.D. Mich. 2014)

("Defendants attempt to argue that the guidance provided by *Atlantic Marine* does not apply here

because this case involves a permissive forum selection clause whereas the forum selection

---

[5] Plaintiffs also cite *Enkema v. FTI Consulting, Inc.*, 2016 WL 951012 (M.D. Tenn. Mar. 14, 2016), *report and recommendation adopted*, 2016 WL 9711919 (M.D. Tenn. Apr. 6, 2016), which contains language that supports their argument.  *See Enkema*, 2016 WL 951012, at *3 (commenting that "the broad language of the *Atlantic Marine* Court does not indicate that there is any distinction in analysis between a mandatory clause and a permissive clause").  That language is dicta, however, because the court ultimately treated the clause in that case as mandatory.

clause at issue in *Atlantic Marine* was mandatory. . . . However, Defendants have cited no authority showing that this distinction is even relevant in this jurisdiction, nor any authority showing that such a distinction would change this Court's analysis of a section 1404 issue. Therefore, this Court finds that *Atlantic Marine* will inform this Court's analysis of Defendants' current motion."). Defendants, on the other hand, argue that the clauses "are permissive and should not be enforced" and that "the Court should allot little to no weight" to them. [Dkt. 64 at 33.]

Although each of the parties' approaches find some support in the relevant (but non-binding) case law,[6] the Court disagrees with both of them.[7] Rather, the Court determines that the

---

[6] Compare *BAE Sys. Tech. Sol. & Servs., Inc. v. Republic of Korea's Def. Acquisition Program Admin.*, 884 F.3d 463, 472 (4th Cir.), *as amended* (Mar. 27, 2018), *cert. denied sub nom. Republic of Korea's Def. Acquisition Program Admin. v. BAE Sys. Sol. & Servs., Inc.*, 139 S. Ct. 209 (2018) ("Because the clause here is permissive, the modified framework outlined in *Atlantic Marine* does not apply, there is no presumption in favor of enforceability, and we proceed with a traditional *forum non conveniens* analysis."), and *RELCO Locomotives, Inc. v. AllRail, Inc.*, 4 F.Supp.3d 1073, 1084-85, 2014 WL 1047153, at *8 (S. D. Iowa Mar. 5, 2014) (conducting traditional forum non conveniens analysis in the context of a permissive forum selection clause), with *Backs*, 997 F. Supp. 2d 741, 750 (quoted above), as well as dicta in *Radian Guar. Inc. v. Bolen*, 18 F. Supp. 3d 635, 650-51 (E.D. Pa. 2014) ("Without deciding that question, I agree generally with the Supreme Court that the existence of a forum selection clause of any kind significantly undercuts any argument that the preselected forum is inconvenient for the parties or their witnesses."); and *Enkema*, 2016 WL 951012 (quoted above).

[7] In their reply brief, Defendants inexplicably chastise Plaintiffs for citing to a previous opinion of the undersigned, *Badger Daylighting Corp. v. Palmer*, 2019 WL 2567710, at *2 (S.D. Ind. June 20, 2019), "with respect to the public factors, but neglect[ing] to mention this Court's prior view on mandatory versus permissive forum selection clauses." [Dkt. 84 at 13.] In fact, the Court took no view on that issue in *Badger*; rather, the Court simply acknowledged that "[a]lthough *Atlantic Marine* does not expressly make this distinction, the language 'when a plaintiff agrees by contract to bring suit *only* in a specified forum' has led courts to interpret *Atlantic Marine* to apply only to mandatory forum selection clauses." *Badger*, 2019 WL 2567710 at *2 (*quoted by Defendants in* [Dkt. 84 at 13]). The Court did not need to take a position on whether those courts were correct in *Badger*, because the forum selection clause in that case was mandatory, not permissive.

15

best approach is to treat the permissive forum selection clause as determinative of the first §

1404(a) factor—the convenience of the parties.   This approach has been taken by a variety of

courts both before and after *Atlantic Marine*.  *See, e.g., Hummingbird USA, Inc. v. Texas

Guaranteed Student Loan Corp.*, 2007 WL 163111, *3 (S.D. N.Y. 2007) ("A permissive forum

selection clause, such as the one at issue here, is determinative of the parties' convenience.");

*Perficient, Inc. v. Priore*, 2016 WL 866090, at *4 (E.D. Mo. Mar. 7, 2016) ("Applying the

statutory factors, the forum selection clause, even though permissive, is determinative in the

analysis of the first factor—the convenience of the parties—and weighs against transfer.") (citing

*Discovery Pier Land Holdings*, 2015 WL 1526005, at *4 (fact that parties contracted for the

acceptance of Missouri courts "must count")); *see also Worldwide Fin. LLP v. Kopko*, 2004 WL

771219, at *2 (S.D. Ind. Mar. 18, 2004) (holding, pre-*Atlantic Marine*, that "because plaintiff

consented to jurisdiction and venue in Illinois, it cannot complain that a transfer would be

inconvenient for it.") (citing *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293

(7th Cir.1989) ("a valid forum-selection clause may waive a party's right to assert his own

inconvenience as a reason to transfer a case")); *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp.

2d 49, 58 (S.D.N.Y. 2001) (holding, pre-*Atlantic Marine*, that "[b]ecause the parties agreed that

New York courts would have jurisdiction of disputes arising from the denial of claims under the

Policy, Defendants have no basis for challenging this forum on the basis that it is inconvenient to

the parties") (citing *Orix Credit All., Inc. v. Mid-S. Materials Corp.*, 816 F. Supp. 230 (S.D.N.Y.

1993) ("[A]lthough a permissive forum selection clause is entitled to less weight than a

mandatory one, the fact that both parties initially accepted the jurisdiction of the courts of New

York must count.  A forum selection clause is determinative of the convenience of the parties.")).

This approach respects the agreement of the parties that this district is an appropriate forum,

16

while also recognizing that the parties' agreement does not exclude the possibility that another forum might be more appropriate based on factors other than the convenience of the parties.

Applying that approach to the claims against Alvarez, Slinger, and Moore in this case, the Court finds that, in light of the applicable forum selection clauses, the convenience of the parties weighs squarely in favor of denying transfer. With regard to the convenience of the witnesses, this factor

> "is often viewed as the most important factor in the transfer balance," with the Court to consider not just the number of witnesses located in each forum but also the nature, quality, and importance of their testimony. [*Brandon Apparel Grp., Inc. v. Quitman Mfg. Co. Inc.*, 42 F. Supp. 2d 821, 834 (N.D. Ill. 1999)] (quoting *Rose v. Franchetti*, 713 F. Supp. 1203, 1214 (N.D. Ill. 1989)). The Court gives less weight to the convenience of party witnesses, whom the Court presumes would appear voluntarily at trial in either district. *See AL & PO Corp. v. Am. Healthcare Capital, Inc.*, No. 14 C 1905, 2015 WL 738694, at *4 (N.D. Ill. Feb 19, 2015) ("[T]he convenience of witnesses who are within a party's control, such as a party's employees, is far less important than the convenience of non-party witnesses."); *Bullard v. Burlington N. Santa Fe Ry. Co.*, No. 07 C 6883, 2008 WL 4104355, at *4 (N.D. Ill. Aug. 28, 2008) ("Courts are less concerned about the burden that appearing at trial might impose on witnesses who are either employees of parties or paid experts; it is presumed that such witnesses will appear voluntarily."). "In assessing this factor, courts focus on the nature and quality of the proposed testimony and its relevance to the case." *Kjaer Weis v. Kimsaprincess Inc.*, 296 F. Supp. 3d 926, 932 (N.D. Ill. 2017). Moreover, "the presence of third party witnesses outside the subpoena power of this court is a factor which weighs heavily in favor of transferring." *Id.* at 933 (internal quotation marks omitted).

*Yi v. Uber Techs., Inc.*, 2018 WL 5013568, at *3 (N.D. Ill. Oct. 15, 2018).

In this case, while the parties have identified potential witnesses in Indiana, Florida, and elsewhere, it appears that more of the non-party witnesses are located in Florida than Indiana. This factor weighs in favor of granting transfer. The same appears to be true of the location of relevant evidence; given that many of the alleged bad acts took place in Florida, and the fact that Plaintiffs maintain offices there, much of the relevant evidence will be located there. However,

17

there is no question that some relevant evidence is also in Indiana.  Overall, this factor weighs

somewhat in favor of granting transfer.  Thus, the private factors do not weigh strongly in favor

of either forum; as with Wiener and Garbez, the public factors, discussed below, will be

determinative.

## C.  Steelers

Unlike the other Defendants, Steelers is not subject to a forum selection clause that points

to Indiana.  To the contrary, Defendants argue that the forum selection clause that appears in the

Steelers Lease dictates that the claims against Steelers must be litigated in Florida.  That

provision reads as follows:

> General Provisions…This Lease and all actions arising out of or in connection
> with this Lease shall be governed by and construed in accordance with the laws of
> the State of Florida, without regard to the conflicts of law provisions of the State
> of Florida.  Each party agrees to the exclusive personal jurisdiction of Florida and
> that any actions instituted to interpret or enforce this Lease shall be in the County
> of Miami-Dade.

[Dkt. 26-10 at 7.]  This is clearly a mandatory forum selection clause.  Plaintiffs assert in their

brief that the "Alleged Lease and its forum selection clause are unenforceable," [Dkt. 78 at 9],

but they fail to develop this argument in any way and therefore have waived it.  *See Schaefer v.*

*Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and

undeveloped arguments are waived, as are arguments unsupported by legal authority.").

Plaintiffs also argue—correctly—that "Defendants cannot credibly advance any theory by which

the Alleged Lease covers all events and claims at issue in this case," [Dkt. 78 at 19], but

Plaintiffs do not argue that their claims against Steelers in this case are not covered by the forum

selection clause in the Steelers Lease.  Accordingly, with regard to those claims, transfer to

18

Florida is required unless there are public-interest factors that render this case one of the rare cases in which the mandatory forum selection clause should not be enforced.

### D.  Public-Interest Factors

The public-interest factors relevant to the § 1404(a) analysis include (1) "the court's familiarity with the applicable law," (2) "the speed at which the case will proceed to trial," and (3) "the desirability of resolving disputes in the region in which they arose."  *First Nat'l Bank v. El Camino Res., Ltd.,* 447 F. Supp. 2d 902, 912 (N.D. Ill. 2006).  The first factor is typically a non-issue, as "federal judges routinely apply the law of a State other than the State in which they sit." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 67 (2013).  To the extent that Indiana law applies to the claims in this case, the Court has every confidence that any judge in the Southern District of Florida will be fully capable of applying it, and *vice versa*. Accordingly, this factor is neutral.

The second factor looks to the efficiency with which the two courts are likely to resolve the matter.  This factor weighs in favor of transfer to the Southern District of Florida.  As of June 30, 2019, this district had the third highest caseload and second highest number of weighted filings per active judgeship in the nation.  This district's pending cases per judge numbered 1,922; the Southern District of Florida's was 374.  This district's weighted filings were 1,125, compared to the Southern District of Florida's 765.  It is no surprise, then, that in the twelve months preceding June 30, 2019, the Southern District of Florida disposed of all civil cases more quickly than the Southern District of Indiana:  3.7 months compared to 8.1 months respectively. Further, the average time from the filing of a civil case to trial during that time period in the

19

Southern District of Indiana was 35.3 months, whereas in the Southern District of Florida it was

18.3 months.[8]  This factor weighs solidly in favor of transfer.[9]

     The third factor looks to the relative interest of the two forums in the issues in the case.

By virtue of the fact that the **members** of Plaintiffs are corporations with their principle places of

business in Indiana, Plaintiffs are citizens of Indiana; however, Plaintiffs' headquarters are

located in Miami, Florida.  [*See* Dkt. 63-2 at 2.]  Defendants are—with one possible exception—

citizens of Florida.[10]  While some relevant events took place in Indiana—such as the use of one

of the vehicles at issue and the drafting of some of the agreements—there is no question that far

more of the events relevant to the claims in this case took place in Florida.  The individual

Defendants performed their work for HTL in Florida; they rarely, if ever, came to Indiana for

their work.  They continue to live and work in Florida; to the extent that they are working on

behalf of the allegedly competing businesses, they are doing so in Florida.  Thus, while both

---

[8] All of the statistics discussed in this paragraph can be found at
https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2019/06/30-1.
[9] Plaintiffs make the following argument:  "In this case, the parties have already held an initial
case management conference with the Court, a scheduling order has been entered, *some* initial
disclosures have been made, preliminary witness and exhibit lists have been filed, settlement
demands have been exchanged, the parties are in the middle of briefing Defendants' three
responsive pleadings, and HTL has served party and non-party discovery.  Transferring this case
to the U.S. Southern District of Florida now would only result in judicial waste and
inefficiency."  [Dkt. 78 at 21 (footnote omitted).]  It is unclear how this is so, as the work that
has been done in this case will not suddenly become useless if the case is transferred.  By the
same token, the Court notes that the scheduling order from the court in the Steelers Action that
Defendants recently filed as "supplemental authority," [Dkt. 97], cannot be interpreted as
implying anything about that court's view on the venue issue.  Federal Rule of Civil Procedure
16(b) requires the prompt entry of a scheduling order, and courts generally are loath to delay a
case's progress while venue motions are briefed and considered, given the fact that the work done
by the parties in one court is transferable along with the case if the motion ultimately is
granted.
[10] The parties dispute whether Defendant Moore is a citizen of Indiana or Texas.  The Court need
not resolve that issue, as Moore's citizenship does not affect the Court's analysis.

20

Indiana and Florida have a relationship with the claims in this case, the Court finds that Florida's interest is significantly stronger. This weighs in favor of transfer.

As a whole, then, the basic public-interest factors weigh in favor of transfer, but not in an exceptional manner. That means that if the Court were examining the claims against the various Defendants in a vacuum, the claims of Wiener and Garbez would remain in this district and the claims against the four remaining Defendants would be transferred to Florida. No one suggests that the Court should sever the claims in this manner, and the Court finds that doing so would not be appropriate. [*See* Dkt. 78 at 18 (Plaintiffs arguing that "[u]nder Federal Rule of Civil Procedure 19, Alvarez, Slinger, Moore, and Steelers must be joined because they are co-conspirators with Wiener and Moore and are subject to many of the same counts.").]

The Court finds that the existence of this split between proper venues for the various claims in this case, especially given the existence of mandatory forum selection clauses that dictate opposite results, constitutes the type of exceptional circumstance contemplated by *Atlantic Marine*. There is simply no way to enforce both of the mandatory forum selection clauses that apply to the claims in this case. The question, then, is whether this court or the Southern District of Florida is the more appropriate venue. Given all of the factors discussed above, the Court determines that it is the latter. This case largely involves events that occurred in the Southern District of Florida and actions taken by residents of that district. Even the two parties that are Indiana citizens—HTL and AKC—have headquarters in the Southern District of Florida, which gives that district an interest in adjudicating claims involving them. It simply makes more sense for all involved, including the public, for the claims in this case to be resolved in the Southern District of Florida.

## IV. CONCLUSION

For the reasons set forth above, the motion to transfer [Dkt. 63] is **GRANTED**.  The

Clerk is directed to transfer this case to the Southern District of Florida; however, the Clerk is

ordered to delay that transfer for fifteen days from the date of this order.

SO ORDERED.

Dated:  26 NOV 2019

_____

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.