**IN THE UNITED STATE DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| IN RE: COOK MEDICAL, INC. IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS  LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB MDL No. 2570 |

This Document Relates to the Following:
*Michael Parker*
Case No. 1:15-cv-00597-RLY-TAB

**PLAINTIFF MICHAEL PARKER'S MEMORANDUM IN SUPPORT OF
MOTION TO TRANSFER VENUE UNDER SECTION 28 U.S.C. 1404(a)**

Pursuant to 28 U.S.C. § 1404(a), Plaintiff Michael Parker files this Memorandum in support of his Motion to Transfer to the United States District Court for the Eastern District of Missouri for case-specific pretrial proceedings and jury trial.  As specified in paragraph 7 of Plaintiff's Short Form Complaint,[1] the Eastern District of Missouri is the venue where Mr. Parker would have filed this Complaint but for the specially created opportunity to conduct streamlined pretrial proceedings in the MDL.  In support thereof, Plaintiff respectfully shows as follows:

**I.
INTRODUCTION AND BACKGROUND**

The purpose of this Multidistrict Litigation ("MDL") was to conserve judicial resources and streamline discovery in conducting all pretrial proceedings for more than 5,000 Plaintiffs in the Cook IVC Filter litigation.  As part of the MDL's streamlined pretrial process, the Cook Defendants and the Plaintiffs' Steering Committee drafted together a Short Form Complaint, which was approved by the Court.  Among other things, the Short Form Complaint contained a specific requirement for each plaintiff to list the "District Court and Division in which venue would

---

[1] Plaintiff's Short Form Complaint is attached hereto as Exhibit A.

be proper absent direct filing." The Cook Defendants knowingly and voluntarily agreed to the venue language in the Short Form Complaint.[2]

The venue provision encouraged individual plaintiffs to direct file their cases into the MDL, thereby eliminating the inefficient and unnecessary intermediate step of filing a complaint in the home forum only to have the case transferred into the MDL for pre-trial proceedings. The Cook Defendants knew that the purpose of the venue provision was to allow each Plaintiff to obtain transfer of their case to the forum of their choosing at the conclusion of pretrial proceedings for trial—in essence, the exact same procedure used under 28 U.S.C. § 1407 and *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26 (1998) for cases not directly filed. The purpose was not to create a "gotcha" moment whereby a plaintiff would be encouraged to direct file a case to assist in the pretrial process, only to be stripped later of the right to choose their preferred forum for jury trial. Given the Cook Defendants' prime role in drafting and ratifying the Short Form Complaint—and given the Cook Defendants role in encouraging Plaintiffs to direct file their cases in the MDL—the interest of justice, public interest factors, and fundamental fairness overwhelmingly weigh in favor of transfer for jury trial under Section 1404(a).

In this specific instance, Plaintiff Michael Parker accepted the Cook Defendants' invitation to bypass the unnecessary, bureaucratic intermediate step. He, therefore, direct filed his case in this MDL Court via the agreed language in the Short Form Complaint. Mr. Parker named the Eastern District of Missouri as the "District Court and Division in which venue would be proper absent direct filing," because the Eastern District of Missouri is where Mr. Parker suffered injuries caused by the Cook Defendants' Celect IVC filter. Missouri is where Mr. Parker resided at the time of his surgery and where he still resides today. Missouri is where Mr. Parker's Celect IVC

---

[2] The form of the Short Form Complaint was determined by agreement of the parties, as denoted by MDL Doc. 318 (Notice of Agreement re: SFC).

filter implantation occurred, where most of his treating physicians reside and practice, and where his cause of action accrued.  Simply put, it is no secret that the Eastern District of Missouri has always been Mr. Parker's choice of forum for trial.  Moreover, absent the MDL direct filing process, Missouri is where Plaintiff would have filed his complaint, not in the Southern District of Indiana.  Thus, the private factors also overwhelmingly favor honoring Mr. Parker's choice of the Eastern District of Missouri as the forum for his trial.  *See In re National Presto Indus., Inc.,* 347 F.3d 662, 664 (7th Cir. 2003) (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839 (1947)) ("unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed").

Additionally, the time is ripe for the Court to transfer Mr. Parker's case to the Eastern District of Missouri for trial because all pretrial proceedings in this MDL have ended.  Throughout the past five years, the Court has diligently presided over voluminous discovery, heard numerous *Daubert* motions, and ruled on Cook's Motion for Summary Judgment on preemption.  Most importantly, the Court has gone beyond conducting MDL pretrial proceedings by presiding over two Celect IVC filter jury trials.  In a June 17, 2019 Order, the Court ruled that it was not ready to transfer cases involving the Tulip filter, because it had not yet conducted any bellwether trials concerning that specific device.[3]  Mr. Parker's case, however, involves the Celect IVC filter.  Because the Court has dutifully completed all pretrial proceedings and conducted two jury trials concerning the Celect IVC filter, there is nothing left for the MDL Court to do with respect to Mr. Parker's case—other than transfer to the Eastern District of Missouri for jury trial.

---

[3] *See* "Order on Motion to Transfer Venue," Case 1:18-cv-00807-RLY-TAB, Document 12, Filed 6/17/19 ("The court finds these cases are not ready for transfer.  Only two bellwether cases have gone to trial, and they both involved the Celect filter, not the Tulip.").

Critically, Cook has conceded that all pretrial proceedings have ended.  Starting in 2016, Cook has told this Court repeatedly that MDL discovery is over—in motions, briefs, letters, and hearings.  In the fall of 2016, Cook was so anxious for Plaintiffs to cease discovery that it insisted during a status conference that discovery was over, bringing forth the requirement from this Court that Plaintiffs send to Cook a letter with everything Plaintiffs still needed.[4]  Plaintiffs complied and sent the attached letter dated November 24, 2016.[5]

At a May 2, 2018 hearing before the Court, Cook again unambiguously stated that discovery is closed.

> Ms. Pierson:  "[T]here was a long list of grievances that Mr. Martin had with Cook about things that Cook had not produced, and you told the plaintiffs essentially: Send them a list of what your grievances are and Cook, you take care of that list. We did.  That was back in 2016 and early 2017.
>
> It's our position from that point on that discovery was closed, and we had this issue come up in the *Hill* case and made the argument then company discovery is closed. We produced millions of pages of documents.  We spent so much time and money letting the plaintiffs discover everything they wanted to discover about these products, but we ought not be responding to new things.  The issue in that motion is again, we're asking Your Honor to make clear company discovery was closed a long time ago.  We're not going back and redoing that.  But the parties have fully briefed the issue and we stand on our papers and are prepared for you to rule whenever you are prepared to rule.[6]

Thus, it is undisputed that all common fact and expert discovery has ended and that all pretrial proceedings are closed.

Finally, despite tremendous time and effort expended by the Court, at the pace that trials are progressing in the MDL, thousands of deserving Plaintiffs, including Mr. Parker, will never get their day in Court.  That is not the point of an MDL.  As discussed *infra*, the jury trial docket

---

[4] Defendants asserted that discovery was complete as early as November 10, 2016, nearly three years ago.  MDL Doc. 6857 at 16 – 24 & 39-40  (transcript of status conference).
[5] Exhibit B, Letter to Douglas King, Esq. dated November 24, 2016.
[6] Exhibit C. May 2, 2018 Hearing Transcript at 37:8-25; 38:1-2.

in Mr. Parker's chosen venue of the Eastern District of Missouri is much smaller and quicker than the jury trial docket in the Southern District of Indiana.  Because all pretrial proceedings have ended and because it will be faster for Mr. Parker to get to trial in the venue of his choosing, it is time for the Court to transfer his case to the venue pleaded in his Short Form Complaint, the Eastern District of Missouri.

## II.
## SUMMARY OF ARGUMENT

- MDL Courts routinely transfer cases to the Plaintiff's home forum once pretrial proceedings have concluded.  All pretrial proceedings in this MDL are over.  Therefore, the Court should transfer Mr. Parker's case to the Eastern District of Missouri under Section 1404(a).

- Mr. Parker's case involves allegations against the Cook Defendants arising out of the placement of Cook's Celect IVC Filter.  Two bellwether cases have already been tried in this MDL concerning the Celect IVC filter, providing clear guidance for the resolution of Mr. Parker's claims in her chosen forum.  In a June 17, 2019 Order, the Court indicated that it was not ready to transfer cases involving the Tulip filter, implying that it *was* ready to grant 1404(a) transfers of cases involving the Celect IVC filter.  Mr. Parker's case is ripe for transfer because his case involves the Celect IVC filter.

- The private interest factors favor transfer of Mr. Parker's case to the Eastern District of Missouri. The Eastern District of Missouri is the site of all material events, and the location of key witnesses and the sources of proof.  Mr. Parker lived in Missouri before, during, and after his injuries.  His treatment, surgeries, and injuries happened in the Missouri.  His treating physicians and nurses, as well as his medical records are located there.  The Eastern District of Missouri is also Mr. Parker's choice of forum as set forth in his Short Form Complaint.

- Public interest factors also favor transfer of Mr. Parker's case to the Eastern District of Missouri.  Based on binding Seventh Circuit precedent, Missouri choice of law principles and substantive law will apply to Mr. Parker's trial.  Additionally, it takes months less time to get to trial in the Eastern District of Missouri than in the Southern District of Indiana, and the Eastern District of Missouri has fewer than a third of the pending cases, thereby shifting the public interest factors in favor of transfer.

- The interest of justice favors transfer because Mr. Parker listed the Eastern District of Missouri as his choice of forum in the Short Form Complaint.  It is undisputed that the Cook Defendants agreed to language in the Short Form Complaint whereby Mr. Parker (and all other Plaintiffs) would list their choice of forum.  Absent the direct filing order and the language in the Short Form Complaint whereby Mr. Parker could choose the Eastern District of Missouri as his

venue, Mr. Parker never would have filed in the Southern District of Indiana. It strains credulity to think that Mr. Parker should be penalized for skipping an intermediate venue shuffle and conserving judicial resources by having his choice of venue denied. In the interest of justice, the Court should transfer Mr. Parker's case to the Eastern District of Missouri.

### III.
### ARGUMENT AND AUTHORITIES

**A.    MDL Courts Routinely Transfer Cases Under Section 1404(a) at the Conclusion of Pretrial Proceedings.**

MDL courts transfer cases under Section 1404(a) once common fact and expert discovery have been completed, *Daubert* motions have been resolved, and non-case-specific dispositive motions have been ruled upon. *See generally, In re Biomet M2a Magnum Hip Implant Prods. Liab. Litig.,* No. 3:12-MD-2391, 2018 WL 7683307, 2018 U.S. Dist. LEXIS 226693, at *3 (N.D. Ind. Sept 6, 2018) (transferring cases under § 1404(a) where they would "no longer benefit from centralized proceedings[] and the remaining case-specific issues are best left to decision by the courts that will try the cases."); *In re Bard IVC Filters Prods Liab. Litig.,* MDL 15-02641-PHX-DGC, Doc. 20672, at *2 (D. Ariz. October 17, 2019) (transferring additional cases under Section 1404(a) to the district courts identified in plaintiffs' short form complaints); *In re Bard IVC Filters Prods Liab. Litig.,* MDL 15-02641-PHX-DGC, 2018 U.S. Dist. LEXIS 152606 (D. Ariz. Sept. 7, 2018) (Bard IVC filter MDL court held cases mature and appropriate to remand to transferee court once common fact and expert discovery were completed, *Daubert* motions for non-case specific experts were resolved, and motion for summary judgment on preemption was decided); *In re Incretin Mimetics Products Liability Litigation,* 2013 WL 12171761, 2013 U.S. Dist. LEXIS 195727, at *390 (S.D. Cal. Nov. 13, 2013) ("Upon the completion of all pretrial proceedings applicable to a case directly filed in the MDL Proceedings, and subject to any agreement that may be reached concerning a waiver of the requirements for transfer pursuant to *Lexecon Inc. v. Milberg Weiss*, 523 U.S. 26, 118 S. Ct. 956, 140 L. Ed. 2d 62 (1998), this Court will transfer such cases to

a federal district court of proper venue as defined by 28 U.S.C. § 1391.”); *In re American Medical Systems., Inc., Pelvic Repair Systems Products Liability Litigation,* MDL 2325, Document No. 244 at *3 (S.D. W.Va. August 22, 2012) (“The direct filing of actions in MDL No. 2325 in the Southern District of West Virginia is solely for the purposes of consolidated discovery and related pretrial proceedings as provided by 28 U.S.C. § 1407. … At the conclusion of all pretrial proceedings, the court, pursuant to 28 U.S.C. § 1404(a), will transfer each case filed directly in the Southern District to a federal district court of proper venue as defined by 28 U.S.C. § 1391[.]”).[7]

All common fact and expert discovery in this Multidistrict Litigation have been completed, and this Court has ruled on *Daubert* motions related to non-case-specific experts and on Defendants’ summary judgment motion on preemption. *See, e.g.,* MDL Doc. 6541 (Entry for Sept. 25, 2017 wherein*, inter alia*, motion for summary judgment on preemption was denied); MDL Doc. 6910 (Entry on the Cook Defendants’ Motion to Exclude Expert Opinions of Dr. Robert McMeeking). Mr. Parker will no longer benefit from centralized proceedings, and the rationale for participation in the MDL no longer exists**.** Moreover, the Court has gone well above and beyond pretrial proceedings by conducting two bellwether jury trials on cases involving the Celect IVC filter. Mr. Parker’s Celect case is mature, and a transfer to the Eastern District of Missouri— the venue listed in his Short Form Complaint—for case-specific pretrial issues and trial is appropriate at this time.

**B.**    **Mr. Parker’s Case is Ripe for Transfer Because the Court has Already Conducted Two Bellwether Trials Concerning Cook’s Celect IVC Filter.**

In addition to conducting MDL pretrial proceedings, the Court has presided over two Celect IVC filter jury trials. In a June 17, 2019 Order, the Court ruled that it was not yet ready to transfer cases involving the ***Tulip*** filter, because it had not conducted any bellwether trials

---

[7] For the Court’s convenience, MDL 12-02325, Document No. 244 is attached to this Memorandum as Exhibit D.

concerning that specific device.[8]  Mr. Parker's case, however, involves the <u>Celect</u> IVC filter; his case *is* ready for transfer.

Mr. Parker no longer benefits from the centralized proceedings of the MDL.  The longer his case languishes in the MDL, the more witnesses' memories fade and the more evidence becomes stale.  The two Celect IVC filter jury trials already conducted by the MDL Court provide clear guidance for the disposition of Mr. Parker's claims in his chosen forum of the Eastern District of Missouri.  Because the Court has dutifully completed all pretrial proceedings and conducted two jury trials concerning the Celect IVC filter, the only remaining task for the MDL Court to do with respect to Mr. Parker's case is order its transfer to the Eastern District of Missouri for jury trial.

**C.     The Court Should Transfer Mr. Parker's Case Because the Private Interest Factors, Public Interest Factors, and Interest of Justice All Favor Transfer to the Eastern District of Missouri.**

Under 28 U.S.C. § 1404(a), the Court may "[f]or the convenience of parties and witnesses, in the interest of justice … transfer any civil action to any other district or division where it might have been brought."  Transfer of venue is appropriate under § 1404(a) when the moving party establishes that (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the convenience of the parties and witnesses, as well as the interest of justice. *Commissioning Agents, Inc. v. Long*, 187 F. Supp. 3d 980, 985 (S.D. Ind. 2016).

A district court considering a Section 1404(a) motion (or a *forum non conveniens* motion) must evaluate both the convenience of the parties and witnesses and the interests of justice,

---

[8] *See* "Order on Motion to Transfer Venue," Case 1:18-cv-00807-RLY-TAB, Document 12, Filed 6/17/19 ("The court finds these cases are not ready for transfer.  Only two bellwether cases have gone to trial, and they both involved the Celect filter, not the Tulip.").

including various public-interest considerations. *Mueller v. Apple Leisure Corp*., 880 F.3d 890, 894 (11th Cir. 2018) (quoting *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 62 (2013)); *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc*., 626 F.3d 973, 978 (7th Cir. 2010).  The district court *must* give substantial weight to the plaintiff's choice of forum. *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 62 n.6 (2013); *Baker v. Smith & Wesson Corp.*, No. 18-cv-03847, 2019 U.S. Dist. LEXIS 10300, at *6 (N.D. Ill. Jan. 22, 2019*)* ("A plaintiff's choice of forum is also given substantial weight, particularly when it is his home forum.").  It is black letter law that a plaintiff is entitled to their choice of forum.  *See In re National Presto Indus., Inc.,* 347 F.3d at 664.

1.     **Jurisdiction and Venue are Proper in the Eastern District of Missouri.**

Jurisdiction and venue are proper in the Eastern District of Missouri.  The Cook Defendants are subject to personal jurisdiction in Missouri under the state's long-arm statute, Mo. Rev. Stat. § 506.500, by virtue of doing substantial and continuous business in Missouri.  Moreover, the Cook Defendants marketed and sold in Missouri the Celect IVC filter that caused Plaintiff's injuries.

Venue is proper in the Eastern District of Missouri, because that is the place where a substantial part of the events or omissions giving rise to Plaintiff's claims occurred. 28 U.S. § 1391(b)(2).  Mr. Parker underwent all of his treatment and suffered all of his injuries in the Eastern District of Missouri.

2.     **Private Factors Favor Transfer to the Eastern District of Missouri.**

In assessing convenience, the Court must look to: (1) Plaintiff's choice of forum; (2) the situs of material events; (3) relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience of the parties. *CMG Worldwide, Inc. v. Bradford Licensing*

*Assocs.*, No. 1:05-cv-0423-DFH-TAB, 2006 U.S. Dist. LEXIS 98674, at *10–11 (S.D. Ind. Mar. 23, 2006).

### a. *Plaintiff's choice of forum*

As previously discussed, a plaintiff is entitled to their choice of forum. *See In re National Presto Indus., Inc.,* 347 F.3d at 664. Longstanding precedent mandates that the Court ***must*** give substantial weight to Mr. Parker's venue choice. *Atl. Marine Constr. Co. v. United States Dist. Court*, 571 U.S. 49, 62 n.6 (2013); *Baker*, 2019 U.S. Dist. LEXIS 10300, at *6.[9]

Mr. Parker's choice of forum is the Eastern District of Missouri, not the Southern District of Indiana. Mr. Parker clearly and unambiguously stated in his Short Form Complaint that the Eastern District of Missouri is his venue choice. Based on the Supreme Court's *Gulf Oil* decision and its progeny, the Court should honor Mr. Parker's choice of venue and transfer this case to the Eastern District of Missouri.

### b. *Situs of material events*

It is undisputed that Mr. Parker suffered all of her injuries from the Cook Celect IVC filter in the Eastern District of Missouri. Cook's Celect IVC filter was implanted in Mr. Parker in the Eastern District of Missouri. Cook's Celect IVC filter then fractured and perforated Plaintiff's spine in the Eastern District of Missouri. Moreover, Mr. Parker lived in Missouri before, during, and after he suffered injuries due to Cook's Celect IVC filter. To the extent that a sales representative of the Cook Defendants marketed and/or sold the filter to any of Plaintiff's healthcare providers, this would have taken place in Missouri as well. For all of these reasons, the

---

[9] The fact that Mr. Parker is not a resident of Indiana does not change the legal analysis. He is still entitled to his choice of forum. *See Lancer Ins. Co. v. Landers Explosives, Inc.*, No. 3:07-cv-00117-RLY-WGH, 2019 U.S. Dist. LEXIS 61998, at *20–23 (S.D. Ind. July 24, 2008) (Plaintiff was a non-resident while two of the defendants were located in Indiana. The District Court for the Southern District of Indiana, nevertheless, granted a transfer to Kentucky because other factors weighed in favor of Kentucky as the most convenient forum.).

"situs of material events" factor weighs heavily in favor of transfer to the Eastern District of Missouri.

### c. *Relative ease of access to sources of proof*

Access to sources of proof is a relative non-factor in the transfer analysis, given that this is a personal injury suit not related to a particular piece of property. Nevertheless, hospital and treatment records relating to Plaintiff's injuries and treatment are located in Missouri, thereby favoring Mr. Parker's choice of forum. While documents relating to the design and manufacture of the Celect IVC filter are in the possession of the Cook Defendants, such documents should have been produced previously in the MDL. In any event, documents and tangible things in possession of the Cook Defendants should be available for discovery regardless of the forum. This factor weighs in favor of transfer.

### d. *Convenience of witnesses*

The convenience of the witnesses is the most important factor in the transfer analysis. *Omnisource Corp. v. Sims Bros., Inc.*, No. 1:08-CV-89, 2008 U.S. Dist. LEXIS 53993, at *10 (N.D. Ind. Mar. 20, 2007). Little weight is given to the location of witnesses controlled by the Cook Defendants, such as employees, because they are likely to appear voluntarily in either forum. *Id.* at *19–20. The paramount concern is the location of non-party witnesses and their availability for trial. *Distance Learning Sys. Ind., Inc. v. A & D Nursing Inst., Inc.*, No. 1:04-cv-0159-DFH-WTL, 2005 U.S. Dist. LEXIS 5838, at *15 (S.D. Ind. Mar. 22, 2005). "[T]he need to have non-party witnesses available for trial so that it is not conducted primarily by reading deposition transcripts weighs heavily in favor of employing a transfer pursuant to 28 U.S.C. § 1404." *Id.*

Missouri is plainly the most convenient forum for the non-party witnesses in this case. At all relevant times, Mr. Parker resided in Missouri with his wife, who may offer testimony regarding

his symptoms caused by the filter's fracture.  The doctors involved with the placement of Plaintiff's IVC filter (Richard C. Pennell, MD) and the identification of the filter's fracture and perforation and failed attempt to remove it (Vito A. Mantese, MD), along with Plaintiff's primary care physician, (Daniel Jasper, MD) and urologist (Cathy Naughton, MD), are all located in Missouri. Plaintiff anticipates that other fact witnesses, such as the sales representative who sold Dr. Pennell on the effectiveness of the Celect filter, will be found in Missouri as well.  These witnesses are outside of the subpoena power of the MDL Court, and as such, this factor weighs heavily in favor of transferring the case to Missouri. *See Household Fin. Servs., Inc. v. Prestige Fin. Servs. Corp.*, No. 99 C 1756, 1999 U.S. Dist. LEXIS 12295, at *2 (N.D. Ill. Aug. 6, 1999) (finding the "inability to compel the attendance of material non-party witnesses to be a ***crucial factor*** militating in favor of transfer") (emphasis added).

### e.  *Convenience of the parties*

Missouri is the most convenient forum for Plaintiff, as it is his state of residence.  Likewise, Indiana is the most convenient forum for the Cook Defendants.  While this factor does not appear to tilt one in one direction, case law teaches that the Plaintiff is entitled to his choice of forum. Therefore, this factor favors transfer of Mr. Parker's case to the Eastern District of Missouri.

### 3.  Interest of Justice and Public Factors.

When considering whether a transfer is in the "interest of justice," courts in the Seventh Circuit consider a number of public factors. *Banks v. Cent. Refrigerated Servs.*, No. 2:15-CV-105-JVB-JEM, 2016 U.S. Dist. LEXIS 58534, at *11 (N.D. Ind. Apr. 29, 2016); *Hall v. Miller's Health Sys.*, No. 2:12-CV-151-RL-PRC, 2012 U.S. Dist. LEXIS 147613, at *12 (N.D. Ind. July 12, 2012).  These include: the transferee forum's familiarity with the governing law, the relative docket congestion, and the relationship of each community to the controversy. *Banks*, 2016 U.S.

Dist. LEXIS 58534, at *11; *CMG Worldwide*, 2005 U.S. Dist. LEXIS 33816, at *14.  Less than a month ago, Magistrate Judge Dinsmore of the Southern District of Indiana ordered the transfer of a Florida case, reasoning that the public-interest factors relevant to § 1404(a) favor resolving disputes "in the region in which they arose." *See* Order on Motion to Transfer, *High Tech National, LLC d/b/a High Tech Locksmiths, et al. v. Jay Wiener, et al.*, Case No. 1:19-cv-02489-SEB-MJD, p. 19 (S.D. Ind. Nov. 26, 2019) (quoting *First Nat'l Bank v. El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 912 (N.D. Ill. 2006)).[10]

Interest of justice considerations include the necessity to apply state law, the conservation of judicial resources, and the likelihood of an earlier trial. *CMG Worldwide*, 2005 U.S. Dist. LEXIS 33816, at *14.

### a. *Missouri law will apply to this case.*

This factor favors transfer because Missouri choice of law principles, and Missouri substantive law will apply to Mr. Parker's case.  In fact, Missouri law would apply to Mr. Parker's case even if the MDL Court tried this case in Indiana.  In the Seventh Circuit, it is black letter law that for choice of law analysis, "[F]oreign cases filed directly in a district court as part of an ongoing multidistrict litigation are treated as having originated ***outside*** of that district."  *Dobbs v. DePuy Orthopedics, Inc.,* 842 F.3d 1045, 1048 (7th Cir. 2016) (emphasis added); *see also In re Watson Fentanyl Patch Prods. Liab. Litig.,* 977 F. Supp. 2d 885, 888–89 (N.D. Ill. 2013)) (applying, in a direct filed product liability case, the law of the state where the plaintiff purchased and used the prescribed product, ***not*** the MDL forum) (emphasis added); *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices and Prods. Liab. Litig.,* 2011 U.S. Dist. LEXIS 39820, at

---

[10] For the convenience of the Court, this order is attached hereto as Exhibit E.

*17–19 (S.D. Ill. April 12, 2011) (applying the law of the state where the plaintiffs purchased and used the product rather than the MDL forum in foreign direct filed cases).

In *Dobbs v. DePuy Orthopedics, Inc.,* 842 F.3d 1045 (7th Cir. 2016), an Illinois plaintiff direct filed his case in the Northern District of Ohio MDL.  The case was later transferred from the Ohio MDL to the Northern District of Illinois.  The Seventh Circuit held that the case originated in Illinois and that Illinois choice of law rules applied. *Id.* at 1048.

> Dobbs's claim . . . was filed in the Northern District of Ohio only because the DePuy multidistrict litigation was already in progress there.  Dobbs's complaint stated that the Northern District of Illinois was the appropriate venue absent the multidistrict litigation.  That advises treating the Northern District of Illinois as the original venue.
>
> In fact, district courts in our circuit have taken that approach: ***foreign cases filed directly in a district court as part of ongoing multidistrict litigation are treated as having originated outside of that district.*** *E.g. In re Watson Fentanyl Patch Prods. Liab. Litig.*, 977 F.Supp. 2d 885, 888–89 (N.D. Ill. 2013); *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 3:09-MD-02100-DRH, 2011 WL 1375011, at *5 (S.D. Ill. Apr. 12, 2011). ***We ratify that approach here and apply Illinois's choice-of-law rules***.

*Dobbs,* 842 F.3d at 1048 (emphasis added).

The *In re Watson Fentanyl* decision—which the Seventh Circuit cited with approval in *Dobbs*—involved a case filed directly in the MDL court in the Northern District of Illinois.  The case concerned an Ohio resident, who died in Ohio after using a fentanyl patch that was prescribed, purchased, and applied in Ohio. *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 977 F. Supp. 2d at 886.  The Northern District of Illinois MDL court applied Ohio law and rejected attempts to apply Illinois law, or even Illinois' choice of law rules.

> "[T]he prevailing rule in this situation is that in a case that was directly filed in the MDL transferee court but that originated elsewhere, the law (including choice of law rules) that applies is the law of the state where the case originated. *See e.g. In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Prods. Liab. Litig.*, MDL No. 2100, No. 3:09-md-02100-DRH-PMF, 2011 WL 1375011, at *5 (S.D. Ill. April 12, 2011); *In re Bausch & Lomb Inc. Contacts Lens Solution Prods.*

> *Liab. Litig*. MDL No. 1785, 2007 WL 3046682, at *3 (D.S.C. Oct. 11, 2007) (noting that 'it would be an odd result to subject plaintiffs to [the law of the MDL forum] simply because they took advantage of the direct filing procedure – a procedure that provides benefits to all parties and preserves judicial resources'). The Court agrees with the cases just cited and concludes that the choice of law rules that apply are those of the state where the case originated.

*In re Watson Fentanyl Patch Prods. Liab. Litig*., 977 F. Supp. 2d at 888.

The *Watson Fentanyl* MDL court then went on to analyze the meaning of the term "originated," concluding as follows. ***"[A] direct-filed case in an MDL proceeding is considered to have originated in the state where the plaintiff purchased and used the prescribed product.*** That is how the place of filing is determined in [the] overwhelming majority of product liability cases, and it is a reasonable approach to determining the choice of law issue that has been presented. *Id.* at 889 (emphasis added). Because the plaintiff was prescribed and used the fentanyl patch at his Ohio residence, the Illinois MDL court ruled that Ohio law should apply to this foreign direct filed case.[11]

*In re Yasmin*—cited with approval by both the *Dobbs* and *In re Watson Fentanyl* courts—involved numerous cases that originated outside of the MDL court's judicial district and that were filed directly in the Southern District of Illinois MDL. Similar to Cook's faulty reasoning, the *Yasmin* plaintiffs argued that because the court was sitting in diversity in Illinois, Illinois was the proper forum, and Illinois choice of law principals should control. *Id.* The MDL court's Judge Herndon rejected that argument and emphasized in bold type: "**Illinois choice of law principals do not control simply because this MDL Court is sitting in diversity in Illinois**." *Id.* (emphasis in original). Judge Herndon reasoned that "direct filing orders are beneficial to both parties

---

[11] Similar to the approach taken by the Seventh Circuit, the *In re Watson Fentanyl* MDL court also noted that it could have applied California choice of law rules, because Plaintiffs' complaint suggested that they would have filed their lawsuit in California. But even applying California choice of law rules, the Illinois MDL court concluded that Ohio law should apply and ***not*** the law of the MDL forum. *Id.* at 889–90 (emphasis added).

because they streamline the litigation and help eliminate the judicial inefficiency involved in the

MDL transfer process." *Id.*  Judge Herndon concluded that:

> [T]he better approach is to treat foreign direct filed cases as if they were transferred
> from a judicial district sitting in the state where the case originated.  For purposes
> of this analysis, the Court considers the originating state to be the state where the
> plaintiff purchased and was prescribed the subject drug.  Thus, for a foreign direct
> filed member action involving a plaintiff that purchased and was prescribed the
> subject drug in Tennessee, the Court will treat that plaintiff's claims as if they were
> transferred to this MDL from a district court in Tennessee.

*Id.* at *6.

Multiple other courts have reached similar conclusions. *See, e.g.*, *In re Fresenius Granuflo/*

*Naturalyte Dialysate Products Liability Litigation,* 76 F. Supp. 3d 294, 303 (D. Mass. 2015) ("The

home forum designation of the direct filing plaintiffs is the best evidence I have of what these

plaintiffs would have done absent direct filing.  Just as Mississippi plaintiffs would have had a

choice between at least two proper forums in the absence of direct filing, so too do they have such

an option with the direct filing procedure.  I will therefore consider the forum that the direct filing

plaintiffs designated on their short form complaints as the originating forum for the choice of law

analysis."); *Wahl v. General Electric Co.,* 983 F. Supp. 2d 937, 943 (M.D. Tenn. 2013) ("Most of

the courts that have considered this peculiar procedural posture have stated that it is appropriate to

apply choice of law rules of the 'originating' jurisdiction [i.e. where the case would have been

brought but for the CMO permitting direct filing], rather than the choice of law rules of the MDL

Court.  These courts have generally reasoned that the direct filing procedure is simply designed to

promote judicial economy and conserve the parties' resources, not to alter the choice of law

rules."); *In re Avandia Marketing, Sales Practices and Prods Liability Litig.*, MDL No. 1871, Civil

No. 11-695 and 11-3031, 2012 U.S. Dist. LEXIS 111272, at *7 (E.D. Pa. August 7, 2012) ("The

Court has concluded, as have other MDL courts, that such [direct filed] cases should be governed

16

by the law of the states where Plaintiffs received treatment and prescriptions for Avandia. This ruling will promote uniform treatment between those Plaintiffs whose cases were transferred into the MDL from their home states and those who filed directly into the MDL.").

In fact, the Cook Defendants know that Missouri choice of law rules and Missouri substantive law will apply to Mr. Parker's case. Three years ago—*in this very MDL litigation*—Cook moved for summary judgment in the Valerie Graham case. As a Kansas resident, Ms. Graham elected to direct file her lawsuit in this district and submitted a short-form complaint noting that her case would have been filed in Kansas federal court absent this MDL. In a section of its summary judgment brief entitled "Choice of Law Analysis," Cook told this Court that Kansas, not Indiana, choice of law principles applied because "courts have found that the better approach is to treat foreign direct filed cases … as if they were transferred from a judicial district sitting in the state where the case originated." [Filing No. 1051, at ECF p. 4252.] Based upon this statement of law, Cook argued, "Kansas is the originating state and Kansas choice-of-law provisions apply." [*Id.* at ECF p. 4253.]. Cook went on to conclude: "Applying this law to the present case leads to the application of Kansas law." [*Id.* at ECF p. 4253.].

In this instance, Mr. Parker elected to file his lawsuit in this district and submitted a Short Form Complaint designating the Eastern District of Missouri as his choice of venue. Mr. Parker received his Celect IVC filter in the Eastern District of Missouri, and all of his treatment in the Eastern District of Missouri. Based on binding precedent from the Seventh Circuit as well as Cook's own judicial admissions, Missouri choice of law rules and Missouri substantive law will apply to Mr. Parker's case. This fact heavily favors transfer to the Eastern District of Missouri.

### b. *Judicial efficiency favors transfer to the Eastern District of Missouri.*

From March 31, 2017 to March 31, 2018, the median time it took for the resolution of a case (tracking the time from filing to disposition) in the Southern District of Indiana was 7.7 months. *See* Federal Judicial Caseload Statistics 2018 Tables, https://www.uscourts.gov/federal-judicial-caseload-statistics-2018-tables. In the Eastern District of Missouri, the median time was 4.8 months. *Id.* By March 31, 2019, the Southern District of Indiana's median resolution time had gone up to 8.3 months, as compared to 5.5 months for cases in the Eastern District of Missouri. *See* Federal Judicial Caseload Statistics 2019 Tables, https://www.uscourts.gov/federal-judicial-caseload-statistics-2019-tables. Between March 31, 2016 and March 31, 2017, the Eastern District of Missouri had nearly half the number of pending cases that the Southern District of Indiana did (4,349 for Indiana, 2,303 for Missouri). Indiana's number of pending cases then rose to 6,691 for the period between March 31, 2017 and March 31, 2018, while Missouri's number decreased to 1,964. *See* Federal Judicial Caseload Statistics 2018 Tables. By March 31, 2019, the Southern District of Indiana's pending number had risen again to 8,407, while the Eastern District of Missouri had only 2,182 cases pending. *See* Federal Judicial Caseload Statistics 2019 Tables. The Eastern District of Missouri moves cases faster than the Southern District of Indiana, and this fact, combined with easier access to non-party witnesses in Missouri and the familiarity with Missouri law, makes it much more likely that this case will have a speedier trial in Missouri than in Indiana.

### c. *The interest of justice and fundamental fairness favor transfer to the Eastern District of Missouri.*

The Cook Defendants and the Plaintiffs' Steering Committee drafted together a Short Form Complaint, which was approved by the MDL Court. The Short Form Complaint contained a specific requirement for each plaintiff to list the "District Court and Division in which venue would

18

be proper absent direct filing."   It is undisputed that the Cook Defendants knowingly and voluntarily agreed to the venue language in the Short Form Complaint.[12]

The purpose of this venue provision was to encourage individual plaintiffs to direct file their cases into the MDL, thereby eliminating the inefficient and unnecessary intermediate step of filing a complaint in the home forum only to have the case transferred into the MDL for pre-trial proceedings.   The Cook Defendants knew that that the venue provision would allow each direct filed Plaintiff to obtain transfer of their case to the forum of their choosing at the conclusion of pretrial proceedings.

In the interest of judicial economy, Mr. Parker accepted the Cook Defendants' invitation to bypass the unnecessary, bureaucratic intermediate step.   She, therefore, direct filed his case in this MDL Court via the agreed language in the Short Form Complaint template.   Mr. Parker named the Eastern District of Missouri as the "District Court and Division in which venue would be proper absent direct filing," because the Eastern District of Missouri is where Mr. Parker suffered injuries caused by the Cook Defendants' Celect IVC filter.   Missouri is where Mr. Parker resided at the time of his surgery and where he still resides today.   Missouri is where Mr. Parker's Celect IVC filter implantation occurred, where most of his treating physicians reside and practice, and where his cause of action accrued.   Absent the MDL direct filing process, Missouri is where Plaintiff would have filed his complaint, not in the Southern District of Indiana.

It is beyond comprehension to think that Mr. Parker should be penalized for conserving judicial resources by having his choice of venue denied.   In essence, Cook's position opposing transfer is the ultimate "bait and switch."   Cook agreed to the language in the Short Form Complaint and knowingly included a provision whereby Mr. Parker and all other plaintiffs could

---

[12] The form of the Short Form Complaint was determined by agreement of the parties, as denoted by MDL Doc. 318 (Notice of Agreement re: SFC).

list the forum of their choosing.  Mr. Parker followed those instructions perfectly and chose the Eastern District of Missouri as his venue, only to now be told years later by Cook that his choice was meaningless.  Cook's attempt to create a "gotcha" moment is not justice; it is a sham.  Because the interest of justice and fundamental fairness heavily favor transfer, the Court should grant Mr. Parker's motion and move his case to the Eastern District of Missouri for trial pursuant to 28 U.S.C. § 1404(a).

## IV.
## CONCLUSION

For all of the above-referenced reasons, Plaintiff Michael Parker respectfully requests that this Motion be granted and that his case be transferred to the United States District Court for the Eastern District of Missouri pursuant to 28 U.S.C. §1404(a).

Respectfully submitted,

**MARTIN BAUGHMAN, PLLC**

*/s/ Ben C. Martin*_____
Ben C. Martin, Esq.
3710 Rawlins Street, Suite 1230
Dallas, TX 75219
Telephone: (214) 761-6614
Facsimile: (214) 74407590
Email: bmartin@martinbaughman.com

**COUNSEL FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 5, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

*/s/ Ben C. Martin*
Ben C. Martin