UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

---

IN RE: COOK MEDICAL, INC., IVC FILTERS      Case No. 1:14-ml-2570-RLY-TAB
MARKETING, SALES PRACTICES AND      MDL No. 2570
PRODUCTS LIABILITY LITIGATION

---

This document relates to:

    *Michael Parker*, 1:15-cv-00597
    *Patricia Pemberton*, 1:16-cv-00432
    *Timothy Hall*, 1:16-cv-01083
    *Megan Chambers*, 1:16-cv-06031
    *Forrest Gibbs*, 1:17-cv-01785

---

## DEFENDANTS' COMBINED RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTIONS TO TRANSFER VENUE

"[I]t is hard to imagine a more appropriate forum than that of where the Defendants made, marketed and sold the product and where the Defendant is headquartered" – the Southern District of Indiana.  Pls.' Memo. in Supp. of Mot. for Trans. & Coordination or Consolidation Under 28 U.S.C. §1407, at p. 8, attached as **Exhibit A**.  That's what the plaintiffs claimed when they moved to create this MDL.  Now they want out of the MDL, and out of the Southern District of Indiana, and have therefore filed yet another round of motions to transfer on behalf of Plaintiffs Patricia Pemberton, Michael Parker, Forrest Gibbs, Megan Chambers, and Timothy Hall ("Plaintiffs").  *See* Dkts. 12616, 12618, 12622, 12624, and 12626.  And this is in addition to a substantively identical motion filed by Plaintiff Luis Colon, which has already been briefed. *See* Dkts. 12503, 12514 and 12590.  Notably, all of these Plaintiffs except Plaintiff Chambers have *already* unsuccessfully attempted to have their cases transferred out of the MDL.  *See* Dkt. 9694, Pls.' Dec. 4, 2018 Mot. to Trans.  The Court denied that motion on June 17, 2019.  *See* Dkt. 11138, Order on Pls.' Mot. to Trans.  In addition, around the same time, the Court also rejected the Plaintiffs' claim, which they once again press here, that their cases were filed in this district

pursuant to a direct filing order.  *See* Dkt. 11131, Order on Pls.' Bench Brief on *Lexecon*.  Now, *just seven months later*, Plaintiffs are back asserting the same arguments and again asking the Court to transfer their cases out of the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a).

That statute provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  28 U.S.C. § 1404(a).  Plaintiffs' requests, however, are not about convenience of the parties or the witnesses, and they are certainly not about justice.  Plaintiffs' requests, just like their previous requests, are instead part of an effort to frustrate the bellwether trial schedule and docket management measures that this Court has put in place to guide this litigation forward.  Were the Court to transfer these lawsuits, it would prompt transfer requests in dozens or even hundreds of other cases creating a web of lawsuits crisscrossing the country from coast to coast – lawsuits that would proceed on different tracks, according to different procedures and different case management plans, and that would result in different rulings on similar issues by courts with no institutional knowledge of these cases.  This is exactly the procedural morass that the MDL was intended to prevent—an MDL, again, that the plaintiffs themselves sought.

As the Court held mere months ago, Plaintiffs' cases are "not ready for transfer."  Dkt. 11138, p. 1.  Nothing has changed in the interim.  The relevant factors continue to favor this Court retaining jurisdiction, just as they did in the last transfer motions, and therefore Plaintiffs' present motions to transfer should be denied.

## ARGUMENT

For transfer to be appropriate under section 1404(a), the moving party must establish that: (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the convenience of the parties, the convenience of the

witnesses, and the interest of justice. *Berry Plastics Corp. v. Protecto Wrap Co.*, No. 3:12-CV-73-RLY-WGH, 2013 WL 772871, at *5 (S.D. Ind. Feb. 28, 2013). As to the third requirement, the plaintiffs must show, "by reference to ***particular*** circumstances," not merely that transfer would be more convenient, but "***clearly*** more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986) (emphasis added); *accord Elanco Animal Health, a Div. of Eli Lilly & Co. v. Archer Daniels Midland Co. Animal Health & Nutrition Div.*, No. 1:08-CV-00386-RLY-TAB, 2008 WL 4099882, at *2 (S.D. Ind. Sept. 4, 2008). "[M]ere speculation without supporting evidence" is insufficient to support transfer. *Everroad v. Scott Truck Sys., Inc.*, No. 1:06-CV-770-RLY-WTL, 2007 WL 3287115, at *1 (S.D. Ind. Nov. 6, 2007). "The court will not order a transfer unless the moving party gets beyond the language of the statute and justifies a change in forum." 15 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, ET AL., FEDERAL PRACTICE & PROCEDURE § 3847 (4th ed. Westlaw ver. 2018) (hereafter "WRIGHT & MILLER")

Plaintiffs' motions fail to satisfy any of the relevant transfer criteria here.

**I.     Plaintiffs Have Failed to Demonstrate That Their Proposed Transferee Districts Can Exercise Personal Jurisdiction Over All of the Defendants.**

Plaintiffs claim transfer is appropriate "because jurisdiction and venue are proper" in their home districts, and "[t]he Cook Defendants are subject to personal jurisdiction" under their home states' long-arm statutes. *See, e.g.*, Dkt. 12628[1], p. 9. But the Plaintiffs' bald assertions about personal jurisdiction and venue being available in their home districts won't do.

"[I]n suits against multiple defendants, transfer is proper only to a district in which all of them"—that is, all of the ***defendants***—"are subject to personal jurisdiction and in which venue is

---

[1] Because Plaintiffs' supporting briefs are virtually identical, Cook Defendants will use Dkt. 12628, Plaintiff Timothy Hall's Memorandum in Support of Motion to Transfer, as an exemplar brief for citation purposes.

US.126225307.02

proper for an action against all of them."  15 WRIGHT & MILLER § 3845.  The Cook Defendants have asserted lack of personal jurisdiction as an affirmative defense in this case through their master answer.  Dkt. 8180, Defs.' Am. Ans. p. 23.  Nevertheless, Plaintiffs have made little effort to demonstrate—as is their burden and their burden alone, *see Berry Plastics Corp.*, No. 3:12-CV-73-RLY-WGH, 2013 WL 772871, at *5—that jurisdiction and venue are proper in their home districts as to any of the defendants, let alone all of them.

For this reason alone, Plaintiffs' motions should be denied.  *See*, *e.g.*, *Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 106 (10th Cir. 2012) (affirming denial of transfer where plaintiffs failed to demonstrate the transferee district had jurisdiction over the defendants).

## II.   Plaintiffs Have Failed to Demonstrate the Private Interest Factors Clearly Favor Transfer.

In evaluating the convenience of transfer under section 1404(a), the Court considers the private interests of the parties.  *Rapier v. Capital One Auto Fin., Inc.*, No. 1:07-CV-0798RLYWTL, 2007 WL 3102148, at *2 (S.D. Ind. Oct. 22, 2007).  These include:  "(1) plaintiff's choice of forum, (2) the situs of material events, (3) the relative ease of access to sources of proof in each forum including the court's power to compel the appearance of unwilling witnesses at trial and the costs of obtaining the attendance of witnesses, [and] (4) convenience to the parties—specifically, their respective residences and abilities to bear the expense of trial in a particular forum."  *Id*. (quoting *Von Holdt v. Husky Injection Molding Sys., Ltd.*, 887 F. Supp. 185, 188 (N.D. Ill. 1995)).  Plaintiffs have failed to demonstrate that ***any*** of these factors "clearly" favor transfer.  *See Coffey*, 796 F.2d at 219–20.

1.   A plaintiff's choice of forum is generally entitled to deference, *Alcon Mfg., Ltd. v. Apotex, Inc.*, No. 1:06-CV-1642-RLY-TAB, 2007 WL 854026, at *2 (S.D. Ind. Mar. 14, 2007), and the plaintiffs here, with the exception of Plaintiff Chambers, who filed her case originally in

the Southern District of Ohio[2], **chose** the Southern District of Indiana.  Their cases were not transferred here by the JPML.  Plaintiffs directly filed them here, in the Southern District of Indiana.  And they did so, importantly, as this Court has already held, without a direct-filing order. *See* Dkt. 11131.

A direct-filing order provides a mechanism that permits plaintiffs to file their cases directly in the MDL court without having to file them first in their home districts and then have the case transferred to the MDL.  *See*, *e.g.*, *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 903–04 (E.D. La. 2007).  A direct-filing order also typically provides that upon completion of pretrial proceedings, the MDL court will transfer direct-filed cases to an appropriate jurisdiction. *See*, *e.g.*, *id*.  Here, without filing their cases pursuant to a direct-filing order, the plaintiffs had no guarantee their cases would be transferred to their home districts later.  Now, in an attempt to reap the benefits of a direct-filing order that doesn't exist, Plaintiffs accuse Cook of engaging in "the ultimate 'bait and switch'" and "attempt[ing] to create a 'gotcha' moment."  Dkt. 12628, p. 19.  Plaintiffs' accusations are unfounded.  The fact of the matter is that they decided to file their cases here without obtaining a direct-filing order first.  As a result, they can hardly complain now if their cases are not transferred to their home districts for trial.

At any rate, "when [a] plaintiff sues outside of his home forum," as all of the plaintiffs except Plaintiff Chambers have, the plaintiff's choice of forum "is given less weight, and the location of defendant's residence becomes more important in determining the convenience of the parties." *Alcon Mfg., Ltd*, No. 1:06-CV-1642-RLY-TAB, 2007 WL 854026, at *2.  Cook of course is headquartered in Indiana.  *In re: Cook Med., Inc., IVC Filters Mktg., Sales Practices & Prods.*

_____

[2] *See* **Exhibit B**, Pl. Chambers' Original Complaint

US.126225307.02

*Liab. Litig.*, 53 F. Supp. 3d 1379, 1381 (U.S. Jud. Pan. Mult. Lit. 2014). Indiana therefore is the preferred venue for these cases.

And although the calculus on this one factor might be slightly different for Plaintiff Chambers because she originally filed her case in the Southern District of Ohio, she has failed to raise this issue in her briefing. Even if she had, her motion nevertheless fails to demonstrate that the Southern District of Ohio is "clearly" more convenient than the Southern District of Indiana, *See Coffey*, 796 F.2d at 219–20, as an analysis of the other relevant factors confirms that her case, like the other plaintiffs' cases, should not be transferred.

2.      The Southern District of Indiana is also the situs of events material to these cases. As Plaintiffs have alleged in their master complaint: "A substantial amount of activity giving rise to the claims occurred in this District, and Defendants may be found within this District." Dkt. 213, Master Compl. ¶ 28. It may well be that Plaintiffs received their filters in their respective home districts, but this is not a medical malpractice case; it's a product liability case, making Cook's world headquarters—"the center of the accused activity"—the preferred forum. *See In re Recombinant DNA Tech. Patent & Contract Litig.*, No. MDL DOCKET 912, 1994 WL 270712, at *31 (S.D. Ind. Dec. 22, 1993) (quoting *S.C. Johnson & Son, Inc. v. Gillette Co.*, 571 F. Supp. 1185, 1187 (N.D. Ill. 1983)). This factor therefore also favors keeping the case in Indiana.

3.      Plaintiffs likewise have conceded that "[t]he evidence necessary in these matters will be found in th[is] district," and that "[m]any and perhaps most of the corporate witnesses and documents will be located in the district . . . ." **Exhibit A**, Pls.' Memo. in Supp. of Mot. for Trans. & Coordination or Consolidation Under 28 U.S.C. §1407, at p. 8. Courts often consider the relative convenience of the witnesses as the most significant of the relevant factors. *See Berry Plastics*, No. 3:12–cv–73–RLY–WGH, 2013 WL 772871, at *6. In evaluating this factor, courts examine

US.126225307.02

the "residence of the witnesses, the cost of obtaining their attendance, the nature of their potential testimony, and the availability of compulsory process for nonparty witnesses." *Id*. (quoting *Utley v. N. Am. Van Lines, Inc.*, No. IP 02–0249–C–T/K, 2002 WL 31431482, at *2 (S.D. Ind. Oct. 3, 2002)). "This analysis is not merely a numbers game:  what is significant is the substance and materiality of potential witnesses' testimony." *Id*. (quoting *Somers v. Flash Tech. Corp. of Am.*, No. IP 455–CB/S, 2000 WL 1280314, at *3 (S.D. Ind. Aug. 25, 2000)).

Plaintiffs' arguments regarding "substance and materiality" of potential witness testimony is unconvincing.  Essentially, Plaintiffs argue that their respective home districts are the most convenient forums for non-party witnesses because their treating physicians are located there.  But this fact does not help Plaintiffs' argument.  These cases are not primarily about the quality of medical care Plaintiffs received; indeed, the "paramount issues concern[] the design, manufacture, testing, and marketing of  . . . Cook's IVC filter," *In re: Cook Med., Inc.*, 53 F. Supp. 3d at 1380 (internal quotation marks and citation omitted).  At best for Plaintiffs, all transfer would do is shift the inconvenience of attending an out-of-state trial from a small troupe of side players (the medical witnesses) to a much larger troupe of critical players (Cook employees).  When witnesses will have to travel either way, whether the case stays or goes, the law does not favor transfer.  *See, e.g.*, *Berry Plastics Corp.*, No. 3:12-CV-73-RLY-WGH, 2013 WL 772871, at *6; *Elanco Animal Health*, No. 1:08-CV-00386-RLY-TA, 2008 WL 4099882, at *4; *Rapier*, No. 1:07-CV-0798RLYWTL, 2007 WL 3102148, at *4; *Alcon Mfg., Ltd.*, No. 1:06-CV-1642-RLY-TAB, 2007 WL 854026, at *3.  Even giving Plaintiffs the benefit of the doubt about the importance of their home-state medical witnesses, they cannot reasonably dispute that testimony from witnesses who made, marketed, and sold the products at issue—many of whom are in Indiana—is of any ***lesser*** importance than the testimony Plaintiffs would offer from any healthcare providers.  And this does

- 7 -

not even account for the parties' expert witnesses, who hail from all over the country, and who will almost certainly be inconvenienced no matter where these cases are litigated. *See Goodman-Manaster & Co. v. Kamerdin*, No. 85 C 07423, 1986 WL 3036, at *5 (N.D. Ill. Feb. 27, 1986) (noting the location of experts should be considered in making a transfer determination).

If the live witness lists from the two bellwether cases tried so far—*Hill* and *Brand*—are any indication of who will be called to testify in these cases, it only confirms that transfer would merely shift the inconvenience from one set of parties and witnesses to another. *See* Witnesses Lists attached as **Exhibit C** (composite exhibit listing witnesses that testified live in *Hill* and *Brand* trials). For example, as Exhibit C demonstrates, Plaintiff Hill's home state of Florida was just the third most common home for witnesses in the *Hill* trial; more witnesses hailed from Indiana (Cook employees) and California (including many of Plaintiff Hill's experts).

As for ease of access to the relevant documents, records can easily be copied and sent from one location to another, *Rapier*, No. 1:07-CV-0798-RLY-WTL, 2007 WL 3102148, at *3, and in fact already have been, as the Plaintiffs, with the help of their Texas-based counsel, have produced medical records from multiple providers, as well as their PPF/PPS, to defense counsel based here in Indiana. In the digital age, this factor does not weigh for or against either side. *See id.*

At bottom, then, the relative ease of access to sources of proof—both as to witnesses and documents—counsels against transfer. At most, this factor is a wash, and a wash does not "clearly" favor shipping a case to another district, *see Berry Plastics Corp.*, No. 3:12-CV-73-RLY-WGH, 2013 WL 772871, at *6.

4.       Finally, as for the convenience of the parties, Plaintiffs "have failed to provide the court with any evidence demonstrating that they would be unable to bear the expense of trial or that financial hardship would result if they were required to litigate this case outside their home

- 8 -

forums." *Rapier*, No. 1:07-CV-0798-RLY-WTL, 2007 WL 3102148, at *3.  After all, it was Plaintiffs who chose to sue in Indiana in the first place, so they can hardly complain about the expense of trying their cases here—an expense they aren't personally bearing anyway.  As with the non-party witnesses, all transfer would do is to shift whatever inconvenience there is for one set of individuals to another, which does not justify transfer.  15 WRIGHT & MILLER § 3848.  "Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964).

## III.   Plaintiffs Have Failed to Demonstrate The Interests of Justice Favor Transfer.

The final factor the Court considers is "the interest of justice," which "embraces traditional notions of judicial economy, rather than the private interests of the litigants and their witnesses." *Berry Plastics*, No. 3:12–cv–73–RLY–WGH, 2013 WL 772871, at *7 (quoting *Law Bulletin Publ'g, Co. v. LRP Publ'ns, Inc.*, 992 F. Supp. 1014, 1019 (N.D. Ill. 1998)).  This factor focuses on (1) the transferee forum's familiarity with the governing law, (2) the local interest in deciding local controversies at home and (3) the congestion in the alternative courts.  *Id.*  In evaluating these factors, it is important to remember "[t]he 'interests of justice' favors consolidated litigation." *Kendall U.S.A., Inc. v. Cent. Printing Co.*, 666 F. Supp. 1264, 1269 (N.D. Ind. 1987) (citing *Van Dusen,* 376 U.S. at 643–46; *F.T.C. v. MacArthur,* 532 F.2d 1135 (7th Cir.1976)).  This is so because consolidated litigation "facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoid[s] duplicitous litigation and inconsistent results." *Keene v. McKesson Corp.*, No. 12-CV-05924-JST, 2015 WL 9257949, at *4 (N.D. Cal. Dec. 17, 2015) (quoting *Puri v. Hearthside Food Sols.*, No. CV 11-8675-JFW, 2011 WL 6257182, at *3 (C.D. Cal. Dec. 13, 2011)).  That was the whole point of creating the MDL in the first place:  because centralization would "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel, and the judiciary." *In re: Cook Med., Inc.*,

- 9 -

53 F. Supp. 3d at 1380.  "To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [section] 1404(a) was designed to prevent."  *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960).

This all strongly suggests that pulling Plaintiffs' cases out of this MDL and transferring them to jurisdictions across the country would not serve the interests of justice.  This Court has become intimately familiar with the highly technical engineering and medical issues at stake in this litigation, and as a result is in a position to resolve these cases more efficiently than any other jurisdiction.  Transferring a raft of cases would lead only to the unnecessary duplication of efforts by different judges in different jurisdictions, as well as to the attendant danger of inconsistent results.

1.       The fact that Plaintiffs' product liability claims may be governed by their home-states' laws does not counsel in favor of transferring these cases.  First of all, there is no reason to believe other states' products liability laws are so complex that this Court could not properly apply them without difficulty.  *See*, *e.g.*, *Bates v. J.C. Penney Co.*, 624 F. Supp. 226, 228 (W.D.N.C. 1985) (saying this about Florida product liability law).  This Court has already proved more than competent to apply the product liability laws of other states (for example, Florida law in *Hill*, and Georgia law in *Brand*), as "federal judges routinely apply the law of a State other than the State in which they sit."  *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 67 (2013).

Second of all, as this Court previously held, Plaintiffs' punitive damages claims are governed by Indiana law as is the statute of limitations, and not the law that governs the product liability claims.  *See* Brand Trial Transcript, p. 4388, attached as **Exhibit D**; SOL ruling.  Thus,

US.126225307.02

because Indiana law governs part of Plaintiffs' cases, this factor is neutral and does not favor transfer. *See Kendall U.S.A., Inc.*, 666 F. Supp. at 1269 (concluding this factor was neutral when both Indiana and Ohio law applied).

2.      The local interests in this case do not favor either party. Plaintiffs' home states "[have] an interest in protecting [their] citizens and maintaining [their] public policies while Indiana has similar interests in overseeing the conduct of Indiana corporations." *Berry Plastics Corp.*, No. 3:12-CV-73-RLY-WGH, 2013 WL 772871, at \*7.

3.      Finally, as to congestion in the alternative court, this factor is not particularly useful to the analysis in this case. While the Cook Defendants acknowledge that there are minor differences in median resolution times between the Southern District of Indiana and Plaintiffs' home districts, that fact is of little significance given the nature of this litigation and the way the MDL cases are typically resolved. As the plaintiffs themselves rightly recognized in moving to create the MDL, consolidated litigation would "promote the just and efficient conduct of [the Related] Actions." **Exhibit A**, at p. 3. Now, in an attempt to frustrate this Court's docket management measures and bellwether schedule and hinder the Cook Defendants' ability to defend this litigation, Plaintiffs argue that transfer *out of* the MDL is necessary to promote efficiency. To the contrary, "the fact that the other cases arising from the transaction or event are in the same district from which transfer of the action is sought obviously is an argument *against* transfer." 15 WRIGHT & MILLER § 3854 (emphasis added).

**IV.    Transfer of Plaintiffs' Cases is Inappropriate Because This Court Has Not Completed Its Pretrial Work, and Transfer of Any Individual Cases, Including Plaintiffs' Cases, Would Disrupt the Court's Docket Management Plans.**

In their briefs, Plaintiffs suggest that they have a preserved right to have their cases tried in their home districts based on the notion that there is a direct filing order. The Court is well-

acquainted with this argument by now, as it has already rejected it twice at the June and October 2019 hearings.  *See* Dkts. 11131 & 12256.  Cook should not have to litigate this issue a third time.

With respect to Plaintiffs' argument that the "time is ripe" for the Court to transfer their cases to their home districts for trial "because all pretrial proceedings in this MDL have ended," Dkt. 12628 at p. 3, Plaintiffs are wrong both legally and factually.  First off, as venue is proper here, the Court "has complete jurisdiction over cases originally filed in this court, just as it would over any other case originally filed in this district.  This complete authority includes the authority to try such cases."  *See* Dkt. 11131.

Second, Plaintiffs cite no law for the proposition that this "ripeness" standard even applies to transfer of cases under section 1404(a), the general change of venue statute.  Under Seventh Circuit precedent, "the District Judge [in ruling on a motion to transfer] has a broad discretion, but in exercising this discretion he is limited in his consideration to the three factors specifically mentioned in § 1404(a), and he may not properly be governed in his decision by any other factor or consideration."  *Chicago, R. I. & P. R. Co. v. Igoe*, 220 F.2d 299, 302 (7th Cir. 1955).  To apply a different set of criteria—such as whether the cases are "ripe" for transfer—would contradict binding precedent, not to mention the language of the controlling statute.

Regardless, even if "ripeness" were a relevant factor, these cases are not in fact ripe for transfer.  "Pretrial proceedings" in an MDL are much broader than Plaintiffs suggest, as they encompass a host of additional tasks common to all or large subsets of cases that have not been finished.  Moreover, while the Court has indeed presided over trials in two Celect cases (*Hill* and *Brand*), the Court only recently granted Cook's Motion for New Trial in *Brand*.  Dkt. 12632, p. 33.  In addition, the Court's current bellwether trial plan includes one additional Celect trial (*Burrage*) chosen from among the "product-in-place"/disputed injury cases, as well as two Tulip

- 12 -

trials.   Therefore, granting transfer at this time would only serve to frustrate the Court's current bellwether trial and docket management plans.

### A. The pretrial work of an MDL court includes much more common work than presiding over company discovery as Plaintiffs narrowly suggest, and encompasses efforts to dispose of meritless cases and resolve cases with merit.

The statutory grant of jurisdiction for multidistrict litigation allows civil actions involving one or more common questions of fact to be transferred to a single district court before a single judge for "coordinated or consolidated pretrial proceedings."  28 U.S.C. § 1407.  The plain English meaning of the term "pretrial, as an adjective [quite literally], means before trial" and thus, "*all* judicial proceedings before trial are pretrial proceedings."  *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 494 (J.P.M.L. 1968) (emphasis added).  The MDL court's authority to manage the consolidated cases thus is "'broad' and it necessarily encompasses issuing pretrial orders, resolving pretrial motions (including discovery motions, motions to amend, motions to dismiss, motions for summary judgment and motions for class certification, and attempting to facilitate settlement)."  Fallon, 82 Tul L. Rev. at 2328 (citing *In re Plumbing Fixture Cases*, 298 F. Supp. at 494).  The JPML agrees, advising MDL judges that "[y]our ultimate responsibility is to resolve pretrial issues in a timely and expeditious manner.   This responsibility certainly includes resolution of jurisdictional issues, important evidentiary disputes [such as the admissibility of expert opinions], class certification issues, and, perhaps most important, motions to dismiss and for summary judgment."  JPML & Federal Judicial Center, *Ten Steps to Better Case Management, a Guide for Multidistrict Litigation Transferee Judges* § X(a)   (2d ed. 2014), available at https://www.fjc.gov/sites/default/files/2014/Ten-Steps-MDL-Judges-2D.pdf.

The Duke Law Manual prescribes several guidelines and best practices that highlight the need to complete various tasks that have not yet been fully realized in this Court.  Specifically, the Duke Law Manual recommends:

- 13 -

- "The transferee judge should give priority to deciding issues broadly applicable to multiple claimants in the MDL." Best Practice 1B(iii) at p. 5.

- "The transferee judge should endeavor to use the MDL forum to resolve or streamline the litigation before remand to the district courts." Guideline 14 at p. 94.

- "Remand of remaining cases to transferee courts should not begin until the court has taken steps:  (1) to preside over discovery, *decide on motions, and conduct such trials that are needed to position the cases for potential resolution*; (2) to *explore and consider all possibilities for resolution of the cases*; and (3) to prepare cases that do not resolve for trial in the transferor courts." Best Practice 14A at p. 94 (emphasis added).

- "In most situations, the time to raise settlement will be after sufficient time has passed to ensure a degree of certainty about both the nature and scope of the claims at issue."[3] Best Practice 14B at p. 95.

- "The court is usually uniquely situated to play a role in facilitating settlement discussions." Best Practice 14B(i) at p. 97.

- "In preparation for remand, *the court should consider using Lone Pine proceedings or other methods to cull meritless cases and ensure that only the viable cases may ultimately be eligible for remand*." Best Practice 14D(i) at p. 104 (emphasis added).[4]

- "The transferee judge should consider how, in the context of the specific litigation, remand procedures may minimize the burdens on the transferor courts and litigants after cases are transferred and remanded." Best Practice 14E(ii) at p. 106.

As judged against these recommendations, this MDL's work is not yet complete, and contrary to Plaintiffs' claim, individual cases like theirs are not ready for transfer even if transfer were appropriate for cases originally filed here, which it's not.[5]  As demonstrated by the Court's

---

[3]   As the Court is aware, filings in the Cook MDL are rarely ever under 100 cases a month.  In fact, in late 2019, filings have been at a *higher* pace than usual, harkening back to the filing levels in 2015 and 2016.

[4]   As the DUKE LAW MANUAL explains, "*Lone Pine* orders require each plaintiff in a mass tort case to submit a report setting forth evidence sufficient to document the basis for his or her personal-injury claims." *Id.* at 104 (citing *Lore v. Lone Pine Corp.*, 1986 WL 637507 (N.J. Super. Law Div. Nov. 18, 1986)).  MDL "courts are increasingly using *Lone Pine* orders to screen meritless cases . . . ." *Id.* at 95.

[5]   Similarly, the MANUAL FOR COMPLEX LITIGATION provides that "Litigation is generally considered mature if through previous cases (1) discovery has been thorough, producing a consensus that the available important information has been provided, (2) a number of verdicts

US.126225307.02

recent orders dismissing noncompliant cases (Dkt. 10622), Category 1 cases (Dkt. 10588), and Category 2 cases (Dkt. 11131), the categorization process is helping to cull the MDL of some of its most deficient cases.  This process is far from finished, however.  There are many other issues affecting large groups of cases that the Cook Defendants intend to present to the Court over the coming months, as demonstrated by the two pending omnibus motions for summary judgment based on the statute of limitations and the omnibus motion for summary judgment in miscategorized no-injury cases.  *See* Dkts. 11725-26; 11921-24.  Per the best practices recommended by the Duke Law and Complex Litigation Manuals, these are all issues the Court should review and rule upon before considering remand or transfer of cases.  Moreover, the Cook Defendants anticipate that many additional cases are time-barred and/or miscategorized and intend to move for summary judgment on those cases once the Court has an opportunity to consider and rule upon the pending motions.

Beyond those motions, Cook anticipates raising by motion multiple other issues that impact large groups of cases, including (among others):

- **Whether certain cases are barred by the applicable statute of repose.**  There are over 800 cases in the MDL that were filed more than 10 years after the date of placement. Several states, including Indiana where the development and marketing of the IVC filters was centered, have statutes of repose that categorically bar product liability claims after a certain time, typically 10 years.  Moreover, the relative percentage of these cases is growing, because Plaintiffs keep filing cases involving filters sold in the early and mid-2000s.  The Court has already dismissed several cases barred by the statute of repose (Dkt. 4918), and Cook intends to raise the issue again in many other cases.  These motion(s) will require complex choice-of-law analys(es) and would be best addressed by one court— this one.

---

have been received indicating the value of claims, and (3) plaintiffs' contentions have been shown to have merit."  Manual for Complex Litigation p. 359, § 22.314.  "In a typical mature mass tort, little or no new evidence is likely, appellate review of novel legal issues has been completed, and a full cycle of trial strategies has been explored."  *Id*.  Under this definition, the Cook MDL cannot be considered a "mature mass tort" for the reasons discussed in this Section.

US.126225307.02

- **Whether certain cases should be dismissed for lack of subject matter jurisdiction.** There are some cases filed by Indiana residents that lack diversity jurisdiction but have not yet been dismissed.

- **Whether certain cases should be dismissed for failure to plead with particularity.** As Cook argues in the pending omnibus motions for summary judgment, Plaintiffs have not pled their state consumer protection claims with the particularity required by Rule 9(b). This is a common, threshold issue in all cases that this Court should resolve before considering whether to transfer any case out of the MDL. It would be inefficient and risk inconsistent rulings if the Court were to transfer this case out of the MDL before this Court has an opportunity to rule on the viability of the consumer fraud claim.

- **Whether certain warranty claims fail as a matter of law.** Most states have a four-year statute of limitations for warranty claims that is triggered by the sale or delivery of the product. Under Indiana statute-of-limitations law that applies to most MDL cases based on the Court's choice-of-law ruling, the statute of limitations for warranty claims is merged with the general statute of limitations for personal injury claims. To the extent, some plaintiffs' warranty claims have a separate statute of limitations, Cook's analysis indicates that about 70% of the cases were filed more than four years after the placement of the product (logically, the latest possible sale or delivery date), indicating that the vast majority of these claims are time-barred. Moreover, Cook prevailed on the warranty claims in *Gage* by demonstrating that the warranty period was contractually reduced to one-year and a day (Dkt. 7809), which only increases the likelihood that most warranty claims are time-barred.

These issues are usually avoided in standalone cases if counsel adheres to their duty to screen out meritless claims. *See* Fed. R. Civ. P. 11(b). However, the unintended but all-too-common consequence of centralization in an MDL court, and the adoption of streamlined filing procedures that go along with that centralization, is that plaintiffs' counsel are incentivized to set aside their typical case-screening duties by the prospect of a global settlement. As one recent MDL court explained: "Some lawyers seem to think that their cases will be swept into the MDL where a global settlement will be reached, allowing them to obtain a recovery without the individual merit of their case being scrutinized as closely as it would if it proceeds as a separate, individual action." *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, 2016 WL 46704827, at *1 (M.D. Ga. Sept. 7, 2016). This MDL has been particularly plagued by such behavior, as the Court recognized by entering its recent Categorization and Screening Order (Dkt. 9322), as implemented

- 16 -

by other orders, including the current Bellwether Plan (CMO-25).  Thus, as the best practices in the DUKE LAW MANUAL indicate, case-screening efforts are necessary before remand or transfer of member cases become appropriate, if they are appropriate at all.

Whether Cook ultimately prevails on the motions summarized above or not, they should be briefed and heard in this Court before any serious consideration is given to transfer of cases. Cook called for and participated in the October 2018 settlement conference in good faith.  That conference confirmed that serious settlement negotiations were not yet possible because Plaintiffs were demanding significant amounts to resolve, for example, asymptomatic product-in-place claims.  The categorization and motion practice discussed here can help cull the MDL of meritless cases to a point where revisiting global resolution talks may become fruitful.  In any event, the common tasks outlined here are all "pretrial" tasks yet to be done under a common sense understanding of that term as it is used in section 1407.  *See* JPML, *Ten Steps to Better Case Management* at § X(a) (explaining that an MDL court's "perhaps most important" responsibility is resolving "motions to dismiss and for summary judgment").

Plaintiffs themselves agreed these steps would be necessary and their leadership participated in developing the categorization framework.[6]  As Plaintiffs said in their brief on the issue:  "These non-symptomatic injury cases, failed retrieval cases, irretrievable filter cases, and anticoagulation cases [which they agreed are numerous] will need to be tested (through motions to dismiss and for summary judgment) and tried . . . to determine whether they involve valid and compensable injuries."  Pl. Resp. to Cook Defs. Mot. for Screening Order and Bellwether Selection

---

[6] Plaintiffs are represented by Plaintiffs' Co-Lead Counsel, who participated in developing the categorization framework.

US.126225307.02

Plan, Dkt. 8591 at p. 2.  Transfer of individual cases should not even be considered before this work is complete.

> **B.      The Court should continue with its new plan to try more bellwether cases.**

To gauge valuation of cases and assess their merits, modern MDL practice requires several trials of ***representative*** cases.  Trials of bellwether cases "allow[] a court and jury to give the major arguments of both parties due consideration without facing the daunting prospect of resolving every issue in every action," thereby permitting the parties to evaluate the "handful of crucial issues on which the litigation primarily turns."  *In re MTBE Prods. Liab. Litig.*, 2007 WL 1791258, at *2 (S.D.N.Y. June 15, 2007); *see also* Fallon, 82 Tul. L. Rev. at 2338 ("Bellwether trials thus assist in the maturation of any given dispute by providing an opportunity for coordinating counsel to organize the products of pretrial common discovery, evaluate the strengths and weaknesses of their arguments and evidence, and understand the risks and costs associated with the litigation."). Judge Fallon accomplished this goal in the Vioxx and Propulsid MDLs by "limit[ing] the attorneys' focus to approximately four to five variables" that were key to those litigations.  *Id.* at 2346.  This Court, through the Categorization and Screening Order, has done the same by dividing the cases into seven categories and identifying Category 5 and Category 6 cases as the types of cases that would most benefit from bellwether trials.  Trial of representative cases can help the parties determine whether resolution of the MDL is possible, which, if it is, would eliminate the need to remand and try hundreds of cases at enormous expense and inefficiency.

Here, the Court has tried two bellwether cases, and because those cases involved serious and rare injuries, they are representative of only a relatively small proportion of the MDL caseload as a whole.  Moreover, as previously mentioned, the Court recently granted Cook's Motion for New Trial in *Brand*, thereby vacating the jury's verdict.  Accordingly, the Court has effectively only tried one bellwether case with any predictive value for purposes of resolving this litigation.

- 18 -

In order to advance the MDL toward resolution, this Court decided that "[w]e really need to address the product-in-place cases here somehow."  Feb. 5, 2018 Tr. at 53:7-16.  This, according to the Court, required trial of "two or three product-in-place cases," in addition to *Hill* and *Brand*, for a total of at least four bellwethers.   The Court then adopted the current bellwether plan that has yielded two Tulip cases and one more Celect case that are presently being worked up for trial.  Those bellwethers were chosen through a thoughtful selection process that involved randomly selecting a manageable pool of cases for review, strikes by parties of the most unbalanced cases from their perspectives, and selection by the Court of representative cases in the categories where additional bellwether trials had not taken place and are most needed to move the litigation forward.  Simply put, global resolution cannot be meaningfully attempted when the parties, as here, have significant differences not just on liability theories and defenses, but on whether the medical phenomena presented even constitute legally cognizable or compensable injuries.   These considerable disagreements can only be resolved through bellwether trials of representative cases where the juries can address the relevant liability and damages issues, with the Court helping to bridge the gap by weighing in on key evidentiary and legal issues, including by making *Daubert* rulings.

By contrast, Plaintiffs have again requested transfer of their cases as part of an effort to try those cases as *de facto* bellwethers in different jurisdictions irrespective of this Court's careful efforts to identify and select *representative* cases through its current bellwether plan.  This Court recently adopted its Case Management Order Regarding Coordination with State Court Litigation (CMO-26, Dkt. 12222, issued October 25, 2019).  As part of that order, the Court sent a letter to the judge presiding over each state court case to inform those judges about this Court's discovery efforts, case management orders, and current bellwether trial plan.  Among other things, this

US.126225307.02

Court's state court coordination efforts are intended to ensure efficient prosecution of the three bellwether cases that are presently being worked up and that will be tried in this Court over the next year.  Transfer of Plaintiffs' cases under these circumstances would further frustrate the Court's efforts.

Finally, transfer of Plaintiffs' cases to their home districts for trial would create parallel litigation involving the same parties, witnesses, and counsel, which would divert time and focus away from the Court's slate of bellwethers, thereby putting at risk the timely and efficient completion of the Court's bellwether plan.  This is just as true now as it was seven months ago when the Court denied Plaintiffs' previous motions to transfer.

### C. This MDL is still on track for timely completion.

Plaintiffs assert that their cases are ripe for transfer in part because this MDL has been pending for five years. Dkt. 12628, p. 3.[7]  In reality, the length of this litigation is still very much in line with other MDLs of its kind.  Focusing just on active product liability MDLs, there are 23 currently pending MDLs with earlier origination dates than this MDL, and the average length of those MDLs is over 10 years.  This MDL, therefore, is still relatively young, and the Court should proceed with the sound plan it has developed to push this litigation toward resolution.

### CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motions to transfer.  The Court has already denied previous transfer attempts by plaintiffs.  Plaintiffs have given the Court no reason to conclude the result here should be any different.

---

[7]  See JPML, "Pending MDLs By Docket Type", Statistical Report, MDL Statistics Report, availa-ble at https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_Type-January-15-2020.pdf.

US.126225307.02

Respectfully Submitted,

Dated:  January 21, 2020

/s/ *Andrea Roberts Pierson*
Andrea Roberts Pierson, Co-Lead Counsel
Jessica Benson Cox
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204-1750
Telephone: (317) 237-0300
Andrea.Pierson@FaegreBD.com
Jessica.Cox@FaegreBD.com

James Stephen Bennett, Co-Lead Counsel
FAEGRE BAKER DANIELS LLP
110 West Berry Street, Suite 2400
Fort Wayne, Indiana  46802-2322
Telephone: (260) 424-8000
Stephen.Bennett@FaegreBD.com

*Attorneys for Defendants Cook Incorporated,*
*Cook Medical LLC, and William Cook Europe*
*ApS*

- 21 -

US.126225307.02

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2020, a copy of the foregoing DEFENDANTS' COMBINED RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTIONS TO TRANSFER VENUE was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.


/s/ *Andrea Roberts Pierson*

US.126225307.02