# EXHIBIT B

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

Megan Chambers
1895 Rock Creek Dr.
Grove City, OH 43123

and

Joseph Chambers
1895 Rock Creek Dr.
Grove City, OH 43123

      Plaintiffs,

v.

Cook Incorporated
c/o Registered Agent
Corporation Service Company
251 E. Ohio St., Ste. 500
Indianapolis, IN 46204

and

Cook Medical Incorporated a/k/a
Cook Medical, Inc.
c/o Registered Agent
Corporation Service Company
251 E. Ohio St., Ste. 500
Indianapolis, IN 46204

and

Cook Medical, L.L.C.
c/o Registered Agent
Corporation Service Company
251 E. Ohio St., Ste. 500
Indianapolis, IN 46204

and

Cook Group, Inc.
c/o Registered Agent

Case No. _____


Judge_____


Magistrate Judge _____

Case 1:14-ml-02570-RLY-TAB   Document 12688-2   Filed 01/21/20   Page 3 of 31 PageID #:
93192
Case 2:16-cv-00147-GCS-KAJ   Doc #: 1-1 Filed: 02/17/16 Page: 2 of 30 PAGEID #: 2

**Corporation Service Company**
**251 E. Ohio St., Ste. 500**
**Indianapolis, IN 46204**

**and**

**William Cook Europe, ApS**
**Sandet 6**
**4632 Bjaeverskov, Denmark**

**and**

**John/Jane Doe #1-25**
**Addresses Unknown**

**Defendants.**

## COMPLAINT FOR DAMAGES

Demand for Jury Trial

1.      This is an action for damages relating to Defendants' development, testing, assembling, manufacture, packaging, labeling, preparing, distribution, marketing, supplying, and/or selling the defective product sold under the name "inferior vena cava filter" (hereinafter "IVC filter").


### I.      THE PARTIES

2.      Plaintiffs Megan and Joseph Chambers ("Plaintiffs") at all times relevant to this action are citizens of and reside in Franklin County, Ohio.

3.      Defendant Cook Incorporated is an Indiana Corporation with its principal place of business located at 750 Daniels Way, P.O. Box 489, Bloomington, Indiana 47404. The registered agent for Cook Medical Incorporated is Corporation Service Company, 251 East Ohio Street, Suite 500, Indianapolis, Indiana 46204.

4.      Defendant Cook Incorporated is the parent company of Defendant Cook Medical Incorporated. Defendant Cook Medical Incorporated is an Indiana Corporation with its principal place of business located at 750 Daniels Way, P.O. Box 489, Bloomington, Indiana 47404.  The registered agent for Cook Medical Incorporated is Corporation Service Company, 251 East Ohio Street, Suite 500, Indianapolis, Indiana 46204.

5.      Defendant Cook Incorporated is the parent company of Defendant Cook Medical, LLC. Cook Medical, LLC is an Indiana limited liability Company with its principal place of business located at 750 Daniels Way, P.O. Box 489, Bloomington, Indiana 47404.   The registered agent for Cook Medical Incorporated is Corporation Service Company, 251 East Ohio Street, Suite 500, Indianapolis, Indiana 46204.

6.      Defendant Cook Group, Inc. is an Indiana Corporation with its principal place of business located at 750 Daniels Way, P.O. Box 489, Bloomington, Indiana 47404. The registered agent for Cook Group, Inc. is Corporation Service Company, 251 East Ohio Street, Suite 500, Indianapolis, Indiana 46204.

7.      Defendant William Cook Europe ApS is based in Bjaeverskov, Denmark with its principal place of business located at Sandet 6, 4632 Bjaeverskov, Denmark, and regularly conducts business in the State of Indiana and is authorized to do so.  Defendant also carried on solicitations or service activities in the state of Indiana.

8.      Hereinafter, each of the above Defendants shall be collectively referred to as "Cook."

9.      At all times alleged herein, Defendants Cook include and included any and all parent companies, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and

Case 1:14-ml-02570-RLY-TAB   Document 12688-2   Filed 01/21/20   Page 5 of 31 PageID #:
93194
Case 2:16-cv-00347-GCS-KAJ   Doc #: 1-5 Filed: 02/17/16 Page 4 of 30 PAGEID #: 94

organizational units of any kind, their predecessors, successors and assigns and their officers,
directors, employees, agents, representatives and any and all other persons acting on their behalf.

10.     Cook develops, manufactures, sells and distributes medical devices for use in
various medical applications including endovascular cardiology, and surgical products
throughout the United States and around the world.  Cook's products include the Cook Celect
Vena Cava Filter, which is used for the prevention of recurrent pulmonary embolism via
placement in the vena cava.

11.     This Court has jurisdiction over the subject matter of this action and the parties.
This Court is also the proper venue for this action.


## II.     STATEMENT OF JURISDICTION AND VENUE

12.     Plaintiffs incorporate all above paragraphs by reference.

13.     Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over this case because
the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs,
and is between citizens of different States.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and S.D. Ohio Civ. R.
82.1 because a substantial part of the events or omissions giving rise to this action occurred in
Columbus, Franklin County, Ohio, in this District.


## III.     FACTUAL BACKGROUND

15.     Plaintiffs incorporate all above paragraphs by reference.

16.     Defendants designed, researched, developed, manufactured, tested, marketed,
advertised, promoted, distributed, and sold products such as IVC filters that are sold to and

Case 2:18-cv-00114-COS-KAO Doc # 1-1 Filed 02/17/16 Page 5 of 30 PageID #:

marketed as a temporary/retrievable device to prevent, among other things, recurrent pulmonary embolism via placement in the vena cava. One such Defendants' product, the Cook Celect Vena Cava Filter, is introduced into the vena cava via an 8.5 French coaxial introducer sheath system.

17.    The Cook Celect Filter Set is collectively referred to herein as the "Cook Filter."

18.    Defendants sought Food and Drug Administration ("FDA") approval to market the Cook Filter device and/or its components under Section 510(k) of the Medical Device Amendment.

19.    On or about March 19, 2008, Defendants obtained Food and Drug Administration ("FDA") approval to market the Cook Filter device and/or its components under section 510(k) of the Medical Device Amendment.

20.    Section 510(k) allows marketing of medical devices if the device is deemed substantially equivalent to other legally marketed predicate devices without formal review for the safety or efficacy of the said device.

21.    An IVC filter, like the Cook Filter, is a device designed to filter blood clots (called "thrombi") that would otherwise travel from the lower portions of the body to the heart and lungs. IVC filters may be designed to be implanted, either temporarily or permanently, within the vena cava.

22.    The inferior vena cava is a vein that returns blood to the heart from the lower portion of the body. In certain people, and for various reasons, thrombi travel from vessels in the legs and pelvis, through the vena cava into the lungs. Often these thrombi develop in the deep leg veins. The thrombi are called "deep vein thrombosis" or "DVT." Once the thrombi reach the lungs they are considered "pulmonary emboli" or "PE."

Case 1:14-ml-02570-RLY-TAB Document 12688-2 Filed 01/21/20 Page 7 of 31 PageID #:
93196
Case 2:18-cv-00147-GCS-KAJ Doc #: 1-2 Filed: 02/17/16 Page: 6 of 30 PAGEID #: 98

23.     An IVC filter, like the Cook Filter, is designed to prevent thromboembolic events by filtering or preventing blood clots/thrombi from traveling to the heart and/or lungs.

24.     The Cook Celect Filter is a retrievable filter, and is based on the Gunther Tulip filter.

25.     The Cook Celect Filter has four (4) anchoring struts for fixation and eight (8) independent secondary struts to improve self-centering and clot trapping.

26.     On or about February 22, 2008, Plaintiff was implanted with a Cook Celect Filter at Grant Medical Center, 111 S. Grant Avenue, Columbus, Franklin County, Ohio 43215.

27.     On or about March 2, 2015, Plaintiff presented at Mount Carmel Urgent Care in Columbus, Franklin County, Ohio for abdominal pain.  At that time, images of the Cook IVC filter were performed, which revealed struts were missing from the filter and were lodged near Ms. Chambers' kidney and the right ventricle of her heart.

28.     Plaintiff is at risk for future Cook Celect Filter fractures, migrations, perforations and tilting.  She faces numerous health risks, including the risk of death.  For the rest of Plaintiff's life, she will require on-going medical monitoring.

29.     At all times relevant, the Cook Filter was widely advertised and promoted by the Defendants as a safe and effective treatment for prevention of recurrent pulmonary embolism via placement in the vena cava.

30.     At all times relevant, Defendants knew its Cook Filter was defective and knew that defect was attributable to the design's failure to withstand the normal anatomical and physiological loading cycles exerted in vivo.

Case 1:14-ml-02570-RLY-TAB Document 12688-2 Filed 01/21/20 Page 8 of 31 PageID #:
93197
Case 2:18-cv-00147-COS-KAC Doc # 1-16 Filed 02/17/10 Page 7 of 30 PageID #97

31.     The Defendants failed to disclose to physicians, patients, or Plaintiff Megan Chambers that its Cook Filter was subject to breakage and migration or the appropriate degree of risk of perforation and damage to the vena cava wall.

32.     At all times relevant, the Defendants continued to promote the Cook Filter as safe and effective even though the clinical trials that had been performed were not adequate to support long or short term efficacy.

33.     The Defendants concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the Cook Filter, as aforesaid.

34.     The Cook Filter is constructed of conichrome.

35.     The Defendants specifically advertise the conichrome construction of the filter as a frame which "reduces the risk of fracture."

36.     The failure of the Cook Filter is attributable, in part, to the fact that the Cook Filter suffers from a design defect causing it to be unable to withstand the normal anatomical and physiological loading cycles exerted in vivo.

37.     At all times relevant, the Defendants failed to provide sufficient warnings and instructions that would have put the Plaintiff and the general public on notice of the dangers and adverse effects caused by implantation of the Cook Filter, including, but not limited to the design's failure to withstand the normal anatomical and physiological loading cycles exerted in vivo.

38.     The Cook Filter was designed, manufactured, distributed, sold and/or supplied by the Defendants, and was marketed while defective due to the inadequate warnings, instructions, labeling, and/or inadequate testing in light of Defendants' knowledge of the products failure and serious adverse events.

39.     At all times relevant, the officers and/or directors of the Defendants named herein participated in, authorized and/or directed the production and promotion of the aforementioned products when they knew or should have known of the hazardous and dangerous propensities of said products, and thereby actively participated in the tortious conduct that resulted in the injuries suffered by Plaintiffs.

## IV.     FRUADULENT CONCEALMENT

40.     Plaintiffs incorporate all above paragraphs by reference.

41.     Any applicable statutes of limitation have been tolled by the knowing and active concealment and denial of material facts known by Defendants when they had a duty to disclose those facts.  They kept Plaintiffs ignorant of vital information essential to the pursuit of their claims, without any fault or lack of diligence on Plaintiffs' part, for the purpose of obtaining delay on Plaintiffs' part in filing on their causes of action.  Defendants' fraudulent concealment did result in such delay.

42.     Defendants are estopped from relying on the statute of limitations defense because Defendants failed to timely disclose, among other things, facts evidencing the defective and unreasonably dangerous nature of the Celect Filter.

43.     The Defendants are and were under a continuing duty to disclose the true character, quality and nature of the device that was implanted in Plaintiff Megan Chambers, but instead they concealed them.  Defendants' conduct, as described in this complaint, amounts to conduct purposely committed, which Defendants must have realized was dangerous, heedless and reckless, without regard to the consequences or the rights and safety of Plaintiffs.

## V.     CORPORATE/VICARIOUS LIABILITY

44.     Plaintiffs incorporate all above paragraphs by reference.

45.     At all relevant times, each of the Defendants was the agent, servant, partner, aider and abettor, co-conspirator and/or joint venturer of each of the other Defendants herein and was at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture and rendered substantial assistance and encouragement to the other Defendants, knowing that their collective conduct constituted a breach of duty owed to Plaintiffs.

46.     There exists and, at all times relevant, there existed a unity of interest in ownership between certain Defendants and other certain Defendants such that any individuality and separateness between the certain Defendants has ceased and these Defendants are the alter ego of the other certain Defendants and exerted control over those Defendants.  Adherence to the fiction of the separate existence of these certain Defendants as entities distinct from other certain Defendants will permit an abuse of the corporate privilege and would sanction a fraud and/or promote injustice.

47.     At all times relevant, Defendants, and each of them, were engaged in the business of, or were successors in interest to, entities engaged in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, prescribing and/or advertising for sale, and selling products for use by Plaintiff Megan Chambers.  As such, each Defendant is individually, as well as jointly and severally, liable to Plaintiffs for Plaintiffs' damages.

48.    At all times relevant, the officers and/or directors of the Defendants named herein participated in, authorized and/or directed the production and promotion of the aforementioned products when they knew, or with the exercise of reasonable care and diligence should have known, of the hazards and dangerous propensities of said products, and thereby actively participated in the tortious conduct that resulted in the injuries suffered by Plaintiffs.

## VI.    COUNT ONE: NEGLIGENCE

49.    Plaintiffs incorporate all above paragraphs by reference.

50.    At all times relevant to this cause of action, the Defendants, COOK INCORPORATED, COOK INCORPORATED a/k/a COOK MEDICAL, INC., COOK GROUP, INC., COOK MEDICAL LLC, and WILLIAM COOK EUROPE APS, were in the business of designing, developing, manufacturing, marketing and selling sophisticated medical devices, including the Cook Filter.

51.    At all times relevant, the Defendants, COOK INCORPORATED, COOK INCORPORATED a/k/a COOK MEDICAL, INC., COOK GROUP, INC., COOK MEDICAL LLC, and WILLIAM COOK EUROPE APS, were under a duty to act reasonably to design, develop, manufacture, market and sell a product that did not present a risk of harm or injury to the Plaintiff and to those people receiving the Cook Filter.

52.    At the time of manufacture and sale of the Cook Filter, the Defendants, COOK INCORPORATED, COOK INCORPORATED a/k/a COOK MEDICAL, INC., COOK GROUP, INC., COOK MEDICAL LLC, and WILLIAM COOK EUROPE APS, knew or reasonably should have known the Cook Filter:

      a.  Was designed and manufactured in such a manner so as to present an unreasonable risk of fracture of portions of the device;

      b.  Was designed and manufactured so as to present an unreasonable risk of migration of the device and/or portions of the device;

      c.  Was designed and manufactured to have unreasonable and insufficient strength or structural integrity to withstand normal placement within the human body; and/or,

      d.  Was designed and manufactured so as to present an unreasonable risk of perforation and damage to the vena cava wall.

53. Despite the aforementioned duty on the part of the Defendants, COOK INCORPORATED, COOK INCORPORATED a/k/a COOK MEDICAL, INC., COOK GROUP, INC., COOK MEDICAL LLC, and WILLIAM COOK EUROPE APS, they committed one or more breaches of their duty of reasonable care and were negligent in:

      a.  Unreasonably and carelessly failing to properly warn of the dangers and risks of harm associated with the Cook Filter, specifically its incidents fracture, migration, perforation and other failure;

      b.  Unreasonably and carelessly manufactured a product that was insufficient in strength or structural integrity to withstand the foreseeable use of normal placement within the human body;

      c.  Unreasonably and carelessly designed a product that was insufficient in strength or structural integrity to withstand the foreseeable use of normal placement within the human body; and

      d.  Unreasonably and carelessly designed a product that presented a risk of harm to the Plaintiff and others similarly situated in that it was prone to fail.

54. As a direct and proximate result of Defendants' negligence, as described herein, Plaintiff Megan Chambers has suffered and will continue to suffer serious physical injuries, pain

and suffering, mental anguish, medical expenses, economic loss, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

55.    As a direct and proximate result of Defendants' negligence, Plaintiff Megan Chambers has suffered lost wages, employment benefits, and opportunities in an amount to be determined at or before trial, and will lose further wages, employment benefits, and opportunities in the future. Plaintiff Megan Chambers has sustained a permanent impairment of her earning capacity.

56.    As a direct and proximate result of Defendants' negligence, Plaintiff Megan Chambers sustained a permanent loss of enjoyment of life, permanent and substantial physical deformity, loss of use of a limb, loss of a bodily organ system, and a permanent physical functional injury that permanently prevents Plaintiff Megan Chambers from being able to independently care for herself and perform life-sustaining activities.

## VII.    COUNT TWO: STRICT PRODUCT LIABILITY – Failure to Warn

57.    Plaintiffs incorporate all above paragraphs by reference.

58.    Defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the Celect Filter, including the one implanted into Plaintiff, into the stream of commerce and in the course of same, directly advertised and marketed the device to consumers or persons responsible for consumers.

59.    At the time Defendants designed, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the device into the stream of commerce, Defendants knew or should have known the device presented an unreasonable danger to users of the product when put to its intended and reasonably anticipated use. Specifically,

Defendants knew or should have known at the time they manufactured, labeled, distributed and sold the Celect Filter, which was implanted in Plaintiff, that the filter posed a significant risk of device failure (fracture, migration, tilting, and perforation of the vena cava wall) and resulting serious injuries.

60.     Therefore, Defendants had a duty to warn of the risk of harm associated with the use of the device and to provide adequate instructions on the safe and proper use of the device. Defendants further had a duty to warn of dangers and proper safety instructions that they became aware of even after the device was distributed and implanted in Plaintiff.

61.     Despite this duty, Defendants failed to adequately warn of material facts regarding the safety and efficacy of the Celect Filter, and further failed to adequately provide instructions on the safe and proper use of the device.

62.     No health care provider, including Plaintiff's, or patient would have used the device in the manner directed, had those facts been made known to the prescribing healthcare providers and/or ultimate users of the device.

63.     The health risks associated with the device as described herein are of such a nature that ordinary consumers would not have readily recognized the potential harm.

64.     Plaintiff Megan Chambers and Plaintiff's health care providers used the device in a normal, customary, intended, and foreseeable manner, namely as a surgically implanted device used to prevent pulmonary embolisms.

65.     Therefore, the Celect Filter implanted in Plaintiff was defective and unreasonably dangerous at the time of release into the stream of commerce due to inadequate warnings, labeling and/or instructions accompanying the product.

66.     The Celect Filter implanted in Plaintiff was in the same condition as when it was manufactured, inspected, marketed, labeled, promoted, distributed and sold by Defendants.

67.     As a direct and proximate result of Defendants' lack of sufficient warning and/or instructions, Plaintiff Megan Chambers has suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, economic loss, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

68.     As a direct and proximate result of Defendants' lack of sufficient warning and/or instructions, Plaintiff Megan Chambers has suffered lost wages, employment benefits, and opportunities in an amount to be determined at or before trial, and will lose further wages, employment benefits, and opportunities in the future. Plaintiff Megan Chambers has sustained a permanent impairment of her earning capacity.

69.     As a direct and proximate result of Defendants' lack of sufficient warning and/or instructions, Plaintiff Megan Chambers sustained a permanent loss of enjoyment of life, permanent and substantial physical deformity, loss of use of a limb, loss of a bodily organ system, and a permanent physical functional injury that permanently prevents Plaintiff Megan Chambers from being able to independently care for herself and perform life-sustaining activities.

## VIII.    COUNT THREE: STRICT PRODUCT LIABILITY – Defective Design

70.     Plaintiffs incorporate the above paragraphs by reference.

71.     At all times relevant, Defendants developed, tested, designed, manufactured, inspected, labeled, promoted, distributed and sold into the stream of commerce the Celect Filter, including the one implanted in Plaintiff.

72.     The Celect Filter was expected to, and did, reach its intended consumers without substantial change in the condition in which it was in when it left Defendants' possession.  In the alternative, any changes that were made to Celect Filter implanted in Plaintiff were reasonably foreseeable to Defendants.

73.     The Celect Filter implanted in Plaintiff was defective in design because it failed to perform as safely as persons who ordinarily use the product would have expected at the time of use.

74.     The Celect Filter implanted in Plaintiff was defective in design, in that its risks of harm exceeded its claimed benefits.

75.     The Defendants knew that safer alternative designs were available and would have prevented or significantly reduced the risk of the injury presented by Celect Filter and it was economically and technologically feasible at the time the filter left the control of the Defendants to prevent or reduce the risk of such a such a dangerous event by application of existing, reasonably achievable, scientific knowledge.

76.     Plaintiff and Plaintiff's health care providers used the Celect Filter in a manner that was reasonably foreseeable to Defendants.

77.     Neither Plaintiff, nor Plaintiff's health care providers could have by the exercise of reasonable care discovered the devices defective condition or perceived its unreasonable dangers prior to Plaintiff's implantation with the device.

78.     As a direct and proximate result of the Celect Filter's defective design, Plaintiff has suffered and will continue to suffer serious physical injuries, economic loss, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

79.     At all times relevant hereto, the Cook Filter was dangerous and presented a substantial danger to patients who were implanted with the Cook Filter and these risks and dangers were known or knowable at the times of distribution and implantation in Plaintiff, Megan Chambers in 2008.  Ordinary consumers would not have recognized the potential risks and dangers the Cook Filter posed to patients, because its use was specifically promoted to improve health of such patients. The Cook Filter was used by the Plaintiff and her treating physicians in a reasonably foreseeable manner.

80.     The Defendants failed to provide warnings of such risks and dangers to the Plaintiff and her medical providers as described herein.

81.     As a direct and proximate result of the Cook Filter's defects, as described herein, Plaintiff has suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, economic loss, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

82.     As a direct and proximate result of the Cook Filter's defects, Plaintiff Megan Chambers has suffered lost wages, employment benefits, and opportunities in an amount to be determined at or before trial, and will lose further wages, employment benefits, and opportunities in the future.  Plaintiff Megan Chambers has sustained a permanent impairment of her earning capacity.

83.     As a direct and proximate result of the Cook Filter's defects, Plaintiff Megan Chambers sustained a permanent loss of enjoyment of life, permanent and substantial physical deformity, loss of use of a limb, loss of a bodily organ system, and a permanent physical functional injury that permanently prevents Plaintiff Megan Chambers from being able to independently care for herself and perform life-sustaining activities.

## IX. COUNT FOUR: STRICT PRODUCT LIABILITY – Manufacturing Defect

84.     Plaintiffs incorporate all above paragraphs by reference.

85.     Defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the Celect Filter that was implanted in Plaintiff Megan Chambers.

86.     The Celect Filter implanted in Plaintiff contained a condition, which Defendants did not intend, at the time it left Defendants' control and possession.

87.     Plaintiff and Plaintiff's health care providers used the device in a manner that was reasonably foreseeable to Defendants.

88.     As a result of this condition, the product injured Plaintiff and failed to perform as safely as the ordinary consumer would expect when used in a reasonably foreseeable manner.

89.     As a direct and proximate result of the Celect Filter's manufacturing defects, Plaintiff has suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, economic loss, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

90.     As a direct and proximate result of the Celect Filter's manufacturing defects, Plaintiff Megan Chambers has suffered lost wages, employment benefits, and opportunities in an amount to be determined at or before trial, and will lose further wages, employment benefits, and opportunities in the future.  Plaintiff Megan Chambers has sustained a permanent impairment of her earning capacity.

91.     As a direct and proximate result of the Celect Filter's manufacturing defects, Plaintiff Megan Chambers sustained a permanent loss of enjoyment of life, permanent and substantial physical deformity, loss of use of a limb, loss of a bodily organ system, and a

permanent physical functional injury that permanently prevents Plaintiff Megan Chambers from being able to independently care for herself and perform life-sustaining activities.

## X. COUNT FIVE: BREACH OF EXPRESS & IMPLIED WARRANTY

92. Plaintiffs incorporate all above paragraphs by reference.

93. Plaintiff, through her medical providers, purchased the Cook Filter from Defendants COOK INCORPORATED, COOK INCORPORATED a/k/a COOK MEDICAL, INC., COOK GROUP, INC., COOK MEDICAL LLC, and WILLIAM COOK EUROPE APS.

94. At all times relevant, Defendants COOK INCORPORATED, COOK INCORPORATED a/k/a COOK MEDICAL, INC., COOK GROUP, INC., COOK MEDICAL LLC, and WILLIAM COOK EUROPE APS were merchants of goods of the kind including medical devices and vena cava filters (like the Cook Filter).

95. At the time and place of sale, distribution and supply of the Cook Filter to Plaintiff Megan Chambers, the Defendants expressly represented and warranted that the Cook Filter was safe, and impliedly warranted that the product was reasonably fit for its intended purpose and was marketable quality.

96. At the time of Plaintiff's purchase from Defendants, the Cook Filter was not in a merchantable condition, in that:

        a. It was designed in such a manner so as to be prone to a unreasonably high incident of fracture, perforation of vessels and organs, and/or migration;

        b. It was designed in such a manner so as to result in a unreasonably high incident of injury to the organs including the vena cava of its purchaser; and

        c. It was manufactured in such a manner so that the exterior surface of the Cook Filter was inadequately, improperly and inappropriately designed causing the device to weaken and fail.

97. Additionally, implied warranties were beached as follows:

   a. The Defendants failed to provide the warning or instruction and/or an adequate warning or instruction which a manufacturer exercising reasonable care would have provided concerning that risk, in light of the likelihood that the Cook Filter would cause harm;

   b. The Defendants manufactured and/or sold the Cook Filter and that filter did not conform to representations made by the Defendant when it left the Defendant's control;

   c. The Defendants manufactured and/or sold the Cook Filter that was more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner, and the foreseeable risks associated with the Cook Filter design or formulation exceeded the benefits associated with that design. These defects existed at the time the product left the Defendants' control; and

   d. The Defendants manufactured and/or sold the Cook Filter when it deviated in a material way from the design specifications, formulas or performance standards or form otherwise identical units manufactured to the same design specifications, formulas, or performance standards, and these defects existed at the time the product left the Defendants' control.

98. Further, Defendants' marketing of the Cook Filter was false and/or misleading.

99. Plaintiff Megan Chambers, through her attending physicians, relied on these representations in determining which IVC filter to use for implantation.

100. Defendants' filter was unfit and unsafe for use as it posed an unreasonable and extreme risk of injury to persons using said products, and accordingly Defendants breached their expressed warranties and the implied warranties associated with the product.

101. The foregoing warranty breaches were a substantial factor in causing Plaintiffs' injuries and damages as alleged.

102.     As a direct and proximate result of the Cook Filter's defects, as described herein, Plaintiff has suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, economic loss, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

103.     As a direct and proximate result of the Cook Filter's defects, Plaintiff Megan Chambers has suffered lost wages, employment benefits, and opportunities in an amount to be determined at or before trial, and will lose further wages, employment benefits, and opportunities in the future.  Plaintiff Megan Chambers has sustained a permanent impairment of her earning capacity.

104.     As a direct and proximate result of the Cook Filter's defects, Plaintiff Megan Chambers sustained a permanent loss of enjoyment of life, permanent and substantial physical deformity, loss of use of a limb, loss of a bodily organ system, and a permanent physical functional injury that permanently prevents Plaintiff Megan Chambers from being able to independently care for herself and perform life-sustaining activities.


## XI.     COUNT SIX: NEGLIGENT MISREPRESENTATION

105.     Plaintiffs incorporate all above paragraphs by reference.

106.     At all times relevant, and as detailed *supra*, Defendants negligently provided Plaintiff, Plaintiff's health care providers, and the general medical community with false or incorrect information, or omitted or failed to disclose material information concerning the Celect Filter, including, but not limited to, misrepresentations relating to the following subject areas:

   a.   The safety of the Celect Filter;

   b.   The efficacy of the Celect Filter;

   c.   The rate of failure of the Celect Filter; and

d.  The approved uses of the Celect Filter.

107.    The information distributed by Defendants to the public, the medical community
and Plaintiff's health care providers was in the form of reports, press releases, advertising
campaigns, labeling materials, print advertisements, commercial media containing material
representations, which were false and misleading, and contained omissions and concealment of
the truth about the dangers of the use of the Celect Filter. Defendants made the foregoing
misrepresentations knowing that they were false or without reasonable basis.  These materials
included instructions for use and a warning document that was included in the package of the
Celect Filter that was implanted in Plaintiff.

108.    Defendants' intent and purpose in making these misrepresentations was to deceive
and defraud the public and the medical community, including Plaintiff's health care providers; to
gain the confidence of the public and the medical community, including Plaintiff's health care
providers; to falsely assure them of the quality of the Celect Filter and its fitness for use; and to
induce the public and the medical community, including Plaintiff's healthcare providers, to
request, recommend, prescribe, implant, purchase, and continue to use the Celect Filter.

109.    The foregoing representations and omissions by Defendants were in fact false.
The Celect Filter is not safe, fit, and effective for human use in its intended and reasonably
foreseeable manner. The use of the Celect Filter is hazardous to the user's health, and said device
has a serious propensity to cause users to suffer serious injuries, including without limitation, the
injuries Plaintiff suffered.

110.    In reliance upon the false and negligent misrepresentations and omissions made
by Defendants, Plaintiff and Plaintiff's health care providers were induced to, and did use the
Celect Filter, thereby causing Plaintiff to sustain severe and permanent personal injuries.

Case 1:14-ml-02570-RLY-TAB Document 12688-2 Filed 01/21/20 Page 23 of 31 PageID #:
Case 2:16-cv-00547-JES-KRM Document 1 Filed 02/17/16 Page 22 of 30 PageID #: 022
93212

111.    Defendants knew and had reason to know that Plaintiff, Plaintiff's health care providers, and the general medical community, did not have the ability to determine the true facts intentionally and/or negligently concealed and misrepresented by Defendants, and would not have prescribed and implanted same, if the true facts regarding the device had not been concealed and misrepresented by Defendants.

112.    Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects in the form of dangerous injuries and damages to persons who are implanted with the Celect Filter.

113.    At the time Defendants failed to disclose and misrepresented the foregoing facts, and at the time Plaintiff used the Celect Filter, Plaintiff and Plaintiff's health care providers were unaware of said Defendants' negligent misrepresentations and omissions.

114.    Plaintiff, Plaintiff's health care providers and general medical community reasonably relied upon misrepresentations and omissions made by Defendants where the concealed and misrepresented facts were critical to understanding the true dangers inherent in the use of the Celect Filter.

115.    As a direct and proximate result of Plaintiff's and Plaintiff's health care provider's reliance on the foregoing misrepresentations and omissions by Defendants, as described herein, Plaintiff has suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, economic loss, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

116.    As a direct and proximate result of Plaintiff's and Plaintiff's health care providers' reliance on the foregoing misrepresentations and omissions by Defendants, Plaintiff Megan Chambers has suffered lost wages, employment benefits, and opportunities in an amount

to be determined at or before trial, and will lose further wages, employment benefits, and opportunities in the future. Plaintiff Megan Chambers has sustained a permanent impairment of her earning capacity.

117. As a direct and proximate result of Plaintiff's and Plaintiff's health care providers' reliance on the foregoing misrepresentations and omissions by Defendants, Plaintiff Megan Chambers sustained a permanent loss of enjoyment of life, permanent and substantial physical deformity, loss of use of a limb, loss of a bodily organ system, and a permanent physical functional injury that permanently prevents Plaintiff Megan Chambers from being able to independently care for herself and perform life-sustaining activities.

## XII. COUNT SEVEN: LOSS OF CONSORTIUM & ECONOMIC LOSS

118. Plaintiffs incorporate all above paragraphs by reference.

119. At all times relevant, Plaintiff Joseph Chambers was the husband of and resided with Plaintiff Megan Chambers.

120. As a direct and proximate result of Defendants' negligence and Plaintiff Megan Chambers' injuries, Plaintiff Joseph Chambers lost the consortium and support of his wife and expects to incur further losses in the future.

121. As a direct and proximate result of Defendants' negligence and Plaintiff Megan Chambers' injuries, Plaintiff Joseph Chambers cared and provided services for Plaintiff Megan Chambers, and will continue to care and provide services into the future. He therefore suffered losses, and will continue to suffer losses into the future, equal to the reasonable economic value of the care and services provided. *Hutchings v. Childress*, 2008-Ohio-4568, 119 Ohio St. 3d 486 (2008).

## XIII.   THE CASE FOR MEDICAL MONITORING

122.   Plaintiffs incorporate all above paragraphs by reference.

123.   In certain cases, medical monitoring is required to evaluate whether a Celect Filter (or portions of the Celect Filter) has fractured, tilted and/or migrated (collectively referred to herein as "device failure" or "failure").   In order to determine whether failure of the Celect Filter has occurred, imaging studies must be performed.   Typically, these imaging studies will include un-enhanced computed tomography scan (CT Scan) so that the filter may be visualized. CT Scan imaging produces an image of the filter and is able to reveal whether the filter has fractured or migrated.

124.   Patients requiring medical monitoring are recommended to undergo regular and frequent imaging studies of the device or portions of the device at least once or twice annually. As long as the device, or portions of the device, remains within the body of the patient, the potential for future device failure exists.   Consequently, these patients require regular and frequent medical monitoring for the duration of time the device, or portions of the device, remain within their bodies.

125.   Patients eligible for medical monitoring for the Celect Filter or portions of the device need not have experienced past failure of the Celect Filter.   For example, patients who have undergone implant of the Celect Filter frequently learn that the Celect Filter cannot be removed due to the fact that it has "grown into" tissue, but, the fracture, tilt or migration of the device may not yet have occurred.   As a result of the inability to remove the Celect Filter, the device must remain permanently implanted in the patient, for the patient's lifetime.   Although these patients may not yet have experienced device failure, they are at risk for future device failure and require regular and frequent monitoring to evaluate the integrity of the Celect Filter.

In addition to the aforementioned imaging studies, endovascular intervention (typically cardiac catheterization) may also be used by medical professionals to diagnose or discover whether fractured portions of the Celect Filter System have migrated to the heart or lungs. Furthermore, endovascular surgery may assess the nature and extent of the damage resulting from failure of the Celect Filter.

126.     In those instances where device fracture has occurred, and depending on the circumstances particular to the patient, a person may be required to undergo one or all of the following medical procedures:

        a.     CT Scanning or other imaging studies;

        b.     Cardiac Catheterization;

        c.     Open heart surgery; and/or,

        d.     Removal of the Celect Filter from the vena cava.

127.     The Celect Filter was placed in Plaintiff's body on or about February 22, 2008. Plaintiff Megan Chambers discovered struts were missing from the Celect Filter and were lodged near her kidney and right ventricle of her heart no earlier than March 2, 2015. Plaintiff underwent medical treatment as a result of the failure of the Celect Filter. Plaintiff has incurred significant medical expenses and has endured physical pain and suffering, mental anguish, loss of enjoyment of life, and other losses, some of which are permanent in nature. The defective Celect Filter remains in Plaintiff's body as removal was not attempted due to the life-threatening risk associated with the procedure. Plaintiff is required to attend regular physicians' visits and to undergo imaging studies.

128.    As a direct and proximate result of the conduct and defective product of the Defendants, as alleged in this Complaint, Plaintiff Megan Chambers has incurred substantial medical expenses, and will continue to incur substantial medical expenses in the future.

129.    As a direct and proximate result of the conduct and defective product of the Defendants, Plaintiff Megan Chambers has suffered lost wages, employment benefits, and opportunities in an amount to be determined at or before trial, and will lose further wages, employment benefits, and opportunities in the future.  Plaintiff Megan Chambers has sustained a permanent impairment of her earning capacity.

130.    As a direct and proximate result of the conduct and defective product of the Defendants, Plaintiff Megan Chambers sustained a permanent loss of enjoyment of life, permanent and substantial physical deformity, loss of use of a limb, loss of a bodily organ system, and a permanent physical functional injury that permanently prevents Plaintiff Megan Chambers from being able to independently care for herself and perform life-sustaining activities.


## XIV.    THE NECESSITY FOR MEDICAL MONITORING

131.    Plaintiffs incorporate all above paragraphs by reference.

132.    As a direct and proximate result of the conduct and defective product of the Defendants, as alleged in this Complaint, medical monitoring is necessary for Plaintiff Megan Chambers.  Medical monitoring includes:

   a.  Regularly scheduled CT scans or other appropriate imaging studies;

   b.  Potential cardiac catheterization or other endovascular procedure to detect the presence of migrated pieces of the Celect Filter System; and/or,

   c.  Physicians' visits and examinations.

133.     As a direct and proximate result of the conduct and defective product of the Defendants, as alleged in this Complaint, Plaintiff has incurred substantial medical expenses, and will continue to incur substantial medical expenses in the future.

134.     As a direct and proximate result of the conduct and defective product of the Defendants, Plaintiff Megan Chambers has suffered lost wages, employment benefits, and opportunities in an amount to be determined at or before trial, and will lose further wages, employment benefits, and opportunities in the future.  Plaintiff Megan Chambers has sustained a permanent impairment of her earning capacity.

135.     As a direct and proximate result of the conduct and defective product of the Defendants, Plaintiff Megan Chambers sustained a permanent loss of enjoyment of life, permanent and substantial physical deformity, loss of use of a limb, loss of a bodily organ system, and a permanent physical functional injury that permanently prevents Plaintiff Megan Chambers from being able to independently care for herself and perform life-sustaining activities.

## XV.     COUNT EIGHT: NEGLIGENCE & VICARIOUS LIABILITY

136.     Plaintiffs incorporate the above paragraphs by reference.

137.     Defendants John/Jane Doe #1-25 are persons and/or businesses whose names and addresses could not be discovered.

138.     Upon information and belief, Defendants John/Jane Doe #1-25 committed negligent acts and/or omissions which directly and proximately caused Plaintiffs' injuries and damages as stated in this Complaint.

139.     Upon information and belief, Defendants John/Jane Doe #1-25 were vicariously liable for the negligent acts and/or omissions of others which directly and proximately caused Plaintiffs' injuries and damages as stated in this Complaint.  As such, Defendants John Does #1-25 are liable for all injuries and damages as stated in this Complaint.

## XVI.     COUNT NINE:  PUNITIVE DAMAGES

140.     Plaintiffs incorporate all above paragraphs by reference.

141.     The actions and inactions of all Defendants, and or alternatively the employees or agents of Defendants, and their predecessors-in-interest, whether taken separately, or together, were of such a character as to constitute a pattern or practice of intentional wrongful conduct and/or malice resulting in the injury and damages of Plaintiffs.

142.     More specifically, Defendants, or alternatively the employees or agents of Defendants, and their predecessors-in-interest, consciously and/or deliberately concealed risks associated with their product and nevertheless proceeded with conscious indifference to the rights, safety, and welfare of Plaintiff Megan Chambers by failing to act to disclose these risks to her or her healthcare professionals.

143.     At all times relevant, Defendants' actions demonstrated malice, ill will, recklessness, willful and wanton misconduct, and/or a total disregard for the rights and safety of Plaintiff Megan Chambers, which posed a great probability of causing substantial harm, it warrants an award of punitive damages.

**WHEREFORE**, Plaintiffs demand a money judgment against each Defendant **in an amount in excess of Seventy Five Thousand Dollars ($75,000)**, plus interest, attorney fees,

costs and any other damages the Court determines to be fair, equitable and in the interest of justice. Further, Plaintiffs pray for relief on the entire Complaint, as follows: Judgment to be entered against all Defendants on all causes of action of this Complaint, including but not limited to:

1.     Physical pain and suffering in the past and which, in reasonable probability, she will continue to suffer in the future;

2.     Physical impairment and incapacity in the past and which, in reasonable probability, he will continue to suffer in the future;

3.     Pain, suffering and mental anguish in the past and which, in reasonable probability, she will sustain in the future;

4.     Reasonable and necessary medical expenses for treatment received in the past and, based upon reasonable medical probability, the reasonable medical expenses she will need in the future;

5.     Disfigurement in the past and which, in reasonable probability, she will continue to suffer in the future;

6.     Punitive damages;

7.     Plaintiff be awarded full, fair, and complete recovery for all claims and causes of action relevant to this action;

8.     Plaintiff be awarded all appropriate costs, fees, expenses, and pre-judgment and post judgment interest pursuant to the laws of the State of Ohio as authorized by law on the judgments entered in Plaintiff's behalf; and,

10.     Such other relief the Court deems just and proper.

**Please take notice that Plaintiffs demand a trial by jury.**

Case 1:14-ml-02570-RLY-TAB Document 12688-2 Filed 01/21/20 Page 31 of 31 PageID #:
Case 2:16-cv-00047-JCS-KRG Doc. # 1 Filed 02/17/16 Page 30 of 30 PageID #: 90
93220

Respectfully Submitted,

**Kitrick, Lewis & Harris Co., L.P.A.**


/s/ Mark Kitrick
Mark Kitrick
Ohio Bar No.: 0000021
445 Hutchinson Avenue, Suite 100
Columbus, Ohio 43215-5398
Telephone: (614) 224-7711
Fax: (614) 225-8985
Email:  mkitrick@klhlaw.com


/s/ Elizabeth Mote
Elizabeth Mote
Ohio Bar No.: 0086379
445 Hutchinson Avenue, Suite 100
Columbus, Ohio 43215-5398
Telephone: (614) 224-7711
Fax: (614) 225-8985
Email: liz@klhlaw.com

*Attorneys for Plaintiffs*