UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

---

IN RE COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

---

This document relates to:

All MDL Cases Originally Filed in This District

---

### COOK DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO RECONSIDER THE COURT'S DIRECT-FILING AND CHOICE-OF-LAW RULINGS

Plaintiffs' motion for reconsideration (Dkt. 12609) asks the Court to address the "direct-filing" issue for a ***third*** time in less than year. This issue has been fully briefed twice—first in the summer of 2019, in the context of the *Lexecon* debate, and a second time in October 2019, in the context of the debate over the applicable choice-of-law rules as to the statute of limitations for cases originally filed in this District.[1] Both times the Court heard oral argument on the issue, and both times the Court ruled that no direct-filing order exists in this MDL. *See* Entry for Proceedings Held on June 13, 2019, Dkt. 11131, p. 2 ("**There is no direct-filing order entered in this case.**") (emphasis added); Oct. 25, 2019 Hearing Tr., pp. 26:23-27:1 **("The law of the case is there is no direct filing order. . . . I've already ruled that.")** (emphasis added),

---

[1]  The issue has also been briefed or cross-referenced by many individual plaintiffs in their responses to pending dispositive motions. Notably, nearly a dozen Plaintiffs *disagreed* with the PSC's position and *agreed* that the Indiana statute of limitations applied in their cases. *See* Dkts. 10953 (Plaintiff Surles's Response), 10955 (Plaintiff Ray's Response), 10956 (Plaintiff Castillo's Response),10957 (Plaintiff Coleman's Response), 11958 (Plaintiff Boatner's Response), 11959 (Plaintiff Loose's Response), 11965 (Plaintiff Devine's Response), 11969 (Plaintiff Bartoletta's Response), 11986 (Plaintiff Horton's Response), 11989 (Plaintiff Hollebeek's Response) & 12010 (Plaintiff Nitz's Response).

attached as **Exhibit A**.  In light of that fact, long-standing Seventh Circuit precedent compelled the Court's conclusion that Indiana choice-of-law rules must apply in cases originally filed in this District.  *See Autocephalous Greek-Orthodox-Chruch v. Goldberg & Feldman Fine Arts, Inc.*, 717 F. Supp. 1374, 1385 (S.D. Ind. 1989), *aff'd*, 917 F.2d 278, 286 (7th Cir 1990).

In support of their motion, Plaintiffs offer a litany of complaints about the procedural history of this MDL and prior briefing and hearings on this issue, arguing that the Court should reverse its rulings and retroactively treat the cases ***as if*** there had been a direct-filing order in place all along.  Plaintiffs' main basis for this request is a handful of instances in which the parties and Court colloquially referred to cases originally filed in this District as "direct-filed" cases.  Plaintiffs also accuse Cook and its counsel of intentionally misleading Plaintiffs and the Court as to the existence of a direct-filing order.  But the Court considered all of these arguments in full at the October 2019 hearing and concluded that (1) there is no direct filing order in this case, and (2) the Court does not "believe [it has been] misled."  Oct 25. 2019 Hearing Tr., pp. 52:8-9.

Motions for reconsideration should be "rare" and not filed simply as a matter of course whenever a litigant disagrees with a particular outcome.  *See, e.g., Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990).  Plaintiffs' motion here offers nothing new, and it provides no legal basis for the Court to reverse course on the direct-filing issue. Simply put,  many plaintiffs did not file in their home districts and seek transfer from the JPML pursuant to 28 U.S.C. § 1407 (which they could have done), nor did they seek Cook's agreement to and the Court's entry of a direct-filing order (which they also could have done).  As a consequence, all of the cases filed in this Court "originated" in the Southern District of Indiana and are therefore necessarily subject to Indiana's choice-of-law rules.

**ARGUMENT**

**I.    The Court Has Already Addressed the Direct-Filing Issue and There Is No Reason to Disturb the Court's Carefully Considered Rulings on That Issue.**

Plaintiffs' motion for reconsideration of the Court's choice-of-law ruling asks the Court to delve into the substance of the "direct filing" issue for a third time in some six months. As the Court remarked the second time around, the arguments were "déjà vu all over again for me here." Oct. 25, 2019 Hearing Tr., pp. 26:23-27:1. To state the obvious, revisiting this issue for a third time is unproductive and generates unnecessary delay and costs, as focus is turned away from pressing live issues that require the Court's and parties' attention.

Plaintiffs have long known there is no direct filing order in this MDL. They have never, at any time, proposed to Cook or this Court the entry of a direct filing order. Despite repeated requests by this Court, Plaintiffs have never been able to point the Court to a single entry in the MDL docket that constitutes a direct filing order, much less drafts exchanged between the parties or proposed to the Court. Nearly two years ago, this Court raised *sua sponte* its original jurisdiction over cases filed in the Southern District of Indiana, noting "I have to remand these to myself, I guess." *See* May 2, 2018 Hearing Tr., p 17:9-23, attached as **Exhibit B**. Plaintiffs did not seek a direct filing order in 2018 or anytime thereafter.

After formal briefing and argument on Plaintiffs' motion to transfer 15 cases in early 2019, the Court noted again that "the home district is here" and therefore "a lot of these cases I'd be transferring these cases to myself. April 29, 2019 Hearing Tr., p. 59:5, 17-18, attached as **Exhibit C**. Plaintiffs did not seek a direct filing order in April 2019 or anytime thereafter.

The lack of any direct filing order was formally briefed and argued more than nine months ago when Plaintiffs argued that the Supreme Court's decision in *Lexecon* permitted them to prevent this Court's bellwether trials. *See* Pls.' Bench Brief on *Lexecon*, Dkt. 10715.

- 3 -

Plaintiffs also argued that *Lexecon* entitled them to "remand" all cases to their home states in a global motion to remand and transfer that they filed around the same time (Dkts. 10438-39). After the issue was fully briefed, the Court devoted the bulk of its June hearing to oral argument on the issue. There and then the Court ruled: **"[t]here is no direct-filing order entered in this case."** *See* Entry for Proceedings Held on June 13, 2019, Dkt. 11131, p. 2 (emphasis added). In the written order that followed the hearing, the Court noted that "the partied agree[d] that the Southern District of Indiana is a proper venue under 28 U.S.C. § 1391" based on the Cook Defendants' residence in this District. *Id.* As a result, the Court **"has complete authority over cases originally filed in this court, as it would over any other case originally filed in this district."** *Id.* The Court further noted that complete authority includes the ability to preside over trial in 23 of the 24 of the bellwether pool cases that were originally filed in this District. *See id.*

In October 2019, the direct-filing issue arose again when Cook asked as part of its motion for summary judgment for the Court to determine that Indiana's choice-of-law rules require the Court to apply Indiana's two-year statute of limitations to cases originally filed in this Court (Dkts. 11725-26). In its briefing, the PSC did not dispute that in every other tort case filed originally in this District, governing federal and state law requires application of Indiana's statute of limitations. Instead, the PSC devoted their argument to re-hashing the direct-filing issue; that issue, according the PSC, was determinative as to which jurisdiction's choice-of-law rules would be applied.

The Court patiently considered the parties' respective positions and affirmed its ruling from June, stating at the hearing **"[t]he law of the case is there is no direct filing order. . . . I've already ruled that**." Oct. 25, 2019 Hearing Tr., pp. 26:23-27:1 (emphasis added). "The cases at issue were originally filed in the Southern District of Indiana, Indianapolis Division," the

Court said, "**and are not 'direct-filed' cases**—i.e. cases treated as if they originated in the plaintiff's home district and had been transferred to this district by the [JPML] pursuant to Section 1407." *See* Entry on Oct. 25, 2019, Dkt. 12256, p.1 (emphasis added). Having determined that the cases at issue were originally filed in this District and that there was no agreement or order treating them as if they were filed elsewhere, the Court ruled that Indiana's statute of limitations would apply. *See id.*

The Court's ruling rests on two well-established legal principles:

1. In diversity cases, federal courts apply forum law on substantive issues, and that includes the forum's choice-of-law rules. Indeed, federal courts have consistently applied the forum's choice-of-law rules since at least 1941, when the Supreme Court definitively held that "[t]he conflict of laws rules to be applied by the federal court in [the forum state] must conform to those prevailing in [the forum] state court." *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941). In recent years, this Court has dutifully followed *Klaxon*. *See, e.g., Couch v. Wilco Life Ins. Co.,* 363 F. Supp. 3d 886, 893 (S.D. Ind. 2019); *Shifrin v. Liberty Mut. Ins.*, 991 F. Supp. 2d 1022, 1034 (S.D. Ind. 2014); *Nickles v. Heleine*, 460 F. Supp. 2d 886, 889 (S.D. Ind. 2005).

2. Under Indiana state law, the statute of limitations is considered procedural in nature, and therefore the Indiana statute of limitations applies to cases filed in federal court in Indiana, regardless of whether the plaintiff is from Indiana or not. This has been the rule in Indiana for decades. *See Lee v. Estate of Cain*, 476 2d 922, 924 (Ind. Ct. App. 1985) ("It is well-settled that the law of the forum state governs in procedural matters and that limitations statutes, being procedural in nature, fall within the rule.") (citing *Horvath v. Davidson*, 264 N.E.2d 328, 332 (Ind. 1970)).

Plaintiffs argue, however, that these well-established rules don't apply to them. They say that there is a direct-filing order in place, and that if there isn't, their cases should be treated as if there were. According to Plaintiffs, this allows them to avoid Indiana's choice-of-law rules, because a direct-filing order would require their cases to be treated as if they had been filed in their home states, and not Indiana. But, again, that issue has already been addressed by this Court—twice. Under the Court's prior rulings, Plaintiffs' cases are no different than any other cases originally filed here, because there is no direct-filing order—full stop. Accordingly, the Court should deny Plaintiffs' motion for reconsideration and continue to apply Indiana choice-of-law rules and the Indiana statute of limitations to cases originally filed in this District.

## II.     None of the Plaintiffs' Arguments Can or Should Change the Law of the Case.

Plaintiffs raise various arguments in their motion for reconsideration as part of an effort to undermine the Court's well-considered rulings. But none of those arguments change the facts or the law. There is no direct-filing order and Plaintiffs' cases cannot be treated as if there were. That is the law of the case, and it should remain the law of the case.

### A.     There is no legal basis to treat cases filed in the Southern District of Indiana treated as if there were a direct-filing order in place.

Plaintiffs dismiss this Court's order differentiating their cases for choice-of-law purposes based on where their cases were filed as "arbitrary." Pls. Mot. at 14. In doing so, they betray a profound misunderstanding of the federal statutes governing jurisdiction and venue on which this Court's prior rulings are grounded.

Under the MDL statute, 28 U.S.C. § 1407, cases involving similar questions of fact may "be transferred to any district for coordinated or consolidated pretrial proceedings." "Transfer" is the key word; nothing in this statute gives plaintiffs the right to *file* their cases directly in an MDL. Therefore, if a plaintiff does file a case in an MDL court without an independent basis for

US.126322507

jurisdiction and venue, the case is subject to dismissal, just like any other case where jurisdiction is lacking or venue is improper. There are only two potential ways around this problem: either (1) file the case in the plaintiff's home district and have it transferred to the MDL court pursuant to section 1407, or (2) enter into an express agreement with the defendants, to be approved by the MDL court, to file cases directly in the MDL—that is, obtain a direct-filing order.[2] A direct-filing order is an express agreement and order creating a legal fiction that cases filed originally in the MDL court are treated as if they were originally filed elsewhere. A direct filing order typically direct that such cases will be transferred to another jurisdiction for trial at the conclusion of MDL proceedings (*e.g.*, the place where plaintiff lives or where the product at issue was sold), require use of the choice-of-law rules applicable in the "home" district, or specify other extra-statutory arrangements that the parties and Court may deem worthwhile in the context of a specific MDL.

The Court has found, and the parties have agreed, that the Cook Defendants are citizens of Indiana and thus are "at home" in the Southern District of Indiana for purposes of personal jurisdiction and venue. *See* Entry for Proceedings Held on June 13, 2019, Dkt. 11131, p. 2 (noting "that the Southern District of Indiana is a proper venue under 28 U.S.C. § 1391"). *Id.* Thus, when many (but not all) Plaintiffs ***chose*** to file their cases here instead of in their local district court, the Court had no choice but to accept those filings, for they were brought in a proper venue. Therefore, without some ***express extra-statutory agreement*** and ***court order*** to treat these cases in a special way—a direct filing order—the only option under the law is to treat

---

[2] While direct-filing orders have become commonplace in MDLs, they also have been rejected by some MDL judges as having drawbacks, including by Judge Rebecca Pallmeyer in the *NexGen MDL* litigation. *See* Oct. 25, 2019 Hearing Tr., pp. 36-38 (portion of previous hearing on this issue discussing *NexGen* litigation). Regardless, a defendant cannot be forced to waive its jurisdictional and venue rights, or any other rights, by entering into a direct-filing agreement; a defendant must do so voluntarily.

these cases like any other case filed originally in this District. *See also* June 13, 2019 Hearing Tr. p. 59:9-18 ("There's no direct filing order. . . . You can't do it any other way. . . Without express agreement."), attached as **Exhibit D**. As the Court ruled last June: it "has complete authority over cases originally filed in this court, as it would over any other case originally filed in this district." Entry for Proceedings Held on June 13, 2019, Dkt. 11131, p. 2.

>       **B.**     **Plaintiffs' reading of the caselaw is unpersuasive because they acknowledge that all but one of the courts in those cases had entered formal direct-filing orders.**

Plaintiffs spend several pages rehashing arguments based on case law that the parties have already debated—twice. *See* Pls. Mot. at 8-13. In the interest of brevity, Cook incorporates by reference its discussion of the relevant case law from its previous briefs on these issues – all of which supports that cases filed in the Southern District of Indiana in the absence of an express direct filing order are cases within this Court's original jurisdiction. *See* Cook Defs.' Resp to Pls.' Bench Brief [on *Lexecon*], Dkt. 10786; Cook Defs.' Notice of Supplemental Authority in Support of Their Position on the *Lexecon* Issue, Dkt. 10987; Dkt. 11726 at 9-12 (choice-of-law section of Cook's summary judgment brief); Cook Defs.' Reply Memorandum to PSC's Response to Cook's Omnibus Mot. for Summary Judgment Based on Statute of Limitations, Dkt. 12172.

Suffice it to say, with one exception addressed below, Plaintiffs acknowledge that every case discussed in the prior briefing on this issue had in place a formal direct-filing order. *See* Pls. Mot. at 8-13. That includes *Dobbs*—the Seventh Circuit case on which Plaintiffs principally have relied to argue their cases should be treated as if they were not filed in the Southern District of Indiana. *See id.* (discussing cases analyzed in previous briefing). While Plaintiffs may quibble with the scope of those orders, there is no dispute that in each instance the MDL court

US.126322507

had entered an order expressly permitting direct filing.³  This Court has never entered such an order.  That is the law of the case.  *See, e.g.,* June 13, 2019 Hearing Tr., p. 59:9-10 ("You're making this so much more complicated than it needs to be.  **There's no direct-filing order**."); Entry for Proceedings Held on June 13, 2019, Dkt. 11131, p. 2 ("**There is no direct-filing order entered in this case**."); Oct. 25, 2019 Hearing Tr., pp. 26:23-27:1 ("**The law of the case is there is no direct filing order**. . . .  I've already ruled that."); Entry on Oct. 25, 2019, Dkt. 12256 at 1 ("The cases at issue were originally filed in the Southern District of Indiana, Indianapolis Division, and **are not 'direct filed' cases** . . .") (emphasis added).⁴

Plaintiffs argue that some of the direct-filing orders in other MDLs cases do not address choice-of-law issues or do not do so specifically enough.  But that is irrelevant.  The issue in this

---

³ *See* Dkt. 10786-2 (attaching as exhibit direct-filing order from MDL where case at issue in *Dobbs v. DePuy Orthopedics, Inc.*, 842 F.3d 1045 (7th Cir. 2016) had first been litigated (direct-filing order stating that "[i]n order to eliminate delays associated with transfer of cases in or removed to other federal district courts" the court would permit direct filing and that "[t]he fact that a case was directly filed in MDL 2197 pursuant to this Order will have no impact on the choice of law to be applied . . .")); *In re Watson Fentanyl Patch Prods. Liab. Litig.,* 977 F. Supp. 2d 885, 887 (N.D. Ill. 2013)("The present case is one of a handful of cases that originated in other districts but were directly filed here pursuant to an agreed-upon procedure, common in MDL product liability cases, that the Court approved"); *In re Yasmin & Yaz*, 2011 WL 1375011 at *4, n.2 (S.D. Ill. Apr. 12, 2011) ("the agreed order entered in this MDL that allows for direct filing expressly states that the parties' agreement to permit direct filing would not impact the choice of law that would otherwise would apply to the direct filed cases."); *In re Fresenius Granuflo/NaturaLyte Dialysate Prods. Liab. Litig.*, 76 F. Supp. 3d 294, 299 (D. Mass 2015) ("CMO-7 created a procedure by which plaintiffs could file their cases directly into the MDL without first being transferred through the JPML"); *Wahl v. Gen. Elec. Co.*, 983 F. Supp. 2d 937, 940 (M.D. Tenn. 2013) (noting the "MDL [c]ourt issued [a direct-filing order enumerated as CMO-3 that] permitted potential plaintiffs to file actions in the Southern District of Ohio, whether or not jurisdiction or venue was otherwise proper.").

⁴ Plaintiffs suggest that they were deprived of the opportunity to distinguish these cases because Cook raised them by reply brief ahead of the October hearing.  To the contrary, these same cases were debated in the briefing ahead of the June hearing so they were known to Plaintiffs.  Moreover, Plaintiffs did not ask the court for permission to file a surreply if they had felt one was warranted and they omit the fact that their discussion of the *Sales-Orr* briefing and order, which featured prominently as part of their hearing presentation, was not part of their own briefing.  Nonetheless, both parties addressed all those issues and the orders from the other MDLs at the October hearing.

US.126322507

MDL is not that the Court expressly permitted "direct filing" without addressing the choice-of-law implications of that ruling. Instead, the issue here is that Plaintiffs chose to file their cases without **any** direct-filing order. No direct-filing order was ever requested by Plaintiffs or entered by the Court, and Cook had no opportunity to consider or object to any such order.

With respect to *Avandia*, the court's opinion makes clear that it permitted direct filing because the rules of the JPML "allow cases to be filed directly into this District..." *In re Avandia Marketing, Sales Practices & Prods. Liab. Litig.*, 2012 WL 3205620, at *2 (E.D. Pa. Aug. 7, 2012). There is no discussion of the basis for the court's permission to allow direct filing, and no indication whether that issue was contested (as it is here). Indeed, the *Avandia* court had no need to consider the issue because the application of the law of plaintiffs' home state was noted to be consistent with Pennsylvania's choice-of-law rules. *See id*. Nevertheless, the *Avandia* court did expressly allow for direct filing of cases, and it did so apparently with the parties' consent—just like in every other case Cook has cited.

Plaintiffs also argue that the Court should treat this litigation as if there were a direct-filing order in place based on certain things the Court and the parties have said or written in the course of the litigation—*i.e.*, an *implied* direct-filing order. *See* Pls. Mot. at 6 (collecting docket entries in bulleted list). But they cite no authority that would allow the Court to do this, and that's because there is no such authority.

As an initial matter, that an agreement cannot be created in such vague circumstances is clear from Seventh Circuit case law in similar contexts involving agreements and contracts that Cook has analyzed in prior briefing on this issue. *See* Cook Defs.' Notice of Supplemental Authority in Support of Their Position on the *Lexecon* Issue, Dkt. 10987, pp. 5-6. For example, the Seventh Circuit explained in a contract dispute case that a forum-selection clause would "not

be enforced unless there is some further language indicating the parties' intent to make venue exclusive." *Muzumdar v. Wellness Int'l Network, Ltd.* 438 F.3d 759, 762 (7th Cir. 2006); *see also LIBOR-Based Fin. Instruments Antitrust Litig.*, 2015 WL 6243526, at *21 (S.D.N.Y. Oct. 20, 2014) (holding that plaintiff cannot "unilaterally change venue" by amending the complaint and "instead must move for a change of venue").

The problem with Plaintiffs' argument regarding the allegations in their complaints is twofold. First, Plaintiffs have never been clear in their preference for treating their cases as "originating" in their home states. For every instance in which Plaintiffs have indicated a preference for their home states as a venue, they have made contradictory statements acknowledging that the Southern of District of Indiana is a proper venue—indeed, an ideal venue:

- In their briefing before the JPML advocating for the creation of the MDL, Plaintiffs claimed "***it is hard to imagine a more appropriate forum than that of where the Defendants made, marketed and sold the product and where the Defendant is headquartered***"—the Southern District of Indiana. Pls.' Memo. in Supp. of Mot. for Trans. & Coordination or Consolidation Under 28 U.S.C. §1407, p. 8, attached as **Exhibit E** (emphasis added).

- In Paragraph 27 of their complaint they allege that venue is proper "in the federal judicial district of each Plaintiff's state of residence," but in the very next paragraph they allege that "[a] substantial amount of activity giving rise to the claims occurred in this District, and Defendants may be found in this District. ***Therefore, venue is proper in this jurisdiction under 28 U.S.C. §1391.***" *Compare* Master Complaint Dkt. 213, ¶ 27 *with id.*, ¶ 28 (emphasis added).

- Similarly, paragraph 7 of the short-form complaint has a blank space where a plaintiff can fill in the district where venue would otherwise be proper. but Paragraph 9 then has space where Plaintiffs incorporate by reference the venue allegations from the master complaint, including the paragraph alleging that venue is proper in ***this*** District

Thus, Plaintiffs in their master and short-form complaints pled two potentially proper venues, and therefore they indicate no clear preference for treating the case as originating in one venue

over the other.  Even if they did, their preference cannot trump the fact that the plaintiffs *chose* to file in *this* venue, without a direct-filing order.  Under that circumstance, the Court had no choice but to apply Indiana's choice-of-law rules and, in turn, Indiana's statute of limitations.

Second, and more fundamentally, allegations in a complaint are just that: allegations. And in its master answer, Cook responded to those allegations by denying that another venue was appropriate.  *See* Cook Defs.' Am. Ans., Dkt. 8080, ¶ 27.  Likewise, Cook's master answer serves as a general denial of all the allegations in the short-form complaints.  *See* Notice of Agreement, Dkt. 318, ¶ 4 ("Defendant's appearance alone shall serve as a general denial of the allegations in the Short-Form Complaint and confirmation that the Defendants adopt the Master Answer and Affirmative Defenses").  For these reasons, the fact that the parties may have negotiated the form of the short-form complaint at arms-length is irrelevant. Cook merely agreed that Plaintiffs could use the short-from complaint procedure; it did not agree to the substance of any of the allegations that would be made in that short-form complaint.

***Ultimately, Plaintiffs do not and cannot cite a case in which any court has ever found an implied direct filing order, as Plaintiffs seek here***.  There is no such thing, as this Court has repeatedly noted.  *See* June 13, 2019 Tr. p. 59:9-18 ("There's no direct filing order… You can't do it any other way. . . Without *express* agreement.") (emphasis added).

    **C.**     **The Court has already considered the history surrounding the dispositive briefing and orders in the *Graham* and *Sales-Orr* cases and determined that the terminology used is not the equivalent of a direct-filing order.**

Plaintiffs' brief also seeks to re-litigate references to "direct-filed cases" in pervious summary-judgment briefing and orders on procedural issues in *Graham* and *Sales-Orr*. Plaintiffs' argument boils down to a plea to the Court that it treat a few instances of Cook and the

Court using the term "direct-filed cases" to refer to cases originally filed in this District as the equitable equivalent of a direct-filing order.

This argument has been fully considered by the Court and rejected. At the October hearing, Plaintiffs premised their argument on the statements in the *Graham* and *Sales-Orr* briefs and orders. In response, the Court confirmed what it had found at the June hearing: "I don't find that there is a sufficient direct filing order in this case." Oct. 25, 2019 Hearing Tr., pp. 53:9-10.

At the October hearing, the Court also squarely addressed the accusations levied by Plaintiffs against Cook that it had misled the Court about the factual record on this issue:

> On the motion for summary judgment, I don't believe that the Court has been misled—intentionally misled by either side throughout this entire litigation. Both sides have been [handling] very complex litigation. **Both sides have been very professional and I believe direct and honest with the Court.** So if I had believed or at any time if I do believe I'm being misled by either side, I'll let you know about that pretty quickly and then we'll deal with that at that time.

Oct. 25, 2019 Hearing Tr., p. 52:7-14 (emphasis added). The reality is that a case that is originally filed in an MDL is in a very loose sense a "direct-filed" case. And that is how defense counsel and the Court used the term in the instances at issue—in a plain-language, loose sense. No one reasonably could have been misled, particularly given that the Court has never entered a direct-filing order in this case, and that for two years or more the Court has expressly noted its original jurisdiction over the cases. *See, supra,* pp. 3-4.

### III.    Plaintiffs Cannot Meet the Legal Standard for Reconsideration, and They Should Not Be Permitted to Relitigate Issues Previously Decided by the Court.

This Court has previously explained that, consistent with Seventh Circuit precedent, "[a] motion to reconsider serves a limited purpose and should be used neither to introduce new evidence that was available during the original consideration nor to introduce new legal theories." *Higgins v. Koch Dev. Corp.*, 2013 WL 12290826, at *1 (S.D. Ind. Nov. 25, 2013)

- 13 -

(internal citation omitted).  "Instead, such a motion is proper where the court has 'patently misunderstood a party, or has made a decision outside the adversarial issues presented to the court by the parties, or has made an error not of reasoning but of apprehension.'"  *Id.* (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990), and *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)).  A motion to reconsider is also proper if a "controlling or significant change in the law or facts" occurs since the initial submission of the initial issue to the court.  *Higgins*, 2013 WL 12290826, at *1.  "Problems such as these rarely arise, though, and 'the motion to reconsider should be equally rare.'"  *Id.* (quoting *Bank of Waunakee*, 906 F.2d at 1191).

Here, Plaintiffs' motion for reconsideration raises the direct-filing issue for a third time in roughly six months and is premised entirely on factual and legal points that were known (or knowable) to Plaintiffs and their leadership the first time this issue was litigated.  Under these circumstances, Plaintiffs' motion for reconsideration should be rejected on its face under this Court's and the Seventh Circuit's standards.  The Court neither misunderstood Plaintiffs nor has any new material factual evidence or legal authority come to light.  *See Higgins*, 2013 WL 12290826, at *1; *Bank of Waunakee*, 906 F.2d at 1191.

Plaintiffs' filing of this particular motion to reconsider is not a novel event.  Over the last six months, Plaintiffs' leadership have attempted to re-litigate many adverse decisions from this Court.[5]  The byproduct of this litigation strategy is delay and inefficiency as the Court's and

---

[5] In addition to asking the Court to address the substance of the direct-filing issue for a third time, Plaintiffs have recently moved to reconsider this Court's detailed 40-plus page order and opinion granting a new trial in a *Brand* case (Dkt. 12679) and have filed pending motions to transfer in several cases six months after the Court denied a previous motion to transfer in those same cases (Dkts. 12504, 12514 & 12616-28).  This past summer individual plaintiffs also filed dozens of motions to vacate/reconsider the Court's order dismissing their cases for failure to comply with the Court's categorization requirements and deadlines.

- 14 -

US.126322507

Cook's time and resources are spent going over old ground instead of focusing their time and energy on the important work still left to be accomplished in this MDL.

Under federal law, "[a]ny attorney. . . who so multiplies the proceedings in any case unreasonably or vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct. 28 U.S.C. § 1927. Having to litigate an issue for a third time, without any discernible change in applicable law or relevant facts is precisely the kind of needless and unreasonable litigation contemplated by this statute and other relevant law governing sanctions. While Cook is not seeking its fees or other sanctions here, it notes the considerable delay and expense Plaintiffs' repeated motions to reconsider create.

## CONCLUSION

For the foregoing reasons and the reasons detailed in Cook's previous briefs addressing the same underlying issues, the Court should: (1) deny Plaintiff's motion for reconsideration, and (2) continue to apply Indiana's statute of limitations in cases that were originally filed in this District.

Respectfully Submitted,

Dated: January 23, 2020

/s/ *Andrea Roberts Pierson*
Andrea Roberts Pierson
Jessica Benson Cox
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2500
Indianapolis, Indiana 46204
Telephone:   (317) 237-0300
Andrea.Pierson@FaegreBD.com
Jessica.Cox@FaegreBD.com

James Stephen Bennett
FAEGRE BAKER DANIELS LLP
110 West Berry Street, Suite 2400
Fort Wayne, Indiana 46802
Telephone:     (260) 424-8000
Stephen.Bennett@FaegreBD.com

*Attorneys for the Defendants Cook Incorporated, Cook Medical LLC, and William Cook Europe ApS*

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2020, a copy of the foregoing **COOK DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO RECONSIDER THE COURT'S DIRECT-FILING AND CHOICE-OF-LAW RULINGS** was filed electronically and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.

/s/ *Andrea Roberts Pierson*

US.126322507