IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC. IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates to:
    Michael Parker, 1:15-cv-00597
    Patricia Pemberton, 1:16-cv-00432
    Timothy Hall, 1:16-cv-01083
    Megan Chambers, 1:16-cv-06031
    Forrest Gibbs, 1:17-cv-01785

## PLAINTIFFS' COMBINED REPLY TO THE COOK DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTIONS TO TRANSFER VENUE

Plaintiffs Michael Parker, Patricia Pemberton, Timothy Hall, Megan Chambers, and Forrest Gibbs file this reply to the Cook Defendants' Opposition in Response to Plaintiffs' Motions to Transfer Venue ("Cook Response") and respectfully show the Court the following:[1]

### INTRODUCTION

Cook's Response lays bare its litigation strategy: warehouse thousands of cases in the MDL for as long as possible to deny injured plaintiffs their constitutionally guaranteed day in court. The Seventh Amendment to the United States Constitution guarantees each plaintiff "the right of trial by jury." By caging cases in the MDL, Cook is gearing this litigation to what one

---

[1] As Cook correctly points out, Plaintiff Megan Chambers filed her case in the Southern District of Ohio, and the JPML then transferred her case to this MDL via 28 U.S.C. § 1407. Thus, while the Court can transfer plaintiff Chambers's case back to the Southern District of Ohio under 28 U.S.C. § 1404, it is actually obligated to remand her case back to the Southern District of Ohio "at or before the conclusion of such pretrial proceedings" pursuant to section 1407 and *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26, 118 S.Ct. 956, 962 (1988) (The use of the word "shall . . . creates an obligation impervious to judicial discretion."). To accomplish this automatic remand under section 1407, the plaintiff need not file a motion. The Court may and should fulfill the *Lexecon* obligation *sua sponte*, thereby remanding the case of Megan Chambers to the Southern District of Ohio.

1

commentator has termed the "slowest common denominator" in the hope of running up costs and delaying indefinitely the right to jury trial for each injured Plaintiff.[2] Cook's strategy is the very opposite of the "interest of justice" set forth in the change of venue statute: 28 U.S.C. § 1404(a). The Court should see through Cook's cynical strategy and in the interest of justice grant plaintiffs' motions to transfer to ensure that plaintiffs have the opportunity to exercise their right to trial by jury.

Moreover, Cook's response ignores the sole purpose of not just this, but any MDL – to conduct *pretrial* proceedings. 28 U.S.C. § 1407(a) allows the Judicial Panel on Multidistrict Litigation to combine civil actions involving one or more common questions of fact for the purpose of conducting "coordinated or consolidated pretrial proceedings." Thus, the MDL is a creature of statute existing for the purpose of conducting pretrial proceedings, not for the purpose of trying hundreds or thousands of cases. Indeed, warehousing thousands of cases in any MDL without the possibility of trial would not just thwart the interest of justice, but it would also defeat section 1407(a)'s statutory command for the MDL to "promote the just and efficient conduct of such actions." Given the plain language of the MDL statute, no one – including Cook – can honestly believe that this MDL was created for the purpose of conducting countless trials, whether or not such cases are "direct filed."[3] Applying the clear meaning of the MDL statute, it becomes apparent why numerous district courts have routinely transferred direct filed cases under Section 1404(a) at

---

[2] *See* Cory Tischbein, *Animating the Seventh Amendment in Contemporary Plaintiffs' Litigation: The Rule, or the Exception?*, 16:1 Journal of Constitutional Law, 233, 258 (2013). Cook's response affirms the relevance of the "slowest common denominator" label: "Focusing just on active product liability MDLs, there are 23 currently pending MDLs with earlier origination dates than this MDL, and the average length of those MDLs is over 10 years." *See* Response at 20 (emphasis added).

[3] Contrary to Cook's very misleading argument, plaintiffs never supported creation of this MDL in the Southern District of Indiana for purposes of trial. Consistent with section 1407(a), plaintiffs appropriately supported creation of this MDL only for purposes of conducting streamlined discovery and the resolution of other common *pretrial* issues. The Court should not allow the Cook Defendants to conflate these two very different issues.

or before the conclusion of pretrial proceedings. The Court should follow this routine and grant Plaintiffs' Motion to Transfer.

## SUMMARY OF ARGUMENT

Cook's response glosses over key facts and sets forth numerous meritless arguments.

- The response is remarkable because it never even references plaintiffs' Short Form Complaint or the relevant venue provision. Cook never explains why it agreed to language in the Short Form Complaint permitting Plaintiffs to choose their own venue – and Cook never explains why it is refusing to honor that clause. The interest of justice commands abiding by the unambiguous venue provision of the Short Form Complaint and rejecting Cook's attempt to nullify the clear language that it helped draft.

- Cook concedes that the most important factor in weighing transfer is the convenience of the witnesses and the ability to obtain compulsory process over non-party witnesses. Here, plaintiffs' physicians and health care providers are crucial non-party witnesses necessary to testify about the damages, injuries, and pain and suffering caused by Cook's IVC filters. These non-party witnesses are located in plaintiffs' home states of Missouri, North Carolina, Ohio, Tennessee and Texas. This analysis heavily favors transfer.

- Cook argues that pretrial proceedings have yet to conclude, but ignores the reality that the Court has conducted two jury trials. If the Court has not concluded pretrial proceedings, then how did it conduct two trials? The answer: the Court resolved numerous *Daubert* motions, ruled on motions for summary judgment, and conducted common fact and expert discovery – not merely corporate discovery, which even Cook agrees is finished. The Court has also presided over case categorization and settlement discussions. Thus, pretrial proceedings are over. Finally, Cook's reference to guidelines in the Duke Law Manual is interesting but irrelevant, because the Court has already carefully adhered to these so-called "best practices."

- Cook attempts to bootstrap its argument regarding the status of pretrial proceedings by promising to file numerous additional motions in "certain cases." This begs an important question: If these motions are so important, why has Cook waited to file them? In any event, motions aimed at "certain cases" (1) do not involve "common questions of fact," (2) are not appropriate for the MDL's "consolidated pretrial proceedings," and (3) are best reviewed in the individualized setting of each plaintiff's home forum, rather than inside the MDL. Importantly, Cook's response does not state that any of these potential future motions would apply to any of the plaintiffs who have filed this Motion to Transfer.

- Cook's conclusory personal jurisdiction argument is without merit because the Cook Defendants deliberately designed, manufactured, marketed and sold their IVC filters with the intent that their product would reach states such as Missouri, North Carolina, Ohio, Tennessee and Texas. In fact, the Cook Defendants' IVC filters did reach those states and caused plaintiffs' injuries. Therefore, the Cook Defendants both directly and indirectly

3

purposefully availed themselves of Plaintiffs' home states, and personal jurisdiction would not offend traditional notions of fair play and substantial justice.

## ARGUMENT

**I. Tellingly, Cook's Response Never Even References Plaintiffs' Short Form Complaint Or The Agreed Upon Venue Language. The Interest Of Justice Favors Transfer Because Plaintiffs Listed Their Home States As Their Choice Of Venue In The Short Form Complaints.**

Conspicuous by its absence, Cook's response never mentions the Short Form Complaint or the clear language of the venue provision. Cook does not explain why it is refusing to honor the unambiguous wording of the venue clause. Further, Cook's Response does not explain the basis for its attempted nullification of the venue language, which Cook helped draft.

Cook does not respond, because it has no legitimate response. Cook concedes it is black letter law that a plaintiff is entitled to his or her choice of forum. *See* Cook Response at 4. If the Cook Defendants were to acknowledge the Short Form Complaint, they also would have to acknowledge this choice of forum. Cook's only way around this predicament is to ignore the venue language and pretend it does not exist. Cook's non-response to the venue clause in the Short Form Complaint demonstrates the weakness of its position and supports Plaintiffs' Motion to Transfer.

Cook does devote considerable space to discussing the "interest of justice." But if the interest of justice means anything, it means abiding by clear and unambiguous language agreed to by the parties. The Cook Defendants and the Plaintiffs' Steering Committee drafted, together, the Short Form Complaint, which was approved by the Court. The Cook Defendants knowingly and voluntarily agreed to the venue language in the Short Form Complaint. That language contained a specific requirement for each plaintiff to list the "District Court and Division in which venue

would be proper absent direct filing." In the interest of justice, the Court should give meaning to the Short Form Complaint and grant plaintiffs' motion to transfer.

    **II.    Cook Concedes That The Most Important Factor For Section 1404(a) Transfer Is The Convenience Of The Witnesses. This Factor Favors Transfer Because Non-Party Witnesses Reside In Plaintiffs' Home States.**

Cook admits that "[c]ourts often consider the relative convenience of the witnesses as the most significant of the relevant factors." *See* Cook Response at 6. *Omnisource Corp. v. Sims Bros., Inc.,* No. 1:08-CV-89, 2008 U.S. Dist. LEXIS 53993, at *10 (N.D. Ind. March 20, 2007). Case law teaches that little weight is given to the location of witnesses controlled by the defendant, such as Cook's own employees, because those witnesses are likely to appear voluntarily in either forum. *Id.* at *19-20. The paramount concern is the location of non-party witnesses and the ability to obtain compulsory process. *Distance Learning Sys. Ind., Inc. v. A & D Nursing Inst., Inc.,* No. 1:04-cv-0159-DFH-WTL, 2005 U.S. Dist. LEXIS 5838, at *15 (S.D. Ind. Mar. 22, 2005); *See also Household Fin. Servs., Inc. v. Prestige Fin. Servs. Corp.,* No. 99 C 1756, 1999 U.S. Dist. LEXIS 12295, at *2 (N.D. Ill. Aug. 6, 1999) (finding the "inability to compel attendance of material non-party witnesses to be a ***crucial factor*** militating in favor of transfer.") (emphasis added).

It is undisputed that plaintiffs' home states of Missouri, North Carolina, Ohio, Tennessee and Texas are the most convenient locations for the important non-party witnesses in these cases. These were the locations where implantation of Cook's defective IVC filters occurred. These were also the locations where Cook's defective IVC filters caused plaintiffs' injuries. As a result, Missouri, North Carolina, Ohio, Tennessee and Texas are the places where plaintiffs' treating physicians are located. These physicians are crucial non-party witnesses because they will testify as to each plaintiff's condition before and after implantation of Cook's IVC filters. The doctors will also testify as to how Cook's IVC filters caused plaintiffs' injuries and damaged plaintiffs'

5

health.  Other non-party health care professionals, family members, friends, and co-workers located in plaintiffs' home States will testify as to pain and suffering and work impediments caused by Cook's defective IVC filters.  The only way to ensure attendance of these important non-party witnesses is to transfer plaintiffs' cases to Missouri, North Carolina, Ohio, Tennessee and Texas pursuant to Section 1404(a) and the plain language in the Short Form Complaint.

Recognizing that the law cuts against its position, the Cook Defendants weakly attempt to discount the importance of plaintiffs' non-party witnesses by categorizing this lawsuit as a product liability case – as opposed to a medical malpractice case.  This, however, is an irrelevant distinction without a difference.  Cook's product is the IVC filter.  The non-party doctors literally handled Cook's IVC filter when implanting the device into each plaintiff.  The non-party doctors viewed x-rays and scans of Cook's IVC filter inside of each plaintiff's body.  The non-party doctors performed surgery to remove Cook's IVC filter after the defective device injured the plaintiffs.  In short, Cook's attempt to devalue the importance of the testimony of plaintiffs' home State medical witnesses is without any merit.  Because the convenience of the witnesses – the most important factor when evaluating a Section 1404(a) transfer – strongly favors plaintiffs, the court should grant this motion to transfer.

### III.     After Two Jury Trials, Cook Knows Pretrial Proceedings Have Concluded, So It Conjures Up More Potential Motions To Artificially Boost Its Argument.

The following undisputed facts completely contradict Cook's position that pretrial proceedings have not ended:

1. Cook has stated multiple times in open court that corporate discovery is finished;
2. The Court has supervised all common fact and expert discovery;
3. The Court has ruled on numerous *Daubert* motions;
4. The Court has ruled on numerous motions for summary judgment;

    5.   The Court has presided over efforts to categorize cases;

    6.   The Court has supervised settlement discussions; and

    7.   The Court has conducted <u>two</u> jury trials.[4]

Logically, the parties could not have conducted two jury trials absent the conclusion of pretrial proceedings. Cook's response never addresses this obvious point. And while Cook provides a list of suggested pretrial guidelines from the Duke Law Manual, what Cook fails to acknowledge is that the Court has efficiently pursued and resolved these items.

Perhaps recognizing the weakness of its position, Cook attempts to bolster its argument by conjuring up additional possible motions for filing in "certain cases." As an initial observation, plaintiffs have no doubt of Cook's ability to paper the Court with additional motions. Cook can always come up with something. But this should not be allowed to delay justice for thousands of plaintiffs. If these motions for "certain cases" are so important, then Cook should have filed them long ago.

In any event, the fact that Cook's possible/maybe future motions apply only to "certain cases" proves that such motions are appropriate for the individualized setting of plaintiffs' home venues, rather than the MDL. Motions aimed at "certain cases" do not involve "common questions of fact" and are not appropriate for the MDL's "consolidated pretrial proceedings." Importantly, Cook's Response does not state that any of its potential motions would apply to plaintiffs Parker, Pemberton, Hall, Chambers, or Gibbs – the plaintiffs who have filed this motion to transfer. There is simply no reason for the Court to deny or delay transfer for these plaintiffs merely because Cook

---

[4] Cook's Response references the granting of its new trial motion in the *Brand* case. But the new trial order is a *non sequitur*, because it comes after the conclusion of the jury trial. The fact remains that the Court has conducted two jury trials.

is discussing the possibility of filing motions at some time in the future against "certain" unnamed plaintiffs.

  IV. **Cook's Superficial Argument Regarding Personal Jurisdiction Is Equally Without Merit Because The Cook Defendants Have Purposefully Availed Themselves Of The Plaintiffs' Home States.**

"The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297-298 (1980). "When a corporation purposefully avails itself of the privilege of conducting activities within the forum State,' it has clear notice that it is subject to suit there. . . ." *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 110 (1987), quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). "'Hence, if the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owners or to others.'" *Asahi*, 357 U.S. at 110, quoting *World-Wide Volkswagen Corp*., 444 U.S. at 297.

Here, personal jurisdiction is secured because the Cook Defendants designed, manufactured, marketed and sold their defective IVC filters for the purpose of generating revenue and profits from healthcare providers and patients – such as these Plaintiffs located in Missouri, North Carolina, Ohio, Tennessee and Texas. For general jurisdiction, this was no isolated occurrence or accident: the Cook Defendants intentionally, continuously, and systematically designed their IVC filters and then sold and distributed the product to countless hospitals, doctors, and patients in the proposed forum States. The Cook Defendants <u>wanted</u> their IVC filters in

Missouri, North Carolina, Ohio, Tennessee and Texas, and they made every effort to reach customers and patients in these States as a well-planned business strategy. Any other suggestion is pure fiction.

In any event, for specific jurisdiction, the Cook IVC filters were purposefully sold and distributed to healthcare customers and then implanted as intended into these plaintiffs located in Missouri, North Carolina, Ohio, Tennessee and Texas. The defective Cook IVC filters caused injuries to the plaintiffs in these States.

Thus, it is axiomatic that the Cook Defendants had "minimum contacts" with and "purposefully availed themselves of the benefits and protections" of the laws of Missouri, North Carolina, Ohio, Tennessee and Texas. *See generally Burger King v. Rudzewicz*, 471 U.S. 462 (1985). It strains credulity to think that personal jurisdiction is an issue when the Cook Defendants purposefully (and for profit) directed their IVC filters to Plaintiffs' home States, and the Plaintiffs suffered their injuries from the Cook Defendants' products in these States. Simply put, the nature of the contacts initiated by the Cook Defendants is directly connected to the injuries suffered by the plaintiffs in Missouri, North Carolina, Ohio, Tennessee and Texas. The proposed forum States have a high interest in protecting their residents from injury, and plaintiffs have an equally high interest in litigating their claims at home. *See World-Wide Volkswagen Corp.*, 444 U.S. at 293 (describing factors for consideration when analyzing personal jurisdiction). For all of these reasons, the exercise of personal jurisdiction in these States would <u>not</u> offend "traditional notions of fair play and substantial justice," and the Court should transfer these cases to plaintiffs' choices of venue. *See generally International Shoe Co. v. Washington,* 326 U.S. 310 (1945).

## CONCLUSION

The Court should apply the language of the Short Form Complaints and grant plaintiffs' motion to transfer under 28 U.S.C. § 1404(a).

Dated: January 28, 2020  By:  */s/ Ben C. Martin*
Ben C. Martin, Esq.
The Law Office of Ben C. Martin
3710 Rawlin Street, Suite 1230
Dallas, TX 75219
Telephone: (214) 761-6614
Facsimile: (214) 74407590
Email: bmartin@bencmartin.com

**COUNSEL FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

*/s/ Ben C. Martin*
Ben C. Martin