IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE:  COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB MDL No. 2570 |

This Document Relates to:

David McDermitt
1:18-cv-00946

**THE COOK DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT—STATUTE OF REPOSE**

*To be clear, Plaintiff and the PSC take the position in Plaintiff's response that a cause of action accrues when a plaintiff  -- with no symptoms, who has not sought medical treatment, and who has not been diagnosed by a doctor with an injury  -- speaks to a layperson with no medical training about possible injuries caused by a product*.  Should the Court accept this argument, Cook asks that the Court make a specific legal finding to that effect, as such a holding undoubtedly will have significant reverberations throughout the MDL.[1]

Nevertheless, under the particular circumstances of this case, Cook submits that Plaintiff's individual cause of action did *not* accrue in 2016, and Cook is therefore entitled to summary judgment on Plaintiff's product-related claims based on Indiana's statute of repose.

---

[1] Even with the Court's Order reconsidering its earlier choice-of-law order, *see* Dkt. 12931, the MDL still includes thousands of cases subject to Indiana's statute of limitations and similar statutes of other states.

## ARGUMENT

**A.     Cook Did Not Waive the Defense of the Statute of Repose.**

Cook did not waive its defense of the statute of repose simply by urging the *McDermitt* case as a bellwether trial, and Plaintiff's claim that Seventh Circuit authority supports waiver here is mistaken.  Cook properly asserted the statute of repose as a defense in its Amended Answer of Cook Defendants to Plaintiffs' Master Consolidated Complaint for Individual Claims, *see* Dkt. 8180 at 22 (¶ 34), a fact Plaintiff does not dispute.  Nothing in Cook's request that the Court select the *McDermitt* case as a bellwether suggests that Cook intended to "voluntarily relinquish" its right to assert that defense.

Plaintiff correctly notes that in discussing whether Plaintiff's case was suitable for a bellwether trial, Cook focused primarily on the nature of Plaintiff's claimed injury and the *in vivo* character of his filter.  *See* Dkt. 12933 at 3.  But that emphasis did not waive Cook's statute of repose defense or any other defense that did not directly involve those factors, any more than the PSC's emphasis on those same factors in bellwether selection waived (for example) Plaintiff's unrelated statutory consumer-fraud claims.  Plaintiff cites no authority that holds or even suggests that a party can waive a properly asserted affirmative defense by requesting that the case be selected as a bellwether, and Cook is aware of none.

Plaintiff cites only two cases that mention possible waiver of a statute of repose, *Perez v. PBI Bank*, 69 F. Supp. 3d 906 (N.D. Ind. 2014) and *Anderson v. Catholic Bishop of Chicago*, 759 F.3d 645 (7th Cir. 2014), and *neither case* supports Plaintiff's argument here.  In both of those cases, the court addressed whether a defendant can waive a statute of repose through conduct *before* a suit is filed that induces a plaintiff to *delay* filing suit until after the repose period has passed.  *See Perez*, 69 F.Supp 3d at 912 ("The plaintiff urged an estoppel based on

letters from [defendant] that he said lulled him into believing he could delay his filing."); *Anderson*, 759 F.3d at 649 (noting plaintiff argued "the limitations period does not operate to preclude his action because the defendants engaged in actions that tolled it or prevented them from relying on it").  Neither of these cases involved any argument like Plaintiff's argument here, that a defendant waives a properly asserted defense in an ongoing case simply by asking to have the case selected for bellwether treatment.

Moreover, neither of the cases Plaintiff submitted *actually* found that any defendant had waived a statute of repose.  In *Anderson*, the court held in a clergy sex abuse case that the church had *not* waived the statute-of-repose defense to the abuse claim by offering pre-suit compassionate relief while maintaining its legal defenses.  *See* 759 F.3d at 651-52.  And the *Perez* case involved the statute of repose under the federal ERISA statute, not the Indiana statute of repose at issue here, and focused primarily on whether the doctrine of waiver was even available under ERISA as an exception to the statute of repose.  In the end, the *Perez* judge did not decide that issue, concluding instead that the moving party had brought the wrong kind of motion to raise the issue.  69 F. Supp. 3d at 912.

Not only does Plaintiff's waiver argument lack any legal authority, the facts in this litigation do not support Plaintiff's argument.  Cook lacked significant information critical to the present motion until only recently, and Cook promptly informed both Plaintiff's counsel and the Court of its statute-of-repose defense and intent to file the present motion once it had that information.  *See* Dkt. 12717 (stipulation); Exhibit A, February 7, 2020 Tr. at 4:17-19 (status conference).

Multiple facts also foreclose any finding that Cook waived its statute of repose defense. First, although Plaintiff now asserts that Cook should have filed its motion sooner because both

3

Ohio and Indiana law include a ten-year statute of repose that bar his claim, if Cook had relied on Ohio's statute of repose, Plaintiff undoubtedly would have argued that the statute's exception for claims for "bodily injury…that is caused by exposure to hazardous or toxic chemicals, ethical drugs, or ethical medical devices," would have saved his claim.  *See* Dkt. 12933 at 4 n.1; Ohio Rev. Code § 2305.10(B).[2]  *What state's law applied was a thus a critical consideration in Cook's decision to bring this motion.*

Second, Cook had no way of knowing *when* Plaintiff claimed to have been injured until his medical expert – David Muehrcke, M.D. – was deposed on February 1, 2020.  The timing of Plaintiff's claimed injury was critical to analyzing the statute of repose, and only in his deposition did Dr. Muehrcke concede that the first indication of any perforation or other injury appeared in Plaintiff's April 2017 CT scan, which he claims showed perforation of over 3 mm for the first time.  *See* Exhibit B, Muehrcke Dep. at 276:19-280:11.  Until Cook took Dr. Muehrcke's deposition, Cook lacked information critical to its statute of repose analysis – *i.e.*, when Plaintiff knew or should have known of his alleged injury.

Finally, Cook lacked even the most basic information to support the existence of Plaintiff's hypothetical injury until December 13, 2019, when it received Plaintiff's expert reports.   Until that time, Plaintiff had no symptoms, showed no need for medical treatment, and Plaintiff asserted that he had filter struts extending only *two* millimeters—below the SIR's historic definition of "perforation."   *See* Dkt. 12803-11 at 5 (image accompanying case categorization form); Exhibit C, Aug. 20, 2019 Tr. at 101:5-9 (Heaviside:  "this [McDermitt] is the one where there's a two-millimeter penetration").   Yet when Plaintiff produced his expert

---

[2] Cook disputes that this exception applies or would have saved Plaintiff's claim, but the two states' repose statutes are undeniably different in this respect.

reports, Dr. Muehrcke claimed *for the first time* to see a perforation over 3 millimeters.  *See* Dkt, 12803-1, Ex. 1 at 14.  Setting aside for the moment the facts that Plaintiff is asymptomatic and requires no medical treatment, until Cook received Dr. Muehrcke's report on December 13, 2019, and took his deposition on February 1, 2020, Cook had no way to know that Plaintiff had even hypothetically sustained a "perforation."  Cook therefore could not reasonably have assessed any possible statute-of-repose defense.

In addition, Plaintiff has submitted more than 200 pages of exhibits in opposition to Cook's motion, including new affidavits from both Plaintiff and his expert, and the nature and volume of his submission highlight the unavoidable contradiction in Plaintiff's argument: Plaintiff argues that the statute of repose's bar to his claims was so obvious that Cook should have raised the issue sooner, but in the very next section he argues that the statute of repose does not bar his claims at all.  Dkt. 12933 at 18-20; *see also* Exhibit A, Feb. 7, 2020 Tr. at 6:4-5 (Goldenberg:  "to be fair, I don't believe that they'll be successful"); 7:4-5 (Williams:  "If there was a statute of repose problem – as Stuart said, we don't think there is").

In the end, and most fundamentally, Plaintiff's argument makes no sense.  A party does not ***waive*** a defense by asking a court to try the case and thereby ***resolve*** the defense.  Indeed, requesting the trial of a case that includes a specific defense that is the precise *opposite* of "the voluntary relinquishment" of the right to assert the defense; it is a direct *invocation* of that right. Cook's proposal of Plaintiff's case as a bellwether selection did not waive Cook's statute-of-repose defense or any other properly asserted defense and—put simply—absolutely no legal authority supports Plaintiff's argument.

**B.**    **Indiana's Statute of Repose Applies to All of Plaintiff's Product-Based Breach-of-Warranty Claims**

Plaintiff does not dispute that Indiana's statute of repose is applicable to his strict-liability and negligence claims, *see* Dkt. 12803 at 9-10, but he contends that the statute does not apply to his implied breach-of-warranty claim, even though that claim also alleges personal injury resulting from a defective product.

Plaintiff is mistaken; his implied warranty claim falls squarely within the IPLA and its statute of repose.  His assertion that "Plaintiff's warranty claims are economic in nature, and fall under the UCC, not the Indiana Products Liability Act," Dkt 12933 at 28, misstates the nature of those claims.  According to the Master Complaint that Plaintiff adopted, *see* Case No. 1:18-cv-00946-WTL-DLP, Dkt. 1 at 1, Plaintiff defines his damages from his breach of implied warranty claim as resulting from a product defect and requests classic personal injury damages, and ***not*** "economic" damages:

> As a direct and proximate result of the Cook IVC Filters' defects, as described herein, Plaintiffs have suffered permanent and continuous injuries, pain and suffering, disability, and impairment. Plaintiffs have suffered emotional trauma, harm, and injuries that will continue into the future. Plaintiffs have lost their ability to live a normal life and will continue to be so diminished into the future. Furthermore, Plaintiffs have lost earnings and will continue to lose earnings into the future and have medical bills both past and future related to care because of the IVC filters' defect.

Dkt. 213 at 25 (¶ 109).  As noted in Cook's original motion, courts applying Indiana law have consistently held that such implied warranty claims based on personal injury are product-liability claims subsumed by the Indiana Product Liability Act.  *See, e.g., Jarrett v. Wright Med. Tech., Inc.*, No. 112CV00064SEBDML, 2019 WL 2567708, at *3 (S.D. Ind. June 21, 2019); *Cavender v. Medtronic, Inc.*, No. 3:16-CV-232, 2017 WL 1365354, at *7 (N.D. Ind. Apr. 14, 2017); *Piltch v. Ford Motor Co.*, 11 F.Supp.3d 884, 888 (N.D. Ind. 2014), *aff'd*, 778 F.3d 628 (7th Cir. 2015).[3]

---

[3] The cases that Plaintiff cites are not to the contrary.  *See* Dkt. 12933 at 28.  In *Cincinnati Ins. Cos. v. Hamilton Beach/Proctor-Silex, Inc.*, 2006 WL 299064, at *3 (N.D. Ind. Feb 7, 2006), the

C.     **Indiana's statute of repose bars Plaintiff's product claims.**

Plaintiff does not dispute that he did not commence his action within 10 years of the "initial delivery of the product to the initial consumer," Dkt. 12803 at 11, and the parties thus agree that the issue here is whether Plaintiff's claims fall within the two-year "window" at the end of the repose period, specifically, whether Plaintiff's claim accrued between January 8, 2015, and January 8, 2017.  *See* Dkt. 12933 at 18.  If the claim did not accrue between those two dates, the exception does not apply, and the statute of repose bars Plaintiff's claims.  *See, e.g., Bowman v. Niagara Mach. & Tool Works, Inc.,* 832 F.2d 1052, 1057 (7th Cir. 1987) (affirming summary judgment bases on statute of repose).

In attempting to place his accrual date within this two-year window, Plaintiff's response makes a remarkable argument about when his cause of action against Cook "accrued."  Plaintiff does *not* claim that his cause of action accrued when his alleged "injury" actually occurred, or when he experienced symptoms from the "injury," or when a medical doctor told him that the "injury" had occurred.  Any of these potential accrual dates could find support in Indiana case law, depending on the circumstances.  But Plaintiff clearly recognizes that any of these judicially recognized definitions of accrual will result in the statute of repose barring his action, so he

---

court noted that a breach of warranty under the UCC "permits the buyer to seek recovery based on the damage to the goods and the incidental and consequential damages resulting from the breach," a much different set of damages than the tort damages Plaintiff seeks from his breach-of-warranty claims here.  In *Am. Int'l Ins. Co. v. Gastite*, 2009 WL 1383277 (S.D. Ind. May 14, 2009), the court did not address whether the plaintiff's implied warranty of merchantability claim was subsumed by the ILPA, but instead dismissed the claim because it was not adequately plead.  *See id.* at *4.  Cook submits that the overwhelming body of state and federal cases, including the cases cited in the text and in its original motion, make clear that a tort-based implied warranty claim is subsumed by the IPLA.  *See Spangler v. Sears, Roebuck & Co.,* 752 F.Supp. 1437, 1449 (S.D.Ind.1990) ("[A] count based on tortious breach of implied warranty [duplicates] a count based on strict liability in tort and both counts may not be pursued in the same lawsuit.") (*quoting Thiele v. Faygo Beverage, Inc.,* 489 N.E.2d 562, 584 (Ind. App. 1986)).

7

rejects them.  Instead, Plaintiff tries to rescue his claim by arguing that his cause of action against Cook accrued in July of 2016, when an unnamed layperson at the Goldenberg law firm showed him medical articles and told him "it was highly likely" that his filter was perforated. Dkt. 12933-16 at 1, ¶ 3 (2nd).  Although Plaintiff's affidavit does not identify the person who told him all these things, either by name or by position, the Court can reasonably assume the person was not a doctor or other medical professional, or Plaintiff would have said so in his affidavit.

Plaintiff's argument fails for many reasons unique to his case.  Assuming for the sake of argument in the present motion that Plaintiff's claimed asymptomatic perforation and the claimed potential difficulty in retrieval on which Plaintiff bases his argument were compensable injuries at all,[4] Plaintiff's argument concerning how and when those injuries accrued is unsupported by Indiana law or by the facts in the case.  Plaintiff's argument defies common sense, and would significantly depart from Indiana practice and precedent.

1.    **Indiana law does not support Plaintiff's argument that a claim of medical injury can accrue based on the receipt of medical information from a layperson.**

Indiana law does not support Plaintiff's argument that a product-liability cause of action "accrues" when—in the absence of any symptom, medical treatment, or medical diagnosis—a layperson in an attorney's office informs a prospective client of a couple of medical articles and tells the client that the articles mean that the client has probably been injured by the product.  A cause of action "accrues" under the IPLA "when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act

---

[4] In fact, neither of these conditions is an "injury" in any legal sense, as Cook will detail in a subsequent summary judgment motion should the Court deny relief based on the statute of repose. *See, e.g., AlliedSignal, Inc. v. Ott*, 785 N.E.2d 1068, 1075 & n.9 (Ind. 2003) (collecting cases that hold that asymptomatic physical changes resulting from inhalation of asbestos fibers are insufficient to sustain cause of action).

of another." *Wehling v. Citizens Nat'l Bank*, 586 N.E.2d 840, 843 (Ind. 1992).  As Plaintiff

notes, the Seventh Circuit interpreted this language in *Evenson v. Osmose Wood Preserving Co.*,

899 F.2d 701 (7th Cir.  1990), and Plaintiff relies on that court's use of the phrase "reasonable

possibility."  Dkt. 12933 at 18.  But Plaintiff never provides the full context for the phrase he

quotes.  The full passage from *Evenson* reads:

> [W]here knowledge of causation is at issue, a person knows or should have
> discovered the cause of his injury when he has or should have discovered some
> evidence that there was a reasonable possibility that his injury was caused by the
> act or product of another.

*Id.* at 705.  The key element of this standard that Plaintiff overlooks is the introductory statement

of where the standard applies:  "where knowledge of causation is at issue."

Here, the issue is not whether Plaintiff knew or should have known of a "reasonable

possibility" that his Tulip filter had caused his injury, but whether Plaintiff had actually suffered

***any injury at all***.  At the time Plaintiff talked to someone at Goldenberg law in July 2016, he had

no symptoms that related in any way to his IVC filter; no pain, no discomfort, no physical

limitations.  *See* Dkt. 12803-2 at 53:8-54:24; 174:4-16; 176:4-7.  Plaintiff's expert agrees that as

of July 2016, Plaintiff had had no symptoms or problems related to his perforation that would

place him on notice of any problem with his filter.  Dkt. 12803-5 at 257:6-21.  Indeed, there is no

evidence that Plaintiff was *actually* "injured"—even in the sense of having an asymptomatic

perforation—in July 2016.  As Plaintiff's expert concedes, the only way to diagnose perforation

is through imaging, and the first and only image of Plaintiff's filter that shows perforation was

not taken until April 21, 2017—after the statute of repose's two-year window had closed.  *Id.* at

190:19-191:11.  In short, Plaintiff has identified no evidence that he had actually experienced an

"asymptomatic perforation" at the time of his conversation with Goldenberg law in July 2016.

A cause of action cannot accrue before all the elements necessary for recovery exist.  *See, e.g., Wojcik v. Almase*, 451 N.E.2d 336, 341 (Ind. Ct. App. 1983) ("A cause of action accrues when all the elements necessary for recovery are met," including that "the defect has caused physical harm to the user or consumer"); *Neuhauser v. A.H. Robins Co.*, 573 F. Supp. 8, 9 (S.D, Ind. 1983) ("In Indiana a cause of action accrues at the time when both legal injury and damage have occurred").  Plaintiff's cause of action could not accrue before he had *actually* experienced the injury he claims.  And, according to Plaintiff's own expert, there is no evidence (*i.e.*, imaging) that shows that Plaintiff had experienced asymptomatic perforation as of July 2016.  Any suggestion of an earlier date of injury is pure, unsupported speculation.  Thus, even assuming that, under *Evenson*, a cause of action accrues when a plaintiff gains knowledge of a "reasonable possibility" that a particular product caused the plaintiff's injury, nothing in *Evenson* remotely suggests that a cause of action accrues where someone simply tells an asymptomatic person that he has possibly suffered an injury that is causing him no symptoms, problems, or physical limitations.  Indeed, the *Evenson* court noted that a plaintiff could sanctioned for commencing an action based on such a mere suspicion.  *See Evenson*, 899 F2d. at 705 ("Fed. R. Civ. P. 11 would arguably require sanctions against a party who files suit based on nothing more than the kind of suspicions [plaintiff] had in the present case.").

Plaintiff's lack of any symptoms or impairment also distinguishes this case from the only two cases he cites in support of his argument, *Degussa Corp. v. Mullens*, 744 N.E.2d 407 (Ind. 2001), and *Evenson, supra*.  The plaintiffs in *Degussa* and *Evenson* knew that they had been injured; both had developed multiple symptoms and substantial impairment, and both had repeatedly sought treatment for those problems.  *See Degussa*, 744 N.E.2d at 409-10; *Evenson,* 899 F.2d at 702.  The issue in both cases thus was not the *existence* of the symptoms, but the

10

*cause* of those symptoms.  *DeGussa,* 744 N.E.2d at 409 ("Once a plaintiff's doctor expressly

informs the plaintiff that there is a "reasonable possibility, if not a probability" that an injury ***was***

***caused by an act or product***, then the statute of limitations begins to run")(emphasis added);

*Evenson,* 899 F.2d at 701-02 (discussing when plaintiff "knew or should have discovered some

evidence that there was a reasonable possibility that CCA ***was the cause of his injuries***")

(emphasis added).  Here, of course the accrual issue here is just the reverse; the question is not

whether Plaintiff's injuries were caused by his IVC filter, but whether Plaintiff had been injured

at all within the statute's ten-year period.  The accrual issue here is thus different from the

accrual issue in *DeGussa* and *Evenson*, and they do not help Plaintiff's argument here.

    **2.**    **The facts here do not support Plaintiff's argument that a claim of medical injury can accrue based on the receipt of medical information from a layperson.**

Even if the Court elected to substantially expand Indiana law and hold that a "reasonable

possibility" that an injury exists is alone sufficient for a cause of action to accrue, the

circumstances here fail as a matter of law to support Plaintiff's argument that his cause of action

accrued in July 2016, when he talked to a layperson at Goldenberg law.  Plaintiff states that in

his call with Goldenberg law, he was told about "about medical studies that showed that most

Cook filters were perforating the IVC at a very high rate and that it was highly likely mine was

perforated," and "that it was highly likely that the filter could be difficult to remove."  Dkt.

12933-16 at 1.

A layperson's conjecture about the application of isolated medical articles to a specific

person cannot as a matter of law establish a "reasonable possibility" either that the person has

been injured or that the injury has any particular cause related to a product.  As the *Evenson*

court said, "[a] reasonable possibility, while less than a probability, requires more than the mere

suspicion possessed by [plaintiff], a layperson without technical or medical knowledge." 899 F.2d at 705.  Here, the credibility of the supposed "possibility" is even one step more removed than in *Evenson*—Plaintiff rests on not just on his own lay suspicions, but attributes those suspicions in turn to statements by another layperson with no apparent credentials other than employment by GoldenbergLaw.

As Plaintiff's own affidavit establishes, the information provided by the GoldenbergLaw paralegal, or phone operator, or whomever the unidentified person might be, was expert information and opinion for which only a medical professional could provide a "reasonable" foundation, given Plaintiff's lack of symptoms and the lack of any previous medical diagnosis of any issue.  Plaintiff states that he "was told" about GoldenbergLaw's interpretations of medical articles.  Dkt. 12933-16 at 1.  He was told that "it was highly likely" that his IVC filter was perforated and would be difficult to remove.  *Id.*  Such interpretations and diagnoses plainly require medical expertise and judgment, and no layperson could offer those opinions with any degree of reliability.  *Cf., e.g., Jacob v. Korean Air Lines Co., Ltd.*, No. 12-CV-62384, 2014 U.S. Dist. LEXIS 58007, 2014 WL 1584444, at *6 (S.D. Fla. Mar. 20, 2014) ("medical causation falls beyond the scope of a layperson's knowledge and requires competent medical testimony").

Given Plaintiff's complete lack of symptoms, medical treatment, or medical diagnosis, Plaintiff's situation is far different than the circumstances of *DeGussa* and *Evenson*, the cases he cites for support.  When the plaintiffs in *DeGussa* and *Evenson* were told of the "reasonable possibility" that their injuries could be causally linked to a defendant's product, that information came from ***medical doctors***, in the course of medical treatment for actual symptoms, and was delivered in the form of personal medical opinions based on patient-specific examinations and lab work.  *See DeGussa,* 744 N.E.2d at 409-10; *Evenson,* 899 F.2d at 701-02.  The *DeGussa*

12

court specifically rested its application of the "reasonable possibility" standard on patient-specific information received directly from a medical doctor:

> Once *a plaintiff's doctor expressly informs the plaintiff* that there is a "reasonable possibility, if not a probability" that an injury was caused by an act or product, then the statute of limitations begins to run and the issue may become a matter of law. ... *When a doctor so informs a potential plaintiff*, the plaintiff is deemed to have sufficient information such that he or she should promptly seek "additional medical or legal advice needed to resolve any remaining uncertainty or confusion" regarding the cause of his or her injuries, and therefore be able to file a claim within two years of being informed of a reasonably possible or likely cause.

*Degussa Corp. v. Mullens*, 744 N.E.2d 407, 411 (Ind. 2001) (emphasis added, citations omitted).

And the *Evenson* court expressly rejected the defendant's assertion that "a layperson's mere suspicion, even when coupled with the start of an investigation, automatically triggers the statute." *Id.* at 705.

Cook does not maintain that *only* a medical diagnosis by a doctor can establish the "reasonable possibility" that prompts the accrual of a cause of action. As the *Evenson* court said:

> Although we agree locating a doctor willing to testify that a particular product is the probable cause of the plaintiff's injuries would trigger the statute of limitations, we disagree with Evenson that this is the only event capable of doing so. Defendants correctly point out that the cases cited by Evenson applying the Indiana discovery rule establish only that a medical diagnosis causally connecting a plaintiff's exposure to a product and his injuries is sufficient to start the statute running, not that such a diagnosis is necessary.

*Evenson*, 899 F.2d at 704-705. Here, however, all Plaintiff points to is a mere suspicion by one layperson affiliated with GoldenbergLaw, conveyed to another layperson, Plaintiff himself. Plaintiff had no symptoms, no prior medical consultation about the condition of his filter, and no reason to believe he had any issues with his filter except a law firm employee's unqualified guess that Plaintiff's filter had "most likely" perforated. Under Indiana law, that is not enough for a cause of action to accrue.

Plaintiff argues that the information he received was not a "mere suspicion possessed by…a layperson" because "[t]he information conveyed were [*sic*] the opinions of highly respected medical doctors in peer-reviewed medical journal articles showing the high rate of perforation injuries caused by the Cook Gunther Tulip filter," and "was information based upon peer-reviewed medical studies informing Mr. McDermitt of the likelihood that he had an injury caused by his filter." Dkt. 12933 at 20; *see also id.* at 13-14 (citing articles by Dr. Deso and Dr. Durack). But even Plaintiff's careful wording of his response cannot help but betray the problem with his argument. Even if the information he received was "***based upon*** peer-reviewed medical studies," the information was actually *interpreted* by GoldenbergLaw and used by GoldenbergLaw to make *its own diagnosis* of Plaintiff.[5] Contrary to Plaintiff's assertion, the medical articles did not "inform[ ] Mr. McDermitt of the likelihood that he had an injury caused by his filter." Dkt. 12933 at 20. Dr. Deso and Dr. Durack have never examined or consulted with Plaintiff and likely do not know he exists; the person who "informed Mr. McDermitt" of his

---

[5] The anonymous GoldenbergLaw employee's unqualified interpretations of the articles were in fact mistaken. The articles by Dr. Deso and Dr. Durack do *not* support the claim that Plaintiff had been injured. To the contrary, the Deso article defines perforation strictly as a radiological phenomenon without regard to symptoms or clinical sequelae. *See* Deso, 33 Semin. Intervent. Radiol. at 94 (Dkt. 12933-14 at 3). Not only is there no suggestion that perforation is linked to or causes any problems for the patient, but the term "symptom" does not even appear in the article. *See generally id.* Dr. Durack's article likewise fails to support the idea that perforation is of consequence to the patient, noting that no migration, fracture, symptoms, or PE were observed in any of the patients in their study despite high rates of radiologically apparent perforation. Exhibit D, Durack, et al., Perforation of the IVC: Rule Rather Than Exception After Longer Indwelling Times for the Gunther Tulip and Celect Retrievable Filters, Cardiovasc Intervent Radiol, 35:299-308 (2012) at 303 (Dkt. 12933-15. Plaintiff's submission includes only the abstract of the Durack article, not the full article.). Indeed, the authors of the Durack article noted that "[h]ow much clinical importance should be assigned to IVC filter perforation remains a debated question" and concluded that "we continue to believe in the established clinical benefit of conical IVC filters for prevention of pulmonary emboli." *Id.* at 305, 307. "

diagnosis was the lawperson at GoldenbergLaw, as Plaintiff's own affidavit makes clear. *See* Dkt. 12933-16 at 1.

Plaintiff cites no authority from any jurisdiction that has ever held that a lay diagnosis based on a lay review of two medical articles, in the absence of any symptoms or need for medical treatment, is sufficient to create the "reasonable possibility" of a claim required for the accrual of a cause of action. On the contrary, multiple holdings by multiple courts reinforce the conclusion that a layperson's conjecture about a possible injury cannot establish a "reasonable possibility," including:

(1) The Indiana Supreme Court's requirement of an actual physical injury as a basis for a tort claim. *See, e.g., AlliedSignal, Inc. v. Ott,* 785 N.E.2d 1068, 1075 (Ind. 2003) ("a cause of action accrues at that point at which a physician who is reasonably experienced at making such diagnoses could have diagnosed the individual with an asbestos-related illness or disease").

(2) This Court's holding that Category 2 cases of fear, worry and emotional distress are not cognizable claims. *See* Dkt. 11131; Dkt. 11377 (dismissing Category 2 claims); Exhibit E, June 13, 2019 Tr. at 26:10-21.

(3) The Seventh Circuit's comment in *Evenson* that Rule 11 might require sanctions if a party were to file suit based on suspicion alone. *See Evenson*, 899 F.2d at 705.

In addition, Plaintiff's submissions to the Court do not support the facts he asserts in his response. Although Plaintiff's response claims that someone at GoldenbergLaw told Plaintiff

about specific medical articles by Dr. Deso and Dr. Durack,[6] there is *no evidence* those articles were the ones he was told about.  Plaintiff does not identify either the Deso or Durack article in his affidavit, and nothing else in the record supports his claim that GoldenbergLaw actually told him about these particular articles.[7]  This omission may be a result of Plaintiff's attorneys' effort to conceal the identity of the person Plaintiff actually talked to at Goldenberg law.  But whatever the reason, the absence of any record evidence that anyone actually discussed these particular articles with Plaintiff fatally undercuts the factual premise of Plaintiff's argument.

Even assuming *arguendo* that a layperson telling a plaintiff about selected portions of specific medical articles could cause a cause of action to accrue, Plaintiff would need at the least to offer some record support that a GoldenbergLaw employee *actually* discussed those particular articles with Plaintiff.  *See, e.g., O'Brien v. Town of Agawam*, 482 F. Supp. 2d 115, 119 (D. Mass. 2007) ("it is well-settled that a non-movant may not avoid summary judgment by 'rest [ing] upon mere allegations in ... [a] lawyer's brief'") (quoting *Kelly v. United States,* 924 F.2d 355, 357 (1st Cir.1991)); *Transurface Carriers, Inc. v. Ford Motor Co.,* 738 F.2d 42, 45 (1st Cir.1984) ("Mere assertions of counsel made in a legal memorandum are insufficient to establish the existence of a genuine issue of material fact.").  Plaintiff's argument depends on the specific contents of the Deso and Durack articles.  Although Plaintiff's response asserts that his knowledge in July 2016 of his likely injury "was based upon medical knowledge of Dr. Deso and

---

[6] *See* Dkt. 12933 at 14 ("Mr. McDermitt disclosed he had a 'Cook umbrella filter' and was directly informed of the high rate of perforation for the Cook retrievable filters based upon the Deso article and the Durack article."); 19 ("When [Plaintiff] learned of the information from Dr. Deso and Dr. Durack's articles that there were high rates of perforations caused by the Cook "umbrella" filters and his filter likely perforated the wall of his IVC…").

[7] Although Plaintiff attaches a copy of the Deso and a copy of the Durack abstract to his response, *see* Dkt. 12933-14 (Deso article), 12933-15 (Durack abstract), he offers no factual basis for his assertion that these were the articles that were shown or described to him.

Dr. Durack," Dkt. 12933 at 19, nothing in the record supports that attribution.[8]  Thus, even assuming Plaintiff's argument were tenable as a matter of law, the argument would fail for lack of factual support.

### 3.   If the Court denies Cook's motion, Cook is entitled to discovery of Plaintiff's attorney and other personnel at Goldenberg law concerning the July 2016 conversation.

Plaintiff's novel "attorney accrual" argument also raises new issues concerning discovery.  At Plaintiff's deposition, Cook's attorneys of course did not question Plaintiff about his communications with his attorneys because the attorney-client privilege clearly protected those communications.  However, in revealing the content of his July 2016 communications with GoldenbergLaw and relying on those communications to oppose Cook's motion, Plaintiff has just as clearly waived that privilege.  *See, e.g., Wadler v. Bio-Rad Laboratories, Inc*., 212 F.Supp.3d 829, 851 (N.D. Cal. 2016) (holding that voluntary disclosure of and reliance on attorney-client communications waives privilege).

As a consequence, Cook has the right to take discovery concerning the facts on which Plaintiff bases his claim of the "attorney accrual" of his cause of action.  As a starting point, Cook will need to conduct a follow up deposition of Plaintiff himself to question him about the attorney-client communications that he has now revealed and about the other matters raised in his affidavit.  *See* Dkt. 12933-16.

Cook will also need to depose Plaintiff's attorney, Mr. Goldenberg, along with whomever was involved in the July 2016 discussion with Plaintiff.  Plaintiff's affidavit carefully employs passive language to conceal the identity of the person(s) at GoldenbergLaw who supposedly told

---

[8] Moreover, the articles themselves do not support the interpretations the GoldenbergLaw employee told Plaintiff.  *See* note 4 above.

Plaintiff about the medical articles and offered the lay diagnosis.  *See* Dkt. 12933-16 at 1-2 ("I was told," "I was also told," "I was also told," "I was also told").  Cook will therefore need to propound discovery about who was actually involved in the conversation, the circumstances of the conversation, and the content of the conversation.  *See* Fed. R.  Evid. 502(a); *Wadler*, 212 F.Supp.3d at 851-52 (holding that disclosure of outside counsel's presentation waived attorney-client privilege not only for document but also for any privileged communications about specific matters disclosed in presentation).

**D.**      **Cook is entitled to summary judgment on Plaintiff's claims for breach of express warranty and breach of warranty of fitness for a particular purpose because Indiana law requires privity, and there is no privity between Plaintiff and Cook.**

Cook is entitled to summary judgment on Plaintiff's claims of breach of express warranty and breach of the implied warranty of fitness for a particular purpose because there is no privity between Plaintiff and any of the Cook Defendants.

**1.      Plaintiff's warranty claims require privity.**

Plaintiff's response argues that Indiana does not require privity for warranty claims.  Dkt 12933 at 28 (citing *Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947, 948 (Ind. 2005)).  But as Plaintiff's quote from *Goodin* itself shows, Indiana has eliminated the requirement of privity ***only*** for claims of breach of the implied warranty of *merchantability*—a point that Cook itself noted in its original motion, also citing the *Goodin* case.  *See* Dkt. 12803 at 19.  As Cook also pointed out, however, Indiana ***retains*** the privity requirement for claims of breach of express warranty and breach of implied warranty of fitness for a particular purpose.  *See id.*; *see also Atkinson v. P & G-Clairol, Inc.*, 813 F. Supp. 2d 1021, 1026 (N.D. Ind. 2011) ("vertical privity is required for claims of breach of express warranty and breach of implied warranty of fitness for a particular purpose.") (collecting cases).  Plaintiff does not and cannot contest the privity requirement for these warranty

18

claims, and because Plaintiff cannot dispute that privity is absent, the claims fail as a matter of law.

### 2.   Plaintiff cannot avoid the statute of limitations on his alleged UCC warranty claims based on fraudulent concealment.

Moreover, even if these warranty claims were UCC claims instead of IPLA claims, as Plaintiff argues, *see* Dkt. 12933 at 28, they are barred by the UCC's four-year statute of limitations on such warranty claims, which runs from the date of delivery of the product.  *See* Ind. Code § 26-1-2-725(2); *Kenworth of Indianapolis, Inc. v. Seventy-Seven Ltd.*, 134 N.E.3d 370, 376 (Ind. 2019) (quoting section 725(2)).  Plaintiff tries to avoid this bar by asserting that Cook fraudulently concealed the breaches of warranty, Dkt. 12933 at 28-30, but that argument fails for at least two reasons.  Plaintiff has not plead his claim of fraudulent concealment with the particularity required by Rule 9(b), and he has not alleged that any conduct by Cook prevented him from learning of his claimed injuries.

Plaintiff did not plead fraudulent concealment with the particularity required by Rule 9(b). Because pleading is procedural, the federal rules govern pleading requirements in federal courts. "Under F.R.Civ.P. 9(b), the party alleging fraudulent concealment must plead the circumstances giving rise to it with particularity."  *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975). This Court has itself applied Rule 9(b)'s particularity requirement to a plaintiff's claim that fraudulent concealment tolled a statute of limitations.  *See Leathermon v. Grandview Mem'l Gardens, Inc.*, No. 4:07-CV-137-SEB-WGH, 2011 WL 2445980, at *8–9 (S.D. Ind. June 15, 2011) (applying Rule 9(b)'s particularity requirement to claim that fraudulent concealment tolled statute of limitations and finding requirement was met).

Under Rule 9(b), when fraud is alleged, "[t]he plaintiff must describe the 'who, what, when, where, and how' of the fraud—'the first paragraph of any newspaper story.'" *United States ex rel.*

*Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir., 2018) (quoting *United States ex rel. Lusby v. Rolls–Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)).  A plaintiff must allege at least the specific circumstances of the alleged fraud – the who, what, and how – to meet the particularity requirement.  *See, e.g., Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 669 (7th Cir. 2008).

Here, Plaintiff's pleading of fraudulent concealment is indefinite and non-specific, and it provides none of the detail necessary to state a claim sufficient to toll the statute of limitations. The relevant section of Plaintiffs' Master Consolidated Complaint alleges:

### TOLLING OF THE LIMITATIONS PERIOD

195. Defendants, through its affirmative misrepresentations and omissions, actively concealed from Plaintiffs and Plaintiffs' healthcare providers the true and significant risks associated with Cook's IVC Filters.

196. As a result of Defendants' actions, Plaintiffs and their prescribing physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiffs had been exposed to the risks identified in this Master Complaint, and that those risks were the result of Defendants' acts, omissions, and misrepresentations.

197. Accordingly, no limitations period ought to accrue until such time as Plaintiffs knew or reasonably should have known of some causal connection between Plaintiffs being implanted with a Cook IVC Filter and the harm Plaintiffs suffered as a result.

198. Additionally, the accrual and running of any applicable statute of limitations have been tolled by reason of Defendants' fraudulent concealment.

Dkt. 213 at 36.

These vague, conclusory allegations fall far short of the particularity required by Rule 9(b). Plaintiff does not allege who at Cook concealed information from Plaintiff or his doctors, what specific information Cook allegedly concealed, or how that concealment occurred.  The allegations are at most an assertion of a failure to disclose general information, not a specific allegation of fraudulent concealment of specific information.  As such, they are wholly insufficient under Rule

20

9(b), *see Windy City Metal*, 536 F.3d at 669, and cannot support tolling Plaintiff's statutes of limitations under the doctrine of fraudulent concealment.

In addition, even assuming for the sake of argument that Plaintiff had plead his fraudulent concealment claim with the required particularity, the conduct alleged cannot toll the statute of limitations on Plaintiff's claims because it does not relate to the accrual or discovery of Plaintiff's alleged warranty claims. To invoke fraudulent concealment tolling the statute of limitations under Indiana law, a plaintiff cannot merely claim that the defendant concealed information about the dangers of the product at issue and thereby caused the plaintiff's injury; a plaintiff must allege that the defendant fraudulently concealed information *about the existence of the plaintiff's cause of action itself*. The Indiana Supreme Court has described this requirement as follows:

> "Fraudulent concealment is an equitable doctrine that operates to estop a defendant from asserting the statute of limitations as a bar to a claim whenever the defendant ... 'has, either by deception or by a violation of duty, *concealed from the plaintiff material facts thereby preventing the plaintiff from discovering a potential cause of action*.'" *Doe v. Shults–Lewis Child & Family Servs., Inc.,* 718 N.E.2d 738, 744–45 (Ind.1999) (quoting *Fager v. Hundt,* 610 N.E.2d 246, 251 (Ind.1993)). In such cases, equity will toll the commencement of the applicable time limitation until such time as the plaintiff discovers, or in the exercise of ordinary diligence should discover, the existence of the cause of action. *Id.* The plaintiff then has "a reasonable amount of time" after that date to file his complaint.[2] *Alldredge v. Good Samaritan Home, Inc.,* 9 N.E.3d 1257, 1261 (Ind.2014) (quoting *Shults–Lewis Child & Family Servs.,* 718 N.E.2d at 745).

*Lyons v. Richmond Cmty. Sch. Corp.*, 19 N.E.3d 254, 260 (Ind. 2014) (emphasis added). "To invoke the doctrine where no fiduciary relationship exists between the parties, … a plaintiff must show that the wrongdoer was not simply silent but committed affirmative acts designed to conceal the cause of action." *Horn*, 50 F.3d at 1372 (citing, *inter alia*, *Malachowski v. Bank One, Indianapolis,* 590 N.E.2d 559, 563 (Ind. 1992)).

Here, Plaintiff makes no allegation that Cook committed any affirmative act to prevent him from discovering that he had a possible cause of action against the company. Indeed, Plaintiff

US.126834800.06

does not even allege that Cook **knew** before being sued in this action that Plaintiff **had** a cause of action against the company; on the contrary, Plaintiff claims he did not even know he was "injured" until his attorneys told him so.  Every allegation Plaintiff makes concerning Cook's supposed fraudulent concealment in his pleadings and his response to Cook's motion focuses entirely on Cook alleged concealment of information concerning the risks of its products.  *See, e.g.,* Dkt. 213 (Master Consolidated Complaint) at 36, ¶¶ 195-198; Dkt. 12306 at 12-14 (quoting Master Complaint passages and testimony from *Brand* trial that allege Cook failed to disclose risks of filters); Cook's Dkt. 12307 at 11-14 (same); 12300 at 16-22 (same); Dkt 12933 at 8-10, 28-29 (claiming Cook failed to disclose risks of product).  As this Court already held in its decision in the *Graham* case, absent allegations of affirmative conduct designed to prevent these Plaintiffs from discovering their causes of action, fraudulent concealment does not toll the statute of limitations and cannot defeat summary judgment.  *See* Dkt. 5575 at 7 (Graham Order, stating "even if the doctrine [of fraudulent concealment] could apply to [Plaintiff's] claims, Graham does not allege any affirmative conduct by the Cook Defendants that was designed to prevent, and did prevent, her from discovering her cause of action").

**E.**     **Cook is entitled to summary judgment on Plaintiff's claim under the Ohio Consumer Sales Practices statute, Ohio Rev. Code. Ann. § 1345.01 et seq., because none of the claimed offending conduct occurred in Ohio.**

Plaintiff's claim under the Ohio Consumer Sales Practices Act, Ohio Revised Code chapter 1345, fails as a matter of law because Plaintiff can offer no evidence that the sale of Plaintiff David McDermitt's IVC filter or any other "offending conduct" by Cook related to Mr. McDermitt occurred in Ohio, and the Ohio statute therefore does not apply.  Plaintiff does not deny that the sale and placement of his IVC filter occurred in Indiana, beyond the reach of the Ohio statute.  Plaintiff argues instead  that because he lives in and was later treated by doctors in

Ohio, Cook alleged continued concealment of information from him and his doctors constitutes "offending conduct" in Ohio. Plaintiff offers no authority to support this novel argument, and the argument makes no sense in the context of the Ohio statute and its purpose.

The Ohio statute is called the Ohio **Consumer Sales** Practices Act (emphasis added), and it prohibits "an unfair or deceptive act or practice **in connection with a consumer transaction**." Ohio. Rev. Code § 1345.02(A) (emphasis added). Indeed, as Plaintiff himself points out, one of the elements of a claim under the statute requires that the unfair or deceptive act be "material to the transaction at hand." *Burr v. Board of County Com'rs of Stark County*, 491 N.E.2d 1101, 1105 (Ohio 1986). The statute thus is not a general remedy for any objectionable conduct, but a vehicle for compensation for damage resulting from deception leading to a specific transaction. *Shorter v. Champion Home Builders Co.*, 776 F. Supp. 333 (N.D. Ohio 1991) (rejecting argument that statute should apply to claims by Ohio residents notwithstanding lack of Ohio transaction simply because "Ohio has an interest in protecting consumers in its state from unscrupulous business practices").

Here, Plaintiff does not dispute that the sale of the Cook filter to Plaintiff's treaters and all of the conduct by Cook that led up to that transaction occurred in Indiana. All of the conduct that Plaintiff characterizes as "occurring" in Ohio—Cook's alleged continued failure to inform Plaintiff and his doctors of various risks—postdates the filter transaction and could not have affected or been "material" to that transaction. Plaintiff points to no "unfair or deceptive act" by Cook "in connection with a consumer transaction" that occurred in Ohio.

On the contrary, all of the post-placement conduct that Plaintiff points to is notable for its **non**-occurrence in Ohio. Plaintiff does not claim that Cook made some post-placement statement to Plaintiff or one of his Ohio doctors that omitted some critical fact; Plaintiff claims

that Cook failed to actively follow Plaintiff into Ohio and to seek out and inform Plaintiff's Ohio doctors of certain risks that Plaintiff claims Cook failed to disclose before the transaction.  The Ohio statute does not impose a duty on out-of-state sellers to pursue out-of-state purchasers into Ohio and provide them or their doctors with additional information, and Plaintiff cites no statutory language or authority to suggest that it does.

The case of *Shorter v. Champion Home Builders Co.* is instructive on this point.  In *Shorter*, the plaintiffs purchased a mobile home in Pennsylvania and lived in it in Ohio.  *See* 776 F. Supp. at 334-35.  Plaintiffs sued the manufacturer under the Ohio Consumer Sales Practices Act, claiming that the manufacturer knew about the health risks posed by the formaldehyde in the home but failed to warn the plaintiffs.  *Id.* at 339.  The manufacturer moved to dismiss on the ground that none of the transactions involving the sale or manufacture of the home had occurred in Ohio, and the Ohio statute therefore did not apply.  *Id.*  Despite the fact that the plaintiffs had actually lived in the mobile home in Ohio and the defendant presumably did not follow them to Ohio to provide information about formaldehyde allegedly omitted from the original Pennsylvania transaction, the court found the Ohio statute inapplicable because the relevant ***transactions*** had occurred outside the state.  *Id.* at 338-39.  Likewise here, the relevant issue is Cook's conduct leading up to the Indiana transaction, not Cook's supposed failure to follow Plaintiff into Ohio after the transaction to provide him with additional information.

Plaintiff's argument would effectively permit any consumer anywhere to invoke the Ohio statute merely by coming to Ohio after purchasing a product and claiming that the manufacturer's failure to warn had continued in Ohio.  No authority supports such a conclusion, and Plaintiff's argument makes no sense in the context of the statutory language and the case law

interpreting it.  Plaintiff's claim under the Ohio Consumer Sales Practice Act fails as a matter of law because none of alleged "offending conduct" under the statute occurred in Ohio.

**F.      Cook is entitled to summary judgment on Plaintiff's claim for punitive damages.**

This Court has held that Indiana law applies to claims for punitive damages in this MDL,[9] and Plaintiff has stipulated that Indiana law applies to all claims in this case.  Plaintiff does not dispute that under Indiana law, if Plaintiff's claims for actual damages fail as a matter of law, Cook is entitled to summary judgment on Plaintiff's claim for punitive damages.  *See Chaiken v. Eldon Emmor & Co.*, 597 N.E.2d 337, 349 (Ind. Ct. App. 1992).  As detailed above, all of Plaintiff's claims for compensatory damages fail as a matter of law, so his claim for punitive damages fails as well.

<u>**CONCLUSION**</u>

For the reasons set forth above, the Cook Defendants urge the Court to grant it summary judgment on all of Plaintiff's claims in this case.

---

[9] *See. e.g.,* Dkt. 10295-1 at 9-11, Brand Trial Tr. at 4388:9-11 (Williams:  "[D]id we ever decide what substantive law would apply to the punitive phase?  THE COURT: We're using Indiana."); *see also*  Exhibit A, February 7, 2020 Tr. at 60:2-4 (PSC Counsel Siegel: "Your Honor has decided the choice of law as to punitive damages issue."); *id.* at 55:11-13 (PSC Counsel Siegel: "The question of whether Indiana law should apply to punitive damages [is a] broad ruling applicable to all claimants.").

US.126834800.06

Respectfully submitted,

Dated: March 2, 2020

/s/Andrea Roberts Pierson
Andrea Roberts Pierson
Jessica Benson Cox
FAEGRE DRINKER BIDDLE & REATH
LLP
300 North Meridian Street, Suite 2500
Indianapolis, Indiana 46204
Telephone: (317) 237-0300
Andrea.Pierson@faegredrinker.com
Jessica.Cox@faegredrinker.com

James Stephen Bennett
FAEGRE DRINKER BIDDLE & REATH
LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana 46802
Telephone: (260) 424-8000
Stephen.Bennett@faegredrinker.com

*Attorneys for Defendants Cook Incorporated, Cook Medical LLC f/k/a Cook Medical Incorporated, William Cook Europe ApS*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 2, 2020, a copy of the foregoing THE COOK

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY

JUDGMENT—STATUTE OF REPOSE was filed electronically, and notice of the filing of this

document will be sent to all parties by operation of the Court's electronic filing system to

CM/ECF participants registered to receive service in this matter.  Parties may access this filing

through the Court's system.


/s/Andrea Roberts Pierson

US.126834800.06