IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |
| This Document Relates to<br>David McDermitt, Civil Case No.: 1:18-cv-00946 | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE OR LIMIT THE EXPERT TESTIMONY OF ANTONIOS P. GASPARIS, MD**

Plaintiff David McDermitt submits this Memorandum of Law in Support of Motion to Exclude or Limit the Expert Testimony of Antonios P. Gasparis, MD, and respectfully requests that the Court exclude the proffered testimony from Dr. Gasparis laid out below.

**INTRODUCTION**

Dr. Gasparis is a vascular surgeon who has offered opinions regarding the efficacy of IVC filters. *See* Exhibit A, Expert Report of Dr. Gasparis ("Gasparis Rep."). Plaintiff brings this *Daubert* challenge to Dr. Gasparis's proffered testimony, as certain components of this testimony entirely lackmedical or scientific support, and as such, these portions of Dr. Gasparis's testimony should be excluded.

1

## **LEGAL STANDARD**

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Civil Procedure and the principles announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 579 (1993). Federal Rule of Evidence 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness is qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

Before admitting expert testimony, *Daubert* requires that the district court function as a gatekeeper to ensure that expert testimony is both relevant and reliable. *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000). "In other words, as a threshold matter 'a district court is required to determine (1) whether the expert would testify to valid scientific knowledge, and (2) whether that testimony would assist the trier of fact with a fact at issue.'" *Id.* (quoting *Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 590 (7th Cir. 2000)).

In ascertaining whether an expert's opinion pertains to scientific knowledge, the court must consider whether the methodology employed by the expert in reaching his or her conclusion is sufficiently grounded in the "methods and procedures of science." *Daubert*, 509 U.S. at 590. This inquiry ensures that the expert's testimony is based upon more than just "subjective

belief or unsupported speculation." *Id.* This also ensures that the jury hears only reliable and useful expert testimony. Precedent in this Circuit emphasizes the importance of the court's gatekeeping duties under *Daubert* "lest apparently scientific testimony carry more weight with the jury than it deserves." *DePaeppe v. General Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998). As the proponent of Dr. Lee's testimony, Cook has the burden of demonstrating admissibility. *See Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

Jurors afford great deference to expert testimony, rendering the court's gatekeeping function especially vital. *See, e.g., United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004) (noting that "expert testimony may be assigned talismanic significance in the eyes of lay jurors").

## ARGUMENT

Dr. Gasparis's opinions regarding the "unethical" nature of studying the Gunther Tulip's efficacy and safety should be excluded because they lack foundation, and as such, are unreliable, misleading, and would assist a jury. To start, Dr. Gasparis states the following regarding the lack of studies conducted on Cook's Gunther Tulip device:

> There is a subset of patients for whom mechanical and/or pharmacologic therapy is contraindicated or has failed, and in this group, placement of an IVC filter may be the only treatment option to prevent clot that embolizes from the leg reaching the heart. If an IVC filter is not offered, then these patients would be left completely untreated and at risk of a major fatal pulmonary embolism. (Barritt et al Lancet 1960). Given the high mortality in patients with untreated VTE demonstrated in the randomized

3

> study by Barritt and Jordan, there will never be a randomized study comparing IVC filter to no filter in patients who cannot receive other therapy options. Which is why the studies done comparing filter to no filter include anticoagulation in both treatment arms (PREPIC 1 and PREPIC 2).

Ex. A, Gasparis Rep. at 6.

There are two significant issues with this proffered testimony from Dr. Gasparais. First, Dr. Gasparais does not explain whether the methodologies and principles of his statement "Given the high mortality in patients with untreated VTE demonstrated in the randomized study by Barritt and Jordan, there will never be a randomized study comparing IVC filters to no filters" has been tested, subjected to peer review and publication, or generally accepted in the scientific community. Second, this testimony directly contradicts testimony from Cook's pharmacist and pharmacoepidemiologist expert, Dr. Lee, who stated the following in his report: "Moreover, because the PE-related fatality rate may be *relatively low*, IVC filters may not have a large impact on overall mortality." Exhibit B, Expert Report of Todd Lee ("Lee Rep.") at 18 (emphasis added).

Dr. Gasparis goes on to state:

> I mentioned above, there is a subset of patients in whom pharmacologic treatment or prophylaxis for VTE is contraindicated or has failed. In these patients, the risk of PE and mortality from PE is significant; **thus, placement of an IVC filter can be lifesaving.** As outlined in Dr. Morris's report, it would be unethical to perform a large-scale clinical trial on patients with VTE and give one-half of the patients nothing and the other half of the patients a filter. The published literature available, however, does suggest that filters are associated with improved outcomes in many patients.

Ex. A, Gasparis Rep. at 12.

4

To start, Dr. Gasparis has failed to provide any medical or scientific support for the statement that Cook's Gunther Tulip filter "can be lifesaving." Not only has Cook's expert, Dr. Lee, offered the opinion that pulmonary embolism fatality rate is "relatively low," but there is no evidence cited by Dr. Gasparis anywhere in his report to support the statement that Cook's Gunther Tulip device has actually saved a life. Just as the Plaintiffs were prevented in this Court's recent ruling in *Brand* from using the deaths involving other filters as evidence, so should this court prevent the Cook Defendants from using general statements about filters being life-saving as evidence in a Tulip case. IF Dr. Gasparis can demonstrate with any specific study ON Tulip filters that those filters save lives, then evidence that Tulip filters save lives should be admissible. Until then, they should not be allowed to testify that Gunther Tulip filters save lives.

Dr. Gasparis goes on to state: "There is no large randomized, controlled trial ('RCT') that compares different types of filters, and such a study is not possible or practical given the considerations noted above." Ex. A, Gasparis Rep. at 24. Dr. Gasparis's testimony that it is "not possible" to study the efficacy or safety of Cook's Gunther Tulip device should also be excluded. Dr. Gasparis offers no support for this overly absolute statement, and it directly contradicts Cook's own internal documents. Evidence in this case shows that Cook intended to perform a human clinical study, called a "pivotal study," to examine efficacy of its device but decided against it when they learned Bard

5

had attempted 510(k) FDA clearance with its competitor device.[1] Not only should Dr. Gasparis be excluded from speaking in such absolute terms regarding Cook's decision to not study the efficacy of its device ("not possible"), but this statement, even in looser terms, is simply not true. Accordingly, this testimony from Dr. Gasparis lacks foundation and would be misleading and unhelpful to the jury. This testimony should be excluded.

> Dr. Gasparis goes on to state:
>
> Through my education, experience, clinical practice, and review of the literature, it is my opinion that in appropriately selected patients, filters are effective, they save lives, and protect people from the devastating effects of PE. Additionally, based on my education, experience, clinical practice, review of the literature, review of device complaint databases, and the Cook Data Summary, I find that the general risks inherent with filters and associated injuries are very low, while the benefit conferred may be life-saving to a patient. I incorporate here the portions of Dr. Morris's report addressing those risks and benefits, with which I agree.

Ex. A, Gasparis Rep. at 10.

Dr. Gasparis offers no specific scientific or medical support for the statement "they save lives" when talking about Cook's Gunther Tulip device. Accordingly, this opinion lacks foundation and should be excluded.[2]

Dr. Gasparis continues: "Because of these experiences, my education and published literature I believe that IVC filters in a subset of patients are life-saving

---

[1] "It was decided to try sending in a 510(k) for retrieval indication using only our pilot study and other published literature. This was based on the fact that Bard submitted a 510(k) in April for the Recovery removable filter and expects to receive clearance late this year." CookMDL2570_0183121.

[2] The argument regarding statements made regarding personal experiences is directly addressed in Plaintiff's Motion to Limit or Exclude Anecdotal Testimony. *See also Berk v. St. Vincent's Hosp. & Med. Ctr.*, 380 F.Supp.2d 334, 354 (S.D.N.Y. 2005).

and necessary tools for doctors, like myself, to help protect patients' lives." Ex. A, Gasparis Rep. at 13. Still, Dr. Gasparis offers no specific scientific or medical support for the statement that this device is "life-saving." This testimony should therefore be excluded as well.

Dr. Gasparis goes on to opine that "we expect some degree of penetration to occur with every filter." With no specific scientific or medical support for this statement, Dr. Gasparis may be attempting to offer this testimony simply to rebut Plaintiff's claims for injury in this case. Regardless of the intent however, Dr. Gasparis is not an engineer, and he offers no scientific or medical support for this statement that "we expect some degree of penetration to occur with every filter." Dr. Gasparis should not be permitted to offer this unfounded statement that would undoubtedly be misleading and unhelpful to the jury in this case.

## CONCLUSION

For the foregoing reasons, Plaintiff requests the subject testimony from Dr. Gasparis be excluded.

Dated:  March 17, 2020

        Respectfully submitted,

        */s/ Stuart L. Goldenberg*
        Stuart L. Goldenberg (#158719)
        Benjamin C. Stellpflug (#0401095)
        GOLDENBERGLAW, PLLC
        800 LaSalle Avenue, Suite 2150
        Minneapolis, MN 55402
        Telephone: (612) 333-4662
        Facsimile: (612) 367-8107
        slgoldenberg@goldenberglaw.com
        bstellpflug@goldenberglaw.com

Joseph N. Williams (#25874-49)
RILEY WILLIAMS & PIATT
301 Massachusetts Avenue
Indianapolis, IN 46204
(317) 633-5270 (phone)
(317) 426-3348 (fax)
jwilliams@rwp-law.com

Michael W. Heaviside, Esq.
HEAVISIDE REED ZAIC, A LAW CORPORATION
910 17th Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 223-1993
mheaviside@hrzlaw.com

Ben C. Martin, Esq.
Martin Baughman, PLLC
3710 Rawlins Street, Suite 1230
Dallas, TX 75219
Telephone: (214) 761-6614
Facsimile: (214) 744-7590
bmartin@martinbaughman.com

David P. Matthews, Esq.
MATTHEWS AND ASSOCIATES
2509 Sackett St.
Houston, TX  77098
Telephone: (713) 522-5250
Facsimile: (713) 535-7184
dmatthews@thematthewslawfirm.com

*Counsel for Plaintiff.*

8

**CERTIFICATE OF SERVICE**

I hereby certify that on March 17, 2020, a copy of the foregoing was served via email and U.S. Mail to the following:

Jessica Benson Cox
Andrea Roberts Pierson
Faegre Baker Daniels LLP
300 N. Meridian Street, Suite 2500
Indianapolis, IN 46204
jessica.cox@faegredrinker.com
andrea.pierson@faegredrinker.com

                                          */s/ Luc Mainguy*