# EXHIBIT J

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 1

1             UNITED STATES DISTRICT COURT
2             SOUTHERN DISTRICT OF INDIANA
3                INDIANAPOLIS DIVISION
4                       * * *
5
6   IN RE:  COOK MEDICAL, INC., IVC FILTERS
            MARKETING, SALES PRACTICES AND
7           PRODUCT LIABILITY LITIGATION
8
              CASE NO.  1:14-ml-2570-RLY-TAB
9
10  This Document Relates to
    David McDermitt, Civil Case No:  1:18-cv-00946
11
12                      * * *
13
14
15            Videotaped Deposition of
16  SHANNON KAUFFMAN, MD, a witness herein, called
17  by the defendant for examination pursuant to
18  the Rules of Civil Procedure, taken before me,
19  Patti Stachler, RMR, CRR, a Notary Public
20  within and for the State of Ohio, at the
21  Marriott at University of Dayton, 1414 South
22  Patterson Boulevard, Dayton, Ohio, on
23  December 2, 2019, at 11:57 a.m.
24                      * * *
25

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 46

1 careful review of Mr. McDermitt's filter on
2 April 21st, 2017, correct?
3     A.  Correct.
4     Q.  And as of April 21st, 2017, you
5 had placed and retrieved filters from your own
6 patients, correct?
7     A.  Correct.
8     Q.  And you'd already begun your
9 participation in PRESERVE study on IVC filters,
10 correct?
11    A.  Correct.
12    Q.  Had you identified filter
13 complications as part of your practice before
14 reading Mr. McDermitt's CT?
15    A.  Yes.
16    Q.  Did you identify any complication
17 with Mr. McDermitt's IVC filter on this CT?
18    A.  No.
19    Q.  Did you see anything at all in
20 this CT that raised any concern about his
21 filter?
22    A.  No.
23    Q.  If you had, would you have noted
24 it in your report?
25    A.  Yes.

Page 47

1     Q.  Did you note anything that might
2 place Mr. McDermitt at risk for complication?
3     A.  No.
4     Q.  Would you have?
5     A.  No.  I think -- yes, I would have
6 noted that if there was a complication.
7         Again, I think this goes back to
8 an earlier question that you had for me:  Does
9 any medical device -- is any medical device
10 free of risk or complication.  I don't believe
11 that any medical device is free of a risk of
12 complication.  You have to watch these things
13 and judge whether or not you're having a
14 complication and what to do with it from there.
15 But at this point in time, no, he was not
16 having a complication from his filter, in my
17 opinion.
18    Q.  Have you re-reviewed the CT scan
19 since April of 2017?
20    A.  Yes.
21    Q.  Did you come to the very same
22 conclusions after this re-review?
23    A.  Yes.
24    Q.  Anything that you would change
25 about your report sitting here today?

Page 48

1     A.  No.
2     Q.  If one of the struts of
3 Mr. McDermitt's filter appeared to be two,
4 three, four, five millimeters outside of his
5 IVC on these images, would that be concerning
6 to you?
7     A.  It would not because I see it so
8 frequently.
9     Q.  Have you found it to be a problem
10 when you've seen it other times?
11    A.  Again, that depends on the
12 clinical scenario.  If someone is having pain
13 from it, if someone is having hemorrhage or
14 hematoma formation from it, if it's eroding or
15 penetrating into an adjacent structure that's
16 causing a problem, then, yes, it would be a
17 concern.
18         In general, penetration or
19 perforation I don't personally feel is a
20 complication because you see it so commonly.
21    Q.  So unless it meets our PRESERVE
22 definition, it's not a complication?
23    A.  Correct.
24    Q.  You were told that Mr. McDermitt
25 wanted his filter evaluated for potential

Page 49

1 retrieval, correct?
2     A.  Correct.
3     Q.  Did you notice anything on his CT
4 that looked like it would prevent his filter
5 from being retrieved the normal way through a
6 small incision in his vein?
7     A.  No.
8     Q.  Anything that made you think his
9 filter would only come out if he had a surgery?
10    A.  No.
11    Q.  Anything on his CT that would make
12 you personally avoid attempting to retrieve his
13 filter?
14    A.  No.
15    Q.  Now, you don't recall speaking to
16 him after having the CT, correct?
17    A.  I do not.
18    Q.  If you were to meet with him today
19 and tell him what you saw on his CT scan, what
20 would you tell him?
21    A.  I would evaluate him.  If he wants
22 his filter out, we could certainly evaluate him
23 to see if he's, one, appropriate candidate to
24 have it out.  He may or may not be after
25 looking at his medical history.  And then, two,

Veritext Legal Solutions
www.veritext.com                                                888-391-3376

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 50

1 talk to him about the potentials for taking
2 that filter out. There are both simple and
3 complex retrieval methods that can be employed,
4 and we would go over each of those.
5  Q. Would you tell him his imaging
6 looks like a normal filter that had been in the
7 body for 12 years?
8  A. Yes.
9  Q. Would you tell him there's
10 anything to be concerned about?
11  A. I would go through my normal risks
12 and benefits of taking a filter out. I don't
13 think there's anything in particular, based on
14 this CT scan, that would make that any more
15 complex than any other filter. In fact,
16 certainly it would be less complex than some
17 that we've taken out.
18  Q. Mr. McDermitt testified that you
19 told him his filter had adhesed to the vein.
20 Do you recall telling him this?
21  A. I do not.
22  Q. Is that something you would have
23 told him based on your review?
24  A. Certainly, you know, if I'm
25 talking to a filter -- talking to a patient

Page 51

1 about a filter retrieval, we talk about the
2 fact that these things become encased in
3 tissue, that the body grows tissue over them
4 and sometimes they become adherent to the wall
5 of the vein. That's a normal and expected
6 consequence of putting a filter in. So, yeah,
7 it comes up in conversation that we talk about.
8 It's not a huge concern to me. That's a normal
9 and expected finding.
10  Q. He also testified that you told
11 him his filter was perforated by two
12 millimeters. Do you recall telling him that?
13  A. I do not.
14  Q. Is that something you would have
15 told him based on your reading of the CT?
16  A. I suppose I could have. We talk
17 about that. We talk about perforation. But,
18 again, I don't feel like that's a complication.
19 So it's something that we talk about with any
20 of our filter patients. It's not necessarily
21 something that prohibits retrieval or makes it
22 any more difficult.
23  Q. He testified that you told him his
24 filter could only come out if he had a surgery
25 to remove it. Would you have told him that?

Page 52

1  A. I would have not told -- I would
2 have not told him that on the basis of this
3 only because -- I guess it depends on what your
4 interpretation of the surgery is. Mine is not
5 that we do surgeries, per se. We do
6 image-guided procedures. But is it a surgery
7 like an open surgery? No, it's not an open
8 surgery.
9  Q. He testified that he's worried
10 something might go wrong with his filter. Did
11 you see anything on the April 2017 CT that made
12 you think something is likely to go wrong with
13 his filter?
14  A. No more likely than anybody else.
15  Q. Have we talked about everything
16 that you can recall about your care and
17 treatment, evaluation of Mr. McDermitt's IVC
18 filter?
19  A. I believe so, yes.
20   MS. COX: Okay. I think that's all I
21 have.
22   MR. GOLDENBERG: Why don't we just
23 take a break for a couple minutes?
24   THE VIDEOGRAPHER: Off the record.
25   (Recess taken from 12:41 to 12:53.)

Page 53

1   THE VIDEOGRAPHER: We are back on the
2 video record.
3    CROSS-EXAMINATION
4 BY MR. GOLDENBERG:
5  Q. Okay. Sir, my name is Stuart
6 Goldenberg, and I represent the plaintiff,
7 Mr. McDermitt, in this case.
8   Can you tell me all you know about
9 Mr. McDermitt?
10  A. I know what I know from that
11 report. I don't recall meeting him, so I know
12 his CT scan.
13  Q. Okay. Other than his CT scan, can
14 you tell me why he had a IVC filter put in?
15  A. I cannot.
16  Q. Can you tell the members of the
17 jury anything about his medical history?
18  A. Other than that CT scan, no, I
19 don't know.
20  Q. Can you tell me any reason why he
21 would need a IVC filter in today?
22  A. Why he had it originally placed or
23 why he --
24  Q. No. Why --
25  A. No.

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 82

1 Christina Hunt is?
2    A.  I do not.
3    Q.  Okay.  Is there some reason why
4 you think Mr. McDermitt wasn't referred back to
5 you to have you remove it?
6    A.  I do not know.
7    Q.  Okay.  Are there specialized
8 people at Ohio State University that specialize
9 in complex removals?
10    A.  I would imagine so.  I do not know
11 their names, but I would imagine so.
12    Q.  Is that something you specialize
13 in?
14    A.  Sure.  We do complex filter
15 retrievals here as well.
16    Q.  Okay.  In any regard, you were
17 never referred back Mr. McDermitt?
18    A.  Was not.
19    Q.  Okay.  Has there been a time
20 when -- you mentioned before that it wasn't
21 infrequent for you to be in contact with the
22 Cook representatives?
23       MS. COX:  Object to form.
24 Foundation.
25    A.  I would say, yes.  I mean, they

Page 83

1 come through our department.
2 BY MR. GOLDENBERG:
3    Q.  How frequently would they come
4 through your department?
5    A.  Cook?  Actually, not very common.
6    Q.  Okay.  I mean, couple times a
7 year?
8    A.  Yeah, I would guess.
9    Q.  Okay.  Do you ever go to
10 conventions where Cook is a sponsor?
11    A.  Sure.  Yes.
12    Q.  Okay.  And when you go to those
13 conventions, typically what kinds of
14 information does Cook have available?
15    A.  They have information available on
16 their products, typically they have
17 representatives there that you can talk to
18 about their products if you have questions
19 about them.
20    Q.  Sure.  Would you believe that you
21 should be entitled to rely on the accuracy of
22 the information that Cook is giving you at
23 those conventions?
24    A.  Yes.
25    Q.  Okay.  You personally don't design

Page 84

1 a medical device, correct?
2    A.  No.
3    Q.  You personally don't test the
4 medical device?
5    A.  No.
6    Q.  Okay.  You rely on the
7 manufacturer to do that, correct?
8    A.  Correct.
9    Q.  Okay.  Do you ever remember
10 specifically wanting to speak to Cook about
11 some of their devices?
12    A.  Not that I recall.  I -- no, let
13 me take that back.  There was one product that
14 I used that I needed to speak with a rep about.
15    Q.  Okay.  What product was that?
16    A.  It was a enterocutaneous fistula
17 plug.
18    Q.  And did you ever have some ideas
19 for modifications to some of their products?
20    A.  Not that I recall, no.
21    Q.  Okay.
22    A.  You mean that I spoke with a rep
23 about or in general --
24    Q.  Yeah.
25    A.  -- in my head?  No.

Page 85

1    Q.  Do you know who Elizabeth Deters
2 is?
3    A.  I do.
4    Q.  Who is that?
5    A.  She is a Cook representative.
6    Q.  Okay.
7    A.  Or was.  I don't know if she still
8 is.  I haven't seen her in a long time.
9    Q.  Okay.  Maybe back in the 2013, '14
10 area?
11    A.  Sure.
12    Q.  Okay.
13       MR. GOLDENBERG:  Why don't we mark
14 this?
15       MR. WILLIAMS:  Here, I got it.
16       MR. GOLDENBERG:  Oops.  Thank you.
17 What number is that?
18       MR. WILLIAMS:  8.
19       (Plaintiff's Exhibit 8 was marked
20       for identification (not used).)
21 BY MR. GOLDENBERG:
22    Q.  I'm going to show you Exhibit --
23       MS. COX:  Actually, hasn't that been
24 marked confidential?  He hasn't signed the
25 protective order.

22 (Pages 82 - 85)