# EXHIBIT N

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 1

```
 1           UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF INDIANA
 2               INDIANAPOLIS DIVISION
 3
    IN RE: COOK MEDICAL,        *
 4  INC., IVC FILTERS           *
    MARKETING, SALES            * CASE NO.
 5  PRACTICES AND PRODUCT       * 1:14-M1-2570-RLY-TAB
    LIABILITY LITIGATION        * MDL NO. 2570
 6                              *
    IN RE:                      *
 7  DAVID MCDERMITT, CIVIL      *
    CASE NO.: 1:18-CV-00946     *
 8
 9
10       *****************************************
              ORAL AND VIDEOTAPED DEPOSITION OF
11                LAURA PLUNKETT, PHD, DABT
                     JANUARY 21, 2020
12       *****************************************
13
14          ORAL AND VIDEOTAPED DEPOSITION OF LAURA
15  PLUNKETT, PHD, DABT, produced as a witness at the
16  instance of the DEFENDANT(S), and duly sworn, was
17  taken in the above-styled and numbered cause on
18  JANUARY 21, 2020, from 9:35 A.M. to 5:04 P.M.,
19  before AMY PRIGMORE, CSR, in and for the State of
20  Texas, reported by stenographic means, at the
21  offices of The Nations Law Firm, 9703 Richmond
22  Ave., Suite 200, Houston, Texas, pursuant to the
23  Federal Rules of Civil Procedure and the provisions
24  stated on the record or attached hereto.
25
```

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 7

1    A.  Yes, that's correct.
2    Q.  And none of the opinions you've offered are
3  specific to the design of the filter, correct?
4    A.  That's correct.  I'm not an engineer, so I'm
5  not speaking about design, specifically.
6            MR. GOLDENBERG:  I'm --
7    A.  Other --
8            MR. GOLDENBERG:  I'm just going to
9  interpose an objection that under the legal
10 definition of design, there could be issues of
11 efficacy, et cetera, that relate to the legal issue
12 of design.
13           But as far as a material design
14 goes, that -- that's not something that we're --
15 that she's an expert in.
16   Q.  (BY MS. CALHOON)  Dr. Plunkett, when I asked
17 my question, did you have an understanding that
18 there is something called the material design of
19 the filter?
20   A.  Well, that's not a -- that's not a term I
21 would have used.
22        No, what I would -- what I was going to
23 finish telling you was, I mean, I obviously have,
24 in my report, opinions about conical filters
25 generally, what this filter is designed to do

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 8

1  generally, what the -- whether -- the fact that --
2  that this -- this filter had a design that meant it
3  could be retrieved.  So, in those aspects.
4          But when I was -- when you asked the
5  question about design, I'm typically thinking as an
6  engineer, I could say that there's a safer
7  alternative design, and I haven't formed opinions
8  about that.
9      Q.  And when you say conical filters, generally,
10 being something that you have offered opinions
11 about within your report, then that's not specific
12 to the filter tulip, correct?
13     A.  Well, some of it is because I talked
14 specifically about the fact the fil -- the -- the
15 tulip filter has certain types of adverse events
16 related to it that are consistent with the --
17 obviously with the fact that it's a conical filter.
18         Other conical filters have similar problems.
19 For example, the perforation issue, the tilt issue.
20 Those are things that are there.
21         But I don't think -- I'm not a biomedical
22 engineer, so I have not addressed what I would
23 consider typical design issues.
24         And so that's how I'm answering the
25 question.  I'm a pharmacologist, toxicologist,

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 9

1  regulatory person.
2      Q.  And you are not offering causation opinions
3  in this case, correct?
4      A.  No, I don't believe so.
5      Q.  So you have not analyzed whether the filter
6  in this case caused Mr. McDermitt an injury, right?
7      A.  No.  That's not something I was asked to do.
8  It's my understanding that there's other experts
9  that are addressing that.
10     Q.  I noticed that on your list of materials
11 reviewed in your report, you listed some of his
12 medical records, Mr. McDermitt's medical records.
13     A.  Yes.
14     Q.  Did those records inform your opinions, in
15 this case?
16     A.  Generally, yes, from the fact that what I
17 typically want to know is that the person did,
18 indeed, receive the filter.  And what -- and
19 what -- what -- when it was put in; and then if
20 there's any subsequent issue about what may have
21 been generally reported.
22         But I'm not looking at the records in the --
23 as a doctor would -- when I say doctor, physician,
24 in order to determine whether or not there was a --
25 something in the records that would say something

CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER

Page 25

1   Q. You're not a pathologist.
2   A. I am not.
3   Q. And I believe you stated earlier that you're
4   not an engineer.
5   A. That's correct. I'm not.
6   Q. And you're not a biomedical engineer.
7   A. No, I'm not.
8   Q. And you are not a metallurgist.
9   A. No -- well, by degree, absolutely not. I am
10  very familiar with issues related to heavy metals
11  in toxicology, but not in -- in -- not as -- as
12  someone who studies the properties of -- of use of
13  medicals in -- metal -- metals in design of
14  devices, no.
15  Q. But none of your opinions in this case
16  relate to the toxicity of metals, or anything in
17  that regard that you were just telling me about,
18  correct?
19  A. That's correct. I -- I -- I didn't -- I
20  don't believe that's an issue in this case.
21  Q. And you've never published a peer-reviewed
22  article on medical devices.
23      Is that correct?
24  A. That's correct. I've done presentations and
25  abstracts at meetings, but never a -- a