UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB MDL No. 2570 |

This document relates to:
**All Cases**

## COOK DEFENDANTS' MOTION TO RECONSIDER
## THE COURT'S FEBRUARY 24, 2020 ORDER ON CHOICE OF LAW

The Cook Defendants respectfully request that the Court reconsider its February 24, 2020 order, exempting thousands of cases from the rule established in *Klaxon Co. v. Stentor Electric Manufacturing Co.* that a federal court sitting in diversity must apply the choice-of-law rules of the state in which the court sits. 313 U.S. 487, 496 (1941). This request is made for two fundamental reasons. First, by subjecting Cook to the substantive law of foreign jurisdictions, without its consent, the Court's order violates Cook's due process rights. Second, by creating a federal common-law exception to the *Klaxon* rule, the order violates the *Erie* doctrine, which is the basis for the *Klaxon* rule and which prohibits federal courts from making common law. Alternatively, if the Court does not revert to its original ruling that Indiana substantive law applies to cases originally filed in the Southern District, at a minimum the Court should (a) limit its carve-out to the *Klaxon* rule to the period between May 31, 2017 (when the Court entered an order mistakenly suggesting there was a direct-filing order) and June 13, 2019 (when the Court first made clear there was no direct-filing order), instead of between May 31, 2017 and October 29, 2019; and (b) require each plaintiff seeking the benefit of the equitable carve-out to show actual—and not just theoretical—reliance on the Court's May 31, 2017 order.

Cook recognizes that through its February 24 order the Court is attempting to strike a fair balance between law and equity. But sacrificing Cook's constitutional rights in the process and violating *Erie*'s command to apply the forum state's substantive law is not the way to achieve fairness. Absent a written direct-filing order in which Cook knowingly and voluntarily waived its right to have another forum's choice-of-law rules govern in cases filed originally in the Southern District—and the Court has stated multiple times, on the record, there is no such order—the Court is bound by *Klaxon* to apply Indiana substantive law, including Indiana's choice-of-law rules.

**ARGUMENT**

The Court's February 24 order holds that cases originally filed in the MDL between May 31, 2017 and October 29, 2019 will be treated "as though there was an express direct filing order issued in this case." Dkt. 12931 at 4. Under this ruling, thousands of cases are now "governed by the choice-of-law rule of the Plaintiffs' 'home' jurisdiction," *id.*, instead of Indiana's choice-of-law rules, as the Court originally held, Dkt. 12256, Minute Entry of Oct. 29, 2019. This holding is contrary to Supreme Court precedent and foundational principles of fairness.

By way of brief background, and as a reminder, the following key facts are now established:

1.      The parties have never stipulated to a direct-filing order and, as such, have never agreed on the terms of any direct-filing order, Dkt. 12931 at 4; *see also* Entry for Proceedings Held on June 13, 2019, Dkt. 11131 at 2; Transcript of Oct. 25, 2019 Hearing on Cook's Omnibus Mot. for Summ. J. at 26:23-27:1;

2.      The Court has never entered a direct-filing order in this case, with or without a choice-of-law provision, Dkt. 12931 at 4;

2

3.      Cook has consistently maintained that it is not subject to personal jurisdiction and venue in states other than Indiana, *see* Cook's Resp. to Pls.' *Lexecon* Br., Dkt. 10786 at 17 n.10 (noting that Cook has "asserted lack of personal jurisdiction as an affirmative defense in all of these cases"); Am. Master Ans., Dkt. 8180, ¶¶ 24-28; Master Ans., Dkt. 456, ¶¶ 24-28, Defense No. 41; Notice of Agreement, Dkt. 318, ¶ 4 (stipulating that Cook's entry of appearance "alone shall serve as a general denial of the allegations contained in the Short Form Complaint and confirmation that Defendants adopt the Master Ans. and Affirmative Defenses");

4.      The cases at issue here were originally filed in this District and, thus, the Court is not a "transferee" court, Entry for Proceedings Held on June 13, 2019, Dkt. 11131 at 2;

5.      Venue in the MDL forum is proper with respect to all cases based on the Cook Defendants' headquarters in this District, Entry for Proceedings Held on June 13, 2019, Dkt. 11131 at 2; *see also* Master Compl., Dkt. 213 at 8, ¶ 28 (alleging that "venue is proper in this jurisdiction under 28 U.S.C. §1391"); Master Ans., Dkt. 8180, ¶ 28; and

6.      "[T]he court has complete authority over cases originally filed in this court, just as it would over any other case originally filed in this district. This complete authority includes the authority to try such cases." Entry for Proceedings Held on June 13, 2019, Dkt. 11131 at 2.

The Court's February 24 order is squarely at odds with these established facts.

## I.  Imposing the Laws of Foreign Jurisdictions on Cook Without its Consent Violates Cook's Due Process Rights.

The Court's February 24 order improperly subjects Cook to the law of each plaintiff's "home" jurisdiction. Not only has Cook never consented to being sued by these plaintiffs under the laws of other jurisdictions, Cook has never forfeited its defenses that it is not subject to personal jurisdiction in the plaintiffs' "home" states, or that venue is not proper there. To the contrary, Cook has consistently maintained that it is not subject to suit outside of Indiana. *See* Cook's

US.126985295.11

Resp. to Pls.' *Lexecon* Br., Dkt. 10786 at 17 n.10 (noting that Cook has "asserted lack of personal jurisdiction as an affirmative defense in all of these cases"); *see also* Master Ans., Dkt. 456, ¶ 24 (admitting only that the named Cook Defendants are located in Indiana and do business in Indiana and "denying all other allegations in paragraph 24"); Am. Master Ans., Dkt. 8180 (same and also raising lack of personal jurisdiction as additional defense no. 41); Notice of Agreement, Dkt. 318, ¶ 4 (denying Cook is subject to suit outside of Indiana). Nevertheless, the Court's order effectively disarms Cook of these important defenses by imposing the laws of numerous foreign jurisdictions on Cook without its consent. This violates Cook's due process rights.

"[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts [with the case], creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985) (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 308 (1981)). Absent a defendant's consent, a defendant is subject only to the laws of those forums that have personal jurisdiction over the defendant, and for personal jurisdiction to exist, the defendant must "purposefully establish" sufficient minimum contacts within the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Without such contacts, the law of the forum state cannot be applied; for to do otherwise would raise "a serious question of deprivation of the defendant's due process rights in casting him in liability under the law of a state with which he has in no way voluntarily associated himself." *Davis v. Costa-Gavras*, 580 F. Supp. 1082, 1093 (S.D.N.Y. 1984). Cook has consistently asserted that it is not subject to personal jurisdiction in plaintiffs' "home" states. *See* Cook's Resp. to Pls.' *Lexecon* Br., Dkt. 10786 at 17 n.10; Master Ans., Dkt. 456, ¶ 24; Am. Master Ans., Dkt. 8180; Notice of Agreement, Dkt. 318, ¶ 4. The Court's February 24 order imposing the law of foreign jurisdictions on Cook

US.126985295.11

therefore violates Cook's "due process right to have [Plaintiffs'] claims governed by the state law applicable to their dispute." *See Chin v. Chrysler Corp.*, 182 F.R.D. 448, 457 (D.N.J. 1998).

Likewise, Cook has never consented to venue within any of the plaintiffs' "home" states. Federal courts apply only the choice-of-law rules of a proper venue. "The reason for this is obvious," because if the choice-of-law rules of an improper venue were applied even after transfer to a proper venue, "plaintiffs would be encouraged to shop around for the forum with the most favorable choice of law rules." *Koutsoubos v. Casanave*, 816 F. Supp. 472, 475 (N.D. Ill. 1993). Thus, when a plaintiff files suit in a venue that is improper, and the suit is later transferred to a proper venue, the law of the transferee's forum applies. *See, e.g.*, *Wahl v. Gen. Elec. Co.*, 786 F.3d 491, 497-98 (6th Cir. 2015) (explaining that "following a transfer under § 1406(a), the transferee district court should apply its own state law rather than the state law of the transferor district court"); *Eggleton v. Plasser & Theurer Exp. Von Bahnbaumaschinen Gesellschaft, MBH*, 495 F.3d 582, 588-89 (8th Cir. 2007) (same); *Schaeffer v. Village of Ossining*, 58 F.3d 48, 50 (2d Cir. 1995) (same); *Myelle v. Am. Cyanamid Co.*, 57 F.3d 411, 413 (4th Cir. 1995) (same); *accord Connor v. Kotchen,* 2019 WL 1298585, at *2 (S.D. Ind. Mar. 21, 2019). For instance, if Cook were sued in Arizona but objected to venue there, and the case was later transferred to Indiana pursuant to Section 1406(a), the law of the new forum—the one with proper venue—would apply, and not the law of Arizona. The February 24 order does not take into account this important protection for defendants; instead, the order imposes on Cook the laws of foreign jurisdictions that Cook maintains lack proper venue.

All of this explains why a court must obtain a defendant's consent before deviating from the rule that the forum state's substantive law applies. *Cf. Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 64-65 (2013) (holding that parties who have agreed to a forum selection clause are bound by the law of their chosen forum). While due process rights can

be waived, the waiver must be made knowingly and voluntarily, *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938); *United States v. Baptist*, 759 F.3d 690, 695 (7th Cir. 2014), and must be shown by "clear and compelling" evidence, *Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31*, 138 S. Ct. 2448, 2486 (2018) (citation omitted). Waivers cannot be presumed. *See id.* There must be clear and affirmative consent. *See id.* These principles apply equally to criminal and civil cases. *See Fuentes v. Shevin,* 407 U.S. 67, 95 n.31 (1972).

In every case we are aware of involving a direct-filing order addressing choice of law, the direct-filing order itself set out its terms and documented the parties' agreement to those terms. *See*, *e.g.*, *In re Mentor Corp. ObTape Transobturator Sling Prod. Liab. Litig.*, 2015 WL 4727286, at *2 (M.D. Ga. Aug. 10, 2015) ("The parties agreed that for direct-filed cases, the 'Court will apply the choice of law rules of the state where the plaintiff resides at the time of the filing of the complaint.'"); *In re Incretin Mimetics Prod. Liab. Litig.*, 2013 WL 12171761, at *1-2 (S.D. Cal. Nov. 13, 2013) (granting the parties' "joint motion" to enter a direct-filing order and setting out each provision of that order, including one covering choice of law); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prod. Liab. Litig.*, 2011 WL 1375011, at *5 (S.D. Ill. Apr. 12, 2011) ("This agreed order authorizes the direct filing of cases that originated outside of this judicial district. The order expressly provides that the parties' direct filing agreement will not impact the choice of law that otherwise would apply to the direct filed actions."); *In re Vioxx Prod. Liab. Litig.*, 478 F. Supp. 2d 897, 904 (E.D. La. 2007) (securing defendant Merck's stipulation and agreement that it would not object to suit by direct-filed cases). The Court itself acknowledged this requirement last June, stating, "You can't do it any other way. . . . Without express agreement." Transcript of June 13, 2019 Status Conference Hearing at 59:16-18.

Here, there simply is no stipulated direct-filing order, let alone a stipulated direct-filing order that contains a choice-of-law provision. Cook never agreed to subject itself to the law of

US.126985295.11

every plaintiff's "home" jurisdiction. Nor has Cook knowingly and voluntarily waived its juris-

dictional and venue defenses in these other jurisdictions with respect to the plaintiffs' cases. The

Court is therefore without the power to impose upon Cook the requirements of another state's

substantive law. *Cf. In re Vioxx*, 478 F. Supp. 2d at 904 n.2 (noting that, absent a stipulation to

the contrary by defendants, cases directly filed in the MDL forum are governed by the MDL fo-

rum's choice-of-law principles); *In re Bausch & Lomb Inc.*, 2007 WL 3046682, at *3 (D.S.C.

Oct. 11, 2007) (noting that defendant did not stipulate "as to what substantive law applies either

before or after transfer in these proceedings"); *see also* Andrew D. Bradt, *The Shortest Distance:*

*Direct Filing and Choice of Law in Multidistrict Litigation*, 88 NOTRE DAME L. REV. 759, 797

(2012) (explaining that "direct filing is not automatically available because defendants must

agree to the practice").

Adhering to Indiana law not only would conform to Supreme Court precedent and respect

Cook's due process rights, it would avoid a potentially thorny practical problem: determining

exactly where a plaintiff's "home" jurisdiction is. While plaintiffs' short-form complaints con-

tain allegations of each plaintiff's "residence" at the time of implant and at the time of injury,

that's all they are: allegations, not proof. What's more, the allegations themselves don't neces-

sarily answer which state is plaintiff's "home" state. Plaintiff Lillian Verde's short-form com-

plaint, for example, states that she was a resident of Arizona at the time of her implant, that she

was a resident of Ohio at the time of her death, and that her injuries occurred in ***both*** Arizona and

Ohio. *See* Verde Short Form Compl., Dkt. 10575 at ¶¶ 4-6. Even accepting these allegations as

true, where is Ms. Verde's "home" jurisdiction? It's not clear, and the parties should not have to

spend precious resources trying to get to the bottom of these sorts of questions.[1] The *Klaxon* rule is simple for a reason: its faithful application serves to avoid such ancillary disputes. *See Ferens v. John Deere Co.*, 494 U.S. 516, 530 (1990) ("Foresight and judicial economy now seem to favor [*Klaxon*'s] simple rule.").

Even if a plaintiff's "home" jurisdiction could readily be determined, that doesn't mean the application of that jurisdiction's substantive law necessarily has a better claim to being applied than does some other jurisdiction's substantive law. Quite the opposite: the Supreme Court's decision in *Ferens*, 494 U.S. 516, makes clear that the law of a plaintiff's "home" forum takes a backseat to the choice-of-law rules in the forum in which the case was originally filed, even when the plaintiff is attempting to game the system. There the plaintiffs sought to side-step the statute of limitations in their home state of Pennsylvania by filing their case in federal court in Mississippi first and then seeking transfer to Pennsylvania for convenience under 28 U.S.C. § 1404(a). *Id.* at 519-20. They knew that under *Klaxon* the federal court in the exercise of diversity jurisdiction would be required to apply the same choice-of-law rules that Mississippi state courts would apply if they were deciding the case. *Id.* at 519. This would mean that Mississippi's own law would govern the limitations period. *Id.* When *Ferens* was decided, the Supreme Court had already said in *Van Dusen v. Barrack,* 376 U.S. 612 (1964), that, following a transfer under Section 1404(a) initiated by a defendant, the transferee court must follow the choice-of-law rules of the transferor court. In *Ferens* the Court held the same rule applies when the plaintiff is the one who initiates the transfer. 494 U.S. at 519. Mississippi law applied because that is where the plaintiffs originally filed their suit, and this was true even though it was clear plaintiffs filed originally in Mississippi only to avoid their "home" state's shorter limitations period. *See id.* at 523-

---

[1] In addition to the numerous complaints alleging multiple "proper" venues "absent direct filing," some plaintiffs allege no "home" venue at all. *See*, *e.g.*, Diaz Short Form Compl., 1:19-cv-00122, Dkt. 1 at ¶ 7.

US.126985295.11

24. The reasons plaintiffs filed their lawsuit originally in Mississippi did not alter the federal district court's obligation to apply *Klaxon*'s rule. *See id.* at 527.

* * * * *

As the Court noted at the June 13 hearing, while "everybody likes to try their cases . . . in their backyard on home court advantage[,] . . . Defendants have that right, too, to be able to try their cases in a proper venue as well." Transcript of June 13, 2019 Status Conference Hearing at 64:11-15. "Venue is proper here," *id.*, and therefore, as the Court originally held, "Indiana law applies," Entry for Proceedings Held on Oct. 25, 2019, Dkt. 12256 at 1. The Court's February 24 order denies Cook's due process right to be subject only to the substantive law of a forum that has jurisdiction over Cook. Because this Court has complete jurisdiction over all cases filed originally in this Court, and because Cook has not consented to be subject to the laws of foreign jurisdictions, this Court should reconsider its order imposing the substantive laws of Plaintiffs' "home" states on Cook. In so doing, the Court should restore its original ruling and establish once and for all that Indiana's choice-of-law rules apply in all cases originally filed in the Southern District of Indiana.

## II. The Court's Order Violates the Mandate of *Erie* and its Progeny by Creating a Federal Common-Law Exception to Indiana's Choice-of-Law Rules.

The Supreme Court's decision in *Erie Railroad Co. v. Tompkins* prohibits federal courts sitting in diversity from disregarding the substantive law of the forum state and substituting federal common law in its place. 304 U.S. 64, 78 (1938). *Erie*'s prohibition "extends to the field of conflict of laws." *Klaxon*, 313 U.S. at 496. In *Van Dusen*, 376 U.S. at 612 and *Ferens*, 494 U.S. at 516, just discussed, the Supreme Court reiterated that *Klaxon* requires federal courts sitting in diversity to apply the choice-of-law rules of the forum in which the case was initially and properly filed. Judicially created exceptions to this rule are not permitted: "A federal court in a diversi-

US.126985295.11

ty case is not free to engraft onto those state rules exceptions or modifications which may commend themselves to the federal court, but which have not commended themselves to the State in which the federal court sits." *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4 (1975) (per curiam).

The Court's February 24 order does just that. The order says, in effect, even though *Klaxon* otherwise commands that Indiana's choice-of-law rules apply to cases filed originally in the Southern District, those rules do not apply to the cases at issue here because Plaintiffs "may" have relied on the Court's May 31, 2017 order and, in so doing, "may" have misunderstood the consequences of initiating their lawsuits in Indiana. In so holding, the Court has effectively engrafted an equitable exception onto Indiana's choice-of-law rules that the Indiana Supreme Court itself does not recognize. This is the very making of federal common law that *Erie* has long forbidden. *See Challoner*, 423 U.S. at 4.

This error is compounded by the Court's determination that the choice-of-law rules from a plaintiff's "home" jurisdiction should apply in lieu of Indiana's choice-of-law rules. This too is nothing more than the common-law creation of a federal court sitting in diversity. *See In re Gaston & Snow*, 243 F.3d 599, 605 (2d Cir. 2001) (recognizing "that federal choice of law rules are a species of federal common law"); *A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1464 (D.C. Cir. 1995) ("A choice of law rule is no less a rule of state law than any other."). A plaintiff's "home" state is only one of any number of places where an individual plaintiff may decide to sue because "many plaintiffs are able to choose from among several forums." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 250 (1981). Were it appropriate to create federal common law here, the Court could just as easily have decided to apply the law of the state where the product was implanted or where the alleged injuries occurred, both of which might be different

than a plaintiff's "home" jurisdiction.[2] But because Indiana does not itself recognize an exception that would allow for the application of a law other than Indiana substantive law, none of these determinations would comply with *Erie*.

There's no dispute the cases at issue here were filed originally in this forum; they were not transferred here from the plaintiffs' "home" jurisdictions. Therefore, to treat these cases "as though" they had originated in the plaintiffs' "home" jurisdictions, Dkt. 12931 at 4, is quite literally, to indulge a fiction—a fiction that has no place under the *Erie* doctrine. District courts cannot just pretend that the law of another forum governs when the forum's choice-of-law rules do not themselves allow them to do so. Under *Klaxon*, and absent a stipulated direct-filing order that says otherwise, district courts sitting in diversity "must" apply the forum state's substantive law. *See Ward v. Soo Line R.R. Co.*, 901 F.3d 868, 880 (7th Cir. 2018). This Court should therefore reconsider its order in light of *Erie* and *Klaxon*, and apply the choice-of-law rules of the state in which these cases actually originated—Indiana.

**III. In the alternative, and at the very least, the Court Should Require a Showing of Actual Reliance on the Court's May 31, 2017 Order and Limit its Carve-Out to the *Klaxon* Rule to Those Cases Filed Between the Date of That Order and June 13, 2019.**

In its February 24 order, the Court traced the history of the apparent "confusion as to whether there was a direct-filing order," explaining when and how it began and when and how it should have ended. Dkt. 12931 at 2-3. In tracing that history, the Court noted that the direct-filing issue came to head in June of 2019, when the parties briefed whether the Supreme Court's decision in *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998), applies to cases originally filed in the MDL court. As the order accurately notes, on June 13, 2019, "the

---

[2] The *McDermitt* case, which is currently set for trial this summer, is a good example; as alleged there, the plaintiff's home is in Ohio, while he received his filter in Indiana. *See* Compl., Case No. 1:18-cv-00946, Dkt. 1, ¶¶ 4-7, 12. Another example is the *Verde* case in which the plaintiff alleges she lived in one state and then another, and suffered injuries in both. *See* Verde Short Form Compl., Dkt. 10575, ¶¶ 4-6.

court declared that '[t]here is no direct-filing order entered in this case,'" and that, as a consequence, "the court 'has complete authority over cases originally filed in this court, just as it would over any other case originally filed in this district.'" Dkt. 12931 at 2. Nevertheless, the Court concluded that "the best course of action is to treat foreign cases filed between May 31, 2017 ***and October 29, 2019*** as though there was an express direct filing order issued in this case." *Id*. at 4 (emphasis added).

At the very least, the Court should limit its carve-out to the *Klaxon* rule to cases filed before June 13, 2019—not October 29, 2019. As the Court's February 24 order itself makes clear, on June 13, 2019, the Court unambiguously "declared" on the record that there was "no direct-filing order in this case." Dkt. 12931 at 2. That date, then, is the logical endpoint for any reasonable reliance on the Court's May 31, 2017 order. Even Plaintiffs advocated for the carve-out period to end on June 13, 2019. *See* Pls.' Reply Concerning Pls.' Mot. to Recon., Dkt. 12731 at 6.

Furthermore, the Court should require a lawyer for each plaintiff to establish, by sworn affidavit, that he or she ***actually*** relied on the Court's May 31, 2017 order in choosing to file in the Southern District. If a plaintiff's lawyer cannot or does not do this, then his or her client's case ought to be resolved based on Indiana substantive law, consistent with the mandate in *Erie* and *Klaxon. Cf. Rager v. Dade Behring, Inc.*, 210 F.3d 776, 779 (7th Cir. 2000) ("[W]ithout reliance both actual and reasonable, there can be no finding of equitable estoppel.").[3]

---

[3] The number of cases filed originally in this Court as opposed to in the plaintiffs' so-called "home" jurisdictions before and after the Court's June 13, 2019 order casts serious doubt on whether plaintiffs ever actually (let alone reasonably) relied on this Court's May 2017 order in deciding where to initiate their lawsuits. By our count, in 2018, there were only 11 cases transferred from other districts to this Court. In 2019, there also were only 11 cases transferred from other districts to this Court. And so far in 2020, there have been only 2 cases transferred from other districts to this Court. This suggests Plaintiffs have never calibrated their venue selection based on the Court's apparent views about whether there is a direct-filing order in this case or not.

US.126985295.11

Plaintiffs did not point to any evidence of actual reliance in their motion to reconsider the Court's choice-of-law rule. Not surprisingly, then, the most the Court could say was that Plaintiffs' counsel "may" have relied on the Court's May 31, 2017 order in filing their cases in the Southern District. Dkt. 12931 at 4. As this wording implies, there also "may" be other reasons Plaintiffs' counsel chose to file in the Southern District. Perhaps they thought their cases could be more efficiently litigated to a conclusion in the Southern District than elsewhere given the MDL. Perhaps they filed in the Southern District because they knew Cook was subject to personal jurisdiction here. Or perhaps they filed in the Southern District simply because so many other plaintiffs had filed in the Southern District. There are any number of reasons why a plaintiff's lawyer might have filed in this District, and only one of them is that Plaintiffs' counsel "may" have relied on the Court's May 31, 2017 order. A client whose lawyer did not actually rely on that order in choosing to file in this forum ought not get the benefit of an equitable exception to a rule that Supreme Court precedent clearly requires federal courts to follow. *Cf. Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986) (affirming district court's refusal to transfer case to another jurisdiction and apply the choice-of-law rules of that state, even though the refusal had the harsh effect of forever barring plaintiff's case, because the "mistake was elementary").

## CONCLUSION

The Court should grant Cook's motion for reconsideration and apply Indiana's choice-of-law rules in cases that were originally filed in this District. Alternatively, and at a minimum, the Court should: (a) limit the period of the *Klaxon* carve-out to between May 31, 2017 and June 13, 2019, and (b) require Plaintiffs' counsel to establish actual reliance on the Court's May 31, 2017 order.

US.126985295.11

Dated: March 23, 2020

Respectfully Submitted,

/s/ *Andrea Roberts Pierson*

Andrea Roberts Pierson, Co-Lead Counsel
Jessica Benson Cox
FAEGRE DRINKER BIDDLE & REATH LLP
300 North Meridian Street, Suite 2500
Indianapolis, Indiana 46204
Telephone: (317) 237-0300
Andrea.Pierson@FaegreDrinker.com
Jessica.Cox@FaegreDrinker.com

James Stephen Bennett, Co-Lead Counsel
FAEGRE DRINKER BIDDLE & REATH LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana 46802
Telephone: (260) 424-8000
Stephen.Bennett@FaegreDrinker.com

*Attorneys for Defendants Cook Incorporated,
Cook Medical LLC, and William Cook Europe
ApS*

US.126985295.11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 23d of March, a copy of the foregoing was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.


/s/ Andrea Roberts Pierson
_____

15