IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL NO. 2570 |
| This Document Relates to All Actions | |

**PLAINTIFFS' RESPONSE TO THE COOK DEFENDANTS' MOTION TO RECONSIDER THE COURT'S FEBRUARY 24, 2020 ORDER ON CHOICE OF LAW**

Come now plaintiffs and file this response to the Cook Defendants' motion to reconsider the Court's February 24, 2020 order on choice of law, and would respectfully show as follows:

The Cook defendants ("Cook") have moved for reconsideration of the Court's order of February 24, 2020. Cook has failed, however, to demonstrate any reason for reconsidering the Court's ruling, which was issued after full briefing and oral argument.

The Seventh Circuit has held that motions for reconsideration are appropriate when the Court has "patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension[,]" or where there has been a significant change in the law or facts. "Such problems rarely arise and the motion to reconsider should be equally rare." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990), quoting *Above the Belt, Inc., v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983). Reconsideration is warranted "only in two extraordinary situations: where the court's misapprehension has produced a manifest error of fact or law, or where a controlling or significant change in fact or law has materialized since the court issued its

1

initial ruling." *Federal Dep. and Ins. Corp. v. Fidelity & Deposit Co. of Maryland*, 2013 WL 5938149, *2 (S.D. Ind. Nov. 6, 2013).

Cook does not contend that there has been any change in fact or law since the Court's ruling. It must therefore establish a "misapprehension" by the Court, leading to a manifest error of fact or law. For the reasons set forth below, no such misapprehension, or error of any kind, has been shown.

## ARGUMENT

### I. COOK'S MISCHARACTERIZATION OF THE COURT'S ORDER

Cook describes the Court's order in ominous terms, stating that the Court is "sacrificing Cook's constitutional rights" and "violating *Erie's* command to apply the forum states' substantive law." The Court is also accused of "disarming" Cook of the "important defenses" of lack of personal jurisdiction and improper venue "by imposing the laws of numerous foreign jurisdictions on Cook without its consent. [which] violates Cook's due process rights." Motion at 2-3.  These strained characterizations of the Court's order are unfounded.

The effect of the Court's order is simply that "foreign cases filed between May 31, 2017 and October 29, 2019 shall be treated as if a direct-filing order had been entered at the time of their filing, and shall be governed by the choice-of-law rule of the Plaintiffs' home jurisdiction." Order at 4. As detailed below, a direct-filing order, which is a commonplace of MDL practice, can hardly be said to violate a defendant's due process rights. This is true even in the absence of any agreement about the choice-of-law rule to be applied.

More fundamentally, perhaps, this result is of Cook's own making. The Court noted that in two separate motions, filed over a year apart, "the Cook Defendants represented that there was such [a direct-filing] order." The Court also observed that it "relied on the Cook Defendants'

2

(mistaken) representation and, in the court's May 31, 2017 entry on the Cook Defendants' Motion For Judgment on the Pleadings Based on Statute of Repose, the court analyzed the choice-of-law issue as though the Plaintiffs' cases subject to the motion were directly filed in this MDL forum pursuant to a direct filing order." Order at 1-2. Cook does not dispute either its own mistaken representations, or the Court's reliance on them.

The Court's decision thus was not some arbitrary ruling stripping Cook of due process rights, or indeed of any rights at all. The ruling simply treats certain cases in this MDL as if they had been filed here pursuant to a direct filing order. This is, again, a common feature of MDL practice.

## II.   COOK IS NOT BEING DEPRIVED OF DEFENSES

Cook's primary complaint is that the Court's order takes away its defenses of personal jurisdiction and venue. Cook is at pains to insist repeatedly that it "has consistently maintained that it is not subject to personal jurisdiction and venue in states other than Indiana," that it has "never forfeited its defenses that it is not subject to personal jurisdiction in the plaintiffs' 'home' state, or that venue is not proper, there [,]" etc. Motion at 3. *But Cook has never actually asserted these defenses, undoubtedly because they are meritless*. In any event, Cook still has them, since the Court's order does not preclude Cook from advancing them at all.

Plaintiffs who have direct-filed their cases in this Court typically list their state of residence, and/or the state in which the fiber was implanted, as their "home" states. There is no serious doubt that Cook is subject to personal jurisdiction in those jurisdictions and that venue is proper in them. Cook dwells on the *McDermitt* and *Verde* cases as problematic examples. Motion at 7, 11 n.2. Yet Arizona and Ohio, the states implicated by these examples, would unquestionably

3

afford jurisdiction in these situations.[1]  *A. Uberti & C v. Leonardo*, 895 P.2d 565 (Ariz. 1995)(upholding jurisdiction over Italian gun manufacturer sued by Arizona representative of decedent killed when gun discharged in Arizona); *Goldstein v. Christiansen*, 638 N.E.2d 541 (Ohio 1994)(jurisdiction existed over Florida accounting firm that provided services to Ohio partnerships).

That Cook's sudden concerns about personal jurisdiction and venue are entirely contrived is demonstrated by the fact that to our knowledge, Cook has never litigated a challenge, on either basis, in any IVC filter case.  In the typical scenario in which a plaintiff sues in his or her state of residence, or in the state of implantation, Cook has never challenged personal jurisdiction on venue — undoubtedly because it knows that such a challenge would be baseless. This is true for cases in this MDL, as well as in cases in state courts around the country.

For instance, the Court is aware of the *Pavlock* case, which was tried to verdict in state court in Houston. Another example is the case of *Kuhn v. Cook, Inc. et al.*, No. 2016-SU-001406-71, in the Court of Common Pleas of York County, Pennsylvania. Cook is defending this case on the merits and recently filed a motion for summary judgment.[2]

In both of these cases, the plaintiffs sued in the states in which they lived and had been implanted. Yet Cook did not challenge personal jurisdiction at all; it simply went ahead and defended the cases on the merits.  There are, of course, many more such examples around the country. Again, plaintiffs are aware of no case, in any state or federal court, in which Cook has actually pursued a challenge to personal jurisdiction or venue.

---

[1] McDermitt alleged that he resides in Ohio but received his implant in Indiana. Indiana's law on personal jurisdiction will not be discussed as Cook is in any event subject to jurisdiction here.

[2] Should the Court wish to see documentation of Cook's defense of this case on the merits, plaintiffs will provide it promptly.

4

It should be plain, then, that Cook's protestations about being "disarmed" of these defenses are hollow. But if Cook really does wish to challenge either personal jurisdiction or venue in a direct-filed case, nothing prevents it from doing so. The Court's order does nothing more than treat certain cases "as if a direct-filing order had been entered at the time of their filing," and as being governed by the choice-of-law rule of the "home" jurisdiction. Nothing in this order would preclude Cook from arguing, in any given case, that the designated home state would not have had personal jurisdiction over Cook, or that it was an improper venue, such that that state's choice-of-law rule ought not to apply.[3]

### III.   COOK IS NOT BEING DEPRIVED OF ANY DUE PROCESS RIGHTS

Cook argues that if there are not enough contacts between a state and a case to afford personal jurisdiction over a defendant, then applying that state's substantive laws to the case would violate due process. Leaving aside whether this is true in the abstract, Cook's complaints are baseless for two independent reasons. First, Cook has routinely litigated these cases under the laws of plaintiffs' home states, without ever raising any such concern at all. Second, the only issue raised by Cook in its original motion was the statute of limitations, and it is not a violation of due process to apply a home state's limitations period to Cook even if that state has no contacts at all to a case.

As the Court is aware, the cases from other states in this MDL have largely been litigated under the law of the plaintiffs' "home" states, i.e. the state of residence and/or implementation. For example, the *Brand* case was transferred from Georgia and tried under Georgia law. The *Hill*

---

[3] In any given case, of course, Cook may already have waived any challenge to personal jurisdiction or venue by litigating on the merits. Such a waiver would exist independent of the present controversy about which state's laws should be applied, and plaintiffs reserve the right to raise such a waiver.

case was transferred from Florida and decided under Florida law. In neither case did Cook raise any complaint about proceeding under some other state's law. As noted above, Cook has likewise defended cases in state courts around the country, under those states' laws, without ever raising any of the grave constitutional concerns about which it is suddenly now concerned.

Moreover, it must be borne in mind that all that is really at issue here is the statute of limitations. This dispute began when Cook filed its "Omnibus Motion for Summary Judgement Based on Applicable Statutes of Limitations" on August 2, 2019 (Doc. 11501). Cook withdrew that motion on September 4, 2019, and the following day filed a "renewed" motion against the same plaintiffs, arguing that all direct-filed cases were governed by Indiana's two-year statute of limitations. As the Court noted in its order, this would "adversely affect Plaintiffs from the states with longer statutes of limitation…." Order at 3.

The Court's order means that direct-filed cases will be governed by the substantive law of the plaintiff's home state, including its conflicts laws. As detailed above, Cook has never had any complaint about this state of affairs, since it has regularly litigated all cases under the home states' substantive laws. So Cook's complaints about applying other states' substantive laws amounting to a denial of due process hard to believe. But substantive law includes a state's choice-of-law rule too, and most such rules apply the state's own limitations period. Is there anything unconstitutional about applying the home state's statute of limitations?

Cook is careful to confine its complaints about due process to substantive law, arguing that "[f]or a state's substantive law to be selected in a constitutionally permissible manner," there must be contracts sufficient to afford personal jurisdiction over a defendant, motion at 4, quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985). But this is not true for statutes of limitations. In a case that was an outgrowth of *Shutts*, and was decided just three years later, the

Supreme Court held that due process considerations are irrelevant to a state's decision to apply its own statute of limitations.

In *Shutts*, the Court had held that Kansas could not constitutionally apply its substantive law to royalty claims by residents of other states concerning property in those states. *Id*. at 816-23. Following *Shutts*, the Court decided *Sun Oil Co. v. Wortman*, 486 U.S. 717 (1988). This case also involved a class action filed in Kansas state court to recover unpaid royalties. In light of *Shutts*, the trial court in *Wortman* held that with regard to limitations, nothing precluded the application of Kansas' five-year statute of limitations, even to claims having nothing to do with Kansas and governed by the substantive law of other states. The Kansas Supreme Court affirmed this holding. *Id*. at 721-22.

The Supreme Court affirmed. The Court's holding was straightforward and disposes of Cook's contention here:

> This Court has long repeatedly held that the Constitution does not bar application of the forum State's statute of limitations to claims that in their substance are and must be governed by the law of a different State. See e.g*., Wells v. Simonds Abrasive Co*., 345 U.S. 514, 516-518, 73 S.Ct. 856, 857-58, 97 L.Ed. 1211 (1953); *Townsend v. Jemison*, 9 How. 407, 413-420, 13 L.Ed. 194 (1850); *McElmoyle v. Cohen*, 13 Pet. 312, 327-328, 10 L.Ed. 177 (1830). We granted certiorari to reexamine this issue. We conclude that our prior holdings are sound.

*Id*. at 722. While the Court's analysis primarily focused on the Full Faith and Credit Clause, it also made explicitly clear that due process concerns are inapplicable to statues of limitations as well. The Court noted that "[t]he nub of the present controversy … is the scope of constitutionally permissible legislative jurisdiction, and it matters little whether that is discussed in the context of

7

the Full Faith and Credit Clause, as the litigants have principally done, or in the context of the Due Process Clause." *Id*. at 729 n.3. And the result was the same:

> Petitioner also makes a due process attack upon the Kansas court's application of its own statute of limitations.
>
> …
>
> A State's interest in regulating the work load of its courts and determining when a claim is too stale to be adjudicated certainly suffices to give it legislative jurisdiction to control the remedies available in its courts by imposing statutes of limitations. Moreover, petitioner could in no way have been unfairly surprised by the application to it of a rule that is as old as the Republic. There is, in short, nothing in Kansas' action here that is "arbitrary or unfair," *Shutts III*, 472 U.S. at 821-822, 105 S.Ct., at 2979, and the due process challenge is entirely without substance.

*Id*. at 730 (footnote omitted).

*Wortman* is still good law today. *Banas v. American Airlines, Inc*., 969 F.2d 477, 485 (7th Cir. 1992); *Ormond v. Anthem, Inc.*, 2008 WL 906157, *15 n.8 (S.D. Ind. March 31, 2008). Cook therefore has no due process right to have Indiana's statute-of-limitations applied to any claim at all. Application of a plaintiff's "home" state statute of limitations does not violate Cook's due process rights, even when that state could not otherwise apply its own substantive law.

Cook throws in a grab-bag of other assertions about choice of law. First, it argues that a direct filing order "imposes on Cook the laws of foreign jurisdictions that Cook maintains lack proper venue." Motion at 5. Cook notes correctly that if the transferor court does not have proper venue, then its law will not be applied by the transferee court. Plaintiffs have no quarrel with this rule, but as with personal jurisdiction, the argument is a contrivance: there is no question that

8

venue is proper in plaintiffs' home states, Cook has never actually challenged venue in any originating jurisdiction, and Cook is still free to raise such a challenge in any event.

The general venue statute provides for venue in any district in which a defendant resides, or in which "a substantial part of the events or omissions giving rise to the claim occurred. …" 28 U.S.C. §1391(b)(1-2). The district in which a plaintiff was implanted with a filter, or in which he or she was injured or died, is of course a district in which "a substantial part of the events or omissions giving rise to the claim occurred." This is undoubtedly why, as with personal jurisdiction, Cook to our knowledge has never once challenged venue in a transferor court. Cook's complaints that it is being stripped of venue defenses, or that the home forum's law cannot be applied because Cook has stated boilerplate venue objections, are meritless. And as with the issue of personal jurisdiction, nothing in the Court's order prevents Cook from asserting that a plaintiff's designated home forum would not have been a proper venue.

Cook next states that "a court must obtain a defendant's consent before deviating from the rule that the forum state's substantive law applies." This is of course not true; choice-of-law rules are subject only to modest constitutional constraints as to substantive law, and none at all as to procedural rules like statute of limitations, as made clear by *Shutts* and *Wortman*, supra. Cook goes on to insist that it has not waived its due process rights, and that "[i]n every case … involving a direct-filing order addressing choice of law, the direct-filing order itself set out its terms and documented the parties' agreement to those terms." This is emphatically not true, and indeed the parties' previous briefing examined Cook's cited orders on this issue at great length.

At pp. 8-13 of plaintiffs' original motion for reconsideration, Doc. 12609, we detailed the cases cited by Cook as useful examples of direct-filing orders. As plaintiffs stated then at p. 13, "none of these cases involved anything more than that which has existed in this case for years: an

9

agreement that cases could be direct-filed, that said nothing about choice of law." In other words, many direct-filing orders say nothing about choice of law at all, but the prevailing rule in the Seventh Circuit is that the forum choice-of-law rule applies regardless. Plaintiffs will not repeat that discussion here to avoid duplicative briefing.

One of the cases cited by Cook, *In re Yasmin and Yaz (Draspirenone) Sales Prac., Mktg. and Prod. Liab. Litig.*, 2011 WL 1375011 (S.D. Ill. Apr. 12, 2011), was previously addressed by plaintiffs. The new cases Cook cites are likewise unhelpful. *In re Mentor Corp. ObTape Transobdurator Sling Prod. Liab. Litig.*, 2015 WL 4727286 (M.D. Ga. Aug. 10, 2015), did involve an agreement by the parties about choice of law, but certainly did not hold that such an agreement is required. *In re Incretin Mimetics Prods. Liab. Litig.*, 2013 WL 12171761 (S.D. Cal. Nov. 13, 2013), contained no agreement about choice of law; the court simply stated that direct filing would have "no impact on choice of law, including the statute of limitations, that would otherwise apply to an individual case had it been filed in another district court and transferred…." *Id*. at *2. In *In re Vioxx Prods. Liab. Litig.*, 478 F.Supp.2d 897, 903 (E.D. La. 2007), the parties "seemingly" had agreed that the MDL state's choice-of-law rule would govern, direct-filed cases, which of course plaintiffs have *not* agreed to here, plaintiffs contend the opposite. In *In re Bausch & Lomb, Inc.*, 2007 WL 3046682 (D.S.C. Oct. 11, 2007), there was no stipulation about choice of law, but the court found it unnecessary to decide the issue because "no conflict exist[ed] among the potentially applicable choice-of-law principles." *Id*. at *3.

The point is that applying the home states' choice-of-law rules does not require Cook's agreement. It is simply the prevailing rule in district courts in this circuit. As the court put it in *In re Yaz*, in which there was simply an agreed case management order allowing direct filing that specifically stated that there was no agreement about choice of law, "the better approach is to treat

10

foreign direct filed cases as if they were transferred from a judicial district sitting in the state where the case originated." *In re Yaz*, supra, 2011 WL 1375011 at *5-6.

Cook next suggests that there is a "potentially thorny practical problem" in that plaintiffs' home-state designations are simply "allegations, not proof." Motion at 7. The contention apparently is that plaintiffs might be lying about such basic, easily verifiable facts as where they live or were implanted, and that this is a reason to apply Indiana law exclusively. Presumably if a single case anywhere had ever endorsed such an argument, Cook would have cited it, but suffice it to say there is no support for such an approach. Cook is of course entitled to challenge any particular plaintiff's designation if it wishes to. And in the few cases in which plaintiffs designate multiple states, the Court can require a plaintiff to make a selection.

## IV. THERE IS NO *ERIE* VIOLATION

At pp. 8-11 of its motion, Cook insists that the Court is committing some fatal violation of the *Erie* doctrine, by creating an "equitable" exception that allows application of the home states' choice-of-law rules. Cook characterizes the Court's order as indulging in a "fiction" that the law of the home states govern, "absent a stipulated direct-filing order" about choice of law. But all direct-filing orders, or agreements or stipulations, are "fictions" in which the parties and the Court treat cases, filed directly into an MDL for the sake of expedience, as if they were filed in the designated originating states. In this case, of course, plaintiffs and Cook agreed on a filing procedure in which plaintiffs made these designations. What would have been the purpose for such designations, if not to facilitate the agreed-upon fiction?

Direct-filing orders, of course, do not violate the *Erie* doctrine at all, or they would not have become a common feature of MDL practice. One of the cases relied upon by Cook makes this clear:

11

> The policy that embodies *Erie*, *Van Dusen*, and even *Ferens* demands uniform federal and state outcomes: that the accident of a suit in federal instead of state court should not alter the result …. Direct-filed MDL suits that are then transferred to a more convenient forum for trial as an exception to the ordinary rule modeled in *Van Dusen* and *Ferens*. This must be so, or else every district court receiving a direct-file MDL suit would be bound to apply the choice of law principles of the MDL forum. In effect the accident of bureaucratic convenience would elevate the law of the MDL forum.

*Wahl v. General Elec. Co.*, 786 F.3d 491, 496 (6th Cir. 2015), citing *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). *Van Dusen v. Barrack*, 376 U.S. 612 (1964), and *Ferens v. John Deere Co.*, 494 U.S. 516 (1990).

Direct-filing orders are simply a common feature of MDLs, and do not violate the *Erie* doctrine. Certainly no court has ever held otherwise. And if Cook is unhappy that the Court is now indulging this perfectly normal, commonly-employed fiction, then it is only because Cook represented –twice – that the fiction was in place, and the Court relied on these representations.

## V.  THE COURT SHOULD NOT REQUIRE AN AFFIDAVIT FROM PLAINTIFFS' COUNSEL

The Court's order recognized the obvious fact that plaintiffs from states with longer statutes of limitations would be directly affected by having relied on the Court's May 31, 2017 order. Cook now makes the remarkable argument that counsel for such plaintiffs should have to sign a sworn affidavit to this effect. But how would any plaintiffs' counsel know that they should have disregarded the Court's order? As the Court also recognized, the May 31, 2017 order became the law of the case, and no lawyer disregards the law of the case.

With all due respect, plaintiffs' counsel's thought processes are not discoverable by Cook. Cook is not entitled to satisfy itself that a particular plaintiff's counsel direct-filed wholly for

12

reasons acceptable to Cook. And what if Cook doesn't find some counsel's affidavit entirely convincing? Will it seek to depose that counsel and examine his or her file?

The law of the case from 2017 through 2019 was what it was. Counsel for plaintiffs in this case were entitled to rely on that, and so the Court has held. The Court should reject Cook's request for affidavits from plaintiffs' counsel.

As to Cook's request that the Court move the cutoff date for its ruling from October 31, 2019 to June 13, 2019, that would be reasonable given the Court's order entered that day, and so plaintiffs do not oppose this request.

## CONCLUSION

Cook has provided no basis on which the Court should reconsider its Feb. 24th order. With the exception of changing the end date from October 29, 2019 to June 13, 2019, plaintiffs respectfully request that the Court deny Cook's motion for reconsideration in its entirety.

Respectfully submitted this 6th day of April 2020.

*/s/ Joseph N. Williams*
Joseph N. Williams, Atty. No. 25874-49
RILEY WILLIAMS & PIATT, LLC
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317) 633-5270
Facsimile: (317) 426-3348
Email: jwilliams@rwp-law.com
*Liaison Counsel to Plaintiffs' Steering Committee*

Charles S. Siegel
Texas Bar No. 18341875
WATERS, KRAUS, & PAUL, LLP
3141 Hood Street, Suite 700
Dallas, Texas 75219
Telephone: (214) 357-6244
Facsimile: (214) 357-7252

siegel@waterskraus.com

Michael W. Heaviside, Esq.
HEAVISIDE REED ZAIC, A LAW CORPORATION
910 17th Street, NW, Suite 800
Washington, DC 20006
Telephone: (202) 223-1993
mheaviside@hrzlaw.com

Ben C. Martin, Esq.
THE LAW OFFICES OF BEN C. MARTIN
3710 Rawlins Street, Suite 1230
Dallas, TX 75219
Telephone: (214) 761-6614
Facsimile: (214) 744-7590
bmartin@bencmartin.com

David P. Matthews, Esq.
MATTHEWS AND ASSOCIATES
2509 Sackett St.
Houston, TX 77098
Telephone: (713) 522-5250
Facsimile: (713) 535-7184
dmatthews@thematthewslawfirm.com
*Plaintiffs' Co-Lead Counsel*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF which will automatically send a copy to all attorneys of record.

*/s/ Joseph N. Williams*
Joseph N. Williams