**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

———————————————————

In Re: COOK MEDICAL, INC.,
IVC FILTERS MARKETING, SALES          Case No. 1:14-ml-2570-RLY-TAB
PRACTICES AND PRODUCTS                          MDL No. 2570
LIABILITY LITIGATION

———————————————————

This Document Relates to the Following Actions only:

    Eddie Clark Burrage
    1:18-cv-00273-RLY-TAB

———————————————————

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS**
**OR, IN THE ALTERNATIVE, IN SUPPORT OF DISMISSAL**
**OF ALL NATIONS FIRM CATEGORY 6 CASES**
———————————————————————————————

> **When a plaintiff files any court case, … sitting back is no option.** He must be prepared to undergo the costs, psychological, economic and otherwise, that litigation entails.  That the plaintiff becomes one of a mass of thousands pursuing particular defendants lends urgency to this reality.  **Courts must be exceedingly wary of mass litigation in which plaintiffs are unwilling to move their cases to trial.  Any individual case may be selected as a bellwether, and no plaintiff has the right to avoid the obligation to proceed with his own suit, if so selected.**

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 628 F.3d 157, 163 (5th Cir. 2010)

(emphasis added).

    Plaintiff Burrage and his counsel, the Nations Law Firm, seek relief from the trial of a

case filed some two-and-a-half years ago.  Nearly a year after the Court selected the *Burrage*

case for a bellwether trial, they ask the Court to dismiss the case, offering two supposed

justifications:

US.128274902.12

(1) Plaintiff and his counsel apparently never thought they would be put to their proof, and (2) the Nations Firm views Plaintiff Burrage's no-injury/product-in-place case as having a "***negative value***"-- a view apparently not previously disclosed to Plaintiff Burrage or the firm's other similarly situated clients.

Defendants Cook Incorporated, Cook Medical LLC f/k/a Cook Medical Incorporated, and William Cook Europe ApS ("the Cook Defendants" or "Cook") urge the Court to deny Plaintiff's Motion to Dismiss With Prejudice, Dkt. 13587, and to put an end once and for all to the practice of the serial filing of no-injury/product-in-place cases, a "park-and-ride" strategy in which Plaintiffs and their attorneys are unwilling to try to the cases but still expect to receive some payment in settlement. ***More than 50 percent of cases filed by the Nations Firm accuse Cook of injuring Plaintiffs who admit in their self-categorizations that they have suffered no symptomatic injury at all***.

The Court should not permit the Nations firm and others like it to repeatedly accuse Cook of injuring patients only to back out when put to their proof.  The Court should not permit such an easy exit in *Burrage* unless and until Plaintiff's attorneys commit to dismiss all such cases and to the cessation of filing such cases that do not and cannot pass muster under Rule 11.  Absent that commitment, Cook is entitled to its day in court, including adjudication on the merits, of the no-injury, product-in-place cases that Plaintiff Burrage represents.

Cook recognizes a court denying a plaintiff's motion to dismiss his own case with prejudice is unusual, but as the Seventh Circuit has noted, "[d]istrict courts handling complex, multidistrict litigation 'must be given wide latitude with regard to case management' in order to achieve efficiency."  *Dzik v. Bayer Corp*., 846 F.3d 211, 216 (7th Cir. 2017) (quoting *In re Asbestos Prods. Liab. Litig. (No. VI)*, 718 F.3d 236, 243, 246–48 (3rd Cir. 2013)).  At the very

US.128274902.12

least, any dismissal must include two terms to partially ameliorate the damage done by Plaintiff's attorneys' conduct in this case:  (1) the reimbursement of the attorney's fees and costs Cook has incurred in working up the *Burrage* case since its selection for the bellwether discovery pool, and (2) entry of Cook's Proposed Amended Bellwether Plan submitted to the Court on May 29, 2020.  Attached as Exhibit A.  In addition, given the Nations Firm's dismissal of both *Burrage* and *Johnson* in recent weeks, fairness dictates that Cook should be permitted to select at least one of the Category 6 Tulip cases under the Court's amended plan for bellwether trials.

In the alternative, should the Court decide to grant Plaintiff's motion and dismiss his case with prejudice, the Court should also dismiss all other Category 6 asymptomatic, no-injury cases filed by the Nations firm.  The Court also should caution that firm against filing future cases in which a plaintiff has no injury, no symptoms, and no intention of proceeding to trial on the merits.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.   History of the Asymptomatic, No-Injury Cases

Plaintiffs' counsel claimed at the inception of this litigation that the plaintiffs were patients who had experienced complications and injury from their IVC filters, sometimes including the need for surgical removal.  "Lead Generators" and plaintiffs' attorneys then embarked on a multimedia, multifront advertising campaign to identify IVC filter recipients and to sign them up for lawsuits, regardless of whether individual patients had had any problems with their filters or had experienced any physical symptoms.  *See* Motions Hearing Tr. at 29:11-30:18 (Feb. 15, 2018).  For example, an advertisement posted on the National Injury Help website on March 3, 2017, titled "Product in Place Lawsuits an Option for IVC Filter Patients with No Complications," states:

> People who have retrievable IVC filters implanted **but haven't noticed any symptoms or complications** may still be eligible for an IVC filter claim.  These claims are called Product in Place, or PIP.
>
>       ***
>
> **Even if there are no complications**, people with retrievable IVC filters made by the medical device manufacturers C.R. Bard Inc., Cook Medical, or Cordis, may still be able to file a product in place claim.
>
>       ***
>
> **If you were implanted with an IVC filter** made by C.R. Bard Inc., Cook Medical or Cordis, you may be able to file an IVC Lawsuit. (https://www.nationalinjuryhelp.com/ivc-filter-lawsuits/).

Dkt. 7412-3 (emphasis added).

Plaintiff Burrage's attorneys at The Nations Firm similarly advertised for IVC Filter cases using misleading language and scare tactics.  For example, the firm's website states:

> The FDA issued a warning on August 9, 2010 entitled "Removing Retrievable Inferior Vena Cava Filters: Initial Communication", which warned against leaving IVC filters in for extended periods of time, **because they have a tendency to cause life threatening problems**.

https://www.howardnations.com/practice-areas/ivc-filter-g2/ (emphasis added).[1]  The FDA's Safety Communication **actually** made no suggestion of death caused by IVC filters, and the Communication strikes a far different tone:  "Known long term risks associated with IVC filters include but are not limited to lower limb deep vein thrombosis (DVT), filter fracture, filter migration, filter embolization and IVC perforation."  Exhibit B, FDA 2010 Safety Communication.  The Nations Firm's website also speculates—without citation or support—that the rates of filter injuries are "much higher" than experts say:

> Since the introduction of the IVC filter in 2005, the FDA has received approximately 1000 adverse reports concerning them. Many of the reports allege that the IVC filters fragment and embolize within the body.  Based upon further information, **we [the attorneys] think the number of fracture and migration occurrences are much higher** and have affected over of 15,000 patients around the country.

---

[1] Link as of June 15, 2020.

4

https://www.howardnations.com/practice-areas/ivc-filter-g2/ (emphasis added).  This sales tactic apparently succeeded,[2] as the Nations Firm inventory is the third largest collection  of cases in this MDL, **with over 50% of cases self-categorized as having no symptomatic injury at all**.

Faced with the significant and growing number of no-injury/product-in-place cases, this Court in October 2018 adopted a screening system that proposed to address directly the question of whether no-injury/product-in-place cases have merit.  *See* Dkt. 9322.  The Court's categorization system resulted in the dismissal of all "Category 1" cases (patients whose filters were removed on the first attempt with no complications, *see* Dkt. 10588) and "Category 2" cases (claims of emotional distress or fear with no evidence of complications, *see e.g.,* Dkt. 11131).  Indeed, the nere discussion of the Court's Screening Order resulted in the voluntary dismissal of dozens of Category 2 cases even *before* the Court entered the Screening Order.

Nevertheless, Plaintiffs' attorneys have continued to insist that:

> [t]hese **non-symptomatic injury cases**, failed retrieval cases, irretrievable filter case[s], and anticoagulation cases will need be tested (through motions to dismiss and for summary judgment) and **tried** (most efficiently through multi-plaintiff trials) **to determine whether they involve valid and compensable injuries**."

*See* Plaintiffs' Response To Cook Defendants' Motion For Screening Order And Bellwether Selection Plan (Dkt. 8591) at 2 (emphasis added).  Consistent with both parties' request for exemplar trials from this group of cases, the Court's October 2018 Screening Order provided for three bellwether trials from the Category 5 and 6 asymptomatic cases.  *See* Dkt. 9322 at 4.  The

---

[2]For example, Plaintiff McDermitt's claim originated when his wife told him she had seen a television "notice" that she interpreted as an announcement that Mr. McDermitt's IVC filter had been recalled.  *See* Deposition of Carol McDermitt ("C. McDermitt Dep.") at 55:5-15; 57:2-7; 58:2-5; 58:19-23; 66:6-16 (Dkt. 12803-6).  She did not learn until her deposition years later that Plaintiff's filter had never been recalled.  C. McDermitt Dep. at 70:2-14; 71:4-13 (Dkt. 12803-6).

US.128274902.12

group of "non-symptomatic" (or "Category 6") perforation cases that Plaintiffs' attorneys' advertising have generated today number approximately 1,678 cases.

### B.     History of the Bellwether Process and *Burrage*

As noted above, as part of its October 2018 Screening Order, the Court ordered that a group of Category 5 and 6 cases would be randomly selected for a bellwether pool.  *See* Dkt. 9322 at 4.  The Nations Firm was thus well aware from October 2018 forward that they could be put to their proof in more than 50% of the firm's cases.

On May 2, 2019, the Court issued CMO-25, which set procedures for the random selection of 24 Category 5 and 6 cases for possible bellwether trials, including the parties' strikes from that list and the Court's choice of three bellwether cases from the cases remaining.  Dkt. 10599.  The Court randomly selected the bellwether discovery pool – including *Burrage* and *Johnson* (another Nations Firm case) -- on August 21, 2019.[3]  Dkt. 11062.  At the July 12, 2019, status conference, the PSC and Cook exercised their strikes of potential bellwether cases.  July 12, 2019 Tr. at 4-20. Neither side struck the *Burrage* case or the *Johnson* case from the list, and both remained eligible for a bellwether trial selection.[4]  *See id.* at 14.  The Nations Firm thus had notice more than a year ago that two of their no-injury/product-in-place cases could be selected for trial.

---

[3] Category 6 is the only category that Plaintiff Burrage selected in his categorization form.  His is therefore a Category 6 case because "only the 'highest' category will be considered for purposes of the census ordered by the Court."  Dkt. 9638-1 at 1 (instructions in template categorization form regarding the categorizations process).

[4] On August 13, 2019, the PSC submitted its comments on the suitability of the remaining cases for bellwether trials.  As to Plaintiff Burrage, Plaintiffs' submission described several of Mr. Burrage's other medical conditions as possible factors mitigating against the selection of his case as a bellwether, but mentioned no filter-related issues as counseling against trial.  *See* Dkt. 11527 at 3.[4]  Following the hearing, a PSC member emailed the Court to report that nothing in Mr. Burrage's medical condition would prevent a future trial.  *See* Exhibit C, 8/20/19 email from Ben Martin to Tina Doyle re Burrage medical issue.  ("I reached out to plaintiff's counsel in the Eddie Burrage case.  Though the plaintiff is currently undergoing treatment ***there is nothing that we know of now that would prohibit a trial of his case sometime in the future***." (emphasis

On August 21, 2019, the Court issued an Order designating *Burrage, Johnson* and *McDermitt* for bellwether trials. Dkt. 11602 at 2.  In the months that followed, Cook's counsel negotiated scheduling and other issues with the Nations Firm, and the parties jointly moved for entry of an amended scheduling order (CMO-27) in November 2019.  *See* Dkt. 12409 & Exh. A. **At no point did the Nations Firm express reservations about the *Burrage* or *Johnson* cases moving forward as bellwether trials**.  *See generally id.*

On February 19, 2020, the Court issued its Second Amended CMO-27, addressing discovery and pretrial issues and deadlines for the bellwether cases, and adopting the parties' proposed October 2020 and February 2021 trial dates for *Johnson*  and *Burrage*.  Dkt. 12906. Plaintiff Burrage again raised no objection to either the trial setting or the trial date.

On April 24, 2020, citing statute-of-limitations problems with his case, bellwether Plaintiff James Johnson dismissed his claims.  *See* Dkt. 13354; Dkt. 13358.  Following this dismissal, the Court clarified again on May 27, 2020, that the *Burrage* case would be tried on February 8, 2021.[5]

On June 1, 2020, the Nations Firm filed a motion and supporting memorandum asking the Court to dismiss Plaintiffs' claims **without** prejudice, claiming Plaintiff never anticipated that his case would be tried, and that his case should be dismissed because it has a "negative value." Dkt. 13543, 13544.  After learning that Cook intended to object to the dismissal, Plaintiff

---

added)).  Cook's case selection submission opined that Plaintiff Burrage's claim was typical of Category 6 claims and would be a suitable bellwether trial.  *See* Dkt. 11528 at 8-9.

[5] On May 22, 2020, following up on the *Johnson* dismissal, the Court mistakenly vacated the February 8, 2021, *Burrage* trial date, believing that was the *Johnson* trial date. Dkt 13490.  On May 27, 2020, the Court corrected its error, vacated the actual *Johnson* trial setting, and made clear that "the trial setting in …Eddie Clark Burrage v. Cook Incorporated, et al, remains set for FEBRUARY 8, 2021."  Dkt. 13498.

withdrew his original motion to dismiss without prejudice and filed the present motion.  Dkt. 13586; Dkt. 13587.  The only reason stated for the renewed request to dismiss is that "Mr. Burrage anticipates that the costs of litigation will exceed his anticipated recovery".  Dkt. 13588 at 2.

## **ARGUMENT**

Either Cook should have the opportunity to test in bellwether trials the significant portion of cases in this MDL in which Plaintiffs allege no symptomatic injury, or the Court should dismiss those cases.  When faced with the spectre of an impending trial in one of these non-injury cases, Plaintiff's counsel have repeatedly dismissed their individual clients' claims.  At the same time, however, Plaintiff's counsel continues to file yet more no-injury, product-in-place cases like *Burrage*.  Counsel for Mr. Burrage and others who file such cases appear to do so under the assumption that they will receive compensation for cases for which there is no merit based on a park-and-ride strategy that avoids adjudication on the merits.  Such a strategy seriously and unfairly burdens the judicial system, including this district.  ***This practice cannot stand.***

Until this Court – by order or trial – adjudicates claims like those brought by Plaintiff Burrage, Plaintiffs' counsel's park-and-ride strategy will continue—there is simply no incentive for them to stop it.  The Cook Defendants ask this Court to put an end to this practice once and for all, or give the Cook Defendants their day in court.

## I.  THE COURT SHOULD DENY PLAINTIFF BURRAGE'S MOTION TO DISMISS HIS CASE WITH PREJUDICE.

Rule 41(a)(2) provides that "an action may be dismissed at the plaintiff's request only by court order, on terms that the Court considers fair." As this language makes clear, Plaintiff Burrage has no right to the dismissal of his case. "[T]he allowance of a motion to dismiss under

8

Rule 41(a)(2) is not a matter of right, but is discretionary with the District Court both as to whether a dismissal shall be allowed as well as to the terms and conditions to be imposed if allowed." *Adney v. Mississippi Lime Co. of Mo.*, 241 F.2d 43, 45–46 (7th Cir. 1957) (citing *Grivas v. Parmelee Transportation Co.*, 207 F.2d 334 (7th Cir. 1953)) (reversing order of dismissal that trial court had granted based on mistaken understanding that plaintiff had absolute right to dismissal). *See also In re Navistar MaxxForce Engines Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 14-CV-10318, 2018 WL 316369, at *2 (N.D. Ill. Jan. 4, 2018) ("Rule 41(a)(2) grants "broad discretion," … to decide whether to grant a voluntary dismissal and, if so, on what terms and conditions) (citations omitted).

The burden rests on the plaintiff to persuade the court that dismissal is warranted. *See Tolle v. Carroll Touch, Inc*., 23 F.3d 174, 177 (7th Cir. 1994). A plaintiff may not use a Rule 41(a)(2) dismissal to as an escape hatch when things are going badly; "a motion to voluntarily dismiss under Rule 41(a)(2) should be denied when a plaintiff seeks to circumvent an expected adverse result." *Nesari v Taylor*, 806 F. Supp. 2d 848, 861 (E.D. Va. 2011) (citing *Skinner v. First Am. Bank of Va.*, 1995 WL 507264, at *2 (4th Cir. Aug. 28, 1995)). For example, a plaintiff is not entitled to a Rule 41(a)(2) dismissal just to avoid an adverse summary judgment ruling. *See, e.g., Pace v. Southern Exp. Co.*, 409 F.2d 331, 334 (7th Cir. 1969) (affirming denial of Rule 41(a)(2) motion for dismissal without prejudice and grant of summary judgment in defendant's favor); *Cunningham v. Rapid Response Monitoring Servs, Inc.*, 2018 WL 2189757, at *2 (M.D. Tenn. Apr. 23, 2018) (recommending grant of summary judgment notwithstanding plaintiff's last-minute motion for dismissal without prejudice).

As Plaintiff acknowledged in his original motion (but omits from his second), a district court should deny voluntary dismissal if the defendant would suffer "plain legal prejudice" as a

US.128274902.12

result.  Dkt. 13544 at 2 (quoting *Kovalic v. DEC Int'l, Inc.*, 855 F.2d 471, 473 (7th Cir. 1988)).

The "plain legal prejudice" standard considers "[t]he defendant's effort and expense of

preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in

prosecuting the action, insufficient explanation for the need to take a dismissal, and the fact that

a motion for summary judgment has been filed by the defendant."  *Federal Deposit Ins. Corp. v.*

*Knostman*, 966 F.2d 1133, 1142 (7th Cir. 1992).  As discussed below, these factors weigh against

Plaintiff's motion to dismiss.

　　　　Here, Plaintiff offers no sound reason for dismissing this case, with or without prejudice.

On the contrary, every conceivable factor weighs heavily in favor of trying this case in February

2021:

- Plaintiff and his attorneys have repeatedly asked this Court for the trial of Plaintiff's claims, saying that a trial is necessary to resolve the issues raised, and particularly the issue of whether asymptomatic conditions constitute compensable injuries.

- The Court selected the *Burrage* case for trial nearly a year ago, Plaintiff's attorney and the PSC assured the Court there were no obstacles to that trial, and Plaintiff makes no claim that anything has changed.

- Plaintiff's motion does not suggest that Mr. Burrage's claim has no legal or factual merit—on the contrary, it suggests that the claims ***do*** have merit, but claims that taking the case to a jury to test that merit would be too much trouble.

- Plaintiffs' assertion that this case has "negative value" is wholly unsupported, disregards the value of this bellwether trial in setting values for other cases in the MDL (including the 100+ other asymptomatic perforation cases in Plaintiff's attorney's own inventory), and ignores the financial support for the bellwether trial available through the common fund.

- Plaintiff's attorneys' 19-month delay in announcing that Plaintiff's case is not worth trying obliged Cook to incur substantial costs, including attorney and paralegal time in working up the case and developing Cook's legal, factual, and expert defenses, costs that Plaintiff's motion would have Cook simply throw away.  *See Knostman*, 966 F.2d at 1142 (noting factor in evaluating "plain legal prejudice" to defendant is "[t]he defendant's effort and expense of preparation for trial"). In addition, Cook has been required to gather and produce documents and information, at substantial expense, to defend against no-injury cases like *Burrage*.

- Plaintiff's requested dismissal would also eviscerate the Court's carefully constructed October 2018 bellwether trial plan.  That plan including putting Plaintiffs to their proof in a case representative of the no symptomatic injury portion of the MDL.

In sum, Plaintiff has offered no adequate grounds for the requested dismissal, and dismissal would impose plain legal prejudice on Cook.  This case represents the exact type of case this Court intended to test through its Bellwether Plan, and Cook already has invested substantial expense in preparing it for trial.  To upend the Court's Bellwether Plan as Plaintiffs attempt through the dismissals of *Johnson* and *Burrage*, while refusing to dismiss and continuing to file other no-injury/product-in-place cases, would be to waste the last 12 months or more of the Court's and Cook's time at considerable expense.  Plaintiff's motion also effectively deprives Cook of its day in Court on an issue critical to at least 1650 cases in this MDL.  Cook therefore urges the Court to deny Plaintiff's motion.

Should the Court disagree, Cook urges the Court to grant Plaintiff's dismissal only on terms that will mitigate the damages the dismissal will cause to Cook and the bellwether process, including Plaintiff's reimbursement of the substantial investment Cook has already made in the *Burrage* case, the adoption of Cook's Proposed Bellwether Plan, and the substitution of a Tulip case of Cook's choice for *Burrage* as the February 2021 bellwether trial.

### A. A Party Who Commences a Lawsuit Assumes the Risks of Expense and Trial That May Result, and Plaintiff's Belated Assertion the He Does Not Want a Trial Rings Hollow in Light of Plaintiffs' Attorneys' Conduct.

Plaintiff's motion asserts that he "filed suit against Defendants on January 30, 2018 in the Cook MDL, *with the anticipation that his case would be resolved without a costly trial*." Dkt 13588 at 1.[6]  Plaintiff presumably based that "anticipation" on what he was told by his attorneys;

---

[6] *See also* Dkt 13544 at 4 ("Mr. Burrage filed his case in the MDL with the anticipation that it would be resolved without a costly trial.").

US.128274902.12

it is difficult to imagine any other source for that information.  If so, such information was at the very least misleading.  A plaintiff cannot simply sue and then sit back and wait for the settlement money to roll in without any risk of expense or trial.  As noted above, "[w]hen a plaintiff files any court case, …. sitting back is no option"; the plaintiff "must be prepared to undergo the costs, psychological, economic and otherwise, that litigation entails."  *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 628 F.3d at 163.  This admonition is especially compelling in the MDL context:

> That the plaintiff becomes one of a mass of thousands pursuing particular defendants lends urgency to this reality.  Courts must be exceedingly wary of mass litigation in which plaintiffs are unwilling to move their cases to trial.  ***Any individual case may be selected as a bellwether, and no plaintiff has the right to avoid the obligation to proceed with his own suit, if so selected.***

*Id.* (affirming dismissal with prejudice over Plaintiff's objection) (emphasis added).

In addition, the record belies Plaintiff's counsel's assertion that Plaintiff did not *actually* anticipate that a trial was a possibility.  On the contrary, Plaintiff has repeatedly requested a trial of Plaintiff's case.  In his very first filing in this Court, Plaintiff Burrage incorporated the Plaintiffs' Master Complaint and in doing so made an express request for a jury trial.  *See* Case 1:18-cv-00273-WTL-TAB Document 1 (Short-Form Complaint); Master Consolidated Complaint for Individual Claims (Dkt. 213) at 37 ("The Plaintiffs respectfully request trial by jury in the above case as to all issues.").  Plaintiff's motion does not acknowledge this request for a trial and does not explain why he requested a trial when he (supposedly) didn't really mean it.

Plaintiff's subsequent submissions to the Court likewise undercut Plaintiff's assertion that he never anticipated a trial.  For example:

- In objecting to Cook's motion for a screening order for meritless cases, Plaintiffs consistently asserted that claims of asymptomatic injuries like Mr. Burrage's *should* be tested through bellwether trials.  *See* Plaintiffs' Response to Cook Defendants' Motion For Screening Order and Bellwether Selection Plan (Dkt.

8591) at 15 ("Plaintiffs' category 5 (Non-Symptomatic Injury Cases) is substantively akin to Cook's DNI [disputed product-in-place/no injury]. Again, ***both parties agree that these are cases which should be included in the next pool of bellwether candidates.***") (emphasis added); *id.* at 2 ("Plaintiff: "Cook agrees that the [disputed product-in-place/no injury] and Bodily Injury cases must be resolved through litigation and trial proceedings.").[7]

- In Plaintiffs' Memorandum of Law In Support of Plaintiffs' Motion to Remand and Transfer Venue (Dkt. 10439), Plaintiff Burrage (along with all other Plaintiffs) repeatedly referred to the trial that he was ready to have once his case was transferred to his preferred venue.[8] *See* Dkt. 10439 at 4 ("it will be faster for Plaintiffs ***to obtain trials*** in the venues of their choosing,"); *id.* at 7 ("Direct-filed cases are mature and appropriate to transfer ***for trial***"); *id.* ("Transfer of these direct filed cases for case-specific pretrial issues ***and for trial*** is appropriate at this time") (all emphases added).[9]

Moreover, even assuming that Plaintiff Burrage did not ***originally*** anticipate that he would receive the jury trial he had requested, the Court's bellwether selection process made clear to him that his case would in fact be tried.  Specifically:

- Plaintiff has known since he categorized his case on November 30, 2018, that his case would be subject to selection as a bellwether.  *See*  Exhibit D, 11/30/18 email from Angela Bautista to Cook Filter MDL attaching Categorization Form; Dkt. 9322 at 4 (providing for selection of bellwether trials from Category 5 and 6 cases).

- Plaintiff has known since May 2, 2019, that his Category 6 case was in the pool of cases from which bellwether trials would be selected. *See* Dkt.10599.

---

[7] *See also* Dkt. 8591 at 5 ("Cook acknowledges within its DNI case definition that it is disputed whether cases of non-symptomatic filter migration, perforation, thrombosis or occlusion represent injuries and that trials will be necessary to resolve the issue."); *id.* at 13 ("Cook could do any of the following: … (4) it could pursue a representative group of 'UNI' claims to trial and attempt to convince a jury that there were no injuries.").

[8] The motion for remand was filed "on behalf of Plaintiffs' Steering Committee," Dkt. 10439 at 9, a committee of which Plaintiff Burrage's attorney was and is a member.  *See* Dkt. 875 at 2; Dkt. 10512 at 2.

[9] *See also* Dkt. 10439 at 4 ("Plaintiffs who direct-filed their cases in this MDL for pretrial purposes only and who pleaded ***their choice of venue for trial*** in the agreed upon Short Form Complaint"); *id.* ("despite tremendous time and effort expended by the Court, at the pace that trials are progressing in the MDL, thousands of deserving Plaintiffs will never get ***their day in Court***") (both emphases added).

US.128274902.12

- Plaintiff has known since May 23, 2019, that his case was in the randomly selected group of 24 possible bellwether trials.  *See* Dkt.10881.
- Plaintiff has known since August 21, 2019, that his case would in fact be tried as a bellwether trial.  *See* Dkt. 11602 at 2.
- Plaintiff has known since November 8, 2019, that his case would be tried beginning February 8, 2021.  *See* Dkt. 12409.

Given this knowledge, Plaintiff and his attorneys were under an obligation to speak up during the bellwether selection process if they did not intend to take the case to trial.  Instead, Plaintiff and his attorneys sat idly by.  In fact, they did worse than that.  Plaintiff's attorneys actually worked *with* Cook to put together a specific litigation schedule and deadlines for trial—a trial that Plaintiff's attorneys now represent that Plaintiff never anticipated would go forward.

In sum, Plaintiff's explanation that he never anticipated that this case would go to trial is not an adequate explanation for his motion to dismiss, and it cannot obviate the plain legal prejudice created by such bait-and-switch tactics.  *See Knostman*, 966 F.2d at 1142 (noting factor in evaluating "plain legal prejudice" to defendant is "insufficient explanation for the need to take a dismissal").

### B.   Plaintiff's Attorneys Do Not Admit that Plaintiff's Claim Has No Merit, Merely that Trying That Claim as They Requested Would Cost More Than They Now Care to Invest.

Under Rule 11, the submission of a signed pleading constitutes a representation by the signing attorney that the claims asserted have a sound factual and legal basis and are not presented for any improper purpose.  *See* Fed. R. Civ. P. 11(b).  Here, Plaintiff's attorney's signature on Plaintiff's short-form complaint signified to the Court the legal and the factual merit of Plaintiff's claims, and counsel's commitment to pursuing them.  Given the present motion, the Court can only infer that those attorneys are unwilling to carry the obligation they made to Plaintiff when they agreed to represent him.

Cook recognizes that circumstances may change in the course of litigating a case, and that a plaintiff's attorney may discovery additional information or legal authority that undercuts the claims asserted.  An attorney in that position is quite right to seek dismissal of the case; indeed, Rule 11 requires an attorney to do so.  *See, e.g., Young v. Corbin*, 889 F. Supp. 582, 585 (N.D.N.Y. 1995).

Here, however, nothing suggests that Plaintiff's attorneys have gained any new insight or new facts that affects the merits of Plaintiff's case.  Plaintiff presumably still has the same lack of symptoms and complications that he had when he filed his case.  If the case today has a "negative value," as Plaintiff's motion asserts, it had that same negative value when it was filed in January 2018, and when it was set for trial in August of 2019.  Plaintiff's motion offers no explanation of his delay of over two years in seeking to dismiss this case or in forcing Cook to work diligently on the case in the meantime.[10]  *See Knostman*, 966 F.2d at 1142 (noting factor in evaluating "plain legal prejudice" to defendant is "excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action").

Moreover, Plaintiff's motion does not acknowledge that his claims lack any legal or factual basis.  On the contrary, his motion assumes that he would in fact recover in the coming trial, but that the recovery simply would not be worth the attorney's investment of time and trouble.  *See* Dkt. 13588 at 2 ("Mr. Burrage anticipates that the costs of litigation will exceed his anticipated recovery").  But Plaintiff's attorneys assumed the risk of such a loss when they

---

[10]     Plaintiff's implication that the trial of *Burrage* was uncertain until the Court's May 26, 2020, Order made it "clear" that the case would be tried as a bellwether trial, Dkt. 13588 at 2, is misleading.  As noted in footnote 5 above, the May 26, 2020, entry merely corrected a clerical error; Plaintiff, his attorneys, and the entire MDL Plaintiffs' bar knew by the time of the Court's August 21, 2019, Order that the *Burrage* case would be tried as a bellwether case.  *See* Dkt. 11602.  Plaintiff's attempt to suggest that either the trial or the trial schedule is a recent development misstates the record.

undertook Plaintiff's case, and in particular when they not only acquiesced in but helped plan for a bellwether trial that they now want to dump.  Indeed, the Nations Firm has presumably made that same calculated investment in the more than 50% of their cases that involve asymptomatic plaintiffs, and they should be put to their proof.  As commentators have noted, such last-minute abandonment of weak claims in a bellwether process raises red flags about sharp practices.  *See, e.g.,* Bloch Judicial Institute, Duke Law School, Guidelines and Best Practices for Large and Mass-Tort MDLs (2d ed. 2018) at 26 (hereafter "Guidelines and Best Practices") ("Although there may be good-faith reasons for settling or for voluntarily dismissing a test case, there are also instances in which the parties do so to manipulate the takeaways from the bellwether process.").

### C. The Court Should Not Permit Plaintiff's Attorneys to Manipulate the Bellwether Process.

The Nations firm's dismissal of *Johnson* and attempted dismissal of *Burrage* constitutes a clear attempt to manipulate the bellwether process and avoid trials on the merits of a significant portion of the MDL that counsel filed, but now does not like.  The only explanation the present motion offers is the assertion that Plaintiff 's claim has a "negative value."  Dkt. 13587, 13588 at 2; Dkt. 13544 at 4 ("As a bellwether case, the costs of litigating this action will exceed any anticipated recovery, resulting in his case having negative value.").  This is an insufficient justification for Plaintiff's attorneys to abandon their client's supposedly meritorious claims while maintaining hundreds of other similarly-situated cases.

### 1. Plaintiff's Counsel's Claim of "Negative Value" is Entirely Unsupported.

The sole factual premise of Plaintiff's motion consists of the assertion by Plaintiff—or more accurately, by Plaintiff's attorneys—that "the costs of litigation will exceed [Plaintiff's] anticipated recovery."  Dkt. 13588 at 2.  But Plaintiff's motion offers no factual support of any

US.128274902.12

kind for this central assertion, much less for his attorneys' apparently belated realization of this supposed fact.

First, Plaintiff's attorneys do not suggest how much they expect Plaintiff's monetary recovery would be, and they offer no facts from which the Court or Cook could make any calculation or estimate that figure. Indeed, Plaintiff's attorneys do not even state the recovery that they expect to ask the jury to award, a figure that is surely within their knowledge, or at least their ability to project.

On the other side of the coin, Plaintiff's attorneys provide no information about the anticipated "costs of the litigation" that will outweigh the unspecified recovery. They do not say how long they anticipate the trial would last, how many experts they intend to call, or what expenses they expect to incur. Like the anticipated recovery, the motion neither specifies nor supports the claimed anticipated costs of the trial. Given that the comparison or recovery to expenses is the sole factual premise of Plaintiff's motion to dismiss, these omissions are troubling and inexplicable.

### 2. As a Bellwether Trial, This Case Has Significant Value.

Even assuming Mr. Burrage's case had a "negative value" tried as a stand-alone case—a fact that Plaintiff's counsel should have (but apparently did not) advised Plaintiff at the outset — the case nevertheless has substantial positive value because it will ***not*** be tried as a stand-alone case; it will be tried as a bellwether in an MDL, with all the value bellwether verdicts provide. Given the value of the trial here in the broader context of no-injury cases, Plaintiff's attorneys' supposed cost-based abandonment of their client's claim is all the more implausible and troubling.

The Court needs little education concerning the value of bellwether trials and verdicts. Bellwether trials permit the parties to raise issues for adjudication that impact multiple cases, and bellwether verdicts guide the parties on case values. The Court has made clear that valuation of claims is one of the primary goals of the Court's bellwether process. Indeed, guidance about the viability and value of asymptomatic perforation cases would be of substantial value to Plaintiff's own attorneys at the Nations Firm. The Nations Firm itself has more than 100 no-injury/product-in-place cases, and the pooling effect of the resources available to the firm's own clients make this case well-suited for the trial of the issues those cases present.

Plaintiffs' attorneys' abandonment of Mr. Burrage's case based on their own (unstated) view of its value thus runs directly counter to Rule 11 and to the bellwether process. Plaintiff's motion makes clear that (1) asymptomatic claims like Mr. Burrage's lack merit or value, and (2) Plaintiff's counsel want to prevent the Court and Cook from proving that lack of merit or value.

### 3. The MDL's Common Fund is Designed to Spread the Cost of Bellwether Trials and to Address the "Negative Value" Plaintiff Claims Here.

Plaintiff's supposed "cost-based" ground for dismissal also wholly ignores the availability of financial support for bellwether trials through the Plaintiffs' common fund. The Court's Order Establishing a Common Benefit Fee and Expense Fund expressly contemplates that the fees and costs of bellwether trials will be broadly shared among all plaintiffs, in recognition that such trials benefit the plaintiffs as a group even where the trial costs may exceed the individual recovery. That Order, entered on Plaintiffs' attorneys' motion, states:

> [I]n the event that a case is selected as part of an approved bellwether trial process in the MDL, or state court proceeding, the time and expenses in trying the case (including work performed as part of the approved bellwether process) may be considered common benefit work at the discretion of Plaintiffs' Co-Lead Counsel.

Dkt. 1246 at 31; *see also id.* at 7 (listing costs of "bellwether cases" as among individual case costs that may be paid through the common fund). Plaintiff's attorney is certainly aware of this "subsidy" of bellwether cases, as he is a member of the Plaintiff's Steering Committee, *see* Dkt. 10512 at 2.[11]

The Plaintiffs' Steering Committee's pending motion to increase the percentage of awards and other recoveries allocated to the common fund makes clear that Plaintiffs' co-lead counsel have in fact been supporting the bellwether trials through the common fund, and that support of such bellwether trials and trial preparation activities is one of the reasons the common fund requires an additional allocation:

> As the MDL grew in size, and ***as the parties prepared for multiple bellwether trials***, the number of hours and dollars expended on common benefit work has come to dwarf the PSC's initial estimates. Consistent with the order, participating counsel have submitted their contemporaneously recorded time, in excess of 75,000 hours to Co-Lead Counsel. This massive collective undertaking has been to the benefit of the thousands of plaintiffs who have filed cases in this MDL, putting them in a position to resolve their cases. It has included, in part, the following: review of millions of pages of Cook documents; ***taking/defending 140 corporate, case-specific and expert depositions; identification and preparation of numerous experts and expert reports***; appearance at 58 status conferences; negotiation of multiple discovery disputes and Case Management Orders; extensive briefing and argument of over 100 motions *in limine;* ***briefing and argument of more than 50 Daubert motions and dozens of other dispositive motions***, including a motion based on preemption related to 510(k)-cleared devices that resulted in additional expert fees and expenses, as well as effort lasting the better part of a year; and ***the full trial of three bellwether cases (two in the MDL and one in state court in Texas).***

10442 at 2-3 (emphases added).

---

[11] For example, the total damages Plaintiff's attorney sought in his closing argument in the *Hill* case were under $400,000, *see* Hill Trial Tr. at 51-52 (Nov. 9, 2017), a sum far less than the half million dollars that Plaintiff's attorneys in the *Hill* case spent just on plaintiff's expert, Dr. David Kessler. *See* Hill Trial Tr. at 445:16-25 (Oct. 24, 2017).

US.128274902.12

This bellwether-support role of the common fund here is not unusual in the MDL context. As commentators have noted, one of the purposes of Common Benefit Funds (CBFs) in MDLs is to avoid the disproportionate burden on bellwether plaintiffs of trials whose results benefit broader groups of MDL plaintiffs:

> The CBF's function is to compensate plaintiffs' counsel for their work based on their relative contributions to the outcome of the case. Its purpose is to ensure that all who benefit from the CBF will have contributed proportionately to the costs of the litigation, which is ***particularly important in a mass-tort MDL where the value of bellwether trials often exceeds the value of the particular claims being tried.***

Guidelines and Best Practices at 65 (emphasis added). *See also* Jaime Dodge, Facilitative Judging: Organizational Design in Mass-Multidistrict Litigation, 63 Emory L. J. 329, 345-46 (2014)( "In addition, the cost-spreading MDL enables counsel to pursue many meritorious cases that would have been negative-value claims outside of an aggregative context."). These comments describe Mr. Burrage's situation perfectly.

Given both the authority of Lead Counsel to provide financial support to bellwether trials from the common fund and the fund's *actual* support of the prior bellwether trials, Plaintiff's attorney's claim that he cannot try this bellwether case because of prohibitive costs is baffling. Cook cannot imagine that the Lead Plaintiffs' Counsel would deny such support to Plaintiff. The Nations Firm is a member of the Plaintiffs' Steering Committee, and such bellwether expenses are, after all, exactly what the common fund is for. Notably, Plaintiff's motion does not represent that his attorney has sought such support and been rejected; it simply ignores the existence of the common fund entirely.

Plaintiff's motion attempts to play to the sympathy of the Court by implying that Plaintiff Burrage himself will bear "the costs of litigating this action." Dkt. 13544 at 4. But given the availability of support from the common fund, Plaintiff's motion does not and ***cannot*** claim with

20

a straight face that Plaintiff Burrage will personally bear the costs of the trial that Plaintiffs' attorneys recruited him to request, any more than, for example, Plaintiff Hill was asked to personally pay the half-million dollars charged by Dr. Kessler in her unsuccessful trial against Cook. *See* Hill Trial Tr. at 445:16-25 (Oct. 24, 2017).

In sum, like his assertion that he did not expect his case to go to trial, Plaintiff's counsel's claim that he cannot afford to try the case does not justify dismissal. *See Knostman*, 966 F.2d at 1142 (factor in evaluating "plain legal prejudice" to defendant is "insufficient explanation for the need to take a dismissal").

> ### D.  The Motion to Dismiss is a Cynical Attempt by Plaintiff's Attorneys to Manipulate the Bellwether Process and to Avoid Their Professional Responsibilities to Their Client and to This Court.

So what is this motion to dismiss really about?  It is not about the costs of trial; as discussed in the previous section.  It is not about newly-discovered facts, or new legal analysis, or any other change in circumstances that undermines Plaintiff's claims.  And it certainly is not about candor to the Court or to Cook; if it were, Plaintiff would not have forced Cook to waste months of time and effort in preparing to try the case.  *See Knostman*, 966 F.2d at 1142 (noting factor in evaluating "plain legal prejudice" to defendant is "[t]he defendant's effort and expense of preparation for trial").

In fact, this motion is a last-ditch attempt to conceal the fact that the emperor has no clothes.  Plaintiffs' attorneys have recruited and filed cases on behalf of innocent people who have had IVC filter placements but have suffered no injuries or complications from those filters. They have used the MDL process to disguise or conceal the gossamer-thin character of these claims, hoping that the relatively few claims involving actual physical injuries will provide enough momentum to carry their no-injury cases through to settlement.  Their strategy is not

US.128274902.12

unique; as one court noted, "the evolution of the MDL process toward providing an alternative dispute resolution forum for global settlements has produced incentives for the filing of cases that otherwise would not be filed if they had to stand on their own merit as a stand-alone action."

*In Re Mentor Corp. Obtape Transobturator Sling Products Liability Litigation*, 2016 WL 4705827, 4:08–MD–2004 (CDL) (Sept. 7, 2016).  The *Mentor* court went on:

> Some lawyers seem to think that their case will be swept into the MDL where a global settlement will be reached, allowing them to obtain a recovery without the individual merit of their case being scrutinized as closely as it would if it proceeded as a separate individual action.  This attitude explains why many cases are filed with little regard for the statute of limitations and with so little pre-filing preparation that counsel apparently has no idea whether or how she will prove causation.

*In Re Mentor Corp. Obtape Transobturator Sling Products Liability Litigation*, 2016 WL 4705827, 4:08–MD–2004 (CDL) (Sept. 7, 2016).  Another MDL court offered a similar lament in considering the necessity of a Lone Pine order:

> [G]iven that cases are more likely to result in dismissal once discovery focuses on issues related to causation, ***the Court has reason to believe that spurious or meritless cases are lurking in the some 1,000 cases on the MDL docket.***  As [defendant] points out, more than 50% of the cases set for trial have been dismissed, and some 31% of cases that have been selected for discovery have been dismissed.  Plaintiffs' habit of dismissing cases after both parties have expended time and money on case specific discovery demonstrates that this MDL is ripe for a *Lone Pine* order.

*In re Fosamax Products Liability Litigation*, No. 06 MD 1789(JFK), 2012 WL 5877418 At *3 (S.D.N.Y. 2012) (emphasis added); *cf. also In re Air Crash Disaster at Stapleton Intern. Airport,* 720 F.Supp. 1505 (1989) (rejecting use of offensive collateral estoppel by mass tort plaintiffs who did not join trial on ground that use would encourage plaintiffs to delay prosecution of their actions and impair the efficiency of the combined litigation).

This Court has given itself the means to avoid this problem and to nip the problem of meritless cases in the bud – its October 2018 Bellwether Plan.  Instead of cooperating with that

Plan, Plaintiff's attorneys have attempted to thwart it by electing to cut and run in *Burrage* and *Johnson*, yet they still refuse to dismiss all such claims or acknowledge their patent lack of merit. The Court should not permit Plaintiffs' attorneys to avoid trials on the merits of the Category 5 and 6 cases through serial bellwether dismissals.

The Court should deny Plaintiff's motion and move forward with the bellwether trial schedule leading to a February 2021 trial.

### E. At the Very Least, the Court Should Condition Any Dismissal of Plaintiff's Claims on Terms that Will Ameliorate the Prejudice to Cook and the Damage to the Bellwether Trial Process.

Should the Court be inclined to grant Plaintiff's motion to dismiss notwithstanding the analysis above, Cook urges the Court at the very least to condition any such dismissal on terms designed to reduce the prejudice to Cook and the damage and disruption to the bellwether process that the motion for dismissal threatens. Specifically, the Court should condition dismissal on (1) Plaintiff's reimbursement of the substantial investment Cook has already made in the *Burrage* case, and (2) adoption of Cook's Proposed Bellwether Plan, and (3) the substitution of a category 6 Tulip case of Cook's choice for *Burrage* as the February 2021 bellwether trial.

Rule 41(b) provides that "an action may be dismissed at the plaintiff's request only by court order, ***on terms that the court considers proper***." Fed. R. Civ. P. 41(a)(2) (emphasis added). Under this rule, the discretion granted the Court under Rule 41(a)(2)'s "does not extend to approving a voluntary dismissal that would legally prejudice the opposing party without protective terms and conditions." *Navistar MaxxForce Engines*, 2018 WL 316369, at *2; *see also Mother v. Cassidy*, 338 F.3d 704, 709 (7th Cir. 2003) ("The one exception to this broad

grant of discretion that has often been recognized is the situation in which the party opposing dismissal would be prejudiced by the proposed condition." (citation omitted)).

     1.   **The Court should require Plaintiff to reimburse Cook for the attorney's fees and other costs it has incurred in preparing the *Burrage* case for the bellwether trial.**

The first item of prejudice the Court must address in setting the terms for Plaintiff's dismissal is Cook's soon-to-be-wasted efforts in preparing for the *Burrage* bellwether trial.  The Court can and should condition Plaintiff's requested Rule 41(a)(2) dismissal on his payment of the fees and costs incurred by the Cook Defendants, including attorney's fees.  *See* Wright & Miller, 9 Fed. Prac. & Proc. Civ. § 2366 (3d ed.) ("In imposing conditions the trial court is not limited to ordering the payment of taxable costs, but may require the plaintiff to compensate for all of the expense to which the defendant has been put."); *see also In re Great Lakes Dredge & Dock Co.*, D.C.Fla.1997, 179 F.R.D. 336,340 (requiring plaintiff to pay opposing party's attorney's fees and costs on dismissal where plaintiff had abused the judicial process); *Trembath v. Wells Fargo Bank NA,* 2018 WL 925254, *3 (N.D. Ind. 2018) (granting motion for Rule 41(a)(2) dismissal without prejudice in face of summary judgment motion on condition that defendant could submit request for attorney's fees for unnecessary briefing that had no usefulness in any subsequent state-court litigation).

Plaintiff's current motion does not address Cook's efforts and expenses in preparing to defend his case,[12] but his initial motion speculated that "Defendants' effort and expense devoted to the Burrage case at this point are relatively minimal."  Dkt 13544 at 4.  Plaintiff is mistaken.

---

[12] Not only does Plaintiff's present motion fail to acknowledge any possible obligation to reimburse Cook for the expenses it incurred as a result of his delay in seeking dismissal, he actually proposes that Cook bear its own costs.  *See* Dkt. 13588 (asking Court to "dismiss the above-captioned case with both sides bearing their own costs").

In fact, as soon as the Court issued its August 21, 2019, Order designating the second set of bellwether trials, Cook and its attorneys began working up the *Burrage* case for trial.  This work included the service of written discovery and analysis of Plaintiff's responses, the gathering of medical and other relevant records, and extensive work on legal strategy, medical and scientific analysis, and factual investigation.

Plaintiff's motion would render all of that case-specific effort and expense a complete waste of time and money, and all without any excuse.  Plaintiff's motion does not claim that he or his attorneys know anything now that they did not know on August 21, 2019, when his case was designated for trial, and offers no reason he did not bring his motion to dismiss at that time. But whatever the reason, he did not. Instead, he forced Cook to devote substantial time and money to working up a case that Plaintiff now claims he never anticipated would be tried.  Dkt. 13588 at 1.

Moreover, the exceptional circumstances here justify conditioning dismissal on paying Cook's attorney's fees and costs even though Plaintiff seeks a dismissal *with* prejudice.  *See York v. Ferris State Univ.*, 36 F. Supp. 2d 976, 980 (W.D. Mich. 1998) (court may condition Rule 41(a)(2) dismissal with prejudice on payment of attorney's fees "where exceptional circumstances call for their allowance in order to do justice") (quoting *Smoot v. Fox*, 353 F.2d 830, 833 (6th Cir. 1965)).  Cook's continued desire to try the *Burrage* case is not based simply on its wish to win that single individual case.  Cook seeks an adjudication of issues key to the no-injury/product-in-place cases, including the value—or the lack of value—of all such asymptomatic cases.  The mere dismissal of *Burrage*, even **with** prejudice, thus would not gain Cook the benefit for which it has expended all its time and money over the past 10 months.  If *Burrage* is dismissed, the possibility of using that expenditure to obtain the benefit Cook desired

US.128274902.12

will be gone, and Cook will have to start again from scratch with another bellwether case to again pursue that benefit.

Cook therefore asks that the Court condition the dismissal of Plaintiff's case on Plaintiff's payment of the fees and other costs Cook incurred in connection with the *Burrage* case between August 21, 2019, the date the Court designated the case for a bellwether trial, and June 5, 2020, the date Plaintiff filed his present motion to dismiss.[13]  *See, e.g., Yoffe v. Keller Indus., Inc.*, 580 F.2d 126, 129 (5th Cir. 1978) ("There is no doubt that a court has ample authority to award attorneys' fees as a term and condition of a Rule 41(a)(2) voluntary dismissal in order to protect defendants.").

> **2.   The Court should substitute a Category 6 Tulip case of Cook's choice for the *Burrage* case for the February 2021 bellwether trial.**

The second item of prejudice that the Court must address in setting the terms of the dismissal of Mr. Burrage's case is the disruption of the bellwether process that such a dismissal would cause.  *Burrage* was of course one of three planned bellwether trials of Category 6 cases. The Court granted summary judgment in *McDermitt*, and the Nations Firm dismissed *Johnson*, leaving *Burrage* as the only Category 6 case moving forward to trial.  The dismissal of the *Burrage* case would leave no scheduled Category 5 or 6 bellwether trials at all, torpedoing the Court's Bellwether Plan.  The Court and the parties, or at least the Court and the Cook Defendants, have worked diligently toward these bellwether trials with the expectations that the trials will provide knowledge about and insight into the strength and value of various kinds of claims asserted in this MDL.  Dismissal of the *Burrage* case would foreclose that knowledge and insight and unnecessarily prolong this MDL—unless the Court conditions that dismissal on the

---

[13] The amount of that payment would be determined by the Court based on Cook's *in camera* submission of sworn statements and other documentation of the fees and expenses incurred.

replacement of *Burrage* with a new case for the bellwether trial in February 2021 of Cook's choice.

Cook recognizes that conditioning the dismissal of one case on the trial setting of another is unusual, but Plaintiffs' attorneys have created an unusual set of circumstances, and more than 50% of their cases parallel *Burrage*. Although the bellwether trial of Mr. Burrage's claims would of course be tried as an individual case, the *selection* of the *Burrage* case for a bellwether trial, and all the actions that flowed from that selection, was part of a group process that involved all the Category 6 Plaintiffs and their attorneys. The PSC and the Plaintiff community participated in the bellwether selection process and represented *Burrage* as a viable case for a bellwether trial. *See, e.g.,* Exhibit C, 8/20/19 email from Ben Martin to Tina Doyle re Burrage medical issue. ("Though the plaintiff [Burrage] is currently undergoing treatment there is nothing that we know of now that would prohibit a trial of his case sometime in the future.").

There is no question that the Court has the authority to substitute a Category 6 Tulip case for the *Burrage* case and to schedule this case for a bellwether trial in 2021. Although the schedule would be tight, both Cook and Plaintiff should have adequate time to prepare their respective cases for trial. Cook submits that the only way to determine if the no-injury/product-in-place cases have merit is to make the substitution of an asymptomatic Tulip case of Cook's choice a condition of the dismissal of the *Burrage* case.

## II.   IN THE ALTERNATIVE, SHOULD THE COURT DECIDE TO DISMISS THE *BURRAGE* CASE BASED ON ITS "NEGATIVE VALUE," THE COURT SHOULD LIKEWISE DISMISS ALL OF THE NATIONS FIRM'S CATEGORY 6 CASES.

Cook also separately asks in the alternative for the dismissal of all the Category 6 asymptomatic perforation cases in the MDL brought by the Nation Firm.

Cook has always maintained that asymptomatic perforation claims are not legally viable because, among other reasons, they do not allege a legally compensable injury.  In the present *Burrage* motion, the Nations Firm concedes that such claims are not worth trying, and asks for dismissal based on the case's "negative value."  But all of the other Category 6 asymptomatic perforation cases brought by the Nations Firm stand in exactly the same posture as the *Burrage* case.  Thus, if the *Burrage* case must be dismissed because it has a "negative value" if tried, then every one of the other Category 6 asymptomatic perforation cases should be dismissed for the same reason.

The Court has defined Category 6 cases as follows:

Non-Symptomatic Injury Cases: "Cases where the Plaintiff alleges non-symptomatic filter movement, migration, penetration, perforation, thrombosis, occlusion, or the presence of a clot in the filter that has not produced physical symptoms or complications."

Dkt. 9638-1.  Given that all Category 6 asymptomatic perforation cases by definition involve Plaintiffs who claim some event related to their IVC filters but who admit that they have suffered no symptoms or complications, they are all necessarily in the same position as Mr. Burrage. Thus, as with Plaintiff Burrage, the Court can only conclude that the costs of trying their cases will exceed their anticipated recoveries.  Plaintiffs cannot credibly criticize this conclusion as speculative; the conclusion has just as much support as Plaintiff Burrage provided for his similar claim.

The "negative value" of these cases is a fact of which all Category 6 plaintiffs should have been counseled by their lawyers, especially members of the PSC like the Nations Firm.  If the Court grants Plaintiff Burrage's motion to dismiss on the ground that his case cannot be tried because it has a "negative value," then all of the Nations Firm's other Category 6 asymptomatic perforation cases likewise cannot be tried and should likewise be dismissed.

US.128274902.12

Finally, this Court should admonish the Nations Firm to refrain from filing such cases in the future pursuant to Rule 11.

## **CONCLUSION**

If Plaintiffs' attorneys believe that Category 6 no-injury/product-in-place cases have sufficient merit to justify their filing under Rule 11, then the trial of *Burrage* will test the merits of those cases.  If Plaintiffs' attorneys do ***not*** believe that their Category 6 clients could recover in such a jury trial, then they should dismiss them all such cases, not just the cases where the Court puts them to their proof.

The Cook Defendants therefore urge the Court to deny Plaintiff's motion to dismiss with prejudice and to keep the *Burrage* case on the bellwether trial calendar for February 8, 2021.  In the alternative, should the Court determine that the *Burrage* case should be dismissed, Cook asks the Court to enter Cook's Proposed Bellwether Plan, to dismiss all of the Nations firm's other Category 6 cases, and to award Cook its fees unnecessarily incurred in connection with *Burrage*.

Dated: June 30, 2020

Respectfully submitted,
/s/  Andrea Roberts Pierson
Andrea Roberts Pierson
Jessica Benson Cox
FAEGRE DRINKER BIDDLE & REATH LLP
300 North Meridian Street, Suite 2500
Indianapolis, Indiana  46204
Telephone:          (317) 237-0300
Facsimile:          (317) 237-1000
andrea.pierson@faegredrinker.com
jessica.cox@faegredrinker.com

James Stephen Bennett
FAEGRE DRINKER BIDDLE & REATH LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana  46802
Telephone:          (260) 424-8000
Facsimile:          (260) 460-1700
stephen.bennett@faegredrinker.com

29

*Attorneys for Defendants Cook Incorporated, Cook Medical LLC f/k/a Cook Medical Incorporated, and William Cook Europe APS*

## CERTIFICATE OF SERVICE

I certify that on June 30, 2020 a copy of the foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS  OR, IN THE ALTERNATIVE, IN SUPPORT OF DISMISSAL OF ALL NATIONS FIRM CATEGORY 6 CASES** was filed electronically. Parties may access this filing through the Court's electronic records system.


/s/ Andrea Roberts Pierson
Andrea Roberts Pierson

US.128274902.12