UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This document relates to:
Case No. 1:17-cv-00996 (Dixon)
Case No. 1:18-cv-01214 (Opperman)
Case No. 1:18-cv-03371 (Parton)
Case No. 1:19-cv-01167 (Sykes)

### COOK DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AS TO CERTAIN NO-INJURY PLAINTIFFS

Present, actual physical harm is an essential element of any product-liability claim. "The threat of future harm, not yet realized, is not enough." Prosser & Keeton, *The Law of Torts* § 30 at 165 (5th ed. 1984). As the PSC has admitted, there are "significant numbers" of "'no injury' cases" in this MDL, many of which involve plaintiffs who "have not yet manifested physical symptoms." Dkt. 8591, Pls.' Resp. to Cook's Mot. for Screening Order & Bellwether Selection Plan, p. 2 (filed July 19, 2018). These "no-injury cases," they tell us, "will need to be tested," in part, "through motions to dismiss." *Id*. Cook agrees. If this litigation is ever to be resolved, these no-injury cases need to be weeded out.

This motion involves four plaintiffs who have categorized their own condition as "asymptomatic." Although they all claim their filters have perforated their IVCs, a contention Cook assumes to be true for purposes of this motion only, they do not claim to have suffered any resulting physical harm. None of them claim to be in any pain or to have experienced any other adverse symptom or complication; they are not, by their own admission, impaired in any

way. And their lawyers have certified these facts to be true based on a review of their individual medical records.

As matters stand, then, these plaintiffs possess only a finding based on a radiographic image. This is not physical harm in any legally recognized sense. Therefore they cannot prove their cases, even assuming everything else they allege is true. Their product-liability claims should be dismissed.[1]

## BACKGROUND

This motion concerns four plaintiffs from four different states who allege they are "asymptomatic" though their filters have "perforated" their IVCs. One of the plaintiffs is from Kentucky (Shirley Parton), another is from North Carolina (Dionne Dixon), one is from Ohio (Jacob Opperman), and the remaining plaintiff is from Texas (Teresa Sykes). Exs. 1-4, Short Form Compls. Opperman's spouse is also suing for loss of consortium.

In granting Cook's request to create a bellwether selection plan and screening order, the Court required each plaintiff to categorize his or her alleged "injuries." Dkt. 9322, Screening Order & Bellwether Selection Plan (entered Oct. 2, 2018); Dkt. 9638, Order Regarding Case Categorization & Census, Ex. A (entered Nov. 21, 2018). There are seven categories from which to choose. Dkt. 9322 at 1-3. Category 6—the category at issue here—is for "Non-Symptomatic Injury Cases." Dkt. 9322, Screening Order & Bellwether Selection Plan, p. 2. As defined in the screening order,

---

[1] In an effort to simplify matters, this motion focuses exclusively on Counts I through IV of the Master Complaint: Strict Products Liability – Failure to Warn; Strict Products Liability – Design Defect; Negligence; and Negligence Per Se. Dismissal of these claims would necessitate the dismissal of any derivate claims such as Count VIII, Loss of Consortium, as asserted in the Opperman complaint. While plaintiffs' other claims for breach of warranty and the like are in reality product-liability claims by another name, they will be addressed as necessary at a later time.

these are "[c]ases where the Plaintiff alleges non-symptomatic . . . penetration, perforation," or other conditions "that have not produced physical symptoms or complications":

> - Category 6 -- Non-Symptomatic Injury Cases: (a) Cases where the Plaintiff alleges non-symptomatic filter movement, migration, penetration, perforation, thrombosis, occlusion or the presence of a clot in the filter that has not produced physical symptoms or complications.

*Id.*

In categorizing a plaintiff's case, counsel must certify the accuracy of the categorization, and provide medical records to support it:

> E. Certification: The undersigned counsel affirms that the categorization is based on a review of the available medical records including imaging records and reports. The submission of the specific medical record(s) attached, and submission of this form, are counsel's certification that the outcome, complication, or injury represented in Section D is the proper categorization for Plaintiff's case to the best of counsel's knowledge and belief.
>
> Plaintiff's Counsel Name: _____
>
> Plaintiff's Counsel's Firm: _____

Dkt. 9638, Order Regarding Case Categorization & Census, Ex. A, p. 3.

Each of the plaintiffs here placed themselves in Category 6, and thus each claim to be asymptomatic—a claim each of their lawyers have certified. Exs. 5-8, Categorization Forms.

3

**RULE 12(c) STANDARD**

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings after the defendants have answered the complaint. Fed. R. Civ. P. 12(c). The standard governing motions for judgment on the pleadings is the same as the standard governing motions to dismiss under Rule 12(b)(6). *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). Under this standard, the plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is not facially plausible unless "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must accept the plaintiffs' well-pled facts as true and construe reasonable inferences in their favor. *Tierney v. Advocate Health & Hosps. Corp.*, 797 F.3d 449, 451 (7th Cir. 2015). The Court need not accept a plaintiff's legal conclusions, however. *See id*.

In bringing this motion, Cook relies on plaintiffs' categorization forms, which are natural extensions of plaintiffs' complaints, and therefore may be considered under Rule 12. *Cf., e.g., Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (considering an agreement referenced in the complaint); *Venture Assocs. Corp. v. Zenith Data Sys. Corp*, 987 F.2d 429, 431 (7th Cir. 1993) (considering letters of intent to sell referenced in the complaint). Plaintiffs' master complaint makes general allegations about complications and injuries allegedly caused by Cook filters, and the categorization forms in turn supply the necessary case-specific information relevant to each individual plaintiff.

The facts alleged in the categorization forms also nay be considered because they amount to judicial admissions, which are "formal concessions in the pleadings, or stipulations by a party or its counsel," and are therefore "binding upon the party making them." *Soo Line R.R. Co. v. St.*

*Louis Sw. Ry. Co.*, 125 F.3d 481, 483 (7th Cir. 1997) (quoting *Keller v. United States,* 58 F.3d 1194, 1198 n.8 (7th Cir.1995)); *see also Ocasio v. Turner*, 19 F. Supp. 3d 841, 845 (N.D. Ind. 2014) (considering judicial admissions in ruling on a Rule 12(c) motion). "[J]udicial efficiency demands that a party not be allowed to controvert what it has already unequivocally told a court by the most formal and considered means possible." *Soo Line R.R. Co.*, 125 F.3d at 483. Judicial admissions are "not evidence at all but rather have the effect of withdrawing a fact from contention." *Keller*, 58 F.3d at 1198 n.8 (citations omitted).

The Court has already granted judgment on the pleadings based on the categorization forms in one category of no-injury cases—Category 2 cases in which the plaintiff alleges "only non-physical injuries, such as worry, stress, or fear of future injury." Dkt. 11131, Entry for June 13, 2019, pp. 2-4; *see also* Dkt. 9322, Screening Order & Bellwether Selection Plan, p. 2 (describing Category 2 cases). The Court has also separately dismissed Category 1 cases, which are cases in which the plaintiff's filter "was successfully removed on the first, routine, percutaneous retrieval attempt and no physical symptom or filter complication was alleged during the time the filter was in place or in connection with the retrieval process." Dkt. 10588, Order Dismissing Category 1 Cases (entered May 1, 2019). This motion for judgment on the pleadings is simply the next logical step in an effort to weed out another category of meritless no-injury cases—Category 6, "Non-Symptomatic Injury Cases."

**ARGUMENT**

"[I]t is a long-existing and fundamental maxim of the Anglo-American tort law that wrong without damage . . . is not actionable and does not give rise to any claim or cause of action." 1 *American Law of Torts* § 1:11 (2020); *see also* Dan B. Dobbs & Paul T. Hayden, *The Law of Torts* § 125 (2d ed. 2019) ("Negligence law grew out of the old common law action on the Case and

carried over its requirement that the plaintiff cannot recover without showing actual harm resulting from the defendant's conduct."). "The threat of future harm, not yet realized, is not enough." Prosser & Keeton, *The Law of Torts* § 30 at 165 (5th ed. 1984); *accord* 65A C.J.S. *Negligence* § 790 (2020); 65 C.J.S. *Negligence* § 54 (2020); 22 Am. Jur. 2d *Damages* § 18 (2020); *see also*; 1 *Toxic Torts Litigation Guide* § 4:12 (2019) (noting this is the "general rule" and that "[m]ost courts require that the plaintiff plead and prove a present loss or injury").

In *Metro-North Commuter Railroad Co. v. Buckley*, 521 U.S. 424 (1997), for example, the question was whether a railroad worker negligently exposed to asbestos, "but without symptoms of any disease," could recover under the Federal Employers' Liability Act for negligently inflicted emotional distress. *Id*. 426-27. The Court held he could not recover "unless, and until, he manifests symptoms of a disease." *Id*. at 428. To interpret FELA, and its requirement that there be a "physical impact," the Court looked to the common law. *Id*. at 432-33. It "d[id] not favor the plaintiff." *Id*. at 432. As the Court noted, "with only a few exceptions, common-law courts have denied recovery to those who, like [the plaintiff], are disease and symptom free." *Id.* (citing cases). There are sound policy reasons for this, as the Court explained. "Those reasons include: (a) special 'difficult[y] for judges and juries' in separating valid, important claims from those that are invalid or 'trivial'; (b) a threat of 'unlimited and unpredictable liability'; and (c) the 'potential for a flood' of comparatively unimportant, or 'trivial,' claims." *Id*. at 433 (quoting *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 557(1994)). While the Court indicated it was sympathetic to the plaintiff's concerns about having been exposed to a known carcinogen, it recognized the issue before it was bigger than just one plaintiff's claim. "[T]the relevant question concerns not simply recovery in an individual case," the Court wrote, "but the consequences and effects of *a rule of law that would permit that recovery.* And if the common law concludes that a legal rule permitting recovery here, from

6

a tort law perspective . . . would on balance cause more harm than good, and if we find that judgment reasonable [as the Court did], we cannot find that conclusion inconsistent with the FELA's humanitarian purpose." *Id*. at 438 (emphasis in original).

More recently, the Southern District of New York applied these common-law principles in holding that tilt of an IVC filter, without more, is not a legally cognizable injury. *Perez v. B. Braun Med., Inc.*, 2018 WL 2316334 (S.D.N.Y. May 9, 2018). In *Perez*, the plaintiff alleged that a CT scan showed her filter was tilted. *Id*. at *1. The plaintiff claimed various unspecified physical injuries, including "sustained serious personal injuries," "severe injuries," and "loss of enjoyment of life, disability, and other losses." *Id*. at *4. She also alleged she was at a greater risk of future injury because of the IVC filter. *Id*. at *3. The defendants moved to dismiss, arguing the complaint did not adequately allege the plaintiff had *presently* suffered any cognizable injury. *Id*. at *1. The court granted the motion, noting that "[a] threat of future harm is insufficient to impose liability against a defendant in a tort context." *Id*. (quoting *Caronia v. Philip Morris USA, Inc.*, 5 N.E.3d 11, 14 (N.Y. 2013), which in turn cites Prosser & Keeton, *The Law of Torts* § 30 at 165). Addressing plaintiff's tilt claim, the court added, "as a characteristic throughout the complaint[], she assumes that the tilt is the injury. But, accepting that the likely tilt is an actual tilt, no more is said about it than that it may lead to a series of actual injuries." *Id*. at *5. The court therefore dismissed all of her claims for negligence and strict products liability. *Id*.

To qualify as "physical harm," as required to prove a tort claim, the alteration of the body must have a detrimental effect in a practical sense—there must be "physical impairment of the human body"—such as by causing noticeable symptoms. *Restatement (Second) of Torts § 7(2, 3)* (1965); *Restatement (Third) of Torts: Liability for Physical & Emotional Harm* § 4 (2010). For there to be "harm," more than "a mere change or alteration in some physical person" is required.

7

*Restatement (Second) of Torts* § 7 cmt. *b*. This is because "[p]hysical changes or alterations" may be "of no consequence to a person." *Id*. Only when the change or alteration proves to be a "detriment or loss" is there any "harm." *Id*. "[H]arm, like injury, is not necessarily actionable" and "gives rise to a cause of action only when it results from the invasion of a legally protected interest, which is to say an injury." *Id*. § 7 cmt. *d*. "Whether a specific injury constitutes bodily harm and therefore supports a claim for liability . . . is a question of law for the court to decide." *Restatement (Third) of Torts: Physical & Emotional Harm* § 4 cmt. *b*.

Plaintiffs' alleged injury here is not that they have been "harmed" in any practical sense—for they admit they are "asymptomatic"—but that they *might* experience symptoms or complications *in the future*. This is not "physical harm" in any legally recognized sense; plaintiffs have suffered no "loss or detriment;" they are not "impaired." But for medical imaging, which is often performed only after the retention of counsel, they would have been blissfully unaware that their filter had perforated their IVCs. They therefore have no cognizable "injury," and without an injury they have no claim.

Although this motion concerns four filter plaintiffs from four different states, as explained below, the relevant law in each state is fully consistent with these basic principles of tort law. Under these principles, as recognized by Kentucky, North Carolina, Ohio, and Texas, none of these "no-injury" plaintiffs have a viable product-liability case.

**I. Kentucky Law Requires the Dismissal of Plaintiff Shirley Parton's Product-Liability Claims.**

The Kentucky Supreme Court "has consistently held that a cause of action in tort requires a *present* physical injury to the plaintiff." *Wood v. Wyeth-Ayerst Labs.*, 82 S.W.3d 849, 852 (Ky. 2002) (citing cases) (emphasis added). "A cause of action does not exist," the Court has said, "until the conduct causes injury that produces loss or damage." *Id*. (quoting *Saylor v. Hall,* 497 S.W.2d

8

218, 225 (Ky. 1973)). "To find otherwise would . . . stretch the limits of logic and ignore a long line of legal precedent." *Id.* at 854. Simply put, negligent conduct that causes no harm is not actionable. *See id*. at 852-53 (citing *Capital Holding Corp. v. Bailey*, 873 S.W.2d 187 (Ky. 1994)). This is as true for strict-liability claims as it is for claims of negligence. *Id*. at 851-52; *see also Diamond v. Waffle House, Inc.*, 2018 WL 4390719, at *2 (E.D. Ky. Sept. 14, 2018) (following *Wood*).

The Sixth Circuit has applied these principles to claims brought by plaintiffs who worked at a Kentucky uranium-enrichment plant and were exposed to dangerous radioactive substances. *Rainer v. Union Carbide Corp.*, 402 F.3d 608 (6th Cir. 2005), *opinion amended on reh'g* (Mar. 25, 2005). "Although not yet suffering from any symptoms of a clinical disease," they sued anyway, claiming "subcellular damage to their DNA and chromosomes." *Id*. at 611, 613. The district court rejected the plaintiffs' claims in part based on the fact that no present harm had been shown. *Id*. at 611. The Sixth Circuit agreed and affirmed. *Id*.

While the *Rainer* plaintiffs brought their claims under the Price-Anderson Act, a federal law that creates a private right of action for claims arising out of nuclear incidents, like the U.S. Supreme Court in *Buckley*, the Sixth Circuit looked to the common law to help it interpret the relevant statute, and in particular its "bodily injury" requirement. *Id*. at 618. Relying on the Kentucky Supreme Court's decisions in *Wood* and *Capital Holding*, *supra*, the court rejected the plaintiffs' arguments:

> *Wood* and *Capital Holding* . . . make the important observation that a cause of action does not develop until actual harm is realized. *Wood,* for example, noted that in Kentucky a "plaintiff may bring only one claim for a given cause of action." In light of this limitation, it reasoned that "[t]hose who have ingested fenfluramine, but in whom no disease is yet manifest, will be forced to either forego medical evaluations or proceed with them at their own cost. Nevertheless, any other outcome would result in inordinate burdens for both the potential victim and the alleged negligent party." It concluded that "[b]ecause [the plaintiff] has shown no

9

> present physical injury, her cause of action under theories of negligence and strict liability have [sic] yet to accrue." *Capital Holding* similarly alluded to the fact that public policy require a demonstration of physical illness, noting that "[t]he effect of this order [denying plaintiffs' claims] is to preserve plaintiffs' rights to further pursue tort litigation if and when a '*disease related to the asbestos exposure*' *should manifest itself*."

*Id*. at 619-20 (internal citations omitted and emphasis in original). Although the plaintiffs claimed they had "real and concrete" physical injuries, the evidence showed their DNA damage was harmful "only insofar as it is predictive of future disease." *Id*. at 622. In that way, the plaintiffs were similarly situated to the plaintiffs in *Wood* and *Capital Holding,* whose primary claims were that their exposure to toxic substances had created an increased risk of disease. *Id*. Those claims were dismissed by the Kentucky Supreme Court because they were premature. *Id*. Therefore the claims of the uranium workers likewise had to be dismissed as premature. *Id*.

The Sixth Circuit acknowledged that some cases from other jurisdictions "have come down on the other side of the line." *Id*. (citing *Werlein v. United States,* 746 F. Supp. 887 (D. Minn. 1990), and *Brafford v. Susquehanna Corp.,* 586 F. Supp. 14 (D. Colo. 1984), both of which allowed no-injury cases to go to trial). But the court was not persuaded by these opinions, "both because they are not consistent with Kentucky law and because the issue of whether chromosome damage constitutes a 'present physical injury' is essentially a legal question, not a factual one." *Id*. Ultimately, however, the "most persuasive" reason to reject plaintiffs' claims was that allowing them go forward would be bad policy. *Id*. For one, accepting the plaintiffs' claim would throw open the floodgates of litigation, as many asymptomatic people potentially could claim subcellular damage as result of chemical exposure. *Id*. For another, "allowing this suit to proceed would be of little service to the plaintiffs themselves, particularly in the long run":

> Kentucky has a "one claim" rule, which limits plaintiffs in tort cases to one chance in which to have their grievances redressed. If this suit is allowed to proceed, the plaintiffs would be able to claim relief for only a nominal injury. After all, as the

10

> district court observed, "none of the Plaintiffs is 'sick.'" But they would be left adrift without a legal remedy and without recompense should they later develop a truly debilitating disease. Allowing this suit to proceed would thus do a great disservice to those plaintiffs who might in fact later come down with the very diseases they so rightly fear.

*Id*. at 621-22. Last, the plaintiffs suggested no mechanism for calculating losses resulting from subcellular damage. *Id*. at 622. Since their alleged "injuries" had caused no financial losses or impairments, "[i]f any damages were to be assessed, they would fall in the realm of the purely theoretical, and would be nearly impossible for a trier of fact to accurately assess." *Id*.

Plaintiff Shirley Parton's product-liability claims cannot forward under this law. Her own categorization form alleges that she is "non-symptomatic":

> 6. <u>Non-Symptomatic Injury Cases</u>: "Cases where the Plaintiff alleges non-symptomatic filter movement, migration, penetration, perforation, thrombosis, occlusion, or the presence of a clot in the filter that has not produced physical symptoms or complications."
>
> Check here for Category 6: __X__
>
> Briefly describe claimed complication/outcome/injury: <u>Four prongs have perforated the vena cava.</u>

Ex. 5, Parton Categorization Form. Therefore, by Parton's own admission, she has not suffered a "present" physical injury. Her product-liability claims should be dismissed.

## II. North Carolina Law Requires the Dismissal of Plaintiff Dionne Dixon's Product-Liability Claims.

North Carolina law also requires a showing of present physical harm to establish product liability. Only product-liability claims grounded in negligence are recognized under North Carolina law; there is "no strict liability in tort in [North Carolina] product liability actions." N.C. Gen. Stat. § 99B-1.1. A negligence-based products-liability claim in North Carolina requires a plaintiff to prove, among other things, that a defect in the product "proximately caused"—past tense— plaintiff damage, *Red Hill Hosiery Mill, Inc.*, 530 S.E.2d 321, 326 (N.C. Ct. App. 2000); *accord*

*Sparks v. Oxy-Health, LLC*, 134 F. Supp. 3d 961, 986 (E.D.N.C. 2015), in particular, "personal injury, death or property damage," N.C. Gen. Stat. § 99B–1(3). Whether a plaintiff has suffered a legally cognizable injury is a question of law. *See*, *e.g.*, *Azzolino v. Dingfelder*, 337 S.E.2d 528, 532 (N.C. 1985) ("[W]e conclude that life, even life with severe defects, cannot be an injury in the legal sense.").

Consistent with these basic principles of North Carolina law, the Western District of North Carolina has held that mere exposure to toxic chemicals, including TCE, is not sufficient to give rise to tort claim. *Carroll v. Litton Sys., Inc.*, 1990 WL 312969, at *46-47 (W.D.N.C. Oct. 29, 1990), *aff'd in relevant part & reversed in other part*, 47 F.3d 1164 (4th Cir. 1995). In *Carroll*, plaintiffs' expert purported to find two types of "effects" in plaintiffs' immune systems: first, he purported to find increased levels of certain lymphocytes, suggesting immune system activation; and second, he purported to find increased levels of immune cells that might improperly regard certain human cells as foreign. *Id*. at *22. The expert, however, "was unable to testify that any plaintiff has a disease or injury caused, or probably caused, by that plaintiff's alleged exposure to TCE." *Id*. This admission sunk plaintiff's claims:

> It is not enough for plaintiffs to show that exposure to the chemicals at issue has a *potential* for causing harm. For that reason, mere exposure to a potentially toxic substance does not constitute a "physical injury" upon which a claim can be based. Each individual plaintiff also has the burden of establishing that he had, in fact, suffered a physical injury or illness as a result of exposure to the chemicals at issue.

*Id*. (internal citations and footnotes omitted). Accordingly, for the plaintiffs who could not prove an "injury in fact," their personal-injury claims had to be dismissed. *Id*. at *47. The North Carolina Court of Appeals has reached the same result, also in a case involving exposure to toxic chemicals. *See Curl v. Am. Multimedia, Inc.*, 654 S.E.2d 76, 81 (N.C. Ct. App. 2007) (declining to create a freestanding claim for future medical expenses in the absence of a present injury).

Plaintiff Dionne Dixon has not alleged a viable product-liability claim under North Carolina law. Not only are Dixon's strict-liability claims not recognized under North Carolina's product liability statute, both these claims and his negligence-based claims are not predicated on a *current* physical injury. She, too, has categorized her condition as "non-symptomatic":

> 6. <u>Non-Symptomatic Injury Cases:</u> "Cases where the Plaintiff alleges non-symptomatic filter movement, migration, penetration, perforation, thrombosis, occlusion, or the presence of a clot in the filter that has not produced physical symptoms or complications."
>
> Check here for Category 6: <u>      X      </u>
>
> Briefly describe claimed complication/outcome/injury: <u>Asymptomatic - perforation.</u>

Ex. 6, Dixon Categorization Form. Dixon's product-liability claims therefore should be dismissed.

### III. Ohio Law Requires the Dismissal of Plaintiff Jacob Opperman's Product-Liability Claims.

Ohio courts likewise have concluded that "where the wrongful conduct complained of is not presently harmful, the cause of action does not accrue until actual damage occurs." *Hoffer v. Cooper Wiring Devices, Inc.*, 2007 WL 1725317, at *6–7 (N.D. Ohio June 13, 2007) (citing *Velotta v. Leo Petronzio Landscaping, Inc.,* 433 N.E.2d 147, 150 (Ohio 1982); *Bouchard v. Am. Home Prod. Corp.,* 213 F. Supp. 2d 802, 807 (N.D. Ohio 2002) (in a product-liability case involving a diet drug, the court found that "Ohio law does not permit recovery for the 'mere possibility' that a plaintiff may develop a condition . . ."); and *United States Fire Ins. Co. v. Ohio High Sch. Athletic Ass'n,* 595 N.E.2d 418, 420 (Ohio Ct. App.1991) ("negligent conduct without injury is not actionable")). The Northern District of Ohio has noted that Ohio law is consistent with "the great weight of authority from other jurisdictions," which "indicates that a plaintiff has not suffered a present injury compensable in . . . tort until the very product in question has caused some harm

to person or property." *Hoffer*, 2007 WL 1725317, at *6 (quoting *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.,* No. 1:02CV00013 (N.D. Ohio Feb. 22, 2005)).

To give just one example, the Ohio Supreme Court has held that asymptomatic pleural thickening of the lungs due to asbestos exposure is not an actionable present injury under "settled common law." *Ackison v. Anchor Packing Co.*, 897 N.E.2d 1118, 1126 (Ohio 2008). And this was true even though plaintiffs had "abnormal lung x-rays," because the plaintiffs suffered from "no clinical symptoms." *Id*. at 1125. This decision is no aberration: many courts around the country, including the Indiana Supreme Court, have held that asymptomatic conditions associated with asbestos exposure do not give rise to a cognizable injury. *See*, *e.g.*, *AlliedSignal, Inc. v. Ott,* 785 N.E.2d 1068, 1075 (Ind. 2003).

Plaintiff Jacob Opperman thus has no viable product-liability claim either. He has alleged at most a mere possibility of a *future* injury, which is not enough. His condition is, again according to his own certified categorization form, "non-symptomatic":

> 6. <u>Non-Symptomatic Injury Cases:</u> "Cases where the Plaintiff alleges non-symptomatic filter movement, migration, penetration, perforation, thrombosis, occlusion, or the presence of a clot in the filter that has not produced physical symptoms or complications."
>
> Check here for Category 6: _____X_____
>
> Briefly describe claimed complication/outcome/injury: <u>Perforation 4 legs 4mm</u>

Ex. 7, Opperman Categorization Form.

Opperman's product-liability claims therefore should be dismissed. And because a loss-of-consortium claim is derivative of, and dependent on, the main plaintiff's claims, Carlotta Opperman's claim should be dismissed as well. *See Wang v. Goodyear Tire & Rubber Co.*, 587 N.E.2d 387, 391 (Ohio Ct. App. 1990).

**IV. Texas Law Requires the Dismissal of Plaintiff Teresa Sykes' Product-Liability Claims.**

Texas tort law is also consistent with the general rule around the country: plaintiffs must plead and prove "actual injury." *Martin v. Home Depot U.S.A., Inc.*, 369 F. Supp. 2d 887, 890 (W.D. Tex. 2005) (citing *See Polaris Indus., Inc. v. McDonald,* 119 S.W.3d 331, 338–42 (Tex. App.-Tyler 2003) (dismissing putative class plaintiff's implied warranty claim because no injury had manifested itself); *Hines v. Evergreen Cemetery Ass'n,* 865 S.W.2d 266, 268 (Tex. App.-Texarkana 1993) (recognizing the necessity of demonstrating actual injury to support a claim under the Texas Deceptive Trade Practices Act); *Munoz v. Gulf Oil Co.,* 732 S.W.2d 62, 65 (Tex. App.—Houston [14th Dist.] 1987) (reaffirming injury requirement of a warranty claim); *Gideon v. Johns–Manville Sales Corp.,* 761 F.2d 1129, 1136 (5th Cir.1985) ("While the sale of a defective product creates a potential for liability, the law grants no cause of action for inchoate wrongs. However egregious the legal fault, there is no cause of action for negligence or products liability until there is 'actual loss or damage resulting to the interests of another." (quoting Prosser & Keeton, *Torts* § 30 at 165))). "The Fifth Circuit has applied this Texas law to expressly disallow "no injury product liability claims" . . . ." *Martin*, 369 F. Supp. 2d at 890 (citing *Rivera v. Wyeth–Ayerst Labs.,* 283 F.3d 315 (5th Cir. 2002) (dismissing the plaintiffs' product-liability lawsuit because the plaintiffs alleged no injury in fact)). An increased health risk won't suffice; the plaintiff must have "a manifested injury." *Id*. at 891.

The Southern District of New York applied these principles of Texas law in an MDL in which plaintiffs alleged in their fact sheets that they had suffered damage to their mitochondria as a result of taking a diabetes medication. *In re Rezulin Prods. Liab. Litig.*, 361 F. Supp. 2d 268 (S.D.N.Y. 2005). The court concluded under Texas law that a subcellular injury is compensable only to the extent "it produces a disabling sign or symptom." *Id*. at 274. Besides, the court

15

observed, allowing recovery on the basis of asymptomatic subcellular injury appeared to be "very much" against the plaintiffs' interests:

> Even if a plaintiff prevailed in such a case, any recovery probably would be minimal. But a judgment in such a case, whether for or against the plaintiff, would foreclose, under familiar principles of former adjudication, any future suit based on the same exposure. Thus, allowing suit for asymptomatic subcellular injury would preclude a plaintiff who later developed substantial injuries traceable to the exposure from recovering the full measure of his or her damage.

*Id*. at 275-76. "The Texas Supreme Court's concerns about the problems of compensating subclinical and possibly speculative injuries," the court added, "are consistent with those of other jurisdictions." *Id.* at 276. "Many courts have held that there is some minimum of harm required for an injury to be compensable." *Id*. The court therefore concluded the plaintiffs could not succeed on their claims as a matter of law. *See id*.

As with the other plaintiffs, Teresa Sykes' product-liability claims are barred as a matter of law. She admits she has no "disabling sign or symptom." Quite the opposite: she alleges she is "non-symptomatic":

> 6. <u>Non-Symptomatic Injury Cases:</u> "Cases where the Plaintiff alleges non-symptomatic filter movement, migration, penetration, perforation, thrombosis, occlusion, or the presence of a clot in the filter that has not produced physical symptoms or complications."
>
> Check here for Category 6: __x__
>
> Briefly describe claimed complication/outcome/<u>injury: Four prongs have perforated the IVC.</u>

Ex. 8, Sykes Categorization Form. Sykes's product-liability claims thus should be dismissed.

## CONCLUSION

Asymptomatic perforation is a finding on radiographic imaging; it is not a present physical harm. That the plaintiffs *might* suffer physical harm *later* is not enough to save their claims *now*. The Court therefore should dismiss Counts I through IV, and also Count VIII to the extent alleged, of the Master Complaint with respect to the plaintiffs who are the subjects of this motion. In the event plaintiffs suffer actual physical harm in the future, they may refile their cases to the extent the applicable law allows, but the Court should order them to do so, if at all, in the Southern District of Indiana.


Dated: July 2, 2020

>	Respectfully Submitted,
>
>	/s/ Brian J. Paul
>	Andrea Roberts Pierson, Co-Lead Counsel
>	Jessica Benson Cox
>	Brian J. Paul
>	FAEGRE DRINKER BIDDLE & REATH LLP
>	300 North Meridian Street, Suite 2500
>	Indianapolis, Indiana 46204
>	Telephone: (317) 237-0300
>	Andrea.Pierson@FaegreDrinker.com
>	Jessica.Cox@FaegreDrinker.com
>	Brian.Paul@FaegreDrinker.com
>
>	James Stephen Bennett, Co-Lead Counsel
>	FAEGRE DRINKER BIDDLE & REATH LLP
>	110 W. Berry Street, Suite 2400
>	Fort Wayne, Indiana 46802
>	Telephone: (260) 424-8000
>	Stephen.Bennett@FaegreDrinker.com
>
>	*Attorneys for Defendants Cook Incorporated, Cook Medical LLC, and William Cook Europe ApS*

## CERTIFICATE OF SERVICE

I hereby certify that on the 2d day of July, 2020, a copy of the foregoing was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.

/s/ Brian J. Paul