UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB MDL No. 2570 |

This Document Relates To:

Case No. 1:18-cv-01214 (Opperman)
Case No. 1:18-cv-03371 (Parton)
Case No. 1:19-cv-01167 (Sykes)
_____

**PLAINTIFFS' JOINT RESPONSE TO
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiffs Shirley Parton ("Parton"), Teresa Sykes ("Sykes"), and Jacob Opperman ("Opperman")[1] respond in opposition to Defendants' Motion for Judgment on the Pleadings. (Doc. 13728, "Motion"). The Court should deny the Motion.

Procedurally, Defendants' Motion is improper: it relies on the contents of the Case Categorization Form ("CCF") to provide the (erroneous) factual basis for its argument. Doc.13728 at 1. The CCF, as approved by this Court, expressly declares that use of the CCF is not relevant for any purpose other than "complying with the Court's Order on the Cook Defendants' Motion for Screening Order and Bellwether Selection Plan only" and is

---

[1] Ms. Dionne Dixon, originally named in this Motion as a "no-injury" plaintiff, voluntarily dismissed her case based on the statute of limitations after an examination of newly obtained medical records. Ms. Dixon previously underwent an unsuccessful retrieval attempt which left four legs perforating her IVC wall by 4 mm, but her pain symptoms did not start until years after the clock started on her statute under North Carolina law. Her filter was removed in a complex procedure on January 28, 2019 (after the case categorization form was submitted). Doc. 13803.

inadmissible. *Id.* Further, the CCF is not a "pleading" and, thus, not the proper subject of a Rule 12(c) motion. Thus, Defendants' use of the CCF and information provided therewith in its Motion is improper.

Substantively, the Motion rests on a false factual premise: that because Plaintiffs are asymptomatic, they have no legally cognizable injury. That is simply not true. Defendants repeated labeling of Plaintiffs as "no injury" claimants is misleading, at best. Plaintiffs do not claim (and never have claimed) that they have no injuries. Indeed, the Master Complaint (one of the operative pleadings in this case) expressly alleges that plaintiffs have suffered "permanent and continuous injuries" as a direct and proximate result of having Defendants' IVC Filters implanted in them. (Doc. 213). Further, if the Court chooses to consider the inadmissible CCFs in adjudicating the Motion, the CCF itself, and the required medical evidence submitted with the Plaintiffs' CCFs, clearly allege a legal injury and demonstrate that their defective IVC Filters perforated the walls of their vena cavae at multiple locations. The inferior vena cava ("IVC") is a major vessel in the body, the perforation of which by a foreign metallic object satisfies the requirement of an injury in tort, regardless of whether a plaintiff experienced additional symptoms resulting from the ongoing injury to the IVC.

Because Plaintiffs have adequately pleaded their claims under Ohio, Kentucky, and Texas law, and Plaintiffs have pleaded actual and ongoing injuries that need not cause additional symptoms to satisfy the requirement of a tort, Defendants' argument must fail. Accordingly, this Court should deny Defendants' Motion as directed to Plaintiffs.

## I.      Relevant Facts and Procedural Background

Each of the Plaintiffs – Shirley Parton, Teresa Sykes, and Jacob Opperman – filed their claims directly into MDL 2570 when they filed Short Form Complaints on November 1, 2018, March 22, 2019 and April 23, 2018, respectively, adopting the Master Complaint, which states that "[a]s a direct and proximate result of the Cook IVC Filters' defects, as described herein, Plaintiffs suffered permanent and continuous injuries, pain and suffering, disability and impairment. (Doc. 213 at ¶¶ 2, 8).  Plaintiffs have suffered emotional trauma, harm and injuries that will continue into the future."  (Doc. 213 at ¶¶ 8, 62, 78, 86, 97, 109, and 193; *Parton,* Case no. 1:18-cv-03371, Doc. 1; *Sykes,* Case No. 1:19-cv-01167, Doc. 1; *Opperman,* Case No. 1:18-cv-01214, Doc. 1).

In accordance with the requirements of the Court's Order on Defendants' Motion for Screening Order and Bellwether Selection Plan, dated October 2, 2018, and the Parties' Order Regarding Case Categorization, dated November 21, 2018 (Doc. 9322 and Doc. 9638, respectively), each Plaintiff identified a category for his or her case based on pre-determined categories outlined by Cook's counsel and completed and served a CCF with supporting medical records. Now, Defendants seek dismissal of the Plaintiffs' claims,[2] arguing that (1) the CCF should be considered as a "pleading" for purposes of Rule 12 (c) and (2) that each CCF is proof that there were no injuries because the plaintiffs stated that, though their filters had perforated their IVC walls, they were asymptomatic.

---

[2] Defendants seek dismissal of Counts I, II, III, IV and VIII of Plaintiffs' Complaints.

## II. Judgment on the Pleadings is Inappropriate as to Jacob Opperman, Shirley Parton, and Teresa Sykes

### A. This Court's Standard on Motion for Judgment on the Pleadings

Defendants have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). In deciding a motion for judgment on the pleadings, "federal law and specifically the Seventh Circuit's interpretation thereof, to the extent federal circuits differ, provides the appropriate standard for resolving the instant motion[s]." *In re Bridgestone/Firestone, Inc*., 200 F. Supp. 2d 997, 998 (S.D. Ind. 2002). A motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss under FRCP 12(b)(6). *Id*. Under this standard, a plaintiff is required to plead only enough facts to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when factual content has been plead that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, judgment on the pleadings is only appropriate when "it appears beyond a doubt that the plaintiffs cannot prove any facts that would support their claim for relief." *Bridgestone*, 200 F. Supp. at 999 (internal punctuation omitted).

It is within the discretion of the Court to grant leave to amend the pleadings in the context of a 12(c) motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 15(a), which states that courts "should freely give leave when justice so requires." *Moss v. Martin*, 2005 WL 4717594, at *7 (C.D. Ill. May 16, 2005); *see also Lonberg v. City of Riverside*, 300 F. Supp. 2d 942, 945 (C.D. Cal. 2004), and *Mourning v. Allison*

4

*Transmission, Inc.*, 72 N.E.3d 482, 491 (Ind. App. 2017) (reversing and remanding grant of 12(c) motion to give plaintiff opportunity to amend claim once as a matter of right). Formal motion for leave to amend the pleadings is not required at the dismissal stage of the proceedings. *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010).

"As the title of the rule implies, Rule 12(c) permits a judgment on the pleadings alone." *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 452 (1998). Pleadings are defined as the "complaint, the answer and any written instruments attached as exhibits." *Id*. "If the Court does not exclude matters outside the pleadings for its consideration, it should convert the Rule 12(c) motion to a Rule 56 motion for summary judgment." *Id.* at 453 fn. 5. Upon conversion to a Rule 56 motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." F.R.C.P. Rule 12(d). Accordingly, should this Court consider the CCF's at issue in Defendants' Motion as pleadings, it should also provide all parties the opportunity to present material pertinent to a motion for summary judgment. *Id*.

B. Plaintiffs Have Pleaded a Claim: Their Allegations Satisfy Any Definition of "Injury"

Plaintiffs have all suffered a direct injury to their IVCs when their defective IVC Filters perforated their IVC in multiple places and suffer ongoing harm as a result thereof. Based solely on Plaintiffs' identifying their case in the CCFs as Category 6 cases, Cook argues that Plaintiffs have pleaded that they have not suffered any injury. Significantly, Category 6 includes as part of its title the identification of the case as an "injury" case.

Thus, contrary to Cook's claims, Plaintiffs have not pleaded a lack of injury. Moreover, the injury that each of them claims—the perforation of their respective IVCs by their filters—is a legal injury under any rational and accepted definition.

The Restatement (Third) of Torts defines physical harm as the "impairment of the human body," and "bodily harm includes physical injury…and impairment of bodily functions." *Restatement (Third) of Torts* § 4. "Any level of physical impairment is sufficient for liability; no minimum amount of physical harm is required. Thus, any detrimental change in the physical condition of a person's body or property counts as a harmful impairment; there is no requirement that the detriment be major." *Id.* § 4 cmt. c. Merriam-Webster's Dictionary defines "injure" to mean "a: to inflict bodily hurt or b: to impair the soundness of". See, Merriam-Webster, Injure, HTTPS://WWW.MERRIAM-WEBSTER.COM/DICTIONARY/INJURED (last visited July 16, 2020). Under any definition of injury or harm, the tearing, slashing, rupturing, ripping, or perforating of a person's IVC by one or more struts of an IVC filter qualifies.

Defendants make the extraordinary claim that "[b]ut for medical imaging…[Plaintiffs] would have been blissfully unaware that their filter had perforated their IVCs," and therefore would not have had a "cognizable claim." Motion at 8. Does the asymptomatic colon cancer patient who has his disease spotted during a routine screening test have any less of an injurious disease? Of course not. Plaintiffs have expressly alleged in the operative pleadings that the failure of Defendants' filters caused a "permanent and continuous" injury to them. (Doc. 213 at ¶ 8.) Specifically, the defective

device has caused multiple tears in their IVC, causing the device to protrude through the caval wall, harming and undermining the integrity of this important vessel.

Through misleading nomenclature and sleight of hand, Defendants attempt to portray cases in which there is objective and actual physical harm to a person's organ as claims for some future harm. *To wit,* Defendants' reliance on *Metro-North Commuter Railroad Co. v. Buckley*, 521 U.S. 424 (1974), a case arising under the statutory rubric of the Federal Employees Liability Act and applying none of the tort law at issue in these cases. In *Metro-North*, the plaintiff was a railroad worker who, having been exposed to asbestos, but having had no physical impact or harm to his body, sued his employer for negligence infliction of emotional distress. *Id*. at 426-427. As a result of his exposure, Plaintiff developed a fear of developing cancer, but his medical care did not reveal any evidence of cancer or any other asbestos-related disease. *Id*. at 427. In *Metro-North*, Plaintiff did not allege bodily harm, as he had none.

Defendants' reliance on *Perez v. B. Braun Med., Inc.*, 2018 WL 2316334 (S.D.N.Y. May 9, 2018), is also misplaced. In *Braun*, defendant moved to dismiss the plaintiff's case for failure to state a claim where plaintiff alleged her IVC filter "tilted." There, the Court, applying New York law, found that her complaint fell short in describing how the tilt of the filter, in and of itself, was injurious. Each of the Plaintiffs subject to Defendants' Motion in this case claim that the filter tore through their IVC, an injury that is self-evident without further explanation.

Bodily harm, as opposed to emotional harm, which is capable of manipulation and multiple explanations, is demonstrated by "objective evidence of its existence."

*Restatement (Third) of Torts*, § 4, cmt. b.  Here, an injury to an organ—by tearing a hole through it—is an actual, ongoing physical injury to the claimant that is, for the moment perhaps, not causing acute physical pain or additional complications.  As stated above, while not germane to Defendants' Motion, the CCF and medical records submitted with it demonstrate the physical harm caused by the IVC filter to the Plaintiffs.

Indeed, in this very litigation, Defendants have admitted and, in fact, contended that perforations—the same as those afflicting these Plaintiffs—are legal injuries.  Specifically, in prior motions seeking dismissal of cases based on the statutes of limitations, Defendants have argued that a perforation of the IVC is an injury that triggers the running of the statute of limitations.  On November 13, 2015, Defendants filed a Rule 12(c) motion for judgment on the pleadings, claiming that certain plaintiff's claims were time barred.  (Doc. 842, Cook Defendants Motion for Judgment on the Pleadings.)   There, Defendants asserted that plaintiff's "product liability and negligence claims are barred because they are governed by a two-year limitations period <u>when [plaintiff] learned that the Filter had perforated his vena cava.</u>"  *Id.* at 5 (emphasis added).  Having successfully argued that perforation is a sufficient injury for purposes of triggering the statute of limitations, Defendants cannot now be heard to claim that it is nonetheless insufficient to state a claim.[3]

Defendants improperly rely on this Court's May 1, 2019, dismissal of "Category 1" plaintiffs–plaintiffs whose filters were successfully removed on the first attempt and alleged no physical symptoms or filter complications during the time the filter was in place

---

[3] *See* also, Doc. 5749, Defendants Brief in Support of Motion for Summary Judgment arguing, in part, that an X-ray depicting tilt of the plaintiff's IVC Filter commenced statute of limitations.

or during the retrieval process–and on June 13, 2019, dismissal of "Category 2" plaintiffs–plaintiffs who alleged had no physical injuries at all.  None of those plaintiffs made the same claim as the Plaintiffs on this Motion: that the IVC filter had actually damaged an organ.  Importantly, the Court did not grant judgment on the pleadings for all Category 2 plaintiffs, but rather granted judgment on the pleadings only as to seven Category 2 plaintiffs and took the motion under advisement as to far more plaintiffs.  (Doc. 11131, pp. 2-4.)

Here Plaintiffs' injuries are not limited to mental anguish or some future harm.  By contrast, all Plaintiffs have experienced physical damage to their IVC's caused by their Cook IVC filters, and their categorization forms conclusively provide evidence of physical damage to their bodies.  Plaintiffs note that, based on the certified medical records provided pursuant to this Court's Screening Order and Bellwether Selection Plan, Defendants prepared a census of all cases in the MDL, resulting in the classification of these plaintiffs as "Non-Symptomatic **Injury** Cases." Doc. 9322, Screening Order & Bellwether Selection Plan, p. 2, emphasis added.)  These cases are not "meritless no-injury" cases, and dismissal at this stage would in no way be the next logical step pursuant to the dismissal of certain Category 1 and 2 plaintiffs.

C. <u>Plaintiffs' Claims as Pleaded under the Master Complaint and Short Form Complaint are Legally Sufficient</u>

By their failure to challenge the actual allegations of the Master Complaint and Short Form Complaint directly in bringing its Motion for Judgment under Rule 12(c), Defendants concede that Plaintiffs' Master Complaint and accompanying Short Form

Complaint are legally sufficient.  Plaintiffs, of course, agree.  For this reason alone, Defendants' Motion for Judgment should be denied.

D. Claim Categorization Forms are not a Proper Basis for a Judgment on the Pleadings

Recognizing that Plaintiffs' claims in the Master Complaint and Short Form Complaint are legally sufficient, Defendants makes two attempts to put the CCFs before the Court: 1) as a part of Plaintiff's pleadings, and 2) as an "admission" of which the Court may take judicial notice.  Both assertions are factually and legally false.  Moreover, for the reasons stated above, the CCFs allege actual injury.

1. The CCF is not a Pleading or an Admission and Cannot be the Basis for Defendants' Rule 12(c) Motion

In the first instance, the CCF is not a pleading, and has never been incorporated into the Master Complaint or Plaintiff's Short Form Complaint.  Rather, the CCF is an administrative tool utilized by the Court to obtain a census of the types of cases filed in MDL 2570 and to assist the Court in crafting a bellwether plan in this case.  Unlike the cases cited by Defendants, the CCF was not referred to or referenced in anyway in Plaintiffs' pleading.  Of course, how could it be?  The CCF was not implemented until after every one of the cases subject to this Motion was filed.

In its Motion, Defendant Cook relied on *Wright v. Associated Inx.*, 29 F.3d 1244, 1248 (7th Cir., 1994), to argue that the CCF's are "natural extensions of plaintiff complaints".  In *Wright*, a copy of an Agreement was attached to Defendants' 12(b)(6) Motion to Dismiss, though the Agreement was not a part of Plaintiff's complaint.  The Seventh Circuit reasoned that consideration of the Agreement was proper because the

plaintiff "repeatedly quotes from and refers to the Agreement in his complaint."  *Id.* at 1248.  By contrast, the CCF's at issue here were never referred to in the Master Complaint or Short Form Complaints filed by the Plaintiffs.  Moreover, their creation and use was as a tool for the bellwether trial selection process, and this Court has expressly precluded use of the CCF for any purpose other than "complying with the Court's Order on the Cook Defendants' Motion for Screening Order and Bellwether Selection Plan only and is not admissible and is not to be considered relevant for any other purpose."  (Doc. 9638-1, ¶ 4, "Case Categorization Submission Instructions," attached for the Court's convenience as **Exhibit A**.)

Moreover, the CCFs are not judicial admissions of noninjury.  "A judicial admission is a statement, normally in a pleading, that *negates* a factual claim that the party making the statement might have made or considered making."  *Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 872 (7th Cir. 2010) (emphasis added).  Here, Defendants contend that the categorization of Plaintiffs' cases as Category 6 cases proves a lack of injury.  However, Plaintiffs have alleged in the operative pleadings that they were injured by Defendants' filters.  The CCFs are <u>consistent</u> with that.  The Category 6 description in the CCF identifies the cases as "injury" cases.  Moreover, the CCFs were filed with an accompanying CT scan of the plaintiffs' bodies and showed perforations of their vena cavae by their filters in multiple locations.  Because a perforation is an injury, the CCFs support, rather than negate, Plaintiffs' claims.  And the CT scans at issue do not negate the fact that plaintiffs had an injury, but rather provide objective evidence of that injury.  Thus, the CCFs cannot be considered an "admission" under *Robinson.  Id*.

Further, Defendants' request that the Court take judicial notice of the CCFs for purposes of a Rule 12(c) motion attempts to misapply judicial notice. Judicial notice applies to facts that cannot reasonably be contested and are so well known and accepted that they cannot reasonably be disputed. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir.2001) (courts may not take judicial notice of a fact "subject to reasonable dispute." (quoting Fed.R.Evid. 201(b)). Further, when a court takes judicial notice of a public record, "it may do so not for the truth of the facts recited therein, but for the existence of the [record], which is not subject to reasonable dispute over its authenticity." *Id.* at 690 (quotation omitted). Thus, the contents of the CCFs are not the proper subject of judicial notice. Moreover, courts have held that judicial notice does not apply to items such as discovery responses. *See United Safeguard Distributors Association, Inc. v. Safeguard Business Systems, Inc.*, 145 F.Supp.3d 932, 941 (C.D. Cal. 2015). CCFs are not pleadings; if anything, they are discovery responses, and their contents are not subject to judicial notice. Thus, they may not be considered on a Rule 12(c) motion.

2.     <u>By Prior Order of the Court, the CCF is Inadmissible and not Relevant for any Other Purpose</u>

The Court has already ruled that the CCF is inadmissible and not to be considered relevant for "any other purpose" beyond case screening and bellwether selection process. (Doc. 9638-1.) Accordingly, the Defendants' request that the Court take judicial notice of the contents of the CCF to supplant the traditional means of collecting and presenting evidence is improper. "[A] court cannot take judicial notice of a fact that would be

inadmissible if it were offered as evidence." *Murphy v. Kmart Corp*., 2010 WL 3703708, at *3 (D.S.D. Sept. 15, 2010) (internal citation omitted).

Pursuant to the Screening Order, Plaintiffs were compelled to choose one or more categories within the narrow and confined parameters of the CCF itself. (Doc. 9638-1, ¶ 2). There is no "Other" category or room to expand on the Plaintiff's claimed injuries, and Plaintiff's counsel was directed to "briefly describe" the facts justifying the placement in a given category, nor are any of the terms of the CCF defined. *Id*. The CCF is not a pleading, nor is it discovery[4] or evidence. It is an administrative tool, not produced via substantive discovery, whose utility was specifically limited in the Court's Order itself. The Court, it would seem, anticipated its potential for misuse and rightly prohibited its use for the exact purpose which Defendants attempt here.

### 3.   Defendants' Reliance on the Undefined Term "Non-symptomatic" Is Misplaced

Further, even if the Court could rely on the CCFs on a Rule 12(c) motion, Defendants have mischaracterized Plaintiffs' alleged "admissions" in those forms. In an effort to avoid the clear categorization of these cases as "injury" cases in the CCFs, Defendants omit and ignore that the title of Category 6 is "Non-Symptomatic *Injury*" (emphasis added) and contend (in the Motion's title and throughout) that Plaintiffs have conceded these are "non-injury" cases, focusing solely on the term "non-symptomatic." In

---

[4] At most, the CCFs are discovery responses similar to a Plaintiff Profile Form, or Plaintiff's Fact Sheet. As such, if the Court decides to consider these documents in this context, the Court must convert the instant motion to a Rule 56 motion for summary judgment pursuant to Rule 12 (d) and should provide Plaintiffs with sufficient time to respond to the motion and present additional evidence.

so doing, Defendants simply underscore the impropriety of relying on the CCFs as the basis for a Rule 12(c) Motion. The categories and their descriptions have no definitions. While Defendants attempt to equate "non-symptomatic" with a lack of injury, nothing in the CCF defines what "non-symptomatic" means. Here, Plaintiffs interpreted it to mean without *other* symptoms; but they have clearly alleged an injury to their IVC. These cases—with actual injuries to Plaintiffs' vena cavae—are injuries without other sequelae, but they are nonetheless injuries. Asymptomatic cancer is no less cancer simply because the patient is not then presently experiencing pain or loss of bodily functions. There is no difference here; that Plaintiffs are not presently experiencing symptoms beyond the hole torn in their IVCs by Defendants' devices does not mean that the device has not torn a hole in their IVCs.

### E.   Kentucky Law Does Not Require Dismissal of Parton's Claims

Under Kentucky law, which governs Plaintiff Shirley Parton's claim, "a present physical injury to the plaintiff" is required. *Wood v. Wyeth-Ayerst Labs*., 82 S.W.3d 849, 852 (Ky. 2002). However, Kentucky law does not require, and never has required, that a plaintiff have symptoms in order to suffer an injury. To the degree Defendants claim that *Wood* stands for the proposition that symptoms are required for a plaintiff to have a cognizable claim, they misread that case. *Wood* has no such holding. Nor is *Rainer v. Union Carbide Corp*., 402 F.3d 608 (6th Cir. 2005), applicable. (Motion, p. 9.) In *Rainer*, plaintiffs were uranium enrichment workers exposed to radioactive substances and alleged the harm of DNA damage. 402 F.3d at 611. The court, relying on *Wood*, likened the plaintiffs' claims to claims for future damages and found no present physical injury. Unlike

*Rainer* and *Wood*, Plaintiff Parton's claim alleges sufficient physical injury in the form of multiple IVC perforations. *See McDowell v. Bos. Sci. Corp*., 2018 WL 6182625 at * 2 (C.S. Ill. Nov. 27, 2018) (perforation of the vena cava by an IVC filter is a possible "serious health complication" suffered by plaintiff).

Defendants' Motion as directed to Parton is based solely on Defendants' nonsensical contention that, by complying with the Court's Order to provide a CCF to Defendants in which her attorneys determined that her case was best categorized as "non-symptomatic **injury**," Parton has no injury. (Motion, pp. 4, 11.) That, however, is not true. The Master Complaint, incorporated by reference into Plaintiff Parton's Short Form Complaint, alleges that Parton has suffered "permanent and continuous injuries" "impairment' and "harm" as a direct and proximate result of having Defendants' IVC Filter implanted in her. (Doc. 213, p.3.) Additionally, should the Court choose to consider it in addressing Defendants' Motion, the CCF only strengthens Plaintiff's claim that she suffered an injury, because it contains medical report stating that Parton's IVC Filter perforated her IVC. (Motion Ex. 1.) Plaintiff has clearly been "harmed" in a practical sense – namely, the wall of her IVC has been perforated (punctured) by the IVC filter manufactured by Defendant. A tear in a major vessel in the body is injury.

F.  Texas Law Does Not Require Dismissal of Sykes' Claims

Texas, consistent with the general common law rule, requires that "in order to be compensable in damages or otherwise actions wrongfully or negligently committed must have occasioned injurious consequences." *Campbell v. St. Paul Fire & Marine Ins*., 480 S.W.2d 233, 235 (Tex. Civ. App. 1972). In Texas, the "physical structure of the body" in

a tort context refers to "the whole, to the complex of perfectly integrated and interdependent bones, tissues and organs which function together by means of electrical, chemical and mechanical processes in a living, breathing, functioning individual." *Bailey v. American General Ins. Co*., 279 S.W.2d 315, 318 (Tex. 1955). Any damage to the body organs or systems, such as a perforation of the IVC, is an injury under Texas law. Texas law does not, and never has, required that plaintiffs suffer additional symptoms in addition to objective physical harm to qualify as an injury.

Here, again, the Master Complaint, incorporated by reference into Plaintiff Sykes' Short Form Complaint, alleges that Sykes suffered "permanent and continuous injuries" "impairment' and "harm" as a direct and proximate result of having Defendants' IVC Filter implanted in her. (Doc. 213, p.3.) Further, Plaintiff Sykes' CCF contained a certified a copy her medical records showing that her IVC filter had perforated her IVC in multiple locations. (Motion, Ex. 4.) Therefore, under *Bailey*, Sykes has sufficiently alleged an action that has caused an injury to her body. Defendants' reliance on *In re Rezulin Prods. Liab. Litig*., a Southern District of New York case that applied Texas law in an MDL in which plaintiffs alleged damage to their mitochondria as a result of taking diabetes medication, is utterly misplaced. 361 F. Supp. 2d 268 (S.D.N.Y. 2005). As in *Metro North*, the Texas plaintiffs in *Rezulin* claimed only emotional distress from fear of future injury. A subcellular injury that had no clinical detriment is in no way comparable to the injury of a perforated IVC. Plaintiff Sykes' injuries were sufficiently alleged in the complaint, and the CCF only provides further evidence of injury.

### G.  Opperman's Product-Liability Claims Are Viable Should Not be Dismissed

Mr. Opperman's product liability claims are viable and should not be dismissed because in addition to being able to recover for his physical perforation injury, the Ohio Product Liability Act ("OPLA") also allows claims for emotional distress.  Cook argues that Mr. Opperman's claims should be dismissed because "he has alleged at most a mere possibility of a *future* injury".  (Doc. 13728, p. 14).  Notwithstanding the fact that he has sufficiently alleged a physical injury to his person in the form of a perforation to his vena cava, he has also alleged emotional distress which is undeniably compensable under Ohio law.  The OPLA states:

> "Product liability claim" means a claim or cause of action that is asserted in a civil action pursuant to sections 2307.71 to 2307.80 of the Revised Code and that seeks to recover compensatory damages from a manufacturer or supplier for death, **physical injury to person**, **emotional distress**, or physical damage to property other than the product in question, that allegedly arose from any of the following:
>
> a)  The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product;
>
> b)  Any warning or instruction, or lack of warning or instruction, associated with that product;
>
> c)  Any failure of that product to conform to any relevant representation or warranty.

OPLA  § 2307.71 (13) (emphasis supplied).

Defendants cite *Hoffer v. Cooper Wiring Devices, Inc.,* 2007 WL 1725317, at *6-7 (N.D. Ohio June 13, 2007) (citing *Velotta v. Leo Petronzio Landscaping, Inc.,* 433 N.E.2d 147, 150 (Ohio 1982) for the rule that "where the wrongful conduct complained of is not presently harmful, the cause of action does not accrue until actual damage occurs." (Doc.

13728, p. 13).   Yet the *Hoffer* case involves a defective receptacle – a device concealed in walls that establishes the electrical connection to an inserted plug. *Id.* at *2. It has nothing to do with a medical device placed in the body that has perforated an organ.

In addition, the rule cited in *Hoffner* was lifted from *Velotta v. Leo Petronzio Landscaping, Inc.*, 433 N.E.2d 147, 150 (Ohio 1982), broadly applying it and failing to cite the facts.  The quoted rule was used while discussing a statute of limitation issue in *Velotta*. Here is the full quote as used in Velotta: "*In a case such as this*, where the wrongful conduct complained of is not presently harmful, the cause of action does not accrue until actual damage occurs." *Id.* at 376. (emphasis supplied). *Velotta* is a very different case from *Hoffer*, and both cases can be distinguished from Mr. Opperman's situation. The Ohio Supreme Court in *Velotta* applied this rule to builder-vendor breach of warranty claims, while *Hoffer* stretched the rule to the product liability context for an economic injury only. Since *Hoffer* is an unreported decision from the Northern District of Ohio, it does not supersede the Ohio Supreme Court's application of the rule. If Defendants' expect the Court to stretch this rule even further than *Hoffer* into the realm of medical device law, they should provide an authority that extends the limitation in *Velotta*. They have not done so.

Defendants also cite *Bouchard v. Am. Home Prod. Corp.,* 213 F. Supp. 2d 802, 807 (N.D. Ohio 2002), a case involving the marketer and the developer of a diet drug that moved for partial summary judgment on certain of plaintiff consumer's injury claims. *Bouchard,* 213 F. Supp. 2d 802, 807 (N.D. Ohio 2002). Summary judgment was granted where the consumer failed to establish, or she "voluntarily abandoned", her claims that use

of the diet drug Redux caused her injuries. This ruling was in part because her expert's testimony related to an article that he co-authored on valvulopathy and could not form the basis of his opinion. In *Bouchard*, the plaintiff did not have a physical injury and her claim was based on the "increased chance that she will develop PPH" as a result of using the diet drug in question. *Id* at 807. In contrast, Mr. Opperman has already been injured by Cook's IVC filter, even if he is asymptomatic. The perforation exists. It is not a nebulous thing that will happen to him sometime in the future, though it is an injury that can indeed progress and cause further damage.

The remainder of the cases cited by Defendants are also distinguishable. See *United States Fire Ins. Co. v. Ohio High Sch. Athletic Ass'n,* 595 N.E.2d 418, 420 (Ohio Ct. App.1991) (declaratory judgment action by insurer granted against the Ohio High School Athletic Association because coverage excluded liability incurred as a result of a person's participation in an athletic contest.); *Ackison v. Anchor Packing Co.,* 897 N.E.2d 1118, 1125-1126 (Ohio 2008) (administrative dismissal of a claim for wrongful death from nonmalignant asbestosis because the specific abnormalities in the x-rays were caused by a separate condition known as pleural plaque.); *AlliedSignal, Inc. v. Ott,* 785 N.E.2d 1068, 1075 (Ind. 2003) (statute of limitations and repose case concerning asbestos exposure limited to the context of Indiana statutory law).

Mr. Opperman's short form complaint properly incorporates the allegations in the master complaint, and these pleadings are sufficient for the Court to deny Defendants' motion. Should the Court choose to consider his categorization form despite the fact it was completed and submitted with the expectation that it would not be admissible, Plaintiff's

claims should still survive under Ohio law. Neither Mr. Opperman's product liability claims nor his wife's loss-of-consortium claim should be dismissed.

## CONCLUSION

Each Plaintiff subject to this motion has an IVC filter, a foreign metallic object, puncturing through (*i.e.* tearing and causing holes in), in multiple locations, the wall of his or her IVC, a major blood vessel of his or her body. The radiographic imaging provided with the CCF, instead of showing lack of harm, provides clear objective evidence of the injury suffered. As explained above, symptoms are not required to experience a physical injury to the body. Therefore, because an injury has been sufficiently alleged in each of these cases, the Court should deny Defendants' Motion to Dismiss Counts I through IV and Count VIII for all Plaintiffs.

Alternatively, Plaintiffs request leave pursuant to Rule 15(a)(2) to amend the Master Complaint and/or Short Form Complaint to address any perceived deficiency in that pleading. Finally, if the Court considers the CCF, the basis of Defendants' motion, which Plaintiffs contend is "outside the pleadings," the Court should convert the instant motion to a Rule 56 motion and provide Plaintiffs additional time to respond.

DATED this 17th day of July 2020.

Respectfully Submitted,

DALIMONTE RUEB STOLLER, LLP.

*/s/ Paul L. Stoller*

Paul L. Stoller (AZ Bar No. 016773)
*Admitted Pro Hac Vice*
2425 E. Camelback Road, Suite 500
Phoenix, Arizona 85016
Ph: (602) 888-2807

paul@drlawllp.com
*Counsel for Plaintiffs Shirley Parton and*
*Teresa Sykes*

THE NATIONS LAW FIRM

*/s/ Howard L. Nations*
Howard L. Nations
Texas State Bar No. 14823000
cdb@howardnations.com
Alison L. Divine
Georgia Bar No. 672129
alison@howardnations.com
9703 Richmond Ave, Suite 200
Houston, TX 77042
(713) 807-8400
(713) 807-8423 (Fax)
*Counsel for Plaintiff Jacob Opperman*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of July 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing.

*/s/Paul L. Stoller*