UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB MDL No. 2570 |

This document relates to:
Case No. 1:17-cv-00996 (Dixon)[1]
Case No. 1:18-cv-01214 (Opperman)
Case No. 1:18-cv-03371 (Parton)
Case No. 1:19-cv-01167 (Sykes)

**REPLY IN SUPPORT OF COOK DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AS TO CERTAIN NO-INJURY PLAINTIFFS**

Plaintiffs have categorized their own condition as "non-symptomatic." Although they complain mightily about Cook's reliance on their case categorization forms (never mind the fact that the Court has previously relied on these forms in dismissing other categories of cases), they do not argue their categorization forms are in any way inaccurate. So the question here becomes one of pure law: whether their specific non-symptomatic condition—an alleged perforation of the IVC—is a cognizable injury. *See* Restatement (Third) of Torts: Physical & Emotional Harm § 4 cmt. *b* (2010). It is not. A non-symptomatic condition may give *rise* to a cognizable injury in the *future*, but "[t]he threat of future harm, not yet realized, is not enough" to make out a tort claim. Prosser & Keeton, *The Law of Torts* § 30 at 165 (5th ed. 1984). More than "a mere change or alteration in some physical person" is required. Restatement (Second) of Torts § 7 cmt. *b* (1965). The alteration of the body must have a detrimental effect in a practical sense such as by causing noticeable

---

[1] After the defendants filed their motion for judgement on the pleadings, Dionne Dixon voluntarily dismissed her case with prejudice. Dkt. 13803.

symptoms. *See id*. The law of each state at issue here is in accord with these basic principles. Changes at both the sub-cellular level (such as alterations in DNA caused by radiation exposure) *and* at the cellular level (such as scarring of the lungs caused by asbestos exposure) are not, without more, legally cognizable injuries.[2]

Against all of this, plaintiffs argue the mere perforation of their IVCs is a cognizable injury, and as proof they cite a radiographic image suggesting their IVCs have been perforated. But this is nothing more than question-begging: *why* is the mere perforation of an IVC, without any accompanying symptoms, a compensable injury? Plaintiffs never explain. Nor could they, for their lives are entirely unaffected by their diagnosis; they are, by their own admission, asymptomatic. Tort actions are supposed to be about compensating people for the harm they have suffered as a result of the legal wrongs of others. Dan B. Dobbs & Paul T. Hayden, *The Law of Torts* § 1 (2d ed. 2019). But if the plaintiff has suffered no harm, even if there has been a wrong the law recognizes, there is nothing to compensate them for. Imagine if these cases went to trial. How would the plaintiffs go about blackboarding their damages for a jury? They never explain that either. The only "harm" they could possibly base their damages calculations on is that they are in fear of a future injury (what plaintiffs' euphemistically call "emotional distress"), but not only have they

---

[2] *See Wood v. Wyeth-Ayerst Labs.*, 82 S.W.3d 849, 854–55 (Ky. 2002) (holding user of appetite-suppressing drug could not recover for alleged increased health risks caused by exposure to drug because her body "ha[d] not yet been impaired" (citing Restatement (Second) of Torts § 7 cmt. *e*); *Rainer v. Union Carbide Corp.*, 402 F.3d 608, 618-222 (6th Cir. 2005), *opinion amended on reh'g* (Mar. 25, 2005) (relying in part on *Wood* in holding plaintiffs who claimed only "subcellular damage to their DNA and chromosomes" as a result of uranium exposure had no claim); *Ackison v. Anchor Packing Co.*, 897 N.E.2d 1118, 1124–26 (Ohio 2008) (holding Ohio common law did not permit tort recovery for asymptomatic pleural thickening in the lungs caused by asbestos and noting the Restatement (Third) of Torts had been misread to support the opposite conclusion); *Ford Motor Co. v. Miller*, 260 S.W.3d 515, 518 (Tex. Ct. App. 2008) (holding plaintiff could not recover damages for scarring of his lungs caused by asbestos because "a mere physical change that is not detrimental does not constitute a harm" (citing Restatement (Second) of Torts § 7 cmt. *b*)).

not claimed in their categorization forms to have experienced such fear, that's not harm in any legally recognized sense; indeed, this Court has already dismissed cases in which the case categorization forms alleged only fear of future injury. Dkt. 11131, Entry for June 13, 2019, pp. 2-4 (dismissing Category 2 cases). Therefore, "[i]f any damages were to be assessed, they would fall in the realm of the purely theoretical, and would be nearly impossible for a trier of fact to accurately assess." *Rainer*, 402 F.3d at 622.

Physical changes in a person's body may be either beneficial, detrimental, or of no consequence. Restatement (Second) of Torts § 7 cmt. *b*. Only in so far as physical changes have a *detrimental* effect on a person does that person suffer a harm that is compensable under the law. *Id*. As the Supreme Court has explained in an analogous context, there are sound policy reasons for this: "(a) [the] special difficulty for judges and juries in separating valid, important claims from those that are invalid or trivial; (b) a threat of unlimited and unpredictable liability; and (c) the potential for a flood of comparatively unimportant, or trivial, claims." *Metro-North Commuter R.R. Co. v. Buckley*, 521 U.S. 424, 433 (1997) (cleaned up and citation omitted). This MDL is proof positive these policy concerns are real. This MDL is brimming with no-injury cases. These cases have not been filed because they have any intrinsic value; in fact, one no-injury plaintiff recently acknowledged as much, claiming that if his case were tried it would have a *negative* value. Dkt. 13544, *Burrage*, Pl.'s Brief in Supp. of Mot. to Dismiss Without Prejudice, p. 4 (filed June 1, 2020). These cases have been filed because of the threat of unlimited and unpredictable liability they pose. All the better to squeeze Cook for a high-dollar settlement. But Cook puts no value on these cases because the law puts no value on these cases. They need to be dismissed. If the plaintiffs develop adverse symptoms in the future, they can refile their cases then, to the extent consistent with applicable law. But they do not have a claim now.

## ARGUMENT

Plaintiffs' response is long on procedure and short on substance. We can be relatively brief on both fronts. In short, the Court can and should dismiss these cases based on plaintiffs' own admission that they are asymptomatic, as contained in their own attorney-certified case categorization forms.

**I.   The Court May Consider Plaintiff Case Categorization Forms in Ruling on this Motion Just as it Has in Ruling on Prior Dispositive Motions.**

Plaintiffs' main procedural objection is that Cook bases its motion on their own attorney-certified case categorization forms, which state that each plaintiff is "non-symptomatic." But plaintiffs have argued before that their categorization forms may not be considered by the Court in ruling on dispositive motions, Dkt. 10953, Pls.' Opp'n to Cook's Mot. for J. on the Pleadings to Dismiss Category 2 Cases, pp. 2-3 (filed June 6, 2019); Dkt. 11518, PSC's Mot. to Strike (filed Aug. 8, 2019), and the Court has either summarily rejected that contention or ignored it altogether, *see* Dkt. 11131, Entry for June 13, 2019, pp. 2-4 (dismissing Category 2 cases); Dkt. 11602, Entry on the August 20, 2019 Status Conference, p. 1 (denying PSC's Motion to Strike) (entered Aug. 21, 2019). One of the purposes of the Court's categorization process is to screen out meritless cases. *See* Dkt. 9322, Screening Order & Bellwether Selection Plan, p. 2 (entered Oct. 2, 2018) ("The Cook Defendants move for a screening order *to ensure pending and future filed cases allege a cognizable injury* and for a plan to select additional cases as bellwethers for trial." (emphasis added)). In keeping with this purpose, the Court has previously relied on case categorization forms to dispose of cases in Categories 1 and 2.[3] This motion seeks to dismiss another category of

---

[3] *See* Dkt. 11131, Entry for June 13, 2019, pp. 2-4 (granting judgment on the pleadings based on the categorization forms in Category 2 cases in which the plaintiff alleges "only non-physical injuries, such as worry, stress, or fear of future injury"); Dkt. 10588, Order Dismissing Category 1 Cases (entered May 1, 2019) (dismissing "[p]ursuant to the court's Screening Order and Bellwether Selection Plan" Category 1 cases, which are cases in which the plaintiff's filter "was

meritless cases based on plaintiff case categorization forms: certain Category 6 "Non-Symptomatic Injury Cases."

This as an appropriate use of the categorization forms, not only because that is their very purpose—to weed out cases that assert no cognizable injury—but because they are simply extensions of the MDL pleadings. *See* Dkt, 137289, Cook's Mot. for J. on the Pleadings as to Certain No-Injury Pls., p. 4 (filed July 2, 2020). The master complaint makes general factual and legal allegations. The short-form complaint lists the specific legal claims each plaintiff is making. And the case categorization forms describe each plaintiff's specific condition. Documents that form part of the pleadings may be considered in ruling on a motion to dismiss. *Id*.

The case categorization forms may also be considered because they constitute judicial admissions. A judicial admission is "any 'deliberate, clear and unequivocal' statement, either written or oral, made in the course of judicial proceedings." *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 680 (7th Cir. 2002) (quoting *In re Lefkas Gen. Partners,* 153 B.R. 804 (N.D. Ill. 1993)). It is difficult to imagine a more deliberate, clear, and unequivocal statement than the one the plaintiffs have made in their categorization forms. Plaintiffs had seven clearly defined case categories from which to choose—categories proposed by and large by plaintiffs' own leadership. *See* Dkt. 8591, Pls.' Resp. to Cook Defs.' Mot. for Screening Order & Bellwether Selection Plan, pp. 13-15 (filed July 19, 2018). Each plaintiff placed themselves into Category 6, stating in writing—without qualification—that they are "non-symptomatic." And their attorneys certified the accuracy of each plaintiff's categorization based on a review of their individual medical records. This is a judicial admission by any reasonable standard. Because a judicial admission is not evidence, but rather has

---

successfully removed on the first, routine, percutaneous retrieval attempt and no physical symptom or filter complication was alleged during the time the filter was in place or in connection with the retrieval process").

the effect of withdrawing a fact from contention, *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995) (citations omitted), it may be relied on in ruling on a motion for judgment on the pleadings, *see, e.g., Ocasio v. Turner*, 19 F. Supp. 3d 841, 845 (N.D. Ind. 2014).

Nevertheless, the plaintiffs say, their case categorization forms are not properly viewed as judicial admissions because they do not "*negate*[] a factual claim that [they] might have made or considered making." Dkt 13816, Pls.' Joint Resp. to Defs.' Mot. for J. on the Pleadings, p. 11 (filed July 17, 2020) (quoting *Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 872 (7th Cir. 2010)) (emphasis plaintiffs'). But that's *exactly* what the categorization forms do: they certify plaintiffs are "*non*-symptomatic." Non-symptomatic is by definition the negative of symptomatic; it means *without* symptoms.

So the defendants' motion for judgment on the pleadings is properly based on the plaintiffs' case categorization forms, and there is no need to convert the motion into one for summary judgment. Not only would that be procedurally improper, it wouldn't make any difference. The plaintiffs admit they are asymptomatic. The only question, then, is whether they have a cognizable injury. That's a legal question. *See* Restatement (Third) of Torts: Physical & Emotional Harm § 4 cmt. *b*. Plaintiffs don't dispute that. Therefore there is no reason not to proceed straight to the merits and decide whether the plaintiffs' tort claims should be dismissed. They should be.

## II.  Plaintiffs Have Not Suffered a Legally Cognizable Injury as a Matter of Law.

Plaintiffs make what amounts to three arguments on the question of whether they have suffered a cognizable injury. The first (that Cook is precluded from arguing asymptomatic perforation is not a cognizable injury) is frivolous. The second (that plaintiffs have alleged a plausible claim of injury) ignores the facts. And the third (that asymptomatic perforation is a legally cognizable injury) ignores the applicable law.

**A.  Defendants' Argument in this Case, that Asymptomatic Perforation Is Not a Cognizable Injury, Is Fully Consistent with the Arguments it Has Made in Prior Cases.**

The first argument plaintiffs make is that Cook has previously claimed that mere perforation is an injury, and that it can't claim otherwise now. Dkt 13816, Pls.' Joint Resp. to Defs.' Mot. for J. on the Pleadings, p. 8. This is essentially a claim of judicial estoppel. The doctrine of judicial estoppel is to be applied "where intentional self-contradiction is being used as a means of obtaining unfair advantage . . . ." *Matter of Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990) (cleaned up and citation omitted). "Judicial estoppel is strong medicine, and this has led courts and commentators to characterize the grounds for its invocation in terms redolent of intentional wrongdoing." *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1428 (7th Cir. 1993). There has been no wrongdoing here, intentional or otherwise. The defendants' argument in this case is fully consistent with the arguments they have made in prior cases.

Plaintiffs point to two motions in two different cases to support their argument. In the first, a motion for judgment on the pleadings in *Kellogg*, plaintiffs claim the defendants "argued that a perforation of the IVC is an injury that triggers the running of the statute of limitations." Dkt 13816, Pls.' Joint Resp. to Defs.' Mot. for J. on the Pleadings, p. 8. (citing Dkt. 842, Cook Defs.' Br. in Supp. of Mot. for J. on the Pleadings (filed Nov. 13, 2015)). But here's what Cook actually argued:

> Kellogg has admitted that he began to experience gastrointestinal bleeding shortly after his physician inserted the Filter. On February 4, 2010, Kellogg learned that the Filter had *perforated* his vena cava, the vein into which his physician had inserted the Filter. On April 26, 2010, medical personnel actually attempted to remove the Filter but aborted their efforts "due to such a high risk of death during the procedure." Kellogg cannot deny that by April 26, 2010 he knew the Filter had caused him injury. Even if Kellogg claims he did not have actual knowledge of his injury (and such a claim would seem illogical), ***he clearly had experienced symptoms*** that would have caused a person of reasonable diligence to take action that would have led to the discovery of his cause of action.

7

Dkt. 842, p. 5 (internal citations omitted and emphasis added). Thus, key to Cook's argument was the date that plaintiff first experienced *symptoms* as a result of the perforation, and *not* the date that the perforation itself occurred.

The other motion the plaintiffs point to, a summary judgment motion in *Gage*, is along the same lines. There the plaintiffs claim the defendants argued that an "an X-ray depicting tilt of the plaintiff's IVC Filter commenced [the] statute of limitations." Dkt 13816, Pls.' Joint Resp. to Defs.' Mot. for J. on the Pleadings, p. 8 n.3 (citing Dkt. 5749, Cook Defs.' Memo. in Supp. of Mot. for Summ. J. (filed Aug. 11, 2017)). Again, here is what Cook actually argued:

> The undisputed facts establish that within a few days of the initial placement of Plaintiff Arthur Gage's Tulip IVC filter in April 2011:
>
> > • Gage experienced a sudden onset of excruciating *pain*, which continues to the present day;
> > • He knew that this *pain* was new, unexpected, and different from what he had expected from his surgery;
> > • The *pain* immediately made him think something was wrong; and
> > • He blamed the *pain* on the IVC filter.
>
> Despite knowing in April 2011 that he had suffered an injury and believing at that time that the Cook filter had wrongfully caused that injury, Plaintiff did not commence the present action until he filed his original Complaint on November 14, 2014, over three and a half years later. Plaintiff thus failed to bring this action within Illinois's two-year statute of limitations, and Cook is entitled to summary judgment on all of Plaintiff's claims.

Dkt. 5749, p. 9 (emphasis added). So once more, Cook's focus was not on when the plaintiff learned his filter was supposedly malpositioned, but on when the plaintiff's *symptoms* began.

The argument in this case is entirely in line with the arguments made in *Kellogg* and *Gage*. Cook's core claim is that what matters in determining whether the plaintiff has suffered a cognizable injury is not whether there has been a perforation of the plaintiff's IVC, but whether the plaintiff has suffered a loss or detriment as a consequence of the perforation, such as by experiencing

adverse *symptoms*—pain, bleeding, organ failure, and so on. The plaintiffs here all have unequiv-

ocally admitted they have *not* suffered any adverse symptoms or complications as a result of the

perforation of their IVCs. Therefore they have not yet suffered a cognizable injury, if they ever

will.

      **B.   Plaintiffs' Threadbare Allegations of "Injury" Do Not Make Out a Plausible
Claim that They Have Suffered an Injury Recognized by the Law.**

The second argument the plaintiffs make is that they have adequately alleged a cognizable

injury in the master complaint. Dkt 13816, Pls.' Joint Resp. to Defs.' Mot. for J. on the Pleadings,

pp. 2, 15-16, 19. Even assuming that to be true, however, it ignores entirely their subsequent and

superseding admission that they are asymptomatic, as contained in their case categorization forms.

The same could have been said about Category 1 and 2 cases, but the Court dismissed those cases

just the same, recognizing that the plaintiffs' specific admissions in their categorization forms un-

dercut their generic claims of injury in the master complaint.

So, plaintiffs are relegated to arguing that, in the categorization forms "Category 6 includes

as part of its title the identification of the case as an 'injury' case." *Id*. at 5. They tell us this is

"significant[]." *Id*.; *see also id*. 9, 11, 15 (making essentially the same argument). No, it's not. Not

only does that beg the question of whether their alleged injury is one recognized by law, which is

the ultimate issue here, it ignores basic pleading standards. "[A] plaintiff's obligation to provide

the grounds of his entitlement to relief requires more than labels and conclusions . . . ." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up and citation omitted). But that is all their

allegation of "injury" is: a label or a conclusion. That's not enough.

The Southern District of New York addressed basically the same argument in another filter

case. *Perez v. B. Braun Med., Inc.*, 2018 WL 2316334 (S.D.N.Y. May 9, 2018). The only differ-

ence there was that the alleged injury was tilt, instead of perforation:

> The complaint does not allege actual physical injuries Perez incurred as a result of defendants' filter. The complaint only alleges that Perez "sustained serious personal injuries," "serious physical injuries," and "severe injuries," that she suffered "loss of enjoyment of life, disability, and other losses," and that she "incurred substantial medical costs and expenses to treat and care for Plaintiff's injuries described herein," but it does not describe the nature of those injuries. Thus, it merely recites the elements of the claims, not facts disputing a motion to dismiss.

*Id.* at *4. The Court therefore dismissed the complaint. *Id*. at *5.

Finally, plaintiffs erroneously claim that "judgment on the pleadings is only appropriate when 'it appears beyond a doubt that the plaintiffs cannot prove any facts that would support their claim for relief.'" Dkt 13816, Pls.' Joint Resp. to Defs.' Mot. for J. on the Pleadings, p. 4 (quoting *In re Bridgestone/Firestone Inc.*, 200 F. Supp. 2d 997, 998 (S.D. Ind. 2002)). The "beyond doubt" language is a vestige of the old *Conley v. Gibson* pleading standard that has been retired for over a decade now. *See Twombly,* 550 U.S. at 563 (*Conley*'s "famous observation has earned its retirement."); *accord Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The only question under the current *Twombly* pleading standard is whether the plaintiffs have alleged a "plausible" claim for relief. 550 U.S. at 570. As discussed, they haven't.

### C. Asymptomatic Perforation Is Not a Legally Cognizable Injury.

At last we arrive at what this motion is really about: whether the plaintiffs have suffered a cognizable injury. Plaintiffs give passing lip service to the notion that product liability claims require proof of a loss or impairment, but that is all they do. They fail to grapple with the fundamental fact that they are asymptomatic—that they have not suffered a loss or experienced any impairment. So they resort to hyperbole, claiming their IVCs have been torn, slashed, ruptured, and ripped. Dkt 13816, Pls.' Joint Resp. to Defs.' Mot. for J. on the Pleadings, p. 6. Not true. Their actual allegation of "injury," which their attorneys certified to be true based on a review of the relevant medical records, is far less dramatic: they claim to have suffered a "perforation . . . that has not produced

10

physical symptoms or complications." Defs.' Ex. 5, 7, & 8, Pls.' Categorization Forms. Therefore by definition plaintiffs have not suffered a loss or impairment. In that sense they are in *exactly* the same position as the plaintiffs in the Kentucky, Ohio, and Texas cases who alleged negligently inflicted cellular or subcellular damage to their bodies. They have experienced an alternation to their physical person, but it has not in any practical sense had a detrimental effect on their health. *See*, *supra*, at p. 2 n.2.

Nor may it ever, which is what makes the plaintiffs' condition different than their hypothetical asymptomatic colon-cancer patient. *See* Dkt 13816, Pls.' Joint Resp. to Defs.' Mot. for J. on the Pleadings, p. 6. Colon cancer is an *unavoidably* progressive disease; it almost certainly will be fatal if not treated. The same cannot be said about IVC perforations, no more than it can be said about alternations to one's DNA as a result of radiation or lung scarring as a result of asbestos. *See*, *supra*, at p. 2 n.2. A better analogy is to a home that has required the installation of a vertical support beam. Once installed, that beam may crack the horizontal beam it supports, but unless that crack leads to collateral damage to the surrounding structure—such as a collapsed wall—there is no harm. Imaging might prove the crack exists, but that fact alone doesn't prove the homeowner has suffered a cognizable injury.

Plaintiffs unwittingly admit they haven't suffered a compensable injury yet. "Here," they write, "an injury to an organ—by tearing a hole through it—is an actual, ongoing physical injury to the claimant that is, *for the moment perhap*s, not causing acute physical pain or additional complications." *See* Dkt 13816, Pls.' Joint Resp. to Defs.' Mot. for J. on the Pleadings, p. 8 (emphasis added). That is exactly the point: they are not *presently* suffering any symptoms or complications; therefore, they do not *presently* have a tort claim. The possess only a radiographic finding that, in most cases, would be unknown to the plaintiff but for their attorney's request that an expert review

11

imaging of an otherwise uninjured plaintiff's IVC. If plaintiffs suffer adverse symptoms or complications later, perhaps they can refile their tort claims later. But until then, they have no tort case.

Thus there would be no point to allowing the plaintiffs to amend their complaints, as they request in the alternative. *See* Dkt 13816, Pls.' Joint Resp. to Defs.' Mot. for J. on the Pleadings, p. 20. There is more than a pleading deficiency here. There is a *claim* deficiency here. No matter what they allege, they cannot overcome the fact that, as things currently stand, they are by their own admission asymptomatic. So any amendment they could make to their complaints would be futile, which, needless to say, doesn't justify allowing plaintiffs to replead. *See Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 860–61 (7th Cir. 2001).

## CONCLUSION

The Court should dismiss Counts I through IV, and also Count VIII to the extent alleged, of the Master Complaint with respect to the remaining plaintiffs who are the subjects of this motion. In the event plaintiffs suffer actual physical harm in the future, they may refile their cases to the extent the applicable law allows, but the Court should order them to do so, if at all, in the Southern District of Indiana.

Dated: July 23, 2020

Respectfully Submitted,

/s/ Brian J. Paul
Andrea Roberts Pierson, Co-Lead Counsel
Jessica Benson Cox
Brian J. Paul
FAEGRE DRINKER BIDDLE & REATH LLP
300 North Meridian Street, Suite 2500
Indianapolis, Indiana 46204
Telephone: (317) 237-0300
Andrea.Pierson@FaegreDrinker.com
Jessica.Cox@FaegreDrinker.com
Brian.Paul@FaegreDrinker.com

James Stephen Bennett, Co-Lead Counsel
FAEGRE DRINKER BIDDLE & REATH LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana 46802
Telephone: (260) 424-8000
Stephen.Bennett@FaegreDrinker.com

*Attorneys for Defendants Cook Incorporated,*
*Cook Medical LLC, and William Cook Europe*
*ApS*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23d day of July, 2020, a copy of the foregoing was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.

/s/ Brian J. Paul