# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| **DANIEL BAKER AND MELISSA BAKER,** | : **COMPLAINT AND DEMAND FOR** <br> : **JURY TRIAL** |
| **Plaintiffs,** | : |
| **vs.** | :     **CASE NO.**   1:20-cv-569 (BKS/TWD) |
| **COOK INCORPORATED, COOK MEDICAL LLC (f/k/a Cook Medical Incorporated), and WILLIAM COOK EUROPE ApS,** | : |
| **Defendants.** | : |

## COMPLAINT

Plaintiffs, Daniel Baker and Melissa Baker, by and through their attorneys, Martin, Harding & Mazzotti, LLP hereby bring this Complaint for damages against Defendants Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS (collectively "Cook Defendants") and allege the following:

## NATURE OF THE CASE

1.  This is an action for damages suffered by Plaintiffs as a direct and proximate result of the Cook Defendants' negligent and wrongful conduct in connection with the design, manufacture, sale, testing, marketing, labeling, advertising, promotion and/or distribution of its unsafe medical device known as the Cook Gunther Tulip Vena Cava filter.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the Cook Defendants and this action pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between the Plaintiffs and the Cook Defendants.  The Cook Defendants are either incorporated and/or have their principal place of business outside of the state in which the Plaintiffs reside.

3.      Plaintiffs Daniel Baker and Melissa Baker are presently, and at all relevant times, residents of the County of Washington and State of New York.

4.      The Court has personal jurisdiction over the Cook Defendants because at all relevant times they have conducted and continue to conduct substantial and systematic business activities in this jurisdiction related to their IVC filters, including the Gunther Tulip ™ Vena Cava Filter at issue in this case.  Such activities include, but are not limited to: (a) sales of IVC filters, including the Cook filter at issue herein, in this jurisdiction; (b) hiring, training, and deploying employees, including managers and sales representatives, in this jurisdiction; (c) advertising and marketing of their IVC filters, including the Cook filter at issue herein, in this jurisdiction; (d) maintenance of company files and equipment relating to the Cook filter herein, in this jurisdiction; (e) payment of employee salaries in this jurisdiction; and (f) maintenance of a website directed to all states, including New York**.**

5.      The Cook Defendants also committed tortious acts within the State of New York and caused injury to persons or property within the State of New York, including plaintiffs herein, arising out of acts or omissions by the Cook Defendants outside this state at or about the time of the Plaintiff, Daniel Baker's injury, while the Cook Defendants were engaged in solicitation or service activities within the State of New York; and/or, while products, materials, or things

**COMPLAINT** – Page 2

processed, serviced, or manufactured by the Cook Defendants were used or consumed within New York in the ordinary course of commerce, trade, or use.

6.    There is complete diversity between the parties and the amount in controversy exceeds $75,000 exclusive of interest and costs.  *See 28 U.S.C. § 1332.*

7.    Venue is proper within this district, including for purposes of remand and trial, pursuant to 28 U.S.C. § 1391, in that the plaintiffs reside here, and the Cook Defendants regularly conduct substantial business in this venue and are subject to personal jurisdiction in this district. Furthermore, the Cook Defendants' Cook Gunther Tulip Vena Cava filter caused injury to plaintiff within the Northern District of New York.  The Cook Defendants are present and doing business within this State, have continuous and systematic contacts in New York and a substantial part of the acts and/or omissions giving rise to these claims occurred within this District, including the personal injuries to plaintiff, Daniel Baker.

## PARTIES

8.    Plaintiffs, Daniel Baker and Melissa Baker ("Plaintiffs") are, and at all relevant times were, residents and citizens of Washington County in the State of New York.

9.    Plaintiff, Melissa Baker, is the spouse of Plaintiff Daniel Baker, and brings a claim for loss of consortium.

10.    Defendant, Cook Incorporated is, and at all relevant times was, an Indiana Corporation, with its principal place of business located at 750 Daniels Way, Bloomington, Indiana 47404, doing business and conducting regular and systematic activities in the State of New York, which activities of defendant gave rise to the plaintiffs' claims in this action.  Defendant, Cook Incorporated has designated service of process to its registered agent for service of process,

Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, Indiana 46204.

11.     At all times relevant to this action, Cook Incorporated designed, set specifications, manufactured, prepared, compounded, assembled, processed, promoted, marketed, distributed and/or sold the inferior vena cava filter ("IVC Filter") known as the Gunther Tulip™ Vena Cava Set (hereinafter "Cook filter") to be implanted in patients throughout the United States, including New York. At all times relevant hereto, Defendant Cook Incorporated was engaged in regular and systematic business in New York, has conducted regular and substantial business activities and derived substantial revenue from within the State of New York. Defendant has also carried on solicitations or service activities in New York. In addition, the plaintiff's claims herein arise from the defendant's activities within the State of New York and the plaintiff, Daniel Baker's sustained injuries from the Cook Gunther Tulip Vena Cava filter within New York. The registered agent for Cook Incorporated is Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN 46204. Cook Incorporated may be served with process by delivering a Summons with a copy of this Complaint attached thereto, to its registered agent.

12.     Defendant Cook Incorporated is the parent company of Defendant Cook Medical, LLC f/k/a Cook Medical Incorporated. Defendant Cook Medical, LLC f/k/a Cook Medical Incorporated is an Indiana limited liability company with its corporate headquarters and principal place of business at 750 Daniels Way, Bloomington, Indiana 47404. Cook Medical LLC is authorized and licensed to to business in the State of New York.

13.     At all times relevant to this action, Cook Medical, LLC f/k/a Cook Medical Incorporated designed, set specifications, manufactured, prepared, compounded, assembled,

**COMPLAINT** – Page 4

processed, promoted, marketed, distributed and/or sold the inferior vena cava filter ("IVC Filter") known as the Gunther Tulip™ Vena Cava Set to be implanted in patients throughout the United States, including New York . At all times relevant hereto, Defendant Cook Medical, LLC f/k/a Cook Medical Incorporated was engaged in and conducted regular and systematic business in New York, has conducted regular and substantial business activities and derived substantial revenue from within the State of New York. Defendant has also carried on solicitations or service activities in New York. In addition, the plaintiff's claims herein arise from the defendant's activities within the State of New York and the plaintiff, Daniel Baker's sustained injuries from the Cook Gunther Tulip Vena Cava filter within New York. The registered agent for Cook Medical, LLC f/k/a Cook Medical Incorporated is Corporation Service Company, 80 State Street, Albany, New York 12207-2543. Cook Medical, LLC f/k/a Cook Medical Incorporated may be served with process by delivering a Summons with a copy of this Complaint attached thereto, to its registered agent.

14.    Defendant, William Cook Europe, ApS is a Denmark Corporation, with its principal place of business at Sandet 6 Bjaeverskov, Denmark. At all times relevant to this action, Defendant, William Cook Europe, ApS designed, set specifications, manufactured, prepared, compounded, assembled, processed, promoted, marketed, distributed and/or sold the inferior vena cava filter ("IVC Filter") known as the Gunther Tulip™ Vena Cava Set to be implanted in patients throughout the United States, including New York. At all times relevant hereto, Defendant William Cook Europe, ApS was engaged in and conducted regular and systematic business in New York, has conducted regular and substantial business activities and derived substantial revenue from within the State of New York. Defendant has also carried on solicitations or service activities in New York. In addition, the plaintiffs' claims herein arise from the defendant's activities within the

**COMPLAINT** – Page 5

Case 1:14-ml-02570-RLY-TAB Document 13848-2 Filed 07/23/20 Page 6 of 30 PageID #:
98861
Case 2:20-cv-00569-BKS-DWD Document 1 Filed 05/21/20 Page 6 of 28

State of New York and the plaintiff, Daniel Baker's sustained injuries from the Cook Gunther
Tulip Vena Cava filter within New York.

15.     Defendants Cook Incorporated, Cook Medical LLC f/k/a Cook Medical
Incorporated, and William Cook Europe APS shall be referred to herein individually by name or
collectively as the "Cook Defendants."

16.     At all times alleged herein, Cook Defendants include and included any and all
parent companies, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and
organizational units of any kind, their predecessors, successors, and assigns and their officers,
directors, employees, agents, representatives, and any and all other persons acting on their behalf.

17.     At all times herein mentioned, each of the Cook Defendants were the agents,
servants, partners, predecessors in interest, and joint venturers of each other, and were at all times
operating and acting with the purpose and scope of said agency, service, employment, partnership,
joint enterprise, and/or joint venture.

## GENERAL FACTUAL ALLEGATIONS

18.     Plaintiffs, bring this case for serious, life-threatening injuries that plaintiff, Daniel
Baker suffered, and will continue to suffer, as a result of the Cook Defendants' surgically
implanted medical device, the Cook Gunther Tulip Vena Cava filter, that was implanted by
Moutaa BenMaamer, M.D. at Lee Memorial Hospital, Ft. Myers, Florida on or about October 14,
2011.

19.     Cook Defendants design, research, develop, manufacture, test, market, advertise,
promote, distribute, and sell products such as IVC filters that are sold to and marketed as both

**COMPLAINT** – Page 6

permanent and retrievable devices to prevent, among other things, recurrent pulmonary embolism via placement in the vena cava. One such product is the Cook Gunther Tulip Vena Cava filter.

20.     Cook Defendants sought Food and Drug Administration ("FDA") clearance to market the Cook Gunther Tulip Vena Cava Filter device and/or its components under Section 510(k) of the Medical Device Amendment.

21.     On or about October of 2000, the Cook Defendants obtained FDA clearance to market the Cook Gunther Tulip Vena Cava filter under Section 510(k) of the Medical Device Amendment as a permanent IVC filter.

22.     On or about October 31, 2003, the Cook Defendants obtained FDA clearance to market the Cook Gunther Tulip Vena Cava filter under Section 510(k) of the Medical Device Amendment as a retrievable IVC filter.

23.     Section 510(k) allows marketing of medical devices if the manufacturer claims the device is substantially equivalent to other legally marketed predicate devices without formal review for the safety or efficacy of said device. The device is then cleared by the FDA under Section 510(k). The Cook Defendants claimed that the Gunther Tulip Vena Cava filter was substantially equivalent to the Greenfield and LGM Vena Tech IVC filters.

24.     An IVC filter like the Cook Gunther Tulip filter is a device ostensibly designed to filter blood clots (called "thrombi") that would otherwise travel from the lower portions of the body to the heart and lungs. IVC filters are marketed as being safely implanted, either temporarily or permanently, within the vena cava.

25.     The inferior vena cava is a vein that returns blood to the heart from the lower portion of the body. In certain people, and for various reasons, thrombi travel from vessels in the legs and

Case 2:20-cv-00569-BKS-DWD Document 1 Filed 06/21/20 Page 8 of 28

pelvis, through the vena cava into the lungs. These thrombi can develop in the deep leg veins. The thrombi are called "deep vein thrombosis" or DVT. If the thrombi reach the lungs, they are considered "pulmonary emboli" or PE.

26. An IVC filter, like the Cook Gunther Tulip filter, is ostensibly designed to prevent thromboembolic events by filtering or preventing blood clots/thrombi from traveling to the heart and/or lungs.

27. The Gunther Tulip filter has four (4) anchoring struts for fixation with webbed wires (like tulip petals) between each of the anchoring struts.

28. On or about October 14, 2011, Plaintiff, Daniel Baker was implanted with a Cook Gunther Tulip IVC filter at Lee Memorial Hospital by Moutaa BenMaamer, M.D. The Cook filter placed in Plaintiff was stated to be appropriate for use as a permanent filter or a retrievable filter.

29. On or about May 4, 2018, June 19, 2018, and July 19, 2018, Plaintiff, Daniel Baker underwent computerized tomography scans ("CT scan") of his abdomen.

30. Thereafter, Plaintiff Daniel Baker was informed that multiple struts of his Gunther Tulip filter were perforating the walls of his inferior vena cava, placing sharp metal in close proximity to his organs and/or blood vessels.

31. Plaintiff, Daniel Baker's implanted Cook Gunther Tulip Vena Cava filter has perforated his Inferior Vena Cava with filter struts entirely outside the IVC lumen and remains a permanent injury to plaintiff with risk of further injury or death due to the defective Cook Gunther Tulip Vena Cava filter, among other injuries and medical dangers.

32.     Plaintiff is at risk for future progressive perforations by the Cook Gunther Tulip Vena Cava Filter which could further injure adjacent organs, blood vessels, and structures, as well as fracturing of the IVC filter and migration of the filter or pieces thereof.

33.     Plaintiff, Daniel Baker's injury was inherently undiscoverable or objectively verifiable such that, despite Plaintiff's reasonable diligence, he did not discover his injury until he was told of the results of his CT scans.

34.     Plaintiff, Daniel Baker faces numerous health risks, including the risks of death. Plaintiff will require ongoing medical care and monitoring for the rest of his life. It is unknown if the filter can be retrieved by any means other than an open surgical procedure.

35.     At all times relevant hereto, the Cook Gunther Tulip Vena Cava filter was widely advertised and promoted by the Cook Defendants as a safe and effective treatment for prevention of recurrent pulmonary embolism via placement in the vena cava.

36.     At all times relevant hereto, the Cook Defendants knew its retrievable IVC filters were defective and knew that the defect was attributable to the design's failure to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

37.     The Cook Defendants failed to disclose to physicians, patients, or Plaintiffs that its retrievable IVC filters, including the Gunther Tulip Vena Cava filter, were subject to breakage, collapse, tilt, perforation of the vena cava, causing thrombus, and/or the appropriate degree of risk of damage to the vena cava wall.

38.     At all times relevant hereto, the Cook Defendants continued to promote their retrievable IVC filters, including the Gunther Tulip Vena Cava filter, as safe and effective, even

**COMPLAINT** – Page 9

Case 1:20-cv-00569-BKS-TWD Document 1 Filed 05/21/20 Page 10 of 28

though the clinical trials that had been performed were not adequate to support long- or short-term efficacy.

39.     The Cook Defendants concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with its IVC filters, including the Gunther Tulip Vena Cava filter, as aforesaid.

40.     At all times relevant hereto, the Cook Defendants failed to provide sufficient warnings and instructions that would have put Plaintiff, Daniel Baker and the general public on notice of the dangers and adverse effects caused by implantation of the Gunther Tulip Vena Cava filter, including, but not limited to, the design's failure to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

41.     The Gunther Tulip Vena Cava filter was designed, manufactured, distributed, sold, and/or supplied by the Cook Defendants, and was marketed while defective due to the inadequate warnings, instructions, labeling, and/or inadequate testing in light of the Cook Defendants knowledge of the product's failures and serious adverse events.

42.     At all times relevant hereto, the officers and/or directors of the Cook Defendants named herein participated in, authorized, and/or directed the production and promotion of the aforementioned products when they knew or should have known of the hazardous and dangerous propensities of said products, and thereby actively participated in the tortious conduct that resulted in the injuries suffered by Plaintiff.

## **FRAUDULENT CONCEALMENT**

43.     Plaintiffs incorporate by reference the factual portion of this complaint as if fully set forth herein and additionally, or in the alternative, if same be necessary, alleges as follows.

**COMPLAINT** – Page 10

44.     Any applicable statutes of limitation have been tolled by the knowing and active concealment and denial of material facts known by the Cook Defendants when they had a duty to disclose those facts.  The Cook Defendants purposeful and fraudulent acts of concealment have kept Plaintiff, Daniel Baker ignorant of vital information essential to the pursuit of his claims, without any fault or lack of diligence on Plaintiff's part, for the purpose of obtaining delay on Plaintiff's part in filing on his causes of action.  The Cook Defendants' fraudulent concealment did result in such delay.

45.     The Cook Defendants' are estopped from relying on the statute of limitations defense because the Cook Defendants failed to timely disclose, among other things, facts evidencing the defective and unreasonably dangerous nature of the Gunther Tulip Filter.

46.     The Cook Defendants' were and remained under a continuing duty to disclose the true character, quality and nature of the device that was implanted in Plaintiff, Daniel Baker, but instead they concealed them.  The Cook Defendants' conduct, as described in this complaint, amounts to conduct purposely committed, which it must have realized was dangerous, heedless and reckless, without regard to the consequences or the rights and safety of Plaintiff, Daniel Baker.

## <u>CORPORATE/VICARIOUS LIABILITY</u>

47.     At all times herein mentioned, the Cook Defendants were agents, servants, partners, aiders and abettors, co-conspirators and/or joint venturers, and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture and rendered substantial assistance and encouragement to each other, knowing that their collective conduct constituted a breach of duty owed to the Plaintiff.

<u>COMPLAINT</u> – Page 11

48.     There exists and, at all times herein mentioned, there existed a unity of interest in ownership between the Cook Defendants such that any individuality and separateness between them have ceased and these Cook Defendants are alter egos.  Adherence to the fiction of the separate existence of these Cook Defendants as entities distinct from each other will permit an abuse of the corporate privilege and would sanction a fraud and/or would promote injustice.

49.     At all times herein mentioned, the Cook Defendants, and each of them, were engaged in the business of, or were successors in interest to, entities engaged in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, prescribing and/or advertising for sale, and selling products for use by the Plaintiff, Daniel Baker.  As such, each Defendant is individually, as well as jointly and severally, liable to the Plaintiff for Plaintiff's damages.

50.     At all times herein mentioned, the officers and/or directors of the Cook Defendants named herein participated in, authorized and/or directed the production, marketing, promotion and sale of the aforementioned products when they knew, or with the exercise of reasonable care and diligence should have known, of the hazards and dangerous propensities of said products, and thereby actively participated in the tortious conduct that resulted in the injuries suffered by the Plaintiff, Daniel Baker.

## COUNT I
## NEGLIGENCE

51.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

**COMPLAINT** – Page 12

Case 1:14-ml-02570-RLY-TAB Document 13848-2 Filed 07/23/20 Page 13 of 30 PageID #:
Case 1:20-cv-00569-BKS-TWD Document 1 Filed 05/21/20 Page 13 of 28
98868

52.     At all times relevant to this cause of action, the Cook Defendants were in the business of designing, developing, setting specifications, manufacturing, marketing, selling, and distributing the Gunther Tulip Vena Cava filter.

53.     The Cook Defendants designed, manufactured, marketed, inspected, labeled, promoted, distributed and sold the Gunther Tulip Vena Cava filter that was implanted into Plaintiff, Daniel Baker.

54.     The Cook Defendants had a duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution and sale of the Gunther Tulip Vena Cava filter to avoid exposing others to foreseeable and unreasonable risks of harm.

55.     The Cook Defendants knew or should have known that the Gunther Tulip Vena Cava filter was dangerous or was likely to be dangerous when used in its intended or reasonably foreseeable manner.

56.     At the time of manufacture and sale of the Gunther Tulip Vena Cava filter (2000 until Present), the Cook Defendants knew or should have known that the Gunther Tulip Vena Cava filter:

a.  Was designed and manufactured in such a manner so as to present an unreasonable risk of fracture of portions of the device;

b.  Was designed and manufactured so as to present an unreasonable risk of migration of the device and/or portions of the device;

c.  Was designed and manufactured so as to present an unreasonable risk of the device tilting and/or perforating the vena cava wall; and/or

d.  Was designed and manufactured to have unreasonable and insufficient strength or structural integrity to withstand normal placement within the human body.

**COMPLAINT** – Page 13

Case 1:14-ml-02570-RLY-TAB Document 13842-2 Filed 07/23/20 Page 14 of 30 PageID #:
98869
Case 1:20-cv-00569-BKS-TWD Document 1 Filed 05/21/20 Page 14 of 28

e. There were no clinical trials which adequately established the efficacy of filter in preventing pulmonary embolisms.

57. At the time of manufacture and sale of the Gunther Tulip Vena Cava filter (2000 until Present), the Cook Defendants knew or should have known that using the Gunther Tulip filter in its intended use or in a reasonably foreseeable manner created a significant risk of a patient suffering severe health side effects, including, but not limited to: hemorrhage; cardiac/pericardial tamponade; thrombus, cardiac arrhythmia and other symptoms similar to myocardial infraction; perforations of tissue, vessels and organs; and other severe personal injuries and diseases, which are permanent in nature, including, but not limited to, death, physical pain and mental anguish, scarring and disfigurement, diminished enjoyment of life, continued medical care and treatment due to chronic injuries/illness proximately caused by the device; and the continued risk of requiring additional medical and surgical procedures including general anesthesia, with the attendant risk of life threatening complications.

58. The Cook Defendants knew or should have known that consumers of the Gunther Tulip Vena Cava filter would not realize the danger associated with using the device in its intended use and/or in a reasonably foreseeable manner.

59. The Cook Defendants breached their duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution and sale of the Gunther Tulip Vena Cava filter in, among others, the following ways:

a. Designing and distributing a product which the Cook Defendants knew or should have known that the likelihood and severity of potential harm from the product exceeded the burden of taking safety measures to reduce or avoid harm;

**COMPLAINT** – Page 14

b. Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the likelihood of potential harm from other devices available for the same purpose;

c. Failing to use reasonable care in manufacturing the product and producing a product that differed from their design or specifications or from other typical units from the same production line;

d. Failing to use reasonable care to warn or instruct, including pre- and post-sale, Plaintiff, Plaintiff's physicians, Plaintiff's agents or the general health care community about the Gunther Tulip Vena Cava filter's substantially dangerous condition or about facts making the product likely to be dangerous;

e. Failing to perform reasonable pre- and post-market testing of the Gunther Tulip Vena Cava filter to determine whether or not the product was safe for its intended use;

f. Failing to provide adequate instructions, guidelines, and safety precautions, including pre- and post-sale, to those persons to whom it was reasonably foreseeable would prescribe, use, and implant the Gunther Tulip Vena Cava filter;

g. Advertising, marketing and recommending the use of the Gunther Tulip Vena Cava filter, while concealing and failing to disclose or warn of the dangers known by Cook Defendants to be connected to and inherent in the use of the Gunther Tulip Vena Cava filter;

h. Representing that the Gunther Tulip Vena Cava filter was safe for its intended use when in fact, the Cook Defendants knew and should have known the product was not safe for its intended purpose;

i. Continuing to manufacture and sell the Gunther Tulip Vena Cava filter with the knowledge that the product was dangerous and not reasonably safe;

j. Failing to use reasonable and prudent care in the design, research, manufacture, and development of the Gunther Tulip Vena Cava filter to avoid the risk of serious harm associated with the use of the Gunther Tulip Vena Cava filter;

k. Advertising, marketing, promoting and selling the Gunther Tulip Vena Cava filter for uses other than as approved and indicated in the product's label;

l. Failing to establish an adequate quality assurance program used in the manufacturing of the Gunther Tulip Vena Cava filter; and,

m. Failing to establish and maintain an adequate post-market surveillance program.

**COMPLAINT** – Page 15

60.     A reasonable manufacturer, distributor, or seller under the same or similar circumstances would not have engaged in the acts and omissions.

61.     As a direct and proximate result of the foregoing negligent acts and omissions by the Cook Defendants, Plaintiff, Daniel Baker has suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

**COUNT II**
**STRICT PRODUCTS LIABILITY – FAILURE TO WARN**

62.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

63.     The Cook Defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the Gunther Tulip Vena Cava filter, including the one implanted into Plaintiff, Daniel Baker, into the stream of commerce and in the course of same, directly advertised and marketed the device to consumers or persons responsible for consumers.

64.     At the time the Cook Defendants designed, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the device into the stream of commerce, the Cook Defendants knew or should have known the device presented an unreasonable danger to users of the product when put to its intended and reasonably anticipated use.

65.     Specifically, the Cook Defendants knew or should have known at the time they manufactured, labeled, distributed and sold the Gunther Tulip Vena Cava filter, which was implanted into Plaintiff, Daniel Baker, that the Gunther Tulip Vena Cava filter, *inter alia*, posed a

Case 1:14-ml-02570-RLY-TAB Document 13848-2 Filed 07/23/20 Page 17 of 30 PageID #:
98872
Case 1:20-cv-00569-BKS-TWD Document 1 Filed 05/21/20 Page 17 of 28

significant and higher risk than other similar devices of device failure (fracture, migration, tilting, and perforation of the vena cava wall) and resulting in serious injuries.

66.     Consequently, the Cook Defendants had a duty to warn of the risk of harm associated with the use of the device and to provide adequate instructions on the safe and proper use of the device.

67.     The Cook Defendants Cook further had a duty to warn of dangers and proper safety instructions that they became aware of even after the device was distributed and implanted into Plaintiff, Daniel Baker.

68.     Despite their duties, the Cook Defendants failed to adequately warn of material facts regarding the safety and efficacy of the Gunther Tulip Vena Cava filter, and further failed to adequately provide instructions on the safe and proper use of the device. These failures rendered the Cook filter unreasonably dangerous to Plaintiff, Daniel Baker.

69.     No health care provider, including Plaintiff's, or patient would have used the device in the manner directed, had those facts been made known to the prescribing healthcare providers and/or ultimate users of the device.

70.     The health risks associated with the device as described herein are of such a nature that ordinary consumers would not have readily recognized the potential harm.

71.     Plaintiff, Daniel Baker and Plaintiff's health care providers used the device in a normal, customary, intended, and foreseeable manner, namely as a surgically implanted device used to prevent pulmonary embolisms.

**COMPLAINT** – Page 17

72.     Therefore, the Gunther Tulip Vena Cava filter implanted into Plaintiff, Daniel Baker was defective and unreasonably dangerous at the time of release into the stream of commerce due to inadequate warnings, labeling and/or instructions accompanying the product.

73.     The Gunther Tulip Vena Cava filter implanted into Plaintiff, Daniel Baker was in the same condition as when it was manufactured, inspected, marketed, labeled, promoted, distributed and sold by the Cook Defendants.

74.     As a direct and proximate result of the Cook Defendants' lack of sufficient warning and/or instructions, Plaintiff, Daniel Baker has suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

## COUNT III
## STRICT PRODUCTS LIABILITY – DESIGN DEFECT

75.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

76.     At all times relevant to this action, the Cook Defendants developed, tested, designed, manufactured, inspected, labeled, promoted, distributed and sold into the stream of commerce the Gunther Tulip Vena Cava filter, including the one implanted in Plaintiff, Daniel Baker.

77.     The Gunther Tulip Vena Cava filter was expected to, and did, reach its intended consumers without substantial change in the condition in which it was in when it left the Cook Defendants possession.  In the alternative, any changes that were made to Gunther Tulip Vena

Cava filter implanted in Plaintiff, Daniel Baker were reasonably foreseeable to the Cook Defendants.

78.     The Gunther Tulip Vena Cava filter implanted into Plaintiff, Daniel Baker was defective in design in the following ways:

    a.  It failed to perform as safely as persons who ordinarily use the product would have expected at the time of use; and,

    b.  Its risks of harm exceeded its claimed benefits.

79.     The Cook Defendants knew that safer alternative designs were available, which would have prevented or significantly reduced the risk of the injury presented by Gunther Tulip Vena Cava filter.  Further, it was economically and technologically feasible at the time the filter left the control of the Cook Defendants to prevent or reduce the risk of such a dangerous event by application of existing, or reasonably achievable, scientific knowledge.

80.     Plaintiff, Daniel Baker and Plaintiff's health care providers used the Gunther Tulip Vena Cava filter in a manner that was reasonably foreseeable to the Cook Defendants.

81.     Neither Plaintiff, nor Plaintiff's health care providers, could have, by the exercise of reasonable care, discovered the device's defective condition or perceived its unreasonable dangers prior to Plaintiff's implantation with the device.

82.     The defective design of the Gunther Tulip Vena Cava filter was a producing cause of Plaintiff's injuries.

83.     As a result of the Gunther Tulip Vena Cava Filter's defective design, Plaintiff, Daniel Baker has suffered and will continue to suffer serious physical injuries, pain and suffering,

**COMPLAINT** – Page 19

mental anguish, medical expenses, loss of enjoyment of life, disability, consortium and other losses, in an amount to be determined at trial.

**COUNT IV**
**STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT**

84.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

85.     The Cook Defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed and sold the Gunther Tulip Vena Cava filter that was implanted into Plaintiff, Daniel Baker.

86.     The Gunther Tulip Vena Cava filter implanted into Plaintiff, Daniel Baker contained a condition or conditions, which the Cook Defendants did not intend, at the time it left the Cook Defendants control and possession.

87.     Plaintiff, Daniel Baker and Plaintiff's health care providers used the device in a manner that was reasonably foreseeable to Cook Defendants.

88.     As a result of this condition or these conditions, the product injured Plaintiff, Daniel Baker and failed to perform as safely as the ordinary consumer would expect when used in a reasonably foreseeable manner.

89.     As a direct and proximate result of the Gunther Tulip Vena Cava filter's manufacturing defects, Plaintiff, Daniel Baker has suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

**COMPLAINT** – Page 20

## COUNT V
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

90.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

91.     At all times relevant to this action, the Cook Defendants designed, researched, developed, manufactured, tested, labeled, inspected, advertised, promoted, marketed, sold distributed into the stream of commerce the Gunther Tulip Vena Cava filter, including the one implanted in Plaintiff, Daniel Baker, for use as a surgically implanted device used to prevent pulmonary embolisms and for uses other than as approved and indicated in the product's instructions, warnings, and labels.

92.     At the time and place of sale, distribution, and supply of the Cook filter to Plaintiff, Daniel Baker by way of Plaintiff's health care providers and medical facilities, the Cook Defendants expressly represented and warranted, by labeling materials submitted with the product, that the Cook filter was safe and effective for its intended and reasonably foreseeable use.

93.     The Cook Defendants knew of the intended and reasonably foreseeable use of the Gunther Tulip Vena Cava filter at the time they marketed, sold, and distributed the product for use by Plaintiff, Daniel Baker, and impliedly warranted the product to be of merchantable quality, and safe and fit for its intended use.

94.     The Cook Defendants impliedly represented and warranted to the healthcare community, Plaintiff and Plaintiff's health care providers, that the Gunther Tulip Vena Cava filter was safe and of merchantable quality and fit for the ordinary purpose for which the product was intended and marketed to be used.

Case 1:14-ml-02570-RLY-TAB Document 13848-2 Filed 07/23/20 Page 22 of 30 PageID #:
98877
Case 1:20-cv-00569-BKS-TWD Document 1 Filed 05/21/20 Page 22 of 28

95.     The representations and implied warranties made by the Cook Defendants were false, misleading, and inaccurate because the Gunther Tulip Vena Cava filter was defective, unsafe, unreasonably dangerous, and not of merchantable quality, when used in its intended and/or reasonably foreseeable manner. Specifically, at the time of Plaintiff's purchase of the Gunther Tulip Vena Cava filter from the Cook Defendants, through Plaintiff's physicians and medical facilities, it was not in a merchantable condition in that:

   a.  It was designed in such a manner to be prone to an unreasonably high rate of failure, including fracture, migration, excessive tilting, causing thrombosis and/or perforation of the Vena Cava and/or bodily organs;

   b.  It was designed in such a manner to result in an unreasonably high rate of injury to the organs, veins and anatomy; and,

   c.  It was manufactured in a manner so that the Gunther Tulip Vena Cava filter system was inadequately, improperly and inappropriately prepared and/or finished, and prone to an unreasonably high rate of failure and/or causing the device to fail.

96.     Plaintiff and Plaintiff's health care providers reasonably relied on the superior skill and judgment of the Cook Defendants as the designers, researchers and manufacturers of the product, as to whether the Gunther Tulip Vena Cava filter was of merchantable quality, safe and fit for its intended use and also relied on the implied warranty of merchantability and fitness for the particular use and purpose for which the Gunther Tulip Vena Cava filter was manufactured and sold.

97.     The Cook Defendants placed the Gunther Tulip Vena Cava filter into the stream of commerce in a defective, unsafe, and unreasonably dangerous condition, and the product was expected to and did reach Plaintiff, Daniel Baker without substantial change in the condition in which the Gunther Tulip Vena Cava filter was manufactured and sold.

**COMPLAINT** – Page 22

98.    The Cook Defendants breached their implied warranty because their Gunther Tulip Vena Cava filter was not reasonably fit for its intended use and purpose.

99.    As a direct and proximate result of the Cook Defendants breaching their implied warranties, Plaintiff, Daniel Baker has suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

## COUNT VI
## NEGLIGENT MISREPRESENTATION

100.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

101.    At all times relevant to this cause, and as detailed above, the Cook Defendants negligently provided Plaintiff, Plaintiff's health care providers, and the general medical community with false or incorrect information, or omitted or failed to disclose material information concerning the Gunther Tulip Vena Cava filter, including, but not limited to, misrepresentations relating to the following subject areas:

   a.  safety of the Gunther Tulip Vena Cava filter;

   b.  efficacy of the Gunther Tulip Vena Cava filter;

   c.  rate of failure of the Gunther Tulip Vena Cava filter; and,

   d.  approved uses of the Gunther Tulip Vena Cava filter.

102.    The information distributed by the Cook Defendants to the public, the medical community and Plaintiff's health care providers was in the form of reports, press releases, advertising campaigns, labeling materials, print advertisements, commercial media containing

COMPLAINT – Page 23

material representations, which were false and misleading, and contained omissions and concealment of the truth about the dangers of the use of the Gunther Tulip Vena Cava filter. These materials included instructions for use and warning document that was included in the package of the Gunther Tulip Vena Cava filter that was implanted into Plaintiff, Daniel Baker.

103.    The Cook Defendants' intent and purpose in making these representations was to deceive and defraud the public and the medical community, including Plaintiff's health care providers and Plaintiff's agents; to gain the confidence of the public and the medical community, including Plaintiff's health care providers and Plaintiff's agents; to falsely assure them of the quality of the Gunther Tulip Vena Cava filter and its fitness for use; and to induce the public and the medical community, including Plaintiff's healthcare providers to request, recommend, prescribe, implant, purchase, and continue to use the Gunther Tulip Vena Cava filter.

104.    The foregoing representations and omissions by the Cook Defendants were in fact false.  The Gunther Tulip Vena Cava filter is not safe, fit, and effective for human use in its intended and reasonably foreseeable manner. The use of the Gunther Tulip Vena Cava filter is hazardous to the user's health, and said device has a serious propensity to cause users to suffer serious injuries, including without limitation, the injuries Plaintiff, Daniel Baker suffered.  Further, the device has a significantly higher rate of failure and injury than do other comparable devices.

105.    In reliance upon the false and negligent misrepresentations and omissions made by the Cook Defendants, Plaintiff, Plaintiff's agents and Plaintiff's health care providers were induced to, and did use the Gunther Tulip Vena Cava filter, thereby causing Plaintiff, Daniel Baker to sustain severe and permanent personal injuries.

**COMPLAINT** – Page 24

106.    The Cook Defendants knew and had reason to know that Plaintiff, Plaintiff's health care providers, Plaintiff's agents and the general medical community did not have the ability to determine the true facts intentionally and/or negligently concealed and misrepresented by the Cook Defendants, and would not have prescribed and implanted same if the true facts regarding the device had not been concealed and misrepresented by the Cook Defendants.

107.    The Cook Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects in the form of dangerous injuries and damages to persons who are implanted with the Gunther Tulip Vena Cava filter.

108.    At the time the Cook Defendants failed to disclose and misrepresented the foregoing facts, and at the time Plaintiff, Daniel Baker used the Gunther Tulip Vena Cava filter, Plaintiff, Plaintiff's health care providers and the Plaintiff's agents were unaware of said the Cook Defendants' negligent misrepresentations and omissions.

109.    Plaintiff's health care providers, the Plaintiff's agents and general medical community reasonably relied upon the foregoing misrepresentations and omissions made by the Cook Defendants where the concealed and misrepresented facts were critical to understanding the true dangers inherent in the use of the Gunther Tulip filter.

110.    Plaintiff's health care providers and Plaintiff's agents' reliance on the foregoing misrepresentations and omissions by the Cook Defendants was the direct and proximate cause of Plaintiff's injuries as described herein.  As a result of the Cook Defendants' misrepresentations and omissions, Plaintiff, Daniel Baker has suffered and will continue to suffer serious physical

**COMPLAINT** – Page 25

injuries, pain and suffering, mental anguish, medical expenses, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

## COUNT VII
## LOSS OF CONSORTIUM

111.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

112.    Plaintiff, Melissa Baker, is, and at all times relevant was, the spouse of Plaintiff, Daniel Baker.

113.    As a result of the actions and/or omissions of the Defendants set forth above, Plaintiff, Melissa Baker, has been deprived of the services, assistance, aid, society, love, affection, companionship, and conjugal relationship of her husband, Plaintiff, Daniel Baker, and is entitled to recover for her loss of consortium.

114.    The damages of Plaintiff, Melissa Baker, exceed the minimum amount required for the jurisdiction of this Court.

## PUNITIVE DAMAGES CLAIM

115.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

116.    Plaintiff, Daniel Baker is entitled to an award of punitive and exemplary damages based upon the Cook Defendants' intentional, willful, knowing, fraudulent, malicious acts, omissions, and conduct, and their complete and total disregard for the public safety and welfare.

117.    The Cook Defendants had knowledge of, and were in possession of evidence demonstrating that, the Gunther Tulip Vena Cava filter was defective, unreasonably dangerous,

and had a substantially higher failure rate than did other similar devices on the market. Despite their knowledge, the Cook Defendants failed to, among other purposeful acts, inform or warn Plaintiff, Plaintiff's agents, or her health care providers of the dangers, establish and maintain an adequate quality and post-market surveillance system, and recall the Gunther Tulip Vena Cava filter from the market.

118.    As a direct, proximate, and legal result of the Cook Defendants' acts and omissions as described herein, Plaintiff, Daniel Baker has suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiffs, Daniel Baker and Melissa Baker, demand judgment against the Defendants on each of the above-referenced claims and causes of action and as follows:

1.    Awarding compensatory damages in excess of the jurisdictional amount, including, but not limited to pain, suffering, emotional distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined at trial of this action;

2.    Awarding compensatory damages to Plaintiffs for past and future damages, including, but not limited to, Plaintiff's pain and suffering and for severe and permanent personal injuries sustained by the Plaintiff including health care costs and economic loss;

3.    Awarding economic damages in the form of medical expenses, out of pocket expenses, lost earnings and other economic damages in an amount to be determine at trial of this action;

4.    Punitive damages;

<u>COMPLAINT</u> – Page 27

5.          Pre-judgment interest;

6.          Post-judgment interest;

7.          Loss of Consortium Damages;

8.          Awarding Plaintiffs' reasonable attorneys' fees;

9.          Awarding Plaintiffs the costs and disbursements of these proceedings; and

10.        Such other and further relief as this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand trial by jury as to all issues.

Dated:  May 21, 2020

Respectfully Submitted,

<u>*s/Rosemarie Riddell Bogdan*</u>
Rosemarie Riddell Bogdan, Esq.
NDNY Bar Roll Number: 506409
NYS Bar Roll Number:  380552
MARTIN, HARDING & MAZZOTTI, LLP
1222 Troy-Schenectady Road
P.O. Box 15141
Albany, NY  12212-5141
Telephone: (518) 862-1200
rosemarie.bogdan@1800law1010.com

*Attorneys for Plaintiffs*

<u>**COMPLAINT**</u> **– Page 28**

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Daniel Baker and Melissa Baker

**DEFENDANTS**

Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS

**(b)** County of Residence of First Listed Plaintiff    Washington County, NY
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Monroe County, IN
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Martin, Harding & Mazzotti, LLP
1222 Troy-Schenectady Road, P.O. Box 15141
Albany, NY 12212-5141 (518-862-1200)

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government Plaintiff
- ☐ 3   Federal Question *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government Defendant
- ☒ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☒ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332
Brief description of cause:
Cook Incorporated IVC Filter Litigation

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE   Tim A. Baker

DOCKET NUMBER   1:14-ml-2570-RLY-TAB

DATE
05/21/2020

SIGNATURE OF ATTORNEY OF RECORD
/s/ Rosemarie Riddell Bogdan, Esq.

**FOR OFFICE USE ONLY**

RECEIPT #   ANYNDC-5124937    AMOUNT   $400.00    APPLYING IFP    JUDGE   BKS    MAG. JUDGE   TWD

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.