Case 1:14-ml-02570-RLY-TAB   Document 13848-5   Filed 07/23/20   Page 1 of 30   PageID #:
98899
Case 2:20-cv-00568-TJM-DJS   Document 1   Filed 05/21/20   Page 1 of 28

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| **ROBERT BRYANT and** | : | **COMPLAINT AND DEMAND FOR** |
| **MELISSA CASEY-BRYANT,** | : | **JURY TRIAL** |
|  | : |  |
| **Plaintiffs,** | : |  |
|  | : | **CASE NO.** <u>1:20-CV-0568 (TJM/DJS)</u> |
| **vs.** | : |  |
|  | : |  |
| **COOK INCORPORATED, COOK** | : |  |
| **MEDICAL LLC (f/k/a Cook Medical Incor-** | : |  |
| **porated), and WILLIAM COOK** | : |  |
| **EUROPE ApS,** | : |  |
| **Defendants**. | : |  |
|  | : |  |

## COMPLAINT

Plaintiffs Robert Bryant and Melissa Casey-Bryant, by and through their attorneys, Martin,

Harding & Mazzotti, LLP hereby sue Defendants Cook Incorporated, Cook Medical LLC (f/k/a

Cook Medical Incorporated), and William Cook Europe ApS (collectively "Cook Defendants")

and allege the following:

## **PARTIES**

1.     Plaintiffs, Robert Bryant and Melissa Casey-Bryant (hereinafter "Plaintiffs") at all

times relevant to this action resided in, and continue to reside in, and are citizens of Rensselaer

County, New York.

2.     Plaintiff Melissa Casey-Bryant is married to Plaintiff Robert Bryant and has a loss

of consortium claim.

3.     Defendant Cook Incorporated was and is an Indiana corporation authorized and/or

doing business in the state of New York with a principal place of business located at 750 Daniels

<u>**COMPLAINT**</u> **– Page 1**

Way, Bloomington, Indiana 47404. At all times relevant to this action, Cook Incorporated designed, set specifications, manufactured, prepared, compounded, assembled, processed, promoted, marketed, distributed and/or sold the inferior vena cava filter ("IVC Filter") known as the Celect™ Vena Cava Set (hereinafter "Cook filter") to be implanted in patients throughout the United States, including New York.  At all times relevant hereto, Defendant Cook Incorporated was engaged in business in New York, has conducted substantial business activities, and derived substantial revenue from within the State of New York.  This Defendant has also carried on solicitations or service activities in New York. Defendant, Cook Incorporated has designated service of process to its registered agent for service of process, Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, Indiana 46204**.**

4.      Defendant Cook Incorporated was and is the parent company of Defendant Cook Medical Incorporated. Defendant Cook Medical Incorporated was and is an Indiana corporation authorized and/or doing business in the state of New York. At all times relevant to this action, Cook Medical Incorporated designed, set specifications, manufactured, prepared, compounded, assembled, processed, promoted, marketed, distributed and/or sold the inferior vena cava filter ("IVC Filter") known as the Celect™ Vena Cava Set to be implanted in patients throughout the United States, including New York. At all times relevant hereto, Defendant Cook Medical Incorporated was engaged in business in New York, has conducted substantial business activities, and derived substantial revenue from within the State of New York.  This Defendant has also carried on solicitations or service activities in New York.  Defendant Cook Medical Incorporation is now known as Cook Medical LLC.

**COMPLAINT** – Page 2

5.      Defendant Cook Incorporated is the parent company of Defendant Cook Medical, LLC. Cook Medical, LLC was and is an Indiana limited liability corporation authorized and/or doing business in the state of New York.  At all times relevant to this action, Cook Medical, LLC designed, set specifications, manufactured, prepared, compounded, assembled, processed, promoted, marketed, distributed and/or sold the inferior vena cava filter ("IVC Filter") known as the Celect ™ Vena Cava Set to be implanted in patients throughout the United States, including New York.  At all times relevant hereto, Cook Medical, LLC was registered to do business with the state of New York.  At all times relevant hereto, Defendant Cook Medical LLC was engaged in business in New York, has conducted substantial business activities, and derived substantial revenue from within the state of New York.  This Defendant has also carried on solicitations or service activities in New York. The registered agent for Cook Medical, LLC is Corporation Service Company, 80 State Street, Albany, New York, 12207-2543. Cook Medical, LLC may be served with process by delivering a Summons with a copy of this Complaint attached thereto, to its registered agent.

6.      Defendant William Cook Europe ApS ("Defendant Cook Europe") is a foreign corporation with its principal place of business located at Sandet 6, Bjaeverskov 4632, Denmark and regularly conducts business in the State of New York**.**  Defendant Cook Europe's business form most closely resembles that of an American corporation.  Defendant Cook Europe's headquarters is based at Sandet 6, Bjaeverskov 4632, Denmark.  Defendant Cook Europe is incorporated in and under the laws of Denmark.

**COMPLAINT** – Page 3

7.      Defendants Cook Incorporated, Cook Medical LLC f/k/a Cook Medical Incorporated, and William Cook Europe APS shall be referred to herein individually by name or collectively as the "Cook Defendants."

8.      At all times alleged herein, Cook Defendants include and included any and all parent companies, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors, and assigns and their officers, directors, employees, agents, representatives, and any and all other persons acting on their behalf.

9.      At all times herein mentioned, each of the Cook Defendants were the agents, servants, partners, predecessors in interest, and joint venturers of each other, and were at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, joint enterprise, and/or joint venture.

## JURISDICTION AND VENUE

10.      Jurisdiction is proper in this court under 28 U.S.C.§ 1332(a)(1) because the Plaintiffs and the Defendants are citizens of different states, and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of interest and costs. Venue is proper in this court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred within this judicial district and the Defendants regularly conduct business in this district.

11.      Plaintiffs Robert Bryant and Melissa Casey-Bryant are presently, and at all relevant times, residents of the County of Rensselaer and State of New York.

12.      The Court has personal jurisdiction over the Cook Defendants because at all relevant times they have conducted and continue to conduct substantial and systematic business activities in this jurisdiction related to their IVC filters, including Cook Celect ™ Vena Cava Filter

at issue in this case. Such activities include, but are not limited to: (a) sales of IVC filters, including the Cook filter at issue herein, in this jurisdiction; (b) hiring, training, and deploying employees, including managers and sales representatives, in this jurisdiction; (c) advertising and marketing of their IVC filters, including the Cook filter at issue herein, in this jurisdiction; (d) maintenance of company files and equipment relating to the Cook filter herein, in this jurisdiction; (e) payment of employee salaries in this jurisdiction; and (f) maintenance of a website directed to all states, including New York.

13. The Cook Defendants also committed tortious acts within the State of New York and caused injury to persons or property within the State of New York, including plaintiff, Robert Bryant herein, arising out of acts or omissions by the Cook Defendants outside this state at or about the time of the Plaintiff, Robert Bryant's injury, while the Cook Defendants were engaged in solicitation or service activities within the State of New York; and/or, while products, materials, or things processed, serviced, or manufactured by the Cook Defendants were used or consumed within New York in the ordinary course of commerce, trade, or use.

14. Venue is proper within this district, including for purposes of remand and trial, pursuant to 28 U.S.C. § 1391, in that the plaintiffs, Robert Bryant and Melissa Casey-Bryant reside here, and the Cook Defendants regularly conduct substantial business in this venue and are subject to personal jurisdiction in this district. Furthermore, the Cook Defendants' Cook Celect Vena Cava filter caused injury to plaintiff within the Northern District of New York. The Cook Defendants are present and doing business within this State, have continuous and systematic contacts in New York and a substantial part of the acts and/or omissions giving rise to these claims occurred within this District, including the personal injuries to Plaintiff, Robert Bryant.

**COMPLAINT** – Page 5

## GENERAL FACTUAL ALLEGATIONS

15.     Plaintiffs brings this case against the Cook Defendants because of the serious, life-threatening injury plaintiff, Robert Bryant has suffered as a result of the Cook Defendants' surgically implanted medical device, the Cook Celect filter, that was implanted by Jonathan Mishkin, M.D. at St. Peter's Hospital in Albany, New York on or about October 29, 2013.

16.     Cook Defendants design, research, develop, manufacture, test, market, advertise, promote, distribute, and sell IVC filters, which are marketed and sold as both permanent and retrievable devices, purportedly to prevent recurrent pulmonary embolism. One such product is the Cook Celect IVC filter at issue in this case.

17.     Cook Defendants sought Food and Drug Administration ("FDA") clearance to market the Cook Celect filter device and/or its components under Section 510(k) of the Medical Device Amendment.

18.     On or about April 20, 2007, Defendants obtained FDA clearance to market the Cook Celect filter under Section 510(k) of the Medical Device Amendment.

19.     Section 510(k) allows marketing of medical devices if the manufacturer claims the device is substantially equivalent to other legally marketed predicate devices, without formal review of the safety or efficacy of said device.  The Cook Defendants claimed that the Celect filter was substantially equivalent to the Cook Gunther Tulip IVC filter, a medical device cleared by the FDA under the Section 510k process on October 18, 2000.

20.     An IVC filter, like the Cook Celect filter, is a device ostensibly designed and intended to filter blood clots (called "thrombi") that would otherwise travel from the lower portions

COMPLAINT – Page 6

of the body to the heart and lungs, resulting in a pulmonary embolism (PE). IVC filters are marketed as being safe to implant, either temporarily or permanently, within the vena cava.

21.     The inferior vena cava is a vein that returns blood to the heart from the lower portions of the body. In certain people, and for various reasons, thrombi travel from vessels in the legs and pelvis, through the vena cava and into the heart and lungs. These thrombi can develop in the deep leg veins. This condition is called "deep vein thrombosis" or DVT. If the thrombi reach the lungs they are considered "pulmonary emboli" or PE.

22.     The Celect filter is a retrievable filter and is alleged by Cook as being substantially similar to the Cook Defendants' Gunther Tulip filter, its predicate device.

23.     The Celect filter has four (4) anchoring legs, or struts, for fixation within the IVC and eight (8) independent secondary struts claimed by Cook to improve self-centering and clot trapping.

24.     On or about October 29, 2013, Plaintiff, Robert Bryant was implanted with a Cook Celect filter at St. Peter's Hospital in Albany, NY. The Cook Celect filter placed in Plaintiff was marketed and sold as appropriate for use as either a retrievable or permanent filter.

25.     On or about June 10, 2019, Plaintiff, Robert Bryant underwent a computerized to-mography scan ("CT scan") of his abdomen.

26.     The June 10, 2019 CT scan revealed that Plaintiff, Robert Bryant's Cook Celect IVC filter had struts perforating the wall of the inferior vena cava, placing sharp metal in very close proximity to his vital organs and blood vessels.

27.     Plaintiff, Robert Bryant is at risk for future progressive perforations by the Celect filter which could further injure adjacent organs, blood vessels, and structures, as well as fracturing

**COMPLAINT** – Page 7

of the IVC filter and migration of the Celect filter or pieces thereof. The Plaintiff faces numerous health risks, including the risk of death. Plaintiff will require ongoing medical care and monitoring for the rest of his life. It is unknown if the filter can be retrieved by any means other than an open surgical procedure.

28.     Plaintiff, Robert Bryant's injury was inherently undiscoverable or objectively verifiable such that, despite Plaintiff's reasonable diligence, he did not discover his injury until he was told of the results of his CT scan.

29.     At all times relevant hereto, the Cook Celect filter was widely advertised and promoted by the Cook Defendants as safe and effective for prevention of recurrent pulmonary embolism.

30.     At all times relevant to this complaint, the Cook Defendants knew or should have known that the Cook Celect IVC filter was defective and knew that defect was attributable to the design's failure to withstand the normal anatomical and physiological loading cycles exerted in vivo.

31.     The Cook Defendants failed to disclose to physicians, patients, or Plaintiffs that its retrievable IVC filters, including the Cook Celect filter, were subject to perforation through the IVC wall, fracture, and migration or the appropriate degree of risk of perforation and damage to the vena cava wall and surrounding organs, blood vessels, and structures.

32.     At all times relevant hereto, the Cook Defendants continued to promote Cook's retrievable IVC filters, including the Cook Celect filter, as safe and effective even though the clinical trials that had been performed were not adequate to support long- or short-term safety or efficacy.

**COMPLAINT** – Page 8

33.     Cook Defendants concealed the known risks and failed to warn of known or scien-tifically knowable dangers and risks associated with the Cook retrievable IVC filters, including the Cook Celect filter, as aforesaid.

34.     The failure of the Cook filter is attributable in part to the fact that the Cook retriev-able IVC filters, including the Cook Celect filter, suffer from a design defect causing the filters to be unable to withstand the normal anatomical and physiological loading cycles exerted in vivo.

35.     At all times relevant hereto, the Cook Defendants failed to provide sufficient warn-ings and instructions that would have put Plaintiffs and the general public on notice of the dangers and adverse effects caused by implantation of the Cook  Celect filter, including, but not limited to, the design's failure to withstand the normal anatomical and physiological loading cycles exerted in vivo.

36.     The Cook Celect filter was designed, manufactured, distributed, marketed, pro-moted , sold, and/or supplied by Cook Defendants and was marketed while defective due to the inadequate warnings, instructions, labeling, and/or inadequate testing in light of Cook Defendants' knowledge of the product's failure and serious adverse events.

37.     At all times relevant hereto, the officers and/or directors of the Cook Defendants named herein participated in, authorized, and/or directed the production and promotion of the aforementioned products when they knew or should have known of the hazardous and dangerous propensities of said products, and thereby actively participated in the tortious conduct that resulted in the injuries suffered by Plaintiffs.

## **FRAUDULENT CONCEALMENT**

38.     The Cook Defendants were under a continuing duty to disclose the true character, quality, and nature of the device that was implanted in Plaintiff, Robert Bryant, but instead they concealed them.  The Cook Defendants remain under a continuing duty to disclose the true character, quality, and nature of the device that was implanted in Plaintiff, Robert Bryant, but instead they continue to conceal them.  The Cook Defendants' conduct, as described in this complaint, amounts to conduct purposely committed, which they must have realized was dangerous, heedless, and reckless, without regard to the consequences or the rights and safety of Plaintiff, Robert Bryant.

## CORPORATE/VICARIOUS LIABILITY

39.     At all times herein mentioned, the Cook Defendants were agents, servants, partners, aiders and abettors, co-conspirators, and/or joint venturers, and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy, and/or joint venture and rendered substantial assistance and encouragement to each other, knowing that their collective conduct constituted a breach of duty owed to the Plaintiffs.

40.     There exists and, at all times herein mentioned, there existed a unity of interest in ownership between the Cook Defendants such that any individuality and separateness between them have ceased and these Defendants are alter egos.  Adherence to the fiction of the separate existence of these Defendants as entities distinct from each other will permit an abuse of the corporate privilege and would sanction a fraud and/or would not promote injustice.

41.     At all times herein mentioned, the Cook Defendants were engaged in the business of, or were successors in interest to, entities engaged in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting,

Case 1:14-ml-02570-RLY-TAB Document 13848-5 Filed 07/23/20 Page 11 of 30 PageID #:
98909
Case 2:20-cv-00568-JM-DVB Document 1 Filed 03/21/20 Page 11 of 28

distributing, marketing, labeling, promoting, packaging, prescribing, and/or advertising for sale, and selling products for use by the Plaintiff.  As such, each Defendant is individually, as well as jointly and severally, liable to the Plaintiffs for Plaintiff's damages.

42.     At all times herein mentioned, the officers and/or directors of the Cook Defendants named herein participated in, authorized and/or directed the production, marketing, promotion and sale of the aforementioned products when they knew, or with the exercise of reasonable care and diligence should have known, of the hazards and dangerous propensities of said products, and thereby actively participated in the tortious conduct that resulted in the injuries suffered by the Plaintiffs.

# COUNT I
## NEGLIGENCE

43.     At all times relevant to this cause of action, the Cook Defendants were in the business of designing, developing, setting specifications, manufacturing, marketing, promoting, selling, and distributing Cook IVC filters including the Cook Celect IVC filter.

44.     The Cook Defendants designed, manufactured, marketed, inspected, labeled, promoted, distributed and sold the Cook Celect filter that was implanted in Plaintiff, Robert Bryant.

45.     The Cook Defendants had a duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution and sale of Cook IVC filters, including the Celect filter, so as to avoid exposing others to foreseeable and unreasonable risks of harm.

46.     The Cook Defendants knew or reasonably should have known that the Cook Celect filter was dangerous or was likely to be dangerous when used in its intended or reasonably foreseeable manner.

47.     At the time of manufacture and sale of the Cook Celect filter (2007 until 2015), the Cook Defendants knew or should have known that the Cook Celect filter was designed and manufactured so as to present an unreasonable risk of the device tilting and/or perforating the vena cava wall.

48.     At the time of manufacture and sale of the Cook Celect filter (2007 until 2015), the Cook Defendants knew or should have known that using the Cook Celect filter in its intended use or in a reasonably foreseeable manner created a significant risk of a patient suffering severe health side effects, including, but not limited to: hemorrhage; pericardial effusion; cardiac tamponade; cardiac arrhythmia and other symptoms similar to myocardial infarction; perforations of tissue, vessels, and organs; and other severe personal injuries and diseases, which are permanent in nature, including, but not limited to, death, physical pain and mental anguish, scarring and disfigurement, diminished enjoyment of life, continued medical care and treatment due to chronic injuries/illness proximately caused by the device; and the continued risk of requiring additional medical and surgical procedures including general anesthesia, with attendant risk of life threatening complications.

49.     The Cook Defendants knew or reasonably should have known that consumers of the Cook Celect filter would not realize the danger associated with using the device in its intended use and/or in a reasonably foreseeable manner.

Case 1:14-ml-02570-RLY-TAB Document 13848-5 Filed 07/23/20 Page 13 of 30 PageID #:
98911
Case 2:20-cv-00568-JM-DUS Document 1 Filed 05/21/20 Page 19 of 28

50.    The Cook Defendants breached their duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution and sale of the Cook Celect filter in, among others, the following ways:

a.  Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the burden of taking safety measures to reduce or avoid harm;

b.  Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the likelihood of potential harm from other devices available for the same purpose;

c.  Failing to use reasonable care in manufacturing the product and producing a product that differed from their design or specifications or from other typical units from the same production line;

d.  Failing to use reasonable care to warn or instruct, including pre and post-sale, Plaintiff, Plaintiff's physicians, Plaintiff's agents or the general health care community about the Cook Celect filter's substantially dangerous condition or about facts making the product likely to be dangerous;

e.  Failing to perform reasonable pre and post-market testing of the Cook Celect filter to determine whether or not the product was safe for its intended use;

f.  Failing to provide adequate instructions, guidelines, and safety precautions, including pre and post-sale, to those persons to whom it was reasonably foreseeable would prescribe, use, and implant the Cook Celect filter;

g.  Advertising, marketing and recommending the use of the Cook Celect filter, while concealing and failing to disclose or warn of the dangers known by Defendants to be connected with and inherent in the use of the Cook Celect filter;

h.  Representing that the Cook filter was safe for its intended use when in fact, the Cook Defendants knew and should have known the product was not safe for its intended purpose;

i.  Continuing manufacture and sale of the Cook Celect filter with the knowledge that said product was dangerous and not reasonably safe;

j.  Failing to use reasonable and prudent care in the design, research, manufacture, and development of the Cook Celect filter so as to avoid the risk of serious harm associated with the use of the Cook Celect filter;

**COMPLAINT** – Page 13

k.  Advertising, marketing, promoting and selling Cook Celect filter for uses other than as approved and indicated in the product's label;

l.  Failing to establish an adequate quality assurance program used in the manufacturing of the Cook Celect filter; and,

m.  Failing to establish and maintain an adequate post-market surveillance program.

51.    A reasonable manufacturer, distributor, or seller under the same or similar circumstances would not have engaged in the aforementioned acts and omissions.

52.    As a direct and proximate result of the foregoing negligent acts and omissions by the Cook Defendants, Plaintiff has suffered a serious medical complication for which the solution and ultimate economic loss is yet to be determined.

## COUNT II
## STRICT PRODUCTS LIABILITY – FAILURE TO WARN

53.    The Cook Defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the Cook filters, including the Cook Celect filter implanted into Plaintiff, Robert Bryant, into the stream of commerce and in the course of same, directly advertised and marketed the device to consumers or persons responsible for consumers.

54.    At the time the Cook Defendants designed, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the Celect filter into the stream of commerce, the Cook Defendants knew or should have known the device presented an unreasonable danger to users of the product when put to its intended and reasonably anticipated use.  Specifically, the Cook Defendants knew or should have known at the time they manufactured, labeled, distributed and sold the Cook Celect filter that was implanted in Plaintiff, Robert Bryant, that the Cook Celect filter, *inter alia*, posed a significant and higher risk than other similar devices of

**COMPLAINT** – Page 14

device failure (fracture, migration, tilting, and perforation of the vena cava wall) and resulting serious injuries.

55.     Consequently, the Cook Defendants had a duty to warn of the risk of harm associated with the use of the device and to provide adequate instructions on the safe and proper use of the device.

56.     The Cook Defendants further had a duty to warn of dangers and proper safety instructions that they became aware of even after the device was distributed and implanted in Plaintiff.

57.     Despite their duties, the Cook Defendants failed to adequately warn of material facts regarding the safety and efficacy of the Cook IVC filters, including the Cook Celect filter, and further failed to adequately provide instructions on the safe and proper use of the device.

58.     No health care provider, including Plaintiff's, patient or patient's agent would have used the device in the manner directed, had those facts been made known to the prescribing healthcare providers and/or ultimate users of the device.

59.     The health risks associated with the device as described herein are of such a nature that ordinary consumers would not have readily recognized the potential harm.

60.     Plaintiff and Plaintiff's health care providers used the device in a normal, customary, intended, and foreseeable manner, namely as a surgically implanted device used to prevent pulmonary embolisms.

61.     Therefore, the Cook Celect filter implanted in Plaintiff, Robert Bryant was defective and unreasonably dangerous at the time of release into the stream of commerce due to inadequate warnings, labeling and/or instructions accompanying the product.

**COMPLAINT** – Page 15

Case 1:14-ml-02570-RLY-TAB Document 13848-5 Filed 07/23/20 Page 16 of 30 PageID #:
Case 2:20-cv-00568-JMV-JVS Document 1 Filed 05/22/20 Page 16 of 28
98914

62.     The Cook Celect filter implanted in Plaintiff, Robert Bryant was in the same con-
dition as when it was manufactured, inspected, marketed, labeled, promoted, distributed and sold
by the Cook Defendants.

63.     As a direct and proximate result of the foregoing negligent acts and omissions by
the Cook Defendants, Plaintiff has suffered a serious medical complication for which the solution
and ultimate economic loss is yet to be determined.

## COUNT III
## STRICT PRODUCTS LIABILITY – DESIGN DEFECT

64.     At all times relevant to this action, the Cook Defendants developed, tested, de-
signed, manufactured, inspected, labeled, promoted, distributed and sold into the stream of com-
merce the Cook IVC filters, including the Cook Celect filter implanted in Plaintiff, Robert Bryant.

65.     The Cook Celect filter was expected to, and did, reach its intended consumers with-
out substantial change in the condition in which it was in when it left the Cook Defendants' pos-
session.  In the alternative, any changes that were made to Cook filter implanted in Plaintiff, Robert
Bryant were reasonably foreseeable to the Cook Defendants.

66.     The Cook Celect filter implanted in Plaintiff, Robert Bryant was defective in design
because it failed to perform as safely as persons who ordinarily use the product would have ex-
pected at the time of use.

67.     The Cook Celect filter implanted in Plaintiff, Robert Bryant was defective in de-
sign, in that its risks of harm exceeded its claimed benefits.

68.     Plaintiff and Plaintiff's health care providers used the Cook Celect filter in a man-
ner that was reasonably foreseeable to the Cook Defendants.

**COMPLAINT** – Page 16

Case 1:14-ml-02570-RLY-TAB Document 13848-5 Filed 07/23/20 Page 17 of 30 PageID #:
98915
Case 2:20-cv-00568-JM-PVS Document 1 Filed 05/22/20 Page 17 of 28

69.     Neither Plaintiff, nor Plaintiff's health care providers could have, by the exercise
of reasonable care, discovered the device's defective condition or perceived its unreasonable dan-
gers prior to Plaintiff's implantation with the device.

70.     As a direct and proximate result of the foregoing negligent acts and omissions by
the Cook Defendants, Plaintiff has suffered a serious medical complication for which the solution
and ultimate economic loss is yet to be determined.

## COUNT IV
## STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT

71.     The Cook Defendants designed, set specifications, manufactured, prepared, com-
pounded, assembled, processed, marketed, labeled, distributed, and sold the Cook IVC filter that
was implanted into Plaintiff, Robert Bryant.

72.     The Cook Celect filter implanted in Plaintiff, Robert Bryant contained a condition
or conditions, which Defendants did not intend, at the time it left the Cook Defendants' control
and possession.

73.     Plaintiff and Plaintiff's health care providers used the device in a manner that was
reasonably foreseeable to the Cook Defendants.

74.     As a result of this condition or these conditions, the product injured Plaintiff and
failed to perform as safely as the ordinary consumer would expect when used in a reasonably
foreseeable manner.

75.     As a direct and proximate result of the foregoing negligent acts and omissions by
the Cook Defendants, Plaintiff has suffered a serious medical complication for which the solution
and ultimate economic loss is yet to be determined.

# COUNT V
# BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

76.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

77.    At all times relevant to this action, the Cook Defendants designed, researched, developed, manufactured, tested, labeled, inspected, advertised, promoted, marketed, sold distributed into the stream of commerce the Cook Celect IVC filter, including the one implanted in Plaintiff, Robert Bryant, for use as a surgically implanted device used to prevent pulmonary embolisms and for uses other than as approved and indicated in the product's instructions, warnings, and labels.

78.    At the time and place of sale, distribution, and supply of the Cook Celect filter to Plaintiff, Robert Bryant by way of Plaintiff's health care providers and medical facilities, the Cook Defendants expressly represented and warranted, by labeling materials submitted with the product, that the Cook filter was safe and effective for its intended and reasonably foreseeable use.

79.    The Cook Defendants knew of the intended and reasonably foreseeable use of the Cook Celect filter at the time they marketed, sold, and distributed the product for use by Plaintiff, Robert Bryant, and impliedly warranted the product to be of merchantable quality, and safe and fit for its intended use.

80.    The Cook Defendants impliedly represented and warranted to the healthcare community, Plaintiff and Plaintiff's health care providers, that the Cook Celect filter was safe and of merchantable quality and fit for the ordinary purpose for which the product was intended and marketed to be used.

Case 1:14-ml-02570-RLY-TAB Document 13848-5 Filed 07/23/20 Page 19 of 30 PageID #:
Case 2:20-cv-00568-JMS-DVB Document 1 Filed 03/11/20 Page 19 of 28
98917

81.     The representations and implied warranties made by the Cook Defendants were false, misleading, and inaccurate because the Cook Celect filter was defective, unsafe, unreasonably dangerous, and not of merchantable quality, when used in its intended and/or reasonably foreseeable manner. Specifically, at the time of Plaintiff's purchase of the Cook Celect filter from the Cook Defendants, through Plaintiff's physicians and medical facilities, it was not in a merchantable condition in that:

  a.  It was designed in such a manner to be prone to an unreasonably high rate of failure, including fracture, migration, excessive tilting, causing thrombosis and/or perforation of the Vena Cava and/or bodily organs;

  b.  It was designed in such a manner to result in an unreasonably high rate of injury to the organs, veins and anatomy; and,

  c.  It was manufactured in a manner so that the Cook Celect filter system was inadequately, improperly and inappropriately prepared and/or finished, and prone to an unreasonably high rate of failure and/or causing the device to fail.

82.     Plaintiff and Plaintiff's health care providers reasonably relied on the superior skill and judgment of the Cook Defendants as the designers, researchers and manufacturers of the product, as to whether the Cook Celect filter was of merchantable quality, safe and fit for its intended use and also relied on the implied warranty of merchantability and fitness for the particular use and purpose for which the Cook Celect filter was manufactured and sold.

83.     The Cook Defendants placed the Cook Celect filter into the stream of commerce in a defective, unsafe, and unreasonably dangerous condition, and the product was expected to and did reach Plaintiff, Robert Bryant without substantial change in the condition in which the Cook Celect filter was manufactured and sold.

84.     The Cook Defendants breached their implied warranty because their Cook Celect filter was not reasonably fit for its intended use and purpose.

**COMPLAINT** – Page 19

Case 1:14-ml-02570-RLY-TAB Document 13848-5 Filed 07/23/20 Page 20 of 30 PageID #:
98918
Case 2:20-cv-00568-JM-DUS Document 1 Filed 05/21/20 Page 20 of 28

85.     As a direct and proximate result of the Cook Defendants breaching their implied warranties, Plaintiff, Robert Bryant has suffered and will continue to suffer a serious medical complication, serious physical injuries, pain and suffering, mental anguish, medical expenses, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

## COUNT VI
## FRAUD

86.     At all times relevant to this cause of action, the Cook Defendants were in the business of designing, developing, setting specifications for, licensing, manufacturing, preparing, packaging, maintaining, labeling, compounding, assembling, processing, promoting, selling, distributing, and marketing Cook Gunther Tulip IVC filters and Cook Celect IVC filters.

87.     At the time Plaintiff, Robert Bryant was implanted the Cook Defendants developed, tested, designed, manufactured, inspected, labeled, promoted, distributed, marketed, and sold into the stream of commerce the Cook Celect IVC filter placed in his body.

88.     At all times relevant to this action, the Cook Defendants designed, researched, developed, manufactured, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce the Gunther Tulip and Celect IVC filters for use as a surgically implanted device used to prevent pulmonary embolisms and for uses other than as approved and indicated in the product's instructions, warnings, and labels.

89.     The Cook Defendants falsely and fraudulently represented to Plaintiffs, his physicians, and other members of the general public, that the Cook Celect IVC filter:

    a.  Has been proven to effectively prevent pulmonary embolism;

        b.  Was self-centering and offered efficient clot trapping;

**COMPLAINT** – Page 20

Case 1:14-ml-02570-RLY-TAB Document 13848-5 Filed 07/23/20 Page 21 of 30 PageID #:
98919
Case 2:20-cv-00568-JM-OUS Document 1 Filed 05/22/20 Page 21 of 28

    c.   Was designed to minimize the most common filter complications;

    d.   The anchors on the filter created secure, atraumatic attachments to the caval wall;

    e.   Provided enhanced retrievability giving an extended time for retrieval; and,

    f.   Could safely stay in place permanently in the body.

90.     In the Clinical Study section of the Instructions for Use provided to the physicians who were implanting the Cook Celect IVC filter, including the filter implanted in the Plaintiff, Robert Bryant, the Cook Defendants states a clinical study involved a 74 patient cohort, with follow-up conducted at 1 month (60 of 69 possible patients), 3 months (50 of 58 possible patients) and 6 months (37 of 41 possible patients) consisting of clinical exam and imaging by X-ray and duplex ultrasound, no device related major adverse events (defined as hemorrhage, perforation, death, occlusion, filter fracture or significant filter migration) occurred.

91.     The representations by the Cook Defendants were, in fact, false. The true facts were that the Cook Celect IVC filter is not safe for long term/permanent surgical implantation for said purposes, it has not been proven the filter effectively prevents pulmonary embolism; the filter presents a high risk of perforation through the caval wall, the filter has a high risk for fracture, and the filter is not safe for permanent placement in the body. In the clinic study that was presented to physicians through the instructions for use, the IFU gives a false sense of safety by reporting on a subset of OUS patients regarding high rates of successful retrieval rates and no complications, which has been shown to be incorrect. The retrieval rates listed give a false sense of safety when the OUS study did not address safety, and falsified complication and perforation rates. The Celect filter was and is, in fact, dangerous to the health and body of Plaintiff, Robert Bryant.

**COMPLAINT – Page 21**

92.     When the Cook Defendants made the aforesaid representations, and others, they knew them to be false, and those representations were made by the Cook Defendants with the intent to defraud and deceive Plaintiff and his physicians, and with the intent to induce Plaintiff and his physicians to act in the manner herein alleged, *i.e.*, to use the Cook Celect IVC filter in surgery.

93.     As a direct and proximate result of the foregoing negligent acts and omissions by the Cook Defendants, Plaintiff has suffered a serious medical complication for which the solution and ultimate economic loss is yet to be determined.

## COUNT VII
## NEGLIGENT MISREPRESENTATION

94.     At all times relevant to this cause, and as detailed herein, the Cook Defendants negligently provided Plaintiff, Plaintiff's health care providers, and the general medical community with false or incorrect information, or omitted or failed to disclose material information concerning Cook IVC filters and the Cook Celect filter; including, but not limited to, misrepresentations relating to the safety, efficacy, failure rate and approved uses of the Cook IVC filter.

95.     The Cook Defendants falsely represented to Plaintiff, his physicians, and other members of the general public, that the Cook Celect IVC filter:

        a.   Was proven to be hemodynamically effective;

        b.   Has been proven to effectively prevent pulmonary embolism;

        c.   Was self-centering and offered efficient clot trapping;

        d.   Was designed to minimize the most common filter complications;

        e.   The anchors on the filter created secure atraumatic attachments to the caval wall;

    f.   Provided enhanced retrievability giving an extended time for retrieval; and

    g.   Could safely stay in place permanently in the body.

    96.    In  the Clinical Study section of the Instructions for Use provided to the physicians who were implanting the Cook Celect IVC filter, including the filter implanted in the Plaintiff,  the Cook Defendants states a clinical study involved a 74 patient cohort, with follow-up conducted at 1 month (60 of 69 possible patients), 3 months (50 of 58 possible patients) and 6 months (37 of 41 possible patients) consisting of clinical exam and imaging by X-ray and duplex ultrasound, no device related major adverse events (defined as hemorrhage, perforation, death, occlusion, filter fracture or significant filter migration) occurred.

    97.    The representations by the Cook Defendants were, in fact, false. The true facts were that the Cook Celect IVC  filter is not safe for long term/permanent surgical implantation for said purposes, it has not been proven the filter effectively prevents pulmonary embolism; the filter presents a high risk of perforation through the caval wall, the filter has a high risk for fracture, and the filter is not safe for permanent placement in the body.  In the clinic study that was presented to physicians through the instructions for use, the IFU gives a false sense of safety by reporting on a subset of OUS patients regarding high rates of successful retrieval rates and no complications, which has been shown to be incorrect. The retrieval rates listed give a false sense of safety when the OUS study did not address safety, and falsified complication and perforation rates. The Celect filter was and is, in fact, dangerous to the health and body of Plaintiff, Robert Bryant.

    98.    The information distributed by the Cook Defendants to the public, the medical community and Plaintiff's health care providers, including reports, press releases, advertising cam-

paigns, labeling materials, print advertisements, commercial media containing material represen-
tations, was false and misleading, and contained omissions and concealment of truth about the
dangers of the use of the Cook IVC filters, including the Cook Celect Filter. The Cook Defendants
made the foregoing misrepresentations knowing that they were false and/or without reasonable
basis in fact. These materials included instructions for use and warning document that was in-
cluded in the packaging of the Cook Celect filter that was implanted in Plaintiff, Robert Bryant.

99.     The Cook Defendants' intent and purpose in making these misrepresentations was
to deceive and defraud the public and the medical community, including Plaintiff's health care
providers; to gain the confidence of the public and the medical community,  including Plaintiff's
health care providers; to falsely assure them of the quality of the Cook IVC filters, including the
Celect IVC filter and its fitness for use; and to induce the public and the medical community,
including Plaintiff's healthcare providers to request, recommend, prescribe, implant, purchase, and
continue to use Cook IVC filters, including the Cook Celect filter.

100.     In reliance upon the false and negligent misrepresentations and omissions made by
the Cook Defendants, Plaintiff, Plaintiff's health care providers and the Plaintiff's agents were
induced to, and did use the Cook Celect filter, thereby causing Plaintiff to sustain severe personal
injuries.

101.     The Cook Defendants knew and had reason to know that Plaintiff, Plaintiff's health
care providers, and the general medical community did not have the ability to determine the true
facts intentionally and/or negligently concealed and misrepresented by the Cook Defendants, and
would not have prescribed and implanted same, if the true facts regarding the device had not been
concealed and misrepresented by the Cook Defendants.

**COMPLAINT** – Page 24

Case 1:14-ml-02570-RLY-TAB   Document 13848-5   Filed 07/23/20   Page 25 of 30 PageID #:
98923
Case 2:20-cv-00568-JM-DUS   Document 1   Filed 03/21/20   Page 25 of 28

102.     The Cook Defendants had sole access to material facts concerning the defective

nature of the product and its propensity to cause serious and dangerous side effects in the form of

dangerous injuries and damages to persons who are implanted with the Cook filter.

103.     At the time Cook Defendants failed to disclose and misrepresented the foregoing

facts, and at the time Plaintiff, Robert Bryant used the Cook Celect filter, Plaintiff, Plaintiff's

health care providers and the Plaintiff's agents were unaware of said Cook Defendants' negligent

misrepresentations and omissions.

104.     Plaintiff, Plaintiff's health care providers, the Plaintiff's agents and general medical

community reasonably relied upon misrepresentations and omissions made by the Cook Defend-

ants where the concealed and misrepresented facts were critical to understanding the true dangers

inherent in the use of the Cook Celect filter.

105.     Plaintiff, Plaintiff's health care provider's and Plaintiff's agents' reliance on the

foregoing misrepresentations and omissions by Cook Defendants' were the direct and proximate

cause of Plaintiff's injuries as described herein.

## COUNT VIII
## LOSS OF CONSORTIUM

106.     Plaintiffs re-allege and incorporate by reference each and every allegation

contained in the foregoing paragraphs as though fully set forth herein.

107.     Plaintiff, Melissa Casey-Bryant is, and at all times relevant was, the spouse

of Plaintiff, Robert Bryant.

108.     As a result of the actions and/or omissions of the Defendants set forth above,

Plaintiff, Melissa Casey-Bryant, has been deprived of the services, assistance, aid, society, love, affection, companionship, and conjugal relationship of her spouse, Plaintiff, Robert Bryant and is entitled to recover for her loss of consortium.

109.     The damages of Plaintiff, Melissa Casey-Bryant, exceed the minimum amount required for the jurisdiction of this Court.

# COUNT IX
# PUNITIVE DAMAGES

110.     The actions and inactions of all the Defendants, and or alternatively the employees or agents of Defendants, and their predecessors-in-interest, whether taken separately, or together, were of such a character as to constitute a pattern or practice of intentional wrongful conduct and/or malice resulting in the injury and damages of Plaintiff, Robert Bryant.

111.     More specifically, Defendants, or alternatively the employees or agents of Defendants, and their predecessors-in-interest, consciously and/or deliberately concealed risks associated with their product and nevertheless proceeded with conscious indifference to the rights, safety, and welfare of Plaintiff Robert Bryant by failing to act to disclose these risks to him or his healthcare professionals.

112.     Defendants are guilty of oppression, fraud, and/or malice, express or implied for which they should be held liable in punitive damages to Plaintiffs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, Robert Bryant and Melissa Casey-Bryant, demand judgment against each of the Defendants on each of the above-referenced claims and causes of action and as follows:

**COMPLAINT** – Page 26

1.      Awarding compensatory damages in excess of the jurisdictional amount, including, but not limited to past and future pain, suffering, emotional distress, loss of enjoyment of life, loss of consortium, and other non-economic damages in an amount to be determined at trial of this action;

2.      Awarding compensatory damages to Plaintiffs for past and future damages, including, but not limited to, Plaintiff's pain and suffering and for severe and permanent personal injuries sustained by the Plaintiff including health care costs and economic loss;

3.      Awarding economic damages in the form of medical expenses, out of pocket expenses, lost earnings and other economic damages in an amount to be determined at trial of this action;

4.      Punitive damages;

5.      Pre-judgment interest;

6.      Post-judgment interest;

7.      Loss of Consortium Damages;

8.      Awarding Plaintiffs' reasonable attorneys' fees;

9.      Awarding Plaintiffs, the costs and disbursements of these proceedings; and

10.     Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury as to all issues.

**COMPLAINT** – Page 27

Case 1:14-ml-02570-RLY-TAB Document 13848-5 Filed 07/23/20 Page 29 of 30 PageID #:
98926
Case 2:20-cv-00568-JM-DVS Document 1 Filed 05/22/20 Page 29 of 28

Dated:      May 21, 2020

                                     Respectfully Submitted,

                                     *s/Rosemarie Riddell Bogdan*
                                     Rosemarie Riddell Bogdan, Esq.
                                     NDNY Bar Roll Number: 506409
                                     NYS Bar Roll Number:  380552
                                     MARTIN, HARDING & MAZZOTTI, LLP
                                     1222 Troy-Schenectady Road
                                     P.O. Box 15141
                                     Albany, NY  12212-5141
                                     Telephone: (518) 862-1200
                                     rosemarie.bogdan@1800law1010.com

                                     *Attorneys for Plaintiffs*

**COMPLAINT** – Page 28

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Robert Bryant and Melissa Casey-Bryant

**(b)** County of Residence of First Listed Plaintiff    Rensselaer County, NY
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Martin, Harding & Mazzotti, LLP
1222 Troy-Schenectady Road, P.O. Box 15141
Albany, NY 12212-5141 (518-862-1200)

## DEFENDANTS

Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS

County of Residence of First Listed Defendant    Monroe County, IN
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government Plaintiff

☐ 2   U.S. Government Defendant

☐ 3   Federal Question *(U.S. Government Not a Party)*

☒ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☒ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation - Transfer    ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1332

Brief description of cause:
Cook Incorporated IVC Filter Litigation

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE   Tim A. Baker    DOCKET NUMBER   1:14-ml-2570-RLY-TAB

DATE   05/21/2020

SIGNATURE OF ATTORNEY OF RECORD
/s/ Rosemarie Riddell Bogdan, Esq.

**FOR OFFICE USE ONLY**

RECEIPT #   ANYNDC-5125011    AMOUNT   $400.00    APPLYING IFP    JUDGE   TJM    MAG. JUDGE   DJS

Case No.: 1:20-CV-0568

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**  **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**  **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**  **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**  **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked**.** (See Section III below**; NOTE: federal question actions take precedence over diversity cases.**)

**III.**  **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**  **Nature of Suit.**  Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**  **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**  **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.**  **Requested in Complaint.**  Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**  **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.