# IN THE UNITED STATES DISTRICT COURT SOUTHERN DISTRICT COURT OF INDIANA INDIANAPOIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC, IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | **Case No.** 1:14-ml-2570-RLY-TÃB<br><br>**MDL No. 2570** |

This Document Relates to:

Betty McCoy: 1:19-cv-04599

Betty McCoy 1:19-cv-06101

### **PLAINTIFF BETTY MCCOY'S RESPONSE TO COOK DEFENDANTS' MOTION TO DISMISS DUPLICATIVE FILINGS**

Plaintiff Betty McCoy ("Plaintiff") hereby submits this Response in Opposition to Cook Defendants' Motion to Dismiss Duplicative Filings and request that Defendants' Motion be denied in part. As articulated below, for these reasons, Plaintiff respectfully requests the Court to either order that Plaintiff's home jurisdiction choice-of-law apply in this limited circumstance to the September, 30 2020 direct filed MDL case (1:19-cv-04599) or the Court order that the case transferred from the Western District of North Carolina be allowed to use the original filing date of the direct filed case under the *relation back doctrine*, or the Court remand the transferred case from the Western District of North Carolina back to the

1

Western District of North Carolina for that court to decide the outcome of this case.

## INTRODUCTION

Plaintiff concedes that a litigant cannot have two separate actions involving the same subject matter. Plaintiff has not and has never had any intention to have both cases continue, however the Plaintiff wanted to ensure this court and the Defendants had knowledge that she had no intention of waiving her Lexecon rights nor did she believe that Indiana law and not North Carolina law governed her directly filed case in September 2019. She instead believed a direct filing order was in place. After the court's ruling on October 29, 2019 Plaintiff took immediate action to ensure that North Carolina law was the governing law of her case. She found local counsel in North Carolina and by October 30, 2019, her case was filed in the Western District of North Carolina. Plaintiff should not be penalized for relying on the previous entries of this court and Defendants as though there was not an expressed direct filing order issued in this case. The law of case doctrine dictates that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating "Corp.*, 486 U.S. 800, 816 (1988) (quoting *Ariz. V. Cal.*, 460 U.S. 605, 618 (1983)); *Jarrad v. CDI Telecommm'ns Inc.*, 408 F.3d 905, 911-12 (7th Cir. 2005). Just as this court has already held the "decision to apply Indiana law could adversely affect Plaintiffs from states with longer statutes of limitations than Indiana," the Plaintiff in this case would be adversely affected if the court did not provide the respectfully requested relief below. For the reasons set forth below the court should deny Defendant's motion in part and grant Plaintiff one of the reliefs she seeks in the interest of justice.

## STATEMENT OF RELEVANT FACTS

**January 2015**, Cook agrees to the Short Form Complaint, which requires plaintiffs to list the District Court and Division that is proper absent direct filing. [Dkt. 355, pg. 3]

**January 30, 2015,** The PSC files the Master Complaint, which states: "For the purposes of remand and trial, venue is proper pursuant to 28 U.S.C. §1391 in the federal judicial district of each Plaintiff's state of residence."

**April 17, 2015**, CMO 3 states, "[a]s to cases directly filed in the Southern District after the entry of this Order and the entry of an order in MDL 2570 ***permitting direct filing***, the Short Form Complaints will not name additional Cook Entities. [Dkt. 353 at 1]

**April 17, 2015,** CMO 5 was issued which specifically states, "All cases transferred to this court by the Judicial Panel on Multidistrict Litigation, including those cases identified in the original Transfer Order and those subsequently transferred as tag along actions; ***and all cases directly filed in or removed to this MDL***." [Dkt. 335 at 1]

**February 2, 2016**, Cook filed a Brief entitled *The Cook Defendant's Brief in Support of Motion for Summary Judgement* in *Graham.* In this brief Cook specifically argued that "originating" jurisdiction's choice of law rule a case in this MDL because it was "direct filed." "When a case based on diversity is part of an MDL and is directly filed in the MDL forum as the result of a direct filing order, courts have found that the 'better approach is to treat foreign direct filed cases [i.e., cases originating outside of this Court's jurisdiction but filed directly into the MDL] as if they were transferred from a judicial district sitting in the state wagered the case originated.' In re Yasmin, 2011 U.S. Dist. LEXIS 39820, at *15, *18 (S.D. Ill. April 11, 2011)." (Dkt. 1051, p.5)

**March 27, 2017,** Cook again argues for application of the "originating" jurisdictions' choice of law rule to cases in this MDL, on the basis that they were "direct filed": "However, where a case based on diversity is part of an MDL and is directly filed in the MDL forum as the result of a direct filing order, as occurred with the six cases here, courts have found that the 'better approach is to treat foreign direct filed cases [i.e., cases originating outside of this Court's jurisdiction but filed directly into the MDL] as if they were transferred from a judicial district sitting in the state wagered the case originated.' In re Yasmin, 2011 U.S. Dist. LEXIS 39820, at *15, *18 (S.D. Ill. April 11, 2011)." (Doc. 4188-1, at ECF p. 9193) (bracketing in original). (Quoting Dkt. 12609 at 7).

**May 31, 2017** ("Entry on Motion for Judgment on the Pleadings Based on the Statute of Repose" in Sales-Orr): The Court applies the "originating" jurisdiction's choice-of-law rule, referencing a prior "direct filing order" in this proceeding: "This Motion addresses those Plaintiffs, whose cases originated outside of this court's judicial district but were directly filed in this MDL forum ("foreign direct filed cases"), pursuant to the court's direct filing order. … In 2011, the Southern District of Illinois addressed this issue and held that 'the best approach is to treat foreign direct filed cases as if they were transferred from the judicial district sitting in the state where the case originated.' In re Yasmin, No. 3:09-md-2100-DRH-PMF, MDL No. 2100, 2011 U.S. Dist. LEXIS 39820, at *18 (S.D. Ill. April 11, 2011). The court adopts this approach as it is in keeping with the rule that the transferee

3

court applies the law of the state in which the transferor court is located. … As noted by a sister district court, 'it would be an odd result to subject plaintiffs to [Indiana] law simply because they took advantage of the direct filing procedure—a procedure that provides benefits to all parties and preserves judicial resources.'" (Filing No. 4918, at ECF p. 11508-11509 (citing, In re Bausch & Lomb, Inc., Nos. 2:06- cv-2659-DCN and 2:06-cv-2716-DCN, MDL No. 1785, 2007 WL 3046682, at *3 (D.S.C. Oct. 11, 2007)). *Id.*

**September 30, 2019**, Plaintiff filed her first Short Form Complaint in the MDL (Docket No. 1, Case No. 1:19-cv-04599). In her Short Form Complaint, Plaintiffs "incorporate The Master Complaint in MDL No. 2570 by reference (Document 213)." Plaintiff was implanted with Defendants' defective device on December 30, 2013 and suffered injuries while residing in North Carolina. *Id.* at ¶¶4-6 and 11. Plaintiffs alleged the following causes of action:(1) Strict Products Liability – Failure to Warn; (2) Strict Products Liability – Design Defect; Negligence; (4) Negligence Per Se; (5) Breach of Express Warranty; (6) Breach of Implied Warranty; (7) Violations of North Carolina's Consumer Fraud and Unfair and Deceptive Trade Practices; (8)) Punitive Damages. *Id.* at 3-4, ¶14.

Plaintiff filed her case at this time even though records were still pending to preserve the Plaintiff's statute of limitations. Plaintiff could not recall at the time of filing on what date she was told her filter perforated her GI Tract, pancreas, and her duodenum but did recall it was sometime in October 2016.

**October 29, 2019,** Plaintiff submitted her first PPF with records that indicated partial information regarding her injuries.

**October 29, 2019,** the court ordered that all foreign filed cases filed directly into the MDL were not treated as if there was a direct filing order. [Dkt. 12256]

**October 30, 2020**, Plaintiff's counsel reviewed new records stating the Plaintiff had a CT scan on or around October 22, 2016 revealing her injuries. (Exhibit A)

**October 30, 2019**, due to the court's order and Plaintiff's desire to have North Carolina choice of law rules apply, Plaintiff filed her case again in the Western District of North Carolina to ensure that North Carolina law applied to her case.

**December 3, 2019**, Plaintiff's second filed case was transferred through the JPML to the MDL (1:19-cv-06101).

**December 5, 2019**, Plaintiff's counsel received additional records confirming when Plaintiff learned of her injuries from her doctor was on or about October 29, 2016. (Exhibit B)

**December 20, 2019**, Plaintiff submitted her second PPF with all pertinent medical records described above.

**January 2, 2020**, Plaintiff Steering Committee filed its First Motion for Reconsideration of the Court's October 29, 2019 ruling. [Dkt. 12609]

**February 24, 2020**, the Court modified its October 29, 2019 decision such that foreign cases filed between May 31, 2017 and October 29, 2019 shall be treated as if a direct filing order had been entered. [Dkt. 12931 at 4]

**March 2, 2020**, Plaintiff notified Cook via email that she would dismiss the North Carolina transferred case due the duplicative filings without prejudice and pursuant to the Court's February 24, 2020 order. (Exhibit C)

**March 17, 2020**, Cook responded and stated it did not agree to dismissal of the duplicative filing. *Id.*

**March 18, 2020**, Plaintiff sent another email to Cook clarifying Plaintiff's stance and requesting for a joint agreement to dismiss the second filed case. *Id.*

**May 6, 2020**, Cook sent a follow up email to confirm they would not agree to dismissing the second filed case.

**May 29, 2020**, the Court ruled that "…foreign cases filed between May 31, 2017 and June 13, 2019 shall be treated as though a direct filing order had been entered at the time of their filing and shall be governed by the choice-of-law rule of the Plaintiff's home jurisdiction," [Dkt. 13539]

In sum, the record contains multiple case management orders permitting and contemplating the filing of cases directly into this MDL. There were at a minimum six different occasions when a direct filing order was assumed by all parties in this MDL, whereas the June 17, 2019 ruling issued by the court was the first instance where this assumption was not made for a handful of cases in this MDL. When the court ruled on October 29, 2019, that there was not a direct filing order in the entire MDL the Plaintiff took immediate action to preserve her choice of law under North Carolina law. Plaintiff's actions dictate when she was put on notice that there was not direct filing order and should not be adversely affected because she has gone to great lengths to preserve her rights under her home jurisdiction choice of law.

## ARGUMENT
**It is Already Well Established That In Prior Briefing Before this Court, Cook Conceded That Plaintiff's Home State Choice of Law Principles Should Apply.**

On February 2, 2016, Cook moved for summary judgment in *Graham v. Cook*, Case No.

5

1:15-cv-764, arguing among other things the case was time-barred. [*See generally* Filing No. 1051.] Just like this case, *Graham* was not transferred to this district by the JPMDL; it was directly filed. [*See* Master Case List, p. 8.][1]

In a section of its *Graham* brief entitled "Choice of Law Analysis," Cook made clear that direct-filed cases like *Graham* are subject to the choice of law principles of their **home** forum, not the forum of the MDL court:

> When a case based on diversity is part of an MDL and is directly filed in the MDL forum as the result of a direct filing order, courts have found that the "better approach is to treat foreign direct filed cases [i.e., cases originating outside of this Court's judicial district but filed directly into the MDL] as if they were transferred from a judicial district sitting in the state where the case originated." *In re Yasmin*, 2011 U.S. Dist. LEXIS 39820, at *15, *18 (S.D. Ill. April 11,

[Filing No. 1051, at ECF p. 4252.] Cook went on: "Applying this law to the present case leads to the application of Kansas law." [*Id*., at ECF p. 4253.]

The doctrine of judicial estoppel provides guidance here. As Justice Ginsburg explained: "judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quotation omitted). Judicial estoppel protects the integrity of the judicial process by preventing parties from "playing fast and loose with the courts," and is "intended to prevent improper use of judicial machinery." *Id*. at 750 (quotations omitted). This is precisely what Cook attempts to do here. Given its prior position on choice of law, the Court should

---

[1] Given that this volume of the Master Case List spans more than 300 pages, Plaintiff does not attach it here. It is located on the Court's website at the following link:
https://www.insd.uscourts.gov/sites/insd/files/MDL%202570%20Schedule%20A.pdf

reject Cook's contrary position out of hand.

**Seventh Circuit precedent holds that foreign cases filed directly in an MDL are treated as having originated <u>outside</u> of the MDL district. Therefore, neither Indiana choice of law rules nor Indiana law apply to these Plaintiffs.**

In *Dobbs v. Depuy Orthopedics, Inc.,* 842 F.3d 1045 (7th Cir. 2016), a plaintiff from Illinois direct-filed his case in the Northern District of Ohio as part of an MDL. The case was later transferred from the Ohio MDL to the Northern District of Illinois. Despite its direct filing, the Seventh Circuit held that the case originated in Illinois and therefore Illinois choice of law rules applied. *Id.* at 1048.

> Dobbs's claim . . . was filed in the Northern District of Ohio only because the DePuy multidistrict litigation was already in progress there. Dobbs's complaint stated that the Northern District of Illinois was the appropriate venue absent the multidistrict litigation. That advises treating the Northern District of Illinois as the original venue.
>
> In fact, district courts in our circuit have taken that approach: **foreign cases filed directly in a district court as part of ongoing multidistrict litigation are treated as having originated outside of that district.** We ratify that approach here and apply Illinois's choice-of-law rules.

*Id.* at 1048 (emphasis added) (citing, *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 977 F. Supp. 2d 885, 888-89 (N.D. Ill. 2013), and *In re Yasmin and Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 3:09-MD-02100-DRH, 2011 WL 1375011, at *5 (S.D. Ill. Apr. 12, 2011)).

The *Watson Fentanyl* decision—cited with approval by the Seventh Circuit in *Dobbs*—involved another case filed directly in an MDL court sitting in the Northern District of Illinois. 977 F. Supp. 2d at 886. The case concerned an Ohio resident who died in Ohio after using a fentanyl patch that was prescribed, purchased, and administered in Ohio. The Northern District of Illinois MDL court applied Ohio law and rejected attempts to apply Illinois law — even Illinois' choice of law rules.

> [T]he prevailing rule in this situation is that in a case that was directly filed in the MDL transferee court but that originated elsewhere, the law (including choice of law rules) that applies is the law of the state where the case originated. The Court agrees with the cases just cited and concludes that the choice of law rules that apply are those of the state where the case originated.

*Id.* at 888 (internal citations omitted).

The *Watson Fentanyl* MDL court then went on to analyze the meaning of the term "originated":

> **[A] direct-filed case in an MDL proceeding is considered to have originated in the state where the plaintiff purchased and used the prescribed product.** That is how the place of filing is determined in [the] overwhelming majority of product liability cases, and it is a reasonable approach to determining the choice of law issue that has been presented.

*Id.* at 889 (emphasis added). Because the plaintiff was prescribed and used the fentanyl patch at his Ohio residence, the Illinois MDL court ruled that Ohio law should apply to this foreign direct filed case.[2]

*In re Yasmin*—cited with approval by the *Dobbs* and *Watson Fentanyl* courts **and Cook**[3]—involved numerous cases that originated outside of that court's judicial district and that were filed directly in the Southern District of Illinois MDL. Similar to Cook's faulty reasoning, the *Yasmin* plaintiffs argued that because the court was sitting in diversity in Illinois, Illinois was the proper forum and Illinois choice of law principals should control. *Id.* Judge Herndon rejected that argument and emphasized in bold type: **"Illinois choice of law principals do not control simply because this MDL Court is sitting in diversity in Illinois."** *Id*. (emphasis in original). Judge Herndon further wrote:

> The Court concludes that the better approach is to treat foreign direct filed cases as

---

[2] Similar to the approach taken by the Seventh Circuit, the *Watson Fentanyl* MDL court also noted that it could have applied California choice of law rules, because Plaintiffs' complaint suggested that they would have filed their lawsuit in California. But even applying California choice of law rules, the Illinois MDL court concluded that Ohio law should apply and **not** the law of the MDL forum. *Id.* at 889-90.

[3] Filing No. 1051, at ECF p. 4252.

8

> if they were transferred from a judicial district sitting in the state where the case originated.  For purposes of this analysis, the Court considers the originating state to be the state where the plaintiff purchased and was prescribed the subject drug.  Thus, for a foreign direct filed member action involving a plaintiff that purchased and was prescribed the subject drug in Tennessee, the Court will treat that plaintiff's claims as if they were transferred to this MDL from a district court in Tennessee.

*Id.,* at *6. *See also In re Fresenius Granuflo/Naturalyte Dialysate Prods. Liab. Litig.,* 76 F. Supp. 3d 294, 303 (D. Mass. 2015). ("The home forum designation of the direct filing plaintiffs is the best evidence I have of what these plaintiffs would have done absent direct filing.  Just as Mississippi plaintiffs would have had a choice between at least two proper forums in the absence of direct filing, so too do they have such an option with the direct filing procedure.  I will therefore consider the forum that the direct filing plaintiffs designated on their short form complaints as the originating forum for the choice of law analysis."); *Wahl v. General Electric Co.,* 983 F.Supp. 2d 937, 943 (M.D. Tenn. 2013).

Thus, there are two different approaches for examining choice of law issues for direct filed cases in this MDL: (1) focus on the court designated by the plaintiff in the Short Form Complaint as the place of proper venue as discussed in the *Dobbs, In re Fresenius Granuflo,* and *Wahl* cases (and as Cook already argued); or (2) focus on the place where the plaintiff received the IVC filter prescription and treatment as held in the *In re Watson Fentanyl, In re Yasmin*, and *In re Avandia* cases. Under both approaches, neither Indiana choice of law rules nor Indiana law apply to these cases. It is undisputed that Plaintiff's Short Form Complaint unambiguously listed venue choices—just as the plaintiff in *Graham*—at locations outside of Indiana. **Plaintiff stated in her first MDL directly filed case that the Western District of North Carolina was proper venue (SFC at 7).** Moreover, Plaintiff purchased and was prescribed **her** IVC filter outside of Indiana in North Carolina. Therefore, it is only feasible that she believed there was a direct filing order as of September 30, 2019.

9

### Cook's Arguments, Choice of Law, and Assumptions are Not Applicable to the Plaintiff's case and Should Not be Taken into Consideration.

Cook's arguments are misguided and have no bearing on this Plaintiff's case or claims. As already stated above at length, Plaintiff's only intention in filing on October 30, 2019 was to preserve her choice of law rule of the Plaintiff's home jurisdiction, North Carolina, as was intended with the first filing in this MDL. As has been stated consistently Plaintiff tried to resolve this issue back in March of this year and dismiss the second filed case but Defendant would not agree to the stipulations surrounding it.[4] There has never been a desire or an intention to maintain both actions by the Plaintiff. The Defendant is trying to dictate Plaintiff's intention in filing two cases and cannot unilaterally decide which filed complaint Plaintiff should dismiss. Plaintiff should not be punished for being proactive. The authority cited by the Defendants are not applicable to this unique situation. Unlike in Telamon Corporation v. Charter Oak Fire Insurance Co., 2016 WL 67297 (SD Ind., 2016), Plaintiff is not suing the Defendants under different causes of actions in two separate filings due to the damages caused the IVC Filter. The Plaintiff agrees with Defendant's claim that the claims in both filings are similar and has never argued this unsubstantiated claim.

Likewise, in *Serlin v. Arthur Andersen & Company,* 3 F.3d 221 (Seventh Cir., 1993) cited by Defendants, a plaintiff filed the same complaint in the same jurisdiction twice (Northern District of Illinois) because service of the first complaint was untimely. In this case, Plaintiff filed her case in the MDL, with the belief that there was a direct filing order, however after the October 29, 2019 ruling to preserve her right to home jurisdiction choice of law, Plaintiff filed in a *different jurisdiction and court* to preserve her right for North Carolina law to apply to her

---

[4] Exhibit C

case.

Additionally, in McCracken v. Grand Victoria Casino & Resort, 2002 WL 31521165 (SD Ind., 2002) cited by defendants is an admiralty matter in which the same plaintiffs commenced two separate actions seeking relief under separate theories (one in contract and one in tort) arising out of the same operative facts. The Court dismissed the second action but consolidated both claims into the first filed action as they arose out of the same facts. Once again, that is not the situation at bar. [quoting Dkt. 14021 at 17].

Finally, Defendants cite Ridge Gold Standard Liquors v. Joseph E. Seagram, 572 F. Supp. 1210 (ND Ill, 1983). However, this case too is inapplicable to the Plaintiff's unique situation. That case involved two "sister" retail stores suing the same liquor wholesaler in two separate actions, requesting the same relief out of the same antitrust action. The court ordered that if one action prevailed there would be no reason for a second action to go forward in front of a different judge in the same district court and therefore dismissed the second filing as repetitive. [ Dkt. 14021 at 18].

This issue is simple. While Plaintiff cannot maintain two separate cases arising out of the same action against the same Defendant, Plaintiff should not be in a position that choosing one will result in a violation of the statute of limitations under these circumstances. Plaintiff's case is different and does not present the same situation as any of the other times Defendants have moved to dismiss duplicative filings. [Dkt. 13956 at 3] In most, if not all, of those situations the plaintiffs had multiple firms representing him/her and the multiple filings was due to a dual representation situation. That is not the case the for Plaintiff here. This Plaintiff just like every other plaintiff in this MDL has the right to designate her preferred home jurisdiction for choice-of-law and trial purposes. [*Id* at 20]. Even before the Court clarified which

11

direct filed actions had an assumed direct filing order, the Plaintiff tried to preserve her ability to use her home jurisdiction. The Plaintiff again tried to dismiss the second filed case after the court's February 24, 2020 Order, however once the court amended this order on May 29, 2020 the Plaintiff's case was put in a strange predicament. To dismiss the first filed case would not preserve the initial September 30, 2019 filing date, when the Plaintiff assumed there was a direct filing order and would preserve the Plaintiff's Statute of Limitations under Plaintiff's home jurisdiction choice-of-law, North Carolina. To dismiss the second filed complaint, filed outside of the MDL in the Western District of North Carolina would not preserve Plaintiff's right to her home jurisdiction choice-of law, under the court's current ruling. Therefore, because the Plaintiff acted properly and promptly to preserve her statute of limitations, Plaintiff should be granted the relief she seeks especially when according to the court's February 24, 2020 order the Plaintiff's first filed case was under a presumed direct filing order. .

**The First Case, Directly Filed in the MDL, was Filed before the Court's October 29, 2019 Direct Filing Order and by Plaintiff's Actions Dictate that She Believed There was a Direct Filing Order and the Validates the Court's Assumptions Dictated in its February 20, 2020 Ruling.**

Plaintiff believed there was a direct filing order until October 29, 2019. Plaintiff believed that her case as of September 30, 2019 would be governed by her home jurisdiction choice of law, North Carolina law. Plaintiff through her counsel assumed a direct filing order was in place. At best and as the Court stated there was "confusion as to whether there was a direct-filing order filed in this case permitting foreign direct filed cases to be treated as if they were transferred to this district by the Judicial Panel on Multi-District Litigation ("JPML"). The Plaintiff's actions confirm this confusion. To subject the Plaintiff who direct-filed in this court during the time before the October 29, 2019 ruling "is simply not fair and contravenes the law of the case doctrine." [Dkt. 13539 at 2].

Cook will argue that the court has already made its final ruling on this matter and should not reconsider it. However, the Plaintiff is not requesting the court to reconsider its ruling overall. Nevertheless, the court on February 20, 2020 was ensuring that situations like this did not come about which is why the court dictated the timeline from May 31, 2017 to October 29, 2019. Additionally, the court stated that the "Plaintiffs had "no objection" to the court amending the cutoff date from October 29, 2019 to June 13, 2019," therefore the Plaintiff's situation was not taken into consideration by court in May. [Dkt. 13539] Additionally, as stated above the Plaintiff did not just rely on the May 31, 2017 entry to conclude that there was a direct filing order but also relied on the Short Form Complaint, Master Complaint, CMO 5, CMO 7 and *Gilbert*. Therefore, due to this confusion as the court stated on February 24, 2020, the Plaintiff should not be "penalized" for relying on these rulings/entries. Given this unusual situation the Plaintiff has proposed below three separate solutions for this unique situation.

**Plaintiff Requests the Court to Grant Relief to Plaintiff and Adopt One of Three Approaches:**

1. **The Court Order that the Plaintiff's September 30, 2019 Direct Filed Case in the MDL is Treated as if a Direct Filing Order Was Entered at the Time of Filing and Governed by the Plaintiff's "Home" Jurisdiction Choice-of-Law.**

The Plaintiff is fully aware that Indiana only has a two-year Personal Injury/ Product Liability statute of limitations with a limited discovery rule.  Codified in Ind. Code § 34-11-2-4 (a) (1) & (Ind. Code Ann. § 34-20-3-1 *Degussa Corp. v. Mullens*, 744 N.E.2d 407 (Ind. 2001)). Unlike Indiana, North Carolina has a three-year Personal Injury/ Product Liability statute of limitations with a discovery rule. (N.C. Gen. Stat. Ann. § 1-52). This is why when the court's October 29, 2019 order was issued the Plaintiff took immediate steps to try in ensure her home state choice of law dictated her case for trial purposes. As the court stated in its February 24, 2020 order, applying "Indiana law could adversely affect Plaintiffs from states with longer

statute of limitations than Indiana" like North Carolina. [Dkt. 12931 at 3]. In Plaintiff's case if Indiana law were to apply then the Plaintiff would be barred from bringing her action since her injuries were in 2016 and she filed her case in 2019. However, due to the timing of the original October 29, 2019 filing, the Plaintiff may have been time barred by possibly one day when she filed her case in the Western District of North Carolina, therefore the Plaintiff needs the court to intercede in this situation. The Plaintiff is not asking the court to hold that there ever was a direct-filing order but only that for over two years the court and the parties acted as if there was one, which extended all the way to October 29, 2019. *Id*. Plaintiff agrees that she was fully aware there was no filing order after October 29, 2019. She is not denying she did not understand the court's ruling on this date, however after the court's reconsideration on May 29, 2020 which narrowed the date range where a direct filing order was assumed the Plaintiff's case was then again put in limbo. The Defendants may argue that the Plaintiff had an opportunity to request the court to dismiss the second filing at any time, however this is not correct. If the Plaintiff had requested the dismissal of the second filing and it was granted the Plaintiff would be in worse predicament after the court's order on May 24, 2020. Again, it should be noted that the relief the Defendants request was offered by the Plaintiff in March but the Defendants denied accepting Plaintiff's offer to dismiss the second filed complaint.  Now they request it so they can have the Court dismiss the Plaintiff's case completely. This is the direct result the court feared may take place when it issued its ruling in February. Therefore, the Plaintiff respectfully requests the Court to order that in Plaintiff's case the February 24, 2020 order stands and at the time of the Plaintiff's filing there was an assumed direct filing order and the Plaintiff's home jurisdiction choice-of-law governs her case; or

    **2. The Court Can Order "In the Interest of Justice" that the *Relation Back***

14

***Doctrine* under FRCP 15(c) be Applied to the Second Case Filed in the Western District of North Carolina and Transferred Through the JCCP to the MDL, Allowing the September 30, 2019 Filing Date to the October 30, 2019 filing.**

Under the Federal Rules of Civil Procedure, a pleading may relate back for purposes of the statute of limitations to the time with the original pleading was filed. In *Anza Technology, Inc. v. Mushkin Inc.*, No. 2019-1045 (Fed. Cir. Aug. 16, 2019), the Court assessed whether claims in an amended complaint could relate back to the filing date of the original complaint. In its original complaint, Anza alleged sixteen Mushkin products infringed its '927 patent. In the later-amended complaint, Anza dropped its claims with regard to the '927 patent and instead alleged Mushkin infringed the '479 and '864 patents, also directed to dissipative ceramic bonding tools. Anza omitted ten of the original sixteen products and accused two new products. When assessing whether the claims in Anza's amended complaint could relate back to the filing of the original complaint, the Court adopted the Supreme Court's liberal notice-based understanding of Rule 15(c). It assessed "the overlap of the parties, the overlap of the accused products, the underlying science and technology, time periods, and any additional factors that might suggest a commonality or lack of commonality between the two sets of claims." Slip Op. at 16. When applied to the facts before it, the Court held, although the patents asserted in the original and amended complaints were different and addressed different bonding techniques, they still shared the same underlying technology and focused on solving the same problem by the same solution.[5] And, because the use of bonding tool tips made of dissipative material was the basis for the infringement claims in both the original and the amended complaint, the Court concluded the "aggregate of operative facts" underlying the original complaint gave notice to the

---

[5] Yang, Yieyie, Ph.D. "The Federal Circuit Adopts Liberal, Notice Based Interpretation of the Relation Back Doctrine Under Rule 15(c)" Federal Circuit IP Blog, August 26, 2019
https://www.finnegan.com/en/insights/blogs/federal-circuit-ip/the-federal-circuit-adopts-a-liberal-notice-based-interpretation-of-the-relation-back-doctrine-under-rule-15c.html (last visited August 18, 2020).

defendant of the substance of the infringement claims set forth in the amended complaint.[6] Thus, for products accused in both the original and amended complaints, the Court held the amended complaint sufficiently related back to the original complaint.[7] Even though the second complaint is not an "amended complaint" in the exact since as Defendants note the complaints are identical. The complaints name the same Defendants, assert the same claims, and asking for the same relief. [Dkt. 13956 at 2]. Unlike in *Anza Technology, Inc.* where the plaintiff dropped ten of its original ten products and added two new ones against the Defendant, in Plaintiff's case the material aspects of both complaints are the same. The Supreme Court's liberal stance should be taken in this case as well. The only difference is the choice of law applied. Under Rule 15(c) the Defendants cannot argue that they would be prejudiced by applying the relation back doctrine because under rule 15 (c)(i) the Defendants received notice of the action and will not be prejudiced in defending on the merits of the case. With leave of the court the Plaintiff will agree to dismiss the September 30, 2019 filing provided that the court order the "relation back doctrine" applies to the October 30, 2019 filing to preserve the Plaintiff's statute of limitations under North Carolina law. Defendants could argue that Plaintiff's first proposed relief could open the door for several other Plaintiffs requesting the Court to reconsider its May 29, 2020 order, although Plaintiff disagrees and believes this is an exaggerated notion, Plaintiff does admit that if the Court grants the Plaintiff relief using this approach then it would only apply in this specific case. Plaintiff is only aware of her case involving such strange circumstances before the court's October 29, 2019 order. Therefore, the Plaintiff respectfully requests the Court to order that the "relation back doctrine" applies to the Plaintiff's second filing; or

3. **The Court Remand the Case Transferred from the Western District of North**

---

[6] *Id*
[7] *Id*

**Carolina (1:19-cv-06101) and Allow the Transferrer Court to Decide the Outcome of the Case.**

The Plaintiff is aware of the strange circumstances surrounding her case. The Plaintiff also knows that "The panel often has held that jurisdictional issues do not present an impediment to transfer, as plaintiffs can present these arguments to the transferee judge." [Dkt 318] However, under rule 10.1(b) the transferee court can recommend remand of all or part of an action at any time. The Plaintiff is only requesting the second filed case be transferred back to the Western District of North Carolina if the Court does not grant the Plaintiff either relief requested above.

## CONCLUSION

Plaintiff respectfully requests for the Court to issue one of the following reliefs specifically for this case.

1. The Court grant the Defendant's motion and dismiss the second filed case that was filed in the Western District of North Carolina without prejudice and allow the September 30, 2019 first filing (1:19-cv-04075) to stand, but additionally order that this case be governed by the court's first reconsideration order and "be treated as if a direct-filing order had been entered at the time of filing, and governed by the choice-of-law rule of the Plaintiff's "home" jurisdiction"; or

2. Allow the relation back doctrine to apply to the second filed case (1:19-cv-06101) to the first filed case, so that Plaintiff's statute of limitation can be preserved under North Carolina law, and dismiss the first filed case without prejudice; or

3. Remand the second filed case (1:19-cv-06101) back to the Western District of North Carolina and allow the transferrer court to decide the outcome of the Plaintiff's case.

Dated: August 20, 2020                              Respectfully submitted,

**Tautfest Bond, PLLC**

*/s/ Jessica Glitz*
Jessica Glitz TX No. 24076095
Monte Bond TX No. 02585625
**Tautfest Bond, PLLC**
5151 Belt Line Rd., Suite 1000,
Dallas, TX 75254

>Telephone: (214) 617-9998
>Facsimile: (214) 853-4281
>jglitz@tbtorts.com
>mbond@tbtorts.com
>*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2020, a true and correct copy of Plaintiffs' Response in Opposition to Cook Defendants' Omnibus Motion for Judgment on the Pleadings was filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all CM/ECF counsel of records. Additionally, Plaintiff emailed Defendants a copy of this Response in Opposition because it was filed under seal to protect the sensitive medical records attached.

Dated: August 20, 2020

Respectfully submitted,

*/s/ Jessica Glitz*
Jessica Glitz TX No. 24076095
Monte Bond TX No. 02585625
**Tautfest Bond, PLLC**
5151 Belt Line Rd., Suite 1000,
Dallas, TX 75254
Telephone: (214) 617-9998
Facsimile: (214) 853-4281
jglitz@tbtorts.com
mbond@tbtorts.com
*Attorneys for Plaintiff*