UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

```
IN RE:  COOK MEDICAL,INC.,    ) CASE NO. 1:14-ml-2570-RLY-TAB
IVC FILTERS MARKETING,        ) MDL No. 2570
SALES PRACTICES AND PRODUCTS  ) Evansville, Indiana
LIABILITY LITIGATION          ) Thursday, August 13, 2020
                              ) 10:08 o'clock a.m.
```

Before the
HONORABLE RICHARD L. YOUNG


TRANSCRIPT OF VIDEO STATUS CONFERENCE


APPEARANCES:

```
FOR MDL PLAINTIFFS:    Martin Baughman, PLLC
                       By:  Ben C. Martin
                       3141 Hood Street, Suite 600
                       Dallas, Texas 75219

FOR MDL PLAINTIFFS:    Riley Williams & Piatt, LLC
                       By:  Joseph N. Williams
                       301 Massachusetts Avenue, Suite 300
                       Indianapolis, Indiana 46204

FOR MDL PLAINTIFFS:    Heaviside Reed Zaic
                       By:  Michael Heaviside
                       910 Seventeen Street, NW, Suite 800
                       Washington, DC 20006

FOR THE DEFENDANTS     Faegre Drinker Biddle & Reath LLP
Cook Incorporated,     By:  Andrea Roberts Pierson and
Cook Medical LLC,      James Stephen Bennett and
and William Cook       Jessica Benson Cox
Europe ApS:            300 North Meridian Street, Suite 2500
                       Indianapolis, Indiana 46204

                       Faegre Drinker Biddle & Reath LLP
                       By:  Bruce G. Jones
                       2200 Wells Fargo Center
                       90 South Seventh Street
                       Minneapolis, Minnesota 55402
```

COURT REPORTER:        Jean A. Knepley, RDR, CRR, CRC, FCRR
                       46 East Ohio Street, Room 309
                       Indianapolis, Indiana 46204


        PROCEEDINGS TAKEN BY MACHINE SHORTHAND
           COMPUTER-AIDED TRANSCRIPTION

1          (In open court.)

2          THE COURT:  Well, good morning, everyone.

3          MR. WILLIAMS:  Good morning, Your Honor.

4          MS. PIERSON:  Good morning, Judge.

5          THE COURT:  We are here today in the monthly status

6    conference regarding the Cook Medical, Inc., IVC filters

7    marketing, sales practices and products liability litigation.

8    This is MDL 2570, and my notes indicate we are doing this by

9    video today.  Ben Martin is here, Joe Williams, and Mike

10   Heaviside on behalf of the PSC; and Andrea Pierson, Steve

11   Bennett, Jessica Cox, and Bruce Jones are here for the Cook

12   Defendants.

13          And I have a proposed agenda here.  Number 1 would be

14   Cooks' proposed case management order screening for time-barred

15   case; and then, Plaintiff's motion to strike Cooks' motion to

16   dismiss partial summary judgment on claim of fraudulent

17   concealment and Plaintiff's motion to hold in abeyance Cooks'

18   motion to dismiss partial summary judgment on claims on a claim

19   of fraudulent concealment, and that is all I have on my

20   proposed agenda.  Item No. 1 is a Cook matter.  Miss Pierson,

21   you wish to address the matter?

22          MS. PIERSON:  I do, Your Honor.  Thank you.

23          You may recall that several months ago now we

24   submitted our bellwether plan and also discussed at the time

25   the issue of cases that are time-barred by the statute of

limitations or statute of repose.  We have seen that in three out of six of the bellwethers, and I think both sides recognize that it presents a problem in the bellwether cases, but also in our view, it is a problem in the greater MDL.  So we submitted to the Court a proposed screening order on that point.

Earlier this week Mr. Williams submitted a proposed screening order on behalf of the PSC, and fortunately, I had a chance to look at those yesterday, and they actually look quite similar.  So Mr. Williams and I have had some conversations overnight, and I think we are pleased to report that we have agreement on the fact that a screening order should be entered to address this.  And on most parts of the screening order we are in agreement.

There are a couple of places that I think we need to work through, and we would like a couple of additional days to do that and would propose to submit a joint plan to you by early next week, Monday or Tuesday, with the Court's permission.

THE COURT:  Joe, any comment?

MR. WILLIAMS:  That is accurate, Your Honor.

THE COURT:  How much time do you need, Andrea?

MS. PIERSON:  If, if we can get it back to you on Tuesday, that would be great.

THE COURT:  Okay.  The record will reflect today the parties are in discussions regarding an agreed case management

1   order screening for time-barred cases.  Hopefully we can have

2   that filed on or before next Tuesday, which I believe would be

3   the 21st; is that right, the 21st -- the 18th.  I was off a few

4   days, on or before the 18th of August.

5               MS. PIERSON:  Correct, Your Honor.

6               THE COURT:  Okay.  Very good.

7               MS. PIERSON:  Thank you.

8               THE COURT:  Well, I appreciate your getting together

9   prior to our status conference and trying to work these matters

10  out to an agreement.

11              All right.  Item No. 2, who wants to go forward?

12              MR. WILLIAMS:  I will be addressing on behalf of the

13  PSC, Your Honor.  That is Joe Williams.

14              THE COURT:  All right.

15              MR. WILLIAMS:  So Your Honor, Cook's omnibus motion

16  asking for dismissal or summary judgment on the defense of

17  fraudulent concealment, they have asked the Court to dismiss or

18  enter judgment against every case in this MDL that carries a

19  defense of fraudulent concealment.  And so after we analyzed

20  Cook's arguments, took a look at how other MDL courts have

21  handled situations like this, we realized that this type of

22  issue cannot be handled in the aggregate or in omnibus fashion.

23              What we are not saying is that Cook can't attack

24  fraudulent concealment on a case-by-case basis just as they did

25  in the *McDermitt* case.  After the record was developed on the

*McDermitt* case, the bellwether, they teed up a motion for summary judgment, and the Court was able to rule upon that motion based upon a developed record.  So they can do this on an individual basis, but this MDL is not a class action.

It is not that type of case where such an extrapolation is or can be done only after the rigorous elements of Rule 23 are satisfied.  Only when that happens can the Court rule on one case and then bind the absent class members, so to speak, with that judgment.  And what really, I think, kind of summarizes the conundrum we find ourselves in, is what the Third Circuit said in an appeal from the *Fosamax* MDL, and they said, quote, the district court's understandable desire to streamline proceedings cannot override Plaintiff's basic trial rights.  And that is why we are here, so why can't this work?

Well, when Cook filed their motion to dismiss, the first thing they said was, the master complaint was not, was not pled with the particularity required by Rule 9(b); in other words, fraudulent concealment sounds in fraud and so you are required to plead that, the who, what, when, where, why, and how of the fraud.

THE COURT:  Well, I don't think the master complaint needs to come into play here.  I think everybody agrees that, that that could not be done in the master complaint.

MR. WILLIAMS:  Okay.

1          THE COURT:  So let's move on.

2          MR. WILLIAMS:  You've got it.  Thank you, Your Honor.

3          So the second point that we need to address, and I

4    think it is easiest to start with what Cook says can be done in

5    an omnibus fashion, and I would like to explain why it can't.

6          THE COURT:  Mr. Williams?  Joe?  Let me interrupt here

7    just a second.

8          MR. WILLIAMS:  Sure.

9          THE COURT:  The Third Circuit is correct in that

10   district judges really like to streamline cases here.  Is

11   there -- and this is a particular situation in this particular

12   MDL.  Is there any evidence anywhere in any of these cases that

13   Cook had knowledge of the injuries to the individual Plaintiffs

14   that the Plaintiffs didn't have and that they intentionally

15   concealed that information from, from the Plaintiff?  I -- you

16   know, we are just talking about the fraudulent concealment

17   claim.  We are not dismissing their entire claim.

18         MR. WILLIAMS:  Right.

19         THE COURT:  And so that is my big question here, is,

20   is that evidence out there anywhere; and if it is, we need to

21   know about it.

22         MR. WILLIAMS:  Sure.

23         THE COURT:  So that is the streamlining that I would

24   be looking for here.

25         MR. WILLIAMS:  So Your Honor, respectfully, I believe

1   that Your Honor's question sort of rests upon a mistaken
2   premise, and that mistaken premise is that fraudulent
3   concealment is only available when the Defendant knows of the
4   Plaintiff's injury and injury only.  If you look at Indiana
5   law, which is what Cook sort of clings to in their motion, not
6   once in an Indiana case do our courts state that fraudulent
7   concealment can only occur when the injury is known to the
8   Defendants.

9        What our courts say is that it is when a cause of
10  action has been hidden, has been concealed, and what a cause of
11  action entails is, it could be the injury.  But it is also
12  breach, causation; and in the products liability context,
13  defect, and there are a number of cases.  There is a case just
14  fairly recently out of the Northern District of Illinois
15  applying Indiana law; and that is, that is the *Elward* case at
16  264 F. Supp. 3d 877, and looking at Indiana Law, it was a
17  defective dishwasher case, and the Defendants made a similar
18  argument there.

19       And the Court there held under Indiana law, quote, by
20  alleging that Electrolux committed affirmative acts to conceal
21  the defect, the Plaintiffs have provided a conceivable set of
22  facts to support the application of the doctrine of fraudulent
23  concealment.  Electrolux had knowledge of the defect, yet
24  continued to sell the product.  We are not talking about the
25  injury there.  What Electrolux in that case did was hide or

1    conceal the defect, and that is what the issue is in this case.
2    We heard Dr. Krumholz explain ad nauseam at the last trial that
3    Cook concealed the results of the outside U.S. study by saying
4    there were no perforations in that study when, in fact, there
5    were lots.

6         And so I think to make this a little more clear, a
7    person can have knowledge of an injury that they have been
8    harmed and still not have knowledge of the cause of action.
9    Under Indiana's product liability act, a Plaintiff has to prove
10   a defect to be entitled to relief.  If the Plaintiff doesn't
11   know that there is a defect, he could be as hurt as the day is
12   long, but if he doesn't know of the defect, he doesn't have a
13   cause of action.  And when Cook concealed the defect, they,
14   they, they have hidden an element of the cause of action.  And
15   so if you look carefully —

16        THE COURT:  Is this in your briefing, Joe?

17        MR. WILLIAMS:  Your Honor, I will confess to you that
18   I came across the *Elward* case last night when I was prepping
19   for this argument.

20        THE COURT:  Okay.  I, I didn't think I saw that
21   anywhere when I was going through this file.  Okay.  I am
22   sorry, go ahead.

23        MR. WILLIAMS:  No, no.  Thank you, Your Honor.

24        But if you take a look carefully at Cook's brief when
25   they are talking — their response brief — you have to look at

1 where there are citations to what they are arguing and where

2 there are not.  And in their brief, they talk about, and I am

3 talking about the original motion to strike.  They, they make a

4 bunch of jumps.  They say, Indiana law says you have to conceal

5 a cause of action; and then, without citation they say, look at

6 the *McDermitt* case.  How could Cook have known of his injury if

7 he didn't know of his injury until he met with Mr. Goldenberg?

8         And on the facts of Mr. McDermitt's case, Your Honor

9 found that to be true.  If he didn't even know he was injured,

10 how could Cook have concealed his cause of action?  But therein

11 lies the danger of extrapolating Mr. McDermitt's case to 7,000

12 cases here.  Because if people hear the other absent members

13 are not absent, but the other members of this MDL knew they

14 were injured but a different element of their cause of action

15 had been concealed; that is, the defect, fraudulent concealment

16 still lies.

17         It is just in the *McDermitt* case, his facts, which

18 again, were based on a developed record, demonstrated that one

19 element of his claim wasn't even known to him until basically

20 he filed the lawsuit, and that element was injury.  But injury

21 is not the only element that needs to be concealed for

22 fraudulent concealment to hold.

23         Indiana courts have repeatedly held that when a

24 Defendant hides the defect or conceals the defect, fraudulent

25 concealment can lie.  And so this is sort of what demonstrates

1   why we can't do this in the aggregate.  When we looked at

2   Mr. McDermitt's case and it got drilled down and took

3   depositions of the Plaintiff and depositions of all the

4   physicians, the record supported the finding that he didn't

5   know about his injuries, so how could Cook have known about his

6   injury sufficient to conceal it?

7          But we don't know what the facts and circumstances are

8   of all 7,000 Plaintiffs, and if we are going to — if we are

9   going to attack their ability to challenge statutes of

10  limitation based upon fraudulent concealment, it has got to be

11  done based upon the facts and circumstances of each individual

12  case.  And, you know, the Supreme Court of the United States

13  told us many many years ago in the *Amchem* decision, when you

14  are dealing with personal injury suits, class certification or

15  the aggregation of claims just doesn't work because the claims

16  are too individualized, and you could never satisfy 23(b)(3)

17  typical — or predominance.

18         But that is what Cook is trying to do here.  They are

19  trying to use Mr. McDermitt and Miss Graham as class

20  representatives and tell the Court, well, you, you dinged their

21  fraudulent concealment claims in their individual cases, and so

22  the same should hold for each of the 7,000 Plaintiffs.  But

23  until — unless and until that issue is certified under Rule

24  23, we can't do that, and I think when you look at the

25  individual circumstances of the *McDermitt* case and the *Graham*

1    case, you realize that Your Honor got rid of their fraudulent

2    concealment claims based upon the facts of that case.

3              And so at the end of the day, what we are looking at

4    is Cook wants to say, well, we couldn't have known if there

5    were any injuries, so there can't be fraudulent concealment.

6    If that were true, Your Honor, we could never have a claim of

7    fraudulent concealment in the drug or device products liability

8    context because neither a pharmaceutical company nor a medical

9    device company has any idea who those drugs are being

10   prescribed to or who those devices are being implanted into.

11             That is knowledge within the possession of the

12   physicians and their patients, and if Cook is right, that if

13   they didn't know about the specific injury to a specific

14   Plaintiff so there can't be fraudulent concealment, then, there

15   could never be fraudulent concealment.  And we know that is not

16   the case because we see it in these contexts all the time.

17             The problem is, if they want to get rid of these, they

18   have got to do it —— and they have to try to do it on an

19   individual basis.  And I understand and empathize with the

20   Court and all of the parties that we are looking for

21   streamlined ways to handle this, but as the Third Circuit told

22   us, we can't sacrifice basic due process in the efforts of

23   streamlining.  And if we do, if we treat this in omnibus

24   fashion, that is precisely what we will be doing.

25             THE COURT:  Well, we do need some particularity in the

1  pleadings, or somewhere, somehow, Cook needs to be put on

2  notice of this.

3       MR. WILLIAMS:  Sure.

4       THE COURT:  And where is that at, and when can that be

5  done if it is going to be done?

6       MR. WILLIAMS:  Sure, Your Honor.  Thank you.

7       Two things.  I think even Cook concedes and we concede

8  and Your Honor conceded at the beginning of the hearing that it

9  can't be done in the master complaint.  That is an

10  administrative convenience.  It can't be done there.

11       So Cook takes the position that it has to be

12  somewhere.  It has to be in the short-form complaint, and what

13  they do is point to — I have to remember which — the *Zofran*

14  decision in which the *Zofran* judge, you know, he held that

15  fraudulent concealment in the particularity required by Rule

16  9(b) should be set forth in the short-form complaint.

17       The difference, though, and we provided some of this

18  material in our reply brief, is that the *Zofran* court had a

19  specific CMO in place that required Plaintiffs to plead

20  fraudulent concealment or other fraud-based claims with

21  particularity in their short-form complaint.  That has never

22  been a requirement here.  Our short-form complaint is a

23  check-the-box deal, and you incorporate allegations from the

24  master complaint.

25       So if Cook really wants to be put on notice of the

1    claim of fraudulent concealment, and if we are talking about

2    notice, I mean, let's put aside for the moment that they

3    understand precisely what our fraudulent concealment argument

4    is with regard to concealing the defect.  We have litigated it

5    for five years, but if we are talking about the procedural sort

6    of technical requirement that they be put on notice in written

7    form, then, sometime over the last five years it was incumbent

8    upon Cook to come to the Court and say, we need to amend the

9    short-form complaint requirements.  And we need fraudulent

10   concealment to be pled with particularity on an individualized

11   basis.

12         What they can't do and what would be patently unfair,

13   is to never ask for that, take the short-form complaint as it

14   stands today that does not have that request, and then say, ah,

15   you didn't plead it with particularity, knowing full well that

16   there was never an opportunity to do that on an individual

17   basis.  So at -- on our absolute worst day, Plaintiff's

18   absolute worst day as far as this motion goes, there should be

19   an amendment to the short-form complaint, and people should

20   plead with particularity there.

21         But what we can't do is toss the claims of 7,000

22   people when there is -- you can't do it in the master

23   complaint, and there was no, there was no box to fill in about,

24   to add the 9(b) material in the short-form complaint.  And

25   *Zofran* doesn't help them because that judge specifically

1    ordered that Plaintiffs do that, which has not happened here.

2              THE COURT:  Thank you, Joe.

3              MR. WILLIAMS:  Thank you, Your Honor.

4              THE COURT:  Who is going to respond, Andrea?

5              MR. JONES:  I will.

6              THE COURT:  Bruce?  Okay, Bruce.

7              MR. JONES:  Thank you, Your Honor.  Pleasure to see

8    you again after all these months.

9              What Mr. Williams is describing is the discovery rule

10   or the statute of limitations on a failure to warn claim.  The

11   idea that if a manufacturer is concealing a defect, that may

12   prevent discovery of the cause of action.  It has nothing to do

13   with fraudulent concealment.

14             As Your Honor held in the *Graham* case and in the

15   *McDermitt* case, fraudulent concealment, as listed in all the

16   cases we cited at the end of our brief, is, requires that the

17   Defendant actually know that the Plaintiff has a cause of

18   action or a potential cause of action and affirmatively

19   conceals that from him, from the Plaintiff.  That is not what

20   we have here.

21             There is no allegation.  There is no allegation, much

22   less any facts in either the master complaint or the short-form

23   complaints that Cook knew about any individual Plaintiff's

24   cause of action before the Plaintiff did.  It is just not

25   there.

1    And correct, Mr. Williams, the *McDermitt* and *Graham*
2    rulings from this Court did not depend on the facts of the
3    individual case.  They depended on the allegations in the
4    individual case.  This Court said in *Graham*, "Even if the
5    doctrine could apply to her claims, *Graham* does not allege any
6    affirmative conduct by Cook Defendants that was designed to
7    prevent and did prevent her from discovering her cause of
8    action."

9    Likewise, in *McDermitt*, the Court says, "Plaintiff
10   does not allege that Cook committed any affirmative act to
11   prevent him from discovering a cause of action against it."
12   That is what we are talking about here in this motion to
13   dismiss, allegations, and there are no allegations either in
14   the master complaint or in any short-form complaint that make
15   that allegation.  That is what -- that is the basis of this
16   motion.

17   Mr. Williams talks about the purpose of the short-form
18   complaint and the short-form complaint not accommodating this.
19   He is mistaken.  The short-form complaint has a section in
20   which people, you know, Plaintiffs can write in more detail
21   about specific claims and not one -- Mr. Williams does not
22   suggest that one of the 7,000 Plaintiffs has actually done that
23   with respect to fraudulent concealment.

24   They have done it with respect to other things,
25   particularly express warranty, but they have never done it.

1    None of them have done it without fraudulent — about

2    fraudulent concealment.  That means that every Plaintiff of

3    these 7,000 is resting solely on the allegations in the master

4    complaint, and the master complaint does not make the

5    allegations of knowledge and affirmative action to prevent the

6    discovery of the cause of action.

7              As to somehow put this is Cook's fault because it

8    didn't insist earlier on every Plaintiff making this allegation

9    in their short-form complaints, that is not Cook's burden.

10   That is the burden of each individual Plaintiff.  Plaintiffs

11   have been on notice for years.  We have been making this

12   fraudulent concealment motion, lack of particularity and lack

13   of the elements, at least since the *Graham* case and in several

14   cases since, including the argument that Your Honor heard last

15   month considering the open retrieval cases.

16             Plaintiffs, in their briefing, argued fraudulent

17   concealment there, but they offered no factual support for it

18   when push came to shove.  We are trying to just streamline this

19   case so we don't have to deal with fraudulent concealment in

20   every case and come up with the same lack of allegation, the

21   same lack of proof that we had in *McDermitt* and *Graham*.

22             This is not a class action.  We are not asking the

23   Court to extrapolate from *Graham* and *McDermitt*, but *Graham* and

24   *McDermitt* are persuasive authority.  And when the other

25   Defendants are in the same — excuse me, the other Plaintiffs

1   are in the same position with respect to what they allege as

2   Ms. Graham and Mr. McDermitt, the same results should obtain.

3           There is the — there are three grounds for the

4   motion.  I don't know if Your Honor has had a chance to review

5   the motion itself, but there is the lack of particularity in

6   pleading, which is universal.  It doesn't require any

7   specific — it doesn't require — as I said, no Plaintiff has

8   pled beyond the master complaint.  So the Court can look at

9   that and resolve it based on the allegations in the master

10  complaint which are not sufficiently specific.  That is a

11  matter controlled by federal law, and state law has nothing to

12  do with it.  And there are no fact specific differences among

13  the cases.

14          Second, the allegation — the fact that the complaint,

15  as I mentioned a few moments ago, doesn't even allege that Cook

16  knew about individual causes of action and did anything to

17  prevent Plaintiff from finding out about them.  That is the

18  second one, and Mr. Williams is right.  Fraudulent concealment

19  is very ill-suited to medical device and pharmaceutical cases

20  because the Defendant is not, in ordinary circumstances, going

21  to know even what patients got the product, much less that any

22  individual Plaintiff was injured.

23          This doctrine is intended for things like medical

24  malpractice where a doctor may have superior knowledge that he

25  has injured a Plaintiff and the Plaintiff doesn't or a case

where there is a hidden defect in a construction project where the, the contractor knows that inside this wall is a major problem and doesn't tell the owner.  That is, that is what this is intended for.  This is just not intended for this kind of situation where the Defendant has no way of knowing, and that, that is recognized by the fact that none of the Plaintiffs or even in the master complaint actually, actually claim that Cook had advanced knowledge — or excuse me, not advanced knowledge but superior knowledge to the Plaintiff of the existence of the cause of action.

THE COURT:  Well, Bruce, Joe, burning the midnight oil last night, finds a case regarding fraudulent concealment of a defect, not, not the specific injury.

MR. JONES:  I, as I, as Joe suggested, that is not in any of the briefing.  I don't know that case.  I haven't read that case.  I don't have the citation for the case, although I am sure Joe can provide it.  But if that is true, then, I would suggest it is an outlier because that is not what Indiana law says.  That is what he was quoting.

Indiana law from the Indiana Supreme Court in the *Doe v. Shults-Lewis* case, which we cite in our brief, fraudulent concealment is an equitable doctrine, etc., and it depends on where the Defendant has either by deception or by a violation of duty, concealed from the Plaintiff material facts; thereby, preventing the Plaintiff from discovering a potential cause of

 1    action.  That is the rule in Indiana.  That has nothing to do

 2    with discovery of the defect.  That is a failure to warn issue.

 3            What Mr. Williams is proposing would

 4    completely -- would mean that, essentially, would swallow up

 5    the discovery rule for failure to warn claim.  Because it would

 6    mean that as long as the Defendant is, supposedly by the

 7    Plaintiff's account, concealing the defect, assuming the defect

 8    exists, then, the cause of action doesn't arise, can't arise

 9    because of the fraudulent concealment.  That is not the law,

10    and I can't believe that even the case that Mr. Williams

11    describes says otherwise.

12            MS. PIERSON:  Your Honor, if I can interject, I have

13    had a chance to look at the *Elward* case now while Joe and Bruce

14    have been arguing.

15            THE COURT:  Could somebody give me the cite on that,

16    please?

17            MR. WILLIAMS:  Yeah.  It is 264 F. Supp. 3d 877, and

18    the pinpoint is 890 to 891.

19            THE COURT:  Thank you.  What is the caption?

20            MR. WILLIAMS:  The caption, Your Honor, is *Elward*,

21    E-L-W-A-R-D v. *Electrolux Home Products*.

22            MS. PIERSON:  Your Honor, just a couple of things

23    about that case that I would add in addition to what Mr. Jones

24    has said, is that it is pretty clear it is not a personal

25    injury case, and the Court is looking at fraud.

1  Those are key distinctions, Your Honor, and in a

2  personal injury case, very different than a contractual kind of

3  case like the *Elward* case that he mentioned.  There is more

4  than one element to the cause of action.  In a personal injury

5  case, for a Plaintiff to assert fraudulent concealment, they

6  would have to show a few things.  The first is intent and its

7  intent to conceal the cause of action.

8  A cause of action in a personal injury case means that

9  the Plaintiff has been injured and that the injury was related

10  to or caused by a product.  So back to the question that you

11  asked, Mr. Williams, at the beginning, where is the evidence

12  any case, any case at all that it —— in the context of these

13  filters, that Cook had knowledge of an injury and a defect in

14  the product and intentionally concealed that from any

15  individual Plaintiff?

16  It takes both here, not just defect.  It takes proof

17  of Cook's knowledge and intentional concealment, both the

18  existence of the injury and the existence of a defect, and

19  there is no evidence of either one of those elements.  So the

20  *Elward* case, in my view, it doesn't help their argument.  It is

21  not suggesting that if there is evidence of concealment of one

22  of those things, then, there is proof of fraudulent

23  concealment.

24  Quite to the contrary in a personal injury case, the

25  Plaintiffs have to show both in addition to showing intent to

1    conceal the cause of action from an individual Plaintiff.

2    That, that isn't present in this case and can't be because Cook

3    doesn't know which patients have the filter, much less that

4    they have been injured or that the injury was related to the

5    product in some way.

6              MR. MARTIN:  Your Honor, if I might —

7              THE COURT:  Yes.

8              MR. MARTIN:  If I may, if the Court can hear me, I

9    know just on the issue of, of —

10             THE COURT:  This is — for the record, this is Ben

11   Martin.

12             MR. MARTIN:  Thank you, Your Honor.  I will pronounce

13   my name next time.

14             As to, as to the portion of Ms. Pierson's argument on

15   evidence of knowledge or intent to deceive or, well, intent.  I

16   am not going to belabor the point, but Joe, I am going to add

17   to the point of, and this is just an example of the OUS study

18   where, at least the evidence is, Cook can make the opposite and

19   did, but there is evidence that there was concealment of the

20   numbers and extent of perforations in the study, and that that

21   information was not provided in the published OUS study, what

22   was known as the study.

23             To this day, that misstatement that there were no

24   perforations in the study is still existent.  So we

25   have — that — I am giving an example, and so, and that is an

1    example that takes us from about 2005 all, all the way up to

2    today.  So that, that is a lot of cases, probably most, most of

3    the Celect cases, if not all, actually, because of the dates

4    that it was placed on the market.

5           I would say this, Your Honor.  As to the suggesting

6    that Cook has to know what Johnny Smith's injury was, that

7    Johnny Smith was suffering from one of these perforations, Cook

8    didn't tell people existed in that study, would — I would

9    suggest, it would make no, it would certainly not make good

10   public policy if, if the fraudulent concealment required — and

11   I think Joe has indicated it has — it doesn't require that

12   Cook know what John Smith's injury is.

13          It, it is even difficult for and impossible because of

14   the, the defense to get the document of, you know, Plaintiffs

15   for us to even respond to an argument like that, that, that

16   Cook must know of each one of these, say, thousand people,

17   whoever has these fraudulent concealment, that they, in

18   particular, that Cook knew about their particular perforations,

19   and that, that is all I have.  It practically is impossible.

20          That is, unfortunately, one thing that the Court said

21   last, a couple of weeks ago is, and I remember, it is what it

22   is.  And fortunately, in this particular case, I think the

23   "is," is, is we are going to have to delve into each case.  We

24   just can't, can't paint the broad brush in some of these

25   summary judgment issues.  All right.  That is all I have, Your

24

Honor.

MR. JONES:  Bruce Jones, Your Honor.

THE COURT:  Yes.

MR. JONES:  Mr. Martin's remarks demonstrate the
problem here.  Under what he is saying, no statute of
limitation would ever run until a Defendant actually admits in
public that it believes its product is defective.  That is the
upshot.  He is citing the OUS study and said that even today
Cook does not agree with the Plaintiff's characterization of
it.

That is not what fraudulent concealment is about.
Fraudulent concealment is about knowledge of a cause of action
and intentional concealment of that cause of action by the
Defendant.  That is not what we have here.

Now, we have moved, as the Court is aware, for
dismissal of these, of the fraudulent concealment claim with
prejudice.  If the Court would be more comfortable, it
certainly would be possible for the Court to dismiss those
claims without prejudice based on the current state of the
pleadings, which are insufficient with respect to both the
elements and particularity but permit any Plaintiff who
actually comes up with a factual basis, based on concealment of
the cause of action.

I don't think that is likely to happen, but if it did,
then, the Plaintiff could move to amend the complaint to

1   reintroduce the portion of the concealment claim, plead it with

2   particularity required by Rule 9(b), and we can go forward from

3   there with Cook having notice of what the actual claim is,

4   which is what Rule 9(b) and Rule 8, for that matter, actually

5   intend.

6           THE COURT:  All right, thank you.

7           MR. WILLIAMS:  Your Honor?  Joe Williams.

8           THE COURT:  Yes, Joe.

9           MR. WILLIAMS:  In reply, I was going to start with

10  something else, but based upon Mr. Jones' last comments, I

11  think that -- like I said previously, our worst day,

12  Plaintiff's worst day in this case is an order from the Court

13  asking people to replead if they want to establish fraudulent

14  concealment.  Because that requirement, for all the reasons we

15  discussed previously and in the briefs, has not been brought to

16  the fore.  And we can't yank the rug out from people without

17  giving them that opportunity.

18          Now, with that suggestion would very easily and very

19  conceivably come thousands of amended complaints, and we can go

20  that route, or what we can do is do simply what this Court has

21  already done in each of the bellwether cases.  We have left

22  fraudulent concealment alone, and then, with each bellwether

23  case, we have come up with a CMO.

24          And one of the things in the CMO says the Plaintiff

25  has the right to replead or amend his, his or her pleadings,

you know, within 30 days so that all parties know what, what
issues and what claims are live and will be tried or disposed
of on summary judgment.  And what that did was allow each
person to take the steps necessary to protect their defense of
fraudulent concealment, but it also served the other benefit of
not burdening the Court with 3,000 amended complaints.

And what we can do — I mean, that is what we did in
*Brand*, that is what we did in *Hill*, and that is what we did in
*McDermitt*.  And that seemed to work up until this point, and
that is part of the reason some of our briefs, you know, spoke
to the issue of the historical, sort of progression of CMOs in
this case.

Summary judgment issues were dealt with and in each of
these CMOs on a case-specific basis, and these CMOs allowed
each individual bellwether Plaintiff the opportunity to amend.
If at that point they can't make the particularity made clear
in their amendment, well, then, when Cook moves for summary
judgment, they can also claim 9(b) keeps this fraudulent
concealment claim for this individual Plaintiff out of court.
But what we can't do is get rid of it all right now.

So if Mr. Jones is proposing of a dismissal without
prejudice and allowing people to replead, what I would suggest
we do is simply, you know, like Bob Dylan said, "Keep on
keepin' on," and we just continue on with when a bellwether
case is selected, that bellwether case will have an amendment

1   of the pleadings deadline, which is usually fairly quick, 30

2   days or so.  And then, that Plaintiff can, you know, amend

3   their pleading, and Cook can either say, okay, that is good

4   enough or it is not.

5           But then, what we are dealing with is an individual

6   case and an individual person who had the notice and the

7   opportunity to plead what Cook claims they need to plead rather

8   than just pulling the rug out from everybody in one fell swoop.

9           MR. JONES:  Your Honor, the problem with that approach

10  is that the pleading requirements, and Rule 9(b), in

11  particular, are not intended to apply just at the end of the

12  case once the case is headed for trial.  It is a threshold

13  requirement.  The claim of fraud against a company is a serious

14  allegation.  That is why Rule 9(b) requires it to be pled with

15  particularity to make sure that there is an actual factual

16  basis for it as the threshold before you subject the Defendant

17  to the kind of bad publicity and scorn that allegations of

18  fraud involve.

19          All of these 7,000 Plaintiffs, or at least the vast

20  majority of them, have pled fraudulent concealment.  Not one of

21  them has identified a single fact that supports the idea either

22  that Cook knew about the cause of action or that it

23  intentionally concealed it.  That is a threshold requirement

24  that ought to be done at the threshold in the pleading stage

25  and not just wait down the road.

1    I also point out that Your Honor is not just making

2  rulings for the cases that are going to be tried in this court.

3  You are making rulings that will travel back with cases to

4  their individual, you know, to, to other districts.  And part

5  of the Court's mandate is to streamline the cases as much as

6  possible by getting rid of the clutter, like the fraudulent

7  concealment claims.

8    We would urge the Court, at the very least, to dismiss

9  without prejudice and to permit motions to amend if and when

10  any Plaintiff can actually come up with a factual basis.

11    Thank you.

12    MR. WILLIAMS:  Your Honor, may I close this out in

13  about 45 seconds?

14    THE COURT:  You may.

15    MR. WILLIAMS:  Thank you.

16    I would tend to agree with Mr. Jones if we were

17  dealing with a single event, isolated individual case.  9(b)

18  clearly applies, and it –– and it is dealt with in the

19  complaint.  But as Cook's lawyers well know, this is not a

20  single event case.

21    It is a mass tort, and they further know when they

22  tried this same tact before in the *Zimmer Nexgen* MDL, Judge

23  Pallmeyer specifically found that in an MDL context with master

24  complaints and the like, you simply can't do this.  It is not

25  administratively feasible; and so, while 9(b) is certainly, you

1  know, in play, we can't, then, apply it in this context to the

2  master and short-form complaints, just as Judge Pallmeyer in

3  her MDL up in Chicago realized and held.

4      And so, with that, I, I don't have anything else to

5  say unless Your Honor has any further questions.

6      MR. JONES:  Your Honor, I just, on the *Zimmer* point, I

7  need to respond with one thing.

8      In the *Zimmer* case, Judge Pallmeyer said, the Court

9  determined that it had, that it had to, quote, consider

10 Defendants' motion to dismiss to the limited extent it

11 challenges the sufficiency of the factual allegations common to

12 all Plaintiffs.  That is what we have here, factual allegations

13 that are common to all Plaintiffs.

14     Not one Plaintiff has made any allegations that falls

15 outside the allegations in the master complaint.  The Court can

16 deal with them altogether because they are all the same.  Thank

17 you.

18     THE COURT:  All right.  We will take it under

19 advisement, try to get something out here in the next week or

20 two on this.

21     Anything else for the good of the order to be

22 discussed here today?

23     MR. WILLIAMS:  Not from the PSC, Your Honor.

24     MS. PIERSON:  Not from Cook, Judge.  We will see you

25 towards the end of the month, again, on the monthly motions

1   hearing.  There are some individual motions that we will take

2   up towards the end, but I think this format works really well;

3   from my perspective, at least it does.  I am certainly

4   interested to know what other people think, and if this works

5   well for you, Your Honor, maybe we can do the hearing at the

6   end of the month in this format too.

7          THE COURT:  All the technology seems to be working

8   just fine here.  I was able to hear everybody clearly.  If

9   everyone is in agreement with that, that all their technology

10  worked well, I have no problem whatsoever in having hearings

11  online like this.

12         MR. MARTIN:  We appreciate it from Texas.

13         THE COURT:  All right.  Well, very good.  Well, thank

14  you all very much for your presentation, and we will look

15  forward to seeing you online here towards the end of the month,

16  and we will get something out on this in the next week or two.

17  Everybody stay healthy and your families stay healthy, as well,

18  and always good to see you.

19         MR. WILLIAMS:  Thank you, Your Honor.

20         (Concluded at 10:52 a.m.)

21                         – – –

22

23

24

25

1          CERTIFICATE OF COURT REPORTER

2

3          I, Jean A. Knepley, hereby certify that the

4     foregoing is a true and correct transcript from reported

5     proceedings in the above-entitled matter.

6

7

8     /S/ Jean A. Knepley            August 20, 2020
      JEAN A. KNEPLEY, RDR/CRR/CRC/FCRR   Date
9     Official Court Reporter
      Southern District of Indiana
10    Indianapolis Division

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25