**IN THE UNITED STATE DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

---

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND                      Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION                       MDL No. 2570

This Document Relates to the Following Case:

Rex Hill

Civil Case #: 1:18-cv-04021-RLY-TAB

---

**PLAINTIFF REX HILL'S RESPONSE IN OPPOSITION TO COOK**
**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**
**ON STATUTE OF REPOSE GROUNDS (NEBRASKA)**

**COMES NOW** Plaintiff Rex Hill and files this response to Cook Defendants' motion

and memorandum for judgment on the pleadings based on statute of repose and shows the Court

as follows:

## I.     INTRODUCTION AND SUMMARY

Plaintiff Rex Hill ("Plaintiff" or "Hill") respectfully requests that this Honorable Court

deny the Motion for Judgment on the Pleadings on Statute of Repose Grounds of Cook

Incorporated, Cook Medical, LLC, and William Cook Europe ApS ("Cook") as it applies to his

claims.[1]  First, under choice of law rules, Nebraska law applies, as does the Nebraska rule equitably

estopping Cook from asserting a products liability statute of repose defense due to wrongful

concealment.   Second, Plaintiff's express warranty claims are properly pled should not be

---

[1] Plaintiff does not dispute that Nebraska law does not provide for punitive damages.

1

dismissed by way of judgment on the pleadings. Third, Plaintiff pled his Nebraska Consumer Protection Act ("NCPA") claims with sufficient particularity.  Nebraska liberally construes the NCPA and Defendant has not presented sufficient authority that medical devices and their related sales and educational materials are not within the purview of the NCPA.

## II.   STATEMENT OF UNCONTESTED FACTS

1.   Plaintiff's state of residence at the time of the implant, his state of residence at the time of his injury, the location of his implant surgery, and his current state of residence are all Nebraska.  *See* Plaintiff's Short Form Complaint, dated December 20, 2018, Dkt. 1.

2.   Plaintiff was implanted with a Günther Tulip® Vena Cava Filter on December 9, 2006.  *Id.*

3.   Plaintiff filed his Short Form Complaint on December 20, 2018.  *Id.*

4.   Plaintiff's Short Form Complaint identified Plaintiff Hill, the date and location of his implant surgery, the implanting physician, and the specific type of Cook IVC Filter he was implanted with.  *Id.*

## III.   THE STANDARD FOR JUDGMENT ON THE PLEADINGS

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A Rule 12(c) motion is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Lodholtz v. York Risk Servs*. Grp., 778 F.3d 635, 639 (7th Cir. 2015).  To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A complaint need not make detailed factual

allegations to survive a Rule 12(c) motion for judgment on the pleadings[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).   The court's consideration of a defendant's motion for judgment on the pleadings is limited to the pleadings, including the complaint and any exhibits or documents attached to or referenced in the complaint, as well as the parties' briefs on the motion. *See Thompson v. Illinois Dept. of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); *Rosenblum v. Travelbyus.com Ltd*., 299 F.3d 657, 661 (7th Cir. 2002).   Plaintiff may posit facts in his brief, and so long as those facts are not inconsistent with the complaint, the court must assume they are true for purposes of deciding the motion. *See, e.g*., *Chavez v. Illinois State Police*, 251 F.3d 612, 650 (7th Cir. 2001); *Trevino v. Union Pacific Railroad Co*., 916 F.2d 1230, 1239 (7th Cir. 1990).   For purposes of ruling on a motion for judgment on the pleadings the plaintiff's well-pled facts are accepted as true and all reasonable inferences are construed in their favor. *Tierney v. Advocate Health & Hosps*. Corp., 797 F.3d 449, 451 (7th Cir. 2015).

## IV.   <u>CHOICE OF LAW</u>

Statutes of repose are substantive matters governed by state law. *See Nett ex rel. Nett v. Bellucci*, 269 F.3d 1, 5 (1st Cir. 2001); *Alexander v. Beech Aircraft Corp*., 952 F.2d 1215, 1223 (10th Cir. 1991); *Wayne v. T.V.A*., 730 F.2d 392, 401-02 (5th Cir. 1984), cert. denied, 469 U.S. 1159 (1985); *Myers v. Hayes Int'l Corp.*, 701 F. Supp. 618, 625 (M. D. Tenn. 1988); *Trinity Indus. Leasing Co. v. Midwest Gas Storage, Inc*., 33 F. Supp.3d 947, 974 (N.D. Ill. 2014) (citing *Gill v. Evansville Sheet Metal Works, Inc*., 970 N.E.2d 633, 637 n. 4 (Ind. 2012)).

Plaintiff filed his case on December 20, 2018, and so pursuant to this Court's May 29, 2020 Order, the state law of his "home" state applies to his case.  *See* May 29, 2020 Order, Dkt. 13539 at 2 (explaining that the Court will apply "home" state law to cases filed between May 31, 2017,

and June 13, 2019); *see also* Plaintiff's Short Form Complaint, Dkt. 1.[2]  As Plaintiff identified in his Short Form Complaint, his state of residence at the time of the implant, his state of residence at the time of his injury, the location of his implant surgery, and his current state of residence are all Nebraska.  *See* Plaintiff's Short Form Complaint, Dkt. 1.  As a result, per this Court's Order, Plaintiff's home state is Nebraska, as is the applicable home state law.

## V.       <u>LEGAL ARGUMENT</u>

### A.  **Plaintiff's Product Liability Claims**

#### 1.  <u>Nebraska's Product Liability Statute of Repose</u>

Nebraska's statute of repose states that "[f]or products manufactured in Nebraska, [actions on product liability shall be commenced] within ten years after the date the product which allegedly caused the personal injury, death, or damage was first sold or leased for use or consumption."  Neb. Rev. Stat. 25-224(2)(a) (2016).  With respect to the Nebraska statute of repose specifically "[f]or products manufactured outside Nebraska, [actions on product liability shall be commenced] within the time allowed by the applicable statute of repose, if any, of the state or country where the product was manufactured, but in no event less than ten years."  Neb. Rev. Stat. 25-224(2)(a) (emphasis added).  The Nebraska statute goes on to state that "if the state or country where the product was manufactured does not have an applicable statute of repose, then the only limitation upon the commencement of an action for product liability shall be" Nebraska's the four year four-year statute of limitations for personal injury and products liability actions. Neb. Rev. Stat. Ann. §§ 25-224(1)-(2)(a).

---

[2] Defendant reserves argument that the instant case should be governed by Indiana choice-of-law rules pursuant to *Klaxon v. Stentor Elec Mfg. Corp.*, 313 U.S. 487 (1941).  This issue has already been addressed by the Court in its May 29, 2020 Order and Plaintiff maintains that Seventh Circuit precedent holds that foreign cases filed directly in an MDL are treated as having originated outside of the MDL district.  *Dobbs v. Depuy Orthopedics, Inc*., 842 F.3d 1045 (7th Cir. 2016)

Within its briefing, Cook implies that its IVC filters are not manufactured in Nebraska. *See* Cook Defs.' Mem. in Support of Mot. For Judg. on the Pleadings on Stat. of Repose Grounds (Nebraska) ("Defs.' Mem. in Support") at 5. Instead, it applies the Nebraska statute of repose for products manufactured outside of Nebraska and identifies that the Indiana statute of repose should be applied "because of Cook's presence in this state." Defs.' Mem. in Support at 5. Going on, Cook recognizes that the Court's Order in the *McDermitt* bellwether case states that the Indiana statute of repose is normally 10 years but can be extended an additional two years. *See* Defs.' Mem. in Support at 7.

2.  The Nebraska Rule Equitably Estopping a Statute of Repose Defense Applies Here.

Recognizing that Nebraska law applies to the present case, Cook asks the Court to dismiss Hill's product liability claims with prejudice on the basis of Nebraska's statute of repose for products manufactured outside of Nebraska and Indiana's 10-year statute of repose with possible 2-year extension. *See* Cook Defs.' Motion for Judgment on the Pleadings on Stat. of Repose Grounds (Nebraska) ("Defs.' Mot.") at pp.1-2; *see also* Neb. Rev. Stat. Ann. §§ 25-224(1)-(2)(a). In making this argument, Cook specifically claims that Plaintiff's strict liability and negligence (Counts I-IV) and implied warranty claims (Count VI) should be dismissed on statute of repose grounds. Defs.' Mem. in Support at 7-8; *see also Freeman v. Hoffman-La Roche, Inc.*, 260 Neb. 552, 572, 618 N.W.2d 827, 842 (2000) (recognizing that "any allegations regarding breach of implied warranty fall under allegations of design and manufacturing defects"). However, in invoking these statutes of repose, Cook overlooks the Nebraska doctrine of equitable estoppel, also known as fraudulent concealment, which clearly applies.

As explained, *supra*, Plaintiff Rex Hill was a resident of Nebraska at all pertinent times. Residents of Nebraska are protected by the statutory doctrine of equitable estoppel or fraudulent concealment:

> Elements of equitable estoppel as to the party estopped are: (1) conduct by the party estopped which amounts to a false representation or concealment of material facts; (2) the intention that such conduct shall be acted upon by the other party; and (3) knowledge, actual or constructive, of the true facts.

*Miers v. Central Mine Equipment Co.*, 604 F. Supp. 502 (D. Neb. 1985).

The concept of equitable estoppel of the statute of repose under Nebraska law in the context of a medical device claim was addressed in *MacMillen v. A.H. Robins Co.*, 217 Neb. 338, 341; 348 N.W.2d 869, 871 (May 11, 1984).  In *MacMillen*, a Dalkon Shield, an intrauterine contraceptive device, was inserted in the plaintiff in March 1971.  *Id.* at 217 Neb. at 339; 348 N.W.2d at 870. Seven years later, in November 1978, the plaintiff's physician diagnosed an abscess and infection in her uterus which required major surgery.  *Id.*  The plaintiff did not file the lawsuit until more than three years after her physician's diagnosis and surgery, which then was more than 10 years after the date when the intrauterine device had been implanted. *Id.* at 217 Neb. at 341; 348 N.W.2d at 871.  The amended petition alleged that the defendant had intentionally withheld information from the public regarding the dangers inherent in the use of the Dalkon Shield. *Id.*  The trial court sustained the demurrer to the amended petition and dismissed the petition. *MacMillen*, 217 Neb. 338, 341; 348 N.W.2d 869, 871. The Nebraska Supreme Court reversed the trial court and held, """One who wrongfully conceals a material fact necessary to the accrual of a cause of action

against him, and such concealment causes the opposite party to delay the filing of suit, cannot avail himself of the statutes of limitation as a defense;" . . . .'" *Id*.[3]

In the present case and as the Defendants have stated in their Exhibit A (Doc. No. 14064-1), Hill's device was implanted on December 9, 2006 and his complaint was filed on December 20, 2018.  However, Hill was not given any indication of injury by the placement by the IVC device until April 5, 2017, when a review was performed by Dr. Khatti. Upon that review, Dr. Khatti noted that the device was tilted, had caused injury, but had not been removed.  Therefore, just as in *MacMillen*, Plaintiff's claims were filed more than 10 years after the implantation of the medical device but less than four years after having first received notice of injury as a result of the IVC device.

Furthermore, just as in *MacMillen*, the concealment engaged in by Defendant warrants application of the doctrine of equitable estoppel.  Allegations of Cook's fraud have been proffered since the onset of this litigation. For example, the Master Complaint contains the following averments:

> 44. While not inclusive of all medical studies published during the relevant time period, the above references show that the Defendants *failed to disclose* to physicians, patients and/or Plaintiffs that its Cook Filters were subject to breakage, tilt, inability of removal, and migration even though they knew or should have known the same was true.

> 45. At all times relevant hereto, the Defendants continued to promote the Cook Filter as safe and effective even when inadequate clinical trials had been performed to support long or short to safety and/or efficacy.

---

[3] While Plaintiff maintains that Nebraska state law and the Nebraska interpretation of equitable estoppel applies in the present case, Plaintiff likewise avers that the principle of equitable estoppel also applies under Indiana law. *Lyons v. Richmond Cmty. Sch. Corp.*, 19 N.E.3d 254, 260 (Ind. 2014).

46. The Defendants *concealed* the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the Cook Filters, as aforesaid

. . . .

114. Defendants engaged in *unfair, unconscionable, deceptive, fraudulent and misleading* acts or practices in violation of all states' consumer protection laws, identified below.

115. Through its *false, untrue and misleading* promotion of Cook's IVC Filters, Defendants induced Plaintiffs to purchase and/or pay for the purchase of Cook's IVC Filters.

116. Defendants *misrepresented* the alleged benefits and characteristics of Cook's IVC Filters; *suppressed, omitted, concealed, and failed to disclose* material information concerning known adverse effects of Cook's IVC Filters; *misrepresented* the quality and efficacy of Cook's IVC Filters as compared to much lower-cost alternatives; *misrepresented* and advertised that Cook's IVC Filters were of a particular standard, quality, or grade that they were not; *misrepresented* Cook's IVC Filters in such a manner that later, on disclosure of the true facts, there was a likelihood that Plaintiffs would have opted for an alternative IVC Filter or method of preventing pulmonary emboli.

117. Defendants' conduct created a likelihood of, and in fact caused, confusion and misunderstanding. Defendants' conduct *misled, deceived*, and damaged Plaintiffs, and Defendants' *fraudulent, misleading, and deceptive* conduct was perpetrated with an intent that Plaintiffs rely on said conduct by purchasing and/or paying for purchases of Cook's Filters. Moreover, Defendants knowingly took advantage of Plaintiffs, who were reasonably unable to protect their interests due to ignorance of the harmful adverse effects of Cook's IVC Filters.

118. Defendants' conduct was *willful, outrageous, immoral, unethical, oppressive, unscrupulous, unconscionable*, and substantially injurious to Plaintiffs and offends the public conscience.

Plaintiff's Master Complaint, Document 213, Filed 01/30/15 (emphasis added). These averments were supported with evidence disclosed at the *Brand* trial that began January 15, 2019 (1:14-ML-2570).  For example:

My personal opinion is, if the new is not considered safe, the current should be stopped, based on theoretical calculations and testing.

We are trying to get some knowledge of the movement of a cava with an implanted filter, but nobody seems to have a dynamic evaluation.

To me it is very important that we at WCE can have the same conclusion as what was send to the FDA.

We do not want to hide that the filter broke at a test at a clinical relevant diameter, but to use the result to prove the safety . . . .

Trial Exhibit PX-1148.

. . . the Celect Filter may increase the risk of migration during use compared to the Tulip

. . .

"Without further detailed analysis, it was my conclusion that the new filter would be unlikely to fulfil the conformity assessment requirements unless some supportive human clinical data is established"

. . .

The risk analysis and the clinical evaluation have identified some safety concerns associated with the new design of the filter. The literature has been reviewed extensively, and discussions have been going on for the past 3 years. However, to date it has not been possible to find any clear evidence of the existing available data that could clarify and justify the safety risks identified. If you can provide some new evidence or inputs which can clarify these safety concerns, we would be happy to take these inputs into considerations [sic].

Trial Exhibit 1099.

Q Now, you told this jury a couple of days ago, essentially, that you believed the email message that attached this manuscript, that it was an effort by upper management -- by upper management to hide a picture of the sheep aorta that had perforated, correct?

A And that was my opinion.

January 15, 2019 Trial Testimony of Harlan M. Krumholz, M.D., 1079:23 – 1080:3.

Q -- can you explain -- you've already explained the concordance between Dr. Timperman and Dr. Gordon. There's obviously a discrepancy -- well, first of all, there's a big discrepancy between what Cook told the FDA and what all three of these sets of doctors found. Would you agree?

A That's true.

Trial Testimony of Harlan M. Krumholz, M.D., 577:18-23.

A They concluded that such a trial would be feasible, that in their -- based on what they found, they said, yeah, this went around the block. We think there's no reason to think it can't work. You could do it.

Q So did Cook then sponsor or conduct a larger randomized-control trial on the Celect after they determined it was feasible?

A Not that I'm aware.

Trial Testimony of Harlan M. Krumholz, M.D., 709:2-9.

Q Let's just put on the screen for a moment Plaintiff's Exhibit 1841. This is a document we discussed yesterday regarding the observations -- a summary of observations from the OUS clinical investigators, including observations of 8, 6, 10, 5, and greater than 3 millimeters outside the IVC. In this letter from April of 2007, did Cook disclose this information regarding these struts outside the wall from the OUS study to the FDA?

A They did not.

Q Are you aware, based on your review of the communications between Cook and the FDA, of any communication at any time where Cook revealed to the FDA that there were these multiple struts outside the wall between 3 and 10 millimeters?

A I'm not aware of any communication in which they told the FDA that there had been these penetrations described by their site investigators.

Trial Testimony of Harlan M. Krumholz, M.D., 630:19 – 631:10.

A No, it's not possible to make an informed decision because some of the key information was not in the public domain.

10

Q Known to Cook, but not disclosed?

A That's right.

Trial Testimony of Harlan M. Krumholz, M.D., 954:23 – 955:1.

Q In the 2009 time frame, did doctors know the dangers that the Celect posed in terms of perforation and -- perforation? Was that disclosed by Cook?

A No.

Q Was there publicity in 2009 to put doctors on alert that the Celect filter had this tendency to perforate the vena cava –

A No.

Q -- at a high rate?

A No.

Trial Testimony of Harlan M. Krumholz, M.D., 955:18 – 956:2.

Q Have you read the final reported of OUS?

A Yes, sir.

Q Does it show fracture –

A No, sir.

Q -- that particular filter?

A It doesn't mention any fracture, sir.

Q Did they disclose that?

A No, sir.

January 19, 2019 Trial Testimony of Gregory I. Gordon, M.D., 1674:25 – 1675:7.

These documents and portions of trial testimony are just a mere smattering of evidence showing Cook committed fraud upon the medical community. Since Plaintiff's Master Complaint alleges that Cook intentionally withheld information from the public regarding the dangers

11

inherent in the use of its IVC filters, Defendant's reliance on a statute of repose defense should be rejected, as it was in *MacMillen*, and Plaintiff should be allowed maintain his product liability claims.

## B. Plaintiff's Other Claims

### 1. Plaintiff's Express Warranty Claims Are Properly Pled.

Cook claims that Plaintiff's express warranty claims must fail because Plaintiff has neglected to provide a "sufficiently detailed explanation of what warranty they were allegedly provided by Cook and how they specifically relied on it to elect to receive Cook IVC filters[.]" Defs.' Mem. in Support at 5.  This argument falls flat when one takes the Nebraska express warranty law and Plaintiffs' Master Complaint into consideration in light of the applicable notice pleading standard.

Under Nebraska law, "[i]n order for a plaintiff to recover on a breach of express warranty, he must show, among other things, that 'the goods did not comply with the warranty, that is, that they were defective, and that his injury was caused by the defective nature of the goods.'" *Delgado v. Inryco, Inc.*, 230 Neb. 662, 666-67, 433 N.W.2d 179, 183 (1988) (quoting *Durrett v. Baxter Chrysler-Plymouth, Inc.*, 198 Neb. 392, 395-96, 253 N.W.2d 37, 39 (1977)).  "Thus, the ***only*** defect needed to establish a breach of express warranty is the failure of the goods to conform to the terms of the warranty."  *Hillcrest Country Club v. N.D. Judds Co.*, 236 Neb. 233, 248, 461 N.W.2d 55, 65 (1990) (emphasis added).

Plaintiff's Master Complaint clearly states, *inter alia*, that:

> 95. At the time and place of sale, distribution and supply of the Cook IVC Filters to Plaintiffs (and to other consumer and the medical community), the *Defendants expressly represented and warranted in their marketing materials, both written and orally, and in the IFUs, that the Cook IVC Filters were safe, well-tolerated, efficacious, and fit for their intended purpose and were of*

*marketable quality, that they did not produce any unwarned-of dangerous side effects, and that they were adequately tested.*

96. At the time of Plaintiffs' purchase from Defendants, the Cook IVC Filters *were not in a merchantable condition* and Defendants breached their expressed warranties, in that the filters:

> 1. *were designed in such a manner so as to be prone to a unreasonably high incident of fracture, perforation of vessels and organs, and/or migration*;

> 2. *were designed in such a manner so as to result in a unreasonably incident of injury to the organs of its purchaser*; and

> 3. *were manufactured in such a manner so that the exterior surface of the Cook Filters were inadequately, improperly and inappropriately designed causing the device to weaken and fail.*

97. *As a direct and proximate result of the Cook IVC Filters' defects, as described herein, Plaintiffs have suffered permanent and continuous injuries, pain and suffering, disability, and impairment.* Plaintiffs have suffered emotional trauma, harm, and injuries that will continue into the future. Plaintiffs have lost their ability to live a normal life and will continue to be so diminished into the future. Furthermore, Plaintiffs have lost earnings and will continue to lose earnings into the future and have medical bills both past and future related to care because of the IVC filters' defect.

Document 213 Filed 01/30/15 (emphasis added).

Cook's claim that Plaintiff have failed to state a claim to relief on the basis of breach of express warranty that is plausible on its face is especially confounding in light of the notice pleading standards of Federal, Indiana, and Nebraska Jurisdictions. *See* Fed. R. Civ. P. 8 (a); *Bayer Corp. v. Leach*, 147 N.E.3d 313, 315 (Ind. 2020) (citing Ind. Trial Rule 8(A)(1); *Trail v. Boys & Girls Club of Nw. Indiana*, 845 N.E.2d 130, 135 (Ind. 2006); and *State v. Rankin*, 260 Ind. 228, 231, 294 N.E.2d 604, 606 (1973)) ("Indiana is a notice pleading state and requires that pleadings contain only 'a short and plain statement of the claim showing that the pleader is entitled

to relief[.]'  Plaintiffs need not 'set out in precise detail the facts upon which the claim is based, [but they] must still plead the operative facts necessary to set forth an actionable claim.' . This means that although 'highly desirable,' a precise legal theory in a pleading—a principle connecting a claim to the relief sought—'is not required.'."); *Craw v. City of Lincoln*, 24 Neb. App. 788, 795, 899 N.W.2d 915, 921 (2017) (citing e.g. *Tryon v. City of North Platte*, 295 Neb. 706, 890 N.W.2d 784 (2017), explaining the Nebraska pleading regime).

In support of its claims that Plaintiff's breach of express warranty allegations are insufficient as a matter of law, Cook relies only upon *Wendt v. Beardmore Suburban Chevrolet, Inc.*, 366 N.W.2d 424, 428 (Neb. 1985), a case that did not involve a motion for judgment on the pleadings  standard but instead a finding by a trial court and hinged on the lack of a specific warranty provided by a used car salesman – a far cry from the multiple erroneous representations included in the marketing materials and instructions for use ("IFU") relating to Cook's IVC Filters. *Wendt*, 366 N.W.2d at 426.  Furthermore, Cook's reference to the Texas matter that this Court previously dismissed also has little bearing to the instant case considering Texas's very different express warranty law requiring *six* specific elements.  *See* Entry on Motion for Judgment on the Pleadings Based on the Statute of Repose ("2017 Repose Order"), Dkt. 4918, at 14.  Plaintiff Hill's breach of express warranty claims in his Master Complaint *do* meet the Nebraska standard, however.  It is clear, therefore, that judgment on the pleadings of Plaintiff's breach of express warranty claim would be inappropriate here and Cook's motion should be denied.

**2.**  Plaintiffs' Nebraska Consumer Protection Act (NCPA) Claims Are Properly Pled and the NCPA is Applicable to Medical Devices.

Within Plaintiff's Master Complaint, Plaintiffs have alleged that "Defendants engaged in unfair competition or deceptive acts or practices in violation of Neb. Rev. St. § 59-1602, et seq.[,]" also known as the Nebraska Consumer Protection Act ("NCPA").  Document 213 Filed 01/30/15,

p. 29.  The NCPA states that "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful."   Neb. Rev. St. § 59-1602. The NCPA provides a cause of action to "any person who is injured in his or her business or property" resulting from a violation."  Neb. Rev. St. § 59-1609.  The NCPA is remedial consumer protection statute that is to be liberally construed. *See Kuntzelman v. Avco Fin. Servs. of Neb., Inc.*, 206 Neb. 130, 291 N.W.2d 705, 707 (1980).   "Conduct is not immunized merely because the person so acting falls within the jurisdiction of a regulatory body." *Id.*

Cook claims that Plaintiff has failed to meet Fed. R. Civ. P. 9(b)'s requirements as to pleading with particularity. ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." USCS Fed. Rules Civ. Proc. R. 9 (b).)  In making this claim, however, Defendant ignores the specific claims made within Plaintiff's Short Form Complaint, which identified Plaintiff Hill, the date and location of his implant surgery, the implanting physician, and the specific type of Cook IVC Filter he was implanted with.  *See* Plaintiff's Short Form Complaint, Dkt. 1.  Count VII, the Consumer Protection section of Master Complaint, further incorporates and re-alleges each and every other allegation of the Master Complaint, including the sections, discussed at length *supra* in Section V.A.2., which constitute the many specific deceptive practices of Cook in the marketing, distribution, and sales of its IVC filters. *See* Document 213 Filed 01/30/15.  Therefore, within his Master Complaint and Short Form Complaint, Plaintiff clearly provided the "who, what, when, where, and how" he failed to discover his injury.  *Chafin v. Wis. Province of the Soc'y of Jesus*, 301 Neb. 94, 100, 917 N.W.2d 821, 825 (2018).

Cook also claims that medical devices are exempt from the NCPA by generously interpreting *In re ConAgra Foods, Inc.*, 908 F. Supp. 2d 1090 (C.D. Cal. 2012) and applying its

determinations as to food labeling to medical devices.  In fact, the Nebraska Supreme Court has specifically explained the broad intent of the NCPA by examining the legislative intent behind the Washington Consumer Protection Act, which the NCPA was designed after:

> The courts have consistently refused to find that regulation, in and of itself, gives rise to immunity from the provisions of such acts. Conduct is not immunized merely because the person so acting falls within the jurisdiction of a regulatory body.

*Kuntzelman v. Avco Fin. Servs., Inc.*, 206 Neb. 130, 135, 291 N.W.2d 705, 707 (1980) (*see also Id*. citing *Dick v. Atty. Gen.*, 83 Wash. 2d 684, 688, 521 P.2d 702, 705 (1974) ("We have stated that the Consumer Protection Act should be liberally construed to effect its purpose, in accordance with the direction contained in RCW 19.86.920.  If a particular practice found to be unfair or deceptive is not regulated, even though the business is regulated generally, it would appear to be the legislative intent that the provisions of the act should apply. The use of the word 'actions or transactions' rather than 'business or trade' makes it clear, we think, that this was the legislative intent.")

However, despite this instruction to broadly interpret and apply the NCPA, Cook conveniently interprets *In re ConAgra Foods, Inc*.'s findings regarding the labeling and advertising of food products to claim such a determination warrants the dismissal of Plaintiff's NCPA claims here.  *See In re ConAgra Foods, Inc*., 908 F. Supp. 2d 1090, 1104 (C.D. Cal. 2012).  It is simply inapposite to make such a leap given the clear legislative intent behind the NCPA.  While Cook claims that the certain of FDA's regulation abilities over device labeling and reporting requirements show that the FDA exerts similar regulatory authority over medical devices as it does food labeling, the FDA does not require the root sources of many of Plaintiff's consumer fraud complaints, such as inadequate clinical trials. *See* Plaintiff's Master Complaint, Document 213 Filed 01/30/15, § 45.  In any event, this argument of Cook's is inappropriate for a Motion for the

16

Judgment on the Pleadings as it asks the Court to look beyond Plaintiff's complaint, to the operation of the FDA in the context of Cook's IVC filters. *See* §III, *supra*. As a result, Defendant's Motion with respect to Plaintiff's NCPA claims should be denied.

## VI.     CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Cook's Motion for Judgment on the Pleadings.

Dated: August 31, 2020                                Respectfully Submitted,

                                                                     **Kirkendall Dwyer LLP**

                                                                     /s/ *Andrew F. Kirkendall*
                                                                     Andrew Kirkendall
                                                                     Texas Bar No. 24050882
                                                                     Alexander G. Dwyer
                                                                     Texas Bar No. 24054271
                                                                     Kirkendall Dwyer LLP
                                                                     4343 Sigma Rd., Ste 200
                                                                     Dallas, TX 75244
                                                                     Phone: 214-271-4027
                                                                     Fax: 214-253-0629

                                                                     ***Attorney for Plaintiffs***

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2020, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

/s/ *Andrew F. Kirkendall*
Andrew F. Kirkendall
Kirkendall Dwyer LLP