IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates to:

Merrilyn V. Johnson, *on behalf of* Ronald D. Johnson (deceased)
1:17-cv-06069

## THE COOK DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiff Merrilyn Johnson ("Plaintiff") filed this action for damages allegedly arising from the death of her husband Ronald D. Johnson ("Mr. Johnson" or "Decedent"). Cook is entitled to summary judgment as to all of Plaintiff's claims because Plaintiff did not file the claim within two years of Mr. Johnson's death as required by Utah law.

This case was initially filed in Missouri, and it was then transferred to the MDL. For the purposes of this Motion, the Court may assume that the case is governed by the law of Utah, the choice of law urged by Plaintiff and the state of Mr. Johnson's residence throughout the relevant time period and at the time of his death. Utah law requires that any action for wrongful death or any survivorship action based on alleged injury by a product be commenced within two years of the decedent's death. Here, Plaintiff did not commence this action until almost ten years after Mr. Johnson's death.

In an attempt to avoid the time and expense of this motion, Cook asked Plaintiff's counsel to voluntarily dismiss, but Plaintiff declined to do so. Cook therefore moves the Court to grant

summary judgment on all of Plaintiff's claims as time-barred. In the alternative, the Court should limit Plaintiff's potential recovery to special damages based on the limitations in Utah's survival claims statute.

## Statement of Material Facts Not in Dispute

1. The case-specific facts pertinent to this Motion appear in two places: 1) Plaintiff's complaint, *Johnson* Dkt. 1, and 2) Plaintiff's Case Categorization Form,[1] attached as **Exhibit A**, and the accompanying 30 pages of medical records Plaintiff submitted in support of categorization, attached as **Exhibit B** (all highlighting in records performed by Plaintiff's counsel as part of categorization process).

2. Plaintiff originally filed this case in the Eastern District of Missouri on February 21, 2017 as part of a multi-plaintiff case. *See generally Johnson* Dkt. 1, Plaintiff's Complaint. The case was transferred by the JPML to the MDL on May 31, 2017. *See* Case 1:17-cv-06069-RLY-TAB, Dkt. 11 (May 31, 2017). Plaintiff did not file a new short-form complaint after the case was transferred, so the original complaint is the only operative pleading from Plaintiff.

3. The Complaint stated that "[d]ecedent Ronald D. Johnson at all times alleged herein as a citizen of the State of Utah." Complaint, ¶ 57.

4. The Complaint contains only a single paragraph that makes allegations of injury specific to Mr. Johnson: "Decedent Ronald Johnson was implanted with an IVC Filter and suffered pre-death injuries and/or death." *Id.*, ¶ 58.

---

[1] This Court has previously ruled that information and records submitted as part of categorization can be used as evidence in support of a motion for summary judgment. *See* Entry on the August 20, 2019 Status Conference, Dkt. 11602, p. 1 (denying Plaintiffs' motion to strike categorization evidence relied on by Cook in a summary judgment brief).

5. On December 21, 2018, Plaintiff served a Case Categorization Form that categorized this case as categories 2, 4, and 6. *See* Exhibit A. The Category 4 categorization and the Category 6 categorization both refer to diagnoses made in a venocavagram record dated January 10, 2005. *See id.* Generally, his CCF claims that on January 10, 2005, a venacavagram found thombus in his IVC filter that prevented retrieval of the filter and caused him worry.

6. The medical records submitted in support of categorization include placement records showing that Mr. Johnson received a Tulip filter on January 4, 2005. *See* Exhibit B at 1. The procedure was performed at LDS Hospital, *id.* at 1-2, located in Salt Lake City, Utah.

7. The January 10, 2005 venocavagram records from LDS Hospital include the following pertinent notations:

- "The possibility of inability to remove the filter was discussed [with Mr. Johnson] prior to the procedure. Informed consent was signed."

- A venacavagram was performed: "After identification of a large volume of clot within the IVC filter and in the IVC below the filter, the catheter was removed and homeostasis was achieved at the right neck."

- "Also below the IVC filter there's thrombus within the distal portion of the right common iliac vein and mild nonocclusive thrombus within the IVC below the filter…Because of this clot, IVC Filter removal was not performed."

Exhibit B at 12-13.

8. An autopsy report from LDS Hospital issued on May 10, 2007, identifies May 9, 2007 as the date of Mr. Johnson's death and makes the following statements in the section marked "Important Diagnoses": A. Gastrointestinal hemorrhage; B. Status-post abdominal aortic aneurysm repair, C. Coronary artery disease, status post coronary artery bypass grafting; D. Chronic obstructive pulmonary disease. *See id.* at 29-30. In a section titled "Special Problems, Tissues, OR Diagnoses To Be Investigated," the autopsy report lists "Gastrointestinal hemorrhage" *Id.*

9. On July 6, 2020, Cook sent a letter to Plaintiff's counsel requesting voluntary dismissal of this case to avoid unnecessary litigation and expenses for both Cook and Plaintiff. *See* July 6, 2020 Letter from A. Pierson to J. Driscoll, attached as **Exhibit C**.

10. Plaintiff's counsel responded by email the next day, indicating that Plaintiff intended to dispute Cook's arguments that the case is time barred and would not dismiss the case voluntarily. *See* July 7, 2020 Email from J. Driscoll to A. Pierson, attached as **Exhibit D**.

## ARGUMENT

**I.  Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Dempsey v. Atchison, Topeka and Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994), *cert. denied*, 513 U.S. 821 (1994) ("[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law."). If a plaintiff fails to establish a genuine issue of material fact as to any one of the elements of the claim asserted, the defendant is entitled to summary judgment. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009).

**III.  Cook is Entitled to Summary Judgment Because Plaintiff Failed to Commence this Action Within the Two Years Permitted under Utah Law.**

In their email declining to dismiss this action, Plaintiff's attorneys assert that Utah law governs the deadlines for timely commencement of Plaintiff's claims. *See* Exh. D, July 7, 2020 Email from J. Driscoll to A. Pierson (statements nos. 5 & 6). Assuming for the sake of argument that Plaintiff's invocation of Utah law is correct, Plaintiff's claims are barred as a matter of law

because she failed to commence her action within the two-year deadlines Utah law imposes for both wrongful death and survival actions.[2]

Plaintiff's complaint does not make clear whether she is asserting a wrongful death claim (i.e., a claim that Mr. Johnson's Cook IVC filter caused his death), a survival claim (i.e., a claim that Mr. Johnson's filter injured him before his death but did not cause his death), or both. Although Plaintiff asserted in the Complaint that Mr. Johnson "was implanted with an IVC Filter and suffered pre-death injuries and/or death," she did not categorize the case as Category 7(j) (death) in the case categorization process. *See* Complaint, ¶ 58; Exh. A, Plaintiff's Case Categorization Form (selecting Categories 2, 4, and 6). In light of this ambiguity, Cook addresses below both Utah's wrongful death and survivorship statutes and the Utah Products Liability Act (UPLA).

In a nutshell, Plaintiff's claims are based on (1) 2005 findings of thrombus and a resulting decision not to remove his filter, and/or (2) Mr. Johnson's 2007 death, which occurred almost 10 years before this case was filed. Utah law bars Plaintiff's claims under any theory, and Cook is entitled to summary judgment.

---

[2] This case has an unusual procedural posture. Although Plaintiff originally filed the case in the U.S. District Court for the Eastern District of Missouri, the case has no apparent connection to Missouri. Mr. Johnson resided at all relevant times in Utah and his death occurred in Utah. *See* Complaint, ¶ 57. A transferee court would ordinarily apply the transferor court's choice-of-law rules (here, Missouri), but "when an action was improperly filed in the transferor court [as it was here], the transferee court should apply its own state's choice of law rules rather than those of the transferor's state." *Koutsoubos v. Casanova*, 816 F. Supp. 472, 475 (N.D. Ill. 1993). This would ordinarily raise the question of whether the Court should apply the choice-of-law rules of Indiana (the transferee state) or Utah (decedent's home state and the site of his death). The Court need not address that issue, however, because even applying the Utah law that Plaintiff urges, the action was not timely filed.

**A.     Plaintiff did not file the lawsuit within two years of Decedent's death, as required by Utah's wrongful death Statute.**

If Plaintiff intends her Complaint to assert a claim of wrongful death, Plaintiff failed to commence this action by the two-year deadline imposed by the Utah wrongful death statute. That statute provides:

An action may be brought within two years:

\*\*\*\*

(2) for recovery of damages for a death caused by the wrongful act or neglect of another

UTAH CODE § 78(B)-2-304(2). A cause of action for wrongful death under this statute accrues, and the statute begins to run, at the time of the death. *See, e.g., Matter of Estate of Garza*, 725 P.2d 1328, 1329 (Utah 1986) (citing *Platz v. International Smelting Co.,* 61 Utah 342, 213 P. 187 (1922)).[3]

Here, Plaintiff did not commence the action within two years of Mr. Johnson's death. Mr. Johnson passed away on May 9, 2007, *see* Exhibit B at 29-30 (autopsy report listing date and manner of death), and the deadline for commencing an action based on his death expired on May 10, 2009, the day after the second anniversary of his death. Plaintiff did not commence this action, however, until February 7, 2017—almost eight years ***after*** that deadline. Cook is entitled to summary judgment on any claim of wrongful death.

---

[3] The Utah Supreme Court has recognized a limited discovery rule for wrongful death claims where the fact of a decedent's death is unknown and the body is not discovered by the guardians-plaintiffs until after the statute's two-year deadline has already expired. *See McHenry v. Utah Valley Hosp.*, 724 F. Supp. 835, 839 (D. Utah 1989) (explaining the Utah discovery rule); *Myers v. McDonald*, 635 P.2d 84 (Utah 1981) (tolling action for time period during which the decedent was considered missing and body was not located). This exception has no application here; Mr. Johnson's death was known to Plaintiff immediately, with an autopsy report issued on May 10, 2007, the day after Mr. Johnson passed away. *See* Exhibit B at 29-30.

> **B.    Plaintiff's failure to file the claim within two years of the death at issue bars all of her claims regardless of theory.**

If Plaintiff intends her Complaint to assert a survival claim based on injuries to Mr. Johnson before his death, Plaintiff again failed to commence this action within the two-year statute of limitations Utah law imposes on such claims.

The Utah Survival Statute permits an estate representative to pursue personal injury claims on behalf of the decedent:

> A cause of action arising out of personal injury to an individual, or death caused by the wrongful act or negligence of a wrongdoer, does not abate upon the death of the wrongdoer or the injured individual. The injured individual, or the personal representatives or heirs of the individual who died, has a cause of action against the wrongdoer or the personal representative of the wrongdoer for special and general damages, subject to Subsection (1)(b).[4]

Utah Code § 78B-3-107. This survival statute does not of course create any substantive claims; it merely preserves any claims that the decedent had at the time of death.

Here, any substantive claims that Plaintiff pursues under this survival statute fall within the scope of the Utah Products Liability Act (UPLA), Utah Code § 78B-6-700 et seq. As Utah courts have explained, "the Act refers broadly to 'a product liability action against a product manufacturer, wholesaler, or retailer' and creates a rebuttable presumption regarding defects, which applies in '**any action for damages for personal injury, death, or property damage allegedly caused by a defect in a product.**'" *Strickland v. Gen. Motors Corp.*, 852 F. Supp. 956, 959 (D. Utah 1994) (quoting predecessor statute Utah Code § 78-15-4-6) (emphasis added). Based on this broad language, Utah courts have concluded that "the Utah legislature likewise intended that all claims against a manufacturer, based on a defective product, be subject to [the UPLA],

---

[4] Subsection (1)(b) of the Statute relates to conditions arising due to prior judgments or settlements and is not relevant here.

7

regardless of the theory alleged." *Strickland*, 852 F. Supp. at 959; *see also McCollin v. Synthes, Inc.*, 50 F.2d 1119, 1122 (D. Utah 2003) (same); *Hansen v. Novartis Pharm Corp.*, 2011 WL 6100848, at *3 (D. Utah Dec. 7, 2011) (explaining that UPLA applies to all claims "against a manufacturer based on a defective product in both tort and contract, including claims based on negligence, strict liability, tortious misrepresentation, and breach of warranty.").

The UPLA imposes a two-year statute of limitations for product liability claims: "A civil action under this part shall be brought within two years from the time the individual who would be the claimant in the action discovered, or in the exercise of due diligence, should have discovered, both the harm and its cause." Utah Code § 78B-6-706. As a general rule, a "statute of limitations begins to run upon the happening of the last event necessary to complete the cause of action." *Russell Packard Dev., Inc. v. Carson*, 108 P.3d741, 746 (Utah 2005). Here, the last event necessary to complete a cause of action for personal injury to the decedent Mr. Johnson could not have occurred later that the date of Mr. Johnson's death, May 9, 2007. The present action was not commenced within two years of that date, and Plaintiff's claim is therefore time-barred.

Cook anticipates that Plaintiff will try to invoke the UPLA's discovery rule. Under Utah's three-step discovery test, the statute of limitations begins to accrue when the plaintiff discovers or should have discovered: "'(1) that she has been injured; (2) the identity of the maker of the allegedly defective product; and (3) that the product had a possible causal relation to her injury.'" *Mecham v C.R. Bard, Inc.*, 2020 WL 2768997, at *3 (May 27, 2020) (quoting *Aragon v. Clover Club Foods Co.*, 857 P.2d 250, 252 (Utah Ct. App. 1993)).

In applying this three-part test, Utah courts have held that the plaintiff must exercise due diligence in seeking to discover the harm and the causal link between the injury and the product:

"What constitutes due diligence must be tailored to fit the circumstances of each case. It is that diligence which is appropriate to accomplish the end sought which is reasonably calculated to do so." *Aragon*, 857 P.2d at 253. However, "all that is required to trigger the statute of limitations is sufficient information to put the plaintiffs on notice to make further inquiry." *Macris v. Sculptured Software, Inc.*, 24 P.2d 984, 990 (Utah 2001) (citing *Berenda v. Langford*, 914 P.2d 45, 51 (Utah 1996)); *see also Adams v. Am. Med. Sys., Inc.*, 705 F. App'x 744, 746 (10th Cir. 2007) (unpublished) (applying the UPLA inquiry notice rule in a pelvic mesh medical device case and affirming district court's grant of summary judgment on statute of limitations grounds).

Once a plaintiff is on inquiry notice, the plaintiff "may be imputed with knowledge of 'everything to which such inquiry might have led.'" *Pioneer Builders Co. of Nev., Inc. v. K D A Corp.*, 292 P.3d 672, 679 (Utah 2012); *see also McCollin*, 50 F. Supp. 2d at 1124 ("When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it."). What plaintiff knew or should have known is a factual question, but "'[w]here the evidence is so clear that there is no genuine factual issue … the determination can be made as a matter of law.'" *Mecham*, 2020 WL 2768997, at *4 (quoting *McBroom v. Child*, 392 P.3d 835, 846 (Utah 2016)). In the present case, the discovery rule does not excuse Plaintiff's failure to commence this action within two years of Mr. Johnson's death.

    **1.**    **Plaintiff knew that actual damages occurred no later than the time of Mr. Johnson's death in May 2007, almost ten years before this case was filed.**

The first step of the inquiry under the *Aragon* test is whether there was a "physical injury or illness suffered by the plaintiff as a result of the defendant's conduct." *Adams*, 705 F. App'x at 746. Discovery of the injury "does not mean the plaintiff must realize the full extent of [his or her] injury." *McHenry*, 724 F. Supp. at 839. Rather, this step is satisfied once the plaintiff

experiences "actual damages." *Cannon v. Minnesota Mining & Mfg. Co. (3M)*, 2009 WL 350561, at *6 n. 2 (D. Utah Feb. 11. 2009) (applying the "actual damages" concept from medical malpractice law to product liability context and holding than an injury beyond a nominal harm "begins the [UPLA] limitations period, and later injuries, even new and severe ones, do not restart it."); *see also Adams*, 705 F. App'x at 747 (applying the same standard in the context of a pelvic mesh product liability case).

Here, an injury cognizable under the UPLA occurred at the time of Plaintiff's cancelled January 10, 2005, filter retrieval procedure, but certainly no later than the time of Mr. Johnson's death on May 9, 2007. The medical records Plaintiff submitted in support of categorization indicate that "[t]he possibility of inability to remove the filter was discussed [with Mr. Johnson] prior to the [placement] procedure" and that "[i]nformed consent was signed" by Mr. Johnson, indicating he understood there was a chance the filter could not be or medically need not be removed. Exh. B. at 12. Mr. Johnson's physicians then aborted the planned removal procedure because the venocavagram performed in advance of the procedure revealed blood clots in the iliac vein and below the level of the filter. *Id.* at 12-13. Thus, the injury **as Plaintiff claims it** occurred at that time. Plaintiff claims that the inability to remove the filter is an "injury" (*i.e.,* the case is categorized in Categories 4 and 6) and that some "actual damages" were incurred at that time that Plaintiff seeks to recover from Cook, such as medical expenses associated with the venocavagram. *Cannon*, 2009 WL 350561, at *6 n. 2 (applying "actual damages" standard); *Adams*, 705 F. App'x at 747 (same).

Moreover, Mr. Johnson passed away on May 9, 2007. To the extent that Plaintiff claims that Mr. Johnson's death was an "injury" related to his IVC filter, that injury was indisputably known at that time. Thus, even if the 2005 events were not a sufficient injury to commence the

statute running, the injury that forms the basis of this lawsuit necessarily occurred no later than the date of Mr. Johnson's death.

      **2.    Cook's identity as the manufacturer of the filter Mr. Johnson received was easily ascertainable from his medical records.**

The second *Aragon* factor is also satisfied because Cook's identity as the manufacturer was easily discernable from Mr. Johnson's medical records, which indicate that he received a Cook Tulip filter and that this filter was never removed from his body. *See generally* Exhibit B; *Pratt v. Cavagna N. Am., Inc.*, 2013 WL 61406075, at *4 (D. Utah Nov. 21, 2013) ("[A] plaintiff has a duty to act with reasonable diligence to ascertain the identity of the defendant"); *Griffiths-Rast v. Sulzer Spine Tech.*, 216 F. App'x 790, 796 (10th Cir. 2017) (unpublished) (holding that plaintiffs have a duty under the UPLA to seek out the identity of the manufacturer if it is not already known to them). In other words, "'plaintiffs cannot simply wait for information regarding a potential defendant to come to them.'" *Mecham*, 2020 WL 2768997, at *5 (quoting *Pratt*, 2013 WL 61406075, at *4). Plaintiff cannot reasonably deny that either Mr. Johnson or she could have easily discovered the manufacturer of Mr. Johnson's filter at any time after the original placement of the filter simply by requesting Mr. Johnson's medical file from LDS Hospital.

      **3.    Plaintiff knew (or should have known) that the filter had a possible causal relation to the claimed injuries years before the case was filed.**

The final *Aragorn* element, actual or constructive knowledge of possible causation, is also satisfied here. Mr. Johnson's medical records establish that he was expressly informed by his physicians of the risk that the IVC filter could not be removed and that he signed an informed consent confirming his understanding of that risk. *See* Exhibit B at 12-13. Inasmuch as Mr. Johnson knew that the filter removal procedure might not be successful, Plaintiff cannot dispute that both Mr. Johnson and Plaintiff knew or should have known at the time that the retrieval

11

procedure was cancelled that the filter itself could be "a possible causal relation" to the filter being irretrievable. *Aragon*, 857 P.2d at 252 (describing the third prong of the test as the plaintiff having knowledge the product had "a possible causal relation" to the injury").

With respect to the death, Mr. Johnson's medical records list "gastrointestinal hemorrhage" among Mr. Johnson's causes of death.  Plaintiff knew that Mr. Johnson had a retained IVC filter in his body and that filters are prescribed to treat blood clot issues.  Indeed, the autopsy report listed the gastrointestinal hemorrhage in a section labeled "Special Problems, Tissues, OR **Diagnoses To Be Investigated**" (emphasis added), which explicitly placed Plaintiff on inquiry notice to investigate the medical reasons behind the death further.  *See Macris*, 24 P.2d at 990 (holding that "all that is required to trigger the statute of limitations is sufficient information to put the plaintiffs on notice to make further inquiry."); *see also Adams v. Am. Med. Sys., Inc.*, 705 F. App'x 744, 746 (10th Cir. 2007) (unpublished) (affirming grant of summary judgment and holding that the plaintiff had inquiry notice to investigate further under UPLA in a pelvic mesh case because she had experienced more frequent urinary problems after the implantation of the mesh). Put differently, Mr. Johnson's death from gastrointestinal bleeding, with a filter in his body, is "notice enough to excite attention and put the party on [her] guard and call for inquiry." *McBroom*, 392 P.3d at 846.

Whether Mr. Johnson himself personally thought that the filter was a possible cause of the inability to retrieve the filter and whether Plaintiff personally thought that the filter was a possible cause of the internal bleeding that led to Mr. Johnson's death is irrelevant to the issue here.  The test is an objective one, and a reasonable plaintiff in that position would have investigated further. *See McCollin v. Synthes Inc.*, 1999, 50 F.Supp.2d 1119, 1123 (D. Utah. 1999) (holding plaintiff's products liability claim against orthopedic bone screw manufacturer accrued when he underwent

12

second surgery to replace failed screws, even though he did not discover that screws were not intended for spinal use until he viewed subsequent television program); *Mecham v C.R. Bard, Inc.*, 2020 WL 2768997, at *3 (holding that regardless of plaintiff's testimony about her personal knowledge and understanding of causation issues (which the court found were sufficient to trigger the statute of limitations), "a reasonably diligent person in her position" would have known of possible causation because of publicly available information about causation).

In sum, Plaintiff's claims are barred as a matter of Utah law because they are based on injuries that accrued not later than the time of Plaintiff's death in 2007. Cook is therefore entitled to summary judgment because all of Plaintiff's claims are barred by several years.

**IV.  In The Alternative, the Court Should Limit Plaintiff's Damages To Special Damages Because The January 10, 2005 Failed Retrieval Attempt Occurred More Than Six Months Before Mr. Johnson's May 9, 2007 Death.**

If the Court does not grant summary judgment on all of Plaintiff's claims as requested above, the Court should limit Plaintiff's recovery of damages premised on the 2005 failed retrieval attempt to special damages as defined under Utah law. Specifically, the Utah survival Statute provides:

> If the death of the injured individual from an unrelated cause occurs more than six months after the incident giving rise to the claim for damages, the claims shall be limited to special damages unless, prior to the individual's death [the plaintiff follows a claim notice procedure outlined in the remainder of the Statute].

Utah Code § 78B-3-107(1)(c).

Here, Plaintiff's cancelled retrieval attempt occurred on January 10, 2005, which was more than two years before Mr. Johnson died on May 9, 2007. Plaintiff's complaint does not claim that she or her counsel provided notice of a claim to Cook at any point prior to Mr. Johnson's death in 2007. Because the time period between the January 10, 2005 failed retrieval attempt and Mr. Johnson's death on May 9, 2007 was longer than six months, Utah's survival Statute limits

Plaintiff's potential recovery to special damages only for any personal injury claims that Plaintiff may be presenting regarding that 2005 failed retrieval procedure not related to Mr. Johnsons' death.

## CONCLUSION

For the reasons set forth above, the Cook Defendants are entitled to summary judgment on all of Plaintiff's claims in this case.

Dated: September 9, 2020

        Respectfully submitted,

        /s/Andrea Roberts Pierson
        Andrea Roberts Pierson
        Jessica Benson Cox
        FAEGRE DRINKER BIDDLE & REATH LLP
        300 North Meridian Street, Suite 2500
        Indianapolis, Indiana 46204
        Telephone: (317) 237-0300
        Andrea.Pierson@faegredrinker..com
        Jessica.Cox@faegredrinker.com

        James Stephen Bennett
        FAEGRE DRINKER BIDDLE & REATH LLP
        110 W. Berry Street, Suite 2400
        Fort Wayne, Indiana 46802
        Telephone: (260) 424-8000
        Stephen.Bennett@faegredrinker.com

        *Attorneys for Defendants Cook Incorporated, Cook Medical LLC f/k/a Cook Medical Incorporated, William Cook Europe ApS*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2020, a copy of the foregoing The Cook Defendants' Memorandum in Support of Motion For Summary Judgment was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.

/s/Andrea Roberts Pierson