IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates to:

Merrilyn V. Johnson, *on behalf of*
Ronald D. Johnson (deceased)
Case No. 1:17-cv-06069

**THE COOK DEFENDANTS' REPLY MEMORANDUM IN
SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Plaintiff Merrilyn Johnson raises four arguments in her opposition to Cook's motion for summary judgment: (1) that Cook' use of the categorization form and records is improper, (2) that Cook's motion is premature, (3) that her late filing should be excused on grounds of fraudulent concealment, and (4) that she investigated the causes of Mr. Johnson's death but was unable to discover Cook's identity as the manufacturer and that she had a claim against Cook until 2017.[1] *See* Pl.'s Opp. to the Cook Defs.' Mot. for Summary Judgm., Dkt. 14503 (hereafter, "Pl. Opp.").

The Court has already heard and rejected the first three of these arguments in ruling on earlier dispositive motions, including the Court's grant of summary judgment in the *McDermitt* bellwether case and the recent grant of summary judgment in six time-barred open removal cases under Indiana law. *See* Entry on the Cook Defendants' Motion for Summary Judgment – Statute

---

[1] Plaintiff's Opposition does not substantively address Cook's alternative request to limit Plaintiff's claim for damages under Utah's survival statute to special damages, arguing only that she also asserts a claim for wrongful death. Cook therefore rests on its arguments in the opening brief regarding that issue.

US.129798641

of Repose, Dkt. 13187 (entered March 21, 2020) (hereafter, the "McDermitt Order"); Dkt. 14428 (granting summary judgment in six time-barred open removal cases governed by Indiana law). Plaintiff's fraudulent concealment argument fails because Utah law has the same requirements about a defendant's "active steps" in concealing a plaintiff's cause of action that the Court found to be dispositive under Indiana law in the *McDermitt* case.

Finally, Plaintiff's arguments about the Utah discovery rule also fail. Plaintiff has not identified any case in which a court has employed equitable tolling to a time-barred wrongful death claim, much less in a situation like this where the case was not commenced until almost eight years after the death occurred. Utah employs an objective approach to the statute of limitation and requires a plaintiff to diligently investigate whether he or she has a claim, including taking steps to uncover a defendant's identity if it is not readily known. Here, Plaintiff does not claim that she could not have discovered Cook's identity as the manufacturer of her decedent's IVC filter had she simply inquired of the decedent's doctor or obtained a copy of his medical records.

## ARGUMENT

**I.    This Court May Consider Plaintiff's Case Categorization Form and Accompanying Records in Ruling on this Motion Just as it Has in Ruling on Prior Dispositive Motions.**

Plaintiff first objects to Cook's reference to the categorization of this case and reliance on the Plaintiff's case categorization form and supporting medical records as evidence in support of Cook's motion. Pl. Opp. at 5-6. Plaintiff decries Cook's use of the categorization form as "gamesmanship" and goes as far as to suggest that Cook's use of the categorization forms and records in support of the present motion is sanctionable. *Id.* at 6.

Cook's use of the categorization form and records for multiple reasons presents no procedural problems. As the Court is aware, other plaintiffs have made this argument in response

US.129798641

to earlier motions, and the Court has consistently rejected the argument.  *See* Dkt. 11131, Entry for June 13, 2019, pp. 2-4 (dismissing Category 2 cases); Dkt. 11602, Entry on the August 20, 2019 Status Conference, p. 1 (denying PSC's Motion to Strike) (entered Aug. 21, 2019). Moreover, those earlier motions were 12(c) motions and the issue was whether the categorization of the case could be considered a part of the pleadings for the purpose of a motion to dismiss.[2]  In the present motion for summary judgment, there is no issue about the inclusion of matters outside of the pleadings, rendering Plaintiff's procedural complaints here even less persuasive.

As Cook has noted before, one of the primary purposes of the Court's categorization process is to screen out meritless cases.  *See* Dkt. 9322, Screening Order & Bellwether Selection Plan, p. 2 (entered Oct. 2, 2018) ("The Cook Defendants move for a screening order *to ensure pending and future filed cases allege a cognizable injury* and for a plan to select additional cases as bellwethers for a trial.") (emphasis added). In keeping with this purpose, the Court has previously relied on case categorization forms to dispose of cases in Categories 1 and 2.  *See* Dkts. 11311 at 2-4 (dismissing multiple Category 2 cases); 10588 (dismissing "[p]ursuant to the court's Screening Order and Bellwether Selection Plan" Category 1 cases, [definition of Category 1 omitted]."). Here, Cook's motion for summary judgment is consistent with the Court's screening order:  Cook argues that Plaintiff has no legally cognizable injury because her claims became time-

---

[2] The categorization form and supporting record effectively serve as an extension of the pleadings.  The master complaint makes general factual and legal allegations, the short-form complaint lists the specific legal claims each plaintiff is making, and the case categorization forms describe each plaintiff's specific condition.  The categorization forms and records also serve as judicial admissions.  A judicial admission is "any 'deliberate, clear and unequivocal' statement, either written or oral, made in the course of judicial proceedings." *McCaskill v. SCI Mgmt Corp.*, 298 F.3d 677, 680 (7th Cir. 2002) (quoting *In re Lefkas Gen. Partners,* 153 B.R. 804 (N.D. Ill. 1993).  The Court gave Plaintiffs seven clearly identified case categories from which to choose, and Plaintiffs' attorneys certified the accuracy of each plaintiff's categorization based on a review of their respective individual medical records.

barred almost eight years ago. Indeed, the Court recently dismissed six time-barred open-removal cases on statute-of-limitations grounds, based on Cook's court-ordered submission of medical records that accompanied Plaintiffs' categorization forms. *See* Dkt. 14000 (ordering Cook to supplement the record with medical records); Dkt. 14428 (granting summary judgment in six time-barred open removal cases). Use of categorization forms and medical records as part of a dispositive motion is appropriate in this MDL.

Finally, Plaintiff misunderstands Cook's argument. Cook's motion for summary judgment does not rely solely on the categorization form itself, but on the 30 pages of medical records that Plaintiff submitted with the categorization. Those medical records are evidence in this case and are separately required to be produced as part of the PPS/PFS process under CMO-4, as amended. Based on its review of those records (including the injuries and dates noted there), Cook has determined that this case is time-barred, and Cook is within its rights on relying on Mr. Johnson's own medical records—collected and produced by Plaintiff and her counsel as part of routine MDL procedure—for the factual basis of its motion.

**II.     Cook's Motion Is Not Premature.**

Plaintiff also argues that Cook's motion is premature because case-specific discovery is incomplete. Pl. Opp. at 7. Again, other Plaintiffs have raised this argument in response to similar Cook motions, and the Court has consistently rejected it, including granting Cook's motion for summary judgment based on the statute of limitations in multiple open-removal cases. *See* Dkt. 12451 at 4-5 (Cook's omnibus amended reply brief in support of that motion noting multiple plaintiffs that made that argument in their individual oppositions). For example, Plaintiff Giddens, who brought one of those six open-removal cases, made an oral Rule 56(d) argument that the Court should not enter summary judgment in his case until additional discovery is conducted. *See* Dkt.

US.129798641

14428; *see also* 14209 (Cook's supplemental response to the Rule 56(d) argument and submission of medical records).

As Cook explained in greater detail in that briefing, an argument that summary judgment is premature must be accompanied by a Rule 56(d) affidavit that explains in sufficient detail "'(1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to create a genuine issue of material; (3) what efforts the affiant has made to obtain those facts; and (4) why those efforts were unsuccessful.'"  Dkt. 14209 at 5 (quoting *Buquer v. City of Indianapolis*, 2012 WL 829666, at 2 (S.D. Ind. March 9, 2012)).  Merely stating that discovery is incomplete or pointing out that certain depositions have not been taken – as Plaintiff does here – will not justify delaying a grant of summary judgment.  *See Kallal v. Ciba Vision Corp.*, 779F.3d 443, 446 (7th Cir. 2015) (affirming denial of Rule 56(d) request because the plaintiff "failed, however, to file a Rule 56(d) affidavit explaining why he needed additional discovery.").  Taking Plaintiff's deposition or other depositions is simply not necessary or cost-effective given the undisputed dates in this case and the objective standard imposed by Utah law.

Plaintiff's legal basis for this objection is unclear; no applicable Local or Federal Rule of Civil Procedure and no Order from this Court bars Cook from moving for summary judgment at this time.  On the contrary, in denying the PSC's motion to strike Cook's first omnibus motion for summary judgment based on the statute of limitations in cases from five states, the Court made clear that it is prepared now to address statute of limitations issues on the merits.  If it were not, the Court would have had no reason to permit that briefing to go forward.  *See* Entry on the August 20, 2019 Status Conference, Dkt. 11602.  Nor would the Court have devoted its efforts to the forthcoming case management order on resolving statute of limitations issues in this MDL in a streamlined fashion.

US.129798641

Moreover, the Court's approach to statute of limitations problems in this MDL is consistent with best practices for MDL courts, which recommend taking up early motions for summary judgment and motions to dismiss as a means of establishing which MDL cases have arguable merit.[3] In fact, sufficient case-specific discovery **has** occurred in this cases to permit the parties and the Court to determine the two undisputed facts on which the present motion turns: (1) the objective determination of when Plaintiff knew or should have known of Mr. Johnson's cause of action, and (2) the date on which Plaintiff filed her action. The Court's case categorization screening measure requires all plaintiffs to categorize their claims, provide "specific medical record(s)" in support of each claimed injury, and certify that their counsel has reviewed the records and that the categorizations based on "[t]he submission of the specific medical record(s) attached, and submission of [the] form … is the proper categorization for Plaintiff's case to the best of counsel's knowledge and belief." Case Categorization Form, Dkt. 9638-1.

Through the categorization process, Plaintiff here submitted a case categorizations form attesting to her claimed injuries as Mr. Johnson's surviving spouse and providing medical records in support of her claims. Because these medical records state the date of Mr. Johnson's death and have been certified as accurate by counsel, the Court has sufficient facts to apply the objective standard dictated by Utah law to determine when Plaintiff's cause of action accrued and the clock started running on the two-year limitation period. ***Importantly, Plaintiff does not suggest that Cook has misstated the date of Mr. Johnson's death (or any of the other dates listed in his***

---

[3] *See* JPML & Federal Judicial Center, *Ten Steps to Better Case Management, a Guide for Multidistrict Litigation Transferee Judges* § X(a) (2d ed. 2014), available at https://www.fjc.gov/sites/default/files/2014/Ten-Steps-MDL-Judges-2D.pdf (explaining that resolution of dispositive motions is the transferee court's "perhaps most important" task).

*medical records) or the date on which Plaintiff commenced the action.  The facts at issue are not in dispute.*  Accordingly, the statute-of-limitations issue is ripe for adjudication.

**III.    Plaintiff's Fraudulent Concealment Argument Fails for Multiple Reasons, Including Utah's Imposition of the Same "Affirmative Act" Requirement that the Court Found Lacking in Earlier Cases Under Indiana Law.**

Plaintiff acknowledges that the case was not filed within two years of Mr. Johnson's death, but argues that her nearly eight-year delay in filing the case should be excused due to Cook's alleged concealment of facts that prevented Plaintiff from learning of her claim and filing sooner. Pl. Opp. at 8-10.

First, the legal standard Plaintiff urges has no support in Utah law.  Plaintiff has failed to cite any case in which a Utah court has adopted such an expansive concealment or other equitable theory in a wrongful death case.  As noted in Cook's opening brief, Cook's research found only one case in which a Utah court excused the filing of a wrongful death outside the two-year limitations period, and that case involved highly unusual facts where the decedent was missing and the next of kin did not know either of the fact of the death or that it was caused by a car accident.  *See* 14243 at 6 n. 3 (discussing *McHenry v. Utah Valley Hosp.*, 724 F. Supp. 835, 839 (D. Utah 1989).  No such grounds for equitable relief exist here; Plaintiff does not deny either that she knew of Mr. Johnson's death when it happened or that the report of an autopsy performed the following day noted that the cause of death should be investigated further.  *See* Plaintiff Johnson's autopsy records, Dkt. 14244-1, at 29-30.  Simply put, Utah law does not support Plaintiff's argument.

Plaintiff's fraudulent concealment also fails for at least two other reasons.  First, a claim of fraudulent concealment sounds in fraud and therefore must be pled with the particularity required by Rule 9(b).  *See Brigham City Corp. v. Gen. Elec. Co.*, 210 F. Supp. 574, 579 (D. Utah 1962)

- 7 -

("While it is true that some have treated concepts of 'undiscovered fraud' and 'fraudulent concealment' in relation to state statute of limitations as different, any sharp distinction is largely artificial."); Fed. Prac. & Proc. (Wright & Miller), § 1298 (4th ed.) ("In fraudulent concealment cases, Rule 9(b) has been applied to require plaintiffs to articulate, among other things, the nature of the affirmative act constituting fraud, its concealment, and when it was discovered."). Here, Plaintiffs' Master Complaint makes only generalized allegations about fraudulent concealment that fail to meet Rule 9(b)'s requirements.[4] The multi-plaintiff complaint involving Plaintiff's case has the same shortcoming, rehashing the same vague, generalized allegations as the Master Complaint and providing no allegations specific to Plaintiff's case. Indeed, the Complaint merely states that Plaintiff's case involves "personal injuries and/or death" and provides no explanation for why the case was being commenced almost 10 years after the decedent's death, much less detailed factual allegations that would support a claim of fraudulent concealment. *See* Complaint, ¶ 57.

Second, and more importantly, the Court should reject this argument for the same reasons the Court rejected the same argument when other plaintiffs raised it under Indiana law. As the Court will recall, bellwether Plaintiff McDermitt made the same argument of fraudulent concealment and the Court rebuffed it, finding: "Plaintiff does not allege that Cook committed any *affirmative act* to prevent him from discovering a cause of action against it. Indeed, Plaintiff does not even allege that Cook knew before being sued in this action that Plaintiff had a cause of action against the company." McDermitt Order, Dkt. 13187 (emphasis in original). The Court noted that under Indiana law, "'a plaintiff must show that the wrongdoer was not simply silent but

---

[4] Cook incorporates by reference is its omnibus motion for partial summary judgment on MDL plaintiffs' fraudulent concealment claim (Dkt. 13638) where this argument is set forth in greater detail.

committed affirmative acts designed to conceal the cause of action.'") (quoting *Horn v. A.O. Smith Corp.*, 50 F.3d 1365, 1372 (7th Cir. 1995)).  The Court rejected similar arguments again when it entered summary judgment in the six time-barred open-removal cases discussed above.  *See* Dkt. 14428; *see also* Dkt. 12451 (replying to plaintiffs' argument and listing docket numbers of opposition briefs raising fraudulent concealment).

Utah law has the same requirement for fraudulent concealment, and the Court should therefore reject Plaintiff's argument for the same reason.  In Utah, fraudulent concealment will toll the running of a statute of limitations only if "a defendant took affirmative steps to conceal the plaintiff's cause of action."  *Russell/Packard Dev., Inc. v. Carson*, 78 P.4d 616, 621 (Utah Ct. App. 2003); *Berenda v. Langford*, 914 P.2d 45, 51 (Utah Ct. App. 2003) (holding that a plaintiff must first make "a prima facie showing of fraudulent concealment and then demonstrate, that, given the defendant's actions, plaintiff would not have discovered the claim earlier.").  Like the plaintiffs in the motions decided under Indiana law, Plaintiff here fails even to allege that Cook knew that Plaintiff had a cause of action, and certainly does not allege or document any affirmative action on Cook's part to conceal the existence of her claim from her.  Plaintiff does not and cannot dispute that she knew of Mr. Johnson's death immediately, or that Cook did not know that her claim existed until almost ten years later, when the case was filed.  Plaintiff's vague and generalized complaints about how Cook "concealed the known risks and failed to warn of known or scientifically knowable dangers," "misled consumers and patients by concealing material facts," and "fail[ed] to maintain accurate medical device reports regarding adverse events," etc., Dkt. 15403 at 9, might (if true) support a substantive claim of failure to warn, but they do not suggest either that Cook knew that Plaintiff had a claim against it or that it acted affirmatively to conceal that claim from Plaintiff.

Without a showing or even an allegation that Cook took any action to conceal her cause of action from her and actively prevent her from filing suit, Plaintiff has failed to establish a prima facie case of fraudulent concealment and her argument should be rejected, in Utah as in Indiana. *Compare e.g., Russell/Packard Dev, Inc.*, 78 P.4d at 621 (holding that "affirmative steps" on the defendant's part "to conceal the plaintiff's cause of action" are necessary to establish fraudulent concealment under Utah law) with *Horn*, 50 F.3d at 1372 (holding that under Indiana law "a plaintiff must show that the wrongdoer was not simply silent but committed affirmative acts designed to conceal the cause of action.'"). The Court should reject Plaintiff's fraudulent concealment argument.

### IV.   Plaintiff Failed to Meet Her Duty Under Utah Law to Investigate Her Claims with Diligence.

Finally, Plaintiff attaches a personal affidavit in support of her argument that she met her duty to conduct a diligent investigation into her claim. Pl. Opp. at 10-11 & Affidavit of Plaintiff Merrilyn Johnson, Dkt. 14503-1. Plaintiff claims that she and her husband "explored every conceivable solution to remedy his declining condition" and that after Mr. Johnson's death, "we specifically sought in information as to what caused his pre-death injuries and ultimately his death," but that she was not "aware that Defendants manufactured the relevant IVC filter, let alone that Defendants' IVC filter was the cause of fact of my husband's death." Johnson Aff., ¶¶ 9-10. Several paragraphs of the affidavit reassert allegations and litigation theories "upon information and belief" and do not provide any factual information. *See generally id.*

Plaintiff's Affidavit fails to save the case from summary judgment because it is facially inadequate under the objective approach to discovery-rule claims under Utah law. As set forth in greater detail in Cook's opening brief, a person who suffers an injury has a duty to reasonably investigate whether that person has a valid cause of action. "What constitutes due diligence must

be tailored to fit the circumstances of each case. It is that diligence which is appropriate to accomplish the end sought which is reasonably calculated to do so." *Aragon v. Clover Club Foods Co.*, 857 P.2d 250, 253 (Utah Ct. App. 1993). However, "all that is required to trigger the statute of limitations is sufficient information to put the plaintiffs on notice to make further inquiry." *Macris v. Sculptured Software, Inc.*, 24 P.2d 984, 990 (Utah 2001) (citing *Berenda*, 914 P.2d at 51). Once a plaintiff is on notice, the plaintiff "may be imputed with knowledge of 'everything to which such inquiry might have led.'" *Pioneer Builders Co. of Nev., Inc. v. K D A Corp.*, 292 P.3d 672, 679 (Utah 2012); *see also McCollin*, 50 F. Supp. 2d at 1124 ("When a person has sufficient information to lead him to a fact, he shall be deemed conversant of it."). What plaintiff knew or should have known is a factual question, but "'[w]here the evidence is so clear that there is no genuine factual issue … the determination can be made as a matter of law.'" *Mecham v C.R. Bard, Inc.*, 2020 WL 2768997, at *4 (D. Utah May 27, 2020) (internal citations omitted).

A potential plaintiff's duty to investigate extends to taking reasonable steps to identify the proper defendant when the identity of the defendant is not evident. *Pratt v. Cavagna N. Am., Inc.*, 2013 WL 61406075, at *4 (D. Utah Nov. 21, 2013) ("[A] plaintiff has a duty to act with reasonable diligence to ascertain the identity of the defendant"); *Griffiths-Rast v. Sulzer Spine Tech.*, 216 F. App'x 790, 796 (10th Cir. 2017) (unpublished) (holding that plaintiffs have a duty under the UPLA to seek out the identity of the manufacturer if it is not already known to them). In other words, "'plaintiffs cannot simply wait for information regarding a potential defendant to come to them.'" *Mecham*, 2020 WL 2768997, at *5 (quoting *Pratt*, 2013 WL 61406075, at *4).

Here, Plaintiff's Affidavit falls short of this objective standard on its face. Although Plaintiff asserts in conclusory fashion that she conducted a diligent investigation into the causes of Mr. Johnson's medical problems before and after his death, she provides no explanation of why

she apparently did not obtain Mr. Johnson's medical records and discover Cook's identity as the manufacturer of the filter for almost 10 years after Mr. Johnson's death.  This was Plaintiff's responsibility, and, contrary to her attempted implication, it had nothing to do with any conduct by Cook that "prevented Plaintiff from being able to identify the Defendants as the manufacturer responsible for her husband's death."  Pl. Opp. at 10.  The records Plaintiff herself produced with her case categorization demonstrate that she would have had no difficulty with obtaining Mr. Johnson's medical records or learning Cook's identity from those records.  Indeed, Plaintiff's Affidavit explains that she discussed the claim with her counsel at some point in "early 2017" and was able to identify the manufacturer and file suit by February 21, 2017.  *See* Johnson Aff., ¶¶ 3, 9.  Nothing prevented Plaintiff from acquiring those records earlier other than an apparent lack of requesting them.

Any reasonable investigation of Mr. Johnson's health problems before and after his death would also have included obtaining a copy of his autopsy report, which listed the gastrointestinal hemorrhage in a section labeled "Special Problems, Tissues, OR **Diagnoses To Be Investigated.**"[5] Dkt. 14244-1, at 29-30 (emphasis added); *see also Aragon*, 857 P.2d at 253 (explain that "[w]hat constitutes due diligence must be tailored to fit the circumstances of each case."); *Macris*, 24 P.2d at 990 ("all that is required to trigger the statute of limitations is sufficient information to put the

---

[5] A physician's failure to tell a plaintiff that a device is "defective" does not preclude summary judgment because it ascribes an expectation not found in Utah law.  Indeed, Mr. Johnson's physicians may have held the view the filter was preforming properly because records regarding the 2005 venocavagram indicate that the filter removal attempt was stopped because clots were found below the level of the filter, suggesting that a filter was still needed.  Under Plaintiff's formulation, a statute of limitations would *never* accrue in a case like this or a medical malpractice case unless the physician expressed an opinion as to legal clause.  But the law requires investigating *possible* causes with reasonable diligence, not waiting for ultimate certainty.  *See Pratt*, 2013 WL 61406075, at *4 ("plaintiffs cannot simply wait for information regarding a potential defendant to come to them."); *Mecham*, 2020 WL 2768997, at *5 (same).

US.129798641

plaintiffs on notice to make further inquiry."). Consultation of the autopsy report would have prompted further investigation into Mr. Johnson's vascular care (to the extent Plaintiff did not already know it) and would have identified Mr. Johnson's treatment with an IVC filter and Cook's identity as the manufacturer. *See Pratt*, 2013 WL 61406075, at *4 (holding that under Utah law, "plaintiff has a duty to act with reasonable diligence to ascertain the identity of the defendant"); *Griffiths-Rast*, 216 F. App'x at 796 (recognizing the same duty under Utah law).

Finally, were the Court to credit Plaintiff's Affidavit regarding her *actual* knowledge, the publicly available information concerning IVC filters and their possible side effects fatally undercuts any claim that Plaintiff conducted a diligent investigation under the circumstances. The federal court in the district of Utah addressed this issue earlier this year in *Mecham v C.R. Bard, Inc.*, 2020 WL 2768997 (D. Utah May 27, 2020), a case involving claimed injuries from pelvic mesh. The *Mecham* court noted two FDA safety communications about potential risks and complications with pelvic mesh, issued in 2008 and updated in 2011 and made available online. *Id.* at *8. The court held that in today's world, a plaintiff's duty under Utah law to reasonably investigate the possibility of a cause of action included the duty to conduct online research and "[e]ven a basic inquiry concerning [the plaintiff's] symptoms would have led to two [FDA] reports about the potential harms of pelvic surgical mesh." *Id.* ("Because the FDA had issued an official warning about the link between the pelvic mesh Mrs. Mecham had implanted and the injuries she suffered, a reasonably diligent plaintiff inquiring about her symptoms would have been on notice that the pelvic mesh had a 'possible causal relation' to her injuries."); *see also Timothy v. Bos. Sci. Corp.*, 665 F. App'x 295, 297 (4th Cir. 2016) (finding that because of the FDA warning, the court "ha[d] no trouble concluding [the plaintiff] had notice that the mesh was the cause-in-fact of her injuries") (applying Utah law in an MDL case).

US.129798641

Likewise here, the FDA published on its website in 2010 and 2014 safety communications concerning potential risks of IVC filters. *See* FDA, "Removing Retrievable Inferior Vena Cava Filters: FDA Safety Communication" (issued May 6, 2014), available at http://wayback.archive-it.org/7993/20170722215731/https://www.fda.gov/MedicalDevices/Safety/AlertsandNotices/ucm396377.htm; FDA, "Removing Retrievable Inferior Vena Cava: Filters Initial Communication" (issued August 9, 2010), available at https://wayback.archive-it.org/7993/20170112002302/http://www.fda.gov/MedicalDevices/Safety/AlertsandNotices/ucm221676.htm (both accessed October 20, 2020). Had Plaintiff conducted a diligent investigation in the years after Mr. Johnson's death, as she claims, she would have discovered those safety alerts and would have been on notice of a "possible causal connection" between Mr. Johnson's death and his IVC filter. As in *Mecham* and *Timothy*, the constructive knowledge of these easily accessible publications is imputed to Plaintiff, and her claims are time-barred under the two-year statute of limitations.

## CONCLUSION

For the reasons set forth above and in Cook's original memorandum of law, the Cook Defendants are entitled to summary judgment on all of Plaintiff's claims in this case.

Respectfully Submitted,

Dated: October 21, 2020

*/s/ Andrea Roberts Pierson*
Andrea Roberts Pierson, Co-Lead Counsel
Jessica Benson Cox
FAEGRE DRINKER BIDDLE & REATH LLP
300 North Meridian Street, Suite 2500
Indianapolis, Indiana 46204
Telephone: (317) 237-0300
Andrea.Pierson@FaegreDrinker.com
Jessica.Cox@FaegreDrinker.com

US.129798641

James Stephen Bennett, Co-Lead Counsel
FAEGRE DRINKER BIDDLE & REATH LLP
110 West Berry Street, Suite 2400
Fort Wayne, Indiana  46802-2322
Telephone: (260) 424-8000
Stephen.Bennett@FaegreDrinker.com

*Attorneys for Defendants Cook Incorporated, Cook Medical LLC, and William Cook Europe ApS*

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2020, a copy of the foregoing THE COOK DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.

*/s/ Andrea Roberts Pierson*
