**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

This Document Relates to:

9 Plaintiffs Listed in Cook's Omnibus Motion for Judgment on the Pleadings Based on Statute of Repose in Texas and Tennessee

Margaret Caylor, 1:19-cv-03850
Mary Saldana, 1:20-cv-00130
Thomas Acree, 1:18-cv-00947
Dominique Haughton, 1:19-cv-00569
Sammie Sadler, 1:19-cv-00156
Ronald Osment, 1:19-cv-02392
Keith McNeil, 1:19-cv-02890
Jeffrey Garrett, 1:19-cv-04703
Addie Burks-Henry, 1:20-cv-00330

**THE COOK DEFENDANTS' BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO MAINTAIN DOCUMENTS UNDER SEAL [DKT. NO. 13821] AND MOTION TO RECONSIDER**

## I. INTRODUCTION

On July 18, 2020, Plaintiffs filed their Memorandum in Support of the Response in Opposition to Defendants' Omnibus Motion for Judgment on the Pleadings [Dkt. No. 13820]. Plaintiffs submitted as a supporting exhibit a document designated as "Company Confidential" by the Cook Defendants[1], pursuant to Case Management Order #8 (Stipulated Protective Order on Confidential Information). Specifically, Plaintiffs submitted as an exhibit to their

[1] The Cook Defendants in this matter are Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS (collectively, the "Cook Defendants" or "Cook").

Memorandum Exhibit 4 [Dkt. No. 13820-4] which is a draft Instructions for Use ("IFU") for the Gunther Tulip Vena Cava Filter that was submitted by Cook to the Food and Drug Administration ("FDA") as part of the 510(k) clearance process. Plaintiffs' Memorandum [Dkt. No. 13820] summarizes and quotes from Exhibit 4 [Dkt. No. 13820-4].

In accordance with Local Rules 5-11(d)(1) and 5-11(d)(2)(A)(ii), Plaintiffs filed their Memorandum [Dkt. No. 13820] and Exhibit 4 [Dkt. No. 13820-4] ***under seal.*** Further, Plaintiffs filed their Motion to Maintain Documents Under Seal [Dkt. No. 13821]. Due to an oversight, the Cook Defendants did not initially file a brief in support of Plaintiffs Motion to Maintain Documents Under Seal. As a result, on October 22, 2020, the Court brought this matter to the Cook Defendants' attention and effectively directed the Cook Defendants to respond to Plaintiffs' Motion to Maintain Documents Under Seal and demonstrate why the documents should be maintained under seal. *See* Order [Dkt No. 14576] (directing the Clerk to unseal the documents after 21 days *absent* a motion to reconsider, appeal, or further court order, and maintaining the documents under seal in the interim).

Pursuant to the Court's directives and as the parties designating the documents as confidential, the Cook Defendants submit this Brief in Support of Plaintiff's Motion to Maintain Documents Under Seal. Further, the Cook Defendants' respectfully move the Court to reconsider its October 22, 2020 Order with respect to sealing *so that the documents will remain sealed*, and request that the Clerk of this Court maintain these confidential documents ***under seal***.

The Clerk should maintain Exhibit 4 [Dkt. No. 13820-4] to Plaintiffs' Memorandum in Support of the Response in Opposition to Defendants' Omnibus Motion for Judgment on the Pleadings [Dkt. No. 13820] under seal because there is good cause for sealing the document.

Further, the Clerk should maintain the Memorandum [Dkt. No. 13820] under seal because it summarizes and quotes from Exhibit 4. The documents constitute and contain Cook confidential and proprietary regulatory affairs documents and information entitled to be protected from disclosure. There is good cause to maintain the documents ***under seal*** in order to protect the Cook Defendants' interests in their confidential and proprietary information and to protect the Cook Defendants from competitive harm.

## II. THE APPLICABLE LEGAL STANDARD

1. Under Federal Rule of Civil Procedure 26(c)(1)(G), the court may, "for good cause," enter an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." *See also Baxter International, Inc. v. Abbott Laboratories*, 297 F.3d 544, 546 (7th Cir. 2002) (documents that "meet the definition of trade secret or other categories of bona fide long-term confidentiality" may be sealed). Likewise, private health information should be maintained under seal at least until consent by the patient is obtained. *See generally Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017).

2. **Trade Secrets –** Indiana has generally adopted the definition of trade secret found in the Uniform Trade Secret Act.[2] *See, e.g., Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 414 (S.D. Ind. 2001).[3] Under this standard, a protectable trade secret has four characteristics: (1) information; (2) that possesses independent economic value; (3) that is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from

---

[2] The presence of Cook's headquarters in Indiana justifies the application of Indiana trade secret law to the issues here, because Indiana is the state where Cook would feel any injury or harm. *See, e.g., Micro Data Base Sys., Inc. v. Dharma Sys., Inc.,* 148 F.3d 649 (7th Cir. 1998) (applying Indiana choice-of-law principles in a trade-secret case and holding that New Hampshire substantive law governed because the entity holding the trade secrets was headquartered there).

[3] The Indiana Uniform Trade Secret Act is identical to the Uniform Trade Secrets Act, 1(4), 14 U.L.A. 438 (1985).

its disclosure or use; and (4) is the subject of efforts to maintain its secrecy that are reasonable under the circumstances. *See, e.g.*, *Hamilton v. State Farm Mut. Auto Ins. Co.*, 204 F.R.D. 420, 423 (S.D. Ind. 2001); *Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 759 N.E.2d 239, 245-46 (Ind. Ct. App. 2001); *Burk v. Heritage Food Serv. Equip., Inc.*, 737 N.E.2d 803, 813 (Ind. Ct. App. 2000).

3. Other confidential business or commercial information that does not technically fit the definition of trade secret is similarly entitled to the same level of protection as trade secrets if its disclosure would be harmful physically or economically. *See Chaib v. GEO Grp., Inc.*, 2014 WL 4794194, at *1–3 (S.D. Ind. Sept. 24, 2014); *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at *1 (S.D. Ind. Feb. 2, 2009) (finding that protection is required where disclosure of certain proprietary information would "provide a blueprint for competitors").

4. **Research and Development** – Federal courts, including this court, have consistently held that product development, research, and testing documents and information are entitled to protection from disclosure as confidential and proprietary business information. Such information constitutes confidential business information because "a competitor's access to [a company's] research and development . . . present[s] potential dangers and may lead to a windfall to the discovering party." *Star Scientific*, 204 F.R.D. at 416 (S.D. Ind. 2001) (Baker, J.); *see also United States ex rel. Long v. GSD&M Idea City LLC*, 2014 WL 12648520, at *2 (N.D. Tex. Jan. 3, 2014) ("[I]nformation in which the producing party has a commercial interest, such as . . . research data, . . . has been found to constitute confidential commercial information."); *Kowalsky v. Hewlett-Packard Co.*, 2012 WL 892427, at *2 (N.D. Cal. Mar. 14, 2012) (exhibits were "sealable in their entirety because they contain[ed] HP's confidential product testing and evaluation process"); *cf. Andrx Pharm., LLC v. GlaxoSmithKline, PLC*, 236

F.R.D. 583, 586 (S.D. Fla. 2006) ("Courts dress technical information with a heavy cloak of judicial protection because of the threat of serious economic injury to the discloser of scientific information." (citation omitted)), *affirmed,* 2006 WL 2403942 (S.D. Fla. 2006).

5. **Post-Market Product Analysis** – Similarly, post-market product analysis is also entitled to protection from disclosure as confidential and proprietary business information. Disclosure of such proprietary post-market analysis information is harmful because it would "provide a blueprint for competitors." *Ellis v. CCA of Tenn., LLC*, 2009 WL 234514, at *1 (S.D. Ind. Feb. 2, 2009); *see also Star Scientific*, 204 F.R.D. at 415 (research and data, such as sales techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge").

6. **Sales, Marketing, and Public Relations –** Confidential marketing plans or sales strategies have been held to constitute protectable trade secrets or protected confidential business information. *See, e.g.*, *PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1270 (7th Cir. 1995) (trade secret material for sports drink includes information regarding the pricing, distribution and marketing of the drink and not just the drink formula); *Star Scientific*, 204 F.R.D. at 415 (research and data, such as sales techniques, constitute protectable trade secrets because "the information is created to enhance their business and give them a competitive edge"); *Burk v. Heritage Serv. Equip.*, 737 N.E.2d 803, 814 (Ind. Ct. App. 2000) (finding that employee unfairly used marketing information and sales strategies in breach of the Indiana trade secrets clause); *see also Brunswick Corp. v. Jones*, 784 F.2d 271 (7th Cir. 1986) (confidential marketing strategies held protectable); *AGS Capital Corp., Inc. v. Prod. Action Intern., LLC*, 884 N.E.2d 294, 311 (Ind. Ct. App. 2008) (stolen information related to marketing strategy would "put [a company's competitors] at a severe disadvantage"). Good cause exists to maintain the confidentiality of

such strategic plans and analysis when disclosure of that information would reveal the company's "response to changing market situations and competitive threats within the marketplace, and could therefore give a competitor insight into '[the company's] internal thinking'" and when publicizing this material "would allow [the company]'s competitors the benefit of this information without incurring the effort or expense." *Bradburn Parent/Teacher Store, Inc. v. 3M*, 2004 WL 1146665, at *4 (E.D. Pa. May 19, 2004) (citation omitted).

7. **Regulatory Affairs** – Courts have held that information related to regulatory compliance and/or submission efforts and strategies constitutes confidential business information. *See, e.g.*, *Bayer Healthcare, LLC v. Norbrook Labs., Ltd.*, 2009 WL 3444938, at *1 (E.D. Wisc. Oct. 23, 2009) (good cause existed to seal deposition testimony and internal company emails containing proprietary commercial information and strategy related to an FDA filing). Such proprietary information, like confidential information regarding pricing and sales, is confidential because "the information is created to enhance [companies'] business and give them a competitive edge". *Star Scientific*, 204 F.R.D. at 415.

8. **Complaint Handling** – Internal complaint handling procedures and materials constitute trade secrets in Indiana if they contain (1) information; (2) that derives independent economic value; (3) is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (4) is the subject of efforts reasonable under the circumstances to maintain its secrecy. *Zemco Mfg., Inc. v. Navistar Intern. Transp. Corp.*, 759 N.E.2d 239, 245-46 (Ind. Ct. App. 2001); *see also, e.g.*, *Hamilton v. State Farm Mut. Auto. Ins. Co.*, 204 F.R.D. 420, 423-24 (S.D. Ind. 2001); *Rep. Servs. Inc. v. Liberty Mut. Ins. Cos.*, 2006 WL 1635655, at *5 (E.D. Ken. June 9, 2006) (concluding that claims handling and training materials "had economic value to [defendant] due to (1) their

confidential nature, (2) the time, effort, and expense [defendant] invested in creating these materials, (3) the evolutionary process surrounding the development of these materials, (4) the competitive nature of the [industry's] business, and (5) the fact that competitors in [that] industry do not disclose information about their claims handling policies and procedures to one another.").

9. **Internal Information on Corporate Structure and Business Operations –** Courts also have determined that information about a corporation's internal business operations and corporate structure is confidential and proprietary and, therefore, entitled to protection from public disclosure. *E.g., True Health Chiropractic, Inc. v. McKesson Corporation,* 2015 WL 3409721 (USDC N.D. Cal.) (May 27, 2015) at *4 (granting motion to seal confidential and proprietary information about the defendant's internal business operations and corporate structure).

10. **Confidential Financial Information –** Similarly, Courts have determined that highly-sensitive and confidential information including financial records, production records, manufacturing records, sales records, customer information, and vendor information is entitled to protection from public disclosure. *See e.g., ABRO Indus., Inc. v. 1 New Trade, Inc.*, 2015 WL 13655677 (USDC N.D. Ind.) (Sept. 16, 2015) at *3 (granting plaintiff's motion for a protective order with respect to confidential information about its financial records, sales, customers, and pricing).

11. **Communications with Consulting Experts –** Federal Rule of Civil Procedure 26(b)(4)(D) protects against an opposing party's discovery of facts and/or opinions of "consulting experts" who are retained in anticipation of litigation and not expected to testify at

trial. Furthermore, Federal Rule of Civil Procedure 26(b)(3) protects from discovery documents and tangible things that are prepared in anticipation of litigation by a party's consultant.

12. **Medical Privacy** – With respect to medical information, courts in the Seventh Circuit have routinely recognized that, while parties' medical information may be made public where it is relevant to the claims at issue and/or necessary to the disposition of the case, other information may be kept under seal with good cause. *See Westedt v. Franklin,* 2016 WL 2997504, at *1 (E.D. Wis. May 23, 2016); *Gibson v. Milwaukee Cnty.*, 2015 WL 12964665, at *1 (E.D. Wis. Mar. 26, 2015); *Noe v. Carlos,* 2008 WL 5070463, at *3 (N.D. Ind. Nov. 26, 2008). The good cause inquiry thus requires balancing a party's acknowledged interest in medical privacy, *see Whalen v. Roe*, 429 U.S. 589, 599–600 (1977), against the Court's (and parties') interest in the accurate resolution of the conflict and the public interest in transparency. *Cole v. Janssen Pharmaceuticals, Inc.*, 2017 WL 2929523, at *3 (E.D. Wis. July 10, 2017). Private health information should be maintained under seal at least until consent by the patient is obtained. *See generally id.* at *3.

13. The "good cause" standard under Rule 26(c) "requires a balancing of the potential harm to the litigants' interests against the public's right to obtain information concerning judicial proceedings." *Star Scientific, Inc. v. Carter*, 204 F.R.D. 410, 415-16 (S.D. Ind. 2001) (Baker, J.); *see also Felling v. Knight*, 211 F.R.D. 552, 554 (S.D. Ind. 2003) ("The rule essentially operates to balance the public's interest in open proceedings against an individual's private interest in avoiding annoyance, embarrassment, oppression, or undue burden or expense.") (Baker, J.). Consistent with the doctrine discussed earlier, however, "the presumption of public access 'applies only to the materials that formed the basis of the parties' dispute and the district court's resolution'; other materials that may have crept into the record are not subject to the

presumption." *Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 833 (7th Cir. 2013) (citing *Baxter Int'l*, 297 F.3d at 548)).

## III. THE CONFIDENTIAL DOCUMENTS AT ISSUE THAT SHOULD BE MAINTAINED UNDER SEAL

**Exhibit 4 [Dkt. No. 13820-4]** to Plaintiffs' Memorandum in Support of the Response in Opposition to Defendants' Omnibus Motion for Judgment on the Pleadings [Dkt. No 13820] is a draft Instructions for Use ("IFU") for the Gunther Tulip Vena Cava Filter that was submitted by Cook to the Food and Drug Administration ("FDA") as part of the 510(k) clearance process. This draft IFU constitutes a regulatory affairs document because it was submitted to the FDA as part of the 510(k) clearance process and contains information about Cook's strategic considerations as part of the regulatory process. This draft IFU is designated and stamped: "Company Confidential."

**Plaintiffs' Memorandum [Dkt. No 13820]** summarizes and quotes from Exhibit 4 [Dkt. No. 13820-4].

## IV. THERE IS GOOD CAUSE TO MAINTAIN THE DOCUMENTS UNDER SEAL

Good cause exists to maintain **Exhibit 4 [Dkt. No. 13820-4]** to Plaintiffs' Memorandum in Support of the Response in Opposition to Defendants' Omnibus Motion for Judgment on the Pleadings [Dkt. No. 13820] ***under seal***. Exhibit 4 contains confidential business and commercial information, and the Cook Defendants would face competitive and economic harm if such materials were made publicly available. Specifically, the memorandum contains confidential, proprietary, and sensitive company information related to regulatory affairs. The document should not be disclosed to the public.

**Exhibit 4 [Dkt. No. 13820-4]** is a draft IFU for the Gunther Tulip Vena Cava Filter that was submitted by Cook to the FDA as part of the 510(k) regulatory clearance process. Cook

maintains strict confidentiality with regard to its interactions with regulatory agencies, including the FDA, as well as the methods and strategies it employs in planning for regulatory submissions, responding to regulatory inquiries, and other aspects of regulatory affairs, because such information is the product of great investment and provides commercial and competitive benefits for Cook. For this reason, Exhibit 4 has been marked "Company Confidential."

The Cook Defendants' May 1, 2017 letter to Magistrate Baker and the Declaration of Mark Breedlove (attached here for reference as **Exhibit 1**) are instructive and demonstrate good cause to maintain Exhibit 4 under seal. Cook's manufacture, marketing, and distribution of IVC filters is regulated by various regulatory bodies around the world, including the FDA, and Cook is required to comply and demonstrate compliance with regulations imposed by those regulatory bodies. Breedlove Decl. ¶ 10. Cook invests substantial time and resources in developing regulatory strategies that ensure compliance in what Cook deems to be the best and most efficient ways possible. *Id*. If information pertaining to Cook's confidential regulatory agency interactions, regulatory compliance methods and strategies, or other confidential regulatory affairs practices is publicly disclosed, Cook's competitors would be able to access, and potentially adopt and benefit from Cook's methods and strategies, without having to make the investment that Cook was required to make, resulting in an undeserved benefit to Cook's competitors, to Cook's detriment. *Id*. at ¶ 11.

In sum, good cause exists to maintain **Exhibit 4 [Dkt. No. 13820-4]** under seal. Cook's regulatory affairs documents and information are confidential and proprietary. The disclosure of such information and documents would result in competitive harm to Cook. **Exhibit 4 [Dkt. No. 13820-4]** should be sealed.

Additionally, good cause exists to maintain Plaintiffs' Memorandum in Support of the Response in Opposition to Defendants' Omnibus Motion for Judgment on the Pleadings **[Dkt. No. 13820]** ***under seal*** because it summarizes and quotes from Exhibit 4, which contains confidential information related to regulatory affairs. Plaintiffs' Memorandum should be maintained under seal to protect Cook's interest in its confidential and proprietary regulatory affairs information.

## V. CONCLUSION

For all the foregoing reasons, the Cook Defendants respectfully request that the Court issue an Order directing the Clerk to maintain Plaintiffs' Memorandum in Support of the Response in Opposition to Defendants' Omnibus Motion for Judgment on the Pleadings [Dkt. No. 13820 and Exhibit 4 [Dkt. No. 13820-4] thereto ***under seal.***

**Exhibit 4 [Dkt. No. 13820-4]** contains Cook confidential, proprietary, and sensitive internal company information on regulatory affairs. There is good cause to seal the document to prevent public disclosure and competitive harm to the Cook Defendants. Further, there is good cause to seal the Memorandum **[Dkt. No. 13820]** because it summarizes and quotes from Exhibit 4.

In accordance with Local Rule 5-11(e)(4), the Cook Defendants have submitted a proposed order maintaining the documents under seal.

Respectfully Submitted,

Dated: November 5, 2020

/s/ *Andrea Roberts Pierson*
Andrea Roberts Pierson, Co-Lead Counsel
Jessica Benson Cox
FAEGRE DRINKER BIDDLE & REATH LLP
300 North Meridian Street, Suite 2500
Indianapolis, Indiana 46204
Telephone: (317) 237-0300
Andrea.Pierson@FaegreDrinker.com
Jessica.Cox@FaegreDrinker.com

James Stephen Bennet, Co-Lead Counsel
FAEGRE DRINKER BIDDLE & REATH LLP
110 West Berry Street, Suite 2400
Fort Wayne, Indiana 46802
Telephone: (260) 424-8000
Stephen.Bennett@FaegreDrinker.com

*Attorneys for Defendants Cook Incorporated, Cook Medical LLC, and William Cook Europe ApS*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 5, 2020, a copy of the foregoing **The Cook Defendants' Brief in Support of Plaintiffs' Motion to Maintain Documents Under Seal [Dkt. No. 13821] and Motion to Reconsider** was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.

/s/ *Andrea Roberts Pierson*
Andrea Roberts Pearson