# EXHIBIT 1

Case 1:14-ml-02570-RLY-TAB   Document 15234   11/06/20   Page 2 of 25 PageID #: 102685

49D11-2011-CT-035234
Marion Superior Court, Civil Division 11

Filed: 11/6/2020 5:08 PM
Clerk
Marion County, Indiana

| STATE OF INDIANA | | MARION COUNTY SUPERIOR COURT |
|---|---|---|
| | SS: | |
| COUNTY OF MARION | | CAUSE NO. |

| | |
|---|---|
| DARLENE HARRIS, as executor of the estate of Darlene Williams, | Case No. |
| Plaintiff, | JURY TRIAL DEMANDED |
| vs. | |
| COOK INCORPORATED; COOK MEDICAL INCORPORATED; COOK GROUP INCORPORATED; COOK MEDICAL, LLC; and WILLIAM COOK EUROPE APS, | |
| Defendants. | |

## COMPLAINT

Plaintiff DARLENE HARRIS as executor of the estate of DARLENE WILLIAMS, by and through her undersigned attorneys, hereby sues Defendants Cook Incorporated, Cook Medical Incorporated, Cook Group Incorporated, Cook Medical, LLC, and William Cook Europe APS, and alleges as follows:

## PARTIES

1.      Plaintiff Darlene Harris as Personal Representative of the estate of Darlene Williams (hereinafter "Plaintiff") at all times relevant to this action resided in, continues to reside in, and is a citizen of North Carolina.  Decedent Darlene Williams was at all relevant times a resident of the state of New Jersey.

2.      Defendant Cook Incorporated was and is an Indiana corporation with its principal place of business located at 750 Daniels Way, Bloomington, Indiana 47402. At all times relevant to this action, Cook Incorporated designed, set specifications, manufactured,

prepared, compounded, assembled, processed, promoted, marketed, distributed and/or sold the inferior vena cava filter ("IVC Filter") known as the Celect™ Vena Cava Set (hereinafter "Cook filter") to be implanted in patients throughout the United States, including Indiana.  At all times relevant hereto, Defendant Cook Incorporated was engaged in business in Indiana, has conducted substantial business activities, and derived substantial revenue from within the State of Indiana. This Defendant has also carried on solicitations or service activities in Indiana.

3.      Defendant Cook Medical Incorporated is a wholly owned subsidiary of Defendant Cook Incorporated with its principal place of business located at 750 Daniels Way, Bloomington, Indiana 47402. Defendant Cook Medical Incorporated was and is an Indiana corporation authorized and/or doing business in the state of Indiana. At all times relevant to this action, Cook Medical Incorporated designed, set specifications, manufactured, prepared, compounded, assembled, processed, promoted, marketed, distributed and/or sold the inferior vena cava filter ("IVC Filter") known as the Celect™ Vena Cava Set to be implanted in patients throughout the United States, including Indiana.  At all times relevant hereto, Defendant Cook Medical Incorporated was engaged in business in Indiana, has conducted substantial business activities, and derived substantial revenue from within the State of Indiana. This Defendant has also carried on solicitations or service activities in Indiana

4.      Defendant Cook Group Incorporated was and is an Indiana corporation having its principal place of business located at 750 Daniels Way, Bloomington, Indiana 47402.  At all times relevant to this action, Cook Group Incorporated designed, set specifications, manufactured, prepared, compounded, assembled, processed, promoted, marketed, distributed and sold the inferior vena cava filter ("IVC Filter") known as the Celect

2

™ Vena Cava Set to be implanted in patients throughout the United States, including Indiana. At all times relevant hereto, Defendant Cook Group Incorporated was engaged in business in Indiana, has conducted substantial business activities, and derived substantial revenue from within the state of Indiana. This Defendant has also carried on solicitations or service activities in Indiana.

5.     Defendant Cook Medical, LLC was and is an Indiana limited liability corporation with its principal place of business located at 750 Daniels Way, Bloomington, Indiana 47402 with its sole member being Cook Incorporated and maintains its principal place of business located at 750 Daniels Way, Bloomington, Indiana 47402.  At all times relevant to this action, Cook Medical, LLC designed, set specifications, manufactured, prepared, compounded, assembled, processed, promoted, marketed, distributed and/or sold the inferior vena cava filter ("IVC Filter") known as the Celect ™ Vena Cava Set to be implanted in patients throughout the United States, including Indiana. At all times relevant hereto, Cook Medical, LLC was registered to do business with the state of Indiana.  At all times relevant hereto, Defendant Cook Medical LLC was engaged in business in Indiana, has conducted substantial business activities, and derived substantial revenue from within the state of Indiana. This Defendant has also carried on solicitations or service activities in Indiana.

6.     Defendant William Cook Europe APS is based in Bjaeverskov, Denmark, regularly conducts business in the State of Indiana, and is authorized to do so. Defendant also carried on solicitations or service activities in the State of Indiana.

7.     Defendants Cook Incorporated, Cook Medical Incorporated, Cook Group Incorporated, Cook Medical, LLC, and William Cook Europe APS shall be referred to herein

individually by name or collectively as the "Cook Defendants."

8.      At all times alleged herein, Cook Defendants include and included any and all parent companies, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors, and assigns and their officers, directors, employees, agents, representatives, and any and all other persons acting on their behalf.

9.      At all times herein mentioned, each of the Cook Defendants were the agents, servants, partners, predecessors in interest, and joint venturers of each other, and were at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, joint enterprise, and/or joint venture.

## GENERAL FACTUAL ALLEGATIONS

10.      Plaintiff brings this case against the Cook Defendants because of the serious, fatal injury Darlene Williams suffered as a result of the Cook Defendants' surgically implanted medical device, the Cook Celect filter, that was implanted in Darlene Williams body by Salvador A. Cuadra at Overlook Hospital, in Summit, New Jersey, on July 12, 2010.

11.      Cook Defendants design, research, develop, manufacture, test, market, advertise, promote, distribute, and sell IVC filters, which are marketed and sold as both permanent and retrievable devices, purportedly to prevent recurrent pulmonary embolism. One such product is the Cook Celect IVC filter at issue in this case.

12.      Cook Defendants sought Food and Drug Administration ("FDA") clearance to market the Cook Celect filter device and/or its components under Section 510(k) of the Medical Device Amendment.

13.      On or about April 20, 2007, Defendants obtained FDA clearance to market

4

the Cook Celect filter under Section 510(k) of the Medical Device Amendment.

14.     Section 510(k) allows marketing of medical devices if the manufacturer claims the device is substantially equivalent to other legally marketed predicate devices, without formal review of the safety or efficacy of said device. The Cook Defendants claimed that the Celect filter was substantially equivalent to the Cook Gunther Tulip IVC filter, a medical device cleared by the FDA under the Section 510k process on October 18, 2000.

15.     An IVC filter, like the Cook Celect filter, is a device ostensibly designed and intended to filter blood clots (called "thrombi") that would otherwise travel from the lower

portions of the body to the heart and lungs, resulting in a pulmonary embolism (PE). IVC filters are marketed as being safe to implant, either temporarily or permanently, within the vena cava.

16.     The inferior vena cava is a vein that returns blood to the heart from the lower portions of the body.  In certain people, and for various reasons, thrombi travel from vessels in the legs and pelvis, through the vena cava and into the heart and lungs. These thrombi can develop in the deep leg veins. This condition is called "deep vein thrombosis" or DVT. If the thrombi reach the lungs they are considered "pulmonary emboli" or PE.

17.     The Celect filter is a retrievable filter and is alleged by Cook as being substantially similar to the Cook Defendants' Gunther Tulip filter, its predicate device.

18.     The Celect filter has four (4) anchoring legs, or struts, for fixation within the IVC and eight (8) independent secondary struts claimed by Cook to improve self-centering and clot trapping.

19.     On or about July 12, 2020, Darlene Williams was implanted with a Cook Celect filter at Overlook Hospital in Summit, New Jersey. The Cook Celect filter placed in

Darlene Williams was marketed and sold as appropriate for use as either a retrievable or permanent filter.

20.     Darlene Williams' Cook Celect filter subsequently malfunctioned and caused injury and damages to her, including death, as a result of the Cook Celect filter. Darlene Williams suffered a retroperitoneal bleed due to perforation of [her] inferior vena cava and multiple pulmonary-thrombo embolism emanating from the filter. Darlene Williams' filter was also embedded in her IVC and penetrating through it. The Cook Celect Filter directly caused Darlene Williams' death.

21.     At all times relevant hereto, the Cook Celect filter was widely advertised and promoted by the Cook Defendants as safe and effective for prevention of recurrent pulmonary embolism.

22.     At all times relevant to this complaint, the Cook Defendants knew or should have known that the Cook Celect IVC filter was defective and knew that defect was attributable to the design's failure to withstand the normal anatomical and physiological loading cycles exerted in vivo.

23.     The Cook Defendants failed to disclose to physicians, patients, or Darlene Williams that its retrievable IVC filters, including the Cook Celect filter, were subject to perforation through the IVC wall, fracture, and migration or the appropriate degree of risk of perforation and damage to the vena cava wall and surrounding organs, blood vessels, and structures.

24.     At all times relevant hereto, the Cook Defendants continued to promote Cook's retrievable IVC filters, including the Cook Celect filter, as safe and effective even though the clinical trials that had been performed were not adequate to support long- or short-

6

term safety or efficacy.

25.     Cook Defendants concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with the Cook retrievable IVC filters, including the Cook Celect filter, as aforesaid.

26.     The failure of the Cook filter is attributable in part to the fact that the Cook retrievable IVC filters, including the Cook Celect filter, suffer from a design defect causing the filters to be unable to withstand the normal anatomical and physiological loading cycles exerted in vivo.

27.     At all times relevant hereto, the Cook Defendants failed to provide sufficient warnings and instructions that would have put Darlene Williams and the general public on notice of the dangers and adverse effects caused by implantation of the Cook Celect filter, including, but not limited to, the design's failure to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

28.     The Cook Celect filter was designed, manufactured, distributed, marketed, promoted, sold, and/or supplied by Cook Defendants and was marketed while defective due to the inadequate warnings, instructions, labeling, and/or inadequate testing in light of Cook Defendants' knowledge of the product's failure and serious adverse events.

29.     At all times relevant hereto, the officers and/or directors of the Cook Defendants named herein participated in, authorized, and/or directed the production and promotion of the aforementioned products when they knew or should have known of the hazardous and dangerous propensities of said products, and thereby actively participated in the tortious conduct that resulted in the injuries suffered by Darlene Williams.

## FRAUDULENT CONCEALMENT

30.     The Cook Defendants were under a continuing duty to disclose the true character, quality, and nature of the device that was implanted in Darlene Williams, but instead they concealed them. The Cook Defendants remain under a continuing duty to disclose the true character, quality, and nature of the device that was implanted in Darlene Williams, but instead they continue to conceal them. The Cook Defendants' conduct, as described in this complaint, amounts to conduct purposely committed, which they must have realized was dangerous, heedless, and reckless, without regard to the consequences or the rights and safety of Darlene Williams.

## CORPORATE/VICARIOUS LIABILITY

31.     At all times herein mentioned, the Cook Defendants were agents, servants, partners, aiders and abettors, co-conspirators, and/or joint venturers, and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, conspiracy, and/or joint venture and rendered substantial assistance and encouragement to each other, knowing that their collective conduct constituted a breach of duty owed to the Plaintiff.

32.     There exists and, at all times herein mentioned, there existed a unity of interest in ownership between the Cook Defendants such that any individuality and separateness between them have ceased and these Defendants are alter egos. Adherence to the fiction of the separate existence of these Defendants as entities distinct from each other will permit an abuse of the corporate privilege and would sanction a fraud and/or would not promote injustice.

33.     At all times herein mentioned, the Cook Defendants were engaged in the

8

business of, or were successors in interest to, entities engaged in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, prescribing, and/or advertising for sale, and selling products for use by Darlene Williams. As such, each Defendant is individually, as well as jointly and severally, liable to the Plaintiff for Plaintiff's damages.

34.    At all times herein mentioned, the officers and/or directors of the Cook Defendants named herein participated in, authorized and/or directed the production, marketing, promotion and sale of the aforementioned products when they knew, or with the exercise of reasonable care and diligence should have known, of the hazards and dangerous propensities of said products, and thereby actively participated in the tortious conduct that resulted in the injuries suffered by Darlene Williams.

## COUNT I
## NEGLIGENCE

35.    Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

36.    At all times relevant to this cause of action, the Cook Defendants were in the business of designing, developing, setting specifications, manufacturing, marketing, promoting, selling, and distributing Cook IVC filters including the Cook Celect IVC filter.

37.    The Cook Defendants designed, manufactured, marketed, inspected, labeled, promoted, distributed and sold the Cook Celect filter that was implanted in Darlene Williams.

38.    The Cook Defendants had a duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion,

distribution and sale of Cook IVC filters, including the Celect filter, so as to avoid exposing others to foreseeable and unreasonable risks of harm.

39.     The Cook Defendants knew or reasonably should have known that the Cook Celect filter was dangerous or was likely to be dangerous when used in its intended or reasonably foreseeable manner.

40.     At the time of manufacture and sale of the Cook Celect filter (2007 until 2015), the Cook Defendants knew or should have known that the Cook Celect filter was designed and manufactured so as to present an unreasonable risk of the device tilting and/or perforating the vena cava wall.

41.     At the time of manufacture and sale of the Cook Celect filter (2007 until 2015), the Cook Defendants knew or should have known that using the Cook Celect filter in its intended use or in a reasonably foreseeable manner created a significant risk of a patient suffering severe health side effects, including, but not limited to: hemorrhage; pericardial effusion; cardiac tamponade; cardiac arrhythmia and other symptoms similar to myocardial infarction; perforations of tissue, vessels, and organs; and other severe personal injuries and diseases, which are permanent in nature, including, but not limited to, death, physical pain and mental anguish, scarring and disfigurement, diminished enjoyment of life, continued medical care and treatment due to chronic injuries/illness proximately caused by the device; and the continued risk of requiring additional medical and surgical procedures including general anesthesia, with attendant risk of life threatening complications.

42.     The Cook Defendants knew or reasonably should have known that consumers of the Cook Celect filter would not realize the danger associated with using the device in its intended use and/or in a reasonably foreseeable manner.

43.     The Cook Defendants breached their duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution and sale of the Cook Celect filter in, among others, the following ways:

a.  Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the burden of taking safety measures to reduce or avoid harm;

b.  Designing and distributing a product in which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the likelihood of potential harm from other devices available for the same purpose;

c.  Failing to use reasonable care in manufacturing the product and producing a product that differed from their design or specifications or from other typical units from the same production line;

d.  Failing to use reasonable care to warn or instruct, including pre and post-sale, Darlene Williams, Darlene Williams' physicians, Darlene Williams' agents or the general health care community about the Cook Celect filter's substantially dangerous condition or about facts making the product likely to be dangerous;

e.  Failing to perform reasonable pre and post-market testing of the Cook Celect filter to determine whether or not the product was safe for its intended use;

f.  Failing to provide adequate instructions, guidelines, and safety precautions, including pre and post-sale, to those persons to whom it was reasonably foreseeable would prescribe, use, and implant the Cook Celect filter;

g.  Advertising, marketing and recommending the use of the Cook Celect filter, while concealing and failing to disclose or warn of the dangers known by Defendants to be connected with and inherent in the use of the Cook Celect filter;

h.  Representing that the Cook filter was safe for its intended use when in fact, the Cook Defendants knew and should have known the product was not safe for its intended purpose;

i.  Continuing manufacture and sale of the Cook Celect filter with the knowledge that said product was dangerous and not reasonably safe;

j.  Failing to use reasonable and prudent care in the design, research, manufacture, and development of the Cook Celect filter so as to avoid the risk of serious harm associated with the use of the Cook Celect filter;

k. Advertising, marketing, promoting and selling Cook Celect filter for uses other than as approved and indicated in the product's label;

l. Failing to establish an adequate quality assurance program used in the manufacturing of the Cook Celect filter; and,

m. Failing to establish and maintain an adequate post-market surveillance program.

44.     A reasonable manufacturer, distributor, or seller under the same or similar circumstances would not have engaged in the aforementioned acts and omissions.

45.     As a direct and proximate result of the foregoing negligent acts and omissions by the Cook Defendants, Darlene Williams suffered a serious medical complication which caused her death.

## COUNT II
## STRICT PRODUCTS LIABILITY – FAILURE TO WARN

46.     Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

47.     The Cook Defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the Cook filters, including the Cook Celect filter implanted into Darlene Williams, into the stream of commerce and in the course of same, directly advertised and marketed the device to consumers or persons responsible for consumers.

48.     At the time the Cook Defendants designed, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the Celect filter into the stream of commerce, the Cook Defendants knew or should have known the device presented an unreasonable danger to users of the product when put to its intended and reasonably anticipated use. Specifically, the Cook Defendants knew or should have known

at the time they manufactured, labeled, distributed and sold the Cook Celect filter that was implanted in Darlene Williams, that the Cook Celect filter, *inter alia*, posed a significant and higher risk than other similar devices of device failure (fracture, migration, tilting, and perforation of the vena cava wall) and resulting serious injuries.

49.     Consequently, the Cook Defendants had a duty to warn of the risk of harm associated with the use of the device and to provide adequate instructions on the safe and proper use of the device.

50.     The Cook Defendants further had a duty to warn of dangers and proper safety instructions that they became aware of even after the device was distributed and implanted in Plaintiff.

51.     Despite their duties, the Cook Defendants failed to adequately warn of material facts regarding the safety and efficacy of the Cook IVC filters, including the Cook Celect filter, and further failed to adequately provide instructions on the safe and proper use of the device.

52.     No health care provider, including Darlene Williams', patient or patient's agent would have used the device in the manner directed, had those facts been made known to the prescribing healthcare providers and/or ultimate users of the device.

53.     The health risks associated with the device as described herein are of such a nature that ordinary consumers would not have readily recognized the potential harm.

54.     Darlene Williams and Darlene Williams' health care providers used the device in a normal, customary, intended, and foreseeable manner, namely as a surgically implanted device used to prevent pulmonary embolisms.

55.     Therefore, the Cook Celect filter implanted in Darlene Williams was

defective and unreasonably dangerous at the time of release into the stream of commerce due to inadequate warnings, labeling and/or instructions accompanying the product.

56.     The Cook Celect filter implanted in Darlene Williams was in the same condition as when it was manufactured, inspected, marketed, labeled, promoted, distributed and sold by the Cook Defendants.

57.     As a direct and proximate result of the foregoing negligent acts and omissions by the Cook Defendants, Darlene Williams suffered a serious medical complication which caused her death.

## COUNT III
## STRICT PRODUCTS LIABILITY – DESIGN DEFECT

58.     Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

59.     At all times relevant to this action, the Cook Defendants developed, tested, designed, manufactured, inspected, labeled, promoted, distributed and sold into the stream of commerce the Cook IVC filters, including the Cook Celect filter implanted in Darlene Williams.

60.     The Cook Celect filter was expected to, and did, reach its intended consumers without substantial change in the condition in which it was in when it left the Cook

Defendants' possession. In the alternative, any changes that were made to Cook filter implanted in Darlene Williams were reasonably foreseeable to the Cook Defendants.

61.     The Cook Celect filter implanted in Darlene Williams was defective in design because it failed to perform as safely as persons who ordinarily use the product would have expected at the time of use.

62.     The Cook Celect filter implanted in Darlene Williams was defective in design, in that its risks of harm exceeded its claimed benefits.

63.     Darlene Williams and Darlene Williams' health care providers used the Cook Celect filter in a manner that was reasonably foreseeable to the Cook Defendants.

64.     Neither Darlene Williams, nor Darlene Williams' health care providers could have, by the exercise of reasonable care, discovered the device's defective condition or perceived its unreasonable dangers prior to Darlene Williams' implantation with the device.

65.     As a direct and proximate result of the foregoing negligent acts and omissions by the Cook Defendants, Darlene Williams suffered a serious medical complication which caused her death.

## COUNT IV
## STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT

66.     Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

67.     The Cook Defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the Cook IVC filter that was implanted into Darlene Williams.

68.     The Cook Celect filter implanted in Darlene Williams contained a condition or conditions, which Defendants did not intend, at the time it left the Cook Defendants' control and possession.

69.     Darlene Williams and Darlene Williams' health care providers used the device in a manner that was reasonably foreseeable to the Cook Defendants.

70.     As a result of this condition or these conditions, the product injured Darlene

Williams and failed to perform as safely as the ordinary consumer would expect when used in a reasonably foreseeable manner.

71.     As a direct and proximate result of the foregoing negligent acts and omissions by the Cook Defendants, Darlene Williams suffered a serious medical complication which caused her death.

## COUNT V
## FRAUD

72.     Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

73.     At all times relevant to this cause of action, the Cook Defendants were in the business of designing, developing, setting specifications for, licensing, manufacturing, preparing, packaging, maintaining, labeling, compounding, assembling, processing, promoting, selling, distributing, and marketing Cook Gunther Tulip IVC filters and Cook Celect IVC filters.

74.     At the time Darlene Williams was implanted the Cook Defendants developed, tested, designed, manufactured, inspected, labeled, promoted, distributed, marketed, and sold into the stream of commerce the Cook Celect IVC filter placed in Darlene Williams' body.

75.     At all times relevant to this action, the Cook Defendants designed, researched, developed, manufactured, tested, labeled, inspected, advertised, promoted, marketed, sold, and distributed into the stream of commerce the Gunther Tulip and Celect IVC filters for use as a surgically implanted device used to prevent pulmonary embolisms and for uses other than as approved and indicated in the product's instructions, warnings, and

labels.

76.    The Cook Defendants falsely and fraudulently represented to Darlene Williams, her physicians, and other members of the general public, that the Cook Celect IVC filter:

      a.  Has been proven to effectively prevent pulmonary embolism;

      b. Was self-centering and offered efficient clot trapping;

      c.  Was designed to minimize the most common filter complications;

      d.  The anchors on the filter created secure, atraumatic attachments to the caval wall;

      e.  Provided enhanced retrievability giving an extended time for retrieval; and,

      f.  Could safely stay in place permanently in the body.

77.    In the Clinical Study section of the Instructions for Use provided to the physicians who were implanting the Cook Celect IVC filter, including the filter implanted in Darlene Williams, the Cook Defendants states a clinical study involved a 74 patient cohort, with follow-up conducted at 1 month (60 of 69 possible patients), 3 months (50 of 58 possible patients) and 6 months (37 of 41 possible patients) consisting of clinical exam and imaging by X-ray and duplex ultrasound, no device related major adverse events (defined as hemorrhage, perforation, death, occlusion, filter fracture or significant filter migration) occurred.

78.    The representations by the Cook Defendants were, in fact, false. The true facts were that the Cook Celect IVC filter is not safe for long term/permanent surgical implantation for said purposes, it has not been proven the filter effectively prevents pulmonary embolism; the filter presents a high risk of perforation through the caval wall, the filter has a high risk for fracture, and the filter is not safe for permanent placement in the

body. In the clinic study that was presented to physicians through the instructions for use, the
IFU gives a false sense of safety by reporting on a subset of OUS patients regarding high rates
of successful retrieval rates and no complications, which has been shown to be incorrect. The
retrieval rates listed give a false sense of safety when the OUS study did not address safety,
and falsified complication and perforation rates. The Celect filter was and is, in fact,
dangerous to the health and body of Darlene Williams.

79.     When the Cook Defendants made the aforesaid representations, and others,
they knew them to be false, and those representations were made by the Cook Defendants
with the intent to defraud and deceive Darlene Williams and her physicians, and with the
intent to induce Darlene Williams and her physicians to act in the manner herein alleged, *i.e.*,
to use the Cook Celect IVC filter in surgery.

80.     As a direct and proximate result of the foregoing negligent acts and omissions
by the Cook Defendants, Darlene Williams suffered a serious medical complication which
caused her death.

**COUNT VI**
**NEGLIGENT MISREPRESENTATION**

81.     Plaintiff realleges and incorporates by reference each and every allegation
contained in the foregoing paragraphs as though fully set forth herein.

82.     At all times relevant to this cause, and as detailed herein, the Cook
Defendants negligently provided Darlene Williams, Darlene Williams' health care providers,
and the general medical community with false or incorrect information, or omitted or failed
to disclose material information concerning Cook IVC filters and the Cook Celect filter;
including, but not limited to, misrepresentations relating to the safety, efficacy, failure rate

18

and approved uses of the Cook IVC filter.

83.      The Cook Defendants falsely represented to Darlene Williams, her physicians, and other members of the general public, that the Cook Celect IVC filter:

     a.  Was proven to be hemodynamically effective;

     b.  Has been proven to effectively prevent pulmonary embolism;

     c.  Was self-centering and offered efficient clot trapping;

     d.  Was designed to minimize the most common filter complications;

     e.  The anchors on the filter created secure atraumatic attachments to the caval wall;

     f.  Provided enhanced retrievability giving an extended time for retrieval; and

     g.  Could safely stay in place permanently in the body.

84.      In the Clinical Study section of the Instructions for Use provided to the physicians who were implanting the Cook Celect IVC filter, including the filter implanted in the Plaintiff, the Cook Defendants states a clinical study involved a 74 patient cohort, with follow-up conducted at 1 month (60 of 69 possible patients), 3 months (50 of 58

possible patients) and 6 months (37 of 41 possible patients) consisting of clinical exam and imaging by X-ray and duplex ultrasound, no device related major adverse events (defined as hemorrhage, perforation, death, occlusion, filter fracture or significant filter migration) occurred.

85.      The representations by the Cook Defendants were, in fact, false. The true facts were that the Cook Celect IVC filter is not safe for long term/permanent surgical implantation for said purposes, it has not been proven the filter effectively prevents pulmonary embolism; the filter presents a high risk of perforation through the caval wall, the

filter has a high risk for fracture, and the filter is not safe for permanent placement in the body. In the clinic study that was presented to physicians through the instructions for use, the IFU gives a false sense of safety by reporting on a subset of OUS patients regarding high rates of successful retrieval rates and no complications, which has been shown to be incorrect. The retrieval rates listed give a false sense of safety when the OUS study did not address safety, and falsified complication and perforation rates. The Celect filter was and is, in fact, dangerous to the health and body of Darlene Williams.

86.     The information distributed by the Cook Defendants to the public, the medical community and Darlene Williams' health care providers, including reports, press releases, advertising campaigns, labeling materials, print advertisements, commercial media containing material representations, was false and misleading, and contained omissions and concealment of truth about the dangers of the use of the Cook IVC filters, including the Cook Celect Filter.  The Cook Defendants made the foregoing misrepresentations knowing that they were false and/or without reasonable basis in fact. These materials included instructions for use and warning document that was included in the packaging of the Cook Celect filter that was implanted in Darlene Williams.

87.     The Cook Defendants' intent and purpose in making these misrepresentations was to deceive and defraud the public and the medical community, including Darlene Williams' health care providers; to gain the confidence of the public and the medical community, including Darlene Williams' health care providers; to falsely assure them of the quality of the Cook IVC filters, including the Celect IVC filter and its fitness for use; and to induce the public and the medical community, including Darlene Williams' healthcare providers to request, recommend, prescribe, implant, purchase, and continue to

use Cook IVC filters, including the Cook Celect filter.

88.     In reliance upon the false and negligent misrepresentations and omissions made by the Cook Defendants, Darlene Williams, Darlene Williams' health care providers and Darlene Williams' agents were induced to, and did use the Cook Celect filter, thereby causing Darlene Williams to sustain severe personal injuries.

89.     The Cook Defendants knew and had reason to know that Darlene Williams, Darlene Williams' health care providers, and the general medical community did not have the ability to determine the true facts intentionally and/or negligently concealed and misrepresented by the Cook Defendants, and would not have prescribed and implanted same, if the true facts regarding the device had not been concealed and misrepresented by the Cook Defendants.

90.     The Cook Defendants had sole access to material facts concerning  the defective nature of the product and its propensity to cause serious and dangerous side

effects in the form of dangerous injuries and damages to persons who are implanted with the Cook filter.

91.     At the time Cook Defendants failed to disclose and misrepresented the foregoing facts, and at the time Darlene Williams used the Cook Celect filter, Darlene Williams, Darlene Williams' health care providers and Darlene Williams' agents were unaware of said Cook Defendants' negligent misrepresentations and omissions.

92.     Darlene Williams, Darlene Williams' health care providers, Darlene Williams' agents and general medical community reasonably relied upon misrepresentations and omissions made by the Cook Defendants where the concealed and misrepresented facts were critical to understanding the true dangers inherent in the use of the Cook Celect filter.

93.     Darlene Williams, Darlene Williams' health care provider's and Darlene Williams' agents' reliance on the foregoing misrepresentations and omissions by Cook Defendants' were the direct and proximate cause of Darlene Williams' injuries as described herein.

## COUNT VII
## WRONGFUL DEATH
## Indiana Code § 34-23-1-2

94.     Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

95.     The wrongful actions and inactions of all the Defendants, and or alternatively the employees or agents of Defendants, and their predecessors-in-interest, whether taken separately, or together, were the direct and proximate cause of the death of Darlene Williams.

## COUNT VIII
## PUNITIVE DAMAGES

96.     Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

97.     The actions and inactions of all the Defendants, and or alternatively the employees or agents of Defendants, and their predecessors-in-interest, whether taken separately, or together, were of such a character as to constitute a pattern or practice of intentional wrongful conduct and/or malice resulting in the injury and damages of Plaintiff.

98.     More specifically, Defendants, or alternatively the employees or agents of Defendants, and their predecessors-in-interest, consciously and/or deliberately concealed

risks associated with their product and nevertheless proceeded with conscious indifference to the rights, safety, and welfare of Darlene Williams by failing to act to disclose these risks to her or her healthcare professionals.

99.     Defendants are guilty of oppression, fraud, and/or malice, express or implied for which they should be held liable in punitive damages to Plaintiff.

## PRAYER FOR DAMAGES

**WHEREFORE**, Plaintiff, Darlene Harris, prays for relief on the entire complaint, as follows:

 a. Judgment to be entered against all Defendants on all causes of action of the Complaint, including but not limited to:

  1. Mental anguish in the past and which, in reasonable probability, she will sustain in the future; and,

  2. Reasonable and necessary medical expenses for treatment received in the past;

 b. Plaintiff be awarded full, fair, and complete recovery for all claims and causes of action relevant to this action;

 c. Plaintiff be awarded all appropriate costs, fees, expenses, and pre-judgment and post-judgment interest on the judgments entered in Plaintiff's behalf; and,

 d. Such other relief the court deems just and proper.

RESPECTFULLY SUBMITTED this 6th day of October 2020.

         /s/ *Joseph N. Williams*
         Joseph N. Williams (#25874-49)
         James A. Piatt (#28320-49)
         Anne Medlin Lowe (#31402-49)

RILEY WILLIAMS & PIATT, LLC
301 Massachusetts Avenue, Suite 300
Indianapolis, IN 46204
Telephone:    (317) 633-5270
jwilliams@rwp-law.com
jpiatt@rwp-law.com
alowe@rwp-law.com

John Dalimonte
DALIMONTE RUEB STOLLER, LLP
85 Devonshire St, Suite 1000
Boston, MA 02109
Telephone: (617) 302-9900
john@drlawllp.com

*Counsel for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues.

/s/ *Joseph N. Williams*
Joseph N. Williams