# EXHIBIT 4

Filed 10/7/2020 1:23 PM
Clerk
Marion County, Indiana

| | | |
|---|---|---|
| STATE OF INDIANA | ) | MARION SUPERIOR COURT |
| | ) SS: | |
| COUNTY OF MARION | ) | CAUSE NO. 49D10-2010-CT-035306 |

SANDRA MORTENSEN,        )
                        )
      Plaintiff,        )
                        )
      v.               )
                        )
COOK INCORPORATED, COOK   )
MEDICAL LLC, COOK GROUP    )
INCORPORATED, and         )
WILLIAM COOK EUROPE ApS   )
                        )
      Defendants.      )

## **DEFENDANTS' NOTICE OF FILING OF NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that on October 7, 2020, Defendants Cook Incorporated, Cook Medical LLC, Cook Group Incorporated, and William Cook Europe ApS filed their Notice of Removal of the above-captioned case in the United States District Court for the Southern District of Indiana, thereby removing this matter. A copy of the Notice of Removal is attached hereto.

In accordance with 28 U.S.C. § 1446, the filing of the Notice of Removal "shall effect the removal and the State court shall proceed no further unless and until the case is remanded."

Dated: October 7, 2020             Respectfully submitted,

                              /s/  *Kip McDonald*
                              Andrea Roberts Pierson (#18435-49)
                              Kip McDonald (#29370-49)
                              FAEGRE DRINKER BIDDLE & REATH LLP
                              300 North Meridian Street, Suite 2500
                              Indianapolis, IN  46204
                              Telephone: (317) 237-0300
                              Facsimile:  (317) 237-1000
                              Email:  andrea.pierson@faegredrinker.com
                              Email:  kip.mcdonald@faegredrinker.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 7, 2020, a copy of the foregoing was filed electronically and notice of the filing of this document will be sent to:


Joseph N. Williams
James A. Piatt
Anne Medlin Lowe
RILEY WILLIAMS & PIATT, LLC
301 Massachusetts Avenue, Suite 300
Indianapolis, IN 46204
jwilliams@rwp-law.com
jpiatt@rwp-law.com
alowe@rwp-law.com

John Dalimonte
DALIMONTE RUEB STOLLER, LLP
85 Devonshire St, Suite 1000
Boston, MA 02109
john@drlawllp.com


*/s/ Kip McDonald*

**Attachment to Defendants' Notice of Filing of Notice of Removal**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| SANDRA MORTENSEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:20-cv-2601 |
| v. | ) | |
| | ) | Removed from the Marion County Superior |
| COOK INCORPORATED, COOK | ) | |
| MEDICAL LLC, COOK GROUP | ) | Court in Marion County, Indiana |
| INCORPORATED, AND WILLIAM | ) | Case No. 49D10-2010-CT-035306 |
| COOK EUROPE ApS | ) | |
| | ) | |
| Defendants. | ) | |

## **DEFENDANTS' NOTICE OF REMOVAL**

NOTICE IS HEREBY GIVEN, pursuant to 28 U.S.C. § 1332 and 1441, that the above-captioned matter pending before the Marion County Superior Court in Marion County, Indiana (Case No. 49D10-2010-CT-035306) is removed to the United States District Court for the Southern District of Indiana. In support, the defendants, Cook Incorporated, Cook Medical LLC[1], Cook Group Incorporated, and William Cook Europe ApS (the "Cook Defendants"), state as follows:

## **BACKGROUND**

1.      On October 7, 2020, the plaintiff, Sandra Mortensen ("Plaintiff"), filed this civil action in the Marion County Superior Court.[2]

2.      Plaintiff's Complaint ostensibly asserts a medical device product liability action against the Cook Defendants relating to alleged injuries arising from the placement of a Cook

---

[1] The underlying state court complaint also names "Cook Medical Incorporated" as a defendant, but no such entity exists. Indeed, Cook Medical Incorporated is the former legal name of Cook Medical LLC.
[2] *See* State Court Record, attached as **Exhibit 1**.

Gunther Tulip Vena Cava Filter. *See generally* Plaintiff's Complaint ("Complaint"), attached as **Exhibit 2**.

3.      The Cook Defendants have not been served.

4.      As shown below, the Court has diversity jurisdiction over this suit, and all conditions necessary to remove the action to this Court have been satisfied.

## REMOVAL IS PROPER UNDER DIVERSITY JURISDICTION

5.      This action is being removed pursuant to 28 U.S.C § 1441(b), which allows removal based on diversity of citizenship.

6.      28 U.S.C. § 1332(a) provides that diversity of citizenship exists where the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between "citizens of different States and in which citizens or subjects of a foreign state are additional parties."

## I.      COMPLETE DIVERSITY OF CITIZENSHIP EXISTS BETWEEN PLAINTIFF AND DEFENDANTS.

7.      Plaintiff is a citizen of Pennsylvania. Complaint at ¶ 1.

8.      Defendant Cook Incorporated is an Indiana Corporation with its principal place of business in Bloomington, Indiana. Thus, for jurisdictional purposes, Defendant Cook Incorporated is a citizen of Indiana.

9.      Defendant Cook Group Incorporated is an Indiana Corporation with its principal place of business in Bloomington, Indiana. Thus, for jurisdictional purposes, Defendant Cook Group Incorporated is a citizen of Indiana.

10.     Defendant Cook Medical LLC is an Indiana Limited Liability Company with its principal place of business in Bloomington, Indiana. Cook Medical LLC's sole member is Cook Medical Holdings LLC, an Indiana Limited Liability Company with its principal place of business in Bloomington, Indiana. Cook Medical Holdings LLC's sole member is Cook Group

2

Incorporated. Thus, for jurisdictional purposes, Defendant Cook Medical LLC is a citizen of Indiana.

11.      Defendant William Cook Europe Aps is a foreign corporation incorporated under the laws of Denmark and with its principal place of business located in Denmark.  28 U.S.C § 1332(c)(1) provides that a corporation is deemed a citizen of "every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  Thus, for jurisdictional purposes, Defendant William Cook Europe ApS is a citizen of Denmark.

12.      Accordingly, diversity jurisdiction exists because the case is between "citizens of different States and in which citizens or subjects of a foreign state are additional parties."  28 U.S.C. § 1332(a).

## II.      THE FORUM DEFENDANT RULE DOES NOT BAR REMOVAL

13.      Under 28 U.S.C. § 1441(b)(2), commonly known as the Forum Defendant Rule, an action that is removable solely on the basis of diversity jurisdiction may not be removed "if any of the parties in interest *properly joined and served* as defendants is a citizen of the State in which such action is brought." (emphasis added).

14.      Here, the Forum Defendant Rule does not apply to bar removal because the Cook Defendants have not been "properly joined and served."  *See Whipkey v. Eli Lilly & Co.,* 2020 WL 3248472, at *4 (S.D. Ind. June 16, 2020) (finding that the forum defendant rule did not bar removal where defendant removed case before it was "properly joined and served"); *In re Bridgestone/Firestone, Inc.*, 184 F. Supp. 2d 826, 828 (S.D. Ind. 2002) (noting that the Forum Defendant Rule would only preclude removal if the forum defendant had been properly served at the time of removal); *D.C. by & through Cheatham v. Abbott Labs. Inc.*, 323 F. Supp. 3d 991, 997

(N.D. Ill. 2018) (allowing removal by an in-state defendant where "Defendant filed a notice of removal before it became a forum defendant that was both properly joined and properly served").

## III.     THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

15.     Plaintiff alleges she has suffered "serious physical injuries, pain and suffering, mental anguish, medical expenses, loss of enjoyment of life, disability, and other losses" caused by the Cook Defendants.  Complaint at ¶ 92.

16.     In addition to compensatory damages, Plaintiff seeks punitive damages from the Cook Defendants for their alleged "intentional, willful, knowing, fraudulent, malicious acts, omissions, and conduct, and their complete and total disregard for the public safety and welfare." *Id.* at ¶ 94.

17.     These allegations demonstrate that the amount in controversy is greater than $75,000, exclusive of interest and court costs.  28 U.S.C. § 1332(a).

## IV.     REMOVAL IS TIMELY

18.     Removal is timely, pursuant to 28 U.S.C. § 1446(b), because the Cook Defendants have filed this Notice of Removal within 30 days of being served with the Summons and Complaint.  Indeed, the Cook Defendants have not yet been served.

## V.      VENUE AND OTHER REQUIREMENTS ARE SATISFIED

19.     Venue is proper for removal to this Court pursuant to 28 U.S.C. § 1391 because the Marion County Superior Court, where the Complaint was filed, is a state court within the Southern District of Indiana.

20.     All defendants consent to this removal.

21.     Pursuant to 28 U.S.C. § 1446(d), the Cook Defendants are filing a written notice of removal with the Clerk of the Marion County Superior Court, which along with this Notice, is being served upon Plaintiff's counsel as required by 28 U.S.C. § 1446(d).

WHEREFORE, the Cook Defendants give notice that the matter entitled *Sandra Mortensen v. Cook Incorporated et al.*, originally filed in the Superior Court of Marion County, Indiana, Case No. 49D10-2010-CT-035306, is hereby removed to the United States District Court for the Southern District of Indiana.

Dated: October 7, 2020                 Respectfully submitted,

                                       */s/ Kip McDonald*
                                       Andrea Roberts Pierson (#18435-49)
                                       Kip McDonald (#29370-49)
                                       FAEGRE DRINKER BIDDLE & REATH LLP
                                       300 North Meridian Street, Suite 2500
                                       Indianapolis, IN  46204
                                       Telephone: (317) 237-0300
                                       Facsimile:  (317) 237-1000
                                       Email:  andrea.pierson@faegredrinker.com
                                       Email:  kip.mcdonald@faegredrinker.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2020, a copy of the foregoing NOTICE OF REMOVAL was filed electronically and notice of the filing of this document will be sent to the following known counsel and parties of record in the underlying state court matter:

Joseph N. Williams
James A. Piatt
Anne Medlin Lowe
RILEY WILLIAMS & PIATT, LLC
301 Massachusetts Avenue, Suite 300
Indianapolis, IN 46204
jwilliams@rwp-law.com
jpiatt@rwp-law.com
alowe@rwp-law.com

John Dalimonte
DALIMONTE RUEB STOLLER, LLP
85 Devonshire St, Suite 1000
Boston, MA 02109
john@drlawllp.com


*/s/ Kip McDonald*

# EXHIBIT 1

Case 1:20-cv-02609-RLY-TAB Document 147-1 Filed 01/08/20 Page 12 of 41 PageID #: 102785

This is not the official court record. Official records of court proceedings may only be obtained directly from the court maintaining a particular record.

## Sandra Mortensen v. Cook Incorporated, Cook Medical Incorporated, Cook Group Incorporatedet al

| | |
|---|---|
| Case Number | 49D10-2010-CT-035306 |
| Court | Marion Superior Court, Civil Division 10 |
| Type | CT - Civil Tort |
| Filed | 10/07/2020 |
| Status | 10/07/2020 , Pending  (active) |

## Parties to the Case

| | |
|---|---|
| Defendant | Cook Incorporated |
| Defendant | Cook Medical Incorporated |
| Defendant | Cook Group Incorporated |
| Defendant | Cook Medical, LLC |
| Defendant | William Cook Europe APS |

| Plaintiff | Mortensen, Sandra |
|---|---|
| Attorney | Joseph Nicholas Williams<br>*#2587449, Lead, Retained*<br><br>Riley Williams & Piatt, LLC<br>301 Massachusetts Avenue<br>Suite 300<br>Indianapolis, IN 46204<br>317-633-5270(W) |
| Attorney | Anne Medlin Lowe<br>*#3140249, Retained*<br><br>301 Massachusetts Ave<br>Suite 300<br>Indianapolis, IN 46204<br>317-633-5270(W) |
| Attorney | James A. Piatt<br>*#2832049, Retained*<br><br>RILEY WILLIAMS & PIATT LLC<br>The Hammond Block Building<br>301 Massachusetts Avenue<br>Indianapolis, IN 46204<br>317-633-5270(W) |

## Chronological Case Summary

| 10/07/2020 | Case Opened as a New Filing |
|---|---|

| 10/07/2020 | **Appearance Filed** | |
|---|---|---|
| | Appearance | |
| | For Party: | Mortensen, Sandra |
| | File Stamp: | 10/07/2020 |

| 10/07/2020 | **Complaint/Equivalent Pleading Filed** | |
|---|---|---|
| | Complaint and Demand for Jury Trial | |
| | Filed By: | Mortensen, Sandra |
| | File Stamp: | 10/07/2020 |

| 10/07/2020 | **Subpoena/Summons Filed** | |
|---|---|---|
| | Summons to Defendant Cook Incorporated | |
| | Filed By: | Mortensen, Sandra |
| | File Stamp: | 10/07/2020 |

| 10/07/2020 | **Subpoena/Summons Filed** | |
|---|---|---|
| | Summons to Defendant Cook Medical Incorporated | |
| | Filed By: | Mortensen, Sandra |
| | File Stamp: | 10/07/2020 |

| 10/07/2020 | **Subpoena/Summons Filed** | |
|---|---|---|
| | Summons to Defendant Cook Group Incorporated | |
| | Filed By: | Mortensen, Sandra |
| | File Stamp: | 10/07/2020 |

| 10/07/2020 | **Subpoena/Summons Filed** | |
|---|---|---|
| | Summons to Defendant Cook Medical, LLC | |
| | Filed By: | Mortensen, Sandra |
| | File Stamp: | 10/07/2020 |

| 10/07/2020 | **Subpoena/Summons Filed** | |
|---|---|---|
| | Summons to Defendant William Cook Europe APS | |
| | Filed By: | Mortensen, Sandra |
| | File Stamp: | 10/07/2020 |

## Financial Information

\* Financial Balances reflected are current representations of transactions processed by the Clerk's Office. Please note that any balance due does not reflect interest that has accrued – if applicable – since the last payment. For questions/concerns regarding balances shown, please contact the Clerk's Office.

Mortensen, Sandra
Plaintiff

Balance Due (as of 10/07/2020)
0.00

### Charge Summary

| Description | Amount | Credit | Payment |
|---|---|---|---|
| Court Costs and Filing Fees | 157.00 | 0.00 | 157.00 |

### Transaction Summary

| Date | Description | Amount |
|---|---|---|
| 10/07/2020 | Transaction Assessment | 157.00 |
| 10/07/2020 | Electronic Payment | (157.00) |

This is not the official court record. Official records of court proceedings may only be obtained directly from the court maintaining a particular record.

# EXHIBIT 2

Case 1:20-cv-02501-RLY-MPB Document 1-1 Filed 07/26/20 Page 15 of 41 PageID #: 102789

Case 1:20-cv-02501-RLY-MPB Document 49D10-2007-CT-023506 Filed 07/20/2020 10:22 AM
Clerk
Marion Superior Court, Civil Division 10
Marion County, Indiana

| STATE OF INDIANA | | MARION COUNTY SUPERIOR COURT |
|---|---|---|
| | SS: | |
| COUNTY OF MARION | | CAUSE NO. |

| | |
|---|---|
| SANDRA MORTENSEN, an individual, | Case No. |
| Plaintiff, | |
| vs. | JURY TRIAL DEMANDED |
| COOK INCORPORATED; COOK MEDICAL INCORPORATED; COOK GROUP INCORPORATED; COOK MEDICAL, LLC; and WILLIAM COOK EUROPE APS, | |
| Defendants. | |

## COMPLAINT

Plaintiff Sandra Mortensen, by and through her undersigned attorneys, hereby sues Defendants Cook Incorporated, Cook Medical Incorporated, Cook Group Incorporated, Cook Medical, LLC, and William Cook Europe APS, and alleges as follows:

## PARTIES

1.      Plaintiff Sandra Mortensen (hereinafter "Plaintiff") at all times relevant to this action resided in, continues to reside in, and is a citizen of Cumberland County, Pennsylvania.

2.      Defendant Cook Incorporated was and is an Indiana corporation with its principal place of business located at 750 Daniels Way, Bloomington, Indiana 47402. At all times relevant to this action, Cook Incorporated designed, set specifications, manufactured, prepared, compounded, assembled, processed, promoted, marketed,

1

distributed and/or sold the inferior vena cava filter ("IVC Filter") known as the Gunther Tulip™ Vena Cava Set (hereinafter "Cook filter") to be implanted in patients throughout the United States, including Indiana. At all times relevant hereto, Defendant Cook Incorporated was engaged in business in Indiana, has conducted substantial business activities, and derived substantial revenue from within the State of Indiana. This Defendant has also carried on solicitations or service activities in Indiana.

3.      Defendant Cook Medical Incorporated is a wholly owned subsidiary of Defendant Cook Incorporated with its principal place of business located at 750 Daniels Way, Bloomington, Indiana 47402. Defendant Cook Medical Incorporated was and is an Indiana corporation authorized and/or doing business in the state of Indiana. At all times relevant to this action, Cook Medical Incorporated designed, set specifications, manufactured, prepared, compounded, assembled, processed, promoted, marketed, distributed and/or sold the inferior vena cava filter ("IVC Filter") known as the Gunther Tulip™ Vena Cava Set to be implanted in patients throughout the United States, including Indiana. At all times relevant hereto, Defendant Cook Medical Incorporated was engaged in business in Indiana, has conducted substantial business activities, and derived substantial revenue from within the State of Indiana. This Defendant has also carried on solicitations or service activities in Indiana

4.      Defendant Cook Group Incorporated was and is an Indiana corporation having its principal place of business located at 750 Daniels Way, Bloomington, Indiana 47402. At all times relevant to this action, Cook Group Incorporated designed, set specifications, manufactured, prepared, compounded, assembled, processed, promoted,

2

marketed, distributed and sold the inferior vena cava filter ("IVC Filter") known as the Gunther Tulip™ Vena Cava Set to be implanted in patients throughout the United States, including Indiana. At all times relevant hereto, Defendant Cook Group Incorporated was engaged in business in Indiana, has conducted substantial business activities, and derived substantial revenue from within the state of Indiana. This Defendant has also carried on solicitations or service activities in Indiana.

5.      Defendant Cook Medical, LLC was and is an Indiana limited liability corporation with its principal place of business located at 750 Daniels Way, Bloomington, Indiana 47402 with its sole member being Cook Incorporated and maintains its principal place of business located at 750 Daniels Way, Bloomington, Indiana 47402. At all times relevant to this action, Cook Medical, LLC designed, set specifications, manufactured, prepared, compounded, assembled, processed, promoted, marketed, distributed and/or sold the inferior vena cava filter ("IVC Filter") known as the Gunther Tulip™ Vena Cava Set to be implanted in patients throughout the United States, including Indiana. At all times relevant hereto, Cook Medical, LLC was registered to do business with the state of Indiana. At all times relevant hereto, Defendant Cook Medical LLC was engaged in business in Indiana, has  conducted substantial business activities, and derived substantial revenue from within the state of Indiana. This Defendant has also carried on solicitations or service activities in Indiana.

6.      Defendant William Cook Europe APS is based in Bjaeverskov, Denmark, regularly conducts business in the State of Indiana, and is authorized to do so. Defendant also carried on solicitations or service activities in the State of Indiana.

7.     Defendants Cook Incorporated, Cook Medical Incorporated, Cook Group Incorporated, Cook Medical, LLC, and William Cook Europe APS shall be referred to herein individually by name or collectively as the "Cook Defendants."

8.     At all times alleged herein, Cook Defendants include and included any and all parent companies, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and organizational units of any kind, their predecessors, successors, and assigns and their officers, directors, employees, agents, representatives, and any and all other persons acting on their behalf.

9.     At all times herein mentioned, each of the Cook Defendants were the agents, servants, partners, predecessors in interest, and joint venturers of each other, and were at all times operating and acting with the purpose and scope of said agency, service, employment, partnership, joint enterprise, and/or joint venture.

## **GENERAL FACTUAL ALLEGATIONS**

10.     Plaintiff brings this case against the Cook Defendants because of the serious, life-threatening injury she has suffered as a result of the Cook Defendants' surgically implanted medical device, the Cook Gunther Tulip™ filter, that was implanted by John A. Rossi, M.D., at the Holy Spirit Hospital, in Camp Hill, Pennsylvania, on March 8, 2007.

11.     Cook Defendants design, research, develop, manufacture, test, market, advertise, promote, distribute, and sell IVC filters, which are marketed and sold as both permanent and retrievable devices, purportedly to prevent recurrent pulmonary embolism. One such product is the Cook Gunther Tulip™ IVC filter at issue in this case.

12.     Cook Defendants sought Food and Drug Administration ("FDA") clearance to market the Cook Gunther Tulip™ filter device and/or its components under Section 510(k) of the Medical Device Amendment.

13.     On or about October of 2000, the Cook Defendants obtained FDA clearance to market the Cook Gunther Tulip™ filter under Section 510(k) of the Medical Device Amendment as a permanent IVC filter.

14.     On or about October 31, 2003, the Cook Defendants obtained FDA clearance to market the Cook Gunther Tulip under section 510(k) of the Medical Device Amendment as a retrievable IVC filter.

15.     Section 510(k) allows marketing of medical devices if the manufacturer claims the device is substantially equivalent to other legally marketed predicate devices, without formal review of the safety or efficacy of said device. The Cook Defendants claimed that the Gunther Tulip™ filter was substantially equivalent to the Greenfield and LGM Vena Tech IVC filters.

16.     An IVC filter, like the Cook Gunther Tulip™ filter, is a device ostensibly designed and intended to filter blood clots (called "thrombi") that would otherwise travel from the lower portions of the body to the heart and lungs, resulting in a pulmonary embolism (PE). IVC filters are marketed as being safe to implant, either temporarily or permanently, within the vena cava.

17.     The inferior vena cava is a vein that returns blood to the heart from the lower portions of the body.  In certain people, and for various reasons, thrombi travel from vessels in the legs and pelvis, through the vena cava and into the heart and lungs. These thrombi

can develop in the deep leg veins. This condition is called "deep vein thrombosis" or DVT. If the thrombi reach the lungs they are considered "pulmonary emboli" or PE.

18.     An IVC filter, like the Cook Gunther Tulip, is ostensibly designed to prevent thromboembolic events by filtering or preventing blood clots/thrombi from traveling to the heart and/or lungs.

19.     The Gunther Tulip filter has four (4) anchoring struts for fixation with webbed wires (like tulip petals) between each of the anchoring structs.

20.     On or about March 8, 2007, Plaintiff was implanted with a Cook Gunther Tulip™ filter at the Holy Spirit Hospital in Camp Hill, Pennsylvania by John A. Rossi, M.D. The Gunther Tulip™ filter placed in Plaintiff was stated to be appropriate for use as a permanent filter or a retrievable filter.

21.     Plaintiff's Gunther Tulip filter subsequently malfunctioned and caused injury and damages to Plaintiff, multiple filter struts are perforating Plaintiff's inferior vena cava. Plaintiff is at risk for future progressive perforations by the Gunther Tulip filter which could further injure adjacent organs, blood vessels, and structures, as well as fracturing of the IVC filter and migration of the Gunther Tulip filter or pieces thereof. Plaintiff faces numerous health risks, including the risk of death.  Plaintiff will require ongoing medical care and monitoring for the rest of her life.  It is unknown if the filter can be retrieved by any means other than an open surgical procedure.

22.     At all times relevant hereto, the Cook Gunther Tulip™ filter was widely advertised and promoted by the Cook Defendants as safe and effective treatment for prevention of recurrent pulmonary embolism via placement in the vena cava.

23.     At all times relevant hereto, the Cook Defendants knew or should have known that its retrievable IVC filters were defective and knew that defect was attributable to the design's failure to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

24.     The Cook Defendants failed to disclose to physicians, patients, or Plaintiff that its retrievable IVC filters, including the Cook Gunther Tulip™ filter, were subject to breakage, collapse, causing thrombus, and/or the appropriate degree of risk of damage to the vena cava wall.

25.     At all times relevant hereto, the Cook Defendants continued to promote Cook's retrievable IVC filters, including the Cook Gunther Tulip™ filter, as safe and effective even though the clinical trials that had been performed were not adequate to support long- or short-term safety or efficacy.

26.     The Cook Defendants concealed the known risks and failed to warn of known or scientifically knowable dangers and risks associated with its IVC filters, including the Gunther Tulip™, as aforesaid.

27.     The failure of the Cook filter is attributable in part to the fact that the Cook retrievable IVC filters, including the Cook Gunther Tulip™ filter, suffer from a design defect causing the filters to be unable to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

28.     At all times relevant hereto, the Cook Defendants failed to provide sufficient warnings and instructions that would have put Plaintiff and the general public on notice of the dangers and adverse effects caused by implantation of the Cook Gunther

Tulip™ filter, including, but not limited to, the design's failure to withstand the normal anatomical and physiological loading cycles exerted *in vivo*.

29. The Cook Gunther Tulip™ filter was designed, manufactured, distributed, sold, and/or supplied by Cook Defendants and was marketed while defective due to the inadequate warnings, instructions, labeling, and/or inadequate testing in light of Cook Defendants' knowledge of the product's failure and serious adverse events.

30. At all times relevant hereto, the officers and/or directors of the Cook Defendants named herein participated in, authorized, and/or directed the production and promotion of the aforementioned products when they knew or should have known of the hazardous and dangerous propensities of said products, and thereby actively participated in the tortious conduct that resulted in the injuries suffered by Plaintiff.

## FRAUDULENT CONCEALMENT

31. The Cook Defendants were and remain under a continuing duty to disclose the true character, quality, and nature of the device that was implanted in Plaintiff, but instead they concealed them. The Cook Defendants' conduct, as described in this complaint, amounts to conduct purposely committed, which they must have realized was dangerous, heedless, and reckless, without regard to the consequences or the rights and safety of Plaintiff.

## CORPORATE/VICARIOUS LIABILITY

32. At all times herein mentioned, the Cook Defendants were agents, servants, partners, aiders and abettors, co-conspirators, and/or joint venturers, and were at all times operating and acting within the purpose and scope of said agency, service, employment,

partnership, conspiracy, and/or joint venture and rendered substantial assistance and encouragement to each other, knowing that their collective conduct constituted a breach of duty owed to the Plaintiff.

33.     There exists and, at all times herein mentioned, there existed a unity of interest in ownership between the Cook Defendants such that any individuality and separateness between them have ceased and these Defendants are alter egos. Adherence to the fiction of the separate existence of these Defendants as entities distinct from each other will permit an abuse of the corporate privilege and would sanction a fraud and/or would not promote injustice.

34.     At all times herein mentioned, the Cook Defendants were engaged in the business of, or were successors in interest to, entities engaged in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging, prescribing, and/or advertising for sale, and selling products for use by the Plaintiff. As such, each Defendant is individually, as well as jointly and severally, liable to the Plaintiff for Plaintiff's damages.

35.     At all times herein mentioned, the officers and/or directors of the Cook Defendants named herein participated in, authorized and/or directed the production, marketing, promotion and sale of the aforementioned products when they knew, or with the exercise of reasonable care and diligence should have known, of the hazards and dangerous propensities of said products, and thereby actively participated in the tortious conduct that resulted in the injuries suffered by the Plaintiff.

## COUNT I
## NEGLIGENCE

36.     Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

37.     At all times relevant to this cause of action, the Cook Defendants were in the business of designing, developing, setting specifications, manufacturing, marketing, promoting, selling, and distributing Cook IVC filters including the Cook Gunther Tulip™ IVC filter.

38.     The Cook Defendants designed, manufactured, marketed, inspected, labeled, promoted, distributed and sold the Cook Gunther Tulip™ filter that was implanted in Plaintiff.

39.     The Cook Defendants had a duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution and sale of Cook IVC filters, including the Gunther Tulip™ filter, so as to avoid exposing others to foreseeable and unreasonable risks of harm.

40.     The Cook Defendants knew or reasonably should have known that the Cook Gunther Tulip™ filter was dangerous or was likely to be dangerous when used in its intended or reasonably foreseeable manner.

41.     The Cook Defendants breached their duty to exercise reasonable and prudent care in the development, testing, design, manufacture, inspection, marketing, labeling, promotion, distribution, and sale of the Gunther Tulip filter in, among others, the following ways:

a. Designing and distributing a product which the Cook Defendants knew or should have known that the likelihood and severity of potential harm from the product exceeded the burden of taking safety measures to reduce or avoid harm;

b. Designing and distributing a product which they knew or should have known that the likelihood and severity of potential harm from the product exceeded the likelihood of potential harm from other devices available for the same purpose;

c. Failing to use reasonable care in manufacturing the product and producing a product that differed from their design or specifications or from other typical units from the same production line;

d. Failing to use reasonable care to warn or instruct, including pre- and post-sale, Plaintiff, Plaintiff's physicians, Plaintiff's agents, or the general healthcare community about the Gunther Tulip filter's substantially dangerous condition or about facts making the product likely to be dangerous;

e. Failing to perform reasonable pre- and post-market testing of the Gunther Tulip filter to determine whether or not the product was safe for its intended use;

f. Failing to provide adequate instructions, guidelines, and safety precautions, including pre- and post-sale, to those persons to whom it was reasonably foreseeable would prescribe, use, and implant the Gunther Tulip filter;

g. Advertising, marketing, and recommending the use of the Gunther Tulip filter, while concealing and failing to disclose or warn of the dangers known by Cook Defendants to be connected with and inherent in the use of the Gunther Tulip filter;

h. Representing that the Gunther Tulip filter was safe for its intended use when, in fact, the Cook Defendants knew and should have known the product was not safe for its intended purpose;

i. Continuing to manufacture and sell the Gunther Tulip filter with the knowledge that the product was dangerous and not reasonably safe;

j. Failing to use reasonable and prudent care in the design, research, manufacture, and development of the Gunther Tulip filter so as to

avoid the risk of serious harm associated with the use of the Gunther Tulip filter;

k. Advertising, marketing, promoting, and selling the Gunther Tulip filter for uses other than as approved and indicated in the product's label;

l. Failing to establish an adequate quality-assurance program used in the manufacturing of the Gunther Tulip filter; and,

m. Failing to establish and maintain an adequate post-market surveillance program.

42. A reasonable manufacturer, distributor, or seller under the same or similar circumstances would not have engaged in the aforementioned acts and omissions.

43. As a direct and proximate result of the foregoing negligent acts and omissions by the Cook Defendants, Plaintiff has suffered a serious medical complication for which the solution and ultimate economic loss have yet to be determined.

## COUNT II
## STRICT PRODUCTS LIABILITY – FAILURE TO WARN

44. Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

45. The Cook Defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the Gunther Tulip filter, including the one implanted into Plaintiff, into the stream of commerce and in the course of same, directly advertised and marketed the device to consumers or persons responsible for consumers.

46. At the time the Cook Defendants designed, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the device

into the stream of commerce, the Cook Defendants knew or should have known the device presented an unreasonable danger to users of the product when put to its intended and reasonably anticipated use. Specifically, the Cook Defendants knew or should have known at the time they manufactured, labeled, distributed and sold the Gunther Tulip filter, which was implanted into Plaintiff, that the Gunther Tulip filter, *inter alia*, posed a significant and higher risk than other similar devices of device failure (fracture, migration, tilting, and perforation of the vena cava wall) and resulting in serious injuries.

47. Consequently, the Cook Defendants had a duty to warn of the risk of harm associated with the use of the device and to provide adequate instructions on the safe and proper use of the device.

48. The Cook Defendants Cook further had a duty to warn of dangers and proper safety instructions that they became aware of even after the device was distributed and implanted in Plaintiff.

49. Despite their duties, the Cook Defendants failed to adequately warn of material facts regarding the safety and efficacy of the Gunther Tulip filter, and further failed to adequately provide instructions on the safe and proper use of the device. These failures rendered the Cook filter unreasonably dangerous to Plaintiff.

50. No health care provider, including Plaintiff's, or patient would have used the device in the manner directed, had those facts been made known to the prescribing healthcare providers and/or ultimate users of the device.

51. The health risks associated with the device as described herein are of such a nature that ordinary consumers would not have readily recognized the potential harm.

52.     Plaintiff and Plaintiff's healthcare providers used the device in a normal, customary, intended, and foreseeable manner, namely as a surgically implanted device used to prevent pulmonary embolisms.

53.     Therefore, the Gunther Tulip filter implanted into Plaintiff was defective and unreasonably dangerous at the time of release into the stream of commerce due to inadequate warnings, labeling, and/or instructions accompanying the product.

54.     The Gunther Tulip filter implanted into Plaintiff was in the same condition as when it was manufactured, inspected, marketed, labeled, promoted, distributed, and sold by the Cook Defendants.

55.     As a direct and proximate result of the foregoing negligent acts and omissions by the Cook Defendants, Plaintiff has suffered a serious medical complication for which the solution and ultimate economic loss have yet to be determined.

## COUNT III
## STRICT PRODUCTS LIABILITY – DESIGN DEFECT

56.     Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

57.     At all times relevant to this action, the Cook Defendants developed, tested, designed, manufactured, inspected, labeled, promoted, distributed and sold into the stream of commerce the Cook IVC filters, including the Cook Gunther Tulip™ filter implanted in Plaintiff.

58.     The Cook Gunther Tulip™ filter was expected to, and did, reach its intended consumers without substantial change in the condition in which it was in when it left

the Cook Defendants' possession. In the alternative, any changes that were made to Cook Gunther Tulip™ filter implanted in Plaintiff were reasonably foreseeable to the Cook Defendants.

59.     The Cook Gunther Tulip™ filter implanted in Plaintiff was defective in design because it failed to perform as safely as persons who ordinarily use the product would have expected at the time of use.

60.     The Cook Gunther Tulip™ filter implanted in Plaintiff was defective in design, in that its risks of harm exceeded its claimed benefits.

61.     The Cook Defendants knew that safer alternative designs were available, which would have prevented or significantly reduced the risk of the injury presented by the Gunther Tulip filter.  Further, it was economically and technologically feasible at the time the filter left the control of the Cook Defendants to prevent or reduce the risk of such a dangerous event by application of existing, or reasonably achievable, scientific knowledge.

62.     Plaintiff and Plaintiff's healthcare providers used the Gunther Tulip filter in a manner that was reasonably foreseeable to the Cook Defendants.

63.     Neither Plaintiff, nor Plaintiff's healthcare providers, could have, by the exercise of reasonable care, discovered the device's defective condition or perceived its unreasonable dangers prior to Plaintiff's implantation with the device.

64.     The defective design of the Gunther Tulip filter was a direct and proximate cause of Plaintiff's injuries.

65.    As a result of the Gunther Tulip Filter's defective design, Plaintiff has suffered and will continue to suffer serious medical complication for which the solution and ultimate economic loss have yet to be determined.

## COUNT IV
## STRICT PRODUCTS LIABILITY – MANUFACTURING DEFECT

66.    Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

67.    The Cook Defendants designed, set specifications, manufactured, prepared, compounded, assembled, processed, marketed, labeled, distributed, and sold the Cook Gunther Tulip™ IVC filter that was implanted into Plaintiff.

68.    The Cook Gunther Tulip™ filter implanted in Plaintiff contained a condition or conditions, which Defendants did not intend, at the time it left the Cook Defendants' control and possession.

69.    Plaintiff and Plaintiff's health care providers used the device in a manner that was reasonably foreseeable to the Cook Defendants.

70.    As a result of this condition or these conditions, the product injured Plaintiff and failed to perform as safely as the ordinary consumer would expect when used in a reasonably foreseeable manner.

71.    As a direct and proximate result of the foregoing negligent acts and omissions by the Cook Defendants, Plaintiff has suffered a serious medical complication for which the solution and ultimate economic loss is yet to be determined.

## COUNT V
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

72.     Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

73.     At all times relevant to this cause of action, the Cook Defendants designed, researched, developed, manufactured, tested, inspecte4d, advertised, promoted, marketed, sold, and distributed into the stream of commerce the Gunther Tulip™ and Celect IVC filter for use as a surgically implanted device used to prevent pulmonary embolisms and for uses other than as approved and indicated in the product's instructions, warnings, and labels.

74.     At the time and place of sale, distribution, and supply of the Cook Gunther Tulip IVC filter to Plaintiff by way of Plaintiff's healthcare providers and medical facilities, the Cook Defendants expressly represented and warranted, by labeling materials submitted with the product, that the Cook filter was safe and effective for its intended and reasonably foreseeable use.

75.     The Cook Defendants knew of the intended and reasonably foreseeable use of the Gunther Tulip filter at the time they marketed, sold, and distributed the product for use by Plaintiff, and impliedly warranted the product to be of merchantable quality, and safe and fit for its intended use.

76.     The Cook Defendants impliedly represented and warranted to the healthcare community, Plaintiff and Plaintiff's healthcare providers, that the Gunther Tulip filter was

safe and of merchantable quality and fit for the ordinary purpose for which the product was intended and marketed to be used.

77.     The representations and implied warranties made by the Cook Defendants were false, misleading, and inaccurate because the Gunther Tulip filter was defective, unsafe, unreasonably dangerous, and not of merchantable quality, when used in its intended and/or reasonably foreseeable manner.  Specifically, at the time of Plaintiff's purchase of the Gunther Tulip IVC filter from the Cook Defendants, through Plaintiff's physicians and medical facilities, it was not in a merchantable condition in that:

a.   It was designed in such a manner so as to be prone to an unreasonably high rate of failure, including fracture, migration, excessive tilting, causing thrombosis and/or perforation of bodily organs;

b.   It was designed in such a manner so as to result in an unreasonably high rate of injury to the organs and anatomy; and,

c.   It was manufactured in such a manner so that the Gunter Tulip filter system was inadequately, improperly and inappropriately prepared and/or finished, so as to be prone to an unreasonably high rate of failure and/or causing the device to fail.

78.     Plaintiff and Plaintiff's healthcare providers reasonably relied on the superior skill and judgment of the Cook Defendants as the designers, researchers and manufacturers of the product, as to whether the Gunther Tulip filter was of merchantable quality, safe and fit for its intended use and also relied on the implied warranty of merchantability and fitness for the particular use and purpose for which the Gunther Tulip IVC filter was manufactured and sold.

79.     The Cook Defendants placed the Gunther Tulip filter into the stream of commerce in a defective, unsafe, and unreasonably dangerous condition, and the product was expected to and did reach Plaintiff without substantial change in the condition in which the Gunther Tulip filter was manufactured and sold.

80.     The Cook Defendants breached their implied warranty because their Gunther Tulip filter was not fit for its intended use and purpose.

81.     As a direct and proximate result of the foregoing negligent acts and omissions by the Cook Defendants, Plaintiff has suffered a serious medical complication for which the solution and ultimate economic loss have yet to determined.

**COUNT VI**
**FRAUD AND NEGLIGENT MISREPRESENTATION**

82.     Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

83.     At all times relevant to this cause, and as detailed above, the Cook Defendants negligently provided Plaintiff, Plaintiff's health care providers, and the general medical community with false or incorrect information, or omitted or failed to disclose material information concerning the Gunther Tulip filter, including, but not limited to, misrepresentations relating to the following subject areas:

a.   safety of the Gunther Tulip filter;

b.   efficacy of the Gunther Tulip filter;

c.   rate of failure of the Gunther Tulip filter; and,

d.   approved uses of the Gunther Tulip filter.

84.     The information distributed by the Cook Defendants to the public, the medical community and Plaintiff's healthcare providers was in the form of reports, press releases, advertising campaigns, labeling materials, print advertisements, commercial media containing material representations, which were false and misleading, and omitted and concealed the truth about the dangers of the use of the Gunther Tulip filter.  These materials included instructions for use and warning document that was included in the package of the Gunther Tulip filter that was implanted into Plaintiff.

85.     The Cook Defendants' intent and purpose in making these representations was to deceive and defraud the public and the medical community, including Plaintiff's healthcare providers and Plaintiff's agents; to gain the confidence of the public and the medical community, including Plaintiff's healthcare providers and Plaintiff's agents; to falsely assure them of the quality of the Gunther Tulip filter and its fitness for use; and to induce the public and the medical community, including Plaintiff's healthcare providers to request, recommend, prescribe, implant, purchase, and continue to use the Gunther Tulip filter.

86.     The foregoing representations and omissions by the Cook Defendants were in fact false.  The Gunther Tulip filter is not safe, fit, and effective for human use in its intended and reasonably foreseeable manner.  The use of the Gunther Tulip filter is hazardous to the user's health, and said device has a serious propensity to cause users to suffer serious injuries, including without limitation, the injuries Plaintiff suffered.  Further, the device has a significantly higher rate of failure and injury than do other comparable devices.

87.     In reliance upon the false and negligent misrepresentations and omissions made by the Cook Defendants, Plaintiff, Plaintiff's agents, and Plaintiff's healthcare providers were induced to, and did use the Gunther Tulip filter, thereby causing Plaintiff to sustain severe and permanent personal injuries.

88.     The Cook Defendants knew and had reason to know that Plaintiff, Plaintiff's healthcare providers, Plaintiff's agents, and the general medical community did not have the ability to determine the true facts intentionally and/or negligently concealed and misrepresented by the Cook Defendants, and would not have prescribed and implanted same if the true facts regarding the device had not been concealed and misrepresented by the Cook Defendants.

89.     The Cook Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects in the form of dangerous injuries and damages to persons who are implanted with the Gunther Tulip filter.

90.     At the time the Cook Defendants failed to disclose and misrepresented the foregoing facts, and at the time Plaintiff used the Gunther Tulip filter, Plaintiff, Plaintiff's healthcare providers and the Plaintiff's agents were unaware of said the Cook Defendants' intentional and negligent misrepresentations and omissions.

91.     Plaintiff's healthcare providers, Plaintiff's agents, and the general medical community reasonably relied upon the foregoing misrepresentations and omissions made by the Cook Defendants where the concealed and misrepresented facts were critical to understanding the true dangers inherent in the use of the Gunther Tulip filter.

92.     Plaintiff's healthcare providers and Plaintiff's agents' reliance on the foregoing misrepresentations and omissions by the Cook Defendants was the direct and proximate cause of Plaintiff's injuries as described herein.   As a result of the Cook Defendants' misrepresentations and omissions, Plaintiff has suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

## COUNT VII
## PUNITIVE DAMAGES

93.     Plaintiff realleges and incorporates by reference each and every allegation contained in the foregoing paragraphs as though fully set forth herein.

94.     Plaintiff is entitled to an award of punitive and exemplary damages based upon the Cook Defendants' intentional, willful, knowing, fraudulent, malicious acts, omissions, and conduct, and their complete and total disregard for the public safety and welfare.

95.     The Cook Defendants had knowledge of, and were in possession of evidence demonstrating that, the Gunther Tulip filter was defective, unreasonably dangerous, and had a substantially higher failure rate than did other similar devices on the market.  Despite their knowledge, the Cook Defendants failed to, among other purposeful acts, inform or warn Plaintiff, Plaintiff's agents, or her healthcare providers of the dangers, establish and maintain an adequate quality and post-market surveillance system, and recall the Gunther Tulip filter from the market.

96.     As a direct, proximate, and legal result of the Cook Defendants' acts and omissions as described herein, Plaintiff has suffered and will continue to suffer serious physical injuries, pain and suffering, mental anguish, medical expenses, loss of enjoyment of life, disability, and other losses, in an amount to be determined at trial.

## PRAYER FOR DAMAGES

**WHEREFORE**, Plaintiff, Sandra Mortensen, prays for relief on the entire complaint, as follows:

a.  Judgment to be entered against all Cook Defendants on all causes of action of this Complaint, including but not limited to:

1.   Physical pain and suffering in the past and which, in reasonable probability, he will continue to suffer in the future;

2.   Physical impairment and incapacity in the past and which, in reasonable probability, he will continue to suffer in the future;

3.   Mental anguish in the past and which, in reasonable probability, he will sustain in the future;

4.   Reasonable and necessary medical expenses for treatment received in the past and, based upon reasonable medical probability, the reasonable medical expenses he will need in the future;

5.   Disfigurement in the past and which, in reasonable probability, he will continue to suffer in the future; and,

6.   Punitive damages.

b.  Plaintiff be awarded full, fair, and complete recovery for all claims and causes of action relevant to this action;

c.  Plaintiff be awarded all appropriate costs, fees, expenses, and pre-judgment and post judgment interest pursuant to the laws of the State of Indiana as authorized by law on the judgments entered in Plaintiff's behalf; and,

d.  Such other relief the court deems just and proper.

RESPECTFULLY SUBMITTED this 7th day of October 2020.

/s/ *Joseph N. Williams*
Joseph N. Williams (#25874-49)
James A. Piatt (#28320-49)
Anne Medlin Lowe (#31402-49)
RILEY WILLIAMS & PIATT, LLC
301 Massachusetts Avenue, Suite 300
Indianapolis, IN 46204
(317) 633-5270
jwilliams@rwp-law.com
jpiatt@rwp-law.com
alowe@rwp-law.com

John Dalimonte
DALIMONTE RUEB STOLLER, LLP
85 Devonshire St, Suite 1000
Boston, MA 02109
Telephone: (617) 302-9900
john@drlawllp.com

*Counsel for Plaintiff*


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues.

/s/ *Joseph N. Williams*
Joseph N. Williams

JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
SANDDRA MORTENSEN

**DEFENDANTS**
COOK INCORPORATED, COOK MEDICAL LLC, COOK GROUP INCORPORATED, and WILLIAM COOK EUROPE APS

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant __Monroe County, IN__
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Joseph N. Williams, James A. Piatt, Anne Medlin Lowe, RILEY WILLIAMS & PIATT, LLC, 301 Massachusetts Avenue, Suite 300, Indianapolis, IN 46204, (317) 633-5270

Attorneys *(If Known)*
Andrea Roberts Pierson, Kip S. M. McDonald
FAEGRE DRINKER BIDDLE & REATH LLP, 300 N. Meridian Street, Suite 2500, Indianapolis, IN 46204, (317) 237-0300

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question *(U.S. Government Not a Party)*

☐ 2 U.S. Government Defendant

☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☒ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 485 Telephone Consumer Protection Act |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 890 Other Statutory Actions |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 891 Agricultural Acts |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C.§ 1332 and 1441
Brief description of cause:
Removal based on diversity of citizenship. Amount in controversy is greater the $75,000.00

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____
DOCKET NUMBER _____

DATE
10/07/2020

SIGNATURE OF ATTORNEY OF RECORD
/s/ Kip S. M. McDonald

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

Case 1:20-cv-05760-RRL-TAB Document 14739-4 Filed 01/07/20 Page 41 of 41 PageID #: 102814

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.