UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB MDL No. 2570 |

This document relates to:
1:20-cv-02603 (Harris)
1:20-cv-02601 (Mortensen)

## COOK DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO REMAND

The forum-defendant rule prohibits a defendant who is a citizen of the state in which an action is brought from removing the case to federal court based on diversity of citizenship, but only so long as the defendant has been "properly joined *and served*." 28 U.S.C. § 1441(b)(2) (emphasis added). There is no dispute that complete diversity exists in this case or that the requisite amount in controversy is satisfied. And plaintiffs acknowledge they had not yet served the Cook Defendants (properly or otherwise) before these cases were removed. So, the only question is whether the plain language of section 1441(b)(2) must be enforced as written. It must.

Under binding precedent, a statute's plain language can be ignored only in the most "rare and exceptional" circumstances—circumstances that are just not present here. In the last two years, three federal appellate courts have squarely held that the forum-defendant rule does not preclude removal if the forum defendant has not yet been served. Not one appellate court has held to the contrary. And there are many district court decisions that have reached the same conclusion, including a recent decision from Judge Barker of this district. *See Whipkey v. Eli Lilly & Co.*, 2020 WL 3248472, at *4 (S.D. Ind. June 16, 2020) (**"Accordingly, we now join our sister district courts in the Seventh Circuit as well as the Second, Third, and Fifth Circuit Courts of**

1

**Appeals that have concluded that § 1441(b)(2) permits a forum defendant to remove before service of process."** (emphasis added)). Plaintiffs fail to even mention *Whipkey* in their motion, let alone explain why it should be disregarded by the Court. This omission is particularly curious given that plaintiffs' lawyers also represent the plaintiff in *Whipkey*. Moreover, as the nonpartisan Congressional Research Service observed only recently, "the weight of judicial precedent currently favors the interpretation of 28 U.S.C. § 1441(b)(2) allowing snap removals." CRS Legal Sidebar, "Make it Snappy? Congress Debates 'Snap' Removals of Lawsuits to Federal Court" at 3 (updated Feb. 25, 2020), *available at* https://crsreports.congress.gov/product/pdf/LSB/LSB10380.[1]

     We do not yet know how the Seventh Circuit will rule on this issue (though there is plenty of reason to believe it will hold just as Judge Barker and the Second, Third, and Fifth Circuits have held), but there is one thing we do know for certain: contrary to what plaintiffs claim, the court has not "expressed"—"in dicta" or otherwise—"its opposition to the practice of snap removals." Remand Mot. p. 6. Indeed, the case plaintiffs cite for that proposition did not even involve snap removal. *See GE Betz, Inc. v. Zee Co.*, 718 F.3d 615, 632 (7th Cir. 2013).

     The Seventh Circuit has recognized that a court cannot do what the plaintiffs ask it to do: place a law's supposed "purpose" and congressional "intent" above the statute's plain text. The text at issue in this case is crystalline. It plainly and unambiguously allows a forum defendant to remove a case based on diversity of citizenship if that defendant has not yet been served. The analysis should begin and end there.

---

[1] Plaintiffs claim otherwise, but the article they cite relies on a stale data set: cases removed between January 1, 2012 and December 31, 2014. *See* Remand Mot. p. 6 n.1 (citing Valerie M. Nannery, *Closing the Snap Removal Loophole*, 86 U. CIN. L. REV. 541 (2018)). More than five years have passed since then. Whatever the trend was in 2014, "the weight of judicial precedent" now recognizes that section 1441(b)(2) allows snap removals.

Plaintiffs' motion to remand should be denied.

## BACKGROUND

Currently there are several thousand cases in this multi-district litigation proceeding—an MDL plaintiffs' counsel petitioned to be created. The law firm of Williams & Piatt, LLC serves as plaintiffs' liaison counsel for the MDL as a whole. Mr. Williams participated in both bellwether trials and is present for most MDL status conferences.

The vast majority of cases were originally filed in the MDL. The remainder of the cases were filed elsewhere (generally where the plaintiffs live) and then transferred to the MDL. With respect to these two cases, however, Williams & Piatt, LLC took a different approach. Instead of filing the cases in the MDL, or in plaintiffs' home states, the firm filed these cases in Marion Superior Court. Their purpose was clear: to avoid the MDL. Banking on the forum-defendant rule, plaintiffs thought that if they filed in Indiana state court, the Cook Defendants would be prohibited from removing the cases to federal court.

The strategy failed. Before plaintiffs served their complaints on any of the defendants, and well within the 30-day deadline set by statute, 28 U.S.C. § 1446(b)(1), the Cook Defendants removed these two suits to the Southern District, where they could be litigated as part of the existing MDL.

Plaintiffs now have moved to remand. They do not dispute this Court has subject-matter jurisdiction over these actions. Plaintiffs acknowledge there is complete diversity between defendants, who are citizens of Indiana (in the case of Cook Incorporated and Cook Medical LLC) and Denmark (in the case of William Cook Europe ApS), and the plaintiffs, who are alleged to be citizens of North Carolina (in the case of plaintiff Harris) and Pennsylvania (for plaintiff Mortensen). Harris Compl. ¶ 1; Mortensen Compl. ¶ 1. And plaintiffs do not dispute the amount in

controversy exceeds $75,000. Rather, plaintiffs claim that the removal of these cases was improper under 28 U.S.C. § 1441(b)(2), the so-called "forum-defendant rule." They are wrong.

## ARGUMENT

The unambiguous text of section 1441(b)(2) bars removal only where a forum-state defendant has been "properly joined *and served*." (Emphasis added.) None of the Cook Defendants was served before removal in any of these cases. Plaintiffs acknowledge this fact. Remand Mot. ¶ 2. So, with the law and the facts against them, plaintiffs stake their entire argument on the contention that the Court should ignore the language of the statute in favor of Congress's supposed "purpose and intent." Otherwise, they say, following the statute as written would lead to "absurd results." But a court has no ability to ignore the plain and unambiguous language of a statute in favor of its view of the statute's "purpose" or congressional "intent." Nor is there anything "absurd" about simply applying, as written, a statute passed by both houses of Congress and signed into law by the President, especially given that removal before service of process is in keeping with the long-held understanding that formal service marks the point at which a defendant is subject to a court's power, and establishes a clear and administrable rule in an area where "simplicity is a virtue." *Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 172-73 (2014) (quoting *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595 (2013)). Plaintiffs do not identify any result produced by this plain-text reading that is so "rare and exceptional" that Congress could not possibly have intended it. In fact, Congress rewrote section 1441 in 2011 to address the very sorts of "problems" plaintiffs claim exist with a plain-text reading of the removal statute, but notably retained the language of the forum-defendant rule. And this even though "snap" (or, as they are also called, "pre-service") removals were already a widespread practice by then. If plaintiffs do not like how the statute operates, they should petition Congress for relief, not a federal court.

I. **REMOVAL IS CONSISTENT WITH THE TEXT, STRUCTURE, AND HISTORY OF THE FORUM-DEFENDANT RULE, AS WELL AS BEDROCK PRINCIPLES OF DUE PROCESS.**

The Supreme Court has "stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992). "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Id.* at 254 (quoting *Rubin v. United States,* 449 U.S. 424, 430 (1981)). That inquiry "starts and stops at the text." *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 622 (7th Cir. 2015). The Court has noted the particular importance of adhering to plain meaning when interpreting statutes governing procedure and jurisdiction, where "simplicity is a virtue" and the need for clear rules is paramount. *AU Optronics*, 571 U.S. at 172-73; *see also Exch. Nat'l Bank of Chicago v. Daniels*, 763 F.2d 286, 292 (7th Cir.), *on reh'g in part,* 768 F.2d 140 (7th Cir. 1985) ("The first characteristic of a good jurisdictional rule is predictability and uniform application.").

In this case, the statutory text is perfectly clear. Section 1441(b)(2) provides, in full and without alternation: "A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." Plainly read, as the Seventh Circuit has recognized (but not held), this language "only prohibits removal in diversity cases" where a forum defendant was "*properly joined and served*." *Holmstrom v. Peterson*, 492 F.3d 833, 835 (7th Cir. 2007). Neither Cook Incorporated nor Cook Medical LLC (citizens of Indiana both) was "properly joined *and served*" before removal—a fact that plaintiffs themselves are forced to concede. Remand Mot. ¶ 2. By its unambiguous terms, then, section 1441(b)(2) simply does not apply to these cases.

Irrelevant thus is the canon of construction that courts should construe removal statutes "strictly." Remand Mot. ¶ 9. Canons such as this one come into play only when a statute is ambiguous. *Sebelius v. Cloer*, 569 U.S. 369, 380-81 (2013). When the words of a statute are unambiguous, as they are here, these "rules of thumb" must give way. *Id*. at 381 (quoting *Germain,* 503 U.S. at 253–54); *see also Texas Brine Co., L.L.C. v. Am. Arbitration Ass'n, Inc.*, 955 F.3d 482, 2020 WL 1682777, at *4 (5th Cir. 2020) (noting that while "[i]t is true . . . that [a court will] strictly construe the removal statute and favor remand," the rule "does not apply" in this context, "because, as discussed, the text is unambiguous").

Three appellate courts have held that pre-service removal is proper based on the plain language of section 1441(b)(2). *Texas Brine Co.,* 955 F.3d 482, 2020 WL 1682777, at *3 (5th Cir. 2020) ("By Section 1441(b)(2)'s terms, this case would not have been removable had the forum defendants been 'properly joined and served' at the time of removal. [They] had not been served, though," making the case "'otherwise removable'—as required by Section 1441(b) . . . ."); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019) ("By its text, then, Section 1441(b)(2) is inapplicable until a home-state defendant has been served in accordance with state law; until then, a state court lawsuit is removable under Section 1441(a) so long as a federal district court can assume jurisdiction over the action."); *Encompass Ins. Co. v. Stone Mansion Rest. Inc.*, 902 F.3d 147, 152 (3d Cir. 2018) ("Starting with the text, we conclude that the language of the forum defendant rule in section 1441(b)(2) is unambiguous. Its plain meaning precludes removal on the basis of in-state citizenship only when the defendant has been properly joined and served."), *reh'g denied*. The Sixth Circuit has also read section 1441(b)(2) to allow snap removals. *McCall v. Scott*, 239 F.3d 808, 813 n.2 (6th Cir. 2011) ("Where there is complete diversity of citizenship, as [plaintiff] concedes there was, the inclusion of an *unserved* resident defendant in the action does

6

not defeat removal under 28 U.S.C. § 1441(b)."). On top of that, at least four appellate courts have "concluded that formal service is not generally required before a defendant may file a notice of removal." *Novak v. Bank of New York Mellon Tr. Co., NA.*, 783 F.3d 910, 914 (1st Cir. 2015) (following the Second, Fifth, and Eleventh Circuits in this regard).

Plaintiffs claim "[t]he Seventh Circuit has expressed, in dicta, its opposition to the practice of snap removals." Remand Mot. p. 6. Plaintiffs are incorrect. In support of this proposition, plaintiffs quote *GE Betz, Inc. v. See Co., Inc.*, 718 F.3d 615 (7th Cir. 2013), to say that "defendants should not be able to run around the forum defendant rule with snap removals." Remand Mot. ¶ 23. But *GE Betz* did not involve snap removal and is instead about whether "the forum-defendant rule can pose a problem even when a non-forum defendant removes the case without the participation of the forum defendant." *GE Betz*, 718 F.3d at 626. Here's what the case actually says, in context:

> With regard to the second issue—whether it matters that only the non-forum defendant, Zee, consented to the removal of this case—the parties spend a great deal of time arguing about the importance of who removed the case, as though it makes a difference now. It could have made a difference during the first thirty days following Zee's removal. 28 U.S.C. § 1441(a) "require[s] that all defendants (or none) join a notice of removal." *McMahon v. Bunn–O–Matic Corp.,* 150 F.3d 651, 653 (7th Cir. 1998). Here, there were two defendants, Zee and BMO Harris, but only one defendant, Zee, joined the notice of removal. Harris's failure to consent to Zee's removal constituted a removal defect. *Id.* But such a defect is statutory, not jurisdictional. *Id.* Because GE Betz failed to raise this defect in either its initial motion to remand or its motion to reconsider, GE Betz waived it after thirty days. *Doe v. GTE Corp.,* 347 F.3d 655, 657 (7th Cir. 2003). Nevertheless, even if BMO Harris had properly consented to Zee's removal of this case, the forum-defendant rule would still stand in the way of removal. It is true that only Zee removed the case, and Zee is not a forum defendant. But, as our analysis in Section III.A demonstrated, Harris is a forum defendant. 28 U.S.C. § 1441(b)(2) clearly prohibits removal "if *any* of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought" (emphasis added). Harris and Zee cannot run around the forum-defendant rule by having only the non-forum defendant remove the case.

*Id*. at 632. There is no "opposition" expressed here (or anywhere else in the case) to snap removals. The practice of snap removal is not even mentioned in the case.

If anything, Seventh Circuit dicta *endorses* a reading of the forum-defendant rule that would *allow* for snap removals. In a case about fraudulent joinder, the court quoted approvingly Wright & Miller to state that "[t]he language in Section 1441(b)(2) . . . implies that a diverse but resident defendant who has not been served may be ignored in determining removability." *Morris v. Nuzzo*, 718 F.3d 660, 670 n.3 (7th Cir. 2013) (quoting 14C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 3723 (rev. 4th ed.) (citation updated)). This is exactly right and is consistent with what other circuits have said on this topic.

As for the district courts, excluding those in the Second, Third, and Fifth Circuits where the law is now settled, judges in most of the other circuits—including the Seventh Circuit—have held that snap removals are consistent with the text of the forum-defendant rule. *See*, *e.g.*, *Whipkey*, 2020 WL 3248472, at *3 (**"We find this reasoning persuasive and join the courts which hold that the plain meaning of § 1441(b)(2) permits removal when no defendant has been properly served."** (emphasis added)); *Blankenship v. Napolitano*, Civ. A. 2:19-cv-00236, 2019 WL 3226909, at *4 (S.D.W.Va. July 17, 2019) ("The court finds, as the Second and Third Circuits did, that this plain meaning is not clearly contrary to congress' intent nor so absurd that it cannot be given its plain meaning."); *Loewen v. McDonnell*, Case No. 19-cv-00467-YGR, 2019 WL 2364413, at *9 (N.D. Cal. June 5, 2019) ("[W]ithout clear authority from Congress or a higher court, and in keeping with the strong consensus in this district, the Court finds no basis to disregard the plain language of section 1441(b)(2)."); *D.C. v. Abbott Labs.*, *Inc.*, 323 F. Supp. 3d 991, 996 (N.D. Ill. 2018) ("[T]he Court concludes that the statutory text must control."); *Seong Ho Hwang v. Gladden*, No. 3:16-CV-502-SRW, 2016 WL 9334726, at *7 (M.D. Ala. Dec. 21, 2016) ("The

undersigned agrees with defendants that a forum defendant can likewise remove a case to federal court, so long as that forum defendant has not yet been served."); *Linder v. Medtronic, Inc.*, No. 13-2346-STA-CGC, 2013 WL 5486770, at *2 (W.D. Tenn. Sept. 30, 2013) ("Since MDS, the forum defendant in this case, had not been served at the time Medtronic filed its notice of removal, 1441(b) is not a bar to removal."); *Terry v. J.D. Streett & Co.*, No. 4:09CV01471 FRB, 2010 WL 3829201, at *1 (E.D. Mo. Sept. 23, 2010) ("[N]othing in § 1441(b) prohibits removal in a case where a forum defendant has not been served."); *In re Bridgestone/Firestone, Inc.*, 184 F. Supp. 2d 826, 828 (S.D. Ind. 2002) ("Section 1441(b) would have precluded removal . . . only if [the forum defendant] had been *properly served,* and it had not been served at the time [another defendant] filed the removal petition. That it ultimately was served does not affect the propriety of removal."). Collectively, these decisions reflect the dominant approach to pre-service removals.

This should be the end of the inquiry. But, to be certain, there is more.

A plain-text reading of section 1442(b)(2) is consistent with a "bedrock principle" of our legal system: a defendant is not brought under a court's authority until it has been served with formal process. *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). Only *then* can there be any limitation on a defendant's ability to remove. That is because "[s]ervice of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. The exercise of personal jurisdiction over a defendant often hinges on effectuating formal service of process. *See id.* This explains why other procedural requirements relating to removal are also pegged to formal service of process, including the 30-day deadline for removing and the 21-day deadline for responding to the complaint. *Murphy Bros.*, 526 U.S. at 353-355; *see* 28 U.S.C. § 1446(b); Fed. R. Civ. P. 81(c). It therefore makes sense that Congress would similarly have made service "the official trigger" of the forum-

9

defendant rule, rather than rendering this "the sole instance in which one's procedural rights slip away before service of a summons, *i.e.*, before one is subject to any court's authority." *Murphy Bros.*, 526 U.S. at 353, 356.

This reading also comports with the structure and history of the forum-defendant rule. Before the enactment of section 1441(b)(2) in 1948, the Supreme Court applied an open-ended version of the forum-defendant rule, under which removal was barred by joinder of a forum defendant unless a party could show "that the resident defendant [was] not . . . joined in good faith." *Pullman Co. v. Jenkins*, 305 U.S. 534, 541 (1939). Congress replaced this rather elastic standard with section 1441(b)(2) both to establish a clearer rule governing when the forum-defendant rule applied, and to ensure that plaintiffs could not fraudulently block removal by joining forum defendants only never to serve them—a form of gamesmanship the old rule allowed. *Id.* at 540; *see Gentile v. Biogen Idec, Inc.*, 934 F. Supp. 2d 313, 319-20 (D. Mass. 2013). A plain-text reading of section 1441(b)(2) achieves both ends, by creating a clear, easily administrable standard and by foreclosing the practice of joining but not serving forum defendants just to avoid federal court. *See Gibbons*, 919 F.3d at 706.

Importantly, Congress has retained the text of section 1441(b)(2) without material change for the intervening 70-odd years. In 2011, Congress comprehensively amended the removal statute to address various splits of authority and to make the removal scheme easier to understand. *See* Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63, § 103, 125 Stat. 758, 759-762; *see* H.R. Rep. No. 112-10, at 1-2 (2011) (stating that the statute was designed to "bring[] more clarity to the operation of Federal jurisdictional statutes" and "identify and delete those provisions that were considered controversial"). By that time, the debate over the precise issue presented in these cases was already roiling. *See Gentile*, 934 F.

Supp. at 320. Nevertheless, Congress chose not to amend section 1441(b)(2) at that time. That decision provides further support for reading the text just as Congress wrote it: to prohibit removal only by in-state defendants who—unlike the Cook Defendants here—have been properly joined and *served*.

## II. THE PLAIN TEXT OF THE STATUTE CANNOT BE IGNORED IN FAVOR OF THE PLAINTIFFS' VIEW OF CONGRESSIONAL INTENT AND STATUTORY PURPOSE.

Still, plaintiffs ask this Court to remand anyway, imploring the Court to look beyond the plain text of section 1441(b)(2), so as to effectuate what they view as the "intent" of Congress and the "purpose" of the statute. But what plaintiffs seek no court can give.

Federal judges do not have a "roving license . . . to disregard clear language simply on the view that . . . Congress 'must have intended' something broader." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 794 (2014). The Supreme Court "has long rejected the notion that '*whatever* furthers the statute's primary objective must be the law.'" *Cyan, Inc. v. Beaver Cty. Emps. Ret. Fund*, 138 S. Ct. 1061, 1073 (2018) (quoting *Rodriguez v. United States,* 480 U.S. 522, 526 (1987) (per curiam)). "Even if Congress could or should have done more, still it 'wrote the statute it wrote—meaning, a statute going so far and no further.'" *Id.* (quoting *Bay Mills*, 572 U.S. at 794).

"To substitute text with purpose," as plaintiffs' argument requires, "would have [the Court] assume a legislative role and overstep [its] limited authority." *INTL FCStone Fin. Inc. v. Jacobson*, 950 F.3d 491, 499 (7th Cir. 2020). Courts must "follow the text even if doing so will supposedly undercut a basic objective of the statute." *Id*. (quoting *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2169 (2015)). To that end, a court "should not 'speculate upon congressional motives' when attempting to discern the meaning of a statutory text," because it is "assum[ed] that the

11

ordinary meaning of that [text] accurately expresses the legislative purpose." *Id.* (quoting *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 326 (2008), and *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009)); *see also Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 217 (2002) ("It is . . . not our job to find reasons for what Congress has plainly done . . . ."). In short: "Plain text trumps purpose." *Jacobson*, 950 F.3d at 499. And so, "when the text is clear, 'there is no need to consult' its purpose." *Id.* (quoting *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 167 (2004)). For these reasons, section 1441(b)(2)'s supposed purpose "cannot be used to contradict, supplement, or suppress its text," as plaintiffs seek. *Id*.

Knowing the Court is bound by these well-worn principles of statutory interpretation, plaintiffs are relegated to invoking the so-called "absurdity" doctrine, the canon of construction that tells courts to "try to avoid imputing nonsense to Congress." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 642 (7th Cir. 2012). But there is nothing "absurd" or "nonsensical" about making a statutory limit on removal contingent on proper service of process, the traditional point at which a defendant becomes "subject to [a] court's authority." *Murphy Bros.*, 526 U.S. at 356. All three circuit courts that have squarely addressed snap removals have agreed on this point. *See Texas Brine*, 955 F.3d 482, 2020 WL 1682777, at *3; *Gibbons*, 919 F.3d at 706; *Encompass*, 902 F.3d at 153-54.

The Supreme Court has overrode unambiguous legislation as "absurd" only in "rare and exceptional circumstances." *Demarest v. Manspeaker*, 498 U.S. 184, 190–91 (1991). To warrant application of the doctrine, a statute's text must "produce an absurd and unjust result which Congress could not have intended," *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 574 (1982), or, as Chief Justice Marshall memorably put it, a result "so monstrous, that all mankind would, without hesitation, unite in rejecting the application," *Sturges v. Crowninshield*, 17 U.S. 122, 203

12

(1819). It is not enough that a statute's results may be "hard or unexpected." *Griffin*, 458 U.S. at 575. "The Supreme Court has been willing to enforce even statutes that seem to set traps for the unwary or unfortunate." *Jaskolski v. Daniels*, 427 F.3d 456, 462 (7th Cir. 2005). The absurdity doctrine "deals with texts that do not make sense as written 'and thus need repair work, rather than with statutes that seem poor fits for the task at hand.'" *Cranberry Growers Coop. v. Layng*, 930 F.3d 844, 853 (7th Cir. 2019) (quoting *Jaskolski*, 427 F.3d at 462 ). "[T]he absurdity doctrine is not a license to 'make the law better,'" *id*. (cleaned up and quoting *Soppet*, 679 F.3d at 642), so that outcomes based on the law "accord more closely with judicial beliefs about how matters ought to be resolved," *Jaskolski*, 427 F.3d at 461. "That would give the judiciary entirely too much law-making power." *Soppet*, 679 F.3d at 642.

Ultimately, plaintiffs fail to point to any result remotely resembling "nonsense." The "absurdity" plaintiffs complain of is simply the fact that, when plainly read, section 1441(b)(2) permits forum defendants to remove a case before being served with process. They call this "gamesmanship." Remand Mot. ¶ 7. Never mind the fact that they filed their cases in state court, just two blocks away from this Court, in an obvious attempt to avoid an MDL that their counsel is actively participating in on behalf of thousands of other plaintiffs. As if *that's* not gamesmanship. The Congress that designed MDL proceedings to reduce duplicative litigation, *see* 28 U.S.C. § 1407, and that enacted section 1441(b)(2) specifically to prevent gamesmanship *by plaintiffs*, *see* Remand Mot. ¶ 16 (citing *Hawkins v. Cottrell,* 785 F. Supp. 2d 1361, 1374-78 (N.D. Ga. 2011)), surely would not have wished to permit the plaintiffs here to abuse the forum-defendant rule in this manner. At all events, "whether [removal here] is properly viewed as 'gamesmanship' (as Plaintiff[s] see[] it) or 'diligence' (from Defendant[s'] perspective), the [caselaw shows] that it is sufficiently common to imagine that Congress will rewrite the statute if it feels that removal

13

where an in-forum defendant has not yet been served constitutes an abuse of the judicial system." *Whipkey*, 2020 WL 3248472, at *3 (quoting *Abbott Labs.*, 323 F. Supp. 3d at 997). To some "this result may be peculiar in that it allows [a forum defendant] to use pre-service machinations to remove a case that it otherwise could not; however, the outcome is not so outlandish as to constitute an absurd or bizarre result." *Encompass*, 902 F.3d at 153-54.

Nor does it matter that, when section 1441(b)(2) was enacted, "Congress was not envisioning . . . electronic case filing . . . ." Remand Mot. ¶ 18. Courts cannot ignore the plain language of a statute to account for modernity. *See Soppet*, 679 F.3d at 642. "Legislation means today what it meant when enacted." *Id*. In any event, there is nothing new under the sun, and this case is no exception. In 1939, the Supreme Court noted the possibility that defendants might "seize an opportunity to remove the cause before service upon [a] resident co-defendant is effected." *Pullman*, 305 U.S. at 541. And *still*, Congress enacted the forum-defendant rule that it did, with the language it did. Therefore, while electronic filing may not have been foreseeable in 1948, when section 1441(b)(2) became law, the possibility of pre-service removals certainly was.

Even if "purpose" and "intent" are consulted, perfectly sensible reasons exist as to why Congress might not have wanted to prohibit defendants from removing to federal court in this circumstance. One reason, as noted earlier, is that service is the point at which a defendant generally becomes "subject to [a] court's authority"—and not before then. *Murphy Bros.*, 526 U.S. at 350, 356. Congress could reasonably have concluded that, before formal service of process, a state court has no legitimate interest in retaining the case. Or, Congress may have believed that a bright-line rule fixing the application of the forum-defendant rule at the time of service was better than the available alternatives—such as a rule turning on "good faith," which entails a large dose of uncertainty. For either of these reasons, or both of them, Congress could rationally

14

have chosen to permit a forum defendant to remove a case before service, no matter how short the period between filing and removal.

Plaintiffs contend that allowing forum defendants to remove before service does not advance "[t]he purpose of diversity jurisdiction," which is "to protect nonresident defendants from any perceived prejudice or preference of the state court for the resident plaintiffs." Remand Mot. ¶ 14 (emphasis omitted). But the fact that a statute may be overinclusive relative to some of its purposes does not make the provision "absurd"—particularly where, as here, the provision advances other plausible goals, including clarity and ease of administration. Congress has also permitted forum *plaintiffs*—who also face no risk of local prejudice—to file diversity cases in federal court. *See Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 90 (2005). Does that make the removal statute absurd? Surely not. What about the fact that a plaintiff may choose not to enforce the forum-defendant rule, even when the defendant *was* served before removal? *See Hurley v. Motor Coach Industries, Inc.,* 222 F.3d 377, 380 (7th Cir. 2000) (holding forum-defendant rule is not jurisdictional and therefore may be waived). Does that make the removal statute absurd? Again, no, it does not.

And there is more. For the absurdity canon to be appropriate, the Court must be able to implement some simple fix to the statute that it can be certain Congress would have intended. *See Soppet*, 679 F.3d at 642; Antonin Scalia & Bryan A. Garner, Reading Law 237-38 (2012). But the judicially imposed limitation plaintiffs seem to propose comes with serious problems of its own. Plaintiffs suggest, based on footnote dicta from a Seventh Circuit opinion, that the Court should hold that section 1441(b)(2) prohibits snap removals "unless and until at least one defendant has been served," and then only if (a) the party served is an out-of-state defendant and (b) that out-of-state defendant is the one who removes. Remand Mot. ¶¶ 25-26 (citing *Morris*, 718 F.3d at 670

15

n.3.). But how could anyone be certain *that* is what Congress intended? Nothing in the text even hints at this outcome. And it certainly doesn't entail a "modest adjustment . . . that do[es] not parse." *Soppet*, 679 F.3d at 642. It would involve an entire re-write of the statutory text. Section 1441(b)(2) draws no distinction whatever between forum and "out-of-state" defendants in limiting removal rights. To the contrary, it bars removal where "*any* of the parties in interest properly joined and served as defendants" is a forum citizen. 28 U.S.C. § 1441(b)(2) (emphasis added).

So we must end where we began: with the text. The forum-defendant rule prohibits removal only if a forum defendant has not been "properly joined *and served*." 28 U.S.C. § 1441(b)(2) (emphasis added). This language is plain. It is unambiguous. And it cannot fairly be considered nonsense. To hold otherwise would be, in a word, absurd.

## CONCLUSION

Plaintiffs' motion to remand should be denied.

Dated: November 13, 2020

                                                Respectfully Submitted,

                                                /s/ Brian J. Paul
                                                Andrea Roberts Pierson, Co-Lead Counsel
                                                Jessica Benson Cox
                                                Brian J. Paul
                                                FAEGRE DRINKER BIDDLE & REATH LLP
                                                300 North Meridian Street, Suite 2500
                                                Indianapolis, Indiana 46204
                                                Telephone: (317) 237-0300
                                                Andrea.Pierson@FaegreDrinker.com
                                                Jessica.Cox@FaegreDrinker.com
                                                Brian.Paul@FaegreDrinker.com

James Stephen Bennett, Co-Lead Counsel
FAEGRE DRINKER BIDDLE & REATH LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana 46802
Telephone: (260) 424-8000
Stephen.Bennett@FaegreDrinker.com

*Attorneys for Defendants Cook Incorporated, Cook Medical LLC, and William Cook Europe ApS*

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of November, 2020, a copy of the foregoing was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.

/s/ Brian J. Paul