# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE: COOK MEDICAL, INC, IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

This Document Relates to Plaintiff(s)

Plaintiff Demands a Trial by Jury

MARK PRIESMEYER

Civil Case # 1:19-cv-00964-RLY-TAB

**AMENDED SHORT FORM COMPLAINT**

Plaintiff Mark Priesmeyer, by counsel, files this Amended Short Form Complaint

pursuant to Fed. R. Civ. P. 15.  Plaintiff incorporates by reference the allegations contained in

Plaintiff's Master Long Form Complaint in *In re: Cook Medical, Inc., IVC Filters, Marketing,*

*Sales Practices and Products Liability Litigation*, MDL No. 2570 previously filed in the United

States District Court for the Southern District of Indiana.

1.  Plaintiff/Deceased Party:

    Mark Priesmeyer

2.  Spousal Plaintiff/Deceased Party's spouse or other party making loss of consortium

    claim:

    Not applicable

1

3.  Other Plaintiff and capacity (i.e., administrator, executor, guardian, conservator):

Not applicable

4.  Plaintiff's/Deceased Party's state of residence at the time of implant:

Illinois

5.  Plaintiff's/Deceased Party's state of residence at the time of injury:

Illinois

6.  Plaintiff's/Deceased Party's current state of residence:

Illinois

7.  District Court and Division in which venue would be proper absent direct filing:

Northern District of Illinois

8.  Defendants (Check Defendants against whom Complaint is made):

☒  Cook Incorporated

☒  Cook Medical LLC

☒  William Cook Europe ApS

9.  Basis of Jurisdiction:

☒  Diversity of Citizenship

☐  Other:

a.  Paragraphs in Master Complaint upon which venue and jurisdiction lie:

6-28, inclusive

2

   b.   Other allegations of jurisdiction and venue:

_____

_____

10. Defendants' Inferior Vena Cava Filter(s) about which Plaintiff(s) is making a claim

(Check applicable Inferior Vena Cava Filters):

    ☒  Gunther Tulip® Vena Cava Filter

    ☐  Cook Celect ® Vena Cave Filter

    ☐ Gunther Tulip Mreye

    ☐  Cook Celect Platinum

    ☐ Other:

11. Date of Implantation as to each product:

   On or about October 19, 2007_____

12. Hospital(s) where Plaintiff was implanted (including City and State):

   The University of Chicago Medicine in Chicago, Illinois_____

13. Implanting Physician(s):

   Christopher Skelly, MD, Attending Physician_____

_____

14. Counts in the Master Complaint brought by Plaintiff(s):

    ☒   Count I:      Strict Products Liability – Failure to Warn

    ☒   Count II:     Strict Products Liability – Design Defect

    ☒   Count III:    Negligence

☒  Count IV:      Negligence Per Se

☒  Count V:       Breach of Express Warranty

☒  Count VI:      Breach of Implied Warranty

☒  Count VII:     Violations of Applicable <u>Illinois</u> Law Prohibiting
                  Consumer Fraud and Unfair and Deceptive Trade Practices

                  *See Paragraph 15 for particular averments as to Count VII.

☐  Count VIII:    Loss of Consortium

☐  Count IX:      Wrongful Death

☐  Count X:       Survival

☒  Count XI:      Punitive Damages

☒  Other:         <u>All other counts and claims for relief set forth in the Master</u>

                  <u>Complaint for an amount to be determined by the trier of fact.</u>

☐  Other:         _____ (please state the facts

supporting this Count in the space, immediately below)

15. As to Count VII, Violations of Applicable Illinois Law Prohibiting Consumer Fraud and Unfair and Deceptive Trade Practices, Plaintiff more particularly states as follows:

(a) In 2002, Cook was prepared to conduct a clinical study involving human trials on the Gunther Tulip filter in hopes of establishing safety and efficacy for the device. However, after learning that its competitor, C.R. Bard, was prepared to get its retrievable filter device to the market via 510(k) clearance, Cook abandoned this "pivotal study" and decided to take the same approach.

(b) Instead of following through with this "pivotal study," Cook decided to undertake a short-term study focused only on retrievability involving 41 patients. This study had a mean retrieval time of 11.1 days and did not examine the efficacy of the device at all (whether the filter actually prevents pulmonary embolism), and it did not examine the safety or efficacy of the device in a permanent capacity. Yet, even in this limited study, Hoppe found a 21% rate of tilt after placement.

4

(c) After receiving clearance, which was not an indication of safety, Cook began marketing the device "for the prevention of pulmonary embolism." Thereafter, Cook began receiving reports of tilt, perforation, migration, and even fracture. Further, Cook received numerous reports of difficulty in retrieving the device, although marketed as a retrievable filter.

(d) In or before 2006, Cook's Medical Science Officer, Dr. James Gardner, admitted concern internally to other executives at Cook that "there's not a lot of clinical evidence that demonstrates these filters actually improve patient outcomes." This concerned Dr. Gardner in terms of reimbursement, verses safety: "My concern, which I've shared with a couple of you over the last couple years, is that one day the payers (Medicare, Medicaid, commercial plabns, etc.) are going to realize they are spending an increasing amount of money on the placement and retrieval of IVC filters and that there's not a lot of clinical evidence that demonstrates these filters actually improve patient outcomes."

(e) Cook's knowledge and concealment of adverse events, such as tilt, perforation, and retrieval problems caused by its Gunther Tulip filter, as well as the Cook Medical Science Officer's knowledge and concealment about the lack of efficacy of the Gunther Tulip and its other IVC filters, were not included in the company's instructions for use that accompanied the product when it was implanted in Plaintiff.

(f) Cook did not study, or know, whether or not the Gunther Tulip actually prevents pulmonary embolism. Yet, Cook represented that pulmonary embolism prevention was the purpose of the device. This knowledge as to lack of efficacy was not relayed to doctors, including Plaintiff's implanting doctor, Dr. Christopher Skelly, nor other treating doctors.

(g) Doctors cannot communicate what they do not know to their patients. Accordingly, Cook's knowledge regarding lack of clinical evidence that the Gunther Tulip filter actually improved patient outcomes and Cook's suppression of adverse events were not communicated to patients, including Plaintiff.

(h) Additionally, Cook did not study the safety or efficacy of the Gunther Tulip filter as a long-term or permanent device. This fact also was not relayed to doctors, including Plaintiff's implanting doctor and subsequent treating doctors, and thereby patients.

(i) In October 2007, Plaintiff consulted with Dr. Skelly, who prescribed, and implanted in Plaintiff, a "retrievable" infrarenal Gunther Tulip vena cava filter. Consistent with the Gunther Tulip IFU, Dr. Skelly advised Plaintiff that the filter would help prevent embolism and had limited risks. Consistent with the IFU, Dr. Skelly specifically did *not* advise Plaintiff regarding filter tilt or difficult removal.

5

(j)  In fact, Plaintiff was advised, as provided in the IFU, that the filter was safely "retrievable."

(k)  Dr. Skelly implanted, and Plaintiff agreed to have implanted, the Gunther Tulip filter in reliance on Cook's statements and omissions, including those in the Gunther Tulip IFU.

(l)  In March 2008, Dr. Skelly noted that the filter, which was not medically necessary, had tilted toward the vena cava wall.  Dr. Skelly advised filter removal.

(m) In March 2008, Dr. Skelly attempted to retrieve Plaintiff's filter without success.

(n)  Specifically, Dr. Skelly noted:

"Multiple attempts were then made to snare the filter.  I had the patient perform several maneuvers, changing his side, having him Valsalva, however, given the fact that there was tilt with the hook up against the wall, I interpreted this as being endothelialization of the hook that precluded retrieval.  For this reason, I stopped, a completion venogram was performed which showed no evidence of extravasation."

(o)  The tilted, endothelialized filter was left implanted in Plaintiff.

(p)  In or about April 2017, Plaintiff first learned through legal consultation that Cook knew, at the time its Gunther Tulip filter was marketed to and implanted in Plaintiff in 2007, and thereafter, that Cook had concealed its knowledge regarding adverse events associated with the Tulip filter.

(q)  In or about April 2017, Plaintiff first learned that Cook, at the time its Tulip filter was marketed and implanted in Plaintiff in 2007, had not studied the safety or efficacy of the Tulip filter as a long-term or permanent device.

(r)  In February 2019, there was a global recall of the Gunther Tulip IFU.  The updated IFU now warns doctors of the risks of tilt, perforation and difficulty in removing the device.

16. Attorney for Plaintiff(s):

Richard S. Lewis and Steven Rotman

17. Address and bar information for Attorney for Plaintiff(s):

Richard S. Lewis, Washington DC Bar No.: 414261
Steven Rotman, Massachusetts Bar No.: 558473
HAUSFELD LLP

888 16th Street NW, Suite 300
Washington, DC 20006
Telephone:  (202) 540-7200
Facsimile:  (202) 540-7201
Email:  rlewis@hausfeld.com
        srotman@hausfeld.com


PLAINTIFF DEMANDS A TRIAL BY JURY


Dated:  December 9, 2020                     Respectfully submitted,

                    By:  */s/ Richard S. Lewis*
                           Richard S. Lewis
                           Steven Rotman
                           HAUSFELD LLP
                           888 16th Street NW, Suite 300
                           Washington, DC 20006
                           Telephone: (202) 540-7200
                           Facsimile: (202) 540-7201
                           Email: rslewis@hausfeld.com
                                 srotman@hausfeld.com


## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2020, a copy of the foregoing was served electronically and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.


                               */s/ Richard S. Lewis*