**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

---

| | |
|---|---|
| **In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION** | **Case No. 1:14-ml-2570-RLY-TAB** **MDL No. 2570** |

---

**This Document Relates to:**
**Cause No. 1:18-cv-00081-RLY-TAB**
**Lillie Sauls v. Cook Incorporated et al**

---

**PLAINTIFF LILLIE SAULS' RESPONSE IN OPPOSITION TO COOK DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OR SUMMARY JUDGMENT ON CLAIM OF FRAUDULENT CONCEALMENT**

Pursuant to the Court's order dated November 23, 2020 (Document 14900), Plaintiff Lillie Sauls[1] respectfully files this Response in Opposition to the Cook Defendants' Motion for Partial Dismissal or Summary Judgment on Claim of Fraudulent Concealment (Document 13648) and Memorandum in Support thereto (Document 13649). Plaintiff asks the Court to deny Defendants' Motion for the following reasons:

- Plaintiff's fraudulent concealment claim satisfies Federal Rule of Civil Procedure 9(b) because Plaintiff adequately pled all essential elements, including that claim's "who, what, where, when, and how," to the extent that information was not exclusively within Defendants' possession.

- Defendant's summary judgment motion alleges that Plaintiff's claim is factually insupportable, but cites no evidence to show Plaintiff's claim is factually insupportable.

In support thereof, Plaintiff would respectfully show the Court as follows:

---

[1] Plaintiffs' counsel has been alerted that Plaintiff has passed away. A suggestion of death will be filed contemporaneously with this Response.

**EXHIBITS**

**Exhibit A**: Plaintiff's Short Form Complaint

**Exhibit B**: Plaintiff's Case Categorization Form and Selected Medical Records

**Exhibit C**: Plaintiff Profile Form

**Exhibit D**: Instructions for Use of Cook® Celect® Filter Set for Femoral and Jugular Vein
Approach (hereinafter, "IFU")

**Exhibit E**: Defendant Profile Form

**Exhibit F**: Master Consolidated Complaint for Individual Claims

**Exhibit G**: Notice of Agreement

For purposes of Plaintiff's response to Defendant's motion to dismiss, Plaintiff
respectfully requests the Court consider the above-listed exhibits as an illustration of facts that
Plaintiff expects to be able to prove, without converting Defendants' Rule 12(b)(6) motion into
one for summary judgment. *See Geinosky v. City of Chi.*, 675 F3d743, 745 n.1 (7th Cir. 2012).

**FACTS**

Plaintiff is Lillie Sauls; Defendants are Cook Incorporated, Cook Medical LLC and
William Cook Europe ApS. **Exhibit A** at 1. Plaintiff sued Defendants on January 10, 2018 for
failure to warn, design defect, negligence, negligence per se, breach of express warranty, breach
of implied warranty, and violations of the Texas Deceptive Trade Practices Act related to serious
personal injuries suffered by Ms. Sauls, which were ultimately discovered to have been caused
by a "Cook® Celect® Filter Set Jugular Approach" inferior vena cava filter (hereafter, the "IVC
filter"). **Exhibit A** at 3-4. The IVC filter was developed, designed, manufactured, tested, labeled,
marketed, advertised, promoted, distributed, warranted, and sold to Plaintiff by Defendants.

**Exhibit F** at 2; 8. Plaintiff was a Texas resident at the time of her implant, at the time of her injury, and at the time she filed her case. **Exhibit A at ¶¶**4–6.

On February 7, 2018, Ms. Sauls declared under penalty of perjury the following facts:

- On November 2, 2009, David Shin, M.D. implanted a Cook Celect Filter Set Jugular Approach IVC filter into Ms. Sauls at University General Hospital in Houston, Texas. **Exhibit C** at 3.[2]

- Beginning in April 2016, Ms. Sauls began to take prescription medication to alleviate pain on her right side, near her kidneys. *Id*. at 8.

- In August of 2016, Ms. Sauls was "[h]ospitalized for kidney issues at St. Luke's Medical Center." *Id.* at 6.

- During that August 2016 hospitalization, Ms. Sauls first learned that her IVC filter had malfunctioned when she received CT imaging. *Id.* at 5. Specifically, Ms. Sauls' filter tilted, migrated, perforated her vena cava, and perforated her right kidney. *Id.*

- During her August 2016 hospitalization, Ms. Sauls learned that her IVC filter could not be removed, and that because of the issues presented by the IVC filter she would be at a higher risk for kidney stones and infection. *Id.* at 4–5.

- Ms. Sauls attributes physical injury, pain, and decreased mobility to the IVC filter. She stated, "Often and without warning a large knot comes up in my right kidney which causes severe pain for which I have to take pain medicine." *Id.* at 5. Ms. Sauls further stated that the IVC filter has caused "decreased kidney function" and that she has "extreme difficulties sleeping, walking, bending, and using the restroom." *Id.* at 5–6.

Medical records from the August 2016 hospitalization indicate that the migrated and perforated IVC filter would need to be continuously monitored including its position, whether the IVC filter may have become damaged while displaced within the body, or if it may have caused additional damage to the body. **Exhibit B** at 1–4. These records revealed that the IVC filter migrated from the inferior vena cava and that multiple of its prongs protruded though the inferior vena cava both laterally and anteriorly, including into the right renal pelvis causing

---

[2] *See also* **Exhibit B** at 5 (medical record containing the "sticker" that identifies the exact IVC filter implanted into Plaintiff.)

pelviectasis, hydronephrosis, reduction in kidney function, and pain. *Id.* at 3; 6; 7; 10; 11; 13–17; *see also, id.* at 19–24 (images of the IVC filter's position). Due to the fact that multiple prongs had perforated Ms. Sauls' vena cava both anteriorly and laterally, removing the filter was too dangerous, especially in light of Ms. Sauls' other medical conditions. *Id.* at 7; 11–14; 16.

The IFU did not adequately warn Ms. Sauls of the likelihood that her IVC filter would tilt, perforate her kidney, cause pain, or that her IVC filter could never be removed once its several prongs pierced her vena cava. **Exhibit D** at 5. Defendants undertook numerous acts through "officers, directors, employees, agents, representatives and … other persons acting on their behalf" who were responsible for the research, design, testing, development, manufacture, packaging, labeling, marketing, selling, distribution, production, warranty, and promotion of the IVC filter. *Id.* at ¶¶21; 25–26. Through these persons, Defendants took actions to omit and misrepresent information in the filter's IFU, marketing documents, and post-marketing materials, which they knew or should have known, regarding the IVC filter, including:

- the filters' design could not "withstand the normal anatomical and physiological loading cycles exerted *in vivo.*" *Id.* at ¶38; 49–50.

- studies showed the IVC filter's prongs were subject to "severe endothelialization and caval penetration" after implantation. *Id.* at ¶¶39–40.

- a study showing that "one hundred percent" of the filter "caused some degree of filter perforation of the venal caval wall" and that 40% of such IVC filters demonstrated tilt. *Id.* at ¶¶42–43.

- the high rate, risk, and severity of injuries that the IVC filter could cause as a result of its defective condition. *Id.* at ¶¶54–58, 74–75, 78, 84(d), 96.

Instead, Defendants and their agents falsely represented that studies showed the IVC filter to be safe, effective, and safely removable; indeed, Defendants alleged their IVC filter "reduce[d] the risk of fracture." *Id.* at ¶¶3–4, 25, 45-48, 49-52, 54-58, 75; 77; 85; 91; 95-96; 104; 116.

This hidden information was available to Defendants prior to 2005, for a 2005 study made reference to earlier data in its conclusion that "endothelialization *continues to be an issue* with this filter." *Id.* at ¶40 (emphasis added). By 2007, Defendants knew that the IVC filters were migrating, were penetrating body parts where they ought to never have been located (such as in patients' legs) and were showing "significant tilt." *Id.* at ¶41. A study published in 2012 found that *one hundred percent* of the followed IVC filters exhibited "some degree of filter perforation of the venal caval wall" after only 71 days of implantation. *Id.* at ¶42. These studies alerted Defendants, or ought to have alerted them, that their product was defective and unsafe, or at the very least that their warnings and marketing materials were inadequate; that their actions were illegal; and that their IVC filter's defects were known to cause injury to patients. *Id.* at ¶¶3-5, 21-22, 25-26, 39, 40-42, 44, 46, 49-52, 54-58, 75, 77, 85, 91, 95-96, 104, 116.

However, the IFU promulgated with Ms. Sauls' IVC filter in 2009 never mentions these studies. **Exhibit D** at 5-6. More favorable studies are described in the IFU but are not cited for purposes of independent verification. *Id.* The IFU claims that study found "[n]o device related major adverse events (defined as hemorrhage, perforation, death, occlusion, filter fracture or significant filter migration) have occurred. X-ray imaging has not detected filter migration greater than 20 mm in any patient. Imaging by X-ray and duplex ultrasound has revealed no evidence of vena cava perforation." *Id.* at 5. Other than that, words like migration, endothelialization, protrusion, pelviectasis, and hydronephrosis do not appear at all in the IFU. *See generally, id.* There is no mention that reduction in kidney or other organ function, nor even pain, are possible effects of complications because according to the IFU, complications do not occur. *Id.* The IFU mentions one instance of "minor filter tilt" due to "a malfunction of the introducer." *Id.*

Ms. Sauls sued Defendants by filing a Short Form Complaint which in turn incorporates the Master Complaint prepared for this MDL. **Exhibit A** at 1. Ms. Sauls was *required* to file that complaint and no other:

> WHEREAS, the parties to the above-captioned matter in accordance with this Court's Order dated March 17, 2015 (Document 87), enter into agreement regarding the form of the "Short Form Complaint" to be used by all plaintiffs in this action, a copy of which is attached hereto as Exhibit A. Specifically:
>
> 1. This Short Form Complaint adopts the Master Complaint filed with this court on January 30, 2015, (Document 213).
>
> 2. All cases filed directly into this jurisdiction shall use the Short Form Complaint attached hereto as Exhibit A.
>
> 3. All cases transferred into this jurisdiction shall be amended using the Short Form Complaint attached hereto as Exhibit A.

**Exhibit G** at 1.  By direction of the Court, the parties *including Defendants* worked together to agree to the short form complaint that all plaintiffs would thereafter be *required* to file. *See id.; see also* Document 305 at 2 ("The parties appear to have resolved the issue of whether the short form complaint must allege a specific defect. Thus, the parties shall submit a stipulation, notice of agreement, or proposed order regarding the amended short form complaint by March 26, 2015.").

The short form complaint adopting the Master Complaint is the pleading that Plaintiff is *required to file.* The Defendants agreed to its form and the breadth of its contents, and agreed that all MDL plaintiffs are to be required to file that pleading and only that pleading. Nearly six years later, Defendants attack the form of those very same pleadings on the grounds that fraudulent concealment was not pled with the specificity required by Fed. R. Civ. P. 9. Document 13649 at 3.

Alternatively, Defendants file a motion for summary judgment seeking to dismiss Plaintiff's fraudulent concealment claim for lack of evidence establishing "that the Cook Defendants acted to prevent [the MDL p]laintiffs from discovering their causes of action." *Id.*

## CHOICE OF LAW

This Court ordered that cases filed in the MDL between May 31, 2017 and June 13, 2019 are governed by the choice-of-law rule of that Plaintiff's home jurisdiction. Document 12931 at 4. Plaintiff's case was filed on January 10, 2018; thus, the choice-of-law rule of Texas, where Plaintiff was a resident at the time of her implant, at the time of her injury, and at the time she filed her case, will apply. *See* **Exhibit A** at ¶¶4–6.

Texas has adopted the Restatement (Second) of Conflict of Laws to resolve choice-of-law issues. *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000). In a tort case, the court must determine which state's substantive law applies to each issue in dispute. *Id.* (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS §145(1) (Am. Law Inst. 1988)). This determination is a legal determination based on factual inquiry, including the eleven factors enumerated as being applicable to tort cases. RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§6, 145(1) (Am. Law Inst. 1988). Because Texas' choice-of-law rule requires this factual inquiry as to every issue, Defendants' omnibus motion – which will require the Court to repeat this choice-of-law analysis for every issue in Plaintiff's case – thus poses factual issues which are inappropriate to resolve at the pleading stage. *See* Document 13891 at 8 (further discussion).

Nonetheless, Defendants do not appear to dispute that the law of Plaintiff's home state should apply to her claim for fraudulent concealment.[3] *See* Document 13649 at Appendix (collecting holdings regarding fraudulent concealment from foreign jurisdictions, including Texas). "A movant for summary judgment seeking to have the law of another state applied must

---

[3] If Plaintiff is mistaken, she respectfully requests an opportunity to fully brief the choice of law issue.

satisfy its burden of proof with respect to fact questions necessary to the choice of law decision." *Hughes Wood Prods.*, 18 S.W.3d at 205. Since this issue appears to be undisputed, Plaintiff briefly submits that Texas' choice of law rule has consistently resulted in applying the governing law of the state in which the plaintiff received misrepresentations about that product, relied upon those misrepresentations, acquired the defective product, and was injured thereby. *See, e.g., Stevenson v. Ford Motor Co.*, 608 S.W.3d 109, 127 (Tex. App.—Dallas 2020, no pet. h.) (applying law of the state where plaintiff acquired product); *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 849 (Tex. 2000) (applying law of the state where injury occurred); *Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, 356 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (applying law of the state where plaintiff resided and consequently received and acted in reliance upon misrepresentations by defendant).

## STANDARD

A motion to dismiss under Fed. R. Civ. P. 9(b) is in effect a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Lachmund v. ADM Inv'r Servs.*, 191 F.3d 777, 782 (7th Cir. 1999). For a fraud claim "[t]o survive a Rule 12(b)(6) motion to dismiss, a complaint must describe the claim in sufficient detail to give the defendant fair notice of the claim and grounds on which it rests" and satisfy the "heightened pleading requirements" of Fed. R. Civ. P. 9(b). *Cornielsen v. Infinium Capital Mgmt.*, LLC, 916 F.3d 589, 598 (7th Cir. 2019). However, the Court must assume that all plausible material facts contained in the plaintiff's complaint are true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). The motion should be granted if the complaint states no right to relief beyond mere speculation, or supports only an inference that misconduct *possibly* occurred. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555. The motion should be determined solely on the pleadings; otherwise it "must be treated as one

for summary judgment…." FED. R. CIV. P. 12(d).  A Rule 12(b)(6) motion must be filed "before pleading if a responsive pleading is allowed." FED. R. CIV. P. 12(b).[4]

As to Defendants' alternative request for summary judgment, "[a] court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Malen v. MTD Prods.*, 628 F.3d 296, 303 (7th Cir. 2010). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Minisan v. Danek Med., Inc.*, 79 F. Supp. 2d 970, 974 (N.D. Ind. 1999).

"In the context of a summary judgment motion based on the statute of limitations, [the court] must find (1) that the statute of limitations has run and (2) there exists no genuine issue of material fact as to when the plaintiff's cause of action accrued." *Evenson v. Osmose Wood Preserving Co.*, 899 F.2d 701, 703 (7th Cir. 1990). "No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party." *Ritchie v. Glidden Co.*, 242 F.3d 713, 720 (7th Cir. 2001). In a summary judgment motion, "[e]very reasonable inference must be drawn in favor of the nonmoving party." *Chambers v. Osteonics Corp.*, 109 F.3d 1243, 1249 (7th Cir. 1997). A party asserting that a fact cannot be genuinely disputed must support the assertion by citing to particular materials in the record or by showing that the non-movant *cannot* produce admissible evidence to support the fact. FED. R. CIV. P. 56(c)(1).

---

[4] Plaintiff's complaint was filed on January 10, 2018. **Exhibit A.** Defendants' motion was filed over two years later. Document 13648 (filed June 19, 2020). Defendants' motion could and should be denied for that reason alone.

## ARGUMENT & AUTHORITIES

Defendants advance two arguments: (A) that Plaintiff's claim for fraudulent concealment must be dismissed because it was not pled with sufficient particularity, and she failed to plead the "critical element" that Defendants concealed the existence of Plaintiffs' individual and particular cause of action; and alternatively, (B) that summary judgment should be granted because there is no evidence that could possibly support Plaintiff's claim of fraudulent concealment. Document 13649 at 4, 7, 10. Each of Defendants' arguments fails, and Defendants' Motion must be denied.

**A.      Dismissal on the Pleadings is Not Warranted and is Inequitable.**

Defendants allege that Plaintiff failed to plead the "who, what, where, when, and how" of Defendants' fraudulent concealment.[5] Contrary to Defendants' assertions, Plaintiff's pleadings satisfy FED. R. CIV. P. 9(b), which – as interpreted by the Seventh Circuit – permits Plaintiff to plead each of these elements more generally than Defendant allege federal law requires. Moreover, as set forth above, the pleading of which Defendants complain was one that was forced upon Plaintiff by agreement of the Plaintiffs' Steering Committee *and the Defendants*. **Exhibit G.** Therefore, Defendants seek to throw out Ms. Sauls' claims for deficiencies in pleadings that Defendants helped to assemble and to which they agreed. Moreover, because of the agreement between the MDL Plaintiffs' Steering Committee and Defendants, Ms. Sauls has no choice but to file these complaints. *Id.* Granting dismissal on the pleadings under these circumstances would be exceedingly inequitable.

---

[5] Defendants failed to identify any deficiency in Plaintiff's pleading of "where" the fraudulent concealment occurred. Document 13649 at 4, 6. Because this element was unchallenged, it is not addressed herein.

### 1.    Plaintiff Sufficiently Pled FED. R. CIV. P. 9(B)'s "Who" Element.

First, Defendants assert that because "Plaintiffs do not allege who *at* the Cook Defendants concealed information from them or their doctors," Plaintiff's claim for fraudulent concealment must fail. Document 13649 at 6 (emphasis added). However, FED. R. CIV. P. 9(b) does not require a plaintiff to identify "specific representations made by particular [corporate] staffers" to survive a motion to dismiss. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011). Likewise, while "[a] complaint must outline the alleged misrepresentations and reasonably notify a defendant of . . . the particular defendant's role . . . an agency relationship establishing vicarious liability for fraud generally does not have to be pleaded with particularity." *Guar. Residential Lending, Inc. v. Int'l Mortg. Ctr., Inc.*, 305 F. Supp. 2d 846, 853 (N.D. Ill. 2004) (citing *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 782–83 (7th Cir. 1999)). Regardless who "at" Defendants committed the acts of which Plaintiff complains, Defendants are vicariously liable for the acts of their employees, corporate officers, and directors where such acts were within their employment or authority. *Burlington Indus. v. Ellerth*, 524 U.S. 742, 755–56 (1998) (employees); *Faragher v. City of Boca Raton*, 524 U.S. 775, 789 (1998) (corporate officers).

Plaintiff adequately pled that Defendants (as corporate entities) are responsible for their employees' and officers' acts and therefore satisfied FED. R. CIV. P. 9(b). **Exhibit A** at ¶8 (pleading which corporate entities are responsible); Document 213 at ¶21 (pleading which types of agents are at issue). She alleged that "the officers, directors, employees, agents, representatives and … other persons acting on [Defendants'] behalf" were responsible for all aspects of the design, manufacture, testing, labeling, marketing, and sale of the IVC filter. Document 213 at ¶¶25, 29, 38. She alleged that these agents received substantial compensation

and profits from the sale of the IVC filter, and took action to make material omissions, misrepresentations that they knew about the filters: that the filters' design could not "withstand the normal anatomical and physiological loading cycles exerted *in vivo,*" they hid studies that showed the IVC filter's prongs underwent "severe endothelialization and caval penetration" after implantation (that is, tissues grew on the filters' prongs and the filters perforated the vena cava) injuries that the products could cause and the risk of those injuries from the IVC Filter's IFU, marketing documents, and post-marketing materials. *Id.* at ¶¶3-5, 21-22; 25-26; 39; 40-42; 44; 46; 49-52; 54-58; 75; 77; 85; 91; 95-96; 104; 116. Plaintiff identified the specific studies describing the risks of "endothelialization," "significant tilt," and "filter perforation of the venal caval wall" that Defendants knew or should have known and failed to disclose. *Id.* at ¶¶40–42.

This specific listing by subject and date should be more than adequate for Defendants to identify which of their personnel obtained these studies, altered their products based on these studies, or communicated these studies to Plaintiff, for the particular identities of each and every agent of Defendants at any given time is information within Defendants' exclusive knowledge. As the Seventh Circuit has noted, the requirements of FED. R. CIV. P. 9(b) "are relaxed when specific details are within defendants' exclusive knowledge or control." *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994). The knowledge of which individual within Defendants' organization committed the acts constituting Defendants' fraudulent nondisclosure is within Defendants' exclusive knowledge and control. *See* **Exhibit E** at 4–5; *see also Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 600 (7th Cir. 2019) (courts "create[d] an exception to Rule 9(b)" for corporate fraud claims where "an individual's actual role in" making statements cannot "be reliably deduced from their title"). Thus, even if FED. R. CIV. P.

9(b) required Plaintiff to identify "who *at*" Defendants committed the acts at issue, Plaintiff sufficiently pled their identity in light of *Jepson*.

Plaintiff would respectfully submit that both the Court and Defendants recognize this standard: after Plaintiff filed her complaint identifying the date and location of the implantation[6], Defendants were requested to identify which of their officers and employees were responsible for communicating safety information about the Celect filter to Plaintiff's medical care providers at the time of the implantation. **Exhibit E** at 4–5. Defendants were ordered by the Court to provide this information to Plaintiff in its Case Management Order. *Id.* at 1. Yet Defendants could only state that these persons were "unknown" and that the requested "information will be supplemented when it becomes available." *Id*. at 4–5. Defendants can hardly fault Plaintiff for failing to plead information that Defendants were ordered to – but apparently could not – provide to Plaintiff.

Defendants' cited case, *Windy City Metal*, is distinguishable from Plaintiff's case. The *Windy City Metal* plaintiffs alleged that a defendant entity had knowingly conspired with a fraudulent third party to later profit from its illegal, unenforceable contracts with plaintiffs. In dismissing the plaintiffs' claims under FED. R. CIV. P. 9(b), the court noted that plaintiffs "failed to establish [defendant]'s connection to [the third party] beyond [its]'s role as an assignee" of the contracts – in other words, there was no indication that defendant nor its agents were involved in the actual fraud that resulted in the questionable contracts.  *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 2007 U.S. Dist. LEXIS 9781, at *10; 20 (N.D. Ill. Feb. 9, 2007) (mem. op.). Neither the district court nor appellate court distinguished between what the defendant knew as an institution versus what was known by people "at" the defendant entity. *Id.* at *10–13; *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d, at

---

[6] **Exhibit A** at 3.

669 n.4. (7th Cir. 2008). The *Windy City Metal* plaintiffs' problem, however, is they could tie neither the defendant entity nor *any* of its agents to a fraud that occurred before the defendant entity became the successor-in-interest to the questionable contracts. *Windy City Metal*, 2007 U.S. Dist. LEXIS 9781, at *9–12. Here, Plaintiff sufficiently identified particular information that Defendants knew or should have known as an institution and that this knowledge was acquired via their agents and employees during a particular timeframe.

### 2.    Plaintiff Sufficiently Pled FED. R. CIV. P. 9(b)'s "What" Element.

Defendants allege that Plaintiff fails to identify "what specific information the Cook Defendants allegedly concealed," asserting that FED. R. CIV. P. 9(b) requires "a specific allegation of fraudulent concealment of specific information." Document 13649 at 6.

Defendants' argument substantially overstates the Seventh Circuit's standard of specificity. In *Tomera v. Galt*, an investment fraud case, basic allegations that "defendant [falsely] informed [plaintiff] that these three companies held valid mine leases in Mexico, were carrying on silver mining operations and processing the ore, and planned to use the funds [plaintiff] invested to further develop the mine property and facilities," were sufficient to meet FED. R. CIV. P. 9(b)'s particularity requirements. *Tomera v. Galt*, 511 F.2d 504, 508 (7th Cir. 1975). It is only when a plaintiff's allegations fail to amount to "plausible grounds for suspecting" fraud that his complaint is deficient of FED. R. CIV. P. 9(b)'s standard. *Pirelli*, 631 F.3d, at 444–48. Critically, the Seventh Circuit explained in *Pirelli* that FED. R. CIV. P. 9(b) only requires a plaintiff to submit "some firsthand information to provide grounds to corroborate its suspicions." *Id*. at 447. Defendants' contention that FED. R. CIV. P. 9(b) requires "a specific allegation of fraudulent concealment of specific information"[7] has already been rejected by the Seventh Circuit. In *Pirelli*, the Court plainly stated, "the district court was incorrect when it

---

[7] Document 13649 at 6.

suggested that [a plaintiff] needs to point to specific misrepresentations made by particular [defendant] staffers" to satisfy FED. R. CIV. P. 9(b). *Pirelli*, 631 F.3d at 447.

Moreover, Plaintiff's specific allegations in this case satisfy both the Rule as elucidated by *Pirelli* and Defendant's incorrectly elevated standard of FED. R. CIV. P. 9(b). As shown above, Plaintiff did identify specific information that Defendants knew or should have known, but excluded from its disclosures, statements, marketing materials, IFU, and its post-market bulletins. Part A(1), *supra*; *see also* Document 213 at ¶¶3-5, 21-22; 25-26; 39; 40-42; 44; 46; 49-52; 54-58; 75; 77; 85; 91; 95-96; 104; 116 *and see* **Exhibit D** at 5 ("No device related major adverse events (defined as hemorrhage, perforation, death, occlusion, filter fracture or significant filter migration) have occurred."). The Master Consolidated Complaint cited several studies which in turn identified specific risks of failure, perforation, and migration arising separate and apart from any faulty installation of Defendants' filters – in one study, perforation occurred *each and every time*. Document 213 at ¶¶39–43. Plaintiff specifically alleged "[t]he Defendants concealed the known risks and . . . associated with the Cook Filters, *as aforesaid*," explicitly referencing these studies (among others) as being concealed by Defendants. *Id*. at ¶46 (emphasis added).

Plaintiff's specific allegations clearly distinguish her complaint from the clearly insufficient allegations made in Defendants' cited case, *Pitts v. Unarco Inds., Inc.* The *Pitts* plaintiff merely stated, "[d]efendants . . . possessed since at least 1929 medical and scientific data which clearly indicated that asbestos-containing product were hazardous." *Pitts v. Unarco Inds., Inc.*, 717 F.2d 276, 278 n.3 (7th Cir. 1983).

Conversely, Plaintiff's allegations that Defendants concealed specific studies are *more particular* than allegations that have been found to satisfy FED. R. CIV. P. 9(b) in comparable medical-device cases. Allegations that were specific enough include:

- A drug manufacturer "failed to disclose information regarding the lack of a reversal agent or protocol" for the effects of its drug. *Sellers v. Boehringer Ingelheim Pharms., Inc.*, 881 F.Supp. 992, 1001 (S.D. Ill. 2012).

- An implant manufacturer made false representations that "none of" its devices "experienced a clinical failure since their inception" and "guarantee[d]: [s]tructural reliability, [a]bsence of significant micromovement, and [a]bsence of fretting corrosion." *Tzakis v. Wright Med. Tech.*, 2020 U.S. Dist. LEXIS 33808 at *10 (W.D. Wisc. Feb. 27, 2020) (slip op.) (original brackets removed).

- A device manufacturer failed to disclose that its treatment "was not as safe as other…treatments," that "the risk of adverse events with the Virtue device was not adequately tested" and that its device had "negligent and defective design and manufacture." *Lautzenhiser v. Coloplast A/S*, 2012 U.S. Dist. LEXIS 142657, at *21 (S.D. Ind. Sep. 29, 2012) (dismissing claim under FED. R. CIV. P. 9(b) because "the 'where' element" was based on "fraud on the FDA claims" that "could not be the subject of federal litigation").

Plaintiff's identification of specific studies, information from those studies, and Defendants' statements that omitted information or contained false or misleading information, is more particular than these, yet these statements were sufficient to satisfy FED. R. CIV. P. 9(b).

**3.      Plaintiff Sufficiently Pled FED. R. CIV. P. 9(b)'s "How" and "When" elements.**

Defendants claim Plaintiffs fail to plead "how or when [Defendants' fraudulent] concealment occurred." Document 13649 at 6. This statement improperly collapses two elements of the Seventh Circuit's analysis under FED. R. CIV. P. 9(b) – the "how" and the "when" – into a single inquiry. With regard to "how" concealment occurs, fraudulent *concealment* allegations – unlike fraudulent *misrepresentation* allegations – may satisfy the "how" element of 9(b) simply by identifying where disclosure was absent. *Compare Gerk v. CL Med. SARL*, 2015 U.S. Dist. LEXIS 152508, at *8 (C.D. Ill. Nov. 10, 2015) ("patient brochures and websites" sufficient for

concealment claim) *with Jarrett v. Wright Med. Tech., Inc.*, 2019 U.S. Dist. LEXIS 104086 (S.D. Ind. Jun. 21, 2019) (similar information was insufficient for *misrepresentation* claim). Here, Plaintiff's complaint specifically stated that "the Defendants failed to provide sufficient warnings and instructions" with their products, including in the IFU – thereby identifying the medium (the "how") where information did not appear. Document 213 at ¶¶50, 54, 57, 75; *see* part A(1), *supra*; *see also* Document 213 at ¶54 ("Cook IVC Filters . . . *contained* warnings insufficient to alert consumers") (emphasis added); *id.* at ¶71 (Plaintiff's physician "implanted [the filter] as instructed via the Instructions for Use").

With regard to "when" concealment occurs, Texas law applicable to Plaintiff's claim provides the answer in conjunction with Plaintiff's Short Form Complaint: "Under Texas law, a manufacturer must instruct consumers as to the safe use of its product and warn consumers of dangers of which it has actual or constructive knowledge *at the time the product is sold*." *Pustejovsky v. PLIVA, Inc.*, 623 F.3d 271, 276 (5th Cir. 2010) (emphasis added); *Centocor, Inc. v. Hamilton*, 372 S.W.3d 140, 153–54 (Tex. 2012). Here, Plaintiff's Short Form Complaint stated that Plaintiff's IVC filter was implanted by a Houston physician on October 29, 2009. **Exhibit A** at ¶1.

Still, identifying "when" Defendants' fraudulent *concealment* occurred – unlike fraudulent *misrepresentation* – does not require Plaintiff to identify specific dates or particular individual communications where the 'omission' occurred. *See Leathermon v. Grandview Memorial Gardens, Inc.*, 2011 U.S. Dist. LEXIS 63754, at *25–26 (S.D. Ind. June 25, 2011) (allegations that "Defendants acted to conceal the drainage problems from Plaintiffs by pumping water immediately prior to burials" satisfied FED. R. CIV. P. 9(b)). Defendants' Motion, which seeks to impose this impermissibly elevated requirement on Plaintiff, must therefore fail.

4.     **Plaintiff Adequately Pled Fraudulent Concealment Related to Her Cause of Action.**

Defendants also argue that Plaintiff failed to state a valid claim for fraudulent concealment by merely asserting that Defendants fraudulently concealed information about their product's risks. Defendants' contention misstates both the law and the facts underlying this Court's prior orders in the *Graham* and *McDermitt* cases. Moreover, Defendants' contention – even if it were true – could not foreclose the discovery rule applicable to Plaintiff's inherently undiscoverable injury. Defendants' Motion independently fails on each of these bases.

a.     **Plaintiff's Allegations are Sufficient.**

Defendants assert that "a plaintiff cannot merely claim that the defendant concealed information about the dangers of the product at issue," but "must allege that the defendant fraudulently concealed information about the existence of the plaintiff's cause of action itself." Document 13649 at 7. One element of a plaintiff's cause of action for products-liability is that a danger or defect in the product was a "producing cause" of the plaintiff's claimed injuries. *Timpte Indus. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). By definition, Defendants' concealment of information about the "dangers of the product at issue" necessarily means Defendant concealed that such dangers or defects were a "producing cause" of Plaintiff's injuries. *See Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834–35 (Tex. 2018) (discovery rule did not apply because plaintiff knew that *employer* caused exposure to toxic fluids by failing to provide protective equipment).

Defendants' claim that Plaintiff failed to allege "any affirmative act [by Defendants] that prevented [her] from discovering [her] causes of action" both misstates Texas law and is false. Texas law (unlike Indiana law) does not require that a defendant's affirmative act *prevent* a plaintiff from discovering the wrong – reasonable reliance on a deception is sufficient to support

a fraudulent concealment claim. *See Borderlon v. Peck*, 661 S.W.2d 907, 908 (Tex. 1983) (fraudulent concealment terminates when a party "should have learned [of the claim] through the exercise of reasonable diligence"). Moreover, Plaintiff clearly and specifically alleged that Defendants knew information indicating that the exact injuries suffered by Plaintiff were caused by its products, yet it hid that information from Plaintiff and from others by omitting it from all of its marketing materials, its IFU, and its post-market materials. Document 213 at ¶¶3-5, 21-22; 25-26; 39; 40-42; 44; 46; 49-52; 54-58; 75; 77; 85; 91; 95-96; 104; 116. Thus, Plaintiff has pled that Defendants committed an affirmative act intended to conceal her cause of action from her, upon which she reasonably relied, and which prevented her from discovering her cause of action.

Defendants also assert that Plaintiffs' failure to allege that "[D]efendants **knew** before being sued by [Plaintiff] that [she] had experienced any injury" mandates dismissal of Plaintiff's fraudulent concealment defense. Document 13649 at 9 (emphasis in original). However, "a person who makes a misrepresentation is liable to the person or class of persons the maker intends or 'has reason to expect' will act in reliance upon the misrepresentation." *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 578 (Tex. 2001); *see also Stein v. D'Amico*, 1989 U.S. Dist. LEXIS 9511, at *7–8 (N.D. Ill. Aug. 8, 1989) (mem. op.) ("it is not necessary that [a party making a fraudulent misrepresentation] have any particular third party in mind"). Thus, Plaintiff was not required to plead that Defendants *knew* Plaintiff *was* injured; Plaintiff sufficiently pled that Defendants had reason to expect that a person *would be* injured by relying on their omissions. Plaintiff established exactly that. Document 213 at ¶¶57–59.

### b.   Plaintiff's case is distinguishable from *Graham* and *McDermitt*.

Defendants cite two decisions of this Court in this MDL, alleging that Plaintiff's case, like those cases, fails to state a claim for fraudulent concealment. Document 13649 at 7–10. In

*McDermitt*, this Court granted summary judgment on the plaintiff's fraudulent-concealment claim where the plaintiff "had no issues with the filter—no pain, no discomfort, no physical limitations." Document 13187 at 2. The *McDermitt* plaintiff did "not allege that Cook committed any *affirmative act* to prevent him from discovering a cause of action against it . . . [he] claims he did not know he was injured until someone at Goldenberg Law told him so." *Id*. at 8. Meanwhile, the *Graham* plaintiff was aware that her injuries were caused by Defendants' filter. Document 5575 at 1-2; 5. The court found, "Graham does not allege any affirmative conduct by the Cook Defendants that was designed to prevent, and *did prevent*, her from discovering her cause of action." *Id*. at 7 (emphasis added).

Here, Ms. Sauls was implanted with the IVC filter in 2009 and did not experience symptoms of injury until 2016. **Exhibit C** at 3. In April of 2016, she began experiencing pain in the area of her right kidney. *Id*. at 8. Four months later, she went to the hospital and discovered her IVC filter had migrated from the inferior vena cava and that multiple IVC prongs protruded though the inferior vena cava both laterally and anteriorly, including into the right renal pelvis causing pelviectasis, hydronephrosis, reduction in kidney function, and pain. **Exhibit B** at 3; 6; 7; 10; 11; 13–17; *see also, id*. at 19–24 (images of the IVC filter's position). Ms. Sauls filed this litigation on January 10, 2018. Unlike the *Graham* plaintiffs, she did not attribute her injury to the IVC filter several years before filing suit. Unlike *McDermitt*, when Ms. Sauls experienced pain in the right kidney area, she acted diligently in discovering that the IVC filter was indeed the cause, and she filed suit within two years of that discovery. Defendants' motion to dismiss thus fails on this basis as well.

**B.    Defendants Seek Dismissal of Plaintiff's Claim for Equitable Estoppel Without Any Supporting Argument.**

In their Motion, Defendants exclusively attack Plaintiff's cause of action for fraudulent concealment – but then seek dismissal of her claims for "fraudulent concealment or equitable estoppel." Document 13649 at 1, 13. Under Texas law, equitable estoppel applies "when the nature of the injury is inherently undiscoverable and the injury itself is objectively verifiable." *S.V. v. R.V.*, 933 S.W.2d 1, 7–8 (Tex. 1996). Defendants' failure to address these elements precludes dismissal of that claim at this time.

### C.   Defendants' Alternative Motion for Summary Judgment Must Fail.

Finally, Defendants assert that they are entitled to summary judgment on Plaintiff's fraudulent concealment claim because "none of these Plaintiffs can offer any evidence to support the elements of such a claim." Document 13649 at 10. Defendants' assertions that Plaintiff is *factually incapable* of supporting her claim for fraudulent concealment utterly fail to satisfy their burden on summary judgment. In their Motion, Defendants provide no evidence – not a single document, affidavit, or discovery response – to support their factual assertions that:

- Defendants were unaware that their products could cause Plaintiff's symptoms until after Plaintiff learned of the connection;

- Plaintiff had access to the same data Defendants did, which indicated the risk; or

- Defendants took no affirmative act which deceived Plaintiff.

Document 13649 at 10.

When a movant asserts that there are no genuine issues of material fact, the movant must cite specific summary judgment evidence to show that the facts are not genuinely disputed. FED. R. CIV. P. 56(c)(1)(A). Defendants have failed to do this; indeed Defendants did not and cannot produce admissible evidence to support their supposed facts because such evidence does not exist. In fact, Ms. Sauls approached Defendants' counsel to schedule her deposition and

Defendants refused. If Defendants allege that their evidence conclusively rebuts Plaintiff's allegations, Defendants could have – and should have – provided that evidence.

Moreover, there are several fact issues that preclude summary judgment on fraudulent concealment. Ms. Sauls declared under penalty of perjury that on November 2, 2009, David Shin, M.D. implanted a Cook Celect Filter Set Jugular Approach IVC filter into Ms. Sauls at University General Hospital in Houston, Texas. **Exhibit C** at 3.[8] She declared that, beginning in April 2016, she began to take prescription medication to alleviate pain on her right side, near her kidneys *Id.* at 8. Then, in August of 2016 Ms. Sauls states she was "[h]ospitalized for kidney issues at St. Luke's Medical Center." *Id.* at 6. During that hospitalization, Ms. Sauls learned that her IVC filter had tilted, migrated, perforated the vena cava, and perforated her right kidney. She learned that it could not be removed, and that because of the issues presented by the IVC filter she would be at a higher risk for kidney stones and infection. *Id.* at 4–5. She stated that she has suffered physical injury, pain, and decreased mobility to the IVC filter and "[o]ften and without warning a large knot comes up in my right kidney which causes severe pain for which I have to take pain medicine." *Id.* at 5. Ms. Sauls further stated that the IVC filter has caused "decreased kidney function" and that she has "extreme difficulties sleeping, walking, bending, and using the restroom." *Id.* at 5–6.

Her medical records reflect that the IVC filter migrated from the inferior vena cava and that multiple of its prongs protruded though the inferior vena cava both laterally and anteriorly, including into the right renal pelvis causing pelviectasis, hydronephrosis, reduction in kidney function, and pain. **Exhibit B** at 3; 6; 7; 10; 11; 13–17; *see also id.* at 19–24 (images of the IVC filter's position). Due to the fact that multiple prongs had perforated Ms. Sauls' vena cava both

---

[8] *See also* **Exhibit B** at 5 (medical record containing the "sticker" that identifies the exact IVC filter implanted into Plaintiff.)

anteriorly and laterally, removing the filter was too dangerous especially in light of Ms. Sauls' other medical conditions. *Id.* at 7; 11–14; 16.

Meanwhile, Defendants and their agents knew information related to the defects of the IFU filter and that it was causing injury to patients prior to 2005, including but not limited to studies that showed one hundred percent of the IVC filters perforated the vena cava at 71 days of implantation. Document 213 at ¶¶3-5, 21-22; 25-26; 39; 40-44; 46; 49-52; 54-58; 75; 77; 85; 91; 95-96; 104; 116. They disclosed none of this information, and instead represented to Ms. Sauls, to her healthcare providers, and to the public at large that complications were nonexistent, that studies showed the IVC filter to be safe and effective, and that it could be safely removed. **Exhibit D** at 5.

## V.
## CONCLUSION

Defendants invoke factually distinguishable decisions in this MDL and allege that every case mirrors those decisions, completely ignoring the Short Form Complaint and medical records detailing this Plaintiff's case. Defendants allege that Plaintiff is factually *unable* to prove her case, and that no evidence supports it – without citing any evidence to support a lack of disputed material facts as is required. Defendants fail to satisfy their burden to support either a dismissal under FED. R. CIV. P. 9(b) or a summary judgment under FED. R. CIV. P. 12(b)(6). Accordingly, Plaintiff requests that this Court DENY Defendants' Motion in its entirety, and award Plaintiff all further relief to which she may be justly entitled to receive.

Dated: January 7, 2021

Respectfully submitted,

THE SPENCER LAW FIRM

Kimberlyann A. Robards
Bar No.  24086249
E-mail:  kimrobards@spencer-law.com
4635 Southwest Freeway, Suite 900
Houston, Texas 77027
Telephone: (713) 961-7770
Facsimile: (713) 961-5336

***Attorney for Plaintiff Lillie Sauls***

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of January, 2021 I electronically filed this document with the clerk of the court using the CM/ECF system which will send notification of this filing to CM/ECF participants registered to receive service in this MDL.

Kimberlyann A. Robards