UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE:  COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB MDL No. 2570 |

This Document Relates to:

Mark Priesmeyer
    No. 1:19-cv-00964
Rocco Yedman
    No. 1:17-cv-02720

**COOK DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION
FOR DISMISSAL OF CLAIMS BASED ON
STATE CONSUMER FRAUD STATUTES**

The Cook Defendants[1] respectfully move the Court to dismiss Plaintiffs Mark

Priesmeyer's and Rocco Yedman's statutory consumer fraud claims based on Illinois's

Consumer Fraud Act ("ICFA") (Priesmeyer) and Pennsylvania's Unfair Trade Practice

and Consumer Protection Law ("UTPCPL") (Yedman).[2]  The Cook Defendants are

---

[1] The Cook Defendants in this matter are Cook Incorporated, Cook Medical LLC f/k/a Cook Medical Incorporated, and William Cook Europe APS (collectively "Cook" or "the Cook Defendants").

[2] These claims are set out in Count VII, paragraph 15 of Plaintiffs' respective Short Form Complaints (collectively, the "Complaints"). Dkts. 15495 (Yedman) and 15512 (Priesmeyer), and in Count VII, paragraphs 112-166 of the Master Consolidated Complaint for Individual Claims ("Master Complaint"), Dkt. 213.

entitled to dismissal because Plaintiffs have failed to plead these fraud-based claims with the particularity required by Federal Rule of Civil Procedure 9(b).

## PROCEDURAL BACKGROUND

In their original Short-Form Complaints, Plaintiffs Yedman and Priesmeyer (collectively "Plaintiffs") incorporated the statutory consumer fraud count in the Master Complaint, Dkt. 213, with Plaintiff Priesmeyer selecting the application of Illinois's consumer fraud statute, and Plaintiff Yedman selecting application of Pennsylvania's consumer fraud statute.  *See* Dkt. 1 in associated case 1:19-cv-00964-TWP-TAB (Priesmeyer), at 4, attached here as Exhibit  A; Dkt. 1 in associated case 1:17-cv-02720-TWP-TAB (Yedman), at 4, attached here as Exhibit B.  Neither Short Form Complaint included any specific factual allegations in support of the consumer fraud claims.  *See id.*

On December 10, 2020, both Plaintiffs moved to amend their Short-Form Complaints to add more allegations concerning their statutory consumer fraud claims. *See* Dkts. 15040, 15041. On January 12, 2021, over Cook's objections,[3] the Magistrate Judge granted both Plaintiffs' motions and directed the clerk of court to file the amended complaints into the records of the respective cases.  *See* Dkts. 15491, 15510.

---

[3] *See* Dkt. 15358.  Cook later asked the Magistrate Judge to reconsider the grant of leave to amend, *see* Dkt. 15656, but the Magistrate Judge denied that motion, ruling that in the context of a motion to amend, Plaintiffs had "provided the requisite who, what, when and how."  Dkt. 15703.

US.132020504.05

Both Amended Short-Form Complaints make identical allegations concerning Cook's supposed conduct, differing only in the identification of which state's consumer fraud statute applies.  Both Amended Short-Form Complaints allege:

15.     As to Count VII, Violations of Applicable Illinois Law Prohibiting Consumer Fraud and Unfair and Deceptive Trade Practices, Plaintiff more particularly states as follows:

(a)     In 2002, Cook was prepared to conduct a clinical study involving human trials on the Gunther Tulip filter in hopes of establishing safety and efficacy for the device. However, after learning that its competitor, C.R. Bard, was prepared to get its retrievable filter device to the market via 510(k) clearance, Cook abandoned this "pivotal study" and decided to take the same approach.

(b)     Instead of following through with this "pivotal study," Cook decided to undertake a short-term study focused only on retrievability involving 41 patients. This study had a mean retrieval time of 11.1 days and did not examine the efficacy of the device at all (whether the filter actually prevents pulmonary embolism), and it did not examine the safety or efficacy of the device in a permanent capacity. Yet, even in this limited study, Hoppe found a 21% rate of tilt after placement.

(c)     After receiving clearance, which was not an indication of safety, Cook began marketing the device "for the prevention of pulmonary embolism." Thereafter, Cook began receiving reports of tilt, perforation, migration, and even fracture. Further, Cook received numerous reports of difficulty in retrieving the device, although marketed as a retrievable filter.

(d)     In or before 2006, Cook's Medical Science Officer, Dr. James Gardner, admitted concern internally to other executives at Cook that "there's not a lot of clinical evidence that demonstrates these filters actually improve patient outcomes." This concerned Dr. Gardner in terms of reimbursement, verses safety: "My concern, which I've shared with a couple of you over the last couple years, is that one day the payers (Medicare, Medicaid, commercial plans, etc.) are going to realize they are spending an increasing amount of money on the placement and retrieval of IVC filters and that there's

- 3 -

not a lot of clinical evidence that demonstrates these filters actually improve patient outcomes."

(e)  Cook's knowledge and concealment of adverse events, such as tilt, perforation, and retrieval problems caused by its Gunther Tulip filter, as well as the Cook Medical Science Officer's knowledge and concealment about the lack of efficacy of the Gunther Tulip and its other IVC filters, were not included in the company's instructions for use that accompanied the product when it was implanted in Plaintiff.

(f)  Cook did not study, or know, whether or not the Gunther Tulip actually prevents pulmonary embolism. Yet, Cook represented that pulmonary embolism prevention was the purpose of the device. This knowledge as to lack of efficacy was not relayed to doctors, including Plaintiff's implanting doctor, Dr. Christopher Skelly, nor other treating doctors.

(g)  Doctors cannot communicate what they do not know to their patients. Accordingly, Cook's knowledge regarding lack of clinical evidence that the Gunther Tulip filter actually improved patient outcomes and Cook's suppression of adverse events were not communicated to patients, including Plaintiff.

(h)  Additionally, Cook did not study the safety or efficacy of the Gunther Tulip filter as a long-term or permanent device. This fact also was not relayed to doctors, including Plaintiff's implanting doctor and subsequent treating doctors, and thereby patients.

Dkts. 15495 (Yedman) ¶ 15 (a)–(h);15512 (Priesmeyer) ¶ 15 (a)–(h) (same, but citing Pennsylvania statute). Each of the Plaintiff's Amended Short-Form Complaints also makes Plaintiff-specific allegations regarding the individual Plaintiff's filter placement, his subsequent care, and the nature of his alleged injuries. *See* Dkts. 15495 ¶ 15 (i)–(r); 15512 ¶ 15 (i)–(q).

- 4 -

US.132020504.05

# ARGUMENT

The Court should dismiss Plaintiffs' consumer fraud claims as amended on the ground that the they still do not plead the circumstances of those fraud claims with the particularity required by Rule 9(b).  Plaintiffs' allegations of consumer fraud consist entirely of generalized allegations related to Plaintiff's claim that Cook failed to warn of alleged risks of the filters.  None of these allegations states with particularity the circumstances of the fraud Plaintiff alleges Cook committed, including such basic information as what representations Cook supposedly made, to whom Cook made them, how Cook made them, and when Cook made them.

### A.  Rule 9(b) Requires a Plaintiff to State the Circumstances Constituting Fraud, Including Consumer Fraud, with Particularity.

Although Plaintiffs' statutory consumer-fraud claims sound in state law, the Federal Rules of Civil Procedure govern the question of whether Plaintiffs have adequately pleaded those claims in this federal court. *See Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008) ("It is, of course, well established that, as a general matter, a district court exercising jurisdiction because the parties are of diverse citizenship must apply state substantive law and federal procedural law."). Federal Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b). To plead an allegation of fraud with the particularity required by Rule 9(b), "[t]he plaintiff must describe the who, what, when, where, and how' of the fraud—the first paragraph of any newspaper story." *United States ex rel. Berkowitz v. Automation*

- 5 -

*Aids, Inc.*, 896 F.3d 834, 839 (7th Cir., 2018) (Cleaned up); *Windy City Metal*, 536 F.3d at 669; *Pitts v. Unarco Industries, Inc.*, 712 F.2d 276 (7th Cir. 1983). Merely listing claimed misrepresentations is not enough; a plaintiff must state the circumstances of the claimed fraud. *See Seldon v. Home Loan Serv., Inc.*, 647 F. Supp. 2d 451, 470 (E.D. Pa. 2009) (without alleging the "terms, conditions, or characteristics" of allegedly deceptive conduct, "merely alleg[ing] a list of misrepresentations" is not enough).

This requirement of particularized pleading applies to claims of consumer fraud like those asserted in Count VII of Plaintiffs' Amended Short-Form Complaints. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir.1997) (analyzing the sufficiency of plaintiff's consumer fraud claim under the ICPA under Rule 9(b); *Gilmour v. Bohmueller*, No. Civ.A. 04-2535, 2005 WL 241181, at *11 (E.D. Pa. Jan. 27, 2005) ("To establish a valid cause of action under the UTPCPL for unfair or deceptive acts or practices, a plaintiff must plead those acts or practices with the same specificity as common law fraud."); *see also Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 287-88 (3d Cir. 1992) (holding that Rule 9(b) applies to securities class actions "grounded in fraud [even if] neither fraud nor mistake is a necessary element of either statutory cause of action").

Indeed, this Court has already applied Rule 9(b)'s particularity requirement to Plaintiffs' consumer fraud claims in this MDL. *See* Dkt. 14809 at 10 (dismissing Plaintiff's consumer fraud under Oregon Unlawful Trade Practices Act for failure to plead the "'the who, what, when, where, and how of the fraud.'") (quoting *Camasta v.*

- 6 -

*Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736-37 (7th Cir. 2014)).  Plaintiffs themselves also recognize this requirement; both Plaintiffs amended their complaints expressly to try to comply with Rule 9(b)'s particularized pleading requirement.  *See* Dkt. 15040 at 1 ("Plaintiff specifically requests leave to amend his existing consumer fraud and misrepresentation claims to allege particular facts, as required by Fed. R. Civ. P. 9(b)."); Dkt. 15041 at 1 (same).

### B. Plaintiffs failed to plead the circumstances constituting consumer fraud with the particularity required by Rule 9(b).

Despite Plaintiffs' recent amendments, their claims of consumer fraud still fail to meet the particularized pleading requirements of Rule 9(b), and this Court should dismiss those claims.  Specifically, the Amended Short-Form Complaints fail to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  This failure has nothing to do with whether Plaintiffs have pleaded a legally sufficient claim for consumer fraud under the applicable state statute; that is a different issue, and one not raised by this motion.[4]  The question here is whether Plaintiff's allegations state with particularity the

---

[4] Although the legal sufficiency of Plaintiffs' pleadings under the state statutes is not at issue in this motion, the actual requirements of those statutes may be helpful for context.
> To state a claim under Illinois Consumer Fraud Act, 815 I.L.C.S. § 505/2, a plaintiff must plead:
> > (1) the misrepresentation of a material fact;
> > (2) an intent by the defendant that the plaintiff rely on that misrepresentation or concealment;
> > (3) the deception occurred in the course of conduct involving trade or commerce.

*Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 576 (7th Cir. 2001); *Connickv. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996).

US.132020504.05

circumstances of the consumer fraud each Plaintiff claims Cook committed against him. The amended pleadings do not come close to doing so.

As noted above, in determining whether a claim of fraud has been pleaded with the required particularity, the Court must look at whether the pleading identifies "the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir. 1992)).

Here, Plaintiffs' Amended Short-Form Complaint fail to allege **who** on behalf of Cook allegedly made representations to the Plaintiffs (or to Plaintiffs' doctors), **to whom** Cook made the representations, **when** Cook made the representations, **where** the communication at issue occurred, or **how** Cook communicated the information at issue. *See* Dkt. 15040-1 at 5-7; Dkt. 15041-1 at 5-7. Indeed, the Amended Short-Form Complaints fail even to allege **what** was communicated to Plaintiffs, or to allege even a

---

Pennsylvania's Unfair Trade Practices and Consumer Protection Law enumerates specific conduct that constitutes unfair or deceptive acts or practices, including, most expansively, "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73. Pa. Stat. Ann. § 201 et seq.  A "plaintiff may succeed under the catch-all provision by satisfying the elements of common-law fraud or by otherwise alleging deceptive conduct." *Vassalotti v. Wells Fargo Bank, N.A.*, 732 F. Supp. 2d 503, 510 (E.D. Pa. 2010). A plaintiff must show justifiable reliance on a defendant's wrongful conduct in order to prove that the plaintiff suffered an ascertainable loss "as a result of a defendant's deception. *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004); *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 221 (3d Cir. 2008) (justifiable reliance must be pled in a claim under the UTPCPL's catch-all provision).

US.132020504.05

single untruthful communication by the Cook Defendants connected to their respective physicians' decisions to select and place their filters.  These allegations fall far short of stating the "who, what, when, where, and how" required for consumer fraud claims under Seventh Circuit and this Court's precedent.  *See Gen. Elec. Capital Corp.*, 128 F.3d at 1078; Dkt. 14809 at 10.

As noted above, Plaintiffs amended the consumer fraud allegations in their Short-Form Complaint with the express purpose of satisfying Rule 9(b)'s particularity requirement.  *See* Dkt. 15040 at 1; Dkt. 15041 at 1.  But the Amended Short-Form Complaints provide no information about the supposed instances of consumer fraud themselves, only about Cook's general knowledge of risks.  Thus, although these added paragraphs may allege certain facts with particularity, they do not "state with particularity *the circumstances constituting fraud*." Fed. R. Civ. P. 9(b).  Specifically:

- Plaintiffs allege that Cook performed a short-term study on retrievability rather than a clinical study on efficacy involving human trials.  ¶¶ 15(a), 15(b).[5]  These allegations have nothing to do with the "who, what, when, where, and how" of any supposed fraudulent misrepresentations by Cook to Plaintiff.

- Plaintiffs allege that after the Tulip was cleared for sale, Cook received unspecified reports of complications and difficulties in retrieval.  ¶ 15(c).  This does not allege any circumstances of any fraudulent misrepresentation by Cook to Plaintiff.

- Plaintiffs allege that a Cook employee wrote an email expressing concern about documentation of filter efficacy.  ¶ 15(d).  Plaintiffs do not allege that this employee made any communication to Plaintiffs or their doctors.

---

[5] All paragraph citations in this section are to Plaintiffs' Amended Complaints, Dkts. 15040-1 (Yedman), 15041-1 (Priesmeyer).

US.132020504.05

- Plaintiffs allege that Cook did not include information about adverse events or the Cook employee's concern about efficacy in the instructions that accompanied the products that were placed in Plaintiffs. ¶ 15(e). This paragraph does not allege any particular communication by Cook to Plaintiff, identify who made such a communication, or state when, where, or how any such communication took place.

- Plaintiffs allege that Cook "represented that pulmonary embolism was the purpose of" the Tulip filter, but did not communicate to Plaintiff's treating doctors the supposed lack of efficacy of the filters. ¶ 15(f). Plaintiff does not allege who at Cook supposedly made the claimed representation, to whom it was made, or when, where, or how it was made.

- Plaintiffs allege that doctors cannot communicate what they do not know, and therefore did not communicate the information that Cook omitted to their patients, including Plaintiffs. ¶ 15(g). This paragraph makes no allegations about Cook's conduct at all.

- Plaintiffs allege that Cook "did not study the safety or efficacy of the Gunther Tulip as a long-term or permanent device," and that this "fact" was not communicated to doctors or patients. ¶ 15(h). This paragraph does not allege *any* communication by Cook to Plaintiff, much less the specific circumstances of any such communication.

- Plaintiffs recite a list of allegations concerning their own individual treatments with Cook filters by their own doctors and their medical histories following that treatment. Yedman ¶¶ 15(i)-15(o); Priesmeyer ¶¶ 15(i)-15(o). The only mention of Cook in any of these allegations appears in paragraph 15(j) of the Yedman pleading and paragraph 15(k) of the Priesmeyer pleading, where Plaintiffs allege that their respective doctors "implanted, and Plaintiff agreed to have implanted, the Gunther Tulip filter *in reliance on Cook's statements, including those in the Gunther Tulip IFU*" (emphasis added). But as noted above, neither Plaintiff has alleged any of the circumstances constituting the supposed "statements" that they now claim constitute consumer fraud, much less stated those circumstances with particularity.

- Plaintiffs allege that they discovered in 2016 and 2017 that years earlier, Cook had concealed knowledge concerning adverse events and filter safety and efficacy. Yedman ¶¶ 15(p)-15(r); Priesmeyer ¶¶ 15(p)-15(q). These paragraphs make no allegation that Cook had any communication with Plaintiffs or their doctors. Moreover, they postdate Plaintiffs' placements, and thus could not inform the circumstances of any alleged *pre*-placement representations by Cook to Plaintiffs.

- 10 -

- Finally, Plaintiffs allege that the Tulip IFU was recalled in 2019, and that the new Tulip IFU warns doctors of the risks of adverse events and possible difficulty in removal. Yedman ¶¶ 15(s); Priesmeyer ¶¶ 15(r). This paragraph makes no allegation that Cook had any communications with Plaintiffs or their doctors.

Thus, despite alleging specific facts on other topics, Plaintiffs' Amended Short-Form Complaints make no more particularized statements of the "the circumstances constituting fraud"—the supposed fraudulent communications by Cook to Plaintiffs—than the allegations in the Master Complaint that the Court dismissed as insufficient under Rule 9(b) in the *Palmer* case. *See* Dkt. 213 at ¶¶ 112-166. As the Court stated as to *Palmer*:

> Plaintiff's vague and generalized allegations fail to provide any details regarding the alleged misrepresentations as required by Rule 9(b). For example, the allegations fail to allege who at Cook made the misrepresentations, when the misrepresentations were said, and who were they communicated to. Accordingly, Plaintiff Palmer's [consumer fraud] claim must be dismissed.

Dkt. 14809 at 10-11. Plaintiffs' Amended Complaints here do not cure these problems.

Plaintiffs' amendments to their Short-Form Complaints provide detail only around the edges of their consumer-fraud claims. Indeed, most of the allegations merely rephrase or elaborate on the allegations of failure to warn that already appear in the Master Complaint. *See, e.g.*, Dkt 213 at 12, ¶ 45 ("At all times relevant hereto, the Defendants continued to promote the Cook Filter as safe and effective even when inadequate clinical trials had been performed to support long or short to safety and/or efficacy."), *id.* at 14, ¶ 55 ("Information provided by Cook to the medical community and to consumers concerning the safety and efficacy of its IVC Filters did not accurately

- 11 -

reflect the serious and potentially fatal adverse events Plaintiffs could suffer."). Plaintiffs' Amended Short-Form Complaint *still* fail to allege with particularity "the circumstances constituting fraud"; that is the specifics of who communicated what to whom, and when, where, and how that communication took place.

The Short Form Complaints' failure to state with particularity the circumstances constituting the fraud is underscored by the cookie-cutter character of the allegations against Cook in the two Complaints. Despite their stated goal of "alleg[ing] particular facts, as required by Fed. R. Civ. P. 9(b)," Dkt. 15040 at 1, Dkt. 15041 at 1, every single allegation concerning Cook's conduct ***is exactly the same in both complaints***—the opposite of a case-specific, particularized statement. Even the Amended Complaints' allegations of reliance on the individual fraudulent misrepresentations Cook supposedly made to each Plaintiff track each other verbatim, differing only in the name of the doctor who supposedly relied on the misrepresentation: "[Name of doctor] implanted, and Plaintiff agreed to have implanted, the Gunther Tulip filter in reliance on Cook's statements and omissions, including those in the Gunther Tulip IFU." Dkt. 15040-1 at 6, ¶ 15(j); Dkt. 15041-1 at 6, ¶ 15(k). The boilerplate allegations of consumer fraud in Plaintiffs' Amended Short-Form Complaints are the antithesis of a "particularized" statement. *See, e.g.,* The Free Dictionary[6] (defining "particularize" as "1. To mention,

---

[6] https://www.thefreedictionary.com/particularized#:~:text=1.%20particularized%20-%20directed%20toward%20a%20specific%20object%3B,%22a%20specific%20and%20detailed%20account%20of%20the%20accident%22 (last visited Mar. 22, 2021).

US.132020504.05

describe, or treat individually; itemize or specify. 2**.** To make particular as opposed to general or universal.").

Absent a particularized statement of the circumstances constituting fraud, the Short-Form Amended Complaints fail to meet the requirements of Rule 9(b), and the Court should dismiss Plaintiffs' claims under the Illinois and Pennsylvania consumer fraud statutes. *See, e.g., Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 210 F. Supp. 3d 1022, 1044–45 (S.D. Ill. 2016) (dismissing plaintiff's claim for violation of the Illinois Consumer Fraud Act where plaintiff failed to identify with any degree of specificity the content of the alleged misrepresentation, when the misrepresentation was made, or how it was communicated);[7] *Webb v. Volvo Cars of N.A., LLC*, 2018 WL 1470470, at *5-*7 (E.D. Pa. Mar. 26, 2018) (applying Rule 9(b) to "[p]laintiff's . . . UTPCL claim[]" and finding that plaintiff did not identify a single representation that was heard, seen, or relied on).[8]

-------------------

[7] *See also Baldwin v. Star Scientific, Inc.*, 78 F. Supp. 3d 724, 737 (N.D. Ill. 2015) (dismissing ICFA claim where plaintiff's complaint was "replete with allegations recounting vague, nonspecific statements made by 'Defendants' but failed to identify "a single actual misrepresentation that was communicated to Plaintiff, much less which Defendant made it"); *Ritacca v. Storz Med., A.G.*, 291 F.R.D. 176, 180 (N.D. Ill. 2013) (dismissing ICFA claim because plaintiff failed "to plead the specifics of what information [defendant] provided to them that was allegedly fraudulent, when he provided it, whether it was communicated on a single instance or as part of ongoing communication with Plaintiffs, whether it was written or spoken, or any other details that would tend to show that Plaintiffs did their homework before filing suit" (Cleaned up));
[8] *See also MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005) (plaintiff "failed to specify the defendant or agent making the alleged fraudulent statement," analyzing claim under Pennsylvania law); *Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 86 (3d Cir. 2015) (affirming dismissal of Connecticut state-law

- 13 -

Plaintiffs' vague, general allegations of consumer fraud do not meet Rule 9(b)'s requirement of particularity, and the Court should therefore dismiss Plaintiffs' consumer fraud claims asserted under the ICFA and UTPCPL.

## CONCLUSION

For the reasons stated above, the Cook Defendants urge the Court to grant their motion to dismiss Plaintiffs' respective consumer fraud claims.

Dated: March 26, 2021                    Respectfully submitted,


/s/Andrea Roberts Pierson
Andrea Roberts Pierson
Jessica Benson Cox
FAEGRE DRINKER BIDDLE & REATH LLP
300 North Meridian Street, Suite 2500
Indianapolis, Indiana 46204
Telephone: (317) 237-0300
Andrea.Pierson@faegredrinker.com
Jessica.Cox@faegredrinker.com

---

fraud claims pursuant to Rule 9(b) because plaintiffs made "conclusory allegations that [a pharmaceutical company]'s marketing and promotion of [drugs] were deceptive, improper, false or misleading" and failed to "identify any specific fraudulent statements, omissions, or misrepresentations that were made to doctors who prescribed [the drugs]" or the "contents of these statements and materials").

- 14 -

US.132020504.05

James Stephen Bennett
FAEGRE DRINKER BIDDLE & REATH LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana 46802
Telephone: (260) 424-8000
Stephen.Bennett@faegredrinker.com

Bruce Jones
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South 7th St.
Minneapolis, Minnesota 55402
Telephone:  612-766-7426
Bruce. Jones@faegredrinker.com

*Attorneys for Defendants Cook Incorporated, Cook Medical LLC f/k/a Cook Medical Incorporated, William Cook Europe ApS*

- 15 -

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on March 26, 2021, a copy of the foregoing Cook Defendants'

Memorandum in Support of Motion for Dismissal of Claims Based on State Consumer

Fraud Statutes was filed electronically, and notice of the filing of this document will be

sent to all parties by operation of the Court's electronic filing system to CM/ECF

participants registered to receive service in this matter.  Parties may access this filing

through the Court's system.

<u>/s/Andrea Roberts Pierson</u>

- 16 -

US.132020504.05