UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION _____ This Document Relates to: Mark Priesmeyer, 1:19-cv-00964 Rocco Yedman, 1:17-cv-02720 _____ | 1:14-ml-02570-RLY-TAB MDL No. 2570 |

**ENTRY ON THE COOK DEFENDANTS' MOTION TO DISMISS BASED ON STATE CONSUMER FRAUD STATUTES**

The Cook Defendants (or "Cook") move to dismiss Plaintiffs Mark Priesmeyer's and Rocco Yedman's statutory consumer fraud claims based on Illinois's Consumer Fraud Act ("ICFA") (Priesmeyer) and Pennsylvania's Unfair Trade Practice and Consumer Protection Law ("UTPCPL") (Yedman). The Cook Defendants argue they are entitled to dismissal because Plaintiffs have failed to plead these fraud-based claims with the particularity required by Federal Rule of Civil Procedure 9(b). Plaintiffs disagree. For the reason explained below, Cook's motion is **GRANTED**.

**I.    Dismissal Standard**

Federal Rule of Civil Procedure 12(b)(6) permits the court to dismiss a claim for failure to state a claim upon which relief may be granted. In ruling on a 12(b)(6) motion to dismiss, the court accepts all well-pleaded facts in the plaintiff's complaint as true and

1

views them in the light most favorable to the plaintiff. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). To survive a motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *McCauley v. City of Chicago*, 671 F.3d 611, 615 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## II.     Background

The following allegations are taken as true from Plaintiffs' Second Amended Short Form Complaints. (1:19-cv-00964, Filing No. 28 ("Priesmeyer Compl."); (1:17-cv-02720, Filing No. 30 ("Yedman Compl.")).

In the early 2000s, the Gunther Tulip filter received clearance from the Food and Drug Administration as a retrievable filter. (Priesmeyer Compl. ¶ 15(c); Yedman Compl. ¶ 15(c)). Cook marketed the device "for the prevention of pulmonary embolism" but soon received reports of adverse events caused by the filter (tilt, perforation, retrievability problems, and the like) and had concerns regarding the efficacy of the filter. (Priesmeyer Compl. ¶ 15(a)-(d); Yedman Compl. ¶ 15(a)-(d)). Cook, however, did not inform doctors, including Plaintiffs' doctors, of these adverse events, nor include information regarding these adverse events in the filter's instructions for use ("IFUs") that accompanied the product. (Priesmeyer Compl. ¶ 15(e)-(f) Yedman Compl. ¶ 15(e)-(f)).

2

Because doctors were not informed, these adverse events were not communicated to patients, including Plaintiffs.  (Priesmeyer Compl. ¶ 15(g) Yedman Compl. ¶ 15(g)).

On October 19, 2007, Plaintiff Priesmeyer had a Cook Gunther Tulip filter placed by Dr. Christopher Skelly in Illinois.  (Priesmeyer Compl. ¶¶ 10, 11, 12, 13, 15(g)).  Prior to the procedure, consistent with the Tulip filter's instructions for use ("IFU"), Dr. Skelly advised Priesmeyer that the filter would help prevent pulmonary embolism and had limited risks; he did not advise Priesmeyer that the filter could tilt or that the filter could be difficult to remove.  (*Id.* ¶ 15(i)).

In March 2008, Dr. Skelly attempted to retrieve the filter because it had tilted toward the caval wall.  (*Id.* ¶ 15(l)).  After multiple attempts to snare the filter, Dr. Skelly determined the filter leg had become embedded and could not be retrieved.  (*Id.* ¶ 15 (m)-(n)).  The filter remains in Priesmeyer's IVC.  (*Id.* ¶ 15(o)).

On September 16, 2005, Plaintiff Yedman had a Cook Gunther Tulip filter placed by Dr. Gustavo Sanchez in Pennsylvania.  (Yedman Compl. ¶ 15(i)).  Prior to the procedure, consistent with the Tulip filter's IFU, Dr. Sanchez advised Yedman that the filter would help prevent recurrent pulmonary embolism, had low risks, and "can be safely retrieved."  (*Id.* ¶ 15(i)).

In January 2006, Dr. Sanchez noted significant tilt toward the caval wall and recommended removal.  (*Id.* ¶ 15(k)).  Dr. Sanchez made multiple attempts to retrieve the filter, but his attempts were unsuccessful.  (*Id.* ¶ 15(l)).

Five years later, Yedman suffered a blood clot allegedly caused by the filter.  (*Id.* ¶ 15(m)).  Dr. Scott Trerotola recommended that filter removal be reattempted.  (*Id.* ¶

3

15(n)).  Dr. Trerotola retrieved the filter, but the retrieval was "extremely difficult" and required forceps.  (*Id.* ¶ 15(o)).

Plaintiffs learned through legal representation in 2016 (Yedman) and 2017 (Priesmeyer) that Cook concealed its knowledge of the filter's adverse events.  (Yedman Compl. ¶ 15(q); Priesmeyer Compl. ¶ 15(p)).  They also learned that Cook had not studied the safety or efficacy of the Tulip filter as a long-term or permanent device.  (Yedman Compl. ¶ 15(r); Priesmeyer Compl. ¶ 15(q)).

In February 2019, there was a global recall of the Tulip filter IFU.  (Yedman Compl. ¶ 15(s); Priesmeyer Compl. ¶ 15(r)).  The updated IFU now warns doctors of the risks of tilt, perforation, and difficulty in removing the device.  (Yedman Compl. ¶ 15(s); Priesmeyer Compl. ¶ 15(r)).

### III.  Plaintiffs' Consumer Fraud Claims

Rule 9(b) requires a plaintiff pleading fraud to state with particularity the circumstances constituting the fraud.  *See Pirelli Armstrong Tire Corp. v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011) (applying Rule 9(b)'s heightened pleading standard to plaintiff's ICFA claim).  This requires the plaintiff to describe the "who, what, when, where, and how" of the fraud—"the first paragraph in any newspaper story."  *United States ex rel. Berkowitz v. Automation Aids, Inc.*, 896 F.3d 834, 839 (7th Cir. 2018) (quoting *United States ex rel. Lusby v. Rolls–Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)).  In assessing the allegations under this standard, the court should not "take an overly rigid view of the formulation," as the level of specificity required to satisfy Rule

4

9(b) "may vary on the facts of a given case." *Pirelli*, 631 F.3d 436, 441-42 (7th Cir. 2011).

Plaintiffs' consumer fraud claims are premised on alleged statements and omissions made to Plaintiffs' physicians, Dr. Skelly and Dr. Sanchez, which were then communicated to Plaintiffs.[1]  These statements and omissions were allegedly communicated in Cook's marketing materials and in the Tulip filter's IFU.  Plaintiffs' allegations are problematic for three primary reasons.

First, Plaintiffs merely allege that Cook marketed the filter as a retrievable filter implanted for the purpose of preventing pulmonary embolism.  They do not allege, however, that their physicians read or relied on Cook's marketing materials.  Second, although Plaintiffs generally allege that their physicians implanted the filter "in reliance on Cook's statements and omissions, including those in the Gunther Tulip IFU," they do not allege that their physicians actually *read* the IFU.  Instead, Plaintiffs couch their allegations in phrases like "consistent with the IFU" and "as provided in the IFU."  (*See* Priesmeyer Compl. ¶¶ 15(i), (j)).  If Plaintiffs' physicians did not *read* the IFU, they could not have *relied* on any alleged misrepresentations or omissions in the IFU.  And if they did not read and rely on the information contained in the IFU, they could not have

---

[1] Plaintiffs' consumer fraud claims appear to implicate the learned intermediary doctrine. The learned intermediary doctrine provides that in a medical device case such as this, the manufacturer has a duty to warn the treating physician, not the patient, of the risks associated with the device.  It is then the physician's duty to warn the patient.  *Hansen v. Baxter Healthcare Corp.*, 723 N.E.2d 302, 312 (Ill. Ct. App. 1999); *McLaughlin v. Bayer Corp.*, 172 F.Supp.2d 804, 831 (E.D. Penn. 2016).

5

communicated any alleged misrepresentations (including any material omissions) in the IFU to the Plaintiffs.

Third, there are three defendants in this case: Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS. Plaintiffs fail to identify which of the three Cook Defendants engaged in deceptive conduct. *Baldwin v. Star Scientific, Inc.*, 78 F.Supp.3d 724, 737 (N.D. Ill. 2015) ("Plaintiffs cannot lump all three defendants when pleading the misrepresentation element of his ICFA claim."). Instead, they refer generally throughout their pleadings to "Cook." (*See* Filing No. 213, Master Compl. ¶ 1 (referring collectively to the Defendants as "Cook").

Accordingly, at this juncture, the court finds Plaintiffs have not sufficiently pled the circumstances constituting the alleged fraud.

## IV. Conclusion

For the reasons explained above, the Cook Defendants' Motion for Dismissal Based on State Consumer Fraud Statutes (Filing No. 17042) is **GRANTED**. Plaintiffs' consumer fraud claims are **DISMISSED WITHOUT PREJUDICE**. Plaintiffs are granted leave to amend their Short Form Complaints. If Plaintiffs choose to do so, their Amended Short Form Complaints must be filed on or before **June 1, 2021**.

**SO ORDERED** this 28th day of April 2021.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.