**Exhibit B**

**Chart of Unique Allegations in Plaintiffs' Amended Short-Form Complaints filed between February 22, 2021 and March 26, 2021**

(In preparing this chart, Cook has treated allegations that differed only in punctuation, spelling, or other non-substantive ways as the same allegation. Cook also treated as substantially the same all of Plaintiffs' allegations that differ only in the identification of a particular Plaintiff's treating physician or date of placement.)

| | Paragraph Text |
|---|---|
| 1 | |
| 2 | [TO BE COMPLETED WITH INDIVIDUAL FACTS] |
| 3 | A 2005 Tulip advertisement, intended for physicians and titled "[h]ow long?", tells them that, "[w]hen and if to retrieve the Gunther Tulip is your choice. The IFU simply states 'the device can be safely retrieved,' leaving the decision to you, the physician." This ad implies that there is no time limit to Tulip retrievability and misrepresents the Tulip as being safe to retrieve at any time after implantation. This is contrary to what Cook knew from its own Tulip clinical study, as well as several other studies it had sponsored. |
| 4 | Accordingly, no limitations period ought to accrue during the time of Cook's fraudulent concealment because Plaintiff was prevented from knowing or learning through reasonable diligence the facts indicating a cause of action, including defects in the filter design, inadequate warnings, Cook's breach of duty, and that the above information proximately caused Plaintiff's injuries. |
| 5 | Additionally, Defendants are equitably estopped from asserting any limitations or repose defenses by virtue of their fraudulent concealment and other misconduct. |
| 6 | Additionally, the accrual and running of any applicable statute of limitations or repose have been tolled by reason of Defendants' fraudulent concealment. |
| 7 | Additionally, the limitations period ought to be tolled under principles of equitable tolling. |
| 8 | After Plaintiff underwent a surgery to implant Cook's Celect filter, Cook continued to fraudulently conceal critical safety information and material facts from Plaintiff, Plaintiff's physicians, and the medical community. |
| 9 | An abdominal CT scan revealed an anterior leg of the Tulip filter protruding through the inferior vena cava wall. An endoscopy was performed due to Plaintiff experiencing abdominal pain and nausea which revealed a metal foreign object in the second portion of the duodenum. A CT scan to evaluate the metal foreign objected revealed the anterior leg of the Tulip filter penetrating into the transverse duodenum. Plaintiff required open abdominal removal of the filter. |
| 10 | Around this same time, Cook internally believed that perforation was the "Achilles Heel" of the Celect filter. |
| 11 | As a direct and proximate result of Cook's actions and inactions, Plaintiff was implanted with a Celect and suffered and will continue to suffer injuries and damages, as set forth herein. |
| 12 | As a direct and proximate result of Cook's failure to disclose material facts regarding the Tulip filter, Plaintiff and Plaintiffs' doctors were induced into using the Tulip filter thereby generating profits to Defendant. |
| 13 | As a direct and proximate result of Cook's fraudulent statements and fraudulent concealment, Plaintiff was implanted with the Cook Tulip filter which caused him to suffer serious and dangerous results, severe and personal injuries that are permanent and lasting in nature, and economic permanent damages including but not limited to damages, harms and losses, including but not limited to additional surgery, additional medical treatment, medical expenses, permanent disfigurement, mental anguish, pain and impairment of the quality and enjoyment of life. |
| 14 | As a direct and proximate result of Defendants' concealment, Plaintiff sustained the injuries and damages described in her original long form complaint. |
| 15 | As a direct and proximate result of Defendants' fraudulent, malicious, and intentional concealment of material life-altering information from Plaintiff and Plaintiff's prescribing physician, Defendants caused or contributed to Plaintiff's injuries. |
| 16 | As a direct result of Defendant's Fraudulent Concealment Plaintiff suffered and continues to suffer damages. WHEREFORE, Plaintiff Brandi Sanders hereby files her First Amended Short Form Complaint to include the allegation of fraudulent concealment against all Defendants. |
| 17 | As a result of Cook's false representations and fraudulent concealment, Plaintiff's implanting physician did not have true and complete information about the inefficacy of the Celect IVC filter and its inherent safety risks. |
| 18 | As a result of Cook's fraudulent concealment, Plaintiff underwent a surgery on December 1, 2011 to implant Cook's Tulip filter. |
| 19 | As a result of Defendants' actions, misrepresentations, and omissions, Plaintiff and Plaintiff's treating physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, of this material information, including that Plaintiff had been exposed to the risks, failure rates, and design defects identified above and in the Master Complaint. |
| 20 | As a result of Defendants' intentional concealment of the Celect filter defects, Plaintiff, Plaintiff's doctors, and the public were unaware of and ignorant about the dangers to Plaintiff and the public created by the Celect filter defects and about Defendants' fraudulent concealment and false representations regarding the defects and the safety of the Celect filters, including the Subject Filter. |

| | |
|---|---|
| 21 | As a result, Plaintiff Linda Harmon relied on Dr. Korrapati's recommendations and was implanted with the Cook Celect IVC filter on March 14, 2011 by Dr. Daniel Golwyn at Lexington Medical Center in Columbia, South Carolina. |
| 22 | As alleged above, the concealment by the Defendants of relevant information both from Plaintiff's physicians and Plaintiff prohibited her physicians and Plaintiff from being informed as the to the risks and benefits of utilization of this type of filter. |
| 23 | As Cook began to evaluate the design of the Celect IVC filter, it concluded in 2006 that the safety concerns with removing the petals of the Tulip filter to create the Celect outweighed the benefit of doing so. This information was included in an "Executive Summary" prepared for Cook's executives. |
| 24 | As early as 2002, Arne Molgaard-Neilsen (one of Cook's engineers responsible for the development of Cook's IVC filters) explained that if Cook removed or released the "petals" from the Gunther Tulip IVC filter, the filter would have an increased propensity to perforate. |
| 25 | As early as 2007, Cook's Director of Reimbursement/Medical Science Officer (James Gardner, M.D.) alerted the company that there was no evidence that IVC filters actually work: "my greatest concern at the moment is that payers are going to take a good, hard look at IVC filter placement and whether any clinical evidence exists to demonstrate it really saves lives or improves patient outcomes in other ways." |
| 26 | As early as May 2010, Cook began an effort to re-design the Celect to address the filter's high perforation rate. |
| 27 | As of 2019, the updated IFU now warns doctors of the risks of tilt, perforation and difficulty in removing the Celect device. |
| 28 | As soon as the Celect was released on the market, internally Cook had grave concerns regarding the filter's propensity to perforate. |
| 29 | At all times mentioned herein, Cook had the duty and obligation to disclose to Plaintiff, Plaintiff's physicians, and the medical community, the true facts concerning the Celect filter, that is, that it was dangerous and defective, lacking in efficacy for its purported use and lacking safety in normal use, and how likely it was to cause serious consequences to users, including permanent and debilitating injuries. |
| 30 | At all times relevant hereto, Defendants conducted a sales and marketing campaign to promote the sale of the Celect IVC filters and willfully deceived Plaintiff, Plaintiff's physicians and the general public as to the health risks and consequences associated with the use of the Celect IVC filter and that the Celect IVC filter has a significant propensity to cause serious injuries to users including, but not limited to, the injuries suffered by Plaintiff as described herein. |
| 31 | At no time relevant to the claims made by Plaintiff was she informed by her physicians or through any materials provided by Defendants of any risk associated with the Cook Celect filter. Specifically, Plaintiff received no warnings regarding the possibility of perforation, migration and/or fracture of the struts of the filter. At no time was information provided by any person or entity concerning the difficulty or impossibility of removal of the filter or any time frames relevant to make a determination of when the device could or should be successfully and safely removed. |
| 32 | At the time Defendants concealed the fact that the Celect IVC filter was not safe, Defendants were under a duty to communicate this information to Plaintiff, physicians, the FDA, the healthcare community, and the general public in such a manner that they could appreciate the risks associated with the Celect IVC filter. |
| 33 | At the time the fraudulent misrepresentations were made by the Defendants and, at the time the Plaintiff received her Celect IVC filter, the Plaintiff was unaware of the falsity of Defendants' representations and reasonably believed them to be true. Additionally, Plaintiff was unaware that Defendants were intentionally concealing pertinent and life-altering information surrounding the safety and efficacy of the Celect IVC filter. |
| 34 | Based on these facts, Plaintiff was unable to discover the elements of her cause of action until a date within the relevant limitations period prior to filing this case. |
| 35 | Based upon Cook's ongoing fraudulent concealment of critical safety information and material facts from Plaintiff, Plaintiff's physicians, and the medical community, the statute of limitations for Plaintiff's claim should be equitably tolled. |
| 36 | Based upon information and belief, had the above information not been concealed from Dr. Samuel Shube, MD and had the risks with the Tulip filter been properly disclosed, Dr. Samuel Shube, MD would not have implanted a Tulip filter in Plaintiff Jacquelin Agee. Additionally, if Dr. Samuel Shube, MD would have disclosed the above risks to Plaintiff Jacquelin Agee, which could only happen if the risks were properly disclosed to Dr. Samuel Shube, MD, Plaintiff Jacquelin Agee would have refused to have a Tulip filter implanted in her. As a result, Cook's acts and omissions, including fraudulent concealment, caused, including proximately caused, Plaintiff's injuries. As a further result of Cook's acts and omissions, including fraudulent concealment, which were intended to conceal Plaintiff's injury from Plaintiff herself. Plaintiff Jacquelin Agee could not have discovered her causes of action despite exercising reasonable care and diligence. |

| | |
|---|---|
| 37 | Based upon information and belief, including but not limited to Plaintiff's knowledge learned after Plaintiff filed suit that the facts that Cook withheld, concealed, or neglected to publicly disclose were not communicated to Plaintiff by Plaintiff's implanting physician, Plaintiff believes that the implanting physician was not told, and was unaware, of those facts by Cook or anyone representing Cook. |
| 38 | Based upon information and belief, Plaintiff believes that had the implanting doctor known of the facts that Cook withheld, concealed, or neglected to publicly disclose, Plaintiff and the implanting physician could have had a more fully informed discussion about the risks and benefits of Cook's IVC filter, which would have allowed Plaintiff's doctor to make a more informed decision about whether to implant the filter and Plaintiff to make a more informed decision about whether to accept implantation of the filter. |
| 39 | Because of Cook's fraudulent concealment and intentional misrepresentations, Plaintiff and the implanting physician were misled and the Plaintiff could not have discovered the cause of action despite exercising reasonable care and diligence. Cook purposefully engaged in a pattern of conduct intended to conceal the Plaintiff's injury from the Plaintiff, so that Plaintiff would not seek compensation for injuries sustained by the defective filter. |
| 40 | Because of Defendants fraud and concealment of material facts and other information, both Plaintiff and Dr. Aaron B. Montgomery were deprived of having accurate and full information at the time of the Celect IVC implant. Without the same, no informed consent process was possible between Plaintiff and Dr. Aaron B. Montgomery prior to implantation of the Celect IVC filter. |
| 41 | But Cook misrepresented the reason for the discontinuation of the Celect and further concealed from the Plaintiff and the medical and scientific communities the true reason the Celect was being pulled - the high rate of adverse events. |
| 42 | But Cook misrepresented the reason it discontinued the Celect and further concealed from the Plaintiff and the medical and scientific communities the true reason the Celect was being pulled: the high rate of adverse events. 1 1. Plaintiff and Plaintiff's treating physicians reasonably relied on Cook's representations and were therefore misled by Cook's fraudulent concealment, which prevented Plaintiff from understanding that a cause of action existed. |
| 43 | But for Defendants fraud and concealment of material facts, both Plaintiff and Dr. Aaron B. Montgomery would have had a properly informed consent discussion and then elected for a safer alternative treatment plan instead of implant of the defective and dangerous Celect IVC filter. |
| 44 | By concealing this information, Cook prevented Plaintiff and Plaintiff's treating physicians from knowing the facts necessary for a cause of action related to Plaintiff's injury. |
| 45 | Celect's "Instruction for Use" perpetuated the dangerous misinformation and concealment contained in the only human trial of the filter. |
| 46 | Cook affirmatively and fraudulently concealed the known risk of perforation, lack of efficacy of the product the flawed studies on which the product literature was based and the fraudulent marketing strategies which underlay the marketing of the product for the express purpose of inducing the plaintiff and his physicians to install a Cook Celect Filter in Manuel Ramirez. Dated: March 25, 2021 |
| 47 | Cook affirmatively concealed the true results of the Celect filter's only human study from Plaintiff and the medical and scientific communities. |
| 48 | Cook also concealed reports of DVT, IVC thrombosis, and the narrowing of the IVC; each of these adverse events were reported by the study's investigators to Cordis. |
| 49 | Cook analyzed adverse event reports and determined that there was a significant increasing trend of symptomatic perforations. Cook knew that this information would be material to the medical and scientific communities, including Plaintiff's treating physicians. |
| 50 | Cook began concealing the critical safety information and material facts regarding the safety and efficacy of its Celect filter from patients, physicians, and the medical community when Cook first marketed its Celect filter. |
| 51 | Cook began concealing the critical safety information and material facts regarding the safety and efficacy of its Tulip filter from patients, physicians, and the medical community when Cook first marketed its Tulip filter. |
| 52 | Cook chose not to update the Celect IFU to include any of this information despite the fact that it continued to receive information demonstrating the dangers of the filter. |
| 53 | Cook committed an affirmative act by concealing these facts from Plaintiff and the Medical and Scientific Communities to prevent her from discovering she had a cause of action against them. |
| 54 | Cook concealed all of this data from Plaintiff and the Medical and Scientific Communities. |
| 55 | Cook concealed from Plaintiff material facts of the dangers and risks associated with the Gunther Tulip IVC filters that prevented Plaintiff from discovering a potential cause of action against them. |

| | |
|---|---|
| 56 | Cook concealed it was aware of the propensity of the Celect to perforate/penetrate the IVC wall occasioned by the design change from the Tulip to Celect (e.g., removing the -10- 2138136.2 "petals"). Cook concealed from the IFU its own information regarding the nature, frequency, ad severity of known failure modes and adverse events associated with the Celect filter. |
| 57 | Cook concealed the critical safety information and material facts from Plaintiff in information Cook provided directly to patients, such as its direct-to-consumer marketing and patient guides. Cook also concealed these material facts in information Defendant provided to Plaintiff's physicians, who then relied upon the concealed information in discussions with Plaintiff, including at Augusta University Medical Center in Augusta, Georgia, including on September 28, 2010. Plaintiff relied upon the concealed material facts, including in deciding whether to undergo surgery to implant Cook's Celect filter. |
| 58 | Cook concealed the critical safety information and material facts in its marketing materials to physicians, direct to consumer marketing materials, patient guides, physician training materials, advertising materials, and product labeling and instructions for use which were included with each Tulip filter. |
| 59 | Cook concealed the flawed design of the Celect filter and its failures from Plaintiff and the medical and scientific communities. |
| 60 | Cook concealed these facts from Plaintiff and the Medical and Scientific Communities. |
| 61 | Cook concealed this critical safety information from patients, physicians, and the medical community from the date on which Cook began marketing its Celect filter through the commencement of this action. To this day, Cook continues to fraudulently conceal critical safety information and material facts from Plaintiff, Plaintiff's physicians, and the medical community. |
| 62 | Cook concealed this data from Plaintiff and the Medical and Scientific Communities. |
| 63 | Cook concealed this fact from Plaintiff and the Medical and Scientific Communities. Throughout the Celect's life-cycle, Cook concealed that the use of the filter was not associated with a significant decrease in the rate of subsequent PE, PE related mortality, or all-cause mortality. |
| 64 | Cook continued to aggressively market the Celect filter as efficacious without any evidence of efficacy. |
| 65 | Cook did not disclose to the medical and scientific community its own internal concerns, as well as the concerns of the physicians involved in the Tulip clinical pilot study, about the safety risks involved in attempting retrieval beyond 14 days dwell time. |
| 66 | Cook further concealed the critical safety information and material facts through its agents, including its sales representatives who visited physicians such as Plaintiff's physicians, preceptors who trained physicians to implant and use its products such as Plaintiff's implanting physician, and its key opinion leaders who advocated on behalf of Cook's products at training sessions, medical conferences, and in the medical community generally |
| 67 | Cook had a duty to accurately report information to the FDA and medical and scientific communities, including Plaintiff's implanting physician, Dr. Samuel Shube, MD. Cook had a duty, but failed, to adequately warn Dr. Samuel Shube, MD of dangers, inefficacies, and known risks associated with the Tulip filter. Unfortunately, because of Cook's fraudulent concealment, Dr. Samuel Shube, MD did not have true and complete information about the risks related to the Tulip filter. |
| 68 | Cook had a duty to accurately report the results of its human trials, studies, and adverse events to the FDA and medical and scientific communities, of which Plaintiff's implanting physician was a member. Cook had a duty to adequately warn the implanting physician of dangers and known adverse effects associated with the Celect filter. |
| 69 | Cook had a duty to disclose the critical safety information and material facts to Plaintiff, Plaintiff's physicians, and the medical community. |
| 70 | Cook intended its affirmative misrepresentations to reach physicians and spread within the interventional radiology community to Plaintiff's treating physicians, and succeeded in this endeavor. |
| 71 | Cook intended that Plaintiff and Plaintiff's treating physicians rely on marketing materials containing these material misrepresentations and omissions. |
| 72 | Cook intended that the fraudulently concealed safety information and material facts would prevent Plaintiff from bringing this action. |
| 73 | Cook intentionally and fraudulently concealed critical safety information and material facts from Plaintiff, Plaintiff's physicians, and the medical community which prevented Plaintiff from bringing a legal action against Cook for injuries Plaintiff sustained as a result of Cook's Celect filter. |

| | |
|---|---|
| 74 | Cook intentionally and fraudulently concealed critical safety information and material facts from Plaintiff, Plaintiff's physicians, and the medical community which prevented Plaintiff from knowing the true risks and benefits of Cook's Celect filter. |
| 75 | Cook intentionally and fraudulently concealed critical safety information and material facts from Plaintiff, Plaintiff's physicians, and the medical community with the intention of preventing Plaintiff from bringing a legal action against Cook for injuries Plaintiff sustained as a result of Cook's Celect filter. |
| 76 | Cook intentionally and fraudulently concealed critical safety information and material facts regarding the risks and benefits of its Celect filter from Plaintiff, Plaintiff's physicians, and the medical community. |
| 77 | Cook intentionally made false representations about the Celect IVC filter to Plaintiff's surgeon in its marketing and otherwise regarding the filter's safety and effectiveness. Cook fraudulently concealed material facts about the inefficacy of the filter and its safety risks so as to induce Plaintiff and others to choose to have the Celect IVC filter implanted. Cook failed to warn the Plaintiff's physician of risks associated with the use of the filter that were not otherwise known to the physician, and the failure to warn the physician was both a cause in fact and proximate cause of the Plaintiff's injury. Plaintiff relied on the representations made to the implanting physician to Plaintiff's detriment and suffered damages, as the filter was neither effective nor safe. |
| 78 | Cook knew it had a duty to disclose the critical safety information and material facts to Plaintiff, Plaintiff's physicians, and the medical community. |
| 79 | Cook knew that the scientific and medical community, including Plaintiff's treating physicians, would reasonably rely on information about the Celect filter to evaluate the Tulip filter and vice versa, so that misrepresentations about the one filter contributed to delaying Plaintiff's cause of action related to the other filter. |
| 80 | Cook knew the fraudulently concealed critical safety information and material facts prevented Plaintiff from bringing this action. |
| 81 | Cook knew the undisclosed safety information and material facts were essential for Plaintiff to bring this cause of action. |
| 82 | Cook knew this important safety information was being concealed and that in equity and good conscience should be disclosed to patients who were considering whether to undergo surgery and who did undergo surgery to implant the Cook Celect filter. When Cook concealed these material facts, it was uniquely in possession of information which demonstrated that the Celect filter was not safe and effective and frequently caused serious and permanent adverse events. |
| 83 | Cook pulled the Celect from the market and concealed from Plaintiff and the medical and scientific communities that the decision was made based upon the high rate of perforation. |
| 84 | Cook representative Rita Harden confirmed that she and others (including Tom Roberts) were aware of a series of adverse events which should have been reported to the FDA but were not - by Cook's intention and design. |
| 85 | Cook sales representatives also marketed filters to doctors by falsely claiming that the Cook filters were FDA approved. This was a material misrepresentation and a violation of Federal law. |
| 86 | Cook suppressed, omitted, concealed, and failed to disclose material information about the known adverse events and lack of efficacy in the Celect "Patient Guide." |
| 87 | Cook then concealed that personal income, career advancement, and personal success of its sales force was tied directly to the number of filters sold. |
| 88 | Cook took affirmative steps to conceal critical safety information and material facts from Plaintiff, Plaintiff's physicians, and the medical community. |
| 89 | Cook understood all of this information to be material and concealed it from Plaintiff and the medical and scientific communities, including Plaintiff's treating physicians. |
| 90 | Cook used the Instructions For Use (IFU) to fraudulently misrepresent the design and failure information about its filters, intending that the medical community, including Plaintiff's treating physicians, rely on the misrepresentations and omissions. |
| 91 | Cook was aware that the Tulip filter was very difficult and dangerous to attempt to retrieve after only a very short indwell time. In September 2001, Ray Leonard, Cook Product Development Manager, wrote an email memorializing a meeting he had with Dr. Tom Vesely, who was the lead investigator for the Tulip clinical pilot study. |
| 92 | Cook was aware that the Tulip was very difficult and dangerous to attempt to retrieve after only a very short indwell time. |

| | |
|---|---|
| 93 | Cook was aware that the Tulip was very difficult and dangerous to attempt to retrieve after only a very short indwell time. In September 2001, Ray Leonard, Cook Product Development Manager, wrote an email memorializing a meeting he had with Dr. Tom Vesely, who was the lead investigator for the Tulip clinical pilot study. |
| 94 | Cook's affirmative misrepresentations and omissions in the Instructions for Use were directed to Plaintiff's treating physicians, and reached them either directly, or through seminars, trainings, and conferences, also intended by Cook. |
| 95 | Cook's concealed information as to the true risks of the Tulip filter and its facture and perforation issues was a material fact intentionally concealed despite Cook's duty to disclose the true and correct risks associated with its device. |
| 96 | Cook's fraudulent concealment deprived Plaintiff from making an informed decision to have the Tulip filter installed and concealed the cause of his injuries. |
| 97 | Cook's intentional failure to disclose material facts as to the true nature, extent and serious modes and associated adverse events, including fracture, and perforation, was an act to induce Plaintiff and Plaintiffs' doctors to use the Cook Tulip filter. |
| 98 | Cook's marketing department (though Bruce Fleck and others) intentionally forwarded the published study-containing each of the misrepresentations and concealments noted above-to the medical and scientific communities, thereby fraudulently misrepresenting information intended for and eventually disseminated to Plaintiff's treating physicians and Plaintiff. |
| 99 | Cook's marketing strategy was designed to stimulate sales without reference to (and, in fact, despite) safety concerns and to continue concealing important information about Celect-related adverse events. |
| 100 | Cook's marketing strategy was designed to stimulate sales without reference to (and, in fact, despite) safety concerns and to continue concealing important information about Celect-related and Tulip-related adverse events. |
| 101 | Cook's misrepresentations were also intended to conceal material facts necessary for Plaintiff and other patients to have knowledge of the existence of a cause of action against it. |
| 102 | Cook's VP of Regulatory Affairs (Ted Heise) and Jen Brown were aware of and actively concealed the flawed design of the study. |
| 103 | Counts in the Master Complaint brought by Plaintiff(s): Count I: Strict Products Liability - Failure to Warn v Count II: Strict Products Liability - Design Defect Count III: Negligence Count IV: Negligence Per Se Count V: Breach of Express Warranty Count VI: Breach of Implied Warranty Law Prohibiting Consumer Fraud and Unfair and Deceptive Trade Practices Count VIII: Loss of Consortium Count IX: Wrongful Death 1080 Count X: Survival Count XI: Punitive Damages Other: (please state the facts supporting this Count in the space, immediately below) Other: _(please state the facts supporting this Count in the space, immediately below) |
| 104 | Cynthia Kretz, vice president and general counsel for Cook Medical and Cook Group continued affirmative misrepresentations and concealments into 2018, then misstated the known facts: "We . . . do not believe this verdict [against Cook] is supported by the facts or the law," and that its filters were an "important, life-saving technology," "saved thousands of lives," and "are clinically successful and are critical to patient well-being." |
| 105 | Date of Implantation as to each product: December 12, 2011 |
| 106 | Defendant Cook actually concealed the flawed design of the Tulip filter and the difficulties encountered in the Tulip clinical pilot study from Plaintiff and the Medical and Scientific Communities. |
| 107 | Defendant intended for physicians, like Plaintiff's physicians, and patients, like Plaintiff, to rely upon the concealed facts and choose to undergo surgery to implant Cook's Celect filter. Cook intended to reap financial profits from sales of its products to tens of thousands of patients based upon Cook's concealment of critical safety information and material facts regarding its Celect filter. Cook knew that patients like Plaintiff would not have chosen to implant its Celect filter had Cook not concealed the critical safety information. |
| 108 | Defendant knew that its representations about the Celect IVC filter were false at the time they were made, and fraudulently concealed the true facts concerning the device with the intent of keeping information from the Plaintiff's implanting physician, thereby deceiving the Plaintiff who justifiably relied on the information provided by Plaintiff's physician. |
| 109 | Defendant knowingly and intentionally concealed the dangers of the Tulip IVC Filter with the Intent that Plaintiff and her doctors would justifiably rely on the safety of the Tulip IVC Filter, which they did. |
| 110 | Defendant's Actual Concealment, Knowledge and Intent to Conceal the Dangers of the IVC Filter, Caused Plaintiff and her Doctors to Justifiably Rely on Cook's Assurances Resulting in Damages to Plaintiff Brandi Sanders. |
| 111 | Defendant's concealment of facts, as outlined above, was the primary reason Plaintiff was unable to discover facts giving rise to her claim against Defendants sooner despite her due diligence. |

| | |
|---|---|
| | |
| 112 | Defendants acted fraudulently, wantonly, and maliciously to the detriment of Plaintiff by concealing the safety and efficacy surrounding the Celect IVC filter and its retrievability. |
| 113 | Defendants expressly and impliedly warranted that the Cook IVC Filter implanted into Plaintiff's body could be temporary and retrievable at any time, and downplayed the risks associated with the filter's migration, perforation, tilt, fracture, and other risks, which Plaintiff relied upon to her detriment. |
| 114 | Defendants failed to disclose these material facts, which lead to Plaintiff's implant and subsequently, to her health issues stemming from the filter. |
| 115 | Defendants fraudulently concealed the safety and efficacy issues associated with the Celect IVC in order to induce physicians to use the Celect IVC filter for patients, including Plaintiff. |
| 116 | Defendants have long known of and understood the Celect filter defects and failed to fully remedy the problems associated with these defects. Rather than promptly recalling the Celect filter, however, Defendants fraudulently concealed the existence of the defects in the Celect filter. |
| 117 | Defendants intentionally concealed this information knowing it was material and intending to prevent and delay Plaintiff from learning the facts that would indicate a cause of action against Defendants. |
| 118 | Defendants knew and were aware, or should have been aware, that the Celect IVC filter was not associated with any evidence of efficacy. |
| 119 | Defendants knew or should have known that the Celect IVC filter had a potential to, could, and would cause severe and grievous injury to the users of said product, yet failed to communicate that information. |
| 120 | Defendants specifically withheld and failed to disclose the information and warnings cited herein from Plaintiff, her treating doctors, including but not limited to Dr. David S. Epstein and the public at large. Had Plaintiff and Dr. David S. Epstein known about such risks, warnings, and other information herein, including but not limited to those found in the corporate documents of the Defendants, the Tulip IVC filter would never have been implanted in Plaintiff. |
| 121 | Defendants, at all times relevant hereto, concealed information from the FDA which they were required to report. |
| 122 | Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiffs and Plaintiffs' healthcare providers, (hereinafter Plaintiff's treating physicians) the true and significant risks, failure rates, design defects, and other material information associated with Cook's IVC filters necessary for Plaintiff to understand the existence of a cause of action before the possible expiration of any limitations period, as set forth in more detail below. |
| 123 | Defendants' fraud, fraudulent concealment, and fraudulent non-disclosure all contributed to Plaintiff's injures from the Subject Filter. |
| 124 | Defendants' fraudulent concealment tolled Plaintiff's statute of limitations because only Defendants knew the true dangers associated with the use of the Celect IVC filter as described herein. Defendants did not disclose this information to the Plaintiff, her prescribing physician, the healthcare community, and the general public. Without full knowledge of the dangers of the Celect IVC filter, Plaintiff could not evaluate whether a person who was injured by the Celect IVC filter had a valid claim. |
| 125 | Defendants' Inferior Vena Cava Filter(s) about which Plaintiff(s) is making a claim (Check applicable Inferior Vena Cava Filters): Gunther Tulip@ Vena Cava Filter Cook CelectR Vena Cava Filter Gunther Tulip Mreye Cook Celect Platinum Other: |
| 126 | Despite the above, Cook routinely and systematically sought to convince physicians that the Tulip filter was safe for retrieval well beyond 14 days and was able to be safely retrieved indefinitely. |
| 127 | Dr. Aaron B. Montgomery implanted, and Plaintiff agreed to have implanted, the Celect IVC filter in reliance on Defendant Cook's statements, including those in the Celect Instructions For Use. |
| 128 | Dr. Frischknect understood the Celect to be the best and safest filer available and chose it for that reason. That belief would have changed had Defendant not fraudulently concealed the above outlined information and Dr. Frischknect would have not chosen to place the Celect filter. |
| 129 | Dr. Gardner goes on to say the only way to make that determination would be to conduct a clinical trial, but "I'm not suggesting we go down that path." Instead, Dr. Gardner states, "I am keeping a close eye on payers' medical policies to see if when this hits their radar screens." |
| 130 | Dr. Gardner shared the same information again in 2010. Cook concealed this fact from Plaintiff and the Medical and Scientific Communities. |
| 131 | Dr. Gardner went on to say that the only way to make that determination would be to conduct a clinical trial, but "I'm not suggesting we go down that path." Instead, Dr. Gardner states, "I am keeping a close eye on payers' medical policies to see if when this hits their radar screens." |

| | |
|---|---|
| 132 | Dr. Korrapati, Dr. Strickland and Dr. Golwyn also relied on Cook's fraudulent concealment regarding the retrievability window of the Celect filter. |
| 133 | Dr. McNierney-Moore understood the Celect to be the best and safest filer available and chose it for that reason. That belief would have changed had Defendant not fraudulently concealed the above outlined information and Dr. McNierney-Moore would have not chosen to place the Celect filter. |
| 134 | Dr. Shah understood the Celect to be the best and safest filer available and chose it for that reason. That belief would have changed had Defendant not fraudulently concealed the above outlined information and Dr. Shah would have not chosen to place the Celect filter. |
| 135 | Dr. Taylor, Dr. Melton and Mr. Kinsey believed that use of the Tulip filter was safe and effective for Mr. Kinsey based on Cook's publications and statements that concealed the true risk factors of the filter. |
| 136 | Dr. Vijaya Korrapati, Dr. Glen Strickland and the implanting physician, Dr. Daniel Golwyn, relied on Cook's aggressive marketing campaign and their fraudulent concealment regarding the fact that the use of the Celect filter is not efficacious. |
| 137 | Due in whole or in part to Cook's omissions, misrepresentations, and the information Cook withheld or concealed about its IVC filters, Plaintiff was not able to discover Plaintiff's claims and causes of action against Cook until shortly before Plaintiff filed suit. |
| 138 | Due to Cook's ongoing and pervasive fraudulent concealment of material facts and critical safety information, Plaintiff was prevented from knowing that Plaintiff had a legal claim against Cook. |
| 139 | During a CT scan, several of the Celect filter prongs were found to be projected beyond the inferior vena cava wall. Additionally, Plaintiff suffers anxiety related to the failure of the filter and inability to have it removed. |
| 140 | During the period where Cook provided information to Dr. Taylor and Dr. Melton about the Cook Tulip filter, Cook failed to disclose a material fact, to wit, the true nature, extent and serious modes and associated adverse events, including but not limited to that regarding fracture and perforation of the Cook Tulip filter. |
| 141 | Finally, in May of 2014, Plaintiff Linda Harmon was cleared for IVC filter removal surgery and underwent an unsuccessful retrieval attempt by Dr. David Knight on May 15, 2014 at Lexington Medical Center. Dr. Knight made multiple attempts to snare the top hook of the filter which were all unsuccessful. At no time during the procedure was the hook able to be grasped. Dr. Knight felt the hook of the filter was embedded in the wall of the IVC. Repeated attempts were then made to free the tip from the wall of the IVC using angioplasty balloon which were also unsuccessful. Eventually, Dr. Knight abandoned the procedure and the filter remains embedded in Plaintiffs inferior vena cava to this day. |
| 142 | Following removal, Plaintiff was not aware of the causal connection between the injuries and Cook's IVC Filter due to the fraudulent concealment outlined above. |
| 143 | From 2009 through the present, Cook published marketing materials misrepresenting that the Celect filter was "proven," "improved," "next generation," was designed for "secure fixation," could be left in place, was the "industry's most trusted," and had "specially designed anchors to achieve strong caval fixation."! |
| 144 | From the time the Celect IVC filter was first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, Defendants, willfully deceived Plaintiff by concealing from the Plaintiff, Plaintiff's physicians and the general public, the true facts concerning the Celect IVC filter, which the Defendants had a duty to disclose. |
| 145 | Furthermore, Cook created a definition of "perforation" for the study's investigators to use when recording whether perforations exist (i.e., requiring hemorrhage or hematoma to qualify), but changed that definition for publication (i.e., claiming that a perforation is any strut outside the wall of the IVC). |
| 146 | Had Cook disclosed and not fraudulently concealed the critical safety information and material facts from Plaintiff, Plaintiff's physicians, and the medical community, Plaintiff would have earlier known earlier that Plaintiff had a legal claim against Cook for injuries Plaintiff sustained as a result of Cook's Celect filter. |
| 147 | Had Cook not engaged in the fraudulent concealment described above, Plaintiff would have received the information necessary to establish a cause of action within the applicable statute of limitations. |
| 148 | Had Cook revealed the information in its possession concerning the known risk of perforation and lack of efficacy underlying the Cook Celect Filter, Manuel Ramirez would not have consented to, and his physicians would not have recommended and carried out the installation of, the Cook Celect Filter in Plaintiff Manuel Ramirez. |
| 149 | Had Plaintiff been aware of the concealed information and the true facts, Plaintiff would have discussed this information with Plaintiff's doctor prior to undergoing the percutaneous procedure to implant the filter, and likely would have refused Cook's IVC filter in favor of another safer filter or another treatment. |

| | |
|---|---|
| 150 | Had Plaintiff been aware of the hazards associated with the Celect IVC filter, Plaintiff would not have received the Celect IVC filter that led proximately to Plaintiff's injuries. |
| 151 | Had Plaintiff been aware of the information fraudulently withheld from the public and Plaintiff, he would have discovered that the deficiencies in the safety and efficacy of the Celect filter were the cause of her injury and at that time realized he had a cause of action against Defendants. |
| 152 | Had Plaintiff been made aware of the information that was concealed by Cook, Plaintiff would have not accepted the risk of implantation of the Cook IVC filter and/or allowed the Cook IVC filter to be placed in Plaintiff's vena cava. |
| 153 | Had Plaintiff been made aware that the IVC Filter implanted was potentially defective and could cause injuries, including but not limited to the IVC filter perforating the IVC, he would not have consented to the implantation of the Cook IVC Filter. Following removal of the filter in 2015, Plaintiff was still unaware of the dangers and risks of the defects in the IVC filter that were concealed by Cook, which rendered IVC filter defective and were the cause of his injuries. |
| 154 | Had Plaintiff conducted a reasonable inquiry about the filter, Plaintiff would have found any of the material information described above. |
| 155 | Had Plaintiff known the real risks associated with the Celect, Plaintiff would not have had the device implanted. |
| 156 | Had Plaintiff, and/or her surgeon been aware of such fraudulently concealed information, Plaintiff and/or her surgeon would likely not have implanted the Tulip filter. |
| 157 | Had Plaintiff's Doctors, including Dr. Patrick E. Muck, known the risks and dangers associated with the Tulip IVC Filter that Defendant fraudulently concealed, Plaintiff's doctors would not have implanted the dangerous device into patients, including Plaintiff on July 31, 2006. |
| 158 | Had Plaintiff's implanting physician known about the safety risks and inefficacy of this filter, said physician would not have prescribed the device for Plaintiff and would not have proceeded with implanting the device. Plaintiff and Plaintiff's physician were in fact deceived by Cook. Without true and accurate information accompanying the device or made available to the physician and medical community, the device was unreasonably dangerous. Cook knew of the substantial risk of harm which was reasonably foreseeable to occur to Plaintiff and others. |
| 159 | Had Plaintiff's physicians, including Dr. Frischknect, known the information fraudulently concealed by Defendants, it would have changed their discussions with Plaintiff and the risk/benefit analysis. |
| 160 | Had Plaintiff's physicians, including Dr. Parviz, known the information fraudulently withheld from them and from the medical community in general, they would have been able to explain the deficiencies in the safety and efficacy of the filter to Plaintiff, but he was not aware of those facts and was not able to link the embedment of the filter to any defect in the filter. |
| 161 | Had the Plaintiff been aware of the risks and dangers associated with the Tulip IVC Filter that Defendant fraudulently concealed, Plaintiff would not have allowed the device to be implanted on July 31, 2006. |
| 162 | Had the Plaintiff known the true facts with respect to the dangerous and serious health and/or safety concerns, which the defendants fraudulently concealed, Plaintiff would not have had the Celect filter implanted. |
| 163 | Harlan Krumholtz, M.D. has opined that the study had a flawed design, was poorly conducted, had poor outcome assessment, contained selective and misleading reporting, withheld critically important safety information, and misrepresented the data. |
| 164 | Hospital(s) where Plaintiff was implanted (including City and State): Geisinger Medical Center Danville, PA |
| 165 | Implanting Physician(s): Dr. Robert P. Garvin |
| 166 | In 2008 Plaintiff needed prophylactic clotting prevention. |
| 167 | In 2008, and prior thereto, Mr. Kinsey's surgeons, Dr. Taylor and Dr. Melton, were told by Cook that the Tulip filter was safe and effective for use with patients such as Mr. Kinsey. |
| 168 | In 2008, and prior thereto, Plaintiff's surgeons, Dr. Laura Findeiss and Dr. Howard Walter Sill, were told by Cook that the Tulip filter was safe and effective for use with patients such as Plaintiff. |
| 169 | In 2008, Dr. Gardner again expressed that there is no evidence to demonstrate IVC filters are efficacious: "My concern, which I've shared with a couple of you over the last couple of years, is that one day the payers (Medicare, Medicaid, commercial plans, etc.) are going to A realize they are spending an increasing amount of money on the placement and retrieval of IVC filters and that there's not a lot of clinical evidence that demonstrates these filters actually improve patient outcomes." |
| 170 | In 2009, Dr. Gardner raised his concerns again: "as Cook's Director of Reimbursement, I've been very surprised that payers in this country haven't raised questions about whether they should pay for IVC filter placements (and retrievals), given the # of procedures being performed and the paucity of data supporting these procedures." |
| 171 | In 2010 Plaintiff needed prophylactic clotting prevention. |

| | |
|---|---|
| 172 | In 2013, Dr. Gardner once again confirmed: "There's never been strong clinical evidence supporting IVC filter use." |
| 173 | In an August 2002 email, Leonard describes a conversation with Dr. Bob Vogelsang, another Tulip clinical pilot study investigator. Dr. Vogelsang told Leonard he retrieved a Tulip filter after only 14 days indwell time and it had a "chunk of (vena) cava" attached to it. Leonard writes Cook does not have the evidence it needs to represent the Tulip as safe for retrieval beyond 14 days. |
| 174 | In follow-up after his procedure on 9/7/2016, Plaintiff first learned that his Tulip filter had damaged a portion of his IVC and caused an injury to the same. |
| 175 | In its marketing materials, Cook represents the filter implanted in the Plaintiff is safe to remain permanently in the body, all while concealing the issues known to Cook as to the complications with their filter when placed as a permanent filter. Given the express representations made by Cook, implanting physicians and patients would not be expected to understand the significance of such events as tilt, embedment, perforation, or an inability to retrieve the filter as indications that the filter is defective or the source of an injury, and so Cook conceals the fact the patient has legal recourse against the Cook defendants. |
| 176 | In July 2003, Cook Product Manager Bruce Fleck listed among his 2003 third quarter goals, "push (the FDA) for longest possible retrievability window." |
| 177 | In June of 2010, Ms. Peoples and her doctors discussed the risks, benefits, and alternatives involved in a having a Cook Celect filter placed. Both Ms. Peoples and her doctors relied on the representations made by Cook related to the safety and efficacy when discussing the risks, benefits, and alternatives to implanting the Cook Celect filter. |
| 178 | In March of 2008, Annette Lunberg advised Cook's Head of Global Marketing about the rising concern with the increasing rate of Celect perforation complaints. |
| 179 | In March of 2011, Plaintiff Linda Harmon was diagnosed with a post operative deep vein thrombosis following gallbladder removal surgery. Initially Plaintiff was treated with anticoagulants but she continued to have pain and a second thrombosis occurred while she was on anticoagulants. |
| 180 | In May of 2003, Cook Regulatory Affairs Coordinator Jennifer Bosley writes an email to Cook executives describing her intentions with the Tulip retrievability FDA submission, writing, "[t]he indication will claim a retrieval time longer than 14 days at first and we'll see what the FDA will allow." |
| 181 | In May of 2003, Cook Regulatory Affairs Coordinator Jennifer Bosley wrote an email to Cook executives describing her intentions with the Tulip retrievability FDA submission, writing, "[t]he indication will claim a retrieval time longer than 14 days at first and we'll see what the FDA will allow." |
| 182 | In November 2003, an internal document assembled by Cook lists the results of five Tulip filter retrievability studies, several of which were sponsored by Cook. For these five studies, the mean indwell time prior to successful retrieval is a mere 11 days. |
| 183 | In November 2003, Product Manager Fleck created a PowerPoint presentation intended to educate the Tulip sales staff. In it he tells Cook salespeople that when talking about the Tulip to doctors they should say, "Mr./Ms. Physician, please understand that with the FDA's non- specific indication, I cannot give you a direct answer to that question." He then instructs sales staff to "blur the lines of retrieval window", and to otherwise obfuscate the facts known to Cook about the Tulip's safety limitations regarding retrievability. |
| 184 | In or about 1/11/2017, Plaintiff first learned through legal consultation, at the time Defendant Cook's Celect filter was marketed and implanted in Plaintiff in 2014, and thereafter, Cook had concealed its knowledge regarding adverse events associated with the Celect filter. |
| 185 | In reliance upon Cook's statements as to the safety and efficacy of the Tulip filter, Plaintiff and Plaintiff's doctors used Tulip filter for implantation into Mr. Kinsey as they did not know the true risks and lack of benefits of using the Tulip filter due to Cook's fraudulent concealment. |
| 186 | In September 2003, because of the difficulties encountered with Tulip retrievals, Cook abandoned its plans to follow the Tulip pilot study with a pivotal study and instead went back to the drawing board. Cook conducted a project to add paclitaxel (PTX) to the filter, which Cook thought would reduce endothelialization and improve retrievability. This project "failed miserably," so Cook decided to press forward despite the poor Tulip pilot study results. |
| 187 | In this same email, Leonard writes Sara Strickler, a Cook employee, suggested asking study investigators to "cherry pick" and to only attempt Tulip filter retrievals in those patients who are highly likely to have successful retrieval attempts. |
| 188 | Jacobs and the public at large. Had Plaintiff and Dr. John M. Jacobs known about such risks, warnings, and other information herein, including but not limited to those found in the corporate documents of the Defendants, the Tulip IVC filter would never have been implanted in Plaintiff. |
| 189 | Johns advised Plaintiff that the filter would help prevent recurrent pulmonary embolism and had low risks. |

| | |
|---|---|
| 190 | Leonard related that Dr. Vesely told him the Tulip study was "looking ugly" and he was concerned about serious adverse events seen early on in two patients. One had suffered a Tulip filter migration to the heart, and the other experienced a complete thrombosis of the IVC and iliac veins, which was attributed to the Tulip filter. |
| 191 | Lykke Iversen (another Cook employee) confirmed the complaint rate for Celect perforations was 15 times higher than the perforation rate for the Tulip. |
| 192 | Mark Breedlove, vice president of the vascular division at Cook Medical affirmatively attempted to mislead prospective plaintiffs about the existence of their causes of action in 2017, stating "Our IVC filters are clinically successful devices critical to patient well-being," in a press release suggesting that Cook did not withhold information from treating physicians ("Physicians and companies like Cook worked together to develop vena cava filters to help patients."). |
| 193 | Montgomery and the public at large. Had Plaintiff and Dr. Aaron B. Montgomery known about such risks, warnings, and other information herein, including but not limited to those found in the corporate documents of the Defendants, the Celect IVC filter would never have been implanted in Plaintiff. |
| 194 | Ms. Peoples and her doctors ultimately made the decision to implant the Cook Celect filter based on the fraudulent information provided to and concealed from to them by Cook. |
| 195 | Notwithstanding Cook's knowledge in 2013 and prior to the date of installation of the Cook Celect Filter in Manuel Ramirez, Cook had failed to amend the instructions for use and the patient guide published in conjunction with the Cook Celect Filter to set forth the known risk of perforation and lack of efficacy or the flawed studies and fraudulent marketing strategies which underlay the product. |
| 196 | On 03/08/2018 Plaintiff first learned that her Celect filter had perforated outside of her IVC. Plaintiff further learned and this was a common complication from the Celect filter. Plaintiff further first learned that on 3/08/2018 that the Celect filter's struts were the likely cause of her embedment into her IVC. |
| 197 | On April 8, 2013, the Plaintiff followed up with Dr. Korrapati where her Antithrombin III was noted to be normal. At that time, she was told to stop Coumadin and make arrangements for IVC filter removal. |
| 198 | On July 29, 2004 the Plaintiff was suffering from medical conditions that required the need for medical intervention to PEs. That as a result of the above Plaintiff's doctor, Dr. Dick Slater, believed based on Cook's promotion, advertising and studies that a Tulip filter was proper and appropriate for the Plaintiff. |
| 199 | On November 10, 2011 the plaintiff underwent surgery to remove the Celect and after multiple attempts over a two hour period were made by the surgeon to remove the Celect it remained withing the plaintiff. The failure of removal was due to the migration of the filter against the vena cava wall, possible penetration, and caused the removal of it to be impossible. |
| 200 | On October 1, 2014, Cook (through its Marketing Executive, Bruce Fleck) sent a letter to the medical community stating that Cook would be discontinuing production of the Celect. |
| 201 | On or about 02/14/2014, Plaintiff consulted with Dr. Constantino S. Pena who prescribed and implanted in Plaintiff a Tulip vena cava filter. Consistent with the Tulip IFU's, Dr. Constantino S. Pena advised Plaintiff that the filter would help prevent recurrent pulmonary embolism ("PE"), and had low risks. |
| 202 | On or about 1 1/6/2015, Plaintiff first learned through legal consultation, at the time Defendant Cook's Tulip filter was marketed and implanted in Plaintiff in 2014, and thereafter, Cook had concealed its knowledge regarding adverse events associated with the Tulip filter. |
| 203 | On or about 1/1 1/2017, Plaintiff first learned Cook had not studied the safety or efficacy of the Celect filter as a long-term, or permanent device, at the time that Cook marketed its Celect filter, and it was implanted in Plaintiff, in 2014. |
| 204 | On or about 1/1 1/2017, Plaintiff first learned through legal consultation that Cook Defendants knew, at the time its Celect filter was marketed and implanted in Plaintiff in 2014, and thereafter, that the filter lacked efficacy evidence. |
| 205 | On or about 10/12/2013, Plaintiff consulted with Dr. David S. Epstein who prescribed and implanted in Plaintiff a Tulip vena cava filter. Consistent with the Tulip IFU's, Dr. David S. Epstein advised Plaintiff that the filter would help prevent recurrent pulmonary embolism ("PE"), and had low risks. |
| 206 | On or about 10/29/2015, Plaintiff first learned Cook had not studied the safety or efficacy of the Tulip filter as a long-term, or permanent device, at the time that Cook marketed its Tulip filter, and it was implanted in Plaintiff, on 02/14/2014. |
| 207 | On or about 10/29/2015, Plaintiff first learned through legal consultation, at the time Defendant Cook's Tulip filter was marketed and implanted in Plaintiff in 02/14/2014, and thereafter, Cook had concealed its knowledge regarding adverse events associated with the Tulip filter. |
| 208 | On or about 11/1 1/2015 Plaintiff first learned that his Tulip filter had tilted inside of his IVC. |

| | |
|---|---|
| 209 | On or about 11/18/2010, Plaintiff consulted with Dr. Eyal Ben-Arie, who prescribed and implanted in Plaintiff a Celect vena cava filter. Consistent with the Celect IFU's, Dr. Eyal Ben-Arie advised Plaintiff that the filter would help prevent recurrent pulmonary embolism and had low risks. |
| 210 | On or about 11/26/2011, Plaintiff recived a Celect IVC filter that was later sucessfully removed on or about 2/6/2012. Plaintiff is not aware of any complications or injuries from this first implants. |
| 211 | On or about 12/1 1/2015, Plaintiff first learned through legal consultation, at the time Defendant Cook's Tulip filter was marketed and implanted in Plaintiff in 2013, and thereafter, Cook had concealed its knowledge regarding adverse events associated with the Tulip filter. |
| 212 | On or about 12/30/2015 Plaintiff first learned that his Celect filter had perforated his IVC and this was a common complication from the Tulip filter. Plaintiff further first learned that on 12/30/2015 that the Celect filter's struts were the likely cause of his embedment into his IVC. |
| 213 | On or about 2/1/2014, Plaintiff consulted with Dr. Aaron B. Montgomery, who prescribed and implanted in Plaintiff a Celect vena cava filter. Consistent with the Celect IFU's, Dr. Aaron B. Montgomery advised Plaintiff that the filter would help prevent recurrent pulmonary embolism and had low risks. |
| 214 | On or about 4/10/2008, Plaintiff consulted with Dr. John E. Johns, who prescribed and implanted in Plaintiff a Celect vena cava filter. Consistent with the Celect IFU's, Dr. John |
| 215 | On or about 5/20/2016, Plaintiff learned that her Tulip filter had tilted inside of her IVC and was now incapable of being removed. |
| 216 | On or about 5/9/2016, Plaintiff first learned that his Tulip filter had perforated her IVC and noted a filter strut fracture. |
| 217 | On or about 9/17/2003, Plaintiff suffered a significant clotting event. |
| 218 | On or about 9/6/2016, Plaintiff first learned Cook had not studied the safety or efficacy of the Tulip filter as a long-term, or permanent device, at the time that Cook marketed its Tulip filter, and it was implanted in Plaintiff, on 12/12/2005. |
| 219 | On or about 9/6/2016, Plaintiff first learned through legal consultation that Cook Defendants knew, at the time its Tulip filter was marketed and implanted in Plaintiff in 2005, and thereafter, that the filter lacked efficacy evidence. |
| 220 | On or about April 28, 2017, Plaintiff had a CT Scan performed that revealed that four of the IVC Filter's struts had then penetrated through the IVC wall. |
| 221 | On or about April 8, 2016 Plaintiff first learned that his Tulip filter had created complications and an IVC injury. |
| 222 | On or about August 26, 2006, Plaintiff had a hemorrhagic event caused by a strut penetrating the vena cava wall. |
| 223 | On or about July 31, 2006, Dr. Patrick E. Muck implanted the Tulip IVC Filter in Plaintiff, in the City of Cincinnati, Hamilton County, Ohio. |
| 224 | On or about July 31, 2006, Dr. Patrick E. Muck, unaware of the dangers associated with the IVC filter due to Defendant's concealment, recommended the Tulip IVC Filter to Plaintiff. |
| 225 | On or about July 31, 2006, Plaintiff Brandi Sanders had a medical history of deep vein thrombosis and pulmonary embolism. |
| 226 | On or about May 12, 2009, Plaintiff was implanted with a Cook Celect Tulip IVC filter. |
| 227 | Only Cook knew the existence of the fraudulently concealed critical safety information and material facts. Cook obtained this knowledge through its internal studies and through reports of adverse events it received from patients, study participants and doctors regarding its Celect filter. Cook possessed this information before it placed its products on the market and when it concealed this information from Plaintiff and Plaintiff's physicians. |
| 228 | Plaintiff and her doctor, Dr. Daniel Katz, M.D., elected to implant Plaintiff with the Cook Gunther Tulip Vena Cava filter on July 26, 2013 at Mt. Sinai Hospital in Chicago, Illinois, relying on Defendants' fraudulent concealment. |
| 229 | Plaintiff and her doctor, Dr. Herb Lustberg relied on the aforementioned-concealment when deciding to implant the Tulip filter. |
| 230 | Plaintiff and her physicians, Dr. Korrapati, Dr. Strickland and Dr. Golwyn, relied on Cook's fraudulent concealment regarding the efficacy of the Celect IVC filter along with the retrievability window when deciding to implant the Celect Filter. Ultimately, Cook's fraudulent concealment resulted in the Plaintiff requiring an unsuccessful retrieval attempt and the filter remains embedded in her vena cava to this day. |
| 231 | Plaintiff and Plaintiff's doctors believed that use of the Tulip filter was safe and effective for Plaintiff based on Cook's publications and statements that concealed the true risk factors of the filter. |
| 232 | Plaintiff and Plaintiff's physicians received, reviewed, and relied upon Cook's concealed critical safety information and material facts regarding the safety of Cook's Celect filter when Plaintiff and Plaintiff's physicians discussed the risks and complications of implanting Cook's Celect filter and Plaintiff's subsequent medical treatment after undergoing surgery to implant Cook's Celect filter. |

| | |
|---|---|
| 233 | Plaintiff and Plaintiff's physicians were unaware of Cook's fraudulent concealment of material facts and critical safety information when they decided to implant Cook's Celect filter in Plaintiff and how to treat Plaintiff after undergoing surgery to implant Cook's Celect filter. |
| 234 | Plaintiff and Plaintiff's physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff had been exposed to the risks identified in this Complaint, and that those risks were the result of Defendants' acts, omissions, and misrepresentations. |
| 235 | Plaintiff and the Plaintiff's prescribing physician relied upon the Defendants' outrageous untruths regarding the safety and efficacy of the Celect IVC filter. |
| 236 | Plaintiff attempted to have the Tulip filter removed. However, the filter was tilted, and despite multiple attempt the removal was unsuccessful. A separate additional attempt was made to remove the Tulip filter. Again, however, multiple attempts to hook the apex of the filter failed, and an inferior venacavogram demonstrated the hook to be imbedded in the inferior vena cava wall. |
| 237 | Plaintiff continued to treat with Dr. Korrapati regarding her issues with deep vein thrombosis and in February of 2013, Dr. Korrapati recommended that she undergo Antithrombin III testing. Dr. Korrapati indicated that if that was normal, Plaintiff could stop anticoagulation and may need to remove the IVC filter. |
| 238 | Plaintiff could not have otherwise discovered the concealed information and the existence of this cause of action despite exercising reasonable care and diligence. |
| 239 | Plaintiff did not know and was not told about any potential defect with Cook's filter, including but not limited to, any of the information that was not publicly disclosed, was falsely disclosed, or which was concealed as described in the preceding paragraphs. |
| 240 | Plaintiff discussed the potential cause of the failed explant with his doctors, including Dr. Maryam Parviz, and was told only that the filter was embedded and that that just happens sometimes. Plaintiff's understanding after those discussions was that the embedment wasa normal event not associated with any flaw in her filter or her care. There was no indication of the deficiencies in the safety and efficacy of the filter. |
| 241 | Plaintiff exercised due diligence but did not discover facts giving rise to her claim until less than two years before suit was filed. |
| 242 | Plaintiff filed this lawsuit within four years of learning of this tilt injury related to the Tulip filter. |
| 243 | Plaintiff had issues obtaining clearance for filter removal surgery due to respiratory issues related to asthma and COPD. |
| 244 | Plaintiff had no unique or inside knowledge about the information that Cook knew, failed to disclose, concealed, and/or was misrepresenting. Plaintiff was not employed by Cook and was entirely unaware of Cook's deceptions and omissions about Cook's IVC filter when Plaintiff underwent the procedure to have the filter installed. |
| 245 | Plaintiff incorporates by reference each preceding paragraph as though set forth fully at length herein. Plaintiff pleads this Count in the broadest sense, pursuant to all laws that may apply pursuant to choice of law principles, including the law of the state where Plaintiff's injuries occurred. |
| 246 | Plaintiff incorporates herein the above allegations regarding Cook's systematic and ongoing fraudulent concealment of critical safety information and material facts. |
| 247 | Plaintiff only became aware that Plaintiff potentially had a claim or cause of action against Cook immediately prior to filing Plaintiff's lawsuit. Moreover, Plaintiff was unaware of the facts giving rise to Plaintiff's claims until immediately before filing suit, including but not limited to the defective nature of Cook's IVC filter and/or the filter's propensity to cause physical injury, including Plaintiff's injury. |
| 248 | Plaintiff presented to Henry Ford Hospital suffering abdominal pain and bloody stool, and a CT scan revealed a multiple prongs of the Celect filter perforating surrounding organs. One prong extended into the duodenum, one prong extended into the abdomen, one prong extended into the lumbar spine and one prong extended into the aorta. Plaintiff underwent exploratory laparotomy, partial excision of the Celect filter, repair of the inferior vena cava, and repair of duodenum. It was noted by the surgeon that the prong extended into the lumbar spine and the filter body was left in place. An abdominal radiograph revealed the remaining prong had fractured. Plaintiff subsequently underwent removal of the remaining filter body under ultrasound guided vena cavography. The fractured prong remained embedded in Plaintiff's lumbar spine. |
| 249 | Plaintiff reasonably relied on Cook and Plaintiff's treating physicians for information that would have indicated defects in the filter design, inadequate warnings, Cook's breach of duty, and the absence of the above information proximately caused Plaintiff's injuries. |
| 250 | Plaintiff reasonably relied on Cook's representations, as intended by Cook. |

| | |
|---|---|
| 251 | Plaintiff reasonably relied on Plaintiff's treating physicians to adequately convey Cook's representations about its filter, as intended by Cook. |
| 252 | Plaintiff relied on Cook's fraudulent concealment of adverse events when he elected to have a Cook Gunther Tulip filter installed on July 3, 2011. |
| 253 | Plaintiff relied on the information that was provided to her and her physicians by Cook. Had Plaintiff known the defective nature of the Celect device including the possibility of perforation, migration, fracture and difficulty or impossibility of removal, she would not have agreed to utilize the Celect filter. |
| 254 | Plaintiff relied upon the information Plaintiff was told about the filter by and through Plaintiff's doctor to Plaintiff's detriment, including but not limited to the detriment of having the filter installed and the detriment of knowing whether Plaintiff had a claim or cause of action against Cook. |
| 255 | Plaintiff relied upon the information that was available to Plaintiff, and/or which was communicated by Plaintiff's implanting doctor when Plaintiff made the decision to undergo placement of the Cook IVC filter. |
| 256 | Plaintiff repeats and re-alleges each and every allegation of this Complaint as if set forth in full in this cause of action. |
| 257 | Plaintiff subsequently developed occlusion/thrombosis in the Tulip filter which caused leg swelling and varicosities over his abdominal wall. |
| 258 | Plaintiff suffered flank pain and abdomen pain following implantation of the Celect filter. It was discovered via abdominal and pelvic CT scan that the inferior limbs of the Celect filter extended beyond the inferior vena cava wall and one of the limbs extended into the aorta. Plaintiff was advised that this finding was stable. It was later confirmed by an independent radiologist that a number of the legs of the Celect filter protrudes through the inferior vena cava wall with the medial prong penetrating the aorta. |
| 259 | Plaintiff sustained injuries as a result of Cook's fraudulent concealment of material facts and critical safety information. |
| 260 | Plaintiff underwent and inferior venacavogram with attempted removal of the Tulip filter. However, attempts to snare the filter were unsuccessful. |
| 261 | Plaintiff underwent attempted removal of the Tulip filter, however, despite multiple attempts the legs of the filter would not disengage from the inferior vena cava wall. Additionally, Plaintiff suffers stress and fear concerning potential health issues should the filter migrate or fracture. |
| 262 | Plaintiff underwent ultrasound guided inferior venacavogram and attempted removal of the Tulip filter. However, despite numerous attempts to snare the filter with various catheters and snare device, removal was unsuccessful. When Plaintiff had the Tulip filter evaluated by CT scan, the CT scan revealed the medial struts of the filter extend beyond the wall of the inferior vena cava, a rightward 12 degree tilt of the filter and narrowing measuring 4mm of the inferior vena cava at the superior portion of the filter. |
| 263 | Plaintiff was implanted with an IVC Filter on April 5, 2011 at Cleveland Clinic - Main in Cleveland, Ohio by Dr. Andrew Levitin, MD. |
| 264 | Plaintiff was never informed that the IVC Filter was defective, nor that the IVC Filter was defective and that caused the bleed. |
| 265 | Plaintiff was unaware at the time Plaintiff filed suit of the information that Cook failed to publicly disclose, information that was concealed, and information that was intentionally or negligently withheld by Cook, which would have alerted Plaintiff to the defective nature of Cook's IVC filter, Plaintiff's potential claims and causes of action, and the filter's potential and likelihood to cause bodily injury. |
| 266 | Plaintiff would not have allowed the placement of the Celect had he known the true facts regarding the safety and efficacy. |
| 267 | Plaintiff, despite the exercise of due diligence, did not discover facts giving rise to her claim against Defendants until less than the relevant limitations periods before the filing of her lawsuit. |
| 268 | Plaintiff's discussions at the time of her failed explant and subsequently with her physicians regarding the embedment of her filter were within the realm of those any reasonable person would have and upon which they would reasonably rely. They constitute due diligence. |
| 269 | Plaintiff's filter was implanted in April 1, 2020 |
| 270 | Plaintiff's implanting physician, Dr. Frischknect, believed placement of IVC filters in patients like Plaintiff decreased their risk of death. Without that belief in the efficacy of IVC filters generally and the Celect in particular, Plaintiff's doctor would not have placed the Celect filer in Plaintiff. |
| 271 | Plaintiff's physicians, including Dr. Afton R. McNierney-Moore, Dr. Richard B. Barber, and Dr. Thomas Chodosh, did not know the about outlined fraudulently concealed facts. |

| | |
|---|---|
| 272 | Plaintiff's physicians, including Dr. Frischknect, passed their belief regarding the safety and efficacy of IVC filters generally and the Celect specifically on to Plaintiff. Plaintiff relied on that understanding in determining whether to have the Celect placed. |
| 273 | Plaintiff's reliance upon the material misrepresentations and omissions was justified, among other reasons, because said misrepresentations and omissions were made by individuals and entities who were in a position to know the true facts concerning the Celect while Plaintiff was not in a position to know the true facts because Cook overstated the benefits and safety of the Celect and downplayed the risks, thereby inducing Plaintiff to have the Celect implanted rather than a safer alternatives. |
| 274 | Plaintiff's treating physicians, Dr. Vijaya Korrapati, discussed her case with Dr. Glen Strickland and they recommended IVC filter placement due to Plaintiff's diagnosis of DVT while on anticoagulants. |
| 275 | Prior to Plaintiff receiving her Celect IVC filter and during the period in which Plaintiff actually received her Celect IVC filter, Defendants fraudulently suppressed and concealed material information regarding the safety and efficacy of the Celect IVC filter, including information regarding increased adverse events, number of deaths, and the high number of severe adverse event reports compared associated with the Celect IVC filter. Furthermore, Defendants fraudulently concealed the safety information about the use of the Celect IVC filter and its retrievability. As described above, the Celect IVC filter has several well-known serious adverse events associated with is implantation. Plaintiff believes that the fraudulent concealment and misrepresentation described herein was intentional to keep the sales volume of the Celect IVC filter strong. |
| 276 | Prior to the Celect filter being implanted in Plaintiff, Defendants knew or should have known that the Celect filter was defective yet failed to adequately disclose the defect or warn users of its existence. Rather, Defendants negligently, intentionally, purposely, fraudulently, and systematically concealed the defects from Plaintiff, Plaintiff's doctors, and the public at large. |
| 277 | Prior to the implant of the IVC Filter, Plaintiff was not informed by Dr. Levitin that the IVC filter implanted might be defective and that it could cause injuries, including but not limited to the IVC filter perforating the IVC. |
| 278 | Prior to the implant of the IVC Filter, Plaintiff was not otherwise aware that the IVC Filter implanted might be defective and that it could cause injuries, including but not limited to the IVC filter perforating the IVC. |
| 279 | Sales representatives were not made aware of serious and material adverse event reports that they would have told doctors about had they known. |
| 280 | Similarly, during the same period, Cook published marketing materials misrepresenting that the Tulip filter was "the filter you can trust," the "industry's . . most trusted IVC filter line," was designed for "secure fixation," could be left in place, was the "industry's most trusted," and had "specially designed anchors to achieve strong caval fixation." |
| 281 | That based on the above concealment by the defendant, the plaintiff and her physician did not believe there were risks associated with the filter like that she is suffering from presently. That had the plaintiff and her physician know of the facts concealed by the defendant the plaintiff would not have had the filter implanted. |
| 282 | That based on these facts above and Cook's concealment Dr. Khaya-Khatib did implant a Celect filer in the plaintiff advising her she would be better protected against PEs. |
| 283 | That the plaintiff and her physician relied on Cook's representations when making the decision to implant said filter. The plaintiff and her physician believed that by implanting the Celect filter the plaintiff would be protected from PEs better than other types of treatment. |
| 284 | The Celect IFU states there were no device-related major adverse events and zero perforations in the only human study of the filter, thus concealing the perforations and other BT safety concerns that were shown through the study. |
| 285 | The concealed and withheld information described above deprived Plaintiff and Plaintiff's treating physicians of the data needed to perform an informed risk/benefit analysis. This concealment deprived Plaintiff of the information needed to discover a potential cause of action against Cook. |
| 286 | The concealed and withheld information described above would have been material to Plaintiff and Plaintiff's treating physicians at the time Plaintiff received the filter. |
| 287 | The Cook marketing plan was designed to stimulate sales and influence the physician decision making process by emphasizing the "fear factor" and encouraging the sales force to deflect physician questions about the company information regarding adverse event experience associated with the Celect product while suggesting that use of the Celect product -13-2138135.2 might be used in bariatric cases, orthopedic surgery cases, cancer cases, and other cases for which the use of the product had not been cleared. |

| | |
|---|---|
| 288 | The critical safety information and material facts were uniquely available to Cook because only Cook had access to the results of its internal studies and the adverse event reporting. Physicians such as Plaintiff's physicians did not have access to this information and reasonably expected that Cook would disclose this important safety information. |
| 289 | The decision to be implanted with the Celect by the Plaintiff was done in coordination with his doctor as a result of the Plaintiff having to undergo multiple joint replacement surgeries over a period of a few months that placed him at a high risk for pulmonary embolism. |
| 290 | The Defendant's misrepresentations and fraudulent concealment of critical information concerning the Celect IVC filter proximately caused Plaintiff's damages. |
| 291 | The Defendants falsely and fraudulently represented to the medical and healthcare community, and to the Plaintiff, the FDA, and the public in general, that the Celect IVC filter, had been tested and was found to be safe and/or effective and the Celect IVC filter's adverse events were lower compared to its competitors. |
| 292 | The IFU concealed that Cook was aware of the increasing trend of symptomatic perforations as demonstrated by their internal compilation of adverse event reports. |
| 293 | The IFU did not disclose and therefore concealed that Cook had material information regarding the nature, frequency, and severity of known failure modes and adverse events associated with the Celect filter. |
| 294 | The IFU did not disclose and therefore concealed that Cook was aware of the propensity of the Celect to perforate/penetrate the IVC wall occasioned by the design change from the Tulip to Celect (e.g., removing the "petals"). |
| 295 | The IFU did not disclose and thus concealed this material information. |
| 296 | The IFU is provided along with the sale of any Celect filter and is available for review by Plaintiff and the Medical and Scientific communities. |
| 297 | The information provided by Defendant to the Plaintiff's implanting physician about its Celect IVC filter were intentionally false and unreasonable under the circumstances. Defendant fraudulently concealed key information about the efficacy and risks of the filter from the implanting physician. |
| 298 | The information withheld was material and critical safety information for the medical and scientific communities, including Plaintiff's treating physicians. Cook understood this information to be material and concealed it from Plaintiff and the medical and scientific communities, including Plaintiff's treating physicians. |
| 299 | The MEDI Director of Scientific Affairs for Venous Therapies (Jen Brown) authored a report of this clinical study for publication in a peer-reviewed medical journal. In that report, she falsely reported that no perforations occurred in the study when in fact there were a number of perforations. |
| 300 | The patient guide conceals information that the adverse event reports of perforation associated with the Celect are 15 times that of the Tulip. |
| 301 | The patient guide conceals that the reported deaths associated with use of the Celect filter exceed that reported with competitor products. |
| 302 | The patient guide conceals the know frequency of penetration and perforation into other organs associated with the Tulip filter. |
| 303 | The patient guide conceals the known nature, frequency, and extent of serious failure modes and associated adverse events associated with the Celect filter. |
| 304 | The patient guide conceals the severity and frequency of embedded filters and the associated progressive injury Cook knew to be associated with the Celect filter. |
| 305 | The Plaintiff did not believe or have reason to believe that the Cook Celect which had been implanted in him was defective until October of 2016 when he observed a television ad regarding potential lawsuits against the makers of the IVC filters. After inquiry with an attorney he filed this action in December of 2016. CONCLUSION For these reasons, Plaintiffs respectfully amends its short form complaint to include fraudulent concealment in this action. |
| 306 | The plaintiff Manuel Ramirez' Cook Celect Filter was installed on August 27, 2013 at a time when Cook's knowledge concerning the Celect's known risk of perforation, lack of efficacy, flawed studies justifying its production and marketing, and its flawed and deceptive marketing strategies were at their maximum. |
| 307 | The Plaintiff, nor his doctors, would have relied upon the Celect, had they known of the allegations and information outlined hereinabove. |

| | |
|---|---|
| 308 | The Tulip IFU is silent as to the adverse events that occurred in the Tulip clinical pilot study and claims that there were "none". In fact, the Tulip "IDE Pilot Study Final Report" lists more than twenty adverse events, including three cases of IVC/femoral vein thrombosis after filter implantation, one post-placement PE, one migration of the Tulip filter to the heart, reported "major" difficulty with two retrievals and difficulty of some degree reported in 30% of retrievals, nine instances of filter tilt, three cases of significant IVC narrowing (stenosis), one patient requiring a post-retrieval blood transfusion, and four patients complaining of pain during or after filter retrieval. |
| 309 | The use of the Cook Celect was intended to be a temporary and the Celect was used as a retrievable interior vena cava filter to be removed after the risks of pulmonary embolism associated with the multiple joint replacement surgeries had passed. |
| 310 | Then, Bruce Fleck encouraged Cook's sales force to advise the medical community to access the MAUDE database and note that Tulip's and Celect's adverse events were lower compared to Cook's competitors. |
| 311 | These representations and concealments were made by the Defendants with the intent of defrauding and deceiving the Plaintiff, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general, and the medical and healthcare community in particular, to recommend, implant and/or attempt retrieval of the Celect IVC filter all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff. |
| 312 | This concealment deprived Plaintiff and her doctors of the data needed to perform an informed risk/benefit analysis. This concealment deprived Plaintiff of the information he needed to make an informed decision regarding choosing to have the Cook Celect filter implanted in her. |
| 313 | This concealment served to depress the information available to the medical and scientific communities by lowering the number of adverse events in the MAUDE database. |
| 314 | This follows similar statements made in 2014 ("Cook believes in providing physicians the data they need to make the best decisions possible when treating patients."). |
| 315 | This was mere months before Plaintiff was implanted with one of Cook's Celect IVC filter. Had Plaintiff and the medical community at large been told the truth of the dangers of the Cook's Celect IVC filter, either Plaintiff's doctor would not have selected it for the procedure or Plaintiff would have refused to have it inserted into Plaintiff's body. |
| 316 | This was over a year before Plaintiff was implanted with one of Cook's Celect IVC filter. Had Plaintiff and the medical community at large been told the truth of the dangers of the Cook's Celect IVC filter, either Plaintiff's doctor would not have selected it for the procedure or Plaintiff would have refused to have it inserted into Plaintiff's body. |
| 317 | This would have prevented the Celect IVC filter from ever being implanted in Plaintiff and further prevented all of the IVC related injuries Plaintiff sustained as a result of the Celect IVC filter. |
| 318 | Through their catalogs, sales materials and Patient Guides, Cook made the following express representations regarding the Tulip filter to the medical community, implanting physicians, and patients: a. "The Gunther Tulip Vena Cava Filter is often used as a permanently implanted device. Patients are able to lead a normal, active lifestyle, and rarely have complications from having the filter implanted." b. ". . . these filters can also remain in place as permanent devices." c. "The Gunther Tulip and Celect vena cava filters can stay in place permanently or they can be removed . . . ." d. "Temporary or permanent, the Tulip puts the choice in your hands. It is safe and effective as a permanent filter . . . ." |
| 319 | Throughout the Celect's life cycle, Cook concealed that the use of the filter was not associated with a significant decrease in the rate of subsequent PE, PE related mortality, or all-cause mortality, understood that this information was material, and concealed it. |
| 320 | Throughout the Tulip's time on the market and continuing today, Cook has concealed that the use of the filter is not associated with a significant decrease in the rate of subsequent PE, PE related mortality, or all-cause mortality. |
| 321 | To allow the fraud committed herein and otherwise shown in discovery and evidence, would allow Defendants to benefit from their bad deeds at the expense of innocent parties like that of the Plaintiff in this Action. |
| 322 | To the extent, if any, that Plaintiff's claims and causes of action were asserted outside of the applicable statute of limitations related to Plaintiff's claims, it is because of Cook's concealment of the information that would have alerted Plaintiff to Plaintiff's injuries and/or the defectiveness of Cook's IVC filter and/or the potential legal claims and causes of action that Plaintiff had. |
| 323 | Tulip's "Instructions for Use" omits important information known to Cook regarding retrievability and adverse events. |
| 324 | Upon information and belief, Plaintiff avers that Defendants actively and fraudulently concealed information in Defendants' exclusive possession regarding the lack of efficacy and the hazards associated with the Celect IVC filter, for the purpose of preventing consumers, such as Plaintiff, from discovering these hazards. |

| | |
|---|---|
| 325 | When Plaintiff had the Celect filter evaluated by CT scan, the CT scan revealed a 12 degrees leftward tilt of the superior aspect of the filter with the anterior tine extending approximately 2 mm beyond the inferior vena cava wall. |
| 326 | When reporting the results of the only human trial regarding the use of the Celect filter, Cook falsely reported that no patient experienced a perforation or penetration associated with the filter's use. |
| 327 | WHEREFORE, Plaintiff respectfully request that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper. Plaintiff also demands a jury trial on the issues contained herein. |
| 328 | While continuing its aggressive marketing of the Celect Filter, Cook concealed its internal belief and understanding that the filter had to be re-designed to address the nature, severity, and frequency of adverse events associated with the filter. |
| 329 | With Knowledge of the Flawed Design and Difficulties in the Study, Cook routinely and systematically sought to convince physicians that the Tulip was safe for retrieval well beyond 14 days and was able to be safely retrieved indefinitely. |