IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates to:

| | |
|---|---|
| Shirley A. Parton | 1:18-cv-03371-RLY-TAB |
| Teresa Sykes | 1:19-cv-01167-RLY-TAB |

### PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs Shirley A. Parton ("Parton") and Teresa Sykes ("Sykes") (collectively "Plaintiffs"), by and through counsel, respond in opposition to Cook Defendants' Motion for Judgment on the Pleadings as to Certain No-Injury Plaintiffs ("Motion;" Dkt. 13728), subsequently converted to a motion for summary judgment pursuant to Dkt. 18310. Plaintiffs' medical records, expert testimony, and medical journal articles establish a contested issue of material fact regarding the fact of an injury under relevant state law. The Court should deny the Motion.[1]

### INTRODUCTION

Plaintiffs have suffered a present physical injury. Plaintiffs' medical records confirm their IVC filters perforated through the walls of their inferior vena cava ("IVC") by at least 3 mm. Plaintiffs' expert, Dr. Derek Muehrcke, M.D., FACS, further confirms that when an IVC filter perforates through the IVC, it is an injury that harms the IVC and produces an injury response in their bodies, including bleeding, initiation of the clotting cascade, fibroblast activation, and scar

---

[1] Defendants limit their Motion to Counts I through IV of the Master Complaint: Strict Products Liability – Failure to Warn; Strict Products Liability – Design Defect; Negligence; and Negligence Per Se. Plaintiffs limit their response accordingly. Plaintiffs have suffered other injuries, including economic harm, relevant to other claims. *See, e.g.*, *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 455 (5th Cir. 2001) (finding that "benefit of the bargain damages" were available under state law for a defective product, regardless of the existence of physical injury).

formation. If their bodies had failed to produce this injury response, continued internal bleeding could have resulted in death. In addition, Plaintiffs' strut perforations have other detrimental impacts on their health. Expert testimony and medical literature confirm that Plaintiffs' strut perforations reduce the likelihood of a successful procedure to remove their IVC filters. Plaintiffs are also more likely to require advanced techniques, with a longer time under anesthesia, to remove their filters. And a clinical study determined that strut perforation reduces the size the vena cava, increasing pressure on non-perforating struts, begetting further strut perforation that could later interact with other structures in Plaintiffs' retroperitoneal cavities. A tear in the IVC constitutes injury under state law.

Plaintiffs' categorizations of their injuries under administrative court documents do not undermine the injuries they have suffered. As a threshold matter, Plaintiffs do not characterize their injuries as "asymptomatic." Sykes has further developed severe abdominal pain, likely as a result of her IVC filter perforation. But whatever adjective one applies to Plaintiffs' injuries, the question remains the same: does evidence proving that an IVC filter has torn through a person's IVC establish a fact question for the jury as to injury? They do.

Though Defendants make much of the purportedly "minimal" nature of the injury, the extent of damage is not at issue here. The question is only whether Plaintiffs have raised a genuine issue of material fact regarding the element of injury. The evidence submitted, establishing strut perforation in each of the Plaintiffs' cases and explaining the consequences thereof, precludes summary judgment.

## STATEMENT OF MATERIAL FACTS IN DISPUTE

### I. The IVC and Its Role in the Human Body.

The IVC is the largest vein in the human body and carries blood to the heart from the lower extremities, pelvis, and abdomen. (Plaintiffs' Supplemental Statement of Facts in Support of

2

Response to Defendants' Motion for Summary Judgment ("SSOF") ¶ 1.)  The IVC has three layers: an outer layer of connective tissue called tunica adventitia or tunica externa; a middle layer of smooth muscle called the tunica media; and an inner layer lined with endothelial cells called the tunica intima.  (*Id.* at ¶ 2.)  It moves blood to the heart by expansion and contraction by the differential pressure created by normal respiration.  (*Id.* at ¶ 3.)  As the diaphragm contracts and creates negative pressure in the chest for the lungs to fill with air, this pressure gradient pulls the venous blood from the abdominal IVC into the thoracic IVC and subsequently into the right heart.  (*Id.* at ¶ 4.)

 II. **Perforation of the IVC by an IVC Filter Causes Injury.**

  A.  **Dr. Muehrcke's Credentials.**

Dr. Muehrcke is a board-certified cardiothoracic surgeon who has been practicing for the past 24 years.  (*Id.* at ¶ 5.)  He attended a seven-year college-medical school curriculum at Grinnell College and Rush Presbyterian St. Luke Medical Center in Chicago, Illinois.  (*Id.* at ¶ 6.)  His formal specialty training took place at Harvard Medical School and Massachusetts General Hospital, where he completed his general surgery residency and training in adult cardiothoracic surgery.  (*Id.* at ¶ 7.)  He was then accepted in and completed a congenital heart surgery fellowship at Boston Children's Hospital, also at Harvard.  (*Id.* at ¶ 8.)

After completing the above-mentioned training and fellowship programs, Dr. Muehrcke's first position was at the Cleveland Clinic, where he practiced for three years performing adult cardiac surgery.  (*Id.* at ¶ 9.)  He then moved to Florida to join five former Harvard-trained cardiovascular surgeons in private practice.  (*Id.* at ¶ 10.)  His current group, of which he is one of five partners, is comprised of eight heart surgeons and seven vascular surgeons.  (*Id.* at ¶ 11.)  They all perform cardiac, thoracic, and vascular surgery at seven hospitals in Jacksonville, Florida.  (*Id.* at ¶ 12.)

For the past 24 years, Dr. Muehrcke has routinely implanted and removed (once optional filters became available) IVC filters.  (*Id.* at ¶ 13.)  He has implanted and removed every iteration of

Bard's retrievable filters from the Recovery filter through the Denali. (*Id.* at ¶ 14.) He has also implanted the Cordis OptEase and TrapEase filters, the Cook Celect filter, the Greenfield filter, and the Argon Option filter. (*Id.* at ¶ 15.) He has implanted hundreds of IVC filters in his career. (*Id.* at ¶ 16.) He has removed entire filters from the heart and fragments of filters from the heart. (*Id.* at ¶ 17.)

Dr. Muehrcke's practice is equally divided between cardiac, thoracic, and vascular surgery. (*Id.* at ¶ 18.) He performs close to 500 cases yearly. (*Id.* at ¶ 19.) He is the Chief of Cardiothoracic Surgery at Flagler Hospital in Saint Augustine, Florida. (*Id.* at ¶ 20.) As a result of the recent litigation surrounding the use of retrievable IVC filters, Dr. Muehrcke began following all of his hospital patients implanted with removable IVC filters. (*Id.* at ¶ 21.) These included filters implanted by him, his partners, and the interventional radiologists at Flagler Hospital. (*Id.* at ¶ 22.) This has resulted in patients being referred to him for retrieval of their optional IVC filters placed not only at Flagler Hospital but also at other institutions. (*Id.* at ¶ 23.)

### B. Dr. Muehrcke's Opinions Regarding the Injury Caused by Strut Perforation.

Dr. Muehrcke was asked to provide his medical opinions as to whether a perforation by a Cook Gunther Tulip or Celect IVC filter through the inferior vena cava ("IVC"), by at least 3 mm but without interaction with other retroperitoneal structures, constitutes harm or injury to the IVC and to provide a medical explanation of what happens when an IVC filter punctures or perforates through the IVC, including the body's response to such puncture or perforation. (*Id.* at ¶ 24.)

Dr. Muehrcke explained that puncture of the IVC wall by an IVC filter leads to bleeding, activation of the clotting cascade, fibroblast activation, and scar formation. (*Id.* at ¶ 25.) When a strut of an IVC filter traumatically exits the IVC, it causes a puncture or micro laceration to the wall of the venous blood vessel carrying the desaturated blood returning to the heart from the lower body.

(*Id.* at ¶ 26.)  This immediately causes bleeding from the blood vessel as well as creating a hole in the IVC through which the desaturated blood can escape from the IVC into the abdominal cavity. (*Id.* at ¶ 27.)  The body's response to the bleeding is to initiate the clotting cascade to prevent the patient from bleeding to death.  (*Id.* at ¶ 28.)  If a patient is anticoagulated for various reasons (atrial fibrillation, prior deep venous thrombosis ("DVT"), or pulmonary embolism), the anticoagulants can prevent the clotting cascade from stopping the bleeding and result in major bleeding and death.  (*Id.* at ¶ 29.)  However, if the clotting system is uninhibited, then immediately the traumatic puncture will cause platelet plugging to occur and later fibroblasts reinforcement of the plug will strengthen the human body's attempt to prevent the patient from bleeding to death.  (*Id.* at ¶ 30.)  Moreover, collagen in the wall of the IVC will be exposed, further fueling the clotting cascade which can lead to active clot in the IVC and local intravascular clot formation as a result of the thrombogenic metallic IVC filter being present which can cause thrombosis of the IVC.  (*Id.* at ¶ 31.)  Thus, puncture of the IVC by an IVC filter strut initiates several protective hemostatic mechanisms to prevent the human to bleed to death.  (*Id.* at ¶ 32.)  In other words, the body responds to the IVC puncture as injury and damage to the IVC and immediately acts to heal that injury.  (*Id.* at ¶ 33.)  This damage and response impair the ability of the IVC to function as intended.  (*Id.* at ¶ 34.)

       Further, the fibroblast response leads to scarring over time to heal the acute injury to the IVC wall, as occurs with all traumatic injury in the body.  (*Id.* at ¶ 35.)  That scarring to heal the damage caused by the IVC filter can make subsequent removal of the IVC filter more difficult.  (*Id.* at ¶ 36.) This increases the likelihood that a removing physician would need to employ advanced removal techniques that have higher complication rates and subject the patient to increased time under anesthesia.  (*Id.* at ¶ 37.)

       In addition to the direct injury caused to the IVC by perforation of the filter and the body's pathophysiological response to the perforation, the filter has now breached the confines of the IVC

5

wall. (*Id.* at ¶ 38.) Perforation can also progress to interact with surrounding structures (aorta, lumbar spine, psoas muscle, duodenum, and ureter). (*Id.* at ¶ 39.) Moreover, tilt can occur compromising the IVC filter's clot catching ability. (*Id.* at ¶ 40.) Abnormal stresses are imposed on the IVC filter which can lead to fracture of the filter. (*Id.* at ¶ 41.) However, even without the future potential harms, the IVC filter's perforation of the IVC has caused an injury to the IVC. (*Id.* at ¶ 42.)

Dr. Muehrcke's expert opinion is that a perforation of an IVC filter through the wall of an IVC is an injury to the patient.

### III. Sykes Has Sustained an Injury as a Result of Her IVC Filter.

On October 1, 2013, Sykes' physician implanted a Cook Celect IVC filter in her infrarenal IVC. (*Id.* at ¶ 43.) The procedure was performed without complication. (*Id.* at ¶ 44.) Post placement venogram demonstrated proper placement of the IVC filter. (*Id.* at ¶ 45.) On January 24, 2019, Sykes underwent a CT scan of her abdomen and pelvis. (*Id.* at ¶ 46.) That CT scan showed that multiple struts of her IVC filter have perforated through her IVC, with prongs extending up to 8.01 mm beyond her caval wall. (*Id.* at ¶ 47.)

Sykes submitted a Supplemental Case Categorization Form ("CCF") on December 1, 2020. (*Id.* at ¶ 48.) Her Supplemental CCF categorized her injuries as a Category 7 Symptomatic Injury Case, selecting subcategory "(e) penetration or perforation – consisting of a filter strut or anchor extending 3 or more mm outside the wall of the IVC as demonstrated on imaging." (*Id.* at ¶ 49.) The Supplemental CCF provides the following brief description of her injuries: "Four prongs have perforated the IVC. Maximum distance prongs perforated 8.01 mm." (*Id.* at ¶ 50.) Sykes' Supplemental CCF attached a report reviewing the 2018 scan. (*Id.* at ¶ 51.)

Since mid-2019, Sykes has experienced constant, excruciating abdominal pain. (*Id.* at ¶ 52.) Sykes has visited four different hospitals regarding this abdominal pain. (*Id.* at ¶ 53.) Each hospital performed tests that ruled out gallbladder issues as the cause of her pain. (*Id.* at ¶ 54.)

**IV.     Parton Has Sustained an Injury as a Result of Her IVC Filter.**

On April 2, 2012, a Cook Gunther Tulip IVC filter was implanted in Parton. (*Id.* at ¶ 55.) The filter was deployed in good position, without asymmetry or tilting. (*Id.* at ¶ 56.) There were no complications during the procedure. (*Id.* at ¶ 57.) On February 6, 2018, Parton underwent a CT scan of her abdomen and pelvis. (*Id.* at ¶ 58.) This CT scan showed that a prong of her IVC filter has perforated through her caval wall by 4.2 mm. (*Id.* at ¶ 59.)

Parton submitted a Supplemental CCF on November 25, 2020. (*Id.* at ¶ 60.) Parton's Supplemental CCF categorized her injuries as a Category 7 Symptomatic Injury Case, selecting subcategory "(e) penetration or perforation – consisting of a filter strut or anchor extending 3 or more mm outside the wall of the IVC as demonstrated on imaging." (*Id.* at ¶ 61.) The Supplemental CCF provides the following brief description of her injuries: "One of the filter's struts has perforated Plaintiff's inferior vena cava, the maximum distance perforated is 4.2 mm." (*Id.* at ¶ 62.) Parton's Supplemental CCF attached a report reviewing the 2018 scan. (*Id.* at ¶ 63.)

**V.      Medical Literature Reinforces the Injury Caused by Grade 2 Perforations.**

**A.  Perforation of the IVC Makes Removal of an IVC Filter More Difficult.**

A 2009 retrospective analysis of Gunther Tulip filter retrievals showed that penetration, defined as perforation of at least 1 cm outside the lumen of the IVC, was a predictor of failed retrieval. (*Id.* at ¶ 64.) "Patients with filter penetration were found to be significantly more likely to have an unsuccessful filter retrieval in comparison to patients with no penetration." (*Id.* at ¶ 65.) "Therefore, filter strut penetration presence was a predictor of unsuccessful filter retrieval." (*Id.* at ¶ 66.)

### B. Perforation of the IVC Is an Adverse Event that Recommends Early Removal.

A 2013 study using quantitative decision analysis showed that a risk/benefit analysis favored removal of retrievable IVC filters between one and two months following implant, so long as the patient's transient risk for PE has passed, due to the risk of certain "adverse events." (*Id.* at ¶ 67.) The study found that caval penetration was an adverse event, the risk of which recommended early removal of the IVC filter. (*Id.* at ¶ 68.)

On May 6, 2014, the FDA issued a safety communication regarding removing retrievable inferior vena cava filters. (*Id.* at ¶ 69.) The FDA indicated that it had received reports of adverse events and product problems associated with IVC filters, including "perforation of the IVC." (*Id.* at ¶ 70.) Some of those events led to additional adverse clinical outcomes. (*Id.* at ¶ 71.) Based in part on the Morales study referenced above, the FDA recommended that implanting physicians and clinicians responsible for the ongoing care of patients with retrievable IVC filters consider removing the filter as soon as protection from pulmonary embolism is no longer needed. (*Id.* at ¶ 72.)

### C. Strut Penetration Is Progressive.

A 2015 clinical study evaluated the progressive, long-term changes following placement of Celect IVC filters. (*Id.* at ¶ 73.) The study followed patients through CT scans. (*Id.* at ¶ 74.) By the first follow-up CT study, perforation of at least one strut was observed in 36% of Celect filters. (*Id.* at ¶ 75.) The perforation rate increased to 71% by the second follow-up CT, and 79% by the final follow-up CT. (*Id.* at ¶ 76.) These results "clearly demonstrated a progressive trend of strut perforation over time." (*Id.* at ¶ 77.)

The study also addressed the mechanism through which strut perforation is progressive. (*Id.* at ¶ 78.) The study measured the diameter of patients' IVCs before and after an IVC filter perforated their IVC. (*Id.* at ¶ 79.) Patients showed a "significant decrease in IVC cross-sectional area" after

perforation.  (*Id.* at ¶ 80.)  Based on this observation, the study authors proposed a hypothesis that an existing perforation may trigger a local decrease in the IVC diameter, which in turn leads to an increase in forces on other non-perforated struts and a higher likelihood of developing further perforations.  (*Id.* at ¶ 81.)  The study authors used "finite element modeling techniques" to test their hypothesis.  (*Id.* at ¶ 82.)  The study authors found that "[t]hese data would suggest that strut perforation begets strut perforation by altering the distribution of forces applied to the IVC wall, and that increasing strut force may be an indicator of strut perforation."  (*Id.* at ¶ 83.)

## ARGUMENT

### I.      A Material Issue of Fact Precludes Summary Judgment.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  The Court must draw "all justifiable inferences" in the favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008) (explaining that we view "the facts in the light most favorable to . . . the nonmovant").  "At summary judgment, whether the movant's evidence is more persuasive than the evidence of the non-movant is irrelevant." *U.S. v. Funds in Amount of One Hundred Thousand One Hundred and Twenty Dollars*, 730 F.3d 711, 717 (7th Cir. 2013) (citing *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010)).  "The only question is whether the evidence presented, reasonably construed in the light most favorable to the non-movant, creates a genuine dispute regarding any material fact precluding judgment as a matter of law."  *Id.* (citing Fed. R. Civ. Proc. 56(a)).

### II.     Plaintiffs Do Not Characterize Their Injuries As "Asymptomatic."

In accordance with the requirements of the Court's Order on Defendants' Motion for Screening Order and Bellwether Selection Plan, dated October 2, 2018, and the Parties' Order Regarding Case Categorization, dated November 21, 2018 (Dkts. 9322 and 9638, respectively), each

9

Plaintiff identified a category for her case based on pre-determined categories outlined by Cook's counsel and completed and served a CCF with supporting medical records. Plaintiffs later submitted Supplemental CCFs characterizing their injuries as Category 7 "symptomatic injury cases" with "penetration or perforation – consisting of a filter strut or anchor extending 3 or more mm outside the wall of the IVC as demonstrated on imaging." (SSOF at ¶¶ 48-51, 60-63.) Though Defendants make much of Plaintiffs' earlier characterization of their injuries as "asymptomatic injuries" under Category 6, that administrative label is a red herring. The IVC is a major vessel in the body, the perforation of which by a foreign metallic object satisfies the requirement of an injury in tort. Regardless, Sykes is now experiencing abdominal pain. (SSOF at ¶ 52.) As her physicians have ruled out other potential sources of her pain, it is likely a result of her IVC filter perforation. (*Id.* at ¶¶ 52-53.)

The CCF, as approved by this Court, expressly declares that use of the CCF is not relevant for any purpose other than "complying with the Court's Order on the Cook Defendants' Motion for Screening Order and Bellwether Selection Plan only" and is inadmissible. (Dkt. 13728 at 1.) The CCF is an administrative tool utilized by the Court to obtain a census of the types of cases filed in MDL 2570 and to assist the Court in crafting a bellwether plan in this case.

Moreover, the CCFs are not judicial admissions of noninjury. "A judicial admission is a statement, normally in a pleading, that negates a factual claim that the party making the statement might have made or considered making." *Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 872 (7th Cir. 2010) (emphasis added). Here, Defendants contend that the categorization of Plaintiffs' cases as Category 6 cases proves a lack of injury. However, Plaintiffs have alleged in the operative pleadings that they were injured by Defendants' filters, and now submitted evidence substantiating their allegations. The CCFs are consistent with that. The Category 6 description in the CCF identifies the cases as "injury" cases. Moreover, the CCFs were submitted with an accompanying

10

CT scan of the plaintiffs' bodies and showed perforations of their vena cavae by their filters in multiple locations. Because a perforation is an injury, the CCFs support, rather than negate, Plaintiffs' claims. And the CT scans at issue do not negate the fact that Plaintiffs had an injury, but rather provide objective evidence of that injury. Thus, the CCFs cannot be considered an "admission" under *Robinson*. *Id*. For these reasons, *Keller v. US*, 58 F.3d 1194, (7th Cir. 1995) has no impact. Plaintiffs' original CCFs do not withdraw a fact from contention. They confirm injury, that has negatively impacted their bodies, regardless of which adjectives one uses to describe the injury.

Defendants have also mischaracterized Plaintiffs' alleged "admissions" in those forms. In an effort to avoid the clear categorization of these cases as "injury" cases in the CCFs, Defendants omit and ignore that the title of Category 6 is "Non-Symptomatic Injury" (emphasis added) and contend (in the Motion's title and throughout) that Plaintiffs have conceded these are "non-injury" cases, focusing solely on the term "non-symptomatic." In so doing, Defendants simply underscore the impropriety of relying on the CCFs as the basis for a dispositive motion. The categories and their descriptions have no definitions. While Defendants attempt to equate "non-symptomatic" with a lack of injury, nothing in the CCF defines what "non-symptomatic" means. Here, Plaintiffs interpreted it to mean without other symptoms; but they have clearly alleged an injury to their IVC. Further, Sykes has also begun experiencing constant, excruciating abdominal pain. (SSOF at ¶ 52.) Parton's case—with actual injury to her vena cava—is an injury without other sequelae, but is nonetheless an injury. That Parton is not presently experiencing symptoms beyond the hole torn in her IVC by Defendants' device does not mean that the device has not torn a hole in her IVC.

The Court has already ruled that the CCF is inadmissible and not to be considered relevant for "any other purpose" beyond case screening and bellwether selection process. (Doc. 9638-1.) There is no "Other" category or room to expand on the Plaintiff's claimed injuries, and Plaintiffs'

11

counsel was directed to "briefly describe" the facts justifying the placement in a given category, nor are any of the terms of the CCF defined. *Id.* The CCF an administrative tool, not produced via substantive discovery, whose utility was specifically limited in the Court's Order itself. Labels do not change the underlying facts. The underlying fact here is that Plaintiffs suffered tears to their IVC, impairing its function and causing other detrimental effects.

### III.     Plaintiffs' Grade 2 Perforations Are Actionable Injuries.

The Restatement (Third) of Torts defines physical harm as the "impairment of the human body," and "bodily harm includes physical injury . . . and impairment of bodily functions." Restatement (Third) of Torts § 4. "Any level of physical impairment is sufficient for liability; no minimum amount of physical harm is required. Thus, any detrimental change in the physical condition of a person's body or property counts as a harmful impairment; there is no requirement that the detriment be major." *Id.* § 4 cmt. c. Merriam-Webster's Dictionary defines "injure" to mean "a: to inflict bodily hurt on[;] b: to impair the soundness of". *See*, Merriam-Webster, Injure, https://www.merriam-webster.com/dictionary/injure (last visited July 21, 2021).

The Restatement (Second) of Torts also "establishes a low threshold for the physical injury rule." *Sullivan v. Saint-Gobain Performance Plastics Co.*, 431 F. Supp. 3d 448, 454 (D. Vt. 2019). In Chapter 2 of the Restatement (Second) of Torts, "the drafters identified five 'interests' for which common law provides some measure of protection. The first and most highly protected is the 'interest in freedom from harmful bodily contacts.'" *Id.* "Section 15 of the Restatement defines 'bodily harm' in uncompromising terms: 'Bodily harm is any physical impairment of the condition of another's body, or physical pain or illness.'" *Id.* "Comment a develops the point further: '<u>There is an impairment of the physical condition of another's body if the structure or function of any part of the other's body is altered to any extent even though the alteration causes no harm</u>.'" *Id.* (emphasis added).

12

Under any definition of injury or harm, the tearing, slashing, rupturing, ripping, or perforating of a person's IVC by one or more struts of an IVC filter qualifies. *See McDowell v. Bos. Sci. Corp.*, 2018 WL 6182625 at * 2 (C.D. Ill. Nov. 27, 2018) (perforation of the vena cava by an IVC filter is a possible "serious health complication" suffered by plaintiff). Specifically, the defective device has protruded through Plaintiffs' caval wall, harming and undermining the integrity of this important vessel. (SSOF at ¶¶ 25-42, 47, 59.) Plaintiffs' perforations caused an injury response in the human body, resulting in bleeding that initiates a clotting cascade. (*Id.* at 28.) Fibroblast activation occurred. (*Id.* at 35.) Collagen in the wall of the IVC was exposed, further fueling a clotting cascade which can lead to active clot in the IVC. (*Id.* at ¶ 31.) Stated simply, Plaintiffs' bodies reacted to strut perforation just as they would to any other injury. (*Id.* at 32-33.)

This damage and response impair the ability of the IVC to function as intended. (Id. at 34.) The impact of strut perforation on the human body is sufficiently serious that the FDA cited it as a reason for recommending prompt removal of retrievable filters, within one to two months of implantation. (*Id.* at ¶¶ 67-72.) Plaintiffs have set forth evidence that raises a fact question as to whether they have suffered an injury under relevant state law.

### A. Cases with No Actual Physical Harm to a Person's Organ Are Distinguishable.

Defendants' reliance on *Metro-North Commuter Railroad Co. v. Buckley*, 521 U.S. 424 (1974), a case arising under the statutory rubric of the Federal Employees Liability Act and applying none of the tort law at issue in these cases, is improper. In *Metro-North*, the plaintiff was a railroad worker who, having been exposed to asbestos, but having had no physical impact or harm to his body, sued his employer for negligence infliction of emotional distress. *Id.* at 426-427. As a result of his exposure, plaintiff developed a fear of developing cancer, but his medical care did not reveal

any evidence of cancer or any other asbestos-related disease. *Id.* at 427. In *Metro-North*, plaintiff did not allege bodily harm, as he had none.

Defendants' reliance on *Perez v. B. Braun Med., Inc.*, 2018 WL 2316334 (S.D.N.Y. May 9, 2018), is also misplaced. In *Braun*, defendant moved to dismiss the plaintiff's case for failure to state a claim where plaintiff alleged her IVC filter "tilted." There, the Court, applying New York law, found that her complaint fell short in describing how the tilt of the filter, in and of itself, was injurious. By contrast, other cases have found injury sufficiently pled without requiring such detail in the allegations. *O'Neil v. Argon Medical Devices, Inc.*, 2020 WL 1149904 (N.D.N.Y. Feb. 13, 2020), *adopted in whole*, 2020 WL 1140511 (finding injury sufficiently pled where "plaintiff has alleged physical injury in the form of 'stomach pain' possibly 'attributable to a migrated device.'"). Here, each of the Plaintiffs subject to Defendants' Motion in this case has proven that the filter tore through their IVC, causing an injury response as described by Dr. Muehrcke.

Bodily harm, as opposed to emotional harm, which is capable of manipulation and multiple explanations, is demonstrated by "objective evidence of its existence." Restatement (Third) of Torts, § 4, cmt. b. Here, an injury to an organ—by tearing a hole through it—is an actual, ongoing physical injury to the claimant that is, for the moment perhaps, not causing additional complications for Parton. As stated above, the Supplemental CCFs and medical records submitted with them demonstrate the physical harm caused by the IVC filter to Plaintiffs.

### B. Cases Addressing Subcellular Changes Do Not Apply.

Defendants' attempt to equate Plaintiffs' tears in their IVCs to subcellular changes with no detrimental impact on the person's body falls flat. *Ford Motor Co. v. Miller*, 260 S.W.3d 515 (Tex. Ct. App. 2008), applies Michigan law in addressing injury following asbestos exposure, finding "the undisputed evidence shows only that Roland might get cancer in the future, and that is not a sufficient basis to support a recovery." *Id.* at 517. The court found that to be insufficient, as present injury

14

was needed under Michigan law. *Id.* Plaintiff belatedly argued he could "recover damages for his pleural plaques because the scarring has permanently altered his body." *Id.* at 518. The court found that the evidence only showed "mere physical change that is not detrimental." *Id.* Here, by contrast, a metal prong tearing a hole in the wall of a major blood vessel is detrimental, as recognized by the FDA and explained by Dr. Muehrcke.

In *Rainer v. Union Carbide Corp.*, 402 F.3d 608, 618-222 (6th Cir. 2005), *opinion amended on reh'g* (Mar. 25, 2005), plaintiffs exposed to uranium asserted that subcellular damage constituted injury, with experts testifying that "the misrepair of those DNA strands is analogous to a cutting wound of the tissue of the body." *Id.* at 613. However, "the evidence show[ed] that their DNA damage is harmful only insofar as it is predictive of future disease." *Id.* at 622. As a result, the court found it insufficient. *Id.* Here, Plaintiffs do not need to analogize to a cutting wound of the tissue of the body: Plaintiffs have an actual cutting wound to the tissue of the body. Further, "the most persuasive reason" for dismissing plaintiffs' claims in *Rainer* came from public policy considerations. The most notable concern, which has been articulated by the Kentucky Supreme Court, are the concerns of the "floodgate" of litigation since a "very large percentage" of the population are exposed to toxins and plaintiffs could state a viable claim by asserting "the most benign subcellular damage. *Id.* at 621. That is not an issue here, where a limited number of people have been surgically implanted with a medical device, which can be confirmed with medical records.

Defendants' reliance on *In re Rezulin Prods. Liab. Litig.*, a Southern District of New York case that applied Texas law in an MDL in which plaintiffs alleged damage to their mitochondria as a result of taking diabetes medication, suffers the same problem. 361 F. Supp. 2d 268 (S.D.N.Y. 2005). As in *Metro North*, the Texas plaintiffs in *Rezulin* claimed only emotional distress from fear of future injury. A subcellular injury that had no clinical detriment is in no way comparable to the

15

injury of a perforated IVC. Plaintiffs' medical records provide evidence of injury. Further, the policy issues raised in exposure cases distinguishes asbestos cases from the present case.

Regardless, other courts have found subcellular damage sufficient to create a fact question for the jury regarding injury. In *Brafford v. Susquehanna Corp.*, 586 F. Supp. 14 (D. Colo. 1984), the plaintiffs were exposed to waste materials emitted by a uranium milling facility. The trial judge declined to enter summary judgment in favor of the defendants, concluding that "plaintiffs have at least raised a question of fact with respect to whether a present injury in the form of chromosome damage was suffered by the plaintiffs as a result of their exposure to the radiation emitted from the mill tailings." *Id.* at 18.

### C. A Grade 2 Perforation Is a Sufficient Injury Under Kentucky Law.

Under Kentucky law, Plaintiff is required "to show some physical present injury." *Wood v. Wyeth-Ayerst Labs. Div. of Am. Home Prods.*, 82 S.W.3d 849, 852 (Ky. 2002). A case must be dismissed only if a plaintiff has shown no physical present injury. *Id.* at 859 (dismissing the plaintiff's claims because she alleged no present physical injury); *Capital Holding Corp. v. Bailey*, 87. S.W.2d 187, 195 (Ky. 1994) (finding the plaintiffs' negligence claim had not accrued because there was no present physical injury). "'There is an impairment of the physical condition of another's body if the structure or function of any part of the other's body if the structure or function of any part of the other's body is altered to any extent even though the alteration causes no other harm.'" *Vitale v. Henchey*, 24 S.W.3d 651, 658 (Ky. 2000) (citing Restatement 2nd, Torts § 15).

Unlike *Wood* and *Bailey*, in our case, Plaintiff has presented evidence of physical present injury. The extent of the injury is a question of fact for the jury to decide. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003).

### D. A Grade 2 Perforation Is a Sufficient Injury Under Texas Law.

Texas, consistent with the general common law rule, requires that "in order to be compensable in damages or otherwise actions wrongfully or negligently committed must have occasioned injurious consequences." *Campbell v. St. Paul Fire & Marine Ins.*, 480 S.W.2d 233, 235 (Tex. Civ. App. 1972). In Texas, the "physical structure of the body" in a tort context refers to "the whole, to the complex of perfectly integrated and interdependent bones, tissues and organs which function together by means of electrical, chemical and mechanical processes in a living, breathing, functioning individual." *Bailey v. American General Ins. Co.*, 279 S.W.2d 315, 318 (Tex. 1955). Any damage to the body organs or systems, such as a perforation of the IVC, is an injury under Texas law. Texas law does not, and never has, required that plaintiffs suffer additional symptoms in addition to objective physical harm to qualify as an injury. Parton's IVC filter punctured her IVC, impairing its function. Parton has raised a question of fact on the element of injury under Texas law.

Moreover, the Texas Supreme Court has made clear that "[i]t is our long-established rule that a plaintiff may recover damages for a disease that may develop in future years [] if the person establishes that there is a reasonable medical probability that the disease will appear." *Pustejovsky v. Rapid American Corp.*, 35 S.W.3d 643 (Tex. 2000). *See also Dartez v. Fibreboard Corp.*, 765 F.2d 456, 466 (5th Cir. 1985) (holding that plaintiff could recover damages for a disease that could develop in the future upon proof of reasonable medical probability that it would occur; finding standard unmet in asbestos case). IVC filter perforation is progressive, worsening over time. (SSOF at ¶¶ 73-83.) As the struts of Plaintiffs' filters continue to move farther outside the caval wall, they risk impacting other organs in the body. (*Id.*) Plaintiffs have established a factual dispute as to whether they have a reasonable medical probability of further harm from their IVC filters.

## IV. Questions Regarding the Nature and Extent of Injury Are for the Jury.

Plaintiffs have made an evidentiary showing of injury. Any further factual determinations regarding the extent of injury are for the jury to decide. "Appellant contends appellee's injuries were

17

slight and the present condition, if attributable to the original injury, is of a minor nature. The intensity of the suffering, however, whether great or slight, and the duration thereof were to be considered by the jury from all the evidence in reaching the amount of compensation." *Coca Cola Bottling Co. of Fort Worth v. McAlister*, 256 S.W.2d 654, 655 (Tex. Civ. App. 1953). *See also Sand Springs Ry. Co. v. McGrew*, 219 P. 111, 113 (Okla. 1932) ("'In personal injury actions, it is ordinarily a question of fact for the jury as to whether the plaintiff was injured, and the jury should decide also as to the nature and extent of the injury.'"); *Lewis v. Com. Ins. of Newark, N. J.*, 566 S.W.2d 98, 100 (Tex. Civ. App. 1978) ("As a general rule, the question of the extent and duration from an injury is a question for a jury."); *Kinnear v. Gen. Mills*, 32 N.E.2d 263, 266 (Mass. 1941) ("The extent of the plaintiff's injury and the sum that would fairly compensate her for it were questions of fact[.]").

## V. The Court's Rulings on Category 1 and 2 Cases Are Inapplicable.

Defendants improperly rely on this Court's May 1, 2019, dismissal of "Category 1" plaintiffs—plaintiffs whose filters were successfully removed on the first attempt and alleged no physical symptoms or filter complications during the time the filter was in place or during the retrieval process—and on June 13, 2019, dismissal of "Category 2" plaintiffs--plaintiffs who alleged had no physical injuries at all. None of those plaintiffs made the same claim as the Plaintiffs on this Motion: that the IVC filter had actually damaged an organ. Importantly, the Court did not grant judgment on the pleadings for all Category 2 plaintiffs, but rather granted judgment on the pleadings only as to seven Category 2 plaintiffs and took the motion under advisement as to far more plaintiffs. (Dkt. 11131, pp. 2-4.)

## CONCLUSION

Each Plaintiff subject to this motion has an IVC filter, a foreign metallic object, puncturing through (*i.e.*, tearing and causing holes in), the wall of her IVC, a major blood vessel of her body. The radiographic imaging provided with the Supplemental CCFs provides clear objective evidence

of the injury each Plaintiff suffered and continues to suffer. As explained above, further symptoms are not required to experience a physical injury to the body. Plaintiffs have provided evidence of injury. Any further question as to the extent or exact scope of that injury is for the jury. Accordingly, the Court should deny Defendants' Motion on Counts I through IV and Count VIII for Plaintiffs Sykes and Parton.

Dated: 7/23/21

Respectively submitted,

/s/ Paul L. Stoller
Paul L. Stoller
(Admitted *Pro Hac* Vice, AZ Bar No. 016773)
**DALIMONTE RUEB STOLLER, LLP**
2425 E. Camelback Road, Suite 500
Phoenix, Arizona 85016
Tel: (602) 888-2807
Fax: (855) 203-2035
paul@drlawllp.com

**Lead Counsel for Plaintiffs Shirley A. Parton and Teresa Sykes**

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 23, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

                                                     */s/ Paul L. Stoller*
                                                   Paul L. Stoller