IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates to:

Case No. 1:18-cv-03371 (Parton)
Case No. 1:19-cv-01167 (Sykes)

**COOK DEFENDANTS' REPLY MEMORANDUM
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT (DKT 13728)**

Plaintiffs Parton and Sykes argue that the question of whether their asymptomatic injuries are legally sufficient to sustain their actions is for a jury to decide. It is not. This is a question of law, and the law is clear that Plaintiffs cannot recover for strictly asymptomatic conditions, even if those conditions pose a risk of future injury. There is no jury question unless there is evidence that Plaintiffs' IVC filters have caused symptoms, and there is no such evidence before the Court. The Cook Defendants therefore respectfully request that the Court enter judgment in their favor.

**INTRODUCTION**

This motion began as a motion for judgment on the pleadings, based on Plaintiffs' categorization of their claims as "non-symptomatic" in their original Case Categorization Forms ("CCFs"). *See generally* Dkt. 13728. However, Plaintiffs successfully moved the Court to convert the motion into one for summary judgment so that they would have an opportunity to submit additional evidence. *See* Plaintiffs' July 17, 2020 Opposition, Dkt. 13816; Dkt. 18310 (Order

US.133923867.06

converting motion into motion for summary judgment).  Despite that procedural history, neither Plaintiff has submitted any actual *evidence* that her IVC filter has caused any symptoms.  Instead, they each have submitted a supplemental CCF that merely reclassifies the same exact claims under a new heading.  They first claimed their cases were Category 6 cases ("Non-Symptomatic Injury Cases"), and now they claim their cases are Category 7 cases ("Symptomatic Injury Cases").  *Compare* Dkt. 13729-1 (Plaintiff Parton's original CCF with medical record) and Dkt. 13729-4 (Plaintiff Sykes' original CCF with medical record) *with* Dkt. 19436 at 16-21 (Plaintiff Parton's supplemental CCF with medical record) and Dkt. 19436 at 5-10 (Plaintiff Sykes' supplemental CCF with medical record).  Yet, neither the new CCFs nor the attached medical records identify a single symptom that either Plaintiff claims to have experienced as a result of their filters or otherwise.  Plaintiff Sykes additionally offers a declaration in which she claims she has experienced abdominal pain for years and that one possible cause has been ruled out, but she notably does *not* state that the pain is related to her IVC filter or that anyone has advised her of any such link.  *See generally* Declaration of Teresa Sykes, Dkt. 19435-3.  Plaintiff Parton does not even go that far; she does not allege any symptoms at all, let alone any symptoms that are related to her filter.

Plaintiffs also submit a declaration by a cardiothoracic surgeon, Dr. Muehrcke, who purports to describe the body's tissue-level response to perforation and calls this an "injury."  *See generally* Declaration of Derek Muehrcke, M.D., FACS, Dkt. 19435-1 ("Muehrcke Decl.").  But he has previously testified that the same tissue-level response is an expected consequence of merely placing a filter in the IVC.  Excerpts of Deposition of Dr. Derek Muehrcke, February 1, 2020, *McDermitt v. Cook Incorporated et al.*, No. 1:18-cv-00946-RLY-TAB (S.D. Ind.) ("Mueh-

rcke Dep."), attached hereto as Exhibit 9,[1] at 184:1-12, 195:2-6, 269:12-23.  He therefore believes a patient is "injured" every single time an IVC filter is inserted.  *See id.* at 262:21-24.  But regardless of whether the routine inflammatory response Dr. Muehrcke describes is in fact an "injury" in the academic sense, it is not an "injury" in the legal sense.  Even Dr. Muehrcke does not claim that perforation is necessarily symptomatic; he merely claims that it causes expected tissue remodeling and that, in his view, it predisposes to "***future*** potential harms."  Muehrcke Decl. at ¶¶ 5-7 (emphasis added); *see also* Muehrcke Dep. at 257:22-258:2 (acknowledging that perforation can be asymptomatic).  Dr. Muehrcke's views are therefore irrelevant to this motion, because applicable law does not allow recovery for asymptomatic conditions.

Notwithstanding Plaintiffs' request that the Court give them an opportunity to submit evidence, the evidence they have submitted is irrelevant to the legal inquiry at hand.  And that inquiry shows that Plaintiffs simply do not allege a legally cognizable injury.

**I.    Kentucky Law Bars Plaintiff Parton from Recovering for Asymptomatic Perforation.**

As discussed in Cook's original motion, "[a] cause of action does not exist [under Kentucky Law] until the conduct causes injury that produces loss or damage."  *Wood v. Wyeth-Ayerst Labs.*, 82 S.W.3d 849, 852 (Ky. 2002) (quoting *Saylor v. Hall*, 497 S.W.2d 218, 225 (Ky. 1973)).  Only a "***present*** physical injury" is actionable.  *Wood*, 82 S.W.3d at 852 (emphasis added).  Thus, when asked if Kentucky precedent required "present physical symptoms or illness" as opposed to being "broadly inclusive of any subjective harm, present or anticipated," the *Wood* court concluded, ***as a matter of law***, that present physical symptoms or illness are required to sustain an action.  *Id.* at 854.

---

[1] Cook herein designates the Muehrcke Dep. as Cook's ninth exhibit, as eight exhibits were designated in Cook's moving papers.

US.133923867.06

Plaintiff Parton acknowledges that the cases concerning product liability claims require a "present physical injury" but says that this includes any alteration in the structure of a person's anatomy. *See* Plaintiffs' Opposition, Dkt. 19434, at 16. But the only case she cites for this proposition concerns the threshold level of harm that is required to sustain a claim of ***medical battery***—an intentional tort—not a product liability claim. *See id.* (quoting *Vitale v. Henchey*, 24 S.W.3d 651, 658 (Ky. 2000)). Not only are the metes and bounds of an actionable intentional tort claim irrelevant here,[2] but the quote she takes from *Vitale* comes from a section of the Restatement (Second) of Torts that only serves to reinforce Cook's argument that she has not suffered a legally cognizable injury. *See id.* "Bodily harm," as used in that section (Section 15), denotes the subset of "harm" that involves an impairment of the body. Restatement (Second) of Torts § 7 cmt. e (1965). But "harm" differs from "injury" in that harm "may not necessarily be the invasion of a legally protected interest." *Id.* at § 7 cmt. a. If there is no "injury"—i.e., "an invasion of a legally protected interest which, if it were the legal consequence of a tortious act, would entitle the person suffering the invasion to maintain an action of tort"—then any "harm" the plaintiff might have suffered is not legally actionable. *Id.* at § 7 cmts. a, d ("[H]arm . . . gives rise to a cause of action ***only*** when it results from the invasion of a legally protected interest, which is to say an injury." (emphasis added)). So, for example, while an unwanted touching may be sufficient to constitute a "harm" and also a cognizable "injury" for purposes of the intentional tort of battery, just "as much as blow which breaks the arm," *id*. at § 7 cmt. a, a mere unwanted touching would not be a cognizable injury for purposes of product liability—which, again, under Kentucky law requires "present physical symptoms or illness." In the same way, even if asymp-

---

[2] It is worth noting that *Vitale* was decided two years before *Wood*. *Wood* does not cite *Vitale*, underscoring *Vitale*'s inapplicability in product liability cases. But even if *Vitale* were on point, it would clearly be at odds with *Wood* and not apply in this context.

tomatic perforation meets the definition of "harm" as that term is used in Kentucky law concerning medical battery, it is nevertheless not an actionable "injury" under Kentucky product liability law.

Plaintiff Parton does not cite any other Kentucky law that supports her position. Although she cites several cases from other jurisdictions that apply different law, that law is inconsistent with Kentucky law and is not controlling here. Indeed, the Sixth Circuit has expressly noted that one of the cases she cites (*Brafford v.* Susquehanna, 586 F. Supp. 14 (D. Colo. 1984)) is inconsistent with Kentucky law. *Rainer v. Union Carbide Corp.*, 402 F.3d 608, 621 (6th Cir. 2005), *opinion amended on reh'g* (Mar. 25, 2005).

Plaintiffs also try to distinguish cases such as *Wood* and *Rainer*, which involved subcellular damage rather than tissue-level changes such as those described by Dr. Muehrcke. But Plaintiffs offer no principled basis for this distinction; indeed, as Plaintiffs note, *Rainer* expressly analogized between the DNA damage at issue therein and "a cutting wound of the tissue of the body." *See* Plaintiff's Opposition, Dkt. 19434, at 15. Their real argument is that, because they claim to have "a metal prong tearing a hole in the wall of a major blood vessel," their alleged injuries are *per se* symptomatic and therefore incomparable to asymptomatic subcellular damage. For reasons the Court will be familiar with, having presided over two trials, Cook takes issue with that characterization of perforation. But the Court need not consider that dispute, because Plaintiff's dramatic description of her alleged "injury" cannot substitute for what is lacking here: evidence of "present physical symptoms or illness," as required by the Kentucky Supreme Court in *Wood*. As will be shown below, Plaintiff Parton does not provide **evidence** that her filter is causing present symptoms or illness. She therefore has neither a legally recognized "injury" nor a cause of action.

## II.     Texas Law Bars Plaintiff Sykes from Recovering for Asymptomatic Perforation.

Like Kentucky law, "Texas law does not recognize a cause of action based solely upon an increased health risk, absent a manifested injury." *Martin v. Home Depot U.S.A., Inc.*, 369 F. Supp. 2d 887, 891 (W.D. Tex. 2005). The Texas Supreme Court, having considered the question of whether a claim "for fear of an increased risk of developing [a disease] when no disease is presently manifest" should be permitted, concluded, again *as a matter of law*, "that no such action should be recognized." *Temple-Inland Forest Prod. Corp. v. Carter*, 993 S.W.2d 88, 93 (Tex. 1999). In short, Texas does not recognize asymptomatic conditions as actionable "injuries."

The cases that Plaintiff Sykes cites confirm this bedrock principle. She begins with *Pustejovsky v. Rapid American Corporation*, which like *Temple-Inland* concerned asbestos-related diseases. However, she fails to note that *Pustejovsky* discussed *Temple-Inland* at length and repeated its observation that "allowing recovery for fear of a disease when the plaintiff has no symptoms results in systematic under-compensation of those who actually contract the disease, and a windfall for those who do not." *Pustejovsky*, 35 S.W.3d 643, 650 (Tex. 2000). The question in *Pustejovsky* was not whether an *asymptomatic* plaintiff could recover for risk of a future disease, but whether a plaintiff who had *already developed one asbestos-related disease* (asbestosis) was barred by the single-action rule from recovering for the subsequent development of *another* latent asbestos-related disease (mesothelioma). *See id.* at 644, 652. The plaintiff in *Pustejovsky* had previously developed a disease and sued in order to avoid forfeiting his claim, and the question before the court was merely whether his failure to seek future damages in that earlier action barred him from later recovering for a new disease in a second lawsuit. Indeed, the quote that Plaintiff cites comes from *Pustejovsky*'s discussion of the single-action rule and the particular exceptions that apply in the asbestos arena. *Id.* at 652. As noted in the cases cited in

the Cook Defendants' motion, the single-action rule provides a strong policy rationale for requiring present injury.  *See* Cook Defendants' Motion, Dkt. 13728, at 15-16 (noting that, even if an asymptomatic plaintiff somehow obtained a judgment, it would likely be minimal and would preclude future action in the event that a substantial injury later developed).  *Pustejovsky* does not disagree.

Plaintiff next cites *Dartez v. Fibreboard Corporation*, 765 F.2d 456 (5th Cir. 1985).  But in *Temple-Inland*, the Texas Supreme Court expressly disapproved of the Fifth Circuit's reasoning in *Dartez*:

> The court in *Dartez* also stated that it had previously decided in *Gideon v. Johns–Manville Sales Corp.* that Texas law would allow recovery of mental anguish damages for fear of future disease without a present physical injury. But the plaintiff in *Gideon* suffered from asbestosis and claimed a fear of developing mesothelioma. **Neither *Gideon* nor any Texas court decision supports the holding in *Dartez*.**

*Temple-Inland*, 993 S.W.2d at 94 (emphasis added).  This reiterates that, although a plaintiff may be able to recover for the possibility of future ***additional*** injury after having sustained one injury already, there can be no recovery for future injury without "a present physical injury."  Plaintiff Sykes, like Plaintiff Parton, cannot recover for a currently asymptomatic condition.

**III.     Neither Plaintiff Has Presented Evidence of Filter-Related Symptoms.**

Plaintiffs Parton and Sykes originally opposed Cook's motion on the ground that "use of the CCF is not relevant for any purpose other than 'complying with the Court's Order on the Cook Defendants' Motion for Screening Order and Bellwether Selection Plan only' and is inadmissible." Plaintiffs' July 17, 2020 Opposition, Dkt. 13816, at 1-2.  Nevertheless, they now seek to avoid summary judgment by submitting supplemental CCFs that do nothing more than move their previous claims of asymptomatic perforation from the Category 6 heading ("Non-Symptomatic Injury Cases") to the Category 7 heading ("Symptomatic Injury Cases").  *See*

Plaintiff Parton's Supplemental CCF, Dkt. 19436 at 16-21; Plaintiff Sykes' Supplemental CCF, Dkt. 19436 at 5-10.  Although these unverified, attorney-signed forms check a box that says "Symptomatic," neither the forms nor the attached medical records identify any symptoms that are alleged.  Where the form asks for a brief description of "any clinically significant/symptomatic injury diagnosed in a medical record," each form merely identifies the maximum alleged depth of perforation.  That is a radiological measurement, not a symptom.

For Plaintiff Parton, the road ends here.  Despite that her claim now faces summary judgment, she has submitted no evidence about her individual condition whatsoever—admissible or inadmissible—other than her supplemental CCF and the record attached to it.  She does not even claim to be experiencing symptoms; as she notes in her opposition, she alleges perforation "without other sequelae" and "is not presently experiencing symptoms" other than perforation.  Plaintiffs' July 23, 2021 Opposition, Dkt. 19434, at 11.  Her argument that the filter has "torn a hole in her IVC" is a red herring[3]; because Plaintiff Parton fails to offer evidence that the supposed "hole" in her IVC has resulted in even a single symptom, she does not have a claim.

Plaintiff Sykes goes one step further than Plaintiff Parton by providing a declaration indicating that (1) she has experienced constant abdominal pain since mid-2019, and (2) multiple hospitals have ruled out gallbladder issues as the cause of this pain.  Declaration of Teresa Sykes, Dkt. 19435-3.  However, she is missing a critical detail: she never claims even that she subjectively believes the pain is related to her filter, let alone that any qualified medical expert has suggested a connection.  *See id.*  This connection is not only missing from her declaration and her supplemental CCF, but also her arguments.  *See* Plaintiffs' July 23, 2021 Opposition, Dkt. 19434, at 6-7, 11 (discussing her abdominal pain without alleging a link to her filter).

---

[3] Again, as the Court knows from prior trials, this is an inaccurate description of perforation. However, because it is not critical to this motion, Cook leaves this argument for another day.

Plaintiffs specifically asked this Court a year ago, in July 2020, to convert the instant motion into a motion for summary judgment so that they could submit evidence. Yet, they still haven't submitted any evidence that their filters have caused any symptoms. Their asymptomatic claims thus are barred as a matter of law.

## IV. Dr. Muehrcke's Opinions Do Not Change the Analysis.

Plaintiffs submit a declaration from Dr. Muehrcke, a cardiothoracic surgeon, who offers opinions about the tissue-level response of the IVC to "[p]uncture of the IVC wall by an IVC filter" when a strut "traumatically exits the IVC." Muehrcke Decl., Dkt. 19435-1, at ¶¶ 2, 5. There are numerous problems with Dr. Muehrcke's declaration; he provides no references, he fails to distinguish between radiological penetration and the sort of traumatic through-and-through perforation he describes, and he gives no indication he has any qualifications relevant to the sort of pathological opinions he offers. But these problems can be ignored for present purposes, because one intractable and undeniable problem is dispositive here: he does not suggest that perforation, or even "[p]uncture of the IVC wall," causes any symptoms.

The only thing that Dr. Muehrcke says is common to all perforation is a temporary "hole in the IVC" that bleeds until the body's natural clotting cascade plugs the hole—a process he describes as beginning "immediately." *Id.* at ¶ 5. At no time does he suggest that a patient would feel this or that it would cause any symptoms. He goes on to suggests perforation "can" result in major bleeding if a patient is anticoagulated, or it "can" lead to active clot in the IVC that "can" cause thrombosis. *Id.* And he alleges that perforation "can" make retrieval of a filter more difficult and "increases the likelihood" of needing advanced retrieval techniques. *Id.* at ¶ 6. He finishes by noting that perforation "can" progress to interact with other structures around the IVC. *Id.* at ¶ 7. But these are all, in Dr. Muehrcke's own words, "future potential harms." *Id.* They

are not present symptoms or manifestations, which are the *sine qua non* of legally cognizable injuries under the law that governs Plaintiffs' claims.

Dr. Muehrcke does argue that "perforation of the IVC has caused an injury to the IVC." *Id.* But his deposition testimony from the *McDermitt* case proves that Dr. Muehrcke's use of the term "injury" bears no resemblance to that of Kentucky or Texas jurisprudence. He explained that the problem with perforation is that it causes endothelialization. Ex. 9, Muehrcke Dep. at 184:1-12. And Dr. Muehrcke considers endothelialization to be an "injury" because it is an inflammatory response, although "[y]ou may not have any symptoms at all." *Id.* at 269:12-23. But he also acknowledged that inflammation is an expected consequence of merely inserting an IVC filter and that inflammation is part of the mechanism by which a filter remains in place. *Id.* at 195:2-6. When asked whether he believed that a patient was "injured" every time an IVC filter is placed, he responded: "Every time you put an IV in a patient, they have an injury." *Id.* at 262:21-24. And, importantly, Dr. Muehrcke acknowledged that perforation can be asymptomatic:

> Q. Do you agree that perforation can sometimes be asymptomatic?
>
> A. Perforations can be asymptomatic.
>
> Q. Agree that asymptomatic patients don't always suffer a detrimental or clinical effect?
>
> A. Correct.

*Id.* at 257:22-258:2.

In short, Dr. Muehrcke concedes that perforation does not always cause symptoms. He identifies several "future potential harms" that he associates with perforation, but these are not present symptoms that could support a present cause of action. And he labels perforation an "injury," but he applies that same term to physiological responses that he acknowledges are both

expected and asymptomatic. His claim that perforation is an "injury" therefore does not imply that it causes present symptoms. Dr. Muehrcke's declaration does not change the fact that asymptomatic perforation is not an "injury" that is compensable under the law that governs Plaintiff Parton's and Plaintiff Sykes' cases.

## CONCLUSION

For the foregoing reasons and the reasons stated in Cook's original briefing, the Court should dismiss with prejudice Plaintiffs' product liability claims.

Respectfully submitted,

Dated: August 4, 2021

/s/ *Brian Paul*
Andrea Roberts Pierson, Co-Lead Counsel
Jessica Benson Cox
Brian Paul
FAEGRE DRINKER BIDDLE & REATH LLP
300 North Meridian Street, Suite 2500
Indianapolis, Indiana 46204
Telephone: (317) 237-0300
Andrea.Pierson@FaegreDrinker.com
Jessica.Cox@FaegreDrinker.com

James Stephen Bennett, Co-Lead Counsel
FAEGRE DRINKER BIDDLE & REATH LLP
110 West Berry Street, Suite 2400
Fort Wayne, Indiana 46802
Telephone: (260) 424-8000
Stephen.Bennett@FaegreDrinker.com

*Attorneys for Defendants Cook Incorporated, Cook Medical LLC, and William Cook Europe ApS*

US.133923867.06

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2021, a copy of the foregoing **COOK DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT** was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.

/s/ Brian Paul