IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC, IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |
| This Document Relates to Plaintiff(s)<br><br>DORTHY RITTER PHILLIPS<br><br>Civil Case # 1:18-CV-3448-RLY-TAB | Plaintiff Demands a Trial by Jury |

**FIRST AMENDED SHORT FORM COMPLAINT**

Plaintiff Dorothy Ritter Phillips, by counsel, files this First Amended Short Form Complaint against the Defendants named below and incorporates, by reference, The Master Complaint filed in MDL No. 2570 (Document213). Plaintiff states as follows:

1. Plaintiff/Deceased Party:

    Dorthy Ritter Phillips

2. Spousal Plaintiff/Deceased Party's spouse or other party making loss of consortium claim:

    Not applicable

3. Other Plaintiff and capacity (i.e., administrator, executor, guardian, conservator):

    Not applicable

4. Plaintiff's/Deceased Party's state of residence at the time of implant:

   North Carolina

5. Plaintiff's/Deceased Party's state of residence at the time of injury:

   North Carolina

6. Plaintiff's/Deceased Party's current state of residence:

   North Carolina

7. District Court and Division in which venue would be proper absent direct filing:

   Middle District of North Carolina

8. Defendants (Check Defendants against whom Complaint is made):

   Cook Incorporated

   Cook Medical LLC

   William Cook Europe ApS

9. Basis of Jurisdiction:

   Diversity of Citizenship

   Other:

a. Paragraphs in Master Complaint upon which venue and jurisdiction lie:

   Paragraphs 6-28, inclusive

b. Other allegations of jurisdiction and venue:

10. Defendants' Inferior Vena Cava Filter(s) about which Plaintiff(s) is making a claim (Check applicable Inferior Vena Cava Filters):

    Gunter Tulip® Vena Cava Filter

    Cook Celect ® Vena Cave Filter

    Gunther Tulip Mreye

    Cook Celect Platinum

    Other:

11. Date of Implantation as to each product:

    On or about June 3, 2015

12. Hospital(s) where Plaintiff was implanted (including City and State):

    Moore Regional Hospital in Pinehurst, North Carolina

13. Implanting Physician(s):

    Joseph M. Allen, MD, Dictating and Releasing Physician

    Peter J. Vassallo, MD, Ordering and Admitting Physician

14. Counts in the Master Complaint brought by Plaintiff(s):

    Count I:    Strict Products Liability – Failure to Warn

    Count II:    Strict Products Liability – Design Defect

    Count III:    Negligence

    Count IV:    Negligence Per Se

    Count V:    Breach of Express Warranty

    Count VI:    Breach of Implied Warranty

| | |
|---|---|
| Count VII: | Violations of Applicable North Carolina Law Prohibiting Consumer Fraud and Unfair and Deceptive Trade Practices. Plaintiff seeks recovery, including for all applicable damages and penalties available under N.C.G.S. §§75-16 and 75-16.1, including treble damages; attorneys' fees; and any other recovery this Court deems appropriate.<br><br>Plaintiff sets forth particular allegations for consumer fraud and unfair and deceptive trade practices in Paragraph 15, below. |
| Count VIII: | Loss of Consortium |
| Count IX: | Wrongful Death |
| Count X: | Survival |
| Count XI: | Punitive Damages |
| Other: | <u>All other counts and claims for Relief set forth in the Master Complaint for an amount to be determined by the trier.</u> |
| Other: | _____ (please state the facts |

supporting this Count in the space, immediately below)

15. As to Count VII, Violations of Applicable North Carolina Law Prohibiting Consumer Fraud and Unfair and Deceptive Trade Practices, Plaintiff more particularly states as follows:

   (a) Cook Medical, LLC (f/k/a Cook Medical Incorporated), Cook Incorporated, and William Cook Europe ApS developed the design for their Celect IVC Filter from their Gunther Tulip IVC Filter ("Tulip"), by removing or releasing the "petals" from the Tulip.

   (b) As early as 2002, Cook Medical, LLC's (f/k/a Cook Medical Incorporated), Cook Incorporated's, and William Cook Europe ApS' engineers, responsible for the development of Cook's IVC filters, explained that, if Cook removed or released the "petals" from the Tulip, the filter would have an increased propensity to perforate.

   (c) Further, in 2006, Cook Medical, LLC (f/k/a Cook Medical Incorporated), Cook Incorporated, and William Cook Europe ApS concluded that safety concerns related to removing the petals from the Tulip to create the Celect outweighed the filter's benefits. This express finding was included in an "Executive

4

    Summary" prepared for Cook Medical, LLC's (f/k/a Cook Medical Incorporated), Cook Incorporated's, and William Cook Europe ApS' executives.

(d) Notwithstanding, in 2008, Cook Medical, LLC (f/k/a Cook Medical Incorporated), Cook Incorporated, and William Cook Europe ApS released the Celect to market.

(e) Immediately following the Celect's release to market, Cook Medical, LLC (f/k/a Cook Medical Incorporated), Cook Incorporated, and William Cook Europe ApS internally expressed grave concerns for the Celect's tendency to perforate. In March 2008, Annette Lunberg (a Cook employee) advised Cook Medical, LLC (f/k/a Cook Medical Incorporated), Cook Incorporated, and William Cook Europe ApS' Head of Global Marketing about rising concerns regarding increasing rates of complaints related to Celect perforation.

(f) Despite its express concerns regarding adverse events, Cook Medical, LLC (f/k/a Cook Medical Incorporated), Cook Incorporated, and William Cook Europe ApS concealed the Celect filter's flawed design, and its failures, from the medical and scientific communities and from Plaintiff.

(g) Cook affirmatively concealed the true results of the only Celect filter human trial. More specifically, Cook Medical, LLC (f/k/a Cook Medical Incorporated), Cook Incorporated, and William Cook Europe ApS falsely reported that no patient experienced a perforation or penetration associated with filter use.

(h) Jen Brown, Cook's MEDI Director of Scientific Affairs for Venous Therapies and author of the human trial, peer-reviewed publication, falsely reported that no perforations occurred in the study. In fact, there were a number of perforations that occurred in the study.

(i) Additionally, when conducting the human trial, Cook Medical, LLC (f/k/a Cook Medical Incorporated), Cook Incorporated, and/or William Cook Europe ApS directed its study investigators to only report perforations when a concurrent hemorrhage or hematoma occurred. However, Cook Medical, LLC (f/k/a Cook Medical Incorporated), Cook Incorporated, and/or William Cook Europe ApS reported a very different definition for perforation in the publication, *i.e.*, that a perforation included any strut outside the IVC wall, whether or not hemorrhage or hematoma occurred.

(j) Cook Medical, LLC (f/k/a Cook Medical Incorporated), Cook Incorporated, and/or William Cook Europe ApS also concealed other adverse events, namely deep vein thrombosis ("DVT"), IVC thrombosis, and IVC narrowing. During the human trial, Cook study investigators reported each of these adverse events.

(k) In or about 2008, Cook internally communicated that perforation was the Celect filter's "Achilles' heel."

(l) Lykke Iverson (another Cook employee) confirmed that the complaint rate for Celect perforation was 15 times higher than that for the Tulip.

(m) Cook continued to conceal its knowledge regarding Cook's perforation rates, as well as perforation complaints, from the medical and scientific communities and from Plaintiff.

(n) Harlan Krumholz, cardiologist and scientist and Yale New Haven Hospital and professor of medicine at Yale School of Medicine, concluded that Cook's human trial study had design flaws and was poorly conducted. Dr. Krumholz further noted that the study had a poor outcome assessment, contained selective and misleading reporting, withheld critically important safety information, and misrepresented data.

(o) Jen Brown and Ted Heise—Cook Vice President of Regulatory Affairs—were aware of, and actively concealed, the study's flawed design.

(p) Cook's marketing department, including Bruce Fleck and others, circulated the published human trial study, including the above misrepresentations and concealments, to the medical and scientific communities, demonstrating Cook Medical, LLC's (f/k/a Cook Medical Incorporated), Cook Incorporated's, and William Cook Europe ApS' intent to promote sales of the Celect by concealing critical safety information.

(q) The Celect's Instructions for Use ("IFU") states that there were no device-related major adverse events and *zero* perforations in the filter's only human study, thus, concealing the filter's perforation and other safety issues shown by the study.

(r) Cook Medical, LLC (f/k/a Cook Medical Incorporated), Cook Incorporated, and William Cook Europe ApS failed to mention tilt in the Celect IFU.

(s) The IFU concealed Cook Medical, LLC's (f/k/a Cook Medical Incorporated), Cook Incorporated's, and William Cook Europe ApS' awareness of increasing trends for symptomatic adverse events, demonstrated by adverse event report compilations.

(t) Cook Medical, LLC (f/k/a Cook Medical Incorporated), Cook Incorporated, and William Cook Europe ApS concealed their awareness regarding Celect perforation and penetration propensity related to the Tulip-Celect design modification. Cook Medical, LLC (f/k/a Cook Medical Incorporated), Cook Incorporated, and/or William Cook Europe ApS concealed, by IFU omission,

6

(u) other information regarding adverse event nature, frequency, and severity associated with the Celect filter.

(u) Despite their knowledge, and continuing receipt of new information demonstrating Celect dangers, Cook Medical, LLC (f/k/a Cook Medical Incorporated), Cook Incorporated, and William Cook Europe ApS deliberately chose *not* to update the Celect IFU.

(v) The IFU was provided concomitant to the sale of any and all Celect filters and was available for review by the medical and scientific communities and by Plaintiff.

(w) Cook Medical, LLC (f/k/a Cook Medical Incorporated), Cook Incorporated, and William Cook Europe ApS aggressively marketed the Celect filter as efficacious without any efficacy evidence.

(x) As early as 2007, James Gardner, M.D., Cook Medical LLC's Director of Reimbursement/Medical Science Officer, alerted Cook Medical, LLC that there was no evidence that IVC filters actually work. Dr. Gardner specifically stated, "[M]y greatest concern at the moment is that payers are going to take a good, hard look at IVC filter placement and whether any clinical evidence exists to demonstrate it really saves lives or improves patient outcomes in other ways." He further admitted concern that "there's not a lot of clinical evidence that demonstrates these filters actually improve patient outcomes."

(y) Dr. Gardner's concerns arose in terms of reimbursement, versus safety: "My concern, which I've shared with a couple of you over the last couple years, is that one day the payers (*i.e.*, Medicare, Medicaid, commercial plans, etc.) are going to realize they are spending an increasing amount of money on the placement and retrieval of IVC filters and that there's not a lot of clinical evidence that demonstrates these filters actually improve patient outcomes."

(z) Dr. Gardner further stated that the only way to determine efficacy would e to conduct a clinical but that "I'm not suggesting we go down that path." Instead, Dr. Gardner informs, "I am keeping a close eye on payers' medical policies to see if/when this hits their radar screens."

(aa) In 2009, Dr. Gardner again expressed his concerns regarding efficacy evidence: "[A]s Cook's Director of Reimbursement, I've been very surprised that payers in this country haven't raised questions about whether they should pay for IVC filter placements (and retrievals), given the # of procedures being performed and the paucity of data supporting these procedures."

(bb) Again in 2010, Dr. Gardner shared with Cook Medical, LLC (f/k/a Cook Medical Incorporated), Cook Incorporated, and/or William Cook Europe ApS

7

the same information. And, again in 2013, Dr. Gardner confirmed, "There's never been strong evidence supporting IVC filter use."

(cc) At all relevant times, Cook Medical, LLC (f/k/a Cook Medical Incorporated), Cook Incorporated, and William Cook Europe ApS concealed their knowledge regarding lack of efficacy evidence, including the above facts, from the medical and scientific communities and from Plaintiff.

(dd) Through the Celect filter's life-cycle, Cook Medical, LLC (f/k/a Cook Medical Incorporated), Cook Incorporated, and William Cook Europe ApS concealed their knowledge that the Celect filter was *not* associated with significant decrease of pulmonary embolism or subsequent pulmonary embolism, pulmonary embolism-related mortality, or all-cause mortality.

(ee) Cook Medical, LLC (f/k/a Cook Medical Incorporated), Cook Incorporated, and William Cook Europe ApS concealed their knowledge regarding the frequency of retrievability failures.

(ff) Cook Medical, LLC (f/k/a Cook Medical Incorporated), Cook Incorporated, and William Cook Europe ApS marketed the Celect filter so as to stimulate sales despite, and without reference to, safety issues. Cook Medical, LLC (f/k/a Cook Medical Incorporated), Cook Incorporated, and William Cook Europe ApS designed its marketing efforts to conceal important information about Celect-related adverse events.

(gg) Rita Harden, Cook Medical, LLC (f/k/a Cook Medical Incorporated), Cook Incorporated, and William Cook Europe ApS representative, confirmed that she and other Cook agents, including Tom Roberts, were aware of adverse events that should have been reported to the FDA, but were not, as was Cook Medical, LLC's (f/k/a Cook Medical Incorporated), Cook Incorporated's, and William Cook Europe ApS' intention and design.

(hh) This concealment further misled the medical and scientific communities by lowering the number of adverse events entered in the MAUDE database.

(ii) Cook employee, Bruce Fleck, then encouraged the Cook sales teams to refer providers, and other medical and scientific community members, to the MAUDE database, so as to mislead providers and others regarding Celect's adverse event reports, compared to competitors.

(jj) Cook Medical, LLC (f/k/a Cook Medical Incorporated), Cook Incorporated, and William Cook Europe ApS further concealed that sales force income, career advancement, and other employment-related success was tied directly to the number of filters sold.

8

(kk) Cook affirmatively suppressed, omitted, concealed, and failed to disclose material information about the Celect filter's known adverse events and lack of efficacy, including lack of efficacy evidence, in the Celect "Patient Guide."

(ll) The Patient Guide conceals the known nature, frequency, and extent of serious failure modes and associated events with the Celect filter.

(mm) The Patient Guide conceals the severity and frequency of embedded filters, and residual injuries, that Cook Medical, LLC (f/k/a Cook Medical Incorporated), Cook Incorporated, and William Cook Europe ApS knew to be associated with the Celect filter.

(nn) The Patient Guide conceals known rates of Celect filter perforation and penetration.

(oo) The Patient Guide conceals adverse event information reported to Cook Medical, LLC (f/k/a Cook Medical Incorporated), Cook Incorporated, and William Cook Europe ApS, that Celect-associated perforation was 15 times more frequent than Tulip-associated perforation.

(pp) The Patient Guide conceals that Celect-associated deaths exceeded those reported for competitor products.

(qq) The Patient Guide conceals Cook Medical, LLC's (f/k/a Cook Medical Incorporated), Cook Incorporated's, and William Cook Europe ApS' about retrievability problems.

(rr) This concealment deprived Plaintiff and her physicians of the data needed to conduct an informed risk-benefit analysis. The concealment further deprived Plaintiff of the information needed to discover a potential cause of action against Cook Medical, LLC (f/k/a Cook Medical Incorporated), Cook Incorporated, and William Cook Europe ApS.

(ss) Defendants Cook Medical's, LLC (f/k/a Cook Medical Incorporated), Cook Incorporated's, and William Cook Europe ApS' knowledge and concealment of adverse events, such as tilt, perforation, and retrieveal problems caused by its Celect filter, as well as the Cook Medical Science Officer's knowledge and concealment about the lack of efficacy of the Celect and its other IVC filters, were not included in the company's instructions for use (IFU) that accompanied the product when it was implanted in Plaintiff.

(tt) Defendants Cook Medical, LLC (f/k/a Cook Medical Incorporated), Cook Incorporated, and William Cook Europe ApS did not study, or know, whether or not the Celect actually prevents pulmonary embolism. Yet, Defendants Cook Medical, LLC (f/k/a Cook Medical Incorporated), Cook Incorporated, and William Cook Europe ApS represented that pulmonary embolism

prevention was the purpose of the device.  This knowledge as to lack of efficacy was not relayed to doctors, including Plaintiff's implanting doctors, Drs. Peter J. Vassallo and Allen Joseph, and subsequent treating doctors.

(uu)   Upon information and belief, Drs. Vassallo and Joseph read and relied upon the Celect IFU.

(vv) Upon information and belief, Drs. Vassallo and Joseph read, and relied upon, the Celect marketing materials, which specifically targeted vascular physicians, like Drs. Vassallo and Joseph, with the intention that such physicians, including Drs. Vassallo and Joseph, would read and rely upon Defendants Cook Medical, LLC's, Cook Incorporated's, and William Cook Europe ApS' marketing statements and omissions and, thereby, seek out and use the Celect filter in patients, including Plaintiff.

(ww)   Doctors cannot communicate what they do not know to their patients. Accordingly, Defendants Cook Medical, LLC's, Cook Incorporated's, and William Cook Europe ApS' knowledge regarding lack of clinical evidence that the Celect filter actually improved patient outcomes and Defendants Cook Medical, LLC's, Cook Incorporated's, and William Cook Europe ApS' suppression of adverse events were not communicated to patients, including Plaintiff.

(xx) Additionally, Defendants Cook Medical, LLC, Cook Incorporated, and William Cook Europe ApS did not study the safety or efficacy of the Celect filter as a long-term or permanent device.  This fact also was not relayed by Defendant Cook Medical, LLC, Defendant Cook Incorporated, or Defendant William Cook Europe ApS to Drs. Vassallo and Joseph and, thereby, Plaintiff.

(yy) In 2015, Plaintiff consulted with Dr. Vassallo, who prescribed Plaintiff an inferior vena cava filter.  On June 3, 2015, Drs. Vassallo and Joseph implanted in Plaintiff a Celcect vena cava filter, Product ID IGTCFS—65—1—FEM—CELECT-PT, Lot Number E3315098.  In reliance on the Celect IFU, Drs. Vassallo advised Plaintiff that the filter would help prevent pulmonary embolism and had low risks.  Further, in reliance on the IFU, Plaintiff was advised that the filter could be safely retrieved.

(zz) Drs. Vassallo and Joseph implanted, and Plaintiff agreed to have implanted, the Celect filter in reliance on Defendant Cook Medical, LLC's, Defendant Cook Incorporated's, and Defendant William Cook Europe ApS' statements and omissions, including those in the Celect IFU.

(aaa)   In 2016, Dr. Michael Batalo prescribed removal of Plaintiff's IVC filter, which Dr. David Furie attempted on February 24, 2016. Dr. Furie reported that removal of Plaintiff's Celect IVC filter was "unsuccessful."  "Lateral images show the hook of the filter along the posterior wall of the inferior vena cava.

10

      This prevented the snares from engaging the hook…" Dr. Furie also noted that he was unable to remove the IVC filter because "the hook of the filter has *likely* been endothelialized along the posterior wall of the inferior vena cava."

(bbb)  Dr. Furie further noted, "[T]he patient was upset that the filter could not be removed. She indicated that 3 doctors told her that the filter needed to be taken out. I explained the positioning of the filter and possible endothelialization of the hook were the reasons for our inability to remove the filter."

(ccc)  Due to the inability to remove Defendants' "retrievable" filter, the filter remained inside Plaintiff, and still remains inside Plaintiff.

(ddd)  Following removal, Plaintiff exhibited chest pain and pressure, with "vibratory" sensation and shortness of breath. Dr. Furie noted, "Patient [with] atypical chest pain and shortness of breath. The symptoms occurred after manipulation and attempted withdrawal of IVC filter which was unsuccessful."

(eee)  In March 2017, with Defendants' filter still implanted, Plaintiff suffered "pulmonary emboli" and deep vein thrombosis. "IVC filter was sideways in the vein rather than perpendicular to the vein hence why the clots had access."

(fff)  In or about 2018, Plaintiff first learned through legal consultation that Defendant Cook Medical, LLC, Defendant Cook Incorporated, and Defendant William Cook Europe ApS knew, at the time its Celect filter was marketed and implanted in Plaintiff in 2015, and thereafter, that the filter lacked efficacy evidence.

(ggg)  In or about 2018, Plaintiff first learned through legal consultation that, at the time Defendants Cook Medical, LLC, Cook Incorporated, and William Cook Europe ApS' Celect filter was marketed and implanted in Plaintiff in 2015, and thereafter, Defendants Cook Medical, LLC, Cook Incorporated, and William Cook Europe ApS had concealed its knowledge regarding adverse events associated with the Celect filter, including those caused to Plaintiff.

(hhh)  In or about 2018, Plaintiff first learned that Defendants Cook Medical, LLC, Cook Incorporated, or William Cook Europe ApS had not studied the safety or efficacy of the Celect filter as a long-term, or permanent device, at the time that Defendants Cook Medical, LLC, Cook Incorporated, or William Cook Europe ApS marketed its Celect filter, and it was implanted in Plaintiff, in 2015.

(iii)  In February 2019, there was a global recall of the Celect IFU. The updated IFU now warns doctors of the risks of tilt, perforation and difficulty in removing the device.

16. Attorney for Plaintiff(s):

    <u>Richard S. Lewis, Steven Rotman, Colleen Ryf of Hausfeld, LLP; Ricky K. Patel</u>

    <u>of Farrell, Patel, Jomarron & Lopez.</u>

17. Address and bar information for Attorney for Plaintiff(s):

    Richard S. Lewis, Washington DC Bar No.: 414261
    Steven Rotman, Massachusetts Bar No.: 558473
    Colleen Ryf, Washington D.C. Bar No.: 1601824
    HAUSFELD LLP
    888 16th Street NW, Suite 300
    Washington, DC 20006
    Telephone:  (202) 540-7200
    Facsimile:  (202) 540-7201
    Email: rslewis@hausfeld.com
    Email: srotman@hausfeld.com
    Email: cryf@hausfeld.com

    and

    Ricky Patel, Esquire
    Farrell, Patel, Jomarron & Lopez
    4300 Biscayne Blvd., Suite 305
    Miami, FL 33137
    Telephone: (305) 300-3000
    Facsimile: (305) 717-7539
    Email: rpatel@floridaatorney.com

PLAINTIFF DEMANDS A TRIAL BY JURY

Dated:  September 30, 2021                          Respectfully submitted,

                                                    By:  <u>*/s/ Richard S. Lewis*</u>
                                                         Richard S. Lewis
                                                         Steven Rotman
                                                         Colleen Ryf
                                                         HAUSFELD LLP
                                                         888 16th Street NW, Suite 300
                                                         Washington, DC 2000
                                                         Telephone: (202) 540-7200
                                                         Facsimile: (202) 540-7201
                                                         Email: rslewis@hausfeld.com
                                                         Email: srotman@hausfeld.com

Email: cryf@hausfeld.com
&

Ricky Patel, Esquire
Farrell, Patel, Jomarron & Lopez
4300 Biscayne Blvd., Suite 305
Miami, FL 33137
Telephone: (305) 300-3000
Facsimile: (305) 717-7539
Email: rpatel@floridaatorney.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2021, a copy of the foregoing was served electronically and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.

*/s/ Richard S. Lewis*