# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

January 7, 2022

To: Roger A. G. Sharpe
UNITED STATES DISTRICT COURT
Southern District of Indiana
United States Courthouse
Indianapolis, IN 46204-0000

| No. 20-3103 | IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION<br><br>APPEAL OF: VICTORIA LOOPER |
|---|---|
| No. 20-3104 | IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION<br><br>APPEAL OF: SAMMIE LAMBERT |

| **Originating Case Information:** |
|---|
| District Court No: 1:16-cv-03510-RLY-TAB<br>Southern District of Indiana, Indianapolis Division<br>District Judge Richard L. Young |
| **Originating Case Information:** |
| District Court No: 1:14-ml-02570-RLY-TAB<br>Southern District of Indiana, Indianapolis Division<br>District Judge Richard L. Young |
| **Originating Case Information:** |
| District Court No: 1:19-cv-02561-RLY-TAB<br>Southern District of Indiana, Indianapolis Division |

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:                               No record to be returned

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

**FINAL JUDGMENT**

December 16, 2021

**CERTIFIED COPY**

A True Copy

Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

Before

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

| | |
|---|---|
| No. 20-3103 | VICTORIA LOOPER,<br>     Plaintiff – Appellant<br>v.<br>COOK INCORPORATED, et al.,<br>     Defendants – Appellees. |
| No. 20-3104 | SAMMIE LAMBERT,<br>     Plaintiff – Appellant,<br>v.<br>COOK INCORPORATED, et al.,<br>     Defendants – Appellees. |
| **Originating Case Information:** | |
| District Court Nos: 1:16-cv-03510-RLY-TAB & 1:19-cv-02561-RLY-TAB<br>Southern District of Indiana, Indianapolis Division<br>District Judge Richard L. Young | |

The judgments of the District Court are REVERSED, with costs, and these two cases are REMANDED to the district court for further proceedings consistent with the opinion.

The above is in accordance with the decision of this court entered on this date.

In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 20-3103

VICTORIA LOOPER,

*Plaintiff-Appellant,*

*v.*

COOK INCORPORATED, et al.,

*Defendants-Appellees.*

_____

No. 20-3104

SAMMIE LAMBERT,

*Plaintiff-Appellant,*

*v.*

COOK INCORPORATED, et al.,

*Defendants-Appellees.*

_____

Appeals from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
Nos. 1:16-cv-03510 & 1:19-cv-02561 — **Richard L. Young**, *Judge.*

_____

ARGUED SEPTEMBER 9, 2021 — DECIDED DECEMBER 16, 2021

_____

2                                                   Nos. 20-3103 & 20-3104

Before KANNE, HAMILTON, and ST. EVE, *Circuit Judges*.

HAMILTON, *Circuit Judge*. These two consolidated appeals
raise issues about how the common practice of "direct filing"
in multidistrict litigation may affect the choice of law in indi-
vidual cases within the larger MDL. The Judicial Panel on
Multidistrict Litigation asked Judge Richard L. Young of the
Southern District of Indiana to oversee a multidistrict litiga-
tion docket to coordinate discovery and other pretrial pro-
ceedings in thousands of medical product-liability suits
against Cook Incorporated and related entities alleging that
Cook's inferior vena cava (IVC) filters were defective. See 28
U.S.C. § 1407.

The court and the parties agreed in practice to a procedure
by which new plaintiffs could join the MDL by filing directly
in the Southern District of Indiana rather than filing in their
home districts and waiting for the judiciary's administrative
machinery to transfer their cases to the MDL in the Southern
District of Indiana. As we explain below, the choice between
such direct filing and waiting for a transfer may affect the
choice of law in the case, among other legal issues.

In these appeals, plaintiffs Victoria Looper and Sammie
Lambert filed their lawsuits directly in the MDL court in In-
diana rather than filing in the states where they lived and had
the IVC filters implanted and then waiting for their cases to
be "tagged" and transferred by the Judicial Panel on Multi-
district Litigation. Cook moved to dismiss both cases based
on Indiana's two-year statute of limitations for personal in-
jury actions. Looper's and Lambert's home states (South Car-
olina and Mississippi) have three-year statutes. If the South
Carolina and Mississippi statutes apply, their cases were
timely. If the Indiana statute governs, as Cook argues and the

district court held, Looper and Lambert filed their cases too late.

The appeals raise questions that have broad implications for MDL courts that endorse direct filing for the sake of efficiency. The dispute here shows the need for care and clarity up front in adopting direct filing. In these appeals, however, we do not need to reach sweeping conclusions on the subject. The unusual course of events in the district court—on this issue, first Cook and then the district court changed course 180 degrees in the midst of the MDL—showed that Cook implicitly consented to using choice-of-law rules for these plaintiffs as if they had filed in their home states. The district court might well have discretion to allow Cook to change positions prospectively, but it was not fair to allow Cook to change positions retroactively to dismiss these plaintiffs' cases that had been timely filed under what the district court had accurately called the "law of the case." We therefore reverse the judgments in favor of Cook in these two appeals and remand for further proceedings in the district court.

To explain our decision, we first lay out the governing legal principles for choice of law in diversity-jurisdiction cases that are transferred, and then the basics of multidistrict litigation and the practice of direct filing. We then turn to the unusual course of relevant events that persuades us that Cook consented to using home-state choice-of-law principles for these cases filed directly in the MDL venue.

I.   *Legal Standards*

A.   *General Choice-of-Law Rules*

We start with first principles. Absent the parties' consent to a different approach, a federal court exercising its diversity

4                                    Nos. 20-3103 & 20-3104

jurisdiction over state-law claims ordinarily applies the
choice-of-law rules of the state in which it sits. *Klaxon Co. v.
Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941).
When a district court with proper venue transfers a civil case
to another district court, the transferee court will apply the
choice-of-law rules of the state where the transferor court sits.
*Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) ("A change of
venue under [28 U.S.C. § 1404(a)] generally should be, with
respect to state law, but a change of courtrooms."). We review
de novo a district court's choice of law. *Auto-Owners Insurance
Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 546 (7th Cir. 2009).

B. *Choice of Law in MDLs*

The path a diversity-jurisdiction case takes to join a multi-
district litigation can affect which state's choice-of-law princi-
ples govern the dispute. Take so-called "tag-along" actions.
There, a plaintiff files a case that shares a common question of
fact with the cases that are already part of the multidistrict
litigation, but files in a district other than the MDL court. After
the Judicial Panel on Multidistrict Litigation is notified of the
case, the Panel then "tags" it as part of the MDL and transfers
it to the transferee judge for all pretrial proceedings, barring
any successful objections. See 28 U.S.C. § 1407(a) & (c); An-
drew D. Bradt, *The Shortest Distance: Direct Filing and Choice of
Law in Multidistrict Litigation*, 88 Notre Dame L. Rev. 759, 795
(2012). Importantly, a tagged case preserves the choice-of-law
rules of its originating jurisdiction. *Chang v. Baxter Healthcare
Corp.*, 599 F.3d 728, 732 (7th Cir. 2010) (collecting cases apply-
ing *Klaxon* and *Van Dusen* in MDLs).

A different path for plaintiffs may be to file directly in the
MDL court. Over more than fifty years of multidistrict litiga-
tion under § 1407, federal courts have worked with parties

Nos. 20-3103 & 20-3104                                5

and their counsel to develop "specialized procedures to man-age the pretrial proceedings in the related cases." *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 488 (7th Cir. 2020); see also Abbe R. Gluck, *Unorthodox Civil Procedure: Modern Multidistrict Litigation's Place in the Textbook Understandings of Procedure*, 165 U. Pa. L. Rev. 1669, 1672, 1688–93 (2017) (noting that 39 percent of all open civil cases on federal dockets are in MDLs, and analyzing custom-tailored procedures often used in MDLs); Bradt, 88 Notre Dame L. Rev. at 788–89; Eldon E. Fallon et al., *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2328 (2008).

A direct-filing order is one such procedure. Direct filing eliminates the need for plaintiffs to file their cases in their home jurisdictions (or other valid forums apart from the MDL court) and then wait for their cases to be tagged and later transferred to the MDL transferee court. Instead, once the transferee judge institutes direct filing—typically through an agreed case management order—plaintiffs can file directly in the MDL court, avoiding the delays in the tag-along process.

Direct filing can be a useful tool in managing multidistrict litigation because it "eliminates the judicial inefficiency that results from two separate clerk's offices having to docket and maintain the same case and three separate courts (the transferor court, the MDL Panel, and the transferee court) having to preside over the same matter." Fallon, 82 Tul. L. Rev. at 2356; see also *id.* at 2355 ("[I]t has become increasingly more time-consuming and expensive for an individual case to find its way into a transferee court."). These advantages can bene-fit all parties and the courts. See Bradt, 88 Notre Dame L. Rev. at 764 ("Defendants prefer centralizing all of the cases, and plaintiffs prefer skipping the transfer step, while preserving

6                                       Nos. 20-3103 & 20-3104

their prerogative to return to a more convenient forum if and when pretrial proceedings conclude.").

Direct filing can bring its own complications and potential pitfalls, however. The procedure can affect personal jurisdiction, venue, and choice of law. Section 1407 does not expressly authorize transferee courts to override otherwise applicable law, as shown in *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, where the Supreme Court rejected a favorite tool of many MDL transferee courts by holding that a transferee court does not have the power to order a case transferred to itself for purposes of trial. 523 U.S. 26, 28 (1998); see also Larry Kramer, *Choice of Law in Complex Litigation*, 71 N.Y.U. L. Rev. 547, 552–53 (1996) (*Klaxon* and *Van Dusen* constrain choice of law in federal courts both inside and outside MDLs and other complex cases).

Yet despite the limits on a transferee court's coercive powers, the issues affected by direct filing—personal jurisdiction, venue, and choice of law—are waivable. The parties' consent to the procedure and agreement on its consequences should remove the risk of later objections. See, e.g., *In re Vioxx Products Liability Litigation*, 478 F. Supp. 2d 897, 903 (E.D. La. 2007) (after securing defendant's consent that it "will not assert any objection of improper venue" to cases that would be properly included in the MDL, transferee judge explained that "a plaintiff may now file any such complaint against [the defendant] directly in the [MDL court], rather than in a federal district court affording proper venue").

C.  *The Dobbs Rule*

Our focus here is on the choice of law when direct filing is used. One possible but highly formalistic answer is the

Nos. 20-3103 & 20-3104                                                          7

straightforward application of *Klaxon* and *Van Dusen* to say
that use of direct filing means that the MDL court should ap-
ply choice-of-law rules for its own state because that is where
the case was actually filed. In MDL litigation, however, dis-
trict courts have often applied a different approach, treating a
direct-filed case as if it had been filed in the plaintiff's origi-
nating state and applying that state's choice-of-law rules. We
and other circuits have endorsed that approach, and that's the
approach first advocated by Cook and adopted by the district
court in this MDL.

A good place to start is the *Yasmin & Yaz* MDL, where
Judge Herndon (a veteran MDL judge) tackled this question.
He concluded that, rather than applying the *Klaxon/Van Dusen*
rule mechanically based on the MDL venue where direct fil-
ing occurred, "the better approach" was to "treat foreign di-
rect filed cases as if they were transferred from a judicial dis-
trict sitting in the state where the case originated." *In re Yasmin
& Yaz (Drospirenone) Marketing, Sales Practices & Products Lia-
bility Litigation*, 2011 WL 1375011, at *5–6 (S.D. Ill. Apr. 12,
2011) (choice of law for attorney-client privilege and work-
product doctrine). Judge Herndon had issued a direct-filing
order that provided direct filing would not affect the choice
of law that otherwise would apply, and he concluded that the
administrative convenience of direct filing should not change
applicable choice-of-law rules.

Two years later, another veteran MDL judge took the same
approach in *In re Watson Fentanyl Patch Products Liability Liti-
gation*, 977 F. Supp. 2d 885, 888 (N.D. Ill. 2013). Judge Kennelly
declined to apply the MDL forum state's choice-of-law prin-
ciples to decide which state's law should govern the process
of approving a settlement in a wrongful-death case. He wrote

that "it would not make a great deal of sense" to apply the law of "an artificial forum created for purposes of convenience and efficiency" that otherwise had no connection to the proceedings. *Id.* The direct-filing order apparently had not addressed choice of law directly because the procedure was intended for only a small number of cases that had already been settled in principle.

Another version of this choice-of-law issue then reached this court in *Dobbs v. DePuy Orthopedics, Inc.*, 842 F.3d 1045 (7th Cir. 2016). Plaintiff Dobbs had hired an attorney on a contingent-fee basis for his products-liability suit as part of a multidistrict litigation. Since the multidistrict litigation was already in progress and had a direct-filing order, Dobbs elected to file directly in the MDL court rather than his originating jurisdiction. Dobbs later fired his attorney after the attorney recommended that he accept a settlement offer. Dobbs later changed his mind and, acting pro se, accepted the settlement. At that point, his former attorney sued Dobbs on a *quantum meruit* theory. The district court agreed with the lawyer and awarded him a fee that amounted to the full contingent fee.

Dobbs appealed, and a threshold issue was whether the laws of the MDL court or the originating state applied to the award of attorney fees. In deciding that issue, we recognized that *Klaxon* typically controlled in federal diversity cases applying state law and that *Van Dusen* would control in a case transferred from another proper federal venue. However, Dobbs had filed his claim in the MDL court only because the "multidistrict litigation was already in progress there," and Dobbs identified an originating forum in his complaint that "was the appropriate venue absent the multidistrict litigation." *Id.* at 1048–49. This evidence "advise[d] treating the

[originating forum] as the original venue." *Id.* at 1049. We heeded this advice and applied the choice-of-law rules of the originating forum, not those of the MDL forum. In doing so, we expressly adopted the approach of these leading district court cases: "In fact, district courts in our circuit have taken [this] approach: foreign cases filed directly in a district court as a part of ongoing multidistrict litigation are treated as having originated outside of that district. We ratify that approach here and apply [the originating state's] choice-of-law rules." *Id.*, citing *Watson Fentanyl Patch*, 977 F. Supp. 2d at 888–89 and *Yasmin & Yaz*, 2011 WL 1375011, at *5.

*Dobbs* did not create a new rule but ratified the pragmatic approach adopted by Judges Herndon and Kennelly, among others. On this issue, *Dobbs* also followed a Sixth Circuit opinion that had taken the same approach. In *Wahl v. General Electric Co.*, 786 F.3d 491 (6th Cir. 2015), plaintiff Wahl had joined a multidistrict litigation against General Electric for injuries she sustained allegedly from a GE contrast agent used in medical imaging. Pursuant to a direct-filing order, Wahl filed her case directly in the MDL court rather than where she received the contrast agent. The defendant argued that the originating state's choice-of-law rules applied to Wahl's claim, while Wahl argued that the MDL forum's choice-of-law rules applied.

The Sixth Circuit sided with the defendant: "Direct-filed MDL suits that are then transferred to a more convenient forum for trial are an exception to the ordinary" choice-of-law rules. *Id.* at 496. In the alternative, "every district court receiving a direct-filed MDL suit would be bound to apply the choice of law principles of the MDL forum. In effect, the accident of bureaucratic convenience would elevate the law of the

MDL forum." *Id*. Such an alternative regime would have se-
vere negative consequences, the court said: "Any benefit in ef-
ficiency from combining similar litigations for pretrial mo-
tions would pale in comparison to the complications of apply-
ing the substantive law of the venue in which the MDL panel
happened to convene cases from around the country." *Id*. at
499. Thus, for directly filed cases in an MDL, the Sixth Circuit
adopted the rule that we later ratified in *Dobbs*.

This treatment of choice of law in direct-filed cases seems
common. Among MDL courts, the "weight of authority" re-
flects a rule akin to *Dobbs*. *Id*. at 497–98 (collecting cases), see
also *Wahl v. General Electric Co*., 983 F. Supp. 2d 937, 943 & n.11
(M.D. Tenn. 2013) (collecting cases and explaining that courts
applying contrary approach did so "with little or no analy-
sis"). Circuits that have addressed this question since *Dobbs*
likewise have not departed from this common practice. See *In
re Bair Hugger Forced Air Warming Devices Products Liability Lit-
igation*, 999 F.3d 534, 538 (8th Cir. 2021) ("Because claims in
MDL cases often wind up in the MDL forum through an 'ac-
cident of bureaucratic convenience,' this court and others
have concluded in many instances that the substantive law of
the forum the individual complaint was or would have been
brought in should govern, rather than the law of the MDL fo-
rum." (citation omitted)); *In re DePuy Orthopaedics, Inc*., 870
F.3d 345, 348 (5th Cir. 2017) ("Cases that are directly filed in
an MDL court are treated 'as if they were transferred from a
judicial district sitting in the state where the case origi-
nated.'"), quoting *Yasmin & Yaz*, 2011 WL 1375011, at *6; *Tim-
othy v. Boston Scientific Corp*., 665 F. App'x 295, 296 (4th Cir.
2016) (per curiam) (in direct-filed case, the originating juris-
diction's "choice of law principles controll[ed] because the ac-
tions forming the basis of the lawsuit occurred there").

Nos. 20-3103 & 20-3104                                              11

Under the *Dobbs* approach, which was urged by Cook and adopted by the district court at earlier stages of this MDL, appellants Looper and Lambert both filed their cases within the applicable statutes of limitations. Cook does not challenge *Dobbs* as incorrectly decided on its own terms, but it seeks to distinguish it so that it should not apply to these cases. Cook argues that *Dobbs* should not apply here because (1) the MDL venue was itself always a proper venue for these cases independent of the MDL, and (2) there was in fact no direct-filing order. As Cook sees the issue, at least in these two appeals, this case differs from *Dobbs*, *Yasmin & Yaz*, *Watson Fentanyl Patch*, and *Wahl* because the Southern District of Indiana would have been a proper venue for these cases regardless of the MDL or its bureaucratic needs, including the convenience of direct filing. Cook thus contends there is no need to depart from what the Sixth Circuit called the "mechanical application of the transferor-transferee rule articulated in *Van Dusen*." *Wahl*, 786 F.3d at 498.

Cook raises substantial questions regarding how *Dobbs* interacts with *Klaxon* and *Van Dusen*, particularly if the parties have not consented to a specific approach to choice of law in directly filed cases. Would it still make sense to apply *Dobbs* when the plaintiff could have filed her case in the MDL venue even if the multidistrict litigation did not exist? Does it matter whether the plaintiff or the defendant seeks to invoke the choice-of-law rules of the MDL venue? Does it matter whether the direct-filing order expressly addresses the issue of choice of law? *Dobbs* did not address these questions, but our opinion also did not impose or imply the limits that Cook would have us apply here. The other cases we have cited adopting this approach also did not address this specific variation on the broader problem. Still, *Lexecon* stands as a stark reminder

that practices that MDL transferee judges adopt for sound, practical reasons are not always legally permissible, at least without the parties' consent.

Without clear advance guidance from a transferee judge and consent from the parties about how the MDL court should decide choice-of-law issues in directly filed cases, there are substantial risks of confusion and unfairness. To avoid potential surprises and harsh outcomes, we must say—from our institutional perch as Monday-morning quarter-backs—that transferee judges should consider securing express, written agreements to which states' choice-of-law principles will govern directly filed cases *before* permitting direct filing.[1]

## II.  *Implied Consent on Choice of Law*

In these cases, we decline to address the more general question of whether *Dobbs* is limited as Cook argues it should be. Instead, several features of the record as a whole persuade us that Cook at least implicitly, but clearly, consented to the application of originating state choice-of-law rules to directly

---

[1] Direct-filing orders often do not discuss choice-of-law issues, so it is not apparent that the mere existence of such an order would establish the necessary consent to a departure from *Klaxon* and *Van Dusen*. See Bradt, 88 Notre Dame L. Rev. at 764 ("The orders courts have adopted often say nothing about the choice-of-law implications of direct filing, and when they do, they usually say that direct filing will have 'no effect' on the applicable law."). For instance, the *Yasmin & Yaz* direct-filing order said that it would "not impact the choice of law that otherwise would apply to the direct filed actions." 2011 WL 1375011, at *5. Read in isolation, that language does not signal clearly whether the direct-filing order meant that *Klaxon* or the law of a plaintiff's originating jurisdiction should control, though we assume the baseline was the choice of law that would have applied if the cases had been filed in their originating jurisdictions.

filed cases. That evidence includes the provisions for so-called short form complaints, earlier litigation over the same issue in other cases in the MDL where Cook convinced the district court to take the approach opposite to its position here, and case management orders reflecting the importance and value of direct filing. If Cook wants to revoke that consent prospectively, consistently across the whole MDL and as to statutes of limitations and other issues, it should address that request to the MDL court, but it should do so without overreaching to apply such a revocation retroactively to deem cases untimely based on its new understanding of the law.

A. *The Short Form Complaint*

Appellants Looper and Lambert and thousands of other patients have alleged that they received defective IVC filters manufactured by Cook. After the Judicial Panel on Multidistrict Litigation established this MDL in the Southern District of Indiana, the parties swiftly drafted and the court approved a Case Management Plan. The order called for use of a "Short Form Complaint" in so-called "direct filing." Plaintiffs could use this complaint form to file directly in the MDL court rather than filing in the federal courts in their home jurisdictions and waiting for their cases to be tagged and transferred to the MDL court for pretrial proceedings. Relevant to these appeals, the short form complaint included a line for a plaintiff to designate the "District Court and Division in which venue would be proper absent direct filing." There are two apparent reasons to include this language: to identify (1) where trial should be held after pretrial proceedings are wrapped up, and (2) which state's choice-of-law rules govern the dispute. And those two reasons are closely related. It would be very odd to transfer a case back to a district in an originating state

for application of the substantive law of the MDL court's state.[2]

### B.  *Cook Argues for the Law of the Originating Jurisdictions*

To determine the purpose of the "originating jurisdiction" line in the short form complaint for this MDL, we need not look further than Cook's own prior arguments in at least seven individual cases. In moving for judgment on the pleadings for a set of six Cook IVC filter cases based on statutes of repose, Cook cited this line in the short form complaint as identifying the district courts whose choice-of-law rules applied. The set of six cases is known as the *Sales-Orr* cases, after one of the plaintiffs. In a combined motion aimed at those cases, Cook wrote: "the plaintiffs' Short Form Complaints demonstrate that their claims 'originated' in their respective home states of Georgia, Tennessee, and Texas, and those states' choice-of-law rules apply." Cook Defs.' Mem. in Support of Motion for Judgment on the Pleadings Based on Statutes of Repose, at 3, ECF No. 4186 (Mar. 27, 2017). In other words, Cook asserted that the applicable statutes of limitations and/or repose in direct-filed cases should be those of the originating jurisdictions.

That was not the first time Cook had advanced that choice of law approach in this MDL. In the *Valerie Graham* case, Cook filed a motion to dismiss a case on statute-of-limitations

---

[2] We pause to clarify one shortcut in our analysis. *Van Dusen* calls for the transferee court to apply the choice-of-law rules of the transferring court, which may or may not call for applying that state's substantive law. 376 U.S. at 639. In these cases, however, we do not dig into the details of those state's choice-of-law doctrines. All parties agree that the respective choice-of-law rules for South Carolina, Mississippi, and Indiana would call for applying the forum state's statute of limitations.

grounds on February 2, 2016. Cook argued for the district
court to adopt the Y*asmin & Yaz* rule later ratified by *Dobbs*.
Critically, the originating state's law in the *Valerie Graham* case
benefited Cook, whereas here it's the other way around. Cook
wrote at the time:

> When a case based on diversity is part of an
> MDL and is directly filed in the MDL forum as
> the result of a direct filing order, courts have
> found that the "better approach is to treat for-
> eign direct filed cases [i.e., cases originating out-
> side of this Court's judicial district but filed di-
> rectly into the MDL] as if they were transferred
> from a judicial district sitting in the state where
> the case originated." *In re Yasmin*, 2011 U.S. Dist.
> LEXIS 39820, at *15, *18 (S.D. Ill. April 11,
> 2011.).… Accordingly, Kansas is the originating
> state and Kansas choice-of-law provisions ap-
> ply.

Cook Defs.' Br. in Support of Motion for Summary Judgment,
at 5–6, ECF No. 1051 (Feb. 2, 2016) (alteration in original).

    If asking the district court to apply a certain rule to a case
is not "consenting" to that rule, then we are not sure what
would be. Then, more than a year later, as noted, Cook reiter-
ated its arguments for (and thus consent to) the *Dobbs* rule. In
the six *Sales-Orr* cases, using almost exactly the same lan-
guage it used in *Graham*, Cook again invoked the *Dobbs* rule
for statutes of repose. The court agreed with Cook:

> This motion addresses those Plaintiffs, whose
> cases originated outside of this court's judicial
> district but were directly filed in this MDL

16                                    Nos. 20-3103 & 20-3104

> forum ("foreign direct filed cases"), *pursuant to the court's direct filing order*. The specific issue raised in the present motion is whether the court should apply the choice-of-law rules of the MDL forum (Indiana) or the choice-of-law rules of the state where the case would have been brought had it not been part of this MDL.
>
> In 2011, the Southern District of Illinois addressed this issue and held that "the [better] approach is to treat foreign direct filed cases as if they were transferred from the judicial district sitting in the state where the case originated." The court adopts this approach ….

Entry on Motion for Judgment on the Pleadings Based on the Statute of Repose, at 3, ECF No. 4918 (May 31, 2017) (emphasis added), citing *Yasmin & Yaz*, 2011 WL 1375011, at *6. Under that approach to Looper's and Lambert's cases, their claims were timely.

A plaintiff may tailor her litigation strategy to the current state of play in the MDL and should not have a trap sprung on her based on a retroactive change of the ground rules. Even if the district court was or remains inclined to allow Cook to revoke its implicit consent and to change its position on the choice-of-law question for directly filed cases, such a change should not be applied retroactively to cases where corrective action was no longer possible in response to Cook's and the district court's change in position.

C. *Case Management Orders*

Case management orders provide additional evidence of the prevailing practice here that was consistent with *Dobbs*. As

Nos. 20-3103 & 20-3104                                           17

the MDL progressed, the district judge issued various case management orders. These orders governed deposition protocols, amendments to the case management plan, and many other topics. The orders also provide further evidence as to the state of play in this MDL and the parties' understanding of its ground rules, including Cook's implicit consent to applying choice-of-law rules from properly identified originating jurisdictions for direct-filed cases.

For instance, in at least two orders, the court referred to "direct filing." Case Management Order #3 explained: "As to cases directly filed in the Southern District after the entry of this Order and the entry of an order in MDL 2570 permitting direct filing, the Short Form Complaints will not name the Additional Cook Entities." ECF No. 353 at 2. And Case Management Order #5 explained that its guidance applied to "(1) all cases transferred to this court by the Judicial Panel on Multidistrict Litigation, including those cases identified in the original Transfer Order and those subsequently transferred as tag-along actions; and (2) all cases directly filed in or removed to this MDL." ECF No. 355 at 1.

As these orders, the short form complaints, and Cook's earlier briefing in *Sales-Orr* and *Graham* indicated, the court and the parties simply proceeded as if direct filing were permissible and as if a direct-filing order were on the books. A plaintiff's lawyer who looked at these orders could reasonably conclude that direct filing, pursuant to a direct-filing order, was proper and welcome in this MDL. And if she looked further into the MDL's docket, she would have found Cook's successful arguments for applying choice-of-law rules from originating jurisdictions in directly filed cases. Roughly six thousand plaintiffs took advantage of direct filing.

### D. *Cook's Counterarguments*

The unfairness of Cook's switching from one rule to its opposite within this MDL is self-evident, at least as applied to these plaintiffs. In trying to justify this about-face, Cook raises several arguments that we find unpersuasive.

First, Cook argues that it can take inconsistent positions in the different cases because individual cases in multidistrict litigations retain their "separate identities." Appellees' Br. 51, quoting *Gelboim v. Bank of America Corp.*, 574 U.S. 405, 413 (2015). That can certainly be true for many purposes, such as requiring separate individual judgments and appeal rights, as in *Gelboim* itself. 574 U.S. at 413 n.3; see also *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 489–90 (7th Cir. 2020); *In re Refrigerant Compressors Antitrust Litigation*, 731 F.3d 586, 590–92 (6th Cir. 2013). But given the common ground among the cases that justifies the use of the MDL process in the first place, it is not realistic or fair to allow a party to use such formalities to have the transferee MDL court justify a retroactive 180-degree turn on a decisive procedural issue after establishing what the court itself called the "law of the case," referring to the MDL as a whole. ECF No. 12931 at 4.

Second, Cook argues that even if it consented to using the short form complaints and their structure, it did not consent to their contents. Cook writes: "in agreeing to the form of the short-complaint, Cook did not agree to the substance of any of the allegations that would be made in that short-form complaint or, for that matter, the legal implications those allegations would have." Appellees' Br. 46 (emphasis omitted). The argument addresses a strawman. No one is arguing that Cook admitted the allegations in these plaintiffs' short form complaints. The key points are (a) that one of two evident

Nos. 20-3103 & 20-3104                                                    19

purposes for identifying originating jurisdictions is to deter-
mine choice-of-law rules, and (b) that Cook itself persuaded
the district court to use those identifications for exactly that
purpose.

Third, Cook relies on the absence of an actual direct-filing
order, saying that it changed its position only after discover-
ing that absence. We are not convinced, given the actions of
the parties and the court as if such an order had been in place
at the times relevant to Looper and Lambert.[3]

Cook urges us to ignore its prior arguments because it was
merely "mistaken." A mistake in a few cases, as Cook puts it,
should not "add up to a stipulation to deviate" from *Klaxon*.
Appellees' Br. 48. We appreciate the point, perhaps in going
forward, but in our view, such a mistake in giving implicit
consent to the *Dobbs* treatment of choice of law could not jus-
tify a *retroactive* correction to spring a trap on these plaintiffs

---

[3] The surprising discovery came in addressing whether the parties
had preserved their so-called "*Lexecon* rights" in direct-filed cases. Years
after Cook successfully argued in the *Graham* and *Sales-Orr* cases that di-
rect-filed cases should be governed by the choice-of-law rules and statutes
of limitations of their originating jurisdictions, the MDL proceeded to the
bellwether trial stage. A dispute arose over where the trials would take
place. In *Lexecon*, the Supreme Court held that in MDL cases that were
tagged and transferred, the parties retained their rights to insist on re-
transfer back to their originating jurisdictions for trial once pretrial pro-
ceedings concluded in the MDL court. 523 U.S. at 28. Parties can consent
to having the MDL court retain such cases for trial, but without consent,
the right to re-transfer remains. Since there was no direct-filing order in
this MDL, the district judge concluded that the parties in direct-filed cases
had *not* preserved their *Lexecon* rights, thus allowing the MDL court to
preside over the trials. ECF No. 11131 at 2. We express no views here on
that issue, which may present considerations quite different from the stat-
ute-of-limitations defenses in these appeals.

20                                    Nos. 20-3103 & 20-3104

who acted consistently with Cook's and the district court's earlier position.

   In the first place, it is not at all clear to us that Cook's earlier position was incorrect. It was consistent with the weight of authority in MDL cases using direct filing, including our opinion in *Dobbs*. We understand Cook's arguments for imposing new limits on the *Dobbs* rule, but those new limits are at least contestable. Cook's rationale for limiting *Dobbs*, *Yasmin & Yaz*, and the other direct-filing MDL cases has been reverse-engineered to fit Cook's interests in the two appeals before us. That's neither unusual nor blameworthy, but Cook is asking us to impose limits that those opinions did not invite. Moreover, it asks us to do so based on a theory that bears no relationship to the actual behavior of Cook, the MDL plaintiffs, and the district court here. Despite the absence of a formal direct-filing order in this MDL, everyone acted for years as if one were in place.

   With respect to Cook's claim that its earlier victories in the *Sales-Orr* and *Graham* cases were based on mistakes, Cook had every incentive when it first made these arguments about the choice of applicable statutes of limitations to discover whether a direct-filing order existed. Cook was more than capable of determining this fact if it had any doubts. In our view, Cook—not Looper and Lambert—bore the risk of its mistake when it made and won with these prior arguments, establishing a prevailing practice in how the MDL court treated directly filed cases. We do not see a valid reason for holding Cook's claimed mistake against these two appellants.

   Since the MDL progressed as if a direct-filing order had been on the books, the parties were entitled to adapt their litigation approaches with this fact in mind. The situation seems

Nos. 20-3103 & 20-3104                                                21

comparable to us to that contemplated by Federal Rule of
Civil Procedure 15(b)(2), which provides that an issue tried by
the parties' express or implied consent must be treated as if it
had been raised in the pleadings. In addition, at relevant times
here, the law offered strong support for the view that foreign
direct-filed cases are governed by their originating states'
choice of law rules. Again, Cook's own actions in the MDL
show that it conformed its own behavior to this understand-
ing. Cook consented to this treatment of direct-filed cases—
indeed, welcomed it—until it no longer benefited Cook, lead-
ing to the about-face against Looper and Lambert and these
appeals. That unfair reversal of course should not stand. We
know of no prior multidistrict litigation that allowed one
party to withdraw its consent—retroactively—to the treat-
ment of direct-filed cases halfway through the MDL, spring-
ing a trap shut on parties who complied with the law of the
case. We decline to be the first to do so without giving the tar-
geted parties an opportunity to take remedial actions.

### E.  *Judicial Estoppel?*

Much of what we have said echoes the grounds for the
doctrine of judicial estoppel: a party succeeds on one legal po-
sition and later tries to reverse its position on the same issue.
In some ways, Cook's about-face looks like an example of a
party playing fast and loose with the courts—the type of be-
havior that judicial estoppel is designed to protect against.
E.g., *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (ju-
dicial estoppel "protect[s] the integrity of the judicial process"
by "'prohibiting parties from deliberately changing positions
according to the exigencies of the moment'") (citations omit-
ted); see also *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)
("[W]here a party assumes a certain position in a legal

22                                        Nos. 20-3103 & 20-3104

proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him."). Looper (but not Lambert) thus raised judicial estoppel as an alternative ground for reversal.

We do not necessarily reject application of judicial estoppel here, but we think the better course is to rely on the strong evidence of Cook's implied but clear consent to use of choice-of-law rules from originating jurisdictions in direct-filed cases like these two. Use of judicial estoppel here may have broader and unforeseen consequences in this or other MDL cases, so we adopt this more cautious, case-specific approach. For example, judicial estoppel does not permit a party to change her position prospectively, whereas consent can be revoked for future cases when it would not unfairly prejudice parties who conformed their approach to the opposing party's earlier approach. It is possible that an expansive use of judicial estoppel could unduly complicate the work of MDL courts and the parties before them in complex cases like this one.

In addition, while we think the evidence of Cook's consent to using choice-of-law rules from originating jurisdictions is unmistakable here, we would review a decision on judicial estoppel for an abuse of discretion. See *In re Knight–Celotex, LLC*, 695 F.3d 714, 721 (7th Cir. 2012) (a decision to impose judicial estoppel is a "matter of equitable judgment and discretion," which we review for an abuse of discretion). Judge Young's written order on the question of judicial estoppel was cryptic, referring to the "unique circumstances of this case." Entry on Oct. 25, 2019 Hearing on Cook's Renewed Omnibus Motion for Summary Judgment on Statute of Limitations, at 1, ECF

Nos. 20-3103 & 20-3104                                        23

No. 12256 (Oct. 19, 2019). In the hearing in Looper's and Lambert's cases, he said that he did not believe that Cook had deliberately misled him, and rather that its 180-degree reversal had been the product of a mistake. A court considering an issue of judicial estoppel may consider the difference between informed and mistaken choices. See *In re Cassidy*, 892 F.2d 637, 642 (7th Cir. 1990) (judicial estoppel should not be imposed when the former position was the product of a mistake).

                    *        *        *

Our decision should not be read too broadly. Finding consent within the specific facts of this case does not mean that consent will exist in every case where direct filing is used, and Cook points out significant tension between *Klaxon* and *Dobbs* if the *Dobbs* rule is applied without a party's consent to it. More generally, for future reference we urge transferee judges to use written orders to ensure clear consent from parties about how they will manage choice-of-law, personal jurisdiction, and venue issues in directly filed cases. See *Vioxx*, 478 F. Supp. 2d at 903. The court thus secures consent for parties to file in the MDL forum, opening a second door for new filings and creating judicial efficiencies in the process without creating new uncertainties and disputes.

To sum up, under the choice-of-law rules to which Cook consented, Looper's and Lambert's cases are governed by the law of their originating jurisdictions and are timely. Accordingly, the judgments of the district court are REVERSED and these two cases are REMANDED to the district court for further proceedings consistent with this opinion.