# EXHIBIT B

Nos. 20-3103 & 20-3104

# In the
# United States Court of Appeals
## for the Seventh Circuit

IN RE: COOK MEDICAL, INC., IVC
FILTERS MARKETING, SALES PRACTICES
AND PRODUCTS LIABILITY LITIGATION

VICTORIA LOOPER,
*Plaintiff-Appellant*
*v.*
COOK INCORPORATED, ET AL.,
*Defendants-Appellees*

SAMMIE LAMBERT,
*Plaintiff-Appellant*
*v.*
COOK INCORPORATED, ET AL.,
*Defendants-Appellees*

Appeals from the United States District Court
for the Southern District of Indiana, Indianapolis Division
Nos. 1:16-cv-03510-RLY-TAB & 1:19-cv-02561-RLY-TAB
The Honorable Richard L. Young, Judge

**APPELLEES' COMBINED RESPONSE BRIEF**

Brian J. Paul, *Counsel of Record*
Andrea Roberts Pierson
FAEGRE DRINKER
BIDDLE & REATH LLP
300 North Meridian Street, Suite 2500
Indianapolis, Indiana 46204
T: (317) 237-0300
F: (317) 237-1000
E: Brian.Paul@FaegreDrinker.com
     Andrea.Pierson@FaegreDrinker.com

Bruce Gregory Jones
FAEGRE DRINKER
BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
T: (612) 766-7000
F: (612) 766-1600
E: Bruce.Jones@FaegreDrinker.com

*Counsel for Defendants-Appellees*
*Cook Incorporated, Cook Medical LLC, and William Cook Europe ApS*

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: __20-3103, 20-3104__

Short Caption: __Looper and Lambert v. Cook Incorporated, Cook Medical LLC and William Cook Europe APS__

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)      The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Cook Incorporated, Cook Medical LLC, William Cook Europe APS

(2)      The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Faegre Drinker Biddle & Reath LLP

(3)      If the party, amicus or intervenor is a corporation

     i)      Identify all its parent corporations, if any; and

The parent company for Cook Incorporated is Cook Medical Holdings LLC, which in turn is wholly owned by Cook Group Incorporated. The parent company for Cook Medical LLC is Cook Medical Holdings LLC, which is wholly owned by Cook Group Incorporated. The parent company for William Cook Europe ApS is Cook Nederland BV, which is a subsidiary of Cook Group Incorporated.

     ii)      list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

No publicly held company owns 10% or more of any of the defendants' stock or membership interest

     iii)      Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

     iv)      Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: __/s/ Brian J. Paul__      Date: __May 21, 2021__

Attorney's Printed Name: __Brian J. Paul__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d)___   Yes ☑   ☐ No

Address: __Faegre Drinker Biddle & Reath LLP__
__300 N. Meridian Street, Suite 2500, Indianapolis, IN  46204__

Phone Number: __(317) 237-0300__      Fax Number: __(317) 237-1000__

E-Mail Address: __brian.paul@faegredrinker.com__

i

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: __20-3103, 20-3104__

Short Caption: __Looper and Lambert v. Cook Incorporated, Cook Medical LLC and William Cook Europe APS__

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Cook Incorporated, Cook Medical LLC, William Cook Europe APS

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Faegre Drinker Biddle & Reath LLP

(3)     If the party, amicus or intervenor is a corporation:

     i)     Identify all its parent corporations, if any; and
          The parent company for Cook Incorporated is Cook Medical Holdings LLC, which in turn is wholly owned by Cook Group Incorporated. The parent company for Cook Medical LLC is Cook Medical Holdings LLC, which is wholly owned by Cook Group Incorporated. The parent company for William Cook Europe ApS is Cook Nederland BV, which is a subsidiary of Cook Group Incorporated.

     ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

          No publicly held company owns 10% or more of any of the defendants' stock or membership interest

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

     N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

     N/A

Attorney's Signature: _/s/ Andrea Roberts Pierson_          Date: _May 21, 2021_
Attorney's Printed Name: _Andrea Roberts Pierson_

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes____     No__✓__

Address: _Faegre Drinker Biddle & Reath LLP_
          _300 N. Meridian Street, Suite 2500, Indianapolis, IN  46204_

Phone Number: _(317) 237-0300_                    Fax Number: _(317) 237-1000_
E-Mail Address: _andrea.pierson@faegredrinker.com_

# APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: __20-3103, 20-3104__

Short Caption: __Looper and Lambert v. Cook Incorporated, Cook Medical LLC and William Cook Europe APS__

 To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

 The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

| | |
|---|---|
| [ ] | **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.** |

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Cook Incorporated, Cook Medical LLC, William Cook Europe APS

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Faegre Drinker Biddle & Reath LLP

(3) If the party, amicus or intervenor is a corporation:

   i) Identify all its parent corporations, if any; and
   The parent company for Cook Incorporated is Cook Medical Holdings LLC, which in turn is wholly owned by Cook Group Incorporated. The parent company for Cook Medical LLC is Cook Medical Holdings LLC, which is wholly owned by Cook Group Incorporated. The parent company for William Cook Europe ApS is Cook Nederland BV, which is a subsidiary of Cook Group Incorporated.

   ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
   No publicly held company owns 10% or more of any of the defendants' stock or membership interest

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: __/s/ Bruce Jones__     Date: __May 21, 2021__

Attorney's Printed Name: __Bruce Jones__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes [ ]   No [✓]

Address: __Faegre Drinker Biddle & Reath LLP__

__2200 Wells Fargo Center, 90 S. Seventh Street, Minneapolis, MN,  55402__

Phone Number: __(612) 766-7000__     Fax Number: __(612) 766-1600__

E-Mail Address: __bruce.jones@faegredrinker.com__

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... vi

STATEMENT OF JURISDICTION ........................................................ 1

INTRODUCTION ..................................................................................... 3

STATEMENT OF THE ISSUE ............................................................... 7

STATEMENT OF THE CASE .................................................................. 8

SUMMARY OF THE ARGUMENT ....................................................... 21

ARGUMENT ............................................................................................ 24

    I.    THE DISTRICT COURT HAD NO AUTHORITY TO
        DEPART FROM SUPREME COURT PRECEDENT AND
        APPLY PLAINTIFFS' HOME CHOICE-OF-LAW RULES. ...... 24

        I.A.    Supreme Court Precedent Required The District Court
                To Apply Indiana's Choice-Of-Law Rules. ........................... 25

        I.B.    Plaintiffs Voluntarily Filed Their Cases In A Proper
                Venue And, Therefore, *Klaxon* Mandated The
                Application Of Indiana's Choice-Of-Law Rules. .................. 30

                I.B.1.  *Dobbs* Hinges On The Fact That Venue Was
                          Improper In The MDL Court. ...................................... 31

                I.B.2.  *Dobbs* Is Consistent With The Rule That Cases
                          Transferred From An Improper Venue Are
                          Governed By The Choice-Of-Law Rules Of The
                          Proper, Transferee Venue. .......................................... 34

                I.B.3.  *Dobbs* Is Consistent With The Rule That Parties
                          Are Bound By The Choice-Of-Law Rules Of The
                          Forum In Which The Plaintiff Chooses To File
                        Her Case So Long As Venue Is Proper. ....................... 39

        I.C.    The Parties Did Not Agree To Deviate From The
                 Default Rule In *Klaxon*. ..................................................... 41

I.C.1. There Is No Evidence The Parties Agreed To
Deviate From The Default Rule Set Forth In
*Klaxon*. ............................................................................... 42

I.C.1.a. The plaintiffs' complaints do not
demonstrate the parties agreed to deviate
from the default rule in *Klaxon*. ........................... 44

I.C.1.b. CMO-3 and CMO-5 do not demonstrate
the parties agreed to deviate from the
default rule in *Klaxon*. ........................................... 47

I.C.1.c. The filings in *Graham* and *Sales-Orr* do
not demonstrate the parties agreed to
deviate from the default rule in *Klaxon*. .............. 48

I.C.2. Plaintiffs' Proposed Rule Would Unnecessarily
Complicate Choice-Of-Law Determinations ................ 52

II.     THE DISTRICT COURT DID NOT ABUSE ITS
DISCRETION IN CONCLUDING DEFENDANTS
WERE NOT JUDICIALLY ESTOPPED FROM
ARGUING THE CORRECT CHOICE-OF-LAW RULES. ........ 58

CONCLUSION ........................................................................... 61

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT,
TYPEFACE REQUIREMENTS, AND TYPE-STYLE
REQUIREMENTS ...................................................................... 62

CERTIFICATE OF SERVICE ....................................................... 63

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*In re Afr.-Am. Slave Descendants Litig.*,
  471 F.3d 754 (7th Cir. 2006) ............................................................ 14, 38

*In re Air Crash Disaster Near Chi., Ill. on May 25, 1979*,
  644 F.2d 594 (7th Cir. 1981) ................................................................ 53

*Albrecht v. Indiana Harbor Belt R.R. Co.*,
  178 F.2d 577 (7th Cir. 1949) ................................................................ 15

*Allstate Ins. Co. v. Menards, Inc.*,
  285 F.3d 630 (7th Cir. 2002) ................................................................ 27

*Armstrong v. LaSalle Bank Nat'l Ass'n*,
  552 F.3d 613 (7th Cir. 2009) ................................................................ 11

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
  571 U.S. 49 (2013) ........................................................................ 35, 40

*Autocephalous Greek-Orthodox Church of Cyprus v. Goldberg & Feldman Fine
  Arts, Inc.*, 717 F. Supp. 1374 (S.D. Ind. 1989), *aff'd,* 917 F.2d 278 (7th
  Cir. 1990) ........................................................................................ 3

*In re Bausch & Lomb Inc. Contacts Lens Solution Prods. Liab. Litig.*,
  MDL No. 1785, 2007 WL 3046682 (D.S.C. Oct. 11, 2007) ............................ 33

*BouMatic, LLC v. Idento Operations, BV*,
  759 F.3d 790 (7th Cir. 2014) ................................................................. 2

*In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*,
  333 F.3d 763 (7th Cir. 2003), *abrogated in non-relevant part by Smith v.
  Bayer Corp.*, 564 U.S. 299 (2011) ........................................................ 14

*Bullard v. Burlington N. Santa Fe Ry. Co.*,
  535 F.3d 759 (7th Cir. 2008) ................................................................ 49

*Matter of Cassidy,*
    892 F.2d 637 (7th Cir. 1990) ........................................................ 58, 59

*Chang v. Baxter Healthcare Corp.,*
    599 F.3d 728 (7th Cir. 2010) ........................................................ 29, 33

*Day & Zimmermann, Inc. v. Challoner,*
    423 U.S. 3 (1975) (per curiam) ....................................................5, 26

*Dobbs v. DePuy Orthopedics, Inc.,*
    842 F.3d 1045 (7th Cir. 2016) .....................................................*passim*

*Edwardsville Nat'l Bank & Tr. Co. v. Marion Labs., Inc.,*
    808 F.2d 648 (7th Cir. 1987) ..............................................................35

*Erie R.R. Co. v. Tompkins,*
    304 U.S. 64 (1938).......................................................................*passim*

*Ezekiel v. Michel,*
    66 F.3d 894 (7th Cir. 1995)................................................................59

*Ferens v. John Deere Co.,*
    494 U.S. 516 (1990) ................................................................ 28, 37, 40

*Gelboim v. Bank of Am. Corp.,*
    574 U.S. 405 (2015) ......................................................... 24, 51, 59

*Grochocinski v. Mayer Brown Rowe & Maw, LLP,*
    719 F.3d 785 (7th Cir. 2013) ..............................................................24

*Guaranty Tr. Co. of N.Y. v. York,*
    326 U.S. 99 (1945)..............................................................................56

*Hoffman v. Blaski,*
    363 U.S. 335 (1960) ...........................................................................34

*Jean v. Dugan,*
    20 F.3d 255 (7th Cir. 1994)................................................................26

*King v. Kramer,*
    763 F.3d 635 (7th Cir. 2014) ....................................................... 49, 50

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941) ...............................................................................*passim*

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
  523 U.S. 26 (1998).................................................11, 13, 14, 25, 38, 41, 57

*Magnolia Petrol. Co. v. Hunt*,
  320 U.S. 430 (1943) ...........................................................................56

*Manley v. Engram*,
  755 F.2d 1463 (11th Cir. 1985) ...........................................................39

*In re Nat'l Prescription Opiate Litig.*,
  956 F.3d 838 (6th Cir. 2020) ...........................................3, 24, 25, 51

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ...........................................................................59

*Salve Regina Coll. v. Russell*,
  499 U.S. 225 (1991) ...........................................................................24

*Sun Oil Co. v. Wortman*,
  486 U.S. 717 (1988) ...........................................................................15

*Swift v. Tyson*,
  41 U.S. 1 (1842).................................................................................26

*In re Takata Airbag Prods. Liab. Litig.*,
  379 F. Supp. 3d 1333 (S.D. Fla. 2019) ................................................41

*Tanner v. Jupiter Realty Corp.*,
  433 F.3d 913 (7th Cir. 2006) ..............................................................33

*Van Dusen v. Barrack*,
  376 U.S. 612 (1964) ........................................................ 28, 29, 35, 37, 39

*In re Vioxx Prods. Liab. Litig.*,
  478 F. Supp. 2d 897 (E.D. La. 2007) ..........................................12, 41, 42

*Wahl v. General Elec. Co.*,
  786 F.3d 491 (6th Cir. 2015) ..........................................36, 37, 41, 43

*In re Watson Fentanyl Patch Prods. Liab. Litig.*,
   977 F. Supp. 2d 885 (N.D. Ill. 2013) ........................................................ 33, 34, 45

*In re Yasmin & Yaz (Drospirenone) Marketing, Sales Pracs. & Prods. Liab.*
   *Litig.*, No. 3:09-md-02100-DRH-PMF, 2011 WL 1375011 (S.D. Ill.
   Apr. 12, 2011) .................................................................................... 32, 33, 53

*Yoder v. Honeywell Inc.*,
   104 F.3d 1215 (10th Cir. 1997) .............................................................. 49

*Zotos v. Lindbergh Sch. Dist.*,
   121 F.3d 356 (8th Cir. 1997) ................................................................. 49

**STATUTES**

28 U.S.C. § 1291 ............................................................................................. 2

28 U.S.C. § 1332 ............................................................................................. 1, 2

28 U.S.C. § 1391 ............................................................................................. *passim*

28 U.S.C. §1391(b)(2) ................................................................................... 38, 41

28 U.S.C. § 1391(b)(1) .................................................................................. 37, 41

28 U.S.C. § 1404(a) ........................................................... 14, 25, 28, 34, 36, 37, 40, 46

28 U.S.C. § 1406 ............................................................................................ 35, 36

28 U.S.C. § 1406(a) ....................................................................................... 36, 37

28 U.S.C. § 1407 ................................................................................ 3, 4, 9, 12, 13, 57

28 U.S.C. § 1407(a) ........................................................................ 11, 14, 25, 29, 32

28 U.S.C. § 1407(f) ........................................................................................ 32

IND. CODE § 34-20-3-1 .................................................................................. 15

**RULES**

FED. R. CIV. P. 8(b)(5) ................................................................................... 46

JPML Rule 7.2(a) ..........................................................................................32

**OTHER AUTHORITIES**

14D FED. PRAC. & PROC. JURIS. § 3827 (4th ed.)............................................ 35, 36

15 FED. PRAC. & PROC. JURIS. § 3862 (4th ed.) .........................................................9

15 FED. PRAC. & PROC. JURIS. § 3866.1 (4th ed.) .....................................................9

15 FED. PRAC. & PROC. JURIS. § 3866 (4th ed.) ......................................................32

15 FED. PRAC. & PROC. JURIS. § 3867 (4th ed.) ......................................................29

Judge Eldon E. Fallon, et. al., *Bellwether Trials in Multidistrict Litigation*,
    82 TUL. L. REV. 2323 (2008) ...................................................... 10, 11, 12, 31, 32

Larry Kramer, *Choice of Law in Complex Litigation*,
    71 N.Y.U. L. REV. 547 (1996)................................................................26, 27, 28

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)(a) (1971) ................53

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)(b) (1971) ...............53

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)(c) (1971) ...............53

## STATEMENT OF JURISDICTION

Plaintiffs' jurisdictional statements are not complete and correct.

1.  The district court had diversity jurisdiction pursuant to 28 U.S.C. § 1332. Plaintiff Victoria Looper is a citizen of Mississippi. Plaintiff Sammie Lambert is a citizen of South Carolina. Cook Incorporated is an Indiana corporation with its principal place of business in Indiana. Cook Medical LLC (f/k/a Cook Medical Incorporated) is an Indiana LLC whose sole member is Cook Medical Holdings LLC, also an Indiana LLC. Cook Medical Holdings LLC's sole member is Cook Group Incorporated, which is an Indiana corporation with its principal place of business in Indiana. Cook Incorporated and Cook Group Incorporated are two separate corporate entities. William Cook Europe ApS (anpartsselskab) is a Danish private limited company with its principal place of business in Denmark. Under the Danish Companies Act,[1] an anpartsselskab (that is, a private limited company) is a separate legal person, and the shareholders of private limited companies are generally not liable for the obligations of the limited liability company. If negligent acts or omissions of a shareholder cause a loss to the company or to creditors of the company, then the shareholder may, depending on the circumstances,

---

[1]          https://danishbusinessauthority.dk/sites/default/files/danish_companies_act.pdf (last viewed May 13, 2021).

be held liable by the courts for such loss. The sole shareholder of William Cook Europe ApS is Cook Netherland BV. Cook Netherland BV is a Netherlands company with its principal place of business in the Netherlands. "BV stands for *besloten vennootschap met beperkte aansprakelijkheid*, a label that the Netherlands applies to closely held businesses whose shares are subject to a restriction of some kind, such as a buy-sell agreement that prevents investors from selling to strangers without offering them to the business first." *BouMatic, LLC v. Idento Operations, BV*, 759 F.3d 790, 791 (7th Cir. 2014). As this Court previously held, "treatment of a Netherlands BV is straightforward." *Id.* Because it "has the standard elements of 'personhood,'" a BV "is a 'corporation' for the purpose of § 1332." *Id.*

The amount in controversy exceeds $75,000 exclusive of interest and costs, as each plaintiff alleges she suffered serious and permanent injuries as a result of being implanted with a defective medical device—an inferior vena cava filter.

2.  The court of appeals has jurisdiction under 28 U.S.C. § 1291. The district court entered final judgment in favor of the defendants and against plaintiffs Looper and Lambert on September 28, 2020. (Dkt. 14623, p. 5; 14625, p. 6.) Both filed a notice of appeal on October 27, 2020. (Dkt. 14623, pp. 1-2; 14625, pp. 1-2.) This Court consolidated these cases for briefing and disposition. (App. No. 20-3103, Cir. Dkt. 4 (Looper); App. No. 20-3104, Cir. Dkt. 4 (Lambert).)

# INTRODUCTION

The rule of law applies in multidistrict litigation under 28 U.S.C. § 1407 just as it does in any individual case. Nothing in § 1407 provides any reason to conclude otherwise. Moreover, as the Supreme Court has made clear, every case in an MDL (other than cases for which there is a consolidated complaint) retains its individual character. That means an MDL court's determination of the parties' rights in an individual case must be based on the same legal rules that apply in other cases, as applied to the record in that case alone. Within the limits of those rules, of course, an MDL court has broad discretion to create efficiencies and avoid duplication—of both effort and expenditure—across cases within the MDL. What an MDL court may not do, however, is distort or disregard the rules of law applicable to each of those cases.[2]

The rule that applies here is that a federal court sitting in diversity "must" apply the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496-97 (1941). The plaintiffs in these two diversity cases voluntarily commenced their cases in the Southern District of Indiana, and therefore Indiana's choice-of-law rules apply, meaning that Indiana's statute of limitations governs. *Autocephalous Greek-Orthodox Church of Cyprus v. Goldberg & Feldman Fine Arts, Inc.,* 717 F. Supp. 1374, 1385 (S.D. Ind. 1989), *aff'd,* 917 F.2d 278 (7th Cir. 1990). Plaintiffs could have filed their cases in their home jurisdictions (South Carolina and Mississippi), and thus obtained whatever benefits that might go along with

---

[2] *In re Nat'l Prescription Opiate Litig.,* 956 F.3d 838, 841 (6th Cir. 2020).

3

the application of their home choice-of-law rules. But instead they chose to file in the MDL court, which is located in a venue even they agree is proper under the general venue statue, 28 U.S.C. § 1391. After all, Indiana is the world headquarters for the Cook family of companies, and all three Cook defendants acknowledge they are subject to personal jurisdiction there.

So, the question in these cases comes down to this: Where would the district court have gotten the authority to impose, as the plaintiffs requested, the choice-of-law rules of South Carolina or Mississippi in cases that were originally and properly filed in the Southern District of Indiana? The authority does not come from federal caselaw; the rule in *Klaxon* is crystal clear. The authority does not come from the MDL statute or the rules of the Judicial Panel on Multidistrict Litigation; neither section 1407 nor the JPML rules grant MDL courts any such power. The authority does not come from the consent of the parties, because the Cook defendants never agreed to deviate from *Klaxon*. And the authority does not come from section 1391, because the Southern District of Indiana is undisputedly a proper venue. The answer to the question therefore must be that there is no source of authority that would have allowed the district court to impose foreign choice-of-law rules on actions that the plaintiffs originally and properly filed in the Southern District of Indiana.

4

*Klaxon* is an outgrowth of the *Erie* doctrine, and under that familiar doctrine, federal courts have "no power to declare substantive rules of common law applicable in a state …." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In *Klaxon*, the Supreme Court extended this "prohibition" to the field of conflict of laws. 313 U.S. at 496-97. Had it not done so, the Court wrote, "the accident of diversity of citizenship would … do violence to the principle of uniformity within a state, upon which [*Erie*] is based." *Id.* at 496. Federal courts thus have no authority "to thwart … local policies by enforcing an independent 'general law' of conflict of laws." *Id.* They must ascertain "what the state law is" on choice of law, "not what it ought to be." *Id.* at 497. Or, as the Court would later put it, "[a] federal court in a diversity case is not free to engraft onto those state [choice-of-law] rules exceptions or modifications which may commend themselves to the federal court, but which have not commended themselves to the State in which the federal court sits." *Day & Zimmermann, Inc. v. Challoner,* 423 U.S. 3, 4 (1975) (per curiam). To do that would be to do precisely what *Erie* forbids: to declare substantive rules of federal common law applicable in a case governed by state law.

Although plaintiffs cite both *Erie* and *Klaxon*, they fail to come to grips with the limitations on federal judicial power imposed by those cases. The result is that

plaintiffs ask for that which the Court cannot give: an order directing the MDL court to treat cases originally, voluntarily, and properly filed in the Southern District of Indiana ***as if*** they had been filed in another venue, and to apply the choice-of-law rules of ***that*** forum, and not those of Indiana, simply because their cases are part of an MDL. And they seek this ruling despite the fact that the Southern District of Indiana would have been a proper venue for these cases even if they had not been part of an MDL. Make no mistake: plaintiffs are asking for nothing less than the Court to make federal common law—to engraft onto Indiana's choice-of-law rules a special rule of the federal judiciary's own making just for this situation—exactly what *Erie* and *Klaxon* say a federal court cannot do. No matter how sensible the plaintiffs' proposed rule might seem to some, Indiana choice-of-law rules apply just the same whether the case at hand was filed as part of an MDL or as a standalone lawsuit. They make no exception of the kind plaintiffs' advocate, and the MDL court was not free to create one.

## STATEMENT OF THE ISSUE

Whether the district court had authority to deviate from *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941), and, without the parties' consent, apply the choice-of-law rules of the plaintiffs' home jurisdictions, instead of those of the forum state—Indiana.

## STATEMENT OF THE CASE[3]

Two plaintiffs sued three related but separate entities for product liability in the Southern District of Indiana. Plaintiff Victoria Looper is a resident of South Carolina, and Plaintiff Sammie Lambert lives in Mississippi. As for the defendants, two of them (Cook Incorporated and Cook Medical LLC) are incorporated and based in Indiana, and the third (William Cook Europe ApS) is incorporated and based in Denmark.

Plaintiffs claim the Cook defendants designed, manufactured, and sold a defective medical device called an inferior vena cava filter. (Dkt. 213, ¶¶ 1-5.) IVC filters catch and break up dangerous (indeed, often fatal) blood clots, and prevent them from travelling from the lower extremities to the lungs and other vital organs. (*Id.* ¶ 33.) Both Looper and Lambert allege they had their Cook filters implanted and ultimately removed in the states where they currently live. (Looper's Opening Br. p. 3; Lambert's Opening Br. p. 3.)

i

The plaintiffs' cases are part of a multidistrict litigation proceeding in which many similar cases are pending: *In re Cook Medical, Inc., IVC Filters Marketing, Sales*

---

[3] All "Dkt." citations are to the MDL master docket, Case No. 1:14-ml-2570-RLY-TAB, unless otherwise noted. All "SA" citations are to Looper's short appendix.

*Practices & Products Liability Litigation*, MDL No. 2570. Under the MDL statute, 28 U.S.C. § 1407, the Judicial Panel on Multidistrict Litigation has the authority to transfer a case to "any district" for "coordinated or consolidated pretrial proceedings." The court to which the cases are transferred is the "transferee" court. 15 FED. PRAC. & PROC. JURIS. § 3866.1 (4th ed.) (hereafter "WRIGHT & MILLER"). And the courts from which the cases are transferred are the "transferor" courts. *Id.* When a case is originally filed in the MDL court, there is no "transferee" or "transferor" court; there is simply the court in which the case has been filed.

The fact that an MDL may be situated in "any district" means that the transferee district need not be located in an otherwise proper venue and need not have personal jurisdiction over any of the defendants. 15 WRIGHT & MILLER § 3862. But the Cook IVC filter MDL is unusual in that the Southern District of Indiana ***is*** a proper venue for all of the cases in the MDL and the district court ***does*** have jurisdiction over all of the defendants. That is undisputed. (*See* Dkt. 11131, p. 2.) As the MDL master complaint alleges, "[a] substantial amount of activity giving rise to the claims occurred [in Indiana], and Defendants may be found [there]." (Dkt. 213 at 8, ¶ 28.) Indeed, plaintiffs ***requested*** the Judicial Panel on Multidistrict Litigation to assign the MDL to a judge in the Southern District of Indiana, arguing "it is hard to imagine a more appropriate forum than

that of where the Defendants made, marketed and sold the product and where the Defendant is headquartered." (Dkt. 10786-5, p. 8.)

Perhaps not surprisingly, then, many plaintiffs have voluntarily filed their cases in the Southern District of Indiana. Under a standing order, all related cases that make their way to the Southern District, including cases "originally filed in" that district, are to be reassigned to the MDL judge, The Honorable Richard L. Young. (Dkt. 2046.) That is how the Looper and Lambert cases made their way into the MDL: they were filed originally in the Southern District of Indiana and then consolidated with all of the other filter cases.

### ii.

Meanwhile, in June 2018, the Cook defendants moved for an order creating a bellwether trial plan. (Dkt. 8449.) Bellwether plans allow parties to try representative cases in an MDL in the hope that the verdicts they produce will shed light on the relative value of the much larger categories of cases to which the bellwethers belong. Judge Eldon E. Fallon, et. al., *Bellwether Trials in Multidistrict Litigation*, 82 TUL. L. REV. 2323, 2325 & 2332 (2008). The cases in this MDL have been divided into several categories based on each plaintiff's alleged injury type, and the MDL judge's plan is to hold bellwether trials in several of those categories. (Dkt. 9322.) The hitch is that the MDL statute requires cases that have been

transferred to the MDL to be remanded to the transferor venue for trial. 28 U.S.C.
§ 1407(a); *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).
So if a plaintiff originally filed her case in, say, the Northern District of Florida,
and that case was then transferred to the Southern District of Indiana, once pre-
trial proceedings have concluded in the MDL court, that case must be returned
to the Northern District of Florida for trial, assuming it has not already been ter-
minated. As a result, to get a representative bellwether pool, MDL courts some-
times ask affected parties to waive their so-called "*Lexecon* rights." Judge Fallon,
82 TUL. L. REV. at 2357; *see also Armstrong v. LaSalle Bank Nat'l Ass'n*, 552 F.3d
613, 618 (7th Cir. 2009) ("[I]t is clear that … plaintiffs can in fact waive the right
to § 1407(a) remand."). At a hearing held on May 9, 2019, plaintiffs' MDL steering
committee agreed to consult with plaintiffs' lawyers whose cases were being con-
sidered for the bellwether pool, to determine whether their clients would agree to
a trial in the MDL court. (*See* May 9, 2019 Hearing Tr. 11:17-12:11, 13:5-14:12.)
Little did anyone know at the time, this would touch off several rounds of mo-
tions that would culminate in the judgments that led to these appeals.

Less than two weeks after the May 9th hearing, plaintiffs' steering commit-
tee notified the MDL court that no plaintiff would waive his or her *Lexecon* rights,
and they submitted a brief on the issue. (Dkt. 10786-1, 10715.) Most of the cases

11

under consideration for bellwether trials had not been transferred to the MDL
court, but instead had been filed originally in the Southern District of Indiana,
just as the Looper and Lambert cases were. Nevertheless, plaintiffs claimed they
had a right to try their cases in their home jurisdictions because, according to
them, they filed their cases in the Southern District pursuant to something called
a direct-filing order. (*See* Dkt. 10715, pp. 6-7.)

Used in many MDLs, direct-filing orders reflect court-approved agree-
ments by the parties that allow plaintiffs to bypass the tag-and-transfer process of
section 1407, and file their cases, as the name suggests, "directly" in the MDL.
Judge Fallon, 82 TUL. L. REV. at 2355-56. If venue is not proper in the MDL
court, and it often is not, a direct-filing process will work only if the defendants
waive their venue and jurisdictional objections. *See, e.g., In re Vioxx Prods. Liab.
Litig.*, 478 F. Supp. 2d 897, 903 (E.D. La. 2007). Once pretrial proceedings have
ended, the parties usually agree that any case not tried as part of the bellwether
process may be automatically transferred for trial to the plaintiff's designated ju-
risdiction. (*See, e.g.*, Dkt. 10786-2, pp. 2-3; 10786-4, pp. 2-3.) Direct-filing orders
also may contain a stipulation as to the applicable choice-of-law rules. *See* Judge
Fallon, 82 TUL. L. REV. at 2356 n.115.

In response, the Cook defendants pointed out that the parties had never stipulated to any direct-filing procedure, and that the MDL court had never entered any direct-filing order. (Dkt. 10786, pp. 15-17.) While direct-filing orders are common, they are not universal, let alone mandatory. That is doubly so in cases like those in the MDL here, where venue is proper. In this MDL, Judge Young did not decline to enter a direct-filing order; he simply was never asked to entertain one at all. (*See* Dkt. 11131, p. 2.) And while certain statements in a small number of filings could be mistakenly construed, when read in isolation, to suggest there was a direct-filing order in place, there is no actual direct-filing order in this MDL. As a result, plaintiffs were relegated to asking the MDL court in effect to **imply** a direct-filing agreement—something no court, to our knowledge, has ever done.

On June 13, 2019, after holding a hearing on the issue, the MDL court ruled that "[t]here is no direct-filing order entered in this case …." (Dkt. 11131, p. 2.) The cases at issue here were originally filed in the Southern District of Indiana and, thus, the MDL Court was not a "transferee" court within the meaning of section 1407 and *Lexecon*. (*See id.*) More, the court noted, "the parties agree[d] that the Southern District of Indiana is the proper venue under 28 U.S.C. § 1391." (*Id.*) Accordingly, the MDL court held that it "has complete authority over cases

originally filed in [the Southern District of Indiana], just as it would over any other
case originally filed in this district." (*Id.*)

Thus, while the plaintiffs in these cases no doubt may seek discretionary
transfers to another venue for trial pursuant to 28 U.S.C. § 1404(a), which governs
transfers for convenience, plaintiffs do not have a right to a "remand" under *Lex-
econ. In re Afr.-Am. Slave Descendants Litig.*, 471 F.3d 754, 756 (7th Cir. 2006); *In re
Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 333 F.3d 763, 767 (7th Cir. 2003),
*abrogated in non-relevant part by Smith v. Bayer Corp.*, 564 U.S. 299 (2011). This is
simply a consequence of a plain-reading of the MDL statute, which provides in
relevant part that, "[w]hen civil actions involving one or more common questions
of fact are pending in different districts, such actions may be transferred to any
district for coordinated or consolidated pretrial proceedings," and that "[e]ach
action **so transferred** shall be remanded by the panel at or before the conclusion
of such pretrial proceedings to the district from which it was transferred …." 28
U.S.C. § 1407(a)(emphasis added). A case cannot be "remanded" to a court where
it was never pending.

iii

With the *Lexecon* issue seemingly out of the way, the Cook defendants filed
a motion for summary judgment on statute-of-limitations grounds in 26 cases,

14

including *Looper* and *Lambert*. (Dkt. 11921.) Citing the Supreme Court's decision in *Klaxon*, the Cook defendants argued the applicable choice-of-law rules were supplied by the forum—Indiana—which deems statutes of limitations "procedural." (Dkt. 11922, pp. 4-7.) In practice this means that even though the law of another state might govern liability in a case, Indiana law establishes the deadline by which the case must be filed. *See Albrecht v. Indiana Harbor Belt R.R. Co.*, 178 F.2d 577, 578 (7th Cir. 1949). "[The Supreme Court] has long and repeatedly held that the Constitution does not bar application of the forum state's statute of limitations to claims that in their substance are and must be governed by the law of a different state." *Sun Oil Co. v. Wortman*, 486 U.S. 717, 722 (1988).

Indiana imposes a two-year statute of limitations on product-liability claims. IND. CODE § 34-20-3-1. The 26 plaintiffs that were the subject of Cook's motion all claimed they were injured by having to undergo a surgical procedure to remove their IVC filters. (*See* Dkt. 11922-1.) Therefore, the Cook defendants argued, the latest the plaintiffs could file suit was two years after their removal surgery. (Dkt. 11922, p. 9.) None had done so, however, all missing the statute of limitations by a substantial margin. (Dkt. 11922-1, p. 4.)

In response, plaintiffs again pressed the notion that there was an implied direct-filing order in place, and therefore that their cases originally filed in the

15

Southern District of Indiana should nevertheless be treated "as if" they had been

filed in their home districts for purposes of choice of law. (Dkt. 12250, 12269.)

Plaintiffs argued that some federal courts have taken this approach, including this

Court in *Dobbs v. DePuy Orthopedics, Inc.,* 842 F.3d 1045 (7th Cir. 2016), a case that

arose out of an MDL with an express direct-filing order. (Dkt. 10786, p. 10 n.6;

10786-2.) More on *Dobbs* later, but suffice to say for now, as the Court in that case

observed, the plaintiff filed in the MDL jurisdiction "only because" the MDL was

already in progress there. 842 F.3d at 1048-49. Unlike in this MDL, venue was

not otherwise proper; "[t]he only contact with [the forum state] was the venue of

the multidistrict litigation." *Id.* at 1049. As an alternative to their *Dobbs* argument,

plaintiffs argued the Cook defendants were judicially estopped from arguing there

was no direct-filing order in place. (Dkt. 12250, pp. 3-4; 12269, pp. 3-4.)

On October 25, 2019, at a hearing on the issue, the court confirmed its

prior ruling: "there's no direct filing order." (SA 40:3-4.) The court also made clear

that it did not believe judicial estoppel applied because it had not been deliberately

misled by the Cook defendants about the existence of a direct-filing order. (SA

39:7-9, 39:25-40:2.) "Anytime you have litigation involving thousands of cases like

we do here in this MDL," the court stated, "there's going to be confusion. Obvi-

ously with 12,000 docket entries, we're going to have some confusion." (SA 39:18-

16

21.) That was particularly true here given that in 2017 a new firm took over the defense of the MDL, which by then had already been underway for over two years. (Dkt. 3646, 3883.)

A few days after the hearing, the court entered a formal order concluding that "Indiana law applies." (SA 1.) "The cases at issue," the court observed, "were originally filed in the Southern District of Indiana, Indianapolis Division, and are not 'direct-filed' cases—i.e., cases treated as if they originated in the plaintiff's home district and had been transferred to this district by the Judicial Panel on Multi-District Litigation pursuant to Section 1407." (*Id.*) Furthermore, the court wrote, "under the unique circumstances of this case, … judicial estoppel does not bar Cook from arguing the application of Indiana's choice-of-law rules." (*Id.*)

iv.

Unhappy with the court's choice-of-law ruling, plaintiffs filed a motion to reconsider. (Dkt. 12609.) Both sides more or less rehashed the same ground, but this time the court altered tack. In an entry dated February 24, 2020, the court noted that "[t]here seems to have been confusion as to whether there was a direct-filing order," and in support cited a couple filings where "the Cook Defendants represented that there was such an order," as well as a related May 31, 2017 entry in which "the court analyzed the choice-of-law issue as though the Plaintiffs' cases

17

subject to the motion were directly filed in this MDL forum pursuant to a direct filing order." (SA 45-46.) None of this concerned the Looper and Lambert cases directly; the choice-of-law statements were made in a separate motion in a different matter that the parties have referred to as the *Sales-Orr* case. (*See* SA 15-23.)

Although "[t]he parties now agree[d] there was never an *express* direct-filing order issued in this case," the court believed those lawyers "who directly filed foreign cases in [the Southern District of Indiana] between May 31, 2017 [the date of the *Sales-Orr* entry] and October 29, 2019 [the date of the court's choice-of-law ruling] may have read and relied on the May 31 Entry [in *Sales-Orr*] to conclude that there was, in fact, a direct-filing order in place." (SA 48.) Given all this, the court believed "the best course of action" was to treat foreign cases filed during this timeframe "as if" there had been a direct-filing order already in place. (*Id.*) This meant, according to the court's logic, that these cases would "be governed by the choice-of-law rule of the Plaintiffs' 'home' jurisdiction." (*Id.*) "But because venue is otherwise proper in Indiana," the court added that "all other foreign direct-filed cases shall be governed by the choice-of-law rules of Indiana." (SA 48-49.)

Translation: the court split the baby. The court never explained, however, the source of its authority do this—to alter the governing choice-of-law rules for

certain cases, filed in what everyone agrees is a proper venue, but not for others. Judicial estoppel could not justify this ruling, because the court ruled judicial estoppel did not apply. (SA 1.) Nor could the existence of a direct-filing order, because there was none. (Dkt. 11131, p. 2.) What then gave the court the power to deviate from the rule in *Klaxon*? It did not say.

So, the defendants filed their own motion to reconsider, arguing that the court was bound by Supreme Court precedent to apply Indiana choice-of-law rules to **all** cases originally filed in the MDL court. (Dkt. 13106.) The court, in other words, did not have the authority to create a carve-out to the *Klaxon* rule. (*Id.* at 9-11.) In the alternative, the Cook defendants asked the court at least to narrow the carve-out period, to extend only through June 13, 2019 (when the court first made clear there was no direct-filing order), instead of through October 29, 2019 (as the court originally ruled), a request the plaintiffs did not oppose (*id.* at 11-13; Dkt. 13227, p. 13).

On May 29, 2020, the court entered an order declining to rescind its carve-out to the *Klaxon* rule. (Dkt. 13539.) It did agree, however, to shorten the carve-out period to May 31, 2017 through June 13, 2019, as the Cook defendants had alternatively requested. (*Id.* at 2.) Again, the court did not explain the source of its authority to create a carve-out to Indiana's choice-of-law rules in the first place.

19

The court said only that it was not "fair" to subject plaintiffs who filed their cases during this time period to the laws of Indiana, and that doing so would "contravene[] the law of the case," which the court suggested had been established—apparently for the entire MDL—by the *Sales-Orr* entry of May 31, 2017. (*See id.*)

v.

After the Cook defendants supplemented the record with additional medical records, the court finally ruled on the pending motion for summary judgment as to the plaintiffs here. (Dkt. 14000, p. 2; 14209-5; 14209-6; 14210-5; 14210-6; 14428; 14429.) Because Looper and Lambert had filed their cases outside of the carve-out period (Looper before May 31, 2017 and Lambert after June 13, 2019), even under the MDL court's modified ruling their claims were governed by Indiana's two-year statute of limitations. Looper had her filter removed on February 18, 2014, yet she did not file her complaint until December 29, 2016, nearly a year too late. (Dkt. 11921-1.) Lambert had her filter removed on July 18, 2016, but she did not file her complaint until June 25, 2019, also nearly a year too late. (*Id.*) The court therefore entered summary judgment against both plaintiffs. (SA 3-4; Dkt. 14429.) These appeals followed.

## SUMMARY OF THE ARGUMENT

Supreme Court precedent decides this case. Under *Klaxon*, a district court "must" apply the choice-of-law rules of the forum state. The district court here had no authority to do otherwise. The Supreme Court has squarely held that federal courts may not deviate from the forum's choice-of-law rules by resorting to their own sense of what the governing law should be. But that is exactly what the plaintiffs are asking this Court to do here. They want the Court to declare that Indiana choice-of-law rules do not apply to cases filed originally (and properly) in the Southern District of Indiana and consolidated into the Cook IVC filter MDL, because, well, it's an MDL and MDLs are different. No, they are not—not for choice-of-law purposes. Absent the parties' consent, which did not occur, or waiver or estoppel, concepts that do not apply here, MDLs are subject to the same choice-of-law rules that apply in every other case. And under those rules, which in this case rest on Indiana law, plaintiffs' claims are time-barred.

The Seventh Circuit's decision in *Dobbs* does not provide otherwise, nor could it. *Dobbs* is premised on the fact that the plaintiff there filed suit in an MDL that was located in an ***improper*** venue. Unlike the MDL venue here, the MDL venue there had no independent connection to the case whatsoever; it was just the district that the Judicial Panel on Multidistrict Litigation chose for that

particular MDL. And it is well recognized that when the venue initially chosen by the plaintiff is improper, and the case then is transferred to a proper venue, the choice-of-law rules that apply are those of the transferee venue, and not those of the original venue. Here, because the original venue plaintiffs selected *is* proper, the rule in *Klaxon* applies and *Dobbs* does not.

The defendants never agreed to deviate from *Klaxon*. The plaintiffs now concede there never was an express direct-filing order, to say nothing of a direct-filing order that changed the default choice-of-law rules. Nor was there a stipulation in which the parties agreed to treat the plaintiffs' cases "as if" they had been filed in their home jurisdictions. The most plaintiffs can do is to point to a couple of briefs filed in two unrelated MDL cases in which the defendants applied the wrong choice-of-law rules based on the incorrect assumption that there was a direct-filing order in place. But that is not evidence of a bilateral stipulation to deviate from *Klaxon*. It is just what it purports to be: evidence of a unilateral mistake. Both the district court and the plaintiffs themselves have acknowledged the Cook defendants made a mistake, and that they never intentionally misled anyone. And it is well settled that a mistake does not judicially estop a party from asserting the correct law. The case for estoppel is particularly weak here given that the mistake was not even made in *Looper* and *Lambert*, but in a different set of cases

22

altogether, *Graham* and *Sales-Orr*, all of which, under Supreme Court precedent, retained their separate identities, though they were part of the same MDL. Add to this the fact that Looper filed her suit ***before*** the district court even relied on the defendants' mistaken statements, and that Lambert filed her case ***after*** the district court had made clear there was no direct-filing order, and there is no reasonable case to be made for estopping the defendants from relying on the correct choice-of-law rules. A couple of mistakes in a couple of cases ought not set the rules for hundreds or thousands of other, separate, independent cases.

There is no dispute that if Indiana's choice-of-law rules apply, and they do, then Indiana's statute of limitations also applies. Nor is there a dispute that if Indiana's statute of limitations applies, and it does, plaintiffs' cases were properly dismissed as untimely. The Court therefore should affirm.

23

# ARGUMENT

A district court's determination regarding choice of law is reviewed de novo. *Salve Regina Coll. v. Russell,* 499 U.S. 225, 231 (1991). And a district court's application of the doctrine of judicial estoppel is reviewed only for abuse of discretion. *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 795 (7th Cir. 2013).

## I. THE DISTRICT COURT HAD NO AUTHORITY TO DEPART FROM SUPREME COURT PRECEDENT AND APPLY PLAIN-TIFFS' HOME CHOICE-OF-LAW RULES.

"MDLs are not some kind of judicial border country, where the rules are few and the law rarely makes an appearance." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d 838, 844 (6th Cir. 2020). Quite the contrary: "the law governs an MDL court's decisions just as it does a court's decisions in any other case." *Id.* This fact is bolstered by the Supreme Court's unanimous holding that, save for one exception not relevant here, the cases in an MDL "retain their separate identities." *Id.* at 841 & 845 (quoting *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 413 (2015)). "That means an MDL court's determination of the parties' rights in an individual case must be based on the same legal rules that apply in other cases, as applied to the record in that case alone." *Id.* at 841. A case is a case is a case.

24

The Supreme Court illustrated precisely this point in *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998)—again, unanimously. There, the Court put an end to the practice of MDL courts conducting trials in cases where, under the plain terms of the MDL statute, the MDL courts lacked power to do so. *Id.* at 28. That statute authorizes the transfer of cases to an MDL court only for "pretrial proceedings." 28 U.S.C. § 1407(a). Yet MDL courts were routinely transferring cases to themselves for trial pursuant to 28 U.S.C. § 1404(a), a practice the Ninth Circuit approved as "conducive to efficiency." *Lexecon*, 523 U.S. at 32. All nine Justices rejected the practice. "That some observers thought it 'more desirable' that MDL courts should have that power was beside the point—because the relevant law made clear they did not." *In re Nat'l Prescription Opiate Litig.*, 956 F.3d at 844 (discussing *Lexecon*). Section 1407(a) "uncondition[ally]" commands the Judicial Panel on Multidistrict Litigation to "remand" for trial every case transferred to the MDL, unless the case already has been disposed of by the MDL court during pretrial proceedings. *Lexecon*, 523 U.S. at 35-36.

Here, the applicable law is every bit as clear.

### I.A.  SUPREME COURT PRECEDENT REQUIRED THE DISTRICT COURT TO APPLY INDIANA'S CHOICE-OF-LAW RULES.

"The conflict of laws rules to be applied by the federal court in [the forum state] must conform to those prevailing in [the forum's] state courts." *Klaxon Co.*

*v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *see also, e.g., Jean v. Dugan*, 20 F.3d 255, 260-62 (7th Cir. 1994) (applying Indiana's choice-of-law rules). There is no room for innovation. Larry Kramer, *Choice of Law in Complex Litigation*, 71 N.Y.U. L. REV. 547, 552 (1996). The forum's choice-of-law rules must be applied as-is, not as a federal court might wish them to be; for that is what it means to "conform" to the rules prevailing in the forum's state courts. *Day & Zimmermann, Inc. v. Challoner,* 423 U.S. 3, 4 (1975) (per curiam); *Klaxon*, 313 U.S. at 497.

This rule follows directly from *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). *Erie* overruled *Swift v. Tyson*, 41 U.S. 1 (1842), which held that federal courts sitting in diversity were bound by state statutory law, but not state common law. *Erie*, 304 U.S. at 71. The result was that "rights enjoyed under the unwritten 'general law' var[ied] according to whether enforcement was sought in the state or in the federal court …." *Id.* at 74-75. This "rendered impossible equal protection of the law." *Id.* at 75. The *Erie* Court thus held that, "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state," including its common law. *Id.* at 78. For "[t]here is no federal general common law." *Id.* "Congress has no power to declare substantive rules of common law applicable in a state whether they be local in their nature or 'general,' be they commercial law or a part of the law of torts. And no

26

clause in the Constitution purports to confer such a power upon the federal courts." *Id.*

*Klaxon* simply extends *Erie*'s prohibition on independent determinations of substantive common law to the field of conflict of laws. 313 U.S. at 496. The focus of *Klaxon* "is on ensuring that, in determining whether to apply the substantive law of the state in which it sits or the substantive law of another state, a district court should follow the choice of law rules of the forum state to ensure that the replacement of one state's law by another is based on a state policy decision and not a federal one." *Allstate Ins. Co. v. Menards, Inc.*, 285 F.3d 630, 636 (7th Cir. 2002). This makes sense because choice of law is not a matter of procedure. "It is, in fact, as substantive as it gets." Kramer, 71 N.Y.U. L. REV. at 569. "For choice of law is, literally, the assignation of rights to the parties—the decision defining what the plaintiff and defendant are entitled to on the particular facts." *Id.* Accordingly, to deviate from the forum's choice-of-law rules in a diversity case is to contravene the guiding policy of *Erie*: that "the mere existence of federal jurisdiction does not justify modifying the parties' substantive rights under state law." *Id.* at 576.

If this all is true, and it is, then the "mere existence" of an MDL (which typically is just a collection of diversity cases) should make no difference either.

27

The rights a litigant has individually should be the same even if, for reasons of convenience and efficiency, she is asked to litigate with others. Kramer, 71 N.Y.U. L. REV. at 572-73. The fact of consolidation itself cannot justify changing those rights. *Id.* at 572. To let it do so is truly to let the tail of procedural convenience wag the dog of substantive law. *Id.*

To illustrate the point, take cases that have been filed in a proper venue and then transferred for disposition in another venue. In *Van Dusen v. Barrack,* 376 U.S. 612 (1964), the Supreme Court held that where a defendant seeks transfer to another venue pursuant to 28 U.S.C. § 1404(a), the transferee district must apply the state law that would have applied had there been no change of venue. The Supreme Court later extended this principle to transfers initiated by plaintiffs. *Ferens v. John Deere Co.*, 494 U.S. 516 (1990). The Court reasoned that "[a] change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms." *Van Dusen*, 376 U.S. at 639. This rule "fully accords" with *Erie* in that it "ensure[s] that the 'accident' of federal diversity jurisdiction does not enable a party to utilize a transfer to achieve a result in federal court which could not have been achieved in the courts of the State where the action was filed." *Id.* at 637-38.

Consistent with the principle that MDL cases are governed by the same rules as any other case, "courts agree uniformly that *Van Dusen* applies to transfers under Section 1407(a) in diversity of citizenship cases." 15 WRIGHT & MILLER § 3867. The Seventh Circuit is no exception. *See, e.g., Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 732 (7th Cir. 2010). Thus, if the plaintiffs here had filed suit in their home jurisdictions (as many plaintiffs in this MDL have done), and their cases were then transferred as tag-along actions to the Southern District of Indiana, their home choice-of-law rules would govern.

There is no dispute plaintiffs could have done this. But there is also no dispute plaintiffs did ***not*** do this. Therefore, they are forced to ask the Court to treat their cases "as if" they "'originated' in a place selected by the plaintiff as 'appropriate' but for the MDL." (Looper Opening Br. p. 11.) If the Court does that, they say, "the law that would have been applied by the 'originating,' i.e., transferor, forum," becomes the law that "is applied in cases 'direct-filed' into the MDL as well." (*Id.*)

There are three fundamental problems with this claim: (1) venue is proper in the MDL court, (2) plaintiffs voluntarily chose to file their cases in that court, and (3) the Cook defendants never agreed to deviate from *Klaxon* and apply the

29

choice-of-law rules of a non-forum state. These facts are dispositive of these appeals.

### I.B.  PLAINTIFFS VOLUNTARILY FILED THEIR CASES IN A PROPER VENUE AND, THEREFORE, *KLAXON* MANDATED THE APPLICATION OF INDIANA'S CHOICE-OF-LAW RULES.

Plaintiffs' principal authority is this Court's decision in *Dobbs v. DePuy Orthopedics, Inc.,* 842 F.3d 1045 (7th Cir. 2016), but that case does not support their argument. Just the opposite. In *Dobbs,* the Court "ratif[ied]" the approach adopted in two lower court decisions that "foreign cases filed directly in a district court as a part of ongoing multidistrict litigation are treated as having originated outside of that district." *Id.* at 1049. Read out of context, this statement might seem to apply in every case originally filed in an MDL, regardless of the circumstances— at least, that is how plaintiffs read it. But we know that cannot be true based on the background principles of law that have already been discussed. The Court has no authority to deviate from Supreme Court precedent just because a case happens to be filed in an MDL, *Klaxon* included, and the *Dobbs* court surely understood this. So what could justify this rule, and when does it apply? The answer: in *Dobbs* venue was improper in the MDL court, and it is only when that is true, and the plaintiff originally files her case there and then the case is transferred to a proper venue, that *Dobbs* governs.

## I.B.1. *Dobbs* Hinges On The Fact That Venue Was Improper In The MDL Court.

The *Dobbs* Court was careful to note that "Dobbs's claim … was filed in the Northern District of Ohio **only because** the DePuy multidistrict litigation was already in progress there." 842 F.3d at 1048-49 (emphasis added). The Northern District of Illinois, where the case was eventually transferred, otherwise had "the most significant relationship to th[e] dispute." *Id.* at 1049. In contrast, "[t]he **only** contact with Ohio was the venue of the multidistrict litigation." *Id.* (same). As the Court noted, "[t]he contract was entered into in Illinois, Dobbs [was] an Illinois resident, [the other interested party, a lawyer seeking fees] resided and did business in Illinois, and the events giving rise to the underlying lawsuit occurred in Illinois." *Id.* In other words, under the general venue statute, 28 U.S.C. § 1391, venue was proper in Illinois, but improper in Ohio. "Thus," the Court concluded, "Illinois law applies." *Dobbs*, 842 F.3d at 1049.

Although the Court did not mention it, the MDL in which Dobbs filed his case had an express direct-filing order. (SA 43-44.) This explains why Dobbs believed he could file his case directly in an otherwise improper venue. If venue in the MDL court is improper under section 1391, absent a direct-filing order and a waiver by the defendants of their venue and jurisdictional objections, non-resident plaintiffs have no basis on which to file a case there. *See* Judge Fallon, 82 TUL. L.

31

REV. at 2357 n.116. & 2358. Contrary to what plaintiffs appear to believe, JPML
Rule 7.2(a) does not provide otherwise, nor could it, as the Judicial Panel on Mul-
tidistrict Litigation does not have the authority to promulgate rules "inconsistent
with Acts of Congress." 28 U.S.C. § 1407(f). That rule simply says that "[p]otential
tag-along actions filed in the transferee district do not require Panel action." That
does not mean a plaintiff has a right to file in the MDL district even if venue is
improper under section 1391; it just means that if a plaintiff ***does*** file in the MDL
district, the JPML does not need to get involved, as it does with tagged-and-trans-
ferred cases. *See* 28 U.S.C. § 1407(a). The case is simply assigned to the MDL
judge pursuant to local procedure. (*See, e.g.*, Dkt. 2046.) But defendants still have
a right to object if venue is improper or personal jurisdiction is lacking. *See* 15
WRIGHT & MILLER § 3866; Judge Fallon, 82 TUL. L. REV. at 2357 n.116 & 2358.

Concern about an improper venue governing choice of law also was the
driving force behind the two lower court decisions whose approach the *Dobbs*
Court ratified. In the first, *In re Yasmin & Yaz (Drospirenone) Marketing, Sales Practices
& Products Liability Litigation*, No. 3:09-md-02100-DRH-PMF, 2011 WL 1375011
(S.D. Ill. Apr. 12, 2011), the court began by noting that "the governing choice of
law rules will depend on each case's source of origin." *Id.* at *5. For cases that
were "local" (that is, where venue was proper in the Illinois-based MDL court),

"Illinois choice of law rules control." *Id.* (citing *Tanner v. Jupiter Realty Corp.,* 433
F.3d 913, 915 (7th Cir. 2006)). "As to transfer cases, however, … the choice of
law rules that govern are the rules of the jurisdiction from which each case was
transferred." *Id.* (citing *Chang,* 599 F.3d at 732). Finally, as for "cases that origi-
nated outside of this Court's judicial district and that were filed directly into the
MDL … pursuant to the Court's direct filing Order," the court believed the "bet-
ter approach" was to treat those cases "as if they were transferred from a judicial
district sitting in the state where the case originated." *Id.* at *1 & *6. Otherwise,
the court suggested, "it would be an odd result to subject plaintiffs to [the law of
the MDL forum] **simply because** they took advantage of the direct filing proce-
dure," a procedure that was established, as in *Dobbs,* by an express direct-filing
order. *Id.* (quoting *In re Bausch & Lomb Inc. Contacts Lens Solution Prods. Liab. Litig.,*
MDL No. 1785, 2007 WL 3046682, at *3 (D.S.C. Oct. 11, 2007)) (emphasis
added). To put it another way, the court concluded that it made no sense to apply
the MDL forum's choice-of law rules because, again as in *Dobbs,* the case had no
independent connection to the MDL venue.

In the second case the *Dobbs* court relied on, *In re Watson Fentanyl Patch
Products Liability Litigation,* 977 F. Supp. 2d 885 (N.D. Ill. 2013), the court made
even more clear that its choice-of-law holding hinged on the fact that the case had

33

originally been filed in an otherwise improper venue pursuant to an express direct-

filing order. "[U]nlike the usual case filed in this district," the court wrote,

> the present case has **no connection with Illinois** other than the for-
> tuity that the JPML authorized an MDL proceeding to take place here
> …. Illinois is essentially an artificial forum created for purposes of
> convenience and efficiency. That is doubly true for the present case,
> which was filed here only by virtue of a court-approved direct-filing
> procedure whose sole purpose was to maximize convenience and
> save the parties' and judicial resources.

*Id.* at 888 (emphasis added). "Given these circumstances," the court concluded,

"it would not make a great deal of sense to apply Illinois law in this case, or even

Illinois' choice of law rules." *Id.*

Once we understand the facts motivating these decisions, we can under-

stand how *Dobbs* is consistent with background principles of law, and also how it

can support deviating from *Klaxon* when—but only when—venue is improper in

the MDL court, the plaintiff originally files her case there, and the case is then

transferred to a proper venue.

### I.B.2. *Dobbs* Is Consistent With The Rule That Cases Trans-ferred From An Improper Venue Are Governed By The Choice-Of-Law Rules Of The Proper, Transferee Venue.

First, *Dobbs* is consistent with the law governing venue transfers. As dis-

cussed earlier, in cases transferred under 28 U.S.C. § 1404(a), which operates on

the premise that the plaintiff has commenced suit in a proper venue, *Hoffman v.*

34

*Blaski*, 363 U.S. 335, 343-44 (1960), the governing choice-of-law rules are those of the original forum. *Van Dusen*, 376 U.S. at 639. Indeed, the *Dobbs* court itself suggested that *Van Dusen* would have applied if Dobbs's case had been transferred "from a district court with proper venue." *See Dobbs*, 842 F.3d at 1048.

By contrast, in cases transferred under 28 U.S.C. § 1406, which provides for transfer from a forum in which venue is wrongly or improperly laid, the choice-of-law rules that govern are those of the ***transferee*** forum. 14D Wright & Miller § 3827; *see also Edwardsville Nat'l Bank & Tr. Co. v. Marion Labs., Inc.*, 808 F.2d 648, 650 (7th Cir. 1987) (assuming without deciding this is true). "The plaintiff should gain the benefit of the law that would have been applied in the original federal forum only if that court was a proper venue and had personal jurisdiction over the defendant. Therefore, where the transferor court lacked personal jurisdiction, the transferee court must apply its own law regardless …." 14D Wright & Miller § 3827.

Whether venue is "wrong" or "improper" for purposes of section 1406 is generally governed by 28 U.S.C. § 1391. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013). By the plain terms of section 1391, this is equally true when the question is whether venue in a district that hosts an ***MDL*** is wrong or improper. The statute provides in relevant part that "[e]xcept as

35

otherwise provided by law ... this section shall govern the venue of **_all civil ac-
tions_** brought in district courts of the United States ...." 28 U.S. § 1391(a)(1)
(emphasis added).

Dobbs's case ended up in the Northern District of Illinois because it was
transferred there. *Dobbs*, 842 F.3d at 1048. And because venue was improper for
trial in the MDL court under section 1391, transfer would have been appropriate
only pursuant to section 1406. The direct-filing order in *Dobbs* indicates that all
direct-filed cases were to be transferred out pursuant to section 1404(a) (SA 43),
but given the lack of independent connection between Dobbs's lawsuit and the
MDL forum, that could not have been true for his particular case; section 1404(a)
simply doesn't apply in such circumstances. Regardless, the choice-of-law rule
that applies in cases transferred from an improper venue applies "whether the
transfer purports to rest on Section 1406(a) or Section 1404(a)." 14D WRIGHT &
MILLER § 3827.

The only other major circuit court authority on the governing choice-of-
law rules in MDLs also turned on the fact that venue was improper. In *Wahl v.
General Electric Co.*, 786 F.3d 491 (6th Cir. 2015), the plaintiff lived and was treated
for her alleged product-related injuries in Tennessee, but she filed suit in an MDL
located in the Northern District of Ohio pursuant to a direct-filing order. Two

years later, her case was transferred to the Middle District of Tennessee, "the

district court of proper venue," where the court applied Tennessee choice-of-law

rules and dismissed her case as barred by the applicable statute of repose. *Id.* at

493. Wahl argued Ohio choice-of-law rules governed instead, and that if those

rules were applied, her case would not be time-barred. *Id.* at 493-94. The Sixth

Circuit disagreed and affirmed. *Id.* at 494. Unlike in *Van Dusen* and *Ferens*, where

the original "forum was appropriate as to both jurisdiction and venue," Wahl

originally filed her case in an improper venue. *Id.* at 496 & 499. Therefore, the

appellate court ruled, "Wahl's case more closely resembles a transfer under §

1406(a) than a typical transfer under § 1404(a)," which, under circuit precedent

and the "weight of authority," required application of Tennessee's choice-of-law

rules. *Id.* at 497-99.

In this case, unlike in *Dobbs* and *Wahl*, there is no dispute venue is proper

in the MDL court. (Dkt 11131, p. 2.) Under 28 U.S.C. § 1391(b)(1), "[a] civil

action may be brought in … a judicial district in which any defendant resides, if

all defendants are residents of the State in which the district is located[.]" Here,

two of the defendants (Cook Incorporated and Cook Medical LLC) are corporate

"residents" of Indiana, *id.* § 1391(c)(2), and the third (William Cook Europe ApS)

doesn't count for purposes of determining proper venue, because it is

incorporated outside of the United states. *See id.* § 1391(c)(3). This alone makes venue proper in the MDL district.

But venue is also proper because, as the plaintiffs themselves have claimed, the Southern District of Indiana is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred …." 28 U.S.C. § 1391(b)(2). "Therefore," as plaintiffs expressly allege, "venue is proper in this jurisdiction under 28 U.S.C. §1391[(b)(2)]." (SA 8, ¶ 28.)

And thus, as the district court ruled, it "has complete authority over cases originally filed in [the Southern District of Indiana], just as it would over any other case originally filed in this district." (Dkt. 11131, p. 2.) *See also In re Afr.-Am. Slave Descendants Litig.*, 471 F.3d at 756 ("[S]ince venue in Chicago was proper and in any event not objected to by the parties …, the district court was unquestionably authorized, notwithstanding *Lexecon* to determine the merits of the suit." (full citation omitted)).

Consistent with *Klaxon*, then, *Looper* and *Lambert* are governed by Indiana's choice-of-law rules. Read in context, *Dobbs* does not provide otherwise.

38

**I.B.3.** ***Dobbs*** **Is Consistent With The Rule That Parties Are Bound By The Choice-Of-Law Rules Of The Forum In Which The Plaintiff Chooses To File Her Case So Long As Venue Is Proper.**

*Dobbs* is also in keeping with the related body of law that allows plaintiffs to exercise their "venue privilege" by filing suit in a forum of their choice, and in so doing "retain whatever advantages may flow from the state laws of the forum they have initially selected." *Van Dusen,* 376 U.S. at 633. These advantages exist, however, only so long as the venue chosen is proper. Where a plaintiff files suit in an improper venue and the case is transferred, "the transferee court's choice of law rules must be applied in order to prevent a plaintiff from suing in a forum lacking personal jurisdiction or venue for the purpose of capturing the law of that jurisdiction for transportation to the jurisdiction in which service can be obtained." *Manley v. Engram*, 755 F.2d 1463, 1470 (11th Cir. 1985) (cleaned up and citation omitted). On the flip side, in an MDL with a stipulated direct-filing procedure, this rule prevents defendants from agreeing to direct filing in an improper venue only to insist later that the plaintiffs are bound by that improper venue's forum choice-of-law rules. At a minimum, that would be inconsistent with the defendants' voluntary decision to waive venue and jurisdictional objections for pretrial purposes.

The ability to choose among proper venues can create enormous ad-
vantages for plaintiffs. Take for instance the Supreme Court's decision in *Ferens*.
There the plaintiffs sought to side-step the statute of limitations of their home
state of Pennsylvania by filing their case in federal court in Mississippi first, and
only then obtaining transfer to Pennsylvania for convenience under 28 U.S.C. §
1404(a). *Ferens*, 494 U.S. at 519-20. Although the defendants cried foul, the Court
held Mississippi choice-of-law rules applied because that is where the plaintiffs
originally filed their suit and venue was proper there. *See id.* at 523-24. The plain-
tiffs' **reason** for filing their lawsuit in Mississippi did not alter the federal district
court's obligation to apply the rule of *Klaxon*. *See id.* at 527-28. Plaintiff had a right
to sue in Mississippi in the first instance, and that was the end of it.

Just as defendants are bound by the choice-of-law rules of a plaintiff's cho-
sen forum, so long as that forum is proper under section 1391, plaintiffs must
likewise be bound by those same rules. Under *Erie*, federal courts must "replicate"
the consequences of a plaintiff's legitimate "forum shopping opportunities" and
apply the law of the forum where the plaintiff choses originally to file. *Ferens*, 494
U.S. 527-28. This is only fair and just. After all, the rules that apply are a product
of plaintiffs' own voluntary decision to sue in that forum. *Cf. Atl. Marine Constr.*

*Co.*, 571 U.S. at 63-66 (plaintiffs are ordinarily bound by their choice to enter into a contract that requires them to sue only in a particular forum).

### I.C.  THE PARTIES DID NOT AGREE TO DEVIATE FROM THE DEFAULT RULE IN *KLAXON.*

There is a second difference between these cases and *Dobbs*: the parties never agreed to and the MDL court here never entered a direct-filing order. Indeed, there was never any **need** for the court to enter a direct-filing order; with or without one, plaintiffs had the option of filing their cases in the Southern District of Indiana because it was a proper venue. *See* 28 U.S.C. § 1391(b)(1)-(2). Direct-filing orders or stipulations are only necessary if the MDL court is an **improper** venue, as in *Dobbs* and *Wahl.*

The MDL statute, as interpreted by the Supreme Court in *Lexecon*, does not allow the MDL court in an improper venue to override personal-jurisdiction and venue requirements to achieve complete jurisdiction over a case. As a result, and as noted earlier, if the MDL is in an improper venue, absent a direct-filing agreement, defendants retain their venue and jurisdictional objections. *See, e.g.*, *In re Takata Airbag Prods. Liab. Litig.*, 379 F. Supp. 3d 1333, 1339 (S.D. Fla. 2019); *In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 903 (E.D. La. 2007). Case-wide direct-filing orders, therefore, generally are used when the MDL is located in a venue without jurisdiction over all of the defendants in the litigation. Such orders

41

document the defendants' waiver of their venue and jurisdictional objections, and serve as a workaround of the limitations of 28 U.S.C. § 1391. *See*, *e.g.*, *In re Vioxx*, 478 F. Supp. 2d at 903. But to repeat: no workaround was necessary here, because Looper and Lambert always had the right under section 1391 to file suit in the MDL court.

Plaintiffs no longer dispute that the MDL court here never entered a direct-filing order. (SA 48; *see* Looper Opening Br. p. 14 n.3 & 21.) Now, they argue only that the parties "agreed" to a direct-filing procedure, and that the parties were proceeding on the "understanding" that direct-filed cases would be governed by the "originating state's law," by which they mean plaintiffs' home choice-of law rules. (Looper Opening Br. pp. 8, 21; Lambert Opening Br. p. 5.) But they cannot point to any written stipulation in this regard, because there is none. So they are forced to cobble together isolated statements from a small number of filings made in two sets of other cases and ask the Court to ***infer*** a direct-filing agreement, with undefined terms, which, they say, requires application of their home choice-of-law rules. There are several problems with this line of argument.

### I.C.1. There Is No Evidence The Parties Agreed To Deviate From The Default Rule Set Forth In *Klaxon*.

First, even accepting for sake of argument that there was a direct-filing stipulation, and there was not, there is no evidence the parties agreed to deviate from

*Klaxon* as part of that stipulation. Even plaintiffs recognize that direct-filing agree-
ments do not always alter the default choice-of-law rules. (Looper Opening Br. p.
14.) The direct-filing order in *Dobbs* is an example. (*Id.*) It provided that "[t]he fact
that a case was directly filed … will have no impact on the choice of law to be
applied …." (SA 44.) As plaintiffs note, this statement does not identify the law
applicable to each plaintiff's case, and therefore "it likely means that … the parties
simply reached no agreement at all as to the applicable choice-of-law rule."
(Looper Opening Br. 14.) Or, at the very least, it shows they never agreed to
deviate from the default governing law.

Here, we do not even have an order that **references** the issue of choice of
law, let alone a stipulation that reflects an agreement on the subject. Nothing
plaintiffs have cited in the record addresses the issue one way or another. So, even
assuming for the sake of argument that there had been a direct-filing agreement,
it would make no difference to the outcome; the default rule of *Klaxon* would still
govern and Indiana would still supply the applicable choice-of-law rules.

Plaintiffs may argue that all direct-filing stipulations, by their very nature,
agree to treat cases as if they has been filed in another venue, and thus contem-
plate that the non-MDL venue's choice-of-law rules will apply. As discussed ear-
lier, and consistent with *Dobbs* and *Wahl*, that approach arguably makes sense

43

when venue is improper in the MDL court. The argument does not necessarily make sense, however, when the MDL court is in a proper venue for all purposes, as here. In this situation, absent an ***actual*** agreement to apply the choice-of-law rules of a forum different than those of the forum where the case was actually filed, the rule of *Klaxon* must govern. This is a simple matter of precedent. Here, there just is no evidence the parties ever agreed to apply the plaintiffs' home choice-of-law rules.

Plaintiffs point to three categories of documents in support of their argument in this regard. But none of them can reasonably be understood to override the default rule in *Klaxon*.

### I.C.1.a.   The plaintiffs' complaints do not demonstrate the parties agreed to deviate from the default rule in *Klaxon*.

The first set of documents plaintiffs point to is their complaints. (Looper Opening Br. pp. 17-19.) There are at least three problems with this. First, the MDL plaintiffs have never been clear about their preference for treating their cases as if they had "originated" in their home states. For every instance in which plaintiffs have indicated a preference for venue in their home states, they have made contradictory statements acknowledging that the Southern of District of Indiana is a proper—even an ideal—venue:

- In their briefing before the JPML advocating for the creation of the MDL, plaintiffs claimed that it was "hard to imagine a more appropriate forum than that of where the Defendants made, marketed and sold the product and where the Defendant is headquartered"—the Southern District of Indiana. (Dkt. 10786-5, p. 9.)

- In paragraph 27 of their master complaint, they allege that venue is proper for trial "in the federal judicial district of each Plaintiff's state of residence," but in the very next paragraph they allege that "[a] substantial amount of activity giving rise to the claims occurred in this District, and Defendants may be found within this District," and therefore that "venue is proper in [the Southern District of Indiana]." (SA 8, ¶¶ 27, 28.)

- And in paragraph 7 of the standard short-form complaint, there is a blank space where a plaintiff can list the district where venue would otherwise be "proper absent direct filing" (it is this district plaintiffs call the "originating" forum), but paragraph 9 then provides a space where plaintiffs can incorporate by reference the venue allegations from the master complaint, including the paragraph alleging that venue is proper in the Southern District of Indiana, which Looper in fact did. (SA 14.)

Plaintiffs thus have pled two proper venues, indicating they had no clear preference for treating their cases as originating in one venue over the other.

But even if plaintiffs had clearly indicated a preference, their unilateral designation of a preferred venue cannot possibly control. As the Northern District of Illinois explained in *In re Watson*, one of the cases *Dobbs* relies on: "The Court is unaware of any choice of law principle, nor have plaintiffs identified one, that permits a plaintiff to choose the law that applies simply by picking it in his complaint." 977 F. Supp. 2d at 888. Just so here. An allegation in a complaint cannot

erase the fact that plaintiffs **actually** filed their cases in the Southern District of Indiana, a proper venue.

Second and more fundamentally, allegations in a complaint are just that: allegations. And in its master answer, Cook responded to plaintiffs' allegations by effectively denying that another venue was appropriate. (Dkt. 8180, ¶ 27.) *See also* FED. R. CIV. P. 8(b)(5). Likewise, under a standing order in the MDL, "Defendant's appearance alone … serve[s] as a general denial of the allegations contained in the Short Form Complaint and confirmation that Defendants adopt the Master Answer and Affirmative Defenses …." (Dkt. 318, ¶ 4.) So in agreeing to the **form** of the short-complaint, Cook did not agree to the **substance** of any of the allegations that would be made in that short-form complaint or, for that matter, the legal implications those allegations would have.

Plaintiffs suggest it would make no sense to designate an alternative proper venue absent "direct filing" unless that designation dictated the applicable choice-of-law rules. (*See* Looper Opening Br. p. 19.) But plaintiffs forget that the district court has the option of transferring cases originally filed in the MDL court to another venue for trial pursuant to 28 U.S.C. § 1404(a). Plaintiffs' designation gives defendants notice as to where these cases are likely to wind up if and when they are transferred. It is thus entirely consistent with the short-form complaints to

apply the choice-of-law rules of the forum originally selected by the plaintiff—
Indiana.

### I.C.1.b.   CMO-3 and CMO-5 do not demonstrate the parties agreed to deviate from the default rule in *Klaxon*.

The second category of documents plaintiffs rely on are two case management orders entered early on in the MDL. Again, neither indicates the parties agreed to deviate from the default choice-of-law rules.

The first case management order plaintiffs cite is CMO-3. (Looper Opening Br. p. 18.) It says in relevant part that, "[a]s to the cases directly filed in the Southern District after the entry of this Order and the entry of an order in MDL 2570 permitting direct filing, the Short Form Complaints will not name Additional Cook Entities." (Dkt. 353, p. 2(c).) This order seems to contemplate that there would be a direct-filing order entered eventually, but, again, plaintiffs now concede there never was such an "entry." (SA 48; *see* Looper Opening Br. pp. 14 n.3 & 21.) And in any event, there is no indication that, even if such an order had been entered, it would have provided that the default choice-of law rules would not govern.

Plaintiffs are on even weaker ground with the other case management order they cite: CMO-5. (Looper Opening Br. p. 18.) It just says that it "shall govern (1)

47

all cases transferred to this court by the Judicial Panel on Multidistrict Litigation,
including those cases identified in the original Transfer Order and those subse-
quently transferred as tag-along actions; and (2) all cases directly filed in or re-
moved to this MDL." (SA 10.) This language does not even necessarily contem-
plate a direct-filing order. It just recognizes that some cases are transferred to the
MDL, while others are filed there "directly"—that is, as an original matter. But
even if this language is read generously to contemplate a direct-filing order, it
suffers from the same problem that CMO-3 has: it does not say word one about
choice of law.

### I.C.1.c.  The filings in *Graham* and *Sales-Orr* do not demonstrate the parties agreed to deviate from the default rule in *Klaxon*.

The final set of documents plaintiffs point to are two briefs filed by the
Cook defendants in *Graham* and *Sales-Orr*, and a related entry by the district court
in *Sales-Orr*. (Looper Opening Br. pp. 18-20.) In these filings, in reciting the rele-
vant choice-of-law rules, the Cook defendants mistakenly asserted that there was
a direct-filing order in place when stating the applicable choice-of-law for those
cases, and the district court relied on that assertion. (SA 12, 16-17, 19-21.) There
is no getting around it: this was a mistake. But a mistake in the briefing of two
cases does not add up to a stipulation to deviate from Supreme Court precedent

48

for every case originally filed in the MDL court. Stipulations are agreements—contracts—not unilateral descriptions of one side's (mistaken) position on a matter. *Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008).

A number of courts have considered whether a party that initially and mistakenly raised a statute-of-limitations defense based on the wrong choice of law should be allowed to raise the correct statute-of-limitations defense based on the right choice of law at a later stage, and courts say, yes, they should be able to do so. *See, e.g., Yoder v. Honeywell Inc.*, 104 F.3d 1215, 1224 n.3 (10th Cir. 1997) ("We hold that defendant . . . did not waive the statute of limitations defense simply by pleading the defense based on the wrong choice of law."); *accord Zotos v. Lindbergh Sch. Dist.*, 121 F.3d 356, 361 (8th Cir. 1997).

That is the situation here. The defendants mistakenly asserted the wrong choice-of-law rules in a couple of filings. They later recognized the error and asserted the right choice-of-law rules. And based on those correct rules, defendants argued the plaintiffs' claims were time-barred.

In an analogous context, the Seventh Circuit reversed a district court for refusing to apply the correct legal standard based on a finding of waiver. *King v. Kramer*, 763 F.3d 635, 647-48 (7th Cir. 2014). The Court held the plaintiff did not intentionally relinquish its right to application of the correct standard at trial even

49

though the plaintiff had argued for most of the litigation that a different standard applied. *Id.* This was so despite the Seventh Circuit finding that the "delay in asserting the correct standard was substantial" and "[n]o good reason was given" for that delay. *Id.* at 644. The Court's ruling was bolstered by the fact that the plaintiff was not "guilty of gamesmanship or a last-minute ambush." *Id.* at 647-48.

The same is true here. The district court rightly (and repeatedly) noted that any misstatement by the Cook defendants relating to the appropriate choice-of-law rules was inadvertent. (*See*, *e.g.*, Oct. 25, 2019 Hearing Tr. p. 52:7-11 ("On the motion for summary judgment, I don't believe that the Court has been misled—intentionally misled by either side throughout this entire litigation…."); SA 45-46 ("The court relied on the Cook Defendants' (mistaken) representation" that there was a direct-filing order.); May 11, 2020 Hearing Tr. 6:1-4 ("I never thought that it was a misrepresentation here…. It's a mistake … a mistake.").) There was no intentional deception. There was only confusion about the facts, as the district court itself observed. (SA 39:18-20 ("Anytime you have litigation involving thousands of cases like we do here in this MDL, there's going to be confusion.").)

In fact, plaintiffs' steering committee counsel went out of their way to make clear they understood that the Cook defendants had simply made a mistake, and

that they had not engaged intentional misrepresentation. (Dkt. 13227, p. 3 (refer-ring to the Cook defendants' "mistaken representations"); May 11, 2020 Hearing Tr. 6:5-9 ("I just want to say that we also are -- if that word [misrepresentation] appeared in a brief, we withdraw it. It's just a representation and I want to make certain that the Court understands that's not our allegation.").)

So no one claims the Cook defendants intended to mislead anyone. (In fact, no one even claims that the results in *Graham* and *Sales-Orr* would have been dif-ferent had the defendants relied on the correct choice-of-law rules from the get-go.)

In any event, whatever the significance of Cook's mistake, its consequences, if any, must be confined to the cases in which the mistake was made. Although *Graham* and *Sales-Orr* were part of the MDL, they retained their "separate identi-ties" from each other and from every other case in the MDL. *See Gelboim*, 574 U.S. at 413. That means the decision as to whether there was a choice-of-law agree-ment in an individual case "depends on the record in that case and not others." *Cf. In re Nat'l Prescription Opiate Litig.*, 956 F.3d at 845. The argument for permitting the Cook defendants to argue the correct law before the Court here is thus even more compelling than in the cases cited above; the Cook defendants' original er-rors in briefing did not even occur in the two cases on appeal, but in two unrelated

51

cases that simply happened to be in the same MDL. Whatever was said and done in *Graham* and *Sales-Orr*, then, has no effect on *Looper* and *Lambert*.

Nor should it. There is no evidence any plaintiff was ever actually misled into believing there was a direct-filing order and filed in the MDL based on that belief. None. The district court has said only that some plaintiffs' lawyers "may" have relied on the Cook defendants' mistake. (SA 48.) But Looper sued in December 2016 (Dkt. 11921-1), **before** the orders at issue in *Sales-Orr* and *Graham* were ever filed (SA 18-23; Dkt. 5575). And Lambert sued in July 2019 (Dkt. 11921-1), shortly **after** the district court made clear once and for all that there was no direct-filing order (Dkt. 11131). So the choice-of-law consequence of filing their actions in the Southern District of Indiana should have been no secret to plaintiffs.

### I.C.2. Plaintiffs' Proposed Rule Would Unnecessarily Complicate Choice-Of-Law Determinations.

One final consideration is worth mention here. The Court in *Klaxon* promulgated a clean, simple, clear rule: a federal court sitting in diversity must follow the choice-of-law rules of the state in which it sits. 313 U.S. at 496. In place of this straightforward rule, plaintiffs propose a rule that depends on where the case "originated." (Looper's Opening Br. p. 11.) Not only is this rule inherently more complicated to administer than the rule in *Klaxon*, it begs the question whether

52

federal courts even have the authority to determine the "origin" of a case that has never been transferred.

There is no mechanism for determining what choice-of-law rules would have applied to each individual case but for being filed originally in the MDL. In cases where the parties stipulate to the governing choice-of-law rules as part of a direct-filing order, this determination is easy enough. Absent that, however, the MDL court would be forced to determine for itself where the case "originated."

This is not "a mechanical process of cranking various factors through a formula," any more than is the application of the choice-of-law rules themselves. *In re Air Crash Disaster Near Chi., Ill. on May 25, 1979*, 644 F.2d 594, 610-11 (7th Cir. 1981). There are at least three possibilities. A court might choose the forum where the drug or device was prescribed or implanted. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)(b) (1971); *see, e.g., In re Yasmin,* 2011 WL 1375011, at *6. Or it might choose the forum where the plaintiff's injuries occurred. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)(a). Or, as in this MDL for cases filed in the Southern District of Indiana between May 31, 2017 and June 13, 2019 (Dkt. 13539, p. 2), the court might select the plaintiff's "home" jurisdiction. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(2)(c).

All of these selections are rather arbitrary. The court that chooses one approach could just as well choose one of the competing approaches instead, or even adopt a different approach altogether. To say the least, this unnecessarily muddies the waters in cases like those here, where venue is proper.

The short-form complaints filed in this MDL do not necessarily make the task any easier. In one case, *McDermitt*, which has since been dismissed, the plaintiff alleged that his home was in Ohio, but that he received his filter in Indiana. (*See* Case No. 1:18-cv-00946, Dkt. 1, ¶¶ 4-7, 12.) Under plaintiffs' theory, the choice-of-law rules should be Indiana's, but why? McDermitt could have sued in Ohio or Indiana. How does the court have the authority to select one state over the other?

Take another example: *Alger*. There, the plaintiff alleged he received his implant in Virginia, which is also where he lives. (Case 1:17-cv-01023-JMS-DML, Dkt. 1, ¶¶ 4-6.) But in selecting which district would be proper "absent direct filing," he listed the "United States District Court for Virginia" and "United States District Court for Illinois." (*Id.* ¶ 7.) If a court takes the approach that the plaintiff gets to designate where her case "originated," where did Alger's originate? Probably Virginia, plaintiffs would say, but what if certain events occurred in Illinois that would make venue proper there also, for example, a failed removal

54

procedure? How does a court choose? This becomes an especially thorny issue if the plaintiff amends her short-form complaint to retroactively change her district of "origin" in an effort to fend off dismissal, as has happened in at least one case. (Dkt. 18538.) The plaintiffs' approach here would only encourage this sort of mischief.

A final example is *Verde* in which the plaintiff alleged she lived in Arizona and then Ohio, and suffered injuries in both places. (Case No. 1:17-cv-02354, Dkt. 1, ¶¶ 4-6.) Even accepting these allegations as true, where is Verde's "home" jurisdiction? Where did the case "originate"? What if the court is inclined to select the choice-of-law rules of the place of injury? Which state's rules apply then?

There are no clear answers to these questions. Worse, what answers there are all necessarily entail federal common-lawmaking. Under plaintiffs' preferred approach, instead of simply applying the choice-of-law rules of the forum state, as *Klaxon* requires, the federal court decides for itself, as a matter of general law, what the governing rules should be. This in turn alters the substantive rights of the parties—exactly what *Erie* and *Klaxon* prohibit.

Plaintiffs argue the approach mandated by *Klaxon* is "arbitrary" and "un-just" as applied in an MDL. (Looper Opening Br. p. 21.) It is anything but. That a plaintiff from South Carolina or Mississippi who chooses to file in her home

55

district should get the benefit of her home choice-of-law rules, but the plaintiffs here should not, is perfectly in accord with *Erie* and principles of federalism. The Supreme Court has held that, "[i]n the case of local law, since each of the states of the Union has constitutional authority to make its own law with respect to persons and events within its borders, the full faith and credit clause does not ordinarily require it to substitute for its own law the conflicting law of another state, even though that law is of controlling force in the courts of that state with respect to the same persons and events." *Magnolia Petrol. Co. v. Hunt*, 320 U.S. 430, 436–37 (1943). As applied here, that means that just because a plaintiff who files suit in her home state gets the benefit of her home state's choice-of-law rules, the Constitution does not require Indiana to apply those same rules when the same plaintiff chooses to file suit in an Indiana court. Each forum is entitled to the application of its own choice-of-law rules in suits properly filed within its borders.

The "nub" of the policy that underlies *Erie* "is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away, should not lead to a substantially different result." *Guaranty Tr. Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945). Application of this principle here avoids precisely the "grave discrimination" that *Erie* sought to remedy. 304 U.S. at 74. If a filter case against the Cook defendants is filed in Indiana state court

56

(and a number of them have been, *see* Marion County Courts Case No. 49D07-1310-CT-036987), Indiana's choice-of-law rules would unquestionably apply. Therefore, if that same case is filed in a federal court that happens to be located in Indiana, literally blocks away from the Marion County courthouse, it should not lead to a different result.

Plaintiffs' appeal to efficiency fares no better. (*See* Looper Opening Br. pp. 22-23.) A desire to cut through what some may view as excessive proceduralism on the part of Congress cannot justify departing from binding law, even in an MDL. This is precisely the lesson of *Lexecon*. Retaining transferred cases for trial undoubtedly seemed efficient to the MDL courts that engaged in the practice. But it did not accord with the plain text of 28 U.S.C. § 1407, and therefore the practice had to yield to the demands of the law as written.

\* \* \* \* \*

There is no dispute the cases at issue here were filed originally in the MDL court in the Southern District of Indiana, which is a proper venue; they were not transferred to the MDL court from the plaintiffs' home jurisdictions. Therefore, to treat these cases "as if" they had "originated" in the plaintiffs' home jurisdictions, absent the parties' mutual agreement, is quite literally to indulge a fiction that has no place under the *Erie* doctrine. District courts cannot just "deem" that

57

the law of another forum governs when the forum's choice-of-law rules do not themselves allow that law to govern. Under *Klaxon*, and absent a direct-filing order or stipulation that says otherwise, district courts sitting in diversity "must" apply the forum state's substantive law. *Klaxon*, 313 U.S. at 496. The district court therefore correctly applied the choice-of-law rules of the forum state in which Looper and Lambert originally and properly filed their cases—Indiana.

## II.   THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN CONCLUDING DEFENDANTS WERE NOT JUDICIALLY ESTOPPED FROM ARGUING THE CORRECT CHOICE-OF-LAW RULES.

Looper's backup argument (but not Lambert's; she does not adopt the relevant pages of Looper's brief) is that the Cook defendants are judicially estopped from asserting Indiana's choice-of-law rules. (*See* Looper Opening Br. pp. 24-26; Lambert Opening Br. p. 6.) She bases this argument on the Cook defendants' mistaken statements about choice of law in *Graham* and *Sales-Orr*. (Looper Opening Br. p. 24.) Judicial estoppel is a discretionary equitable remedy intended to prevent lying or the "perversion of the judicial process." *Matter of Cassidy*, 892 F.2d 637, 641 (7th Cir. 1990). It is applied where "intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum designed for suitors seeking justice, to prevent litigants from playing fast and loose with the courts." *Id.* (internal quotation marks and citation omitted). "It should not be used,"

however, "where it would work an injustice, such as where the former position was the product of inadvertence or mistake …." *Id.* at 642; *see also New Hampshire v. Maine*, 532 U.S. 742, 753 (2001).

This ground has already been plowed, and so we can be brief here. The district court concluded the Cook defendants made a mistake when they argued choice of law in *Graham* and *Sales-Orr*. (*See, e.g.*, Oct. 25, 2019 Hearing Tr. p. 52:7-11; SA 45-46; May 11, 2020 Hearing Tr. 6:1-4.) And plaintiffs' counsel made a point of being clear that they understood the Cook defendants had made a mistake. (May 11, 2020 Hearing Tr. 6:5-9.) Looper makes no effort to argue otherwise in her opening brief. This by itself disposes of Looper's judicial estoppel argument.

But there is one other, independent problem with plaintiffs' judicial estoppel argument. The Court "has generally considered the applicability of the doctrine only when there are successive litigations arising from the same factual circumstance …." *Ezekiel v. Michel*, 66 F.3d 894, 904 (7th Cir. 1995). Looper's case is not a "successive suit" to *Graham* and *Sales-Orr*; it is an entirely separate suit, with different parties, different facts, and its own "separate identit[y]." *Gelboim*, 574 U.S. at 413. Surely, under these circumstances, a mistake in a handful of cases

59

should not control the choice-of-law rules that apply across hundreds or thousands of other cases.

The district court therefore did not abuse its discretion in declining to apply the doctrine of judicial estoppel.

# CONCLUSION

The district court properly applied Indiana's choice-of-law rules to these cases. And under those rules, there is no dispute Indiana's statute of limitations applies or that that statute requires the dismissal of plaintiffs' claims. This Court therefore should affirm.

MAY 21, 2021                          Respectfully Submitted,

                                      /s/ Brian J. Paul
                                      Brian J. Paul, *Counsel of Record*
                                      Andrea Roberts Pierson
                                      FAEGRE DRINKER BIDDLE & REATH LLP
                                      300 North Meridian Street, Suite 2500
                                      Indianapolis, Indiana 46204
                                      T: (317) 237-0300
                                      F: (317) 237-1000
                                      E: Brian.Paul@FaegreDrinker.com
                                          Andrea.Pierson@FaegreDrinker.com

                                      Bruce Gregory Jones
                                      FAEGRE DRINKER BIDDLE & REATH LLP
                                      2200 Wells Fargo Center
                                      90 South Seventh Street
                                      Minneapolis, Minnesota 55402
                                      T: (612) 766-7000
                                      F: (612) 766-1600
                                      E: Bruce.Jones@FaegreDrinker.com

                                      *Counsel for Defendants-Appellees*
                                      *Cook Incorporated, Cook Medical LLC, and*
                                      *William Cook Europe ApS*

61

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND
## TYPE-STYLE REQUIREMENTS

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 13,957 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Garamond 15.


                                        /s/  Brian J. Paul

MAY 21, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2021, I caused this brief to be electronically filed with the Clerk of the Court for the United states Court of Appeals for the Seventh Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Brian J. Paul*