# EXHIBIT C

**No. 20-3103**
**Consolidated with No. 20-3104**

---

**UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

---

**Victoria Looper,**
**Plaintiff-Appellant,**

**v.**

**Cook, Incorporated, Cook Medical, LLC,**
**William Cook Europe APS,**
**Defendants-Appellees.**

---

**Appeal From The United States District Court**
**For the Southern District of Indiana, Indianapolis Division**
**Case Nos. 1:16-cv-03510 and 1:14-ml-02570**
**In Re Cook Medical Inc., IVC Filters Marketing, Sales**
**Practices and Products Liability Litigation,**
**The Honorable Judge Richard L. Young**

---

**BRIEF AND REQUIRED SHORT APPENDIX OF**
**PLAINTIFF-APPELLANT VICTORIA LOOPER**

---

**Waters & Kraus, LLP**
**Charles S. Siegel**
**Attorney for the Plaintiff-**
**Appellant Victoria Looper**
**3141 Hood Street, Suite 700**
**Dallas, Texas 75219**
**T: (214) 357-6244**
**F: (214) 357-7252**
**siegel@waterskraus.com**

**The Nations Law Firm**
**Alison Divine**
**Attorney for the Plaintiff-**
**Appellant Victoria Looper**

9703 Richmond, Suite 200
Houston, Texas 77042
T: (713) 807-8400
F: (713) 807-8423
alison.divine@howardnations.com

Williams & Piatt, LLC
Joseph N. Williams
Attorney for the Plaintiff-
Appellant Victoria Looper
301 Massachusetts Ave.
Indianapolis, Indiana 46204
T: 317-633-5270
joe@williamspiatt.com

Martin Baughman
Ben C. Martin
Attorney for the Plaintiff-
Appellant Victoria Looper
3141 Hood Street
6th Floor
Dallas, Texas 75219
T: (214) 761-6614
bmartin@martinbaughman.com

Heaviside Reed Zaic, A Law
Corporation
Michael W. Heaviside, Esq.
Attorney for the Plaintiff-
Appellant Victoria Looper
910 17th Street, NW, Suite 800
Washington, DC 20006
T: (202) 223-1993
mheaviside@hrzlaw.com

Lowe Law Group
Nathan Buttars
Attorney for the Plaintiff-
Appellant Victoria Looper
6028 S. Ridgeline Dr., Suite 200
Ogden, UT 84405
T: (385) 298-0175
nate@lowelawgroup.com

## DISCLOSURE STATEMENT

Plaintiff-appellant Victoria Looper is a natural person. She is represented by the

following law firms in this appeal:

Waters & Kraus, LLP
Charles S. Siegel
3141 Hood Street, Suite 700
Dallas, Texas 75219
T: (214) 357-6244
F: (214) 357-7252
siegel@waterskraus.com

The Nations Law Firm
Alison Divine
9703 Richmond, Suite 200
Houston, Texas 77042
T: (713) 807-8400
F: (713) 807-8423
alison.divine@howardnations.com

Williams & Piatt, LLC
Joseph N. Williams
301 Massachusetts Ave.
Indianapolis, Indiana 46204
T: 317-633-5270
joe@williamspiatt.com

Martin Baughman
Ben C. Martin
3141 Hood Street, 6th Floor
Dallas, Texas 75219
T: (214) 761-6614
bmartin@martinbaughman.com

Heaviside Reed Zaic, A Law Corporation
Michael W. Heaviside
910 17th Street, NW, Suite 800
Washington, DC 20006
T: (202) 223-1993
mheaviside@hrzlaw.com

Nathan Buttars
Lowe Law Group
6028 S. Ridgeline Dr., Suite 200
Ogden, Utah 84405
T: (385) 298-0175
nate@lowelawgroup.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

JURISDICTIONAL STATEMENT ......................................................................................1

STATEMENT OF THE ISSUES...........................................................................................2

STATEMENT OF THE CASE.............................................................................................3

STATEMENT REGARDING ORAL ARGUMENT ..................................................7

SUMMARY OF THE ARGUMENT .................................................................................8

ARGUMENT .............................................................................................................................9

I.   THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFF'S CASE ON THE BASIS
OF THE INDIANA STATUTE OF LIMITATIONS ..........................................................9

    A. The Basic Choice-of-Law Framework.........................................................................9

    B. The Application of This Basic Framework in MDL Cases .............................................11

    C. The District Court Erred in Not Following the "Direct-Filing" Rule and Thus in
       Dismissing Plaintiff's Case...................................................................................................13

    D. The Arbitrary Requirement of a Direct-Filing Order Undermines the Policies Justifying
       and MDL Proceeding and Finds No Support in 42 U.S.C. §1407 or the JPML's Rules...21

II.  THE DISTRICT COURT ERRED IN APPLYING INDIANA LAW TO PLAINTIFF'S
CLAIM, BECAUSE DEFENDANTS WERE ESTOPPED FROM INVOKING IT............24

CONCLUSION........................................................................................................................27

CERTIFICATE OF COMPLIANCE...................................................................................29

PROOF OF SERVICE...........................................................................................................30

CIRCUIT RULE 30(d) STATEMENT.................................................................................31

SHORT APPENDIX................................................................................................................32

i

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543 (7th Cir. 2009) ........................ 9

*Chang v. Baxter Healthcare Corp.*, 599 F.3d 728 (7th Cir. 2010) ................................................ 11

*Davis v. Wakelee,* 156 U.S. 680 (1895) ....................................................................................... 24

*Dobbs v. DePuy Orthopedics, Inc.*, 842 F.3d 1045 (7th Cir. 2016) ....................................... 12, 14

*Edwards v. Aetna Life Ins. Co.,* 690 F.2d 595 (C.A.6 1982) ........................................................ 25

*Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938)....................................................................... 9

*Grochocinski v. Mayer Brown Rowe & Maw,* 719 F.3d 785 (7th Cir.2013) ............................... 24

*Guaranty Trust Co. of New York v. York*, 326 U.S. 99 (1945) ................................................... 10

*Hossaini v. Western Mo. Medical Center,* 140 F.3d 1140 (C.A.8 1998)..................................... 25

*In re Bausch & Lomb Inc. Contact Lens Solution Prods. Liab. Litig.*,

  2007 WL 3046682 (D.S.C. Oct. 11, 2007) ............................................................................ 16

*In re Coastal Plains, Inc.,* 179 F.3d 197 (C.A.5 1999)................................................................ 25

*In re Knight-Celotex, LLC*, 695 F.3d 714 (7th Cir. 2012) ........................................................... 24

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*,

  97 F.3d 1050 (8th Cir. 1996) ................................................................................................ 16

*In re Testosterone Replacement Therapy Prods. Liab. Litig.*,

  430 F.Supp.3d 516 (N.D. Ill. 2019) ....................................................................................... 12

*In re Watson Fentanyl Patch Prods. Liab. Litig.*, 977 F.Supp.2d 885 (N.D. Ill. 2013) ......... 12, 15

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.,*

2011 WL 1375011 (S.D. Ill. Apr. 12, 2011)......................................................... 12, 16, 24

*In re Yasmin*, 2011 U.S. Dist. LEXIS 39820 (S.D. Ill. April 11, 2011) ........................ 4, 5, 18, 24

*Jaurequi v. John Deere Co.*, 986 F.2d 170 (7th Cir. 1993) ........................................... 11

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)............................................ 10, 15, 23

*Lowery v. Stovall,* 92 F.3d 219 (C.A.4 1996) ............................................................ 25

*Maharaj v. Bankamerica Corp.,* 128 F.3d 94 (C.A.2 1997)............................................ 25

*May-Weirauch v. Ethicon, Inc.*, 2020 WL 6946445 (C.D. Ill. Nov. 25, 2020) ........................... 12

*McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674 (7th Cir. 2014)............................................ 10

*Nash v. Tindall Corp.*, 600 S.E.2d 81 (S.C. App. 2007)............................................ 13

*New Hampshire v. Maine*, 532 U.S. 742 (2001) ............................................................ 26

*Patriot Cinemas, Inc. v. General Cinema Corp.,* 834 F.2d 208 (C.A.1 1987) ........................... 25

*Pegram v. Herdrich,* 530 U.S. 211 (2000)............................................................ 24

*Philadelphia, W., & B.R. Co. v. Howard,* 13 How. 307 (1851)............................................ 25

*Sanchez v. Boston Scientific Corp.*, 2014 WL 202787 (S.D.W.Va. Jan. 17, 2014)..................... 23

*Sherer-Smith v. C.R. Bard, Inc.*, 2020 WL 1470962 (W.D. Wis. Mar. 26, 2020)....................... 12

*United States v. C.I.T. Constr. Inc.,* 944 F.2d 253 (C.A.5 1991)............................................ 25

*United States v. Hook,* 195 F.3d 299 (C.A.7 1999) ............................................................ 25

*United States v. McCaskey,* 9 F.3d 368 (C.A.5 1993) ...................................................... 25

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) ............................................................ 10, 12

*Wahl v. GE*, 786 F.3d 491 (6th Cir. 2015)............................................................ 23

**Statutes**

28 U.S.C. §1291 ................................................................................................ 1

28 U.S.C. §1332(a)(3) ...................................................................................... 1

28 U.S.C. §1391 .............................................................................................. 3

28 U.S.C. §1407 ........................................................................................ 21, 22

28 U.S.C. §1407(f) .......................................................................................... 23

28 U.S.C. §1404(a) .......................................................................................... 10

**Other Authorities**

18 C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4477, p. 782 (1981). 25

18 *Moore's Federal Practice* § 134.30, p. 134–62 (3d ed. 2000) ................................. 24

Eldon Fallon, *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L.Rev. 2323 (2008) ........... 17

**Rules**

Judicial Panel on Multidistrict Litigation Rule 7.1 ..................................................... 22

Judicial Panel on Multidistrict Litigation Rule 7.2(a) ................................................. 23

Judicial Panel on Multidistrict Litigation Rule 10.1 ................................................... 22

## JURISDICTIONAL STATEMENT

### A.  Subject Matter Jurisdiction in the District Court

Subject matter jurisdiction in the district court was premised on diversity of citizenship. This action was originally directly filed in the United States District Court for the Southern District of Indiana, into MDL 2570, *In Re: Cook Medical, Inc., IVC Filters Marketing, Sales Practices and Products Liability Litigation*. The district court had diversity jurisdiction, pursuant to 28 U.S.C. § 1332(a)(3), as there was complete diversity of citizenship given the parties were citizens of different states, one defendant was a citizen of a foreign state, and the amount in controversy exceeded $75,000. Plaintiff-appellant Victoria Looper is a citizen of South Carolina. Defendant-Appellee Cook Inc. is incorporated under the laws of Indiana and has its principal place of business in Indiana. Defendant-appellee Cook Medical LLC, is an Indiana limited liability company. The sole member of Cook Medical LLC is Cook Group Inc. Cook Group Inc. is incorporated under the laws of Indiana and has its principal place of business in Indiana. Defendant-Appellee, William Cook Europe ApS, is a private limited company organized under the laws of Denmark and has its principal place of business in Denmark. The business form of William Cook Europe ApS mostly closely resembles that of an American corporation. Finally, the amount in controversy substantially exceeds $75,000, exclusive of interests and costs.

### B.  Jurisdiction in This Court

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 in that plaintiff has appealed from a final judgment of the district court.

### C.  Relevant Dates

Plaintiff-appellant seeks review of the district court's September 28, 2020**,** orders granting defendants-appellees' motion for summary judgment, and entering final judgment against plaintiff-appellant and in favor of defendants-appellees, and all previous orders subsumed within the final judgment. Plaintiff-appellant filed her notice of appeal on Oct. 27, 2020.

### D.  Finality

The orders appealed from concluded all claims by plaintiff-appellant against all defendants-appellees, and therefore constituted an appealable final judgment.

1

## STATEMENT OF THE ISSUES

I.      Whether an MDL court must apply the law of the designated "originating" state in a case directly filed into the MDL?

II.     Whether defendants were estopped from maintaining that the originating state's law should be ignored, when they had previously maintained the opposite position successfully?

## STATEMENT OF THE CASE

This case involves claims for damages for serious personal injuries suffered by plaintiff-appellant Victoria Looper.[1]  Ms. Looper was implanted with a Cook "IVC" filter.  Such filters are intended to prevent blood clots traveling to the heart.  They are implanted in the inferior vena cava, a large vein that carries blood from the lower part of the body to the heart.  Plaintiff's filter failed and migrated, and eventually perforated her caval wall.  Her filter ultimately had to be removed in an open surgical procedure that occurred in 2014.  Plaintiff is a citizen of South Carolina, and her filter was implanted and removed there.

Many lawsuits have been brought around the country, seeking damages for injuries allegedly caused by defendants' filter devices.  In view of multiple pending suits against Cook, the Judicial Panel on Multidistrict Litigation ordered, in late 2014, that the cases be centralized into a multidistrict litigation proceeding in the United States District Court for the Southern District of Indiana.  Shortly thereafter, the parties began discussing the expedience of direct filing tag-along cases from other jurisdictions, shortly after the MDL was formed. The parties and the district court repeatedly treated this case as one in which direct-filing would occur, and in which such cases would be governed by the law of the originating state designated by the plaintiff.

In January 2015, Cook agreed to a standard Short Form Complaint, which required plaintiffs to list the following: "District Court and Division in which venue would have been proper absent direct filing." App. 5-6. On January 30, 2015, the plaintiffs' steering committee filed a Master Complaint, which states that "[f]or purposes of remand and trial, venue is proper pursuant to 28 U.S.C. § 1391 in the federal judicial district of each Plaintiff's state of residence."

---

[1] Ms. Looper will be referred to in this brief as "plaintiff."  Defendants-appellees will be referred to collectively as "Cook" or "defendants."

App. 7-8. This language is specifically incorporated into every short form complaint.

On April 17, 2015, the district court entered Case Management Order 3, regarding dismissal of additional Cook entities, which states that "[a]s to cases directly filed in the Southern District after the entry of this Order and the entry of an order in MDL 2570 permitting direct filing, the Short Form Complaints will not name the additional Cook Entities." The district court also entered Case Management Order 5, which specifically states that it applies to the following: "All cases transferred to this court by the Judicial Panel on Multidistrict Litigation, including those cases identified in the original Transfer Order and those subsequently transferred as tag along actions; and all cases directly filed in or removed to this MDL." App. 9-10.

On February 2, 2016, Cook filed a motion for summary judgment in another case, the *Graham* action. Cook argued for application of the "originating" jurisdiction's choice of law rule to a case in this MDL, on the basis that it was direct-filed: "When a case based on diversity is part of an MDL and is directly filed in the MDL forum as the result of a direct filing order, courts have found that the 'better approach is to treat foreign direct filed cases [i.e., cases originating outside of this Court's jurisdiction but filed directly into the MDL] as if they were transferred from a judicial district sitting in the state where the case originated.' *In re Yasmin*, 2011 U.S. Dist. LEXIS 39820, at *15, *18 (S.D. Ill. April 11, 2011)." App. 11-12.

On Dec. 29, 2016, the present plaintiff filed her claim in the MDL. Rather than file her suit in South Carolina, where she lives and was injured, plaintiff filed her case directly in the MDL. This obviated the need for JPML to issue a "tag-along" notice, and for the case to be transferred from the federal district court in South Carolina to the MDL. App. 13-14.

On March 27, 2017, Cook filed a motion for judgment on the pleadings in another matter, the *Sales-Orr* case. Cook again argued for application of the "originating" jurisdictions' choice

of law rule to cases in this MDL, on the basis that they were direct-filed. "However, where a case based on diversity is part of an MDL and is directly filed in the MDL forum as the result of a direct filing order, *as occurred with the six cases here*, courts have found that the 'better approach is to treat foreign direct filed cases [i.e., cases originating outside of this Court's jurisdiction but filed directly into the MDL] as if they were transferred from a judicial district sitting in the state where the case originated.' *In re Yasmin*, 2011 U.S. Dist. LEXIS 39820, at *15, *18 (S.D. Ill. April 11, 2011)." App. 15-16.

On May 31, 2017, the district court granted Cook's motion in *Sales-Orr*. The court applied the "originating" jurisdiction's choice-of-law rule, referencing a prior "direct filing order" in this proceeding. "This Motion addresses those Plaintiffs, whose cases originated outside of this court's judicial district but were directly filed in this MDL forum ("foreign direct filed cases"), *pursuant to the court's direct filing order. …* In 2011, the Southern District of Illinois addressed this issue and held that 'the best approach is to treat foreign direct filed cases as if they were transferred from the judicial district sitting in the state where the case originated.' *In re Yasmin*, No. 3:09-md-2100-DRH-PMF, MDL No. 2100, 2011 U.S. Dist. LEXIS 39820, at *18 (S.D. Ill. April 11, 2011). *The court adopts this approach as it is in keeping with the rule that the transferee court applies the law of the state in which the transferor court is located. …* As noted by a sister district court, 'it would be an odd result to subject plaintiffs to [Indiana] law simply because they took advantage of the direct filing procedure—a procedure that provides benefits to all parties and preserves judicial resources.'" App. 20-21.

On Oct. 1, 2019, Cook filed an "omnibus motion for summary judgment based on statute of limitations." This motion sought summary judgment as to plaintiff's claim, and the claims of other plaintiffs, on the basis of the two-year Indiana statute of limitation. Cook argued Indiana

law applied to these plaintiffs' cases notwithstanding that they had designated other "originating" states. App. 27-28.  Plaintiff responded to this motion on October 29, 2019, contending that South Carolina law should apply.

The court heard oral argument on the motion on Oct. 25, 2019.  App. 29.  In an order dated Oct. 29, 2019, the court held that as a general matter, Indiana law would apply, and that Cook was not estopped from relying on Indiana law.  App. 1-2.  The MDL district court granted summary judgment as to plaintiff's claim on September 28, 2020.  App. 3-4. Plaintiff timely filed her notice of appeal on Oct. 27, 2020.  App. 41.

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-appellant respectfully requests oral argument in this matter.  The MDL court's decisions concerning choice of law were made in a complex procedural setting.  Oral argument would aid the Court in a thorough ventilation of all issues.

## SUMMARY OF THE ARGUMENT

The MDL court erred in applying the law of its own state, Indiana, to plaintiff's claim. Plaintiff's claim originated in South Carolina, but was "direct-filed" into the MDL pursuant to a familiar practice, agreed to by the parties, designed for efficiency and to avoid needless bureaucratic steps in the MDL transfer process.  In such circumstances, the established mandates of *Erie* and its progeny, and this Court's direct precedent, compelled application of the law of South Carolina.

The court below also erred in holding that defendants were not estopped from arguing for the application of Indiana law.  Defendants had previously argued for the application of the originating state's law in another direct-filed case, and obtained summary judgment on this basis. In such circumstances, they should have been estopped from contending the opposite here.

## ARGUMENT

**I.    THE DISTRICT COURT ERRED IN DISMISSING PLAINTIFF'S CASE ON THE BASIS OF THE INDIANA STATUTE OF LIMITATIONS**

Plaintiff Victoria Looper bought claims for damages arising from her defective Cook IVC filter.  Her filter migrated and fractured, and ultimately perforated her caval wall.  Her filter was finally removed on Feb. 18, 2014.  She filed suit on Dec. 29, 2016.

Plaintiff's case was dismissed on the basis of a limitations time bar.  Ms. Looper resides in South Carolina, and had her filter implanted and removed there.  She filed her case within the three-year South Carolina limitations period applicable to her case.  Summary judgment was granted, however, because the district court held that the two-year Indiana statute of limitations applied.  Since she filed her claim more than two years, but less than three years, after her filter was removed, her claim was untimely.

For the reasons detailed below, plaintiff respectfully maintains that this ruling was erroneous and that the South Carolina statute of limitations should apply to her claims.  The district court's choice-of-law decision is reviewed *de novo*.  *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 546 (7th Cir. 2009).

### A.    The Basic Choice-of-Law Framework

Plaintiff resided in South Carolina and was implanted with a Cook filter in that state.  Had she filed suit in federal court in South Carolina, as might normally be expected, her case would have been governed by the choice-of-law rules of South Carolina.  This commonplace flows, of course from the "*Erie* doctrine," *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), and its specific application by the Supreme Court to conflicts problems in *Klaxon Co. v. Stentor Elec.*

*Mfg. Co.*, 313 U.S. 487 (1941); see also, e.g., *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014).

If a case is transferred from one federal court to another, as happens typically by motion under the main federal venue transfer statute, 28 U.S.C. §1404(a), the transfer is "[f]or the convenience of parties and witnesses," and does not result in a change in governing law. "[W]here the defendants seek transfer, the transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under §1404(a) generally should be, with respect to state law, but a change of courtrooms." *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) (footnote omitted). The Supreme Court explained the rationale behind this fundamental rule as follows:

> As this Court said in *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 109, 65 S.Ct. 1464, 1470, 89 L.Ed. 2079:
>
> '*Erie R. Co. v. Tompkins* was not an endeavor to formulate scientific legal terminology. It expressed a policy that touches vitally the proper distribution of judicial power between State and federal courts. * * * The nub of the policy that underlies *Erie R. Co. v. Tompkins* is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away, should not lead to a substantially different result.'
>
> *Applying this analysis to §1404(a), we should ensure that the 'accident' of federal diversity jurisdiction does not enable a party to utilize a transfer to achieve a result in federal court which could not have been achieved in the courts of the State where the action was filed. This purpose would be defeated in cases such as the present if nonresident defendants, properly subjected to suit in the transferor State (Pennsylvania), could invoke §1404(a) to gain the benefits of the laws of another jurisdiction (Massachusetts).* What *Erie* and the cases following it have sought was an identity or uniformity between federal and state courts; and the fact that in most instances this could be achieved by directing federal courts to apply the laws of the States 'in which they sit' should not obscure that, in applying the same reasoning to §1404(a), the critical identity to be

10

> maintained is between the federal district court which decides the
> case and the courts of the State in which the action was filed.

*Id.* at 637-39 (emphasis added).  The rule of *Van Dusen* applies to the choice-of-law rules of the

transferor forum. "The district court, as a transferee court sitting in diversity, is obligated to

apply the choice-of-law rules followed by the transferor court…." *Jaurequi v. John Deere Co.*,

986 F.2d 170, 172 (7th Cir. 1993).

### B.  The Application of This Basic Framework in MDL Cases

The rule in diversity cases, that a transferee court must apply the law that would have

governed in the transferor court, applies fully in the multidistrict litigation setting.  "When a

diversity case is transferred by the multidistrict litigation panel, the law applied is that of the

jurisdiction from which the case was transferred …." *Chang v. Baxter Healthcare Corp.*, 599 F.3d

728, 732 (7th Cir. 2010).  In the typical MDL scenario, a case is filed in a federal district court of

the plaintiff's choosing.  In products liability cases, this is usually a federal court in the state in

which the plaintiff lives or was injured.  If the Jurisdictional Panel on Multidistrict Litigation has

constituted an MDL proceeding, then the Panel will be notified of the filing and the case will be

transferred to the MDL court as a "tag-along" action.

Since all cases subject to an ongoing MDL consolidation order will eventually be

transferred, plaintiffs sometimes simply skip the first three steps — filing in the home jurisdiction,

notifying the JPML, and having the case transferred as a "tag-along — and file their case directly

into the MDL itself.  That is what plaintiff did here.  But these "direct-filed" cases are still treated

as if they had "originated" in the place selected by the plaintiff as the "appropriate" venue but for

the existence of the MDL.  Accordingly, the law that would have been applied by the "originating,"

i.e., transferor, forum, is applied in cases "direct-filed" into the MDL as well.

11

In *Dobbs v. DePuy Orthopedics, Inc.*, 842 F.3d 1045 (7th Cir. 2016), this Court recognized this common-sense approach and approved it.   *Dobbs* involved a dispute over fees between a plaintiff and his original lawyers, arising out of a claim for damages caused by a defective artificial hip.  An MDL proceeding for such cases was pending in the Northern District of Ohio.  Plaintiff's claim was filed directly in that MDL, but was treated as "originating" in the Northern District of Illinois:

> Generally, when a case is transferred from a district court with proper venue to another district court, the transferee court will apply the choice-of-law rules of the state in which the transferor court sits. See *Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).  Here, that suggests that Ohio substantive law –including its choice-of-law rules—would apply.  Dobbs's claim, however, was filed in the Northern District of Ohio only because the DePuy multidistrict litigation was already in progress there. Dobbs's complaint stated that the Northern District of Illinois was the appropriate venue absent the multidistrict litigation.  That advises treating the Northern District of Illinois as the original venue.

*Id.* at 1048-49.  This Court noted that this was, in fact, the practice of district courts within this Circuit, and "ratified" this approach:

> In fact, the district courts in our circuit have taken that approach: foreign cases filed directly in a district court as a part of an ongoing multidistrict litigation are treated as having originated outside of that district.  E.g., *In re Watson Fentanyl Patch Prods. Liab. Litig*., 977 F.Supp.2d 885, 888-89 (N.D. Ill. 2013); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.,* No. 3:09-MD-02100-DRH, 2011 WL 1375011, at *5 (S.D. Ill. Apr. 12, 2011).  *We ratify that approach here and apply Illinois's choice-of-law rules.*

*Id.* at 1049 (emphasis added).  District courts in this Circuit continue to follow this approach.  See, e.g., *In re Testosterone Replacement Therapy Prods. Liab. Litig*., 430 F.Supp.3d 516, 550 (N.D. Ill. 2019); *May-Weirauch v. Ethicon, Inc*., 2020 WL 6946445, *2 (C.D. Ill. Nov. 25, 2020); *Sherer-Smith v. C.R. Bard, Inc*., 2020 WL 1470962, *2 (W.D. Wis. Mar. 26, 2020).

Once again, to summarize:  the rule ratified by this Court in *Dobbs* requires that "cases filed directly" in an MDL "are treated as having originated outside of that district."  That rule, properly applied in this case, would have resulted in the use of South Carolina's choice-of-law rules, which in turn would have applied South Carolina's limitations period to plaintiff's claims.[2]  Under South Carolina's three-year statute of limitations, plaintiff's claims were timely-filed.

### C.    The District Court Erred in Not Following the "Direct-Filing" Rule and Thus in Dismissing Plaintiff's Case

Rather than follow *Dobbs*, the district court treated this direct-filed case as having originated in Indiana.  Under Indiana's conflicts rules, the Indiana statute of limitations applies to cases filed in Indiana courts.  Applying the two-year Indiana limitations period, plaintiff's claim was untimely, and her claim was dismissed.

The district court's error flowed from its conclusion that there was no formal "direct-filing" order on file in the case.  In the absence of such an order, the court held, cases such as plaintiff's could not be treated as having been direct-filed within the meaning of *Dobbs*.  The court's order on the subject stated as follows:

> The parties appeared for a hearing on the choice-of-law and judicial estoppel issues raised in the Cook Defendants' Renewed Omnibus Motion for Summary Judgment Based on Applicable Statute of Limitations (Filing No. 11921).  After listening to the parties' oral argument, the court finds, under the unique circumstances of this case, that judicial estoppel does not bar Cook from arguing the application of Indiana's choice-of-law rules.  The court further finds that Indiana law applies.  The cases at issue were originally filed in the Southern District of Indiana, Indianapolis Division, and are not "direct-filed" cases –i.e., cases treated as if they originated in the plaintiff's home district and have been transferred to this district by the Judicial Panel on Multi-District Litigation pursuant to Section 1407.

---

[2] There is no dispute that South Carolina conflicts rules would have mandated application of the South Carolina statute of limitations.  See, e.g., *Nash v. Tindall Corp.*, 600 S.E.2d 81, 83 (S.C. App. 2007).

App. 1.

In the oral argument referred to by the court, Cook's counsel insisted that for the rule of
*Dobbs* to obtain, there must be "an explicit expressed direct filing order." App. 36.   The court
stated that there was no direct filing order, but also allowed that "[i]n hindsight, direct filing order
might have been appropriate here.  Certainly, beneficial to the Court.  It means, these direct file –
these cases filed here, without being transferred, are going to be with me forever."[3]  App. 33.

The district court erred in requiring the existence of "an explicit expressed direct filing
order." *Dobbs* simply approved the common-sense approach of treating direct-filing as an
expedient, with no resulting change in the normal application of *Van Dusen*.  No formal order was
required, and in any event the record below contained as much or more on this score as did *Dobbs*
and the cases it approved.

In *Dobbs* itself, this Court did not treat the choice of the law of the "originating state,"
Illinois, as having been agreed to by the parties in an order.  Nor did this Court identify any direct-
filing order as a basis for its ruling.  Rather, the Court "ratified" the approach of district courts in
this Circuit, that "foreign cases filed directly in a district court as part of an ongoing multidistrict
litigation are treated as having originated outside of that district." *Dobbs*, supra, 842 F.3d at 1049.

Cook produced the original case management order in *Dobbs*, which permitted direct
filing, and stated merely that "the fact that a case was directly filed … will have no impact on the
choice of law to be applied …." App. 43-44.  This statement does  not identify the applicable law
at all; it likely means that, as in one of the cases cited by this Court in *Dobbs*, the parties simply
reached no agreement at all as to the applicable choice-of-law rule.

---

[3] The district court was under the impression that since there was no formal direct-filing order, such cases
could not be remanded or transferred back to their originating jurisdictions.  That issue is not before this
Court in this appeal.

In the district court cases identified by this Court in *Dobbs*, as reflecting the approach of direct-filed cases being "treated as having originated outside of that district," was there an "explicit expressed direct-filing order" specifying as much? This Court identified two cases as embodying such an approach. In neither case was there such an order.

In *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 977 F.Supp.2d 885 (N.D. Ill. 2013), the MDL court addressed a case that had originated in Ohio, but had been directly filed into an Illinois MDL. There is no reference to any direct-filing order touching on choice of law at all — nothing more than a one-sentence reference to the possibility of direct filing in a joint status report, and a subsequent minute entry permitting such a procedure but saying nothing about choice of law. *Id.* at 887. In fact, it is plain that neither the parties' agreement, nor the court's minute entry, said anything about choice of law, because both parties agreed that Illinois, not Ohio, law would govern:

> Both parties begin their analysis of the choice of law issue with Illinois law, which both sides contend supplies the applicable choice of law rules. That would, in fact, be the usual rule: a federal district court sitting in diversity applies the forum state's choice-of-law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). But unlike the usual case filed in this district, the present case has no connection with Illinois other than the fortuity that the JPML authorized an MDL proceeding to take place here, supervised by the undersigned judge. Illinois is essentially an artificial forum created for purposes of convenience and efficiency. That is doubly true for the present case, which was filed here only by virtue of a court-approved direct-filing procedure whose sole purpose was to maximize convenience and save the parties' and judicial resources.

*Id.* at 888. In light of this fortuity, the court held that there was no reason to apply Illinois at all:

> Given these circumstances, it would not make a great deal of sense to apply Illinois law in this case, or even Illinois' choice of law rules. Indeed, the prevailing rule in this situation is that in a case that was directly filed in the MDL transferee court but that originated elsewhere, the law (including the choice of law rules) that applies is

15

> the law of the state where the case originated.  See, e.g., *In re Yasmin
> and Yas (Drospirenone) Marketing, Sales Practices and Prods.
> Liab. Litig.*, MDL No. 2100, No. 3:09-md-02100-DRH-PMF, 2011
> WL 1375011, at *5 (S.D. Ill. Apr. 12, 2011); *In re Bausch & Lomb
> Inc. Contact Lens Solution Prods. Liab. Litig.*, MDL No. 1785, 2007
> WL 3046682, at *3 (D.S.C. Oct. 11, 2007)(noting that "it would be
> an odd result to subject plaintiffs to [the law of the MDL forum]
> simply because they took advantage of the direct filing procedure —
> a procedure that provides benefits to all parties and preserves
> judicial resources").  The Court agrees with the cases just cited and
> concludes that the choice of law rules that apply are those of the
> state where the case originated.  Cf. *In re Temporomandibular Joint
> (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir.
> 1996)("When considering questions of state law …, [an MDL]
> transferee court must apply the state law that would have applied to
> the cases had they not been transferred for consolidation.").

*Id.*  In *Watson*, therefore, the parties agreed to the application of the *wrong* law; the court applied

the law of the originating state *despite* the parties' agreement.  This result shows, of course, that it

is the rationale behind the direct-filing rule that drives its application, and not rote recitations in an

agreed order.

    The second case approved by this Court in *Dobbs* was *In re Yasmin and Yaz

(Drospirenone) Mktg., Sales Prac. and Prods. Liab. Litig.*, 2011 WL 1375011 (S.D. Ill. Apr. 12,

2011).  The agreed order in that case stated only that "the fact that a case was filed directly in the

MDL Proceedings pursuant to this Order will have no impact on choice-of-law, including the

statute of limitations that otherwise would apply to an individual case had it been filed in another

district court and transferred to this Court …."  In other words, the parties and court simply made

no agreement about choice-of-law at all.

    Lacking any such agreement or prior order, the court had to resolve the conflicts issue

itself.  It began by noting the efficiency afforded by direct filing:

> In general, direct filing orders are beneficial to both parties because
> they streamline the litigation and help to eliminate the judicial
> inefficiency involved in the MDL transfer process.  See Eldon

> Fallon, *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L.Rev.
> 2323, 2353 (2008) (the direct filing procedure "eliminates the
> judicial inefficiency that results from two separate clerk's offices
> having to docket and maintain the same case and three separate
> courts (the transferor court, the MDL Panel, and the transferee court)
> having to preside over the same matter.").

*Id*. at *5. The court then held that the "better approach" was to treat direct-filed cases as if they

had been filed in their "originating" states:

> The Court concludes that the better approach is to treat foreign direct
> filed cases as if they were transferred from a judicial district sitting
> in the state where the case originated. For purposes of this analysis,
> the Court considers the originating state to be the state where the
> plaintiff purchased and was prescribed the subject drug. Thus, for a
> foreign direct filed member action involving a plaintiff that
> purchased and was prescribed the subject drug in Tennessee, the
> Court will treat that plaintiff's claims as if they were transferred to
> this MDL from a district court in Tennessee.

*Id*. at *6.

In sum, this Court in *Dobbs* said nothing about any requirement that there be an "explicit

expressed direct-filing order," addressing choice of law, and neither case cited by this Court had

anything of the kind. In fact, one of the cases reached the correct result *despite* the agreement of

the parties. How does the record in this case compare to that in the cases cited with approval in

*Dobbs*?

The parties here began discussing the expedient of direct filing cases from other

jurisdictions shortly after the MDL was formed. The parties and the district court repeatedly treated

this case as one in which direct filing would occur, and in which such cases would be governed by

the law of the originating state originated by the plaintiff:

- **January 2015**: Cook agrees to a standard Short Form Complaint, which requires
  plaintiffs to list the following: "District Court and Division in which venue would have
  been proper absent direct filing." This language arose from arms-length negotiation
  between the parties. App. 5-6.

- **January 30, 2015**: The plaintiffs' steering committee files a Master Complaint, which states: "For purposes of remand and trial, venue is proper pursuant to 28 U.S.C. § 1391 in the federal judicial district of each Plaintiff's state of residence." This language is specifically incorporated into every short form complaint.  App. 7-8.

- **April 17, 2015**: Case Management Order 3, regarding dismissal of additional Cook entities, states that "[a]s to cases directly filed in the Southern District after the entry of this Order and the entry of an order in MDL 2570 permitting direct filing, the Short Form Complaints will not name the additional Cook Entities."  App. 9.

- **April 17, 2015**: CMO 5 specifically states that it applies to the following "All cases transferred to this court by the Judicial Panel on Multidistrict Litigation, including those cases identified in the original Transfer Order and those subsequently transferred as tag along actions; and all cases directly filed in or removed to this MDL."  App. 10.

- **February 2, 2016: Cook files a motion for summary judgment in the *Graham* case.** Cook argues for application of the "originating" jurisdiction's choice of law rule to a case in this MDL, on the basis that it was direct-filed: "When a case based on diversity is part of an MDL and is directly filed in the MDL forum as the result of a direct filing order, courts have found that the 'better approach is to treat foreign direct filed cases [i.e., cases originating outside of this Court's jurisdiction but filed directly into the MDL] as if they were transferred from a judicial district sitting in the state where the case originated.' *In re Yasmin*, 2011 U.S. Dist. LEXIS 39820, at *15, *18 (S.D. Ill. April 11, 2011)."  App. 11-12.

- **March 27, 2017: Cook files a motion for judgment on the pleadings in the *Sales-Orr* case.** Cook again argues for application of the "originating" jurisdictions' choice of law rule to cases in this MDL, on the basis that they were direct-filed: "However, where a case based on diversity is part of an MDL and is directly filed in the MDL forum as the result of a direct filing order, *as occurred with the six cases here*, courts have found that the 'better approach is to treat foreign direct filed cases [i.e., cases originating outside of this Court's jurisdiction but filed directly into the MDL] as if they were transferred from a judicial district sitting in the state where the case originated.' *In re Yasmin*, 2011 U.S. Dist. LEXIS 39820, at *15, *18 (S.D. Ill. April 11, 2011)." (bracketing in original) App. 15-16.

- **May 31, 2017: The district court grants Cook's motion in *Sales-Orr*.** The court applies the "originating" jurisdiction's choice-of-law rule, referencing a prior "direct filing order" in this proceeding: "This Motion addresses those Plaintiffs, whose cases originated outside of this court's judicial district but were directly filed in this MDL forum ("foreign direct filed cases"), *pursuant to the court's direct filing order. …* In 2011, the Southern District of Illinois addressed this issue and held that 'the best approach is to treat foreign direct filed cases as if they were transferred from the judicial district sitting in the state where the case originated.' *In re Yasmin*, No. 3:09-md-2100-DRH-PMF, MDL No. 2100, 2011 U.S. Dist. LEXIS 39820, at *18 (S.D. Ill. April 11, 2011). *The court adopts this approach as it is in keeping with the rule that the transferee court applies the law of the state in which the*

*transferor court is located.* **...** As noted by a sister district court, 'it would be an odd result to subject plaintiffs to [Indiana] law simply because they took advantage of the direct filing procedure—a procedure that provides benefits to all parties and preserves judicial resources.'" (emphasis added) App. 18-20.

As of December 2016, then, when plaintiff's case was filed, the parties had referred to "direct filing" in several agreed pleadings or case management orders.  The parties had also agreed that each plaintiff would file a short form complaint, in which the plaintiff would state "the district court and division in which venue had been proper absent direct filing."  What would have been the point of such a designation, if not to denote where the case "originated"?  And what would have been the point of designating an "originating" state, if that designation were not to matter?

Moreover, Cook had, nearly eleven months before the present case was filed, sought summary judgment in another case precisely on the basis that a direct-filing order existed, and that the originating state's law governed.  It later filed a similar such motion, and obtained summary judgment.  The court referred in that order of summary judgment to "plaintiffs whose cases originated outside of this court's judicial district but were directly filed in this MDL forum ('foreign filed cases), pursuant to the court's direct filing order…."

In fact, the district court ultimately held that Cook had represented the existence of a direct-filing order.  The Court also acknowledged that it had relied on those representations.  The plaintiffs' steering committee filed a motion for reconsideration of the district court's order applying Indiana choice-of-law rules to direct-filed cases.  The court granted this motion in part. Reviewing the history of proceedings in the MDL, the court stated as follows:

> There seems to have been confusion as to whether there was a direct-filing order filed in this case permitting foreign direct-filed cases to be treated as if they were transferred to this district by the Judicial Panel on Multi-District Litigation ("JPML").  *In filings dated February 2, 2016 and March 27, 2017, the Cook Defendants represented that there was such an order. ...*

19

> *The court relied on the Cook Defendants' (mistaken) representation and, in the Court's May 31, 2017 Entry on the Cook Defendants' Motion for Judgment on the Pleadings Based on Statute of Repose, the court analyzed the choice-of-law issue as though the Plaintiffs' cases subject to the motion were directly filed in this MDL forum pursuant to a direct filing order.*

> The direct-filing issue came to a head when the Cook Defendants filed a Renewed Motion for Summary Judgment Based on Applicable Statute of Limitations on September 5, 2019. There, they argued that because the court has "complete authority over cases originally filed in this court," the 144 cases subject to the motion – all of which were direct-filed –originated here; consequently, the forum choice-of-law rules (Indiana) apply to the Plaintiffs' cases. On October 29, 2019, after hearing oral argument on the choice-of-law issue, the court concluded that "[t]he cases at issue were originally filed in the Southern District of Indiana, Indianapolis Division, and are not 'direct-filed cases." (Filing No. 12256, Entry on October 25, 2019 Hearing at 1). Therefore, the court held that Indiana law applied. Because the decision to apply Indiana law could adversely affect Plaintiffs from states with longer statutes of limitation than Indiana (e.g., Michigan, Montana, and Arkansas), Plaintiffs ask the court to reconsider its October 29 decision so that foreign cases directly filed in this MDL between May 31, 2017 and June 13, 2019 are treated as if there had been an explicit direct-filing order in place.

App. 45-47 (emphasis added). The court ultimately held that its May 31, 2017 entry, concluding that direct-filed cases were to be treated as if they had been transferred instead, became the law of the case. Since plaintiffs' counsel "who directly filed foreign cases in this district between May 31, 2017 and Oct. 29, 2019 may have read and relied on the May 31 entry to conclude that there was, in fact, a direct-filing order in place[,]" they "should not be penalized for relying on that entry. Given this unusual situation, the court finds the best cause of action is to treat foreign cases filed between May 31, 2017 and Oct. 29, 2019 as though there was an express direct filing order issued in this case." App. 48.[4]

---

[4] The court later modified this order, to change the latter date of Oct. 29, 2019 to June 13, 2019.

This order does not formally apply to the present case, which was filed in December 2016. But it makes clear that before, and at, the time plaintiff's claim was filed, the parties were proceeding under the shared belief that cases could be direct-filed in the MDL, without the necessity of filing elsewhere first and having the case transferred, and that the background law meant that such cases would be treated as having been transferred anyway.

In such circumstances, it was error to dismiss the case solely because there was never an "explicit expressed direct filing order." The parties understood the procedure that was being used, and its import for choice-of-law issues. *Dobbs* requires no such order, nor do the cases *Dobbs* approved.

**D.    The Arbitrary Requirement of a Direct-Filing Order Undermines the Policies Justifying an MDL Proceeding and Finds No Support in 42 U.S.C. § 1407 or the JPML's Rules**

The district court's insistence on a formal direct-filing order, notwithstanding the parties' plain understanding that cases were to be direct-filed and that such cases would be governed by the originating state's law, was reversible error. The court erred in refusing to follow *Dobbs*, and the district court examples approved by this Court in *Dobbs*. As detailed above, neither the records nor the holdings in *Dobbs*, and the two district court cases cited there, require an "express explicit direct-filing order."

The district court's conclusion is also plainly wrong as a matter of policy. Congress authorized the consolidation of cases into a multidistrict litigation proceeding to "promote the just and efficient conduct" of actions with common questions of fact. 28 U.S.C. § 1407. But defaulting to the MDL court's choice of law rule, for cases that would otherwise be filed elsewhere, promotes a manifestly *unjust* proceeding, by permitting different results for plaintiffs from the same state, depending solely upon whether they originally filed their case in an MDL or first filed elsewhere

21

and were transferred in.  In the present case, of course, application of Indiana law led to the dismissal of plaintiff's claim.  But an identical claim, filed on the same day but transferred from South Carolina, would not have been dismissed.

Defaulting to the MDL court's choice-of-law rule for cases that would otherwise be filed elsewhere also promotes the *inefficient* conduct of tag-along cases, by requiring tag-along plaintiffs to file first in their originating courts, to protect their right to proceed under the rules of the jurisdiction in which they would otherwise file suit in the absence of an MDL proceeding. Filing elsewhere, in turn, not only burdens the docket of the originating jurisdiction, but also necessitates filing a notice of tag- along action with the Joint Panel on Multidistrict Litigation, which must then enter a conditional transfer order. *See* JPML Rule 7.1. Upon completion of pre-trial proceedings, such cases cannot be transferred directly to the originating jurisdiction by the MDL court, but must be returned via the mechanism of a conditional remand order by the JPML, generally upon suggestion of the transferee court. *See* JPML Rule 10.1. This entire process wastes judicial resources and introduces unnecessary delay and expense for the parties.  This is especially true for plaintiffs, who will not be able to avail themselves of efficient procedures such as the use of short-form complaints, that have already been established in the MDL to which their claim will inevitably be transferred anyway.

The district court's arbitrary requirement of an "explicit expressed direct-filing order," moreover, finds no basis in the statutes or rules governing multidistrict litigation.  Neither 28 U.S.C. §1407 nor the rules adopted by the JPML require entry of a direct-filing order before tag-along cases may be filed in the district court appointed to supervise an MDL.

Section 1407 simply authorizes the transfer of cases to an MDL court for consolidated pre-trial proceedings, and further authorizes the JPML to "prescribe rules for its business not

22

inconsistent with Acts of Congress and the Federal Rules of Civil Procedure." 28 U.S.C. § 1407(f).
The JPML, in adopting rules for MDL proceedings, opted not to require tag-along cases to first
file in their originating district and then apply to the Panel for a transfer order, instead providing
simply that "[p]otential tag-along actions filed in the transferee district do not require Panel action,"
as long as they file in compliance with the MDL court's local rules. *See* JPML Rule 7.2(a). Such
an approach yields obvious administrative efficiencies, as it permits tag-along cases to be filed in
the court supervising the MDL, without any bureaucratic handling by the JPML or the
"originating" district court in which the action would otherwise be filed. A direct-filing order
remains useful to clarify the administrative procedures for such filings, such as the proper manner
of styling the cases and the availability of short-form complaints, but it does not give tag-along
plaintiffs the ability to do anything not already authorized by JMPL Rule 7.2(a).

Adopting the MDL court's choice-of-law rule as the default rule for tag-along cases that
have no connection to this jurisdiction apart from the existence of the MDL would improperly allow
"the accident of bureaucratic convenience [to] elevate the law of the MDL forum." *Wahl v. GE*, 786
F.3d 491, 496 (6th Cir. 2015). Indeed, this approach impermissibly recognizes a *federal* choice-
of-law rule, in place of the state choice-of-law rule that would apply in the absence of an MDL
proceeding.  In *Klaxon*, supra, the Supreme Court rejected a federal choice of law rule because it
would "do violence to the principle of uniformity within a state"—precisely as the choice-of-law
ruling here will do, if allowed to stand. 313 U.S. at 496.

All of these reasons are why the "better-reasoned authority…applies the choice-of-law
rules of the originating jurisdiction…." *Sanchez v. Boston Scientific Corp.*, 2014 WL 202787, *4
(S.D.W.Va. Jan. 17, 2014).  That is of course what *Dobbs* commands. The district court erred in
refusing to follow *Dobbs* simply because no formal order recited its rule.

23

## II.     THE DISTRICT COURT ERRED IN APPLYING INDIANA LAW TO PLAINTIFF'S CLAIM, BECAUSE DEFENDANTS WERE ESTOPPED FROM INVOKING IT

As detailed above, Cook argued in two cases, *Graham* and *Sales-Orr*, that direct-filed cases are governed by the conflicts rules of their originating states.  In *Graham*, Cook stated the following:

> When a case based on diversity is part of an MDL and is directly filed in the MDL forum as the result of a direct filing order, courts have found that the better approach is to treat foreign direct filed cases [i.e., cases originating outside of this Court's judicial district but filed directly into the MDL] as if they were transferred from a judicial district sitting in the state where the case originated." *In re Yasmin*, 2011 U.S. Dist. LEXIS 39820, at \*15, \*18 (S.D. Ill. April 11,

App. 12. Cook concluded by arguing that Kansas law should be applied.  In light of this argument, Cook should have been estopped from contending the exact opposite in this case, and thereby securing a dismissal.  As judicial estoppel is a "matter of equitable judgment and discretion," the lower court's application of the doctrine is reviewed for an abuse of discretion.  *Grochocinski v. Mayer Brown Rowe & Maw*, 719 F.3d 785, 795 (7th Cir.2013), quoting *In re Knight-Celotex, LLC*, 695 F.3d 714, 721 (7th Cir. 2012).

The Supreme Court has described the contours of this doctrine as follows:

> "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895). This rule, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich,* 530 U.S. 211, 227, n. 8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000); see 18 *Moore's Federal Practice* § 134.30, p. 134–62 (3d ed. 2000) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a

24

claim taken by that party in a previous proceeding"); 18 C. Wright,
A. Miller, & E. Cooper, *Federal Practice and Procedure* § 4477, p.
782 (1981) (hereinafter Wright) ("absent any good explanation, a
party should not be allowed to gain an advantage by litigation on
one theory, and then seek an inconsistent advantage by pursuing an
incompatible theory").

Although we have not had occasion to discuss the doctrine
elaborately, other courts have uniformly recognized that its purpose
is "to protect the integrity of the judicial process," *Edwards v. Aetna
Life Ins. Co.,* 690 F.2d 595, 598 (C.A.6 1982), by "prohibiting
parties from deliberately changing positions according to the
exigencies of the moment," *United States v. McCaskey,* 9 F.3d 368,
378 (C.A.5 1993)….

Courts have observed that "[t]he circumstances under which judicial
estoppel may appropriately be invoked are probably not reducible to
any general formulation of principle," *Allen,* 667 F.2d, at 1166;
accord, *Lowery v. Stovall,* 92 F.3d 219, 223 (C.A.4 1996); *Patriot
Cinemas, Inc. v. General Cinema Corp.,* 834 F.2d 208, 212 (C.A.1
1987). Nevertheless, several factors typically inform the decision
whether to apply the doctrine in a particular case: First, a party's
later position must be "clearly inconsistent" with its earlier position.
*United States v. Hook,* 195 F.3d 299, 306 (C.A.7 1999); *In re
Coastal Plains, Inc.,* 179 F.3d 197, 206 (C.A.5 1999); *Hossaini v.
Western Mo. Medical Center,* 140 F.3d 1140, 1143 (C.A.8 1998);
*Maharaj v. Bankamerica Corp.,* 128 F.3d 94, 98 (C.A.2 1997).
Second, courts regularly inquire whether the party has succeeded in
persuading a court to accept that party's earlier position, so that
judicial acceptance of an inconsistent position in a later proceeding
would create "the perception that either the first or the second court
was misled," *Edwards,* 690 F.2d, at 599. Absent success in a prior
proceeding, a party's later inconsistent position introduces no "risk
of inconsistent court determinations," *United States v. C.I.T. Constr.
Inc.,* 944 F.2d 253, 259 (C.A.5 1991), and thus poses little threat to
judicial integrity. See *Hook,* 195 F.3d, at 306; *Maharaj,* 128 F.3d, at
98; *Konstantinidis,* 626 F.2d, at 939. A third consideration is
whether the party seeking to assert an inconsistent position would
derive an unfair advantage or impose an unfair detriment on the
opposing party if not estopped. See *Davis,* 156 U.S., at 689, 15 S.Ct.
555; *Philadelphia, W., & B.R. Co. v. Howard,* 13 How. 307, 335–
337, 14 L.Ed. 157 (1851); *Scarano,* 203 F.2d, at 513 (judicial
estoppel forbids use of "intentional self-contradiction ... as a means
of obtaining unfair advantage"); see also 18 Wright § 4477, p. 782.

*New Hampshire v. Maine*, 532 U.S. 742 (2001). The district court here held, without any explanation, that "under the unique circumstances of this case, … judicial estoppel does not bar Cook from arguing the application of Indiana's choice-of-law rules." App. 1. Plaintiff respectfully maintains that this was error.

Each of the factors described by the Supreme Court favors a finding of estoppel here. There is no question that Cook's position in *Graham* and *Sales-Orr* was "clearly inconsistent" with the position it took in the present case. It is also plain that Cook succeeded in persuading the district court to accept its first position, as summary judgment was granted in its favor in the first case.

The final factor identified by the Supreme Court is "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." This factor is surely met as well. Cook obtained the dismissal of plaintiff's claim through its inconsistent position, which is a great detriment to plaintiff, and of course also a great advantage to defendants.

In these circumstances, the district court erred in refusing to hold Cook estopped from seeking summary judgment against plaintiff, on the basis of an argument exactly opposite of what it had successfully maintained previously. This is an independent ground for reversal of the judgment below.

26

## CONCLUSION

For all of the above reasons, plaintiff respectfully prays that the judgment below be reversed, and that plaintiff's claim be remanded to the district court for further proceedings.

Dated: March 8, 2021.

Respectfully submitted,

WATERS & KRAUS, LLP

*/s/ Charles S. Siegel*
Charles S. Siegel
Attorney for the Plaintiff-Appellant
Victoria Looper
3141 Hood Street, Suite 700
Dallas, Texas 75219
T: (214) 357-6244
F: (214) 357-7252
siegel@waterskraus.com

The Nations Law Firm
Alison Divine
Attorney for the Plaintiff-Appellant
Victoria Looper
9703 Richmond, Suite 200
Houston, TX 77042
T: (713) 807-8400
F: (713) 807-8423
alison.divine@howardnations.com

Williams & Piatt, LLC
Joseph N. Williams
Attorney for the Plaintiff-Appellant
Victoria Looper
301 Massachusetts Ave.
Indianapolis, Indiana 46204
T: 317-633-5270
joe@williamspiatt.com

Martin Baughman
Ben C. Martin

27

Attorney for the Plaintiff-Appellant
Victoria Looper
3141 Hood Street
6th Floor
Dallas, Texas 75219
T: (214) 761-6614
bmartin@martinbaughman.com


Heaviside Reed Zaic, A Law
Corporation
Michael W. Heaviside, Esq.
Attorney for the Plaintiff-Appellant
Victoria Looper
910 17th Street, NW, Suite 800
Washington, DC 20006
T: (202) 223-1993
mheaviside@hrzlaw.com


Lowe Law Group
Nathan Buttars
T. Aaron Stringer
Attorneys for the Plaintiff-Appellant
Victoria Looper
6028 S. Ridgeline Dr., Suite 200
Ogden, UT 84405
T: (385) 298-0175
nate@lowelawgroup.com
aaron@lowelawgroup.com

## CERTIFICATE OF COMPLIANCE WITH
## FRAP RULE 32(A)(7), FRAP RULE 32(G) AND CR 32(C)

The undersigned, counsel of record for the Plaintiff-Appellant, Victoria Looper, furnishes

the following in compliance with F.R.A.P Rule 32(a)(7):

I hereby certify that this brief conforms to the rules contained in F.R.A.P. Rule 32(a)(7) for

a brief produced with a proportionally spaced font.  The length of this brief is 8,298 words.

Dated: March 8, 2021.


WATERS & KRAUS, LLP

*/s/ Charles S. Siegel*
Charles S. Siegel
Attorney for the Plaintiff-Appellant
Victoria Looper
3141 Hood Street, Suite 700
Dallas, Texas 75291
T: (214) 357-6244
F: (214) 357-7252
siegel@waterskraus.com

**PROOF OF SERVICE**

The undersigned, counsel for the Plaintiff-Appellant, Victoria Looper, hereby certifies that

on March 8, 2021, a copy of the Brief and Required Short Appendix of Plaintiff-Appellant Victoria

Looper was electronically filed and served via the Court's CM/ECF system to counsel for the

Defendants-Appellees, Cook, Incorporated, Cook Medical, LLC, William Cook Europe APS.

Dated: March 8, 2021.


WATERS & KRAUS, LLP

*/s/ Charles S. Siegel*
Charles S. Siegel
Attorney for the Plaintiff-Appellant
Victoria Looper
3141 Hood Street, Suite 700
Dallas, Texas 75291
T: (214) 357-6244
F: (214) 357-7252
siegel@waterskraus.com