IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC. IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTSLIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates to Plaintiff : Robert R. Cunningham
Civil Case # 1:16-cv-1986

### PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT UNDER CMO-28 and F.R.C.P. 12[c]

Defendants assert Plaintiff's claims are time barred under North Carolina's pre-2009 six-year statute of repose ["SOR"][1] for product liability actions; and the current twelve-year SOR, N.C. Gen. Stat. § 1-46.1, does not apply. [Dkt. 21168, the "Motion."]. Defendants move for judgment on the pleadings to dismiss Plaintiff's action in its entirety.  Plaintiff did not voluntarily dismiss his case pursuant to CMO-28 for the following reasons:  [1] Plaintiffs assert Defendants' waived the Statute of Repose ["SOR"] by expressly warrantying that their Celect IVC filter was safe for permanent implantation which was relied on by plaintiff and his implanting doctor ; [2] there are two open and unsettled issues involving North Carolina law regarding how a North Carolina court would interpret the N.C. SOR regarding [a] whether the 2009 amendment extended the SOR to Plaintiff's with claims that had not yet been extinguished before the amendment was enacted and which were filed within twelve years of its implantation, and [b] whether the "disease exception" applies to cases such as Mr. Cunningham's rendering the SOR inapplicable. *See In re Biomet M2a Magnum Hip Implant Prods. Liab. Litig.*, 2019 WL 110892, *2 [N.D. Ind. 2019].

---

[1] *See* N.C. Gen. Stat. § 1-50[a][6] [now repealed].

In *Biomet*, this Court's sister court determined that it would defer on those two open and unsettled questions of North Carolina law, in favor of allowing a North Carolina court to rule if and when the cases [also pending in an MDL] were remanded. *Id*. at *5-6.

## I. Defendants Waived the SOR by Expressly Warrantying Their Celect Filter was Safe for Permanent Implantation [More Than Six Years]

North Carolina Supreme Court precedent makes it clear that a manufacturer like Cook can waive the six-year SOR by warranting that its product was safe for permanent use [and certainly for implantation longer than just six years] by its own marketing, instructional and informational materials to healthcare providers, learned intermediaries and plaintiffs.[2]

In *Christie v. Hartley Construction, Inc*., 367 N.C. 534,540 [2014] [*Christie 2*], the North Carolina court made clear that:

> [W]e see no public policy reason why the beneficiary of a statute of repose cannot bargain away, or even waive, that benefit. A warranty is a seller's indication of its confidence in, and its willingness to stand behind, its product. A business marketing its products may reasonably conclude that offering a warranty giving customers protection exceeding the limitations period will provide edge over its competitors.

*Id*. at 540 [analyzing N.C. Gen Stat.§ 1-50[a][5], North Carolina's six-year SOR regarding improvements to real property].

In *Christie 2*, defendants' warranty began in 2005, when the six-year SOR was in effect under N.C. Gen. Stat. § 1-50[a][5], however suit was not filed until several months after the six-year time frame had expired. *Id*. at 537. The trial court granted summary judgment to the manufacturer based on the expiration of the six-year SOR and the appellate court affirmed.

---

[2] The attached exhibits [all but one filed under seal pursuant to CMO #8, Dkt. 481, under an abundance of caution], are highlighted and bookmarked for the Court, and include marketing, ads, instructions for use and patient information regarding the Celect IVCF, some of which were available on Defendants' website]: [1] 2008 Celect-Marketing & Instructional Brochure [CookMDL2570_ 012330-012335]; [2] 2013 Celect and Tulip Patient Guide-Cook Website [24 pgs];[3] 2010 Celect Vena Cava Filter Information-Cook Website [Cook IVCF 005775-6]; [4] IFU Celect 2008 -partial-Perm-Fem [CookMDL2570- 0012338-012349]

The N.C. Supreme Court reversed the trial court's summary judgment for the defendant manufacturer [Grailcoat][3], first noting that both express and implied warranties are contractual in nature and emphasizing the long-standing principle that in North Carolina, the parties are free to contract "as they deem appropriate." *Id.* at 540.  Specifically, the court noted the defendant:

> "advertised its product to plaintiffs as being 'fully warranted' for twenty years but now claims that this warranty covered only the first six years after its product was applied…. A warranty that a seller knows is unenforceable is a sham, useful only to beguile the unsuspecting." *Id.*

Similarly, here, Cook Defendants' marketing, advertising, IFU's and patient brochures claimed their Celect filter was a "*permanent*" filter with the "*option*" to retrieve; working safely and effectively for permanent implantation.[4]  Thus creating an express warranty under North Carolina law.[5],[6],[7]  Cook advertised the safety and effectiveness of its Celect as a permanent or retrievable filter to the public and learned intermediaries in order to give it a competitive edge over other IVC manufacturers. These facts support Cook's waiver of the six-year SOR here.  For

---

[3] Grailcoat manufactured a stucco-like material that plaintiff's used to cover the exterior of their home. *Christie* at 535. Defendant advertised on its website that the product was warranted for 20-years. *Id.*

[4] Plaintiff previously filed a motion for leave to file an amended SFC to add more specific allegations regarding Cook's express warranties and allegations of reliance, Discovery of injury and expanding on his Injuries and damages [Dkt 57-1].

[5] N.C. Gen. Stat. § 25-2-313 dictates that:
[1] Express warranties by the seller are created as follows:
    [a] any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.  [b] Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description. [c] Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.
[2] It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.

[6] Plaintiff's original and First Amended SFC alleges Breach of Express and Implied Warranty Claims, *see* counts V, VI.

[7] Representations and affirmations of fact made in product advertising can create express warranties under North Carolina law.  *See pap v. DaimlerChrysler Corp.*,411 F.Supp.2d 614,620 [M.D. N.C. 2006].  Furthermore, "the issue of whether a seller's representations amount to an express warranty is ordinarily a question of fact." *Id*. [citing *Pake v. Byrd*, 55 N.C. App. 551 [1982] and N.C. G.S. § 25-2-313, cmt 3].

Cook to argue its warranties and representations of the safety of its device as a long-term permanent implant are now a nullity and the product is really only warranted for six years post-implant--- renders its representations a "sham". Cook should be held to its representations.

Importantly, in Plaintiff's First Amended SFC, Plaintiff alleges that her implanting doctor and implant facility, as the learned intermediaries, relied on Cook's warranty when deciding to place Cook's Celect IVC filter in patients like Plaintiff and in Plaintiff himself.[8] Under the learned intermediary doctrine, the prescribing and implanting doctor stands in the shoes of the ultimate consumer/patient as the "learned intermediaries". Similarly, with failure to warn claims, the warranties made by Cook runs to them. *See Felan v. Boston Scientific Corp.*, 2015 WL 2137180, *[S.D. W.V. 2015] [applying North Carolina law and holding that "even if [plaintiff ] merely relied on [the implanting doctor's] medical judgement in deciding to have the [medical device] implanted, a reasonable juror could find that [plaintiff] relied on the express warranties of BSC as were provided to [the implanting doctor], which formed the basis for the [implanting doctor's] medical judgement."]; *Baraukas v. Danek Medical, Inc.*, 2000 WL 223508, *4 [M.D. N.C. 2000] [granting summary judgment to medical device manufacturer on the basis of several defenses, including that the plaintiff's failure to warn and breach of express and implied warranty claims fail under the learned intermediary doctrine because the implanting doctor independently formed his opinion on the efficacy of the device at issue without influence by the manufacturer].

Allegations that the purchaser of the product at issue received certain warranties, relied on those representations, and that the representations were material in the decision to purchase

---

[8] See Plaintiff's First Amended SFC, [Doc.57-1, No 15 at 4];

the product are "specific enough to demonstrate reliance at the pleading stage." *Jones v. BMW of North America, LLC.*, 2020 WL 5752808, *6 [M.D. N.C. 2020].

On a motion for judgment for the pleadings, these allegations must be taken as true and construed in Plaintiff's favor. To the extent that Cook responds that *any evidence* is lacking, case-specific fact discovery is necessary before any Court can render any opinions on the issue of Plaintiff's warranty claims.

## II. Plaintiff's Claims Accrued After 2009, Allowing Twelve Years To File

The first unsettled question of North Carolina law was discussed and recognized by this Court's sister district court, in *In re Biomet M2a Magnum Hip Implant Prods. Liab. Litig.*, 2019 WL 110892, *2 [N.D. Ind. 2019]. The *Biomet* court held that the issue is not whether the twelve-year North Carolina SOR[9] amending the six-year SOR in October, 2009, applies retroactively or "revives a stale claim." Rather, the *unsettled question of law is whether it extends the SOR timeline* for cases in which the *claims* at issue *have not yet been extinguished*. In the words of the *Biomet* court, "[w]hile a claim's accrual generally does not affect operation of the statute of repose…., it may in cases, like these, that fall between the old statute of repose and the new." *Biomet, supra*, at *6, fn.6. This is a particularly apt distinction where the legislature explicitly dictates that the twelve-year SOR "applies to causes of action that accrue on or after that date." *Id*. at *6.

---

[9] In North Carolina, there is a 12-year statute of repose for product liability matters, N.C. Gen. Stat. § 1-46.1, which applies "to causes of action that *accrue* on or after" the effective date of the statute, October 1, 2009. 2009 N.C. Sess. Laws 2009-420 § 3 [emphasis added]; *Robinson v. Bridgestone/Firestone N.A. Tire, LLC*, 703 S.E.2d 883, 886 [Ct. App. N.C. 2011] ["N.C. Gen. Stat. § 1-46.1[1] became effective 1 October 2009 and applies to causes of action that accrue on or after that date."].

In North Carolina, a cause of action for personal injury does not accrue "until bodily harm to the claimant… becomes apparent or ought reasonably to have become apparent to the claimant." N.C. Stat. Ann. § 1-52(16). *See* also *In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.,* 2017 WL 2501754, at *11 [N.D. Ga. June 9, 2017] [in a putative class action, which claims accrued after 2009 for purposes of the N.C. statute of repose "will depend on individualized evidence, including the date and nature of the class member's property damage" – which would not be relevant under Defendants' interpretation of the statute].

Although there is caselaw suggesting that a claim, once extinguished, cannot be revived by a statutory amendment, that is *not* what happened here. Instead, the <u>amendment extended the time</u> in which he could file claims. In *Biomet*, a federal court in Indiana faced the same question regarding the N.C. SOR. [10] There, plaintiff argued that their claims were "alive and kicking [though not yet accrued]" at the time of the 2009 amendment. *Id*. at *5. As a result, they were not arguing for "resurrection" of their claims. *Id*. The court noted that, "[t]he legislature, of course, has authority to modify the legislatively-created repose period for claims not already extinguished." *Id*. In the <u>absence of controlling North Carolina caselaw, the court deferred consideration</u>. *Id*. at *6 [*emphasis added*]. This Court, too, should deny the Motion and allow a North Carolina court to revisit this issue upon remand if it determines that the Defendants' did not waive the SOR.

---

[10] The *Biomet* court noted an unsettled question of N.C. law is whether the twelve-year SOR extends the timeline for cases in which the claims at issue have not yet been extinguished. The *Biomet* court noted "[w]hile a claim's accrual generally does not affect operation of the statute of repose…, it may in cases, like these, that fall between the old statute of repose and the new." *Biomet, supra*, at *6, fn.6.

Importantly, the *Biomet* court gave due regard to the same cases Cook often cites in support of their arguments, including *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, 2016 WL 1452400 [M.D. Ga. 2016]. Unlike in those cases, Plaintiff's claims here [and for three out of four plaintiffs in *Biomet*] were not already "extinguished" by the six-year SOR set forth in N.C. Gen.Stat. § 1-50[6].

Here, Plaintiff's filter was placed on November 25, 2008-- just eleven [11] months before the twelve-year amendment to North Carolina's SOR was enacted. *Plaintiff's claims accrued no earlier than December 2015* when an incidental MRI of his back noted that the Celect IVC filter was broken, fractured, bent, migrated and he was referred to a specialist for a partial removal surgery on June 28, 2016. Plaintiff's claim was filed on July 26, 2016,[11] , well within the twelve-year SOR, but past the six-year limit.

Given that Plaintiff's claims were still "alive and kicking [though not yet accrued]" when the legislature acted in October 2009, the *Biomet* courts conclusion that there remains an unsettled question of North Carolina law is correct.

Plaintiff respectfully prays that this Court, too, should DENY the Motion and allow a North Carolina court to revisit this issue upon remand if it determines that the Defendants' did not waive the SOR.

**III. The Disease Exception to North Carolina's Statute of Repose Applies Here**

---

[11] See Plaintiff's SFC, [Doc. 1]; Date of Implantation 11.25.2008 [SFC, Doc 1, #11].

The *Biomet* court duly noted under the *Hyer* approach, set forth in *Hyer v. Pittsburgh Corning Corp.*, 790 F.2d 30 [4th Cir. 1986], which the *Biomet* court noted has been followed by the majority of federal courts to rule on the issue since 1986, "the *Wilder* 'disease exception' applies to all [or at least many] statutes of repose." *Biomet, supra*, at *5.

Furthermore, applicable case law confirms that consideration of what injuries and conditions qualify as a "disease exception" requires a case specific factual inquiry. The *Biomet* court did not rule that the "disease exception" per se does not apply to implanted medical devices [in that case, a metal-on-metal hip]. Correctly so, as the Fourth Circuit has already held years ago that the "disease exception" *can and did apply* in such a case. In *Bullard v. Dalkon Shield Claimants Trust*, 74 F.3d 531 [4th Cir. 1996], the Fourth circuit answered affirmatively that it believed the North Carolina Supreme Court would find that pelvic inflammatory disease—arising from the implantation of an IUD, a medical device—"is a disease and that the statute of repose does not apply to bar the plaintiff's claim." *Id*. at 532 [ruling on the application of N.C. Gen. Stat. § 1-50[6], the exact same SOR that Cook claims bars Plaintiff's claim here.]

According to the Fourth Circuit in *Bullard*, the pertinent question is not whether the offending product is an implantable device, rather, in determining a disease exception to the statute, the court looks primarily to two characteristics: [1] difficulty or impossibility in establishing the exact time the injury occurs or the disease process begins and [2] some period of time between the first exposure to the product and the discovery of the disease, such that the product induced harm is not readily apparent until the disease/injury is diagnosed. *Id*. at 535.[12]

---

[12] *See also Patterson v. McKinley Medical, LLC,* 2011 WL 1260145, at *2 [E.D.N.C. Mar.3, 2011][denying motion to dismiss claims for development of chondrolysis, alleged to have developed from the implantation of a pain pump, on the ground that the disease exception may apply and any further analysis was more appropriately conducted after discovery].

Another instructive case held that the North Carolina SOR does not apply to claims for latent diseases.  *See, e.g., In re Paraquat Prods. Liab. Litig.,* 2022 WL 451898, at *7-9 [S.D. Ill. Feb. 14, 2022].[13]  Therefore, this "disease exception" does apply in medical device cases.

Here, plaintiff's Amended Complaint notes that he developed organ perforation, fractured IVC filter along with a portion of the filter remaining inside his body and venous insufficiency of his lower extremities,[a disease condition related to complications from his IVC filter].[14]  Expert and treating doctor testimony will need to be elicited to fully understand plaintiff's disease conditions related to his Cook Celect IVC filter—another reason this Court should defer a ruling here.

None of the cases cited in defendants' Motion address plaintiff's case-specific facts and these cases are distinguishable on that basis.  In addition, none of defendants' cited cases discuss [1] caselaw supporting waiver of the six-year SOR by a longer express warranty; [2] nor do they address the disease exception in a similar case .  Finally, none of Defendants' cited cases address the unsettled, open questions of law as to whether the 2009 amendment extended the SOR to plaintiffs with claims that had not yet been extinguished before the amendment took place.  Regretfully, it does not appear that some of these arguments were presented to those Courts.  At this time, Plaintiff is not aware that this Court has ruled on these specific arguments presented herein in a case with a fact pattern similar to plaintiff's, possibly because they have not previously been briefed before this Court.

---

[13] Although a single Seventh Cir. Decision has held otherwise, *Klein v. DePuy, Inc.,* 506 F.3d 553, 557-59 [7th Cir. 2007], this decision has been widely criticized. *See, e.g., In re Dow Corning Corp.,* 778 F.3d 545, 552 n.2 [6th Cir.2015] ["Klein itself appears to be at odds with [NC] law"].
[14] *See* Plaintiff's First Amended Complaint, Dkt. No. 57-1, No. 15[B].

Therefore, because there are a number of unanswered questions which may require additional case-specific fact discovery, and because Cook's express warranty waived the six-year SOR, Plaintiff prays this court will DENY Defendants' Motion for Dismissal and DEFER this issue to a North Carolina Court to rule on after remand.

Date:  March 3, 2022            Respectfully submitted,

        **THE DUDLEY LAW FIRM, LLC**

        By: */s/ Elizabeth Dudley*
        Elizabeth Dudley [KS Bar No. 21582] [admitted *pro hac vice*]
        **The Dudley Law Firm, LLC**
        23438 SW Pilot Point Rd
        Douglass, Ks  67039
        [316] 746-3969 [office]
        [316] 854-5638 [fax]
        Liz@lizdudleylaw.com

        *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2022, a copy of the foregoing was served electronically and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to the CM/ECF participants registered to receive service in this matter. Parties may access the filing through the Court's system.

        / s/ Elizabeth Dudley