UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC. IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates Only to the Following Cases:

Cunningham, Robert, 1:16-cv-01986

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT IN
PLAINTIFF ROBERT CUNNINGHAM'S CASE PURSUANT TO CMO-28**

Because Plaintiff's IVC filter was undisputedly purchased before October 1, 2009, Plaintiff's claims are time-barred by North Carolina's six-year statute of repose for the reasons set forth in the Court's prior order in *Wilson* and *Amey* (Dkts. 15084 & 20384). Plaintiff, however, opposes Cook's motion on three grounds: (1) that the classification of his filter as retrievable or permanent constitutes an express warranty that circumvents the statute of repose, (2) that the 12-year statute of repose applies to his case based on the injury – fracture and partial removal of his filter – occurring after October 1, 2009, and (3) that his case falls under a latent disease exception to the statute of repose. *See* Pl.'s Resp., Dkt. 21286-1 at 1.[1] Notwithstanding Plaintiff's suggestion to the contrary, this Court has in fact fully considered and rejected all of these arguments in its previous rulings in cases governed by North Carolina law. *See, e.g.,* Dkt. 15084 (*Wilson*); Dkt. 20384 (*Amey*).

A.   **Plaintiff's Express Warranty Arguments Fail for Multiple Reasons**

Plaintiff argues that Cook waived its right to the benefit of the statute of repose through an express warranty, claiming that the "Cook Defendants' marketing, advertising, IFU's [sic], and patient brochures claimed that their Celect filter was a '*permanent*' filter with the '*option*' to retrieve; working safely and effectively for permanent implantation." Pl.'s Resp., Dkt. 21286-1 at 2-3 (citing *Christie v. Hartley Constr. Inc.*, 367 N.C. 534, 540 (2014) for the proposition that there is "no public policy reason why the beneficiary of a statue of repose cannot bargain away, or even waive that benefit."). Plaintiff also amended his complaint to describe the claimed injury as involving a Celect filter that "was broken, fractured, bent out of shape, migrated" requiring a

---

[1] With the Court's permission, Plaintiff filed a 10-page response to Cook's motion, *see* Dkts. 21286 & 21319, and also filed an amended complaint (Dkt. 21377) and four exhibits (Dkt. 21287) in support of arguments in his Response. In return for Cook's consent to the expanded response, Plaintiff consented to Cook's filing of an expanded reply of up to 10 pages. Cook has separately moved for leave to file such an expanded reply. Plaintiff's second filing of the Response (Dkt. 21319) appears to be substantively identical, but includes highlighting of certain citations. Cook cites to the first filed Response (Dkt. 21286) as the operative response for purpose of this brief.

1

removal surgery that resulted in partial removal of the filter. Pl.'s Am. Compl., Dkt. 21377, ¶ 15 (A)-(B). Plaintiff also added the following allegations regarding the express-warranty claim:

> C. EXPRESS WARRANTY CLAIM AND REPRESENTATIONS: Prior to implantation, plaintiff was told by his implanting physician that his filter was "permanent."
>
> D. EXPRESS WARRANTY CLAIM AND REPRESENTATIONS: Cook's IFU to healthcare providers noted that its Celect IVC was a permanent filter with the "option to retrieve it" and the filter worked just as safely and effectively for permanent implantation. Upon information and belief, plaintiff's doctors and implant facility, as the learned intermediaries, relied on Cook's warranty when deciding to place Cook Celect filters in patients like Plaintiff and Plaintiff himself.

*Id.*, ¶ 15 (C)-(D). Plaintiff also filed four Cook documents with his Response: (1) Celect filter product brochure (copyright 2008); (2) Celect filter order page from Cook's website (dated December 6, 2010); (3) the Celect Instructions For Use (IFU) (copyright 2008); and the Celect and Tulip Patient Guide (copyright 2008). *See* Dkt. 21287 (Plaintiffs' first three exhibits filed separately under seal); Dkt. 21289 (Patient Guide filed separately). Plaintiff's express warranty claim fails for multiple reasons.

### 1. Plaintiff's Express-Warranty Claim Is Subsumed Into His Time-Barred Product Liability Claims

Plaintiff cannot circumvent the statute of repose by invoking express warranty because the essence of the express-warranty claim sounds in product liability and is subsumed into the product-liability claims that are barred by the statute of repose.[2] *See Lackey v. DePuy*

---

[2] Even assuming *arguendo* that Plaintiff's express-warranty claim were not subsumed into the product liability claims, Plaintiff's general references to a "permanent" filter and reliance on his physician's recommendations are devoid of detail and specific facts to sufficiently plead a claim for express warranty. *See City of High Point, N. Carolina v. Suez Treatment Solutions, Inc.*, 485 F. Supp. 3d 608, 628 (M.D. N.C. 2020) (dismissing express warranty claim because the plaintiff failed "to allege any specifics about the terms or understandings of the express warranty" and was left relying on "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.") (internal citations omitted). While Cook addresses the documents Plaintiff submitted below, the Court may deny the express warranty

*Orthopaedics, Inc.*, 2011 WL 2791264, at *2 (W.D. N.C. July 14, 2011) (dismissing case on statute of repose grounds and holding that "thorough review of Plaintiff's Complaint reveals that Plaintiff's claims all stem from the purchase of an allegedly defective hip" and that "[a]rtful pleading does not allow Plaintiff to transform product liability claims into claims sounding in negligence and breach of warranty."). Plaintiff's express warranty claims here are similarly centered on the sale of an allegedly defective IVC filter, *see, e.g.,* Master Compl., Dkt. 213, ¶¶ 96-97 (alleging various design and manufacturing "defects" as part of pleading the express warranty claim), and are thus subject to the same statute of repose.

### 2. Plaintiff Has Failed to Identify Any Actionable Express Warranty

Plaintiff's argument that an express warranty defeats the North Carolina statute of repose also fails because Plaintiff has failed to identify any representation by Cook that could legally constitute such an express warranty. In the *Christie* decision, the primary authority on which Plaintiff bases his warranty argument, the plaintiffs presented evidence of a written, detailed 20-year "full" warranty. *See* 766 S.E.2d at 285-86. In contrast here, Plaintiff's argument is entirely based on references to the permanent use option for the Celect in "marketing, ads, instructions for use and patient information regarding the Celect IVCF, some of which were available on Defendants' website." Pl.'s Resp., Dkt. 21286-1 at 2 n. 2; *see also* Dkt. 21287 & 21289 (Plaintiff's exhibits).

These references do not and cannot as a matter of law constitute an express warranty. The mere fact that the filter had a possible permanent use option does not constitute an express warranty. No fair and holistic reading of the Cook documents Plaintiff has submitted could create a reasonable inference that the Cook Defendants expressly warranted or guaranteed that

---

claim because it is subsumed by the product liability claim or inadequately pled through Plaintiff's threadbare assertions. *Lackey*, 2011 WL 2791263, at *2; *City of High Point*, 485 F. Supp. 3d at 628.

3

the filter would last indefinitely or that complications could not occur.[3]  On the contrary, the documents Plaintiff attached expressly warned that retrieval may not be successful and noted that adverse events were possible.  Specifically:

- Celect Filter Brochure (Dkt. 21287-1):  Plaintiff points to statements that "the Celect has enhanced retrievability, giving you more time than ever to retrieve or leave it" and that the "Celect is a retrievable device, it is also designed to stay in place." *Id.* at 2-3.  This document also makes clear that "[s]tudy results show that Celect has a high probability of successful retrieval"—but does not guarantee successful retrieval. *Id.* at 4.

- Celect Filter Online Order Page (Dkt. 21287-2):  Plaintiff points to this sentence: "The filter may be retrieved according to the Instructions for Use in the section labeled 'Optional Retrieval Procedure.'" *Id.* at 1.  Again, the statement discusses the possibility of retrieval, but does not guarantee retrieval. The passage also refers the reader to the Instructions for Use for additional information, discussed below.

- Celect Instructions for Use (IFU) (Dkt. 21287-3):  Plaintiff points to phrases such as "[t]he Cook Celect Vena Cava Filter may be retrieved" and "studies demonstrate that the device can be safely removed." *Id.* at 21287-3 at 3, 4.  Again, the statements only discuss the possibility of retrieval, but do not guarantee retrievability.  Moreover, a subsequent section titled "Retrieval" discusses in detail two studies that make clear that retrieval attempts are not always successful.  The first study notes filter retrieval was successful in 41 of 43 cases, and that "[t]wo filters were not retrieved (360 and 385 days following insertion) because the filter snare could not engage the filter hook that was embedded in tissue growth at the vena cava wall." *Id.* at 6.  The second study is a "Kaplan-Meier analysis predict[ing] an 89% probability of successful retrieval at 52 weeks." *Id.*

- Cook Celect and Tulip Patient Guide (Dkt. 21289)[4]:  Plaintiff points to phrases such as "these filters can also remain in place as permanent devices" and "sometimes, retrievable filters just can't be removed." *Id.* at 8, 10.  Thus, the very language that Plaintiff highlights explains that removal is not possible in every instance. *Id.* at 10.  The next sentence of the Patient Guide further explains "Every patient is different.  That's why you and your doctor should weigh the risks and benefits of vena cava placement and retrieval." *Id.* at 10.  The Patient Guide also has a section titled "Some risks of filter implantation," which lists various possible adverse events, including "[f]racture of the filter in the vena cava." *Id.*

---

[3] In submitting various Cook documents in supposed support of his response, Plaintiff has effectively converted Cook's 12(c) motion to a Rule 56 motion for summary judgment.  *See* Fed. R. Civ. P. 56(d).

[4] Plaintiff's purported reliance on the Celect and Tulip Patient Guide is further undercut because the document was not published until 2013, while Plaintiff received her filter more than four years earlier, on November 25, 2008.  *See* Pl.'s Am. Compl., Dkt. 21377, ¶ 11.

The passages Plaintiff quotes from these documents thus describe filter retrieval as a *possible* option; they do not guarantee that retrieval will be possible in every instance, and they note that chances of successful retrieval decrease over time. See Dkts. 21287 & 21289.

Moreover, the Celect IFU includes a section titled "Potential Adverse Effects" that warns of various complications that may occur, such as "[d]amage to the vena cava," "Pulmonary embolism" and "Vena Cava Perforation," among others. Dkt. 21287-3 at 5. The Celect Brochure states that the filter's [c]onichrome frame reduces risk of fracture." Dkt. 21287-1 at 3 (also stating the filter features "[c]onichrome construction for fracture resistance in a dynamic vena cava."); *see also* Celect and Tulip Patient Guide, Dkt. 21289, at 10 ("The following adverse events are possible: … Fracture of the filter in the vena cava.") These statements demonstrate that Cook took risk of fracture into account as part of its design process and tried to reduce risk of fracture, but the statements do not warrant that the risk of fracture was eliminated completely.

In sum, the very documents on which Plaintiff rests his express warranty claim not only do not warrant retrievability, they make clear that filters sometimes fracture and that retrieval attempts sometimes fail. The documents Plaintiff attached thus cannot as a matter of law constitute a warranty or guarantee that filter fracture – the complication that Plaintiff claimed to have experienced – would never occur if the filter remained in his body indefinitely.

**3.  Plaintiff's Express-Warranty Claim Fails Because He Cannot Establish Receipt or Reliance Upon the Alleged Warranty**

To establish an express-warranty claim under North Carolina, a plaintiff must prove "(1) an express warranty as to a fact or promise relating to the goods, (2) which was relied upon by the plaintiff in making his decision to purchase, (3) and that this express warranty was breached by the defendant." *Harbor Pt. Homeowners Ass'n, Inc. v. DJF Enters.*, 697 S.E.2d 439, 447 (N.C. Ct. App. 2010).

5

Plaintiff here does not claim that he relied on or even read any of the Cook documents attached to his Response prior to receiving his filter, nor does he claim to have had any direct contact with Cook or Cook representations regarding the filter.[5] Instead, Plaintiff alleges that he "was told by his implanting physician that his filter was 'permanent.'" Pl.'s Am. Compl., Dkt. 21377, ¶ 15(C). Plaintiff does not claim that his implanting physician was an employee or agent of Cook, and any representation by his doctor therefore does not and cannot constitute an express warranty made by Cook.

Plaintiff also claims in his Amended Short-Form Complaint that "[u]pon information and belief, plaintiff's doctors and implant facility, as the learned intermediaries, relied on Cook's warranty when deciding to place Cook Celect filters in patients like Plaintiff and Plaintiff himself." Pl.'s Am. Compl., Dkt. 21377, ¶ 15(D). But information and belief is not enough; by asking the Court to consider materials outside the complaint, Plaintiff has converted Cook's Rule 12(c) motion to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d) (" If, on a motion under Rule …12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). And in opposing a motion for summary judgment, a party cannot simply rely on "information and belief" but must provide actual evidence. *See Warsco v. Preferred Tech. Grp.*, 258 F.3d 557, 563 (7th Cir. 2001) (holding party opposing summary judgment "may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence"). Plaintiff chose to convert Cook's motion to a summary judgment motion, and he cannot avoid the evidentiary obligations imposed by that

---

[5] This is in sharp contrast to *Christie*, where the Court expressly stated that the plaintiffs had read and relied on the defendant having "'fully warranted for twenty years [that its product will] not crack, craze, fatigue, or delaminate from the substrate.'" 766 S.E.2d at 285 (quoting terms of express warranty offered on defendant's website that plaintiffs reviewed and relied on prior to purchase). As Cook had no direct contact with Plaintiff, *Christie* presented a much different case.

6

choice. Plaintiff has not established that his treating doctors relied on *any* representations by Cook, much less the supposed express warranty Plaintiff theorizes.

In sum, neither Plaintiff's amended pleading or the Cook documents he has submitted are sufficient to establish (1) the existence of an express warranty, (2) Plaintiff's knowledge or reliance on such an express warranty, or (3) Plaintiff's doctors' knowledge or reliance on such an express warranty. Plaintiff's express warranty claim therefore cannot save his action from the North Carolina statute of repose.[6]

**B.     The Six-Year Statute of Repose Bars Plaintiff's Claim Under Prior Orders**

Plaintiff argues that North Carolina's 12-year statute of repose applies to his case because his alleged injury occurred after October 1, 2009.[7] Plaintiff cites *In re Biomet M2a Magnum Hip Implant Prods. Liab. Litig.*, 2019 WL 110892, at *2 (N.D. Ind. 2019) for the suggestion that there is an unsettled question of North Carolina law concerning whether the 2009 amendment to the statute of repose extended the repose period for claims that the previous statute of repose had not yet extinguished. *See* Pl.'s Resp., Dkt. 21286-1 at 5.

There is no such unsettled question of law. This Court has rejected Plaintiff's argument twice before and should do so again here. *See* Dkt. 15084 (*Wilson*) at 2 ("North Carolina courts have held that the enlargement of the repose period to 12 years did not have retroactive effect for claims involving products used prior to that time."); Dkt. 20384 at 2-4 (*Amey*) (same). Notably, despite the prominence of the *Amey* decision in Cook's original CMO-28 motion, *see* Dkt. 21168

---

[6] Even assuming for the sake of argument that Plaintiff could establish a viable claim based on express warranty, the statute of repose would nevertheless bar the remainder of his claims. *See Christie,* 766 S.E.2d at 288 (permitting express warranty claim to advance but affirming dismissal of all other claims based on North Carolina's construction statute of response).

[7] Plaintiff describes his injury as involving a "Celect IVC filter [that] was broken, fractured, bent, migrated" per an MRI taken in December 2015 and that required referral "to a specialist for a partial removal surgery on June 28, 2016." Pl.'s Resp., Dkt. 21286-1 at 7; *see also* Pl.'s Am. Short-Form Compl, Dkt. 21377, ¶ 15(A)-(B) (additional allegations regarding claimed injuries).

7

at 2-3, Plaintiff's response does address or even acknowledge that decision. Moreover, the Seventh Circuit has reached the same conclusion, *see Klein v DePuy*, 506 F.3d 553, 557 (7th Cir. 2007), as have multiple other courts applying North Carolina law.[8] This is not a novel or unsettled issue under North Carolina law, and Plaintiff offers the Court no reason to change its previous rulings.

C. **The Latent Disease Exception Does Not Apply to Plaintiff's Claims**

The latent disease exception does not apply here because, as this Court has already explained, "[t]his exception is 'limited to diseases that develop over long periods of time after multiple exposures to offending substances which are thought to be causative agents' and where it is impossible to identify any particular exposure as the first injury.'" Dkt. 15084 (*Wilson*) at 2-3 (quoting *In re Mentor Corp*, 2016 WL 873854, at *2 (M.D. Ga. March 4, 2016) (cleaned up)). Because claims based on alleged IVC filter complications arise from a single medical device placed in the body, as this Court noted in *Wilson*, "[t]he rationale for the latent disease exception does not apply to claims like Plaintiff's." Dkt. 15084 (*Wilson*) at 2. The Seventh Circuit likewise held in *Klein* that there is no latent injury exception to the North Carolina statute of repose: "the plain language of the statute, its history, and North Carolina case law all support our

---

[8] *See Cramer v Ethicon, Inc.*, 2021 WL 243872 at *4 (W.D.N.C. Jan. 25, 2021) ("courts applying North Carolina law have consistently applied [the] six-year statute of repose in cases where the product in question was first purchased or delivered, as here, before October 1, 2009."); *Ferro v. VolVo Penta of the Americas, LLC*, 2017 WL 3710071, *2 (E.D.N.C. Aug. 28, 2017) (holding that "[t]he 2008 and 2009 purchases [of replacement boat parts] each accrued before October 2009, are subjected to the six-year statute of repose, and are therefore time-barred."); *In re Elk Cross Timbers Decking Mktg.*, 2015 WL 6467730, at *10-11 (D.N.J. Oct. 26, 2016) (rejecting plaintiff's claim accrual argument because the plaintiff had purchased his deck in 2007 and "the statute in effect at the time of his purchase applies.") (applying North Carolina law)). Plaintiffs in all three cases alleged that their injuries occurred and/or that they discovered their claimed product defects after October 1, 2009, but courts in all three cases ruled that the accrual date was irrelevant because the purchase date alone determined which version of the statute of repose applies.

8

belief that no exception was intended [by the legislature]." *Klein v DePuy*, 506 F.3d 553, 557 (7th Cir. 2007); Dkt. 15084 (*Wilson*) at 3.

The other cases cited by Plaintiff are distinguishable on various grounds:

- They did not involve implantable medical devices, *see In re Paraquat*, 2022 WL 451898 (S.D. Ill. Feb. 14, 2022) (repeated chemical exposure from herbicide product allegedly causing Parkinson's disease);

- They involved devices that allegedly caused diseases that developed over time, not discrete, identifiable injuries, *see Bullard v. Dalkon Shield Claimants Trust*, 74 F.3d 531 (4th Cir. 1996) (pelvic inflammatory disease); *Patterson v. McKinley Medical, LLC*, 2011 WL 1260145 (E.D.N.C. Mar. 30, 2011) (chondrolysis from pain pump use); or

- They involved issues of choice of law and the statute of limitations, not the statute of repose, *see In re Dow Corning Corp.*, 778 F.3d 545 (6th Cir. 2015).

In contrast here, Plaintiff's injury is based on a "Celect IVC filter [that] was broken, fractured, bent, migrated" and thus required referral "to a specialist for a partial removal surgery on June 28, 2016." Pl.'s Resp., Dkt. 21286-1 at 7; *see also* Pl.'s Am. Short-Form Compl., Dkt. 21377, ¶ 15 (A)-(B) (additional allegations regarding claimed injuries in amended complaint). Plaintiff's claim thus involves a discrete, diagnosable injury – filter fracture and subsequent partial removal – and not a latent disease that develops over time. This Court's previous decisions in *Amey* and *Wilson* and the Seventh Circuit's decision in *Klein* are on point and controlling, and the Court should follow them.

For the foregoing reasons, the Court should dismiss Plaintiff's case with prejudice.

<table>
<tr><td>Dated:  March 21, 2022</td><td>Respectfully submitted,<br><br>/s/  Jessica Benson Cox<br><br>Jessica Benson Cox, Co-Lead Counsel<br>Andrea Roberts Pierson<br>FAEGRE DRINKER BIDDLE & REATH LLP<br>300 North Meridian Street, Suite 2500<br>Indianapolis, Indiana  46204<br>Telephone:  (317) 237-0300<br>Andrea.Pierson@FaegreDrinker.com<br>Jessica.Cox@FaegreDrinker.com<br><br>James Stephen Bennett, Co-Lead Counsel<br>FAEGRE DRINKER BIDDLE & REATH LLP<br>110 West Berry Street, Suite 2400<br>Fort Wayne, Indiana  46802<br>Telephone:  (260) 424-8000<br>Stephen.Bennett@FaegreDrinker.com<br><br>*Attorneys for Defendants Cook Incorporated, Cook Medical LLC, and William Cook Europe ApS*</td></tr>
</table>

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2022, a copy of the foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT IN PLAINTIFF ROBERT CUNNINGHAM'S CASE PURSUANT TO CMO-28** was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.

/s/ Jessica Benson Cox

10