UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

---

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND                Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION                  MDL No. 2570

---

This Document Relates Only to the Following Cases:

Frazier, Sonya - 1:18-cv-02581

---

## DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT IN PLAINTIFF SONYA FRAZIER'S CASE PURSUANT TO CMO-28

Because Plaintiff's IVC filter was undisputedly purchased before October 1, 2009, Plaintiff's claims are time-barred by North Carolina's six-year statute of repose for the reasons set forth in the Court's prior order in *Wilson* and *Amey* (Dkts. 15084 & 20384). Plaintiff, however, opposes Cook's motion on four grounds: (1) that the classification of her filter as retrievable or permanent constitutes an express warranty that circumvents the statute of repose, (2) that equitable estoppel based on fraudulent concealment precludes application of the statute of repose, (3) that her case falls under a latent disease exception to the statute of repose; and (4) that the 12-year statute of repose applies to her case based on the claimed injury – filter embedment and alleged subsequent perforation[1] – occurring after October 1, 2009. *See* Pl.'s Resp., Dkt. 21342.[2] Notwithstanding Plaintiff's suggestion to the contrary, this Court has in fact

---

[1] Plaintiff alleges a perforation of the IVC diagnosed in 2019 in her Proposed Amended Complaint. *See* Dkt. 21335, ¶ 21. This allegation, however, was not categorized and supported by medical records. The only claim that Plaintiff categorized is a Category 4 embedment claim that it is "too dangerous to remove [the] filter because it is embedded" based on a visit note dated June 15, 2017. *See* Plaintiff's Case Categorization Form and Records filed under seal and attached as **Exhibit A**.

[2] With the Court's permission, Plaintiff filed a six-page response to Cook's motion, *see* Dkts. 21342. Plaintiff also moved to amend the complaint with supplemental allegations (Dkt. 21334-35) and

1

fully considered and rejected all but the second of these arguments in its previous rulings in cases governed by North Carolina law. *See, e.g.,* Dkt. 15084 (*Wilson*); Dkt. 20384 (*Amey*). Plaintiff's equitable estoppel argument based on fraudulent concealment fails because it is not a cognizable exception to the North Carolina statute of repose, and because Plaintiff fails to establish any "affirmative act" concealing the cause of action from Plaintiff that is required for this theory.

A.   **Plaintiff's Express Warranty Arguments Fail for Multiple Reasons**

Plaintiff argues that she has pled a viable express-warranty claim and that this claim circumvents application of the statute of repose based on the permanent use option for the filter. *See* Dkt. 21342 at 1-4 (citing *Christie v. Hartley Constr. Inc.*, 367 N.C. 534, 540 (2014) for the proposition that there is "no public policy reason why the beneficiary of a statue of repose cannot bargain away, or even waive that benefit."). Plaintiff also moved to amend the complaint with supplemental allegations (*see* Dkt. 21334-35), and attached the Celect and Tulip Patient Guide and other Tulip filter brochures in support of those supplemental allegations (Dkt. 21335-1). Plaintiff's express-warranty claim fails for multiple reasons.

1.   **Plaintiff's Express-Warranty Claim Is Subsumed Into her Time-Barred Product Liability Claims**

Plaintiff cannot circumvent the statute of repose by invoking express warranty because the essence of the express-warranty claim sounds in product liability and is subsumed into the product-liability claims that are barred by the statute of repose.[3] *See Lackey v. DePuy*

---

supporting exhibits (Dkt. 21335-1). Cook has separately moved for leave to file this extended reply to fully respond to all issues raised by Plaintiff.

[3] Even assuming *arguendo* that Plaintiff's express-warranty claim were not subsumed into the product liability claims, Plaintiff's general references to a "permanent" filter and reliance on her physician's recommendations are devoid of detail and specific facts to sufficiently plead a claim for express warranty. *See City of High Point, N. Carolina v. Suez Treatment Solutions, Inc.*, 485 F. Supp. 3d 608, 628 (M.D. N.C. 2020) (dismissing express warranty claim because the plaintiff failed "to allege any specifics about the terms or understandings of the express warranty" and was left relying on "threadbare recitals of the

*Orthopaedics, Inc.*, 2011 WL 2791264, at *2 (W.D. N.C. July 14, 2011) (dismissing case on statute of repose grounds and holding that "thorough review of Plaintiff's Complaint reveals that Plaintiff's claims all stem from the purchase of an allegedly defective hip" and that "[a]rtful pleading does not allow Plaintiff to transform product liability claims into claims sounding in negligence and breach of warranty."). Plaintiff's express warranty claims here are similarly centered on the sale of an allegedly defective IVC filter, *see, e.g.,* Master Compl., Dkt. 213, ¶¶ 96-97 (alleging various design and manufacturing "defects" as part of pleading the express warranty claim), and are thus subject to the same statute of repose.

Moreover, Plaintiff's supplemental allegations reinforce this central defect theory, alleging that "Cook knew that the Gunther Tulip was defective and unreasonably safe for its intended purposes, and intentionally and willfully failed to disclose and/or suppressed information regarding the true nature of the risks associated with the Gunther Tulip Filter." Dkt. 21335, ¶ 26; *see also id.*, ¶ 26(c) ("Cook fraudulently and affirmatively concealed the defective and dangerous nature of the Gunther Tulip from Plaintiff.").

### 2.   Plaintiff Has Failed to Identify Any Actionable Express Warranty

Plaintiff's argument that an express warranty defeats the North Carolina statute of repose also fails because Plaintiff has failed to identify any representation by Cook that could legally constitute such an express warranty. In the *Christie* decision, the primary authority on which Plaintiff bases her warranty argument, the plaintiffs presented evidence of a written, detailed 20-year "full" warranty. *See* 766 S.E.2d at 285-86. In contrast here, Plaintiff's argument is entirely based on reading Cook company documents out of context to assert that "the filter can safely

---

elements of a cause of action, supported by mere conclusory statements.") (internal citations omitted). While Cook addresses the documents Plaintiff submitted below, the Court may deny the express warranty claim because it is subsumed by the product liability claim or inadequately pled through Plaintiff's threadbare assertions. *Lackey*, 2011 WL 2791263, at *2; *City of High Point*, 485 F. Supp. 3d at 628.

3

remain in the patient permanently making removal unnecessary, thus providing Plaintiff with a lifetime warranty of safe and effective use." Dkt. 21342 at 1; *see also* Dkt. 21335 & 21335-1 (Plaintiff's proposed supplemental allegations and attached Cook documents).

The phrases referenced by Plaintiff do not and cannot as a matter of law constitute an express warranty. The mere fact that the filter had a possible permanent use option does not constitute an express warranty. No fair and holistic reading of the Cook documents Plaintiff submitted could create a reasonable inference that Cook expressly warranted or guaranteed that the filter would last indefinitely or that complications such as embedment and perforation could not occur. On the contrary, the documents Plaintiff attached expressly warned that retrieval may not be successful and noted that adverse events were possible. Specifically:

- Cook Celect and Tulip Patient Guide (Dkt. 21335-1 at 2-24)[4]: The Patient Guide has a section titled "Some risks of filter implantation" that explains "like any medical procedure, vena cava filter placement does pose some risk" and discusses various adverse events that may occur, including "damage to the vena cava." *Id.* at 21335-1 at 11. The section concludes by explaining "**And sometimes, retrievable filters just can't be removed.** Every patient is different. That's why you and your doctor should weigh the risks and benefits of vena cava placement and retrieval." *Id.* (emphasis added); *see also id.* at 21335-1 at 9 ("It is possible that your filter may be in you for a long period of time. In this case, the filter may not be retrieved.").

- Tulip Product Brochures (Dkt. 21335-1 at 25-40): The remaining documents appear to be an amalgamation of multiple Tulip product brochures. Again, Plaintiff takes the documents out of context because these documents do not claim that retrieval would be successful in every instance. On the contrary, the document states that "Tulip functions well as both a permanent vena cava filter or as a retrievable device" and that the "Tulip Retrieval Registry showed a 94% retrieval access rate through 12 weeks." *Id.* at 28.

The documents referenced in Plaintiff's supplemental allegations discuss filter retrieval as a *possible* option; they do not guarantee that retrieval will be possible in every instance, and they note that chances of successful retrieval decrease over time. *See* Dkts. 21335-1 at 28.

---

[4] Plaintiff's purported reliance on the Celect and Tulip Patient Guide is further undercut because the document was not published until 2013, while Plaintiff received her filter on April 2, 2009, more than three years earlier. *See* Pl.'s Short-Form Compl., ¶ 11.

4

Moreover, the Patient Guide expressly states that "like any medical procedure, vena cava filter placement does pose some risk." *See id.* at 11.  In particular, the list of adverse events includes "[d]amage to the vena cava"—an explanation in ordinary language that appraises the reader of the perforation-based complication alleged by Plaintiff here.

In sum, the very documents on which Plaintiff rests her express warranty claim not only do not warrant that the filter can be retrieved, they make clear that retrieval attempts sometimes fail and that adverse events may occur, such as damage to the vena cava from the filter.  The documents Plaintiff attached to her supplemental allegations thus cannot as a matter of law constitute a warranty or guarantee that filter could be removed without complications at any point if it remained in her body indefinitely.

> 3. **Plaintiff's Express-Warranty Claim Fails Because She Cannot Establish Receipt or Reliance Upon the Alleged Warranty**

To establish an express-warranty claim under North Carolina, a plaintiff must prove "(1) an express warranty as to a fact or promise relating to the goods, (2) which was relied upon by the plaintiff in making her decision to purchase, (3) and that this express warranty was breached by the defendant."  *Harbor Pt. Homeowners Ass'n, Inc. v. DJF Enters.*, 697 S.E.2d 439, 447 (N.C. Ct. App. 2010).

Plaintiff here does not claim that she relied on or even read any of the Cook documents she attached to her amended complaint prior to receiving her filter, nor does she claim to have had any direct contact with Cook or Cook representations regarding the filter.[5]  Instead, Plaintiff alleges she "discussed the filter with her doctor, including the representations and warranties that

---

[5] This is in sharp contrast to *Christie*, where the Court expressly stated that the plaintiffs had read and relied on the defendant having "'fully warranted for twenty years [that its product will] not crack, craze, fatigue, or delaminate from the substrate.'"  766 S.E.2d at 285 (quoting terms of express warranty offered on defendant's website that plaintiffs reviewed and relied on prior to purchase).  As Cook had no direct contact with Plaintiff, *Christie* presented a much different case.

5

the filter is safe and effective as a 'permanent' filter and replied on these misrepresentations and warranties." Pl.'s Resp., Dkt. 21342 at 2.[6] Plaintiff does not claim that this doctor was an employee or agent of Cook, and any representation by the doctor therefore does not and cannot constitute an express warranty made by Cook.

In sum, neither Plaintiff's amended pleading nor the Cook documents she attached to it in support are sufficient to establish (1) the existence of an express warranty, (2) Plaintiff's knowledge or reliance on such an express warranty, or (3) Plaintiff's doctors' knowledge or reliance on such an express warranty. Plaintiff's express warranty claim therefore cannot save her action from the North Carolina statute of repose.[7]

**B.    There Are No Equitable Exceptions to the North Carolina Statute of Repose**

Plaintiff argues that North Carolina recognizes equitable estoppel and/or fraudulent concealment doctrines and that these doctrines preclude application of the statute of repose to her claims. *See* Pl.'s Resp., Dkt. 21342 at 3. Plaintiff is mistaken.[8]

---

[6] Plaintiff cites to *Jones v. BMW of N. Am., LLC*, 2020 WL 5752808, at *16-17 (M.D. N.C. Sept. 25, 2020) for the argument that her allegations are "specific enough" and should be accepted at the pleading stage. Cook distinguished *Jones* from the filter context in its Reply Memorandum in Support of its Renewed Motion for Partial Dismissal of Claims of Fraudulent Concealment, Dkt. 19358 at 62, explaining that the defendant's provision of technical bulletins to automotive dealers *after* the plaintiffs' injuries occurred could not possibly support the proposition that alleged concealment of a defect *prior* to injury is sufficient to toll the statute of limitations.

[7] Even assuming for the sake of argument that Plaintiff could establish a viable claim based on express warranty, the statute of repose would nevertheless bar the remainder of her claims. *See Christie,* 766 S.E.2d at 288 (permitting express warranty claim to advance based on contractual promise but affirming dismissal of all other claims based on North Carolina's construction statute of response).

[8] In addition to the reasons discussed in the text, Plaintiffs' amendments alleging fraudulent concealment fail for the same reasons the Court articulated in its existing Order rejecting Plaintiffs' allegations of fraudulent concealment, *see* Dkt 15907, and that Cook set out again in its Renewed Motion for Partial Dismissal of Claim of Fraudulent Concealment (Dkt. 18314): Plaintiff has failed to plead that Cook committed any affirmative act to prevent her from discovering her cause of action against it, and Plaintiff has failed to plead the circumstances of the alleged fraudulent concealment with particularity.

6

Contrary to Plaintiff's assertions, "substantive rights, such as those created by the statute of repose are not subject to tolling. Accordingly, fraudulent concealment … cannot operate to toll the running of the statute of repose." *Stallings v. Gunter*, 394 S.E.2d 212, 216 (N.C. 1990) (citing Restatement of Law 2d, *Torts* § 899, cmt. g (1979)); *see also Monson v. Paramount Homes, Inc.*, 515 S.E.2d 445, 449 (N.C. Ct. App. 1999) ("While equitable doctrines may toll statutes of limitation, they do not toll substantive rights created by the statute of repose."); *State ex rel. Long v. Petree Stockton, L.L.P.*, 499 S.E.2d 790, 798 (N.C. Ct. App. 1998) ("equitable doctrines do not toll the statute of repose"); *Cacha v Montaco, Inc.*, 554 S.E.2d 388, 392-93 (N.C. Ct. App. 2001) (applying *Monson* and *Long* holdings). North Carolina law on this issue follows the general rule that fraudulent concealment or similar equitable doctrines do not "appl[y] to statutes of repose 'absent express [statutory] language to the contrary.'" *Cortez v. Cook, Inc.*, ___ F.4th___, 2022 WL 611490, at *3 (7th Cir. Mar. 2022) (quoting *Blackford v. Welborn Clinic*, 172 N.E.3d 1219, 1229 (Ind. 2021)).

Plaintiff relies on *Ferro v. VolVo Penta of the Americas, LLC* for the proposition that the "defendant may be estopped from pleading and relying on the defenses of the statute of limitations and repose." 2017 WL 3710071, at *4 (W.D.N.C Aug. 28, 2017) (finding that equitable estoppel did not apply because the truth of the alleged misrepresentations about the alleged defect were known or discoverable by the plaintiff). *Ferro* cites *Trillium Ridge Condo. Ass'n, Inc. v. Trillium Links & Vill., LLC*, 764 S.E. 2d 203, 216 (N.C. Ct. App. 2014) but the court in *Trillium Ridge* only states that a defendant "may be equitable estopped from using the statute of limitations as a sword" without mention of the statute of repose. To the extent the *Ferro* court recognized equitable exceptions to the North Carolina statute of repose, it stands against the weight of North Carolina case law which has categorically rejected such exceptions.

*See Stallings*, 394 S.E.2d at 216; *Monson*, 515 S.E.2d at 449; *Long*, 499 S.E.2d at 798; *Cacha*, 554 S.E.2d at 392-93. Nor is such an exception found anywhere in the text of the North Carolina statute of repose. *See generally* N.C. Gen. Stat. § 1-50(a) (repealed prospectively only).

Moreover, even if equitable tolling were a cognizable exception, Plaintiff would be required to demonstrate "(1) that [she] exercised due diligence to discover [her] cause of action before the limitations period ran; and (2) that the defendant committed an affirmative act of fraudulent concealment to frustrate discovery despite due diligence." *Orsi v. Kirkwood*, 999 F.2d 86, 89 (4th Cir. 1993); *see also Carter v. Bank of Am., N.A.*, 2015 WL 3618536, at *4 (W.D.N.C. June 9, 2015). As explained above, Plaintiff's claim of equitable based on fraudulent concealment is premised on various alleged failures by the Cook Defendants to provide pertinent data to physicians. *See supra* Section A.2 & A.3. None of the supplemental allegations in Plaintiff's amended pleading identify an "affirmative act" on Cook's part that would have frustrated or prevented Plaintiff's discovery of her causation. Nor can Plaintiff make such an allegation, because Cook was in no position to discover the alleged embedment and perforation of Plaintiff's filter before her and to somehow hide the existence of that cause of action from her.

Accordingly, Plaintiff's equitable estoppel and fraudulent concealment arguments must fail because (1) they are not cognizable exceptions to the North Carolina statute of repose, and (2) Plaintiff has failed to identify an "affirmative act" by Cook to prevent her from discovering her cause of action against Cook.

C.   **The Latent Disease Exception Does Not Apply to Plaintiff's Claims**

The latent disease exception does not apply here because, as this Court has already explained, "[t]his exception is 'limited to diseases that develop over long periods of time after multiple exposures to offending substances which are thought to be causative agents' and where

8

it is impossible to identify any particular exposure as the first injury."' Dkt. 15084 (*Wilson*) at 2-3 (quoting *In re Mentor Corp*, 2016 WL 873854, at *2 (M.D. Ga. March 4, 2016) (cleaned up)). Because claims based on alleged IVC filter complications arise from a single medical device placed in the body, as this Court noted in *Wilson,* "[t]he rationale for the latent disease exception does not apply to claims like Plaintiff's." Dkt. 15084 (*Wilson*) at 2. The Seventh Circuit likewise held in *Klein* that there is no latent injury exception to the North Carolina statute of repose: "the plain language of the statute, its history, and North Carolina case law all support our belief that no exception was intended [by the legislature]." *Klein v DePuy*, 506 F.3d 553, 557 (7th Cir. 2007); Dkt. 15084 (*Wilson*) at 3. As Plaintiff notes, *Cramer v. Ethicon, Inc.* was a pelvic mesh case and the court held that urinary tract and bladder infections were discrete injuries, and not latent diseases. Pl.'s Resp., Dkt. 21342 at 5 (discussing 2021 WL 243872, at *9 (W.D.N.C. Jan. 25, 2021). *Cramer* is thus in full agreement with *Klein* and this Court's orders.

The other cases cited by Plaintiff are distinguishable on various grounds:

- They did not involve implantable medical devices, *see In re Paraquat*, 2022 WL 451898 (S.D. Ill. Feb. 14, 2022) (repeated chemical exposure from herbicide product allegedly causing Parkinson's disease);

- They involved devices that allegedly caused diseases that developed over time, not discrete, identifiable injuries, *see Bullard v. Dalkon Shield Claimants Trust*, 74 F.3d 531 (4th Cir. 1996) (pelvic inflammatory disease); *Patterson v. McKinley Medical, LLC*, 2011 WL 1260145 (E.D.N.C. Mar. 30, 2011) (chondrolysis from pain pump use); or

- They involved issues of choice of law and the statute of limitations, not the statute of repose, *see In re Dow Corning Corp.*, 778 F.3d 545 (6th Cir. 2015).

In contrast here, Plaintiff's injury is based on a physician's diagnosis in 2017 that the filter is embedded, *see* Exhibit A, and an alleged perforation diagnosed in 2019 that Plaintiff did not include in her categorization. *See* Pl.'s Resp., Dkt. 21342 at 5; Dkt. 21335, ¶ 21. Plaintiff's claim thus involves discrete, diagnosable injuries – embedment and perforation – and not a latent

9

disease that develops over time. This Court's previous decisions in *Amey* and *Wilson* and the Seventh Circuit's decision in *Klein* are on point and controlling, and the Court should follow them.

### D. The Six-Year Statute of Repose Bars Plaintiff's Claim Under Prior Orders

Plaintiff argues that there is an "unanswered question" of North Carolina law whether the 12-year statute of repose applies to her case because her alleged injury occurred after October 1, 2009.[9] Pl.'s Resp., Dkt. 21342 at 6 (citing *In re Biomet M2a Magnum Hip Implant Prods. Liab. Litig.*, 2019 WL 110892, at *12 (N.D. Ind. 2019)).

There is no such unsettled question of law. This Court has rejected Plaintiff's argument twice before and should do so again here. *See* Dkt. 15084 (*Wilson*) at 2 ("North Carolina courts have held that the enlargement of the repose period to 12 years did not have retroactive effect for claims involving products used prior to that time."); Dkt. 20384 at 2-4 (*Amey*) (same). Moreover, the Seventh Circuit has reached the same conclusion, *see Klein*, 506 F.3d at 557, as have multiple other courts applying North Carolina law. *See* Def.'s Mot., Dkt. 21171 (compiling cases).[10] This is not a novel or unsettled issue under North Carolina law, and Plaintiff offers the Court no viable reason to change its previous rulings or to delay ruling on the motion.

For the foregoing reasons, the Court should dismiss Plaintiff's case with prejudice.

---

[9] As discussed above, Plaintiff's sole categorized injury is a Category 4 embedment claim based on a 2017 medical visit, *see* Exhibit A, and an alleged perforation diagnosis that was not categorized, Pl's Resp., Dkt. 21342 at 6.

[10] *See Cramer*, 2021 WL 243872 ("courts applying North Carolina law have consistently applied [the] six-year statute of repose in cases where the product in question was first purchased or delivered, as here, before October 1, 2009."); *Ferro*, 2017 WL 3710071, at *2 (holding that "[t]he 2008 and 2009 purchases [of replacement boat parts] each accrued before October 2009, are subjected to the six-year statute of repose, and are therefore time-barred."); *In re Elk Cross Timbers Decking Mktg.*, 2015 WL 6467730, at *10-11 (D.N.J. Oct. 26, 2016) (rejecting plaintiff's claim accrual argument because the plaintiff had purchased his deck in 2007 and "the statute in effect at the time of his purchase applies.") (applying North Carolina law)). Plaintiffs in all three cases alleged that their injuries occurred and/or that they discovered their claimed product defects after October 1, 2009, but courts in all three cases ruled that the accrual date was irrelevant because the purchase date alone determined which version of the statute of repose applies.

|  |  |
|---|---|
| | Respectfully submitted, |
| Dated:  March 22, 2022 | /s/ *Jessica Benson Cox* |
| | Jessica Benson Cox, Co-Lead Counsel |
| | Andrea Roberts Pierson |
| | FAEGRE DRINKER BIDDLE & REATH LLP |
| | 300 North Meridian Street, Suite 2500 |
| | Indianapolis, Indiana  46204 |
| | Telephone:  (317) 237-0300 |
| | Andrea.Pierson@FaegreDrinker.com |
| | Jessica.Cox@FaegreDrinker.com |
| | |
| | James Stephen Bennett, Co-Lead Counsel |
| | FAEGRE DRINKER BIDDLE & REATH LLP |
| | 110 West Berry Street, Suite 2400 |
| | Fort Wayne, Indiana  46802 |
| | Telephone:  (260) 424-8000 |
| | Stephen.Bennett@FaegreDrinker.com |
| | |
| | *Attorneys for Defendants Cook Incorporated, Cook Medical LLC, and William Cook Europe ApS* |

## CERTIFICATE OF SERVICE

I hereby certify that on March 22, 2022, a copy of the foregoing **DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT IN PLAINTIFF SONYA FRAZIER'S CASE PURSUANT TO CMO-28** was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.

/s/ *Jessica Benson Cox*

11