UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

This Document Relates Only to the Following Case:

Pinder, Sherlyn, 1:18-cv-01635

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT IN
PLAINTIFF SHERLYN PINDER'S CASE PURSUANT TO CMO-28**

The Court should dismiss Plaintiff's cause of action in its entirety. Plaintiff's undisputed knowledge in 2013 of the injury she now claims—a failed retrieval[1]—negates her discovery rule and fraudulent concealment arguments for the same reasons set forth in the Court's order in *Donchez*. Moreover, Plaintiff's express warranty claim fails for multiple reasons.

A.     **Pennsylvania's Discovery Rule Does Not Save Plaintiff's Claims**

Plaintiff's case is time-barred under Pennsylvania law because she commenced this action more than two years after her failed filter retrieval. This Court has on two prior occasions held that a failed retrieval attempt triggers the statute of limitations under Pennsylvania law, rejecting the same discovery rule and fraudulent concealment argument raised by Plaintiff here. *See* Dkt. 19408 (*Lehotsky*) ("But Plaintiff was aware in March 2006 that his IVC filter could not be removed because it was 'firmly attached to his IVC. And the failed retrieval is the exact injury he claims he suffered."); 18911 (*Donchez*) (granting judgment on the pleadings under both Pennsylvania and Indiana law in a case involving failed retrieval of a fractured filter).[2]

Here, Plaintiff necessarily knew, or in the exercise of reasonable diligence should have known, of the *only* injury she now claims—a failed filter retrieval—and the injury's causal

---

[1] Notably, the Category 5 failed retrieval attempt is the only injury Plaintiff categorized. *See* Dkt. 21174. Plaintiff's Response alleges abdominal pain, but this was not part of Plaintiff's categorization and is outside of the materials incorporated into the pleadings for this motion. In any event, the only records Plaintiff submitted to Cook showing abdominal pain were records dated *before* Plaintiff's failed retrieval procedure.

[2] Under Pennsylvania's discovery rule, a claim accrues when a plaintiff learns he or she suffered injuries and that such injuries share some causal connection to the medical device at issue. *Kennedy v. Ethicon, Inc.*, 2020 WL 4050459, at *15 (E.D. Pa. July 20, 2020). Commencement of the limitations period does not require "notice of the full extent of the injury, the fact of actual negligence, or precise cause." *Nicolaou v. Martin*, 195 A.3d 880, 892 (Pa. 2018). The cases Plaintiff cites in her Response indicate that the rule requires—and only applies—where a plaintiff conducts reasonable diligence in investigating the possibility of the causal connection. *See* Pl.'s Resp., Dkt. 21341 at 3 (citing *Simon v. Wyeth Pharmaceuticals, Inc.*, 989 A.2d 356, 365 (Pa. Super. Ct. 2009) (noting that plaintiff must prove "he acted with reasonable diligence in determining the fact and cause of his injury"). Thus, "[t]he failure to make inquiry when information is available is failure to exercise reasonable diligence as a matter of law." *See Ingenito v. AC & S, Inc.*, 633 A.2d 1172, 1175 (Pa. Super. Ct. 1993).

relationship to the filter at the time of the failed filter retrieval. *See* Exhibit A, Dkt. 21174 (categorizing the case only in Category 5 and describing the claim as "attempted removal")[3]; *Hartey v. Ethicon, Inc.*, 2006 WL 724554, at *3 (E.D. Pa. Mar. 20, 2006) (holding that Plaintiff's claims were time-barred where she knew she had to have an additional procedure which was "sufficient to 'awake inquiry and direct diligence'").

Plaintiff attempts to avoid this result by arguing that the "initial abandoned removal was never described as an injury to Plaintiff"[4] and that she "was not put on notice that the filter was causing harm or her abdominal pain until she saw an advertisement providing information regarding injuries associated with the filter on or about June 2016." Dkt. 21341 at 2-3.[5] But this argument that the statute did not begin to run at the time of her failed retrieval because her doctors did not tell her she had been "harmed," Dkt. 21341 at 2-3, ignores Plaintiff's undisputed actual knowledge of the failed retrieval. Plaintiff does not dispute that she knew in 2013 that her doctor had attempted to retrieve her filter and had been unable to do so. But this "attempted retrieval" is **the exact and only injury** on which Plaintiff bases her claims. *See* Dkt. 21174. Under the circumstances here, no doctor had to tell her that she was "being harmed" or that she had suffered

---

[3] Plaintiff's attempt to downplay Cook's reference to Plaintiff's Categorization Form is unpersuasive. *See* Dkt. 21341, n.2. The Categorization Form is the very document on which Plaintiff relies for her claim of injury. Moreover, Category 5 provides space for Plaintiff to further describe the claimed injury. *See* Dkt. 21174 at ¶ 5. The only additional text Plaintiff provided to describe her alleged injury was "attempted removal." *Id.*

[4] While categorization records are considered part of the pleadings in this MDL, the exhibits attached to Plaintiff's Response were not submitted with her categorization form, and the documents are thus outside the pleadings. The Court may convert this motion to a motion for summary judgment, if necessary. *See* Fed. R. Civ. 12(d).

[5] With the Court's permission, Plaintiff filed a 6-page response to Cook's motion, *see* Dkt. 21341, and also filed an amended complaint (Dkt. 21313-1) and exhibits (Dkt. 21316) in support of her Response. Cook consented to Plaintiff filing a six-page Response and did not oppose Plaintiff's motion for leave to amend her complaint; Plaintiff did not oppose Cook moving for leave to file a reply of up to ten pages. Cook has separately moved for leave to file this expanded eight-page reply.

2

the "injury" she now claims; she undisputedly knew she had experienced that injury, the attempted and failed retrieval.

Plaintiff errs in relying on a Pennsylvania case that suggests that the statute of limitations does not begin to run until a doctor actually tells the plaintiff she has been injured by a particular product. That case involved a situation in which a plaintiff had been actually misled by a doctor's earlier attribution of the claimed injury to a cause other than the defendant's product or conduct. *See, e.g.,* Dkt. 21341 at 2 (citing *McLaughlin v. Bayer Essure, Inc.*, No. 14-7316, 2019 WL 1382710, at *6 (E.D. Pa. Mar. 27, 2019) (finding question of fact on application of discovery rule where the plaintiff's doctors had repeatedly told her that her injuries resulted from cysts, not from the defendant's product)). Here, Plaintiff does not argue that anyone ever told her that the failed removal of her IVC filter—the precise injury she now claims, *see* Dkt. 21174 at ¶ 5—resulted from anything other than her IVC filter. Nor can she because a failed <u>filter removal</u> is inherently linked to the <u>filter</u> as a potential cause.

Further, Plaintiff's reliance on *Simon v Wyeth Pharmaceuticals*—a latent disease case—is misplaced. *See* Dkt. 21341 at 2 (citing 989 A.2d 356 (Pa. Super. Ct. 2009)). In *Simon*, the court noted the appellant "had no reason even to suspect that there was a link between her use of [the drug] and [breast cancer]..." 989 A.2d at 367. The court applied the discovery rule because, the link between the hormone therapy medication and breast cancer was not known to plaintiff or her doctors until a scientific study become available later. *Id*. at 366-68. The study linked the medication at issue to increased risk of cancer, a latent disease that takes time to develop. *See id*. at 362-363. In contrast, a failed retrieval attempt—the event Plaintiff alleges *was the injury* in her case—is a discrete event. The fact the removal procedure was unsuccessful was immediately

3

appreciable and inherently linked to the filter as a potential cause, as explained above. Accordingly, the discovery rule does not apply to Plaintiff's claims here.

Viewed another way, Plaintiff faces an insoluble dilemma: If Plaintiff's 2013 failed retrieval *was* an injury, as her pleadings assert, her claims based on that "injury" are barred by the statute of limitations. *See Nicolaou*, 195 A.3d at 893. But if her failed retrieval was *not* an injury because physicians "recommended" that it "remain as a permanent filter," Dkt. 21174, as she suggests in her Response, Plaintiff has no compensable injury and, thus, no claim.

As one of the cases on which Plaintiff herself relies holds, "[i]n cases involving medical devices, the question regarding cause under Pennsylvania law is *whether a plaintiff knows or has reason to know that the device caused her injury*, not whether plaintiff has actual or constructive knowledge as to precisely how or why her injury occurred." *McLaughlin v. Bayer Essure, Inc.*, No. 14-7316, 2019 WL 1382710, at *6 (E.D. Pa. Mar. 27, 2019) (collecting Pennsylvania cases) (emphasis added). Plaintiff does not and cannot deny that she knew in 2013 that "the device"—her IVC filter—caused the "injury" she claims—the failed retrieval of her IVC filter. The discovery rule therefore does not save her claims from the statute of limitations.

**B.     Plaintiff's Fraudulent Concealment Argument is Unavailing**

Given the undisputed facts set out above, the fraudulent concealment allegations in Plaintiff's amended complaint do not save her case, even assuming she had properly pled them.[6] *See* Dkt. 21316 (Plaintiff's supplemental allegations). The failed retrieval attempt provided enough information to Plaintiff regarding the potential existence of a cause of action ***independent***

---

[6] Plaintiff's new allegations of fraudulent concealment do not cure the pleading defects the Court identified in its February 22, 2021 order. *See* Dkt. 15907. Plaintiff does not allege that Cook knew of and affirmatively concealed *Plaintiff's* cause of action, as the Court required, and Plaintiff's stated circumstances of the alleged fraud—that is, the who, what, when, where, and how—do not relate to the particularity required by Rule 9(b). *See id.* at 6-9.

4

of any alleged fraudulent concealment on Cook's part. *See* Entry on the Cook Defs.' Mot. For Partial Dismissal or Partial Summary Judgment on Claims for Fraudulent Concealment, Dkt. 15907 (explaining that "fraudulent concealment requires an allegation that the defendant fraudulently concealed information from the plaintiff about the existence of the plaintiff's cause of action").

The Court rejected this same fraudulent concealment argument in *Donchez* under both Pennsylvania and Indiana law. *See* Dkt. 18911 (*Donchez*) at 3 (quoting *Rice v. Diocese of Altoona-Johnstown*, 212 A.3d 1055, 1068 (Pa. 2019) ("A defendant must have committed an affirmative, independent act of concealment upon which the plaintiff justifiably relied for the doctrine of fraudulent concealment to apply.") (reversed on other grounds, 255 A.3d 237 (Pa. 2021)). Here, Plaintiff's new allegations that Cook was "silent" in its alleged concealments (*see* Dkt. 21316 at ¶ 10) or otherwise failed to disclose pertinent information to physicians does not constitute fraudulent concealment claims in Pennsylvania as a matter of law. *Rice*, 212 A.3d at 1068; *see also Bootay v. KBR, Inc.*, 2010 WL 1257716, at *6 (finding no fraudulent concealment where defendant allegedly withheld information about adverse effects).

C.   **Plaintiff's Express Warranty Claim Fails for Multiple Reasons[7]**

Plaintiff argues that she has pled a viable express-warranty claim and that this claim survives Cook's motion based on the permanent use option for the filter. *See* Dkt. 21341 at 5-6; *see also* Dkt. 21316 (Plaintiff's supplemental allegations); Dkt. 21316-1 (Cook documents

---

[7] Plaintiff's Response does not deny that Cook is entitled to the dismissal of her implied-warranty claims, and the court should therefore dismiss those claims. *See, e.g.*, Dkt. 19639 (dismissing Plaintiff Boone's non-tort-based claims because his "failure to respond to the substance of Cook's arguments is effectively a concession that these points are well taken"); *see also Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (holding that a failure to respond to an argument results in waiver).

attached to Plaintiff's supplemental allegations). Plaintiff's express-warranty claim fails for multiple reasons.

### 1. Plaintiff's Express-Warranty Claim Is Time-Barred

Plaintiff's express-warranty is time-barred by the four-year statute of limitations, a period that is measured from the date of delivery with no discovery rule. *See* 42 Pa. Cons. Stat. § 5525; 13 Pa. Cons. Stat. § 2725 ("A breach of warranty occurs when tender of delivery is made."); *McCracken v. Ford Motor Co.*, 588 F. Supp. 2d 635, 642 (E.D. Pa. 2008). Plaintiff, however, filed this action over five years after receiving her filter. *See* Dkt. 21773 at ¶ 10.

### 2. Plaintiff Has Failed to Identify Any Actionable Express Warranty

Plaintiff's references to Cook statements that a "filter can safely remain in the patient permanently making removal unnecessary" do not and cannot as a matter of law constitute an express warranty. The mere fact that the filter had a possible permanent use option does not constitute an express warranty. No fair and holistic reading of the Cook documents Plaintiff attached to her supplemental pleading could create a reasonable inference that the Cook Defendants expressly warranted or guaranteed that the filter would last indefinitely or that complications could not occur. On the contrary, the documents Plaintiff attached expressly warned that retrieval may not be successful and noted that adverse events were possible. Specifically:

- Cook Celect and Tulip Patient Guide (Dkt. 21316-1 at 2-24)[8]: The Patient Guide has a section titled "Some risks of filter implantation" that explains "like any medical procedure, vena cava filter placement does pose some risk" and discusses various adverse events that may occur. *Id.* at 21316-1 at 11. The section concludes by explaining "**And sometimes, retrievable filters just can't be removed.** Every patient is different. That's why you and your doctor should weigh the risks and benefits of vena cava placement and retrieval." *Id.* (emphasis added); *see also id.* at 21316-1 at 9 ("It is possible that your filter may be in you for a long period of time. In this case, the filter may not be retrieved.").

---

[8] Plaintiff's purported reliance on the Celect and Tulip Patient Guide is further undercut because the document was not published until 2013, while Plaintiff received her filter more than four years earlier, on June 4, 2012. *See* Pl.'s Short-Form Compl., ¶ 11.

- Tulip Product Brochures (Dkt. 21316-1 at 26-40): The remaining documents appear to be an amalgamation of multiple Tulip product brochures. Again, Plaintiff quotes the documents out of context, and none of them warrants that retrieval would be successful in every instance. On the contrary, the document states that "the Tulip functions well as both a permanent vena cava filter or as a retrievable device" and that the "Tulip Retrieval Registry showed a 94% retrieval success rate through 12 weeks." *Id.* at 28.

The documents referenced in Plaintiff's supplemental allegations reference discuss filter retrieval as a *possible* option; they do not guarantee that retrieval will be possible in every instance, and they note that chances of successful retrieval decrease over time. *See* Dkt. 21316-1 at 28. Moreover, the Patient Guide expressly states that "like any medical procedure, vena cava filter placement does pose some risk." *See id*. at 11. In particular, following the list of adverse events, the Patient Guide reminds the reader that "sometimes, retrievable filters just can't be removed." *Id*.

In sum, the very documents on which Plaintiff rests her express warranty claim not only do not warrant that the filter can be retrieved, they make clear that retrieval attempts sometimes fail and that adverse events may occur. The documents Plaintiff attached thus cannot as a matter of law constitute a warranty or guarantee that filter could be removed without complications at any point if it remained in her body indefinitely.

> **3. Plaintiff's Express-Warranty Claim Fails Because She Cannot Establish Receipt or Reliance Upon the Alleged Warranty**

Finally, as the Court noted in applying the Texas statute of repose (Dkt. 4918 at 13-15), Plaintiffs' Master Complaint fails to plead an adequate express warranty claim, and Plaintiff's failure to establish how she received and relied on the alleged express warranty is fatal to her claim under Pennsylvania law for similar reasons. *See Runner v. C.R. Bard*, 108 F. Supp. 3d 261, 267 (E.D. Pa. 2015) (holding that plaintiff "failed to identify any affirmative statements by either defendant, or if there were any way in which such statements were a material part of the basis of

7

the bargain, or in fact failed to identify anything he relied on that made him decide on the purchase and use of the mesh product."); *Horsmon v. Zimmer Holdings, Inc.*, 2011 WL 5509420, at *4 (W.D. Pa. Nov. 10, 2011) (explaining that among other things Plaintiff's "factual allegations do not indicate whether her alleged reliance was part of her decision to purchase Defendants' products.").

Plaintiff here does not claim that she relied on or even read any of the Cook documents attached to her amended complaint prior to receiving her filter, nor does she claim to have had any direct contact with Cook or Cook representations regarding the filter. Instead, Plaintiff only claims that her "physician would not have recommended the filter remain implanted permanently rather than removing it and Plaintiff would not have agreed to permanent placement" if information was available that Cook allegedly concealed. Dkt. 21316 at ¶ 63. That is not a claim of express warranty, but of a failure to warn. Moreover, Plaintiff does not claim that her implanting physician was an employee or agent of Cook, and any representation by the doctor therefore does not and cannot constitute an express warranty made by Cook. Finally, such vague claims of reliance are insufficient under Pennsylvania law. *See e.g., Runner*, 108 F. Supp. at 267 (dismissing express warranty claim because the plaintiff "failed to identify anything *he* relied on that made him decide on the purchase and use of the mush product. Plaintiff's complaint makes generalized averments that fail to link the defendants' representations to his acts.").

In sum, neither Plaintiff's amended pleading or the Cook documents attached to the pleading are sufficient to establish (1) the existence of an express warranty, (2) Plaintiff's knowledge or reliance on such an express warranty, or (3) Plaintiff's doctors' knowledge or reliance on such an express warranty. Plaintiff's express warranty claim fails as a matter of law.

For the foregoing reasons, the Court should dismiss Plaintiff's case with prejudice.

Respectfully submitted,

Dated:  March 25, 2022

/s/ *Jessica Benson Cox*
Jessica Benson Cox, Co-Lead Counsel
Andrea Roberts Pierson,
FAEGRE DRINKER BIDDLE & REATH LLP
300 North Meridian Street, Suite 2500
Indianapolis, Indiana 46204
Telephone: (317) 237-0300
Andrea.Pierson@FaegreDrinker.com
Jessica.Cox@FaegreDrinker.com

James Stephen Bennett, Co-Lead Counsel
FAEGRE DRINKER BIDDLE & REATH LLP
110 West Berry Street, Suite 2400
Fort Wayne, Indiana 46802
Telephone: (260) 424-8000
Stephen.Bennett@FaegreDrinker.com

*Attorneys for Defendants Cook Incorporated, Cook Medical LLC, and William Cook Europe ApS*

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2022, a copy of the foregoing **COOK DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT IN PLAINTIFF SHERLYN PINDER'S CASE PURSUANT TO CMO-28** was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.

/s/ *Jessica Benson Cox*