**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

_____

| | |
|---|---|
| In Re: COOK MEDICAL, INC.,<br>IVC FILTERS MARKETING, SALES<br>PRACTICES AND PRODUCTS<br>LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

_____

This Document Relates to the Following Actions only:

    Julie Wilson
    1:17-cv-3050-RLY-TAB

_____

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS**
**OR, IN THE ALTERNATIVE, IN SUPPORT OF DISMISSAL**
**OF ALL CURTIS FIRM CATEGORY 6 CASES**

_____

      Defendants Cook Incorporated, Cook Medical LLC f/k/a Cook Medical Incorporated, and

William Cook Europe ApS urge the Court to deny Plaintiff's Motion to Dismiss With Prejudice,

Dkt. 21723. Plaintiff has offered no grounds for such a dismissal, much less an adequate ground,

and the motion is simply another example of Plaintiffs' attempts to evade any testing of the

merits of the thousands of "negative value" and meritless claims they have brought.

> **When a plaintiff files any court case, … sitting back is no option.** He must be
> prepared to undergo the costs, psychological, economic and otherwise, that
> litigation entails. That the plaintiff becomes one of a mass of thousands pursuing
> particular defendants lends urgency to this reality. **Courts must be exceedingly**
> **wary of mass litigation in which plaintiffs are unwilling to move their cases**
> **to trial. Any individual case may be selected as a bellwether, and no plaintiff**
> **has the right to avoid the obligation to proceed with his own suit, if so**
> **selected.**

_In re FEMA Trailer Formaldehyde Prods. Liab. Litig._, 628 F.3d 157, 163 (5th Cir. 2010)

(_emphasis added_).

1

Plaintiff Julie Wilson and her counsel, the Curtis Law Group, filed the current action against the Cook Defendants in September 2017, over five years ago.  In July of last year, the Court designated her case as one of three possible bellwether trials. *See* July 29, 2021 Hearing Tr. at 42:21-24.  In November of 2021, the Court selected her case as one of two ***actual*** bellwether trials.  Dkt. 20373.  Now, months later, as Cook pursues its discovery efforts and trial preparation, Plaintiff has moved the Court to dismiss her case.  *See* Dkt. 21723.  The Court should deny Plaintiff's motion.

Plaintiff's motion offers no explanation for her request and cites no legal or factual grounds for dismissal.  Although her motion requests dismissal "[f]or the reasons stated in Plaintiff's brief filed simultaneously herewith," Dkt. 21723 at 1, Plaintiff in fact filed no supporting brief with her motion, and Plaintiff's counsel has confirmed that no such brief exists.[1]

Cook urges the Court to deny Plaintiff's motion and to put an end once and for all to the practice of serial filing of no-injury/product-in-place cases: a "park-and-ride" strategy in which Plaintiffs and their attorneys file cases they are unwilling to try but for which they still expect to receive payment in settlement.  ***More than two thirds of the cases filed by Plaintiff Wilson's attorneys, the Curtis Law Group, have been brought by Plaintiffs who admitted in their self-categorizations that they had suffered no symptomatic injuries at all.***  Many of those cases, including 71 cases that alleged nothing more than Category 1 (Successful First Removal Without Complication or Physical Injury Cases) or Category 2 (Cases Alleging Mental Distress and Embedment), have already been dismissed.  However, ***21 pending cases continue to allege only***

---

[1] *See* April 4-5, 2022 Emails Between E. Hasic and J. Gomez, attached as **Exhibit A** (confirming that "There is no brief or attachments to the motion dismiss we filed.  Sorry for the confusion.").

*asymptomatic "injury,"* including 16 cases alleging nothing more than Category 5 failed or complex retrievals.

Cook recognizes a court denying a plaintiff's motion to dismiss her own case with prejudice is unusual, but as the Seventh Circuit has noted, "[d]istrict courts handling complex, multidistrict litigation 'must be given wide latitude with regard to case management' in order to achieve efficiency." *Dzik v. Bayer Corp.*, 846 F.3d 211, 216 (7th Cir. 2017) (quoting *In re Asbestos Prods. Liab. Litig. (No. VI)*, 718 F.3d 236, 243, 246–48 (3rd Cir. 2013)). At the very least, any dismissal must include reimbursement of the attorney's fees and costs Cook has incurred in working up the *Wilson* case since its selection for the bellwether discovery pool.

As the Court will doubtless recognize, this problem is not new. Multiple other Plaintiffs have done just what Plaintiff Wilson is trying to do here: wait until months after their designation for bellwether trials and then abandon their claims with either inadequate justification or no justification at all. *See, e.g.*, Dkts. 13543, 13544, 13587, 13826, 13827. Although the Court eventually dismissed the *Burrage* case, it granted Cook's motion to recover the unnecessary costs incurred in preparing for that abandoned case. *See* Dkts. 14081, 14392.

Plaintiffs clearly have not learned from the Court actions and admonitions in *Burrage* and other earlier dismissals. The Court should not permit the Curtis Law Group and others like it to repeatedly accuse Cook of injuring patients, only to back out when put to their proof. Specifically, the Court should not permit Plaintiff Wilson and her attorney to exit her case unless and until Plaintiff's attorneys commit to dismiss all such cases and to the cessation of filing such cases that do not and cannot pass muster under Rule 11. Absent that commitment, Cook is entitled to its day in court, including the adjudication on the merits of the no-injury cases that Plaintiff Wilson's case represents.

US.137657899.07

In the alternative, should the Court decide to grant Plaintiff's motion and dismiss his case with prejudice, the Court should also dismiss all other Category 5 failed/complex retrieval cases and Category 6 asymptomatic, no-injury cases filed by Curtis Law Group.  The Court should also strongly caution that firm against filing future cases in which a plaintiff has no injury, no symptoms, and no intention of proceeding to trial on the merits.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.      History of the Asymptomatic, No-Injury Cases

Plaintiffs' counsel have claimed since the inception of this litigation that the Plaintiffs had experienced complications and injury from their IVC filters, sometimes including the need for surgical removal.  "Lead Generators" and plaintiffs' attorneys then embarked on a multimedia, multifront advertising campaign to identify IVC filter recipients and to sign them up for lawsuits, regardless of whether individual patients had had any problems with their filters or had experienced any physical symptoms.  *See* Feb. 15, 2018 Hearing Tr. at 29:11-30:18.  For example, an advertisement posted on the National Injury Help website on March 3, 2017, titled "Product in Place Lawsuits an Option for IVC Filter Patients with No Complications," states:

> People who have retrievable IVC filters implanted ***but haven't noticed any symptoms or complications*** may still be eligible for an IVC filter claim. These claims are called Product in Place, or PIP.
> ***
> ***Even if there are no complications***, people with retrievable IVC filters made by the medical device manufacturers C.R. Bard Inc., Cook Medical, or Cordis, may still be able to file a product in place claim.
> ***
> ***If you were implanted with an IVC filter*** made by C.R. Bard Inc., Cook Medical or Cordis, you may be able to file an IVC Lawsuit (https://www.nationalinjuryhelp.com/ivc-filter-lawsuits/).

Dkt. 7412-3 (*emphasis added*).

4

Faced with the significant and growing number of no-injury/product-in-place cases, this Court in October 2018 adopted a screening system that proposed to address directly the question of whether no-injury/product-in-place cases have merit.  *See* Dkt. 9322.  That system, which required Plaintiffs to categorize their claims by injury, resulted in the dismissal of all "Category 1" cases (patients whose filters were removed on the first attempt with no complications, *see* Dkt. 10588) and "Category 2" cases (claims of emotional distress or fear with no evidence of complications, *see e.g.,* Dkt. 11131).  Indeed, the mere discussion of the Court's Screening Order in hearings resulted in the voluntary dismissal of dozens of Category 2 cases even before the Court actually entered the Screening Order.

Nevertheless, Plaintiffs' attorneys have continued to insist that:

> [t]hese ***non-symptomatic injury cases***, ***failed retrieval cases***, irretrievable filter case[s], and anticoagulation cases will need to be tested (through motions to dismiss and for summary judgment) and ***tried*** (most efficiently through multi-plaintiff trials) ***to determine whether they involve valid and compensable injuries***."

*See* Plaintiffs' Response To Cook Defendants' Motion For Screening Order And Bellwether Selection Plan (Dkt. 8591) at 2 (*emphasis added*).  Consistent with both parties' request for exemplar trials from this group of cases, the Court's October 2018 Screening Order provided for three bellwether trials from the Category 5 and 6 asymptomatic cases.  *See* Dkt. 9322 at 4.  To date, Plaintiffs' attorneys' advertising has generated 1,921 cases alleging only Category 5 failed/complex retrieval and/or Category 6 asymptomatic "injury."  A number of these cases have been dismissed through stipulation or motion practice, but 1,338 of them—70 percent— remain pending.

## B.     History of the Bellwether Process and *Wilson*

As noted above, as part of its October 2018 Screening Order, the Court ordered the random selection of a group of Category 5 and 6 cases for a bellwether pool.  *See* Dkt. 9322 at 4.

US.137657899.07

On May 2, 2019, the Court issued CMO-25, which set procedures for the random selection of 24 Category 5 and 6 cases for such trials, including the parties' strikes from that list and the Court's choice of three bellwether cases from the cases remaining.  Dkt. 10599.  The Court randomly selected the bellwether discovery pool – including *Burrage* and *Johnson* – on August 21, 2019.  Dkt. 11062.  At the July 12, 2019 status conference, the PSC and Cook exercised their strikes of potential bellwether cases.  *See* July 12, 2019 Hearing Tr. at 4-20.  Neither side struck the *Burrage* case or the *Johnson* case from the list, and both remained eligible for a bellwether trial selection.  *See id.* at 14.

On August 21, 2019, the Court issued an Order designating *Burrage, Johnson* and *McDermitt* for bellwether trials.  Dkt. 11602 at 2.  *McDermitt* was to be the first trial, but it was dismissed on March 21, 2020 based on Indiana's statute of repose.  Dkt. 13187.

On February 19, 2020, the Court issued its Second Amended CMO-27, addressing discovery and pretrial issues and deadlines for the bellwether cases, and adopting the parties' proposed October 2020 and February 2021 trial dates for *Johnson* and *Burrage*.  Dkt. 12906.

On April 24, 2020, pointing to a statute-of-limitations problem with his case, bellwether Plaintiff James Johnson voluntarily dismissed his claims.  *See* Dkt. 13354; Dkt. 13358.

On June 1, 2020, bellwether Plaintiff Eddie Burrage moved to dismiss his claims without prejudice, claiming he never anticipated that his case would be tried and that his case should be dismissed because it had a "negative value."  Dkt. 13543, 13544.  After learning that Cook intended to object to the dismissal, Plaintiff withdrew his original motion to dismiss without prejudice and moved to dismiss with prejudice.  Dkt. 13586; Dkt. 13587.  The only reason Plaintiff Burrage stated for the renewed request to dismiss was that he "anticipates that the costs of litigation will exceed his anticipated recovery."  Dkt. 13588 at 2.  The Court dismissed the

6

*Burrage* case over Cook's opposition, Dkts. 13714, 13894, but subsequently granted Cook's request for costs.  Dkt. 14081.  Thus, Plaintiffs' and their attorneys' inattention to the legal and financial obstacles to their claims torpedoed the Court's first effort to conduct bellwether trials of Category 5 or 6 cases.

Following these frustrating dismissals, the Court tried again.  On October 26, 2020, the Court entered two orders aimed again at setting bellwether trials in Category 5 and 6 cases while avoiding the legal defects that doomed two of the initial set of bellwethers.  *See* Dkt. 14601, Case Management Order # 28 (Screening for Time-Barred Cases); Dkt. 14602, Third Amended Case Management Order # 27 (Amended Bellwether Plan).  The October 26, 2020 Amended Bellwether Plan set out a plan by which additional cases from Category 5 and 6 would be selected for bellwether trials.  Dkt. 14602 at 5-7.  Plaintiff Wilson did not object.

Under Third Amended Case Management Order # 27, eligible cases were to be randomly selected for inclusion in the bellwether pool on November 12, 2020.  Dkt. 14602 at 5.  That date was pushed back twice to try to ensure that the dismissal of time-barred cases before the pool was selected.  *See* Dkt. 14808 (Fourth Amended Case Management Order # 27 (Nov. 13, 2020)); 15887 (Fifth Amended Case Management Order # 27 (Feb. 18, 2021)).  On February 18, 2021, the Court randomly selected 32 cases to be included in the bellwether discovery case pool.  Dkt. 15886.  Plaintiff Julie Wilson was one of the cases selected.  Dkt. 15886-1 at 15.  She did not object to her inclusion in the bellwether pool.

All bellwether discovery pool plaintiffs were directed to submit updated medical authorizations, updated plaintiff profile sheets, and all medical records in their possession, custody, or control on or before March 2, 2021.  Dkt. 15887 at 6.  Plaintiff Wilson complied and submitted an updated medical authorization that she signed and dated on March 1, 2021,

US.137657899.07

showing her understanding that the Court was considering her case for a bellwether trial.  Over the ensuing months, Cook used the authorization provided by Plaintiff Wilson to supplement and review Plaintiff Wilson's medical records and imaging.  At no time during those months did Plaintiff Wilson object to her potential selection as a bellwether plaintiff.

On July 29, 2021, the parties exercised bellwether strikes.  Neither side struck Plaintiff Wilson's case, and Plaintiff Wilson did not object to her selection or to bellwether trial by this Court.  Dkt. 19516.

The parties then briefed the Court on the remaining bellwether cases, and specifically whether each candidate case was representative.  On November 9, 2021, the Court selected *Wilson* and *Bowen* as the two bellwether cases to be tried, specifying that *Wilson* would be tried first.  Dkt. 20373.

Plaintiff Bowen responded by moving to dismiss her case on November 23, 2021, just two weeks after its selection.  Dkt. 20461, 20462.  The Court granted that motion and dismissed *Bowen* on January 28, 2022.  Dkt. 20958.

In contrast, Plaintiff Wilson made no move to dismiss her case or suggest that it was unsuitable for a bellwether trial.  Only on March 30, 2022 – **more than a year after her case was selected for inclusion in the bellwether discovery pool**, more than a year after she produced updated medical authorizations permitting Cook to begin evaluating her claims, and more than four months after her case was selected for trial – did Plaintiff Wilson finally move to dismiss her case with prejudice.  Dkt. 21723.[2]  Plaintiff Wilson's motion states only that the motion is brought "in the interests of judicial efficiency and to save both sides unnecessary costs

---

[2] As noted above, Plaintiff's one-page Motion To Dismiss, Dkt. 21723, refers to a simultaneously filed brief, but Plaintiff attorney has clarified that Plaintiff did not file and did not intend to file any brief or other attachments to her motion.  *See* Exhibit A.

US.137657899.07

and expense." Dkt. 21723.  The motion offers no explanation of why those same considerations did not apply a year ago or what has changed in the meantime to justify her delay.

## ARGUMENT

This Court first issued a screening order in October 2018 contemplating bellwether trials of Category 5 and 6 cases.  Since then, the Court has selected five cases for bellwether trial, but none has been tried.  The Court dismissed the *McDermitt* case on Cook's motion based on the statute of repose problem, and the Plaintiff in *Johnson* then voluntarily dismissed his claim, citing a statute of limitations problem.   The Court attempted to eliminate this legal barrier to bellwether trials through Case Management Order # 28, which has removed scores of time-barred cases from the MDL.  Nevertheless, the other three bellwether Plaintiffs – *Burrage*, *Bowen*, and now *Wilson* – have sought dismissal of their claims simply because they do not want to try them.

At this point in the MDL, the Court should either compel Category 5 and 6 Plaintiffs to present their claims in bellwether trials and permit Cook to test the legal and factual viability of these "no injury" claims—which compose a significant portion of cases in this MDL—or the Court should dismiss those cases.  When faced with the specter of an impending bellwether trial in one of these non-injury cases, Plaintiff's attorneys have repeatedly dismissed those bellwether Plaintiffs' claims.  Nevertheless, Plaintiffs' attorneys continue to file yet more no-injury cases like *Wilson*.  Counsel for Ms. Wilson and others who file such cases appear to do so under the assumption that they will receive compensation for cases for which there is no merit based on a park-and-ride strategy that avoids adjudication on the merits.  Such a strategy seriously and unfairly burdens the judicial system, including this district.  ***This practice cannot stand.***

US.137657899.07

Until this Court – by order or trial – adjudicates claims like those brought by Plaintiff Wilson, Plaintiffs' attorneys' park-and-ride strategy will continue—there is simply no incentive for them to stop it.  The Cook Defendants ask this Court to put an end to this practice once and for all, or give the Cook Defendants their day in court.

## I.   THE COURT SHOULD DENY PLAINTIFF WILSON'S MOTION TO DISMISS HER CASE WITH PREJUDICE.

Rule 41(a)(2) provides that "an action may be dismissed at the plaintiff's request only by court order, on terms that the Court considers fair." As this language makes clear, Plaintiff Wilson has no right to the dismissal of her case. "[T]he allowance of a motion to dismiss under Rule 41(a)(2) is not a matter of right, but is discretionary with the District Court both as to whether a dismissal shall be allowed as well as to the terms and conditions to be imposed if allowed."  *Adney v. Mississippi Lime Co. of Mo.*, 241 F.2d 43, 45–46 (7th Cir. 1957) (citing *Grivas v. Parmelee Transportation Co.*, 207 F.2d 334 (7th Cir. 1953)) (reversing order of dismissal that trial court had granted based on mistaken understanding that plaintiff had absolute right to dismissal); *see also In re Navistar MaxxForce Engines Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 14-CV-10318, 2018 WL 316369, at *2 (N.D. Ill. Jan. 4, 2018) ("Rule 41(a)(2) grants "broad discretion," … to decide whether to grant a voluntary dismissal and, if so, on what terms and conditions) (citations omitted).

The burden rests on the plaintiff to persuade the court that dismissal is warranted.  *See Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 177 (7th Cir. 1994).  A plaintiff may not use a Rule 41(a)(2) dismissal as an escape hatch when things are going badly; "a motion to voluntarily dismiss under Rule 41(a)(2) should be denied when a plaintiff seeks to circumvent an expected adverse result." *Nesari v Taylor*, 806 F. Supp. 2d 848, 861 (E.D. Va. 2011) (citing *Skinner v. First Am. Bank of Va.*, 1995 WL 507264, at *2 (4th Cir. Aug. 28, 1995)).  For example, a

plaintiff is not entitled to a Rule 41(a)(2) dismissal just to avoid an adverse summary judgment ruling.  *See, e.g., Pace v. Southern Exp. Co.*, 409 F.2d 331, 334 (7th Cir. 1969) (affirming denial of Rule 41(a)(2) motion for dismissal without prejudice and grant of summary judgment in defendant's favor); *Cunningham v. Rapid Response Monitoring Servs, Inc.*, 2018 WL 2189757, at *2 (M.D. Tenn. Apr. 23, 2018) (recommending grant of summary judgment notwithstanding plaintiff's last-minute motion for dismissal without prejudice).

A district court should deny voluntary dismissal if the defendant would suffer "plain legal prejudice" as a result.  Dkt. 13544 at 2 (quoting *Kovalic v. DEC Int'l, Inc.*, 855 F.2d 471, 473 (7th Cir. 1988)).  The "plain legal prejudice" standard considers "[t]he defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and the fact that a motion for summary judgment has been filed by the defendant."  *Federal Deposit Ins. Corp. v. Knostman*, 966 F.2d 1133, 1142 (7th Cir. 1992).  As discussed below, these factors weigh against Plaintiff's motion to dismiss.

Here, Plaintiff offers no sound reason for dismissing this case, with or without prejudice. On the contrary, every conceivable factor weighs heavily in favor of trying this case:

- Plaintiff filed her complaint on September 1, 2017, meaning that her case was pending throughout the first bellwether selection process, and she and her counsel were aware that her case could have been selected for bellwether trial at that time.

- The Court selected the *Wilson* case for trial over four months ago through the second bellwether selection process.  Plaintiff Wilson was aware of her inclusion in the discovery pool more than a year ago, and personally signed a medical authorization over a year ago in the course of the bellwether discovery process. Yet she did not object or move to dismiss her case until now.

- Plaintiff's motion does not suggest that her claims have no legal or factual merit. On the contrary, it implies that she believes they do have merit, and that she is merely moving to dismiss her claims solely because of the expense of pursuing them—the same excuse used in *Burrage*.

11

- Moreover, any implied assertion that this case is not financially worth trying disregards the value of this bellwether trial in setting values for other cases in the MDL (including the other "no injury" cases in Plaintiff's attorney's own inventory), or alternatively in proving to Plaintiffs and their attorneys that such cases have no value and should be dismissed.

- It also ignores the financial and other support for the bellwether trial available through the common fund and the PSC. *See* Dkt. 1246 at 31; *see also id.* at 7 (listing costs of "bellwether cases" as among individual case costs that may be paid through the common fund).

- Plaintiff's attorneys' repeated delays in seeking dismissal, notwithstanding the long eligibility of the case for bellwether treatment and its actual selection for a bellwether trial, obliged Cook to incur substantial costs, including attorney and paralegal time in working up the case and developing Cook's legal, factual, and expert defenses, costs that Plaintiff's motion would have Cook simply throw away. *See Knostman*, 966 F.2d at 1142 (noting factor in evaluating "plain legal prejudice" to defendant is "[t]he defendant's effort and expense of preparation for trial"). In addition, Cook has been required to gather and produce documents and information, at substantial expense, to defend against no-injury cases like *Wilson*.

In sum, Plaintiff has offered no adequate grounds for the requested dismissal, and dismissal would impose plain legal and financial prejudice on Cook. This case represents the exact type of case this Court intended to test through its Bellwether Plan, and Cook already has invested substantial expense in preparing it for trial. Plaintiff's motion also effectively deprives Cook of its day in Court on an issue that is critical to at least 1,338 no-injury/product-in-place cases still pending in this MDL. Cook therefore urges the Court to deny Plaintiff's motion.

Should the Court disagree, Cook urges the Court to grant Plaintiff's dismissal only on terms that will mitigate the damages the dismissal will cause to Cook and the bellwether process, including Plaintiff's reimbursement of the substantial investment Cook has already made in the *Wilson* case.

## II.    THE COURT SHOULD ACT FORCEFULLY TO SAVE ITS BELLWETHER PROCESS.

So what is this motion to dismiss really about? As discussed in the previous section, it cannot be about the costs of trial. It is not about newly discovered facts, or new legal analysis, or

US.137657899.07

any other change in circumstances that undermines Plaintiff's claims.  And it certainly is not about candor to the Court or to Cook; if it were, Plaintiff would not have forced Cook to waste months of time and effort in preparing to try the case.  *See Knostman*, 966 F.2d at 1142 (noting factor in evaluating "plain legal prejudice" to defendant is "[t]he defendant's effort and expense of preparation for trial").

In fact, this motion is yet another attempt to circumvent the bellwether trial process and conceal the fact that the emperor has no clothes.  Plaintiffs' attorneys have recruited and filed cases on behalf of thousands of innocent people who have had IVC filter placements but have suffered no injuries or complications from those filters.  They have used the MDL process to disguise or conceal the gossamer-thin character of these claims, hoping that the relatively few claims involving actual physical injuries will provide enough momentum to carry their no-injury cases through to settlement.  Their strategy is not unique; as one court noted, "the evolution of the MDL process toward providing an alternative dispute resolution forum for global settlements has produced incentives for the filing of cases that otherwise would not be filed if they had to stand on their own merit as a stand-alone action."  *In Re Mentor Corp. Obtape Transobturator Sling Products Liability Litigation*, 2016 WL 4705827, 4:08–MD–2004 (CDL) (Sept. 7, 2016).  The *Mentor* court went on:

> Some lawyers seem to think that their case will be swept into the MDL where a global settlement will be reached, allowing them to obtain a recovery without the individual merit of their case being scrutinized as closely as it would if it proceeded as a separate individual action.  This attitude explains why many cases are filed with little regard for the statute of limitations and with so little pre-filing preparation that counsel apparently has no idea whether or how she will prove causation.

*See id*.  Another MDL court offered a similar lament in considering the necessity of a Lone Pine order:

[G]iven that cases are more likely to result in dismissal once discovery focuses on issues related to causation, ***the Court has reason to believe that spurious or meritless cases are lurking in the some 1,000 cases on the MDL docket.*** As [defendant] points out, more than 50% of the cases set for trial have been dismissed, and some 31% of cases that have been selected for discovery have been dismissed. Plaintiffs' habit of dismissing cases after both parties have expended time and money on case specific discovery demonstrates that this MDL is ripe for a *Lone Pine* order.

*In re Fosamax Products Liability Litigation*, No. 06 MD 1789(JFK), 2012 WL 5877418

At *3 (S.D.N.Y. 2012) (*emphasis added*); *cf. also In re Air Crash Disaster at Stapleton Intern.*

*Airport,,* 720 F. Supp. 1505 (1989) (rejecting use of offensive collateral estoppel by mass tort

plaintiffs who did not join trial on ground that use would encourage plaintiffs to delay

prosecution of their actions and impair the efficiency of the combined litigation).

This Court has given itself the means to avoid this problem and to cure the problem of

meritless cases – its Bellwether Plans.  Instead of cooperating with those Plans, however,

Plaintiff's attorneys have attempted to thwart it.  They elect to cut and run in *Johnson,*

*Burrage, Bowen,* and now *Wilson*, yet they still refuse to dismiss all such claims or

acknowledge their patent lack of merit.  The Court should not permit Plaintiffs' attorneys to

avoid trials on the merits of the Category 5 and 6 cases through serial bellwether dismissals.

The Court should deny Plaintiff's motion.

## <u>CONCLUSION</u>

If Plaintiffs' attorneys believe that Category 5 no-injury cases have sufficient merit to

justify their filing under Rule 11, then the trial of *Wilson* will test the merits of those cases.  If

Plaintiffs' attorneys do ***not*** believe that their Category 5 clients could recover in such a jury trial,

then they should dismiss all such cases, not just the cases where the Court puts them to their

proof.

14

The Cook Defendants therefore urge the Court to deny Plaintiff's motion to dismiss with prejudice and to set *Wilson* for bellwether trial.  In the alternative, should the Court determine that the *Wilson* case should be dismissed, Cook asks the Court to dismiss all of the Curtis Law Group's other Category 5 cases, and to award Cook its fees unnecessarily incurred in connection with *Wilson*.

Dated: April 11, 2022

Respectfully submitted,

*/s/  Andrea Roberts Pierson*
Andrea Roberts Pierson
Jessica Benson Cox
FAEGRE DRINKER BIDDLE & REATH LLP
300 North Meridian Street, Suite 2500
Indianapolis, Indiana  46204
Telephone:  (317) 237-0300
Facsimile:  (317) 237-1000
andrea.pierson@faegredrinker.com
jessica.cox@faegredrinker.com

James Stephen Bennett
FAEGRE DRINKER BIDDLE & REATH LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana  46802
Telephone:  (260) 424-8000
Facsimile:  (260) 460-1700
stephen.bennett@faegredrinker.com

*Attorneys for Defendants Cook Incorporated, Cook Medical LLC f/k/a Cook Medical Incorporated, and William Cook Europe APS*

US.137657899.07

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 11, 2022 a copy of the foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS** was filed electronically.  Parties may access this filing through the Court's electronic records system.


*/s/ Andrea Roberts Pierson*
Andrea Roberts Pierson

16