**IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT
OF INDIANA INDIANAPOLIS DIVISION**

| | |
|---|---|
| IN RE: COOK MEDICAL, INC, IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates to Plaintiff

Sonya Frazier
Civil Case # 1:18-cv-02581-RLY-TAB

**SURREPLY TO COOK'S REPLY TO PLAINTIFF'S RESPONSE TO COOK'S
MOTION TO DISMISS UNDER CMO-28 OF PLAINTIFF'S CLAIMS**

**A. Plaintiff's Breach of Warranty Claims Are Not Subject to the Statute of Repose and Not Subject to Dismissal Under CMO 28.**

Cook's motion under CMO 28 seeks a judgment on the pleadings under Rule 12(c). When a party moves for judgment on the pleadings pursuant to Rule 12(c), the factual allegations of the complaint are taken as true. *Lackey v. Depuy Orthopaedics, Inc.*, 5:10-cv-00030-RLV-DSC, at *2-3 (W.D.N.C. July 14, 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)). And all reasonable inferences must be drawn in favor of the nonmovant. *Wagner v. Teva Pharm. USA, Inc.*, 840 F.3d 355, 358 (7th Cir. 2016). Plaintiff's amended short form complaint sets forth facts that, when taken as true, establish Cook warranted the Gunther Tulip filter as safe and effective as a "permanent filter," and that warranty was breached because the filter is not safe

1

and cannot function as a permanent filter resulting in economic harm to Plaintiff. *See* Amended Short Form Complaint, Dkt. 21335 at 37[1].

Ignoring the legal standard governing the review of its motion, Cook argues the merits of the factual allegations made by Plaintiff. Cook's arguments cannot serve to support its motion because a Rule 12(c) motion is designed to dispose of cases when the material facts are not in dispute; therefore, the court can decide the case on its merits by considering the pleadings along with any materials referenced in or attached to the pleadings. *Williams v. McMahon*, No. 5:16-CT-3255-BO, at *5 (E.D.N.C. Mar. 12, 2018) (citations omitted). Cook's factual arguments only serve to highlight the disputed issues of fact regarding Plaintiff's breach of warranty claims that exist outside the confines of it motion under Rule 12(c). A list of the disputed issues of fact raised by Cook's reply is attached hereto as Exhibit A. Nonetheless, Plaintiff will address Cooks newly minted factual and legal arguments in the context of the pending motion and demonstrate they are wholly without merit and the motion on the pleadings pursuant to CMO 28 should be denied.

1. **Plaintiff's Claims for Breach of Express Warranty are Based on Contract and Not Subsumed into Plaintiff's Product Liability Claims.**

Plaintiff's allegations of breach of express warranty are based on contract—not product liability as incorrectly claimed by Cook. "A warranty, express or implied, is contractual in nature." *Level at 401 LP v. First Co.*, No. 5:20-cv-00085-M, at *5 (E.D.N.C. July 20, 2020) (quoting *Wyatt v. N.C. Equip. Co.*, 117 S.E.2d 21, 24 (1960)). Under North Carolina law, for breach of warranty, a buyer may recover economic damages--the difference between the value of the goods accepted and the value they would have had if they had been as warranted. *Withers v. BMW of N. Am., LLC*, CIVIL ACTION No. 3:20-CV-00034-GCM, at *3 (W.D.N.C. Feb. 12,

---

[1] Plaintiff's motion to amended short form complaint containing updated allegations of fraudulent concealment, breach of express warranty equitable estoppel, and fraud was granted on March 22, 2022 [Dkt. 21644].

2021). Plaintiff's amended short form complaint sets forth her breach of warranty claim in detail identifying the "affirmations" made by Cook that represent warranties under N.C. Stat. 25-2-313 and expressly claims economic damages. Amended Short Form Complaint, Dkt. 21335 at ¶32.

This Court has not addressed well plead claims for breach of express warranty seeking the recovery of economic damages. *See* Dkt. 19303 (finding only that the master complaint and some Plaintiffs' short form complaints failed to adequately allege breach of express warranty). But this Court's sister-court did address this issue in the MDL involving the herbicide Paraquat. *In re Paraquat Prods. Liab. Litig.*, MDL 3004 (S.D. Ill. Feb. 14, 2022). In determining whether various Product Liability Acts ("PLAs"), including North Carolina's, bar the implied warranty claims at issue there the court ruled as follows:

> Nevertheless, Plaintiffs assert their breach of implied warranty claims should not be dismissed because they allege economic losses, and the PLAs at issue do not bar warranty claims for economic losses. **True, the PLAs at issue do not bar contractual claims brought under the UCC where a plaintiff alleges "purely economic loss arising from the failure of the product or service to perform as expected."** *Atkinson v. P & G Clairol, Inc.*, 813 F.Supp.2d 1021, 1025 (N.D. Ind. 2011) (quoting *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 153-54 (Ind. 2005)); *Corvias Mil. Living, LLC v. Ventamatic, Ltd.*, 450 P.3d 797, 804 (Kan. 2019) ("[T]he Legislature has not cast the product liability net so wide as to subsume and extinguish other legally viable causes of action for the recovery of economic losses" including a pure contract claim); *McKee v. Bowers Window & Door Co.*, 64 So.3d 926, 940 (Miss. 2011) (Mississippi Products Liability Act does not abrogate a statutory cause of action for breach of implied warranty); ***City of High Point, N. Carolina v. Suez Treatment Sols. Inc.*, 485 F.Supp.3d 608, 627 (M.D. N.C. 2020) (noting that the PLA does not govern actions for breach of implied warranty seeking to recover economic losses)**; . . .

*Id*. at *26-27 (emphasis added). *See also, City of High Point, N. Carolina v. Suez Treatment Sols. Inc.*, 485 F. Supp. 3d 608, 627 (M.D.N.C. 2020) ("The rationale for this exception is that an action seeking to recover damages for economic loss is not a product liability action governed by the Act.") (citations omitted). Additionally, the complaint in the Paraquat MDL included claims for "actual" and "compensatory" damages which the court found sufficient to include economic

3

damages. *Id.* at *28 ("The Court does not read Plaintiffs' allegations so narrowly; they seek actual or compensatory damages, which encompasses any economic losses suffered.") (citations omitted).[2] Plaintiff here expressly seeks economic damages for her breach of warranty claims. Amended Short Form Complaint, Dkt. 21335 at 32.[3] Therefore, Plaintiff's claims are not subsumed into her product liability claims and may be pursued as separate claims.

Cook fails to address Plaintiff's claims for her economic losses resulting from Cook's breach of express warranty relying solely on *Lackey v. DePuy Orthopaedics, Inc.*, 2011 WL 2791264 (W.D. N.C. July 14, 2011). Cook's reliance is misplaced. The complaint in *Lackey*, attached hereto as Exhibit B, is a bare bones complaint. And while it summarily asserts breach of warranty it fails to identify any express warranty or allege any economic loss and merely concludes with a general prayer for "compensatory" and "punitive" damages. Ex. B at 6. Thus, Lackey failed to properly plead breach of warranty or allege economic loss, or even allege actual damages as in the Paraquat MDL. Indeed, the complaint in *Lackey* merely alleged that Defendants' negligence in designing, manufacturing, fabricating and testing the implant caused his injuries and damages. Ex. B at §§XIV-XVI. Leaving the court but one conclusion—that Plaintiff's claims for negligence and breach of warranty "sound in product liability." *Lackey*, 5:10-cv-00030-RLV-DSC, at *3. Not so here. Plaintiff's breach of express warranty claim is supported by extensive facts demonstrating the existence and breach of the warranty and expressly seeks the recovery of economic damages resulting from the breach. The facts set forth in Plaintiff's amended short form complaint regarding the defects and dangerous nature of the Gunther Tulip filter and Cook's fraudulent

---

[2] "Economic loss includes the loss of the bargain, repair, and replacement cost, loss of profits, and/or goodwill, including diminution in value" the "damages that arise as a result of the failure of the product to perform to the level expected by the buyer, which is the core concern of traditional contract law." *In re Paraquat*, MDL 3004 at *28.

[3] Damages incidental to the breach of warranty may also be recovered. N.C. Gen. Stat. § 25-2-714 ("Buyers damages for breach in regard to accepted goods").

4

concealment of the data and information revealing same are not like those made in *Lackey* but serve to demonstrate Cook's filter is not "safe and effective as a permanent" filter. Coupled with the filter's failure and harm to Plaintiff, represents a breach of warranty by Cook Thus, *Lackey* has no relevance here. And there is no "defect" in Plaintiff's amended pleading as incorrectly alleged by Cook.

### 2. Cook's Warranty That Its Gunther Tulip Filter is "Safe and Effective as a Permanent Filter" Precludes Entry of Judgment on the Pleadings.

Rather than address the issue of the existence of an express warranty under the correct legal standard, Cook improperly argues its interpretation of the statements found in Cook's product brochures and patient guides attached to Plaintiff's amended complaint. Dkt. 21649 at 5. However, Cook fails to provide any facts or legal authority that would support its conclusion that its affirmations in product brochures and patient guidelines that its filter is "safe and effective as a permanent filter" cannot operate as warranties as a matter of law. Tellingly Cook ignores the *Goodling* case cited by Plaintiff (Dkt. 21338-1, at 3) where the court found J&J's descriptions of its pelvic mesh implant as, among other things, "a permanent implant" that "would not need to be removed" found in "Instructions for Use, product pamphlets and commercial documents," constitutes warranties. *See also*, *McLaughlin v. Bayer Essure, Inc.*, No. 16-3733 (Johnson), at *16 (E.D. Pa. Mar. 27, 2019) (a promise of "permanent birth control" is an extended warranty because it "suggest[s] a time frame in which they will be in effect, i.e., permanently.") Similar to if not the same as those found in *Goodling* and *McLaughlin,* Cook's statements that its filter is "safe and effective as a permanent filter" that would not have to be removed were properly relied on by Plaintiff as warranties. Cook's factual arguments otherwise cannot support its motion and cannot be decided in Cook's favor. *Patterson v. McKinley Medical, L.L.C.*, No. 5:09-CV-308-BR, *4 (E.D.N.C. Mar. 30, 2011) ("A motion to dismiss 'tests the sufficiency of a complaint' but 'does

5

not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'") (citations omitted). When the correct legal standard is applied and Plaintiff's factually supported allegations are taken as true, Cook warranted its filter to be "safe and effective as a permanent filter" when it knew it was not and the failure of the filter caused harm to Plaintiff including economic damages precluding judgement on the pleadings under CMO 28.

> 3. **Cook's Warranty that Its Filter Was "Safe and Effective as a Permanent Filter" Was Provided to Plaintiff by Her Doctor Which Is Sufficient to Demonstrate Receipt and Reliance by Plaintiff.**

Cook's claim that Plaintiff's breach of warranty fails because she cannot show "receipt" of or "reliance" on the warranty is based on a misunderstanding and misapplication of North Carolina law. Contractual privity between Cook and Plaintiff is not required; nor is it required that Plaintiff receive the warranty from Cook itself or one of its employees. It is sufficient that the warranty was passed on to Plaintiff by her doctor and she relied on it, in making her decision to have the filter implanted. *Resendez v. C. R. Bard, Inc.*, No. 5:19-cv-299-BO (E.D.N.C. Apr. 19, 2020).

> Plaintiff has sufficiently alleged that defendants misrepresented to the medical and healthcare community, including to her implanting surgeon, that the Bard Ajust was safe and effective for treating stress urinary incontinence and pelvic organ prolapse. And as the MDL court determined, **plaintiff's breach of express warranty claim is not barred for lack of privity under North Carolina law because plaintiff plausibly alleged that she relied on her surgeon's medical judgment, which was formed by defendants' express warranties.**

*Id.* at *3 (citations omitted); *see also*, *Justus v. Ethicon*, 2016 WL 7404712, at *5 (S.D.W.Va December 21, 2016) ("North Carolina law provides that a plaintiff need not prove contractual privity for her express warranty claim to survive… Even if Ms. Justus relied only on Dr. Howden's medical judgment in deciding to have the Prolift implanted, a reasonable juror could find that Ms. Justus relied on the express warranties of Ethicon as they were provided to Dr. Howden, which

6

formed the basis for Dr. Howden's medical judgment."). Nor is it required that Plaintiff receive the warranty in document form. *Alberti v. Manufactured Homes*, *Inc.*, 329 N.C. 727, (1991).

> In Kinlaw, we concluded that the buyer of goods from a retailer could recover against the manufacturer for breach of a written manufacturer's warranty directed to the ultimate consumer. **We now conclude that the same result should follow where a manufacturer's oral representations made directly to a retailer are intended to be communicated to remote buyers to induce them to buy a product**.

*Id*. at 236-37 (emphasis added); *see also*, *Brown v. Bos. Sci. Corp.*, 2015 WL 1956346, at *6 (S.D.W.Va. Apr. 29, 2015) ("BSC argues that because Ms. Brown herself did not receive any materials from BSC, she could not have relied on any statement regarding the Obtryx or the Uphold. . ..North Carolina law, however, provides that Ms. Brown need not prove contractual privity for her express warranty claim to survive.")[4] Cook does not dispute that Plaintiff "discussed the filter with her doctor, including the representations and warranties that the filter is safe and effective as a permanent filter and relied on these misrepresentations and warranties." Dkt. 21469 at 5-6. Combined with the alleged facts showing Cook's breach these allegations are sufficient to plead a "plausible" claim for breach of express warranty precluding judgment on the pleadings under CMO 28.

B. **It is Settled Law in North Carolina That A Party May Be Estopped From Asserting the Statute of Repose Based For Equitable Reasons.**

Cook's claim that "there are no equitable exceptions" to the statute of repose in North Carolina is incorrect. That equitable estoppel may be used to preclude a defendant from asserting the statue of repose in North Carolina is well settled. *Wood v. BD&A Construction, L.L.C.*, 166

---

[4] *See also Christie v. Hartley Const., Inc.*, 367 N.C. 534, 535, 766 S.E.2d 283, 285 (2014) where Plaintiffs relied on advertising from the GrailCoat website--"… relying on the warranty provisions stated on its website, plaintiffs elected to use SuperFlex."

N.C. App. 216, 220 (N.C. Ct. App. 2004) ("Equitable estoppel may also defeat a defendant's statute of repose defense") quoting *One North McDowell Assn. v. McDowell Development Co.*, 98 N.C. App. 125, 389 S.E.2d 834, *disc. review denied*, 327 N.C. 432, 395 S.E.2d 686 (1990)."); *Robinson v. Bridgestone,* 703 S.E.2d 883, 15 (N.C. Ct. App. 2011) ) ("Equitable estoppel may also defeat a defendant's statute of repose defense") quoting *Bryant v. Adams* , 116 N.C. App. 448, 448 S.E.2d 832 (1994), *disc. review denied* , 339 N.C. 736, 454 S.E.2d 647 (1995), *Doe v. Catawba Coll.*, 796 S.E.2d 822 (N.C. Ct. App. 2017). "The doctrine of estoppel by conduct rests upon principles of equity and is designed to aid the law in the administration of justice by precluding a party from asserting legal rights which in equity and good conscience he should not be allowed to assert." *Hawkins v. Finance Corp.*, 238 N.C. 174 (N.C. 1953). Thus, the *Ferro v. Volvo Penta* case cited and relied on by Plaintiff in her response brief (Dkt.21338 at 3) for the proposition that equitable estoppel based on a defendant's fraudulent conduct may preclude a defendant from later using the statute of repose "as a sword" is not an outlier that "stands against the great weight of North Carolina case law" as incorrectly alleged by Cook.

Cook's myopic focus on "tolling" of statute of limitations misses the mark. Cook fails to understand that there is a difference between the doctrine of tolling and the doctrine of equitable estoppel. See *Aikens v. Ingram*, 524 F. App'x 873, 16 (4th Cir. 2013) ("Importantly, however, equitable estoppel is not necessarily the same as equitable tolling."). Plaintiff does not seek to toll the statute of repose but to preclude Cook from asserting it as a defense altogether under the doctrine of equitable estoppel. And Cook's claim that Plaintiff must "demonstrate" her "diligence" and an "act of concealment" (Dkt. 21649 at 8) is mistaken. Plaintiff's equitable estoppel claim is based on Cook's fraudulent conduct, which has been properly pled by Plaintiff, and demonstrates that Cook acted to conceal material data and information from Plaintiff and her

doctor that showed the filter is not safe and effective as a permanent filter which Plaintiff relied on prior to deciding to have the filter implanted. *See e.g.* Dkt. 21335 at ¶1-22. Second, these allegations must be taken as true and construed in Plaintiff's favor. Plaintiff is not required to "demonstrate" or prove the factual allegations in her pleadings for the present motion. Third, diligence is not an element of equitable estoppel which rests on Cook's inequitable conduct—not Plaintiff's. Diligence may be relevant to equitable tolling of a statute of limitations but not here. Thus, the cases cited by Cook relating to the tolling of the statute of limitations in a summary judgment setting are not relevant to Plaintiff's claims or applicable to the pending motion. Finally, Plaintiff's diligence in discovering her injury or cause of action is not an element of Plaintiff's claim of equitable estoppel based on Cook's fraudulent conduct. Moreover, Plaintiff did not have access to the data demonstrating Cook's fraudulent conduct and Cook continues to conceal it from the public and medical community today. *See e.g.* exhibits attached to Dkt. 18900 (documents supporting the fraudulent concealment claim marked confidential and AEO under the protective order).

    **C.  Cook Misconstrues the Latent Disease Exception Under North Carolina Law**

Cook's reliance on and statement that *Klein* is controlling law is misguided. The Seventh Circuit abrogated its holding in *Klein* in *Knauf Insulation, Inc. v. S. Brands, Inc.,* 820 F.3d 904 (7th Cir. 2016). The *Knauf* court did not mince words finding that the Supreme Court decision in *Menominiee* superseded the holding in *Klein* that a statue of repose serves as an "unyielding and absolute barrier to a cause of action" regardless of when it accrues. *Id*. at 909. Thus, *Klein* does not operate to bar the latent disease exception, is not good law and not binding on this Court.[5]

---

[5] Furthermore, *Cramer and Klein* are not in full agreement as Cook incorrectly states. In *Klein* the court [incorrectly] held that there was no disease exception to the statute of repose. *Klein v. DePuy, Inc.* 506 F.3d 553, 557-59 (7th Cir. 2007). While the court in *Cramer* acknowledged the Fourth Circuit [correctly] followed the reasoning of *Wilder* to

9

Further, Cook's arguments ignore the *Bullard* and *Patterson* cases where North Carolina courts held that the "latent disease" exception applies to medical devices.[6] The "signs and symptoms" of an embedded, perforated, migrated, or fractured filter are not easily recognized or diagnosed in real time and occur over time. Additionally, the symptoms are often associated with another disease or ailment unrelated to the filter. Similar to the diseases in *Bullard* and *Patterson* neither the cause of nor the symptoms related to Plaintiff's injury have a definitive date of manifestation. Plaintiff had abdominal pain consistently which can be attributed to many different diseases or ailments unlike the symptoms related to the injuries sustained by the implanted product in *Cramer* such as bladder or urinary tract infections. The filter became embedded over time and then began perforating her IVC over time.[7] Dkt. 21335 at 21. "… it is difficult, if not impossible, to determine the first point at which the plaintiff was first 'injured.'" *Cramer v. Ethicon, Inc.,* 2021 WL 243872, at *5 (W.D.N.C. Jan. 25, 2021). Plaintiff was not diagnosed with an injury associated with the filter until 2017, and she has no way of knowing when the filter began to embed in her IVC and when it began perforating the IVC. It was only when the Plaintiff had a CT scan revealing her filter was embedded and perforating her vein that she was able to attribute the filter to her injuries and symptoms. *Id*. This type of analysis calls for expert testimony and discovery, not obtained at this time, or at a bare minimum, allowing a federal district court, sitting in North

---

apply a latent disease exception to the statute of repose. *Cramer v. Ethicon, Inc.,* No. 1:20-CV-95-MOC-WCM, 2021 WL 243872, at *5 (W.D.N.C. Jan. 25, 2021).

[6] Disease is a "condition of the living animal or plant body or of one of its parts that impairs normal functioning and is typically manifested by distinguishing signs and symptoms." *Miriam Webster.* (n.d.) Disease. In *Miriam-Webster.com* dictionary. Retrieved March 28, 2022, from https://www.merriam-webster.com/dictionary/disease.

[7] Cook's position is that the statute of repose runs from the date the filter was implanted ,therefore the Plaintiff's Case Categorization Form has no bearing on Cook's position for a motion for judgement on the pleadings in accordance with CMO-28. Plaintiff's notice of subsequent injuries of perforation was revealed on a 2019 CT scan, after Plaintiff had already submitted her original case categorization form. However, Plaintiff has now served an updated Case Categorization Form, re-defining the categorization as a category 7 capturing Plaintiff's updated injury of perforation. *See* Dkt. 21720

10

Carolina, the opportunity to answer whether an implanted IVC filter causing Plaintiff's injuries constitute a disease under the disease exception defined in *Hyer*.

For all the reasons set forth above and in Plaintiff's response, Cook's motion to dismiss should be denied.

Respectfully Submitted,

Dated April 19, 2022.

*/s/ Monte Bond*
Monte Bond TX No. 02585625
Jessica Glitz TX No. 24076095
**Tautfest Bond, PLLC**
5151 Belt Line Rd., Suite 1000
Dallas, TX 75254
Phone: (214) 617-9980
Facsimile: (214) 853-4281
Email: mbond@tbtorts.com
Email: jglitz@tbtorts.com

***Attorneys for Plaintiff***

## CERTIFICATE OF SERVICE

I certify that on April 19, 2022, the foregoing was filed electronically and notice of thefiling accordingly will be sent to all required parties by operation of the Court.

*/s/Monte Bond*
Monte Bond
