**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates to:

>DENNIS A. HUNTER, JR.,
>as Administrator of the Estate of Servietta Hameed
>1:17-cv-06059-RLY-TAB

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

The Cook Defendants' ("Cook") Motion asserting that Plaintiff's claims are time-bared by North Carolina's six-year statute of repose ("SOR") (Dkt. 21936) fails for multiple reasons. First, Cook has waived the SOR through its express warranty that exceeded far beyond six-years from implant. Second, there remain open questions under North Carolina law regarding whether the "disease exception" to North Carolina's SOR applies to Plaintiff's claims, and whether the twelve-year SOR enacted in 2009 extended the SOR to plaintiffs with claims that had not yet been extinguished before the amendment took place.[1]

### I. COOK DEFENDANTS HAVE WAIVED THE SOR

In North Carolina a manufacturer may "bargain away" or "waive" the benefits of the SOR by providing an express warranty for a period that exceeds the SOR time limit. *Christie v. Hartley Construction, Inc.*, 367 N.C. 534, 766 S.E.2d 283, 288 (2014) (the contract at issue provided a warranty of twenty years—exceeding the 6 year SOR). Parties are "free to contract as they deem appropriate." *Id*. Cook made "affirmations of fact" that its Gunther Tulip filter is "safe and effective as a permanent filter" to doctors and patients.[2] According to Cook, its filter can safely remain in the patient forever and removal is unnecessary thus providing Plaintiff with a lifetime warranty. Cook's advertising, just like the advertising in *Christie*, created express warranties under North Carolina law.[3] *See also, Bussian v. DaimlerChrysler Corp.*, 411

---

[1] Respectfully, while this Court has previously ruled that the six-year SOR applies and that the "disease exception" does not apply to medical device cases, this Court has only recently been presented with numerous on-point case law that is cited here and supports Plaintiff's claims.

[2] Plaintiff has filed a motion for leave to file a second amended SFC to add more specific allegations regarding Cook's express warranties, including specifically the representations Cook made in marketing materials in place prior to Plaintiff's implant regarding the safety and effectiveness of its Gunther Tulip filter as either a retrievable *or* permanent device. (Dkt. 22014). Plaintiff incorporates the allegations made in the SFC herein by reference. (Dkt. 22015).

[3] Section 25-2-313 of the North Carolina General Statutes defines express warranties as:
  (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise….
  (2) It is not necessary to the creation of an express warranty that the seller use formal words such as "warrant" or "guarantee" or that he have a specific intention to make a warranty, …

2

F.Supp.2d 614, 620 (M.D. N.C. 2006) (representations regarding "projected design life," "durability," and being "maintenance free" are sufficient to create an express warranty). *See also Goodling v. Johnson & Johnson*, 2022 WL 414285, at *12 (M.D. Pa. Feb. 10, 2022) (representations that a "pelvic mesh implant" is "a permanent implant" that "would not need to be removed," are warranties that extend to future performance). Plaintiff discussed the filter with her doctor and provided informed consent, relying on representations that the filter would be safe and effective as a "permanent filter". [4]

Plaintiff's reliance on these warranties were part of the "basis of the bargain" in deciding to use the filter. *Id*. Additionally, reliance on her doctor's medical judgment alone creates a presumption that the manufacturer's representations, which formed the basis of the doctor's medical judgment, were part of the basis of the bargain. *Felan v. Bos. Scientific Corp.*, 2015 WL 2137180, at *11 (S.D.W. Va. May 7, 2015) (applying North Carolina law). Cook breached these warranties because the filter is not "safe and effective as a permanent filter" and caused injuries to Plaintiff by tilting, perforating her IVC, and perforating her vertebra and aorta, causing her pain and cramps.[5] Cook warranted that the life of the product exceeds the SOR period when it advertised and represented its filter as a safe and effective "permanent" filter to gain a competitive edge and induce doctors and patients to choose its filter.[6] Cook "bargained away" the benefits of the SOR defense and may not rely on it now. *Christie*, 766 S.E.2d at 288 ("A warranty that a seller knows is unenforceable is a sham, useful only to beguile the unsuspecting.").

## II. THERE ARE UNSETTLED QUESTIONS UNDER NORTH CAROLINA LAW PRECLUDING THE GRANTING OF COOK'S MOTION

---

[4] *See* Dkt. 22015 at 24. These allegations must be taken as true and construed in Plaintiff's favor. Allegations that the purchaser of the product at issue received certain warranties, relied on those representations, and that the representations were material in the decision to purchase the product are "specific enough to demonstrate reliance at the pleading stage." *Jones v. BMW of North America, LLC*, 2020 WL 5752808, *6 (M.D. N.C. 2020).
[5] *See* Dkt. 22015 at 21.
[6] Ultimately, the question of "whether an express warranty existed and was breached is one for the jury" *City of High Point v. Suez Treatment Sols.*, 485 F. Supp. 3d 608, 628 (M.D.N.C. 2020).

### A. THE NORTH CAROLINA "DISEASE EXCEPTION"

North Carolina recognizes a "disease exception" to its SOR. In a recent decision from this Court's sister district, also presiding over a medical device MDL, Judge Robert L. Miller held that there were two approaches to this issue on the basis of two cases from two different circuits: *Hyer v. Pittsburgh Corning Corp.*, 790 F.2d 30 (4th Cir. 1986) and *Klein v. DePuy, Inc.*, 506 F.3d 553 (7th Cir. 2007). *See In re Biomet M2a Magnum Hip Implant Prods. Liab. Litig.*, 2019 WL 110892, *2 (N.D. Ind. 2019). Whether the "disease exception" applies to cases involving an IVC filter has yet to be decided in North Carolina. *Id.* Under *Hyer*, which the *Biomet* court noted has been followed by the majority of federal courts to rule on the issue since 1986, "the *Wilder* 'disease exception' applies to all (or at least many) statutes of repose." *Biomet*, *supra*, at *5. Even more recently, another MDL court within the Seventh Circuit also followed *Hyer* and concluded that the "disease exception" applies to the North Carolina SOR and that the plaintiffs' claims were not time-barred. *In re Paraquat Prods. Liab. Litig.*, 2022 WL 451898, *6-9 (Feb. 14, 2022). Judge Rosenstengel addressed *Klein*, *Cramer*, and *Biomet*, ultimately concluding that the plaintiffs' claims are that they developed a latent disease "as the term is understood by North Carolina state and federal courts" and therefore, the SOR did not bar them. Similarly, this Court should find that Plaintiff's claims qualify under the "disease exception".

Applicable case law confirms that consideration of what injuries qualify as a "disease exception" is not as simple as Cook contended in prior briefing. The *Biomet* court did not rule that the "disease exception" per se does not apply to implanted medical devices (in that case, a metal-on-metal hip). Correctly so, as the Fourth Circuit has already held years ago that the "disease exception" *can and did apply* in such a case. In *Bullard v. Dalkon Shield Claimants Trust*, 74 F.3d 531 (4th Cir. 1996), the Fourth Circuit answered affirmatively that it believed the

4

North Carolina Supreme Court would find that pelvic inflammatory disease—arising from the implantation of an IUD, a medical device—"is a disease and that the statute of repose does not apply to bar the plaintiff's claim." *Id*. at 532.

According to the Fourth Circuit, the pertinent question is not whether the offending product is an implantable medical device or not, rather:

> It is clear in *Wilder* that in determining a disease exception to the statute, the court looks primarily to two characteristics: the difficulty or impossibility in establishing the exact time the injury first occurs or the disease process begins, and some period of time between first exposure to the product and the discovery of the disease, so that the harm caused by the product would not be readily apparent until the disease is diagnosed as such.

*Id.* at 535. *Bullard*, involving an implantable medical device and following both *Wilder* and *Hyer* (both precedential here)[7], makes clear the "disease exception" is not as limited as this Court was previously led to believe and that *In re Mentor* was decided incorrectly.

Unlike in *Cramer*, where the Court held that the disease exception did not apply because the Plaintiff's alleged "urinary tract and bladder infections are discrete medical events that occurred at readily identifiable points in time," it is difficult (if not impossible) to establish when the filter began perforating Plaintiff Hameed's IVC, vertebra and aorta. Furthermore, the harm was not readily apparent until diagnosis, long after her first exposure (implant) to the device. There was no sudden or discrete medical event that occurred which would have made Plaintiff aware that her filter was causing her harm. For these reasons, Cook's motion should be denied.

## B. THE 2009 AMENDMENT EXTENDED PLAINTIFF'S SOR PERIOD

As to the second unsettled question of North Carolina law recognized by this Court's

---

[7] Fourth Circuit case law applies. *See Looper v. Cook Inc.*, No. 20-3103, at *6 (7th Cir. Dec. 16, 2021). Moreover, since Plaintiff's case was originally filed in the Western District of North Carolina and transferred to this Court by the JPML, this Court "must apply the law of the transferor forum, that is, the law of the state in which the action was filed…" *In re Vioxx Prods. Liab. Litig.*, 478 F.Supp.2d 897, 903 (E.D. La. 2007).

sister district, the *Biomet* court held that the issue is not whether the twelve-year North Carolina statute of repose applies retroactively or "revives a stale claim." Rather, the unsettled question of law is whether it *extends* the statute of repose timeline for cases in which the claims at issue *have not yet been extinguished*. In the words of the *Biomet* court, "[w]hile a claim's accrual generally does not affect operation of the statute of repose…, it may in cases, like these, that fall between the old statute of repose and the new." *Biomet*, *supra*, at *6, fn. 6.

Importantly, the *Biomet* court gave due regard to the same cases Cook has cited previously to this Court, including *In re Mentor* and *Lackey v. DePuy Orthopaedics, Inc.*, 2011 WL 2791264 (W.D. N.C. 2011). *Unlike in those cases*, Plaintiff's claims here (and for three out of four plaintiffs in *Biomet*) were not already "extinguished" by the six-year statute of repose set forth in N.C. Gen.Stat. § 1-50(6) when the amendment was enacted in 2009. Plaintiff Hameed's filter was placed in March 2006—just three years before the twelve-year amendment to North Carolina's statute of repose was enacted. Given that her claims were still "alive and kicking (though not yet accrued)" when the legislature acted in October 2009, the *Biomet* court's conclusion that there remains an unsettled question of North Carolina law is correct.

Under N.C. Stat. Ann. § 1-52(16), a cause of action for personal injury like Plaintiff's does not accrue "until bodily harm to the claimant…becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs…" Thus, because Plaintiff products lability claims did not accrue under North Carolina law until late 2016—more than six years after implant but less than twelve—and because the six-year statute of repose was amended and extended before her claims were "extinguished" by it, her claims survive.[8]

---

[8] Alternatively, if this Court does not agree that Cook's motion should be denied in full, Plaintiff respectfully requests that this Court deny Cook's motion without prejudice and allow a North Carolina court to address it upon remand, as the *Biomet* court agreed to do. Plaintiff has made substantively different arguments that what prior North Carolina plaintiffs have put before this Court and has provided several new cases that other such plaintiffs did not present.

### III. THE DOCTRINE OF EQUITABLE ESTOPPEL PRECLUDES COOK'S RELIANCE ON THE SOR

North Carolina courts apply the principle that a defendant may be equitably estopped from using a statute of limitations or repose "as a sword" to unjustly benefit from his own conduct which induced a plaintiff to delay filing suit." *Ferro v. Vol Vo Penta of the Americas, LLC,* 2017 WL 3710071, at *4 (E.D. N.C. Aug. 28, 2017), *aff'd sub nom.*, *Ferro v. Volvo Penta of the Americas, LLC*, 731 F. App'x 208 (4th Cir. 2018); *Trillium Ridge Condo. Ass'n, Inc. v. Trillium Links & Vill., LLC*, 236 N.C. App. 478, 496 (N.C. Ct. App. 2014). North Carolina courts recognize the doctrine of equitable estoppel based upon fraudulent concealment. *In re Biomet M2a Magnum Hip Implant Prod. Liab. Litig.*, 2019 WL 110892, at *3 (N.D. Ind. Jan. 3, 2019).

> In order to establish equitable estoppel as a bar . . . :(1) the defendant must have conducted itself in a manner 'which amounts to a false representation or concealment of material facts'; (2) this conduct must have been intentional; and (3) the defendant must have 'knowledge, actual or constructive, of the real facts.' The plaintiff must also demonstrate that: (1) it has 'a lack of knowledge and the means of knowledge as to the real facts in question;' and (2) it 'relied upon the conduct of the party sought to be estopped to his prejudice.'

*Ferro,* WL 3710071 at *9 (citations omitted). As set forth above regarding Plaintiff's express warranty claims and more particularly in Plaintiff's amended complaint, Cook's representations that the filter is "safe and effective as a permanent filter" are false.[9] Moreover, Cook fraudulently concealed the information from studies it conducted demonstrating the filter was not "safe and effective as a permanent filter" from Plaintiff, her physician and the medical community.[10] Cook maintained the secrecy of this information precluding access to it.[11] Plaintiff relied on Cook's false representations and concealment to her detriment, i.e. she would not have implanted the

---

[9] *See* Dkt. 22015 at 1-22.
[10] *See* Plaintiff Steering Committee's Response in Opposition to Defendant's Renewed Motion for Partial Dismissal of Claims of Fraudulent Concealment (Dkt. No. 18900 at 25-30, incorporated herein by reference). *See* Dkt. 22015 at 6.
[11] *See* Dkt. 22015 at 6; Dkt. 18900 at 25-30.

7

filter or only agreed that the filter be implanted temporarily in very limited circumstances.[12] Instead, it remained implanted as a "permanent" filter until it caused her injuries.[13] The allegations in Plaintiff's amended complaint must be taken as true and construed in favor of Plaintiff. Therefore, under the doctrine of equitable estoppel, Cook may not rely on the SOR to bar Plaintiff's claims.[14]

## CONCLUSION

For numerous reasons, Cook's motion should be denied. Not only has Cook waived its SOR defense with its own representations and advertising, but unsettled questions of North Carolina law remain which preclude a finding in Cook's favor. Lastly, Cook fraudulently concealed necessary safety data and information, which Plaintiff and her doctor relied upon to her detriment. Cook should be equitably estopped from asserting a SOR defense given Cook's own conduct. The Motion for Judgment on the Pleadings should be denied in its entirety.

Dated: May 17, 2022.   **Respectfully Submitted,**

*/s/ A. Layne Stackhouse*
A. Layne Stackhouse (KY# 94038)
9 Greenway Plaza, Suite 2300
Houston, TX 77046
T: (713) 782-0000
F: (713) 571-9605
layne@shraderlaw.com

*Counsel for Plaintiff*

---

[12] *See* Dkt. 22015 at 46-47; Dkt. 18900 at 25-30.
[13] *See* Dkt. 22015 at 45-47.
[14] At a minimum the facts as plead regarding the elements of equitable estoppel create fact issues that preclude summary judgment. *See e.g.*, *Trillium,* 236 N.C. App. at 498 ("As a result, given that the record discloses the existence of a genuine issue of material fact concerning the extent to which Trillium Construction is estopped from asserting the statute of limitations or the statute of repose in opposition to Defendant's negligent construction claim, the trial court erred by granting summary judgment in favor of Trillium Construction with respect to this issue.")

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2022, a copy of the foregoing was served electronically and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to the CM/ECF participants registered to receive service in this matter. Parties may access the filing through the Court's system.

/s/ A. Layne Stackhouse