# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

IN RE: COOK MEDICAL, INC., IVC
FILTERS MARKETING, SALES
PRACTICES AND PRODUCT LIABILITY
LITIGATION

_____

This Document Relates to: All Actions

_____

Case No.: 1:14-ml-2570-RLY-TAB

MDL No. 2570

## PLAINTIFFS' STEERING COMMITTEE'S MOTION FOR RELIEF FROM CMO-30, OR IN THE ALTERNATIVE, MOTION TO AMEND CMO-30

Pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, Plaintiffs' Steering Committee respectfully requests the Court vacate CMO-30 (Dkt. 130065), or alternatively amend the order to remove its errors and ambiguities and preserve Plaintiffs' due process rights. CMO-30 should be vacated because it improperly makes rulings on disputed issues of fact and law without due process to Plaintiffs. First, it makes findings of fact and conclusions of law that are disputed by Plaintiffs under the various state laws governing their claims by improperly adopting findings from the *Sykes* and *Parton* cases in violation of the doctrine of collateral estoppel. In fact, *Sykes* and *Parton* did not address all the injuries, particularly perforations "abutting" other organs, to which CMO-30 applies. Nevertheless, based on these findings, CMO-30 adopts a completely new definition of what constitutes a "Symptomatic Injury Case" under Category 7(e) of the Case Categorization Form ("CCF")—a definition that does not even exist in the CCF and imposes new requirements of plaintiffs based on that new and faulty definition, completely ignoring what was actually required of plaintiffs in completing the CCF's all of which violates due process. CMO-30 also eliminates Plaintiffs' due process rights to fully and fairly litigate their respective claims under the state laws governing those claims by subjecting the claims to a temporal limitation and definition of "perforation" that improperly eliminates legally cognizable claims.  CMO-30 also

subjects other categories of injuries to dismissal without notice or opportunity to be heard while at the same time affording Cook the unfettered right to judge whether Plaintiffs have complied with CMO-30, subjecting their case to dismissal. Finally, CMO-30 imposes unfair and undue burdens on Plaintiffs under a schedule that is impossible to meet for many Plaintiffs, especially given the ambiguity of what is required of them. For all these reasons, CMO-30 should be vacated or at a minimum amended.

## I.    FACTS GERMANE TO ALL ISSUES

On November 21, 2018, the Court established a screening order, utilizing the CCFs, to streamline the Bellwether Selection Plan. Under the terms of the CCF, each plaintiff may select more than one of the seven categories outlined in the form and only the "highest alleged category" would be used for purposes of the census ordered by the Court. Dkt. 9638-1 at 1. The CCF also required Plaintiffs to submit "specific medical records confirming the "injury/complication/category" for each category selected. As set forth in the CCF:

> This Case Category Submission is for the purpose of complying with the Court's Order on the Cook Defendant's Motion for Screening Order and Bellwether Selection Plan only **and is not admissible and is not to be considered relevant for any other purpose.**

*Id.* at ¶4 (emphasis added). In spite of the clear language prohibiting the use of the CCF for any other purpose—a prohibition on which thousands of Plaintiffs have relied-- this Court, at the behest of Cook, will ultimately be using the CCF's as a way to dismiss cases without any due process, without allowing for factual disputes to be determined through proper means including summary judgment procedures, and with a stroke of the pen proceed to dismiss those cases based upon CCF forms that were never intended to be used for that or any "other" purpose besides selection of bellwethers. Notably, Cook sought the 2018 Screening Order explaining its "goal" was "to properly categorize cases and draw bellwether cases from those categories." Dkt. 8913.

On February 5, 2019, the Cook defendants filed a Motion to Dismiss cases they claimed failed to comply with the CCF Orders, listing allegedly deficient cases. On February 18, 2019, Cook filed an Amended Motion to Dismiss, requesting the court dismiss a total of 485 cases for failure to submit the CCFs themselves or for failure "to provide a specific medical record supporting their chosen category." In its Amended Motion to Dismiss, Cook stated "[t]he Cook Defendants have **re-reviewed every case categorization submission to ensure the accuracy of this amended motion**." Cook specifically moved to dismiss 226 cases "that have failed to provide a specific medical record supporting their chosen category." The Court granted Cook's Motion, dismissing those cases on May 8, 2019. Dkt. 10622. Cook has not yet explained what happened since then such that its in depth review three years ago did not reveal this new issue with many of those same CCF's such that it has become necessary to tarry onto the road of dismissing hundred or possibly thousands of meritorious cases without a hint of a determination of disputed facts.

On March 13, 2020, the Court expanded CMO-4 to also include the CCFs under the same enforcement protocol. *See* Fourth Amended Case Management Order No. 4 (Party Profile, Fact Sheet, and Case Categorization Protocol) Dkt. 13046 ("CMO-4").

> All Plaintiffs in newly-filed actions in this MDL (filed as of May 3, 2019, or later), whether by direct filing of the Complaint in this MDL or by transfer into this MDL, **must categorize their cases using the form provided** in Filing No. 9638-1, **support the categorization by specific medical documentation[1], and submit the same to the Cook Defendants and Plaintiffs' Leadership, within 30 days of the filing of the Complaint or of the transfer date to this MDL**, whichever is applicable.

*Id*. at 5 (bold in original). CMO-4 set forth the procedure in the event Cook believed a CCF was deficient. Cook would provide notice to Plaintiffs for an alleged deficiency and Plaintiff would

---

[1] Cook has already indicated to the Court that it only wants Plaintiffs to show medical evidence of perforation which is already required by Amended CMO-4, again proving that CMO-30 is duplicative and unnecessary. ("What we're asking people to do in the proposed order is: Show us your proof. Show us your proof. You said that you have a perforation. Show us your proof for that. And this Court, it's completely within your authority to control your docket, to ask for people to show medical evidence.") (November 9, 2021, CMC Transcript 52:19-22). **Exhibit A**

have five days to cure. If a Plaintiff failed to cure, Cook could then file a "Notice of Non-Compliance," which gave the Plaintiff an additional fourteen days to cure the alleged deficiency. After the fourteen-day period, Cook could then file a motion to dismiss pursuant to FRCP 41 for failure to prosecute *Id.* The parties had been operating under this procedure for over two years. Plaintiffs have consistently served their CCFs in the same format with the same supportive materials. Plaintiffs have not received deficiency notice of non-compliance from Cook, and therefore believed, with good reason, that they have been in full compliance with the Court's Categorization Orders.

In July 2020, Cook filed a "Motion for Judgment on the Pleadings as to Certain No-Injury Plaintiffs." Dkt. 13728. Cook claimed that filter perforation was not an injury and requested that the Court dismiss four cases (including Sykes and Parton) categorized as a 6 on the CCF, as not suffering any *present* physical harm. *Id.* at 17. Beginning in July 2021, Cook began focusing its attention on the cases designated under Category 7(e) claiming many of the CCFs and supporting records failed to show a perforation/penetration as 3 mm or more, using bits and pieces of Plaintiffs' own experts' testimony as to why the measurement of 3 mm or more was necessary for a protrusion of a strut outside the vena cava wall to be considered a perforation.[2] Additionally, Plaintiffs Sykes, Parton, and Opperman filed a "Response in Opposition to Cook's Motion for Judgment on the Pleadings." Dkt. 13816.[3] The Court then converted the motion to a motion for summary judgment. Dkt. 18310. Plaintiffs Sykes and Parton responded, making it clear that the CCF is not a part of the pleadings and that the perforation of the Inferior Vena Cava ("IVC") by an IVC filter is an injury. *Id.* at 2 and Dkt. 19557-1. Despite the evidence presented, in September

---

[2] See excerpts from Faegre Drinker, Cook Filter MDL 2570 July 1, 2021, Status Conference PowerPoint. **Exhibit B**
[3] Plaintiffs requested, in the alternative, that the Court convert the Motion for Judgment on the Pleadings to a Motion for Summary Judgement so the Court could consider Dr. Muehrcke's declaration and not just the pleadings alone. Dkt. 19434 at 5.

2021, the Court ruled in Cook's favor, stating, "Plaintiffs have failed to raise a genuine issue of material fact that the injury they claim-an asymptomatic perforation- constitutes a present physical harm." Dkt. 20031 at 7-8. Sykes has appealed this decision. Parton intends to appeal upon entry of final judgment in her case.

In October 2021, Cook provided a draft of the now-ordered CMO-30 to Plaintiffs, which Plaintiffs rejected outright due to its multitude of issues. In November 2021—over two years after Cook "reviewed and re-reviewed" the CCFs, Cook provided statistics, unsupported by any evidence, that its analysis of a "*random sampling*" of 200 cases supported their theory that CMO-30 was a necessity.[4] Plaintiffs objected to Cook's categorization of Plaintiff's claims during the November CMC and via a letter to the Court.[5] On March 29, 2022, without any further hearing or motion practice, the Court entered CMO-30. Dkt. 21704. On April 26, 2022, Plaintiffs' co-lead and liaison counsel met and conferred with Cook's counsel to clarify the parties' respective positions. Plaintiff's provided Cook with a draft amended CMO-30, which Cook rejected. Cook however, qualified its position on what it believes constitutes an injury, via email and in the Declaration in Support of Cook *Defendant's Response In Opposition to Plaintiffs' Motion to Extend the Deadline for Compliance with CMO-30*, conceding that in situations where

> "a medical record or expert report clearly states that an IVC filter strut is within the duodenum, kidney, spleen, pancreas, spine, or vertebra, . . ." no additional proof of a perforation 3 mm in length or accompanying injury will be required…If the record suggests a strut merely "abuts" one of those structures, proof of length of 3 mm and an accompanying injury will still be required."

Dkt. 21966-1 at 2-3. Cook thus provided further insight into what it considers a "legally cognizable injury" as set forth in CMO-30 and that it presumably will use in deciding which Plaintiffs have

---

[4] November 9, 2021, CMC Transcript at 46:12-23 and 54:5-11. *See* **Exhibit A.**
[5] The PSC objected to CMO-30 both in open court and by letter brief. The PSC's brief and Cook's response are attached to this motion as **Exhibit C.**

and have not complied with CMO-30.   Plaintiffs reject the qualifications and limitations Cook has

decided to use in its quest to be the judge, jury, and executioner of Plaintiffs' claims.

## II.     CMO-30 VIOLATES PLAINTIFFS' DUE PROCESS RIGHTS

**A.     CMO-30 Denies Plaintiffs the Constitutional Right to Notice and Opportunity to be Heard on Their Individual Claims Under Applicable State Law.**

### 1.   Plaintiffs Have Due Process Rights and Must Have a Full and Fair Opportunity to Litigate Their Claims.

Each claimant in an MDL has an individually held, constitutionally protected property right

at stake, guaranteed by the Fifth Amendment which protects life, liberty, and property against

deprivation absent due process of law. U.S. CONST. Amend. V. The "property" at stake in an

MDL is a "chose in action." *Sheldon v. Sill*, 49 U.S. 441, 444 (1850) (defining a "chose in action"

as a right "which can be realized only by suit"). Under the Fifth Amendment, MDL claimants

cannot be deprived of their rights to a chose in action without due process of law. *Phillips*

*Petroleum Co. v. Shutts*, 472 U.S. 797, 807 (1985) ("[A] chose in action is a constitutionally

recognized property interest . . . .").

> A person who was not a party to a suit generally has not had a "full and fair
> opportunity to litigate" the claims and issues settled in that suit. The application
> of claim and issue preclusion to nonparties thus runs up against the "deep- rooted
> historic tradition that everyone should have his own day in court." *Richards,* 517
> U.S., at 798, 116 S.Ct. 1761 (internal quotation marks omitted). Indicating the
> strength of that tradition, we have often repeated the general rule that "one is not
> bound by a judgment *in personam* in a litigation in which he is not designated as
> a party or to which he has not been made a party by service of process."

*Taylor v. Sturgell*, 553 U.S. 880, 892-93 (2008) (citations omitted). A fundamental requirement of

due process is "the opportunity to be heard." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)

quoting *Grannis* v. *Ordean*, 234 U.S. 385, 394 (1914). "It is an opportunity which must be granted

at a meaningful time and in a meaningful manner."   *Id*. That opportunity was not afforded to

Plaintiffs.

CMO-30 arose from the improper efforts of Cook to treat the CMO process and case management conferences as a means to determine the merits of plaintiffs' cases.[6] Cook submitted CMO-30 to the Court informally, without motion, during the case management status conferences. The Court took it up and adopted it without any evidentiary hearing in violation of Plaintiffs' due process rights. *See Castillo v. U.S.*, 34 F.3d 443, 445 (7th Cir. 1994), where the Seventh Circuit addressed a court making rulings of fact based on a status conference rather than an evidentiary hearing:

> That leaves as the only strut beneath the district judge's decision the status call that molted unexpectedly into an "evidentiary hearing." If deemed an evidentiary hearing it violated the most elementary precepts of due process of law, for one of the parties had no notice and no opportunity to be heard.

*Id.* at 445. *See also, Hansberry v. Lee*, 311 U.S. 32, 40-42 (1940) (due process requirements prevent persons not before the court personally or through an adequate representative from being bound by the judgment); *In re New York City Asbestos Litig.*, 130 A.D.3d 489, 490 (App. Div. NY 2015) (holding that a CMO violated the defendants' due process rights). Plaintiffs were not afforded notice and the opportunity to be heard regarding CMO-30, which contains findings of fact and applies them as a matter of law, regardless of the participation of the PSC in the limited and non-evidentiary case management conference process.

As stated by the Ninth Circuit Court of Appeals, "although we grant additional deference to a district court administering a MDL proceeding, due process and fundamental fairness may not be sacrificed to provide assembly-line justice." *In re PPA Prods. Liab. Litig.*, 460 F.3d 1217, 1250 (9th Cir. 2006) (reversing the dismissal of certain actions for failure to satisfy a CMO).

---

[6] This is self-evident from the fact that CMO is being applied to all cases regardless of whether they met the requirements of the CCF even under Cooks definition. Cook claims 14% of the cases designated under Category 7(e), submitted records showing a measurement of 3 mm or more. November. 9, 2021, CMC Transcript at 46:20-22. **Exhibit A**. Yet these cases are still subject to CMO-30. And Cook cited as examples medical records/expert reports using the term "perforation" which it claims means a protrusion of 3 mm or more. *Id.* at 45:12-19. stating, "evidence of mild perforation" and "strut penetration." *Id.* at 46:7-13.  Nevertheless, these cases are still subject to CMO-30.

"Ultimately, a district court must acknowledge and evaluate the unique circumstances an individual MDL plaintiff presents and act accordingly." *Id.* at 1248. Cook wants assembly line justice and in CMO-30 Cook is receiving it.

### 2. CMO-30 Makes a Substantive Determination of Actionable Injury that Will Result in the Dismissal of Meritorious Claims in Violation of Plaintiffs' Due Process Rights.

CMO-30 permits dismissal of entire cases for failure to produce unspecified, additional injury records without a predicate determination on the merits of what is required to assert a claim involving the perforation of a Plaintiff's IVC by one of Cook's IVC filters. With no briefing, factual evidence, opportunity for presentation of factual evidence, motion practice, summary judgment proceedings, evidentiary hearing, or trial, the Court has imposed a requirement that perforation cases provide additional record evidence that the perforation is "symptomatic." Failure to provide this evidence results in dismissal of the action for failure to prosecute. But Plaintiffs have good faith arguments, supported by law and fact, that perforation itself is an actionable injury—even more so when that perforation is abutting an organ. And when one reviews the actual language of the CCF it is clear that the Court has ignored the language in 7(e) wherein it states that if a *complication* exists (not an injury but a complication) and the complication is outlined in the CCF then that plaintiff has complied with that section of the CCF. Obviously seeing this as a stumbling block on its mission of assembly line dismissal, Cook presented the Court with CMO-30 (and the Court signed it) without the actual language in CCF 7(e) that only required there be a showing of a *complication*.   By the time Cook presented CMO-30 to the Court the word "complication" had magically disappeared. Dismissal of entire cases based on a deficiency in the CCF that does not even exist or includes claims that do not require proof of personal injury in the CCF forms, and with no consideration of Plaintiffs' facts and arguments violates Plaintiffs' right

to due process. CMOs may not dismiss meritorious claims by administrative fiat which has, in its effect, occurred here.

A.    **CMO-30 Changes Category 7(e) of the CCF.**

CMO-30 radically alters and limits the definition of "Symptomatic Injury Cases" under Category 7(e)." The CCF defines "Symptomatic Injury Cases" under Category 7(e) as follows:

> 7. Symptomatic Injury Cases: "Cases where the Plaintiff alleges medical **symptoms, conditions, or complications** caused by one or more of the following conditions" . . .
>
> (e) penetration or perforation – consisting of a filter strut or anchor extending 3 or more mm outside the wall of the IVC as demonstrated on imaging;
>
> Briefly describe claim of symptomatic injury:_____.
>
> CCF at 3.[7]

CMO-30 changes the definition of "Symptomatic Injury Case" by omitting the first line of Category 7 and adding a new additional requirement as follows:

> No party or expert witness in this MDL has claimed that filter protrusion less than 3 mm is a legally cognizable injury or a "perforation." Furthermore, cases in Category 7(e) are intended to be "symptomatic" cases, *i.e.*, cases where the protrusion has caused **a present physical impairment or physical harm.**

CMO-30 at 2 (emphasis added). The definition of perforation omits "as demonstrated in imaging," and CMO-30 never mentions the "symptoms, conditions, or complications" which constitute the "symptomatic" injury under Category 7(e). Freed from the tethers of the definition of perforation that has been used throughout this MDL, the second sentence now requires a new injury in addition to the "perforation" (the hole in the IVC) to demonstrate a legally cognizable injury.

> Plaintiffs who categorized as Category 7(e) shall review the medical evidence submitted with his/her Case Categorization Form and confirm he/she has provided a medical record or expert report supporting (a) IVC filter protrusion "3 or more mm outside the wall of the IVC as demonstrated by imaging," and (b)

---

[7] Cook indicated during the November 9, 2021 CMC that the definition of "perforation" in the CCF is consistent with the Society for Interventional Radiology definition. November. 9, 2021 CMC Transcript at 45:4-16. **Exhibit A**

**that the documented protrusion has caused a present physical impairment or physical harm**.

Dkt.21704 at p. 2 (emphasis added). Now instead of requiring "symptoms, conditions, or complications" to show a "Symptomatic Injury Case" under Category 7(e), Plaintiffs must demonstrate a "present physical impairment or physical harm" in addition to the "perforation" meaning a "IVC filter protrusion '3 or more mm outside the wall of the IVC as demonstrated by imaging.'" *Id*. Poorly worded-- as the heading of the section "Symptomatic Injury Case" would at first appear to require a recitation of an injury or some sort of symptoms—the clear language of the body of 7(e) does not require a statement about symptoms. Simply outlining what "conditions" or "complications" exist suffices for completion of section 7(e).

This new definition under CMO-30 (not even required in the CCF) will operate as a substantive limitation on cases because matters can be dismissed in their entirety for failure to satisfy the requirements of CMO-30—requirements that ostensibly were part of the CCF but are nowhere to be found. *Id.*

**B.    CMO-30 Deprives Plaintiffs of Their Right to Litigate Claims Under the Law Applicable to Their Case.**

CMOs are not an appropriate vehicle to make substantive rulings in part because such decisions must be adjudicated under the specific state law applicable to each matter as well as their individual facts. The plain language of 28 U.S.C. § 1407 and the Supreme Court's decision in *Lexecon* both emphasize that transferee courts have jurisdiction solely over pretrial matters. *See e.g. Looper v. Cook Inc.*, 20 F.4th 387, 394 (7th Cir. 2021). CMO-30 effectively ignores the differences in the various state laws governing the respective claims of the Plaintiffs in violation of their due process rights. A district court conducting those coordinated pretrial proceedings by designation "does not have the power to order a case transferred to itself for purposes of trial." *Looper,* 20 F.4th at 392, citing *Lexecon*, 523 U.S. at 28. And § 1407 does not "expressly authorize

transferee courts to override otherwise applicable law." *Id*. Indeed the issue of what law governs the respective claims of each Plaintiff in this MDL proceeding has been appealed and decided.

> We heeded this advice and applied the choice-of-law rules of the originating forum, not those of the MDL forum. In doing so, we expressly adopted the approach of these leading district court cases: "In fact, district courts in our circuit have taken [this] approach: foreign cases filed directly in a district court as a part of ongoing multidistrict litigation are treated as having originated outside of that district. **We ratify that approach here and apply [the originating state's] choice-of-law rules**."

*Looper,* 20 F.4th at 392 (emphasis added). Therefore, due process requires that each case must be decided individually and in accordance with the law of each state of the applicable "original venue." *Id*. at 392. CMO-30 and the manner in which it was adopted not only denies Plaintiffs their fundamental right to be heard but their right to have the issues of fact and law decided under the various state laws governing their respective claims, i.e. what constitutes a "legally cognizable injury" and whether some injury beyond "perforation" is required to reach a "legally cognizable injury. CMO-30 usurps those rights and must be vacated.

**C.    The New Temporal Limitation of a "*Present* Physical Impairment or Physical Harm" in CMO-30 Eliminates Legally Cognizable Claims in Violation of Plaintiffs' Due Process Rights.**

Under the temporal limitation currently contained in CMO-30, the physical harms necessarily accompanying a "perforation" or puncture of the IVC by the IVC filter are not legally cognizable injuries. This flies in the face of basic tort law.[8] For example, under Texas law

> A cause of action under the legal injury rule accrues at the first point from which a party may seek a judicial remedy. *Houston Water Works v. Kennedy,* 70 Tex. 233, 8 S.W. 36 (1886). This is the point at which the tort complained of is completed; *i.e.* when facts supporting each element of the cause of action come into existence. *See Atkins v. Crosland,* 417 S.W.2d 150, 153 (Tex. 1967) (cause of action for negligence accrued at the time damages were first suffered). **At this point a legal injury occurs**.

---

[8]The Restatement (Third) of Torts defines physical harm as the "physical impairment of the human body ("bodily harm") . . .Bodily harm includes physical injury, illness, disease, impairment of bodily function, and death." Restatement (Third) of Torts: Liability for Physical and Emotional §4 Physical Harm (2022).

*Trapnell v. Sysco Food Serv*, 850 S.W.2d 529, 551 (Tex. App. 1993) (emphasis added). *See also*, *Feuerbacher v. Wells Fargo Bank, Nat'l Ass'n*, No. 4:15-CV-59, at *12 (E.D. Tex. July 11, 2016)

> Thus, a cause of action accrues "when facts supporting each element of the cause of action come into existence." *Trapnell v. Sysco Food Servs.*, *Inc.*, 850 S.W.2d 529, 551 (Tex. App.—Corpus Christi 1992), *aff'd*, 890 S.W.2d 796 (Tex. 1994); *see also S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996) ("As a rule, we have held that a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later, and even if all resulting damages have not yet occurred.")

The requirement of a "present" injury in CMO-30 leads to the untenable result that a claimant could suffer catastrophic injuries from a perforation, such as retroperitoneal bleeding requiring emergency surgery to remove the filter, and yet she would have no claim so long as she survived and eventually recovered from surgery. And if a claimant dies from a perforation of her IVC, is her action to be dismissed for failure to comply with CMO-30 because, now that she is deceased, she is no longer suffering symptoms? That is not the law.  It is an impossible requirement to meet and there is no basis for it under the Restatements (Third) of Torts or case law. CMO-30 improperly eliminates certain "legally cognizable injuries" as a basis for Plaintiffs' claims in violation of Plaintiffs' due process rights.

**D.     CMO-30 Will Result in Dismissal of Claims for Which Economic Harm Satisfies the Element of Injury.**

CMO-30 provides for dismissal of an entire action for failure to proffer unspecified medical records relating to the physical consequences of a perforation by a claimant's IVC filter. CMO-30 disregards that physical injury is not required for all claims asserted by Plaintiffs in this proceeding. A high percentage of Plaintiffs have asserted warranty claims in this MDL. Warranty claims typically do not require any physical injury. *See, e.g.*, *Yachera v. Westminster Pharma, LLC*, 477 F.Supp.3d 1251, 1268 (M.D. Fla. 2020) (stating that "'economic harms'—including Plaintiffs' loss of the benefit of the bargain in this action—'are properly recoverable under contract theories

of breach of implied warranty'"); *Martin v. Brown*, 566 So.2d 890, 891 (Fla. 4th DCA 1990) (applying "benefit of the bargain" formula in a fraudulent representation case); *Berschauer Phillips Const. Co. v. Concrete Science Servs of Seattle, LLC*, 2006 WL 3059951, at *8 (Wash. Ct. App. Oct. 23, 2006) (in a case asserting only economic injury, allowing warranty claims to continue even though product claims dismissed).

Neither has there been any predicate ruling holding that Plaintiffs must assert physical injury beyond a 3 mm perforation to sustain claims beyond Counts I – IV of the Master Complaint, including warranty claims. As discussed below, *Sykes* and *Parton* were decided based on the laws of their specific states, but even then, the motion at issue in those cases (currently before the Seventh Circuit in *Sykes*) only addressed Counts I – IV of the Master Complaint. Cook did not seek dismissal of the other claims, presumably understanding that their arguments regarding physical injury would not prevail as applied to the other claims.

The Court also ignores the fact that the scientific proof that Cook filters prevent pulmonary embolus or death from pulmonary embolus is nonexistent. Indeed, in the recent meta analyses by Krumholz and colleagues the opposite has now been shown. Indeed, the scientific evidence is that IVC filters (which would include Cook filters) are no better than having no filter at all. Thus, it is wrong to create a path for dismissal of cases when claims exist given that a medical device without efficacy was placed in the bodies of human beings—subjecting those humans to surgical procedures and implanted devices which have been shown not to reduce the risk of death from pulmonary embolus—no matter how loudly or how many times Cook says that they are life saving.

The blanket dismissal of entire actions for failure to meet the Court's vague requirement of "symptomatic" injury violates Plaintiffs' right to due process. CMO-30 is unworkable and should be revoked in its entirety.

13

**E.      CMO-30 Improperly Adopts the Findings in *Sykes* and *Parton* in Violation of Plaintiffs' Due Process Rights.**

### 1.  CMO-30 Effectively Adopts the Ruling in *Sykes* and *Parton*, Applying it Broadly to All Perforation Cases, Even Where the Perforation is Abutting an Organ.

In *Sykes* and *Parton*, those claimants submitted that the original "perforation" or puncture of the IVC by the IVC filter caused a "legally cognizable injury." This was supported by expert testimony.

> 5. Puncture of the IVC wall by an IVC filter leads to bleeding, activation of the clotting cascade, fibroblast activation, and scar formation. When a strut of an IVC filter traumatically exits the IVC, it causes a puncture or micro laceration to the wall of the venous blood vessel carrying the desaturated blood returning to the heart from the lower body. This immediately causes bleeding from the blood vessel as well as creating a hole in the IVC through which the desaturated blood can escape from the IVC into the abdominal cavity. . .  Thus, puncture of the IVC by an IVC filter strut initiates several protective hemostatic mechanisms to prevent the human to bleed to death. **In other words, the body responds to the IVC puncture as injury** and damage to the IVC and immediately acts to heal that injury. This damage and response impair the ability of the IVC to function as intended.

> 6. Further, the fibroblast response leads to scarring over time to heal **the acute injury to the IVC wall**, as occurs with all traumatic injury in the body. . .

> 7. **In addition to the direct injury caused to the IVC by perforation** of the filter and the body's pathophysiological response to the perforation, the filter has now breached the confines of the IVC wall. Perforation can also progress to interact with surrounding structures (aorta, lumbar spine, psoas muscle, duodenum, and ureter).

*See* Declaration of Derek Muehrcke, M.D., FACS attached hereto as **Exhibit D** (emphasis added). This testimony is consistent throughout this litigation. Dr. Fishbein testified in the Brand case that the filter causes physical harm when it perforates the IVC and creates a hole in the IVC that can bleed, perforate, and damage the tissue around the IVC, produce scar tissue, cause inflammation, pain, and make it harder to remove. Dr. Fishbein Tr.1258:15-1350:19, attached as **Exhibit E**. *Sykes* and *Parton* specifically raised and argued these issues.

> Each Plaintiff subject to this motion has an IVC filter, a foreign metallic object, puncturing through (*i.e.,* tearing and causing holes in), in multiple locations, the wall of his or her IVC, a major blood vessel of his or her body. The radiographic imaging provided with the CCF, instead of showing lack of harm, provides clear objective evidence of the injury suffered. As explained above, symptoms are not required to experience a physical injury to the body. Therefore, because an injury has been sufficiently alleged in each of these cases, the Court should deny Defendants' Motion to Dismiss Counts I through IV and Count VIII for all Plaintiffs.

Plaintiffs' Joint Response to Defendants' Motion for Judgment on the Pleadings, (Case Nos. 1:18-cv-01214, -03371, -01167) Dkt. 13816 at 20.

The Court in *Sykes* and *Parton* ultimately dismissed these injuries as irrelevant because they did not constitute "present" injuries. Dkt. 92821 at 5 ("Here, neither Sykes nor Parton have brought forth evidence showing that their asymptomatic perforations have caused any present physical impairment or detriment to their health."). Indeed, the injuries caused by the original perforation and other physical harms and injuries suffered by Sykes and Parton were acknowledged by the Court but ultimately dismissed because they were not "present physical harms." *Id.* at 5-6.

CMO-30 effectively adopts these rulings from the *Sykes* and *Parton* cases and applies them to all perforation cases in the MDL. Though *Sykes* and *Parton* asserted 3 mm perforations that did not abut/touch other organs, that holding now applies to such cases. Under CMO-30, to claim a "legally cognizable injury," in addition to the "perforation" of the IVC, a Plaintiff must also show a "**present** physical impairment or physical harm." Dkt. 21704 at 2.

### 2. CMO-30 Violates the Doctrine of Collateral Estoppel in Violation of Plaintiffs' Due Process Rights.

The non-evidentiary CMO and case management conference process, that is not open to all Plaintiffs, does not provide a mechanism to adopt the findings from *Sykes* and *Parton* under due process requirements. And as the Seventh Circuit cautioned, "Still, *Lexecon* stands as a stark

reminder that practices MDL transferee judges adopt for sound, practical reasons are not always legally permissible, at least without the parties' consent." *Id* at. 394.[9] There are, however, limited circumstances that give prior judgments preclusive effect in later proceedings as long as they meet the requirements of due process. Those requirements were not met here.

> The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as res judicata. Under the doctrine of claim preclusion, a final judgment forecloses successive litigation of the very same claim, … Issue preclusion, in contrast, bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim."

*Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (internal quotations and citations omitted). It is fundamental that the due process clause prohibits application of collateral estoppel against parties who were not present in the first litigation. *See e.g. Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 329 (1971). The adoption of the findings from *Sykes* and *Parton* into CMO-30 contradicts the basic principles of due process and established law. *See Parkland Hosiery Co.*, 439 U.S. 322 at 327 n.7 ("It  is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard."). For collateral estoppel (issue preclusion) to apply four elements must be met:

> To establish issue preclusion, the Defendants here must show that (1) **Plaintiffs in this action were a party to a prior action**; (2) the issues sought to be precluded here are the same as those involved in the prior action; (3) the issue was actually litigated; and (4) the determination of the issue was essential to the final judgment.

*WSOL v. CARR*, No. 99 C 6834, at *1 (N.D. Ill. Sep. 17, 2001) (citations omitted) (emphasis added); *see also*, *La Preferida, Inc. v. Modelo*, 914 F.2d 900, 906 (7th Cir. 1990) (". . . and 4) the party against whom estoppel is invoked must be fully represented in the prior action."); *Assoc. for*

---

[9] Plaintiffs never consented to or waived their rights regarding the law applicable to their cases or *Lexecon*. It was presented to the Court  that Plaintiffs were polled and no Plaintiffs firm ever waived their Lexecon rights

*Disabled Americans v. Claypool Holdings LLC*, 2001 WL 11112109, at *1 (S.D. Ind. Aug. 6, 2001). None of the Plaintiffs in the MDL were parties to the *Sykes* and *Parton* case.

No other party had any opportunity to present evidence that a 3 mm perforation constitutes an "injury" sufficient for a claim, let alone argue the differences under different state laws as to the definition of injury. Further, the PSC was not involved in the motion or briefing. Thousands of claimants are not bound to the legal work, including expert work, presented by only two claimants. Plaintiffs have the right to present their own arguments, evidence, and expert statements on these issues, addressing the issues under the state law applicable in their cases.

Further, the application of *Sykes/Parton* to cases asserting that a perforation abuts an organ presents further due process concerns. A metal prong in a person's body touching organs that it was not intended to touch causes significant harm. Plaintiffs who have suffered this injury have the right to present evidence on the impact of their perforation on their body and adjudicate their case under applicable state law. Perforations abutting other organs raise issues not presented in *Sykes/Parton*.

Adopting and applying the findings of those cases in CMO-30 against thousands of Plaintiffs who designated cases under Category 7(e) violates the doctrines of collateral estoppel and due process. Without these findings of fact there is no factual or legal basis for the requirements CMO-30 places on Plaintiffs; therefore, CMO-30 must therefore be vacated.

### 3. The Physical Limitation of "3 mm" In CMO-30 Eliminates Legally Cognizable Injuries from Plaintiffs Claims in Violation of Plaintiffs Due Process Rights.

CMO-30 improperly limits the definition of "perforation" to an "IVC filter protrusion 3 or more mm outside the wall of the IVC as demonstrated by imaging.'" CMO-30 at 2. The definitions of subcategory (e) of "perforation and penetration" in the CCF is as follows: "(e) penetration or perforation – consisting of a filter strut or anchor extending 3 or more mm outside the wall of the

IVC as demonstrated on imaging" CCF at 4. This is consistent with CMO-30. CMO-30, however, bases this limitation on limited Plaintiff expert testimony, ignores the limited application of the definition to "imaging" for practical reasons and t that imaging is not the only way to identify the presence of a hole in the IVC.

First, the SIR Clinical Practice Guidelines (2014) refer to "strut penetration" as a filter related complication associated with the indwelling IVC filters over time. Decl. of Dr. Robert Allen M.D. attached hereto as **Exhibit F**, at pg. 3. The SIR guidelines state that any strut extending beyond the caval wall a distance of 3 mm or greater (by CT imaging) is considered a perforation filter strut. *Id.* Cook consistently states that many of Plaintiffs' own experts use the SIR definition of perforation, including Dr. Gordon. Plaintiffs do not dispute this; however what Cook has failed to do is remind the Court that the SIR guidelines are just that guidelines and Dr. Gordon and other experts are critical of the SIR standard for perforation. *Id* at pg. 4. The updated SIR Clinical Practice Guidelines (2020) do not include the "3 mm" definition for strut perforation and actually states that the standard and not "inflexible rules or requirements and are not intended, nor should they be used to establish a legal standard of care." *Id.* However, this does not mean it is not certainly useful and can provide an abundance of clinical information. *Id.* While a standard is necessary, even Dr. Gordon believes that an exact number is not as important as the location of the legs of the filter. Dr. Gordon May 10, 2018, Pavlock Trial Tr. 98:9-10. **Exhibit G**. He opines, "…that one millimeter may be enough for a perforation to cause a problem." *Id.* In other words a perforation is a perforation. *Id.* at 98:14-15 The perforation alone is the issue not how much the filter is perforating. The three-millimeter definition provided by the SIR guidelines is not an absolute, however it is a respected and common definition to use when defining perforation of an IVC filter.  Dr. Kessler was asked:

Q. "Have you reached an opinion in your report, Dr. Kessler, as to whether perforations of less than three millimeters are harmful or pose any risk to patients?

A. My general understanding is that three millimeters sort of takes away any argument about tenting…"

Dr. David Kessler June 30, 2017, Deposition 272:17-273:2. **Exhibit H**. It is just a perimeter to consider. Dr. Kessler goes on to opine that he is not critical of the definition of perforation or penetration as defined as "penetration of the filter prongs through the vena cava wall." *Id.* at 292:06-12. He also states that in the VCA 1 study the definition of perforation accepted was "…that [filter tine(s)] is outside of the contrast column." *Id.* at 330:3-8. [*sic*], This is due to the limitations imposed by CT scanners in identifying and measuring the severity of a "perforation" in an IVC. **Exhibit F**, at pg. 4. It is recognized that a majority of patients undergo a CT scan of the filter and that imaging would be reviewed to determine the location of the filter and whether it was causing any conditions/complications/injuries, such as a perforation of the IVC wall. CT scanners provide varying levels of clarity; the scan themselves are not always clear or provide a perfectly discernable image. *Id.* Therefore, it was often difficult to discern what the image showed, i.e. was the filter causing "tenting" or was there an actual perforation. *Id.* at 5. Recognizing the vagaries inherent with CT scans, at some point the medical community adopted a metric that physicians could use in making their diagnosis based on the CT scan of a filter. Namely, if the filter extending 3 or more mm outside the wall of the IVC as demonstrated on imaging it could be assumed there was a penetration of the IVC wall.[10] There are issue with the accuracy resulting from how the protrusion is measure. *Id.* This can be significant because most often filters do not extend radially into the IVC but at an angle. *Id.* Because there is not a protocol, physicians are left to make the

---

[10] This definition is consistent with the CCF definition and found in the SIR definition--Revised 2016, ACR-SOR-SPR Committee of Practice Parameters- Interventional and Cardiovascular Radiology, *ACR-SIR-SPR Practice Parameter for the Performance of Inferior Vena Cava (IVC) Filter Placement for the Prevention of Pulmonary Embolism*, (Resolution 18) at 3.

measurement using their own best judgment which may result in a axial measurement perpendicular to the IVC along the angle of the strut resulting underestimating the distance of perforation of the strut extending beyond the caval wall of the IVC. *Id.*  This is not to say this is the one and only way to show or diagnose a perforation of the IVC but is the least invasive. *Id*. Most experts agree, if not all, including Dr. Gordon, that the best way to evaluate perforation is not through imaging but through pathology, while the CT scan is not nearly as invasive. **Exhibit G** at 91:7-25. Therefore, CMO-30 should state, that every party and expert witness in the MDL has claimed that a filter protrusion or perforation of 3 mm or more cannot be diagnosed through *imaging* as anything but a "perforation"[11]. Further, there are other indicators of a perforation— bleeding, penetration or abutment of another organ, or the "halo sign" (strut surrounded by retroperitoneal fat) that would demonstrate the presence of a perforation without the 3 mm measurement. **Exhibit F** at 5-6. Additionally, there is a grading system that provides another metric for determining if there is a perforation in the IVC. *Id.* at 6. A perforation labeled a grade 2 or higher is considered a perforation. *Id.* It must be noted that "one size doesn't fit all." As Dr. Allen notes, there are instances where filter perforation and embedment in adjacent anatomical structures have occurred and would not meet the SIR "3 mm" requirement. *Id.* at 5. All of these indicators, alone or in combination may be relied on by a physician to determine whether the IVC is perforated.

CMO-30 fails to take into consideration each experts' full testimony regarding the SIR guidelines and their criticisms. The definition of perforation and how to measure the 3 mm are issues of fact to be vetted by the parties with evidence including expert testimony. Furthermore, it

---

[11] Right. So we -- for me there's no distance criterion. It's just a matter is it inside or is it outside? If it's outside, it's a perforation. Could be a millimeter, could be 5 millimeters. Pathologically, that's a perforation. Transcript of Dr. Fishbein (Pathologist) 1350: 16-19. **Exhibit E.**

must be noted that the SIR definition of perforation was not even adopted by Cook. In Cook's sponsored and co-authored Lyon study, Cook defined perforation much more simply: "[a] strut protruding out of the IVC wall."[12] Courts across the country have also defined "perforation as when the filter, or fragments of the filter, punctures the wall of the vein." In *re Bard IVC Filters Prod. Liab. Litig.,* 969 F.3d 1067, 1071 (9th Cir. 2020). It must be made clear, Plaintiffs do not disagree with the SIR guidelines, however they are just that—guidelines-- as expressed by all of Plaintiffs' experts. The "3 mm" definition of IVC filter strut perforation as specified in CMO-30 is arbitrary. **Exhibit F** at 6. For this reason alone, CMO-30 must be vacated, and under the requirements of due process, Plaintiffs must be given reasonable notice and opportunity to be heard on this issue.[13] "[I]t is a fundamental principle of tort law that there is no tort without a harm […] and so until the harm occurs, the tort hasn't occurred." *Fogel v. Zell*, 221 F.3d 955, 960 (7th Cir. 2000); *see also In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017 (7th Cir. 2002) ("No injury, no tort, is an ingredient of every state's law."). Courts have consistently found that plaintiffs were injured when their IVC filter perforated the caval wall. In Tillman *v. C.R. Bard, Inc.,* 96 F. Supp. 3d 1307, 1314 (M.D. Fla. 2015) ("Well known filter complications include ... penetration or perforation[.]"); *id.* ("[T]he list of potential complications in the IFU includes ... the perforation or other acute chronic damage of the IVC.") *In re Cook Med., Inc., IVC Filters,* 431 F. Supp. 1033, 1042 (Jan. 6, 2020) ("Based on this evidence, a reasonable jury could conclude that but-for the Celect's propensity to perforate progressively, Plaintiff's injury would not have occurred."); *Bailey v. B. Braun Med., Inc.*, No., 2021 WL 5037619, at *3 (N.D. Ga. Sept. 3, 2021), *reconsideration denied*, 2022 WL 591467 (N.D. Ga. Jan. 10, 2022). The Bard EVEREST

---

[12] SM Lyon, MF Given, BC McDonald, P Brookfield, et al. *Retrievable Gunther Tulip inferior vena cava filter Experience in 317 patients,* Journal of Medicine and Radiation Oncology, 2008 ed. 52, 452-457.
[13] It must be noted that the Lyon study, using either definition of perforation, Cook incorrectly reported that there were zero "perforations," which has been proven by expert review as "fraught with errors." *See* Harlan M. Krumholtz Report, pg. 9-17. **Exhibit I**.

Study defined perforations as "unacceptable risk" of harm. *Munson v. C.R. Bard, Inc.,* WL 4261595, at *4 (N.D. Miss. Sept. 20, 2021). Courts have upheld this definition of perforation as a legally cognizable claim. *Id.* (Mr. Bailey has alleged a legally cognizable injury based on the filter's perforation of his caval wall.). Plaintiffs, their experts, and other courts have stated that perforation of the IVC is not only an injury but a "legally cognizable injury." At a minimum there are disputed issues of fact and law. And finally, it is of no import that Plaintiffs' experts agree with the definition in the CCF and CMO-30. That agreement is not coterminous with agreeing it is the one and only way to determine if a perforation is present or the only metric that may be used as currently set forth in CMO-30. As set forth above it is not. For these reasons CMO-30 must be vacated, and Plaintiffs must be given reasonable notice and opportunity to be heard on this issue under due process.

### 4.  CMO-30 Violates the "Law of the Case," Unfairly Springing a Trap on Plaintiffs.

For three years the CCF served the parties and Court well for its one intended purpose— selecting Bellwether cases for trial. Now, after the selection process, Cook objects to the submissions made pursuant to the CCF. CMO-30 is not needed for or to advance the Bellwether process or to ensure compliance with the Court's case categorization orders as falsely claimed by Cook. The CCF defines the categories for the Bellwether process and what must be submitted by Plaintiffs in support of the CCF. The CCF also includes instructions for filling the CCF.

> Once the appropriate category is marked, the claimed **outcome/complication/injury** must be briefly described. For example, the description can be "asymptomatic perforation," "failed retrieval attempt," "fractured filter with retained fragment," "emotional distress claim," etc.

CCF at 2 (emphasis added). In support of the categorization, the CCF instructs as follows:

> The category selected must be supported by attaching specific medical record(s) confirming the injury/complication/category selected, with the relevant line or portion highlighted.

The category selected must be supported by medical records confirming the injury, complication, or category.[14] By the terms of the CCF, once subcategory (e) is selected the Plaintiff merely needs to identify the **symptom, condition, complication, injury, or outcome** caused by the "condition" of having a "filter strut or anchor extending 3 or more mm outside the wall of the IVC as demonstrated on imaging" and submit one or more records confirming one or more of the "injury/complication/category selected."  The sufficiency of a 3 mm perforation for a Category 7(e) designation, without further "symptoms" is clear from the fact that a different category exists for "perforations" without such a measurement:  Category 6. The textual differences between these categories support the notion that a perforation is considered "symptomatic" within the meaning of Category 7(e) if a measurement establishes a perforation of at least 3 mm. CMO-30 *post facto* changes the requirements of the CCF and then uses language in CMO-30 that appears nowhere in any CCF and threatens show cause orders for violations of the CCF that never existed in the first place—all of this in a CCF form whose instructions clearly outline it is never to be used for any such purpose.

At the Court's direction and at Cook's behest the parties proceeded for years as outlined above. In fact, Cook filed a motion to dismiss matters for failure to submit the CCFs themselves or for failure "to provide a specific medical record supporting their chosen category." *See* Dkt. 10063 (original motion) and Dkt10211 (2nd amended Motion). The Court granted Cook's Motion, dismissing those cases on May 8, 2019. Dkt. 10622.

---

[14]The *slash* or *virgule* is a forward sloping line (/) that serves as a mark of <u>punctuation</u>. Also called an *oblique*, an *oblique stroke*, a *diagonal*, a *solidus*, a *forward slash*, and a *separatrix*. The slash is commonly used to: signify alternatives (*and/or*). . . <u>https://www.thoughtco.com/slash-virgule 1692104#:~:text=The%20slash%20or%20virgule%20is,signify%20alternatives%20(and%2For)</u>.

For over three years the parties and the Court proceeded under the CCF as the law of the case for categorizing cases and submitting medical records for pretrial proceedings governed by the MDL. *See Looper v. Cook, Inc.*, 20 F.4th at 390. From the scant record from the case management conferences, the premises for Cook's argument for CMO-30 appears to have been not that Plaintiffs did not submit CCFs, filled them out incompletely, or failed to submit any medical records that support the case categorizations. Indeed, the Court has already addressed those issues. Instead, Cook has raised a new claim, made during case management conferences without evidentiary support, that "51 percent of people have no supporting records that mention the word perforation and no mention of any measurement beyond the caval wall."[15] But the CCF does not require the Plaintiffs submit records that "mention" these words or phrases. Even when submitting records to support their categorization of "penetration or perforation" it is sufficient to submit the CT scans or other test results that Cook and its experts can review just as easily as Plaintiffs' experts. There has been no violation of the CCF by Plaintiffs, and Cook does not even appear to argue that there has been. This is evident from Cook's previous efforts regarding the CCF. Regarding its motion to dismiss for failure to comply with the CCF Cook stated "[t]he Cook Defendants have **re-reviewed every case categorization submission to ensure the accuracy of this amended motion**." Since then, Cook never objected to the CCF or Plaintiffs submissions and never notified Plaintiffs of any deficiencies under CMO 4 governing the enforcement of the CCF.

The vague and unsupported "statistics" claimed by Cook do not support a contention that Plaintiffs have violated the CCF and certainly do not justify CMO-30 which retroactively changes the definition of "Symptomatic Cases" under Category 7(e) and adds new requirements and submissions to comply with case designations under Category 7(e).

---

[15] Transcript of Case Management Conference Hearing on November 9, 2021, CMC at 54:12-14.  *See* **Exhibit A.**

> A plaintiff may tailor her litigation strategy to the current state of play in the MDL and should not have a trap sprung on her based on a retroactive change of the ground rules.

*Looper v. Cook, Inc.*, 20 F.4th at 397. Plaintiffs should not be punished for complying with the CCF and performing consistent with Cook's and the Court's earlier positions. CMO-30 violates the opportunity to be heard at a "meaningful time and in a meaningful manner" and should be vacated.

### III.     CMO-30 UNFAIRLY IMPOSES UNDUE BURDENS ON PLAINTIFFS

CMO-30 presumes thousands of non-bellwether plaintiffs failed to comply with the Court's Order on Cook Defendants' Motion for Screening Order and Bellwether Plan (Dkt. 9322) and the Court's Categorization Order (Dkt. 9638). This presumption ignores the case history of the Court's Categorization Orders **and the Defendants' failure to identify alleged deficiencies for over three years**.

### A.     Compliance with CMO-30 Under its Strictest Interpretation Is Unattainable in the Timeline Created.

CMO-30 requires plaintiffs to marshal case specific discovery, including "expert testimony, in a now-running 60-day timeframe. Cook has told the Court in both the CMC and in its recent Response in Opposition to Extend the Deadline For Compliance that CMO-30 merely requires Plaintiffs to provide the medical records they should have already produced with the CCF. Dkt. 21966 at 4. However, this is not accurate. On its face, CMO-30 appears to require further case-specific expert testimony (which it should not). Given there are nearly 4,000 cases, it is impossible for Plaintiffs to meet under the presently imposed deadline. Nonetheless, Cook has proposed an extension of only 30 days and agrees to that extension alone. That is simply not enough time.

As discussed above, in conjunction with their CCFs, Plaintiffs have provided medical records and imaging to support their claimed injuries and failures. For perforation cases, that evidence may be a medical record indicating the perforation, imaging of the filter that demonstrates the existence of the perforation, or some form of expert report that identifies the failure/injury. That evidence is sufficient to meet a *prima facie* showing to substantiate their claims. In the case of imaging, Cook has been provided the evidence and has equal opportunity to review it to assess whether it (or its experts) believe the evidence substantiates the claim. Additionally, the CCF instructed Plaintiffs to "briefly describe the symptomatic injury." The CCF Instructions also provided specific examples of what was sufficient to comply with the CCF, *including for those Plaintiffs alleging IVC filter complications. See* CCF Submission Instructions ("Once the appropriate category is marked, the claimed outcome/complication/injury must be briefly described. For example, the description can be '**asymptomatic perforation**,' '**failed retrieval attempt**,' '**fractured filter with retained fragment**,' '**emotional distress claim**,' etc."). Dkt. 9638-1. Based upon these specific instructions and examples, a Plaintiff with a category 7(e) claim of filter perforation/penetration follows this Court's Categorization Orders simply by identifying their Plaintiff's category as a category 7(e) and briefly describing the claimed outcome/complication/injury as "symptomatic perforation." These are the instructions given over three years ago, and these are the instructions Plaintiffs' firms relied upon when completing their individual Plaintiff's CCFs. Plaintiffs were never expected to provide an affidavit from themselves or their doctor attributing their IVC filter definitively to their claim of chest pain, abdominal pain, leg pain, or other symptoms they have or are experiencing under the CCF guidelines. Only identification (with supporting records, scans, or a consulting report) of the claimed outcome/injury/complication was required to be fully compliant with this Court's orders. Furthermore, when a Plaintiff identified an IVC filter complication, nothing in the Orders required

a Plaintiff to provide proof of a "present physical impairment or physical harm*" beyond the identified complication itself.*

Nothing in the Orders required a Plaintiff to provide proof of a "present physical impairment or physical harm*" beyond the identified complication itself.* For this reason, the bulk of Plaintiffs' counsel relied upon their Plaintiff's representations regarding what symptoms they attributed to their individual filter complications and/or simply provided proof of the complication itself in full compliance with the Orders. Similarly, the CCFs ask what Plaintiffs are **alleging**, not what proof they have/would need for **trial**. This is another reason CMO-30 should be vacated.

Plaintiffs should not be punished for complying with the CCF and CMO-4 governing its enforcement. Cook's unsupported statistical analysis appears to claim only that the medical records some Plaintiffs submitted are allegedly ambiguous in showing a perforation meeting the definition in Category 7(e). But that is not coterminous with a violation of the Court's orders and does not provide a basis for CMO-30. The CCFs *never required case-specific expert testimony to support a symptomatic injury perforation case.* Indeed, the CCF has never required any plaintiff to show any symptomology or injury (as opposed to, for instance, a complication. Now plaintiffs are seemingly required to provide medical evidence of an injury in the CCF form or to prove what symptoms there are outside of the perforation itself which such requirements appear nowhere in the CCF forms.  And if they do not do so now, they subject themselves to show cause proceedings with the death penalty staring at them at its end.  They must now provide medical evidence in a case categorization form not just that they have a perforation but that their perforation has caused an injury or symptomology outside of the fact that a hole has been created in their vena cava and that the strut can continue to proceed into an organ or vessel if it has not already.  And as CMO-30 currently is worded if there are no symptoms or there is no other evidence of "injury" even those with perforations extending into organs or vessels or the spine will likely have their cases

dismissed after an order to show cause why they have not proven some *other* injury. Additionally, under CMO-30 plaintiffs are being required to submit expert disclosures (a) on an expedited timeframe for thousands of cases and (b) without any corollary obligation on Cook to make its own expert disclosures on the same subjects imposed on Plaintiffs.

Cook has utterly failed to meet its burden to show the relevance of the expert discovery necessary to be sought in individual cases at this time. The burden should never have been shifted to Plaintiffs. *Hadley*, 2018 WL 2180253, at *3. It is for Cook to prove the nonexistence of fact issues in summary judgment proceedings (the appropriate course of proceeding to dismissal of cases should Cook believe there to be no genuine issue of fact), and it is Cook's burden even in those proceedings. Even if Cook had demonstrated the need for such expert discovery at this stage, which it has not, "discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." *Id*. Simply, there is no reasonable way for Plaintiffs to obtain expert reports in thousands of cases in six months, let alone 60 days. There are a limited number of testifying experts across these thousands of cases; arguably each case report requires an expert to review the imaging in question, make findings, and draft and finalize a report. In any given case, that can be dozens or depending on the numbers of cases a law firm may have filed, possibly hundreds of hours of work. Across the hundreds of cases that experts will be asked to address, that is months of work even where such expert is not maintaining a private medical practice (which most of them do).

Further, the expert testimony that CMO-30 presumably requires may require additional imaging or testing. Arranging and completing any additional testing and preparing an expert report for thousands of cases will take at least six months—assuming testing and the experts, which are limited in number, may not be readily available, and/or able to dedicate the required time for each

plaintiff's case. The result will be that many Plaintiffs (if not most) will be unable to comply with CMO-30 – not because their case fails to meet the requirements of an injury based on the evidence – but because they will not be able to procure an expert report in the fast-track schedule required by the order.

Alternatively, many Plaintiffs have relied on consulting experts to provide the information that interprets the underlying evidence (the scans) to substantiate their claims. Again, Plaintiffs have made available the underlying evidence to Cook, which Cook's experts can review and make their own determinations. However, faced with the prospect of dismissal for failing to provide a testifying expert report, those Plaintiffs will be put to a Hobson's choice: disclose information protected under Federal Rule of Civil Procedure 26(b)(4)(D) or have their case dismissed.

CMO-30 should be vacated, and plaintiffs should be afforded a fair opportunity to obtain the case-specific evidence needed to address these issues and a fair opportunity to present them in Court in the event this Court determines CMO-30 requires such evidence.

**B.    CMO-30 is Duplicative and Unnecessary for Plaintiffs Who Wholesale Failed to Produce a CCF or Supporting Medical Records.**

At the very least, it is CMO-4 that should be followed for cases in which a Plaintiff has failed to submit any records at all and/or failed to serve a CCF. The Court has already set up a docket control system for Plaintiffs who have not complied with Fourth Amended CMO-4, which includes submitting a Case Categorization Form and supporting medical records. The procedure for dealing with these types of CCF deficiencies has been in place for over three years. Via CMO-30, Cook has convinced this Court to place the burden of identifying alleged CCF deficiencies on Plaintiffs, and presumably will seek dismissal of thousands of cases on the basis of vague deficiencies in the CCFs. Cook never provided the Court or Plaintiffs any basis as to why they must certify <u>again</u> that the records produced with Plaintiffs' CCFs are compliant. As Cook has

29

recognized, Plaintiffs were already required to certify that "the medical records available to the attorney, and specifically the medical records submitted with the categorization form, support the categorization." Dkt. 21966 at 4. Tellingly, Cook never mentioned CMO-4 when it raised deficiencies with the CCFs submitted by Plaintiffs during its efforts seeking the adoption of CMO-30. (July 1, 2021, CMC and November 9, 2021, CMC).[16] This, of course, is because CMO-30 changes, *post facto*, CMO-4 and the requirements of the CCF and adds to them requirements that never existed. Plaintiffs did not ignore or fail to comply with the CCF or CMO-4 but are being punished for it.

Furthermore, during the Bellwether selection process, using the CCFs as a guideline, Cook told several Plaintiffs' firms to recategorize their Plaintiffs' CCFs from a 6 to a 7, because "Category 7 is not limited to symptoms but also conditions and complications." *See* Declaration of Basil E. Adham attached as **Exhibit J** at ¶8. These Plaintiffs' firms did as Cook asked and encouraged them to do only for it now to be used as a mechanism to try and falsely claim Plaintiffs are trying to "game the system," when it is really Cook who is the game show host. Thus, Cook, has *itself* to blame for hundreds of Plaintiffs' conversion to category 7(e). Since this time, firms like Johnson Law Group have filed hundreds of additional 7(e) cases based on the conversations they had with Cook and Cook's representations of what is and is not defined as a 7(e) Symptomatic Injury.

**C.     Ambiguities in CMO-30 Render It Unworkable.**

The order Cook drafted, and this Court adopted, skews the definitions in the CCF and foists requirements on Plaintiffs not contained in the form. Without reconsideration, amendment, or, at the very least, clarity, thousands of plaintiffs in this MDL could unknowingly be subject to Orders

---

[16] Additionally, on at least four separate occasions, Cook has filed Notices of Non-Compliance Pursuant to Fourth Amended CMO-4, for Plaintiff's failure to serve proper CCFs. (*See, e.g.,* Dkt. 13703, Dkt. 14038, Dkt. 14422, Dkt. 21899).

to Show Cause as to why their cases should not be dismissed without due process. Among other ambiguities, the Order does not address:

- Whether Plaintiffs have not complied with CMO-30 if the filter perforation/penetration is identified by "grade" rather than a specific millimeter measurement;[17]

  Whether Plaintiffs have not complied with CMO-30 if the perforation/penetration is identified as abutting adjacent organs, but without a specific millimeter measurement identified[18];

- Whether CMO-30 applies to a plaintiff alleging filter perforation/penetration, *in addition* to other categories of injuries in the CCF;

- Whether CMO-30 applies to a plaintiff alleging filter perforation, supported by medical records using the medical term, "perforation," given the SIR **defines** "perforation" to means struts protruding outside the caval wall by 3 or more millimeters and any doctor should be assumed to understand the term and to use it properly;[19]

- What additional evidence is sufficient under CMO-30, beyond the medical records submitted by Plaintiffs, "that the documented protrusion has caused a present physical impairment or physical harm;" and[20]

- Whether a described "complication" in a medical record satisfies CMO-30 given the CCF contains the word "complication," which Cook omitted from CMO-30 before tendering it to the Court.

---

[17] IVC filter perforation/penetration of grade 2 or higher is defined as 3 mm or more perforation. Volume 266:1 Dr. Lu Anne v. Dinglasan, MD, MHs et al., *Complicated Inferior Vena Cava Filter Retrievals: Associated Factors Identified at Preretrieval CT,* Pg. 349 (January 2013).

[18] According to Cook, Plaintiffs would be non-compliant with CMO-30 if this is all the medical evidence Plaintiffs have provided. 21966-1. Plaintiffs disagree.

[19] Pursuant to the Revised 2016, ACR-SOR-SPR Committee of Practice Parameters- Interventional and Cardiovascular Radiology, *ACR-SIR-SPR Practice Parameter for the Performance of Inferior Vena Cava (IVC) Filter Placement for the Prevention of Pulmonary Embolism*, (Resolution 18) at 3.

[20] The CCF requests that the Plaintiff "briefly describe the claim of symptomatic injury." The instructions for completing the case categorization form require medical records confirming the "injury/complication/category selected." Nothing in the case categorization form, its instructions, or in the Court's orders related to the case categorization form indicated that the medical records *must specifically tie the symptoms alleged to the filter complications identified* or else the CCF was deficient. Causation, as in nearly all medical device cases, is determined on the basis of expert testimony, not medical records from treating providers, assuming a particular Plaintiff has sought treatment to begin with.

## IV.    AT A MINIMUM CMO-30 MUST BE CLARIFIED AND AMENDED

Alternatively, Plaintiffs request CMO-30 be amended and clarified. It is counsel's understanding that the Court's intent in entering CMO-30 is to possibly weed out the "lowest hanging fruit," i.e., cases with very minimal perforation (less than 3 mm) and no symptoms. As discussed above, a CMO is not an appropriate vehicle for making a substantive determination about which claimants have sustained an actionable injury. Even if the Court could do so, Plaintiffs need clarification regarding the above-stated issues and ambiguities. If Plaintiffs read CMO-30 in the strictest sense, this CMO may capture cases involving fractures, occlusion, and other complications, all because the records do not indicate the exact perforation measurement or because the records do not state which symptoms, if any, are tied to which complication, and subjects those cases to possible dismissal. To the extent Cook believes that further screening of cases is necessary, an Amended CMO-30 should require Cook to reach out to individual Plaintiffs' counsel regarding which cases it believes are deficient, and there should be a meet and confer process. Plaintiffs suggest that Cook be given sixty days from the date of an Amended CMO-30 to identify any CCFs it currently believes are deficient and reach out to associated counsel of record for each case.

During the meet and confer process, Cook should be required to set forth its basis for the alleged deficiencies, including providing Plaintiff with whatever evidence Cook must establish the CCF is deficient. Cook should likewise identify whether its deficiency is premised on Plaintiff's failure to serve a CCF and/or medical records or whether its deficiency is premised on Cook *disputing* Plaintiff's factual allegations of a symptomatic perforation/penetration filter injury supported by medical records, imaging, or reports produced in tandem with the CCF. With respect to Plaintiffs who have not served a CCF and/or medical records, the procedures outlined in CMO-4 still apply.

With respect to cases in which a dispute has arisen because Cook alleges the factual allegations of the CCF are insufficient, further discussion amongst the parties is needed. Plaintiffs' lead counsel and counsel for defense should meet and confer as to what motion practice should be permitted in the event Cook continues to claim CCFs are deficient after the meet and confer process, including cases in which the dispute involves the sufficiency of any individual Plaintiff's proof provided in support of their CCF.

## V.  CONCLUSION

A Rule 41(b) motion to dismiss is not the appropriate vehicle for the parties to dispute fact-issues and evidence. It is a violation of Plaintiffs' right to due process. If Cook seeks to test Plaintiffs' CCF submissions *as evidence* of a lack of a *legally cognizable injury* in these non-bellwether cases, it needs to do so by coming forward with its own evidence and showing that the individual Plaintiff's IVC filter perforation/penetration is less than 3 mm so that the slight protrusion cases are dealt with as Plaintiffs believe this court may have intended, and then providing adequate time in each case for (i) expert reports and *Daubert* motion practice. None of this can be accomplished in 60 days for allegedly 4000+ Plaintiffs. CMO-30 will eventually operate as a tool in dispositive motion practice if left in its current form abrogating the requirements of summary judgment motion practice. Cook should be required to file dispositive motions under appropriate standards not conveyor belt dismissals under an administrative case categorization form intended to streamline the bellwether process and nothing else.

Even setting aside the issues with interpreting and complying with CMO-30, the order retroactively changes the requirements and definitions of the Court's Categorization Orders. Thousands of Plaintiffs have been implicitly deemed in compliance by both Cook and this Court since the CCFs were put in place; not only were their CCF submissions sufficient to select the next wave of Bellwether picks but Cook failed to raise any issues with the CCFs for *years*. Moreover,

in direct contradiction to the CCF instructions themselves, CMO-30 omits IVC filter perforation/penetration as a sufficiently identified "complication" for a category 7(e) symptomatic injury case. This pulls the rug out from under possibly thousands of plaintiffs who timely complied with the Categorizations Orders years ago.

Therefore, for all these reasons, Plaintiffs respectfully request that the Court reconsider and vacate CMO-30. Alternatively, and at a minimum the Court should (a) clarify Plaintiffs' questions regarding CMO-30 and (b) adopt Plaintiffs' amended process set forth above.

Dated:  May 23, 2022.  

*/s/ Joseph N. Williams*
Joseph N. Williams, (# 25874-49)
Riley Williams & Piatt, LLC
301 Massachusetts Avenue, Suite 300
Indianapolis, IN 46204
Telephone: (317) 633-5270
Facsimile: (317) 426-3348
Email: jwilliams@rwp-law.com
*Liaison Counsel to Plaintiffs' Steering*
*Committee and on behalf of Plaintiffs' Steering*
*Committee*

*/s/ Michael W. Heaviside*
Michael W. Heaviside, Esq.
Heaviside Reed Zaic, A Law Corporation
910 17th Street NW, Suite 800
Washington, DC 20006
Telephone: (202) 233-1993
Email: mheaviside@hrzlaw.com
*Plaintiffs' Co-Lead Counsel*

*/s/ Ben C. Martin*
Ben C. Martin, Esq.
Martin Baughman, PLLC
3141 Hood Street, Suite 600
Dallas, TX 75219
Telephone: (214) 761-6614
Facsimile: (214) 744-7590
Email: bmartin@martinbaughman.com
*Plaintiffs' Co-Lead Counsel*

*/s/ David P. Matthews*

David P. Matthews, Esq.
Matthew and Associates
2509 Sackett St.
Houston, TX 77098
Telephone: (713) 522-5250
Facsimile: (713) 535-7184
Email: dmatthews@thematthewslawfirm.com
*Plaintiffs' Co-Lead Counsel*

## CERTIFICATE OF CONFERENCE

I certify that on April 26, 2022, Plaintiffs' counsel Michael Heaviside, Joseph Williams and Ben C. Martin had a conference call to meet and confer with Cook's lawyers regarding CMO 30, and either vacating or amending it, all in an attempt to reach an agreement. Andrea Pierson, Jessica Cox, and Steve Bennett identified themselves on the call and discussion was had. No agreement could be reached.

*/s/ Ben C. Martin*

Ben C. Martin

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2022 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

*/s/ Ben C. Martin*

Ben C. Martin