# EXHIBIT C




JOSEPH N. WILLIAMS
Attorney at Law

The Hammond Block Building
301 Massachusetts Ave. Suite 300
Indianapolis, IN 46204
**T: 317 | 633 | 5270 F: 317 | 426 | 3348**
joe@williamspiatt.com

November 22, 2021
***Via Email: tina_doyle@insd.uscourts.gov***

Judge Richard L. Young
c/o Tina Doyle, Courtroom Deputy
U.S.D.C. for the Southern District of Indiana
Indianapolis Division
46 East Ohio Street
Indianapolis, IN 46204

Re: *In Re: Cook Medical, Inc.* (MDL 2570)

Dear Judge Young:

Cook tenders two proposed orders and a proposed stipulation of voluntary dismissal. We object to these orders. Instead of "controlling the docket," they trample the rights of hundreds of people and will simply shift the caseload burden from this Court to the Circuit Court. Here are the objections:

1. **"Case Management Order No. 30: Screening Order for Symptomatic Perforation"**

This order is based upon Cook's false presumption that if a physician does not include in her chart a specific measurement (e.g., "4mm") to accompany the word "perforation," then the "perforation" must not be a "perforation" at all. This is absurd. If Cook is correct, then we must believe that when a physician uses the word "perforation" she means something **other** than how the medical community defines that word. It's based on this absurd notion that Cook asks the Court to enter the order.

The effect of the order will force a significant number of patients to be unnecessarily re-imaged, meaning unnecessary cost and unnecessary radiation exposure. But re-imaging wouldn't be enough under Cook's proposal – each plaintiff (or her attorney) would still have to tell each image-reading doctor to include an actual measurement of the perforation in medical records. Simply using the word "perforation" wouldn't suffice under Cook's proposal; Cook wants to require a measurement. All this despite





the fact that the Society of Interventional Radiologists **defines** perforation to mean a filter strut protruding 3mm or more outside the caval wall.

The "relief" Cook seeks in the order is also problematic. The order would require a plaintiff to **voluntarily** dismiss his claim (forgoing the right to appeal) or else be potentially subject to sanction. Under Cook's proposal, the Court would be threatening litigants with potential sanctions for exercising their rights.

Finally, any suggestion that the PSC should check over Cook's work when individual people's rights are at issue creates a significant problem of representation. The PSC does not have an attorney-client relationship with these folks; individual lawyers do. If Cook wants cases dismissed, it needs to file a motion so that each individual plaintiff is given notice and the opportunity to be heard before their case is dismissed.

**2. "Docket Control Order: Regarding Asymptomatic No-Injury Cases"**

This proposed Order comes with many of the same problems. Right now, there is a single decision from this Court (interpreting only the laws of Texas and Kentucky) finding that without symptoms, a perforation is not an injury as a matter of law. That's it. Based on this decision that Cook asks the Court to order that every asymptomatic plaintiff—from all 50 states—either dismiss their case voluntarily or potentially be subject to sanctions. For those who haven't filed yet, Cook proposes they be sanctioned if they file a lawsuit and do not have symptoms.

If Cook wants a case dismissed, it should do what every litigant does: file a motion. That gives each individual person the ability to respond, be heard, and appeal if they lose. These are not throw-away concepts that can be disregarded in the name of "efficiency"; these are the cornerstones of our democratic system of justice. If Cook wants the Court to dismiss a case, it needs to file a motion, provide evidence in support, and the legal authority justifying the request.

Finally, Cook has included (as it has in the past) language requiring every case that is eventually refiled to be refiled in the Southern District of Indiana. Apart from guaranteeing this District sees a steady stream of Cook filter cases long past the conclusion of this MDL, a Plaintiff has the right to choose the venue. Cook should not be allowed to attempt to take these future rights by including language requiring any filter case to be filed here.

**3. "Stipulation of Voluntary Dismissal of Asymptomatic Case[s] Without Prejudice"**

This proposal has the same problem requiring cases to be re-filed in the Southern District of Indiana. *See supra.*

Further, if the Court dismisses cases based upon an issue the Circuit Court will be reviewing (i.e., whether an asymptomatic perforation is an injury), the Court simply transfers that portion of the docket to the Circuit Court. The prudent course of action would be to allow the appeal process to play out: if Cook is right, then the court system and the parties will have saved all the time and expense in prosecuting the appeals; if Cook is wrong, then we saved all the cost and expense that goes along with dismissing cases that should have never been dismissed in the first place. In either case, the most efficient solution is to allow the appeal process to play out in the cases affected by this Court's order finding no injury.

**4. Moving forward**

If we choose, we can spend the next few years entering order after order and trying lawsuits that may not be worth the cost of trying them, or we can do things that might get us closer to wrapping this up. The Court made three suggestions at the last status conference: in-chambers meetings, partial remand order, and meeting with individual firms/Cook to discuss docket settlements. We believe these ideas have a chance to move the ball and that's where our focus should be.

Sincerely,

WILLIAMS & PIATT, LLC

Joseph N. Williams

JNW/mll
cc via email: Michael W. Heaviside, Esq.
Ben C. Martin, Esq.
David P. Matthews, Esq.
Andrea Roberts Pierson, Esq.
Jessica B. Cox, Esq.
James Stephen Bennett, Esq.



faegredrinker.com

**Andrea Roberts Pierson**
Partner
andrea.pierson@faegredrinker.com
+1 317 237 1424 direct
+1 317 414 0459 mobile

**Faegre Drinker Biddle & Reath LLP**
300 North Meridian Street, Suite 2500
Indianapolis, Indiana 46204
+1 317 237 0300 main
+1 317 237 1000 fax

December 3, 2021

**VIA CM/ECF**

Judge Richard L. Young
c/o Tina Doyle, Courtroom Deputy
United States District Court for the Southern District of Indiana
Indianapolis Division
46 East Ohio Street
Indianapolis, IN 46204

Re: MDL Docket No. 2570

Dear Judge Young:

Asymptomatic product-in-place cases have significantly slowed the progress of this MDL. At the same time, the largest group of cases in this MDL are Category 7(e) Perforation cases, which make up 51% of the MDL. After resolution of the asymptomatic product-in-place cases, the next category of cases in which the Court and parties clearly must make progress is Category 7(e).

Cook suggested during the July and November status conferences two docket control orders that allow the Court to make real progress toward resolution of this MDL in these two groups of cases, which collectively make up 79% of the MDL. The Court should enter those proposed orders.

**1. A screening order and docket control order are necessary.**

In May of 2018, there were approximately 1200 Product-in-Place/No Injury Cases. Today, there are more than 1850 such cases. While Plaintiffs are dismissing cases by the drop, they continue to be filed by the bucket, even after this Court's ruling in *Parton* and *Sykes* that a plaintiff who is asymptomatic does not have a legally cognizable injury.[1]

[1] "[I]t is a long-existing and fundamental maxim of the Anglo-American tort law that wrong without damage . . . is not actionable and does not give rise to any claim or cause of action." 1 *American Law of Torts* § 1:11 (2020); *see also* Dan B. Dobbs & Paul T. Hayden, *The Law of Torts* § 125 (2d ed. 2019) ("Negligence law grew out of the old common law action on the Case and carried over its requirement that the plaintiff cannot recover without showing actual harm resulting from the defendant's conduct."). "The threat of future harm, not yet realized, is not enough." Prosser & Keeton, *The Law of Torts* § 30 at 165 (5th ed. 1984); *accord* 22 Am. Jur. 2d *Damages* § 18 (2021).

Over the course of the past year we have also seen filings of Category 7(e) "symptomatic perforation" cases skyrocket. Today, Category 7(e) cases make up more than half of this entire MDL at over 4250 cases. Over the prior six months, 85% of newly-filed cases fall into Category 7(e). Worse, it appears more than 50% of these plaintiffs have failed to submit the proof required by this Court to establish they have a perforation of at least 3 mm that is causing actual symptoms indicating a cognizable injury.[2]

Together, No Injury Cases and Category 7(e) Perforation cases make up **79% of the MDL.** And yet, Plaintiffs assert these cases require no particular attention. Ignoring asymptomatic cases and Category 7(e) Perforation cases ignores 4/5ths of the MDL. The Court's intervention therefore is required.

**2. The Court has the power to enter Cook's proposed orders.**

Despite Plaintiffs' claims, a screening order is not unprecedented and does not offend the "cornerstones of our democratic system of justice." To the contrary, screening orders are "routine" and well within the "wide latitude" afforded MDL courts in managing litigation. *In re Avandia Marketing, Sales Practices & Prods. Liab. Litig.*, 687 F. Appx. 210 (3d Cir. April 19, 2017); *see also In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2012 U.S. Dist. LEXIS 56309, at *5 (E.D. La. Apr. 23, 2012) (noting screening "orders [are] appropriate" because "it is not too much to ask a Plaintiff to provide some kind of evidence to support their claim that [a product] caused them personal injury"). The "basic purpose of a Lone Pine Order [*i.e.*, a screening order] is to identify and cull potentially meritless claims and streamline litigation in complex cases involving numerous claimants, and they may be issued at any time." BOLCH JUDICIAL INSTITUTE, DUKE LAW SCHOOL GUIDELINES AND BEST PRACTICES FOR LARGE AND MASS-TORT MDLS, p. 104 (2d ed. Sept. 2018). When deciding whether to issue such an order, the court should weigh the circumstances of the particular litigation, including: (1) how mature it is; (2) whether there is an actual showing that spurious or non-meritorious cases exist; (3) availability of other procedures provided for by statute; and (4) the type of injury alleged and its cause. *Id.*; *In re Digitek Prods. Liab. Litig.*, 264 F.R.D. 249, 256 (S.D. W.Va. 2010).

There is no shortage of recent cases in which courts have entered similar screening and docket control orders. Here are just a few:

- *Hamer v. Livanova Deutschland GMBH*, 994 F.3d 173 (3d Cir. 2021) (holding screening orders requiring preliminary discovery are proper in MDL cases, with the goal of winnowing meritless cases)
- *In re Xarelto (Rivaroxaban) Products Liability Litigation*, 2021 WL 493069 (E.D. La. Feb. 10, 2021) (holding screening orders are routine in mass tort litigation and dismissing a case

---

[2] Plaintiffs argue screening orders are unnecessary in these cases so long as the word "perforation" appears in a plaintiff's medical records. But Plaintiffs ignore the fact that scores of plaintiffs have failed to submit even that much, let alone evidence linking any perforation to an actual adverse symptom.

for failure to provide a case-specific and product-specific causation opinion from a qualified expert).

- *In re Zimmer Nexgen Knee Implant Products Liability Litigation*, 2016 WL 3281032, slip op. (N.D. Ill. June 10, 2016) (entering screening order requiring each plaintiff in bellwether trial track in medical device MDL to identify particular injury claims and provide a signed expert declaration regarding causation in the form attached to the order).

- *In re Testosterone Replacement Therapy Products Liability Litigation*, 2018 WL 62588983 (N.D. Ill. June 11, 2018) (entering screening order).

- *Gbarabe v. Chevron Corp.*, 2017 WL 956628 (N.D. Cal. March 13, 2017) (same).

- *Trujillo v. Ametek, Inc.*, 2016 WL 3552029 (S.D. Cal. June 28, 2016) (same).

- *Modern Holdings, LLC v. Corning Inc.*, 2015 WL 64823744 (E.D. Ky. Oct. 27, 2015) (same).

- *Abner v. Hercules, Inc.*, 2014 WL 5817542 (S.D. Miss. Nov. 10, 2014) (same).

**3. The Court may condition dismissals on refiling in the Southern District of Indiana.**

Plaintiffs' suggestion that it would be improper to condition dismissals on refiling in this Court is equally incorrect. Under the express terms of FRCP 41(a)(2), an action may be dismissed "on terms that the court considers proper." "Dismissal is within the discretion of the district court and it may impose terms and conditions on the dismissal to ensure than no other party will be prejudiced; many courts do precisely that." 9 Fed. Prac. & Proc. Civ. § 2364 (4th ed.). A venue restriction "does nothing more than preserve, upon refiling, the status quo ante." *Versa Prods., Inc. v. Home Depot, USA, Inc.*, 387 F.3d 1325, 1329 (11th Cir. 2004). In keeping with this premise, the Court has conditioned prior dismissals in this very MDL on refiling in the Southern District. *See* Dkt. 10582 ("Plaintiff may refile his/her case in the MDL. If Plaintiff refiles his/her case in any jurisdiction other than the Southern District of Indiana, in MDL 2570, this dismissal will automatically convert to a dismissal with prejudice."); Dkt. 10632, 10632-1 ("Plaintiff may refile his/her case in the MDL. If Plaintiff refiles his/her case in any jurisdiction other than the Southern District of Indiana, in MDL 2570, this dismissal will automatically convert to a dismissal with prejudice."). There's no reason to depart from that practice now.

We respectfully ask the Court to enter the screening and docket control orders that Cook has submitted. Please do not hesitate to contact me if you have any questions.

Very truly yours,

Andrea Roberts Pierson

FAEGRE DRINKER BIDDLE & REATH LLP