# EXHIBIT F

# Declaration of Dr. Robert P. Allen, M.D.

May 22, 2022

## Introduction and Qualifications

I, Robert P. Allen, M.D., declare and state as follows:

I am over 18 years of age and competent to provide the testimony set forth in this Declaration.

I am a Board-Certified Diagnostic and Interventional Radiologist with Fellowship Training and a Certificate of Added Qualification (CAQ) in Vascular and Interventional Radiology My formal training took place at the University of Washington where I completed my Residency and Fellowship training in 1990. I am President of Radiology Specialists of Denver and Director of Vascular & Interventional Radiology.  I have served as Director of Interventional Radiology at Denver Health Medical Center for the past 15 years.  Denver Health is a 500 bed, Level 1 Trauma facility.  I have also served as Medical Director and President of Cherry Creek Imaging, a free-standing, multimodality, Outpatient Imaging Center in Denver

I have an academic appointment through the University of Colorado and am actively involved in teaching and supervising Radiology Residents and Interventional Radiology Fellows.  My full professional background is further detailed and set forth in my Curriculum Vitae, which is attached to this report.

I am familiar with the issues and the subject matter involved in the Cook IVC filter litigation *(Cook Medical IVC Filters MDL).*  As part of my current clinical practice, I personally perform and supervise a wide range of Interventional Radiology procedures, including the use of permanent and retrievable inferior vena cava ("IVC") filters for the prevention of pulmonary embolism.  I regularly diagnose and treat patients who have been diagnosed with deep vein thrombosis (DVT) and pulmonary emboli (PE).  At one time, I regularly implanted numerous  IVC filters, though it is seldom that I do so anymore, given my experience and knowledge of their complications and the lack of scientific proof that IVC filters actually work to perform their intended function.  However, I do see and evaluate patients,

implanted with IVC filters on a regular basis and require removal.  I am trained and competent in IVC filter retrieval using both standard and advanced endovascular IVCF retrieval techniques.

By way of historical background, IVC filters were designed to filter blood flow in the inferior vena cava, the largest vein in the body, that returns blood from the lower extremities, hips, pelvis, etc., to the right side of the heart.  If IVC filters were effective, they would "catch" or "trap" blood clots traveling up the inferior vena cava towards the heart and lungs and thereby prevent pulmonary emboli.  These blood clots are typically formed in the deep veins of the legs and/or pelvis, and the condition is commonly referred to as deep vein thrombosis or "DVT".  When these clots become dislodged from the veins in the legs and/or pelvis, they travel proximally through the vena cava and ultimately can reach the heart and lungs.  When these clots pass through the right side of the heart and lodge within the pulmonary arteries of the lungs, they are then referred to as "pulmonary emboli" or "PE" for short.  I am familiar with the medical literature relevant to IVC filters, including but not limited to the indications and contraindications for their use, as well as the risks and alleged benefits of implanting these devices over time.  I am also familiar with and have implanted and retrieved many different types of IVC filter devices, from various manufacturers, including Cook IVC filters.

My clinical experience with IVC filter patients, in combination with my education and training in the fields of Medicine and Radiology, and more specifically, the subspecialty field of Vascular and Interventional Radiology, along with my review of the case materials and the medical literature, form the basis for my opinions as rendered in this litigation.  All of my opinions, as stated herein, are based on a reasonable degree of medical probability and medical certainty, and on the established and fundamental principles of medicine that I (and physicians like me) employ in clinical practice on a daily basis.

## Materials Reviewed

In the course of my vascular and interventional clinical practice, and as a result of my ongoing involvement as a testifying expert in IVC filter-related litigation over the past decade, I have had the opportunity to review large numbers of peer-reviewed medical articles, clinical studies, case reports, biomechanical analyses, and a variety of other IVC filter-related documents.  I rely on that knowledge base

and on my clinical experience with IVC filters and IVC filter patients to form the opinions rendered in this matter.

The following articles are particularly relevant to the Cook CMO matter at hand:

**US District Court of Indiana - Cook Medical - CMO #30**

**SIR Practice Guidelines - 2014 and 2020**  *"ACR–SIR Practice Parameters for the Performance of Inferior Vena Cava (IVC) Filter Placement for the Prevention of Pulmonary Embolism"*

**Stephen E. Deso, MD, et al**  *"Evidence-Based Evaluation of Inferior Vena Cava Filter Complications Based on Filter Type "*  (*Journal of Vascular and Interventional Radiology 2011;22:70–74*)

**John C. Oh, MD, et al**  *"Removal of Retrievable Inferior Vena Cava Filters with Computed Tomography Findings Indicating Tenting or Penetration of the Inferior Vena Cava Wall"*  (*Journal of Vascular and Interventional Radiology 2011;22:70–74*)

## IVC Filter Strut Perforation Definitions & Discussion

Complications related to IVC filters, such as filter tilt, migration, strut perforation, embedment, strut fractures, strut fragment embolization, caval thrombosis, caval stenosis and adverse interactions of perforating struts with adjacent structures and organs are well-known and well-described in medical literature.

The issue at hand in the recent Cook Medical MDL Court Order (CMO #30) deals with a filter strut perforation through the IVC wall, the definition of strut perforation and the significance that a perforating strut represents to the patient. Therefore, I have been asked to provide more context and background as to the medical definition of perforation through the IVC wall and its gravity.

SIR Clinical Practice Guidelines (2014) refer to "strut penetration" as a filter-related complication associated with indwelling IVC filters over time.  The SIR Guidelines state that any strut extending beyond the caval wall a distance of 3 mm or greater (by CT imaging) is considered a perforating filter strut *("penetrating" per the original SIR language)*.  The updated SIR Clinical Practice Guidelines (2020) do not specifically include the "3 mm" definition for strut perforation, but reference

the earlier SIR Guidelines and also an abundance of associated medical literature for support.

While SIR Clinical Practice Guidelines are certainly useful and provide an abundance of clinical information, it's important to remember that they are, in fact, just guidelines. Indeed, the preamble included in the 2014 Practice Guidelines clearly states that this is the case:

> **PREAMBLE**
>
> This document is an educational tool designed to assist practitioners in providing appropriate radiologic care for patients. Practice Parameters and Technical Standards are not inflexible rules or requirements of practice and are not intended, nor should they be used, to establish a legal standard of care[1]. For these reasons and those set forth below, the American College of Radiology and our collaborating medical specialty societies caution against the use of these documents in litigation in which the clinical decisions of a practitioner are called into question.

The Disclaimer included in the 2020 SIR Practice Guidelines reiterates the same:

> **SIR DISCLAIMER**
>
> SIR develops clinical practice guidelines (CPGs) to provide educational resources to practicing clinicians to promote high-quality outcomes and patient safety in vascular and interventional radiology. CPGs are not fixed rules, nor are they the sole determinant of treatment choice, and are not intended to establish a legal standard of care. Use of the CPGs is voluntary, and a deviation from the recommendations should not automatically be interpreted as the delivery of care that is substandard. CPGs are not intended to supplant professional judgment, and a physician may deviate from these guidelines as necessitated by the individual patient, practice setting, or available resources. Other sources of information may be used in conjunction with these principles to produce a process leading to high-quality medical care. The ultimate judgment regarding the conduct of any specific procedure or course of management must be made by the physician, who should consider all circumstances relevant to the individual clinical situation. These guidelines are provided "as is," and SIR does not warrant the accuracy, reliability, completeness, or timeliness of the guidelines. SIR is not responsible for any actions taken in reliance on these guidelines, including but not limited to any treatment decisions made by any health care provider reading these guidelines, and SIR assumes no responsible for any injury or damage to persons or property arising out of or related to any use of these guidelines or for any errors or omissions.

SIR's reliance on the "3 mm" definition for strut perforation stems in part from imaging limitations imposed by CT scanners. CT scanning is the preferred and best method for evaluating IVC filter-related complications, particularly strut perforation, but CT scanners have limitations in terms of special resolution and not all CT scanners are the same. Some have much better performance capabilities than others.

Another consideration that enters into the "3 mm" definition has to do with IVC wall tenting. It's important to realize that the inferior vena cava is a thin-walled vessel. It's not a thick-walled artery like the aorta. Caval wall thickness, on average, is only 2 mm. When an IVC filter is implanted in a normal IVC, some degree of wall-

tenting is observed at those locations where the filter struts contact the caval wall. This is normal and expected, but when a strut erodes through the caval wall and creates a hole, then that strut has perforated the vessel. That's true whether the offending strut extends a single millimeter beyond the vessel wall or 20 millimeters beyond. A hole in the vessel wall is a hole in the vessel wall.

The difficulty comes when one is attempting to discriminate between tenting and early strut perforation by CT imaging. If the patient could be opened and the affected portion of the IVC examined directly, a perforation, regardless of how far the perforating strut extends through the hole, would be fairly obvious. That's obviously not practical and we're left with CT images to try and make the determination.

One could go further down the rabbit hole in terms of how we should actually measure the distance that a perforating strut extends beyond the caval wall, by pointing out that filter struts almost never perforate the caval wall at a 90-degree angle or in an orientation perpendicular to the vessel wall. They perforate at various angles. So, when radiologists measure strut perforation on axial imaging, as is commonly done, we (as radiologists) are actually underestimating the distance that the perforating strut extends beyond the vessel wall. Radiologists need to calculate the hypotenuse of the right triangle, or reformat the DICOM images off-axis for each perforating strut to measure the real distance. Neither of those options are very practical.

Another important clinical consideration is that "one size doesn't fit all" and one approach to identifying filter strut perforation doesn't work for everyone's anatomy. I have seen and been involved in numerous cases where a filter strut has clearly penetrated the caval wall and become embedded in an adjacent structure but wouldn't meet SIR's "3 mm" definition for perforation or as it is stated in CMO #30. To become embedded in an adjacent structure, the strut must have penetrated through the caval wall, yet, per the "3 mm" requirement, it wouldn't be considered as a perforating strut. In these patients, the IVC is positioned immediately adjacent to the aorta, duodenum or an underlying vertebral body. There is no anatomic separation between the IVC and the adjacent structure or organ, and any degree of strut perforation in these anatomic situations can be clinically

significant.  This is especially true in the case of the aorta, where a perforating strut penetrating into the aortic wall could have major adverse ramifications for the patient's health and well-being.

Physicians and other academic centers have proposed different options that can be used to identify filter strut perforation.  Dr. John C. Oh, for instance, has proposed a Grading System that uses the "halo sign" as a way of identifying a perforating strut, regardless of distance beyond the caval wall.  In Dr. Oh's classification system, any strut demonstrating the "halo sign" (a strut outside the IVC wall surrounded by retroperitoneal fat) would be considered a perforating strut and labeled as a "Grade 2" perforation.  "Grade 3" occurs when the perforating strut impinges or interacts with adjacent structures or organs.  Neither definition in Dr. Oh's system depends on distance outside the IVC to be considered perforation.  Ultimately, the "3 mm" definition for IVC filter strut perforation, as specified in CMO #30, is arbitrary.

## Summary Opinions

In conclusion, I would submit that the "3 mm" definition for IVC filter strut perforation, as specified in Cook Medical MDL CMO #30 is arbitrary, and has been adopted by convention based predominantly on the limitations imposed by CT scanners and CT images.   There are other alternative approaches for determining IVC filter strut perforation that are useful and equally valid.  Applying a strict definition and a requirement of "3 mm or greater" is not appropriate for every patient and may well disadvantage some patients who have significant filter-related injuries and damages without meeting the "3 mm or greater" requirement.  Regardless, as stated above, the perforation itself of the IVC whether it is one millimeter or 20 has caused an injury to the IVC.

My opinions herein are based on my systematic review of scientific and medical literature, the materials and medical records/films in this case, and my clinical experience, education, and training.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and expertise.

Sincerely,

Robert P Allen, MD
Digitally signed by Robert P Allen, MD
DN: cn=Robert P Allen, MD, o=RSD, ou, email=rpallenmd@aol.com, c=US
Date: 2022.05.22 21:58:51 -06'00'

Robert P. Allen, M.D.
President
Radiology Specialists of Denver
Director of Vascular and Interventional Radiology
Medical Director Cherry Creek Imaging
P.O Box 6206
Denver, CO  80206

# *Robert P. Allen, M.D.*

## ABR Board Certified Vascular & Interventional Radiologist
Certificate of Added Qualification (CAQ) - 1996
Certificate of Added Qualification (CAQ) - 2006
Maintenance of Subspecialty Certification (MOC) – Current

## ABR Board Certified Diagnostic Radiologist
American Board of Radiology Lifetime Certification

## Undergraduate Education

**Colorado State University (1977-1980)**
Bachelors Degree in Medical Science subsequently awarded by the
University of Colorado (1982)
Phi Beta Kappa (1980)

## Medical Education

**University of Colorado School of Medicine (1980-1984)**
M.D. with Honors (1984)
Alpha Omega Alpha (1984)

## Postgraduate Training

**Presbyterian / St. Luke's Medical Center (Denver, Colorado)**
Medicine/Surgery Internship (1984-1985)

**University of Washington (Seattle, Washington)**
Diagnostic Radiology (1986-1990)

## Subspecialty Training

**Interventional Radiology– Fellowship Training**
Harborview Medical Center (7/89, 8/89 & 4/90)
Program Director - Yoram Ben-Menachem, M.D.

**Computed Tomography/Ultrasound – Fellowship Training**
Harborview Medical Center (10/89, 11/89 & 1/90)
Program Director - Larry Vincent, M.D.

## Employment History

**Radiology Specialists of Denver**
President & CEO
Director of Interventional Radiology
2000 to Present

**Denver Health Medical Center**
Chief of Interventional Radiology
2004 to 2020

**Rose Medical Center**
Chairman, Department of Radiology (2000 to 2003)
Staff Radiologist and Head of Interventional Radiology (1991 to 2004)

**Radiology Imaging Associates, PC**
Board of Directors
Interventional Radiologist
1996 – 2000

**Radiology Associates, PC**
Staff Radiologist
1991 -1996

# Robert P. Allen, M.D.

### Academic References

1.  Charles A- Rohrmann, Jr., M.D.          (206) 543-3320
    Department of Radiology, SB-05
    University of Washington Medical Center
    Seattle, WA 98195

2.  Yoram Ben-Menachem, M.D.                (201) 982-3744
    Department of Radiology, Rm. 320
    University of Medicine & Dentistry
    150 Bergen Street
    Newark, NJ 07103

3.  Lawrence M. Vincent, M.D.               (206) 451-1085
    Ultrasound Specialists of Bellevue
    1028 112th NE
    Bellevue, WA 98004

### Professional References

1.  Charles E. Ray, Jr., MD                 (720) 254-7266
    President Society of Interventional Radiology
    Department Chairman
    University of Illinois Hospital and Health Sciences System
    1740 W Taylor Street
    Chicago, IL  60612
    (e-mail: chray@uic.edu)

2.  Rex Spear, M.D.                         (406) 585-1035
    Intercity Radiology
    Deaconess Hospital
    Bozeman, MT  59715

3.  Steven H. Peck, M.D.                    (970) 484-4757
    Interventional Radiologist
    Advanced Medical Imaging Consultants
    1024 S Lemay Ave
    Fort Collins, CO  805242

4.  Eric R Handley, M.D.                    (720) 941-7000
    Diagnostic MSK Radiologist

5.  Michael Cooper, M.D.                    (303) 388-7265
    Vascular Surgery Associates
    4600 Hale Parkway  #460
    Denver, CO  80220

### Contact Information

Robert P Allen, MD            rpallenmd@aol.com
1247 S Quince Wy
Denver, CO  80231
(720) 941-7000