IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC, IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates to:

>DENNIS A. HUNTER, JR.,
>as Administrator of the Estate of Servietta Hameed
>1:17-cv-06059-RLY-TAB

## SURREPLY IN SUPPORT OF PLAINTIFF'S OPPOSITION TO COOK'S MOTION FOR JUDGMENT ON THE PLEADINGS

**A. Plaintiff's Breach of Warranty Claims Are Not Subject to the Statute of Repose and Not Subject to Dismissal Under CMO 28.**

Cook's motion under CMO 28 seeks a judgment on the pleadings under Rule 12(c). When a party moves for judgment on the pleadings pursuant to Rule 12(c), the factual allegations of the complaint are taken as true. *Lackey v. Depuy Orthopaedics, Inc.*, 5:10-cv-00030-RLV-DSC, at *2-3 (W.D.N.C. July 14, 2011) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)). And all reasonable inferences must be drawn in favor of the nonmovant. *Wagner v. Teva Pharm. USA, Inc.*, 840 F.3d 355, 358 (7th Cir. 2016). Plaintiff's amended short form complaint sets forth facts that, when taken as true, establish Cook warranted the Gunther Tulip filter as safe and effective as a "permanent filter," and that warranty was breached because the filter is not safe and cannot function as a permanent filter resulting in economic harm to Plaintiff. *See* Amended Short Form Complaint, Dkt. 22015 at 37.[1]

---

[1] Plaintiff filed her motion to amend the Short Form Complaint on May 16, 2022. *See* Dkt. 22014.

1

Ignoring the legal standard governing the review of its motion, Cook argues the merits of the factual allegations made by Plaintiff. Cook's arguments cannot serve to support its motion because a Rule 12(c) motion is designed to dispose of cases when the material facts are not in dispute; therefore, the court can decide the case on its merits by considering the pleadings along with any materials referenced in or attached to the pleadings. *Williams v. McMahon*, No. 5:16-CT-3255-BO, at *5 (E.D. N.C. Mar. 12, 2018) (citations omitted). Cook's factual arguments only serve to highlight the disputed issues of fact regarding Plaintiff's breach of warranty claims that exist outside the confines of its Rule 12(c) motion. A list of the disputed issues of fact raised by Cook's reply is attached hereto as Exhibit A.  Nonetheless, Plaintiff will address Cooks newly minted factual and legal arguments in the context of the pending motion and demonstrate they are wholly without merit and Cook's motion should be denied.

 1. **Plaintiff's Claims for Breach of Express Warranty are Based on Contract and Not Subsumed into Plaintiff's Product Liability Claims.**

Plaintiff's allegations of breach of express warranty are based on contract—not product liability as incorrectly claimed by Cook. "A warranty, express or implied, is contractual in nature." *Level at 401 LP v. First Co.*, No. 5:20-cv-00085-M, at *5 (E.D. N.C. July 20, 2020) (quoting *Wyatt v. N.C. Equip. Co.*, 117 S.E.2d 21, 24 (1960)). Under North Carolina law, for breach of warranty, a buyer may recover economic damages—the difference between the value of the goods accepted and the value they would have had if they had been as warranted. *Withers v. BMW of N. Am., LLC*, CIVIL ACTION No. 3:20-CV-00034-GCM, at *3 (W.D. N.C. Feb. 12, 2021). Plaintiff's amended short form complaint sets forth her breach of warranty claim in detail identifying the "affirmations" made by Cook that represent warranties under N.C. Stat. 25-2-313 and expressly claims economic damages. Amended Short Form Complaint, Dkt. 22015 at 32.

This Court has not addressed well plead claims for breach of express warranty seeking the recovery of economic damages. *See* Dkt. 19303 (finding only that the master complaint and some Plaintiffs' short form complaints failed to adequately allege breach of express warranty). But this Court's sister-court did address this issue in the MDL involving the herbicide Paraquat. *In re Paraquat Prods. Liab. Litig.*, MDL 3004 (S.D. Ill. Feb. 14, 2022). In determining whether various Product Liability Acts ("PLAs"), including North Carolina's, bar the implied warranty claims at issue there the court ruled as follows:

> Nevertheless, Plaintiffs assert their breach of implied warranty claims should not be dismissed because they allege economic losses, and the PLAs at issue do not bar warranty claims for economic losses. **True, the PLAs at issue do not bar contractual claims brought under the UCC where a plaintiff alleges "purely economic loss arising from the failure of the product or service to perform as expected."** *Atkinson v. P & G Clairol, Inc.*, 813 F.Supp.2d 1021, 1025 (N.D. Ind. 2011) (quoting *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 153-54 (Ind. 2005)); *Corvias Mil. Living, LLC v. Ventamatic, Ltd.*, 450 P.3d 797, 804 (Kan. 2019) ("[T]he Legislature has not cast the product liability net so wide as to subsume and extinguish other legally viable causes of action for the recovery of economic losses" including a pure contract claim); *McKee v. Bowers Window & Door Co.*, 64 So.3d 926, 940 (Miss. 2011) (Mississippi Products Liability Act does not abrogate a statutory cause of action for breach of implied warranty); ***City of High Point, N. Carolina v. Suez Treatment Sols. Inc.*, 485 F.Supp.3d 608, 627 (M.D. N.C. 2020) (noting that the PLA does not govern actions for breach of implied warranty seeking to recover economic losses)**; . . .

*Id*. at *26-27 (emphasis added). *See also, City of High Point, N. Carolina v. Suez Treatment Sols. Inc.*, 485 F. Supp. 3d 608, 627 (M.D.N.C. 2020) ("The rationale for this exception is that an action seeking to recover damages for economic loss is not a product liability action governed by the Act.") (citations omitted). Additionally, the complaint in the Paraquat MDL included claims for "actual" and "compensatory" damages which the court found sufficient to include economic damages. *Id.* at *28 ("The Court does not read Plaintiffs' allegations so narrowly; they seek actual or compensatory damages, which encompasses any economic losses suffered.") (citations

3

omitted).[2] Plaintiff here expressly seeks economic damages for her breach of warranty claims. Amended Short Form Complaint, Dkt. 22015 at 32.[3] Therefore, Plaintiff's claims are not "subsumed" into her product liability claims and may be pursued as separate claims.

Cook fails to address Plaintiff's claims for her economic losses resulting from Cook's breach of express warranty relying solely on *Lackey v. DePuy Orthopaedics, Inc.*, 2011 WL 2791264 (W.D. N.C. July 14, 2011). Cook's reliance is misplaced. The complaint in *Lackey*, attached hereto as Exhibit B, is a bare bones complaint. And while it summarily asserts breach of warranty it fails to identify any express warranty or allege any economic loss and merely concludes with a general prayer for "compensatory" and "punitive" damages. Ex. B at 6. Thus, Lackey failed to properly plead breach of warranty or allege economic loss, or even allege actual damages as in the Paraquat MDL. Indeed, the complaint in *Lackey* merely alleged that Defendants' negligence in designing, manufacturing, fabricating and testing the implant caused his injuries and damages. Ex. B at §§XIV-XVI. Leaving the court but one conclusion—that Plaintiff's claims for negligence and breach of warranty "sound in product liability." *Lackey*, 5:10-cv-00030-RLV-DSC, at *3. Not so here. Plaintiff's breach of express warranty claim is supported by extensive facts demonstrating the existence and breach of the warranty and expressly seeks the recovery of economic damages resulting from the breach. The facts set forth in Plaintiff's amended short form complaint regarding the defects and dangerous nature of the Gunther Tulip filter and Cook's fraudulent concealment of the data and information revealing same are not like those made in *Lackey* but serve to demonstrate Cook's filter is not "safe and effective as a permanent" filter. Coupled with

---

[2]"Economic loss includes the loss of the bargain, repair, and replacement cost, loss of profits, and/or goodwill, including diminution in value" the "damages that arise as a result of the failure of the product to perform to the level expected by the buyer, which is the core concern of traditional contract law." *In re Paraquat*, MDL 3004 at *28.
[3] Damages incidental to the breach of warranty may also be recovered. N.C. Gen. Stat. § 25-2-714 ("Buyers damages for breach in regard to accepted goods").

the filter's failure and harm to Plaintiff, represents a breach of warranty by Cook. Thus, *Lackey* is inapposite.

Moreover, even *assuming* Plaintiff's breach of express warranty claim "sounds in products liability" as the *Lackey* court found, Cook misstates the issue. *Lackey* does not stand for the position that a plaintiff injured by a medical device cannot bring breach of warranty claims, it merely states that *if* such a plaintiff brings claims which sound in products liability, the North Carolina statute of repose applies to them all. Plaintiff's argument under *Christie v. Hartley Construction, Inc.*, 367 N.C. 534, 766 S.E.2d 283, 288 (2014) is that Cook has *waived* its statute of repose defense—not that the defense can never be raised to a breach of express warranty claim. Thus, the pertinent issue is whether *even if the statute of repose is applicable, have the Cook Defendants waived it through their representations and warranties*? The answer to that, under *Christie*, is yes.

### 2. Cook's Warranty That Its Gunther Tulip Filter is "Safe and Effective as a Permanent Filter" Precludes Entry of Judgment on the Pleadings.

Rather than address the issue of the existence of an express warranty under the correct legal standard, Cook improperly argues its interpretation of the statements found in Cook's product brochures and patient guides attached to Plaintiff's amended complaint. Dkt. 22154 at 4. However, Cook fails to provide any facts or legal authority that would support its conclusion that its affirmations in product brochures and patient guidelines that its filter is "safe and effective as a permanent filter" cannot operate as warranties as a matter of law. Tellingly Cook ignores the *Goodling* case cited by Plaintiff (Dkt. 22020, at 3) where the court found J&J's descriptions of its pelvic mesh implant as, among other things, "a permanent implant" that "would not need to be removed" found in "Instructions for Use, product pamphlets and commercial documents," constitutes warranties. *See also*, *McLaughlin v. Bayer Essure, Inc.*, No. 16-3733 (Johnson), at *16

5

(E.D. Pa. Mar. 27, 2019) (a promise of "permanent birth control" is an extended warranty because it "suggest[s] a time frame in which they will be in effect, i.e., permanently.").

Similar to if not the same as those found in *Goodling* and *McLaughlin,* Cook's statements that its filter is "safe and effective as a permanent filter" that would not have to be removed were properly relied on by Plaintiff as warranties. Cook's factual arguments otherwise cannot support its motion and cannot be decided in Cook's favor. *Patterson v. McKinley Medical, L.L.C.*, No. 5:09-CV-308-BR, *4 (E.D. N.C. Mar. 30, 2011) ("A motion to dismiss 'tests the sufficiency of a complaint' but 'does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'") (citations omitted). When the correct legal standard is applied and Plaintiff's factually supported allegations are taken as true, Cook warranted its filter to be "safe and effective as a permanent filter" when it knew it was not and the failure of the filter caused harm to Plaintiff including economic damages precluding judgement on the pleadings.

**3. Cook's Warranty that Its Filter Was "Safe and Effective as a Permanent Filter" Was Provided to Plaintiff by Her Doctor Which Is Sufficient to Demonstrate Receipt and Reliance by Plaintiff.**

Cook's claim that Plaintiff's breach of warranty fails because she cannot show "receipt" of or "reliance" on the warranty is based on a misunderstanding and misapplication of North Carolina law. Contractual privity between Cook and Plaintiff is not required; nor is it required that Plaintiff receive the warranty from Cook itself or one of its employees. It is sufficient that the warranty was passed on to Plaintiff by her doctor and she relied on it, in making her decision to have the filter implanted. *Resendez v. C. R. Bard, Inc.*, No. 5:19-cv-299-BO (E.D. N.C. Apr. 19, 2020).

> Plaintiff has sufficiently alleged that defendants misrepresented to the medical and healthcare community, including to her implanting surgeon, that the Bard Ajust was safe and effective for treating stress urinary incontinence and pelvic organ prolapse. And as the MDL court determined, **plaintiff's breach of express warranty claim is not barred for lack of privity under North Carolina law because plaintiff**

6

**plausibly alleged that she relied on her surgeon's medical judgment, which was formed by defendants' express warranties.**

*Id.* at *3 (citations omitted); *see also*, *Justus v. Ethicon*, 2016 WL 7404712, at *5 (S.D. W.Va. December 21, 2016) ("North Carolina law provides that a plaintiff need not prove contractual privity for her express warranty claim to survive… Even if Ms. Justus relied only on Dr. Howden's medical judgment in deciding to have the Prolift implanted, a reasonable juror could find that Ms. Justus relied on the express warranties of Ethicon as they were provided to Dr. Howden, which formed the basis for Dr. Howden's medical judgment."). Nor is it required that Plaintiff receive the warranty in document form. *Alberti v. Manufactured Homes*, *Inc.*, 329 N.C. 727, (1991).

> In Kinlaw, we concluded that the buyer of goods from a retailer could recover against the manufacturer for breach of a written manufacturer's warranty directed to the ultimate consumer. **We now conclude that the same result should follow where a manufacturer's oral representations made directly to a retailer are intended to be communicated to remote buyers to induce them to buy a product**.

*Id*. at 236-37 (emphasis added); *see also*, *Brown v. Bos. Sci. Corp.*, 2015 WL 1956346, at *6 (S.D. W.Va. Apr. 29, 2015) ("BSC argues that because Ms. Brown herself did not receive any materials from BSC, she could not have relied on any statement regarding the Obtryx or the Uphold. . ..North Carolina law, however, provides that Ms. Brown need not prove contractual privity for her express warranty claim to survive.").[4] Cook does not dispute that Plaintiff and her doctors reasonably relied upon Cook's representations when deciding to use the Cook Gunther Tulip filter. Dkt. 22015 at 24, 29. Combined with the alleged facts showing Cook's breach, these allegations are sufficient to

---

[4] Moreover, Cook also ignores that the warranty found to exist by the North Carolina Supreme Court in *Christie* was created through representations and advertising the manufacturer made on its website. *Christie*, 367 N.C. at 535. (Plaintiffs relied on advertising from the GrailCoat website--"… relying on the warranty provisions stated on its website, plaintiffs elected to use SuperFlex.").

7

plead a "plausible" claim for breach of express warranty precluding judgment on the pleadings under CMO 28.

> **B. It is Settled Law in North Carolina That A Party May Be Estopped From Asserting the Statute of Repose Based For Equitable Reasons.**

Cook's claim that "there are no equitable exceptions" to the statute of repose in North Carolina is incorrect. That equitable estoppel may be used to preclude a defendant from asserting the statue of repose in North Carolina is well settled. *Wood v. BD&A Construction, L.L.C.*, 166 N.C. App. 216, 220 (N.C. Ct. App. 2004) ("Equitable estoppel may also defeat a defendant's statute of repose defense") (quoting *One North McDowell Assn. v. McDowell Development Co.*, 98 N.C. App. 125, 389 S.E.2d 834, *disc. review denied*, 327 N.C. 432, 395 S.E.2d 686 (1990)); *Robinson v. Bridgestone,* 703 S.E.2d 883, 15 (N.C. Ct. App. 2011) ("Equitable estoppel may also defeat a defendant's statute of repose defense") (quoting *Bryant v. Adams* , 116 N.C. App. 448, 448 S.E.2d 832 (1994), *disc. review denied* , 339 N.C. 736, 454 S.E.2d 647 (1995), *Doe v. Catawba Coll.*, 796 S.E.2d 822 (N.C. Ct. App. 2017)). "The doctrine of estoppel by conduct rests upon principles of equity and is designed to aid the law in the administration of justice by precluding a party from asserting legal rights which in equity and good conscience he should not be allowed to assert." *Hawkins v. Finance Corp.*, 238 N.C. 174 (N.C. 1953). Thus, the *Ferro v. Volvo Penta* case cited and relied on by Plaintiff in her response brief (Dkt. 22020 at 7) for the proposition that equitable estoppel based on a defendant's fraudulent conduct may preclude a defendant from later using the statute of repose "as a sword" is not an outlier that "stands against the great weight of North Carolina case law" as incorrectly alleged by Cook.

Cook's myopic focus on "tolling" of statute of limitations misses the mark. Cook fails to understand that there is a difference between the doctrine of tolling and the doctrine of equitable estoppel. *See Aikens v. Ingram*, 524 F. App'x 873, 16 (4th Cir. 2013) ("Importantly,

8

however, equitable estoppel is not necessarily the same as equitable tolling."). Plaintiff does not seek to toll the statute of repose but to preclude Cook from asserting it as a defense altogether under the doctrine of equitable estoppel. And Cook's claim that Plaintiff must "demonstrate" her "diligence" and an "act of concealment" is mistaken. Plaintiff's equitable estoppel claim is based on Cook's fraudulent conduct, which has been properly pled by Plaintiff, and demonstrates that Cook acted to conceal material data and information from Plaintiff and her doctor that showed the filter is not safe and effective as a permanent filter which Plaintiff relied on prior to deciding to have the filter implanted. See e.g. Dkt. 21335 at ¶1-22. Second, these allegations must be taken as true and construed in Plaintiff's favor. Plaintiff is not required to "demonstrate" or prove the factual allegations in her pleadings for the present motion. Third, diligence is not an element of equitable estoppel which rests on Cook's inequitable conduct—not Plaintiff's. Diligence may be relevant to equitable tolling of a statute of limitation, which is not being alleged by Plaintiff here. Thus, the cases cited by Cook relating to the tolling of the statute of limitations in a summary judgment setting are not relevant to Plaintiff's claims or applicable to the pending motion. Finally, Plaintiff's diligence in discovering her injury or cause of action is not an element of Plaintiff's claim of equitable estoppel based on Cook's fraudulent conduct. Moreover, Plaintiff did not have access to the data demonstrating Cook's fraudulent conduct and Cook continues to conceal it from the public and medical community today. *See e.g.* exhibits attached to Dkt. 18900 (documents supporting the fraudulent concealment claim marked confidential and AEO under the protective order).

### C. Cook Misconstrues the Latent Disease Exception Under North Carolina Law

Cook's reliance on and statement that *Klein* is controlling law is misguided.[5] The Seventh Circuit abrogated its holding in *Klein* in *Knauf Insulation, Inc. v. S. Brands, Inc.,* 820 F.3d 904

---

[5] *Klein* is additionally not controlling here because Plaintiff filed her case in federal court in North Carolina before it was transferred to the MDL. Since Plaintiff's case was originally filed in the Western District of North Carolina and

9

(7th Cir. 2016). The *Knauf* court did not mince words finding that the Supreme Court decision in *Menominiee* superseded the holding in *Klein* that a statue of repose serves as an "unyielding and absolute barrier to a cause of action" regardless of when it accrues. *Id.* at 909. Thus, *Klein* does not operate to bar the latent disease exception, is not good law and not binding on this Court.[6]

Further, Cook's arguments ignore the *Bullard* and *Patterson* cases where North Carolina courts held that the "latent disease" exception applies to medical devices.[7] The "signs and symptoms" of an embedded, perforated, migrated, or fractured filter are not easily recognized or diagnosed in real time. Rather, they occur over time. Additionally, the symptoms are often associated with or believed to be caused by another disease or ailment unrelated to the filter. Similar to the diseases in *Bullard* and *Patterson*, neither the cause of nor the symptoms related to Plaintiff's injury have a definitive date of manifestation. Plaintiff had abdominal pain and cramping, which can be attributed to many different diseases or ailments unlike the symptoms related to the injuries sustained by the implanted product in *Cramer* (such as bladder or urinary tract infections). The filter began perforating her IVC over time, eventually perforating both her vertebra and aorta. Thus, "… it is difficult, if not impossible, to determine the first point at which the plaintiff was first 'injured.'" *Cramer v. Ethicon, Inc.,* 2021 WL 243872, at *5 (W.D. N.C. Jan. 25, 2021). Plaintiff was not diagnosed with an injury associated with the filter until 2016, and she had no way of knowing when the filter began to perforate her IVC or other organs. It was only

---

transferred to this Court by the JPML, this Court "must apply the law of the transferor forum, that is, the law of the state in which the action was filed…" *In re Vioxx Prods. Liab. Litig.*, 478 F.Supp.2d 897, 903 (E.D. La. 2007).

[6] Furthermore, *Cramer and Klein* are not in full agreement as Cook incorrectly states. In *Klein* the court [incorrectly] held that there was no disease exception to the statute of repose. *Klein v. DePuy, Inc.* 506 F.3d 553, 557-59 (7th Cir. 2007). While the court in *Cramer* acknowledged the Fourth Circuit [correctly] followed the reasoning of *Wilder* to apply a latent disease exception to the statute of repose. *Cramer v. Ethicon, Inc.,* No. 1:20-CV-95-MOC-WCM, 2021 WL 243872, at *5 (W.D.N.C. Jan. 25, 2021).

[7] Disease is a "condition of the living animal or plant body or of one of its parts that impairs normal functioning and is typically manifested by distinguishing signs and symptoms." *Miriam Webster.* (n.d.) Disease. In *Miriam-Webster.com* dictionary. Retrieved March 28, 2022, from https://www.merriam-webster.com/dictionary/disease.

when the Plaintiff had a CT scan revealing her filter was perforating her vein that she was able to attribute the filter to her injuries and symptoms. *Id*.  This type of analysis calls for expert testimony and discovery, not obtained at this time, or at a bare minimum, allowing a federal district court, sitting in North Carolina, the opportunity to answer whether an implanted IVC filter causing Plaintiff's injuries constitute a disease under the disease exception defined in *Hyer*.

        **D.**        **Cook Misunderstands the Biomet MDL's Decision on the North Carolina SOR**

Cook continues to argue that various Courts (including this one) have determined that the enactment of the twelve-year North Carolina SOR in October, 2009, did not "retroactively" apply to cases where the product was previously purchased. However, this is not Plaintiff's argument or the conclusions of the *Biomet* MDL Court. Rather than "reviving a stale claim", the issue is whether the October 2009 amendments *extended* the SOR for purchasers whose claims were still alive and had not yet been extinguished. *See In re Biomet M2a Magnum Hip Implant Prods. Liab. Litig.*, 2019 WL 110892, *6, fn. 6 (N.D. Ind. 2019). While Cook cites cases that state the purchase date controls, none of these cases addressed the specific issue the *Biomet* Court raised and held was an unsettled question under North Carolina law.

For all the reasons set forth above and in Plaintiff's response, Cook's motion to dismiss should be denied.

Dated: June 7, 2022.

                        Respectfully submitted,

                        **SHRADER & ASSOCIATES, L.L.P.**

                        */s/ A. Layne Stackhouse*
                        A. Layne Stackhouse (KY# 94038)
                        9 Greenway Plaza, Suite 2300
                        Houston, TX 77046
                        T: (713) 782-0000
                        F: (713) 571-9605

layne@shraderlaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

    I hereby certify that on June 7, 2022, a copy of the foregoing was served electronically and notice of the service of this document will be sent to all parties by operation of the Court's electronic filing system to the CM/ECF participants registered to receive service in this matter. Parties may access the filing through the Court's system.

                                                                   */s/ A. Layne Stackhouse*