UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC. IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates Only to the Following Cases:

Sisco, Regina - 1:22-cv-00647

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT IN
PLAINTIFF REGINA SISCO'S CASE PURSUANT TO CMO-28**

A.  **Plaintiff's Express Warranty Arguments Fail for Multiple Reasons**

Plaintiff argues that Cook waived its statute of repose defense because it represented that "the Celect can remain safely in the patient forever and removal is unnecessary thus providing Plaintiff with a lifetime warranty." Dkt. 22104 at 1 (citing *Christie v. Hartley Constr., Inc.*, 766 S.E.2d 283, 287 (N.C. 2014) for the proposition that a party can waive the statute of repose).[1]

This express warranty argument fails for multiple reasons. First, any such express warranty claim is subsumed by the product liability claims barred by the statute of repose. *See Lackey v. DePuy Orthopedics*, 2011 WL 2791264, at *2 (W.D.N.C. July 14, 2011) (holding that "Plaintiff's claims all stem from the purchase of an allegedly defective hip" and that "[a]rtful pleading does not allow Plaintiff to transform product liability claims into claims sounding in negligence and breach of warranty."). Here, Plaintiff's claims are similarly based on injuries from an allegedly defective IVC filter. *See, e.g.*, Master Compl., Dkt. 213, ¶¶ 96-97 (alleging various design and manufacturing "defects" as part of pleading the express warranty claim).

Moreover, the plaintiffs in *Christie* presented evidence of a detailed and specific 20-year written warranty. *See* 766 S.E.2d at 285. In contrast here, Plaintiff's Response only makes general reference to Cook's alleged representations to "doctors and patients" that the Celect filter was "safe for use as a permanent filter." Dkt. 22104 at 1. Plaintiff has not identified the specific language of this representation, identified when, where, or by whom it was made, or alleged that she personally relied on any alleged representation before receiving her filter. The mere fact the filter had a possible permanent-use option neither creates an express warranty nor guarantees that the filter would last indefinitely or that known complications and adverse effects will not occur.

---

[1] Although CMO-28 limits all briefs to three pages, Plaintiff's Response was more than five pages. In light of this oversized Response, it was necessary for Cook to extend this reply brief to approximately four-and-a-quarter pages. Cook moved for an extension of the page limit on June 9, 2022. *See* Dkt. 22186.

Finally, as the Court noted in applying the Texas statute of repose (Dkt. 4918 at 13-15), the failure of Plaintiffs' Master Complaint to plead an adequate express warranty claim, as well as Plaintiff's failure to establish how she received and relied on the alleged express warranty here, are fatal to her claim under North Carolina law. *See Harbor Pt. Homeowners Ass'n, Inc. v. DJF Enters.*, 697 S.E.2d 439, 447 (N.C. Ct. App. 2010) (holding plaintiff must establish reliance on alleged warranty in purchasing the product). Although Plaintiff argues that the existence of an express warranty is generally a question for the jury, this Court has ruled that Plaintiffs' Master Complaint inadequately pleads an express warranty claim, particularly regarding the reliance element. Plaintiff did not supplement the allegations in her Short-Form Complaint or otherwise correct the deficiencies regarding the express warranty claim. Thus, her express warranty claim fails as a matter of law. *See City of High Point v. Suez Treatment Sols. Inc.*, 485 F. Supp. 3d 608, 628 (M.D.N.C. 2020) (dismissing express warranty claim on a motion to dismiss because plaintiff failed to plead sufficient factual allegations to support such a claim); *Presnell v. Snap-On Securecorp, Inc.*, --- F. Supp. 3d ---, 2022 WL 295917, *5-6 (M.D.N.C. Feb. 1, 2022) (same).

**B.  The Latent Disease Exception Does Not Apply to Plaintiff's Claims**

North Carolina's latent disease exception does not apply here. As this Court has already explained, the Seventh Circuit has predicted that the North Carolina Supreme Court would not apply the latent disease exception to the state's statute of repose, Dkt. 15084 at 3; *Klein v. DePuy, Inc.*, 506 F.3d 553, 557 (7th Cir. 2007) ("[T]he plain language of the statute, its history, and North Carolina case law all support our belief that no exception was intended [by the legislature]."). The *Klein* decision expressly rejected the Fourth Circuit's holding in *Hyer v.*

*Pittsburgh Corning Corp.*, 790 F.2d 30 (4th Cir. 1986), the centerpiece of Plaintiff's argument. *See* 506 F.3d at 558 ("we cannot follow the Fourth Circuit on this issue.") [2]

**B.     There Are No Equitable Exceptions to the North Carolina Statute of Repose**

Plaintiff argues that North Carolina recognizes equitable estoppel and/or fraudulent concealment doctrines and that these doctrines preclude application of the statute of repose to her claims. *See* Pl.'s Resp., Dkt. 22104 at 4-5. Plaintiff is mistaken.[3]

Contrary to Plaintiff's assertions, North Carolina law holds that "substantive rights, such as those created by the statute of repose are not subject to tolling. Accordingly, fraudulent concealment … cannot operate to toll the running of the statute of repose." *Stallings v. Gunter*,

---

[2] Even assuming for the sake of argument that the North Carolina Supreme Court would adopt such an unwritten latent disease exception to the state's statute of repose, the exception would not apply here. As this Court has explained, the latent disease exception "is limited to diseases that develop over long periods of time after multiple exposures to offending substances … where it is impossible to identify any particular exposure as the first injury." Dkt. 15084 (*Wilson*) at 2-3 (citations omitted). Here, Plaintiff does not allege she suffers a disease that developed over a long period of time; rather, she alleges a physical *injury* arising from placement of a single medical device. *See Fulmore v. Johnson & Johnson*, --- F. Supp. 3d ---, 2022 WL 243319, *3 (E.D.N.C. Jan. 25, 2022) (rejecting application of the latent disease exception where plaintiff alleged only complications or symptoms from the implantation of a medical device, not any "disease" as defined under North Carolina law). Indeed, this Court has already held that "[t]he rationale for the latent disease exception does not apply to claims like Plaintiff's" because "Plaintiff [did] not allege she suffered from a 'disease' that developed unnoticed over a long period of time following multiple exposures to toxic agents." Dkt. 15084 (*Wilson*) at 2.

For the same reason, the *In re Paraquat Prod. Liab. Litig.* decision Plaintiff cites is factually distinguishable because it involved a toxic tort, not a medical device. *See* 2022 WL 451898, at *1, 9 (S.D. Ill. Feb. 14, 2022) (explaining that paraquat dichloride was a chemical used in herbicides and that the plaintiffs alleged "they developed Parkinson's disease, a progressive neurological disorder that manifests itself over years, possibly decades"). The instant case is more analogous to *Fulmore*, where the court rejected application of the latent disease exception because the plaintiff only claimed to experience "complications or symptoms from the implantation of [the medical device]," rather than "any disease as that term has been defined [by North Carolina law]." 2022 WL 243319, at *3.

[3] In addition to the reasons discussed in the text, Plaintiffs' arguments alleging fraudulent concealment fail for the same reasons the Court articulated in its existing Order rejecting Plaintiffs' allegations of fraudulent concealment, *see* Dkt. 15907, and that Cook set out again in its Renewed Motion for Partial Dismissal of Claim of Fraudulent Concealment (Dkt. 18314): Plaintiff has failed to plead that Cook committed any affirmative act to prevent her from discovering her cause of action against it, and Plaintiff has failed to plead the circumstances of the alleged fraudulent concealment with particularity.

3

394 S.E.2d 212, 216 (N.C. 1990) (citing Restatement of Law 2d, *Torts* § 899, cmt. g (1979)); *see also Monson v. Paramount Homes, Inc.*, 515 S.E.2d 445, 449 (N.C. Ct. App. 1999) ("While equitable doctrines may toll statutes of limitation, they do not toll substantive rights created by the statute of repose."); *State ex rel. Long v. Petree Stockton, L.L.P.*, 499 S.E.2d 790, 798 (N.C. Ct. App. 1998) ("[E]quitable doctrines do not toll the statute of repose"); *Cacha v Montaco, Inc.*, 554 S.E.2d 388, 392-93 (N.C. Ct. App. 2001) (same).[4]

Plaintiff relies on *Ferro v. Vol Vo Penta of the Americas, LLC* for the proposition that the "defendant may be equitable estopped from using a statute of limitations or repose 'as a sword' to unjustly benefit from his own conduct which induced a plaintiff to delay filing suit." 2017 WL 3710071, at *4 (W.D.N.C Aug. 28, 2017) (finding that equitable estoppel did not apply because the truth of the alleged misrepresentations about the alleged defect were known or discoverable by the plaintiff). *Ferro* cites *Trillium Ridge Condo. Ass'n, Inc. v. Trillium Links & Vill., LLC*, 764 S.E. 2d 203, 216 (N.C. Ct. App. 2014), but the court in *Trillium Ridge* only states that a defendant "may be equitable estopped from using the statute of limitations as a sword," without mentioning the statute of repose. To the extent *Ferro* recognized equitable exceptions to the North Carolina statute of repose, it stands against the weight of North Carolina case law, which has categorically rejected such exceptions. *See Stallings*, 394 S.E.2d at 216; *Monson*, 515 S.E.2d at 449; *Long*, 499 S.E.2d at 798; *Cacha*, 554 S.E.2d at 392-93. Nor is such an exception found anywhere in the text of the North Carolina statute of repose. *See generally* N.C. Gen. Stat. § 1-50(a) (repealed prospectively only).

---

[4] North Carolina law on this issue follows the general rule that fraudulent concealment or similar equitable doctrines do not "appl[y] to statutes of repose 'absent express [statutory] language to the contrary….'" *Cortez v. Cook, Inc.*, 27 F.4th 563, 567 (7th Cir. Mar. 2022) (quoting *Blackford v. Welborn Clinic*, 172 N.E.3d 1219, 1229 (Ind. 2021)).

4

Even assuming equitable tolling were a cognizable exception to the statute of repose, Plaintiff would have to demonstrate "(1) that [she] exercised due diligence to discover [her] cause of action before the limitations period ran; and (2) that the defendant committed an affirmative act of fraudulent concealment to frustrate discovery despite due diligence." *Orsi v. Kirkwood*, 999 F.2d 86, 89 (4th Cir. 1993); *see also Carter v. Bank of Am., N.A.*, 2015 WL 3618536, at *4 (W.D.N.C. June 9, 2015). Here, Plaintiff's claim of equitable estoppel based on fraudulent concealment is premised on "representations that the filter is 'safe and effective' as a permanent filter" and alleged fraudulent concealment of "information from [Cook's] own studies demonstrating the filter was not 'safe and effective' from Plaintiff, her physician, and the medical community." Pl.'s Resp., Dkt. 22104 at 5. But the motion fails to identify an "affirmative act" on Cook's part that would have frustrated or prevented Plaintiff's discovery of her cause of action. Nor can Plaintiff plausibly make such an allegation because Cook was in no position to discover the perforation before Plaintiff and to somehow hide the existence of that cause of action from her.[5] *See* Plaintiff's Categorization Form and Records (categorizing claim as Category 7(e) and noting that "multiple legs project[] through the vessel wall" and that one "leg of the filter abuts or partially protrudes into the adjacent duodenum", attached as **Exhibit A** and filed separately under seal).

Accordingly, Plaintiff's equitable estoppel and fraudulent concealment arguments must fail because (1) they are not cognizable exceptions to the North Carolina statute of repose, and (2) Plaintiff has failed to identify an "affirmative act" by Cook to prevent Plaintiff from discovering her cause of action against Cook.

---

[5] In her Response, Plaintiff suggests that "harm [from the perforation] was not readily apparent until diagnosis, long after her first exposure (implant) to the device." Pl.'s Resp., Dkt. 22104 at 4. But Plaintiff's argument does not explain (1) how Cook could have discovered Plaintiff's cause of action before she did or (2) how Cook could have subsequently hidden the action from her.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated:  June 10, 2022 | /s/ *Jessica Benson Cox*<br>Jessica Benson Cox<br>Andrea Roberts Pierson<br>FAEGRE DRINKER BIDDLE & REATH LLP<br>300 North Meridian Street, Suite 2500<br>Indianapolis, Indiana  46204<br>Telephone:  (317) 237-0300<br>Andrea.Pierson@FaegreDrinker.com<br>Jessica.Cox@FaegreDrinker.com<br><br>James Stephen Bennett<br>FAEGRE DRINKER BIDDLE & REATH LLP<br>110 West Berry Street, Suite 2400<br>Fort Wayne, Indiana  46802<br>Telephone:  (260) 424-8000<br>Stephen.Bennett@FaegreDrinker.com<br><br>*Attorneys for Defendants Cook Incorporated, Cook Medical LLC, and William Cook Europe ApS* |

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2022, a copy of the foregoing **DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION FOR JUDGMENT IN PLAINTIFF REGINA SISCO'S CASE PURSUANT TO CMO-28** was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.

/s/ *Jessica Benson Cox*