**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

In Re: COOK MEDICAL, INC.,
IVC FILTERS MARKETING, SALES
PRACTICES AND PRODUCTS
LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

This Document Relates to: All Actions

**THE COOK DEFENDANTS' OPPOSITION TO**
**PLAINTIFFS' STEERING COMMITTEE'S MOTION FOR RECONSIDERATION**

Defendants Cook Incorporated, Cook Medical LLC f/k/a Cook Medical Incorporated, and William Cook Europe ApS ("Cook" or "the Cook Defendants") urge the Court to deny the Plaintiffs' Steering Committee's Motion for Reconsideration, which the PSC has styled as a "Motion for Relief from CMO-30, or in the Alternative, Motion to Amend CMO-30." Dkt. 22064. Several grounds support denial of the motion.

First, the motion raises no arguments that the PSC did not or could not have raised last fall during the Court's original consideration of CMO 30, and thus provides no justification for the Court to reconsider its original decision.

Second, the PSC's motion misreads what CMO 30 actually does, and as a result most of the issues the PSC argues do not in fact arise. Contrary to the PSC's apparent belief, the Court in CMO 30 does not make any substantive rulings and does not dismiss any action. CMO 30 merely requires Plaintiffs to confirm that they have provided certain documentation and, if they have not, to provide that documentation by a set deadline. Given what CMO 30 actually does, the PSC's arguments about deprivation of due process rights and collateral estoppel simply do not apply.

Third, the PSC is wrong in asserting that CMO 30 "radically" alters the Category 7(e) definition.  Both under the original CFF order and under CMO 30, a 7(e) categorization has always required *both* (1) a perforation or penetration of a strut or anchor 3 mm or more outside of the IVC wall, *and* (2) a symptomatic injury resulting from that perforation or penetration.  Dkts. 9638-1 at 3-4; 21704 at 2.

The PSC's motion pulls out all the stops and unleashes a broad array of divergent and sometimes contradictory arguments in the apparent hope that one of them will gain purchase. Cook's response below does its best to address the arguments that the PSC appears to urge most strongly.  But the shotgun character of the PSC's motion confirms that this motion is yet another attempt by Plaintiffs' counsel to thwart the MDL process.  CMO 30 reflects a major step forward by the Court to advance the resolution of the Category 7(e) cases, a resolution that the PSC wants desperately to prevent.  The PSC's strategy is clear:  delay any progress in resolving cases in the MDL, then move to remand the cases from the MDL based on the delays Plaintiffs' attorneys have themselves engineered.  The Court should reject the PSC's attempts at distraction and delay, deny the PSC's motion, and require all Category 7(e) Plaintiffs' compliance with CMO 30 not later than June 27. 2022.  *See* Dkt. 21966-2 (Cook's proposed Order on the PSC's motion to extend CMO 30 deadline).

## ARGUMENT

## I.    THE PSC'S MOTION IS AN IMPROPER MOTION FOR RECONSIDERATION.

Although framed as a motion "for relief from…or to amend CMO-30," Dkt. 22064 at 1, the PSC's present motion is really a transparent request that the Court reconsider its original ruling and vacate CMO 30 altogether.  The "relief" and "amendment" the PSC seeks would effectively gut CMO 30, and would wholly defeat the Court's goal of teeing up Category 7(e) no-injury cases for dismissal motions and potentially for the next category of cases for bellwether trial.

The proper procedural vehicle for the PSC's motion for reconsideration is Rule 54(b), which governs motions to reconsider orders other than final judgments.[1] *See Arnold v. Keris*, No. 118CV01779JRSDLP, 2018 WL 8803446, at *1 (S.D. Ind. Dec. 10, 2018). "Motions to reconsider serve a limited function, to be used 'where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'" *Davis v. Carmel Clay Schs.*, 286 F.R.D. 411, 412 (S.D. Ind. 2012) (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)) (additional quotations omitted).

Although a court may grant a motion to reconsider where a movant demonstrates a manifest error of law or fact, a motion to reconsider is *not* an occasion to make new arguments. *In re Prince*, 85 F.3d 314, 324 (7th Cir. 1996); *Granite St. Ins. Co. v. Degerlia*, 925 F.2d 189, 192 n.7 (7th Cir. 1991). Courts generally disfavor motions for reconsideration, taking the view that "a re-do of a matter that has already received the court's attention is seldom a productive use of taxpayer resources because it places all other matters on hold." *Burton v. McCormick,* No. 3:11-CV-026, 2011 U.S. Dist. LEXIS 50891, 2011 WL 1792849, at *1 (N.D. Ind. May 11, 2011) (quoting *United States v. Menominee Tribal Enters.*, No. 07-C-317, 2009 U.S. Dist. LEXIS 45614, 2009 WL 1373952, at *1 (E.D. Wis. May 15, 2009)).

Here, the PSC offers no justification for the Court to reconsider its previous order. As the PSC's motion acknowledges, both parties had the opportunity to present and did in fact present their arguments on the proposed CMO 30 to the Court through letter briefs back in November of 2021. *See* Dkt. 22064 at 5; *see also* Dkt. 22064-3 (parties' letter briefs); Local R. 7-5(d)(1).

---

[1] The PSC's invocation of Rule 60(b) for its motion for reconsideration, Dkt. 22064 at 1, is mistaken. By its terms, Rule 60(b) governs only motions for reconsideration of final judgments, orders, and proceedings. CMO 30 is not a final judgment or order, and Rule 60(b) therefore does not apply.

(granting court discretion to issue order without oral argument).  The PSC's present motion offers no reason that the PSC could not have raised the arguments it offers now in its original letter to the Court opposing CMO 30, and cites no material fact or controlling legal precedent that has changed since that original submission.

The PSC argued against CMO 30 in its letter brief, and the Court rejected the PSC's arguments.  The PSC now wants to offer new arguments, but offers no excuse for the omission of those arguments from its original opposition.  "[A]rguments raised for the first time in a motion to reconsider are waived."  *Baker v. Lindgren*, 856 F.3d 498, 503 (7th Cir. 2017).  The Court should deny the PSC's unjustified motion for reconsideration.

## II.   CONTRARY TO THE PSC'S ASSERTION, CMO 30 IS PURELY PROCEDURAL AND MAKES NO SUBSTANTIVE RULINGS.

Even if the Court were inclined to reconsider CMO 30, the PSC's motion offers no sound reason to amend it or to grant Category 7(e) Plaintiffs relief from its terms.  The PSC's motion is based on a false premise:  that CMO 30 dismisses Plaintiffs' cases or makes some substantive ruling that affects Plaintiffs' cases.  See Dkt. 22064 at 1 (arguing CMO 30 "makes findings of fact and conclusions of law"); *id.* at 2 ("CMO-30 … subjects other categories of injuries to dismissal without notice or opportunity to be heard"); *id.* at 8 ("CMO-30 Makes a Substantive Determination of Actionable Injury that Will Result in the Dismissal of Meritorious Claims"); *id.* ("CMO-30 permits dismissal of entire cases for failure to produce unspecified, additional injury records without a predicate determination on the merits").

CMO 30 does none of these things.  It merely requires Category 7(e) Plaintiffs to certify prior production or to produce documentation that their attorneys should already have.  As a consequence, the PSC's alarmist due process arguments do not apply, and it offers no basis for altering the CMO.

### A.   CMO 30 Merely Requires the Submission and Assembly of Documentation of Category 7(e) Cases.

Case Management Order 30, as its name states, is an Order that helps the Court manage the thousands of cases in this MDL.  An exception to the general hold on discovery the Court has imposed in non-bellwether cases in the MDL, *see* Dkt. 13046 at 4, CMO 30 establishes a method for the documentation and assembly of information about Category 7(e) Plaintiffs that may be useful in future motions, in the Court's future determination of whether those Plaintiffs state viable claims, and in selecting a future set of bellwether trials.

CMO 30's first paragraph—the only paragraph that actually imposes any obligations on individual Category 7(e) Plaintiffs—merely requires those Plaintiffs either (1) to confirm that they have already submitted medical records showing 3 mm or more of filter protrusion and resulting physical impairment or harm or (2) to submit such records now.  The Order's second paragraph imposes administrative duties on Cook and the PSC to assemble and report the information submitted under paragraph 1, and the Order's final paragraph permits Cook to bring a motion sometime in the future should any Plaintiff fail to comply with the first paragraph.  These three procedural and administrative paragraphs are the sum total of CMO 30's directions to the parties.

### B.   CMO 30 Makes No Substantive Rulings and Dismisses No Cases

In the face of CMO 30's plain and limited language, the PSC's arguments premised on any supposed dismissal of actions or substantive rulings fail.  Nothing in CMO 30 dismisses any case, and nothing in CMO 30 makes any substantive rulings on any of the issues the PSC raises in the present motion (e.g., choice of law, effect on non-product liability claims, etc.).

Certainly, CMO 30 aims to put some of the MDL's Category 7(e) cases into a posture that makes their early resolution more likely, but that is what MDL case management orders are for.  By compelling each Category 7(e) Plaintiff to document a penetration of 3 millimeters or more

and a resulting physical impairment or harm or to admit no such documentation exists, the Court has required the identification of cases that may be subject to the same types of no-injury arguments that the Court found persuasive in *Sykes* and *Parton*. CMO 30, however, does **not** rule that the Court's holdings in *Sykes* and *Parton* **will** actually apply to any Category 7(e) cases, and the Order certainly does not dismiss or require the future dismissal of any cases that fall into that category.

In sum, CMO 30 merely identifies a group of cases with a certain attribute so that Cook can evaluate that attribute in those cases and can determine which (if any) of those cases are appropriate for motions on grounds similar to the grounds on which the Court dismissed *Sykes* and *Parton*. The PSC repeated assertions that CMO 30 itself makes any substantive rulings or dictates any case dismissals finds no support in the language of the Order.

### C.  CMO 30 Does Not Violate Plaintiffs' Due Process Rights.

Given that CMO 30 does not dismiss any cases and does not make any substantive rulings, the PSC's arguments that CMO 30 violates their due process rights in multiple ways fails as a matter of law. *Cf, e.g., Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 32 F.3d 1175, 1177-78 (7th Cir. 1994) (dismissing the appeal of a procedural, discovery order where there was no infringement on any "*plausible* substantive right") (italics in original).

### 1.  Plaintiffs who claim they cannot comply with CMO 30 can avoid any claimed prejudice simply by recategorizing their cases into the appropriate category.

As noted above, under both the CCF Order and CMO 30, a 7(e) categorization has always required both (1) a perforation or penetration of a strut or anchor 3 mm or more outside of the IVC wall, and (2) a symptomatic injury resulting from that perforation or penetration. Dkts. 9638-1 at 3-4; 21704 at 2. If a Plaintiff's case truly falls within Category 7(e), then the Plaintiff should be able to document satisfaction of both those requirements and should confirm or provide the required

documentation in compliance with CMO 30.  If, however, a Plaintiff *cannot* provide documentation of a 3+ mm penetration and resulting physical harm or injury, then that Plaintiff's case did not belong in Category 7(e) in the first place, and that Plaintiff can avoid any potential future consequences of CMO 30 simply by recategorizing the case into Category 6 or whatever other category it actually belongs in.  CMO 30 applies only to Category 7(e) cases, and if a Plaintiff's action is removed from Category 7(e) because it does not meet the category's criteria, CMO 30 will no longer apply to it, and any threat of later dismissal based on noncompliance with CMO 30 will vanish.

### 2.    CMO 30 does not deprive any Plaintiffs of the opportunity to be heard.

Contrary to the PSC's assertion, CMO 30 does not deprive any Plaintiff of the right to be heard on the merits of any claims.  *See* 22064 at 6-8 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  As discussed above, CMO 30 does not resolve or dispose of any Plaintiff's claim.  If and when Cook elects to bring a motion in any individual Plaintiff's case based on the information generated through CMO 30, that individual Plaintiff will have the full opportunity to be heard in response to that motion.  Regardless of whether Cook moves on procedural grounds (e.g., the Plaintiff's failure to submit the documentation required by paragraph 1 of CMO 30) or on substantive grounds (e.g., the Plaintiff's lack of a cognizable injury), the Plaintiff will have the opportunity to respond to the motion on its merits—the same opportunity the Court has afforded every other Plaintiff in this MDL whose case has been tested with a motion for dismissal or summary judgment.  *See, e.g.,* Dkt. 14601 (CMO 28).

The Court's adoption of CMO 30 without an evidentiary hearing, *see* Dkt. 22064 at 7-8, is neither surprising nor improper.  Docket control orders requiring plaintiff disclosures consistent with pled theories of the case "have been routinely used by courts to manage mass tort cases." *In re Vioxx Prod. Liab. Litig.*, 557 F. Supp. 2d 741, 743 (E.D. La. 2008); *In re Testosterone Replacement Therapy Prod. Liab. Litig.*, No. 1:14-CV-01748, 2018 WL 6258898, at *1 (N.D. Ill.

June 11, 2018) (adopting screening order, relying on "the Court's inherent authority to manage these judicial proceedings"). As one court described it:

> Case management is of the utmost importance in proceedings of this size, and MDL courts have even "greater discretion to organize, coordinate and adjudicate [their] proceedings." *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 866 (8th Cir. 2007) (affirming MDL court's dismissal of claims for failure to comply with discovery orders); *see also In re Phenylpropanolamine Prod. Liab. Litig.*, 460 F.3d 1217, 1229 (9th Cir. 2006) ("*In re PPA*") ("administering cases in multidistrict litigation is different from administering cases on a routine docket ...") (finding no abuse of discretion in MDL Court's dismissal of claims for failure to comply with discovery and product identification case management orders); *Freeman v. Wyeth*, 764 F.3d 806, 809 (8th Cir. 2014) (affirming MDL court's dismissal of claims for failure to provide medical authorizations). This is particularly true with respect to managing discovery and taking actions designed to move the cases "in a diligent fashion toward resolution by motion, settlement or trial." *In re PPA*, 460 F.3d at 1232.

*Id. at* \*2 (N.D. Ill. June 11, 2018). And the local rules make clear that the Court may issue an order without either oral argument or an evidentiary hearing. See Local R. 7-5 (d)(1) ("The court may: (1) grant or deny a request for oral argument or an evidentiary hearing in its sole discretion…").

CMO 30 makes no evidentiary findings, and simply makes the legal observation that "[n]o party or expert witness in this MDL has claimed that filter protrusion less than 3 mm is a legally cognizable injury or a 'perforation,'" Dkt. 21704 at 2, and requires Category 7(e) Plaintiffs to confirm or submit documentation in light of that comment. Should Cook later bring a motion relating to a particular Plaintiff, that Plaintiff would remain free to oppose that motion on any ground—including an argument that a protrusion of less than 3 mm is a legally cognizable injury. Then, as noted by the case the PSC quotes, the Court will "acknowledge and evaluate the unique circumstances an individual MDL plaintiff presents and act accordingly." Dkt. 22064 at 8 (quoting

*In re PPA Prods. Liab. Litig.*, 460 F.3d 1217, 1248 (9th Cir. 2006)).[2] CMO 30 does not deprive any Plaintiff of the opportunity to be heard.

### 3. CMO 30 does not determine whether any Plaintiff's claim constitutes an "actionable injury."

Contrary to the PSC's assertion, CMO 30 does not make "a Substantive Determination of Actionable Injury." Dkt. 22064 at 8-10. As discussed above, CMO 30 makes no substantive rulings on any issue; it merely requires the disclosure of information that may in the future prompt Cook to bring motions that seek such substantive rulings.

### 4. CMO 30 does not deprive any Plaintiffs of the right to litigate their claims under the law applicable to those claims.

Contrary to the PSC's assertion, CMO 30 does not deprive any Plaintiffs of the right to have the appropriate state's law applied to their claims. Dkt. 22064 at 10-11. CMO 30 does not mention choice of law and does not apply any state's law; it merely imposes disclosure obligations under 28 U.S.C. § 1407(b) and the Federal Rules of Civil Procedure. If and when Cook brings a motion seeking dismissal or summary judgment of a Category 7(e) Plaintiff's action, that Plaintiff remains free to argue both the applicability and the application of their preferred state's law.

---

[2] The circumstances of the cases the PSC cites as examples of due process violations differ markedly from the circumstances of CMO 30. None of the cited cases involved MDL case management orders that merely gathered and assembled information, and the cases are thus readily distinguishable. *See Hansberry v. Lee*, 311 U.S. 32, 40-42 (1940) (holding that binding plaintiffs through res judicata to prior decision in case in which they were not parties violated due process); *In re New York City Asbestos Litig.*, 130 A.D.3d 489, 490 (App. Div. NY 2015) (finding due process violation where court's CMO prevented defendants from knowing whether plaintiff would seek punitive damages until close of evidence); *Castillo v. U.S.*, 34 F.3d 443, 445 (7th Cir. 1994) (finding due process violation where court held evidentiary hearing on defendant's motion to vacate conviction and sentence and made factual findings without permitting defendant to testify); *In re PPA Prods. Liab. Litig.*, 460 F.3d 1217, 1250 (9th Cir. 2006) (finding due process violation where MDL court dismissed plaintiffs' claims based on minor delay in compliance with procedural order without giving plaintiffs an opportunity to be heard).

### 5.   CMO 30 does not impose any "temporal limitation" that eliminates legally cognizable claims.

CMO 30 does not impose any "temporal limitation" on any claims any Plaintiff may assert. *See* Dkt. 22064 at 11-12. As discussed above, CMO 30 makes no substantive rulings, and certainly does not rule that only "present injuries" can constitute actionable harm.  Moreover, the PSC's hypothetical argument—that an action by a Plaintiff with a past catastrophic injury who has recovered would be subject to dismissal for "lack of present injury," Dkt. 22064 at 12—is absurd. Cook would never move to dismiss on such a ground, and if it did, the Court would properly reject such an argument out of hand.

### 6.   CMO 30 does not adopt the holdings of *Sykes* and *Parton*.

Contrary to the PSC's assertion, CMO 30 does not adopt the Court's holdings in the *Sykes* and *Parton* cases.  *See* Dkt. 22064 at 14-15 (falsely claiming "that holding now applies to all cases").  Again, CMO 30 makes ***no*** substantive rulings, and it does not even mention either *Sykes* or *Parton.* Once the Category 7(e) Plaintiffs have submitted the information required by CMO 30, Cook may conclude that some Category 7(e) cases may be like *Sykes* and *Parton* and thus subject to similar motions with similar results, and may conclude that other cases present different circumstances that would undercut any such motions.  That is one reason CMO 30 exists:  to identify those cases that may be subject to no-injury motions to dismiss and those that are not. Cook understands that Plaintiffs may not want Cook to learn which of their cases may be subject to dismissal based on lack of injury, but that is not a reason to undermine CMO 30 or delay the progress of the MDL.

### 7.   CMO 30 does not deprive any Plaintiff of the right to claim economic harm as an injury.

Contrary to the PSC's assertion, CMO 30 does nothing to deprive any Plaintiff of the opportunity to seek economic harm as an actionable injury under a warranty or fraud theory.  Dkt.

22064 at 12-13.  CMO 30 merely gathers information; it makes no substantive rulings and does not mention economic harm.  Moreover, even the Court's rulings in the *Sykes* and *Parton* cases (which the PSC mistakenly assert CMO 30 adopts) made no such ruling; it expressly left those Plaintiffs' non-product-liability claims intact.  *See* Dkt. 20031 at 8 ("Counts V (breach of express warranty), VI (breach of implied warranty), VII (consumer fraud), and XI (punitive damages) of Plaintiffs' Complaints remain.").[3]

### 8.    CMO 30 does not violate the doctrine of collateral estoppel.

The PSC correctly argues that the Court's holdings in *Sykes* and *Parton* do not collaterally estop other Plaintiffs because those Plaintiffs were not parties in the *Sykes* or *Parton* cases.  *See* Dkt. 22064 at 15-17.  But CMO 30 does not purport to collaterally estop or otherwise bind any other Plaintiff to the *Sykes* and *Parton* holdings.  If and when Cook brings a no-injury motion for dismissal or summary judgment against any other Plaintiff, that Plaintiff remains free to make any argument it wishes, including an argument that a 3 mm asymptomatic perforation constitutes a compensable injury.  In that event, the Court may find its own holding in *Sykes* and *Parton* persuasive, but that holding will not be legally binding under collateral estoppel, and nothing in CMO 30 suggests otherwise.

### 9.    CMO 30 does not eliminate legally cognizable injuries from Plaintiffs' claims.

Contrary to the PSC's assertion, nothing in CMO 30 deprives any Plaintiff of any legally cognizable claim.  *See* Dkt. 22064 at 17-22.  Again, CMO 30 does not make any substantive rulings

---

[3] As a side note, the PSC's concern over the preservation of express warranty and consumer fraud claims rings somewhat hollow in any event.  As the Court is aware from the CMO 28 motion practice, Plaintiffs have thus far been unable even to plead a viable express warranty or consumer fraud claim, much less submit *prima facie* evidence in support of such claims.

and does not dismiss any claims, and Plaintiffs remain free to defend their claims against any future motion on any grounds they wish, including the medical testimony the PSC discusses in its motion.

To be sure, Cook disagrees with the PSC's and its experts' interpretation of the medical literature supposedly to contest the 3 mm standard for perforation.   And the PSC fails to acknowledge that it was *the PSC itself* that proposed the category of "Symptomatic Injury Cases" defined as "[c]ases where the Plaintiff alleges medical symptoms, conditions or complications caused by one or more of the following conditions: … (e) penetration or perforation – consisting of a filter strut or anchor extending 3 or more mm outside the wall of the IVC as demonstrated on imaging."  *See* Dkt. 8591 (Plaintiffs' Response to Cook Defendants' Motion for Screening Order and Bellwether Selection Plan).

Nevertheless, the Court need not resolve or even consider the soundness of the 3 mm standard in deciding the present motion because, again, CMO 30 *makes no judgment about those medical issues or about the legal effect of the medical definition it describes*.  CMO 30 merely sets out a definition that the Court believes will be useful in future motion practice, and directs Category 7(e) Plaintiffs to confirm whether they fall within that definition.  CMO 30 deliberately leaves any substantive ruling on what constitutes a legally cognizable injury to later motions in light of the specific circumstances of the cases in which those motions are brought.

### III.   CMO 30 DOES NOT ALTER THE REQUIREMENTS FOR CATEGORY 7(e) AND DOES NOT VIOLATE THE LAW-OF-THE-CASE DOCTRINE.

The PSC also asserts that "CMO-30 adopts a completely new definition of what constitutes a 'Symptomatic Injury Case' under Category 7(e) of the Case Categorization Form," Dkt. 22064 at 1, and argues that the law-of-the-case doctrine forbids such a change.  *See* Dkt. 22064 at  22-25 The PSC's argument both misstates the content of the Court's Orders and greatly overstates the law-of-the-case doctrine.  CMO 30 does *not* change the standard for placement in Category 7(e)

and it does *not* require any documentation other than what Plaintiffs' attorneys should already have had from the beginning of their cases.  Moreover, even assuming for the sake of argument that CMO 30 had added requirements regarding Category 7(e), the Court would have acted entirely within its power in making those additions.

### A.   CMO 30 Does Not Change the Requirements for Category 7(e) Categorization.

The PSC errs in asserting that CMO 30 "retroactively changes the definition of 'Symptomatic Cases' under Category 7(e) and adds new requirements and submissions to comply with case designations under Category 7(e)."  Dkt. 22064 at 24.

CMO 30 makes no changes in the definition of Category 7(e).  Category 7(e) cases are— and have always been—"*Symptomatic* Injury Cases," *see* Dkt. 9638 (emphasis added), "where the Plaintiff alleges medical **symptoms, conditions, or complications caused by** one or more of the following conditions," including "penetration or perforation."  *Id*. at 3-4 (emphasis added).  CMO 30 merely restates this definition, confirming that "cases in Category 7(e) are intended to be 'symptomatic' cases, *i.e.,* cases where the protrusion has caused a present physical impairment or physical harm."  *See* Dkt. 21704 at 2.  Thus, both under the original categorization order and CMO 30, a level 7(e) categorization has always required *both* (1) a perforation or penetration of a strut or anchor 3 mm or more outside of the IVC wall, *and* (2) a symptomatic injury resulting from that perforation or penetration.  Dkts. 9638-1 at 3-4; 21704 at 2.  CMO 30 presents no "new interpretation" of category 7(e).

### B.   CMO 30 Does Not Require "New" Evidence to Support Placement in Category 7, Only Confirmation of the Evidence Plaintiffs Should Already Have.

The PSC also errs in claiming that "[o]n its face, CMO-30 appears to require further case-specific expert testimony" to support Category 7(e) status.  Dkt. 22064 at 25.  In fact, the only

documentation CMO 30 requires is documentation that Plaintiffs and their attorneys should have had all along.

As noted above, categorizing a Plaintiff's claim under Category 7(e) has always required a 3+ millimeter perforation with resulting symptomatic injury.  Dkts. 9638-1 at 3-4; 21704 at 2.  By executing the categorization form designating Category 7(e), each attorney representing a Category 7(e) Plaintiff has already certified that the information available to the attorney, including the medical records submitted with the categorization form, support that categorization—a 3+ millimeter perforation with resulting symptomatic injury.  The certification language on the categorization form states:

> Certification: The undersigned counsel affirms that ***the categorization is based on a review of the available medical records*** including imaging records and reports. The submission of the specific medical record(s) attached, and submission of this form, are counsel's certification that ***the outcome, complication, or injury represented in Section D is the proper categorization for Plaintiff's case*** to the best of counsel's knowledge and belief.

Dkt. 9638-1 at 4 (emphasis added).

In other words, to submit a 7(e) categorization in the first place, a Plaintiff's attorney was *already* required to have sufficient information to support the claim that that Plaintiff had a perforation of over 3 mm that resulted in a symptomatic injury.  As discussed in the following section, the Court certainly would have had the authority to require Category 7(e) Plaintiff to provide new evidence or expert testimony if it wished to do so.  *See, e.g., In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2012 U.S. Dist. LEXIS 56309, at *5 (E.D. La. Apr. 23, 2012) (noting screening "orders [are] appropriate" because "it is not too much to ask a Plaintiff to provide some kind of evidence to support their claim that [a product] caused them personal injury").

Indeed, in any ordinary case, the supposed "burden" of identifying a plaintiff's claimed injury would be negligible, and the ID would be part of the plaintiff's initial disclosures under

- 14 -

Rule 26(a)(1)(A).  The inclusion of Plaintiffs' cases in this MDL does not change their character as individual cases, and it does not excuse Plaintiffs from the obligation to identify an actual factual basis for their claims.  Indeed, even before the categorization process, Plaintiffs' attorneys were required to have some evidentiary basis for claiming that the Plaintiffs had suffered injuries.  For the category 7(e) Plaintiffs at issue here, that evidence would necessarily have demonstrated that the Plaintiffs had experienced perforations of over 3 millimeters with resulting symptomatic injury. Again, CMO 30 merely directs those attorneys to certify that they have provided Cook with that evidence as the Court's previous orders required.

In sum, CMO 30 does not require "further case-specific expert testimony," as the PSC suggests.  Dkt. 22064 at 25.  CMO 30 merely requires Plaintiffs to certify that they have complied with the Court's order and Rule 11 by "**review[ing]** the medical evidence submitted with his/her Case Categorization Form and **confirm[ing]** he/she has provided [applicable evidentiary support]."  Dkt. 21704 at 2 (emphasis added).

### C. The Court Has the Authority to Impose Any Additional Disclosure Requirements Reflected in CMO 30.

Even assuming for the sake of argument that CMO 30 had altered the requirements of the CFF, this Court was fully empowered to impose additional disclosure requirements—including expert disclosure requirements—through a subsequent case management order, and nothing in CMO 30 violates the law-of-the-case doctrine.

Although the PSC invokes the term "law-of-the-case doctrine" at two points in its brief, *see* Dkt. 22064 at 22, 24, the motion never discusses the doctrine or cites to any cases that apply it.  Cook assumes that the PSC is referring to the version of the doctrine that discourages district court judges from revisiting their prior rulings in the same case, in the interest of avoiding constant

relitigation of issues already decided. *E.g., Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012).[4] But the law-of-the-case doctrine is by no means absolute, and a district court judge remains free to alter any prior interlocutory rulings up to the time judgment is entered. *See* Fed. R. Civ. P. 54(b) (providing that, until entry of a final judgment, "any order … may be revised at any time before the entry of a judgment adjudicating all the claims").

Moreover, the Seventh Circuit has expressly held that "the law of the case doctrine is discretionary and does not preclude a district court from reopening a decided issue." *Galvan*, 678 F.3d at 587  (citing *United States v. Harris*, 531 F.3d 507, 513 (7th Cir.2008) *see also Avitia v. Metro. Club of Chicago*, Inc., 49 F.3d 1219, 1227 (7th Cir.1995) (referring to the doctrine as "no more than a presumption, one whose strength varies with the circumstances").   Thus, even assuming that CMO 30 added requirements or duties not imposed by prior CMOs, the Court was well within its power to impose those requirements and duties as part of its administration of this MDL.

The PSC also points repeatedly to Cook's earlier motions seeking dismissal of cases for Plaintiffs' failure to submit documents required by the original CCF Order, arguing that Cook must somehow justify why it did not also bring earlier motions to dismiss addressing the substance of the documents submitted.  *See* Dkt 22064 at 3, 22, 23.  But these are two entirely different issues. Cook's initial motions were directed at Plaintiffs who had not submitted the required categorization form or the required medical records *at all*. *See* Dkts. 10063, 10211, 10622 at 1

---

[4] Another variation of the doctrine applies to issues decided on appeal where a case is then remanded to the district court, and provides that "matters decided on appeal become the law of the case to be followed in all subsequent proceedings in the trial court and, on second appeal, in the appellate court, unless there is plain error of law in the original decision."  *Jarrard v. CDI Telecommunications, Inc.*, 408 F.3d 905, 911–12 (7th Cir. 2005) (citing *Evans v. City of Chi.*, 873 F.2d 1007, 1013-14 (7th Cir.1989)). Because the PSC's motion does not address remand issues, Cook assumes the PSC is invoking the version of the doctrine discussed in the text.

(Court Order noting that Cook's motion addressed Plaintiffs who "have no Case Categorization Form on file" and Plaintiffs who "did not submit medical records in support of their Case Categorization Form"). These earlier motions did not address the *accuracy* of Plaintiffs' categorizations; Cook relied on Plaintiffs and their attorneys to categorize their cases accurately. Only later, when Cook had the opportunity to review the substance of Plaintiffs' submissions, did Cook discover the inconsistencies and omissions that prompted Cook's request for CMO 30. Thus, contrary to the PSC's implication, Cook's earlier motions concerning CCFs had nothing to do with the issues addressed by CMO 30.

Beyond Cook's recent discovery of inaccuracies in the Category 7(e) categorizations, the Court had particular discretion to supplement its previous orders because of another new development: a substantive ruling it made *after* the earlier CMOs cited in the PSC's motion. *See Galvan*, 678 F.3d at 513 (holding that "the law of the case doctrine applies with less force" where order is interlocutory and new development occurred since original order). As the PSC's motion acknowledges, in the time since the entry of the CCF Orders cited by the PSC, *see* Dkts. 9638, 13046, the Court granted Cook's motion to dismiss *Sykes* and *Parton*, two cases involving asymptomatic perforations of more than 3 mm, on the ground that the Plaintiffs did not have a "present physical harm." *See* Dkt. 20031 (*Sykes* and *Parton* order). Because of this ruling in *Sykes* and *Parton*, the need arose to identify other cases that might be subject to dismissal on similar grounds, *i.e.*, cases involving asymptomatic perforations under 3 mm. This "new development" fully justified any supposed change in certification requirements contained in CMO 30. *See Galvan*, 678 F.3d at 513 (holding "first adversarial presentation of the new trial issue" was "new development" permitting revisiting prior order).

Likewise, even assuming for the sake of argument that CMO 30 *had* in fact imposed a new requirement for expert testimony confirming the 3+ mm penetration and resulting physical

impairment or harm, the Court would have been well within its authority to require such testimony. Many MDL courts have imposed such expert disclosure requirements as part of docket control orders, and circuit courts have upheld and enforced that authority. *See, e.g., In re Avandia Marketing, Sales Practices & Prods. Liab. Litig.*, 687 F. App'x 210, 2017 WL 1401285, at *214 (3d Cir. Apr. 19, 2017) (affirming MDL court's dismissal for failure to comply with an order requiring future plaintiffs to provide an expert report; "multidistrict litigation 'presents a special situation, in which the district judge must be given wide latitude with regard to case management in order to effectively achieve the goals set forth by the legislation that created the Judicial Panel on Multidistrict Litigation' ") (citation omitted); *In re Zimmer Nexgen Knee Implant Products Liability Litigation*, 2016 WL 3281032, slip op. (N.D. Ill. June 10, 2016) (entering screening order requiring each plaintiff in bellwether trial track in medical device MDL to identify particular injury claims and provide a signed expert declaration regarding causation in the form attached to the order).

In sum, CMO 30 does not alter past Orders, nor does it alter the effect of submissions the parties made in compliance with past Orders.  And even assuming for the sake of argument that CMO 30 had added disclosure requirements, that addition was perfectly proper based on intervening events that strongly suggested that specific, more precise information was needed for the efficient administration of the MDL

## IV.   CMO 30 IMPOSES NO UNUSUAL OR UNDUE BURDEN ON PLAINTIFFS OR THEIR ATTORNEYS.

The PSC also argues that CMO 30 imposes an intolerable burden on Plaintiffs that makes compliance "unattainable."  Dkt. 20064 at 25-30.  Like many of their other arguments, however, this argument rests on a false premise. The PSC asserts that "[o]n its face, CMO-30 appears to require case-specific expert testimony," *id.* at 25, and then spends five pages complaining about

how expert testimony should not be required and how the requirement will impose impossible burdens on Plaintiffs and their attorneys.

In fact, of course, CMO 30 does ***not*** require case-specific expert testimony, either "on its face" or anywhere else.  As discussed repeatedly above, CMO 30 only requires Category 7(e) Plaintiffs and their attorneys either to confirm that they have already submitted medical records showing 3 mm or more of filter protrusion and resulting physical impairment or harm or to submit such records now.  And again, this is information that every Category 7(e) Plaintiff had or should have had before commencing an action, or at the very least when the Plaintiff categorized the claim as falling within Category 7(e).  CMO 30 imposes no requirement to gather new information.

If a particular Plaintiff's original categorization as 7(e) was based on an expert opinion, of course, then the Plaintiff may *choose* to submit that opinion to comply with CMO 30; that is why CMO 30 permits submission of "a medical record or expert report."  But CMO 30 itself does not *require* expert testimony at all, much less new expert testimony.

The PSC also objects to the May 28, 2022, deadline for individual Category 7(e) Plaintiffs to comply with CMO 30, a deadline that Cook has already agreed to extend to June 28, 2022.  Dkt. 22064 at 25-27.  As the PSC's own motion acknowledges, however, Cook first proposed CMO 30 back in October of 2021, over six months ago, and Plaintiff have been on notice since that time that they might have to document their claims for inclusion in Category 7(e).  The Court entered CMO 30 on March 29, 2022, and gave Plaintiffs 60 days to comply.

This period is reasonable.  Indeed, As noted above, if Plaintiffs' cases were not part of an MDL, no one would even question that a 60-day deadline for a plaintiff to produce such basic, threshold evidence that a plaintiff has actually suffered the injury claimed was reasonable.  The presence of Plaintiffs' cases in the MDL should not and does not alter Plaintiffs' obligations. *See In re Bridgestone/ Firestone, Inc., Tires Products Liability Litigation*, 2005 WL 1030422, at \*1-2

(S.D. In. Apr. 27, 2005) (granting judgment as a matter of law, noting "the plaintiff bears the burden of providing that the defective product supplied by the defendant was a substantial factor in bringing about *her* injury") (emphasis in original).

The only Category 7(e) Plaintiffs who will be substantially burdened by CMO 30 are those who categorized their cases as symptomatic perforation cases under Category 7(e) without having any medical documentation to support that categorization.

## V.    CMO 30 CONTAINS NO MATERIAL AMBIGUITIES.

The PSC also argues that ambiguities in CMO 30 make the Order unworkable.  Dkt. 20064 at 30-31.  But these supposed ambiguities are largely manufactured by the PSC, and none is sufficiently significant to undermine CMO 30 as a whole.  Cook addresses each of these supposed ambiguities in this chart:

| PSC's Claimed Unaddressed "Ambiguities"  (*see* Dkt. 20064 at 31) | Cook's Response |
|---|---|
| Whether Plaintiffs have not complied with CMO-30 if the filter perforation/ penetration is identified by "grade" rather than a specific millimeter measurement | No.  CMO 30 defines perforation as more than 3mm penetration. If a Category 7(e) Plaintiff submits documentation that uses a different scale that the medical community accepts as showing a substantial perforation, Cook would not as a practical matter move to dismiss the Plaintiff's case for noncompliance with CMO 30. |
| Whether Plaintiffs have not complied with CMO-30 if the perforation/penetration is identified as abutting adjacent organs, but without a specific millimeter measurement identified. | Yes.  Under the plain language of CMO 30, unless there is a physical injury or impairment, mere abutment to an adjacent organ does not meet the definition.[5] |

---

[5] Cook has already agreed in its response to the PSC's motion for an extension of the CMO 30 deadline and Cook's accompanying proposed Order that where a Plaintiff's medical record or expert report that clearly states that an IVC filter strut is within the duodenum, kidney, spleen, pancreas, spine, or vertebra, that Plaintiff need not provide documentation of a perforation of 3 mm or more or accompanying injury.  *See* Dkts. 21966 at 3; 21966-2 at 2-3.  But mere abutment without evidence of entry into another organ would not be sufficient.  *See id.*

| Whether CMO-30 applies to a plaintiff alleging filter perforation/penetration, in addition to other categories of injuries in the CCF. | Yes.  By its terms, CMO 30 applies to *all* Category 7(e) cases.  Other categorizations may affect a subsequent motion, but it does not alter the requirements of CMO 30. |
|---|---|
| Whether CMO-30 applies to a plaintiff alleging filter perforation, supported by medical records using the medical term, "perforation," given the SIR defines "perforation" to means struts protruding outside the caval wall by 3 or more millimeters and any doctor should be assumed to understand the term and to use it properly | CMO 30 applies to all Category 7(e) cases alleging symptomatic perforation, and requires a medical record or expert report "supporting…IVC filter protrusion '3 or more mm outside the wall of the IVC as demonstrated by imaging."  This unambiguously requires evidence of imaging of over 3 or more mm. |
| What additional evidence is sufficient under CMO-30, beyond the medical records submitted by Plaintiffs, "that the documented protrusion has caused a present physical impairment or physical harm." | None.  CMO 30 requires only a "medical record or expert report supporting…that the documented protrusion has caused a present physical impairment or physical harm." |
| Whether a described "complication" in a medical record satisfies CMO-30 given the CCF contains the word "complication," which Cook omitted from CMO-30 before tendering it to the Court. | If the "complication" constitutes a present physical impairment or physical harm," it falls within CMO 30's definition.  If not, the complication does not fall within the definition. |

In sum, the PSC's claimed ambiguities are simply red herrings fabricated to create the illusion of confusion.  Notably, the PSC does not offer even a single example of a case in which one of these "ambiguities" actually arises and could affect a Plaintiff's response to CMO 30.  The claimed ambiguities do not support abandonment or alteration of CMO 30.

There is no need for clarification or amendment of CMO 30, or for additional meet and confer concerning the Order.  *See* Dkt. 20064 at 32-33.  If an individual case should raise a *real* question about whether or how CMO 30 applies to a specific situation—and nothing in the PSC's motion suggests that any such cases or questions *actually* exist—Cook and the individual Plaintiff's attorney involved can discuss the issue and come to an agreement, or, in the unlikely event that does not occur, seek the Court's guidance.  But nothing the PSC has presented justifies any type of wholesale revisitation of the justification for or terms of CMO 30.

## CONCLUSION

For the reasons stated above, the Cook Defendants urge the Court to deny all aspects of Plaintiffs' Steering Committee's Motion for Relief from CMO-30, or in the Alternative, Motion to Amend CMO-30, and to move forward with the administration and resolution of this MDL.

Dated: June 10, 2022

<div style="margin-left: 40%;">

Respectfully submitted,

/s/  Andrea Roberts Pierson
Andrea Roberts Pierson
Jessica Benson Cox
FAEGRE DRINKER BIDDLE & REATH LLP
300 North Meridian Street, Suite 2700
Indianapolis, Indiana  46204
Telephone:          (317) 237-0300
Facsimile:          (317) 237-1000
andrea.pierson@faegredrinker.com
jessica.cox@faegredrinker.com


James Stephen Bennett
FAEGRE DRINKER BIDDLE & REATH LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana  46802
Telephone:          (260) 424-8000
Facsimile:          (260) 460-1700
stephen.bennett@faegredrinker.com

*Attorneys for Defendants Cook Incorporated, Cook Medical LLC f/k/a Cook Medical Incorporated, and William Cook Europe APS*

</div>

## CERTIFICATE OF SERVICE

I certify that on June 10, 2022, a copy of the foregoing **COOK'S OPPOSITION TO PLAINTIFFS' STEERING COMMITTEE'S MOTION FOR RELIEF FROM CMO-30, OR IN THE ALTERNATIVE, MOTION TO AMEND CMO-30** was filed electronically.  Parties may access this filing through the Court's electronic records system.

/s/ Andrea Roberts Pierson
Andrea Roberts Pierson

US.350306472.03

- 23 -