**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

IN RE: COOK MEDICAL, INC., IVC
FILTERS MARKETING, SALES
PRACTICES AND PRODUCT LIABILITY
LITIGATION

_____

This Document Relates to: All Actions

_____

Case No.: 1:14-ml-2570-RLY-TAB
MDL No. 2570

**PLAINTIFF STEERING COMMITTEE'S REPLY IN SUPPORT OF IT'S**
**MOTION FOR RELIEF FROM OR TO AMEND CMO 30**

Cook's response ignores or omits factual occurrences which belie any purported "waiver" of Plaintiffs' due process rights . First, CMO 30 was submitted "informally" during the November 9, 2021, CMC as one of many possible ways for the MDL to proceed and for the parties to "noodle on." The Court's last indication was there would be additional "informal" discussions on the matters at hand. Those discussions did not and have not yet occurred, and before the next CMC the Court adopted CMO 30 depriving Plaintiffs of their due process rights (i.e., the rights of notice and to be heard on the issues). Plaintiffs, therefore, could not waive the due process rights they never received. Additionally, Cook ignores that after the November 9, 2021, CMC, the PSC--without request of the Court--submitted a letter stating their objections based on their due process rights. That letter more than constitutes Plaintiffs' "expression of an intent to advocate, not abandon" their due process rights, thereby removing any specter of waiver. And since the substantive issues under a motion for reconsideration under Rule 60 or 54 are the same, and since there was

no waiver, it is irrelevant which procedural mechanism the motion was used for filing the motion.

Second, Cook's attempt to recast CMO 30 as "purely procedural" or "administrative" and as containing mere "observations" when the substantive factual findings, in CMO 30, provide the only basis for the new "certification requirements" (taken from the *Sykes* and *Parton* cases), improperly restricts the definition of the cognizable claims Plaintiffs may assert. Cook's response, also ignores the evidence, submitted by Plaintiffs, demonstrating the disputed nature of the findings in CMO 30. The Court's inherent power to manage the MDL cannot be used as a mechanism to address this evidence—unrebutted and undisputed by Cook--or the disputed issues of fact outside the Federal Rules of Civil Procedure or in violation of Plaintiffs' due process rights. And neither a *post hoc* "show cause" hearing or "re-categorization" can cure the due process violations that occurred before or with the adoption of CMO 30.

Third, CMO 30 is hopelessly ambiguous. Cook's attempt at clarification injects new undefined terms and adds additional confusion. Therefore, CMO 30 is beyond repair and should be vacated or wholesale changes made within it.

Finally, Cook's *ad hominem* attack against Plaintiffs for protecting their due process rights is without any basis. Cook ignores that we are here *not* because of Plaintiffs' actions but because of Cook's own efforts to bypass the Federal Rules of Civil Procedure and usurp Plaintiffs' due process rights. For instance, Cook drafted CMO 30 which contains substantive findings of fact that are false or disputed. And it was Cook who placed the "show cause" procedure into CMO 30 improperly shifting the burden to Plaintiffs to prove

2

why their cases should *not* be dismissed based on findings from the *Sykes* and *Parton* cases placed in CMO 30 by Cook. Thus, Plaintiffs do not seek unnecessary delay but to address the violations of their constitutional rights stemming from CMO 30.

### A. Plaintiffs Did Not Waive Their Due Process Claims

Plaintiffs' due process rights were violated before and with the adoption of CMO 30. First, CMO 30 was submitted and adopted without adequate notice and opportunity to be heard to Plaintiffs; and second its adoption resulted in a decision on disputed issues of law and fact. [Dkt. 22064 at 11]. Cook ignores the facts and circumstances that led to the adoption of CMO 30—there was no motion, no briefing, or evidentiary hearing—then claims Plaintiffs "could have raised" their due process arguments before. [Dkt. 22193 at 4]. Cook is wrong. "Waiver applies in situations in which a party intentionally relinquishes a known right or the party's consent warrants an inference of such relinquishment." *Anderson v. Catholic Bishop of Chi.*, 759 F.3d 645, 651 (7th Cir. 2014)[1]. As set forth below, the undisputed facts demonstrate that Plaintiffs were never afforded their due process rights to notice and a meaningful hearing on CMO 30 before it was adopted. Therefore, Plaintiffs could never "voluntarily" or "knowingly" waive due process rights.

The facts regarding the "informal" submission and subsequent adoption of CMO 30 are not in dispute. CMO 30 was provided to the Court as a draft at the Case Management Conference ("CMC") held on November 9, 2021. [November 9, 2021, CMC Tr. at 55:4-5]. Cook acknowledged this at the hearing--"…**we don't have a motion in front of you**

---

[1] Already cited by this Court Dkt. 13187 at 4 (citations omitted).

but we're having a candid conversation about what we are all noodling on." [*Id*. at 81:20-22]. Other "possibilities" to "noodle on" after the hearing included remand of Plaintiffs' cases to their respective home courts and a *Lone Pine* order.[2] [*Id*. at 73 and 79]. At the end of the CMC, the Court indicated further "informal" meetings were in order to "take a look at. . ." what was presented at the CMC. [*Id.* at 81:24-82:6]. The Court did not request briefing on the or require the submission of evidence or set a future hearing. [*Id*]. Nor did the Court ask the Plaintiffs to respond in any way or even suggest edits of the draft order. Instead, the Court only stated that there would be more "informal" discussions, leading Plaintiffs to reasonably believe that CMO 30 was not being formally considered by the Court and would not be ruled on in its draft form.

Because there was no motion, briefing, or submission of evidence there can be no waiver. "The parties should have a full opportunity to develop their positions and the district court to rule on them." *Zbaraz v. Quern*, 596 F.2d 196, 202 (7th Cir. 1979) At a minimum, the parties must at least be afforded the opportunity to fully brief the issues. *Jackson Cnty. Bank v. Dusablon*, 2020 WL 707844, at *11 (S.D. Ind. Feb. 12, 2020) (evidentiary hearing not required when "an opportunity for the issues to be fully

---

[2] As with CMO 30 the possibility of a *Lone Pine* order was *not* the subject of a motion, briefing or an evidentiary hearing. And is not appropriate here. *McManaway v. KBR, Inc.,* 265 F.R.D. 384, 388 (S.D. Ind. 2009) ("A *Lone Pine* order should issue only in an exceptional case and after the defendant has made a clear showing of significant evidence calling into question the plaintiffs' ability to bring forward necessary medical causation and other scientific information."). *See also, Strudley v. Antero Res. Corp.,* 350 P.3d 874, *aff'd,* 347 P.3d 149 (Colo. App. 2013): Accordingly, some courts have refused to enter Lone Pine orders where existing statutes, rules, and procedures provide sufficient protection against frivolous or unsupported claims and burdensome discovery. We find it preferable to yield to the consistency and safeguards of the mandated rules of civil procedure, as well as the Court's own flexibility and discretion to address discovery disputes as they arise, as opposed to entering the rigid and exacting Lone Pine order that Defendants have proposed. Cook failed to make any such showing and cannot make such a showing in light of the evidence submitted by Plaintiffs in the Motion that demonstrate at a minimum that disputed issues of fact remain regarding what constitutes a "perforation" and legally cognizable injury. That evidence was never addressed and remains undisputed by Cook.

.

4

briefed by the parties had been provided.") Plaintiffs were never afforded their due process rights to address CMO 30 through motion practice, briefing or an evidentiary hearing prior to its adoption. This prejudiced Plaintiffs and violated their due process rights. *Employers Ins. v. Banco De Seguros Del Estado*, 199 F.3d 937, 942 (7th Cir. 1999) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.")(citations omitted). Since Plaintiffs were never afforded their due process rights to notice or an opportunity to brief the issues raised by CMO 30 or submit evidence, they never relinquished those rights, much less on a "voluntary" and "knowing" basis as required for waiver. Plaintiffs did not and in fact could not waive any right.

Moreover, even though the Court did not invite any response to the draft of CMO 30, the PSC submitted a letter to the Court setting forth their objections based, in part, on due process. [Dkt. 22064-3 at 1]. For example, the letter states:

> The PSC does not have an attorney-client relationship with these folks; individual lawyers do. If Cook wants cases dismissed, **it needs to file a motion so that each individual plaintiff is given notice and the opportunity to be heard before their case is dismissed. . .**

> If Cook wants a case dismissed, it should do what every litigant does: file a motion. That gives **each individual person the ability to respond, be heard, and appeal** if they lose. These are not throw-away concepts that can be disregarded in the name of "efficiency"; these are the cornerstones of our democratic system of justice. **If Cook wants the Court to dismiss a case, it needs to file a motion, provide evidence in support, and the legal authority justifying the request.**

[*Id.* at 1-2] (emphasis added). These objections are based on the violations of Plaintiffs' due process rights. *Anderson* 759 F.3d at 651 ("The letter relied upon by Anderson establishes that no waiver occurred here; rather than relinquish a known right, the Catholic Bishop identified the statute of repose and made it clear that it considered the claim to be time-barred as a matter of law. **That is an expression of an intent to advocate, not abandon, a known right.**") (emphasis added). The letter submitted by the PSC stating their objections to CMO 30 constitutes Plaintiffs' "expression of an intent to advocate, not abandon" their due process rights.[3] Therefore, Plaintiffs did not waive their due process rights.

Cook's argument that Plaintiffs brought a motion to reconsider CMO 30 under the wrong rule of procedure—Rule 60(b) v. 54(b)—misses the mark and is irrelevant.  The proper procedure for the Motion is convoluted and unclear because of Cook's failure to follow the rules when it submitted CMO 30, and the so-called "informal" process that resulted in its adoption. Compounding this is that "technically" there is no motion to reconsider under the Federal Rules of Civil Procedure. *United States for use & benefit of Sustainable Modular Mgmt., Inc. v. Custom Mech. Sys., Corp.*, 2017 WL 4405050, at *1 (S.D. Ind. Oct. 4, 2017). Regardless of whether the vehicle for a motion to reconsider is Rule 54(b) or 60(b), the relief sought under both rules is the same both procedurally and substantively. *Keene Corp. v. Intern' Fidelity Ins. Co.*, 561 F. Supp. 656, 665 (N.D. Ill. 1983) ("Motions for reconsideration serve a limited function: to correct manifest errors of

---

[3] See also Dkt. 13187 at *4 (S.D. Ind. Mar. 31, 2020) where in a similar situation in this MDL where the roles were reversed the Court held that Cook did "not waive a defense by asking the court to resolve the defense." (quoting *Anderson v. Catholic Bishop of Chi.*, 759 F.3d 645, 651 (7th Cir. 2014).

law or fact or to present newly discovered evidence."). Thus, substance as opposed to form shall govern the issues presented in the Motion.

The cases Cook cites addressing Rule 54(b) are easily distinguished. All of them have one thing in common: In each case, the issues were properly before the Court and addressed according to the rules, i.e. the issues were fully briefed; or a jury verdict was reached. Only after each party was accorded their full due process rights to notice and right to be heard on the issues was the Court asked to reconsider its ruling or verdict.[4] That did not occur here. And while the Court in *Sustainable Modular Management Inc.* No. 2017 WL 4405050, said Rule 54(b) provides the Court the authority to reconsider interlocutory orders, CMO 30 goes beyond that, adopting findings of fact and conclusions of law from the final judgment in the *Sykes* and *Parton* cases applying them to Plaintiffs in a show cause procedure as if they are final. Placing it squarely under Rule 60 ("Relief from Judgment or Order"). At a minimum it is unclear whether the Motion should be brought as a motion to reconsider, or under Rule 60 or 54 or some combination. Instead, what is clear is that relevant and substantive issues regarding the violations of Plaintiffs' due process rights will control rather than the form of the motion. Especially here where there was no

---

[4] In *Arnold v. Keris*, Plaintiff filed a motion to reconsider the court's order denying the briefed motions related to his request for preliminary injunction *Arnold v. Keris*, No. 118CV01779JRSDLP, 2018 WL 8803446, at *1 (S.D. Ind. Dec. 10, 2018); In *Davis v. Carmel Clay Schs.*, the Prosecutor appealed the Court's order denying in part a briefed motion to quash and granted a motion to compel. *Davis v. Carmel Clay Sch.*, 286 F.R.D. 411, 412 (S.D. Ind. 2012); In *Matter of Prince*, bankruptcy committee filed a motion to amend the judgement under FRCP 59(e), after several hearings and testimony regarding Dr. Prince's income. *Matter of Prince*, 85 F.3d 314, 318 (7th Cir. 1996).; In *Granite St. Ins. Co. v. Degerlia*, Plaintiffs filed a motion for reconsideration after the Court granted Defendants fully briefed and considered motion for summary judgement. *Granite State Ins. Co. v. Degerlia*, 925 F.2d 189, 191 (7th Cir. 1991).; In *Burton v. McCormick*, Plaintiff filed a motion for reconsideration after Defendants' joint motion to dismiss was granted. *Burton v. McCormick*, 2011 WL 1792849, at *1 (N.D. Ind. May 11, 2011). In *Baker v. Lidgren*, the Plaintiff's appeal was based on FRCP 54(d)(1) regarding the court's denial of a fully briefed and considered motion for costs after a jury verdict. *Baker v. Lindgren*, 856 F.3d 498, 501 (7th Cir. 2017).

waiver by Plaintiffs of their due process rights because they never received those rights; i.e. the draft CMO 30 was never the subject of a motion, Plaintiffs were never put on notice the Court may enter it, and were never given the opportunity to brief it before its adoption.

## B. CMO 30 Violates Plaintiffs' Due Process Rights.

### 1. CMO 30 Contains Substantive Findings of Fact in Violation of Plaintiffs Due Process Rights.

Cook's attempt to recast CMO 30 as "purely procedural," and as not making "any substantive rulings" ignores reality. First, the timing of CMO 30 is telling. On September 28, 2021, the summary judgment dismissing the *Sykes* and *Parton* cases was entered. [Dkt. 20031]. As set forth in the Motion, at the next CMC, the parties and the Court held a discussion on how the MDL should proceed with Cook informally raising and providing a draft of CMO 30 to the Court. *See e.g.*, [Dkt. 22064, §E.1, pp. 14-15]. And many of the findings in CMO 30 come from the findings from the final judgment in the *Sykes* and *Parton* cases.  [*Id.* at 5-6].("Indeed, the injuries caused by the original perforation and other physical harms and injuries suffered by Sykes and Parton were acknowledged by the Court but ultimately dismissed because they were not "present physical harms.") Cook does not provide a meaningful or substantive response to these facts. For instance, it does not and indeed cannot dispute that the "present physical harms," defined in the *Sykes* and *Parton* judgment, is now contained in CMO 30 and applicable to all other Plaintiffs.

Second, these are "substantive rulings." CMO 30 is a court order and court orders have meaning and effect on the substantive rights of the parties. *In re Trans Union Corp. Privacy Litig.*, 741 F.3d 811, 816 (7th Cir. 2014) ("Litigants as well as third parties must

be able to rely on the clear meaning of court orders setting out their **substantive rights and obligations**, and appellate courts should interpret those orders in the same manner.")(emphasis added). CMO 30's "clear meaning" is self-evident from the ordinary meaning of its plain language, which adversely effects the claims of Plaintiffs, in violation of their dues process rights. Cook's response is to "spin" and re-interpret the meaning of the language of CMO 30 in a misguided attempt to nullify the effects of CMO 30 on Plaintiffs' due process rights as purely "procedural" and no--substantive must be rejected. First, Cook's claim that CMO 30 does not make "substantive rulings" is patently false and ignores the plain language of CMO 30, which contains the following substantive findings of fact:

> Category 7(e)'s definition of Penetration or Perforation is consistent with the testimony of Plaintiffs' expert witnesses in the MDL.[2] (Filing No. 8591 at 15). No party or expert witness in this MDL has claimed that filter protrusion less than 3 mm is a legally cognizable injury or a "perforation." Furthermore, cases in Category 7(e) are intended to be "symptomatic" cases, *i.e.*, cases where the protrusion has caused a present physical impairment or physical harm.

[Dkt. 21704 at 2]. These are not mere "observations" that have no effect as claimed by Cook. The first sentence cites to evidence[5] for support. [Dkt. 9322 at 2, n.2]. The second sentence, which is false,[6] and unsupported by evidence, is an affirmative statement of fact contained in a court order and, therefore, a factual finding.  The same is true for the third sentence requiring a "present physical impairment." These are "substantive" factual

---

[5] Evidence is an item which a litigant proffer to make the existence of a fact more or less probable. Fed. R. Evid. 401.
[6] Cook ignores the evidence submitted by the PSC in their Opening Brief which demonstrates that both parties and experts do in fact claim that a "filter protrusion less than 3 mm" can and in the cases of *Sykes* and *Parton* is a legally cognizable injury rendering this finding of fact false. *See e.g.* Dkt. 22064, the Motion, Section E.1 at pp. 14-15. Cook does dispute this in its response.

findings not only because they are contained in a court order but because they provide the basis for the adoption of CMO 30, and the requirements contained in the rulings of the Court. Thus, the factual findings provide the basis for what is being ordered by the Court. And lest there be any doubt regarding the "substantive"[7] nature of these factual findings, they are also reflected in the obligations imposed on Plaintiffs by CMO 30 as follows:

> 1.      Plaintiffs who categorized as Category 7(e) shall review the medical evidence submitted with his/her Case Categorization Form and confirm he/she has provided a medical record or expert report supporting (a) IVC filter protrusion "3 or more mm outside the wall of the IVC as demonstrated by imaging," and (b) that the documented protrusion has caused a **present physical impairment or physical harm**.

[Dkt. 21704 at 2] (emphasis added). These obligations include the temporal limitation of a "present physical impairment or physical harm." Cook once again attempts to diminish the clear meaning of this language by ignoring the term "present." Claiming that giving the term its ordinary meaning that would result in dismissal of cases where a Plaintiff suffered as past injury is "absurd." [Dkt. 22193, at 10]. But Cook took the opposite position in *Sykes* and *Parton*. [Dkt. 13847, at 11] ("That is exactly the point: they are not *presently* suffering any symptoms or complications; therefore, they do not *presently* have a tort claim.") Thus, Cook's claim it "would never move to dismiss" on this basis rings hollow.

The clear language of CMO 30 and Cook's intent to have every case "like *Sykes* and *Parton*" (Dkt. 22193, at 10) dismissed based on it cannot be ignored. CMO 30 has meaning, setting out the "substantive rights and obligations" that Plaintiffs must comply with and that third parties and the appellate courts "must be able to rely on." *In re Trans Union Corp.*

---

[7]"An essential part or constituent or relating to what is essential." Black's Law Dictionary, 1597 (4th ed., 1968).

*Privacy Litig.*, 741 F.3d at 816. Because Plaintiffs are currently bound by CMO 30 they cannot ignore any of its express and substantive terms. And Cook cannot change any of the terms of CMO 30 or require the Court to ignore them. Thus, Cook's newly minted position that the term "present" in CMO 30 has no substantive meaning is irrelevant, is not binding on the Court and, therefore, cannot be relied on by Plaintiffs.

### 2. The Substantive Findings in CMO 30 Are False Or At Minimum There Are Disputed Issues of Fact.

The substantive findings in CMO 30 are *disputed* despite what Cook alleges. At the November 9, 2021, CMC, Cook alleged that everyone, (including Plaintiffs' experts and the PSC), agrees that absent a "three millimeters [perforation] with some symptoms there is no injury." [November 9, 2021, Tr. at 53:21-23]. This is false. [Dkt. 22064 at 14-15]. Cook ignores the evidence, including expert testimony, and Plaintiffs' position that a hole in the wall of the IVC is a legally cognizable injury. [*Id*.] Cook also ignores that the SIR definition of "perforation or penetration" in category 7(e) of "3 millimeters or more" beyond the IVC wall is nothing more than a metric or construct intended to aid diagnosing physicians dealing with the vagaries of CT scans of varying clarity, though surely if a perforation is 3mm outside the wall that is a perforation. [*Id*.] And there are other ways to diagnose whether the IVC filter caused a hole in the IVC wall. [*Id*. at 19-20]. The SIR definition is not the only means of defining a "perforation or penetration" of the IVC by an IVC filter as currently set forth in CMO 30, rendering it incorrect or at least based on disputed issues of fact.

Cook does not address or dispute the evidence submitted by Plaintiffs contained in the Motion. This evidence, at a minimum, places the substantive findings in CMO 30, including those based on to the *Sykes* and *Parton* cases, in dispute, with respect to each Plaintiff not a party to the *Sykes* and *Parton* cases. Additionally, CMO 30 improperly codifies the metric contained in the SIR definition as the one and only way to demonstrate a "penetration or perforation." [Dkt. 21704 at 2]. Cook does not dispute this but embraces it. [Dkt. 22193 at 20] (the ambiguity table). And failure to submit "medical records or an expert report" that meets this definition subjects the case to dismissal for "Non-Compliance." CMO 30 at ¶3. Any other evidence that demonstrates an actual hole in the IVC wall, caused by the IVC filter, can and will be ignored under CMO 30 according to Cook. [*Id*. at 21]. Cook presented the factual findings in CMO 30 as undisputed facts, when in reality this is false, leading the Court to adopt them as a matter of law.

### 3.  The Findings of Fact and Obligations in CMO 30 Are Taken from the *Sykes* and *Parton* Cases and Imposed on Plaintiffs

The requirements set forth in paragraph 1 of CMO 30 were taken directly from the final judgment set forth in *Sykes* and *Parton* and serve as the basis to dismiss Plaintiffs' cases designated under category 7(e). [Dkt. 22064 at 14-15]. Cook admits this in its stated understanding of the effect of CMO 30 — the summary dismissal of Plaintiffs' cases that it claims are "similar" to *Sykes* and *Parton*. [Dkt. 22193 at 5-6 ]("In sum, CMO 30 merely identifies a group of cases with a certain attribute so that Cook can evaluate that attribute in those cases and can determine which (if any) of those cases are appropriate for motions on grounds similar to the grounds on which the Court dismissed *Sykes* and *Parton*."); [*Id*.

at 10]. ("Once the Category 7(e) Plaintiffs have submitted the information required by CMO 30, Cook may conclude that some Category 7(e) cases may be like *Sykes* and *Parton* and thus subject to similar motions with similar results, . . . That is one reason CMO 30 exists: to identify those cases that may be subject to no-injury motions to dismiss and those that are not."). Cook even cites the rulings in *Sykes* and *Parton* as justification for the "new certification requirements" in CMO 30. [*Id*. at 17].[8] Plaintiffs' position is correct. CMO 30 adopts the findings from *Sykes* and *Parton* as the new "certification requirements" for cases designated in category 7(e) and any failure to meet those requirements subjects Plaintiffs' cases to dismissal for "Non-Compliance."  [Dkt. 21704 at 3].

Amazingly, Cook later claims that "CMO 30 does not adopt the Court's holdings in the *Sykes* and *Parton* cases because CMO 30 makes no substantive rulings. [Dkt. 22193 at 6]. But this claim cannot be squared with Cook's stated intention: to use CMO 30 to dismiss cases designated under category 7(e). There is no hiding from the disputed findings or rulings in CMO 30, or that they are taken from Sykes and Parton, currently on appeal. Nor can Cook continue to assert the rulings in CMO 30 are not substantive or based on Sykes and *Parton* while in the same breadth use CMO 30 to dismiss all cases it claims are "like" the *Sykes* and *Parton* cases.

### 4.   **CMO 30 Adversely Affects the Substantive Rights of Plaintiffs in Violation of Their Due Process Rights.**

Cook's attempts to diminish the effects of CMO 30 by claiming it is "administrative" does not accord with the words in the order.  [Dkt. 22193 at 5]. Cook's

---

[8] See section B.5, *infra*.

continued attempts, to "spin" the meaning of CMO 30, are irrelevant. It is the resulting adverse effects of CMO 30 on Plaintiffs' due process rights that are the relevant inquiries under the Motion. *Marshall v. Ind. Univ.*, 170 F. Supp. 3d 1201, 1206 (S.D. Ind. 2016) (". . . to be fair in the due process sense, implies that the person **adversely affected** was afforded the opportunity to respond, explain, and defend") (emphasis added) [[Dkt. 21704 at ¶2]. It is of no import that the PSC can provide edits or updates to the list because the order precludes the PSC from overriding Cook's decision to include a particular case on the list. Then under paragraph 3 of CMO 30, regardless of what a Plaintiff does, for any case it deems not compliant with paragraph 1, Cook can file a Show Cause Motion which shifts the burden to Plaintiffs to show cause "why the case should not be dismissed." [Dkt. 21704 at ¶3].

Moreover, CMO 30 *already* deprived Plaintiffs of their due process rights. The only issue to be determined under CMO 30 is simply whether the information required in paragraph 1 was properly submitted by Plaintiff. [Dkt. 21704 at 2] ("If a Plaintiff has not previously submitted such evidence with his/her Case Categorization Form, Plaintiff must do so promptly.") Without regard to the individual claims of each Plaintiff or the law governing their respective tort claims. Under CMO 30 it is irrelevant that the findings in CMO 30 are false or disputed or whether a cognizable injury can be demonstrated by means other than the SIR definition in CMO 30. Thus, the "obligations" in CMO 30 that must be met in order to avoid "dismissal" further violate Plaintiffs' due process rights. Simply because CMO 30 does not itself dismiss any cases is irrelevant to the due process violations that already occurred.

**5.  A *Post Hoc* "Show Cause" Hearing or Re-Categorization of Cases Cannot Cure the Violations of Plaintiffs' Due Process Rights That Have Already Occurred.**

Cook attempts to nullify the effects of CMO 30 by claiming Plaintiffs will have the right to be heard "on the merits" including what constitutes a legally cognizable injury. [Dkt. 22193at 7 and 11] ("Plaintiff remains free to make any argument it wishes, including an argument that a 3 mm asymptomatic perforation constitutes a compensable injury.") [*Id.* at 11]. This is incorrect. The "show cause" procedure defined in Paragraphs 2 and 3 affects the substantive rights of all Plaintiffs and limits the inquiry to why the Court should not dismiss Plaintiff's case for a violation of CMO 30. *U.S. S.E.C. v. Hyatt*, 621 F.3d 687, 695 (7th Cir. 2010) Thus, there is no opportunity under this show-cause procedure 30 to challenge the substantive rulings in CMO 30, for example, that limit the definition of a "perforation or penetration" to one and only one test. Cook does not dispute this [Dkt. 22193 at 21] ("CMO 30 . . . unambiguously requires evidence of imaging of over 3 or more mm.") [9]. Cook's claims, that it might file a "substantive" motion such as a motion to dismiss or for summary judgment in lieu of a "Motion to Show Cause" under CMO 30 (Dkt. 22193, at 7) is meaningless regarding the merits of the substantive rulings in CMO 30. Cook fails to explain why it would seek to re-address issues of fact already ruled on in CMO 30, especially when Cook drafted CMO 30, and the Court adopted it without change.

---

[9] Cook's claim it might instead file a "substantive" motion such as a motion to dismiss or for summary judgment in lieu of a "Motion to Show Cause" under CMO 30 (Dkt. 22193, Cook's Response at 7) is meaningless regarding the merits of the substantive rulings in CMO 30. Cook fails to explain why it would seek to re-address issues of fact already ruled on in CMO 30 or why the Court would allow it, especially when Cook drafted CMO 30 and the Court adopted it without change. And according the Cook the "Court's goal" of dismissing "non-injury" Category 7(e) cases. *Id.* at 2.

Or why the Court would allow it, considering, the "Court's goal" of dismissing "non-injury" cases. [*Id.* at 2].

Alternatively, Cook claims Plaintiffs can simply re-categorize their cases under category 6 or another category. [Dkt. 22193 at 6-7]. As with the show cause hearing, the re-categorization of a cases does nothing to change the findings and rulings in CMO 30 that have already occurred and already violated Plaintiffs' due process rights. Further, re-categorization is a red herring. During the informal discussions of how to proceed, Cook made it clear that after *Sykes* and *Parton* cases the so called "no injury" cases fell under both category 6 an€(e). [*See e.g.*, November 9, 2021, Hearing Tr. at 53: 7-8, 55:23-25, and 65:16-17]. CMO 30 reflects this and incorporates the finding in *Sykes* and *Parton* cases that a hole in the IVC wall caused by the IVC filter is not a cognizable injury under categories 6 or 7€ unless it meets the SIR definition of "perforation or penetration" *and* accompanied by a "present physical impairment or physical harm.". [Dkt. 21704 at 2]. Thus, by Cook's own reckoning, recategorization of a case 7(e) to category 6 would not necessarily avoid dismissal. Furthermore, Plaintiffs should not have to transform a case category definition into something else to avoid CMO 30, especially when they've already provided *prima facie* evidence of a cognizable injury, simply when Cook claims, without evidence, that a Plaintiff's submission is not sufficient. In the end neither a *post hoc* show cause hearing or case re-categorization cures the violations of Plaintiffs' due process rights that have already occurred from the adoption of CMO 30 and the findings and rulings it contains.

### 6. A Court May Enter Procedural Orders but May Not Make Substantive Rulings Without Providing Notice and Opportunity to be Heard Under Due Process.

Cook claims the Court had the power to adopt CMO 30 without an evidentiary hearing under its inherent authority. [Dkt. 22193 at 6-7]. But the authority of a Court is limited by due process. A court may act to address a substantive right without an "evidentiary hearing" only if the affected party is given notice and the opportunity to be heard by means other than an evidentiary hearing such as the opportunity to fully brief the issues. *Marshall v. Ind. Univ.*, 170 F. Supp. 3d at 1206. But CMO 30 includes findings of fact limiting Plaintiffs' claims and what constitutes a cognizable injury without a motion, briefing, or an evidentiary hearing in violation of Plaintiffs' due process rights.

Cook points to two cases in support of its claim that the Court had the unfettered right to enter CMO 30. But the cases deal with a *Lone Pine* order rather than a show cause order that is CMO 30. The cases involve scheduling orders and the disclosure of information for cases after a settlement of a significant portion of cases, leaving a handful of cases to address on the merits. *In re Testosterone Replacement Therapy Prod. Liab. Litig.*, 2018 WL 6258898 (N.D. Ill. June 11, 2018) (the "*Lone Pine* order only applied to a subset of 7700 cases"); *In re Vioxx Products Liability Litigation*, 557 F. Supp. 2d 741 (E.D. La. 2008)( *Lone Pine* orders were entered following the massive global settlement of approximately 27,000 claims.) The cases stand for the unremarkable position "a court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it" including discovery under Rule 26, 29 and 37; even if the cases involve "complex issues, multiple parties, difficult legal, or unusual proof problems." *See e.g., In*

*re Testosterone Replacement Therapy Prod. Liab. Litig.*, 2018 WL 6258898 at *1 (internal citations omitted). But CMO 30 is not a *Lone Pine* order, and as previously explained, does much more than require additional production from a few remaining Plaintiffs after a settlement. The threat to due process presented by "homemade" solutions such as CMO 30 is well recognized. "[T]he worry is thatby using a homemade mechanism (*i.e.,* a *Lone Pine* order) to extinguish plaintiffs' well-pleaded complaint, a trial court may deprive plaintiffs of crucial safeguards that Rule 56 would otherwise furnish.". *See* Nora Freeman Engstrom, *The Lessons of Lone Pine*, 129 Yale L.J. 2, 43 (2019). Neither case relied on by Cook addresses this threat or provides the Court with authority, inherent or otherwise, to make findings of fact that limit Plaintiffs' claims without notice and opportunity to be heard and that subject their cases to dismissal. The cases have no application here and Cook's reliance on them is misplaced.

Cook also claims the Court has the authority to impose additional disclosure requirements based on "new developments" namely the findings in the *Sykes* and *Parton* case. [Dkt. 22193, at 16-17]. Cook cites to *Galvan v. Norberg*, 678 F.3d 581 (7th Cir. 2012) for support. But *Galvan* merely addressed when it is appropriate to apply the law of the case and when it is not, such as when a later judge is addressing a "new trial issue" in the first instance. [*Id.* at 587]. *Galvan* does not support the broader position that the Court can adopt the findings from *Sykes* and *Parton* in CMO 30, apply them to all Plaintiffs, and change the "certification requirements" limiting Plaintiffs' claims, without providing notice and opportunity to be heard. *Kraushaar v. Flanigan*, 45 F.3d 1040, 1050 (7th Cir. 1995) ("As a matter of due process, collateral estoppel can be used to bind only those

18

persons who were parties or who are in privity with parties to the prior proceeding.") Nor can those findings be used to change the Court's previous CCF order,  relied on for years in the MDL without due process. *Looper v. Cook Inc.*, 20 F.4th 387, 394 (7th Cir. 2021); [Dkt. 22064 at 22-24]. Instead, the prudent course is to yield to the "consistency and safeguards" of the Federal Rules of Civil Procedure including Rule 56. *In re Digitek Prod. Liab. Litig.,* 264 F.R.D. 249, 259 (S.D. W. Va. 2010). CMO 30 is nothing more than an end run around theses safeguards and a naked attempt at summary judgment, without due process, that must be rejected.

### C. CMO 30 Cannot Be Repaired and Cook's Attempt at Explaining Away the Ambiguities of CMO 30 Only Causes More Confusion.

Lastly, Cook's denial of the fact that CMO 30 is vague and ambiguous only suffices to confirm CMO 30 is hopelessly ambiguous and cannot be effectively corrected. Each of Cook's responses contained in the chart confirms significant issues and questions remain. [Dkt. 22193 20-21]. First, Cook concedes a Plaintiff may submit "documentation that uses a different scale" to show "perforation," but introduces the newly invented and undefined term, "substantial perforation" different from the language of the CCF and CMO 30. [*Id*]. Cook then merely claims it would not move to dismiss as a "practical matter." But Cook's claim is hollow and cannot be reconciled with its opposing statement, in the same chart, that CMO 30 "unambiguously requires evidence of imaging of over 3 or more mm." [Dkt. 22193 at 21]. Thus, the enforcement of CMO 30 and what cases will be identified as "Non-Compliant" and subject to dismissal is left to the whim of Cook.

Second, while Cook agreed that a Plaintiff with proof of filter perforation/penetration into the "duodenum, kidney, spleen, pancreas, spine or vertebra" is compliant with CMO 30, that list is not exhaustive of the organs and/or vessels an IVC filter may perforate or penetrate. It is undisputed that the IVC may perforate other organs as many Plaintiffs have listed. But Cook does not state why these other organs are not included and does not address whether such proof suffices as compliance with CMO 30. [Dkt. 22193 at 20]. Plaintiffs are still left guessing whether they can achieve compliance.

Third, Cook recognizes, as it must, Plaintiffs can designate more than one category. And that it cannot seek wholesale dismissal of a case where a Plaintiff designated more than one category, including category 7(e), but does nothing more to elaborate that "[o]ther categorizations may affect a subsequent motion." But CMO 30 is not so limited and requires a Plaintiff to show cause "why the case should not be dismissed." [Dkt. 21704 at 3]. As written the express terms of CMO 30 allow dismissal of a Plaintiff's entire case and must be corrected.

Further, despite a medical diagnosis of a "perforation," Cook maintains imaging showing a "protrusion of 3 or more mm" is still required, even in light of the SIR definition. [Dkt. 22193 at 20]. Cook repeatedly emphasizes the need to include a specific millimeter measurement, despite Plaintiff's submission of imaging. But if the imaging (which does not come with a specific millimeter finding) is all that is needed, then CMO 30 should be moot with respect to those Plaintiffs who have already submitted the imaging. Under CMO 30 Cook will subjectively determine what constitutes evidence showing a "protrusion of 3 or more mm." and a "present physical impairment or physical harm." The definition

20

remains convoluted, and based on Cook's representations is at least different from, and inconsistent with, the "medical symptoms, conditions, or complications" set forth in category 7(e) of the CCF. [*Id.* at 21].

The last two entries in Cook's chart make apparent that Cook itself does not know what proof suffices to comply with CMO 30. Circularly, Cook answers each question with the question itself.

Finally, Cook's offer to meet and confer regarding the application of CMO 30 has no meaning. As set forth above, CMO 30 is a court order that has substance and meaning that controls the duties and obligations of the parties. Neither Cook nor the parties combined can change its terms. Only the Court can do that. The PSC welcomes clarification on the ambiguities it has raised in its Motion from the Court. Cook does little to put any of them to rest in its response and, in fact, only highlights how ambiguous they remain.  Cook's offer is just another non-binding and empty promise not to enforce CMO 30 according to its terms as it sees fit.

## Conclusion

For the foregoing reasons CMO 30 is ambiguous and unworkable as presented and should be vacated or at the very least amended. Plaintiffs respectfully request a hearing to address these issues more fully and grant Plaintiffs' relief from compliance with CMO 30 as written.

21

Dated:  June 27, 2022.

/s/ Joseph N. Williams
Joseph N. Williams, (# 25874-49)
Riley Williams & Piatt, LLC
301 Massachusetts Avenue, Suite 300
Indianapolis, IN 46204
Telephone: (317) 633-5270
Facsimile: (317) 426-3348
Email: jwilliams@rwp-law.com
*Liaison Counsel to Plaintiffs' Steering
Committee and on behalf of Plaintiffs' Steering
Committee*

/s/ Michael W. Heaviside
Michael W. Heaviside, Esq.
Heaviside Reed Zaic, A Law Corporation
910 17th Street NW, Suite 800
Washington, DC 20006
Telephone: (202) 233-1993
Email: mheaviside@hrzlaw.com
*Plaintiffs' Co-Lead Counsel*

/s/ Ben C. Martin
Ben C. Martin, Esq.
Martin Baughman, PLLC
3141 Hood Street, Suite 600
Dallas, TX 75219
Telephone: (214) 761-6614
Facsimile: (214) 744-7590
Email: bmartin@martinbaughman.com
*Plaintiffs' Co-Lead Counsel*

/s/ David P. Matthews
David P. Matthews, Esq.
Matthew and Associates
2509 Sackett St.
Houston, TX 77098
Telephone: (713) 522-5250
Facsimile: (713) 535-7184
Email: dmatthews@thematthewslawfirm.com
*Plaintiffs' Co-Lead Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 27, 2022 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

<span style="text-indent:center">*/s/ Ben C. Martin*</span>
Ben C. Martin