UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | § § § § § | Case No. 1:14-ml-2570-RLY-TAB  MDL No. 2570 |
| This document relates to:  All Category 7 cases | § § § § | |

**PLAINTIFFS' MOTION FOR SUGGESTION OF REMAND**

Comes now the Plaintiffs' Steering Committee and files this motion for suggestion of remand of all Category 7 cases to their designated originating federal courts, and would respectfully show as follows:

**INTRODUCTION AND PROCEDURAL BACKGROUND**

This MDL was established on October 15, 2014. As of January 17, 2023, there are 8,106 cases still pending in the MDL. Common discovery ended prior to the first bellwether trial, held in November 2017. A second bellwether trial was held in January 2019. No trials have been held since then, and none is scheduled until November of this year. For the foreseeable future, the focus of bellwether trials will be Category 5 or Category 6 cases, rather than cases involving more major injuries. *See* Dkt. 19727, 19728 (parties' briefs on bellwether selection).

In April 2019, plaintiffs moved for remand and transfer of all remaining cases. *See* Dkt. 10439. On April 7, 2020, the Court denied that motion in a single-paragraph order, holding that because no bellwether trial involving the Tulip filter or Category 5 or 6 cases had been tried, "pre-

trial proceedings have not concluded in this MDL." Dkt. 13935. The Court denied another motion to remand (Dkt. 12730), from an individual plaintiff, the same week, also noting that "pre-trial proceedings have not concluded in this MDL." Dkt. 13924.

As the Court is aware, Category 7 cases are "symptomatic injury" cases in which the plaintiff alleges one or more of eleven different injuries. All pretrial discovery on any common issues has long since been completed in these cases.

Each of the Category 7 cases was either transferred to this Court as a tag-along case, or was direct-filed in this Court as an expedient, to save time and money for both the parties and the judicial system. "Direct filing can be a useful tool in managing multidistrict litigation because it 'eliminates the judicial inefficiency that results from two separate clerk's offices having to docket and maintain the same case and three separate courts (the transferor court, the MDL Panel, and the transferee court) having to preside over the same matter.'" *Looper v. Cook Inc.*, 20 F.4th 387, 390 (7th Cir. 2021), quoting Hon. Eldon E. Fallon, *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2355 (2008). In this case, the Court and the parties have "proceeded as if direct filing were permissible and as if a direct-filing order were on the books." *Looper*, 20 F.4th at 396.

As set forth below, this Court should now remand these transferred and direct-filed cases to their home jurisdiction for trial. Plaintiffs thus respectfully request that the Court enter suggestions of remand for these cases, so that they may be formally remanded pursuant to JPML Rule 10.1(b).

**ARGUMENT**

**A. Pretrial Proceedings Have Concluded and Remand is Appropriate**

Once pretrial proceedings in a particular case in an MDL have concluded, that plaintiff is entitled to remand of his or her case. This fundamental rule of MDL procedure flows from both the basic function and purpose of MDL proceedings, and the *Lexecon* rule. As to the first, as the Court is of course aware, this MDL exists to supervise "coordinated or consolidated pretrial proceedings[,]… for the convenience of parties and witnesses and … the just and efficient conduct of such actions." 28 U.S.C. §1407(a). And MDL cases *shall* be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred…" Id. (emphasis added).

While the Judicial Panel on Multidistrict Litigation ("Panel") has the ultimate power to remand cases from the MDL, *see* 28 U.S.C. § 1407(a) and *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 28 (1998), the Panel typically relies on the transferee court to suggest when it should order remand. J.P.M.L. Rule 10.1(b)(i); *see In re Motor Fuel Temp. Sales Prac. Litig.*, 2012 WL 1963350, *1 (D. Kan. May 30, 2012). The transferee court may suggest to the Panel that cases be remanded where they are "ready for trial, or . . . would no longer benefit from inclusion in the coordinated or consolidated pretrial proceedings." *In re Multi-Piece Rim Prods. Liab. Litig.*, 464 F. Supp. 969, 975 (J.P.M.L. 1979); *see also, e.g., In re TMJ Implants Prods. Liab. Litig.*, 872 F. Supp. 1019, 1038 (D. Minn. 1995). In determining whether cases will benefit from further coordinated proceedings, "the Court looks to the totality of the circumstances. Remand is appropriate where everything that remains to be done is case-specific or where remand will serve the convenience of the parties and witnesses and will promote the just and efficient conduct of the litigation." *In re Motor Fuel*, 2012 WL 1963350, at *2 (internal quotations and citations omitted).

The Court is of course also familiar with the *Lexecon* rule, under which an MDL court cannot try a transferred case without the plaintiff's consent. *Lexecon Inc. v. Milberg Weiss Bershod Hynes & Lerach*, 523 U.S. 26, 28 (1998). Unless a plaintiff waives his or her "*Lexecon* rights," then, a case in which pretrial proceedings have been completed should be remanded to its originating jurisdiction for trial.

In these cases, all pretrial proceedings have been completed. Cook cannot seriously contend that anything remains in these cases except to try them. After all, Cook argued as much well over six years ago.

In the fall of 2016, Cook insisted during a status conference that discovery was over. This led to an order that plaintiffs provide Cook with a letter stating everything they still needed. Plaintiffs complied and sent the attached letter dated November 24, 2016. (Exhibit A, Letter to Douglas King, Esq.)

At a May 2, 2018 hearing before the Court, Cook again unambiguously stated that discovery is closed:

> Ms. Pierson: "[T]here was a long list of grievances that Mr. Martin had with Cook about things that Cook had not produced, and you told the plaintiffs essentially: Send them a list of what your grievances are and Cook, you take care of that list. We did. That was back in 2016 and early 2017.
>
> It's our position from that point on that discovery was closed, and we had this issue come up in the Hill case and made the argument then company discovery is closed. We produced millions of pages of documents. We spent so much time and money letting the plaintiffs everything they wanted to discover about these products, but we ought not to be responding to new things. The issue in that motion is again, we're asking Your Honor to make clear company discovery was closed a long time ago. We're not going back and redoing that. But the parties have fully briefed the issue and we stand on our papers and are prepared for you to rule whenever you are prepared to rule.

(Exhibit B, May 2, 2018 Hearing Transcript at 37:8-25; 38:1-2.)   Nearly five years later, time continues to pass.  There is no path to adjudication or resolution for thousands of injured claimants in this MDL. Despite this Court's best efforts, more than 8,000 claimants continue to await adjudication or resolution of their claims, some of them having filed their cases more than eight years ago.

Again, as Cook itself has insisted, common discovery ended years ago.  But even when all common pretrial proceedings are not complete, courts recognize that remand of some cases can relieve pressure on the single judge tasked with managing thousands of claims, and can usefully create additional data points for all parties. In *In re: National Prescription Opiate Litigation*, MDL No. 2804, Judge Polster issued a suggestion of remand of selected cases even as the overall MDL and its bellwether process continued to move forward. As he explained, trying cases outside of the MDL – what he called a strategic "parallel processing" -- was designed to advance the MDL itself, which would continue. *See* 1:17-md-2804 (N.d. Ohio), Dkt. 2941, at 3. He acknowledged that not all pretrial proceedings were fully complete, but noted that all of the work done to date – "the global discovery, pretrial rulings, and other litigation matters over which the undersigned has already presided provide a good base upon which the transferor courts can build." *Id.* at 5-6. This litigation, involving multiple devices and a range of alleged injuries, is well-suited to "parallel processing," because the information generated by a particular bellwether verdict may only be useful to certain plaintiffs, or, as to Cook, relevant to a subset of plaintiffs.

"Remand is appropriate where everything that remains to be done is case-specific *or* where remand will serve the convenience of the parties and witnesses and will promote the just and efficient conduct of the litigation." *In re Motor Fuel Temp. Sales, supra,* 2012 WL 1963350 at *2 (emphasis added);  *see also Manual for Complex Litig.* § 20.133 (4th ed.) ("The transferee court

5

should consider when remand will best serve the expeditious disposition of the litigation."). Similarly, the Court looks to "interest of justice" to determine whether transfer under Section 1404(a). 28 U.S.C. § 1404(a). "There are only so many motions one judge can decide, so many discovery disputes one judge can resolve, and so many bellwether trials one judge can conduct. Delays can stretch out as other cases languish in the queue." Thodore Rave and Francis McGovern, *A Hub and Spoke Model of Multidistrict Litigation*, 84 Law & Contemporary Problems 21, 22 (2021).

This Court has worked hard over the last eight plus years to move the thousands of cases in this MDL along. But while some delay is inevitable, this MDL has reached the point where it is necessary to look to other courts to help move it forward towards a close. Such a procedure is consistent with published best practices for MDL proceedings. One publication from the Federal Judicial Center (previously relied upon by Cook, *see* Dkt. 11029, at 30, 34), *Ten Steps to Better Case Management, a Guide for Multidistrict Litigation Transferee Judges*, states that the time for remand is simply "when coordinated or consolidated pretrial proceedings no longer serve a valid purpose."[1]

Here, too, the passage of time is important. In 2019, Cook argued against remand by pointing to what it called certain common issues that the Court needed to address. *See* Dkt. 11029, at 32-33. Cook has now had more than three years to continue to press those issues (such as cases it contends are barred by the statute of repose or statute of limitations), and the remaining plaintiffs

---

[1] JPML & Federal Judicial Center, *Ten Steps to Better Case Management, a Guide for Multidistrict Litigation Transferee Judges* § X(a) (2d ed. 2014), available at https://www.fjc.gov/sites/default/files/2014/Ten-Steps-MDL-Judges-2D.pdf. *See also* Eldon E. Fallon et. al., *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2332 (2008) (noting that the purpose of the bellwether process is to "provide meaningful information and experience to everyone involved in the litigations").

should not be forced to wait any longer for Cook to make rolling challenges to cases on whatever issues it chooses.

Cook's argument, in 2019, that this MDL was on track for timely completion, might have been true then. But it is no longer true, and the delays that plaintiffs continue to face can no longer be ignored. In 2019, Cook pointed out that there were, at that time, 31 active product liability MDLs with earlier origination dates than this one. *See* Dkt. 11029, at 38. Now, in 2023, there are now only *eleven*. Even that number is misleadingly high, because virtually all of those MDLs are active only in a technical sense: two of them now contain *zero* active cases (down from 5,299 in one MDL and 3,627 in the other). One contains five cases and another seven. All of them now contain only a small fraction of their original cases.[2]

| MDL Number | MDL Case Name | Total Cases | Cases Remaining |
|---|---|---|---|
| 1358 | *In re MTBE Prods.* | 190 | 14 |
| 1871 | *In re Avandia* | | 0 |
| 2047 | *In re Chinese-Manufactured Drywall* | 422 | 144 |
| 2151 | *In re Toyota Motor Corp. Unintended Acceleration* | 463 | 7 |
| 2197 | *In re DePuy Orthopaedics Inc. ASR Hip Implant* | 10,406 | 233 |
| 2243 | *In re Fosamax* | 1,288 | 258 |
| 2244 | *In re DePuy Orthopaedics Inc. Pinnacle Hip Implant* | 10,579 | 106 |
| 2331 | *In re Propecia* | 1,179 | 0 |
| 2441 | *In re Stryker Rejuvenate and ABG II Hip Implant* | 3,627 | 80 |
| 2545 | *In re Testosterone Replacement Therapy* | 7,833 | 5 |

---

[2]   *See* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-January-17-2023.pdf (showing number of total actions and actions now pending for active MDL's); and https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_Docket_Type-January-17-2023.pdf (showing product liability MDLs sorted by date of creation)

Meanwhile, the Bard IVC filter MDL in the District of Arizona, involving similar products and similar injuries, ultimately contained 8,689 cases. It was created after this one – in 2015 – and began remanding cases in 2019. *See In re Bard IVC Filters Prod. Liab. Litig.*, No. MDL 15-02641-PHX-DGC, 2019 WL 3928657 (D. Ariz. Aug. 20, 2019).

And while the Court was correct in 2020 that only two bellwether cases had been tried at that time, such that plaintiffs should let that process continue, the bellwether process itself has now extended for years. Plaintiffs are not aware of any other bellwether process that has lasted this long. For comparison's sake, in the Vioxx MDL, involving many more claimants, all federal bellwether trials were completed in approximately a year. *See* Eldon E. Fallon et. al., *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2336 (2008).

Some delay in a large MDL is, of course, inevitable. But it is undeniable that the longer plaintiffs wait, the greater the risk of prejudice. There is always potential prejudice in delay – memories fade, witnesses (including, here, treating physicians) become unavailable, but here, the prejudice runs in one direction: Cook can wait, but those who are injured cannot.

### B.  Parallel Processing will Assist in Settlement Efforts

Cook may argue that it has begun negotiating with some limited and unknown number of law firms to resolve certain cases, and that the Court should preserve the status quo to allow further negotiations to continue. That would come as no surprise, because the status quo – in which there is no potential for trial for thousands and thousands of plaintiffs – is overwhelmingly favorable to Cook for purposes of those negotiations. As one district court judge explained, outside of an MDL, a failure to settle usually results in a trial, but in an MDL, "it is solely the transferee judge who controls the risk of trial. The litigant who refuses to settle can never get back to his home court to

8

go before a local jury unless the transferee judge agrees. *Once trial is no longer a realistic alternative, bargaining shifts in ways that inevitably favor the defense." DeLaventura v. Columbia Acorn Tr.*, 417 F. Supp. 2d 147, 155 (D. Mass. 2006) (emphasis added). Moreover, whatever Cook may be doing as to some small number of plaintiffs or law firms, there indisputably remain thousands of plaintiffs still awaiting their day in court. Cook can continue those limited and unknown efforts while the proposed parallel processing moves forward.

### C.  Potential Disputes about Personal Jurisdiction and/or venue are for Transferor Courts to Resolve

Cook's earlier opposition to plaintiffs' motion to remand gestured at the possibility that it will contest personal jurisdiction in some number of home-state districts, and argued that plaintiffs must preemptively establish that Cook would be subject to personal jurisdiction in every single district set to receive a case. Dkt. 11029, at 17-18. As Cook sold its IVC filters throughout the country, the basis for any challenge to personal jurisdiction is dubious at best.

In any event, such speculative challenges are irrelevant, because the receiving court can and should resolve such a dispute. *See In re Bard IVC Filters Prod. Liab. Litig.*, No. MDL 15-02641-PHX-DGC, 2019 WL 3928657, at *3 (D. Ariz. Aug. 20, 2019) (collecting authority and holding that "[t]he best approach is to transfer the cases to Plaintiffs' chosen forum and allow the receiving courts to address any potential venue and personal jurisdictional issues"). A particular district's jurisdiction over Cook would likely raise case-specific and state law-specific questions that, to the extent they ultimately need to be decided, are best decided by transferor/home district courts. Moreover, for the initial round of transfers, the parties can work together to choose cases where there are no disputes about jurisdiction in the receiving district.

### D. Cook can No Longer Argue this is a More Convenient Forum

Cook previously argued against transfer to *any* district other than this one, arguing that section 1404's factors weighed against transfer of any of the thousands of cases pending in this MDL. *See* Dkt. 11029, at 18-23. Setting aside the patent unfairness of asking this Court to try 8,000 cases, much of Cook's prior argument was based on the notion that plaintiffs had chosen this forum for all purposes, including trial, and did not possess their *Lexecon* rights. As the *Looper* decision demonstrates, however, Cook will be unable to argue that plaintiffs must try their cases here. The plaintiffs who filed directly into this MDL must be treated just as direct-filing plaintiffs in countless MDL's before them, none of whom have been required to make individual showings that they are entitled to trial in the district where they would have filed their cases absent direct filing in the MDL. *See, e.g., In re Bard IVC Filters*, 2019 WL 3928657.

Defendants will no doubt continue to insist that the direct-filed plaintiffs waived their *Lexecon* rights by direct-filing their cases. For the reasons detailed below, that contention should be squarely rejected.

This case, again, has "progressed as if a direct-filing order had been on the books." *Looper*, supra, 20 F.4th at 398. The Seventh Circuit held in *Looper* that in light of this fact, it was unfair to allow Cook to change its position as to the choice-of-law consequences of direct-filing. Id. at 395-96. As to the issue of "*Lexecon* rights," the Seventh Circuit stated as follows:

> Years after Cook successfully argued in the *Graham* and *Sales-Orr* cases that direct-filed cases should be governed by the choice-of-law rules and statutes of limitations of their originating jurisdictions, the MDL proceeded to the bellwether trial stage. A dispute arose over where the trials would take place. In *Lexecon*, the Supreme Court held that in MDL cases that were tagged and transferred, the parties retained their rights to insist on re-transfer back to their originating jurisdictions for trial once pretrial proceedings concluded in the MDL court. 523 U.S. at 28, 118 S.Ct. 956. Parties can consent to having the MDL court retain such cases for trial, but without consent, the right to re-transfer remains. Since there was no direct-

10

> filing order in this MDL, the district judge concluded that the parties in direct-filed cases had not preserved their *Lexecon* rights, thus allowing the MDL court to preside over the trials. ECF No. 11131 at 2. We express no views here on that issue, which may present considerations quite different from the statute-of-limitations defenses in these appeals.

20 F.4th at 397 n. 3. Plaintiffs respectfully submit that there is no reason why these plaintiffs' *Lexecon* rights should be treated any differently from the treatment of the limitations issues in *Looper*.

The Seventh Circuit did not elaborate as to the considerations that might warrant a different treatment of plaintiffs' *Lexecon* rights. But it is difficult to discern any reason why Cook should not be allowed to reverse its position as to limitations, but should be allowed to do so with regard to *Lexecon*. For just as the Seventh Circuit recognized with regard to limitations, Cook repeatedly acknowledged that plaintiffs had *Lexecon* rights and were not waiving them. It should not be allowed to change its position now.

In at least four different case management orders, Cook acknowledged and agreed that aside from specific plaintiffs included in a "discovery pool," no other plaintiffs were waiving their *Lexecon* rights. In CMO 5, entered on April 17, 2015, attached as exhibit C, the parties stated that "[w]aiver of *Lexecon* is confirmed by Plaintiffs for the Discovery Pool cases only. Nothing in this Case Management Order or otherwise shall indicate a waiver of *Lexecon* as to the remaining cases." The parties took care to put this language in bold type. The order was entered by Magistrate Judge Baker, and agreed to by both sides. In CMOs 9, 12, and 17, entered in 2015 and 2016, the parties again agreed to the exact same language, each time again reciting this understanding in bold. Doc. 519, p. 5; Doc. 875, p. 9; Doc. 1749, p. 9.

These statements are not boilerplate language to which Cook paid no attention. To the contrary, each CMO was the product of extensive negotiation between the PSC and Cook. These

11

negotiations entailed concessions on both sides, with both sides obtaining benefits in return for those concessions. Cook agreed to the non-waiver provisions in each of these CMOs for its own strategic reasons. Having obtained the benefits of CMOs that governed the conduct of this litigation for years, Cook should not be allowed to change positions now.

It must be borne in mind that in any MDL, "the case shall be remanded by the district court at the conclusion of the pretrial proceedings, unless it is otherwise terminated as by the granting of a dispositive motion….[T]here is no need for plaintiffs to assert their intention to seek such remand in order for the right to exist. *Instead, the presumption is that the case will be remanded at the close of pretrial proceedings.*" *Armstrong v. LaSalle Bank N.A.,* 552 F.3d 613, 615-16 (7th Cir. 2009) (emphasis added). Since the MDL statute, 28 U.S.C. sec. 1407, is a venue statute, the right to remand may be waived, but the standard for waiver of *Lexecon* rights "must be at least as strong as that employed in…arbitration cases." *Id.* at 616. See also *In re DePuy Orthopedics, Inc.*, 870 F.3d 345, 351 (5th Cir. 2017).

Here, not only was there no waiver; the non-waiver was clear and unambiguous. It was agreed to by Cook in a negotiating process with plaintiffs that yielded substantial benefits to Cook, and was repeated several times. Cook should not be allowed to change positions now.

## CONCLUSION

For all the above reasons, the PSC respectfully requests that the Court enter a suggestion of remand for all category 7 cases in the MDL.

                                                        Respectfully submitted,

                                                       */s/ Ben C. Martin*
                                                       Ben C. Martin
                                                       Law Office of Ben C. Martin
                                                       3141 Hood St.

Suite 600
Dallas, TX  75219
(214) 761-6614
bmartin@martinbaughman.com

Joseph N. Williams
Williams & Piatt, LLC
1101 North Delaware St.
Indianapolis, IN  46202
(317) 672-0948
Email:  joe@williamspiatt.com
*Liaison Counsel to Plaintiffs Steering Committee and on Behalf of Plaintiffs Steering Committee*

Michael Heaviside
Heaviside Reed Zaic
800 Connecticut Ave.
Suite 300
Washington, DC  20006
(202) 223-1993
mheaviside@hrzlaw.com

David P. Matthews
Matthews and Associates
2509 Sackett St.
Houston, TX 77098
(713) 522-5250
dmatthews@thematthewslawfirm.com

Charles S. Siegel
Waters Kraus & Paul
3141 Hood St.
Suite 200
Dallas, TX  75219
(214) 357-6244
siegel@waterskraus.com

<u>Certificate of Service</u>

I hereby certify that on the 14th day of February 2023, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<u>/s/ Ben C. Martin</u><br>Ben C. Martin