IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

---

In Re: COOK MEDICAL, INC.,
IVC FILTERS MARKETING, SALES     Case No. 1:14-ml-2570-RLY-TAB
PRACTICES AND PRODUCTS            MDL No. 2570
LIABILITY LITIGATION

---

This Document Relates to:

All Category 7 Actions

---

### THE COOK DEFENDANTS' OPPOSITION TO PLAINTIFFS' STEERING COMMITTEE'S MOTION FOR SUGGESTION OF REMAND OF CATEGORY 7 CASES

Defendants Cook Incorporated, Cook Medical LLC f/k/a Cook Medical Incorporated, and William Cook Europe ApS ("Cook" or "the Cook Defendants") urge the Court to deny the Plaintiffs' Steering Committee's Motion to "remand" all Category 7 cases to remote courts. As this Court has repeatedly recognized, cases that were originally filed in this Court cannot be "remanded" under *Lexecon*, meaning that the vast majority of the Category 7 cases addressed by the PSC's motion cannot possibly receive the relief the PSC requests.[1]

Moreover, even assuming the relief the PSC seeks were legally available, remand would not be justified under the circumstances here. The delays the PSC complains of are Plaintiffs' own doing or pandemic-related. And, contrary to the PSC's assertions, there is a great deal that this

---

[1] The PSC has properly framed its motion (at least as to the cases transferred from remote venues) as a motion for *suggestion* of remand, as the Judicial Panel on Multidistrict Litigation has the authority to order any actual remands under 28 U.S.C. § 1407(a) in response to this Court's suggestion. For simplicity of reference, however, this response may sometimes refer to the PSC's motion as a motion for remand.

Court can do and needs to do in this MDL to achieve the efficiencies and economies of scale the MDL process contemplates, including Category 7 cases.   *See, e.g., In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 2011 U.S. Dist. LEXIS 29308, 2011 WL 1046162, at *3-4 (S.D.N.Y. Mar. 22, 2011)("the decision of whether to suggest remand should be guided in large part by whether one option is more likely to insure the maximum efficiency for all parties and the judiciary") (citation omitted). Specifically:

- The Court can decide the MDL-wide and case-specific motions already pending before it, including numerous motions in Category 7 cases.

- The Court can enforce the screening orders it has put in place to eliminate meritless cases and avoid the scattering of meritless cases to other courts. In addition, once the Seventh Circuit decides the *Sykes/Parton* appeal, the Court can issue an additional screening order to address such no-injury cases (*i.e.*, help the parties identify what cases belong in the Category 7 bucket).

- The Court can oversee general expert discovery and associated motions concerning the Tulip and Celect filters, which is not yet completed.

- The Court can schedule and conduct a bellwether trial of a Category 7(e) Tulip case—the largest case category in the MDL—to assist the parties both in narrowing the legal issues in those cases prior to any remand and in determining whether they have value.

Under these circumstances, Cook urges the Court to deny the PSC's motion to remand and instead to set a bellwether trial in a Category 7(e) Tulip case.

**I.    The Cases Involved in the PSC's Motion.**

Despite seeking the remand of thousands of Category 7 cases, the PSC's motion provides the Court with very little actual information about those cases.  This information is important to the consideration of this motion, and Cook offers it here.

As of the date of this submission,[2] there are 5,780 Category 7 cases in the MDL.[3]  All of

---

[2] All of the information in Section I is based on the best information available to Cook as of the date of this submission.

[3] Of these 5,780 Category 7 cases, 616 have settled in principle, with the settlement details and

these Category 7 Plaintiffs have represented to the Court that they are experiencing "medical symptoms, conditions, or complications caused by one or more of" a list of conditions. *See* Dkt. 13046 at 47-50. Those conditions and the number of Plaintiffs claiming each of them are as follows:[4]

| Subcategory | Condition | Number of Plaintiffs |
|---|---|---|
| 7(a) | IVC thrombotic occlusion | 120 |
| 7(b) | Filter embolization | 12 |
| 7(c) | Filter fracture | 598 |
| 7(d) | Filter migration | 116 |
| 7(e) | Penetration or perforation | 4,295 |
| 7(f) | Recurrent pulmonary embolism | 204 |
| 7(g) | DVT or other blood clot | 286 |
| 7(h) | Infection | 2 |
| 7(i) | Bleeding | 8 |
| 7(j) | Death | 48 |
| 7(k) | Open removal and/or open heart surgery | 76 |

The current breakdown of filter types among the Category 7 Plaintiffs is:

| Filter type | Plaintiffs |
|---|---|
| Gunther Tulip | 2,857 |
| Celect | 2,678 |
| Celect Platinum | 210 |
| Bird's Nest | 21 |
| Unknown | 14 |

Of the total of 5,780 Category 7 cases, 4,970 were originally filed in the Southern District

---

payments being processed. Assuming all these settlements are completed, the MDL would have 5,164 pending Category 7 cases.

[4] If a Plaintiff identified more than one subcategory, this chart includes them only in the subcategory with the most serious of the claimed injury categories. In addition, 15 Plaintiffs selected Category 7 but did not specify a subcategory. Cook is following up on these Plaintiffs to determine their claimed subcategories.

of Indiana, where venue is proper under 28 U.S.C. § 1391(b)(2).  *See* Master Consolidated Complaint for Individual Claims (Dkt. 213) at 8 ¶ 28. The remaining 810 Category 7 cases were originally filed in other federal districts and transferred to this District by JPML Order under 28 U.S.C. § 1407(a).

As the Court is aware, the Court's Case Management Order 30 and related orders require Plaintiffs who have designated their claimed injuries as being in subcategory 7(e) (penetration or perforation) to (1) certify that they have provided a medical record or expert report supporting the categorization or (2) "promptly" submit such evidence. *See* Dkt. 21704.  Of the 4,295 Subcategory 7(e) Plaintiffs, 2,737 have attempted to comply with CMO 30, and 1,236 have made no attempt at compliance.[5]

## II.   Any Remand of Category 7 Cases Would Be Premature.

The Court should reject the PSC's proposed remand because there is still much work that this Court can and should do to promote the efficient progress and disposition of the Category 7 cases.  The Court's discretion to suggest remand generally turns on the question of whether the case will benefit from further coordinated proceedings as part of the MDL. "The transferee court should consider when remand will best serve the expeditious disposition of the litigation." Manual of Complex Litigation (Fourth) § 20.133.

### A.  The PSC Motion Ignores the Effects of the Pandemic.

The main theme of the PSC's motion for remand is the length of time this MDL has been pending in this Court.  *See* Dkt. 23580 at 5-7 ("the passage of time is important").  Yet remarkably, the motion makes no mention of the most obvious and unavoidable reason for that delay:  the COVID-19 pandemic.  This global pandemic has substantially delayed litigation proceedings in

---

[5] Cook is currently reviewing the compliance status of the remaining 336 Plaintiffs.

all courts around the country, and especially in multi-district and federal litigation, and those effects continue.  Yet the PSC's motion does not even mention the pandemic, much less address its effects on this MDL.

Statistics show that federal civil litigation has borne the brunt of increased case filings, case backlogs, and litigation proceedings delays due to COVID-19.  *See* Exhibit A, Huang, *Summary: Impacts of the Coronavirus Pandemic on Litigation Activity in Federal District Court (hereinafter "Huang Article"*; *see also Exhibit B, Effect of COVID-19 Pandemic on Opioid Crisis and Litigation*, Sheller, P.C. ("Opioid litigation is resuming nationwide after courts have been closed for months in response to Covid.").  Indeed, even though the country is more than three years into the COVID-19 pandemic, federal courts continue to enter pandemic-related orders.  For example, in January, the Southern District of Ohio court noted that "emergency conditions due to the [COVID-19] national emergency declared by the President have affected and will materially affect the functioning of the federal courts generally."  *See Exhibit C, In Re: Court Operations Under the Exigent Circumstances Created by COVID-19 With Respect to Video Teleconferencing for Criminal Proceedings*, Order No. 23-01, 1 (S.D. Ohio Jan. 19, 2023) (emphasis added).

Aggravating the effects of these delays, federal court caseloads have continued to increase during the pandemic.  In analyzing federal district court activity, Lex Machina found that federal product liability cases "saw increases in case filings despite the pandemic." Ex. A, Huang Article (emphasis added).  In fact, at an average increase of 28%, federal product-liability cases saw the second largest increase during the pandemic (trailing tort cases at 30%).  *Id.*  These figures impacted federal, multi-district litigation as well.  For instance, one personal injury MDL experienced a 373% increase in case filings between 2019 and 2020.  *See* Ex. A, Huang Article .  These figures are also borne out here; since the pandemic began in March 2020, this MDL has

seen 3,095 new cases filed in or transferred to this MDL, comprising over 40 percent of the 7,692 cases presently pending in the MDL.  As a result these increases, "[m]any of the complex litigation cases have not even gotten to court yet, due to logistical delays caused by court shutdowns and limited access under COVID-19 restrictions." Exhibit D, *Multidistrict Litigation Post COVID-19*, Lexicon Legal, GUIDEPOINT.[6]

The lasting effects of the COVID-19 pandemic weigh strongly against any broad remand of cases to remote courts at this time, particularly given the broad array of constructive, MDL-wide objectives this Court can accomplish, as discussed below.  Federal courts across the country are continuing to struggle to catch up on their heavy backlogs of civil cases, and the remand of the thousands of Cook filter cases to those courts would only further aggravate those backlogs. Imposing these cases on courts that are already scrambling to catch up, including some of the largest civil case dockets in years, would be a disservice both to the parties and to the judiciary.

### B.  The PSC Motion Ignores Plaintiffs' Own Role in Prolonging this MDL.

In addition, the PSC's argument based on delay never acknowledges the central role that Plaintiffs themselves have played in prolonging this MDL.

Most obviously, Plaintiffs have repeatedly thwarted the Court's bellwether trial plans. Plaintiffs have accomplished these delays in two ways:

- Plaintiffs have failed to screen and dismiss time-barred cases before they reach bellwether trial pools.  Cook has devoted extensive pretrial efforts in these cases only to have them end in summary judgment based on time-bars that Plaintiffs' attorneys

---

[6] State courts likewise saw a major increase in average case backlogs due to the pandemic as well.  *See e.g.*, Exhibit E, Gina Jurva, Esq., *The Impacts of the COVID-19 Pandemic on State and Local Courts: A Look at Remote Hearings, Legal Technology, Case Backlogs, and Access to Justice*, Thomson Reuters Institute, at 4; *see also id.* ("Cases continued to mount as court**s** dramatically altered operations to respond to the pandemic; and in almost all situations, these altered operations delayed proceedings further as courts closures, extended time for arraignments and trials to be heard, and temporarily paused jury trials all added to the backlog.").

should have recognized before they even filed the cases.  .  *See, e.g.,* Dkt. 7715, 7809 (bellwether *Gage* case, granting summary judgment based on statute of limitations); Dkt. 19302 (bellwether *Bowen* case, granting partial summary judgment on personal injury claims based on statute of limitations); Dkt 13187 (bellwether *McDermitt* case, granting summary judgment based on statute of repose); *see also* Dkt. 13358 (bellwether *Johnson* case, stipulation of dismissal based on recognition of statute of limitations bar).

- Plaintiffs have allowed their cases to be selected for bellwether treatment, only to voluntarily dismiss their actions when pressed with the most minimal discovery  *See, e.g.*, Dkts. 13543, 13544, 13588 at 2 (*Burrage* case, stating as the only reason for dismissal that "Mr. Burrage anticipates that the costs of litigation will exceed his anticipated recovery"); Dkt. 21723 (*Wilson* case, offering no explanation of reason for dismissal); Dkt. 23683 (bellwether *Tucker* case, stipulation of dismissal).

Plaintiffs' delay tactics are also apparent in their responses (and non-responses) to CMO 30 prior to the latest stay.  As the Court is aware, CMO 30 imposed a straightforward requirement on Plaintiffs who had self-designated Category 7(e) either (1) certify that they have already provided a medical record or expert report supporting the claimed categorization or (2) "promptly" submit such evidence. *See* Dkt. 21704.  Since the Court issued CMO 30, both Plaintiffs generally and the PSC specifically have done everything in their power to delay and obstruct the goals of that CMO.  Specifically:

- The original CMO 30 set a compliance deadline of May 28, 2022.  *See* Dkt. 21704 (setting deadline for 60 days after March 29, 2022 Order).

- A month after the Court issued CMO 30, on April 29, 2022, the PSC moved for an extension of the deadline by 90 days, to August 26, 2022. Dkt. 21930.

- On May 23, 2022, less than a week before the still-existing May 28 deadline, the PSC filed a Motion For Relief From CMO-30, or in the Alternative, Motion to Amend CMO-30.  Dkt. 22064.

- On June 24, 2022, the Court granted the PSC's original motion for extension of the deadline to August 26, 2022. *See* Dkt. 22258.

- On August 25, 2022,  *just one day before the extended deadline*, the PSC moved the Court to suspend the deadline entirely, arguing that the Court had failed to address their motion to amend and that bellwether scheduling issues that might be affected by CMO 30.  Dkt. 22585 at 2.

- On September 23, nearly a month after a group of Plaintiffs failed to meet the still-unchanged extended August 25 deadline, Cook filed a Motion for an Order to Show

- 7 -

Cause against a group of noncompliant Plaintiffs represented by the Johnson Law Group based on CMO 30. Dkt. 22717. The Johnson Law Group responded on October 7, 2022, Dkt. 22809, and Cook replied, Dkt. 22831.

- On October 18, 2022, the Court granted the PSC's motion to suspend the deadline for compliance with CMO 30. Dkt. 22859.

- On October 19, 2022, the Johnson Law Group moved the Court to strike or stay Cook's motion for an order to show cause under CMO 30, Dkt. 22865, which the Court granted on October 25, 2022, Dkt. 22914.

- On February 22, 2022, the Court heard argument on the PSC's motion to amend or alter CMO 30.

CMO 30 is one of multiple critical screening tools for this litigation and, as Plaintiffs themselves acknowledge, a needed element for scheduling bellwether trials. Plaintiffs' lengthy sustained efforts to hinder and impede the goals of CMO 30 make their complaints about the duration of this MDL ring hollow.

The history of this MDL also highlights other efforts by Plaintiffs have delayed these proceedings. For example, Plaintiffs continue to fight the Court's ruling on fraudulent concealment, despite the clear fact that they do not have—and could not possibly have—any evidence that Cook concealed their causes of action from them, the legal standard the Court established in its original order dismissing the fraudulent-concealment tolling claims. *See* Dkt. 15907 ("Noticeably absent, however, are any allegations that Defendants actively concealed their *causes of action*" (emphasis by Court)). Similarly, Plaintiffs continue to refuse to voluntarily dismiss clearly time-barred claims as contemplated by CMO 28, Dkt. 14601, forcing Cook to bring and the Court to grant dozens of motions to dismiss. *See, e.g.,* Dkts. 17955, 21484 (Shirley Wright); Dkts. 18921, 18925, 22243 (Melissa Guiney and Teresa Bauer). Indeed, many of the Plaintiffs did not even try to defend their claims, but voluntarily dismissed their actions only after forcing Cook to bring the CMO 28 motions. *See, e.g.,* Dkts. 21029 (noting voluntary dismissal after filing of motion to dismiss); 21031 (same); 22794 (same); 22797 (same).

In sum, Plaintiffs' own delays and obstructions are largely responsible for the duration of these MDL proceedings. The unfortunate fact is that the PSC would rather scatter these cases to courts across the country than make progress on them in this Court. The PSC cannot credibly cite the delays they have consciously caused for their own strategic reasons to justify the remand of Category 7 cases. The PSC wanted an MDL in this district. *See* Dkt. 11029-1 at 9 (Pls.' Memo. in Supp. of Mot. for Trans. & Coordination or Consolidation Under 28 U.S.C. §1407) ("[I]t is hard to imagine a more appropriate forum than that of where the Defendants made, marketed and sold the product and where the Defendant is headquartered"). The PSC assured the Court that it was not playing games with *Lexecon* and that it wanted bellwether trials. *See, e.g.,* Exhibit F, May 9, 2019 Tr. at Tr. at 35:23-24 ("We're not trying to game the system") 36:6-19, 37:12-38:2 "And we want to get to trials, too"). Before the Court even considers scattering these cases to the four winds and foisting the problem Plaintiffs have created on other courts, the Court should require the PSC to finish the MDL process it promoted.

## C. The PSC's Motion Ignores Pending Motions and Issues in Category 7 Cases.

Turning to specific reasons the Court should reject the PSC's argument for the remand of all Category 7 cases in the MDL, remand would be premature because dozens of the cases in question have substantive motions pending, motions that the PSC's motion completely ignores. In its response to the PSC's previous motion for remand or transfer, Dkt. For example:

- The Court has under advisement Cook's renewed motion to dismiss Plaintiff's fraudulent concealment claims, which applies to several hundred Category 7 Plaintiffs who filed amended complaints adding allegations concerning such claim. *See* Dkts. 18314, 18315. The motion has been fully briefed and argued.

- The Court has pending before it 21 CMO 28 motions in Category 7 cases, motions that seek dismissal based on state statutes of limitation and statutes of repose. These motions have been fully briefed.

- The Court has pending before it multiple motions by both sides concerning the Court's CMO 30, which requires Category 7(e) Plaintiffs to certify specific information in

support of their categorizations.  Over 1,000 of the Category 7(e) Plaintiffs whose cases the PSC asks the Court to remand did not attempt to comply with CMO 30 before the Court stayed the deadline.  Cook has moved to compel Plaintiffs to comply with the Order, which had an original deadline of May 28, 2022, *see* Dkt. 21704.[7]

These are but a few examples of the very types of motions that Cook proposed in in response to the PSC's original motion to remand or transfer, *see* Dkt. 11029 at 32-33 (proposing pre-remand motion practice to resolve common issues of statutes of limitation and repose, subject matter jurisdiction, and no-injury claims, among others); *see also* DUKE LAW SCHOOL BOLCH JUDICIAL INSTITUTE, MDL STANDARDS AND BEST PRACTICES 14A (2d ed.. 2018) (hereafter DUKE LAW MANUAL)[8] Best Practice 1B(iii): "The transferee judge should give priority to deciding issues broadly applicable to multiple claimants in the MDL.").  Whitney, Melissa J., *Bellwether Trials in MDL Proceedings - A Guide for Transferee Judges* at 43 (Fed. Jud Ctr. and JPML 2019) (noting MDL judges should consider "whether certain dispositive issues could eliminate certain groups of claims entirely")

Cook has carried through as it said it would and brought these motion. All of these motions are based on this Court's prior orders and rulings, and Cook submits that only this Court has the necessary background and only this Court should rule on these motions.  The PSC's motion to remand ignores these pending motions entirely, apparently intending that these motions—fully briefed and argued in this Court—should nevertheless be decided by remote courts that have no background in the procedural history or the facts underlying the motions.

**D.  The PSC's Motion Ignores the "No Injury" Cases.**

This Court should also deal with the considerable body of potential Category 7 "no injury"

---

[7] Plaintiffs have asked the Court to modify or vacate the order and to excuse them from having to support their categorizations with evidence. *See* Dkt. 22064.

[8] Available at https://judicialstudies.duke.edu/wpcontent/uploads/2018/09/MDL-2nd-Edition-2018-For-Posting.pdf

cases before any remand.  As the Court is aware, the Seventh Circuit has under submission the Plaintiffs' appeals of this Court's grant of summary judgment motions in the "no injury" cases of *Sykes* and *Parton*.  *See* Dkt. 20031.  Based on the briefing and oral argument, Cook believes that the Seventh Circuit will endorse this Court's dismissal of those cases, either on the merits or on jurisdictional grounds based on the amount in controversy.  Whichever ground the Seventh Circuit adopts, Cook expects that it will either (1) bring additional multi-Plaintiff motions to dismiss or for summary judgment on the same grounds, or (2) propose a screening order to permit the Court to identify and address such "no injury" cases that do not belong in Category 7.  *See, e.g.,  Avila v. Willits Env. Remediation Trust*, 633 F.3d 828, 833-34 (9th Cir. 2011) (upholding entry of *Lone Pine* order requiring class of plaintiffs to provide facts supporting liability and expert statement stating scientific and medical basis for claim); *see also* Nora Freeman Engstrom, *The Lessons of Lone Pine*, 129 Yale L. J. 2, 22-23 )(2019) ("at their core, *Lone Pine* orders seek to weed out noncolorable claims so those claims do not linger within, and thereby bog down or contaminate, the mass-tort or MDL system").

Given this Court's background and knowledge of the Cook filter litigation, the Court is ideally positioned to address and decide those issues, and any remand of cases currently categorized as Category 7 before the Court has the chance to do so would be wasteful and inefficient.  As MDL decisions have noted, such multi-Plaintiff motions that are perfectly suited to MDL treatment.  *See In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) ("A transferee court has the authority to enter dispositive orders terminating cases consolidated under 28 U.S.C. § 1407.").

**E.  Specific Fact Discovery and General Expert Discovery Have Not Been Completed.**

Although Company discovery has been complete for several years, specific fact and expert discovery remains to be done.  Other than the bellwether Plaintiffs, no plaintiff in this MDL has

responded to formal written discovery or been deposed.  No treating physician depositions have occurred in any of the pending Category 7 cases.  Cases in Category 7 are not in a position to be remanded with nothing more than a fact sheet and case categorization form.  Rather, if and when remand or transfer of Category 7 cases became appropriate, the Court should consider selecting waves of these cases to conduct basic fact discovery prior to any remand or transfer.  *See, e.g., In re C.R. Bard, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, No. MDL 2187, 2019 WL 4458579, at *6 (S.D.W. Va. Mar. 12, 2019), (describing organization of MDL cases into waves for purpose of individual case discovery and expert disclosure prior to remand), *report and recommendation adopted*, No. MDL 2187, 2019 WL 3385174 (S.D.W. Va. July 25, 2019)

The parties also have not filed, and this Court thus has not ruled on, generic expert disclosures.  The Court specifically has not considered or ruled on any Tulip-related *Daubert* or other expert motions that would help guide remand courts on the expert issues in Tulip cases.  As to the Celect, although the *Hill* and *Brand* cases involved case-specific experts and certain expert rulings relating to the Celect, those experts were not designated for other cases.  There is substantial work for this Court to complete as to experts, especially experts relating to the Tulip, and the bellwether process (whether it includes trials or not) can facilitate those rulings, and any remand of those cases would therefore be premature.  *See, e.g.,* Whitney, *Bellwether Trials in MDL Proceedings* at 43 (noting MDL judges should consider "whether certain dispositive issues could eliminate certain groups of claims entirely").

Tulip cases comprise nearly half of the cases in the MDL, and nearly half of the thousands of Category 7 cases the PSC moves to remand. Indeed, as the Court itself has observed, MDL 2570 is essentially two MDLs, one for the Tulip and one for the Celect. Yet the parties have taken virtually no general expert discovery concerning the Tulip filter.  Although the PSC's motion correctly notes that *company* discovery against the Cook Defendants is complete, *see* Dkt. 23580

at 4-5, the PSC fails to note that the parties have conducted virtually no MDL-wide expert discovery concerning the Tulip filter.

For example, in March 2017, following the Court's setting of bellwether trials in the cases of *Hill* (Celect filter) and *Gage* (Tulip filter), Plaintiffs disclosed a report by Dr. Robert M. McMeeking that addressed both the Celect and the Tulip filters, and Cook noticed Dr. McMeeking's deposition to question him about that report. *See* Exhibit G, McMeeking Dep. at 1 (June 1, 2017). Despite Cook's noticing the deposition in all cases, however, Plaintiffs' attorneys asserted that Dr. McMeeking had been identified as a testifying expert *only* in the *Hill* and *Gage* cases, and refused to permit Cook to question Dr. McMeeking about his other work or other cases:

> Q. BY MR. WEBBER: Yeah. Is there -- is there any work that you are currently -- additional work you are planning to do in any of the Cook litigation that you have been retained?
>
> A. I am always thinking in terms of --
>
> MS. BAUGHMAN: I'm going to object to the extent you are asking him about anything other than Hill and Gage because ***he hasn't been identified as an expert in any Cook case other than Hill and Gage at this point.*** So anything else would be consulting work.

Ex. H, McMeeking Dep. at 51:8-17 (June 1, 2017) (emphasis added).

> Q [Mr. Webber]. Okay. How about more broadly with the Cook cases otherwise? Is there additional work you are expecting to do?
>
> MS. BAUGHMAN: I am going to object that ***that would be consulting work and it is privileged and instruct you not to answer***.

*Id.* at 52:9-14 (emphasis added).

Thus, even assuming that some or all Plaintiffs intend to use Dr. McMeeking as a general causation expert in Tulip cases, Cook has never had the opportunity to question Dr. McMeeking about his Tulip opinions generally or about any Tulip-related issues other than those that arose in the *Gage* case.

Expert discovery in other Tulip cases has been similarly limited or nonexistent. For

bellwether Tulip Plaintiff David McDermitt, Plaintiffs designated only two experts, Dr. Derek Muerhrcke and Dr. Laura Plunkett, and their depositions were captioned specifically in the *McDermitt* case.  Cook disclosed seven experts in *McDermitt* (Ms. Christy Foreman, Dr. Antonios P. Gasparis, Dr. Todd A. Lee, Dr. Timothy A. Morris, Dr. Scott W. Robertson, and Dr. Renu Virmani), but Plaintiff's attorneys did not depose any of them before the Court dismissed Plaintiff McDermitt's case.  None of the other dismissed Tulip cases that had at various points been designated for trial—James Albert Johnson, Julie Wilson, Jasmine Bowen, and Whitney Tucker— reached the stage of expert disclosures, and no disclosures have yet been made in the only remaining Tulip bellwether case, Ernie Rochelle Scott.

The parties have thus conducted little or no discovery into the expert testimony that the parties will offer on general Tulip-related issues, they know little about what the other side's experts will say on issues of product defect, standard of care, warnings, and causation with respect to Tulip-related claims, and there have been no *Daubert* motions concerning the admissibility of these experts' general opinions.

Again, such MDL-wide disclosure, discovery, and motion practice concerning the Tulip experts who will provide general, non-case-specific testimony is of course just the type of efficiency that MDLs are designed to promote. *See, e.g., In re: Wright Medical Technology Inc.*, No. 1:12-cv-664-WSD, MDL No. 2329, 2016 WL 4592176, at *1 (N.D. Ga. Mar. 22, 2016) (noting deadline for "general expert discovery," which included "the exchange of numerous expert reports"); *In re Lipitor (Atorvastatin Calcium) Marketing, Sales Practices and Products Liability Litigation*, 892 F.3d 624, 647-48 (4th Cir. 2018) (affirming MDL-wide grant of summary judgment based on failure of plaintiffs' general experts).  And the case law shows that remand courts respect and follow MDL court rulings on such expert issues. *See, e.g., Winter v. Novartis Pharmaceuticals Corp.,* 2011 WL 5008008, at *2 (W.D. Mo. Oct. 20, 2011) ("[P]rinciples of efficiency and comity

make the Court hesitant to disturb the MDL court's ruling as doing so in the absence of a significant change of circumstances would frustrate the purposes of centralized pretrial proceedings."); *Delgado v. BSC, 2020 WL 13356790* (M.D. Fla. Nov. 3, 2020) (adopting MDL court's *Daubert* rulings on general expert issues, stating that a "transferor court 'should rarely reverse'" a ruling made by an MDL transferee judge); *Foster v. Ethicon, Inc.,* 2021 WL 4476642 (D.S.D. Sept. 30, 2021) (adopting a number of MDL judge's decisions on *Daubert* challenges and noting that "[a]llowing the parties to relitigate issues already decided by [the MDL judge] would be inefficient and would undermine a main purpose of the MDL process").

The parties should make such expert disclosures and conduct such Tulip-related expert discovery and motion practice before any remand.[9] *See* DUKE LAW MANUAL at 94, Best Practice 14A ("Remand of remaining cases to transferee courts should not begin until the court has taken steps: … to prepare cases that do not resolve for trial in the transferor courts").

### F. The PSC's Motion Underlines the Importance of the Court's CMO 30 in Screening Out Medically Unsupported Cases.

The PSC's motion's focus on the proposed remand of Category 7 cases actually highlights the importance of the screening process this Court has imposed on Category 7(e) cases in CMO 30.  In CMO 30, this Court has adopted a reasonable and necessary screening process to identify and rid the MDL of Plaintiffs who simply cannot offer any factual support for the claims and categorizations they have asserted.  *See, e.g., Burns v. Universal Crop Protection Alliance*, No. 4:07-cv-00535-SWW, 2007 WL 2811533, at *2-3 (E.D. Ark. Sept. 25, 2007) (entering *Lone*

---

[9] In addition, as noted above, the parties have conducted little or no discovery into *general* experts in the Celect cases either.  In the two Celect cases tried in this Court, *Hill* and *Brand*, the parties disclosed only case-specific experts, not MDL-wide general experts, and the expert discovery likewise focused on the experts' case-specific opinions.  Considerable general expert discovery and motion practice therefore remains to be done in the Celect cases as well.

*Pine* order in products liability action on ground that "a preliminary showing on causation is necessary for efficient case management"). In addition to the pending motions relating to CMO 30 described above, the CMO 30 process itself should be completed, and noncompliant cases dismissed, before any remand of these cases.

Remanding Category 7(e) cases without requiring the Plaintiffs who brought them to demonstrate compliance with CMO 30 would effectively eliminate any check on Category 7(e) Plaintiffs' self-serving characterizations of their injuries.  Without compliance, the Court and Cook have nothing but Plaintiffs' unsupported assertions that they actually belong in the category of cases the PSC is asking to have remanded.  The blanket remand the PSC suggests would effectively dump hundreds of potentially noncompliant cases on remote courts.  Such a remand would force new judges in remote courts to start from scratch in trying to identify meritless cases and in the process waste a tremendous amount of judicial time and effort.  *See* DUKE LAW MANUAL 17 at 104 (2d ed.. 2018) (hereafter DUKE LAW MANUAL)[10] (Best Practice 14D(i): "In preparation for remand, the court should consider using *Lone Pine* proceedings or other methods to cull meritless cases and ensure that only the viable cases may ultimately be eligible for remand.").  CMO 30 represents exactly the kind of screening order that MDL courts properly use to efficiently manage large number of cases, *see, e.g., Avila*, 633 F.3d at 833-34, and the Court should see that process through before suggesting to the JPML the remand of Category 7 cases.

### III.   The PSC's Motion Demonstrates the Need for a Category 7(e) Tulip Bellwether Trials.

As noted above, the PSC's motion laments the fact that there have been no bellwether trials in this MDL since January 2019.  *See* Dkt. 23580 at 1.  Cook could not agree more that there need

---

[10] Available at https://judicialstudies.duke.edu/wpcontent/uploads/2018/09/MDL-2nd-Edition-2018-For-Posting.pdf

to be more bellwether trials, especially for the Tulip half of the MDL.  But the lack of recent bellwether trials, which all parties agree are useful, is not an argument for remand; it is instead an argument for actually moving forward with such bellwether trials—and soon.  Moreover, given the PSC's emphasis on Category 7 cases, Cook proposes that the Court set a Category 7(e) case for a bellwether trial.  Such a trial would address the PSC's stated concern that nothing is happening in the Category 7 cases, and would materially move the MDL forward.  *See, e.g., Grundy v. FCA US LLC*, No. 2:20-CV-11231, 2021 WL 5485821, at *1 (E.D. Mich. Nov. 22, 2021) ("the bellwether process is typically employed during mass tort litigation to help parties quantify and ascertain abstract elements like damages and causation");

A number of considerations support the prompt bellwether trial of a Category 7(e) case:

- The Court has not yet conducted a bellwether trial of a Tulip case, even though Tulip cases comprise *half* of the MDL.

- Category 7(e) cases are by far the most numerous cases in the MDL.

- The bellwether trial of a Category 7(e) Tulip case would fulfill the purposes of bellwether trials, providing the parties with the opportunity to test strategies and evidence and giving them a sense of the strength or weakness and the likely value of such cases.  *See, e.g., In re Testosterone Replacement Therapy Prods. Liab. Litigation*, 2017 WL 2574057, at *1 (N.D. Ill. May 22, 2017) ("purpose of the bellwether ... process is to provide significant information regarding the entire pool of cases that are part of the MDL" ); *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.*, 54 F.4th 912, 920 (6th Cir. 2022) (noting that bellwether trials serve the "twin goals" of being "informative indicators of future trends and catalysts for an ultimate resolution" (quoting  Eldon E. Fallon et al., *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2343 (2008)).

- The bellwether trial of a Category 7(e) Tulip filter case would allow the parties to develop and exchange discovery concerning their general experts for Tulip cases, which they have not yet done. *See, e.g., In re: Wright Medical Technology Inc.*, 2016 WL 4592176, at *1.

- Selection of a Category 7(e) Tulip case for a bellwether trial will reduce the chances of yet more aborted bellwether trials.  Through serial dismissals, Plaintiffs have repeatedly thwarted the Court's attempts at bellwether trials of a Category 5 or 6 case.  But a Category 7(e) Plaintiffs at least assert claims of an *actual*, *symptomatic* injury, and thus presumably would be less likely to abandon those claims midstream

as "negative value" cases if their cases are selected for a bellwether trial.[11]

In sum, far from justifying remand of all Category 7 cases, the circumstances outlined in the PSC's motion actually make a compelling argument for the setting of a 2023 bellwether trial in a Category 7(e) Tulip filter case to replace the dismissed *Tucker* bellwether case.

## IV.   The PSC's Legal Argument for Remand Does Not Apply to Most Category 7 Cases.

Even assuming for the sake of argument that Plaintiffs had not stood in the way—which they did—and that the Court had already completed the necessary tasks to advance the Category 7 cases—which it has not—the legal rationale the PSC offers for "remand" of Category 7 cases is simply wrong, at least as to the vast majority of those cases that Plaintiffs voluntarily filed in this Court in the first instance.[12]

The PSC's motion  asks the Court to suggest to the JPML the "remand" of all Category 7 cases to what the motion calls their "home jurisdictions."  Dkt. 23580 at 2.  But neither this Court nor the JMPL has any authority to "remand" cases that Plaintiffs originally (and voluntarily) filed in this district, rather than filed in another district and transferred to this district.  And the great majority of the cases addressed by the PSC's motion—4,970 of the 5,780 Category 7 cases—were originally in fact filed in this district, and thus are not and cannot be subject to the PSC's requested

---

[11] In addition, circumstances have recently opened up a possible slot for a Category 7(e) bellwether.  With the recent voluntary dismissal of the *Tucker* case, *see* Dkt. 23683, which was scheduled for a 2023 bellwether trial, room has presumably cleared for a replacement bellwether.

[12] A threshold question is of course whether the PSC actually has the authority to move for the remand of over 5,000 Category 7 cases, most of which involve Plaintiffs that PSC members do not represent.  It takes little imagination to anticipate that some Category 7 Plaintiffs might well prefer to stay in the MDL for the time being, particularly those who cannot comply with CMO 30 and may not wish to have a remote court actually test the factual viability of their claims.  The PSC's motion does not mention any consultation with the actual Plaintiffs whose cases they address in their motion or with those Plaintiffs' attorneys, and certainly makes no representation about any consent by those Plaintiffs to the requested remand.

"remand."

Cook does not contest that in the roughly 800 Category 7 cases transferred to this MDL by the JPML under 28 U.S.C. §1407, those Plaintiffs have the right to eventual remand to their transferor districts, unless they waive that right.  *See Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26, 40 (1998).  But as the *Lexecon* decision makes clear, a court may only "remand" a case to a remote federal district under 28 U.S.C. § 1407(a) if the case was originally filed in the remote district and then transferred to an MDL case.  As a result, the 4,970 Category 7 cases that were originally filed in this district have no right to "remand" to any remote district under *Lexecon* or section 1404(a), and the PSC's argument to the contrary has no legal basis.

### A.  Unless the Right is Waived, Plaintiffs Whose Cases Were Transferred to the MDL Court by the JPML have a Right Under *Lexecon* to Eventual Remand to Their Respective Transferor Districts for Trial.

In cases that were originally filed in remote federal districts and transferred to this MDL by the Judicial Panel on Multidistrict Litigation under 28 U.S.C. § 1407, the parties have the right to a remand of the case to the remote district for trial at the conclusion of pretrial proceedings.  *See Lexecon,* 523 U.S. at 40; *see also In re Gerber Probiotic Prods. Mktg. and Sales Pracs. Litig.*, 899 F. Supp. 2d 1378, 1380 n.4 (J.P.M.L. 2012) (holding that under *Lexecon*, "transferee courts presiding over multidistrict litigation have no authority to invoke Section 1404 to assign centralized actions to itself for bellwether trials.").  In reaching this conclusion, the *Lexecon* Court relied on section 1407(a)'s language that a case transferred by the JPML to an MDL court "shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated."  523 U.S. at 35 (quoting 28 U.S.C. § 1407).  Based on this clear language, Cook does not dispute that the approximately 800 Category 7 Plaintiffs whose cases were filed elsewhere and transferred to this district have the right under *Lexecon* (absent waiver) to the eventual remand of their actions to

their respective transferor districts.

**B. Plaintiffs Who Originally Filed Their Cases in the Southern District of Indiana Have No Right to Remand Under *Lexecon* or On Any Other Basis.**

In contrast, Plaintiffs who originally filed their actions in the Southern District of Indiana have no right under *Lexecon* to "remand" of their cases to a remote district, and the PSC's request for "remand" of those cases seeks relief that is not authorized either by statute or by case law. This conclusion is dictated by the plain language of section 1407, by the *Lexecon* decision itself, by multiple circuit and district courts that have addressed the issue, and by this Court's own prior rulings.

First, by its own terms, section 1407(a) applies only to cases transferred to an MDL district for coordinated proceedings; it does not address or even mention cases originally filed in the MDL district. The section states in relevant part:

> When civil actions involving one or more common questions of fact are ***pending in different districts, such actions may be transferred*** [by the JPML] to any district for coordinated or consolidated proceedings. . . . Each action ***so transferred shall be remanded by the panel*** at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated[.]

28 U.S.C. § 1407(a) (emphasis added). The statute's remand obligation is—by its plain language—limited to actions ***transferred*** from another district by the JPML. Indeed, the statute's use of the term "remand" reinforces this reading, as a case cannot be "remanded" to a court in which it was never pending. *See* Black's Law Dictionary (10th ed. 2014) (defining the verb "remand" as "[t]o send (case or claim) back to the court or tribunal from which it came for some further action"). The language of the statute thus has no application to non-transferred cases, foreclosing Plaintiffs' argument. *See BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004) ("[O]ur inquiry begins with the statutory text, and ends there as well if the text is unambiguous."); *see also Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 433 (1999).

- 20 -

The *Lexecon* decision itself reinforces the limited scope of section 1407(a)'s language.  The *Lexecon* Court focused on the "shall" language of section 1407(a) mandating remand of transferred cases for trial.  *See Lexecon*, 523 U.S. at 35.  Nothing in the opinion even remotely suggests that section 1407(a)'s command applies to ***non-transferred*** cases originally filed in the MDL court.  *Lexecon*'s holding is limited to cases transferred to the MDL court by the JPML under section 1407(a), and the PSC's motion offers no authority that suggests otherwise.

Post-*Lexecon* courts have applied *Lexecon* in just this narrow way.  The Seventh Circuit and other federal appeals courts have held that a plaintiff who originally files an MDL-related case in the district hosting the MDL has no right to remand under *Lexecon* because the case was not transferred under section 1407 and there is no district to which to "remand."  *See In re Bridgestone/Firestone, Tires Prods. Liab. Litig.*, 333 F.3d 763, 767 (7th Cir. 2003) ("Because the decision stemmed from a complaint filed in the Southern District of Indiana, [*Lexecon*] has no bearing; the district court had original jurisdiction and was not acting as a transferee court under 28 U.S.C. § 1407 with respect to this complaint."), *abrogated in part on other grounds*, *Smith v. Bayer Corp.*, 564 U.S. 299 (2011); *Kaiser Foundation Health Plan, Inc. v. Pfizer, Inc. (In re Neurontin Mktg. & Sales Practices Litig.)*, 712 F.3d 21, 50-51 (1st Cir. 2013) ("The coordinated plaintiffs filed their complaint in the District of Massachusetts; it was not transferred to this district for pretrial proceedings, and so § 1407(a) and *Lexecon* do not govern here.").

The JPML itself has likewise explained that *Lexecon* is inapplicable to cases that have not been transferred under section 1407(a):

> Following *Lexecon*, transferee courts are limited to conducting bellwether trials (or any other trial or post-trial proceedings) in those actions over which the transferee court has jurisdiction outside the multidistrict context, either ***because the action was filed directly with the transferee court*** or because the parties waived their right to remand to the transferor court. Thus, even if a litigation is likely to be centralized by the Panel, Section 1404 transfer by transferor courts—*before* centralization— can result in a larger pool of potential bellwether cases for the transferee court.

*In re Gerber*, 899 F. Supp. 2d at 1380 n.4 (emphasis added).  *See also* FEDERAL JUDICIAL CENTER, MANUAL FOR COMPLEX LITIGATION p. 463, § 22.93 (4th ed. 2004) ("[n]othing in [Lexecon] . . . precludes the transferee judge from presiding over cases that litigants filed in the transferee district originally.") available at https://public.resource.org/scribd/8763868.pdf (last accessed March 6, 2023).  District courts have uniformly reached the same holding:  section 1407(a) does not apply to "direct filed" cases.[13]  And the Federal Judicial Center's pocket guide series agrees.  *See* Whitney, *Bellwether Trials in MDL Proceedings* at 11 ("if the MDL contains actions that were properly filed in the transferee district in the first place, the transferee judge can conduct one or more bellwether trials from those cases." (citing Manual for Complex Litigation, Fourth §§ 20.132, 22.315, 22.93 (2004)).

Finally, this Court has itself repeatedly stated the same conclusion: the *Lexecon* right to remand simply does not exist in cases originally filed in this district.  The Court's comments at MDL hearings make this clear, and Plaintiffs' attorneys often even state their agreement with the statement.  The Court has stated:

- "There's no Lexecon issue in direct file cases.  Doesn't exist.  They can file a [motion for] change of venue."  Exhibit H, June 13, 2019 Status Conference Tr. at 38:8-9.
- "But Lexecon applies to cases transferred from the MDL panel to the transferee court."  *Id.* at 38:18-19.
- "The current law from the Supreme Court is Lexecon issues arise in cases transferred from the panel to the transferee court." *Id.* at 39:2-4. PSC member Joe

---

[13] *See, e.g., In re Soc'y Ins. Co. Covid-10 Bus. Interruption Protection Ins. Litig.*, 2021 WL 3290962, at *6 (N.D. Ill. Aug. 1, 2021) (ordering "any new plaintiffs to file actions in their home districts . . . and then to ensure that those actions are transferred before this Court" because "[t]his approach preserves all parties' *Lexecon* rights"); *In re Jan. 2021 Short Squeeze Trading Litig.*, 2022 WL 99377, at *5 (S.D. Fla. Jan. 10, 2022) (explaining that the practice of direct filing "leaves transferee courts without options at the conclusion of pretrial proceedings, as direct-filed cases do not have a transferor 'home' court to which the transferee court can remand them [pursuant to § 1407]"); *In re FCA US LLC Monostable Gearshift Litig.*, 2022 WL 34675, at *2 (E.D. Mich. Jan. 4, 2022).

Williams *agreed*. *Id.* at 39:5-6.  ("I agree with that, Your Honor. I agree with that.").

- "On a direct file, there's nothing for [the Court] to remand." *Id.* at 41:24-25.  Again, PSC member Joe Williams *agreed*. *Id.* at 42:1-2 ("No, but you can transfer").

- "So as I've said previously, cases originally in this Court, there's no Lexecon issue to be presented because it's not transferred from the panel."  Exhibit I, October 25, 2019 Status Conference Tr. at 53:11-13.

The Court also issued a written Order reiterating and explaining this conclusion.   In

denying the PSC's Bench Brief on *Lexecon* and the Bellwether Selection Process, the Court wrote:

> The court **DENIED** Plaintiffs' Steering Committee's Bench Brief on Lexecon1 and the Bellwether Selection Process (Filing No. 10715).  There is no direct-filing order entered in this case which contemplates that cases filed here directly shall be remanded to the individual plaintiff's home district for trial. Moreover, the parties agree that the Southern District of Indiana is the proper venue under 28 U.S.C. § 1391.  *Consequently, the court has complete authority over cases originally filed in this court, just as it would over any other case originally filed in this district. This complete authority includes the authority to try such cases.  Accordingly, there is no "Lexecon right" in 23 of the 24 Bellwether Discovery Pool cases that were filed in this court, and the parties are instructed to continue working up those cases under the terms of the current Bellwether Selection Plan Protocol* (CMO-25).

Dkt. 11131 at 2 (emphasis added); *accord, In re FCA,* 2022 WL 34675, at *2  ("[T]his Court

unquestionably has full authority to try all claims in the matters that were direct-filed in the Eastern

District of Michigan and reassigned as companion proceedings to be consolidated with the

MDL.").[14]

In sum, actions that Plaintiffs originally filed in this District cannot be "remanded" to a

remote district, and the portion of the PSC's motion that claims that such Plaintiffs have a right

---

[14] Plaintiffs' pre-*Looper* conduct in the MDL litigation likewise shows that they did not believe that Plaintiffs who had filed their actions in this Court had a *right* to remand to remote "home" districts under section 1407(a).  For example, on November 13, 2018, eight Plaintiffs moved to transfer venue pursuant to § 1404(a).  *See* Dkt. 9602.  That motion expressly acknowledges that section 1407's remand mandate does not apply to cases originally filed in this district:  "these MDL cases were direct-filed and thus, not subject to the JPML remand process."  *Id.* at 3. Instead, Plaintiffs addressed the section 1404(a) factors.  *Id.* at 3-5.  Other motions to transfer by other Plaintiffs followed this same template.  *See* Dkts. 9694, 10438, 1043

under *Lexecon* to the remand of such cases is simply wrong and lacks any legal support. Therefore, as to the 4,970 Category 7 cases originally filed in this District, the Court must deny the PSC's motion for remand,

### C. The PSC's Other Arguments Do Not Change This Result.

The PSC's motion offers two additional arguments to try to support the request for remand, but none of them changes the result dictated by section 1404(a) and *Lexecon*.

> #### 1. The *Looper* decision did not and could not expand statutory *Lexecon* rights to Plaintiffs who originally filed their actions in this District.

The PSC's motion argues that the Seventh Circuit's decision in *Looper v. Cook, Inc.*, 20 F.4th 387 (7th Cir. 2021), somehow affects the parties' rights under *Lexecon* and entitles all the Plaintiffs who commenced their actions in this District to "remand" to their claimed home districts. *See* Dkt 23580 at 10-11. The PSC asserts:

> The plaintiffs who filed directly into this MDL must be treated just as direct-filing plaintiffs in countless MDL's before them, none of whom have been required to make individual showings that they are entitled to filing in the MDL. *See, e.g., In re Bard IVC Filters*, 2019 WL 3928657.

Dkt. 23580 at 10 (citing *Looper*). The PSC is mistaken: The *Looper* decision does not give Plaintiffs who originally filed their cases in this district a right to "remand" to a remote district. Several grounds support this conclusion.

First, the Seventh Circuit's decision in *Looper* has nothing to do with the section 1407(a) remand the PSC seeks here. The issue in *Looper* was whether the court should apply the choice-of-law rules of the state in which the two Plaintiffs had filed their actions (Indiana)—which would result in their actions failing under the statute of limitations—or the choice-of-law rules of the plaintiffs' home states—which would result in their actions being timely commenced. 20 F.4th at 389. Here, however, the issue is whether Plaintiffs who originally filed their actions in the Southern District of Indiana are entitled as a matter of right to "remand" to their self-designated

remote "home" districts.  The two issues are entirely different, apply different standards, and involve entirely different considerations.  Indeed, the Seventh Circuit expressly stated that it expressed "no views" on the *Lexecon* issue or on this Court's prior rulings that cases originally filed in this District had no *Lexecon* right to remand:

> Since there was no direct-filing order in this MDL, the district judge concluded that the parties in direct-filed cases had *not* preserved their *Lexecon* rights, thus allowing the MDL court to preside over the trials. ECF No. 11131 at 2. We express no views here on that issue, which may present considerations quite different from the statute-of-limitations defenses in these appeals.

*Looper*, 20 F.4th at 397 n.3.

Second, the *Looper* court's examination of direct filing orders offers no support for Plaintiffs' position.  Indeed, that discussion did not even affect the *Looper* court's decision; the court did not base its decision not on any direct filing order, express or implied, but on its conclusion that Cook had consented through its conduct to the use of home-state choice-of-law rules.  20 F.4th at 394 (holding "that Cook at least implicitly, but clearly, consented to the application of originating state choice-of-law rules to directly filed cases").  Moreover, as both this Court and the *Looper* court have stated, there is *no direct filing order* in this MDL, much less an order that requires the remand of locally filed cases to remote venues:

> There is no direct-filing order entered in this case which contemplates that cases filed here directly shall be remanded to the individual plaintiff's home district for trial.

Dkt. 11131 at 2; *see also* 20 F.4th at 397 n.3 ("there was no direct-filing order in this MDL").

Third, the evidence on which the *Looper* court based its finding that Cook had consented to the application of home-state choice-of-law rules does not exist with respect to *Lexecon* rights. Unlike the choice-of-law question at issue in *Looper*, Cook has never consented to the "remand" to a remote district of any MDL case originally filed in this Court, and has never suggested that such a remand would be appropriate or even legal.  On the contrary, Cook has without exception

argued that Plaintiffs who chose to file their actions in this District have no *Lexecon* right to remand. *See, e.g.,* Dkt. 9741 (Defendants' Response in Opposition to Plaintiffs' Motion to Transfer Venue – December 14, 2018); Dkt. 11029 (Cook Defendants' Response to Plaintiffs' Motion to Remand and Transfer Venue – June 10, 2019); Dkt. 12590 (Defendants' Response in Opposition to Plaintiffs' Motion to Transfer Venue – December 17, 2019); Dkt. 10786 (Cook Defendants' Response to Plaintiffs' Bench Brief Concerning Application of *Lexecon* - May 23, 2019) ("By their terms, section 1407 and *Lexecon* apply *only* to cases that have been *transferred* to an MDL court by the JPML, as numerous courts and the JPML have made clear."); Dkt. 10987 (Cook Defendants' Notice of Supplemental Authority in Support of Their Position on the *Lexecon* Issue - June 10, 2019) (collecting authority); Dkt. 11029 at 3-16 (Cook Defendants' Response To Plaintiffs' Motion To Remand And Transfer Venue) ("Section 1407 does not apply to cases that were originally filed in this District.").[15]

In sum, the prior Cook positions on choice of law on which the *Looper* court based its finding of consent, 20 F.4th at 389, are wholly absent here with respect to *Lexecon* rights. Cook has consistently maintained that cases originally filed in this District cannot be remanded under *Lexecon*, and no consent to such remands could possibly be inferred. In *Looper*'s words, Cook has neither "implicitly" nor "clearly" consented to the remand of cases filed in this district to Plaintiffs' claimed home states. 20 F.4th at 394.

In an attempt to manufacture an implication of consent, the PSC points to Cook agreement to case management orders that stated that other than discovery pool Plaintiffs, "no other plaintiffs

---

[15] Indeed, even the case that the PSC makes clear that *Lexecon* "remand" is not available for cases originally filed in the MDL district. *See In re Bard IVC Filters Prods. Liab. Litig.,* 2019 U.S. Dist. LEXIS 141175, *367 (Aug. 20, 2019) (distinguishing between transferred cases and cases filed directly in the MDL district, and transferring direct-filed cases to remote districts under 28 U.S.C. § 1404(a) by agreement of the parties).

were waiving their *Lexecon* rights." Dkt. 23580 at 11-12 (citing CMOs 5, 9, 12, and 17).  Base on this language, the PSC asserts that "Having obtained the benefits of CMOs that governed the conduct of this litigation for years, Cook should not be allowed to change positions now."  Dkt 23580 at 12.  But Cook has not changed positions; as noted above, Cook has consistently maintained that actions originally filed in this District cannot be remanded under *Lexecon*.  Cook agreed that the Plaintiffs' agreement to these CMOs did not constitute a waiver of *Lexecon* rights because (1) some Plaintiffs—those whose cases were transferred—actually have *Lexecon* rights, and (2) although some Plaintiffs who originally filed their actions in this District claimed to have *Lexecon* rights, the resolution of that issue was not necessary for the purposes of the CMOs. Agreeing that an opposing party has not waived an argument is not a concession that the argument is valid or a waiver of the right to dispute that argument later.  Indeed, the Plaintiffs who originally filed here could not have waived their *Lexecon* rights because they had no such rights to begin with.

If *Lexecon* teaches anything, it is that courts must read section 1407(a) strictly and may not read into it rights that are not there.  Neither the parties' mutual consent nor the Court itself could authorize the Court to grant the Plaintiffs who originally filed their actions in this district statutory rights to remand under section 1407(a) that are not only unauthorized by but inconsistent with the language of that statute.  Indeed, several MDL courts sitting in districts that would not otherwise be proper venues for most of their cases have discouraged direct filing on just this basis.  *See, e.g., In re: January 2021 Short Squeeze Trading Litig.*, 2022 WL 99377, at *5 (S.D. Fla. Jan. 10, 2022) ("the practice [of direct filing] leaves transferee courts without options at the conclusion of pretrial proceedings, as direct-filed cases do not have a transferor 'home' court to which the transferee court can remand them"); *In re: Society Ins. Co. Covid-19 Business Interruption Protection Ins. Litig.*, 2021 WL 3290962, at *6 (N.D. Ill. Aug. 1, 2021)("the Court holds that it is improper to add

new plaintiffs—especially those not located within the Northern District of Illinois—'directly' to this MDL").

## 2. The PSC Did Not Move for Transfer Under Section 1404(a).

The PSC's motion contains several stray references to transfer of venue under 28 U.S.C. § 1404(a),[16] and section 1404(a) will certainly have an eventual place in this litigation. Without a right to "remand" under *Lexecon*, the parties' only avenue for eventually landing locally filed actions to what Plaintiffs call their "home" districts would be a motion to transfer venue under section 1404(a). Here, however, the PSC's motion does not seek transfer under section 1404(a), only remand under *Lexecon* and section 1407, and Plaintiffs never attempt to meet the section's requirements for transfer, either generally or on a case-specific basis.

Transfer of venue under section 1404(a)[17] differs substantially in several ways from the remand under section 1407(a) that the PSC's motion actually seeks:

- Most prominently, while remand under section 1407(a) is mandatory, *see* 28 U.S.C. § 1407(a) ("*shall* be remanded…to the district from which it was transferred") (emphasis added), transfer under section 1404(a) is not required but falls within the broad discretion of the district court, *see* 28 U.S.C. § 1404(a) ("a district court *may* transfer any action…") (emphasis added); *Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir.1986) (noting court has broad discretion with respect to section 1404 motions).

- While section 1407(a) dictates remand to the transferor district, section 1404(a) permits transfer to any district where the case might properly have been brought or to which the parties consent. *Compare* 28 U.S.C. § 1407(a) *with* 28 U.S.C. § 1404(a).

- Although remand to the transferee district under section 1407(a) is automatic and

---

[16] *See, e.g.,* Dkt. 23580 at 6 (noting that "the Court looks to 'interest of justice' to determine whether transfer under Section 1404(a). [sic]"). 28 U.S.C. § 1404(a)."); 9 (referring to "the initial round of transfers"); 10 (noting Cook's arguments in earlier motion based on section 1404(a)).

[17] Section 1404(a) provides:
> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

28 U.S.C. § 1404(a).

permits no analysis, transfer under section 1404(a) requires examination of whether the requested transfer serves "the convenience of parties and witnesses" and is "in the interest of justice."

Given these differences, there can be no arguable "right" to transfer under section 1404(a) similar to the "remand right" that transferred Plaintiffs have under section 1407(a) and *Lexecon*, and a party seeking transfer under section 1404(a) must "make a clear-cut showing that transfer is in the best interests of the litigation." *Miller v. Bombardier Inc.,* 1993 WL 378585, at *2 (S.D.N.Y. Sept.23, 1993) (citing *Schieffelin & Co. v. Jack Co. of Boca, Inc.,* 725 F.Supp. 1314, 1321 (S.D.N.Y. 1989). Indeed, even if a party satisfies the statutory standard, both the transfer itself and the timing of any transfer would remain at the Court's discretion. *See Le Clair v. Shell Oil Co.,* 183 F. Supp. 255, 262 (S.D. Ill. 1960) ("This statute says, 'may transfer any civil action.' It is not mandatory but only authorizes transfer in a proper case."). Thus, even assuming that the PSC's motion requested transfer under section 1404(a)—which it does not—non-transferred Plaintiffs would have no *right* to a transfer of venue to their claimed "home districts" under section 1404(a).

## CONCLUSION

For the reasons stated above, the Cook Defendants urge the Court to deny the Plaintiffs' Steering Committee's Motion and instead to set a bellwether trial in a Category 7(e) Tulip case for the trial slot originally intended for the *Tucker* case.

Dated: March 17, 2023

Respectfully submitted,

/s/  Andrea Roberts Pierson
Andrea Roberts Pierson
Jessica Benson Cox
FAEGRE DRINKER BIDDLE & REATH LLP
300 North Meridian Street, Suite 2500
Indianapolis, Indiana  46204
Telephone:        (317) 237-0300

Facsimile:        (317) 237-1000
andrea.pierson@faegredrinker.com
jessica.cox@faegredrinker.com


James Stephen Bennett
FAEGRE DRINKER BIDDLE & REATH LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana  46802
Telephone:        (260) 424-8000
Facsimile:        (260) 460-1700
stephen.bennett@faegredrinker.com

*Attorneys for Defendants Cook Incorporated, Cook Medical LLC f/k/a Cook Medical Incorporated, and William Cook Europe APS*

## CERTIFICATE OF SERVICE

I certify that on March 17, 2023, a copy of the foregoing **COOK'S OPPOSITION TO PLAINTIFFS' STEERING COMMITTEE'S MOTION FOR RELIEF FROM CMO-30, OR IN THE ALTERNATIVE, MOTION TO AMEND CMO-30** was filed electronically.  Parties may access this filing through the Court's electronic records system.

/s/ *Andrea Roberts Pierson*
Andrea Roberts Pierson

US.355843673.12