UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | § § § § § | Case No. 1:14-ml-2570-RLY-TAB<br><br>MDL No. 2570 |
| This document relates to:<br><br>All Category 7 cases | § § § § § | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION
FOR SUGGESTION OF REMAND**

On February 14, 2023, the Plaintiffs' Steering Committee filed a motion requesting that the Court enter a suggestion of remand for Category 7 cases to the Judicial Panel on Multidistrict Litigation (doc. 23580). The defendants responded on March 17, 2023 (doc. 23766). The PSC now respectfully files this reply.

**INTRODUCTION**

This MDL has been pending for nearly eight and one-half years. Yet somehow, defendant insists that not a single case is ready for remand -- not a single case of any kind.

During the pendency of this MDL, dozens of plaintiffs have died. Some plaintiffs' survivors have died. If cases are not remanded soon, dozens more will die. For just some examples, suggestions of death have been filed in the following cases:

1:16-cv-03533
1:16-cv-01060
1:16-cv-01058
1:16-cv-01859
1:16-cv-02525

1

1:16-cv-00992
1:16-cv-01810
1:16-cv-01092
1:16-cv-00950
1:17-cv-01779
1:17-cv-01020
1:17-cv-03968
1:17-cv-00606
1:17-cv-00699
1:17-cv-02545
1:17-cv-02292
1:17-cv-03586
1:17-cv-00700
1:18-cv-00689
1:18-cv-00081
1:18-cv-00877
1:18-cv-01188
1:18-cv-02422
1:18-cv-01606
1:18-cv-03753
1:18-cv-01732
1:18-cv-02780
1:19-cv-03434
1:19-cv-00579
1:19-cv-2796
1:19-cv-01662
1:20-cv-02042
1:20-cv-00647
1:20-cv-02509

Grimly determined to bottle up this litigation for as long as it possibly can, defendant makes a series of irrelevant and/or illogical arguments that do not bear scrutiny. Cook is at such pains to continue to delay resolution of these cases that, as detailed below, its arguments eventually become hopelessly contradictory.

But what Cook does not deny, at all, speaks volumes. It does not dispute that there are only eleven product liability MDLs remaining, anywhere in the county, older than this one; that two of those contain no cases, one contains five, and another seven; and that none of those MDLs contains even 300 cases. In other words, this MDL, is by some distance, the oldest product liability

MDL in the country with any significant number of cases remaining -- at least 25 times more cases than any of the remaining older cases.

Nor does Cook dispute that, as one MDL court put it, remand is appropriate "where everything that remains to be done is case-specific *or* where remand will serve the convenience of the parties and witnesses and will promote the just and efficient conduct of the litigation. *In re Motor Fuels Temp. Sales Prac. Litig.*, 2012 WL 1963350, * 2 (D. Kan. May 30, 2012) (emphasis added). Or as perhaps the nation's foremost academic expert on MDLs, who spent decades mediating them as well, stated: "There are only so many motions one judge can decide, so many discovery disputes one judge can resolve, and so many bellwether trials one judge can conduct." Theodore Rave & Francis McGovern, *A Hub and Spoke Model of Multidistrict Litigation*, 84 Law & Contemp. Problems 21, 22 (2021).

And defendant has no response for the obvious point, stated in the PSC's original brief, that since it is this Court that controls every plaintiff's ability to get to trial, a plaintiff who simply wants his case heard "can never get back to his home court to go before a local jury unless the transferee judge agrees. Once trial is no longer a realistic alternative, bargaining shifts in ways that inevitably favor the defense." *DeLaventura v. Columbia Acorn Trust*, 417 F.Supp. 2d 147, 155 (D. Mass. 2006).

Unable to dispute these basic realities, Cook falls back on an exercise in deflection and blame, but its arguments soon devolve into contradictions. For instance, Cook notes that transferor courts typically comply with prior rulings of the MDL court. Response at 14-15. Cook quotes *Delgado v. BSC*, 2020 WL 13356790 (M.D. Fla. Nov. 3, 2020), to the effect that "'a transferor court should rarely reverse' a ruling made by an MDL transferee judge…." and *Foster v. Ethicon, Inc.*, 2021 WL 447642 (D.S.D. Sept. 30, 2021) for its statement that "[a]llowing the parties to

3

relitigate issues already decided by [the MDL judge] would be inefficient and would undermine a main purpose of the MDL process." Yet at the same time, Cook insists that, *even as to motions "based on this Court's prior orders and rulings*," only this Court should rule on such motions. Response at 10.

There are more contradictions. A theme pervading Cook's response is that it still -- after eight and one-half years -- needs more information as to how to value cases. See, e.g., response at 17 (Cook wants to "test strategies and evidence"). Yet Cook also states that it has settled over 600 Category 7 cases. How did Cook know how to value all of them?

Cook is so inflexibly committed to delay that it even ends up attempting to advocate for plaintiffs. At footnote 12 on p. 18, defendants state the following:

> "[S]ome Category 7 Plaintiffs might well prefer to stay in the MDL for the time being, particularly those who cannot comply with CMO 30 and may not wish to have a remote court actually test the viability of their claims."

Response at 18 n. 12. This typically condescending remark in fact shows the basic, fundamental dissonance of Cook's position: Cook relentlessly denigrates the merits of plaintiff's claims. But if they're so weak, why wouldn't Cook *want* courts to test their viability? Why is Cook so afraid for any other court anywhere to "test the factual viability" of any of these claims? The truth, of course, is painfully obvious: all Cook really wants is endless delay.

The Court must keep these basic paradoxes -- Cook says it doesn't know enough about the claims after eight and one-half years, but it has settled several hundred of them; Cook says the claims are worthless but is determined to keep any other court from ever seeing them -- in mind when evaluating the stated grounds for opposing remand. Those grounds are addressed below.

# ARGUMENT

## I.  THE PANDEMIC IS IRRELEVANT

Cook first argues that the PSC has overlooked the "effects [of the COVID-19 pandemic] on this MDL." Response at 5.  There is no question that the pandemic has caused delays in federal court proceedings around the country.  But that fact does not excuse the need for a realistic assessment of the appropriateness of remand today.

Cook's citations do not paint a picture of a federal judiciary paralyzed by COVID.  Cook's exhibit A, which defendant labels the "Huang article," response at 5, is actually a "blog post" by a "product development, legal content associate" at Lex Machina, a "legal analytics" company.[1]  It is limited to the year 2020, and shows that excluding product liability suits, federal court filings were down 8% for that year.  Product liability filings were up 373%, but that large increase was due to a "large MDL case set involving ear plugs…." (blog post at 4).  At p. 5 of its response, Cook seems to acknowledge, as it must, that the recent increase in products liability filings is due almost entirely to the Florida 3M ear plug MDL.

Defendant's exhibit B is a page from a plaintiffs' firm's website.  Cook quotes the statement that "[o]pioid litigation is resuming nationwide after courts have been closed for months in response to Covid."  Needless to say, this Court never "closed in response to Covid."  Exhibit D, is a "Lexicon legal content" post about "a coming wave of litigation related to the coronavirus."  It refers to "logistical delays caused by court shutdowns and limited access under COVID-19 restrictions."

Cook repeatedly invokes "the pandemic" as if it were some black-box interval of time in which nothing happened.  But needless to say, much did happen in the period starting in March

---

[1] See www.linkedin.com/in/gloria-huang-28a45a122/, viewed on March 26, 2023.

2020. Indeed, almost all of the motion practice Cook refers to later in its response happened after March 2020. And as the Court is of course aware, the extended motion practice about choice of law in direct-filed cases, which included motions for reconsideration and counter-motions for reconsideration, and ultimately resulted in the *Looper* appeal, all occurred during the pandemic.

Moreover, "the pandemic," of course, still continues, and there is no end in sight. The Court's website continues to have a page dedicated to the measures taken in response to COVID-19, that lists among other things the several General Orders entered by the Court. The most recent of these orders was entered just two months. (General Order 2023-07). "The pandemic," in other words, is ongoing and will be with us for unknown months or years to come. How long can it be used as a reason not to remand cases?

Cook is especially disingenuous when appealing to this Court not to remand cases because that would only further aggravate [other district courts'] backlogs." Response at 6. Defendant has not made any showing that any particular home court is now backlogged, or even would have a significant number of cases coming to it. In any event, the point is that at present, in this Court, these cases are unquestionably, hopelessly backlogged -- which of course suits defendant just fine.

While the pandemic certainly showed things in the federal system for some time, whether or not it is to blame for the current state of the MDL is ultimately beside the point. The question before this Court is not whose fault it is; instead, the only question is whether common issues have sufficiently been addressed, or the interests of justice would be served by remand.

## II. PLAINTIFFS' OWN CONDUCT IS NOT RESPONSIBLE FOR THE DELAYS

Defendants undertake a long and sustained effort to blame plaintiffs for "prolonging this MDL." Plaintiffs are accused of "delay tactics" – as if it was plaintiffs who don't want to get to

trial. Response at 6-7. This argument is factually baseless, as detailed below, but more importantly, it is beside the point.

Plaintiffs are not seeking a decision from this Court as to whose fault it is that this MDL is now in its ninth year. The PSC is not interested in assigning blame. Instead, the PSC's contention simply is that this case is ready for remand, because the purposes of the MDL have been served.

We are constrained, however, to respond to defendants' unfair and erroneous picture. First, as to bellwether trials: Cook states that plaintiffs "have repeatedly thwarted the Court's bellwether plans," and have "accomplished" this in two ways. First, plaintiffs are accused of "fail[ing] to screen and dismiss time-barred cases[,]" and Cook complains that it "devoted extensive pretrial efforts in these cases only to have them end in summary judgment based on time-bars that plaintiffs' attorneys should have recognized before they even filed the cases." This is an entirely erroneous description of what happened.

For example, in the *McDermitt* case, the plaintiff lived in Ohio, but all his treatment (insertion, checkups and treatment for injury) occurred in Indiana. Mr. Goldenberg, plaintiffs' counsel, agreed to the application of Indiana law, as argued by Cook, but contended that an exception to the Indiana statute of repose applied. After the case was worked up as a bellwether, the Court rejected plaintiff's argument and dismissed the case on the basis of the statute of repose. This was a win for Cook, but it cannot remotely be characterized as an effort by plaintiffs to sabotage a bellwether exercise. Plaintiff's counsel simply made a good-faith argument about the statute of repose that ultimately did not prevail.

Second, defendant also complains that plaintiffs have allowed cases to be selected as bellwethers, "only to voluntarily dismiss their actions when pressed with the most minimal discovery." It quotes plaintiff Burrage as stating that he "anticipates that the costs of litigation

7

will exceed his anticipated recovery." Response at 7. But *Burrage* served its purpose as a bellwether completely.

Cook learned from *Burrage*. If the purpose of a bellwether is to give each side an indication of the strengths and weaknesses of cases, *Burrage* did that in spades: it showed Cook that such cases will likely not be triable as a practical matter.

*Burrage* was a win for Cook. The voluntary dismissal accomplished the same thing for Cook that a trial victory would have accomplished. *And it showed Cook that it could value such cases as no-pay cases*. In other words, *Burrage* and the other like cases served their purpose. These were not bellwethers that were "thwarted" or useless; the cases did what they were supposed to do. The same is true for the *Wilson* and *Bowen* cases cited by Cook.

Next, as to CMO 30: Cook accuses "plaintiffs generally and the PSC specifically" of doing "everything in their power to delay and obstruct the goals of that CMO." Response at 7. Here is the actual history of how CMO 30 unfolded—all of which occurred during the pandemic, thus giving the lie to Cook's argument on that score: On Nov. 9, 2021, at the monthly status conference (transcript attached as exhibit A), Cook mentioned the concept of CMO 30 for the first time. [Tr. 42-50.] Plaintiffs opposed it. [Tr. 50-52.] Cook replied [Tr. 52-55,] and the Court asked for a draft order and stated that it would "take a look at it." [Tr. 55.]. Cook tendered a proposed order the next day by e-mail only. A week later, the Court told the PSC to respond, but only by e-mail, which the PSC did on Nov. 22, 2021. On Dec. 3, 2021, Cook again e-mailed, but did not file, a reply.

On March 29, 2022, the Court entered CMO 30, notwithstanding that no motion had been filed (doc. 21704). On May 23, 2022, the PSC moved for relief from CMO 30, or in the alternative to amend the order (doc. 22064). After further briefing, the Court suspended CMO 30 on Oct. 18, 2022 (doc. 22859). The Court *agreed* with plaintiffs that Cook was attempting to use CMO 30 in

8

an impermissible manner. How can plaintiffs be blamed for resisting Cook's arguments, about CMO 30, when the Court agreed with plaintiffs?

Cook's other assertions about plaintiffs' supposed delay tactics are equally meritless. As to fraudulent concealment, the PSC simply refused to agree to dismiss cases on the pleadings that had no business being dismissed. As of the present time, the Court has not held otherwise.

Cook accuses plaintiffs of "refus[ing] to voluntarily dismiss clearly time-barred claims as contemplated by CMO 28…forcing Cook to bring and the Court to grant dozens of motions to dismiss. Plaintiffs will not respond to each example Cook puts forward here; suffice it to say that this is not an argument against remand; it is an argument *for* remand. These are simply case-specific applications of an existing order by the Court, and as such, they are precisely what home courts are *supposed* to address.

Cook ends this section of its argument with the kind of ad hominem, baseless attack that is regrettably familiar now. It states that "plaintiffs' own delays and obstruction are largely responsible for the duration of these MDL proceedings," and that "plaintiffs would rather scatter these cases to courts across the country than make progress on them in this Court." Response at 9. Again, plaintiffs are not interested in prevailing in the blame game. But we respectfully maintain that the notion of "progress" in this proceeding, for the thousands of individual claimants whose cases have no hope of ever being heard unless they are remanded, even though common issues have long since been litigated, is illusory. Cook knows this, and it is the reason defendant wants to keep these cases bottled up here forever. For Cook to accuse plaintiffs of not wishing to make progress in their cases is hypocritical in the extreme.

### III. THE PENDENCY OF CERTAIN MOTIONS IS NO BAR TO REMAND

At pp. 9-10 of its response, Cook lists a grab bag of motions it says are pending, such that remand should not occur. Defendant states that "these motions are based on this Court's prior orders and rulings, and…only this Court has the necessary background and only this Court should rule on these motions." Response at 10. But that is precisely contrary to the whole point of MDLs, of course; indeed it is contrary to what Cook itself says at p. 14: remand courts "respect and follow" MDL court rulings.

As to the specific motions Cook lists, the PSC would note simply that none of them presents a reason to deny a suggestion of remand across the board. For instance, as to those plaintiffs whose cases are affected by Cook's fraudulent concealment motion, the Court could wait to suggest remand for them until that motion is decided. The same is true for the 21 cases in which Cook says it has brought motions based on statute-of-limitations and statute-of-repose grounds. As to the cases affected by CMO 30, that order is currently stayed; in any event, the Court could also carve out, from a suggestion of remand, any category 7(e) plaintiffs whom Cook says "did not attempt to comply" with CMO 30.

Again, though, all of these motions are ones that Cook itself says are "based on this Court's prior orders and rulings." They are thus precisely the kinds of motions that home courts are supposed to address, not the MDL court. That Cook nonetheless insists that only this Court can decide them, should demonstrate that Cook will never, ever support any remand. It wants the Court to personally decide every one of the several thousand cases still pending.

### IV. THE "NO-INJURY" CASES

Cook says the Court "should also deal with the considerable body of Category 7 'no injury' cases before any remand," and cites the *Sykes* and *Parton* appeals pending in the Seventh Circuit.

10

Response at 10-11.  Defendant plans to bring additional motions after those appeals are decided. But those cases could likewise be carved out of a suggestion of remand.  More to the point, however, all home district courts are perfectly capable of reading the Seventh Circuit decisions in those appeals, and applying them properly.  The pendency of those appeals is not a reason to deny remand.

## V.  REMAND SHOULD NOT AWAIT SPECIFIC FACT DISCOVERY OR GENERAL EXPERT DISCOVERY

At p. 11-12, Cook argues that no case should be remanded until individual fact discovery has been completed.  This would, of course, mean that this MDL will go on forever.  The law is plainly to the contrary.  As one MDL court put it:

> Section 1407 consolidations take place when there are "civil actions involving one or more common questions of fact.  *The multidistrict proceeding is not the appropriate mechanism for the conduct of case specific discovery.*  By definition, that discovery is not of general interest to the parties in all of the individual cases which comprise the MDL.
>
> Adopting defendants' view of MDL proceedings would mean that discovery concerning the "one or more common issues of fact" contemplated by §1407 would not be completed, or perhaps even commenced, until the case specific discovery was finished.  This would prolong the MDL indefinitely, force the parties to await the completion of discovery that would be of no relevance to their particular cases and frustrate the possibility of settling individual cases between completion of the common discovery and completion of case specific discovery

*In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 169 F.R.D. 632, 638-39 (N.D. Ill. 1996) (emphasis added); see also, e.g., *Tennessee Med. Ass'n v. United Healthgroup Inc.*, 2014 WL 12837582,*5 (S.D. Fla. Jan. 16, 2014) ("Where, as here, 'the Court has finished its work on common issues and what remains is limited to matters unique to [the] specific cases,' remand is appropriate.") (quoting *In re Light Cig. Mktg Sales Prac. Litig.*, 832 F.Supp2d 74, 76-78 (D. Me. 2011).

11

Cook's one citation is very misleading. At p. 12, Cook cites to *In re C.R. Bard, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, 2019 WL 4458579, *6 (S. D. W. Va. Mar. 12, 2019), and parenthetically states as follows: "describing organization of MDL cases into waves for purpose of individual case discovery and expert disclosure prior to remand." First, however, this citation is not to a ruling by the court, but to a report by lawyers tasked with making attorneys' fee recommendations. More importantly, this case was a consolidation of seven different mesh MDLs, and the "waves of discovery" were for bellwether cases only. Id. at *6. There was certainly no suggestion that the MDL court was requiring individual, case-specific discovery *in all cases* before any remand could occur.

As to expert discovery, the fact that there have been no Tulip-related *Daubert* hearings is no bar to remand. The standard is not whether there may possibly be a remaining issue that could apply to more than one case. And in any event, there is no need for a Tulip bellwether trial at all.

This is confirmed by the fact that there are undoubtedly hundreds of Tulip cases among the 616 cases Category 7 Cook says it has settled. Plaintiffs have no way of knowing for sure how many such cases Cook has settled, because Cook refuses to divulge any information about settlements at all. But it stands to reason that among the 616 settled claims, there are many Tulip cases. And these are just the Category 7 cases Cook says it has settled. Presumably, there are also many Tulip cases among the other categories of cases it has settled as well. If Cook disputes this point, it should be required to divulge basic settlement data. This need not include the amount of money paid to any particular claimant, but at a minimum, it should disclose what kinds of cases it has settled and with whom.

Cook cites *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Prac. and Prods. Liab. Litig.*, 892 F.3d 624, 647-48 (4th Cir. 2018), describing its holding as "affirming MDL-wide grant of

summary judgment based on failure of plaintiffs' general experts." Plaintiffs do not dispute that this can occasionally happen in an MDL. But the issue in the *Lipitor* MDL was whether that drug could cause diabetes *at all*. Here, by contrast, Cook has never contended that its product is not capable of causing harm at all; plaintiffs assert a wide variety of different injuries, and there is no possibility of an MDL-wide ruling about causation experts as there was in *Lipitor*.

## VI. THE COURT MAY REMAND DIRECT-FILED CASES

Cook insists that the Court cannot remand direct-filed cases. It quotes the Court's statements at various hearings to the effect that there was no direct-filing order in place. But all of those statements predate the Seventh Circuit's simple, straightforward conclusion that "the court and the parties simply proceeded as if direct filing were permissible and as if a direct-filing order were on the books." *Looper v. Cook Inc.*, 20 F.4th 387, 396 (7th Cir. 2021).

Cook tries to distinguish *Looper* by arguing that "[u]nlike the choice-of-law question at issue in *Looper*, Cook" has never consented to the 'remand' to a remote district of any MDL case originally filed in this Court, and has never suggested that such a remand would be appropriate or even legal." Response at 25. Defendant lists several pleadings in which it staked out the contrary position.

But as plaintiffs pointed out previously, in several CMOs, Cook explicitly *agreed* that no plaintiffs were waiving their remand rights. Cook says it was merely agreeing that plaintiffs were not waiving an argument. Response at 27. But the CMOs to which Cook agreed -- and in which it obtained substantial benefits -- did not use the word "arguments." They said "rights." Cook agreed that *rights* were being preserved, not arguments.

13

Finally, of course, even if the Court agrees with Cook on this issue, the Court still can and should remand the cases transferred to this Court by originating transferor courts.

## VII. THE PSC HAS COMPLETE AUTHORITY TO BRING THIS MOTION

Cook's ultimate positions about remand, and about the merits of these cases, are so inherently contradictory that it is perhaps unsurprising that Cook eventually presumes to advocate for plaintiffs. As noted above, Cook questions whether some plaintiffs might simply prefer to stay hidden in the MDL, and then states that the PSC "does not mention any consultation with the actual plaintiffs whose cases they address in their motion or with those plaintiffs' attorneys' and certainly makes no representation about any consent by those plaintiffs to the requested remand." Response at 18 n. 12. Cook's keen solicitude for the interests of plaintiffs is hard to take seriously, but suffice it to say that the PSC filed this motion on Feb. 14, 2023, and all plaintiffs' attorneys, of course, were served with it via electronic service. In addition, following the status conference held on Feb. 22nd, the PSC sent an e-mail to all plaintiffs' counsel regarding the conference, and reiterating that the motion had been filed. Finally, all plaintiffs' counsel were also served with Cook's response. No plaintiff or plaintiff's counsel has expressed any objection to the filing of this motion or to the relief sought.

## CONCLUSION

Wherefore, premises considered, plaintiffs respectfully pray that this Court file a suggestion of remand for all category 7 cases with the Judicial Panel on Multidistrict Litigation.

Respectfully submitted,

/s/ Ben C. Martin
Ben C. Martin
Ben Martin Law Group
3141 Hood St., Suite 600
Dallas, TX 75219
(214) 761-6614
bmartin@bencmartin.com

Joseph N. Williams
Williams & Piatt, LLC
1101 North Delaware St.
Indianapolis, IN 46202
(317) 672-0948
Email: joe@williamspiatt.com
*Liaison Counsel to Plaintiffs Steering Committee and on Behalf of Plaintiffs Steering Committee*

Michael Heaviside
Heaviside Reed Zaic
800 Connecticut Ave.
Suite 300
Washington, DC 20006
(202) 223-1993
mheaviside@hrzlaw.com

David P. Matthews
Matthews and Associates
2509 Sackett St.
Houston, TX 77098
(713) 522-5250
dmatthews@thematthewslawfirm.com

Charles S. Siegel
Waters Kraus & Paul
3141 Hood St.
Suite 200
Dallas, TX 75219
(214) 357-6244
siegel@waterskraus.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of April 2023, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Ben C. Martin*
Ben C. Martin
