# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

This Document Relates Only to the Following Cases:

Carpenter, Jr., Thomas, 1:17-cv-01490-RLY-TAB

### DECLARATION OF LARRY POOL

I, Larry Pool, upon my oath, declare and state as follows.

1. I am currently the Director, Post Market at Cook Incorporated. Previously, I worked as a Regulatory Affairs Specialist and Manager of Regulatory Reporting at Cook. My roles have included responsibilities related to regulatory affairs and post-market surveillance of products by Cook Medical LLC and Cook Incorporated (together, "Cook"). I have been an employee of Cook since 2013.

2. I am over 21 years old, I understand the nature of an oath, and I am otherwise competent to testify to matters stated in this Declaration. All statements in this Declaration are based on my personal knowledge and understanding, based on information that I have acquired in my experience working at Cook, or based on information that I obtained through review of Cook records or conversations with other Cook personnel who have personal knowledge.

3. I reviewed a copy of Plaintiff Thomas Carpenter Jr.'s motion (marked as Document 24096), which includes information and attached documents indicating that the lot number for the Celect IVC filter at issue in his case was E3098959 and that it was shipped to Albany Medical

US.357888122.01

Center. The documents attached to the motion included a copy of a medical records containing product identification numbers. A true and accurate copy of the "peel-and-stick" sticker as located in documents filed with Plaintiff's motion that I reviewed to confirm this information is attached as **Exhibit A**. The lot sticker for Thomas Carpenter Jr.'s filter (Exhibit A) show that Mr. Carpenter's filter is a "COOK® CELECT FEMORAL VENA CAVA FILTER SET" or "IGTCFS-65-1-FEM-CELECT," a particular model of the Celect IVC filter, with "LOT NO. E3098959."

4. The Celect IVC filter, lot E3098959, placed in Mr. Carpenter was sold by Cook Medical, LLC (f/k/a Cook Medical Incorporated), on August 5, 2013 to Albany Medical Center. On August 5, 2013, an Invoice and Cook Medical Packslip were created documenting this transaction in conformity with Cook's ordinary business practice. A true and accurate reproduction of the Invoice and Cook Medical Packslip documenting the sale and shipment of Mr. Carpenter's Celect IVC Filter to Albany Medical Center are attached hereto as **Exhibit B**.

5. As is the ordinary business practice of Cook, the Invoice included "Terms and Conditions" applicable to the sale of Mr. Carpenter's Cook IVC Filter. A true and accurate copy of the Terms and Conditions in effect and provided at the time of the sale of Mr. Carpenter's Tulip IVC Filter is attached hereto as **Exhibit C.**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: June 8, 2023

_____
Larry Pool

# EXHIBIT A



Jul. 24. 2018 11:08AM No. 0189 P. 2

Patient: MAS Date of Birth: [redacted]/1991 Accession:4617270
MRN:1222855 Exam Date:8/29/2013 9:24:00

CARPENTER, THOMAS
1222855
[redacted]/1991
0217

4617271
IVC FILTER PLACEMENT
8/29/201

[redacted]

# EXHIBIT B

```
ALBANY MEDICAL CENTER                           ALBANY MEDICAL CENTER HOSPITAL
A/P MAIL CODE 2                                 43 NEW SCOTLAND AVENUE
43 NEW SCOTLAND AVE                             ALBANY, NY   12208
ALBANY, NY   12208-3478


CUSTOMER NO.   C10492



Y1206720                        NET 90 DAYS         08/05/2013              V10447585



    3             3         0  IGTCFS-65-1-FEM-CELECT                 1,250.00  BX      0.00         3750.00
                              COOK CELECT NAVALIGN FEMORAL VENA CAVA FILTER SET
                              COOK GPN#: G52914
                              Packslip# : 16654.N826.1
                              Price net of 21.60% discount

    5             5         0  JCD6.0-38-20                              5.25  EA      0.00           26.25
                              DILATOR
                              COOK GPN#: G00937  Quick Reorder#: 23275
                              Packslip# : 16654.N826.1
                              Price net of 56.20% discount

    5             5         0  JCD8.0-38-20                              5.25  EA      0.00           26.25
                              DILATOR
                              COOK GPN#: G00980  Quick Reorder#: 26112
                              Packslip# : 16654.N826.1
                              Price net of 56.20% discount

   28            28         0  GIAS-100                                 87.40  EA      0.00         2447.20
                              COPE GASTROINTESTINAL SUTURE ANCHOR SET
                              COOK GPN#: G04474  Quick Reorder#: 139406
                              Packslip# : 16654.N826.1
                              Price net of 10.80% discount

   28            28         0  DTVN-5.0-19-7.0-YUEH                     16.97  EA      0.00          475.16
                              YUEH CENTESIS DISPOSABLE CATHETER NEEDLE
                              COOK GPN#: G09489  Quick Reorder#: 228673
                              Packslip# : 16654.N826.1
                              Price net of 37.10% discount

                               Freight Charge                            0.00         0.00            0.00
```

*** Reprinted on 05/23/2023 ***

GROSS            $6,724.86
TOTAL TAX            $0.00

BUYER SHALL COMPLY WITH ALL APPLICABLE REQUIREMENTS OF LAW TO FULLY AND ACCURATELY REPORT ANY
DISCOUNT ON THE APPLICABLE COST REPORT, IF ANY, AND UPON REQUEST BY THE U.S. DEPARTMENT OF HEALTH
AND HUMAN SERVICES OR A STATE AGENCY, BUYER SHALL PROVIDE CERTAIN INFORMATION RELATING TO THE
DISCOUNT AS DESCRIBED IN 42 C.F.R. SECTION 1001.952

TOTAL FREIGHT        $0.00

PAY THIS AMOUNT   $6,724.86
                      (USD)


NET 90 DAYS


CookMDL2570_1387312

CookMDL2570_1387313

| | | | | | | | |
|---|---|---|---|---|---|---|---|

**Distribution Center: (Ship From)**
400 Daniels Way
Bloomington, IN 47404 USA

GLN# 0827002100015
**Customer Service: (Sold By)**
1025 Acuff Road
Bloomington, IN 47402 USA
GLN# 0827002100008
Telephone #(812)-339-2235

# COOK MEDICAL
## PACKSLIP

**CUSTOMER PO#**
Y1206720

**Order# 16654.N826.1**

**Ship-to:** C10492-0
ALBANY MEDICAL CENTER HOSPITAL
43 NEW SCOTLAND AVENUE
ALBANY, NY  12208 US

**Bill-to:**
ALBANY MEDICAL CENTER
A/P MAIL CODE 2
43 NEW SCOTLAND AVE
ALBANY, NY  12208-3478 US

Ship Method: STANDARD OVERNIGHT
Shipping Weight: 11.00lbs.
Number of Boxes: 1

Order Date: 08-05-2013
Ship Date: 08-05-2013

| GPN | PART# | Ordered | Unit | Lot# | Lot Qty | Ship Qty | BO |
|---|---|---|---|---|---|---|---|
| G52914 | IGTCFS-65-1-FEM-CELECT COOK CELECT NAVALIGN FEMORAL VENA CAVA FILTER SET  GTIN: 10827002529141 | 3 | BX | E3098959 | 3 | 3 | 0 |
| G00937 | JCD6.0-38-20 DILATOR  GTIN: 00827002009370 | 5 | EA | 4250444 | 5 | 5 | 0 |
| G00980 | JCD8.0-38-20 DILATOR  GTIN: 00827002009806 | 5 | EA | 4325303 | 5 | 5 | 0 |
| G04474 | GIAS-100 COPE GASTROINTESTINAL SUTURE ANCHOR SET  GTIN: 00827002044746 | 28 | EA | 4351765 4351762 | 20 8 | 28 | 0 |
| G09489 | DTVN-5.0-19-7.0-YUEH YUEH CENTESIS DISPOSABLE CATHETER NEEDLE  GTIN: 00827002094895 | 28 | EA | 4363009 | 28 | 28 | 0 |

**Tracking#** 796390832054

Page 1 of 1
CookMDL2570_1387314

# EXHIBIT C

# COOK INVOICE TERMS AND CONDITIONS

1. Intent. These Terms supplement and, to the extent that there are any inconsistent provisions between the terms and conditions of any Purchase Order ("PO"), these Terms supersede the PO. These Terms and the PO, as supplemented and superseded by these Terms, are collectively referred to as the "Agreement". Buyer and Seller acknowledge and agree that during the term of the Agreement, the terms and conditions of these Terms shall control over any inconsistent terms or conditions contained in the PO. Seller hereby gives notice of its objection to any terms or conditions in the PO which are inconsistent with these Terms. These Terms set forth the only terms and conditions under which Seller will sell products and related materials ("Products") to Buyer notwithstanding any conflicting term or condition contained in the PO, request for proposals, purchase agreements, or any other form submitted by Buyer (collectively "Order"). Buyer must notify Seller of its objections to any of the terms and conditions of these Terms within fifteen (15) days of receipt of this Addendum. If Buyer so objects, Seller acknowledgment and these Terms shall not operate as an acceptance or confirmation of such Order.

2. Inspection; Testing. Products are subject to Buyer's reasonable inspection at Buyer's destination. Buyer shall inspect Products at the time of delivery and accept or reject Products within twenty (20) days after the date of delivery. In the event the Buyer, after such inspection, rejects stock Products, Buyer shall have the right, at Seller's option, to return damaged Products for credit or replacement. Any claim(s) arising from any alleged defect in the quality or quantity of Products or any alleged shortages, or any failure in shipment or delivery are waived and released by Buyer unless notice of such claims is made in writing to Seller within twenty (20) business days from the date of delivery. All claims must set forth in detail the alleged basis for rejection. In the absence of such written notice, Buyer shall be deemed to have accepted Products and no claim for rejection shall be effective. Seller shall not accept any return of Products except in the case of a manufacturing or processing error by Seller relating thereto ("Seller Error Products") or ordering error of Buyer relating thereto ("Buyer Error Products"). Buyer Error Products are subject to a reprocessing charge of up to 20% of the original price of Products. Full credit or replacement, at the option of Seller, shall be given to Buyer for returned Seller Error Products.

3. Product Returns. Cook will accept return of any stock item within 90 days from invoice date of original order shipment. Cook will not accept return of special order items. Prior authorization for all returned items is required. To obtain Return Authorization Number, contact Cook Returned Goods department at 1-800-457-4500. A request for return of products must specify reason for return, order number, quantity, lot number and invoice number with date of invoice. All returned products must be received in their original, unopened packages, undamaged, packed appropriately for shipping and should not have been used or resterilized. Items must be in saleable condition and suitable for restocking. Returned products must be accompanied by original order invoice, packing slip or facsimile.

Returned sterile items are subject to a 20% reprocessing charge. Returned non-sterile items are subject to a 10% reprocessing charge. Full credit will be given for any item returned due to a processing error by Cook. No credit will be given for an item returned in unsuitable condition for restocking.

Packages returned to Cook should be marked with the Return Authorization Number on the outside of the package and shipped to Cook to the attention of Returned Goods.

4. Limited Warranty. Seller warrants only that, at the time of manufacture, Products (i) are manufactured in accordance with good manufacturing practices, as required by the United States Food and Drug Administration; (ii) are true to label; (iii) conform to specifications; (iv) are free from defects in materials and workmanship; and (v) are not adulterated or misbranded within the meaning of the Federal, Food, Drug and Cosmetic Act as amended. Seller warrants that it has clear title to Products and that Products shall be delivered free of liens and encumbrances. Seller does not warrant either a good effect or against any ill effect following Products' use. THE FOREGOING WARRANTIES ARE EXCLUSIVE AND IN LIEU OF AND SHALL SUPERSEDE ALL OTHER WARRANTIES OF ANY KIND, WHETHER WRITTEN, ORAL, EXPRESS, OR IMPLIED. THERE ARE NO WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR OF NONINFRINGEMENT. No representative of Seller may change any of the foregoing and Buyer accepts Products subject to all terms hereof. Seller makes no warranties that the Products are effective under all circumstances.

5. Limitation of Remedies and Damages. Buyer's sole and exclusive remedy for any claim arising by reason of or in connection with the sale, purchase, delivery or use of Products, regardless of whether such claim is based on tort law, breach of contract, breach of warranty or any other legal theory ("Claim") shall be, at Seller's option, the repair or replacement of any nonconforming Products. Buyer's exclusive remedy for any breach of the Agreement or the limited warranty set forth in Section 3 of these Terms ("Breach") is repair or replacement, at Seller's option, of any nonconforming Products. Under no circumstances shall Seller be liable for loss of use, lost profits or any other collateral, special, consequential or other damages, losses, or expenses in connection with or by reason of any Claim or Breach, whether such Claim or Breach is founded in tort or contract. The foregoing constitutes the sole and exclusive remedies of Buyer and the exclusive liability of Seller. Any lawsuit asserting any Claim or Breach by Buyer against Seller must be brought within one (1) year and one (1) day after delivery of the non-conforming Product to Buyer or such Claim or Breach shall be forever barred.

6. Insurance. Seller and Buyer shall each maintain adequate product liability, general public liability and property damage insurance against any claim or claims relating to Products that may be asserted by or on behalf of, or as a result of any claim made by or on behalf of, the ultimate user or consumer of Products. Upon reasonable request, Buyer and Seller shall each deliver to the other, an insurance certificate demonstrating the foregoing coverage, issued by an insurance company licensed to do business in the relevant state or states, and signed by an authorized agent of the insurance company.

7. Indemnification. (a) Subject to Section 4 of these Terms, Seller agrees to indemnify, defend and hold harmless Buyer from any and all liabilities, claims, lawsuits, actions, proceedings, losses, demands, damages, costs and expenses (including, without limitation, interest, penalties and reasonable attorneys' fees) and judgements (collectively "Action") arising out of bodily injury, property damage or any other damage or injury caused solely and exclusively by a breach of Seller's warranty specified herein and without fault by Buyer or any agent, employee, representative or customer of Buyer or any health care provider associated or affiliated with Buyer ("Seller Indemnification Event"). Buyer's right of indemnification in the event of a Seller Indemnification Event is subject to its compliance with the following (i) Buyer shall notify Seller in writing of said Seller Indemnification Event and send Seller a copy of all papers served promptly after receipt of notice of any Seller Indemnification Event; and (ii) Buyer shall permit Seller to retain counsel of its choosing; and (iii) Buyer shall allow Seller to retain exclusive control of such Action, and allow Seller to have full and complete authority to decide issues material to the Action, including without limitation the right to make any settlement, to determine whether to proceed to trial, and to determine whether to take an appeal after trial; and (iv) Buyer shall cooperate fully with Seller in defending such Action, including without limitation attending and giving depositions, participating in any and all trials, hearings or similar proceedings and otherwise devoting the time and attention necessary to such defense, all without cost or expense to Seller. Buyer shall make no compromise or settlement of any claim without the prior written consent of Seller.

(b) Buyer agrees to indemnify and hold harmless Seller (and any parent, subsidiary or affiliate company or corporation), their directors, officers, employees, agents and insurers from any and all Actions arising out of, or resulting from, or otherwise related to bodily injury, property damage or any other damage or injury caused in whole or in any part by (i) any fault, negligence, intentional misconduct, or malpractice of Buyer or any health care provider associated or affiliated with Buyer, including, but not limited to, the failure of Buyer or such health care provider to perform its obligations hereunder; or (ii) actions by Buyer or any health care provider associated with or affiliated with Buyer in violation of any applicable law or regulation ("Buyer Indemnification Event"). In the case of a Buyer Indemnification Event: (A) Buyer shall notify Seller in writing of said Buyer Indemnification Event and send Seller a copy of all papers served promptly after receipt of notice of any Buyer Indemnification Event; and (B) Buyer shall permit Seller to retain counsel of its choosing; and (C) Buyer shall allow Seller to retain exclusive control of such Action, and allow Seller to have full and complete authority to decide issues material to the Action, including without limitation the right to make any settlement, to determine whether to proceed to trial, and to determine whether to take an appeal after trial; and (D) Buyer shall cooperate fully with Seller in defending such Action, including without limitation attending and giving depositions, participating in any and all trials, hearings or similar proceedings and otherwise devoting the time and attention necessary to such defense, all without cost or expense to Seller. Buyer shall make no compromise or settlement of any claim without the prior written consent of Seller; and (E) Buyer shall, upon submission of invoices, reimburse or pay directly,

Seller's reasonable attorneys' fees and costs. In addition, upon notice from Seller, Buyer shall promptly pay all amounts that Seller has become legally obligated to pay by judgment, settlement or otherwise, by reason of any Buyer Indemnification Event.

8. Price. Buyer shall be responsible for all charges for taxes. Sales and use taxes, not subject to exemption, shall be stated separately in Seller's invoice. Except as specifically set forth on Seller's bid, prices are subject to change without notice and any Order calling for future delivery shall be billed according to the price in effect at the time of delivery. It is Buyer's responsibility to provide proof of tax-exempt status.

9. Payment Terms. Full payment without setoff shall be due to Seller from Buyer within thirty (30) days following delivery of Product(s) to Buyer unless otherwise agreed to in writing. Buyer shall pay to Seller interest on all amounts past due at the lesser of (i) one and one-half percent (1.50%) per month or (ii) the maximum interest rate legally permitted until payment in full has been made. Buyer shall pay Seller for all Products that are delivered as to which there is no dispute regardless of whether a dispute exists as to any other Product. In the event that Seller is required to file a lawsuit in order to collect any payment due to Seller from Buyer, Seller shall be entitled to recover, in addition to its actual damages, the costs and expenses of recovery, including reasonable attorneys' fees and expenses.

10. Shipping Terms. Except as provided below, all Products are delivered FOB: destination. Identification of the goods to the contract shall occur when the Product is placed in the hands of the carrier. Seller reserves the right to select a reasonable method of shipping, routing and carrier for all Products. For normal deliveries, the shipping company within the U.S.A. shall be Federal Express ("FEDEX"), or some reasonable alternative. So long as there is sufficient quantity of Product in inventory, Product shall be shipped using FEDEX Standard Overnight or its equivalent. Non-stock, special order items or items not in inventory will be shipped upon manufacture. Seller will pay for standard overnight shipping on orders over two hundred dollars ($200.00).

Upon special request, Seller will ship using FEDEX Priority One delivery or its equivalent if sufficient quantity of the Product is in inventory. Buyer shall be responsible for all shipping and handling fees.

Seller shall acknowledge each Order and confirm delivery dates. Seller shall not be responsible for any delays arising, directly or indirectly, from strikes, labor difficulties, riots, civil unrest, war, fire, collapse, floods, delay or defaults of common carriers, failure or curtailment of Seller's usual source of supply, governmental decrees and orders, or without limiting the foregoing, any other delay beyond Seller's control; provided, however, that Seller shall use reasonable efforts to notify Buyer of anticipated delays and to fill such orders as soon as reasonably possible. If any order for stock Products is not shipped within thirty (30) days of the date Seller received such order, or Seller notifies Buyer that any order will not be shipped within thirty (30) days from the date Seller received such order, then upon written notice to Seller prior to shipment of any delayed order, Buyer may cancel such order in whole or in part.

11. Governing Law and Venue. This Agreement and these Terms are being delivered and executed in the State of Indiana. Any action brought regarding the validity, construction, termination, or enforcement of this Agreement or these Terms shall be governed in all respects by the laws of the State of Indiana, without regard to the principles of conflicts of laws and shall in no way be subject to the United Nations Convention on Contracts for the International Sale of Goods. Venue shall be proper only in a court of competent jurisdiction located in the State of Indiana in the county of Seller's principal place of business. The parties agree that they are subject to personal jurisdiction in such court and consent to service of process issued by such court.

Company Confidential

CookMDL2570_1305422