UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

IN RE COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND       No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION        MDL No. 2570

_____

This Document Relates to the Following Cases:

Joe B. Williams, 1:22-cv-00045

_____

### ENTRY ON DEFENDANTS' MOTION FOR JUDGMENT IN PLAINTIFF'S CASE PURSUANT TO CMO-28

Pursuant to Federal Rule of Civil Procedure 12(c) and the process provided by Case Management Order #28, the Cook Defendants[1] move for judgment on the pleadings in Plaintiff's case on grounds that his product liability claims are barred by the Texas statute of repose.

**I.     Background**

Plaintiff, Joe Williams, is a resident of Texas and received a Cook Günther Tulip Filter on January 13, 2005, at Methodist Charlton Medical Center in Dallas, Texas. (Filing No. 21176-1, Short Form Compl. ¶¶ 4-6, 10-12).  Fifteen years later, on January 16, 2020, Plaintiff underwent an abdominal CT scan and, for the first time, discovered that his filter was tilted, and several struts perforated the cava walls.  (Filing No. 21176-2, Medical Record).

---

[1] The Cook Defendants are: Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe APS.

Plaintiff filed suit on January 7, 2022, in the Southern District of Indiana. His Short Form Complaint asserts claims for strict products liability, negligence, negligence per se, breach of implied warranty, breach of express warranty, and consumer fraud. (*Id.* ¶ 14).

## II.  Discussion

"Statutes of repose typically provide a definitive date beyond which an action cannot be filed."  *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 866 (Tex. 2009).  Under the Texas statute of repose, the plaintiff must commence a products liability action[2] against the manufacturer or seller of a products within 15 years from the date the defendant sold the product.  Tex. Civ. Prac. & Rem. Code Ann. § 16.012(b). Plaintiff filed suit more than 15 years from the date of sale, but argues he is entitled to two statutory exceptions to the 15-year time limit—the express warranty exception and the latent disease exception.

### A.   Express Warranty Exception

The first exception to the Texas statute of repose provides that the 15-year limitation will not apply when the "manufacturer or seller expressly warrants in writing

---

[2] A "products liability action" under Texas law is defined as:
> any action against a manufacturer or seller for recovery of damages or other relief for harm allegedly caused by a defective product, whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, or any other theory or combination of theories, and whether the relief sought is recovery of damages or any other legal or equitable relief, including a suit for: . . . personal injury . . . .

Tex. Civ. Prac. & Rem. Code Ann. § 160.012(a)(2).  Thus, all of Plaintiff's claims are subject to the Texas statute of repose.

2

that the product has a useful safe life of longer than 15 years." *Id.* § 160.012(c).  There are no Texas cases construing the express warranty exception that are directly on point.[3]  Consequently, the parties cite cases construing the future performance exception to the statute of limitations for breach of warranty claims.  *See* Tex. Bus. & Com. Code Ann. § 2.725(b) (stating the statute of limitations on a breach of warranty claim begins to run when the item at issue is delivered, unless the "warranty explicitly extends to future performance of the goods").  The Texas Supreme Court explained that "[f]or an express warranty to meet the [future performance] exception, it must make specific reference to a specific date in the future." *Safeway Stores, Inc. v. Certainteed Corp.*, 710 S.W.2d 544, 548 (Tex. 1986).  "Courts construe the exception narrowly, with the emphasis on the term 'explicitly.'"  *Id.*

Relying on the Günther Tulip Vena Cava Filter Patient Guide, Plaintiff argues Cook expressly warranted in writing that the Günther Tulip Filter has a useful life of the patient's lifetime; therefore, his product liability action is timely.  (Filing No. 21176, Pl.'s Resp. at 1 ("Defendants sold and warranted their filter as safe and effective for *permanent* placement, essentially offering a lifetime warranty.") (emphasis added)).  Plaintiff relies on *Bob Davis Paint & Drywall, Inc. v. Valspar Corp.*, in support of his argument.  452 F.

---

[3] The *Brown* case, discussed in the next section, did address the express-warranty exception under § 160.012(c), but the issues raised in *Brown* are different than those raised here.  In *Brown*, the court found the exception did not apply because plaintiff submitted the affidavit of her doctor in support of her warranty allegations, and "a doctor is not a 'manufacturer' or 'seller' within the meaning of the statute."  *Brown v. Exactech, Inc.*, 376 F. Supp. 3d 711, 816 (E.D. Tenn. 2019) (applying Texas law).  The court also found that warranties provided indirectly through doctors are not express warranties.  *Id.* ("[A]n indirect warranty is not an *express* warranty, which is what the statute requires.") (emphasis in original).

Supp. 3d 589 (S.D. Tex. 2020). There, the Southern District of Texas found plaintiff's allegation that Valspar offered him a "lifetime warranty" on its paint was sufficient to trigger the future-performance exception. *Id.* at 595-96. Cook, in turn, relies on *Belmonte v. Baxter Healthcare Corp.*, No. 05-00-01579-CV, 2002 WL 560996 (Tex. Ct. App. Apr. 16, 2002). There, the court found the manufacturer's alleged warranty that its implants "should last a lifetime" did not trigger the future-performance exception because it did not "make specific reference to a specific date in the future." *Id.* at *4. The court also observed that the alleged warranty was qualified by the word "should": "the alleged warranty was the implants 'should' last a lifetime, not a guarantee the implants would conform to a particular standard for the duration of [plaintiff's] life." *Id.*

> The language upon which Plaintiff relies is found on page 6 of the Patient Guide:
>
> The Günther Tulip™ Vena Cava Filter is often used as a permanently implanted device. Patients are able to lead a normal, active lifestyle, and rarely have complications from having the filter implanted. The Gunther Tulip™ Vena Cava Filter may also be removed if your risk of pulmonary embolism has diminished. However, there is a limited amount of time that the filter can be implanted if it is to be safely removed. Please consult with your physician to see if he or she plans to retrieve the filter or leave it in. Remember, the Gunther Tulip™ Vena Cava Filter is *safe and effective as either a permanent* or temporary device.

(Filing No. 21176-3, Patient Guide at 6) (emphasis added). The Patient Guide then lists some of the adverse events associated with filter placement, including filter migration, perforation of the vena cava, and migrating blood clots. (*Id.* at 7). Read in its proper context, the alleged warranty here, like the one in *Belmonte*, is qualified by possible adverse events; it does not "guarantee the [filter] would perform to a particular standard for the duration of [plaintiff's] life." *Belmonte*, 2002 WL 560996, at *4. The court

4

therefore finds that the Patient Guide's representation that the Tulip filter is "safe for permanent placement" does not raise a reasonable inference that Cook "expressly warrant[ed] in writing that the [Günther Tulip Filter] has a useful safe life of longer than 15 years." Tex. Civ. Prac. & Rem. Code Ann. § 16.012(c).

  **B.** **Latent Disease Exception**

  Next, Plaintiff argues he qualifies for the "latent disease" exception in § 16.012(d). This subsection provides that the statute of repose will not apply if the claimant establishes the following: "(1) the claimant was exposed to the product that is the subject of the action before the end of 15 years after the date the product was first sold; (2) the claimant's exposure to the product caused the claimant's disease that is the basis of the action; and (3) the symptoms of the claimant's disease did not, before the end of 15 years after the date of the first sale of the product by the defendant, manifest themselves to a degree and for a duration that would put a reasonable person on notice that the person suffered some injury." *Id.*

  Plaintiff asks the court to interpret the term "disease" broadly to include medical device failures. He argues his injuries (perforation of several struts) "did not manifest and were not identified until his abdominal CT scan on January 16, 2020, three days after the 15-year repose period had run." (Pl.'s Resp. at 2). As the case relied upon by Plaintiff states, "[m]edical device cases are not the prototypical latent injury situation." *Brown v. Exactech, Inc.*, 376 F. Supp. 3d 811, 817 (E.D. Tenn. 2019) (applying Texas law). Latent injury (or disease) cases typically arise in one of three situations: "occupational disease, medical malpractice, and pharmaceutical side effects." *Id.*;

5

*Albertson v. T.J. Stevenson & Co., Inc.*, 749 F.2d 223, 230 (5th Cir. 1984).

Moreover, the plain language of § 16.012(d) establishes the exception does not apply to medical device cases. The statute mentions neither medical devices nor the type of injuries that ordinarily arise from them; it addresses only *diseases* resulting from *exposure* to a product. Thus, nothing in the statute justifies extending the exception to medical device claims. *See Sorokolit v. Rhodes*, 889 S.W.2d 239, 241 (Tex. 1994) ("In applying the plain and common meaning of the language in a statute, courts may not by implication enlarge the meaning of any word in the statute beyond its ordinary meaning; such implication is inappropriate when legislative intent may be gathered from a reasonable interpretation of the statute as it is written.").

Lastly, the *Brown* court did not apply the latent-disease exception to a medical device case because it held the exception did not fit the facts of the case. 376 F. Supp. 3d at 819. The court also expressed concern that permitting the exception would swallow the rule:

> [T]o hold otherwise would create an exception that swallows the rule. This is likely not the first case where a medical device manufacturer has sold a product to a doctor who immediately uses it for a joint replacement, and the product (unfortunately) fails many years down the line. Indeed, one could assume that in most cases, there is a temporal separation between exposure to a defective medical device and its failure. If the Court were to rule that Plaintiff could claim the benefit of § 16.012(d), it would effectively create a "medical device exception"[4] for a-n otherwise strict statute of repose. There is no evidence the Texas legislature intended this outcome.

---

[4] The court declines Plaintiff's invitation to create a new exception for medical device failures that may be difficult to discover, as there is no authority under Texas law supporting that proposition.

*Id.* As Plaintiff points to no decision that adopts the latent-disease exception to medical device cases, the court rejects Plaintiff's argument and finds the latent-disease exception does not apply to his products liability action.

### III.   Conclusion

For the reasons set forth above, the court **GRANTS** the Cook Defendant's Motion for Judgment (Filing No. 21042).

**IT IS SO ORDERED** this 10th day of July 2023.

					_____
					RICHARD L. YOUNG, JUDGE
					United States District Court
					Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.