# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT



Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

July 17, 2023

To:  Roger A. G. Sharpe
     UNITED STATES DISTRICT COURT
     Southern District of Indiana
     United States Courthouse
     Indianapolis, IN 46204-0000

| No. 22-1844 | IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION<br><br>APPEAL OF: TERESA F. SYKES |
|---|---|
| No. 22-2256 | IN RE:<br>COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION<br><br>APPEAL OF: SHIRLEY A. PARTON |

**Originating Case Information:**

District Court No: 1:14-ml-02570-RLY-TAB
Southern District of Indiana, Indianapolis Division
District Judge Richard L. Young

**Originating Case Information:**

District Court No: 1:19-cv-01167-RLY-TAB
Southern District of Indiana, Indianapolis Division
District Judge Richard L. Young

**Originating Case Information:**

District Court No: 1:18-cv-03371-RLY-TAB
Southern District of Indiana, Indianapolis Division

**Originating Case Information:**

District Court No: 1:14-ml-02570-RLY-TAB
Southern District of Indiana, Indianapolis Division
Clerk/Agency Rep Roger A. G. Sharpe

District Judge Richard L. Young
Court Reporter Margaret Techert

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS:                              No record to be returned

form name: **c7_Mandate**      (form ID: **135**)

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

**FINAL JUDGMENT**

June 23, 2023

CERTIFIED COPY

A True Copy
Teste:

_Deputy Clerk_
_of the United States_
_Court of Appeals for the_
_Seventh Circuit_

Before

FRANK H. EASTERBROOK, *Circuit Judge*
AMY J. ST. EVE, *Circuit Judge*
THOMAS L. KIRSCH II, *Circuit Judge*

| | |
|---|---|
| Nos. 22-1844 & 22-2256 | TERESSA F. SYKES and SHIRLEY A. PARTON,<br>Plaintiffs-Appellants<br><br>v.<br><br>COOK INCORPORATED, COOK MEDICAL LLC, and WILLIAM COOK EUROPE APS,<br>Defendants-Appellees. |

**Originating Case Information:**

District Court No: 1:19-cv-01167-RLY-TAB
Southern District of Indiana, Indianapolis Division
District Judge Richard L. Young

**Originating Case Information:**

District Court No: 1:18-cv-03371-RLY-TAB
Southern District of Indiana, Indianapolis Division

The judgment of the District Court is VACATED and is REMANDED with instructions to dismiss these cases without prejudice for lack of subject-matter jurisdiction.

The above is in accordance with the decision of this court entered on this date. Costs shall be imposed on the plaintiffs-appellants.

*Christopher Conway*

Clerk of Court

CERTIFIED COPY   (4 of 34)

A True Copy
Teste:



Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

Nos. 22-1844 & 22-2256

TERESA F. SYKES and SHIRLEY A. PARTON,

*Plaintiffs-Appellants*,

*v.*

COOK INCORPORATED, COOK MEDICAL
LLC, and WILLIAM COOK EUROPE APS,

*Defendants-Appellees*.

———————————

Appeals from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
Nos. 19-cv-1167 & 18-cv-3371 — **Richard L. Young**, *Judge*.

———————————

ARGUED JANUARY 6, 2023 — DECIDED JUNE 23, 2023

———————————

Before EASTERBROOK, ST. EVE, and KIRSCH, *Circuit Judges*.

ST. EVE, *Circuit Judge*. These appeals are from two cases
consolidated in a multidistrict litigation ("MDL") proceeding.
MDL plaintiffs allege they have been injured by defective in-
ferior vena cava ("IVC") filters manufactured by Cook Inc.
and related entities (collectively, "Cook"). Shirley Parton and
Teresa Sykes are two such plaintiffs. About a decade ago, each
was implanted with a Cook IVC filter. Several years later, CT

scans revealed that their filters had perforated their IVC walls. They had experienced no pain or other symptoms, but because their filters had perforated their veins, they pursued product liability claims against Cook. The direct-filing procedure the district court had adopted for the MDL did not require Parton or Sykes to file a standard complaint. Instead, each filed a short-form complaint, which incorporated allegations from a master complaint that ostensibly applied to all direct-filing plaintiffs. The district court later granted Cook's motion for summary judgment. Parton and Sykes appealed, but before reaching the merits, we must answer a threshold question: Is there federal subject-matter jurisdiction?

There is not. Jurisdiction in these cases is based solely on diversity of citizenship, which requires the amount in controversy in each case to exceed $75,000. 28 U.S.C. § 1332(a). Parton and Sykes allege the proper amount in controversy, but the nature of their alleged injuries makes clear that no more than $75,000 is at stake in either case. Therefore, the district court never had jurisdiction over their cases.

## I. Background

### A. The Cook IVC Filter MDL

In 2014, the Judicial Panel on Multidistrict Litigation (the "Panel") centralized cases arising out of alleged defects in Cook's IVC filters and transferred the cases to the Southern District of Indiana pursuant to 28 U.S.C. § 1407(a). *In re Cook Med., Inc., IVC Filters Mktg., Sales Pracs. & Prods. Liab. Litig.*, 53 F. Supp. 3d 1379, 1380 (J.P.M.L. 2014) (mem.). Many plaintiffs in the MDL claim that Cook's filters cause pain and suffering, disabilities, emotional injuries, lost earnings, increased medical bills, and in some cases death. Like many MDLs based on

mass torts, the Cook MDL consisted of thousands of cases. *See*
Margaret S. Williams, *The Effect of Multidistrict Litigation on the
Federal Judiciary over the Past 50 Years*, 53 Ga. L. Rev. 1245, 1274
tbl.2A (2019). To help manage the litigation, the district court
adopted two procedures relevant to these appeals: direct fil-
ing and case categorization.

### 1. Direct Filing

A common MDL procedure is direct filing, which offers
plaintiffs a more efficient route into an MDL. *See Looper v. Cook
Inc.*, 20 F.4th 387, 390–91 (7th Cir. 2021). The MDL statute con-
templates consolidating cases "pending" in federal district
courts. § 1407(a). In addition to actions pending when the
Panel creates an MDL, the Panel transfers related "[t]ag-along
action[s]" that are later filed in or removed to federal court.
*See* J.P.M.L. R. P. 1.1(h). In those cases, plaintiffs "file … in
their home jurisdictions … and then wait for their cases to be
tagged and later transferred to the MDL." *Looper*, 20 F.4th at
390. But when an MDL uses direct filing, the defendant may
agree to waive objections based on personal jurisdiction and
venue, allowing any plaintiff to file suit in the district in which
the MDL is pending—provided, of course, that federal sub-
ject-matter jurisdiction over her case exists. *See* Andrew D.
Bradt, *The Shortest Distance: Direct Filing and Choice of Law in
Multidistrict Litigation*, 88 Notre Dame L. Rev. 759, 794 (2012).

The district court here instituted a direct-filing procedure,
pursuant to which lawyers appointed to manage the litigation
on behalf of all plaintiffs filed a master complaint "for incor-
poration and adoption by individual plaintiffs." The master
complaint set forth the factual background and causes of ac-
tion pursued by MDL plaintiffs. Paragraphs 6–28 addressed
jurisdiction and included detailed allegations about Cook's

citizenship, but just two paragraphs related to the amount in controversy. Those paragraphs read:

> 8. As a direct and proximate result of having Defend-ants' IVC Filters implanted in them, Plaintiffs named in their respective Short Form Complaints have suf-fered permanent and continuous injuries, pain and suf-fering, disability and impairment. Plaintiffs have suf-fered emotional trauma, harm and injuries that will continue into the future. Plaintiffs have lost their ability to live a normal life, and will continue to be so dimin-ished into the future. Furthermore, Plaintiffs have lost earnings and will continue to lose earnings into the fu-ture and have medical bills both past and future re-lated to care because of the IVC filters' defects.
>
> …
>
> 23. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the Plaintiff and the Defendants are citizens of different states, and the amount in con-troversy exceeds seventy-five thousand dollars ($75,000.00), excluding interest and costs and there is complete diversity of citizenship between Plaintiff and Defendant.

The master complaint was paired with a short-form com-plaint, a five-page form that incorporated the master com-plaint's allegations by reference and allowed a plaintiff to fill in individualized details. These details included personal and medical information, the plaintiff's state of residence[1] both

---

[1] It would have been better practice to ask about the plaintiff's state of citizenship or domicile. Diversity jurisdiction depends on the citizenship

when the injury occurred and when the complaint was filed, and the district in which venue would be proper if the case was not directly filed. The short-form complaint also asked the plaintiff to check boxes designating the causes of action she wished to pursue and to note the paragraphs in the master complaint that supported jurisdiction and venue. It also contained space for the plaintiff to add additional jurisdictional allegations or causes of action not stated in the master complaint.

### 2. Case Categorization

The district court also adopted a case-categorization plan "to ensure pending and future filed cases allege a cognizable injury." The plan required each plaintiff to complete a case-categorization form sorting her case into at least one of seven categories based on the type of injury alleged. Category 6 comprised asymptomatic injury cases in which "the Plaintiff alleges non-symptomatic filter movement, migration, penetration, perforation, thrombosis, occlusion or the presence of a clot in the filter that has not produced physical symptoms or complications." Category 7, symptomatic injury cases, covered plaintiffs who suffered harm from their IVC filter perforations. It listed 10 possible perforation-related injuries, including death. Plaintiffs were required to "certify the respective outcomes, complications, and injuries claimed by submitting a specific medical record [as] evidence[]." The case-categorization forms were not evidence, but the court and parties used them to screen and select cases for bellwether trials.

---

of the parties, which is not synonymous with residence. *Tylka v. Gerber Prods. Co.*, 211 F.3d 445, 447–48 (7th Cir. 2000).

## B. The Plaintiffs

### 1. Shirley Parton

Shirley Parton is a Kentucky citizen. On April 2, 2012, she was successfully implanted with an IVC filter manufactured by Cook. After nearly six years with no filter issues, Parton received a CT scan, which revealed that her filter had perforated her IVC wall by 4.2 mm. The record does not disclose why Parton underwent the scan; she experienced neither pain nor other symptoms associated with her filter before or after learning about the perforation.

Parton filed her suit directly in the Southern District of Indiana on November 1, 2018. To support jurisdiction and venue, she incorporated paragraphs 6–28 of the master complaint, and she added no additional jurisdictional allegations. Parton's initial case-categorization form placed her case in Category 6, asymptomatic injury, but on November 25, 2020, she filed a supplemental form reclassifying her case as Category 7, symptomatic injury. The injury she identified was "penetration or perforation – consisting of a filter strut or anchor extending 3 or more mm outside the wall of the IVC as demonstrated on imaging." When asked to describe her injury, Parton stated, "One of the filter's struts has perforated Plaintiff's inferior vena cava, the maximum distance perforated is 4.2 mm."

### 2. Teresa Sykes

Teresa Sykes, a Texas citizen at all times relevant to this litigation, experienced a similar sequence of events. She was successfully implanted with a Cook IVC filter on August 1, 2013. After nearly six years without issue, Sykes received a CT scan on January 24, 2019, which showed that the filter had

Nos. 22-1844 & 22-2256                                    7

perforated her IVC wall to a maximum distance of 8.01 mm.
Like Parton, the record does not disclose why Sykes received
the scan, and Sykes does not allege that she experienced any
pain or complications prior to the scan or immediately after
discovering the perforation.

Sykes directly filed her case in the Southern District of In-
diana on March 22, 2019. Like Parton, Sykes incorporated par-
agraphs 6–28 of the master complaint to support jurisdiction
and venue, and she declined to add supplemental allegations.
She initially classified her case as Category 6 (asymptomatic
injury) but in a December 1, 2020, supplemental case-catego-
rization form reclassified her case as Category 7 (symptomatic
injury) because "[f]our prongs have perforated the IVC. Max-
imum distance prongs perforated 8.01 mm."

The primary difference between Sykes's case and Parton's
is that Sykes has developed symptoms since she filed her
complaint. In a sworn declaration, Sykes stated, "Since mid-
2019, I have suffered constant, excruciating abdominal pain. I
have visited four different hospitals regarding this abdominal
pain. Each hospital performed tests that ruled out gallbladder
issues as the cause of the pain." Sykes did not, however, at-
tribute this pain to her IVC perforation in her supplemental
case-categorization form or anywhere else during discovery.

**C. Cook's Motion for Summary Judgment**

Cook moved for judgment on the pleadings in July 2020,
arguing that under the applicable state law, an asymptomatic
IVC perforation is not a legally cognizable injury, so no cause
of action had accrued to the plaintiffs. At the plaintiffs' re-
quest, the district court converted Cook's motion to a motion
for summary judgment and permitted Parton and Sykes to

offer evidence showing that Cook was not entitled to sum-
mary judgment. The district court granted Cook's motion for
summary judgment in September 2021. It found that to pro-
ceed on this kind of tort claim, Kentucky law requires a plain-
tiff to show "present physical injury," while Texas law re-
quires "actual injury." Even viewing the record in the light
most favorable to the plaintiffs, the court found that "neither
Sykes nor Parton has brought forth evidence showing that
their asymptomatic perforations have caused any present
physical impairment or detriment to their health."

This appeal followed. At oral argument, we asked whether
there was a sufficient amount in controversy in Parton's and
Sykes's cases to invoke federal subject-matter jurisdiction. We
ordered supplemental briefing on this issue, and we invited
the parties to discuss whether any jurisdictional defect could
be cured by amending the pleadings pursuant to 28 U.S.C.
§ 1653. Neither plaintiff sought to amend her jurisdictional al-
legations, and both sides argued that we have subject-matter
jurisdiction.

## II. Jurisdictional Framework

Our subject-matter jurisdiction over these appeals is based
on diversity of citizenship. The party invoking federal juris-
diction bears the burden of establishing that it exists. *Page v.
Democratic Nat'l Comm.*, 2 F.4th 630, 634 (7th Cir. 2021). Con-
gress has authorized federal jurisdiction over civil actions in
which there is complete diversity of citizenship and more
than $75,000 is in controversy. 28 U.S.C. § 1332(a). This MDL
involves individual actions, so each case must involve diverse
parties and satisfy the requisite amount in controversy. *See
Guilbeau v. Pfizer Inc.*, 880 F.3d 304, 307 n.1 (7th Cir. 2018) (not-
ing that we can adjudicate MDL cases on the merits only

Nos. 22-1844 & 22-2256                                                 9

"where federal subject matter jurisdiction is secure"); *see also In re Korean Air Lines Co.*, 642 F.3d 685, 699 (9th Cir. 2011) ("[T]he MDL transferee court is generally bound by the same substantive legal standards … as would have applied in the transferor court." (footnote omitted)). Diversity of citizenship presents no problem, but the amount-in-controversy requirement is a thornier issue. To determine whether there is more than $75,000 at stake in each plaintiff's case, we apply the "legal certainty" test articulated in *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938).

To meet the amount-in-controversy requirement, a plaintiff suing in federal court must allege in good faith that "the controversy entails a dispute over more than $75,000, exclusive of interests and costs." *Page*, 2 F.4th at 634 (citing 28 U.S.C. § 1332(a)). This requirement is not onerous. The plaintiff's allegations about the amount in controversy control unless the court concludes, "to a legal certainty," that "the face of the pleadings" demonstrates "that the plaintiff cannot recover" the jurisdictional minimum or that "the proofs" show that "the plaintiff never was entitled to recover that amount." *St. Paul Mercury*, 303 U.S. at 289. Put differently, the court has jurisdiction unless an award for the jurisdictional minimum would be legally impossible. *See Webb v. FINRA*, 889 F.3d 853, 859 & n.4 (7th Cir. 2018).

We assess the amount in controversy as of the date on which a case is filed in or removed to federal court. *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 809 (7th Cir. 2017);

*Carroll v. Stryker Corp.*, 658 F.3d 675, 680–81 (7th Cir. 2011).[2] If on the date of filing, the plaintiff could allege in good faith that over $75,000 was at stake, then the amount-in-controversy requirement is satisfied. *Parker*, 845 F.3d at 809.[3] Events occurring after the filing date are relevant only if they "clarify what the plaintiff was actually seeking when the case was [filed or] removed." *Carroll*, 658 F.3d at 680–81 (citations omitted). If the actual claim is for less than the jurisdictional minimum, then the court lacks jurisdiction. *See id.* at 681; *Huber v. Taylor*, 532 F.3d 237, 243–44 (3d Cir. 2008) ("Dismissal is warranted … only when a subsequent revelation clearly establishes that the plaintiff's claims never could have amounted to the sum necessary to support diversity jurisdiction." (citation omitted)).

Either a party or the court can trigger application of the legal certainty test. Because the party invoking federal jurisdiction bears the burden of proving jurisdiction, her opponent can hold her to that burden. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540–41 (7th Cir. 2006). If the "material factual allegations" concerning jurisdiction are contested, the proponent of federal jurisdiction must "prove those jurisdictional facts by a preponderance of the evidence." *Id.* at 543. The

---

[2] If the plaintiff voluntarily amends her complaint, we instead assess the amount in controversy as of the date of amendment. *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007).

[3] A defendant who removes a case to federal court bears the heavier "burden of establishing by a preponderance of the evidence facts that suggest the jurisdictional amount has been satisfied," after which "jurisdiction will be defeated only if it appears to a legal certainty that the stakes of the lawsuit do not exceed $75,000." *Carroll*, 658 F.3d at 680 (footnote and citations omitted).

court, not the jury, finds the jurisdictional facts, *see Ill. Ins. Guar. Fund v. Becerra*, 33 F.4th 916, 922 (7th Cir. 2022), after which the court dismisses for lack of subject-matter jurisdiction "[o]nly if it is 'legally certain' that the recovery (from plaintiff's perspective) or cost of complying with the judgment (from defendant's) will be less than the jurisdictional floor." *Meridian*, 441 F.3d at 543.

The court has an independent obligation to ensure it has jurisdiction, and it may raise an amount-in-controversy issue even if the parties do not. *Webb*, 889 F.3d at 856. But because a plaintiff need only allege in good faith a sufficient amount in controversy, the court will apply the legal certainty test on its own motion only when it has "reason to question the sufficiency" of the complaint's jurisdictional allegations. *Cf. Page*, 2 F.4th at 634 (citing *St. Paul Mercury*, 303 U.S. at 288). Further, when no party contests jurisdictional allegations, "the standard of proof [for jurisdictional facts] is irrelevant," *Meridian*, 441 F.3d at 543, and the court views the facts in the light most favorable to finding jurisdiction. *See Webb*, 889 F.3d at 859 n.4; *James Neff Kramper Fam. Farm P'ship v. IBP, Inc.*, 393 F.3d 828, 833 (8th Cir. 2005) ("The jurisdictional fact is not whether the damages *are* greater than the requisite amount, but whether a fact finder *might* legally conclude they are." (internal alteration omitted) (quoting *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002))).

When assessing the amount in controversy, the court may consider the full record, including the pleadings and any attachments, as well as evidence produced in discovery. *See St. Paul Mercury*, 303 U.S. at 289; *Meridian*, 441 F.3d at 540–41; 14AA Charles A. Wright et al., Federal Practice and Procedure § 3702.3 (4th ed. Apr. 2022 update). The purpose of examining

12                                    Nos. 22-1844 & 22-2256

the record is limited, however, to finding disputed jurisdic-
tional facts and determining whether the plaintiff could have
alleged, in good faith, that the requisite amount was in con-
troversy on the date that the suit was filed or removed. *See
Carroll*, 658 F.3d at 680–81. A plaintiff's inability to prove an
essential element of her claim does not implicate the court's
jurisdiction unless the record shows that the plaintiff did not
make her initial allegations about the amount in controversy
in good faith. *See Clark v. State Farm Mut. Auto. Ins. Co.*, 473
F.3d 708, 711–12 (7th Cir. 2007).

The court applies state law to decide whether more than
$75,000 is in controversy. *Webb*, 889 F.3d at 859. The relevant
inquiry is not whether a recovery of more than $75,000 is
likely but whether it is permissible under the applicable law.
*Meridian*, 441 F.3d at 542–43. Contractual or statutory caps on
damages, *Carroll*, 658 F.3d at 681, and statutory prohibitions
on recovering certain categories of damages, *Webb*, 889 F.3d at
859, may limit the amount in controversy, but legal certainty
does not require the existence of a precise, quantifiable limi-
tation on recovery. If the court determines that, as a matter of
state damages law, it would be impossible to recover more
than $75,000 based on the plaintiff's alleged injuries at the
time of filing or removal, then the court lacks jurisdiction. *See
Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 978–80 (7th Cir. 2000)
(holding that the court lacked jurisdiction because recovering
the jurisdictional minimum would require a punitive dam-
ages award "bordering on the farcical"); *cf. Sharp Elecs. Corp.
v. Copy Plus, Inc.*, 939 F.2d 513, 515 (7th Cir. 1991) (upholding
jurisdiction because the record did not show that a verdict for
the jurisdictional minimum would be set aside as excessive).

## III. Analysis

Applying these principles here, Parton and Sykes satisfy the amount-in-controversy requirement if, at the time of filing, each alleged in good faith that more than $75,000 was at stake in her case. *Parker*, 845 F.3d at 809. Cook has not disputed that we have jurisdiction, but we have reason to doubt the plaintiffs' jurisdictional allegations. *Cf. Page*, 2 F.4th at 634. Parton and Sykes rely on the master complaint, but their short-form complaints and case-categorization forms contradict the master complaint's jurisdictional allegations. Further, the record shows that based on the injuries Parton and Sykes could allege in good faith when they filed their complaints, it was legally impossible for either plaintiff to recover more than $75,000. We therefore lack jurisdiction. *See St. Paul Mercury*, 303 U.S. at 289 (requiring dismissal "if, from the proofs," it is legally certain "that the plaintiff was never entitled to recover" the jurisdictional minimum).

### A. The Pleadings

#### 1. The Master Complaint

Under the direct-filing procedure, Cook MDL plaintiffs can invoke federal subject-matter jurisdiction by incorporating by reference allegations in the master complaint. Parton and Sykes argue that they incorporated these allegations in good faith and that we have jurisdiction because "their assertions of physical injury, associated pain and emotional distress, and punitive damages satisfied the required amount in controversy."

The master complaint no doubt alleges injuries that place more than $75,000 in controversy, including "permanent and continuous injuries, pain and suffering, disability and

14                              Nos. 22-1844 & 22-2256

impairment," "emotional trauma … that will continue into
the future," and the loss of "the[] ability to live a normal life."
*See Rosenboro v. Kim*, 994 F.2d 13, 17–18 (D.C. Cir. 1993) ("[I]n
applying the *St. Paul Mercury* test, we have found the presence
of medical evidence showing that a plaintiff is suffering from
a continuing or permanent physical impairment to be an im-
portant indicator that a substantial unliquidated damages
award could be legally justified."). A plaintiff who had suf-
fered these types of injuries could incorporate the master
complaint's jurisdictional allegations in good faith and satisfy
the amount-in-controversy requirement absent any challenge.
*See Page*, 2 F.4th at 634 ("Given the nature of the allegations,
and the types of monetary damages implicated by the com-
plaint, we have no reason to question the sufficiency of [the
plaintiff's] pleading as to the amount in controversy." (cita-
tion omitted)).

But Parton and Sykes have not suffered the injuries alleged
in the master complaint. Neither plaintiff claims she had ex-
perienced pain or any other symptoms when she filed her
complaint, and each initially categorized her case as an
asymptomatic perforation. Parton's and Sykes's medical rec-
ords also indicate that they suffered no symptoms before fil-
ing their lawsuits. Even after they submitted supplemental
case-categorization forms describing their IVC perforations as
symptomatic, the only symptoms they identified were the
number of filter prongs that had perforated their IVCs and the
maximum perforation distance. Although "the sum claimed
by the plaintiff controls if the claim is apparently made in
good faith," *St. Paul Mercury*, 303 U.S. at 288 (footnotes omit-
ted), a plaintiff does not act in good faith when she bases ju-
risdictional allegations on injuries she has not suffered.

### 2. The Short-Form Complaints

A plaintiff may file directly into the Cook MDL even if the master complaint's allegations do not fully capture her injuries—she may add her own jurisdictional allegations in her short-form complaint showing that more than $75,000 is in controversy. Unless we have "reason to question the sufficiency" of those allegations, then the short-form complaint's allegations satisfy the amount-in-controversy requirement. *Cf. Page*, 2 F.4th at 634 (citation omitted).

Here, though, neither plaintiff included individualized allegations in her short-form complaint or sought to amend her short-form complaint after we specifically raised the possibility of such an amendment at oral argument and in our order directing the parties to file supplemental memoranda. *See* 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."). The failure to amend the short-form complaints appears to have been based on the plaintiffs' belief that they "cannot cure [a jurisdictional] deficiency by 'amending' their allegations in the" short-form complaints because "the pleadings in this action … are court-ordered forms." We agree that Parton and Sykes cannot amend the master complaint, which was filed by lawyers acting on behalf of all plaintiffs, but we do not see why they could not amend their short-form complaints. Court-ordered or not, the short-form complaints are individual filings that allege the basis of federal jurisdiction through incorporation from the master complaint, individualized allegations, or both. With the court's permission, § 1653 enables plaintiffs to amend their jurisdictional allegations. *See Grinnell Mut. Reissuance Co. v. Haight*, 697 F.3d 582, 585 (7th Cir. 2012). In any event, Parton and Sykes have not asked for leave to

16                                    Nos. 22-1844 & 22-2256

amend their short-form complaints, despite our invitation to
do so. Their pleadings' only basis for jurisdiction remains the
master complaint's allegations.

### 3. Additional Arguments

The plaintiffs' additional arguments in support of finding
that we have jurisdiction are unpersuasive. Parton and Sykes
point out that neither the district court nor any party has
questioned jurisdiction in this MDL before, but the fact that
no one previously raised a jurisdictional issue does not relieve
us of our obligation to ensure we have jurisdiction. *See Gonza-
lez v. Thaler*, 565 U.S. 134, 141 (2012) ("When a requirement
goes to subject-matter jurisdiction, courts are obligated to
consider *sua sponte* issues that the parties have disclaimed or
have not presented." (citation omitted)); *Cothron v. White Cas-
tle Sys., Inc.*, 20 F.4th 1156, 1160 (7th Cir. 2021).[4] They also con-
tend that finding an insufficient amount in controversy would
be tantamount to denying their right to a jury trial, but with-
out subject-matter jurisdiction, a federal court has no power
to adjudicate a case. *See, e.g.*, *McHugh v. IDOT*, 55 F.4th 529,
535 (7th Cir. 2022). A plaintiff cannot present her case to a jury
in a court without subject-matter jurisdiction.

For its part, Cook argues that because "it is impossible to
predict" how a jury might value Parton's and Sykes's claims,
we cannot determine to a legal certainty that they fail to meet
the requisite amount in controversy. But we do not estimate
jury awards to determine the amount in controversy; we ana-
lyze whether governing law would allow an award for the

---

[4] The plaintiffs' discussion of state court IVC perforation cases is even
less relevant because these cases are not subject to the same jurisdictional
requirements as federal cases.

Nos. 22-1844 & 22-2256                                                    17

jurisdictional minimum. *See Webb*, 889 F.3d at 859 n.4. Cook
also urges us to reach the merits and hold that the plaintiffs'
claims are not legally cognizable, which it believes would
"provide the District Court with the tool it has lacked up to
this point" to assess the amount in controversy in this MDL.
Convenience, however, does not control our jurisdictional
analysis. *Cf., e.g.*, *Wilkins v. United States*, 143 S. Ct. 870, 876
(2023) ("Limits on subject-matter jurisdiction … have a unique
potential to disrupt the orderly course of litigation.").[5]

*            *            *

Parton and Sykes have admitted they did not suffer the in-
juries alleged in the master complaint, so they cannot rely in
good faith on those allegations to satisfy the amount-in-con-
troversy requirement. Nor do their short-form complaints es-
tablish that more than $75,000 is in controversy because they
lack individualized allegations. Thus, the pleadings here do
not show that the plaintiffs have properly invoked our diver-
sity jurisdiction.

**B. The Record Evidence**

The fact that the pleadings do not establish that we have
jurisdiction does not end our analysis. Unless a party contests
our jurisdiction, we ordinarily do not look beyond the com-
plaint to assess the amount in controversy. *See, e.g.*, *Page*, 2
F.4th at 634. We must do so here, though, because the plead-
ings alone do not establish the amount in controversy. We

---

[5] Moreover, Cook gets the consequences of a decision on the merits of
these appeals backward. Because we must assess subject-matter jurisdic-
tion before the merits, *see, e.g.*, *Page v. Alliant Credit Union*, 52 F.4th 340, 345
(7th Cir. 2022), if we were to decide these appeals on the merits, we would
first have to hold that more than $75,000 is in controversy.

may look to post-filing events, including production of evidence during discovery, to the extent they "clarify what the plaintiff was actually seeking" at the beginning of the case. *Carroll*, 658 F.3d at 680–81 (citations omitted); *see also Brand Servs., L.L.C. v. Irex Corp.*, 909 F.3d 151, 155 (5th Cir. 2018) (explaining that when the complaint does not make it "facially apparent" that more than $75,000 is in controversy, the court may look to "summary judgment-type evidence" (quoting *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998))).[6] That is, we assume for purposes of the jurisdictional analysis that Parton and Sykes can prove their cases on the merits and ask whether, under the applicable state law, a jury could legally award more than $75,000 to each plaintiff based on the injuries the evidence supports. *See Webb*, 889 F.3d at 859 n.4. If not, it is legally certain that the plaintiffs have not satisfied the amount-in-controversy requirement because they were "actually seeking" less than $75,000 when they filed their lawsuits. *See Carroll*, 658 F.3d at 680–81.

Because Cook does not challenge our jurisdiction, we need not perform any jurisdictional fact-finding; instead, we view the evidence in the light most favorable to finding jurisdiction. *Meridian*, 441 F.3d at 543. Parton and Sykes present five categories of evidence—medical records, a medical expert's declaration, medical journal articles, an FDA communication, and Sykes's declaration—which we address in turn. Since in the absence of an amendment, the date of filing is the relevant date for purposes of the amount in controversy, *Parker*, 845

---

[6] The parties do not ask us to remand for further factual development, and we agree that remand is unnecessary. There is a complete summary judgment record from which to determine the amount in controversy.

Nos. 22-1844 & 22-2256                                                    19

F.3d at 809, we examine the evidence to determine what inju-
ries each plaintiff could have alleged in good faith as of the
date she sued Cook.

Not all of the evidence applies to both plaintiffs, however.
Sykes's declaration is not evidence of Parton's injuries, of
course, but neither are the journal articles. The articles de-
scribe risks of future injuries due to IVC perforation, but only
Sykes argues that she is at risk of such injuries. Neither Par-
ton's summary judgment brief nor her appellate briefs argue
that she is at risk of future injury or discuss the Kentucky law
relevant to recovering damages for such injuries.[7] Therefore,
we discuss evidence of future harm with respect to Sykes
only, not Parton.

### 1. Medical Records

Medical records show that doctors implanted Parton with
a Günther Tulip IVC filter in 2012. The procedure was success-
ful, and she did not experience any complications. Similarly,
Sykes was successfully implanted with a Cook Celect IVC fil-
ter in 2013, also with no complications. No evidence in the
record shows that either plaintiff experienced any pain or
other symptoms associated with her filter before she under-
went a CT scan that revealed the IVC perforation. For Parton,
the maximum perforation distance was 4.2 mm; for Sykes,
8.01 mm. The record is silent as to the reason the plaintiffs

---

[7] Parton's opening appellate brief asserts that "the perforation has a
current impact on [her] medical decision-making, as perforation makes
removal of the device more difficult." Even assuming this single sentence
suggests that Parton is at risk of future injury, "[t]his one sentence obser-
vation without argument [would be] undeveloped and thus waived."
*United States v. Davis*, 29 F.4th 380, 385 n.2 (7th Cir. 2022) (citation omitted).

received these scans, the scan results do not mention any pain or other complications concurrent with the discovery of the IVC perforations, and the plaintiffs have not alleged any pain or symptoms prior to filing their cases. Thus, these medical records show that IVC perforations occurred and support whatever damages a jury could award a plaintiff who suffered an asymptomatic perforation, a question we discuss below. But the plaintiffs do not argue that the medical records themselves are evidence of pain, other symptoms, or risk of future injury, and we conclude the records alone do not enable a jury to award any damages beyond those suffered from the asymptomatic perforation itself.

### 2. Dr. Muehrcke's Declaration

Dr. Derek Muehrcke, a cardiothoracic surgeon and expert witness for the plaintiffs, completed a declaration providing "a medical explanation of what happens when an IVC filter punctures or perforates through the IVC, including the body's response to such puncture or perforation." His declaration discusses both the body's immediate response to and the potential future consequences of an IVC perforation.

Dr. Muehrcke states that "[p]uncture of the IVC wall by an IVC filter leads to bleeding, activation of the clotting cascade, fibroblast activation, and scar formation." When an IVC filter perforates the vein, "[t]he body's response to the bleeding is to initiate the clotting cascade to prevent the patient from bleeding to death." Unless a patient's blood is anticoagulated,[8] "platelet plugging [will] occur," and "fibroblast[] reinforcement of the plug will strengthen" it. "This damage and

---

[8] No evidence suggests that either plaintiff's blood is anticoagulated.

Nos. 22-1844 & 22-2256                                                            21

response impair the ability of the IVC to function as in-
tended."

   In addition to the immediate effects of an IVC perforation
on the body, Dr. Muehrcke states that "the fibroblast response
leads to scarring over time to heal the acute injury to the IVC
wall," which "can make subsequent removal of the IVC filter
more difficult" and "increases the likelihood that a removing
physician would need to employ advanced removal tech-
niques." These removal techniques "have higher complica-
tion rates and subject the patient to increased time under an-
esthesia." "Perforation can also progress to interact with sur-
rounding [organs]"; the filter can tilt, "compromising [its] clot
catching ability"; and "[a]bnormal stresses" on the filter "can
lead to fracture."

   Missing from Dr. Muehrcke's declaration is any mention
of the impacts of the plaintiffs' IVC perforations on their
health, aside from his assertion—without explanation or cita-
tion to supporting data or analysis—that perforation impairs
the function of the IVC. He does not opine that Parton or
Sykes must have experienced pain from their perforations or
that they necessarily suffer from some specific impairment.
Nor does Dr. Muehrcke discuss the likelihood or severity of
the future injuries he mentions. He does not, for example,
opine about the extent of Sykes's IVC scarring, whether Sykes
needs her filter removed at this time, or how likely she is to
require removal in the future. Dr. Muehrcke also fails to opine
about the likelihood that advanced removal techniques will
be required, that complications will arise during removal, that
Sykes will spend additional time under anesthesia, or that
Sykes will suffer injury from any of these occurrences.

We find, viewing Dr. Muehrcke's declaration in the light most favorable to the plaintiffs, that the declaration establishes that Parton's and Sykes's blood clotted in response to their perforations, that scar tissue formed at the sites of the perforations, and that Sykes is at elevated risk of certain complications if she undergoes removal surgery in the future. The declaration does not, however, allow either plaintiff to allege damages based on any particular impairment due to her IVC perforation, or allow Sykes to recover damages based on the possibility of needing her filter to be removed in the future.

### 3. Medical Journal Articles

Sykes cites three medical journal articles that she argues demonstrate the future risks associated with IVC perforation. For the reasons explained below, these articles at best constitute weak evidence of the risk of future harms.

First, Sykes cites a retrospective analysis of patients implanted with the Günther Tulip filter showing that a perforation of 1 cm beyond the lumen[9] was a predictor of failed filter retrieval. Ulku Cenk Turba et al., *Günther Tulip Filter Retrieval Experience: Predictors of Successful Retrieval*, 33 CardioVascular & Interventional Radiology 732 (2009). Sykes, however, was implanted with a different model of filter, a Cook Celect filter, not a Günther Tulip. Furthermore, her perforation was measured as 8.01 mm beyond the IVC wall, not 1 cm beyond the lumen, and she has failed to present any evidence that she needs her filter to be retrieved. For this article to constitute evidence of a potential injury to Sykes, we would have to

---

[9] The lumen is the open space inside the IVC, "the cavity of a tubular organ or part." *Lumen*, Merriam-Webster, https://www.merriam-webster.com/dictionary/lumen.

Nos. 22-1844 & 22-2256                                      23

make three assumptions: the Günther Tulip and the Cook Celect filters are interchangeable with respect to the risk of failed retrieval; a perforation of 1 cm beyond the lumen is equivalent to a perforation of 8.01 mm beyond the IVC wall; and the risk of complications during filter removal is relevant to Sykes. Sykes points to no evidence in the record supporting these assumptions, and we see none. Even if we made these assumptions, all the article would show is that Sykes faces a 10% risk of a retrieval procedure failing. The article found that removal of nonperforated IVC filters had a 100% success rate, while removal of perforated IVC filters had a 90% success rate.

The second article Sykes cites finds that to minimize the risk of complications such as IVC perforation, the ideal time to remove a retrievable IVC filter is approximately one to two months after implantation, provided that the transient risk for pulmonary embolism has passed. Jose Pablo Morales et al., *Decision Analysis of Retrievable Inferior Vena Cava Filters in Patients Without Pulmonary Embolism*, 1 J. Vascular Surgery: Venous & Lymphatic Disorders 376 (2013). But Sykes was implanted with her filter a decade ago, and she has already experienced IVC perforation, which is the adverse outcome the article associates with not retrieving a filter promptly. If an unwarranted delay in removing Sykes's filter caused her IVC perforation, then that is a present injury Sykes has already suffered, not a risk of future injury, and nothing in this article helps Sykes prove damages from an IVC perforation that she has already suffered.

Finally, Sykes discusses a study of the progressive perforation of Cook Celect filters. The study found that once one prong of a filter perforates the IVC, it increases the likelihood

24                                    Nos. 22-1844 & 22-2256

that other prongs will perforate the IVC, which the study hy-
pothesized was a result of a decrease in the IVC diameter
caused by the initial perforation. Joshua D. Dowell et al.,
*Celect Inferior Vena Cava Wall Strut Perforation Begets Additional
Strut Perforation*, 26 J. Vascular & Interventional Radiology
1510 (2015). Here, too, there is a poor fit between the article's
findings and Sykes's condition. All four prongs of her filter
have already perforated her IVC, so she is no longer at risk of
additional prongs perforating her IVC, and the article does
not describe any risks of further injury resulting from a fully
perforated IVC filter. Nor does Sykes produce evidence that
her IVC diameter has decreased in size or that any decrease
has impaired her IVC function or otherwise harmed her.
Thus, this study does not show that Sykes is at risk of future
injury. As with the 2013 article, this article does not support
additional damages beyond those recoverable for an IVC per-
foration that has already occurred.

### 4. The FDA Communication

Sykes also cites a 2014 FDA safety communication recom-
mending that doctors treating "patients with retrievable IVC
filters consider removing the filter as soon as protection from
pulmonary embolism is no longer needed." *Removing Retriev-
able Inferior Vena Cava Filters: FDA Safety Communication*, U.S.
DHHS (2014).[10] The communication discusses the possibility
that leaving a filter inside a patient's body longer than neces-
sary may be associated with adverse events, such as perfora-
tion. The communication does not, however, quantify the
risks of these adverse events or find that failing to remove

---

[10] The communication is archived at https://www.fda.gov/medical-
devices/medical-device-safety/safety-communications.

Nos. 22-1844 & 22-2256                                              25

filters causes adverse events. Further, Sykes offers no proof that her filter should have been removed earlier but was not, and because she has already had a perforation, this communication does not establish that Sykes is at risk of additional injury in the future. Thus, we find that this communication does not constitute evidence that Sykes is at risk of future injury.

### 5. Sykes's Declaration

Sykes states that in mid-2019 she began "suffer[ing] constant, excruciating abdominal pain." She "visited four different hospitals regarding this abdominal pain. Each hospital performed tests that ruled out gallbladder issues as the cause of the pain." If her pain had begun before Sykes filed her complaint, she may have been able to rely on it to satisfy the amount-in-controversy requirement, but jurisdiction must exist on the date of filing, *Parker*, 845 F.3d at 809, or the date of a voluntary amendment. *Rockwell*, 549 U.S. at 473–74. Sykes filed her complaint in March 2019 and—despite our express invitation—never amended her complaint. Because her abdominal pain began in mid-2019, after she filed her complaint, Sykes's pain is irrelevant to the amount-in-controversy analysis.

*        *        *

Viewed in the light most favorable to finding jurisdiction, the record contains evidence showing that both plaintiffs' IVC perforations triggered bleeding, clotting, and scarring, but the record lacks evidence that Parton or Sykes experienced pain or other symptoms at times relevant to our assessment of the amount in controversy. As to Sykes's risk of future injury, the evidence is thin. At best, the 2009 article supports finding that

there is a 10% chance that if Sykes undergoes a filter retrieval procedure, it will fail. The other evidence—Dr. Muehrcke's testimony and the journal articles—arguably establishes that Sykes is at some risk of future injury or complications, but the record does not show what those risks are, how likely they are to occur, or what harm Sykes may suffer if they occur.

## C. The Amount in Controversy

Finally, for each plaintiff, we apply the relevant state law to the evidence to determine whether a recovery of more than $75,000 would be legally impossible. *See Webb*, 889 F.3d at 859 & n.4. For purposes of assessing subject-matter jurisdiction, we assume without deciding that the plaintiffs' claims are legally cognizable.[11] Then we ask: If a jury awarded more than $75,000 in damages for the injuries the evidence supports, would a reviewing court uphold the award or set it aside as excessive? *See Sharp Elecs.*, 939 F.2d at 515.

In essence, the evidence shows that at the time Parton and Sykes filed their complaints, each could allege in good faith that she suffered an asymptomatic IVC perforation: her filter perforated her IVC by several millimeters, her blood clotted, and she developed scar tissue. Parton and Sykes could not, however, allege in good faith that they had experienced pain or other symptoms, and Sykes could not allege she was at risk

---

[11] Whether the claims are legally cognizable under state law goes to the merits, not jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89–90 (1998); *see also Thornton v. M7 Aerospace LP*, 796 F.3d 757, 765 (7th Cir. 2015). Thus, we cannot decide whether these claims are cognizable before resolving the jurisdictional issue, but like the district court, we have doubts that Kentucky or Texas would recognize a cause of action for an asymptomatic IVC perforation.

of future injury. Based on these injuries, we conclude that a verdict of over $75,000 for either plaintiff would be excessive. Thus, neither plaintiff has satisfied the amount-in-controversy requirement.

### 1. Parton

Kentucky law, which applies to Parton, uses the "first blush" rule to determine whether a damages award is excessive. An award is excessive if "the judicial mind immediately is shocked and surprised at the great disproportion of the size of the verdict to that which evidence in the case would authorize." *Wilson v. Redken Lab'ys, Inc.*, 562 S.W.2d 633, 636 (Ky. 1978).[12] Excessiveness depends primarily on the facts of a particular case. *Duo-Therm Div., Motor Wheel Corp. v. Sheergrain, Inc.*, 504 S.W.2d 689, 693 (Ky. 1973) ("The 'first blush' rule can be invoked only when an award is so great that its excessiveness is obvious without looking beyond the essential facts and circumstances of the case." (citation omitted)).

Our review of Kentucky caselaw indicates that whether an injury is permanent is an important factor in determining whether a large compensatory damages award will be upheld. *See, e.g., CSX Transp., Inc. v. Moody*, 313 S.W.3d 72, 85 (Ky. 2010); *Morrow v. Stivers*, 836 S.W.2d 424, 430–31 (Ky. Ct. App. 1992); *Boucher v. Paul*, 2020 WL 1074672, at *10 (Ky. Ct. App. Mar. 6, 2020). Comparing appeals of verdicts in car-crash cases is instructive. *Pagliro v. Cleveland* found a $5,387.46

---

[12] The first blush rule is sometimes framed as being based on "passion or prejudice," rather than shock and surprise, *see Wilson*, 562 S.W.2d at 636; *Trilogy Healthcare of Fayette I, LLC v. Techau*, 605 S.W.3d 60, 72 (Ky. App. 2019), but both articulations of the rule "seek the same result." Ronald W. Eades, Kentucky Law of Damages § 6:5 (Feb. 2023 update).

28                              Nos. 22-1844 & 22-2256

verdict (over $88,000 in today's dollars[13]) excessive where the
plaintiff "no doubt … suffer[ed] pain and mental anguish,"
but "there was no proof of probative value of permanency of
injury or loss of time, or power to earn." 194 S.W.2d 647, 650–
51 (Ky. Ct. App. 1946). By contrast, *Oppenheimer v. Smith* up-
held a $75,000 verdict (about $465,000 today) where the evi-
dence showed that the plaintiff's pain could continue for an
extended period of time and her injuries were associated with
degenerative conditions. 512 S.W.2d 510, 513 (Ky. Ct. App.
1974).

We conclude that a Kentucky court reviewing a verdict of
more than $75,000 for Parton would consider it "great[ly] dis-
proportion[ate]" to what the evidence could authorize. *Wil-
son*, 562 S.W.2d at 636. In *Pagliro*, an appellate court set aside
a verdict equivalent to more than $88,000 in today's dollars
where the plaintiff had suffered physical injury but had estab-
lished no risk of permanent injury. 194 S.W.2d at 650–51. Par-
ton, by contrast, has produced no evidence that she experi-
enced pain or complications related to her IVC perforation,
and she does not seek to recover for future injuries. Given Par-
ton's asymptomatic IVC perforation and her failure to seek
damages based on a risk of future injury, we conclude that a
Kentucky court would reverse any verdict for over $75,000.

Because a verdict for the jurisdictional minimum would be
set aside as excessive, it is legally certain that when Parton
filed her complaint, the amount in controversy was no more

---

[13] Our estimated adjustments for inflation come from the U.S. Bureau
of Labor Statistics Consumer Price Index inflation calculator, available at
https://www.bls.gov/data/inflation_calculator.htm.

Nos. 22-1844 & 22-2256                                    29

than $75,000. *Cf. Sharp Elecs.*, 939 F.2d at 515. Therefore, the district court never had subject-matter jurisdiction.

### 2. Sykes

Under Texas law, which governs Sykes's case, a court must uphold a jury award unless it is legally insufficient. *Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014). Legal insufficiency occurs when "the evidence demonstrates a complete absence of a vital fact, or if the evidence offered is no more than a scintilla." *Id.* (citation omitted). A court "view[s] the evidence in the light most favorable to the verdict," and "must uphold the jury verdict if any reasonable version of the evidence supports it." *Anderson v. Durant*, 550 S.W.3d 605, 616 (Tex. 2018) (footnote omitted). Sykes alleges that her IVC perforation has injured her and that she is at risk of future injury.

We begin with future injury. To recover damages based on future injury, a plaintiff must prove that it is "likely or reasonably probable" to occur. Francis C. Amendola et al., Texas Jurisprudence 3d: Damages § 12 (Jan. 2023 update); *see, e.g.*, *Primoris Energy Servs. Corp. v. Myers*, 569 S.W.3d 745, 760–61 (Tex. App. 2018) (reviewing an award for future pain). Texas law defines reasonable probability in this context as "more likely than not." *Parker v. Employers Mut. Liab. Ins. Co. of Wis.*, 440 S.W.2d 43, 46–47 (Tex. 1969); *see also Mobil Oil Corp. v. Bailey*, 187 S.W.3d 265, 268–69 (Tex. App. 2006). Sykes falls short of this standard. The only evidence that quantifies a risk of future injury, the 2009 journal article, at best supports a 10% chance that an IVC filter retrieval surgery would be unsuccessful. *See* Turba et al., *supra.* And Sykes's other evidence—Dr. Muehrcke's declaration, the other journal articles, and the FDA communication—would not permit a reasonable jury to find that she is more likely than not to suffer future injury.

Therefore, Sykes cannot recover damages for future injury under Texas law.

Turning to present injury, we find that no reasonable version of the evidence could support a jury verdict in excess of $75,000. *See Anderson*, 550 S.W.3d at 616. A jury could not award damages for pain because "[i]n Texas, only pain consciously suffered and experienced is compensable," *United Rentals N. Am., Inc. v. Evans*, 608 S.W.3d 449, 465 (Tex. App. 2020) (citation omitted), and Sykes has produced no evidence that she had suffered pain at the time she filed her complaint. Nor could a jury award damages based on physical impairment. The record contains no evidence that Sykes's IVC perforation affected her life or any physical function when she filed, and Dr. Muehrcke's unsupported statement that the damage and healing process caused by an IVC perforation "impair the ability of the IVC to function as intended" constitutes at most a scintilla of evidence. *See Burbage*, 447 S.W.3d at 259. We therefore conclude that a Texas court would set aside any verdict of over $75,000 as excessive.

It is legally certain that Sykes could not have recovered the jurisdictional minimum when she filed her complaint because a verdict for that amount would be set aside as excessive. *Cf. Sharp Elecs.*, 939 F.2d at 515. Thus, the amount in controversy is not more than $75,000, and the district court lacked subject-matter jurisdiction.

### IV. Conclusion

Parton and Sykes did not properly invoke federal diversity jurisdiction when they sued Cook because neither plaintiff could allege injuries in good faith that satisfied 28 U.S.C. § 1332(a)'s amount-in-controversy requirement. We therefore

Nos. 22-1844 & 22-2256                                          31

vacate the district court's judgment and remand with instruc-
tions to dismiss these cases without prejudice for lack of sub-
ject-matter jurisdiction.