UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION <br> _____ <br> This Document Relates to: <br> Sonya Frazier, 1:18-cv-02581 <br> _____ | 1:14-ml-02570-RLY-TAB <br> MDL No. 2570 |

**ENTRY ON THE COOK DEFENDANTS' MOTION FOR JUDGMENT IN PLAINTIFF'S CASE PURSUANT TO CMO-28**

Pursuant to Federal Rule of Civil Procedure 12(c) and the process provided by Case Management Order #28, the Cook Defendants[1] move for judgment on the pleadings in Plaintiff Sonya Frazier's case on grounds her claims are barred by North Carolina's statute of repose. The court, having read and reviewed the parties' submissions and the applicable law, finds the Cook Defendants' motion should be **GRANTED**.

**I.     Background**

Plaintiff is a North Carolina resident who was implanted with a Cook Günther Tulip Vena Cava Filter on April 2, 2009, at Carolinas Medical Center in Charlotte, North Carolina. (Cause No. 1:18-cv-02581, Filing No. 17, Am. Short Form Compl. ¶¶ 4-6, 10-12). On June 15, 2017, Plaintiff learned from her physician that her filter was embedded,

---

[1] The Cook Defendants are: Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe APS.

and that due this this circumstance, the risk of damaging her vena cava from a percutaneous removal was high. (Filing No. 21650, Categorization Medical Record at 6). A December 2019 CT scan showed that her filter had perforated her vena cava with a strut situated near her abdominal aorta. (Filing No. 21335, Pl.'s Supp. Allegations ¶ 21).

Plaintiff filed the present action against Cook on August 21, 2018. (*See* Filing No. 1, Short Form Compl.). Plaintiff's Amended Short Form Complaint alleges claims for strict products liability, negligence, negligence per se, breach of express warranty, breach of implied warranty, and consumer fraud. (*Id.* ¶ 14).

## II. Discussion

"All products liability claims,[2] regardless of their nature, are subject to a statute of repose." *Lackey v. DePuy Orthopedics*, Case No. 5:10-cv-00030-RLV-DSC, 2011 WL 2791264, at *2 (W.D.N.C. July 14, 2011) (citing *Nat'l Prop. Investors, VIII v. Shell Oil Co.*, 950 F. Supp. 710, 713 (E.D.N.C. 1996)). "A statute of repose is a substantive limitation, and is a condition precedent to a party's right to maintain a lawsuit." *Robinson v. Bridgestone/Firestone N. Am. Tire, LLC*, 703 S.E.2d 883, 886 (N.C. Ct. App. 2011). "If the action is not brought within the specified period, the plaintiff literally has no cause of action. The harm that has been done is *damnum absque injuria*—a wrong for which the law affords no redress." *KB Aircraft Acquisition, LLC v. Berry*, 790 S.E.2d 559, 567

---

[2] The parties appear to agree that Plaintiff's claims fall within North Carolina's definition of a product liability action. *See* N.C. Gen. Stat. § 99B-1(3) (defining a "product liability action" as "any action brought for or on account of personal injury . . . caused by or resulting from the manufacture, . . . design, . . . warning, . . . marketing, selling, [or] advertising . . . of any product.").

(N.C. Ct. App. 2016) (cleaned up); *see also Lackey*, 2011 WL 2791264, at *2 ("A statute of repose bars a right of action even before injury has occurred, in instances when the injury occurs outside of the prescribed time period.") (citing *Bollick v. Am. Barmag Corp.*, 293 S.E.2d 415, 418 (N.C. 1982)).

Cook argues Plaintiff's claims are barred by North Carolina's six-year statute of repose for product liability actions. N.C. Gen. Stat. § 1-50(a)(6). Plaintiff raises four arguments in response to Cook's motion. First, Plaintiff argues the 12-year statute of repose applies to her claims because her filter was implanted before October 1, 2009, and her claimed injury—filter embedment and subsequent perforation—occurred after October 1, 2009. Second, Plaintiff argues Cook waived the statute of repose by expressly warrantying the Tulip filter is safe and effective as a permanent filter. Third, Plaintiff argues the doctrine of equitable estoppel based on fraudulent concealment precludes application of the statute of repose to her claims. Lastly, Plaintiff argues her claims fall under a latent-disease exception to the statute of repose.

### A. Plaintiff's Claims are Governed by North Carolina's Six-Year Statute of Repose

Prior to 2009, North Carolina's statute of repose provided that no personal injury claims "based upon or arising out of any alleged defect or any failure in relation to a product shall be brought more than six years after the date of initial purchase for use or consumption." N.C. Gen. Stat. § 1-50(a)(6). On October 1, 2009, the North Carolina legislature repealed § 1-50(a)(6) and enacted a new, 12-year statute of repose. N.C. Gen. Stat. § 1-46.1(1) (identical statutory text with repose period extended to 12 years). The

3

new repose period applies only to "causes of action that accrue on or after" October 1, 2009. *Robinson*, 703 S.E.2d at 886. The revised statute does not have retroactive effect. *Id*. at 887.

Plaintiff contends the North Carolina legislature extended the repose period for those product liability claims that were not "extinguished" by the six-year statute of repose when it was extended to 12 years on October 1, 2009. Because her product liability claims were not barred by the six-year statute of repose as of October 1, 2009, she contends this action falls under the twelve-year statute of repose and is therefore timely.

The plain language of North Carolina's statute of repose provides that the repose period begins to run on "the date of initial purchase for use or consumption." N.C. Gen. Stat. § 1-46.1(1); *see also* N.C. Gen. Stat. § 1-50(a)(6) (repealed 2009). As observed by a North Carolina federal district court, "courts applying North Carolina law have consistently applied [the] six-year statute of repose in cases where the product in question was first purchased or delivered, as here, before October 1, 2009." *Cramer v. Ethicon, Inc.*, Case No. 1:20-cv-95-MOC-WCM, 2021 WL 243872, at *4 (W.D.N.C. Jan. 25, 2021); *see also Bond v. Johnson & Johnson*, No. 21-05327 (FLW) & No. 21-05333 (FLW), 2021 WL 6050178, at *13 (D.N.J. Dec. 21, 2021) (applying North Carolina's six-year statute of repose in hernia mesh case because it was in effect at the time of the implantation surgery); *Lackey*, 2011 WL 2791264, at *2 (applying six-year statute of repose in hip prosthetic case because it "was in effect at the time Plaintiff purchased the

4

allegedly defective product").  As Plaintiff received her Tulip filter before October 1, 2009, the operative statutory period of repose is six years.

### B. Cook Did Not Waive the Statute of Repose

Plaintiff's waiver argument is premised on *Christie v. Hartley Construction, Inc.*, where the North Carolina Supreme Court held that a seller may bargain away the protection of the statute of repose by extending an express warranty to the buyer that exceeds the repose period.  766 S.E.2d 283, 288 (N.C. 2014).  Under North Carolina law, an express warranty is created when a seller makes "[a]ny affirmation of fact or promise . . . which relates to the goods and becomes a basis of the bargain." N.C. Gen. Stat. § 25-2-313(1)(a).

In *Christie*, the plaintiffs purchased an exterior cladding system manufactured by GrailCoat to cover the exterior of their new home.  766 S.E.2d at 284.  GrailCoat's warranty promised that "[p]roperly installed . . . , [SuperFlex] is fully warranted for twenty years not to crack, craze, fatigue or delaminate from the substrate." *Id.* at 285. When the product began to crack and blister, GrailCoat claimed North Carolina's six-year statute of repose for improvements to property, N.C. Gen. Stat. § 1-50(a)(5), barred plaintiffs' attempt to enforce the 20-year warranty.  *Id.*  The North Carolina Supreme Court reversed summary judgment for GrailCoat, reasoning:

> GrailCoat advertised its product to plaintiffs as being "fully warranted" for twenty years . . . . Plaintiffs' evidence indicated that they carefully researched SuperFlex and other possible exterior cladding systems for their home and were influenced by GrailCoat's twenty-year warranty when making their final decision.  As a result, we conclude that GrailCoat knowingly and freely entered into a contract of sale with plaintiffs in which GrailCoat bargained away the protections of the statute of repose.  The contract at issue provided

5

for a warranty of twenty years.  The warranty stands in its entirety.
*Id.* at 288.

Thus, in *Christie*, GrailCoat "fully warranted" that its product would be free from certain defects for a specific number of years.  The *Christie* plaintiffs relied on the warranty in making their decision to buy GrailCoat's product, and it became part of the basis of the bargain between the parties.  *Id.* at 288.  Consequently, when the covered product defects arose within the 20-year warranty period, the court held GrailCoat was bound by the warranty.  *Id.*

Here, Plaintiff alleges Cook expressly warranted that the "filter can safely remain in the patient permanently making removal unnecessary, thus providing Plaintiff with a lifetime warranty of safe and effective use." (Filing No. 21342, Pl.'s Resp. at 1; *see also* Pl.'s Supp. Allegations & Filing No. 21335-1, Cook Celect and Günther Tulip Vena Cava Patient Guide & Tulip product brochures).  As the court understands Plaintiff's argument, Cook warranted that if the filter was left in her body as a permanent filter, no adverse events would occur for a lifetime or, at the very least, for a period that exceeded the six-year repose period.  (Pl.'s Resp. at 2 ("Cook violated these warranties because the filter is defective and not 'safe and effective as a permanent filter' and caused injuries to Plaintiff by perforating her IVC and lodging near her aortic wall causing pain.  Cook warranted its product for a period exceeding the SOR period . . . .")).  No fair reading of the documents Plaintiff submitted could create a reasonable inference that Cook "fully warranted" that the filter would last for a lifetime (or beyond six years) or that complications such as embedment and perforation would not occur.  On the contrary, the documents Plaintiff

6

attached expressly warned that retrieval may not always be successful and noted that adverse events were possible:

- Cook Celect and Tulip Patient Guide:[3] The Patient Guide has a section titled "Some risks of filter implantation" that explains, "like any medical procedure, vena cava filter placement does pose some risk" and lists possible adverse events, including "[d]amage to the vena cava." (Filing No. 21335-1 at 11). The section concludes by explaining: "And sometimes, retrievable filters just can't be removed. Every patient is different. That's why you and your doctor should weigh the risks and benefits of vena cava filter placement and retrieval." (*Id.*; *see also id.* at 9 ("It is possible that your filter may be in you for a long period of time. In this case, the filter may not be retrieved.")).

- Tulip Product Brochures:  The remaining documents appear to be Tulip product brochures. The first states that the "Tulip functions well as both a permanent vena cava filter or as a retrievable device" and that the "Tulip Retrievability Registry showed a 94% retrieval access rate through 12 weeks." (*Id.* at 28).

As shown above, these documents discuss filter retrieval as a possible option; they do not "fully warrant" that retrieval would be possible in every instance, and they note that chances of successful retrieval decrease over time. (*Id.* at 10, 28 & 29 n.2 (table)). Moreover, the Patient Guide expressly states that "like any medical procedure, vena cava filter placement does pose some risk." (*Id.* at 11). In particular, the list of adverse events includes "[d]amage to the vena cava," which would include perforation.

In sum, the documents on which Plaintiff rests her warranty claim not only do not warrant that the filter can safely be retrieved at any point during her lifetime, but also make clear that retrieval attempts sometimes fail and that adverse events, such as damage to the vena cava, can occur. Consequently, the court finds Cook did not "bargain away"

---

[3] As Cook observes, Plaintiff received her filter on April 2, 2009, but the Patient Guide she relies upon was not published until 2013. (*See* Patient Guide at 25).

7

the protection of the statute of repose by extending an express warranty to Plaintiff that exceeds the repose period.

### C. Equitable Estoppel Based on Fraudulent Concealment Does Not Bar Application of the North Carolina Statute of Repose

Next, Plaintiff argues Cook may be equitably estopped from relying on North Carolina's statute of repose because Cook fraudulently concealed material information from Plaintiff and her physicians regarding the Tulip filter's safety and effectiveness. Plaintiff is mistaken. Under North Carolina law, equitable estoppel may not defeat a defense based upon the products liability statute of repose. *Fulmore v. Johnson & Johnson*, 581 F. Supp. 3d 752, 757 (E.D.N.C. 2022) (rejecting plaintiff's equitable estoppel argument, explaining that the products liability statute of repose begins to run on the date of initial purchase and is not subject to tolling for any reason); *see also Goodman v. Holmes & McLaurin Attorneys at Law*, 665 S.E.2d 526, 531-32 (N.C. Ct. App. 2008) (holding North Carolina courts have "consistently refused to apply equitable doctrines to estop a defendant from asserting a statue of repose defense in the legal malpractice context"); *Monson v. Paramount Homes, Inc.*, 515 S.E.2d 445, 449 (N.C. Ct. App. 1999) ("While equitable doctrines may toll the statute of limitation, they do not toll substantive rights created by statutes of repose.").

Even if equitable estoppel could be invoked here, "the doctrine applies only when one party's acts, representations, or silence induce another party to believe that certain facts exist, and that party rightfully relies and acts upon that belief to h[er] detriment." *Jackson v. Minnesota Life Ins. Co.*, 275 F. Supp. 3d 712, 729 (W.D.N.C. 2017) (quoting

8

*Jordan v. Crew*, 482 S.E.2d 735, 739 (N.C. Ct. App. 1997)).  For purposes of this motion, the plaintiff must have been induced to delay filing her action based upon the misrepresentations of the defendant.  *Id.*

Plaintiff's equitable estoppel argument is based on allegations that Cook fraudulently concealed the risks, safety, and effectiveness of the Tulip filter.  (Pl.'s Supp. Allegations ¶ 22).  But Plaintiff has not alleged she relied upon a misrepresentation from Cook that *prevented* her from timely filing her action.  Therefore, equitable estoppel is not available to Plaintiff.

### D. The Latent Disease Exception Does Not Apply

Lastly, Plaintiff argues her injury is analogous to a "latent disease," and therefore the North Carolina statute of repose does not apply to her claims.  The latent disease exception is "limited to diseases that 'develop over long periods of time after multiple exposures to offending substances which are thought to be causative agents,' [and] where it 'is impossible to identify any particular exposure as the first injury.'"  *In re Mentor Corp. ObTape Transobturator Sling Prods. Liab. Litig.*, No. 4:08-MD-2004, 2016 WL 873854, at *2 (M.D. Ga. March 4, 2016) (quoting *Hyer v. Pittsburgh Corning Corp.*, 790 F.2d 30, 33 (4th Cir. 1986)).  An apt example is asbestosis.  *Wilder v. Amatex Corp.*, 336 S.E.2d 66, 73 (N.C. 1985) (holding North Carolina's prior 10-year statute of repose did not apply to plaintiff's personal injury claim related to the disease of asbestosis).

Plaintiff does not allege she suffers from a "disease" that developed unnoticed over a long period of time following multiple exposures to toxic agents.  Instead, she alleges *physical injuries* arising from placement of a single medical device.  The rationale

9

for the latent disease exception simply does not apply. *Fulmore*, 581 F. Supp. 3d at 758 (rejecting application of the latent disease exception where plaintiff alleged only complications or symptoms from the implantation of a medical device, not any "disease" as defined under North Carolina law).

### III.   Conclusion

Plaintiff is bound by North Carolina's six-year statute of repose. Because Plaintiff filed this action outside the repose period, the Cook Defendants' Motion for Judgment (Filing No. 21171) must be **GRANTED**.

**IT IS SO ORDERED** this 20th day of July 2023.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.