UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

In Re: COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND         Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION          MDL No. 2570

_____

This Document Relates to
Ernie R. Scott, Civil Case No. 1:20-cv-196_____

# PLAINTIFF ERNIE SCOTT'S MOTION FOR DISMISAL FOR LACK OF JURISDICTION UNDER *SYKES v COOK*

1. Plaintiff Ernie R. Scott hereby requests that the court review federal jurisdiction for this case in light of the recent decision in *Sykes v. Cook Incorporated*, 72 F.4th 195(7th Cir. 2023) and in light of the Defendants subsequently filed Motion for CMO 32 (Document 24809) amount in controversy certification process and states as follows:

2. A federal court has an independent obligation to inquire into its subject matter jurisdiction. See, e.g., *Mansfield, C. & L.M.R. Co. v Swan*, 111 U.S. 379, 382 (1884)

3. The *Scott* case is set for jury trial beginning December 4th, 2023, and the parties will be submitting multiple pretrial motions between now and trial for ruling by the court.

4. Plaintiff's counsel does not have evidence to make a good faith showing to sign the certification form on jurisdictional amount proposed by the defense in its Motion for a Screening Order, CMO 32. (Document 24809)

5. Plaintiff filed a short form complaint and served a Category 5 form representing a failed first filter removal attempt and a complicated but successful second filter removal procedure. Neither removal attempt resulted in a surgical procedure and Plaintiff was under sedation during the procedures. Plaintiff's expert neuro-radiologist

1

    Robert Allen M.D. also provided a report and gave deposition testimony on 9/23/23 that the filter had perforated the IVC wall by more than 3 mm and that *"It is entirely possible that the perforating struts and their adverse interactions with adjacent tissues and structures contributed to Mr. Scott's back pain while the filter was in place."*

6. Plaintiff's treating physician Anton Milikotic M.D. testified at page 36 of his deposition as follows:

   17.   Q.  This -- you've mentioned scarring a few times,

   18.   and I want to make sure the jury understands.

   19.   Does this scarring happen every time that you

   20.   place an IVC filter?                            09:30:39

   21.   A.  No.

   22.   Q.  Okay.  Tell -- tell me, is there a reaction in

   23.   the tissue every time an IVC filter is placed?

   24.   A.  No.

   25.   Q.  Okay.  What make someone more likely to have    09:30:49

   1.   this kind of reaction?

   2.   A.  When there's a tilt in the head of the filter,

   3.   where the -- the metal is opposed against the wall, the

   4.   vessel wall will have a natural reaction and start to

   5.   try to exclude it from the circulation.            09:31:06

   6.   So scarring occurs and for that reason.

   7.   Q.  The scarring isn't painful, though, is it?

   8.   A.  Not to my knowledge, no.

    9.    Q.  All right.  A patient wouldn't know if the

   10.    scarring ever happened; correct?              09:31:19

   11.    A.  That's correct.

   12.    Q.  The only reason you would know if there was

   13.    scarring is if you went to take the filter out and it

   14.    couldn't come out; correct?

   15.    A.  That's correct.              09:31:27

   16.    Q.  The scarring doesn't cause any physical

   17.    symptom or -- that the patient would be aware of;

   18.    correct?

   19.    A.  Correct.

7. Plaintiff Ernie Scott testified at his deposition as follows:

   25.    Q. And I just have a few questions about         Page 138

    1.    this, Mr. Scott. Page 139

    2.    You state here the first attempted

    3.    retrieval was unsuccessful.  How were you injured

    4.    by the first retrieval attempt?

    5.    A.  The first one, like I say, he couldn't get

    6.    it out.

    7.    Q.  Okay.  And is there any other way that you

    8.    feel that you were injured by the first attempt?

    9.    A.  Yeah.  In my neck I had so much pain.

   10.    Q.  Okay.  And that's -- so is that what the

11. second sentence is in reference to where it says

12. "pain and stress associated with the first

13. retrieval attempt"?

14. A. Right, and my groin.

15. Q. We are talking about the pain in your neck

16. and groin that you said lasted a few days after the

17. first retrieval attempt; right?

18. A. Yes.

19. Q. You also mentioned stress in addition to

20. the pain. Can you tell me about this stress?

21. A. The stress was just worrying. I was more

22. concerned. So it was stressing me out.

23. Q. Okay. Did any doctor tell you that you

24. had reason to be concerned about your filter at

25. that point?

Page 140

1. A. No doctor told me that but...

2. Q. Understood. Understood.

3. It also states "Complicated second

4. retrieval was successful. My left leg swelled up."

5. Based on your medical records, they don't

6. indicate anything about swelling after the second

7. retrieval. Do you have any reason to disagree with

8.  your medical records on that?

9.  A.  No.  They don't know -- it did swell up,

10. but I don't know --

11. THE STENOGRAPHER:  I'm sorry.  The audio is

12. getting very bad.  So can you please repeat your

13. answer?

14. THE WITNESS:  I said my leg swelled up.

15. I don't know if they knew anything about it.

16. BY MR. BROADHEAD:

17. Q.  So fair to say you didn't report any

18. swelling to your healthcare providers?

19. A.  No, I didn't.

20. Q.  Could you tell me about that swelling?

21. A.  My right leg, for some reason, just

22. swelled up.  I don't know.  It went down, but then

23. it just swelled up.  I don't know why.

24. Q.  Your right leg or your left leg?

25. A.  I think it is my left leg.

Page 141

1.  Q.  And how long did that swelling last?

2.  A.  Not even a day.

3.  Q.  Okay.  Was the swelling -- did you have

4.  any pain associated with the swelling?

5

5.  A. No.

6.  Q. Okay. Finally, here, in this answer, you

7.  say, "I experienced back pain." And I know we've

8.  talked a lot about back pain today, but I just want

9.  to make sure I understand what you mean by this

10. answer. What do you mean when you say that you

11. "experienced back pain related to your second

12. retrieval"?

13. A. At the time I didn't know what it was. It

14. was just a sharp pain.

15. The second one or the first one?

16. Q. Well, that's what I'm trying to figure out

17. here because I believe you testified -- testified

18. before that you experienced pain relief or decrease

19. in pain after your second procedure.

20. A. Yes.

21. Q. Okay. So when you say, "I experienced

22. back pain here," are you referring to you

23. experienced back pain after the first retrieval,

24. after the second retrieval, or at some other time?

25. A. After the first one, but, like I said, it

Page 142

1.  was off and on. It was off and on, but -- in my

2. mind, I didn't think it was the filter. I was just

3. like why -- I'm thinking it was the operation.

4. I still had back pain.

5. Q. So just to be clear, though, you did not

6. experience new back pain after your second

7. retrieval procedure; correct?

8. A. No.

9. Q. And your back pain got better after the

10. second retrieval procedure; right?

11. A. Yes.

12. Q. And forgive me, we may have discussed this

13. already, but do you still have back pain today?

14. A. No.

8. The Sykes court discussed the Kentucky and Texas laws on excessive verdicts applicable to the Sykes and Parton cases and concluded that that under those state laws a verdict in excess of $75,000 based upon the facts of those cases would be excessive.

9. Ernie Cook is a California resident, and his medical care took place in California. In California, "The test to be applied in such cases is a comparison of the amount of the verdict with the evidence before the trial court" … "for the purpose of determining whether the award was so far out of line as to show passion or prejudice on the part of the jury"." *Harris v. Lampert*, 131 Cal.App.2nd 751 ,753, 281 P.2nd 292, (2nd Dist. 1955)

10. Based upon the facts cited above, The *Sykes* decision appears to instruct that this court does not have jurisdiction to proceed with this case and it should be dismissed by the court for lack of jurisdiction.

Dated:  September 26, 2023,            Respectfully Submitted,

**/s/ Joseph H. Saunders**
Joseph H. Saunders
SAUNDERS & WALKER, P.A.
3491 Gandy Blvd N, Suite 200
Pinellas Park, FL 33781
 joe@saunderslawyers.com
*Attorney for Plaintiff Ernie R. Scott*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th of September 2023, a copy of Plaintiff's Motion for Jurisdiction Review under *Sykes vs Cook* was served on the following counsel of record via email.

Date: September 26, 2023.

Andrea Roberts Pierson
Jessica Benson Cox
FAEGRE DRINKER BIDDLE & REATH LLP
300 North Meridian Street, Suite 2500
Indianapolis, Indiana 46204
Telephone: (317) 237-0300 Facsimile: (317) 237-1000
Andrea.Pierson@Faegredrinker.com
Ben.broadhead@faegredrinker.com
Jessica.Cox@Faegredrinker.com

James Stephen Bennett
FAEGRE DRINKER BIDDLE & REATH LLP
110 W. Berry Street, Suite 2400
Fort Wayne, Indiana 46802
Telephone: (260) 424-8000 Facsimile: (260) 460-1700
Stephen.Bennett@Faegredrinker.com

**/s/ Joseph H. Saunders**