**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| IN RE: COOK MEDICAL, INC., IVC | § | Case No. 1:14-ml-2570-RLY-TAB |
| FILTERS MARKETING, SALES | § | |
| PRACTICES AND PRODUCTS | § | MDL No. 2570 |
| LIABILITY LITIGATION | § | |
| | § | |
| This document relates to: | § | |
| | § | |
| All Cases | § | |
| | § | |

**PLAINTIFFS' RESPONSE TO COOK DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS ON NEGLIGENCE *PER SE* CLAIMS**

Comes now the Plaintiffs' Steering Committee, and on behalf of all plaintiffs, files this response to the Cook Defendants' motion for partial summary judgment on the pleadings dismissing all Plaintiffs' negligence *per se* claims, as set out in Plaintiffs' Master Consolidated Complaint for Individual Claims ("Master Complaint"), Dkt. 213, Count IV, ¶¶ 89-92. Plaintiffs would respectfully show as follows:

**INTRODUCTION**

Cook has filed a motion for partial summary judgment as to all of Plaintiffs' negligence *per se* claims. The motion is based on the overbroad application of *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 121 S. Ct. 1012, L. Ed. 2d 854 (2001). *Buckman* is so dissimilar to this litigation that it cannot be used as a basis to find implied preemption of Plaintiffs' claims. More fundamentally, however, the motion is part of a continuing stream of unfounded attempts to set up an issue allegedly "common" to all cases, so that Cook can continue to argue that still, not a single case is ripe for remand.

1

The reliance on *Buckman* is misplaced because one case cannot determine the outcome of over 7000 plaintiffs' negligence *per se* claims, residing in all 50 states, especially one that is not applicable to the facts. Cook's argument is akin to trying to force a round peg in a square hole. Cook tries to bolster its argument by cherry picking a handful of cases, where courts have ruled that a plaintiff's negligence *per se* claims were impliedly preempted under *Buckman*. But none of those cases deeply analyzed the differences in *Buckman*.  Moreover, the cases cited relied on individual, specific state law to support the courts' rulings.

This is a classic issue for originating district courts to determine— as Cook itself demonstrates.  Cook's attempt to use an omnibus motion fails to address the differences in how broadly or narrowly each circuit has applied *Buckman*, not to mention differences in state law. Some jurisdictions hold that a violation of the FDCA can establish a duty of care, and therefore a plaintiff's negligence *per se* claim is not a claim of "fraud on the FDA." Others hold that a Plaintiff can claim parallel claims to a federal regulation. Cook cannot simply sweep the numerous circuit splits and different interpretations of *Buckman* under the rug.

Finally, Cook misstates the bellwether Plaintiffs' treatment of their negligence *per se* claims, by falsely claiming that the bellwether Plaintiffs continually abandoned their negligence *per se* claims. This is simply not true. For these reasons detailed below, the motion fails and should be denied.

## ARGUMENT

### I.    STANDARD OF REVIEW

"After the pleadings are closed, but early enough not to delay trial, a defendant may move for judgment on the pleadings for the reason that a complaint allegedly fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(c). *Budd v. Seelye*, 2020 WL 6135678, at 1 (S.D. Ind. Oct. 19, 2020). "A motion for judgment on the pleadings is governed by the same standard as

a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Adams v. City of Indianapolis*, 742 F.3d 720, 727–28 (7th Cir. 2014). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must take into consideration all documents which constitute the pleadings and view them in the "light most favorable to the nonmoving party." *N. Indiana Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). "There are no special pleading requirements for product liability claims in general." *Bausch v. Stryker Corp.*, 630 F.3d 546, 558 (7th Cir. 2010).

Here, the Plaintiffs' Steering Committee filed a Master Consolidated Complaint for Individual Claims ("Master Complaint"), Dkt 213, which contains eleven counts including Negligence *Per se*. Dkt. 213, Count IV ¶¶ 89-92. A majority of plaintiffs in this litigation assert negligence *per se* claims in their individual short form complaints. Cook subsequently filed a Master Answer, which also serves as a general denial of all additional claims, individual Plaintiffs alleged, in their short form complaints. *See generally* Dkt. 8180, Cook Defs.' Am. Answer.

Faced with a motion for judgment on the pleadings, the opposing party may elaborate on the facts pled in the complaint to show the court there is likely to be some evidentiary weight behind the pleadings that the court must evaluate. *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Thus, in ruling on a motion for judgment on the pleadings, the Court must "accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). Likewise, the court must "view the facts in the complaint in the light most favorable to the nonmoving party." *GATX Leasing Corp.*, 64 F.3d at 1114. A court may "grant a Fed. R. Civ. P. 12(c) motion only if it appears beyond

doubt that the plaintiff cannot prove any facts that would support his claim for relief.' *Craigs, Inc. v. Gen. Elec. Cap. Corp.*, 12 F.3d 686, 688 (7th Cir. 1993).

## II.      COOK'S APPLICATION OF *BUCKMAN* IS OVERBROAD AND BASELESS

Cook maintains that the Court can simply decide every Plaintiffs' negligence *per se* claim, by applying Cook's broad interpretation of one case. However, "the Supreme Court's narrow ruling in *Buckman* is unstable ground on which to rest a finding of preemption." *Tigert v. Ranbaxy Pharms., Inc.,* WL 6595806, at 5 (D.N.J. Dec. 18, 2012). Here, Cook argues that under *Buckman* every Plaintiffs' negligence *per se* claim is impliedly preempted. Cook's application of *Buckman* is overbroad and conclusory. "Negligence per se is a method of proof, not an independent tort, and accordingly, negligence per se claims do not exist solely by virtue of the MDA, instead they 'simply direct[ ] the trier of fact to the federal requirements to establish the applicable standard of care.' " *In re Smith & Nephew Birmingham Hip Resurfacing (BHR) Hip Implant Prod. Liab. Litig.*, 401 F. Supp. 3d 538, 563 (D. Md. 2019) (quoting *Coleman*, 167 Cal. Rptr. 3d at 316). Furthermore, Cook's analysis of *Buckman* asks the Court to ignore the dissimilarities between *Buckman* and this MDL, and simply apply its holdings, but "the Court should decline to read *Buckman* so broadly." *In re Medtronic, Inc., Implantable Defibrillators Litig.*, 465 F. Supp. 2d 886, 899 (D. Minn. 2006). The difference in fact patterns in both cases is so severe that Cook's broad application of *Buckman* is unfounded because "*Buckman 's* holding cannot be considered without recognizing its facts." *Id.*

### A.  *Buckman's* Fact Pattern is Distinguishable from the Cook MDL

Cook's detailed examination of *Buckman* left out key facts, which differentiate it from this MDL.  "As an initial matter, the claim at issue in *Buckman* was actual 'fraud-on-the-FDA,' and not state tort claims involving the plaintiffs' personal injuries." *Id.* Cook fails to note that "in *Buckman* the defendant manufacturer had already settled with the plaintiffs—the remaining

defendant was an FDA consultant who presented the application to the FDA." *Id.* (See Daniel W. Sigelman, *Is Fraud on the FDA a Dead Letter After Buckman v. Plaintiffs' Legal Committee?,* 2 ATLA–CLE 2483 (2001)). "The plaintiffs in *Buckman* did not claim that the device itself was defective; rather, they argued that 'but for' the consultant's fraud, the FDA would not have approved the § 510(k) application; the device would not have been available on the market, and they would not have been injured." *Brown v. DePuy Spine, Inc.*, 2007 WL 1089337, at 12 (Mass. Super. Apr. 9, 2007). Additionally, *Buckman* "is further distinguished because it dealt with medical devices being used 'off-label.'" *In re Medtronic, Inc., Implantable Defibrillators Litig.,* at 889. Neither is true in this MDL. Alternatively, Plaintiffs (a) have not named any "third party" as a defendant; (b) do not claim the filters were being used "off-label"; (c) Plaintiffs claim Cook IVC filters are defectively designed causing them to be unable to withstand "normal anatomical and physiological loading cycles exerted *in vivo*". Dkt. 213 ¶49; (d) Cook failed to provide the public, including patients and doctors, notice of the filters' design failures, causing severe harm to Plaintiffs *Id.* at ¶¶50-52 ; (e) Cook failed to inform the public of safer lower-cost alternatives *Id.* at ¶116; and (f) Plaintiffs do not complain of fraud on the FDA. Therefore, Cook's reliance on *Buckman* is illogical.

**B. Plaintiffs' Complaint is More Analogous to *In re Medtronic, Inc., Implantable Defibrillators Litig.***

Plaintiffs' complaint and claims are more akin to the *In re Medtronic, Inc.., Implantable Defibrillators Lit.* MDL, in which the district court held, that the plaintiffs' claims, including negligence *per se*, were not impliedly preempted under *Buckman*. *Id.* at 900. A detailed examination of *In re Medtronic, Inc.., Implantable Defibrillators Lit.,* confirms that both cases are similarly pled, and this Court should also rule that Plaintiffs' claims in this litigation  are (a) based on state statutes or traditional tort causes of action, and (b) seek no recovery for a fraud-on-the-

FDA claim. *Id*. In *In re Medtronic, Inc.., Implantable Defibrillators Lit.,* plaintiffs alleged that the batteries in their implantable defibrillators, which are class III medical devices, were defective and caused personal injury. *Id*. at 889-890.  These devices were subject to premarket approval ("PMA"), which requires a rigorous process for approval, one much more laborious than the 510k process. *Id*.

Medtronic received FDA approval for the battery in 2000. However, in early 2003, Medtronic discovered through testing that the battery discharged prematurely, "causing the defibrillators to lose their electrical charge in days instead of years." *Id*. Medtronic failed to notify the FDA or the medical community of this discovery because "it had not received any field reports of early battery depletion." *Id*. Despite the absence of field reports, Medtronic began to redesign the battery to address the defect. *Id*. In October 2003, Medtronic filed a PMA supplemental application with the FDA for three new design changes to the battery. *Id*. Between February and April of 2004, Medtronic began receiving field reports of the defective battery, but it wasn't until December 2004 that Medtronic warned the public of the defective battery and sent "dear doctor" letters. *Id*. Plaintiffs then filed suit seeking damages for personal injuries resulting from the receipt of the defective batteries. *Id*.  Plaintiffs claimed "Medtronic violated FDA regulations including 21 C.F.R. §§ 803.50, 803.53, 814.3, 814.39, and 814.84. Their common law claims of failure to warn, negligence, strict liability, misrepresentation by omission, and negligence *per se* are premised on those violations." *In re Medtronic, Inc.., Implantable Defibrillators Lit., at* 895.

As in *In re Medtronic, Inc.., Implantable Defibrillators Lit.*, plaintiffs here claim that a medical device was defectively designed and the manufacturer failed to report the inadequacy of its products to the FDA. There is also no suggestion by plaintiffs, in either litigation, that either device was being used outside its label restrictions, i.e. "off label".  In both cases, plaintiffs do not

complain of fraud on the FDA, but rather claim that they and their doctors were deceived, and they were injured by the defendants and their respective defective devices. *Id.* at 899.

Medtronic argued that plaintiffs' claims were preempted under *Buckman* because the FDA never found or cited it for a "regulatory violation," states have no interest in policing fraud against a federal agency, and thus the MDA only permits consumers to petition the FDA to take action against any wrongdoing. *Buckman*, 531 U.S. at 347-348, 121 S.Ct. 1012. However, the court in *In re Medtronic, Inc.., Implantable Defibrillators Lit.,* noted,"[s]tates may not be concerned about protecting federal agencies, but states have a strong interest in protecting their citizens from fraud and personal injuries. The Supreme Court in *Lohr* recognized "the historic primacy of state regulation of matters of health and safety." *Id.* citing *Lohr*, 518 U.S. at 485.  Therefore, Medtronic's extensive application of *Buckman* asked the Court, as Cook does here, to ignore the fact that plaintiffs are not preempted, under *Lohr,* to claim state law causes of action which parallel federal safety. *Id.* at 900. The court declined to follow Medtronic's plea, and instead ruled there was "no basis" in *Buckman* to support Medtronic's claim for preemption. The same is true in this case. Both complaints' negligence *per se* claims are similarly written. See *In re Medtronic, Inc.., Implantable Defibrillators Lit.,* Plaintiffs' Negligence Per Se Claim (Count Three)[1]   *In re Medtronic, Inc.,*

---

[1] Plaintiffs' Negligence *Per se* Claims (Count Three)

118. Plaintiffs reallege all previous paragraphs.

119. Medtronic has liability for the recalled devices for the reasons set forth in this Count.

120. Medtronic had an obligation not to violate the law in the manufacture, design, testing, manufacturing, assembly, inspection, labeling, packaging, supplying, marketing, selling, advertising, preparing for use, warning of the risks and dangers of the Recalled Medtronic ICDs and/or pacemakers, and otherwise distributing the Recalled Medtronic ICDs and/or pacemakers.

121. Medtronic's acts constitute an adulteration, misbranding, or both, as defined by the Federal Food, Drug and Cosmetic Act, 21 U.S.A. §331(a) and 333(a)(2), and constitute a breach of duty subjecting Medtronic to civil liability for all damages arising there from, under theories of negligence *per se.*

122. As a direct and proximate result of Defendant's conduct, Plaintiff suffered and will continue to suffer personal injury, economic loss, pecuniary loss, loss of companionship and society, mental anguish and other compensable injuries.

*Implantable Defibrillators Litig., Plaintiffs' Master Consolidated Complaint for Individuals,* 05-md-01726,

Dkt. 36 at 15-16 (February 15, 2006).

Plaintiffs' Master Complaint asserts Cook IVC Filters are defectively designed attributing to each

Plaintiffs' injuries:

### COUNT IV: NEGLIGENCE *PER SE*

(Violation of 21 U.S.C. §§321, 331, 352 and 21 C.F.R. §§1.21, 801, 803, 807, 820)

89. Plaintiffs repeat and re-allege each and every allegation of this Master Complaint as if set forth in full in this cause of action.

90. At all times herein mentioned, Defendants had an obligation not to violate the law, including the Federal Food, Drug and Cosmetic Act and the applicable regulations, in the manufacture, design, testing, production, processing, assembling, inspection, research, promotion, advertising, distribution, marketing, promotion, labeling, packaging, preparation for use, consulting, sale, warning and post-sale warning and other communications of the risks and dangers of Cook IVC Filters.

91. By reason of its conduct as alleged herein, Cook violated provisions of statutes and regulations, including but not limited to, the following:

a. Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§331 and 352, by misbranding its Cook IVC Filters;

b. Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 321 in making statements and/or representations via word, design, device or

any combination thereof failing to reveal material facts with respect to the consequences that may result from the use of Cook IVC Filters to which the labeling and advertising relates;

c. Defendants violated the 21 C.F.R. §1.21 in misleading the consumers and patients by concealing material facts in light of representations made regarding safety and efficacy of its Cook IVC Filters;

d. Defendants violated the 21 C.F.R. §801 in mislabeling its Cook IVF Filters as to safety and effectiveness of its products and by failing to update its label to reflect post-marketing evidence that Cook IVC Filters were associated with an increased risk of injuries due to tilting, fracture, migration and perforation;

e. Defendants violated the 21 C.F.R. §803 by not maintaining accurate medical device reports regarding adverse events of tilting, fracture, migration and perforation and/or misreporting these adverse events maintained via the medical device reporting system;

f. Defendants violated the 21 C.F.R. §807 by failing to notify the FDA and/or the consuming public when its Cook IVC Filters were no longer substantially equivalent with regard to safety and efficacy with regard to post-marketing adverse events and safety signals; and

g. Defendants violated the 21 C.F.R. §820 by failing to maintain adequate quality systems regulation including, but not limited to, instituting effective corrective and preventative actions,

**WHEREFORE**, Plaintiffs demand judgment against the Cook Defendants and seek damages as detailed in the Global Prayer of Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other further relief as this Court deems just and proper; Dkt. 213 ¶¶89-92.

Both complaints claim the defendants had an obligation not to violate the law, including the Federal Food, Drug and Cosmetic Act, and applicable regulations, in the manufacture, design, testing, production, processing, assembling, inspection, research, promotion, advertising, distribution, marketing, promotion, labeling, packaging, and preparation of the Defendant's products. *In re Medtronic, Inc., Implantable Defibrillators Litig., Plaintiffs' Master Consolidated Complaint for Individuals,* 05-md-01726, Dkt. 36 at ¶120 (February 15, 2006) and Dkt. 213 *Master Complaint* at ¶ 90. Both claim the defendant violated Federal Food, Drug and Cosmetic Act, 21 U.S.C.§ 331 by misbranding their products. *In re Medtronic, Inc., Implantable Defibrillators Litig., Plaintiffs' Master Consolidated Complaint* Dkt. 36 at ¶121¶ Dkt. 213 *Master Complaint* at ¶91(a). Most importantly, as a result of each defendants' conduct, Plaintiffs suffered personal injury and damages. *In re Medtronic, Inc., Implantable Defibrillators Litig., Plaintiffs' Master Consolidated Complaint for Individuals* Dkt. 36 at ¶122 and Dkt. 213 at ¶¶91(d), 92. Neither complaint claims any harm to the FDA. "Because of its important role in state regulation of matters of health and safety, common law liability cannot be easily displaced in our federal system.". *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.,* 2020 WL 7418006, at 9 (D.N.J. Dec. 18, 2020) (*quoting*

*Desiano,* 467 F.3d at 98). This Court should also find no basis in *Buckman* that Plaintiffs' negligence *per se* claims are impliedly preempted.

### III.   COOK'S RELIANCE ON OTHER IVC FILTER NEGLIGENCE *PER SE* DECISIONS IS MISPLACED

#### a.   The *Booker* Decision Noted the Plaintiff Did Not Allege a Violation of State Statutes but Only Alleged Violation of the FDCA

Cook again does not look at the findings of facts when applying a case's holding. In *Booker,* the Plaintiff did not cite to any Georgia state provision or assert any state specific consumer fraud or unfair trade practices act.  *In re Bard IVC Filters Prod. Liab. Litig.,* 2017 WL 5625548, at 8 (D. Ariz. Nov. 22, 2017). "Thus, Plaintiff's negligence *per se* claim exists solely because of alleged violations of the FDCA and its implementing regulations." *Id.* The opposite is true for Plaintiffs in this case. Plaintiffs cites to statutory provisions of more than 40 states. Dkt 213 at ¶118-165. Again, recognizing the facts matters, *Booker* is not analogous to this case.

#### b.   The Courts Holdings in *Heath, Johnson,* and *Hyde* Regarding the Plaintiffs' Negligence *Per se* Claims is Equally Distinguishable

Each court held the Plaintiffs' claim of negligence *per se* was preempted because the "claim was based only on violations of that federal law." *Johnson v. C.R. Bard Inc.,* 2021 WL 1784661, at 10 (W.D. Wis. May 5, 2021). As already stated, the same is not true in this litigation. Plaintiffs' negligence *per se* claims are not based on any claim of "fraud on the FDA" but rather a parallel state cause of action the Plaintiffs themselves have brought, due to injuries sustained by Cook's defectively designed and manufactured IVC filters. Plaintiffs use of the negligence *per se* doctrine, is to ensure their state law duties alleged, directly parallel federal law; therefore, they are only pursuing a remedy under state law. *Coleman v. Medtronic, Inc*., 223 Cal. App. 4th 413, 435, 167 Cal. Rptr. 3d 300, 316, as modified (Feb. 3, 2014), dismissed, remanded and ordered published sub nom. *Coleman v. Medtronic*, 331 P.3d 178 (Cal. 2014).

Further, regardless of the Courts' holdings in each case, the courts analyzed each Plaintiff's negligence *per se* claims based on each plaintiff's individual pleadings, under their specific, unique state court laws. Here, Cook is asking the court to skip this analysis and instead create one omnibus ruling, regardless of case law, circuit split, or state law application of *Buckman*. There is too much discrepancy between each state's interpretation of Buckman, therefore Cook's attempt to circumvent the law should be ignored. Consequently, the holdings Cook cite have no bearing in this case.

### c.  The Court's Holding in the *Hill* Bellwether Case Was Only Based on Florida Law

In March 2017, Cook filed a motion for partial summary judgment on the pleadings in the *Hill* bellwether case. Dkt. 223. Cook based its argument for partial summary judgment on *Hill's* negligence *per se* claims only on Florida law and never mentioned *Buckman* in its motion or memorandum. Dkt. 223 and 223-1 at 4. In fact, Cook states, "Hill's attempt to invoke a negligence *per se* claim based on alleged FDCA violations fails as a matter of **Florida law**, and the Court should dismiss Plaintiff's negligence *per se* claim on this ground." *Id.* at 5 (emphasis added). Cook may argue this does not matter because the Court still ruled Hill's negligence *per se* claims were based on alleged FDCA violations, but the Court ruled specifically only under the bounds of Florida law. The Court held that under Florida law, a negligence *per se* claim may only arise where the alleged statutory violation provided for a private right of action, which the FDCA does not. Hence, the Court dismissed *Hill*'s negligence *per se* claim because of the application of Florida law, and *not* because of implied preemption under *Buckman.* Dkt. 4687 at 1. As already explained in detail above, Plaintiffs' complaint only claims state law causes of action alleging failure to comply with FDA regulations, which are parallel to and separate from the federal requirements. *In*

*re Medtronic., Inc.* at 895. The Court has only analyzed Plaintiffs' negligence *per se* claims under one state's laws. Therefore, the Court's ruling in *Hill* does not create, as Cook alludes, *res judicata.*

### d. Negligence *Per se* Under Multiple Jurisdictions is Viewed as a Parallel State Court Cause of Action and Is Not Founded Upon Any Private Cause of Action

Cook tries to lead the Court to believe *Buckman* preempts all negligence *per se* claims for every medical device case in all 50 states. This is simply not true. First, there is too much disparity between the states' application of negligence *per se* for the Court to entertain Cook's request in an omnibus fashion. There are many different approaches, which narrowly or more broadly apply *Buckman's* holding of preemption. Cook addresses none of these differences. For example, The Oklahoma Supreme Court has explained this distinction quite succinctly in *Howard v. Zimmer, Inc.*, 299 P.3d 463, 467-468 (Okla. 2013) [citations omitted]:

> The negligence *per se* doctrine is employed to substitute statutory standards for parallel common law, reasonable care duties. When courts adopt statutory standards for causes of action for negligence, the statute's violation constitutes negligence *per se*. To establish negligence *per se*, the plaintiff must demonstrate the claimed injury was caused by the violation and was of the type intended to be prevented by the statute. Finally, the injured party must be one of the class intended to be protected by the statute. Liability *per se* enables plaintiffs to establish as a matter of law that the defendant's conduct constituted a breach of duty in a negligence action, so that only causation and damages need be proven. The question of whether a causal connection exists between the violation of the regulation here and Sulzer's actions and whether those violations were negligence *per se*, is for the trier of fact.

Having acknowledged the fact a negligence *per se* claim was a parallel cause of action arising from the state common law, the *Howard* court then determined that the lack of a private cause of action under the statute was no bar to using violations of the statute to establish the defendants' duty and the standard of care:

> Courts recognizing that no private cause of action for civil damages exists under the FDCA, allow private actions where parties rely on the regulations themselves to establish a duty or standard of care. *Allen v. Delchamps, Inc.*, 624 So.2d 1056, 1068 (Ala. 1993), *Grove Fresh Distributors, Inc. v. Flavor Fresh Foods, Inc.*, 720 F. Supp. 714, 716 (N.D. Ill. 1989). We align ourselves with those jurisdictions which would allow a negligence *per se* claim

to proceed. This Court acknowledges the distinction between attempting to enforce a federal regulation and allowing a parallel claim for negligence *per se* bottomed on violation of the regulation. Such claims have been blessed by the United States Supreme Court in *Riegel v. Medtronic, Inc*. and *Medtronic v. Lohr* distinguishing between attempts to enforce a federal regulation and reliance on the violation of such rules to bring a parallel claim.

*Howard*, 299 P.2d at 473.

The Western District of Pennsylvania came to a similar conclusion when faced with the same question, holding "that the FDCA and MDA were enacted to protect a particular group of individuals because their purpose was to 'provide for the safety and effectiveness of medical devices intended for human use.'" *Sharp v. Artifex, Ltd.*, 110 F. Supp. 2d 388, 394 (W.D. Pa. 1999).

Additionally, the Court found,

In sum, we hold that the first requirement for maintaining a claim of negligence *per se* has been established. The FDCA and MDA were enacted to protect the interest of a particular group of individuals; they were enacted to protect the interests of those individuals who require the use or implantation of medical devices. See Murray [v. Synthes (USA), Inc., 1999 WL 672937, at *8 [(E.D. Pa. August 24, 1999)]. Thus, despite the absence of a private right of action, the policies of the FDCA and MDA will be furthered by allowing such a claim.

*Id.*

Similarly, the Southern District of Alabama held,

…all of the claims advanced ... in this case are premised on traditional duties between a product manufacturer and [state] consumers. None of them derives from, or is based on, a newly-concocted duty between a manufacturer and a federal agency. As a result, were we to conclude that [such state law] claims were preempted, we would be holding that Congress, without any explicit expression of intent, should nonetheless be taken to have modified (and, in effect, gutted) traditional state law duties between pharmaceutical companies and their consumers. We see no reason, nor can we identify any precedent, to justify such a result.... the plaintiffs' claims in the case before us "parallel federal safety requirements" but are not premised principally (let alone exclusively) on a drug maker's failure to comply with federal disclosure requirements. On the contrary, the plaintiffs' complaints allege a wide range of putative violations of common law duties long-recognized by [the state] tort regime. These pre-existing common law claims [depend upon] evidence of fraud in FDA disclosures. But, unlike the claims in *Buckman*, they are anything but based solely on the wrong of defrauding the FDA.

*Mosley v. Wyeth, Inc.,* 2010 WL 11583549, at *17 (S.D. Ala. Jan. 26, 2010) *quoting* (*Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 94-95 (2d Cir. 2006)).

In New York, " [t]he Second Circuit has already determined that under New York law, a cause of action for negligence *per se* should lie when the underlying claim is for misbranding or otherwise illegally omitting product warnings required by the FDCA." (*See Ezagui v. Dow Chem. Corp.,* 598 F.2d 727, 733 (2d Cir.1979); *Loewy v. Stuart Drug & Surgical Supply, Inc.*, 1999 WL 76939, at 4 (S.D.N.Y. Feb. 11, 1999), *adhered to on reconsideration*, 1999 WL 216656 (S.D.N.Y. Apr. 14, 1999).

The United States District Court for the District of New Jersey, in *Tigert v. Ranbaxy Pharmaceuticals, Inc.*, WL 6595806 (D.N.J. Dec. 18, 2012), concluded:

> …the Court had the opportunity to review the breadth and significance of the *Buckman* holding. In *Tigert,* defendant pharmaceutical manufacturer moved for judgment on the pleadings under Rule 12(c) and argued the immunity exception (under Texas law) that plaintiff had invoked was pre-empted by federal law. Injured by using defendant's acne medication, plaintiff sued defendant under state law for strict products liability or a negligence theory of liability and for failure to warn and urged this Court to find no preemption of these claims. Defendant invited this Court to apply the Fifth Circuit's interpretation of *Buckman*, whereas plaintiff argued for the Second Circuit's interpretation. This Court adopted the latter because of the Second Circuit's rationale--that *Buckman* held only that a claim of Fraud-on-the-FDA, not the product liability claims, was pre-empted. *Id.* at 3 and at footnote 3. In particular, the Court found in *Tigert* that the Supreme Court in *Buckman* "reached concerns of interference [with the FDA's regime] only after first finding that fraud on the agency claims presented a unique circumstance in which the traditional presumption against preemption of state law did not apply." *Id*. at 5. Thus, this Court ruled in *Tigert* that "the Supreme Court's narrow ruling in *Buckman* is unstable ground on which to rest a finding of preemption." *Id*. The rationale in *Tigert* as well as that of the Second Circuit's also applies here especially since defendants arguments for preemption rest chiefly on their re-formulation of these tort claims at issue as somehow fraud-on-the-FDA claims in disguise. "Because of its important role in state regulation of matters of health and safety, common law liability cannot be easily displaced in our federal system." *Desiano,* 467 F.3d at 98. Plaintiffs' claims depend on traditional tort and contract law sources and not on a "fraud-on-the-FDA" claim, it follows from a full and accurate interpretation of *Wyeth* and *Buckman* taken together that federal law does not preempt such state law and common law claims. (*Summarized in In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.,* 2020 WL 7418006, at 9 (D.N.J. Dec. 18, 2020)).

Under Illinois law, the doctrine of negligence per se "provides that where a cause of action does exist at common law, the standard of conduct to which a defendant will be held may be

defined as that required by statute, rather than as the usual reasonable person standard." *Cuyler v. United States*, 362 F.3d 949, 952 (7th Cir. 2004) (cleaned up).

Finally, even the Seventh Circuit has held, "federal law does not preempt parallel claims under state law based on a medical device manufacturer's violation of federal law." *Bausch v. Stryker Corp.*, 630 F.3d 546, 558 (7th Cir. 2010). In *Bausch,* the plaintiff was implanted with the defendant's ceramic-on-ceramic hip replacement system. *Id.* Due to its defective design and manufacturing defects, the plaintiff suffered from hip pain, disability, and had to undergo an additional "revision" surgery to remove and replace the hip implant. *Id.* at 558-559. "Here, as in *Lohr* and as recognized in *Riegel,* the plaintiff claims breach of a well-recognized duty owed to her under state law—the duty of a manufacturer to use due care in manufacturing a medical device. She may do so as long as she can show that she was harmed by a violation of applicable federal law. *Id.* The Court concluded the plaintiff's case was not impliedly preempted by federal law.

Each Plaintiff in this litigation was implanted with a medical device, which caused severe injury, including but not limited to perforation of an organ, fracture and/or migration of the device, and even in some instances, death. Each Plaintiff is part of the class intended to be protected under the FDCA. *In re Valsartan, Losartan, & Irbesartan Prod. Liab. Litig.,* 2020 WL 7418006, at 9. Additionally, Plaintiffs are not claiming fraud on the FDA but rather parallel claims under state law, which is proper under numerous state laws and circuits including the Seventh Circuit. While the examples provided are not exhaustive, they provide an overview of state and circuit law of medical device cases, upholding the Plaintiffs' negligence *per se* claims and denying defendants' motion to dismiss on the basis of implied preemption.

## IV.    COOK'S ASSERTION ALL BELLWETHER PLAINTIFFS ABANDONDED THEIR NEGLIGENCE *PER SE* CLAIMS IS UNFOUNDED

Cook's claim that all bellwether Plaintiffs abandoned their negligence *per se* claim is untrue and groundless. Since the inception of the MDL there have been several bellwether cases. However, only one such bellwether Plaintiff withdrew his negligence *per se* claim.

*Hill* did not abandon her negligence *per se* claim, but rather the Court held, that her negligence *per se* claim under the analysis of *only* Florida law, Plaintiff's claim could not go forward, after Cook filed a partial motion for summary judgment. Dkt. 4687 at 2.

*Gage's* negligence *per se* claim was only dismissed based on the statute of limitations defense, and not due to a formal analysis of the Plaintiff's negligence *per se* claim. Dkt. 7715.

*McDermitt's* case was dismissed by the court based on the statute of repose defense and not due to any formal analysis of the Plaintiff's negligence *per se* claim. Dkt. 13188.

*Brand* agreed to abandon her negligence *per se* claim but **only** as to "misbranding and quality system regulations" Dkt 9146 at 65-66. *Brand* did not vacate her negligence *Per se* claim completely.

*Scott* was the only bellwether Plaintiff who withdrew his negligence *per se* claim completely. Dkt 25053 at 3.

Therefore, Cook's claim that all Bellwether Plaintiffs abandoned their negligence *per se* claim is wrong. One Plaintiff's strategic decision does not create a pattern and should have no bearing on the claims of over 7000 others still pending in the MDL. Instead, it should be taken as a decision made by one Plaintiff regarding his case and nothing more. The choices and actions of a few plaintiffs does not define the actions of the entire docket. Cook's claims of Plaintiffs' desertion of their negligence *per se* claims is therefore unfounded and should be dismissed as groundless.

Moreover, Cook's motion does not address plaintiffs who have made individual additional claims or provided additional evidence to support their negligence *per se* claims in their individual short form complaints. An omnibus motion is improper in the very least to dismiss their claims of negligence *per se*, and Cook's motion does not support a claim for dismissal at a minimum for these plaintiffs.

## CONCLUSION

Cook's reliance on *Buckman* is misplaced as well as its reliance on *Hill* and other IVC filter cases, as demonstrated above. *Buckman* is applied differently in each circuit and in each state and therefore cannot be addressed in an omnibus motion. The Court should deny Cook's Motion for Partial Judgment on the Pleadings as to Plaintiffs' Negligence *per se* claims. Plaintiffs have properly pled a claim for negligence *per se*. Reading Count IV in light most favorable to Plaintiffs, and Plaintiffs having demonstrated that their negligence *per se* claim is a viable cause of action, Cook's Motion for Partial Judgment on the Pleadings should be denied. However, if the Court believes the Plaintiffs' claims as pled are not sufficient, then Plaintiffs request leave to amend.


Date: October 1, 2024.

Respectfully submitted,

*/s/ Joseph N. Williams*
Joseph N. Williams
**Williams Law Group, LLC**
1101 North Delaware St., Suite 200
Indianapolis, IN  46202
(317) 633-5270
Email:  joe@williamsgroup.law
*Liaison Counsel to Plaintiffs*
*Steering Committee and on*
*Behalf of Plaintiffs*
*Steering Committee*

17

Michael Heaviside
**Heaviside Reed Zaic**
800 Connecticut Ave.
Suite 300
Washington, DC  20006
(202) 223-1993
mheaviside@hrzlaw.com

Ben C. Martin
**Law Office of Ben C. Martin**
3141 Hood St.
Suite 600
Dallas, TX  75219
(214) 761-6614
bmartin@martinbaughman.com

David P. Matthews
**Matthews and Associates**
2509 Sackett St.
Houston, TX 77098
(713) 522-5250
dmatthews@thematthewslawfirm.com

Charles S. Siegel
**Waters Kraus Paul & Siegel**
3141 Hood St.
Suite 700
Dallas, TX  75219
(214) 357-6244
siegel@waterskraus.com

## CERTIFICATE OF SERVICE

I hereby certify that on the first day of October 2024, a copy of the foregoing was filed electronically.  Service of this filing will be made on all ECF registered counsel by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

  /s/  *Joseph N. Williams*
Joseph N. Williams