UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION ) | 1:14-ml-02570-RLY-TAB<br>MDL No. 2570 |
| This Document Relates to:<br>Tim Marshal<br>1:17-cv-1812 ) | |

**ENTRY ON THE PLAINTIFF'S MOTION TO RECONSIDER AND VACATE ORDER OF DISMISSAL WITH PREJUDICE**

On May 7, 2024, the court granted the Cook Defendants' renewed motion to dismiss the fraudulent concealment claims[1] of 684 Plaintiffs, including Plaintiff Tim Marshal's fraudulent concealment claim. (*See* Filing No. 25587). The court granted the motion on two grounds. First, Plaintiffs failed to state the circumstances of Cook's alleged fraudulent concealment with the particularity required by Federal Rule of Civil Procedure 9(b). Second, Plaintiffs failed to sufficiently allege that Cook took affirmative action to conceal from them the facts underlying their causes of action such that they were prevented from discovering their causes of action against Cook within the statute of limitations.

[1] To be precise, Plaintiffs assert fraudulent concealment as a defense to the statute of limitations.

Plaintiff moves the court to reconsider that ruling and vacate the order of dismissal. Plaintiff argues, among other things, that his due process rights were violated because he had no notice that Cook had filed a renewed motion to dismiss and that his amended allegations state a plausible claim for relief. The court finds, for the reasons explained below, that his motion should be **DENIED**.

## I. Background

Plaintiff is an Oklahoma resident who was injured on November 15, 2013, from an accidental gunshot wound to his chest. (Filing No. 16,[2] Am. Short Form Compl. ¶¶ 4–6; Filing No. 17, Am. Compl., Ex. A[3] ¶ 1). He developed a deep vein thrombosis, so his physician, Dr. Raj Chandwaney, placed a Cook Celect IVC Filter in Plaintiff as a preventative measure. (Am. Compl., Ex. A ¶¶ 2–3). Two days later, he developed a pulmonary embolism ("PE"). (*Id.* ¶ 4). Plaintiff ultimately suffered a collapsed lung, a heart attack, and a stroke. (*Id.* ¶¶ 7, 10).

On June 30, 2014, Dr. Chandwaney attempted to remove the filter, but he was unable to do so because the filter had become embedded in Plaintiff's IVC. (*Id.* ¶¶ 13–14). Plaintiff continues to suffer from the effects of his stroke, including memory loss, muscle spasms, and pain. (*Id.* ¶ 16). Plaintiff blames the Cook Celect filter for his physical and emotional injuries. (*Id.* ¶ 7).

---

[2] The filing numbers in the Background Section are from Plaintiff's individual case docket, 1:17-cv-1812.

[3] Ex. A contains Plaintiff's amended fraudulent concealment allegations. They are also found on the master docket under Filing No. 17308.

Plaintiff filed suit against Cook on June 1, 2017. (Filing No. 1, Compl.). His Amended Complaint asserts claims for, among other things, products liability, negligence, breach of warranty, intentional infliction of emotional distress, common law fraud, and for violations of Oklahoma's consumer protection act. (Am. Short Form Compl. ¶ 14). He asserts fraudulent concealment as a defense to the statute of limitations. (*Id.*).

## II. Discussion

Plaintiff admits he did not file a response to Cook's renewed motion to dismiss. Nevertheless, he moves the court to reconsider and vacate its Order granting the same on numerous grounds. The court begins with his motion to vacate.

### A. Motion to Vacate

Plaintiff argues his due process rights were violated because he was not provided notice and an opportunity to respond to Cook's renewed motion to dismiss. Specifically, he argues that because Cook only filed the motion on the master docket and not on his individual case docket, he did not know Cook's renewed motion had been filed until he received a copy of the May 2024 Order. Because he lacked the opportunity to respond to Cook's renewed motion, he argues the court's Order granting Cook's renewed motion should be vacated as to him.

This argument has no merit. Per the court's General Order Regarding Notice Procedure, the court explained that, effective October 11, 2016, Notices of Electronic Filing ("NEFs") would no longer be generated in individual Plaintiffs' case dockets; instead, NEFs would be sent to all registered counsel through the master docket only.

(*See* Filing No. 2771). This order was borne out of practical necessity. As the court explained:

> Currently there are in excess of 250,000 NEFs generated when a filing is docketed in the master case and spread to all member cases. Generating these NEFs takes the Court's CM/ECF system hours to complete and locks the system during that time, i.e. no other filings can be made in the master or its associated member cases.
>
> Consequently, to alleviate this burden on the system and the Court's servers, and to eliminate the same NEF being issued to counsel multiple times, effective on or after October 11, 2016, the Southern District of Indiana will discontinue its practice of issuing NEFs in the member cases of this MDL.

(*Id.* at 2).

The court subsequently entered an Amended Order Establishing Policies and Procedures on June 12, 2017. (*See* Filing No. 8). In the amended order, the court informed the parties to the MDL that filings were to be docketed only in the master docket:

> Once a new case has been transferred into the MDL and designated a Member Case, all filings, regardless of the Member Case(s) to which they apply, shall be docketed in the Master Case only. It is no longer necessary to spread filings to the Member Cases, with only one exception. Any Notice of Appearance filed after a new case is transferred into the MDL Case shall be filed in the Master Case and spread to the applicable Member Case. No other filings shall be spread to Member Cases.

(*Id.* at 3–4). This order was populated to Plaintiff's member docket on June 12, 2017, long before Cook filed the renewed motion to dismiss. (*See id.*). Thus, Plaintiff had notice of how the court would handle future filings and where such filings would

appear—in the MDL's master docket, 1:14-cv-2570. Counsel's apparent failure to monitor the court's docket[4] is not an excuse to vacate the court's Order.

**B. Motion to Reconsider**

Because the court's Order granting the Cook Defendants' renewed motion to dismiss did not dispose of Plaintiff's case in its entirety, the court reviews Plaintiff's motion for reconsideration under Federal Rule of Civil Procedure 54(b). That rule states, in relevant part:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b). Accordingly, under Rule 54(b), the court may exercise its inherent authority to reconsider its interlocutory orders because such orders may be revised at any time before the court enters final judgment. *See Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 12 (1983) ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge."); *Sims v. EGA Prods., Inc.,* 475 F.3d 865, 870 (7th Cir. 2007) (noting that "nonfinal orders are generally modifiable").

The purpose of a motion to reconsider is "to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI*

[4] Plaintiff also asserts that his attorney does not have access to the PSC's response (Filing No. 18900) because the court's CM/ECF system returned an error message stating, "You do not have permission to view this document." Plaintiff's attorney should have realized that the PSC's response was filed under seal and, because she filed an appearance in this MDL, she had access to the document using her own credentials. And if that did not work, she could have easily contacted the Clerk's Office for assistance.

*Indus. Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (quoting *Keene Corp. v. Int'l Fidelity Ins.*, 561 F. Supp. 656, 665 (N.D. Ill. 1982)). A motion to reconsider is proper where the court "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (W.D. Va. 1983)). "Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale*, 90 F.3d at 1270.

**1. The Court Did Not Rely on Cook's Representations**

Plaintiff argues the court made an error of apprehension by relying on Cook's representations in its briefing concerning the fraudulent concealment allegations in Plaintiffs' pleadings because Cook did not include Plaintiff's "case specific allegations." (*See* Filing No. 18315-2, Cook's Chart of Unique Allegations in Plaintiffs' Amended Short Form Complaints Filed Between February 22, 2021, and March 26, 2021; Filing No. 25625, Pl.'s Mot. at 9). The court did not rely solely on Cook's representations. The Plaintiffs' Steering Committee ("PSC") filed a thirty-page response to Cook's renewed motion that included its own summary of Plaintiffs' fraudulent concealment allegations taken from their Amended Short Form Complaints. (*See* Filing No. 18900, PSC's Resp. at 22–25; Filing No. 18900-1, Exemplar Short Form Compl. Allegations Regarding the Celect). The court acknowledged the same in its Order. (Filing No. 25587, Order at 5 ("The PSC's Response includes a summary of Plaintiffs' fraudulent concealment

allegations taken from their Amended Short Form Complaints.")). Moreover, because the renewed motion to dismiss was brought by Cook, the court summarized the *PSC's allegations*—not Cook's—in the Discussion Section of the Order. (*See id.* at 9–13).

Furthermore, many of Plaintiff's amended fraudulent allegations were included in the PSC's allegations and addressed by the court.[5] For example:

- Cook failed to disclose that the Celect filter was discontinued due to its high rate of adverse events. (*Compare* Am. Compl., Ex. A ¶ 22, *with* Filing No. 25587 at 11).
- Cook's Director of Reimbursement, Dr. James Gardner, questioned the efficacy of the Celect filter. (*Compare* Am. Compl., Ex. A ¶¶ 39, 85, *with* Filing No. 25587 at 11).
- Cook misrepresented the results of a human clinical trial, known as the OUS Study, by having one definition of perforation for the study's investigators to use when recording whether perforations exist (i.e., requiring hemorrhage or hematoma to qualify) and another definition of perforation in the published study (i.e., claiming a perforation is any strut outside the wall of the IVC). Cook then reported that the Celect filter caused no perforations and forwarded the study to the medical and scientific community. (*Compare* Am. Compl., Ex. A ¶¶ 69, 71, 91, *with* Filing No. 25587 at 10).

[5] They were also included in Cook's Chart of Unique Allegations, as set forth in its Response. (*See* Filing No. 25687, Cook's Resp. at 14–15).

- Cook included the results of the published study in the Celect filter's instructions for use (IFU), thereby concealing the safety concerns raised in the study, including known failure modes and adverse events associated with the filter. (*Compare* Am. Compl., Ex. A ¶¶ 77–81, *with* Filing No. 25587 at 10).
- Cook concealed from the medical and scientific community that the use of the filter is not associated with a significant decrease in the rate of PE, PE-related mortality, or all-cause mortality. (*Compare* Am. Compl., Ex. A ¶ 93, *with* Filing No. 25587 at 11).
- Cook concealed the known nature, frequency, and extent of associated adverse events in the Celect Patient Guide, including the frequency of the Celect to become embedded in the IVC and the Celect's propensity to perforate. (*Compare* Am. Compl., Ex. A ¶¶ 102–03, *with* Filing No. 25587 at 11).

Accordingly, Plaintiff's argument that the court relied on Cook's representations in its Order is not a valid basis for reconsideration.

**2. Plaintiff's Allegations Are Insufficient**

Under Oklahoma law, fraudulent concealment applies when a party wrongfully conceals material facts to prevent discovery of the cause of action. *Masquat v. DaimlerChrysler Corp.*, 195 P.3d 48, 54–55 (Okla. 2008). Specifically:

> The mere failure to disclose such material facts is not sufficient to prevent the running of the statute; but when there is something more than mere failure to disclose, when there is some actual artifice or some affirmative act

> of concealment, or some misrepresentation which induces the other party to inaction, or to forgo inquiry, the guilty party may not cover up the harm he has thus wrought by aid of the statute of limitations.

*Id.* (quoting *Loyal Protective Ins. Co. v. Shoemaker*, 63 P.2d 960, 961 (Okla. 1936)). "One relying on fraudulent concealment to toll the statute of limitations must not only show that he did not know the facts constituting a cause of action, but that he exercised reasonable diligence to ascertain said facts." *Id.* (quoting *Kansas City Life Ins. v. Nipper*, 51 P.2d 741, 742 (Okla. 1935)).

The party alleging fraudulent concealment must plead the circumstances of the fraud with particularity under Rule 9(b). *Dinwiddie v. Suzuki Motor of Am., Inc.*, 111 F. Supp. 3d 1202, 1211–12 (W.D. Okla. 2015). That rule requires a plaintiff "alleging fraud or mistake . . . [to] state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The term "circumstances" refers to the specific "who, what, when, where, and how" of the fraud. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (explaining that the circumstances of the alleged fraud—the who, what when, where, and how—"must be pleaded in detail"); *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Buth*, 475 F. Supp. 3d 910, 930 (E.D. Wis. 2020) ("Fraudulent concealment, like all fraud claims, must be plead with particularity in accordance with Rule 9(b)[.]").

Plaintiff argues he meets the requirements of Rule 9(b) by alleging eight specific communications Dr. Chandwaney had with Cook representatives from August 30, 2011, to September 9, 2014, which are outlined primarily in paragraphs 115(a)–(h) of his

amended allegations. (*See* Am. Compl., Ex. A ¶ 115(a)–(h)). These allegations are based on the contact logs generated and maintained by Cook. For example, Plaintiff alleges:

> 8/30/11 Dr. Chanwaney communicated with Cook Representative Peter Polverini at the Hillcrest Medical Center Cath Lab about "Clinical data and product discussion." None of the "clinical data" and "product discussion" which occurred has been identified or provided to [Plaintiff] . . . . This note was created by Cook personnel, referred to as one Melissa Ginding.

(*Id.* ¶ 115(a)).

> 6/10/13 Dr. Chandwaney and Dr. Muhammad communicated with Cook Representative Lance Duren [sic] he introduced them to Cook Representative "Nicole." The Cook note transcriber referenced a lunch with Nicole. Notes say, "Patient brochures with Celect IVC Filters" and that the physicians had interest in knowing "clinical data" and that "Nicole will follow up with five year [sic] data with Dr. Chandwaney." This note was created by Cook through its agent Penny Steinkuehler.

(*Id.*¶ 115(c)).

> 10/21/13 Dr. Chandwaney communicated with Cook Representative Lance Duren about two of his cases and that he might use an alternate size product. The exact nature and scope of this conversation has been concealed. This note was created by Cook through its agent Penny Steinkuehler Perkins.

(*Id.* ¶ 115(f)). "During each of these communications," Plaintiff alleges, "Cook had the opportunity to disclose the defects of the Cook Celect filter to [Plaintiff's] physician, Dr. Chandwaney, yet they never note they did." (*Id.* ¶ 115).

Plaintiff's amended fraudulent concealment allegations are insufficient for several reasons. First, although paragraphs 115(a)–(h) provide the dates that Dr. Chandwaney contacted Cook representatives, Plaintiff never states with particularity the *content* of those communications. Instead, he asks the court to infer what Cook failed to disclose to Dr. Chandwaney in those conversations. (*See* Filing No. 25625, Pl.'s Resp. at 14 ("The

Cook Representatives never appear to have revealed to Dr. Chandwaney in their call notes that any of his case problems much less those of Mr. Marshal's were the result of any product defect or fraud that would alert him to any possible cause of action." (quoting Filing No. 17308 at ¶ 117)); *id.* at 20 ("In this case, the reasonable inferences from the pled allegations compellingly demonstrate that [Cook] engaged in a systemic practice of withholding crucial information specifically from this Plaintiff and his physician . . . [and] underscore a pattern of selective disclosure and deliberate concealment of essential details pertaining to the device's failures and risks."); *id.* at 22 ("These and the other allegations form the basis of a wholly reasonable inference that Cook would conceal product defects and potential causes of action from the physicians it communicated with, such as Plaintiff's surgeon, as well as Plaintiff himself.")). In other words, Plaintiff asks the court to speculate that Cook failed to disclose adverse information about its filters in conversations with Dr. Chandwaney to keep Plaintiff from suing in time, which is inappropriate on a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

But even if Plaintiff had pled with particularity the contents of Dr. Chandwaney's communications with Cook, Plaintiff never alleges that Dr. Chandwaney conveyed the contents of those communications *to him*. If the contents of those communications were never relayed to Plaintiff, then those communications could not have induced him to inaction or to forego inquiry into the facts underlying a potential cause of action. *Dinwiddie*, 111 F. Supp. 3d at 1211 (explaining that fraudulent concealment requires

"some actual artifice or some affirmative act of concealment, or some misrepresentation which induces the other party to inaction, or to forego inquiry") (cleaned up)).

Finally, Plaintiff fails to allege that Cook engaged in conduct that was intended to conceal from him the existence of his cause of action. Plaintiff's only allegation concerning Cook's fraudulent concealment after his filter-related injuries stems from a contact log dated September 9, 2014:

> 9/9/14 Dr. Chanwaney communicated with Cook representative Lance Duren about three patient cases; however, the scope and content of those communications and representations has been concealed. This note was created by Cook through its agent Penny Steinkuchler Perkins.

(Am. Compl., Ex. A ¶ 115(h)). This allegation does not mention Plaintiff, his cause of action, or how Cook allegedly concealed his cause of action from him. In fact, Plaintiff readily admits that he is unaware of whether his clinical case was even discussed during this conversation. (Pl.'s Resp. at 19 ("The last log produced by Defendants references that Dr. Chandwaney spoke with Cook Representative [sic] about three patient cases, *one which very likely could have been this Plaintiff*." (emphasis in original))). If Plaintiff does not know if his case was discussed, he could not possibly have relied on Cook's statements about his case during that conversation to delay commencing his action.[6]

Plaintiff attempts to avoid this result by asserting (1) that his failure to meet his pleading obligations is the result of Cook withholding and concealing records from this critical timeframe in discovery and (2) that he specifically alleged the significance of these communications when he pled that, "[d]uring each of these communications, Cook

[6] The same can be said for the conversations which occurred prior to his injuries.

had the opportunity to disclose the defects of the Cook Celect filter to [Plaintiff's] physician." (*Id.* at 19–20 & n.4 (quoting Am. Compl., Ex. A ¶ 115)). Neither of these arguments has merit.

First, Plaintiff's complaints about Cook's concealment of information in discovery is a red herring. Fraudulent concealment under Oklahoma law requires some affirmative act of concealment or misrepresentation that induces the plaintiff not to sue or to forgo inquiry into a potential cause of action. *Masquat*, 195 P.3d at 54–55 (citation omitted); *see also King & King Enters. v. Champlin Petroleum Co.*, 657 F.2d 1147, 1154 (10th Cir. 1981) ("The party asserting the fraudulent concealment doctrine has the burden of showing (1) the use of fraudulent means by the party who raises the ban of the statute; (2) successful concealment from the injured party; and (3) that the party claiming fraudulent concealment did not know or by the exercise of due diligence could not have known that he might have a cause of action." (citation omitted)). This means that Cook had to take affirmative action directed at concealing information from *Plaintiff* about the existence of a cause of action. Therefore, the contents of a conversation between Plaintiff's physician and a Cook representative that Plaintiff does not claim were ever relayed to him cannot plausibly form the basis of a fraudulent concealment claim because Plaintiff could not have relied on that information in delaying commencement of his action. Further discovery[7] cannot fix this fatal flaw.

---

[7] It is worth nothing that the motion before the court is to dismiss Plaintiff's fraudulent concealment claim. The court reviews the allegations put forth by Plaintiff in assessing whether he states a plausible claim for relief, not evidence produced in discovery. More importantly,

Second, Plaintiff's contention that he has specifically pled the significance of the post-injury communication by alleging that Cook had the opportunity to disclose the defects in its filter during its communications with Plaintiff's physician is unavailing. This is because under Oklahoma law, "the mere failure to disclose that a cause of action exists is not sufficient to prevent the running of the statute [of limitations]." *Wills v. Black & West, Architects*, 344 P.2d 581, 584 (Okla. 1959); *see also Dinwiddie*, 111 F. Supp. 3d at 1211 ("In Oklahoma, . . . the mere failure to disclose such material facts is not sufficient to prevent the running of the statute[.]").

Accordingly, the court finds it did not make a manifest error of law or fact when it dismissed Plaintiff's fraudulent concealment claim.

**III. Conclusion**

For the reasons just explained, Plaintiff's Motion to Reconsider and Vacate Court Order of Dismissal (Filing No. 25624) is **DENIED**.

**SO ORDERED** this 10th day of October 2024.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.

---

Plaintiff should know what Cook did to prevent him from filing his cause of action on time without the benefit of discovery.