# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |
| This Document Relates to Plaintiff:<br>PIOTR LECH<br>Civil Case No. 1:20-cv-01774 | |

**PLAINTIFF ANNA LECH, ADMINISTRATOR OF THE ESTATE OF PIOTR LECH'S MEMORANDUM OPPOSING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

## Introduction

The Cook Defendants move to dismiss a number of different cases based on Illinois law. As an initial matter, this response fully incorporates the responsive filings made by the Plaintiffs' Steering Committee. Plaintiff submits this brief as additional information for this specific case not addressed by the global response.

## Standard for Summary Judgment

On a motion for summary judgment, Cook carries the burden to demonstrate "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If Cook carries that burden, the responsibility shifts to Plaintiff to identify evidence of a genuine factual dispute. *Id.* at 322-23.

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The Court must draw all reasonable inferences in Plaintiff's favor. *Venters v. City of Delphi,* 123 F.3d 956, 962 (7th Cir. 1997).

If genuine doubts remain, and a reasonable factfinder could find for the party opposing the

1

motion, summary judgment must be denied. *See Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992).

## DISPUTED FACTS

1. Plaintiff had his Celect Filter inserted in April of 2013. Her doctors were never advised of the actual risks by Cook in the IFU, nor could they be aware of the actual risks, since the actual rates of perforation, migration, occlusion and/or fracture were not disclosed by Cook nor available in published literature until after Plaintiff's filter was inserted.

2. In 2002, Cook was prepared to conduct a clinical study involving human trials on the Gunther Tulip filter in the hopes of establishing safety and efficacy for the device. However, after learning that its competitor, C.R. Bard, was prepared to get its retrievable filter device to the market via 510(k) clearance, Cook abandoned this "pivotal study" and decided to take the same approach. *See* Exhibit E, CookMDL2570_0183121, and Exhibit F, CookMDL2570_0180213.

3. Instead of following through with this "pivotal study," Cook decided to undertake a short-term study focused only on retrievability involving 41 patients. *See* Exhibit G, Hoppe, et al. "Gunther Tulip Filter Retrievability Multicenter Study Including CT Follow-up: Final Report," June 2006 ("Hoppe 2006"). This study had a mean retrieval time of 11.1 days and did not examine the efficacy of the device at all (whether the filter actually prevents pulmonary embolism), and it did not examine the safety or efficacy of the device in a permanent capacity. Yet, even in this very limited study, Hoppe found a 21% rate of tilt after placement.

4. After receiving clearance, which was not an indication of safety, Cook began marketing the device "for the prevention of pulmonary embolism". They began receiving reports of tilt, perforation, migration, and even fracture. Moreover, Cook received numerous reports of difficulty in retrieving the device when it was used as a long term or permanent filter. Ex. A, Plunkett Rep. at 31, ¶ 44. Yet, Cook failed to perform any additional clinical studies to determine the root cause of these events. *Id.* at 30, ¶ 43. Further, Cook failed to properly report these complaints

        which included tilt, perforation and difficulty removing the device. Moreover, Cook knew these complications often were without physical symptoms. *See* Ex. A, Plunkett Rep. at 29-30, ¶ 43; *see also* Muehrcke Rep. at 1 and 10-12.

5. In 2006, if not earlier, Cook's Medical Science Officer, James Gardner, admitted concern internally to other executives at Cook that "there's not a lot of clinical evidence that demonstrates these filters actually improve patient outcomes." Exhibit H, CookMDL2570_0380878. Moreover, Dr. Gardner seemed more concerned about reimbursement than about patient safety: "My concern, which I've shared with a couple of you over the last couple years, is that one day the payers (Medicare, Medicaid, commercial plans, etc.) are going to realize they are spending an increasing amount of money on the placement and retrieval of IVC filters and that there's not a lot of clinical evidence that demonstrates these filters actually improve patient outcomes." *Id. See also* Exhibit I, CookMDL2570 _0379327.

6. In 2008, based upon most of the same studies and knowledge listed above, the Celect IVC filter was released onto the market.

7. Cook's knowledge and concealment of adverse events such as tilt, perforation, and difficulty of retrieval caused by its Gunther Tulip filter was no different with its Celect filter. The Cook Medical Science Officer's knowledge and concealment about the lack of efficacy of the Gunther Tulip was just as applicable to its Celect filter and study of the real risks of perforation, migration, embolization and fracture were not included in the company's instructions for use that accompanied the product when it was implanted in Plaintiff. *See* Exhibit J, Cook's Gunther Tulip Vena Cava Filter Instructions for Use from May 2005, December 2005, and October 2006 ("Gunther Tulip IFU"); *see also* Ex. B, Muehrcke Rep. at 12. See Celect IFU, 2008.

8. Accordingly, Cook did not study or know whether or not the Gunther Tulip or the Celect filters actually prevent pulmonary embolism. Yet they represented that was the purpose of the device. However, this critical lack of efficacy was not relayed to doctors, including Plaintiff's implanting doctor and subsequent treating doctors. Doctors cannot communicate what they do not know to their patients. *See* Ex. B, Muehrcke Rep. at 12-13. Cook's knowledge that the Gunther Tulip or Celect filters

        did not have clinical evidence that the product actually improved patient outcomes and Cook's suppression of adverse events was never communicated to patient's doctors such as in this case.

9. Further, Cook did not study the safety or efficacy of the Gunther Tulip filter or the Celect filter as a long-term or permanent device. *See* Ex. A, Plunkett Rep. at 29-30, ¶ 43 and 35, ¶ 53; *see also* Ex. B, Muehrcke Rep. at 1 and 9. This fact was also not relayed to doctors, including Plaintiff's implanting doctor and subsequent treating doctors.

10. In 2010 and 2014 the FDA issued safety notices on its website about the dangers of IVC filters. Yet, there is no evidence that Cook ever made any of Plaintiff's treating doctors aware of this information. It is undisputed that Cook never sent Plaintiff's treating doctors any warnings about the lack of efficacy, tilt, perforation or the difficulty in retrieving a device or that the filters should be monitored. Consequently, the filter was not monitored to understand if Plaintiff no longer needed the filter.

11. As years went by, the scientific literature disclosed that Cook Gunther Tulip and Celect filters had a 78-93% rate of perforation, and a 4.3-12.5% migration rate. "Evidence -Based Evaluation of Inferior Vena Cava Filter Complications Based Upon Filter Type". Semin. Interventional Radiology, June 2016, 93-100, This 78-93% rate of perforation (or any high rate of perforation) and significant migration rates were never disclosed to Plaintiff's doctors or to Plaintiff by Cook before this filter was inserted.

## ARGUMENT

**1. Plaintiff has presented credible testimony and facts in support of Plaintiff's liability theories, physical injuries, and causation accruing within the relevant time periods.**

While Illinois law applies in this case, the undersigned has previously retained two experts to support to support Plaintiff's claims that (1) the Cooks filters are defective and Cook failed to warn under Indiana Law, (2) Cook mispresented the safety profile of this Cook filter to Plaintiff's doctors and Plaintiff, (3) Plaintiff has suffered physical injuries as result of Cook's conduct, and (4) the defective filter caused Plaintiff's injuries within the relevant time periods. This information

is just as valid in Illinois. These experts are: Dr. Laura Plunkett, Ph.D, DABT, a pharmacologist, toxicologist and FDA regulatory specialist, and Dr. David Muehrcke, a Harvard trained, board certified cardiothoracic surgeon. Exhibit A, Expert Report of Dr. Laura Plunkett, Ph.D, DABT, Exhibit 1 from the Deposition of Laura Plunkett, PHD, DABT ("Plunkett Rep."); Exhibit B, Expert Report of Dr. David Muehrcke, Exhibit 9 from the Deposition of Derek D. Muehrcke, M.D. ("Muehrcke Rep.").

After reviewing the history of the device, relevant internal Cook documents, the history of Mr. McDermitt's filter, and particularly the IFUs at the time McDermitt's filter was placed, Dr. Plunkett's testimony concludes:

> When considering the evidence discussed above that relates to the failure of Cook to comply with FDA regulations, the evidence shows that patient safety was compromised. Evidence shows there were serious patient complaints in the Cook complaint system that should have led the company to investigate and to provide physicians with important safety information about the risks with these devices.

Ex. A, Plunkett Rep. at 40, ¶ 59.

In her deposition, Dr. Plunkett additionally indicated the internal documents from Cook's Medical Science Officer, James Gardner, show the company mispresented the safety profile of the device to doctors such as Plaintiff's. *See* Exhibit C, Deposition of Dr. Plunkett ("Plunkett Dep.") at 247:15-24.3

Dr. Muehrcke, after reviewing relevant Cook internal documents, and the relevant literature testified:

> In short, the GT [Gunther Tulip] filter was designed and sold by Cook to help prevent pulmonary embolism. Yet, Cook has no compelling evidence that the GT filter works to prevent pulmonary embolism. Without this evidence, this filter is all risk and no benefit. The untested and unsafe condition of the filter when it was inserted and when it was utilized as a permanent filter was not something that could have been anticipated by Mr. McDermitt or his doctors. The GT filter exposed Mr. McDermitt to a risk of physical harm beyond which could have been anticipated by him or his doctors. This risk continues into the future until his filter can be removed. It is therefore my opinion that the Gunther Tulip filter is unreasonably dangerous to Mr. McDermitt.

Ex. B, Muehrcke Rep. at 15.

5

It is important to note that Celect filter was given 510k FDA approval on the basis of information provided from the Gunther Tulip filter as the predicate device. The total lack of adequate information regarding testing provided by Cook to Plaintiffs' treating physician (and to Plaintiff), coupled with the lack of information supplied about the real risk (including specific percentages) for tilt, perforation, migration and fracture creates an excellent cause of action for a failure to warn. Additionally, Cook's knowledge of the filters lack of efficacy and its failure to communicate that information to the inserting doctors bolster Plaintiff's failure to warn claim. Cook's assertion to the contrary, that the risks were well documented in the medical literature and generally known to the medical community no later than August 9, 2010, fails.

## SUMMARY

Cook's motion should be denied. The communications made by the FDA and available in the medical literature was insufficient to place the medical community on notice of the specific and actual risks associated with these products. At the very least, a fact question exists for the jury on a failure to warn.

Respectfully submitted,

                                                  **GOLDENBERG LAURICELLA, PLLC**

Dated: 3/13/2025                                    By: */s/ Stuart L. Goldenberg*
                                                                  Stuart L. Goldenberg (MN# 158719)
                                                                  800 LaSalle Avenue, Suite 2150
                                                                  Minneapolis MN 55402
                                                                  (612) 436-5027 (Tel)
                                                                  (612) 367-8107 (Fax)
                                                                  slgoldenberg@goldenberglaw.com

                                                                  **ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2025, a copy of the foregoing **PLAINTIFF ANNA LECH, ADMINISTRATOR OF THE ESTATE OF PIOTR LECH'S MEMORANDUM OPPOSING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.

Respectfully submitted,

**GOLDENBERG LAURICELLA, PLLC**

Dated: 3/17/2025

By: */s/ Stuart L. Goldenberg*
Stuart L. Goldenberg (MN# 158719)
800 LaSalle Avenue, Suite 2150
Minneapolis MN 55402
(612) 436-5027 (Tel)
(612) 367-8107 (Fax)
slgoldenberg@goldenberglaw.com

**ATTORNEY FOR PLAINTIFF**