UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | § § § § § | Case No. 1:14-ml-2570-RLY-TAB<br><br>MDL No. 2570 |
| This document relates to:<br>All cases | § § | |

**Plaintiffs' Response to Cook's Motion for New
Screening Order Concerning the Amount in Controversy**

Comes now the Plaintiffs' Steering Committee and respectfully files this response to the Cook defendants' motion for a new screening order regarding the amount in controversy (Filing No. 26849):

**Introduction**

Cook seeks yet another order requiring plaintiffs to "certify that their respective cases are properly in federal court in the first place…." (Motion 8.) The motion is just another cynical delay tactic unfair to plaintiffs. As ever, Cook attacks both plaintiffs and their counsel. And as ever, plaintiffs choose not to respond in kind.[1] For the reasons set forth below, Cook's motion should be denied.

---

[1] Perhaps we should be grateful that this time – Cook at least has not referred to plaintiffs as insects, "scurrying to the remaining dark corners" of the MDL, as it did in the earlier motion for a screening order. (Filing No. 24810, p. 21.)

1

1. **There is no "jurisdictional issue" requiring another screening order.**

Cook begins this latest motion with the statement: "The presence of low-to-no value cases in this MDL has been a source of concern for the Court" and that this issue "came to a head" with the Seventh Circuit's decision in *Sykes v. Cook Inc.*, 72 F.4th 195 (7th Cir. 2023). Cook says the existing amount-in-controversy screening order has "result[ed] in the dismissal of nearly 400 actions…." (Motion at 2; see also p. 6.) But while approximately 50 cases were indeed voluntarily dismissed, the other 340 cases were ones in which plaintiffs simply did not submit the required certifications. This does not mean these 340 plaintiffs acknowledged that they could not meet the threshold. Rather, it much more likely simply reflects the fact that this case is in its eleventh year. Hundreds of plaintiffs have died, and plaintiffs continue to die at a rate of approximately one every three days. Many plaintiffs have moved and are no longer findable by their attorneys. These facts do not support entry of yet another make-work screening order; instead, they simply reflect the extreme age of this MDL.

Cook next cites the Court's order in a single case, to support the notion that concerns about subject matter jurisdiction now hang over the entire litigation. In the *Paula Harris* case, in which, according to Cook, plaintiff "claimed injury based solely on a failed percutaneous filter removal, a category 5 injury[,]" (Motion at 6,) Cook moved for summary judgment on the basis of limitations. The Court issued an order requiring her to file a new amended complaint containing jurisdictional allegations. Ms. Harris did this on December 31, 2024, in Filing No. 26374. Nothing has happened in her case since then. This single case can hardly be taken to support the imposition

of another screening order on the thousands of plaintiffs remaining in this MDL. Judging by the experience in the *Harris* case, all that will happen is that thousands more certifications will be filed, stating that claims meet the $75,000 threshold. What is the point of such an exercise, other than to put plaintiffs and their counsel to yet more work?

Cook argues that "any jurisdictional issues" should be resolved before any cases are remanded. This is, of course, reveals the true motivation for Cook's motion: Delay still longer the remand of a single case in this MDL – even cases about which Cook concedes that the threshold is met, and even though not a single case has been remanded from this MDL after eleven years. The cases Cook cites are inapposite, and all relate to a different issue entirely.

In *In re Ivy*, 901 F.2d 7 (2d Cir. 1990), the Second Circuit simply denied a writ of mandamus sought by plaintiffs, to compel the Judicial Panel on Multidistrict Litigation to vacate its order transferring plaintiffs' case to an MDL. Plaintiffs had moved for remand to state court in the transferor federal district court and had argued that since federal jurisdiction was lacking in the first place, the Panel had no power to order transfer.

The court held simply that transferee courts are entitled to (and frequently do) decide motions for remand to state court, and so mandamus would not issue. Cook quotes the Second Circuit's statement that once cases are transferred to the MDL, "the jurisdictional objections can be heard and resolved by a single court and reviewed at the appellate level in due course." But again, there are not, and never have been,

3

any such objections in this MDL, since Cook has never objected to jurisdiction in any individual case. *Ivy* does not apply here.

Cook also cites two other district court cases from Illinois to the same effect. (Motion at 8.) But many cases, including more recent cases, refuse to follow *Ivy*. *See, e.g., Conroy v. Fresh Del Monte Produce, Inc.*, 325 F. Supp. 2d 1049, 1053-54 (N.D. Cal. 2004); *Rechtenbach v. America Online, Inc.*, 2000 U.S. Dist. LEXIS 24361, at **5-6 (D.N.M. May 10, 2000).

Cook next argues that the Court has an "independent obligation" to ensure the existence of subject matter jurisdiction, and so a new order requiring thousands to sign a certification "would aid the Court in meeting its 'independent obligation' and allow the Court to resolve this jurisdictional issue on an MDL-wide basis rather than an ad hoc basis." (Motion at 7.) But, again, there is no such "jurisdictional issue."

Yes, a court always has a theoretical obligation to satisfy itself of its subject matter jurisdiction. But that has never meant that a court, in a diversity case, is required to continually have the plaintiff certify that his or her claims meet the threshold. *Such a certification has already been made for every case in this MDL: When a lawyer filed a case in federal court, he or she certified under Rule 11 that the case met the jurisdictional requirements for filing*. And when Cook removed cases to federal court, it made the same certification.

Nothing more is required. Plaintiffs are aware of no other MDL in which thousands of plaintiffs have been required to certify that they met federal jurisdictional requirements years after filing. *Sykes* certainly didn't announce such a requirement.

4

Yet the Court has *already* required it, acceding to Cook's earlier demand for such an exercise for groups of cases. Now Cook asks the Court to require it yet again, for cases that Cook presumably knew met the threshold last time. What has changed since then? Nothing.

Cook also asserts that "an analysis of the claimed injuries in this litigation confirms the necessity" of another screening order. Cook argues that certain kinds of injuries do not—in its own view, of course—"facially meet the amount-in-controversy requirement," and so certification is warranted and would "resolve this question."

No, it wouldn't. There is no "question" to be "resolved." And even if there were, does a plaintiff's unilateral statement that his or her claim meets the threshold "resolve" it? And if it does, how is such a certification any different than the certification made by every lawyer when he or she filed the case to begin with?

It must be borne in mind again, that Cook has never once challenged the existence of diversity jurisdiction at all in any case. Cook has filed every motion under the sun against plaintiffs. But, Cook has never once moved against any plaintiff, in any category, claiming that plaintiff failed to assert the existence of diversity jurisdiction in good faith. To the contrary, even after the Seventh Circuit raised the jurisdictional issue in *Sykes* and called for supplemental briefing, Cook continued to argue that the amount in controversy requirement *was* satisfied. *Sykes*, 72 F.4th at 205. Why, then, does Cook now argue that plaintiffs are trying to "park and ride" in the MDL on the *same allegations Cook has always contended support such jurisdiction?*

Finally, Cooks states:

> Leaving this fundamental jurisdictional issue unresolved on remand would only burden district courts with threshold jurisdictional questions in individual cases. Moreover, as the *Sykes* decision illustrates, early resolution of this jurisdictional issue benefits plaintiffs as well, resolving the issue of subject matter jurisdiction before plaintiffs are put to the burden of defending their claims on the merits.

But once again: *there is no issue*. If Cook had thought, even once in this litigation, that federal subject matter jurisdiction was lacking in a particular case, *it could and should have moved to dismiss such a case*. Cook has been complaining about "low-value" or "no-value" cases in this MDL for years. Why, then, has it never moved to dismiss a single one of them?

**2. *Sykes* does not require a screening order.**

Beyond what is said above, *Sykes* holds nothing more than, under the laws of Texas and Kentucky, respectively, plaintiffs Sykes and Parton could not meet the $75,000 amount-in-controversy threshold. Although neither plaintiffs nor Cook disputed the existence of subject matter jurisdiction, the Circuit Court raised the issue *sua sponte* and concluded that under the relevant states' laws – Texas for Sykes, and Kentucky for Parton – a verdict in excess of $75,000 would not survive a challenge on excessiveness grounds. *Id.* at 215-16. Both plaintiffs initially characterized their claims as Category 6 cases but then reclassified them into Category 7. Sykes alleged that after filing her complaint, she developed abdominal pain, but did not "attribute this pain to her IVC perforation in her supplemental case-categorization form or

anywhere else during discovery." Parton claimed an asymptomatic perforation. *Id*. at 204.

Cook has not even suggested what the standard for excessiveness might be under any other state's laws, or how those laws are to be applied under the analytical framework of *Sykes*. And again, it must be recalled that Cook has not actually challenged any particular plaintiff on grounds of jurisdiction.

Since Cook has not even stated what the applicable law is, and how it would apply to the vast majority of plaintiffs in this MDL who are not from Texas or Kentucky, Cook's motion should be denied on this basis alone.

### 3. Cook's motion creates several unworkable problems.

Requiring a lawyer to make a certification on this issue, in every case across the board, will inevitably create numerous problems that are unfair and prejudicial to plaintiffs.[2]

Instead, Cook should simply move to dismiss, for lack of subject matter jurisdiction any case it truly believes doesn't meet the threshold. If the Court agrees, then the case may be refiled in a state court if plaintiff wishes to pursue it. But what Cook is trying to set up is not a screening procedure for such cases; rather, it is trying to get the Court to unfairly handcuff plaintiffs in state court.

First, suppose that the lawyer certifies that the case satisfies the threshold. Also suppose, however, that the case is ultimately dismissed, voluntarily or over

---

[2] Plaintiffs previously discussed these problems in their response to Cook's first screening order motion. (Filing No. 24960, at 6-8.) Plaintiffs repeat this discussion here to preserve the arguments.

7

plaintiff's objection. Does Cook then have the right to seek sanctions, as it has done in the *Scott* case? (*See* Filing No. 24904.) In fact, in that case, Cook casts great doubt on the real substantive usefulness or significance of its proposed certification, when it states that "[a]n attorney's willingness to sign an unapproved certification is not the test for the amount-in-controversy element of diversity jurisdiction." (Filing No. 24904 at 8.)

Second, suppose the attorney states that the amount in controversy is not met, and the case is dismissed for lack of subject matter jurisdiction. If the case is refiled in state court, it can be assumed that Cook will seek to limit any recovery there to $75,000. Such an argument would go against prevailing law, however.

In Indiana, for example (where many plaintiffs might be expected to refile their cases, since Cook is headquartered here) a statement by a plaintiff in federal court, that the amount in controversy is not satisfied, does not preclude a larger award in state court. In *Harr v. Hayes*, 106 N.E.2d 515 (Ind. Ct. App. 2015), as amended on reh'g, 108 N.E.3d 405, plaintiff sued defendants for injuries resulting from a motor vehicle collision. Defendants removed on diversity grounds. The plaintiff moved for remand, arguing that the $75,000 threshold was not met. This Court (Judge Magnus-Stinson), granted the motion. See *Hayes v. Harr*, 2016 U.S. Dist. LEXIS 6387 (S.D. Ind. Jan. 20, 2016).

Back in state court, plaintiff eventually obtained a verdict for $187,500, and defendant asked the court to reduce the judgment to $75,000 "based on the doctrines

of judicial estoppel, waiver, and judicial admission." *Harr*, 106 N.E.3d at 519. The trial court denied that motion, and defendants appealed.

The court of appeals affirmed. It noted that plaintiff had asserted in federal court that the amount in controversy requirement was not met and had indeed straightforwardly stated that "diversity jurisdiction is not met in this matter because the amount in controversy does not exceed $75,000." But the court of appeals nonetheless held as follows:

> However, when viewed in the context of Hayes' argument that removal was "pre-mature in not having conducted discovery," *id*. at 52, and that Defendants had failed to meet their burden, Hayes' statements could reasonably be read to mean that the amount in controversy did not *presently* exceed $75,000—not that it would *never* exceed $75,000.

*Id*. at 522.

The same would of course be true here. Any certification made by a lawyer for a plaintiff (or by Cook in any removed case) would necessarily only be a stipulation as to the state of facts existing at the time the certification is made and could not foreclose a recovery in state court higher than $75,000. Any order entered by this Court should explicitly reflect as much.

Finally, if a plaintiff's claim is refiled in state court after a dismissal from the MDL, that plaintiff may face potential timeliness bars depending on relevant state law. These bars may take the form of affirmative defenses based on a statute of limitations or a statute of repose. And the validity of such defenses may turn, again

9

depending on state law, on whether a plaintiff's claim was dismissed voluntarily or involuntarily.

Again, such a problem may or may not exist for a plaintiff, upon refiling in state court, depending on applicable state law. Plaintiffs will not, at this juncture, set out all the potential issues that might arise. Suffice it to say that any order of dismissal should make it clear that any dismissal is involuntary. If this protection is not enforced, then no lawyer for a plaintiff who wishes to refile his or her case can be expected to agree that the amount in controversy is not met.

## Conclusion

For all of the above reasons, plaintiffs thus respectfully request that defendant's motion be in all things denied. If the Court nonetheless grants the motion, plaintiffs request that the certification in any removed case be made by Cook. Plaintiffs also request that any dismissal resulting from any certification be entered as an involuntary dismissal.

Dated: May 30, 2025.

Respectfully submitted,

*/s/ Ben C. Martin*
Ben C. Martin
**Ben Martin Law Group, PLLC**
3141 Hood St., Suite 600
Dallas, TX  75219
(214) 761-6614
bmartin@bencmartin.com

Joseph N. Williams
**Williams Law Group, LLC**
1101 North Delaware St.
Indianapolis, IN  46202

        (317) 203-9075
        joe@williamsgroup.law
        *Liaison Counsel to Plaintiffs'*
        *Steering Committee and on*
        *Behalf of Plaintiffs'*
        *Steering Committee*

        Michael Heaviside
        **Heaviside Reed Zaic**
        800 Connecticut Ave.
        Suite 300
        Washington, DC  20006
        (202) 223-1993
        mheaviside@hrzlaw.com

        David P. Matthews
        **Matthews and Associates**
        2509 Sackett St.
        Houston, TX  77098
        (713) 522-5250
        dmatthews@thematthewslawfirm.com

        Charles S. Siegel
        **Waters Kraus Paul & Siegel**
        3141 Hood St., Suite 700
        Dallas, TX  75219
        (214) 357-6244
        siegel@waterskraus.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 30, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this MDL.

        */s/ Ben C. Martin*
        Ben C. Martin