UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION § § § § § This document relates to: § All cases § | Case No. 1:14-ml-2570-RLY-TAB  MDL No. 2570 |

## Plaintiffs' Steering Committee's Opposition to Cook's Motion for Second Tulip Bellwether Plan

The Plaintiffs' Steering Committee respectfully opposes Cook's *Motion to Adopt Second Tulip Bellwether Plan* (Filing No. 26891):

## Argument

**1. This MDL has reached the point where remand—not additional bellwether trials—is the solution.**

After eleven years of litigation and extensive pretrial proceedings, this MDL has reached the stage where continued bellwether trials would impede rather than facilitate resolution. Another bellwether trial will bring this MDL no closer to resolution and will serve no practical purpose other than the expense of more time and money. Cook has been abundantly clear: If plaintiffs win a perforation trial, Cook is not going to change its 11-year course and start settling those claims. On the flipside, the loss of a perforation trial will not suddenly convince hundreds of plaintiffs to dismiss their cases after years of waiting. In other words, neither party is willing to extrapolate the result of such a bellwether trial to the docket at large. The Federal

1

Judicial Center recognizes that this is precisely the circumstance in which a bellwether trial isn't helpful: "If a party is not receptive to extrapolating to the larger docket, the bellwether process could slow, rather than facilitate, a global resolution." Melissa J. Whitney, Federal Judicial Center & Judicial Panel on Multidistrict Litigation, *Bellwether Trials in MDL Proceedings: A Guide for Transferee Judges*, at 10 (2019).

Instead of spending the next year litigating a handful of low-value lawsuits, this Court should start remanding cases. If we ever hope to resolve this MDL, it's going to require sending cases back to their home jurisdictions. Plaintiffs are dying at a rate of one every three days. We shouldn't force these people to wait any longer for a resolution that bellwether trials have proven incapable of delivering.

The first bellwether trial (a defense pick) led to a defense verdict, and the second (a plaintiffs' pick) led to a verdict of $3,000,000.00. Though a new trial was granted on an evidentiary issue, the value of an open retrieval/fracture case was established. Neither verdict, however, has done anything to move either side off of their respective positions regarding the liability and extent of individual damages in these cases. This MDL is no closer to resolution now than when the cases were filed.

## 2. If the Court nonetheless proceeds with a bellwether trial, Cook's plan needs to be changed.

Should the Court determine it must proceed with another bellwether trial, there are several changes that need to be implemented in Cook's "Second Tulip Bellwether Plan":[1]

***Lexecon Rights***. Plaintiffs should not be penalized for exercising their statutory rights under *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998). The Supreme Court held that Section 1407's remand requirement protects "substantial" interests, which are backed by "a congressional judgment that ... no discretion is to be left to a court faced with an objection to a statutory violation." *Id*. at 42. The Court warned that "the § 1407(a) mandate would lose all meaning if a party who continuously objected to an uncorrected categorical violation of the mandate could obtain no relief." *Id*. at 43.

Penalizing plaintiffs for asserting *Lexecon* objections by counting them as strikes effectively coerces waiver of statutory rights—precisely the "uncorrected categorical violation" the Supreme Court condemned. This forces an impossible choice: exercise your statutory venue rights or participate fairly in bellwether selection. Congress never intended such coercion. Treating statutory rights as tactical disadvantages eviscerates the very protections Congress mandated. Plaintiffs should be able to exercise their *Lexecon* rights without prejudice.

---

[1] Plaintiffs have attached a copy of Cook's "Second Tulip Bellwether Plan," which includes the plaintiffs' proposed changes to the plan as Exhibit A. A "clean" version of plaintiff's proposed bellwether plan is attached as Exhibit B.

3

*Timing*. Cook's proposed bellwether plan provides an unnecessarily tight timeline. For example, Cook suggests that within 25 days after creation of the Bellwether Pool every plaintiff must supplement all plaintiff fact sheets. This timeline is unworkable – most of these cases have had no activity for years. Asking counsel to supplement their fact sheets within 25 days of learning about their inclusion in the Bellwether Pool is unworkable. The PSC has proposed a new timeline, which gives the parties the time they need to accomplish the tasks set out in the order. (*See* Exs. A, B.)

*Case Selection.* Finally, the PSC suggests a hybrid approach to selecting bellwether cases that ensures representativeness while avoiding the documented problems of pure random selection: Cook picks 8 cases, the PSC picks 8 cases, and the Court randomly selects 8. This approach balances the benefits of party input with the fairness of random selection, addressing criticism that pure random selection can produce unrepresentative results.

## Conclusion

Another bellwether trial will not move us any closer to ending this MDL; only remand will. After eleven years of consolidated proceedings, this MDL has served its purpose of avoiding duplicative discovery and coordinating pretrial proceedings. The time has come to return these cases to their home venues for individualized resolution. Instead of spending the next year litigating low-value cases that won't provide meaningful guidance for the thousands of remaining claims, we should be working to establish an efficient remand timeline. That said, if the Court moves forward with

another bellwether trial, Cook's proposed order needs to be amended to remove the *Lexecon* penalties, the oppressive timeline, and implement a balanced case selection methodology.

Dated: June 5, 2025.

                                                       Respectfully submitted,

*/s/ Ben C. Martin*
Ben C. Martin
**Ben Martin Law Group**
3141 Hood St., Suite 600
Dallas, TX 75219
(214) 761-6614
bmartin@bencmartin.com

Joseph N. Williams
**Williams Law Group, LLC**
1101 North Delaware St., Suite 200
Indianapolis, IN 46202
(317) 633-5270
joe@williamsgroup.law
*Liaison Counsel to Plaintiffs'*
*Steering Committee and on*
*Behalf of Plaintiffs'*
*Steering Committee*

Michael Heaviside
**Heaviside Reed Zaic**
800 Connecticut Ave., Suite 300
Washington, DC 20006
(202) 223-1993
mheaviside@hrzlaw.com

David P. Matthews
**Matthews and Associates**
2509 Sackett St.
Houston, TX 77098
(713) 522-5250
dmatthews@thematthewslawfirm.com

5

>Charles S. Siegel
>**Waters Kraus Paul & Siegel**
>3141 Hood St.
>Suite 700
>Dallas, TX  75219
>(214) 357-6244
>siegel@waterskraus.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of June 2025, a copy of the foregoing was filed electronically.  Service of this filing will be made on all ECF registered counsel by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

> */s/ Ben C. Martin*
> Ben C. Martin