IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

This Document Relates to:

All Actions

**COOK DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR NEW SCREENING ORDER
CONCERNING AMOUNT IN CONTROVERSY**

The Cook Defendants urge the Court to grant their motion and issue an amended screening order requiring all plaintiffs in this MDL alleging injuries other than filter fracture, open filter retrieval, and death to certify that their respective actions meet the amount-in-controversy requirement for diversity jurisdiction. The Plaintiffs Steering Committee's response to Cook's motion largely repeats the same arguments that the PSC made in response to Cook's motion for the original CMO 32. *See* Dkt. 24960. Those arguments are no more effective here and do not undercut the good cause for such a motion.

**DISCUSSION**

**I.     Cook's Motion Does Not Seek to Delay the Progress of the MDL.**

Plaintiffs' response both implies and outright asserts that Cook's motion for additional certification is intended to delay the progress of this MDL. Nothing could be further from the truth; the motion is intended to *speed up* the progress and eventual resolution of this MDL. The Court's first amount-in-controversy screening order resulted in the dismissal of nearly 400 cases,

and Cook expects that the requested follow-up order will have a similar result, further reducing the number of cases pending in the MDL.

This effort to weed out cases that fail to meet the jurisdictional threshold is consistent with Cook's other actions to move this MDL forward, including its successful shorthand motions for dismissal and summary judgment on grounds of statutes of limitation and repose under CMO 28 and its repeated efforts to provide a bellwether plan for the additional bellwether trials the Court has requested. (In contrast, other than repeated requests for remand, the PSC can point to little it has done in the past five years to advance the resolution of this MDL. In fact, it has repeatedly thwarted the Court's bellwether trial efforts.)

The proposed amended order will not delay the proceedings in this MDL, and everything else—including bellwether trials—can move forward without regard to the certification process. Indeed, Cook's separate motion to adopt a new bellwether plan expressly limits eligibility for bellwether selection to cases that have already provided an amount-in-controversy certification under the present CMO-32. The Court should both adopt that bellwether plan and, at the same, time enforce the requirement that Plaintiffs certify that they meet the jurisdictional threshold.

**II.    This MDL Presents the Court with Jurisdictional Issues**

Plaintiffs focus much of their argument on their assertion that "there is no 'jurisdictional issue'" in this MDL. Dkt. 26899 at 2-6. The circumstances and history of the MDL, however, make clear that the threshold jurisdictional requirement of $75,000 is indeed a live issue here.

Plaintiffs first try to minimize the nearly 400 dismissals that resulted from the Court's initial screening order. *See* Dkt. 26899 at 2. Plaintiffs speculate that the 340 Plaintiffs[1] who failed to comply with the order for certification, leading the Court to dismiss their cases, did not

---

[1] Cook's records actually show 333 actions dismissed for noncompliance with CMO 32.

2

really "acknowledge that they could not meet the threshold." *Id.* Plaintiffs theorize instead that these Plaintiffs might have died or simply lost touch with their attorneys, *see id.*, but they offer no factual basis for that assertion.[2] Cook submits that the much more likely inference is that these Plaintiffs did not try to certify compliance because they *could not* certify compliance.

Plaintiffs also try to minimize the Court's order in the *Paula Harris* case, which required Ms. Harris to file a Second Amended Short Form Complaint because of the Court's concern about whether "Plaintiff meets the amount-in-controversy requirement." Dkt. 26319 at 2. Plaintiffs do not (and cannot) dispute that the Court saw a jurisdictional issue in the *Harris* case, arguing instead that the Court's concerns in *Harris* have no implications for the MDL as a whole. Dkt. 26899 at 2-3. But Plaintiffs identify nothing unique in the *Harris* case that would distinguish it from other MDL cases on the amount-in-controversy issue, nor do they suggest why the Court's jurisdictional concerns would be limited to that single case.

Plaintiffs quibble with Cook's citation to *In re Ivy*, 901 F.2d 7 (2d Cir. 1990), *see* Dkt. 26899 at 3-4, but they do not dispute that this Court has the authority to address the threshold jurisdictional issue of amount in controversy; indeed the Seventh Circuit confirmed that authority in its *Sykes/Parton* decision. *See also* Fed. R. Civ. P. 12(h)(3) ("If the court **determines at any time** that it lacks subject-matter jurisdiction, the court must dismiss the action." (emphasis added)). And Plaintiffs do not dispute that performing that determination at the MDL level, before remand, will serve both judicial consistency and judicial economy. *See Ivy,* 901 F.2d at 9.

---

[2] As Plaintiffs' attorneys are aware, simple abandonment is not the proper way to address either failed communication or death. If a plaintiff is unreachable or uninterested in pursuing the litigation further, then the case should be dismissed for lack of intent to prosecute under Rule 41. If a plaintiff has passed away, then the plaintiff's counsel should file a notice of suggestion of death with the Court pursuant to Rule 25.

3

Plaintiffs concede that the Court has what they call "a theoretical obligation to satisfy itself of its subject matter jurisdiction." Dkt. 26899 at 4. But the Seventh Circuit's decision in *Sykes/Parton* and this Court's original screening order make clear that this obligation is not merely "theoretical." The obligation is very real, and both the circumstances of the claims advanced in this MDL and the ease with which Plaintiffs can bring those claims raise very real questions about that jurisdiction here. Plaintiffs also argue that the amount-in-controversy certification is unnecessary because each Plaintiff has already made a similar certification under Rule 11:

> *Such a certification has already been made for every case in this MDL: When a lawyer filed a case in federal court, he or she certified under Rule 11 that the case met the jurisdictional requirements for filing.*

Dkt. 26899 at 4 (emphasis by PSC). But in this MDL the mere existence of Rule 11 is clearly not enough. After all, the attorneys in the *Sykes* and *Parton* cases certified under Rule 11 the existence of the required amount in controversy in those cases, as did the 50 Plaintiffs who voluntarily dismissed their actions in the face of the Court's initial screening order, as did the 340 Plaintiffs whose actions the Court dismissed for failure to certify the among in controversy under that screening order.

The PSC asks, "how is such a certification any different than the certification made by every lawyer when he or she filed the case to begin with?" Dkt. 26899 at 5. Plaintiffs' question is apt – confirmation of jurisdiction through a screening order *should not be necessary*. But the dismissal of hundreds of cases that did not meet the jurisdictional requirement in the first instance demonstrates that the mere existence of the Rule 11 obligation was not enough to convince counsel in this MDL to screen their cases prior to filing to ensure satisfaction of the $75,000 requirement. The nearly 400 dismissed cases show that there is a real-world difference

in this MDL between a general Rule 11 certification at the start of a case and a Court-imposed requirement that the Plaintiff specifically certify the existence of the amount in controversy. Cook believes that the requested amended screening order will reveal more instances of claims that cannot survive specific scrutiny on their amounts in controversy.

Contrary to Plaintiffs' hyperbole, Cook does not ask the Court to "continually have the plaintiff certify that his or her claims meet the threshold." Dkt. 26899 at 4. Cook merely asks the Court to require Plaintiffs who have not already done so to certify—once—that the amount in controversy they allege meets the jurisdictional threshold. This one-time requirement is neither impractical nor burdensome.

Plaintiffs correctly note that Cook originally argued in the *Sykes/Parson* appeal that those two Plaintiffs had in fact met the amount-in-controversy requirement. *See* Dkt. 26899 at 5-6. But once the Seventh Circuit rejected Cook's argument and defined the specific standard applicable to the amount-in-controversy requirement under the circumstances of this MDL, Cook adapted to address that standard, as did the Court. *See, e.g.,* Dkt. 26319 ("Amended Order To Amend Short Form Complaint To Include Jurisdictional Allegations"). Plaintiffs must do likewise. *Sykes/Parton* did not turn on any unique facts in those cases, and the court's holding necessarily implicates other cases in which the Plaintiff's claim is not based on a clearly symptomatic injury.

The fact that Cook has not specifically challenged the amount in controversy in any particular case, *see* Dkt. 26899 at 5-6, is irrelevant, *see, e.g., Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented." (citation omitted)). In any event, Cook does not have the information necessary to determine how much

5

each Plaintiff is placing in controversy. Plaintiffs do have that information, and they can easily certify if that amount exceeds $75,000.[3]

### III. An Amended Screening Order is the Best Way to Resolve the Jurisdictional issue.

Plaintiffs are correct that the Seventh Circuit's decision in *Sykes/Parton* "did not require a screening order." Dkt. 26899 at 6. What the *Sykes/Parton* decision did make clear, however, is that a federal court addressing a diversity action "has an independent obligation to ensure it has jurisdiction, and it may raise an amount-in-controversy issue even if the parties do not." *Sykes v. Cook Inc.*, 72 F.4th 195, 206 (7th Cir. 2023) (citing *See Webb v. FINRA*, 889 F.3d 853, 856 (7th Cir. 2018)). In the context of an MDL like this, where the Court has thousands of cases in which it is obligated to ensure its jurisdiction, a screening order is simply the most efficient way to meet that obligation. The Court already recognized this efficiency in its initial screening order; Cook simply asks it to extend that efficient method to the other MDL cases in which the amount in controversy is not clear on the face of the individual Plaintiff's complaint.

### IV. An Amended Screening Order Would Create No Unworkable Problems.

Plaintiffs finally argue that the proposed amended screening order would "inevitably create numerous problems that are unfair and prejudicial to plaintiffs." Dkt. 26899 at 7. Plaintiffs are mistaken; this Court's own experience demonstrates that such a screening order is both workable and effective.

---

[3] Like Plaintiffs' response to Cook's original motion, Plaintiffs' current response tries to divert the focus to cases removed to federal court by Cook. Dkt. 26899 at 4, 8-10. But out of the thousands of cases presently pending in the MDL, only 12 are there because Cook removed them to federal court. *See* Dkt. 25040-4. Moreover, after transfer to the MDL, every Plaintiff in those removed cases filed a Short Form Complaint that included an allegation that there was more than $75,000 in controversy. Plaintiffs bear the burden of establishing jurisdiction, and given the Seventh Circuit decision in *Sykes*, Cook's screening order is a reasonable vehicle for the Court to confirm its jurisdiction.

6

At the threshold, the "workability" arguments Plaintiffs raise here are the same arguments they raised in opposing Cook's original motion for the existing amount-in-controversy screening order. Dkt 26899 at 7 (citing Dkt. 24960 at 6-8). (Indeed, most of the workability argument in the Plaintiff's response here is copied *verbatim* from the PSC's response to Cook's original motion. *Compare, e.g.,* Dkt. 26899 at 7-9 *with* Dkt. 24960 at 6-8.) But the Court *granted* that first motion and issued the initial screening order, notwithstanding the PSC's workability arguments, and that order worked just fine. Plaintiffs who were able to certify compliance with the amount-in-controversy requirement did so, and Plaintiffs who could not either voluntarily dismissed their actions or saw their actions dismissed by the Court for noncompliance with the order. *See* Dkt. 26344. Plaintiffs do not suggest that any of the workability issues they argue here actually arose in the implementation of the original screening order, and they offer no reason to believe that the proposed amended screening order would raise any problems that the original screening order did not.[4]

The three individual "workability problems" Plaintiffs raise are not problems at all. The PSC first speculates that Cook might seek sanctions if a case that is certified is ultimately dismissed for failure of the amount in controversy, citing Cook's submission in the *Scott* case. *See* Dkt. 26899 at 7-8. But the risk of sanctions for knowingly making a factually unsupported allegation of jurisdiction already exists, even without the screening order. As Plaintiffs themselves point out, *id.* at 4, an attorney's signature under Rule 11 certifies that a pleading's

---

[4] In the initial certification process, the Cook Defendants agreed to various Plaintiffs' lawyers' requests for extensions to address issues of client communication and case volume, including adjusted deadlines for firms with large case inventories. Should similar concerns arise in Plaintiffs' certifications under the proposed amended order, the Cook Defendants are of course willing to discuss similar extensions to permit full and orderly completion of the certification process. As noted above, such extensions would not impede the selection and preparation of new bellwether cases.

factual allegations have evidentiary support and subjects an attorney to possible sanctions if the certification is false. *See* Fed. R. Civ. P. 11(b)(3), 11(c). In short, the possibility of a request for sanctions does not render the proposed screening order unworkable; the possibility already exists. *See, e.g., Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 800 (7th Cir. 2003) ("Fed. R. Civ. P. 11(b)(3) requires the plaintiff (personally or through counsel) to establish evidentiary support, or at least a likelihood of obtaining that support, ***before*** filing suit in federal court." (emphasis in original)).

Moreover, Cook does not seek sanctions against Plaintiffs for the kind of good-faith errors described in Plaintiffs' hypothetical. Cook's suggestion of sanctions in the *Scott* case—the only example mentioned in Plaintiffs' response—presented a dramatically different procedural posture than any that could result from the proposed amended screening order. Contrary to the PSC's implication, Cook did not seek sanctions in *Scott* merely because the Plaintiff had originally alleged the required amount in controversy and then changed his mind. As the Court will recall, *Scott* was a bellwether case that had been scheduled for trial for over seven months when the Plaintiff (or his attorneys) got cold feet and tried to avoid summary judgment or trial by suddenly claiming that the case did not meet the jurisdictional amount in controversy. Cook's suggestion of sanctions was prompted not by the mere attempt to dismiss the case, but by the fact that the last-minute dismissal would render useless months of discovery and preparation by Cook and the Court and would disrupt (again) the Court's bellwether trial schedule. No such concerns would arise from the requested screening order, particularly given the screening order's focus on cases that are within the case selection pool proposed by Cook's proposal for a new bellwether trial plan.

Second, the PSC speculates that if a Plaintiff voluntarily dismisses a case for failure to meet the $75,000 amount-in-controversy requirement, Cook will try to limit recovery in any subsequent refiling in state court to $75,000. Dkt 26899 at 8-9. But in the next sentence, the PSC argues that the law in fact imposes no such limit. *Id.* (citing *Harr v. Hayes*, 106 N.E.2d 515 (Ind. Ct. App. 2015), *as amended on reh'g*, 108 N.E.3d 405). If there is no such limit, as the PSC contends, then the problem the PSC suggests does not exist. But even if the PSC is wrong and a re-filing Plaintiff's recovery would be limited, that consequence would result from applicable state law, not from any feature of the screening order. In any event, that issue is not before this Court; on the contrary, that issue by its nature could only be decided by a state court after dismissal and refiling. This Court's duty is to identify and dismiss cases that do not belong here.

Third, the PSC speculates about possible statute of limitations issues with refiling cases in state court after a federal-court dismissal. But the PSC offers no examples of where such an issue has actually arisen under the existing screening order, which would presumably present the same issue. On the contrary, the PSC asserts that

> [S]uch a problem may or may not exist for a plaintiff, upon refiling in state court, depending on applicable state law. Plaintiffs will not, at this juncture, set out all the potential issues that might arise.

Dkt 26899 at 10. Cook submits that such a vague allusion to "potential issues that might arise" is not sound argument. If such issues exist, and the PSC wants the Court to consider them, this response was the time to raise them. The PSC has chosen not to do so. In any event, again, any statute of limitations issue would not be the result of the screening order, but of a Plaintiff mistakenly alleging the existence of diversity jurisdiction based on faulty information. A federal court cannot exercise jurisdiction that it does not have simply because the consequence of not

exercising that jurisdiction would disadvantage the party who mistakenly invoked the jurisdiction in the first place.

Finally, Plaintiff's effort to shift the work to Cook by suggesting that "Cook should simply move to dismiss, for lack of subject matter juris-diction any case it truly believes doesn't meet the threshold," Dkt. 26899 at 7, not only would not *solve* any workability problems, it would *create* such problems. Cook is not in a position to "believe" how much any particular Plaintiff is putting in controversy; only the Plaintiff knows that. Neither the Court nor the parties would benefit from Cook filing hundreds of motions based on unclear jurisdictional allegations that Plaintiffs can easily clarify through certification.

Before the *Sykes/Parton* decision, both Cook and the Court took Plaintiffs at their respective words and did not question Plaintiffs' amount-in-controversy allegations. *Sykes/Parton* made established that such reliance is clearly not enough. To address this information gap, Cook proposed and the Court adopted CMO-32 to test the Plaintiffs' jurisdictional allegations, and that Order worked. The present motion simply asks the Court to expand scope of CMO-32 to other cases that do not obviously and facially meet the amount in controversy requirement.

In the end, what Plaintiff raises are not workability problems but merely possible consequences for Plaintiffs who have mistakenly asserted $75,000 in controversy without factual support. The PSC does not identify any issues with the actual *workability* of the proposed amended order. They do not claim that expanding the certification requirement to additional cases will impose any undue burden on the Plaintiffs or their attorneys, or that the requested information is unavailable, or that any logistical problems will interfere with compliance. The

PSC offers no reason to believe that the proposed amended screening order would run any less smoothly than the efficient and productive operation of the original screening order.

## CONCLUSION

For these reasons and the reasons detailed in Cook's original motion, the Cook Defendants urge the Court to enter the proposed Second Amended Case Management Order No. 32 attached to Cook's original Motion as **Exhibit A**. The Cook Defendants also request that the Court enter the proposed Seventh Amended Case Management Order No. 4, attached to Cook's original Motion as **Exhibit C**, to impose the requirements of the newly proposed screening order on newly filed cases.

Dated:  June 10, 2025                                          Respectfully submitted,

                                                               */s/ Andrea Roberts Pierson*
                                                               Andrea Roberts Pierson
                                                               Jessica Benson Cox
                                                               FAEGRE DRINKER, BIDDLE & REATH LLP
                                                               300 North Meridian Street, Suite 2500
                                                               Indianapolis, Indiana 46204
                                                               Telephone: (317) 237-0300
                                                               Andrea.Pierson@faegredrinker.com
                                                               Jessica.Cox@faegredrinker.com

                                                               Bruce Jones
                                                               FAEGRE DRINKER, BIDDLE & REATH LLP
                                                               90 South Seventh Street, Suite 2200
                                                               Minneapolis, Minnesota 55402
                                                               Telephone: (612) 766-7000
                                                               Bruce.Jones@faegredrinker.com

                                                               *Attorneys for Defendants Cook Incorporated, Cook Medical LLC f/k/a Cook Medical Incorporated, and William Cook Europe ApS*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 10, 2025, a copy of the foregoing Cook Defendants' Reply Memorandum in Support of Motion for Judgment on the Pleadings on Express Warranty Claims was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.

*/s/ Andrea Roberts Pierson*