# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | |
|---|---|
| In Re: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |

**DEFENDANTS' RESPONSE IN OPPOSITION
TO PLAINTIFFS' MOTION TO MODIFY CMO-34**

## INTRODUCTION

This motion concerns plaintiffs in the Tulip Bellwether Pool who had imaging taken of their filters before passing away (for reasons unrelated to their filters) that allegedly shows filter perforation. There are hundreds of similar cases pending in this MDL, and these cases[1] make up almost 10% of the current Bellwether Pool List (Dkt. 27160). Cook maintains these cases have no value, but Plaintiffs disagree and have been unwilling to dismiss these cases to date. The general purpose of bellwether trials is "to test the claims of causation and damages and whether the evidence applies across groups, in order to provide the necessary information as to … [among other things] the likely range of values of the various claims." Manual for Complex Litigation (4th ed.), § 22.314 (2004). Cook thus believes that cases involving deceased plaintiffs should remain on the Bellwether Pool List because the parties strongly dispute the value of Category 6 and/or 7(e) claims—both as to cases involving living and deceased plaintiffs.

---

[1] Although Plaintiffs' motion is limited to cases of "plaintiffs who were alive at the time of filing but have since passed away," there are cases on the Bellwether Pool List that were filed by estate representatives from the outset. Cook does not view the distinction of whether the plaintiff died before or after filing as **material**, and approaches this as an issue pertaining to cases involving deceased plaintiffs—whether they passed away before filing and an estate representative file the case or passed away after filing and an estate representative substituted into the case.

1

Against this backdrop, the Court should deny Plaintiffs' motion to modify CMO-34 to exclude cases involving deceased plaintiffs from the Bellwether Pool List (Dkt. 27159) for four reasons. First, the requested relief (irrespective of its merits) cannot be provided because Plaintiffs' Motion does not include a list of cases they want excluded. Second, Plaintiffs' request is premature and unnecessary because CMO-34 (Dkt. 26933) already provides mechanisms for each side to strike cases and argue to the Court what case(s) should be considered most representative for trial after the 24-case Discovery Pool is populated and the parties review the facts of those cases. Third, Plaintiffs have not established that cases involving deceased plaintiffs are inherently unrepresentative or otherwise inappropriate for bellwether selection—nor can they—for the reasons more fully outlined below. Finally, there are no evidentiary or logistical hurdles that would categorically preclude working up or trying a case involving a deceased plaintiff.

The final Bellwether Pool List (Dkt. 27160) was filed on September 22, 2025, and the Court should proceed to the next step of the bellwether selection process—picking the 24 Discovery Pool cases from the 379 cases on the list. To the extent representativeness concerns arise regarding any particular case, they are best addressed through CMO-34's existing mechanisms on an individual basis.

## ARGUMENT

**A.  The Court Cannot Provide the Relief Plaintiffs Request Because Their Motion Does Not Identify the Cases that They Seek to Remove from the Bellwether Pool List**

As an initial matter, Plaintiffs' request to exclude cases filed by "plaintiffs who were alive at the time of filing but have since passed away from causes unrelated to the Gunther Tulip filter," Dkt. 27159, Pl.'s Mot. at 1, should be denied because Plaintiffs did not identify the cases they ask to remove from the Bellwether Pool List. Effectuating Plaintiffs' requested relief therefore would

2

require additional procedures to identify the cases to exclude, which would unnecessarily delay the next steps in the bellwether selection process.

While Rule 25 requires counsel to report the death of a party to the Court when counsel becomes aware of the death, Cook is concerned that at least some plaintiffs' firms in this MDL are not maintaining consistent communication with their clients. This is evidenced by the increased number of notices of withdrawal for inability to contact clients and notices of suggestion of death filed in 2024-25, which corresponds to deadlines under CMO-32, CMO-33, and CMO-34 that required plaintiffs' firms to review their inventories and contact their clients to obtain information needed to comply with those orders. For example, Ben Martin Law Group (a large inventory holder and a firm represented in Plaintiffs' Leadership) filed 16 notices of suggestion of death recently pertaining to cases on the Bellwether Pool List, with nine of those notices filed ***more than two years*** after the death of the plaintiff.[2] Because it has been a common practice in this MDL for some plaintiffs' firms to file Rule 25 years after a plaintiff passes away, Cook believes that identification of cases involving deceased plaintiffs may still be incomplete and this may explain why Plaintiffs have failed to specify which cases they are moving to exclude from the Bellwether Pool List.

Accordingly, the Court should deny Plaintiff's Motion because they have not identified the cases they wish to exclude from the Bellwether Pool List. At the last status conference, the PSC stated that it "is a really big burden to – every time we have to go through every one of our files and go through – and call every one of those clients" and that it can take firms with large inventories multiple months to do so. Hearing Tr. (June 12, 2025), at 47-48, attached as **Exhibit**

---

[2] In the *Vinnik* case, the plaintiff died on June 13, 2019, but the notice was not filed until February 13, 2025, more than five years later. *See* Dkt. 26480 (*Vinnik* Rule 25 notice). And, in the *Matthew Brown* case, the plaintiff died on January 14, 2021, but the Rule 2025 notice was not filed until February 14, 2025, more than four years later. *See* Dkt. 26486 (*Brown* Rule 25 notice).

**A.** The lack of promptness with notifying the Court about plaintiffs passing away suggests that preparing a list of cases involving deceased plaintiffs and ensuring its accuracy would take additional time and procedures for all plaintiffs on the Bellwether Pool List to be contacted. This would unnecessarily delay the next steps in the bellwether selection process and provides reason enough to deny Plaintiffs' Motion.

**B.     Plaintiff's Motion is Premature and Unnecessary Because CMO-34 Existing Provisions Provide Ample Opportunity to Address Perceived Unrepresentativeness of any Individual Case**

Plaintiffs' Motion should be denied for the separate reason that it is premature and unnecessary because CMO-34 already provides multiple mechanisms for weeding out unrepresentative cases from the final picks that will proceed to case-specific discovery. While Cook disagrees with Plaintiffs' categorical contention that *all* cases involving deceased Plaintiffs are inherently unrepresentative (*see infra*, Sections C & D), it is possible that some cases selected for the 24-case Discovery Pool may turn out to be unrepresentative for some reason (whether the case involves a living plaintiff or not). CMO-34 anticipates this possibility and allows parties to address concerns about representativeness through strikes and briefing, rendering the modification that Plaintiffs seek unnecessary and premature because of inherent difficulties with assessing representativeness of cases in the abstract.

First, each side will have an opportunity to pick eight cases they believe are representative (and the Court will choose the last eight randomly for a total of 24 in the Discovery Pool). *See* CMO-34, Dkt. 26933, ¶ 6. If Plaintiffs believe cases involving persons who passed away after filing their actions to be unrepresentative, then we can assume those cases will not make Plaintiffs' list. Thereafter, CMO-34 allows Plaintiffs and Cook to strike four cases each from the Discovery Pool. *See* CMO-34, ¶ 8. The parties are not required to explain their reasoning for striking any

case. Thus, the strikes provide each side an opportunity to strike a case for any reason that causes the side to view the case as unrepresentative. If a case involving deceased plaintiffs is selected for the Discovery Pool and a party determines such cases is not representative or otherwise suitable to serve as a bellwether trial for some logistical or procedural reason, a party may strike the case.

Finally, each side will have an opportunity to file a six-page brief discussing the representativeness of the cases remaining in the Discovery Pool after the strikes (and *Lexecon* waivers/objections) are completed. *See* CMO-34, Dkt. 26933, ¶ 9. In the briefing, parties will be able to argue to this Court which cases they view as most representative and appropriate for trial and which cases they view as unrepresentative and otherwise inappropriate for trial. If case(s) involving deceased plaintiffs remain in the Discovery pool at that point, parties may brief the relative representativeness of any such case and argue that it is unrepresentative for some case-specific reason. Asking the Court to make decisions in the abstract about how "representative" a given case is now—before the cases Plaintiffs are asking to remove are even identified, and before the Discovery Pool cases are selected and reviewed so that actual facts can be presented to the Court—is premature and unnecessary given the process already in place through CMO-34's current provisions.

C.  **Plaintiffs Fails to Establish their Claim that Cases Involving Deceased Plaintiffs are Unrepresentative**

Plaintiffs' Motion rests on an assumption that cases involving deceased plaintiffs are inherently unrepresentative, but they fail to establish this contention. Cook's review of active cases in this MDL shows hundreds involving deceased plaintiffs, and at least 146 of those are Tulip cases. Further, at least 37 out of the 379 (almost 10%) cases on the Bellwether List involve deceased plaintiffs, and Cook believes that number could increase before final bellwether case selections are made for case-specific discovery due to concerns about underreporting and late

5

reporting of plaintiffs passing away as discussed above. Indeed, since filing the initial Bellwether Pool List on July 23, 2025 (Dkt. 26943), plaintiffs have filed notice of suggestion of death in 10 cases on that list, including notices filed in three cases over the last month.

As explained above, Cook believes it is likely this number will continue to grow, *see infra*, Section A, and the PSC agrees based on the comments they made at the last hearing. Specifically, the parties had disagreed about what the Rule 25 notices filed in Q1 of 2025 represented for the overall state of the MDL. As part of that argument, the PSC stated:

> We have said in our papers, Your Honor, that plaintiffs are dying in this litigation at roughly the rate of one every three days. And, of course, ***that understates – that undercounts it***, right, because a lot of plaintiffs, as counsel said, sometimes – you know, why file a suggestion of death if the survivor doesn't wish to pursue the litigation anymore. Close the file and that's it.[3] ***You don't file a suggestion of death***. So plaintiffs are dying at a great rate.

Ex. A, Hearing Tr. (June 12, 2025), at 45 (emphasis added). At minimum, there are hundreds of cases currently pending that involve deceased plaintiffs, and at least 10% of cases on the current Bellwether Pool List involve deceased plaintiffs, which is not on its face suggestive of a fact that these cases are the exception rather than the norm.

**D.     There Are No Categorical Evidentiary or Logistical Concerns that Preclude Holding a Trial in a Case Involving a Deceased Plaintiff**

The only reasoning that Plaintiffs give for their request is an argument that (1) pain and suffering is an important, but "inherently subjective" part of the case, that is "best conveyed through direct testimony" of the plaintiff and (2) cases with plaintiffs who passed after filing would have to rely on "alternative sources" to support claimed damages such as testimony from "friends, family members, health care providers or [evidence from] medical records." Pl.'s Mot. at 2-3. But

---

[3] Closing the file should entail filing a notice of dismissal if a Rule 25 notice and/or substitution of parties are not going to be made. Otherwise, the case would remain pending on the MDL court's docket, while the lawyer has "closed" the file.

6

this is merely an assumption that a jury could not fairly value a claim without the plaintiff's direct testimony and that all cases involving deceased plaintiffs would struggle to fairly present their claims to the jury despite the "alternative sources" of evidence.

Presumably plaintiffs who filed their lawsuits before passing away completed a PFS based on personal knowledge because CMO-4 requires the PFS to be provided within 30 days after filing. In any event, relevant medical history is documented in medical records for cases involving deceased plaintiffs to a similar degree of detail as cases involving living plaintiffs. And most cases are likely to have at least some witnesses such as a spouse, caregiver, or adult child who would be very familiar with the deceased plaintiff's experiences and could testify in support of the damages claim.

Ultimately, the contentions that Plaintiffs assert are too generalized to be addressed as a group of cases (and would apply in equal measure to cases filed by estate representatives at the outset on behalf of plaintiffs who were deceased at the time of filing, which are outside the scope of Plaintiffs' Motion). If there are specific evidentiary concerns regarding an individual case that would make the case idiosyncratic for bellwether purposes, that would be more appropriately assessed on an individual basis once the 24 Discovery Pool cases are selected. For example, it may turn out that some cases only have sparse medical records due to difficulties obtaining records from third-party providers and parties may prefer to focus on other cases for bellwether workup so they can have a more robust factual record, but this would be an individual consideration that could occur with any case, including cases of living plaintiffs. Because Plaintiffs continue to value cases involving deceased plaintiffs similarly as cases involving living plaintiffs within the same categorization, the cases involving deceased plaintiffs should not be separated out of the larger group of Tulip bellwether cases and should remain on the Bellwether Pool List.

DMS_US.373906941.1

In the event a case involving a deceased plaintiff is selected for trial after the conclusion of the multi-step selection process pursuant to CMO-34, the Court could simply instruct the jury that the plaintiff's death is not at issue and that the case encompasses a separate claimed injury unrelated to the cause of death that occurred while the decedent was alive. Thus, there is no sweeping logistical or procedural issue that would categorically preclude working up a case involving a deceased plaintiff in discovery or proceeding to trial.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's Motion and proceed with the next steps in bellwether selection based on the current Bellwether Pool List. To the extent parties have representativeness concerns, those are best addressed through CMO-34's existing mechanisms once the 24-case Discovery Pool is populated.

Dated: October 6, 2025

Respectfully submitted,

*/s/ Jessica Benson Cox*

Andrea Roberts Pierson
Jessica Benson Cox
FAEGRE DRINKER, BIDDLE & REATH LLP
300 North Meridian Street, Suite 2500
Indianapolis, Indiana 46204
Telephone: (317) 237-0300
Andrea.Pierson@faegredrinker.com
Jessica.Cox@faegredrinker.com

Bruce Jones
FAEGRE DRINKER, BIDDLE & REATH LLP
90 South Seventh Street, Suite 2200
Minneapolis, Minnesota 55402
Telephone: (612) 766-7000
Bruce.Jones@faegredrinker.com

*Attorneys for Defendants Cook Incorporated, Cook Medical LLC f/k/a Cook Medical Incorporated, William Cook Europe ApS*

## CERTIFICATE OF SERVICE

I hereby certify that on October 6, 2025, a copy of the foregoing document was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.

*/s/ Jessica Benson Cox*

DMS_US.373906941.1