IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

In Re: COOK MEDICAL, INC., IVC FILTERS          Case No. 1:14-ml-2570-RLY-TAB
MARKETING, SALES PRACTICES AND                           MDL No. 2570
PRODUCTS LIABILITY LITIGATION

_____

This Document Relates to All Actions

_____

### PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO MODIFY CASE MANAGEMENT ORDER NO. 34 TO EXCLUDE DECEASED PLAINTIFFS FROM BELLWETHER POOL AS NON-REPRESENTATIVE CASES

Bellwether trials are designed "to test the claims of causation and damages and whether the evidence applies across groups, in order to provide the necessary information as to the likely range of values of the various claims." Manual for Complex Litigation (FJC) §22.314. Courts interpreting that standard, including the Fifth Circuit in *In re Chevron U.S.A.*, 109 F.3d 1016 (5th Cir. 1997), and the Eastern District of Pennsylvania in *Polansky v. Executive Health Resources, Inc.*, 300 F. Supp. 3d 658 (E.D. Pa. 2018), have emphasized that representativeness is not optional—it is essential. The results of non-representative cases cannot be fairly extrapolated to the larger group.

The issue before the Court concerns whether cases involving plaintiffs who have passed away from causes unrelated to their IVC filters can meaningfully serve as test cases in the Gunther Tulip Bellwether Pool. These cases now represent a distinct subset of claims—ones where the central witness is unavailable, and the evidence must rely entirely on secondary sources such as medical records or relatives' recollections. Such cases cannot serve the purpose of bellwether trials, which is to generate reliable, representative information about the broader MDL population.

1

The Plaintiffs' Steering Committee does not suggest that these cases lack merit. Rather, they are simply not able to fulfill the unique purpose of a bellwether trial. Excluding them ensures that the cases advanced for trial will truly represent the circumstances of the majority of claimants, the living plaintiffs whose damages encompass both past and future losses and whose testimony provides the most accurate account of injury and suffering.

For these reasons, and as detailed below, Plaintiffs respectfully request that the Court modify Case Management Order No. 34 to exclude cases involving deceased plaintiffs from the Gunter Tulip Bellwether Pool.

## I.   ARGUMENT

### A. **Damages in Cases Involving Deceased Plaintiffs Differ Fundamentally from Living Plaintiff Cases.**

Defendants attempt to minimize the significance of the damages distinction by asserting that deceased plaintiff cases can be tried using alternative sources of proof. But this argument overlooks a critical point—the scope of legally recoverable damages, not merely the source of testimony, defines representativeness. Damages in living-plaintiff cases extend beyond the past to include ongoing and future pain, suffering, medical care, and economic loss. These categories are central to determining settlement and trial value in mass torts. In contrast, once a plaintiff passes away, any claim for future damages terminates as a matter of law. Estate representatives can recover only for past harms, and the case becomes one of static historical injury rather than ongoing loss.

This distinction is not minor; it is determinative. Bellwether trials exist to model the full spectrum of compensable harm. Including cases in which future damages are unavailable would result in verdicts and valuations that underrepresent the average claim in this MDL. Those verdicts would not reflect the value of cases where plaintiffs continue to experience filter related issues.

Defendants argue that testimony from family members, caregivers, or medical records can replace direct testimony from the plaintiff. While that statement is true, certain damages such as pain and suffering, emotional distress and mental anguish are best conveyed through personal narrative. Substituted evidence fundamentally changes the character of the damages proof and produces a trial record that cannot serve as a fair analogue for living plaintiff cases. The Manual for Complex Litigation §22.315 warns that bellwether trials should "produce information that is representative of the range of cases." Estate actions, by contrast, fall outside that range.

It is of no small significance that Bellwether trials involving living plaintiffs can offer the jury the opportunity to assess both past and future damages depending on how the issues are presented in the verdict form. Thus, the trial will provide reliable indicators of the value of cases in which the injured plaintiff has passed away before trial. The inverse circumstance, a trial in which the injured party has died, does not provide the same representative value as the jury cannot assess any amount for future damages.

B. **Cases Involving Deceased Plaintiffs Remain Outliers and Defendants have not Disputed that they are Non-Representative.**

Defendants do not meaningfully dispute that cases involving deceased plaintiffs are atypical within this MDL. Instead, they argue that such cases should remain in the Bellwether Pool because they represent a portion of the current inventory. That argument confuses numerical presence with representative value. The mere fact that a certain percentage of pending cases involve deceased plaintiffs does not make them suitable test cases under the principles governing MDL bellwethers.

As the Fifth Circuit made clear in *In re Chevron U.S.A.,* 109 F.3d 1016, 1019–20 (5th Cir. 1997), results from non-representative cases "would lack the requisite level of confidence" to guide the resolution of other claims. Likewise, *Polansky v. Executive Health Resources, Inc.,* 300

3

F. Supp. 3d 658, 662 (E.D. Pa. 2018), reaffirmed that bellwether cases must reflect "the range of factual circumstances presented by the litigation." Defendants' response offers no authority to the contrary and no explanation of how a case where the plaintiff cannot testify or recover future damages can reliably stand in for one where the plaintiff is alive.

Defendants also fail to address the practical problem that deceased-plaintiff cases depend on secondary evidence such as family recollections, records, and surrogate witnesses that change the nature of the proof. These evidentiary distinctions are precisely what make such cases outliers, not representative examples. As the courts observed in *Adams v. Deva Concepts, LLC,* 2023 U.S. Dist. LEXIS 179559, at *10, quoting *In re Methyl Tertiary Butyl Ether Products Liability Litigation*, 2007 WL 1791258, at *1 (S.D.N.Y. June 15, 2007), the bellwether process must "allow the major arguments of both parties due consideration without facing the daunting prospect of resolving every issue in every action." Including deceased plaintiff cases would do the opposite. It would complicate the process with collateral questions about estate procedures, evidentiary substitutes, and the absence of ongoing injury, none of which bear on the merits of the typical living-plaintiff claim.

In short, Defendants' response reinforces rather than refutes Plaintiffs' position: deceased plaintiff cases are legally and factually distinct, inherently non-representative, and therefore unsuitable to serve as bellwether cases in this MDL.

C. **Plaintiffs' Motion is Timely, Necessary, and Promotes Efficiency and Fairness.**

Defendants' argument that Plaintiffs' motion is premature overlooks the very purpose of Case Management Order No. 34. The purpose of defining the Bellwether Pool is to ensure that only representative cases advance to the trial stage. Including deceased-plaintiff cases now—only to strike them later—would undermine judicial efficiency and expend time and resources on cases

4

that cannot fulfill the representative function of a bellwether trial. Plaintiffs' request is narrowly tailored and seeks only to exclude cases in which the plaintiff died from causes unrelated to the Gunther Tulip filter. This approach promotes efficiency by focusing trial preparation on the cases that most accurately reflect the claims of the broader MDL population.

Defendants' focus on administrative burdens ignores the more significant harm of proceeding with unrepresentative test cases. The inclusion of deceased plaintiff cases would produce verdicts that undervalue the remaining inventory, distort settlement expectations, and delay meaningful progress toward resolution. By contrast, excluding these cases now ensures that the bellwether results reflect the reality of this MDL, namely, claims brought by living plaintiffs who continue to experience injury and loss.

For these reasons, Defendants' procedural objections fail, and the modification Plaintiffs seek is both timely and necessary to preserve the integrity and usefulness of the bellwether process."

### D.  CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court modify Case Management Order No. 34 to exclude from the Gunther Tulip Bellwether Pool any case in which the plaintiff has passed away from causes unrelated to the Cook IVC filter. Such cases are limited in damages, atypical in evidence, and fundamentally incapable of serving the representational purpose that defines the bellwether process.

Dated: October 13, 2025.

Respectfully submitted,

*/s/ Ben C. Martin*
Ben C. Martin
**Ben Martin Law Group, PLLC**
3500 Maple Avenue, Suite 400
Dallas, TX 75219
(214) 761-6614
bmartin@bencmartin.com

Joseph N. Williams
**Williams Law Group, LLC**
1101 North Delaware St., Suite 200
Indianapolis, IN 46202
(317) 633-5270
joe@williamsgroup.law
*Liaison Counsel to Plaintiffs'
Steering Committee and on
Behalf of Plaintiffs'
Steering Committee*

Michael Heaviside
**Heaviside Reed Zaic**
800 Connecticut Ave., Suite 300
Washington, DC 20006
(202) 223-1993
mheaviside@hrzlaw.com

David P. Matthews
**Matthews and Associates**
2509 Sackett St.
Houston, TX 77098
(713) 522-5250
dmatthews@thematthewslawfirm.com

Charles S. Siegel
**Waters Kraus Paul & Siegel**
3141 Hood St.
Suite 700
Dallas, TX 75219
(214) 357-6244
siegel@waterskraus.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 13th day of October 2025, a copy of the foregoing was filed electronically.  Service of this filing will be made on all ECF registered counsel by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

                                                            */s/ Ben C. Martin*
                                                            Ben C. Martin