# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

_____

IN RE COOK MEDICAL, INC., IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

_____

This Document Relates to the following
    10 Bird's Nest Cases:

*Annette Sales-Orr*, 1:16-cv-02636
*Ivan Ortiz*, 1:17-cv-01802
*Juanita Heard (Estate)*, 1:17-cv-04592
*Brent Fichtner*, 1:18-cv-00286
*Kurt Franklin*, 1:18-cv-03025
*Robert Jeffrey Arrington*, 1:18-cv-03991
*Albert D. Mathis*, 1:20-cv-02160
*Lisa and Robert Kartz, Jr.*, 1:20-cv-02581
*Amanda Callahan*, 1:22-cv-00727
*Patsy Elkins*, 1:22-cv-01352

_____

## COOK DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS BASED ON FEDERAL PREEMPTION IN BIRD'S NEST FILTER CASES

The defendants, Cook Incorporated, Cook Medical LLC, and William Cook Europe ApS (collectively, "Cook" or the "Cook Defendants"), move this Court under Federal Rule of Civil Procedure 12(c) to dismiss all claims brought by ten plaintiffs based on their experiences with the Bird's Nest Filter (the "Bird's Nest Plaintiffs") because their claims are barred by federal preemption. The Bird's Nest Plaintiffs are listed in the table attached as **Exhibit A** with their respective case numbers; docket citations for their operative short-form complaints; lead counsel; filing dates; home states; and summary of their pled, dismissed, and remaining claims.[1]

---

[1] Cook had previously filed a motion to dismiss cases involving the Bird's Nest filter based on federal preemption (Dkt. 9644), but the Court denied that motion without prejudice and without discussion, *see* Order, Dkt. 24873. Four of the current Bird's Nest Plaintiffs were subject to that prior motion, while five

The Court should adjudicate this issue in an omnibus motion because it presents a threshold preemption question common to all ten cases, and it is more efficient for the Court to hear this issue as a single motion.  *See, e.g.,* Dkt. 25387 at 8 (finding that the express-warranty issue was "common to all Plaintiffs who asserted a breach of express warranty claim in this MDL … [and] find[ing] it appropriate to rule on Cook's motion for judgment on the pleadings.").  Plaintiffs may respond collectively or individually, and Cook expects to address their arguments in an omnibus reply.[2]

## I.    INTRODUCTION

At least ten Plaintiffs in this MDL base their claims on the placement of Bird's Nest filters in their IVCs.  The Food and Drug Administration ("FDA") approved the sale of the Bird's Nest filter pursuant to a pre-market approval ("PMA") application, with the initial approval granted on April 26, 1989.  *See* Dkt. 9645-2, Bird's Nest PMA Letter.  (In contrast, the Celect and Tulip filters were cleared by the FDA under the 510k process.)  The Bird's Nest PMA has never been revoked.

Because the FDA approved the Bird's Nest filter through the PMA process, federal law preempts Plaintiffs' claims based on the use of that filter.  Except in very narrow circumstances not applicable here, Supreme Court preemption doctrine holds that state tort law claims against PMA medical devices are pre-empted by the Medical Device Amendments ("MDA"), 20 U.S.C. § 360c, et seq., to the Federal Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301, et seq. *See generally Riegel v. Medtronic, Inc.*, 552 U.S. 312 (2008) (express preemption); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001) (implied preemption).

---

of the other six cases were filed after that motion.  *See infra*, Section II.B, ¶ 18 (listing plaintiffs). The Court has never resolved the issue of whether federal law preempts claims involving the Bird's Nest filter.

[2] Should the Court deny the present motion, Cook reserves its rights to (1) assert individually all other defenses that may apply in individual cases and (2) argue that Indiana choice-of-law rules and/or Indiana law may apply in individual cases.

The Bird's Nest Plaintiffs here assert claims sounding in strict liability, negligence, implied warranty, state consumer protection statutes, and ancillary claims derivative of these primary claims. *See generally* Exhibit A (listing docket cites and claims in column titled "Remaining Claims"). Federal law preempts all of these traditional state tort and product liability causes of action they would impose requirements on Cook that are different from, and in addition to, device-specific requirements the FDA imposed when it granted the PMA for the Bird's Nest filter. The claims are also impliedly preempted under *Buckman* to the extent they are premised on violations of federal regulations, because the FDA has the sole authority to enforce alleged violations of the FDCA. *See* 21 U.S.C. § 337(a) (enforcement "shall be by and in the name of the United States"). In other words, there is no private right of action to enforce alleged violations of FDA regulations.

Although the *Riegel* court left a narrow gap for plaintiffs to potentially bring state law claims that run "parallel" to federal regulations and thus survive preemption, the Bird's Nest Plaintiffs have not pled any such parallel claims. Plaintiffs' Master Consolidated Complaint for Individual Claims ("Master Complaint"), Dkt. 213, is focused on 510(k) filters and does not even mention the Bird's Nest, much less allege parallel claims regarding the Bird's Nest that could survive preemption. Although the short-form complaint form permits plaintiffs to plead additional "other" claims and assert additional factual allegations, eight of the Bird's Nest Plaintiffs merely incorporate the Master Complaint and do not assert any additional claims or allege any additional facts on which a parallel claim could potentially be premised. The other two Plaintiffs' additional allegations in their short-form complaints present only fraudulent-concealment allegations that the Court has already rejected in motion practice specific to those claims.

Accordingly, federal law preempts the Bird's Nest Plaintiffs' claims, and the Court should dismiss these cases with prejudice for failure to state a viable claim.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    The PMA for the Bird's Nest Filter

1.    Cook applied for premarket approval of the Bird's Nest filter on July 10, 1985, and FDA granted the PMA four years later, on April 26, 1989.  *See* Dkt. 9645-2, Bird's Nest PMA Letter.  (The Court may take judicial notice of the Birds' Nest PMA status for the reasons set forth in Section III.)

2.    At the time Cook submitted its application for the Bird's Nest PMA, IVC filters were Class III devices. *See* 45 Fed. Reg 7,973 (February 5, 1980).  IVC filters were subsequently down-classified to Class II.  *See* 65 Fed. Reg 17,144 (March 31, 2000).

3.    The Bird's Nest PMA has been supplemented nine times, most recently in 2006.[3] The PMA approval, as supplemented, has remained in continuous effect and has never been revoked. *See generally id.*

### B.    The Bird's Nest Plaintiffs and their Claims

4.    The Plaintiffs' Master Complaint alleges, *inter alia*, that Cook's IVC Filters are defective and/or are marketed with inadequate warnings, and that the filters caused Plaintiffs to experience certain claimed injuries, such as perforation and fracture.[4]  *See generally* Master Complaint, Dkt. 213.

5.    The Master Complaint further alleges generally that Cook violated a litany of FDA regulations. *See id.*, ¶¶ 89–92.

---

[3] *See* FDA, *Premarket Approval (PMA) Search: Cook Bird's Nest Vena Cava Filter*, PMA Number P850049, available at https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfPMA/pma.cfm?id=P850049 (FDA website information on the Bird's Nest PMA and links to information on supplemental PMA submissions S001- S009) (last updated June 23, 2025) (accessed June 25, 2025).

[4] Pursuant to this Court's Categorization Orders, individual Plaintiffs categorize the specific injuries alleged through the case categorization process and support those claims with accompanying medical records. *See* Dkt. 25716, Sixth Amended CMO-4, ¶ 2.

6.      In their individual short-form complaints incorporating the Master Complaint, each Plaintiff identified the filter(s) at issue by checking the appropriate box in Paragraph 10 of the short-form complaint form.  The checkbox list names four filters (with the Tulip filter listed by two different names)—Gunther Tulip Mreye, Gunther Tulip Vena Cava Filter, Cook Celect Vena Cava Filter, and the Cook Celect Platinum—and it also provides a write-in field for "other" products.  Each of the Bird's Nest Plaintiffs filed a short-form complaint that identified the Bird's Nest as the filter at issue.  *See* Ex. A (listing docket cites).

7.      Plaintiffs assert individual legal claims against the Cook Defendants in Paragraph 14 of the short-form complaint by checking specific causes of action from the Master Complaint. Below the ten counts pled in the Master Complaint, the short-form complaint form includes a write-in "other" field where a Plaintiff may allege additional claims and provides blank lines for the Plaintiff to "state the facts supporting this ['other'] Count…."  *See id.*  In their operative short-form complaints, eight of the ten Bird's Nest Plaintiffs left the "other" field blank.  *See id.* (column titled "Additional Allegations Pled in SFC").

8.      Plaintiffs Amanda Callahan and Patsy Elkins asserted allegations of fraudulent concealment in their operative short-form complaints.  *See* (column titled "Additional Allegations Pled in SFC" and citing Callahan SFC, Case No. 1-22-cv-00727, Dkt. 1; Elkins SFC, Case No. 1-22-cv-01352, Dkt. 1). These allegations seek to counter a possible statute-of-limitations defense by Cook, and do not involve the merits of these Plaintiffs' claims or any issue relevant to the preemption question presented by this motion.

9.      The Court has already dismissed Plaintiff Annette Sales-Orr's strict liability claims on statute of repose grounds as the result of an earlier Cook motion.  *See* Ex. A; *see also Sales-*

*Orr* Order, Dkt. 4918 at 7–8, 15–16.  With the present motion, Cook moves to dismiss the remaining claims in her case. *See* Ex. A (column titled "Remaining Claims").[5]

10.    On November 21, 2018, the Cook Defendants filed a motion to dismiss based on preemption regarding 16 Bird's Nest cases that were pending at the time (Dkts. 9644–45).  The motion was fully briefed and included four of the ten cases subject to this motion: *Sales-Orr*, *Ortiz*, *Heard*, and *Fichtner*. *See* Dkts. 9780 (Plaintiffs' response); 9872 (Cook's reply); 10603 (Plaintiffs' surreply). On September 19, 2023, the Court denied the motion without prejudice to re-filing and without comment. *See* Dkt. 24873.

11.    On March 30, 2024, the Court granted Cook's motion for judgment on the pleadings as to all Plaintiffs' express warranty claims, including the express-warranty claims of the ten Bird's Nest Plaintiffs.  *See generally* Dkt. 25387.  Although the Court granted leave to all Plaintiffs until April 26, 2024, to amend their pleadings to try to cure the pleading deficiencies, none of the ten Bird's Nest Plaintiffs did so.

12.    On May 7, 2024, the Court dismissed all MDL Plaintiffs' fraudulent concealment claims.  *See generally* Dkt. 25589.  The order applies to all cases and therefore encompasses the fraudulent-concealment claims of the ten Plaintiffs here, including the individual allegations pled by Plaintiffs Callahan and Elkins.

13.    On October 16, 2024, the Court dismissed Plaintiffs' manufacturing-defect claims to the extent pled under the laws of 32 states.  *See* Dkt. 26157.  In the order, the Court noted that Plaintiffs have not pled a standalone manufacturing-defect claim and the only reference to manufacturing defect is a conclusory statement pled under the implied warranty claim.  *See id.* at 3.

---

[5] Plaintiff Sales-Orr alleges in her short-firm complaint that she received two filters, but the second filter is made by another manufacturer (Cordis) and is not relevant to this litigation.

14.    All ten of The Bird's Nest Plaintiffs are from states that were subject to the manufacturing-defect order discussed above.  *Compare id., with* Exhibit A (column titled "Home State").  Although Plaintiff Sales-Orr currently resides in Tennessee, the Court conducted a choice-of-law analysis as part of the statute-of-repose motion discussed above and determined that her claims are governed by Georgia substantive law.  *See Sales-Orr* Order, Dkt. 4918 at 5.[6]

15.    As a result of these previous dismissals, the only remaining claims asserted by the ten Bird's Nest Plaintiffs are:

- Count I: Strict Products Liability – Failure to Warn;

- Count II: Strict Products Liability – Design Defect;

- Count III: Negligence, but not negligent manufacturing[7];

- Count IV: Negligence per se[8];

- Count VI: Breach of Implied Warranty;

- Count VII: Violations of State Consumer Fraud and Unfair and Deceptive Trade Practices (if individually pled);

---

[6] Plaintiff Robert Arrington's short-form complaint indicates a factual connection to both Texas and New Mexico.  *See* Ex. A (column titled "Home State"); *see also* Arrington SFC, Case No. 1:18-cv-03991, Dkt. 1.  Because New Mexico and Texas claims were both part of the Court's order dismissing manufacturing defect claims (Dkt. 26157 at 3), Plaintiff Arrington's manufacturing-defect claim has already been dismissed, and no choice-of-law analysis is necessary to determine whether his claims are governed by New Mexico or Texas law.

[7] The Court has also ruled that 29 states do not allow negligence claims for product liability cases except for negligent failure to warn, negligent design, and negligent manufacturing.  *See* Dkt. 26328 at 1-2.  Regarding the other 21 states, the Court has stated it is best addressed on an individual basis whether claims of "other" types of negligence are permitted.  *Id.* at 2.  Any issue regarding "other negligence" is not relevant here because an allegation that additional duties of care apply falls squarely under the MDA's prohibition of different or additional requirements and is therefore preempted for the reasons set forth in this motion.

[8] The Cook Defendants have moved to dismiss all negligence per se claims in the MDL by a different motion (Dkt. 25835). That motion is fully briefed and remains pending.  Because this motion is wholly dispositive of the Bird's Nest Plaintiffs' cases, the negligence per se motion need not be decided as to these ten cases if the Court grants the present motion.

- Count VIII: Loss of Consortium (if individually pled by a Co-Plaintiff); and[9]

- Count XI: Punitive Damages (if individually pled by Plaintiff).

In the accompanying Exhibit A, Cook has listed the additional allegations pled, claims dismissed pursuant to other motion practice, and remaining claims in these ten cases.

### III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings after the parties have filed the complaint and answer.  Fed. R. Civ. P. 12(c); *N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998).  The standard for judgment on the pleadings under Rule 12(c) is the same as the standard under Rule 12(b)(6):  the moving defendant must show that the plaintiff has failed to state a claim that is plausible on its face.  *Lodholtz v. York Risk Servs. Grp., Inc.*, 778 F.3d 635, 639 (7th Cir. 2015); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is not facially plausible unless "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court may grant a Rule 12(c) motion if "the plaintiff cannot prove any facts that would support his claim for relief."  *N. Indiana Gun & Outdoor Shows*, 163 F.3d at 452.  The Court must "accept the plaintiff['s] well-pled facts as true and construe reasonable inferences in [the plaintiff's] favor."  *Tierney v. Advocate Health & Hosps. Corp.*, 797 F.3d 449, 451 (7th Cir. 2015). The Court need not accept the plaintiff's legal conclusions.  *Id.*; *see also Rogers v. Lincoln Towing Serv., Inc.*, 771 F.2d 194, 197 (7th Cir. 1985).

---

[9] In the *Heard* case, the estate representative substituted into the case after Ms. Heard passed away and added the survivorship claim (Count XI) to the list of claims.

When ruling on a motion to dismiss based on preemption in a medical device case, a court may take judicial notice of a product's PMA status. *See, e.g., Gray v. Stryker Corp.*, 2013 WL 633120, at *3 (S.D. Ind. Feb. 20, 2013) (analyzing 12(b)(6) motion and finding "the FDA approval letter for the Trident Device is a [publicly] and readily available 'source whose accuracy cannot reasonably be questioned' as required by Federal Rule of Evidence 201(b), the Court will exercise its discretion and take judicial notice that the [device at issue] is a Class III medical device subject to the MDA."); *Vincent v. Medtronic*, 221 F. Supp. 3d 1005, 1009 (N.D. Ill. 2016) (granting 12(b)(6) motion and explaining that "as publicly-available government agency determinations that appear on an agency website, [PMA] approvals by the FDA are subject to judicial notice."); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2001) ("[W]e hold that it was appropriate for the court to take judicial notice, under Rule 12(b)(6) of the PMA FDA granted to Stryker for marketing its [medical device]."); *Aaron v. Medtronic, Inc.*, 209 F. Supp. 3d 994, 1014 (S.D. Ohio 2016) ("Th[e] Court may take judicial notice of [defendant's] receipt of PMA from the FDA….").

## IV.    ARGUMENT

The PMA process that the FDA employed in its review and approval of the Bird's Nest filter was a rigorous safety examination expressly within the FDA's authority under the MDA. Under U.S. Supreme Court precedent, the approval of the Bird's Nest filter under that rigorous PMA process preempts all the state-law tort claims the Bird's Nest Plaintiffs assert here, and Cook is therefore entitled to judgment on the pleadings on all of those claims.

### A.    The Bird's Nest underwent FDA's rigorous PMA review process.

#### 1.    FDA's PMA process is a rigorous federal safety and effectiveness review.

The FDA regulates the sale of prescription medical devices pursuant to the MDA. Congress enacted the MDA in 1976 to expand the authority of the FDA to regulate medical devices

while also encouraging the research and development of medical device technology.  *See generally* H.R. Rep. No. 94-853.  In discharging its responsibilities under the MDA, the FDA divides medical devices into three categories based on potential health risk posed to the public.  *See* 21 U.S.C. § 360c(a)(1).  "Class I devices are those that present no unreasonable risk of illness or injury and therefore require only general manufacturing controls; Control II devices are those possessing a greater potential dangerousness and thus warranting more stringent controls; Class III devices 'presen[t] a potential unreasonable risk of illness or injury" and therefore incur the FDA's strictest regulation."  *Buckman*, 531 U.S. at 344 (quoting 21 U.S.C. § 360c(a)(1)(C)(ii)(II).  Examples of Class I devices include elastic bandages and examination gloves, examples of Class II devices include powered wheelchairs and surgical drapes, and examples of Class III devices include most implantable devices such as replacement heart valves, cerebella stimulators, and pacemakers.  *See Riegel*, 552 U.S. at 317 (internal citations to federal regulations and FDA website links omitted).

Before a manufacturer may market a Class III device in the United States, the manufacturer must provide the FDA with "'reasonable assurance' that the device is both 'safe … [and] effective under the conditions of use prescribed, recommended, or suggested in the proposed labeling thereof.'"  *Buckman*, 531 U.S. at 344 (citing 21 U.S.C. §§ 360e(d)(2)(A)-(B)).  One method for providing the FDA with "reasonable assurance" that a device is safe and effective is the PMA process.  FDA review of a PMA application is a rigorous process, requiring substantial time and energy; indeed, the FDA spends on average 1,200 hours reviewing a PMA application.  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 477 (1996).  The criteria the FDA uses to assess the safety and efficacy of a device is exacting.  *See Buckman*, 531 U.S. at 343–47 (describing PMA process).

A PMA application includes detailed information about the device's design, manufacture, and labeling, including: "a full statement of the components, ingredients, and properties and of the

- 10 -

principle or principles of operation, of such device," 21 U.S.C. § 360e(c)(1)(B); samples of the device when practicable, *id.* at § 360e(c)(1)(E); and "specimens of the labeling proposed to be used for such device," *id.* at § 360e(c)(1)(F).  Once approved, a PMA medical device may not be "manufactured, packaged, stored, distributed, or advertised in a manner that is inconsistent with any conditions to approval specified in the PMA approval order."   21 C.F.R.  § 814.80.   A manufacturer of a PMA device must seek FDA permission to make "any change to a device subject to an approved application ... that affects safety or effectiveness" of the device.   21 U.S.C. § 360e(d)(5)(A)(i).  To make such a change, the manufacturer must seek supplemental approval and "an evaluation similar to the initial application occurs."  *Warstler*, 238 F. Supp. 3d at 982.

### 2.    The Bird's Nest Filter is a PMA device.

FDA approved the sale of the Bird's Nest filter pursuant to a PMA application granted on April 26, 1989.  *See* Dkt. 9645-2, Bird's Nest PMA Letter; *see also supra*, Section III (discussing case law on judicial notice for PMA documents).[10]  Publicly available information on the FDA's website confirms that FDA received Cook's application for premarket approval of the Bird's Nest on July 10, 1985, and that the PMA was granted on April 26, 1989, the date of the letter.[11]

Consistent with *Lohr*, the nearly four years between initial submission and approval demonstrates the "rigorous" federal review FDA applied to the Bird's Nest before it permitted the filter to reach the market.  *See Lohr*, 518 U.S. at 477 (describing the exacting nature of the PMA review process as "rigorous").  The FDA website also indicates that the Bird's Nest PMA has been supplemented nine times, most recently in 2006.[12]  *See e.g., Warstler*, 238 F. Supp. at 982 (noting

---

[10] The Court may also take judicial notice of the Bird's Nest PMA Letter and related FDA information based on the authority presented in Section III, including this Court's decision to take judicial notice of FDA information for a PMA hip device in *Gray*, 2013 WL 633120, at *3.
[11] *See supra* n.4 (summarizing location of information on FDA website, which is available at https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfPMA/pma.cfm?id=P850049).
[12] *See id.* (links to FDA information on Bird's Nest supplemental PMA submissions S001-S009).

that "an evaluation similar to the initial application occurs" whenever a PMA is supplemented).

The Bird's Nest PMA, as supplemented, remains in effect today.

**B.**      **The MDA expressly preempts the Bird's Nest Plaintiffs' claims because those claims seek to impose requirements on Cook that are different from and in addition to the requirements imposed by FDA when it approved the Bird's Nest.**

Federal law preempts state law product liability claims against medical devices like the

Bird's Nest that FDA approves through the PMA process.  Prior to 1976, the introduction of new

medical devices to the marketplace was a matter left largely for the states to regulate as they saw

fit.  *See Riegel*, 552 U.S. at 315.  In 1976, Congress passed the MDA, which "swept back some

state obligations and imposed a regime of detailed federal oversight."  *Id.* at 316.  As part of that

regime, Congress enacted an express preemption provision in the MDA for medical devices:

> [N]o state or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement –
>
> (1)     Which is different from, or in addition to, any requirement applicable under this chapter to the device, and
>
> (2)     Which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a).

Congress's power to impose such federal preemption arises directly from the Supremacy

Clause of the United States Constitution.  U.S. Const. art. VI, cl. 2 ("the Laws of the United States

... shall be the supreme Law of the Land ... anything in the Constitution or Laws of any State to

the Contrary notwithstanding").  State laws that conflict with federal laws are therefore preempted

and "without effect."  *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992) (citing *Maryland*

*v. Louisiana*, 451 U.S. 725, 746 (1981)).

In *Riegel*, the seminal case on preemption in the MDA context, the Supreme Court

established a two-pronged test for determining whether federal law preempts state law claims

involving medical devices. 552 U.S. at 321–23. First, the trial court must determine whether the federal government has established requirements applicable to the device in question. *Id.* at 321–22. This prong is automatically satisfied when – as here – the FDA authorizes commercial distribution of a Class III medical device through the PMA process. *Id.* at 321–23. As confirmed by the PMA Letter, Dkt. 9645-2, the Bird's Nest satisfies this first prong.

Second, the trial court must determine whether plaintiffs' state law claims effectively impose requirements with respect to the device that are "different from, or in addition to, the federal [requirements], and that relate to safety and effectiveness." *Riegel*, 552 U.S. at 321–22. If the state law claim *does* impose different or additional duties, federal law preempts the claim. If the state-law duty does *not* impose different or additional requirements run, the state duties run "parallel" to the federal duties and are not preempted. *Id.* at 330 (citing § 260k(a)(1)).

Here, the Bird's Nest Plaintiffs' short-form complaints allege traditional state tort law and product-liability claims sounding in strict liability, negligence, breach of warranties, and state consumer protection claims, and incorporate by reference the Plaintiffs' Master Compl., Dkt. 213, where the allegations for these causes of actions are generally pled. All of these claims, regardless of legal theory, suffer from the same fatal flaw: their prima facie elements necessarily assert that Cook should have done something different than what FDA required. When FDA granted the PMA for the Bird's Nest Filter, it required that the Bird's Nest be manufactured according to the approved design and packaged with the approved warnings that the FDA had deemed safe and effective. *See* Dkt. 9645-2, Bird's Nest PMA Letter (listing requirements and approval conditions of the PMA grant). That PMA remains in effect, as supplemented, to this day. *See supra*, Section IV.A.2. Cook would violate federal regulations if it "manufactured, packaged, stored, distributed,

or advertised in a manner that is inconsistent with any conditions to approval specified in the PMA approval order."  21 C.F.R. § 814.80.

As a result, federal law expressly preempts the Bird's Nest Plaintiffs' claims because a "fact-finder could find liability even if the manufacturer had completely complied with FDA regulations," which federal law forbids.  *Wolicki-Gables v. Arrow Int'l*, 634 F.3d 1296, 1301 (11th Cir. 2011); *see also Warstler*, 238 F. Supp. 3d at 987 ("[A] state-law claim that would require a medical device to have a design *different from that approved by the FDA through the PMA process is a frontal* attack on the risk/benefit analysis that led the FDA to approve the device [in the first place]") (quoting *Caplinger v. Medtronic, Inc.*, 921 F. Supp. 2d 1206, 1222 (W.D. Okla. 2013) (emphasis in original), *aff'd*, 784 F.3d 1335 (10th Cir. 2015)).  Simply put, Cook would have violated FDA requirements, *see* 21 C.F.R. § 814.80, if it had designed or manufactured the Bird's Nest Filter differently, or if it had provided different warnings, as the Bird's Nest Plaintiffs claim Cook should have done.

Because the Bird's Nest Plaintiffs' state law claims would impose requirements different from or additional to federal requirements, federal law expressly preempts those claims, and the Court must dismiss them.  *See McCutcheon v. Zimmer Holdings, Inc.*, 586 F. Supp. 3d 917, 921–22 (N.D. Ill. 2008) (dismissing entire complaint with prejudice and noting that federal preemption "doom[ed] [plaintiff's] common-law claims"); *Warstler*, 238 F. Supp. 3d at 992 (dismissing plaintiff's claims, including strict liability claims, express and implied warranty claims and various negligence claims, on PMA preemption grounds); *Aaron*, 209 F. Supp. 3d at 1016 (finding that plaintiffs' claims "represent an attempt to use state law to violate the regulatory monopoly on medical devices which was granted to the FDA" and dismissing plaintiff's product liability, negligence, and warranty claims on preemption grounds); *Walker v. Medtronic, Inc.*, 670 F.3d 569,

581 (4th Cir. 2012) ("Because [the pump] was undisputedly designed, manufactured, and distributed in compliance with the FDA premarket approval, and [plaintiff's] common law claims exceed or differ from, rather than parallel, federal requirements, we hold that each of her specific claims for negligence, strict liability and breach of warranty is preempted.").

The character of this litigation as an MDL does not change this result. The District of Minnesota, sitting as an MDL court, dismissed the master complaint in a medical device MDL because the device at issue was a PMA device. *See In re Medtronic, Inc. Sprint Fidelis Leads Prod. Liab. Litig.*, 592 F. Supp. 2d 1147, 1165–66 (D. Minn. 2009). The ruling effectively ended the entire mass tort, with the court dismissing all 21 of plaintiffs' claims because they were either preempted or derivative of preempted claims. *See id.* The court specifically noted that "express-warranty claims are preempted for the same reason as the implied warranty claims," and that ancillary claims such as loss of consortium and unjust enrichment were derivative of preempted claims and thus also preempted. *See id.* at 1164–65. The court held that federal law also preempted misrepresentation claims and claims premised on state consumer protection statutes. *Id.* at 1165. The Court concluded:

> [T]he Court recognizes that at least some Plaintiffs have suffered injuries from using [the device] and the Court is not unsympathetic to their plight. But Plaintiffs assert claims for which the Court simply cannot provide a remedy … Plaintiffs' remedy, therefore, lies with Congress, and not with the Court (or any other court).

*Id.* at 1166.

Because the FDA's grant of the PMA specifically determined that the Bird's Nest is safe and effective, express federal preemption bars the Bird's Nest Plaintiffs from questioning that determination through state tort law. The Court should therefore dismiss the Bird Nest Plaintiffs' remaining claims.

**C.    The Bird's Nest Plaintiffs' claims are also impliedly preempted because the Supreme Court has held that only the FDA has power to enforce alleged violations of federal regulations, not private parties through private causes of action.**

To the extent the Bird's Nest Plaintiffs claim to premise their cases on alleged violations of federal regulations, *see, e.g.* Dkt. 213, Master Compl., ¶¶ 89-92 (Count IV), such claims are impliedly preempted under *Buckman*, the Supreme Court's seminal decision on implied preemption in the medical device context.[13]

The FDCA provides that all actions to enforce FDA requirements "shall be by and in the name of the United States."  21 U.S.C. § 337(a).  The Supreme Court has construed § 337(a) as impliedly preempting private causes of action "for noncompliance with medical device provisions."  *Buckman*, 531 U.S. at 349; *see also Aaron*, 209 F. Supp. 3d at 1002 ("As an alternative to private tort suits, Congress granted the FDA extensive authority to police device manufacturers ....") (citing *Buckman*, 531 U.S. at 349).  Here, Plaintiffs' Master Complaint makes general allegations about Cook's alleged non-compliance with medical device reporting requirements, including adverse-event reporting.  *See* Dkt. 213, Master Compl., ¶¶ 89–92.  To the extent the Bird's Nest Plaintiffs seek to rely on these portions of the Master Complaint for their claims, such claims are impliedly preempted.

For example, the Bird's Nest Plaintiffs allege that Cook "violated the 21 C.F.R. §803 by not maintaining accurate medical device reports regarding adverse events of tilting, fracture, migration and perforation and/or misreporting these adverse events maintained via the medical device reporting system.  *Id.*, ¶ 91(e).  But as the Northern District of Ohio explained in *Aaron*:

> Any tort claim based on an alleged failure to submit adverse-event reports to the FDA 'would not be relying on traditional state tort law which had predated' the

---

[13] These allegations are asserted under Count IV, the negligence per se claim in Plaintiffs' Master Complaint.  As noted above, the Cook Defendants have moved to dismiss that claim (Dkt. 25835) and the motion is ripe for the Court's adjudication.

> FDCA because no duty to submit reports to the FDA would exist absent the FDA and the FDCA.  Since 'the existence of these federal enactments' is therefore 'a critical element' of any such claims, those claims are impliedly preempted.

209 F. Supp. 3d at 1010 (quoting *Buckman*, 531 U.S. at 353 and holding that federal law impliedly preempted plaintiffs' failure-to-warn, negligence, and misrepresentation claims because the claims were premised on allegations regarding adverse event reporting).  Similarly, the Middle District of Florida found a failure-to-warn claim impliedly preempted because the state failure-to-warn duty is limited to information required to be provided to the learned intermediary but "the MDA requires manufacturers to provide reports of adverse events associated with a medical device to the FDA; and the information contained in these reports may or may not reach physicians." *Marmol v. St. Jude Med. Ctr.*, 132 F. Supp. 3d 1359, 1369 (M.D. Fla. 2015) (holding plaintiff's failure to warn claim impliedly preempted because it was "premised upon an FDA-reporting requirement that is not paralleled by a Florida-law duty").

As these examples illustrate, the Bird's Nest Plaintiffs cannot premise their claims on violations of federal regulations because Congress has granted exclusive enforcement power over alleged violations of FDA regulations to the FDA.  *See* 21 U.S.C. § 337(a) (requiring that all enforcement actions of FDCA "shall be by and in the name of the United States"); *McClelland*, 944 F. Supp. 2d at 1200–01 (holding that claims premised on violations of FDA regulations regarding adverse incidents were impliedly preempted as a thinly veiled attempt to "recast a claim for violation of the FDCA as a state-law negligence claim."); *Cupek v. Medtronic, Inc.*, 405 F.3d 421 (6th Cir. 2005) (affirming dismissal on implied preemption grounds of negligence per se claim that alleged violations of PMA conditions).

Simply put, there is no private right of action to enforce violations of FDA regulations, and the Bird's Nest Plaintiffs' claims that purport to assert such an action are preempted.  *See In re*

- 17 -

*Darvocet, Darvon, & Prophyxlphene Prods. Liab. Litig.*, 756 F.3d 546, 553 (6th Cir. 2012) (holding "negligence claims" premised on a "a violation of the FDCA" were impliedly preempted "because the FDA has the exclusive power to enforce the FDCA" and therefore there is "no private right of action to enforce the statute"); *Aaron*, 209 F. Supp. 3d at 1002 (same).

**D.    Plaintiffs have not pled parallel claims and therefore the parallel claim exception therefore does not apply here.**

The Bird's Nest Plaintiffs have failed to assert any claims of "parallel" state and federal duties that might allow them to invoke the narrow exception to avoid federal preemption. Courts have noted that the combined effects of express and implied preemption under *Riegel* and *Buckman* respectively preempt almost all state law causes of action based on a PMA device:

> *Riegel* and *Buckman* create a narrow gap through which a plaintiffs' state-law claim must fit if it is to escape express or implied preemption. The plaintiff must be suing for conduct that *violates* the FDCA (or else his claim is expressly preempted by § 360k(a)), but the plaintiff must not be suing *because* the conduct violates the FDCA (such a claim would be impliedly preempted under *Buckman*).

*McClelland v. Medtronic, Inc.*, 944 F. Supp. 2d 1193, 1200 (M.D. Fla. 2013) (quoting *In re Medtronic, Inc., Sprint Fidelis Leads Prod. Liab. Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010)); *see also Sprint Fidelis Leads*, 592 F. Supp. 2d at 1661 ("When Sections 337(a) and 360k(a) – as construed in *Buckman* and *Riegel*, respectively – are read together, nearly all types of claims concerning FDA-approved medical devices are preempted.").

Here, the Bird's Nest Plaintiffs have not pled parallel claims that could survive preemption, and nothing in the Master Complaint or the Bird's Nest Plaintiffs' individual short-form complaints that could support a parallel claim based on the Bird's Nest filter.

**1.    Plaintiffs' Master Complaint does not plead parallel claims relating to the Bird's Nest.**

Plaintiffs' Master Complaint does not identify the Bird's Nest Filter as a "Cook Filter." *See* Dkt. 213, Master Compl., ¶¶ 1, 22 (defining and listing "Cook Filter[s]"). The Master Complaint also focuses entirely on the 510(k) process, alleging that Cook "sought [FDA] approval to market the Cook Filters and/or its components under Section 510(k) of the Medical Device Amendment[s to the FDCA]." *Id.*, ¶ 30. But as noted above, the Bird's Nest is a PMA filter, not a 510(k) filter, so Plaintiffs' general liability theories expressly premised on 510(k) filters do not extend to the Bird's Nest. Indeed, the Master Complaint's only mention of the PMA process comes in characterizing the 510(k) process as inferior to it, conceding "the difference between the 510(k) process and the more rigorous 'premarket approval' process" and citing case law that supports Cook's argument that the Bird's Nest cases are preempted. *See id.*, ¶¶ 31–32. Given that the Master Complaint therefore does not assert any claims relating to the Bird's Nest, it certainly asserts no claims that parallel FDA regulations governing the Bird's Nest that could fit through the "narrow gap" that may survive preemption. Accordingly, the Bird's Nest Plaintiffs cannot support a parallel claim by relying on the Master Complaint.

**2.    The Bird's Nest Plaintiffs have not plead parallel claims in their Short-Form Complaints.**

Although the template short-form complaint permits Plaintiffs to allege additional "other" claims and provides space to write in "the facts supporting this 'other' Count," eight of the ten Bird's Nest Plaintiffs have not alleged any additional claims or supporting facts. *See* Exhibit A (column titled "Additional Allegations Pled in SFC"). These eight short-form complaints merely write in "Bird's Nest" in the paragraph identifying the filter, and provide the basic jurisdictional facts and information on the procedure at issue (i.e. placement date, hospital, and physician). *See id.* (citing Plaintiffs' individual short-form complaints). Although Plaintiffs Callahan and Elkins wrote in additional allegations regarding fraudulent concealment, *see id.* (column titled

- 19 -

"Additional Allegations Pled in SFC"), but nothing in those allegations alleges a state-law claim parallel to FDA regulations, and in any event the Court has already dismissed all fraudulent-concealment claims. *See* Dkt. 25589 (dismissing fraudulent-concealment claims).

The Bird's Nest Plaintiffs thus have failed to allege any parallel state-law claim that could fit through the "narrow gap" in the Supreme Court's preemption doctrine.

### 3. The Bird's Nests Plaintiffs cannot prevail under a failure to report argument.

When the parties first briefed the preemption issue regarding the Birds' Nest filter in this Court, Plaintiffs primarily argued that their failure-to-warn claims survived preemption in some jurisdictions based on their allegations in the Master Complaint that Cook failed to comply with federal adverse-event reporting regulations and that state failure-to-warn claims could serve as parallel claims to pursue this theory. *See* Dkt. 9780 at 9-18. However, courts have regularly rejected such failure-to-report arguments. For example, the Eleventh Circuit has held that failure to report claims fail because the cause of action is based on a theory of liability—a duty to report information to the FDA—that "is not one that state tort law has traditionally occupied." *Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1330 (11th Cir. 2017). And absent such a cause of action in state law, these claims amount to an impermissible attempt to enforce a duty "owed to the FDA" and not owed to a private party. Such failure-to-report claims are therefore impliedly preempted under *Buckman* for the reasons discussed above in Section III.C. *Id.*

Moreover, the ten Plaintiffs here cannot circumvent dismissal of their failure-to-warn claims by re-styling them with failure-to-report allegations because all jurisdictions relevant here have rejected such claims as having no basis in state law. Specifically, the table below shows that courts in Plaintiffs' home states (*see* Exhibit A (column titled "Home State")), as well as Indiana, have rejected failure-to-report claims because such claims lack any analogue under state law:

| State | Case Law |
| --- | --- |

| Alabama | *Rice v. Allergan USA, Inc.*, 2018 WL 1618036, at *7 (N.D. Ala. April 4, 2018) (rejecting failure-to-report claim). |
|---|---|
| Florida | *Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1330 (11th Cir. 2017) (applying Florida law and rejecting failure-to-report claim); *Marmol v. St. Jude Medical Center*, 132 F. Supp. 3d 1359, 1370 (M.D. Fla. 2015) (same). |
| Georgia | *Blevins-Ellington v. CooperSurgical, Inc.*, 2025 WL 243787, at *6 (N.D. Ga. Aug. 8, 2025) (holding that the FDCA preempted state failure-to-report claims); *Swinney v. Mylan Pharmaceuticals, Inc.*, 2023 WL 2090702 (N.D. Ga. Feb. 17, 2023) (same); *Frey v. Bayer Corp.*, 499 F. Supp. 3d 1283, 1288 (M.D. Ga. 2020) (same). |
| Indiana | *Bayer Corp. v. Leach*, 15 N.E.3d 1168, 1186-87 (Ind. Ct. App. 2020) (rejecting failure-to-report allegations as inconsistent with the Indiana Product Liability Act (IPLA) because while "there is a federal duty to report . . . we discern no viable claim for a failure to warn under the IPLA.").[14] |
| Michigan | *Hill v. Bayer Corp.*, 485 F. Supp. 3d 843 (E.D. Mich. 2020) (rejecting failure-to-report claim), *reconsideration denied*, 2020 WL 5903892 (E.D. Mich. Oct. 5, 2020); *White v. Medtronic, Inc.*, 2019 WL 1339613, at *6 (Mag. E.D. Mich. Feb. 20, 2019), *adopted*, 2019 WL 1330923 (E.D. Mich. March 25, 2019), *aff'x*, 808 F. App'x 290 (6th Cir. 2020). |
| New Mexico | *Ferguson v. Bayer Essure, Inc.*, 2023 WL 6377495, at *7 (D.N.M. Sept. 29, 2023) (rejecting failure-to-report claim); *Garcia v. Bayer Essure, Inc.*, 631 F. Supp. 3d 1026, 1036 (D.N.M. 2022) (same). |
| New York | *Tillet v. CooperSurgical, Inc.*, 2023 WL 470491, at *4 (W.D.N.Y. July 24, 2023) (rejecting failure-to-report claim); *English v. Bayer Corp.*, 468 F. Supp. 3d 573, 580 (W.D.N.Y. 2020) (same). |
| North Carolina | *McNeil-Williams v. DePuy Orthopaedics, Inc.*, 384 F. Supp. 3d 570, 575-76 (E.D.N.C. 2019) (rejecting failure-to-report claim). |
| Tennessee | *Potolicchio v. Medtronic, Inc.*, 2016 WL 3129186, at *4 (E.D. Tenn. June 2, 2016) (rejecting failure-to-report claim). |

---

[14] Although Plaintiffs have suggested in the past that federal decisions from Indiana recognize a failure-to-report claim as a parallel claim not preempted by federal law, the Indiana Court of Appeals clearly foreclosed that interpretation with its decision from 2020 in *Bayer Corp. v. Leach*. *Compare* 15 N.E.3d at 1186-87, *with McAfee v. Medtronic, Inc.*, 2016 WL 2588807, at *2 (N.D. Ind. May 5, 2016), *and Fisk v. Medtronic, Inc.*, 2017 WL 4247983, at *6 (N.D. Ind. Sept. 25, 2017).

| Texas | *Bulox v. CooperSurgical, Inc.*, 773 F. Supp. 3d 351, 363-66 (S.D. Tex. 2025) (rejecting failure-to-report claim); *Hawkins v. Bayer Corp.*, 2022 WL 2718541 (W.D. Tex. 2022) (same). |
|-------|------------------------------------------------------------------|

**E.    Plaintiffs' Loss of Consortium and Punitive Damages Claims are Derivative and Fail Because Their Substantive Claims for the Reasons Set Forth Above.**

As noted in Exhibit A, Co-Plaintiff Robert Kartz—the spouse of Plaintiff Lisa Kartz—is the only Bird's Nest Plaintiff raising a loss of consortium claim. *See* Exhibit A (columns titled "Plaintiff" and "Remaining Claims"). Under Michigan law, Mr. Kartz's loss of consortium claim is derivative of Ms. Kartz's tort claims and fails as a matter of law because all of Ms. Kartz's claims are preempted for the reasons discussed above. *See Eide v. Kelsey-Hayes Co.*, 427 N.W.2d 488, 490 (Mich. 1988) ("It is undisputed that loss of consortium is a derivative cause of action and the complaining spouse must allege a violation of the act to substantiate the claim.").

In addition, eight of the ten Bird's Nest Plaintiffs have pled a request for punitive damages. *See* Exhibit A (column "Remaining Claims"). A request for punitive damages is not a standalone claim but is dependent upon a plaintiff first establishing liability and obtaining compensatory damages. As the Supreme Court has explained, "punitive damages should only be awarded if the defendant's culpability,[15] after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." *State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). This Court has dismissed claims for loss of consortium and punitive-damages on multiple occasions as derivative of dismissed claims, as in its orders on CMO-28 motions. *See, e.g.,* Dkt. 19303 (granting CMO-28 motion on statute of

---

[15] As this Court recognized when it granted summary judgment on Plaintiffs' punitive-damages claims in all Tulip cases, every state (to the extent it allows punitive damages at all) limits the imposition of punitive damages only upon the plaintiff meeting a higher evidentiary threshold beyond negligence. *See generally In re Cook Medical, Inc. IVC Filters Litigation*, 2024 WL 5486111, at *6 (S.D. Ind. Aug. 16, 2024).

limitation grounds in the *Bush* case and holding that "Lisa's punitive damages claim, and Robert's loss of consortium claim, are derivative of Lisa's other claims.") (internal citations omitted).

For the same reasons, Plaintiffs' derivative claims for loss of consortium and punitive damages should be dismissed here.

## CONCLUSION

For the reasons stated above, the Cook Defendants respectfully request that the court dismiss with prejudice the cases filed by the Bird's Nest Plaintiffs listed in **Exhibit A** because their claims are barred by federal preemption.

Respectfully submitted,


FAEGRE BAKER DANIELS LLP


Dated: December_18, 2025                */s/ Andrea Roberts Pierson*
                                        Andrea Roberts Pierson (# 18435-49)
                                        Jessica Benson Cox (# 26259-49)
                                        FAEGRE BAKER DANIELS LLP
                                        300 North Meridian Street, Suite 2700
                                        Indianapolis, Indiana  46204
                                        Telephone:  (317) 237-0300
                                        Facsimile:  (317) 237-1000
                                        Email:  andrea.pierson@faegrebd.com
                                        Email:  jessica.cox@faegrebd.com

                                        Bruce Jones (# 179553)
                                        2200 Wells Fargo Center
                                        90 South Seventh Street
                                        Minneapolis, Minnesota  55402
                                        Telephone: (612) 766-8719
                                        Facsimile:  (612) 766-1600
                                        Email:  bruce.jones@faegrebd.com
                                        Email:  chuck.webber@faegrebd.com

                                        *Counsel for the Defendants, Cook Incorporated, Cook Medical LLC (f/k/a Cook Medical Incorporated), and William Cook Europe ApS*

- 23 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 18, 2025, a copy of the foregoing document was filed electronically, and notice of the filing will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.  Lead Counsel for Defendants will serve any non-CM/ECF registered parties.

*/s/ Andrea Roberts Pierson*