UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND          Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION           MDL No. 2570

_____

This Document Relates Only to the Following Cases:
Dinkins, Lakita, 1:16-cv-01114

_____

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR JUDGEMENT ON THE PLEADINGS**

Plaintiff, by her undersigned counsel, hereby submits this Response in Opposition to Defendants' Motion for Judgment in Plaintiff Lakita Dinkin's Case Pursuant to CMO-28 and, in support thereof, states as follows:

## I.    INTRODUCTION

Defendants contend that Plaintiff's *injury* accrued on April 24, 2014 when a physician identified a "[F]ractured IVC filter penetrating IVC."  However, this was *not evidence of an injury*, nor did Defendants provide any documentation that proves that Plaintiff was injured at that time.  Undersigned counsel is not aware of Cook ever having admitted that the mere *presence* of a fracture is a legally cognizable injury, nor is the instant Plaintiff alleging same; it is only when a fracture leads to adverse effects—perforation, migration, or surgical procedures to remove a filter or fragments—that an injury has been established.  The statute of limitations would not have begun to run on Plaintiff's cause of action when a mere fracture was diagnosed, but when she actually suffered an injury from her IVC filter.[1]  The exhibits attached to this response, which are affirmed via certification by Plaintiff, will demonstrate that this was not until well after April 24, 2014.

## II.    THE APPLICABLE STANDARD(S) OF REVIEW

Plaintiff believes that this motion should be evaluated as one for summary judgment, not as a motion on the pleadings.  However, the standards for both are noted herein.

---

[1] Defendants are incorrect in stating that "Plaintiff here does not allege a latent injury…." Defendants' Motion, p. 3. This Response will demonstrate that Plaintiff's injury *was* latent.

### A. <u>Judgment on the Pleadings</u>

A motion for judgment on the pleadings under FRCP 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under FRCP 12(b)(6). <u>Northern Indiana Gun & Outdoor Shows v. City of S. Bend</u>, 163 F.3d 449, 452 (7th Cir. 1998)(citation omitted). That standard permits dismissal only where "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." <u>Id.</u> (citations omitted). When making such a determination, a court must "view the facts in the complaint in the light most favorable to the nonmoving party." <u>Id.</u> (citations omitted).

In the case at bar, when Plaintiff initiated this action via Short Form Complaint on May 5, 2016, she had not been required to identify a specific injury; she was only required to allege that she was "making a claim" about her IVC filter. <u>Exhibit A</u>, p. 2. The Short Form Complaint fulfilled the Plaintiff's obligations. Therefore this action is not subject to dismissal under FRCP 12(c).

### B. <u>Summary Judgment</u>

A motion for judgment on the pleadings must be converted into a motion for summary judgment when "matters outside the pleadings are presented to and not excluded by the court." FRCP 12(d). If the instant Court is to consider the exhibits produced by Defendants, then this motion should be treated as one for summary judgment under FRCP 56(c). <u>Northern Indiana Gun</u>, 163 F.3d at 452. Such a motion requires the movant show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a); *see also*, <u>Zemlick v. Burkhart</u>, 164 F.4th 1004, 1010 (7th Cir. 2026).

A court deciding summary judgment must "construe the facts and draw all justifiable inferences in the nonmovant's favor." <u>Id.</u> The Court does "not weigh credibility, balance the

relative weight of conflicting evidence, choose between competing inferences, or resolve swearing contests." Flowers v. Renfro, 46 F.4th 631, 636 (7th Cir. 2022)(citing Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003)). "It is the job of the jury … to determine which party's evidence to credit." Payne, 337 F.3d at 778 (citation omitted).

In the instant matter, summary judgment is not appropriate because the medical records and other materials prove that Defendants have incorrectly asserted that the IVC filter had injured Plaintiff as of April 24, 2014.

## II.    UNDISPUTED MATERIAL FACTS

The following information is based upon documents produced by Plaintiff during the course of this litigation, including her Categorization Medical Record and her medical records (which Defendants have presented in incomplete form). If the Defendants are willing to rely on those materials, then the information therein cannot be disputed.

As the Defendants have stated, on April 24, 2014 it was documented in the medical records that the filter had fractured and was penetrating the IVC. This was determined when Plaintiff had gone to Summa Akron City Hospital for an issue *unrelated to her IVC filter*, to wit: back pain:

> HPI: 32 yo F admitted on 4/23 for back pain. Previously twisted her back on 4/20, seen in Cleveland and given pain meds. Pain has worsened and radiating down L leg. … CT Abd/Pelvis shows IVC filter with at least one fracture strut, one of which has penetrated the walls of IVC, 0 hemorrhage, and small metallic structure in the retroperitoneum. Pt denies any CP/SOB.

Exhibit B. The assessment and plan did not indicate any issue with the filter.

> Fractured IVC filter → no surgical intervention at this time. *Not related to SX.*

Exhibit B (emphasis added).  Thus, at the time Plaintiff had not suffered any injury caused by the filter.  Nor did subsequent medical records identify any injuries related to the filter.

For example, on April 28, 2014, Plaintiff underwent surgery for "lumbar decompression L2, L3, L4, L5, S1 with evacuation of epidural abscess."  The operative note contains no mention of the IVC filter, let alone any problems caused by the filter.  Exhibit C.  This was followed on May 1, 2014 by surgery for "lumbar wound I and D" (decompression and debridement).  Again, there was no mention of the IVC filter or any problems caused by the filter.  Exhibit D.

On March 1, 2015, a then-pregnant Plaintiff was admitted to Summa Akron City Hospital for low-transverse intrauterine pregnancy.  She had to undergo "low transverse cesarean delivery" and "bilateral tube ligation."  Exhibit E.  The operative report noted the *presence* of the IVC filter ("an IVC filter was in place") but did not indicate any *injuries* caused by the filter.  Exhibit E.

On April 20, 2016, Plaintiff presented for a vascular surgery outpatient consultation with Drazen Petrinec, M.D.  At the time she was not aware of any injuries caused by the filter; she was only there because she was concerned about whether it needed to be removed.

> HISTORY OF PRESENT ILLNESS:
> The patient is a 34 y.o. female who states that she is concerned about her IVC filter.  She had the filter placed in 2008 at AGMC following a severe trauma complicated by DVT and PE.  She could not be anticoagulated at the time due to her injuries.  She has had no issues with the filter but on CT scan of the abdomen in 2014 demonstrated a strut fracture with several struts extending outside of the wall of the IVC. She is concerned and wanted advice about what to do with the IVC filter.

Exhibit F, p. 1 (emphasis added).  During this consult Dr. Petrinec reviewed the April 2014 CT scan which had showed that "One strut appears to be fractured."  Exhibit F, p. 4.  He concluded, and told the Plaintiff at the time, that she had *not* been injured in any way by the fractured filter.

> Had a long discussion with her about the filter. I explained that fractured struts or struts extending outside of the vena cava is not uncommon over time. I also

discussed the fact that although <u>complications from these types of problems have been reported</u> in the literature, <u>the overall incidence of problems is low</u>. Finally, I reviewed that there is no easy or good option to remove the filter given the anatomy and type of filter. I would recommend to leave the filter in place and repeat imaging only in the event of new symptoms.

<u>Exhibit F</u>, p. 5 (emphasis added).  Again, counsel is not aware of any admission by Cook that the mere presence of a fracture is a legally cognizable injury; and Dr. Petrinec's findings therefore demonstrate the absence of injuries caused by the IVC filter.

The aforementioned Short Form Complaint filed May 5, 2016 did not require Plaintiff to specify what kind of injury (if any) she had experienced.  <u>Exhibit A</u>.  Even the Plaintiff Profile Form that was served on Defendants on July 6, 2016 did not indicate that the Plaintiff had suffered any injury from her filter; it only referenced an adverse "outcome" and "complaints"— terms that had been chosen by the Defendants:

> V. <u>Outcome</u> Attributed to Device
> Fracture

<u>Exhibit G</u>, p. 2 (emphasis added).

> VI. How <u>Outcome(s)</u> Attributed to Device Determined:
> Lumbar spine surgery on or about 4/28/2014 by Summa Akron City Hospital.

<u>Exhibit G</u>, p. 3 (emphasis added).

> VII. Current <u>Complaints</u>
> Describe all current <u>complaints</u> you attribute to the device:
> Plaintiff's filter was intended as a permanent device, but has fractured and is intruding into the caval wall. Plaintiff must now live with constant worry and anxiety about the state of her health related to her retained IVC filter and fractures, and will require lifelong monitoring of the device to ensure that the filter and fractures do not further malfunction, creating a life-threatening situation for Plaintiff.

<u>Exhibit G</u>, p. 3 (emphasis added).  Inasmuch as the Plaintiff Profile Form asked only for outcomes and complaints, no injury was (or had to be) identified.  Plaintiff's claim at the time was solely based upon "worry and anxiety" that the filter might *create* (at a future time) "a life-

threatening situation." Her concern began shortly before April 20, 2016, as it led to her

consulting Dr. Petrinec.

By the time suit was filed, Plaintiff had not yet had to undergo any surgery to remove the

filter, nor had she experienced a failed removal attempt. She had also not experienced migration

of any fractured pieces of the filter. Thus, Plaintiff did not become aware that she had suffered

any injuries from the IVC filter until after this case was put in suit as a proactive measure, not

because of the existence of a specific injury. See Exhibit H, certification of Plaintiff. As a result,

the Defendants have incorrectly asserted that the statute of limitations began to run on April 28,

2014.

III.     **LEGAL ARGUMENT**

A. **Ohio's Version of the Discovery Rule Requires an Actual Injury**

The Defendants correctly point out that this case is controlled by the Ohio statute of

limitations, codified as Ohio Rev. Code §2305.10. The most recent version of the statute

technically became effective on August 3, 2006, but the language of the statute holds that it

applies to all cases filed on or after April 7, 2005. *See* §2305.10(G). The statute codifies the

discovery rule exception to Ohio's two-year statute of limitations:

> (B)(1) For purposes of division (A) of this section, a cause of action for bodily
> injury … that is caused by exposure to … ethical medical devices accrues upon the
> date on which the plaintiff is informed by competent medical authority that the
> plaintiff *has an injury* that is related to the exposure, or upon the date on which by
> the exercise of reasonable diligence the plaintiff should have known that the
> plaintiff *has an injury* that is related to the exposure, whichever date occurs first.

Ohio Rev. Code § 2305.10(B)(1)(emphasis added). The statute requires a plaintiff to be

"informed by competent medical authority that the plaintiff has an injury that is related to the"

medical device at issue.

Federal courts applying Ohio law have further defined what information a plaintiff is required to possess to trigger the discovery rule.  "Under Ohio law governing tort claims based upon a *latent defect* or property damage, the statute of limitations does not begin to run until (1) *actual damage occurred* and (2) the plaintiff can draw some relationship between the damage and Defendant's conduct."  Allen v. Andersen Windows, Inc., 913 F. Supp. 2d 490 (S.D.Ohio 2012)(emphasis added).  *See also*, AKA Enterprises v. Hartzell Propeller, Inc., 2016 U.S. Dist. LEXIS 168385, 2016 WL 7103002 (S.D.Ohio 2016); Grant v. Memry Corp., 2006 U.S. Dist. LEXIS 69543 (N.D.Ohio 2006).  This rule mirrors decisions issued by Ohio's state courts, all of which follow the seminal decision of O'Stricker v. Jim Walter Corp., 447 N.E.2d 727 (Ohio St.1983).

In the O'Stricker decision, the Ohio Supreme Court noted that *suspicion* of the cause of an injury is not enough to trigger the statute of limitations; the standard is when the plaintiff is informed by "competent medical authority that he has been injured, or upon the date on which, by the exercise of reasonable diligence, he should have become aware that he had been injured, whichever date occurs first." 447 N.E.2d at 732.  This language was specifically incorporated into Ohio Rev. Code § 2305.10(B)(1).

The requirement of an injury has been further defined to hold that the statute of limitations does not begin when a plaintiff first noticed *symptoms,* but when a *diagnosis* was actually made.  Moldovan v. Lear Siegler, Inc., 672 F. Supp. 1023, 1026 (N.D.Ohio 1987).

> Generally, though, the plaintiff's *suspicion*, standing alone, about the source of her injury is insufficient to trigger the onset of the limitations period.
>
> .   .   .
>
> The limitations period will begin to run when a physician suggests there is a "reasonable possibility, if not a probability" that a specific product caused the plaintiff's injury.

<u>Nelson v. Sandoz Pharm. Corp.</u>, 288 F.3d 954, 966 (7th Cir. 2002)(emphasis added). Even the mere act of contacting an attorney does not indicate that a plaintiff would have been on sufficient notice to start the statute of limitations:

> The medical malpractice cases cited do not support a blanket rule that consultation with an attorney automatically triggers a statute of limitations. Furthermore, unlike the litigants in the cases cited above, who either knew or should have known the cause of their injuries when they consulted an attorney, the Plaintiff does not appear to have possessed similar knowledge when he contacted counsel. Nothing in the record suggests that the Plaintiff knew or should have known that Parlodel caused his wife's injury when he sought legal advice. Rather, as the Court has noted, the Plaintiff inquired generally about the circumstances surrounding her death and sought assistance in conducting an investigation. In the Court's view, his *generalized suspicion* that some type of wrongdoing might have occurred, *without knowledge of the cause* of his wife's injury, is insufficient to trigger the statute of limitations.

<u>Yacub v. Sandoz Pharmaceuticals Corp.</u>, 101 F. Supp.2d 852, 860-861 (S.D.Ohio 1998)(emphasis added, citation omitted).

Here, it is the Defendants' burden to demonstrate that there is "no genuine dispute as to any material fact." FRCP 56(a); <u>Zemlick</u>, 164 F.4th at 1010. They have failed to meet this burden because they have not provided proof that Plaintiff sustained an injury as of April 23, 2014. Defendants have not even identified *any* event that should have caused Plaintiff to have even a *suspicion* that her IVC filter had caused injury. There is no medical record, documentation, deposition testimony, or any other evidence that notes that Plaintiff's physicians told her that she had been injured by the filter, or that Plaintiff even suspected injury from the filter, as of April 23, 2014.

The facts clearly establish that the Plaintiff did not know or have reason to know that the IVC filter was defective and could cause injury until April 20, 2016. She filed her Short Form Complaint shortly thereafter, on May 5, 2016—well less than two years had expired. At that time, pursuant to the Ohio discovery rule, Plaintiff's claims were not time barred.

## B. A Plaintiff Must Know That a Product is Defective

As stated above, Ohio law governing tort claims based upon a latent defect also holds that the statute of limitations does not begin to run until "the plaintiff can draw some relationship between the damage *and defendant's conduct*." AKA Enters. v. Hartzell Propeller, Inc., 2016 U.S. Dist. LEXIS 168385, 2016 WL 7103002, *10 (S.D.Ohio 2016); Allen v. Andersen Windows, Inc., 913 F. Supp. 2d 490, 507 (S.D.Oh. 2012).

In Grant v. Memry Corp., *supra*, the Plaintiff had brought suit for a defective pacemaker in the United States District Court for the Eastern Circuit of the Northern District of Ohio.  This is therefore instructive on the case at bar inasmuch as both involve an implanted medical device.

The defendants therein asserted that the statute of limitations had been triggered when the plaintiff was hospitalized for syncope.  On that date, an Emergency Report stated that the myocardial infarction had to be ruled out and the functioning of his pacemaker had to be assessed.  2006 U.S. Dist. LEXIS 69543 at *13.  The defendants conceded that the Emergency Room Report did not contain evidence of a defect or even evidence that the doctor believed there to be a defect. Id.  The defendants next argued that plaintiffs should have known the pacemaker could be defective when a physician recommended upgrading the pacemaker. Id. at *16.  Again, defendants conceded that the reason for replacing the pacemaker was not because of a possible defect.

As explained by the Grant court, the Sixth Circuit has long held that a plaintiff must know that a product is defective in order for a claim to accrue and begin the statute of limitations.

> In *Dunn v. Ethicon, Inc.*, the court held that "a plaintiff must be 'alerted' to the fact that an implanted medical device is defective." 167 Fed. Appx. 539, 541 (6th Cir. 2006) (citing *Griffin v. Am. Med. Sys.*, 106 F.3d 400, 1997 U.S. App. LEXIS 26861, *2 (6th Cir. Jan. 7, 1997)). The *Dunn* court found timely the plaintiff's claim that

her absorbable sutures were defective where the plaintiff was not "alerted" to the possible defect until her doctor discovered suture material in a different body part than originally intended. In *Griffin*, the court held that the plaintiff's claim was barred because "the removal of the prosthesis alerted Griffin that the prosthesis might be defective." 1997 U.S. App. at *2 (emphasis added). Defendants maintain that Plaintiffs' claim is barred by the statute of limitations based on a parenthetical in *Dunn* that summarizes *Griffin's* holding. … After citing to *Griffin*, the parenthetical reads "(holding that the statute of limitations for a defective prosthesis begins to run as of the day it needed to be removed)." *Dunn v. Ethicon, Inc.*, 167 Fed. Appx. at 541 (emphasis added). The *Dunn* court's language, however, was intended as a reference only and it does not pre-empt a careful reading of *Griffin*, which (as stated above) holds that the claim accrued on the day the prosthesis was removed because that is the event that alerted the plaintiff to the possible defect. "No one told [the plaintiff] that the prosthesis was defective until after the prosthesis was removed." *Griffin*, 1997 U.S. App. at *2. Therefore, the relevant inquiry in the instant case is on what date Plaintiffs were alerted to the possibility that the pacemaker was defective.

2006 U.S. Dist. LEXIS 69543, *11-13.

In Grant, the plaintiffs had contended that they first knew of a defect six months after the pacemaker was replaced, when the pacemaker's recorder was downloaded and showed that the device had not been properly working.   The District Court found this to be irrelevant because it was not required to make a finding of what the plaintiffs knew and when:

> However, this is inconsequential inasmuch as Defendants have failed to meet their initial burden of showing that there is no genuine issue of fact regarding whether Plaintiffs' statute of limitations has expired. As a result, Defendants' motion for summary judgment is denied as to this issue.

Id. at *17.  Similarly, in the case at bar, Defendants have offered no proof as to when Plaintiff Lakita Dinkins first learned that her IVC filter was, or could have been, defective.  As a result, their motion must fail.

### C.  Plaintiff Does Not Object to Dismissal of Certain Claims

The Defendants also seek dismissal of Plaintiff's claims for implied warranty, express warranty, consumer protection claim, and request for punitive damages.  Plaintiff does not object to the dismissal of these claims.

## IV.    <u>CONCLUSION</u>

If the Court takes all of the facts alleged in the Short Form Complaint and the attached exhibits and certification as true and in the light most favorable to the non-moving party, as it must, it should deny Defendants' Motion.  Plaintiff therefore respectfully requests that this Honorable Court enter the attached proposed Order.

Respectfully Submitted,

<u>/s/ *Michael S. Katz*</u>
Michael S. Katz, Esq.
(admitted *pro hac vice*)
Lopez McHugh LLP
214 Flynn Avenue
Moorestown, NJ 08012
(856) 273-8500
(856) 273-8502 fax
mkatz@lopezmchugh.com
*Attorneys for Plaintiff*

Dated: June 8, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, a true and correct copy of the foregoing Response was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.

Furthermore, a courtesy copy of Plaintiff's Response with unsealed exhibits was served upon the following via electronic mail:

> Jessica Benson Cox, Esquire (Jessica.Cox@FaegreDrinker.com)
> Andrea Roberts Pierson, Esquire (Andrea.Pierson@FaegreDrinker.com)
> James Stephen Bennett, Esquire (Stephen.Bennett@FaegreDrinker.com)
> Faegre Drinker Biddle & Reath LLP
> *Attorneys for Defendants*

/s/ *Michael S. Katz*
Michael S. Katz

Dated: June 8, 2026