UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

---

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND
PRODUCTS LIABILITY LITIGATION

Case No. 1:14-ml-2570-RLY-TAB
MDL No. 2570

---

This Document Relates Only to the Following Cases:
Jones, Dana, 1:16-cv-00703

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
<u>DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

Plaintiff, by her undersigned counsel, hereby submits this Response in Opposition to Defendants' Motion for Judgment in Plaintiff Dana Jones' Case Pursuant to CMO-28 and, in support thereof, states as follows:

## I. INTRODUCTION

Defendants contend that Plaintiff's *injury* accrued on two potential dates: March of 2012 when, according to her medical records, Plaintiff was informed "that her [Cook] IVC filter was 'protruding' and needed to be replaced" or on January 18, 2013, when Plaintiff had a second filter placed because her Cook filter was "nonfunctioning." However, neither date provided evidence of *an injury*, nor did Defendants provide any documentation that proves that Plaintiff was injured at either time. Undersigned counsel is not aware of Cook ever having admitted that the mere *presence* of a protruding filter is a legally cognizable injury, nor is the instant Plaintiff alleging same. Nor have Defendants agreed that the mere presence of a fracture is a legally cognizable injury. It is only when a filter causes to adverse effects—perforation, migration, or surgical procedures to remove a filter or fragments—that an injury has been established. The statute of limitations would not have begun to run on Plaintiff's cause of action when a mere protrusion or fracture was diagnosed, but when she actually suffered an injury from her IVC filter. The exhibits attached to this response will demonstrate that this was not until *after* March 28, 2014, two years prior to filing suit.

## II. THE APPLICABLE STANDARD(S) OF REVIEW

Plaintiff believes that this motion should be evaluated as one for summary judgment, not as a motion on the pleadings. However, the standards for both are noted herein.

### A. Judgment on the Pleadings

A motion for judgment on the pleadings under FRCP 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under FRCP 12(b)(6). Northern Indiana Gun & Outdoor Shows v. City of S. Bend, 163 F.3d 449, 452 (7th Cir. 1998)(citation omitted). That standard permits dismissal only where "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." Id. (citations omitted). When making such a determination, a court must "view the facts in the complaint in the light most favorable to the nonmoving party." Id. (citations omitted).

In the case at bar, when Plaintiff initiated this action via Short Form Complaint on May 5, 2016, she had not been required to identify a specific injury; she was only required to allege that she was "making a claim" about her IVC filter. Exhibit A, p. 2. The Short Form Complaint fulfilled the Plaintiff's obligations. Therefore this action is not subject to dismissal under FRCP 12(c).

### B. Summary Judgment

A motion for judgment on the pleadings must be converted into a motion for summary judgment when "matters outside the pleadings are presented to and not excluded by the court." FRCP 12(d). If the instant Court is to consider the exhibits produced by Defendants, then this motion should be treated as one for summary judgment under FRCP 56(c). Northern Indiana Gun, 163 F.3d at 452. Such a motion requires the movant show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a); see also, Zemlick v. Burkhart, 164 F.4th 1004, 1010 (7th Cir. 2026).

A court deciding summary judgment must "construe the facts and draw all justifiable inferences in the nonmovant's favor." Id. The Court does "not weigh credibility, balance the

relative weight of conflicting evidence, choose between competing inferences, or resolve swearing contests." Flowers v. Renfro, 46 F.4th 631, 636 (7th Cir. 2022)(citing Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003)). "It is the job of the jury … to determine which party's evidence to credit." Payne, 337 F.3d at 778 (citation omitted).

In the instant matter, summary judgment is not appropriate because the medical records and other materials do not prove that the IVC filter had injured Plaintiff as of January 18, 2013 at the latest, or that Plaintiff was aware that she had been injured and that this injury was caused by the Cook IVC filter.

## II.    MATERIAL FACTS

The Defendants' Motion relies on Plaintiff's Second Amended Categorization Form and a handful of medical records, specifically a February 11, 2013 medical note that states "She had a DVT on anticoagulation on 3/2012 and was told that her IVC filter was 'protruding' and needed to be replaced." It must be noted that the Second Amended Categorization Form was completed and verified *by Plaintiff's counsel*, and the contents were based upon information that only became available to counsel after they were able to obtain and review Plaintiff's medical records. There is no evidence that Plaintiff was aware of the contents of her medical records at any time prior to first seeking assistance of counsel, including the February 11, 2013 note. Plaintiff has provided an Affidavit attesting to this, attached hereto as Exhibit A. Her lawsuit cannot be dismissed based upon a single sentence in a medical record that Plaintiff never saw.

In her Affidavit, the Plaintiff wholly denies the contents of the February 11, 2013 note. Exhibit A ¶ 1. She was never informed that her filter was protruding and needed to be replaced, either in March of 2012 or any time before or after. Exhibit A ¶¶ 4-5. The physician who wrote

the February 11, 2013 note did not tell her anything about the filter protruding and needing to be replaced. Exhibit A ¶¶ 1-2.  In 2013 she learned only that the Cook IVC filter had broken and was not functioning.  Exhibit A ¶ 6.  She was not told the filter needed to be replaced, removed, or was otherwise defective in any manner.  Exhibit A ¶¶ 7-10.  A December 19, 2014 x-ray showed only that the filter was "somewhat fragmented."  Exhibit B.  There was no indication that this had caused any problems, and Plaintiff was not informed that she had suffered an injury. Therefore, she had no reason to know that she had suffered any kind of injury from the filter until June of 2015, when she first heard of the possibility that Cook filters such as hers could possess defects.  Exhibit A ¶ 11.

The Affidavit demonstrates that Plaintiff was not aware of any injury, let alone one attributable to the filter, until after she first contacted an attorney in June of 2015.  As a result, the Defendants have incorrectly asserted when the statute of limitations began to run and have failed to meet their burden of proof for dismissal of this action.

## III.   LEGAL ARGUMENT

Under Texas law a suit for personal injury must be brought "not later than two years after the cause of action accrues." Tex. Civ. Prac. & Rem. Code § 16.003(a). The Fifth Circuit has repeatedly held that Texas law applies the discovery rule to cases where a plaintiff has been injured by an implanted device.  Brandau v. Howmedica Osteonics Corp., 439 Fed. Appx. 317 (5th Cir. 2011)(injuries from implanted knee prosthesis); Porterfield v. Ethicon, Inc., 183 F.3d 464, 467 (5th Cir. 1999)(surgically implanted mesh); Woodruff v. A.H. Robins Co., 742 F.2d 228, 229 (5th Cir. 1984) (defective IUD); Mann v. A.H. Robins Co., 741 F.2d 79, 79-81 (5th Cir.

1984)(same); <u>Pavich v. Zimmer, Inc.</u>, 157 F.3d 903, 1998 U.S. App. LEXIS 39600, 1998 WL 612290 (5th Cir. 1998)(surgically implanted rods).

In order for the Texas discovery rule to apply, the injury must be (1) inherently undiscoverable and (2) objectively verifiable. <u>Brandau</u>, 439 Fed. Appx. at 319 (citation omitted). Neither of these elements can be found to weigh in Defendants' favor.

### A.   <u>Plaintiff's Injuries Were Inherently Undiscoverable Until June 2015</u>

Texas courts define inherently undiscoverable as "not needing to be absolutely impossible to discover, but of such a nature that it is unlikely to be discovered within the prescribed limitations period despite due diligence." <u>Pavich</u>, 1998 U.S. App. LEXIS 39600 at *5-6 (citation omitted).  In <u>Pavich</u>, the plaintiff filed suit for injuries caused when rods that had been implanted in his spine broke.  He began to experience pain and heard a "popping sound" in early 1994.  He subsequently sought treatment, and on May 9, 1994 underwent testing that revealed the *possibility* that the rods might have broken.  <u>Id.</u> at *2.  This diagnosis was confirmed by x-rays taken May 31, 1994, at which time his physician told the plaintiff that it was probable the broken rods were causing his pain.  <u>Id.</u> The Fifth Circuit explained that this was an inherently undiscoverable injury:

> The nature of [plaintiff's] injury is inherently undiscoverable. There was no sudden trauma that caused the onset of his increased pain. The broken rods were not visible to the naked eye, nor were the breaks readily discernable through palpation. [Plaintiff] was not able to discover that the rods were defective until his pain began.

<u>Id.</u> at *6.  The Court held that the injury was undiscoverable until May 9, 1994, when plaintiff learned of the possibility that he had suffered broken rods.  <u>Id.</u> at *7.  The onset of pain and the popping sound were not sufficient to permit him to discover he was injured.

In <u>Brandau</u> the plaintiff underwent surgery to implant a knee prosthesis and began to experience pain three months thereafter (in January of 2008).  It was not until September 12,

2008 that a physician ordered an x-ray and determined the "threaded stem on the tibial component had worked its way loose." 439 Fed. Appx. at 322. The Fifth Circuit focused its analysis on whether the plaintiff's injury was inherently discoverable:

> Whether an injury is inherently undiscoverable "is decided on a categorical rather than case-specific basis." This "approach means we do not determine when a particular injury was actually discovered in any particular case, but rather whether that case is of the type to which the discovery rule applies."
>
> .   .   .
>
> The proper inquiry is whether Brandau's injury is in a category of injuries that have been identified as inherently undiscoverable under Texas law.

Id. at 322 (citations omitted). The Fifth Circuit held that her cause of action did not accrue when she simply began to experience pain. Id. at 321.

The Court relied on federal and state case law in holding that a plaintiff's "cause of action accrues only after they received some information regarding a tentative diagnosis, not when they begin to experience pain or discomfort." Id. at 321 (citing Vaught v. Showa Denko K.K., 107 F.3d 1137, 1140 (5th Cir. 1997) and Bell v. Showa Denko K.K., 899 S.W.2d 749, 754 (Tex. App.—Amarillo 1995, writ denied)). In Vaught it had been held that a plaintiff's cause of action accrued after she read a newspaper article concerning her ailments, connected her symptoms with a particular disease, and contacted an attorney. Id.

The plaintiff in Vaught had used L-tryptophan, a nutritional supplement, and stopped in December 1988 when she learned that she was pregnant. 107 F.3d at 1139. On April 4, 1990, she read a newspaper article about a lawsuit filed on behalf of a woman who allegedly contracted a disease from using L-tryptophan. Id. She noticed that she suffered some of the same symptoms and reached out to a law firm to obtain information. Id. However, she was not diagnosed with the disease at that time.

By the end of 1992, plaintiff's condition worsened and she again became concerned that she might have the disease. It was not until April of 1993 that she was actually diagnosed with the condition. Id. Suit was filed on her behalf on April 28, 1993 and the defendant moved for summary judgment on the basis of the statute of limitations.

The Court held that the issue was "not whether a plaintiff has actual knowledge of the particulars of a cause of action …; rather, it is whether the plaintiff has knowledge of facts which would cause a reasonable person to diligently make inquiry to determine his or her legal rights." Id. at 1141-1142 (citation omitted). Because the plaintiff had made a connection in April of 1990 by reading a newspaper article and speaking to an attorney, that was when she had knowledge sufficient to "trigger the discovery period" and her statute of limitations accrued. Id. at 1141.

Conversely, in the case at bar Plaintiff Dana Jones did not learn of the possibility of an actual injury related to the Cook IVC filter in March of 2012 or January of 2013. She was never informed of any *injury* caused by the filter, nor did she have any complaints attributable to the filter at that time. At all times hers was an inherently undiscoverable injury, unlikely to be discovered despite due diligence on her part. Ms. Jones did not possess "facts which would cause a reasonable person to diligently make inquiry to determine … her legal rights" until June of 2015, when she saw a television advertisement and consulted with an attorney. Just as in Vaught, this is when the statute of limitations would have accrued.

### B. Plaintiff's Injuries Were Not Objectively Verifiable Until June 2015

The next step in the discovery rule analysis is to determine when Ms. Jones' injury became objectively verifiable. "Objectively verifiable evidence is the key factor for determining the discovery rule's applicability." Askanase v. Fatjo, 130 F.3d 657, 668 (5th Cir. 1997); Browning Mfg. v. Mims (In re Coastal Plains, Inc.), 179 F.3d 197 (5th Cir. 1999). "An injury is

objectively verifiable if the presence of injury and the producing wrongful act cannot be disputed, and the facts upon which liability is asserted are demonstrated by direct, physical evidence." Livingston v. Danek Med., 1999 U.S. Dist. LEXIS 23929, 1999 WL 33537322 *14 (S.D.Tex. 1999)(citation omitted).  This requires proof of a connection between the injury and the product:

> In latent injury cases, medical records may provide direct evidence of an injury, and there may be direct evidence of plaintiff's contact with defendant's product. *Bridges v. Metabolife Int'l, Inc.*, 119 F. App'x 660, 664 (5th Cir. 2005)(per curiam). Nevertheless, if there is "no direct, physical evidence which demonstrates an *indisputable nexus between [the injury] and [the product]*," proof of the injury is not objectively verifiable and the discovery rule cannot be applied. *Id.*

Bergeron v. Select Comfort Corp., 2016 U.S. Dist. LEXIS 3418, 2016 WL 155088 *14 (W.D.Tx. 2016)(emphasis added).

In the case at bar Plaintiff's injuries were not objectively verifiable in March of 2012 or January of 2013 because she was never informed of any injury caused by the filter and did not have any complaints attributable to the filter at that time.  Nothing established an indisputable nexus between any injury experienced by Ms. Jones and the filter, nor could there have been anything, because Plaintiff did not learn that she was injured by the Cook IVC filter until after June of 2015.  Therefore, her injuries were not objectively verifiable until 2015.

### C.  Defendants Have Failed to Meet Their Burden of Proof

A defendant asserting the statute of limitations defense must "(1) conclusively prove when the cause of action accrued and (2) negate the discovery rule by proving as a matter of law there is no genuine issue of fact concerning when the plaintiffs discovered or should have discovered the nature of the injury." Gallier v. Woodbury Fin. Servs., 171 F. Supp. 3d 552, 564 (S.D.Tex. 2016)(citation omitted).  Whether the injured party used reasonable diligence to discover their cause of action is generally a fact question for the jury.  Seismic Wells, L.L.C. v.

Sinclair Cos., 749 F. App'x 225, 231 (5th Cir. 2018)(citation omitted).  This in part depends upon

when an injury manifests itself, which is also a question for the jury. Thrift v. Tenneco

Chemicals, Inc., Heyden Div., 381 F. Supp. 543, 546 (N.D.Tex. 1974).  In a products liability

case a jury must determine when the plaintiff knew or should have known that their injuries were

caused by a product.

> [W]e hold that prescription commenced to run from the time the disease manifested
> itself to the point when Hudson knew, or should have known, that the damages he
> sustained, which were the subject of his suit, *resulted from smoking the defendant's
> tobacco products*. When this took place is a jury question.

R. J. Reynolds Tobacco Co. v. Hudson, 314 F.2d 776, 786 (5th Cir. 1963)(emphasis

added)(applying Texas law).

In the case at bar, it is impossible for the Defendants to know when Plaintiff obtained the

relevant information necessary to learn that she suffered (1) an injury (2) caused by her IVC

filter.  Plaintiff did not experience any injury that was inherently discoverable and objectively

verifiable in 2012 or 2013.  She was not informed that she had experienced any injuries from her

filter prior to June of 2015, and it was at that time that she acted with due diligence and sought

out further information.  Thus, it was at that time that the statute of limitations accrued, and her

Short Form Complaint was filed within two years of that date.  This creates a question of fact

that only a jury can decide, and dismissal is not appropriate.

### D.  **Plaintiff Does Not Object to the Dismissal of Certain Claims**

The Defendants also seek dismissal of Plaintiff's claims for implied warranty, express

warranty, consumer protection claim, and request for punitive damages.  Plaintiff does not object

to the dismissal of these claims.

IV.    **CONCLUSION**

If the Court takes all of the facts in the attached exhibits as true and in the light most favorable to the non-moving party, as it must, it should deny Defendants' Motion. Plaintiff therefore respectfully requests that this Honorable Court enter the attached proposed Order.

Respectfully Submitted,

/s/ *Michael S. Katz*
Michael S. Katz, Esq.
(admitted *pro hac vice*)
Lopez McHugh LLP
214 Flynn Avenue
Moorestown, NJ 08012
(856) 273-8500
(856) 273-8502 fax
mkatz@lopezmchugh.com
*Attorneys for Plaintiff*

Dated: June 9, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on this date, a true and correct copy of the foregoing Response was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.

Furthermore, a courtesy copy of Plaintiff's Response with unsealed exhibits was served upon the following via electronic mail:

> Jessica Benson Cox, Esquire (Jessica.Cox@FaegreDrinker.com)
> Andrea Roberts Pierson, Esquire (Andrea.Pierson@FaegreDrinker.com)
> James Stephen Bennett, Esquire (Stephen.Bennett@FaegreDrinker.com)
> Faegre Drinker Biddle & Reath LLP
> *Attorneys for Defendants*

/s/ *Michael S. Katz*
Michael S. Katz

Dated: June 9, 2026