UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND              Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION               MDL No. 2570

_____

This Document Relates Only to the Following Cases:
Ricardo Clay, Case No. 1:16-cv-03262

_____

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Plaintiff, by his undersigned counsel, hereby submits this Response in Opposition to Defendants' Motion for Judgment in Plaintiff Ricardo Clay's Case Pursuant to CMO-28 and, in support thereof, states as follows:

## I.    INTRODUCTION

Defendants contend that Plaintiff's *injury* accrued on June 28, 2012 when testing revealed a "filter in the IVC with at least 2 broken limbs."  However, there is no evidence that Plaintiff was actually informed of this circumstance at the time; indeed there is no mention anywhere else in Plaintiff's medical records of the two broken limbs until the filter was removed in 2015, less than two years before suit was filed.

## II.    THE APPLICABLE STANDARD(S) OF REVIEW

Plaintiff believes that this motion should be evaluated as one for summary judgment, not as a motion on the pleadings.  However, the standards for both are noted herein.

### A. Judgment on the Pleadings

A motion for judgment on the pleadings under FRCP 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under FRCP 12(b)(6).  Northern Indiana Gun & Outdoor Shows v. City of S. Bend, 163 F.3d 449, 452 (7th Cir. 1998)(citation omitted).  That standard permits dismissal only where "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief."  Id. (citations omitted).  When making such a determination, a court must "view the facts in the complaint in the light most favorable to the nonmoving party."  Id. (citations omitted).

In the case at bar, when Plaintiff initiated this action via Short Form Complaint on December 1, 2016, he had not been required to identify a specific injury; he was only required to allege that he was "making a claim" about his IVC filter.  Exhibit A, p. 2.  The Short Form

Complaint fulfilled the Plaintiff's obligations.  Therefore this action is not subject to dismissal under FRCP 12(c).

### B. <u>Summary Judgment</u>

A motion for judgment on the pleadings must be converted into a motion for summary judgment when "matters outside the pleadings are presented to and not excluded by the court." FRCP 12(d).  If the instant Court is to consider the exhibits produced by Defendants, then this motion should be treated as one for summary judgment under FRCP 56(c).  <u>Northern Indiana Gun</u>, 163 F.3d at 452.  Such a motion requires the movant show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a); *see also*, <u>Zemlick v. Burkhart</u>, 164 F.4th 1004, 1010 (7th Cir. 2026).

A court deciding summary judgment must "construe the facts and draw all justifiable inferences in the nonmovant's favor."  <u>Id.</u>  The Court does "not weigh credibility, balance the relative weight of conflicting evidence, choose between competing inferences, or resolve swearing contests."  <u>Flowers v. Renfro</u>, 46 F.4th 631, 636 (7th Cir. 2022)(citing <u>Payne v. Pauley</u>, 337 F.3d 767, 770 (7th Cir. 2003)).  "It is the job of the jury … to determine which party's evidence to credit."  <u>Payne</u>, 337 F.3d at 778 (citation omitted).

In the instant matter, summary judgment is not appropriate because the medical records and other materials prove that Defendants have incorrectly asserted that Plaintiff had been made aware of any defect in the IVC filter as of June 28, 2012.

## II.    <u>MATERIAL FACTS</u>

The following information is based upon Plaintiff's medical records (which Defendants have presented in incomplete form).  If the Defendants are willing to rely on those materials, then the information therein cannot be disputed.

A July 8, 2013 CT scan did not indicate a problem with the filter.  It said only "IVC filter is noted."  Exhibit A, p. 1.  On July 8, 2015, Plaintiff was admitted to Grant Medical Center for complaints of "bilateral lower extremity swelling, pain, found to have b/l LE dvt's."  Exhibit A, p. 2.  This was the first time any injury could possibly have been attributed to a malfunction of the IVC filter; however, at this time there was still no indication that anything was wrong with the filter.  A CT performed on July 10, 2015 identified "An IVC filter is present" but did not find any defects or injuries.  Exhibit A, p. 6.  He was discharged on July 13, 2015 but on July 25, 2015 went to OSU Wexner Medical Center because his left leg was not improving.  The July 25, 2015 Admission History & Physical noted "IVC filter was placed in 2010, unsure if still functional as collaterals may have developed around filter."  Exhibit A, p. 8.  A CT was performed on July 28, 2015 to evaluate for "clots in IVC/common iliacs."  Exhibit A, p. 10.  The CT did not indicate any problems with the filter. "Overall, the IVC filter is unchanged in position to the prior exam." Exhibit A, p. 11.  "IVC filter is in stable position."  Exhibit A, p. 12.  On August 3, 2015 an embolization transcatheter was performed.  Exhibit A, p. 13.  The IVC and the filter were viewed, a catheter was advanced "with its distal tip just cephalad to the IVC filter" but no issues with the filter were noted.  Exhibit A, p. 14.  On August 5, 2015 another embolization transcatheter was performed.  Exhibit A, p. 15.  At the onset of the procedure there was no indication of anything wrong with the filter itself:

> Subsequent cavogram was performed which demonstrated a patent suprarenal IVC but complete thrombosis at the level of the filter.

> At this point, a decision was made to place a suprarenal IVC filter, just above the higher renal vein orifice.

Exhibit A, p. 16.  It was only at this point, after a new filter was implanted, that the physicians turned their attention to the old filter and learned of its condition:

> Subsequently, attention was focused on retrieval of the infrarenal indwelling filter. Using rigid forceps, the apex of the filter was grasped and a 16-French sheath was used to collapsed [sic] and removed the filter. Two remaining filter limbs were embedded in the IVC, and despite multiple attempts they were unable to be snared. These appear to be well embedded within the wall of the inferior vena cava.

Exhibit A, p. 16.  Defendants have failed to provide any documentation that proves that these two broken limbs caused any injury at that time, let alone one that Plaintiff was made aware of. Undersigned counsel is not aware of Cook ever having admitted that the mere *presence* of a fracture is a legally cognizable injury, nor is the instant Plaintiff alleging same; it is only when a fracture leads to adverse effects—perforation, migration, or surgical procedures to remove a filter or fragments—that an injury has been established.

The statute of limitations would not have begun to run on Plaintiff's cause of action when a mere fracture was diagnosed by someone else and not communicated to him.[1]  Plaintiff never would have been made aware of any issue with his IVC filter or actually told that he had a fractured filter that caused injury until August 5, 2015.  Because the complaint was filed December 1, 2016, this was well within the statute of limitations.

III.    **LEGAL ARGUMENT**

    A. **Ohio's Version of the Discovery Rule Requires an Actual Injury**

The Defendants correctly point out that this case is controlled by the Ohio statute of limitations, codified as Ohio Rev. Code §2305.10.  The most recent version of the statute technically became effective on August 3, 2006, but the language of the statute holds that it applies to all cases filed on or after April 7, 2005. *See* §2305.10(G).  The statute codifies the discovery rule exception to Ohio's two-year statute of limitations:

> (B)(1) For purposes of division (A) of this section, a cause of action for bodily injury … that is caused by exposure to … ethical medical devices accrues upon the

---

[1] Defendants are incorrect in stating that Plaintiff claims are not based upon latent injuries.  Defendants' Motion, p. 3.  This Response will demonstrate that Plaintiff's injury *was* latent.

> date on which the plaintiff is informed by competent medical authority that the plaintiff *has an injury* that is related to the exposure, or upon the date on which by the exercise of reasonable diligence the plaintiff should have known that the plaintiff *has an injury* that is related to the exposure, whichever date occurs first.

Ohio Rev. Code § 2305.10(B)(1)(emphasis added).  The statute requires a plaintiff to be "informed by competent medical authority that the plaintiff has an injury that is related to the" medical device at issue.

Federal courts applying Ohio law have further defined what information a plaintiff is required to possess to trigger the discovery rule.  "Under Ohio law governing tort claims based upon a *latent defect* or property damage, the statute of limitations does not begin to run until (1) *actual damage occurred* and (2) the plaintiff can draw some relationship between the damage and Defendant's conduct."  Allen v. Andersen Windows, Inc., 913 F. Supp. 2d 490 (S.D.Ohio 2012)(emphasis added).  *See also*, AKA Enterprises v. Hartzell Propeller, Inc., 2016 U.S. Dist. LEXIS 168385, 2016 WL 7103002 (S.D.Ohio 2016); Grant v. Memry Corp., 2006 U.S. Dist. LEXIS 69543 (N.D.Ohio 2006).  This rule mirrors decisions issued by Ohio's state courts, all of which follow the seminal decision of O'Stricker v. Jim Walter Corp., 447 N.E.2d 727 (Ohio St.1983).

In the O'Stricker decision, the Ohio Supreme Court noted that *suspicion* of the cause of an injury is not enough to trigger the statute of limitations; the standard is when the plaintiff is informed by "competent medical authority that he has been injured, or upon the date on which, by the exercise of reasonable diligence, he should have become aware that he had been injured, whichever date occurs first." 447 N.E.2d at 732.  This language was specifically incorporated into Ohio Rev. Code § 2305.10(B)(1).

The requirement of an injury has been further defined to hold that the statute of limitations does not begin when a plaintiff first noticed *symptoms,* but when a *diagnosis* was actually made.  Moldovan v. Lear Siegler, Inc., 672 F. Supp. 1023, 1026 (N.D.Ohio 1987).

> Generally, though, the plaintiff's *suspicion*, standing alone, about the source of her injury is insufficient to trigger the onset of the limitations period.
>
> .   .   .
>
> The limitations period will begin to run when a physician suggests there is a "reasonable possibility, if not a probability" that a specific product caused the plaintiff's injury.

Nelson v. Sandoz Pharm. Corp., 288 F.3d 954, 966 (7th Cir. 2002)(emphasis added).

Here, it is the Defendants' burden to demonstrate that there is "no genuine dispute as to any material fact." FRCP 56(a); Zemlick, 164 F.4th at 1010.  They have failed to meet this burden because they have not provided proof that Plaintiff sustained an injury as of June 28, 2012 or was otherwise told that there was an issue with his filter.  Defendants have not identified *any* event that should have caused Plaintiff to have even a *suspicion* that his IVC filter had caused injury.  There is no medical record, documentation, deposition testimony, or any other evidence that notes that Plaintiff's physicians told him that he had been injured by the filter, or that Plaintiff even suspected injury from the filter, as of June 28, 2012.

The facts clearly establish that the Plaintiff did not know or have reason to know that the IVC filter was defective and could cause injury until August 5, 2015.  He filed his Short Form on December 1, 2016—well less than two years had expired.  At that time, pursuant to the Ohio discovery rule, Plaintiff's claims were not time barred.

### B.  A Plaintiff Must Know That a Product is Defective

As stated above, Ohio law governing tort claims based upon a latent defect also holds that the statute of limitations does not begin to run until "the plaintiff can draw some relationship

between the damage *and defendant's conduct*." AKA Enters. v. Hartzell Propeller, Inc., 2016 U.S. Dist. LEXIS 168385 at *10; Allen v. Andersen Windows, Inc., 913 F. Supp. 2d at 507.

In Grant v. Memry Corp., *supra*, the Plaintiff had brought suit for a defective pacemaker in the United States District Court for the Eastern Circuit of the Northern District of Ohio.  This is therefore instructive on the case at bar inasmuch as both involve an implanted medical device.

The defendants therein asserted that the statute of limitations had been triggered when the plaintiff was hospitalized for syncope.  On that date, an Emergency Report stated that the myocardial infarction had to be ruled out and the functioning of his pacemaker had to be assessed.  2006 U.S. Dist. LEXIS 69543 at *13.  The defendants conceded that the Emergency Room Report did not contain evidence of a defect or even evidence that the doctor believed there to be a defect. Id.  The defendants next argued that plaintiffs should have known the pacemaker could be defective when a physician recommended upgrading the pacemaker. Id. at *16.  Again, defendants conceded that the reason for replacing the pacemaker was not because of a possible defect.

As explained by the Grant court, the Sixth Circuit has long held that a plaintiff must know that a product is defective in order for a claim to accrue and begin the statute of limitations.

> In *Dunn v. Ethicon, Inc.*, the court held that "a plaintiff must be 'alerted' to the fact that an implanted medical device is defective." 167 Fed. Appx. 539, 541 (6th Cir. 2006) (citing *Griffin v. Am. Med. Sys.*, 106 F.3d 400, 1997 U.S. App. LEXIS 26861, *2 (6th Cir. Jan. 7, 1997)). The *Dunn* court found timely the plaintiff's claim that her absorbable sutures were defective where the plaintiff was not "alerted" to the possible defect until her doctor discovered suture material in a different body part than originally intended. In *Griffin*, the court held that the plaintiff's claim was barred because "the removal of the prosthesis alerted Griffin that the prosthesis might be defective." 1997 U.S. App. at *2 (emphasis added). Defendants maintain that Plaintiffs' claim is barred by the statute of limitations based on a parenthetical in *Dunn* that summarizes *Griffin's* holding. … After citing to *Griffin*, the parenthetical reads "(holding that the statute of limitations for a defective prosthesis

begins to run as of the day it needed to be removed)." *Dunn v. Ethicon, Inc.*, 167 Fed. Appx. at 541 (emphasis added). The *Dunn* court's language, however, was intended as a reference only and it does not pre-empt a careful reading of *Griffin*, which (as stated above) holds that the claim accrued on the day the prosthesis was removed because that is the event that alerted the plaintiff to the possible defect. "No one told [the plaintiff] that the prosthesis was defective until after the prosthesis was removed." *Griffin*, 1997 U.S. App. at *2. Therefore, the relevant inquiry in the instant case is on what date Plaintiffs were alerted to the possibility that the pacemaker was defective.

2006 U.S. Dist. LEXIS 69543, *11-13.

In Grant, the plaintiffs had contended that they first knew of a defect six months after the pacemaker was replaced, when the pacemaker's recorder was downloaded and showed that the device had not been properly working.   The District Court found this to be irrelevant because it was not required to make a finding of what the plaintiffs knew and when:

> However, this is inconsequential inasmuch as Defendants have failed to meet their initial burden of showing that there is no genuine issue of fact regarding whether Plaintiffs' statute of limitations has expired. As a result, Defendants' motion for summary judgment is denied as to this issue.

Id. at *17.  Similarly, in the case at bar, Defendants have offered no proof as to when Plaintiff Ricardo Clay first learned that his IVC filter was, or could have been, defective.  The medical records indicate that this would not have occurred before August 5, 2015.  As a result, Defendants' motion must fail.

Because Plaintiff is entitled to pursue his claims, his spouse's loss of consortium claim similarly may not be dismissed.

## C. **Plaintiff Does Not Object to Dismissal of Certain Claims**

The Defendants also seek dismissal of Plaintiff's consumer protection claim and request for punitive damages.  Plaintiff does not object to the dismissal of these claims.

IV.      **CONCLUSION**

If the Court takes all of the facts provided in the attached exhibits as true and in the light most favorable to the non-moving party, as it must, it should deny Defendants' Motion. Plaintiff therefore respectfully requests that this Honorable Court enter the attached proposed Order.

Respectfully Submitted,

/s/ *Michael S. Katz*
Michael S. Katz, Esq.
(admitted *pro hac vice*)
Lopez McHugh LLP
214 Flynn Avenue
Moorestown, NJ 08012
(856) 273-8500
(856) 273-8502 fax
mkatz@lopezmchugh.com
*Attorneys for Plaintiff*

Dated: June 9, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on this date, a true and correct copy of the foregoing Response was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.

Furthermore, a courtesy copy of Plaintiff's Response with unsealed exhibits was served upon the following via electronic mail:

> Jessica Benson Cox, Esquire (Jessica.Cox@FaegreDrinker.com)
> Andrea Roberts Pierson, Esquire (Andrea.Pierson@FaegreDrinker.com)
> James Stephen Bennett, Esquire (Stephen.Bennett@FaegreDrinker.com)
> Faegre Drinker Biddle & Reath LLP
> *Attorneys for Defendants*

/s/ *Michael S. Katz*
Michael S. Katz

Dated: June 9, 2026