UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION | Case No. 1:14-ml-2570-RLY-TAB MDL No. 2570 |

This Document Relates to:

All Celect Cases

**COOK DEFENDANTS' OPPOSITION TO PLAINTIFFS'
MOTION FOR SUGGESTION OF REMAND OF ALL CELECT CASES**

The Plaintiffs' Steering Committee asks this Court to "remand" all 861 pending Celect cases. *See* Dkt. 28000, Pls.' Mot.[1] But 748 of those cases were originally filed in this District, not transferred here. Section 1407(a) applies only to cases transferred by the JPML; it does not authorize sending a direct-filed case to a court where it was never pending. Plaintiffs' motion therefore seeks relief that is legally unavailable in nearly 90% of the cases for which Plaintiffs seek remand.

Plaintiffs' motion fares no better as to the 113 cases transferred to the MDL. Coordinated proceedings continue to produce concrete results: more than 6,000 MDL cases have been dismissed or resolved to date. Recurring threshold issues best resolved at the MDL level also remain, including, among other things, whether certain cases have proper representatives and satisfy the amount-in-controversy requirement. Scattering these cases across the country would jeopardize the productivity of this MDL and export unresolved issues that can be addressed more consistently and efficiently here.

---

[1] The Cook Defendants note that, on July 24, 2026, Lieff Cabraser Heimann & Bernstein, LLP filed a Joinder of Motion to Remand for 18 Celect Plaintiffs within its inventory (the "Lieff Cabraser Plaintiffs"). *See* Dkt. 28050. The Joinder does not raise any new arguments and includes Celect Plaintiffs already subject to the PSC's Motion to Remand. The Cook Defendants' arguments in this Opposition therefore apply with equal force to the 18 Lieff Cabraser Plaintiffs' Joinder of Motion to Remand.

1

The Court should therefore deny Plaintiffs' motion for two independent reasons: remand is unavailable for the 748 cases originally filed here and premature for the 113 transferred cases.

## I.     BACKGROUND AND CURRENT STATUS OF CELECT CASES.

Despite seeking remand of all Celect cases, Plaintiffs provide scarce information on those cases subject to the motion. Here are the facts.

Currently, there are 861 Celect cases pending in the MDL, excluding those cases that remain pending while settlements in principle are finalized.[2] Celect cases account for roughly half of the pending cases in the MDL. A detailed numerical breakdown of the Celect cases by highest categorized injury is attached as **Exhibit A**.



748 of the 861 pending Celect cases (or 87%) were originally filed in this District, where venue is proper under 28 U.S.C. § 1391(b)(2). *See* Dkt. 11131, Entry for June 13, 2019, at 2 (noting "the parties agree that the Southern District of Indiana is the proper venue under 28 U.S.C. § 1391"); Dkt. 213, Master Compl. at ¶ 8. The remaining 113 Celect cases were originally filed in

---

[2] The information in Section I is based on the best information available to the Cook Defendants as of July 13, 2026. This data does ***not*** include 52 cases involving Plaintiffs who received Celect Platinum IVC Filters, which is a different product than the Celect IVC Filter.

or removed to other federal districts and transferred to this District by the JPML under section 1407(a).

## II. MOST CELECT CASES CANNOT BE REMANDED BECAUSE THEY WERE ORIGINALLY AND VOLUNTARILY FILED IN THIS DISTRICT.

Plaintiffs seek to "remand" all Celect cases,[3] but nearly 90% of the Celect cases were originally filed in this District. Neither this Court nor the JPML may "remand" cases that have no transferor court. Plaintiffs' motion therefore fails at the threshold as to the overwhelming majority of Celect cases.

### A. Remand is Unavailable in 87% of the Celect Cases Because the JPML Did Not Transfer Them to this District.

By its own terms, section 1407(a) applies only to cases *transferred* to an MDL court for coordinated proceedings; it does *not* apply to cases originally filed in the MDL court's district:

> When civil actions involving one or more common questions of fact are *pending in different districts, such actions may be transferred* [by the JPML] to any district for coordinated or consolidated proceedings … Each action *so transferred* shall be remanded by the [JPML] at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated[.]

28 U.S.C. § 1407(a) (emphasis added). A case cannot be "remanded" (i.e., sent back) to a court in which it was never pending. *See* Black's Law Dictionary (10th ed. 2014) (defining "remand" as "[t]o send (case or claim) back to the court or tribunal from which it came for some further action"); *In re Phillips Recalled CPAP, Bi-Level PAP & Mech. Ventilator Prods. Litig.*, 781 F. Supp. 3d 353, 378 n.3 (W.D. Pa. 2025) ("Remand means send back; it does not mean send elsewhere. A case cannot be remanded to any court other than the court it came from." (cleaned up)). Accordingly, by its own terms, section 1407(a) does not apply to cases originally filed in this District.

---

[3] There is the threshold question of whether the PSC has the authority to move for the remand of *all* Celect cases since many of the Plaintiffs subject to the motion are not represented by PSC members. Indeed, some Celect Plaintiffs may prefer to remain in the MDL for various reasons.

*See, e.g.*, *BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 183 (2004) ("[O]ur inquiry begins with the statutory text, and ends there as well if the text is unambiguous.").

Case law affirms the limited scope of section 1407(a). In *Lexecon*, the Supreme Court focused on the statute's use of "shall" and whether that language mandates the remand of transferred cases for trial. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998). Nothing in that decision suggests section 1407(a) permits—let alone mandates—the remand of cases originally filed in the MDL court's own district. Courts considering the scope of section 1407(a) after *Lexecon* have consistently held that cases originally filed in the MDL court's district cannot be "remanded" because (1) the case was not transferred under section 1407(a) and (2) there is no federal district to which the case could be remanded. *See In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 333 F.3d 763, 767 (7th Cir. 2003) (holding *Lexecon* inapplicable because the complaint was filed in the MDL court's district, meaning "the district court had original jurisdiction and was not acting as a transferee court under 28 U.S.C. § 1407"), *abrogated in part on other grounds*, *Smith v. Bayer Corp.*, 564 U.S. 299 (2011); *In re Neurontin Mktg. & Sales Pracs. Litig.*, 712 F.3d 21, 51 (1st Cir. 2013) ("The coordinated plaintiffs filed their complaint in the District of Massachusetts; it was not transferred to this district for pretrial proceedings, and so § 1407(a) and *Lexecon* do not govern here."); *see also In re Jan. 2021 Short Squeeze Trading Litig.*, 580 F. Supp. 3d 1243, 1251 (S.D. Fla. 2022) ("[T]he practice [of direct filing] leaves transferee courts without options at the conclusion of pretrial proceedings, as direct-filed cases do not have a transferor 'home' court to which the transferee court can remand them.").

Presiding over an MDL with a similar posture to this MDL, the *In re Phillips* court aptly conveyed the unintended consequences arising from plaintiffs directly filing cases:

> Numerous cases were directly filed in this court pursuant to [a case management order] and designated another district in which the case would have been filed and

4

to which the case would be presumptively "remanded" if the case was not settled or otherwise resolved pretrial. ***Because there was no case pending in the other district which was the intended home court, those cases cannot be "remanded.***" Even though a plaintiff identified in the relevant short form complaint a different district, i.e., what the home court would have been, the stubborn fact remains that the different district is not a home court to which that case can be remanded. ***In other words, there is no ability for this court to remand a case to another district unless that case was originally filed in or removed to that other district.*** At best, this court could transfer such a direct filed case to the other district; provided, that it has authority to do so under § 1404.

781 F. Supp. 3d at 378-79 (emphasis added) (internal citations omitted).

The JPML has likewise confirmed that *Lexecon* does not apply to cases that were not transferred under section 1407(a):

Following *Lexecon*, transferee courts are limited to conducting bellwether trials (or any other trial or post-trial proceedings) in those actions over which the transferee court has jurisdiction outside the multidistrict context, either ***because the action was filed directly with the transferee court*** or because the parties waived their right to remand to the transferor court.

*In re: Gerber Probiotic Prods. Mktg. & Sales Pracs. Litig.*, 899 F. Supp. 2d 1378, 1380 n.4 (J.P.M.L. 2012) (emphasis added).

Finally, this Court has repeatedly reached the same conclusion: *Lexecon*'s right to remand does not exist in cases originally filed in this District. The Court has stated at MDL hearings:

- "I have to remand these [directly filed cases] to myself, I guess." May 2, 2018, Status Conf. Tr., attached as **Exhibit B**, at 17:22-23.

- "These 15 [directly filed] cases, the home district is here. … Sounds like a lot of these cases I'd be transferring these cases to myself." Apr. 29, 2019, Status Conf. Tr., attached as **Exhibit C**, at 59:5-18.

- "There's no Lexecon issue in direct file cases. Doesn't exist. They can file a [motion for] change of venue." June 13, 2019, Status Conf. Tr., attached as **Exhibit D**, at 38:8-9.

- "The current law from the Supreme Court is Lexecon issues arise in cases transferred from the [JPML] to the transferee court." *Id.* at 39:2-4.

- "On a direct file, there's nothing for [the Court] to remand." *Id.* at 41:24-25.

- "So as I've said previously, cases filed originally in this Court, there's no Lexecon issue to be presented because it's not transferred from the panel." Oct. 25, 2019, Status Conf. Tr., attached as **Exhibit E**, at 53:11-13.

For these reasons, the Court held the bellwether cases originally filed in this District have no "*Lexecon* right." Dkt. 11131, Entry for June 13, 2019, at 2 (denying PSC's Bench Brief on *Lexecon* and the Bellwether Selection Process).

The Supreme Court, the JPML, this Court, and other federal courts all agree: cases originally filed in this District cannot be remanded. Remand under section 1407(a) is therefore unavailable for 748 of the 861 pending Celect cases.[45]

**B.**     ***Looper* Does Not Authorize Remand of Cases Originally Filed in this District.**

Plaintiffs will likely invoke *Looper v. Cook, Inc.*, 20 F.4th 387 (7th Cir. 2021), to attempt to support their request for remand, but *Looper* did not decide whether direct-filed cases may be remanded under section 1407(a). It decided only which state's choice-of-law rules applied to cases filed in this District for statute-of-limitations purposes. *Id.* at 389.

That distinction is dispositive. *Looper* rested on the Cook Defendants' conduct and resulting implied consent to apply the choice-of-law rules of plaintiffs' designated home states. *Id.* at 394. It did not hold that a direct-filed case could be "remanded" to a district where it had never been pending. To the contrary, the Seventh Circuit expressly declined to address *Lexecon*, recognizing that the issue "may present considerations quite different" from the limitations question:

---

[4] Plaintiffs' motion contains a single reference to 28 U.S.C. 1404(a), Dkt. 28000, Pls.' Mot. at 7, which grants a district court discretion to transfer a case to another district where such a transfer is "in the interest of justice." The Cook Defendants acknowledge section 1404(a) may have an eventual place in this litigation. Plaintiffs' motion, however, does ***not*** seek transfer under section 1404(a), only remand under section 1407(a). Plaintiffs do not even attempt to address section 1404(a)'s factors for transfer, either generally or on a case-specific basis. Because an MDL is comprised of individual cases, and this District is a proper venue, the Cook Defendants reserve their right to argue that transfer under section 1404(a) is not appropriate at this time for any and all cases, including the Celect cases subject to Plaintiffs' motion.

[5] Regarding the Lieff Cabraser Plaintiffs who filed the Joinder, Cook notes that 16 of those 18 cases were originally filed in this District and thus cannot be remanded for the reasons outlined above.

Since there was no direct-filing order in this MDL, the district judge concluded that the parties in direct-filed cases had not preserved their *Lexecon* rights, thus allowing the MDL court to preside over the trials. We express no views here on that issue, which may present considerations quite different from the statute-of-limitations defenses in these appeals.

*Id.* at 397 n.3 (internal citation omitted).

Nor did *Looper* rely on a direct-filing order. Both the Seventh Circuit and this Court recognized that no such order exists—much less one promising the "remand" of cases originally filed in this District. *Looper*, 20 F.4th at 397 n.3; Dkt. 11131, Entry for June 13, 2019, at 2. Indeed, a direct-filing order with such a promise is not legally tenable. *See In re Phillips*, 781 F. Supp. 3d at 378-79.

Consent does not change the result. The Cook Defendants cannot "consent" to a legally unavailable remedy.[6] *See id.* And in any event, the Cook Defendants have consistently maintained that plaintiffs who originally filed their cases in this District have no *Lexecon* right to remand. *See, e.g.*, Dkts. 9741, 10786, 10987, 11029, 12590 & 23766.

In short, *Looper* neither decided the remand question nor displaced section 1407(a)'s threshold requirement: only a transferred case can be remanded. Because 748 Celect cases were originally filed in this District, *Lexecon* does not apply and Plaintiffs' request must be denied as to those cases. *See In re Phillips*, 781 F. Supp. 3d at 377-78.

---

[6] Even if *Looper*'s choice-of-law ruling were read broadly to encompass the "remand" of cases originally filed in this District (which it cannot by its own terms), the Cook Defendants expressly "revoke[d] any alleged consent to any direct filing Orders" on January 5, 2022. Dkt. 20719, Cook's Notice of Revocation of Alleged Consent, at 1. Thus, the 26 Celect cases filed in this District after that date have no basis to argue that the Cook Defendants consented to the "remand" of their actions.

7

III.    **THE COURT SHOULD REJECT THE PROPOSED REMAND OF CELECT CASES THAT WERE TRANSFERRED TO THIS DISTRICT.**

For the 113 transferred Celect cases, the Court should reject Plaintiffs' proposed remand because there is still much work this Court can and should do to promote the efficient progress and resolution of the Celect cases generally.

A.    **Plaintiffs Conflate Completion of Company Discovery with the Conclusion of "Coordinated or Consolidated" Proceedings.**

At the outset, Plaintiffs' motion to remand equates the completion of company discovery with the conclusion of "coordinated or consolidated" proceedings. *See* Dkt. 28000, Pls.' Mot. at 5. But "the test [for remand] is not whether proceedings on issues common to all cases have concluded; it is whether the issues overlap, either with MDL cases that have already concluded or those currently pending." *In re Wilson*, 451 F.3d 161, 170 (3d Cir. 2006). Indeed, "the overlapping issues do not necessarily need to touch the petitioners' particular cases." *Id.*

Here, multiple overlapping issues remain—beyond company discovery—that warrant the continued coordination of the Celect cases in this MDL. To see why, the Court need not look any further than the current bellwether process. *See generally* Dkt. 26933, CMO-34 (Second Tulip Bellwether Plan).[7] Plaintiffs downplay this process, noting it only applies to Tulip cases. *See* Dkt. 28000, Pls.' Mot. at 6, 9. But the mere fact that the current bellwether process only involves the Tulip filter "does not mean that any case related to a device not present in a bellwether trial should be excluded from the MDL." *In re Davol, Inc. / C.R. Bard, Inc., Polypropylene Hernia Mesh*

---

[7] The Cook Defendants note that the Lieff Cabraser Plaintiffs' Joinder of Motion to Remand has a footnote claiming that "remand of Tulip cases is also appropriate," Dkt. 28050 at 1 n.1, but the Joinder does not specifically ask for remand of Tulip cases and it was filed only by Plaintiffs who received the Celect filter. For the record, the PSC has not formally moved for remand of the Tulip cases, thus, there is no "joinder" available to such an argument. Any such remand would be inappropriate for the same reasons discussed above regarding the Celect cases. Additionally, there have been no Tulip bellwether trials and the Court's current bellwether plan is specifically focused on the Tulip cases, rendering remand of Tulip cases inappropriate for that additional reason.

*Prods. Liab. Litig.*, 2022 WL 537572, at *2 (S.D. Ohio Feb. 23, 2022). Plaintiffs' minimization of the bellwether process overlooks its success to date. After all, "the usual object of MDL management, especially with bellwether trials, is to incentivize rational settlements," with "the vast majority of MDL cases … [being] resolved by settlement." *In re Gen. Motors LLC Ignition Switch Litig.*, 427 F. Supp. 3d 374, 393-94 (S.D.N.Y. 2019) (quoting *In re DePuy Orthopaedics, Inc.*, 870 F.3d 345, 358 (5th Cir. 2017)). The bellwether process and key orders in this MDL (in conjunction with the Court's role in settlement conferences) have helped resolve ***thousands*** of cases. It thus strains credulity to suggest that the current bellwether process's focus on Tulip cases will not further "incentivize rational settlements" in all MDL cases. *See id.*

Plaintiffs complain about how long the bellwether process has taken, *see* Dkt. 28000, Pls.' Mot. at 7-8, but the mere passage of time is not a valid basis for a suggestion of remand, *see In re Davol / C.R. Bard*, 2022 WL 537572, at *2 (rejecting plaintiffs' argument that remand was warranted because, *inter alia*, the MDL was "progressing slowly and ha[d] at times focused on other parties" and that "individual claims could have been resolved more quickly in a separate action"); *In re Ameriquest Mortg. Lending Pracs. Litig.*, 2010 WL 1418399, at *2 (N.D. Ill. Apr. 6, 2010) ("Although we acknowledge that [plaintiff] may feel that the [MDL] has not benefitted her, she has not identified any authority which would permit us to suggest a remand because of the alleged uniqueness of her claims or the delay associated with inclusion in the MDL.").

Plaintiffs also omit their role in delaying the MDL's progress. For example, it was the PSC, not the Cook Defendants, who recently requested the Tulip-bellwether deadlines be extended two more months. *See* Dkt. 28008, Joint Mot. to Modify Tulip Bellwether Plan (CMO-34). This is only the latest in a long history of actions intended to delay and evade bellwether workup and trial. *See, e.g.*, Dkt. 13588, Pl.'s Brief in Support of Mot. to Dismiss (seeking dismissal of bellwether case

9

because Plaintiff Burrage "anticipate[d] that the costs of litigation will exceed his anticipated recovery"); Dkt. 21723, Pl.'s Mot. to Dismiss (*Wilson*) (seeking dismissal of bellwether case for unspecified reasons). These tactics are hardly surprising given Plaintiffs' "firm position that no further bellwether trials will serve any useful purpose." Dkt. 28000, Pls.' Mot. at 9.

Contrary to Plaintiffs' claim, the mere fact that company discovery is completed in the MDL neither entitles nor warrants the remand of the Celect cases. Company discovery is but one aspect of pre-trial litigation subject to coordination under section 1407(a). Coordinated pretrial proceedings and discovery are far from complete in these cases, which lack workup beyond plaintiffs' production of basic plaintiff profile forms. No plaintiff or fact witness depositions have been taken, no expert designations have been submitted; expert depositions have not been taken; and Rule 702 and dispositive motions have not been filed. That work is best done in this MDL Court in a coordinated fashion consistent with this Court's prior rulings and informed by the history of this litigation. Coordination of those proceedings maximizes efficiencies, fairness, consistency and opportunities for resolution, while saving work for transferor courts and the parties. Accordingly, to the extent Plaintiffs have conflated the completion of company discovery with the conclusion of "coordinated or consolidated" proceedings, Plaintiffs' motion for remand should be denied.

**B.    The Parties Continue to Have Productive Court-Ordered Settlement Conferences.**

Plaintiffs expressly "acknowledge that Judge Baker has conducted numerous settlement conferences that have resulted in the resolution of many cases." Dkt. 28000, Pls.' Mot. at 9. Nevertheless, Plaintiffs argue "there is no basis upon which a plaintiff … can be forced to participate in an indefinite settlement program"[8] and that "all Celect cases are entitled to remand now." *Id.*

---

[8] Plaintiffs further state that "any plaintiff who does not want his or her case to be remanded, so that he or she can participate [in a settlement conference], can simply say so." Dkt. 28000, Pls.' Motion at 9. This

While the Cook Defendants acknowledge that settlement negotiations inherently present uncertainty, the parties' success in resolving numerous cases with the Court's direct involvement and the continued possibility of further settlements warrant denying Plaintiffs' request for remand.

"It is established [JPML] and court of appeals precedent that settlement matters are appropriate pretrial proceedings subject to centralization under § 1407." *In re Managed Care Litig.*, 246 F. Supp. 2d 1363, 1365 (J.P.M.L. 2003). And once centralized, "a remand may be refused 'where the possibility exists that even individual settlement negotiations will be more efficient if facilitated by a judge who is intimately familiar with the general issues and many of the parties.'" *In re Wilson*, 451 F.3d at 171 (quoting *In re Patenaude*, 210 F.3d 135, 145 (3d Cir. 2000)). "Such centralized management avoids 'the possibility of conflict and duplication' of, if nothing else, the judge's time and energy spent becoming familiar with the recurring issues of [the] litigation, the major players and how best to facilitate settlement … ." *In re Patenaude*, 210 F.3d at 145.

Here, settlement negotiations will be more efficient if the Court retains the Celect cases. The record bears this out. Thousands of MDL cases have resolved to date, with nearly half of those being Celect cases. Crucially, ***the majority of those cases have resolved since April 2025***, when the Court began ordering regular settlement conferences for firm inventories. *See generally* Dkt. 26822, Apr. 24, 2025, Settlement Conf. Order (setting first firm-inventory settlement conference). This is precisely the kind of efficiency that centralization under section 1407(a) contemplates and one salient reason why the Court should deny remand while largescale settlement efforts continue. *See In re Patenaude*, 210 F.3d at 145-46 (denying writ of mandamus ordering the JPML to remand cases where, *inter alia*, "individual settlement negotiations and conferences are ongoing in the plaintiffs' individual cases" and "the possibility exists that even individual settlement negotiations

---

position is at tension with their request to remand ***all*** Celect cases and suggests that the PSC did not receive consent from Plaintiffs not represented by PSC members before filing the motion to remand.

will be more efficient if facilitated by a judge who is intimately familiar with the general issues and many of the parties").

Several courts have rejected calls for remand in MDLs with active settlement negotiations. For example, in *Foscue v. Zimmer, Inc.*, 2016 WL 7325659, at *1 (D.N.J. Apr. 7, 2016), the plaintiffs argued remand was appropriate because—unlike here—"all common-issue discovery and common pre-trial proceedings ha[d] concluded." The court denied the plaintiffs' request for a suggestion of remand "[g]iven … the possibility of a new process by which existing MDL cases could be resolved by way of settlement." *Id.* Likewise, in *In re Seroquel Prods. Liab. Litig.*, 2010 WL 3465151, at *1 (M.D. Fla. Aug. 30, 2010), the court withdrew its previous suggestion of remand after "[r]ecent settlement conferences … resulted in thousands of settlements." In its order of withdrawal, the MDL court opined:

> In light of these dramatic developments, the Court believes that it is no longer prudent to remand the bulk of the MDL cases at this time. The Court suggests, and the mediator agrees, that retaining these cases as a coordinated action subject to continuing court-ordered mediation is vital to maintaining the momentum of ongoing settlement negotiations. A remand at this juncture would likely disrupt the settlement dialogue the mediator has established with the parties and could serve to stall negotiations altogether.

*Id.* So too here. Ongoing settlement negotiations and reasonable prospects for further settlements are reason alone to deny Plaintiffs' request.

### C.    There Are MDL-Wide Issues That Need Resolved Prior to Any Remand.

Plaintiffs are incorrect that "nothing further remains for this Court to do." Dkt. 28000, Pls.' Mot. at 9. This is evident from the first page of Plaintiffs' motion: "Over 500 suggestions of death have been filed, including a dozen in the last two months. ***Many more plaintiffs have died without any suggestion being filed***." *Id.* at 1 (emphasis added). At minimum, Plaintiffs' counsel should

ensure their cases have plaintiffs who can prosecute the claims before any remand is contemplated.[9]

As noted above, significant pretrial work remains in these cases, including plaintiff and fact witness depositions; expert disclosures; expert depositions, and Rule 702 and dispositive motions. Additionally, there are still unresolved issues over whether certain groups of Plaintiffs (including in Celect cases) can satisfy the amount-in-controversy requirement. Absent subject-matter jurisdiction, there is no basis to remand or transfer. *See, e.g.*, *Strategic Assets, Inc. v. Fed. Express Corp.*, 190 F. Supp. 2d 1065, 1067 (M.D. Tenn. 2001) ("[A] district court's first obligation is to determine whether the court has subject matter jurisdiction because without such jurisdiction, there is no action to transfer or change venue."); *see also Sykes v. Cook Inc.*, 72 F.4th 195, 205 (7th Cir. 2023) ("This MDL involves individual actions, so each case must involve diverse parties and satisfy the requisite amount in controversy."). There are currently 62 Celect Plaintiffs that claim Category 6 as their "highest injury"—that is, "non-symptomatic filter movement, migration, penetration, perforation, thrombosis, occlusion, or the presence of a clot in the filter that has not produced physical symptoms or complications." *See* Dkt. 26951-2, Am. Categorization Form, at ¶ 6. Another 98 Celect Plaintiffs allege retrieval-based claims under Categories 4 and 5. The Cook Defendants continue to question whether Plaintiffs alleging "injuries" in these categories can "allege in good faith a sufficient amount in controversy" to satisfy the jurisdictional threshold. *Sykes*, 72 F.4th at 206.

---

[9] Since Plaintiffs have indicated there are "[m]any more plaintiffs [who] have died without any suggestion being filed," the Court's intervention may be prudent on this issue. The District of Minnesota has provided a potential avenue for resolving this issue in *In re: Bair Hugger Forced Air Warming Devices Prods. Liab. Litig. See* Pretrial Order #23 – Substitution of Plaintiffs, attached as **Exhibit F**. There, the MDL court has required plaintiffs' counsel to file a suggestion of death within 90 days of plaintiff's death. *Id.* at ¶ A. Failure to timely file a suggestion of death permits the defendants to request the dismissal of plaintiff's action with prejudice. *Id.* at ¶ E.

In *Sykes*, the Seventh Circuit held that two plaintiffs alleging perforation-related injuries could not meet the amount-in-controversy requirement as a matter of law. *Id.* at 204, 214. In doing so, the Seventh Circuit stated:

> In essence, the evidence shows that at the time Parton and Sykes filed their complaints, each could allege in good faith that she suffered an asymptomatic IVC perforation: her filter perforated her IVC by several millimeters, her blood clotted, and she developed scar tissue. Parton and Sykes could not, however, allege in good faith that they had experienced pain or other symptoms, and Sykes could not allege she was at risk of future injury. Based on these injuries, we conclude that a verdict of over $75,000 for either plaintiff would be excessive. Thus, neither plaintiff has satisfied the amount-in-controversy requirement.

*Id.* at 214. Based on *Sykes*, questions remain as to whether the Court has subject-matter jurisdiction over perforation-related claims, especially in those cases that only involve a perforation of 3 or more millimeters outside the caval wall.[10] Relevant here, over 40% of Celect cases (351 cases) are categorized as symptomatic perforations, with 151 Celect cases alleging an IVC perforation of 3 or more millimeters that has not necessarily resulted in pain or other symptoms. This does not account for cases in which the submitted medical records do not support Plaintiffs' injury categorizations, calling into question both the categorization and any certification that the amount-in-controversy requirement has been met.

The Seventh Circuit's rationale in *Sykes* applies with equal force to Plaintiffs' non-symptomatic and retrieval-based claims. By definition, Plaintiffs who allege "injuries" in these categories do not claim to have "experienced pain or other symptoms" from their filters. *Id.* The Cook Defendants have also long maintained that retrieval-based claims do not constitute cognizable

---

[10] Of note, Ms. Parton alleged injury based on a Category 7 symptomatic perforation, claiming that her filter extended "3 or more mm outside the wall of the IVC as demonstrated on imaging." *Sykes*, 72 F.4th at 204. Despite categorizing her injury as "symptomatic," the Seventh Circuit noted that Ms. Parton had "produced no evidence that she experienced pain or complications related to her IVC perforation," which ultimately led to the court's determination that, "[g]iven Parton's asymptomatic perforation," she could not meet the amount-in-controversy requirement as a matter of law. *Id.* at 215.

injuries because the Tulip and Celect filters are indicated for permanent placement. Under the *Sykes* framework, cases involving such "injury" allegations do not appear to meet the amount-in-controversy requirement. *See id.*

Recently, two plaintiffs responding to CMO-28 motions have argued that "the mere *presence* of a fracture is [not] a legally cognizable injury"; rather, "it is only when a fracture leads to adverse effects … that an injury has been established." Dkt. 27930, Pl. Dinkins' Resp. to Defs.' Mot. at 2; Dkt. 27932, Pl. Jones' Resp. to Defs.' Mot. at 2 (same). Under these Plaintiffs' arguments, even cases involving fracture allegations (which were exempt from certification under CMO-32) do not necessarily meet the amount-in-controversy requirement because—absent "adverse effects" from the fracture—no injury has been established. *Id.*

To be sure, CMO-32 has undoubtedly helped weed out many cases over which this Court does not have subject-matter jurisdiction.[11] *See generally* Dkt. 26952, 2d Am. CMO-32. But salient concerns over the Court's jurisdiction remain for the reasons just discussed. The Court should resolve this issue, not only because the remand of cases without subject-matter jurisdiction is improper, *see, e.g.*, *Strategic Assets, Inc.*, 190 F. Supp. 2d at 1067, but because this issue is best resolved at the MDL level ***before*** any remand.

Relatedly, questions also remain about the viability of cases alleging injuries only under Categories 4, 5, and 6. Before the Seventh Circuit dismissed the cases on jurisdictional grounds, this Court dismissed the *Sykes* and *Parton* cases because they "failed to raise a genuine issue of material fact that the injury they claim—asymptomatic perforation—constitutes a present physical harm." Dkt. 20031, Entry on Defs.' Mot. at 7-8. But the Cook Defendants' efforts to test the

---

[11] By the Cook Defendants' count, 345 cases have been dismissed for failure to comply with CMO-32's certification requirement. This count does not include at least 253 voluntary dismissals utilizing the dismissal template included in CMO-32, most of which were likely spurred by Plaintiffs' inability to comply with CMO-32.

viability of similar claims through the bellwether process have not resulted in trials due to cases being dismissed either voluntarily or by dispositive motion. *See, e.g.*, Dkt. 13894, Entry for July 30, 2020, at ¶ 2 (granting bellwether plaintiff's motion to dismiss case involving only asymptomatic perforation allegations); Dkt. 13187, Entry on Defs.' Mot. (dismissing as untimely bellwether case involving only asymptomatic perforation allegations); Dkt. 25053, Entry on Pending Mots. (dismissing bellwether case involving only a complicated retrieval allegation on summary judgment). Nevertheless, Plaintiffs continue to refuse the dismissal of cases in these categories and have assigned value to them in settlement negotiations. For example, the Lieff Cabraser Plaintiffs' Joinder describes "failed retrieval attempts" as "serious" injuries, Dkt. 28050 at 1, but the Cook Defendants have not valued retrieval-based claims as noted above. The Court should continue facilitating ways to test and resolve these issues in the MDL before any remand.

*   *   *

Contrary to Plaintiffs' assertions, meaningful work remains for this Court in the Celect cases. Thousands of MDL cases have settled in the past year alone, due in large part to the Court's settlement conferences with individual Plaintiffs' firms. Further, the current bellwether process—though limited to Tulip cases—will likely continue to drive settlements across the MDL. MDL-wide issues also remain unresolved, including cases with no living plaintiff and cases that cannot satisfy the amount-in-controversy requirement, both of which should be resolved before any remand is considered. The Court should therefore deny Plaintiffs' request.

**CONCLUSION**

For the foregoing reasons, the Cook Defendants urge the Court to deny Plaintiffs' motion for suggestion of remand and the 18 Lieff Cabraser Plaintiffs' joinder of motion to remand.

16

Dated: August 5, 2026

Respectfully submitted,

/s/ *Jessica Benson Cox*
Jessica Benson Cox
Andrea Roberts Pierson
Faegre Drinker, Biddle & Reath LLP
300 North Meridian Street, Suite 2500
Indianapolis, Indiana 46204
Telephone: (317) 237-0300
Jessica.Cox@faegredrinker.com
Andrea.Pierson@faegredrinker.com

James Stephen Bennett
Faegre Drinker Biddle & Reath LLP
320 South Canal Street, Suite 3300
Chicago, Illinois 60606
Telephone:  (312) 569-1325
Facsimile:   (312) 569-3000
Stephen.Bennett@Faegredrinker.com

*Attorneys for Defendants Cook Incorporated,*
*Cook Medical LLC f/k/a Cook Medical*
*Incorporated, Cook Group Incorporated, and*
*William Cook Europe ApS*

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 5, 2026, a copy of the foregoing was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter. Parties may access this filing through the Court's system.

/s/ <em>Jessica Benson Cox</em>