# Exhibit D

Cook Defendants' Opposition to
Plaintiffs' Motion for Suggestion of Remand of All Celect Cases

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE: COOK MEDICAL, INC.,         )
IVC FILTERS MARKETING, SALES       ) Cause No.
PRACTICES AND LIABILITY,           ) 1:14-ML-2570-RLY-TAB
LITIGATION                         ) Indianapolis, Indiana
                                   ) **June 13**, 2019
                                   ) 10:05 a.m.
                                   )

**Before the Honorable**
**RICHARD L. YOUNG**

OFFICIAL REPORTER'S TRANSCRIPT OF
STATUS CONFERENCE

**For Plaintiffs:**

Ben C. Martin, Esq.
Law Offices of Ben C. Martin
3710 Rawlins Street, Suite 1230
Dallas, TX  75219


Joseph N. Williams, Esq.
Riley Williams & Piatt, LLC
301 Massachusetts Ave.
Indianapolis, IN 46204


DAVID P. MATTHEWS, Esq.
Matthews & Associates
2905 Sackett Street
Houston, TX  77098

Michael W. Heaviside, Esq.
Heaviside Reed Zaic
910 17th Street NW, Suite 800
Washington, D.C.  20006


Gregory J. Pals, Esq.
The Driscoll Law Firm, PC
211 N. Broadway, 40th Floor
St. Louis, MO  63102


J. Christopher Elliott, Esq.
Bachus & Schanker, LLC
18990 Wynkoop St., Ste. 700
Denver, CO  80202


Hazel S. Chang, Esq.
Wilshire Law Firm
3005 Wilshire Blvd., 12th Floor
Los Angeles, CA  90010


Kori Westbrook, Esq.
Johnson Law Group
2925 Richmond Ave., Ste 1700
Houston, TX  77098


For **Defendants:**            Andrea Roberts Pierson, Esq.
                               Jessica Benson Cox, Esq.
                               Kip McDonald, Esq.
                               Brian Paul, Esq.
                               Eldin Hasic, Esq.
                               Faegre Baker Daniels, LLP
                               300 N. Meridian St., Suite 2700
                               Indianapolis, IN  46204


Court Reporter:                Margaret A. Techert
                               United States District Court
                               101 NW Martin Luther King Blvd.
                               Evansville, Indiana  47708


PROCEEDINGS TAKEN BY MACHINE SHORTHAND
TRANSCRIPT CREATED BY COMPUTER-AIDED TRANSCRIPTION

(In open court.)

THE CLERK:  All rise.  United States District Court for the Southern District of Indiana is now in session pursuant to adjournment.  The Honorable Richard L. Young presiding.  Court is in session.  Please be seated.

THE COURT:  Good morning, everyone.  We're here today in re:  Cook Medical, Inc., IVC Filters Marketing, Sales Practices and Product Liability Litigation.  This in is MDL 2570.  We're here for our regular status conference.

There is an agenda that has been proposed and my understanding is we have some lawyers on the phone representing Plaintiffs.  We're going to take some of these items out of order on the proposed agenda, but here in person representing Plaintiffs Steering Committee, Joe Williams, Ben Martin, Dave Matthews, and Mike Heaviside.

Representing Cook is Jessica Cox, Andrea Pierson, Brian Paul.  You're new to the game here.

MR. PAUL:  They don't let me out of the office very much.

THE COURT:  And Kip McDonald is here as well.  And who else is at the table?

MS. PIERSON:  Your Honor, this is Eldin Hasic, one of the attorneys working on the case.  He won't have a speaking role but he's assisting as part of the argument presented.

4

THE COURT:  Welcome.  I hope everyone is doing well. Mr. Williams, you all right today?

MR. WILLIAMS:  I am.

THE COURT:  So far?

MR. WILLIAMS:  So far.

THE COURT:  10:00 o'clock.

MR. WILLIAMS:  That's not bad.

THE COURT:  So far.  Mr. Heaviside, you all right today?

MR. HEAVISIDE:  Absolutely.

THE COURT:  Mr. Matthews?

MR. MATTHEWS:  Yes, sir.

THE COURT:  Ben, you're doing all right?

MR. MARTIN:  Feeling great.

THE COURT:  We have on the phone Greg Pals from the Driscoll Law Firm, Chris Elliott from Bachus & Schanker, Hazel Chang from the Wilshire Law Firm and Kori Westbrook from the Johnson Law Group.

Can all of you hear?

(Unanimous everyone can hear.)

THE COURT:  Welcome.  Hope you're all doing well today.

My understanding is the parties have agreed that we'll move to agenda item four and then after that, we'll move on to five, and then the individuals the lawyers on the phone

can then go about their business.  Is that --

MR. WILLIAMS:  Yes, Your Honor.

THE COURT:  Ms. Cox?

MS. COX:  Yes.  So agenda item four is Cook's motion for judgment on the pleadings to dismiss cases categorized as Category 2, which were fear only cases.  And just to kind of refresh everyone's recollection, since it's been since last October, this was the Court's order on Cook's motion for screening order, which outlines that we're moving for a screening order to ensure all the pending and future cases here have a cognizable injury.  So that was the purpose of the order.

The categories were defined No. 1 was cases with a successful filter removal without complication; and No. 2 were defined as cases who were only alleging fear as an injury. That was it.

The Court outlined that after the screening order was done, cases in Category 1 would be subject to immediate dismissal, and a footnote that cases in Category 2 would be subject to motion practice.  So that's what we're here today, to move to dismiss the cases in Category 2.

And I do have some good news because when this process started back in October, after it was done in April, we had about 400 cases in Category 2.  But we actually worked pretty cooperatively and collectively.  We talked.  We did

exactly what the Court suggested we do, and now we're down --
we've whittled it down to 24 cases that we're here to talk
about today.  So 400 to 24 is a lot of progress.

THE COURT:  That's great progress.  I like that.

MS. COX:  So many of these cases actually dismissed
without prejudice under terms that we stipulated.  The terms
were:  If you had an injury in the future, you could refile
here in this jurisdiction.  And there were a very small
handful that found some medical records that said:  Oh, no.
We have a different injury.  We're no longer Category 2.  We
accepted those and those moved to a different bucket.

And then a very small handful said:  We need -- we
need a little bit more time to try to get ahold of our client
or to get ahold of a record that we really think is out there.
So can we just have -- just give us little bit more time, and
we were willing to do that in those cases.  So we're not here
to discuss any of those cases.  We're just here to talk about
24 cases and those 24 cases are outlined in two exhibits.

But just for the record, there have been a lot of
filings associated with this motion and I just wanted to let
the Court know we've provided a chart to the Court of all the
docket entries associated with this motion, and we outlined
which ones need rulings and which ones are moot now because of
conversations about dismissal or recategorization.  So
hopefully that will assist in some of the confusion that might

be there on the docket.

THE COURT:  Okay.

MS. COX:  So we are going to move to dismiss seven cases on Exhibit A and 17 cases on Exhibit B.  Exhibit A are cases where they are only claiming a Category 2 injury but they didn't timely file any objection to Cook's motion.

Exhibit B are 17 cases brought by the Driscoll Law Firm where they have filed a timely objection, and counsel for the Driscoll Law Firm is on the phone today.  So those are two cases A and B.

Exhibit A I'll provide to the Court here.  Exhibit A are -- I said Exhibit A are people who didn't timely respond but you will note on Exhibit A there is an asterisk next to Deborah Kelly because she did file permission to file a late response and her lawyer is on the phone today, too.  That response was filed as -- actually amended as late as last night at 1:00 a.m.

So this is how I propose that we proceed.  I'd like to just give a short argument as to why I think the six that didn't respond at all should be dismissed, and then I can give a short argument about why I think the 17 on Exhibit B, who did file an objection, still should be dismissed.  And then if the Court is inclined to entertain the late objection, I'm happy to talk about why I think Ms. Kelly's case should be dismissed, too.

THE COURT: Okay.

MS. COX: Okay. So as I said, Exhibit A --

THE COURT: Let's just shortcut this. I would be inclined to grant the objection to file late.

MS. COX: You'll be inclined to grant the objection?

THE COURT: Right. No, no. Overrule -- grant the request to file it late. That's what I mean.

MS. COX: I kind of assumed. So Exhibit A, these are the folks that didn't oppose our motion in any way except for the asterisks. So I'm talking about the six cases. They didn't oppose our motion to dismiss in any way.

Our motion lays out clearly case law from multiple jurisdictions confirming long-standing principles and tort that you can't recover for emotional injuries or fear alone without a physical injury. We lay out the law very clearly in our brief for multiple states, multiple treatises, and even from an IVC filter case in New York, the *Perez v. Braun* case that says you can't recover for an allegedly defective product for fear alone. This is the rule across the country. It's the rule in Indiana. The *Schaumburg* case that we cite to points out it's actually been the rule in Indiana for a hundred years.

I'm going to hand you what I will mark as Exhibit A to this hearing. Permission to approach?

THE COURT: You may.

MS. COX:  Exhibit A to this hearing, these are all the categorization forms submitted by the people outlined on our Exhibit A that we're seeking dismissal.  All seven of these Plaintiffs have submitted categorization forms that say their highest injury is fear.  And if you look at the last page of the categorization form, they've been certified by each Plaintiff's counsel as being accurate.  There's been no opposition filed.  No one saying that they don't have a Category 2 injury.  All these people allege fear is their only injury.

Permission to approach?

Exhibit B to this hearing, for the people on the phone, that I've just provided is a chart that are summarizes the law that we cited in our brief.  Basically, Exhibit B makes it very clear that the law applicable to all the Plaintiffs on Exhibit A is the same as the law in Indiana, as it's outlined in the restatement of torts, as it is across the country.  You cannot recover for fear alone and we have these citations available for the Court as well, just to make it very simple.

So for the six individuals without the asterisk, they're not -- they're not -- they're not contesting that they're in a Category 2.  They haven't contested that the law says that's not a valid claim.  So I'm pretty sure that we should just dismiss those people without prejudice under the

terms that we've stipulated in the past.  That if they have a future injury, they can refile here in this jurisdiction; but fear alone is not an injury.  The law is clear.  There's no objection.  So I think -- I think probably hopefully move on and not need to go into all the law in all those states, if that's okay with you.

THE COURT:  Please do.

MS. COX:  Okay.  So that moves us to Exhibit B. These are the 17 plaintiffs from the Driscoll Law Firm who did file a timely objection to our motion, and counsel for Driscoll is on the phone.  Same thing with these Plaintiffs.

I'm going to hand you what's been marked as Exhibit C to this hearing.  These are all the categorization forms from these 17 plaintiffs where counsel has certified that their only injury is a Category 2, I have fear.  And spoiler alert.  Nothing in their opposition challenges that they have anything besides a Category 2 injury.  They're not contesting their certification or their categorization forms.

THE COURT:  Hold it a second.  We've got a couple Exhibit B's here.  We have Exhibit B to Exhibit A and then we have Exhibit B which is the 17 cases.

MS. COX:  So Exhibit B, which we will ask for dismissal -- sorry.  Exhibit B to the hearing is what I marked.  Exhibit B is the -- I can hand the Court a proposed order.  Those are the 17 people who are challenging.

THE COURT:  Right, that's Exhibit B.  But we also have an Exhibit B to Exhibit A?

MS. COX:  Exhibit B to Exhibit A?  Exhibit B to the hearing.

THE COURT:  Exhibit B to the hearing.

MS. COX:  Yes.  Those are the Exhibit A folks. Sorry.  I probably should have numbered the exhibits for the hearing.

THE COURT:  I'm trying to clear up the record.

MS. COX:  Yes.  Thank you.  So Exhibit C is the collection of categorization forms of all the 17 people who are objecting to our motion.

THE COURT:  Exhibit C?

MS. COX:  Mm-hmm.

THE COURT:  All right.  Okay.

MS. COX:  And then Exhibit D is a chart that outlines the law applicable to all 17 people who timely objected to our motion.  The chart outlines that the state laws that are involved in these 17 people's cases all say the exact same thing as Indiana, as the *Perez* case, as the restatement of torts, that there's no recovery for fear alone in a product liability case.

So I mentioned they objected to our motion but nothing in their motion challenges that they have anything but fears and injury, and nothing in their response challenges the

law.   These Plaintiffs do not challenge that the law in their states do not permit them to recover based on fear alone.

So you might wonder if they don't challenge the facts and they don't challenge the law, what are they challenging?  Well, they say we didn't meet our burden of proof under 12(c) for dismissal.  They say it's a heavy burden you have to prove beyond a doubt.  They haven't interjected any doubt.  They haven't said that they're alleging anything but fear and they haven't said cases would allow them to proceed under those claims in any of the state's laws that are involved.  So I think it's very clear we have met our burden. They have interjected any doubt.

Their second argument is the Court shouldn't consider the categorization forms as a part of a Rule 12(c) motion because they're not actually in the pleadings and that is an unpersuasive argument as well.  Our brief sets out that in the Seventh Circuit courts are allowed to consider matters that are integral to the pleadings.  The *Village of Oak Lawn* case that we cite say if a document is central to the complaint or referenced in the complaint, a court may take notice.  A court can consider it.

There's a specific case that we cite, *Venture Associates*, that's a Seventh Circuit case.  It was a case where plaintiffs brought a breach of contract claim and in trying to dismiss that claim, the defendant said:  Judge, I

want to show you some letters that sets out our contractual relationship because this will show you why this claim isn't valid.  The Seventh Circuit said it's perfectly fine for the Court to consider that.  That was integral to the breach of contract claims.

Here, these categorization forms are integral to the complaint.  The Seventh Circuit says it's completely appropriate to consider them.  They're certified.  They're not contested.  As our brief lays out, they are perfectly acceptable to consider as part of this process.  In fact, you almost have to consider them because the master complaint filed doesn't give individual information about anyone's actual complaint, and the short form complaints that are filed only give information about what filter was put in and where. So this is the only source of information we have about a person's specific claim.  So perfectly appropriate to consider here.

They also say that:  Well, the language on the form says it's not going to be used for anything but categorization, so you shouldn't use the form for a motion to dismiss.  But your order clearly sets out:  I am putting in a screening process to assure our cases have cognizable injuries and the order actually says:  I'm going to use the categorizations to immediately dismiss cases without an injury.  So I don't think any Plaintiff's counsel can

14

legitimately say they weren't expecting motion practice from the categorization form.

And then their final argument is time.  They say that dismissal would be oppressive because some of these cases were just recently filed.  Filed within the last three months and they just need more time to conduct discovery.  I don't think I need to remind counsel or the Court of everyone's obligation under Rule 11 to conduct this kind of inquiry to make sure a claim has merit before you file it.  It's not unreasonable to ask a Plaintiff's attorney, after 30 days of having filed a case, to make a certification about whether or not there's an injury that's valid.

In fact, other courts have gone so far as to bar the filing of these cases and actually have said that they will impose sanctions on people who continue to file these cases.

I just handed the Court an order from the In Re: Option Vena Cava Filter litigation where Judge New said: Yeah, these filings have to stop.  No more filing of no injury cases and if you do file them again, you have to voluntarily dismiss or seek sanctions.  There are plenty of treatises that say courts are allowed and should put processes in place to get rid of cases that don't have cognizable injuries.

It would not be oppressive to dismiss these 17 cases based on the stipulation that we have entered that will say: They're dismissed without prejudice and if they do have an

injury in the future, they can refile here.  So that would be the argument on those 17.

And then do you want me to go on to the Kelly or do we want the Driscoll plaintiff to respond or I'm happy to do it either way?

THE COURT:  Why don't we have the Driscoll Plaintiff's response at this time.

MS. COX:  Okay.

MR. PALS:  Good morning, Judge, counsel.  This is Greg Pals.  Can you all hear me?

THE COURT:  Yes.

MR. PALS:  Okay.  Thank you for allowing me to appear by telephone, Judge.  I appreciate that.

I'd like to begin with the notion that, you know, counsel prefaced the argument with how Cook has bent over backwards to give people more time in order to investigate claims.  On these -- this particular motion, I had a discussion with defense counsel and I said:  I don't think this is right.  I think bringing the motion now is a waste of the Court's time because the facts are not settled with respect to these 17.  And I was told:  Well, we'll run that notion -- so I asked for more time.  I said why don't we hear the motion at a later date.  The response was:  Well, we will run that up the chain, and then I never heard anything further.  So timeliness is an issue.  It's one we raised and

it somewhat goes to the heart of this matter.

We've dismissed numerous cases, along with everybody else, over the course of litigation.  These particular cases, however, the facts aren't settled and Cook has not shown otherwise.

There was the representation that we have not contested the certification.  That's untrue.  The entire -- one of the major premises upon which our opposition is based is that we are, in fact, contesting the finality of the certification, if you will, if it was -- could even be considered final.  I'll get into our thoughts on the filling out those categorization forms momentarily.

What we have here is a situation, perhaps Your Honor has seen it in litigation before, analogous to the litigation tactic where a defendant may file a motion for summary judgment, for example, along with their answer straight out of the gate and say:  Prove your entire case immediately.  And that's been frowned upon -- been frowned upon for a long, long time.  I'm sure you're familiar with that.  This case is -- these circumstances here, with respect to this slightly over a dozen people, are completely -- is analogous, completely analogous.

At the end of the day, bottom line, Cook is trying to kick these people out of court.  Before Cook can do that, it has to prove beyond doubt, beyond doubt that there are no

facts which would support any claim for relief on behalf of any of these people.  Cook has not proven that beyond a doubt for any of these people.  Cook hasn't even tried.

This is a very small handful of cases, okay.  Cook, nevertheless, didn't provide the Court with any examination whatsoever of any of the individual circumstances of these cases.  Cook says that the only source of information with respect to these cases are the authorizations.  That's blatantly untrue.  I'm sorry.  The categorizations, that's blatantly untrue.  Cook has been provided, for example, with medical authorizations and similar, Cook, you know, presumably could have or would have investigated the cases and it has not even attempted to tell the Court anything about the individual circumstances.

This is -- it is attempting to turn the mere case categorization forms into a sort, as I put it in my brief, to [impale Plaintiffs and it's a litigation tactic that should be rejected.  The categorization forms themselves said on their face they are not admissible.  On their face.  On their face they said they are not to be considered relevant for any purpose.  And it is in that spirit, in an attempt to, you know, go along with the Court's orderly management of the MDL, that we filled out and submitted those case categorization forms.

That does nothing to prove beyond a doubt that these

claimants do not have a case, okay. Cook has not proven that. It hasn't proven anything at all. And as counsel noted, it is particularly oppressive, considering the fact that the majority of these cases weren't filed even 90 days ago, okay. We are still investigating the claims.

Business about Rule 11 is particularly troubling to me, Judge, and if I may, borderline offensive. We did investigate the claims before filing. Continue to investigate them. Cook has not disputed at all that all these people were implanted with Cook IVC filters and we provided proof of that along with the categorization forms. The nature and extent of the injuries, however, remain subject to dispute and subject to investigation. And unceremoniously dismissing these cases on the basis of the categorization forms alone is, I respectfully submit, totally beyond the pale.

The Court shouldn't be concerned either for its own purposes. This is what, a little over a dozen cases, you know. Refusing to dismiss them is not going to impede the orderly progress of the MDL in any way.

So that would be the bulk of my argument, Judge. Are there questions I might answer?

THE COURT: Well, I'm wondering what your timetable -- your proposed timetable would be on determining whether there is a cognizable claim here.

MR. PALS: You know, I probably should have

anticipated that.  That's difficult to say because perhaps Your Honor has a feel for how it is that these cases are investigated and the records.  You know, these are cases, I believe, the current notion is that these cases are not cases where there was a single event, if you will, where there was, you know, a failed removal or something like that.  But as you know, there are other injuries that can occur; migration, perforation, tilt that may be unknown to the plaintiff at the time.  And finding those records, ascertaining the case does take some time.

As an aside, if I may, a lot of that is radiology and this is anecdotal, Judge.  But we've had some issues with radiologists and consultants being overwhelmed due not only to this litigation but also other listings that are going on.  So the lead times for their consulting and analysis, once we do obtain the records, has been more protracted than has been my usual experience.

So whatever the Court would offer, I originally -- I believe I told defense counsel in conversation, if memory serves, I said:  Look, why don't you give us 180 days.  That's not unreasonable.  It's not impeding the MDL in any way.  That gives us a pretty fair opportunity to try to ferret out these records, find where they're located and assess the case. Certainly the bulk of cases in this MDL have had far in excess of that.  That doesn't seem unreasonable to me, I respectfully

submit.

THE COURT:  Thank you, Mr. Pals.  Ms. Cox?

MS. COX:  Thank you, Your Honor.  I would just add again, the whole purpose of the screening order was to make sure that before a case was filed, it was -- insured it was a valid claim.  Mr. Pals hasn't said anything about any of these claims being valid.  I think it's not unreasonable to say before you file a case in this Court and clog up this docket, you make sure there's actually a compensable injury.

We're not asking for dismissal with prejudice.  We're asking for dismissal without prejudice.  If he works up these cases and finds there's a compensable injury, he's welcome to refile in this jurisdiction; but there's an influx of cases that have no valid claim.  They shouldn't be filed.

MR. PALS:  May I respond very briefly, Your Honor?

THE COURT:  Sure.

MR. PALS:  The obviously question there is time.  You know, under the rules, in particular with respect to the statute, there may be some issue there proceeding as counsel suggests.  So I would respectfully request that they not be dismissed and simply be allowed to proceed with developing the cases.

THE COURT:  All right.  Okay.  Thank you.

MS. COX:  So now we move on to Ms. Kelly's case, who's listed on Exhibit A but who did ask for permission to

late object.  I just want to talk a little bit about Ms. Kelly's case because I think this is exactly the kind of case that was the reason for your screening order in the first place.

Ms. Kelly submitted two medical records as part of her objection to our motion to dismiss.  I just want to go over those with you.  This is the medical record from Ms. Kelly's placement of an IVC filter.  It outlined that she had a history of extensive DVT and PE that required treatment with anticoagulants but she going to have an upcoming bariatric surgery where she couldn't take the blood thinners; and so her doctors decided to prevent fatal PE during the surgery, she should have a removable filter placed for the period where she couldn't take her blood thinners.

You can also see from the medical record that her doctor said:  Please come back with me six weeks after your surgery, after you've healed, after the risk is past, after you can started your anticoagulants again to get the filter out.  You need a temporary filter.

The second medical record they submitted was from the retrieval procedure.  Her filter was placed in August.  She came back four months later.  It says the procedure was a central venogram with IJ vein access retrieval of an IVC filter.  This is a procedure from a standard IVC filter removal.  It's not a surgery.  It's the kind where you go in

through the vein and you pull the filter out.

The doctor said:  IVC filter retrieval is indicated to avert any potential long-term complication from the prophylactic filter.  The surgery was over.  Her risk had passed.  She had gone back on her blood thinners.  It was time to get the retrieval filter her doctor ordered out.  They used an ultrasound guide to get access through her neck and then they looked at the filter.  They looked and they said the wire was placed through the filter.  They did a venogram.  The filter was centered nicely within the vena cava.  No tilt and there was no evidence of significant thrombus within the filter.

Then they went -- they captured the hook of the filter without any complication.  No embedding.  And the vena cava allowed the filter to be retracted back and the filter was then removed.  Whole filter taken out.

They did a venogram at the end and said:  You know what?  It looks great.  There's no evidence of extravasation. The vein is fine.  We got this filter out.  It wasn't tilted. It wasn't embedded.  She's good to go.  As the record shows, no complications.  No complications.

Ms. Kelly then submitted a short form complaint, which they cite in their response, which basically outlines only that she had a Cook Celect Platinum filter placed and it outlines the tort claims and the consumer fraud claims that

she's bringing under the applicable law of Colorado.

And finally, she submitted a case categorization form where she appropriately marked Category 1 for successful removal and Category 2 for fear -- anxiety, fear that they did not remove the entire filter.  A reminder that the filter was removed four years ago.  The only record that she submitted with her case categorization form is the record of her successful retrieval procedure.  She did not submit any records of a psychiatric illness or injury or anything documenting fear.

So Your Honor, I would submit -- I'm happy to argue why I think she should be dismissed as a Category 2 case and the law and all that, but the facts presented here show she is a Category 1 case.  Her filter was placed.  It protected her. She didn't get a PE.  It was taken right out.  She had no complication and the only record she submitted shows that she's a Category 1 case.

So before I proceed, I think that this case warrants dismissal under your order as a Category 1 case without prejudice.

THE COURT:  All right.  Thank you.

MR. ELLIOTT:  Your Honor, Chris Elliott here with Bachus & Schanker on behalf of Deborah Kelly.  I spoke with Ms. Kelly.  She's adamant that her case not be dismissed and as her advocate, I'm here to tell you why I believe genuine

issues of material facts still exist.

I believe she does have a physical injury here.  She will testify, after speaking with her on the telephone -- and her deposition had not been taken requested by the defense, but she has told me, as an officer of the Court, I'm here to tell you that she had a conversation with her doctor, the doctor that she initiated this conversation, that she -- she heard that these Cook filters were failing.  So she went to an appointment and had the conversation with her doctor, and her doctor is like:  Well, let's go ahead and get it out now to avoid any long-term effects.

I think the fact that she had to get it out and she was cut on for a second time to get it removed is a physical injury.  I see this as akin to the metal-on-metal hip cases where you have a metal implant implanted in you and the doctor recommended take it out regardless if there's complications or not.  I think that's still a physical injury.

So for defense to argue that there's no physical injury for a defective product that was in my client's body that had to be taken out, I think there's still issues of fact there to discover.  Her doctor's deposition has not been taken.  So that conversation between Ms. Kelly and her doctor is not known by defense yet.  So there's still discovery to be done.

She also has emotional harms and losses.  She tells

me before and after the surgery that she could not sleep. That she thought she was going to die, the thing was going to migrate.  Even after the surgery, she still tells me that she thinks medical particles are still in there.  She has an anxiety disorder that was even worsened by this, and I'm here just to tell you that I think it's premature at this time to dismiss her case when no individual case discovery has been done, other than some forms that she filled out.

I mean, it's just -- I think it's too premature. There's not enough evidence that's been gathered, and we just ask for more time for her deposition to be taken and her doctor's deposition to be taken.  This is just one of our cases, Your Honor, that we filed.

We did file Ms. Turner's without prejudice.  She was agreeable to that.  Ms. Turner is a different case, though. She had a product in place and she doesn't have a diagnosis injury.  So we did agree that one should be dismissed without prejudice and she also agreed.

My concern with Ms. Kelly's case is that if her case is dismissed, that she could be time barred because her case was filed more than two years ago and it would be beyond the discovery rule at this point.  And so I'm just fighting for Ms. Kelly to the end here.  She doesn't want her case dismissed, and I'd ask that you find that she's a fact to remain.  That's it.  Thank you.

MS. COX: Your Honor, the operative note that he did submit in response to our motion made it clear that the doctor's plan all along was to retrieve her filter. You can't find that retrieving successfully a filter is a physical injury. That's the whole point of the design is for it to be retrievable. So there's no physical injury here. She's had four years without a filter. She has had no evidence of any problem. This is subject to immediate dismissal per your order.

THE COURT: Thank you. Mr. Elliott, I appreciate your zealous representation here of your client but I do have serious concern here about letting this one go forward based on what's been filed at this time. So my inclination is to go ahead and grant the motion to dismiss and Ms. Kelly -- this appears that this was -- retrieval is the way it's designed. Sounds to me like based on the medical records filed, that this operation was a complete success. Anything else would be purely speculation on her part; and of course, we don't award damages based on speculation.

So I'm going to go ahead and grant the motion to dismiss on all seven of these cases.

MS. COX: Thank you. What about the 17?

THE COURT: The 17 cases?

MS. COX: We're just asking -- I can hand you a proposed order. We're just asking for dismissal without

prejudice.  If they actually do an investigation and find an injury in any of these cases, they can refile under the terms in this district.

THE COURT:  I'm going to take that under advisement. Think about it a little more.

MS. COX:  Thank you.

MR. PALS:  Judge, this is Gregory Pals.  Do you mind if I drop-off now?

THE COURT:  Sure.  That's fine.  Thank you very much for your comments and your participation.

MR. PALS:  I appreciate your accommodation, Judge, by phone.

MR. ELLIOTT:  This is Mr. Elliott as well.  I'm going to drop-off.  Thank you, Judge.

THE COURT:  Okay.  Thank you again for your participation.

(Mr. Pals and Mr. Elliott left the hearing at this time.)

THE COURT:  Next.

MR. McDONALD:  Your Honor, the next two items on the agenda are PPS motions for failure to submit a PPS under CMO amended CMO 4 and Federal Rule 41(b).  If I could, I'll start with our motion docket number 10615 and that particular motion was filed on four cases, and we've since received the outstanding information.  So I've got a draft order that makes

our motion moot.  Or if the Court would prefer us to file a motion to withdraw our motion, I'm happy to do that but trying to make whatever is easier.

THE COURT:  That works.

MR. McDONALD:  May I approach?

THE COURT:  Thank you, Kip.  The motion to dismiss regarding Mack, Thompson, Herndon and Birmingham is denied as moot.

MR. McDONALD:  And the next one, Your Honor, is motion docket number 10600.  If may I approach, I've got a draft order for you on that one that we can discuss.

THE COURT:  All right.  Thank you.

MR. McDONALD:  On this one, Your Honor, we move to dismiss 54 cases for failure to provide the required PPS which is required within 30 days of filing.  CMO 4 permits Cook to move to dismiss without prejudice for -- after we provided notice to Plaintiffs.  So the failure to comply allow a cure period of five business days.  We're then permitted to move for dismissal without prejudice.

Our motion laid out the timing between notice of our letters and filing; and since filing our motion, we've had -- received a number of responses.  So the updated draft order -- proposed order outlines that we have 33 cases, for which that we would ask that you grant the motion.  The PPS's are still outstanding.  Not a single one of the cases listed in this has

responded either formally or informally to Cook with a PPS.

The second grouping we've asked that you deny those as moot.  Those are a mix of cases that have already been dismissed for other reasons or have since complied with the PPS requirements.

And the last entry is in Jeanette Renteria.  Their counsel recently filed as of yesterday a notice of death and we would agree to stay that case for 90 days let him work on opening an estate and finding a next of kin.

I think there are one or two folks on the phone that want to chime in.  To be honest, we don't have a response for any of their cases either formally or informally.  So I'm not sure what they'd like to raise with the Court.

THE COURT:  All right.  Thank you, Mr. McDonald. Ms. Westbrook or Ms. Chang?

MS. CHANG:  Your Honor, this is Hazel Chang appearing on behalf of plaintiff Alberto Guerrero?  We actually do not have basis for the opposition because we have not been able to contact our client since November.  So we're just simply here asking for the Court to dismiss without prejudice.

THE COURT:  All right.  And that's on Alberto Tomas Guerrero?

MR. McDONALD:  Yes.  And to be clear, Your Honor --

MS. CHANG:  Yes, Your Honor.

MR. McDONALD:  Sorry.  That is what we're asking for is dismissal without prejudice.

THE COURT:  We'll show that filing regarding Plaintiff Alberto Thomas Guerrero is dismissed without prejudice.

MS. CHANG:  Thank you, Your Honor.

THE COURT:  Ms. Chang, anything else?

MS. CHANG:  No, Your Honor.

THE COURT:  Okay.  Thank you.

MS. CHANG:  Thank you, Your Honor.

MS. WESTBROOK:  Your Honor, this is Kori Westbrook with the Johnson Law Group on behalf of Mr. Thierer.  We would like to ask permission to file either a motion to withdraw as counsel without substitution or additional time to file a PPS. We're able to reach Mr. Thierer but his responsiveness is few and far between.  We've sent multiple letters, texts, emails. We sent notaries to his house.  We know where he lives.  He's just not responsive.  We think that he may be able to go on a PPS.  He's told us he has but not since May of this year.  So we'd like to either request additional time or at this point file a motion to withdraw as counsel.

MR. McDONALD:  Your Honor, I just add that we sent a letter in November of last year requesting the PPS with no response.  Filed May 2nd our motion to dismiss.  No response formally or informally.  This week we've heard that they've --

they would like more time.  You know, the Court's previously addressed this in the event they're having communication problems, the answer isn't to have additional time or withdraw.  It's to dismiss the case.

We are asking for a dismissal without prejudice and in the event they're able to reach their client and get him to complete a PPS, they can come back and submit the PPS and move to reopen or refile their case.  That's what's outlined in our proposed order.

THE COURT:  Regarding the claim of Edward Thierer III, we'll show the motion to dismiss without prejudice is granted.  If you wish to file a motion to withdraw, of course, Ms. Westbrook, you can do that.

MS. WESTBROOK:  Thank you, Your Honor.

THE COURT:  Anyone else on the telephone?  Any other matters we need to discuss with remote counsel?  All right.

MS. CHANG:  No, Your Honor.  Hazel Chang, is it okay if I disconnect now?

THE COURT:  It is.  Thank you very much for participating.

MS. CHANG:  Thank you.

(Ms. Chang has left the hearing at this time.)

THE COURT:  Ms. Westbrook, are you still on?

MS. WESTBROOK:  Yes, Your Honor, we are.  We'd like to listen to the rest.

THE COURT:  Very good.

MR. McDONALD:  Thank you.

THE COURT:  On the other individuals listed in --
regarding filing 10600 regarding the failure to file a PPS,
those claims are also dismissed without prejudice.  And then
those cases with a PPS on file that were previously dismissed,
Cook has noted several of those cases; and as to regarding the
motion to dismiss for those cases, it's denied as moot.  And
regarding Jeanette Renteria, that case is stayed for 90 days
based on the June 12th notice of suggestion of death and
requested stay.

MR. WILLIAMS:  Your Honor, one quick clarification
on docket 10600.

THE COURT:  Yes.

MR. WILLIAMS:  This is more a question for
Mr. McDonald.  We're all the cases on --

The Court just dismissed everything listed on
Exhibit A, but I think some of those cases have agreements
with defense counsel.  So not all the exhibit -- I could be
way wrong.  I just want to make sure the record is clear.

THE COURT:  I'm just going on what's proposed here.
I didn't hear any objection.

MR. WILLIAMS:  And they're not my cases.

THE COURT:  Right.

MR. McDONALD:  It is outlined who gets --

MR. WILLIAMS:  Great.

THE COURT:  Does that take care of it?

MR. WILLIAMS:  Yes.  Thank you, Your Honor.

THE COURT:  All right.  Very good.  Mr. Williams.

MR. WILLIAMS:  Thank you, Your Honor.

MS. COX:  What's next on the agenda?  Is it No. 1?

MR. WILLIAMS:  I thought we were --

The Bellwether update, you want to do that first?

MS. COX:  Yes.

MR. WILLIAMS:  That's fine.

THE COURT:  That's my understanding.

MR. WILLIAMS:  Okay.

THE COURT:  We're going to go from 4 and 5 up to 1, then 2, 3.

MS. COX:  I didn't mean to kick you out.  I just thought we'd do the fastest stuff first, right.

So I'm here to give an update on our Bellwether pool, the process -- the medical record process and it's going swimmingly.  Again, I can report that we've been cooperating and talking and it's been fantastic.  So we have collected authorizations.  We've agreed on a medical records vendor. The vendor has those authorizations and they're out and they're in the process of collecting records.  So short but sweet but it's going well.

THE COURT:  There's great news.  Mr. Williams, you

concur with all that?

MR. WILLIAMS:  I assume so, Your Honor.  Other than Mr. Matthews, I don't know that we've got any -- the four lawyers here have any of these cases.

THE COURT:  Mr. Matthews, you concur, as far as you know?

MR. MATTHEWS:  I do, Your Honor.  I just had one case on here.  I just asked my office about it.  Of the 760 cases, two on this list and one we agreed to dismiss.  The other has an injury, according to the client.  We're waiting on medical records.  We're asking for 30 days.  I don't want to waste the Court's time on single plaintiffs like this.  I mean, these injuries are progressive.  The Court's heard multiple witnesses talk about the fact that --

THE COURT:  You want to come up and Maggie might be able to hear you a little better?

MR. MATTHEWS:  The Court had heard multiple witnesses testify that once a filter tilts, it's more likely to perforate, and it's also more likely to fracture, and there's more likely be an injury, and that's what we're seeing clearly within our client population.  But in any case, we just had one case on this dismissal.  We'd ask for 30 days but we didn't get response from Cook's lawyers.  So --

THE COURT:  Ms. Cox responds right now.

MS. COX:  I'm not sure what you're talking about.

We're just talking about the medical record update and you have one case and you've given us authorizations.  So we're collecting records.

MR. MATTHEWS:  I'm sorry.  We don't have any on this list then.

MS. COX:  Yes.  We're good.

MR. MATTHEWS:  We're good.

THE COURT:  Okay.  Thank you, Ms. Cox.  Yes, Mr. Heaviside?

MR. HEAVISIDE:  I'm not sure if this the right time but I heard yesterday from counsel for Ningard, which is one of the Bellwether cases, it's a Tulip Category 5.

THE COURT:  Okay.

MR. HEAVISIDE:  And he told me that he just found out that his client is deceased.  So we had a discussion as to whether or not this is appropriately a Bellwether case because as I understand it, he's not gotten a personal rep appointed and there's no estate set up.  So I just wanted to bring that to everyone's attention.

And there's a second case --

THE COURT:  What's the name of that case again, Mike?

MR. HEAVISIDE:  Ningard, N-I-N-G-A-R-D.  It's one of the Tulip cases.  It was number 325 on the major roster -- 525.

THE COURT:  All right.  Plaintiff is deceased.  Okay.

MR. HEAVISIDE:  There's a second case, plaintiff name is Avenick, A-V-E-N-I-C-K.  That's a Tulip case Category 6.  And Mr. Avenick's counsel advised recently that his client has developed dementia and Altzheimer's; and in trying to work with their client, it's becoming increasingly obvious that he is not in a position to be responsive.  And I think Ms. Cox has discussed this with Plaintiff's counsel.  So this, too, may not be an appropriate Bellwether case.  So I just wanted to bring that to everyone's attention.

THE COURT:  Appreciate that.

MR. HEAVISIDE:  Thank you.

THE COURT:  Mr. Williams?

MR. WILLIAMS:  Thank you, Your Honor.  I want to discuss the Lexecon issue.  In the briefing that the parties have submitted, I think one thing has emerged and there's an agreement on the key points of law, and those key points of law are one, if a case is filed in a district outside of this district and is made a tagalong and sent here, those cases have a right under the Supreme Court decision in Lexecon to try their cases at home.

The other key point of law that I think the parties agree upon is that in some situations, direct filed cases, cases that are filed directly here, can have that same

procedural right.  We've seen that Defendants attached a number of orders from --

THE COURT:  It's not a Lexecon issue if it's not a transferred case in from the panel.

MR. WILLIAMS:  Under the -- under the holding of Lexecon, I think that's true.

THE COURT:  It is true.

MR. WILLIAMS:  But courts enter orders all the time in all sorts of MDL's, and Cook even attached some exemplars, saying:  You can direct file in this -- in this litigation.  However, you're not waiving your right to try your case at home.

THE COURT:  You can file a change of venue.

MR. WILLIAMS:  Well, it's -- it's more -- it's more than that.  It's you're preserving your right to be able to try that case at home, even if you direct file.  And that's -- that's what's in -- it was in the Vioxx order.  It was in the DePuy order.  So where I think the parties diverge is what needs to happen for that right to be protected.

And what happened here, I want to start, Your Honor, with Judge Baker's case management order No. 5.  This was entered back in April of 2015, when there were only 97 cases, maybe 98, on the docket; and he said:  This order shall govern all cases transferred to this Court as tagalongs; and two, all cases directly filed or removed to this MDL.  And this order

was agreed upon by the parties when it was tendered.

Judge Baker then wrote the following.  Waiver of Lexecons confirmed by Plaintiffs the discovery pool cases only.  Nothing in this case management order or otherwise shall indicate a waiver of Lexecon as to the remaining cases. The order applied to direct file cases and Judge Baker wrote --

THE COURT:  There's no Lexecon issue in direct file cases.  Doesn't exist.  They can file a change of venue.

MR. WILLIAMS:  Your Honor --

THE COURT:  Lexecon -- and if you disagree with me, let me know that.

MR. WILLIAMS:  I do.

THE COURT:  Okay.

MR. WILLIAMS:  I do disagree with you.

THE COURT:  And I respectfully disagree with you.

MR. WILLIAMS:  I appreciate that, Your Honor.

THE COURT:  But Lexecon applies to cases transferred from the MDL panel to the transferee court.

MR. WILLIAMS:  Right.  And things have been happening in MDL practice over the -- over the 40 years that the JPML statute has been in play, like Bellwether trials, for example.

THE COURT:  But the current law from the Supreme Court, not the practice --

MR. WILLIAMS:  Right.

THE COURT:  The current law from the Supreme Court is Lexecon issues arise in cases transferred from the panel to the transferee court.

MR. WILLIAMS:  I agree with that, Your Honor.  I agree with that.

THE COURT:  Respectfully?

MR. WILLIAMS:  No.

THE COURT:  You respectfully agree with me on that?

MR. WILLIAMS:  No, no.  I just agree with you.  Respectfully, sure.  I don't disrespectfully agree with you.

THE COURT:  Say you might want to correct the record there on that but --

MR. WILLIAMS:  I'll get my red pen.

THE COURT:  All right.

MR. WILLIAMS:  But what we do know is -- and Cook concedes this in their brief -- if there is an order from the Court or an agreement from the parties, you can direct file in an MDL and still preserve a right to try that case at home.  It happens all the time.  Fallon did it in PTO 11.  They attach that.  It happens all the time.

The difference between this case --

THE COURT:  Not a Lexecon issue.

MR. WILLIAMS:  We don't have to call it --

THE COURT:  It's a side agreement.

MR. WILLIAMS:  It's a side agreement.

THE COURT:  Okay.

MR. WILLIAMS:  But it still creates a right.

THE COURT:  Okay.  I'm just saying that there's no Lexecon issue.

MR. WILLIAMS:  I'm going to stop using the word Lexecon.

THE COURT:  Okay.  Very good.

MR. WILLIAMS:  But it's a side agreement that's enforceable that creates a right for people to try their cases back home.  And this case is not like Vioxx.  It's not like mesh.  It's not like the DePuy case, where those MDL's were in spots where there wouldn't have been proper venue for direct filing.  So to allow someone to file directly took an order from the Court, took an order in Judge Fallon saying:  You can file your cases directly here.

This Court never had to enter that order and I'm not sure what that order would even say because they can properly file here.

THE COURT:  That's why we didn't file anything because --

MR. WILLIAMS:  Right.

THE COURT:  -- who am I going to tell where to file where?

MR. WILLIAMS:  Right.  So what we did, though, is in

this order, when we created the first Bellwether pool, we said this order applies to all direct file cases; and nothing in this case management order or otherwise shall indicate a waiver of somebody's right to try their case at home.  And it's not just what Judge Baker entered.

When the parties negotiated the short-form complaint, and I believe the language from the agreement is the parties agree -- regarding the form of the short-form complaint, the parties agreed to include paragraph seven, which is the District Court and division in which venue would be proper absent direct filing; and each of these people, for example, in this one, which was in our brief, they said we would have filed in the Western District of Michigan, Kalamazoo Division.

This form was agreed upon in January 2015, when there were only about 60 cases.  It was shortly after that that Judge Baker entered this order, and around that same time we had the entry of the master complaint in which in paragraph 27, the plaintiffs said, "For purposes of remand and trial, venue was proper in the federal judicial district of each Plaintiff's state of residence."

All of these things taken together, when there were only 97 cases on file, led 6,000 additional folks --

THE COURT:  On a direct file, there's nothing for me to remand.

42

MR. WILLIAMS:  No; but you can transfer under 1404(a).

THE COURT:  Pursuant to proper motion.

MR. WILLIAMS:  Pursuant to a proper motion, sure. But just like the direct filing order in Vioxx and in Mesh and any of those other direct filing orders, what Judge Baker's order did, and what the party's agreement on the short-form complaint did, was created a side agreement, as Your Honor said, a right for these people to try their cases at home. And Judge Fallon even said that.  This is his law review article that both parties cite.

And this is what the defendants provide to the Court in their brief.  For cases filed directly into the MDL by nonresident Plaintiffs, the Defendant, and only the Defendant, must waive its sustainable venue and venue related objections.

It sounds real good for Cook.  What they did not do is you'll see there's a footnote there that Judge Fallon wrote.  They did not provide the Court with the footnote and let's see if I can make this work.  What he says is:  This is true unless Plaintiff reserves the right to object to venue if his case is set for trial or stipulates that direct filing is only for expediency and discovery purposes.

What he's explaining is precisely what we did here. I'm not sure what else we could have done to protect a person's right to try their case at home.  And you know, I

think I would be remiss if I didn't say, it's not that we're trying to avoid this Court or Your Honor.  As Judge Fallon did in Vioxx, Your Honor can seek an intra-circuit or an inter -- I don't remember which one it is -- assignment to try these cases at home; but these people have a right to try these cases at home based upon agreements made with -- and I understand it wasn't with Ms. Pierson, but it was an agreement signed by Mr. Lee on behalf of Cook and it was an agreement signed by Mr. Levin on behalf of the Plaintiffs, and Judge Baker entered that order.

When you look at all of the authority that Cook has cited to this Court -- and it's a lot -- every single one of those cases, law review articles, the manual on complex litigation, the Duke Law Review article -- or not law review, practice pointers, what they are all dealing with is when somebody direct files without objection -- and that's an unremarkable proposition.  If somebody direct files into this Court without an objection, then sure, they submit to the jurisdiction of this Court for all purposes; the entirety of the case, even trial.

But when the 6,000 individual people file their cases after Judge Baker entered his order, and after the parties agreed to include in the short-form complaint where the case would have been filed absent direct filing, they were certainly expecting to be able to try their case at home, if

not the outright had a right to do that.

There is simply no reason to include this paragraph seven in the short-form complaint unless the Plaintiffs and Cook both recognized that these cases had the right to be tried at home.  There's absolutely no reason for that to be put in there.

And what we've -- it's almost as if we've stepped into another dimension because we've got these agreements. We've got these orders.  And then we file our brief, and I get accused of bad faith, disingenuity, if that's a word, gamesmanship.  All these terrible things that, frankly, was hard for me to read.  But the one thing, despite all the invective, that Cook never mentioned in either of their briefs was Judge Baker's language in CMO 5 because there's nothing to say about it.  It was the agreement of the parties.  It was memorialized by the Court; and now we're here several years later and I'm having to argue that this stuff didn't happen when it did and was filed.

If they had a real response for that, I would suspect that somebody would have written it in their briefs. I can't help but feel that -- I'm sorry, Your Honor, that we've been whipsawed a little bit in this.  If Cook had felt all along that this language did not create a right, a side agreement to try the case at home, if the short-form complaint wasn't an agreement that people could try their case at home,

you would think that somebody would have said something about that until -- well, within the last couple of months.

And so, Your Honor, at bottom is we've got 6,000 people who filed their cases directly in this Court for the convenience of all.  So it didn't have to be tagged along.  It could just be put in the case and moved.  And they did that when these orders and agreements were on file, and they did that with the expectation that they would be able to try their cases at home.

And when we sent our communication to the Plaintiffs -- all the Plaintiffs' counsel, contrary to what was said in their brief, we said:  Are your clients willing to waive Lexecon?  They told us:  No.  And I reported that to the Court.  I'm not sure how we can get -- I'm not sure how somebody can put in a brief that I would have told the Court I was going to do something and then not do it.  That's offensive to me.

And I guess -- Mr. Martin pointed out one thing I'll say before I sit down.  This idea of -- that Cook had said that there's no such thing as an originating jurisdiction when things are filed directly into the MDL.  In the *Dobbs v. DePuy* case, which we cited in our brief, the Seventh Circuit said, "District Courts in our circuit have taken that approach.  Foreign cases filed directly in a District Court, as part of an ongoing multi-district litigation are treated as having

originated outside the district, and we ratify that approach here."

In that case it was a choice of law issue, but there would be no sense in treating -- giving cases an originating jurisdiction for choice of law purposes but not for remand or transfer purposes.

If Your Honor has questions, I'd be happy to answer them but --

THE COURT:  No questions.

MR. WILLIAMS:  Okay.

THE COURT:  Appreciate your presentation.

MR. WILLIAMS:  Thank you, Your Honor.

THE COURT:  Ms. Pierson?

MS. PIERSON:  Good morning, Your Honor.

THE COURT:  Good morning.

MS. PIERSON:  Your Honor, we had planned today to have Mr. Paul address with you why plaintiffs who originally filed in the Southern District don't have Lexecon rights under the MDL statute, Section 1407.  Given Your Honor's comments, we don't think it's necessary to cover that part.  So I'd like to skip straight to the part of the argument that I intend to handle, which Mr. Williams has articulated today and this is Plaintiff's argument, in essence, that although there was no direct filing order entered by this Court, that somehow the short-form complaint or CMO 5 are an actual or an implied

direct filing order.  I think at its heart that's what he's really saying.

As Your Honor knows, though, direct filing orders -- Tina, do you mind if we pull up -- thanks.

As Your Honor knows, direct filing orders are entered from time to time in MDL's but they are not universal; and in short, a direct filing order has four essential elements.  The first is an agreement between the parties that the Plaintiffs may file their cases directly in the MDL, even when it is typically not a preferred venue.

And maybe let me pause there before I go on and say what I think Your Honor may have observed already, too.  This terminology, *direct filing*, it's not very precise.  Parties tend to use direct filing as a term to refer both to cases that are filed pursuant to a direct filing order and to cases that are filed in a proper venue under Section 1391.  So I'm going to do my best today to refer to those cases, the cases filed pursuant to 1391 and a proper jurisdiction as cases that are filed within a proper venue.

And by the way, this whole argument that we're having right now is about 23 of the 24 Bellwether discovery pool picks.  Twenty-three of the 24 discovery pool picks were filed in this Court, a proper venue, and they were filed directly; but of course, they weren't filed pursuant to a direct filing order because there is no such order that's been

entered by Your Honor.

So back to the four elements.  A direct filing order, in MDL's who have adopted them, it includes four essential elements and these are elements that you can find in the orders themselves, but they're also discussed in things like the Manual for Complex Litigation and in the Duke Law Review manual that discusses direct filing orders.

First is an agreement between the parties that the Plaintiffs may file their cases in the MDL, even when it typically does not have proper venue.

Second.  An agreement that the Defendants will waive whatever objections they have to venue or to personal jurisdiction if the case is filed in the MDL venue.

Third.  It includes an agreement that at the end of the pretrial proceedings, those cases be transferred to another district for trial; and,

Fourth.  Direct filing orders typically include an agreement that when it comes time to consider transfer under 1404, neither party will say that the other party has waived his or her right to trial in a different venue by litigating in the MDL during the pretrial proceedings.

Direct filing orders typically cover things like stipulations or agreements on choice of law.  Sometimes they address personal jurisdiction as well, but these four elements are central to each and every direct filing order and they

require the parties' agreement in the first instance, but then they also require the Court's approval -- this Court's approval to permit that kind of filing and to permit the parties to reach an agreement on venue that would otherwise not be proper outside the context of an MDL.

The MDL court memorializes the order in a direct filing order and the end result typically is, at the conclusion of the MDL, the Plaintiffs' cases are automatically transferred by the MDL court pursuant to Section 1404 to the Plaintiff's home state.  Direct filing orders are an agreement for convenience but they carry serious ramifications as it relates to venue.  And multiple courts have either questioned or refused to enter direct filing orders, either creating or preserving these rights, because they tend to create orderly results.

When it comes to convenience, Judge Fallon said in the Vioxx cases that direct filing can create oddities in venue because it both creates and preserves venue rights that don't exist under the plain terms of Section 1391.  Judge Pallmeyer, in the NexGen MDL, rejected the Plaintiffs' request for direct filing order and she did it both based on the language of Judge Fallon about the oddities that it creates with respect to venue, but she also said that she believed it was incumbent upon the JPML to know the number of cases that were being transferred into the MDL.  And that the only way

the panel would have the ability to track that, to know the size of the MDL and the number of cases being filed, was if all cases had to go through the panel.

So different judges take different approaches. But the bottom line is, Judge, that there is no direct filing order here, regardless of the documents that the Plaintiffs point to, whether it's a short-form complaint or CMO 5. None of those things --

THE COURT: What's your interpretation of Judge Baker's language in CMO 5?

MS. PIERSON: Let me skip ahead to that. Judge, as it relates to CMO 5 and to the short-form complaints, if I could address those together, those are the two things that the Plaintiffs point to to suggest that there is an implied direct filing order. And it's our position that none -- none of those things create an implied direct filing order and there is no law to support such a thing.

In the first instance, Your Honor, there's not one court, not one treatise, that ever suggests or supports that there can be an implied direct filing order. It's not possible. Your Honor would be the first judge, in all of the judges to address direct filing, to find an implied agreement to the four essential elements of a direct filing order.

Second, though, when we talk about the master complaint, which Mr. Williams didn't talk about today but the

briefing refers to, we know both the master complaint and the short-form complaint really at best can be interpreted as pleading two proper venues.  Neither of those documents specify any agreement, much less this Court's approval to transfer at the conclusion of pretrial proceedings.  Neither of those documents address whether a party may maintain objections to transfer based on litigation of the proceedings for a number of years.

In the master complaint, what I've put on the screen in front of you, Your Honor, are the two competing venue allegations that the Plaintiffs make.  In paragraph 27, the Plaintiffs assert that venue is proper pursuant to 1391 in the Federal Judicial District of each Plaintiff's state of residence.  Conflictingly, though, in paragraph 28 they assert that this Court is the proper jurisdiction for cases to be filed.

In the short-form complaints, similarly, the Plaintiffs point to paragraph seven of the short-form complaint to suggest that the language -- the venue which would be proper absent direct filing, that that is somehow an implied direct filing order.  It's pleading a proper venue.

If you also look at paragraph nine of the Plaintiff's short-form complaint under jurisdiction, this is the typical response that we see.  And by the way, this is the short-form complaint for plaintiff Angela Lee, who is a client

of Mr. Martin.  You'll see that the basis of jurisdiction under paragraph nine asserts that a substantial amount of activity giving rise to the claims occurred in this district and defendants may be found within this district.  Therefore, venue is proper in this jurisdiction pursuant to Section 1391. These are competing allegations of two proper venues; and Cook agrees, there are two proper venues in which these cases could have been filed absent the MDL.

We know that the Plaintiffs chose the Southern District of Indiana not just for these individual cases but also for the MDL as a whole.  They argued to the JPML that this district was the best place in which these cases could be heard and we can find that language in their motion to transfer and consolidate; but more specifically, in the memorandum of law that the Plaintiffs filed to the JPML, they say:  In conclusion, it is hard to imagine a more appropriate forum than that of where the Defendants made, marketed, and sold the product, and where the Defendants are headquartered.

So there are two proper venues and Plaintiffs concede that.  And at best, that's what the allegations in their complaint can be construed to say.

One other thing about the complaints and then I'll address CMO 5.  I've not forgotten your question, Your Honor. I apologize it's taken me a little bit to get there but I think this is helpful background to CMO 5.

Remember, the allegations in a complaint are just that.

THE COURT:  It's undisputed there's two proper venues here.

MS. PIERSON:  Correct.

THE COURT:  Move on with that.

MS. PIERSON:  Correct.  The point, though, Your Honor, with respect to the complaint is that the short-form complaint, despite Mr. Williams argument, it can't create an implied direct filing order because it's an allegation. That's all.  An allegation in a complaint, whether we're talking about the master complaint or the short-form complaint.  And what I put on the screen in front of you, Your Honor, is the answer to the allegations in the short-form complaint.  They were denied by Cook.  And the allegations with respect to Plaintiffs' venue in the master complaint also were denied by Cook.  Cook pled that it lacks sufficient knowledge or information and we know under the law that that acts as a denial of the allegation.

So to the extent that their contention is that somehow the complaint creates an implied direct filing order, that can't be true under the basic rules of pleading and we know Cook's answers deny that.  That's not a meeting of the minds.

Similarly, when the Plaintiffs talk about Judge

Fallon -- let me skip ahead.  They talk in their papers about Judge Fallon somehow suggesting that a complaint can create a unilateral direct filing order.  And respectfully, Judge, we believe that's an incorrect recitation of what Judge Fallon says.  We've included at tab five of the notebook that we provided to the Court on Monday the relevant excerpts from Judge Fallon's article; but you'll see on the screen in front of you, here's exactly what Judge Fallon said.

He hypothesizes that an individual Plaintiff could potentially preserve a Lexecon objection by making a notation in the complaint.  But then he says:  While this alternative appears attractive, it may not be effective.  He notes there is no case law on the subject.  It is doubtful that a litigant can unilaterally place conditions on a court order.  Without an order allowing direct filing by a nonresident Plaintiff, such Plaintiffs have no right to file directly into the MDL.

His footnote, taken in context, says the exact opposite of what the Plaintiffs claim.  And just one clarification.  Mr. Williams told that you there was a different footnote in Judge Fallon's article that we didn't provide to you in full.  Quite to the contrary.  On page 17 of Cook's bench brief, you'll find the text of the footnote to which he recites.  There's no attempt to provide the Court with half the information here, as Mr. Williams seems to suggest.

You ask about CMO 5, Your Honor, and there are a few reasons why CMO 5 also does not create an express or an implied direct filing order.  First, CMO 5 itself is not a direct filing order.  And you remember when I went through the four essential elements for any direct filing order, CMO 5 contains none of those essential elements.

Second, Your Honor, at the time that CMO 5 was entered, roughly 50 percent of the cases that had been filed in the Court at the time were transferred in through the JPML. So in CMO 5, much like this Court did at the last status conference -- or two status conferences ago, in CMO 5, the Court ordered:  Before we go to the trouble to pick the discovery pool, the parties agree that Lexecon will be waived. At the time that CMO 5 was entered, no discovery pool had been picked.  So the parties and Judge Baker had no way of knowing if all the cases that were picked would be cases that had been transferred in through the JPML or if cases would be cases in which there was original jurisdiction.

As a matter of convenience up-front at the Plaintiffs' request, this issue of Lexecon waivers was addressed globally; but that's not the same thing as Cook agreeing -- entering into an agreement with the Plaintiffs and saying:  We agree at the conclusion of pretrial proceedings that your case will be transferred back to your home district. We agreed that this case won't be tried in the Southern

District of Indiana.  And it's certainly not an expression by Judge Baker or by Your Honor that Your Honor has agreed that that -- that kind of a stipulation between the parties will have any force and effect.

This is a three-party contract, in essence, between Cook, the Plaintiffs and the Court, and there has to be a complete meeting of the minds on that and you can't find that in CMO 5.  You certainly don't find any of the language that addresses issues like what will happen to the case at the conclusion of the pretrial proceedings.  As Your Honor noted at the outset on this argument, for cases that are filed pursuant to 1391, there is no Lexecon issue.  The portion of CMO 5 to which Mr. Williams refers, that has nothing to do with cases where there is original jurisdiction pursuant to 1391.

And just one other point of analogy, Your Honor.  We provided to you a notebook on Monday of the copies that we thought were quite relevant to this issue, and it's at tab 16 to 18 that there are three cases that include cases related to venue selection clauses and contracts and in our view that's very analogous to this situation.  Mr. Williams calls it a side agreement on direct filing.  We believe it requires an actual direct filing order to preserve or create a right to transfer at the conclusion of pretrial proceedings where the case is filed in a proper venue in the first instance.

But there are two Seventh Circuit cases *Munzar* and *Paper Express* that I think are directly on point on this issue.

THE COURT:  I think that was my term is a *side agreement* trying to distinguish here as to what's Lexecon and what's not, and I think we did that and I think that was my terminology, *side agreement*.  I understand your point.

MS. PIERSON:  I don't mean anything negative by that, Your Honor.  I only mean to say that really what the Plaintiffs are arguing, in essence, is that you should find there is either an actual direct filing order, which of course there's not, or that you should find an implied direct filing order based on CMO 5 or based on some pleadings in a short-form complaint.  That's really my only point.

An implied agreement still takes an agreement, though.  A meeting of the minds between the parties.  And these Seventh Circuit cases that deal with venue selection clauses and contracts make clear that any agreement as it relates to venue has to be clear, express, and unambiguous.

THE COURT:  I see a difference here in other MDL's in which there were not two proper venues.  Judge Fallon, I believe, indicated that in some of these instances you may have rather odd venue issues come up.  We don't have that here.  We have proper venue here.  We have proper venue wherever the plaintiff resides.  I think that's undisputed,

right?

MS. PIERSON:  Mm-hmm.

THE COURT:  There's not a Lexecon issue in those direct filed cases.  There's proper venue here; and as we all know, there is a way to transfer venue and that's by proper motion.

MS. PIERSON:  Correct.  And there is no such motion for the 23 cases in this discovery pool, Your Honor; and the elements of 1404(a) transfer cannot be met at this stage in the litigation.  They just can't as a matter of law and of fact.  We argued that a few hearings ago.

But Your Honor, you're not alone in being in this position of an MDL being situated in the jurisdiction in which the defendants are located.

THE COURT:  I know that.

MS. PIERSON:  In the testosterone litigation, AbbVie, as an example, is located just outside of Chicago and the MDL was located in the Northern District of Illinois.  And in that MDL, Judge Kennelly -- the parties agreed to and Judge Kennelly entered a direct filing order, a very detailed direct filing order.  I think we provided that a couple of hearings. Ago and it addressed the fact that cases in which AbbVie, the defendant, cases that were filed in that original jurisdiction were within the full province of the Court for purposes of trial pursuant to Section 1391.

So just because Cook is located in the Southern District of Indiana, that doesn't mean that the parties could skip the necessity of reaching agreement on a direct filing order; or specifically, it didn't obviate the Plaintiffs' obligation if they wanted to reserve a right to automatic transfer at the conclusion of the pretrial proceedings, that they didn't have to propose a direct filing order or this Court didn't have to bless it.

THE COURT:  You're making this so much more complicated than it needs to be.  There's no direct filing order.  There's no Lexecon issue on these direct files.  If the Plaintiffs want to have their case tried in their home area or their home district, then they need to file a change of venue.  That's just the way the rules are.

MS. PIERSON:  Yes.

THE COURT:  You can't do it any other way.

MS. PIERSON:  We agree.

THE COURT:  Without express agreement.

MS. PIERSON:  We agree, Your Honor.  At the end of the day, we think this is a question of statutory construction and it really isn't anymore complicated than that.

THE COURT:  We can make it really complicated but I'm not inclined to do that.

MS. PIERSON:  And I fear both sides have done that over the last month as we really toil over these issues.  We

wouldn't do that if it wasn't important.

At the end of the day, Your Honor, though, as I said, we're here to talk about the 23 Bellwether discovery pool cases; and of those 23 cases, you have complete authority to try those cases. We plan to continue to follow your Bellwether protocol that's been in place since last October. And when I point to venue clauses by analogy, I say that only to say, Your Honor, the Seventh Circuit standard is that an agreement on venue has to express clearly and unequivocally a manifest intent to create or waive a venue right. Venue is clearly held as one of our most important rights. If and when the Plaintiffs file a 1404 transfer motion as to the 23 cases, we'll address it at that time, but there is no such motion before the Court today.

THE COURT: I mean each side, Plaintiff and Defendant, is entitled to their venue -- proper venue.

MS. PIERSON: That's correct, obviously. In the selection of Bellwether cases, Your Honor, there are obviously reasons that you decided to choose three more Bellwether cases to test issues that are representative of the MDL as a whole, to decide issues that impact the cases across the MDL.

THE COURT: I just want to move this MDL along down the road, get some cases tried somehow, some way to move it on down the road. My concern is here -- and Plaintiffs certainly have a right to file a motion for change of venue. Say that I

grant a motion for change of venue at this point in time.  We send it to of Massachusetts or wherever.  How long is that going to take to get that case tee'd up for trial, to get it on a court's calendar?  I'm not only concerned about Defendants having proper venue here but I'm concerned about Plaintiffs having proper venue here and getting their cases either resolved outside of trial or getting some of these cases tried so we can have some type of guidance as to resolving all of these cases.  We're kind of spinning our wheels here and I don't want to spin them anymore.

          MS. PIERSON:  1407 dictates that this is the place that the pretrial proceedings and motion practice and all those things should take place.  None of that's happened in the 23 cases, particularly not in the Tulip cases, which is the vast majority of the Bellwether cases before you.

          I'll stop there, Judge.  We want to get to Bellwether trials.  We've wanted to get to these Bellwether trials since you entered your order last October.  So we're anxious to stick with the schedule that Your Honor has entered and to move these things along.

          THE COURT:  Okay.  Thank you.  Mr. Williams, anything else?

          MR. WILLIAMS:  Thirty seconds to talk with counsel?

          THE COURT:  Sure.

          (Off the record.)

MR. WILLIAMS:  Your Honor, I hear Your Honor loud and clear that if a Bellwether case doesn't want their case tried in this venue, then they can make their argument via formal motion and we will talk with the folks about that.  My concern, though, too is if these people file these motions and they are what we think they are, they're meritorious --

Let me back up.  If Cook's right, Your Honor's going to have to try 6,000 cases.

THE COURT:  Well, that might be my successor.

MR. WILLIAMS:  Yeah; but somebody here and these cases will never resolve.

THE COURT:  That's true in any MDL that has a lot of cases in it.  Judge, you're going to have to try 3,000 cases here.  You know, how are you going to do that?  Well, that's the purpose of the MDL, isn't it, to try some Bellwethers to give you an idea of what a Category -- in this instance, a Category 2 case is worth, Category 5, Category 6.  I'm open to suggestion.  How else do we do it?

I mean, if -- say your request for me to remand all these cases have been transferred from the panel to me and I say:  Okay, done.  Remand them all back.  How long is that going to take to resolve these cases?  I mean, you'll get whatever cases you represent -- your firm represents, you'll get them resolved but the cases will be all over the place.  New judges coming in starting at Square 1 trying to get on

busy state court or Federal Court dockets.  I don't know.  I'm open to suggestion but --

MR. WILLIAMS:  Can Mr. Martin respond for me?

THE COURT:  I'm open to suggestion here but what we're doing now is working through the framework that has been designed to handle this large mass tort and complex product liability litigation.  I don't know how else to do it.  How else to give you -- believe me.  I've got other things I can do.

MR. WILLIAMS:  I know.

THE COURT:  And I'm trying to help you, the Plaintiffs and the Defendants, get this case moving down the road so eventually it might be resolved at some point in time. Last hearing you indicated to me that:  Judge, there's no reason to have these cases anymore.  The Defendants have made a settlement offer to us.  They say it's not going to improve, no sense --

MR. WILLIAMS:  Right.

THE COURT:  -- going forward.  Well, how many times have you heard that in a settlement conference:  This is our final offer, not going to make it anymore.  Let's go home. And then subsequently gets resolved down the road.  The numbers change.

MR. WILLIAMS:  That has happened to me before.

THE COURT:  Oh, yes.  With every case it does.  I

don't get involved in settlement but certainly I'm aware of all of that, how those things work.

I'm trying my best here, try to get --

MR. WILLIAMS:  Understand, Your Honor.

THE COURT:  Get these cases resolved one way or the other.  And I'm more than happy to try as many cases as you want me to try.  If you don't want me as the judge on the case, we can get another judge, I guess.  I'm assuming there's a procedure for that, somehow, some way.

MR. WILLIAMS:  And that's not our suggestion.

THE COURT:  But venue is here.  Venue is proper here.  I know everybody likes to try their cases in their home, in their backyard on home court advantage and -- but Defendants have that right, too, to be able to try their cases in a proper venue as well.

MR. WILLIAMS:  I would agree with that, if we had not had all of these things happen prior to -- but may Mr. Martin speak for me?

THE COURT:  Sure.

MR. MARTIN:  Just two things, Your Honor.  I wanted to remind the Court -- and I don't have the docket numbers of these particular documents, but the Court may recall -- and I believe the argument was in Evansville.  We did present two motions to transfer venue.  One was a set of --

THE COURT:  Motion to remand, I believe they were.

MR. MARTIN:  I think we called it the wrong thing but what the guts of it were -- the guts of it were change of venue.  And there are approximately -- one set was for a set of cases -- early cases --

THE COURT:  A motion to remand is different than a motion to change venue in an MDL, right?

MR. MARTIN:  Oh.  It definitely is.

THE COURT:  Sure it is.

MR. MARTIN:  I'm just informing the Court or reminding the Court that I think we called the motions for remand but they were motions to transfer under 1404(a), I guess it is.  I'm simply saying there are two motions to transfer on -- that are ripe for a ruling and I can get the Court the docket numbers for those.  And there were, I believe, eight or nine cases of Mr. Matthews.  In one of them David filed that and then I filed on behalf of my firm another eight or nine cases that -- so there are two motions to transfer venue pending in those two cases.  We would like to get a ruling on that some day.

THE COURT:  On these cases that have been transferred from the panel or direct file?

MR. MARTIN:  These were direct file cases.  I believe probably all direct filed cases.

THE COURT:  I think I've made my position pretty clear on that today.  I'll take a look at them but I know

they've been filed.

MR. MARTIN:  Right.

THE COURT:  But in all candor, I haven't looked at them --

MR. MARTIN:  Got it.

THE COURT:  -- since they were filed.

MR. MARTIN:  Got lots on your plate.

THE COURT:  But I will if you can provide the docket number.  I'm sure Tina has them.

MR. WILLIAMS:  Your Honor, at some point they're going to be put on an agenda for hearing.  So we can deal with it at that point.

MS. PIERSON:  The ones that Mr. Martin is referring to actually already have been heard.  They were heard when we were in Evansville two or three months ago and those were motions to remand.  They weren't motions to transfer.

THE COURT:  That's the only thing I can recall is a motion to remand.

MS. PIERSON:  We stand on our pleadings on that point, Your Honor.  1407 doesn't apply to the cases at issue of those two motions.

MR. MARTIN:  Your Honor, for the record, the pleadings or the motions were titled incorrectly.  They were titled *motions for remand.*  They should have been entitled *motions to transfer venue* and that was a mistake.  I think

David made the mistake first and I followed it.

MR. MATTHEWS:  Thank you, Ben.

MR. MARTIN:  But everybody knows --

THE COURT:  You slid that in there pretty smooth, Ben.

MR. MARTIN:  Everybody knows that -- if they don't know, they know now.  We argued them and that was raised. Those are motions misnamed.  If we need to --

THE COURT:  Why don't you file something.

MR. MARTIN:  File something like that.

THE COURT:  You wish to clarify that, you need to file something.

MR. MARTIN:  All right.  They've been heard and thank you, Judge.

THE COURT:  Next up?

MS. PIERSON:  Judge, the last agenda item was the Defendants' motions for entry of the amended Bellwether selection protocol.  There are two issues in that.  One is adjusting our deadlines to conform to where we are because we picked the cases a little later than we thought we did.  The Plaintiffs have no objection to that, as I understand it.

The other issue, though --

THE COURT:  What is that agreement?

MS. PIERSON:  Each -- the deadlines were backed up for things like the striking -- let me just grab it real

quick.

THE COURT:  From what date to what date?

MS. PIERSON:  There are whole series of dates, Your Honor.

THE COURT:  Okay.  They're all by agreement?

MR. WILLIAMS:  The dates, yes.

MS. PIERSON:  The Plaintiffs didn't object to those. Just for our record, they can be found in docket 10787.  The amended Bellwether selection plan protocol is attached as Exhibit A.  And the specific dates that we'd ask that the Court adjust -- some of them have already passed now but in paragraph eight, we ask for July 3rd as the deadline for the Plaintiff Steering Committee to provide a list to counsel for any cases transferred.  We know now that there are none that addresses the Lexecon issue, which we now know is irrelevant for 23 of the 24 cases.

There's a deadline of July 11th for striking. There's a deadline of August the 5th for briefing to the Court as to which cases each side believes it should be -- should be chosen.  And then at the August 15th hearing, Your Honor would hear argument on the issue of which cases is the proper cases to choose for the next three Bellwether trials.  There's a series of dates in there, Your Honor.

The only paragraph that I think was in dispute was reference to Lexecon and potentially Lexecon strikes in

paragraphs eight and nine of the proposed amended plan.  We propose that if Your Honor was inclined to require strikes -- or to require Lexecon waivers, that the strikes be adjusted based on that; but I think that's irrelevant, given that we know now that 23 of the 24 case were filed in this jurisdiction and we know Your Honor's position on that.

If it's helpful, we could submit a new version of the amended plan, if you like, that omits those paragraphs or Your Honor could just strike through the portions that deal with Lexecon.

THE COURT:  Send in an amended plan.

MS. PIERSON:  We'll be happy to do that.  Thank you, Your Honor.

THE COURT:  Also, Ms. Pierson.

MS. PIERSON:  Yes.

THE COURT:  Mr. Heaviside indicated to the Court today that there were a couple -- I don't know who the names were, but Mr. Ningard and Mr. Avenick -- Mr. Ningard, I believe that's correct, is deceased and Mr. Avenick has some dementia or Altzheimer's issues and obviously might be difficult to proceed on those cases.  What suggestion would the parties have regarding those two?

MS. PIERSON:  I think Mr. Heaviside is right that it would be difficult to proceed on those.  I just ask for some time to confer with him between now and the next hearing so we

can figure out how best to address those cases, if they should be dismissed, if they should be taken out of the Bellwether discovery pool.  We certainty want to work cooperatively on issues like that, though.

THE COURT:  Mr. Heaviside, do you have any suggestion here as how we might proceed with those two cases?

MR. HEAVISIDE:  Your Honor, all I can say is it's my pleasure to discuss these issues with Ms. Pierson and come up with something.

THE COURT:  I appreciate the cooperative spirit.  In all honesty, I do recognize the complexity of the issues here and these cases are all serious to the lawyers and to the individual Plaintiffs, but I do appreciate your working together.  This is hard work and I appreciate all that the steering committee has done and certainly defense counsel as well.  It's been very gratifying to watch you work on all this.

MS. PIERSON:  Thank you, Your Honor.  We appreciate your help as well, and obviously the help of Ms. Doyle and your entire staff.  Those are all the agenda items we have for today, Your Honor.

THE COURT:  Mr. Martin?

MR. WILLIAMS:  We have one issue.

MR. MARTIN:  On that amendment, Your Honor, I just want for clarification a couple things.  So the -- my

understanding is that the portions of the motion for the amended order 25, the portions where the request for show cause hearings for those who have transferred cases that are not waiving Lexecon, those portions of the motion are being withdrawn.  Is that my understanding?  Is that correct?

MS. PIERSON:  Yes.  I think those provisions are moot.  We'll prepare a new plan, be happy to send it to Martin so he can look at it in advance.

THE COURT:  Let's do that, please.

MR. MARTIN:  One other thing little and the last thing on this, Your Honor.  On their motion -- I guess filed a motion, Exhibit A to the motion regarding the amended case management order No. 5, if the Court looks at the very end of that order, there are two lines in there.  One of them we are raising and have a small problem with.

It says distribution to all electronically registered counsel of record via CM-ECF.  We don't have any problem with that and that's notice of this order.  But then it says distribution to all nonregistered counsel of record to be made by Plaintiffs' lead counsel.

We don't -- we don't -- quite frankly, we kind of copied that and put it in ours; but in looking at our proposed order but in looking at this, that won't work because we cannot be in a position as clearly counsel to notify folks who are not registered counsel of record.

First of all, it's difficult for us to know who's registered and who is not.  It's a massive chore to undertake and if we did undertake it, and if we gave notice to those people, I don't know that that's notice -- that notice under the Federal Rule of Civil Procedure is probably not notice.  I think if there is -- I think that notice should be given, however the Court does it and however the Court does it with respect to its local rules and with respect to rules of procedure.  That would be our suggestion.

So getting down to it, we would ask that anything in CMO 25 and from here on out that distribution by co-lead counsel, our requirement to be distributing all non-- to all nonregistered counsel of record to be made by Plaintiffs lead counsel, we cannot be responsible for notification that has responsive dates and very serious dismissal possible.  So we ask that one line be taken out of whatever the CMO 25 turns out to be, if the Court understands kind of where we are on that.

THE COURT:  I mean it does seem rather cumbersome. I don't know how to address that but we'll take a look at it and see what best practices are on that.  I agree with you, it seems to be rather cumbersome on Plaintiffs Steering Committee.

MR. MARTIN:  If we miss a notice --

THE COURT:  Sure.

MR. MARTIN:  -- then they're going to be able to say:  Well, we didn't have due process.  So there we go. Thank you.

THE COURT:  Okay.

MR. WILLIAMS:  Your Honor, may I raise one scheduling issue --

THE COURT:  Sure.

MR. WILLIAMS:  -- before we take off?  Over the last week or so --

We originally had on today's agenda some motions that Cook had filed based on deficient or absent categorization forms for a number of Plaintiffs.  And over the last week or two, I've been fielding, no exaggeration, 20 calls a day from different folks wondering what they need to do or if they've done enough, and we had agreed so that we could fit in what we need --

THE COURT:  Calls from lawyers?

MR. WILLIAMS:  Yes.  Yes.

THE COURT:  Okay.

MR. WILLIAMS:  We agreed, both parties, so that we could make sure that we fit in today's schedule, to take that issue off the agenda and bump it to July.  I fear that that issue alone, with all of these individual Plaintiffs and their counsel, could take a significant amount of time.  And if Your Honor was okay with it, I would like to suggest us having --

don't lump this into our monthly status conference when we're dealing with issues of moving the MDL forward.

THE COURT:  I see.

MR. WILLIAMS:  And it doesn't really have anything to do with us.  I would prefer to have that heard on a separate day, whether it's in person, by phone or whatever. Is that something we can talk to Ms. Doyle about?

THE COURT:  Sure.  Absolutely.

MR. WILLIAMS:  Okay.

THE COURT:  She'll find some time and take care of that.  Absolutely.

MR. WILLIAMS:  Okay.

THE COURT:  If calendar permitting, I'm always available.  So if you ever need time, just contact the Court and if we can get you in quickly, we certainly will.

MR. WILLIAMS:  Thank you, Your Honor.

THE COURT:  Anything else today?

MS. PIERSON:  Nothing further, Your Honor.

MR. WILLIAMS:  No, Your Honor.

THE COURT:  All right.  Thank you all very much again.  Wonderful presentation.  And any orders that we signed today will be docketed today, and anything I took under advisement we'll get that out as quickly as we can.  Okay.

Everybody, safe travels.  Have a good weekend.

MR. WILLIAMS:  Thank you, Your Honor.

75

THE CLERK:   All rise.   Court is in recess.

(Court proceedings concluded at 11:51 a.m.)

**********************************************************

CERTIFICATE OF COURT REPORTER


     I, Margaret A. Techert, hereby certify that the

foregoing is a true and correct transcript from

reported proceedings in the above-entitled matter.




/S/ Margaret A. Techert                    **July 19, 2019**
MARGARET A. TECHERT
Official Court Reporter
Southern District of Indiana
Evansville Division