# Exhibit E

Cook Defendants' Opposition to
Plaintiffs' Motion for Suggestion of Remand of All Celect Cases

1

<pre>
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF INDIANA
                       INDIANAPOLIS DIVISION



IN RE: COOK MEDICAL, INC.,        )
IVC FILTERS MARKETING, SALES      ) Cause No.
PRACTICES AND LIABILITY,          ) 1:14-ML-2570-RLY-TAB
LITIGATION                        ) Indianapolis, Indiana
                                  ) October 25, 2019
                                  ) 10:09 a.m.
                                  )




                       Before the Honorable
                        RICHARD L. YOUNG

                  OFFICIAL REPORTER'S TRANSCRIPT OF
                        STATUS CONFERENCE


For Plaintiffs:
                              Ben C. Martin, Esq.
                              Law Offices of Ben C. Martin
                              3710 Rawlins Street, Suite 1230
                              Dallas, TX  75219



                              Joseph N. Williams, Esq.
                              Riley Williams & Piatt, LLC
                              301 Massachusetts Ave.
                              Indianapolis, IN 46204



                              Michael W. Heaviside, Esq.
                              Heaviside Reed Zaic
                              910 17th Street NW, Suite 800
                              Washington, D.C.  20006
</pre>

For **Defendants:**                    Andrea Roberts Pierson, Esq.
                                       Jessica Benson Cox, Esq.
                                       Eldin Hasic, Esq.
                                       Faegre Baker Daniels, LLP
                                       300 N. Meridian St., Suite 2700
                                       Indianapolis, IN  46204


Court Reporter:                        Margaret A. Techert
                                       United States District Court
                                       101 NW Martin Luther King Blvd.
                                       Evansville, Indiana  47708


          PROCEEDINGS TAKEN BY MACHINE SHORTHAND
     TRANSCRIPT CREATED BY COMPUTER-AIDED TRANSCRIPTION

(In open court.)

THE CLERK:  All rise.  Court is in session.  Please be seated.

THE COURT:  Good morning.  Good to see you all again.  We're here today in We're here in the Cook Medical IVC Filters Marketing Sales Practices and Products Liability Litigation.  This is MDL 2570.  Matter before the Court today is we're going to have some argument on the Cook omnibus motion for summary judgment based on statute of limitations.

And here representing the Plaintiffs, the usual crew of Joe Williams, Mike Heaviside and Ben Martin.  Representing Cook, of course, is the usual crew of Andrea Pierson, Jessica Cox, and Eldin Hasic is in the back as well.

How do you wish to proceed today, Ms. Pierson, Mr. Williams?

MS. PIERSON:  Thank you, Your Honor.  Good morning.

THE COURT:  Good morning.

MS. PIERSON:  We have conferred with Plaintiffs and have agreed that with respect to this motion for today, we'll reserve argument to the question of choice of law to be applied to the cases that are at issue in this motion.  We'll be meeting again in the middle of November and at the hearing in November, we'll take up the application of whatever law Your Honor decides is applicable to the cases to the particular facts of the cases that are at hand in the motion.

THE COURT:  All right.  Mr. Williams?

MR. WILLIAMS:  Agree.

THE COURT:  All right.  Ms. Pierson?

MS. PIERSON:  Thank you, Your Honor.

THE COURT:  Is there some way we can get the screen on back there so the interns can see what --

THE CLERK:  It is not connected.

THE COURT:  All right.  Why don't you two come up and sit at counsel table behind there and then you'll be able to see what -- we've got some IU Mauer students coming in to help us.

MS. PIERSON:  Wonderful.

(Off the record.)

THE COURT:  Ms. Pierson.

MS. PIERSON:  Thank you, Your Honor.  And if I may approach, I've got a few materials.

THE COURT:  Okay.

THE COURT:  Mr. Williams, you have these?

MR. WILLIAMS:  I assume I will.

THE COURT:  Okay.

MS. PIERSON:  Your Honor, the issue before the Court today is the application of the choice of law to a group of cases that are at issue in this motion for summary judgment. The motion was originally filed back in -- I think it was July, and we actually withdrew the first filing of the motion

because we realized that we had, in fact, applied the wrong law to this question.  So we refiled the motion and that's what's before you.

When we filed the motion, there were roughly 144 cases that were at issue in the motion where Cook had challenged the cases as barred by the statute of limitations. In a nutshell, the motion provided that this group of cases, which were filed in the Southern District of Indiana, were subject to Indiana's choice of law rules; and as a consequence of that, they were time barred.

In addition, Cook argued in the alternative, if the Plaintiff's home state law were applied, the cases would also be barred by the statute of limitations because they arose from jurisdictions -- the Plaintiffs were located in jurisdictions where there was no discovery rule or limited discovery rule.

Since the filing of the motion, four of the cases at issue in the motion have been withdrawn.  Fifteen cases were dismissed by counsel or there's a stipulation to dismiss pending.  Sixteen cases are subject to motions for extension of time.  And just for ease of reference, Judge, of the things I handed up to you, the notebook that I provided at Tabs 1 and 2 list the cases that have been withdrawn or dismissed or subject to a stipulation of dismissals.  So you can clearly see how the cases break out.

In addition, I provided a proposed order that dismisses the cases where there is no opposition to the motion, which I'll explain in just a second. Once you take out the cases that have been withdrawn or dismissed or subject to extensions of time, that leaves you with 109 cases; and of the 109, there are 12 cases where the Plaintiffs just didn't respond to the motion or they may have submitted a written response to the motion but within the written response, they said they did not oppose summary judgment. Just to be clear, the proposed order that I gave you, Your Honor, that addresses the 12 cases where there is no response or their papers make clear that they don't oppose summary judgment.

THE COURT: In addition to the 15, 16 and four cases?

MS. PIERSON: Correct.

THE COURT: Okay.

MS. PIERSON: Correct. Of the 109 cases, Your Honor, that are at issue today -- and in that 109, I've included the 12 cases where there's no response or didn't oppose summary judgment, just for ease of reference. That's the group that we're asking you to rule on ultimately in the motion.

Of those cases, there were actually 11 cases where the Plaintiffs submitted oppositions to the motion for summary judgment; but within the opposition, they said they agreed

that Indiana's choice of law rules applied to this group of cases because they were filed in the Southern District of Indiana.  They may oppose summary judgment, arguing that their cases are not barred under Indiana statute of limitations but they agree that it applies.

Our argument, in a nutshell, as I said, is that all of these cases are ripe for summary judgment and all the cases were filed in the Southern District of Indiana and they arise from these five jurisdictions that are on the screen in front of you.  The Plaintiffs are from those jurisdictions.

At the next hearing, Your Honor, once you decide what state's law applies, we'll ask you to look at that group of cases and we think they're likely to fit into buckets based on the event that caused their claim to accrue.  So Cook's motion explains, for example, that if a person has an open procedure, surely their claim accrues at least by the day they have the open procedure; or if a person has a failed retrieval attempt and they allege their filter is embedded, surely their claim is accrued on the day that they had the failed retrieval attempt.

We'll talk about that subject in detail at our next hearing, if the Court decides that Indiana law applies because Indiana does have, as you know, a limited discovery rule.

So for now, I just want to focus on the question of what state's law -- what state do we look to for the concept

of choice of law; and in our view, this is a three-step analysis for the Court and it's actually a fairly simple one that you, Your Honor, have engaged in in other cases that are before you based on diversity jurisdiction.

So the first question is:  Are the cases before the Court based on diversity jurisdiction?  Second:  Where were the cases filed?  And then third:  When the Court applies the choice of law rules of the state in which the cases were filed, what is the applicable statute of limitations?

So the first question is really a very simple one. Are the cases before the Court based on diversity jurisdiction?  And here all 109 cases allege diversity jurisdiction in their own short-form complaints.  So there's no question that's how they are before you.

And in the Southern District of Indiana and the Seventh Circuit and nationwide, the case law is very clear.  A Federal Court sitting in diversity, as this Court does, must apply the choice of law provisions of the forum state.  That is, the state in which the case was filed.

You, Your Honor, noted in your comments at our hearing on the Lexecon issue back in June, and also in the order that you wrote following that hearing, that these -- the cases that were filed in the Southern District of Indiana are cases over which the Court has original jurisdiction, just like any other case originally filed in this district.  And we

submit to you that the 109 cases that are at issue in this motion, Your Honor, are just like the 109 individual cases that -- that were filed before the Court.  That is, as a practical matter, exactly how they were filed.

None of the cases that are at issue in Cook's motion were transferred pursuant to Section 1407; and this is important because under the law, we know that transferred cases are treated differently for choice of law purposes. Pursuant to Section 1407 and the case law about transfer, when a case is transferred, the choice of law rules of the state of the transfer court are applied.

We also know that some courts have recognized an exception for cases that are directly filed in the context of an MDL pursuant to a direct filing order.  But as Your Honor may recall, we argued this issue extensively in May and June.

THE COURT:  Yes.  This is deja vu all over again for me here.

MS. PIERSON:  It is.  No direct filing order here, period.  So the question is:  If the Court's sitting in diversity and the Court is obligated under the law to apply the choice of law rules of the State of Indiana, then what do Indiana's choice of a law rules dictate?  And that question is a matter of well-settled law that actually dates back in Indiana to about the 1950s.  It is well settled that the law of the forum state governs in procedural matters and that the

statute of limitations, being procedural in nature, falls within the rule.

Indiana courts have recognized this and the lead case in the *Horvath* case.  You, Your Honor, recognized it in the *Viera v. Eli Lilly* case in September of 2010, noting that because Indiana treats its statute of limitations as a procedural constraint on when a suit may be filed, the Court would conduct any inquiry into the possibility that a Plaintiff's claim is time barred pursuant to Indiana's two-year deadline.

And it's not just the Southern District.  You and your fellow judges have concluded this.  We've seen this in the *Greek Orthodox Church* case, which was affirmed by the Seventh Circuit.  It's also been adopted by the Northern District of Indiana and ultimately, I think the *McGlaughlin* court put it best when it concluded that to the extent that *McGlaughlin* suggests that the Court should apply the statute of limitations of a different state, as the PSC suggests here because the substantive law governing the claims is supplied by that state, is simply incorrect.

Indiana law -- Indiana choice of law rules prevent a very clear decision tree.  The question under Indiana's choice of law rules is, is it procedural or substantive?  Indiana courts have for decades made clear that Indiana statute of limitations is procedural, and that truly is the end of the

inquiry on choice of law, Your Honor.

Now, the PSC suggests in the omnibus response that somehow this group of cases ought to be treated differently because they're in an MDL and they rely on cases like *Dobbs* and others to suggest that:  Well, it's in an MDL, so the traditional rules of choice of law are set aside, and that's simply incorrect, Your Honor.  Every single case that the Plaintiffs cite includes a direct filing order, and I'll show you that in just a moment.

But I think the more analogous cases on this question are MDL courts who have been sitting in the same position that you are sitting, where you have a group of cases like these 109 that were filed without a direct filing order in the forum state of the Court, and that's exactly what Judge Kennelly faced in the testosterone MDL.  There, one of the key defendants was AbbVie, who is located in Illinois, and a whole group of Plaintiffs filed their cases in Illinois.

Later in the case, the Court entered a direct filing order after the parties had some negotiations and the Court approved the direct filing order, but carved out of that direct filing order was this group of cases that had been filed in the original jurisdiction.  So in considering that group of cases, Judge Kennelly said, as I've noted on the screen in front of you, that because of 39 actions at issue there were filed in the Northern District of Illinois,

Illinois choice of law rules govern; and that's what we've asked for here, that Indiana's choice of law rules govern.

Judge Kennelly does not stand alone on this, though, Judge. As you can see on the screen in front of you, the *Byers* case, also an MDL, reached the same conclusion. Holding that because Byers filed his complaint in Ohio and the case wasn't one that was transferred in pursuant to 1407, the choice of law principles of Ohio, the forum state, govern.

We also see the same result in the *Trasylol* case that's before you. And by the way, Judge, these cases, the ones that we think are particularly important, they are included in the notebook that we've handed up. But in the *Trasylol* product liability MDL, the Court there concluded that where a Plaintiff filed her complaint against Bayer directly with the Florida court, Florida's choice of law rules apply. And you can see that the Court cited a number of other authorities, including the Vioxx MDL as supporting this proposition.

Now, the PSC's brief cites the cases that are on the screen in front of you. Primarily they point to *Dobbs* but also to *Fentanyl*, *Yasmin*, *Yaz* and others. The key distinguishing factor for all of these cases is that the cases before the Court on those motions were foreign cases that had been filed in the MDL court pursuant to a direct filing order. We've included references in our brief and on the screen to

either the parts of the opinion that make clear that there was a direct filing order; and the *Dobbs* case in particular we've included in your notebook the actual direct filing order from the *Dobbs* court and that's at Tab 12.

This is important, Your Honor, because if you look at the *Dobbs* direct filing order, you can see that like many other direct filing orders, the parties had negotiated and the Court had approved preservation of this choice of law issue. Put simply, we just don't have that here and none of these cases are analogous as a result.  There is no direct filing order.

Your Honor, I'll pause there.  Ms. Cox will address the PSC's argument pertaining to judicial estoppel.

THE COURT:  In hindsight, direct filing order might have been appropriate here.  Certainly beneficial to the Court.  I mean, these direct file -- these cases filed here, without being transferred, are going to be with me forever.

MS. COX:  Until you grant summary judgment on these 109, right?  Thank you, Your Honor.

I'm just going to briefly address in the Plaintiff -- the PSC's omnibus response, they say that Cook should be judicially estopped from asking the Court to undergo a choice of law analysis and apply clear Seventh Circuit precedent because in one case three years ago, the parties inadvertently asked the Court to apply Kansas law to a statute

of limitation question.

THE COURT:  The parties -- my recollection of all that is the parties agreed to it and the Plaintiff, appeared to me, was very happy to be able to have that motion granted at that time.  There was literally absolutely no opposition. There's almost consent to that.

MS. COX:  Correct; no opposition.

THE COURT:  Mr. Williams, Mr. Heaviside, you'll agree to that?

MR. WILLIAMS:  I'll address it when I get up there.

MS. COX:  I think Your Honor might be referring to the Gage case and that was the recollection that I had in the courtroom.

THE COURT:  You're right.

MS. COX:  It was a fair recollection of that situation from our perspective.  In their brief they cite a case even before that, a *Graham* case, where the Court found that the matter should be dismissed under Kansas law but there was no choice of law analysis undertaken by the Court.  The Plaintiffs didn't oppose the application of Kansas law and there's a footnote that just says:  Parties agree Kansas law applies; so that's what I'm applying.  Not the kind of inquiry we're asking the Court to do here.

Judicial estoppel as a doctrine is not -- I found a case from the Seventh Circuit that I actually really, really

like.  So I might read it just because they're more eloquent than I am.  Judicial estoppel is not intended to eliminate all --

THE COURT:  What case is this?

MS. COX:  The *Chambers* case, C-H-A-M-B-E-R-S, 148 F.3d 214.  "It's not intended to eliminate all inconsistencies, however slight or inadvertent.  Rather, it's designed to prevent litigants from playing fast and loose with the courts."  This is not a situation where Cook is playing fast and loose with the Court.  They're simply asking the Court to actually undergo a choice of law analysis and apply the proper law to these cases, which is Indiana law.

The Supreme Court has outlined criteria for when judicial estoppel might apply to a given circumstance; and if we look at that criteria from the one case, the seminal case which is the *New Hampshire* case cited in the PSC's brief, we can see that none of the criteria fit here for applying judicial estoppel and preventing the Court from undertaking the traditional choice of law analysis as it applies to these 109 people.

So I've taken -- I've taken a note from Mr. Martin's playbook and I have a Mr. Martin PowerPoint here, but I will say since I'm on the record, his handwriting might actually be a little nicer than mine.  So I apologize.  But I have outlined here the five factors that I see courts looking at

when they're talking about a judicial estoppel.

And first, the Supreme Court says before you can ever judicially estop a party from making an argument, there has to be clearly inconsistent positions taken. Now, this comes from that *New Hampshire v. Maine* case, and I think it just bears just a little bit of discussion about what happened in that case. In that case, New Hampshire and Maine were fighting over their boundary; and in the 1970s, they looked at all these historical documents and they said: Okay, where is the boundary supposed to be?

They decided that it was going to be in the middle of the waterway and the states were going to split control of the waterway. And then in the 2000s New Hampshire brought a different lawsuit and said: Yeah, I know in the '70s we agreed that all these historical documents said we should split our territory in the middle, but I think that's wrong. I think New Hampshire should control the whole waterway. So they were trying to do a land grab. Basically what they were doing is saying: The documents haven't changed but our interpretation of these historical documents have changed. We want something different.

That's a clearly inconsistent position. They were basing their position where the state law boundary should be on the same information and just coming up with a drastically different conclusion because they wanted the whole waterway.

And the Court said:  You can't do that.  If you take a clearly inconsistent position to get an unfair advantage to do this kind of land grab, you can't do it.

That's not the same situation we have here.  In *Graham*, the lawyers for Cook correctly stated that in a case with a direct filing order -- and I'd like to show you this. When a case based on diversity as part of an MDL and is directly filed in the MDL forum as a result of a direct filing order, courts have found the better approach is to apply the law of the home state where the court originated.  Cook's not saying that that's not the right law.  We still are maintaining the same position that if you have a direct filing order, the choice of law analysis is different.

Back then, three years ago, all the parties didn't appreciate in this litigation that there was no direct filing order or I bet we wouldn't have spent so much time with Your Honor back in June arguing these issues.  So we're not taking an inconsistent position here.  We took no position on choice of law.  We said Kansas law applies and that courts with direct filing orders, you should apply the law of the originating court.  Not an inconsistent position.  We still maintain that law applies.  We just know the facts to be different today.  So this criteria, not met.

The next criteria that the Supreme Court outlines needs to be present to apply judicial estoppel is a situation

where a party has persuaded the Court to accept an earlier position of an inconsistent opinion.  So, for example in the *New Hampshire* case, the Court in that case had appointed a special master and the special master had said:  I read these historical documents.  I think the boundary is X.  New Hampshire said:  No, no, no.  We read it.  We think the boundary is Y, and they persuaded the Court to do an analysis of the documents and say:  Okay, New Hampshire, you're right; it's Y.

We never did that in these cases.  In *Graham*, there was never any -- any analysis done by the Court of whether or not what law should apply.  The Court simply noted:  The parties agree Kansas law applies.  That's it.

So it's not a situation where Cook persuaded the Court to undergo a choice analysis -- choice of law analysis and come to a result that we're asking the Court to find a different result today.  There was no persuasion.  There was no finding and undertaking by the Court.  So this factor doesn't apply.

The next factor is whether or not a party would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.  Here, if we're talking about the *Graham* case, it was a case where a woman had an open surgery to remove her filter that she said she knew was perforating and needed to come out or her doctor told her she

would die.  She had an open surgery in 2011.  The record showed she hired counsel to get her records, look for her IVC filter product ID in 2012, and then she didn't file her lawsuit until 2015.  Kansas law, Indiana law, doesn't matter. The result would have been the same.

Same thing here.  We're not asking the Court to apply Indiana law to find some unfair advantage or put the Plaintiffs in a worse position.  Actually, they're probably in a better position because as Ms. Pierson said, these people are from states where there's no discovery rule.  So we're saying:  Well, actually, if you look at the Seventh Circuit precedent, you need to apply Indiana law which has, albeit, limited discovery rule.  So we're not actually putting them in a worse position.  We're actually saying:  Well, they actually should have Indiana law apply, which gives them a slight advantage.  We're making our job harder to get summary judgment, not easier by saying a state with a discovery rule should apply.

It's not the situation in New Hampshire where they were changing their mind to make a land grab.  This is just simply saying:  This is the law and this is the right law and this is what should be applied in this case.  So there's no unfair advantage that Cook got in the *Graham* case by saying Kansas law applies.  It was out no matter what the law.

In this case, there's no unfair advantage.  We're

giving these people the benefit of a discovery rule they wouldn't have had if their home state rules would have applied.  So this doesn't merit judicial estoppel being applied.

Fourth factor.  This was discussed in the *New Hampshire* case and actually codified in a Seventh Circuit case called *Jarrad*, which is 408 F.3d 905.  That basically says, especially in the Seventh Circuit, we need to see if the operative facts have changed; and if operative facts have changed, judicial estoppel probably not appropriate.  So for example in the *New Hampshire* case, the Court said:  You know what, if New Hampshire had come in here and said:  In the '70s we reviewed all these documents and we really thought the boundary was X but we found new documents; and based on these new documents, now we think it should be Y, that would be different than coming into court and saying:  We just rereviewed the same exact materials and no, we just changed our mind.  That's not -- that doesn't work.

If the operative facts have changed, it gives a little bit more credence to an inconsistent position.  Here, the operative facts have changed.  Three years ago, when the parties were briefing the *Graham* case, they both incorrectly assumed that Kansas law would apply.  That was before we had our hearings and your order in June of this year saying there's no direct filing order.  Once that clarity was -- once

that issue was made clear to all the parties, the operative facts have changed. And while our position on the law is the same, we know that there's no direct filing order applicable to these 109 cases now. So our understanding about what law the Court should have applied has changed. So the operative facts have not remained the same and that would also not make judicial estoppel applicable in this case.

Then the last -- the last factor that we see in the *New Hampshire* case, and in all the cases talking about judicial estoppel, is whether there's an inadvertence or mistake. The Supreme Court said: You know, if New Hampshire said: We just didn't do a great job of analyzing, we didn't really do a deep dive and we just missed something in the historical record, now we really think the boundaries should be different, well then maybe judicial estoppel shouldn't apply. But in that case, they're like: No, you articulated clearly in the '70s you looked at this document, you found this; you looked at this document, you found this, and you're just completely changing your position trying to grab more land. That doesn't work.

Here, it's definitely not the case. There was no discussion, no analysis, no mention of whether or not there was a direct filing order that would have been applicable to the *Graham* case. It simply wasn't an issue that was presented to the Court or even opposed by Plaintiffs. So we don't have

a situation where there is a lack of inadvertence, for a better term, like we see in the *New Hampshire* case where it's clear they're just looking at the same old stuff and just trying to come to a different result to unfairly get -- to get an unfair advantage.

So in short, Your Honor, three years ago Cook filed a motion and the parties agreed that Kansas law should apply. Since filing that, we have clarity about whether or not there's a direct filing order. We know there's a direct filing order now. We know there's no clear criteria to suggest Cook was doing anything intentionally or in an effort to try to get an unfair advantage.

What we're trying to do is actually lay out the correct law, as we're obligated to do as officers of the Court. It would make no practical sense that Cook should be estopped from laying out what the law has been in the Seventh Circuit since the 1950's in helping the Court determine what law should apply to these 109 cases just because the parties weren't clear on the facts of the MDL three years ago. It would make no sense to perpetuate an issue in a case -- one case three years ago to the 109 cases today.

The issue is pretty simple. Cook isn't playing fast and loose to make a land grab or concealing the fact that they had a claim against someone in a bankruptcy filing to try to get a windfall. Those are the kind of cases where you see

judicial estoppel applied. Here, Cook is laying out the law, laying out the clear law from the Seventh Circuit and asking the Court to properly apply the law to these 109 cases; and in doing, that shows that Indiana statute of limitations should apply.

THE COURT: Thank you, Ms. Cox. Mr. Williams?

MR. WILLIAMS: Thank you, Your Honor. Your Honor, these are just -- these are all things that are in the docket but they're what I'm going to be talking about in our PowerPoint.

As Ms. Cox said, the concept of judicial estoppel is to prohibit parties from deliberately changing their positions according to the exigencies of the moment, gaming the system, playing fast and lose with the courts.

Everything to this point, the history of this litigation and this dispute in particular demonstrates that this is the precise situation in which judicial estoppel should apply. Not 60 days ago Cook filed this motion and they said: Court, you should apply the law of the five states where these Plaintiffs were from. They then changed positions, filed an amended motion saying: Oh, it should be Indiana law that applies.

We filed our motion -- our response brief and we pointed out: Well, in the *Graham* case you guys said the Kansas law should apply. Cook replied and said: That was one

out of 6,000 cases.  It's a mistake.  We shouldn't -- we shouldn't be held to that.  Judicial estoppel shouldn't apply for, as Ms. Cox said, a mere inadvertence.

So after I read that reply, I did a little digging on the docket.  And while I wasn't able to review all 12,000 docket entries, I did find several things that Cook has filed in the past; and every time this issue -- this choice of law issue has arose, Cook has taken the position that the originating jurisdiction, the home law should apply.  This was not an isolated mistake.  The sampling that I took showed every single time when they adopted the short-form complaint in 2015, they filed a motion in 2015 where they said home law applies.  They filed a motion in 2016 where they said home low applies.  They filed a motion in 2017 that said home law applies.

It was not until the Plaintiffs in this litigation said:  We want our right to try these cases at home, that in May of 2019 Cook, for the first time, said:  There's no direct filing order, Judge.  We have to try these cases here and Indiana law applies.

So I think if we go through the history of this, you'll see that what they've done is changed their positions due to the exigencies of the moment, to use the words of Justice Ginsburg.  In January 2015, Cook and the Plaintiffs agreed to the short-form complaint.  They filed a notice of

agreement and Judge Baker approved that; and in that short-form complaint, there's a line that says:  Please indicate the District Court and Division in which venue would be proper absent direct filing.

Placing aside for the moment that the parties agreed to use this phrase "direct filing" and the Court approved it, if Cook's right that Lexecon doesn't apply and Indiana choice of law principles apply, including this Paragraph 7 in the short-form complaint -- need to give her the slides -- there would be no reason to include that.

So then in November 18 -- on November 18, 2015, I found a brief that Cook filed.  This was their reply in support of a judgment for motion on the pleadings in the Kellogg case.  In there they said:  Court, we've done additional research and the results of that research have lead Cook to conclude that statute of limitations in a case such as this are likely substantive and therefore, Ohio's limitations period should be applied.  So in 2015, they say Ohio law applies to a case that was filed directly in this Court and they say, contrary to what they just said, statute of limitation are substantive.

February 2, 2016 is the *Graham* case.  I'm not going to belabor this point because Ms. Cox discussed the *Graham* case at length, and the point she made was there was no choice of law analysis; the parties agreed to it and Your Honor noted

that in his order.

They still cite the *Yasmin* case that says the better approach is to treat foreign and direct filed cases as if they had been transferred.  And they say:  Well, Judge, that was a mistake.  But on March 27, 2017, they filed a brief in support of a motion for judgment on the pleadings based upon the statute of repose and this was on six cases.  I call it the Sales-Orr motion because that's the first named Plaintiff.

What they say in that brief, Your Honor, is: However, where a case based on diversity is part of an MDL and is directly filed in the MDL forum as the result of a direct filing order, as occurred in the six cases here, courts have found that the better approach is to treat foreign direct filed cases as if they were transferred from a judicial district sitting in the state where the case originated.

So not only did we have an agreement that Judge Baker approved, Cook's lawyers said in a brief that there was a direct filing order.  They recognized that and they said: You apply the home law jurisdiction because these cases were filed pursuant to a direct filing order.

And this wasn't prior counsel.  This was Faegre Baker Daniels who filed this.  This was not a mistake.

THE COURT:  The law of the case is there is no direct filing order.

MR. WILLIAMS:  Your Honor, if I may.

THE COURT:  I mean, I've already ruled that.

MR. WILLIAMS:  I'm just going to skip right ahead, Your Honor.  August 31, 2017, respectfully, Your Honor entered an order on that statute of repose motion; and if you'll look at the screen, Your Honor said, "This motion addresses those Plaintiffs whose cases originated outside of this Court's judicial district but were directly filed in this MDL forum pursuant to the Court's direct filing order."

So back in 2017, this Court recognized that there was a direct filing order.  And when we asserted the Lexecon rights of the MDL Plaintiffs, Cook changed positions and not only did they change positions, they never told the Court that not only had they said there was a direct filing order but Your Honor analyzed that law and agreed with it.

And Your Honor didn't stop there.  In Tab 5 I've got Your Honor's order; and if you turn to Page 2, Your Honor has a whole choice of law analysis.  And on Page 3, you said, "The specific issue raised in the present motion is whether the Court should apply the choice of law rules of the MDL forum, Indiana, or the choice of law rules of the state where the case would have been brought had it not been part of the MDL."

You then note that the *Yasmin* court said that we should treat these as if they had been transferred in.  You then state, "The Court adopts this approach."

You then conclude by saying, "As one of our sister

District Courts said" -- this is on Page 4 -- "it would be an odd result to subject Plaintiffs to Indiana law simply because they took advantage of the direct filing procedure, a procedure that provides benefits to all parties and preserves judicial resources."

So long before we went down this rabbit hole of Lexecon, Your Honor recognized and ordered that there was a direct filing order in place in this MDL.  It was entered -- this order was entered in six individual cases but Cook filed it.  They should have -- as Ms. Cox said:  As officers of the Court, we are responsible for bringing issues like this to Your Honor's attention.  Not once in May, June or July, when we were arguing about this, did they say:  Judge, actually, we said there was a direct filing order and you entered an order approving that and specifically stating that there was a direct filing order.

The problem that we now find ourselves in is that from 2015 to 2019, after Cook three times said home law applies, and after Your Honor entered an order stating home law applies and that there was a direct filing order, we had more than 6,000 people directly file their cases into this Court.

What Cook has done in May of 2019 is pulled the rug out from under all 6,000 of those cases and they did it without telling anyone that they took the exact opposite

position.  They analyzed the law.  They presented it to Your Honor and Your Honor entered an order on it.

When you look at the factors -- and I understand that this -- this puts us in an awkward position, and I'll be honest with you.  I should have combed the 12,000 entry docket when we had this Lexecon argument but I didn't, and part of the reason why is because the direct filing order argument we were making was consistent with reality.  It was consistent with the agreement that we made with Cook's lawyers in January of 2015.  It's consistent with Judge Baker's approval of that order.  It's consistent with Judge Baker's language in CMO 5 which said:  Lexecon is not waived for any case not in the discovery pool.  And we thought that we were on solid footing.

What we didn't do is comb through the docket and realize:  You know what?  Cook took that exact same position repeatedly and they convinced Your Honor to enter that order.

So when we're looking at judicial estoppel, clearly inconsistent positions.  I don't think there could be anything more inconsistent than today saying:  There's no direct filing order, and three years ago -- two years ago saying:  Your Honor, there is a direct filing order and you have to apply home law.  Success in persuading the Court.  If you showed Your Honor the order in which they persuaded the Court to enter this -- enter that order on the motion which specifically recognized the existence of the direct filing

order.

Unfair advantage and detriment. As I said, this is imposing a detriment on these 6,000 people who filed their cases directly in this Court, when there was an order existing stating that there is a direct filing order, and the same operative facts. Cook can argue that they were mistaken and it was inadvertent in *Graham*; but a year after *Graham* is when they filed their motion on the statute of repose that said there existed a direct filing order.

Like I said, I recognize that this puts us in an awkward position and I think one thing is clear, though. Before this whole Lexecon debacle, Your Honor recognized at Cook's behest there was a direct filing order, and Your Honor recognized on several occasions, again at Cook's behest, that home law applies. I don't think -- I mean, that's the law of the case. And simply because Cook was later able to put forth an argument and hope that Plaintiffs wouldn't notice in a docket of 12,000 filings that they had taken the opposite position, well, if we let that prevail, it really encourages folks, it encourages lawyers, it encourages parties to do exactly what the equitable doctrine of judicial estoppel is to protect against.

So for all these reasons, Your Honor, home law applies and Cook shouldn't be able to change their position due to the exigencies of the moment.

THE COURT:  When we had the Lexecon arguments and there was representation that there was no direct filing order, I didn't hear any response to that.

MR. WILLIAMS:  Your Honor, what we said -- and if you look back at our Lexecon briefing, we said this short-form complaint, which you can't see here because it's real small, but it was filed as a notice of agreement.  It was signed by Mr. Levin and it was signed by Chris Lee, and it was submitted to the Court with the direct -- with the language -- see if I can get all the way back here.  It was submitted with this language:  You include the District Court and Division in which would be proper absent direct filing.  Judge Baker approved that.

And if you look back at our Lexecon briefing, what we argued was:  Judge, that's the direct filing order, and it was reaffirmed three months later in April of 2015, when Judge Baker entered CMO 5, which said:  Lexecon is waived for the discovery pool cases but make no mistake, Lexecon is not waived for any of the remaining cases.  And so when we had that argument, that's the position we took and that's the argument we made to Your Honor.

Cook got up and said:  No, no, Judge.  That's not a direct filing order.  It's not specific enough and we never agreed to it, and that carried the day at that point.

What they should have told Your Honor -- if they

wanted to take that position, they could have said: Your Honor, we think that there is no direct filing order. Now, to be fair, we did say there was a direct filing order and Your Honor entered an order on that, and then make an argument as to why you should ignore the law of the case.

What they shouldn't be able to do is come in and just say there's no direct filing order, Your Honor, when they had taken the exact opposite position.

THE COURT: All right.

MR. WILLIAMS: Thank you, Your Honor.

Your Honor, I did neglect one --

THE COURT: Sure.

MR. WILLIAMS: One thing. In Cook's -- and I appreciate Mr. Heaviside pointing this out to me. This is in that Sales-Orr brief where they recognize the existence of a direct filing order. This is behind Tab 4 in your binder. At Page 3, Ms. Pierson wrote, "Here, as discussed below with respect to each state, the Plaintiff's short-form complaints demonstrate that their claims originated in their respective home states of Georgia, Tennessee and Texas, and those state choice of laws apply." So this idea that these cases originate here that we heard a decent argument on a few minutes ago, they contradicted that prior as well.

THE COURT: Thank you.

MR. WILLIAMS: Thank you, Your Honor.

THE COURT:  Ms. Pierson, I want you to discuss here Judge Baker's orders here regarding direct filing.

MS. PIERSON:  Sure.  Sure.  I'd be happy to, Your Honor.  I would point out, though, that none of these arguments that Mr. Williams has made today were included in the brief on the motion that is before Your Honor, the motion for summary judgment.  And to the extent that Mr. Williams thinks that we or you got this issue wrong in your June order, his remedy was to file a motion to reconsider and lay his argument out there, and he's not done that.

Instead, we come into the Court today and we're completely hijacked by an argument that Your Honor ought to undo the order that you entered after arguing this issue in May and June of this year.  So it's a bit of an unfair advantage to now ask Your Honor to change a decision that you already made without ever raising that in the papers for summary judgment; but let me address that question directly, Your Honor.

You may recall that when we argued this issue back in June -- this is the PowerPoint that I showed you back in June pointing out why there is no direct filing order.

THE COURT:  Let's assume I recall that.

MS. PIERSON:  You've had two trials in the last month.  You're probably lucky to recall anything at this point.

THE COURT:  Okay.  Thanks for pointing it out.

MS. PIERSON:  Sorry.  It's what I would be feeling after two trials, obviously.

Your Honor, we argued this issue pretty extensively in June and went through why there is no direct filing order, and what I've got on the screen in front of you is actually what I showed you back in June, some of the reasons why it was clear there is no direct filing order.

So the case law dictates that -- there are two things that I told you back in June.  One is that this terminology "direct filing" or cases were directly filed.  If you look across the case law, that terminology is loosely used and ill defined.  You'll see that courts refer to cases that are filed in the MDL sometimes as directly filed, when they're just cases in which the Court has original jurisdiction, like the case before you.  Other times you see clarity that there is an actual direct filing order.

We use the terms in the hearing in June to draw a clear delineation between cases transferred pursuant to 1407, cases that came to the Court because they were filed in the original jurisdiction in your court, and then a third group of cases where a fiction is created and the fiction is a, quote/unquote, direct filing order.

The term "direct filing order," you won't find that anywhere in 1407.  Congress has never set out that there's a

right to a direct filing order or what it should include.
Over time parties have agreed essentially to a contract that
creates a fiction of a 1407 transfer.

THE COURT:  Right; time saver.

MS. PIERSON:  Right.  As I explained in June, it is
essentially a three-party contract.  The parties negotiate the
terms of the direct filing order and the Court approves the
fact that cases may be directly filed and that certain rights
are preserved.  Sometimes direct filing orders preserve the
choice of law principles but not always.  So the form of
direct filing orders is not uniform, but there is one fact
that is uniform and that's that there must be an explicit
expressed direct filing order.  That's consistent across all
the cases.

And when we argued this issue in June, you made that
point directly from the bench; a direct filing order must be
expressed.  It can't be implied.  It can't be assumed because
it has certain elements that the order has to include and
that's what I've got on the screen in front of you.

The essential elements of a direct filing orders are
these; that the Court's permission -- the Court gives
permission to file cases where there is not proper venue
because absent a direct filing order, the cases that are filed
here, they would not have been transferred pursuant to 1407 in
an ordinary MDL court where the Court doesn't sit in the same

place as the defendant.  If cases are filed there, there would not be proper venue but for a direct filing order.  So typically we see that as an element.

Second.  The defendant has to expressly agree that it won't object to the filing based on improper venue through a direct filing order.

Third.  The parties are stipulating, by virtue of a direct filing order, that the cases will be transferred to another district for trial pursuant to 1404(a) after the pretrial proceedings are complete.

And fourth, the parties' stipulation that pretrial litigation in an MDL court does not waive the right to seek transfer under 1404(a) and objections to venue.

Most direct filing orders also address the concept of choice of law.  The case to which the Plaintiffs point to most, *Dobbs*, the direct filing order there addresses the question of choice of law, and we included that in the notebook.  And this -- this whole concept of direct filing presents a real conundrum for courts because it's a fiction.

I mentioned to you back in June many times defendants -- many times courts refuse to adopt a practice of direct filing, and we saw that in the *NexGen* MDL with Judge Pallmeyer.  Part of the authorities that I gave you back in June note that the difficulty with direct filing in part is the JPML has no idea how many cases are being collected and is

not able to monitor do the cases meet the terms of the

transfer order.  That's one reason that a court might choose

not to approve a direct filing order.

So absent briefing and clear expressed words by both

parties and by the Court of the terms of a direct filing

order, you can't imply, as Mr. Williams suggests that you

should, the existence of a direct filing order in this case.

And those were your exact words from the bench back in June,

Judge.  When Mr. Williams is making the same argument then --

THE COURT:  Mr. Williams is indicating that Judge

Baker has already entered an order.

MS. PIERSON:  There is no direct filing order.

There is no direct filing order.

THE COURT:  Well, there either is or isn't.

MS. PIERSON:  Judge, we argued this issue and

briefed it in May, June.  July passed.  August passed.

September passed.

THE COURT:  I know that.

MS. PIERSON:  Even today.  If there were a direct

filing order, somebody would have handed it up to you by now.

And part of what we included in the notebook were clear

examples.  I mean, this is what I showed you in June.  This is

a direct order from Vioxx.

THE COURT:  We spent a ton of time on this already,

and if there's an order in existence, I'd sure like to see it.

I would think someone would present that to me.

MS. PIERSON:  There's no order.  If the Plaintiffs could present it to you, they would.

THE COURT:  What does CMO 5 say?

MS. PIERSON:  I'm not sure, off the top of my head. Is that one of the ones that you have?  I don't recall which one it was.  Mr. Williams is correct that, for example, the short-form complaint uses the term "direct filed" in it; and you can find here or there references to direct file but they're not a direct filing order.

And as I argued in June and mentioned today, this terminology is very loosely used.  There must be an actual order that this language refers back to that sets out the rights that the parties are giving and waiving by virtue of a direct filing order and that does not exist here.

There was never a time that there was a hearing where someone discussed what would the terms of a direct filing order be, what choice of law rules be preserved, or would we apply the rules of the state in which the MDL court sits.  There was never that kind of conversation.  It was incumbent upon the PSC to bring you that order and to bring you that kind of discussion and it simply didn't happen.

Mr. Williams makes the argument that we sort of sandbagged the PSC in some way and that's simply not true.  I remember standing in this Court before you, Judge, about a

year and a half ago and you made the comment then, and multiple times since then, you said:  Well, how many of these cases were filed here?  And I said:  Well, we think roughly 80 percent or some number like that.  I don't recall what the exact number was at the time were filed in the Southern District of Indiana; and I told you then they were filed here in the Southern District of Indiana, and you made the comment from the bench:  Who am I going to remand these to, myself?  I mean, that was just one comment.

We had multiple colloquy since I began representing Cook Medical, which is now closing in on three years ago, where this issue of how were the cases filed, where did they originate came up, and multiple times we were very clear the cases originated here.

You considered this issue in depth in May and June of this year and you're correct that it is the law of the case that there is no direct filing order.  None of the essential elements are there.

One other point that I made to you back in June, there is no court in this entire country that has ever implied a direct filing order.  Not one.  Even where there are references to terminology directly filed, originally filed, that kind of loose terminology, there is no court anywhere in the country who has implied the existence of a direct filing order.  And if you were to do what Mr. Williams asks, you

would be the only court ever to have done that.

The law, I think, is pretty clear on this point.  A direct filing order requires the express agreement of the parties and the expressed approval of the Court.  And put simply, that doesn't exist here.  It's not in CMO 5.  And Mr. Williams mentions the short-form complaint as an example of one reference to a direct filing order.  We talked about this in June as well.  Cook denies the allegation.  It's an allegation in the complaint and Cook denies the allegation.  That can't be interpreted to be a direct filing order.  It's an allegation in the complaint, period.

Unless you have more questions on that point, Judge, I want to set that aside and really focus on the issue on the motion before Your Honor.

THE COURT:  You may.

MS. PIERSON:  So one thing that is clear to me now, the Plaintiffs don't contest the fact that cases filed in an original jurisdiction are subject to the choice of law rules of that state.  They don't contest the fact that the case law is clear that where courts sit in diversity, it applies the choice of law rules of the state in which it sits.  There is no dispute about the fact from the PSC, either in the written papers or here today, that when you apply Indiana's choice of law rules, that Indiana's choice of law rules dictate that the statute of limitations is procedural and that Indiana statute

of limitation should be applied to the cases, and there's no dispute about these 109 cases.

Now, Mr. Williams points from time to time about Cook taking a position that Florida law applied in Hill or Georgia law applied in Gage or other reference, and I want to be clear on one other point. We are not arguing in this motion that Your Honor should decide the substantive law of these 109 cases. That's an issue for a whole different day. You'll apply Indiana's choice of law rules. You'll decide what state has the most contacts. We'll go through that analysis when the time is appropriate; and we may conclude, like we did in Hill and Brand, that the law of the Plaintiff's home state applies to those cases when we get to the substantive issues.

This is one procedural issue under Indiana's choice of law rules. It's really unfair to suggest that some reference to applying another state's laws, that that's somehow evidence of trying to mislead the Court. It simply is not. They're just different issues.

Ultimately the question -- the only question the PSC contests is the question of judicial estoppel. But what's woefully lacking is any analysis of the five factors that Ms. Cox enumerated that are important for judicial estoppel that must be considered based on the dictates of the United States Supreme Court. If any one of those factors weighs in

Cook's favor, then judicial estoppel simply doesn't apply. And as Ms. Cox explained, none of those factors justify application of the doctrine of judicial estoppel. They just don't.

Cook has not taken clearly inconsistent positions. In fact, its briefing in *Graham* was very consistent on this issue.

Key to Mr. Williams' argument, really, the only factor he argues at all is: Did we intentionally mislead the Court? And I think the record is very clear. Cook has never misled the Court and certainly hasn't intentionally misled the Court.

Now, in the *Graham* motion it is -- there was an assumption and very brief attention paid by Plaintiffs, Defendants and the Court to this question of choice of law because Mrs. Graham's claims were going to be barred no matter what, just like Mr. Gage's claims. Whether you applied Illinois law, or Indiana law, or Kansas law, the claims were clearly barred. And as you noted, Mr. Gage's counsel was just as anxious to get rid of that case as were we, and there's really no analysis given to the choice of law concept.

Decisions from the Southern District of Indiana, including your own, Your Honor, make clear that where there's really no dispute, the Court won't dive in and analyze that issue. And up to this point in time, there has never been a

thorough analysis of choice of law as it relates to statute of limitations. This is the first time that this issue is before the Court.

Other factors, will the party gain an unfair advantage? I think Ms. Cox explained that quite well why there is no unfair advantage to Cook. If anything, it's quite the opposite and the result would have been the same in the *Graham* case.

As Ms. Cox points out, that the three examples that Mr. Williams puts on the screen, all three examples of instances where he alleges that Cook made some misrepresentation, that the result in all of those were -- would have been the same. There's no unfair advantage if the result would be identical and that's the case in every example that Mr. Williams gave. There's no attempt by Cook to play fast and loose with the rules. In fact, to the contrary. When you've asked me this question from the bench, we've been very clear about the fact that these cases originated here as Your Honor found in your order.

And then, of course, the last factor for judicial estoppel is whether there was essentially inadvertence or neglect. Was their reference in the *Graham* motion just an assumption of choice of law as a result of inadvertence or -- not neglect. Mistake is the standard. Inadvertence or mistake. To the extent Your Honor is inclined to look at that

44

decision or a reference to a case being directly filed here there across the record, that is exactly what you would call that.

At the heart of the PSC's argument is a request that Your Honor find that Cook has intentionally misled this Court for years, only to stand before you today to try and gain some unfair advantage. That's not correct. It simply is not. We've been consistent in our position. We were consistent in *Graham* in describing that cases filed pursuant to a direct filing order are treated differently. That's not these 109 cases.

Ultimately, Your Honor, you're being asked to apply the correct law, right? At the heart of this is the three questions that I put in front of you at the beginning. Does this Court sit in diversity? Where were the cases filed? And what's the result if you apply Indiana's choice of law rules? And we think the answer to all three of those questions are quite clear.

Setting that aside, though, I think there's an additional policy and a practical consideration that Your Honor ought to take into account. In addressing the choice of law question, the Court is considering the interested state's policies, even in an MDL. Here, Indiana is an interested state. Key activities relevant to the lawsuits happened here and Cook is located here. I explained back to you in June how

the Plaintiffs, in seeking the creation of the MDL and in the course of pleading in this case, they've repeatedly said that they could not think of a district more appropriate for the filing of these cases than Indiana.  The Plaintiffs told the JPML that and following that, the Plaintiffs chose Indiana as a state in which to file.

The State of Indiana's interests are at issue here. It is in the interest of the State of Indiana to apply Indiana's statute of limitations to cases that are filed in Indiana.  And what Mr. Williams asks you to do is to set aside that state policy interest.  They would be contrary to previous decisions you've made, Your Honor, and contrary to decisions of the Seventh Circuit.

Also practically speaking, Your Honor, one advantage that this has to consideration of these 109 cases is that Your Honor is the judge responsible for these cases.  We brought to you 109 cases that we believe are barred by the statute of limitations.  You will be able to decide more easily applying the law of one state to all of these cases whether claims accrue given certain facts.  It won't be necessary to apply the law of other states; and as a consequence of that, as we move forward in this MDL, we will have consistent decisions based on the consistent procedural law application of Indiana statute of limitations.  We think that's an important principle for the Court to consider as well.

One housekeeping matter, Your Honor, just for the record not relevant to the persuasive arguments that we're making here but related to this motion.  We noticed in preparing for the argument that in the summary judgment papers, we inadvertently copied a prayer for relief from an earlier motion to dismiss the Category 2 cases.  Those cases we ask Your Honor to dismiss with prejudice, in some circumstances without and others.  There was a special language that we agreed to.  Unfortunately, we copied that prayer to the motion here and apologize for that.  I just want the record to be clear that our request for relief is pursuant to Rule 56.  It's not pursuant to Rule 12 or a motion to dismiss.

THE COURT:  Okay.

MS. PIERSON:  Thank you, Your Honor.

MR. WILLIAMS:  Your Honor, may I?

THE COURT:  You may.

MR. WILLIAMS:  Thank you.  Ms. Pierson started her argument talking about fairness and what is fair, and not once did she address what Cook said in its sales or pleading, which is behind Tab 4.  I heard that there needs to be an agreement for a direct filing order.  There needs to be consent from the parties and it needs to be express.

They state that there's a direct filing order and then they state, "As discussed below with respect to each

state, the Plaintiff's short-form complaints demonstrate that their claims originated in their respective home states of Georgia, Tennessee and Texas, and those states' choice of law rules apply."  Not once did I hear anyone explain was that also a mistake?  Was that also an error?

Back in May and June and July, we did have extensive colloquy on this issue and never once did Cook remind the Court that you have already ruled on this issue.

In looking at CMO 5 -- Kathryn, is that what you printed out for him?

THE COURT:  Yes.

MR. WILLIAMS:  CMO 5, which was entered just a couple of months after the direct filing short-form complaint was approved by Judge Baker, this was an agreed CMO that was prepared in conjunction between Mr. Lee and Plaintiff's counsel; and Judge Baker says, "First off, this order shall govern all cases transferred to this Court by the JPML.  Two, all cases directly filed in or removed to this Court."

Then if you go down to Page, I believe, 5 of the order, Roman numeral VI, subsection C, in bold Judge Baker says, "Waiver of Lexecon is confirmed by Plaintiffs for the discovery pool cases only.  Nothing in this case management order or otherwise shall indicate a waiver of Lexecon as to the remaining cases."

This was an order that he said applied to direct

filed cases and he is explicitly saying by agreement from Mr. Lee and Plaintiffs that Lexecon is not waived. So we've got these orders. And then what we have in all of these briefs that Cook filed is an expressed recognition by Cook in plain language that these cases were filed pursuant to a direct filing order.

It wasn't until we asked this Court to remand cases and brought that to -- that issue up that suddenly Cook said: No, no, no; there is no direct filing order. But that's -- judicial estoppel is about fairness, and fairness dictates when you look at this procedural history, when you've got multiple statements by the Court, one from Judge Baker in CMO 5, one from Your Honor behind Tab 5 in the binder I presented, both expressly acknowledging that there is a direct filing order in this case. Statements from Cook's counsel, both prior counsel Wooden & McLaughlin and current counsel Faegre Baker & Daniels, that there is a direct filing order.

To suddenly say now, when they've told us discovery is closed and people want to get their cases home to be tried, that there is no direct filing order, that is precisely the type of inequity that judicial estoppel was created to protect against.

So Your Honor, the law of the case is not what happened in June. When Your Honor made that decision, Cook never presented you with the fact that you had already ruled

on that issue expressly.  And if you look behind Tab 5 at Your Honor's order, you performed an extensive choice of law analysis.  You said it was pursuant to a direct filing order and then you went through the *Yasmin* analysis from Judge Herndon and said that home law applies.

So to pull the rug out from these 6,000 people who have filed their cases here now would be grossly inequitable.  So unless Your Honor has any questions --

THE COURT:  No, I don't.

MR. WILLIAMS:  Thank you.

MS. PIERSON:  Your Honor, I now have a copy of CMO 5 and you have one before.  May I just add one point on that?

THE COURT:  You may.

MS. PIERSON:  Thank you, Your Honor.  So I'm looking at CMO 5 and as I mentioned, none of this is in the Plaintiff's brief.  So we're a little on the fly here because there's no motion to reconsider before the Court, but that's --

CMO is not a direct filing order.  There's a reference to all cases directly filed in or removed to this MDL.  That vernacular can't be construed to be a direct filing order of the type that we've shown you other courts have adopted.  It's Judge Baker's reference to the way the cases were filed that they were filed in this original jurisdiction.  This isn't an analysis of choice of law and it's not an

analysis of have the parties considered and waived the requirements of a direct filing order that I put before you before.

Second point, Your Honor, that I want to be clear about. The argument now before this Court is not: Should we be -- should the Court be estopped from finding a direct filing order. Should Cook be estopped from arguing that there was no direct filing order. That is not the issue on this motion. That issue was decided two months ago and as you said, is law of the case now.

The only issue here is what law applies in the 109 cases before the Court and that's really not subject to dispute. The elements of judicial estoppel don't apply for various reasons that I've already articulated and I won't repeat those; but at the end of the day, the entire argument that the PSC has offered to you is that you ought to be -- you ought to reconsider your decision or we should be judicially estopped from saying that there is no direct filing order. And frankly, that ship sailed three months ago. Thank you, Your Honor.

THE COURT: All right.

MR. WILLIAMS: Your Honor, I've got 30 seconds, if you don't mind.

THE COURT: Okay.

MR. WILLIAMS: And maybe I should ask our law

interns to help me out because this is a law school concept. But when we're talking about estoppel, what estoppel -- the reason estoppel exists in whatever context, whether it's collateral estoppel, judicial estoppel, estoppel exists when parties behave in one way repeatedly over and over and over and the Court recognizes that behavior; and then they try to go back and change it and that's what's -- that is what is happening here.

The unfairness is -- well, I don't need to go -- I don't need to go on about that but what I've heard today is --

Well, you know what, Your Honor?  I think you understand.  If you have any questions, I'm happy to answer them.

THE COURT:  Okay.  First thing's first here.  I've got an order regarding -- proposed order regarding certain cases subject to the Cook Defendants' pending motion.  You've seen that, Mr. Williams?

MR. WILLIAMS:  Is that the order that Jessica gave me?

THE COURT:  Yes.

MR. WILLIAMS:  I have seen it.  I will tell you I don't know what's going on with those individual cases.  If they want to make a representation that it's agreed by those counsel, then that -- as long as that representation is on the record, I'm fine with it.

MS. PIERSON:  Your Honor, it is on the record; and in our reply brief, we also noted these cases either had no objection or simply didn't respond.

THE COURT:  Okay.

MR. WILLIAMS:  Pursuant to that, okay.

THE COURT:  I'll go ahead and enter that today.

On the motion for summary judgment, I don't believe that the Court has been misled -- intentionally misled by either side throughout this entire litigation.  Both sides have been very complex litigation.  Both sides have been very professional and I believe direct and honest with the Court. So if I had believed or at any time if I do believe I'm being misled by either side, I'll let you know about that pretty quickly and then we'll deal with that at that time.  But you're all very experienced lawyers, excellent reputations.  I have no fear, no expectation that the Court will be misled at any time in this litigation.

Anytime you have litigation involving thousands of cases like we do here in this MDL, there's going to be confusion.  Obviously with 12,000 docket entries, we're going to have some confusion.  Hard to believe but maybe the Court might be confused at some point as well.  You can point that out when you believe I'm confused as well and I'm sure you will.

So we'll take a look at that judicial estoppel here.

I don't -- I'm going to preliminarily let you know I don't believe that that applies here.  And also, I'm going to preliminarily let you know that I believe that there's no direct filing order.  It is the law of the case at this time. Believe me, 6,000 cases directly filed on my docket, if we had a direct filing order, they would be remanded at some point in time, unless the case is resolved; but -- which would certainly be in my benefit.  But at this point preliminarily I don't find that there is a sufficient direct filing order in this case.

So as I've said previously, cases filed originally in this Court, there's no Lexecon issue to be presented because it's not transferred from the panel.  So with that, we'll let you go.  We'll try to get something out on this quickly and we'll go from there.  Anything else today, Ms. Pierson?

MS. PIERSON:  I don't think so, Your Honor. Mr. Williams had suggested by email that we might want to talk about the procedure for the next argument when -- the individual hearings, when we have -- I think we'll have more lawyers here then because we've got 109 cases and now our job --

THE COURT:  I thought we agreed on something like that.  That maybe we'd have a maximum of five lawyers here.

MS. PIERSON:  We did.

THE COURT:  I'm trying to recall.  I could be confused.

MR. WILLIAMS:  No, no, Your Honor.  You're not confused in the slightest.  That's what we had discussed prior to receiving the responses of the individual Plaintiffs; and when I reviewed a sampling of those responses, it appeared to me that the ones that I reviewed, all dealt with whether or not this individual Plaintiff has provided evidence of facts sufficient to cause a claim to accrue, which is not something that can be dealt with en masse.  It's not like a choice of law issue like we're dealing with today where you can say: Okay, this is kind of universally --

THE COURT:  Isn't there some way you can sit down and figure this out?

MS. PIERSON:  Yeah.  I think -- I think it's a great idea.  The slide that I showed you earlier about some commonalities between the cases, now that we know that Indiana law will be applied, presumably based on what you've said, Your Honor, I think the cases can probably be divided by what's the trigger for accrual; all the cases that are open procedures, all of the cases that pertains to retrieval attempts.  But give us some time to confer internally and then we'll confer with the PSC and see if we can come up with a process.

But the limited number of speakers we continue to

believe that's appropriate.  That five ought to be more than enough for both sides.

THE COURT:  Yes.  If we could --

MR. WILLIAMS:  Originally Cook suggested five lawyers because they moved under five separate states' home law.  They said Texas, Alabama, Idaho, whatever.

THE COURT:  Yes.

MR. WILLIAMS:  And then they withdrew that motion and said:  No, no; it's Indiana law.  The changes that are --

Let us talk internally and try to figure something out.

THE COURT:  See if we can get that worked out.  Anything else?

MS. PIERSON:  No.  Thank you for your time, Your Honor.

MR. MARTIN:  Maybe we cure something up on --  a little bit on that.  Sort of make it easier to --

THE COURT REPORTER:  Turn your microphone on, please.

MR. MARTIN:  If we could cure -- maybe we could cure one thing up that would make it easier to deal with.  So what was not brought up today was that Cook filed numerous motions for summary judgment based upon the fact that some -- some of the states -- about five or six of the states did not have discovery rule.

THE COURT:  Discovery rule, right.

MR. MARTIN:  Cook at that time took the position that the home law of the states -- each of those states applied and that wasn't brought to the Court's attention today but is it now -- can we now presume then that Indiana law is going to apply to those five states now that Cook originally couple months ago took the position that those five states home law applied.  Can we now in our negotiations about this presume that we now can rely on that position or that it's changed?

MR. WILLIAMS:  Hold on a second.

(Off the record.)

MR. WILLIAMS:  We'll figure it out, Judge.

MR. MARTIN:  It was a question that I didn't know the answer to and I thought it might --

THE COURT:  Do you know it now?

MR. WILLIAMS:  We'll figure it out.

MR. MARTIN:  I'm going to sit down now.

THE COURT:  All right, Mr. Martin.  Always good to be with you and work with you.  I appreciate your hard work in trying to get this -- this MDL moved down the road.  If you don't mind, if you could take just a few minutes here, we have a couple very bright law students here; and if you could talk to them a little bit about an MDL and answer any questions they might have, I'd appreciate that.

MS. PIERSON:  We'd be pleased to.  Thank you.

THE CLERK:  All rise.  Court is adjourned.

(Court proceedings concluded at 11:31 a.m.)

**************************************************

CERTIFICATE OF COURT REPORTER


   I, Margaret A. Techert, hereby certify that the

foregoing is a true and correct transcript from

reported proceedings in the above-entitled matter.




/S/ Margaret A. Techert                    **November 8, 2019**
MARGARET A. TECHERT
Official Court Reporter
Southern District of Indiana
Evansville Division