UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

_____

IN RE: COOK MEDICAL, INC. IVC FILTERS
MARKETING, SALES PRACTICES AND              Case No. 1:14-ml-2570-RLY-TAB
PRODUCTS LIABILITY LITIGATION               MDL No. 2570

_____

This Document Relates Only to the Following Cases:
Williams, Denise, 1:16-cv-01394

_____

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR JUDGEMENT ON THE PLEADINGS**

Plaintiff, by their undersigned counsel, hereby submits this Response in Opposition to Defendants' Motion for Judgment in Plaintiff Denise Williams' Case Pursuant to CMO-28 and, in support thereof, states as follows:

## I.    INTRODUCTION

Defendants contend that Plaintiff's *injury* accrued on February 17, 2010 when during an unsuccessful removal attempt it was determined that her filter had fractured and there was a "small filter strut fragment in the extravascular location in the prevertebral region…"  However, this was *not evidence of an injury*, nor did Defendants provide any documentation that proves that Plaintiff was injured at that time.  Undersigned counsel is not aware of Cook ever having admitted that the mere *presence* of a fracture is a legally cognizable injury, nor is the instant Plaintiff alleging same; it is only when a fracture leads to adverse effects—perforation, migration, or surgical procedures to remove a filter or fragments—that an injury has been established.  The statute of limitations would not have begun to run on Plaintiff's cause of action when a mere fracture was diagnosed, but when she actually suffered an injury from her IVC filter.  The exhibits attached to this response will demonstrate that there were no injuries suffered even as of the date the Short Form Complaint was filed (June 13, 2016).  See Exhibit A.

## II.    THE APPLICABLE STANDARD(S) OF REVIEW

Plaintiff believes that this motion should be evaluated as one for summary judgment, not as a motion on the pleadings.  However, the standards for both are noted herein.

### A. <u>Judgment on the Pleadings</u>

A motion for judgment on the pleadings under FRCP 12(c) of the Federal Rules of Civil Procedure is governed by the same standards as a motion to dismiss for failure to state a claim under FRCP 12(b)(6). <u>Northern Indiana Gun & Outdoor Shows v. City of S. Bend</u>, 163 F.3d 449, 452 (7th Cir. 1998)(citation omitted). That standard permits dismissal only where "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." <u>Id.</u> (citations omitted). When making such a determination, a court must "view the facts in the complaint in the light most favorable to the nonmoving party." <u>Id.</u> (citations omitted).

In the case at bar, when Plaintiff initiated this action via Short Form Complaint on June 13, 2016, and filed a First Amended Short Form Complaint on March 25, 2021, she had not been required to identify a specific injury; she was only required to allege that she was "making a claim" about her IVC filter. <u>Exhibit A</u>, p. 2; <u>Exhibit B</u>, p. 2. Defendants have not identified an actual injury in their Motion for Judgment. Therefore this action is not subject to dismissal under FRCP 12(c).

### B. <u>Summary Judgment</u>

A motion for judgment on the pleadings must be converted into a motion for summary judgment when "matters outside the pleadings are presented to and not excluded by the court." FRCP 12(d). If the instant Court is to consider the exhibits produced by Defendants, then this motion should be treated as one for summary judgment under FRCP 56(c). <u>Northern Indiana Gun</u>, 163 F.3d at 452. Such a motion requires the movant show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FRCP 56(a); *see also*, <u>Zemlick v. Burkhart</u>, 164 F.4th 1004, 1010 (7th Cir. 2026).

A court deciding summary judgment must "construe the facts and draw all justifiable inferences in the nonmovant's favor." Id.  The Court does "not weigh credibility, balance the relative weight of conflicting evidence, choose between competing inferences, or resolve swearing contests." Flowers v. Renfro, 46 F.4th 631, 636 (7th Cir. 2022)(citing Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003)).  "It is the job of the jury … to determine which party's evidence to credit." Payne, 337 F.3d at 778 (citation omitted).

In the instant matter, summary judgment is not appropriate because the medical records and other materials prove that Defendants have incorrectly asserted that the IVC filter had injured Plaintiff as of February 17, 2010.

## II.     UNDISPUTED MATERIAL FACTS

The following information is based upon documents produced by Plaintiff during the course of this litigation, including her Plaintiff Profile Form, Categorization Form, and medical records.  If the Defendants are willing to rely on those materials, then the information therein cannot be disputed.

As the Defendants have stated, on February 17, 2010 it was documented in the medical records that the filter had fractured.  The February 17, 2010 Invasive Vascular report describing the fracture stated as follows:

> It was noted in the pre-retrieval imaging that one of the limbs of the filter had broken and become distracted from the filter. …  The patient tolerated the procedure well. *There were no immediate complications.*
>
> .     .     .
>
> Attempts were made with an Ensnare to retrieve the residual limb but these attempts were unsuccessful.  3D CT fluoroscopy demonstrates the residual filter leg to be outside the confines of the vena cava in a pre-vertebral location. *This is likely of no clinical significance.*

Exhibit C (emphasis added).  This report did not indicate any issue with the filter, no injury.

Rather, it was the opposite: the fractured piece caused no immediate complications and was of no

clinical significance.  Similarly, in a History and Physical dated February 17, 2010, her attending

physician noted the following:

> The IVC filter has prongs migrating out of the IVC close to the duodenum and aorta, and one of the prongs is close to the aorta. … Patient had removal of the filter, and one of the struts which is outside the IVC filter was not able to be removed, and *it was of no clinical significance.  Patient's current symptoms have been resolved* and she is anxious to go home. I will be discharging the patient to be following up with her primary medical doctor in 1 week.

Exhibit D (emphasis added).  Again, there was no indication that the fractured piece had caused

any injury.  Thus, at the time Plaintiff had not suffered any injury caused by the filter.  Nor did

subsequent medical records identify any injuries related to the filter.

The aforementioned Short Form Complaint and First Amended Short Form Complaint

did not require Plaintiff to specify what kind of injury (if any) she had experienced.  Exhibits A

and B.  It was not until Plaintiff served a Profile Form on August 2, 2016 that Plaintiff identified

any injury resulting from her filter: emotional distress and physical pain.

> The filter was only intended as a temporary device, but a fractured strut remains in the body, last visualized in the extravascular location posterior to the IVC, in the prevertebral location. Plaintiff has *constant worry anxiety* about the state of her health related to this retained strut *and suffers from pain* in her abdomen, right kidney, and lower lumbar spine.

Exhibit E (emphasis added).  Similarly, the Categorization Form produced on January 6, 2017

noted that Plaintiff's physical pain was no longer attributed to her fractured piece of filter, only

her emotional injuries:

> Description: The filter was only intended as a temporary device, but a fractured strut remains in the body, last visualized in the extravascular location posterior to the IVC, in the prevertebral location. Plaintiff will require lifelong monitoring of this retained strut to ensure that it does not migrate elsewhere or otherwise malfunction, creating a life threatening situation for Plaintiff. She must now live

with *constant worry and anxiety* about the state of her health related to this retained fragment.

Exhibit F (emphasis added).  Thus, Plaintiff did not become aware that she had suffered any injuries from the IVC filter except for emotional distress, and that was learned after this case was put in suit as a proactive measure, not because of the existence of a specific injury.  As a result, the Defendants have incorrectly asserted that the statute of limitations began to run on February 17, 2010.

## III.    LEGAL ARGUMENT

### A.  Florida's Version of the Discovery Rule Requires an Actual Injury

The Defendants correctly point out that this case is controlled by Florida's statute of limitations, codified as Fla. Stat. § 95.11(3).  The statutes also codify the discovery rule exception to Florida's four-year statute of limitations:

> An action for products liability under s. 95.11(3) must be begun within the period prescribed in this chapter, with the period running from the date that the *facts giving rise to the cause of action* were discovered, or should have been discovered with the exercise of due diligence, rather than running from any other date prescribed elsewhere in s. 95.11(3), except as provided within this subsection.

Fla. Stat. § 95.031(2)(b)(emphasis added). The statute states that a cause of action does not begin until a plaintiff discovers "the facts giving rise to the cause of action."

Federal courts applying Florida law have further defined what information a plaintiff is required to possess to trigger the discovery rule, including knowledge of actual injuries:

> It is well established that the statute of limitations on a product liability action begins to run when a plaintiff (1) *knows that she was injured*, and (2) has notice of a possible connection between *her injury* and the product at issue.

Roberts v. Bayer Corp. (In re Trasylol Prods. Liab. Litig.), 2010 U.S. Dist. LEXIS 145758, 2010 WL 6098570, at *169 (S.D. Fla. Mar. 8, 2010), *motion granted in part, motion denied in part*, 2010 U.S. Dist. LEXIS 52409 (S.D. Fla., Mar. 5, 2010)(emphasis added; citations omitted).

> It is well established that the statute of limitations on a product liability action begins to run when a plaintiff was aware or should have been aware of a possible causal connection between *her alleged injuries* and the allegedly defective product at issue more than four years before filing suit.

Sotolongo v. Ethicon, Inc., 591 F.Supp.3d 1242, 1249 (S.D. Fla. 2022), *appeal dismissed*, 2022 U.S. App. LEXIS 37445, 2022 WL 19428408 (11th Cir. Aug. 22, 2022)(emphasis added; citations omitted).

Furthermore, an injury is discovered through the "manifestation of symptoms that will support a medical diagnosis of injury." Owens-Corning Fiberglass Corp. v. Corcoran, 679 So.2d 291, 295 (Fla. 3d DCA 1996), *review denied*, 690 So. 2d 1300 (Fla. 1997). In Owens-Corning, the plaintiff's decedent had been exposed to asbestos-containing products between 1966 and 1972, but suit was not brought until after injuries manifested decades later.

In Sotolongo, *supra*, the plaintiff had vaginal mesh implanted in 2005, but first experienced injuries in 2012. 591 F.Supp.3d at 1247. Even though she had not attributed those 2012 injuries to the mesh, it was determined that the statute of limitations began to run at that time. Id. at 1250. In Carter v. Brown & Williamson Tobacco Corp., 778 So. 2d 932 (Fla. 2000), the plaintiff had smoked cigarettes for forty-four years without injury until January 29, 1991, when he coughed and spit up blood. Id. at 934. X-rays were taken on February 4, 1991 and showed "a spot or abnormality" on the plaintiff's lung. Tests were performed that subsequently led to a diagnosis of lung cancer, but the court considered the injury could have been when the "spot or abnormality" on the patient's lung was noted. Id. at 938. That court also noted:

the question of when the statute of limitations begins to run in this type of case is "generally treated as [a] fact question[] for a jury to resolve, and therefore inappropriate for resolution on a summary judgment or directed verdict."

Id. at 937 (citation omitted).  In Barnes v. Clark Sand Co., the plaintiff had been exposed to silica dust from 1972 to 1974, but there was no injury until he had his left lung surgically removed in 1984.  721 So. 2d 329, 332 (Fla. 1st DCA 1998).   Furthermore, the court noted that "the question of when the statute of limitations begins to run in this type of case is 'generally treated as [a] fact question[] for a jury to resolve, and therefore inappropriate for resolution on a summary judgment or directed verdict.'" Id. at 333.

Here, it is the Defendants' burden to demonstrate that there is "no genuine dispute as to any material fact." FRCP 56(a); Zemlick, 164 F.4th at 1010.  They have failed to meet this burden because they have not provided proof that Plaintiff sustained any injuries caused by the fractured filter as of February 17, 2010.  Defendants have not even identified *any* event that should have caused Plaintiff to have even a *suspicion* that her IVC filter had caused injury. There is no medical record, documentation, deposition testimony, or any other evidence that notes that Plaintiff's physicians told her that she had been injured by the fractured piece of filter as of February 17, 2010.  In fact, she would have been told to the contrary that it had "no clinical significance."

The facts clearly establish that the Plaintiff did not know or have reason to know that the IVC filter was defective and could cause injury until *after* suit was filed in 2016.  At that time, pursuant to the Florida discovery rule, Plaintiff's claims were not time barred.

## B.  Related Claims Are Also Not Subject to Dismissal

The Defendants also seek dismissal of Plaintiff's claims for implied warranty, express warranty, consumer protection claim, and request for punitive damages.  The Florida statute of

limitations does not make any distinctions with those causes of action, so Plaintiff similarly objects to the dismissal of these claims.

## IV. <u>CONCLUSION</u>

If the Court takes all of the facts alleged in the attached exhibits as true and in the light most favorable to the non-moving party, as it must, it should deny Defendants' Motion. Plaintiff therefore respectfully requests that this Honorable Court enter the attached proposed Order.

Respectfully Submitted,

/s/ *Michael S. Katz*
Michael S. Katz, Esq.
(admitted *pro hac vice*)
Lopez McHugh LLP
214 Flynn Avenue
Moorestown, NJ 08012
(856) 273-8500
(856) 273-8502 fax
mkatz@lopezmchugh.com
*Attorneys for Plaintiff*

Dated: August 6, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, a true and correct copy of the foregoing Response was filed electronically, and notice of the filing of this document will be sent to all parties by operation of the Court's electronic filing system to CM/ECF participants registered to receive service in this matter.  Parties may access this filing through the Court's system.

Furthermore, a courtesy copy of Plaintiff's Response with unsealed exhibits was served upon the following via electronic mail:

> Jessica Benson Cox, Esquire (Jessica.Cox@FaegreDrinker.com)
> Andrea Roberts Pierson, Esquire (Andrea.Pierson@FaegreDrinker.com)
> James Stephen Bennett, Esquire (Stephen.Bennett@FaegreDrinker.com)
> Faegre Drinker Biddle & Reath LLP
> *Attorneys for Defendants*

> /s/ *Michael S. Katz*
> Michael S. Katz

Dated: August 6, 2026