**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| IN RE: COOK MEDICAL, INC., IVC FILTERS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | §<br>§<br>§<br>§ | Case No. 1:14-ml-2570-RLY-TAB<br>MDL No. 2570 |
| This Document Relates to<br><br><br>All Celect Cases | §<br>§<br>§<br>§ | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR**
**MOTION FOR SUGGESTION OF REMAND OF ALL CELECT CASES**

Cook still maintains that after 12 years, no case can be remanded. This rigid insistence on yet more, never-ending delay should be rejected. Plaintiffs are unaware of any MDL that has ever pended this long, without a single case ever being remanded.

Cook does not deny that this MDL is much older than any other products liability MDL with any real number of cases. Nor does it deny that all common discovery ended years ago, or that this Court itself stated that as to Celect cases, "we've done everything basically." Cook simply wants to block every case, that it can't settle on its own terms, from reaching trial. Forever.

It is not this Court's job, or even its right, to see that every last case in this MDL is settled or dismissed, no matter how long that takes. It is only this Court's job to oversee all common pretrial proceedings, and that job was duly completed years ago. Those plaintiffs who do not wish to settle their cases are entitled -- have long since been entitled -- to a trial date. They can only get that trial date if their cases are remanded.

At some point, the indefinite denial of a trial date becomes unconstitutional. It is a denial of due process, and of equal protection of the laws and other constitutional guarantees as well, for a plaintiff to be indefinitely barred from trial as these plaintiffs are. *See, e.g., Los Angeles County Bar Ass'n v. Eu*, 979 F.2d 697 (9th Cir. 1992), in which the court acknowledged "the possibility that litigation delays in certain circumstances could effectively deprive individual litigants of the ability to vindicate fundamental rights. Such delay might violate due process." *Id*. at 707 (footnote omitted). The court held, however, that Los Angeles County's court system, in which the median time from filing to trial was 59 months, and "the average time from filing of an at-issue memorandum to jury trial" was 26 months, *id*. at 700, was not unconstitutional.

But those delays pale in comparison to the delays endured by the remaining plaintiffs in this case. Yet according to Cook, it is apparently perfectly fine for plaintiffs to be trapped here, with no chance of trial either in this Court or in any other court, in indefinite limbo. The fact that several hundred plaintiffs have now died waiting for their day in court seems not to matter either.[1]

## ARGUMENT

### I. THE COURT HAS THE POWER TO REMAND DIRECT-FILED CASES

Cook's first contention is that most of the Celect cases can't be remanded because they were direct-filed, and direct-filed cases can never be remanded. It argues that remand is unavailable "because the JPML did not transfer them to this district." Opposition, doc. 28069 at 3. But as Cook well knows, but would like the Court to conveniently ignore, the parties and the Court proceeded in this case "as if direct filing were permissible and as if a direct-filing order were on the books." *Looper v. Cook, Inc.*, 20 F.4th 387, 396 (7th Cir. 2021). And as the Seventh Circuit

[1] In a footnote at p. 3 of its response, Cook questions whether the PSC has the authority to move for the remand of all Celect cases. The PSC gave notice of this motion to all plaintiffs' counsel, and asked that any plaintiffs who wished to remain in the MDL notify the PSC of that preference. Certain plaintiffs did indicate such a preference, and they are listed in exhibit A.

held, "it is not realistic or fair to allow a party to use such formalities to have the transferee MDL court justify a retroactive 180-degree turn on a decisive procedural issue after what the court itself called the 'law of the case,' referring to the MDL as a whole." *Id*. at 397.

Cook cites two district court cases, opposition at 3-4, for the proposition that a transferee court cannot remand a direct-filed case for trial to a district court designated by the plaintiff as the appropriate "originating" court. But neither case supports Cook's position. The first, *In re Phillips Recalled CPAP, Bi-Level PAP & Mech. Ventilator Prods. Litig*., 781 F.Supp. 3d 353 (W.D. Pa. 2025), does not contain any such holding. Rather, the court simply asked for more briefing on the issue. *Id*. at 379, 380.

Cook's second case, *In re Jan. 2021 Short Squeeze Trading Litig.*, 580 F.Supp.3d 1243 (S.D. Fla. 2022), is inapposite for two basic reasons. First, there was no direct-filing order in the case to begin with. The court noted that "[t]his procedure, purely a creature of stipulation or other agreement, is irrelevant in this case, where the parties have neither stipulated to nor requested entry of a direct filing order, and the Court has not entered one." *Id.* at 1253. By contrast, as the Seventh Circuit held in *Looper*, that is exactly what did happen in the present case.

Moreover, in *Short Squeeze*, the plaintiffs in question had never actually filed any complaint of their own at all, direct-filed or not. They "did not assert their claims in any separate civil action[,]" and "did not file a tag-along action in this District or in any court, for that matter, nor did they request consolidation or assignment of their claims to the undersigned." *Id*. at 1249. Needless to say, that is not the case here.

Cook also cites a ruling from the Judicial Panel on Multidistrict Litigation, *In re Gerber Probiotic Prods. Mktg. & Sales Prods. Litig*., 899 F.Supp.2d 1378 (J.P.M.L. 2012). It quotes the following sentence from a footnote in the opinion:

> Following *Lexecon*, transferee courts are limited to conducting bellwether trials (or any other trial or post-trial proceedings) in those actions over which the transferee court has jurisdiction outside the multidistrict context, either because the action was filed directly with the transferee court or because the parties waived their right to remand to the transferor court.

*Id*. at 1380 n. 4. This language simply means, however, that an MDL transferee court may try a direct-filed case. It does not mean that *only* the transferee court can try such a case, to the exclusion of all other courts.

In any event, as even Cook must concede, the Seventh Circuit has since made it clear in *Looper* that a direct-filed case can be remanded to the designated "originating" district for trial. The court described the relevant procedural history, and stated as follows:

> After the Judicial Panel on Multidistrict Litigation established this MDL in the Southern District of Indiana, the parties swiftly drafted and the court approved a Case Management Plan. The order called for use of a "Short Form Complaint" in so-called "direct filing." Plaintiffs could use this complaint form to file directly in the MDL court rather than filing in the federal courts in their home jurisdictions and waiting for their cases to be tagged and transferred to the MDL court for pretrial proceedings. Relevant to these appeals, the short form complaint included a line for a plaintiff to designate the "District Court and Division in which venue would be proper absent direct filing." There are two apparent reasons to include this language: *to identify (1) where trial should be held after pretrial proceedings are wrapped up,* and (2) which state's choice-of-law rules govern the dispute. And those two reasons are closely related. It would be very odd to transfer a case back to a district in an originating state for application of the substantive law of the MDL court's state.

*Looper, supra*, 20 F.4th at 394-95 (emphasis added, footnote omitted). The court of appeals thus stated plainly that trials may be "held after pretrial proceedings are wrapped up" in a plaintiff's designated "originating" court. Cook's argument at p. 6 of its opposition, that "*Looper* did not decide whether direct-filed cases may be remanded under section 1407(a)[,]" is flatly contradicted by the court's language above.

The Seventh Circuit did state that "[s]ince there was no direct-filing order in this MDL, the district judge concluded that the parties in direct-filed cases had not preserved their *Lexecon* rights,

thus allowing the MDL court to preside over the trials. We express no views here on that issue, which may present considerations quite different from the statute-of-limitations defenses in these appeals." That statement is directed to the issue of the waiver of *Lexecon* rights, however; it does not affect the court's previous statement making clear that direct-filed cases can be remanded for trial. Indeed, there would have been no reason for the Seventh Circuit to acknowledge the existence of the question of the waiver of remand rights by the plaintiffs in this case, if such rights do not exist for direct-filed plaintiffs in the first place. In sum, in the Seventh Circuit, direct-filed cases may be remanded.

It should also be noted that Cook suggests, at p. 6 n. 4 of its opposition, that cases may instead be remanded pursuant to 28 U.S.C. §1404(a). Plaintiffs will shortly file such a motion.

## II. THERE WAS NO WAIVER OF *LEXECON* RIGHTS

Defendants continue to insist that the direct-filed plaintiffs waived their *Lexecon* rights by direct-filing their cases. For the reasons detailed below, that contention should be squarely rejected.

This case, again, has "progressed as if a direct-filing order had been on the books." *Looper*, supra, 20 F.4th at 398. The Seventh Circuit held in *Looper* that in light of this fact, it was unfair to allow Cook to change its position as to the choice-of-law consequences of direct-filing. *Id*. at 395-96. As to the issue of *Lexecon* rights, the Seventh Circuit stated as follows:

> Years after Cook successfully argued in the *Graham* and *Sales-Orr* cases that direct-filed cases should be governed by the choice-of-law rules and statutes of limitations of their originating jurisdictions, the MDL proceeded to the bellwether trial stage. A dispute arose over where the trials would take place. In *Lexecon*, the Supreme Court held that in MDL cases that were tagged and transferred, the parties retained their rights to insist on re-transfer back to their originating jurisdictions for trial once pretrial proceedings concluded in the MDL court. 523 U.S. at 28, 118 S.Ct. 956. Parties can consent to having the MDL court retain such cases for trial, but without consent, the right to re-transfer remains. Since there was no direct-filing order in this MDL, the district judge concluded that the parties in direct-filed

> cases had not preserved their *Lexecon* rights, thus allowing the MDL court to preside over the trials. ECF No. 11131 at 2. We express no views here on that issue, which may present considerations quite different from the statute-of-limitations defenses in these appeals.

20 F.4th at 397 n. 3. Plaintiffs respectfully submit that there is no reason why these plaintiffs' *Lexecon* rights should be treated any differently from the treatment of the limitations issues in *Looper*.

The Seventh Circuit did not elaborate as to the considerations that might warrant a different treatment of plaintiffs' *Lexecon* rights. But it is difficult to discern any reason why Cook should not be allowed to reverse its position as to limitations, but should be allowed to do so with regard to *Lexecon*. As the Court noted, "[s]ince the MDL progressed as if a direct-filing order had been on the books, the parties were entitled to adapt their litigation approaches with this fact in mind." *Id*. at 398. And just as the Seventh Circuit recognized what Cook did with regard to limitations, *Cook repeatedly acknowledged that plaintiffs had Lexecon rights and were not waiving them*. It should not be allowed to change its position now.

In at least four different case management orders, Cook acknowledged and agreed that aside from specific plaintiffs included in a "discovery pool," no other plaintiffs were waiving their *Lexecon* rights. In CMO 5, entered on April 17, 2015, doc. 355, the parties stated that "[w]aiver of *Lexecon* is confirmed by Plaintiffs for the Discovery Pool cases only. Nothing in this Case Management Order or otherwise shall indicate a waiver of *Lexecon* as to the remaining cases." The parties took care to put this language in bold type. The order was entered by Magistrate Judge Baker, and agreed to by both sides. In CMOs 9, 12, and 17, entered in 2015 and 2016, the parties again agreed to the exact same language, each time again reciting this understanding in bold. Doc. 519, p. 5; Doc. 875, p. 9; Doc. 1749, p. 9.

These statements were not boilerplate language. To the contrary, each CMO was the product of extensive negotiation between the PSC and Cook. These negotiations entailed concessions on both sides, with both sides obtaining benefits in return for those concessions. Cook agreed to the non-waiver provisions in each of these CMOs for its own strategic reasons. Having obtained the benefits of CMOs that governed the conduct of this litigation for years, Cook should not be allowed to change positions now.

It must be borne in mind that in any MDL, "the case shall be remanded by the district court at the conclusion of the pretrial proceedings, unless it is otherwise terminated as by the granting of a dispositive motion….[T]here is no need for plaintiffs to assert their intention to seek such remand in order for the right to exist. *Instead, the presumption is that the case will be remanded at the close of pretrial proceedings*." *Armstrong v. LaSalle Bank N.A.,* 552 F.3d 613, 615-16 (7th Cir. 2009) (emphasis added). Since the MDL statute, 28 U.S.C. sec. 1407, is a venue statute, the right to remand may be waived, but the standard for waiver of *Lexecon* rights "must be at least as strong as that employed in…arbitration cases." *Id.* at 616. See also *In re DePuy Orthopedics, Inc*., 870 F.3d 345, 351 (5th Cir. 2017).

Here, not only was there no waiver; the non-waiver was clear and unambiguous. It was agreed to by Cook in a negotiating process with plaintiffs that yielded substantial benefits to Cook, and was repeated several times. Cook should not be allowed to change positions now.

## III. THE REMAINING PLAINTIFFS' CASES SHOULD BE REMANDED

As to the non-direct-filed cases, Cook puts forward a grab-bag of arguments as to why, after 12 years, plaintiffs for whom the Court has said there's nothing left to do should *still* not be remanded. These arguments are disingenuously presented, and defendant cites cases in wildly different postures than this one. They offer no grounds for denying remand.

Cook first quotes *In re Wilson*, 451 F.3d 161, 170 (3d Cir. 2006), for the proposition that "the test [for remand] is not whether proceedings on issues common to all cases have concluded; it is whether the issues overlap, either with MDL cases that have already concluded or those currently pending." *Wilson* involved an MDL established in December, 1997 to handle cases involving the diet drugs Pondimin and Redux. In April, 1999, a nationwide class settlement was reached; one of its features was that claimants could opt out, either immediately or later. This feature eventually resulted in more than 35,000 cases pending in the MDL by 2006. In the meantime, the MDL court had suggested remand of 38 cases in May 2001, less than four years after the MDL began. *Id*. at 165-66.

In May of 2003, certain plaintiffs filed a motion with both the MDL court and the JPML seeking to dissolve the MDL, and "asking for a remand of all pending cases…." *Id*. at 166. The MDL court denied the motion, because "pretrial proceedings on common factual questions had yet to be completed." *Id*. The JPML then also denied the motion, "noting that the Plaintiffs' Management Committee, among others, was opposed to petitioners' request for a remand." *Id*. at 167. The Third Circuit denied mandamus relief.

*Wilson* is distinguishable for several fundamental reasons. First, of course, the MDL in question was still less than nine years old by the time the Third Circuit ruled. Second, the MDL court had already remanded dozens of cases before the case was even four years old, while no case still has ever been remanded from this MDL. Third, in *Wilson*, the Plaintiffs' Management Committee, the equivalent of the PSC here, opposed the request; that is obviously not true here.

Fourth, the court of appeals noted certain common issues, still requiring discovery, of the kind that do not exist here at all. For instance, many plaintiffs had been diagnosed in mass screening operations conducted by plaintiffs' counsel, and the manner in which those screenings

were conducted involved common issues. Enforcement and interpretation of the nationwide settlement's terms, and the eligibility of class members to opt out, were also common issues. *Id*. at 172. No such issues exist here.

In short, *Wilson* has no applicability here. And the ultimate holding, of course, was only that the high standard for mandamus relief was not met. Even then, the Third Circuit recognized the significant problem at hand:

> "All parties recognize that these cases must eventually be returned to their transferor courts and the only issue is when. We recognize the petitioners' frustration in the MDL court's reluctance to suggest remand at this time. We will, of course, continue to monitor the status as cases continue to raise the issues, but we believe the standards of mandamus continue to limit our ability and inclination to decide otherwise at this time."

*Id*. at 173. And again, this was when the MDL was less than nine years old.

Cook next quotes *In re Davol, Inc./C.R. Bard, Inc. Polypropylene Hernia Mesh Prods. Liab. Litig*., 2022 WL 537572, *2 (S.D. Ohio Feb. 23, 2022) in support of its contention that the fact that "the current bellwether process only involves the Tulip filter 'does not mean that any case related to a device not present in a bellwether trial should be excluded from the MDL.'" *Davol* is distinguishable for the obvious reason that at the time remand was denied, the MDL was only three and one-half years old.

Defendants next point to the fact that thousands of cases have settled, quoting *In re Gen. Motors LLC Ignition Switch Litig*., 427 F.Supp.3d 374, 393-94 (SD.N.Y. 2019), to the effect that "the usual object of MDL management, especially with bellwether trials, is to incentivize rational settlements," with "the vast majority of MDL cases… [being] resolved by settlement." This case has nothing to do with remands.

It is also worth noting that the opinion in *In re Gen. Motors* was written less than six years after the MDL began. The same is true for the other cases cited by defendants for the argument

that settlement efforts mean no case can ever be remanded. *Foscue v. Zimmer, Inc.*, 2016 WL 7325659 (D.N.J. April 7, 2016) was issued less than six years after that MDL was created, and *In re Seroquel Prods. Liab. Litig.*, 2010 WL 3465151 (M.D. Fla. Aug. 30, 2010) was issued just over four years after that MDL began. None of these cases involves, even remotely, the same delays as those plaintiffs here have endured.

In any event, plaintiffs certainly acknowledge that many cases in this MDL have settled, and that certain other plaintiffs wish to continue settlement efforts and not be remanded. But when there is no realistic likelihood of settlement, this consideration is simply irrelevant.

At p. 10 of its opposition, Cook essentially acknowledges that it hopes and expects that this MDL will go on forever. Remarkably, Cook states as follows:

> Contrary to Plaintiffs' claim, the mere fact that company discovery is completed in the MDL neither entitles nor warrants the remand of the Celect cases. Company discovery is but one aspect of pre-trial litigation subject to coordination under section 1407(a). Coordinated pretrial proceedings and discovery are far from complete in these cases, which lack workup beyond plaintiffs' production of basic plaintiff profile forms. No plaintiff or fact witness depositions have been taken, no expert designation have been submitted; expert depositions have not been taken; and Rule 702 and dispositive motions have not been filed. That work is best done in this MDL Court in a coordinated fashion consistent with this Court's prior rulings and informed by the history of this litigation. Coordination of those proceedings maximizes efficiencies, fairness, consistency and opportunities for resolution, while saving work for transferor courts and the parties.

Cook apparently believes that every plaintiff should be deposed, along with fact witnesses for each case, and individual case motions should be heard in every case. In other words, every remaining case in this MDL should be individually worked up before remand can occur.

But again: *that is not how the MDL system works*. The job of the MDL court is to supervise common proceedings, not individual ones. This Court has already fulfilled that function. It has thereby already saved work for dozens of individual transferor courts, whose job it always has been to handle the individual discovery and trial upon remand.

In essence, Cook would like the court to simply ignore the fact that transferor courts play a role in the MDL system. Again, 28 U.S.C. §1407(a) states that MDL cases "*shall* be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred…." (emphasis added). Cook asks the Court to ignore that statutory command, so it can avoid ever having to try a case. The Court cannot do that.

Finally, Cook yet again raises the issue of subject matter jurisdiction. It says that "salient concerns over the Court's jurisdiction remain," and the Court should resolve them first. But as the Court is well aware, the Court already resolved this issue by entering CMO-32, over plaintiffs' objection.

Cook has never actually moved to dismiss any cases for lack of subject matter jurisdiction at all, and certainly has not done so after CMO-32 was entered well over two years ago. Cook does not suggest how the Court should further "resolve" this issue. The Court entered CMO-32, most plaintiffs complied with it, those who did not were dismissed, and that is the end of the issue.

**CONCLUSION**

For all the reasons stated above, and those stated in plaintiffs' opening brief, plaintiffs respectfully pray that their motion for suggestion of remand of all Celect cases be granted, except as to the plaintiffs listed in exhibit A.

Respectfully submitted,

/s/ *Joseph N. Williams*
Joseph N. Williams
Williams Law Group, LLC
1101 North Delaware St.
Indianapolis, IN 46202
(317) 633-5270
joe@williamsgroup.law

Charles Siegel
Waters Kraus Paul & Siegel
3141 Hood St.
Suite 700
Dallas, TX 75219
(214) 357-6244
siegel@waterskraus.com

Michael Heaviside
Heaviside Reed Zaic
800 Connecticut Ave.
Suite 300
Washington, DC 20006
(202) 223-1993
mheaviside@hrzlaw.com

Ben C. Martin
Law Office of Ben C. Martin
3141 Hood St.
Suite 600
Dallas, TX 75219
(214) 761-6614
bmartin@bencmartin.com

David P. Matthews
Matthews and Associates
2509 Sackett St.
Houston, TX 77098
(713) 522-5250
dmatthews@thematthewslawfirm.com

## CERTIFICATE OF SERVICE

I certify that on the 21st day of August, 2026, a copy of the foregoing was filed electronically. Service of this filing will be made on all ECF-registered counsel by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Joseph N. Williams*
Joseph N. Williams